# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT YESLAM BIN LADIN'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### TABLE OF CONTENTS

**Pages**

**I. BASED ON SWISS LAW THIS COURT LACKS JURISDICTION OVER THE SUBJECT MATTER OF THE COMPLAINT AND OVER THE PERSON OF DEFENDANT YESLAM BINLADIN** ....................................... 10

    A. Jurisdiction ................................................................................ 10

    B. Non-recognition and non-enforcement of US Court's Decision ..................... 11

**II. BASED ON UNITED STATES LAW THIS COURT LACKS PERSONAL AND SUBJECT MATTER JURISDICTION OVER DEFENDANT YESLAM BINLADIN** ......................................................................... 13

    A. Plaintiffs Have Failed to Allege Sufficient Contacts With the United States to Subject Yeslam Binladin to Personal Jurisdiction ...................................... 14

    B. Yeslam Binladin Did Not "Purposefully Direct" His Conduct At the United States ................................................................... 16

    C. Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy theory of Jurisdiction ............................................................ 18

**III. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM AGAINST YESLAM BINLADIN UNDER THE ANTI-TERRORISM ACT, 18 U.S.C. § 2333** ..................................................................... 20

    A. Plaintiffs Have Failed to Establish Primary Liability Under the ATA ........... 21

    1. None of the Facts Alleged in the Complaint support an Inference That Yeslam Binladin Provided Material Support to Terrorism ............................. 21

    2. Even if Yeslam Binladin Alleged Conduct be constructed as Material support Terrorism, the Plaintiffs Were Not Injured "By Reason of" That Conduct ............................................................ 23

3. Criminal Prohibitions on Support to Terrorist Group Do Not Relieve
Plaintiffs of the Burden to Plead a Direct Link Between Yeslam
Binladin's Conduct and the Plaintiffs' Injuries.................................27

B. Plaintiffs Cannot State an ATA Claim Based on a Joint Tort Theory ............28

1. Plaintiffs Have Failed to Adequately Allege an Aiding an Abetting
Claim Against Yeslam Binladin.........................................................28

2. Plaintiffs Have Not Adequately Alleged That Yeslam Binladin Participated
in a Terrorist Conspiracy....................................................................31

C. Plaintiffs Fail to Allege Any Facts Showing That Yeslam Binladin
Acted "Knowingly" in support of the September 11 Terrorists,
Osama Bin Laden or Al Qaeda ..........................................................34

IV.  PLAINTIFFS' ALLEGATIONS AGAINST YESALM BINLADIN DO
NOT MEET THE REQUIREMENTS OF THE ALIEN TORT CLAIM
ACT..............................................................................................................35

V.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A VIOLATION
OF THE TORTURE VICTIM PROTECTION ACT ...................................38

A. The TVPA's State Action Requirement is Not Satisfied ................................39

VI.  PLAINTIFFS HAVE FAILED TO PLEAD A VIOLATION OF THE
FEDERAL RICO STATUTE BY YESLAM BINLADIN..............................40

VII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY OF THEIR
STATE LAW THEORIES ...........................................................................40

A. Plaintiffs' Negligence Claims Must Be Dismissed for Failure to allege a
Duty Yeslam Binladin Owed to Plaintiffs .......................................40

B. Plaintiffs' Intentional Tort Claims Must Be Dismissed ..................................42

VIII. CONCLUSION...........................................................................................44

# TABLE OF AUTHORITIES

## CASES

Pages

*Abdullahi v. Pfizer, Inc., No 01 CIV. 8118, 2002 WL 31082956*
  *(S.D.N.Y. Sept 17, 2002)* ........................................................................ 36, 37

*Abede-Jira v. Negewo,* 72 F.3d 844 (11th Cir. 1996) ..................................... 37

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd,* 956 F. Supp. 427
  (S.D.N.Y 1996) ........................................................................................ 15

*Aetna Cas. & Sur. Co v. Leahey Constr. Co.,* 219 F. 3d 519 (6th Cir. 2000) .............. 29

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987) .......................... 14, 19

*Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240 (2d Cir. 1987) ................... 29

*BCCI Holdings (Luxembourg), S.A. v. Khalil,* 56 F. Supp. 2d 14 (D.D.C. 1999),
  *aff'd in relevant part,* 214 F.3d 168 (D.C. Cir. 2000) ........................................ 24

*In re Baan Co. Sec. Litig.,* 81 F. Supp. 2d 75 (D.D.C. 2000) ..................................... 14

*Bao Ge v. Li Peng,* 201 F. Supp. 2d 14 (D.D.C. 2000), *aff'd,* 35 Fed. Appx. 1,
  2002 WL 1052012 (D.C. Cir. 2002) ..................................................... 35, 36, 39

*Barrueto v. Larios,* 205 F. Supp. 2d 1325 (S.D. Fla. 2002) ........................................ 37

*Becker v. Schwartz,* 413 N.Y.S.2d 895 (1978) .......................................................... 41

*Bender v. City of New York,* 78 F.3d 787 (2d Cir. 1996) ............................................ 42

*Bigio v. Coca-Cola Co.,* 239 F.3d 440 (2d Cir. 2000) ................................................ 37

*Blouin v. Spitzer,* 213 F. Supp. 2d 184 (N.D.N.Y. 2002) ........................................... 40

*Boim v. Quranic Literacy Inst. & Holy Land Found.,*
  291 F.3d 1000 (7th Cir. 2002) ........................................ 20, 21, 24, 27, 28, 29, 34

*Bona v. Barasch,* No. 01 Civ. 2289, 2003 WL 1395932
  (S.D.N.Y. Mar. 20, 2003) ............................................................................. 26

*Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir. 1988) *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)................25

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)................................24, 25, 29, 32

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985)....................................................16, 17

*Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 02-1616, Slip. Op. (D.D.C. July 25, 2003) .........................................................................................40

*Burnett v. Al Baraka Inv. & Dev. Corp.*, No. Civ.A 02-1616, 2003 WL 22683337 (D.D.C. Nov. 14, 2003).............................................................17

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................16, 17

*COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515 (D.D.C. 1995)................16

*Campoverde v. Sony Pictures Entm't*, No 01CIV.7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002) .........................................................41, 42, 43

*Caraballo v. United States*, 830 F.2d 19 (2d Cir. 1987) ............................................25

*Carmichael v. United Tech. Corp.*, 835 F.2d 109 (5th Cir. 1988) .........................24, 37

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1988).............................................................15

*Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996) ................................25

*Chong v. New York City Transit Auth.*, 441 N.Y.S.2d 24 (App. Div. 1981)...............42

*Corcoran v. New York Power Auth.*, 935 F. Supp. 376 (S.D.N.Y. 1996)...................40

*Cox v. Admin. United States Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994)..........24

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, No. 02 Civ. 2900, 2002 WL. 31819217 (S.D.N.Y. Dec. 16, 2002)................................................34

*Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115 (D.D.C. 2003)...................24, 38

*Doe v. Islamic Salvation Front*, 993 F. Supp. 3 (D.D.C. 1998) ..................................36

*Doe v. Unocal Corp.*, 963 F. Supp. 880 (C.D. Cal. 1997) .........................................37

*Dooley v. United Tech. Corp.*, 803 F. Supp. 428 (D.D.C. 1992) ................................19

*Dooley v. United Tech. Corp.,* 786 F. Supp. 65 (D.D.C. 1992) ...................................19

*Eastman Kodak Co. v. Kavlin,* 978 F. Supp. 1078 (S.D.Fla. 1997) ......................37, 38

*Far West Capital v. Towne,* 46 F.3d 1071 (10th Cir. 1995)...........................................17

*Filartiga v. Pena-Irala,* 630 F.2d 876 (2d Cir. 1980) ....................................................37

*First Am. Corp. v. Al-Nahyan,* 17 F. Supp. 2d 10 (D.D.C. 1998) ................................24

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,* 218 F. Supp. 2d 639
        (S.D.N.Y. 2002)...................................................................................................15

*First Chicago Int'l v. United Exch. Co.,* 836 F. 2d 1375 (D.C. Cir. 1988).................13

*Galerie Gmurzynska v. Hutton,* 257 F. Supp. 2d 621 (S.D.N.Y. 2003) ......................19

*Giro v. Banco Espanol de Credito, S.A.,* No. 99-7883, 2000 WL 287694
        (2d Cir. Mar. 17, 2000).......................................................................................25

*Glusband v. Fittin Cunningham Lauzon, Inc.,* 582 F. Supp. 145
        (S.D.N.Y. 1982)...................................................................................................41

*Gonzalez v. Pius,* 525 N.Y.S.2d 868 (App. Div. 1988)................................................41

*Graham v. Guilderland Cent. Sch. Dist.,* 681 N.Y.S.2d 831 (App. Div. 1998)...........42

*Greenwald v. Hall,* No. 01 Civ. 5405, 2003 WL 164279
        (S.D.N.Y. Jan. 23, 2003) ....................................................................................26

*Grimes v. Vitalink Comm. Corp.,* 17 F.3d 1553 (3d Cir. 1994) ...................................17

*Habrack v. Kupersmith,* No. 89CIV. 4712, 1988 WL 102037
        (S.D.N.Y. Sept. 23, 1988) ..................................................................................42

*Halberstam v. Welsh,* 705 F.2d 472 (D.C. 1983) .......................................24, 29, 31, 33

*Hilao v. Estate of Marcos,* 103 F.3d 767 (9th Cir. 1996)..............................................37

*Hobson v. Wilson,* 737 F.3d 1 (D.C. Cir. 1984) ..........................................................34

*Holmes v. Sec. Investor Pro. Corp.,* 503 U.S. 258 (1992) ............................................24

*Humanitarian Law Project v. Reno,* 205 F.3d 1130 (9th Cir. 2000)............................27

*Invest Almaz v. Temple-Inland Forest Prod. Corp.,* 243 F.3d 57 (1st Cir. 2001).........34

*Jackson v. Blue Dolphin Communications of North Carolina*, 226 F.
    Supp. 2d 785 (W.D.N.C. 2002) ...................................................................32

*Jantzen v. Leslie Edelman of N.Y., Inc.,* 614 N.Y.S.2d 744 (App. Div. 1994).............42

*Kadic v. Karadzic,* 70 F.3d 232 (2d Cir. 1995) ...........................................36, 39

*Kolbeck v. LIT Am., Inc.,* 923 F. Supp. 557 (S.D.N.Y. 1996), *aff'd,*
    152 F.3d 918 (2d Cir. 1998) ........................................................................41

*Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.,*
    191 F.3d 229 (2d Cir. 1999) .................................................................15, 24

*Landy v. Fed. Deposit Ins. Corp.,* 486 F.2d 139 (3d Cir. 1973) ...........................29

*Lerner v. Fleet Bank, NA,* 318 F.3d 113 (2d Cir. 2003), *petition for cert.
    filed,* 72 U.S.L.W. 3129 (U.S. Aug. 5, 2003) (No. 03-189).............................25

*Lugar v. Edmonson Oil Co.,* 457 U.S. 922 (1982) ..........................................39

