UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE TERRORIST ATTACKS ON                     Civil Action No.
SEPTEMBER 11, 2001                             03 MDL 1570 (RCC)

-----------------------------------------------------------x

This document relates to:

    *Thomas E. Burnett, Sr., et al. vs. Al Baraka*
    *Investment and Development Corp., et al.*
    **03 CV 9849 (RCC)**

    *Thomas E. Burnett, Sr., et al. vs. Al Baraka*
    *Investment and Development Corp., et al.*
    **03 CV 5738 (RCC)**


### PLAINTIFFS' MORE DEFINITE STATEMENT AS TO DEFENDANT YOUSEF ABDUL LATIF JAMEEL

Counsel for the *Burnett* Plaintiffs hereby provide a more definite statement as to Defendant Yousef Abdul Latif Jameel. This statement, annexed hereto as Exhibit 1, is hereby incorporated into the *Burnett* Complaint.

Dated: March 16, 2004                       Respectfully submitted,

                                                  /S/ Michael Elsner
                                            Michael E. Elsner, Esq. (NY & VA-ME8337)
                                            Ronald L. Motley, Esq. (SC-4123)
                                            Jodi Westbrook Flowers, Esq. (SC-66300)
                                            Donald A. Migliori, Esq. (RI-4936; MA-567562;
                                               MN-0245951)
                                            Jeffrey S. Thompson, Esq. (TX-785101)
                                            William H. Narwold, Esq. (NY-WN1713)
                                            Ingrid L. Moll, Esq. (CT-21866)
                                            Robert T. Haefele, Esq. (NJ-58293; PA-57937)
                                            Justin B. Kaplan, Esq. (TN-022145)

MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Harry Huge, Esq. (DC-55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
401 Ninth Street, N.W., Suite 450
Washington, DC 20004
Telephone:  (202) 824-6046

Jayne Conroy, Esq. (NY-JC8611)
Paul J. Hanly, Jr., Esq. (NY-PH5486)
Andrea Bierstein, Esq. (NY-AB4618)
HANLY & CONROY, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq. (IN - 4941-49)
Amy Ficklin DeBrota, Esq. (IN - 17294-49)
YOUNG, RILEY, DUDLEY & DEBROTA
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240
Telephone:  (317) 848-7939

Allan Gerson, Esq. (DC-327494)
ATTORNEY AT LAW
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Chip Robertson, Esq.
Mary Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
    & OBETZ
200 Madison Avenue, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 230-4665

John D'Amato, Esq., (NY-JD9041)
Guy Molinari, Esq., (NY-GM2155)
RUSSO, SCARNARDELLA & D'AMATO, P.C.

1010 Forest Avenue
Staten Island, NY 10310
Telephone:  (718) 442-0900

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone:  (843) 577-9761

Sanford Rubenstein, Esq. (NY-SR4488)
RUBENSTEIN AND RYNECKI
16 Court Street
Brooklyn, NY 11241
Telephone:  (718) 522-1020

Michael N. Block, Esq. (NY-MB0957)
SULLIVAN, PAPAIN, BLOCK, MCGRATH
    & CANNAVO, P.C.
120 Broadway Avenue, 18th Floor
New York City, NY 10271
Telephone:  (212) 732-9000

Vincent F. Pitta, Esq. (NY-VFP1435)
Milton Mollen (MM-1504A)
HERRICK, FEINSTEIN, LLP
2 Park Avenue
New York City, NY 10016
Telephone:  (212) 592-1400
Robert Conason, Esq. (NY-RC2605)
GAIR, GAIR, CONASON, STEIGMAN
    & MACKAUF
80 Pine Street
New York City, NY 10005
Telephone:  (212) 943-1090

Gary O. Galiher, Esq. (HI-2008)
GALIHER, DEROBERTIS, NAKAMURA, ONO
    & TAKITANI
610 Ward Avenue, Suite 200
Honolulu, Hawaii 96814
Telephone:  (808) 597-1400

Anthony M. Sellitto, Jr., Esq.
OLIVER & SELLITTO

205 Bond Street
Asbury Park, NJ 07712
Telephone (732) 988-1500

Kenneth Sacks, Esq.
SACKS AND SACKS, LLP
150 Broadway, 4th Floor
New York, NY 10038
Telephone:  (212) 964-5570

Clare Sproule, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177-1211
Telephone:  (212) 351-4500

Samuel L. Davis, Esq. (DC-326579 & NJ-7257)
DAVIS, SAPERSTEIN & SALOMON, P.C.
375 Cedar Lane
Teaneck, NJ 07666
Telephone:  (201) 907-5000

Attorneys for Plaintiffs

**EXHIBIT "1"**

## **Plaintiffs' More Definite Statement as to Yousef Abdul Latif Jameel**

Plaintiffs incorporate by reference the entirety of the Third Amended Complaint, (*Burnett* original docket #29, filed November 22, 2002) including all of the allegations and claims contained therein.  Plaintiffs additionally allege, upon information and belief, as to Yousef Abdul Latif Jameel, *Burnett* Defendant #201, a/k/a Yousif Abdullatif Jameel, Yousif Jameel and/or Yousif Jamil:

1.     Defendant Yousef Abdul Latif Jameel (or "Yousef Jameel" or "Defendant Jameel") is an international financier and businessman.

