**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001        **03 MDL 1570 (RCC)**
                                                           **ECF Case**

-------------------------------------------------------------x

**KATHLEEN ASHTON, et al.,**

                       **Plaintiffs,**                      **02 CV 6977 (RCC)**
                                                            **ECF Case**

        v.

**AL QAEDA ISLAMIC ARMY, et al.,**

                       **Defendants.**
-------------------------------------------------------------x

## MEMORANDUM OF LAW OF PRINCE MOHAMED AL-FAISAL AL-SAUD IN SUPPORT OF HIS MOTION TO DISMISS THE FOURTH AMENDED CONSOLIDATED MASTER COMPLAINT

Louis R. Cohen (LC 4012 )
WILMER CUTLER PICKERING LLP
2445 M Street NW
Washington, D.C. 20037
Tel.: 202-663-6000
Fax: 202-663-6363

David P. Donovan (DD 7012)
WILMER CUTLER PICKERING LLP
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102
Tel: 703-251-9700
Fax: 703-251-9797

Matthew Previn (MP 2173)
WILMER CUTLER PICKERING LLP
399 Park Avenue
New York, NY 10022
Tel.: 212-230-8800
Fax: 212-230-8888

Attorneys for Defendant Prince Mohamed Al-Faisal
Al-Saud

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

SUMMARY OF ALLEGATIONS AGAINST PRINCE MOHAMED ....................................... 2

ARGUMENT ........................................................................................................................... 5

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER PRINCE
MOHAMED. .................................................................................................................. 6

     A.     This Court Cannot Exercise Personal Jurisdiction Over Prince Mohamed
Because He Has No Alleged Contacts With the United States. ........................... 6

     B.     Plaintiffs' General Allegations of "Conspiracy" and "Aiding and
Abetting" Provide No Basis for Jurisdiction Over Prince Mohamed. ................... 9

     C.     Prince Mohamed's Alleged Status as an Officer of Other Defendants Does
Not Subject Him to the Jurisdiction of this Court.................................................. 11

II.     THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST PRINCE
MOHAMED UPON WHICH RELIEF CAN BE GRANTED. ....................................... 12

     A.     Each of Plaintiffs' Causes of Action Requires That the Defendant's
Alleged Actions Proximately Caused Their Injury. ............................................. 12

     B.     The Complaint Does Not Allege That Prince Mohamed Proximately (or
Otherwise) Caused Plaintiffs' Injuries. ............................................................... 16

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Albert v. Carovano*,
851 F.2d 561 (2d Cir. 1988)..................................................................................2

*Alvarez-Machain v. United States*,
331 F.3d 604 (9th Cir.), *cert. granted*, 124 S. Ct. 807 (2003) .......................15

*Armour & Co. v. Celic*,
294 F.2d 432 (2d Cir. 1961)................................................................................19

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983)............................................................................21, 22

*Asahi Metal Industry Co. v. Superior Court*,
480 U.S. 102 (1987) ..............................................................................................6

*Associated General Contractors, Inc. v. Carpenters*,
459 U.S. 519 (1983) ............................................................................................14

*Atlanta Shipping Corp. v. Chemical Bank*,
818 F.2d 240 (2d Cir. 1987)................................................................................22

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)...........................................................................6, 10

*Bao Ge v. Li Peng*,
201 F. Supp. 2d 14 (D.D.C. 2000), *aff'd*, 35 Fed. Appx. 1 (D.C. Cir. 2002) ................................15

*Beanal v. Freeport-McMoran, Inc.*,
197 F.3d 161 (5th Cir. 1999) .............................................................................22

*Bieregu v. Ashcroft*,
259 F. Supp. 2d 342 (D.N.J. 2003) .....................................................................15

*Bigio v. Coca-Cola Co.*,
239 F.3d 440 (2d Cir. 2000)..........................................................................15, 22

*Boim v. Quranic Literacy Institute*,
291 F.3d 1000 (7th Cir. 2002) ......................................................14, 17, 18, 19, 23

*Borden's Condensed Milk Co. v. Mosby*,
250 F. 839 (2d Cir. 1918)...................................................................................16

*Browning v. Clinton,*
292 F.3d 235 (D.C. Cir. 2002) ...................................................................................17, 19, 21

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462-74 (1985) .........................................................................................................7, 9

*Burnett et al. v. Al Baraka Investment & Development Corp. et al.,*
292 F. Supp. 2d 9 (D.D.C. 2003) .......................................................................................6, 8

*Burnett et al. v. Al Baraka Investment & Development Corp. et al.,*
274 F. Supp. 2d 86 (D.D.C. 2003) ................................................................................*passim*

*Calder v. Jones,*
465 U.S. 783 (1984) ..................................................................................................................7

*Carmichael v. United Technologies Corp.,*
835 F.2d 109 (5th Cir. 1988) ................................................................................................15

*Carroll v. Colon,*
608 F. Supp. 1277 (E.D. Pa. 1985) ......................................................................................13

*Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.,*
511 U.S. 164 (1994) ................................................................................................................23

*Century Business Credit Corp. v. North Fork Bank,*
668 N.Y.S.2d 18 (App. Div. 1998) ......................................................................................18

*Citibank N.A. v. K-H Corp.,*
968 F.2d 1489 (2d Cir. 1989)................................................................................................21

*Cooper v. First Government Mortgage & Investors Corp.,*
206 F. Supp. 2d 33 (D.D.C. 2002) ......................................................................................19

*Cucinotti v. Ortmann,*
159 A.2d 216 (Pa. 1960) .......................................................................................................14

*DM Research, Inc. v. College of America Pathologists,*
170 F.3d 53 (1st Cir. 1999)...................................................................................................21

*De Falco v. Bernas,*
244 F.3d 286 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001)................................................23

*Decker v. Massey-Ferguson, Ltd.,*
681 F.2d 111 (2d Cir. 1982)..................................................................................................22

*Doe v. Islamic Salvation Front*,
993 F. Supp. 3 (D.D.C. 1998) .................................................................................................15

*Doe v. State*,
588 N.Y.S.2d 698 (Ct. Cl. 1992), *aff'd*, 595 N.Y.S.2d 592 (App. Div. 1993) .............................13

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) ..................................................................................................18

*El-Meswari v. Wash. Gas Light Co.*,
785 F.2d 483 (4th Cir. 1986) ..................................................................................................13

*Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS),
1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ...........................................................................12, 18

*First Capital Asset Mgmt v. Brickellbush.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) ......................................................................................10

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994) .....................................................................................................20

*Foreign Mission Board of Southern Baptist Convention v. Wade*,
409 S.E.2d 144 (Va. 1991) .....................................................................................................16

*Girden v. Sandals International*,
262 F.3d 195 (2d Cir. 2001) ...................................................................................................14

*Goren v. New Vision International, Inc.*,
156 F.3d 721 (7th Cir. 1998) ...................................................................................................2

*Grove Press, Inc. v. Angleton*, 649
F.2d 121 (2d Cir. 1981) .........................................................................................................10

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ...............................................................................................21

*Holmes v. Security Investment Protection Corp.*,
503 U.S. 258 (1992) ..........................................................................................................16, 17

*In re American Express Co. Shareholder Litigation*,
39 F.3d 395 (2d Cir. 1994) .................................................................................................16, 20

*Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998) ..........................................................................................2, 6, 8, 20

*Kadic v. Karadzic*,
70 F.3d 232 (2d Cir. 1995)........................................................................................................15

