**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
                                                    )
In re Terrorist Attacks on September 11, 2001       )        No. 03-MD-1570 (RCC)
———————————————————————)
                                                    )
KATHLEEN ASHTON, et al.,                            )        No. 02-CV-6977 (RCC)
                                                    )
                         PLAINTIFFS,                )
                                                    )
             v.                                     )
AL QAEDA ISLAMIC ARMY, et al.,                      )
                                                    )
                         DEFENDANTS.                )
———————————————————————)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAUDI BINLADIN**
**GROUP'S MOTION TO DISMISS THE COMPLAINT OR**
**<u>IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ............................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER SBG ............................... 5

   A.   Plaintiffs Have Failed to Allege Minimum Contacts With the United States.................... 6

   B.   Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory...................... 9

II.  PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM AGAINST SBG UNDER THE ANTI-TERRORISM ACT ("ATA") ........................................................... 10

   A.   Plaintiffs Have Failed to Establish Primary Liability Under the ATA ........................... 10

      1.   *None of the Facts Alleged in the Complaint Support an Inference That SBG Provided Material Support to Terrorism* ..................................................................... 11

      2.   *Plaintiffs Were Not Injured "By Reason of" SBG's Alleged Conduct*......................... 13

   B.   Plaintiffs Cannot State an ATA Claim Based on a Joint Tort Theory.............................. 16

      1.   *Plaintiffs Have Failed to Adequately Allege an Aiding and Abetting Claim Against SBG*.......................................................................................................... 17

      2.   *Plaintiffs Have Not Adequately Alleged That SBG Participated in a Terrorist Conspiracy*........................................................................................................ 19

   C.   Plaintiffs Fail to Allege That SBG Acted Knowingly in Support of the September 11 Terrorists, OBL, or Al Qaeda........................................................................ 20

III. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A VIOLATION OF THE TORTURE VICTIM PROTECTION ACT ("TVPA")......................................................21

   A.   The TVPA Does Not Apply To Corporations Like SBG................................................ 22

   B.   The TVPA's State Action Requirement Is Not Satisfied Here ...................................... 22

IV.  PLAINTIFFS' STATE LAW CLAIMS ALSO FAIL .....................................................23

CONCLUSION.........................................................................................................................25

i

## TABLE OF AUTHORITIES

### CASES

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427 (S.D.N.Y. 1996)................7

*Aldana v. Fresh Del Monte Produce, Inc.*, 01 Civ. 3399, 2003 U.S. Dist. LEXIS 24343 (S.D. Fla. Dec. 12, 2003)................................................................22

*Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215 (S.D.N.Y. 1992) ...........................9

*Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102 (1987) .........................................6

*Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240 (2d Cir. 1987) ...........................................17

*Atwell v. LaSalle Nat'l Bank*, 607 F.2d 1157 (5th Cir. 1979) .........................................7

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ....................................5

*Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362 (E.D. La. 1997), *aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999)................................................................22

*Blouin v. Spitzer*, 213 F. Supp. 2d 184 (N.D.N.Y. 2002), *aff'd*, 356 F.3d 348 (2d Cir. 2004)................................................................23

*Boim v. Quranic Literacy Inst. & Holy Land Found.*, 291 F.3d 1000 (7th Cir. 2002) ..........*passim*

*Bona v. Barasch*, 01 Civ. 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ...........................15

*Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)*, 274 F. Supp. 2d 86 (D.D.C. 2003)................................................................*passim*

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998)................................................................7

*Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996)......................................14

*Chong v. New York City Transit Auth.*, 441 N.Y.S.2d 24 (App. Div. 1981) ................................24

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ....................................19

*Cofacredit, S. A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)........................19

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000)...............................7

*Corcoran v. New York Power Auth.*, 935 F. Supp. 376 (S.D.N.Y. 1996)...................................23

*Core-Tek Prods., Inc. v. Air & Sea Transp. SRL*, 98 Civ. 8270, 1999 U.S. Dist. LEXIS 11537 (S.D.N.Y. July 29, 1999)..........................................................................................6

*Corning, Inc. v. Shin Etsu Quartz Prods. Co.*, 00-7931, 2000 U.S. App. LEXIS 31853 (2d Cir. Dec. 11, 2000)............................................................................................6

*Dardana Ltd. v. Yugaskneftegaz*, 317 F.3d 202 (2d Cir. 2003) ......................................6

*Daval Steel Prod. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159 (S.D.N.Y. 1989) .......................10

*Diamond State  Ins. Co. v. Worldwide Weather Trading LLC*, 02 Civ. 2900, 2002 WL 31819217 (S.D.N.Y. Dec. 16, 2002).....................................................................21

*Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115 (D.D.C. 2003)..............................................14

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, 00 Civ. 8670, 2003 U.S. Dist. LEXIS 15256 (S.D.N.Y. Sept. 5, 2003)....................................................................................6

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)...........................15, 16

*Friedman v. Bayer Corp.*, 99 Civ. 3675, 1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ...........22

*Giar v. Centea*, 02 Civ. 7916, 2003 U.S. Dist. LEXIS 6383 (S.D.N.Y. Apr. 16, 2003), *aff'd*, 03-7546, 2004 U.S. App. LEXIS 1451 (2d Cir. Jan. 29, 2004) ................................8

*Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001) ....................................................24

*Giro v. Banco Espanol de Credito, S.A.*, 208 F.3d 203 (Table), 2000 WL 287694 (2d Cir. 2000) .........................................................................................15, 16

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) .........................................................................................9, 10

*Greenwald v. Hall*, 01 Civ. 5405, 2003 WL 164279 (S.D.N.Y. Jan. 23, 2003) ..........................15

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)..........................................14, 17, 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ....................................7

*Highlands Inc. Co. v. PRG Brokerage, Inc.*, 01 Civ. 2272, ____ F. Supp. 2d ____, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004).................................................................................3

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)..........................................................3

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).........................................14

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485 (S.D.N.Y. 1987)....................................................6

*Ideal Steel Supply Corp. v. Anza*, 254 F. Supp. 2d 464 (S.D.N.Y. 2003)...........................3, 15, 16

*Jantzen v. Leslie Edelman of N.Y., Inc.*, 614 N.Y.S.2d 744 (App. Div. 1994) ..............................24

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995)......................................................................22

*Klinghoffer v. S.N.C. Achille Lauro ED Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991)................................................8

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ......................................................................................................20

*Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998) .................................................................................................9

*Laborers Local 17 Health & Benefit Fund v. Phillip Morris Inc.*, 191 F.3d 229 (2d Cir. 1999) .......................................................................................................14

*Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir. 1973) ...............................................17

*Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) ..............................................9

*Lerner v. Fleet Bank, NA*, 318 F.3d 113 (2d Cir.), *cert. denied*, 531 U.S. 820 (2003) ...............................................................................................14, 15

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)..............................................................22

*Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993).................................................................14

*Mayes v. UVI Holdings, Inc.*, 723 N.Y.S.2d 151 (App. Div. 2001)...........................................24

*Nat'l Westminster Bank USA v. Weksel*, 511 N.Y.S.2d 626 (App. Div. 1987)............................24

*Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203 (S.D.N.Y. 1998).........................................9

*Overseas Private Inv. Corp. (OPIC) v. Industria de Pesca, N.A.*, 920 F. Supp. 207 (D.D.C. 1996)...........................................................................................................18

*Perfurmer's Workshop, Ltd. v. Roure Bertrand du Pont, Inc*, 737 F. Supp 785 (S.D.N.Y. 1990)......................................................................................7

