UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) |
| THOMAS BURNETT et al., Plaintiffs, | |
| v. | 03 CV 9849 (RCC) |
| AL BARAKA INVESTMENT DEVELOPMENT CORP. et al., Defendants. | |

**REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK
IN SUPPORT OF ITS MOTION TO DISMISS**

Dated: March 19, 2004
Washington, D.C.

Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
Ugo Colella (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant
The National Commercial Bank*

## Table of Contents

Argument ....................................................................................................................................................... 1

    I.      NCB is Immune from Suit Under the Foreign Sovereign Immunities Act ................... 2

    II.     Plaintiffs Claims Against NCB are Not Justiciable .............................................................. 5

    III.    This Court Lacks Personal Jurisdiction Over NCB ............................................................ 6

    IV.    Plaintiffs Fail to State a Claim Against NCB ........................................................................ 9

Conclusion ................................................................................................................................................. 10

## Table of Authorities

### Cases

*Abrams v. Nationale des Chemins*,
    332 F.3d 173 (2d Cir. 2003) .................................................................................................. 3

*Aktepe v. U.S.*,
    105 F.3d 1400 (11th Cir. 1997) ............................................................................................. 5

*Bank Brussels v. Fiddler*,
    305 F.3d 120 (2d Cir. 2002) ............................................................................................. 7, 8

*Burnett v. Al Baraka*,
    274 F.Supp.2d 86 (D.D.C. 2003) .................................................................................. passim

*Burnett v. Al Baraka*,
    292 F.Supp.2d 9 (D.D.C. 2003) .................................................................................... passim

*Cabiri v. Republic of Ghana*,
    165 F.3d 193 (2d Cir. 1999) .................................................................................................. 4

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................................... 7

*Center Cadillac v. Bank Leumi*,
    808 F. Supp. 213 (S.D.N.Y. 1992) ........................................................................................ 6

*Compagnie Noga v. Russian Fed.*,
    --- F.3d ---, 2004 WL 504604 (2d Cir. Mar. 16, 2004) ...................................................... 3

*Daliberti v. Republic of Iraq*,
    97 F.Supp.2d 38 (D.D.C. 2000) ............................................................................................ 7

*Degulis v. LXR Biotechnology*,
    928 F.Supp. 1301 (S.D.N.Y. 1996) ...................................................................................... 1

*Dole Food Co. v. Patrickson*,
    123 S.Ct. 1655 (2003) ........................................................................................................... 3

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ............................................................................................................... 9

*Helicopteros Nacionales v. Hall*,
    466 U.S. 408 (1984) ............................................................................................................... 9

*Humanitarian Law Project v. Dep't of Justice*,
    352 F.3d 382 (9th Cir. 2003) ................................................................................................. 9

*I.T. Consultants v. Islamic Republic of Pakistan*,
    351 F.3d 1184 (D.C. Cir. 2003) ................................................................................................8

*IMO Indus. v. Kleinert*,
    155 F.3d 254 (3d Cir. 1998) ....................................................................................................7

*In re Magnetic Audiotape Litig.*,
    334 F.3d 204 (2d Cir. 2003) ................................................................................................7, 8

*Insurance Corp. of Ireland v. Compagnie des Bauxites*,
    456 U.S. 694 (1982) ................................................................................................................9

*Leutwyler v. Office of Her Majesty,*
    184 F.Supp.2d 277 (S.D.N.Y. 2001) ......................................................................................2

*Liberian E. Timber v. Republic of Liberia*,
    650 F.Supp. 73 (S.D.N.Y. 1986) ............................................................................................3

*O'Connell Machinery v. M.V. "Americana"*,
    734 F.2d 115 (2d Cir. 1984) ....................................................................................................3

*Padilla v. Rumsfeld*,
    352 F.3d 695 (2d Cir. 2003) ....................................................................................................5

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
    290 F.Supp.2d 54 (D.D.C. 2003) .......................................................................................7, 8

