# Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE: TERRORIST ATTACKS                          03 MDL 1570 (RCC)
ON SEPTEMBER 11, 2001

SUPPLEMENTAL AFFIDAVIT OF ABDALLAH BIN HAMAD AL-WOHAIBI

In the Name of God, the Merciful, the Compassionate, I, Abdallah bin Hamad Al-Wohaibi, state the following:

1.  I am the Director of the Legal Department of the Ministry of Finance ("Ministry of Finance") of the Government of the Kingdom of Saudi Arabia. This affidavit supplements my previous affidavit ("Original Affidavit"), executed on 26/6/1424H, corresponding to August 24, 2003. I submit this supplemental affidavit in further support of the Motion to Dismiss this lawsuit as against The National Commercial Bank ("NCB"), filed on October 14, 2003. I am competent to make this affidavit, which I have prepared and executed in the Arabic language with the understanding that it will be translated into English for submission to a U.S. court.

2.  I understand that Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank ("Opposition") includes a description of the function and status of the Public Investment Fund ("PIF") within the political and governmental structure of the Kingdom of Saudi Arabia. The purpose of this affidavit is to correct statements, which I understand Plaintiffs have made in the Opposition, that are based on incomplete and selective quotations from statements appearing in the Ministry of Finance website (www.mof.gov.sa).

3.  It should be noted that Ministry's website contains an Organizational Chart of the Ministry of Finance (www.mof.gov.sa/e_structure.html), to which the Plaintiffs'

Opposition does not make any reference. It states that: "The organizational chart of the Ministry of Finance is composed of the Minister, to whom the following administrative units report: ... 3. General Secretariat of the Public Investment Fund." *Id.* This statement is entirely consistent with my description of the PIF, in my Original Affidavit, as "an administrative department of the Ministry of Finance" headed by a Secretary General as its chief executive. Original Affidavit ¶¶ 2, 4, 12. As I previously explained, the PIF is not structured or treated as a separate legal entity from the Ministry of Finance. *Id.*, ¶¶ 2-12.

4. As an administrative unit or department of the Ministry, the PIF performs only governmental functions in furtherance of the Ministry's duty to implement the Kingdom's policies concerning development of the Saudi national economy. See www.mof.gov.sa/include.html (under "The Ministry's Duties"). Accordingly, the Ministry of Finance website (which the Opposition, at pages 13-15, quotes only in part) refers to the PIF in the following context:

> **The Ministry's Duties:**
>
> \*   \*   \*
>
> <u>Implement the Kingdom's policy</u> with respect to granting loans to Saudi citizens and businesses in different development areas <u>through</u> the commercial banks and the specialized credit institutions, such as the Saudi Arabian Agricultural Bank, the Saudi Credit Bank, the Saudi Industrial Development Fund, the Real Estate Development Fund, and <u>the Public Investment Fund</u>.

*Id.* The quote above is a literal translation of the English version on the Ministry website. The Arabic version of this portion of the Ministry's website states that the Ministry's duties include: "Implement state policy with respect to the granting of financial loans . . . through banks and funds <u>that are connected to it</u> [the Ministry] namely the Agricultural Bank, the Credit Bank, the Industrial Development Fund, the Real Estate Fund and the Public Investment Fund."

5. Regardless of which translation is used, these references are consistent with PIF's status as an administrative unit or department of the Ministry, and with the fact that the PIF's core function is governmental, not commercial. Like the PIF, each of the other mentioned "specialized credit institutions" (or Ministry-connected funds) also was established by a Royal decree and each implements an aspect of Saudi government policy. See www.mof.gov.sa/e_main_agric.htm (Saudi Agricultural Bank); www.mof.gov.sa/e_main_credit.htm (Saudi Credit Bank); www.mof.gov.sa/e_main_aindust.htm (Saudi Industrial Development Fund); www.mof.gov.sa/e_main_aredst.htm (Saudi Real Estate Development Fund). <u>Like the PIF</u>, the other specialized credit institutions or Ministry-connected funds provides financing in ways that private lenders do not. Those institutions are funded by the Kingdom of Saudi Arabia and they provide long-term, soft or interest free, loans to their intended beneficiaries.

