Excerpts from November 14, 2003
Memorandum Opinion in
Burnett v. Al Baraka Investment and Development Corporation

CA 02-1616
(D.D.C.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS BURNETT, SR., et al.,          :
                                      :
         Plaintiffs,                  :
                                      :
    v.                                : Civil Action No. 02-1616 (JR)
                                      :
AL BARAKA INVESTMENT AND              :
DEVELOPMENT CORPORATION, et al.,      :
                                      :
         Defendants.                  :

## MEMORANDUM OPINION

This memorandum addresses the second group of dispositive motions to be considered in this action brought by victims and representatives of victims of the terrorist attacks of September 11, 2001. My opinion on the first group of motions is reported as Burnett v. Al Baraka Invest. & Devel. Corp., 274 F.Supp.2d 86 (D.D.C. 2003) ("Burnett I"). The motions now before me, filed by Prince Turki Al-Faisal bin Abdulaziz Al-Saud ("Prince Turki") and Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan"), seek dismissal on grounds, inter alia, of lack of subject matter jurisdiction and lack of personal jurisdiction. The motions have been fully briefed. Oral argument was presented on October 17, 2003.

It is undisputed that, at all times relevant to this action, Prince Turki was the Director of Saudi Arabia's Department of General Intelligence ("DGI" or "Istakhbarat").[1]

---

[1] Prince Turki is now Ambassador of Saudi Arabia to the United Kingdom.

tort claims resulting from its conduct" ); Liu, 892 F.2d at 1430 (excepting from immunity, under § 1605(a)(5), a foreign state which benefitted from a government employee's use of governmental authority to silence, by murder, an outspoken critic of the government).

## II. PERSONAL JURISDICTION

Prince Sultan does not enjoy foreign sovereign immunity from claims that arise from contributions he allegedly made to the IIRO, the WML, the WAMY, and Al-Haramain in his personal capacity. His motion to dismiss those claims accordingly asserts, not lack of subject matter jurisdiction -- which is conferred by the ATA for the claims of United States nationals and by the ATCA for the claims of foreign nationals,[6] see Burnett I -- but lack of personal jurisdiction. "[B]ecause the [ATA] provides for nationwide service of process,[7] the relevant Due Process inquiry for personal jurisdiction purposes, assuming

---

[6] The plaintiffs have also alleged RICO as a basis for this Court's jurisdiction, but, for the reasons explicated in Burnett I, 274 F. Supp.2d at 100-02, jurisdiction does not lie against Prince Sultan under this statute.

[7] The venue provision of the ATA provides that:

> [a]ny civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

18 U.S.C. § 2334(a).

- 23 -

that the defendant has been properly served, "is whether the defendant has had minimum contacts with the United States." Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted). That inquiry, in turn, is constrained by the question of whether "'maintenance of the suit . . . offend[s] 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).

Plaintiffs have made a desultory effort to sustain their burden of showing that Prince Sultan's visits to the United States (and his presence here years ago as a college undergraduate) would support the assertion of personal jurisdiction over him. They have not indicated, however, how official visits, or speaking engagements, or an American education, might have been connected with their cause of action. See, e.g., Douglas Battery Mfg. Co. v. Taylor Auto Supply, Inc., 537 F.Supp. 1072, 1074 (M.D.N.C. 1982) ("The nature and quality of defendant's contacts with North Carolina and their lack of connection with the plaintiff's cause of action convince the Court that asserting personal jurisdiction over the defendant for this cause of action would be unfair."); Kulko v. Superior Court of California, 436 U.S. 84, 93-94 (1978) (holding that temporary visits to state insufficient basis for assertion of in personam jurisdiction over unrelated action); Munchak Corp. v. Riko Enters., Inc., 368 F.Supp. 1366, 1374 (M.D.N.C. 1973) (holding

- 24 -

that unrelated activities of defendant in forum state do not constitute minimum contacts). Nor have they provided even a basic outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery.[8]

Plaintiffs' principal argument, instead, is essentially that Prince Sultan brought himself within the jurisdiction of this Court (or any American court that might entertain an ATA action against him) when he "purposefully directed" his allegedly tortious activities at residents of the United States.

This jurisdictional argument invokes the Supreme Court's decisions in Calder v. Jones, 465 U.S. 783 (1984), and Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Calder was brought by California residents in California state court against Florida residents who had published an allegedly libelous article in a national journal. The Supreme Court overruled the defense of lack of personal jurisdiction, holding that "about 600,000 copies of the publication were sold in California, and that jurisdiction was proper based on the 'effects' in California of th[e defendants] Florida-based conduct." United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995) (citing Calder, 465 U.S. at 785, 789-90). The D.C. Circuit's Ferrara decision

---

[8]My order of July 7, 2003, indicating that discovery would be permitted on the FSIA claim as to Prince Sultan, was not informed by the briefing on the instant motions and is no longer operative.

- 25 -

explained that Calder was based on the Supreme Court's observations

> that the defendants' allegedly tortious actions were 'expressly aimed' at California; that they knew the article 'would have a potentially devastating impact' on its subject in California; and that, under these circumstances, they should have anticipated being 'haled into court' in that State.

Id. (internal citations omitted).

In Burger King, the Supreme Court held that due process was not offended when a federal court in Florida asserted personal jurisdiction over a Michigan franchisee in a breach of contract action by a Florida franchisor, rejecting "talismanic jurisdiction formulas," 471 U.S. at 485, but finding after a detailed factual analysis that the franchisee had established a substantial and continuing relationship with the franchisor's Miami headquarters, had received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and had failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair, id. at 487.

The sum of plaintiffs' allegations against Prince Sultan in his personal capacity is that he personally donated money to the IIRO, the WML, the WAMY and Al-Haramain, knowing that those foundations funded terrorist organizations including Al Qaeda. The 3AC stops well short of alleging that Prince Sultan's actions were "expressly aimed" or "purposefully

- 26 -

directed" at the United States, allegations that might have satisfied <u>Burger King</u>, <u>supra</u>, and <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774-75 (1984). Plaintiffs do argue that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States. As Justice Brennan observed in <u>Burger King</u>, however:

> [T]he Court has consistently held that [foreseeability of causing injury in another State] is not a "sufficient benchmark" for exercising personal jurisdiction. Instead, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or third person."

471 U.S. at 474-75 (internal citations omitted); <u>see also</u> <u>Wallace v. Heron</u>, 778 F.2d 391, 394-95 (7th Cir. 1985). It was a commercial course of dealing that made it foreseeable that Burger King's Michigan franchisee would be haled into court in Florida. Nothing like that sort of purposeful availment is alleged here.

* * * * *

It is unnecessary to reach or decide the other arguments advanced by Prince Turki and Prince Sultan in their motions to dismiss. The claims against them for acts allegedly