Excerpts from July 25, 2003
Memorandum Opinion in
Burnett v. Al Baraka Investment and Development Corporation

CA 02-1616
(D.D.C.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS BURNETT, SR., *et al.*,     :
                                   :
          Plaintiffs,              :
                                   :
     v.                            :  Civil Action No. 02-1616 (JR)
                                   :
AL BARAKA INVESTMENT AND           :
DEVELOPMENT CORPORATION, *et al.*, :
                                   :
          Defendants.              :

## MEMORANDUM OPINION

In this action, more than two thousand victims, family members of victims or representatives of victims of the terrorist attacks of September 11, 2001, seek to hold accountable the persons and entities that funded and supported the international terrorist organization known as al Qaeda, which is now generally understood to have carried out the attacks. Plaintiffs have sued nearly two hundred entities or persons -- governments, government agencies, banks, charitable foundations, and individuals, including members of the Saudi royal family -- broadly alleging that each of them, in one way or another, directly or indirectly, provided material support, aided and abetted, or conspired with the terrorists who perpetrated the attacks. The Third Amended Complaint ("3AC") asserts claims under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 et seq., the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350 note, the Antiterrorism Act (ATA), 18 U.S.C. § 2331 et seq., the Alien Tort

Except for the allegation of ¶ 46, supra, that Al Rajhi is one of a number of banks that "have acted as instruments of terror, in raising, facilitating and transferring money to terrorist organizations," the 3AC fails to state a claim against Al Rajhi upon which relief can be granted. The act of providing material support to terrorists, or "funneling" money through banks for terrorists is unlawful and actionable, but -- again, except for ¶ 46 -- Al Rajhi is alleged only to be the funnel. Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.[18]

The complaint against Al Rajhi cannot be dismissed outright because of ¶ 46 of the 3AC and the liberal pleading provisions of Rule 8(a), so strongly confirmed by Sparrow and Swierkiewicz. Al Rajhi may, however, serve a Rule 12(e) request

---

[18] The 3AC asserts claims against members of the al-Rajhi family who are bank officers, but it makes no allegations that would support an inference that any al-Rajhi family member was acting within the scope of his bank employment when he allegedly provided support to al Qaeda, as would be necessary to impose vicarious liability on the bank for the acts of its officers and employees. See, e.g., Tasso v. Platinum Guild Int'l, No. 94CIV8288, 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16, 1997) (dismissing claims against corporate defendant because of plaintiff's failure to plead facts from which inference could be drawn that individual defendant's actions were in furtherance of employer's business, which is part of scope of employment test).

- 45 -

for a more definite statement upon plaintiffs and may have leave to renew its Rule 12(b)(6) motion after receiving plaintiffs' response -- and before it will be required to respond to plaintiffs' jurisdictional discovery.

Normally, of course, the basis for requiring a more definite statement under Rule 12(e) "is unintelligibility, not mere lack of detail." Towers Tenant Ass'n, Inc. v. Towers Ltd. P'ship, 563 F. Supp. 566, 569 (D.D.C. 1983) (citations omitted); Lunayach Communications Consultants, Inc. v. Zackiva Communications Corp., No. 87-2296, 1988 WL 4245, at *2 (D.D.C. Jan. 4, 1988). However, there is reason to think that, in the wake of Swierkiewicz and Sparrow, Rule 12(e) may enjoy a revitalized role in federal practice. See Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003).[19]

Soliman J. Khudeira (Khudeira)

---

[19] Al Rajhi has argued that the claims against it should be dismissed because they present a nonjusticiable political question. "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." Japan Whaling Assoc. v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986). Without deciding whether any defendant may successfully present this argument, I find no such issue as to Al Rajhi. See Baker v. Carr, 369 U.S. 186, 217 (1962) (identifying six factors to be considered in political question inquiry); see generally Comm. of United States Citizens Living in Nicaragua v. Reagan, 859 F.2d 929, 934 (D.C. Cir. 1988) (suggesting that political question doctrine may serve to bar some claims but not others).

Except for the fact that his name is listed in the caption, Khudeira is mentioned only once in the 3AC, at ¶ 228, which alleges without any detail that he is among the "[c]o-conspirators" and "aiders and abettors" of defendant Benevolence International Foundation (BIF) (D61), a charity organization headquartered in Illinois whose chief executive officer in recent years was defendant Enaam Arnaout (D65), now alleged to be under indictment for his role in sponsoring al Qaeda. 3AC at ¶ 181. The 3AC contains a number of allegations about Arnaout's and BIF's ties with Osama bin Laden and al Qaeda, several of which refer to "co-conspirators" of BIF and Arnaout, a label that purportedly includes Khudeira. See 3AC at ¶¶ 203-08, 213, 223.

There is no heightened pleading requirement for civil conspiracy, nor is civil conspiracy exempt from the operation of Rule 8(a), Sparrow, and Swierkiewicz. See Hoskins, 320 F.3d at 764 ("Rule 9(b) has a short list of matters (such as fraud) that must be pleaded with particularity; conspiracy is not among them . . . . [A]ny of our older opinions requiring more than notice of the time, scope, and parties cannot be squared with Swierkiewicz and conspiracy's absence from the list in Rule 9(b)") (internal citations omitted); Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002) ("[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is

charged with"); <u>Burrell v. State Farm & Casualty Co.</u>, 226 F. Supp. 2d 427, 440 (S.D.N.Y. 2002). Indeed,

> The courts have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint. Nonetheless, the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading.

5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure (Second)</u> § 1233 (1990) (internal citations omitted).

The 3AC's allegations of Khudeira's involvement in a conspiracy with BIF and Arnaout are nonetheless too vague to permit an understanding of just what Khudeira has been charged with, or what he must defend. Should Khudeira deem himself named in every paragraph that contains allegations about "co-conspirators" of BIF? <u>See, e.g.</u>, 3AC at ¶ 205 ("Defendant Arnaout and BIF co-conspirators kept secret . . . Defendant Arnaout's relationship with organizations engaging in violence, including al Qaeda and Osama Bin Laden"); 3AC at ¶ 207 ("Defendant BIF and Arnaout and co-conspirators agreed to provide and attempt to provide material support and resources to persons, groups and organizations engaged in violent terrorist activities, including al Qaeda . . . "); 3AC at ¶ 213 ("In or about November 1995, Defendant Arnaout and other members of the BIF conspiracy

- 48 -

caused the shipment of anti-mine boots to Baku, Azerbaijan, ultimately destined for the Chechen mujahideen"). Khudeira may make a Rule 12(e) request for more definite statement and may, upon receiving a response, renew his motion to dismiss.

An appropriate order accompanies this memorandum.

JAMES ROBERTSON
United States District Judge