## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                            :

**IN RE TERRORIST ATTACKS ON**       :       **03 MDL 1570 (RCC)**
    **SEPTEMBER 11, 2001.**          :
                            :

-------------------------------------------------------------X
                            :

**THOMAS BURNETT, SR., et al.,**     :
                            :       **Civil Action 03 Civ. 9849 (RCC)**

      **Plaintiffs,**            :
                            :

         **v.**                :       <u>ORAL ARGUMENT REQUESTED</u>
                            :

**AL BARAKA INVESTMENT**       :
    **& DEVELOPMENT CORP., et al.,**  :
                            :

      **Defendants.**           :

-------------------------------------------------------------X

## MOTION OF DEFENDANT ABDULRAHMAN BIN MAHFOUZ
## TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT
## <u>WITH PREJUDICE</u>

        Defendant Abdulrahman Bin Mahfouz, by and through undersigned counsel,

hereby moves this Court to dismiss with prejudice the claims asserted against him in Plaintiffs'

Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and

12(b)(6), for lack of personal jurisdiction, for insufficient service of process, and for failure to

state a claim upon which relief may be granted.  A memorandum of law and proposed Order

accompanies this motion.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____
   Gerald A. Feffer (GF2179)
   Peter J. Kahn (PK3611)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

Dated: March 19, 2004

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                  :

IN RE TERRORIST ATTACKS ON      :      03 MDL 1570 (RCC)
    SEPTEMBER 11, 2001.         :

                                   :
-----------------------------------------------------------X
THOMAS BURNETT, SR., et al.,      :

                                   :      Civil Action 03 Civ. 9849 (RCC)

    Plaintiffs,              :

                                   :
      v.                   :      ORAL ARGUMENT REQUESTED

                                   :
AL BARAKA INVESTMENT         :
    & DEVELOPMENT CORP., et al.,  :

                                   :
    Defendants.            :
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ABDULRAHMAN BIN MAHFOUZ'S MOTION TO DISMISS PLAINTIFFS'
THIRD AMENDED COMPLAINT WITH PREJUDICE**

Gerald A. Feffer (GF2179)
Peter J. Kahn (PK3611)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

Dated: March 19, 2004

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 6

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER
    ABDULRAHMAN BIN MAHFOUZ ............................................................................. 6

    A.  The Anti-Terrorism Act does not confer personal jurisdiction over
        Abdulrahman Bin Mahfouz because he was not served within the
        United States. ................................................................................................... 7

    B.  Abdulrahman Bin Mahfouz's alleged status as an officer, director, or
        trustee of corporations or charities is insufficient of itself to support
        personal jurisdiction, even if those entities had contacts with the
        United States. ................................................................................................... 7

    C.  Abdulrahman Bin Mahfouz's alleged participation in a civil
        "conspiracy" does not create personal jurisdiction. ...................................... 8

    D.  There is no jurisdiction over Abdulrahman Bin Mahfouz as no
        personal contacts with the United States are alleged. ................................... 9

II. PLAINTIFFS' CLAIMS AGAINST ABDULRAHMAN BIN MAHFOUZ
    ARE BARRED BY WELL-ESTABLISHED PRINCIPLES OF
    CORPORATE LAW ..................................................................................................... 10

III. PLAINTIFFS' CLAIMS AGAINST ABDULRAHMAN BIN MAHFOUZ
     ARE BARRED BY THE FIRST AMENDMENT TO THE UNITED
     STATES CONSTITUTION ......................................................................................... 13

IV. PLAINTIFFS' CLAIMS ARISING OUT OF ABDULRAHMAN BIN
    MAHFOUZ'S ALLEGED INVOLVEMENT IN THE BLESSED RELIEF
    CHARITY ARE BARRED BY THE VOLUNTEER PROTECTION ACT, 42
    U.S.C. SECTION 14501 ET SEQ ............................................................................... 15

V.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ
    UNDER THE ANTI-TERRORISM ACT ..................................................................... 17

    A.  Plaintiffs fail to state a direct claim under the ATA. .................................. 17

    B.  Plaintiffs fail to state an aiding and abetting or conspiracy ATA claim. ....... 19

VI. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ABDULRAHMAN
    BIN MAHFOUZ UNDER THE ALIEN TORT CLAIMS ACT, 28 U.S.C.
    SECTION 1350 ............................................................................................................ 20

VII. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ
     UNDER THE TORTURE VICTIM PROTECTION ACT, 28 U.S.C.
     SECTION 1350, NOTE. ............................................................................................. 21

i

VIII.   PLAINTIFFS LACK STANDING TO BRING CLAIMS AGAINST MR. BIN MAHFOUZ FOR VIOLATION OF THE FEDERAL RICO STATUTE. ............... 22

IX.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ UNDER STATE LAW ...................................................................................................... 22

    A.   Plaintiffs' negligence claims must be dismissed for failure to allege a duty by Abdulrahman Bin Mahfouz to plaintiffs. ................................................. 22

    B.   Plaintiffs' intentional tort claims also must be dismissed. .................................... 23

CONCLUSION ........................................................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Acker v. Royal Merchant Bank, No. Civ. A. 98-00392, 1999 WL 1273476 (D.D.C. Feb.
    10, 1999), aff'd, 203 F.3d 51 (D.C. Cir. 1999) ................................................. 9

Alexander & Alexander Services Inc. v. Lloyd's Syndicate, 925 F.2d 44 (2d Cir. 1991) .............. 8

Alter v. Bogoricin, No. 97-Civ.-0662 (MBM), 1997 WL 691332
    (S.D.N.Y. Nov. 6, 1997) ....................................................................... 12

Arduini/Messina Partnership v. National Medical Finance Services Corp., 74 F. Supp. 2d
    352 (S.D.N.Y. 1999) ............................................................................. 3

Armendarez v. Glendale Youth Ctr., Inc., 265 F. Supp. 2d 1136 (D. Ariz. 2003) ...................... 17

In re Asbestos School Litigation, 46 F.3d 1284 (3d Cir. 1994) ..................................... 14

Bao Ge v. Li Peng, 201 F. Supp. 2d 14 (D.D.C. 2000), aff'd, 2002 WL 1052012
    (D.C. Cir. Mar. 1, 2002) ................................................................... 21, 22

Barnes Foundation v. Township of Lower Merion, 242 F.3d 151 (3d Cir. 2001) ........................ 14

Bender v. City of New York, 78 F.3d 787 (2nd Cir. 1996) ........................................... 24

Bigio v. Coca-Cola Co., 239 F.3d 440 (2d Cir. 2000) .............................................. 21

Blouin v. Spitzer, 213 F. Supp. 2d 184 (N.D.N.Y. 2002) ........................................... 22

Boim v. Quranic Literacy Institute, 291 F.3d 1000 (7th Cir. 2002) .................. 14, 15, 18, 20, 21

Boim v. Quranic Literacy Institute, 127 F. Supp. 2d 1002 (N.D. Ill. 2001), aff'd 291 F.3d
    1000 (7th Cir. 2002) .......................................................................... 15

Browning v. Clinton, 292 F.3d 235 (D.C. Cir. 2002) ............................................... 6

Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003) ........................... 9

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86
    (D.D.C. 2003) ............................................................................ passim

Campoverde v. Sony Pictures Entertainment, No. 01-Civ.-7775, 2002 WL 31163804
    (S.D.N.Y. Sept. 30, 2002) ................................................................. 23, 24

Carmichael v. United Tech. Corp., 835 F.2d 109 (5th Cir. 1988) .................................... 19

Corcoran v. New York Power Authority, 935 F. Supp. 376 (S.D.N.Y. 1996) .............................. 22

Doe v. Islamic Salvation Front, 257 F. Supp. 115 (D.D.C. 2003) ...................................... 19, 21

E-Z Bowz LLC v. Professional Prod. Resources Co., No. 00 Civ. 8670 LTS GWG, 2003
    WL 22064259 (S.D.N.Y. Sept. 5, 2003) .............................................................................. 7

Ferreira v. Unirubio Music Publishing, No. 02-Civ.-805 (LBS), 2002 WL 1303112
    (S.D.N.Y. June 13, 2002) ................................................................................................... 12

Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980) ....................................................... 20

First Chicago International v. United Exchange Co., 836 F.2d 1375 (D.C. Cir. 1988) .................. 6

GTE New Media Services Inc. v. Bellsouth Corp., 199 F.3d 1343 (D.C. Cir. 2000) ..................... 7

Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) .......................................................... 13

Glusband v. Fittin Cunningham Lauzon, Inc., 582 F. Supp. 145 (S.D.N.Y. 1984) ...................... 22

Gmurzynska v. Hutton, 257 F. Supp. 2d 621 (S.D.N.Y. 2003), aff'd, 355 F.3d 206
    (2d Cir. 2004) .................................................................................................................... 7

Greenwood Trust Co. v. Mass., 971 F.2d 818 (1st Cir. 1992) ...................................... 18

Grey v. Heckler, 721 F.2d 41 (2d Cir. 1983) .................................................................... 5

Habrack v. Kupersmith, No. 87-Civ.-4712, 1988 WL 102037 (S.D.N.Y. Sept. 23, 1988) ......... 23

Halberstam v. Welch, 705 F.2d 742 (D.C. Cir. 1983) ............................................... 9, 19

Healy v. James, 408 U.S. 169 (1972) .............................................................................. 13

Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir. 1990) ........................................ 18

Hishon v. King & Spalding, 467 U.S. 69 (1984) .............................................................. 6

Holmes v. Sec. Investor Protection Corp., 503 U.S. 258 (1992) .................................... 18

Holy Land Found. for Relief and Dev. v. Ashcroft, 219 F. Supp. 2d 57 (D.D.C. 2002),
    aff'd, 333 F.3d 156 (D.C. Cir. 2003), cert. denied, __ U.S. __, 2004 WL 368125
    (2004) ........................................................................................................................ 14, 15

Hsin Ten Enterprise USA Inc. v. Clark Enterprises, 138 F. Supp. 2d 449 (S.D.N.Y. 2000).......... 8

Hustler Magazine v. Falwell, 485 U.S. 46 (1988) ........................................................... 13

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995) ......................................................... 20, 21

Kaplan v. Aspen Knolls Corp., 290 F. Supp. 2d 335 (E.D.N.Y. 2003) ........................................ 12

Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44 (2d Cir. 1991) .................................................. 9

Kowal v. MCI Communications Corp., 16 F.3d 1271 (D.C. Cir. 1994) ......................................... 6

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991) ........................................................ 3

Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc., 10 F. Supp. 2d 334
    (S.D.N.Y. 1998) ................................................................................................................ 8, 9

Marshall Cty Health Care Auth. v. Shalala, 988 F.2d 1221 (D.C. Cir. 1993) ................................ 3

McCarthy v. Olin Corp., 119 F.3d 148 (2d Cir. 1997) ........................................................... 22, 23

McCoy v. Stewart, 282 F.3d 626 (9th Cir. 2002) ........................................................................ 14

Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246 (S.D.N.Y. 2003) ......................................... 7

Mortise v. United States, 102 F.3d 693 (2d Cir. 1996) ................................................................ 23

Mountain States Legal Found. v. Bush, 306 F.3d 1132 (D.C. Cir. 2002) ................................. 6, 19

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982) ............................................. 13, 14, 15

Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983) ................................................ 9

National Development Co. v. Triad Holding Corp., 930 F.2d 253 (2d Cir. 1991) ......................... 5

New York Times v. Sullivan, 376 U.S. 254 (1964) ...................................................................... 13

Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361
    (S.D.N.Y. 1997) ..................................................................................................................... 3

