**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 1570 (RCC)** |
| This document relates to: | |
| KATHLEEN ASHTON, et al, Plaintiffs v. AL-QAEDA ISLAMIC ARMY, et al., Defendants | **02 CV 6977** |

**MEMORANDUM OF DEFENDANTS SALEH ABDULLAH KAMEL
AND AL BARAKA INVESTMENT & DEVELOPMENT CORPORATION
IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM
FOR WHICH RELIEF CAN BE GRANTED**

Martin McMahon & Associates
1150 Connecticut Ave., NW
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorneys for Defendants
Saleh Abdullah Kamel and
Al Baraka Investment &
Development Corp.*

## TABLE OF CONTENTS

**Page Number**

Table of Contents                                                          i

Table of Authorities                                                       ii

I.      INTRODUCTION                                                        1

II.     THE BASES FOR FED. R. CIV.
        P. 12 (b) (1) (6) RELIEF                                            1

III.    THE PLAINTIFFS ALLEGE THAT
        INDIVIDUAL DEFENDANT KAMEL AND THE
        ABIDC HOLDING COMPANY HAVE MADE
        NUMEROUS INVESTMENTS WITHIN AND
        OUTSIDE THE ISLAMIC BANKING SYSTEM                                 4

IV.     THESE ALLEGATIONS WARRANT DISMISSAL OF
        THE ASHTON AND BURNETT COMPLAINTS UNDER
        FED. R. CIV. P. 12(b)(6). BLANKET CONCLUSORY
        LEGAL ALLEGATIONS, OF WHICH THERE ARE MANY,
        CANNOT SAVE THESE COMPLAINTS                                       7

V.      LACK OF SUBJECT MATTER JURISDICTION IS A
        SEPARATE AND DISTINCT ALTERNATIVE BASIS
        FOR DISMISSING DEFENDANTS KAMEL AND ABIDC                          15

CONCLUSION                                                                 21

## <u>TABLE OF AUTHORITIES</u>

**Page Number**

**Cases:**

**<u>*Federal Cases:*</u>**

<u>Atuahene v. City of Hartford</u>, 10 Fed. Appx. 33 (2d. Cir. 2001)                    8

<u>Berkey v. Third Avenue Railroad Co.</u>, 244 N.Y. 84 (1926)                    10

<u>Boim v. Quranic Literacy Institute & H.L.F.</u>, 291 F.3d 1000
(7th. Cir. 2002)                                                                17

<u>Browning v. Clinton</u>, 292 F. 3d 235 (D.C. Cir. 2002)                    9

<u>Burnett v. Al-Baraka et al</u>, 272 F.Supp. 2d 86 (D.D.C. 2003)                    1, 10

<u>City of Philadelphia v. Beratta U.S. A. Corp.</u>, 277 F.3d 415
(3d.Cir. 2002)                                                                9

<u>Consolidated Gold Fields PLC v. Minorco, S.A.</u>, 871 F.2d
(2d. Cir.1989)                                                                18

<u>Day v. D.C. Dept. of Consumer & Regulatory Affairs</u>,
191 F.Supp.2d 154 (D.C.C. 2002)                                                11

<u>DiPonzio v. Riordan</u>, 89 N.Y. 2d 578 (1997)                    9, 19

<u>Dwares v. City of New York</u>, 985 F.2d 94 (2d. Cir. 1993)                    7, 13

<u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763
(2d. Cir. 1994)                                                                12

<u>Gaines-Tabb v. ICI Explosives USA Inc.</u>, 995 F. Supp.1304
(D. Okla. 1996)                                                                9

<u>Galeri Gmurzynka v. Hutton</u>, 257 F. Supp. 2d 621 (S.D.N.Y. 2003)                    9

<u>Gauvin v.Trembatore</u>, 682 F.Supp. 1067 (N.D. Cal. 1988)                    8

<u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>,
185 F.Supp.2d 9 (D.D.C. 2001)                                                15

<u>Hartford Fire Insurance Co. v. California</u>, 509 U.S. 764 (1993)                    15

<u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258 (1992)                    17

<u>Moore v. Johnson</u>, 826 F.Supp. 2d 1106 (W.D. Mich. 1993)      11

<u>Munz v. Parr</u>, 758 F.2d 1254 (8th Cir. 1985)      13

<u>North South Finance Corp. v. Al- Turki</u>, 100 F.3d 1046
(2d Cir. 1996)      18

<u>Papasan v. Allain</u>, 478 U.S. 265 (1986)      7, 8, 13

<u>Republic of Argentina v. Weltover</u>, 504 U.S. 607 (1992)      18

<u>Schenker v. Assicurazioni Genereali S.p.A., Consol.</u>,
No. 98 Civ 9186, 2002 WL 560788 (S.D.N.Y. July 15, 2002)      8

<u>Tasso v. Platinum Guild Int'l.</u>, 1997 WL 16066
(S.D.N.Y. January 16, 1997)      14

<u>Timberlane Lumber Co. v. Bank of America</u>, 749 F.2d 1378
(9th Cir. 1984)      20

