UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001<br><br>This document relates to:<br><br>KATHLEEN ASHTON, et al,<br>            Plaintiffs,<br>                    v.<br><br>AL-QAEDA ISLAMIC ARMY, et al.,<br>            Defendants. | MDL No. 1570 (RCC)<br><br>NO. 02 CV 6977 (RCC) |

**DEFENDANT WAEL JELAIDEN'S MOTION TO DISMISS THE THIRD
<u>AMENDED CONSOLIDATED MASTER COMPLAINT</u>**

 

**MARTIN MCMAHON & ASSOCIATES**

By:_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C. 20036
(202) 862-4343

*Attorneys for Defendant Wael Jelaiden*


Dated: Washington, DC
March 19, 2004

1

# Table of Contents

FACTUAL BACKGROUND……………………………………………………………1

LEGAL ANALYSIS

    The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over
    Wael Jelaiden…………………………………………………………………….  2

        A.      Standard of Review…………………………………………………….  2

        B.      Legal Background……………………………………………………..  3

        C.      Wael Jelaiden Lacks Minimum Contacts with the United States for
              General Personal Jurisdiction…………………………………………....  4

        D.      Wael Jelaiden Trust Lacks Minimum Contacts with the United States for
              Specific Personal Jurisdiction……………………………………………  8

        E.      Wael Jelaiden Lacks Minimum Contacts with the United States Under the
              Effects Test………………………………………………………………  9

        F.      Personal Jurisdiction Over Wael Jelaiden Does Not Arise from
              Allegations of Conspiracy, and Aiding and Abetting…………………. 11

    CONCLUSION………………………………………………………………………   14

# **TABLE OF AUTHORITIES**

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987)……………………….. 3

AMPA Ltd. v. Kentfield Capital LLC, No. 00 CIV 0508, 2001 WL 204198 (S.D.N.Y. March 1, 2001) ……………………………………………………………………. 6

Bersch v. Drexel Firstone, Inc., 519 F.2d 974 (2d Cir. 1975)………………………… 11

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)………………………… 4, 8, 14

Calder v. Jones, 465 U.S. 783 (1984)..…………………………………………………6, 9

Corning Inc. v. Shin Etsu Quartz Prod. Co., Ltd., 242 F.3d 364 (2d Cir. 2000)... 9, 10

Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202 (2d Cir. 2003)…………………. 4

Estate of Ungar v. The Palestinian Authority, 153 F. Supp. 2d 76 (D.R.I. 2001)……… 5

E-Z Bowz, L.L.C. v. Professional Prod. Research Co, Inc., No. 00 CUV, 8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003)……………………………………….....…     13

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226 (S.D.N.Y. 1991)…………… 7, 9

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369 (S.D.N.Y. 2002)………………………………………………………………………………     13

Galeri Gmurzynska v. Hutton, 257 F. Supp.2d 621 (S.D.N.Y. 2003)…………..   12, 14

GTE New Media Serv. Corp. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000)…… 3

H.S.W. Enter., Inc. v. Woo Lae Oak, Inc., 171 F. Supp.2d 135 (S.D.N.Y. 2001)…….. 7

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984)…………………. 3, 7

Herbstein v. Bruetman, 768 F. Supp. 79 (S.D.N.Y. 1991)……………………………. 10

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485 (S.D.N.Y. 1987)………………… 9, 11

In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204 (2d Cir. 2003)...…………….2, 4

International Shoe Co. v. Washington, 326 U.S. 310 (1945)………………………….. 3

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)……………………………….. 6

Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972)…… 10

Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975)…………………. 12

Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246 (S.D.N.Y. 2003). ………………. 6

Metropolitan Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560 (2d Cir. 1996)...3, 4, 5

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999)……………………………… 14

Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 (S.D.N.Y. July 15, 2002)…………………………………………………… 14

Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521 (D.C. Cir. 2001)……………………………………………………………………………… 3, 14

S.E.C. v. Unifund SAL, 910 F.2d 1028 (2d Cir. 1990)…………………………………. 9

Singer v. Bell, 585 F. Supp. 300, 302 (S.D.N.Y. 1984)………………………………… 11

Southridge Capital Mgmt., LLC v. Lowry, 188 F. Supp.2d 388 (S.D.N.Y. 2002)…… 3

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135 (2d Cir. 2001) …………………………………………………………………………………… 8

Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765 (2000)……………………………………………………………………………. 14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 <br><br> This document relates to: <br><br> KATHLEEN ASHTON, et al, <br>                              Plaintiffs, <br>                     v. <br><br> AL-QAEDA ISLAMIC ARMY, et al., <br>                              Defendants. | **MDL No. 1570 (RCC)** <br><br> NO. 02 CV 6977 (RCC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WAEL JELAIDAN'S MOTION TO DISMISS THE**
**THIRD AMENDED CONSOLIDATED MASTER COMPLAINT**

Defendant Wael Jelaidan, by and through undersigned counsel, submits this Memorandum of Law in support of his motion to dismiss Plaintiffs' Third Amended Consolidated Master Complaint ("Complaint"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

This Court lacks personal jurisdiction over Wael Jelaidan because he does not do any business in, own any property in, and has absolutely no connection with the United States.  Simply put, Wael Jelaidan lacks the necessary minimum contacts to trigger personal jurisdiction in a United States court, and thus, the Complaint against him must be dismissed.

**I.      FACTUAL BACKGROUND**

Wael Jelaidan resides at Al-Salama District, Jeddah in the Kingdom of Saudi Arabia.  See Affidavit of W. Jelaidan, attached as Ex. 1.  His principal place of business is located at Beshawari Building, Madinah Road, Sari Road intersection, Jeddah, Kingdom of Saudi Arabia.  See id.

Currently, Wael Jelaidan serves as the Secretary General of Rabita Trust, a charitable organization located in Islamabad, Pakistan, which serves the sole purpose of repatriating and rehabilitating 40,000 Pakistani families (Biharis) stranded in Bangladesh as a result of the 1971 Indo-Pak War.  See Ex. 1; Third Am. Compl. at ¶¶ 304, 312, 521-522.  According to the Complaint, in the past he also headed the Pakistani Office of the Muslim World League ("MWL"), and was president of the Islamic Center of Tucson ("ICT").  See Third Am. Compl. at ¶¶ 304, 312, 341.  Without any elaboration, the Complaint also alleges that Wael Jelaidan is connected to the Saudi Joint Relief Committee ("SJRC").  See id. at ¶ 484.

Wael Jelaidan does not own any property in, have any investments or bank accounts in, and does not do any business in the United States, with the United States, or with any United States based entity.  See Ex. 1.

## II. LEGAL ANALYSIS

**The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over Wael Jelaidan**

The Court must dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between Wael Jelaidan and the United States sufficient to give rise to personal jurisdiction over Wael Jelaidan.

### A. Standard of Review

Under Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* case that personal jurisdiction exists over the defendant.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  At this stage of the proceedings, "all allegations are construed in the light most favorable to the plaintiff and doubts are

2

resolved in the plaintiff's favor." Southridge Capital Mgmt., LLC v. Lowry, 188 F. Supp.2d 388, 397 (S.D.N.Y. 2002) (Judge Owen).  However, to survive a motion to dismiss under Rule 12(b)(2), the plaintiff must allege facts connecting the defendant with the forum.  See Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (citation omitted).  Moreover, the Supreme Court has cautioned that special care should be exercised when extending our notions of personal jurisdiction to alien defendants.  See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114-15 (1987).

### B. Legal Background

In International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), the United States Supreme Court held that personal jurisdiction over a nonresident defendant exists only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  See also GTE New Media Serv. Corp. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Under this "minimum contacts" inquiry a distinction is made between general jurisdiction and specific jurisdiction.  See Metropolitan Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 1996).  General jurisdiction exists over a defendant if the defendant has "continuous and systematic" contacts with the forum.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415-416 (1984).  Alternatively, where the claims at issue are related to or arise out of the defendant's contacts with the forum, a court may exercise specific jurisdiction over the defendant.  See id. at 414.  Specific jurisdiction is satisfied where "the Defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged

injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

In performing the "minimum contacts" analysis above, the service of process provision at issue determines the relevant forum against which to measure minimum contacts. Where service of process is based on a federal statute providing for nationwide service of process or on Fed.R.Civ.P. 4(k)(2), essentially the federal long-arm statute, minimum contacts are measured by the defendant's contacts with the United States as a whole, and not a particular state. See In re: Magnetic Audiotape Antitrust Litig., 334 F.3d at 207 (holding that defendants minimum contacts should be measured with regard to the United States as whole where § 12 of the Clayton Act provides for worldwide service of process). See also Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003) (holding that where personal jurisdiction is based on Fed.R.Civ.P. 4(k)(2), the due process analysis involves contacts with the United States as a whole). In the case herein, Plaintiffs are likely to argue that Wael Jelaidan is subject to this Court's personal jurisdiction based on the ATA, 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent"), or Fed.R.Civ.P. 4(k)(2), both of which provide for nationwide service of process. Given that Wael Jelaidan has accepted service of process, the sole issue before the Court is whether Wael Jelaidan has the necessary minimum contacts with the United States to trigger personal jurisdiction.

**C.** **Wael Jelaidan Lacks Minimum Contacts with the United States for General Personal Jurisdiction**

General jurisdiction is based on the defendant's general business contacts with the forum. See Metropolitan Life Ins. Co., 84 F.3d at 568. In order to show that general

4

jurisdiction exists, the plaintiff must "demonstrate the defendant's 'continuous and systematic general business contacts [with the forum.]'" Id.  Fatal to Plaintiffs' claim that general jurisdiction exists as to Wael Jelaidan is the fact that Plaintiffs have utterly failed to plead any meaningful nexus between Wael Jelaidan and the United States as required to establish general personal jurisdiction.[1]

A review of the Complaint reveals that the only pertinent jurisdictional allegations against Wael Jelaidan are Plaintiffs' allegation that "WA-EL JULAIDAN was president of ICT [Islamic Center of Tucson] before leaving for Afghanistan" (Third Am. Compl. at ¶ 341), and Plaintiffs' similar allegation that Wael Jelaidan was a United States student studying agriculture who left to fight jihad in Afghanistan during the 1980s (Third Am. Compl. at ¶524).  Even in these two related allegations, Plaintiffs fail to identify when Wael Jelaidan was in Tucson, Arizona, how long he was President of ICT, how long he was in the United States or when he left the United States.  However, the context of the allegations seems to imply that Wael Jelaidan was a student in the United States and President of ICT during the 1980s, which is over 11, if not more, years before the September 11, 2001 attacks occurred and this lawsuit was filed.  Such attenuated contacts hardly qualify as "continuous and systematic" contacts which give rise to general personal jurisdiction.  Compare with Estate of Ungar v. The Palestinian Authority, 153 F. Supp. 2d 76, 88-89 (D.R.I. 2001) (denying a motion to dismiss for lack of personal jurisdiction where the Defendant had an office in the United States, engaged in fundraising activities in the United States, had a public relations campaign in the United States, and had back accounts in the United States).

---

[1] Plaintiffs also fail to allege that Wael Jelaidan has any contacts whatsoever with New York, thereby, eliminating any possibility of jurisdiction over Wael Jelaidan pursuant to the New York long-arm statute.

Plaintiffs' only other remotely plausible argument for personal jurisdiction over Wael Jelaidan stems from his role as Secretary General of Rabita Trust and the MWL office in Pakistan. See Third Am. Compl. at ¶ 312, 341, 523. However, this presumes that either Rabita Trust or the Pakistani office of MWL has the necessary minimum contacts with the United States to trigger personal jurisdiction over those entities, a conclusion which is dubious at best.[2]

