**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 1570 (RCC)** |
| This document relates to: | |
| KATHLEEN ASHTON, et al, | NO. 02 CV 6977 (RCC) |
| v. | |
| AL-QAEDA ISLAMIC ARMY, et al. | |

**DEFENDANT RABITA TRUST'S MOTION TO DISMISS THE THIRD**
**AMENDED CONSOLIDATED MASTER COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Rabita Trust*

Dated: Washington, DC
March 19, 2004

# **Table of Contents**

FACTUAL BACKGROUND………………………………………………………   1

LEGAL ANALYSIS

    The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over
    Rabita Trust………………………………………………………………   3

    A.      Standard of Review………………………………………………   3

    B.      Legal Background………………………………………………..   3

    C.      Rabita Trust Lacks Minimum Contacts with the United States for General
            Personal Jurisdiction ……………………………………………   5

    D.      Rabita Trust Lacks Minimum Contacts with the United States for Specific
            Personal Jurisdiction…………………………………………..   6

    E.      Rabita Trust Lacks Minimum Contacts with the United States Under the
            Effects Test…………………………………………………..   7

    F.      Personal Jurisdiction Over Rabita Trust Does Not Arise from Allegations
            of Conspiracy, and Aiding and Abetting………………………………   9

    G.      Rabita Trust Lacks Minimum Contacts Through Wael Jelaidan………   12

    H.      Rabita Trust Lacks Minimum Contacts Through Muslim World League,
            IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania
            Poultry………………………………………………………   12


CONCLUSION……………………………………………………………   20

# <u>TABLE OF AUTHORITIES</u>

<u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102 (1987)……………………   3

<u>Bersch v. Drexel Firstone, Inc.</u>, 519 F.2d 974 (2d Cir. 1975)………………………   9

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462 (1985)……………………………   4, 12

<u>Burnett v. Al Baraka Inv. and Dev.</u>, 274 F. Supp.2d 86 (D.D.C. 2003)……………   13

<u>Calder v. Jones</u>, 465 U.S. 783 (1984)..…………………………………………………   7

<u>Corning Inc. v. Shin Etsu Quartz Prod. Co., Ltd.</u>, 242 F.3d 364 (2d Cir. 2000)……   7,8

<u>Dardana Ltd. v. A.O. Yuganskneftegaz</u>, 317 F.3d 202 (2d Cir. 2003)………………   4

<u>Derthick v. Bassett-Walker, Inc.</u>, Nos. 90 Civ. 5427, 90 Civ. 7479, 90 Civ. 3845, 1992 WL 249951 (S.D.N.Y. Sept. 23, 1992)……………………………………………   16

<u>Doe v. Unocal Corp.</u>, 248 F.3d 915 (9th Cir. 2001)…………………………………   14

<u>Dorfman v. Marriott Int'l Hotels, Inc.</u>, No. 99 CIV 10496, 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002)………………………………………………………………………………   20

<u>ESI, Inc. v. Coastal Corp.</u>, 61 F. Supp.2d 35 (S.D.N.Y. 1999)………………… 17, 18, 19

<u>E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc.</u>, No. 00 CUV, 8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003)………………………………………………   10, 12

<u>Federal Deposit Ins. Corp. v. Milken</u>, 781 F. Supp. 226 (S.D.N.Y. 1991)……………   7

<u>First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.</u>, 218 F. Supp.2d 369 (S.D.N.Y. 2002)……………………………………………………………………………………… 10

<u>Galeri Gmurzynska v. Hutton</u>, 257 F. Supp.2d 621 (S.D.N.Y. 2003)……………… 10,11

<u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408 (1984)………………… 4,6

<u>Herbstein v. Bruetman</u>, 768 F. Supp. 79 (S.D.N.Y. 1991)……………………………… 8

<u>Huang v. Sentinel Gov't Sec.</u>, 657 F. Supp. 485 (S.D.N.Y. 1987)…………………… 7, 9

<u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204 (2d Cir. 2003)………… 3, 4

Intermor v. Walt Disney Co., 250 F. Supp.2d 116 (E.D.N.Y. 2003)………………    13

International Shoe Co. v. Washington, 326 U.S. 310 (1945)…………………………    3

Jazini v. Nissan Motor Co., LTD., 148 F.3d 181 (2$^d$ 1998)…………………………… 14,15

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)……………………………    13

Kernan v. Kurz-Hastings, Inc., 175 F.3d 236 (2d Cir. 1999)…………………………    4

Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972)…….    8

Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975)……………………..    9

Meteoro Amusement Corp. v. Six Flags, 267 F. Supp.2d 263 (N.D.N.Y. 2003)..14, 16, 18

