**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **03 MDL 1570 (RCC)** |
| This document relates to:<br><br>KATHLEEN ASHTON, et al,<br>　　　　　Plaintiffs<br>　　　　　v.<br><br>AL-QAEDA ISLAMIC ARMY, et al.,<br>　　　　　Defendants | **02 CV 6977 (RCC)** |

**DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S**
**MOTION TO DISMISS THE**
**FOURTH AMENDED CONSOLIDATED MASTER COMPLAINT**

Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant*
*International Islamic Relief*
*Organization*

## <u>TABLE OF CONTENTS</u>

**Page Number**

Table of Contents i

Table of Authorities ii

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT INTERNATIONAL ISLAMIC
RELIEF ORGANIZATION'S MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT 1

I. FACTUAL BACKGROUND 1

II. LEGAL ANALYSIS 5

  A. The Court Must Dismiss the Complaint
   for Lack of Personal Jurisdiction Over IIROSA 5

   1. Applicable Legal Standard 5

   2. IIROSA Lacks Minimum Contacts
    with the United States 7

   3. Contacts Vis-à-vis Muslim World
    League, Islamic Relief Organization,
    and the Success Foundation 9

   4. Allegations of Aiding and Abetting are
    Insufficient to Exercise Personal Jurisdiction
    over IIROSA 14

  B. Allegations of Aiding and Abetting are Insufficient
   to Exercise Personal Jurisdiction over IIROSA 17

   1. Applicable Legal Standard 17

   2. Plaintiffs' Failure to Provide IIROSA with
    Notice of the Claims against It Warrant Dismissal 18

III. CONCLUSION 20

# TABLE OF AUTHORITIES

**Page Numbers**

***Federal Cases:***

*Atuahene v. City of Hartford*, 10 Fed.Appx. 33 (2d Cir. 2001)     18

*Briscoe v. LaHue*, 663 F.2d 713 (7thCir. 1981)     18

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)     17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)     7

*Burnett v. Al Baraka Inv. and Dev. Corp.*,
274 F. Supp.2d 86 (D.D.C. 2003)     7

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5thCir. 1994)     7

*Calder v. Jones*, 465 U.S. 783 (1984)     16

*Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*,
242 F.3d 364 (2d Cir. 2000)     16

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)     12

*Estate of Ungar v. The Palestinian Auth.*,
153 F. Supp. 2d 76 (D.R.I. 2001)     8

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp.2d 369 (S.D.N.Y. 2002)     14

*Galeri Gmurzynska*, 257 F. Supp.2d 621 (S.D.N.Y. 2003)     14, 15

*Gauvin v. Trembatore*, 682 F. Supp. 1067 (N.D. Cal. 1988)     18

*Ge v. Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000)     17

*Helicopteros Nationales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)     6

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)     17

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485 (S.D.N.Y. 1987)     17

*Intermor v. Walt Disney Co.*, 250 F. Supp.2d 116 (E.D.N.Y. 2003)     9

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)                6

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998)          10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)                  9

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999)             6

*Koehler v. Bank of Bermuda Ltd*, 101 F.3d 863 (2d Cir. 1996)            10

*Kowal v. MCI Communications Corp.*,
16 F.3d 1271 (D.C. Cir. 1994)                                            17

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972)                                             16

*Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975)      14

*Meteoro Amusement Corp. v. Six Flags*,
267 F. Supp. 263 (N.D.N.Y. 2003)                                         10

*Metropolitan Life Ins. Co. v. Robertson CECO Corp.*,
84 F.3d 560 (2d Cir. 1996)                                               6

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)        6

*Papasan v. Allain*, 478 U.S. 265 (1986)                                 18

*Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54 (D.D.C. 1996)          11

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)                    14

*S.E.C. v. Vision Communications, Inc.*,
74 F.3d 287 (D.C. Cir. 1996)                                             7

*Schenker v. Assicurazioni Genereali S.p.A., Consol.*,
No. 98 Civ 9186, 2002 WL 1560788 (S.D.N.Y. July 15, 2002)                15

*Second Amendment Found. v. U.S. Conference of Mayors*,
274 F.3d 521 (D.C. Cir. 2001)                                            5, 15

*Square D Co. v. Niagara Tariff Bureau, Inc.*,
476 U.S. 409 (1986)                                                      17

