**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **03 MDL 1570 (RCC)** |
| This document relates to:<br><br>THOMAS BURNETT, et al,<br>　　　　　　　Plaintiffs,<br>　　　　　　　v.<br><br>AL BARAKA INVESTENT & DEVELOPMENT CORP., et al.<br>　　　　　　　Defendants. | **03 CV 9849 (RCC)** |

**DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S**
**MOTION TO DISMISS THE**
**THIRD AMENDED CONSOLIDATED MASTER COMPLAINT**

Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant*
*International Islamic Relief*
*Organization of Saudi Arabia*

**TABLE OF CONTENTS**

                                                            **Page Number**

Table of Contents                                               i

Table of Authorities                                            ii

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT INTERNATIONAL ISLAMIC
RELIEF ORGANIZATION'S MOTION TO
DISMISS THE THIRD AMENDED COMPLAINT                             1

I.      FACTUAL BACKGROUND                                      1

II.     LEGAL ANALYSIS                                          4

        A.     The Court Must Dismiss the Complaint for
               Lack of Personal Jurisdiction Over IIROSA        4

               1.     Applicable Legal Standard                 5

               2.     IIROSA Lacks Minimum Contacts
                      with the United States                    7

               3.     Contacts Vis-à-vis Muslim World
                      League, Islamic Relief Organization,
                      and the Success Foundation                8

               4.     Allegations of Aiding and Abetting
                      are Insufficient to Exercise Personal
                      Jurisdiction over IIROSA                  12

        B.     The Court Must Dismiss the Complaint for
               Failure to State a Claim Against IIROSA          14

               1.     Applicable Legal Standard                 15

               2.     Certain Specific Causes of Action
                      Must be Dismissed against IIROSA
                      because that is the Law of the Case       16

               3.     Plaintiffs Fail to Provide IIROSA with
                      Notice of the Claims against It           17

III.    CONCLUSION                                              20

**TABLE OF AUTHORITIES**

**Page Number**

***Federal Cases:***

*Atuahene v. City of Hartford*, 10 Fed.Appx. 33 (2d Cir. 2001)            16

*Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981)            15

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)            15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)            6

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp.2d 86 (D.D.C. 2003)            6, 15

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5th Cir. 1994)            6

*Calder v. Jones*, 465 U.S. 783 (1984)            13

*Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*,
242 F.3d 364, 364(2d Cir. 2000)            14

*Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)            5

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)            9, 10

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996)            9

*Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*,
315 F.3d 338 (D.C. Cir. 2003)            14

*Estate of Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001)            7

*First Chicago Int'l v. United Exch. Co.*,
836 F.2d 1375 (D.C. Cir. 1988)            13

*Gauvin v. Trembatore*, 682 F. Supp. 1067 (N.D. Cal. 1988)            17

*GTE New Media Serv. Corp. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)            5

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)            15

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485 (S.D.N.Y. 1987)            14

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)                    5

*I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc.*,
699 F.2d 1254 (D.C. Cir. 1983)                    9

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)                    9

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)                    9

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)                    15

*Kimberlin v. Quinlan*, 199 F.3d 496 (D.C. Cir. 1999)                    16

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996)                    16

*Leasco Data Processing Equip. Corp. v. Maxwell*,
 468 F.2d 1326 (2d Cir. 1972)                    14

*Metropolitan Life Ins. Co. v. Robertson CECO Corp.*,
84 F.3d 560 (2d Cir. 1996)                    6

*Papasan v. Allain*, 478 U.S. 265 (1986)                    15

*Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54 (D.D.C. 1996)                    10

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)                    12

*S.A. v. Hall*, 466 U.S. 408 (1984)                    6

*S.E.C. v. Vision Communications, Inc.*, 74 F.3d 287 (D.C. Cir. 1996)                    6

*Second Amendment Found. v. U.S. Conference of Mayors*,
274 F.3d 521 (D.C. Cir. 2001)                    5, 13

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*,
24 F. Supp. 2d 66 (D.D.C. 1998)                    9

*Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409 (1986)                    15

*TIFA, Ltd. v. Republic of Ghana*,
C.A. No. 99-1513, 1991 WL 179098 (D.D.C. Aug. 27, 1991)                    5

