```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - x
                            :
In re: Terrorist Attacks         03 MDL 1570 (RCC)
of September 11, 2001       :    Relates to: 03 Civ. 6978 (RCC)

                            :

- - - - - - - - - - - - - - x
```

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO PLAINTIFFS' MOTIONS TO AUTHORIZE
ALTERNATIVE MEANS OF SERVICE OF PROCESS ON
DEFENDANTS ALLEGED TO BE IN UNITED STATES CUSTODY**

```
PETER D. KEISLER              DAVID N. KELLEY
Assistant Attorney General    United States Attorney


DOUGLAS N. LETTER             SARAH S. NORMAND
Terrorism Litigation Counsel  Assistant U.S. Attorney
U.S. Department of Justice    86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Telephone:  (212) 637-2709
- Of Counsel -                Facsimile: (212) 637-2717
```

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Plaintiffs' Motions . . . . . . . . . . . . . . . . 3

    B.   Persons in DOJ Custody . . . . . . . . . . . . . . 6

    C.   Other Persons Alleged to Be in U.S. Custody . . . . . 7

        1.   Serving Process on Persons Allegedly in
             U.S. Custody Could Disclose Sensitive
             Information . . . . . . . . . . . . . . . . . 8

        2.   Sovereign Immunity Precludes the Court
             from Compelling Executive Branch Officials
             to Serve Process on Persons Alleged to
             Be in U.S. Custody . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

### CASES

American Civil Liberties Union v. County of Hudson,
    799 A.2d 629 (N.J. Super. Ct. App. Div.),
    certification denied, 803 A.2d 1162 (N.J. 2002) . . . 8, 10

Army & Air Force Exchange Service v. Sheehan,
    456 U.S. 728 (1982) . . . . . . . . . . . . . . . . . 11

Block v. North Dakota,
    461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . 11

Center for National Security Studies v. Department
    of Justice, 331 F.3d 918 (D.C. Cir. 2003),
    cert. denied, 124 U.S. 1041 (2004) . . . . . . . 8, 9, 10

Department of the Army v. Blue Fox, Inc.,
    525 U.S. 255 (1999) . . . . . . . . . . . . . 10, 11, 12

Detroit Free Press v. Ashcroft,
    303 F.3d 681 (6th Cir. 2002) . . . . . . . . . . . . . 8

Dugan v. Rank,
    372 U.S. 609 (1963) . . . . . . . . . . . . . . . . . 12

Feng Suo Zhou v. Li Peng,
    268 F. Supp. 2d 255 (S.D.N.Y. 2003) . . . . . . 12, 14, 15

Franconia Associates v. United States,
    536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . 11

Johnson v. Eisentrager,
    339 U.S. 763 (1950) . . . . . . . . . . . . . . . . . 15

Lane v. Pena,
    518 U.S. 187 (1996) . . . . . . . . . . . . . . . . . 11

Lehman v. Nakshian,
    453 U.S. 156 (1981) . . . . . . . . . . . . . . . . . 11

Mullane v. Central Bank & Trust Co.,
    339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . 13

North Jersey Media Group, Inc. v. Ashcroft,
    308 F.3d 198 (3d Cir. 2002), cert. denied,
    123 S. Ct. 2215 (2003) . . . . . . . . . . . . . . . 8, 9

ii

<u>United States Environmental Protection Agency v. General
    Electric Co.</u>, 197 F.3d 592 (2d Cir. 1999), <u>opinion
    amended on reh'g</u>, 212 F.3d 689 (2d Cir. 2000) . . .   11, 12

<u>United States v. Sherwood</u>,
    312 U.S. 584 (1941) . . . . . . . . . . . . . . . . .   11

<u>United States v. Testan</u>,
    424 U.S. 392 (1976) . . . . . . . . . . . . . . . . .   11

<u>United States v. Williams</u>,
    514 U.S. 527 (1995) . . . . . . . . . . . . . . . . .   11

