# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | 03 MDL No. 1570 (RCC) ECF Case |
| THOMAS E. BURNETT, SR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 03-CV-9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF SHEIKH HAMAD AL-HUSAINI
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Sheikh

Hamad Al-Husaini (D209), by and through undersigned counsel, hereby makes a limited

appearance for the purpose of moving the Court, before the Honorable Richard C. Casey, United

States District Judge, at the United States District Court, Southern District of New York, 500

Pearl Street, New York, New York 10007, at a date and time to be determined by the Court, for

an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the Third

Amended Complaint on the basis of (1) lack of personal jurisdiction since Sheikh Hamad Al-

Husaini lacked contacts with the United States, either generally, or specifically related to the

allegations in the complaint; and (2) improper service of process through plaintiffs' attempts to

serve Sheikh Hamad Al-Husaini by publication in two newspapers that he does not, and cannot,

read.[1]  A memorandum of law, with exhibits, in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Sheikh Hamad Al-Husaini (D209)

DATED:  April 8, 2004

---

[1] Sheikh Hamad Al-Husaini reserves the right to raise additional defenses, including those based on failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _In Re_ Terrorist Attacks on September 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
|  | ) | ECF Case |
| Thomas E. Burnett, Sr., _et al._, | ) |  |
| Plaintiffs, | ) |  |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| Al Baraka Investment and Development Corporation, _et al._, | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF
## SHEIKH HAMAD AL-HUSAINI'S MOTION TO DISMISS
## <u>THE THIRD AMENDED COMPLAINT</u>

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant Sheikh Hamad Al-Husaini (D209)

DATED:  April 8, 2004

# TABLE OF CONTENTS

I.      Introduction..................................................................................................... 1

II.     Procedural History........................................................................................... 1

III.    Factual Background.......................................................................................... 2

IV.     This Court Lacks Personal Jurisdiction Over Sheikh Al-Husaini ...................................2

        A.      Sheikh Al-Husaini Lacks Any Contact with the United States
                to Support the Exercise of General Jurisdiction.................................................... 4

        B.      This Court Does Not Have Specific Jurisdiction Over Sheikh Al-Husaini
                Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
                Contacts.............................................................................................................    5

                1.      Plaintiffs' Claims Against Sheikh Al-Husaini Do Not Arise Out Of,
                        or Relate To, His Contacts with the United States................................. 6

                2.      Sheikh Al-Husaini's Involvement with Charities and Other Entities
                        Was Not "Expressly Aimed" at the United States ................................. 6

                3.      Sheikh Al-Husaini was Not "Personally Involved" as a "Primary
                        Participant" in Funding Terrorism........................................................... 8

        C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
                Exercise of Personal Jurisdiction over Sheikh Al-Husaini................................. 9

V.      Plaintiffs' Improper Service of Process on Sheikh Al-Husaini Mandates Quashing
        of the Service of Process and Dismissal of the Complaint............................................. 10

        Conclusion.................................................................................................................    14

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
 426 F.2d 205 (2d Cir. 1970)................................................................... 5

Asahi Metal Indus. Co. v. Superior Court of Calif.,
 480 U.S. 102 (1987)............................................................................. 7

Baade v. Price,
 175 F.R.D. 403 (D.D.C. 1997)............................................................. 12

Biton v. Palestinian Interim Self-Gov't Auth.,
 No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)..... 4

Burger King v. Rudzewicz,
 471 U.S. 462 (1985)............................................................................. 4, 7

Burnett v. Al Baraka Invest. & Devel. Corp.,
 292 F. Supp. 2d 13 (D.D.C. 2003)........................................................ 4, 7

Busch v. Buchman, Buchman & O'Brien, Law Firm,
 11 F.3d 1255 (5th Cir. 1994)............................................................... 4

Calder v. Jones,
 465 U.S. 783 (1984)............................................................................. passim

Chaiken v. VV Publishing Corp.,
 119 F.3d 1018 (2d Cir. 1997)............................................................... 3

City of New York v. New York, N.H. & H.R. Co.,
 344 U.S. 293 (1953)............................................................................. 11

Employers Reinsurance Corp. v. Bryant,
 299 U.S. 374 (1937)............................................................................. 3

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)............................................. 4-5

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
 No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)........................ 4

_Ex parte_ McCardle,
        74 U.S. (7 Wall.) 506 (1868)...............................................................................  3

Hanson v. Denckla,
        357 U.S. 235 (1958)...........................................................................................  3

Helicopteros Nacionales de Colombia, S.A. v. Hall,
        466 U.S. 408 (1984)...........................................................................................  3, 4, 5, 6

_In re_ Magnetic Audiotape Antitrust Litig.,
        334 F.3d 204 (2d Cir. 2003)..............................................................................  7, 8

