## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF SHEIKH SALEH AL-HUSSAYEN'S
### MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Sheik

Saleh Al-Hussayen (D222), by and through undersigned counsel, hereby makes a limited

appearance for the purpose of moving the Court, before the Honorable Richard C. Casey, United

States District Judge, at the United States District Court, Southern District of New York, 500

Pearl Street, New York, New York 10007, at a date and time to be determined by the Court, for

an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the Third

Amended Complaint on the basis of (1) sovereign immunity under the Foreign Sovereign

Immunities Act of 1976, since Sheikh Al-Hussayen is a high-ranking Saudi governmental

official; (2) lack of personal jurisdiction since Sheikh Al-Hussayen lacked contacts with the

United States, either generally, or specifically related to the allegations in the complaint; and (3)

improper service of process through plaintiffs' attempts to serve Sheikh Al-Hussayen by

publication in two newspapers that he does not read.[1]  A memorandum of law, with exhibits, in

support of this Motion is attached hereto.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Sheikh Saleh Al-Hussayen (D222)

</div>

DATED:  April 8, 2004

---

[1] Sheikh Al-Hussayen reserves the right to raise additional defenses, including those based on lack of justiciability and failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 ) | 03 MDL No. 1570 (RCC) |
| ) | ECF Case |
| ) | |
| THOMAS E. BURNETT, SR., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 03-CV-9849 (RCC) |
| ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## SHEIKH SALEH AL-HUSSAYEN'S
## <u>MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Sheikh Saleh Al-Hussayen (D222)

DATED:  April 8, 2004

**TABLE OF CONTENTS**

I.    Introduction................................................................................................... 1

II.   Procedural History.......................................................................................... 2

III.  Factual Background......................................................................................... 2

IV.   This Court Lacks Subject Matter Jurisdiction Because Sheikh Al-Hussayen Is
      Immune From Suit Under the Foreign Sovereign Immunities Act............................... 4

      A.    The Standard of Review........................................................................... 4

      B.    Sheikh Al-Hussayen is Immune from Suit Under the FSIA Because the
            Allegations Against Him Concern Matters Within His Capacity
            as an Official of the Saudi Government........................................................ 6

      C.    None of the Exceptions to FSIA Immunity Exists With Regard
            to Sheikh Al-Hussayen.............................................................................. 6

            1.    The Commercial Activity Exception is Not Applicable......................... 7

            2.    The Non-Commercial Tort Exception is Also Inapplicable.................... 7

            3.    The State-Sponsored Terrorism Exception is Also Inapplicable ........... 8

V.    This Court Lacks Personal Jurisdiction Over Sheikh Al-Hussayen............................ 8

      A.    Sheikh Al-Hussayen Lacks the Requisite Contacts with the United States
            to Support the Exercise of General Jurisdiction.................................................. 10

      B.    This Court Does Not Have Specific Jurisdiction Over Sheikh Al-Hussayen
            Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
            Contacts................................................................................................. 12

            1.    Plaintiffs' Claims Against Sheikh Al-Hussayen Do Not Arise
                  Out Of, or Relate To, His Contacts with the United States.................... 12

            2.    Sheikh Al-Hussayen's Involvement with Charities and Other
                  Entities was Not "Expressly Aimed" at the United States..................... 13

            3.    Sheikh Al-Hussayen was Not "Personally Involved" as a "Primary
                  Participant" in Funding Terrorism................................................... 15

i

      C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
Exercise of Personal Jurisdiction over Sheikh Al-Hussayen............................. 16

VI.     Plaintiffs' Improper Service of Process on Sheikh Al-Hussayen Mandates Quashing
of the Service of Process and Dismissal of the Complaint............................................ 17

      Conclusion.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970).................................................................... 11

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989)............................................................................ 4

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)............................................................................ 14

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997).............................................................. 19

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)........ 10, 11

Burger King v. Rudzewicz,
    471 U.S. 462 (1985)........................................................................ 9, 13, 14

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)........................................................ passim

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994)................................................................ 10

Calder v. Jones,
    465 U.S. 783 (1984)........................................................................ passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997)............................................................... 9

Chuidian v. Philippine Nat'l Bank,
    912 F.2d 1095 (9th Cir. 1990)............................................................... 5

