**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) | 03 MDL No. 1570 (RCC) |
| _____ | ) | ECF Case |
|  | ) |  |
| THOMAS E. BURNETT, SR., *et al.*, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
|  | ) |  |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) |  |
| CORPORATION, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

**NOTICE OF DR. ABDULLAH BIN ABDUL MOHSEN AL-TURKI'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Dr.

Abdullah Bin Abdul Mohsen Al-Turki (D158), by and through undersigned counsel, hereby

makes a limited appearance for the purpose of moving the Court, before the Honorable Richard

C. Casey, United States District Judge, at the United States District Court, Southern District of

New York, 500 Pearl Street, New York, New York 10007, at a date and time to be determined

by the Court, for an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R.

Civ. P., the Third Amended Complaint on the basis of (1) sovereign immunity under the Foreign

Sovereign Immunities Act of 1976, since Dr. Al-Turki is a high-ranking Saudi governmental

official; (2) lack of personal jurisdiction since Dr. Al-Turki lacked contacts with the United

States, either generally, or specifically related to the allegations in the complaint; and (3)

improper service of process based on plaintiffs' attempts to serve Dr. Al-Turki by publication in

two newspapers that he does not, and cannot, read.[1]  A memorandum of law, with exhibits, in

support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158)

DATED:  April 8, 2004

---

[1] Dr. Al-Turki reserves the right to raise additional defenses, including those based on lack of justiciability and failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DR. ABDULLAH BIN ABDUL MOHSEN AL-TURKI'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158)

DATED:  April 8, 2004

# TABLE OF CONTENTS

I.    Introduction......................................................................................................... 1

II.   Procedural History................................................................................................ 1

III.  Factual Background.............................................................................................. 2

IV.   This Court Lacks Subject Matter Jurisdiction Because Dr. Al-Turki Is
      Immune From Suit Under the Foreign Sovereign Immunities Act................................ 6

      A.    The Standard of Review............................................................................... 6

      B.    Dr. Al-Turki is Immune from Suit Under the FSIA Because the
            Allegations Against Him Concern Matters Within His Capacity
            as an Official of the Saudi Government......................................................... 8

      C.    None of the Exceptions to FSIA Immunity Exists With Regard
            to Dr. Al-Turki............................................................................................. 9

            1.    The Commercial Activity Exception is Not Applicable.......................... 9

            2.    The Non-Commercial Tort Exception is Also Inapplicable.................. 11

            3.    The State-Sponsored Terrorism Exception is Also Inapplicable............ 13

V.    This Court Lacks Personal Jurisdiction Over Dr. Al-Turki........................................... 13

      A.    Dr. Al-Turki Lacks the Requisite Contacts with the United States
            to Support the Exercise of General Jurisdiction.................................................. 15

      B.    This Court Does Not Have Specific Jurisdiction Over Dr. Al-Turki
            Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
            Contacts....................................................................................................... 17

            1.    Plaintiffs' Claims Against Dr. Al-Turki Do Not Arise Out Of,
                  or Relate To, His Contacts with the United States.................................. 18

            2.    Dr. Al-Turki's Alleged Involvement with a Charity that Forms
                  the Basis for the Claims Against Him Were Not "Expressly
                  Aimed" at the United States................................................................... 18

i

3.      Dr. Al-Turki was Not "Personally Involved" as a "Primary Participant" in Funding Terrorism......................................................... 20

C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Al-Turki.......................................... 21

VI.     Plaintiffs' Improper Service of Process on Dr. Al-Turki Mandates Quashing of the Service of Process and Dismissal of the Complaint............................................. 22

Conclusion................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970).................................................................. 16

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989)......................................................................... 6

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)......................................................................... 19

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997)............................................................ 24, 25

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 16

Burger King v. Rudzewicz,
    471 U.S. 462 (1985)......................................................... 15, 19, 20

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)....................................................... passim

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994).............................................................. 15

Calder v. Jones,
    465 U.S. 783 (1984)....................................................................... passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997)............................................................. 14

Chuidian v. Philippine Nat'l Bank,
    912 F.2d 1095 (9th Cir. 1990)............................................................ 6

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953)....................................................................... 23

El Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996)............................................................. 6

iii

Employers Reinsurance Corp. v. Bryant,
    299 U.S. 374 (1937)................................................................................ 14

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
    153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)............................................. 16

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
    No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)....................... 15-16

Ex parte McCardle,
    74 U.S. (7 Wall.) 506 (1868).............................................................. 14

Fickling v. Commonwealth of Australia,
    775 F. Supp. 66 (E.D.N.Y. 1991)........................................................ 6

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998)................................................................ 7

Hanson v. Denckla,
    357 U.S. 235 (1958)............................................................................ 14

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)...................................................................... passim

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)............................................................... 19, 20

In re Ski Train Fire in Kaprun, Austria,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002)................................................ 21

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)............................................................................ 14

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001)................................................ 16

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997).......................................................... 6, 7

Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,
    507 U.S. 163 (1993)............................................................................ 7

