## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) | 03 MDL No. 1570 (RCC) ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

_____

## NOTICE OF SHAHIR A. BATTERJEE'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Shahir

A. Batterjee (D67), by and through undersigned counsel, hereby makes a limited appearance for

the purpose of moving the Court, before the Honorable Richard C. Casey, United States District

Judge, at the United States District Court, Southern District of New York, 500 Pearl Street, New

York, New York 10007, at a date and time to be determined by the Court, for an order

dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the Third

Amended Complaint on the basis of (1) lack of personal jurisdiction since Mr. Batterjee lacked

contacts with the United States, either generally, or specifically related to the allegations in the

complaint; and (2) improper service of process through plaintiffs' attempts to serve Mr. Batterjee

by publication in two newspapers that he does not read.[1]  A memorandum of law, with exhibits,

_____

[1] Mr. Batterjee reserves the right to raise additional defenses, including those based on failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Shahir A. Batterjee (D67)

DATED:  April 8, 2004

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**SHAHIR A. BATTERJEE'S MOTION TO DISMISS**
**THE THIRD AMENDED COMPLAINT**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant Shahir A. Batterjee (D67)

DATED:  April 8, 2004

# TABLE OF CONTENTS

I.     Introduction.................................................................................................... 1

II.    Procedural History.......................................................................................... 1

III.   Factual Background......................................................................................... 1

IV.    This Court Lacks Personal Jurisdiction Over Mr. Batterjee ......................... 3

    A.     Mr. Batterjee Lacks the Requisite Contacts with the United States
       to Support the Exercise of General Jurisdiction.................................... 4

    B.     This Court Does Not Have Specific Jurisdiction Over Mr. Batterjee
       Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
       Contacts.................................................................................................. 7

         1.     Plaintiffs' Claims Against Mr. Batterjee Do Not Arise Out Of,
           or Relate To, His Contacts with the United States................................. 7

         2.     Mr. Batterjee's Involvement with a Charity that Forms
           the Basis for the Claims Against Him Were
           Not "Expressly Aimed" at the United States ....................................... 8

         3.     Mr. Batterjee was Not "Personally Involved" as a "Primary
           Participant" in Funding Terrorism........................................... 10

    C.     The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
       Exercise of Personal Jurisdiction over Mr. Batterjee ...................... 11

V.     Plaintiffs' Improper Service of Process on Mr. Batterjee Mandates Quashing
    of the Service of Process and Dismissal of the Complaint............................. 12

    Conclusion................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970)................................................................. 6

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)............................................................................ 8

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997)......................................................... 14

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 5, 6

Burger King v. Rudzewicz,
    471 U.S. 462 (1985)..................................................................... 4, 8, 9

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)..................................................... 5, 9

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994)............................................................... 5

Calder v. Jones,
    465 U.S. 783 (1984)............................................................... passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997).............................................................. 4

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953)...................................................................... 12-13

Employers Reinsurance Corp. v. Bryant,
    299 U.S. 374 (1937)............................................................................ 3

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
    153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)............................................. 5

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
    No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)....................... 5

*Ex parte* McCardle,
    74 U.S. (7 Wall.) 506 (1868)................................................................... 3

Hanson v. Denckla,
    357 U.S. 235 (1958).............................................................................. 4

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)...................................................................... 4, 5, 7

*In re* Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)............................................................. 9, 10

*In re* Ski Train Fire in Kaprun, Austria,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002)................................................. 11

International Shoe Co. v. Washington,
    326 U.S. 310 (1945).............................................................................. 3

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001)................................................. 6

Milliken v. Meyer,
    311 U.S. 457 (1940).............................................................................. 4

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)............................................................................ 14

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991)............................................................... 14

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999).............................................................................. 3

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997)......................................................... 10

Shaffer v. Heitner,
    433 U.S. 186 (1977).............................................................................. 7

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 10

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)............................................................................. 3

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331 <u>et</u> <u>seq.</u>................................................................. 12

      18 U.S.C. § 2334.......................................................................................... 4

      18 U.S.C. § 2334(a)..................................................................................... 12

Federal Rules of Civil Procedure:

      Rule 4............................................................................................................ 14

      Rule 4(f)(2)................................................................................................... 13

      Rule 12(b)..................................................................................................... 1

      Rule 12(b)(2)................................................................................................ 1, 3

