## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF DR. ABDULLAH NASEEF'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Dr.

Abdullah Naseef (D97), by and through undersigned counsel, hereby makes a limited appearance

for the purpose of moving the Court, before the Honorable Richard C. Casey, United States

District Judge, at the United States District Court, Southern District of New York, 500 Pearl

Street, New York, New York 10007, at a date and time to be determined by the Court, for an

order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the Third

Amended Complaint on the basis of (1) lack of personal jurisdiction since Dr. Naseef lacked

contacts with the United States, either generally or specifically related to the allegations in the

complaint; and (2) improper service of process since plaintiffs attempted to serve Dr. Naseef

through the Saudi Embassy in the United States, which was not authorized to accept service on

his behalf.[1]  A memorandum of law, with exhibits, in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Naseef (D97)

DATED:  April 8, 2004

---

[1] Dr. Naseef reserves the right to raise additional defenses, including those based on failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DR. ABDULLAH NASEEF'S MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant Dr. Abdullah Naseef (D97)

DATED:  April 8, 2004

# TABLE OF CONTENTS

I.      Introduction...................................................................................................... 1

II.     Procedural History............................................................................................ 1

III.    Factual Background........................................................................................... 1

IV.     This Court Lacks Personal Jurisdiction Over Dr. Naseef................................ 4

        A.      Dr. Naseef Lacks the Requisite Contacts with the United States
                to Support the Exercise of General Jurisdiction.................................... 5

        B.      This Court Does Not Have Specific Jurisdiction Over Dr. Naseef
                Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
                Contacts................................................................................................. 7

                1.      Plaintiffs' Claims Against Dr. Naseef Do Not Arise Out Of,
                        or Relate To, His Contacts with the United States.................. 8

                2.      Dr. Naseef's Involvement with Charities and Other Entities
                        Was Not "Expressly Aimed" at the United States ................. 8

                3.      Dr. Naseef was Not "Personally Involved" as a "Primary
                        Participant" in Funding Terrorism.......................................... 10

        C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
                Exercise of Personal Jurisdiction over Dr. Naseef ............................. 11

V.      Plaintiffs' Improper Service of Process on Dr. Naseef Mandates Quashing
        of the Service of Process and Dismissal of the Complaint............................. 12

        Conclusion...................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970)........................................................................... 6

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)....................................................................................... 9

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997)..................................................................... 14

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 6

BPA Int'l, Inc. v. Kingdom of Sweden,
    281 F. Supp. 2d 73 (D.D.C. 2003) ....................................................... 13

Burger King v. Rudzewicz,
    471 U.S. 462 (1985)........................................................................ 5, 8, 9, 10

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)...................................................... 6, 9

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994).................................................................. 6

Calder v. Jones,
    465 U.S. 783 (1984).............................................................................. passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997)................................................................. 4

Employers Reinsurance Corp. v. Bryant,
    299 U.S. 374 (1937)............................................................................... 4

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
    153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)............................................... 6

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
    No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)....................... 6

*Ex parte* McCardle,

74 U.S. (7 Wall.) 506 (1868)................................................................................ 4

Hanson v. Denckla,
     357 U.S. 235 (1958)........................................................................................ 4

Helicopteros Nacionales de Colombia, S.A. v. Hall,
     466 U.S. 408 (1984)............................................................................... 4, 5, 7, 8

*In re* Magnetic Audiotape Antitrust Litig.,
     334 F.3d 204 (2d Cir. 2003)........................................................................ 9, 10

*In* re Ski Train Fire in Kaprun, Austria,
     230 F. Supp. 2d 392 (S.D.N.Y. 2002)............................................................. 11

International Shoe Co. v. Washington,
     326 U.S. 310 (1945)........................................................................................ 4

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
     160 F. Supp. 2d 722 (S.D.N.Y. 2001).............................................................. 7

Milliken v. Meyer,
     311 U.S. 457 (1940)........................................................................................ 4

National Dev. Co. v. Triad Holding Corp.,
     930 F.2d 253 (2d Cir. 1991)........................................................................... 14

Ruhrgas AG v. Marathon Oil Co.,
     526 U.S. 574 (1999)........................................................................................ 4

SEC v. Carrillo,
     115 F.3d 1540 (11th Cir. 1997)...................................................................... 10

Shaffer v. Heitner,
     433 U.S. 186 (1977)........................................................................................ 8

Time, Inc. v. Simpson,
     No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 10

Transaero, Inc. v. La Fuerza Aerea Boliviana,
     30 F.3d 148 (D.C. Cir. 1994) ......................................................................... 13

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
     529 U.S. 765 (2000)........................................................................................ 4

