## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————
                                              )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   )       03 MDL No. 1570 (RCC)
—————————————————————————————)       ECF Case
                                              )
THOMAS E. BURNETT, SR., *et al.*,               )
                                              )
         Plaintiffs,                           )
                                              )
         v.                                    )       C.A. No. 03-CV-9849 (RCC)
                                              )
AL BARAKA INVESTMENT AND DEVELOPMENT          )
     CORPORATION, *et al.*,                      )
                                              )
         Defendants.                           )
—————————————————————————————)

## NOTICE OF ABDUL RAHMAN AL SWAILEM'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Dr.

Abdul Rahman Al Swailem ("Dr. Al Swailem") (D95), by and through undersigned counsel,

hereby makes a limited appearance for the purpose of moving the Court, before the Honorable

Richard C. Casey, United States District Judge, at the United States District Court, Southern

District of New York, 500 Pearl Street, New York, New York 10007, at a date and time to be

determined by the Court, for an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and

12(b)(5), Fed. R. Civ. P., the Third Amended Complaint on the basis of (1) sovereign immunity

under the Foreign Sovereign Immunities Act of 1976, since Dr. Al Swailem is a high-ranking

Saudi governmental official during the relevant time period; (2) lack of personal jurisdiction

through Dr. Al Swailem's lack of contacts with the United States, either generally, or

specifically related to the allegations in the complaint; and (3) improper service of process since

plaintiffs attempted to serve Dr. Al Swailem by publication in two newspapers that he does not

read.[1]  A memorandum of law, with exhibits, in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Abdul Rahman Al Swailem (D95)

DATED:  April 9, 2004

---

[1] Dr. Al Swailem reserves the right to raise additional defenses, including those based on lack of justiciability and failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _IN RE_ TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
|  | ) | ECF Case |
|  | ) |  |
| THOMAS E. BURNETT, SR., _et al._, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
|  | ) |  |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) |  |
| CORPORATION, _et al._, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## ABDUL RAHMAN AL SWAILEM'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Abdul Rahman Al Swailem (D95)

DATED:  April 9, 2004

**TABLE OF CONTENTS**

I.      Introduction..................................................................................................... 1

II.     Procedural History........................................................................................ 2

III.    Factual Background....................................................................................... 2

IV.     This Court Lacks Subject Matter Jurisdiction Because Dr. Al Swailem Is
        Immune From Suit Under the Foreign Sovereign Immunities Act................................ 4

        A.      The Standard of Review....................................................................... 4

        B.      Dr. Al Swailem is Immune from Suit Under the FSIA to the Extent that
                the Allegations Against Him Concern Matters Within His Capacity As An
                Official of the Saudi Government...................................................... 6

        C.      None of the Exceptions to FSIA Immunity Exists With Regard
                to Dr. Al Swailem.............................................................................. 6

                1.      The Commercial Activity Exception is Not Applicable........................ 7

                2.      The Non-Commercial Tort Exception is Also Inapplicable.................. 8

                3.      The State-Sponsored Terrorism Exception is Also Inapplicable............ 8

V.      This Court Lacks Personal Jurisdiction Over Dr. Al Swailem........................................ 9

        A.      Dr. Al Swailem Lacks the Requisite Contacts with the United States
                to Support the Exercise of General Jurisdiction.................................... 10

        B.      This Court Does Not Have Specific Jurisdiction Over Dr. Al Swailem
                Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
                Contacts............................................................................................. 12

                1.      Plaintiffs' Claims Against Dr. Al Swailem Do Not Arise Out Of,
                        or Relate To, His Contacts with the United States.................................. 13

                2.      Dr. Al Swailem's Alleged Involvement with Charities and Other
                        Entities that Forms the Basis for the Claims Against Him Were Not
                        "Expressly Aimed" at the United States.................................. 13

i

    3.    Dr. Al Swailem was Not "Personally Involved" as a "Primary Participant" in Funding Terrorism........................................................... 20

C.    The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Al Swailem..................................... 21

VI.    Plaintiffs' Improper Service of Process on Dr. Al Swailem Mandates Quashing of the Service of Process and Dismissal of the Complaint............................................. 22

