## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| _____ | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## NOTICE OF MOHAMED ALI MUSHAYT
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant

Mohamed Ali Mushayt (D157), by and through undersigned counsel, hereby makes a limited

appearance for the purpose of moving the Court, before the Honorable Richard C. Casey, United

States District Judge, at the United States District Court, Southern District of New York, 500

Pearl Street, New York, New York 10007, at a date and time to be determined by the Court, for

an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the Third

Amended Complaint on the basis of (1) lack of personal jurisdiction since Mr. Mushayt lacks

contacts with the United States, either generally, or specifically related to the allegations in the

complaint; and (2) improper service of process since plaintiffs never attempted to serve him by

any means, whether by publication, or otherwise.[1]  A memorandum of law, with exhibits, in

---

[1] Mr. Mushayt reserves the right to raise additional defenses, including those based on failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

support of this Motion is attached hereto.

                                    Respectfully submitted,

                                    /s/ Lynne Bernabei
                                    _____
                                    Lynne Bernabei, Esquire  (LB2489)
                                    Alan R. Kabat, Esquire  (AK7194)
                                    Bernabei & Katz, PLLC
                                    1773 T Street, N.W.
                                    Washington, D.C. 20009-7139
                                    (202) 745-1942

                                    Attorneys for Defendant
                                     Mr. Mohamed Ali Mushayt (D157)

DATED:  April 9, 2004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOHAMED ALI MUSHAYT'S MOTION TO DISMISS
## THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant Mohamed Ali Mushayt (D157)

DATED:  April 9, 2004

# TABLE OF CONTENTS

I.      Introduction.................................................................................................. 1

II.     Procedural History......................................................................................... 1

III.    Factual Background........................................................................................ 1

IV.     This Court Lacks Personal Jurisdiction Over Mr. Mushayt............................ 4

        A.      Mr. Mushayt Lacks the Requisite Contacts with the United States
                to Support the Exercise of General Jurisdiction.................................... 6

        B.      This Court Does Not Have Specific Jurisdiction Over Mr. Mushayt
                Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
                Contacts.............................................................................................. 8

                1.      Plaintiffs' Claims Against Mr. Mushayt Do Not Arise Out Of,
                        or Relate To, His Contacts with the United States................................ 8

                2.      Mr. Mushayt's Alleged Involvement with Mohammed Zouaydi That
                        Forms the Basis for the Claims Against Him Was Not "Expressly
                        Aimed" at the United States .................................................... 9

                3.      Mr. Mushayt was Not "Personally Involved" as a "Primary
                        Participant" in Funding Terrorism............................................ 10

        C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
                Exercise of Personal Jurisdiction over Mr. Mushayt.......................... 11

V.      Plaintiffs' Improper Service of Process on Mr. Mushayt Mandates Quashing
        of the Service of Process and Dismissal of the Complaint............................. 12

        Conclusion...................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
  426 F.2d 205 (2d Cir. 1970)................................................................. 7

Asahi Metal Indus. Co. v. Superior Court of Calif.,
  480 U.S. 102 (1987)........................................................................... 9

Baade v. Price,
  175 F.R.D. 403 (D.D.C. 1997).............................................................. 13

Biton v. Palestinian Interim Self-Gov't Auth.,
  No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 7

Burger King v. Rudzewicz,
  471 U.S. 462 (1985)....................................................................... 5, 9, 10

Burnett v. Al Baraka Invest. & Devel. Corp.,
  292 F. Supp. 2d 13 (D.D.C. 2003)...................................................... 6, 10

Busch v. Buchman, Buchman & O'Brien, Law Firm,
  11 F.3d 1255 (5th Cir. 1994)................................................................ 6

Calder v. Jones,
  465 U.S. 783 (1984)................................................................... passim

Chaiken v. VV Publishing Corp.,
  119 F.3d 1018 (2d Cir. 1997)............................................................... 5

Employers Reinsurance Corp. v. Bryant,
  299 U.S. 374 (1937)........................................................................... 4

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
  153 F. Supp. 2d 76, 91-95 (D.R.I. 2001).................................................. 7

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
  No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)................................ 6, 7

Ex parte McCardle,
  74 U.S. (7 Wall.) 506 (1868)................................................................ 4

Hanson v. Denckla,
    357 U.S. 235 (1958).............................................................................................. 5

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)......................................................................................... 5, 6, 7, 8

*In re* Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)............................................................................... 10

*In re* Ski Train Fire in Kaprun, Austria,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002).................................................................. 12

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)............................................................................................ 5

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001)................................................................. 7

Milliken v. Meyer,
    311 U.S. 457 (1940)............................................................................................ 5

