**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

———————————————————————

## NOTICE OF DR. ABDULLAH BIN SALEH AL-OBAID'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Dr.

Abdullah bin Saleh Al-Obaid (D23), by and through undersigned counsel, hereby makes a

limited appearance for the purpose of moving the Court, before the Honorable Richard C. Casey,

United States District Judge, at the United States District Court, Southern District of New York,

500 Pearl Street, New York, New York 10007, at a date and time to be determined by the Court,

for an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the

Third Amended Complaint on the basis of (1) sovereign immunity under the Foreign Sovereign

Immunities Act of 1976, because Dr. Al-Obaid is a high-ranking Saudi governmental official

during the relevant time period; (2) lack of personal jurisdiction since Dr. Al-Obaid lacked

contacts with the United States, either generally, or specifically related to the allegations in the

complaint; and (3) improper service of process through plaintiffs' attempts to serve Dr. Al-Obaid

by publication in two newspapers that he does not, and cannot, read.[1]  A memorandum of law,

with exhibits, in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Dr. Abdullah bin Saleh Al-Obaid (D23)

DATED:  April 9, 2004

---

[1] Dr. Al-Obaid reserves the right to raise additional defenses, including those based on lack of justiciability and failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | 03 MDL No. 1570 (RCC) ECF Case |
| THOMAS E. BURNETT, SR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 03-CV-9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DR. ABDULLAH BIN SALEH AL-OBAID'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah bin Saleh Al-Obaid  (D23)

DATED:  April 9, 2004

# TABLE OF CONTENTS

I.      Introduction.................................................................................................. 1

II.     Procedural History......................................................................................... 2

III.    Factual Background....................................................................................... 2

IV.     This Court Lacks Subject Matter Jurisdiction Because Dr. Al-Obaid Is
        Immune From Suit Under the Foreign Sovereign Immunities Act................. 6

        A.      The Standard of Review................................................................... 6

        B.      Dr. Al-Obaid is Immune from Suit Under the FSIA Because the
                Allegations Against Him Concern Matters Within His Capacity
                as an Official of the Saudi Government............................................. 8

        C.      The Non-Commercial Tort Exception to FSIA Immunity is Not Applicable .... 8

V.      This Court Lacks Personal Jurisdiction Over Dr. Al-Obaid........................... 11

        A.      Dr. Al-Obaid Lacks the Requisite Contacts with the United States
                to Support the Exercise of General Jurisdiction................................. 12

        B.      This Court Does Not Have Specific Jurisdiction Over Dr. Al-Obaid
                Because Plaintiffs' Claims Do Not Arise Out of or Relate to His
                Contacts.......................................................................................... 14

                1.      Plaintiffs' Claims Against Dr. Al-Obaid Do Not Arise Out Of,
                        or Relate To, His Contacts with the United States.................. 15

                2.      Dr. Al-Obaid's Alleged Involvement with a Charity that Forms
                        the Basis for the Claims Against Him Were Not "Expressly
                        Aimed" at the United States................................................... 16

                3.      Dr. Al-Obaid was Not "Personally Involved" as a "Primary
                        Participant" in Funding Terrorism........................................... 18

        C.      The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the
                Exercise of Personal Jurisdiction over Dr. Al-Obaid......................... 19

VI.     Plaintiffs' Improper Service of Process on Dr. Al-Obaid Mandates Quashing
        of the Service of Process and Dismissal of the Complaint............................. 20

i

Conclusion.................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
　　　426 F.2d 205 (2d Cir. 1970)..............................................................14

Argentine Republic v. Ameranda Hess Shipping Corp.,
　　　488 U.S. 428 (1989)....................................................................... 6

Asahi Metal Indus. Co. v. Superior Court of Calif.,
　　　480 U.S. 102 (1987)..........................................................................17

Baade v. Price,
　　　175 F.R.D. 403 (D.D.C. 1997)..........................................................22

Biton v. Palestinian Interim Self-Gov't Auth.,
　　　No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)....13

Burger King v. Rudzewicz,
　　　471 U.S. 462 (1985)........................................................... 12, 16, 17

Burnett v. Al Baraka Invest. & Devel. Corp.,
　　　292 F. Supp. 2d 13 (D.D.C. 2003).................................................. passim

Busch v. Buchman, Buchman & O'Brien, Law Firm,
　　　11 F.3d 1255 (5th Cir. 1994)............................................................13

Calder v. Jones,
　　　465 U.S. 783 (1984)..................................................................... passim

Chaiken v. VV Publishing Corp.,
　　　119 F.3d 1018 (2d Cir. 1997)..........................................................12

Chuidian v. Philippine Nat'l Bank,
　　　912 F.2d 1095 (9th Cir. 1990)......................................................... 6

City of New York v. New York, N.H. & H.R. Co.,
　　　344 U.S. 293 (1953)........................................................................21

