# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | 03 MDL No. 1570 (RCC) ECF Case |
| THOMAS E. BURNETT, SR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 03-CV-9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

———————————————————————————

## NOTICE OF SAUDI ARABIAN RED CRESCENT SOCIETY'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Saudi

Arabian Red Crescent Society (D211), by and through undersigned counsel, hereby makes a

limited appearance for the purpose of moving the Court, before the Honorable Richard C. Casey,

United States District Judge, at the United States District Court, Southern District of New York,

500 Pearl Street, New York, New York 10007, at a date and time to be determined by the Court,

for an order dismissing, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(5), Fed. R. Civ. P., the

Third Amended Complaint on the basis of (1) sovereign immunity under the Foreign Sovereign

Immunities Act of 1976, since the Saudi Arabian Red Crescent Society is a governmental entity

that performs core governmental functions; (2) lack of personal jurisdiction since the Saudi

Arabian Red Crescent Society lacks contacts with the United States, either generally, or

specifically related to the allegations in the complaint; and (3) improper service of process

through plaintiffs' attempts to serve the Saudi Arabian Red Crescent Society by publication in

two newspapers that its officers do not read.[1]  A memorandum of law, with exhibits, in support

of this Motion is attached hereto.

                                        Respectfully submitted,

                                        /s/ Lynne Bernabei

                                        _____

                                        Lynne Bernabei, Esquire  (LB2489)
                                        Alan R. Kabat, Esquire  (AK7194)
                                        Bernabei & Katz, PLLC
                                        1773 T Street, N.W.
                                        Washington, D.C. 20009-7139
                                        (202) 745-1942

                                        Attorneys for Defendant
                                          Saudi Arabian Red Crescent Society (D211)

DATED:  April 9, 2004

---

[1] The Saudi Arabian Red Crescent Society reserves the right to raise additional defenses, including those based on lack of justiciability and failure to state a claim, which are not subject to waiver.  See Rule 12(h)(2), (3), Fed. R. Civ. P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | ECF Case |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-CV-9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## THE SAUDI ARABIAN RED CRESCENT SOCIETY'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Saudi Arabian Red Crescent Society (D211)

DATED:  April 9, 2004

# TABLE OF CONTENTS

I.     Introduction.................................................................................................. 1

II.    Procedural History........................................................................................ 2

III.   Factual Background...................................................................................... 2

IV.    This Court Lacks Subject Matter Jurisdiction Because the Saudi Red Crescent Is
       Immune From Suit Under the Foreign Sovereign Immunities Act............................... 5

       A.     The Standard of Review.................................................................... 5

       B.     The Saudi Red Crescent is An Organ of the Saudi Government and Hence
              Immune From Suit Under the FSIA.................................................... 7

       C.     None of the Exceptions to FSIA Immunity Exists With Regard
              to the Saudi Red Crescent................................................................ 8

              1.     The Commercial Activity Exception is Not Applicable........................ 8

              2.     The Non-Commercial Tort Exception is Also Inapplicable................... 9

              3.     The State-Sponsored Terrorism Exception is Also Inapplicable............ 11

V.     This Court Lacks Personal Jurisdiction Over the Saudi Red Crescent.......................... 12

       A.     The Saudi Red Crescent Lacks the Requisite Contacts with the United States
              to Support the Exercise of General Jurisdiction.................................. 13

       B.     This Court Does Not Have Specific Jurisdiction Over the Saudi Red
              Crescent Because Plaintiffs' Claims Do Not Arise Out of or Relate to Its
              Contacts........................................................................................... 15

              1.     Plaintiffs' Claims Against the Saudi Red Crescent Do Not Arise
                    Out Of, or Relate To, Its Contacts with the United States..................... 16

              2.     The Saudi Red Crescent's Alleged Involvement with Charities that
                    Forms the Basis for the Claims Against It Were Not "Expressly
                    Aimed" at the United States.................................................... 16

i

3.    The Saudi Red Crescent was Not "Personally Involved" as a "Primary Participant" in Funding Terrorism......................................................... 18

C.    The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over The Saudi Red Crescent........................ 19

VI.    Plaintiffs' Improper Service of Process on The Saudi Red Crescent Mandates Quashing of the Service of Process and Dismissal of the Complaint............................ 20

Conclusion.................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases:**

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970)....................................................................... 14

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989)............................................................................... 5

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987)............................................................................... 17

Baade v. Price,
    175 F.R.D. 403 (D.D.C. 1997)........................................................... 22, 23

Biton v. Palestinian Interim Self-Gov't Auth.,
    No. Civ. A. 01-0382 (RMC), 2004 WL 540504 (D.D.C. March 18, 2004)......... 14

Burger King v. Rudzewicz,
    471 U.S. 462 (1985)...................................................................... 13, 16, 17

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 13 (D.D.C. 2003)........................................................ passim

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994)................................................................ 13

Calder v. Jones,
    465 U.S. 783 (1984)......................................................................... passim

Chaiken v. VV Publishing Corp.,
    119 F.3d 1018 (2d Cir. 1997)............................................................... 12

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953)............................................................................ 21

EOTT Energy Operating Ltd. v. Winterthur Swiss Ins. Co.,
    257 F.3d 992 (9th Cir. 2001)............................................................. 5, 6, 7

Employers Reinsurance Corp. v. Bryant,
    299 U.S. 374 (1937)............................................................................ 12

iii

Estates of Ungar v. Palestinian Auth. ("Ungar I"),
    153 F. Supp. 2d 76, 91-95 (D.R.I. 2001)................................................................ 14

Estates of Ungar v. Palestinian Auth. ("Ungar II"),
    No. 00-105L, 2004 WL 134034 (D.R.I. Jan. 27, 2004)........................................ 14

Ex parte McCardle,
    74 U.S. (7 Wall.) 506 (1868).................................................................................. 12

