UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                  :

IN RE TERRORIST ATTACKS ON       :
SEPTEMBER 11, 2001             :         03 MD 1570 (RCC)
                                    :

------------------------------------------------------------x
                                  :

THOMAS E. BURNETT, SR., et al.,   :

          Plaintiffs,      :         02 CV 6977 (RCC)
                                    :

              v.              :

AL BARAKA INVESTMENT AND     :
DEVELOPMENT CORP., et al.,     :
                                    :

          Defendants.      :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. ........................................... 1

ARGUMENT ............................................................................................................ 3

I      THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A. ............... 4

      A.    This Court Cannot Exercise Personal Jurisdiction Over DMI S.A.
           Because Plaintiffs Have Not Made a Prima Facie Case For Jurisdiction. ...................... 4

      B.    Plaintiffs' General Allegations Of Actions By DMI S.A. Allegedly
           Undertaken Through Supposed Subsidiaries Are Insufficient To Support
           An Assertion Of Personal Jurisdiction Over DMI S.A. ....................................... 7

      C.    Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and
           Abetting Provide No Basis for Personal Jurisdiction Over DMI S.A. ...................... 9

II     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ........... 11

      A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any
           Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries. ............................ 13

      B.    Plaintiffs Have Failed To Plead Facts Sufficient To Make Out Any Of
           The Thirteen Causes Of Action Against DMI S.A. ............................................ 14

           1.    Count Two -- Torture Victims Protection Act. ................................. 15
           2.    Count Three -- Anti-Terrorism Act. .............................................. 16
           3.    Count Four -- Alien Tort Claims Act. ........................................... 17
           4.    Count Five -- Wrongful Death. .................................................... 17
           5.    Count Six -- Negligence. ............................................................ 18
           6.    Count Seven -- Survival. ............................................................ 19
           7.    Count Eight -- Negligent and/or Intentional Infliction of
               Emotional Distress. ................................................................... 19
           8.    Count Nine -- Conspiracy. ......................................................... 20
           9.    Count Ten -- Aiding and Abetting. ............................................... 22
           10.   Counts Eleven through Thirteen -- RICO. ..................................... 23
           11.   Count Fourteen -- Punitive Damages. ........................................... 24

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........ 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at \*3 (Va. Cir. Ct.
Jan. 29, 1992) ........................................................................................................... 22

In re American Express Co. S'holder Litigation, 39 F.3d 395 (2d Cir. 1994) .................... 13, 14

Asahi Metal Industrial Co. v. Superior Ct., Solano Cty., 480 U.S. 102 (1987) .......................... 3

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir.
1999) ..................................................................................................................... 4, 6, 9

Bao Ge v. Li Peng, 201 F. Supp. 2d 14 (D.D.C. 2000), aff'd, 2002 WL 1052012 (D.C.
Cir. 2002) .............................................................................................................. 15, 17

Beanal v. Freeport-McMoRan, Inc., 969 F. Supp. 362 (E.D. La. 1997), aff'd on other
grounds ....................................................................................................................... 15

Benas v. Baca, 2001 WL 485168, 4 (C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx.
753 ............................................................................................................................ 15

Board of Dirs. of the Lesner Pointe Condominium v. Harbour Point Bldg. Corp.,
2002 WL 32072394, 8 (Va. Cir. Ct.) ............................................................................. 21

Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and
Development, 291 F.3d 1000 (7th Cir. 2002) ................................................................. 16

Browning v. Clinton, 292 F.3d 235 (D.C. Cir. 2002) ....................................................... 14

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ................................................. 5, 6, 7

Burnett v. Al Baraka Investment and Development Corp., 274 F. Supp. 2d 86
(D.D.C. 2003) ............................................................................ 12, 14, 16, 18, 23

Burnett v. Al Baraka Investment and Development Corp., 292 F. Supp. 2d 9
(D.D.C. 2003) .......................................................................................................... 5, 7

Calder v. Jones 465 U.S. 783 (1984) ............................................................................ 5, 7

In re Cendant Corp. Security Litigation, 190 F.R.D. 331 (D.N.J. 1999) ............................ 11, 15

Chew v. Dietrich, 143 F.3d 24 (2d Cir. 1998) ..................................................................... 5

Chudasama v. Mazda Motor Corp., 123 F.3d 1353 (11th Cir. 1998) ...................................... 12

Cohen v. Standard Bank Inv. Corp., Ltd., 1998 WL 782024, at \*7 (S.D.N.Y., Nov. 6,
1998) ......................................................................................................................... 18

ii

Cooper Industrial, Inc. v. Leatherman Tool Group, 532 U.S. 424 (2001) ................................ 23

DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65 (2d Cir. 1996), cert. denied, 519
    U.S. 1007, 117 S.Ct. 509 (1996) ....................................................................11, 14, 15, 18, 23

Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115 (D.D.C. 2003) ........................................ 17

Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220 (4th Cir. 2002)........................ .................... 18

Electronic Communications Corp. v. Toshiba America, 129 F.3d 240 (2d Cir. 1997) .......... 24

Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980) .................................................................. 15

Flanagan v. Shively, 783 F. Supp. 922 (M.D. Penn. 1992)........................................................ 21

Flores v. Southern Peru Copper Corp., 343 F.3d 140 (2d Cir. 2003) ...................................15, 17

Friedman v. Bayer Corp., 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999) ..................... 15

Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999)............11, 12

Grove Press, Inc. v. Angleton, 649 F.2d 121 (2d Cir. 1981) ......................................................... 9

Hanoch Telegraph-Oren v. Libyan Arab Republic, 517 F. Supp. 542 (D.D.C. 1981),
    aff'd sub nom.................................................................................................................................... 17

Holmes v. Security Investor Prot. Corp., 503 U.S. 258, 112 S. Ct. 1311 (1992) ..................... 13

Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June
    27, 1994) ....................................................................................................................................... 23

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998) ..................................... 4, 6, 8, 10

Johnston v. Norton, 1993 WL 465333, 15 (S.D.N.Y.)............................................................... 22

Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995), reh'g denied, 74 F.3d 377 (2d Cir.
    1996) ......................................................................................................................................15, 17

Kittay v. Kornstein, 230 F.3d 531 (2d Cir. 2000)........................................................................ 12

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229 (2d
    Cir. 1999)...................................................................................................................................... 13

Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972) ......... 6, 7

Lehigh Valley Industrial, Inc. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975)..........................6, 9, 10

iii

In re Livent, Inc. Noteholders Securities Litigation, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................................................... 14

Madison Models, Inc. v. Casta, 2003 WL 21978628, 6 (S.D.N.Y. Aug. 20, 2003).................. 10

Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246 (S.D.N.Y. 2003), quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994).................. .......4, 6

Mortise v. United States, 102 F.3d 693 (2d Cir. 1996) .............................................................. 20

Moss v. Morgan Stanley Inc., 719 F.2d 5 (2d. Cir. 1983)........................................................... 23

In re NASDAQ Market-Makers Antitrust Litigation, 894 F. Supp. 703 (S.D.N.Y. 1995), citing Associated General Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S. Ct. 897 (1983)................................................. 21

Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138 (2d Cir. 2003)............. 24

Papasan v. Allain, 478 U.S. 265 (1986) .................................................................................... 14

Pittman v. Grayson, 149 F.3d 111 (2d Cir. 1998) ...............................................................10, 22

Powell v. Jarvis, 460 F.2d 551 (2d Cir. 1972)............................................................................ 11

Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6 (S.D.N.Y. Feb. 18, 1997) . ............................................................................................................... 8

Renner v. Chase Manhattan Bank, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) ............ 18

Ross v. UKI Ltd., 2004 WL 384885 at *3 (S.D.N.Y. Mar. 1, 2004).......................................4, 6

Ruffolo v. Oppenheimer & Co., Inc., 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991) .......... 20

