**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| | ) | |
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| | ) | |
| _____) | | |
| | ) | |
| THOMAS E. BURNETT, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03 CV 9849 (RCC) |
| | ) | |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

**ADEL A.J. BATTERJEE'S
MOTION TO DISMISS WITH
SUPPORTING POINTS AND AUTHORITIES**

Under Fed. R. Civ. P. 12(b)(2), (b)(5) and (b)(6), Adel A.J. Batterjee (D93) through under-signed counsel, hereby moves for dismissal of any claims in this case against him. The reasons this Motion should be granted are set forth below.

**I. Background**

Adel A.J. Batterjee (D93) ("Batterjee") is a resident of the Kingdom of Saudi Arabia who, without any specific allegations of causation or proximate cause has been accused of conspiracy in the worst terrorist attack on US soil and one of the greatest tragedies of our times world-wide.  Batterjee has absolutely no connection with the tragic events of September 11, 2001, nor does he support those that brought them about. See Batterjee Affidavit at ¶ 7 (Exhibit A).

Even though the lawsuit against Batterjee is completely without merit, based in the facts alleged in the 3AC, Batterjee is not even subject to personal jurisdiction of this civil court. See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003). He has not been properly served. Also, they have not offered a single specific allegation establishing the elements of a cause of action that he should be held legally liable for the terrorist attacks of September 11, 2001 (hereinafter "9-11") in the US. As a result, any claims against Batterjee should be dismissed.

Plaintiffs' counsel seek to set aside the great Constitutional protections our civil justice system provides due to the heinous nature of the wrong that has befallen their clients. While Batterjee sympathizes with the great loss that has befallen families of 9-11, he cannot be expected to be forced to defend himself in a lawsuit the elements of which he is neither liable for nor subject to. If Plaintiff's counsel feels strongly enough about his supposed culpability, they can seek redress in Saudi courts. Our system also recognizes an injustice to force a private citizen of another country to hire lawyers and respond when he has not been properly served, cannot tell what the allegations against him are, must provide his response in a court that has no jurisdiction over him, and face a potentially sullied reputation just for being named in the same document as the members of the Hall of Shame who do take credit for 9-11.

On this point, Judge James A. Robertson in a ruling on this case has observed, "The use of the privileged medium of a lawsuit to publicly label someone as an accomplice of terrorists can cause incalculable reputation damage" and "dramatic economic consequences as well." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp.2d 86, 103 (D.D.C. 2003). As a result -- far from relaxing legal requirements --

"fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he … does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the 3AC ." Id. at 104.  This logic leads to the conclusion that all claims against Batterjee should be dismissed.

## II. Statement of Facts

### A. General Background

The 3AC broadly alleges that more than 200 co-defendants "intentionally, willfully and knowingly conspired, planned, financed, supported, executed and carried out a plan to murder, maim and injure United States' citizens, residents and others on September 11, 2001." (3AC at ¶ 5) There are eight causes of action based on intentional murder, assault and battery, and property damage arising out of the attacks on September 11th. (3AC at ¶¶ 612-25)  Batterjee is mentioned in two contexts throughout the 600 paragraphs of allegations. First, plaintiffs allege that Batterjee is a "co-conspirator" along with eleven other parties. (3AC at ¶ 228)  The 3AC does not state how these twelve parties are related except to erroneously say that they all do business or are registered to do business in the United States and that two different groups, Al Birr and Benevolence International Foundation are branches of each other or related groups when they are not. (Id.)  Nor does the 3AC contain any allegations as to what Batterjee did—when or where—in furtherance of the supposed conspiracy for 9-11.  Second, plaintiffs allege that Batterjee through a bank he chaired somehow ran afoul of 9-11 attackers and planners. (3AC at ¶ 75.)  Again, the 3AC does not state how parties worked together to plan or aid

or abet 9-11. (Id.)  Overall, the 3AC does not contain any allegation as to what Batterjee knew about or conspired in any way to plan 9-11.

Batterjee is a citizen and resident of Saudi Arabia. He was born there in 1946. For his entire life, he has lived in Jeddah.  In the mid-1960's, Batterjee attended college in the US.  Following that, he returned to his native country.

