UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
In re Terrorist Attacks on September 11, 2001       :        03 MD 1570 (RCC)
:
------------------------------------------------------------------ x
:
This Document Relates To:                                         :        03 CV 9849 (RCC)
:
THOMAS BURNETT, SR., et al.,                                 :
:
       Plaintiffs,                                                          :
:
       v.                                                                         :
:
AL BARAKA INVESTMENT AND                                 :
DEVELOPMENT CORPORATION, et al.,              :
:
       Defendants.                                                        :
:
------------------------------------------------------------------ x


## REPLY MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT

SHEARMAN & STERLING LLP
Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

I. SUBJECT-MATTER JURISDICTION LIES EXCLUSIVELY IN THE SOUTHERN DISTRICT OF NEW YORK.................................................................. 2

II. PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK DO NOT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8 .............................. 4

III. PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED................................. 7

    A. Plaintiffs' Federal Law Claims Must Be Dismissed............................................... 7

    B. Plaintiffs' State Law Claims Must Be Dismissed Because They Fail To State A Claim........................................................................................................ 9

        1. Plaintiffs' Negligence *Per Se* Claim Fails As A Matter Of Law................ 9

        2. Plaintiffs' Remaining State Law Claims Fail As A Matter Of Law ......... 10

CONCLUSION............................................................................................................................ 11

# TABLE OF AUTHORITIES

## CASES

Page

*Atuahene v. Hartford*, 10 Fed. Appx. 33, 2001 WL 604902 (2d Cir. 2001) .................................. 5

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ........................................... 8

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ........................... 2, 9

*Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659 (S.D.N.Y. 2000) ............................. 9

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................................................ 8

*Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333 (S.D.N.Y. 2000) ................................................... 9

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) .............................................. 4

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ............................................................. 4-5, 8

*Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682 (D.C. Cir. 1996) ................................ 9

*Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209 (S.D.N.Y. 1997) .................................. 6

## STATUTES & RULES

28 U.S.C. § 1631 .......................................................................................................................... 2

31 U.S.C. § 5318 .......................................................................................................................... 9

Air Transportation Safety and System Stabilization Act, Pub. L. No.
   107-42, 115 Stat. 230-42, 49 U.S.C. § 40101 note ........................................................ *passim*

49 U.S.C. § 40120(c) .................................................................................................................... 4

Federal Rule of Civil Procedure 8 ........................................................................................... 4-5, 7

Defendant Saudi American Bank respectfully submits this reply memorandum in further support of its motion to dismiss the claims asserted against it in plaintiffs' Third Amended Complaint ("3AC") (D.D.C. Docket No. 308). This memorandum replies to arguments made in Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Saudi American Bank dated November 14, 2003 (D.D.C. Docket No. 395) ("Opp. Br.").

## PRELIMINARY STATEMENT

No one other than plaintiffs' counsel has ever suggested that Saudi American Bank supported, sponsored, aided, funded or had anything to do with terrorism or the September 11th attacks. Thus, it is not surprising that plaintiffs' complaint against Saudi American Bank offers nothing more than conclusions, guilt by association, and an attempt to lump Saudi American Bank into generalized allegations against "all" 200+ defendants.

Plaintiffs' Opposition Brief chooses not to address Saudi American Bank's key arguments and instead focuses on rehashing the conclusory allegations in their complaint. But ignoring these arguments does not make them go away. And repackaging the conclusory allegations in the complaint does not make them any more viable. Simply saying over and over again that a bank "sponsored" or "conspired" or "aided and abetted" terrorism – without providing some factual basis – does not state a claim.

As set forth below and in our opening memorandum ("Mem."), the Air Transportation Safety and System Stabilization Act ("ATSSSA") provides that (i) this action could only proceed in this District (not the District of Columbia, where plaintiffs filed it), and (ii) plaintiffs' "exclusive remedy for damages" is a cause of action under Section 408(b)(1) of ATSSSA based on the laws of the States in which the airplane crashes occurred (and not under federal statutes such as the Anti-Terrorism Act or the Alien Tort Claims Act). Under applicable

state law, the few factual assertions concerning Saudi American Bank do not state a claim. Saudi American Bank does not belong in this case, and the claims against it should be dismissed now.

