**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL No. 1570 (RCC) |
| THOMAS E. BURNETT, SR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 03 CV 9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**AL HARAMAIN ISLAMIC FOUNDATION'S
MOTION TO DISMISS WITH
SUPPORTING POINTS AND AUTHORITIES**

Under Fed. R. Civ. P. 12(b)(5) and (b)(6), Al Haramain Islamic Foundation (D54) through under-signed counsel, hereby moves for dismissal of any claims in this case against it. The reasons this Motion should be granted are set forth below.

**I. Background**

Al Haramain Islamic Foundation (D54) ("Al Haramain") is based in the Kingdom of Saudi Arabia which, without any specific allegations of causation or proximate cause has been accused of conspiracy in the worst terrorist attack on US soil and one of the greatest tragedies of our times world-wide. Al Haramain has absolutely no connection with the tragic events of September 11, 2001, nor does it support those that brought them about. See Al Haramain Affidavit (Exhibit A).

Even though the lawsuit against Al Haramain is completely without merit, based in the facts alleged in the 3AC, Al Haramain has not been properly served. Also, they have not offered a single specific allegation establishing the elements of a cause of action that it should be held legally liable for the terrorist attacks of September 11, 2001 (hereinafter "9-11") in the US. As a result, any claims against Al Haramain should be dismissed.

Plaintiffs' counsel seek to set aside the great Constitutional protections our civil justice system provides due to the heinous nature of the wrong that has befallen their clients. While Al Haramain sympathizes with the great loss that has befallen families of 9-11, it cannot be expected to be forced to defend itself in a lawsuit the elements of which it is neither liable for nor subject to. If Plaintiff's counsel feels strongly enough about its supposed culpability, they can seek redress in Saudi courts. Our system also recognizes an injustice to force a private group of another country to hire lawyers and respond when it has not been properly served, cannot tell what the allegations against it are, , and face a potentially sullied reputation just for being named in the same document as the members of the Hall of Shame who do take credit for 9-11.

On this point, Judge James A. Robertson in a ruling on this case has observed, "The use of the privileged medium of a lawsuit to publicly label someone as an accomplice of terrorists can cause incalculable reputation damage" and "dramatic economic consequences as well." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp.2d 86, 103 (D.D.C. 2003). As a result -- far from relaxing legal requirements -- "fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that it … does indeed have fair notice of what the plaintiffs' claim is

- 2 -

and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the 3AC ." Id. at 104.  This logic leads to the conclusion that all claims against Al Haramain should be dismissed.

## II. Statement of Facts

### A. General Background

The 3AC broadly alleges that more than 200 co-defendants "intentionally, willfully and knowingly conspired, planned, financed, supported, executed and carried out a plan to murder, maim and injure United States' citizens, residents and others on September 11, 2001." (3AC at ¶ 5) There are eight causes of action based on intentional murder, assault and battery, and property damage arising out of the attacks on September 11th. (3AC at ¶¶ 612-25)  Al Haramain is mentioned in two contexts throughout the 600 paragraphs of allegations. Overall, the 3AC contains no specific allegations as to what Al Haramain did—when or where—in furtherance of the supposed conspiracy for 9-11. Also, plaintiffs allege that Al Haramain somehow ran afoul of 9-11 attackers and planners. (See generally 3AC at ¶ 48, 49, 62, 64-66, 85, 147, 150, 154-179, 353, 359, 382, 401, 418, 420, 551, 552.)  Again, the 3AC does not state how parties worked together to plan or aid or abet 9-11. (Id.)  Overall, the 3AC does not contain any allegation as to what Al Haramain knew about or conspired in any way to plan 9-11.

## III. Argument

### A. Plaintiffs Have Improperly Served Process on Al Haramain Which Requires Quashing of Service of Process and Dismissal of the Complaint.

As the Court's July 25, 2003 Memorandum Opinion indicates, in some few cases, even if a defendant's forum contacts meet the constitutional minimum, requiring it to

participate in a lawsuit may be so burdensome that it would violate the fairness elements of Due Process. Burnett, 274 F. Supp. 2d at 96, n.5. And, as noted, the Supreme Court has said that courts should be particularly sensitive to "unique burdens placed upon one who must defend oneself in a foreign legal system . . . ." Asahi Metal Industry, 480 U.S. at 114. Here, of course, Al Haramain has no meaningful contacts with either the United States or the District of Columbia. Its single visit to this country in its whole life are constitutionally insufficient. However, if there were any question about that conclusion, the burden on Al Haramain from participation in this case would surely tip the balance away from personal jurisdiction. As a foreign resident, its ability to participate in the defense of this case is limited, and the burden on it of doing so would be extreme. To hale a man in its circumstances into this court consistent with "fair play and substantial justice," plaintiffs must make a much more substantial jurisdictional showing than they have -- or than they ever can.

