**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   )          03 MDL No. 1570 (RCC)
                                                    )
_____)
                                                    )
THOMAS E. BURNETT, SR., *et al.*,                )
                                                    )
                    Plaintiffs,                      )
                                                    )
            v.                                       )          C.A. No. 03 CV 9849 (RCC)
                                                    )
AL BARAKA INVESTMENT AND DEVELOPMENT          )
        CORPORATION, *et al.*,                    )
                                                    )
                    Defendants.                     )
_____)

**ABDULLAH AL-MAHDI'S
MOTION TO DISMISS WITH
SUPPORTING POINTS AND AUTHORITIES**

       Under Fed. R. Civ. P. 12(b)(2), (b)(5), and (b)(6), Abdullah M. Al-Mahdi (D15),

through under-signed counsel, hereby moves for dismissal of any claims in this case

against him. The reasons this Motion should be granted are set forth below.

**I. Background**

       Abdullah M. Al-Mahdi ("Al-Mahdi") is an engineer in the Kingdom of Saudi

Arabia who, without any evidence or specific allegations has been accused of conspiracy

in the worst terrorist attack on US soil and one of the greatest tragedies of our times

world-wide.  Al-Mahdi has absolutely no connection with the tragic events of September

11, 2001, nor does he support those that brought them about. See Al-Mahdi Affidavit at ¶

5-6 (Exhibit 1).

Even though the lawsuit against him is completely without merit, Al-Mahdi is not even subject to jurisdiction of any US civil court.  Furthermore, the attempt at serving Al-Mahdi at an office in Virgina, where he has neither lived nor held out any residential or business presence, is fundamentally flawed.    As a result, any claims against Al-Mahdi should be dismissed.  The only attempt at service on Al-Mahdi is the delivery of a copy of the 3AC at an address that he neither knows nor holds out as his own for such purposes.  Nothing has been sent to him directly. Nothing in the 3AC, except in a generalized list for a relief organization, refers to him.  In a nutshell, Plaintiffs cannot show that this Court has personal jurisdiction over Al-Mahdi.  They have not served him properly. And they have not offered a single specific allegation establishing the elements of a cause of action that he should be held legally liable for the terrorist attacks of September 11, 2001 (hereinafter "9-11") in the US.

Plaintiffs' counsel seek to set aside the great Constitutional protections our civil justice system provides due to the heinous nature of the wrong that has befallen their clients.  While Al-Mahdi sympathizes with the great loss that has befallen families of 9-11, he cannot be expected to be forced to defend himself in a lawsuit the elements of which he is neither liable for nor subject to.  If Plaintiff's counsel feels strongly enough about his supposed culpability, they can seek redress in Saudi courts.  Our system also recognizes an injustice to force a private citizen of another country to hire lawyers and respond when he has not been properly served, cannot tell what the allegations against him are, must provide his response in a court that has no jurisdiction over him, and face a potentially sullied reputation just for being named in the same document as the members of the Hall of Shame who shamelessly take credit for 9-11.

On this point, Judge James A. Robertson in a ruling on this case has observed, "The use of the privileged medium of a lawsuit to publicly label someone as an accomplice of terrorists can cause incalculable reputation damage" and "dramatic economic consequences as well." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp.2d 86, 103 (D.D.C. 2003). As a result--far from relaxing legal requirements— "fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he … does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the 3AC ." Id. at 104. Here, that sort of approach will lead to the conclusion that any claims against him should be dismissed.

## II. Statement of Facts

### A. General Background

The 3AC broadly alleges that more than 200 co-defendants "intentionally, willfully and knowingly conspired, planned, financed, supported, executed and carried out a plan to murder, maim and injure United States' citizens, residents and others on September 11, 2001." (3AC at ¶5) There are eight causes of action based on intentional murder, assault and battery, and property damage arising out of the attacks on September 11th. (3AC at ¶¶612-25)  Al-Mahdi is mentioned only once in more than 600 paragraphs of allegations. Plaintiffs allege that Al-Mahdi is a "co-conspirator" along with twelve other parties. (3AC at ¶248)  The 3AC does not state how these thirteen parties are related except to erroneously say that they all do business or are registered to do business in the United States. (Id.)  Nor does the 3AC contain any allegations as to what Al-Mahdi did—when or where—in furtherance of the supposed conspiracy.  Overall, the 3AC does

not contain any allegation as to what Al-Mahdi knew about or conspired in any way to plan the September 11th attacks.

