**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

In re Terrorist Attacks on September 11, 2001

03-MDL-1570 (RCC)
ECF Case

*This document relates to: <u>Federal Ins. Co. v. Al Qaida</u>, 03-CV-6978 (RCC)*

<u>**MEMORANDUM IN SUPPORT OF HIS ROYAL HIGHNESS PRINCE SULTAN BIN**</u>
<u>**ABDULAZIZ AL-SAUD'S MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ...................................................................................................3

        A.      Prince Sultan .................................................................................................3

        B.      Prior Proceedings in Burnett  ......................................................................4

                1.      The Third Amended Complaint ................................................................4

                2.      Prince Sultan's Motion to Dismiss ...........................................................5

                3.      The Plaintiffs' Opposition and Related Pleadings ......................................6

                4.      Judge Robertson's Ruling ..........................................................................7

        C.      The Federal Insurance Claims ......................................................................9

III.    ARGUMENT .......................................................................................................10

        A.      Prince Sultan's Dismissal in Burnett Deserves Substantial Deference ................10

        B.      The Complaints in the Consolidated Cases Must Be Dismissed As
                Against Prince Sultan ...................................................................................13

                1.      Standard of Review ..................................................................................13

                2.      This Court Lacks Subject-Matter Jurisdiction Because Prince
                        Sultan is Absolutely Immune From Suit Under the FSIA .........................14

                        a.      The FSIA Applies to the Official Acts of Prince Sultan ................14

                        b.      The Commercial-Activity Exception Does Not Apply ................15

                        c.      The Non-Commercial Tort Exception Does Not Apply ................16

                3.      This Court Has No Personal Jurisdiction Over Prince Sultan. .................22

IV.     CONCLUSION ....................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989) ...............................14

Baker v. Carr, 369 U.S. 186...........................................................................................................6

Burger King v. Rudzewicz, 471 U.S. 462 (1985)...........................................................8, 22, 24, 25

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86 (D.D.C. 2003)..................................9

Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003)......................... passim

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988).............................................11

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509 (10th Cir. 1991).......................11

Crane Co. v. American Std., Inc., 603 F.2d 244 (2d Cir. 1979) ....................................................11

Degulis v. LXR Biotech., Inc., 928 F. Supp. 1301 (S.D.N.Y. 1996).............................................11

Fickling v. Commonwealth of Australia, 775 F. Supp. 66 (E.D.N.Y. 1991) .........................14, 15

Filetech S.A. v. France Telecom S.A., 157 F.3d 922 (2d Cir. 1998).............................................13

Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408 (1984) ...................................25

In re Air Crash at Belle Harbor, New York, Nos. 1448 (RWS), 02-Civ.-8411(RWS),
   2003 WL 124677 (S.D.N.Y. Jan. 15, 2003)..............................................................................11

In re Jackson Nat'l Life Ins. Co. Premium Litig., 209 F.R.D. 134 (W.D. Mich. 2002)................11

In re Korean Air Lines Disaster, 814 F. Supp. 599 (S.D.N.Y. 1993) ...........................................11

Kline v. Kaneko, 685 F. Supp. 386 (S.D.N.Y. 1988) ..............................................................16, 18

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163
   (1993) ........................................................................................................................................13

Letelier v. Republic of Chile, 488 F. Supp. 665 (D.D.C. 1980) .............................................17, 18

Letelier v. Republic of Chile, 748 F.2d 790 (2d Cir. 1984)..........................................................16

Libutti v. United States, 178 F.3d 114 (2d Cir. 1999) ..................................................................23

Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989).........................................17, 18

Metropolitan Life Inc. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) .......................22

Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002)...............18, 20

Princz v. Fed. Republic of Germany, 26 F.3d 1166 (D.C. Cir. 1994) ...........................................18

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) .....................................................15

Robinson v. Government of Malaysia, 269 F.3d 133 (2d Cir. 2001) ..........................13, 14, 20, 21

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) .........................................................................16, 18

Scott v. Sonnet, Sale & Keuhne, P.A., 989 F. Supp. 542 (S.D.N.Y. 1998)...................................24

SEC v. Alexander, 160 F. Supp. 2d 642 (S.D.N.Y. 2001)..............................................................25

Shapiro v. Republic of Bolivia, 930 F.2d 1013 (2d Cir. 1991).......................................................24

Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992) .................................18

Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239 (2d Cir. 1996)......................18

Tel-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984)...............................................18

Time, Inc. v. Simpson, No. 02 Civ. 4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec.
  22, 2003).....................................................................................................................................23

United States v. Gaubert, 499 U.S. 315 (1991) .............................................................................19

United States v. S.A. Empressa de Viacao Aerea Rio Grandense, 467 U.S. 797 (1984) ..............17

Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480 (1983)......................................................14

Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.
  1992)...........................................................................................................................................12

Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230 (2d Cir. 2002) .......................14, 20

Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir. 1964).............................................................11, 12

## DOCKETED CASES

Ashton, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 02-6977 (S.D.N.Y.)...............................2

Barrera, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-7036 (S.D.N.Y.) .............................2

Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 03-5738
    (S.D.N.Y.) ...........................................................................................................................2

Federal Insurance, et al. v. Al Qaida, et al., C.A. No. 03-6978 (S.D.N.Y.).....................................2

Salvo, et al. v.Al Qaeda Islamic Army, et al., C.A. No. 03-5071 (S.D.N.Y.) .................................2

Tremsky, et al. v. Osama bin Laden, et al., C.A. No. 02-7300 (S.D.N.Y.) .....................................2

## STATUTES

Fed. R. Civ. P. 12(h) ......................................................................................................................3

Fed. R. Civ. P. 12(b) .........................................................................................................6, 14, 22

28 U.S.C. § 1603............................................................................................................................14

28 U.S.C. § 1604............................................................................................................................14

28 U.S.C. § 1605..................................................................................................................... passim

## MISCELLANEOUS

H.R. Rep. No. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. at 6615......................................16

## I.    INTRODUCTION[1]

The Federal Insurance action is a belated attempt by insurance carriers to bootstrap subrogation claims onto the very same factual allegations that the "personal injury" plaintiffs have pursued since the outset of this litigation over a year and a half ago.  Despite additional conclusory allegations which are designed to cure, yet only highlight, the deficiencies in the plaintiffs' theories of liability and jurisdiction, the allegations set forth against Prince Sultan and other Saudi officials in the Federal Insurance complaint rest on the very premise that Judge Robertson resoundingly rejected in the Burnett case.  Judge Robertson concluded that the making of charitable grants to large, well-established Islamic aid organizations – absent a factual basis to infer that the grants were knowingly made with the specific intent to further terrorism against the United States – was sufficient neither to abrogate sovereign immunity for alleged official conduct nor to justify the exercise of personal jurisdiction over claims based on alleged private conduct.  Nothing in Second Circuit law or in the Federal Insurance Amended Complaint warrants disturbing that sound and settled result.