*McCarthy v. Olin Corp.,* 119 F.3d 148 (2d Cir. 1997)......................................41

*Mehinovic v. Vuckovic,* 198 F. Supp. 2d 1322 (N.D. Ga. 2002) .....................37, 38

*Meng v. Schwartz,* 116 F. Supp. 2d 92 (D.D.C. 2000), *aff'd* 48 Fed.
    Appx. 1, 2, 2002 WL 31248491 (D.C. Cir. Oct. 7, 2002)................................24

*Metge v. Baehler,* 762 F.2d 621 (8th Cir. 1985)............................................29

*Mikkilineni v. Pennsylvania,* No. 02-1205, 2003 U.S. Dist. LEXIS 12669
    (D.D.C. Aug. 5, 2003) ...............................................................................37

*Mortise v. United States,* 102 F.3d 693 (2d Cir. 1996) ...................................41

*Mountain States Legal Found v. Bush,* 306 F.3d 1132 (D.C. Cir. 2002)..............26, 29

*Murphy v. Am. Home Prods. Corp.,* 461 N.Y.S.2d 232 (N.Y. 1983) .........................43

*Naartex v. Watt,* 722 F.2d 779 (D.C. Cir. 1983) ............................................18

*Newton v. Tyson Foods, Inc.,* 207 F.3d 444 (8th Cir. 2000) ...............................25

*Oki Semiconductor Co. v. Wells Fargo Bank,* 298 F.3d 768 (9th Cir. 2002)..........24, 25

*Overseas Private Investment Corp. (OPIC) v. Industria de Pesca, N.A., Inc.,*
    920 F. Supp. 207 (D.D.C. 1996) ...................................................................30

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 244 F. Supp 2d 289
    (S.D.N.Y. 2003) ...................................................................................36, 37

*Purdy v. Pub. Adm'r of County of Weschester,* 530 N.Y.S.2d 513 (1988) .................41

*Richard v. Bell Atl. Corp.,* 946 F. Supp. 54 (D.D.C. 1996) ...........................................16

*Sanchez-Espinoza v. Reagan,* 770 F.2d 202 (D.C. Cir. 1985) ......................................36

*Second Amend. Found. v. U.S. Conference of Mayors,* 274 F.3d 521
    (D.C. Cir. 2001) .................................................................................13, 18

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985) ...........................................25

*Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.,*
    249 F.3d 1068 (D.C. Cir. 2001), *cert. denied,* 534 U.S. 994 (2001) .................25

*Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217
    (S.D.N.Y. 2003) ................................................................................28

*Spadafore v. Gardner,* 330 F.3d 849 (6th Cir 2003) ......................................................32

*Steed Fin. LDC v. Laser Advisers, Inc.,* 258 F. Supp. 2d 272 (S.D.N.Y. 2003) ..........41

*Stuto v. Fleishman,* 164 F.3d 820 (2d Cir. 1999) .........................................................43

*Sunlite, Inc. v. BfG Bank, AG,* 849 F. Supp. 74 (D.D.C. 1994) ...................................14

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) ...............................................32, 37

*In re TMJ Implants Prods. Liab. Litig.,* 113 F.3d 1484 (8th Cir. 1997)...................31, 34

*Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F. Supp. 1033
    (S.D.N.Y. 1993) .................................................................................43

*Ungar v. Islamic Republic of Iran,* 211 F. Supp. 2d 91
    (D.D.C. 2002) ...............................................................24, 29, 31, 32, 43

*United States v. Philip Morris Inc.,* 116 F. Supp. 2d 116 (D.D.C. 2000) ....................18

*United States Sec. & ¶Exch. Comm'm v. Carrillo,* 115 F.3d 1540
    (11th Cir. 1997) ..................................................................................15

*United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30 (1st Cir. 1999) ...............15

*United States v. Yousef,* 327 F.3d 56 (2d Cir. 2003) .....................................36

*In re Vitamins Antitrust Litig.,* 120 F. Supp. 2d 58 (D.D.C. 2000) ...............15

*Wallace v. Herron,* 778 F.2d 391 (7th Cir. 1985) *cert. denied,*
    475 U.S. 1122 (1986) .......................................................................17

*Wiggins v. Equifax, Inc.,* 853 F. Supp. 500 (D.D.C. 1994) ...........................16

*Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir. 1975) ................34

*World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717
    (5th Cir. 1996) ................................................................................16

## STATUTES, REGULATIONS & RULES

18 U.S.C. § 2331 (1) ...................................................................................25

18 U.S.C. § 2333 ........................................................................20, 21, 23

18 U.S.C. § 2334 .........................................................................................18

18 U.S.C. § 2339 A (b) ................................................................................21

18 U.S.C. § 2339 B .......................................................................................27

18 U.S.C. § 2339 C .......................................................................................28

28 U.S.C. § 1350 .....................................................................................38, 39

42 U.S.C. § 1983 ..........................................................................................39

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, et seq. ..................24

Torture Victim Protection Act, Pub. L. 102-256, 106 Stat. 73 .......................38

Fed. R. Civ. Pro. 4 (k)(2) ...................................................................15, 16, 18

Fed. R. Civ. P. 12 (b) .................................................................................13, 33, 36

N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney 2003) ........................................42

## MISCELLANEOUS

H.R. Rep. No. 102-367 (1991) ................................................................................39

*Restatement (Third) of Foreign Relations Law* § 404 (1986) ......................................36

Alan Wright & Arthur R. Miller................................................................................20

## MEMORANDUM OF LAW

### I.  BASED ON SWISS LAW THIS COURT LACKS JURISDICTION OVER THE SUBJECT MATTER OF THE COMPLAINT AND OVER THE PERSON OF DEFENDANT YESLAM BINLADIN

Defendant Yeslam Binladin is a Swiss citizen residing and domiciled in Geneva, Switzerland.  The Third Amended Complaint ("3AC") has been filed in the US District Court, Southern District of New York.  According to Swiss law, based upon defendant's nationality and domicile, Yeslam Binladin asserts that this court lacks jurisdiction over the subject matter of the complaint and over his person.

### A.  Jurisdiction

The Swiss Federal Constitution of April 18, 1999, provides that a defendant in a civil action has the right to have his case heard before the Court of his or her domicile. However, Swiss law might provide that the case be heard at another forum (article 30 § 2 of Swiss Constitution; <u>exhibit 1</u>) but this exception is inapplicable here. This constitutional rule express the principle according to which any defendant has the right to demand to appear before the *natural judge* of his or her person. It is meant to regulate the conflicts of jurisdiction between the Court of the Cantons of Swiss Confederation. It applies as a general rule unless a specific law provides an exception. It is applicable as soon as a claim is filed in Switzerland. The right to have access to the *natural judge* is fundamental in Swiss history.

When the three Fathers of the Swiss nation adopted the Grutli Pact in 1291 they swore that people of the valleys would never again submit themselves to any foreign judge. The constitutional rule reflects a principal of high importance in the concepts of Human Rights: Plaintiff's jurisdiction is not sufficiently independent.

Article 30 §2 of the Swiss Federal Constitution shows the inspiration of the Private International Law of Switzerland ("PIL").

PIL (underline 2[1]), dated December 18, 1987, regulates, in international matters, the jurisdiction of Swiss judicial or administrative authorities, the applicable law, the conditions for recognition and enforcement of foreign decisions, bankruptcy, and composition and arbitration (Article 1 § 1 PIL).

Article 1 § 2 PIL provides that international treaties take precedence on the PIL rules themselves. However the United States is not a party to the Lugano Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters of September 16, 1998, nor to any other bilateral treaty with Switzerland regarding these matters.

Article 129 PIL belongs to the ninth Chapter of PIL called *Obligations*. It takes place in the Third Section of the Chapter called *Unlawful Acts*.

Article 129 § 1 provides the following: *Lawsuits based on unlawful acts are subject to jurisdiction of the Swiss courts at the domicile of the defendant or, if he or she has none, at the place of his or her habitual residence or business establishment.*

This provision shows that according to PIL any civil claim must be brought to the competent Court at the place of domicile. Here, the claim against Defendant Yeslam Binladin, *in casu* must be brought before the Tribunal of First Instance of Geneva, Switzerland.

According to these rules, Yeslam Binladin is entitled to challenge and deny the US Court's jurisdiction on him.


**B.   Non-recognition and non-enforcement of US Court's Decision**

Any Swiss authority, if asked for recognition and enforcement of a US Court's civil Decision against a Swiss citizen, must apply PIL, but no other rule, because, as mentioned, there is no applicable international treaty between Switzerland and the United States on civil matters.

---

[1] Relevant pages of the English language translation of PIL are attached; exhibit 2

According to Article 25 PIL, *A foreign decision is recognized in Switzerland: (a) if jurisdiction lay with the judicial or administrative authorities of the country in which the decision was rendered; (b) if no ordinary judicial remedy can any longer be brought against the decision or if the decision is final, and (c) if no ground for non-recognition under Article 27 exists.*

The international jurisdiction of foreign authority must be examined *ex officio* by the Swiss authority. Article 26 PIL provides that *Jurisdiction lies with a foreign authority, (a) if a provision of this Statue so provides or, if there is no such provision, if the defendant had his or her domicile in the country where the decision was rendered; (b) if, in disputes of financial interest, the parties by agreement valid under This Statute subjected themselves to the jurisdiction of the authority that rendered the decision; (c) if in a dispute of financial interest the defendant entered an unconditional appearance, or (d) if, in the case of counterclaim, the authority that rendered the decision had jurisdiction over the principal claim, and the two claims are materially connected.* Only the two situations described at Article 26 (a) and (c) are relevant here.

Only the first hypothesis of Article 26 (a) must be examined since Yeslam Binladin has neither a residence or domicile in the United States nor has Plaintiff pleaded any such residence domicile. The identity of litigation is determined by the cause of the claim. *In casu*, the Plaintiff's claim is a civil claim for civil liability based on an alleged illicit act. This matter is ruled by Article 129 and 130 PIL *(Unlawful Acts)*. In this matter, article 149 § 1 (a) and (b) provides that *Foreign decisions concerning claims under the law of obligations are recognized in Switzerland: (a) if rendered in the country of the defendant's domicile; or (b) if rendered in the country of the defendant's habitual residence, provided the claims are connected with the activities there.*. Neither of these two situations are relevant here because of Yeslam Binladin's unquestioned domicile and residence in Switzerland.

Article 149 §2 describes six other situations; only one of these is even arguable here. When looked at closely, even that situation fails. Lit. (f) *If it concerns claims for unlawful acts, was rendered at the place the act or its effect, and the defendant was not domiciled in Switzerland.*

In conclusion, no provision of PIL gives jurisdiction to US authority according to Article 26 (a).

Article 26 (c) provides: *Jurisdiction lies with a foreign authority if, in disputes of financial interest the defendant entered an unconditional appearance.* In other words, one shall determine the behavior of Yeslam Binladin in the case to determine a tacit acceptance of the US Court's jurisdiction.