2.     At all relevant times, Defendant Yousef Abdul Latif Jameel for many years was a managing officer in an international business, a Jeddah, Saudi Arabia-based global financial conglomerate known as the Abdul Latif Jameel Group (or "Jameel Group").  The Jameel Group is an international enterprise owned by Yousef Jameel and the Jameel family.  The Jameel Group was founded in 1955.  Among other extensive global business and real estate dealings, the Jameel Group owns the world's largest independent Toyota franchise.

3.     The Jameel Group is also engaged in international shipping, consumer finance, investments and trade.

4.     In the United States, the Jameel Group's real estate interests are managed through its United States division, Jaymont (USA) Incorporated and Jaymont Properties, Inc. (or "Jaymont"), (formerly known as Jameel Inc.).

5.     The Jameel Group and Jaymont own property and engage in business in the United States, including but not limited to real estate development and management of office buildings in New York, Boston, Miami, Orlando and San Francisco.

6. Defendant Yousef Jameel is a former board member and the largest single shareholder of Global Natural Resources, Inc. based in Houston, Texas.

7. The Jameel Group has provided funding for scholarship programs in the United States.

8. In addition to Jameel's extensive contacts with the United States that give rise to minimum contacts, Defendant Jameel is subject to the jurisdiction of this court under a specific jurisdiction analysis.

9. Defendant Jameel has directed his activities at the United States generally and specifically to persons and entities long associated with al Qaeda. Yousef Jameel has direct association with al Qaeda, including donations to several al Qaeda front charities, as well as direct links to individuals affiliated with al Qaeda.

10. Defendant Jameel provided material support to al Qaeda and its sponsors with knowledge that the funds would be used to support al Qaeda and its international terrorist agenda in attacking the United States. Yousef Jameel knew or should have known that Osama bin Laden and al Qaeda were targeting acts of violence against the United States and its citizens.

11. Defendant Jameel knowingly and intentionally aided, abetted or otherwise conspired to provide material support to al Qaeda in furtherance of its stated goals of attacks on the United States and its citizens.

12. Yousef Jameel's name appears on the Golden Chain list, the list of wealthy financial sponsors and supporters of al Qaeda. The Golden Chain was seized by the Bosnian police during searches in the offices of the charity front Benevolence International Foundation in Sarajevo, Bosnia and Herzegovina on March 2002 and presented as evidence by the United States government in the criminal prosecution of al Qaeda. The Golden Chain document identifies Defendant Jameel's name as one of the sources of funding to al Qaeda.

13. The Golden Chain list was presented by the United States government as an exhibit in the Department of Justice's Government's Evidentiary Proffer Supporting the

Admissibility of Co-conspirator Statements in the case of *USA v. Arnaout* (U.S.D.C., Northern District of Illinois, Eastern Division) filed on January 29, 2003. The list was also included in the Indictment of Enaam Arnaout on October 9, 2002. According to the United States government, the Golden Chain document is a list of people referred to within al Qaeda as the "Golden Chain," all wealthy donors to their extremist cause.

14. Originally, the Golden Chain document was seized by the Bosnian police during searches in the offices of Benevolence International Foundation in Sarajevo on March 2002. The Golden Chain was part of a computer file labeled "Tareekh Osama," or "Osama History," containing scanned images of several documents, including the formation minutes of al Qaeda. The computer files seized in Bosnia were delivered to the United States Embassy soon after the raids. The al Qaeda Golden Chain list of top Saudi financial sponsors includes bankers and businessmen, as well as former ministers of Saudi Arabia. The Golden Chain listing of Saudi donors and al Qaeda recipients includes other individuals named as Defendants herein. Major recipients of the Golden Chain are Osama bin Laden and Adel Abdul Jalil Batterjee. These two receive donations from 13 donors listed on the Golden Chain, including Defendant Jameel.