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998)..........................................................................................12

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)...............................................................................................................7, 11

*Kinnel v. Mid-Atlantic Mausoleums, Inc.*,
850 F.2d 958 (3d Cir. 1988).......................................................................................................19

*Kirkbride v. Lisbon Contractors, Inc.*,
555 A.2d 800 (Pa. 1989)............................................................................................................16

*Koken v. Steinberg*,
825 A.2d 723 (Pa. Commw. Ct. 2003) ......................................................................................21

*Laborers Local 17 Health &  Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999).......................................................................................................16

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998)..........................................................................................10

*Lawrence v. Walsh*,
187 N.Y.S.2d 71 (App. Div. 1959) ............................................................................................13

*Lehigh Valley Industrial, Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975)...............................................................................................8, 10, 21

*Lerner v. Fleet Bank, NA*,
318 F.3d 113 (2d Cir.), *cert. denied*, 124 S. Ct. 532 (2003) ..............................................14, 17

*Levenson v. Souser*,
557 A.2d 1081 (Pa. Super. 1989)...............................................................................................14

*Lindsay v. Lockwood*,
625 N.Y.S.2d 393 (Sup. Ct. 1994).............................................................................................21

*Mascarella v. Brown*,
813 F. Supp. 1015 (S.D.N.Y. 1993)...........................................................................................13

*McCallum v. Rizzo*, No. 942878,
1995 WL 1146812 (Mass. Super. Oct. 13, 1995) ......................................................................18

*McCarthy v. Sturm, Ruger & Co.*,
916 F. Supp. 366 (S.D.N.Y. 1996) ........................................................................13

*Meng v. Schwartz*,
116 F. Supp. 2d 92 (D.D.C. 2000) .........................................................................21

*Meyer v. Holley*,
123 S. Ct. 824 (2003) ............................................................................................20

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ....................................................................................2

*Nicholas v. Saul Stone & Co.*,
224 F.3d 179 (3d Cir. 2000) ..................................................................................11

*Olszewski v. Waters of Orchard Park*,
758 N.Y.S.2d 716 (App. Div. 2003) ......................................................................19

*Ontel Products, Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995) ......................................................................12

*Papasan v. Allain*,
478 U.S. 265 (1986) .................................................................................................2

*Park v. Shiflett*,
250 F.3d 843 (4th Cir. 2001) .................................................................................14

*Pittman by Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998) ..................................................................................11

*Priester v. Small*, Nos. 26541, 26520,
2003 WL 21729900 (Va. Cir. Ct. April 14, 2003) .................................................21

*Reilly v. Sicilian Asphalt Paving Co.*,
170 N.Y. 40 (1902) ...............................................................................................16

*Robinson v. Matt Mary Moran, Inc.*,
525 S.E.2d 559 (Va. 2000) ....................................................................................13

*Rocanova v. Equitable Life Assurance Society of U.S.*,
83 N.Y.2d 603 (1994) ............................................................................................16

*Schultz v. Boy Scouts of America, Inc.*,
65 N.Y.2d 189 (Ct. App. 1985) .............................................................................13

*Second Amendment Foundation v. United States Conference of Mayors*,
274 F.3d 521 (D.C. Cir. 2001) ...................................................................................8, 10

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ...................................................................................11

*Simon v. Philip Morris*,
86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...................................................................................10

*Sit-Set, A.G. v. Universal Jet Exchange, Inc.*,
747 F.2d 921 (4th Cir. 1984) ...................................................................................19

*Smith v. Afghanistan*, No. 01 Civ. 10132 (HB),
2003 WL 21027170 (S.D.N.Y. May 7, 2003) .......................................................................14, 18

*Stauffacher v. Bennett*,
969 F.2d 455 (7th Cir. 1992) ...................................................................................9, 10

*Stuto v. Fleishman*,
164 F.3d 820 (2d Cir. 1999) ...................................................................................4, 5

*Tulewicz v. S.E. Pa. Transport Authority*,
606 A.2d 427 (Pa. 1992) ...................................................................................13

*Twombly v. Bell Atlantic Corp., et al.*,
No. 02-cv10220 (S.D.N.Y. Oct. 7, 2003) ...................................................................................23

*U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping Co.*,
241 F.3d 135 (2d Cir. 2001) ...................................................................................7

*Ungar v. Islamic Republic of Iran*,
211 F. Supp. 2d 91 (D.D.C. 2002) ...................................................................................21

*Volpe v. First National Bank*,
710 A.2d 661 (R.I. 1998) ...................................................................................18

*Wight v. Bankamerica Corp.*,
213 F.3d 79 (2d Cir. 2000) ...................................................................................21

*Young  v. Colgate-Palmolive Co.*,
790 F.2d 567 (7th Cir. 1986) ...................................................................................11

**STATUTES**

Alien Tort Statute, 28 U.S.C. § 1350 .......................................................................14, 15

42 Pa. Cons. Stat. § 8301 .......................................................................................13

42 Pa. Cons. Stat. § 8302 .......................................................................................13

Va. Code. Ann. § 8.01-25 .......................................................................................13

Va. Code Ann. § 8.01-50(A).....................................................................................13

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 102-367 (1991)...................................................................................15

S. Rep. No. 102-249 (1991) .....................................................................................15

**MISCELLANEOUS**

Zamir Iqbal, *Islamic Banking Gains Momentum, Expands Market, and Competes with Conventional Banking in Arab States*, 21 Middle E. Exec. Rep. 9 (Jan. 1998)...........................3, 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001              03 MDL 1570 (RCC)
                                                           ECF Case

------------------------------------------------------------x

KATHLEEN ASHTON, et al.,

                        Plaintiffs,                        02 CV 6977 (RCC)
                                                           ECF Case

            v.

AL QAEDA ISLAMIC ARMY, et al.,

                        Defendants.
------------------------------------------------------------x

## PRINCE MOHAMED AL-FAISAL AL-SAUD'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

### INTRODUCTION

Plaintiffs understandably seek compensation for the tragic events of September 11, 2001.

But defendant Prince Mohamed Al-Faisal Al-Saud ("Prince Mohamed"), a member of the royal

family of Saudi Arabia, bears no responsibility for plaintiffs' loss,[1] and their Complaint alleges

nothing to tie him to the United States, much less to the events of that day.  All claims against

him should be dismissed (I) for lack of personal jurisdiction and (II) for failure to state a claim

against him.

Plaintiffs' 625-paragraph "Fourth Amended Consolidated Master Complaint" contains

only 14 paragraphs (Nos. 51, 54, 65-67, 255, 258, 274-276, 580-582, 608) that allege facts

---

[1]       Indeed, long before this litigation began, Prince Mohamed publicly expressed his personal
condolences to the victims and joined "with the rest of the world in utterly condemning such acts
unreservedly."  Chairman's Letter from Prince Mohamed to Participants, Dar Al-Maal Al-Islami Annual
Report 2001 (Feb. 2002) (attached as Exhibit A).

relating to Prince Mohamed.[2/]  There are no factual allegations suggesting that Prince Mohamed

(i) has had *any* contacts with the United States; (ii) has ever done *anything* that had any

connection, however remote, with the events of September 11; (iii) has ever expressed sympathy

for or supported *any* terrorist activity; (iv) has ever given or transferred any money or other

assets to *anyone*; or (v) is associated with any institution that ever engaged (knowingly or

otherwise) in any wrongdoing.  The repeated assertion that Prince Mohamed is "heavily

involved" in "international terrorism" is entirely conclusory, and the contention that he is liable

under state common law and federal anti-terrorism statutes for the events of September 11 is

baseless and reprehensible.[3/]

## SUMMARY OF ALLEGATIONS AGAINST PRINCE MOHAMED

The allegations on which plaintiffs' counsel charge Prince Mohamed with complicity in

the events of September 11 can be easily summarized:

- He allegedly is or was Chairman or Chief Executive Officer of (or "manages")

  three financial institutions:  Dar al Maal al Islami ("DMI"); Islamic Investment

---

[2/]    For convenience, the pages of the Complaint containing allegations relating to Prince Mohamed are attached as Exhibit B.