*Estate of Rodriguez v. Drummond Co.*, 256 F. Supp. 2d 1250 (N.D. Ala. 2003)........................22

*Schenck v. Walt Disney Co.*, 742 F. Supp. 838 (S.D.N.Y. 1990).............................................10

iv

*Schenker v. Assicurazioni Generali S.p.A., Consol.*, 98 Civ. 9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002)............................................................................8

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ........................................22

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003)........................17

*Socialist Workers Party v. Attorney Gen. of the United States*, 375 F. Supp. 318 (S.D.N.Y. 1974) ..........................................................................................................10

*In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d 1484 (8th Cir. 1997).........................................21

*Tasso v. Platinum Guild Int'l*, 94 Civ. 8288, 1997 WL 16066 (S.D.N.Y. Jan. 16, 1997) ..............5

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002) .......................14, 17, 19, 24

*Weiss v. La Suisse*, 69 F. Supp. 2d 449 (S.D.N.Y. 1999) ...............................................................8

*White v. ABCO Eng'g Corp.*, 221 F.3d 293 (2d Cir. 2000) ...........................................................23

## STATUTES & RULES

18 U.S.C. § 2331(1) ........................................................................................................................11

18 U.S.C. § 2333(a)........................................................................................10, 11, 13, 20

28 U.S.C. § 1350.............................................................................................................................21

Pub. L. 102-256, 106 Stat. 73 (*reprinted at* 28 U.S.C. § 1350, note)  .....................................21, 22

N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney 2003)...........................................................24

Fed. R. Civ. P. 4(k)(2)..................................................................................................................6, 7

## MISCELLANEOUS

Dep't of State Public Notice No. 1878, *Determination Sudan,* 58 Fed. Reg. 52,523 (Oct. 8, 1993) ..............................................................................................................12

Dusko Doder, *Soviets Play Up Sadat Disclosure to Assail U.S. for Afghan Strife*, The Washington Post, Sept. 25, 1981 ..............................................................................12

Exec. Order No. 13099, 63 Fed. Reg. 45,167 (Aug. 20, 1998)........................................................2

H.R. Rep. No. 102-367 (1991)......................................................................................................22

v

Clifford Krauss, *Congress May Cut Afghan Rebel Aid*, N.Y. Times, Sept. 30, 1990....................12

*Terrorism First Responders: Hearing before the Subcomm. on Technology, Terrorism and Government Information of the Senate Judiciary Comm.*, Sept. 3, 2003 .....................2

*Terrorism: What you Need to Know About U.S. Sanctions*, U.S. Dep't of the Treasury (Mar. 2, 2004) *available at* http://www.ustreas.gov/offices/eotffc/ sanctions/ t11ter.pdf.........................................................................................................................13

## INTRODUCTION

The Saudi Binladin Group ("SBG") is a defendant in this action solely by virtue of its name.  The successor to the construction company founded by Mohammed Binladin, father of the now-infamous Osama Bin Laden ("OBL"), SBG is now owned and managed by OBL's half-brothers and has no connection to OBL.  Nonetheless, Plaintiffs attempt to tie this respected Saudi company to the terrorist acts of September 11 based on nothing more than SBG's alleged support of the U.S.-sponsored Afghan freedom fighters in the 1980s, SBG's participation in legitimate construction projects in Sudan in the early 1990s, and a salvo of innuendo.  Although Plaintiffs have been grievously injured by OBL's fiendish acts, fundamental fairness requires that SBG not be hauled into this Court on little more than an unavoidable family connection coupled with allegations of remote and insubstantial conduct.  Plaintiffs make no allegations that SBG was involved in, had advance knowledge of, or in any way assisted the September 11 attacks.  Nor do Plaintiffs allege that SBG has ever supported any other terrorist activities, either directly or through an alleged charitable front organization.  Thus, Plaintiffs have utterly failed to state a claim against SBG.  SBG respectfully urges this Court to dismiss the claims against it or alternatively to order a more definite statement of those claims.

## BACKGROUND

SBG, which was founded in 1990, arose out of a construction company, Mohammed Binladin Organization ("MBO"), established by Mohammed Binladin in 1931.  It is one of the largest engineering and construction companies in the Arab world and has completed a significant number of high-profile public works projects in the Middle East.  Although it is a far cry from the "expansive global conglomerate" Plaintiffs claim it to be (Third Amended Consolidated Master Complaint ("Complaint" or "3AC") ¶ 541), SBG has diversified its operations into telecommunications, real estate, and other fields.

1

Following Mohammed Binladin's death in 1967, ownership of the family business eventually passed to his sons.  At one time, the now-notorious OBL was among the family shareholders of SBG, but as Plaintiffs implicitly acknowledge (*see* 3AC ¶ 549), SBG and the family disassociated themselves from OBL in 1993.  OBL was formally removed from SBG's ownership by documents executed in June 1993.  In February 1994, a month before the Saudi government revoked OBL's citizenship, the family and the company publicly ostracized OBL in a statement by Bakr Binladin, SBG's Chairman.[1]  Plaintiffs challenge SBG's complete break from OBL with nothing more than reports that certain family members—"his mother, uncle, and [unspecified] brothers" (3AC ¶ 549)—visited OBL in Sudan a handful of times, and the assertion that ostracizing OBL would be contrary to the "'Islamic structure of the family'" (*id.* ¶ 548).[2]  These allegations provide no grounds to dispute that SBG publicly and completely disassociated itself from OBL well before he was recognized as a terrorist.[3]

Neither SBG nor any individual Binladin (other than OBL) has ever been designated as a suspected terrorist or terrorist supporter.  To the contrary, it has been widely reported that the United States government helped a group of Binladin family members leave the country after September 11, 2001.  A White House aide at the time of the September 11 attacks testified before Congress that the government decided to do that "with complete review at the highest levels of the State Department and the FBI and the White House," and that the list of individuals who were allowed to leave "was reviewed by . . . and signed off by the FBI."  *Terrorism First*

---

[1] Because Plaintiffs themselves acknowledge this break (3AC ¶ 549), these events are important to understanding the context of Plaintiffs' claims against SBG.

[2] Plaintiffs' primary allegations against SBG—that SBG supported the U.S.-sponsored Afghan resistance in the 1980s and engaged in legitimate construction projects in Sudan (purportedly with OBL) in the early 1990s—all occurred prior to OBL's repudiation by the company and the family.

[3] The U.S. first placed OBL on its list of designated terrorist individuals and organizations on August 20, 1998.  *See* Exec. Order No. 13099, 63 Fed. Reg. 45,167 (Aug. 20, 1998).