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F.Supp. 325 (E.D.N.Y.) ...................................................................................................7

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    162 F.3d 748 (2d Cir. 1998) ....................................................................................................7

*Reiss v. Societe Centrale*,
    246 F.Supp.2d 273 (S.D.N.Y. 2003) ......................................................................................2

*Singer v. Bell,*
    585 F.Supp. 300 (S.D.N.Y. 1984) ..........................................................................................9

*Sprint Spectrum LP v. Willoth*,
    176 F.3d 630 (2d Cir. 1999) ....................................................................................................4

*Stauffacher v. Bennett,*
    969 F.2d 455 (7th Cir. 1992) ...................................................................................................9

*Tiffany v. U.S.*,
    931 F.2d 271 (4th Cir. 1992) ...................................................................................................5

*Time v. Simpson*,
  2003 WL 23018890 (S.D.N.Y. 2003) ................................................................................8

*U.S. Titan v. Guangzhou*,
  241 F.3d 135 (2d Cir. 2001) ..............................................................................................7

*West v. Multibanco Comermex, S.A.*,
  807 F.2d 820 (9th Cir. 1987) .............................................................................................6

*World Wide Minerals v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ........................................................................................6

*Zappia v. Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000) ..............................................................................................3

*Zschernig v. Miller*,
  389 U.S. 429 (1968) ..........................................................................................................5

## Federal Statutes

18 U.S.C. § 2337(2) ..................................................................................................................5, 10

28 U.S.C.

  § 1407 ...............................................................................................................................7

  § 1605(a)(2) ......................................................................................................................4

  § 1605(a)(5) ...................................................................................................................4, 5

  § 1605(a)(7) ...................................................................................................................4, 5

## Federal Rules of Civil Procedure

Rule 12(b)(1) ................................................................................................................................2

## Treatises

Restatement (Second) of Torts § 432(a) .....................................................................................10

## Miscellaneous

Red Cross donation website, available at
  http://www.redcross.org/donate.donate.html ....................................................................9

John W. Snow, U.S. Treasury Secretary (Jan. 22, 2004), available at
  http://www.ustreas.gov/press/releases/js1108.htm ...........................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) |
| THOMAS BURNETT et al., Plaintiffs, v. AL BARAKA INVESTMENT DEVELOPMENT CORP. et al., Defendants. | 03 CV 9849 (RCC) |

**REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK
IN SUPPORT OF ITS MOTION TO DISMISS**

Before the MDL transfer of this case, Judge Robertson issued two substantive rulings that resolve many issues presented in The National Commercial Bank's ("NCB") motion to dismiss. *See Burnett v. Al Baraka*, 274 F.Supp.2d 86 (D.D.C. 2003) ("*Burnett I*"); *Burnett v. Al Baraka*, 292 F.Supp.2d 9 (D.D.C. 2003) ("*Burnett II*"). Those rulings are law of the case because none of the exceptions to that doctrine applies. *See Degulis v. LXR Biotechnology*, 928 F.Supp. 1301, 1309 (S.D.N.Y. 1996). Even Plaintiffs acknowledge that Judge Robertson's rulings provide the starting point for adjudicating their claims against NCB. Opp. 23-25.[1]

Like the two Saudi Government officials[2] that Judge Robertson dismissed from the case under the Foreign Sovereign Immunities Act ("FSIA"), *see Burnett II*, 292 F.Supp.2d at 16-21, NCB is an instrumentality of the Saudi Government. Under the law of the case doctrine, most of the same FSIA principles that resulted in dismissal of Prince Sultan and Prince Turki apply to NCB, and equally require dismissal of NCB.[3] Despite Plaintiffs' effort to characterize NCB as a private entity, the uncontested facts show that NCB is a Saudi Government instrumentality for both FSIA and

---

1. "Opp." refers to Plaintiffs' Mem. of Law in Opp. to Mot. to Dismiss of Defendant The National Commercial Bank, Dec. 22, 2003, at Dkt. #435.
2. Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan") and Prince Turki Al-Faisal bin Abdulaziz Al-Saud ("Prince Turki").
3. NCB adopts Prince Sultan's law-of-the-case argument. Sultan Br. (Mar. 19, 2004), at 10-13.