6. As the Ministry's organizational chart makes clear, however, of these specialized credit institutions or Ministry-connected funds, only the PIF is an administrative unit of the Ministry. See www.mof.gov.sa/e_structure.html. Each of the other specialized credit institutions or Ministry-connected funds has its own relationship with the Ministry that would have to be analyzed on its own terms: *e.g.*, Saudi Credit Bank "was established as an independent legal and financial entity, eligible for acquisition, disposal and litigation" (www.mof.gov.sa/e_main_credit.htm); Saudi Industrial Development Fund is "a funding agency affiliated with the Ministry of Finance and National Economy." (www.mof.gov.sa/e_main_aindust.htm). The purpose of my Original Affidavit, and of this one, is to explain the PIF's relationship with the Ministry, namely, that the PIF is an indivisible part of the Ministry itself, and an integral part of the government and political structure of the Kingdom of Saudi Arabia.

7.  As a further example of this, the Ministry of Finance website (in language that the Plaintiffs do not refer to) explains how the PIF was established to further the Ministry's duties to "[i]mplement the Kingdom's policy" on economic development:

> The motive behind the establishment of PIF was to provide financing for certain productive projects that are of a commercial nature and [that] hav[e] a <u>significant importance in developing the national economy, which the private sector lacks as the ability to undertake alone, either because of insufficient experience or inadequate capital or both.</u>

www.mof.gov.sa/e_main_ainves.htm. The PIF makes those investments in order to implement Saudi government policy on development of the national economy. This is confirmed by the following section in the Ministry website (quoted in Plaintiffs' Opposition at page 13):

> PIF's sole function is to finance investments in productive projects of a commercial nature whether they belong to the government and its affiliated industrial lending institutions, <u>or to public enterprises</u>, and whether these projects are undertaken independently or in partnership between the administrative authorities and private institutions.

*Id.* "Public enterprises" refers to Saudi government organizations that have a separate legal personality.

8.  Other portions of the Ministry's website not referred to in the Plaintiffs' Opposition confirm that the PIF's function is governmental, not commercial. The PIF's equity participation in joint stock corporations like NCB is performed "[i]n fulfillment of the Council of Minister's Resolution No. 508." See www.mof.gov.sa/e_main_ainves.htm (at "PIF's Equity Participation in Corporations"). That Resolution (attached to my Original Affidavit as Exhibit C) states that it is imperative that economic and social development be complimentary to each other and requires that attention be given to the equitable distribution of income. See Exh. C, at 2. Thus, "it is desirable that <u>the Government</u> provide investment opportunities in joint stock companies to a large segment of its citizens who

have limited income or limited saving capability ...." *Id.* To implement that objective, "[t]he Government ..., when deemed appropriate, participate[s] in joint stock companies" and the PIF thereafter "assume[s] the responsibility of the management of these shares, <u>representing the government in matters related thereto</u> . . . ," until the shares are eventually sold to Saudi nationals as intended. *Id.* at 2, 3 ; *see also* Original Affidavit, ¶¶ 5, 6. Decisions to have the PIF invest in companies or to sell its share holdings are based on instructions and authorizations from the Kingdom's Council of Ministers. The Ministry of Finance website confirms that PIF's role in such investments is "<u>[o]n behalf of the government</u>" (citing as the example the PIF's participation "in the capital funding of a number of bilateral Arab corporations"). See <u>www.mof.gov.sa/e_main_ainves.htm</u>.

9.      Additionally, the PIF provides financing with terms and for projects that commercial lenders do not. For example, based on the directions of the Deputy President of the Council of Ministers, PIF provided an interest-free loan of approximately SR 2.1 billion to finance the construction of housing for pilgrims in the vicinity of the holy city of Mecca. The housing project was governmental in nature and was not for profit. The Kingdom's Ministry of Pilgrimage is responsible for providing pilgrims who visit holy places within the Kingdom of Saudi Arabia with appropriate facilities. <u>www.saudinf.com/main/c61.htm</u>. Similarly, the Council of Ministers has directed the PIF to support a project currently under consideration that calls for the construction of a railroad to transport phosphate. The Kingdom of Saudi Arabia contains extensive deposits of phosphate rock. Mining the Kingdom's mineral resources is important to increasing the Kingdom's gross domestic product, diversifying its economic base, and achieving balanced economic growth. Constructing a railroad for transporting mined minerals is necessary to achieve these governmental objectives. Accordingly, the PIF is to provide the equity

funding for the railroad project, even though it is not expected to generate a meaningful return to PIF.