Pittman v. Grayson, 149 F.3d 111 (2d Cir. 1998) ....................................................................... 19

Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289
    (S.D.N.Y. 2003) .................................................................................................................... 21

Purdy v. Public Administrator of Cty of Westchester, 530 N.Y.S.2d 513 (N.Y. 1988) ............... 23

Richard v. Bell Atlantic Corp., 946 F. Supp. 54 (D.D.C. 1996) ..................................................... 8

SEC v. Tome, 833 F.2d 1086 (2d Cir. 1987) ................................................................................. 5

Sanchez-Espinoza v. Reagan, 770 F.2d 202 (D.C. Cir. 1985) ..................................................... 21

Scales v. United States, 367 U.S. 203 (1961) .............................................................. 13

Schencker v. Assicurazioni Generali, No. 98 Civ. 9186, 2002 WL 1560788
    (S.D.N.Y., July 15, 2002)..................................................................................... 8, 9

Schmidt v. Bishop, 779 F. Supp. 321 (S.D.N.Y. 1991) ................................................ 23

Second Amendment Found. v. United States Conference of Mayors, 274 F.3d 521
    (D.C. Cir. 2001)....................................................................................................... 6, 8

Semi Conductor Materials, Inc. v. Citibank Int'l PLC, 969 F. Supp. 243 (S.D.N.Y. 1997) .......... 8

Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D.N.Y. 2003) .................... 6, 20

Steed Finance LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272 (S.D.N.Y. 2003) .................... 22

Sunlite, Inc. v. Bfg Bank, 849 F. Supp. 74 (D.D.C. 1994) ............................................. 6

Tel-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984)............................................ 21

Three Crown Ltd. Partnership v. Caxton Corp., 817 F. Supp. 1033 (S.D.N.Y. 1993) ................ 24

Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91 (D.D.C. 2002) ........................................ 19

United States v. Robel, 389 U.S. 258 (1967) ................................................................ 13

Wiggins v. Equifax, Inc., 853 F. Supp. 500 (D.D.C. 1994)............................................ 8

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000)............................................. 21

## STATE CASES

American Feed & Livestock Co., Inc. v. Kalfco, Inc., 540 N.Y.S.2d 354
    (N.Y. App. Div. 3d Dep't 1989) .......................................................................... 10, 11

Becker v. Schwartz, 413 N.Y.S.2d 895 (N.Y. 1978) ..................................................... 22

Billy v. Consolidated Machine Tool Corp., 432 N.Y.S.2d 879 (N.Y. 1980)................................ 11

Chong v. New York City Transit Authority, 441 N.Y.S.2d 24
    (N.Y. App. Div. 2d Dep't 1981) .............................................................................. 24

DiNardo v. L & W Industrial Park of Buffalo, Inc., 425 N.Y.S.2d 704
    (N.Y. App. Div. 4th Dep't 1980)............................................................................ 11

Felder v. R & K Realty, 744 N.Y.S.2d 213 (N.Y. App. Div. 2d Dep't 2002)............................... 10

Gonzalez v. Pius, 525 N.Y.S.2d 868 (N.Y. App. Div. 2d Dep't 1988) ........................................ 22

Graham v. Guilderland Central Sch. District, 681 N.Y.S.2d 831
    (N.Y. App. Div. 3d Dep't 1998) ............................................................... 24

Jantzen v. Leslie Edelman of N.Y., Inc., 614 N.Y.S.2d 744
    (N.Y. App. Div. 2d Dep't 1994) ............................................................... 24

Juhl v. Airington, 936 S.W.2d 640 (Tex. 1996)............................................. 14

Lawlor v. District of Columbia, 758 A.2d 964 (D.C. 2000) ......................... 10

Messina v. Matarasso, 729 N.Y.S.2d 4 (N.Y. App. Div. 1st Dep't 2001).................................... 23

Morris v. New York State Dep't of Taxation & Finance, 603 N.Y.S.2d 807 (N.Y. 1993) .......... 11

Old Republic Nat'l Title Ins. Co. v. Moskowitz, 747 N.Y.S.2d 556
    (N.Y. App. Div. 2d Dep't 2002) ............................................................... 11

Total Care Health Industrial, Inc. v. Department of Social Serv., 535 N.Y.S.2d 15
    (N.Y. App. Div. 2d Dep't 1988) ............................................................... 11

## FEDERAL CONSTITUTION, STATUTES, AND RULES

U.S. Const. art. VI............................................................................................ 13

U.S. Const. amend I .................................................................... 13, 14, 15

18 U.S.C. § 1964 ............................................................................................. 18

18 U.S.C. § 2333 ........................................................................................ 18, 20

18 U.S.C. § 2334 ......................................................................................... 7, 20

28 U.S.C. § 534 note ...................................................................................... 16

28 U.S.C. § 1350 ....................................................................................... 20, 21

28 U.S.C. § 1350, note ............................................................................... 21, 22

42 U.S.C. §§ 14501 et seq............................................................................... 16

42 U.S.C. § 14502 ........................................................................................... 17

42 U.S.C. § 14503 ...................................................................................... 16, 17

42 U.S.C. § 14504 ........................................................................................... 17

42 U.S.C. § 14505 ........................................................................................... 16

Fed. R. Civ. P. 4 ........................................................................................................... 10

Fed. R. Civ. P. 12 ................................................................................................ 1, 10, 12

137 Cong. Rec. S4511-04 .............................................................................................. 20

136 Cong. Rec. S14279-01 ............................................................................................ 20

H.R. Rep. No. 102-36..................................................................................................... 21

H.R. Rep. 102-1040........................................................................................................ 20

## OTHER

Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC News, Oct. 3, 2002,
      available at www.msnbc.msn.com/id/3340393.................................................. 5

United States Dept. of State, Background Note, Saudi Arabia, available at
      www.state.gov/r/pa/ei/bgn/3584.htm .................................................................. 5

United States Department of the Treasury, Office of Foreign Assets Control, Specially
      Designated Nationals and Blocked Persons (updated 2004), available at
      www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf .......................................... 16

United States Department of the Treasury, Office of Foreign Assets Control, Terrorism
      List (Annexes to Executive Order 12947 and Executive Order 13224) (updated
      2004), available at www.treas.gov/offices/eotffc/ofac/sanctions/t11ter.pdf..................... 16

## INTRODUCTION

Abdulrahman Bin Mahfouz, the son of defendant Khalid Bin Mahfouz, has never knowingly supported or assisted terrorism of any kind. Plaintiffs have alleged no facts that, if true, would even tend to show otherwise. Instead, they base their claims on allegations that Mr. Bin Mahfouz held positions with a Channel Islands charitable organization, a Saudi commercial bank, and a Saudi corporation—entities that, plaintiffs urge, supported terrorist activities in some unspecified way. But plaintiffs nowhere allege that Mr. Bin Mahfouz participated in, ratified, or even knew of these entities' alleged wrongful conduct. In light of plaintiffs' sparse and inadequate allegations against Mr. Bin Mahfouz, and the attenuated relationship of those allegations to the tragic events of September 11, 2001, it must be concluded that plaintiffs named Mr. Bin Mahfouz in this action not for what he allegedly <u>did</u> (which plaintiffs nowhere explain) but because of <u>who he is</u>. The Court should not countenance this type of claim.

## BACKGROUND

Simply stated, plaintiffs' 406-page Third Amended Complaint ("3AC") against more than 200 defendants nowhere avers any specific conduct by Abdulrahman Bin Mahfouz at all. In fact, his name is mentioned only three times. 3AC ¶¶ 331, 443, 445. The 3AC grounds its charges entirely in Mr. Bin Mahfouz's alleged corporate positions with three institutions—a Channel Islands charity called Blessed Relief, and two Saudi business entities, Nimir LLC and the National Commercial Bank. The plaintiffs claim that each of these entities ostensibly served as "funnels" for terrorist finances—but it is worth noting that the plaintiffs have not even named Blessed Relief in this action, and that they voluntarily have withdrawn their claims against Nimir LLC. <u>See</u> Docket (Burnett DC) No. 245 (Notice of Voluntary Dismissal) (copy attached as Exhibit 1 hereto).[1]

---

[1]    Citations to the record in <u>Burnett et al. v. Al Baraka Inv. & Dev. Inc., et al.</u>, No. 02 Civ. 1616 (D.D.C., first Complaint filed Aug. 15, 2002), which later was transferred to this Court and filed as 03 Civ. 9849 (S.D.N.Y., filed Dec. 11, 2003), are referred to by docket number thus: "Docket (Burnett DC) No. __."

The 3AC advances three discernible theories of liability against Mr. Bin Mahfouz.

First, it alleges that Abdulrahman Bin Mahfouz is a "director" and former "trustee" of the Blessed Relief Foundation (in Arabic, "Muwafaq"), a charitable organization (hereinafter "Blessed Relief"). 3AC ¶¶ 331, 445.[2]  While plaintiffs cursorily allege that the charity "was an al Qaeda front used by wealthy Saudis to funnel money to Osama bin Laden's terrorist network," id. ¶ 334, Blessed Relief—unlike some other entities named in this action—is not on the United States Treasury Department's list of "Specially Designated Nationals and Blocked Persons List."  Moreover, plaintiffs nowhere aver that Mr. Bin Mahfouz participated in, approved of, or even knew of any conduct that furthered Blessed Relief's ostensible role as a "funnel" for al Qaeda's finances.

Attempting to connect Blessed Relief to the United States for jurisdictional purposes, plaintiffs allege without specification that the charity has a post office box in the United States. 3AC ¶ 331. The plaintiffs also assert that three other people—but not Mr. Bin Mahfouz— "incorporated" a Blessed Relief "branch" in Delaware in 1992.[3]  Id. ¶ 334.  In fact, records maintained by the Delaware Secretary of State do refer to a filing by a "Muwafaq [Blessed Relief] Foundation," denominated a "religious nonprofit" organization.  However, that charity either never came into existence in the United States, or had a very short existence that ended a decade ago.  According to the official records, since 1992, when the charity first appeared, no fees were paid.  Additionally, the Delaware Secretary of State specifically declared the entity to be void two years later, in 1994.  Moreover, the records show no trace of any involvement by Abdulrahman Bin Mahfouz at any point.  Attached hereto as Exhibit 2 are the Declarations of Harriett Smith Windsor, Delaware Secretary of State, dated December 11, 2003

---

[2]     The complaint alleges that Blessed Relief "was registered in the Channel Islands in 1992," 3AC ¶ 331, and incorporated a United States branch "in Delaware in 1992." Id. ¶ 334.

[3]     The "incorporators" identified in the 3AC are Talal M. M. Badkook, Dr. Mohaman Ali Elgari, and Yassin al-Kadi, who is a defendant in this action.  3AC ¶ 334.  According to the Delaware Secretary of State's records, attached hereto as Exhibit 2, there was a fourth original member, named Abdulghanui Abdulla Alkhiriji, whom the plaintiffs fail to mention at all.  The records disclose no relationship between Mr. Bin Mahfouz and this Foundation at any time.

and December 16, 2003, and copies of the Secretary of State's certificate of incorporation and Gateway listing, setting forth the dates of the Foundation's incorporation and dissolution.[4]

Second, plaintiffs variously allege that Abdulrahman Bin Mahfouz is the "Chair," "CEO," or "shareholder[] and board member[]" of a Saudi petroleum corporation, Nimir LLC ("Nimir"). 3AC ¶ 443. Nimir is described as a "holding company" for Bin Mahfouz family businesses, id. ¶ 90, "located in Jeddah, Saudi Arabia," id. ¶ 444.[5] Although plaintiffs have voluntarily dismissed Nimir from this action, they initially had alleged that "Nimir knowingly financed, materially supported and/or aided and abetted the Taliban, al Qaeda, Osama bin Laden and international terrorism." 3AC ¶ 455.[6] The sole basis for this charge is the irrelevant allegation that Nimir was part of "a consortium of oil companies" that supposedly reached some kind of "agreement" with the Taliban regime in Afghanistan. Id. ¶ 450. Assuming arguendo that this allegation somehow related to the events of September 11, plaintiffs nowhere allege that Mr. Bin Mahfouz was involved in, approved, or knew of Nimir's alleged financing of terrorism.