<u>Ungar v. Islamic Republic of Iran</u>, 211 F. Supp. 2d 91
(D.D.C. 2002)      2

<u>W.E. Media Inc. v. General Electric Co.</u>, 218 F.Supp.2d 463
(S.D.N.Y. 2002)      10

***Federal Statutes and Rules:***

18 U.S.C § 2333      15

Fed.R.Civ.P. 8 (a)      8

Fed. R. Civ. P. 12(b)(1)      1, 2, 4, 11, 12, 14, 15, 19, 20

Fed. R. Civ. P. 12(b)(6)      1, 2, 4, 11, 12, 14, 15, 19, 20

***Secondary Sources:***

*Restatement (Third) Foreign Relations* § 403 (1986).      15

<u>INTRODUCTION:</u>

May it please the Court, Defendants Saleh K. Kamel ["Defendant Kamel"] and Al-Baraka Investment and Development Corp. ["Defendant ABIDC"] have already moved to dismiss the <u>Burnett v. Al Baraka Investment & Development Corp</u>. litigation, CA No. 02-1616 [JR] which was pending in the District of Columbia before the Honorable James Robertson. The motion had been fully briefed and oral argument had been scheduled for December 16, 2003 but due to the Order from the Multi-District Panel, the motion now comes before this Court for oral argument and disposition.

In moving to dismiss the <u>Burnett</u> complaint under both Fed. R. Civ. P. 12 (b) (1) and (6), Defendants Kamel and ABIDC extensively briefed two separate doctrines of law and addressed, <u>ad</u> <u>seriatim</u>, each and every cause of action contained therein and the basis for dismissing the same. Since the allegations made against these Defendants and the causes of action contained in the <u>Ashton</u> complaint are virtual mirror images of those contained in the <u>Burnett</u> litigation, Defendants Kamel and ABIDC will file herein a summary version of the memorandum of law filed in <u>Burnett</u>.

<u>II. THE BASES FOR FED. R. CIV. P. 12 (b) (1) (6) RELIEF:</u>

As noted above, these Defendants extensively briefed two separate doctrines of law. First, based on the non-specific and conclusory allegations that were pled in the <u>Burnett</u> complaint [virtually identical to those pled in the <u>Ashton</u> complaint], the Court did not have the requisite "subject matter jurisdiction" to hear the claims made against Defendants Kamel and ABIDC. The argument was limited and specific as to these Defendants only; they have never argued that the Court lacked "subject matter jurisdiction" to hear claims with respect to other parties whom the allegations may show have a substantial and direct relationship to the September 11, 2001 attack.

The second argument advanced was that, even if the Court afforded the Plaintiffs all permissible inferences at this procedural stage, the complaint failed to state a viable cause of action against either Defendant. The reason for a bi-furcated motion, premised on Fed. R. Civ. P. 12 (b) (1) and (6), is that federal courts have recognized that the absence of causation may be both a jurisdictional, as well as a liability issue, Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 98 (D.D.C. 2002).

One example from the pleadings [Burnett, para.58], Ashton para.594] which is illustrative of the over-lapping nature of these legal doctrines is that Defendants Kamel and ABIDC in 1983 invested in a bank, known as Al Shamal Bank, which entity allegedly had a questionable transaction moving through it. Based on the "subject matter jurisdiction" doctrine, the Defendants have argued that, assuming arguendo the truth of this allegation, this extraterritorial [occurring outside of the U.S.A.] investment activity did not have a direct and forseeable effect on the U.S. nationals complaining herein, i.e, the 9/11 victims.

The flip side of this argument is that the Plaintiff's injuries were not the direct, forseeable and substantial effect of said investment activity on behalf of Defendants Kamel and ABIDC. Under each approach, since the injuries at bar are not the "immediate consequence" or the reasonably forseeable consequence of said investment activity, it is unreasonable for the Court to exercise subject matter jurisdiction and proceed to adjudicate the claims against Defendants Kamel and ABIDC.

Two significant factors bear on the "unreasonable" analysis. The alleged "investment activity" **were investments in businesses outside the U.S.A. which were all made between 1969 and 1984, except for an investment made in 1991.** And, the

injuries occurred anywhere from **ten to thirty years later** on September 11th, 2001. Thus, the investment activity is too remote in time, place and circumstances from the 9/11 tragedy and dismissal for lack of subject matter jurisdiction is appropriate.

For similar reasons, but based on Fed. R.Civ.P. 12 (b) (6), the complaints before this Court should also be dismissed because they fail to state a claim for which relief can be granted against Defendants Kamel and ABDIC. Neither complaint contains specific, non-conclusory factual allegations showing that the alleged activities of these Defendants were the proximate cause of or a substantial factor leading to the Plaintiff's injuries. There is no allegation, e.g., that in January 2001, Defendant Kamel paid co-Defendant and hijacker Atta or his aviation school $1,700 to finance his flight training.