Even assuming, for the sake of argument, the Court does have personal jurisdiction over Rabita Trust and/or the Pakistani office of the Muslim World League, personal jurisdiction over a corporation does not automatically provide justification for personal jurisdiction over the individual officers and employees of that corporation. See Calder v. Jones, 465 U.S. 783, 790 (1984); Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13 (1984). Generally, the Court must examine the individual officers and employees' own contacts with the forum in order to determine personal jurisdiction. See AMPA Ltd. v. Kentfield Capital LLC, No. 00 CIV 0508, 2001 WL 204198 at *2 (S.D.N.Y. March 1, 2001) (Judge Buchwald) (holding that "there is no support for the proposition that filing an action on behalf of a corporation in and of itself subjects the individual directors of that corporation to personal jurisdiction in New York without regard to the directors' own contacts with the forum"). The only exception is where the corporation doing business in the forum is acting as the agent of the corporate officer. See Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246, 253, n. 5 (S.D.N.Y. 2003) (Judge Berman). In such a situation, personal jurisdiction may be imputed to the individual officer only where the plaintiff shows that:

---

[2] But see Burnett v. Al Baraka Inv. and Dev., 274 F. Supp.2d 86 (D.D.C. 2003) (finding personal jurisdiction exists over MWL because of United States-based offices).

6

> [T]he agent transacting business engaged in purposeful activity in the [forum] (1) that related to the … underlying … lawsuit, (2) that was taken for the benefit and with the knowledge of the defendant, and (3) over which the defendant exercised some control.

H.S.W. Enter., Inc. v. Woo Lae Oak, Inc., 171 F. Supp.2d 135, 145 (S.D.N.Y. 2001) (Judge Baer).

In the case herein, Plaintiffs have failed to allege that either the Pakistani office of MWL or Rabita Trust engaged in any activity within the United States related to the 9/11 attacks, that the Pakistani office of MWL or Rabita Trust engaged in any activities within the United States that were taken for the benefit of and with the knowledge of Wael Jelaidan or that Wael Jelaidan exercised any control over any United States activities by engaged in by the Pakistani office of MWL or Rabita Trust. In fact, Plaintiffs have failed to allege that either the Pakistani office of MWL or Rabita Trust has engaged in any activity in the United States at all.

As stated above, Wael Jelaidan is a resident of the Kingdom of Saudi Arabia. See Ex. 1. He does not do any business with the United States or in the United States, and he does not own any property there. See id. In fact, Wael Jelaidan works for the Rabita Trust, an Islamic charity, which does not raise any money in the United States, and conducts its relief efforts solely in Pakistan and Bangladesh. See Ex. 2 attached, Affidavit of W. Jelaidan, as Secretary General of the Rabita Trust; Third Am. Compl. at ¶¶ 304, 521-23. The Plaintiffs completely fail to show that Wael Jelaidan maintains *any*, let alone the requisite "substantial, continuous and systematic" contacts with the United States to support general personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 413-15.

7

**D.     Wael Jelaidan Lacks Minimum Contacts with the United States for Specific Personal Jurisdiction**

Specific personal jurisdiction exists where "the claim arises out of, or relates to, the defendant's contacts with the forum." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001). In cases involving specific personal jurisdiction, "minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Id.

As with the discussion on general personal jurisdiction, the only allegation in the entire Complaint that lends itself to a specific personal jurisdiction argument is the allegation that Wael Jelaidan was president of ICT before leaving for Afghanistan (Third Am. Compl. at ¶ 341), and that Wael Jelaidan was a United States student studying agriculture before leaving for Afghanistan in the 1980s (Third Am. Compl. at ¶ 524). However, these allegations fail to support specific personal jurisdiction for multiple reasons. First and foremost, the Complaint fails to allege that Plaintiffs' claim (damage suffered as a result of the 9/11 attacks) arises out of or relates to Wael Jelaidan's tenure as president of ICT or his study of agriculture in the United States during the 1980s. Moreover, as argued above, Wael Jelaidan's college years and ICT presidency in the United States in the 1980s, hardly make it objectively reasonable for Wael Jelaidan to foresee being haled into a United States court for a lawsuit filed more than 11 years after his last contact with the United States. Wael Jelaidan's tenure as president of ICT and study of agriculture in the United States during the 1980s are exactly the type of random, fortuitous or attenuated contacts that the purposeful availment requirement is designed to eliminate. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