Metropolitan Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560 (2d Cir. 1996)…...4, 6

Obabueki v. International Bus. Mach. Corp., Nos. 99 Civ. 11262, 99 Civ. 12486, 2001
WL 921172 (S.D.N.Y. Aug. 14, 2001)……………………………………………    18

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999)………………………………    20

Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL
1560788 (S.D.N.Y. July 15, 2002)………………………………………………... 11

Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521 (D.C. Cir.
2001)………………………………………………………………………..3, 12

S.E.C. v. Unifund SAL, 910 F.2d 1028 (2d Cir. 1990)……………………………….7

Self Int'l (HK) Ltd. v. La Salle Nat'l Bank, Chicago, 01 Civ. 4291, 2002 WL 500372
(S.D.N.Y. March 29, 2002)………………………………………………………    18

Singer v. Bell, 585 F. Supp. 300, 302 (S.D.N.Y. 1984)………………………………..9

Southridge Capital Mgmt., LLC v. Lowry, 188 F. Supp.2d 388 (S.D.N.Y. 2002)……..  3

United States v. Bestfoods, 524 U.S. 51 (1998)……………………………………14

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135 (2d Cir.
2001)………………………………………………………………………6

Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765
(2000)………………………………………………………………………20

<u>Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.</u>, 751 F.2d 117 (2d Cir. 1984)…………………………………………………………………………13,16,17

<u>Weiss v. La Suisse</u>, 69 F. Supp.2d 449 (S.D.N.Y. 1999)……………………………18, 20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570 (RCC) |
| This document relates to: | |
| KATHLEEN ASHTON, et al,<br>                              Plaintiffs,<br>                    v. | NO. 02 CV 6977 (RCC) |
| AL-QAEDA ISLAMIC ARMY, et al.,<br>                              Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RABITA TRUST'S**
**MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED MASTER**
**COMPLAINT**

Defendant Rabita Trust, through undersigned counsel, submits this Memorandum of Law in support of its motion to dismiss Plaintiffs' Third Amended Consolidated Master Complaint ("Complaint"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

## I.   FACTUAL BACKGROUND

Rabita Trust is a charitable organization with its headquarters located in Islamabad, Pakistan. See Ex. 1 attached, Affidavit of W. Jelaidan; Third Am. Compl. at ¶ 521. The Rabita Trust project was initially jointly funded by the Pakistani government and the Muslim World League. See Third Am. Compl. at ¶ 521. The sole purpose of the Rabita Trust was and is to repatriate and rehabilitate 40,000 Pakistani families (Biharis) stranded in Bangladesh as a result of the 1971 Indo-Pak War. See Third Am. Compl. at ¶ 522; Ex. 1. Currently, the Secretary General of Rabita Trust is Wael Jelaidan. See Third Am. Compl. at ¶¶ 312, 523-24; Ex. 1.

Significantly, Rabita Trust maintains no physical presence in the U.S., *i.e.*, Rabita Trust has no field offices in the United States and Rabita Trust carries out no program-related work in the United States. See Ex. 1. Moreover, Rabita Trust neither solicits nor receives funding from any individuals or entities in the United States. See id. Rabita Trust solely conducts its efforts in Pakistan and Bangladesh. See id. In summary, Defendant Rabita Trust does not raise any funds in, does not provide any relief to, does not do any business in, and has absolutely no connection with the United States. See id.

Although, the Complaint alleges that Rabita Trust is: 1) A subsidiary and branch of the Muslim World League ("MWL"); 2) A sister organization to the International Islamic Relief Organization ("IIRO"); and 3) Is connected to the SAAR Network, Plaintiffs do not allege that Rabita Trust is the agent or mere department of any of these three entities. See Third Am. Compl. at ¶ 312, 338, 521-22, 525-26. There are no allegations within the Complaint that Rabita Trust does not operate independently as a separate legal and corporate entity with separate directorships from IIRO. And even though the Complaint alleges that Rabita Trust has shared one officer with Al-Watania Poultry, one officer with Sanabel Al-Kheer, one officer with Makkah al-Mukarramah, and three officers with MWL, there are no allegations in the Complaint that Rabita Trust does not operate as an independent and separate legal and corporate entity from Al-Watania Poultry, Sanabel Al-Kheer, Makkah al-Mukarrahmah and MWL. See Third Am. Compl. at ¶ 301, 312, 526-28. Moreover, the Complaint fails to allege that Rabita Trust does not maintain its own operations, board meetings, books, records, payroll records, budgets, and bank accounts, completely separate and apart from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry. Finally, there are

no allegations within the Complaint that Rabita Trust is not or has not been responsible for its own capitalization and management of assets wholly separate and apart from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry.