*Southridge Capital Mgmt., LLC v. Lowry*,
188 F. Supp.2d 388 (S.D.N.Y. 2002)                                       5

*TIFA, Ltd. v. Republic of Ghana*,
C.A. No. 99-1513, 1991 WL 179098 (D.D.C. Aug. 27, 1991)        6

*United States v. Bestfoods*, 524 U.S. 51 (1998)        12

*United States v. Philip Morris, Inc.*,
116 F. Supp. 2d 116 (D.D.C. 2000)        6, 14

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)        14

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
751 F.2d 117 (2d Cir. 1984)        9, 10


**_Federal Statutes and Rules:_**

18 U.S.C. § 2334(a)        7

Fed. R. Civ. P. 8        15

Fed. R. Civ. P. (a)(2)        18

Fed. R. Civ. P. 12(b)(2)        1, 5

Fed. R. Civ. P. 12(b)(6)        1, 17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **03 MDL 1570 (RCC)** |
| This document relates to:<br><br>KATHLEEN ASHTON, et al,<br>　　　　　　Plaintiffs<br>　　　　　　v.<br><br>AL-QAEDA ISLAMIC ARMY, et al.,<br>　　　　　　Defendants | **02 CV 6977 (RCC)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant International Islamic Relief Organization of Saudi Arabia

("IIROSA")[1], through undersigned counsel, submits this Memorandum of Law in support

of its motion to dismiss plaintiffs' Fourth Amended Complaint ("Complaint"), pursuant

to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or if the Court exercises

jurisdiction over IIROSA, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

upon which relief can be granted.

## I.　　FACTUAL BACKGROUND

IIROSA is a nongovernmental charitable organization founded in 1978 and

headquartered in Makkah, Saudi Arabia, with administrative offices in Jeddah, Saudi

Arabia.  (Affidavit of Saleh Bin A. Al-Saikhan dated March 15, 2004 ("Al-Saikhan

Aff.") ¶ 3.)  Specifically, IIROSA provides humanitarian relief in the form of food, water,

medicine, shelter, and blankets and international development assistance through its

---

[1]Plaintiffs' Complaint refers simply to the International Islamic Relief Organization or IIRO without
providing any other details about the entity.  This firm represents the Saudi-based headquarters referred to
herein as IIROSA.

health, education, social welfare, and other programs.  IIROSA has 29 foreign offices and

carries out its humanitarian relief work and international development assistance

programs in over 120 countries.  (Al-Saikhan Aff. ¶ 5.)  IIROSA's funding comes from

donations, grants, bequests, and contributions from international institutions and the

government of the Royal Kingdom of Saudi Arabia, and dividends from investments,

among other sources.  (Al-Saikhan Aff. ¶ 6.)  Nothing in the Complaint, save for

plaintiffs' recitation of conclusory – and unsubstantiated – allegations, specifically links

IIROSA with the terrorist plot resulting in the September 11, 2001, attacks in the United

States.  IIROSA operates as a legitimate charitable entity.  In other words IIROSA: (1)

has no connection to terrorism, (2) has never espoused terrorism, (3) has never knowingly

or intentionally financed terrorist activities. (Al-Saikhan Aff. ¶ 7.)

    Significantly, IIROSA has no connection to the United States.  IIROSA maintains

no physical presence in the United States, *i.e.*, IIROSA currently has no foreign office in

the United States and IIROSA carries out no program-related work in the United States

(Al-Saikhan Aff. ¶ 8.)  Moreover, IIROSA neither solicits nor receives funding from any

individuals or entities in the United States.  *Id.*

    Although IIROSA is an entity working under the umbrella of the Muslim World

League ("MWL") as alleged in the Complaint (Compl. ¶ 298), plaintiffs do not allege and

there is no proof that IIROSA is the agent or alter ego of the MWL.  IIROSA has a

separate and distinct mission from the MWL's mission.  While IIROSA is the MWL's

"operational arm" (Compl. ¶ 298) in the area of humanitarian relief operations as well as

health, education, development, social, and economic welfare programs, IIROSA and

MWL are each separate legal and corporate charitable organizations established under the

applicable laws and regulations of the Royal Kingdom of Saudi Arabia.  (Al-Saikhan Aff. ¶ 7.)