*United States v. Bestfoods*, 524 U.S. 51 (1998)                    10

*United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116 (D.D.C. 2000)                    5, 13

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
 529 U.S. 765 (2000)                                              12

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir. 1977)                                      9

### ***Federal Statutes and Rules:***

18 U.S.C. § 2334(a)                                               6

Fed. R. Civ. P.  8                                               16

Fed. R. Civ. P.  8(a)(2)                                         16

Fed. R. Civ. P. 12(b)(2)                                         1, 4, 5,
                                                                 19

Fed. R. Civ. P. 12(b)(6)                                         1, 15,
                                                                 19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **03 MDL 1570 (RCC)** |
| This document relates to: THOMAS BURNETT, et al, Plaintiffs, v. AL BARAKA INVESTENT & DEVELOPMENT CORP., et al. Defendants. | **03 CV 9849 (RCC)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant International Islamic Relief Organization of Saudi Arabia

("IIROSA"),[1] through undersigned counsel, submits this Memorandum of Law in support

of its Motion to Dismiss plaintiffs' Third Amended Complaint ("Complaint"), pursuant to

Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, should the Court exercise

personal jurisdiction over IIROSA, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted.

**I.      FACTUAL BACKGROUND**

IIROSA is a nongovernmental charitable organization founded in 1978 and

headquartered in Makkah, Saudi Arabia, with administrative offices in Jeddah, Saudi

Arabia.  (Affidavit of Saleh Bin A. Al-Saikhan dated March 15, 2004 ("Al-Saikhan

Aff.") ¶3.)  Specifically, IIROSA provides humanitarian relief in the form of food, water,

medicine, shelter, and blankets and international development assistance through its

---

[1] Plaintiffs' Complaint refers simply to the International Islamic Relief Organization without any other details. This firm represents the Saudi-based headquarters referred to herein as IIROSA.

health, education, social welfare, and other programs.  IIROSA has 29 foreign offices and

carries out its humanitarian relief work and international development assistance

programs in over 120 countries.  (Al-Saikhan Aff. ¶5.)  IIROSA's funding comes from

donations, grants, bequests, and contributions from international institutions and the

government of the Royal Kingdom of Saudi Arabia, and dividends from investments,

among other sources.  (Al-Saikhan Aff.  ¶6.)  Nothing in the Complaint, save for

plaintiffs' recitation of conclusory – and unsubstantiated – allegations, specifically links

IIROSA with the terrorist plot resulting in the September 11, 2001, attacks in the United

States.  IIROSA operates as a legitimate charitable entity. In other words, IIROSA (i) has

no connection to terrorism; (ii) has never espoused terrorism and (iii) has never

knowingly or intentionally financed terrorist activities. (Al-Saikhan Aff.  ¶5.)

Significantly, IIROSA has no connection to the U.S.  IIROSA maintains no

physical presence in the U.S., *i.e.*, IIROSA currently has no foreign office in the United

States and IIROSA carries out no program-related work in the United States.  (Al-

Saikhan Aff.  ¶6.)  Moreover, IIROSA neither solicits nor receives funding from any

individuals or entities in the United States.  *Id.*

Although IIROSA is an entity working under the umbrella of the Muslim World

League ("MWL") as alleged in the Complaint (Compl. ¶ 236), plaintiffs do not allege and

there is no proof that IIROSA is the agent or alter ego of the MWL. IIROSA has a

separate and distinct mission from the MWL's mission.  While IIROSA is the MWL's

operational arm in the area of humanitarian relief operations as well as health, education,

development, social, and economic welfare programs, IIROSA and MWL are each

charitable organizations established as separate legal entities under the applicable laws

and regulations of the Royal Kingdom of Saudi Arabia.  (Al-Saikhan Aff. ¶ 7.)

Plaintiffs also appear to allege, mistakenly, that the Islamic Relief Organization, a Virginia-based organization, and IIROSA are "one and the same" and that another Virginia-based entity, the Success Foundation,[2] and IIROSA are affiliated organizations (Comp. ¶235).  Plaintiffs are simply wrong. The United States-based entity called the Islamic Relief Organization and the Saudi-based IIROSA have always been separate corporate and legal entities.  (Al-Saikhan Aff. ¶11.)  Furthermore, the Islamic Relief Organization ceased to exist as a corporate entity initially in 1998 and finally in 2002. (Al-Saikhan Aff. ¶10.)  Likewise, IIROSA and the Success Foundation are not affiliated organizations.  (Al-Saikhan Aff. ¶ 12.)