**STATUTES, RULES, AND REGULATIONS**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . .   14

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . .   14

28 U.S.C. § 2071-2077 . . . . . . . . . . . . . . . . . .   13

28 U.S.C. § 517 . . . . . . . . . . . . . . . . . . . . .    1

28 U.S.C. § 566(c) . . . . . . . . . . . . . . . . . . . .   14

Federal Rule of Civil Procedure 4(e)  . . . . . . . . . .    6

Federal Rule of Civil Procedure 4(f)(3) . . . . . . . . .   13

Federal Rule of Civil Procedure 82  . . . . . . . . . . .   13

28 C.F.R. § 501.2 . . . . . . . . . . . . . . . . . . . .    6

28 C.F.R. § 501.3 . . . . . . . . . . . . . . . . . . . .    6

**MISCELLANEOUS**

Hague Convention on the Service Abroad of Judicial and
    Extrajudicial Documents in Civil or Commercial Matters,
    Nov. 15, 1965, 20 U.S.T. 361 . . . . . . . . . . . . . . 4

Redacted Brief for the United States,
    <u>United States v. Moussaoui</u>, 03-4792 (4th Cir.),
    <u>http://news.findlaw.com/hdocs/docs/moussaoui/
    usmouss102403gbrf.pdf</u> . . . . . . . . . . . . . . . .   15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
In re: Terrorist Attacks         03 MDL 1570 (RCC)
of September 11, 2001         :  Relates to: 03 Civ. 6978 (RCC)
                              :
- - - - - - - - - - - - - - - x

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO PLAINTIFFS' MOTIONS TO AUTHORIZE
ALTERNATIVE MEANS OF SERVICE OF PROCESS ON
<u>DEFENDANTS ALLEGED TO BE IN UNITED STATES CUSTODY</u>**

The United States of America ("United States" or
"Government"), on behalf of Attorney General of the United States
John Ashcroft ("Attorney General") and the United States
Department of Justice ("DOJ"), files this Statement of Interest
to attend to its interests in this action, pursuant to 28 U.S.C.
§ 517.[1]

<u>PRELIMINARY STATEMENT</u>

The United States opposes the request of plaintiffs
Federal Insurance Company et al. ("plaintiffs"), <u>Federal Ins. Co.
v. Al-Qaida</u>, 03 Civ. 6978 (RCC), that this Court authorize
alternative means of service of process by requesting the

---

[1]    28 U.S.C. § 517 provides that "[t]he Solicitor General,
or any officer of the Department of Justice, may be sent by the
Attorney General to any State or district in the United States to
attend to the interests of the United States in a suit pending in
a court of the United States, or in a court of a State, or to
attend to any other interest of the United States."  The United
States reserves the right to file a supplemental statement of
interest or otherwise to intervene at a later stage of this
litigation if necessary to protect its interests.

Attorney General to deliver the summons and complaint to defendants who are alleged to be in the custody of unidentified United States agencies or officials.  DOJ will attempt to facilitate service of process on certain defendants whom it has publicly acknowledged are in the custody of the Federal Bureau of Prisons or the United States Marshals Service, both components of DOJ.  However, with respect to the other specified defendants who are alleged to be in U.S. custody, as it has in other cases, the Government will neither confirm nor deny that these individuals are being held by the United States.

Information concerning the identities of persons detained by the United States in connection with the war on terrorism can be highly sensitive, and, for obvious national security reasons, generally has not been publicly disclosed.  In order to accept service of process on behalf of individual detainees, the Government would have to acknowledge publicly whom it currently holds in custody and whom it does not.  Official public disclosure of such information could have grave consequences for the Government's efforts to combat terrorism. In light of these considerations, the Government cannot at this point jeopardize national security by assisting the plaintiffs in this litigation through official public disclosure of the identities of defendants it currently has in custody.

Moreover, insofar as plaintiffs request an order

2

directing the Attorney General to serve process on the specified
defendants, such relief is barred by the doctrine of sovereign
immunity.  Plaintiffs cannot identify any express waiver of
sovereign immunity that would grant federal courts authority to
compel Executive Branch officials to act as process servers under
these circumstances.  Absent such a waiver, the Court lacks
jurisdiction to grant the requested relief.