_In re_ Ski Train Fire in Kaprun, Austria,
        230 F. Supp. 2d 392 (S.D.N.Y. 2002)..............................................................  9

International Shoe Co. v. Washington,
        326 U.S. 310 (1945)...........................................................................................  3

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
        160 F. Supp. 2d 722 (S.D.N.Y. 2001)..............................................................  5

Milliken v. Meyer,
        311 U.S. 457 (1940)...........................................................................................  3

Mullane v. Central Hanover Bank & Trust Co.,
        339 U.S. 306 (1950)...........................................................................................  12

National Dev. Co. v. Triad Holding Corp.,
        930 F.2d 253 (2d Cir. 1991)..............................................................................  12

Ruhrgas AG v. Marathon Oil Co.,
        526 U.S. 574 (1999)...........................................................................................  3

SEC v. Carrillo,
        115 F.3d 1540 (11th Cir. 1997)........................................................................  8

Shaffer v. Heitner,
        433 U.S. 186 (1977)...........................................................................................  6

Time, Inc. v. Simpson,
        No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003)..........  8

Vermont Agency of Natural Res. v. United States _ex rel._ Stevens,
        529 U.S. 765 (2000)...........................................................................................  3

iii

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331 <u>et</u> <u>seq.</u>................................................................. 10

    18 U.S.C. § 2334........................................................................... 4

    18 U.S.C. § 2334(a)....................................................................... 10

Federal Rules of Civil Procedure:

    Rule 4............................................................................................ 12

    Rule 4(f)(2).................................................................................... 12

    Rule 12(b)...................................................................................... 1

    Rule 12(b)(1)................................................................................. 1

    Rule 12(b)(2)................................................................................. 1

    Rule 12(b)(5)................................................................................. 1, 12, 13

    Rule 12(b)(6)................................................................................. 4

D.C. Code Ann. § 13-423............................................................................... 9

    D.C. Code Ann. § 13-423(a)(1)-(2)............................................... 9

    D.C. Code Ann. § 13-423(a)(3)..................................................... 9

    D.C. Code Ann. § 13-423(a)(4)..................................................... 9

    D.C. Code Ann. § 13-423(5)-(7).................................................... 9

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
    http://www.msnbc.msn.com/id/3340393.............................................................. 11

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
    http://www.state.gov/r/pa/ei/bgn/3584pf.htm....................................................... 11

## I.      **INTRODUCTION.**

Sheikh Hamad Al-Husaini ("Sheikh Al-Husaini") (D209) has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Muslim.[2]  Sheikh Al-Husaini respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, and (2) improper service of process.

As set forth in greater detail below, this Court further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Sheikh Al-Husaini, a foreign resident who has lived in Saudi Arabia his entire life, and has never visited the United States.

This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Sheikh Al-Husaini, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, which Sheikh Al-Husaini cannot read, clearly fails to comport with due process.  Therefore, plaintiffs' attempted service of process on Sheikh Al-Husaini is improper, such that this court must dismiss the complaint against him.

## II.      **PROCEDURAL HISTORY.**

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was filed on November 22, 2002.  On March 10, 2004, Sheikh Al-Husaini entered a limited appearance in Burnett for the limited purpose of raising the defenses set forth below.

---

[2]  Sheikh Hamad Al-Husaini has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Sheikh Al-Husaini .  If Sheikh Al-Husaini is served, then he will enter a limited appearance in those cases for the purpose of raising his sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

### III.   FACTUAL BACKGROUND.

Sheikh Hamad Al-Husaini is an elderly watch retailer who lives in Dammam, Saudi Arabia.  See Declaration of Sheikh Hamad Al-Husaini, at ¶¶ 4, 7 ("Decl.") (attached and incorporated hereto as Exhibit 1, Attachments A and B).[3]  He is a citizen of the Kingdom of Saudi Arabia.  Id. at ¶ 3.

Sheikh Al-Husaini has lived in Saudi Arabia all of his life and has never visited the United States.  Id. at ¶¶ 3, 5.  He is in his late seventies, and, because of his age and his failing health, does not engage in lengthy travel.  Id. at ¶¶ 3, 7.  He owns no real property, and has no bank accounts or investments in the United States, and does not engage in transactions with any businesses in the United States.  Id. at ¶ 6.

Sheikh Al-Husaini does not subscribe to or read the *International Herald Tribune* or the *Al Quds al Arabi*, which is banned in Saudi Arabia where he lives.  Id. at ¶ 8.

While Sheikh Al-Husaini is named as a defendant in the above-captioned case, there are no allegations in the Third Amended Complaint concerning him.  Id. at ¶ 10.  He has never supported any person or organization that he has known to participate in terrorist activities.  Indeed, Sheikh Al-Husaini condemns terrorism, including the tragic attacks of September 11, 2001.  Id. at ¶ 9.

### IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER SHEIKH AL-HUSAINI.

This Court must dismiss plaintiffs' Complaint against Sheikh Al-Husaini , pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction,

---

[3] Sheikh Al-Husaini cannot read, write or speak English.  Therefore, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim (who authenticated the translation), which is Exhibit 1 to this Motion.  A translation of the Al-Husaini Declaration into English is Attachment B to the Alim Declaration.

"the only function remaining to the court is that of announcing the fact and dismissing the cause." Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000) (quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Sheikh Al-Husaini, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a "limited" (or "specific") jurisdiction theory, depending on the nature of the defendant's contacts with the forum. Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997). A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him, only if the cause of action arises out of, or has a substantial

3

connection with, his contacts with the forum, and additionally, if the defendant was a primary participant in tortious acts expressly aimed at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Sheikh Al-Husaini has never visited the United States.  See Al-Husaini Decl. at ¶ 5. Therefore, it is clear that Sheikh Al-Husaini, who has no contacts with the United States, cannot be subject to jurisdiction in the United States courts.

**A.      Sheikh Al-Husaini Lacks Any Contact with the United States to Support the Exercise of General Jurisdiction.**

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Sheikh Al-Husaini through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[4]  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales, 466 U.S. at 415-16.  In ATA cases such as this one, "the relevant Due Process inquiry for personal jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the defendant has minimum contacts with the United States.'"  Burnett, 292 F. Supp. 2d at 21 (quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)) (emphasis added).[5]  See also Estates of Ungar v. Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL 540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v.

---

[4] Sheikh Al-Husaini does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

[5] Sheikh Al-Husaini  was not properly served, as set forth in Part V, *infra*.

4

Palestinian Auth., 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001).

Courts performing this analysis in other types of cases have consistently held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

In this instance, Sheikh Al-Husaini has <u>never</u> visited the United States.  See Al-Husaini Decl. (Ex. 1), at ¶ 5.  Moreover, he does not have any property, bank accounts, or investments in the United States, and does not engage in transactions with any businesses in the United States. Id. at ¶ 6.  Therefore, there is absolutely no basis for this Court to exercise jurisdiction over him under a "general" jurisdiction theory.

**B.    This Court Does Not Have Specific Jurisdiction over Sheikh Al-Husaini Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

This Court also cannot exercise personal jurisdiction over Sheikh Al-Husaini under a specific, or limited, theory of personal jurisdiction because plaintiffs' claims against him do not arise out of, or relate to, his contacts with the United States.  Helicopteros Nacionales, 466 U.S. at 414.  Further, where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the

harm from which the claim arose.  Id. at 790.[6]  As set forth below, because plaintiffs have not

met any of these three requirements, this court cannot exercise "specific" personal jurisdiction

over Sheikh Al-Husaini.

> **1.      Plaintiffs' Claims Against Sheikh Al-Husaini Do Not Arise Out Of,**
> **or Relate To, His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims

against a defendant must be related to that defendant's contacts with the forum.  Helicopteros

Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific

jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the
> forum, the Court has said that a "relationship among the defendant, the forum,
> and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, Sheikh Al-Husaini has no

contacts with the United States.  Therefore, whatever plaintiffs' claims against Sheikh Al-

Husaini, which are not stated in the Complaint, they cannot relate to his contacts with the United

States, since Sheikh Al-Husaini's contacts are non-existent.

> **2.      Sheikh Al-Husaini's Involvement with Charities and other Entities Was**
> **Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two

individual non-resident defendants in a tort action for libel, because "their intentional, and

allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence.

Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal

---

[6] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby "purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476. However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over a non-resident defendant.  Burger King, 471 U.S. at 474-75.  Subsequently the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger King, 471 U.S. at 475, 476)).

Under this Supreme Court precedent, plaintiffs have not met their burden to show that Sheikh Al-Husaini "expressly aimed" any harm at the United States, or committed any act that was "purposefully directed" at the United States.[7]

Therefore, as Judge Robertson has previously ruled in Burnett, with respect to Prince Sultan, Burnett, 292 F.Supp. 2d at 23,[8] Calder and Burger King require this court to dismiss Sheikh Al-Husaini from this action, as he is a non-resident defendant who plaintiffs do not

_____

[7] The critical inquiry is not whether the plaintiffs were injured in their home forum -- which the parties can agree upon -- but whether the defendant's intentional wrongdoing is "**expressly directed** at [the] forum."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing Calder).