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953)............................................................................ 18

El Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996)............................................................... 5

Employers Reinsurance Corp. v. Bryant,
  299 U.S. 374 (1937)................................................................. 9

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
  153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)............................... 11

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
  No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)...................... 10, 11

Ex parte McCardle,
  74 U.S. (7 Wall.) 506 (1868)....................................... 8

Fickling v. Commonwealth of Australia,
  775 F. Supp. 66 (E.D.N.Y. 1991)......................................... 5

Filetech S.A. v. France Telecom S.A.,
  157 F.3d 922 (2d Cir. 1998)......................................... 6

Hanson v. Denckla,
  357 U.S. 235 (1958)................................................. 9

Helicopteros Nacionales de Colombia, S.A. v. Hall,
  466 U.S. 408 (1984)............................................ 9, 10, 12

In re Magnetic Audiotape Antitrust Litig.,
  334 F.3d 204 (2d Cir. 2003)..................................... 14, 15

In re Ski Train Fire in Kaprun, Austria,
  230 F. Supp. 2d 392 (S.D.N.Y. 2002).................................. 16

International Shoe Co. v. Washington,
  326 U.S. 310 (1945)................................................. 9

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
  160 F. Supp. 2d 722 (S.D.N.Y. 2001)................................ 11

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
  115 F.3d 1020 (D.C. Cir. 1997)....................................... 5

Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,
  507 U.S. 163 (1993)................................................. 5

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
  184 F. Supp. 2d 277 (S.D.N.Y. 2001)................................ 5

iv

Martin v. Republic of South Africa,
    836 F.2d 91 (2d Cir. 1987)...................................................................... 4

Milliken v. Meyer,
    311 U.S. 457 (1940)............................................................................... 9

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)............................................................................. 19

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991).................................................................. 19

Phoenix Consulting Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000)................................................................ 5

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)............................................................................. 7

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001)............................................................... 5, 6

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)............................................................................. 9

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)............................................................................. 7

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997)........................................................... 15

Shaffer v. Heitner,
    433 U.S. 186 (1977)........................................................................... 13

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 15

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
    33 F.3d 1232 (10th Cir. 1994)............................................................. 7

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)............................................................................. 8

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)............................................................... 5, 7

Voest-Alpine Trading USA Corp v. Bank of China,
    142 F.3d 887 (5th Cir. 1998)................................................................................. 7


**Statutes and Rules:**

28 U.S.C. § 1330(a)................................................................................................ 4

Anti-Terrorism Act, 18 U.S.C. § 2331 et seq.......................................................... 17

    18 U.S.C. § 2334.......................................................................................... 10

    18 U.S.C. § 2334(a)...................................................................................... 17

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq........................... 1, 4

    28 U.S.C. § 1603(a)........................................................................................ 5

    28 U.S.C. § 1603(d)........................................................................................ 7

    28 U.S.C. § 1605(a)(2).................................................................................... 7

    28 U.S.C. § 1605(a)(5).................................................................................... 6, 8

    28 U.S.C. § 1605(a)(7)(A)............................................................................... 6, 8

Federal Rules of Civil Procedure:

    Rule 4............................................................................................................ 19

    Rule 4(f)(2).................................................................................................... 17

    Rule 12(b)...................................................................................................... 1

    Rule 12(b)(1).................................................................................................. 1

    Rule 12(b)(2).................................................................................................. 1, 8

    Rule 12(b)(5).................................................................................................. 1, 19

    Rule 12(b)(6).................................................................................................. 10

D.C. Code Ann. § 13-423:

D.C. Code Ann. § 13-423(a)(1)-(2)......................................................................... 16

D.C. Code Ann. § 13-423(a)(3)............................................................................... 16

D.C. Code Ann. § 13-423(a)(4)............................................................................... 16

D.C. Code Ann. § 13-423(5)-(7)............................................................................. 16

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
      http://www.msnbc.msn.com/id/3340393............................................................ 18

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
      http://www.state.gov/r/pa/ei/bgn/3584pf.htm..................................................... 17

I.        **INTRODUCTION.**

Sheikh Saleh Al-Hussayen ("Sheikh Al-Hussayen") (D222) — a current member of one of the highest-ranking governmental bodies in the Kingdom of Saudi Arabia, and a former member of several other high-ranking governmental bodies — has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Muslim and has held important governmental positions relating to Islamic affairs.[2] Sheikh Al-Hussayen respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Sheikh Al-Hussayen's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this court's jurisdiction over him.  This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Sheikh Al-Hussayen, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.  This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Sheikh Al-Hussayen, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, does not comport with due process, and constitutes improper service of process, such that this Court must dismiss the complaint against him.