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)................................................ 7

iv

MacArthur Area Citizens Ass'n v. Republic of Peru,
    809 F.2d 918 (D.C. Cir. 1987).......................................................................... 12

Martin v. Republic of South Africa,
    836 F.2d 91 (2d Cir. 1987)............................................................................... 6

Milliken v. Meyer,
    311 U.S. 457 (1940)....................................................................................... 14

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)....................................................................................... 24

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991)............................................................................ 24

Phoenix Consulting Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000).......................................................................... 6

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)....................................................................................... 10

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001).......................................................................7, 12

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)....................................................................................... 14

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)....................................................................................... 10

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997)...................................................................... 20

Shaffer v. Heitner,
    433 U.S. 186 (1977)....................................................................................... 18

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 20

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
    33 F.3d 1232 (10th Cir. 1994)........................................................................ 11

Vermont Agency of Natural Res. v. United States ex rel. Stevens,
    529 U.S. 765 (2000)....................................................................................... 14

v

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002).............................................................. 7, 10, 11

*Voest-Alpine Trading USA Corp v. Bank of China*,
    142 F.3d 887 (5th Cir. 1998)............................................................. 11


**Statutes and Rules:**

28 U.S.C. § 1330(a)........................................................................... 6

Anti-Terrorism Act, 18 U.S.C. § 2331 et seq................................... 22

    18 U.S.C. § 2334................................................................ 15

    18 U.S.C. § 2334(a).......................................................... 22

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq........................... 1, 6

    28 U.S.C. § 1603(a).......................................................... 7

    28 U.S.C. § 1603(d).......................................................... 9, 10

    28 U.S.C. § 1605(a)(2)..................................................... 9, 10

    28 U.S.C. § 1605(a)(5)..................................................... 9, 11

    28 U.S.C. § 1605(a)(7)(A)................................................ 9, 13

Federal Rules of Civil Procedure:

    Rule 4................................................................................ 24

    Rule 4(f)(2)....................................................................... 24

    Rule 12(b)......................................................................... 1

    Rule 12(b)(1).................................................................... 1

    Rule 12(b)(2).................................................................... 1, 13

    Rule 12(b)(5).................................................................... 1, 24, 25

    Rule 12(b)(6).................................................................... 15

D.C. Code Ann. § 13-423:

      D.C. Code Ann. § 13-423(a)(1)-(2)........................................................................ 22

      D.C. Code Ann. § 13-423(a)(3).......................................................................... 22

      D.C. Code Ann. § 13-423(a)(4).......................................................................... 22

      D.C. Code Ann. § 13-423(5)-(7)........................................................................ 22

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
      http://www.msnbc.msn.com/id/3340393.............................................................. 23

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
      http://www.state.gov/r/pa/ei/bgn/3584pf.htm...................................................... 23

## I.     <u>INTRODUCTION.</u>

Dr. Abdullah bin Abdul Mohsen Al-Turki ("Dr. Al-Turki") (D158) — a member of two of the highest-ranking governmental bodies in the Kingdom of Saudi Arabia — has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Muslim and has held important governmental positions relating to Islamic affairs.[2]  Dr. Al-Turki respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Dr. Al-Turki's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 <u>et</u> <u>seq.</u> ("FSIA"), thereby precluding this court's jurisdiction over him.  This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Dr. Al-Turki, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.  This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Dr. Al-Turki, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, does not comport with due process, and constitutes improper service of process.

## II.     <u>PROCEDURAL HISTORY.</u>

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was

---

[2] Dr. Al-Turki has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Dr. Al-Turki.  If Dr. Al-Turki is served, then he will enter a limited appearance in those cases for the purpose of raising his sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

filed on November 22, 2002.

Prior to the consolidation of the <u>Burnett</u> case with several other related cases by the Judicial Panel on Multidistrict Litigation, Prince Sultan bin Abdulaziz Al-Saud and Prince Turki Al-Faisal bin Abdulaziz Al-Saud, high-ranking Saudi officials, filed motions to dismiss, based on the defense of lack of subject matter jurisdiction based on their sovereign immunity under the FSIA.  Judge Robertson dismissed with prejudice plaintiffs' claims against these two defendants arising from any alleged acts that they took in their official capacity.  <u>Burnett v. Al Baraka Invest. & Devel. Corp.</u>, 292 F. Supp. 2d 9, 13-21 (D.D.C. 2003).  Judge Robertson further dismissed claims against Prince Sultan for acts in his personal capacity, holding that his minimal contacts with the United States were unrelated to plaintiffs' allegations against him.  <u>Id.</u> at 21-23.

On March 10, 2004, Dr. Al-Turki entered a limited appearance in <u>Burnett</u>, for the purpose of raising the defenses set forth below.