      Rule 12(b)(5)................................................................................................ 1, 14

      Rule 12(b)(6)................................................................................................ 5

D.C. Code Ann. § 13-423................................................................................... 10-11

      D.C. Code Ann. § 13-423(a)(1)-(2)........................................................... 11

      D.C. Code Ann. § 13-423(a)(3)................................................................. 11

      D.C. Code Ann. § 13-423(a)(4)................................................................. 11

      D.C. Code Ann. § 13-423(5)-(7)............................................................... 11

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
      http://www.msnbc.msn.com/id/3340393............................................... 13

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
      http://www.state.gov/r/pa/ei/bgn/3584pf.htm......................................... 13

## I.     INTRODUCTION.

Shahir A. Batterjee ("Mr. Batterjee") (D67) has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Muslim and a businessman.[2]  Mr. Batterjee respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, and (2) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Mr. Batterjee, a foreign individual whose minimal contacts with the United States are unrelated to plaintiffs' allegations.

Further, the plaintiffs' attempt to serve Mr. Batterjee, by publication in two journals, one banned in Saudi Arabia and the other, an English publication having an exceedingly limited circulation in Saudi Arabia, clearly fails to comport with due process.  Therefore, plaintiffs' attempted service of process on Mr. Batterjee is improper, such that this court must dismiss the complaint against him.

## II.     PROCEDURAL HISTORY.

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was filed on November 22, 2002.  On March 10, 2004, Mr. Batterjee entered a limited appearance in Burnett for the limited purpose of raising the defenses set forth below.

## III.     FACTUAL BACKGROUND.

Shahir A. Batterjee is a citizen of the Kingdom of Saudi Arabia.  See Declaration of

---

[2] Mr. Batterjee has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Mr. Batterjee.  If Mr. Batterjee is served, then he will enter a limited appearance in those cases for the purpose of contesting personal jurisdiction and improper service of process.

Shahir A. Batterjee, at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1).  He has always been a citizen of Saudi Arabia and has lived there his entire life, except for the brief time when he was studying at college in the United States from the late 1960's to 1970.  Id. at ¶ 2-3.

Mr. Batterjee currently works for Abdulraoof Batterjee & Sons, a company specializing in the trade of health care and pharmaceutical products.  Id. at ¶ 4.  Mr. Batterjee has worked for this company, which he does not own, from 1977 to the present, and has served as financial director since 1992.  Id.

Since he graduated from Whittier College in 1970, Mr. Batterjee has made several visits to the United States, both for vacation, and for combined leisure and business trips related to the company's retail business.  Id. at ¶ 5.  He does not own any real property and does not have any bank accounts in the United States.  Id. at ¶ 6.  While the company Mr. Batterjee works for sells some products that are manufactured by companies in the United States, he does not have any investments in the United States and is not a owner of this company that does some business with United States companies.  Id.

Mr. Batterjee does not subscribe to or read the *International Herald Tribune* or the *Al Quds al Arabi*, which is banned in Saudi Arabia.  Id. at ¶ 7.

There are no allegations in the Third Amended Complaint against Mr. Batterjee, except plaintiffs' vague and unsupported claim in Paragraph 228 that Mr. Batterjee and several other individuals were "co-conspirators, aiders and abettors" of the Benevolence International Foundation.  Although Mr. Batterjee briefly served as a board member of this foundation from approximately 1993 to 1994, he was not an officer or employee.  See Batterjee Decl. (Ex. 1), at ¶ 9.  Accordingly, he never played an active role in the foundation's activities, and was not

2

involved in any of the activities set forth in the Third Amended Complaint.  Id.  Furthermore, he

never discussed any issues relating to his service with his cousin, Adel Batterjee, and resigned

from his position shortly after troops from the former Soviet Union withdrew from Afghanistan.

Id.  While Mr. Batterjee made some donations to the Benevolence International Foundation

office in Saudi Arabia before 1992, he has not made any contribution since the foundation

moved to the United States in 1992.  Id.

Mr. Batterjee condemns terrorism, including the terrorist attacks of September 11, 2001,

and has never supported any person or organization that he has known to participate in terrorist

activities.  Id. at ¶ 8.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BATTERJEE.

This Court must dismiss plaintiffs' Complaint against Mr. Batterjee, pursuant to Rule

12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the

only function remaining to the court is that of announcing the fact and dismissing the cause."

Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 778-79 (2000)

(quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an

essential element of the jurisdiction of a district court,' without which the court is 'powerless to

proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)

(quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Mr. Batterjee, a non-resident

foreign defendant, due process requires that the defendant have "minimum contacts with [this

forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting

3

Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a limited or specific jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  Here, Mr. Batterjee does not have substantial and systematic contacts with the United States.

If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him only if the cause of action arises out of, or has a substantial connection with, his contacts with the forum, and additionally, if the defendant were a "primary participant" in tortious acts that are "expressly aimed" at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Mr. Batterjee's contacts with the United States fail to meet this standard for specific jurisdiction as well.

### A.    Mr. Batterjee Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Mr. Batterjee through a general jurisdiction theory:  18 U.S.C. § 2334,

the jurisdictional provision of the Anti-Terrorism Act (ATA).  <u>Id.</u> ¶ 1.[3]  For this Court to exercise

"general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the

forum must be "continuous and systematic."  <u>Helicopteros Nacionales</u>, 466 U.S. at 415-16.

Here, Mr. Batterjee's incidental contacts with the United States since 1970 as a tourist, and

occasionally to conduct business for a company that he does not own, do not come close to

meeting that standard.

As Judge Robertson has previously concluded in this case, "'[b]ecause the [ATA]

provides for nationwide service of process,' the relevant Due Process inquiry for personal

jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the

defendant has minimum contacts with the United States.'"  <u>Burnett</u>, 292 F. Supp. 2d at 21

(quoting <u>Busch v. Buchman, Buchman & O'Brien, Law Firm</u>, 11 F.3d 1255, 1258 (5th Cir.

1994)) (emphasis added).[4]  In ATA cases, such as this one, each defendant must have sufficient

minimum contacts with the United States for the exercise of jurisdiction.  <u>See</u> <u>Estates of Ungar v.</u>

<u>Palestinian Auth.</u>, No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("<u>Ungar</u>

<u>II</u>"); <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, No. Civ. A. 01-0382 (RMC), 2004 WL

540504, at *3-*5 (D.D.C. March 18, 2004); <u>Estates of Ungar v. Palestinian Auth.</u>, 153 F. Supp.

2d 76, 91-95 (D.R.I. 2001) ("<u>Ungar I</u>").  In <u>Ungar II</u>, the court held that the plaintiffs did not

show that the individual defendants "engaged in the kind of systematic and continuous activity in

the United States necessary to support the exercise of general personal jurisdiction over them."

<u>Ungar II</u>, 2004 WL 134034, at *22; <u>see also</u> <u>Ungar I</u>, 153 F. Supp. 2d at 95 (same holding as

---

[3] Mr. Batterjee does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

[4] Mr. Batterjee was also not properly served, as set forth in Part V, *infra*.

5

applied to a different set of individual defendants).  Similarly, in a very recent district court case, the court dismissed individual defendants who "admittedly" did not have "minimum contacts with the United States that square with the Due Process clause."  <u>Biton</u>, 2004 WL 540504, at *5.

Courts performing the general jurisdiction analysis in other contexts have consistently held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  <u>See, e.g.</u>, <u>Aquascutum of London, Inc. v. S.S. American Champion</u>, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); <u>Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG</u>, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

Here, Mr. Batterjee visited the United States on a few occasions.  He resided in the United States over 30 years ago to attend college, graduating in 1970.  Since that time, he has visited the United States on several occasions, for vacations or for combined vacation and business trips.  The number of trips to the United States since his graduation from college has been very limited, and did not even average one per year.  <u>See</u> Batterjee Decl. (Ex. 1), at ¶ 5. Furthermore, he does not have any property, bank accounts, or investments in the United States, <u>id.</u> at ¶ 6, and does not own any business that conducts business with the United States.

Given Mr. Batterjee's extremely limited contacts since 1970, there is no way to make a claim that he has "continuous and systematic" contacts as the Supreme Court has required to confer this Court with "general jurisdiction" over him.

**B.      This Court Does Not Have Specific Jurisdiction over Mr. Batterjee Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

This Court also cannot exercise personal jurisdiction over Mr. Batterjee under a specific, or limited, theory of personal jurisdiction, because plaintiffs' claims against him do not arise out of, or relate to, his limited contact with the United States. Helicopteros Nacionales, 466 U.S. at 414. Further, where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose. Id. at 790.[5] As set forth below, because plaintiffs have not met these three requirements, this court cannot exercise "specific" personal jurisdiction over Mr. Batterjee.