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331 <u>et</u> <u>seq.</u>................................................................. 12

      18 U.S.C. § 2334................................................................................................. 5

      18 U.S.C. § 2334(a)............................................................................................ 12

Federal Rules of Civil Procedure:

      Rule 4................................................................................................................. 14

      Rule 4(f).............................................................................................................. 12, 13

      Rule 4(f)(2)......................................................................................................... 14

      Rule 12(b).......................................................................................................... 1

      Rule 12(b)(1)...................................................................................................... 1

      Rule 12(b)(2)...................................................................................................... 1, 4

      Rule 12(b)(5)...................................................................................................... 1, 14

      Rule 12(b)(6)...................................................................................................... 5

D.C. Code Ann. § 13-423......................................................................................... 12

      D.C. Code Ann. § 13-423(a)(1)-(2)................................................................... 12

      D.C. Code Ann. § 13-423(a)(3).......................................................................... 12

      D.C. Code Ann. § 13-423(a)(4).......................................................................... 12

      D.C. Code Ann. § 13-423(5)-(7)........................................................................ 12

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
      http://www.msnbc.msn.com/id/3340393............................................................ 13

## I.   INTRODUCTION.

Dr. Abdullah Naseef ("Dr. Naseef") (D97) has been named as a defendant in this and

several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is

a Muslim who was formerly a Saudi government official and formerly an officer with two

Islamic charities.[2]  Dr. Naseef respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for

dismissal based on (1) lack of personal jurisdiction, and (2) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(2), Fed.

R. Civ. P., that it does not have personal jurisdiction over Dr. Naseef, a foreign individual whose

minimal contacts with the United States are unrelated to plaintiffs' allegations.  The plaintiffs'

attempt to serve Dr. Naseef by hand delivery to the Embassy of Saudi Arabia in Washington,

D.C., is improper because the Embassy was not authorized to accept service on his behalf, so

that this service clearly fails to comport with due process.  Therefore, it constitutes improper

service of process, such that this court must dismiss the complaint against him.

## II.   PROCEDURAL HISTORY.

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002, in the U.S. District

Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was

filed on November 22, 2002.  On March 10, 2004, Dr. Naseef entered a limited appearance in

Burnett for the limited purpose of raising the defenses set forth below.

## III.   FACTUAL BACKGROUND.

Dr. Naseef is a citizen of the Kingdom of Saudi Arabia.  See Declaration of Abdullah

Naseef at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1).  He has always been a

---

[2] Dr. Naseef has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Dr. Naseef.  If Dr. Naseef is served, then he will enter a limited appearance in those cases for the purpose of contesting personal jurisdiction and improper service of process.

citizen of Saudi Arabia and has lived there his entire life.  Id.

Dr. Naseef is currently a Professor of Geology at King Abdulaziz University, Jeddah, Saudi Arabia.  Id. at ¶ 4.  From 1983 to 1993, Dr. Naseef was Secretary-General of the Muslim World League, a charity that is sponsored and supported by the government of Saudi Arabia.  Id. at ¶ 5.  As Secretary-General, he was also an officer, from 1988 to 1993, of the Rabita Trust, another charity which is partly owned by the Muslim World League.  Id.

In 1993, Dr. Naseef was appointed by Royal Decree to the Saudi Majilis-ash-Shura, the Saudi legislative body that is equivalent to a Parliament.  Id. at ¶ 6.  Dr. Naseef was a member of this legislative body from 1993 until his retirement in 2001.  Id.

Dr. Naseef does not own any real property in the United States and does not have any bank accounts or investments in the United States.  Id. at ¶ 8.  Furthermore, Dr. Naseef has never conducted any personal business with any businesses in the United States.  Id.  While Dr. Naseef has made several visits to the United States, these visits were primarily to study at Stanford University in 1965, and to attend academic conferences as well as conferences related to the Boy Scout movement.  Id. at ¶ 7.  Dr. Naseef has also made several tourist visits.  Id.  Dr. Naseef last visited the United States in 2002, to attend the World Economic Forum.  Id.

Dr. Naseef does not read or subscribe to the *International Herald Tribune*, nor does he read or subscribe to the *Al Quds al Arabi*, which is banned in Saudi Arabia.  Id. at ¶ 9.

Dr. Naseef has never supported any person or organization who is known to have participated in terrorist activities and has publicly condemned and denounced the tragic terrorist attacks of September 11, 2001.  Id. at ¶ 10.  Immediately following the September 11 attacks, Dr. Naseef sent a letter to President Bush expressing his disapprobation of the terrorist acts and

expressing that the acts were "totally contrary to Islamic values and teachings."  Id. at ¶ 10 & Ex.