Conclusion..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970)................................................................... 11

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989)........................................................................ 4-5

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)......................................................................... 14

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997).......................................................... 19, 20

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 11

Burger King v. Rudzewicz,
    471 U.S. 462 (1985).................................................................. 10, 14, 15

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)....................................................... passim

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994)............................................................... 11

Calder v. Jones,
    465 U.S. 783 (1984)...................................................................... passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997)............................................................... 9

Chuidian v. Philippine Nat'l Bank,
    912 F.2d 1095 (9th Cir. 1990).............................................................. 5

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953)....................................................................... 18

El Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996)............................................................... 5

iii

Employers Reinsurance Corp. v. Bryant,
    299 U.S. 374 (1937)..............................................................................9

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
    153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)..........................................11

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
    No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004).....................11

Ex parte McCardle,
    74 U.S. (7 Wall.) 506 (1868)............................................................9

Fickling v. Commonwealth of Australia,
    775 F. Supp. 66 (E.D.N.Y. 1991).....................................................5

Hanson v. Denckla,
    357 U.S. 235 (1958)..........................................................................9

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)..............................................................10, 12, 13

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)........................................................14, 15

In re Ski Train Fire in Kaprun, Austria,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002)..............................................16

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)..........................................................................9

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001)..........................................11-12

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997)........................................................5

Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,
    507 U.S. 163 (1993)..........................................................................5

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)..............................................6

Martin v. Republic of South Africa,
    836 F.2d 91 (2d Cir. 1987)................................................................5

Milliken v. Meyer,
    311 U.S. 457 (1940)............................................................................................ 9

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950).......................................................................................... 19

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991)............................................................................. 19

Phoenix Consulting Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000)............................................................................. 5

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)............................................................................................ 7

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001)............................................................................5, 6

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)............................................................................................ 9

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)............................................................................................ 7

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997)....................................................................... 15

Shaffer v. Heitner,
    433 U.S. 186 (1977).......................................................................................... 13

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 15

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
    33 F.3d 1232 (10th Cir. 1994)........................................................................... 7

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)............................................................................................ 9

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)............................................................................7, 8

Voest-Alpine Trading USA Corp v. Bank of China,
    142 F.3d 887 (5th Cir. 1998)............................................................................. 8

**Statutes and Rules:**

28 U.S.C. § 1330(a)...................................................................................... 4

Anti-Terrorism Act, 18 U.S.C. § 2331 et seq................................................ 17

      18 U.S.C. § 2334....................................................................................10

      18 U.S.C. § 2334(a)...............................................................................17

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq.............. 1, 4

      28 U.S.C. § 1603(a)................................................................................ 5

      28 U.S.C. § 1603(b)................................................................................ 6

      28 U.S.C. § 1603(d)................................................................................ 7

      28 U.S.C. § 1605(a)(2)............................................................................ 7

      28 U.S.C. § 1605(a)(5)............................................................................ 7, 8

      28 U.S.C. § 1605(a)(7)(A)....................................................................... 7, 8

Federal Rules of Civil Procedure:

      Rule 4.....................................................................................................19

      Rule 4(f)(2).............................................................................................19

      Rule 12(b)................................................................................................ 1

      Rule 12(b)(1)........................................................................................... 1

      Rule 12(b)(2)........................................................................................... 1, 9

      Rule 12(b)(5)........................................................................................... 1, 19, 20

      Rule 12(b)(6)........................................................................................... 10

D.C. Code Ann. § 13-423:

      D.C. Code Ann. § 13-423(a)(1)-(2)........................................................17

D.C. Code Ann. § 13-423(a)(3)............................................................................ 17

D.C. Code Ann. § 13-423(a)(4)............................................................................ 17

D.C. Code Ann. § 13-423(5)-(7)......................................................................... 17

**Other Materials:**

International Federation of Red Cross and Red Crescent Societies, "Directory:
    Saudi Arabian Red Crescent Society," *at* http://www.ifrc.org/address/sa.asp..... 3

International Federation of Red Cross and Red Crescent Societies, "Partnerships in
    Profile 2002-2003: Saudi Arabian Red Crescent Society," *at*
    http://www.ifrc.org/cgi/ pdf_profile.pl?saprofile.pdf.......................................... 3

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
    http://www.msnbc.msn.com/id/3340393............................................................ 18

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
    http://www.state.gov/r/pa/ei/bgn/3584pf.htm...................................................... 18

I.        **INTRODUCTION.**

Dr. Abdul Rahman Al Swailem ("Dr. Al Swailem") (D95), a government official entitled to sovereign immunity, has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Saudi governmental official who allegedly interacted with various Muslim charities.[2]  Dr. Al Swailem respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Dr. Al Swailem's position as a government official entitles him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this court's jurisdiction over him.