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991)............................................................................... 13

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)............................................................................................ 4

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997)...................................................................... 10-11

Shaffer v. Heitner,
    433 U.S. 186 (1977)............................................................................................ 8

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 11

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)............................................................................................ 4

iii

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331 et seq.................................................................... 13

      18 U.S.C. § 2334............................................................................................. 6

      18 U.S.C. § 2334(a)........................................................................................ 13

Federal Rules of Civil Procedure:

      Rule 4............................................................................................................. 13

      Rule 12(b)...................................................................................................... 1

      Rule 12(b)(2)................................................................................................. 1, 4

      Rule 12(b)(5)................................................................................................. 1, 13-14

      Rule 12(b)(6)................................................................................................. 6

D.C. Code Ann. § 13-423:

      D.C. Code Ann. § 13-423(a)(1)-(2)............................................................. 12

      D.C. Code Ann. § 13-423(a)(3)................................................................... 12

      D.C. Code Ann. § 13-423(a)(4)................................................................... 12

      D.C. Code Ann. § 13-423(5)-(7).................................................................. 12

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
      http://www.msnbc.msn.com/id/3340393............................................................. 13

## I.    INTRODUCTION.

Mr. Mohamed Ali Mushayt ("Mr. Mushayt") (D97) has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that he is a Muslim and a businessman in Saudia Arabia.[2]  Mr. Mushayt respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, and (2) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Mr. Mushayt, a foreign individual whose minimal contacts with the United States are unrelated to plaintiffs' allegations.

This Court must also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' failure to serve Mr. Mushayt by any means does not comport with due process.  Thus, this court must dismiss the complaint against him.

## II.    PROCEDURAL HISTORY.

The *Burnett* plaintiffs' first complaint was filed on August 15, 2002 in the U.S. District Court for the District of Columbia, and the operative Third Amended Complaint ("TAC") was filed on November 22, 2002.  On March 10, 2004, Mr. Mushayt entered a limited appearance in Burnett for the limited purpose of raising the defenses set forth below.

## III.    FACTUAL BACKGROUND.

Mohamed Ali Mushayt is a citizen of the Kingdom of Saudi Arabia.  See Declaration of Mohamed Ali Mushayt, at ¶ 3. ("Decl.") (attached and incorporated hereto as Exhibit 1,

---

[2] Mr. Mushayt has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Mr. Mushayt.  If Mr. Mushayt is served, then he will enter a limited appearance in those cases for the purpose of contesting personal jurisdiction and improper service of process.

Attachments A and B).[3]  He has always been a citizen of Saudi Arabia and has lived there his entire life.  Id.

Mr. Mushayt is the owner and president of Mushayt for Trading Establishment ("MFT"), a wholesaler of housewares, kitchenwares, and related household goods in Saudi Arabia.[4]  Id. at ¶ 4.  Mr. Mushayt has worked for MFT since 1991, when he founded the company.  Id.

Mr. Mushayt has made several visits to the United States, all of which have been personal visits, such as a visit to Orlando, Florida, in 1996, and visits to Texas in 1998 and 1999. Id. at ¶ 5.  Neither Mr. Mushayt nor MFT owns any real property or has any bank accounts or investments in the United States.  Nor do they conduct business with any business in the United States.  Id. at ¶¶ 6-7.

Mr. Mushayt does not subscribe to or read the *International Herald Tribune*, or the *Al Quds al Arabi*, which is banned in Saudi Arabia where he lives.  Id. at ¶ 8.

Mr. Mushayt has condemned terrorism, including the attacks of September 11, 2001, and has never knowingly supported any person or organization that he knew to participate in terrorist activities.  Id. at ¶ 9.

There are no allegations in the Third Amended Complaint against Mr. Mushayt, other than nine paragraphs which relate to allegations concerning the activities of Muhammed Zouaydi, whom Spanish authorities have charged with supporting Al Qaeda.  Plaintiff's

---

[3] Because Mr. Mushayt cannot read, write or speak English, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim, who authenticated the translation, which is Exhibit 1 to this Motion.  A translation of the Mushayt Declaration into English is Attachment B to the Alim Declaration.