El Fadl v. Central Bank of Jordan,
　　　75 F.3d 668 (D.C. Cir. 1996)........................................................... 6

Employers Reinsurance Corp. v. Bryant,
     299 U.S. 374 (1937).......................................................................... 11

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
     153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)..........................................13

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
     No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)................................. 13

Ex parte McCardle,
     74 U.S. (7 Wall.) 506 (1868)...........................................................11

Fickling v. Commonwealth of Australia,
     775 F. Supp. 66 (E.D.N.Y. 1991).....................................................6

Filetech S.A. v. France Telecom S.A.,
     157 F.3d 922 (2d Cir. 1998)...........................................................7

Hanson v. Denckla,
     357 U.S. 235 (1958)....................................................................... 12

Helicopteros Nacionales de Colombia, S.A. v. Hall,
     466 U.S. 408 (1984)........................................................... 12, 13, 14, 15

In re Magnetic Audiotape Antitrust Litig.,
     334 F.3d 204 (2d Cir. 2003)......................................................17, 18

In re Ski Train Fire in Kaprun, Austria,
     230 F. Supp. 2d 392 (S.D.N.Y. 2002)............................................. 19

International Shoe Co. v. Washington,
     326 U.S. 310 (1945)..................................................................... 11

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
     160 F. Supp. 2d 722 (S.D.N.Y. 2001)............................................. 14

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
     115 F.3d 1020 (D.C. Cir. 1997)..................................................... 6, 7

Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,
     507 U.S. 163 (1993)........................................................................7

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
     184 F. Supp. 2d 277 (S.D.N.Y. 2001).............................................7

MacArthur Area Citizens Ass'n v. Republic of Peru,
    809 F.2d 918 (D.C. Cir. 1987)........................................................................ 10

Martin v. Republic of South Africa,
    836 F.2d 91 (2d Cir. 1987)............................................................................ 6

Milliken v. Meyer,
    311 U.S. 457 (1940)...................................................................................... 11

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)...................................................................................... 22

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991)......................................................................... 22

Phoenix Consulting Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000)........................................................................ 6

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)...................................................................................... 11

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001)...................................................................... 7, 11

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)...................................................................................... 11

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997).................................................................... 18

Shaffer v. Heitner,
    433 U.S. 186 (1977)...................................................................................... 15

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).....  18

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)...................................................................................... 11

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)...................................................................... 7, 11

**Statutes and Rules:**

28 U.S.C. § 1330(a)........................................................................................6

Anti-Terrorism Act, 18 U.S.C. § 2331 <u>et</u> <u>seq</u>.........................................20

    18 U.S.C. § 2334.................................................................................. 12

    18 U.S.C. § 2334(a)..............................................................................20

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 <u>et</u> <u>seq</u>....................... 1, 6

    28 U.S.C. § 1603(a)...............................................................................7

    28 U.S.C. § 1605(a)(2)......................................................................... 11

    28 U.S.C. § 1605(a)(5)........................................................................... 9

    28 U.S.C. § 1605(a)(7)(A).....................................................................11

Federal Rules of Civil Procedure:

    Rule 4.................................................................................................. 22

    Rule 4(f)(2)..........................................................................................21

    Rule 12(b).............................................................................................1

    Rule 12(b)(1)........................................................................................ 1

    Rule 12(b)(2)..................................................................................... 1, 11

    Rule 12(b)(5)..................................................................................... 1, 22

    Rule 12(b)(6)....................................................................................... 12

D.C. Code Ann. § 13-423:

    D.C. Code Ann. § 13-423(a)(1)-(2)........................................................19

    D.C. Code Ann. § 13-423(a)(3)..............................................................19

    D.C. Code Ann. § 13-423(a)(4)..............................................................19

    D.C. Code Ann. § 13-423(5)-(7).............................................................19

**Other Materials:**

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
  http://www.msnbc.msn.com/id/3340393........................................................ 21

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
  http://www.state.gov/r/pa/ei/bgn/3584pf.htm................................................. 20

## I.     **INTRODUCTION.**

Dr. Abdullah bin Saleh Al-Obaid ("Dr. Al-Obaid") (D23), currently a member of one of the highest-ranking governmental bodies in the Kingdom of Saudi Arabia, and formerly a member of another high-ranking governmental body, has been named as a defendant in this and several other lawsuits consolidated in this proceeding.  Plaintiffs have apparently named Dr. Al-Obaid as a defendant for no basis other than he is a Muslim and has held important governmental positions relating to Islamic affairs.[2]  Dr. Al-Obaid respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Dr. Al-Obaid's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this Court's jurisdiction over him.

This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Dr. Al-Obaid, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.

This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Dr. Al-Obaid, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, does not comport with due process.  Thus, plaintiffs' attempted service of process on Dr. Al-Obaid is improper, such that this Court must dismiss the complaint against him.