First Nat'l City Bank v. Banco Nacional de Cuba,
    406 U.S. 759 (1972)................................................................................................ 6

Gates v. Victor Fine Foods,
    54 F.3d 1457 (9th Cir.1995)................................................................................... 6

Hanson v. Denckla,
    357 U.S. 235 (1958).............................................................................................. 12

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)....................................................................................... passim

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003).......................................................................... 17, 18

In re Ski Train Fire in Kaprun, Austria,
    230 F. Supp. 2d 392 (S.D.N.Y. 2002).................................................................. 19

International Shoe Co. v. Washington,
    326 U.S. 310 (1945).............................................................................................. 12

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001).................................................................. 14

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997)......................................................................... 6, 7

Kelly v. Syria Shell Petroleum Dev. B.V.,
    213 F.3d 841 (5th Cir. 2000)......................................................................... 5, 6, 7

Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,
    507 U.S. 163 (1993)............................................................................................... 6

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001).................................................................... 6

iv

MacArthur Area Citizens Ass'n v. Republic of Peru,
      809 F.2d 918 (D.C. Cir. 1987)................................................................ 11

Martin v. Republic of South Africa,
      836 F.2d 91 (2d Cir. 1987).................................................................... 5

Milliken v. Meyer,
      311 U.S. 457 (1940)............................................................................. 12

Mullane v. Central Hanover Bank & Trust Co.,
      339 U.S. 306 (1950)............................................................................. 22

National Dev. Co. v. Triad Holding Corp.,
      930 F.2d 253 (2d Cir. 1991).................................................................. 22

Phoenix Consulting Inc. v. Republic of Angola,
      216 F.3d 36 (D.C. Cir. 2000)................................................................ 5

Republic of Argentina v. Weltover, Inc.,
      504 U.S. 607 (1992)............................................................................. 9

Robinson v. Government of Malaysia,
      269 F.3d 133 (2d Cir. 2001)............................................................... 6, 10

Ruhrgas AG v. Marathon Oil Co.,
      526 U.S. 574 (1999)............................................................................. 12

Saudi Arabia v. Nelson,
      507 U.S. 349 (1993)............................................................................. 8

SEC v. Carrillo,
      115 F.3d 1540 (11th Cir. 1997)............................................................ 18

Shaffer v. Heitner,
      433 U.S. 186 (1977)............................................................................. 16

Time, Inc. v. Simpson,
      No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).......... 18

United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n,
      33 F.3d 1232 (10th Cir. 1994)............................................................. 9

USX Corp. v. Adriatic Ins. Co.,
      345 F.3d 190 (3d Cir. 2003), cert. denied, 124 S. Ct. 1602 (2004)..................... 5, 6, 7

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
    529 U.S. 765 (2000)............................................................................................ 12

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)......................................................................... 6, 9

Voest-Alpine Trading USA Corp v. Bank of China,
    142 F.3d 887 (5th Cir. 1998)............................................................................ 9

**Statutes and Rules:**

28 U.S.C. § 1330(a)...................................................................................................... 5

Anti-Terrorism Act, 18 U.S.C. § 2331 <u>et</u> <u>seq</u>................................................... 20

    18 U.S.C. § 2334..................................................................................... 13

    18 U.S.C. § 2334(a)................................................................................ 20

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 <u>et</u> <u>seq</u>........................... 1, 5

    28 U.S.C. § 1603(b)(2).............................................................................. 5

    28 U.S.C. § 1603(d)................................................................................. 8

    28 U.S.C. § 1605(a)(2)........................................................................... 8, 9

    28 U.S.C. § 1605(a)(5).......................................................................... 8, 10

    28 U.S.C. § 1605(a)(7)(A)....................................................................... 8, 11

Federal Rules of Civil Procedure:

    Rule 4.................................................................................................. 22

    Rule 4(f)(2)........................................................................................... 22

    Rule 12(b)............................................................................................. 1

    Rule 12(b)(1).......................................................................................... 1

    Rule 12(b)(2)....................................................................................... 1, 12

Rule 12(b)(5)...................................................................................................... 1, 22, 23

Rule 12(b)(6)....................................................................................................... 13

D.C. Code Ann. § 13-423:

D.C. Code Ann. § 13-423(a)(1)-(2)....................................................................... 20

D.C. Code Ann. § 13-423(a)(3)............................................................................. 20

D.C. Code Ann. § 13-423(a)(4)............................................................................. 20

D.C. Code Ann. § 13-423(5)-(7)........................................................................... 20

**Other Materials:**

International Federation of Red Cross and Red Crescent Societies, "Directory:
    Saudi Arabian Red Crescent Society," *at* http://www.ifrc.org/address/sa.asp..... 3

International Federation of Red Cross and Red Crescent Societies, "Partnerships in
    Profile 2002-2003: Saudi Arabian Red Crescent Society," *at*
    http://www.ifrc.org/cgi/pdf_profile.pl?saprofile.pdf........................................... 3

P. Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC (Oct. 24, 2003), *at*
    http://www.msnbc.msn.com/id/3340393............................................... 21

U.S. Department of State, "Background Note, Saudi Arabia" (Nov. 2003), *at*
    http://www.state.gov/r/pa/ei/bgn/3584pf.htm....................................... 21

## I.      __INTRODUCTION.__

The Saudi Arabian Red Crescent Society ("Saudi Red Crescent") (D211) — a governmental agency that performs essential governmental functions in the Kingdom of Saudi Arabia — has been named as a defendant in this and several other lawsuits consolidated in this proceeding, evidently on no other basis than that it is a Saudi governmental entity that allegedly worked with various Muslim charities.[2]  The Saudi Red Crescent respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) improper service of process.

As set forth in greater detail below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that the Saudi Red Crescent's core governmental functions entitle it to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this court's jurisdiction over it.