S.E.C. v. Unifund SAL, 910 F.2d 1028 (2d Cir. 1990) ............................................................... 7

Second Amend. Foundation v. United States Conf. of Mayors, 274 F.3d 524 ......................... 9

Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1  (Va. Cir. Ct. Sept. 27, 2002) ..................................................................................... 22

Simon v. Philip Morris, 86 F. Supp. 2d 95 (E.D.N.Y. 2000) ..................................................... 9

In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 2004 WL 515534, at *6 (S.D.N.Y. Mar. 16, 2004)................................................................................... 10

Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217 (S.D.N.Y. 2003) .................... 16

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002) .......................... 11, 14, 15

iv

Sonds v. St. Barnabas Hospital Corr. Health Svcs., 151 F. Supp. 2d 303 (S.D.N.Y. 2001) .................................................................................................................... 14

Stauffacher v. Bennet, 969 F.2d 455 (7th Cir. 1992) ........................................... 9

Telegraph-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984) ............... 17

Terrydale Liquidating Trust v. Gramlich, 549 F. Supp. 529 (S.D.N.Y. 1982) .......... 10

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135 (2d Cir. 2001) ............ 5

U.S. v. Yousef, 327 F.3d 56 (2d Cir. 2003) ......................................................... 16

United States v. Uccio, 940 F.2d 753 (2d Cir. 1991) ........................................... 23

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230 (2d Cir. 2002).................. 11

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, (2d Cir. 1984) ........................................................................................................ 8

Whitaker v. American Telecasting. Inc., 261 F.3d 196 (2d Cir. 2001) ..................... 4

Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887 at *3 (S.D.N.Y. Feb. 28, 2002) 3 ...........................................................................................................15, 17

York v. Association of the Bar of the City of New York, 286 F.3d 122 (2d Cir. 2002) ......... 14

## STATE CASES

Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 503 N.E.2d 102 (1986).......................................................................................................... 21

Becker v. Schwartz, 46 N.Y.2d 401, 386 N.E.2d 807 (1978), citing Restatement (Second) of Torts § 281 (1965) ......................................................................... 18

Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 523 S.E.2d 826 (2000)..............18, 19

Guadagnoli v. Seaview Radiology, P.C., 184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000).......................................................................................................... 18

Hechler Chevrolet, Inc. v. General Motors Corp., 337 S.E.2d 744 (1985) ............... 20

Howell v. New York Post Co., 81 N.Y.2d 115, 612 N.E.2d 699 (1993) .................... 19

Hughes v. Moore, 214 Va. 27, 197 S.E.2d 214 (1973) .......................................... 20

Johnson v. Jamaica Hospital, 467 N.E.2d 502 (N.Y. Ct. App. 1984) ...................... 19

Koken v. Steinberg, 825 A.2d 723 (Pa. Comm. Ct. 2003) .................................... 22

Liberman v. Worden, 701 N.Y.S.2d 419 (App. Div. 1st Dep't 2000) ...................................... 22

Lichtenstein v. State, 712 N.E.2d 1218 (N.Y. Ct. App. 1999) ............................................. 19

Martin v. Evans, 551 Pa. 496, 711 A.2d 458 (1998) .................................................... 18

Meroni v. Holy Spirit Association for the Unification of World Christianity, 506
    N.Y.S.2d 174 (2d Dep't 1986) ...................................................................... 19

Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970) ................................................. 19

Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979) ........................................................ 20

Skipworth v. Lead Industrial Association, Inc., 690 A.2d 169 (1997) ..................................... 20

Smith v. County of Erie, 295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ........... 23

Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. 1980) ........................ 20

Talmor v. Talmor, 185 Misc. 2d 293, 712 N.Y.S.2d 833 (N.Y. Sup. 2000) ............................... 20

## FEDERAL STATUTES

18 U.S.C. § 1962 ................................................................................. 23

18 U.S.C. § 1964 ................................................................................. 23

28 U.S.C.A. § 1350 (1993) ........................................................................ 17

28 U.S.C.A. § 1350, note § 2(a) (1993) ........................................................... 15

18 U.S.C.A. §§ 2331-2333 (2000) .................................................................. 16

Fed. R. Civ. P. 8(a) ......................................................................... 11, 15

Fed. R. Civ. P. 12(b)(2) ...................................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 2, 4

Torture Victims Protection Act, 28 U.S.C. § 1350, note §2(a) ................................. 15, 16

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA") ............................. 16

## STATE STATUTES

42 Pa. Cons. Stat. § 8301 ........................................................................ 17

Va. Code Ann. §§ 8.01-50 (same) .................................................................. 17

## OTHER AUTHORITIES

5A Wright & Miller, Federal Practice & Procedure § 1363 at 464-65 (2d Ed. 1990) .............. 11

Black's Law Dictionary 345 (7th ed. 1999)................................................................................. 3

8 N.Y. Jur., Conspiracy, § 19 (1982) ....................................................................................20, 21

N.Y. EPTL § 5-4.1(1)............................................................................................................17, 18

N.Y. Est. Powers & Trusts § 11-3.2(b) (McKinney 2001)......................................................... 19

N.Y. Est. Powers & Trusts L. §11-3.3 (McKinney 2001) .......................................................... 19

## INTRODUCTION

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Memorandum of Law, together with the Declaration of Graham Walker, executed on April 7, 2004, in support of its motion to dismiss the claims against it in the Third Amended Complaint ("TAC"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons stated herein and in the remainder of the record, this motion is meritorious and should be granted in all respects.

## PRELIMINARY STATEMENT

Even the horrific events of September 11, 2001 -- which DMI S.A. has roundly condemned and which condemnation is repeated here -- do not justify or authorize the filing and promulgation of a frivolous action against DMI S.A. (or any other defendant). As set forth below, the pending causes against DMI S.A. are meritless and should be dismissed for two distinct reasons: (i) pursuant to Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over DMI S.A.; and (ii) pursuant to Fed. R. Civ. P. 12(b)(6), because the TAC completely fails to state any claim against DMI S.A.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

The Complaint contains only the sparsest allegations regarding DMI S.A., which are restated below in their entirety:

- DMI S.A. is located in Cointrin, Switzerland, and has been in business since 2002, when it "replaced Dar al Maal al Islami." The company was "under M. Ibrahim Kamel's chairmanship" until 1983, when His Royal Highness Prince Mohamed al Faisal al Saud became CEO. "Under [His Royal Highness'] chairmanship," the company and its affiliates became a prominent global investment and financial services group, providing *sharia*-compliant investment products and services in numerous countries. "His [sic] actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and al Qaeda." The company's 12-member board of directors includes Haydar Mohamed bin Laden, a half-brother of Osama bin Laden. TAC ¶¶ 97, 364.

- DMI S.A. is currently chaired by "Abdulkarim Khaled Uusuf Abdulla," who replaced HRH Prince Mohamed in early 2002. DMI S.A. "has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and Al Shamal Islamic Bank." <u>Id.</u> ¶ 98.

- DMI S.A. "owns 100% of Islamic Investment Company of the Gulf. [HRH Prince] Mohamed al-Faisal al-Saud chairs Islamic Investment Company of the Gulf. Osama bin Laden's brother, Haydar Mohamed bin Laden, was a director of the company. Islamic Investment Company of the Gulf (Bahrain) EC is the main shareholder of Faisal Islamic Bank of Sudan, chaired by [HRH Prince] Mohamed al Faisal al Saud." <u>Id.</u> ¶ 99.

- Faisal Islamic Bank (Sudan) was in 1984 a founding shareholder of al Shamal Bank of the Sudan. <u>Id.</u> ¶ 100.

- Faisal Islamic Bank (Sudan) "was the main shareholder" of Tadamon Islamic Bank as of 1995. <u>Id.</u> ¶ 108.