### B. Batterjee's Lack of Connection to This Forum.

The only time Batterjee lived in the US in the 1960's as a student.  Batterjee has been in the United States only once in the past ten years, and then only for personal reasons.  See Batterjee Affidavit at ¶ 4 (Exhibit A).  Nor were his actions directed towards the Unites States.  He owns no property and conducts no business in this country. Id. at ¶ 5.

## III. Argument

### A. This Court Lacks Personal Jurisdiction Over Batterjee

As this section will show, plaintiffs have not established, and cannot establish, that this Court has personal jurisdiction over Batterjee. In adding him, the plaintiffs have offered no allegations relating to the elements of the causes of action for which he is alleged to be liable, thus failing to meet the basic notice pleading requirements of Fed. R. Civ. P. 8.    Plaintiffs' approach flies in the face of the normal pleading process: Ordinarily, a defendant begins by responding to what the plaintiff has actually alleged about him. Here, however, we must respond to what plaintiffs might say.  Then, having read this Motion, plaintiffs may finally provide an allegation or two, which will likely be designed in part to show that, having been forced to shoot at an non-existent target, we have missed the mark.  Thus, rather than following the path required by the Rules--stating

claims and awaiting a response—plaintiffs' counsel have arranged matters so that Batterjee must first respond to nonexistent or speculative claims, only later learning what the claims really are. We trust that the Court will not permit plaintiffs to secure such an adversary advantage simply because, as to Batterjee, they have filed an insufficient complaint.

### 1. At Minimum, Plaintiffs Must Establish That Batterjee Has Purposefully Established Contacts With the United States, the District of Columbia or the State of New York and That Any Claims Against Him Arise Out of Those Contacts

One cannot be made a defendant unless the court in which he is sued has personal jurisdiction over him. The requisites of such jurisdiction vary depending on the causes of action and applicable service provisions, but, whatever the legal basis for a lawsuit, the minimum requirements for personal jurisdiction are constitutional.  In particular: the Due Process Clause requires that, if a defendant is not present "within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). This is to ensure that an individual is not "subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe, 326 U.S. at 319).  The forum as to which jurisdictional contacts would be evaluated under that section is the District of Columbia or New York, and not the United States as a whole. However, plaintiffs have argued that the combined effect of nationwide service provisions in the Anti-Terrorism Act, 18 U.S.C. § 2333 et seq. (2000) and notions of

"pendent jurisdiction" mean that the United States is the forum for all claims. Although we do not concede that, this discussion focuses on Batterjee's connections with the United States, since even they are far too slight to justify personal jurisdiction. Notably, one of plaintiffs' two grounds for claiming a right to nationwide service--their RICO claims--is already out of the case. See Memorandum Opinion (Docket 224) at 3, 24-28 (July 25, 2003). Should ATA allegations against Batterjee fail to state a claim, then the District of Columbia would be the forum for jurisdictional contacts purposes. In that case, the lack of personal jurisdiction would be even more apparent: Batterjee has never had any contact with Washington, D.C. or New York, and a "conspiracy" basis for jurisdiction would be impossible for several reasons, including where the 9/11 attacks took place.

Unless forum contacts are " 'continuous and systematic' "-- which is surely not the case for Batterjee -- a court may exercise only "specific," but not "general," jurisdiction over a non-resident. To establish the existence of specific personal jurisdiction, a plaintiff must show three things:

First, the plaintiff must show that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). As a result, "[j]urisdiction is proper . . . where the contacts proximately result from the actions [of the] defendant *himself* that create a 'substantial connection' with the forum . . . ." Burger King, 471 U.S. 475, quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957) (italicized in original).

Second, the plaintiff must show that its claims "arise out of or relate to" the defendant's activities in or contacts with the forum. <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 414 (1984).

Finally, if minimum contacts have been established and the claims arise out of or relate to them, a court must determine whether assertion of personal jurisdiction would comport with "'fair play and substantial justice.'" <u>Burger King</u>, 471 U.S. at 476-78, quoting International Shoe, 326 U.S. at 310. This determination involves balancing a number of factors including "the burden on the defendant," (<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980)) so that, in appropriate cases, courts may decline to exercise jurisdiction where doing so <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984) (citation omitted).