## I. SUBJECT-MATTER JURISDICTION LIES EXCLUSIVELY IN THE SOUTHERN DISTRICT OF NEW YORK

Because this action has been transferred to this Court for pretrial purposes only, the Court still must determine whether the Washington, D.C. federal court would have subject matter jurisdiction to try this action. Absent a finding that the D.C. federal court would have jurisdiction, the Court should dismiss this action now.[1]

Before this matter was transferred to this Court for pre-trial purposes, the D.C. federal court – relying on briefing by one out of more than 200 defendants – issued a Memorandum Opinion finding that the court had subject matter jurisdiction over plaintiffs' claims. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 92 (D.D.C. 2003) (Robertson, J.). Recognizing that the issue had been briefed by only one party, the D.C. court made clear, however, that it had "no intention of making decisions on these motions that will preempt other arguments." (Tr. of Hearing dated June 24, 2003 at 7.)

As set forth in our opening memorandum, we respectfully submit that the D.C. court erred. Although plaintiffs state in their Opposition Brief that "[n]one of these arguments [raised in Saudi American Bank's opening memorandum] is new" (Opp. Br. at 25), they acknowledged to the MDL Panel one week later that Saudi American Bank had made "different

---

[1] Citing to 28 U.S.C. § 1631, plaintiffs argue that this issue is "academic" because a jurisdictional defect "is curable at any time by transfer." (Opp. Br. at 24 n.8.) However, at a hearing before the Judicial Panel for Multidistrict Litigation on November 20, 2003, less than one week after filing their Opposition Brief, plaintiffs' counsel acknowledged that "the 1631 cure . . . doesn't prevent possible problems in the future." (Tr. of Judicial Panel for Multidistrict Litigation Hearing dated Nov. 20, 2003 ("MDL Tr.") at 19-21.) Because these same plaintiffs have already filed an identical action in this Court as a prophylactic measure in the event this Court did, in fact, find that the District of Columbia court lacked subject matter jurisdiction, *see Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 03 CV 5738 (S.D.N.Y.), this action should be dismissed. Nothing in the law suggests that a party should be made to defend an action in an MDL proceeding where, upon the completion of pre-trial activity, the case would be remanded to a court that lacked jurisdiction.

2

arguments than were made" by the earlier moving defendants (MDL Tr. at 19, 15), and that the issue was "a close call." (*Id.* at 15.) Plaintiffs' Opposition Brief succeeds only in sidestepping these new arguments.

Our opening memorandum examined the various amendments to ATSSSA in the year following its enactment and explained why Section 408(c) does not exclude claims against "knowing participants" from the exclusive cause of action and exclusive jurisdiction provisions of Section 408(b). (Mem. at 11-14.) Plaintiffs' only answer is that "ATSSSA was written hastily in the immediate aftermath of the September 11 attacks and that Congress had little opportunity to weigh whether it was expressing itself in the clearest language possible." (Opp. Br. at 28.) They simply ignore the logical progression of the amendments to Section 408(c), the parallel language between Sections 408(a) and 408(c), and the fact that if Congress did not want Sections 408(a) and (b) to apply to claims against "knowing participants" it could have simply said so. These amendments were drafted months after the "immediate aftermath" of September 11, and Congress was clear that "knowing participants" would not benefit from any limitation on liability and that all cases brought by direct victims of the terrorist attacks must be brought in the Southern District of New York.

The balance of plaintiffs' arguments focuses on their mistaken conviction that a plain-English reading of ATSSSA places it in conflict with the Anti-Terrorism Act. Not so. Far from excluding other claims "without any indication whatsoever from Congress that this is what was intended" (Opp. Br. at 31), Congress was explicit that it was creating an "*exclusive* remedy for damages." 49 U.S.C. § 408(b)(1) (emphasis added). Section 408(b)(1) establishes "a Federal cause of action for damages arising out of the hijacking and subsequent crashes" and mandates that "this cause of action shall be the exclusive remedy for damages" for such claims. Plaintiffs'

3

claims, which indisputably arise out of the attacks, may only be brought under Section 408(b)(1). Whether the exclusive jurisdiction provision in Section 408(b)(3) applies to all claims or solely to claims brought under Section 408(b)(1) is irrelevant. Under either interpretation, Section 408(b)(3) applies to these claims, granting original and exclusive jurisdiction in the Southern District of New York. Because plaintiffs with claims under Section 408(b)(1) may not assert a claim under the Anti-Terrorism Act (or any other federal statute), there is no conflict between the exclusive jurisdiction provision of Section 408(b)(3) and the general jurisdiction provision of the Anti-Terrorism Act.