Plaintiffs' improper attempts to serve Al Haramain were defective, and mandate quashing of service of process and dismissal of the complaint against it. As plaintiffs' own filings demonstrate, plaintiffs attempted to serve Al Haramain, and a number of other defendants, by publication in two newspapers that plaintiffs knew, or should have known, were unlikely to reach it. Plaintiffs sought leave to publish a notice of this lawsuit, with thirty-six (36) named defendants, in the *International Herald Tribune* (in English) and in *Al Quds Al Arabi* (in Arabic45). See Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f), at 2 (Mar. 24, 2003) *(*Burnett D.D.C. Docket No. 95). After obtaining Judge Robertson's approval, plaintiffs subsequently published a

- 4 -

*modified* version of this notice which listed the thirty-six (36) names that appeared in the original order approved by Judge Robertson, including Al Haramain, as well as eleven (11) names not approved by Judge Robertson. See Plaintiffs' Notice of Service by Publication (Aug. 8, 2003) (Burnett D.D.C. Docket No. 244). Plaintiffs' attempted service by publication is clearly inadequate. Plaintiffs' proof of service acknowledges that the *International Herald Tribune* has a total circulation of only 199 in Saudi Arabia, id. at Ex. A, an extremely small number in a country with a population of more than 24 million. Even more inadequate is plaintiffs' attempted service by publication in *Al Quds Al Arabi*, a London-based newspaper which is banned in Saudi Arabia. These undisputed facts demonstrate that plaintiffs' contention that they have "served by publication" a number of Saudi defendants, including Al Haramain, see Plaintiffs' Revised Status Report, at 10-11 (Mar. 4, 2004), is simply false.

Furthermore, it is settled law that service by publication is a disfavored remedy, and one that should be employed only if the plaintiffs are unable to obtain the business or home address of the defendant. City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best."). Plaintiffs have made no attempt to demonstrate, at the time they sought leave to serve some defendants by publication or any later time, that Al Haramain's address was unavailable, either on the Internet, or through commercial directories, so as to make it impossible to serve it by the established means set forth in Rule 4(f)(2), Fed. R. Civ. P., for service on foreign defendants.

In addition, service by publication does not comport with due process where, as here, the publication is in newspapers that either are not circulated in the defendant's community, or otherwise do not reach the defendant:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. . . . Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if it makes its home outside the area of the newspaper's normal circulation the odds that the information will never reach it are large indeed.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950). Here, publication in *Al Quds Al Arabi* is inadequate, given that Al Haramain does not reside in a country within that "newspaper's normal circulation."

Nor can plaintiffs contend that Al Haramain, by entering an appearance, has "actual notice" which somehow substitutes for proper service of process. It is settled law in the Second Circuit that "actual notice" — whatever that may be — is no substitute for proper service of process in compliance with Rule 4, Fed. R. Civ. P. See, e.g., National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service."); see also Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant GWU had actual notice of the lawsuit."). Plaintiffs have sought to argue otherwise, which would mean Rule 12(b)(5), Fed. R. Civ. P., which allows a defendant to contest service of process, is meaningless. In this case, the only remedy for failure to effect proper service of process is quashing of the plaintiffs' attempts to serve Al Haramain by publication, see Baade, 175 F.R.D. at

406 ("service of process must be quashed"), and dismissal of the complaint against it under Rule 12(b)(5), Fed. R. Civ. P.

### B. The 3AC Fails to State Any Claim Against Al Haramain Upon Which Relief Can Be Granted.

None of the eight counts of the 3AC states all the elements of a cause of action against Al Haramain. Some do not state causes of action at all, even in form. The others all fail for the same reason, among others: failure to allege that Al Haramain did anything that connects it proximately (or otherwise) to the tragic events that caused plaintiffs' injury.

#### 1. Each of Plaintiffs' Causes of Action Requires That the Defendant's Alleged Actions Proximately Caused Their Injury.

Although the circumstances are uniquely horrific, this case is a tort case for personal injuries. Each Count arises in tort, and the legal theory of each Count requires that plaintiffs establish that a named defendant engaged in a tortious act that proximately caused plaintiffs' injury. However, the factual allegations against Al Haramain which are sprinkled throughout the 3AC are consistent in only one matter: no allegation of proximate cause.