Abdullah Al-Mahdi is a citizen and resident of Saudi Arabia. He was born there in 1958. For his entire life, he has lived in Jeddah. In the 1980's and early 1990's, Al-Mahdi attended college in the US. Following that, he returned to his native country and his last visit to the US was 1998. <u>See</u> Al-Mahdi Affidavit at ¶ 3

**B. Al-Mahdi's Lack of Connection to This Forum.**

The only time Al-Mahdi lived in the US was in the 1980's and early 1990's as a student in Louisiana then North Carolina. Al-Mahdi has not been in the United States since 1998, and then only for personal reasons. <u>See</u> Al-Mahdi Affidavit at ¶ 3 (Attachment A). He owns no property and conducts no business in this country. <u>Id.</u> at ¶ 4.

**C. Al-Mahdi's Presence as a Defendant in This Lawsuit.**

While not listed separately as a Defendant, Al-Mahdi is listed in the caption under the International Islamic Relief Organization (IIRO). Plaintiffs allege no relationship, if any, with IIRO. Further, in the text of the 3AC, there are no specific allegations mentioning Al-Mahdi or any alleged relations to IIRO or IRO. It does inaccurately include him in a list of people that plaintiffs allege are registered to do business in the US. <u>See</u> 3AC ¶ 248. His entire connection to this lawsuit is merely the presence of his name in a list under a group.

**D. Plaintiffs' Apparent Attempt to Serve Al-Mahdi**

On May 12, 2003, plaintiffs filed a Notice of Service (Docket 279) on Abdullah Al-Mahdi, listing Al-Mahdi at an address in Falls Church, VA. That document referred to

a Summons Issued September 26, 2002, but was not served until April 1, 2003.  Al-Mahdi is not a resident of the US and has never lived in Virginia.  Furthermore, he has never authorized himself as an agent for service for any group, either individually or for a group.  It is inconceivable that such a notice that was delivered to him neither in person nor to an address he has authorized (as he never authorized any address for such purpose) could stand scrutiny in any civil court.

## III. Argument

### A. This Court Lacks Personal Jurisdiction Over Al-Mahdi

As this section will show, plaintiffs have not established, and cannot establish, that this Court has personal jurisdiction over Al-Mahdi. Unfortunately, the improper manner he has seems to have been brought into the case complicates consideration of these issues. In apparently adding him, the plaintiffs have offered no allegations relating to Al-Mahdi. They have simply put his name on a list, but said little more, thus failing to meet the basic notice pleading requirements of Fed. R. Civ. P. 8.  Plaintiffs' approach flies in the face of the normal pleading process: Ordinarily, a defendant begins by responding to what the plaintiff has actually alleged about him. Here, however, we must respond to what plaintiffs might say. Then, having read this Motion, plaintiffs may finally provide an allegation or two, which will likely be designed in part to show that, having been forced to shoot at a non-existent target, we have missed the mark.  Thus, rather than following the path required by the Rules—stating claims and awaiting a response— plaintiffs' counsel have arranged matters so that Al-Mahdi must first respond to nonexistent or speculative claims, only later learning what the claims really are. We trust

that the Court will not permit plaintiffs to secure such an adversary advantage simply because, as to Al-Mahdi, they have filed an insufficient complaint.

### 1. At Minimum, Plaintiffs Must Establish That Al-Mahdi Has Purposefully Established Contacts With the United States, the District of Columbia or the State of New York and That Any Claims Against Him Arise Out of Those Contacts

One cannot be made a defendant unless the court in which he is sued has personal jurisdiction over him. The requisites of such jurisdiction vary depending on the causes of action and applicable service provisions, but, whatever the legal basis for a lawsuit, the minimum requirements for personal jurisdiction are constitutional.  In particular: the Due Process Clause requires that, if a defendant is not present "within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). This is to ensure that an individual is not "subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe, 326 U.S. at 319).  The forum as to which jurisdictional contacts would be evaluated under that section is the District of Columbia or New York, and not the United States as a whole. However, plaintiffs have argued that the combined effect of nationwide service provisions in the Anti-Terrorism Act, 18 U.S.C. § 2333 et seq. (2000) and notions of "pendent jurisdiction" mean that the United States is the forum for all claims. Although we do not concede that, this discussion focuses on Al-Mahdi's connections with the United States, since even they are far too slight to justify personal jurisdiction. Notably,

one of plaintiffs' two grounds for claiming a right to nationwide service--their RICO

claims--is already out of the case.  See Burnett, 274 F. Supp. 2d at 91-92.  Should ATA

allegations against Al-Mahdi fail to state a claim, then the District of Columbia would be

the forum for jurisdictional contacts purposes.  In that case, the lack of personal

jurisdiction would be even more apparent: Al-Mahdi has never had the requisite contact

with Washington, D.C. or New York, and a "conspiracy" basis for jurisdiction would be

impossible for several reasons, including where the 9/11 attacks took place.