Like the other consolidated cases, moreover, Federal Insurance suffers from a fundamentally flawed understanding of the relationship between Osama Bin Laden and the Saudi Royal Family.  Al Qaeda's escalating terrorist attacks in Saudi Arabia underscore yet again the hatred that bin Laden and his supporters harbor toward the Saudi government, which in 1994 stripped him of his Saudi citizenship and froze his assets.  Al Qaeda has for years loudly advocated the removal of the Saudi Royal Family, as first evidenced by Osama bin Laden's 1995 "Open Letter" to King Fahd, in which bin Laden singled out the King and his "defense minister,"

---

[1] The facts in the foregoing Introduction and Background sections are contained as part of the Declaration of William H. Jeffress, Jr., previously attached to Prince Sultan's March 19, 2004 Motion to Dismiss, and Exhibit A thereto, both of which are reattached hereto as Exhibit 1.

Prince Sultan bin Abdulaziz Al-Saud ("Prince Sultan"), among others, as "the source of the disease" in Saudi Arabia.[2]  Moreover, the recent attacks in Saudi Arabia reflect Al Qaeda's determination to accomplish the removal of the Royal Family through violent means.  Given this demonstrated hostility of the Saudi government, the Plaintiffs' allegation that Prince Sultan (and indeed the Kingdom itself) knowingly financed and intended to bring about Al Qaeda terrorist operations against the United States is patently absurd.

Prince Sultan, through his counsel, moves to dismiss the Amended Complaint in Federal Insurance Co. v. Al Qaida, 03-CV-6978 (RCC) (the "Amended Complaint").[3]  For reasons set forth more fully below, the Amended Complaint must be dismissed (1) under Federal Rule of Civil Procedure 12(b)(1), because the Court lacks subject matter jurisdiction over Prince Sultan, who, as the third-ranking government official, Minister of Defense and Aviation, and head of several agencies of the Saudi Arabian government, including at least two agencies relevant to this case, is absolutely immune from suit under the Foreign Sovereign Immunities Act; and (2) under Rule 12(b)(2), because the Amended Complaint fails to set forth any grounds for an assertion of personal jurisdiction over Prince Sultan.[4]

---

[2] See "Open Letter From Osama bin Laden to King Fahd Concerning the Latest Cabinet Shuffle," Aug. 3, 1995, reprinted in Roland Jacquard, *In the Name of Osama bin Laden* (Durham: Duke Univ. Press 2002) at 172 (excerpted and attached hereto as Exhibit 2).

[3] On March 19, 2004, Prince Sultan moved to dismiss the complaints in Ashton, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 02-6977 (S.D.N.Y.); Barrera, et al. v. Al Qaeda Islamic Army, et al., C.A. No. 03-7036 (S.D.N.Y.); Burnett, et al. v. Al Baraka Investment & Dev. Corp., et al., C.A. No. 03-5738 (S.D.N.Y.) [Burnett (N.Y.)]; Salvo, et al. v.Al Qaeda Islamic Army, et al., C.A. No. 03-5071 (S.D.N.Y.); and Tremsky, et al. v. Osama bin Laden, et al., C.A. No. 02-7300 (S.D.N.Y.).  Briefing on that consolidated motion is not yet complete.

[4] Should the Court decline to extend the Burnett rulings to Federal Insurance, it would have to consider two additional grounds that were asserted by Prince Sultan in Burnett but not decided by the D.C. Court:  *First*, the allegations presented against him in the Amended Complaint are nonjusticiable under the political-question, act-of-state, and international comity doctrines.  *Second*, the Amended Complaint fails to state a claim upon which relief can be granted because

## II.    BACKGROUND

### A.    **Prince Sultan**[5]

Prince Sultan is Saudi Arabia's Minister of Defense and Aviation and Inspector General of its Armed Forces, positions he has held since 1962. Am. Compl. ¶ 427. In 1982, he was named Second Deputy President of Saudi Arabia's Council of Ministers, making him the third-highest ranking official of the Saudi government, after King Fahd and the Crown Prince. Prince Sultan is a central figure in the formulation of Saudi Arabia's foreign policy, including its policy toward the United States and its participation in the war against Al Qaeda and international terrorism.

Prince Sultan also holds two other government positions that are relevant to these lawsuits. First, he is Chairman of the Supreme Council of Islamic Affairs ("Supreme Council"), a council of senior government officials established in 1995 by King Fahd to carry out the foreign policy of the Kingdom as it relates to international Islamic affairs. The Supreme Council makes recommendations to Saudi Arabia's central governing body, the Council of Ministers, on requests for assistance received from Islamic organizations based outside of Saudi Arabia. The Supreme Council does not supervise or police the activities of any charities, including recipient organizations, nor does it initiate or itself make charitable donations.

---

nowhere does it allege facts that, if true, would support a reasonable inference that Prince Sultan proximately caused the September 11th attacks. In the interests of efficiency, Prince Sultan reserves the justiciability and failure-to-state-a-claim arguments until the Court resolves the threshold questions of foreign sovereign immunity and personal jurisdiction, as previously ruled upon by the D.C. Court. See Fed. R. Civ. P. 12(h)(2), (h)(3).

[5] An expanded discussion of Prince Sultan's background and responsibilities in the Saudi government appears on pages 3-5 of Prince Sultan's Motion to Dismiss in Burnett (Burnett Dkt.# 110), as well as on the Saudi Embassy's web site, at www.saudiembassy.net/Country/ Government/SultanBio.asp.

Second, Prince Sultan heads the Special Committee of the Council of Ministers ("Special

Committee"), a government body originally established in 1962 during the civil war in

neighboring Yemen to advise the King on foreign policy.  Am. Compl. ¶ 427.  Today, the

Special Committee functions as an organ of the government attached to the Office of the Second

Deputy President of the Council of Ministers, Prince Sultan.  The Council of Ministers

establishes the budget of the Special Committee, which is made up entirely of government funds.

Prince Sultan exercises discretionary control over disbursements by the Special Committee,

which have included grants to Islamic charitable organizations in furtherance of the national and

foreign policy of Saudi Arabia as determined by the Council of Ministers.