According to Swiss cases[2] and the doctrine, the following rules apply: (1) no attribution of jurisdiction will happen if the defendant does not appear; (2) no attribution of jurisdiction will happen if the defendant makes an appearance limited to challenging the jurisdiction, without answering the merit of the claim; (3) it is not sufficient however for the defendant to let the Court rule by itself on the jurisdiction issue; (4) no attribution of jurisdiction will happen if the defendant makes an appearance to challenging and denying jurisdiction before to answer on the merit of the claim, but this answer must be clearly qualified as subsidiary.

In conclusion, according to PIL, jurisdiction belongs to no other Court than Geneva First Instance Tribunal. For this reason, Defendant Yeslam Binladin expressly challenges and denies the jurisdiction of the courts of the United States.

## II.   BASED ON UNITED STATES LAW THIS COURT LACKS PERSONAL AND SUBJECT MATTER JURISDICTION OVER DEFENDANT YESLAM BINLADIN

Plaintiffs have failed to allege any facts that would allow this Court to exercise personal jurisdiction over Yeslam Binladin. Plaintiffs bear that burden of establishing this Court's personal jurisdiction over foreign defendants. To survive a motion to dismiss under Federal Rule 12(b)(2), plaintiffs must make a *prima facie* showing of pertinent jurisdictional facts. *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *first Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988); *Ball v. Mettallurgie Hoboken-Overpelt, S.A.*, 902 F.2d

---

[2] Main significant cases are attached ; exhibit 3

194, 197 (2d Cir.), *cert denied*, 498 U.S. 854 (1990); *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).

Moreover, the Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field". *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114-15(1987) (internal citation and quotation omitted); *In re Baan Co. Sec. Litig.*, 81 F. Supp.2d 75,81 (D.D.C. 2000) (citing *Asahi*, 480 U.S. at 114-15); *Huang v. Sentinel Gov't Sec.*, 657 F. Supp.485, 489 n.3 (S.D.N.Y. 1987).

In their 400 page complaint, the only relevant jurisdictional allegation is Plaintiffs' bare, general statement that "[t]his Court has both personal and subject matter jurisdiction over the Defendants herein". (3AC ¶1). That impermissible legal conclusion is not sufficient to establish personal jurisdiction over Yeslam Binladin. While the Court must accept Plaintiffs' well-pleaded factual assertions as true, it need not credit wholly conclusory allegations. Rather, "plaintiff must allege specific acts connecting the defendant with the forum..." (*Sunlite, Inc. v. Bfg Bank, AG*, 849 F. Supp. 74, 75 (D.D.C. 1994)). "[B]are allegations are insufficient." (*Id.;* see also *E-Z Bowz v. Professional Product Research Co.*, 00 CIV. 8670, 2003 U.S. Dist. LEXIS 15256, at *12 (S.D.N.Y. Sept 5, 2003))("conclusory allegation are not enough to establish personal jurisdiction.")(internal quotation and citation omitted). Because Plaintiff's have failed to allege a *prima facie* basis for personal jurisdiction, their claims against Yeslam Binladin must be dismissed.

## A.   Plaintiffs Have Failed to Allege Sufficient Contacts With the United States to Subject Yeslam Binladin to Personal Jurisdiction

Of the enumerated statues falling under the heading "Jurisdiction and Venue" in the Complaint (3AC, ¶¶1-3), only the Anti-terrorism Act ("ATA") contains a provision relating to personal jurisdiction – 18 U.S.C. § 2334. This nationwide service-of-process provision is a quasi-jurisdictional statute that alters the geographic scope of

the requisite "minimum contacts" analysis. It enables a plaintiff to establish jurisdiction on the basis of a defendant's contact with the United States as a whole rather than under a state's long-arm statue, which limits the analysis to contacts with the individual state. However, Plaintiffs cannot rely on a nationwide analysis to that provision. (See *United States Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997): holding that nationwide analysis is only applied "where service of process has been effected pursuant to [the] federal statute authorizing nationwide or worldwide service"[3]).

A nationwide analysis would be appropriate, however, under Federal Rule of Civil Procedure 4(k)(2), if it applies. Although not cited as a basis for jurisdiction in their Complaint, Plaintiffs have invoked that rule in response to other defendants' motions to dismiss. Rule 4(k)(2) has been interpreted to allow for "service on foreign defendants for claims arising under federal law where the defendant has minimum contacts with the United States as a whole but does not have sufficient contacts with any single state to satisfy the long-arm statute of such a state. (See *In re Vitamins Antitrust Litig.*, 120 F. Supp.2d 58, 72 (D.D.C. 2000) citing *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999); see also *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207, (2d Cir. 2003).

Rule 4(k)(2) also fails to provide personal jurisdiction over Yeslam Binladin, however, because Plaintiffs have failed to make *a prima facie* case that Yeslam Binladin's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. (See *In re Vitamins Antitrust Litig.*, 120 F. Supp.2d at 72; *Core-tek Prods., Inc. v. Air & Sea Transp. SRL*, no 98 Civ. 8270, 1999 U.S. Dist. LEXIS 11537, at *3-4 (S.D.N.Y. July 29, 1999)). Courts applying Rule 4(k)(2) have "engaged in the traditional minimum contacts analysis based on an aggregation of the defendant's [nationwide] contacts" (See *Aerogroup Int'l, Inc. v. Malbora Footworks Ltd.*, 956 F. Supp. 427, 439 (S.D.N.Y 1996); see also *Chew v. Dietrich*, 143 F.3d 24,

---

[3] Although the RICO claims have been dismissed from this case, the same is true of RICO. Because "RICO does not provide for international service of process...."" [P]laintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit" *First Capital Asset Mgmt., Inc. v. Brickelbush, Inc*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002) (quoting *Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.*, 26 F. Supp. 2d 593, 601 (S:D:N:Y 1998) footnotes omitted).

28 n.4 (2d Cir. 1998); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996); *COMSAT Corp. v. Finshipyards S.A.M*, 900 F. Supp. 515, 525 (D.D.C. 1995)). So deficient are Plaintiffs' allegations, however, that the expanded geographic scope of the minimum contacts analysis under Rule 4(k)(2) does nothing to bolster the Plaintiff's claim that this Court may constitutionally exercise personal jurisdiction over Yeslam Binladin.

Personal Jurisdiction is determined on a defendant-by-defendant basis. Yeslam Binladin is named in the Complaint solely in his alleged role as an officer or director of Mohammed Binladin Organization ("MBO"), described by Plaintiffs as an affiliate of Saudi Binladin Group ("SBG") (3AC § 325). As a general rule, "personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity. (See *Wiggins v. Equifax, Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994)). Because Plaintiffs here have failed to allege a single jurisdictional contact attributable to Yeslam Binladin, much less any his personal capacity, jurisdiction over him fails. (See *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 73-74 (D.D.C. 1996): "dismissing for want of specific facts supporting jurisdiction over individual officers and employees").

## B.   Yeslam Binladin Did Not "Purposefully Direct" His or Any Conduct At the United States

Plaintiffs cannot argue that Yeslam Binladin brought himself within the jurisdiction of this Court because he "purposefully directed" or "expressly aimed" his allegedly tortuous conduct at the United States. In support of such an argument as the other defendants, Plaintiffs principally rely on *Burger King v. Rudzewicz*, 417 U.S. 462 (1985) and *Calder v. Jones*, 465 U.S. 783 (1984). In the D.C. District Court, Judge Robertson already found such a theory of jurisdiction unpersuasive as to a defendant "whose actions [may] have led to terrorist activity in the United States... whether or

not he himself has targeted the United States". (*Burnett v. Al Baraka Inv. & Dev. Corp*, No. CIV. A. 02-1616, 2003 WL 22683337, at *11 (D.D.C. Nov 14, 2003) (*Burnett II*)). Specifically, that Court acknowledged that under *Burger King* "it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (quoting *Burger King*, 471 U.S. at 475, emphasis added). The *Burger King* decision emphasized the bottom line "the constitutional touchstone [for personal jurisdiction] remains whether the defendant purposefully established 'minimum contacts' in the forum State" (*Burger King*, 471, U.S. at 474, internal citation omitted). To that end, the exercise of personal jurisdiction in *Burger King* was founded on the defendant's specific actions that created a "substantial connection" with the forum (*Burger King*, 471, U.S. at 475-6). In fact, the Court devoted much of its opinion to enumerating and evaluating the defendant's contacts with the forum (*Burger King*, 471, U.S. at 479-81).

Plaintiffs cannot escape that minimum contacts inquiry simply by alleging involvement in an intentional tort committed within the forum. Again, as Judge Robertson has already recognized, *Calder* does not support the exercise of personal jurisdiction on that basis. (See *Burnett II*, 2003 WL 22683337, at *10-11). To the contrary, the courts of appeals have observed that "[w]e do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." (See *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985), *cert. Denied*, 475 U.S. 1122 (1986); see also *Far West Capital v. Towne*, 46 F. 3d 1071, 1078 (10th Cir. 1995): stating that courts applying *Calder* "have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction.").

In any event, the 3AC falls drastically short of alleging that Yeslam Binladin's actions, if any, were "expressly aimed" or "purposefully directed" at the United States, nor does it in any way indicate how his alleged conduct could be constructed as such. Notably, the allegations against Prince Sultan, which Judge Robertson found

insufficient, were far more concrete[4]. Plaintiffs' briefs against Prince Sultan specifically identified the entities to which he is alleged to have donated and what those entities were allegedly doing with the money donated by Prince Sultan. Most importantly, Plaintiffs also explained how those entities operated and maintained offices in United States, and by through those facts how Prince Sultan's conduct could be constructed as "purposefully directed" at the United Sates. Plaintiffs fail to allege *even a single act* of Yeslam Binladin that was directed at The United States.

## C    Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory of Jurisdiction

Having been unable to establish the necessary minimum contacts, Plaintiffs will likely attempt to persuade this Court that it may exercise personal jurisdiction over Yeslam Binladin under a conspiracy theory of jurisdiction[5]. That attempt is fundamentally flawed. First, no court in the D.C. Circuit has ever recognized conspiracy jurisdiction where the defendant has contested the existence of conspiracy: "approval [of a conspiracy theory of jurisdiction] has been given only in cases where the defendant has not contested the existence of the conspiracy" (See *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 122 (D.D.C. 200). Second, even if conspiracy jurisdiction is available, Plaintiffs' allegations fall woefully short of the necessary showing to establish personal jurisdiction on that basis. Mere conclusory allegations are not sufficient. (See *Second Amendment Found.*, 274 F.3d at 524: "The allegation that the [defendants] 'conspired together' represents nothing more than a legal conclusion, which we have held 'does not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction."; *Naartex v. Watt,*

---

[4] See Pl. Opp to Sultan Mot. To Dis. At 34 (June 16, 2003); Pl. Sur-Reply Opp. To Sultan Mot. To Dis at 29 (Sept. 2, 2003).
[5] The conspiracy theory of jurisdiction is premised on imputing the acts of one conspirator, over whom the court has jurisdiction, to other participants in the conspiracy. See *In Re Vitamins Antitrust Litig.*, no 99-197, 2001 U.S. Dist. LEXIS 25073, at * 42 (D.D.C. Oct. 30, 2001). Jurisdiction is based on the conspirators' contacts with the forum under either the appropriate long-arm statute or in this case, Rule 4(k)(2).