15. Yousef Jameel knowingly and/or intentionally provided material support to al Qaeda by giving funds to a key al Qaeda fundraiser, Defendant Adel Abdul Batterjee, a/k/a Adel Abdul Jalil Batterjee, Adel Abdul Baterji, (or "Batterjee"). Batterjee is identified on the Golden Chain as being the recipient of funds from Defendant Jameel. Batterjee's positions include: Chairman, Al Shamal Islamic Bank (Khartoum, Sudan); Founder, Al-Birr Society, or Benevolence International Foundation; and Former Secretary General of Defendant World Assembly of Muslim Youth. Batterjee is an al Qaeda member who received financial donations and material support from Yousef Jameel.

16. Following the September 11, 2001, attacks on the United States, the United States government requested that the Saudi Arabia Monetary Authority, the Kingdom's central banking authority, monitor the bank accounts associated with some prominent businessmen in Saudi

Arabia, including Yousef Abdul Latif Jameel's company, the Jameel Group, in an effort to prevent the company and its executives, including Yousef Jameel, from funneling money to al Qaeda or other terrorist groups.

17. Defendant Jameel provided material support to charity front groups that directly supported al Qaeda and terrorist activities worldwide, including, but not limited to, Benevolence International Foundation (or "BIF"), Saudi Red Crescent Society, the Saudi Joint Relief Committee, Saudi High Commission (or Committee) for Donations and Collections for Bosnia Herzegovina, Al Haramain Islamic Foundation, Inc., the International Islamic Relief Organization, and the World Assembly of Muslim Youth.

18. Defendant Jameel provided material support to al Qaeda through Defendant Batterjee and through Benevolence International Foundation, an al Qaeda charity front founded by Batterjee. BIF has been designated by the United States as a Specially Designated Global Terrorist Entity. BIF was a key financer and supporter of al Qaeda beginning as early as the 1990s. As described in evidence presented in the United States Government's criminal case against BIF director Enaam Arnaout for material support to al Qaeda:

> *In or about 1993, Bin Laden advised al Qaeda member Jamal Ahmed al Fadl that al Qaeda was using several charities to fund its operations overseas, specifically naming al Birr, which translates in English to "Benevolence." Al Fadl understood from conversations with Bin Laden and others in al Qaeda that the charities would receive funds that could be withdrawn in cash and a portion of the money used for legitimate purposes and another portion diverted for al Qaeda operations. The charities also provided assistance for mujahideen who traveled.*

*U.S. v. Enaam Arnaout*, No. 02-CR-892 (N.D.I.L. 2003).

19. Jamal Ahmed Al-Fadl is an al Qaeda member who served as a witness in the Arnaout prosecution. Al-Fadl identified Defendant Jameel as having purchased a satellite phone for Osama bin Laden. Al-Fadl had a specific conversation with Madani Al Tayyib, a treasurer for al Qaeda during which he was told that Defendant Jameel donated funding via the Golden Chain to al Qaeda.

20. Al-Fadl specifically recalled Osama bin Laden mentioning BIF as one of the charities that al Qaeda was using for support. Al-Fadl also informed prosecutors that he had been instructed by al Qaeda's financial chief, and that a BIF employee who traveled from Sudan to Saudi Arabia to meet with Defendant Batterjee was questioned and detained by Saudi authorities because they had found documents linking BIF to Osama bin Laden. Defendant Jameel knowingly provided material support to Batterjee and BIF, and in doing so, thereby aided, abetted and/or conspired with to materially supported al Qaeda. Defendant Jameel knew or should have known that providing funds and equipment to Osama bin Laden and al Qaeda would further acts of international terrorism.

21. Beginning in the 1980's, Defendant Jameel and his family's Jameel Group contributed money and equipment to a number of extremist groups and organizations known to be supporters of al Qaeda and international terrorism in the Balkans, Chechnya, and the Middle East including the Saudi Red Crescent Society and the Saudi High Commission for Donations to Bosnia Herzegovina (or "Saudi High Commission"). The financial contributions of Jameel include millions given in April, 1999, in support of the Saudi Red Crescent Society. The donation included vehicles, in addition to a pledged contribution for each car sold by the Jameel Group, plus one percent of the Jameel Group's total sales.

22. The Saudi Red Crescent Society provided material support to al Qaeda and to terrorist activities through the Saudi Joint Relief Committee, which provides funds to al Qaeda terrorist activities.