[3/]    On a motion to dismiss, the Court should give no weight to conclusory allegations ungrounded in any assertion of fact, *e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Albert v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988) (*en banc*), or to legal conclusions cast in the form of factual allegations, *e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *Burnett et al. v. Al Baraka Inv. & Dev. Corp. et al.*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) (Robertson, J.) ("a court may accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations") (internal quotation marks and citations omitted). Likewise, conclusory allegations about "the defendants," or "certain [unspecified] members of the Royal Family," *e.g.*, Compl. ¶¶ 250, 252, 296, should be given no weight in evaluating the allegations against Prince Mohamed.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (complaint vaguely attributing alleged fraudulent statements to "defendants" was insufficient to state a claim); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("[L]umping together of defendants is clearly insufficient to state a RICO claim.").

Co. of the Gulf--Bahrain EC ("IICG"); and Faisal Islamic Bank-Sudan ("FIBS"). (Compl. ¶¶ 51, 54, 65, 274, 580, 581, 582, 608.)

- DMI was "founded in 1981 to foster the spread of Islamic banking" and "developed banking, investment and insurance activities in approximately twenty offices around the world."  (*Id*. ¶ 274.)[4]  Haydar Mohamed bin Laden, one of Osama's many half-brothers, allegedly was once on DMI's board of directors and was once a director of IICG. (*Id.* ¶¶ 274, 582.)

- IICG allegedly is "the main shareholder" in FIBS.  (*Id.* ¶ 582.)

- FIBS allegedly was a "founder" and is today a "shareholder" and "member of the board" of Al Shamal Islamic Bank ("ASIB"). (*Id.* ¶¶ 51, 54, 65.)   FIBS and a "branch of DMI Trust" allegedly have "correspondent" relations with "Saudi American Bank."  (*Id.* ¶ 608.)  An alleged official of al Qaeda testified in a February 2001 criminal case that al Qaeda once held a (completely undescribed) "account" in FIBS.  (*Id.* ¶ 66, *see also id.* ¶ 275.)

- An unnamed FIBS subsidiary and certain of its executives, including Prince Mohamed, allegedly are under investigation in Turkey for "tax irregularities" *not* asserted to have anything to do with terrorism or the events of September 11. (*Id.* ¶ 67.)

- Prince Mohamed allegedly has (completely undescribed) "financial ties" with an alleged al Qaeda financier named Mohamed Zouaydi.  (*Id.* ¶ 258.)

---

[4]  Certain of the allegations--such as the assertion that DMI has "foster[ed] the spread of Islamic banking" around the world (*id.* ¶ 274)--smack of a kind of religious McCarthyism.  To oversimplify greatly, "Islamic banking" consists of various means of providing financing while complying with the command of the Koran not to pay or receive interest and not to invest in certain forbidden activities.  *See generally* Zamir Iqbal, *Islamic Banking Gains Momentum, Expands Market, and Competes with Conventional Banking in Arab States*, 21 Middle E. Exec. Rep. 9 (Jan. 1998).  It is an entirely honorable activity.

3

*That is it*.  Those are the factual allegations offered to support the claim that Prince Mohamed is liable for mass murder.  Plaintiffs' counsel attempt to cross the chasm between those facts and plaintiffs' injuries by injecting conclusory assertions that DMI and/or FIBS and/or Prince Mohamed are "involved" in "al Qaeda financing" or have "sponsor[ed]" or "facilitated" or "aided [and] abetted" international terrorism.  (*Id.* at ¶¶ 65, 255, 274, 276, 580-581, 608).  But the only factual allegation that purports to tie Prince Mohamed *or any* of the three financial institutions (DMI, IICG, and FIBS) to any "terrorist" activity is the assertion that an alleged former al Qaeda finance official once testified that "we got account" in FIBS.  (*Id.* ¶ 66.)  There is no allegation as to the nature of this "account," its dates, in whose name it was held, the source of any funds in the "account," or that any such funds were used for any terrorist activity (associated with September 11 or otherwise).  Nor is there any claim that Prince Mohamed knew or should have known the "account" was associated with any terrorist activity.[5]

The remaining allegations also wholly fail to support either personal jurisdiction or plaintiffs' scurrilous claims.  The allegation (*id.* ¶ 67) that executives (including Prince Mohamed) of an unnamed FIBS subsidiary in Turkey are "under investigation" for "tax irregularities" *not* alleged to have anything to do with terrorism or the events of September 11 is just an attempt to blacken Prince Mohamed's name.[6]  Plaintiffs never explain what they mean by their claim that Prince Mohamed had "close financial ties" with purported "al Qaeda financier

---

[5]       The allegation is based on a single line of testimony given on February 6, 2001, by a witness named Al Fadl in the trial of the 1998 East Africa bombers.  We have attached to this motion as Exhibit C the cover page of the transcript of this testimony, the page on which the one line occurs, and the two pages preceding and following that page.  When, as here, a complaint relies on the contents of an external document, a motion to dismiss may of course explicate those contents.  *See Stuto v. Fleishman*, 164 F.3d 820, 826 (2d Cir. 1999).

[6]       In any event, that investigation has ended, and charges against Prince Mohamed have been dismissed in their entirety.  A certified translation of the judgment dismissing the charges, prepared in compliance with Turkish law, is attached to this Motion as Exhibit D.

[Mohamed] Zouaydi" (*id.* ¶ 258) and never allege that these "ties" had any connection to the events of September 11 or terrorism.

The allegations concerning Al Shamal Islamic Bank ("ASIB") are equally irrelevant to plaintiffs' claims against Prince Mohamed. Plaintiffs allege that ASIB is "an instrumental bank" in Osama bin Laden's "financial support network" and that Osama bin Laden "used" ASIB "for the funding of his al Qaeda network leading up to the 1998 United States Embassy bombings in Africa." (*Id.* ¶ 275.) But the Complaint does not allege that Prince Mohamed was ever a director, officer, shareholder, or employee of ASIB; that he ever engaged in any transaction of any kind with or involving ASIB; or that he knew of, initiated, approved, or had anything to do with any banking activity of ASIB. The Complaint alleges only that Prince Mohamed is today the chairman of FIBS, that FIBS was a founder *in 1984* of ASIB (*id.* ¶¶ 53, 54, 65) and that, also in 1984, an unspecified number of ASIB shares were issued to FIBS along with other alleged founders. It does not allege that FIBS ever controlled ASIB or knew of, initiated, or approved any banking activity of ASIB, much less that Prince Mohamed ever did any of these things.