*Responders: Hearing Before the Subcomm. on Technology, Terrorism and Government Information of the Senate Judiciary Comm.*, Sept. 3, 2003 (Statement of Richard Clarke, Senior Advisor to the Council on Foreign Relations).  Moreover, SBG has a clear and consistent record of cooperation with the U.S. government.  SBG provided construction and telecommunications assistance to the U.S. military during the first Gulf War, for which it was commended by the U.S. Central Command, and participated in the construction of the King Abdul Aziz Air Base from which U.S. forces operated.  After the September 11 attacks, which SBG vigorously condemned, SBG received expressions of support from the governments of the United States and Britain.[4]

## PLAINTIFFS' ALLEGATIONS

For purposes of ruling on a motion to dismiss, the well-pleaded allegations contained in the Complaint must be accepted as true.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).[5]  "[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations," however, and thus "will not suffice to defeat a motion to dismiss." *Highlands Inc. Co. v. PRG Brokerage, Inc.*, 01 Civ. 2272, ____ F. Supp. 2d ____, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004).  Where, as here, the "mere assertion" of a claim "has almost inevitable stigmatizing effect," courts should "flush out" frivolous and unsupported allegations "at an early stage." *Ideal Steel Supply Corp. v. Anza*, 254 F. Supp. 2d 464, 467 (S.D.N.Y. 2003).  As Judge Robertson observed in a related case, "given the extreme nature of

---

[4] *See* Letter from Richard L. Baltimore, U.S. Consul General in Jeddah, Saudi Arabia (Sept. 30, 2001) (stating that "[t]he Saudi Bin Ladin Group is well and favorably known to the United States Consulate General in Jeddah," and that "the Saudi Bin Ladin Group and senior members of the Bin Ladin family have repeatedly disassociated themselves from Osama Bin Laden and his activities");  Letter from Andrew Henderson, British Consul General in Jeddah, Saudi Arabia (Oct. 9, 2001) (generally same).

[5] Nothing in this brief should be read to concede the truth of the facts asserted.

the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations."
*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003) ("*Burnett I*").

Most of the allegations against SBG relate to its support in the 1980s of Afghan rebels in the U.S.-sponsored resistance to the Soviet occupation of Afghanistan and its involvement in two legitimate construction projects in Sudan in the early 1990s. (*See* 3AC ¶¶ 546-47, 549-53, 608.) For example, while ¶ 547 alleges that "[t]he SAUDI BIN LADEN GROUP provided material support and financing to OSAMA BIN LADEN in Afghanistan," it does so with specific reference to construction equipment provided to the Afghan mujahideen "fighters." Plaintiffs also allege that in the early 1990s SBG participated in building an airport in Port Sudan and a road linking Khartoum to Port Sudan; they further allege that OBL was involved in those projects. (3AC ¶¶ 550-53, 608.) Even Plaintiffs, however, characterize these as "construction projects" and do not tie them to any terrorist activities. (3AC ¶ 549; *see also id.* ¶ 550 (SBG "provided support and contributions *to these public works*" (emphasis added)).) None of this conduct—some of which occurred more than two decades before the September 11 attacks at a time when OBL and the Afghan mujahideen enjoyed affirmative U.S. support—is alleged to have even the most remote connection to any terrorist activities.

Beyond those allegations, the Complaint adds others that are simply a hollow effort to establish guilt by association. With respect to OBL himself, Plaintiffs allege: (a) that SBG employed OBL between 1989 and 1991 (3AC ¶ 548), although they stop short of suggesting that he engaged in any terrorist activities while allegedly working for SBG; (b) that OBL's mother, as well as an uncle and certain unnamed brothers, visited him in Sudan, although they do not allege for what purpose (3AC ¶ 549); and (c) that OBL's name is listed, in some form, in SBG's corporate records (3AC ¶ 558). Plaintiffs also allege vague associations between SBG and two

4

supposed terrorists.  First, they allege that Mohammed Jamal Khalifa was "taken in by a branch" of SBG (MBO) as evidenced by Khalifa's use of MBO's address on a visa application (3AC ¶ 555).  Second, they allege that an unspecified SBG "executive" introduced Yassin al-Kadi, who after September 11 was placed on the U.S. designated-terrorist list, to the chairman of Global Diamond Resources, on whose board Binladin family representatives sit (3AC ¶ 459).[6]

## ARGUMENT

Plaintiffs' Complaint against SBG should be dismissed for two independent reasons. First, as a threshold matter, Plaintiffs have failed to allege a basis to assert personal jurisdiction over SBG.  Second, Plaintiffs' legal claims are fatally flawed, most obviously in their inability to plead any facts that link the conduct they allege on the part of SBG to any act of terrorism, terrorist groups or even any alleged terrorist "front," let alone to the September 11 attacks. Regardless of the liberal pleading standards under the federal rules, the absence of any such link renders Plaintiffs' claims invalid as a matter of law and prohibits them from hauling a respected Saudi business into a U.S. court on the basis of nothing more than its name.

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER SBG

Plaintiffs bear the burden of establishing this Court's personal jurisdiction over foreign defendants and, in SBG's case, they have utterly failed to meet their burden.  To survive a motion to dismiss under Rule 12(b)(2), Plaintiffs must make a *prima facie* showing of the pertinent jurisdictional facts.  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

---

[6] Plaintiffs also allege that Tariq Binladin—a defendant who has not yet been served—was the "general supervisor" of the International Islamic Relief Organization ("IIRO") in the early 1990s, and in that capacity "'work[ed] quietly for the orphans and the immigrants in the Islamic world.'" (3AC ¶¶ 556-57 (quoting "an Arabic publication").)  This allegation is irrelevant as to SBG, however, because, although Tariq Binladin is alleged to be a member of SBG's board (3AC ¶ 545; *see also id.* ¶ 556), there is no suggestion that he was acting at the IIRO in anything other than his personal capacity.  *See Tasso v. Platinum Guild Int'l*, 94 Civ. 8288, 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16, 1997); *Burnett I*, 274 F. Supp. 2d at 109 n.18 (noting that to impose vicarious liability on a company for the acts of its officers, plaintiffs must make allegations that would support an inference that the officer was acting within the scope of his employment).

Cir. 1990); *Corning, Inc. v. Shin Etsu Quartz Prods. Co.*, 00-7931, 2000 U.S. App. LEXIS

31853, at *5 (2d Cir. Dec. 11, 2000).  This "prima facie showing must be factually supported"

because mere "conclusory allegations are not enough to establish personal jurisdiction."  *E-Z*

*Bowz, L.L.C. v. Prof'l Prod. Research Co.*, 00 Civ. 8670, 2003 U.S. Dist. LEXIS 15256, at *12

(S.D.N.Y. Sept. 5, 2003) (internal quotation and citation omitted).  Moreover, "[g]reat care and

reserve should be exercised when extending our notions of personal jurisdiction into the

international field." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 115 (1987) (internal

citation and quotation omitted); *see also Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 489 n.3

(S.D.N.Y. 1987).  Personal jurisdiction over SBG simply does not exist.

### A.    Plaintiffs Have Failed to Allege Minimum Contacts With the United States

Plaintiffs allege no specific basis for personal jurisdiction (*see* 3AC ¶¶ 2-4),[7] but likely

will rely on Federal Rule of Civil Procedure 4(k)(2).  Under Rule 4(k)(2), "a defendant sued

under federal law may be subject to jurisdiction based on its contacts with the United States as a

whole, when the defendant is not subject to personal jurisdiction in any state . . . so long as the

exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment."

*Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003).  Here, Rule 4(k)(2) fails to

provide personal jurisdiction over SBG because Plaintiffs have not stated "a *prima facie* case"

that SBG's "total contacts with the United States as a whole" are "sufficient to confer the court

with personal jurisdiction without offending due process."  *Core-Tek Prods., Inc. v. Air & Sea*

*Transp. SRL*, 98 Civ. 8270, 1999 U.S. Dist. LEXIS 11537, at *3-4 (S.D.N.Y. July 29, 1999)

(quoting Fed. R. Civ. P. 4(k)(2)).

---

[7]  Plaintiffs do not cite the New York long-arm statute as a basis for personal jurisdiction, nor can they rely on it because they make absolutely no suggestion that SBG has any contacts with New York.