1

justiciability purposes.  Alternatively, if viewed (incorrectly) as a private entity, then NCB must be dismissed both based on lack of personal jurisdiction, and because there is, as a matter of law, no causal nexus between the September 11 attacks and NCB's alleged acts.[4]

## I.      NCB is Immune from Suit Under the Foreign Sovereign Immunities Act.

The Third Amended Complaint ("TAC") does not make any allegations that either address NCB's sovereign status, or attempt to support an exception to FSIA immunity.  Nevertheless, as Plaintiffs acknowledge (Opp. 8), a Rule 12(b)(1) motion invoking the FSIA requires that the Court go beyond the pleadings.  *See* MTD, at 33-34; *Reiss v. Societe Centrale*, 246 F.Supp.2d 273, 277 (S.D.N.Y. 2003).  The relevant facts conclusively establish that NCB has FSIA immunity.

**Instrumentality Status**.  Affidavits from Saudi Arabia's Ministry of Finance and Ministry of Foreign Affairs unequivocally demonstrate NCB's status as a Saudi Government instrumentality.  *See* MTD,[5] Exh. 3, Aff. of Abdallah Bin Hamad Al-Wohaibi, ¶¶ 1-12; Supp. Aff. of Abdallah Bin Hamad Al-Wohaibi, ¶¶ 1-12 (Exh. 6 hereto); Decl. of Nizar Bin Obaid Madani, ¶¶ 2, 4 (Exh. 7 hereto).  As summarized by the Saudi Assistant Minister of Foreign Affairs, "[i]t is the position of the Ministry of Foreign Affairs that NCB is a government instrumentality of the Kingdom of Saudi Arabia." Exh. 7, ¶¶ 2, 4.  Statements of foreign government officials about the status of a person or entity under that country's law are entitled to "great weight."  *Leutwyler v. Office of Her Majesty*, 184 F.Supp.2d 277, 287 (S.D.N.Y. 2001).

Plaintiffs oppose FSIA immunity solely on the theory that the Saudi Government only <u>indirectly</u> owns NCB through The Public Investment Fund ("PIF").  Opp. 11-12.  But Saudi Government ownership of NCB is <u>direct</u>—qualifying NCB as a FSIA instrumentality—because the PIF is the Saudi Government itself.  PIF indisputably is just an administrative unit of the Ministry of

---

4.      NCB concurrently is filing a motion to dismiss in *Ashton* (02-CV-6977), and respectfully requests that the Court address NCB's *Burnett* and *Ashton* motions at the same time because, as explained in NCB's February 17, 2004 letter to the Court, the issues in the two cases overlap.  NCB's brief in support of its motion to dismiss *Ashton* is cited herein as "*Ashton* Br."
5.      "MTD" means the brief in support of NCB's motion to dismiss, Oct. 14, 2003, Dkt. #359.

Finance with no separate legal status from the Ministry itself, and its structure and core functions are solely governmental.[6]  *Ashton* Br. 2-8.  Notably, in three other MDL-consolidated actions, plaintiffs concede direct Saudi Government ownership of NCB.[7]