10. PIF extends financing for developmental petrochemical and petroleum projects at a fixed rate (LIBOR plus 50 basis points), compared to the variable, risk-based rates of commercial lenders. This fixed interest rate charged by the PIF for loans to such projects (as compared with interest-free loans for infrastructure projects like the housing project described in paragraph 9) was set by the PIF's Board of Directors, which is comprised entirely of government officials. See Original Affidavit, ¶ 4. Finally, PIF loans generally are of a longer maturity than loans made by commercial lenders, reflecting the fact that the projects PIF supports are for the long-term benefit of the Kingdom's national economy.

11. Plaintiffs' Opposition (at page 15) includes the mistake that the PIF "may be owned" by the Kingdom of Saudi Arabia. The Kingdom does not "own" the PIF because the PIF is not a corporate or a commercial entity that is capable of being owned. Rather, the PIF is an administrative department of the Ministry of Finance, and the Kingdom does not "own" the PIF any more than it "owns" the Ministry of Finance, since the Ministry and the PIF, which is part of it, are part of the government of the Kingdom and so the use of the term "ownership" is a wrong characterization in its essence and content.

12. For all of these reasons, and as I explained in my Original Affidavit, the PIF is an integral part of the government and political structure of the Kingdom of Saudi Arabia.


I affirm that the information provided above in this supplemental affidavit is true and correct based on my knowledge, belief, and information. Executed on 24/12/1424H, corresponding to February 15, 2004G in Riyadh, Kingdom of Saudi Arabia.

                                        Abdullah Bin Hamad Al-Wohaibi
                                                      [signature]

Notary Public:

We certify that Abdullah Bin Hamad Al-Wohaibi appeared before us on this day, 24/12/1424H, corresponding to 15/2/2004G and signed this declaration.

                                      President of Notary Office No. One, Riyadh
                                                    [signature][seal][date]
                                                 Mohammad bin Saad Al-Kharji

[Seal of Ministry of Justice]




الرقـم : ..................
التاريخ : ..................
المرفقات : ..................

المملكة العربية السعودية
وزارة المالية
الرياض ١١١٧٧

محكمه الولايات المتحدة الامريكية

الاقليمية

الإقليم الجنوبي في نيويورك

*03 MDL 1570 (RCC)*                                بشأن الهجمات الارهابية في ١١ سبتمبر ٢٠٠١م

بيان الحاقي من عبدالله بن حمد الوهيبي :

بسم الله الرحمن الرحيم ، انا عبدالله بن حمد الوهيبي ، اقرر مايلي :

١- انا مدير الادارة القانونية في وزارة المالية (وزارة المالية) لحكومة المملكة العربية السعودية . وهذا البيان يكمل البيان السابق (البيان الاساس) الذي وقعته بتاريخ ١٤٢٤/٦/٢٦هـ ، الموافق ٢٤/اغسطس/٢٠٠٣م . أنني اقدم هذا البيان الالحاقي لمواصله تأييد الدفع برفض الدعوى المقامة ضد البنك الاهلي التجاري (البنك الاهلي) المقدم بتاريخ ١٤ اكتوبر ٢٠٠٣م ، وانا اتمتع بالصلاحيه لتقديم هذا البيان الذي اعددته ووقعته باللغه العربية مدركا أنه سيترجم الى اللغه الانجليزية لتقديمه الى محكمه امريكية .