In a vain effort to create the appearance that the Court has jurisdiction over Nimir, plaintiffs allege that the company owns "a subsidiary named Nimir Petroleum Company USA Incorporated . . . located in Dallas, Texas." Id. ¶ 444. Like the assertion that Blessed Relief supposedly has a "branch" in the United States, the allegation that Nimir operates a subsidiary here is also a red herring. In fact, Nimir has had no presence in the United States for many years, as the official records show. Attached hereto as Exhibit 3 is the certification of Geoffrey S. Connor, Texas Secretary of State, dated January 24, 2004, with attached "Determination of Forfeiture," reflecting that Nimir Petroleum USA's existence was "forfeited . . . and made null

---

[4]     The Court properly can take judicial notice of the contents of these official public record documents on a motion to dismiss without converting the motion into a motion for summary judgment, because they reflect legal facts. See, e.g., Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991); Marshall Cty Health Care Auth. v. Shalala, 988 F.2d 1221 (D.C. Cir. 1993); Arduini/Messina P'ship v. National Med. Fin. Servs. Corp., 74 F. Supp. 2d 352 (S.D.N.Y. 1999); compare Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361 (S.D.N.Y. 1997) (extrinsic proof of dissolution under Delaware law required on motion to dismiss).

[5]     Even this allegation is nebulous. The complaint merely states that Nimir is chaired by "Khalid Bin Mahfouz's son," without identifying which of his two sons it might be. 3AC ¶ 90. For purposes of the present motion, Abdulrahman Bin Mahfouz treats this allegation as though made against him.

[6]     The plaintiffs' voluntary dismissal of Nimir from this action calls into question the accuracy and value of any of plaintiffs' allegations against that entity.

and void" as of February 13, 1996. The official records of Delaware further show that Nimir Petroleum USA was similarly declared void by the Secretary of State as of March 1, 2000. See Exhibit 4 hereto (Declarations of Harriet Smith Windsor, dated December 11, 2003 and December 16, 2003, and copies of the Secretary of State's certificate of incorporation and Gateway listing for Nimir Petroleum Company USA Inc.).

Most significant, however, is the fact, noted above, that the plaintiffs already have voluntarily dismissed their claims and allegations against Nimir, see Docket (Burnett DC) No. 245 (copy attached at Exhibit 1), and Federal Insurance Company has just recently done likewise in its own 9/11 action, see Notice of Voluntary Dismissal, Federal Ins. Co. v. Al-Qaida, No. 03 MDL 1570 (S.D.N.Y., filed Mar. 5, 2004) (copy attached as Exhibit 5).[7] In view of the wholesale withdrawal of these claims, the plaintiffs should strike the Nimir-dependent accusations made against parties accused of being Nimir's "officers" and "shareholders," and the Court should entirely disregard these particular allegations.

Third, plaintiffs allege that Abdulrahman Bin Mahfouz is a "shareholder" and "a member of the board and Vice Chairman of the Executive Management Committee" of the National Commercial Bank ("NCB"), 3AC ¶ 445, which, as plaintiffs admit, is a Saudi Arabian entity, id. ¶ 88. According to plaintiffs, NCB "was used by Osama bin Laden and al Qaeda as a financial arm, operating as a financial conduit for Osama bin Laden's operations." Id. ¶ 89. At the risk of repetition, the 3AC nowhere alleges that Mr. Bin Mahfouz played any part in, ratified, or even knew of NCB's alleged role as a "financial conduit" for bin Laden's operations.[8]

According to the 3AC, NCB allegedly "was implicated" in the "fraudulent schemes and practices" of the Bank of Credit and Commerce International ("BCCI") "between 1986 and 1990"—in other words, some fourteen-plus years ago. Id. ¶ 89. Again, this seems to

---

[7]    Presumably Nimir is one of the defendants to whom the plaintiffs refer when they admit that some "have been dismissed as the evidence has developed, based on the Plaintiffs' ongoing good faith investigation." Plaintiffs' Status Report, Burnett et al. v. Al Baraka Inv. And Dev. Corp., et al., No. 03 Civ. 9849 (S.D.N.Y., filed Mar. 4, 2004) (hereinafter "Motley Report"), at p. 10.

[8]    Nor do the plaintiffs explain how NCB handled any money in an unlawful or actionable manner. Banks, after all, are in the business of handling money.

be an attempt to shore up a crumbling jurisdictional theory. The 3AC also asserts that a "terrorism expert" (unnamed) has accused "several wealthy Saudis" (unidentified) of having used the NCB as "a financial conduit to Bin Laden," though what this "expert" meant by "conduit" is unexplained. Id. Again, there is no allegation of any nexus between the NCB (or Abdulrahman Bin Mahfouz's alleged role in it) and the United States. For his part, Abdulrahman Bin Mahfouz was a teenager at that time.

Finally, the plaintiffs elsewhere assert that Abdulrahman Bin Mahfouz was served. See Plaintiffs' Notice of Service, Docket No. 244; see also Motley Report, at p.10. In this case, however, the supposed service was by publication in two newspapers selected by the plaintiffs and proposed in their ex parte motion to the transferor court.[9] See Docket (Burnett DC) No. 95 (request); Minute Entry (Burnett DC), entered Mar. 25, 2003 (order). But their choice of publications scarcely could have been worse. According to the plaintiffs' own filings, one paper, the International Herald Tribune, has a total circulation of only 199 in the entire Kingdom of Saudi Arabia, a nation of more than 24 million people, where Abdulrahman Bin Mahfouz has a well-established address. See Exhibit A to Plaintiffs' Notice of Service by Publication, filed Aug. 8, 2003, Docket No. 244 (International Herald Tribune Declaration of Publication of Judith King, June 30, 2003) (listing 2002 circulation by country); U.S. Department of State, Background Note, Saudi Arabia, available at www.state.gov/r/pa/ei/bgn/3584.htm) (Saudi demographic figures). The other periodical, Al Quds al-Arabi, is in fact "banned in Saudi Arabia."[10] Mendenhall, "Seeking bin Laden in the

---

[9]     Service by publication is inappropriate in Abdulrahman Bin Mahfouz's case because he has taken no steps to evade service. "Certainly, if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication will not satisfy the requirements of due process." SEC v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987). See also Grey v. Heckler, 721 F.2d 41, 48 n.12 (2d Cir. 1983). Plaintiffs' claim—supported by affidavit—that process cannot be personally served in Saudi Arabia "due to the dangerous nature of the region and the mysterious disappearance and murder of the process server hired by the Burnett Plaintiffs" seems particularly ludicrous in light of their affiant's continued advertising, on his website, of "Process Service Guaranteed" within Saudi Arabia, using Saudi officials as process servers. See www.processnet1.com/saudi_arabia.htm (last accessed March 18, 2004), attached hereto as Exhibit 6. As the Second Circuit has "reject[ed] the notion that 'actual notice' suffices to cure a void service," National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991), this Court should reconsider the ex parte grant of service by publication, and require plaintiffs to meet the requirements of due process.

[10]     Plaintiffs do not deny this. See Plaintiffs' Memorandum of Law in Opposition to Mohammad Abdullah al Jomaih's Motion to Dismiss the Claims against Him, filed Dec. 2, 2003, Docket (Burnett DC) No. 416, at p. 4.

Classifieds," MSNBC News, Oct. 3, 2002, available at www.msnbc.msn.com/id/3340393/ (last accessed March 18, 2004). These facts underscore the unreliability of the Motley Report's assertion that Abdulrahman Bin Mahfouz has been "served by publication" through these two papers. See Motley Report, at p.10. Compare, e.g., Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 220 n.2 (S.D.N.Y. 2003) (service by publication on Osama bin Laden permitted through publication in four Afghani newspapers, one Pakistani newspaper, and five television networks).[11] The plaintiffs' selected publications were simply not calculated to give fair notice.

## ARGUMENT

For purposes of this motion only, the well-pleaded allegations in the 3AC must be taken as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This Court need not, however, accept plaintiffs' many "inferences . . . unsupported by the facts set out in the complaint," nor their "legal conclusions cast in the form of factual allegations." Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1134-35 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1275 (D.C. Cir. 1994)).[12]

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER ABDULRAHMAN BIN MAHFOUZ.

In order to withstand a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiffs must make the prima facie showing, i.e., of facts connecting Mr. Bin Mahfouz to the forum. Second Amendment Found. v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001); First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988); Sunlite, Inc. v. Bfg Bank, 849 F. Supp. 74, 75 (D.D.C. 1994).

Conclusory allegations such as those advanced against Abdulrahman Bin

---

[11]     In addition to all of these defects, the plaintiffs failed even to comply with the minimum requirements of their own order for substitute service, which stipulated that publication in Al Quds al-Arabi take place once a week for six weeks. See Docket No. 244 (eighteen-day lapse between June 23, 2003 publication and July 12, 2003 publication).

[12]     See also, e.g., Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103 (D.D.C. 2003).

Mahfouz are not enough to create personal jurisdiction.  See, e.g., GTE New Media Servs. Inc. v. Bellsouth Corp., 199 F.3d 1343 (D.C. Cir. 2000); E-Z Bowz LLC v. Professional Prod. Res. Co., No. 00 Civ. 8670 LTS GWG, 2003 WL 22064259, at *4 (S.D.N.Y. Sept. 5, 2003); Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003), aff'd, 355 F.3d 206 (2d Cir. 2004).  None of the allegations connects Mr. Bin Mahfouz to this forum, or indeed shows that he ever had any "minimum contacts" with the United States sufficient to establish the Court's personal jurisdiction over him.

A.     **The Anti-Terrorism Act does not confer personal jurisdiction over Abdulrahman Bin Mahfouz because he was not served within the United States.**

The plaintiffs articulate only one ground for personal jurisdiction over Mr. Bin Mahfouz—the nationwide service-of-process provisions of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2334 (2000).  The ATA allows for nationwide service of process "in any district where the defendant resides, is found, or has an agent."  Id.  However, Mr. Bin Mahfouz never was validly served "in any district," as the ATA requires.  Indeed, if Mr. Bin Mahfouz ever has been "served" at all, it was only by publication in two foreign periodicals.[13]  The defendant Abdulrahman Bin Mahfouz hereby adopts and incorporates the legal arguments regarding invalid service under the ATA, advanced by his father and set forth in the Memorandum in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiff's Complaint or in the Alternative for More Definite Statement, Docket (Burnett DC) No. 319 ("KBM Brief"), at pp. 15-16.

B.     **Abdulrahman Bin Mahfouz's alleged status as an officer, director, or trustee of corporations or charities is insufficient of itself to support personal jurisdiction, even if those entities had contacts with the United States.**

The most that the plaintiffs allege against Mr. Bin Mahfouz is that he was variously "CEO," "Chair," "Vice Chair," "member of the board," and/or "trustee" of two businesses and a charity that allegedly engaged in activity in the United States—Nimir, NCB,

---

[13]     Service by publication was ordered by the transferor Court on the plaintiffs' ex parte motion.  See discussion supra in "Background" section at pp. 5-6.

and Blessed Relief. Occupancy of these positions, however, is insufficient to establish even personal jurisdiction, both because, as discussed above, these entities have no presence in the United States, and because the positions themselves do not, as a matter of law, create jurisdiction over Abdulrahman Bin Mahfouz personally.