Finally, the Defendants did not have the benefit of a decision rendered by Judge Robertson last year [Slip Opinion dated July 25, 2003, 274 F. Supp. 2d 86 (D.D.C. 2003)] in initially moving for dismissal and that opinion bears significantly on the instant motions. In fact, based on the law of the case doctrine stemming from Judge Robertson's "funnel" analysis contained therein, it is respectfully submitted that each complaint fails, at least as to Defendants Kamel and ABIDC, as a matter of law, entirely apart from the Fed. R. Civ. P. 12 (b) (1) and (6) analyses on which the instant motions are premised.

Judge Robertson opined therein that except for a general conclusory allegation made against all **Bank Defendants,** [neither Defendant Kamel nor Defendant ABIDC are "banks"] the Burnett complaint was deficient since the particular bank [Al Rajhi] "is alleged only to be the funnel. **Plaintiffs offer no support and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking services"** [emphasis added] 274 F. Supp 2d at 109.

This holding that a "funnel" cannot be held responsible for the 9/11 tragedy makes the instant motions to dismiss more compelling. First, there is no allegation that either of these Defendants are "banks", so they cannot be deemed to be "funnels". Moreover, as pled by the Plaintiffs, these Defendants are, at most, "investors" in "funnels"!

**Query:** if it is the "law of the case" that a bank/funnel cannot be held responsible for the 9/11 tragedy, how can a shareholder or "investor" in a "funnel" be held responsible? It is respectfully submitted that is a threshold question that this Court should have the Plaintiffs address before hearing them on the merits of the Fed. R. Civ. P. 12 (b) (1) and (6) motions.

### III. THE PLAINTIFFS ALLEGE THAT INDIVIDUAL DEFENDANT KAMEL AND THE ABIDC HOLDING COMPANY HAVE MADE NUMEROUS INVESTMENTS WITHIN AND OUTSIDE THE ISLAMIC BANKING SYSTEM

Individual Defendant Kamel, according to the instant complaints [Burnett, paras. 51,58///Ashton, paras. 587, 594]: (a) founded Dallah Albaraka Group, LLC in 1969 after serving as an advisor to the Saudi Minister of Finance; (b) was very successful as a promoter of the Islamic banking system; and (c) in 1983 was a founding member of Al Shamal Islamic Bank. Other allegations are recited but are irrelevant - where and when he was born, that he is the father of one Abdullah Kamel and that he invested in an entity known as the Middle East Broadcasting Corporation.

As is quite clear, there are no allegations that Defendant Kamel: (a) was or is a bank [a/k/a "a funnel"] ; and (b) provided banking services. We represent to the Court that if these allegations had been advanced and were the subject of the instant motions, they would be false.

4

More allegations have been made in the instant complaints against the holding company - ABIDC, but in essence they are that the company has made numerous investments in various financial enterprises, primarily based in the Middle East. These allegations, like those made against Defendant Kamel, are completely devoid of factual linkage to the 9/11 tragedy.

While the name Osama bin Laden is mentioned [once in a substantive context], it is the year 1983. This was a time when the Central Intelligence Agency was pumping millions of dollars into Afghanistan to fight America's and Saudi Arabia's mutual enemy, the Soviet Union, by arming the "freedom fighters", as President Reagan called them. More importantly, that alleged assistance was provided six years before Al Qaeda was founded [Ashton, paras. 33,34] and eight years before Osama bin Laden moved to the Sudan [Ashton, para.47], where allegedly he was receiving such assistance.

The allegations are that:

(1) ABIDC has 43 subsidiaries; that it is itself a subsidiary of Dallah Albaraka Group; and that its banks are known as "al Baraka Bank" [Burnett, para. 47///Ashton, para. 583];

(2) in 1983 ABIDC provided Osama Bin Laden with financial infrastructures in Sudan by allowing a bank to be used by a suspect charity [Al-Haramain], which allegedly maintained bank accounts at an al Baraka bank in Saudi Arabia [Burnett, para. 49///Ashton, para. 585];

(3) ABIDC "is mostly present in the Sudanese banking sector through assets held" in the form of various al Baraka banks, whose names are recited; and "Al Baraka is also affiliated with National Development Bank in Sudan" [Burnett, para. 50///Ashton, para. 586];

(4) "Al Shamal Bank was founded in 1983 by three individuals or entities...a Sudanese company...Defendant Saleh Kamel... and the Sudanese government of the Northern State" [Burnett, para. 72///Ashton, paras. 85, 594];

(5) "Al Baraka provided support to the "charity" al Haramain operations and helped tranfer funds for Osama bin Laden as reported by the Bosnia Intelligence Agency". The specific allegation made against ABIDC is that "records show a flow of money [into the charity's account] sent from Saudi Arabia via the Deutsch Bank and the Al Baraka Bank in Turkey" [Burnett para. 598///Ashton, para. 598]; and,

(6) "Al Baraka Turkish Finance House, an al Baraka branch in Turkey, is a subsidiary of Dallah al Baraka Group LLC [<u>Burnett</u>, para. 63///<u>Ashton</u>, para. 599].