### E. Wael Jelaidan Lacks Minimum Contacts with the United States Under the Effects Test

One variation of specific personal jurisdiction is the "effects test," which holds that a foreign defendant may be subject to personal jurisdiction within the United States if that defendant commits an intentional wrongful act outside of the forum directed at an entity or individual within the forum.  See Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Under the "effects test," Wael Jelaidan would be subject to personal jurisdiction within the United States only if:  1) Wael Jelaidan's activities outside of the United States caused the 9/11 attacks; 2) The 9/11 attacks were a "direct and foreseeable result" of the conduct of Wael Jelaidan; and 3) Wael Jelaidan knew, or had good reason to know, that its conduct would result in the 9/11 attacks.  See Corning Inc. v. Shin Etsu Quartz Prod. Co., Ltd., 242 F.3d 364 (2d Cir. 2000).  Even if the Plaintiffs allege, which they have not done, that the 9/11 attacks were the result of acts committed by Wael Jelaidan outside of the United States, this in and of itself is not enough to subject Wael Jelaidan to personal jurisdiction in this Court.  See id.

Turning first to the causation element of the "effects test," Plaintiffs must plead a close causal connection between the out of forum actions of Wael Jelaidan and the 9/11 attacks in the United States.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (Judge Pollack).  The standard for causation under the "effects test" "is somewhat more demanding than just 'some causal relation.'"  Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (Judge Leisure).  See also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990) (holding that not every causal connection between action abroad and ultimate injury in the United States will suffice). Not only have Plaintiffs failed to plead a close causal connection between any actions of

Rabita Trust and the 9/11 attacks, they have failed to plead any causal connection at all. Plaintiffs allege that Wael Jelaidan, aided and abetted terrorists, recruited Al Qaeda soldiers, and was a supporter of Al Qaeda terror.  Third Am. Compl. at ¶¶ 312, 341, 484. However, Plaintiffs never allege if or how these actions by Wael Jelaidan caused the 9/11 attacks.

As to the foreseeability element of the "effects test," "the 'low floor' of foreseeability needed in the tort context is not enough to support personal jurisdiction …."  Corning Inc., 242 F.3d at 364.  See also Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (Judge Sweet) (holding that "it is not enough that causing an injury within the forum may be foreseeable, within the meaning of proximate causation and tort liability).  Rather, the effect within the forum must occur "as a direct and foreseeable result of the conduct outside the territory."  Corning Inc., 242 F.3d at 364, *citing*, Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972).  As with causation, Plaintiffs never meet the heightened threshold of foreseeabiltiy required under the "effects test," and, in fact, fail to directly or indirectly allege that any actions by Wael Jelaidan outside of the United States foreseeably resulted in the 9/11 attacks.

Finally, focusing on the third factor of the "effects test," Plaintiffs must show that "the defendant 'must know, or have good reason to know, that his conduct will have effects in the [forum] seeking to assert jurisdiction over him.'"  Corning Inc., 242 F.3d at 364, *citing*, Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972).  Once again, just as Plaintiffs have failed to meet the heightened standards of causation and foreseeability of the "effects test," Plaintiffs also fail to make any

10

allegations giving rise to the conclusion that Wael Jelaidan knew or had good reason to know that any of his activities outside of the United States would result in 9/11.

Under the "effects test's" heightened standards of causation and foreseeability and the greater scrutiny afforded to "effects test"-based claims of personal jurisdiction in the international context, Plaintiffs' Complaint falls far short of sufficiency.  See Huang, 657 F. Supp. at 489, *citing*, Bersch v. Drexel Firstone, Inc., 519 F.2d 974, 1000 (2d Cir. 1975) (citation omitted) (holding that "when a court bases personal jurisdiction on effects in a [forum] caused by acts done elsewhere, it must proceed 'with caution, particularly in an international context'").

### F. Personal Jurisdiction Over Wael Jelaidan Does Not Arise from Allegations of Conspiracy, and Aiding and Abetting

Despite Wael Jelaidan's complete lack of "substantial, continuous and systematic" contacts with the United States, Plaintiffs appear to allege that Wael Jelaidan conspired with all other Defendants, including some that Plaintiffs have alleged have contacts with the United States.  See Third Am. Compl. at ¶¶ 5, 23-24, 484.  Accordingly, Plaintiffs are likely to argue that the Court has personal jurisdiction over Wael Jelaidan because of his alleged connections with co-conspirator Defendants, who allegedly have contacts with the United States, and because the resulting injuries of the alleged conspiracy occurred in the United States.  See Singer v. Bell, 585 F. Supp. 300, 302 (S.D.N.Y. 1984) (citation omitted) (Judge Weinfeld) (holding that "the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant").