## II.   LEGAL ANALYSIS

### The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over Rabita Trust

The Court must dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between Rabita Trust and the United States to establish personal jurisdiction over Rabita Trust in this lawsuit.

### A.   Standard of Review

Under Rule 12(b)(2), the Plaintiffs bear the burden of making a prima facie case that personal jurisdiction exists over Rabita Trust.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  At this stage of the proceedings, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Southridge Capital Mgmt., LLC v. Lowry, 188 F. Supp.2d 388, 397 (S.D.N.Y. 2002) (Judge Owen).  However, to survive a motion to dismiss under Rule 12(b)(2), Plaintiffs must allege facts connecting the Rabita Trust with the forum.  See Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (citation omitted).  Moreover, the Supreme Court has cautioned that special care should be exercised when extending notions of personal jurisdiction to alien defendants.  See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114-15 (1987).

### B.   Legal Background

In International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), the United

States Supreme Court held that personal jurisdiction over a nonresident defendant exists only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" See also Kernan v. Kurz-Hastings, Inc., 175 F.3d 236 (2d Cir. 1999). Under this "minimum contacts" inquiry a distinction is made between general jurisdiction and specific jurisdiction. See Metropolitan Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 1996). General jurisdiction exists over a defendant if the defendant has "continuous and systematic" contacts with the forum. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415-416 (1984). Alternatively, where the claims at issue are related to or arise out of the defendant's contacts with the forum, a court may exercise specific jurisdiction over the defendant. See id. at 414. Specific jurisdiction is satisfied where "the Defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

In performing the "minimum contacts" analysis above, the service of process provision at issue determines the relevant forum against which to measure minimum contacts. Where service of process is based on a federal statute providing for nationwide service of process or on Fed.R.Civ.P. 4(k)(2), essentially the federal long-arm statute, minimum contacts are measured by the defendant's contacts with the United States as a whole, and not a particular state. See In re: Magnetic Audiotape Antitrust Litig., 334 F.3d at 207 (holding that defendants' minimum contacts should be measured with regard to the United States as a whole where § 12 of the Clayton Act provides for worldwide service of process). See also Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 207

(2d Cir. 2003) (holding that where personal jurisdiction is based on Fed.R.Civ.P. 4(k)(2), the due process analysis focuses on defendants' contacts with the United States as a whole).  In the case herein, Plaintiffs are likely to argue that Rabita Trust is subject to this Court's personal jurisdiction based on the ATA, 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent"), or Fed.R.Civ.P. 4(k)(2), both of which provide for nationwide service of process. Given that Rabita Trust has accepted service of process, the sole issue before the Court is whether Rabita Trust has the necessary minimum contacts with the United States to trigger personal jurisdiction.

    **C.**    **Rabita Trust Lacks Minimum Contacts with the United States for General Personal Jurisdiction**

General jurisdiction is based on the defendant's general business contacts with the forum.  See <u>Metropolitan Life Ins. Co.</u>, 84 F.3d at 568.  In order to show that general jurisdiction exists the plaintiff must "demonstrate the defendant's 'continuous and systematic general business contacts [with the forum.]'"  <u>Id.</u>  Fatal to Plaintiffs' claim that general jurisdiction exists as to Rabita Trust is the fact that Plaintiffs have utterly failed to plead any meaningful nexus between Rabita Trust and the United States as required to establish general personal jurisdiction.[1]  Not only have Plaintiffs failed to plead minimum contacts, Plaintiffs have failed to plead *any* contacts at all.  There is not a single allegation in the entire Complaint connecting Rabita Trust with the United States.

Rabita Trust is an Islamic charity with its headquarters in Islamabad, Pakistan. <u>See</u> Ex. 1.  Rabita Trust maintains no offices in the United States and Rabita Trust has no

---

[1] Plaintiffs also fail to allege that Rabita Trust has any contacts, whatsoever, with New York, thereby, eliminating any possibility of jurisdiction over Rabita Trust pursuant to the New York long-arm statute.

agents in the United States.  See id.  Likewise, Rabita Trust receives no funds from the United States, and Rabita Trust provides no relief within the United States.  See id.

Plaintiffs concede in their Complaint that 100% of Rabita Trust's charitable work is focused on two countries, Pakistan and Bangladesh.  See Third Am. Compl. at ¶¶ 521-22.  Moreover, the Complaint states that the majority of Rabita Trust's funding has come from the Muslim World League, which the Complaint alleges is heavily funded by Saudi Arabia.  See id.  Nowhere in the entire Complaint do Plaintiffs connect Rabita Trust with the United States.  Plaintiffs fail to allege that Rabita Trust maintains any, let alone, the requisite "substantial, continuous and systematic" contacts with the United States to support general personal jurisdiction.  See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 413-15.