Plaintiffs also appear to allege, mistakenly, that the Islamic Relief Organization, a Virginia-based entity, and IIROSA are "one and the same" by alleging that IIROSA "operates [in the United States] under the name of The INTERNATIONAL RELIEF ORGANIZATION (IRO)" (Compl. ¶311) and that another Virginia-based entity, the Success Foundation,[2] and IIROSA are affiliated organizations (Compl. ¶311).  Plaintiffs are simply wrong. The United States-based entity called the Islamic Relief Organization and the Saudi-based IIROSA have always been separate corporate and legal entities.  (*See* Al-Saikhan Aff. ¶11.) Furthermore, the Islamic Relief Organization ceased to exist as a corporate entity initially in 1998 and finally in 2002.  (Al-Saikhan Aff. ¶10.) Likewise, IIROSA and the Success Foundation are not affiliated organizations.  (Al-Saikhan Aff. ¶12.)

Plaintiffs do not allege and there is no proof that IIROSA is the agent or alter ego of the MWL, the now defunct United States-based Islamic Relief Organization, or the Success Foundation.  Indeed, at all times relevant herein, IIROSA has maintained itself as an independent organization with its own operations, governance, bank accounts, books, and records, completely separate and apart from the MWL, the now defunct Islamic Relief Organization, and the Success Foundation. (Al-Saikhan Aff. ¶¶11-12.)  Finally, IIROSA is and always has been responsible for its own capitalization and management of

---

[2] Although it is not clear what specific entity plaintiffs refer to in their Complaint, a review of the following websites reveals no reference to IIROSA.  *See* http://www.guidestar.org/search/report/board.jsp listing "SUCCESS FOUNDATION INC" with an address of 3606 Forest Dr. Ste. B, Alexandria, VA 22302.  See also http://www.successfoundation.org/contact.html listing a postal address of  P.O. Box 8125, Falls Church, Virginia 22041 U.S.A.

assets wholly separate and apart from the MWL, the now defunct Islamic Relief Organization, and the Success Foundation. *Id.*

Plaintiffs' Complaint contains a hodgepodge of conclusory and unsubstantiated allegations involving IIROSA and utterly fails to allege facts sufficient to establish personal jurisdiction over IIROSA. Moreover, the allegations in the Complaint concerning IIROSA are disjointed and conclusory. In fact, the allegations are difficult to piece together and are simply contradictory in places. For example, plaintiffs allege that IIROSA is a "vast independent terrorist machine – funding, recruiting and aiding and abetting AL QAEDA around the globe," (Compl. ¶310), but plaintiffs also concede that "[o]nce money was withdrawn from the bank accounts of relief organizations, its use by AL QAEDA can be virtually untraceable," (Compl. ¶395). Similarly, plaintiffs allege that "IIRO was implicated in the bombing of the United States Embassies in Kenya and Tanzania in 1998," (Compl. ¶318), yet buried deeper in the Complaint is the qualification that the Kenyan High Court *reversed* the Kenyan government's NGO coordinator's initial – and uninvestigated – determination implicating IIROSA and other charities in the bombing. (Compl. ¶¶510-12). The Complaint also ignores the fact that the government of Tanzania never even "implicated" IIROSA in the 1998 United States Embassy bombing in that country. IIROSA is a legitimate charitable organization committed to assisting poor people and has never knowingly or intentionally funded al Qaeda or any terrorist activities. (*See* Al-Saikhan Aff. ¶7.)

In the unlikely event that the Court finds that IIROSA has the necessary connection to the forum for the Court to exercise personal jurisdiction over it, the Complaint fails to state a cause of action against IIROSA because it contains no

allegations of (i) knowledge or intent on IIROSA's part or (ii) a causal connection between alleged IIROSA funding and the September 11, 2001, attacks in the United States.  Additionally, there is no temporal or rational nexus between the allegations in the Complaint concerning IIROSA and the September 11, 2001, attacks in the United States. Moreover, the Complaint lacks sufficient facts to establish aiding and abetting a conspiracy as it relies substantially on conclusory legal allegations applicable to "all defendants."

**II.    LEGAL ANALYSIS**

**A.    The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over IIROSA**

The Court must dismiss plaintiffs' Complaint against IIROSA for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between IIROSA and the United States to establish personal jurisdiction over it as a defendant in this lawsuit.