Plaintiffs do not allege and there is no proof that IIROSA is the agent or alter ego of the MWL, the now defunct U.S.-based Islamic Relief Organization, or the Success Foundation.  Indeed, at all times relevant herein, IIROSA has maintained itself as an independent organization with its own operations, governance, bank accounts, books, and records, completely separate and apart from the MWL, the now defunct Islamic Relief Organization, and the Success Foundation. (Al-Saikhan Aff. ¶ 11-12.)  Finally, IIROSA is and always has been responsible for its own capitalization and management of assets wholly separate and apart from the MWL, the now defunct Islamic Relief Organization, and the Success Foundation.  *Id.*

Plaintiffs' Complaint contains a hodgepodge of conclusory and unsubstantiated allegations involving IIROSA and utterly fails to allege facts sufficient to establish personal jurisdiction over IIROSA.  Moreover, the allegations in the Complaint

---

[2] Although it is not clear what specific entity plaintiffs refer to in their Complaint, a review of the following websites reveals no reference to IIROSA.  *See* http://www.guidestar.org/search/report/board.jsp listing "SUCCESS FOUNDATION INC" with an address of 3606 Forest Dr. Ste. B, Alexandria, VA 22302.  <u>See also</u> http://www.successfoundation.org/contact.html listing a postal address of  P.O. Box 8125, Falls Church, Virginia 22041 U.S.A.

concerning IIROSA are sparse, disjointed, and conclusory.  In fact, the allegations are difficult to piece together and are simply contradictory in places.  For example, plaintiffs allege that IIROSA is a "known al Qaeda front" (Compl.¶156) and then they contend that "[o]nce money was withdrawn from bank accounts of relief organizations, its use by al Qaeda can be virtually untraceable" (Compl. ¶187).  As a legitimate charitable organization committed to assisting poor people, IIROSA has never knowingly or intentionally funded al Qaeda or any terrorist activities.  (Al-Saikhan Aff. ¶7.)

In the unlikely event that the Court finds that IIROSA has the necessary connection to the forum for the Court to exercise personal jurisdiction over it, the Complaint fails to state a cause of action against IIROSA because it contains no allegations of (i) knowledge or intent on its part or (ii) a causal connection between alleged IIROSA funding and the September 11, 2001, attacks in the U.S.  And there is no temporal or rational nexus between the allegations in the Complaint concerning IIROSA and the September 11, 2001, attacks in the U.S.  Moreover, the Complaint lacks sufficient facts to establish aiding and abetting a conspiracy and it relies substantially on conclusory legal allegations applicable to "all defendants."

## II.     LEGAL ANALYSIS

### A.     The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over IIROSA

The Court must dismiss plaintiffs' Complaint against IIROSA for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between IIROSA and the United States to establish personal jurisdiction over it as a defendant in this lawsuit.

Accordingly, because this Court lacks personal jurisdiction over IIROSA, the Complaint must be dismissed against IIROSA.

### 1.        Applicable Legal Standard

Pursuant to Rule 12(b)(2), the plaintiffs bear the burden of making out a *prima facie* case to establish personal jurisdiction over the defendant.  *See Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  In order to meet this burden, a plaintiff must demonstrate "that the defendants' contacts with the forum suffice to justify the exercise of personal jurisdiction, [and] 'the Court is no longer bound to treat all of plaintiff's allegations as true.'" *United States v. Philip Morris Inc.*, 116 F. Supp.2d at 120 n. 4 (quoting *TIFA, Ltd. v. Republic of Ghana*, C.A. No. 99-1513, 1991 WL 179098, at *8 (D.D.C. Aug. 27, 1991) (noting that when jurisdiction is challenged, a court may consider affidavits) (citation omitted)).  A plaintiff must provide facts sufficient to establish minimum contacts between the defendants and the forum.  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum; mere allegations of a conspiracy will not suffice." *United States v. Philip Morris Inc.*, 116 F. Supp.2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