<u>ARGUMENT</u>

**A.   Plaintiffs' Motions**

This Statement of Interest addresses two motions in
which plaintiffs seek authorization to use alternative means of
service of process on certain defendants alleged to be in U.S.
custody.  In the first motion, Docket No. 54, plaintiffs seek an
order permitting them to serve at least twenty-three allegedly
detained defendants by sending the summons and complaint via
certified mail to DOJ, care of Attorney General Ashcroft.  <u>See</u>
Affidavit of Michael J. Sommi in Support of Plaintiffs' Motion
for Leave to Serve Incarcerated Defendants ("First Sommi Aff."),
¶ 14.[2]  Specifically, plaintiffs propose to send the summons and

---

[2]      Plaintiffs seek to use this procedure to serve process
on defendants Abd al-Hadi al-Iraqi, Abd Al-Rahim Al Nashri, Abdul
Rahman Al-Amoudi, Abu Anas Al-Liby, Abu Zubaydah, Ahmed Ressam,
Bensayah Belkacem, Enaam M. Arnaout, Ibn al-Shaykh al-Libi, Jamil
Qasim Saeed, Khalid Shaikh Mohammed, Mamdouh Mahmud Salim,
Mohamed Bayazid, Mohammed Ali Hasan Al Moayad, Mohammed Sadeek
Odeh, Nurjaman Riduan Ismuddin, Ramzi Binalshibh, Sabir Lamar,
Umar al-Faruq, Wadih El-Hage, Wali Khan Amin Shah, Zacarias
Moussaoui, and Mohammed Mohsen Yahya Zayed.  First Sommi Aff.

3

complaint to the Attorney General, together with a "Service of
Process Letter Request" to be issued by the Court.  Id. ¶¶ 15-16.
The proposed Letter Request would "inform[] Mr. Ashcroft of this
lawsuit and request[] the Justice Department's assistance in
effecting service upon the defendants in U.S. custody."  Id.
¶ 16.  Plaintiffs also proffer a proposed "'Declaration of
Service of Process' . . . to be completed by Mr. Ashcroft once
service has been successfully completed on each of the
incarcerated defendants."  Id.[3]

        In their second motion, Docket No. 55, plaintiffs seek
to use the same procedure to serve process on five individuals

_____

¶ 13.

        [3]     Plaintiffs also request that the Court authorize
service of process on defendants allegedly incarcerated in
foreign states by sending the summons and complaint via
international registered mail to each foreign state's minister of
justice, along with a letter from the Court "informing the
foreign state's minister of justice of this lawsuit and
requesting the ministry of justice's assistance in effecting
service upon the defendants in their custody."  First Sommi Aff.
¶ 20.  The United States notes that, where in force, the
prevailing method for service abroad is through the procedures
established in the Hague Convention on the Service Abroad of
Judicial and Extrajudicial Documents in Civil or Commercial
Matters, Nov. 15, 1965, 20 U.S.T. 361.  Under that agreement,
judicial documents are to be addressed to the Central Authority
designated by the foreign state to receive requests for service,
and under both the Hague Convention and United States domestic
law, private attorneys are competent to forward such requests.
Hague Convention, Arts. 2, 3, 5.  Where a foreign state is not a
party to the Hague Convention, service generally is effectuated
through registered mail, retention of a process server in the
foreign state, or letter rogatory.

4

whom plaintiffs allege are in U.S. custody and have "sufficient authority and/or responsibility to accept service" on behalf of four "Foreign Terrorist Organizations" named as defendants in this action.  <u>See</u> Affidavit of Michael J. Sommi in Support of Plaintiffs' Motion for Leave to Serve Defendants Al Qaida, Egyptian Islamic Jihad, Jemaah Islamiyah and Ansar Al-Islam Through Incarcerated Senior Officials of Those Organizations ("Second Sommi Aff."), ¶¶ 13-14, 17-19, 43.[4]  Plaintiffs' proposed order with respect to this motion states that, upon receipt of the summons and complaint, DOJ and Attorney General Ashcroft "will forward same to the specified incarcerated individuals who have sufficient authority and/or responsibility to accept service on behalf of [the identified] Foreign Terrorist Organizations."

Plaintiffs did not seek DOJ's consent to the requested relief prior to filing their motions, nor was DOJ served with the motions.  As set forth below, with the limited exception of persons in the custody of the Federal Bureau of Prisons ("BOP")

---

[4]     Specifically, plaintiffs allege that defendants Khalid Sheik Mohammed, Abu Zubaydah, and Ramzi Binalshibh are in U.S. custody and "are sufficiently high-ranking members with the capability to accept service of process" on behalf of defendants Al Qaida and Egyptian Islamic Jihad.  Second Sommi Aff. ¶¶ 21-33. Plaintiffs further allege that defendants Nurjaman Riduan Ismuddin (a.k.a. "Hambali") and Husam al-Yemeni are in U.S. custody and have authority to accept service on behalf of defendants Jemaah Islamiyah and Ansar Al-Islam, respectively. <u>Id.</u> ¶¶ 34-42.

or the U.S. Marshals Service ("USMS"), all of whom have previously been publicly identified, the Attorney General will not serve process on, or accept service on behalf of, persons allegedly detained by the United States in connection with the war on terrorism.