[8] The Burnett court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," id., absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of Calder and Burger King.  Burnett, 292 F. Supp. at 23.

allege, and cannot show, has directed any activities toward the United States, much less engaged in any actions that are "purposefully directed" to cause harm to the United States.

> **3.      Sheikh Al-Husaini Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.**

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Sheikh Al-Husaini's activities -- whatever plaintiffs believe them to be – had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them ...." Id.  Sheikh Al-Husaini condemns terrorism, and has never knowingly supported any person or organization that he knew to be engaged in terrorist activities.  See Al-Husaini Decl. (Ex. 1) at ¶ 9.  Therefore, there is no way that plaintiffs can make any claim that Sheikh Al-Husaini was a "primary participant" in the

September 11 attacks.  Thus, plaintiffs have not and cannot meet the third requirement of

"primary participation" for this Court's exercise of specific jurisdiction over Sheikh Al-Husaini.

### C. The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Sheikh Al-Husaini.

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which

would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA

claims, this Court must find that the long-arm statute does not allow for the exercise of personal

jurisdiction over Sheikh Al-Husaini, because he lacks the requisite contacts with the relevant

forum.[9]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a

tort action is permissible only if there exists some nexus between the defendant's activities and

the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in
> the District of Columbia; [or]

> [by] causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia if he regularly does or solicits business, engages
> in any other persistent course of conduct, or derives substantial revenue from
> goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[10]  Here, plaintiffs have not alleged any facts

showing that Sheikh Al-Husaini either committed acts or omissions within the District of

Columbia, or engaged in a regular course of business or other conduct within, or from, the

---

[9] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

[10] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must find that it has no personal jurisdiction over Sheikh Al-Husaini.

V.    **PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON SHEIKH AL-HUSAINI MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.**

Plaintiffs' improper attempts to serve Sheikh Al-Husaini were defective, and mandate quashing of the service of process and dismissal of the complaint against him.[11]  As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Sheikh Al-Husaini, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach him.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs then published a *modified* version of this notice which listed those thirty-six names, as well as eleven (11) names not approved by Judge Robertson, including the name of Sheikh Al-Husaini.  See Plaintiffs' Notice of Service by Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).  Therefore, as a first matter, plaintiffs have not received permission from the court to serve Sheikh Al-Husaini by publication.  On that basis alone, service of process against him must be quashed.

---

[11] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Sheikh Al-Husaini was not served in a judicial district within the United States, as required under the statute.  See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

Second, plaintiffs' proof of service demonstrates that the *International Herald Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, a minute number in a country with a population of more than 24 million.[12]  Further, Sheikh Al-Husaini cannot read English, see Al-Husaini Decl. (Ex. 1), at ¶ 11, so that even if that newspaper had a broader circulation in Saudi Arabia, he could not read it.  Even more inadequate is plaintiffs' attempted service by publication in *Al Quds Al Arabi*, a London-based newspaper, banned in Saudi Arabia, as noted in an article that quotes one of the plaintiffs' attorneys for the *Havlish* case.  See P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC, at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003) (attached hereto as Exhibit 2).  These undisputed facts demonstrate that plaintiffs' contention that they have "served by publication" a number of Saudi defendants, including Sheikh Al-Husaini, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply false.

Third, it is settled law that service by publication is a disfavored remedy, one that should only be sought if the plaintiffs are unable to obtain the business or home address of the defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought leave to serve some defendants by publication (a group which did not include Sheikh Al-Husaini) to show that Sheikh Al-Husaini's addresses were unavailable, either on the Internet, or through commercial directories, so as to make it impossible to serve him by the established

---

[12] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an estimated population of 24.3 million.

means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on foreign defendants.

Fourth, service by publication does not comport with due process where, as here, the publication is in newspapers that either are not circulated in the defendant's community, or otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and **if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added). Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Sheikh Al-Husaini does not reside in an country within that "newspaper's normal circulation."

Fifth, plaintiffs cannot contend that Sheikh Al-Husaini, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process.  Otherwise, Rule 12(b)(5), which allows a defendant to contest service of process, would be rendered a nullity.  It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P.  See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only appropriate remedy for failure to effect proper service of process is quashing of the plaintiffs' attempts to serve Sheikh Al-Husaini by publication.  Baade, 175 F.R.D. at 406 ("service of process must be quashed").  Therefore, this Court should quash the attempted

service against Sheikh Al-Husaini and dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## **CONCLUSION**

For the foregoing reasons, defendant Sheikh Hamad Al-Husaini respectfully requests that this Court grant his Motion to Dismiss, because this Court lacks personal jurisdiction over him, as a non-resident defendant, and plaintiffs have not properly served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Sheikh Hamad Al-Husaini (D209)

DATED:  April 8, 2004

13

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.

/s/ Alan R. Kabat

_____

Alan R. Kabat