---

[2] Sheikh Al-Hussayen has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Sheikh Al-Hussayen.  If Sheikh Al-Hussayen is served, then he will enter a limited appearance in those cases for the purpose of raising his sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

## II.     PROCEDURAL HISTORY.

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was filed on November 22, 2002.

Prior to the consolidation of the Burnett case with several other related cases by the Judicial Panel on Multidistrict Litigation, Prince Sultan bin Abdulaziz Al-Saud and Prince Turki Al-Faisal bin Abdulaziz Al-Saud, high-ranking Saudi officials, filed motions to dismiss, based on the defense of lack of subject matter jurisdiction based on their sovereign immunity under the FSIA. Judge Robertson dismissed with prejudice plaintiffs' claims against these two defendants arising from any alleged acts that they took in their official capacity. Burnett v. Al Baraka Invest. & Devel. Corp., 292 F. Supp. 2d 9, 13-21 (D.D.C. 2003). Judge Robertson further dismissed claims against Prince Sultan for acts in his personal capacity, holding that his minimal contacts with the United States were unrelated to plaintiffs' allegations against him. Id. at 21-23.

On March 10, 2004, Sheikh Al-Hussayen entered a limited appearance in Burnett, for the purpose of raising the defenses set forth below.

## III.     FACTUAL BACKGROUND.

Sheikh Saleh Al-Hussayen is an Islamic Law scholar and government official who has lived in Saudi Arabia for almost his entire life and has always been a citizen of the Kingdom. See Declaration of Sheikh Saleh Al-Hussayen, at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1). Sheikh Al-Hussayen worked for the Saudi government from 1961 to 1974, initially for the Ministry of Finance and National Economy (1961-1971), and then for the Council of Prime Ministers (1971-1974). Id. at ¶ 5.

From 1974 to early 2002, Sheikh Al Hussayen held various positions and appointments with government sponsored welfare and other organizations including (1) the Al-Madenah Al-Monawarah, a social services organization; (2) the Patients Friends Committee; (3) The Orphan's Welfare Organization; (4) the Research and Studies Center of Madinah; (5) The Welfare Store of Madinah; (6) the Education Council of Non-Saudi Citizens; and (7) the Counseling Committee for the King Fahd Complex for Printing the Glorious Quran.  Id. at ¶ 6.

In March 2002, King Fahd bin Abdulaziz al Saud appointed Sheikh Al-Hussayen, by Royal Decree, to serve as the General President of the Committee of the Two Holy Mosques.  Id. at ¶ 7.  King Fahd is the Custodian of the Two Holy Mosques, and the Committee is under the King's supervision.  Id.  Sheikh Al-Hussayen is responsible for overseeing all administrative issues relating to the Grand Mosque and the Prophet's Mosque, including construction, renovation, transportation, and mosque administration, under King Fahd's supervision.  Id. Since Saudi Arabia is the location of Islam's holiest sites, which the *Hajj* pilgrims visit, the Saudi government considers the maintenance and operations of the Two Holy Mosques to be one of its most important governmental functions.  Id.

Sheikh Al-Hussayen has visited the United States on only two occasions.  Id. at ¶ 8.  The first visit was in 1978, and was for a medical treatment of his mother at the Mayo Clinic.  The second visit was in August and September of 2001, for a vacation.  Id.  After several Islamic charities learned that Sheikh Al-Hussayen was visiting the United States, they invited him to visit them, which he did.  Id.

Sheikh Al-Hussayen owns no real property in the United States.  He also has no bank accounts or investments in the United States and does not conduct any personal business with

any businesses in the United States.  Id. at ¶ 9.

Sheikh Al-Hussayen have never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001.  He has never supported any person or organization that he has known to participate in terrorist activities.  He joins the Saudi government in its condemnation of terrorism.  Id. at ¶ 11.