### III.   FACTUAL BACKGROUND.

Dr. Al-Turki is a distinguished Islamic legal scholar whose contributions have been recognized by the Kingdom of Saudi Arabia through royal appointments to a number of important governmental posts.  He is a citizen of Saudi Arabia, who has resided there for his entire life.  <u>See</u> Declaration of Abdullah bin Abdul Mohsen Al-Turki, at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1, Attachments A and B).[3]  Dr. Al-Turki earned undergraduate and graduate degrees in Islamic law, and served as Rector of a Saudi university from 1975 to 1993.  <u>Id.</u> at ¶¶ 4-5.

---

[3] Dr. Al-Turki cannot read, write or speak English.  Thus, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim (who authenticated the translation), which is Exhibit 1 to this Motion.  A translation of the Al-Turki Declaration into English is Attachment B to the Alim Declaration.

In 1992, King Fahd appointed Dr. Al-Turki to be a member of the Council of Ulema (Senior Council of Scholars).  Id. at ¶ 6.  The Council of Ulema provides recommendations and guidelines on issues relating to Islamic law to King Fahd and his deputies for their consideration in exercising all aspects of their governmental authority.  Id.  Dr. Al-Turki remains a member of the Council of Ulema to the present.  Id.  In order to remain current with Islamic issues, he regularly attends and participates in Islamic conferences and meets with Islamic groups, which makes him a visible presence for the Kingdom.  Id.  Since Islam is the official state religion of Saudi Arabia, and the judicial system is based on Islamic law, the Council of Ulema is a core governmental function.  Id.

In 1993, King Fahd appointed Dr. Al-Turki as Minister of Islamic Affairs, which made him responsible for all governmental matters relating to Islamic issues in Saudi Arabia.  Id. at ¶ 7.  In that position, he was one of eight members of the Supreme Council for Islamic Affairs, which has responsibility for Saudi Arabia's foreign policy relating to Islamic issues.  He was also the Chair of the Supreme Call Council, which has responsibility for Saudi Arabia's domestic Islamic policy.  Id. at ¶ 8.[4]  In 1995, King Fahd appointed Dr. Al-Turki to the Saudi Council of Ministers, the highest decision-making body in the Saudi government.  Id. at ¶ 9.  Dr. Al-Turki served as Minister of Islamic Affairs and as a member of the Saudi Council through late 1999.  Id. at ¶¶ 7, 9.  At the end of 1999, he was appointed Advisor to the Royal Court, id. at

---

[4] Prince Sultan is the Chairman of the Supreme Council for Islamic Affairs.  As set forth in greater detail in Prince Sultan's Motion to Dismiss filed in *Burnett*, which Dr. Al-Turki incorporates by reference, the Supreme Council is an arm of the Saudi government, and makes discretionary recommendations to the King that, if approved, become acts or policies of the Saudi government.  See Declaration of Abdulaziz H. Al Fahad, at ¶¶ 7-11 (Apr. 6, 2003) (attached and incorporated herein as Exhibit 2).  The Supreme Council has five enumerated functions, which include "(1) planning and oversight of Saudi Islamic activities abroad ...; (2) care for Muslim minorities and attention to their conditions; (3) introduction of Islam; (4) promoting of contacts between the Kingdom and Muslims abroad; [and] (5) promoting the spreading of Islamic culture and the Arabic language abroad."  Id. at ¶ 9.

¶ 10, and the Secretary-General of the Muslim World League, an Islamic charity.  Id.

Dr. Al-Turki made several visits to the United States from 1979 to 2002, all in his official governmental capacities, or as an officer of a Muslim charity.  Id. at ¶ 11.  Dr. Al-Turki does not own any real property, or have any bank accounts or investments in the United States, or conduct personal business with businesses in the United States.  Id. at ¶ 12.

Dr. Al-Turki has condemned terrorism, including the attacks of September 11, 2001, and has never knowingly supported any person or organization that he knew to participate in terrorist activities.  Id. at ¶ 14.  Indeed, on the second anniversary of the attacks, Dr. Al-Turki published two statements, translated into English, which expressly condemned these attacks as being contrary to Islamic law and teachings.  Id. at ¶ 14 & Exs. 1-2.

Plaintiffs' statements regarding Dr. Al-Turki are a mixture of correct facts describing his governmental positions, and unsupported inferences that appear to be based on statements made by a businessman, Muhammed Galeb Kalaje Zouaydi (hereinafter "Zouaydi"), whom Spanish authorities have charged with supporting Al Qaeda.[5]  Among these allegations are that Dr. Al-Turki and Mr. Zouaydi were business partners, and that Dr. Al-Turki made investments in Mr. Zouaydi's projects.  See TAC at ¶¶ 384, 386, 388-90, 536-37, and 539-41.  These allegations are false.  While Mr. Zouaydi repeatedly attempted to solicit Dr. Al-Turki by deluging him with draft contracts, proposals, and even a copy of a check to be held as a guaranty, Dr. Al-Turki never invested money with, donated to, or otherwise conducted business with, Mr. Zouaydi or his Spanish businesses.  See Decl. (Ex. 1), at ¶ 16.