**1.      Plaintiffs' Claims Against Mr. Batterjee Do Not Arise Out Of, or Relate To, His Contact with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a non-resident defendant must be related to that defendant's contacts with the forum. Helicopteros Nacionales, 466 U.S. at 414. The Supreme Court explained this prerequisite in the following way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Here, plaintiffs' allegations against

---

[5] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants. See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

Mr. Batterjee concern his alleged involvement with a Muslim charity, see TAC at ¶¶ 228, which, as his affidavit demonstrates, dates back to 1993 and 1994, when he served as a board member of a charity.  However, plaintiffs do not plead any facts to show that their claim against Mr. Batterjee arises out of, or relates to, Mr. Batterjee's limited contacts with the United States for vacation trips or business trips related to the pharmaceutical company for which he works.  In fact, Mr. Batterjee's extremely limited contacts with the United States do not relate to the charity on whose board he sat for a two year period in the early 1990's.

>   2.   **Mr. Batterjee's Alleged Involvement with a Charity That Forms the Basis for the Claims Against Him Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in <u>Calder</u>, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. <u>Calder</u>, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court unanimously held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  <u>Id.</u>  One year later, in <u>Burger King</u>, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby "purposefully establishing minimum contacts" with that forum.  <u>Burger King</u>, 471 U.S. at 476.  However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over non-

resident defendants.  <u>Burger King</u>, 471 U.S. at 474-75.[6]

Under this Supreme Court precedent, plaintiffs have not begun to meet their burden of showing Mr. Batterjee "expressly aimed" harm at the United States, or committed "some act" "purposefully directed" at the United States.  The critical inquiry is <u>not</u> whether the plaintiffs were injured in their home forum -- a proposition with which the parties can agree -- but whether the defendant's intentional wrongdoing is "**expressly directed** at [the] forum."  <u>*In re*</u> Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing <u>Calder</u>).

Judge Robertson, in a prior ruling, determined that plaintiffs' allegations that another defendant, Prince Sultan, had made "private" contributions to charities were not sufficient to survive a motion to dismiss,  because the plaintiffs had failed to allege that Prince Sultan's "private" actions were 'expressly aimed' or 'purposefully directed' at the United States," and plaintiffs' generic allegations about all defendants did not overcome the absence of purposeful availment on Prince Sultan's part.  <u>Burnett</u>, 292 F. Supp. 2d at 23.[7]  Here, too, Mr. Batterjee's private actions in supporting a charity in the early 1990's, and sitting on the board of a charity for two years, are equally insufficient to show that Mr. Batterjee expressly aimed his conduct at this forum, or engaged in purposeful availment on his part.

Therefore, as Judge Robertson has previously ruled, <u>Calder</u> and <u>Burger King</u> require that this court dismiss Mr. Batterjee from this action, as he is a non-resident defendant who plaintiffs

---

[6] Subsequently, the Supreme Court reiterated its "purposefully directed" standard, in holding that a defendant's mere awareness that its activities "may or will" affect the forum state were not enough to establish personal jurisdiction.  <u>Asahi Metal Indus. Co. v. Superior Court of Calif.</u>, 480 U.S. 102, 112 (1987) (citing <u>Burger King</u>, 471 U.S. at 475, 476)).

[7] The court in <u>Burnett</u> further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," <u>id.</u>, absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of <u>Calder</u> and <u>Burger King</u>.  <u>Burnett</u>, 292 F. Supp. 2d at 23.

do not allege, and cannot show, has directed any activities toward the United States, much less committed "some act" that is "purposefully directed" to cause harm to the United States.

### 3.    Mr. Batterjee Was Not "Personally Involved" Or a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Mr. Batterjee's activities with a Muslim charity had some relationship to the United States, and were aimed at the United States, it must still find that there are no facts set out in the Third Amended Complaint to conclude that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them ...." Id.  Even accepting arguendo plaintiffs' allegations that Mr. Batterjee supported a Muslim charity, see TAC at ¶ 228, which in turn allegedly funded terrorist activities, such as the attacks of September 11, 2001, Mr. Batterjee remains many steps removed from personal involvement, or primary participation, in those

attacks.  Thus, plaintiffs have not met and cannot meet the third requirement of "primary

participation" for this Court's exercise of specific jurisdiction over Mr. Batterjee.