1.  In a subsequent letter to President Bush, Dr. Naseef reiterated his desire to work together with

the United States "towards peace in the Middle East and in the world."  Id. at ¶ 10 & Ex. 2.

Plaintiffs make only three allegations regarding Dr. Naseef, all of which are untrue or

substantially misrepresent the facts.  Id. at ¶ 11.  First, plaintiffs allege that the Rabita Trust is

connected to the SAAR Network through two officers, one of whom is Dr. Naseef.  See TAC, at

¶ 273.  Plaintiffs also falsely allege that Dr. Naseef "founded the Rabita Trust in July 1998 and is

the current chairman."  Id. at ¶ 274.  All of these statements are incorrect.  Dr. Naseef was never

involved in any of the day-to-day operations of the SAAR Network or its components.  See

Naseef Decl. (Ex. 1), at ¶ 11.  He does not have knowledge of any SAAR activities that were

terrorist activities, or that SAAR knowingly supported terrorism.  Id.  Further, contrary to

plaintiffs' allegations, Dr. Naseef has not been an officer of the Rabita Trust since 1993, and has

not had any knowledge of the Trust's day-to-day activities since then.  Id. at ¶ 12.  Moreover, he

has never made any personal donations to the Rabita Trust, and has no knowledge of any

activities of the Rabita Trust that were terrorist activities, or knowingly support terrorism.  Id.

The only other allegation that plaintiffs make against Dr. Naseef, that he was "involved

in a SAAR Network charity, as an "officer of Makkah-al-Mukkarramah, Inc.," see TAC at ¶ 275,

is also factually incorrect.  Dr. Naseef did not have any involvement in the day-to-day activities

or operations of the SAAR Network or Makkah-al-Mukkarramah and denies any knowledge of

any activities of either entity that were terrorist activities, or that either entity knowingly

supported terrorism.  See Naseef Decl. (Ex. 1), at ¶ 13.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER DR. NASEEF.

This Court must dismiss plaintiffs' Complaint against Dr. Naseef, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000) (quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Dr. Naseef, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a limited or specific jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  Here, Dr. Naseef does not have substantial and systematic contacts with the United States.

If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him, only if the cause of action arises out of, or has a substantial connection with, his contacts with the forum, and additionally, if the defendant were a "primary participant" in tortious acts that are "expressly aimed" at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Dr. Naseef's contacts with the United States fail to meet this standard for specific jurisdiction, as well.

### A.   Dr. Naseef Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Dr. Naseef lacks the requisite substantial and systematic contacts with the United States, which precludes this Court's exercise of personal jurisdiction over him under the general jurisdiction theory.  Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Dr. Naseef through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[3]

For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales, 466 U.S. at 415-16.  Here, Dr. Naseef's minimal, incidental contacts with the United States, predominantly as a student and tourist, as well as to attend Boy Scout and academic conferences, see Naseef Decl. (Ex. 1), at ¶¶ 7-8, do not come close to meeting that standard.

As Judge Robertson has previously concluded in this case, "'Because the [ATA] provides

---

[3] Dr. Naseef does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

for nationwide service of process,' the relevant Due Process inquiry for personal jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the defendant has minimum contacts with the United States.'" Burnett, 292 F. Supp. 2d at 21 (quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)) (emphasis added).[4]  In ATA cases, such as this one, each defendant must have sufficient minimum contacts with the United States for the exercise of jurisdiction.  See Estates of Ungar v. Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("Ungar II"); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL 540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001) ("Ungar I").

        In Ungar II, the court held that the plaintiffs did not show that the individual defendants "engaged in the kind of systematic and continuous activity in the United States necessary to support the exercise of general personal jurisdiction over them."  Ungar II, 2004 WL 134034, at *22; see also Ungar I, 153 F. Supp. 2d at 95 (same holding as applied to a different set of individual defendants).  Similarly, in a very recent district court case, the court dismissed individual defendants who "admittedly" did not have "minimum contacts with the United States that square with the Due Process clause."  Biton, 2004 WL 540504, at *5.

        More generally, courts performing the general jurisdiction analysis in other contexts have consistently held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American

---

[4] Dr. Naseef was also not properly served, as set forth in Part V, *infra*.

6

Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

Here, Dr. Naseef visited the United States on several occasions solely for academic purposes, for Boy Scout conferences, and for vacations.  See Naseef Decl. (Ex. 1), at ¶ 7. Moreover, he does not have any property, bank accounts, or investments in the United States. Id. at ¶ 8.  Therefore, there is no basis for this court to exercise jurisdiction over Dr. Naseef under a "general jurisdiction" theory.