This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Dr. Al Swailem, a foreign government official whose minimal contacts with the United States were in his official capacity as Deputy Minister of Executive Affairs, Department of Health and President of the Saudi Red Crescent, are unrelated to plaintiffs' allegations.

This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Dr. Al Swailem, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, does not comport with due process.  This improper service of process mandates dismissal of the complaint.

---

[2] Dr. Al Swailem has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Dr. Al Swailem.  If Dr. Al Swailem is served, then it will enter a limited appearance in those cases for the purpose of raising its sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

## II.   <u>PROCEDURAL HISTORY.</u>

The *Burnett* plaintiffs filed their complaint on August 15, 2002 in the U.S. District Court for the District of Columbia, and the Third Amended Complaint ("TAC") was filed on November 22, 2002.

Prior to the consolidation of the <u>Burnett</u> case with several other related cases by the Judicial Panel on Multidistrict Litigation, Prince Sultan bin Abdulaziz Al-Saud and Prince Turki Al-Faisal bin Abdulaziz Al-Saud, high-ranking Saudi officials, filed motions to dismiss, based on the defense of lack of subject matter jurisdiction based on their sovereign immunity under the FSIA.  Judge Robertson dismissed with prejudice plaintiffs' claims against these two defendants arising from any alleged acts that they took in their official capacity.  <u>Burnett v. Al Baraka Invest. & Devel. Corp.</u>, 292 F. Supp. 2d 9, 13-21 (D.D.C. 2003).  Judge Robertson further dismissed claims against Prince Sultan for acts in his personal capacity, holding that his minimal contacts with the United States were unrelated to plaintiffs' allegations against him.  <u>Id.</u> at 21-23.

On March 10, 2004, Dr. Al Swailem entered a limited appearance in <u>Burnett</u>, for the purpose of raising the defenses set forth below.

## III.   <u>FACTUAL BACKGROUND.</u>

Dr. Abdul Rahman Al Swailem is a physician who has lived in Saudi Arabia almost his entire life.  He has always been a citizen of the Kingdom of Saudi Arabia.  <u>See</u> Declaration of Abdul Rahman Al Swailem ("Al Swailem Decl.") at ¶ 3 (attached hereto as Exhibit 1).  In 1989, Dr. Al Swailem was appointed by the Saudi Council of Ministers to the position of Deputy Minister for Executive Affairs, Ministry of Health.  <u>Id.</u> at  ¶ 6.  The Saudi Council of Ministers, which is headed by King Fahd bin Abdulaziz al Saud and his deputies, is the highest decision-

making body in the Saudi government.  Id.  As Deputy Minister, Dr. Al Swailem was in charge

of all executive and technical affairs, including issues relating to medicine, hospitals, preventive

medical care, and the delivery of health care services.  He served in that position until 1998.  Id.

at ¶ 7.

In November 1998, King Fahd issued a Royal order that appointed Dr. Al Swailem to

serve as President of the Saudi Arabian Red Crescent Society.  He continues to serve in that

position to the present.  Id. at ¶ 8.

The Saudi Arabian Red Crescent Society ("Saudi Red Crescent") was established by

Royal Declaration on July 31, 1966.  See Saudi Red Crescent Declaration ("SRCS Decl.") at ¶ 3

(attached hereto as Exhibit 2).  The government of the Kingdom of Saudi Arabia sponsors and

supervises the Saudi Red Crescent, and appoints its directors.  See Al Swailem Decl. (Ex. 1) at ¶

9.  The Saudi Red Crescent's functions include supporting humanitarian operations in other

countries, and providing emergency medical services and related programs within Saudi Arabia.