[4] Plaintiffs initially named the "Mushayt for Trading Establishment" as a defendant (D144) in the TAC. Subsequently, plaintiffs dismissed MFT.  See Plaintiffs' Notice of Voluntary Dismissal (Feb. 21, 2003) (*Burnett* D.D.C. Docket No. 78).

statements regarding Mr. Mushayt are largely unsupported inferences regarding financial support that either Mr. Mushayt or MFT allegedly transferred through Mr. Zouaydi, a former Sales Manager of MFT, to support Al Qaeda's operations in Europe.  However, Mr. Mushayt and MFT never made investments in Spain, or made investments in any Spanish company, and certainly not with al Qaeda.  Id. at ¶¶ 11, 14, 17.  Further, neither Mr. Mushayt nor MFT have any knowledge of any involvement by Mr. Zouaydi in terrorist activities or of Mr. Zouyadi's support of terrorist activities.  Id. at ¶ 10.  In addition, neither Mr. Mushayt nor MFT knowingly have signed any "false contracts" with Mr. Zouaydi or anyone else, including the Proyectos y Promociones Iso, for any purpose, including "money laundering" for terrorist activities.  Id. at ¶¶ 14, 17.

The Third Amended Complaint also incorrectly states that Mr. Zouaydi formed MFT in 1985, and that he owned it until 1998.  See TAC at ¶ 509.  In fact, Mr. Mushayt, not Mr. Zouyadi, formed, and owns, MFT.  See Mushayt Decl. (Ex. 1), at ¶¶ 4, 13.  Mr. Zouaydi was merely a Sales Manager for the company, and has never owned any interest in MFT, or operated MFT, id. at ¶ 13, as plaintiffs allege.

The Third Amended Complaint also claims that MFT "was controlled by members of the Muslim Brotherhood, including current General Manager, Walid al Zaim."  See TAC at ¶ 509. This is also false.  Mr. Al Zaim, Mr. Mushayt's assistant, has no involvement with the Muslim Brotherhood.  See Mushayt Decl. (Ex. 1), at ¶ 13.

Plaintiff's other allegations regarding Mr. Mushayt are similarly factually unsupported. Although the Third Amended Complaint alleges that Mr. Mushayt and MFT are among several entities and individuals that were "directly link[ed] . . . to Mohammed Atta's Hamburg al Qaeda

cell," see TAC at ¶ 503, neither Mr. Mushayt nor MFT had any knowledge of the activities of Mohammed Atta or his associates, other than what is generally known through the media, and they have never knowingly supported either Mr. Atta or other terrorists.  See Mushayt Decl. (Ex. 1), at ¶ 12.  Similarly, contrary to Plaintiff's claim that Mr. Zouaydi "sent $227,000 dollars to Nabil Sayadi in Belgium" on behalf of MFT, see TAC at ¶ 522, neither Mr. Mushayt nor MFT know anything about Nabil Sayadi, nor have they made any contributions to him or to the Global Relief Foundation.  See Mushayt Decl. (Ex. 1), at ¶ 16.

Finally, while the Third Amended Complaint states that Mr. Mushayt and MFT supported individuals named Nabil Nanakli Kosaibati Nabil and Abdull Aziz bin Abdullah, and that MFT knowingly executed money transfers to Spain to support their terrorist activities, see TAC at ¶ 520, neither Mr. Mushayt nor MFT have any knowledge of these two individuals or of their activities.  Nor are they connected in any way with these individuals.  See Mushayt Decl. (Ex. 1), at ¶ 15.

## IV.  THIS COURT LACKS PERSONAL JURISDICTION OVER MR. MUSHAYT.

This Court must dismiss plaintiffs' Complaint against Mr. Mushayt, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000) (quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

4

Before this Court may exercise personal jurisdiction over Mr. Mushayt, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a limited or specific jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him only if the cause of action arises out of, or has a substantial connection with, his contacts with the forum, and additionally, if the defendant were a "primary participant" in tortious acts that are "expressly aimed" at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Mr. Mushayt's limited contacts with the United States, only as a tourist, fail to meet the standard for either general or specific jurisdiction.

**A.      Mr. Mushayt Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.**

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Mr. Mushayt through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[5]  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales, 466 U.S. at 415-16.  Here, Mr. Mushayt's minimal contacts with the United States do not come close to meet that standard since he has conducted no business in the United States, does not have any property, bank accounts or investments in the United States, and has made only occasional visits to the United States over the last eight years.  See Mushayt Decl. (Ex. 1), at ¶¶ 5-7.  All of his visits to this country, of which he recalls only three, were personal in nature.  Id. at ¶ 5.  As Judge Robertson has previously concluded in this case, "'Because the [ATA] provides for nationwide service of process,' the relevant Due Process inquiry for personal jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the defendant has minimum contacts with the United States.'"  Burnett, 292 F. Supp. 2d at 21 (quoting Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)) (emphasis added).[6]

In ATA cases, such as this one, each defendant must have sufficient minimum contacts with the United States for the exercise of personal jurisdiction.  See Estates of Ungar v. Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("Ungar

---

[5] Mr. Mushayt does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

[6] Mr. Mushayt was also not properly served, as set forth in Part V, *infra*.