---

[2] Dr. Al-Obaid has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve Dr. Al-Obaid.  If Dr. Al-Obaid is served, then he will enter a limited appearance in those cases for the purpose of raising his sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

## II.    PROCEDURAL HISTORY.

The *Burnett* plaintiffs filed their first complaint on August 15, 2002 in the U.S. District Court for the District of Columbia.  Plaintiffs filed the operative Third Amended Complaint ("TAC") on November 22, 2002.

Prior to the consolidation of the Burnett case with several other related cases by the Judicial Panel on Multidistrict Litigation, Prince Sultan bin Abdulaziz Al-Saud and Prince Turki Al-Faisal bin Abdulaziz Al-Saud, high-ranking Saudi officials, filed motions to dismiss, based on the defense of lack of subject matter jurisdiction based on their sovereign immunity under the FSIA.  Judge Robertson dismissed with prejudice plaintiffs' claims against these two defendants arising from any alleged acts that they took in their official capacity.  Burnett v. Al Baraka Invest. & Devel. Corp., 292 F. Supp. 2d 9, 13-21 (D.D.C. 2003).  Judge Robertson further dismissed claims against Prince Sultan for acts in his personal capacity, holding that his minimal contacts with the United States were unrelated to plaintiffs' allegations against him.  Id. at 21-23.

On March 10, 2004, Dr. Al-Obaid entered a limited appearance in Burnett, for the purpose of raising the defenses set forth below.

## III.    FACTUAL BACKGROUND.

Dr. Abdullah bin Saleh Al-Obaid has lived in Saudi Arabia almost his entire life and is a citizen of the Kingdom.  See Declaration of Abdullah bin Salem Al-Obaid, at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1).  Dr. Al-Obaid has continuously held a series of official positions within the Saudi government for almost 25 years.  Id. at ¶¶ 4-7.  He assumed his first official position beginning in 1980, when he became Assistant Deputy and Vice President of the Committee of the Two Holy Mosques, a government agency responsible for the

maintenance and operation of the Grand Mosque and the Prophet's Mosque.  Id. at ¶ 4.  From 1981 to 1982, he served as Vice President of the Islamic University, Al-Madina Al-Munawarah, Saudi Arabia.  Id.  The Islamic University was founded by the government of Saudi Arabia, through Royal Decree, with a view toward spreading the teachings of Islam worldwide.  From 1982 to 1995, by Royal Decree, he served as President of that University.  Id.

In 1995,  Dr. Al-Obaid became one of eight members of the Supreme Council for Islamic Affairs, established by King Fahd by Royal Decree No. 296/8 (1994).[3]  Id. at ¶ 5.  Around the same time, in 1995, Dr. Al-Obaid became the Secretary-General of the Muslim World League, a charity that is sponsored and financially supported by the Saudi government.  Id.  He held both positions until 2000.  Id.  In his capacity as Secretary-General, Dr. Al-Obaid also served as an officer of the Rabita Trust, a charity that is partly owned by the Muslim World League, and partly owned by the government of Pakistan.  Id.

In 2001, Dr. Al-Obaid was appointed by Royal Decree to the Saudi Majlis-ash-Shura, which is the legislative body of the Saudi government, equivalent to a Parliament in other countries.  Id. at ¶ 6.  He is one of eleven (11) members of the Committee of Islamic Affairs.  Id.  The Majlis-ash-Shura's function is to advise King Fahd and his deputies on all issues of importance to the Kingdom.  Id.  Its recommendations, if adopted, become governmental policy. The Committee of Islamic Affairs' function emphasizes all issues relating to Islam and the

_____

[3] Prince Sultan is the Chairman of the Supreme Council for Islamic Affairs.  As set forth in greater detail in Prince Sultan's Motion to Dismiss filed in *Burnett*, which Dr. Al-Obaid incorporates by reference, the Supreme Council is an arm of the Saudi government, and makes discretionary recommendations to the King that, if approved, become acts or policies of the Saudi government.  See Declaration of Abdulaziz H. Al Fahad, at ¶¶ 7-11 (Apr. 6, 2003) (attached and incorporated herein as Exhibit 2).  The Supreme Council has five enumerated functions:  "(1) planning and oversight of Saudi Islamic activities abroad ...; (2) care for Muslim minorities and attention to their conditions; (3) introduction of Islam; (4) promoting of contacts between the Kingdom and Muslims abroad; [and] (5) promoting the spreading of Islamic culture and the Arabic language abroad."  Id. at ¶ 9.

government's Islamic activities.  Id.

Recently, in March 2004, Dr. Al-Obaid was appointed by Royal Decree to be a founding member of the National Human Rights Association, a new entity.  Id. at ¶ 7.  At its first meeting, held in the Shoura Council headquarters in Riyadh, Dr. Al-Obaid was chosen to serve as Chairman by the Association's forty (40) other members.  Id.