This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over the Saudi Red Crescent, a foreign governmental entity whose minimal contacts with the United States were in the official capacity of its officers, or are unrelated to plaintiffs' allegations.

This Court should also find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve the Saudi Red Crescent, by publication in two journals, one banned in Saudi Arabia and the other having an exceedingly limited circulation in that country, does not comport with due process.  Thus, plaintiffs' attempted service of process on the Saudi Red Crescent is

---

[2] The Saudi Red Crescent has been named as a defendant in one or more of the other cases that are consolidated under 03 MDL 1570 (RCC).  At the present time, the plaintiffs in those cases have not attempted to serve the Saudi Red Crescent.  If the Saudi Red Crescent is served, then it will enter a limited appearance in those cases for the purpose of raising its sovereign immunity defense, and contesting personal jurisdiction and improper service of process.

improper, such that this Court must dismiss the complaint against it.

## II.    PROCEDURAL HISTORY.

The *Burnett* plaintiffs filed their first complaint on August 15, 2002 in the U.S. District

Court for the District of Columbia, and the Third Amended Complaint ("TAC") on November

22, 2002.

Prior to the consolidation of the <u>Burnett</u> case with several other related cases by the

Judicial Panel on Multidistrict Litigation, Prince Sultan bin Abdulaziz Al-Saud and Prince Turki

Al-Faisal bin Abdulaziz Al-Saud, high-ranking Saudi officials, filed motions to dismiss, based

on the defense of lack of subject matter jurisdiction based on their sovereign immunity under the

FSIA.  Judge Robertson dismissed with prejudice plaintiffs' claims against these two defendants

arising from any alleged acts that they took in their official capacity.  <u>Burnett v. Al Baraka</u>

<u>Invest. & Devel. Corp.</u>, 292 F. Supp. 2d 9, 13-21 (D.D.C. 2003).  Judge Robertson further

dismissed claims against Prince Sultan for acts in his personal capacity, holding that his minimal

contacts with the United States were unrelated to plaintiffs' allegations against him.  <u>Id.</u> at 21-23.

On March 10, 2004, the Saudi Red Crescent entered a limited appearance in <u>Burnett</u>, for

the purpose of raising the defenses set forth below.

## III.    FACTUAL BACKGROUND.

The Saudi Red Crescent was established by Royal Declaration on July 31, 1966.  <u>See</u>

Declaration of Abdul Rahman Al Swailem ("Decl.") at ¶ 3 (attached hereto as Exhibit 1).  It is

member No. 91 of the International Federation of Red Cross and Red Crescent Societies, which

is the international consortium of national humanitarian medical societies headquartered in

Geneva, Switzerland.  <u>Id.</u>

The government of the Kingdom of Saudi Arabia sponsors and supervises the Saudi Red Crescent, and appoints its directors.  Id. at ¶ 4.  The Saudi Red Crescent's functions include supporting humanitarian operations in other countries, and providing emergency medical services and related programs within Saudi Arabia.  Id.  The Saudi government funds the Saudi Red Crescent's operations within Saudi Arabia so that it may operate the nationwide ambulance center network, the health clinics for pilgrims during the *Hajj* pilgrimage season, the teaching of first aid and road safety courses, the provision of road accident emergency services, and development of disaster preparedness plans.  See International Federation of Red Cross and Red Crescent Societies, "Partnerships in Profile 2002-2003: Saudi Arabian Red Crescent Society," <http://www.ifrc.org/cgi/pdf_profile.pl?saprofile.pdf>; "Directory: Saudi Arabian Red Crescent Society," <http://www.ifrc.org/address/sa.asp> (attached as Exhibits 1-2 to Al Swailem Decl.).  Neither Saudi Red Crescent nor its officers tolerate any form of terrorism or the loss of innocent life.  Id. at ¶ 4.

The Saudi Red Crescent owns no real property in the United States.  Id. at ¶ 5.  The Saudi Red Crescent has no bank accounts, or real or personal investments in the United States, nor does it conduct business in the United States.  Id.  Officials of the Saudi Red Crescent have traveled to the United States for training and educational purposes on a few occasions.  The Saudi Red Crescent is a member of the American-Saudi Joint Committee, which helps with the Saudi Red Crescent's projects.  However, the Saudi Red Crescent does not do fundraising in the United States.  Id.

The Saudi Red Crescent has never supported the taking of innocent life, and believes that there is no justification for the tragic attacks of September 11, 2001.  Id. at ¶ 7.  Furthermore, the

Saudi Red Crescent has never supported any person or organization that it knew to participate in terrorist activities.  Id.

The Third Amended Complaint, at paragraph 95, alleges that the Saudi Red Crescent received "direct donations . . . through NCB [National Commercial Bank] facilities."  However, the Complaint makes no allegations that the Saudi Red Crescent supported terrorism, or engaged in any other activities that caused the plaintiffs' injury.  See Decl., at ¶ 8.

Paragraph 172 of the Third Amended Complaint states that the Saudi Red Crescent was one of several entities "that formed the Saudi Joint Relief Committee (or 'SJRC')," that the SJRC "has been connected to Osama bin Laden and two of his top operatives, Wa'el Hamza Jalaidin and Adel Muhammad Sadiq bin Kazem," and that Mr. Jalaidin has been designated by the U.S. government as a terrorist.  The Saudi Red Crescent did hire Mr. Jalaidin to do public relations work, from about November 1986 to about October 1989, but the Saudi Red Crescent denies that it had any knowledge that Mr. Jalaidin, during that time period, or any later time period, engaged in terrorist activities or knowingly supported terrorism.  See Decl. at ¶ 9.  Mr. Jalaidin, in fact, was not designated by the U.S. government until September 2002.  Id.