- Third parties connected to al Qaeda testified in 2001 that, prior to the 1998 attacks on U.S. embassies in Kenya and Tanzania, "…we got account in Bank Faisl Islami," "in Bank al Shaml," and "in Bank Tadamon Islami." <u>Id.</u> ¶¶ 79, 101, 109.

- "The principal financial support of the Islamic Center of Geneva is provided by" DMI S.A. <u>Id.</u> ¶ 593. The Islamic Center of Geneva is not alleged to have funded al Qaeda or engaged in any other tortious activity. <u>Id.</u> ¶¶ 592-96.

Initially, we note that plaintiffs have not specifically alleged any conduct by DMI S.A. whatsoever, much less any wrongful conduct. Plaintiffs instead proffer only the conclusory and impenetrable allegation that DMI S.A. "has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and al Shamal Islamic Bank." Moreover, even the meager allegations reproduced above are thoroughly false. For example, DMI S.A. has been in business since 1981, and His Royal Highness Prince Mohamed al Faisal al Saud has never been CEO of DMI S.A. <u>See</u> Declaration of Graham Walker ("Walker Decl.") ¶ 10.

More saliently, Faisal Islamic Bank (Sudan) ("FIB Sudan") is not and never has been a subsidiary of DMI S.A.  Neither DMI S.A. nor any of its affiliates, other than its co-defendant DMI Trust, has ever held any equity shares of FIB Sudan, and no such entity has ever controlled FIB Sudan.  See id. ¶ 11.[1]  A "subsidiary corporation" is "a corporation in which a parent company has a controlling share."  See Black's Law Dictionary 345 (7th ed. 1999).  Thus, FIB Sudan is not and has never been a subsidiary of DMI S.A. or of any affiliate of DMI S.A.  Furthermore, because FIB Sudan has never been such a subsidiary, and because DMI S.A. has never held shares of either Al Shamal Bank of the Sudan or Tadamon Islamic Bank, neither of the latter entities are or have ever been subsidiaries of DMI S.A.[2]  See Walker Decl. ¶ 12.

## ARGUMENT

All claims asserted against DMI S.A. should be dismissed for two reasons.  First, the Court should dismiss pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over DMI S.A.  As the above recitation of plaintiffs' skeletal allegations regarding certain putative corporate affiliations and the identity of certain executives makes clear, plaintiffs have alleged no facts connecting DMI S.A. with the United States or the events of September 11.  Requiring DMI S.A. to respond and defend itself in this Court in these circumstances would be wholly inconsistent with "traditional notions of fair play and substantial justice."  Asahi Metal Indus. Co. v. Superior Ct., Solano Cty., 480 U.S. 102, 113 (1987) (quoting International Shoe Co. v. State of

---

[1]   As we have informed counsel to plaintiffs in writing, DMI Trust, a Bahamian trust that holds equities but itself conducts no business activities, has in the past held equity shares of FIB Sudan in an investment portfolio, but these shareholdings have never amounted to more than approximately 22% of the equity shares of FIB Sudan.  At no point did DMI Trust hold a majority of the shares of FIB Sudan, or otherwise control or direct that entity's business activities or participate in its operations or management.  Thus, FIB Sudan is not and has never been a subsidiary of DMI Trust (or, as stated above, of any other affiliate of DMI S.A.).  DMI Trust has not yet been served with process, and the claims against DMI Trust, we will eventually show, should be dismissed for precisely the same reasons as those set forth herein regarding DMI S.A.

[2]   Upon a motion to dismiss, the Court may take as true the allegations of the Complaint, such as they are.  As is set forth in detail throughout this Memorandum, however, the Complaint fails to allege a prima facie case for personal jurisdiction over DMI S.A., and fails to state a claim against DMI S.A., regardless of the veracity of plaintiffs' few factual allegations regarding DMI S.A.  The instant motion therefore does not assert the inaccuracy of those allegations as a ground for dismissal, and rests upon the arguments made infra.

Washington, 326 U.S. 310, 316 (1945)).  Second, the Court should dismiss under Fed. R. Civ. P.

12(b)(6), because the TAC fails to state any claim against DMI S.A.

I

## THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, organized in 1981 under the laws of

Switzerland and registered in the canton of Geneva.  As set forth in detail below, the Complaint

does not allege that DMI S.A. has had any contacts whatsoever with the United States or any direct

role in causing the events of September 11.  Consequently, plaintiffs have not made the prima facie

showing of minimum contacts necessary for this Court to exercise personal jurisdiction over it.

**A.  This Court Cannot Exercise Personal Jurisdiction Over DMI S.A.**
**Because Plaintiffs Have Not Made a Prima Facie Case For Jurisdiction.**

Plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.  See

Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) ("The plaintiff bears the

burden of establishing that the court has jurisdiction over the defendant when served with a Rule

12(b)(2) motion to dismiss."); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d

779, 784 (2d Cir. 1999) (same).  To survive a motion to dismiss under Rule 12(b)(2), plaintiffs must

make a prima facie showing of facts sufficient to support a finding of personal jurisdiction.  See

Whitaker, 261 F.3d at 208 (plaintiff must make prima facie showing of jurisdiction); Jazini v. Nissan

Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (same).  Courts may "construe jurisdictional

allegations liberally and take as true uncontroverted factual allegations," but "will not draw

'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d

246, 251 (S.D.N.Y. 2003), quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d

Cir. 1994).  Mere conclusory allegations of fact and statements of law couched as factual allegations,

moreover, do not suffice to make out the requisite prima facie showing.  See Ross v. UKI Ltd., 2004

WL 384885 at *3 (S.D.N.Y. Mar. 1, 2004); Mende, 269 F. Supp. 2d at 251.

Whether it is maintained that a Court has general or specific jurisdiction over a defendant, pursuant to state law or to a federal statute providing for nationwide service of process,[3] constitutional due process requires that a plaintiff must always allege facts demonstrating that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (quoting Calder v. Jones, 465 U.S. 783, 788 (1984)) (internal quotation marks omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum . . . ."); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998) ("The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice") (citations and internal quotation marks omitted).  In the instant case, plaintiffs have failed to allege *any* contact of *any* kind between DMI S.A. and New York or any other of the United States.

As the tenuous allegations described above illustrate, plaintiffs have proffered no facts whatsoever in support of the proposition that DMI S.A. has had even minimal contacts with the United States.  In actuality, plaintiffs cannot possibly make any such allegation because DMI S.A. has had no substantive contacts at all with this country.  DMI S.A. has never done business, maintained a place of business, or been licensed to do business in any U.S. jurisdiction, and plaintiffs

---

[3]   Plaintiffs' first "cause of action," ostensibly arising out of the Foreign Sovereign Immunities Act, cannot apply to DMI S.A., which is in no way a sovereign or an agency or instrumentality of a sovereign.  Of plaintiffs' thirteen other causes of action against DMI S.A., four -- under the Anti-Terrorism Act (Count Three) and RICO (Counts Eleven through Thirteen) -- are brought pursuant to federal statutes permitting nationwide service of process.  The remaining nine causes are based upon state law, the Alien Tort Claims Act, and the Torture Victims Protection Act (neither of which federal statutes provides for nationwide service of process).  If personal jurisdiction over DMI S.A. is to be had with regard to the latter claims, it must be found under state law, including the long-arm jurisdictional statutes of New York, Pennsylvania, and Virginia.  Nevertheless, plaintiffs must allege facts sufficient to show minimal contacts for due process purposes, regardless of whether a particular claim is brought under a federal statute providing for nationwide service of process or pursuant to general or specific jurisdiction according to state law.  See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985); Burnett v. Al Baraka Inv. and Dev. Corp., 292 F. Supp. 2d 9, 21 (D.D.C. 2003) ("Burnett II").

have made no such allegation.  Plaintiffs do not allege that DMI S.A. has ever entered into any

contracts with U.S. entities or any contracts to be performed in whole or in part in the U.S.  Nor do

they allege that DMI S.A. has ever entered into any partnership, joint venture, or other such

relationship with a U.S. entity, invested in any U.S. entity, or had any U.S. investors or clients.