The specific jurisdiction requirement that a non-resident defendant purposefully establish contacts with the forum is not satisfied "as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or third person.' " Burger King, 471 U.S. at 475 (citations omitted). would be "gravely difficult and inconvenient" for the defendant. <u>M/S Bremen v Zapata Off-Shore Co</u>., 407 U.S. 1, 18 (1972). <u>See</u> <u>Burger King</u>, 471 U.S. at 477-78. <u>See also</u> the Court's Memorandum Opinion (Docket 224) at 13, n.5 (July 25, 2003).

The questions of burden and fairness can have special significance for a non-resident alien defendant like Batterjee. As the Supreme Court has said, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." <u>Asahi Metal Industry v. Superior Court</u>, 480 U.S. 102,

114 (1987).  In general, the Court continued, " '[g]reat care and reserve should be

exercised when extending our notions of personal jurisdiction into the international

field.'" Id., 480 U.S. at 115, (quoting United States v. First National City Bank, 379 U.S.

378, 404 (1965) (Harlan, J., dissenting)). See also In re Baan Co. Sec. Litigation, 81 F.

Supp. 2d 75, 81 (D.D.C. 2000).

### 2. Batterjee Does Not Have Sufficient Contacts With This Forum and the United States

To include him in this lawsuit, plaintiffs have the initial burden of alleging facts

sufficient to make a prima facie showing that there is personal jurisdiction over Batterjee.

Second Amendment Foundation v. United States Conference of Mayors, 274 F.3d 521,

524 (D.C. Cir. 2001); First Chicago International v. United Exchange Co., 836 F.2d

1375, 1378 (D.C. Cir. 1988); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C.

Cir. 1983) cert. denied 467 U.S. 1210 (1984).  Perhaps the reason the plaintiffs have not

made jurisdiction allegations is that they do not have a sufficient basis for doing so.

Batterjee has had minimal or non-existent contact with the District of Columbia, New

York and the United States. He has only been to the US a few times for academic and

personal reasons and he has not conducted business or other activities there.  Since the

late 1980's, he has been in the United States only for personal reasons.  He has no

property or bank accounts and conducts no business in this country.  General jurisdiction,

which requires "continuous and systematic" contacts, is clearly not invoked here.

Specific jurisdiction would not be proper, either.  With only one United States

contact in the past ten years, and only some short visits in the last 38 years, Batterjee's

contacts with any pertinent forum are, as the Supreme Court has put it, so "attenuated"

and "random" that they cannot support specific jurisdiction. Even if those contacts

somehow constituted a "substantial connection" with the United States, plaintiffs could not possibly show that their claims "relate to or arise out" of such connections, as specific jurisdiction requires. That is, plaintiffs could not possibly show that claims concerning the terrorism of September 11, 2001 arise out of the trips no later than the year 2000.  The over-reaching claim in Paragraph 1 of the 3AC--that the Court has "personal and subject matter jurisdiction over the Defendants herein"--does not cure this deficiency. A plaintiff is required to "allege specific acts connecting the defendant with the forum," and such "bare allegations are insufficient." Sunlite Inc. v. Bfg Bank AG, 849 F. Supp. 74, 75 (D.D.C. 1994) (citing First Chicago International, 836 F.2d at 1378-79).

### 3. Conspiracy Claims, If Any, Would Not Establish Personal Jurisdiction

In responses to other personal jurisdiction motions, plaintiffs have said that some defendants have "purposefully directed" actions toward the United States through, they allege, a vast conspiracy. Relying on that, plus an observation in the Supreme Court's Burger King decision that jurisdiction may sometimes be exercised over a defendant not physically present in the forum, plaintiffs seem to say that, even if a defendant has never had any contact with a forum, a simple allegation that he conspired with others to take action within the forum is sufficient to create personal jurisdiction.