Last, while recognizing – as they must – that Section 408(b)(1)'s reference to 49 U.S.C. § 40120(c) is intended to "ensure that the new federal cause of action would be the exclusive remedy," plaintiffs suggest that this exclusive remedy is only applicable to "air transportation defendants." (Opp. Br. at 33.) Nothing in their brief, the statutes or the law supports such a reading. Congress made abundantly clear that the new cause of action in Section 408(b)(1) was the "exclusive remedy" notwithstanding 49 U.S.C. § 40120(c) – in other words, notwithstanding Section 40120(c)'s otherwise applicable mandate that each remedy in that Part was "in addition to any other remedies provided by law" such as the Anti-Terrorism Act.

## II.  PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK DO NOT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8

Contrary to plaintiffs' assertions, Saudi American Bank does not "attempt[] to raise the pleading requirement" (Opp. Br. at 1), or argue that *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1114-15 (D.C. Cir. 2000), or *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), do not describe the appropriate pleading standard. (Opp. Br. at 7.) Both *Sparrow* and *Swierkiewicz* require fair notice of the plaintiffs' claims and the grounds on which those claims rest. Our point is simply that alleging that all defendants "engaged in acts of international

terrorism" and the like does not give a defendant in a 200+ defendant case any notice of the claims against it. (3AC ¶ 646.)

Plaintiffs' summary of the Third Amended Complaint's allegations demonstrates this point. (Opp. Br. at 4.) For example, plaintiffs say that paragraphs 145 and 146 of the complaint allege that "Saudi American Bank was the main banker for both the Saudi Binladin Group and the Mohamed Binladin Organization" and that "[t]he Saudi Binladin Group has publicly confirmed that they collaborated with Sudan on airport and major road construction" while Osama Bin Ladin was also in the Sudan. (Opp. Br. at 4.) Where is the allegation there? What in those paragraphs puts Saudi American Bank on notice of the claims against it?

Nor should the Court accept plaintiffs' plea that the Court read the allegations against Saudi American Bank "in light of Plaintiffs' overall allegations [against] the banking Defendants." (Opp. Br. at 5.) This is precisely the type of group pleading that the Second Circuit rejected in *Atuahene v. Hartford*, 10 Fed. Appx. 33, 2001 WL 604902, at *1 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy" the pleading requirement of Rule 8.) Moreover, plaintiffs' "overall allegations" concern the Islamic banking system, of which Saudi American Bank is not a part. Absent specific allegations concerning Saudi American Bank, plaintiffs' complaint does not satisfy the due process requirements embodied in Rule 8.

Recognizing that their allegations as to "all banks" speak about the Islamic Banking System – and that the Third Amended Complaint does not allege that Saudi American Bank is part of that system – plaintiffs cite to Saudi American Bank's internet site for supposed evidence to establish that Saudi American Bank is part of the Islamic Banking System. Putting aside that plaintiffs cannot state a claim with allegations in their brief, as opposed to their

5

complaint, *see Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 216-17 (S.D.N.Y. 1997), their allegation is nonsense. Saudi American Bank, like numerous other conventional commercial and investment banks, offers Islamic banking products through an Islamic banking unit. Suggesting that Saudi American Bank is therefore part of the Islamic Banking System by virtue of its having an Islamic banking unit demonstrates either ignorance of that system of banking and its participants or a studied attempt to mislead the Court. Indeed, numerous Western banks, including HSBC, UBS, and ANZ, offer Islamic financing products.[2]

Plaintiffs' reference to comments supposedly made by a former member of Saudi American Bank's Shari'ah Supervisory Board are similarly irrelevant (and not mentioned in the Complaint). A Shari'ah Supervisory Board is an independent board of religious scholars that confirms that Islamic financial products comply with Shari'ah principles. Justice Mohammed Taqi Usmani, who an internet site alleges spoke in favor of the Taliban, serves on the Shari'ah boards of numerous financial institutions. But he does not speak for those institutions or Saudi American Bank any more than he speaks for *The Wall Street Journal* (despite being a member of the Shari'ah Board for the family of Dow Jones Islamic Market Indexes and "counsel[ing] Dow Jones" on Shari'ah compliance). See www.djindexes.com/jsp/islamicMarketOverView.jsp.