#### 2. The 3AC Does Not Allege That Al Haramain Proximately (or Otherwise) Caused Plaintiffs' Injuries.

The 3AC fails to state a claim on any of these theories because it does not allege that anything that Al Haramain did or failed to do led in any way to the events of September 11. It does not allege that it knew in advance about these events or any other terrorist act, or desired any such act to occur. It does not allege that it ever transferred anything of value to anyone associated with the events of September 11. "Proximate

cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992). The defendant's acts must have been "a substantial factor" leading to the injury, and the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of the acts. In re Am. Express Co. S'holder Litig., 39 F.3d 395, 402 (2d Cir. 1994) (quoting Hecht v. Commercial Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir. 1990)); see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d Cir. 1999) (emphasizing that the "direct injury test" is independent of, and in addition to, the requirements that the tortious act be a "substantial" factor and that the injury be reasonably foreseeable). Thus, a plaintiff must allege facts to show both that the injury would not have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial factor foreseeably leading to the injury. See, e.g., Holmes, 503 U.S. at 268 (liability for injury "by reason of" defendant's conduct requires "a showing that the defendant's violation not only was a 'but for' cause of its injury, but was the proximate cause as well").

By these standards, the 3AC is far from stating a claim that Al Haramain caused plaintiffs' injuries; plaintiffs fail to allege facts suggesting even "but for" causation, let alone proximate cause. As noted, the alleged factual basis for the claims against Al Haramain fail to connect any act of Al Haramain to plaintiffs' injuries.

First, the 3AC alleges no facts to suggest that the its actions were in any sense a cause of—or connected at all to—the events of September 11 or any other terrorist activity. There are no allegations about its management of its office that caused 9-11. Taken to an extreme, the Seventh Circuit has held that even direct funding of a known

terrorist organization was insufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, *i.e*., to allege facts to show that the murder of David Boim was "a reasonably foreseeable result of . . . the donation." Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002). The 3AC's allegations fall far short of the allegations deemed insufficient in Boim.

Next, the 3AC alleges no facts to link Al Haramain to any of the events that caused plaintiffs' injury. The 3AC does allege after a factually incongruent "history" that the group is linked to al Qaeda and makes generally sweeping allegations that all Defendants "knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks that killed and injured the Plaintiffs herein." See, e.g., 3AC ¶ 684. But even if that conclusory allegation were cognizable, there is no allegation that there was any connection between its activities and the events that injured the plaintiffs, or that (even if there were such a connection) Al Haramain knew or should have known it. Taking together the allegations of its management the IIRO branch office, even if plaintiffs had alleged facts to state a claim against Al Haramain, they failed to allege facts sufficient to state any claim against any employee of Al Haramain, including Al Haramain. In others words, there are no specific acts taken by officers at Al Haramain in the proper authority of their role at Al Haramain which make up the elements of any of the causes of action alleged. See Armour & Co. v. Celic, 294 F.2d 432, 439 (2d Cir. 1961) ("[A] director, merely by reason of its office, is not personally liable for the torts of its corporation; it must be shown to have personally voted for or otherwise participated in them.);

Olszewski v. Waters of Orchard Park, 758 N.Y.S.2d 716, 717 (App. Div. 2003) (corporate officer cannot be held individually liable for the tortious conduct of the corporation "merely because of its relationship to" the corporation); Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 966 n.10 (3d Cir. 1988) (corporate officer is individually liable for wrongful act of the corporation only if the officer participated in the tortious activity); Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 929 (4th Cir. 1984) (corporate officer is individually liable for wrongful act of corporation only if the officer was directly engaged in the transaction giving rise to liability; marginal participation or participation subject to the directions and advice of others is insufficient); Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (corporate officer is individually liable for wrongful act of corporation only if the officer had "meaningful participation" in the tortious activity); cf. Meyer v. Holley, 123 S. Ct. 824, 829 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

The general allegation that the acts of *all* the defendants "caused" the plaintiffs' injury (¶ 610) is obviously insufficient to state a claim against Al Haramain (or any other particular defendant). "[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from its description of what happened." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) (internal quotation and citation omitted); see also In re Am. Express Co. S'holder Litig., 39 F.3d at 400 n.3 (conclusory allegations of proximate cause "need not be accepted as true for purposes of ruling on a motion to dismiss"). Even

under the notice pleading standard, courts accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the 3AC, nor legal conclusions cast in the form of factual allegations. See, e.g., Jazini, 148 F.3d at 184; Lehigh Valley Indus., 527 F.2d 93-94; Browning, 292 F.3d at 242 (interpreting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)); Burnett, 274 F.3d at 103; see also Citibank N.A. v. K-H Corp., 968 F.2d 1489, 1495-96 (2d Cir. 1989) (affirming dismissal of securities fraud claim because plaintiff did "not allege facts that support its allegation that there is a causal connection between the fraud alleged and the subsequent loss that it suffered").