Unless forum contacts are " 'continuous and systematic' "-- which is surely not

the case for Al-Mahdi -- a court may exercise only "specific," but not "general,"

jurisdiction over a non-resident. To establish the existence of specific personal

jurisdiction, a plaintiff must show three things:

First, the plaintiff must show that the defendant has "purposefully avail[ed] itself

of the privilege of conducting activities within the forum . . . thus invoking the benefits

and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  As a result,

"[j]urisdiction is proper . . . where the contacts proximately result from the actions [of

the] defendant *himself* that create a 'substantial connection' with the forum . . . ." Burger

King, 471 U.S. 475, quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223

(1957) (italicized in original).

Second, the plaintiff must show that its claims "arise out of or relate to" the

defendant's activities in or contacts with the forum. Helicopteros Nacionales de

Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984).

Finally, if minimum contacts have been established and the claims arise out of or

relate to them, a court must determine whether assertion of personal jurisdiction would

comport with "'fair play and substantial justice.'" Burger King, 471 U.S. at 476-78,

quoting International Shoe, 326 U.S. at 310. This determination involves balancing a

number of factors including "the burden on the defendant," (World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 292 (1980)) so that, in appropriate cases, courts may

decline to exercise jurisdiction where doing so Helicopteros Nacionales de Colombia

S.A. v. Hall, 466 U.S. 408, 415-16 (1984) (citation omitted).

 The specific jurisdiction requirement that a non-resident defendant purposefully

establish contacts with the forum is not satisfied "as a result of 'random,' 'fortuitous,' or

'attenuated' contacts . . . or of the 'unilateral activity of another party or third person.' "

Burger King, 471 U.S. at 475 (citations omitted). would be "gravely difficult and

inconvenient" for the defendant. M/S Bremen v Zapata Off-Shore Co., 407 U.S. 1, 18

(1972). See Burger King, 471 U.S. at 477-78. See also Burnett, 274 F. Supp. 2d at 96,

n.5

 The questions of burden and fairness can have special significance for a non-

resident alien defendant like Al-Mahdi. As the Supreme Court has said, "[t]he unique

burdens placed upon one who must defend oneself in a foreign legal system should have

significant weight in assessing the reasonableness of stretching the long arm of personal

jurisdiction over national borders." Asahi Metal Industry v. Superior Court, 480 U.S. 102,

114 (1987).  In general, the Court continued, " '[g]reat care and reserve should be

exercised when extending our notions of personal jurisdiction into the international

field.'" Id., 480 U.S. at 115, (quoting United States v. First National City Bank, 379 U.S.

378, 404 (1965) (Harlan, J., dissenting)). See also In re Baan Co. Sec. Litigation, 81 F.

Supp. 2d 75, 81 (D.D.C. 2000).

### 2. Al-Mahdi Does Not Have Sufficient Contacts With This Forum and the United States, and Plaintiffs Do Not Allege Otherwise

#### a. There Are No Jurisdictional Allegations of Any Kind for Al-Mahdi

To include him in this lawsuit, plaintiffs have the initial burden of alleging facts sufficient to make a prima facie showing that there is personal jurisdiction over Al-Mahdi. Second Amendment Foundation v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001); First Chicago International v. United Exchange Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983) cert. denied 467 U.S. 1210 (1984). By offering no specific allegations of any kind as to him, they have utterly failed to meet that burden. In such circumstances--where there is not a single alleged jurisdictional contact for a defendant--dismissal is appropriate. Richard v. Bell Atlantic Corp., 946 F. Supp. 54, 73-74 (D.D.C. 1996).

#### b. Whatever Plaintiffs Might Later Claim, Al-Mahdi Does Not Have Sufficient Contacts With the United States, Washington D.C. or New York

Perhaps the reason the plaintiffs have not made jurisdiction allegations is that they do not have a sufficient basis for doing so. Al-Mahdi has had minimal or non-existent contact with the District of Columbia, New York and the United States. He has only been to the US a few times for academic reasons and he has not conducted business or other activities there.  He has no property or bank accounts and conducts no business in this country.  General jurisdiction, which requires "continuous and systematic" contacts, is clearly not invoked here.

Specific jurisdiction would not be proper, either.  With no United States contact in the past 7 years, and only a few short visits in the last 11, Al-Mahdi's contacts with any

pertinent forum are, as the Supreme Court has put it, so "attenuated" and "random" that they cannot support specific jurisdiction. Even if those contacts somehow constituted a "substantial connection" with the United States, plaintiffs could not possibly show that their claims "relate to or arise out" of such connections, as specific jurisdiction requires. That is, plaintiffs could not possibly show that claims concerning the terrorism of September 11, 2001 arise out of three trips involving academic conferences no later than the mid-1990's.  The over-reaching claim in Paragraph 1 of the 3AC--that the Court has "personal and subject matter jurisdiction over the Defendants herein"--does not cure this deficiency. A plaintiff is required to "allege specific acts connecting the defendant with the forum," and such "bare allegations are insufficient." Sunlite Inc. v. Bfg Bank AG, 849 F. Supp. 74, 75 (D.D.C. 1994) (citing First Chicago International, 836 F.2d at 1378-79).