**B.**     **Prior Proceedings in *Burnett***

**1.**     **The Third Amended Complaint**

The Burnett plaintiffs filed their Third Amended Complaint (the "Burnett TAC") on

November 22, 2002.  The allegations against Prince Sultan appear at paragraphs 351 through 363

of the Burnett TAC.  Putting aside gratuitous references to statements and positions attributed to

Prince Sultan that amount to nothing more than criticisms of Saudi government policy, the

Burnett TAC offers two factual allegations to support the legal claims asserted against Prince

Sultan.  The first spans paragraphs 358 and 359:

> [A]s Chairman of the Supreme Council Prince Sultan could not
> have overlooked the role played by the Saudi charitable entities
> identified herein in financing the al Qaeda.  Despite that
> responsibility and knowledge, Prince Sultan personally funded
> several Islamic charities over the years that sponsor, aid, abet, or
> materially support Osama Bin Laden and al Qaeda: the
> International Islamic Relief Organization (and its financial fund
> Sanabel el-Khair), al-Haramain, Muslim World League, and the
> World Assembly of Muslim Youth.

The second allegation is found at paragraph 363:

> At best, Prince Sultan was grossly negligent in the oversight and administration of charitable funds, knowing they would be used to sponsor international terrorism, but turning a blind eye.  At worst, Prince Sultan directly aided and abetted and materially sponsored al Qaeda.

Accordingly, the gravamen of the allegation against Prince Sultan in Burnett is that he "personally funded" four charitable organizations that, by virtue of his official position as Chairman of the Supreme Council, he knew or should have known provided financial support to Al Qaeda and, in turn, that those charities did in fact fund Al Qaeda.  The Burnett TAC does not allege that Prince Sultan, or even the charities, knew about, participated in, desired to bring about, or even reasonably foresaw the September 11 attacks themselves.

## 2. Prince Sultan's Motion to Dismiss

Prince Sultan voluntarily appeared in Burnett and on April 8, 2003, moved to dismiss. See Burnett Dkt.# 110 (Prince Sultan's Motion to Dismiss).  The Motion raised four principal grounds for dismissal of the Burnett TAC:

*First*, to the extent they were made at all, the charitable grants attributed to Prince Sultan in the Burnett TAC were grants of the Saudi government, duly authorized by Prince Sultan in his official capacity and paid with government funds.[6]  As such, the FSIA provides Prince Sultan absolute immunity from suit based on these official acts, and no exception to the FSIA applies to defeat immunity on the claims presented in the Burnett TAC.

---

[6] Exhibits to the motion in Burnett included translated copies of the transmittal letters and checks reflecting governmental nature and funding of the grants at issue.  They also included declarations from representatives of the four charities in question stating that they had conducted a search of the charities' financial records and were aware of no personal donations by Prince Sultan apart from the official grants indicated by the above-referenced business records.  In fact, no grants whatsoever were received from Prince Sultan by at least two of the charities at issue, the Muslim World League and al-Haramain.  See Burnett Dkt.# 110, Exs. 2-5.  Although Judge

*Second*, the central issue posed by the claims against Prince Sultan – the role of the high officials of a friendly foreign government in financing terrorism against the United States – presents a classic "political question" the adjudication of which would impermissibly infringe upon the President's constitutional prerogative to conduct foreign relations and undermine important U.S. policy interests abroad. See Baker v. Carr, 369 U.S. 186, 217 (1962).

*Third*, the plaintiffs did not met their burden of establishing a prima facie case for the exercise of personal jurisdiction over Prince Sultan because they failed to allege any facts to establish that he had "minimum contacts" with either the District of Columbia or the United States as a whole.

*Finally*, the plaintiffs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because, among other reasons, their alleged theory of causation is too attenuated to support a finding that Prince Sultan's actions proximately caused the September 11 attacks.

### 3.   The Plaintiffs' Opposition and Related Pleadings

The Burnett plaintiffs responded to Prince Sultan's Motion to Dismiss with a motion for leave to take jurisdictional discovery by way of depositions of the persons who submitted declarations in support of the Motion. After two rounds of briefing and oral argument, Judge Robertson denied the plaintiffs' discovery request. See Memorandum Order of July 7, 2003 (Burnett Dkt.# 195). Meanwhile, the plaintiffs filed a 75-page memorandum in opposition to the Motion to Dismiss, and Prince Sultan responded with a 37-page reply brief. Judge Robertson heard oral argument on the motion on October 17, 2003, followed by additional briefing and the presentation of supplemental authority on questions raised by the Court during argument.

---

Robertson did not take these submissions into account in granting Prince Sultan's motion to dismiss, we nevertheless incorporate them here by reference.

### 4. Judge Robertson's Ruling

Judge Robertson granted Prince Sultan's Motion to Dismiss (as well as that of Saudi Arabia's former Chief of General Intelligence, Prince Turki Al-Faisal) on November 14, 2003. Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003). In his ruling, Judge Robertson found no need to resolve whether Prince Sultan's alleged contributions were personal or official in nature. Burnett, 292 F. Supp. 2d at 16. To the extent they were official, he held that Prince Sultan was entitled to immunity under the FSIA. Id. at 16-21. Judge Robertson "readily disposed of" the plaintiffs' reliance on the FSIA's commercial-activity exception – which abrogates immunity in suits based on "commercial activity" of the foreign state in, or having a direct effect in, the United States – finding that "[t]he act of contributing to a foundation" lies outside the statute's definition of commercial activity. Id. at 17-18; 28 U.S.C. § 1605(a)(3).

Judge Robertson then moved to the other exception to FSIA immunity alleged by the plaintiffs: the non-commercial tort exception, which lifts sovereign immunity in suits based on non-discretionary official conduct causing death or personal injury in the United States. 28 U.S.C. § 1605(a)(5). Judge Robertson held that the alleged causal connection between Prince Sultan and the September 11 attacks was far too remote to satisfy the exception's requirement that the plaintiffs' injuries be *caused by* the tortious act of the foreign state. Noting that the exception is to be narrowly construed in light of the limited purpose for which it was enacted – to remove immunity in suits resulting from automobile accidents caused by foreign diplomats stationed in the United States – Judge Robertson concluded that to apply the exception here "would stretch the causation requirement . . . not only to the 'farthest reaches of the common law,' but perhaps beyond, to terra incognita." Burnett, 292 F. Supp. 2d at 20.