722 F.2d 779, 787-88 (D.C. Cir. 1983): rejecting "bald speculation" and "bland assertions" of conspiracy as a basis for personal jurisdiction; *Lehigh Valley Indus. V. Birenbaum*, 527 F2d 87, 93-94 (2d Cir. 1975): "the bland assertion of conspiracy is insufficient to establish personal jurisdiction"; *Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998: "Conclusory allegations are insufficient to meet the somewhat stringent pleading requirements of this Circuit when conspiracy is alleged".).

Indeed, "[w]hile the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not satisfy the Rule's requirements" (See *Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003); see also *Caraveo v. Nielson Media Research, Inc.*, No 01 Civ. 9609, 2003 WL 169767, at *4 (S.D.N.Y. Jan. 22, 2003): "conclusory allegations of conspiracy ... do not meet the standards of pleading a conspiracy claim"). The Plaintiffs here have failed to meet even this low threshold. In fact, the Plaintiffs have pleaded nothing more than the plaintiff in *Hutton*: they have simply included the words 'conspiracy' and 'acted in concert' while omitting any facts supporting an inference that Yeslam Binladin entered into any such conspiracy.

A more cautious approach is especially warranted when plaintiffs attempt – as they do here – to have this court exercise personal jurisdiction over an alleged co-conspirator who is an alien, in light of "Supreme Court's admonishment that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into international field.'" (See *Dooley v. United Tech. Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992) (quoting *Asahi*, 480 U.S. at 115); see also *Galerie Gmurzynska*, 257 F. Supp. 2d 627: "When a court bases personal jurisdiction on effects in a state caused by acts done elsewhere it must proceed with caution, particularly in the international context" (internal quotation and citation omitted)). In *Dooley*, to support personal jurisdiction, the plaintiff set forth, in extraordinary detail, his allegations of conspiracy and each defendant's alleged involvement. He has catalogued numerous meeting allegedly held by the co-conspirators, and in many instances, describes discussions which took place (See *Dooley v. United Tech. Corp.*,

786 F. Supp. 65, 78 (D.D.C. 1992). Here, in contrast, Plaintiffs' allegations with respect to Yeslam Binladin's participation in a conspiracy amount to nothing more than legal conclusions bereft of *any* factual underpinnings to support personal jurisdiction over this alien defendant.

## III.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM AGAINST YESLAM BINLADIN UNDER THE ANTI-TERRORISM ACT, 18 U.S.C. § 2333

Plaintiffs have failed to allege facts sufficient to plead a claim under the ATA against Yeslam Binladin on either a primary liability or joint tort theory. There are no allegations that Yeslam Binladin provided funding or other material support to any terrorist groups. *Contrats Boim v. Quranic Literacy Inst. & Holy Land Found.*, 291 F.3d 1000, 1004 (7th Cir. 2002): "permitting ATA claim where plaintiffs alleged that defendant charities provided funds to Hamas that were used to purchase vehicle, weapons and ammunition used in murder of plaintiff's decedent, as well as to pay a stipend to one of the attackers". Indeed, Plaintiffs do not even allege, as they do with respect to other defendants in this litigation, that Yeslam Binladin contributed to charities that funneled money to terrorists. Instead, plaintiffs base their claim primarily on the SBG alleged support of the U.S.-backed Afghan freedom fighters during the 1980s, on SBG's involvement in two legitimate construction projects in Sudan in the early 1990s and on Yeslam Binladin's role as an officer or director of MBO, described by Plaintiffs as an affiliate SBG (3AC § 325), none of which they even attempt to connect to terrorist activities of any kind, let alone the September 11 attacks. Beyond that, Plaintiffs simply string together loose and disconnected relations in an attempt to associate Yeslam Binladin in with alleged terrorists. Those allegations, taken individually or together, are inadequate to state a claim for relief under the ATA. The Court should dismiss Plaintiffs' ATA claim, which is based not on inferences drawn from facts stated in the Complaint but instead on pure conjecture regarding what Yeslam Binladin might has known or has done.

## A    Plaintiffs Have Failed to Establish Primary Liability Under the ATA

The ATA allows "any national of the United States injured his or her person, property or business by reason of an act of international terrorism" to assert a claim against defendants involved in perpetrating that act. 18 U.S.C. § 2333. In the first appellate case applying the ATA, the Seventh Circuit found that the term "international terrorism" defined in 18 U.S.C. § 2331(1), encompassed knowingly and intentionally providing funds or other material support[6] for terrorist activities. (See *Boim*, 291 F.3d at 1011-12; see also *Slip Op.* at 37-38). To be actionable under § 2333, however, plaintiff must have been injured "by reason of" the defendant's conduct.

While it is clear the Plaintiffs were injured by reason of the September 11 attacks and those attacks meet the ATA's definition of international terrorism, it is just as clear that Yeslam Binladin did not and is not alleged to have participated in any way in those attacks. Therefore, to establish primary liability under ATA – that is, without resort to joint tort theories of aiding and abetting or conspiracy – Plaintiffs must allege that Yeslam Binladin knowingly and intentionally provided material support to terrorism, by reason of which Plaintiffs were injured.

1.    None of the Facts Alleged in the Complaint support an Inference That Yeslam Binladin Provided Material Support to Terrorism

Plaintiffs' attempt to make a claim of primary liability under ATA fails first because Yeslam Binladin alleged conduct cannot, as a matter of law, constitute material support of terrorism. To constitute an actionable act of international terrorism under the *Boim* formulation, material support must be given to terrorist organizations or to further terrorism. (See *Boim*, 291 F.3d at 1016: finding that "Congress considered

---

[6] Material support or resources is defined to include "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communication equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets…" 18 U.S.C. §2339A(b)

the provision of material support to terrorists an act of international terrorism"). The vast majority of the conduct alleged of the conduct alleged as to Yeslam Binladin, however, has no alleged or actual connection to terrorism of any kind. The ONLY allegation by Plaintiffs of Yeslam Binladin's alleged complicity in the charged conduct – and apparently the entire basis of Plaintiffs' Jurisdictional claim against this defendant – is through Yeslam Binladin's alleged position on the board of directors of MBO, a subsidiary of SBG. Yeslam Binladin is alleged by Plaintiffs to have done absolutely nothing, to have committed no act, nor have exercised any conduct whatsoever (3AC ¶325). He is in this complaint simply because his alleged to be a member of board of directors of MBO.[7]

Plaintiffs allege simply that Mohammed Jamal Khalifa, who they claim was a known figure in international terrorist networks, was "taken in" by the Mohammed Binladin Organization ("MBO"), a SBG subsidiary. Yeslam Binladin is alleged to be a member of the MBO board (3AC ¶ 325). This allegation is far too vague to suggest any material support. Plaintiffs further allege that Khalifa used MBO's address on a visa application (3AC ¶ 324), however Plaintiffs do not allege that MBO or SBG affirmatively acted to assist Khalifa.

Without *any* allegations that Yeslam Binladin knowingly took any affirmative acts to assist any terrorist activities that Osama Bin Laden or al Quaeda might have engaged, these allegations cannot support a material support theory against Yeslam Binladin. Similarly, Plaintiffs allege several visits by Binladin Family members to Osama Bin Laden while he lived in the Sudan, but fail to offer any explanation of how these visits involve the provision of material support (3AC ¶ 318). There is no allegation whatsoever that Yeslam Binladin was one of those family members who ever visited Osama Bin Laden in the Sudan.

Plaintiffs also appear to allege indirectly that Tariq Binladin, a member of the board of directors of MBO, provided material support for terrorism, but that attempt

---

[7] The entirety of the allegation against Yeslam Binladin can be found at 3AC ¶ 325; it reads: "The Mohamed Binladin Organization is a wholly-owned subsidiary of the Saudi Binladin Group The board members include Saleh Gazaz, Mohamed Bahareth, Abdullah Bin Said, Mohamed Nur Rahimi, Bakr M. bin Laden, Tarek M. bin Laden, Omar M. bin Laden, and Yeslam M. bin Laden."

fails as a matter of law and, whether in law or fact, has no application to Yeslam Binladin whatsoever. Plaintiffs allege that Tariq Binladin was the "general supervisor" of the IIRO"[I]n the early 1990s" and that he "had a prominent role in 1990" (3AC §316-327). Even if the IIRO may have later been linked to terrorism, these allegations simply cannot support an inference that Tariq Binladin, or one of the other members of the board of MBO, provided material support to terrorism. Although Plaintiffs allege that the IIRO is "a charity that has aided and abetted and materially supported al Quaeda and international terrorism" (3AC §326), they allege nothing that would link Tariq to any such activities – and certainly nothing to link any such activities to Yeslam Binladin. Indeed, Plaintiffs themselves describe Tariq Binladin's role in the IIRO as follows: "He has been working quietly for the orphans and the immigrants in the Islamic world" (3AC ¶327). Moreover, even if Plaintiffs had a claim against Tariq Binladin, it could not be extended through vicarious liability to MBO or SBG because there is no allegation to support an inference that Tariq Binladin's role alleged in the IIRO was undertaken within the scope of his MBO or SBG employment (See *Slip OP.* at 45: "noting that to impose vicarious liability on a company for acts of its officers, plaintiffs must make allegations that would support an inference that the officer was acting within the scope of his employment").


2    <u>Even if Yeslam Binladin Alleged Conduct be Constructed as Material Support of Terrorism, the Plaintiffs Were Not Injured "By Reason of" That Conduct</u>

Even if Plaintiffs' allegations were sufficient to establish that Yeslam Binladin provided material support to terrorism, their ATA claim would fail as a matter of law because they have not adequately pleaded that they suffered their injured "by reason of" the Yeslam Binladin's conduct. The ATA, patterned on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), creates a cause of action only for injuries sustained "by reason of" a defendant's act of international terrorism. 18 U.S.C. § 2333. As this Court recognized, this statuary languages has, as it has in RICO, been

understood to require proximate causation. (See *Slip OP.* at 35, 39-40; see also *Boim*, 291 F.3d at 1011). In doing so, the statute requires not simply foreseeability but also a direct connection between the defendants' alleged conduct and plaintiffs injuries[8]. Thus, in constructing identical "by reason of" language in RICO, the Supreme Court held that this formulation "demand[s]... some direct relation between the injury asserted and the injurious conduct alleged". (See *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); see also *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 22 (D.D.C. 1998): "Proximate cause requires a direct relation between the defendant's conduct and the plaintiff's harm..."). *Holmes* constructed this language in RICO consistent with the settled interpretation of similar language under the Clayton Act. (See *Holmes*, 503 U.S. at 267-69). As *Boim* recognized, for the same reason the ATA should be constructed with reference to the settled interpretation of identical language in the RICO context. (See *Boim*, 291 F.3d at 1011[9].