23. In December 1999 alone, Defendant Jameel donated 8 million SR to the Saudi Red Crescent Society. The Saudi Red Crescent Society president was then Dr. Abdul Rahman Al-Swailem, Saudi Deputy Minister of Health for Executive Affairs, who also acted as Chairman of the Saudi Joint Relief Committee for Kosovo and Chechnya. In June 1998, the CIA and Albanian authorities raided several houses and offices of members of the Islamic Revival Foundation in Tirana which was supported by the Saudi Joint Relief Committee. In July 1998,

5

Saudi Joint Relief Committee Director Muhamed Hasan Mahmud was also arrested on charges of arms possession and producing false documents. Mr. Mahmud was connected to a 1992 terrorist attack against the Egyptian Parliament. Several Saudi Joint Relief Committee members and directors were later arrested in connection with the August 1998 al Qaeda bombings of the United States Embassies in Kenya and Tanzania.

24. Defendant Jameel and the Jameel Group provided funding to the Saudi Red Crescent Society for so-called "charitable" activities even though it has been widely reported that the Saudi Red Crescent Society is a member of the Saudi Joint Relief Committee and that the Saudi Joint Relief Committee has provided material support to al Qaeda and international terrorist activities for years.

25. Defendant Jameel also gave 1.5 million SR at a joint fund-raiser held in December 1999 by three known al Qaeda sponsors, Defendant Al-Haramain Islamic Foundation, Inc. (or "al-Haramain"), Defendant International Islamic Relief Organization (or "IIRO") and Defendant World Assembly of Muslim Youth (or "WAMY"). This financial support by Defendant Jameel was material and provided intentionally and/or knowingly.

26. Defendant al-Haramain Islamic Foundation, Inc. is an international charity front that has exploited its non-profit status for the benefit of Osama bin Laden and the terrorist network al Qaeda, in the furtherance of acts of international terrorism. In doing so, al-Haramain has developed an extensive worldwide network. Al-Haramain has been exposed for providing direct and material support to al Qaeda. The United States State Department has designated al-Haramain's branches including those located in Bosnia and Somalia, as global terrorist entities and frozen the assets of the organization. The leaders of al-Haramain have direct links to al Qaeda.

27. Intelligence and government officials throughout the world have acknowledged that al-Haramain exploited its non-profit status in providing material support and financial aid to international terrorist groups. Defendant Jameel knew or should have known of the terrorist-

related agendas of al-Haramain, IIRO and WAMY, and that his contributions were being diverted to sponsor al Qaeda.

28. The International Islamic Relief Organization (or "IIRO") has materially supported terror around the globe, including Osama bin Laden and al Qaeda. IIRO's office in the Philippines is headed by Osama bin Laden's brother-in-law, Defendant Mohammed Jamal Khalifa and has acted as a center of terrorist financing and training activity – across the globe. IIRO then evolved into a vast independent terrorist machine – funding, recruiting and aiding and abetting al Qaeda members around the globe. IIRO was involved with the 1993 World Trade Center bombing, the plot to destroy the Lincoln Tunnel and the Brooklyn Bridge, the plot to assassinate former President William Jefferson Clinton and Pope John Paul II, the plot to blow up twelve American airplanes simultaneously, and the 1998 Embassy bombings in East Africa.

29. WAMY was founded in 1972 in a Saudi effort to prevent the "corrupting" ideas of the western world influencing young Muslims. With official backing it grew to embrace 450 youth and student organizations with 34 offices worldwide. WAMY has been officially identified as a "suspected terrorist organization" by the FBI since 1996 and has been the subject of numerous governmental investigations for terrorist activities. WAMY conducts camps for youth all over the world including in North America. In one of the songs in the WAMY camp songbook are the words: "Hail! Hail! O sacrificing soldiers! To us! To us! So we may defend the flag. On this Day of Jihad, are you miserly with your blood?!"

30. As stated above, Defendant Jameel has provided material support to WAMY, IIRO, and al-Haramain, as well as the Saudi High Commission and other members and supporters of al Qaeda and international terrorism, with the knowledge that this support would sponsor acts of terrorism against the United States.

31. Al Qaeda, and other international terrorist organizations, raise money from a variety of sources and move money in a variety of manners. Al Qaeda and other terrorist groups, in partnership with banks, financial entities and charities, have successfully implemented a

global financing system to collect and distribute money to terrorist individuals, cells and networks in every corner of the world. The al Qaeda charities that Jameel has sponsored include, but are not limited to, Al Haramain, Benevolence International Foundation, International Islamic Relief Organization, Muslim World League, Saudi High Commission, Saudi Red Crescent Society, and World Assembly of Muslim Youth.

32. Since at least 1998, Osama bin Laden made open and public calls for Muslims to donate to his terrorist organizations. On August 21, 1998, the President of the United States signed an Executive Order blocking the assets of Osama bin Laden and his terrorist cells, including al Qaeda, as international terrorists. Osama bin Laden, his sponsors and followers, were known to openly promoting hatred and violence against innocents long before this time. At all relevant times, Yousef Jameel provided material support to terrorists, terrorist activities and terrorist organizations, actively aided, abetted, conspired with and/or materially supported international terrorism and al Qaeda.