Stripped of content-less generalities and murky innuendo, the Complaint alleges that Prince Mohamed is Chairman of a bank (FIBS) in which someone allegedly associated with al Qaeda allegedly once opened an undescribed "account," and that Prince Mohamed allegedly had undescribed "close financial ties" with Zouaydi. *Nothing* in the Complaint connects him in any way with terrorism, the events of September 11, or the United States, and nothing in the Complaint is sufficient to state any claim against him.

## ARGUMENT

The Court should dismiss the claims against Prince Mohamed for two reasons. First, the Court should dismiss all claims under Rule 12(b)(2), because the Court lacks personal

jurisdiction over him:  there are no factual allegations connecting him with the United States or

with the events of September 11, and requiring him to respond and defend himself in this Court

would be wholly inconsistent with "traditional notions of fair play and substantial justice."

*Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Wash.*,

326 U.S. 310, 316 (1945)).  Second, the Court should dismiss all claims under Rule 12(b)(6),

because the Complaint fails to state a claim against him on any of its numerous legal theories:

there are no factual allegations that he engaged in or knowingly aided any misconduct, and there

are no factual allegations suggesting that he caused plaintiffs' loss.

## I.  THIS COURT LACKS PERSONAL JURISDICTION OVER PRINCE MOHAMED.

Prince Mohamed is a resident of Saudi Arabia, and the Complaint does not allege that he

has had any contacts whatever with the United States, or any role in causing the events of

September 11.  For the same reasons that led Judge Robertson to dismiss all "private activity"

claims against Prince Sultan Bin Abdulaziz Al-Saud in the related *Burnett* case prior to its

transfer to this Court,[2/] there is no constitutional basis for this Court to assert personal

jurisdiction over Prince Mohamed.

### A.    This Court Cannot Exercise Personal Jurisdiction Over Prince Mohamed Because He Has No Alleged Contacts With the United States.

Plaintiffs bear the burden of establishing this Court's jurisdiction over Prince Mohamed.

*See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(2), plaintiffs must make a prima facie showing

of facts sufficient to support jurisdiction.  *See Jazini*, 148 F.3d at 184.  This must *always* include

a showing of at least "'minimum contacts  [with the forum] . . . such that the maintenance of the

---

[2/]    *Burnett et al. v. Al Baraka et al.*, 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003).  Judge Robertson also dismissed all "official activity" claims.  *See* n.9, *infra.*

suit does not offend traditional notions of fair play and substantial justice.'" *U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)) (internal quotation marks omitted); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462-74 (1985).  But plaintiffs allege *no* contact of any kind between Prince Mohamed and New York or any other place in the United States,[8/] or any facts connecting him in any way with the events of September 11.

The Supreme Court has clearly set forth what the Constitution requires if personal jurisdiction is to be based on activities outside the United States.  It would not be enough to allege (and plaintiffs do not allege) actions abroad that had a "foreseeable" effect in the United States.  Plaintiffs must allege that such actions were "expressly aimed" at the United States. *Calder v. Jones*, 465 U.S. 783, 789 (1984).  As the Court later explained in *Burger King Corp.*, 471 U.S. at 474-75 (internal quotations marks and citations omitted):

> [T]he Court has consistently held that [foreseeability of causing injury in the forum] is not a sufficient benchmark for exercising personal jurisdiction . . . .  [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state.

Here, plaintiffs have alleged nothing that Prince Mohamed allegedly did that even had a foreseeable consequence in the United States, much less anything he did that was "expressly aimed" at this country.  Indeed, applying these principles to the claims against Prince Sultan, Judge Robertson ruled in *Burnett* that notwithstanding allegations that Prince Sultan "personally

---

[8/]     Paragraph 296 alleges that "[c]ertain [unspecified] members of the Saudi Royal family . . . own substantial assets in the United States of America, and do substantial business in the United States of America, the profits of which in part, are used to fund international terrorist acts, including those which led to the murderous attacks of September 11, 2001."  Plaintiffs do not allege that Prince Mohamed is among the "certain" members referred to, and plaintiffs could have no basis for such an allegation. Allegations of contacts with the United States by some unspecified members of a large family are obviously insufficient to permit the exercise of jurisdiction over a particular individual.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

donated money to [certain charities], knowing that those foundations funded terrorist organizations including Al Qaeda," the complaint "stops well short of alleging that Prince Sultan's actions were 'expressly aimed' or 'purposefully directed' at the United States." *Burnett*, 292 F. Supp. 2d at 22-23. Judge Robertson therefore dismissed these personal activity claims for lack of personal jurisdiction.[9/]

The allegations against Prince Mohamed fall woefully short of the allegations against Prince Sultan that Judge Robertson found "well short" of providing a basis for the exercise of personal jurisdiction. The Complaint's only concrete assertion against Prince Mohamed that has any relationship at all to terrorism is that he, a Saudi, is Chairman of a bank in Sudan in which an individual allegedly associated with al Qaeda once said "we got account." *See* p. 3-4, *supra*. But the Complaint says nothing about the "account." There is no allegation that the "account," or its holder, had anything to do with the United States or had any connection of any kind to the events of September 11. And there is of course no allegation that Prince Mohamed *knew* of any such connection.[10/]  Nothing in this Complaint comes close to showing that Prince Mohamed even was *negligent* with respect to any purported activities of any "account" holder in any bank

---

[9/]    Other portions of Judge Robertson's opinion discussed issues of sovereign immunity that are irrelevant to the present motion. *Burnett*, 292 F. Supp. 2d at 13-21. The quoted portions of the opinion dealt with (and dismissed) claims against Prince Sultan in his personal capacity.

[10/]    The Complaint makes the conclusory (and counterintuitive) allegation that "[a]s the head of DMI" Prince Mohamed "knew or should have known" of the account. Compl. ¶ 276. This is, at best, a conclusory assertion for which the Complaint supplies neither supporting facts nor any basis, and it is insufficient to establish "minimum contacts" and avoid dismissal. *See Jazini*, 148 F.3d at 184 ("conclusory statement" of the legal standard required to establish personal jurisdiction does not constitute the required prima facie showing; plaintiff must allege facts supporting that conclusion); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) (conclusory allegations insufficient to establish personal jurisdiction); *Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (allegation of legal conclusion does not constitute the prima facie showing necessary to establish personal jurisdiction). But in any event there is not even a conclusory allegation that the alleged "account" had any connection with plaintiffs' injury or that Prince Mohamed knew of any such connection.

with which he was affiliated, let alone that his alleged action (or inaction) with respect to that "account" (or anything else alleged in the Complaint) constituted *intentionally* tortious actions "expressly aimed" at New York (or anywhere else in the United States, or the United States as a whole).  Prince Mohamed plainly did not have "fair warning that a particular activity"—here, serving as Chairman of a bank in Sudan that allegedly accepted some sort of 'account' of an al Qaeda operative—"m[ight] subject him to the jurisdiction of the United States." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)).  It would be wholly inconsistent with "notions of fair play and substantial justice" to require him to answer in an American court on the basis of his chairmanship of a Sudan bank that allegedly once had an otherwise undescribed "account" that is not alleged to have had anything to do with the events that injured the plaintiffs.[11/]

**B.    Plaintiffs' General Allegations of "Conspiracy" and "Aiding and Abetting" Provide No Basis for Jurisdiction Over Prince Mohamed.**

The Complaint makes general allegations that all of the defendants were engaged in a "conspiracy" and that they all "aided and abetted" terrorism (¶¶ 23, 24), but at least as to Prince Mohamed these allegations are wholly conclusory and do not salvage plaintiffs' defective assertion of personal jurisdiction.  "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93

---

[11/]    In *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), Judge Posner made this precise point through a reverse example for which, ironically, he chose Saudi Arabia:

> We would not expect anyone to argue that if the First National Bank of Chicago accepts a deposit from a man in Saudi Arabia, this thrusts the bank into the banking business in Saudi Arabia, thus exposing it to suit there by any resident of the kingdom for anything at all, whether or not the plaintiff is the depositor or his claim is related to the deposit.