Courts applying Rule 4(k)(2) have "engaged in the traditional minimum contacts analysis based on an aggregation of the defendant's [nationwide] contacts." *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 439 (S.D.N.Y. 1996); *see also Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998).  So deficient are Plaintiffs' allegations, however, that the Complaint is devoid of virtually any contacts between SBG and the United States.  Plaintiffs allege no facts to suggest that SBG is now or has ever been "doing business" in the United States.  The only allegation pertaining to SBG's contact with the United States reads in full: "Until recently, the Saudi Binladin Group had an address in Rockville, Maryland."  (3AC ¶ 545.) With this lone allegation, Plaintiffs cannot seriously contend that they have made a sufficient showing that SBG maintains the "substantial, continuous and systematic" contacts with the United States necessary to support general personal jurisdiction under Rule 4(k)(2). *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("We emphasize that a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2).").

Moreover, even if the mere existence of a *former* address in Rockville, Maryland could be considered "substantial, continuous and systematic" contact, it is irrelevant to jurisdiction over SBG for two reasons.  First, the address in question was not an office of SBG, but instead was the headquarters of a separately incorporated Maryland company, SBG (USA).  *See* Articles of Incorporation (June 16, 1993), attached as Ex. 1.[8]  During its existence, SBG (USA) was a wholly owned subsidiary of SBG.  Courts generally will not disregard the presumption of

---

[8] The court may properly consider matters outside the pleadings without converting SBG's 12(b)(2) motion for lack of personal jurisdiction into a motion for summary judgment. *See Perfumer's Workshop, Ltd. v. Roure Bertrand du Pont, Inc.*, 737 F. Supp. 785, 786 n.2 (S.D.N.Y. 1990).  "The language of Rule 12, on conversion of motions, is very express in limiting its application to 12(b)(6) motions." *Atwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1161 (5th Cir. 1979).

corporate independence and ascribe a subsidiary's contacts to a foreign parent company.  *See Giar v. Centea*, 02 Civ. 7916, 2003 U.S. Dist. LEXIS 6383, at *6 (S.D.N.Y. Apr. 16, 2003) ("Except in exceptional circumstances not present here, the law respects separate corporate identities even where one corporation may wholly own another . . ."), *aff'd*, 03-7546, 2004 U.S. App. LEXIS 1451 (2d Cir. Jan 29, 2004) (internal quotation omitted); *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 459 (S.D.N.Y. 1999) (granting dismissal of parent corporation for want of jurisdictional allegations other than ownership of local subsidiary).  Therefore, the former presence of SBG (USA) is not relevant to the analysis of SBG's contacts with the United States.

Second, even if SBG (USA)'s activities were relevant to jurisdiction over SBG, Plaintiffs have expressly conceded that SBG (USA) did not exist at the time Plaintiffs filed their Complaint.  (3AC ¶ 545.)[9]  In fact, SBG (USA) was formally dissolved in 1999.  *See* Articles of Dissolution (Dec. 31, 1999), attached as Ex. 2.  It is well established that personal jurisdiction is determined as of the date the complaint is filed.  *See, e.g., Klinghoffer v. S.N.C. Achille Lauro ED Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 52 (2d Cir. 1991) (finding that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed"); *cf. Schenker v. Assicurazioni Generali S.p.A., Consol.*, 98 Civ. 9186, 2002 U.S. Dist. LEXIS 12845, at *13 (S.D.N.Y. July 15, 2002) (declining to exercise personal jurisdiction where there is no connection between a former domestic subsidiary and a parent company at the time the complaint is filed).  Plaintiffs' sole jurisdictional allegation is thus fatally deficient on its face.

---

[9] This allegation appeared for the first time in Plaintiffs' Second Amended Consolidated Complaint, filed August 13, 2003.  (*See* Second Amended Complaint ¶ 335.)  In that version of the Complaint, Plaintiffs likewise conceded that the alleged office was closed.

**B.     Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory**

Unable to establish the necessary minimum contacts, Plaintiffs will likely attempt to persuade this Court that it may exercise personal jurisdiction over SBG under a conspiracy theory of jurisdiction, which is premised on imputing the acts of one conspirator, over whom the court has jurisdiction, to other participants in the conspiracy.  *See Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998).  That attempt is fundamentally flawed.  While New York courts have recognized a limited theory of conspiracy jurisdiction, it is well established that "the bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction."  *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975); *see also Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) ("Conclusory allegations are insufficient to meet the somewhat stringent pleading requirements of this Circuit when conspiracy is alleged." (internal quotation and citation omitted)).  "Rather, to establish jurisdiction on a conspiracy theory, a plaintiff must: (1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction."  *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992).  Additionally, "[w]hile the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements."  *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004); *see also Nweke*, 25 F. Supp.2d at 219 ("Allegations of conspiracy must be pleaded with particularity or they will not survive a motion to dismiss.").

Plaintiffs here, by simply peppering the Complaint with the word "conspiracy" while omitting any facts supporting an inference that SBG was a co-conspirator in the September 11

attacks, have failed to meet even the low threshold of Rule 8(a).  *See infra* Sec. II(B)(2).

Indeed, the *Gmurzynska* court could have been describing Plaintiffs' allegations against SBG

when it granted the defendants' motion to dismiss because plaintiffs' claim of conspiracy was

based on nothing more than "mere allegations that Defendants knew one another, or had prior

relationships unrelated to the wrongful acts alleged in the Complaint."  257 F. Supp. 2d at 630.

These allegations amount to nothing more than legal conclusions bereft of *any* factual

underpinnings and thus are insufficient to support personal jurisdiction over this alien

defendant.[10]

## II.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A CLAIM AGAINST SBG UNDER THE ANTI-TERRORISM ACT ("ATA")

Plaintiffs have failed to plead an ATA claim against SBG because their Complaint

makes no allegations that SBG in any way funded or otherwise materially supported terrorism of

any kind, let alone the terrorist attacks of September 11, 2001.  *Contrast Boim v. Quranic*

*Literacy Inst. & Holy Land Found.,* 291 F.3d 1000, 1004 (7th Cir. 2002) (permitting ATA claim

where defendant charities allegedly provided funds used by Hamas to purchase vehicle, weapons

and ammunition used in murder of plaintiffs' decedent and to pay stipend to decedent's attacker).

### A.   Plaintiffs Have Failed to Establish Primary Liability Under the ATA

The ATA allows "[a]ny national of the United States injured in his or her person,

property, or business by reason of an act of international terrorism" to assert a claim against

defendants involved in perpetrating that act.  18 U.S.C. § 2333(a).  In the first appellate case

---

[10] Plaintiffs will likely request jurisdictional discovery in an effort to sustain their plainly inadequate jurisdictional showing against SBG.  It is well established that "to be permitted jurisdictional discovery, [a] plaintiff must at least allege facts that would support a colorable claim of jurisdiction."  *Schenck v. Walt Disney Co.*, 742 F. Supp. 838, 840 n.1 (S.D.N.Y. 1990).  Accordingly, "[t]he mere commencement of a lawsuit, without the support of a threshold showing of jurisdictional prerequisites, should not entitle the party to use the court processes to attempt to find support for having commenced the litigation."  *Daval Steel Prod. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989); *see Socialist Workers Party v. Attorney Gen. of the United States*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974) ("A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the

applying the ATA, the Seventh Circuit found that the term "international terrorism," defined in 18 U.S.C. § 2331(1), encompassed knowingly and intentionally providing funds or other material support for terrorist activities. *See Boim*, 291 F.3d at 1011-12; *see also Burnett I*, 274 F. Supp. 2d at 106. To state an actionable claim under § 2333(a), however, plaintiff must have been injured "by reason of" the defendant's conduct. 18 U.S.C. § 2333(a). While Plaintiffs were indisputably injured by reason of the terrorist attacks of September 11, it is also indisputable that SBG did not participate, and is not alleged to have participated, in any way in the attacks themselves. Therefore, Plaintiffs must allege that SBG, with knowledge of and intending to further those violent acts, provided material support to terrorists by reason of which Plaintiffs were injured. Plaintiffs have failed, as a matter of law, to adequately make such an allegation.