The phrase "specialized credit institution," used to describe the PIF on the Ministry of Finance's website (Opp. 10-16), does not alter the PIF's status as part of the Saudi Government. Exh. 6, ¶¶ 3-4, 6-8.  The "core functions" test endorsed by Plaintiffs (Opp. 12) specifically contemplates that governmental "departments"—even if engaged in commercial activities—are deemed part of the foreign state itself so long as their structure and core functions are governmental (as is the case with the PIF).  *Ashton* Br. 2-8.[8]  Plaintiffs err in contending (Opp. 13) that the PIF's role in protecting and developing the Saudi national economy is not a sovereign function.  *Compagnie Noga v. Russian Fed.*, --- F.3d ---, 2004 WL 504604, at *9 (2d Cir. Mar. 16, 2004) ("[F]inancing…infrastructure improvements" is a "quintessential 'governmental' function."); *Ashton* Br. 5-8 & n.8.  Nor does *Patrickson*, 123 S.Ct. at 1660, undercut NCB's instrumentality status. *Patrickson* addressed foreign government ownership of <u>subsidiary</u> corporations, through government ownership of a corporate <u>parent</u>.  *Ashton* Br. 8.  PIF, however, is not a parent corporation "owned" by the Saudi Government, but rather is fully part of the Saudi Government itself.  Exh. 6, ¶ 11.

Alternatively, NCB retains its instrumentality status because the PIF qualifies as a "political subdivision" of the Saudi Government under Second Circuit law.  *O'Connell Machinery v. M.V. "Americana"*, 734 F.2d 115, 116 (2d Cir. 1984) (entity analogous to the PIF deemed a political subdivision); *Zappia v. Abu Dhabi*, 215 F.3d 247, 249, 250 (2d Cir. 2000) (same); *see Ashton* Br. 8-10.

---

6.  *Dole Food Co. v. Patrickson*, 123 S.Ct. 1655 (2003) confirms that NCB's instrumentality status is determined as of the time Plaintiffs filed suit against NCB—*i.e.*, August 15, 2002.  MTD, at 34-35. The *Patrickson* test is not "dicta," Opp. 11 n.5, but "unequivocal[]."  *See Abrams v. Nationale des Chemins*, 332 F.3d 173, 180 (2d Cir. 2003).
7.  *See Fed. Ins.*, 03-6978, FAC, ¶ 287 ("Since 1999, the Kingdom of Saudi Arabia has owned a controlling interest in [NCB], and operated the bank as an agency, instrumentality and organ of the Kingdom."); *Ashton*, 02-6977, 4AC, ¶ 573; *Salvo*, 03-5071, Cmpl., ¶ 369.
8.  NCB has never characterized the PIF as an "organ" of the Saudi Government (Opp. 12), and the undisputed affidavits show that the PIF is an administrative unit of the Ministry of Finance.

**FSIA Exceptions**.  No FSIA exception defeats NCB's entitlement to immunity.[9]  Judge Robertson held that the gravamen of Plaintiffs' complaint against two Saudi instrumentalities (Prince Sultan and Prince Turki) is that they allegedly "provi[ded] . . . material support or resources" to terrorists, terms found only in the FSIA's state-sponsor of terrorism exception (§ 1605(a)(7)).  *Burnett II*, 292 F.Supp.2d at 20 n.5; *Cabiri v. Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999) (gravamen of the complaint controls).  Plaintiffs' allegations against NCB are the same.  *Compare Burnett II*, 292 F.Supp.2d at 19 *with* Opp. 54-55.  Exception (a)(7) does not eliminate NCB's immunity because Saudi Arabia has not been designated a state-sponsor of terrorism.  *Id.* at 16 n.3.

Plaintiffs rely on FSIA exception (a)(5) (the non-commercial tort exception), Opp. 33 n.24, but there is no support in the language of the FSIA or its legislative history suggesting that (a)(7) and (a)(5) are counterpart exceptions for "overseas" and "domestic" acts of "international terrorism."[10]  MTD, at 16-17 & n.17, 36-37.  In any event, (a)(5) is inapplicable because (i) NCB did not commit a "tortious act or omission"; (ii) Plaintiffs' injuries were not "caused by" NCB's alleged tortious act or omission; (iii) the "entire tort" was not committed within the United States; and, (iv) there is no allegation that tortious acts were committed by NCB agents acting within the scope of their employment.  MTD, at 50-54; *Ashton* Br. 15-18.  Judge Robertson already has addressed the "caused by" requirement, holding that (a)(5) does not provide jurisdiction over claims (like those against NCB) that a sovereign instrumentality funded charities that, in turn, allegedly funded terrorists.  Judge Robertson did not err (Opp. 24-25) in holding that the "caused by" language of (a)(5) imposes a more stringent test than common law proximate cause.  *Ashton* Br. 16-17.  Congress also could not have intended that "caused by" in (a)(5) simply mirror the ATA's causation standard.  Exception