٢- لقد علمت ان المذكرة التي قدمها المدعون ردا على طلب رفض الدعوى الذي قدمه البنك الاهلي (الرد) تتضمن وصفا لوضع ومهام صندوق الاستثمارات العامة (الصندوق) في الهيكل السياسي والحكومي للمملكة العربية السعودية . إن الغرض من هذا البيان هو تصحيح المفاهيم التي علمت ان المدعين قدموها في الرد ، بناء على معلومات منتقاه وغير مكتمله اخذت من موقع وزارة المالية على الشبكة العنكبوتيه (www.mof.gov.sa) .

٣- تجدر الاشارة الى ان موقع الوزارة يتضمن هيكلا تنظيميا لوزارة المالية (www.mof.gov.sa/e_structure.html) لم يشير اليه المدعون في الرد . وينص الموقع "يتكون الهيكل التنظيمي من وزير المالية ، ويرتبط به الوحدات الادارية التالية ..... ٣- الامانة العامة لصندوق الاستثمارات العامة" . (انظر المرجع السابق) . إن هذا النص يتفق تماما مع




| | |
|---|---|
| الرقـم : ................ | المملكة العربية السعودية |
| التاريخ : ................ | وزارة المالية |
| المرفقات : ................ | الرياض ١١١٧٧ |

وصفي للصندوق في البيان الاساس بأنه "دائره إدارية في وزارة المالية" يرأسه امين عام هو رئيسه التنفيذي . (انظر البيان الاساس الفقرات ٢ ، ٤ ، ١٢) وكما ذكرت سابقا ، فإن الصندوق لم يؤسس كجهـــة ذات صفه قانونية منفصله عن وزارة المالية او يعامل على هذا الاساس . (انظر المرجع السابق الفقرات ٢-١٢) .

٤- إن الصــندوق ، بوصفه وحده أو إدارة في الوزارة ، لا يؤدي إلا وظائف حكومية تدخل في مهام الـــوزارة فـــي تنفيــذ سياســات المملكـــة المــتعلقه بتنمـــية الاقتصـاد الوطني السعودي . (انظر www.mof.gov.sa/include.html تحـــت عنوان مهام الوزارة) لهذا ، فإن موقع وزارة المالية الذي اخذ منه الرد جزئيا في الصفحات ١٣-١٥ ، يشير الى الصندوق بالشكل الاتي :

**مهام الوزارة:**
**\*\*\*\*\*\*\*\***

*مـــتابعة تنفيــذ سياسة المملكة في تقديم القروض للمواطنين والشركات الوطنية في مختلف المجالات الإنمائية من خلال البنوك التجارية ومؤسسات الاقراض المتخصصة مـــثل البنك السعودي الزراعي ، وبنك التسليف السعودي وصندوق التنمية الصناعية السـعودي وصــندوق التنمية العقارية وصندوق الاستثمارات العامة (انظر المصدر السابق) .*

ما ذكر اعلاه هو ترجمه حرفيه للنص الانجليزي في موقع الوزارة . اما النص العربي في الموقع فأنه يذكر ان مهام الوزارة تشمل "متابعة تنفيذ سياسة الدولة في تقديم القروض المالية .... من خلال البنوك والصـــناديق الــتي تتــبعها (أي الوزارة) وهي البنك الزراعي وبنك التسليف وصندوق التنمية الصناعية وصندوق التنمية العقارية وصندوق الاستثمارات العامة .

٥- ايا كانت الترجمه التي نستخدمها ، فإن هذه الاشارات تتفق مع صفة الصندوق كوحده او جهاز اداري فـــي الوزارة ، ومع الواقع المتمثل في ان وظيفته الاساسيه هي وظيفه حكومية وليست تجارية ، إن كل من مؤسسات الاقراض المتخصصه الاخرى (او الصناديق التي تتبع الوزارة) التـــي ذكرت اسست بمرسوم ملكي مثلها مثل الصندوق وكل واحدة منها تتولى تنفيذ جزءا من سياســة الحكومـــة السعودية (انظرwww.mof.gov.sa/e_main_agric.htm البنك الزراعي السعودي)

٢

المملكة العربية السعودية
وزارة المالية
الرياض ١١١٧٧

الرقـــم : ..................
التاريــخ : ..................
المرفقات : ..................