"[P]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." Wiggins v. Equifax, Inc., 853 F. Supp. 500, 503 (D.D.C. 1994) (emphasis added); see also Richard v. Bell Atl. Corp., 946 F. Supp. 54, 73-74 (D.D.C. 1996); accord Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc., 10 F. Supp. 2d 334, 339-41 (S.D.N.Y. 1998) (corporate officers not liable for acts done on behalf of corporation). Mr. Bin Mahfouz is not alleged to have any personal contacts with the United States, and the plaintiffs cannot depend on alleged institutional affiliations to conjure up personal contacts.

Even if Blessed Relief, Nimir, and NCB were viable entities within the United States—unlikely, in view of the facts—foreign investment in a domestic enterprise (such as NCB is alleged to have made in BCCI) is insufficient for purposes of showing the investor to be "doing business" here. See, e.g., Schencker v. Assicurazioni Generali, No. 98 Civ. 9186, 2002 WL 1560788, at *3-*5 (S.D.N.Y., July 15, 2002) (mere investment of money in forum state is not "doing business"); see also Alexander & Alexander Servs. Inc. v. Lloyd's Syndicate, 925 F.2d 44 (2d Cir. 1991); Hsin Ten Enter. USA Inc. v. Clark Enters., 138 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2000); Semi Conductor Materials, Inc. v. Citibank Int'l PLC, 969 F. Supp. 243, 245-46 (S.D.N.Y. 1997).

### C. Abdulrahman Bin Mahfouz's alleged participation in a civil "conspiracy" does not create personal jurisdiction.

Also lurking in the 3AC is a "conspiracy theory" of personal jurisdiction. Factually unsubstantiated assertions of the existence of a conspiracy, without more, "do[] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." Second Amendment Found. v. United States Conference of Mayors, 274 F.3d 521,

524 (D.C. Cir. 2001) (quotation omitted); see also Naartex Consulting Corp. v. Watt, 722 F.2d

779, 787-88 (D.C. Cir. 1983). New York law is in accord. "[T]he bland assertion of conspiracy

. . . is insufficient to establish [personal] jurisdiction." Schencker, 2002 WL 1560788, at *10

(quotation omitted); Levisohn, 10 F. Supp. 2d at 342 (plaintiffs "must tie the out-of-state,

allegedly conspiratorial acts of the individual defendants to some tortious act committed within

New York").

   Indeed, no cognizable conspiracy even is claimed here against Mr. Bin Mahfouz.

There is no allegation that he was "aware of his role as part of an overall illegal or tortious

activity at the time that he provide[d] the assistance" that he is accused of rendering, or that he in

any way "knowingly and substantially assist[ed] the principal violation." Burnett, 274 F. Supp.

2d at 104 (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)). Nor is he accused

of having engaged in any conduct that would have had "the natural and probable consequence of

knowingly and intentionally providing financial support to al Qaeda." Burnett, 274 F. Supp. 2d

at 105. Such assertions of "conspiracy" cannot provide this Court with jurisdiction.

### D. There is no jurisdiction over Abdulrahman Bin Mahfouz as no personal contacts with the United States are alleged.

   Personal jurisdiction "depends on the defendant's contacts with the forum state at

the time the lawsuit was filed," not in the remote past. Klinghoffer v. S.N.C. Achille Lauro, 937

F.2d 44, 52 (2d Cir. 1991). Bare allegations of nebulous involvement in intentional torts within

the jurisdiction, such as those made in this litigation against Mr. Bin Mahfouz, are insufficient to

clear this hurdle. Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-23 (D.D.C.

2003). The plaintiffs make no cognizable claim that Mr. Bin Mahfouz has ever had any relevant

contact with the United States.[14] As discussed above, Mr. Bin Mahfouz is not accused of "doing

---

[14] For this reason, the plaintiffs should not be allowed jurisdictional discovery. Such requests should be "denied when the plaintiff has failed to present facts that could establish jurisdiction." Acker v. Royal Merchant Bank, No. Civ. A. 98-00392, 1999 WL 1273476, at *5 (D.D.C. Feb. 10, 1999), aff'd, 203 F.3d 51 (D.C. Cir. 1999); see also Burnett, 2003 WL 22683337, at *10.

business" or engaging in any activities that connect him with the United States. He hereby adopts and incorporates by reference the personal jurisdiction arguments advanced by his father in the KBM Brief, at pp. 17-19. There simply is no jurisdictional basis for claims against Abdulrahman Bin Mahfouz under Fed. R. Civ. P. 4(k)(2).

## II.    PLAINTIFFS' CLAIMS AGAINST ABDULRAHMAN BIN MAHFOUZ ARE BARRED BY WELL-ESTABLISHED PRINCIPLES OF CORPORATE LAW.

Stripped of its rhetoric, the 3AC seeks to hold Mr. Bin Mahfouz liable for the events of September 11 simply because he is allegedly an officer, director, trustee, and/or shareholder of Blessed Relief, Nimir and defendant National Commercial Bank. 3AC ¶¶ 443, 445. These tactics run afoul of fundamental precepts of corporate law, each of which compels dismissal of plaintiffs' claims.[15]

It is black-letter law that "[a]n officer's liability is not based merely on the officer's position in the corporation; it is based on the officer's behavior and whether that behavior indicates that the tortious conduct was done within the officer's area of affirmative official responsibility and with the officer's consent or approval." Lawlor v. District of Columbia, 758 A.2d 964, 977 (D.C. 2000) (reversing trial court's determination that corporate officer was personally liable for acts of corporation). Decisions of New York courts are in accord.[16]

Because plaintiffs must plead facts sufficient to overcome this well-established presumption against officer liability, failure to do so warrants dismissal of plaintiffs' claims,

---

[15]    Although the Court need not resolve choice of law issues at this stage as there appear to be few significant differences in the applicable state law relevant to this motion, Mr. Bin Mahfouz notes the transferor Court's earlier observation that New York law "seems most likely applicable to the great majority" of plaintiffs' state-law claims. Burnett, 274 F. Supp. 2d at 108 n.16.

[16]    See, e.g., Felder v. R & K Realty, 744 N.Y.S.2d 213, 214 (2d Dep't 2002) ("[A] corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it" (quotation omitted)); American Feed & Livestock Co., Inc. v. Kalfco, Inc., 540 N.Y.S.2d 354, 355 (3d Dep't 1989) ("In general, a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong . . . .").

either under Federal Rule of Civil Procedure 12(b)(6) or under corresponding state rules. See, e.g., DiNardo v. L & W Industrial Park of Buffalo, Inc., 425 N.Y.S.2d 704, 705 (4th Dep't 1980) (dismissing plaintiffs' tort claims against corporate officer upon reasoning that "[p]laintiffs' pleadings contain no allegation that there was tortious conduct on the part of appellant which was separate from his conduct as officer and director" of the corporate defendant.).

Here, nothing in the 3AC even hints—much less actually alleges—that Mr. Bin Mahfouz "knowingly participated in," "authorized," or even knew of the allegedly tortious conduct of Blessed Relief, Nimir or NCB. American Feed & Livestock Co., 540 N.Y.S.2d at 355. Absent the requisite factual allegations, liability cannot lie against Mr. Bin Mahfouz.

Mr. Bin Mahfouz also is accused of owning shares in Saudi Nimir. 3AC ¶ 443. However, it is well-established that "the law treats corporations as having an existence separate and distinct from that of their shareholders and, consequently, will not impose liability upon shareholders for the acts of the corporation." Billy v. Consol. Machine Tool Corp., 432 N.Y.S.2d 879, 886 (N.Y. 1980). Shareholder liability accordingly depends on a plaintiff's ability to pierce the corporate veil between a corporation and its shareholders. The great weight of authority is against piercing. Total Care Health Indus., Inc. v. Dep't of Social Servs., 535 N.Y.S.2d 15, 17 (2d Dep't 1988) ("In general, the courts will not pierce the corporate veil to reach a shareholder . . .").

In the exceptional case, to properly aver a veil-piercing theory, the plaintiff must allege both that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. New York State Dep't of Taxation & Fin., 603 N.Y.S.2d 807, 810-11 (N.Y. 1993); see also, e.g., Old Republic Nat'l Title

11

Ins. Co. v. Moskowitz, 747 N.Y.S.2d 556, 558 (2d Dep't 2002) (same).[17]  Courts routinely dismiss veil-piercing claims pursuant to Federal Rule of Civil Procedure 12(b)(6), even under liberal pleading standards, when the plaintiffs have failed to allege facts sufficient to satisfy both prongs of the veil-piercing claim.  See, e.g., Kaplan v. Aspen Knolls Corp., 290 F. Supp. 2d 335, 340 (E.D.N.Y. 2003); Alter v. Bogoricin, No. 97-Civ.-0662 (MBM), 1997 WL 691332, at *5 (S.D.N.Y. Nov. 6, 1997).  Here the 3AC alleges neither element.  Mr. Bin Mahfouz is accused neither of dominating Nimir nor of using such domination to commit a wrong.  To the contrary, the voluntary dismissal of Nimir from these actions raises the opposite inference.

Finally, it is worth noting that—its bluster aside—the 3AC does little more than allege that Blessed Relief and defendant National Commercial Bank served as "funnels" for the transmission of funds to al Qaeda.  With regard to Blessed Relief, for example, plaintiffs allege only that it "was an al Qaeda front used by wealthy Saudis and others to funnel money to Osama bin Laden's terrorist network."  3AC ¶ 334 (emphasis added).  So, too, plaintiffs have alleged only that defendant National Commercial Bank served "as a financial conduit for Osama bin Laden's operations."  Id. ¶ 89.  The transferor Court already has held in this case that dismissal may be appropriate for those entities that are "alleged only to be the funnel[s]" for terrorist finances.  Burnett, 274 F. Supp. 2d at 109.  If Blessed Relief and National Commercial Bank cannot be held liable for serving as "funnels" for al-Qaeda, then Mr. Bin Mahfouz certainly cannot be held liable simply because he is allegedly an officer and director of those entities.[18]

---

[17]     Courts have observed that the second prong—the allegation that the shareholder's domination of the corporation "directly led to the alleged wrong"—is "a very demanding standard."  Ferreira v. Unirubio Music Publishing, No. 02-Civ.-805 (LBS), 2002 WL 1303112, at *1, *3 n.5 (S.D.N.Y. June 13, 2002) (holding that plaintiff had failed to "make out a claim for piercing the corporate veil").

[18]     With regard to Nimir LLC, the Complaint recites a conclusory allegation that "Nimir knowingly financed, materially supported and/or aided and abetted the Taliban, al Qaeda, Osama bin Laden and international terrorism."  3AC ¶ 455.  In light of plaintiffs' voluntary dismissal of Nimir LLC from this action, these allegations should be stricken by plaintiffs and disregarded by the Court in their entirety.

In short, plaintiffs have failed to allege that Mr. Bin Mahfouz participated in, approved, or even knew of the allegedly tortious conduct of Blessed Relief, Nimir and NCB. Plaintiffs' claims against Mr. Bin Mahfouz accordingly must be dismissed as a matter of law.