As the Court can observe, there are no allegations that ABIDC provides "banking services" or that the holding company is a "bank". We similarly represent to the Court that if such allegations were the object of the instant motions to dismiss, they would be false. In short, ABIDC is exactly what the Plaintiffs allege it to be - a holding company investment vehicle in the financial services sector for Dallah Albaraka Group, LLC, ["DACLLC"], its parent holding company.

For the Court's edification, DACLLC has been named in the <u>Ashton</u> case only, had not been served until very recently and has not yet responded to the <u>Ashton</u> complaint. The allegations made against DACLLC are as follows:

(1) DACLLC is "a diversified conglomerate based in Jeddah...involved in various industries, services and financial activities. [It] includes twenty-three banks in Arab and Islamic countries, in addition to several investment and financial companies" [<u>Burnett</u>, para. 52///<u>Ashton</u>, para. 588];

(2) DACLLC's "portfolio includes a wholly owned subsidiary specializing in aviation services, Dallah Avco Trans-Arabia Co. Ltd. The company was formed in 1975 and is based in Jeddah, Saudi Arabia [<u>Burnett</u>, para. 53///<u>Ashton</u>, para. 589];

(3) DACLLC's "financial arm is al Baraka Investment & Development ... a wholly owned subsidiary based in Jeddah, Saudi Arabia [<u>Burnett</u>, para. 57///<u>Ashton</u>, para. 593]; and

(4) "The practice and policy of DACLLC and al Baraka Bank is to provide financial support and material assistance to international terrorist organizations including al Qaeda [<u>Burnett</u>, para. 59///<u>Ashton</u>, para. 595].

It is only this last allegation that warrants scrutiny. As shown <u>infra</u>., part IV, however, such a conclusory "practice and policy" allegation is legally immaterial, see <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d. Cir. 1993) ["mere assertion that [an

entity] ... has such a custom or policy is insufficient in the absence of allegations of fact...".

## IV. THESE ALLEGATIONS WARRANT DISMISSAL OF THE ASHTON AND BURNETT COMPLAINTS UNDER FED. R. CIV. P. 12 (B) (6). BLANKET CONCLUSORY LEGAL ALLEGATIONS, OF WHICH THERE ARE MANY, CANNOT SAVE THESE COMPLAINTS

**Individual Defendant Kamel:** as recited in part III, the allegations made against Defendant Kamel is that he has major investments in the Islamic banking system. This broad investment allegation is legally insufficient. It is hornbook law that a Court hearing a 12 (b) (6) motion is "not bound to accept as true a legal conclusion couched as a factual allegation" Papasan v. Allain, 478 U.S. 265, 286 (1986). The legal conclusion that the Plaintiffs are advancing in their argument that Defendant Kamel [like "all defendants"] has and is supporting international terrorism is that if you invest in an Islamic bank, you have per se "supported terrorism".

The only other allegations made against Defendant Kamel [and this is the major deficiency that each of the instant complaints suffer from] are the conclusory legal allegations applicable to "all defendants". For example, in paragraph five of the Ashton complaint, it is alleged that all Defendants "knowingly conspired, planned, financed, supported, executed and carried out a plan to murder, maim and injure U.S. citizens...on September 11, 2002".

Similarly, all "co-conspirator sponsor defendants...raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda" [Ashton, para. 23]. And, "many of [Bin Laden's/al Qaeda's] co-defendants unlawfully, wilfully and knowingly combined, conspired, confederated and agreed to murder and injure U.S. citizens..." [Ashton, para. 46].

7

While these allegations are sensational in nature, they are legally insufficient as a matter of law. First, this type of "group" allegation has been consistently rejected by our courts because it fails to meet even the liberal notice pleading requirements of Fed.R.Civ.P. 8 (a), to wit: "By lumping all defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [the] minimum standard [under Rule 8]" Atuahene v. City of Hartford, 10 Fed. Appx. 33,34 (2d. Cir. 2001); see also Gauvin v. Trembatore, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988), rejecting a similar complaint where all of the defendants were "lumped together in a similar broad allegations".

Secondly, as a cursory review of each complaint would reveal, nowhere is it alleged that Defendant Kamel or Defendant ABIDC ever planned or conspired with anyone, let alone Bin Laden or al Qaeda. Nor is it alleged that either defendant laundered or hid money for them. More particularly, and as an example of a relevant time frame, vis-a-vis the year 1983, there is no allegation that in January, 2001 Defendants Kamel or ABIDC gave the hijackers monies to finance their aviation lessons or their prepatory reconnaissance passenger flights to and from various American cities.

Similar naked, non-individual specific and conclusory allegations of conspiracy were cited by the Supreme Court as an example of a claim that warranted dismissal **even under liberal notice pleading rules** see Papason v. Allain, 478 U.S.265,286 (1986). And, "Such wholly non-specific allegations cannot form the 'sole basis' for connecting the moving parties to alleged conspiracy." Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (J. Mukasey). Although Rule 8 establishes a liberal pleading standard, "mere incantation of the words 'conspiracy' and 'acted in concert with' does not talismanically satisfy the

Rule's requirements." <u>Galeri Gmurzynka v. Hutton</u>, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003) (J. Berman).