While New York federal courts recognize conspiracy-based personal jurisdiction, "the bland assertion of conspiracy or agency is insufficient to establish [such personal]

11

jurisdiction." <u>Lehigh Val. Indus., Inc. v. Birenbaum</u>, 527 F.2d 87, 93 (2d Cir. 1975) (finding that there were no allegations of specific facts connecting the defendant with any activity within the New York forum).  <u>See</u> <u>also</u> <u>Galeri Gmurzynska v. Hutton</u>, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003) (Judge Berman) (citation omitted) (holding that conclusory allegations and speculation of conspiracy-based personal jurisdiction will not survive a motion to dismiss for lack of personal jurisdiction).  Rather:

> [T]o establish jurisdiction over a nondomiciliary defendant on the basis of the [forum] acts of a co-conspirator, the plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in [the forum], and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-[forum] tortfeasor.

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (Judge Kaplan).  Accordingly, Plaintiffs must establish a *prima facie* case of conspiracy by alleging "the primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the corrupt agreement; (c) the parties' intentional participation in the furtherance of the common plan or purpose; and (d) the resulting damage or injury."  E-Z Bowz, L.L.C. v. Professional Prod. Research Co, Inc., No. 00 CUV, 8670, 2003 WL 22064259 at *12 (S.D.N.Y. Sept. 5, 2003) (Magistrate Judge Gorenstein).  Furthermore, Plaintiffs must establish Wael Jelaidan's membership in the conspiracy by alleging:

> (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in [the forum], (2) that the [forum] co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in [the forum] acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

Id. (citation omitted)

Plaintiffs' "bare bones" attempt to establish personal jurisdiction over Wael Jelaidan by piggybacking the actions of alleged co-conspirators with alleged contacts to the forum onto Defendant Jelaidan must fail.  The Complaint contains absolutely no factual allegations supporting:  1) The inference that Wael Jelaidan was a member of a "9/11 Conspiracy"; 2) The existence of an agency relationship between Wael Jelaidan and those who actually perpetrated the 9/11 attacks within the United States; 3) The theory that Wael Jelaidan had an awareness of the effects on the United States of any activity that he conducted; 4) The theory that 9/11 attacks were for the benefit of Wael Jelaidan; or 5) The theory that the perpetrators of the 9/11 attacks within the United States were acting at the behest of or on behalf, or under the control of Wael Jelaidan.

13

Rather, the Complaint contains only a few vague catch-all allegations applying to all defendants, which infer the existence of a "9/11 Conspiracy." See Third Am. Compl. at ¶¶ 5, 23-24. "[S]uch wholly non-specific allegations cannot form the 'sole basis' for connecting the moving parties to the alleged conspiracy." Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (Judge Mukasey). See also Second Amend. Found., 274 F.3d at 524 (holding that "[t]he allegation that the [Defendants] 'conspired together' represents nothing more than a legal conclusion, which we have held 'does not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction'").

Although Rule 8 establishes a liberal pleading standard, the "mere incantation of the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the Rule's requirements." Galeri Gmurzynska, 257 F. Supp.2d at 631 (citation omitted). Plaintiffs have failed to meet even this lowest of standards because they have failed to allege any facts establishing or even supporting Wael Jelaidan's involvement in a "9/11 Conspiracy." Plaintiffs have only succeeded in alleging the type of unilateral activity by third parties that the "purposeful availment" requirement is designed to eliminate. See Burger King Corp., 471 U.S. at 475.

Because the Court lacks personal jurisdiction over Wael Jelaidan, it must dismiss him as a defendant in this lawsuit. See Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).

### III.    CONCLUSION

For the foregoing reasons, Defendant Wael Jelaidan respectfully requests that this Court grant his Motion to Dismiss for lack of personal jurisdiction.

Respectfully submitted,

_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Wael Jelaidan*

Dated:  March 19, 2004