### D.    Rabita Trust Lacks Minimum Contacts with the United States for Specific Personal Jurisdiction

Specific personal jurisdiction exists where "the claim arises out of, or relates to, the defendant's contacts with the forum."  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001).  In cases involving specific personal jurisdiction, "minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there."  Id.

As with the discussion on general personal jurisdiction, there are no allegations within the entire Complaint connecting Rabita Trust with the United States.  Moreover, there are no allegations that Plaintiffs' claim (damage suffered as a result of the 9/11 attacks) arises out of or relates to any contacts between Rabita Trust and the United States, or that Rabita Trust purposefully availed itself of doing business in the United

6

States.  Moreover, there are no allegations that give rise to an inference that Rabita Trust

could foresee being haled into a United States court.

E.      **Rabita Trust Lacks Minimum Contacts with the United States Under the Effects Test**

One variation of specific personal jurisdiction is the "effects test," which holds

that a foreign defendant may be subject to personal jurisdiction within the United States if

that defendant commits an intentional wrongful act outside of the forum directed at an

entity or individual within the forum.  See Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Under the "effects test," Rabita Trust would be subject to personal jurisdiction within the

United States only if:  1) Rabita Trust's activities outside of the United States caused the

9/11 attacks; 2) The 9/11 attacks were a "direct and foreseeable result" of the conduct of

Rabita Trust; and 3) Rabita Trust knew, or had good reason to know, that its conduct

would result in the 9/11 attacks.  See Corning Inc. v. Shin Etsu Quartz Prod. Co., Ltd.,

242 F.3d 364 (2d Cir. 2000).  Even if the Plaintiffs allege, which they have not done, that

the 9/11 attacks were the result of acts committed by Rabita Trust outside of the United

States, this in and of itself is not enough to subject Rabita Trust to personal jurisdiction in

this Court.  See id.

Turning first to the causation element of the "effects test," Plaintiffs must plead a

close causal connection between the out of forum actions of Rabita Trust and the 9/11

attacks in the United States.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226,

233 (S.D.N.Y. 1991) (Judge Pollack).  The standard for causation under the "effects test"

"is somewhat more demanding than just 'some causal relation.'"  Huang v. Sentinel

Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (Judge Leisure).  See also S.E.C. v.

Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990) (holding that not every causal

connection between action abroad and ultimate injury in the United States will suffice).

Not only have Plaintiffs failed to plead a close causal connection between any actions of

Rabita Trust and the 9/11 attacks, they have failed to plead any causal connection at all.

Plaintiffs allege that Rabita Trust, through Wael Jelaidan, aided and abetted terrorists and

that Rabita Trust funded Al Qaeda.  Third Am. Compl. at ¶¶ 312, 324.  However,

Plaintiffs never allege if or how these actions by Rabita Trust caused the 9/11 attacks.

     As to the foreseeability element of the "effects test," "the 'low floor' of

foreseeability needed in the tort context is not enough to support personal jurisdiction

…."  Corning Inc., 242 F.3d at 364.  See also Herbstein v. Bruetman, 768 F. Supp. 79, 81

(S.D.N.Y. 1991) (Judge Sweet) (holding that "it is not enough that causing an injury

within the forum may be foreseeable, within the meaning of proximate causation and tort

liability).  Rather, the effect within the forum must occur "as a direct and foreseeable

result of the conduct outside the territory."  Corning Inc., 242 F.3d at 364, citing, Leasco

Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972).  As with

causation, Plaintiffs never meet the heightened threshold of foreseeability required under

the "effects test," and, in fact, fail to directly or indirectly allege that any actions by

Rabita Trust outside of the United States foreseeably resulted in the 9/11 attacks.

     Finally, focusing on the third factor of the "effects test," Plaintiffs must show that

"the defendant 'must know, or have good reason to know, that his conduct will have

effects in the [forum] seeking to assert jurisdiction over him.'"  Corning Inc., 242 F.3d at

364, citing, Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d

Cir. 1972).  Once again, just as Plaintiffs have failed to meet the heightened standards of

causation and foreseeability of the "effects test," Plaintiffs also fail to make any

allegations giving rise to the conclusion that Rabita Trust knew or had good reason to know that any of its activities outside of the United States would result in 9/11.