**1.    Applicable Legal Standard**

Pursuant to Rule 12(b)(2), the plaintiff bears the burden of making out a *prima facie* case to establish personal jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  Although at this stage of the proceedings, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor," *Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp.2d 388, 397 (S.D.N.Y. 2002), in order to survive a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff must provide facts sufficient to establish minimum contacts between the defendants and the forum.  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  In order to meet this burden,

a plaintiff must demonstrate "that the defendants' contacts with the forum suffice to justify the exercise of personal jurisdiction, [and], 'the Court is no longer bound to treat all of plaintiff's allegations as true.'" *United States v. Philip Morris Inc.*, 116 F. Supp.2d at 120 n. 4 (quoting *TIFA, Ltd. v. Republic of Ghana*, C.A. No. 99-1513, 1991 WL 179098, at *8 (D.D.C. Aug. 27, 1991) (citation omitted) (noting that when jurisdiction is challenged, a court may consider affidavits)). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum; mere allegations of a conspiracy will not suffice." *United States v. Philip Morris Inc.*, 116 F. Supp.2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

In *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), the U.S. Supreme Court held that a court may exercise personal jurisdiction over a nonresident defendant only if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999). Moreover, this "minimum contacts" analysis is performed in two distinct contexts: general jurisdiction and specific jurisdiction. *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *see also Metropolitan Life Ins. Co. v. Robertson CECO Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). General jurisdiction over a defendant may be exercised to resolve claims that do not arise from the defendant's contacts with the forum state if the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nationales*, 466 U.S. at 415-16. Alternatively, a court may exercise specific jurisdiction over the nonresident defendant if the nonresident

defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In their Complaint, plaintiffs assert a claim under the Antiterrorism Act ("ATA") 18 U.S.C. § 2334(a), among others.  In *Burnett*, Judge Robertson stated that "[b]ecause the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes . . . 'is whether the defendant has had minimum contacts with the United States.'" *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp.2d 86, 95-6 (D.D.C. 2003) §(citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted)).  Therefore, the appropriate question is whether IIROSA has sufficient "minimum contacts" with the United States for the Court to exercise personal jurisdiction over it.  *See S.E.C. v. Vision Communications, Inc.*, 74 F.3d 287, 289-90 (D.C. Cir. 1996).

As demonstrated below, because IIROSA has absolutely *no* contacts with the United States, the Complaint must be dismissed against it for lack of personal jurisdiction.

**2.      IIROSA Lacks Minimum Contacts with the United States**

The Court must dismiss plaintiffs' lawsuit against IIROSA because plaintiffs have utterly failed to plead any nexus between IIROSA and the United States.  Not only have plaintiffs failed to plead minimum contacts, plaintiffs have failed to plead *any* contacts whatsoever.

IIROSA is a Saudi-based nongovernmental charitable organization which provides humanitarian assistance and administers international development programs in

countries with a substantial Muslim population.  IIROSA maintains no offices or operational presence in the United States and IIROSA does not have any agents in the United States.  (Al-Saikhan Aff. ¶8.)  Likewise, IIROSA neither solicits nor receives funds from the United States and none of IIROSA's charitable works are carried out in the United States. *Id.*  Nothing in plaintiffs' Complaint establishes "continuous and systematic general business contacts" between IIROSA and the United States.  *See Metropolitan Life Ins. Co.*, 84 F.3d at 568.  Therefore, Plaintiffs have failed to establish general personal jurisdiction over IIROSA.  *See Helicopteros Nacionales*, 466 U.S. at 413-15.

Plaintiffs' counsel might try to rely on *Estate of Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001), in their opposition to this motion to dismiss for lack of personal jurisdiction.  But IIROSA's alleged contacts with the United States are nonexistent and, therefore, distinguishable from the Palestinian Authority defendants' contacts with the United States in that case.  In *Ungar*, the United States District Court in Rhode Island agreed to exercise personal jurisdiction over the "defendants PA and PLO" in a civil action brought under the Antiterrorism Act and other negligence and intentional tort theories arising from the murder of two Rhode Island citizens by Hamas Islamic Resistance Movement members in Israel.  *Id.* at 88.  The *Ungar* court held that the PA and PLO defendants had sufficient minimum contacts with the United States for the court to exercise personal jurisdiction over them.  *Id.*  More specifically, the *Ungar* court based the exercise of jurisdiction over these foreign defendants on the following facts:  they maintained an office in Washington, DC, employed staff, expended funds, maintained bank accounts in the U.S. with substantial deposits, employed a lobbying firm to develop

a public relations campaign in the U.S., and engaged in public education programs in the U.S., among other facts.  *Id.*

Significantly, unlike the PA and PLO defendants in *Ungar*, IIROSA does not (a) maintain an office or bank accounts in the United States; or (b) engage in fundraising activities or a public relations campaign in the United States.  (*See* Al-Saikhan Aff. ¶8)  Because the lengthy Complaint fails to connect IIROSA with the United States in any way, the Court must dismiss Plaintiffs' lawsuit against IIROSA for lack of personal jurisdiction.