In *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), the United States Supreme Court held that a court may exercise personal jurisdiction over a nonresident defendant only if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See also GTE New Media Serv. Corp. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Moreover, this "minimum contacts"

analysis is performed in two distinct contexts:  general jurisdiction and specific jurisdiction.  *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *see also Metropolitan Life Ins. Co. v. Robertson CECO Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  General jurisdiction over a defendant may be exercised to resolve claims that do not arise from the defendant's contacts with the forum state if the defendant has "continuous and systematic" contacts with the forum state.  *Helicopteros Nationales*, 466 U.S. at 415-16.  Alternatively, a court may exercise specific jurisdiction over the nonresident defendant if the nonresident defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' "those activities".  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In their Complaint, plaintiffs assert a claim under the Antiterrorism Act ("ATA") 18 U.S.C. § 2334(a), among others.  Previously, the *Burnett* court stated that "[b]ecause the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes . . . 'is whether the defendant has had minimum contacts with the United States.'"  *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp.2d 86, 95-6 (D.D.C. 2003) (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted)).[3]  Therefore, the appropriate question is whether IIROSA has sufficient "minimum contacts" with the United States for the Court to exercise personal jurisdiction over it.  *See S.E.C. v. Vision Communications, Inc.*, 74 F.3d 287, 289-90 (D.C. Cir. 1996).

---

[3]  Plaintiffs initially alleged that personal jurisdiction existed over some foreign defendants pursuant to plaintiffs' RICO claims, however, the Court has held that plaintiffs do not have standing to raise their RICO claims. *Burnett,* 274 F. Supp. at 101-102.  Accordingly, this jurisdictional issue is a moot point.

As demonstrated below, because IIROSA has absolutely *no* contacts with the United States, the Complaint must be dismissed against it for lack of personal jurisdiction.

**2.     IIROSA Lacks Minimum Contacts with the United States**

The Court must dismiss plaintiffs' lawsuit against IIROSA because plaintiffs have utterly failed to plead any nexus between IIROSA and the United States. Not only have plaintiffs failed to plead minimum contacts, plaintiffs have failed to plead *any* contacts whatsoever.

IIROSA is a Saudi-based nongovernmental charitable organization which provides humanitarian assistance and administers international development programs in countries with a substantial Muslim population. IIROSA maintains no offices or operational presence in the United States and IIROSA does not have any agents in the United States. (Al-Saikhan Aff. ¶8.) Likewise, IIROSA neither solicits nor receives funds from the United States and none of IIROSA's charitable works are carried out in the United States. *Id.* Nothing in plaintiffs' Complaint establishes "continuous and systematic general business contacts" between IIROSA and the United States. *See Metropolitan Life Ins. Co.*, 84 F.3d at 568. Therefore, Plaintiffs have failed to establish general personal jurisdiction over IIROSA. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 413-15.

Plaintiffs' counsel have relied on *Estate of Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001), in their opposition to another defendant's motion to dismiss for lack of personal jurisdiction in *Burnett*. But IIROSA's alleged contacts with the United States are nonexistent and, therefore, distinguishable from the Palestinian Authority defendants' contacts with the United States in that case. In *Ungar*, the United

States District Court in Rhode Island agreed to exercise personal jurisdiction over the "defendants PA and PLO" in a civil action brought under the Antiterrorism Act and other negligence and intentional tort theories arising from the murder of two Rhode Island citizens by Hamas Islamic Resistance Movement members in Israel. *Id.* at 88. The *Ungar* court held that the PA and PLO defendants had sufficient minimum contacts with the United States for the court to exercise personal jurisdiction over them. *Id.* More specifically, the *Ungar* court based the exercise of jurisdiction over these foreign defendants on the following facts: they maintained an office in Washington, DC, employed staff, expended funds, maintained bank accounts in the United States with substantial deposits, employed a lobbying firm to develop a public relations campaign in the United States, and engaged in public education programs in the United States, among other facts. *Id.*

Significantly, unlike the PA and PLO defendants in *Ungar*, IIROSA does not (a) maintain an office or bank accounts in the United States; or (b) engage in fundraising activities or a public relations campaign in the United States. (*See* Al-Saikhan Aff. ¶8.) Because the lengthy Complaint fails to connect IIROSA with the United States in any way, the Court must dismiss plaintiffs' lawsuit against IIROSA for lack of personal jurisdiction.