**B.   Persons in DOJ Custody**

Of the twenty-four individuals who are identified in plaintiffs' motions, ten are defendants in U.S. criminal cases and are in the custody of the Bureau of Prisons or the U.S. Marshals Service, and the Government has previously disclosed this fact.  Specifically, the following defendants are currently in BOP or USMS custody:  Abdurahman Alamoudi (spelled Abdul Rahman Al-Amoudi in plaintiffs' motion), Ahmed Ressam, Enaam M. Arnaout, Mamdouh Mahmud Salim, Mohammed Ali Hasan Al Moayad, Mohammed Sadeek Odeh, Wadih El-Hage, Wali Khan Amin Shah, Zacarias Moussaoui, and Mohammed Mohsen Yahya Zayed.  As to these individuals, DOJ will attempt to facilitate service of process, on a case-by-case basis, pursuant to Federal Rule of Civil Procedure 4(e).

The Court should be aware, however, that, because of the nature of the charges against them concerning terrorism, some of the defendants in DOJ custody are subject to Special Administrative Measures ("SAM"), which are intended to limit the defendants' ability to communicate terrorist information.  See 28

C.F.R. §§ 501.2, 501.3.  Among other things, applicable SAM may restrict defendants' telephone, visiting, and other privileges. If and when plaintiffs perfect service on defendants who are subject to SAM, and it thereafter appears the SAM are hindering defendants' participation in this litigation, DOJ will consider, on a case-by-case basis, whether modification of particular SAM provisions would be appropriate under the circumstances.

**C.   Other Persons Alleged to Be in U.S. Custody**

According to DOJ records, the remaining persons identified in plaintiffs' motions are not in the custody of DOJ. The Attorney General therefore has no authority over such persons, and no order directing the Attorney General to take action with respect to them would be appropriate.  To the extent the specified individuals are alleged to be in the custody of agencies other than DOJ, for substantial national security reasons the United States cannot confirm or deny that claim, and therefore cannot participate in a procedure designed to effectuate service of process in this private civil litigation. In addition, plaintiffs can identify no legal authority for a court to force the Government to do so.

7

1.   **Serving Process on Persons Allegedly in U.S. Custody Could Disclose Sensitive Information**

As the Government has made clear in various cases, information concerning the identities of persons detained by the United States in connection with the war on terrorism can be highly sensitive, and thus generally has not been publicly disclosed.  See, e.g., Center for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925-37 (D.C. Cir. 2003) (upholding DOJ's determination to withhold under FOIA names of detainees in post-September 11 investigation), cert. denied, 124 U.S. 1041 (2004); ACLU v. County of Hudson, 799 A.2d 629, 645-55 (N.J. Super. Ct. App. Div.) (holding that Immigration and Naturalization Service ("INS") regulation barring disclosure of information regarding INS detainees was valid and preempted state "Right-to-Know Law"), certification denied, 803 A.2d 1162 (N.J. 2002); North Jersey Media Group, Inc. v. Ashcroft, 308 F.3d 198, 199-203, 216-21 (3d Cir. 2002) (upholding so-called "Creppy Directive" requiring closed special interest deportation hearings where directive intended to avoid disclosure of potentially sensitive information, including names of INS detainees), cert. denied, 123 S. Ct. 2215 (2003); but see Detroit Free Press v. Ashcroft, 303 F.3d 681, 705-11 (6th Cir. 2002) (holding that Creppy Directive impermissibly infringed on newspapers' First Amendment right of access, but acknowledging that Government had demonstrated compelling interests sufficient to justify closure of deportation

8

proceedings).

These national security interests are present here, and the United States therefore will neither confirm nor deny whether or not it has custody of the persons identified in plaintiffs' motions, except as stated in Part B, supra.  If U.S. officials were to serve process on individual detainees, or to accept service of process on their behalf, the identities of these detainees inevitably would be revealed.  Indeed, plaintiffs have proposed that Attorney General Ashcroft publicly file a Declaration of Service of Process confirming that service has been successfully completed as to each of the specified defendants.  The filing of such declarations would disclose who is in the Government's custody, and who is not.