Sheikh Al-Hussayen's name was added to the list of defendants after the Third Amended Complaint was filed.  There are no allegations in the effective complaint in Burnett that relate to him.

### IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE SHEIKH AL-HUSSAYEN IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

Since 1961, Sheikh Al-Hussayen has held positions within the Saudi government and its affiliated organizations.  There are no specific claims against him in plaintiffs' Third Amended Complaint.  To the extent, however, that plaintiffs have named him as a defendant because of actions he took as a government official, this Court lacks subject matter jurisdiction over those claims under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA").

### A. The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a). The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court.

Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).[3]

Individuals who hold office for a foreign state are afforded foreign sovereign immunity as agents or "instrumentalities" of the state for acts that they undertake in their official capacity. Burnett, 292 F. Supp. 2d at 14 (citing El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)); see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990); Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991); 28 U.S.C. § 1603(a). The courts afford such protection to actions undertaken in one's official capacity, which are within the scope of official duties. Jungquist, 115 F.3d at 1027.[4]

When addressing motions to dismiss based on sovereign immunity, the court "must engage in sufficient pretrial factual and legal determinations to "satisfy itself of its authority to hear the case before trial." Jungquist, 115 F.2d at 1027-28; see also Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).[5] The court also must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277,

---

[3] As Judge Robertson observed in Burnett, 292 F. Supp. 2d at 13-14, the FSIA is, in effect, "a series of exceptions to a general rule of immunity for foreign sovereigns." Its purpose is two fold: to prevent federal courts from interfering with the constitutional authority of the Executive Branch to conduct foreign affairs, and to extend to foreign states and their instrumentalities the full benefits of immunity from trial. See Martin v. Republic of South Africa, 836 F.2d 91, 92 (2d Cir. 1987); see also Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).

[4] If there is a dispute about whether an individual is acting in his personal or official capacity, "the relevant inquiry focuses on the nature of the individual's alleged actions rather than the alleged motives underlying them." Jungquist, 115 F.3d at 1028.

[5] This is contrary to the general rule that a court, when reviewing a motion to dismiss, must accept as true, all well pled factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164 (1993).

287 (S.D.N.Y. 2001).  The Second Circuit has held that when a defendant establishes a <u>prima</u> <u>facie</u> case that it is a sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions.  <u>Virtual</u> <u>Countries, Inc. v. Republic of South Africa</u>, 300 F.3d 230, 241 (2d Cir. 2002).  If the court finds that a foreign defendant has engaged in the alleged actions as a part of his official government duties, the court must dismiss the claims against that defendant.  <u>Robinson</u>, 269 F.3d at 140-41; <u>Filetech S.A. v. France Telecom S.A.</u>, 157 F.3d 922, 932 (2d Cir. 1998).

**B.**  **Sheikh Al-Hussayen is Immune from Suit Under the FSIA to the Extent that the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government**.

Through his affidavit, Sheikh Al-Hussayen has clearly established that he is a "sovereign."  He has held positions of authority within the Saudi Government and its affiliated organizations continuously since 1961.  <u>See</u> Al-Hussayen Decl. (Ex. 1), at ¶¶ 5-7.  Therefore, he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity during that period of time.  <u>See</u> 28 U.S.C. § 1603(b); <u>Burnett</u>, 292 F. Supp. 2d at 14.

Plaintiffs have made no allegations against Sheikh Al-Hussayen.  As he was a governmental official during the entire period in question, to the extent that plaintiffs intend to make allegations against him concerning actions he took from 1961 to the present, he almost certainly took such actions as a governmental official, and is, therefore, entitled to immunity under the FSIA.  <u>Robinson</u>, 269 F.3d at 140-41.

**C.**  **None of the Exceptions to FSIA Immunity Exists With Regard to Sheikh Al-Hussayen.**

To the extent that plaintiffs will complain of actions that Sheikh Al-Hussayen took in his

official capacity, the plaintiffs must come forward with evidence to show that immunity should

not be granted, under one of the three FSIA's exceptions.  They cite: 28 U.S.C. § 1605(a)(2) (the

"commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort"

exception), or 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Plaintiffs

will be unable to meet this burden.