_____

[5] Plaintiffs' allegations regarding Mr. Zouaydi acknowledge Dr. Al-Turki's governmental status at the time by stating that he is an "advisor to King Fahd," which refers to his service on the Council of Ulema (since 1992) and as Advisor at the Royal Court (since late 1999).  See TAC at ¶¶ 383, 390.

Plaintiffs' remaining allegations against Dr. Al-Turki are similarly unsupported inferences.  Plaintiffs allege that Dr. Al-Turki organized a conference in January 2002 -- which is four months *after* the terrorist attacks that form the basis of their claims -- at which terrorism was allegedly endorsed.  See TAC at ¶ 385.  In fact, this conference was part of the Council of Islamic Jurisprudence, an independent council of scholars, and Dr. Al-Turki's attendance was in his official capacity as a member of the Council of Ulema.  See Decl. (Ex. 1), at ¶ 17.  Moreover, Dr. Al-Turki did not participate in all of the discussions, and did not agree with everything that was said at the conference, including the statement found to be offensive by plaintiffs.  Id.

Plaintiffs correctly state that Dr. Al-Turki served in the same "cabinet" with Prince Turki (then the Chief of Intelligence), who allegedly shared information with Dr. Al-Turki, and plaintiffs then describe various "goals" and "interpretations" which they ascribe to Al Qaeda.  See TAC at ¶ 391.  Although Prince Turki and Dr. Al-Turki served in the Saudi government, along with other ministers, Dr. Al-Turki's service is unconnected with Al Qaeda's "goals" and "interpretations," he had no knowledge of any of Al Qaeda's terrorist activities, and he did not knowingly support any of Al Qaeda's terrorist activities.  See Decl. (Ex. 1), at ¶ 18.

Finally, plaintiffs allege that Dr. Al-Turki "settled [*sic*] in 1995 a Joint Committee for Islamic Action and Studies" in Russia, and that this committee held a seminar in 2002, the year following the attacks that form the basis for plaintiffs' claims.  See TAC at ¶ 426.  Dr. Al-Turki denies any knowledge of this Joint Committee, its activities, or any seminar in 2002.  See Decl. (Ex. 1), at ¶ 19.

## IV.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DR. AL-TURKI IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

Since 1992 Dr. Al-Turki has held a number of important positions in the Saudi government.  The claims against him, as best they can be understood from the plaintiffs' Third Amended Complaint, appear to relate to alleged actions that he took in his capacity as a government official.  This Court, accordingly, lacks subject matter jurisdiction over those claims under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA").

### A.   The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a). The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court. Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).[6]

Individuals who hold office for a foreign state are afforded foreign sovereign immunity as agents or "instrumentalities" of the state for acts that they undertake in their official capacity. Burnett, 292 F. Supp. 2d at 14 (citing El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)); see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990); Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991); 28 U.S.C. §

_____

[6] As Judge Robertson observed in Burnett, 292 F. Supp. 2d at 13-14, the FSIA is, in effect, "a series of exceptions to a general rule of immunity for foreign sovereigns."  Its purpose is two fold:  to prevent federal courts from interfering with the constitutional authority of the Executive Branch to conduct foreign affairs, and to extend foreign states and their instrumentalities the full benefits of immunity from trial.  See Martin v. Republic of South Africa, 836 F.2d 91, 92 (2d Cir. 1987); see also Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).

1603(a).  The courts afford such protection to actions undertaken in one's official capacity, which are within the scope of official duties.  Jungquist, 115 F.3d at 1027.[7]

When addressing motions to dismiss based on sovereign immunity, the court "must engage in sufficient pretrial factual and legal determinations to "satisfy itself of its authority to hear the case before trial."  Jungquist, 115 F.2d at 1027-28; see also Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).  This is contrary to the general rule that a court, when reviewing a motion to dismiss, must accept as true, all well-pled factual allegations in the complaint.  Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164 (1993).  The court also must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties."  Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001).  The Second Circuit has held that when a defendant establishes a prima facie case that it is a sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions.  Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002).  If the court finds that a foreign defendant has engaged in the alleged actions as a part of his official government duties, the court must dismiss the claims against that defendant.  Robinson, 269 F.3d at 140-41; Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).

---

[7] If there is a dispute about whether an individual is acting in his personal or official capacity, "the relevant inquiry focuses on the nature of the individual's alleged actions rather than the alleged motives underlying them."  Jungquist, 115 F.3d at 1028.

**B.      Dr. Al-Turki is Immune from Suit Under the FSIA Because the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government.**

Through his affidavit, Dr. Al-Turki has established that he is a "sovereign."  First, as described in Part III, *supra*, he has held several positions of authority within the government of Saudi Arabia.  Indeed, the complaint itself identifies him as an "advisor to King Fahd." See TAC at ¶¶ 383, 390.  Accordingly he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity.