C.      **The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Mr. Batterjee.**

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which

would apply to plaintiffs' common-law claims only if they had no ATA claim against Mr.

Batterjee, this Court must find that the long-arm statute does not allow for the exercise of

personal jurisdiction over Mr. Batterjee, because he lacks the requisite contacts with the relevant

forum.[8]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in

this tort action is permissible only if there is a nexus between the defendant's activities and the

forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in
> the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia if he regularly does or solicits business, engages
> in any other persistent course of conduct, or derives substantial revenue from
> goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[9]  Here, plaintiffs have not alleged any facts

showing that Mr. Batterjee either committed acts or omissions within the District of Columbia,

or engaged in a regular course of business or other conduct within, or from, the District of

---

[8] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

[9] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are inapplicable.

Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline

to find personal jurisdiction over Mr. Batterjee.

### V.      PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON SHAHIR BATTERJEE MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' improper attempts to serve Mr. Batterjee were defective, and mandate

quashing of service of process and dismissal of the complaint against him.[10]  As plaintiffs' own

filings demonstrate, plaintiffs attempted to serve Mr. Batterjee, and a number of other

defendants, by publication in two newspapers that plaintiffs knew, or should have known, were

unlikely to reach him.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six

(36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi*

(in Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave

to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24,

2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs

subsequently published a *modified* version of this notice which listed the thirty-six (36) names

that appeared in the original order approved by Judge Robertson, including Mr. Batterjee, as well

as eleven (11) names not approved by Judge Robertson.  See Plaintiffs' Notice of Service by

Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).

Plaintiffs' attempted service by publication is clearly inadequate.  Plaintiffs' proof of

service acknowledges that the *International Herald Tribune* has a total circulation of only 199 in

---

[10] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Mr. Batterjee was not served in a judicial district within the United States, as required under the statute. See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

Saudi Arabia, id. at Ex. A, an extremely small number in a country with a population of more

than 24 million.[11]  Even more inadequate is plaintiffs' attempted service by publication in *Al

Quds Al Arabi*, a London-based newspaper which is banned in Saudi Arabia, as noted in an

article that quotes one of the plaintiffs' attorneys for the *Havlish* case.  See P. Mendenhall,

"Seeking bin Laden in the Classifieds," MSNBC, online at http://www.msnbc.msn.com/id

/3340393 (Oct. 24, 2003) (attached hereto as Exhibit 2).  These undisputed facts demonstrate

that plaintiffs' contention that they have "served by publication" a number of Saudi defendants,

including Mr. Batterjee, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply

false.

　　　　Furthermore, it is settled law that service by publication is a disfavored remedy, and one

that should be employed only if the plaintiffs are unable to obtain the business or home address

of the defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953)

("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

notice.  Its justification is difficult at best.").  Plaintiffs have made no attempt to demonstrate, at

the time they sought leave to serve some defendants by publication or any later time, that Mr.

Batterjee's address was unavailable, either on the Internet, or through commercial directories, so

as to make it impossible to serve him by the established means set forth in Rule 4(f)(2), Fed. R.

Civ. P., for service on foreign defendants.

　　　　In addition, service by publication does not comport with due process where, as here, the

publication is in newspapers that either are not circulated in the defendant's community, or

---

[11] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an estimated population of 24.3 million.

otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and **if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added).

Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Mr. Batterjee does not reside in an country within that "newspaper's normal circulation."

Nor can plaintiffs contend that Mr. Batterjee, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process.  It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P.  See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").  If this were not the law, Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, would be rendered a nullity.

The only remedy for failure to effect proper service of process is quashing of the plaintiffs' attempts to serve Mr. Batterjee by publication, see Baade, 175 F.R.D. at 406 ("service of process must be quashed"), and dismissal of the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## CONCLUSION

For the foregoing reasons, defendant Shahir A. Batterjee respectfully requests that this

14

Court grant his Motion to Dismiss, because this Court lacks personal jurisdiction over him, as a

non-resident defendant, and plaintiffs have not properly served him with the complaint in this

action.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Shahir A. Batterjee (D67)

DATED:  April 8, 2004

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat

_____

Alan R. Kabat