**B.**     **This Court Does Not Have Specific Jurisdiction over Dr. Naseef Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

This Court cannot exercise personal jurisdiction over Dr. Naseef under a specific, or limited, theory of personal jurisdiction, because plaintiffs' claims against him do not arise out of, or relate to, his limited contacts with the United States.  Helicopteros Nacionales, 466 U.S. at 414.  Further, where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose.  Id. at 790.[5]  As set forth below, because plaintiffs have not met these three requirements, this court cannot exercise "specific" personal jurisdiction over Dr.

---

[5] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

Naseef.

1.     **Plaintiffs' Claims Against Dr. Naseef Do Not Arise Out Of, or Relate To, His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a non-resident defendant must be related to that defendant's contacts with the forum. Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite in the following way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs' allegations against Dr. Naseef concern his alleged involvement with several Muslim charities.  See TAC at ¶¶ 272-275.  However, plaintiffs do not plead any facts to show that their alleged claim against Dr. Naseef arises out of, or relates to, Dr. Naseef's limited contacts with the United States. Moreover, Dr. Naseef's visits to the United States were not related to his charity work. Therefore, this court may not exercise personal jurisdiction over him.

2.     **Dr. Naseef's Alleged Involvement with Several Charities That Form the Basis for the Claims Against Him Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court unanimously held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court

8

similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach

of franchise case, where that defendant had "purposefully directed" his efforts towards the forum

state, thereby "purposefully establishing minimum contacts" with that forum.  Burger King, 471

U.S. at 476.  However, the Court was careful to note that even the "foreseeability of injury" to

the plaintiff in his home forum was not sufficient to establish personal jurisdiction over non-

resident defendants.  Burger King, 471 U.S. at 474-75.  Subsequently the Supreme Court

reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that

its activities "may or will" affect the forum state were not enough to establish personal

jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987)

(citing Burger King, 471 U.S. at 475, 476)).

Under this Supreme Court precedent, plaintiffs have not begun to meet their burden of

showing that Dr. Naseef "expressly aimed" harm at the United States, or committed "some act"

"purposefully directed" at the United States.  The critical inquiry is not whether the plaintiffs

were injured in their home forum, but whether the defendant's intentional wrongdoing is

"**expressly directed** at [the] forum."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204,

208 (2d Cir. 2003) (emphasis added) (citing Calder).

In a prior ruling in this case, Judge Robertson held that Calder and Burger King

mandated dismissal of Prince Sultan from the suit, because the plaintiffs had failed to allege that

Prince Sultan's "private" actions in funding charities were 'expressly aimed' or 'purposefully

directed' at the United States," and plaintiffs' generic allegations about all defendants did not

overcome the absence of purposeful availment on Prince Sultan's part.  Burnett, 292 F. Supp. 2d

at 23.[6]

Therefore, as Judge Robertson has previously ruled, <u>Calder</u> and <u>Burger King</u> require that this court dismiss Dr. Naseef from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed any activities toward the United States, much less committed "some act" that is "purposefully directed" to cause harm at the United States.

### 3. Dr. Naseef Was Not "Personally Involved" Or a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. <u>See, e.g.</u>, <u>In re</u> <u>Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1548 (11th Cir. 1997). If the defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported. <u>See, e.g.</u>, <u>Time, Inc. v. Simpson</u>, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Dr. Naseef's activities -- whatever they were alleged to be -- had some relationship to the United States, it must still find that there are no facts set out in the Third Amended Complaint to conclude that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11. The Supreme Court, in <u>Calder</u>, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually."

---

[6] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," <u>id.</u>, absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of <u>Calder</u> and <u>Burger King</u>. <u>Id.</u>

Calder, 465 U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them ...."  Id.  Even accepting *arguendo* plaintiffs' allegations that Dr. Naseef supported Muslim charities, see TAC at ¶¶ 273-275, which in turn allegedly funded terrorist activities, such as the attacks of September 11, 2001, Dr. Naseef remains many steps removed from *personal* involvement, or *primary* participation, in those attacks.  Thus, plaintiffs have not met the third requirement for the exercise of specific jurisdiction over Dr. Naseef.

### C.   The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Naseef.

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute – which would apply to plaintiffs' common-law claims only if they had no ATA claim against Dr. Naseef – this Court must find that the long-arm statute does not allow for the exercise of personal jurisdiction over Dr. Naseef, because he lacks the requisite contacts with the relevant forum.[7]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in this tort action is permissible only if there is a nexus between the defendant's activities and the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

---

[7] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See *In re* Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[8]  Here, plaintiffs have not alleged any facts showing that Dr. Naseef either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline to find personal jurisdiction over Dr. Naseef.