Id.  The Saudi Red Crescent's operations within Saudi Arabia are funded by the Saudi

government for the purpose of operating the nationwide ambulance center network, operating the

health clinics for pilgrims during the *Hajj* pilgrimage season, teaching first aid and road safety

courses, providing road accident emergency services, and developing disaster preparedness

plans.  See International Federation of Red Cross and Red Crescent Societies, "Partnerships in

Profile 2002-2003: Saudi Arabian Red Crescent Society," <http://www.ifrc.org/cgi/

pdf_profile.pl?saprofile.pdf>; "Directory: Saudi Arabian Red Crescent Society,"

<http://www.ifrc.org/address/sa.asp> (attached as Exhibits 1-2 to Al Swailem Decl.).

Dr. Al Swailem has visited the United States about four times, for reasons related to his

3

government service as Deputy Minister.  He visited San Francisco in 1979 and Pittsburgh, Pennsylvania, in 1998.  He does not recall the exact dates of the visits, but he knows that sometime before 1998 he also made visits to New York and to Washington, D.C.  Id. at ¶ 11. Dr. Al Swailem does not own any real property in the United States.  He also has no bank accounts or investments in the United States, and does not conduct any business in the United States.  Id. at ¶ 12.

As a physician, Dr. Al Swailem has never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001.  He has never knowingly supported any person or organization that he knows to participate in terrorist activities.  Id. at ¶ 14.

Although Dr. Al Swailem is listed in the caption of the Third Amended Complaint, as a defendant ("D95"), there are no allegations about him in the text of the Complaint.  He denies that he had any connection with the perpetrators of the September 11, 2001, attacks.  Id. at ¶ 14.

## IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DR. AL SWAILEM IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

### A. Standard of Review.

The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA") confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a).  The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign or one of its "agencies or instrumentalities" in federal court.  Argentine Republic v. Ameranda Hess Shipping Corp., 488

4

U.S. 428 (1989).[3]

Individuals who hold office for a foreign state are afforded foreign sovereign immunity as agents or "instrumentalities" of the state for acts that they undertake in their official capacity. Burnett, 292 F. Supp. 2d at 14 (citing El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)); see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990); Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991); 28 U.S.C. § 1603(a). The courts afford such protection to actions undertaken in one's official capacity, which are within the scope of official duties. Jungquist, 115 F.3d at 1027.[4]

Here it is clear that Dr. Al Swailem was a government official entitled to sovereign immunity, not only as Deputy Minister of Executive Affairs of the Department of Health, but also as President of the Saudi Red Crescent, a government-appointed position.

When addressing motions to dismiss based on sovereign immunity, the court "must engage in sufficient pretrial factual and legal determinations to "satisfy itself of its authority to hear the case before trial." Jungquist, 115 F.2d at 1027-28; see also Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).[5] The court also must give "'great weight' to any

---

[3] As Judge Robertson observed in Burnett, 292 F. Supp. 2d at 13-14, the FSIA is, in effect, "a series of exceptions to a general rule of immunity for foreign sovereigns." Its purpose is two fold: to prevent federal courts from interfering with the constitutional authority of the Executive Branch to conduct foreign affairs, and to extend to foreign states and their instrumentalities the full benefits of immunity from trial. See Martin v. Republic of South Africa, 836 F.2d 91, 92 (2d Cir. 1987); see also Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).

[4] If there is a dispute about whether an individual is acting in his personal or official capacity, "the relevant inquiry focuses on the nature of the individual's alleged actions rather than the alleged motives underlying them." Jungquist, 115 F.3d at 1028.

[5] This is contrary to the general rule that a court, when reviewing a motion to dismiss, must accept as true, all well pled factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coord.

extrinsic submissions made by the foreign defendants regarding the scope of their official duties."  Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001).

   **B.    Dr. Al Swailem is Immune from Suit Under the FSIA to the Extent that the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government**.

   Dr. Al Swailem has established that he is a "sovereign."  He has held high-level positions of authority within the Saudi government and its affiliated agencies, continuously since 1989. Currently he is President of the Saudi Red Crescent.  Therefore, he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity during that period of time.  See 28 U.S.C. § 1603(b); Burnett, 292 F. Supp. 2d at 14.