II"); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL

540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp.

2d 76, 91-95 (D.R.I. 2001) ("Ungar I").  In Ungar II, the court held that the plaintiffs did not

show that the individual defendants "engaged in the kind of systematic and continuous activity in

the United States necessary to support the exercise of general personal jurisdiction over them."

Ungar II, 2004 WL 134034, at *22; see also Ungar I, 153 F. Supp. 2d at 95 (same holding as

applied to a different set of individual defendants).  Similarly, in Biton, the court dismissed

individual defendants who "admittedly" did not have "minimum contacts with the United States

that square with the Due Process clause."  Biton, 2004 WL 540504, at *5.

Courts performing this "general jurisdiction" analysis in other types of cases have

consistently held that even as many *as several visits per year* to the forum did *not* rise to the

level of the requisite systematic and continuous activity in the forum that would allow the

exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American

Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum

"every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F.

Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per

year, are an insufficient basis for jurisdiction").

Mr. Mushayt's occasional visits to the United States over the last 8 years, solely for

personal purposes, see Mushayt Decl. (Ex. 1), at ¶ 5, do not constitute "systematic and

continuous activity" with the United States so as to confer this Court with personal jurisdiction

over him.

7

**B.      This Court Does Not Have Specific Jurisdiction over Mr. Mushayt Because
         Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

This Court also cannot exercise personal jurisdiction over Mr. Mushayt under a specific,

or limited, theory of personal jurisdiction, because plaintiffs' claims against him do not arise out

of, or relate to, his limited contacts with the United States.  Helicopteros Nacionales, 466 U.S. at

414.  Further, where, as here, a non-resident defendant is alleged to have committed torts outside

the forum that somehow caused harm within the forum, the requisite "relatedness" is not

established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum,

see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the

harm from which the claim arose.  Id. at 790.[7]  As set forth below, because plaintiffs have not

met these three requirements, this court cannot exercise "specific" personal jurisdiction over Mr.

Mushayt.

**1.      Plaintiffs' Claims Against Mr. Mushayt Do Not Arise Out Of, or Relate To,
         His Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims

against a non-resident defendant must be related to that defendant's contacts with the forum.

Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite in the

following way:

> When a controversy is related to or "arises out of" a defendant's contacts with the
> forum, the Court has said that a "relationship among the defendant, the forum,
> and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs' allegations against

---

[7] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to
determining whether personal jurisdiction could be exercised over non-resident defendants.  See, e.g., Plaintiffs'
Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46
(Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

Mr. Mushayt concern his alleged involvement with Muhammed Zouyadi.  See TAC at ¶¶ 376-377, 503, 509, 519-520, 522, 524.  However, plaintiffs do not, and cannot, plead any facts to show that their alleged claims against Mr. Mushayt relate to Mr. Mushayt's limited contacts with the United States, which were only for personal visits.  Therefore, this court may not exercise personal jurisdiction over him, under a theory of specific jurisdiction.

> **2.      Mr. Mushayt's Alleged Involvement With Muhammed Zouyadi That Forms the Basis for the Claims Against Him Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence.  Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court unanimously held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby "purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476.  However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over non-resident defendants.  Burger King, 471 U.S. at 474-75.[8]

Under this Supreme Court precedent, plaintiffs have clearly failed to meet their burden to

_____

[8] Subsequently, the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state were not enough to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger King, 471 U.S. at 475, 476)).

show that Mr. Mushayt "expressly aimed" any harm to the United States, or committed any act that was "purposefully directed" at the United States.  The critical inquiry is <u>not</u> whether the plaintiffs were injured in their home forum, but whether the defendant's intentional wrongdoing is "expressly directed at [the] forum."  <u>In re</u> Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing <u>Calder</u>).

In a prior ruling in this case, Judge Robertson held that <u>Calder</u> and <u>Burger King</u> mandated dismissal of Prince Sultan, because the plaintiffs had failed to allege that Prince Sultan's "private" actions in funding charities were 'expressly aimed' or 'purposefully directed' at the United States," and plaintiffs' generic allegations about all defendants did not overcome the absence of purposeful availment on Prince Sultan's part.  <u>Burnett</u>, 292 F. Supp. 2d at 23.[9]

Therefore, as Judge Robertson has previously ruled in this case, <u>Calder</u> and <u>Burger King</u> require that this Court dismiss Mr. Mushayt from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed any activities toward the United States, much less activities intended to cause harm to this country.