Dr. Al-Obaid has visited the United States on several occasions since 1975, most recently in 2002.  Id. at ¶ 8.  In his official capacity as a member of the Supreme Council for Islamic Affairs and Secretary-General of the Muslim World League, he has made official visits to various offices of the Muslim World League around the world, including the office in the United States.  Id.  Dr. Al-Obaid does not own any real property in the United States or have any bank accounts or investments in the United States.  Id. at ¶ 9.  Nor does he conduct any personal business with any businesses in the United States.  Id.

Dr. Al-Obaid has never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001.  Id. at ¶ 11.  He has never supported any person or organization that he has known to participate in terrorist activities; indeed, he was interviewed on Saudi television shortly after the September 11 attacks, and he condemned them. Id.

Plaintiff's Third Amended Complaint in this case contains a series of extremely vague allegations concerning Dr. Al-Obaid, through which an effort is made to link him to terrorism. In Paragraph 248, plaintiffs contend that Dr. Al-Obaid and several other individuals were "co-conspirators, material sponsors, and/or aiders and abettors and members of the terrorist enterprise of the International Islamic Relief Organization," which is a subsidiary of the Muslim

World League.  Dr. Al-Obaid was not involved with IIRO's day-to-day operations or activities and had no knowledge of any IIRO activities that were terrorist activities, either in his role as Secretary General of the Muslim World League or in any position that he held within the Saudi government.[4]  See Al-Obaid Decl. (Ex. 1), at ¶ 12.

In Paragraph 260 of the Third Amended Complaint, it is stated that Dr. Al-Obaid was one of several "co-conspirators, aiders and abettors of the Muslim World League."  Dr. Al-Obaid had no knowledge of any activities of the Muslim World League that were terrorist activities.  Id. at ¶ 13.

Paragraph 273 of the Third Amended Complaint, alleges that the Rabita Trust "is connected to the SAAR Network through two officers," including Dr. Al-Obaid.  As noted, Dr. Al-Obaid served as an officer of the Rabita Trust in his capacity as Secretary-General of the Muslim World League.  He was not, however, involved in the day-to-day operations or activities of the SAAR Network or its components, and denies any knowledge of any activities of the SAAR Network that were terrorist activities.  Id. at ¶ 14.

Finally, in Paragraphs 252 and 275 of the Third Amended Complaint, it is stated that Dr. Al-Obaid runs, or is Deputy General Manager of, "one of the al-Rajhi family's largest corporations" or "businesses," "al-Watania Poultry in Saudi Arabia."  Dr. Al-Obaid, however, never had any involvement with this or any other poultry business.[5]  Id. at ¶ 15.

---

[4] Similarly, in Paragraph 251 of the Third Amended Complaint, plaintiffs contend that Dr. Al-Obaid was one of three "officers at the Virginia office" of the Muslim World League.  During his tenure as Secretary-General of the Muslim World League, from 1995 to 2000, Dr. Al-Obaid served in an ex officio capacity with several of its foreign offices, but was not responsible for the day-to-day operations or activities of the Virginia office.  See Al-Obaid Decl. (Ex. 1), at ¶ 13.

[5] It appears that Dr. Al-Obaid is being confused with someone else with a similar name, a former Deputy Minister of Agriculture in Saudi Arabia.

## IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DR. AL-OBAID IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

Since 1980 Dr. Al-Obaid has held a number of important positions in the Saudi government.  The claims against him, as best they can be understand from the plaintiffs' Third Amended Complaint, appear to relate to actions he took in his capacity as an official of the Saudi government.  To the extent that they do, this Court lacks subject matter jurisdiction over those claims under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA").

### A.    The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a). The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court. Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).[6]

Individuals who hold office for a foreign state are afforded foreign sovereign immunity as agents or "instrumentalities" of the state for acts that they undertake in their official capacity. Burnett, 292 F. Supp. 2d at 14 (citing El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)); see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990); Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991); 28 U.S.C. §

---

[6] As Judge Robertson observed in Burnett, 292 F. Supp. 2d at 13-14, the FSIA is, in effect, "a series of exceptions to a general rule of immunity for foreign sovereigns."  Its purpose is two fold: to prevent federal courts from interfering with the constitutional authority of the Executive Branch to conduct foreign affairs, and to extend foreign states and their instrumentalities the full benefits of immunity from trial.  See Martin v. Republic of South Africa, 836 F.2d 91, 92 (2d Cir. 1987); see also Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).