The Saudi Red Crescent also denies that it had any knowledge of the activities of Osama bin Laden, al Qaeda, or Adel Muhammad Sadiq bin Kazem, other than what is generally known publicly through the press.  At no time did the Saudi Red Crescent ever participate in, or support in anyway, terrorist activities of these individuals or al Qaeda.  Id. at ¶ 10.

## IV.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE SAUDI RED CRESCENT IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

### A.   Standard of Review.

The Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA")

confers original jurisdiction in district courts over claims for relief "with respect to which the

foreign state is not entitled to immunity under [the FSIA] or any applicable international

agreement."  28 U.S.C. § 1330(a). The FSIA provides the sole method by which a plaintiff can

assert subject matter jurisdiction over a foreign state, or one of its "agencies or instrumentalities"

in federal court.  Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).[3]

"An agency or instrumentality of a foreign state" is defined to include any entity that is

"an organ of a foreign state or political subdivision thereof, or a majority of whose shares or

other ownership interest is owned by a foreign state or political subdivision thereof."  28 U.S.C.

§ 1603(b)(2).  The Courts of Appeals for the Third, Fifth, and Ninth Circuits have all held that

"for an entity to be an organ of a foreign state, it must engage in a public activity on behalf of the

foreign government."  USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 207 (3d Cir. 2003), cert.

denied, 124 S. Ct. 1602 (2004); see also EOTT Energy Operating Ltd. v. Winterthur Swiss Ins.

Co., 257 F.3d 992, 997 (9th Cir. 2001); Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841,

846-47 (5th Cir. 2000).  These courts employ a flexible analysis to determine whether an entity

is an organ of a foreign state, in recognition of the fact that the legislative history of the FSIA

---

[3] As Judge Robertson observed in Burnett, 292 F. Supp. 2d at 13-14, the FSIA is, in effect, "a series of exceptions to a general rule of immunity for foreign sovereigns."  Its purpose is two fold: to prevent federal courts from interfering with the constitutional authority of the Executive Branch to conduct foreign affairs, and to extend foreign states and their instrumentalities the full benefits of immunity from trial.  See Martin v. Republic of South Africa, 836 F.2d 91, 92 (2d Cir. 1987); see also Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).

"suggests that Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly." USX Corp., 345 F.3d at 206 (quoting Gates v. Victor Fine Foods, 54 F.3d 1457, 1460 (9th Cir.1995)), and that a primary purpose of the FSIA is to make it difficult for private litigants to bring foreign governments into court. USX Corp., 345 F.3d at 207 (citing First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 762 (1972)). Among the factors that courts consider to determine whether a defendant is an "instrumentality" of a foreign sovereign are the following: (1) how the entity was created, (2) the purpose of its activities, (3) its independence from the government, (4) the level of government financial support, and (5) whether the entity holds exclusive rights to some right in the foreign country. EOTT Energy, 257 F.3d at 997; Kelly, 213 F.3d at 846-47; USX Corp., 345 F.3d at 209.

When addressing motions to dismiss based on sovereign immunity, the court "must engage in sufficient pretrial factual and legal determinations to "satisfy itself of its authority to hear the case before trial." Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997); see also Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).[4] The court also must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). The Second Circuit has held that when a defendant establishes a prima facie case that it is a sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions. Virtual Countries, Inc. v. Republic of South Africa,

---

[4] This is contrary to the general rule that a court, when reviewing a motion to dismiss, must accept as true, all well pled factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164 (1993).

300 F.3d 230, 241 (2d Cir. 2002).

**B.    The Saudi Red Crescent is An Organ of the Saudi Government and Hence Immune From Suit Under the FSIA.**

Through the affidavit of its President, Dr. Abdul Rahman Al Swailem, the Saudi Red Crescent has established that it is an "organ" of the Saudi government, and hence immune from suit under the FSIA.  The Saudi Red Crescent was established by a royal decree.  Further, the Saudi government appoints its directors.  The Saudi Red Crescent's operations within Saudi Arabia are funded by the Saudi government for purposes of meeting several important national interests, including operating the nationwide ambulance network, operating health clinics for pilgrims during the *Hajj* season, teaching first aid and road safety courses, providing accident emergency services, and developing national disaster preparedness plans.

Thus, the Saudi Red Crescent clearly meets all five of the factors that courts use to determine whether an entity is an organ of a foreign government, thus establishing a prima facie case of immunity under the FSIA.  For example, the Fifth Circuit recently held that, since this analytical framework is somewhat flexible, the foreign defendant made a prima facie case of sovereign immunity where only two of the five possible factors were present.  Kelly, 213 F.3d at 848.  Similarly, the Third Circuit, which had expanded the aforementioned five factors to seven, held that an Irish defendant satisfied five of the seven factors, finding that the defendant in that case "clearly [was] an organ of the Republic of Ireland."  USX Corp., 345 F.3d at 213-14.  The Ninth Circuit, in EOTT Energy, although remanding for further factual determination, "effectively found that the only factor weighing against a finding of organ status is the status of [defendant's] employees."  Id. at 214 (citing EEOT Energy, 257 F.3d at 998-99).

### C.     None of the Exceptions to FSIA Immunity Exists With Regard to the Saudi Red Crescent.

Because the Saudi Red Crescent has shown that it is an organ of the Saudi government, in order to maintain an action against it, plaintiffs must come forward with evidence to show that immunity should not be granted, under one of the three FSIA's exceptions.  The only exceptions cited by plaintiffs in their Complaint are: 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort" exception), or 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Plaintiffs cannot meet their burden of showing the applicability of any of these exceptions..

### 1.     The Commercial Activity Exception Is Not Applicable.

First, the plaintiffs cannot credibly rely on the "commercial activity" exception, which provides that a foreign state is not immune from the jurisdiction of the district courts in any case:

> (2) in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of a foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  A "commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  As the Supreme Court has held, a "commercial activity" is one undertaken by a "private player within the market."  Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993).