Plaintiffs do not assert that DMI S.A. has ever maintained an agent for service of process in the

U.S., brought an action in a U.S. Court, or otherwise submitted itself to the jurisdiction of any U.S.

authority in any way.  In short, plaintiffs tender nothing that could conceivably be read to assert that

DMI S.A. has had any contacts with the United States at all, much less that DMI S.A. has had the

purposeful contacts necessary to establish either general or specific personal jurisdiction over it.  See

TAC ¶¶ 97-99; Burger King, 471 U.S. at 471-73; Bank Brussels Lambert, 305 F.3d at 127.

Plaintiffs' conclusory assertion, in the first numbered paragraph of the Complaint,

that "[t]his Court has both personal and subject matter jurisdiction over the Defendants herein," is

entirely insufficient to confer personal jurisdiction over DMI S.A.  See Jazini, 148 F.3d at 184

("conclusory statement" of law couched as factual allegation insufficient to establish personal

jurisdiction; plaintiff must allege facts supporting said conclusion); Lehigh Valley Indus., Inc. v.

Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) (conclusory allegations insufficient to establish

personal jurisdiction); Ross, 2004 WL 384885, at *3; Mende, 269 F. Supp. 2d at 251.

Furthermore, plaintiffs' impenetrably vague allegations that DMI S.A. has "involved

itself" in terrorist funding, and that the financial institution defendants generally "have acted as

instruments of terror, in raising, facilitating [sic] and transferring money to terrorist organizations,"

see TAC ¶¶ 46, 98, are insufficient to confer personal jurisdiction over DMI S.A. on a theory of

specific jurisdiction stemming from the attacks of September 11, 2001.  Courts in this Circuit have

held that the exercise of personal jurisdiction based upon acts of a defendant allegedly causing

effects in New York "must be applied with caution, particularly in an international context."  Leasco

Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972).  Accordingly, a

foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know

that its conduct will have a "direct" effect in the forum. Id.; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990). Again, conclusory allegations or statements of law couched as factual allegations do not suffice. Plaintiffs must allege that a defendant's actions were "expressly aimed" at the forum. See Calder, 465 U.S. at 789 (1984). Here, plaintiffs do not allege any facts that could even arguably lead to the conclusion that DMI S.A. was aware that any of its actions would affect New York and/or the United States in any way, let alone that DMI S.A. directed any actions toward the United States or took any actions that resulted in the tragedy of September 11.[4]

**B.      Plaintiffs' General Allegations Of Actions By DMI S.A. Allegedly Undertaken Through Supposed Subsidiaries Are Insufficient To Support An Assertion Of Personal Jurisdiction Over DMI S.A.**

According to the TAC, the only supposed connection between DMI S.A. and terrorism is that DMI S.A. "has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to: Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and al Shamal Islamic Bank," and that third parties connected to al Qaeda "got account" at Faisal Islamic Bank (Sudan) and two other ostensible Sudanese subsidiaries of DMI S.A. sometime in the mid-1990s. See TAC ¶¶ 79, 97, 101, 109.

Plaintiffs' averment regarding DMI S.A.'s purported "involve[ment] . . . in al Qaeda financing" through its putative subsidiaries cannot support a finding of specific jurisdiction over DMI S.A. based on the activities of those companies, however (and could not do so even if any of the three Sudanese entities in question was actually a subsidiary of DMI S.A.). To establish personal jurisdiction over an entity through its subsidiaries, a plaintiff is required to allege much more than a

_____

[4]      Furthermore, Judge Robertson, in November 2003, rejected plaintiffs' earlier attempt to establish specific jurisdiction over defendant Prince Sultan bin Abdulaziz al Saud on grounds that he "purposefully directed" his allegedly tortious activities at the United States. Burnett II, 292 F. Supp. 2d at 22-23. That holding is law of the case and applicable a fortiori to DMI S.A., whose sole barely-alleged connection to terrorism (i.e., that persons connected to al Qaeda "got account" at a putative subsidiary of a putative subsidiary of DMI S.A. sometime in the mid-1990s) is several times more attenuated and imprecise than those alleged as to Prince Sultan. The conclusory, purported connection as to DMI S.A. thus cannot constitute "purposeful availment of the privilege of conducting activities within the forum State" permitting DMI S.A. to be haled into this Court solely as a result of "attenuated contacts" or "the unilateral activity of a third person." See Burger King, 471 U.S. at 474-75.

mere parent-subsidiary relationship.  A plaintiff must allege facts supporting the conclusion that the subsidiary in question acts as an "alter ego" or "mere department" of the parent.  Courts consider four factors when determining whether a subsidiary is acting as an alter ego or mere department of the parent: (i) "common ownership;" (ii) "financial dependency of the subsidiary on the parent corporation;" (iii) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and (iv) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  Jazini, 148 F.3d at 184-185 (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-122 (2d Cir. 1984)).

In this action, plaintiffs have alleged no facts sufficient to make out any of these four factors.  As to the first factor, in order to assert jurisdiction over the foreign related corporation, the two entities in question must share nearly identical ownership interests.  See Beech Aircraft, 751 F.2d at 120.  Plaintiffs, however, have alleged only that DMI S.A. "has involved itself in terrorist financing through" Faisal Islamic Bank (Sudan), Al Shamal Bank, and Tadamon Islamic Bank. There is no allegation that these entities are commonly-held by any person or entity -- which, in fact, they are not.  Plaintiffs also have not alleged that any of the three Sudanese entities are financially dependent upon DMI S.A., see Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6 (S.D.N.Y. Feb. 18, 1997); that DMI S.A. has been involved in the selection and assignment of the putative subsidiaries' executive personnel or that those entities have failed to observe corporate formalities, see id. at *10; or that DMI S.A. has controlled those entities' marketing and operational policies.  See Beech Aircraft, 751 F.2d at 122.

In short, plaintiffs have failed to plead facts sufficient to establish that *any* of the above four criteria have been met, so as to make it possible for the Court to consider the activities of Faisal Islamic Bank (Sudan), Al Shamal Bank, or Tadamon Islamic Bank in determining whether to exercise specific personal jurisdiction over DMI S.A.  Plaintiffs' mere assertion that the entities in question are subsidiaries of DMI S.A. -- a factually incorrect assertion -- without facts being alleged

to support a finding that any such entity has functioned as an "alter ego" or "mere department" of
DMI S.A., is inadequate to maintain personal jurisdiction over DMI S.A.

**C.**     **Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and
           Abetting Provide No Basis for Personal Jurisdiction Over DMI S.A.**

Finally, plaintiffs make general allegations that all defendants were engaged in a

"conspiracy" to fund terrorism and "aided and abetted" terrorism. See TAC ¶¶ 678-81, 684-87.

Such wholly conclusory allegations cannot salvage plaintiffs' failed assertion of personal jurisdiction

over DMI S.A. "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal]

jurisdiction . . . ." Lehigh Valley, 527 F.2d at 93-94; see also Second Amend. Found. v. United States

Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("the allegation that the [defendants] conspired

together represents nothing more than a legal conclusion, which we have held does not constitute

the prima facie showing necessary to carry the burden of establishing personal jurisdiction") (internal

citations and quotations omitted). "The cases are unanimous that a bare allegation of a conspiracy

between the defendant and a person within the personal jurisdiction of the court is not enough.

Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even

though there were grave reasons for questioning whether the defendant was actually suable in those

forums." Stauffacher v. Bennet, 969 F.2d 455, 460 (7th Cir. 1992); see also Bank Brussels Lambert,

171 F.3d at 793 (same).

To establish jurisdiction over a non-resident conspirator, a plaintiff must show that

the in-state actor acted "for the benefit, with the knowledge and consent of, and under some control

by, the nonresident principal." See Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981);

see also Simon v. Philip Morris, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (requiring showing "(a) the

defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-

conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-

conspirators acting in New York acted at the direction or under the control or at the request or on

behalf of the out-of-state defendant" (internal quotation marks omitted)).  In this proceeding,

plaintiffs have not alleged that there existed any agreement between DMI S.A. and some in-state actor; that some in-state actor acted for the benefit of DMI S.A.; or that DMI S.A. exercised control over any such actor. See infra, Part II(B)(8). Plaintiffs' sole allegation, which is entirely ineffectual, is that a "conspiracy" existed.

Like their allegations regarding an alleged conspiracy, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A. See TAC ¶ 684, 686 ("Defendants knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks that killed and injured the Plaintiffs herein."). A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant ... know the wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); see also Terrydale Liquidating Trust v. Gramlich, 549 F. Supp. 529, 530 (S.D.N.Y. 1982) (plaintiff must allege facts demonstrating "substantial assistance" to support finding of personal jurisdiction over abettor); Part II(B)(9), infra. In short, the alleged aider and abettor must have been aware of the wrongdoing and provided substantial assistance in its commission. Here, plaintiffs have alleged no facts sufficient to support any such finding as to DMI S.A.

For the foregoing reasons, plaintiffs have completely failed to make out a prima facie case for personal jurisdiction over DMI S.A.[5] Plaintiffs' claims against DMI S.A. therefore should be dismissed in their entirety.

---

[5]    Moreover, plaintiffs have alleged no facts, and can tender no argument, that this complete failure to make out a prima facie case for jurisdiction could be remedied by limited jurisdictional discovery. See Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 2004 WL 515534, at *6 (S.D.N.Y. Mar. 16, 2004) (jurisdictional discovery denied where defendant had no apparent contacts with United States; such discovery unlikely to yield additional useful information); Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

## II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.

Plaintiffs have also almost completely failed to allege facts sufficient to make out any of the thirteen different causes of action lodged against DMI S.A. Indeed, as the above recitation of plaintiffs' allegations shows, plaintiffs have failed to allege any particular conduct by DMI S.A. *whatsoever*, much less any *wrongful* conduct. Furthermore, plaintiffs have alleged no facts that, if proved out, would establish that any conduct by DMI S.A. -- if any were in fact alleged -- proximately caused plaintiffs' injuries. Finally, plaintiffs have failed to plead facts sufficient to make out the numerous more specific requirements of their causes of action against DMI S.A.

As a result, DMI S.A. is left with no idea as to what conduct is the supposed basis of plaintiffs' claims against it. Plaintiffs therefore have not satisfied even the lenient notice pleading standard of Fed. R. Civ. P. 8(a), and the TAC against DMI S.A. is due to be dismissed in its entirety. See DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."), cert. denied, 519 U.S. 1007, 117 S.Ct. 509 (1996); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) (same); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations"); In re Cendant Corp. Sec. Litig., 190 F.R.D. 331, 335 (D.N.J. 1999) (rejecting complaint that "lumped the defendants together and made general conclusory allegations of wrongdoing"); 5A Wright & Miller, Federal Practice & Procedure § 1363 at 464-65 (2d Ed. 1990) (upon motion to dismiss, unsupported

conclusions of law never deemed admitted; court will not accept conclusory allegations contradicted by other allegations or facts judicially noticed).

In lieu of any specific allegations regarding DMI S.A., plaintiffs offer the bald allegation that DMI S.A. somehow "has involved itself in al Qaeda financing" through its putative subsidiaries, and the generalized, conclusory averment that DMI S.A. and all the other financial institution defendants have "acted as instruments of terror, in raising, facilitating [sic] and transferring money to terrorist organizations." See TAC ¶¶ 46, 97-99. These conclusory allegations, standing alone, do not provide DMI S.A. with meaningful notice of the conduct of which plaintiffs now complain. Indeed, it is difficult to see what sorts of lawful financial activities, if any, are left out of the scope of these sweeping, conclusory accusations. Such allegations cannot suffice to state plaintiffs' inflammatory claims against DMI S.A. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Glasheen, 1999 WL 1249409 at *1 (conclusory allegations lacking factual support "render[ ] it virtually impossible for each [d]efendant to respond to the allegations").[6]

---

[6]    In Burnett v. Al Baraka Inv. and Dev. Corp., 274 F.Supp. 2d 86, 110 (D.D.C. 2003) ("Burnett I"), Judge Robertson stated that the conclusory, generalized allegation contained in Paragraph 46 of the TAC would suffice to plead a claim against another defendant, al Rajhi Bank. In light of the authority cited above for the proposition that such blanket, conclusory allegations do not suffice to state a claim in themselves, DMI S.A. asserts that Paragraph 46 of the TAC cannot suffice to state a claim against it. DMI S.A. also notes, moreover, that plaintiffs' allegations against al Rajhi Bank, tenuous as they may be, are considerably more specific than those that have been made (or could be made) as to DMI S.A. We also note that, if plaintiffs' claims are allowed to proceed on the basis of such broad and undefined allegations, DMI S.A. and many other defendants -- not to mention this Court -- will find themselves drawn into an essentially unbounded and likely unmanageable discovery process. See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should address questionable claims at dismissal stage to avoid unmanageable discovery thereafter).

A.    **Plaintiffs Have Failed To Plead Facts Sufficient To Show That
      <u>Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries.</u>**

Plaintiffs also proffer nothing to support the proposition that any actions of DMI

S.A. -- and again, no such actions have been properly alleged -- proximately caused the injuries

suffered by plaintiffs on September 11, 2001. <u>See</u> TAC ¶¶ 97-99. Each of plaintiffs' claims requires

a showing of proximate cause. Plaintiffs must establish cause-in-fact as opposed to "but-for"

causation or any other, less stringent theory of causation, <u>i.e.</u>, that the injury complained of is a

direct effect of DMI S.A.'s own tortious conduct. <u>See</u> <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S.

258, 268, 112 S.Ct. 1311, 1317 (1992); <u>see also</u> <u>In re American Express Co. S'holder Litig.</u>, 39 F.3d

395, 401-02 (2d Cir. 1994) (proximate cause requires showing that defendant's wrongful action was a

substantial factor in plaintiff's injury; injury must also have been reasonably foreseeable); <u>Laborers</u>

<u>Local 17 Health & Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 235 (2d Cir. 1999) (same).

Here, plaintiffs have failed to allege that any conduct by DMI S.A. --  whatever that

unalleged conduct might have been --  was a substantial factor in the terrorist attacks on September

11, 2001. They do not specifically aver that DMI S.A. funded or otherwise provided material

support to any of the terrorists who carrying out those attacks or anyone who assisting them in

doing so. Indeed, plaintiffs do not assert that any action by DMI S.A. had any effect on those

attacks at all, much less that the horrific events of September 11 were the direct and foreseeable

result of any action by DMI S.A. In short, plaintiffs have failed to tender any allegation against DMI

S.A. that could support a finding of proximate cause as to any of the pending claims.

Instead, plaintiffs proffer conclusory, blanket allegations of causation, ostensibly

applicable to all defendants without distinction, in connection with their various causes of action.

<u>See</u>, <u>e.g.</u>, TAC ¶ 661 (as to wrongful death claim, "[t]he injuries and damages suffered by the

Plaintiffs were proximately caused by the intentional, malicious, reckless, criminal, violent, grossly

negligent or negligent acts of the Defendants as described herein"); <u>id.</u> ¶ 674 (as to claim for

infliction of emotional distress, "[a]s a direct and proximate cause [sic] of Defendants' negligent,

grossly negligent and/or intentional misconduct and reckless disregard for human life, plaintiffs

have suffered and will forever continue to suffer severe, debilitating, permanent emotional, physical

and psychiatric disorders, ongoing emotional distress and anxiety, physical and mental distress and

significant mental injury and impairment . . . ."). These indiscriminate, "catch-all" averments cannot

suffice to plead proximate causation. See American Express, 39 F.3d at 400 n.3; DeJesus, 87 F.3d at

70; see also Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion

to dismiss we must take all the factual allegations in the complaint as true, we are not bound to

accept as true a legal conclusion couched as a factual allegation."). Thus, these generalized

allegations cannot rescue plaintiffs' claims from the requirements of Rule 12(b)(6).