Of course, for Batterjee, there is no specific allegation that would surely be sufficient to create jurisdiction over him.  Federal courts in this district apply the "conspiracy theory" of jurisdiction "warily," requiring "particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Dooley v. UTC, 786 F. Supp. 65, 78-80 (D.D.C. 1992).  In addition, "mere

speculation that the non resident defendants' [sic] are co-conspirators" is "insufficient to meet the plaintiff's *prima facie* burden." Id. at 78. As one court has put it, "conclusionary" allegations of conspiracy do not "constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." Naartex Consulting, 722 F.2d at 787.  Instead, plaintiffs must "plead with particularity" all the elements of civil conspiracy, including the nature of the conspiracy and the overt acts taken in the forum. Jungquist v. Sheikh Sultan Bin Batterjee Al Nahyan, 115 F.3d 1020, 1031 (D.C. Cir. 1997). See also First Chicago International v. United Exchange Co., 836 F.2d at 1378 ; Second Amendment Foundation, 274 F.3d at 524.  Without such requirements, plaintiffs could in effect eliminate personal jurisdiction as an independent requirement, by simply mentioning a "conspiracy" and sweeping in anyone they claim was part of it. The cases cited can also prevent plaintiffs from obliterating the distinction between personal jurisdiction issues and merits questions. Here, for example, plaintiffs seem to say that bare allegations of extraterritorial participation in a conspiracy provide personal jurisdiction. But such allegations also appear to be the basis for most of plaintiffs' claims of illegality.  Therefore, in order to adjudicate jurisdictional questions on their face, courts in this district and circuit require "particularized" allegations of each conspiracy element when that is the claimed basis for jurisdiction, and then only apply that concept "warily."  Here, as has been noted, there are no specific allegations concerning Batterjee's use of this Forum to engage in conduct that would give rise to conspiring to aid and abet or otherwise plan the September 11th attacks. And, given the facts, there could be no good faith basis for any such claims. There is simply no adequate basis for personal jurisdiction over him.

**B. Plaintiffs Have Improperly Served Process on Batterjee Which Requires Quashing of Service of Process and Dismissal of the Complaint.**

As the Court's July 25, 2003 Memorandum Opinion indicates, in some few cases, even if a defendant's forum contacts meet the constitutional minimum, requiring him to participate in a lawsuit may be so burdensome that it would violate the fairness elements of Due Process. Burnett, 274 F. Supp. 2d at 96, n.5. And, as noted, the Supreme Court has said that courts should be particularly sensitive to "unique burdens placed upon one who must defend oneself in a foreign legal system . . . ." Asahi Metal Industry, 480 U.S. at 114. Here, of course, Batterjee has no meaningful contacts with either the United States or the District of Columbia. His few visits to this country in the last 38 years since he graduated from college are constitutionally insufficient. However, if there were any question about that conclusion, the burden on Batterjee from participation in this case would surely tip the balance away from personal jurisdiction. As a foreign resident, his ability to participate in the defense of this case is limited, and the burden on him of doing so would be extreme. To hale a man in his circumstances into this court consistent with "fair play and substantial justice," plaintiffs must make a much more substantial jurisdictional showing than they have -- or than they ever can.

Plaintiffs' improper attempts to serve Batterjee were defective, and mandate quashing of service of process and dismissal of the complaint against him. As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Batterjee, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach him. Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in

*Al Quds Al Arabi* (in Arabic45). See Plaintiffs' Motion for Extension of Time for Service

of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to

Federal Rule 4(f), at 2 (Mar. 24, 2003) (Burnett D.D.C. Docket No. 95). After obtaining

Judge Robertson's approval, plaintiffs subsequently published a *modified* version of this

notice which listed the thirty-six (36) names that appeared in the original order approved

by Judge Robertson, including Batterjee, as well as eleven (11) names not approved by

Judge Robertson. See Plaintiffs' Notice of Service by Publication (Aug. 8, 2003) (Burnett

D.D.C. Docket No. 244).  Plaintiffs' attempted service by publication is clearly

inadequate. Plaintiffs' proof of service acknowledges that the *International Herald*

*Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, an extremely

small number in a country with a population of more than 24 million.  Even more

inadequate is plaintiffs' attempted service by publication in Al Quds Al Arabi, a London-

based newspaper which is banned in Saudi Arabia, as noted in an article that quotes one

of the plaintiffs' attorneys for the Havlish case. See P. Mendenhall, "Seeking bin Laden

in the Classifieds," MSNBC, online at http://www.msnbc.msn.com/id /3340393 (Oct. 24,

2003) (attached hereto as Exhibit 2). These undisputed facts demonstrate that plaintiffs'

contention that they have "served by publication" a number of Saudi defendants,

including Batterjee, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is

simply false.