Given that the entirety of their argument consists of allegation-by-association, it is not surprising that plaintiffs make no mention of (much less an attempt to distinguish) the cases we cited holding that lumping defendants together with "overall allegations" against "all" defendants fails to satisfy Rule 8. (Mem. at 23-24.) While plaintiffs finally concede that the oft-debated paragraph 46 is, on its own, conclusory, they argue it is not conclusory when read in "conjunction with paragraphs 140-148." (Opp. Br. at 8.) There is nothing in their brief, the law,

---

[2] *See, e.g.,* http://www.uae.hsbc.com/hsbc/uae_per/shariah-compliant-banking/amanah-personal-finance; http://www.anz.com/gsf/Products/Islamic_Finance.asp.

6

or common sense that supports the conclusion that combining paragraph 46 with the paragraphs that give Saudi American Bank's history and banking relationships (but state no actionable activity) transforms paragraph 46 into a legally sufficient allegation.

### III. PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A. Plaintiffs' Federal Law Claims Must Be Dismissed

Plaintiffs concede that their claims under the Torture Victim Protection Act (Count 2) and the Racketeer Influenced and Corrupt Organizations Act (Counts 11-13) should be dismissed. (Opp. Mem. at 8 n.4, 15). Their two remaining federal claims fare no better.

First, as noted above, Section 408(b)(1) establishes "a Federal cause of action for damages arising out of the hijacking and subsequent crashes" and mandates that "this cause of action shall be the exclusive remedy for damages" for such claims. Section 408(b)(2) provides that "[t]he substantive law for decision in any such suit" is governed by the law of the State in which the crash occurred. Because plaintiffs' damages arise out of the hijackings and subsequent crashes, plaintiffs cannot assert claims under federal statutes other than Section 408(b)(1) of the ATSSSA, and their remaining federal statutory claims must be dismissed. That should be the end of the story.

In a footnote, plaintiffs state that "[f]or the reasons stated above, § 408(b)(1) does not preclude claims brought by plaintiffs under the Anti-Terrorism Act." (Opp. Br. at 9 n.5.) But nowhere "above" does their brief mention this argument (much less refute it). Plaintiffs' treatment of Section 408(b)(1) in their section on jurisdiction (Opp. Br. at 30-31) is much like the allegations in their complaint – conclusory and devoid of any factual or legal support.

Even if plaintiffs could theoretically still assert federal statutory claims, those claims would fail as a matter of law. With respect to the Alien Tort Claims Act ("ATCA"),

7

plaintiffs argue that "the allegations specific to Saudi American Bank paint a vivid picture depicting the bank as an active participant in the al Qaeda support network." (Opp. Br. at 13.) They do no such thing. Only with a vivid imagination can one infer from the allegations against Saudi American Bank (3AC ¶¶ 140-48) that it somehow materially supported the attacks. (*Id.*) Review of the paragraphs in the complaint that refer to Saudi American Bank also makes plain that plaintiffs have not pleaded facts suggesting that Saudi American Bank had actual knowledge that its actions substantially assisted the commission of the tort. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Plaintiffs have not met their burden of making allegations that put Saudi American Bank on notice of the claims against it. *Swierkiewicz*, 534 U.S. at 512.

Plaintiffs do not dispute that, if the Anti-Terrorism Act was applicable, they could not state a claim absent allegations that Saudi American Bank's conduct was the proximate cause of the plaintiffs' injuries and that Saudi American Bank had "knowledge of and intent to further" the terrorist attacks. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011 (7th Cir. 2002); (Opp. Br. at 10.) Plaintiffs claim that the complaint "allege[s] that Saudi American Bank knowingly and intentionally provided financial support to al Qaeda." (Opp. Br. at 11.) But where? The closest plaintiffs come is in their "allegation" that Saudi American Bank financed construction projects undertaken by the Saudi Binladin Group in the Sudan at the same time that Osama bin Ladin was also in the Sudan. (3AC ¶¶ 145-146.) Plaintiffs fall far short of alleging that Saudi American Bank was the proximate cause of the September 11 attacks or that Saudi American Bank had knowledge of or intent to further the attacks. Saudi American Bank is not asking this Court "to require more specificity in order to further establish the causal link." (Opp. Br. at 12.) Plaintiffs' claims fail because of the total absence of an allegation of *any* causal link or *any* factual allegation concerning knowledge and intent. *See Burnett*, 274 F. Supp. 2d at 102

8

(Plaintiffs must show "an appropriate level of knowledge and intent on the part of that defendant and an appropriate causal link between the actions of that defendant and plaintiffs' injuries.").