Finally, the 3AC nowhere alleges the elements necessary to state a claim for aiding and abetting against Al Haramain. Again, legal conclusions cast in the form of factual allegations are entitled to no weight. "[T]it price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (Boudin, J.); see Meng v. Schwartz, 116 F. Supp. 2d 92, 95 (D.D.C. 2000) ("legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness") (citing Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987)). The requirements for a claim of aiding and abetting are that the defendant had "knowledge of" and provided "substantial assistance" in the commission of the underlying wrong. See, e.g., Wight v. Bankamerica Corp., 213 F.3d 79, 91 (2d Cir. 2000); Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); Halberstam v. Welch, 705 F.2d 472, 478 (D.C. Cir. 1983) (aiding and abetting requires *"knowing action* that substantially aids" tortious conduct); Ungar v. Islamic

Republic of Iran, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).  Even "awareness and approval [of wrongful activity], standing alone, do not constitute substantial assistance." Armstrong, 699 F.2d at 92. Here, there is no allegation that Al Haramain either knew in advance about the events of September 11 (or any other terrorist activities), or approved such activities, or assisted them in *any* way. Courts have routinely rejected allegations of aiding and abetting that "are so broad and conclusory as to be meaningless."

The Seventh Circuit's decision in Boim illustrates the failure of plaintiffs' allegations here to state any claim against Al Haramain.  There, the court held that even allegations of direct cash payments to a declared terrorist organization (Hamas), which then used the money to sponsor a terrorist act, were *not sufficient* to state a claim against the donor for engaging in an act of "international terrorism," because no facts were alleged to suggest that the donations were the proximate cause of the injury.  [T]it [Antiterrorism Act] itself requires that in order to recover, a plaintiff must be injured "by reason of" an act of international terrorism.  The Supreme Court has interpreted identical language to require a showing of proximate cause. . . . Foreseeability is the cornerstone of proximate cause, and in tort law, a defendant will be liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions. . . . In the circumstances of this case, the Boims cannot show that David Boim was injured "by reason of" the defendants' payments to Hamas in the traditional tort sense of causation unless they can also show that murder was the reasonably foreseeable result of making the donation.  Boim, 291 F.3d at 1011-12 (citations omitted).  The Boim court allowed the plaintiffs to pursue a claim under Section 2333 for "aiding and abetting" Hamas in killing their son, because the plaintiffs had alleged not only that the

defendants had "engaged in raising and laundering money for Hamas" and "functioned as fronts for Hamas" and "raised and channeled funds to Hamas to finance terrorist activities in Israel," where their son was murdered, but also that the defendants sent money to Hamas *that was in fact used "to purchase the vehicle, machine guns, and ammunition used to kill [their so*n] *as well as to train its killers and to provide a stipend for the family of one of its murderers."* 291 F.3d at 1024 (emphasis added). The contrast with the "facts" alleged in the present case is stark. Here, plaintiffs draw conclusory allegations of money flows that do not even begin to allege that Al Haramain has ever given or transferred *any* money or other assets to anyone to further the attacks of 9-11.

### 3. Whatever the Allegations Might Be, Certain Causes Of Action Do Not Apply to Al Haramain.

In ruling on other motions to dismiss, the Court has already concluded that some of plaintiffs' causes of action lack legal merit. Therefore, even if plaintiffs are given another chance under Rule 12(e) to file their complaint against Al Haramain, the causes of action already ruled on should be dismissed. These include the two RICO counts in the 3AC, as well as the negligence counts. See Burnett, 274 F. Supp. 2d at 91-92.

## IV. Conclusion

Plaintiffs cannot demonstrate that they have served Al Haramain properly and they have not provided sufficient allegations laying out all the elements of any of the causes of action alleged. Under Fed R. Civ. P. 12(b)(5) and 12(b)(6), plaintiffs' 3AC against it should be dismissed. A proposed Order is attached.

                                                    Respectfully Submitted,

                                                    /s/ Ashraf Nubani
                                                    _____

- 14 -

        Ashraf Nubani
        Busch & Nubani, P.C.
        5029 Backlick Road, Suite A
        Annandale, VA 22003
        703-658-5151
        703-658-9200, fax

        Attorney for Defendant
        Dated: April 9, 2004

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System and by US postal mail for parties not on ECF.

/s/ Ashraf Nubani
_____
Ashraf Nubani

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 ) | 03 MDL No. 1570 (RCC) |
| THOMAS E. BURNETT, SR., *et al.*, ) | |
| Plaintiffs, ) | |
| v. ) | C.A. No. 03 CV 9849 (RCC) |
| AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, *et al.*, ) | |
| Defendants. ) | |

**ORDER**

Having considered the parties' written submissions and arguments, the Court finds that plaintiffs have failed to state a claim against Aqeel Al Haramain upon which relief may be granted and that, if they had, the service was improper. Accordingly, under Fed. R. Civ. Pro. 12(b)(5) and 12(b)(6), together and separately, plaintiffs claims against Al Haramain must be dismissed. It is therefore

ORDERED that plaintiffs' claims against Al Haramain are dismissed with prejudice.

_____

Dated: _____                                    Judge, U.S. District Court