### 3. Conspiracy Claims Would Not Establish Personal Jurisdiction

In responses to other personal jurisdiction motions, plaintiffs have said that some defendants have "purposefully directed" actions toward the United States through, they allege, a vast conspiracy. Relying on that, plus an observation in the Supreme Court's Burger King decision that jurisdiction may sometimes be exercised over a defendant not physically present in the forum, plaintiffs seem to say that, even if a defendant has never had any contact with a forum, a simple allegation that he conspired with others to take action within the forum is sufficient to create personal jurisdiction.

Of course, for Al-Mahdi, there is no specific allegation--and in fact no allegation on any subject. But, even if there were, it would surely be insufficient to create

jurisdiction over him.  Federal courts in this district apply the "conspiracy theory" of jurisdiction "warily," requiring "particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." <u>Dooley v. UTC</u>,786 F. Supp. 65, 78-80 (D.D.C. 1992).  In addition, "mere speculation that the non resident defendants' [sic] are co-conspirators" is "insufficient to meet the plaintiff's *prima facie* burden." <u>Id.</u> at 78. As one court has put it, "conclusionary" allegations of conspiracy do not "constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction." <u>Naartex Consulting</u>, 722 F.2d at 787.  Instead, plaintiffs must "plead with particularity" all the elements of civil conspiracy, including the nature of the conspiracy and the overt acts taken in the forum. <u>Jungquist v. Sheikh Sultan Bin Al-Mahdi Al Nahyan</u>, 115 F.3d 1020, 1031 (D.C. Cir. 1997). See also <u>First Chicago International v. United Exchange Co.</u>, 836 F.2d at 1378 ; <u>Second Amendment Foundation</u>, 274 F.3d at 524.  Without such requirements, plaintiffs could in effect eliminate personal jurisdiction as an independent requirement, by simply mentioning a "conspiracy" and sweeping in anyone they claim was part of it.  The cases cited can also prevent plaintiffs from obliterating the distinction between personal jurisdiction issues and merits questions. Here, for example, plaintiffs seem to say that bare allegations of extraterritorial participation in a conspiracy provide personal jurisdiction. But such allegations also appear to be the basis for most of plaintiffs' claims of illegality. Therefore, in order to adjudicate jurisdictional questions on their face, courts in this district and circuit require "particularized" allegations of each conspiracy element when that is the claimed basis for jurisdiction, and then only apply that concept "warily."  Here, as has been noted, there are no specific allegations of any kind concerning Al-Mahdi, and

certainly nothing "particularized" that suggests his participation in an international terrorist conspiracy. And, given the facts, there could be no good faith basis for any such claims. There is simply no adequate basis for personal jurisdiction over him.

### 4. Even If Al-Mahdi's Contacts Involved Corporate Director Activities, Which Are Not Alleged, Jurisdiction Would Not Follow

Even assuming, for the sake of argument, the Court does have personal jurisdiction over the groups with which Al-Mahdi is alleged to have engaged in the conspiracy, personal jurisdiction over a corporation does not automatically provide justification for personal jurisdiction over the individual officers and employees of that corporation. See Calder v. Jones, 465 U.S. 783, 790 (1984); Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13 (1984). Generally, the Court must examine the individual officers and employees' own contacts with the forum in order to determine personal jurisdiction. See AMPA Ltd. v. Kentfield Capital LLC, No. 00 CIV 0508, 2001 WL 204198 at *2 (S.D.N.Y. March 1, 2001) (Judge Buchwald) (holding that "there is no support for the proposition that filing an action on behalf of a corporation in and of itself subjects the individual directors of that corporation to personal jurisdiction in New York without regard to the directors' own contacts with the forum"). The only exception is where the corporation doing business in the forum is acting as the agent of the corporate officer. See Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246, 253, n. 5 (S.D.N.Y. 2003) (Judge Berman). In such a situation, personal jurisdiction may be imputed to the individual officer only where the plaintiff shows that:

> [T]he agent transacting business engaged in purposeful activity in the
> [forum] (1) that related to the … underlying … lawsuit, (2) that was taken
> for the benefit and with the knowledge of the defendant, and (3) over
> which the defendant exercised some control.

H.S.W. Enter., Inc. v. Woo Lae Oak, Inc., 171 F. Supp.2d 135, 145 (S.D.N.Y. 2001) (Judge Baer). In the case herein, Plaintiffs have failed to allege that Al-Mahdi has any legal relation to a US corporate or institutional entity engaged in any activity within the United States related to the 9/11 attacks; engaged in any activities within the United States that were taken for the benefit of and with the knowledge of Al-Mahdi; or that Al-Mahdi exercised any control over any United States activities through such a group.