Judge Robertson also found, as an independent and alternative ground for rejecting application of the non-commercial tort exception, that Prince Sultan's alleged conduct was "squarely covered" by the "discretionary-function" proviso to the exception. Id. In so doing, he rejected the plaintiffs' contention that otherwise discretionary official conduct should not, as a matter of public policy, be protected by the discretionary-function proviso if the conduct was allegedly undertaken to support terrorism or for some other illegal purpose. Id. at 21.

To the extent Prince Sultan's alleged actions were personal in nature, Judge Robertson held that the courts of the United States have no personal jurisdiction over Prince Sultan. In neither the Burnett TAC nor their opposition papers did the plaintiffs point to any facts to suggest that Prince Sultan had the required minimum contacts with the United States. (Judge Robertson called their efforts to establish minimum contacts "desultory."[7] Id.) Relying instead on the U.S. Supreme Court's holding in Burger King v. Rudzewicz, 471 U.S. 462 (1985), the plaintiffs contended that Prince Sultan brought himself within the jurisdiction of the Court by "purposefully direct[ing]" his allegedly tortious conduct at residents of the United States. Judge Robertson rejected this argument, holding that "[t]he [Burnett TAC] stops well short of alleging that Prince Sultan's actions were "expressly aimed" or "purposefully directed" at the United States[.]" Burnett, 292 F. Supp. 2d at 23.

Finally, Judge Robertson reserved judgment on the other grounds raised in Prince

---

[7] The plaintiffs' efforts to establish minimum contacts were actually less than "desultory." In his opinion, Judge Robertson appears erroneously to have attributed to Prince Sultan certain speaking engagements and college attendance in the United States by Prince Turki. Burnett, 292 F. Supp. 2d at 22. The record before Judge Robertson reflected no allegations of such activities on the part of Prince Sultan.

Sultan's motion to dismiss. Id.[8]

### C.   The *Federal Insurance* Claims

On September 10, 2003 – 13 months after the Burnett plaintiffs filed their initial

complaint – the plaintiffs in Federal Insurance (the "Plaintiffs") filed their initial complaint. The

legal claims in that complaint were nearly identical to the Burnett legal claims, as shown in

Exhibit 3, attached hereto. The only allegation against Prince Sultan was that he, along with

four-and-a-half pages of other parties simply listed seriatim without any actual factual

allegations, "aided and abetted, conspired with, and provided material support and resources to,

defendant Al Qaida and/or affiliated [foreign terrorist organizations], associations, organizations,

or persons." See Complaint ¶72 [Federal Insurance Dkt.# 1]. Not until March 10, 2004, did the

Plaintiffs file an amended complaint, purporting, for the first time, to include specific allegations

against Prince Sultan.

Unlike Burnett, where the plaintiffs alleged that Prince Sultan "could not have

overlooked" that monies donated to certain charities were being used, and was "grossly

negligent" in allowing such monies to be used, to eventually fund terrorists, the Federal

Insurance Plaintiffs wantonly assert, with no additional factual support, that Prince Sultan knew

that certain charities were being used to support terrorism, and knew and intended that his

donations would be used to fund terrorism. See Am. Compl. ¶¶ 429-431. Thus, the Federal

Insurance Plaintiffs have crafted their Amended Complaint expressly in an effort to cure the

defects as recognized by Judge Robertson in the Burnett Third Amended Complaint and as

argued by Prince Sultan in his March 19, 2004 consolidated motion to dismiss the complaints in

---

[8] Prior to his ruling on Prince Sultan's Motion to Dismiss, Judge Robertson had already
dismissed the plaintiffs' RICO and negligence claims. See Burnett v. Al Baraka Inv. & Dev.
Corp., 274 F. Supp. 2d 86, 100-102, 108 (D.D.C. 2003).

Ashton, Barrera, Burnett (N.Y.), Salvo, and Tremsky, by irresponsibly asserting actual knowledge and direct intent on the part of Prince Sultan, despite the absence of any alleged *facts* to support those allegations.

A chart comparing the relevant paragraphs of Burnett and Federal Insurance is attached hereto as Exhibit 4. As Exhibit 4 makes clear, despite the Plaintiffs' efforts to maneuver around Judge Robertson's dismissal of the patently deficient Burnett allegations, the allegations against Prince Sultan in the Amended Complaint have no more factual basis than do the parallel allegations in Burnett. The Plaintiffs merely add more precise legal conclusions in an effort to avoid dismissal, and do not add any substantive factual allegations against Prince Sultan.

Prince Sultan's inclusion in the Federal Insurance litigation is even more insupportable because the Plaintiffs have asserted absolutely no basis whatsoever for an exercise of personal jurisdiction over him. They allege no contacts whatsoever with the United States, much less any "minimum contacts." The Plaintiffs do not even allege, much less present facts to establish, that Prince Sultan purposefully directed any of his alleged conduct toward the United States.

In short, the Amended Complaint does not allege any grounds different than those alleged and rejected in Burnett in favor of this Court's subject-matter jurisdiction over the Plaintiffs' claims or personal jurisdiction over Prince Sultan.

## III.    ARGUMENT

### A.    **Prince Sultan's Dismissal in Burnett Deserves Substantial Deference**

As detailed above, Prince Sultan was dismissed from the Burnett action approximately three weeks prior to the issuance of the JPML's transfer and consolidation order. The grounds for the dismissal – sovereign immunity and lack of personal jurisdiction – if adopted by this Court, would require dismissal of the virtually identical claims in the Federal Insurance

Amended Complaint. This rather unique procedural posture presents the Court with the immediate question of what weight to afford Judge Robertson's order of dismissal in <u>Burnett</u>. The following legal and prudential considerations bear on that inquiry.

As a starting point, Judge Robertson's rulings in <u>Burnett</u> remain "law of the case" in that action. The law-of-the-case doctrine prevents relitigation of issues in a single case once they have been decided. <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988). It "promotes the finality and efficiency of the judicial process," <u>id.</u> at 816, saves litigants and the courts from duplication of efforts, and furthers the goal of consistency in judicial decisions. <u>Crane Co. v. American Std., Inc.</u>, 603 F.2d 244, 248 (2d Cir. 1979) (quoting <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 953 (2d Cir. 1964)).