It is appropriate for the Court to decide this issue at the pleading stage. The D.C. Circuit, for example, has upheld a motion to dismiss where a complaint "pleads no fact suggesting 'some direct relation between the injury asserted and the injurious conduct alleged' – in other words, proximate causation". (See *Browning*, 292 F.3d at 248; see

---

[8] "[t]he direct injury test is not the sole requirement of proximate causation". *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235-36 (2d Cir. 1999). The traditional rules of proximate causation also require that "plaintiff's injury was reasonably foreseeable", *id*; see also *Boim*, 291 F.3d at 1012; *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C.Cir 1983), and that the defendant's conduct was a "a substantial factor in the sequence of responsible causation". *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002) (quoting *Cox v. Admin. United Sates Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994)); see also *Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 n.4 (D.D.C. 2000: "a defendant [RICO violations) proximately cause [a] plaintiff's injuries when such acts are substantial factor in the sequence of responsible causation *and* where the plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence of those acts"(emphasis added)), *aff'd* 48 Fed Appx. 1, 2, 2002 WL 31248491 (D.C. Cir. Oct. 7, 2002); *BCCI Holdings (Luxembourg), SA v. Khalil*, 56 F. Supp. 2d 14, 56 (D.D.C. 1999)(same), *aff'd in relevant part*, 214 F. 3d 168, 173-74 (D.C.Cir. 2000).

[9] The same "direct relationship" requirement as an element of proximate causation finds support in international terrorism cases brought under the Alien Tort Claims Act ("ATA"), the Torture Victim Protection Act ("TVPA"), and the Foreign Sovereign Immunities Act ("FSIA"). For example, this Court recently rejected an FISA claim on causation grounds because while "plaintiffs ha[d] established the [defendant] Iran provided extensive support to HAMAS, ... their proof [did] not link that support to the Ungar v. Islamic Republic murders specifically". *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99, (D.D.C. 2002). This Court also rejected an ATCA claim where "[t]he assert links between [Defendant] Haddam and the acts committed by armed Islamic groups against civilians [were] much too tenuous" because the plaintiffs had failed to "directly link[] Haddam" to the injurious acts. *Doe v. Islamic Salvation Front*, 257F. Supp. 2d 115, 121, 123 (D.D.C. 2003). Similarly, the Fifth Circuit affirmed the dismissal of an ATCA complaint where plaintiff failed to "demonstrate any causal connection between [defendant's] conduct and [plaintiff's] prolonged imprisonment and torture". *Carmichael v. United Tech. Corp.*, 835 F.2d 109, 115 (5th Cir. 1988).

also *Caraballo v. United States*,  830 F. 2d 19, 22 (2d Cir. 1987): stating that where the actual cause of plaintiff's injury is undisputed, whether the defendant's conduct was the proximate cause of the injury is a question of law for the court). Indeed, because under ATA proximate cause is not just an element of the prima facie case but is rather a requirement of Plaintiffs' standing, the Court should conduct a careful inquiry at the pleading stage. The "by reason of" requirement in both ATA and RICO appears under the heading of "action and jurisdiction" and specifically limits the ability of a plaintiff to maintain a claim. It is thus an element of standing: "The Supreme Court has explained these injury and causation requirements as aspects of standing, rather than elements of civil RICO plaintiff's prima facie case". (See *Chisolm v. TranSouth Fin. Corp.*, 95 F. 3d 331, 337 n.6 (4th Cir. 1996) (quoting *Brandenburg v. Siedel*, 859 F.2d 1179, 1187 (4th Cir. 1988) *overruled on other grounds by Quackenbush v. Allstate*, 517 U.S. 706 (1996); citing *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 496-97 (1985)). Therefore, notwithstanding the permissive standards of notice pleading under the federal rules, the failure to allege facts establishing proximate causation under the ATA – just as under RICO – mandates dismissal. (See *Lerner v. Fleet Bank, NA*, 318 F.3d 113, 122 (2d Cir. 2003): affirming dismissal of RICO claims and stating: "As plaintiffs cannot show that the defendants' alleged [RICO] violations… proximately caused their injuries, they lack standing to pursue their RICO claims."), *petition for cert. Filed*, 72 U.S.L.W. 3129 (U.S. Aug. 5, 2003) (No. 03.189).

It is for this reason that the absence of proximate cause in such cases is often determined, in this circuit and elsewhere, upon a motion to dismiss. (See, e.g. *Browning*, 292 F.3d at 248: requiring dismissal of RICO claim for failure to allege facts suggesting a direct relation between the injury and the defendant's conduct); see also *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F. 3d 768, 774 (9th Cir. 2002): same; *Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1069 (D.C. Cir. 2001: same, *cert. denied*, 534 U.S. 994 (2001); *Newton v. Tyson Foods, inc*, 207 F.3d 444, 447 (8th Cir 2000): same; *Giro v. Banco Espanol de Credito, SA*, No 99-7883, 2000 WL 287694, at *2 (2d Cir. Mar. 17, 2000): same; *Brandenburg*, 859 F. 2d at 1189: "the legal cause determination is properly one of law

for the court, taking into consideration such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the casual connection"); *Bona v. Barasch,* No 01 Civ. 2289, 2003 WL 1395932, at * 24 (S.D.N.Y. Mar. 20, 2003): dismissing RICO claims because civil RICO requires "a direct connection between the injury asserted and the injurious conduct alleged" and "[a]bsent such a direct connection, a plaintiffs has no standing to bring a RICO suit" (citation and quotations omitted); *Greenwald v. Hall*, No 01 Civ. 5405, 2003 WL 164279. at *1 (S.D.N.Y. Jan. 23, 2003): same).

Here, as in those cases, Plaintiffs fail to allege a direct link between Yeslam Binladin's conduct and Plaintiffs' injuries. Plaintiffs' vague and conclusory assertions that the acts of *all* "Defendants" "proximately caused" their injuries, which were "reasonably foreseeable", are insufficient. (See *Mountain States*, 306 F. 3d at 1134-35: "the court need not accept…legal conclusions cast in form of factual allegations"). Moreover, the specific allegations made against Yeslam Binladin fail to indicate any link, much less a direct one, between his alleged conduct and the September 11 attacks that injured Plaintiffs and many others. As already discussed above, the sole allegation against Yeslam Binladin focuses *only* on his position as a member of the board of MBO, an SBG subsidiary. Putting aside the fact that these allegations fail even to allege wrongdoing, it is clear that these alleged acts lack any connection, much less a direct one, to the September 11 attacks.

Plaintiffs themselves have acknowledged that proximate cause at a minimum requires some ongoing support of al Qaeda after it began targeting the United States. (See *Pl. Opp. to Princ Turki Mot to Dismiss* at 53 (July 2003): suggesting that Plaintiffs must allege that defendant "supported al Qaeda during the period when it was targeting the United States" in order to state a claim; see also Tr.of June 24, 2003 Motions Hearing ("Hearing Tr") at 75-78: Plaintiffs attorney Ronald Motley stated that if Plaintiffs are required to link defendants' support directly to September 11 then "we don't have a case against most of these defendants" *Id*, at 78:2).

Nothing in the Complaint links the September 11 attacks to Yeslam Binladin's other alleged conduct either. As already explained above, allegations regarding Khalifa

and isolated and distant contact to Osama Bin Laden by others -- NOT by Yeslam Binladin -- have no alleged connection with terrorism of any kind, let alone the September 11 attacks. Therefore, the Complaint fails to adequately allege the requisite proximate causation and must be dismissed.

3.  <u>Criminal Prohibitions on Support to Terrorist Group Do Not Relieve Plaintiffs of the Burden to Plead a Direct Link Between Yeslam Binladin's Conduct and the Plaintiffs' Injuries</u>

In search of a way to eliminate the direct link requirement, Plaintiffs go beyond § 2333 to the criminal provisions of the ATA. This approach finds no support in *Boim*. The Seventh Circuit did look to §§2339A and 2339B, but it considered them "relevant to the [civil] claim *only to extent* that [they] help[] define what conduct Congress intended to include in its definition of 'international terrorism'. *Boim*, 291 F.3d at 1025 (emphasis added). Plaintiffs use the ATA's criminal provisions for a much different purpose – to obviate §2333's other elements. Neither the text of the statute nor *Boim* sanctions that.

Plaintiffs also erroneously rely on a wholly inapposite case, *Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000). That case interprets only 18 U.S.C. §2339B, one of the criminal provisions of the ATA, and stands for a very simple premise: it is constitutionally permissible for Congress to criminalize the provision of material support to terrorist organizations.(See *Humanitarian Law Project*, 205 F.3d at 1133-37). That much is clear. But *Humanitarian Law Project* says nothing about the requirements of §2333. To bring a claim for *civil* liability arising out of the conduct proscribed in §2339B, §2333's plain text requires not only that the defendant engaged in conduct constituting "an act of international terrorism", but also that the Plaintiffs were injured "by reason of" that act. Neither §2339B nor *Humanitarian Law Project*, even purport to alter that requirement.

Plaintiffs point to an additional criminal provision, §2339C that is equally irrelevant (See Pl. Opp. to SBG Defendants' motion to dismiss, at 15 n.8). That provision, enacted after September 11, 2001 criminalizes the collection or provision of funds with the intention that those funds be used to carry out a terrorist act and provides that "[f]or an act to constitute an offense set forth in this subsection, it shall not be necessary that the funds were actually used to carry out a predicate act". 18 U.S.C. § 2339C(a)(3). By its terms, that provision reaches only "this subsection", §2339C, and therefore has no impact on civil liability under § 2333. Moreover, Congress' intention to hold an individual *criminally* liable for financing terrorism even if the money was never actually used to commit a terrorist act says nothing about civil liability. Indeed, reading this intention into § 2333 would render it nonsensical because it would eliminate the prerequisite of the terrorist act that gives rise to Plaintiffs' injuries and therefore to their right to sue.

**B.    Plaintiffs Cannot State an ATA Claim Based on a Joint Tort Theory**

Absent allegations to establish any material support for terrorism, Plaintiffs are left to rely on the joint tort theories of aiding and abetting or conspiracy. As to Yeslam Binladin, however, the Plaintiffs' allegations do not state a claim under either theory.

1.    Plaintiffs Have Failed to Adequately Allege an Aiding an Abetting Claim Against Yeslam Binladin

Plaintiffs' attempt to state a claim for aiding and abetting under the ATA fails on the key element of "substantial assistance" to underlying tort"[10]. As the Court has

---

[10] Plaintiffs' aiding and abetting claim also fails because they fail to allege facts that support an inference that Yeslam Binladin acted knowingly (see infra III(A)(2)). Proximate cause is no less required under Plaintiffs' joint tort theories than in a primary violation of the ATA. (See *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 226-227 (S.D.N.Y. 2003): reading *Boim* to require proximate cause for adding and abetting claim.; see

recognized, this element requires the Plaintiffs to demonstrate that a defendant's alleged conduct substantially assisted the particular act that injured the Plaintiffs: the September 11 attacks. (See *Slip Op.* at 34: noting that the Plaintiffs' allegation that Al-Haramain financed al Qaeda in 2001 supports an inference that such financing "helped pay for the September 11 attacks"; see also *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.D.C. 200): Plaintiffs must show "that the [defendant's] 'knowing and substantial assistance' extended to the 'principal violation' – the attack on the [plaintiffs] to establish aiding and abetting liability"; *Halberstam v. Welch*, 705 F.2d 472, 477.78 (D. C. Cir. 1983): citing among the elements of aiding and abetting the requirement that the defendant "substantially assist[ed]" in the commission of the tortuous or unlawful act that caused the Plaintiffs' injuries; see also *Boim*, 291 F.3d at 1020-21: citing *Halberstam* for the elements of civil aiding and abetting). Here, however, Plaintiffs' allege absolutely no facts whatsoever to support an inference that Yeslam Binladin helped pay for or otherwise provided substantial assistance to Osama Bin Laden, al Qaeda, or anyone else in connection with the September 11 attacks that caused Plaintiffs' injuries.