33. The Saudi High Commission was established on June 3, 1992 and is chaired by Defendant Salman bin Abdulaziz al Saud. In documents obtained from the Financial Police of the Federation of Bosnia Herzegovina Ministry of Finance, the offices of the Saudi High Commission in Bosnia Herzegovina serve as a front for radical and terrorism-related activities.

34. The Bosnian government and SFOR, the NATO-led Stabilisation Force in Bosnia and Herzegovina, are investigating authorities that described the incriminating findings following the seizures at the Saudi High Commission:

> *[in 2001] Members of the SFOR have on premises of the Saudi High Commission Relief for Bosnia and Herzegovina confiscated some documentation for which it can be claimed with certainty that it does not belong in the scope of work of a humanitarian organization (various photographs of the World Trade Center, sketches of military bases, certain photographs of military ships, civil airplanes, certain specially protected facilities, and other).*
>
> *Among the items found at the Saudi charity were before-and-after photographs of the World Trade Center, U.S. embassies in Kenya and Tanzania, and the USS Cole; maps of government buildings in Washington; materials for forging U.S.*

8

> *State Department badges; files on the use of crop duster aircraft; and anti-Semitic and anti-American material geared toward children.*

35.     An Algerian employee of the Saudi High Commission for Aid to Bosnia and another unnamed cell member, who was in telephone contact with al-Qaeda operational commander Abu Zubayda, are in custody at Guantanamo Bay's Camp X-Ray for plotting an attack on the United States Embassy in Sarajevo. In October 2001, a SFOR spokesman announced that between 100,000 Deutschmarks ("DM") and 200,000 DM in cash were seized in the offices of the Saudi High Committee. Furthermore, Bosnian authorities are tracking down $41 million dollars of the commission's missing operating funds.

36.     In August of 1995, the Jameel Group donated vehicles to the Saudi High Commission (or Committee) for Donations and Collections Bosnia Herzegovina (or "Saudi High Commission").

37.     Defendant Jameel has provided material support to the Saudi High Commission.

38.     In addition to Defendant Jameel's participation in funding al Qaeda directly and/or through Defendant Batterjee, Defendant Jameel's material and financial support of "charities" that were known to act as sponsors of Osama bin Laden and al Qaeda, Defendant Jameel also has engaged in a pattern of conduct in supporting individuals who are involved in religious extremism and international terrorism.

39.     These activities and conduct include communications with Sami Al-Arian, a prominent United States "activist" who was indicted by the United States government on February 20, 2003 on charges of operating a racketeering enterprise that supported numerous violent terrorist activities associated with the Palestinian Islamic Jihad, another United States designated terrorist organization.

40.     Yousef Jameel's communications with Al-Arian pertained to a plan to obtain palletized urea fertilizer in fifty kilogram bags suitable for ocean transportation and having it shipped to a particular destination. Urea is a chemical compound that can be used in an

9

improvised explosive device. According to Interpol, the main explosive charge used for the first World Trade Center bombing in 1993 consisted primarily of a home-made fertilizer-based explosive, urea nitrate. Upon information and belief, the palletized urea that was the subject of communication between Al-Arian and Defendant Jameel was intended to be used for terrorist activities.

41. Defendant Jameel also is a financial supporter of the Islamic Salvation Front of Algeria. On November 30, 1990, Jameel made a $1 million dollar donation to "Abad Islamque," a French foundation whose beneficiary account was held by the Islamic Salvation Front (or "FIS") of Algeria. The FIS was created on March 10, 1989, from a coalition of Islamic groups including veteran Mujahideen from Afghanistan. The Islamic Salvation Front included an armed wing, the Islamic Liberation Army (AIS). The FIS was banned as a terrorist organization in March 1992. Defendant Jameel provided material support to this terrorist organization, in furtherance of the goals of religious extremism and acts of international terrorism.

42. Defendant Jameel provided material and financial support to the Raza Academy, a radical group which condemned the United States for the war in Afghanistan in October of 2001, voices support for suicide bombers in Palestine, sent human shields to Iraq, and supported fighters in Bosnia and Chechnya.

43. Defendant Jameel has engaged in a pattern of conduct in knowingly providing material support to radical Islamic groups.

44. The material support, aiding and abetting, acts of conspiracy, commission and/or omission of Defendant Jameel in supporting al Qaeda were a proximate cause of the attacks of September 11, 2001.