969 F.2d at 458.  An attempt to sue the *chairman* of the Chicago bank in Saudi Arabia would be even more obviously improper.

(2d Cir. 1975); *see also Second Amendment Found.*, 274 F.3d at 524 ("allegation that the

[defendants] conspired together represents nothing more than a legal conclusion, which . . . does

not constitute the prima facie showing necessary to carry the burden of establishing personal

jurisdiction") (internal quotation marks and citation omitted).  "The cases are unanimous that a

bare allegation of a conspiracy between the defendant and a person within the personal

jurisdiction of the court is not enough.  Otherwise plaintiffs could drag defendants to remote

forums for protracted proceedings even though there were grave reasons for questioning whether

the defendant was actually suable in those forums." *Stauffacher*, 969 F.2d at 460; *see also Bank*

*Brussels Lambert*, 171 F.3d at 793 (same).[12]  To establish jurisdiction over a non-resident

conspirator, a plaintiff must show that the in-state actor acted "for the benefit of, with the

knowledge and consent of, and under some control by, the nonresident principal." *Grove Press,*

*Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981).[13]  Here, there is no allegation of any facts to

show that Prince Mohamed knew anything about, let alone that he intended or consented to or

directed any act that injured the plaintiffs.

       The conclusory allegations of aiding and abetting are also wholly insufficient to establish

jurisdiction.  A claim of aiding and abetting "requires that the defendant have given substantial

---

[12]    *See also First Capital Asset Mgmt v. Brickellbush.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002) (to assert jurisdiction based on alleged conspiracy, plaintiff must "(1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor"); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) (same; plaintiffs must "set forth evidentiary facts to connect the defendants with transactions occurring in the United States") (internal quotation marks omitted).

[13]    *See also Simon v. Philip Morris*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (requiring a showing that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request or on behalf of" the out-of-state defendant." (internal quotation marks omitted)).

assistance or encouragement to the primary wrongdoer," and "the defendant must know the wrongful nature of the primary actor's conduct." *Pittman by Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998) (New York law) (quotation marks omitted). The alleged aider and abettor must have *known* that he was assisting and must *in fact* have assisted the perpetration of the misconduct at issue. Here, there are no factual allegations to support any such claim.

### C.     Prince Mohamed's Alleged Status as an Officer of Other Defendants Does Not Subject Him to the Jurisdiction of this Court.

Finally, Prince Mohamed is not subject to this Court's jurisdiction as an (alleged) officer of DMI, IICG, and FIBS. To begin with, the Complaint also fails to explain how this Court would have personal jurisdiction over *them*. But in any event an *officer* of a bank or other corporation, who does not himself have sufficient contacts with the forum, is not subject as an individual to the personal jurisdiction of its courts, even if the corporation might be sued there. "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Officers are different "persons" from their corporations and are not subject to jurisdiction on account of corporate acts in which they did not personally participate. *See id.*; *Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1977); *id.* at 217 (Powell, J., concurring) ("I also agree that . . . [appellants'] positions as directors and officers of a Delaware corporation can[not] provide sufficient contacts to support the Delaware courts' assertion of jurisdiction in this case."); *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (jurisdiction over corporation does not create jurisdiction over its officers); *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 569 (7th Cir. 1986) ("[T]he individual board members

cannot be said to have transacted business within Illinois merely because the corporation is qualified to do business here.").[14/]

In sum, plaintiffs have alleged no factual basis upon which this Court could assert personal jurisdiction over Prince Mohamed.  But the deficiencies of the Complaint go deeper. The wholly conclusory allegations of complicity in a terrible mass murder are insufficient to state a claim against him.

## II.   THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST PRINCE MOHAMED UPON WHICH RELIEF CAN BE GRANTED.

None of the eight counts of the Complaint states a cause of action against Prince Mohamed.  Some do not state causes of action at all, even in form.  The others all fail for the same reason, among others: failure to allege that Prince Mohamed did anything that connects him proximately (or otherwise) to the tragic events that caused plaintiffs' injury.

### A.   Each of Plaintiffs' Causes of Action Requires That the Defendant's Alleged Actions Proximately Caused Their Injury.

Although the circumstances are uniquely horrific, this case is a tort case for personal injuries.  Each Count sounds in tort, and the legal theory of each Count requires that plaintiffs

---

[14/]   *See also Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("The mere fact that a corporation is subject to jurisdiction under section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York."); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (rejecting argument that "because New York courts unquestionably have jurisdiction over TWA, jurisdiction can be imputed to defendants because TWA acted as defendants' agent in coercing and threatening the New York travel agencies"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("[Plaintiff] cannot obtain personal jurisdiction over [defendant] based solely on his position as President of P.S.C.; instead, [plaintiff] must show that [he] personally took part in the activities giving rise to the action at issue.").

establish that a named defendant engaged in a tortious act that proximately caused plaintiffs'

injury.[15/]

    *Count I: "Wrongful Death Based on Intentional Murder."*   Under the laws of all three

jurisdictions in which injuries occurred, a wrongful death claim requires a plaintiff to plead and

prove that a defendant engaged in a wrongful act that proximately caused the death.[16/]

    *Count II: "Survival Damages Based on Intentional Murder."*   A survival statute does not

create a separate cause of action.  It is a procedural device by which an individual's estate may

pursue his cause of action for suffering before his death.[17/]  The estate must establish all the

elements of the underlying tort, including a wrongful act that caused the decedent's injuries.  *See*

*Lawrence v. Walsh*, 187 N.Y.S.2d 71, 74 (App. Div. 1959) (administrator has "burden of proving

injuries and damages causally related to this accident").

    *Count III: "Assault and Battery."*   Under the laws of New York, Virginia, and

Pennsylvania, claims of assault or battery require allegations and proof that the defendant

---

[15/]    Because these claims can be dismissed under general legal principles, a comprehensive choice-of-law analysis is unnecessary: every forum requires that plaintiffs establish causation.  On state-law issues, New York's choice of law rules indicate that New York, Pennsylvania or Virginia law would likely apply, depending on which plane crash caused a plaintiff's injury.  *See Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197-98 (Ct. App. 1985); *Mascarella v. Brown*, 813 F. Supp. 1015, 1018-20 (S.D.N.Y. 1993).

[16/]    N.Y. Est. Powers & Trusts § 5-4.1(1); 42 Pa. Cons. Stat. § 8301; Va. Code Ann. § 8.01-50(A); *see Robinson v. Matt Mary Moran, Inc.*, 525 S.E.2d 559, 562-63 (Va. 2000) (dismissing wrongful death claim because defendant's conduct could not be proximate cause of plaintiff's injury); *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 372 (S.D.N.Y. 1996) (same); *Carroll v. Colon*, 608 F. Supp. 1277, 1279 (E.D. Pa. 1985) (same).