1.   *None of the Facts Alleged in the Complaint Support an Inference That SBG Provided Material Support to Terrorism*

SBG's alleged conduct cannot, as a matter of law, constitute material support of terrorism. Under *Boim*, material support must be given to terrorist organizations or to further terrorism. See *Boim*, 291 F.3d at 1016 (finding that "Congress considered the provision of material support to terrorists an act of international terrorism"). Virtually all of the conduct attributed to SBG in the Complaint, however, is entirely unconnected to terrorism, and the remainder cannot be considered "material" or even relevant.

While Plaintiffs allege that SBG "provided material support and financing to [OBL] in Afghanistan," they do so with explicit reference to construction equipment provided "in 1979" (and no later than "1989") to the Afghan mujahideen "fighters," who were not terrorists but who

_____

(continued…)

mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction.") As discussed above, Plaintiffs have alleged no colorable basis for exercising jurisdiction.

in fact enjoyed the support of the U.S. government.[11]  (3AC ¶¶ 546-48.)  Indeed, the U.S.

provided the Afghan mujahideen with approximately $3 billion in aid.  *See* Clifford Krauss,

*Congress May Cut Afghan Rebel Aid*, N.Y. Times, Sept. 30, 1990, sec. 1 at 9.  Similarly,

Plaintiffs claim that SBG was OBL's "sponsor" by providing him "financial assistance and

engineering support in Sudanese construction projects" in approximately 1991—a time when

OBL had not yet committed any terrorist acts and Sudan had not yet been designated a terrorist

sponsor.[12]  (3AC ¶ 548-49; *see id.* ¶¶ 550-53.)  Plaintiffs themselves admit that SBG's

participation (through two subsidiaries) in these "construction projects"—the Port Sudan Airport

and "the Tahaddi road"—"provided support and contributions to . . . *public works*," not

terrorism.  (3AC ¶ 550 (emphasis added).)  And despite their claim that OBL was also involved

in these public works projects, Plaintiffs admit that the construction project was undertaken not

with OBL but through contracts with the Sudanese Government.  (3AC ¶ 551.)  While these

allegations might arguably describe "material support," they cannot be considered support of

terrorism, and certainly not support of the September 11 attacks.  Indeed, these allegations are so

temporally remote from the events of September 11, 2001 as to render them meaningless for

purposes of this case.

    Plaintiffs' remaining allegations also cannot constitute "material support" of terrorism.

First, Plaintiffs allege that Mohammed Jamal Khalifa, whom they claim is a known figure in

international terrorist networks, was "taken in" by SBG's subsidiary, MBO, as evidenced by

Khalifa's use of MBO's address on a visa application.  (3AC ¶ 555.)  This assertion is far too

vague to suggest material support of anything (particularly since Plaintiffs do not allege that

---

[11] *See, e.g.*, Dusko Doder, *Soviets Play Up Sadat Disclosure to Assail U.S. for Afghan Strife*, The Washington Post, Sept. 25, 1981, at A16.

[12] *See* Dep't of State Public Notice No. 1878, *Determination Sudan*, 58 Fed. Reg. 52,523 (Oct. 8, 1993).

SBG assisted Khalifa in obtaining the visa or even knew he had done so).  Similarly, Plaintiffs

allege that OBL worked in SBG's construction business between 1989 and 1991 (3AC ¶ 548),

but fail to allege that SBG did anything to support terrorism by employing OBL.  Indeed,

Plaintiffs do not even allege that OBL was engaged in terrorist activities at that time.  (3AC

¶ 548.)[13]  Plaintiffs also allege several "visit[s]" by Binladin family members to OBL while he

lived in Sudan, but fail to offer even a theory of how these visits implicate SBG or involve the

provision of material support to OBL by the company.  (3AC ¶ 549.)  Finally, Plaintiffs claim

that an unidentified SBG executive introduced Yassin al-Kadi, a "designated terrorist," to Global

Diamond Resources, a company that allowed al-Kadi to "join as an investor" because of

"'representations of the bin Laden family.'"  (3AC ¶ 459.)  Plaintiffs again allege no relationship

between this introduction and any terrorist activities.  Significantly, al-Kadi was not placed on

the U.S. terrorist list until a month after September 11,[14] and Plaintiffs do not claim that SBG

was even aware of his alleged conduct.  Such allegations cannot satisfy the ATA's requirements.

      2.     *Plaintiffs Were Not Injured "By Reason of" SBG's Alleged Conduct*

Even if Plaintiffs had alleged that SBG provided material support to terrorism, their ATA

claim would fail as a matter of law because they have not adequately pleaded causation.  The

ATA, patterned on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), creates a

cause of action only for injuries sustained "by reason of" a defendant's act of international

terrorism.  18 U.S.C. § 2333(a).  This language, like its RICO counterpart, requires proximate

causation.  *See Boim,* 291 F.3d at 1011; *Burnett I*, 274 F. Supp. 2d at 105, 107.  It thus requires

---

[13] Plaintiffs likewise allege that OBL's "name is still listed" in SBG's "corporate records."  (3AC ¶ 558.) Given that OBL did once, like his half-brothers, hold a stake in the company, that allegation is neither surprising nor probative.

[14] *See Terrorism:  What you Need to Know About U.S. Sanctions*, U.S. Dep't of the Treasury, Office of Foreign Assets Control (Mar. 2, 2004), *available at* http://www.ustreas.gov/offices/eotffc/ofac/sanctions/t11ter.pdf. Al-Kadi became a director of Global Diamond on December 31, 1998.  *See* Schedule 13D, *filed with* Securities and Exchange Commission *on behalf of* New Diamond Corp. Ltd. (Jan. 11, 1999).

not only foreseeability but also "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (interpreting RICO's identical "by reason of" language [15]); *see also Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993) ("A central element of proximate cause is a showing of some 'direct relation between the injury asserted and the injurious conduct alleged.'" (quoting *Holmes*, 503 U.S. at 268)).[16]  Indeed, the "direct relationship" causation requirement also finds support in other types of international terrorism cases.  For example, a Foreign Sovereign Immunities Act ("FSIA") claim was recently rejected on causation grounds because, while "plaintiffs ha[d] established that [Defendant] Iran provided extensive support to HAMAS, . . . their proof [did] not link that support to the [relevant] murders specifically."  *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).  That court likewise rejected an Alien Tort Claims Act ("ATCA") claim because "[t]he asserted links between [defendant] and the acts committed by armed Islamic groups against civilians [were] much too tenuous" as plaintiffs had failed to "directly link[]" defendant to the injurious acts.  *Doe v. Islamic Salvation Front,* 257 F. Supp. 2d 115, 121, 123 (D.D.C. 2003).