---

9.   Plaintiffs have not challenged NCB's showing (MTD, at 37-39) that the commercial activity exception (§ 1605(a)(2)) does not apply here.
10.   Exceptions (a)(7) and (a)(5) could not be construed as covering similar subjects—state-sponsored terrorism—without running afoul of settled rules of statutory construction, which prohibit courts from interpreting statutes to be duplicative of one another.  *See Sprint Spectrum LP v. Willoth*, 176 F.3d 630, 641 (2d Cir. 1999).

(a)(5) was enacted (1976) <u>sixteen years before</u> the ATA (1992), and the ATA on its face does not even apply to foreign states and their agencies or instrumentalities. *See Padilla v. Rumsfeld*, 352 F.3d 695, 721 (2d Cir. 2003); 18 U.S.C. § 2337(2). Even so, Plaintiffs cannot satisfy a merits-based proximate cause test because they acknowledge that there is no direct link between NCB and the September 11 attacks. Opp. 56, 58.[11]

## II.     Plaintiffs Claims Against NCB are Not Justiciable.

Whatever the TAC's timeframe—before or after Saudi Government ownership of NCB (Opp. 4, 49)—Plaintiffs' claims raise non-justiciable political questions. Allegations that NCB sponsored terrorism when it was owned by the Saudi Government necessarily are allegations that the Saudi Government sponsored terrorism through one of its instrumentalities. Only the Secretary of State can make a finding whether a foreign state sponsored terrorism, 28 U.S.C. § 1605(a)(7), and he has not made such a determination as to Saudi Arabia or its instrumentalities. Unavoidably, any adjudication of whether Saudi Government instrumentalities are responsible for the September 11 attacks (Opp. 32) encroaches on the Secretary of State's sole province to determine whether Saudi Arabia is a state-sponsor of terrorism. *See* MTD, at 7-19. None of the cases Plaintiffs cite to avoid that encroachment (Opp. 28-35) involved, as here, state-sponsorship of terrorism questions that are committed to the Secretary of State. Equally, claims involving private parties can raise non-justiciable political questions.[12] Here, even Plaintiffs' allegations about pre-Government ownership actions by NCB inevitably, and improperly, require the Court to adjudicate whether the Saudi

---

11.     Plaintiffs thus hope to shorten the causal chain by making allegations about NCB's former CEO. Opp. 25-27. But even these conclusory assertions cannot implicate <u>NCB</u> in any wrongdoing. Judge Robertson previously rejected a similar attempt to impute the alleged wrongdoing of a bank's directors or officers to the bank itself, *Burnett I*, 274 F.Supp.2d at 109 n.18, and Plaintiffs do not contest the applicability of that holding here. MTD, at 36 n.30. In any event, those allegations do nothing but recycle the already-rejected "funnel" and "funding-the-funder" theories. Opp. 25-27; *Burnett II*, 292 F.Supp.2d at 20; *Burnett I*, 274 F.Supp.2d at 109.

12.     *See, e.g.*, *Zschernig v. Miller*, 389 U.S. 429, 433-35, 437, 440 (1968) (involving state probate law); *Aktepe v. U.S.*, 105 F.3d 1400, 1403-04 (11th Cir. 1997) (negligence suit by private party held to present non-justiciable political question); *Tiffany v. U.S.*, 931 F.2d 271, 275-78 (4th Cir. 1992) (same).