بسم الله الرحمن الرحيم

www.mof.gov.sa/e_main_credit.htm ) بنك التسليف السعودي)
www.mof.gov.sa/e_main_aindust.htm) صندوق التنمية الصناعية السعودي)
www.mof.gov.sa/e_main_aredst.htm) صندوق التنمية العقارية السعودي) إن مؤسسات الاقـــراض المتخصصة او الصناديق التابعة للوزارة ، مثلها مثل الصندوق ، تقدم التمويل وفق اسس لايقدمها الممولون الخاصون . هذه المؤسسات ممولة من المملكة العربية السعودية وتقدم قروضا طويلة الاجل بشروط ميسره او بدون فوائد للاطراف المستفيدة المستهدفة .

٦- كما يوضح الهيكل التنظيمي للوزارة ، فإن الصندوق وحده بين مؤسسات الاقراض المتخصصة او الصناديق التي تتبع الـــوزارة يعـــد وحـــده إداريــــة مـــن إدارات الـــوزارة . (انظر www.mof.gov.sa/e_structure.html) امـــا مؤسسات الاقراض المتخصصة او الصناديق الاخرى التي تتبع الوزارة فإن لكل واحده منها علاقتها الخاصة بالوزارة التي يلزم وصفها وفق الاعتبـــارات الخاصة بها ، مثلا ، بنك التسليف السعودي "اسس كشخصيه معنوية وذمه مالية مســـــتقلة ، لــــــه اهلــــيه الــــــتملك والتصــــرف والتقاضــــي " . (انظر www.mof.gov.sa/e_main_credit.htm) وصـــندوق التنمية الصناعية هو "جهاز للتمويل مرتـــــــبط بــــــــوزارة المالـــــــية والاقتصــــــــاد الوطنـــــي" . (انظـــــر www.mof.gov.sa/e_main_aindust.htm) إن الغـــرض مـــن البيان الأساسي الذي قدمته والغرض من هذا البيان هو توضيح علاقة الصندوق بالوزارة ، وانه جزء غير منفصل عنها ، وجزء من المنظومة السياسية والحكومية للمملكة العربية السعودية .

٧- كمــثال آخر على هذا ، فإن موقع وزارة المالية يوضح (بنص اغفل الاشارة اليه المدعون) ان الصندوق اسس لتمكين الوزارة من متابعة "تنفيذ سياسة الدولة" في مجال التنمية الاقتصادية :

*إن الهـــدف من إنشاء هذا الصندوق هو توفير التمويل لبعض المشروعات الانتاجيه ذات الطـــابع التـــجاري وذلــك لاهميتها الكبيره لتنمية الاقتصاد الوطني ولا يستطيع القطــاع الخـــاص القــيام بها منفردا اما لقلة الخبره او رأس المال اوكليهما* (انظر www.mof.gov.sa/e_main_ainves.htm).

٣




| الرقــم : ................ | | المملكة العربية السعودية |
| --- | --- | --- |
| التاريخ : ................ | | وزارة المالية |
| المرفقات : ................ | | الرياض ١١١٧٧ |

إن الصــندوق يقــوم بهذه الاستثمارات من اجل تنفيذ السياسـة الحكومية السعودية في مجال تنمية الاقتصاد الوطني ، وهذا امر يؤكده النص الاتي الوارد في موقع الوزارة (اشير إليه في الرد في الصفحه ١٣) :

<u>يختص الصندوق بتمويل الاستثمار في المشاريع الانتاجيه ذات الطابع التجاري سواء كانــت تابعه للحكومه او لمؤسسات الاقراض الصناعية المرتبطه بها او المؤسسات العامــة وســواء كانــت هذه المشاريع تنفذ استقلالا او عن طريق مشاركة الجهات الادارية لمؤسسات خاصه (انظر المصدر السابق).</u>

و"المؤسسات العامة" هي الهيئات الحكومية السعودية ذات الصفة القانونية المستقله .