### III. PLAINTIFFS' CLAIMS AGAINST ABDULRAHMAN BIN MAHFOUZ ARE BARRED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.

Plaintiffs' attempt to impose "guilt by association" upon Abdulrahman Bin Mahfouz, solely based on his alleged affiliations, runs afoul of the First Amendment, which shields core speech or association from civil[19] or criminal liability. See, e.g., Scales v. United States, 367 U.S. 203, 228-30 (1961); Hustler Magazine v. Falwell, 485 U.S. 46 (1988); Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974).

Under the First Amendment, the Supreme Court has held that "[c]ivil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence." NAACP v. Claiborne Hardware Co., 458 U.S. 886, 920 (1982).[20] Further, "[w]hile the State legitimately may impose damages for the consequences of violent conduct, it may not award compensation for the consequences of nonviolent, protected activity." Id. at 918. The Court held, moreover, that "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." Id. at 919-20 (noting also that the specific intent requirement must be judged "according to the strictest law") (quotation omitted). In this case, there exist no allegations of any kind regarding Mr. Bin Mahfouz's conduct or intent—instead, the only allegations against him are of purported associations. These allegations are simply constitutionally insufficient for liability of any kind.

---

[19]    U.S. Const. art. VI; id. amend. I.  The Supreme Court has long held that a court's application of rules of law to impose civil liability constitutes "state action" under the First Amendment.  New York Times v. Sullivan, 376 U.S. 254, 265 (1964).

[20]    See also, e.g., Healy v. James, 408 U.S. 169, 185-86 (1972) ("[T]he Court has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization."); United States v. Robel, 389 U.S. 258, 265 (1967).

Claiborne Hardware consistently has been applied to shield purely associational behavior from liability.  In McCoy v. Stewart, 282 F.3d 626 (9th Cir. 2002), the Ninth Circuit affirmed a habeas writ granted to a defendant whose conviction was "based solely on his speech to, and association with," a street gang. Id. at 629.  Citing Claiborne Hardware, the court noted that the conviction "stray[ed] dangerously close to a finding of guilt by association." Id. at 633.  The allegations in the 3AC come closer than "dangerously close"—the only way in which they can state a claim is if Mr. Bin Mahfouz is held liable by association.  In Barnes Foundation v. Township of Lower Merion, 242 F.3d 151 (3d Cir. 2001), the Third Circuit criticized the district court for "rel[ying] on generalized assertions . . . to permit an inference to be drawn of racial animus" by the neighbors of a minority-led institution. Id. at 164.  The Third Circuit noted that the district court "completely ignored" Claiborne Hardware, id. at 163, and pointed out that "surely it is outrageous that [the plaintiff], while purportedly securing its own civil rights, brought a groundless action against the appellants thereby trampling their First Amendment rights." Id. at 165.  The same principle obtains here.  Redress for the horrific injuries of 9/11 cannot properly be made by fashioning spurious claims out of wholly protected First Amendment conduct.[21]  The allegations against Mr. Bin Mahfouz, as a matter of law, are insufficient to sustain liability.

Neither Boim v. Quranic Literacy Institute, 291 F.3d 1000 (7th Cir. 2002), nor Holy Land Foundation for Relief and Development v. Ashcroft, 219 F. Supp. 2d 57 (D.D.C. 2002), aff'd, 333 F.3d 156 (D.C. Cir. 2003), cert. denied, __ U.S. __, 2004 WL 368125 (2004), suggests the contrary, as neither disputes that allegations of association alone constitutionally may not support liability.  In Boim, the Seventh Circuit upheld the constitutionality of the ATA against a Claiborne Hardware-based challenge; Mr. Bin Mahfouz does not challenge the constitutionality of the ATA.  Moreover, the Boim plaintiffs leveled extensive and specific

---

[21]      See also, e.g., In re Asbestos School Litig., 46 F.3d 1284, 1286 (3d Cir. 1994) (defendant constitutionally could not be required to stand trial based solely on organizational membership); Juhl v. Airington, 936 S.W.2d 640, 642 (Tex. 1996) (police officer injured at demonstration could not recover from demonstrators based solely on their association with those who injured him).

allegations against the defendant of fundraising, functioning as a "front organization," and channeling funds to Hamas. <u>Boim</u>, 291 F.3d at 1022.[22]  Unlike the <u>Boim</u> defendant, Mr. Bin Mahfouz has no fair notice whatsoever of the plaintiffs' claim, not having been alleged to have engaged in any speech or conduct or to have possessed any intent whatsoever.  Plaintiffs allege nothing more than that Mr. Bin Mahfouz associated with three organizations; this alone cannot suffice to state a claim, and <u>Boim</u> does not suggest otherwise.

   <u>Holy Land Foundation for Relief and Development v. Ashcroft</u> is similarly unavailing.  There the plaintiff charity challenged its designation as a terrorist organization.  219 F. Supp. 2d at 62.  The court rejected the plaintiff's First Amendment claims, first distinguishing the executive orders at stake from the liability imposed in <u>Claiborne Hardware</u> (concluding that agency action which does not impact the plaintiff's associational rights is not "guilt by association" under <u>Claiborne Hardware</u>), and second, noting that the case at hand did not involve "liability on the basis of association alone," as the court had found "ample evidence" of other conduct.  <u>Id.</u> at 69-74, 81.  Both distinctions cut the opposite way in the present case.  This case implicates no agency action, but rather involves precisely the same attempt at liability by association as was found unconstitutional in <u>Claiborne Hardware</u>.  Second, while <u>Holy Land Foundation</u> (like <u>Boim</u>) involved defendants against whom specific allegations had been made of conduct and action beyond mere association, in the case at bar, the sole references to Mr. Bin Mahfouz are of alleged associations.

## IV. PLAINTIFFS' CLAIMS ARISING OUT OF ABDULRAHMAN BIN MAHFOUZ'S ALLEGED INVOLVEMENT IN THE BLESSED RELIEF CHARITY ARE BARRED BY THE VOLUNTEER PROTECTION ACT, 42 U.S.C. SECTION 14501 <u>ET SEQ.</u>

   Plaintiffs allege that Mr. Bin Mahfouz is a "director," 3AC ¶ 331, and was a "trustee," <u>id.</u> ¶ 445, of the Blessed Relief charity organization.  Mr. Bin Mahfouz nowhere is

---

[22]  The lower court decision in <u>Boim</u> had reached the same conclusion.  <u>See Boim v. Quranic Literacy Inst.</u>, 127 F. Supp. 2d 1002, 1020 (N.D. Ill. 2001) ("[T]he complaint contain[ed] extensive allegations concerning the alleged funding to Hamas and [did] not seek to impose liability for mere political association or belief.").

alleged to have actually said or done anything as director or trustee or to have served in any other than a volunteer capacity.  Under the Volunteer Protection Act ("VPA"), 42 U.S.C. §§ 14501 et seq, civil liability cannot be imposed upon Mr. Bin Mahfouz solely on the basis of service as a volunteer officer of a nonprofit organization.[23]  This action therefore must be dismissed against Mr. Bin Mahfouz insofar as it derives from his purported relationship with Blessed Relief.

The VPA applies to "any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes and which does not practice any action which constitutes a hate crime." 42 U.S.C. § 14505(4)(B).[24]  Given that plaintiffs characterize Blessed Relief as a "charity," 3AC ¶ 331 (describing "the Blessed Relief charity"), the VPA applies.

The VPA defines "volunteer" to include an individual "serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505.  An alleged director and former trustee of Blessed Relief, 3AC ¶¶ 331 & 445, Mr. Bin Mahfouz falls squarely under the aegis of the VPA.  The VPA mandates that a volunteer shall not be liable for acts or omissions on behalf of the organization, done within the scope of the volunteer's responsibilities, if the harm was not caused by willful, criminal or reckless misconduct, gross negligence, or flagrant indifference to the rights or safety of others. 42 U.S.C. § 14503.  As plaintiffs allege no acts or omissions of any kind by Mr. Bin Mahfouz, they cannot state a claim against him.

---

[23]    The VPA evinces Congress's public policy determination that volunteer involvement in nonprofit organizations ought not to be discouraged by the threat of liability. See 42 U.S.C. § 14501 (finding that the potential for liability actions has deterred volunteer activity).

[24]    The VPA refers to the Hate Crime Statistics Act, 28 U.S.C. § 534 note, for the definition of a hate crime. Plaintiffs nowhere allege that Blessed Relief has practiced any such conduct. Blessed Relief, moreover, features on neither of the federal government terrorism-related lists of persons and entities. See http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf (Specially Designated Nationals and Blocked Persons List) (last updated Mar. 18, 2004); http://www.treas.gov/offices/eotffc/ofac/sanctions/t11ter.pdf (Terrorism List) (Annexes to Executive Order 12947 and Executive Order 13224) (accessed Mar. 18, 2004).

The VPA explicitly preempts any state law that provides less protection from liability, 42 U.S.C. § 14502,[25] and the VPA also preempts federal law.[26]  No volunteer of a nonprofit organization shall be liable for "harm," defined as "physical, nonphysical, economic, and noneconomic losses."  42 U.S.C. §§ 14503(a), 14505(2).  Abdulrahman Bin Mahfouz is only alleged to have been an officer and/or director of this nonprofit organization, and so none of the VPA's exceptions apply.  Accordingly, all of plaintiffs' claims against Abdulrahman Bin Mahfouz are barred insofar as they pertain to his alleged affiliation with Blessed Relief.[27]

## V.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ UNDER THE ANTI-TERRORISM ACT.

Plaintiffs' allegations—of nothing more than affiliation—are insufficient to state a claim under the Anti-Terrorism Act ("ATA") through direct, aiding and abetting, or conspiracy liability.  The transferor Court has noted that "given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he—or it—does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [complaint]."  Burnett, 274 F. Supp. 2d at 103-04.  The allegations leveled against Mr. Bin Mahfouz fail this standard.

### A.   Plaintiffs fail to state a direct claim under the ATA.

In Boim, the Seventh Circuit held that the knowing and intentional provision of material support or resources to further reasonably foreseeable terrorist acts can suffice to

---

[25]   "[T]he plain language of the statute . . . satisfies the Court that the VPA preempts state law . . . ."  Armendarez v. Glendale Youth Ctr., Inc., 265 F. Supp. 2d 1136, 1139 (D. Ariz. 2003) (granting 12(b)(6) motion).

[26]   See Armendarez, 265 F. Supp. 2d at 1139 ("[t]he text of § 14502(a) cannot be interpreted to prevent the application of the VPA to federal law").  The VPA therefore preempts plaintiffs' claims under RICO, the ATCA, the TVPA, and the ATA.  Notably, the VPA provides no limitation on liability for conduct that "constitutes a[n] . . . act of international terrorism (as that term is defined in section 2331 of title 18) for which the defendant has been convicted in any court."  42 U.S.C. § 14503(f)(1)(A) (emphasis added).  Because Mr. Bin Mahfouz has never been indicted—let alone convicted—in any court, this provision cannot apply to him.

[27]   To the extent a volunteer is liable under the VPA, liability for noneconomic loss is limited to the amount in proportion to the percentage of responsibility of the defendant.  42 U.S.C. § 14504(b)(1).  The VPA thus prohibits joint and several liability for volunteers such as Mr. Bin Mahfouz, and requires a "separate judgment against each defendant."  Id.