In short, neither complaint contains the requisite and specific factual allegations showing that the alleged activities of individual Defendant Kamel were the proximate cause of or a substantial factor in leading to the plaintiff's injuries see <u>Browning v. Clinton</u>, 292 F. 3d 235, 249 (D.C. Cir. 2002). The factual allegations made against Defendant Kamel are so "remote in time, place and circumstances", <u>Browning</u>, <u>supra</u>., revealing no "direct relation between the injury asserted and the injurious conduct alleged" and cannot satisfy the forseeability requirements in cases such as this <u>City of Philadelphia v. Beratta U.S. A. Corp.</u>, 277 F.3d 415, 423 (3d. Cir. 2002); <u>DiPonzio v. Riordan</u>, 89 N.Y. 2d 578, 657 N.Y.S. 2d 377 (1997); <u>Gaines-Tabb v. ICI Explosives USA Inc., 995 F. Supp. 1304</u> (D. Okla. 1996).

**ABDIC Allegations:** as a reading of the allegations made against Defendant ABDIC reveals, there are only two allegations that warrant serious scrutiny by this Court. Said allegations are contained in paragraphs (2) and (5), recited in Point III, <u>supra</u>. The other immaterial allegations characterize ABIDC as "a diversified conglomerate", detail the holdings of Defendant ABIDC, its presence in the "Sudanese banking sector", the founding date of the Al-Shamal Bank and the identity of a Turkey based investment vehicle [<u>Ashton</u>, paras. 583,586,588,589,594, 599].

The pertinent allegations [(2) and (5) Part III, <u>supra</u>..] charge that ABIDC in 1983 provided Osama Bin Laden with financial infrastructures in Sudan and that, in an unknown year, it also provided support to the Defendant charity Al-Haramain, relying on an alleged Bosnia Intelligence Agency report. However, when these allegations are actually scrutinized, they are seen for what they are - at most, that an allegedly

questionable transaction occurred at a bank [a/k/a "funnel"] at a time when ABIDC held

shares in the bank as an investor.

Specifically on (2), the allegation is that in 1983 a suspect charity, Al-Haramain,

"maintained bank accounts at an al Baraka bank in Saudi Arabia" and such activity, in

and of itself, somehow "provided Osama Bin Laden with financial infrastructures in

Sudan". Given Judge Robertson's holding that "funnels" [a/k/a banks] cannot be held

liable herein Burnett v. Al-Baraka et al, 272 F.Supp. 2d at 109, it is preposterous to

suggest that an entity like ABIDC which, at most, holds shares or invested in an alleged

"funnel", could ever be held liable.

A similar attenuated causation theory [connections between General Electric and

other entities it partially owned] was advanced and rejected by Judge Marrero in W.E.

Media Inc. v. General Electric Co., 218 F.Supp.2d 463,475 (S.D.N.Y. 2002). Judge

Marrero's analysis on causation is quite instructive:

> "WEM [the plaintiff] also invokes a six-degrees-of
> separation argument that because WEM dealt with
> corporate entites owned in part by certain Defendants
> Defendants knew of WEM. Given the legal divide between
> the day-to-day operations of a corporation and its shareholders
> or between a parent and subsidiary, see
> Berkey v. Third Avenue Railroad Co., 244 N.Y. 84 (1926)
> (Cardozo, J.), WEM's factual arguments are too
> attenuated to support its points* * *
>
> WEM does not articulate a clear theory of causation
> beyond the proposition that there cannot be two media
> companies sharing the word WE in their names. The record
> contains facts that undermine WEM's theory [of causation]."[J.Marrero]

In addition, as analyzed under either Fed. R. C. P. 12 (b) (1) or (6), the specific recital of the year "1983" should be proof alone as to why this allegation is quite remote and legally immaterial. Assuming arguendo, that ABIDC, on behalf of a suspect charity, rendered it "support" in 1983, according to each of the complaints before this Court, such support started: (a) 6 years prior to the establishment of a radical Islamic government in Sudan [Ashton, para. 48]; (b) 6 years before the establishment of Al Qaeda [Ashton, paras. 33,34]; (c) 8 years before Osama Bin Laden moved to the Sudan [Ashton, para 47]; and (d) 18 years before the 9/11 tragedy.

This time frame analysis comes from factual averments, **as recited in both complaints**, and conclusively shows how absurd this particular allegation and reasoning is under scrutiny. This Court does not have accept as true conclusory allegations or inferences that are not supported by or are **inconsistent with other allegations of the complaint** Day v. D.C. Dept. of Consumer & Regulatory Affairs, 191 F.Supp.2d 154, 157 (D.C.C. 2002); Moore v. Johnson, 826 F.Supp. 2d 1106, 1108 (W.D. Mich. 1993).