Under the "effects test's" heightened standards of causation and foreseeability and the greater scrutiny afforded to "effects test"-based claims of personal jurisdiction in the international context, Plaintiffs' Complaint falls far short of sufficiency.  See Huang, 657 F. Supp. at 489, *citing*, Bersch v. Drexel Firstone, Inc., 519 F.2d 974, 1000 (2d Cir. 1975) (citation omitted) (holding that "when a court bases personal jurisdiction on effects in a [forum] caused by acts done elsewhere, it must proceed 'with caution, particularly in an international context'").

> ### F.    Personal Jurisdiction Over Rabita Trust Does Not Arise from Allegations of Conspiracy, and Aiding and Abetting

Despite Rabita Trust's complete lack of "substantial, continuous and systematic" contacts with the United States, Plaintiffs appear to allege that Rabita Trust conspired with all other Defendants, including some that Plaintiffs have alleged have contacts with the United States.  See Third Am. Compl. at ¶¶ 5, 23-24.  Accordingly, Plaintiffs are likely to argue that the Court has personal jurisdiction over Rabita Trust because of its alleged connections with co-conspirator Defendants, who allegedly have contacts with the United States, and because the resulting injuries of the alleged conspiracy occurred in the United States.  See Singer v. Bell, 585 F. Supp. 300, 302 (S.D.N.Y. 1984) (Judge Weinfeld) (citation omitted) (holding that "the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant").

While New York federal courts recognize conspiracy-based personal jurisdiction, "the bland assertion of conspiracy or agency is insufficient to establish [such personal] jurisdiction."  Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975)

(finding that there were no allegations of specific facts connecting the defendant with any activity within the New York forum).  See also Galeri Gmurzynska v. Hutton, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003) (Judge Berman) (citation omitted) (holding that conclusory allegations and speculation of conspiracy-based personal jurisdiction will not survive a motion to dismiss for lack of personal jurisdiction).  Rather:

> [T]o establish jurisdiction over a nondomiciliary defendant on the basis of the [forum] acts of a co-conspirator, the plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in [the forum], and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-[forum] tortfeasor.

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (Judge Kaplan) (citation omitted).  Accordingly, Plaintiffs must establish a *prima facie* case of conspiracy by alleging "the primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the corrupt agreement; (c) the parties' intentional participation in the furtherance of the common plan or purpose; and (d) the resulting damage or injury."  E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc., No. 00 CUV, 8670, 2003 WL 22064259 at *12 (S.D.N.Y. Sept. 5, 2003) (Magistrate Judge Gorenstein).  Furthermore, Plaintiffs must establish Rabita Trust's membership in the conspiracy by alleging:

(1) that the out-of-state co-conspirator had an awareness of the effects of the activity in [the forum], (2) that the [forum] co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in [the forum] acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

Id.

Plaintiffs' "bare bones" attempt to establish personal jurisdiction over Rabita Trust by piggybacking the actions of alleged co-conspirators with alleged contacts to the forum onto Rabita Trust must fail.  The Complaint contains no factual allegations supporting:  1) The inference that Rabita Trust was a member of a "9/11 Conspiracy"; 2) The existence of an agency relationship between Rabita Trust and those who actually perpetrated the 9/11 attacks within the United States; 3) The existence of a corrupt agreement between Rabita Trust and the perpetrators of the 9/11 attacks; 4) Any overt act by Rabita Trust in furtherance of the 9/11 attacks; 5) Rabita Trust's intentional participation in a common plan to commit the 9/11 attacks on the United States; 6) The theory that Rabita Trust had an awareness of the effects on the United States of any activity that Rabita Trust conducted; 7) The theory that the 9/11 attacks were for the benefit of Rabita Trust; or 8) The theory that the perpetrators of the 9/11 attacks within the United States were acting at the behest, on behalf, or under the control of Rabita Trust.

Rather, the Complaint contains only a few vague catch-all allegations applying to all defendants, which infer the existence of a "9/11 Conspiracy."  See Third Am. Compl. at ¶¶ 5, 23-24.  "[S]uch wholly non- specific allegations cannot form the 'sole basis' for connecting the moving part[y] to the alleged conspiracy."  Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July

15, 2002) (Judge Mukasey).  <u>See also</u> <u>Second Amend. Found.</u>, 274 F.3d at 524 (holding

that "[t]he allegation that the [Defendants] 'conspired together' represents nothing more

than a legal conclusion, which we have held 'does not constitute the *prima facie* showing

necessary to carry the burden of establishing personal jurisdiction'").

Although Rule 8 establishes a liberal pleading standard, the "mere incantation of

the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the

Rule's requirements."  <u>Galeri Gmurzynska</u>, 257 F. Supp.2d at 631 (citation omitted).