3.    **Contacts Vis-à-vis the Muslim World League, the Islamic Relief Organization, or the Success Foundation**

Because IIROSA itself  has no "minimum contacts" with the United States, plaintiffs will likely attempt to establish this Court's jurisdiction over it through an alleged corporate affiliation between IIROSA and (a) the MWL,[3] (b) the now defunct Virginia-based entity known as the International Relief Organization, or (c) the Success Foundation.  (Compl. ¶311).

The law is clear, however, that "the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  Moreover, "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Intermor v. Walt Disney Co.*, 250 F. Supp.2d 116, 120 (E.D.N.Y. 2003) (holding that a parent's contacts with the forum are not ordinarily imputed to a foreign subsidiary corporation).

---

[3] Pre-consolidation, the *Burnett* Court decided that it may exercise personal jurisdiction over the MWL. *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp.2d 86, 96-97 (D.D.C. 2003).

In order for a court to exercise jurisdiction over a nonresident parent through its resident subsidiary and circumvent the above rule, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citing *Koehler v. Bank of Bermuda Ltd*, 101 F.3d 863, 865 (2d Cir. 1996)). The test of agency is "whether the parent would have to enter the market directly if the subsidiary was absent because the market is too important to the parent's welfare." *Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 263, 270 (N.D.N.Y. 2003). While the agency test is not squarely applicable in the context of charitable organizations, the mere fact that the International Relief Organization in Virginia no longer exists and IIROSA is still carrying out its humanitarian relief work demonstrates the lack of an agency relationship. (*See* Al-Saikhan Aff. ¶10) As for the MWL and the Success Foundation, plaintiffs have not alleged any facts to support the contention that if either MWL or Success Foundation were absent from the United States, IIROSA would need to create a presence in the United States because the United States is so important to IIROSA's mission. Accordingly, IIROSA has no agency relationship with any of the entities alleged to be its affiliates operating in the United States, and the Court cannot exercise personal jurisdiction over IIROSA on this basis.

Under the law of this jurisdiction, the only other way of establishing personal jurisdiction over IIROSA, a Saudi-based charity, would be for plaintiffs to demonstrate that the Islamic Relief Organization, the MWL, or the Success Foundation is a "mere department" of IIROSA. *See Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 120-22. More specifically, the "mere department" test consists of the following factors: (1) essential to the test is common ownership over the forum corporation and the foreign

corporation; (2) financial dependence of one corporation on the other; (3) failure to observe corporate formalities between the corporations and interference by one corporation with the selection and assignment of the other corporation's executive personnel; and (4) one corporation's exercise of control over the other's marketing and operational policies. *Id.*

Again, because IIROSA is a nongovernmental charitable organization, the "mere department" test does not squarely apply. Regardless, plaintiffs completely fail to allege that IIROSA and Islamic Relief Organization, MWL, or Success Foundation have common ownership – an essential factor, that these entities are financially interdependent, that they fail to maintain corporate formalities, and that one exercises sufficient control over the other's marketing and operational policies. As set forth in more detail in the accompanying affidavit, IIROSA is a distinct and separate entity from the Islamic Relief Organization, MWL, and Success Foundation. (Al-Saikhan Aff. ¶11-12.) Therefore, plaintiffs cannot establish the Court's personal jurisdiction over IIROSA via Islamic Relief Organization, MWL, or Success Foundation through the "mere department" analysis.