### 3.   Contacts Vis-à-vis the Muslim World League, Islamic Relief Organization, or Success Foundation

Because IIROSA itself  has no "minimum contacts" with the United States, plaintiffs will likely attempt to establish this Court's jurisdiction over it through an alleged corporate affiliation between IIROSA and (a) the MWL,[4] (b) now defunct

---

[4] Pre-consolidation, the *Burnett* court decided that it may exercise personal jurisdiction over the MWL. *Burnett*, 274 F. Supp.2d at 96-97.

Virginia-based entity known as the International Relief Organization, or (c) the Success Foundation.  (Compl. ¶¶ 235-36).

The law is clear, however, that under these circumstances, "a defendant corporation's contacts with a forum may not be attributed to shareholders, affiliated corporations, or other parties."  *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 70 (D.D.C. 1998) (citations omitted).  Moreover, "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675-76 (D.C. Cir. 1996) (noting that a subsidiary's contacts with the forum are not ordinarily imputed to a foreign parent corporation).

Under the exception to the above rule, "where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction, . . . the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes*." Shapiro, Lifschitz & Schram*, 24 F. Supp. at 70.  The forum contacts of a corporation may be imputed to a foreign affiliate or subsidiary only if the "parent and subsidiary 'are not really separate entities' . . . or one acts as an agent of the other."  *El-Fadl v. Central Bank of Jordan*, 75 F.3d at 676 (quoting *I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc.*, 699 F.2d 1254, 1259 (D.C. Cir. 1983)) and (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)) .  Therefore, if the allegedly affiliated organizations are in fact separate legal entities with separate operations, one organization's contacts with the forum cannot be imputed to the other.  *See Doe v. Unocal Corp,* 248 F.3d 915, 925-31 (9th Cir. 2001*); Jazini v. Nissan Motor Co.*, 148 F.3d

181, 184-85 (2d Cir. 1998) (no agency or alter ego to assert personal jurisdiction over affiliated entities).

More specifically, courts traditionally examine the following factors to determine whether an entity's established contacts with the forum may be imputed to a foreign affiliate or subsidiary:  overlapping directorships; adequacy of the subsidiary's capitalization; separateness of operations, payroll records, budgets and bank accounts, and responsibility for meeting the other's obligations and managing its assets.  *See Richard v. Bell Atlantic Corp.*, 946 F. Supp. 54, 69-70 (D.D.C. 1996); *cf. I.A.M. Nat'l Pension Fund*, 699 F.2d at 1259 (exercising jurisdiction over parent where subsidiary "was an indistinguishable part of its larger parent").  Courts have maintained that the foreign affiliate or subsidiary remains a separate entity for purposes of minimum contacts analysis even though the parent is involved in monitoring the subsidiary's performance, supervising the subsidiary's budgetary decisions, and articulation of the subsidiary's policies.  *See Doe v. Unocal Corp.*, 248 F.3d at 925-31 (no alter ego or agency relationship between California subsidiaries and foreign parent; corporate relationship alone was insufficient to exercise personal jurisdiction over parent); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting that "duplication of some or all of the directors or executive officers" between a parent and subsidiary does not give rise to piercing corporate veil for CERCLA liability).

The only allegation in plaintiffs' Complaint connecting IIROSA to the MWL is the allegation that the MWL is the parent of IIROSA (Comp. ¶ 236).  Previously, the *Burnett* court decided to exercise jurisdiction over the MWL because of its U.S.-based offices and because of its failure to present any evidence that these offices "are legally separate and independent entities from MWL" in Saudi Arabia. *Burnett.*  274 F. Supp. at

97.  Plaintiffs' conclusory and skeletal allegation, without more, is completely insufficient to treat IIROSA and the MWL as "one and the same" for purposes of demonstrating IIROSA's minimum contacts with the United States and establishing personal jurisdiction over IIROSA.  Although IIROSA was indeed founded by the MWL, they are separate legal entities with distinct missions and operations.  (Al-Saikhan Aff. ¶9.)  There is simply no factual basis to conclude that IIROSA is either the agent or alter ego of the MWL, or *vice versa*. (*See* Al-Saikhan Aff. ¶5.)