The D.C. Circuit recently recognized the dangers of disclosing this type of sensitive information in upholding DOJ's determination to withhold the names of persons detained in the course of the post-September 11 terrorism investigation.  See Center for Nat'l Sec. Studies, 331 F.3d at 925-37.  Citing "the deference mandated by the separation of powers and Supreme Court precedent," the court held that "the [G]overnment's expectation that disclosure of the detainees' names would enable al Qaeda or other terrorist groups to map the course of the investigation and thus develop the means to impede it [was] reasonable."  Id. at 928; see also North Jersey Media Group, 308 F.3d at 200, 217-20

(deferring to Executive judgment that open deportation hearings would threaten national security by, among other things, revealing the identities of detainees); County of Hudson, 799 A.2d at 652 (accepting Government's characterization of important interests affected by disclosure of names of detainees, including facilitation of law enforcement operations, protection of detainees, and promotion of national security). "While the name of any individual detainee may appear innocuous or trivial, it could be of great use to al Qaeda in plotting future terrorist attacks or intimidating witnesses in the present investigation." Center for Nat'l Sec. Studies, 331 F.3d at 929.

Likewise, the official public disclosure of sensitive information that would result from serving process on persons in U.S. custody could seriously undermine the Government's anti-terrorism efforts. Accordingly, in light of the substantial national security concerns at stake, the United States cannot at this point participate in a procedure to carry out service of process on the persons alleged by plaintiffs to be in U.S. custody.

**2. Sovereign Immunity Precludes the Court from Compelling Executive Branch Officials to Serve Process on Persons Alleged to Be in U.S. Custody**

The United States and its agencies are immune from judicial proceedings absent an express waiver of sovereign immunity. See, e.g., Department of the Army v. Blue Fox, Inc.,

10

525 U.S. 255, 260 (1999); <u>Block v. North Dakota</u>, 461 U.S. 273, 287 (1983); <u>Army & Air Force Exch. Serv. v. Sheehan</u>, 456 U.S. 728, 734 (1982); <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976); <u>United States Envtl. Prot. Agency v. General Elec. Co.</u>, 197 F.3d 592, 597 (2d Cir. 1999), <u>opinion amended on reh'g</u>, 212 F.3d 689 (2d Cir. 2000). A waiver of the Government's sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996) (citations omitted); <u>accord</u> <u>Franconia Assocs. v. United States</u>, 536 U.S. 129, 141 (2002); <u>United States v. Sherwood</u>, 312 U.S. 584, 590 (1941).

Such a waiver, moreover, "will be strictly construed, in terms of its scope, in favor of the sovereign." <u>Lane</u>, 518 U.S. at 192; <u>Blue Fox</u>, 525 U.S. at 261 (applying requirement of strict construction in favor of sovereign in Administrative Procedure Act action); <u>United States v. Williams</u>, 514 U.S. 527, 531 (1995) (when confronted with a purported waiver of the Federal Government's sovereign immunity, the Court will "constru[e] ambiguities in favor of immunity"); <u>Lehman v. Nakshian</u>, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.") (citation and internal quotation marks omitted). "It is plaintiffs' burden to satisfy this 'high standard' and prove that

11

a waiver of sovereign immunity exists." <u>Feng Suo Zhou v. Li Peng</u>, 286 F. Supp. 2d 255, 264 (S.D.N.Y. 2003) (citing <u>Blue Fox</u>, 525 U.S. at 261).

   "A judicial proceeding is considered brought against the sovereign if the result could serve 'to restrain the Government from acting, or to compel it to act.'" <u>General Elec. Co.</u>, 197 F.3d at 597 (quoting <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963)). An order requiring an officer of the United States to serve civil process is an order compelling Government action. <u>See</u> <u>Feng Suo Zhou</u>, 268 F. Supp. 2d at 263-67 (vacating, for lack of any express waiver of sovereign immunity, <u>ex parte</u> order authorizing substituted service on former Premier of the People's Republic of China through the State Department security detail protecting him).

   Here, plaintiffs' proposed order with regard to service on defendant "Foreign Terrorist Organizations" by its terms would compel the Government to serve process on certain individuals allegedly in U.S. custody. <u>See</u> Proposed Order (stating that DOJ and Attorney General Ashcroft "<u>will</u> forward [the summons and complaint] to the specified incarcerated individuals who have sufficient authority and/or responsibility to accept service on behalf of those Foreign Terrorist Organizations") (emphasis

12

supplied).[5]  An express statutory waiver of sovereign immunity is therefore required for the Court to grant the requested relief.