### 1.       The Commercial Activity Exception Is Not Applicable.

As a threshold matter, Sheikh Al-Hussayen did not engage in any commercial activities

during the time period relevant to the complaint, or otherwise during his governmental service.

Even if he had, the plaintiffs cannot rely on the "commercial activity" exception, which provides

that a foreign state is not immune from the jurisdiction of the district courts in any case:

> (2) in which the action is based [1] upon a commercial activity carried on in the
> United States by the foreign state; or [2] upon an act performed in the United
> States in connection with a commercial activity of a foreign state elsewhere; or
> [3] upon an act outside the territory of the United States in connection with a
> commercial activity of the foreign state elsewhere and that act causes a direct
> effect in the United States.

28 U.S.C. § 1605(a)(2).  A "commercial activity" is defined as "either a regular course of

commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  As the

Supreme Court has held, a "commercial activity" is one undertaken by a "private player within

the market."  Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993).

Plaintiffs have not identified any actions involving Sheikh Al-Hussayen which form the

basis for their claims against him.  Therefore, none of their allegations relate to any "commercial

activity" in which he is involved.  Nor have they pled any facts showing that any purported

commercial activity in which is was involved "cause[d] a direct effect in the United States," as

Section 1605(a)(2) requires.[6]  Thus, the "commercial activities" exception to the FSIA is plainly inapplicable.

## 2.      The Non-Commercial Tort Exception is Also Inapplicable.

The second exception to FSIA immunity said to exist in this case is the exception for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).  This exception also does not apply here, since the plaintiffs have failed to allege, much less present any evidence, that Sheikh Al-Hussayen committed tortious acts, or that those tortious acts caused their injuries.  They have, in fact,  failed to identify a single action taken (or not taken) by Sheikh Al-Hussayen that was tortious or that caused any injury to the plaintiffs. The tort exception is, accordingly, inapplicable, and the allegations against Sheikh Al-Hussayen must be dismissed.

## 3.      The State-Sponsored Terrorism Exception is Also Inapplicable.

Finally, to the extent that the plaintiffs intend to claim that Sheikh Al-Hussayen provided material support to terrorists who caused their injuries, the state-sponsored tort exception is inapplicable.  Congress explicitly assigned material support claims to another exception upon

---

[6] As the Second Circuit recently held, "'an effect is direct if it follows as an immediate consequence of the defendant's activity.'"  Virtual Countries v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis in original)).  Hence, "'Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.'"  Id. (quoting United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1238 (10th Cir. 1994)); see also Voest-Alpine Trading USA Corp v. Bank of China, 142 F.3d 887, 894-95, n.10 (5th Cir. 1998) (no jurisdiction over foreign states "whose acts cause only speculative, generalized, immeasurable, and ultimately unverifiable effects in the United States").  Thus, where there are intermediate actors between the acts of the defendant and plaintiffs' alleged injuries, this requirement is not met.  Virtual Countries, 300 F.3d at 237.

which plaintiffs purport to rely, 28 U.S.C. § 1605(a)(7)(A).  However, that exception does not apply here, because Saudi Arabia has not been designated as a state sponsor of terrorism, which is a prerequisite for the application of this exception.  See Burnett, 292 F. Supp. 2d at 20 n.5.

## V.  THIS COURT LACKS PERSONAL JURISDICTION OVER SHEIKH AL-HUSSAYEN.

This Court must dismiss plaintiffs' Complaint against Sheikh Al-Hussayen, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 778-79 (2000) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Sheikh Al-Hussayen, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a "limited" or "specific" jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d

Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him, only if the cause of action arises out of, or has a substantial connection with, his contacts with the forum, and additionally, if the defendant was a primary participant in tortious acts expressly aimed at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Sheikh Al-Hussayen's contacts with the United States fail to meet the standard for either general or specific jurisdiction.