Second, while it is difficult to make sense of much of plaintiffs' rambling and disjointed narrative, the factual allegations against Dr. Al-Turki all relate to actions that he undertook in his capacity as a Member of the Council of Ulema, the Supreme Council for Islamic Affairs, Minister of Islamic Affairs, or Advisor to the Royal Court.  The plaintiffs make a series of vague assertions regarding Dr. Al-Turki's alleged links to projects or transactions undertaken with the "al Qaeda financier Zouaydi." Id. at ¶¶ 384, 386, 388-390, 536-537, and 539-541.  As noted above, Dr. Al-Turki never entered into any agreement with Mr. Zouaydi, never conducted any business with Mr. Zouaydi, and never invested any money in any business connected to Mr. Zouaydi. See Al-Turki Decl. (Ex. 1), at ¶ 16.  However, to the extent that any credence is given to the plaintiffs' statements in the complaint, Mr. Zouaydi's solicitations seeking financial support were apparently based on Dr. Al-Turki's status as Minister of Islamic Affairs, a member of the Council of Ulema, and an Advisor to the King.  Therefore, if he had, in fact, engaged in any such transactions, which Dr. Al-Turki denies, he did so in his official capacity as an agent of the sovereign.

The complaint also makes allegations about Dr. Al-Turki's role in organizing a

conference in January 2002.  See TAC at ¶ 385.  Of course, there cannot be any relationship between this conference and the September 11 attacks, since the conference occurred months after the attacks.  Nonetheless, Dr. Al-Turki attended the conference in his official capacity as a member of the Council of Ulema, in order to maintain a presence for the Kingdom of Saudi Arabia in Islamic issues.  See Al-Turki Decl. (Ex. 1), at ¶¶ 6, 17.

Dr. Al-Turki denies the allegation that he had any involvement whatsoever with a "Joint Committee for Islamic Action and Studies" in Russia, or a seminar that this Committee allegedly held in 2002.  If he had been involved in such an effort, however, it would have been in his role as an advisor to King Fahd on Islamic issues, or as a representative of the Kingdom.  Id. at ¶¶ 6, 19.  In any event, the conference occurred the year after the 2001 attacks, and could not have "caused" the attacks.

**C.     None of the Exceptions to FSIA Immunity Exists With Regard to Dr. Al-Turki.**

Since Dr. Al-Turki has clearly established that he was acting in his official capacity in connection with all of the matters plaintiffs complain of, the plaintiffs must come forward with evidence to show that immunity should not be granted, under one of the FSIA's three exceptions. They cite: 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort" exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Plaintiffs cannot meet this burden.

**1.     The Commercial Activity Exception Is Not Applicable.**

First, the plaintiffs cannot credibly rely on the "commercial activity" exception, which provides that a foreign state is not immune from the jurisdiction of the district courts in any case:

(2) in which the action is based [1] upon a commercial activity carried on in the

> United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of a foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  A "commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  As the Supreme Court has held, a "commercial activity" is one undertaken by a "private player within the market."  Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993).

The only allegations against Dr. Al-Turki which arguably involve a "commercial activity" concern the transactions he is alleged to have had with Mr. Zouaydi as described in paragraphs 384, 386, 388-390, 536-537, and 539-541 of the Complaint.  However, as Dr. Al-Turki has described in his affidavit, he never engaged in any business transactions with Mr. Zouaydi; rather, Mr. Zouaydi simply solicited Dr. Al-Turki to enter into transactions which Dr. Al-Turki refused to do.  See Al-Turki Decl. (Ex. 1), at ¶ 16.  Thus, plaintiffs have not pled any facts showing that Dr. Al-Turki engaged in any commercial activity; they have only pled unsupported inferences.

Second, the plaintiffs have not pled any facts showing that the purported commercial activity they allege that Dr. Al Turki undertook "cause[d] a direct effect in the United States," as Section 1605(a)(2) requires.  As the Second Circuit recently held, "'an effect is direct if it follows as an immediate consequence of the defendant's activity.'"  Virtual Countries v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis in original)).  Hence, "'Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage

eventually to reach the shores of the United States.'" Id. (quoting United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1238 (10th Cir. 1994)); see also Voest-Alpine Trading USA Corp v. Bank of China, 142 F.3d 887, 894-95, n.10 (5th Cir. 1998) (no jurisdiction over foreign states "whose acts cause only speculative, generalized, immeasurable, and ultimately unverifiable effects in the United States").  Where there are intermediate actors between the acts of the defendant and plaintiffs' alleged injuries, the "direct effect" requirement is not met.  Virtual Countries, 300 F.3d at 237.

Therefore, even if plaintiffs had pled sufficient facts showing that Dr. Al-Turki was involved in a "commercial activity," they have not alleged any facts supporting a claim that this "commercial activity" had a "direct effect" in the United States.  Thus, the "commercial activities" exception to the FSIA is plainly inapplicable.

### 2. The Non-Commercial Tort Exception is also Inapplicable.

The second exception to FSIA immunity said to exist in this case is the exception for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).  This exception also does not apply to the actions in which plaintiffs allege Dr. Al-Turki engaged.