### V.    PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON DR. NASEEF MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' improper attempts to serve Dr. Naseef were defective, and mandate quashing of service of process and dismissal of the complaint against him.[9]  Plaintiffs' proof of service indicates that they attempted to serve Dr. Naseef by leaving a copy of a complaint and summons at the Embassy of Saudi Arabia, in Washington, D.C.  See Plaintiffs' Return of Service / Affidavit of Summons and Complaint Executed, at 7 (*Burnett* D.D.C. Docket No. 279) (Aug. 31, 2003).[10]  However, Dr. Naseef did not work at the Embassy in 2003, and did not hold any diplomatic position as of 2003 that might somehow render the Embassy the appropriate method for serving Dr. Naseef.  Indeed, service upon an embassy is not among the numerous methods set forth in Rule 4(f), Fed. R. Civ. P., for serving foreign individuals.

---

[8] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are inapplicable.

[9] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Dr. Naseef was not served in a judicial district within the United States, as required under the statute.  See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

[10] As plaintiffs only filed page 2 of the executed summons for Dr. Naseef, it cannot be determined whether this was, in fact, the summons issued by the Clerk to Dr. Naseef.

The courts have rejected attempts to serve foreign defendants through an overseas embassy of their country, as plaintiffs have attempted for Dr. Naseef.  Thus, the D.C. Circuit held that it was reversible error to deny a foreign defendant's motion to dismiss for improper service of process where the plaintiffs had not served the defendant directly, but instead served "the Bolivian Ambassador and Consul General in Washington."  Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153 (D.C. Cir. 1994) (remanding with directions to dismiss the complaint for improper service of process); see also BPA Int'l, Inc. v. Kingdom of Sweden, 281 F. Supp. 2d 73, 84 (D.D.C. 2003) (dismissing complaint for improper service of process where plaintiffs did nothing more than serve the foreign defendant through "Sweden's embassy in Washington, D.C.").  Although these cases concerned service on foreign states or their instrumentalities, their principles are even more compelling with respect to service on a foreign individual who has no connection to an overseas embassy of his country.  If it is improper to serve a sovereign through its own embassy, then it is even more improper to serve a foreign individual through one of his country's embassies.[11]  As in Transaero and BPA Int'l, plaintiffs' attempts to serve Dr. Naseef through the Embassy of Saudi Arabia in Washington, D.C., is improper, and should be quashed.[12]

---

[11] Under the _Burnett_ plaintiffs' approach, any foreign defendant could be served in any of the nearly 200 countries of the world where his country has an embassy or consulate.  This clearly is not the law, whether under Rule 4(f), Fed. R. Civ. P., or any other statute.

[12] Plaintiffs never attempted to serve Dr. Naseef by publication in the _International Herald Tribune_ or _Al Quds Al Arabi_.  Even if they had, Dr. Naseef does not read either journal.  See Naseef Decl. (Ex. 1), at ¶ 9.  As plaintiffs' own proof of service with respect to service by publication demonstrates, the former newspaper has a circulation of only 199 in Saudi Arabia.  See Plaintiffs' Notice of Service by Publication, at Ex. A (Aug. 8, 2003) (_Burnett_ D.D.C. Docket No. 244).  Further, the latter newspaper, which is based in London, is banned in Saudi Arabia, as noted in an article that quotes one of the plaintiffs' attorneys for the _Havlish_ case.  See P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC, online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003) (attached hereto as Exhibit 2).

Furthermore, plaintiffs have made no attempt to demonstrate, at the time they attempted to serve Dr. Naseef through the Embassy, that his address was unavailable, either on the Internet, or through commercial directories, so as to make it impossible to serve him by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on foreign defendants.

Nor can plaintiffs contend that Dr. Naseef, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process.  It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P.  See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").  If this were not the law, Rule 12(b)(5), Fed. R. Civ. P. which allows a defendant to contest service of process, would be rendered a nullity.

The only remedy for failure to effect proper service of process is quashing of the plaintiffs' attempts to serve Dr. Naseef through the Saudi Embassy, see Baade, 175 F.R.D. at 406 ("service of process must be quashed"), and dismissal of the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

**CONCLUSION**

For the foregoing reasons, defendant Dr. Abdullah Naseef respectfully requests that this Court grant his Motion to Dismiss, because this Court lacks personal jurisdiction over him, as a non-resident defendant, and plaintiffs have not properly served him with the complaint in this action.

14

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Dr. Abdullah Naseef (D97)

DATED:  April 8, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2004, I caused the foregoing to be served electronically

on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail,

postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat

_____

Alan R. Kabat