   Plaintiffs have made no allegations against Dr. Al Swailem.  As he was a governmental official during the entire period in question, to the extent that plaintiffs intend to make allegations against him concerning actions he took from 1989 to the present, he almost certainly took such actions as a governmental official, either as Deputy Minister of Executive Affairs of the Department of Health, or President of the Saudi Red Crescent, and is, therefore, entitled to immunity under the FSIA.  Robinson, 269 F.3d at 140-41.

   **C.    None of the Exceptions to FSIA Immunity Exists With Regard to Dr. Al Swailem.**

   To the extent that plaintiffs will complain of actions that Dr. Al Swailem took in his official capacity, the plaintiffs must come forward with evidence to show that immunity should not be granted, under one of the three FSIA's exceptions.  They rely on the following three

_____

Unit, 507 U.S. 163, 164 (1993).

exceptions: 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. §

1605(a)(5) (the "non-commercial tort" exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state

sponsored terrorism" exception).  Plaintiffs are unable to meet the requirements to invoke any of

these three exceptions.

### 1.   <u>The Commercial Activity Exception Is Not Applicable.</u>

As a threshold matter, Dr. Al Swailem did not engage in any commercial activities during

the time period relevant to the complaint, or otherwise during his governmental service.  Even if

he had, the plaintiffs cannot rely on the "commercial activity" exception, which provides that a

foreign state is not immune from the jurisdiction of the district courts in any case:

> (2) in which the action is based [1] upon a commercial activity carried on in the
> United States by the foreign state; or [2] upon an act performed in the United
> States in connection with a commercial activity of a foreign state elsewhere; or
> [3] upon an act outside the territory of the United States in connection with a
> commercial activity of the foreign state elsewhere and that act causes a direct
> effect in the United States.

28 U.S.C. § 1605(a)(2).  A "commercial activity" is defined as "either a regular course of

commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  As the

Supreme Court has held, a "commercial activity" is one undertaken by a "private player within

the market."  <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 360 (1993).

Plaintiffs have not identified any actions involving Dr. Al-Swailem which involve a

"commercial activity."  Nor have they pled any facts showing that any purported commercial

activity  "cause[d] a direct effect in the United States," as Section 1605(a)(2) requires.[6]  Thus,

---

[6] As the Second Circuit recently held, "'an effect is direct if it follows as an <u>immediate</u> consequence of the defendant's activity.'"  <u>Virtual Countries v. Republic of South Africa</u>, 300 F.3d 230, 236 (2d Cir. 2002) (quoting <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 618 (1992) (emphasis in original)).  Hence, "'Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.'"  <u>Id</u>. (quoting <u>United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n</u>, 33 F.3d

the "commercial activities" exception to the FSIA is plainly inapplicable.

## 2.     The Non-Commercial Tort Exception is Also Inapplicable.

The second exception to FSIA immunity said to exist in this case is the exception for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).

This exception also does not apply here, since the plaintiffs have failed to even allege, much less present any evidence, that Dr. Al Swailem committed tortious acts, or that any tortious acts that he committed caused their injuries.  They have, in fact,  failed to identify a single action taken (or not taken) by Dr. Al Swailem that was tortious, or that caused any injury to the plaintiffs. The tort exception is, accordingly, inapplicable.

## 3.     The State-Sponsored Terrorism Exception is also Inapplicable.

Finally, to the extent that the plaintiffs intend to claim that Dr. Al Swailem provided material support to terrorists who caused their injuries, the state-sponsored tort exception is inapplicable.  Congress explicitly assigned material support claims to another exception upon which plaintiffs purport to rely, 28 U.S.C. § 1605(a)(7)(A).  However, that exception does not apply here, because Saudi Arabia has not been designated as a state sponsor of terrorism, which is a prerequisite for the application of this exception.  See Burnett, 292 F. Supp. 2d at 20 n.5.  In

---

1232, 1238 (10th Cir. 1994)); see also Voest-Alpine Trading USA Corp v. Bank of China, 142 F.3d 887, 894-95, n.10 (5th Cir. 1998) (no jurisdiction over foreign states "whose acts cause only speculative, generalized, immeasurable, and ultimately unverifiable effects in the United States").  Thus, where there are intermediate actors between the acts of the defendant and plaintiffs' alleged injuries, this requirement is not met.  Virtual Countries, 300 F.3d at 237.

fact, the United States government has called Saudi Arabia an ally in the fight against terrorism.