### 3.    Mr. Mushayt Was Not "Personally Involved" Or a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. <u>See, e.g.</u>, <u>In re</u> Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); <u>SEC v.</u>

_____

[9] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," <u>id.</u>, absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of <u>Calder</u> and <u>Burger King</u>.  <u>Id.</u>

Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant were not personally involved

with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary

participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson,

No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Mr. Mushayt had a relationship with Mr. Zouaydi, as

plaintiffs allege, see TAC ¶¶ 376-77; 503, 509, 519-520, 522, 524, which Mr. Mushayt strongly

denies, there is nothing in the complaint that would support any conclusion that Mr. Mushayt

was "personally involved" or a "primary participant" in funding the terrorist attacks of

September 11 to conclude that he was "personally involved" or a "primary participant" in

funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that

"[e]ach defendant's contacts with the forum . . . must be assessed individually."  Calder, 465

U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged

wrongdoing intentionally directed at a California resident," the Supreme Court held that

"jurisdiction is proper over them."  Id.  Thus, plaintiffs have not met, and cannot meet, the third

requirement of primary participation for the exercise of specific jurisdiction over Mr. Mushayt.

C.     **The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Mr. Mushayt.**

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which

would apply to plaintiffs' common-law claims only if they had no ATA claim against Mr.

Mushayt, this Court must find that the long-arm statute does not allow for the exercise of

personal jurisdiction over Mr. Mushayt, because he lacks the requisite contacts with the relevant

forum.[10]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in this tort action is permissible only if there is a nexus between the defendant's activities and the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[11]  Here, plaintiffs have not alleged any facts showing that Mr. Mushayt either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Mr. Mushayt has only made a few personal visits to the United States and does not have any property, bank accounts, or investments in the United States, and conducts no business in the United States.  See Mushayt Decl. at ¶ 5-6.  Therefore, even if this Court were to apply the D.C. long arm statute, it must find that it has no personal jurisdiction over Mr. Mushayt.

### V.  PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON MR. MUSHAYT MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' improper attempts to serve Mr. Mushayt were defective, and mandate quashing

---

[10] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

[11] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are inapplicable.

of service of process and dismissal of the complaint against him.[12]  Plaintiffs executed proofs of

service do not include any summons for Mr. Mushayt.  See Burnett D.D.C. Docket Nos. 273-

289.  Nor have plaintiffs attempted to serve Mr. Mushayt by publication as they have attempted

to do for several other Saudi defendants.  See Plaintiffs' Notice of Service by Publication (Aug.

8, 2003) (Burnett D.D.C. Docket No. 244).  Therefore, plaintiffs have not attempted to serve Mr.

Mushayt at all.[13]

Nor can plaintiffs contend that Mr. Mushayt, by entering an appearance, has "actual

notice" which somehow substitutes for proper service of process.  It is settled law in the Second

Circuit that "actual notice," whatever that may be, is no substitute for proper service of process

in compliance with Rule 4, Fed. R. Civ. P.  See, e.g., National Dev. Co. v. Triad Holding Corp.,

930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a

void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear

and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not

defendant GWU had actual notice of the lawsuit.").  If this were not the law, Rule 12(b)(5), Fed.

R. Civ. P., which allows a defendant to contest service of process, would be rendered a nullity.

---

[12] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process
provision, Mr. Mushayt was not served in a judicial district within the United States, as required under the statute.
See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is
found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this
instance.

[13] Even if plaintiffs had attempted to serve Mr. Mushayt by publication in the International Herald Tribune
or Al Quds Al Arabi, Mr. Mushayt does not read either journal, and cannot read English fluently, so would not be
able to read the former newspaper.  See Mushayt Decl. (Ex. 1), at ¶¶ 8, 18.  As plaintiffs' own proof of service with
respect to service by publication demonstrates, the former newspaper has a circulation of only 199 in Saudi Arabia.
See Plaintiffs' Notice of Service by Publication, at Ex. A (Aug. 8, 2003) (Burnett D.D.C. Docket No. 244).  Further,
the latter newspaper, which is based in London, is banned in Saudi Arabia, as noted in an article that quotes one of
the plaintiffs' attorneys for the Havlish case.  See P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC,
online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003) (attached hereto as Exhibit 2).

The only remedy for failure to make any attempt to serve Mr. Mushayt is to dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## **CONCLUSION**

For the foregoing reasons, defendant Mohamed Ali Mushayt respectfully requests that this Court grant his Motion to Dismiss, because this Court lacks personal jurisdiction over him, as a non-resident defendant, and plaintiffs have not properly served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Mohamed Ali Mushayt (D157)

DATED:  April 9, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat
_____
Alan R. Kabat