1603(a).  The courts afford such protection to actions undertaken in one's official capacity, which are within the scope of official duties.  Jungquist, 115 F.3d at 1027.[7]

When addressing motions to dismiss based on sovereign immunity, the court "must engage in sufficient pretrial factual and legal determinations to "satisfy itself of its authority to hear the case before trial."  Jungquist, 115 F.2d at 1027-28; see also Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).  This is contrary to the general rule that a court, when reviewing a motion to dismiss, must accept as true, all well pled factual allegations in the complaint.  Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164 (1993).  The court also must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties."  Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001).  The Second Circuit has held that when a defendant establishes a prima facie case that it is a sovereign, in order to demonstrate jurisdiction, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions.  Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002).  If the court finds that a foreign defendant has engaged in the alleged actions as a part of his official government duties, the court must dismiss the claims against that defendant.  Robinson, 269 F.3d at 140-41; Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).

---

[7] If there is a dispute about whether an individual is acting in his personal or official capacity, "the relevant inquiry focuses on the nature of the individual's alleged actions rather than the alleged motives underlying them." Jungquist, 115 F.3d at 1028.

**B.    Dr. Al-Obaid is Immune from Suit Under the FSIA to the Extent that the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government.**

Through his affidavit, Dr. Al-Obaid has established that he is a "sovereign."  First, as described in Part III, *supra*, he has held positions of authority within the Government of Saudi Arabia continuously over the last 25 years.  Accordingly he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity during that period of time.

It is impossible to make sense of plaintiffs' accusations against Dr. Al Obaid.  Providing no specific details, the complaint contains a number of claims that Dr. Al-Obaid was a "co-conspirator, material sponsor, and or aider and abettor" of the IIRO, the Muslim World League, the Rabita Trust, and the SAAR network.  There is also an allegation about his involvement with a poultry business with which he had no connection.  As he was a governmental official during the entire period in question, to date, it seems that the allegations against him, whatever they may be, concern acts that he undertook in his capacity as a member of the Supreme Council of Islamic Affairs, and/or the Saudi legislature, including his position as one of eleven members of the Committee for Islamic Affairs.  Therefore, he is entitled to immunity under the FSIA.

**C.    The Non-Commercial Tort Exception to FSIA Immunity Is Not Applicable.**

Of the enumerated exceptions to FSIA immunity, the only one that is even remotely implicated by plaintiffs' allegations against Dr. Al-Obaid is the exception for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of

his office or employment."  28 U.S.C. § 1605(a)(5).  This exception clearly does not apply to the actions in which plaintiffs allege Dr. Al-Obaid engaged.

The plaintiffs have failed to allege that Dr. Al-Obaid committed tortious acts, or that those tortious acts caused their injuries.  At best, they have offered vague and conclusory allegations about conspiracies and the aiding and abetting of unspecified terrorist activities.  They have failed to identify a single action taken (or not taken) by Dr. Al-Obaid that was tortious or that caused any injury to the plaintiffs.

The Robinson court set forth a standard by which tort claims against a sovereign were to be analyzed where, as here, only generic allegations were made.  In that case, the Second Circuit held that it was improper for a court "to sustain jurisdiction based on generic allegations," where the plaintiffs had failed to assert, or provide evidence of, any "factual predicate for such jurisdiction.  Robinson, 269 F.3d at 146.  The court then explained that any other approach would impermissibly allow plaintiffs "to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaint."  Id.  Here, the plaintiffs have made nothing more than "vague and conclusory allegations" regarding Dr. Al-Obaid, see TAC, at ¶ 248, 251-252, 260, 273, and 275, precisely the type of allegations that the Second Circuit held to be impermissible.

The Second Circuit also held that the plaintiffs could not simply hope that the district court would somehow conclude, on the basis of vague and conclusory allegations, "that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law."  Robinson, 269 F.3d at 146.  Here, too, the plaintiffs' goal seems to be hoping that this Court will somehow fill in the gaps in their complaint, finding that

9

Dr. Al-Obaid is somehow "guilty" because of his association with two Muslim charities (and his alleged, but entirely erroneous association with a poultry company).  As the Second Circuit explained, that approach is contrary to FSIA's goal, which is "to enable a foreign government to obtain an early dismissal when the substance of the claim does not support jurisdiction."  Id.

Even if plaintiffs had made sufficient allegations against Dr. Al-Obaid, they still have failed to meet the causation requirement set forth in Robinson for the tortious act exception.  As Judge Robertson observed in Burnett, the "'tortious act' exception was designed generally to remove immunity for cases arising from traffic accidents. . . . the legislative history counsels that the exception should be narrowly construed so as to not encompass the farthest reaches of common law.'"  Burnett, 292 F. Supp. 2d at 19 (quoting MacArthur Area Citizens Ass'n v. Republic of Peru, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Thus, an allegation that a defendant funded others, who in turn funded those who carried out the September 11 terrorist attacks, "would stretch the causation requirement of the non-commercial tort exception [of the FSIA] not only to 'the farthest reaches of the common law' but perhaps beyond to terra incognita."  Id. at 20.

The same reasoning applies with respect to any allegations that plaintiffs have or could attempt to make, against Dr. Al-Obaid.