None of the generalized allegations against the Saudi Red Crescent involves a "commercial activity."  The allegations concern the Saudi Red Crescent's receipt of donations through the National Commercial Bank, the fact that the Saudi Red Crescent was one of several

entities that formed the Saudi Joint Relief Committee, and the fact that fifteen years ago it employed Mr. Jalaidan to do public relations work. Even if any of these activities could be considered commercial in nature (which they are not), the plaintiffs have not pled any facts showing that this purported commercial activity "cause[d] a direct effect in the United States," as Section 1605(a)(2) requires. As the Second Circuit recently held, "'an effect is direct if it follows as an immediate consequence of the defendant's activity.'" Virtual Countries v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis in original)). Hence, "'Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.'" Id. (quoting United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n, 33 F.3d 1232, 1238 (10th Cir. 1994)); see also Voest-Alpine Trading USA Corp v. Bank of China, 142 F.3d 887, 894-95, n.10 (5th Cir. 1998) (no jurisdiction over foreign states "whose acts cause only speculative, generalized, immeasurable, and ultimately unverifiable effects in the United States"). Where there are intermediate actors between the acts of the defendant and plaintiffs' alleged injuries, the "direct effect" requirement is not met. Virtual Countries, 300 F.3d at 237.

Since plaintiffs have not alleged any facts supporting a claim that the Saudi Red Crescent conducted a "commercial activity" that had a "direct effect" in the United States, the "commercial activities" exception is plainly inapplicable.

## 2. The Non-Commercial Tort Exception is Also Inapplicable.

The second exception to FSIA immunity cited by plaintiffs is the exception for matters "in which money damages are sought against a foreign state for personal injury or death, or

9

damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).

First, the plaintiffs have failed to allege any specific facts that the Saudi Red Crescent committed tortious acts, or that those tortious acts caused their injuries.  They have failed to identify a single action taken (or not taken) by the Saudi Red Crescent that was tortious or that caused any injury to the plaintiffs.  As the Second Circuit observed in <u>Robinson</u>:

> **. . . to sustain jurisdiction on generic allegations of [negligence] absent an assertion or evidence of a factual predicate for such jurisdiction would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints–and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law.**  This is at odds with the goal under the FSIA to enable a foreign government to obtain an early dismissal when the substance of the claim does not support jurisdiction.

<u>Robinson</u>, 269 F.3d at 146 (emphasis added).

In this case, plaintiffs have not even set forth vague and conclusory allegations of tortious actions, but merely joined the Saudi Red Crescent, an important Saudi Arabian governmental agency, which does humanitarian work much like that of the American Red Cross, with persons or groups they allege to be terrorists.  Without more, the plaintiffs are simply asking the court to imagine some tort that the Saudi Red Crescent "could have committed," an approach expressly prohibited by <u>Robinson</u>.

Second, plaintiffs have failed to meet the causation requirement, set forth in <u>Robinson</u>, <u>supra</u>.  As Judge Robertson observed in <u>Burnett</u>, the "'tortious act' exception was designed generally to remove immunity for cases arising from traffic accidents. . . . the legislative history

counsels that the exception should be narrowly construed so as to not encompass the farthest reaches of common law.'"  Burnett, 292 F. Supp. 2d at 19 (quoting MacArthur Area Citizens Ass'n v. Republic of Peru, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Thus, Judge Robertson concluded that an allegation that a defendant funded charities, who in turn allegedly funded those who carried out the September 11 terrorist attacks, "would stretch the causation requirement of the non-commercial tort exception [of the FSIA] not only to 'the farthest reaches of the common law' but perhaps beyond to terra incognita."  Id. at 20.

The same reasoning applies with respect to the allegations against the Saudi Red Crescent.  If plaintiffs are claiming that somehow the Saudi Red Crescent employed, and paid, an individual who over ten years later was designated a terrorist by the United States government, this Court must find that its connection to the September 11 attacks is simply too tangential to meet the requirements of the "non-commercial tort" exception.

**3.     The State-Sponsored Terrorism Exception is Also Inapplicable.**

Even if plaintiffs were to allege that the Saudi Red Crescent provided material support to terrorists who allegedly caused their injuries, the state-sponsored terrorism exception is inapplicable.  Congress explicitly assigned "material support" claims to its own exception, 28 U.S.C. § 1605(a)(7)(A).  However, that exception does not apply here, because Saudi Arabia has not been designated as a state sponsor of terrorism, which is a prerequisite for the application of this exception.  See Burnett, 292 F. Supp. 2d at 20 n.5.  Indeed, the position of the United States government is that Saudi Arabia is an ally in the war against terrorism.

11

**V.      THIS COURT LACKS PERSONAL JURISDICTION OVER THE SAUDI RED CRESCENT.**

This Court must dismiss plaintiffs' Complaint against the Saudi Red Crescent, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  When there is no jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  Vermont Agency of Natural Res. v. United States *ex rel.* Stevens, 529 U.S. 765, 778-79 (2000) (quoting *Ex parte* McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Personal jurisdiction "is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'"  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)).

Before this Court may exercise personal jurisdiction over the Saudi Red Crescent, a non-resident foreign defendant, due process requires that the defendant have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).  The defendant must be shown to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction on a non-resident defendant can be found under either a "general" jurisdiction theory or a "limited" (or "specific") jurisdiction theory, depending on the nature of the defendant's contacts with the forum.  Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1027 (2d Cir. 1997).  A defendant whose contacts with the forum are substantial, continuous, and systematic, may be subject to a court's general jurisdiction, regardless of whether or not the allegations against it concern matters arising out of his contacts with the forum.  Helicopteros

12

<u>Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984).  If the defendant's contacts

with the forum do not rise to that level, the court may exercise specific jurisdiction over it only if

the cause of action arises out of, or has a substantial connection with, his contacts with the

forum, <u>and</u> <u>additionally</u>, if the defendant was a primary participant in tortious acts expressly

aimed at the forum.  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474, 487 (1985); <u>Calder v. Jones</u>,

465 U.S. 783, 789-90 (1984).

The Saudi Red Crescent's contacts with the United States fail to meet the standard for

either general or specific jurisdiction.