**B.    Plaintiffs Have Failed To Plead Facts Sufficient To Make Out
Any Of The Thirteen Causes Of Action Against DMI S.A.**

      Plaintiffs also have failed to plead properly any of the thirteen causes of action

against DMI S.A. because, in addition to their failure to plead causation, plaintiffs have almost

completely failed to allege more specific facts sufficient to make out their causes of action.  Even

under the lenient notice pleading standard, neither inferences unsupported by specific factual

allegations nor legal conclusions cast as factual allegations suffice to state a claim. See Smith, 291

F.3d at 240; York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir.

2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be

true, confer a judicially cognizable right of action."); DeJesus, 87 F.3d at 70; In re Livent, Inc.

Noteholders Secs. Litig., 151 F.Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability

are alleged in the alternative, "the factual pleadings in the complaint must be sufficient to state all

the requisite elements of a given theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health

Svcs., 151 F.Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege

facts that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint

contain either direct or inferential allegations respecting all the material elements necessary to sustain

a recovery under some viable legal theory.") (internal citations and quotations omitted); see also

Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (discussing Swierkiewicz v. Sorema, N.A.,

534 U.S. 506, 512 (2002)); Burnett I, 274 F. Supp. 2d at 103 (court may accept neither inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal

conclusions cast in the form of factual allegations) (internal quotations omitted).

 Thus, plaintiffs' bald and conclusory allegation that DMI S.A. "has involved itself in

al Qaeda financing" through its putative subsidiaries, see TAC ¶ 98, cannot be allowed to substitute

for *some* allegation -- *any* allegation -- that DMI S.A. in fact ever actually *did* anything to cause the

injuries for which plaintiffs now seek redress.  See Smith, 291 F.3d at 240; DeJesus, 87 F.3d at 70; In

re Cendant, 190 F.R.D. at 335.  Apart from such generalized, conclusory and (as to DMI S.A.)

vacuous allegations, plaintiffs have almost entirely failed to plead *any* of the many elements of their

thirteen causes of action.  For this reason as well, plaintiffs have failed to meet even the liberal

requirements of Fed. R. Civ. P. 8(a), and the TAC against DMI S.A. must be dismissed.

 1. Count Two -- Torture Victims Protection Act.[7]

 A plaintiff may bring a private cause of action under the Torture Victims Protection

Act, 28 U.S.C. § 1350, note §2(a) ("TVPA"), by alleging that (i) an individual, (ii) under actual or

apparent authority, or color of law, of any foreign nation, (iii) subjected another individual to

extrajudicial killing or torture.  28 U.S.C.A. § 1350, note § 2(a) (1993); Flores v. Southern Peru

Copper Corp., 343 F.3d 140, 152-54 (2d Cir. 2003); Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir.

1995), reh'g denied, 74 F.3d 377 (2d Cir. 1996); Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980).

None of the above factual predicates has been alleged by plaintiffs here.  Since DMI S.A. is a

company, not an individual, the TVPA does not apply.  See Beanal v. Freeport-McMoRan, Inc., 969

F. Supp 362 381-82 (E.D. La. 1997), aff'd on other grounds, 197 F.3d 161 (5th Cir. 1999); Friedman

v. Bayer Corp., 1999 WL 33457825, *2 (E.D.N.Y. Dec. 15, 1999). Moreover, there is no allegation

that any action by DMI S.A. –  whatever such action might have been – was taken under color of

---

[7] See note 3, supra.

foreign law. See Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 19-20 (D.D.C. 2000), aff'd, 2002 WL

1052012 (D.C. Cir. 2002). And again, plaintiffs have alleged nothing more than a conclusory, non-

cognizable legal conclusion regarding causation.[8]

        2.      Count Three -- Anti-Terrorism Act.

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff or

his/her estate may bring a private cause of action for threefold damages plus costs, where (i)

plaintiff is a national of the United States, and (ii) was injured in his/her person, property, or

business, (iii) due to international terrorism. 18 U.S.C.A. §§ 2331-2333 (2000); U.S. v. Yousef, 327

F.3d 56, 116-18 (2d Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F.Supp.2d 217, 220-

222 & n.5 (S.D.N.Y. 2003).[9] Plaintiffs have alleged no facts that could support a finding of

proximate cause in support of their ATA claim against DMI S.A. Furthermore, plaintiffs have

proffered no specific, cognizable allegation that DMI S.A. engaged in any actions constituting

"international terrorism" or that DMI S.A. did so knowingly, as the ATA has been held to require.

See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000,

1012, 1023 (7th Cir. 2002) (requiring allegations of proximate cause; noting that "[t]o say that

funding *simpliciter* constitutes an act of terrorism is to give the statute an almost unlimited reach";

and holding that defendants therefore must be alleged to have acted knowingly in order to be held

liable under the ATA); Burnett I, 274 F. Supp. 2d at 106 (ATA claim requires knowledge and intent

to further violent acts; and those violent acts must be reasonably foreseeable result of defendant's

actions); Smith v. Afghanistan, 262 F.Supp.2d at 227 n.12 ("[P]laintiff must show knowledge of and

an intent to further the criminal acts and proximate cause.").

_____

[8]    Finally, the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing." Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, *3 (S.D.N.Y. Feb. 28, 2002); Benas v. Baca, 2001 WL 485168, *4 (C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx. 753 (9th Cir. Feb. 15, 2002). Because all injuries alleged in the instant case occurred within the United States, the TVPA is inapplicable, and all of plaintiffs' TVPA claims should be dismissed.

[9]    Additionally, since the ATA is available only to U.S. nationals, all plaintiffs who are not U.S. nationals lack standing, and their claims should also be dismissed. See, e.g., Burnett I, 274 F. Supp. 2d at 105.

3.    Count Four -- Alien Tort Claims Act.

A plaintiff may bring a private cause of action under 28 U.S.C. § 1350, provided

(i) that plaintiff is an alien, (ii) claiming damages stemming from a tort only, (iii) that was committed

by the defendant in violation of the law of nations or a treaty of the United States.  See 28 U.S.C.A.

§ 1350 (1993); Flores, 343 F.3d at 148-49; Kadic, 70 F.3d at 236.  As described throughout Part II of

this Memorandum, plaintiffs have failed to plead properly any underlying tort against DMI S.A.

from which an ATCA claim might arise.  See Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115,

121 (D.D.C. 2003) (on summary judgment motion, in absence of properly alleged link between

defendant and specific acts complained of, conclusory allegations of tortious activity "much too

tenuous to support [a] finding of liability").  Moreover, plaintiffs have failed to allege any wrongful

conduct by DMI S.A. whatsoever, let alone conduct in violation of the law of nations.  See, e.g.,

Kadic, 70 F.3d at 238-44 (listing genocide, war crimes, slave trading, and piracy as violative of law of

nations, whether committed by state actors or private individuals). [10]  Finally, once more, plaintiffs

have not properly alleged that any action by DMI S.A. proximately caused their injuries.

4.    Count Five -- Wrongful Death.

For plaintiffs to maintain a wrongful death claim under New York law, [11] they must

allege, through a properly appointed personal representative, that a defendant, (i) committed a

wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death.  See N.Y.