  Furthermore, it is settled law that service by publication is a disfavored remedy,

and one that should be employed only if the plaintiffs are unable to obtain the business or

home address of the defendant. City of New York v. New York, N.H. & H.R. Co., 344

U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless

substitute for actual service of notice. Its justification is difficult at best."). Plaintiffs have

made no attempt to demonstrate, at the time they sought leave to serve some defendants

by publication or any later time, that Batterjee's address was unavailable, either on the

Internet, or through commercial directories, so as to make it impossible to serve him by

the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on foreign

defendants.

In addition, service by publication does not comport with due process where, as

here, the publication is in newspapers that either are not circulated in the defendant's

community, or otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a
> reliable means of acquainting interested parties of the fact that their rights
> are before the courts. . . . Chance alone brings to the attention of even a
> local resident an advertisement in small type inserted in the back pages of
> a newspaper, and if he makes his home outside the area of the newspaper's
> normal circulation the odds that the information will never reach him are
> large indeed.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950).  Here,

publication in *Al Quds Al Arabi* is inadequate, given that Mr. Batterjee does not reside in

a country within that "newspaper's normal circulation."

Nor can plaintiffs contend that Batterjee, by entering an appearance, has "actual

notice" which somehow substitutes for proper service of process. It is settled law in the

Second Circuit that "actual notice" — whatever that may be — is no substitute for proper

service of process in compliance with Rule 4, Fed. R. Civ. P. See, e.g., National Dev. Co.

v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that

'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403,

405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to

- 13 -

Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the

lawsuit.").  Plaintiffs have sought to argue otherwise, which would mean Rule 12(b)(5),

Fed. R. Civ. P., which allows a defendant to contest service of process, is meaningless.

In this case, the only remedy for failure to effect proper service of process is quashing of

the plaintiffs' attempts to serve Batterjee by publication, see Baade, 175 F.R.D. at 406

("service of process must be quashed"), and dismissal of the complaint against him under

Rule 12(b)(5), Fed. R. Civ. P.

### C. The 3AC Fails to State Any Claim Against Batterjee Upon Which Relief Can Be Granted.

None of the eight counts of the 3AC states all the elements of a cause of action

against Batterjee.  Some do not state causes of action at all, even in form. The others all

fail for the same reason, among others: failure to allege that Batterjee did anything that

connects him proximately (or otherwise) to the tragic events that caused plaintiffs' injury.

### 1. Each of Plaintiffs' Causes of Action Requires That the Defendant's Alleged Actions Proximately Caused Their Injury.

Although the circumstances are uniquely horrific, this case is a tort case for

personal injuries. Each Count arises in tort, and the legal theory of each Count requires

that plaintiffs establish that a named defendant engaged in a tortious act that proximately

caused plaintiffs' injury.  However, the factual allegations against Baterjee which are

sprinkled throughout the 3AC in ¶¶ 75, 76, 180-5, 217-219, 228-230, 365 and in ¶¶ 14,

15, 18, 20 and 38 of Plaintiffs' More Definite Statement as to Defendant Yousef Abdul

Latif Jameel (Mar. 16, 2004) are consistent in only one matter: no allegation of proximate

cause.

## 2. The 3AC Does Not Allege That Batterjee Proximately (or Otherwise) Caused Plaintiffs' Injuries.

The 3AC fails to state a claim on any of these theories because it does not allege that anything that Batterjee did or failed to do led in any way to the events of September 11. It does not allege that he knew in advance about these events or any other terrorist act, or desired any such act to occur. It does not allege that he ever transferred anything of value to anyone associated with the events of September 11. "Proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992). The defendant's acts must have been "a substantial factor" leading to the injury, and the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of the acts. In re Am. Express Co. S'holder Litig., 39 F.3d 395, 402 (2d Cir. 1994) (quoting Hecht v. Commercial Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir. 1990)); see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d Cir. 1999) (emphasizing that the "direct injury test" is independent of, and in addition to, the requirements that the tortious act be a "substantial" factor and that the injury be reasonably foreseeable). Thus, a plaintiff must allege facts to show both that the injury would not have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial factor foreseeably leading to the injury. See, e.g.,Holmes, 503 U.S. at 268 (liability for injury "by reason of" defendant's conduct requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well").