### B. Plaintiffs' State Law Claims Must Be Dismissed Because They Fail To State A Claim

#### 1. Plaintiffs' Negligence *Per Se* Claim Fails As A Matter Of Law

Perhaps recognizing that it simply cannot state an intentional tort claim against Saudi American Bank, plaintiffs devote substantial space to a flimsy argument that supposed violations of three U.S. banking regulations creates a duty and constitute negligence *per se*. (Opp. Br. at 19-22.) In order to establish negligence *per se*, plaintiffs have the burden of showing (1) a statute's applicability, (2) that the plaintiffs are in the class that is intended to be protected by the statute, and (3) that the injury to the plaintiffs is a result of the risk that the statute was designed to protect against. *Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682, 687 (D.C. Cir. 1996); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000). Plaintiffs do not cite to any law or regulation that even hints that Saudi Arabia's second-largest financial institution is subject to United States banking regulations. But even if they did, the statutes listed by plaintiffs were not designed to protect individuals such as the plaintiffs in damages resulting from a terrorist attack. (*See* Opp. Br. at 20.) For example, 31 U.S.C. § 5318 gives the Secretary of the Treasury the power to require financial institutions to report suspicious transactions to government authorities. Its purpose was to give law enforcement officials more information in punishing money laundering. *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 340-41 (S.D.N.Y. 2000). It was not designed to aid private plaintiffs and prohibits the disclosure of suspicious activity reports or the information contained within them. *Id.* at 341-42. What is telling is that plaintiffs do not mention (much less distinguish) the cases we cited establishing

that a bank such as Saudi American Bank does not owe a duty here. (Mem. at 32.) There is no basis here for a negligence *per se* claim.[3]

### 2. Plaintiffs' Remaining State Law Claims Fail As A Matter Of Law

Plaintiffs' arguments for the sufficiency of their wrongful death, survival, and intentional infliction of emotional distress causes of action are notable for what they omit: any reference to specific allegations against Saudi American Bank. Plaintiffs do nothing more than point to sections of the Complaint in which they make conclusory statements regarding "all defendants"; that does not suffice.

The complaint also fails to state claims for conspiracy or aiding and abetting. Plaintiffs focus on paragraphs 145 and 146, arguing that these allegations show that Saudi American Bank was both in a conspiracy with, and aided and abetted, al Qaeda. Hardly. Paragraph 145 (which does not even mention Saudi American Bank) alleges that the Saudi Binladin Group and the Mohamed Binladin Organization were involved in the construction of infrastructure in Sudan while Osama bin Ladin and al Qaeda were also in that country. Paragraph 146 alleges that Saudi American Bank was the main banker of the Saudi Binladin Group and Mohamed Binladin Organization for these projects, concluding that "Saudi American Bank financed these Sudanese works directly providing material support and assistance to Osama bin Ladin." (3AC ¶¶ 145-146.) This *non sequitur* hardly states a claim for 3,000 murders. Financing a bank client building an airport or a highway in a country in which a terrorist was residing does not constitute "material support" of that terrorist.

---

[3] Nor can plaintiffs establish negligence *per se* based on unspecified violations of an unspecified guideline of the Saudi Arabian Monetary Agency ("SAMA"). In the interests of brevity, we adopt and incorporate by reference Al Rajhi Bank's argument that plaintiffs fail to state a claim for negligence *per se* based on the SAMA guideline. (D.D.C. Docket No. 411, at 10-12.)

10

## CONCLUSION

Plaintiffs' claims against Saudi American Bank should be dismissed.

Dated: New York, NY
April 9, 2004

Respectfully submitted,

SHEARMAN & STERLING LLP

By: _____
Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2004, I caused a true and correct copy of the Reply Memorandum Of Law Of Defendant Saudi American Bank In Further Support Of Its Motion To Dismiss The Claims Against It to be served: (1) by the Court's Electronic Case Filing System on each party scheduled for electronic notice; and (2) by email, fax, or first-class mail, postage prepaid, on each party not included therein.

Dated: New York, NY
April 9, 2004

_____
Daniel M. Segal, Esq.