### 5. Even If Al-Mahdi's Contacts With the United States Were More Substantial, Exercising Jurisdiction Over Him Would Not Comport with Fair Play and Substantial Justice

As the Court's July 25, 2003 Memorandum Opinion indicates, in some few cases, even if a defendant's forum contacts meet the constitutional minimum, requiring him to participate in a lawsuit may be so burdensome that it would violate the fairness elements of Due Process. See Burnett, 274 F. Supp. 2d at 96. As noted, the Supreme Court has said that courts should be particularly sensitive to "unique burdens placed upon one who must defend oneself in a foreign legal system . . . ." Asahi Metal Industry, 480 U.S. at 114. Here, of course, Al-Mahdi has no meaningful contacts with either the United States, the District of Columbia or New York. His visits to this country in the last 11 years since he finished college are constitutionally insufficient. However, if there were any question about that conclusion, the burden on Al-Mahdi from participation in this case would surely tip the balance away from personal jurisdiction. He lives in a foreign country and his ability to participate in the defense of this case is limited, and the burden on him of doing so would be extreme. To hale a man in his circumstances into this court consistent with "fair play and substantial justice," plaintiffs must make a much more substantial jurisdictional showing than they have -- or than they ever can.

**B. Al-Mahdi Has Not Been Properly Served**

Plaintiffs claim to have served Al-Mahdi through delivery of a summons at an address he neither held out as an agent for service nor as a place of home or business. However, that form of notice was not authorized for him, and it was not reasonably calculated to convey the necessary information to him.

### 1. Plaintiffs Have Failed to Comply With Rule 4(e) of the Federal Rules of Civil Procedure Governing Service of Process Upon Individual Defendants.

Plaintiffs have not satisfied their burden under Rule 4(e), Fed. R. Civ. P., to effect proper service of process upon Al-Mahdi. The plain language of Rule 4(e), which governs service of process upon individual defendants, requires that service of process must be satisfied under either (1) the relevant provisions of state law governing service, or (2) service upon the defendant at his residence. Rule 4(e), Fed. R. Civ. P., reads, in relevant part as follows:

> (e) Service upon Individuals Within a Judicial District of the United States. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in any judicial district of the United States:
> **(1) pursuant to the law of the state** in which the district court is located, or **in which service is effecte**d, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
> **(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode** with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Rule 4(e), Fed. R. Civ. P. (emphasis added). Plaintiffs cannot invoke Rule 4(e)(2) as a basis for service of process, since Al-Mahdi does not reside at the Falls Church address (or at any address in the US for that matter).

- 14 -

This Court must find that plaintiffs have failed to perfect service of process on Al-Mahdi since their attempt to serve them through an address he has never held out as his own is inadequate under both the Federal Rules of Civil Procedure governing service of process.

### 2. Plaintiff's Failure to Perfect Service On Al-Mahdi Mandates Quashing Service and Dismissing the Complaint.

This Court has the authority, under Rule 12(b)(5), to quash the defective service of process and to dismiss the 3AC against Al-Mahdi, because plaintiffs made no attempt to comply with Rule 4(e), Fed. R. Civ. P. governing service of process on individual defendants. See, e.g., Adams, 74 F.3d at 886-88 (affirming dismissal of complaint for insufficient service of process); Lewellen, 909 F.2d at 1077 (same); Sieg, 693 F.2d at 807 (same). This Court cannot exercise jurisdiction over Al-Mahdi, since plaintiffs have not properly served them in this action. See, e.g., Printed Media, 11 F.3d at 843 (reversible error to exercise jurisdiction where defendant was not properly served).

Since plaintiffs have made no good-faith effort to comply with Rule 4(e), Fed. R. Civ. P., dismissal of the action is warranted under Rules 4(m) and 12(b)(5), Fed. R. Civ. P., since the summons and 3AC cannot be timely served within 120 days after the filing of the 3AC. Plaintiffs have never requested that this Court extend the time for serving Al-Mahdi (which they have done for several other defendants). Therefore, it is too late for plaintiffs to seek an extension to serve them at this stage of the litigation, nearly one year after the 3AC was filed on November 22, 2002.

### 3. Even If He Responds to this Lawsuit, Service is Not Automatic Against Al-Mahdi

In their reply motions to certain Defendants, Plaintiffs' counsel argues that by retaining counsel to appear and file a responsive pleading, a Defendant effectively waives arguments for improper service. In fact, Rule 12(h) requires that arguments about improper service be raised early--in a party's first responsive pleading.