The law-of-the-case doctrine requires an "extremely deferential" standard of review. <u>In re Air Crash at Belle Harbor, New York</u>, Nos. 1448 (RWS), 02-Civ.-8411(RWS), 2003 WL 124677, at *2 (S.D.N.Y. Jan. 15, 2003). Although the Court has the *power* to modify an interlocutory order of an MDL transferor court, <u>see Degulis v. LXR Biotech., Inc.</u>, 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996), courts should be "loathe" to revisit a previously decided issue, "except for rare circumstances." <u>In re Air Crash at Belle Harbor, N.Y.</u>, 2003 WL 124677, at *2; <u>see also Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1516 (10th Cir. 1991) ("[T]raditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court."); <u>In re Korean Air Lines Disaster</u>, 814 F. Supp. 599, 601 (S.D.N.Y. 1993) (holding that, under law of the case, motion for reconsideration of decision after MDL transfer "would have to prove especially meritorious to justify a departure from the prior ruling"); <u>In re Jackson Nat'l Life Ins. Co. Premium Litig.</u>, 209 F.R.D. 134, 138 (W.D. Mich. 2002) (holding that law of the case is "particularly applicable in multidistrict litigation where the

claims of numerous diverse parties might otherwise result in continuous relitigation of the same

issues"). As the Second Circuit explained forty years ago, "'where litigants have once battled for

the court's decision, they should neither be required, nor without good reasons permitted, to

battle for it again.'" <u>Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255

(2d Cir. 1992) (quoting <u>Zdanok</u>, 327 F.2d at 953).

  Although the <u>Federal Insurance</u> Amended Complaint presents virtually identical claims

and factual allegations with respect to Prince Sultan, we recognize that it is a separate action.

Judge Robertson's rulings in <u>Burnett</u> therefore do not, strictly speaking, have law-of-the-case

status in <u>Federal Insurance</u>. Nevertheless, the values of efficiency, fairness, and uniformity that

are meant to be served by both the law-of-the-case doctrine and MDL consolidation counsel

substantial deference to Judge Robertson's rulings in deciding the present motion. A number of

prudential factors lead to that conclusion.

  *First*, Prince Sultan's Motion to Dismiss in <u>Burnett</u> was fully and effectively litigated.

Briefing on the motion exceeded 200 pages, not including exhibits, and the D.C. Court heard oral

argument on both the merits of the motion and the plaintiffs' request for jurisdictional discovery.

The Motley Rice firm and its consortium of affiliated lawyers ably represented the plaintiffs'

interests, as evidenced not only by their voluminous filings but also by the substantial resources

that they have devoted to the investigation and litigation of the case. <u>See</u> Mar. 5, 2004 Status

Report (filed by the Motley, Rice law firm in <u>Burnett</u>), at 15, 19.

  *Second*, adopting Judge Robertson's dismissal of Prince Sultan would result in a

uniformity of rulings among the consolidated cases. Because Prince Sultan was dismissed from

<u>Burnett</u> prior to the active litigation of the other cases, the application of Judge Robertson's

rulings to the remaining cases would be fully consistent with what little law has been developed in them.

*Third*, there have been no changes in the facts or the law that would warrant disturbing Judge Robertson's conclusions. None of the plaintiffs have come forward with new allegations against Prince Sultan. The Third Amended Complaint remains operative in <u>Burnett</u>, and the Amended Complaint here is nothing more than a clear attempt to use more precise legal, conclusory language, without any further factual support, than that used in <u>Burnett</u>. Nor have there been any changes in controlling law or rulings by this Court or the Second Circuit since the transfer and consolidation that conflict with, or call into question, Judge Robertson's rulings as to Prince Sultan.

*Fourth*, adopting Judge Robertson's rulings would promote judicial efficiency by eliminating the need for this Court to consider grounds for dismissal raised by Prince Sultan in <u>Burnett</u> but not decided by Judge Robertson, i.e., non-justiciability and failure to state claims upon which relief can be granted.

*Finally* and most importantly, Judge Robertson's rulings are legally correct under both D.C. Circuit and Second Circuit law, as we now show.

**B.    The Amended Complaint Must Be Dismissed As Against Prince Sultan**

### 1.    Standard of Review

In considering a typical motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint. <u>See, e.g.</u>, <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993). When addressing arguments raising the FSIA as a basis for dismissal, however, the Court must "look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual

dispute as to whether" an exception to the FSIA applies. Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998), aff'd, 304 F.3d 180 (2002). Where a defendant presents a "prima facie case that it is a sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230, 241 (2d Cir. 2002). Thus, when an FSIA claim is raised, the plaintiff bears a much higher burden at the dismissal stage than it does on an ordinary motion under Federal Rule of Civil Procedure 12(b)(1).

### 2.     This Court Lacks Subject-Matter Jurisdiction Because Prince Sultan is Absolutely Immune From Suit Under the FSIA

The FSIA is the sole method by which the plaintiffs can assert subject-matter jurisdiction over foreign sovereigns in federal court. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). Immunity is a threshold question that the Court must resolve first. Robinson, 269 F.3d at 139 (citing Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983)). Under the FSIA, "foreign states" and their "instrumentalities" are absolutely immune from suit unless one of several narrowly-drawn exceptions applies. 28 U.S.C. §§ 1603, 1604; Robinson, 269 F.3d at 138.

### a.     The FSIA Applies to the Official Acts of Prince Sultan

As Saudi Arabia's Minister of Defense and Aviation, Inspector General of its Armed Forces, Second Deputy President of Saudi Arabia's Council of Ministers, Chairman of the Supreme Council, and head of the Special Committee, there can be no doubt that, to the extent the complaints allege that Prince Sultan acted in his official capacity, he is an instrumentality of the Kingdom of Saudi Arabia. See 28 U.S.C. § 1603(a); see also Fickling v. Commonwealth of Australia, 775 F. Supp. 66, 68 (E.D.N.Y. 1991) (government official deemed an instrumentality

of foreign state). Therefore, this Court lacks subject-matter jurisdiction unless one of the exceptions to sovereign immunity in the FSIA applies. Argentine Republic, 488 U.S. at 434-35.

Because Prince Sultan has made a prima facie showing that he is entitled to immunity, the burden shifts to the Plaintiffs to "come forward with some facts which would allow this Court to find that an exception to the [FSIA] applies." Fickling, 775 F. Supp. at 69. The Federal Insurance Plaintiffs have yet to identify any such exceptions as against Prince Sultan; the Burnett plaintiffs relied, however, on the commercial-activity exception in 28 U.S.C. § 1605(a)(2), and the non-commercial tort exception in 28 U.S.C. § 1605(a)(5).

### b.      The Commercial-Activity Exception Does Not Apply

The "commercial-activity" exception to sovereign immunity does not apply to these allegations. This exception provides that a foreign sovereign is not immune in any case:

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The Supreme Court has stated that only "when a foreign government acts, not as a regulator of the market, but in the manner of a private player within it, [are the foreign sovereign's] actions . . . 'commercial' within the meaning of the FSIA." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (holding that Argentina's issuance of bonds was commercial activity). The relevant inquiry is "whether the particular actions that the foreign state performs ... are the type of actions by which a private party engages in 'trade . . . or commerce.'" Weltover, 504 U.S. at 614.