Even under liberal pleading rules, Plaintiffs cannot state an aiding and abetting claim simply by repeating the general, conclusory allegation that defendant as a group "aided [and] abetted… acts of international terrorism" (See 3AC §650; see also 3AC §§ 649, 684). Such allegations are impermissibly conclusory and unsupported by any facts. (see *Mountain States,* 306 F.3d at 1134-35; *Browning*, 292 F. 3d at 242.) failure to allege specific facts warrants dismissal at the pleading stage. (See e.g., *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987): affirming dismissal of aiding and abetting claim for lack of allegations that defendant purposefully assisted in the accomplishment of alleged illegal scheme; *Landy v. Fed. Deposit Ins. Corp.,* 486 F.2d 139, 163 (3d Cir. 1973): dismissing aiding and abetting

---

also *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F. 3d 519, 537 (6th Cir. 2000): "the alleged substantial assistance must be the proximate cause of the plaintiff's harm"; *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir. 1985): plaintiffs have burden of showing a "substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff", internal quotations omitted; *Ungar*, 211 F. Supp. 2d at 99: in denying default judgment for aiding and abetting claim, court held that plaintiffs must show that "the acts of the defendants were a necessary condition or 'but for' cause of the" plaintiffs' injuries).

claim because complaint failed to allege substantial assistance in the underlying tort; *Overseas Private Investment Corp. (OPIC) v. Industria de Pesca, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) : dismissing aiding and abetting claim because plaintiffs failed to allege conduct that constitutes substantial assistance).

Plaintiffs' specific allegations include no facts supporting a connection between Yeslam Binladin and the September 11 attacks, let alone facts that support an inference that Yeslam Binladin provided substantial assistance to those attacks. The Court in this case found support for an inference of substantial assistance by defendant Al-Haramain based on allegations that it had funded al Qaeda in 2001, which the Court found to be "a temporal allegations that does not prove but provides support for a inference that Al-Haramain's money helped pay for the September 11 attacks, (*Slip Op.* at 34). Plaintiffs allege nothing of kind with respect to Yeslam Binladin.

The allegation that Khalifa listed the address of MBO on a visa application cannot sustain a finding of substantial assistance, both because there is no alleged connection to any terrorist acts, and more fundamentally, because the allegation does not involve any affirmative conduct on the part of Yeslam Binladin. (See *OPIC,* 920 F. Supp. At 210: dismissing aiding and abetting claim where plaintiffs fail to allege affirmative conduct by defendant in aid of the underlying tort).

The only allegations with respect to Yeslam Binladin that even arguably relate to the September 11 attacks are the allegations that unspecified Binladin members have had limited contact with Osama Bin Laden – who was obviously involved in the attacks - at unspecified points prior to 1997. The Complaint alleges that "[i]n a 1997 interview, Osama Bin Laden revealed that on nine different occasions, his mother, uncle and brothers had visited him in Khartoum in Sudan" (3AC §318). These allegations are combined with the rank speculation of a Dr. Saad Al Fagih to suggest a "close" relationship between some of the brothers of Osama Bin Laden to Bin Laden himself, notwithstanding the public break between the family and Osama Bin Laden in 1993 (3AC § 317). There is however, not even a suggestion that Yeslam Binladin was one of the brothers who maintained contact with Osama Bin Laden.  These allegations fall well short of alleging the connection necessary to establish substantial assistance

to September 11 attacks. As is clear from the fact that the interview relied on by the Plaintiffs took place in 1997, these visits took place years before September 11, 2001. Further, no facts are pleaded from which to infer any assistance to terrorist activities. Even construing these allegations most generously to Plaintiffs does not help their aiding and abetting claim. The D.C. Circuit warned that a family relationship between the defendant and the principal tortfeasor is cause for a court to be vigilant against confusing the normal activities of a family member with assistance rising to level sufficient to find joint liability.(See *Halberstam,* 705 F.2d at 484, 488; see *In re TMJ Implants Prods. Liab. Litig.,* 113 F.3d 1484, 1496 (8th Cir. 1997): declining to give weight to parent company's relation to a subsidiary company without further evidence of support; noting *Halberstam's* caution against overemphasizing family relationship). Without any allegations of tangible assistance to Osama Bin Laden's or al Qaeda's terrorist activities, much less the September 11 attacks, Plaintiffs cannot maintain a suggestion, let alone a claim, that Yeslam Binladin aided and abetted those attacks simply through vague allegations of family connections.

2.  <u>Plaintiffs Have Not Adequately Alleged That Yeslam Binladin Participated in a Terrorist Conspiracy</u>

Plaintiffs' complaint also fails to allege that Yeslam Binladin participated in a conspiracy to commit or support any act of international terrorism. In the same way that aiding and abetting liability turns on the provisions of substantial assistance, conspiracy liability turns on the existence of an agreement. (See *Halberstam,* 705 F.2d at 479: "the essence of conspiracy is an agreement"; *Ungar,* 211 F. Supp. 2d at 99: "conspiracy hinges upon proof of an agreement to participate in tortuous conduct", internal quotation omitted). Indeed, it is this element of agreement that allows liability for civil conspiracy to stretch farther temporally and physically because the agreement "substitute[s] for the 'substantiality' of an aider-abettor's assistance in carrying out the violation.".(See *Halberstam,* 705 F.2d at 485). Although, as this Court noted, there is

no heightened pleading standard applicable to conspiracy claims (Slip Op. at 48), such claims may not rest on bare legal conclusions or inferences unsupported by the facts in the complaint.(See *Id a* at 29: citing *Browning*, 292 F.3d at 242); see also *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003): denied after *Swierkiewicz* and holding that "... conspiracy claims must be pleaded with some degree of specificity and... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim..." (citation omitted); *Jackson v. Blue Dolphin Communications of North Carolina*, 226 F. Supp. 2d 785, 789 (W.D.N.C. 2002): acknowledging *Swierkiewicz* and dismissing conspiracy claim because plaintiff made only general and conclusory allegations without supporting facts). Thus, Plaintiffs' bare allegations that "the defendants conspired with and agreed to provide material support... to Al Qaeda" (3AC § 679) and that "[d]efendants engaged in ...conspiratorial acts ...designed and intended ...to cause a terrorist attack on the United States" (3AC § 680) are too vague and conclusory to support Plaintiffs' conspiracy claim against Yeslam Binladin.

Here, there are no allegations to support the inference of necessary agreement between Yeslam Binladin and anyone engaged in terrorism, much less the September 11 attacks. There are obviously no allegations from which on can directly infer an agreement. Plaintiffs allege no contact between Yeslam Binladin and the September 11 terrorists themselves. The contacts Plaintiffs allege between unspecified Binladin family members and Osama Bin Laden are no more recent than the early 1990s and non, as explained above, relate in any way to terrorist activities. Moreover, although an agreement may in an appropriate case be inferred from circumstantial evidence, conspiracy requires at a minimum "a 'common and unlawful plan whose goals are known to all members', even if all parties are not privy to each individual act taken in furtherance of the common objective" (See *Ungar*, 211 F. Supp. 2d at 100 (quoting *Hobson v. Wilson*, 737 F. 3d 1, 55 (D.C.Cir. 1984)). Plaintiffs have alleged nothing from which one could infer that Yeslam Binladin shared any goal or plan with Osama Bin Laden and al Qaeda. As already explained, none of its conduct is tied in any way to terrorist activities. To be sure, SBG, which MBO is a subsidiary, is alleged to have pursued the same goal as Osama Bin Laden in Afghanistan during 1980s. But in this

respect they were joined by the United States Government, which provided billions of dollars in support. Were this sufficient to infer a common plan to commit terrorist acts, the United States would be a co-conspirator.

Moreover, where, as here, the defendant is neither alleged to have been present at the commission of the underlying tort nor to have committed any similar act, "a more extensive set of inferences to link the actors together" is required (See *Halberstam*, 705, F. 2d at 481). The court must look to, among other things, "the proximity in time and place of acts, and the duration of the actor's joint activity "(See *Id*). There is no allegation that Yeslam Binladin knowingly supported al Qaeda, especially after Osama Bin Laden began to target the United States. Nor is there any allegation that Yeslam Binladin did anything to further al Qaeda's interests. The absence of such allegations critically distinguishes Plaintiffs' conspiracy claim against Yeslam Binladin from the conspiracy claim alleged against Al-Haramain that this Court found sufficient under Rule 12(b)(6). (See July 25 Slip. Op. at 35). The allegations against Al-Haramain include the claim that "[m]any of Al-Haramain's foreign branches had been exposed for providing direct and material support to al Qaeda", that two had been designated as terrorist entities by the United States (3AC § 155(cited by the Court, Slip Op. at 34)), and that Al-Haramain had aided al Qaeda terrorist groups as recently as 2001 (3AC § 169( cited by the Court, Slip Op. at 34)). Plaintiffs have alleged nothing like that connection, either temporally or substantively, against Yeslam Binladin. The affirmative conduct Plaintiffs have alleged against Yeslam Binladin is simply Yeslam Binladin's being a member of the Board of Directors of MBO. Allegations against SBG, MBO's parent company, occurred more than a decade before the attacks, and the vague allegations they have made subsequent contact bear no connection to, and certainly support no inference of support for, any terrorist activities. They certainly have no relationship to Yeslam Binladin. Accordingly, Plaintiffs cannot maintain their ATA claim against Yeslam Binladin on a conspiracy theory.

### C    Plaintiffs Fail to Allege Any Facts Showing That Yeslam Binladin Acted "Knowingly" in support of the September 11 Terrorists, Osama Bin Laden or Al Qaeda

Plaintiffs also fail to allege adequate facts to establish knowledge on the part of Yeslam Binladin.   To be liable under § 2333 for providing material support to terrorists or for aiding and abetting, plaintiffs must show that the defendants did so knowingly and intentionally. (See *Boim*, 291 F.3d at 1011-12: see also *supra* III(B)(1)). Similarly, to be liable for aiding and abetting, the defendant must have had actual knowledge of the underlying tortious activity. (See *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 82-83 (1st Cir. 2001); see also *Diamond State Ins.Co v Worldwide Weather Trading LLC*, No 02 Civ. 2900, 2002 WL 31819217, at *6 (S.D.N.Y. Dec. 16, 2002): recognizing that a claim of aiding and abetting under New York law, constructive knowledge or allegations that the defendant "recklessly disregarded" or "should have known" of the wrongdoing cannot withstand a motion to dismiss).