[17/]    *See* N.Y. Est. Powers & Trusts  § 11-3.2(b); *Doe v. State*, 588 N.Y.S.2d 698, 709 (Ct. Cl. 1992), *aff'd*, 595 N.Y.S.2d 592 (App. Div. 1993); 42 Pa. Cons. Stat. § 8302; *Tulewicz v. S.E. Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992);  *see generally* 3 Speiser *et al.*, Recovery for Wrongful Death and Injury § 14.1 at 3 (3d ed. 1992); 2 Dobbs, Law of Torts § 295 at 805.  Virginia's survival statute differs from New York's and Pennsylvania's by transforming any survival cause of action into a wrongful death claim.  Va. Code. Ann. § 8.01-25; *El-Meswari v. Wash. Gas Light Co.*, 785 F.2d 483, 491 (4th Cir. 1986).

wrongfully caused the plaintiff to fear, or to suffer, harmful contact.[18/]  (These claims also require that the defendant intended to harm the plaintiffs, *Girden*, 262 F.3d at 203; *Park*, 250 F.3d at 852; *Cucinotti*, 159 A.2d at 217; *Levenson*, 557 A.2d at 1088, which the Complaint nowhere alleges as to Prince Mohamed.)

     *Count IV:  "Violation of the Anti-Terrorism Act, Section 2333."*  Section 2333 of Title 18 provides a cause of action for a "national of the United States injured in his or her person or property *by reason of* an act of international terrorism."  (Emphasis added.)  The phrase "by reason of," in this statute, "require[s] a showing of proximate cause."[19/]

     *Count V: "Torture Victim Protection Act."*  This count actually invokes two distinct federal laws, the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), and the Torture Victim Protection Act ("TVPA"), which appears in the U.S. Code as a "note" to Section 1350.  To the extent that the ATS provides a cause of action,[20/] there is no question that the tort alleged by the

---

[18/]     *See Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001); *Park v. Shiflett*, 250 F.3d 843, 852 (4th Cir. 2001); *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960) (assault); *Levenson v. Souser*, 557 A.2d 1081, 1088 (Pa. Super. 1989) (battery).

[19/]     *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1012 (7th Cir. 2002) (noting Supreme Court has interpreted identical language to require a showing of proximate cause) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992) (the phrase "by reason of" in civil RICO statute requires showing of "proximate cause")); *see Burnett*, 274 F. Supp. 2d at 106 (interpreting *Boim* to require knowledge and intent to further violent acts, and those violent acts must be a reasonably foreseeable result); *Smith v. Afghanistan*, No. 01 Civ. 10132 (HB), 2003 WL 21027170, at *6 n.12 (S.D.N.Y. May 7, 2003) ("*Boim* … held that … [a] plaintiff must show knowledge of and an intent to further the criminal acts and proximate cause."); *see also Lerner v. Fleet Bank, NA*, 318 F.3d 113, 122 (2d Cir.) (affirming dismissal of RICO claims for failure to allege facts showing proximate cause), *cert. denied*, 124 S. Ct. 532 (2003) (No. 03-189); *Associated Gen. Contractors, Inc. v. Carpenters,* 459 U.S. 519, 534 (1983) (interpreting "by reason of" in Clayton Act to require proximate cause).

[20/]     The ATS provides "jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  The Supreme Court has now granted certiorari to address the question whether the ATS provides a cause of action, and if so, whether the actions so authorized are limited to suits for *jus cogens* norms of international law.  *See Alvarez-Machain v. United States*, 331 F.3d 604, 611 (9th Cir.) (en banc), *cert. granted*, 124 S. Ct. 807 (2003) (No. 03-339).

plaintiff must have *caused* his injury.[21]  Likewise, the TVPA provides a cause of action against an individual who "subjects" the plaintiff to torture or extrajudicial killing.  *See* S. Rep. No. 102-249 at 9 (1991) (describing bill that became TVPA as intended to impose liability on defendants who "actually committed those [proscribed] acts" and those who had "command responsibility" for primary tortfeasors).  The word "subjects" obviously refers to direct causation, and no court has ever suggested that anything less than actual causation is acceptable.[22]

> *Count VI: "Antiterrorism and Effective Death Penalty Act."*  This Count asserts claims only against the nations of Iraq, Iran, and Sudan.

> *Count VII: "Punitive Damages."*  This Count does not state a cause of action at all.  A right to punitive damages depends on pleading and proving an underlying tort; it is not a separate cause of action.[23]

> *Count VIII: "Property Damage."*  The only claims for property damage are made by two companies that jointly owned a property directly across from the World Trade Center.  *See*

---

[21]     *See, e.g., Bigio v. Coca-Cola Co.*, 239 F.3d 440, 448 (2d Cir. 2000) (ATS claim requires causation); *Carmichael v. United Techs. Corp.*, 835 F.2d 109, 115 (5th Cir. 1988) (dismissing ATS claim for insufficient allegations of causation); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 353-354 (D.N.J. 2003) (ATS claim requires causation).

[22]     Moreover, the TVPA requires state action.  *See Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995); *Doe v. Islamic Salvation Front*, 993 F. Supp. 3, 9 (D.D.C. 1998); H.R. Rep. No. 102-367 at 5 (1991); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 21-23 (D.D.C. 2000), *aff'd*, 35 Fed. Appx. 1 (D.C. Cir. 2002) (dismissing claims under TVPA for failure to allege "substantial degree of cooperative action" between private defendant and foreign government); *cf. Bigio v. Coca Cola Co.*, 239 F.3d 440, 448-49 (2d Cir. 2000) (finding no state action and dismissing ATS claim).  The Complaint does not allege that Prince Mohamed is a state actor, or that he took any action under actual or apparent authority, or color, of the law of Saudi Arabia or any other foreign nation, or that he cooperated in any way with, or controlled, any state actor.

[23]     *See Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 616 (1994); *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989); *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).

Compl. at 90 and ¶ 624.  Under New York law, a claim for property damage requires the plaintiff to allege and prove that the defendant committed a tortious act that in fact caused the damage.[24]/

> **B.      The Complaint Does Not Allege That Prince Mohamed Proximately (or Otherwise) Caused Plaintiffs' Injuries.**

The Complaint fails to state a claim on any of these theories because it does not allege that anything that Prince Mohamed did or failed to do led in any way to the events of September 11.  It does not allege that he knew in advance about these events or any other terrorist act, or desired any such act to occur.  It does not allege that he ever transferred anything of value to anyone associated with the events of September 11 (or to anyone else).

"Proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  The defendant's acts must have been "a substantial factor" leading to the injury, and the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of the acts.  *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (quoting *Hecht v. Commercial Clearing House, Inc.*, 897 F.2d  21, 23-24 (2d Cir. 1990)); *see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999) (emphasizing that the "direct injury test" is independent of, and in addition to, the requirements that the tortious act be a "substantial" factor and that the injury be reasonably foreseeable).  Thus, a plaintiff must allege facts to show both that the injury would not have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial factor foreseeably leading to the injury.  *See, e.g., Holmes*, 503 U.S. at 268 (liability for injury "by reason of" defendant's conduct requires "a

---

[24]/      *See Reilly v. Sicilian Asphalt Paving Co.*, 170 N.Y. 40, 45 (1902); *Borden's Condensed Milk Co. v. Mosby*, 250 F. 839, 843 (2d Cir. 1918).

showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well").[25/]

By these standards, the Complaint is several large leaps away from stating a claim that Prince Mohamed caused plaintiffs' injuries; plaintiffs fail to allege facts suggesting even "but for" causation, let alone proximate cause.  As noted, the sole alleged factual basis for the claims (and terrible sweeping assertions) against Prince Mohamed is that he was "Chairman" of FIBS (or, in Complaint ¶ 608, "managed" FIBS) and that one individual named Al Fadl, said to be associated with al Qaeda, testified in another case that "we got account in Bank Faisl Islami."  *See* p. 3-4, *supra*.  This wholly fails, for three reasons, to connect any act of Prince Mohamed to plaintiffs' injuries.