It is appropriate for the Court to decide this causation issue upon SBG's motion to dismiss.  Under the ATA, as under RICO, the "by reason of" requirement is not just an element of the *prima facie* case but is rather an element of standing, specifically limiting a plaintiff's ability to maintain a claim.  *See Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 n.6 (4th Cir.

---

[15] *Holmes* construed this RICO language consistent with the settled interpretation of identical language in the Clayton and Sherman Acts.  *Holmes,* 503 U.S. at 267-69.  For the same reason, the ATA should be construed with reference to the settled interpretation of the identical language in RICO.  *See Boim*, 291 F.3d at 1011.

[16] "[T]he direct injury test 'is not the sole requirement of proximate causation.'"  *Laborers Local 17 Health & Benefit Fund v. Phillip Morris Inc.*, 191 F.3d 229, 235-36 (2d Cir. 1999) (quoting *Holmes*, 503 U.S. at 269).  The traditional rules of proximate causation also require that "plaintiff's injury was reasonably foreseeable," *id.*; *see also Boim,* 291 F.3d at 1012; *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983), and that the defendant's conduct was a "a substantial factor in the sequence of responsible causation."  *Lerner v. Fleet Bank, NA*, 318 F.3d 113, 123 (2d Cir.) (internal quotation omitted), *cert. denied,* 531 U.S. 820 (2003).

1996) ("The Supreme Court has explained these injury and causation requirements as aspects of standing, rather than elements of the civil RICO plaintiff's prima facie case." (quotations and citations omitted)); *Burnett I*, 274 F. Supp. 2d at 100 (this language "has been construed as conferring standing, without which a plaintiff may not maintain a RICO claim").  Thus, notwithstanding the permissive standards of notice pleading under the federal rules, the failure to allege facts establishing proximate causation under the ATA—just as under RICO—mandates dismissal.  *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 (2d Cir.) (affirming dismissal and stating: "As plaintiffs cannot show that defendants' alleged [RICO] violations . . . proximately caused their injuries, they lack standing to pursue their RICO claims."), *cert. denied*, 531 U.S. 820 (2003); *Giro v. Banco Espanol de Credito, S.A.*, 208 F.3d 203 (Table), 2000 WL 287694, at *2 (2d Cir. 2000) (same); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (affirming dismissal where "fundamental defect of not adequately alleging proximate cause" prevented plaintiff from showing "an injury . . . 'by reason of' the defendant's action," which is necessary "to have standing under RICO"); *Ideal Steel Supply*, 254 F. Supp. 2d at 468-69 (same); *Bona v. Barasch*, 01 Civ. 2289, 2003 WL 1395932, at *24 (S.D.N.Y. Mar. 20, 2003) (dismissing for lack of "standing to bring a RICO suit" where plaintiffs pleaded no "direct connection between the injury asserted and the injurious conduct alleged" (internal quotations omitted)); *Greenwald v. Hall*, 01 Civ. 5405, 2003 WL 164279, at *1 (S.D.N.Y. Jan. 23, 2003) (same).

Here, as in those cases, Plaintiffs fail to allege the necessary direct causal link between SBG's alleged conduct and Plaintiffs' injuries.  Plaintiffs' vague and conclusory assertions that the acts of *all* "Defendants" "caused substantial injuries" to Plaintiffs and their decedents (3AC ¶ 610), or that Plaintiffs and their decedents "suffered substantial injuries to their persons,

15

property, and business by reason of the acts of international terrorism perpetrated by defendants on September 11, 2001" (3AC ¶ 609), are simply insufficient.  *See First Nationwide Bank*, 27 F.3d at 771 ("the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted" (internal quotations omitted)); *Ideal Steel Supply*, 254 F. Supp. 2d at 467 (same).

More importantly, as already discussed above in Sec. II(A)(1), the specific allegations made against SBG fail to indicate any link, much less a direct one, between its alleged conduct and the September 11 attacks that injured Plaintiffs.  The bulk of the allegations against SBG focus on its alleged support of U.S.-sponsored Afghan rebels in the 1980s and its alleged involvement in public works projects in Sudan in the very early 1990s.  (*See* 3AC ¶¶ 546-54, 608.)  These allegations fail even to allege wrongdoing and—having occurred as many as twenty years prior to September 11, 2001—lack any connection at all to those fiendish attacks.  They are therefore inadequate to allege proximate cause.  *See Giro*, 2000 WL 287694, at *2 (proximate cause requires, in part, a showing "that the distance in time and space between the wrong and the harm alleged was not too great").  Nothing in the Complaint links the September 11 attacks to SBG's other alleged conduct either.  As already explained above, the allegations regarding Khalifa (3AC ¶ 555), al-Kadi (3AC ¶ 459), and isolated and distant contacts to OBL (3AC ¶¶ 548-49, 558) have no alleged connection with terrorist acts of any kind, let alone the September 11 attacks.  Therefore, the Complaint fails to adequately allege the requisite proximate causation and should be dismissed.

### B.    Plaintiffs Cannot State an ATA Claim Based on a Joint Tort Theory

Absent allegations to establish any material support for terrorism, Plaintiffs are left to rely on the joint tort theories of aiding and abetting or conspiracy.  Plaintiffs' allegations do not state a claim against SBG under either theory.

    1.    *Plaintiffs Have Failed to Adequately Allege an Aiding and Abetting Claim Against SBG*

Plaintiffs' attempt to state a claim for aiding and abetting fails on the key element of "substantial assistance" to the underlying tort.[17]  This element requires Plaintiffs to demonstrate that a defendant's alleged conduct substantially assisted the particular act that injured Plaintiffs: the September 11 attacks.  *See Burnett I*, 274 F. Supp. 2d at 104-05 (denying motion to dismiss of Al Haramain International Foundation ("AHIF") because allegation that AHIF financed al Qaeda in 2001 supports inference that financing "helped pay for the September 11 attacks"); *see also Ungar*, 211 F. Supp. 2d at 99 (plaintiffs must show "that the [defendant's] 'knowing and substantial assistance' . . . extended to the 'principal violation'—the attack on the [plaintiffs]" to establish aiding and abetting liability); *Boim*, 291 F.3d at 1020-21 (citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).  Moreover, Plaintiffs must plead specific facts to demonstrate substantial assistance in order to avoid dismissal at the pleading stage.  *See, e.g.*, *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (affirming dismissal of aiding and abetting claim for lack of allegations that defendant purposefully assisted in the accomplishment of alleged illegal scheme); *Landy v. Fed. Deposit Ins. Corp.,* 486 F.2d 139, 163 (3d Cir. 1973) (dismissing aiding and abetting claim because complaint failed to allege substantial assistance to underlying tort).

Thus, even under the most liberal pleading rules, Plaintiffs cannot state an aiding and abetting claim simply by repeating the general, conclusory allegation that the defendants as a group "aided and abetted . . . the September 11th terror attacks."  (3AC ¶ 24.)  And Plaintiffs'

---

[17]  Plaintiffs' aiding and abetting claim also fails because they have alleged no facts that support an inference that SBG acted knowingly, *see infra* Sec. II(C), or that suggest SBG's alleged conduct was the proximate cause of the Plaintiffs' injuries, *see supra* Sec. II(A)(2).  Proximate cause is no less required under Plaintiffs' joint tort theories than for a primary violation of the ATA.  *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 226-27 (S.D.N.Y. 2003) (reading *Boim* to require proximate cause for aiding and abetting claim).

allegations as to SBG provide no inference that it substantially assisted and thereby aided and abetted any terrorist activities, much less the horrible events of September 11.  *See supra* Sec. II(A)(1) & (2).