Government adequately regulated Saudi financial institutions and the mandated charitable-giving process called *zakat*.  Exh. 7, ¶ 7; *compare* Opp. 36-37 *with* MTD, at 20-26.

This lawsuit also substantially interferes with U.S.-Saudi diplomatic and cooperative efforts regarding terrorism financing.  MTD, at 9-10, 23 n.25, 26-29, 31-32.  That U.S.-Saudi cooperation has been expanding, as reflected in the recent joint designation of certain offices of Al-Haramain as foreign terrorist organizations.  *See* www.ustreas.gov/press/releases/js1108.htm.  Plaintiffs inevitably upset the dynamics of that government-to-government cooperation through efforts to litigate whether Saudi Government instrumentalities "bear responsibility for a particular act of international terrorism" (Opp. 32).  Exh. 7, ¶¶ 4, 6, 7; *Ashton* Br. 19-21.

The act of state and international comity doctrines also apply here with considerably greater force than Plaintiffs allow.  Opp. 37-40.  The Saudi Government need not be a named defendant to trigger the act of state doctrine.  *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 828 (9th Cir. 1987).  Plaintiffs' claims against NCB impermissibly seek court findings about the legitimacy and sufficiency of Saudi Government actions ranging from regulation of its its banking system to the oversight of mandatory charitable donations.  MTD, at 20-24, 30-31; Exh. 7, ¶ 7.  Nor is the doctrine of international comity limited to decisions by a "foreign tribunal[]."  Opp. 39.  Instead, "questioning" the "policies" of a foreign state is prohibited under the doctrine, *World Wide Minerals v. Republic of Kazakhstan*, 296 F.3d 1154, 1165 (D.C. Cir. 2002), and that is precisely what Plaintiffs attempt to do here.  MTD, at 30-31; Exh. 7, ¶¶ 4, 6-7.

### III.   The Court Lacks Personal Jurisdiction over NCB.

Contrary to Plaintiffs' suggestion (Opp. 42), NCB has due process rights, and Plaintiffs have failed to meet their burden of showing that NCB has minimum contacts with the United States.  MTD, at 55-64.  Whatever the state of the law on that issue in the D.C. Circuit (Opp. 41),

controlling Second Circuit law[13] holds that (1) instrumentalities of a foreign state are entitled to constitutional due process, and (2) FSIA subject matter jurisdiction does not establish personal jurisdiction over a government instrumentality unless that entity also has the constitutionally required "minimum contacts" with the relevant forum.  *See U.S. Titan v. Guangzhou*, 241 F.3d 135, 151-52 (2d Cir. 2001).  Plaintiffs' "policy" arguments, based on notions of "reasonableness" (Opp. 41-44), are therefore irrelevant.  *See Bank Brussels v. Fiddler*, 305 F.3d 120, 129 (2d Cir. 2002).

**No Minimum Contacts**.  Plaintiffs' jurisdictional theory (Opp. 44-46) is that the September 11 attacks were foreseeable, but foreseeability of causing injury in another forum is insufficient.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  Judge Robertson previously rejected Plaintiffs' *Calder*-based theory of jurisdiction, which simply recycles Plaintiffs' rejected theory of "funding-the-funders" of terrorism.  *Burnett II*, 292 F.Supp.2d at 22-23.  Nor does *Calder* eliminate the minimum contacts or purposeful availment requirements, as Plaintiffs imply (Opp. 44-46).  *See In re Magnetic Audiotape Litig.*, 334 F.3d 204, 208 (2d Cir. 2003); *IMO Indus. v. Kleinert*, 155 F.3d 254, 264-65 (3d Cir. 1998).