٨- وتؤكد اجزاء اخرى من موقع الوزارة لم يشر إليها المدعون بأن وظيفه الصندوق حكومية وليست تجاريــة . فإن مشاركة الصندوق في شركات المساهمة العامة مثل البنك الاهلي تتم "تحقيقا لقرار مجلــس الــوزراء رقم ٥٠٨" (انظر www.mof.gov.sa/e_main_ainves.htm) تحت عنوان المســاهمه فــي رؤوس امــوال الشركات) . هذا القرار الذي سبق تقديمه مع البيان الأساس بإسم الملحق (ج) ينص على وجوب تحقيق التكامل بين التنمية الاقتصادية والتنمية الاجتماعية ووجوب الاهــتمام بالــتوزيع العادل للدخل . (انظر الملحق ج فقره ٢) لهذا ، "من الملائم ان تقوم <u>الحكومه</u> بتوفــير إمكانية حصول قطاع كبير من المواطنين ذوي الدخل المحدود او ذوي المقدره الادخاريه المحدوده على فرص الاستثمار في الشركات المساهمه ... " (انظر المصدر السابق) . ولتحقيق هذا الهدف "تشترك الحكومة ، متى رأت ذلك مناسبا ، في شركات المساهمة ...." ويتولى الصندوق بعد هــذا "ادارة هــذه الاسهم ، <u>وتمثيل الحكومة فيما يتعلق بها</u> ... "حتى يتم بيع هذه الاسهم للمواطنين السعوديين في اخر المطاف ، كما هو مستهدف . (انظر المصدر السابق ٢ ، ٣ ، انظر ايضا البيان الاســاس الفقــرات ٥ ، ٦) ان القرارات بقيام الصندوق بالاستثمار في الشركات او بيع حصصه تؤســس على تعليمات مجلس الوزراء السعودي وموافقته ، ويؤكد موقع الوزارة ان دور الصندوق فــي هذه الاستثمارات هو <u>"نيابه عن الحكومة"</u> ضاربا على هذا مثلا مشاركة الصندوق " في تمويل رأسمال عدد من الشركات الثنائيه العربية" . (انظر www.mof.gov.sa/e_main_ainves.htm).

٤



المملكة العربية السعودية
وزارة المالية
الرياض ١١١٧٧

الرقــم : ..................
التاريــخ : ..................
المرفقات : ..................

بسم الله الرحمن الرحيم

٩- كما ان الصندوق يقدم التمويل بشروط ولمشاريع لايقوم بها الممولون التجاريون ، مثلا ، قام الصندوق ، بناءا على موافقه نائب رئيس مجلس الوزراء ، بتقديم قرض حسن بحوالي ٢,١ بليون ريال لتمويل مشروع اسكان الحجاج في المناطق المجاورة لمدينه مكة المكرمه ، ومشروع الاسكان هذا مشروع ذو صفه حكومية لايستهدف الربح فوزارة الحج السعودية مكلفه بتوفير التجهيزات اللازمة للحجاج اللذين يقصدون الاماكن المقدسه في المملكة العربية السعودية (انظر www.saudinf.com/main/c61.htm) كذلك ، وجه مجلس الوزراء تعليماته للصندوق بدعم مشروع تجري دراسته الان لاقامه سكه حديد لنقل الفوسفات . فالمملكة العربية السعودية تحوي مخزون كبير من حجر الفوسفات . وإستخراج المعادن الموجوده في المملكة مهم لزيادة ناتج الدخل المحلي وتنويع القاعدة الاقتصادية وتحقيق النمو الاقتصادي المتوازن . وإقامه سكه للحديد لنقل المعادن المستخرجه ضروري لتحقيق هذه الاهداف التي حددتها الحكومة . لذا فإن الصندوق سوف يقدم رأس المال اللازم لاقامه سكه حديد رغم انه من غير المتوقع ان يحقق مشروع سكة الحديد في ذاته عائدا يذكر للصندوق .