17

impose civil liability under the ATA.  Boim, 291 F.3d at 1011-12; 18 U.S.C. § 2333.  Plaintiffs

fall short on each of those elements.  Plaintiffs have failed to allege any provision of material

support or resources by Mr. Bin Mahfouz—indeed, plaintiffs have alleged no conduct at all by

Mr. Bin Mahfouz.  Moreover, plaintiffs have failed altogether to allege knowledge and intent on

his part.  As described supra at pp. 10-13, inferences of knowledge, intent, control, or conduct

may not be drawn solely based on allegations of corporate status.

      Nor have plaintiffs alleged proximate causation as necessary.  In Boim, the

Seventh Circuit held that the ATA's requirement that the injury be "by reason of" an act of

international terrorism means that a plaintiff must adequately allege proximate causation.[28]

Boim, 291 F.3d at 1011-12.  See also Holmes v. Sec. Investor Protection Corp., 503 U.S. 258,

265-68 (1992) (interpreting "by reason of" in the RICO statute).[29]  Adequate pleading of

proximate causation where a statute requires injury "by reason of" requires that the plaintiff

allege (a) a "direct relation between the injury asserted and the injurious conduct alleged," see

Holmes, 503 U.S. at 268, and (b) that defendant's conduct was "a substantial factor in the

sequence of responsible causation" and that the injury was "reasonably foreseeable" as a

consequence of that conduct.  See, e.g., Hecht v. Commerce Clearing House, Inc., 897 F.2d 21,

23-24 (2d Cir. 1990).  Yet plaintiffs have alleged no conduct of any kind by Mr. Bin Mahfouz,

and certainly no direct link between Mr. Bin Mahfouz and the events of September 11th.  The

allegations against Mr. Bin Mahfouz do not state a "direct relation" between him and plaintiffs'

injuries, do not state that his conduct was a "substantial factor in the sequence of responsible

---

[28]    Compare the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . .") with the ATA, 18 U.S.C. § 2333 ("Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor . . ."). The two statutes should be construed consistently. See Boim, 291 F.3d at 1011 (noting that "[t]he Supreme Court has interpreted identical language to require a showing of proximate cause"). See also, e.g., Greenwood Trust Co. v. Mass., 971 F.2d 818, 827 (1st Cir. 1992) ("when Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts should be interpreted the same way").

[29]    The transferor Court has held that the statutory language "by reason of" requires that the plaintiff adequately allege proximate causation to maintain standing. Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 100 (D.D.C. 2003). Thus, plaintiffs have no standing for this claim unless they have adequately alleged proximate causation. See also Holmes, 503 U.S. at 265-68; Boim, 291 F.3d at 1011-12.

causation," and do not state that the injuries were "reasonably foreseeable" as a result of his actions, all of which are required for the proximate causation necessary for an ATA claim.[30]  As plaintiffs have failed to allege proximate causation as a matter of law,[31] plaintiffs' allegations cannot support an ATA claim.

**B.      Plaintiffs fail to state an aiding and abetting or conspiracy ATA claim.**

The allegations against Mr. Bin Mahfouz are similarly inadequate to state a claim for aiding and abetting, which requires that the defendant not only perform a wrongful act that causes an injury but also "be generally aware of his role as part of an overall illegal or tortious activity," and "knowingly and substantially assist the principal violation." Burnett, 274 F. Supp. 2d at 104 (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)).  By the same token, the allegations against Mr. Bin Mahfouz are insufficient to state a claim for conspiracy liability under the ATA.[32] "The essence of conspiracy is an agreement." Halberstam, 705 F.2d at 479 (quotation omitted).  Plaintiffs have made no allegations at all as to Mr. Bin Mahfouz's knowledge, conduct, intent, or involvement with any agreement.  Absent allegations that Mr. Bin Mahfouz knew of or intended to aid in the commission of plaintiff's injuries, a claim against him for aiding and abetting or for conspiracy cannot stand.  See, e.g., Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998).  As plaintiffs have failed to adequately allege any ATA claim—

---

[30]      The ATCA, FSIA, and TVPA similarly all require a direct link between the alleged conduct and the injury. See, e.g., Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (ATCA claim rejected where plaintiffs failed to "directly link" defendant); Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (FSIA claim rejected where plaintiff failed to specifically link defendant's conduct); Carmichael v. United Tech. Corp., 835 F.2d 109, 115 (5th Cir. 1988) (ATCA claim dismissed where plaintiff could not "demonstrate any causal connection" between defendant's conduct and plaintiff's injury).

[31]      The generalized and conclusory allegations in the complaint that all defendants "jointly, severally and proximately caused" the September 11th attacks, 3AC ¶ 649, are inadequate.  See Mountain States Legal Found., 306 F.3d at 1134-35; Burnett, 274 F. Supp. 2d at 103.  The same is true for generalized and conclusory allegations that all defendants "aided and abetted" or "conspired," 3AC ¶¶ 686, 679.

[32]      Plaintiffs' conclusory and general allegations, addressed to all defendants, of "conspirational acts," 3AC ¶ 680, are obviously inadequate.  See supra p. 6 & n.12 (regarding inadequacy of legal conclusions cast as factual allegations).

direct, aiding and abetting, or conspiracy—the ATA claim against Mr. Bin Mahfouz must be dismissed.[33]

## VI. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ABDULRAHMAN BIN MAHFOUZ UNDER THE ALIEN TORT CLAIMS ACT, 28 U.S.C. SECTION 1350.

Under the ATCA, the Court has "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the Law of Nations or a treaty of the United States." Three elements must be adequately alleged to properly plead a claim: "(1) [A]n alien sues (2) for a tort (3) committed in violation of the law of nations." Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995); see also Filartiga v. Pena-Irala, 630 F.2d 876, 887 (2d Cir. 1980). Plaintiffs' ATCA claim against Mr. Bin Mahfouz satisfies none of these prerequisites.

First, the vast majority of named plaintiffs are not "aliens," as is required by the statute; rather, only a fraction—at last count, 198—are asserted to be foreign nationals. Irrespective of any other arguments, the ATCA claims of all non-foreign nationals must be dismissed.

However, the remaining requirements are also not met. The second "tort" requirement is not met because the allegations against Mr. Bin Mahfouz are plainly insufficient to state proper tort claims, for they rest on nothing more than Mr. Bin Mahfouz's alleged positions with Blessed Relief, Nimir and defendant National Commercial Bank. See Sections I & II, supra.

Third, the 3AC fails to "adequately plead a violation of international law" against Abdulrahman Bin Mahfouz. Plaintiffs nowhere allege that Mr. Bin Mahfouz ever knew,

---

[33]     It is not certain, moreover, that the 9/11 attack meets the ATA definition of "international terrorism" for purposes of civil liability. The only case analyzing the issue is Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D.N.Y. 2003), a default decision in which opposing views were not briefed. The court noted that "it is not self-evident that the events of September 11 fall within the statute's definition of 'international terrorism,'" and found so "mindful that an expansive interpretation of 'international terrorism' might render 'domestic terrorism' superfluous." 262 F. Supp. 2d at 221-22. The legislative history of the ATA suggests that it was designed to provide a civil remedy where none existed—i.e., for attacks outside the United States. See, e.g., H.R. Rep. 102-1040 at 5 (1992); 137 Cong. Rec. S4511-04 (daily ed. April 16, 1991); 136 Cong. Rec. S14279-01 (daily ed. Oct. 1, 1990). See also Boim, 291 F.3d at 1010 (ATA reflects congressional desire to extend liability to terrorism "that occurred in a foreign country"). The ATA's nationwide jurisdiction and service of process provisions, 18 U.S.C. §§ 2333(a), 2334(a), similarly imply that it was intended for acts committed abroad.

intended, or authorized the activities of Blessed Relief, Nimir and National Commercial Bank which allegedly assisted or facilitated terrorism.  There simply is nothing about his alleged relationships with these three institutions that can be said to "directly link" him to the tragedy of 9/11.  <u>Doe v. Islamic Salvation Front</u>, 257 F. Supp. 2d 115, 121 (D.D.C. 2003).  Nor is there any claim that he participated in any "egregious acts of misconduct."  <u>Bao Ge v. Li Peng</u>, 201 F. Supp. 2d 14, 22 n.5 (D.D.C. 2000) (citing <u>Kadic</u>, 70 F.3d at 241-44), <u>aff'd</u>, 2002 WL 1052012 (D.C. Cir. Mar. 1, 2002).[34]  The third jurisdictional prerequisite is missing from the 3AC.

Moreover, the plaintiffs do not and cannot assert a necessary element of the third condition—that he, a private individual, acted in the capacity of a government official or under the color of state law, or in conspiracy or in concert with the government of any nation.  <u>See, e.g.</u>, <u>Bigio v. Coca-Cola Co.</u>, 239 F.3d 440, 448 (2d Cir. 2000); <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 104 (2d Cir. 2000); <u>Sanchez-Espinoza v. Reagan</u>, 770 F.2d 202, 206-07 (D.C. Cir. 1985); <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774, 791-96, 807 (D.C. Cir. 1984) (Edwards & Bork, JJ., concurring); <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 244 F. Supp. 2d 289, 323-34 (S.D.N.Y. 2003); <u>Bao Ge</u>, 201 F. Supp. 2d at 20.[35]

In short, plaintiffs' ATCA claim against Mr. Bin Mahfouz fails as a matter of law and must be dismissed.

## VII.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ UNDER THE TORTURE VICTIM PROTECTION ACT, 28 U.S.C. SECTION 1350, NOTE.

The Torture Victim Protection Act ("TVPA") claim also fails as a matter of law, because it does not allege—as the statute explicitly requires—that the plaintiffs' injuries resulted from "torture" or "extrajudicial killing" done by Mr. Bin Mahfouz acting "under actual or apparent authority, or color of law of any foreign nation."  28 U.S.C. § 1350, note 2(a); <u>see also</u>

---

[34]    This conclusion finds further support in the legislative history of the TVPA.  <u>See</u> H.R. Rep. No. 102-36, pt. 1, at 5 (1991) (TVPA "does not attempt to deal with torture or killing by purely private groups").

[35]    Indeed, putting aside the "state-action" requirement, there simply is no allegation against Mr. Bin Mahfouz that he did <u>anything</u> "with knowledge of and intent to further violent acts, which must be a reasonably foreseeable result."  <u>Burnett</u>, 274 F. Supp. 2d at 106 (citing <u>Boim v. Holy Land Found.</u>, 291 F.3d 1000, 1011-12 (7th Cir. 2002)).

Bao Ge, 201 F. Supp. 2d at 23 (TVPA claim dismissed because private party not state actor).

Defendant Abdulrahman Bin Mahfouz hereby adopts and incorporates by reference the legal

argument regarding the TVPA advanced in the KBM Brief, at pp. 37-38.

## VIII.   PLAINTIFFS LACK STANDING TO BRING CLAIMS AGAINST MR. BIN MAHFOUZ FOR VIOLATION OF THE FEDERAL RICO STATUTE.

Counts 11 through 13 of the 3AC allege that the defendants violated the

Racketeer Influenced and Corrupt Organizations Act ("RICO").  The transferor court has already

held that plaintiffs lack standing to bring these claims.  See Burnett, 274 F. Supp. 2d at 102.

## IX.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ UNDER STATE LAW.

Each of plaintiffs' state law claims fails to state a claim on which relief may be

granted, and should accordingly be dismissed with prejudice.[36]

### A.   Plaintiffs' negligence claims must be dismissed for failure to allege a duty by Abdulrahman Bin Mahfouz to plaintiffs.