Time itself is a consideration that is important in determining whether an actor's conduct is a substantial factor in bringing about harm to another. Restatement (Second) Torts, section 433 (c) (1965). Here, of course, the Plaintiffs are alleging that an investment in 1983 made by Defendants Kamel and ABIDC was a substantial factor in the 9/11 tragedy, but

> "experience has shown that where a great length of time has elapsed between an actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof. Where the time has been long, the effect of the actor's conduct may thus have become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors that have contributed"

Restatement (Second) Torts, section 433, comment f (1965)

The Second Circuit has recognized that even a five year period of time between the defendant's actions and the plaintiff's injury can suggest that external factors were a substantial cause; see First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d. Cir. 1994).

In sum, as the above caselaw makes abundantly clear, the allegation involving ABIDC's alleged conduct occurring in 1983 is per se immaterial and remote.

Although dressed up a little differently, reading paragraph (5) supra., Part III, [Ashton, para. 598] leads one to the same conclusion, i.e., dismissal is warranted under Fed. R. Civ.P. 12 (b) (6). The Plaintiffs' theory of liability is that one of ABIDC's investments [Al-Barka bank in Turkey] was cited in an alleged questionable transaction [year unspecified] but only in the sense that a Bosnian bank account was credited with a deposit as part of an international banking transaction - that's it! Specifically, the allegation recites that "records show a flow of money [into the suspect charity's account] sent from Saudi Arabia **via the Deutsch Bank and the Al Baraka Bank in Turkey"** [emphasis added].

On a "best case" analysis, these allegations against Defendant ABIDC in the aggregate amount to this - that a suspect Saudi based charity, Al-Haramain, allegedly used banks [a/k/a "funnels"] in which Defendant ABIDC made investments and/or owned part of the stock of those banks. While Judge Robertson's "funnel" holding, by itself, mandates ABIDC's dismissal in both complaints, it is respectfully submitted that it can also be dismissed under either Fed. R. Civ. P. 12 (b) (1) or (6).

**The "Practice and Policy" Allegation:** an identical allegation, word for word from the Burnett complaint [para. 59] has been made in the Ashton litigation [para. 595].

It is that the "practice and policy of Dallah Al Baraka Group LLC and al Baraka Bank is to provide financial support and material assistance to international terrorist organizations including al Qaeda". While this is a sensational allegation, it hardly warrants the Court's attention and does not save either complaint from dismissal.

Given, as both complaints identically aver, that Defendants Kamel and ABIDC are merely investors or shareholders, directly or indirectly in other institutions, there is no explanation as to how they provided banking services/"financial support" and/or "material assistance" to al Qaeda or any other international terrorist organization. Again, as an example, where is it alleged that either Defendant Kamel or ABIDC conspired with Defendant "X" in terms of giving Defendant and hijacker Atta in 2001 the funds for his flight lessons? see Papasan v. Allain, supra. [naked, non-specific and conclusory allegations about a conspiracy fail as a matter of law].

It is precisely for this reason, as Defendants pointed out in their opening legal memorandum filed in Burnett, p. 48, that this Court should follow 2d Circuit precedence and that of other courts, which similarly have been faced with conclusory allegations only, concerning an entity's "practice and policy" and hold that this kind of allegation is inadequate as a matter of law. Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); Munz v. Parr, 758 F.2d 1254, 1259 (8th Cir. 1985).

**The al Bayoumi Allegations:** there is one last allegation in both complaints that warrants analysis in the context of Defendants motions to dismiss. The Ashton allegations [paras. 589,590] mirror the Burnett allegations [paras. 54,55] concerning an individual named al Bayoumi. The claim is that "one of [al Baraka's] employees, Omar al Bayoumi, is alleged to have provided funding directly to two of the September 11

hijackers and to have paid their rent in San Diego during the period when they were

preparing for their role in the attacks [Ashton, para. 592].

    As paragraphs [53,55 Burnett///590,592 Ashton] of both complaints actually

allege, Al Bayoumi was employed prior to 1998 by Dallah Avco, an aviation services

subsidiary of Dallah Albaraka Group, LLC. Assuming arguendo, that al Bayoumi did pay

the rent, Judge Robertson's ruling is that such an allegation is immaterial, to wit:

> "the [third amended complaint] asserts claims against
> members of the al-Rajhi family who are bank officers
> but it makes no allegations that would support an
> inference that any al-Rajhi family member was acting
> within the scope of his bank employment when he allegedly
> provided support to al Qaeda, as would be necessary to
> impose vicarious liability on the bank for the acts of its o
> fficers and employees" See e.g. Tasso v. Platinum Guild Int'l.,
> 1997 WL 16066 at *6 (SDNY January 16, 1997, J. Preska).
> Slip. Op., at 46 & n. 18. 274 F.Supp. 2d 86, 109, fn. 8.

    With that analysis in mind, Defendants Kamel and ABIDC are even more remote

from the Plaintiffs' causes of action than the al-Rajhi family members. Al Bayoumi was

neither an employee nor an officer of Defendants Kamel and ABIDC. He is alleged to

have been an employee of Dallah Avco, a subsidiary of DACLLC. Thus, the Al-Bayoumi

allegation does not serve as a basis for denying these Defendants the relief they seek

pursuant to their Fed. R. Civ. P. 12 (b) (1) and (6) motions.