Plaintiffs have failed to meet even this lowest of standards because they have failed to

allege any facts establishing or even supporting Rabita Trust's involvement in a "9/11

Conspiracy."  Plaintiffs have only succeeded in alleging the type of unilateral activity by

third parties that the "purposeful availment" requirement is designed to eliminate.  <u>See</u>

<u>Burger King Corp.</u>, 471 U.S. at 475.

### G.    Rabita Trust Lacks Minimum Contacts Through Wael Jelaidan

Given the fact that Rabita Trust has no "minimum contacts" with the United

States, Plaintiffs may try to argue that Rabita Trust is subject to personal jurisdiction

through its Secretary-General, Wael Jelaidan.  However, Plaintiffs must first prove that

the Court has personal jurisdiction over Wael Jelaidan, and for the reasons stated in Wael

Jelaidan's Motion to Dismiss there is no personal jurisdiction over Wael Jelaidan.  <u>See</u>

Defendant Wael Jelaidan's Motion to Dismiss, pp.4-15.  If the Court has no personal

jurisdiction over Wael Jelaidan, then it is impossible for the Court to have personal

jurisdiction over Rabita Trust through Wael Jelaidan.

### H.    Rabita Trust Lacks Minimum Contacts Through Muslim World League, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry

Plaintiffs will also likely attempt to establish this Court's personal jurisdiction over Rabita Trust through an alleged affiliation between Rabita Trust and MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry.  See Third Am. Compl. at ¶¶ 301, 312, 338, 521-22, 525-26, 528.  Plaintiffs will likely argue that either or all of the aforementioned entities are subject to personal jurisdiction or have minimum contacts with United States, and that Rabita Trust is subject to personal jurisdiction through its alleged affiliations with those entities.  However, the Court should note that in the context of the 9/11 civil lawsuits, of the five entities listed above, MWL is the only entity over which any pre-consolidation court has exercised personal jurisdiction.  See Burnett v. Al Baraka Inv. and Dev., 274 F. Supp.2d 86 (D.D.C. 2003).  Moreover, at least IIRO, if not the other three entities, has filed a motion to dismiss for lack of personal jurisdiction.

The law is clear that " the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).  Similarly, "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  See also Intermor v. Walt Disney Co., 250 F. Supp.2d 116, 120 (E.D.N.Y. 2003) (Judge Johnson) (citation omitted) (holding that fact that corporate parent did business in forum and was thus subject to personal jurisdiction in forum was insufficient to subject foreign subsidiary to personal jurisdiction in that forum).  In fact, courts have maintained that a foreign affiliate or subsidiary remains a separate entity for purposes of minimum contacts analysis even though the parent is

involved in monitoring the subsidiary's performance, supervising the subsidiary's budgetary decisions, and articulating the subsidiary's policies.  See United States v. Bestfoods, 524 U.S. 51, 69 (1998); Doe v. Unocal Corp., 248 F.3d 915, 925-931 (9th Cir. 2001) (holding that where there was no alter ego or agency relationship between California subsidiaries and foreign parent, corporate relationship alone was insufficient to exercise personal jurisdiction over parent).

The forum contacts of a corporation may be imputed to a foreign affiliate/subsidiary only if an agency or "mere department" relationship exists between the forum corporation and the foreign corporation.  See Jazini v. Nissan Motor Co., LTD., 148 F.3d 181, 184 (2d 1998).  Assuming without conceding that either MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry is subject to personal jurisdiction in the United States, to establish that one of these entities is an agent for Rabita Trust in the United States, Plaintiffs must show that at least one of those entities "does all the business which [Rabita Trust] could do were it here by its own officials."  Id.  Stated differently, the "agency test" is whether Rabita Trust would have to initiate direct contacts with the United States if either of the aforementioned entities were absent from the United States because the United States is too important to Rabita Trust's welfare.  See Meteoro Amusement Corp. v. Six Flags, 267 F. Supp.2d 263, 270 (N.D.N.Y. 2003) (Judge McCurn).

In their Complaint, Plaintiffs do not allege any facts to support the contention that if MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry were absent from the United States, Rabita Trust would need to create a presence in the United States because the United States is so important to Rabita Trust's welfare.  Rabita Trust

repatriates Biharis stranded in Bangladesh to Pakistan.  See Third Am. Compl. at ¶ 522; Ex. 1.  Rabita Trust's mission has nothing to do with the United States.  Plaintiffs do not even make the conclusory allegation, previously rejected by the Second Circuit, that MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry act as Rabita Trust would were it located in the United States.  See Jazini, 148 F.3d at 181 (holding that conclusory statement that subsidiary is able to act as would its foreign parent, were the foreign parent located in the State of New York, does not establish an agency relationship for purposes of personal jurisdiction).