More generally, courts traditionally examine the following factors to determine whether an entity's established contacts with the forum may be imputed to a foreign affiliate or subsidiary: overlapping directorships; adequacy of the subsidiary's capitalization; separateness of operations, payroll records, budgets and bank accounts; and responsibility for meeting the other's obligations and managing its assets. *See Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54, 69-70 (D.D.C. 1996). *Cf. I.A.M. Nat'l Pension Fund*, 699 F.2d at 1259 (exercising jurisdiction over parent where subsidiary

"was an indistinguishable part of its larger parent").  Courts have even maintained that
the foreign affiliate or subsidiary remains a separate entity for purposes of minimum
contacts analysis even though the forum-based parent is involved in monitoring the
subsidiary's performance, supervising the subsidiary's budgetary decisions, and
articulation of the subsidiary's policies.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 925-31
(9th Cir. 2001) (no alter ego or agency relationship between California subsidiaries and
foreign parent; corporate relationship alone was insufficient to exercise personal
jurisdiction over parent); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998)
(noting that "duplication of some or all of the directors or executive officers" between a
parent and subsidiary does not give rise to piercing corporate veil for CERCLA liability).

　　　The only allegation in plaintiffs' Complaint connecting IIROSA to the MWL is
the allegation that the MWL is the parent of IIROSA (Compl. ¶ 298). Previously, the
*Burnett* court decided to exercise jurisdiction over the MWL because of its United States-
based offices and because of its failure to present any evidence that these offices "are
legally separate and independent entities from MWL" in Saudi Arabia.  274 F. Supp. at
97.  Plaintiffs' conclusory and skeletal allegation, without more, is completely
insufficient to treat IIROSA and the MWL as "one and the same" for purposes of
demonstrating IIROSA's minimum contacts with the United States and establishing
personal jurisdiction over IIROSA.  Although IIROSA was indeed founded by the MWL,
they are separate legal entities with distinct missions and operations.  There is simply no
factual basis to conclude that IIROSA is either the agent or alter ego of the MWL, or *vice
versa.*  (*See* Al-Saikhan Aff. ¶5.)

Plaintiffs' Complaint does no better with regard to linking IIROSA with the now defunct Islamic Relief Organization or the Success Foundation for purposes of their minimum contacts analysis.  Plaintiffs appear to allege that the Islamic Relief Organization and Success Foundation are affiliated with IIROSA, but it is difficult to discern the true nature of plaintiffs' allegations.[4]  Nevertheless, just as in the case of MWL, these attempts to blur the lines regarding the corporate or legal relationship between IIROSA and the now defunct Islamic Relief Organization or the Success Foundation are wholly unsupported and insufficient to establish personal jurisdiction over IIROSA.

IIROSA exists as a wholly separate legal entity from the now defunct Islamic Relief Organization and the Success Foundation.  (*See* Al-Saikhan Aff. ¶¶11-12.) Particularly important in this jurisdictional analysis, the Islamic Relief Organization ceased to exist as a legal entity as early as 1998 and finally in 2002. *Id.* This fact alone is enough to defeat the exercise of personal jurisdiction over IIROSA based on the alleged affiliation between the Islamic Relief Organization and IIROSA.  IIROSA was, at all times relevant herein and is now, adequately capitalized and has never relied on funding from the now defunct Islamic Relief Organization or the Success Foundation. (*See* Al-Saikhan Aff. ¶12).  And at all times relevant herein,  IIROSA maintained all corporate formalities and separate operations, payroll records, budgets, and bank accounts from the now defunct Islamic Relief Organization and the Success Foundation. *Id.*  Absent allegations or evidence of a corporate affiliation amounting to an agency or alter ego

---

[4] Paragraph 311 of the Complaint states:  "In the United States the IIRO operates under the name of The INTERNATIONAL RELIEF ORGANIZATION (IRO).  The IRO and the MWL maintain offices at the same address, 360 South Washington Street, Falls Church, Virginia.  The IRO sends money back and forth with IIRO.  IIRO sends money to other organizations that sponsor terror.  Another IIRO sister company, the SUCCESS FOUNDATION, sends money back and forth with IIRO and IRO.  The Success Foundation also sends money to other organizations who sponsor terror."

relationship between IIROSA and the Islamic Relief Organization, Success Foundation, or MWL , plaintiffs have failed to make out a *prima facie* case that IIROSA has the requisite minimum contacts with the United States for this Court to exercise personal jurisdiction over it.