Plaintiffs' Complaint does no better with regard to linking IIROSA with the now defunct Islamic Relief Organization or the Success Foundation for purposes of their minimum contacts analysis.  Plaintiffs appear to allege that the former Islamic Relief Organization and the Success Foundation are affiliated with IIROSA (Comp. ¶ 235).  But it is difficult to discern the true nature of the plaintiffs' allegations in this regard.[5] Nevertheless, just as in the case of the MWL, these attempts to blur the lines regarding the corporate or legal relationship between IIROSA and the now defunct Islamic Relief Organization and the Success Foundation are insufficient to establish personal jurisdiction over IIROSA.

IIROSA exists as a wholly separate legal entity from the now defunct Islamic Relief Organization and the Success Foundation.  (Al-Saikhan Aff. ¶11-12.)  Particularly important in this jurisdictional analysis, the Islamic Relief Organization ceased to exist as a legal entity as early as 1998 and finally in 2002.  *Id.*  This fact alone is enough to defeat the exercise of personal jurisdiction over IIROSA based on the alleged affiliation

---

[5] Paragraph 235 of the Complaint states:  "The IIRO sister company, International Relief Organization (or 'IRO'), sends money back and forth with IIRO.  IRO sends money to other organizations that sponsor terror.  Another IIRO sister company, the Success Foundation, sends money back and forth with the IIRO and IRO.  The Success Foundation also sends money to other organizations who sponsor terror."

between the Islamic Relief Organization and IIROSA.  IIROSA was, at all times relevant herein and is now, adequately capitalized and has never relied on funding from the now defunct Islamic Relief Organization or the Success Foundation.  ( *See* Al-Saikhan Aff. ¶12.)  And at all times relevant herein, IIROSA maintained all corporate formalities and separate operations, payroll records, budgets, and bank accounts from the now defunct Islamic Relief Organization and the Success Foundation.  *Id.*  Absent allegations and evidence of a corporate affiliation amounting to an agency or alter ego relationship between IIROSA and the Islamic Relief Organization, Success Foundation, or the MWL, plaintiffs have failed to make out a *prima facie* case that IIROSA has the requisite minimum contacts with the United States for this Court to exercise personal jurisdiction over it.

Because the Court lacks personal jurisdiction over IIROSA, it must dismiss it as a defendant in this lawsuit.  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

**4.    Allegations of Aiding and Abetting are Insufficient to Exercise Personal Jurisdiction over IIROSA**

Despite IIROSA's complete lack of contacts with the United States, plaintiffs appear to allege that IIROSA conspired with certain other defendants, including some that plaintiffs have alleged to have contacts with the United States (Comp. ¶¶ 150-53).  Accordingly, plaintiffs seem to argue that the Court may exercise personal jurisdiction over IIROSA because of its alleged connections with these co-conspirator defendants, and the resulting injuries from the alleged conspiracy occurring in the U.S.  Plaintiffs' attempt to establish personal jurisdiction over IIROSA by piggybacking the actions of

alleged co-conspirators with contacts to the forum onto IIROSA to establish personal

jurisdiction must fail.  Indeed, the law is well-settled that the "'minimum contacts'

requirement must be met with respect to each defendant." *Shapiro, Lifschitz & Schram*,

90 F. Supp. 2d at 70.

Regardless whether one or more defendants have a sufficient nexus with the U.S.,

"the actions of other Defendants may not be attributed to [the non-resident defendants]

for purposes of exercising jurisdiction under a conspiracy theory." *United States v.*

*Philip Morris, Inc.*, 116 F. Supp. 2d 116, 129 (D.D.C. 2000).  Significantly, plaintiffs

have failed to plead specific acts that connect IIROSA with either a conspiracy or the

United States.  Therefore, their reliance on bare allegations and legal conclusions of

conspiracy are insufficient to establish personal jurisdiction over IIROSA.  *See Second*

*Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)

(failure to make a *prima facie* showing of civil conspiracy defeated attempt to invoke

"conspiracy-based jurisdiction"); *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375,

1378-79 (D.C. Cir. 1988) (affirming dismissal for lack of personal jurisdiction and noting

that bare allegations of "conspiracy or agency [are] insufficient to establish personal

jurisdiction").