Plaintiffs have identified no such waiver.  The only statutorily-based authority referenced in plaintiffs' motion is Federal Rule of Civil Procedure 4(f)(3), which states:  "Unless otherwise provided by federal law, service upon an individual . . . may be effected in a place not within any judicial district of the United States . . . by other means not prohibited by international agreement as may be directed by the court."  Neither this Rule nor anything in the Rules Enabling Act, 28 U.S.C. § 2071-2077, expressly and unequivocally waives the Government's sovereign immunity.  To the contrary, the Rules Enabling Act provides that the Rules "shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b); see also Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts . . . .").

---

[5]    By contrast, plaintiffs' proposed order concerning service on individual defendants does not expressly direct the Attorney General to deliver the summons and complaint to the specified defendants.  Although that order as worded would not violate sovereign immunity, given that the United States will not assist in serving process on the majority of the specified defendants, see Part C.1, supra, the order would not satisfy due process because it would not afford "notice reasonably calculated . . . to apprise [the specified defendants] of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Bank & Trust Co., 339 U.S. 306, 314 (1950); see also First Sommi Aff. ¶¶ 12, 22 (citing Mullane standard).

Nor does any other statute explicitly grant the Court authority to order the Attorney General to serve process under these circumstances.  Congress has granted federal courts the power to compel Executive Branch officials to act if those officials owe a nondiscretionary duty to a particular plaintiff. See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").  But the Government officials who may or may not have custody of the specified defendants plainly owe no nondiscretionary duty to plaintiffs to serve process, particularly when doing so could result in official public disclosure of sensitive information.

Furthermore, although federal courts have certain authority with regard to the U.S. Marshals Service, see 28 U.S.C. § 566(c), no statute authorizes courts to order other Government agencies or officials to act as process servers.  Thus, another court in this District recently held that an ex parte order authorizing substituted service on former Chinese leader Li Peng through his State Department protective detail violated sovereign immunity.  See Feng Suo Zhou, 286 F. Supp. 2d at 264-67.  In so ruling, the Court rejected the plaintiffs' argument that the order was authorized by the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.  The Court concluded, among other things, that

14

plaintiffs had "fail[ed] to identify [any] statute that the
Department of State allegedly violated," and there was thus no
"meaningful standard by which to review the [Government's]
conduct." <u>Feng Suo Zhou</u>, 286 F. Supp. 2d at 265.  Similarly
here, plaintiffs do not allege a violation of law by any
Government agency or official, and the Government's conduct
therefore "is not reviewable" under the APA.  <u>Id.</u>

In sum, plaintiffs cannot sustain their burden of
demonstrating an express waiver of sovereign immunity that would
permit this Court to compel the Attorney General to serve process
on persons allegedly in U.S. custody.  The Court therefore lacks
jurisdiction to grant such relief.[6]

---

[6]     Furthermore, to the extent any of the individuals whom
plaintiffs seek to serve are alien enemy combatants seized and
detained overseas, limits on the Court's authority, informed by
substantial separation-of-powers concerns, would place such
persons beyond the reach of the Court's process.  <u>See, e.g.</u>,
<u>Johnson v. Eisentrager</u>, 339 U.S. 763 (1950) (holding that federal
courts lacked jurisdiction over habeas corpus petitions filed by
enemy aliens held in Germany following World War II); <u>see also</u>
Redacted Brief for the United States, <u>United States v. Moussaoui</u>,
03-4792 (4th Cir.), <u>http://news.findlaw.com/hdocs/docs/moussaoui/</u>
<u>usmouss102403gbrf.pdf</u>.  Should the Court wish the Government to
provide additional briefing on this issue, or to provide a copy
of the redacted brief filed in <u>United States v. Moussaoui</u>, we
will do so promptly.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motions should be denied.

Respectfully Submitted,

PETER D. KEISLER                    DAVID N. KELLEY
Assistant Attorney General          United States Attorney


DOUGLAS N. LETTER                   By:  s/ Sarah S. Normand
Terrorism Litigation Counsel        SARAH S. NORMAND
U.S. Department of Justice          Assistant U.S. Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Telephone: (212) 637-2709
                                    Facsimile: (212) 637-2717

                                    - Of Counsel -

16