## A.    Sheikh Al-Hussayen Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Sheikh Al-Hussayen lacks the requisite substantial and systematic contacts with the United States, which precludes this Court's exercise of personal jurisdiction over him under a "general jurisdiction" theory.  Sheikh Al-Hussayen has visited the United States only two times over a 25-year period.  See Al-Hussayen Decl. (Ex. 1), at ¶ 8.  His first visit was in 1978, for medical treatment.  Id.  His second visit was in 2001, and was for a family vacation.  Several Islamic charities asked him to visit them during this vacation, which he did.  His visit to Islamic charities was related to his governmental work.  Id.  Moreover, the fact that he does not have any property, bank accounts, or investments in the United States, or conduct business in the United States, id. at ¶ 9, further undercuts any basis for this court to exercise jurisdiction over him. Here, Sheikh Al-Hussayen's two visits to the United States over a 25-year period obviously do

not meet the standard for general jurisdiction.

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Sheikh Al-Hussayen through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[7]  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales, 466 U.S. at 415-16.  As Judge Robertson has previously concluded in this case, "'[b]ecause the [ATA] provides for nationwide service of process,' the relevant Due Process inquiry for personal jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the defendant has minimum contacts with the United States.'"  Burnett, 292 F. Supp. 2d at 21 (quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)) (emphasis added).[8]  In ATA cases, such as this one, each defendant must have sufficient minimum contacts with the United States for the exercise of jurisdiction.  See Estates of Ungar v. Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL 540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001).

Courts performing the general jurisdiction analysis in contexts other than ATA cases have consistently held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American

---

[7] Sheikh Al-Hussayen does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

[8] Sheikh Al-Hussayen was not properly served, as set forth in Part VI, *infra*.

Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

**B.** **This Court Does Not Have Specific Jurisdiction over Sheikh Al-Hussayen Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

In order for the Court to exercise personal jurisdiction over Sheikh Al-Hussayen under a specific, or limited, theory of personal jurisdiction, plaintiffs' claims against him must arise out of, or relate to, his contacts with the United States. Helicopteros Nacionales, 466 U.S. at 414. Further, where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose. Id. at 790.[9]  As set forth below, because plaintiffs have not met these three requirements for this court to exercise "specific" personal jurisdiction over Sheikh Al-Hussayen.

**1.** **Plaintiffs' Claims Against Sheikh Al-Hussayen Do Not Arise Out Of, or Relate To, His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a defendant must be related to that defendant's contacts with the forum. Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific

---

[9] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants. See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs have not made any allegations about Sheikh Al-Hussayen; nor have they plead sufficient facts showing that their claims against him arise out of, or relate to, his contacts with the United States.  Plaintiffs have not, and cannot, plead any nexus between their claims and Sheikh Al-Hussayen's contacts with the United States, for vacation and medical care reasons, to support personal jurisdiction over him under a theory of "specific jurisdiction."[10]

## 2.    Sheikh Al-Hussayen's Involvement with Charities and other Entities Was Not "Expressly Aimed" At the United States.

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby

---

[10]  Plaintiffs are likely to assert that their claims are based on the fact that Sheikh Al-Hussayen was present in the Washington, D.C. area at the time of the September 11 attacks, and questioned by the Federal Bureau of Investigation before being allowed to return to Saudi Arabia.  However, the fact that the FBI permitted Sheikh Al-Hussayen to return to Saudi Arabia after questioning him about his activities would indicate that they had no information to indicate that he was engaged in any suspicious activities, or activities detrimental to U.S. interests, rather than the opposite.

"purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476. However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over a non-resident defendant.  Burger King, 471 U.S. at 474-75.  Subsequently the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger King, 471 U.S. at 475, 476)).

Plaintiffs have not met their burden to show that Sheikh Al-Hussayen "expressly aimed" any harm at the United States, or committed any act "purposefully directed" at the United States. The critical inquiry is not whether the plaintiffs were injured in their home forum, but whether the defendant's intentional wrongdoing is "**expressly directed** at [the] forum." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing Calder); see also Burnett, 292 F. Supp. 2d at 23.[11]

This Court must similarly dismiss Sheikh Al-Hussayen from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed any activities toward the United States, much less engaged in any actions that are "purposefully directed" to cause harm to the United States.

---

[11] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," id., absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of Calder and Burger King.  Id.