The plaintiffs have failed to allege, much less present any evidence, that Dr. Al-Turki committed tortious acts, or that those tortious acts caused their injuries.  At best, they have offered vague and conclusory allegations about a business relationship between Dr. Al-Turki and Mr. Zouaydi, which they claim ultimately resulted in the transfer of funds to Al Qaeda cells, and

11

presumably to the financing of the September 11 attacks.  As noted above, there is no evidence

of any acts undertaken by Dr. Al-Turki in connection with the Zouaydi allegations, much less

that his alleged actions were "tortious."  There is only evidence of one way solicitations coming

from Mr. Zouaydi.

Further, the complaint does not allege that Dr. Al-Turki knew, or should have known,

that this business relationship, if it had ever existed, was a sham arrangement by which money

was funneled to terrorist cells.  Therefore, the plaintiffs' vague and conclusory allegations are

insufficient to sustain jurisdiction under the non-commercial tort exception to the FSIA.

Robinson, 269 F.3d at 146.  Indeed, as the Second Circuit observed in Robinson:

> . . . **to sustain jurisdiction on generic allegations of [negligence] absent an
> assertion or evidence of a factual predicate for such jurisdiction would invite
> plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting
> vague and conclusory allegations of tortious conduct in their complaints –
> and then to rely on the federal courts to conclude that some conceivable non-
> discretionary tortious act falls within the purview of these generic allegations
> under the applicable substantive law**.  This is at odds with the goal under the
> FSIA to enable a foreign government to obtain an early dismissal when the
> substance of the claim does not support jurisdiction.

Robinson, 269 F.3d at 146 (emphasis added).

Similarly, the plaintiffs have failed to meet the causation requirement, set forth in

Robinson, for the tortious act exception.  As Judge Robertson observed in Burnett, the "'tortious

act' exception was designed generally to remove immunity for cases arising from traffic

accidents. . . . the legislative history counsels that the exception should be narrowly construed so

as to not encompass the farthest reaches of common law.'"  Burnett, 292 F. Supp. 2d at 19

(quoting MacArthur Area Citizens Ass'n v. Republic of Peru, 809 F.2d 918, 921 (D.C. Cir.

1987)).  Thus, Judge Robertson concluded that an allegation that a defendant funded others, who

in turn funded those who carried out the September 11 terrorist attacks, "would stretch the causation requirement of the non-commercial tort exception [of the FSIA] not only to 'the farthest reaches of the common law' but perhaps beyond to <u>terra</u> <u>incognita</u>." <u>Id.</u> at 20.

The same reasoning applies with respect to the allegations against Dr. Al-Turki. Plaintiffs allege that he was involved in unspecified financial transactions with Mr. Zouaydi, which resulted in the funneling of funds to unspecified Al Qaeda cells, which somehow provided material assistance to the September 11 terrorists. This is precisely the sort of attenuated connection that plaintiffs offered to counter the sovereign immunity defenses set forth by Prince Sultan and Prince Turki, and which Judge Robertson has soundly rejected in this case.

### 3. <u>The State-Sponsored Terrorism Exception is also Inapplicable</u>.

Even if plaintiffs were to allege that Dr. Al Turki provided material support to terrorists (i.e. Mr. Zouaydi) who caused their injuries, the state-sponsored terrorism exception is inapplicable. Congress explicitly assigned "material support" claims to its own exception upon which plaintiffs purport to rely, 28 U.S.C. § 1605(a)(7)(A). However, that exception does not apply here, because Saudi Arabia has not been designated as a state sponsor of terrorism, which is a prerequisite for the application of this exception. <u>See</u> <u>Burnett</u>, 292 F. Supp. 2d at 20 n.5. Indeed, the position of the United States government is that Saudi Arabia is an ally in the war against terrorism.

### V. THIS COURT LACKS PERSONAL JURISDICTION OVER DR. AL-TURKI.

This Court must dismiss plaintiffs' Complaint against Dr. Al-Turki, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction. When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause."

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000)

(quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an

essential element of the jurisdiction of a district court,' without which the court is 'powerless to

proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)

(quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Dr. Al-Turki, a non-resident

foreign defendant, due process requires that the defendant have "minimum contacts with [this

forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting

Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have

"purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus

invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general"

jurisdiction theory or a "limited" (or "specific") jurisdiction theory, depending on the nature of

the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027

(2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and

systematic, may be subject to a court's general jurisdiction, regardless of whether or not the

allegations against him concern matters arising out of his contacts with the forum.  Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  If the defendant's contacts

with the forum do not rise to that level, the court may exercise specific jurisdiction over him only

if the cause of action arises out of, or has a substantial connection with, his contacts with the

forum, and additionally, if the defendant was a primary participant in tortious acts expressly

14

aimed at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Dr. Al-Turki's contacts with the United States fail to meet the standard for general or specific jurisdiction.

### A.   Dr. Al-Turki Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Dr. Al-Turki through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[8]  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales, 466 U.S. at 415-16.  Here, Dr. Al-Turki's scattered, incidental contacts with the United States, see Decl. (Ex. 1), at ¶¶ 11-12, do not come close to meeting that standard.