## V.   THIS COURT LACKS PERSONAL JURISDICTION OVER DR. AL SWAILEM.

This Court must dismiss plaintiffs' Complaint against Dr. Al Swailem, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction. When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000) (quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Dr. Al Swailem, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a "limited" (or "specific") jurisdiction theory, depending on the nature of the defendant's contacts with the forum. Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997). A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the

9

allegations against it concern matters arising out of his contacts with the forum.  <u>Helicopteros</u>

<u>Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984).  If the defendant's contacts

with the forum do not rise to that level, the court may exercise specific jurisdiction over it only if

the cause of action arises out of, or has a substantial connection with, his contacts with the

forum, <u>and</u> <u>additionally</u>, if the defendant was a primary participant in tortious acts expressly

aimed at the forum.  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474, 487 (1985); <u>Calder v. Jones</u>,

465 U.S. 783, 789-90 (1984).

Dr. Al Swailem's contacts with the United States fail to meet the standard either for

specific or general jurisdiction.

### A.   Dr. Al Swailem Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing

personal jurisdiction over Dr. Al Swailem through a general jurisdiction theory:  18 U.S.C. §

2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  <u>Id.</u> ¶ 1.[7]  For this Court to

exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts

with the forum must be "continuous and systematic."  <u>Helicopteros Nacionales</u>, 466 U.S. at 415-

16.  Here, Dr. Al Swailem's scattered contacts with the United States over a twenty-year period,

<u>see</u> Decl. (Ex. 1), at ¶ 11, do not meet that standard.

As Judge Robertson has previously concluded in this case, "'[b]ecause the [ATA]

provides for nationwide service of process,' the relevant Due Process inquiry for personal

jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the

---

[7] Dr. Al Swailem does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

defendant has minimum contacts with the United States.'"  Burnett, 292 F. Supp. 2d at 21

(quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir.

1994)) (emphasis added).[8]  In ATA cases, such as this one, each defendant must have sufficient

minimum contacts with the United States for the exercise of jurisdiction.  See Estates of Ungar v.

Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("Ungar

II"); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL

540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp.

2d 76, 91-95 (D.R.I. 2001) ("Ungar I").  In other ATA cases, courts have found that the number

and type of contacts that Dr. Al Swailem has had with the United States are not sufficient to

establish general personal jurisdiction.  In Ungar II, the court held that the plaintiffs did not show

that the individual defendants "engaged in the kind of systematic and continuous activity in the

United States necessary to support the exercise of general personal jurisdiction over them."

Ungar II, 2004 WL 134034, at *22; see also Ungar I, 153 F. Supp. 2d at 95 (same holding as

applied to a different set of individual defendants).  Similarly, in Biton, the court dismissed the

individual defendants who "admittedly" did not have "minimum contacts with the United States

that square with the Due Process clause."  Biton, 2004 WL 540504, at *5.

     In other types of cases, courts have consistently held that even as many *as several visits

per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity

in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of

London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction

based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne

---

[8] Dr. Al Swailem was not properly served, as set forth in Part VI, *infra*.

11

<u>Film und Funk KG</u>, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

Here, Dr. Al Swailem visited the United States on only four occasions, for official visits relating to his government service as Deputy Minister.  <u>See</u> Al Swailem Decl. (Ex. 1), at ¶ 11. These few visits – solely for official government business – do not begin to rise to the level of "systematic and continuous activity" that would allow the exercise of personal jurisdiction over him.  Moreover, Dr. Al Swailem does not have any property, bank accounts, or investments in the United States, or conduct any business in the United States, <u>id.</u> at ¶ 12, which further undercuts any basis for this court to exercise jurisdiction over him.

### B. This Court Does Not Have Specific Jurisdiction over Dr. Al Swailem Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.