Clearly, Dr. Al-Obaid did not commit any tort that caused the September 11 attacks.  Therefore, under Robinson, this Court must resist the temptation to fill in the holes in plaintiffs' complaint to allow unspecified and vague allegations to comply with the FSIA's tort exception.  Because the tort exception is inapplicable, the allegations against Dr. Al-Obaid must be

dismissed.[8]

## V.   THIS COURT LACKS PERSONAL JURISDICTION OVER DR. AL-OBAID.

This Court must dismiss plaintiffs' Complaint against Dr. Al-Obaid, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 778-79 (2000) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over Dr. Al-Obaid, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have

---

[8] Plaintiffs cannot credibly allege that either the commercial activity exception, 28 U.S.C. § 1605(a)(2), or the state-sponsored terrorism exception, 28 U.S.C. § 1605(a)(7)(A), applies with respect to Dr. Al-Obaid.  First, plaintiffs have not alleged that Dr. Al-Obaid engaged in any commercial activity, let alone that any such activity "cause[d] a direct effect in the United States," as Section 1605(a)(2) requires.  As the Second Circuit recently held, "'an effect is direct if it follows as an immediate consequence of the defendant's activity.'"  Virtual Countries v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis in original)).  Where there are intermediate actors between the acts of the defendant and plaintiffs' alleged injuries, the "direct effect" requirement is not met.  Virtual Countries, 300 F.3d at 237.

Similarly, even if plaintiffs were to allege that Dr. Al-Obaid had somehow provided material support to terrorists who caused their injuries, the state-sponsored terrorism exception is inapplicable, because Saudi Arabia has not been designated as a state sponsor of terrorism, which is a prerequisite for the application of this exception.  See Burnett, 292 F. Supp. 2d at 20 n.5.

"purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a "limited" (or "specific") jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against him concern matters arising out of his contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  If the defendant's contacts with the forum do not rise to that level, the court may exercise specific jurisdiction over him only if the cause of action arises out of, or has a substantial connection with, his contacts with the forum, and additionally, if the defendant was a primary participant in tortious acts expressly aimed at the forum.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 487 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Dr. Al-Obaid's contacts with the United States fail to meet the standard for either general or specific jurisdiction.

A.      **Dr. Al-Obaid Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.**

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing personal jurisdiction over Dr. Al-Obaid through a general jurisdiction theory:  18 U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  Id. ¶ 1.[9]  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the

---

[9] Dr. Al-Obaid does not concede that plaintiffs have stated a viable ATA claim against him, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

forum must be "continuous and systematic."  <u>Helicopteros Nacionales</u>, 466 U.S. at 415-16.

Here, Dr. Al-Obaid's minimal contacts with the United States, <u>see</u> Decl. (Ex. 1), at ¶¶ 8-9, do not

come close to meeting that standard.

As Judge Robertson has previously concluded in this case, "'[b]ecause the [ATA]

provides for nationwide service of process,' the relevant Due Process inquiry for personal

jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the

defendant has minimum contacts with the United States.'"  <u>Burnett</u>, 292 F. Supp. 2d at 21

(quoting <u>Busch v. Buchman, Buchman & O'Brien, Law Firm</u>, 11 F.3d 1255, 1258 (5th Cir.

1994)) (emphasis added).[10]  In ATA cases, such as this one, each defendant must have sufficient

minimum contacts with the United States for the exercise of jurisdiction.  <u>Estates of Ungar v.</u>

<u>Palestinian Auth.</u>, No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("<u>Ungar</u>

<u>II</u>"); <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, No. Civ. A. 01-0382 (RMC), 2004 WL

540504, at *3-*5 (D.D.C. March 18, 2004); <u>Estates of Ungar v. Palestinian Auth.</u>, 153 F. Supp.

2d 76, 91-95 (D.R.I. 2001) ("<u>Ungar I</u>").  In <u>Ungar II</u>, the court held that the plaintiffs did not

show that the individual defendants "engaged in the kind of systematic and continuous activity in

the United States necessary to support the exercise of general personal jurisdiction over them."

<u>Ungar II</u>, 2004 WL 134034, at *22; <u>see also</u> <u>Ungar I</u>, 153 F. Supp. 2d at 95 (same holding as

applied to a different set of individual defendants).  Similarly, the court in <u>Biton</u> dismissed

individual defendants who "admittedly" did not have "minimum contacts with the United States

that square with the Due Process clause."  <u>Biton</u>, 2004 WL 540504, at *5.

Here, Dr. Al-Obaid has visited the United States only a few times, over a 30-year period.

---

[10] Dr. Al-Obaid was not properly served, as set forth in Part VI, *infra*.