### A.   The Saudi Red Crescent Lacks the Requisite Contacts with the United States to Support the Exercise of General Jurisdiction.

Of the statutes enumerated in plaintiffs' complaint, only one is relevant to establishing

personal jurisdiction over the Saudi Red Crescent through a general jurisdiction theory:  18

U.S.C. § 2334, the jurisdictional provision of the Anti-Terrorism Act (ATA).  <u>Id.</u> ¶ 1.[5]  For this

Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's

contacts with the forum must be "continuous and systematic."  <u>Helicopteros Nacionales</u>, 466

U.S. at 415-16.  As Judge Robertson has previously concluded in this case, "'[b]ecause the

[ATA] provides for nationwide service of process,' the relevant Due Process inquiry for personal

jurisdiction purposes, *assuming that the defendant has been properly served*, 'is whether the

defendant has minimum contacts with the United States.'"  <u>Burnett</u>, 292 F. Supp. 2d at 21

(quoting <u>Busch v. Buchman, Buchman & O'Brien, Law Firm</u>, 11 F.3d 1255, 1258 (5th Cir.

---

[5] The Saudi Red Crescent does not concede that plaintiffs have stated a viable ATA claim against it, and reserves the right to move to dismiss the ATA claim for failure to state a claim, under Rule 12(b)(6), Fed. R. Civ. P.

1994)) (emphasis added).[6]  In ATA cases, such as this one, each defendant must have sufficient minimum contacts with the United States for the exercise of personal jurisdiction.  See Estates of Ungar v. Palestinian Auth., No. 00-105L, 2004 WL 134034, at *6, *21-*22 (D.R.I. Jan. 27, 2004) ("Ungar II"); Biton v. Palestinian Interim Self-Gov't Auth., No. Civ. A. 01-0382 (RMC), 2004 WL 540504, at *3-*5 (D.D.C. March 18, 2004); Estates of Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 91-95 (D.R.I. 2001) ("Ungar I").  In other ATA cases, the courts have found that the number and type of contacts that the Saudi Red Crescent has had with the United States are not sufficient to establish general personal jurisdiction.  In Ungar II, the court held that the plaintiffs did not show that the individual defendants "engaged in the kind of systematic and continuous activity in the United States necessary to support the exercise of general personal jurisdiction over them."  Ungar II, 2004 WL 134034, at *22; see also Ungar I, 153 F. Supp. 2d at 95 (same holding as applied to a different set of individual defendants).  Similarly, in Biton, the court dismissed the individual defendants who "admittedly" did not have "minimum contacts with the United States that square with the Due Process clause."  Biton, 2004 WL 540504, at *5.

In other types of cases, courts have consistently held that even as many *as several visits per year* to the forum did *not* rise to the level of the requisite systematic and continuous activity in the forum that would allow the exercise of personal jurisdiction.  See, e.g., Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").

---

[6] The Saudi Red Crescent was not properly served, as set forth in Part VI, *infra*.

Here, officials of the Saudi Red Crescent have visited the United States on a few occasions, only for official training and educational purposes.  <u>See</u> Al Swailem Decl. (Ex. 1), at ¶ 5.  These few visits – solely for official government business – do not begin to rise to the level of "systematic and continuous activity" that would allow the exercise of personal jurisdiction over the Saudi Red Crescent.  Moreover, the Saudi Red Crescent does not have any property, bank accounts, or investments in the United States, or conduct any business in the United States, <u>id.</u>, which eliminates any other basis for this Court to exercise jurisdiction over it.

**B.      This Court Does Not Have Specific Jurisdiction over the Saudi Red Crescent Because Plaintiffs' Claims Do Not Arise out of or Relate to Its Contacts.**

In order for this Court to exercise personal jurisdiction over the Saudi Red Crescent under a specific, or limited, theory of personal jurisdiction, plaintiffs' claims against it must arise out of, or relate to, its contacts with the United States.  <u>Helicopteros Nacionales</u>, 466 U.S. at 414. Where, as here, a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" is not established unless the defendant "expressly aimed" its allegedly tortious conduct at the forum, <u>see</u> <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm from which the claim arose.  <u>Id.</u> at 790.[7]  As set forth below, because plaintiffs have not met these three requirements, this court clearly cannot exercise "specific" personal jurisdiction over the Saudi Red Crescent.

---

[7] Plaintiffs themselves have previously admitted that "<u>Calder</u> provides the relevant analysis" with respect to determining whether personal jurisdiction could be exercised over non-resident defendants.  <u>See, e.g.</u>, Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant The National Commercial Bank, at 44-46 (Dec. 22, 2003) (<i>Burnett</i> D.D.C. Docket No. 435) (applying <u>Calder</u>).

1.      **Plaintiffs' Claims Against the Saudi Red Crescent Do Not Arise Out Of, or Relate To, Its Contacts with the United States.**

As a threshold issue, in order to exercise specific jurisdiction, the plaintiffs' claims against a defendant must be related to that defendant's contacts with the forum.  Helicopteros Nacionales, 466 U.S. at 414.  The Supreme Court explained this prerequisite for specific jurisdiction over a non-resident defendant in this way:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.

Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  Here, plaintiffs' allegations against the Saudi Red Crescent apparently concern its work with the Saudi Joint Relief Committee, and its employment of Mr. Jalaidin.  See TAC at ¶ 172; Plaintiffs' More Definite Statement (Jameel), ¶¶ 17, 21-24.  However, plaintiffs do not plead any facts showing that their claims against the Saudi Red Crescent – whatever they are – arise out of, or relate to, its contacts with the United States.