---

[10]    In addition, plaintiffs have entirely failed to allege facts sufficient to support accomplice or aiding-and-
abetting liability under the ATCA, which has consistently been held to require that a defendant has
*substantially* and *personally* participated in the tort in violation of the law of nations.  See, e.g., Wiwa, 2002 WL
319887, at *15-16 (permitting aiding and abetting liability where defendant supplied weapons and
transportation to persons who committed violations of law of nations); Bao Ge, 201 F. Supp. 2d at 21-22
(dismissing ATCA claim because plaintiffs failed to properly allege corporate defendant substantially
participated in alleged wrongful acts by Chinese government).   Finally, the ATCA by its terms creates a cause
of action available only to aliens.  It is unclear from the TAC which, if any, of plaintiffs are in fact aliens.
Nevertheless, the ATCA claims of all United States citizen plaintiffs are due to be dismissed with prejudice.
See Hanoch Tel-Oren v. Libyan Arab Republic, 517 F. Supp. 542, 548 (D.D.C. 1981), aff'd sub nom. Tel-
Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984).

[11]    The wrongful death statutes of Pennsylvania and Virginia do not differ substantially from that of New
York.  See 42 Pa. Cons. Stat. § 8301 (requiring personal representative and wrongful act or neglect or
unlawful violence or negligence of another causing death of decedent); Va. Code Ann. §§ 8.01-50 (same).

E.P.T.L. § 5-4.1(1). Here, again, plaintiffs have not only failed to allege any *wrongful* acts by DMI S.A., they have failed to allege any specific conduct by DMI S.A. whatsoever. Furthermore, plaintiffs proffer nothing to support the proposition that any actions of DMI S.A. proximately caused the deaths of the victims of the attacks on September 11, 2001. See TAC ¶¶ 97-99. Plaintiffs do make the conclusory, global allegation that "[t]he injuries and damages suffered by the Plaintiffs were proximately caused by the intentional, malicious, reckless, criminal, violent, grossly negligent or negligent acts of the Defendants as described herein." See id. ¶ 661. As set forth above, however, no such "intentional, malicious, reckless, criminal, violent, grossly negligent or negligent acts" of DMI S.A. are in fact described therein. That conclusory allegation therefore cannot suffice to make out plaintiffs' claims for wrongful death. See, e.g., Guadagnoli v. Seaview Radiology, P.C., 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegation of negligence); see also DeJesus, 87 F.3d at 70.

     5.    Count Six -- Negligence.

     Plaintiffs' claims for negligence require them to allege (i) the existence of a duty owed by defendant to plaintiff, (ii) the breach of this duty, (iii) proximate causation of the resulting injury, and (iv) actual damages. See Becker v. Schwartz, 46 N.Y.2d 401, 410, 386 N.E.2d 807 (1978), citing Restatement (Second) of Torts § 281 (1965); Martin v. Evans, 551 Pa. 496, 501, 711 A.2d 458, 461 (1998); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000). In the instant case, the plaintiffs cannot allege that DMI S.A. owed them any duty of care. It is settled law that financial institutions owe no duty to non-customers to prevent wrongful acts of a bank customer. See Renner v. Chase Manhattan Bank, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (dismissing negligence claim against bank and finding no duty to prevent bank's customer from defrauding plaintiff); Cohen v. Standard Bank Inv. Corp., Ltd., 1998 WL 782024, at *7 (S.D.N.Y., Nov. 6, 1998) (same); see also Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship."); Burnett I, 274 F. Supp. 2d 86, 109

("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service."). Plaintiffs also do not properly allege a breach of any such duty of care by DMI S.A. -- since plaintiffs allege no wrongful act or omission by DMI S.A. at all -- or proximate causation of their injuries. [12]

      6.   <u>Count Seven -- Survival.</u>

The New York Estate Powers & Trusts Law governs survival actions in the State of New York and permits the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death. N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001). The statutes and the courts require that, for a personal representative plaintiff to maintain a survival claim, he must allege that an underlying tort was committed by a defendant against the deceased prior to death. <u>See</u> N.Y. E.P.T.L. §11-3.3 (McKinney 2001), Practice Commentary; <u>Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity</u>, 506 N.Y.S.2d 174, 179 (2d Dep't 1986). As is detailed throughout this Memorandum, plaintiffs have not properly alleged any underlying tort by DMI S.A.[13]

      7.   <u>Count Eight -- Negligent and/or Intentional Infliction of Emotional Distress.</u>

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of

---

[12]   Strictly speaking, DMI S.A. is not a bank itself but an administrative services company providing management and administrative services to related financial institutions. <u>See</u> Walker Decl. ¶ 3. Plaintiffs include DMI S.A. among the "Banking Defendants" listed in the TAC, however, and do not allege any duty that DMI S.A. might owe to them in any capacity other than as a financial institution, other than the "general duty not to injure, murder or cause to be injured or murdered, not to commit or sponsor criminal or tortious acts, endanger lives, foster terror and/or engage in activity that would foreseeably lead to the personal injury and/or death of Plaintiffs." <u>See</u> TAC ¶ 666. Such a generalized statement of a duty not to commit a tortious act is circular and alleges no duty at all. <u>See</u> Johnson v. Jamaica Hosp., 467 N.E.2d 502, 503 (N.Y. Ct. App. 1984) ("The law demands . . . that the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him.").

[13]   Additionally, not all plaintiffs have alleged that they have been appointed as personal representatives, as a survival claim requires. <u>See</u> Lichtenstein v. State, 712 N.E.2d 1218, 1219 (N.Y. Ct. App. 1999). The laws of Pennsylvania and Virginia regarding survival actions do not materially differ from those of New York.

causing, severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress.  See Howell v. New York Post Co., 81 N.Y.2d 115, 120-22, 612 N.E.2d 699, 702 (1993); Papieves v. Lawrence, 437 Pa. 373, 378-79, 263 A.2d 118, 121 (1970); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 136-37, 523 S.E.2d 826, 833 (2000).  As noted, the TAC contains no allegation of any particular conduct by DMI S.A., much less any allegation of extreme and outrageous conduct sufficient to give rise to this claim.  The TAC also contains no specific allegation of intent or recklessness or of facts that could give rise to an inference of intent or recklessness, and no proper allegation of causation.  Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.  See, e.g., Ruffolo v. Oppenheimer & Co., Inc., 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991); Talmor v. Talmor, 185 Misc.2d 293, 297, 712 N.Y.S.2d 833, 836 (N.Y. Sup. 2000).  Plaintiffs' claims for *negligent* infliction of emotional distress should be dismissed for all the reasons set forth in section II(B)(5), supra.  See Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (breach of recognized duty essential element of negligent infliction of emotional distress claim under both 'bystander' and 'direct duty' theories).[14]

        8.      Count Nine -- Conspiracy.

        To state a cause of action for conspiracy under New York law, plaintiffs must allege (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting injury.[15]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc.2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. Mar 11, 1980).

---

[14]   Pennsylvania and Virginia law do not materially differ from New York law on this point.  See Sinn v. Burd, 486 Pa. 146, 155-173, 404 A.2d 672, 677-686 (1979); Hughes v. Moore, 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973).

[15]   Pennsylvania and Virginia law do not materially differ from New York law as to the basic requirements of a conspiracy claim.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Penn. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

Count Nine asserts in conclusory fashion that "[d]efendants engaged in a commonly motivated, organized, concerted and conspiratorial acts, efforts, transactions, material support and activities designed, intended, and for[e]seeably to cause acts of international terrorism including the terrorist attack on the United States, its citizens and society on September 11, 2001 [sic]." See TAC ¶ 680. This incantation is entirely insufficient to make out an assertion of tortious conspiracy. To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." See Flanagan v. Shively, 783 F. Supp. 922 (M.D. Penn. 1992); accord, Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-03 (1986) (requiring allegation of explicit agreement); Board of Dirs. of the Lesner Pointe Condominium v. Harbour Point Bldg. Corp., 2002 WL 32072394, *8 (Va. Cir. Ct.) (same); see also In re NASDAQ Market-Makers Antitrust Litig., 894 F.Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants."), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

In this case, the Complaint alleges *no* communications or consultations of *any* kind by *any* personnel of DMI S.A., let alone communications or consultations from which one might infer the company's assent to a conspiracy "to cause . . . the terrorist attack on the United States, its citizens and society on September 11." Further, the Complaint alleges *no* overt acts by DMI S.A. in furtherance of the purported conspiracy, and no intentional participation in furtherance of the plan,

-21-

as required under New York law.  See, e.g., 8 N. Y. Jur., Conspiracy, § 4.  In sum, plaintiffs have

proffered no cognizable basis whatsoever for their conspiracy claims against DMI S.A.