By these standards, the 3AC is far from stating a claim that Batterjee caused plaintiffs' injuries; plaintiffs fail to allege facts suggesting even "but for" causation, let

alone proximate cause. As noted, the alleged factual basis for the claims against Batterjee is that he was Chairman of Al Shamal Bank (ASB) (3AC ¶ 75) and that one individual named Al Fadl, said to be associated with al Qaeda, testified in another case that that Osama bin Laden and at least six al Qaeda operatives held bank accounts in ASB under their real names. (3AC ¶ 79). It also ties his alleged founding and continued funding, which is inaccurate, of the Illinois-based non-profit group Benevolence International Foundation. These fail, for three reasons, to connect any act of Batterjee to plaintiffs' injuries.

First, the 3AC does not allege any facts to suggest that ASB itself acted wrongfully. The 3AC does not indicate anything about how the "account" was handled. And just as fundamentally, the 3AC does not allege that the law of Sudan or any other country barred anything ASB did or required ASB to do anything it did not do. As a matter of law, banks are *not* responsible for assuring that their customers are good people, or for policing how their customers use the money in their accounts. Taking as true the allegation that ASB at some time held the "account," this allegation does not begin to state a claim even against ASB. See Burnett, 274 F. Supp. 2d at 109 (D.D.C. 2003) (Robertson, J.) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.") (footnote omitted).

Second, the 3AC alleges no facts to suggest that the account was in any sense a cause of—or was connected at all to—the events of September 11 or any other terrorist activity. There are no allegations about when the account was held, how much money (if

any) was in the account, where the money came from, whether it was ever used for any purpose, and if so what that purpose was.  The Seventh Circuit has held that even direct funding of a known terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, *i.e*., to allege facts to show that the murder of David Boim was "a reasonably foreseeable result of . . . the donation." <u>Boim v. Quranic Literacy Inst</u>., 291 F.3d 1000, 1012 (7th Cir. 2002).  The 3AC's allegations fall far short of the allegations deemed *in*sufficient in <u>Boim</u>.

Third, the 3AC alleges no facts to link Batterjee to any of the events that caused plaintiffs' injury. The 3AC does allege after a factually incongruent "history" that the group BIF is an "al Qaeda front organization" (¶ 229) and makes generally sweeping allegations that all Defendants "knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks that killed and injured the Plaintiffs herein."  <u>See</u>, <u>e.g.</u>, 3AC ¶ 684.  But even if that conclusory allegation were cognizable, there is no allegation that there was any connection between BIF's activities and the events that injured the plaintiffs, or that (even if there were such a connection) Batterjee knew or should have known it.  Taking together the allegations of his Chairmanship of ASB and founding of BIF, even if plaintiffs had alleged facts to state a claim against ASB or BIF, they failed to allege facts sufficient to state any claim against any corporate officer of ASB or BIF, including Batterjee.  In others words, there are no specific acts taken by Batterjee in the context of his role at BIF which make up the elements of any of the causes of action alleged.  <u>See</u> <u>Armour & Co. v. Celic</u>, 294 F.2d 432, 439 (2d Cir. 1961) ("[A] director, merely by