It is settled law that individual defendants must be properly served in compliance with Rule 4, Fed. R. Civ. P, and that any actual notice that a defendant may have of a pending lawsuit is not an acceptable substitute for proper service of process. Absent proper service of process upon a defendant, this Court may not exercise jurisdiction over that defendant:

> Actual notice will not substitute for technically correct service under Fed. R. Civ. P. 4. **If service is not properly made, the court has no jurisdiction to render a personal judgment against a defendan**t. . . . Barkett was not personally served, although service was made on the United States Attorney's office. **It is irrelevant that Barkett may have had notice of the complaint against him personally.** The claim against Barkett personally was not properly served upon him. Actual notice will not substitute for technically correct service under Fed. R. Civ. P. 4. . . . **this court does not have jurisdiction to render a personal judgment against Barkett because service was not properly made on Barkett.**

Moskovitz v. Drug Enforcement Agency, 774 F. Supp. 649, 652 (D.D.C. 1991) (Lamberth, J.) (emphasis added); accord Lewellen v. Morley, 909 F.2d 1073, 1077 (7th Cir. 1990) ("Such service requirements are strictly upheld."); Sieg v. Karnes, 693 F.2d 803, 807 (8th Cir. 1982) ("Unless a defendant voluntarily makes an appearance or waives defective service, a federal court is without jurisdiction to render personal judgment against a defendant if service of process is not made in accordance with applicable federal or state statutory requirements.")

> The court disagrees [with plaintiff] and concludes that service of process must be quashed because plaintiff failed to serve defendant GWU pursuant to Rule 4(h) of the Federal Rules of Civil Procedure. The law is clear and

mandates that there be strict compliance to Rule 4(h) and **it is irrelevant whether or not defendant GWU had actual notice of the lawsuit.**

Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997) (Urbina, J.) (emphasis added); accord

Adams v. AlliedSignal General Aviation Avionics, 74 F.3d 882, 885 (8th Cir. 1996)

(stating that "if AlliedSignal was improperly served, the district court lacked jurisdiction

over that defendant whether or not it had actual notice of the lawsuit"); Printed Media

Servs., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993) ("If a defendant is

improperly served, a federal court lacks jurisdiction over the defendant.").

**C. The 3AC Fails to State Any Claim Against Al-Mahdi Upon Which Relief Can Be Granted.**

None of the counts of the 3AC states a cause of action against Al-Mahdi. Some do not state causes of action at all, even in form. The others all fail for the same reason, among others: failure to allege that Al-Mahdi did anything that connects him proximately (or otherwise) to the tragic events that caused plaintiffs' injury.

**1. Each of Plaintiffs' Causes of Action Requires That the Defendant's Alleged Actions Proximately Caused Their Injury.**

Although the circumstances are uniquely horrific, this case is a tort case for personal injuries. Each Count arises in tort, and the legal theory of each Count requires that plaintiffs establish that a named defendant engaged in a tortious act that proximately caused plaintiffs' injury. However, the factual allegations against Al-Mahdi in the 3AC in ¶¶ 248 are consistent in only one matter: no allegation of proximate cause.

**2. The 3AC Does Not Allege That Al-Mahdi Proximately (or Otherwise) Caused Plaintiffs' Injuries.**

The 3AC fails to state a claim on any of these theories because it does not allege that anything that Al-Mahdi did or failed to do led in any way to the events of September

11.  It does not allege that he knew in advance about these events or any other terrorist act, or desired any such act to occur.  It does not allege that he ever transferred anything of value to anyone associated with the events of September 11 (or to anyone else).  "Proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 268 (1992).  The defendant's acts must have been "a substantial factor" leading to the injury, and the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of the acts. *In re Am. Express Co. S'holder Litig*., 39 F.3d 395, 402 (2d Cir. 1994) (quoting *Hecht v. Commercial Clearing House, Inc*., 897 F.2d 21, 23-24 (2d Cir. 1990)); *see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc*., 191 F.3d 229, 235 (2d Cir. 1999) (emphasizing that the "direct injury test" is independent of, and in addition to, the requirements that the tortious act be a "substantial" factor and that the injury be reasonably foreseeable).  Thus, a plaintiff must allege facts to show both that the injury would not have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial factor foreseeably leading to the injury.  *See, e.g.,Holme*s, 503 U.S. at 268 (liability for injury "by reason of" defendant's conduct requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well").

By these standards, the 3AC is far from stating a claim that Al-Mahdi caused plaintiffs' injuries; plaintiffs fail to allege facts suggesting even "but for" causation, let alone proximate cause.  Plaintiffs alleged factual basis for the claims against Al-Mahdi are based on the vague allegations that he was aider and abettor based on alleged links to

International Islamic Relief Organization (3AC ¶ 249) (IIRO).  This wholly fails, for three reasons, to connect any act of Al-Mahdi to plaintiffs' injuries.