The acts of the foreign sovereign at issue here – authorizations of government-funded grants to charitable organizations operating abroad in support of Saudi Arabia's national interests – are not the type of activity that can be undertaken by a private party. As Judge Robertson noted, the legislative history of the FSIA clearly shows that this is precisely the kind of activity Congress *did not* intend to be defined as "commercial activity": "[A] foreign state's mere participation in a foreign assistance program administered by the Agency for International Development (AID) is an activity whose essential nature is public or governmental, and it would not itself constitute a commercial activity." H.R. Rep. No. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. at 6615; see Burnett, 292 F. Supp. 2d at 18.

Re-characterizing Prince Sultan's activity as "financ[ing]" terrorist organizations – as the Burnett plaintiffs attempted to do – does not convert it into "commercial activity." See Burnett, 292 F. Supp. 2d at 17. Under Supreme Court and Second Circuit precedent, these activities are criminal and cannot be "commercial" in nature. Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) (alleged detention and torture cannot be commercial activity of foreign state); Letelier v. Republic of Chile, 748 F.2d 790, 797 (2d Cir. 1984) (criminal activity cannot be "commercial activity"); Kline v. Kaneko, 685 F. Supp. 386, 391 (S.D.N.Y. 1988) ("Kidnapping cannot be considered a commercial activity, because a private person cannot lawfully engage in that activity.").

### c.     The Non-Commercial Tort Exception Does Not Apply

The "non-commercial tort" exception to sovereign immunity also does not apply here.[9]

---

[9] In concluding in Burnett that the non-commercial tort exception did not apply, Judge Robertson nevertheless rejected Prince Sultan's argument that the exception did not apply because the "entire tort" (including the acts of Prince Sultan which undeniably occurred in Saudi Arabia) must have occurred in the United States. Burnett, 292 F. Supp. 2d at 19 n.4. Prince

This exception provides that a foreign sovereign is not immune in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign sate or of any official or employee of that foreign state while acting within the scope of his office or employment . . . .

28 U.S.C. § 1605(a)(5). Congress also provided, however, that the non-commercial tort exception *does not apply* "to any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused . . . ." Id. § 1605(a)(5)(A). Nor does the exception encompass claims for injuries resulting from providing material support to terrorists, which Congress explicitly assigned to a different exception not applicable here. Id. § 1605(a)(7); Burnett, 292 F. Supp. 2d at 20 n.5.

*First*, in "making recommendations to the Council of Ministers about requests for assistance from Islamic organizations outside Saudi Arabia or, as head of the Special Committee, deciding what disbursements should be made to Islamic charitable organizations," Judge Robertson has already determined that Prince Sultan was exercising a discretionary power, "clearly ... 'grounded in social, economic, and political policy.'" Burnett, 292 F. Supp. 2d at 20-21 (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 814 (1984)).

The plaintiffs in Burnett relied on Letelier v. Republic of Chile, 488 F. Supp. 665, 673 (D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), for the proposition that official action which supports terrorist attacks should not be considered discretionary as a matter of public policy. Judge Robertson rejected that argument. Burnett, 292 F. Supp. 2d at 21

---

Sultan does not address this ruling in the present motion, but hereby preserves his right to challenge it on appeal.

(distinguishing <u>Letelier</u> and <u>Liu</u> because both cases involved government officials directly ordering or aiding the murder of individuals in United States).[10]

There is no support in the Second Circuit for any reliance on <u>Letelier</u> or <u>Liu</u>. The discretionary-function exclusion bars "*any claim*" otherwise covered by the non-commercial tort exception that is based on the performance of a "discretionary function." It does not limit itself to claims premised on negligence or other non-intentional acts. Nor does it exclude claims based on particular categories of alleged official conduct, no matter how heinous. The broad sweep of the discretionary-function exclusion is appropriate because the FSIA "was not intended as human rights legislation. Thus, no matter how allegedly egregious a foreign state's conduct, suits that [do] not fit into one of the [FSIA's] discrete and limited exceptions invariably [are] rejected." <u>Price v. Socialist People's Libyan Arab Jamahiriya</u>, 294 F.3d 82, 87-88 (D.C. Cir. 2002) (internal citation omitted).[11]

---

[10] In <u>Letelier</u>, the conduct determined to fall outside the discretionary-conduct exception was the confessed involvement of a Chilean intelligence officer in the ordering of and aiding in the actual murder. <u>Letelier</u>, 488 F. Supp. at 665. Similarly, in <u>Liu</u>, the Chinese official was tried and convicted in China for ordering the murder at issue. <u>Liu</u>, 892 F.2d at 1423. The conduct of the foreign sovereign here – namely, Prince Sultan authorizing government grants to Islamic charities – does not remotely approach the conduct found outside the discretionary-function exclusion in <u>Letelier</u> and <u>Liu</u>.

[11] Examples of allegedly egregious government conduct found not to have given rise to jurisdiction under the FSIA include Saudi Arabia's alleged detention and torture of an American citizen, <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349 (1993), Libya's bombing of Pan Am flight 103, <u>Smith v. Socialist People's Libyan Arab Jamahiriya</u>, 101 F.3d 239 (2d Cir. 1996) (decided prior to the passage of 28 U.S.C. § 1605(a)(7)), the abduction, kidnapping, and forced removal of an American citizen from Mexico, <u>Kline v. Kaneko</u>, 685 F. Supp. 386, 391-92 (S.D.N.Y. 1988), Libya's attack on a civilian bus in Israel, <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774 (D.C. Cir. 1984) (Edwards, J., concurring) (decided prior to the passage of 28 U.S.C. § 1605(a)(7)), Germany's imposition of slave labor in Nazi concentration camps, <u>Princz v. Fed. Republic of Germany</u>, 26 F.3d 1166 (D.C. Cir. 1994), and Argentina's torture of political opponents. <u>Siderman de Blake v. Republic of Argentina</u>, 965 F.2d 699 (9th Cir. 1992). If true, these alleged acts certainly would constitute unconscionable violations of international law. But they were not deemed to be a basis for abrogating sovereign immunity because they fell outside of FSIA's

Moreover, even if Prince Sultan authorized the grants in question with the intent to fund terrorism (which he did not), as these Plaintiffs directly allege, see Am. Compl. ¶431, Prince Sultan's subjective intent, be it malicious or benign, is irrelevant to the Court's analysis. As the Supreme Court has made clear, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred . . ., but on the nature of the actions taken and on whether they are susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991). Here, the nature of Prince Sultan's actions was nothing more than exercising his legal authority to determine, in his discretion, the amounts and recipients of grants by the Special Committee.