Because MBO's alleged conduct is so remote from the September 11 attacks in time and location, the Plaintiffs' obligation to allege some facts from which knowledge can be inferred is heightened.  It is even more so when considered in the context of Yeslam Binladin's alleged tortuous conduct arising simply from his position as a member of the board of directors of MBO (See *In re TMJ*, 113 F.3d at 1495. explaining that in an aiding and abetting claim, the weaker the evidence of substantial assistance, the stronger must be the showing of knowledge; see also *Woodward v. Metro Bank of Dallas*, 522 F. 2d 84, 95 (5th Cir. 1975): explaining in the securities context that the knowledge requirement "scales upward when activity is more remote…A remote party must…know when and to what degree he is furthering" the tortuous activity). Plaintiffs themselves have acknowledged that in order to establish ATA liability under *Boim* they must show that defendant knew of Osama Bin Laden's activities directed against the United States *at that time* they provided the alleged support. (See Hearing Tr 75-78; Pl Opp. To African Muslim Agency Mot. To Dismiss

at 6-7 (June 28 2003); Pl. Opp. To Prince Turki Mot. To Dismiss at 53 (June 16, 2003); Pl. Opp to Prince Sultan Mot. To Dismiss at 54 (June 16, 2003).

Here, however, Plaintiffs have offered no facts from which it can be inferred that Yeslam Binladin knew of Osama Bin Laden's unlawful intentions at the time he engaged in any of his alleged conduct. Indeed, Plaintiffs' allegations regarding Yeslam Binladin – included in the chapter concerning SBG – are remarkably sparse for the entire decade preceding the September 11 attacks. Instead, Plaintiffs concentrate on the period during which SBG allegedly assisted Osama Bin Laden and others in the Afghan war against the Soviet Union – to which the U.S. government itself contributed billions of dollars – and the period immediately thereafter when SBG was involved in construction in Sudan. As for Yeslam Binladin the sole allegation against him is that he is a member of the board of MBO, a SBG subsidiary. All of that occurred well before Osama Bin Laden or al Qaeda were a known threat. Plaintiffs allege virtually no facts post-dating the family's publicized break with Osama Bin Laden in 1993. Plaintiff's allegations cannot give rise to any reasonable inference that Yeslam Binladin knew of Osama Bin Laden intention to attack the United States at the time SBG – and by inference MBO -- engaged in the alleged conduct.

## IV. PLAINTIFFS' ALLEGATIONS AGAINST YESLAM BINLADIN DO NOT MEET THE REQUIREMENTS OF THE ALIEN TORT CLAIMS ACT

The small subset of Plaintiffs who qualify as "aliens" have stated no claim against Yeslam Binladin under the Alien Tort Claims Act ("ATCA"). Specifically, Plaintiffs have failed to allege a "violation of the law of nations or a treaty of the United States" for which Yeslam Binladin, as private actor, can be held liable (See Slip Op. at 22: quoting *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 19-20 (D.D.C. 2000),

*aff'd*, 35 Fed Appx. 1, 2002 WL 1052012(D.C.Cir.2002)). The ATCA claim against him must therefore be dismissed pursuant to Rules 12(b)(1) and 12(b)(6)[11].

Private actors such as Yeslam Binladin may be held liable under the ATCA only for a handful of "offenses of universal concern" under the law of nations. (See *Doe v. Islamic Salvation Front*, 993 F. Supp. 3, 7-8(D.D.C. 1998): quoting *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1995)(internal quotations omitted)). The Court has already held that "aircraft hijacking is generally recognized" as such an offense.(See Slip Op. at 22)[12]. Yeslam Binladin, however, is not alleged to have planned, directed, or committed any acts of aircraft hijacking or any other acts in violation of the law of nations[13]. Rather, Plaintiffs seek to hold Yeslam Binladin liable under ATCA only for aiding and abetting or conspiracy with September 11 hijackers. (See 3AC § 654).

Plaintiffs' allegations regarding Yeslam Binladin purported role in supporting terrorism are inadequate to state such a claim. As noted above (See supra III(B) (1) and (2)), the Complaint fails to sufficiently allege that Yeslam Binladin aided and abetted or conspired to commit the September 11 attacks, Under international law, much like domestic law, "complicit liability" arises where the defendant provides "direct and substantial" assistance with "knowledge that the assistance will facilitate the crime". (See *Presbyterian Church of Sudan v. Talisman Energy Inc.*, 244 F. Supp. 2d 289, 323-24(S.D.N.Y. 2003): quoting omitted). Therefore, Plaintiffs ATCA claims fail on the same basis as their ATA claims. Apart from impermissibly conclusory allegations, Plaintiffs in no way connect Yeslam Binladin to the September 11 attacks, nor do their allegations give rise to any reasonable inferences that Yeslam Binladin

---

[11] Courts have adjudicated motions to dismiss ATCA claims under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.(Compare *Bao Ge*, 201 F. Supp. 2d at 19: operating pursuant to Rule 12(b)(1), with *Abdullahi v. Pfizer, Inc.*, no 01 Civ. 8118, 2002 WL 31082956, at 33 (S.D.N.Y. Sept 17, 2002): operating pursuant to Rule 12(b)(6)). As a practical matter, the result here should be the same under either rule.

[12] But see *United States v. Yousef*, 327 F3d 56, 103-04 (2d Cir. 2003): rejecting reliance on the *Restatement (Third) of Foreign Relations Law* §404 (1986) and cases relying thereon, such as *United States v. Yunis*, 924 F.2d 1086, 1092 (D.C.Cir. 1991), and reversing the district court's finding that "aircraft-related crime" was among the "near-unique offenses uniformly recognized by the civilized nations as an offenses against the Law of Nations"): *Sanchez-Espinoza v. Reagan*, 770 F2d 202, 205-07 (D.C.Cir. 1985): allegations of support of terrorism not cognizable against private individuals under the ATCA).

[13] Given this Court's ruling that aircraft hijacking is an international offense of universal concern, Yeslam Binladin does not here address Plaintiff's other claimed violations of international law. He expressly reserves the right to demonstrate, if appropriate, that these violations do not fall within the narrow category of offenses for which private actors may be held liable.

knowingly and intentionally provided support for their commission. Indeed, the insufficiency of Plaintiffs' allegations is particularly glaring in the ATCA context, where it has been held, post *Swierkiewicz*, that "the complaint must adequately plead a violation of international law" as a "jurisdictional prerequisite"(See *Abdullahi v. Pfizer, Inc.*, no 01 Civ. 8118, 2002 WL 31 082956, at *3 (S.D.N.Y. Sept. 17, 2002): quoting *Bigio v. Coca-Cola Co*, 239 F.3d 440, 447 (2d Cir. 2000)). It is well established, and remains true following *Swierkiewicz*, that ATCA claims "requir[e] a more searching review of the merits to establish jurisdiction" (See *Abdullahi*, 2002 WL 31082956, at *3: quoting *Filartiga v. Pena-Irala*, 630 F.2d 876, 887-88 (2d Cir. 1980)). Moreover, as another judge of the Court recently sated, a court faced with a question of subject matter jurisdiction "must give the complaint's factual allegations closer scrutiny than required [when ruling on] a motion to dismiss... for failure to state a claim" (See *Mikkilineni v. Pennsylvania*, no 02-1205, 2003 U.S. Dist. LEXIS 12669, at *10 (D.D.C. Aug. 5, 2003). As established above, plaintiffs' allegations fail to support any inference that Yeslam Binladin knowingly provided substantial assistance for September 11 attacks or in any way agreed to further their commission. Plaintiffs' ATCA claim against Yeslam Binladin must therefore be dismissed on that ground[14].

Moreover, even if Plaintiffs *had* pleaded allegations sufficient to establish a claim of aiding and abetting or conspiracy against Yeslam Binladin, Plaintiffs could rely on a theory of secondary ATCA liability in the instant case. All of the ATCA cases cited by plaintiffs in prior briefs and by the Court in this case that apply a theory of secondary liability involved a private actor's joint action with a state actor, not another private actor, to commit a violation of international law[15]. In *Presbyterian Church of Sudan v. Talisman Energy, Inc*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003), for example, the court noted that "many courts have addressed situations in which corporations were alleged

---

[14] Plaintiffs' ATCA claim also must be dismissed for failure to allege proximate causation. (See *Carmichael*, 835 F.2d at 115: affirming dismissal of ATCA claim where plaintiff failed to "demonstrate any causal connection between [defendant's] conduct and [plaintiff's] prolonged imprisonment and torture").

[15] See *Slip Op. at 23.24 : citing Talisman Energy*, 244 F. Supp 2d at 321; *Mehinovic v. Vuckovic*, 198 F. Supp 2d 1322, 1355 (N.D. Ga 2002); and *Eastman Kodak Co. v. Kavlin*, 978 F. Supp 1078, 1091-92 (S.D.Fla. 1997)); see also *Hilao v. Estate of Marcos*, 103 F3d 767, 776 (9th Cir. 1996); *Barrueto v. Larios*, 205 F. Supp 2d 1325, 1331-32(S.D.Fla 2002); *Doe v. Unocal Corp.*, 963 F. Supp. 880, 889-90 (C:D. Cal. 1997); *Abebe-Jira v. Negewo*, 72 F3d 844, 845-48 (11th Cir. 1996).

to have conspired with or aided and abetted *states*"; thus, the court held that plaintiffs could maintain a claim against a private company for alleged joint action "with *Sudan* to commit various violations of the law of nations" including genocide, slavery, and war crimes. (See *Id* at 320, 324 (emphasis added); see also *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 13355-56 & nn 27, 58 (N.D.Ga 2002): finding that *defendant Vuckovic [who was himself a *de facto* state actor] aided and abetted Serb military and political forces in committing genocide, war crimes, torture and other wrongful acts"). Similarly, in *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078 (S.D.Fla 1997), the court considered "the question…whether the ATCA makes a private actor liable in tort for conspiring with state actors to violate the law of nations" and conducted that the defendant could be held liable for conspiring with the Bolivian criminal authorities and the presiding judge to secure [plaintiff's] arbitrary and inhumane detention" (See *Id* at 1090-91[16]. This Court should decline Plaintiffs' invitation to extend the doctrine of secondary ATCA liability to cases where one private actor, allegedly supported another private actor.

## V. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A VIOLATION OF THE TORTURE VICTIM PROTECTION ACT

The Complaint fails to state a claim against Yeslam Binladin under the Torture Victim Protection Act, Pub. L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C. § 1350, note) ("TVPA"). The TVPA expressly allows a claim only against "a]n individual who, under actual or apparent authority, or color of law, of any foreign nation… subjects an individual to torture… or … extrajudicial killing …" 28 U.S.C. §1350, note §2(a), Plaintiffs' claims fail as a matter law to meet these express requirements in one respect: a TVPA claim may only be brought against individuals acting under the

---

[16] The case of *Doe v. Islamic Salvation Front*, 257 F. Supp 2d 115 (D.D.C. 2003) (Robertson, J.) and 993 F.Supp. 3 (D.D.C. 1998) (Sporkin, J.) is not to the contrary. Neither court was presented with an argument that secondary liability is inapplicable to an ATCA claim alleging that one private party assisted another – i.e., that state action is required in such circumstances—nor has this Court yet squarely faced such an argument in this case.