First, the Complaint does not allege any facts to suggest that FIBS itself acted wrongfully.  The Complaint (and the testimony of Al Fadl) do not indicate the name in which the "account" was held or anything about how it was handled.  And just as fundamentally, the Complaint does not allege that the law of Sudan or any other country barred anything FIBS did or required FIBS to do anything it did not do.  As a matter of law, banks are *not* responsible for assuring that their customers are good people, or for policing how their customers use the money

---

[25/]     The failure to allege facts indicating a direct relation between the injury and the defendant's act, that such acts were a "substantial" factor leading to the injury, and that the injury was a reasonably foreseeable result of those acts, requires dismissal.  *See, e.g.*, *Lerner*, 318 F.3d at 117, 120-24 (affirming dismissal under Rule 12(b)(6) of civil RICO claims for failure to allege facts showing proximate cause); *Browning v. Clinton*, 292 F.3d 235, 248 (D.C. Cir. 2002) (affirming dismissal under Rule 12(b)(6) of civil RICO claim for failure to allege a direct relationship between defendant's conduct and the injury); *cf. Boim*, 291 F.3d at 1012 (rejecting tort liability where injury was not reasonably anticipated as a natural consequence of defendants' actions).

in their accounts.[26/]  Taking as true the allegation that FIBS at some time held the unnamed

"account," this allegation does not begin to state a claim even against FIBS.  *See Burnett et al. v.

Al Baraka Inv. & Dev. Corp. et al.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (Robertson, J.)

("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for

injuries done with money that passes through its hands in the form of deposits, withdrawals,

check clearing services, or any other routine banking service.") (footnote omitted).

Second, the Complaint alleges no facts to suggest that the "account" was in any sense a

cause of—or was connected at all to—the events of September 11 or any other terrorist activity.

There are no allegations about when the account was held, how much money (if any) was in the

account, where the money came from, whether it was ever used for any purpose, and if so what

that purpose was.  In *Boim*, the Seventh Circuit found that even direct funding of a known

terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA,

because liability under the statute requires a showing of proximate cause, *i.e.*, to allege facts to

show that the murder of  David Boim was "a reasonably foreseeable result of . . . the donation."

292 F.3d at 1012.  The Complaint's allegations fall far short of the allegations deemed

*in*sufficient in *Boim*.

Third, the Complaint alleges no facts to link *Prince Mohamed* to any of the events that

caused plaintiffs' injury.  The Complaint does allege (¶ 276) that he "knew or should have

---

[26/]    *See, e.g., Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (collecting cases and stating that "[c]ourts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship"); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 Civ. 10726 (LAP), 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (under New York law bank "owed no duty of care to" non-customer defrauded by bank's customer); *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (same); *Century Bus. Credit Corp. v. N. Fork Bank*, 668 N.Y.S.2d 18, 19 (App. Div. 1998) (declining to require bank "to monitor the depositors' financial activities" as it "would . . . unreasonably expand banks' orbit of duty"); *see also Volpe v. First Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998) (collecting decisions holding that a "bank owes no duty of care to a noncustomer with whom it has no relationship"); *McCallum v. Rizzo*, No. 942878, 1995 WL 1146812 (Mass. Super. Oct. 13, 1995) (same).

known" of the existence of the account.  But even if that conclusory allegation were cognizable, there is no allegation that there was any connection between the "account" and the events that injured the plaintiffs, or that (even if there were such a connection) Prince Mohamed knew or should have known it.  Thus, even if plaintiffs had alleged facts to state a claim against FIBS, they failed to allege facts sufficient to state any claim against any corporate officer of FIBS, including Prince Mohamed.  *See Armour & Co. v. Celic*, 294 F.2d 432, 439 (2d Cir. 1961) ("[A] director, merely by reason of his office, is not personally liable for the torts of his corporation; he must be shown to have personally voted for or otherwise participated in them.); *Olszewski v. Waters of Orchard Park*, 758 N.Y.S.2d 716, 717 (App. Div. 2003) (corporate officer cannot be held individually liable for the tortious conduct of the corporation "merely because of his relationship to" the corporation); *Kinnel v. Mid-Atlantic Mausoleums, Inc.*, 850 F.2d 958, 966 n.10 (3d Cir. 1988) (corporate officer is individually liable for wrongful act of the corporation only if the officer participated in the tortious activity); *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 929 (4th Cir. 1984) (corporate officer is individually liable for wrongful act of corporation only if the officer was directly engaged in the transaction giving rise to liability; marginal participation or participation subject to the directions and advice of others is insufficient); *Cooper v. First Gov't Mortgage & Investors Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (corporate officer is individually liable for wrongful act of corporation only if the officer had "meaningful participation" in the tortious activity); *cf. Meyer v. Holley*, 123 S. Ct. 824, 829 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

At bottom, the Complaint alleges that a single, otherwise undescribed "account" was at some point in time allegedly held by al Qaeda at FIBS.  Because there are no allegations as to what if anything was in the account, or that anything ever moved out of the account, such allegations are insufficient even to show that the bank was a passive "funnel" through which funds passed.  *See Burnett*, 274 F. Supp. 2d at 109.  And even if an inference could be drawn that at some point some sum of money passed through this "account," such allegations are insufficient to state a claim against the *bank*, much less against the *chairman* of the bank.  *Id.* (bank is not liable for injuries done with money that passes through its hands in the form of withdrawals, deposits, or routine banking services).

The general allegation that the acts of *all* the defendants "caused" the plaintiffs' injury (¶ 610) is obviously insufficient to state a claim against Prince Mohamed (or any other particular defendant).  "[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (internal quotation and citation omitted); *see also In re Am. Express Co. S'holder Litig.*, 39 F.3d at 400 n.3 (conclusory allegations of proximate cause "need not be accepted as true for purposes of ruling on a motion to dismiss").  Even under the notice pleading standard, courts accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations.  *See, e.g., Jazini*, 148 F.3d at 184; *Lehigh Valley Indus.*, 527 F.2d 93-94; *Browning*, 292 F.3d at 242 (interpreting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,  512 (2002)); *Burnett*, 274 F.3d at 103; *see also Citibank N.A. v. K-H Corp.*, 968 F.2d 1489, 1495-96 (2d Cir. 1989) (affirming dismissal of

securities fraud claim because plaintiff did "not allege facts that support its allegation that there

is a causal connection between the fraud alleged and the subsequent loss that it suffered").

Finally, plaintiffs allege in a wholly conclusory fashion that Prince Mohamed "acted as

an aider and abettor and material sponsor of al Qaeda, Osama bin Laden, and international

terrorism." (Compl. ¶ 276). But the Complaint nowhere alleges the elements necessary to state a

claim for aiding and abetting against Prince Mohamed. Again, legal conclusions cast in the form

of factual allegations are entitled to no weight. "[T]he price of entry, even to discovery, is for

the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which

may be costly and burdensome." *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d

53, 55 (1st Cir. 1999) (Boudin, J.); *see Meng v. Schwartz*, 116 F. Supp. 2d 92, 95 (D.D.C. 2000)

("legal conclusions, deductions or opinions couched as factual allegations are not given a

presumption of truthfulness") (citing *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir.