SBG's alleged support of the U.S.-backed mujahideen in Afghanistan and its involvement in construction of public works in Sudan occurred nearly a decade or more before the September 11 attacks and on their face are unconnected to terrorism.  *Cf. Burnett I*, 274 F. Supp. 2d at 105 (finding sufficient allegations of substantial assistance where Complaint alleged funding of al Qaeda in 2001—"a temporal allegation that does not prove but provides support for an inference that Al-Haramain's money helped pay for the September 11 attacks.").  Nor can the allegation that Khalifa listed the address of an SBG affiliate on a visa application or the alleged introduction of Al-Kadi to the chairman of Global Diamond Resources sustain a finding of substantial assistance.  Plaintiffs do not connect either alleged act to any terrorist activities and, as regards Khalifa, the allegation does not even involve any affirmative conduct by SBG.  *See Overseas Private Inv. Corp. (OPIC) v. Industria de Pesca, N.A.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (dismissing aiding and abetting claim where plaintiffs failed to allege affirmative conduct by defendants in aid of the underlying tort).  Allegations regarding purported Binladin family visits to OBL in Sudan and his alleged employment at SBG from 1989-1991 also fall far short of pleading substantial assistance to the September 11 attacks.  The alleged visits to Sudan must have taken place prior to OBL's departure from that country in 1996, and the alleged employment at least five years before that.  Even beyond the temporal remoteness of these alleged visits and employment, Plaintiffs offer no explanation as to why it should be inferred that they involved support of terrorist activities.  Here, again, Plaintiffs seek to capitalize on nothing more than SBG's family name.  Yet even were any of these visits attributed to SBG—which the

Complaint does not do—courts have warned against confusing the normal activities of a family member with assistance rising to a level sufficient to find joint liability.  *See Halberstam*, 705 F.2d at 484, 488.  Without any allegations of tangible assistance to OBL's or al Qaeda's terrorist activities, much less the September 11 attacks, Plaintiffs cannot—even at the pleading stage—maintain a claim that SBG aided and abetted those attacks.

> 2.   *Plaintiffs Have Not Adequately Alleged That SBG Participated in a Terrorist Conspiracy*

Plaintiffs' Complaint also fails to allege that SBG participated in a conspiracy to commit or support any act of international terrorism, much less those of September 11.  Conspiracy liability turns on the existence of an agreement.  *See Cofacredit, S. A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999) ("[t]o prove a conspiracy, a plaintiff must show a corrupt agreement"); *Halberstam,* 705 F.2d at 479 ("the essence of conspiracy is an agreement" (internal quotations omitted)).  An agreement may sometimes be inferred from circumstantial evidence, but conspiracy requires at a minimum "a common and unlawful plan whose goals are known to all members, even if all parties are not privy to each individual act taken in furtherance of the common objective."  *Ungar,* 211 F. Supp. 2d at 100 (internal quotations and citation omitted).  Such claims may not rest on bare legal conclusions or inferences unsupported by the facts in the complaint.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (holding that "complaints containing only conclusory, vague, or general allegations . . . are insufficient unless amplified by specific instances of misconduct.") (citation omitted).  Moreover, where, as here, the defendant is neither alleged to have been present at the commission of the underlying tort nor to have committed any similar act, "a more extensive set of inferences to link the actors together" is required.  *Halberstam*, 705 F.2d at 481.  The court

must look to, among other things, "the proximity in time and place of the acts, and the duration of the actor's joint activity." *Id.*

The allegations against SBG utterly lack factual support and represent only the most general and conclusory of charges, none of which are sufficient to tie SBG to Plaintiffs' alleged "world-wide terror conspiracy." (*See* 3AC ¶ 24.) No allegations in the Complaint allege any agreement or even any contact between SBG and the September 11 terrorists. There is no allegation that SBG knowingly supported al Qaeda, especially after OBL began to target the United States, nor is there any allegation that SBG did anything to further al Qaeda's interests.[18] SBG's alleged affirmative conduct occurred a decade or more before the attacks, and Plaintiffs' vague allegations that certain Binladin family members may have made contact with OBL a handful of times between 1991 and 1996 bear no connection to any terrorist activities. *See supra* Sec. II(A)(1) & (2). Therefore, Plaintiffs' allegations cannot support so much as an inference of agreement, or even a shared goal or plan, between SBG and *anyone* to engage in *any* terrorist acts, much less the September 11 attacks.

### C.    Plaintiffs Fail to Allege That SBG Acted Knowingly in Support of the September 11 Terrorists, OBL, or Al Qaeda.

To establish liability under § 2333(a) for providing material support to terrorists or for aiding and abetting, Plaintiffs must also show that the defendant's support or assistance was knowing and intentional. *See Boim*, 291 F.3d at 1011-12. Similarly, to be liable for aiding and abetting, the defendant must have had actual knowledge of the underlying tortious activity. *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (noting that under New York common law actual knowledge is required), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *see also*

---

[18] The absence of such allegations critically distinguishes Plaintiffs' conspiracy claim against SBG from the conspiracy claim alleged against Al-Haramain that the *Burnett* court found sufficient under Rule 12(b)(6). *See Burnett I*, 274 F. Supp. 2d at 104.

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, 02 Civ. 2900, 2002 WL 31819217, at *6 (S.D.N.Y. Dec. 16, 2002) (noting that on claim of aiding and abetting, allegations that defendant "recklessly disregarded" or "should have known" of the wrongdoing cannot withstand a motion to dismiss).  Where the alleged evidence of substantial assistance is weak, a stronger showing of knowledge is required.  *See In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir. 1997).

Because SBG's alleged conduct is so remote from the September 11 attacks in time and location, the Plaintiffs' obligation to allege some facts from which knowledge can be inferred is heightened.  Yet, Plaintiffs have offered no facts from which it can be inferred that SBG had any conception of OBL's unlawful intentions at the time it engaged in any of its alleged conduct.  Indeed, SBG's alleged conduct occurred well before OBL or al Qaeda were a known threat.  Finally, Plaintiffs allege virtually no facts post-dating the family's well-publicized break with OBL in 1993, and certainly no facts connecting SBG with any terrorist activities.  *See supra* Sec. II(A)(1) & (2).  Accordingly, Plaintiffs' allegations cannot give rise to any reasonable inference that SBG knew of OBL's intention to attack the United States at the time it supposedly engaged in the conduct alleged in the Complaint.

## III.   PLAINTIFFS HAVE NOT ADEQUATELY PLEADED A VIOLATION OF THE TORTURE VICTIM PROTECTION ACT ("TVPA")

The Complaint also fails to state a claim against SBG under the TVPA, Pub. L. 102-256, 106 Stat. 73 (*reprinted at* 28 U.S.C. § 1350, note).[19]  The TVPA allows a claim only against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation

---

[19] While Plaintiffs mention the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, they only assert a claim under the TVPA.  (*See* 3AC ¶¶ 611-14 ("Count Five[:] Torture Victim Protection Act").)  SBG reserves its right to contest any claim under the ATCA that Plaintiffs may attempt to assert at a later date.

. . . subjects an individual to torture . . . or . . . extrajudicial killing . . . ." 28 U.S.C. § 1350, note § 2(a).  Plaintiffs' TVPA claim fails as a matter of law to meet these express requirements.