Judge Robertson also rejected Plaintiffs' alternative jurisdictional theory (Opp. 46-48) that allegedly funding-the-funders of international terrorism equates with "deliberately target[ing] Americans."  *Burnett II*, 292 F.Supp.2d at 23-24.  That holding applies equally here because Plaintiffs' allegations against NCB mirror the dismissed allegations against Prince Sultan.  *Compare* TAC ¶ 359 (Prince Sultan) *with* TAC ¶¶ 94-96 (NCB).  Nor do *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F.Supp. 325 (E.D.N.Y.) or *Daliberti v. Republic of Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000), compel a different result because they involved the FSIA's state-sponsor of terrorism exception, which "do[es] not entail any finding of minimum contacts."  *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 761 (2d Cir. 1998).  *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54,

---

13.   Where, as here, cases are transferred for pre-trial proceedings pursuant to § 1407, questions of federal law are governed by the law of the transferee Circuit.  *See Center Cadillac v. Bank Leumi*, 808 F. Supp. 213 (S.D.N.Y. 1992).  Whether NCB has the constitutionally required minimum contacts with the United States presents a question of federal law governed by Second Circuit precedent.

7

59 (D.D.C. 2003), simply is distinguishable on its facts because there the defendants were <u>directly</u> involved in the planning and execution of a terrorist act. Plaintiffs have specifically disavowed any effort to allege such a direct link between NCB and the September 11 attacks. Opp. 56, 58.[14]

**Plaintiffs' Speculative New Theory**. Unable to establish personal jurisdiction over NCB on the facts alleged in the TAC, Plaintiffs instead ask for leave to pursue jurisdictional discovery to pursue a brand new, but entirely speculative, theory. Plaintiffs now hypothesize that NCB may have "participated" in U.S. fundraising activities of the Muslim World League ("MWL"), which Plaintiffs contend was an NCB customer. Opp. 48-50. This speculation emanates from a single fact—an NCB account number appeared in a MWL advertisement in the MWL Journal, which Plaintiffs contend is circulated within the United States. *Id.* at 49, 50. Plaintiffs' speculative theory cannot justify jurisdictional discovery.

Plaintiffs' new theory asserts "specific" not "general" jurisdiction over NCB, Opp. 48, but Plaintiffs do not satisfy the specific jurisdiction test—their claims do not "arise out of" or "relate to" purposeful NCB contacts with the forum, and NCB did not "purposefully avail" itself of the privileges and protections of the United States. *See Bank Brussels*, 305 F.3d at 127. Plaintiffs' claim that NCB provided material support and resources to Osama bin Laden, al Qaeda, or the September 11 hijackers does not "arise out of" or "relate to" the MWL Journal fundraising advertisements (Opp. 49-50), which sought donations to charitable activities called the Khair Funds. Plaintiffs do not allege in the TAC, or argue in their opposition, that MWL successfully raised contributions for the Khair Funds in the United States, that any such contributions were deposited into the advertised NCB account, or—most crucially—that any such contributions were diverted to Osama bin Laden,

---

14. *Pugh* cannot be interpreted to include, as here, alleged remote participants in an act of international terrorism. *See Burnett II*, 292 F.Supp.2d at 23 (rejecting notion that "anyone whose actions have led to terrorist activity in the United states should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States"); *I.T. Consultants v. Islamic Republic of Pakistan*, 351 F.3d 1184, 1191-92 (D.C. Cir. 2003) (purposeful contacts with the forum required); *In re Magnetic Audiotape*, 334 F.3d at 208 (defendant must be "primary participant" in wrongdoing); *Time v. Simpson*, 2003 WL 23018890, at *4-*7 (S.D.N.Y. 2003) (same).

al Qaeda, or the September 11 hijackers. Nor is it inherently wrongful that an NCB account number appeared in the MWL Journal advertisements. *Humanitarian Law Project v. Dep't of Justice*, 352 F.3d 382, 402 (9th Cir. 2003) ("Charitable contributions made to organizations are not 'inherently dangerous'").