١٠- ويقدم الصندوق التمويل للمشاريع التنمويه البتروكيماويه والبتروليه على اساس ثابت (هو ليبور زائد ٥٠ نقطه) مقارنه بأسس التمويل المتغيره والمرتبطه بتقويم المخاطر التي يقدمها الممولون التجاريون . إن الاساس الثابت للفائده التي يتقاضاها الصندوق على القروض لهذه المشاريع (مقارنه بالقروض الحسنه التي يقدمها الصندوق لمشاريع البنيه التحتيه مثل مشروع الاسكان المذكور في الفقره ٩) محدد من قبل مجلس ادارة الصندوق المكون كليا من مسئولين حكوميين . (انظر البيان الاساس ، فقره ٤) واخيرا ، فإن القروض التي يقدمها الصندوق هي عادة ذات امد اطول من امد القروض التي يقدمها الممولون التجاريون . وهو ما يعكس الواقع المتمثل في ان المشاريع التي يدعمها الصندوق هي مما يخدم الاقتصاد الوطني السعودي على الامد البعيد .

١١- تضمن الرد خطأ في صفحه ١٥ أن الصندوق "ربما تملكه" المملكة العربية السعودية . إن المملكة العربية السعودية لا "تملك" الصندوق وذلك لان الصندوق ليس شركة او كيان تجاري يمكن ان يكون محلا للملكيه . إن الصندوق جهاز اداري من اجهزه وزارة المالية ، والمملكة العربيه السعودية لا "تملك" الصندوق مثلما انها لا "تملك" وزارة المالية اذ ان الوزارة والصندوق الذي هو

٥



المملكة العربية السعودية
وزارة المالية
الرياض ١١١٧٧

الرقـم : ..................
التاريـخ : ..................
المرفقات : ..................

بسم الله الرحمن الرحيم

جزء منها – هي جزء من حكومه المملكة ومن ثم فإن استعمال عباره "التملك" هو تشخيص خاطئ في جوهره ومضمونه .

١٢- لكـل هذه الاسباب ، كما اوضحت في البيان الاساس ، فإن الصندوق جزء لايتجزء من المنظومه السياسية والحكومية للمملكة العربية السعودية .

أؤكـد ان المعلومـات الـواردة في هذا البيان الالحاقي صحيحه وصادقه حسب علمي وإعتقادي والمعلومـات المتوفره لدي . تم التوقيع في ١٤٢٤/١٢/٢٤ هـ الموافق ١٥ / ٢ / ٢٠٠٤م ، في الرياض ، المملكة العربية السعودية .

عبدالله بن حمد الوهيبي

_[signature]_

كاتب العدل :

نصــادق بأن عبدالله بن حمد الوهيبي قد مثل امامنا في هذا اليوم _____ هـ ، الموافق _____ م
١٤٢٤/١٢/٢٤هـ    ٢٠٠٤/٢/١٥م

ووقع هذا البيان .

والله الموفق ، ، ،

رئيس كتابة العدل الأولى بالرياض
محمد بن سعد الرجحي



٦

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                           x

IN RE: TERRORIST ATTACKS    x    03 MDL 1570 (RCC)
ON SEPTEMBER 11, 2001        x
                                                           x
------------------------------------------------------x

## CERTIFICATE OF ACCURACY OF TRANSLATION

I, Abdulaziz H. Al Fahad, declare as follows:

1. This Certificate of Accuracy of Translation is given at the request of United States counsel for The National Commercial Bank ("NCB") to attest to the accuracy of the annexed English language translation of the annexed Supplemental Affidavit of Abdallah Bin Hamad Al-Wohaibi in further support of NCB's motion to dismiss ("Supplemental Al-Wohaibi Affidavit"), the original of which is in Arabic.

2. I am a lawyer admitted to practice in the Kingdom of Saudi Arabia. My qualifications are further described in my Declaration dated April 6, 2003 in this action in support of the motion to dismiss filed by His Royal Highness Prince Sultan bin Abdulaziz Al-Saud. As noted in my earlier Declaration, I am also a licensed Arabic to English translator, holding License No. 138 issued by the Ministry of Commerce of the Kingdom of Saudi Arabia.

3. I have reviewed the annexed original Supplemental Al-Wohaibi Affidavit and the annexed English translation thereof, as well as the websites and other records referred to therein. Based on the qualifications set forth above, I attest that the annexed English translation of the Supplemental Al-Wohaibi Affidavit is a true and accurate translation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ~~February~~ March 1, 2004.

                                                                        *[signature]*
                                                                     Abdulaziz H. Al Fahad