Plaintiffs' claims for negligence (count 6) and for negligent infliction of

emotional distress (count 8) fail as a matter of law, because plaintiffs have failed to allege any

duty that Mr. Bin Mahfouz owed to them.  The essence of a common-law negligence claim is

"the existence of a duty, the breach of which may be considered the proximate cause of the

damages suffered by" plaintiff.  Glusband v. Fittin Cunningham Lauzon, Inc., 582 F. Supp. 145,

152 (S.D.N.Y. 1984) (quoting Becker v. Schwartz, 413 N.Y.S.2d 895, 899 (N.Y. 1978)).

Without such a duty, "as a matter of law, no liability can ensue."  McCarthy v. Olin Corp., 119

F.3d 148, 156 (2d Cir. 1997) (quoting Gonzalez v. Pius, 525 N.Y.S.2d 868, 869 (2d Dep't

1988)); see also Steed Fin. LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272, 284 (S.D.N.Y.

2003) (dismissing negligence claim for failure to allege the existence of a duty).

---

[36]     In addition to the state law claims discussed below, plaintiffs also assert a claim for "survival" in Count 7. A survival claim is a derivative claim that depends on wrongful conduct and cannot stand on its own.  See, e.g., Corcoran v. New York Power Auth., 935 F. Supp. 376, 390 (S.D.N.Y. 1996) ("Since [a] survival action, after all, is essentially a decedent's personal injury lawsuit, this cause of action is dependent on the viability of [other] causes of action."); see also Blouin v. Spitzer, 213 F. Supp. 2d 184, 196-97 (N.D.N.Y. 2002) (listing negligence and intentional and/or reckless infliction of emotional and mental distress and anguish as "plaintiff's survival actions"). Because plaintiffs' survival claim is based on the same predicate acts as their wrongful death and other claims, it also fails as a matter of law.

Plaintiffs nowhere allege any specific duty of care owed by Mr. Bin Mahfouz to the plaintiffs. Instead, plaintiffs lump all defendants together in their three-sentence negligence claim and urge that "[a]ll Defendants were under a general duty not to injure, murder or cause to be injured or murdered, not to commit or sponsor criminal or tortious acts, endanger lives, foster terror and/or engage in activity that would foreseeably lead to the personal injury and/or death of Plaintiffs." 3AC ¶ 666. This asserted duty fails as a matter of law, as the transferor court already has found with respect to another defendant. See Burnett, 274 F. Supp. 2d at 108-09 (dismissing negligence claims against defendant AHIF). It is well-established that there is no general duty "to control the conduct of third persons to prevent them from causing injury to others." McCarthy, 119 F.3d at 156-57 (quoting Purdy v. Public Administrator of Cty of Westchester, 530 N.Y.S.2d 513, 516 (N.Y. 1988)). Rather, plaintiffs must allege a specific duty of care "and not some amorphous, free-floating duty to society." Campoverde v. Sony Pictures Entm't, No. 01-Civ.-7775, 2002 WL 31163804, at *14 (S.D.N.Y. Sept. 30, 2002) (quoting Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)). Nor may plaintiffs simply recast their intentional tort claims into alleged breaches of a duty not to commit that intentional tort: "New York courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'" Schmidt v. Bishop, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991); see also Messina v. Matarasso, 729 N.Y.S.2d 4, 7 (1st Dep't 2001) ("[A] lack of care does not convert the action from intentional tort to negligence" (quotation omitted)).

In short, plaintiffs have not alleged any specific legal duty that Mr. Bin Mahfouz assertedly owed to plaintiffs (or even suggested any relationship that might give rise to such a duty), and thus their negligence claims must be dismissed with prejudice.

**B.      Plaintiffs' intentional tort claims also must be dismissed.**

Plaintiffs have pleaded state law claims for wrongful death (Count 5) and intentional infliction of emotional distress (Count 8). Each fails as a matter of law.

To properly state a wrongful death claim, plaintiffs must establish that the defendant committed a wrongful, neglectful, or defaulting act that caused the decedent's death. See, e.g., Habrack v. Kupersmith, No. 87-Civ.-4712, 1988 WL 102037, at *2 (S.D.N.Y. Sept. 23,

23

1988) (citing Chong v. New York City Transit Auth., 441 N.Y.S.2d 24, 25-26 (2d Dep't 1981)).
It cannot be argued—and we do not understand plaintiffs to claim—that Mr. Bin Mahfouz
committed a wrongful act that directly caused any victim's death. While the September 11
attack itself certainly satisfies this element of the claim against the perpetrators of the attack, the
3AC does not allege that Mr. Mahfouz was in any way involved in the planning or execution of
that attack. New York law does not support a wrongful death claim against those who allegedly
simply created the conditions that allowed others to perpetrate the events at issue. See Jantzen v.
Leslie Edelman of N.Y., Inc., 614 N.Y.S.2d 744, 744-45 (2d Dep't 1994) (rejecting wrongful
death claim against defendant for selling a gun that was later used to kill plaintiff's decedent).
As such, this claim must be dismissed.

Similarly, a fundamental element of a properly-stated claim for intentional
infliction of emotional distress is "extreme and outrageous conduct." Campoverde, 2002 WL
31163804, at *11 (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)). It
"must transcend all bounds of decency and be regarded as atrocious and utterly intolerable in a
civilized community." Graham v. Guilderland Cent. Sch. Dist., 681 N.Y.S.2d 831, 832 (3d
Dep't 1998) (quotations omitted). No one can question that the September 11 attack itself
represents the height of such conduct. But plaintiffs' vague allegation that charities and business
entities (in which Mr. Bin Mahfouz allegedly held certain positions) served as "funnels" for
financing that attack says nothing about any conduct by Mr. Bin Mahfouz—let alone such
"atrocious and utterly intolerable" conduct by him as is necessary to support a claim for
intentional infliction of emotional distress. Graham, 681 N.Y.S.2d at 832.

Moreover, to state a claim for intentional infliction of emotional distress,
plaintiffs must plead that Mr. Bin Mahfouz's conduct was "intentionally directed at the plaintiff
. . . ." Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033, 1048 (S.D.N.Y. 1993)
(dismissing for failure to adequately plead specific intent). No such allegation appears in the
3AC, and thus plaintiffs' claim fails.

## CONCLUSION

For the foregoing reasons, Abdulrahman Bin Mahfouz respectfully requests that this Court dismiss the claims asserted against him in plaintiffs' Third Amended Complaint with prejudice, and that he be dismissed from this suit.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____

Gerald A. Feffer (GF2179)
Peter J. Kahn (PK3611)