    In sum, whether you take the individual allegations made against Defendants

Kamel and the holding company ABIDC or the general, omnibus "all defendants" legal

conclusory allegations, based on Judge Robertson's "funnel" holding and reasoning, these

Defendants should be dismissed from both cases. It is respectfully submitted also that

there are alternative legal bases for dismissing these Defendants, premised on the instant

motions filed herein on their behalf.

## V. LACK OF SUBJECT MATTER JURISDICTION IS A SEPARATE AND DISTINCT ALTERNATIVE BASIS FOR DISMISSING DEFENDANTS KAMEL AND ABIDC

While the relief requested is the same under the instant Fed. R. Civ. P. 12 (b) (1) and (6) motions, the factual allegations at issue are given closer scrutiny under Fed. R. Civ. P. (1) since the motion inherently focuses on the court's power to hear the claims Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9,13 (D.D.C. 2001). And, the plaintiff bears the burden of proof on the issue of jurisdiction Id.

The instant 12 (b) (1) motion raises the issue as to the extra-territorial reach of the Antiterrorism Act of 1992, 18 U.S.C. section 2333 ["ATA"]. Contrary to the Plaintiffs' view, an unlimited causation chain stretching back to 1983, the Defendants assert that the power of Congress to prescribe with respect to extraterritorial conduct [even ATA] is not unlimited.

Justice Scalia, e.g., in Hartford Fire Insurance Co. v. California, 509 U.S. 764, 813 (1993) noted that "there is a type of 'jurisdiction' relevant to determining the extraterritorial reach of a statute". He wrote "In sum, the practice of using international law to limit the extraterritorial reach of statutes is firmly established in our jurisprudence" 509 U.S. at 818.

In Hartford, the Supreme Court, in Part III of Justice Souter's opinion [509 U.S. 17 794-799], took up the question of whether certain antitrust claims "should have been dismissed as improper applications of the Sherman Act **to foreign conduct"** [emhasis added]. To resolve that question, the Court looked to the Restatement (Third) of Foreign Relations ["Restatement"], and section 403 thereof specifically [extensively briefed in the Burnett memorandum, pp.4,5]. A five member majority, after considering the factors

15

articulated in section 403, concluded that they "would not counsel against exercising jurisdiction in the circumstances here" Id. at 798.

The Court's rational in reaching that conclusion is especially instructive herein, i.e., that the requirements of section 403 (2) (a) were satisfied since the majority found that the complaint therein, unlike the Ashton and Burnett pleadings, had alleged a direct effect on U.S. commerce. Defendants Kamel and ABIDC, of course, are not arguing that the complaints fail to allege some effect on American soil; 3,000 American citizens were murdered, a barbaric act that Defendant Kamel has condemned.

What the Defendants do argue, however, is that the Burnett and Ashton allegations do not show that their alleged extraterritorial activities **had an effect on U.S. soil or met the proximate cause and forseeable effects requirement of either the ATA ["by reason of"] or section 403 (2)(a) of the Restatement.** The Defendants argue that the factors identified in section 403 of the Restatement substantially weigh against the reasonableness of exercising subject matter jurisdiction over the claims made herein against these defendants. And, alternatively, that these same factors weigh against the conclusion that the ATA applies to the factual allegations made against them.

The federal statutes forming the bases for the various claims made herein recognize several of these limitations, e.g., Restatement section 403(2) (a)'s requirement that the alleged extraterritorial activities have a direct, forseeable effect on the U.S. or its nationals. In providing a civil cause of action under ATA, Congress specifically stated: "Any [U.S.] national injured ...**by reason of an act of international terrorism**... may sue therefore..." [emphasis added] ATA, 18 U.S.C. 2333 (a).

The above "by reason of" language is crucial and is essentially what the parties herein disagree about, with the Plaintiffs taking the position that it means unlimited

liability, even for defendants who are merely investors in banks [a/k/a "funnels"]. This language has been extensively examined by the Seventh Circuit Court of Appeals which construed the language to mean that Congress has prescribed only that **foreign conduct** where the injuries "might have reasonably been anticipated as a natural consequence of the defendant's actions. Boim v. Quranic Literacy Institute & H.L.F., 291 F.3d 1000, 1011-12 (7th. Cir. 2002).

The Boim court recognized that this "by reason of" language requires a showing of "proximate cause" as well as "forseeability" Id.. More importantly, it concluded that ATA cannot be construed in a manner that would attribute "almost unlimited liability to even remote acts; **it must have meant something else" [emphasis added]** Boim at 1020. Yet that is exactly what the Plaintiffs are asking this Court to do in seeking to hold liable herein mere investors in a bank [a/k/a "funnel"].

The Boim court examined Holmes v. Securities Investor Protection Corp., 503 U.S. 258,268 (1992) at length, where the Supreme Court had to determine the reach of the RICO statute's "by reason of" language. The Holmes opinion undercuts the Plaintiffs expansive reading of the ATA's "by reason of" language by importing the tort concept of "proximate cause" into the statutory construction analysis. Not surprisingly, the Court also recognized that at common law the concept of "proximate cause" incorporated a requirement of "some **direct relation between the injury asserted and injurious conduct alleged,"** [emphasis added] Id.