Given that Plaintiffs have failed to show that either MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry is an agent for Rabita Trust in the United States, Plaintiffs must prove that one of those listed entities is a mere department of Rabita Trust or Rabita Trust is a mere department of one of those entities, in order to subject Rabita Trust to personal jurisdiction in the United States. Significantly, the Court should note that Rabita Trust is not a corporation, but is a charitable organization established for the sole, geographically specific purpose of repatriating Bihari families stranded in Bangladesh to Pakistan.  See Ex. 1.  Given Rabita Trust's mission the application of the "mere department" test is imperfect and not useful.

Regardless, assuming without conceding that any of the aforementioned entities are subject to personal jurisdiction in the United States, Plaintiffs must establish the following four factors in order to meet the "mere department" test:  1) There is common ownership over the forum corporation and the foreign corporation, which is essential to the "mere department" test; 2) Either corporation is financially dependant on the other; 3) Either corporation interferes with the selection and assignment of the other corporation's

executive personnel and fails to observe the corporate formalities; and 4) Either corporation exercises sufficient control over the other corporation's marketing and operational policies.  See Volkswagenwerk Aktiengesellschaft, 751 F.2d at 120-122.

Starting with the common ownership factor, there are absolutely no allegations within the Complaint that there is any common ownership between Rabita Trust and Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Wantania Poultry.  Given that this factor is essential to the "mere department" test, there can be no jurisdiction over Rabita Trust through its alleged connections to Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Wantania Poultry.

With regard to MWL and IIRO, the Complaint alleges only that Rabita Trust is the sister entity of IIRO and a subsidiary of MWL.  Third Am. Compl. at ¶ 525.  Even though these allegations appear to establish common ownership in the context of a motion to dismiss, the Court should note that MWL, IIRO and Rabita Trust are charitable organizations, not corporations, so the issue of "ownership" is inapplicable.  Moreover, Plaintiffs fail to establish the other three factors of the "mere department" test with regard to MWL and IIRO.

Turning first to the financial dependency factor, Plaintiffs must show that Rabita Trust is "wholly dependant upon [MWL's or IIRO's] financial support to remain in business."  Derthick v. Bassett-Walker, Inc., Nos. 90 Civ. 5427, 90 Civ. 7479, 90 Civ. 3845, 1992 WL 249951 at *3 (S.D.N.Y. Sept. 23, 1992) (Judge Cannella).  In other words, Plaintiffs must "show that [Rabita Trust] could not be run without the financial backing of [MWL or IIRO.]"  Meteoro Amusement Corp., 267 F. Supp.2d at 271.  In making this determination, the Court must look to whether MWL or IIRO "provides no-

or low-interest loans to [Rabita Trust] or extends credit on terms not otherwise available, guarantees [Rabita Trust's] obligations, or provides and pays for insurance coverage or other necessities on behalf of [Rabita Trust.]"  ESI, Inc. v. Coastal Corp., 61 F. Supp.2d 35, 53 (S.D.N.Y. 1999) (Judge Conner).  Importantly, none of these factors apply in this context because we are considering charitable organizations.

There are no allegations in the Complaint that Rabita Trust is financially dependant on or requires the financial backing of IIRO.  Similarly, there are also no allegations that MWL provides no- or low-interest loans to Rabita Trust, guarantees Rabita Trust's obligations or pays for any necessities on behalf of Rabita Trust.  Rather, the only allegation in the Complaint financially connecting Rabita Trust and MWL is the allegation that Rabita Trust was started with money donated by MWL, Pakistan, and Saudi Arabia.  Third Am. Compl. at ¶¶ 521-22.  However, this allegation, in and of itself, proves that Rabita Trust is not wholly dependant upon MWL for funding, as the Complaint alleges that Rabita Trust has also received funding from both Saudi Arabia and Pakistan.  Moreover, the Complaint indicates that Rabita Trust received far more funding from Pakistan than from MWL.  Third Am. Compl. at ¶ 522 (alleging that Rabita Trust received 250 million Riyals from Pakistan and only 50 million Riyals from MWL).  Finally, just because Rabita Trust received some initial funding from MWL does not mean that it continued to and remains financially dependant upon MWL.

The third factor in the "mere department" test requires Plaintiffs to establish that IIRO or MWL officers extended their control over Rabita Trust "beyond that normally exercised by boards of directors."  Volkswagenwerk Aktiengesellschaft, 751 F.2d at 121. First, there are no allegations that IIRO has anything to do with Rabita Trust and no facts

alleged that IIRO interfered with the selection and assignment of Rabita Trust's executive personnel or failed to observe corporate formalities with regard to Rabita Trust. Therefore, the third factor is not met with respect to IIRO.