Because the Court lacks personal jurisdiction over IIROSA, it must dismiss it as a defendant in this lawsuit.  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

### 4.   Allegations of Aiding and Abetting are Insufficient to Exercise Personal Jurisdiction over IIROSA

Despite IIROSA's complete lack of contacts with the United States, plaintiffs appear to allege that IIROSA conspired with certain other defendants, including some that plaintiffs have alleged to have contacts with the United States.  (Compl. ¶¶ 5, 23) Accordingly, plaintiffs seem to argue that the Court may exercise personal jurisdiction over IIROSA because of its alleged connections with these co-conspirator defendants, and because the resulting injuries from the alleged conspiracy occured in the United States.  Regardless of whether one or more defendants had a sufficient nexus with the United States, "the actions of other Defendants may not be attributed to [the non-resident defendants] for purposes of exercising jurisdiction under a conspiracy theory."  *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 129 (D.D.C. 2000).

While the Second Circuit recognizes conspiracy-based personal jurisdiction, "the bland assertion of a conspiracy or agency is insufficient to establish [such personal] jurisdiction."  *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975); *see also Galeri Gmurzynska v. Hutton*, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003) (holding

that conclusory allegations and speculation of conspiracy-based personal jurisdiction will not survive a motion to dismiss for lack of personal jurisdiction).

In order to exercise jurisdiction over a nonresident defendant based on a co-conspirator's contacts with the forum, a plaintiff must demonstrate:  (a) a *prima facie* case of conspiracy; (b) specific facts justifying the inference that the defendant was a participant in the conspiracy; (c) commission of a tortious act within the forum; and (d) an agency relationship between the nonresident defendant and the tortfeasor acting within the forum.  *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002).  The Complaint is completely devoid of allegations against IIROSA sufficient to have this Court exercise jurisdiction over it based on its alleged participation in a conspiracy to carry out the September 11, 2001, attacks within the United States.

Since plaintiffs have failed to plead specific acts that connect IIROSA with the United States, their reliance on bare allegations and legal conclusions of conspiracy are insufficient to establish personal jurisdiction over IIROSA.  *See Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002); *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (failure to make a *prima facie* showing of civil conspiracy defeated attempt to invoke "conspiracy-based jurisdiction").

Although Rule 8 establishes a liberal pleading standard, the "mere incantation of the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the Rule's requirements."  *Galeri Gmurzynska*, 257 F. Supp.2d at 631.  Accordingly,

plaintiffs have utterly failed to allege facts establishing IIROSA's involvement in a conspiracy sufficient to have the Court exercise personal jurisdiction over IIROSA.

Plaintiffs' attempt to haul IIROSA into a United States court based on the "effects test" enunciated in *Calder v. Jones*, 465 U.S. 783, 790 (1984) must also fail.  Under the "effects test," IIROSA would be subject to personal jurisdiction within the United States only if plaintiffs make a *prima facie* showing that IIROSA committed an intentional wrongful act outside the forum directed at an entity or individual inside the forum.  *Id.* Only if plaintiffs demonstrate that (i) IIROSA's actions outside the U.S. caused the September 11, 2001, terrorist attacks in the United States; (ii) the terrorist attacks were a "direct and foreseeable result" of IIROSA's conduct; and (iii) IIROSA knew or should have known that its conduct would result in the September 11, 2001, terrorists attacks, would IIROSA be subject to this Court's jurisdiction under the "effects test." *See Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364, 364 (2d Cir. 2000).

Plaintiffs have failed to plead the requisite close causal connection -- or any causal connection -- between IIROSA's conduct and the September 11 terrorist attacks. Nor do plaintiffs satisfy the pleading requirements for foreseeability, *i.e.*, that the effect within the forum must occur "as a direct and foreseeable result of the conduct outside the territory."  *Corning*, 242 F.3d at 364 (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972)).  Finally, plaintiffs offer no allegations that IIROSA either knew or should have known its conduct would have effects in the U.S. Because the "effects test" exercise of personal jurisdiction requires heightened pleadings of causation, foreseeability, and knowledge, and plaintiffs have not set forth such

allegations against IIROSA, the Complaint must be dismissed against IIROSA. *See*

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (citation omitted).

**B.    The Court Must Dismiss the Complaint for Failure to State a Claim Against IIROSA**

Even if the Court ultimately decides to exercise personal jurisdiction over

IIROSA, the Court must still dismiss plaintiffs' Complaint for failure to state a claim

against IIROSA. Plaintiffs' claims against IIROSA consist of general allegations

concerning the "sponsorship" of Al Qaeda, disjointed allegations about IIROSA

employees and field offices without specific dates, and a series of conclusory legal

allegations applicable to all defendants. (Compl. ¶¶310-332) As such, IIROSA has

insufficient notice of what it is alleged to have done and the Complaint must be

dismissed.