And plaintiffs' attempt to haul IIROSA into a U.S. court based on the "effects

test" enunciated in *Calder v. Jones*, 465 U.S. 783, 790 (1984) must also fail.  Under the

"effects test," IIROSA would be subject to personal jurisdiction within the United States

only if plaintiffs make a *prima facie* showing that IIROSA committed an intentional

wrongful act outside the forum directed at an entity or individual inside the forum.  *Id.*

Only if plaintiffs demonstrate that (i) IIROSA's actions outside the U.S. caused the

September 11, 2001, terrorist attacks in the United States; (ii) the terrorist attacks were a

"direct and foreseeable result" of IIROSA's conduct; and (iii) IIROSA knew or should have known that its conduct would result in the September 11, 2001, terrorists attacks, would IIROSA be subject to this Court's jurisdiction under the "effects test."  *See Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364, 364 (2d Cir. 2000); *see also Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 315 F.3d 338, 345 (D.C. Cir. 2003) (recognizing limitations on the "effects test").

Plaintiffs have failed to plead the requisite close causal connection – or any causal connection -- between IIROSA's conduct and the September 11 terrorist attacks. Nor do plaintiffs satisfy the pleading requirements for foreseeability, *i.e.*, that the effect within the forum must occur "as a direct and foreseeable result of the conduct outside the territory."  *Corning*, 242 F.3d at 364, (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972)).  Finally, plaintiffs offer no allegations that IIROSA either knew or should have known its conduct would have effects in the U.S.

Because the "effects test" exercise of personal jurisidction requires heightened pleadings of causation, foreseeability, and knowledge and plaintiffs have not set forth such allegations against IIROSA, the Complaint must be dismissed against IIROSA.  *See Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (citation omitted).

**B.**     **The Court Must Dismiss the Complaint for Failure to State a Claim Against IIROSA**

Even if the Court ultimately decides to exercise personal jurisdiction over IIROSA, the Court must still dismiss plaintiffs' Complaint for failure to state a claim against IIROSA.  Plaintiffs' claims against IIROSA consist of isolated allegations falling short of the pleading requirements and a series of conclusory legal allegations applicable to all defendants. (Compl. ¶¶ 156, 234-48, 307, 327, 354, 357-60).  As such, IIROSA has

insufficient notice of what it is alleged to have done and the Complaint must be dismissed.

### 1.        Applicable Legal Standard

Under Rule 12(b)(6), a court may dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  In reviewing such a motion, a court must construe the complaint in the light most favorable to the plaintiff, and must accept as true all allegations and all reasonable factual inferences drawn from the well-pleaded factual allegations.  *See Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409, 411 (1986).  "However, the Court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)), or if the facts are not well pleaded.  *See Ge v. Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983)).

### 2.        Certain Specific Causes of Action Must be Dismissed against IIROSA because that is the Law of the Case

At the outset, plaintiffs' RICO allegations and allegations of negligence and negligent infliction of emotional distress must be dismissed as against IIROSA pursuant a pre-consolidation ruling on the motions to dismiss of defendants Al Rajhi Banking & Investment Corporation, Al-Haramain Islamic Foundation, Muslim World League, and Soliman J. Khudeira.  *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp.2d 86

(D.D.C. 2003).  As the Court is well aware, the opinion concluded that plaintiffs lacked

standing to bring their civil RICO claims (Counts XI, XII, and XIII).  *Id.* at 101-02.  For

the same reasons outlined in the *Burnett* opinion, plaintiffs also lack standing to bring

civil RICO claims against IIROSA.  Accordingly, the RICO claims must be dismissed

against IIROSA.  *See Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) ("The

law-of-the-case doctrine rests on a simple premise:  'the *same* issue presented a second

time in the same case in the *same court* should lead to the *same result*.'" quoting

*LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).

The *Burnett* court's pre-consolidation ruling also held that plaintiffs' negligence

(Count VI) and negligent infliction of emotional distress claims (Count VIII) must be

dismissed as to Al-Haramain Islamic Foundation because plaintiffs failed to allege a duty

that Al-Haramain Islamic Foundation owed to the plaintiffs.  *Id.* at 108.  Similarly,

plaintiffs have also failed to allege that IIROSA owed them any duty.  Thus, plaintiffs'

negligence and negligent infliction of emotional distress claims against IIROSA must

also be dismissed.  *See Kimberlin*, 199 F.3d at 500.