**3.      Sheikh Al-Hussayen Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.**

The third requirement to exercise specific jurisdiction over a non-resident defendant is that there must be sufficient allegations that the defendant was a "primary participant" in the alleged acts.  See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Sheikh Al-Hussayen's activities -- whatever plaintiffs may think they may be -- had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them ...." Id.  Even if plaintiffs were to allege that Sheikh Al-Hussayen somehow cooperated with Muslim charities, which in turn allegedly funded terrorist activities such as the attacks of September 11, Sheikh Al-Hussayen remains many steps removed from *personal* involvement, or *primary* participation, in those attacks.  Thus, plaintiffs have failed to meet the third requirement for the exercise of specific jurisdiction over Sheikh Al-Hussayen.

15

**C.    The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Sheikh Al-Hussayen.**

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA claims, this Court must find that the long-arm statute does not allow for the exercise of personal jurisdiction over Sheikh Al-Hussayen, because he lacks the requisite contacts with the relevant forum.[12]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a tort action is permissible only if there exists some nexus between the defendant's activities and the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[13]  Here, plaintiffs have not alleged any facts showing that Sheikh Al-Hussayen either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline to find personal jurisdiction over Sheikh Al-Hussayen.

---

[12] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

[13] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

**VI.    PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON SHEIKH AL-HUSSAYEN MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.**

Plaintiffs' attempts to serve Sheikh Al-Hussayen were defective, and mandate quashing of service of process and dismissal of the complaint against him.[14]  As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Sheikh Al-Hussayen and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach him.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs subsequently published a *modified* version of this notice which listed the thirty-six (36) names that appeared in the original order approved by Judge Robertson, including the name of Sheikh Al-Hussayen, as well as eleven (11) names not approved by Judge Robertson.  See Plaintiffs' Notice of Service by Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).

First, plaintiffs' proof of service demonstrates that the *International Herald Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, a tiny number in a country with a population of more than 24 million.[15]  Second, Sheikh Al-Hussayen does not subscribe to or read

---

[14] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Sheikh Al-Hussayen was not served in a judicial district within the United States, as required under that statute.  See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

[15] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an

the *International Herald Tribune*.  See Al-Hussayen Decl. (Ex. 1), at ¶ 10.  Even more

inadequate is plaintiffs' attempted service by publication in *Al Quds Al Arabi*, a London-based

newspaper, banned in Saudi Arabia, as noted in an article that quotes one of the plaintiffs'

attorneys for the *Havlish* case.  See P. Mendenhall, "Seeking bin Laden in the Classifieds,"

MSNBC, online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003) (attached hereto as

Exhibit 2).  These undisputed facts demonstrate that plaintiffs' contention that they have "served

by publication" a number of Saudi defendants, including Sheikh Al-Hussayen, see Plaintiffs'

Revised Status Report, at 10-11 (Mar. 4, 2004), is simply false.

Third, it is settled law that service by publication is a disfavored remedy, and one that

should be employed only if the plaintiffs are unable to obtain the business or home address of the

defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953)

("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought

leave to serve some defendants by publication, to show that Sheikh Al-Hussayen's addresses

were unavailable, either on the Internet, or through commercial directories, so as to make it

impossible to serve him by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for

service on foreign defendants.

Fourth, service by publication does not comport with due process where, as here, the

publication is in newspapers that either are not circulated in the defendant's community, or

otherwise do not reach the defendant:

It would be idle to pretend that publication alone as prescribed here, is a reliable

---

estimated population of 24.3 million.

means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and **if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added).

Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Sheikh Al-Hussayen does not reside in an country within that "newspaper's normal circulation."

Finally, plaintiffs cannot contend that Sheikh Al-Hussayen, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process. Otherwise, Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, would be rendered a nullity. It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P. See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only remedy for failure to effect proper service of process is quashing of the service of process plaintiffs have attempted to serve by publication. Baade, 175 F.R.D. at 406 ("service of process must be quashed"). Therefore, this Court should quash the attempted service of process against Sheikh Al-Hussayen, and dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## **CONCLUSION.**

For the foregoing reasons, defendant Sheikh Al-Hussayen respectfully requests that this Court grant his Motion to Dismiss, because he has sovereign immunity under the FSIA; this Court lacks personal jurisdiction over him, as a non-resident defendant; and plaintiffs have not properly served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Sheikh Saleh Al-Hussayen (D222)

DATED:  April 8, 2004

20

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2004, I caused the foregoing to be served electronically

on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail,

postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat
_____
Alan R. Kabat