As Judge Robertson has previously concluded in this case, "'[b]ecause the [ATA] provides for nationwide service of process,' the relevant Due Process inquiry for personal jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the defendant has minimum contacts with the United States.'"  Burnett, 292 F. Supp. 2d at 21 (quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)) (emphasis added).[9]  In ATA cases, such as this one, each defendant must have sufficient minimum contacts with the United States for the exercise of jurisdiction.  See Estates of Ungar v.

---

[8] Dr. Al-Turki does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

[9] Dr. Al-Turki was not properly served, as set forth in Part VI, *infra*.

Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("Ungar II"); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL 540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001) ("Ungar I").  In Ungar II, the court held that the plaintiffs did not show that the individual defendants "engaged in the kind of systematic and continuous activity in the United States necessary to support the exercise of general personal jurisdiction over them." Ungar II, 2004 WL 134034, at *22; see also Ungar I, 153 F. Supp. 2d at 95 (same holding as applied to a different set of individual defendants).  Similarly, in a very recent district court case, the court dismissed the individual defendants who "admittedly" did not have "minimum contacts with the United States that square with the Due Process clause."  Biton, 2004 WL 540504, at *5.

Courts performing the general jurisdiction analysis in contexts other than ATA cases have held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

Here, Dr. Al-Turki visited the United States only three times, over a 23-year period.  See Al-Turki Decl. (Ex. 1), at ¶ 11.  In his capacity as a University Rector, he visited the University of California, Los Angeles in 1979, and in 1998, in his official capacity as Minister of Islamic Affairs, he visited Los Angeles.  See Al-Turki Decl. (Ex. 1), at ¶ 11.  Dr. Al-Turki made another

16

work-related visit to the United States in June 2002, at which time he went to New York, Chicago, Los Angeles, and Washington, D.C.  Id.  These three visits – solely for work or official government business – do not begin to rise to the level of "systematic and continuous activity" that would allow the exercise of personal jurisdiction over him.  Moreover, the fact that he does not have any property, bank accounts, or investments in the United States, or conduct business in the United States, id. at ¶ 12, further undercuts any basis for this court to exercise jurisdiction over him.

> **B.**      **This Court Does Not Have Specific Jurisdiction over Dr. Al-Turki Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

In order for the Court to exercise personal jurisdiction over Dr. Al-Turki under a specific, or limited, theory of personal jurisdiction, plaintiffs' claims against him must arise out of, or relate to, his contacts with the United States.  Helicopteros Nacionales, 466 U.S. at 414.  Where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose.  Id. at 790.[10]  As set forth below, because plaintiffs have not met these three requirements, this court cannot exercise "specific" personal jurisdiction over Dr. Al-Turki.

---

[10] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

1.      **Plaintiffs' Claims Against Dr. Al-Turki Do Not Arise Out Of, or Relate To, His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a defendant must be related to that defendant's contacts with the forum.  Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs' allegations against Dr. Al-Turki concern his involvement with a Muslim charity in 2002, along with his alleged involvement with a businessman in Spain.  See TAC at ¶¶ 383-386, 388-391, 426, 536-537, and 539-541.  However, plaintiffs do not plead sufficient facts showing that their claims arise out of, or relate to, his contacts with the United States.  Critically, none of these allegations has any direct link to the United States.  Plaintiffs' failure to allege any nexus between these alleged activities and Dr. Al-Turki's contacts with the United States is fatal to any claim that this court has jurisdiction over Dr. Al-Turki under a theory of "specific jurisdiction."

2.      **Dr. Al-Turki's Alleged Involvement with a Charity That Forms the Basis for the Claims Against Him Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence.  Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida

conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed

the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case,

where that defendant had "purposefully directed" his efforts towards the forum state, thereby

"purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476.

However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in

his home forum was not sufficient to establish personal jurisdiction over a non-resident

defendant.  Burger King, 471 U.S. at 474-75.[11]

        Under this Supreme Court precedent, plaintiffs have not met their burden to show Dr. Al-

Turki "expressly aimed" harm at the United States, or committed "some act" "purposefully

directed" at the United States.  The critical inquiry is not whether the plaintiffs were injured in

their home forum, but whether the defendant's intentional wrongdoing is "**expressly directed** at

[the] forum."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003)

(emphasis added), citing Calder.

        In a prior ruling in this case, Judge Robertson held that Calder and Burger King

mandated the dismissal of Prince Sultan, because plaintiffs failed to allege that Prince Sultan's

"'private' actions in funding charities were 'expressly aimed' or 'purposefully directed' at the

United States," and plaintiffs' generic allegations about all defendants did not overcome the

absence of purposeful availment on Prince Sultan's part.  Burnett, 292 F. Supp. 2d at 23.[12]

---

        [11] The Supreme Court subsequently reiterated its "purposefully directed" standard in holding that a
defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish
personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger
King, 471 U.S. at 475, 476)).