In order for the Court to exercise personal jurisdiction over Dr. Al Swailem under a specific, or limited, theory of personal jurisdiction, plaintiffs' claims against it must arise out of, or relate to, its contacts with the United States.  <u>Helicopteros Nacionales</u>, 466 U.S. at 414. Further, where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" its allegedly tortious conduct at the forum, <u>see</u> <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose.  <u>Id.</u> at 790.[9]  As set forth below, because plaintiffs have not met these three requirements, this court cannot exercise "specific" personal jurisdiction over Dr. Al

---

[9] Plaintiffs themselves have previously admitted that "<u>Calder</u> provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  <u>See, e.g.</u>, Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (<i>Burnett</i> D.D.C. Docket No. 435) (applying <u>Calder</u>).

Swailem.

**1.      Plaintiffs' Claims Against Dr. Al Swailem Do Not Arise Out Of, or Relate To, His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a defendant must be related to that defendant's contacts with the forum.  Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs make no allegations about Dr. Al Swailem.  Any allegations that plaintiffs make about the Saudi Red Crescent concern its involvement with the Saudi Joint Relief Committee, and its employment of Wa'el Jalaidin.  See TAC at ¶ 172; Plaintiffs' More Definite Statement (Jameel), ¶¶ 17, 21-24. However, plaintiffs do not plead sufficient facts showing that their claims against Dr. Al Swailem (or against the Saudi Red Crescent) arise out of, or relate to, Dr. Al Swailem's contacts with the United States.  Critically, Dr. Al Swailem had no knowledge of or involvement with any alleged terrorist activities of the Saudi Joint Relief Committee, the Committee's officers, or Mr. Jameel.  See Al Swailem Decl. (Ex. 1), at ¶¶ 15-17.  Therefore, plaintiffs' failure to allege any nexus between its claims against Dr. Al Swailem, and his visits to the United States, is fatal to any claim that this court has jurisdiction over Dr. Al Swailem.

**2.      Dr. Al Swailem's Actions Involvement with Charities and Other Entities Was Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two

individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby "purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476. However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over a non-resident defendant.  Burger King, 471 U.S. at 474-75.[10]

Under this Supreme Court precedent, plaintiffs have not met their burden to show that Dr. Al Swailem "expressly aimed" harm at the United States, or committed "some act" "purposefully directed" at the United States.  The courts must focus its inquiry not on whether the plaintiffs were injured in their home forum -- which the parties can agree upon -- but whether the defendant's intentional wrongdoing is "**expressly directed** at [the] forum."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing Calder).

In a prior ruling in this case, Judge Robertson held that Calder and Burger King mandated the dismissal of Prince Sultan, because plaintiffs failed to allege that Prince Sultan's "private" actions in funding charities were 'expressly aimed' or 'purposefully directed' at the

---

[10] Subsequently the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger King, 471 U.S. at 475, 476)).

United States," and plaintiffs' generic allegations about all defendants did not overcome the absence of purposeful availment on Prince Sultan's part.  <u>Burnett</u>, 292 F. Supp. 2d at 23.[11]

Therefore, <u>Calder</u> and <u>Burger King</u> require this court to dismiss Dr. Al Swailem from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed <u>any</u> activities toward the United States, much less engaged in any actions that are "purposefully directed" to cause harm to the United States.

### 3. Dr. Al Swailem Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. <u>See, e.g.</u>, <u>In re</u> <u>Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  <u>See, e.g.</u>, <u>Time, Inc. v. Simpson</u>, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Dr. Al Swailem's activities, whatever the plaintiffs may believe or later allege them to be, had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that it was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.

---

[11] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," <u>id.</u>, absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of <u>Calder</u> and <u>Burger King</u>.  <u>Id.</u>

The Supreme Court, in <u>Calder</u>, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." <u>Calder</u>, 465 U.S. at 790.  Since the defendants in <u>Calder</u> were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them."  <u>Id.</u>  However, even if one assumes that plaintiffs are alleging that Dr. Al Swailem supported Muslim charities, which in turn allegedly funded terrorist activities such as the attacks of September 11,[12] Dr. Al Swailem remains many steps removed from *personal* involvement, or *primary* participation, in those attacks.  Thus, plaintiffs have not met, and cannot meet, the third requirement of primary participation for the exercise of specific jurisdiction over Dr. Al Swailem.