See Al-Obaid Decl. (Ex. 1), at ¶ 8.  In his capacity as a member of the Supreme Council for Islamic Affairs and Secretary General of the Muslim World League, he made official visits to Muslim World League offices around the world, including the New York office, where he also met with Kofi Annan, the United National Secretary General.  Id.  These few visits – solely for work and official government business – do not begin to rise to the level of "systematic and continuous activity" that would allow the exercise of personal jurisdiction over him.  Moreover, the fact that he does not have any property, bank accounts, or investments in the United States, or conduct business in the United States, id. at ¶ 9, further undercuts any basis for this court to exercise jurisdiction over him.

Courts in other types of cases have held consistently that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

Thus, Dr. Al-Obaid's handful of visits to the United States over 30 years certainly would not meet this jurisdictional standard.

**B.**     **This Court Does Not Have Specific Jurisdiction over Dr. Al-Obaid Because Plaintiffs' Claims Do Not Arise out of or Relate to His Contacts.**

In order for the Court to exercise personal jurisdiction over Dr. Al-Obaid under a specific, or limited, theory of personal jurisdiction, plaintiffs' claims against him must arise out of, or relate to, his contacts with the United States.  Helicopteros Nacionales, 466 U.S. at 414.

14

Where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" his allegedly tortious conduct at the forum, see Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose.  Id. at 790.[11]  As set forth below, because plaintiffs have not met these three requirements, this court clearly cannot exercise "specific" personal jurisdiction over Dr. Al-Obaid.

### 1. Plaintiffs' Claims Against Dr. Al-Obaid Do Not Arise Out Of, or Relate To, His Contacts with the United States.

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a defendant must be related to that defendant's contacts with the forum.  Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs' allegations against Dr. Al-Obaid apparently concern his involvement with several Muslim charities, along with his alleged involvement with a poultry business.  See TAC at ¶¶ 248, 251, 252, 260, and 273. Plaintiffs have failed to plead any specific facts that demonstrate Dr. Al-Obaid's work with Muslim charities aids or against terrorist activities.  For this reason, the case should be dismissed

_____

[11] Plaintiffs themselves have previously admitted that "Calder provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  See, e.g., Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (Burnett D.D.C. Docket No. 435) (applying Calder).

under <u>Robinson</u>.  Furthermore, without specifics, it is impossible for plaintiffs to demonstrate that Dr. Al-Obaid's actions were in someway related to his contacts with the United States.  Dr. Al-Obaid had no day-to-day involvement with the operations or activities of the United States offices or entities of either the World Muslim League or the Rabita Trust.  <u>See</u> Al-Obaid Decl. (Ex. 1), at ¶¶ 12-14.  Further, the allegation regarding the poultry company is not only factually incorrect, being based on a case of mistake identity, <u>id.</u> at ¶ 15, but also has no connection to the United States, as far as Dr. Al-Obaid can determine.  Plaintiffs' failure to allege any nexus between Dr. Al-Obaid's alleged activities and his contacts with the United States is fatal to any claim that this court has jurisdiction over Dr. Al-Obaid under a theory of "specific jurisdiction."

    **2.**      **Dr. Al-Obaid's Alleged Involvement with Charities That Forms the Basis for the Claims Against Him Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in <u>Calder</u>, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. <u>Calder</u>, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  <u>Id.</u>  One year later, in <u>Burger King</u>, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case, where that defendant had "purposefully directed" his efforts towards the forum state, thereby "purposefully establishing minimum contacts" with that forum.  <u>Burger King</u>, 471 U.S. at 476. However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in his home forum was not sufficient to establish personal jurisdiction over a non-resident

defendant.  <u>Burger King</u>, 471 U.S. at 474-75.[12]

Under this Supreme Court precedent, plaintiffs have not met their burden to show Dr. Al-Obaid "expressly aimed" harm to the United States, or committed "some act" "purposefully directed" at the United States.  The critical inquiry is <u>not</u> whether the plaintiffs were injured in their home forum, but whether the defendant's intentional wrongdoing is "**expressly directed** at [the] forum."  <u>In re</u> <u>Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added) (citing <u>Calder</u>).

In a prior ruling in this case, Judge Robertson held that <u>Calder</u> and <u>Burger King</u> mandated the dismissal of Prince Sultan, because plaintiffs failed to allege that Prince Sultan's "private" actions in funding charities were 'expressly aimed' or 'purposefully directed' at the United States," and plaintiffs' generic allegations about all defendants did not overcome the absence of purposeful availment on Prince Sultan's part.  <u>Burnett</u>, 292 F. Supp. 2d at 23.[13]

Therefore, as Judge Robertson has previously ruled, <u>Calder</u> and <u>Burger King</u> require this court to dismiss Dr. Al-Obaid from this action, as he is a non-resident defendant who plaintiffs do not allege, and cannot show, has directed any activities toward the United States, much less engaged in any actions that are "purposefully directed" to cause harm to the United States.