2.      **The Saudi Red Crescent's Alleged Involvement with Charities That Forms the Basis for the Claims Against It Were Not "Expressly Aimed" At the United States.**

The Supreme Court, in Calder, allowed the exercise of personal jurisdiction over two individual non-resident defendants in a tort action for libel, because "their intentional, and allegedly tortious, actions were **expressly aimed** at California," the plaintiff's state of residence. Calder, 465 U.S. at 789 (emphasis added).  For that reason, the Supreme Court held that personal jurisdiction over the defendants "is proper in California based on the 'effects' of their Florida conduct in California."  Id.  One year later, in Burger King, the Supreme Court similarly allowed the exercise of personal jurisdiction over a non-resident defendant in a breach of franchise case,

16

where that defendant had "purposefully directed" his efforts towards the forum state, thereby

"purposefully establishing minimum contacts" with that forum.  Burger King, 471 U.S. at 476.

However, the Court was careful to note that even the "foreseeability of injury" to the plaintiff in

his home forum was not sufficient to establish personal jurisdiction over a non-resident

defendant.  Burger King, 471 U.S. at 474-75.[8]

  Under this Supreme Court precedent, plaintiffs have not met their burden to show that the

Saudi Red Crescent "expressly aimed" harm at the United States, or committed "some act"

"purposefully directed" at the United States.  The critical inquiry is not whether the plaintiffs

were injured in their home forum, but whether the defendant's intentional wrongdoing is

"**expressly directed** at [the] forum."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204,

208 (2d Cir. 2003) (emphasis added) (citing Calder).

  In a prior ruling in this case, Judge Robertson held that Calder and Burger King

mandated the dismissal of Prince Sultan, because plaintiffs failed to allege that Prince Sultan's

"'private' actions in funding charities were 'expressly aimed' or 'purposefully directed' at the

United States," and plaintiffs' generic allegations about all defendants did not overcome the

absence of purposeful availment on Prince Sultan's part.  Burnett, 292 F. Supp. 2d at 23.[9]

  The Saudi Red Crescent had no knowledge of, or involvement with, any alleged terrorist

---

[8] Subsequently, the Supreme Court reiterated its "purposefully directed" standard in holding that a defendant's mere awareness that its activities "may or will" affect the forum state did not suffice to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987) (citing Burger King, 471 U.S. at 475, 476)).

[9] The court further found that plaintiffs' contention "that anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States," id., absent purposeful availment, fell far short of meeting the "expressly aiming" requirement of Calder and Burger King.  Id.

17

activities of the Saudi Joint Relief Committee, the Committee's officers, or Mr. Jalaidin, to the extent any of these entities engaged in any such activities.  Further, the Saudi Red Crescent focuses its humanitarian work on Saudi Arabia.  There is no way to show that the Saudi Red Crescent directed any activities toward the United States, much less that it engaged in actions that are "purposefully directed" to cause harm to the United States.  Therefore, plaintiffs' failure to allege any nexus between its claims against the Saudi Red Crescent, and the organization's contacts with the United States, is fatal to any claim of specific jurisdiction.

### 3.    The Saudi Red Crescent Was Not "Personally Involved" As a "Primary Participant" in Funding Terrorism.

To exercise specific jurisdiction over a non-resident defendant, plaintiffs must also set forth sufficient allegations that the defendant was a "primary participant" in the alleged acts. See, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (personal jurisdiction permissible if "the defendant is a primary participant in intentional wrongdoing"); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant was not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See, e.g., Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Even if this Court were to find that the Saudi Red Crescent's activities had some relation to the United States, it must still find that there is no factual basis in the Third Amended Complaint for concluding that it was "personally involved" or a "primary participant" in funding the terrorist attacks of September 11.  The Supreme Court, in Calder, emphasized that "[e]ach defendant's contacts with the forum . . . must be assessed individually." Calder, 465 U.S. at 790. Since the defendants in Calder were the "primary participants in an alleged wrongdoing

18

intentionally directed at a California resident," the Supreme Court held that "jurisdiction is proper over them."  Id.  Even accepting *arguendo* plaintiffs' allegations that the Saudi Red Crescent supported Muslim charities, which in turn allegedly funded terrorist activities such as the attacks of September 11, the Saudi Red Crescent remains many steps removed from *personal* involvement, or *primary* participation, in those attacks.  Thus, plaintiffs have failed to meet the third requirement for the exercise of specific jurisdiction over the Saudi Red Crescent.

### C.     The Forum's Long-Arm Jurisdiction Statute Does Not Allow for the Exercise of Personal Jurisdiction over the Saudi Red Crescent.

Although the plaintiffs have not invoked the forum's long arm jurisdiction statute, which would apply to plaintiffs' common-law claims if there were no jurisdiction over their ATA claims, this Court must find that the long-arm statute does not allow for the exercise of personal jurisdiction over the Saudi Red Crescent, because it lacks the requisite contacts with the relevant forum.[10]  Under the D.C. long arm statute, personal jurisdiction over a non-resident defendant in a tort action is permissible only if there exists some nexus between the defendant's activities and the forum, by either of two means:

> [by] causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> [by] causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

---

[10] In a proceeding such as this one, which was transferred from another forum, it is the long-arm jurisdiction statute of the forum where the case was originally filed (District of Columbia) that governs this analysis, and not that of transferor forum (New York).  See *In re* Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002) ("The forum state in an MDL proceeding is the district court where the action was originally filed, and therefore that state's law must be applied.").