        9.     <u>Count Ten -- Aiding and Abetting.</u>

        To state a cause of action in New York for aiding and abetting, plaintiffs must allege

that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in

its commission.[16]  See <u>Pittman</u>, 149 F.3d at 123; <u>Liberman v. Worden</u>, 701 N.Y.S.2d 419, 420 (App.

Div. 1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to

allege that "defendants had actual or constructive knowledge of the misconduct and substantially

assisted therein").  The allegations in the TAC do not even begin to establish such knowing and

substantial assistance by DMI S.A.  Plaintiffs' conclusory, blanket allegation that "[d]efendants

knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international

terrorism and the September 11, 2001 terrorist attacks that killed and injured the [p]laintiffs herein,"

<u>see</u> TAC ¶ 684, does not suffice to state a claim against DMI S.A.  See, e.g., <u>Johnston v. Norton</u>,

1993 WL 465333, *15 (S.D.N.Y.) ("conclusory allegations of aiding and abetting or conspiracy are

not enough" to state claim).

        Plaintiffs also cannot found aider and abettor liability upon their allegations that third

parties connected to al Qaeda maintained bank accounts at putative subsidiaries of DMI S.A. at

some point in the mid-1990s.  See TAC ¶¶ 79, 101, 109 ("[W]e got account in Bank Faisl Islami.").

There is no allegation that DMI S.A. in any way assisted those third parties, much less that such

assistance was substantial.  There is no allegation that DMI S.A. did so knowingly or did anything

that could reasonably be read to imply such knowing assistance.  Nor is there any allegation that

those accounts had anything at all to do with the attacks of September 11, 2001.  As a consequence,

---

[16]   The elements of an aiding and abetting claim do not differ under Pennsylvania law. See <u>Koken v. Steinberg</u>, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003).  It is unclear whether an aiding and abetting claim is even recognized under Virginia law.  See <u>A.G. Van Metre Const., Inc. v. NVKettler L.P.</u>, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) (not recognizing cause of action in Virginia).  However, where courts have found such a cause exists, the elements do not differ.  See <u>Sherry Wilson & Co., Inc. v. Generals Court, L.C.</u>, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

these thrice-attenuated allegations of entirely innocuous conduct -- or rather of no conduct -- by

DMI S.A. wholly fail to allege "knowing and substantial assistance" for purposes of plaintiffs' claims

for aider and abettor liability.

Plaintiffs also have entirely failed to plead facts that, if proved out, could establish

that any of the Sudanese entities in question were "alter egos" of DMI S.A., such that the corporate

veil could be pierced and DMI S.A. as their (supposed) parent could be held liable for their actions.

See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking

to pierce the corporate veil must allege "(i) that the owner exercised complete domination over the

corporation with respect to the transaction at issue; and (ii) that such domination was used to

commit a fraud or wrong that injured the party seeking to pierce the veil"); MAG Portfolio Consult,

GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001)(under New York law, factors

in determination of "domination" include disregard of corporate formalities; inadequate

capitalization; intermingling of funds; overlap in ownership, officers, directors, and personnel;

common office space, address and telephone numbers; degree of discretion shown by allegedly

dominated corporation; whether dealings between entities are arm's length; whether corporations are

treated as independent profit centers; payment or guarantee of corporation's debts by dominating

entity; and intermingling of property).  As the foregoing recitation of plaintiffs' allegations regarding

DMI S.A. makes clear, plaintiffs have alleged no facts sufficient to establish any of the above factors,

much less to warrant piercing the corporate veil and holding DMI S.A. liable for actions of its

putative Sudanese subsidiaries.  See, e.g., JBI Indus. Inc. v. Suchde, 2000 WL 1174997, *17

(S.D.N.Y.) (granting summary judgment for failure to allege facts sufficient to warrant veil-piercing);

Ray's Trading (H.K.) Company Limited, Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5

(S.D.N.Y.) (dismissing for failure to allege facts sufficient to warrant veil-piercing).

10.   Counts Eleven through Thirteen -- RICO.

Judge Robertson, in Burnett I, 274 F. Supp. 2d at 100-02, dismissed plaintiffs' RICO

claims for lack of standing.  That holding is law of the case in this action.  See, e.g., United States v.

-23-

Uccio, 940 F.2d 753, 758 (2d Cir. 1991) (courts should adhere to prior rulings in a given case, "absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice").[17]

    11.    <u>Count Fourteen -- Punitive Damages.</u>

    Finally, plaintiffs also have failed to "state a claim" for punitive damages (over and above their claims for damages of one trillion dollars per cause of action), because punitive damages are a form of relief and not an independent cause of action. See Cooper Indus., Inc. v. Leatherman Tool Group, 532 U.S. 424, 432 (2001); Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### III

### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

    Additionally, because plaintiffs have now filed four successive Complaints in this action and there is no reasonable prospect that plaintiffs will be able to remedy this near-total failure to properly plead any of their thirteen claims against DMI S.A., each and every one of those claims should be dismissed with prejudice. See e.g., Electronic Communications Corp. v. Toshiba America,

---

[17] In light of the fact that the Court has not yet so held subsequent to the transfer of this action by the Judicial Panel on Multidistrict Litigation, we note that plaintiffs also have entirely failed to properly plead their RICO claims against DMI S.A. To state a claim for a civil violation of RICO, a plaintiff must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation. The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d. Cir. 1983). Where a plaintiff cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue. See, e.g., Moss, 719 F.2d at 18-19 (dismissing RICO action where complaint contained no valid allegation of fraud). Once more, the Complaint's sparse allegations regarding DMI S.A., even if true, would establish none of the requisite elements of a civil RICO claim. The Complaint alleges no predicate acts or agreement to commit predicate acts by DMI S.A.; no 'pattern' of 'racketeering activity' engaged in by DMI S.A.; no assent by DMI S.A. to any alleged RICO conspiracy; no overt acts by DMI S.A. in furtherance of any alleged conspiracy; and no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise.' Plaintiffs' conclusory statements of legal conclusions couched as factual allegations, see TAC ¶¶ 690-98, 700-06, 708-14, do not state any RICO claims against DMI S.A. See DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations). And again, plaintiffs have failed to plead proximate causation as to DMI S.A. See also Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim").

129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile).  As demonstrated above, plaintiffs' failure to make out any of their numerous claims against DMI S.A. is as nearly complete as one could imagine.  Plaintiffs have filed four consecutive Complaints over the course of a year and a half, without any amendment of or addition to the wholly inadequate averments regarding DMI S.A.  There is no indication, within or outside of the four corners of the TAC, that plaintiffs will in good faith be able to cure these defects.  Dismissal of plaintiffs' claims against DMI S.A., therefore, should be with prejudice.  See Toshiba America, 129 F.3d at 246; see also Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment futile).

## **CONCLUSION**

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
    April 9, 2004

Respectfully submitted,

**WHITE & CASE LLP**

By:_____
    James J. McGuire (JJM-5390)

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Defendant*
    *DMI Administrative Services, S.A.*

Timothy J. McCarthy
Mark A. Berube
    Of Counsel