reason of his office, is not personally liable for the torts of his corporation; he must be shown to have personally voted for or otherwise participated in them.); Olszewski v. Waters of Orchard Park, 758 N.Y.S.2d 716, 717 (App. Div. 2003) (corporate officer cannot be held individually liable for the tortious conduct of the corporation "merely because of his relationship to" the corporation); Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 966 n.10 (3d Cir. 1988) (corporate officer is individually liable for wrongful act of the corporation only if the officer participated in the tortious activity); Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 929 (4th Cir. 1984) (corporate officer is individually liable for wrongful act of corporation only if the officer was directly engaged in the transaction giving rise to liability; marginal participation or participation subject to the directions and advice of others is insufficient); Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (corporate officer is individually liable for wrongful act of corporation only if the officer had "meaningful participation" in the tortious activity); cf. Meyer v. Holley, 123 S. Ct. 824, 829 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents."). On the ASB allegations, the 3AC alleges that bank accounts at ASB were at some point in time allegedly held by al Qaeda. Because there are no allegations about ASB as to what if anything was in the account, or that anything ever moved out of the account, such allegations are insufficient even to show that the bank was a passive "funnel" through which funds passed. See Burnett, 274 F. Supp. 2d at 109. Even if an inference could be drawn that at some point some sum of money passed through this account, such allegations are insufficient to state a claim

against the bank, much less against the Chairman of the bank. Id. (bank is not liable for

injuries done with money that passes through its hands in the form of withdrawals,

deposits, or routine banking services).

The general allegation that the acts of *all* the defendants "caused" the plaintiffs'

injury (¶ 610) is obviously insufficient to state a claim against Batterjee (or any other

particular defendant). "[C]ourts do not accept conclusory allegations on the legal effect of

the events plaintiff has set out if these allegations do not reasonably follow from his

description of what happened." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d

763, 772 (2d Cir. 1994) (internal quotation and citation omitted); see also In re Am.

Express Co. S'holder Litig., 39 F.3d at 400 n.3 (conclusory allegations of proximate

cause "need not be accepted as true for purposes of ruling on a motion to dismiss"). Even

under the notice pleading standard, courts accept neither inferences drawn by plaintiffs if

such inferences are unsupported by the facts set out in the 3AC, nor legal conclusions

cast in the form of factual allegations. See, e.g., Jazini, 148 F.3d at 184; Lehigh Valley

Indus., 527 F.2d 93-94; Browning, 292 F.3d at 242 (interpreting

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)); Burnett, 274 F.3d at 103; see

also Citibank N.A. v. K-H Corp., 968 F.2d 1489, 1495-96 (2d Cir. 1989) (affirming

dismissal of securities fraud claim because plaintiff did "not allege facts that support its

allegation that there is a causal connection between the fraud alleged and the subsequent

loss that it suffered").

Finally, plaintiffs allege in a wholly conclusory fashion that Batterjee was one of

a number of "[c]o-conspirators, aiders and abettors of the Benevolence International

Foundation" (3AC ¶ 228) and a "terrorism financier" (3AC ¶ 365).  But the 3AC

nowhere alleges the elements necessary to state a claim for aiding and abetting against
Batterjee.  Again, legal conclusions cast in the form of factual allegations are entitled to
no weight. "[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual*
predicate concrete enough to warrant further proceedings, which may be costly and
burdensome." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st
Cir. 1999) (Boudin, J.); see Meng v. Schwartz, 116 F. Supp. 2d 92, 95 (D.D.C. 2000)
("legal conclusions, deductions or opinions couched as factual allegations are not given a
presumption of truthfulness") (citing Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C.
Cir. 1987)). The requirements for a claim of aiding and abetting are that the defendant
had "knowledge of" and provided "substantial assistance" in the commission of the
underlying wrong. See, e.g., Wight v. Bankamerica Corp., 213 F.3d 79, 91 (2d Cir.
2000); Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); Halberstam v. Welch, 705
F.2d 472, 478 (D.C. Cir. 1983) (aiding and abetting requires *"knowing action* that
substantially aids" tortious conduct); Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d
91, 99 (D.D.C. 2002).  Even "awareness and approval [of wrongful activity], standing
alone, do not constitute substantial assistance."  Armstrong, 699 F.2d at 92. Here, there is
no allegation that Batterjee either knew in advance about the events of September 11 (or
any other terrorist activities), or approved such activities, or assisted them in *any* way.
Courts have routinely rejected allegations of aiding and abetting that "are so broad and
conclusory as to be meaningless."