First, the 3AC alleges no facts to suggest that Al-Mahdi or his association, if any, with IIRO or any sister, subsidiary or parent organizations of IIRO were in any sense a cause of—or was connected at all to—the events of September 11 or any other terrorist activity.  There are no allegations about when a position (if any) was held, how much authority (if any) said position held, where the directives came from, whether it was ever used for any purpose, and if so what that purpose was.  The Seventh Circuit has held that even direct funding of a known terrorist organization was insufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, *i.e.*, to allege facts to show that the murder of David Boim was "a reasonably foreseeable result of . . . the donation." Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002).  The 3AC's allegations fall far short of the allegations deemed insufficient in Boim.  A vague allegation of conspiracy with a group, which is not even a designated group, does not even scratch the surface of stating an actionable claim.

Second, the 3AC alleges no facts to link Al-Mahdi to any of the events that caused plaintiffs' injury.  The 3AC does allege (¶ 248) that he was part of the conspiracy with a group for terrorist purposes.  But even if that conclusory allegation were cognizable, there is no allegation that there was any connection between the group and the events that injured the plaintiffs, or that (even if there were such a connection) Al-Mahdi knew or should have known it.  Thus, even if plaintiffs had alleged facts to state a claim against IIRO, they failed to allege facts sufficient to state any claim against any

alleged co-conspirator, including Al-Mahdi, for whom they give no explanation of his relationship with the group.  Even if they were to allege that he was a director of the group, such an allegation would not be sufficient.  See Armour & Co. v. Celic, 294 F.2d 432, 439 (2d Cir. 1961) ("[A] director, merely by reason of his office, is not personally liable for the torts of his corporation; he must be shown to have personally voted for or otherwise participated in them.); Olszewski v. Waters of Orchard Park, 758 N.Y.S.2d 716, 717 (App. Div. 2003) (corporate officer cannot be held individually liable for the tortious conduct of the corporation "merely because of his relationship to" the corporation); Kinnel v. Mid-Atlantic Mausoleums, Inc., 850 F.2d 958, 966 n.10 (3d Cir. 1988) (corporate officer is individually liable for wrongful act of the corporation only if the officer participated in the tortious activity); Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 929 (4th Cir. 1984) (corporate officer is individually liable for wrongful act of corporation only if the officer was directly engaged in the transaction giving rise to liability; marginal participation or participation subject to the directions and advice of others is insufficient); Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (corporate officer is individually liable for wrongful act of corporation only if the officer had "meaningful participation" in the tortious activity); cf. Meyer v. Holley, 123 S. Ct. 824, 829 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

The general allegation that the acts of *all* the defendants "caused" the plaintiffs' injury (¶ 610) is obviously insufficient to state a claim against Al-Mahdi (or any other

particular defendant). "[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) (internal quotation and citation omitted); *see also In re Am. Express Co. S'holder Litig.*, 39 F.3d at 400 n.3 (conclusory allegations of proximate cause "need not be accepted as true for purposes of ruling on a motion to dismiss"). Even under the notice pleading standard, courts accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the 3AC, nor legal conclusions cast in the form of factual allegations. See, e.g., *Jazin*i, 148 F.3d at 184; Lehigh Valley Indus., 527 F.2d 93-94; *Brownin*g, 292 F.3d at 242 (interpreting Swierkiewicz v. Sorema N.A. , 534 U.S. 506, 512 (2002)); Burnett, 274 F.3d at 103; see also Citibank N.A. v. K-H Corp., 968 F.2d 1489, 1495-96 (2d Cir. 1989) (affirming dismissal of securities fraud claim because plaintiff did "not allege facts that support its allegation that there is a causal connection between the fraud alleged and the subsequent loss that it suffered").

Finally, plaintiffs allege in a wholly conclusory fashion that Al-Mahdi was among "co-conspirators, material sponsors and/or aiders and abettors and members of the terrorist enterprise of the International Islamic Relief Organization" (3AC ¶ 248). But the 3AC nowhere alleges the elements necessary to state a claim for aiding and abetting against Al-Mahdi. Again, legal conclusions cast in the form of factual allegations are entitled to no weight. "[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55

(1st Cir. 1999) (Boudin, J.); see Meng v. Schwartz, 116 F. Supp. 2d 92, 95 (D.D.C. 2000)

("legal conclusions, deductions or opinions couched as factual allegations are not given a

presumption of truthfulness") (citing Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C.

Cir. 1987)). The requirements for a claim of aiding and abetting are that the defendant

had "knowledge of" and provided "substantial assistance" in the commission of the

underlying wrong. See, e.g., Wight v. Bankamerica Corp., 213 F.3d 79, 91 (2d Cir.