Thus, there is no basis on which to conclude Prince Sultan was not exercising a discretionary function in authorizing charitable grants on behalf of Saudi Arabia. The non-commercial tort exception, therefore, does not apply.

*Second*, the gravamen of the Plaintiffs' allegations is that Prince Sultan provided material resources and support to terrorists. See Am. Compl. ¶¶ 428, 432. Such claims are not actionable under 28 U.S.C. § 1605(a)(5), but rather under Section 1605(a)(7), the so-called state-sponsored-terrorism exception to FSIA immunity. Plaintiffs know full well, however, that they cannot claim that the state-sponsored-terrorism exception confers subject-matter jurisdiction on this Court as to their claims against Prince Sultan because Saudi Arabia has not been designated as a state sponsor of terrorism by the U.S. Department of State. 28 U.S.C. § 1605(a)(7)(A); Burnett, 292 F. Supp. 2d at 16 n.3. Plaintiffs cannot be allowed to avoid the explicit limitation placed by Congress on suits against instrumentalities of foreign states for providing material support and resources to terrorists, by purporting to rely upon the non-commercial tort exception. To do so would eviscerate the very purpose of Section 1605(a)(7), which was to provide a vehicle for

---

"limited and discrete" exceptions. The same must be true of Prince Sultan's alleged conduct in this case.

actions against those who materially support and provide resources to terrorists who are

designated state-sponsors of terrorism, while maintaining foreign sovereign immunity for similar

claims against those *not* so designated. See, e.g., Price, 294 F.3d at 88 (holding that original

FSIA did not encompass claims of state-sponsored terrorism because it was considered an

"immunized form[] of state activity"); see also Burnett, 292 F. Supp. 2d at 20 n.5.

*Finally*, the causation requirement of Section 1605(a)(5) is not satisfied. As previously

mentioned, the plaintiffs bear the burden of going forward with some evidence showing that an

exception to immunity applies. Virtual Countries, Inc., 300 F.3d at 241. In this instance, the

plaintiffs must present evidence that Prince Sultan's acts *caused* the plaintiffs' injuries. While

the FSIA may not alter the substantive showing of causation ultimately required under the

Plaintiffs' substantive claims, Robinson, 269 F.3d at 143, it *does* require, in essence, a

heightened pleading standard with respect to the factual predicates underlying the plaintiffs'

substantive tort claims.[12]

These Plaintiffs have offered no allegations of causation as to Prince Sultan. The best

approximation of a causation argument has come from the Burnett plaintiffs – from whose

complaint the Plaintiffs here derived their allegations: "Prince Sultan, acting in [his] official

capacit[y], funded or provided material resources to those who funded or provided material

resources to the terrorists who perpetrated the September 11th attacks." Burnett, 292 F. Supp. 2d

---

[12] Judge Robertson's decision in Burnett recognizes this heightened evidentiary standard.
While declining to decide whether the plaintiffs' attenuated allegations of causation would
survive a motion to dismiss on non-FSIA grounds, Burnett, 292 F. Supp. 2d at 19, Judge
Robertson recognized that Congress sets the subject-matter jurisdictional limits of the lower
federal courts, and, under the FSIA, Congress has concluded that foreign sovereigns ought to be
generally immune from suit. Id. To effectuate this broad, congressionally mandated immunity,
the courts have required plaintiffs to come forward with some evidence and offer more than mere
assertions, lacking any factual predicates, to survive a motion to dismiss on FSIA grounds. See

at 19. Such a vague allegation of causation, offered without supporting facts of any kind, is

simply insufficient to withstand the causation pleading requirement in an FSIA case. See

Robinson, 269 F.3d at 143 (holding that "the district court may well have [to take] an excursion

into the same legal territory that it would visit in the course of deciding the case on the merits)."

In Robinson, the issue was whether the alleged conduct was even tortious. In affirming the

district court's dismissal, the Court in Robinson was concerned that,

> To sustain jurisdiction on generic allegations of [negligence]
> absent an assertion or evidence of a factual predicate for such
> jurisdiction, would invite plaintiffs to circumvent the jurisdictional
> hurdle of the FSIA by inserting vague and conclusory allegations
> of tortious conduct in their complaints – and then to rely on the
> federal courts to conclude that some conceivable non-discretionary
> tortious act falls within the purview of these generic allegations
> under the applicable substantive law. This is at odds with the goal
> of the FSIA to enable a foreign government to obtain an early
> dismissal when the substance of the claim does not support
> jurisdiction.

Robinson, 269 F.3d at 146.

Here, too, all the plaintiffs have alleged are "vague and conclusory allegations" of a

causation chain so attenuated that it "stretch[es] the causation requirement of the noncommercial

tort exception . . . to terra incognita," Burnett, 292 F. Supp. 2d at 20, in the hopes that this Court

will conclude that such "generic allegations" could theoretically support *some* finding of

causation. Nor can Plaintiffs rely on their allegations that Prince Sultan donated funds to

charities knowing and intending that they be used to support Al Qaeda. In the absence of any

alleged facts to support such conclusory allegations, and in the absence of any allegations that

Prince Sultan knew about the September 11th Attacks, or intended the alleged funds would be

used by the September 11th attackers, Plaintiffs' allegations are simply an insufficient showing

---

Robinson, 269 F.3d at 146. The plaintiffs' allegations of causation must meet this same exacting
standard.

of causation in a motion to dismiss under the FSIA.  Under <u>Ronbinson</u>, the Court must look past the allegations and the Plaintiffs must provide some factual predicate to support their vague and attenuated causation chain.  These Plaintiffs have entirely failed to do that.

Because none of the exceptions to immunity apply, this Court has no subject-matter jurisdiction over Prince Sultan, and the Amended Complaint should be dismissed as to him under Federal Rule of Civil Procedure 12(b)(1).

### 3.    This Court Has No Personal Jurisdiction Over Prince Sultan

If, as the <u>Burnett</u> plaintiffs argued to Judge Robertson, there is a genuine factual dispute as to whether Prince Sultan contributed money to the charities in his *personal* capacity, so as to remove FSIA immunity, the Amended Complaint must nevertheless be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  The burden is on the plaintiffs to establish that this Court has personal jurisdiction over Prince Sultan, and the plaintiffs must present "legally sufficient allegations of jurisdiction."  <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).