"authority, or, color of law, of any foreign nation", which Yeslam Binladin is not alleged to have done.

## A    The TVPA's State Action Requirement is Not Satisfied

Plaintiffs cannot maintain a claim against Yeslam Binladin because they have made no allegations that Yeslam Binladin was acting under color of law, as the TVPA expressly requires. A claim lies under the TVPA only against those individuals acting under "actual or apparent authority, or color of law of a[] foreign nation". 28 U.S.C. § 1350, note 2(a); *accord Bao Ge,* 201 F. Supp. 2d at 23 (holding that "the TVPA contains explicit language requiring state action")(internal citation omitted)[17]. The Second Circuit has used standards developed under 42 U.S.C. § 1983 as a guide to determine whether a private individual acts under "color of law" in the context of a claim under the TVPA. (See *Kadic,* 70 F. 3d at 242). Under that analysis, a private individual act under color of law when he acts "together with state officials or with significant state aid". *Id*: citing *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). Similarly, in *Bao Ge* the court required the plaintiff to show a "substantial degree of cooperation action" between the defendant and a foreign nation to find the required state action. (See *Bao Ge*, 201 F. Supp. 2d at 22).

The complaint contains no allegations against Yeslam Binladin from which this Court could infer the requisite state action. Plaintiffs do not allege that Yeslam Binladin acted either in concert or cooperatively with foreign government in any alleged support of al Qaeda. Therefore, the TVPA claim against Yeslam Binladin must also be dismissed.

---

[17] Legislative history confirms that this language was intended to "'make[] clear that the plaintiff must establish some governmental involvement in the torture or killing to prove a claim' and the statute 'does not attempt to deal with torture or killing by private groups. *Kadic,* 70 F. 3d 232 at 243: citing H.R.Rep. no 102-367 at 5 (1991)).

## VI   PLAINTIFFS HAVE FAILED TO PLEAD A VIOLATION OF FEDRAL RICO STATUTE BY YESLAM BINLADIN

In light of the Court's opinion and order of July 25, 2003, Yeslam Binladin will not belabor the point that Plaintiffs fail to state a claim under RICO for failure to an injury to business or property, For the reasons set out in the Court's opinion, Counts 11-13 must be dismissed against Yeslam Binladin.[18].

## VII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY OF THEIR SATE LAW THEORIES

Each of Plaintiffs' state law causes of action fails to state a claim on which relief may be granted[19]. In addition to the defects already set forth above with respect to proximate cause, conspiracy, and aiding and abetting, Plaintiffs' common law claims suffer from other fatal defects.

### A.   Plaintiffs' Negligence Claims Must Be Dismissed for Failure to allege a Duty Yeslam Binladin Owed to Plaintiffs

As the Court in this case has already found with respect to other defendants, plaintiffs' claims for negligence (count 6) and for negligent infliction of emotional distress (count 8) cannot proceed, as a matter of law, because Plaintiffs have failed to

---

[18] Because the Court has dismissed that claim on the business or property ground, the other myriad deficiencies in Plaintiffs' RICO claims need not be considered. Yeslam Binladin reserve any other applicable defenses to Plaintiffs' RICO claims.

[19] In addition to the state law claims discussed below, Plaintiffs also assert a claim for "survival" in Count 7. A survival claim is a derivative that depends on wrongful conduct and cannot stand on its own. (See *e.g., Corcoran v. New York Power Auth.* 935 F. Supp. 376, 390 (S.D.N.Y. 1996): "Since [a] survival action, after all, is essentially a decedent's personal injury lawsuit, this cause of action is dependent on the viability of [other] causes of action" (internal citation omitted)); *Blouin v. Spitzer,* 213 F. Supp. 2d 184, 196-97 (N.D.N.Y. 2002): listing negligence, battery, unlawful practice of medicine, and intentional and/or reckless infliction of emotional and mental distress and anguish as "plaintiff's survival action"). Due to the fact that Plaintiff's survival claim is based on the same predicated acts as its wrongful death and other claims, it fails.

allege any duty that Yeslam Binladin owed to Plaintiffs. The essence of a common law negligence claim is "'the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by' plaintiff"(See *Glusband v. Fittin Cunningham Lauzonm Inc.*, 582 F. Supp. 145, 152 (S.D.NY. 1982): quoting *Becker v. Schwartz*, 413 N.Y.S. 2d 895, 899(1978)). "[t]he touchstone for any negligence action is the existence of a duty running from a defendant to a plaintiff" (See *Strtton Group, Ltd v. Sprayregen*, 466 F. Supp. 1180, 1188 (S.D.N.Y. 1979). Without any duty, "as a matter of law, no liability can ensue". (See *McCarthy v. Olin Corp.*, 119 F. 3d 148, 156 (2d Cir. 1997): quoting *Gonzalez v. Pius*, 525 N.Y.S. 2d 868, 869 (App. Div. 1988)); see also *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 284 (S.D.N.Y. 2003): dismissing negligence claim for failure to allege the existence of a duty); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 571 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).

Plaintiffs do not, however, attribute any specific duty of care to Yeslam Binladin. Instead, Plaintiffs again lump all defendants together and propose that "[a]ll defendants were under a general duty not to injure, murder or cause to be injured or murdered, not to commit or sponsor criminal or tortuous acts, endanger lives, foster terror and/or engage in activity that would foreseeably lead to personal injury and/or death of Plaintiffs" (3AC § 666). This asserted duty fails as a matter of law, as the Court in this case has already found with respect to certain other defendants, (See Slip Op. at 42.). Indeed, it is axiomatic that there is no general duty "to control the conduct of third persons to prevent them from causing injury to others2 (See *McCarthy*, 119 F.3d at 156-57: quoting *Purdy v. Pub. Adm'r of County of Weschester*, 530 N.Y.S. 2d 513, 516 (1988)). Plaintiffs must allege a specific duty of care "and not some amorphous, free-floating duty to society" (See *Campoverde v. Sony Pictures Entm.t*, no 01 Civ. 7775, 2002 WL 31163804, at *14 (S.D.N.Y. Sept. 30, 2002): quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). Because Plaintiffs have not alleged any specific legal duty that Yeslam Binladin owed to the Plaintiffs, or even suggested any relationships that might give rise to such a duty, their negligence claims must be dismissed.

**B   Plaintiffs' Intentional Tort Claims Must Be Dismissed**

Plaintiffs have pleaded state law claims for intentional torts under theories of wrongful death (Count 5) and intentional infliction of emotional distress (Count 8).

One critical element of a wrongful death claim is that the defendant committed a wrongful, neglectful, or defaulting act that caused the decedent' death. (See *N.Y. Est. Powers & Trust Law* § 5-4.1 (McKinney 2003); *Habrack v. Kupersmith*, no 87 Civ. 4712, 1988 WL 102037, at *2 (S.D.N.Y. Sept 23, 1988): citing *Chong v. New York City Transit Auth.*, 441 N.Y.S. 2d 24, 25-26 (App. Div. 1981)). It cannot be argued, and we do not understand Plaintiffs even to claim, that Yeslam Binladin committed a wrongful act that directly caused any of the victims' deaths in the sense of this statute. While the September 11 attacks themselves would certainly satisfy this element of the cause of action against the perpetrators of those attacks, the Complaint does not allege that Yeslam Binladin was in any way involved in the planning or execution of those attacks. Plaintiffs' theory of *indirect* involvement in the September 11 attacks through financing and other support cannot, as a matter of law, sustain a claim for wrongful death because even if those allegations are true, New York law does not support a wrongful death calm against those who simply created the conditions that allowed others to perpetrate these heinous crimes. (See *Jantzen v. Leslie Edelman of N.Y., Inc.*, 614 N.Y.S. 2d 744, 745 (App. Div. 1994): rejecting wrongful death claim against defendant for selling a gun that was later used to kill plaintiff's decedent).

Similarly, a fundamental element of intentional infliction of emotional distress is "extreme and outrageous conduct" (See *Campoverde*, 2002 WL 31163804 at *11 : citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir 1996)). It "must transcend all bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community" (See *Graham v. Guilderland Cent. Sch. Dist.*, 681 N.Y.S. 2d 831, 832 (App. Div. 1998) (internal quotations omitted). No one can question that the September 11 attacks themselves represent the height of such conduct. But it is not enough to simply allege that a defendant had some indirect connection to an extreme

and outrageous act. New York courts "impos[e] a very high threshold" for emotional distress claims and are expected to act as gatekeepers to scrutinize vague or general allegations at the pleading stage. (See *Campoverde*, 2002 WL 31163804 at *11 : citing *Murphy v. Am Home. Prods. Corp.*, 461 N.Y.S. 2d 232, 236 (N.Y. 1983); *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999)).

Moreover, to state a claim for intentional infliction of emotional distress, plaintiffs must plead that Yeslam Binladin's conducts was "intentionally directed at the plaintiff...." (See *Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F. Supp. 10033, 1048-49 (S.D.N.Y 1993) (quotations omitted): dismissing intentional infliction claim for failure to adequately plead specific intent). This element is likewise not met as Plaintiffs have not alleged that Yeslam Binladin knowingly participated in September 11 planning or attacks, much less directed his alleged conduct at any Plaintiff now before this Court. Thus, Plaintiffs have failed to allege the requisite level of specific intent against Yeslam Binladin to maintain a claim for intentional infliction of emotional distress.

Therefore, any liability for wrongful death or for intentional infliction of emotional distress must ultimately rest on a joint tort theory – either conspiracy or aiding and abetting (See *Ungar*, 211 F. Supp. 2d at 99-100. However, those theories fail as a matter of law for the reasons set forth above (See supra §§III(B)(1) and (2)). Accordingly, Plaintiffs' claims for intentional torts, as well as their separately stated claims for common law conspiracy (Count 9) and aiding and abetting (Count 10), must be dismissed.

## VII. CONCLUSION

For the reasons stated herein, Yeslam Binladin respectfully asserts that pursuant to Swiss law this Court lacks jurisdiction over the subject matter of the complaint and over the person of Defendant Yeslam Binladin and the complaint should be dismissed.

Alternatively, for the reasons stated herein, Yeslam Binladin respectfully asserts that pursuant to American law this Court lacks jurisdiction over the subject matter of the complaint and over the person of Defendant Yeslam Binladin and the complaint should be dismissed.

Dated:    Geneva, Switzerland,
          February 27, 2004

                              Respectfully submitted,


                              Yeslam Binladin, *Pro Se Defendant*
                              Rue Francois-le-Fort, 2
                              Geneva, Switzerland
                              Telephone +41 22 347-5560
                              Facsimile  +41 22 347-5750