1987)). The requirements for a claim of aiding and abetting are that the defendant had

"knowledge of" and provided "substantial assistance" in the commission of the underlying

wrong. *See, e.g., Wight v. Bankamerica Corp.*, 213 F.3d 79, 91 (2d Cir. 2000); *Armstrong v.

McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir.

1983) (aiding and abetting requires "*knowing action* that substantially aids" tortious conduct);

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).[27] Even "awareness

and approval [of wrongful activity], standing alone, do not constitute substantial assistance."

---

[27]    New York, Virginia and Pennsylvania apply the same requirements. *See Lindsay v. Lockwood*,
625 N.Y.S.2d 393, 397 (Sup. Ct. 1994) (civil cause of action for aiding and abetting requires knowledge
of the underlying tort and substantial assistance in its commission) (quoting D.C. Circuit test from
*Halberstam*, 705 F.2d at 477); *Priester v. Small*, Nos. 26541, 26520, 2003 WL 21729900 at *2 (Va. Cir.
Ct. April 14, 2003) (civil cause of action for aiding and abetting requires knowledge of the underlying tort
and substantial assistance in its commission); *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct.
2003) (same).

*Armstrong*, 699 F.2d at 92.  Here, there is no allegation that Prince Mohamed either knew in advance about the events of September 11 (or any other terrorist activities), or approved such activities, or assisted them in *any* way.  Courts have routinely rejected allegations of aiding and abetting that "are so broad and conclusory as to be meaningless."[28]

The Seventh Circuit's decision in *Boim* illustrates the failure of plaintiffs' allegations here to state any claim against Prince Mohamed.  There, the court held that even allegations of direct cash payments to a declared terrorist organization (Hamas), which then used the money to sponsor a terrorist act, were *not sufficient* to state a claim against the donor for engaging in an act of "international terrorism," because no facts were alleged to suggest that the donations were the proximate cause of the injury.

> [T]he [Antiterrorism Act] itself requires that in order to recover, a plaintiff must be injured "by reason of" an act of international terrorism.  The Supreme Court has interpreted identical language to require a showing of proximate cause. . . . Foreseeability is the cornerstone of proximate cause, and in tort law, a defendant will be liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions. . . .  In the circumstances of this case, the Boims cannot show that David Boim was injured "by reason of" the defendants' payments to Hamas in the traditional tort sense of causation unless they can also show that murder was the reasonably foreseeable result of making the donation.

*Boim*, 291 F.3d at 1011-12 (citations omitted).

The *Boim* court allowed the plaintiffs to pursue a claim under Section 2333 for "aiding and abetting" Hamas in killing their son, because the plaintiffs had alleged not only that the

---

[28]    *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir. 1982); *see also Bigio,* 239 F.3d at 448-49 (dismissing ATS claim where no allegation that defendant "had any role" in wrongful act); *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (dismissing aiding and abetting claim against bank predicated on bank's allegedly accepting loan repayments as part of fraudulent conveyance); *Armstrong*, 699 F.2d at 93 ("[c]onclusory allegations that the bank aided and abetted are not enough"); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 165-66, 168-69 (5th Cir. 1999) (dismissing ATS claim where complaint made conclusory allegations).

defendants had "engaged in raising and laundering money for Hamas" and "functioned as fronts

for Hamas" and "raised and channeled funds to Hamas to finance terrorist activities in Israel,"

where their son was murdered, but also that the defendants sent money to Hamas *that was in fact*

*used "to purchase the vehicle, machine guns, and ammunition used to kill [their son] as well as*

*to train his killers and to provide a stipend for the family of one of his murderers."* 291 F.3d at

1024 (emphasis added).  The contrast with the "facts" alleged in the present case is stark.  Here,

plaintiffs have not alleged that Prince Mohamed has ever given or transferred *any* money or

other assets to *anyone*.[29]

*   *   *

Finally, we note that the Complaint makes a particular effort to imply that "Islam" is the

cause of the events of September 11 and thereby implicate its practitioners.  "Islamic" is

repeatedly used as if it were synonymous with "terrorist."  *See, e.g.,* Compl. ¶¶ 33, 36, 112, 251,

447, 292, 368, 529.  For example, the Complaint alleges that "AL QAEDA documents" (which

are nowhere identified) state that the Saudi Arabian government "is the only representative

model Islamic government, the greatest center of Islam as AL QAEDA moves to expel the Jews

and Christians from Arab lands through mass murder." (*Id.* ¶ 292.)  This horrific allegation is

---

[29]    Because the Complaint here provides *no* specifics, this Court need not resolve the difficult threshold legal question whether there can be any liability for aiding and abetting a violation of the ATA. *Compare Boim*, 291 F.3d at 1016-21 (extending federal statutory liability under ATA to aiding and abetting), *with Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164 (1994) (barring extension of 10b-5 liability to aiding and abetting claims), *and De Falco v. Bernas*, 244 F.3d 286, 330 (2d Cir.) (barring recovery under RICO on an aiding and abetting theory), *cert. denied*, 534 U.S. 891 (2001).

    Of course, the general allegation (Compl. ¶¶ 5, 24) that the "defendants" engaged in a "conspiracy" to attack the United States is also woefully insufficient to state a claim.  *See Twombly v. Bell Atlantic Corp.*, et al., No. 02-cv10220, Slip Op. at 9, 11 (S.D.N.Y. Oct. 7, 2003) (under *Swierkiewicz* and Second Circuit law, a "bare bones statement of conspiracy . . . without any supporting facts permits dismissal" under Rule 12(b)(6)) (quoting *Heart Disease Res. Found. v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972)).

23

gibberish, logically as well as grammatically:  plaintiffs offer nothing but religious prejudice to connect Saudi Arabia with "mass murder."  Similarly, the Complaint accuses defendants of "spread[ing] Islamic banking," *id.* ¶ 274, as if "Islamic banking" were synonymous with terrorism.

Prince Mohamed strongly objects to these slurs.  Plaintiffs are entitled to recover from those legally liable to them under long-established standards developed for assessing tort liability.  They are not entitled to have this Court condemn Saudi Arabia, or Islam, and sweep in that condemnation Prince Mohamed and others who had nothing to do with their loss.

## CONCLUSION

For the foregoing reasons, defendant Prince Mohamed Al-Faisal Al-Saud respectfully requests that this Court dismiss all claims against him, with prejudice.

Respectfully submitted,


_____/s/_____

March 19, 2004                          Louis R. Cohen (LC 4012 )
                                        WILMER CUTLER PICKERING LLP
                                        2445 M Street NW
                                        Washington, D.C. 20037
                                        Tel.: 202-663-6000
                                        Fax: 202-663-6363

                                        David P. Donovan (DD 7012)
                                        WILMER CUTLER PICKERING LLP
                                        1600 Tysons Boulevard, 10th Floor
                                        McLean, VA 22102
                                        Tel: 703-251-9700
                                        Fax: 703-251-9797

                                        Matthew Previn (MP 2173)
                                        WILMER CUTLER PICKERING LLP
                                        399 Park Avenue
                                        New York, NY 10022
                                        Tel.: 212-230-8800
                                        Fax: 212-230-8888