### A.      The TVPA Does Not Apply To Corporations Like SBG

As other courts have found, the TVPA "clearly applies only to 'individuals,'" which means "natural persons, not corporations."  *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 382 (E.D. La. 1997), *aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999); *see also Friedman v. Bayer Corp.*, 99 Civ. 3675, 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999) (holding that the TVPA "appl[ies] to individual defendants but not to corporations").[20]  Because SBG is not an individual, Plaintiffs cannot maintain a TVPA claim against SBG.

### B.      The TVPA's State Action Requirement Is Not Satisfied Here

Plaintiffs' TVPA claim likewise fails because they have made no allegations that SBG subjected any individual to "torture" or "extrajudicial killing," much less that it did so while acting under "actual or apparent authority, or color of law of a[] foreign nation," as the statute expressly requires.  28 U.S.C. § 1350, note § 2(a).[21]  State action exists when a private defendant acts "together with state officials or with significant state aid."  *See Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). However, "[a] [p]laintiff cannot simply rely on conclusory allegations of joint action that are inadequate to create sufficient state action."  *Aldana v. Fresh Del Monte Produce, Inc.*, 01 Civ. 3399, 2003 U.S. Dist. LEXIS 24343, at *55 (S.D. Fla. Dec. 12, 2003).

---

[20] *But see Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358-59 (S.D. Fla. 2003); *Estate of Rodriguez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1266-67 (N.D. Ala. 2003).

[21] Legislative history confirms that this language was intended to "'make[] clear that the plaintiff must establish some governmental involvement in the torture or killing to prove a claim' and that the statute 'does not attempt to deal with torture or killing by purely private groups.'" *Kadic v. Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995) (citing H.R. Rep. No. 102-367 at 5 (1991)).

Only two allegations relating to SBG make any reference to cooperation with foreign states at all.  First, Plaintiffs allege that "[f]or several years, [SBG] was the official and exclusive contractor of the holy sites of Mecca and Medina."  (3AC ¶ 544.)  Although this implies a connection to the Saudi government, it states no alleged or actual relationship to any terrorist funding or activities, and certainly no connection to torture or murder of any kind.  Second, Plaintiffs allege that an SBG subsidiary entered into a contract with the government of Sudan to build an airport in Port Sudan.  (3AC ¶¶ 549-52.)  Again, this has no alleged or actual connection to any acts for which the TVPA creates liability.  Although Plaintiffs allege that OBL was in Sudan at the time and was also involved in the airport project in some way, Plaintiffs allege no link between that construction project and *any* terrorist act.  This isolated and legitimate construction project completed more than a decade ago simply cannot, no matter how liberal the pleading standard, support an inference that SBG committed or even supported the September 11 attacks, much less that it did so while acting under the authority of a foreign state.  The TVPA claim against SBG therefore must be dismissed.

## IV.   PLAINTIFFS' STATE LAW CLAIMS ALSO FAIL

Plaintiffs have pleaded state law claims for intentional torts under theories of wrongful death (Count 1) and assault and battery (Count 3).  In addition to the defects already set forth above with respect to proximate cause, conspiracy, and aiding and abetting, these claims suffer from other fatal defects.[22]  Both theories of recovery fail as a matter of law.[23]

---

[22] For the purposes of this motion, SBG has relied on New York common law.  Because two of the crashes occurred in New York and the overwhelming majority of victims died in New York, the substantive law of that state likely will apply to the vast majority of state law claims before this Court.  *See White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000).

[23] In addition to the state law claims discussed below, Plaintiffs also assert claims for "survival" (Count 2) and punitive (Count 7) and property (Count 8) damages.  These claims are derivative and depend on wrongful conduct; they cannot stand on their own.  *See, e.g.*, *Corcoran v. New York Power Auth.*, 935 F. Supp. 376, 390 (S.D.N.Y. 1996) ("Since [a] survival action, after all, is essentially a decedent's personal injury lawsuit, this cause of action is dependent on the viability of [other] causes of action." (internal citation omitted)); *Blouin v. Spitzer*, 213 F. Supp. 2d 184, 196-97 (N.D.N.Y. 2002) (listing negligence, battery, unlawful practice of medicine, and intentional

It cannot be argued, and we do not understand Plaintiffs even to claim, that SBG committed a wrongful act that directly caused Plaintiffs or their decedents to be in fear of imminent harmful or offensive contact, or that SBG physically caused any such contact or any of the victims' deaths.  While the September 11 attacks themselves would certainly satisfy these elements of the causes of action against their perpetrators, Plaintiffs do not allege that SBG was in any way involved in the planning or execution of those attacks.  Absent such an allegation, SBG cannot be directly liable for either wrongful death or assault and battery.  *See* N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney 2003); *Chong v. New York City Transit Auth.*, 441 N.Y.S.2d 24, 25-26 (App. Div. 1981)); *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001).  Additionally, Plaintiffs' theory of *indirect* involvement in the September 11 attacks, through financing and other support, cannot as a matter of law sustain a claim for wrongful death.  Even if those allegations were true, New York law does not support a wrongful death claim against those who simply created the conditions that allowed others to perpetrate heinous crimes.  *See Jantzen v. Leslie Edelman of N.Y., Inc.*, 614 N.Y.S.2d 744, 745 (App. Div. 1994) (rejecting wrongful death claim against defendant for selling a gun that was later used to kill plaintiff's decedent).

Therefore, any liability for wrongful death or assault and battery must ultimately rest on a joint tort theory—either conspiracy or aiding and abetting.  *Cf. Ungar*, 211 F. Supp. 2d at 99-100.  Those theories fail as a matter of law for the reasons set forth above.  *See supra* Sec. II(B); *see also Nat'l Westminster Bank USA v. Weksel*, 511 N.Y.S.2d 626, 629 (App. Div. 1987)

---

(continued…)

and/or reckless infliction of emotional and mental distress and anguish as "plaintiff's survival actions"), *aff'd*, 356 F.3d 348 (2d Cir. 2004); *Mayes v. UVI Holdings, Inc.*, 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages") (internal quotation omitted).  Because these claims are based on the same alleged predicate acts as Plaintiffs' other claims, and share the same infirmities—most notably the utter lack of any alleged causal connection between SBG's purported conduct and the September 11, 2001 attacks—they too fail.

(noting that neither conspiracy nor aiding and abetting liability is sustainable where there is no allegation that defendant knew of or intended to aid in the commission of the tort).  Accordingly, Plaintiffs' state law claims must also be dismissed.

### CONCLUSION

For the foregoing reasons, Plaintiffs' claims against SBG should be dismissed or, in the alternative, SBG's motion for a more definite statement should be granted.

Dated: March 19, 2004

Respectfully submitted,

/s/ E. Michael Bradley

E. Michael Bradley (EB-7822)
Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (202) 755-7306

Stephen J. Brogan[24]
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Melissa D. Stear
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Defendant SBG*

---

[24]All counsel from Jones Day's Washington office have been admitted Pro Hac Vice.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of March, 2004, I caused a true and correct copy of the Memorandum of Law in Support of Defendant Saudi Binladin Group's Motion to Dismiss the Complaint or in the Alternative for More Definite Statement to be served: (1) by the Court's Electronic Case Filing System upon all parties scheduled for electronic notice; and (2) by Federal Express upon all parties designated for hard-copy service by the Court's Electronic Filing System.

Dated:  March 19, 2004

/s/ E. Michael Bradley
_____
E. Michael Bradley (EB-7822)

WAI-2100448v3