Similarly, MWL fundraising advertisements that reference an account number at NCB cannot establish either "purposeful contacts" by NCB with the United States, or that NCB "purposefully availed itself of the privileges and protections" of U.S. law. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) ("unilateral activity" of another insufficient); *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 416-17 (1984) (same). Indeed, the American Red Cross seeks donations to its Morgan Stanley brokerage account, the number and routing information for which are listed in the Red Cross website. http://www.redcross.org/donate/donate.html. Yet no one would seriously contend that Red Cross use of such donations is a jurisdictionally-significant action by Morgan Stanley.

Thus, even if the MWL received U.S.-source donations into an account with NCB, it would not show purposeful contact by NCB with the United States. As the Seventh Circuit noted: "We would not expect anyone to argue that if the First National Bank of Chicago accepts a deposit from a man in Saudi Arabia, this thrusts the bank into the banking business in Saudi Arabia, thus exposing it to suit there by any resident of the kingdom for anything at all, whether or not the plaintiff is the depositor or his claim is related to the deposit." *Stauffacher v. Bennett*, 969 F.2d 455, 458 (7th Cir. 1992). The remedy for Plaintiffs' speculative, and legally insufficient, "account number" theory of jurisdiction is dismissal, not jurisdictional discovery as a consolation prize. *See Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 715 (1982); *Singer v. Bell,* 585 F.Supp. 300, 304 (S.D.N.Y. 1984) (discovery rules "not a hunting license to conjure up a claim that does not exist.").

**IV.    Plaintiffs Fail to a State Claim Against NCB.**

**Proximate Cause**. Plaintiffs do not dispute that an essential element of proximate cause is "cause in fact"—*i.e.*, that the injuries suffered by Plaintiffs would not have occurred in the absence

of NCB's alleged charitable donations.  MTD, at 68-75 & n.58.  The cited section of the Restatement (Opp. 59-60) supports NCB, not the Plaintiffs.  RESTATEMENT (SECOND) OF TORTS § 432(a) (causation established if "each [tortious act] of itself is sufficient to bring about the harm").

**Aiding and Abetting/Conspiracy**.  Plaintiffs acknowledge (Opp. 56-58) that aiding and abetting requires that the defendant "knowingly and substantially assist the principal violation."  MTD, at 68.  Plaintiffs, however, disavow any "direct link" between NCB and the "principal violation"—the September 11 attacks.  Opp. 56, 58.  Nor would proof of NCB charitable donations show the unlawful agreement required for a conspiracy claim (MTD, at 69-70) because charitable contributions are not inherently wrongful.  *See supra* at 8-9.  Plaintiffs allege no facts suggesting that NCB knew that its charitable donations supposedly would be diverted from charitable works to unlawful activities or to designated terrorists.  MTD, at 70.[15]

## Conclusion

For the foregoing reasons, and those stated in NCB's opening memorandum of law, NCB's motion to dismiss should be granted and the claims against it dismissed with prejudice.

Dated: March 19, 2004  
　　　　Washington, D.C.

Respectfully submitted,

/s/ Ronald S. Liebman  
Ronald S. Liebman (admitted *pro hac vice*)  
Mitchell R. Berger (MB-4112)  
Ugo Colella (admitted *pro hac vice*)  
PATTON BOGGS LLP  
2550 M Street, N.W.  
Washington, D.C. 20037  
Phone: 202-457-6000  
Fax:    202-457-6315  
*Attorneys for Defendant The National Commercial Bank*

---

15. NCB adopts Al Rajhi Bank's argument that Plaintiffs fail to state a claim for negligence *per se*. *Burnett* Dkt. #411, at 10-12.  Further, contrary to Plaintiffs' suggestion (Opp. 62 n.41), NCB is immune from ATA liability as a Saudi Government instrumentality for the further reason that 18 U.S.C. § 2337(2) does not require that the instrumentality take its alleged actions in an official capacity.  Finally, Plaintiffs do not dispute that many of their claims are deficient as a matter of law.  *See* MTD, at 36 n.30 (imputation); 62 n.41 (TVPA); 65 n.53 (RICO); 66 (financial conduit); 76-77 (punitive damages).