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

March 19, 2004

25

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
                                          :
IN RE TERRORIST ATTACKS ON                :       03 MDL 1570 (RCC)
    SEPTEMBER 11, 2001.                    :
                                          :
------------------------------------------------------X
                                          :
THOMAS BURNETT, SR., et al.,              :
                                          :       Civil Action 03 Civ. 9849 (RCC)
        Plaintiffs,                        :
                                          :
        v.                                 :
                                          :
AL BARAKA INVESTMENT                       :
    & DEVELOPMENT CORP., et al.,          :
                                          :
        Defendants.                        :
------------------------------------------------------X
```

[PROPOSED] ORDER GRANTING DEFENDANT
ABDULRAHMAN BIN MAHFOUZ'S
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT
WITH PREJUDICE

This matter is before the Court upon the Motion of Defendant Abdulrahman Bin

Mahfouz for an Order dismissing the claims asserted against him in Plaintiffs' Third Amended

Complaint with prejudice.

It is hereby **ORDERED** that the Defendant's Motion to Dismiss be and hereby is

**GRANTED**; and

It is **FURTHER ORDERED** that Defendant Abdulrahman Bin Mahfouz is

dismissed from this action with prejudice.

**DONE AND ORDERED** on this _____ day of _____, 2004.


_____
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and served using

the Court's ECF system, and also served upon the following in the manner specified, on the 19th

day of March, 2004.

Via Federal Express & Facsimile

| | |
|---|---|
| Harry Huge<br>**HARRY HUGE LAW FIRM LLP**<br>1001 Pennsylvania Avenue, N.W.<br>7th Floor<br>Washington, D.C.  20004<br>(843) 720-8794 | Ronald L. Motley<br>**MOTLEY RICE LLC**<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC  29465<br>(843) 216-9450 |
| James P. Kreindler<br>**KREINDLER & KREINDLER**<br>100 Park Avenue<br>18th Floor<br>New York, NY  10017-5590<br>(212) 687-8181 | Jayne H. Conroy<br>**HANLY & CONROY LLP**<br>415 Madison Avenue<br>15th Floor<br>New York, NY  10017<br>(212) 401-7618 |

Via Facsimile

| | |
|---|---|
| Roger C. Simmons, Esquire<br>Victor E. Cretella, III, Esquire<br>**GORDON & SIMMONS, LLC**<br>131 West Patrick Street<br>P.O. Box 430<br>Frederick, MD  21705-0430<br>(301) 698-0392 | Martin F. McMahon, Esquire<br>Christopher Smith, Esquire<br>**MARTIN F. McMAHON & ASSOCIATES**<br>1150 Connecticut Avenue, N.W., Suite 900<br>Washington, DC  20036<br>(202) 828-4130 |
| **Allan Gerson, Esquire**<br>4221 Lenore Lane, N.W.<br>Washington, DC  20008<br>(202) 966-8557 | Lynne A. Bernabei, Esquire<br>Alan R. Kabat, Esquire<br>**BERNABEI & KATZ, PLLC**<br>1773 T Street, N.W.<br>Washington, DC  20009-7139<br>(202) 745-2627 |
| Jack D. Cordray, Esquire<br>**CORDRAY LAW FIRM**<br>40 Calhoun Street, Suite 420<br>Post Office Drawer 22857<br>Charleston, SC  29413-2857<br>(843) 853-6330 | Christopher M. Curran, Esquire<br>Nicole E. Erb, Esquire<br>**WHITE & CASE, LLP**<br>601 13th Street, N.W.<br>Washington, DC  20005-3807<br>(202) 639-9355 |

| | |
|---|---|
| Clare M. Sproule, Esquire<br>**EPSTEIN BECKER & GREEN, P.C.**<br>250 Park Avenue<br>New York, NY  10177-1211<br>(212) 661-0989 | Tim McCarthy, Esquire<br>James J. McGuire, Esquire<br>**WHITE & CASE, LLP**<br>1155 Avenue of the Americas<br>New York, NY  10036-2787<br>(212) 354-8113 |
| Kenneth N. Sacks, Esquire<br>**SACKS & SACKS LLP**<br>150 Broadway<br>New York, NY  10038<br>(212) 349-2141 | Maher H. Hanania, Esquire<br>**HANANIA, KHEDER & NAWASH**<br>6066 Leesburg Pike, Suite 101<br>Falls Church, VA  22041<br>(703) 778-2407 |
| Gary O. Galiher, Esquire<br>**GALIHER, DeROBERTIS, NAKAMURA,<br>ONO & TAKITANI**<br>610 Ward Avenue, Suite 200<br>Honolulu, HI  96814<br>(808) 591-2608 | Nancy Luque, Esquire<br>Donna Sheinbach, Esquire<br>**GRAY CARY WARE & FREIDENRICH<br>LLP**<br>1625 Massachusetts Avenue, N.W., Suite 300<br>Washington, DC  20036<br>(202) 238-7701 |
| Robert Conason, Esquire<br>Howard Hershenhorn, Esquire<br>**GAIR, GAIR, CONASON, STEIGMAN &<br>MACKAUF**<br>80 Pine Street<br>New York, NY  10005<br>(212) 425-7513 | Deborah S. Burstein, Esquire<br>Richard T. Marooney, Esquire<br>Jeannette M. Viggiano, Esquire<br>**KING & SPALDING LLP**<br>1185 Avenue of the Americas<br>New York, NY  10036<br>(212) 556-2222 |
| Vincent F. Pitta, Esquire<br>**PRYOR CASHMAN SHERMAN &<br>FLYNN LLP**<br>410 Park Avenue, 10th Floor<br>New York, New York 10022<br>(212) 326-0806 | Michael Nussbaum, Esquire<br>**BONNER, KIERNAN, TREBACH AND<br>CROCIATA**<br>1250 Eye Street, N.W.<br>Washington, DC  20005<br>(202) 712-7100 |
| Michael N. Block, Esquire<br>Edward Marcowitz, Esquire<br>Andrew Carboy, Esquire<br>**SULLIVAN, PAPAIN, BLOCK,<br>McGRATH & CANNAVO, P.C.**<br>120 Broadway Avenue, 18th Floor<br>New York, NY  10271<br>(212) 266-4141 | Michael Hadeed, Jr., Esquire<br>**BECKER, HADEED, KELLOGG &<br>BERRY**<br>5501 Backlick Road, Suite 220<br>Springfield, VA  22151<br>(703) 256-5431 |

| | |
|---|---|
| Anthony M. Sellitto, Jr., Esquire<br>**OLIVER & SELLITTO**<br>205 Bond Street<br>Asbury Park, NJ  07712<br>(732) 775-7404 | Casey Cooper, Esquire<br>William H. Jeffress, Jr., Esquire<br>Jamie Kilberg, Esquire<br>Sara Kropf, Esquire<br>**BAKER BOTTS LLP**<br>The Warner<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC  20004-2400<br>(202) 639-7890 |
| Samuel L. Davis, Esquire<br>**DAVIS, SAPERSTEIN & SALOMON, P.C.**<br>375 Cedar Lane<br>Teaneck, NJ  07666<br>(201) 692-0444 | David P. Donovan, Esquire<br>**WILMER CUTLER PICKERING LLP**<br>1600 Tysons Boulevard, 10th Floor<br>McLean, VA  22102<br>(703) 251-9797 |
| Guy Molinari, Esquire<br>John D'Amato, Esquire<br>**RUSSO, SCAMARDELLA & D'AMATO, P.C.**<br>1010 Forest Avenue<br>Staten Island, NY  10310<br>(718) 816-8037 | Louis R. Cohen, Esquire<br>Shirley Woodward, Esquire<br>**WILMER CUTLER PICKERING LLP**<br>2445 M Street, N.W.<br>Washington, DC  20037<br>(202) 663-6363 |
| Sanford A. Rubenstein, Esquire<br>**RUBENSTEIN & RYNECKI**<br>16 Court Street, Suite 1717<br>Brooklyn, NY  11241<br>(718) 522-3804 | Matthew Previn, Esquire<br>**WILMER CUTLER PICKERING LLP**<br>399 Park Avenue<br>New York, NY  10022<br>(212) 230-8888 |
| Edward D. Robertson, Esquire<br>Mary Winter, Esquire<br>**BARTIMUS, FRICKLETON, ROBERTSON & OBETZ**<br>200 Madison Avenue, Suite 1000<br>Jefferson City, MO  65101<br>(573) 659-4460 | Wilmer Parker, III, Esquire<br>**GILLEN PARKER & WITHERS LLC**<br>One Securities Centre, Suite 1050<br>3490 Piedmont Road, NE<br>Atlanta, GA  30305-1743<br>(404) 842-9750 |
| Matthew H. Kirtland, Esquire<br>**FULBRIGHT & JAWORSKI, LLP**<br>801 Pennsylvania Avenue, N.W.<br>Washington, DC  20004<br>(202) 662-4643 | David C. Frederick, Esquire<br>Michael J. Guzman, Esquire<br>Mark C. Hansen, Esquire<br>Michael K. Kellogg, Esquire<br>J.C. Rozendaal, Esquire<br>**KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C.**<br>1615 M Street, N.W., Suite 400<br>Sumner Square<br>Washington, DC  20036-3209<br>(202) 326-7999 |

| | |
|---|---|
| Stephen J. Brogan, Esquire<br>Timothy J. Finn, Esquire<br>James E. Gauch, Esquire<br>Michael P. Gurdak, Esquire<br>Jonathan C. Rose, Esquire<br>Michael Shumaker, Esquire<br>Jennifer Shumaker, Esquire<br>Melissa Stear, Esquire<br>**JONES DAY**<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20001<br>(202) 626-1700 | Stanton D. Anderson, Esquire<br>Thomas P. Steindler, Esquire<br>**McDERMOTT, WILL & EMERY**<br>600 13th Street, N.W.<br>Washington, DC  20005-3096<br>(202) 756-8087 |
| Ronald S. Liebman, Esquire<br>Mitchell Berger, Esquire<br>**PATTON BOGGS LLP**<br>2550 M Street, N.W.<br>Washington, DC  20037<br>(202) 457-6315 | E. Michael Bradley, Esquire<br>Geoffrey S. Stewart, Esquire<br>**JONES DAY**<br>222 East 41st Street<br>New York, NY  10017-6702<br>(212) 755-7306 |
| Christopher T. Lutz, Esquire<br>**STEPTOE & JOHNSON L.L.P.**<br>1330 Connecticut Avenue, N.W.<br>Washington, DC  20036<br>(202) 429-3902 | Brian H. Polovoy, Esquire<br>Daniel M. Segal, Esquire<br>Henry Weisburg, Esquire<br>**SHEARMAN & STERLING LLP**<br>599 Lexington Avenue<br>New York, NY  10022-6069<br>(212) 848-7179 |
| John C. Millian, Esquire<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036<br>(202) 530-9566 | Joshua L. Dratel, Esquire<br>Marshall A. Mintz, Esquire<br>**JOSHUA L. DRATEL, P.C.**<br>14 Wall Street, 28th Floor<br>New York, NY  10005<br>(212) 571-6341 |
| David Jaroslawicz, Esquire<br>**JAROSLAWICZ & JAROS, ESQUIRES**<br>150 William Street<br>New York, NY  10038<br>(212) 227-5090 | Brian A. Coleman, Esquire<br>Michael J. McManus, Esquire<br>**DRINKLER BIDDLE & REATH LLP**<br>1500 K Street, N.W., Suite 1100<br>Washington, DC  20005-1209<br>(202) 842-8465 |
| Aaron J. Broder, Esquire<br>Jonathan C. Reiter, Esquire<br>**BRODER & REITER**<br>350 Fifth Avenue, Suite 2811<br>New York, NY  10118<br>(212) 268-5297 | Michael Barasch, Esquire<br>James P. McGarry, Esquire<br>**BARASCH McGARRY SALZMAN<br>PENSON & LIM**<br>11 Park Place<br>New York, NY  10007<br>(212) 385-7845 |

| | |
|---|---|
| Frank H. Granito, III, Esquire<br>Kenneth P. Nolan, Esquire<br>Jeanne M. O'Grady<br>John F. Schutty<br>**SPEISER, KRAUSE, NOLAN &<br>    GRANITO**<br>140 East 45th Street, 34th Floor<br>New York, NY 10017<br>(212) 953-6483 | **J. David O'Brien, Esquire**<br>20 Vesey Street, Suite 700<br>New York, NY 10007<br>(212) 571-6166 |
| Michael F. Baumeister, Esquire<br>Thea M. Capone, Esquire<br>Douglas A. Latto, Esquire<br>**BAUMEISTER & SAMUELS, PC**<br>One Exchange Place, 15th Floor<br>New York, NY 10006-3008<br>(212) 363-1346 | Paul J. Orfanedes, Esquire<br>James F. Peterson, Esquire<br>Larry Klayman, Esquire<br>**JUDICIAL WATCH, INC.**<br>501 School Street, N.W., Suite 500<br>Washington, DC 20024<br>(202) 646-5199 |
| Floyd Wisner, Esquire<br>**NOLAN LAW GROUP**<br>20 North Clark Street, 30th Floor<br>Chicago, IL 60602<br>(312) 630-4011 | **THE IRAQI INTEREST SECTION**<br>c/o The Algerian Embassy<br>2137 Wyoming Avenue, N.W.<br>Washington, DC 20008<br>(202) 667-2174 |
| Thomas E. Mellon, Jr., Esquire<br>Stephen Corr, Esquire<br>Jack Corr, Esquire<br>**MELLON WEBSTER & SHELLY**<br>87 North Broad Street<br>Doylestown, PA 18901<br>(215) 348-0171 | **THE IRANIAN INTEREST SECTION**<br>c/o The Embassy of Pakistan<br>3517 International Court, N.W.<br>Washington, DC 20008<br>(202) 686-1534 |
| Amy Ficklin DeBrota, Esquire<br>William Riley, Esquire<br>**YOUNG RILEY DUDLEY & DeBROTA<br>    LLP**<br>3815 River Crossing Parkway, Suite 340<br>Indianapolis, IN 46240<br>(317) 848-7831 | Richard D. Hailey, Esquire<br>**RAMEY & HAILEY**<br>3815 River Crossing Parkway, Suite 340<br>Indianapolis, IN 46240<br>(317) 848-3259 |
| Robert D. Brain, Esquire<br>Don Howarth, Esquire<br>Suzelle M. Smith, Esquire<br>**HOWARTH & SMITH**<br>800 Wilshire Boulevard, Suite 700<br>Los Angeles, CA 90017<br>(213) 622-0791 | D. Richard Burbidge, Esquire<br>**BURBIDGE and MITCHELL**<br>139 East South Temple, Suite 2001<br>Salt Lake City, UT 84111<br>(801) 355-2341 |

| | |
|---|---|
| J.D. Lee, Esquire<br>David Lee, Esquire<br>**LEE LEE & LEE**<br>422 S. Gay Street<br>Knoxville, TN  37902<br>(865) 544-0536 | Edward H. Rubenstone, Esquire<br>**LAMM, RUBENSTONE, TOTARO &**<br>**DAVID, LLC**<br>4 Greenwood Square, Suite 200<br>P.O. Box 8544<br>Bensalem, PA  19020-8544<br>(215) 638-2867 |
| Donald J. Winder, Esquire<br>**WINDER & HASLAM P.C.**<br>175 West 200 South, Suite 4000<br>P.O. Box 2668<br>Salt Lake City, UT  84111-2668<br>(801) 322-2282 | Sean P. Carter, Esquire<br>Stephen A. Cozen, Esquire<br>Elliott R. Feldman, Esquire<br>Lisa Haas, Esquire<br>John M. Popilock, Esquire<br>J. Scott Tarbutton, Esquire<br>**COZEN O'CONNOR**<br>1900 Market Street<br>Philadelphia, PA  19103<br>(215) 665-2013 |
| Matthew G. Ash, Esquire<br>**COZEN O'CONNOR**<br>1667 K Street, N.W., Suite 500<br>Washington, DC  20006<br>(202) 912-4830 | James M. Cole, Esquire<br>**BRYAN CAVE, LLP**<br>700 Thirteenth Street N.W.<br>Washington, DC  20005-3960<br>(202) 508-6200 |
| Michael J. Sommi, Esquire<br>**COZEN O'CONNOR**<br>45 Broadway Atrium, Suite 1600<br>New York, NY  10006<br>(212) 509-9492 | Nancy H. Dutton, Esquire<br>**DUTTON & DUTTON, PC**<br>5017 Tilden Street, N.W.<br>Washington, DC  20016<br>(202) 966-6621 |
| Matthew S. Dontzin, Esquire<br>**THE DONTZIN LAW FIRM**<br>6 East 81st Street<br>New York, NY  10028<br>(212) 717-8088 | |