What is clear from the Defendants viewpoint is that in enacting the ATA civil remedy Congress: (a) certainly had other similar statutory language and case law precedent to look to; and (b) obviously married the statute to the well known Restatement's requirements. Thus, the Plaintiffs herein must allege that their injuries are

17

not only a **direct** consequence of foreign conduct taken by Defendants Kamel and ABIDC but that the injures arising out of the 9/11 tragedy are also the **forseeable consequences of** such foreign conduct.

The Supreme Court has stated that, for jurisdictional purposes, an "effect" on the U.S. is "direct' if it follows 'as an immediate consequence of the defendant's activity" Republic of Argentina v. Weltover, 504 U.S. 607, 618 (1992) [construing the "commercial activity" exception under the Foreign Sovereign Immunity Act]. The Second Circuit has addressed the issue of "direct" effects of foreign based conduct in the RICO, securities law and antitrust settings. In North South Finance Corp. v. Al- Turki, 100 F.3d 1046, 1050-52 (2d. Cir. 1996), the Second Circuit affirmed dismissl of RICO claims under Fed.R.Civ.P. (12) (b) (1) citing the "effects test", which is regarded as a jurisdictional requirement Id., at 1053, and has been construed to mean that "transactions with only remote and indirect effects in the United States do not qualify as substantial" Id., at 1051.

In addressing securities fraud arising out of foreign conduct, "[U.S. securities laws] may be given extraterritorial reach whenever a predominantly foreign transaction has substantial effects within the United States" Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261-62 (2d. Cir.1989)", cited in North South Finance Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d. Cir.1996). However, "transactions with only remote and indirect effects in the United States do not qualify as substantial " Id. at 262, similarly cited.

In North South Finance Corp. the Court also addressed the issue of antitrust liability arising out of foreign conduct, to wit: "It is also settled that antitrust liability may attach to anticompetitive conduct occurring outside the United States, but having

consequences here, if the conduct is intended to and actually does have an effect on

United States imports or exports

which the state reprehends" North South Finance Corp., at 1052; see Restatement 401 (1)

(c) - "conduct outside its territory that has or is intended to have substantial effect within

its territory."

The Plaintiffs do not only have a problem in showing that Defendants investment

activity dating back to 1983 had a "direct effect" on U.S. soil. Their claims also fail as a

matter of law because their injuries could not have been forseen by the Defendants when

they made their investments in Islamic banks. The forseeability analysis employed under

Fed.R.Civ.P. 12 (b) (1)

necessarily implicates the doctrine of "remoteness", which has been addressed by

numerous courts.

As one court observed: "Although virtually every untoward consequence can

theoretically be forsen 'with the wisdom born of the event', the law draws a line between

remote possibilities and those that are reasonably forseeable because 'no person can be

expected to guard against harm from events which are so unlikely to occur that the

risk...would commonly be disregarded" DiPonzio v. Riordan, 89 N.Y.2d 578, 583, 657

N.Y.S.2d 377,380 (1997). There is also the "related problem" of the "need to analyze the

relationship between the risk created by

the actor's conduct and the actual occurrence that caused the harm" Id.

The actor's conduct complained of herein are various investments in and start-up

of new financial institutions or business in the Middle East, occurring between 1983 and

1991. This "conduct" obviously bears no relationship to the actual occurrence that caused

the plaintiffs' harm on September 11th. Even if the Court makes a giant leap of logic that

there is some consequential relationship between this "conduct" and the occurrence of September 11th, it is the kind of "indirect consequence...at most, **a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence"** [emphasis added] Di Ponzio at 89 N.Y.2d 585, 657 N.Y.S.2d at 381. see also Timberlane Lumber Co. v. Bank of America, 749 F.2d 1378,

385 (9th. Cir. 1984), cert. den., 472 U.S. 1032 )1985) [investment decision to foreclose on assets in Honduras, which later has effect on plaintiff in the United States **does not meet forseeability requirement for subject matter jurisdiction**].

Based on all of the above considerations, this Court has ample cause to grant Defendants Kamel's and ABIDC's respective Fed.R.Civ.P. 12 (b) (1) motions for lack of subject matter jurisdiction.

## CONCLUSION

For good cause shown in this memorandum and the memoranda (initial and reply) filed in <u>Burnett,</u> the Court should grant the motion to dismiss based on the law of the case doctrine or in the alternative, for lack of subject-matter jurisdiction or the motion to dismiss for failure to state a claim for which relief can be granted and dismiss this action and all claims against Saleh A. Kamel and Al Baraka Investment & Development Corp.

Respectfully Submitted,

_____/s/_____
Martin McMahon, Esq. #196642
Martin McMahon & Associates
1150 Connecticut Ave., NW
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorneys for Defendants*
*Saleh Abdullah Kamel and*
*Al Baraka Investment &*
*Development Corp.*

Dated: March 19, 2004