Focusing on MWL, the only remotely relevant allegation regarding corporate formalities is the allegation that Rabita Trust and MWL have shared three officers.  Third Am. Compl. at ¶ 312, 528.  Significantly, the Complaint does not allege that Rabita Trust and MWL shared these three officers during the same time period.  Moreover, "the overlap of directors and officers between a parent and subsidiary alone does not render the subsidiary a "mere department" for jurisdictional purposes."  Weiss v. La Suisse, 69 F. Supp.2d 449, 458 (S.D.N.Y. 1999) (Judge McMahon).  See also Meteoro Amusement Corp., 267 F. Supp.2d at 271.  Rather, the focus of this factor is broader and examines "whether the parent shares officers with the subsidiary and shifts executives among its subsidiaries, whether the parent pays the executives' salaries, and whether the subsidiary holds separate meetings of its Board of Directors."  ESI, Inc., 61 F. Supp.2d at 54.

In the cases finding that the existence of overlapping directors and officers favored the Plaintiffs in a "mere department" analysis, the factual scenarios almost always involved situations in which there was practically 'mirror image symmetry' between the directors and officers of the forum corporation and the foreign corporation. See Self Int'l (HK) Ltd. v. La Salle Nat'l Bank, Chicago, 01 Civ. 4291, 2002 WL 500372 at *3 (S.D.N.Y. March 29, 2002) (Judge Friedman) (both companies shared the same Senior Vice Presidents and the two Executive Vice Presidents of one company were also the Chairman and CEO of the related company); Obabueki v. International Bus. Mach. Corp., Nos. 99 Civ. 11262, 99 Civ. 12486, 2001 WL 921172 at *5 (S.D.N.Y. Aug. 14,

2001) (Judge Schwartz) (all board members of one company were officers or directors of the related company and both companies shared all, but one of the same officers); ESI, Inc., 61 F. Supp.2d at 54 (S.D.N.Y. 1999) (finding a massive overlap of corporate directors and officers).  In contrast, the Complaint alleges that Rabita Trust has only shared three officers with MWL, and the Complaint fails to allege that MWL shifts executives among its subsidiaries, pays the salaries of Rabita Trust's executives, or that Rabita Trust does not hold separate meetings of its Board of Directors.[2]

As to the final factor regarding the extent of control over Rabita Trust's marketing and operational policies, courts have focused on whether "the parent's promotional materials or public documents hold out the subsidiary as a branch or division of the parent, or the parent determines the subsidiary's operational policies and strategy." ESI, Inc., 61 F. Supp.2d at 55.  As with the second and third factor, there are no allegations within the Complaint connecting IIRO's promotional materials with Rabita Trust or connecting IIRO with the determination of Rabita Trust's operational policies and strategy.  Moreover, although the Complaint does allege that Rabita Trust is a branch of MWL, there are no allegations that MWL's promotional materials or public documents indicate the same or that MWL determines Rabita Trust's operational policies.  Third Am. Compl. at ¶ 324.  Therefore, just like the second and third factor, the fourth and final factor weighs in favor of Rabita Trust in the "mere department" analysis.

In the end, to obtain jurisdiction over Rabita Trust through MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry, Plaintiffs must establish that one of these named entities is subject to personal jurisdiction in the United States, *and*

---

[2] The factor regarding the shifting of executive officers among subsidiaries appears inapplicable in the context of charitable organizations.

that an agency or "mere department" relationship exists between that entity with minimum contacts and Rabita Trust, or that there has been a total disregard for the separate corporate existence of Rabita Trust vis-à-vis the entity with minimum contacts. See Weiss, 69 F. Supp.2d at 458.  At best, Plaintiffs have dubiously alleged that common ownership exists between IIRO and MWL, and Rabita Trust.  However, where a plaintiff produces "evidence of common ownership and little else, courts refuse to treat a subsidiary as a 'mere department' for jurisdictional purposes."  Dorfman v. Marriott Int'l Hotels, Inc., No. 99 CIV 10496, 2002 WL 14363 at *7 (S.D.N.Y. Jan. 3, 2002) (Judge Haight).  Rabita Trust is in fact a separate and independent corporate entity from MWL, IIRO, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry, and the Complaint fails to allege any different.

Because the Court lacks personal jurisdiction over Rabita Trust, it must dismiss it as a defendant in this lawsuit.  See Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 778-79 (2000); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).

## III.   **CONCLUSION**

For the foregoing reasons, Defendant Rabita Trust respectfully requests that this Court grant its Motion to Dismiss for lack of personal jurisdiction.

Respectfully submitted,


_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates

1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Rabita Trust*

Dated:  March 19, 2004