**1.    Applicable Legal Standard**

Under Rule 12(b)(6), a court may dismiss a complaint if it is clear that no relief

could be granted under any set of facts that could be proved consistent with the

allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In reviewing such a

motion, a court must construe the complaint in the light most favorable to the plaintiff,

and must accept as true all allegations and all reasonable factual inferences drawn from

the well-pleaded factual allegations. *See Square D Co. v. Niagara Tariff Bureau, Inc.*,

476 U.S. 409, 411 (1986). "However, the Court need not accept inferences drawn by

plaintiff if such inferences are unsupported by the facts set out in the complaint,"

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) *quoting Kowal v. MCI*

*Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), or if the facts are not well

pled. *See Ge v. Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000). The Court is "not bound to

accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983).

**2.    Plaintiffs' Failure to Provide IIROSA with Notice of the Claims against It Warrant Dismissal**

As detailed below, the Complaint relies substantially on conclusory legal allegations pertaining to "all defendants," and sporadic, disjointed, and unsubstantiated allegations directed at IIROSA.  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief …"  Here, plaintiffs' pleadings fail to meet even this most liberal notice pleading requirement.  *See Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) ("By lumping all defendants together in each claims and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy th[e] minimum standard [under Rule 8].")); *Gauvin v. Trembatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (rejecting a complaint where all defendants were "lumped together in a single, broad allegation").

Moreover, the *Burnett* court acknowledged the severity of the allegations contained in the complaint in that action and the impact those allegations have had on the named defendants:

> [I]t is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants.  The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage. . .  No heightened standard of pleading will be applied in this case, but, given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [Complaint].

*Burnett*, 274 F. Supp.2d at 103-04.

Even relaxed scrutiny, let alone "extra-careful scrutiny," reveals that IIROSA has not been provided with fair notice as to what plaintiffs' claims are against it and the grounds upon which those claims rest. The linchpin for establishing liability against IIROSA in this lawsuit is proof of (i) its knowledge of and intent to further al Qaeda's terrorist activities; (ii) a causal link between IIROSA's funding and the September 11 attacks; and (iii) aiding and abetting or conspiring to carry out the September 11 attacks. The Complaint, however, fails to allege that (a) IIROSA possessed the requisite knowledge and intent, (b) IIROSA funded al Qaeda and that the timing of such funding created an inference of proximate cause between the funding and the September 11 attacks, and (c) IIROSA aided and abetted or conspired with anyone or any entity. (Compl. ¶¶ 310-332 (containing all references to IIROSA)).

The *Burnett* court based its denial of defendant Al-Haramain Islamic Foundation's motion to dismiss for failure to state a claim on plaintiffs' inclusion of sufficient factual allegations to provide support for an inference of Al Haramain's knowledge of and intent to provide material support to al Qaeda and its terrorist activities. *Burnett*, 274 F. Supp. 2d at 104-05. The Complaint contains specific assertions of fact as to Al-Haramain's support of al Qaeda and its terrorist activities. *Id.* at 104. Similarly, the *Burnett* court based its "inference of a causal link between AHIF's [alleged to be 'one in the same' as Al-Haramain] funding and the attacks of September 11" on Al-Haramain's alleged funding of al Qaeda prior to the September 11 attacks in 2001. The *Burnett* court emphasized this temporal connection between the alleged funding and the carrying out of terrorist acts. *Id.* at 105.

19

In stark contrast, the allegations in the Complaint concerning IIROSA are unsubstantiated, disjointed, and wholly insufficient to establish an inference of liability against IIROSA.  Plaintiffs allege no temporal connection or "causal link" between IIRO's alleged funding and the carrying out of terrorist acts on September 11, 2001, in the U.S.  Accordingly, IIROSA has not been provided with fair notice of the allegations against it.  Therefore, this Court must dismiss the Complaint against IIROSA for failure to state a claim.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, IIROSA respectfully requests that this Court grant its Motion to Dismiss plaintiffs' Fourth Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, should the Court exercise personal jurisdiction over IIROSA, pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

_____
Martin F. McMahon (MM4389)
Stephanie Fell (SF 2474)
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant*
*International Islamic Relief*
*Organization of Saudi Arabia*

Dated: March 19, 2004