### 3.    Plaintiffs Fail to Provide IIROSA with Notice of the Claims Against It

As detailed below, the Complaint relies substantially on conclusory legal

allegations pertaining to "all defendants," and sporadic, disjointed, and unsubstantiated

allegations directed at IIROSA.  Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief …"  Here, plaintiffs' pleadings fail to

meet even this most liberal notice pleading requirement.  *See Atuahene v. City of

Hartford*, 10 Fed.Appx. 33, 34 (2nd Cir. 2001) ("By lumping all defendants together in

each claims and providing no factual basis to distinguish their conduct, [the] complaint

failed to satisfy th[e] minimum standard [under Rule 8]."); *Gauvin v. Trembatore*, 682 F.

Supp. 1067, 1071 (N.D. Cal. 1988) (rejecting a complaint where all defendants were "lumped together in a single, broad allegation").

Moreover, the *Burnett* court acknowledged the severity of the allegations contained in the Complaint and the impact those allegations have had on the named defendants:

> [I]t is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants.  The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage. . .  No heightened standard of pleading will be applied in this case, but, given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [Complaint].

*Burnett*, 274 F. Supp.2d at 103-04.

Even relaxed scrutiny, let alone "extra-careful scrutiny," reveals that IIROSA has not been provided with fair notice as to what plaintiffs' claims are against it and the grounds upon which those claims rest.  The linchpin for establishing liability against IIROSA in this lawsuit is proof of (i) its knowledge of and intent to further al Qaeda's terrorist activities; (ii) a causal link between IIROSA's funding and the September 11 attacks; and (iii) aiding and abetting or conspiring to carry out the September 11 attacks. The Complaint, however, fails to allege that (a) IIROSA possessed the requisite knowledge and intent, (b) IIROSA funded al Qaeda and that the timing of such funding created an inference of proximate cause between the funding and the September 11 attacks, and (c) IIROSA aided and abetted or conspired with anyone or any entity (Compl. ¶¶ 156, 234-48, 307, 327, 354, 357-60 (containing all references to IIROSA)).

The *Burnett* court based its denial of defendant Al-Haramain Islamic Foundation's motion to dismiss for failure to state a claim on plaintiffs' inclusion of sufficient factual allegations to provide support for an inference of Al Haramain's knowledge of and intent to provide material support to al Qaeda and its terrorist activities. *Burnett*, 274 F. Supp. 2d 104-05. The Complaint contains specific assertions of fact as to Al-Haramain's support of al Qaeda and its terrorist activities. *Id.* at 104. Similarly, the Court based its "inference of a causal link between AHIF's [alleged to be 'one in the same' as Al-Haramain] funding and the attacks of September 11" on Al-Haramain's alleged funding of al Qaeda prior to the September 11 attacks in 2001. The *Burnett* court emphasized this temporal connection between the alleged funding and the carrying out of the terrorist acts. *Id.* at 105.

In stark contrast, the allegations in the Complaint concerning IIROSA are unsubstantiated, disjointed, and wholly insufficient to establish an inference of liability against IIROSA. Significantly, plaintiffs allege no temporal connection or "causal link" between IIROSA's alleged funding and the carrying out of terrorist acts on September 11, 2001, in the U.S. Accordingly, because IIROSA has not been provided with fair notice of the allegations against it, this Court must dismiss the Complaint against IIROSA. *See Browning,* 292 F. 3d at 242.

III.   **CONCLUSION**

For the foregoing reasons, IIROSA respectfully requests that this Court grant its

Motion to Dismiss plaintiffs' Third Amended Complaint, pursuant to Fed. R. Civ. P.

12(b)(2) for lack of personal jurisdiction or, should the Court exercise personal

jurisdiction over IIROSA, pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim

upon which relief can be granted.

Respectfully submitted,


_____
Martin F. McMahon (MM 4389)
Stephanie Fell (SF 2474)
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant*
*International Islamic Relief*
*Organization of Saudi Arabia*

Dated: March 19, 2004