        [12] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist
activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he
himself has targeted the United States," id., absent purposeful availment, fell far short of meeting the "expressly

Therefore, as Judge Robertson has previously ruled, Calder and Burger King require this court to dismiss Dr. Al-Turki from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed any activities toward the United States, much less engaged in any actions that are "purposefully directed" to cause harm to the United States.

### 3.   Dr. Al-Turki Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997). If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported. See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Dr. Al-Turki's activities -- whatever they were alleged to be -- had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11. The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790. Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the

---

aiming" requirement of Calder and Burger King. Id.

Supreme Court held that "jurisdiction is proper over them."  Id.  Even accepting *arguendo*

plaintiffs' allegations that Dr. Al-Turki supported Muslim charities or a Spanish development

company, which in turn allegedly funded terrorist activities such as the attacks of September 11,

Dr. Al-Turki remains many steps removed from *personal* involvement, or *primary* participation,

in those attacks.  Thus, plaintiffs have failed to meet the third requirement for the exercise of

specific jurisdiction over Dr. Al-Turki.

### C.    The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Al-Turki.

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which

would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA

claims, this Court must find that the long-arm statute does not allow for the exercise of personal

jurisdiction over Dr. Al-Turki, because he lacks the requisite contacts with the relevant forum.[13]

Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a tort

action is permissible only if there exists some nexus between the defendant's activities and the

forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in
> the District of Columbia; [or]

> [by] causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia if he regularly does or solicits business, engages
> in any other persistent course of conduct, or derives substantial revenue from
> goods used or consumed, or services rendered, in the District of Columbia; . . . .

---

[13] In a proceeding such as this one, which was transferred from another forum, it is the long-arm
jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis,
and not that of transferor forum (New York).  See *In re* Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399
(S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed,
and therefore that state's law must be applied.").

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[14]  Here, plaintiffs have not alleged any facts showing that Dr. Al-Turki either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline to find personal jurisdiction over Dr. Al-Turki.

## VI.   PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON DR. AL-TURKI MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' attempts to serve Dr. Al-Turki were defective, and mandate quashing of service of process and dismissal of the complaint against him.[15]  As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Dr. Al-Turki, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach him.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs subsequently published a *modified* version of this notice which listed the thirty-six (36) names that appeared in the original order approved by Judge Robertson, including Dr. Al-Turki, as well

---

[14] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

[15] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Dr. Al-Turki was not served in a judicial district within the United States, as required under that statute. See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

as eleven (11) names not approved by Judge Robertson.  See Plaintiffs' Notice of Service by

Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).

Yet, plaintiffs' proof of service demonstrates that the *International Herald Tribune* has a

total circulation of only 199 in Saudi Arabia, id. at Ex. A, a tiny number in a country with a

population of more than 24 million.[16]  Further, Dr. Al-Turki cannot read English, see Al-Turki

Decl. (Ex. 1), at ¶ 20, so that even if that newspaper had a broader circulation in Saudi Arabia, he

could not read it.  Even more inadequate is plaintiffs' attempted service by publication in *Al*

*Quds Al Arabi*, a London-based newspaper which is banned in Saudi Arabia, as noted in an

article that quotes one of the plaintiffs' attorneys for the *Havlish* case.  See P. Mendenhall,

"Seeking bin Laden in the Classifieds," MSNBC, at: http://www.msnbc.msn.com/id/3340393

(Oct. 24, 2003) (attached hereto as Exhibit 3).  These undisputed facts demonstrate that

plaintiffs' contention that they have "served by publication" a number of Saudi defendants,

including Dr. Al-Turki, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply

false.

It is settled law that service by publication is a disfavored remedy, and one that should be

employed only if the plaintiffs are unable to obtain the business or home address of the

defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953)

("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought

leave to serve some defendants by publication, to show that Dr. Al-Turki's addresses were

---

[16] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia,"
online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an
estimated population of 24.3 million.

unavailable, either on the Internet, or through commercial directories, so as to make it impossible to serve him by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on foreign defendants.

Further, service by publication does not comport with due process where, as here, the publication is in newspapers that either are not circulated in the defendant's community, or otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and **if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added). Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Dr. Al-Turki does not reside in an country within that "newspaper's normal circulation."

Nor can plaintiffs contend that Dr. Al-Turki, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process. Otherwise, Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, would be rendered a nullity. It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P. See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only remedy for failure to effect proper service of process is quashing of the service

24

of process plaintiffs have attempted by publication.  <u>Baade</u>, 175 F.R.D. at 406 ("service of

process must be quashed").  Therefore, this Court should quash the attempted service of process

against Dr. Al-Turki, and dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

### CONCLUSION.

For the foregoing reasons, defendant Dr. Al-Turki respectfully requests that this Court

grant his Motion to Dismiss, because he has sovereign immunity under the FSIA; this Court

lacks personal jurisdiction over him, as a non-resident defendant; and plaintiffs have not properly

served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158)

DATED:  April 8, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat
_____
Alan R. Kabat