C.      **The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Al Swailem.**

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA claims, this Court must find that the long-arm statute does not allow for the exercise of personal jurisdiction over Dr. Al Swailem, because he lacks the requisite contacts with the relevant forum.[13]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a tort action is permissible only if there exists some nexus between the defendant's activities and the forum, by either of two means:

---

[12] Of course, plaintiffs have not made these sorts of detailed allegations in their complaint or Plaintiffs' More Definite Statement (Jameel).

[13] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  <u>See</u> <u>In re</u> <u>Ski Train Fire in Kaprun, Austria</u>, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

16

[by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

[by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[14]  Here, plaintiffs have not alleged any facts showing that Dr. Al Swailem either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline to find personal jurisdiction over Dr. Al Swailem.

### VI.  PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON DR. AL SWAILEM MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' attempts to serve Dr. Al Swailem were defective, and mandate quashing of service of process and dismissal of the complaint against it.[15]  As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Dr. Al Swailem, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach it.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve

---

[14]  The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

[15]  Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Dr. Al Swailem was not served in a judicial district within the United States, as required under that statute.  See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs subsequently published a *modified* version of this notice which listed the thirty-six (36) names that appeared in the original order approved by Judge Robertson, including that of Dr. Al Swailem. (*Burnett* D.D.C. Docket No. 244).

As plaintiffs' proof of service demonstrates that the *International Herald Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, an extremely small readership in a country with a population of more than 24 million.[16]  Further, Dr. Al Swailem does not subscribe to or read the *International Herald Tribune*.  See Al Swailem Decl. (Ex. 1), at ¶ 13.  Even more inadequate is plaintiffs' attempted service by publication in *Al Quds Al Arabi*, a London-based newspaper which is banned in Saudi Arabia, as noted in an article that quotes one of the plaintiffs' attorneys for the *Havlish* case.  See P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC, online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003) (attached hereto as Exhibit B).  These undisputed facts demonstrate that plaintiffs' contention that they have "served by publication" a number of Saudi defendants, including Dr. Al Swailem, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply false.

Second, it is settled law that service by publication is a disfavored remedy, and one that should be employed only if the plaintiffs are unable to obtain the business or home address of the defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

---

[16] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an estimated population of 24.3 million.

notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought

leave to serve some defendants by publication, to show that Dr. Al Swailem's addresses were

unavailable, either on the Internet, or through commercial directories, so as to make it impossible

to serve it by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on

foreign defendants.

Third, service by publication does not comport with due process where, as here, the

publication is in newspapers that either are not circulated in the defendant's community, or

otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable
> means of acquainting interested parties of the fact that their rights are before the
> courts. . . . Chance alone brings to the attention of even a local resident an
> advertisement in small type inserted in the back pages of a newspaper, and **if he
> makes his home outside the area of the newspaper's normal circulation the
> odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added).

Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Dr. Al Swailem does not

reside in an country within that "newspaper's normal circulation."

Fourth, the plaintiffs cannot contend that Dr. Al Swailem, by entering an appearance, has

"actual notice" which somehow substitutes for proper service of process.  Otherwise, Rule

12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, would be

rendered a nullity.  It is settled law in the Second Circuit that "actual notice," whatever that may

be, is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P.  See,

e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the

notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D.

403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule

4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only remedy for failure to effect proper service of process is quashing of the service of process on Dr. Al Swailem that plaintiffs have attempted by publication.  <u>Baade</u>, 175 F.R.D. at 406 ("service of process must be quashed").  Therefore, this Court should quash the attempted service of process against Dr. Al Swailem, and dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## **<u>CONCLUSION</u>**.

For the foregoing reasons, defendant Dr. Abdul Rahman Al Swailem respectfully requests that this Court grant his Motion to Dismiss, because he has sovereign immunity under the FSIA; this Court lacks personal jurisdiction over him, as a non-resident defendant; and plaintiffs have not properly served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdul Rahman Al Swailem (D95)

DATED:  April 9, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.

/s/ Alan R. Kabat

_____

Alan R. Kabat