---

[12] Subsequently, the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish personal jurisdiction.  <u>Asahi Metal Indus. Co. v. Superior Court of Calif.</u>, 480 U.S. 102, 112 (1987) (citing <u>Burger King</u>, 471 U.S. at 475, 476)).

[13] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," <u>id.</u>, absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of <u>Calder</u> and <u>Burger King</u>.  <u>Id.</u>

### 3.     Dr. Al-Obaid Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that Dr. Al-Obaid's activities – whatever they were alleged to be – had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that he was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790.  Since the defendants in Calder were the "primary participants in an alleged wrongdoing intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them ...." Id.  Even accepting arguendo plaintiffs' allegations that Dr. Al-Obaid supported Muslim charities, which in turn allegedly funded terrorist activities such as the attacks of September 11, Dr. Al-Obaid remains many steps removed from personal involvement, or primary participation, in those attacks.  Thus, plaintiffs have not met and cannot meet the third requirement of "primary participation" for the exercise of specific jurisdiction over Dr. Al-Obaid.

18

### C.     The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over Dr. Al-Obaid.

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA claims, this Court must find that the long-arm statute does not allow for the exercise of personal jurisdiction over Dr. Al-Obaid, because he lacks the requisite contacts with the relevant forum.[14] Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a tort action is permissible only if there exists some nexus between the defendant's activities and the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[15]  Here, plaintiffs have not alleged any facts showing that Dr. Al-Obaid either committed acts or omissions within the District of Columbia, or engaged in a regular course of business or other conduct within, or from, the District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it must decline to find personal jurisdiction over Dr. Al-Obaid.

---

[14] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

[15] The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

## VI.    PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON DR. AL-OBAID MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' attempts to serve Dr. Al-Obaid were defective, and mandate quashing of service of process and dismissal of the complaint against him.[16]  As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Dr. Al-Obaid, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach him.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic). See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs subsequently published a *modified* version of this notice which listed the thirty-six (36) names that appeared in the original order approved by Judge Robertson, including Dr. Al-Obaid's name, as well as eleven (11) other names not approved by Judge Robertson.  See Plaintiffs' Notice of Service by Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).

Yet, plaintiffs' proof of service demonstrates that the *International Herald Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, an extremely small number in a country with a population of more than 24 million.[17]  Further, Dr. Al-Obaid does not subscribe to

---

[16] Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, Dr. Al-Obaid was not served in a judicial district within the United States, as required under that statute. See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

[17] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an

or read the *International Herald Tribune*.  See Al-Obaid Decl. (Ex. 1), at ¶ 10.  Even more

inadequate is plaintiffs' attempted service by publication in *Al Quds Al Arabi*, a London-based

newspaper which is banned in Saudi Arabia, as noted in an article that quotes one of the

plaintiffs' attorneys for the *Havlish* case.  See P. Mendenhall, "Seeking bin Laden in the

Classifieds," MSNBC, online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24, 2003)

(attached hereto as Exhibit 3).  These undisputed facts demonstrate that plaintiffs' contention

that they have "served by publication" a number of Saudi defendants, including Dr. Al-Obaid,

see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply false.

It is settled law that service by publication is a disfavored remedy, and one that should be

employed only if the plaintiffs are unable to obtain the business or home address of the

defendant.  City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953)

("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought

leave to serve some defendants by publication, to show that Dr. Al-Obaid's addresses were

unavailable, either on the Internet, or through commercial directories, so as to make it impossible

to serve him by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on

foreign defendants.

Further, service by publication does not comport with due process where, as here, the

publication is in newspapers that either are not circulated in the defendant's community, or

otherwise do not reach the defendant:

It would be idle to pretend that publication alone as prescribed here, is a reliable

---

estimated population of 24.3 million.

> means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and **if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added).

Here, publication in *Al Quds Al Arabi* is patently inadequate, given that Dr. Al-Obaid does not reside in an country within that "newspaper's normal circulation."

Nor can plaintiffs contend that Dr. Al-Obaid, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process. Otherwise, Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, would be rendered a nullity. It is settled law in the Second Circuit that "actual notice," in whatever form, is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P. See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only remedy for failure to effect proper service of process is quashing of the service of process on Dr. Al-Obaid, whom plaintiffs have attempted to serve by publication. Baade, 175 F.R.D. at 406 ("service of process must be quashed"). Therefore, this Court should quash the attempted service of process against Dr. Al-Obaid, and dismiss the complaint against him under Rule 12(b)(5), Fed. R. Civ. P.

## **CONCLUSION**.

For the foregoing reasons, defendant Dr. Al-Obaid respectfully requests that this Court

grant his Motion to Dismiss, because he has sovereign immunity under the FSIA; this Court

lacks personal jurisdiction over him, as a non-resident defendant; and plaintiffs have not properly

served him with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Saleh Al-Obaid (D23)

DATED:  April 9, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat
_____
Alan R. Kabat