D.C. Code Ann. § 13-423(a)(3), (4) (2001 ed.).[11]  Here, plaintiffs have not alleged any facts

showing that the Saudi Red Crescent either committed acts or omissions within the District of

Columbia, or engaged in a regular course of business or other conduct within, or from, the

District of Columbia.  Therefore, even if this Court were to apply the D.C. long arm statute, it

must decline to find personal jurisdiction over the Saudi Red Crescent.

## VI.   PLAINTIFFS' IMPROPER SERVICE OF PROCESS ON THE SAUDI RED CRESCENT MANDATES QUASHING OF THE SERVICE OF PROCESS AND DISMISSAL OF THE COMPLAINT.

Plaintiffs' attempts to serve the Saudi Red Crescent were defective, and mandate

quashing of service of process and dismissal of the complaint against it.[12]  As plaintiffs' own

filings demonstrate, plaintiffs attempted to serve the Saudi Red Crescent, and a number of other

defendants, by publication in two newspapers that plaintiffs knew, or should have known, were

unlikely to reach it.  Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36)

named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in

Arabic).  See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to

Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24,

2003) (*Burnett* D.D.C. Docket No. 95).  After obtaining Judge Robertson's approval, plaintiffs

subsequently published a *modified* version of this notice which listed the thirty-six (36) names

that appeared in the original order approved by Judge Robertson, as well as eleven (11) names

---

[11]  The other provisions of the D.C. long arm statute, D.C. Code Ann. § 13-423(a)(1)-(2) and (5)-(7), are clearly inapplicable.

[12]  Although the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq., has a nationwide service of process provision, the Saudi Red Crescent was not served in a judicial district within the United States, as required under that statute.  See 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").  Therefore, this provision for nationwide service of process does not govern in this instance.

not approved by Judge Robertson, including that of the Saudi Red Crescent.  <u>See</u> Plaintiffs'

Notice of Service by Publication (Aug. 8, 2003) (*Burnett* D.D.C. Docket No. 244).  Therefore, as

a first matter, the plaintiffs have never obtained permission to serve the Saudi Red Crescent by

publication.

Second, plaintiffs' proof of service demonstrates that the *International Herald Tribune*

has a total circulation of only 199 in Saudi Arabia, <u>id.</u> at Ex. A, an extremely small circulation in

a country with a population of more than 24 million.[13]  Further, the officials of the Saudi Red

Crescent do not subscribe to or read the *International Herald Tribune*.  <u>See</u> Al Swailem Decl.

(Ex. 1), at ¶ 6.  Even more inadequate is plaintiffs' attempted service by publication in *Al Quds*

*Al Arabi*, a London-based newspaper which is banned in Saudi Arabia, as noted in an article that

quotes one of the plaintiffs' attorneys for the *Havlish* case.  <u>See</u> P. Mendenhall, "Seeking bin

Laden in the Classifieds," MSNBC, online at: http://www.msnbc.msn.com/id/3340393 (Oct. 24,

2003) (attached hereto as Exhibit 2).  These undisputed facts demonstrate that plaintiffs'

contention that they have "served by publication" a number of Saudi defendants, including the

Saudi Red Crescent, <u>see</u> Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply

false.

Third, it is settled law that service by publication is a disfavored remedy, and one that

should be employed only if the plaintiffs are unable to obtain the business or home address of the

defendant.  <u>City of New York v. New York, N.H. & H.R. Co.</u>, 344 U.S. 293, 296 (1953)

("Notice by publication is a poor and sometimes a hopeless substitute for actual service of

---

[13] This Court can take judicial notice of the U.S. Department of State's "Background Note, Saudi Arabia," online at: <http://www.state.gov/r/pa/ei/bgn/3584pf.htm> (Nov. 2003), which states that Saudi Arabia has an estimated population of 24.3 million.

notice.  Its justification is difficult at best.").  Plaintiffs made no attempt, at the time they sought

leave to serve some defendants by publication, to show that the Saudi Red Crescent's addresses

were unavailable, either on the Internet, or through commercial directories, so as to make it

impossible to serve it by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for

service on foreign defendants.

Fourth, service by publication does not comport with due process where, as here, the

publication is in newspapers that either are not circulated in the defendant's community, or

otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable
> means of acquainting interested parties of the fact that their rights are before the
> courts. . . . Chance alone brings to the attention of even a local resident an
> advertisement in small type inserted in the back pages of a newspaper, and **if he
> makes his home outside the area of the newspaper's normal circulation the
> odds that the information will never reach him are large indeed.**

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) (emphasis added).

Here, publication in *Al Quds Al Arabi* is patently inadequate, given that the Saudi Red Crescent

and its officials do not reside in an country within that "newspaper's normal circulation."

Fifth, the plaintiffs cannot contend that the Saudi Red Crescent, by entering an

appearance, has "actual notice" which somehow substitutes for proper service of process.

Otherwise, Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of

process, would be rendered a nullity.  It is settled law in the Second Circuit that "actual notice"

— whatever that may be — is no substitute for proper service of process in compliance with

Rule 4, Fed. R. Civ. P.  See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256

(2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see

also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that

there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.").

The only remedy for failure to effect proper service of process is quashing of the service of process on the Saudi Red Crescent.  <u>Baade</u>, 175 F.R.D. at 406 ("service of process must be quashed").  Therefore, this Court should quash the attempted service of process against the Saudi Red Crescent, and dismiss the complaint against it under Rule 12(b)(5), Fed. R. Civ. P.

<u>**CONCLUSION**</u>.

For the foregoing reasons, defendant Saudi Red Crescent respectfully requests that this Court grant its Motion to Dismiss, because it has sovereign immunity under the FSIA; this Court lacks personal jurisdiction over it, as a non-resident defendant; and plaintiffs have not properly served it with the complaint in this action.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Saudi Arabian Red Crescent Society (D211)

DATED:  April 9, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, and by first class-mail, postage prepaid, on any parties not participating in the ECF system.


/s/ Alan R. Kabat
_____

Alan R. Kabat