    The Seventh Circuit's decision in Boim illustrates the failure of plaintiffs'
allegations here to state any claim against Batterjee.  There, the court held that even
allegations of direct cash payments to a declared terrorist organization (Hamas), which

then used the money to sponsor a terrorist act, were *not sufficient* to state a claim against

the donor for engaging in an act of "international terrorism," because no facts were

alleged to suggest that the donations were the proximate cause of the injury.  [T]he

[Antiterrorism Act] itself requires that in order to recover, a plaintiff must be injured "by

reason of" an act of international terrorism.  The Supreme Court has interpreted identical

language to require a showing of proximate cause. . . . Foreseeability is the cornerstone of

proximate cause, and in tort law, a defendant will be liable only for those injuries that

might have reasonably been anticipated as a natural consequence of the defendant's

actions. . . . In the circumstances of this case, the Boims cannot show that David Boim

was injured "by reason of" the defendants' payments to Hamas in the traditional tort

sense of causation unless they can also show that murder was the reasonably foreseeable

result of making the donation.  Boim, 291 F.3d at 1011-12 (citations omitted).  The Boim

court allowed the plaintiffs to pursue a claim under Section 2333 for "aiding and

abetting" Hamas in killing their son, because the plaintiffs had alleged not only that the

defendants had "engaged in raising and laundering money for Hamas" and "functioned as

fronts for Hamas" and "raised and channeled funds to Hamas to finance terrorist

activities in Israel," where their son was murdered, but also that the defendants sent

money to Hamas *that was in fact used "to purchase the vehicle, machine guns, and*

*ammunition used to kill [their so*n] *as well as to train his killers and to provide a stipend*

*for the family of one of his murderers."* 291 F.3d at 1024 (emphasis added). The contrast

with the "facts" alleged in the present case is stark.  Here, plaintiffs have drawn

conclusory allegations of money flows that do not even begin to allege that Batterjee has

ever given or transferred *any* money or other assets to anyone to further the attacks of 9-11.

> ### 3. Whatever the Allegations Might Be, Certain Causes Of Action Do Not Apply to Batterjee.

In ruling on other motions to dismiss, the Court has already concluded that some of plaintiffs' causes of action lack legal merit. Therefore, even if plaintiffs are given another chance under Rule 12(e) to file their complaint against Batterjee, the causes of action already ruled on should be dismissed. These include the two RICO counts in the 3AC, as well as the negligence counts. See July 25, 2003 Opinion (Docket 224) at 3, 28, 42-43.

## IV. Conclusion

Plaintiffs cannot demonstrate that there is personal jurisdiction to hold Batterjee in this case, they have served him properly and they have not provided sufficient allegations laying out all the elements of any of the causes of action alleged. Under Fed R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6), plaintiffs' 3AC against him should be dismissed. A proposed Order is attached.

Respectfully Submitted,

/s/ Ashraf Nubani

_____

Ashraf Nubani
Busch & Nubani, P.C.
5029 Backlick Road, Suite A
Annandale, VA 22003
703-658-5151
703-658-9200, fax

Attorney for Defendant
Dated: April 9, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System and by US postal mail for parties not on ECF.


/s/ Ashraf Nubani

_____

Ashraf Nubani

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
                                                        )
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001   )          03 MDL No. 1570 (RCC)
                                                        )
———————————————————————)
                                                        )
THOMAS E. BURNETT, SR., *et al.*,                       )
                                                        )
            Plaintiffs,                                 )
                                                        )
        v.                                              )          C.A. No. 03 CV 9849 (RCC)
                                                        )
AL BARAKA INVESTMENT AND DEVELOPMENT    )
        CORPORATION, *et al.*,                          )
                                                        )
            Defendants.                                 )
———————————————————————)

**ORDER**

Having considered the parties' written submissions and arguments, the Court finds that plaintiffs have failed to state a claim against Adel A.J. Batterjee upon which relief may be granted and that, if they had, the Court would lack personal jurisdiction over him.  Accordingly, under Fed. R. Civ. Pro. 12(b)(2), 12(b)(5) and 12(b)(6), together and separately, plaintiffs claims against Batterjee must be dismissed. It is therefore

ORDERED that plaintiffs' claims against Batterjee are dismissed with prejudice.

———————————————————
Dated: _____                                     Judge, U.S. District Court