2000); Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); Halberstam v. Welch, 705

F.2d 472, 478 (D.C. Cir. 1983) (aiding and abetting requires "*knowing action* that

substantially aids" tortious conduct); Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d

91, 99 (D.D.C. 2002). Even "awareness and approval [of wrongful activity], standing

alone, do not constitute substantial assistance." Armstrong, 699 F.2d at 92. Here, there

is no allegation that Al-Mahdi either knew in advance about the events of September 11

(or any other terrorist activities), or approved such activities, or assisted them in *any* way.

Courts have routinely rejected allegations of aiding and abetting that "are so broad and

conclusory as to be meaningless."

The Seventh Circuit's decision in Boim illustrates the failure of plaintiffs'

allegations here to state any claim against Al-Mahdi. There, the court held that even

allegations of direct cash payments to a declared terrorist organization (Hamas), which

then used the money to sponsor a terrorist act, were *not sufficient* to state a claim against

the donor for engaging in an act of "international terrorism," because no facts were

alleged to suggest that the donations were the proximate cause of the injury. [T]he

[Antiterrorism Act] itself requires that in order to recover, a plaintiff must be injured "by

reason of" an act of international terrorism. The Supreme Court has interpreted identical

language to require a showing of proximate cause. . . . Foreseeability is the cornerstone of

proximate cause, and in tort law, a defendant will be liable only for those injuries that

might have reasonably been anticipated as a natural consequence of the defendant's

actions. . . . In the circumstances of this case, the Boims cannot show that David Boim

was injured "by reason of" the defendants' payments to Hamas in the traditional tort

sense of causation unless they can also show that murder was the reasonably foreseeable

result of making the donation.  <u>Boim</u>, 291 F.3d at 1011-12 (citations omitted).  The <u>Boim</u>

court allowed the plaintiffs to pursue a claim under Section 2333 for "aiding and

abetting" Hamas in killing their son, because the plaintiffs had alleged not only that the

defendants had "engaged in raising and laundering money for Hamas" and "functioned as

fronts for Hamas" and "raised and channeled funds to Hamas to finance terrorist

activities in Israel," where their son was murdered, but also that the defendants sent

money to Hamas *that was in fact used "to purchase the vehicle, machine guns, and*

*ammunition used to kill [their so*n] *as well as to train his killers and to provide a stipend*

*for the family of one of his murderers."* 291 F.3d at 1024 (emphasis added). The contrast

with the "facts" alleged in the present case is stark. Here, plaintiffs have not alleged that

Al-Mahdi has ever given or transferred *any* money or other assets to anyone.

### 3. Whatever the Allegations Might Be, Certain Causes Of Action Do Not Apply to Al-Mahdi.

In ruling on other motions to dismiss, the Court has already concluded that some

of plaintiffs' causes of action lack legal merit.  Therefore, even if plaintiffs are given

another chance under Rule 12(e) to file their complaint against Al-Mahdi, the causes of

action already ruled on should be dismissed. These include the two RICO counts in the

3AC, as well as the negligence counts.  See Burnett, 274 F. Supp. 2d at 91-92.

## IV. Conclusion

Plaintiffs cannot demonstrate that there is personal jurisdiction to hold Al-Mahdi

in this case.  They have not properly served him.  And they have not provided a specific

allegation explaining why he has been sued. Under Fed R. Civ. P. 12(b)(2), 12(b)(5) and

12(b)(6), plaintiffs' 3AC against him should be dismissed. A proposed Order is attached.

Respectfully Submitted,

_____

Ashraf Nubani
Busch & Nubani, P.C.
5029 Backlick Road, Suite A
Annandale, VA 22003
703-658-5151
703-658-9200, fax

Dated: April 9, 2004

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001   )        03 MDL No. 1570 (RCC)
)
_____)
)
THOMAS E. BURNETT, SR., *et al.*,                )
)
                    Plaintiffs,                  )
)
          v.                                     )        C.A. No. 03 CV 9849 (RCC)
)
AL BARAKA INVESTMENT AND DEVELOPMENT             )
          CORPORATION, *et al.*,                 )
)
                    Defendants.                  )
_____)

**ORDER**

Having considered the parties' written submissions and arguments, the Court finds that plaintiffs have not properly served Abdullah Al-Mahdi; that, if they had, the Court would lack personal jurisdiction over him; and that they have failed to state against him upon which relief may be granted. Accordingly, under Fed. R. Civ. Pro. 12(b)(2), 12(b)(5), and 12(b)(6), together and separately, plaintiffs claims against Al-Mahdi must be dismissed. It is therefore

ORDERED that plaintiffs' claims against Al-Mahdi are dismissed with prejudice.

_____

Dated: _____                                 Judge, U.S. District Court