Nowhere in the Amended Complaint do the plaintiffs allege that Prince Sultan had the requisite minimum contacts with the United States.  Indeed, there are simply no allegations whatsoever regarding *any* contact by Prince Sultan with the United States.  Nor have the Plaintiffs offered any factual allegations to support a contention that Prince Sultan purposefully directed any actions at the United States.  <u>Burger King</u>, 471 U.S. at 472 ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his

activities at residents of the forum . . . ."); see also LiButti v. United States, 178 F.3d 114, 123 (2d Cir. 1999) (purposefully directing conduct at forum state required).[13]

As an initial matter, the Plaintiffs have failed to allege that Prince Sultan had any personal involvement in the September 11th attacks, or any prior knowledge of them. See Time, Inc. v. Simpson, No. 02 Civ. 4917 (MBM), 2003 WL 23018890, at *5, (S.D.N.Y. Dec. 22, 2003) (conclusory allegations cannot suffice to show personal jurisdiction based on defendants' personal involvement in conduct giving rise to injuries). At best, then, the Plaintiffs' allegations state a theory that Prince Sultan made charitable contributions to organizations he knew were providing funds to a network of terrorists and that he allegedly intended his contributions to support those same terrorists, who had, through Osama bin Laden, publicly called for violence toward Americans. This theory does not even come close to alleging, much less providing any factual support for such an allegation, that Prince Sultan purposefully intended any donations or monies he raised or oversaw would support any terrorist acts against the United States. Even if the Plaintiffs *had* made such an allegation, and supported it with well-pleaded factual allegations (which they did not), as Judge Robertson found, foreseeability of harm in the United States does not satisfy the "purposefully directed" test. Both this Court and the U.S. Supreme Court have explicitly rejected such a foreseeability argument as a substitute for rigorous minimum contacts analysis:

> Although it has been argued that foreseeability of causing *injury* in another [forum] should be sufficient  to establish such [minimum] contacts there when policy considerations so require, the Court has

---

[13] Prince Sultan also argued in Burnett that the plaintiffs had not adequately alleged personal jurisdiction by conspiracy. Judge Robertson did not address that argument, though it is equally applicable now. For a fuller description of that argument, see See Defendant His Royal Highness Prince Sultan bin Abdulaziz Al-Saud's Motion to Dismiss, at 41-43 (Burnett Dkt.# 110), which we hereby incorporate and reassert as an additional basis for dismissal.

consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction.

Burger King, 471 U.S. at 474 (emphasis in original) (internal citation omitted);[14] Scott v. Sonnet, Sale & Keuhne, P.A., 989 F. Supp. 542, 544 (S.D.N.Y. 1998).  Accordingly, the Burger King Court found that the defendant (a Burger King franchisee in Michigan) had minimum contacts with the forum state (Florida) not because it was foreseeable to him that his actions could result in injury to Florida residents, but because he engaged in specific actions that created a "substantial connection" with the forum, Burger King, 471 U.S. at 475-76,  including negotiating a franchise agreement with Burger King's Miami headquarters calling for a "20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," agreeing to a contractual provision that all disputes would be governed by Florida law, "carr[ying] on a continuous course of direct communications by mail and by telephone [with Burger King's Miami headquarters]," failing to make contractually-required payments in Miami, and using and maintaining Burger King's proprietary information. Id. at 479-81.  None of the complaints here point to any such quantum of contacts.

Moreover, Burger King also held that the "purposefully directed" standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

---

[14] The Burger King holding that forseeability cannot suffice to establish personal jurisdiction where traditional minimum contacts are absent further underscores why the non-commercial tort exception to FSIA immunity cannot apply.  Congress made clear that the burden for establishing subject-matter jurisdiction under the FSIA is *higher* than the burden for establishing personal jurisdiction. Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1020 (2d Cir. 1991).  Thus, if the Court were to find that the plaintiffs' paltry allegations of causation – which, like their allegations of personal jurisdiction, amount to nothing more than a foreseeability argument without any factual predicate to support them – satisfy the non-commercial tort exception, the Court would necessarily be finding that the plaintiffs have cleared a higher hurdle of subject-matter jurisdiction based on allegations that cannot even clear the *lower* hurdle of personal jurisdiction under Burger King.  Such a result would violate the Due Process Clause and conflict

'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person.'" Id. at

475 (quoting Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 417 (1984));

accord SEC v. Alexander, 160 F. Supp. 2d 642, 656 (S.D.N.Y. 2001) (finding that foreseeability

can be *relevant*, but holding that jurisdiction cannot be based on "'random,' 'fortuitous,' or

'attenuated' contacts") (quoting Burger King, 471 U.S. at 474, 475). Even the allegations in the

Amended Complaint simply ignore the "unilateral activity" of the actual September 11th

terrorists – with which Prince Sultan is not alleged to have any connection or even knowledge

about. Personal jurisdiction cannot be exercised over Prince Sultan on the basis of *their* actions.

Nor, in any event, have Plaintiffs satisfied their burden to allege any *facts* that could support a

finding of jurisdiction on the basis of these conclusory allegations of intent and foreseeability.

## IV.   CONCLUSION

Judge Robertson's prior rulings in Burnett settled the question of the Court's subject-

matter and personal jurisdiction over Prince Sultan. Second Circuit precedent commands the

same result in Federal Insurance. There is no good reason why the prior rulings in Burnett

should be disturbed or that a different result should be adopted in Federal Insurance.

Accordingly, the Court should dismiss the Federal Insurance Amended Complaint as to Prince

Sultan. A draft conforming order has been transmitted via e-mail to the Clerk of the Court,

pursuant to the Court's Guidelines for Electronic Case Filing.

---

with the purposes of the FSIA: to enable a foreign government to obtain an early dismissal when
the substance of the claim does not support jurisdiction.

Dated: May 10, 2004                    Respectfully submitted,

                                       ___S/_____
                                       William H. Jeffress, Jr. (admitted *pro hac vice*)
                                       D.C. Bar No. 041152

                                       Christopher R. Cooper (admitted *pro hac vice*)
                                       D.C. Bar No. 453387

                                       Jamie S. Kilberg (admitted *pro hac vice*)
                                       D.C. Bar No. 480207

                                       Sara E. Kropf (admitted *pro hac vice*)
                                       D.C. Bar No. 481501

                                       BAKER BOTTS, LLP
                                       1299 Pennsylvania Avenue, N.W.
                                       Washington, D.C.  20004-2400
                                       Phone:    (202) 639-7700
                                       Fax:      (202) 639-7890