# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
)
IN RE: TERRORIST ATTACKS ON    )    **Civil Action No. 03MDL1570 (RCC)**
    SEPTEMBER 11, 2001    )    Relates to: C.A. No. 03 CV 6978 (RCC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
COMPLAINT BY FEDERAL INSURANCE PLAINTIFFS
AND TO QUASH SERVICE OF PROCESS
OF HIS ROYAL HIGHNESS
PRINCE TURKI AL-FAISAL BIN ABDULAZIZ AL-SAUD**

KELLOGG, HUBER, HANSEN,
    TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

May 10, 2004

# Table Of Contents

Table of Authorities ........................................................................................................ ii

Standard Of Review For A Motion To Dismiss A Foreign Sovereign's Public Official ................2

Statement Of Facts ..........................................................................................................3

Summary Of Argument....................................................................................................8

Argument .......................................................................................................................8

I.      The FSIA Requires Dismissal Of The Claims Against Prince Turki For The
        Official Acts Alleged In The Complaint...................................................................8

        A.      Plaintiffs' Allegations Concern Prince Turki's Official Acts.................................9

        B.      The Allegations Do Not Implicate the "State Sponsors of Terrorism"
                or "Commercial Activities" FSIA Exceptions.......................................10

        C.      The Non-Commercial Torts Exception Does Not Confer Jurisdiction
                over Plaintiffs' Suits .................................................................11

II.     This Court Lacks Personal Jurisdiction Over Prince Turki ..............................16

        A.      No Statute Provides for Personal Jurisdiction over Prince Turki .........................17

        B.      Prince Turki Lacks the Minimum Contacts with the Forum That the
                Constitution Requires.................................................................18

III.    Prince Turki Is Entitled To Diplomatic Immunity..............................................22

Conclusion ....................................................................................................................25

**Table Of Authorities**

Page

**CASES**

Aidi v. Yaron,
    672 F. Supp. 516 (D.D.C. 1987) ......................................................................................24

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989)..............................................................................................9, 13, 16

Asahi Metal Indus. Co. v. Superior Court,
    480 U.S. 102 (1987)..............................................................................................19, 20

Asociacion de Reclamantes v. United Mexican States,
    735 F.2d 1517 (D.C. Cir. 1984) ......................................................................................16

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999)............................................................................................21

Bergman v. De Sieyes,
    170 F.2d 360 (2d Cir. 1948)............................................................................................24

Bersch v. Drexel Firestone, Inc.,
    519 F.2d 974 (2d Cir. 1975)............................................................................................21

Bryks v. Canadian Broad. Corp.,
    906 F. Supp. 204 (S.D.N.Y. 1995)....................................................................................9

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)........................................................................................................20

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003)...........................................1, 2, 8, 11, 12, 13, 14, 15, 20

Calder v. Jones,
    465 U.S. 783 (1984)........................................................................................................19

Carbone v. Carbone,
    123 Misc. 656, 206 N.Y.S. 40 (Sup. Ct. 1924)................................................................23

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993).............................................................................................3

Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,
    230 F.3d 934 (7th Cir. 2000) ..........................................................................................22

ii

Chuidian v. Philippine Nat'l Bank,
    912 F.2d 1095 (9th Cir. 1990) .................................................................9, 10

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) ........................................................................9

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998).........................................................................3

First Am. Corp. v. Sheikh Zayed Bin Sultan Al-Nahyan,
    948 F. Supp. 1107 (D.D.C. 1996) ..............................................................10

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) .....................................................................3

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981)........................................................................17

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)....................................................................................19

Herbage v. Meese,
    747 F. Supp. 60 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991) ..........10

Holbrook v. Henderson,
    4 Sandf. 620, 6 N.Y. Super. Ct. 619 (N.Y. 1839) ............................................23

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)....................................................................................19

Jazini by Jazini v. Nissan Motor Co.,
    148 F.3d 181 (2d Cir. 1998)........................................................................22

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997) ....................................................................9

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984)....................................................................................20

Kulko v. Superior Court,
    436 U.S. 84 (1978)......................................................................................19

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999)........................................................................18

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972)............................................................20

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    507 U.S. 163 (1993)............................................................................2

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975)..............................................................21

Letelier v. Republic of Chile,
    488 F. Supp. 665 (D.D.C. 1980)......................................................15

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)............................................3, 9

Liu v. Republic of China,
    892 F.2d 1419 (9th Cir. 1989) .........................................................15

MacArthur Area Citizens' Ass'n v. Republic of Peru,
    809 F.2d 918 (D.C. Cir. 1987)....................................................13, 15

McGee v. International Life Ins. Co.,
    355 U.S. 220 (1957).........................................................................20

Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    709 F. Supp. 1279 (S.D.N.Y. 1989).................................................18

Monell v. Department of Social Servs.,
    436 U.S. 658 (1978).........................................................................10

Morgan v. International Bank for Reconstruction & Dev.,
    752 F. Supp. 492 (D.D.C. 1990)......................................................15

Nix v. Hoke,
    62 F. Supp. 2d 110 (D.D.C. 1999)...................................................18

Persinger v. Islamic Republic of Iran,
    729 F.2d 835 (D.C. Cir. 1984).........................................................15

Phoenix Consulting, Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000)............................................................3

Price v. Socialist People's Libyan Arab Jamahiriya,
    294 F.3d 82 (D.C. Cir. 2002)...........................................................12

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992)....................................11

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001).........................................................................3

Saudi Arabia v. Nelson, 507 U.S. 349 (1993) ...........................................................11

Stauffacher v. Bennett,
    969 F.2d 455 (7th Cir. 1992) ...................................................................21

Tel-Oren v. Libyan Arab Republic,
    726 F.2d 774 (D.C. Cir. 1984)..................................................................16

United States v. First Nat'l City Bank,
    379 U.S. 378 (1965)..................................................................................20

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
    467 U.S. 797 (1984)..................................................................................14

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)......................................................................3

Whitaker v. American Telecasting, Inc.,
    261 F.3d 196 (2d Cir. 2001)....................................................................16

Wilson v. Blanco,
    4 N.Y.S. 714 (Super. Ct. 1889)................................................................23

## CONSTITUTION, TREATIES, STATUTES, AND RULES

U.S. Const. Amend. V (Due Process Clause) ..............................................................21

Vienna Convention on Diplomatic Relations, done Apr. 18, 1961, United States
    accession, Dec. 13, 1972, 23 U.S.T. 3227, T.I.A.S. No. 7502 ...................22, 23

Antiterrorism Act of 1990, 18 U.S.C. §§ 2331 et seq. ...............................................17

    18 U.S.C. § 2331(5) ................................................................................18

    18 U.S.C. § 2334.....................................................................................18

    18 U.S.C. § 2337.....................................................................................18

Diplomatic Relations Act, 22 U.S.C. § 254d..............................................................22

Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. ....................................................14

    28 U.S.C. § 2680(a) .............................................................................................14

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq. ...............1

    28 U.S.C. § 1330 ................................................................................................16

    28 U.S.C. § 1603(a) ..............................................................................................9

    28 U.S.C. § 1603(b) ..............................................................................................9

    28 U.S.C. § 1604 ..................................................................................................9

    28 U.S.C. § 1605(a)(2)..............................................................................10, 11, 16

    28 U.S.C. § 1605(a)(5).........................................................10, 11, 12, 13, 15, 16

    28 U.S.C. § 1605(a)(5)(A) ...................................................................................14

    28 U.S.C. § 1605(a)(7).............................................................................10, 12, 13

    28 U.S.C. § 1605(a)(7)(A) ...................................................................................10

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. .......17

    18 U.S.C. § 1965(b) ....................................................................................... 17-18

Federal Rules of Civil Procedure:

    Rule 4(k)(2)........................................................................................................18

    Rule 12(b) ............................................................................................................2

    Rule 12(h)(2)........................................................................................................2

    Rule 12(h)(3)........................................................................................................2

N.Y. C.P.L.R.:

    § 302(a)(2) .........................................................................................................17

    § 302(a)(3) .........................................................................................................17

## LEGISLATIVE AND OTHER MATERIALS

ABC News:  Nightline, 2001 WL 21773072 (Dec. 10, 2001)........................................................7

FBI Dispels Theory Of 2 Saudis Intelligence Agents, Wall St. J. Online, Mar. 24, 2004 .............5

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604.........................9, 11, 14, 15

National Comm'n on Terrorist Attacks, Staff Statement No. 5 – Diplomacy (Mar. 23, 2004).......7

Prince Turki Al-Faisal, Allied Against Terrorism, Wash. Post, Sept. 17, 2002, at A21 ................7

His Royal Highness Prince Turki Al-Faisal bin Abdulaziz Al-Saud ("Prince Turki") has been named as a defendant in seven of the lawsuits consolidated in this proceeding.[1]  In the most advanced of those cases, Burnett v. Al Baraka Inv. & Dev. Corp. (D.D.C.), Prince Turki has already been dismissed on the grounds that the Foreign Sovereign Immunities Act ("FSIA") provides him with immunity from suit.[2]  On March 19, 2004, Prince Turki moved to dismiss five of the remaining suits, and the parties are in the process of briefing that motion.[3]  In accordance with the schedule in this Court's memo endorsement filed February 26, 2004 (MDL Docket item #11), Prince Turki hereby moves to dismiss the final complaint brought against him, by Federal Insurance Co., et al. (the "Federal Insurance Plaintiffs"), for want of jurisdiction and to quash service of process on grounds of diplomatic immunity.

There is no material difference among the allegations made against Prince Turki by the Federal Insurance Plaintiffs, the allegations that have already been dismissed in Burnett, and the allegations in the other five suits that are subject to a pending motion to dismiss.  All these suits concern actions that Prince Turki allegedly took in his official capacity as the Director of Saudi Arabia's Department of General Intelligence ("DGI"), also known by its Arabic name, Istakhbarat.  Specifically, Prince Turki and the Istakhbarat are alleged to have provided material support and resources to Osama bin Laden and his Al-Qaeda organization.

---

[1] Burnett v. Al Baraka Inv. & Dev. Corp., C.A. No. 1:02-1616 (D.D.C.); Ashton v. Al Qaeda Islamic Army, C.A. No. 1:02-6977 (S.D.N.Y.); Salvo v. Al Qaeda Islamic Army, C.A. No. 1:03-5071 (S.D.N.Y.); Tremsky v. Osama bin Laden, C.A. No. 1:02-7300 (S.D.N.Y.); Federal Ins. Co. v. Al Qaida, C.A. No. 1:03-6978 (S.D.N.Y.); Burnett v. Al Baraka Inv. & Dev. Corp., C.A. No. 1:03-5738 (S.D.N.Y.); and Barrera v. Al Qaeda Islamic Army, C.A. No. 1:03-7036 (S.D.N.Y.).  Prince Turki has not been and may not be lawfully served with process in any of these suits.  He has chosen, however, to appear voluntarily to object to jurisdiction.

[2] See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003).

[3] Prince Turki actually moved to dismiss six suits, including York v. Al Qaeda Islamic Army, C.A. No. 1:03-5493 (S.D.N.Y.), but York was voluntarily dismissed on March 22, 2004.

Judge Robertson properly dismissed the Burnett complaint against Prince Turki on FSIA grounds. The same result is required here. Prince Turki can no more be haled into court in the United States to answer for his official actions as head of Saudi intelligence than the head of the U.S. Central Intelligence Agency ("CIA") could properly be sued in a foreign tribunal in the Middle East for his official actions.

Prince Turki also has no ties to the United States that would permit the exercise of personal jurisdiction over him. Finally, as the current Saudi Ambassador to the United Kingdom, Prince Turki is entitled to diplomatic immunity in this country under the terms of the Vienna Convention on Diplomatic Relations and well-established precedent in this circuit.[4]

**Standard Of Review For A Motion To Dismiss A Foreign Sovereign's Public Official**

Ordinarily, for purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b), this Court would assume the truth of a complaint's allegations. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Because the complaint contains allegations involving the official acts of a foreign sovereign, however, a different standard of review applies. In resolving immunity claims under the FSIA, a district court must "look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute as to whether" an exception under the FSIA applies.

---

[4] In Burnett, Prince Turki raised objections to the complaint based on sovereign immunity, diplomatic immunity, personal jurisdiction, nonjusticiability, and failure to state a claim on which relief may be granted. Because he dismissed the case on grounds of FSIA immunity, Judge Robertson determined that "[i]t is unnecessary to reach or decide the other arguments advanced by Prince Turki . . . in [his] motion[] to dismiss." 292 F. Supp. 2d at 23. In the present case, Prince Turki again asserts his FSIA and personal jurisdiction defenses and notes his diplomatic immunity. His additional defenses based on justiciability and failure to state a claim are not subject to waiver and hence Prince Turki will reserve those claims. See Fed. R. Civ. P. 12(h)(2), (3). The pleadings on Prince Turki's motion to dismiss in Burnett are available via the D.C. District Court ECF system at items 142, 204, 239, 293, and 311. A copy of Prince Turki's Declaration is attached hereto as Exhibit 1.

Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).[5]  In so doing, a court

must give "great weight to any extrinsic submissions made by the foreign defendants regarding

the scope of their official responsibilities."  Leutwyler v. Office of Her Majesty Queen Rania Al-

Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (internal quotation marks omitted).  Thus,

where a defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has

the burden of going forward with evidence showing that, under exceptions to the FSIA,

immunity should not be granted."  Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d

230, 241 (2d Cir. 2002) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016

(2d Cir. 1993) (emphasis added)); see also Leutwyler, 184 F. Supp. 2d at 287 (once defendant

has proffered evidence of its status as sovereign, plaintiff can "rebut the presumption of

immunity for the foreign defendant by proffering evidence of record that the defendant

undertook certain activities that fall within the scope of several specifically enumerated

exceptions to FSIA immunity").

### Statement Of Facts

Only a handful of paragraphs in the Federal Insurance Plaintiffs' complaint relate in any

way to Prince Turki.  See First Amended Complaint ¶¶ 66, 445-453 (S.D.N.Y. filed Mar. 10,

2004) ("Compl.").  Nothing in the complaint suggests that Prince Turki knew in advance about,

---

[5] See also Robinson, 269 F.3d at 141 (quoting Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[w]hen the defendant has . . . challenged the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss")); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) (error for district court to "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction" in FSIA case); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 448-49 (D.C. Cir. 1990) (holding that, where the "conclusory allegations" in a plaintiff's complaint are challenged by a sovereign defendant, "the district court must do more than just look to the pleadings to ascertain whether to grant the motion to dismiss").

participated in, or approved of the events of September 11, 2001, that caused plaintiff insurance companies' claimed losses.

      **A.**      Plaintiffs allege that Prince Turki "provided material support and resources" (id. ¶¶ 66, 446) or "provided critical financial and logistical support" (id. ¶ 453) to Al-Qaeda. More specifically, plaintiffs allege that the Saudi government "provided massive financial aid and material support to the Taliban" while Prince Turki was the head of the intelligence service. Id. ¶ 447. Plaintiffs try to bolster the connection between the Taliban and Al-Qaeda by asserting that the two organizations "maintained a symbiotic and mutually supportive relationship," id., and that "Prince Turki knew and intended that the support provided to the Taliban by the Kingdom of Saudi Arabia under his direction would materially benefit al Qaida, by virtue of the close relationship and near identity between the two organizations," id. ¶ 448. No connection, however, is drawn between the foreign aid allegedly provided by Saudi Arabia to the government of Afghanistan and the terrorist attacks of September 11.

      Plaintiffs assert that, "[i]n his capacity as the head of the Saudi intelligence service, Prince Turki also arranged a meeting between senior Iraqi intelligence officials and Osama bin Laden, and thereby helped to foster a collaborative relationship between Iraqi intelligence and al Qaida." Id. ¶ 450. Again, however, no connection is drawn between this alleged meeting and the terrorist attacks of September 11.

      The complaint mentions two persons – Nabil Kosaibati and Omar Al-Bayoumi – who were allegedly associated both with the Saudi intelligence service and with Al-Qaeda during the period in which Prince Turki was head of the intelligence service. Id. ¶ 449. The complaint does not, however, claim that Prince Turki directed either of these men to take any action, nor does it allege that either of them was directly involved in the September 11 attacks. Kosaibati was

allegedly convicted of terrorist activities in Yemen.  Al-Bayoumi – who the FBI has recently determined was neither an agent of Saudi intelligence nor in any way connected with the September 11 attacks (see Exhibit 2, attached hereto) – is not alleged to have had any knowledge of or to have participated in those attacks.

Plaintiffs allege that "Prince Turki has coordinated the sponsorship of al Qaida by several wealthy members of Saudi society."  Compl. ¶ 451.

Finally, plaintiffs allege that "Prince Turki has made significant personal contributions to Saudi-based charities that he knew to be sponsors of al Qaida's global operations as well, including IIRO, MWL, WAMY, BIF, the Saudi High Commission, SJRC and al Haramain, among others," id., and that, "[a]t all times material hereto, Prince Turki knew and intended that the contributions he made to IIRO, WAMY, MWL, Sanabel al-Kheer and al Haramain Foundation would be used to fund al Qaida's global operations and acts of international terrorism," id. ¶ 452.  In other words, it is claimed that, at some unspecified time, Prince Turki gave money to various different charities, which in turn gave money to Al-Qaeda, which in turn sponsored terrorism around the world.

Taken together, plaintiffs' allegations do not even come close to suggesting that Prince Turki knew of, much less intended to assist, the planned terrorist attacks on the United States that are the subject of the complaint, or that he took any affirmative steps to facilitate those attacks. No nexus has been alleged between Prince Turki and plaintiffs' insurance losses.  In any event, the allegations are pure fabrication.

B.      In support of his defense of FSIA immunity, Prince Turki submitted a Declaration

to the Court in <u>Burnett</u>.  <u>See</u> Exhibit 1.[6]  Despite being given repeated opportunities to do so, the

plaintiffs in <u>Burnett</u> never presented any facts or other evidence to the Court disputing any of the

statements in Prince Turki's Declaration.  Accordingly, those statements were conclusive for

purposes of the FSIA inquiry.  <u>See</u> pp. 2-3, <u>supra</u>.

In his Declaration, Prince Turki emphatically denied that he "in any way encouraged,

funded, or provided any form of material or other assistance – direct or indirect – to enable

Osama bin Laden and his Al-Qaeda network of terrorists to perpetrate [the September 11]

attacks."  Decl. ¶ 4.  He also denied that he in any way transferred funds, or facilitated the

transfer of funds by others, to " 'Osama bin Laden's network of charities, foundations, and other

funding sources.' "  <u>Id.</u> ¶ 14 (quoting Third Amended Complaint ¶ 350, <u>Burnett v. Al Baraka Inv.</u>

<u>& Dev. Corp.</u>, C.A. No. 1:02-1616 (D.D.C. filed Nov. 22, 2002)).

Prince Turki explained that he served as Director of the DGI from September 1977 until

August 2001.  <u>Id.</u> ¶ 5.  In that capacity, he was actively involved in Saudi Arabia's efforts to

combat international terrorism generally and the threat posed by Osama bin Laden and Al-Qaeda

in particular.  In so doing, he shared information and cooperated closely with other intelligence

agencies, including the CIA.  <u>Id.</u> ¶ 6.  All his interactions with bin Laden, Al-Qaeda, and the

Taliban were in his official capacity as Director of the DGI.  <u>Id.</u> ¶ 5.

In the summer of 1998, Prince Turki traveled twice to Kandahar in order to obtain bin

Laden's extradition from Afghanistan to Saudi Arabia for trial.  <u>Id.</u> ¶¶ 11-12.  In an interview

with ABC News, bin Laden himself said that Prince Turki came to have him arrested,

---

[6] Long before the current suits were filed, Prince Turki described most of the events
detailed in his Declaration in a speech to the Center for Contemporary Arab Studies at
Georgetown University on February 3, 2002.  That speech is attached hereto as Exhibit 3.

condemned Prince Turki as a tool of the American government, and boasted that Prince Turki "returned empty-handed."[7]  When the Taliban ultimately refused to extradite bin Laden, Prince Turki recommended that Saudi Arabia suspend diplomatic relations with the Taliban government, which Saudi Arabia did in September 1998.  Id. ¶ 13.[8]

Prince Turki has unequivocally condemned bin Laden and the attacks:  "For me, [September 11] was an especially calamitous event, as I had devoted all of my working life to combating such crimes.  It also brought back the pain and outrage I felt when my father, the late King Faisal, was killed in a terrorist attack."  Prince Turki Al-Faisal, Allied Against Terrorism, Wash. Post, Sept. 17, 2002, at A21 (attached hereto as Exhibit 6).

Prince Turki currently serves as the Ambassador of Saudi Arabia to the United Kingdom.  Decl. ¶ 19 & Attachment A (Letter from U.K. Foreign & Commonwealth Office confirming diplomatic status).  His duties as Ambassador oblige him to reside in London.  His domicile is and always has been Saudi Arabia.  Id. ¶ 21.  Prince Turki owns no property and conducts no business in the United States.  He has not lived in this country since 1967, when he attended college here.  In the course of his official duties for the DGI, he traveled to Washington, D.C., to confer with U.S. officials on intelligence and diplomatic matters.  He has also made occasional trips to the United States for medical reasons and on holiday.  Id. ¶ 20.

---

[7] In an interview with John Miller of ABC News, "bin Laden told ABC News he had heard of Turki's secret mission" to arrest him.  Bin Laden stated:  "He returned empty-handed.  He looked ashamed, as if he had come at the request of the American government.  It's none of the business of the Saudi regime to come and ask for handing over Osama bin Laden."  ABC News:  Nightline, 2001 WL 21773072 (Dec. 10, 2001).  A full transcript of the program is attached hereto as Exhibit 4.

[8] Prince Turki's account of these events has recently been confirmed by the staff of the September 11 Commission.  See Staff Statement No. 5, at 8-9 (attached hereto as Exhibit 5).

**Summary Of Argument**

**I.**      Prince Turki is immune from suit under the FSIA for his alleged acts as head of Saudi intelligence.  His official actions represent the sovereign acts of the Kingdom of Saudi Arabia, and no exception to the FSIA allows this suit to proceed against him.

**II.**      The Federal Insurance Plaintiffs allege that, in addition to his official acts, Prince Turki made personal contributions to certain Saudi-based charities that he supposedly knew to be sponsors of Al-Qaeda.  When similar allegations were made against Prince Sultan bin Abdulaziz Al-Saud in the Burnett case, Judge Robertson correctly dismissed the claims for want of personal jurisdiction because such allegations, even if true, fall far short of alleging that the Prince's actions were expressly aimed or purposefully directed at the United States, as required by controlling Supreme Court precedents.  The Federal Insurance Plaintiffs' claims against Prince Turki fail for precisely the same reason.  Prince Turki lacks the minimum contacts with New York and the United States that are necessary to enable this Court to exercise personal jurisdiction over him.

**III.**      As Saudi Arabia's current Ambassador to the United Kingdom, Prince Turki is also entitled to diplomatic immunity, which must be honored to quash any official service of process against Prince Turki and thereby prevent plaintiffs from subjecting him to the burdens of discovery and defense of suit during his diplomatic service.

**Argument**

**I.      The FSIA Requires Dismissal Of The Claims Against Prince Turki For The Official Acts Alleged In The Complaint**

Judge Robertson's FSIA ruling in Burnett constitutes law of the case, and there is no reason to depart from it in this case.  That decision, moreover, is unquestionably correct.

8

A.        **Plaintiffs' Allegations Concern Prince Turki's Official Acts**

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts."  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  It prescribes "when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and . . . when a foreign state is entitled to sovereign immunity." H.R. Rep. No. 94-1487, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6604.  The FSIA provides a general grant of immunity to "foreign states":

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act a foreign state shall be immune from the
> jurisdiction of the courts of the United States and of the States except as provided
> in sections 1605 to 1607 of this chapter.  28 U.S.C. § 1604.

The Act defines the term "foreign state" to include a "political subdivision of a foreign state or an agency or instrumentality of a foreign state."  Id. § 1603(a).  Courts have expressly recognized that "[a]n individual can qualify as an 'agency or instrumentality of a foreign state' " for FSIA purposes.  El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (quoting 28 U.S.C. § 1603(b); citing Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990) (finding Philippine government official entitled to immunity under FSIA)); Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027 (D.C. Cir. 1997) (individuals acting in official capacity are considered "agencies or instrumentalities of a foreign state"); Leutwyler, 184 F. Supp. 2d at 286-87 ("it has been generally recognized that individuals employed by a foreign state's agencies or instrumentalities are deemed 'foreign states' [under the FSIA] when they are sued for actions undertaken within the scope of their official capacities") (citing Bryks v. Canadian Broad. Corp., 906 F. Supp. 204, 210 (S.D.N.Y. 1995)).  The rationale for that principle stems from the common-sense recognition that "a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly."

Chuidian, 912 F.2d at 1101-02 (citing, inter alia, Monell v. Department of Social Servs., 436 U.S. 658, 690 n.55 (1978)).  FSIA immunity thus is not based on the identity of the defendant so much as the "nature of the act for which the person or entity is claiming immunity."  First Am. Corp. v. Sheikh Zayed Bin Sultan Al-Nahyan, 948 F. Supp. 1107, 1120 (D.D.C. 1996) (quoting Herbage v. Meese, 747 F. Supp. 60, 66 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991)).

Plaintiffs acknowledge that Prince Turki was head of the DGI from 1977 until 2001. Compl. ¶ 445.  Prince Turki has stated that all of his dealings with Al-Qaeda and the Taliban were in his official capacity.  See Decl. ¶ 5.  With the exception of Prince Turki's alleged charitable contributions, all of the allegations pertaining to Prince Turki relate to acts that he is alleged to have taken in his official capacity.  See id. ¶¶ 445-450.  Prince Turki is therefore immune from suit for these acts unless the claims against him fall within one of the exceptions to FSIA immunity.

### B.    The Allegations Do Not Implicate the "State Sponsors of Terrorism" or "Commercial Activities" FSIA Exceptions

The complaint recognizes the FSIA's applicability, but purports to base jurisdiction on three exceptions:  state sponsors of terrorism, 28 U.S.C. § 1605(a)(7); commercial activities, id. § 1605(a)(2); and non-commercial torts committed in the United States, id. § 1605(a)(5).  See Compl. ¶ 68.  Those exceptions do not apply to the allegations against Prince Turki.  The first exception – which exempts from sovereign immunity a defendant who, among other things, is alleged to provide "material support or resources" to terrorists – does not apply because Saudi Arabia has not been designated by the Department of State as a state sponsor of terrorism, which is a prerequisite for the § 1605(a)(7)(A) exception.  The complaint concedes this point by omission in reciting in other paragraphs that Iran, Iraq, Sudan, and Syria have been so designated. See Compl. ¶¶ 55, 57, 59, 61. Cf. id. ¶ 63.

10

As for the "commercial activity" exception, the Supreme Court has instructed that the applicability of the exception depends on "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce."  Saudi Arabia v. Nelson, 507 U.S. 349, 360-61 (1993) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)) (internal quotation marks omitted).  Saudi Arabia's alleged aid to the Taliban, if it had occurred, would not constitute "commercial activity" for FSIA purposes:  the legislative history of the FSIA makes clear that "a foreign state's mere participation in a foreign assistance program . . . is an activity whose essential nature is public or governmental, and it would not itself constitute a commercial activity."  H.R. Rep. No. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. at 6615.  To the extent plaintiffs allege charitable contributions (or the coordinating of charitable contributions) by Prince Turki in his official capacity, Judge Robertson correctly held that "[t]he act of contributing to a foundation is not within our ordinary understanding of 'trade and traffic or commerce.' "  Burnett, 292 F. Supp. 2d at 18.  Simply put, the complaint nowhere alleges that Prince Turki's official acts were of a type by which a private party engages in trade and traffic or commerce; therefore, the exception to immunity in § 1605(a)(2) does not apply.

### C.    The Non-Commercial Torts Exception Does Not Confer Jurisdiction over Plaintiffs' Suit

The non-commercial torts exception permits, with certain exceptions, actions "in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5).  That exception does not apply here for four reasons.

11

First, as Judge Robertson recognized, the allegations against Prince Turki (and Prince Sultan) "amount to claims that Prince Turki and Prince Sultan, acting in their official capacities, funded or provided material resources to those who funded or provided material resources to the terrorists who perpetrated the September 11th attacks."  292 F. Supp. 2d at 19.  Such claims must be brought, not under § 1605(a)(5), but under § 1605(a)(7), which expressly covers allegations of "the provision of material support or resources" for terrorist actions.  28 U.S.C. § 1605(a)(7). Section 1605(a)(7) requires that, for immunity to be denied to a foreign state or official of a foreign state, the State Department must determine whether that state is sponsoring terrorism through "material support or resources" in the conduct of a terrorist act.  By suing under § 1605(a)(5), plaintiffs are simply attempting an end run around this requirement.

Congress made a deliberate legislative choice to confer on the State Department the important role of designating state sponsors of terrorism to avoid the potential clash of judicial findings about a state's involvement in terrorism with decisions of the Executive Branch, which is entrusted to conduct the foreign affairs of the Nation.  If plaintiffs cannot sue Saudi Arabia for allegedly aiding terrorist acts – because Saudi Arabia is not on the State Department's list of state sponsors of terrorism – then they cannot sue its top government officials under that same theory, simply by citing § 1605(a)(5) instead of § 1605(a)(7).  To hold otherwise would render § 1605(a)(7) meaningless and launch suits that Congress sought to prevent against foreign states that have not been designated sponsors of terrorism.  See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 88 (D.C. Cir. 2002) (holding that original FSIA did not encompass claims of state-sponsored terrorism because that was considered an "immunized form[] of state activity").  See also id. (the amendments added a "new class of claims for which

certain foreign states would be precluded from asserting sovereign immunity" that included when a state provides "material support or resources" for terrorists, 28 U.S.C. § 1605(a)(7)).

In granting Prince Turki's motion to dismiss in <u>Burnett</u>, Judge Robertson expressly adopted that reasoning.  He concluded that the omission of the "provision of material support" as an act giving rise to liability under § 1605(a)(5) "should be treated as intentional" by Congress. 292 F. Supp. 2d at 20 (internal quotation marks omitted).  Accordingly, because the FSIA exception that specifically addresses the "provision of material support" – § 1605(a)(7) – does not apply here because the State Department has not designated Saudi Arabia as a state sponsor of terrorism, plaintiffs cannot evade that Executive Branch determination by invoking § 1605(a)(5). <u>See</u> 292 F. Supp. 2d at 20 n.5.

<u>Second</u>, plaintiffs' claims – concerning alleged official support by the Saudi government of the Taliban and other groups – fall far afield of Congress's primary purpose in enacting the non-commercial torts exception, which was to treat foreign sovereigns like other employers with respect to <u>respondeat superior</u> liability for injuries caused by their employees acting within the scope of their employment.  Congress thus sought "to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." <u>Amerada Hess</u>, 488 U.S. at 439-40.  The complaint does not allege the types of routine tort or <u>respondeat superior</u> claims the exception was intended to address.

As Judge Robertson agreed in <u>Burnett</u>, " 'the legislative history [of the FSIA] counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law.' " 292 F. Supp. 2d at 19 (quoting <u>MacArthur Area Citizens' Ass'n v. Republic of Peru</u>, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Here, plaintiffs allege a novel and attenuated theory of causation in an attempt to hold foreign government officials responsible for the actions of

13

terrorists in the United States.  This theory extends far beyond any conceivable purpose for the exception as designed by Congress.  As Judge Robertson concluded in dismissing the claims against Prince Turki and Prince Sultan, "[i]n the FSIA context, plaintiffs' allegations that (i) Prince Turki or Prince Sultan funded (ii) those who funded (iii) those who carried out the September 11 attacks would stretch the causation requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita."  Id. at 20.

Third, the non-commercial torts exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  The FSIA's discretionary function exception is modeled on a similar exception to jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  See H.R. Rep. No. 94-1487, at 20-21, reprinted in 1976 U.S.C.C.A.N. at 6619-20.  The purpose of both exceptions is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984) (construing FTCA).

As Judge Robertson concluded, plaintiffs' allegations against Prince Turki (and Prince Sultan) involve purely "official acts . . . squarely covered by the 'discretionary function' language of subsection A."  Burnett, 292 F. Supp. 2d at 20.  "Prince Turki, as director of intelligence, taking acts to protect Saudi Arabia from terrorism . . . [was] clearly making 'decisions grounded in social, economic, and political policy.' "  Id. at 20-21 (quoting Varig Airlines, 467 U.S. at 814).  The official acts Prince Turki is alleged to have committed all occurred in the exercise of his discretion in carrying out the foreign intelligence and international

security policies of Saudi Arabia.  Under the FSIA, those policies are not subject to attack

through a tort suit, any more than the official actions of the CIA Director could be attacked

through an FTCA tort suit.  See, e.g., MacArthur Area Citizens Ass'n, 809 F.2d at 923 (finding

immunity based on exercise of discretionary function); Morgan v. International Bank for

Reconstruction & Dev., 752 F. Supp. 492, 495 (D.D.C. 1990) (same).

In Burnett, plaintiffs invoked Letelier v. Republic of Chile, 488 F. Supp. 665, 673

(D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), to argue that

terrorist acts can never be considered "discretionary."  But the relevant question is whether the

acts of the official in question were discretionary.  As Judge Robertson correctly noted, those

cases "involved causal links significantly shorter and more direct than those alleged here:  in

Letelier, the foreign sovereign and sovereign officeholders were alleged to have 'caused or

aided' in the assassinations; in Liu, the foreign state was held vicariously liable for the actions of

its employee, criminal acts of a rather different character and order."  292 F. Supp. 2d at 21.  The

assassins in Letelier and Liu were thus agents of the foreign government.  No claim has been

made here that the September 11 hijackers were in any respect agents of Prince Turki or the

government of Saudi Arabia.

Fourth, for § 1605(a)(5) to apply, the tortious act itself, and not merely the injury caused

by it, must occur in the United States.  See, e.g., Persinger v. Islamic Republic of Iran, 729 F.2d

835, 842 (D.C. Cir. 1984); see also H.R. Rep. No. 94-1487, at 7, 20-21, reprinted in 1976

U.S.C.C.A.N. at 6605, 6619 ("the tortious act or omission must occur within the jurisdiction of

the United States").  Prince Turki is not even alleged to have been in the United States, much less

to have committed any tortious act in this country.  Nor can Prince Turki have aided and abetted

(from outside the United States) tortious acts that occurred within the United States; such a

contention would fail as a matter of law.  The "entire tort" for which the defendant is to be held

responsible must occur in the United States.  Asociacion de Reclamantes v. United Mexican

States, 735 F.2d 1517, 1524-25 (D.C. Cir. 1984).  Effect in the United States is not enough.  Id.

at 1524 (comparing § 1605(a)(5) with § 1605(a)(2)'s language concerning acts "outside the

territory of the United States in connection with a commercial activity of the foreign state

elsewhere and that act causes a direct effect in the United States").[9]  None of the acts by Prince

Turki mentioned in the complaint is alleged to have occurred in the United States.  The non-

commercial torts exception, therefore, simply does not apply.

Because the statutory exceptions to sovereign immunity do not apply, to the extent that

plaintiffs' allegations against Prince Turki involve his actions as head of the DGI, this Court

must dismiss for lack of jurisdiction under the FSIA.  See 28 U.S.C. § 1330.

## II.       This Court Lacks Personal Jurisdiction Over Prince Turki

Plaintiffs cannot meet their burden of making a prima facie showing of facts sufficient to

support this Court's exercise of personal jurisdiction over Prince Turki.  See, e.g., Whitaker v.

American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).  No statute provides a basis for

---

[9] Judge Robertson rejected this argument, but in doing so made no effort to distinguish Amerada Hess or Asociacion de Reclamantes.  Instead, he relied on a concurring opinion by Judge Edwards in a case that pre-dated Asociacion de Reclamantes, Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 775 (D.C. Cir. 1984).  But that reference to Tel-Oren is inapposite. Judge Edwards nowhere addressed the "entire tort" principle of § 1605(a)(5) as later explicated in Asociacion de Reclamantes.  Rather, he made the unexceptional statement that the FSIA barred Libya from suit because the injuries and death at issue in that case occurred abroad.  See 726 F.2d at 775 n.1.  But that statement fails to address the issue here – whether alleged acts committed abroad can be deemed to be part of a tort that causes injury here in the United States. Likewise, Judge Robertson's citation of Letelier is misplaced, because (1) Letelier pre-dated and was authoritatively superseded on this point by Asociacion de Reclamantes; (2) the Letelier court did not address the argument made here, see 488 F. Supp. at 672-73; and (3) the only "act" alleged to have been committed abroad was an alleged governmental decision to carry out the assassination, and no evidence was presented that that decision was in fact made in Chile (as opposed to in the United States by a Chilean government official).

exercising jurisdiction over Prince Turki, and he lacks the minimum contacts with New York

(and the United States) necessary to meet due process standards for personal jurisdiction.

### A.     No Statute Provides for Personal Jurisdiction over Prince Turki

The New York long-arm statute does not permit the exercise of personal jurisdiction over

Prince Turki.  The only even arguably applicable provisions of that statute require that the

defendant or his agents committed a tortious act in New York, C.P.L.R. § 302(a)(2), or a tortious

act outside New York causing injury to person or property in New York, id. § 302(a)(3).  Actions

outside New York will give rise to jurisdiction, however, only if the defendant either

> (i) regularly does or solicits business, or engages in any other persistent course of
> conduct, or derives substantial revenue from goods used or consumed or services
> rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state
> and derives substantial revenue from interstate or international commerce.

Plaintiffs have not alleged facts to come within those provisions.  They do not allege that the

September 11 hijackers were agents of Prince Turki,[10] that Prince Turki engages in any persistent

course of conduct in New York, or that Prince Turki either should have reasonably expected his

acts to have consequences in this state or personally derives substantial revenue from interstate

or international commerce.

The nationwide service of process provisions of the Racketeer Influenced and Corrupt

Organizations Act ("RICO") and the Antiterrorism Act of 1990 ("ATA") do not directly confer

jurisdiction because Prince Turki was not served with process in the United States.  See 18

---

[10] The Second Circuit has held that, "before an agency relationship will be held to exist
under section 302(a)(2), a showing must be made that the alleged agent acted in New York for
the benefit of, with the knowledge and consent of, and under some control by, the nonresident
principal."  Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981).  With regard to the
September 11 attacks, plaintiffs have not alleged the requisite benefit to, knowledge or consent
of, and control by Prince Turki, nor could plaintiffs responsibly do so.

U.S.C. §§ 1965(b), 2334; see also, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1285 (S.D.N.Y. 1989) (holding that RICO does not provide for international service).  Nor can either of those provisions confer jurisdiction indirectly, through Federal Rule of Civil Procedure 4(k)(2),[11] because plaintiffs have failed to state a claim against Prince Turki under either federal statute.[12]  Upon dismissal of these claims, plaintiffs will have no statutory claim providing for nationwide service of process and no basis for claiming jurisdiction over Prince Turki based on his contacts with the United States as a whole, rather than his contacts with New York in particular.  See, e.g., Nix v. Hoke, 62 F. Supp. 2d 110, 115 (D.D.C. 1999) (where RICO claim is dismissed, nationwide service of process provision is inapplicable).  In any event, even looking at Prince Turki's contacts with the United States as a whole, it is clear that the Court lacks personal jurisdiction over him.

### B.  Prince Turki Lacks the Minimum Contacts with the Forum That the Constitution Requires

Even if the applicable statutes provided for personal jurisdiction, the Due Process Clause limits this Court's authority to assert personal jurisdiction over Prince Turki.  Plaintiffs cannot show sufficient minimum contacts between Prince Turki and this forum (or the U.S. as a whole) so that the exercise of personal jurisdiction over him would not "offend traditional notions of fair

---

[11] Rule 4(k)(2) provides that, "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state."

[12] The Federal Insurance Plaintiffs' lack standing to bring a RICO claim to the extent that their injuries are indirect, i.e., derived from the claims of their insureds.  See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 239 (2d Cir. 1999).  Plaintiffs' ATA claims fail because that Act does not apply to acts of foreign government officials, see 18 U.S.C. § 2337, or to acts of domestic terrorism such as the attacks of September 11, see id. § 2331(5).

play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

(internal quotation marks and citation omitted); Calder v. Jones, 465 U.S. 783, 788 (1984).

Prince Turki "own[s] no property, conduct[s] no business, and hold[s] no bank accounts

in the United States."  Decl. ¶ 20.  His only non-official contacts with the United States are an

occasional trip "over the years for medical reasons or on holiday."  Id.  These sporadic contacts

have nothing to do with plaintiffs' purported causes of action and thus cannot form a basis for

personal jurisdiction.  Kulko v. Superior Court, 436 U.S. 84, 93-94 (1978) (holding temporary

visits to forum insufficient bases for personal jurisdiction over unrelated action).[13]

Nor do Prince Turki's actions abroad suffice to create the necessary contacts with New

York or the United States.  Plaintiffs must establish that Prince Turki had a "substantial

connection" with the forum state, as demonstrated by "an action of the defendant purposefully

directed toward the forum State."  Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112

(1987) (plurality op.) (emphasis added).  Even if it were true that Prince Turki somehow made

donations to Saudi charities that, in turn, made payments to Al-Qaeda, it would not follow that

Prince Turki "purposefully directed" any of his actions toward the United States, much less

toward New York.  Id.  Just as "[t]he placement of a product into the stream of commerce,

without more, is not an act of the defendant purposefully directed toward the forum State," id.,

so, too, an alleged contribution (in an unspecified way, at an unspecified time) to a foreign

_____

[13] Depending on the nature and extent of a foreign defendant's contacts with the forum, a
federal court may obtain either specific or general jurisdiction over him.  Only specific
jurisdiction is at issue here (i.e., the suit arises out of or is related to the defendant's contacts with
the forum).  The complaint does not allege that Prince Turki has the substantial, continuous, and
systematic contacts with this forum necessary for him to be subject to the general jurisdiction of
this Court, for matters unrelated to his contacts with the forum, see Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 413-15 & n.9 (1984).  In any event, Prince Turki's
Declaration makes clear that he does not have such contacts.  Decl. ¶ 20.

19

charity that allegedly used the contributions "to fund al Qaida's global operations and acts of international terrorism," Compl. ¶ 452, is not an act that is purposefully directed toward the forum State.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) ("foreseeability" of injury in the forum state "is not a sufficient benchmark for exercising personal jurisdiction") (internal quotation marks omitted).

"'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" Asahi, 480 U.S. at 115 (plurality op.) (quoting United States v. First Nat'l City Bank, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)); see also Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) (Friendly, J.) (principles of extraterritorial exercise of personal jurisdiction "must be applied with caution, particularly in an international context").  Furthermore, by requiring that "contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," the Constitution ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Burger King, 471 U.S. at 475 (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957), and Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

Applying these principles, Judge Robertson ruled in Burnett that, notwithstanding allegations that Prince Sultan "personally donated money to [certain charities], knowing that those foundations funded terrorist organizations including Al Qaeda," the complaint "stops well short of alleging that Prince Sultan's actions were 'expressly aimed' or 'purposefully directed' at the United States."  Burnett, 292 F. Supp. 2d at 22-23.  Judge Robertson therefore dismissed these personal activity claims for lack of personal jurisdiction.  The Federal Insurance Plaintiffs have now made allegations against Prince Turki that are strikingly similar to those made against

20

Prince Sultan in <u>Burnett</u>, <u>see</u> Compl. ¶¶ 451-452, and these new allegations fail for the same reason.  Absent any act by Prince Turki that was expressly aimed or purposefully directed at the United States (let alone New York), the Due Process Clause prevents this Court from exercising personal jurisdiction over him.

Plaintiffs cannot fill this gap in their complaint with a conclusory allegation of conspiracy or aiding and abetting.  "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough." <u>Stauffacher v. Bennett</u>, 969 F.2d 455, 460 (7th Cir. 1992) (Posner, J.).  "Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums."  <u>Id.</u>  <u>See also</u> <u>Lehigh Valley Indus., Inc. v. Birenbaum</u>, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[t]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction"); <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 793 (2d Cir. 1999) (holding that conclusory statements about defendant's role in conspiracy were insufficient to establish jurisdiction on conspiracy theory).  Even when it can be shown that a defendant's acts outside the United States have "some causal relation to the alleged injuries" within the United States, "the test for in personam jurisdiction is somewhat more demanding" and requires at least that any injury be a "direct and foreseeable result of the conduct outside the territory."  <u>Bersch v. Drexel Firestone, Inc.</u>, 519 F.2d 974, 1000 (2d Cir. 1975) (Friendly, J.) (internal quotation marks omitted).  Plaintiffs have utterly failed to allege facts suggesting that the September 11 attacks were in any way the direct and foreseeable result of any act by Prince Turki.  This Court therefore cannot properly exercise personal jurisdiction over Prince Turki.

Finally, plaintiffs' failure to allege <u>any</u> factual basis for personal jurisdiction also precludes them from obtaining jurisdictional discovery.  <u>See</u> <u>Jazini by Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 185-86 (2d Cir. 1998) (plaintiffs must allege facts establishing <u>prima facie</u> showing of personal jurisdiction before getting jurisdictional discovery); <u>Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 946 (7th Cir. 2000) ("plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted").

**III.      Prince Turki Is Entitled To Diplomatic Immunity**

Even if this Court could properly assert personal jurisdiction over Prince Turki, the present lawsuit would be subject to dismissal because, since January 28, 2003, Prince Turki has served as the Saudi Ambassador to the United Kingdom.  At the time of his appointment, Prince Turki had not been served with any of the complaints in this consolidated action.  Proof of Prince Turki's diplomatic status is attached hereto.  <u>See</u> Decl. Attach. A.  As a diplomat, Prince Turki is entitled to diplomatic immunity pursuant to well-established principles of international law and the Vienna Convention on Diplomatic Relations, <u>done</u> Apr. 18, 1961, <u>United States accession</u>, Dec. 13, 1972, 23 U.S.T. 3227, T.I.A.S. No. 7502 (the "Vienna Convention").  As codified in United States law, "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, shall be dismissed."  22 U.S.C. § 254d.  Article 31.1 of the Vienna Convention provides that diplomatic agents enjoy comprehensive immunity from civil jurisdiction in their respective receiving states, subject to narrow exceptions not applicable here

(e.g., actions involving real estate).  Vienna Convention at 14.  Article 39.2 provides that immunity extends to a diplomatic agent throughout the course of his or her service.  Id. at 19.

The fact that Prince Turki is a diplomat in a country other than the United States does not affect his immunity from plaintiffs' lawsuits.  Under Article 40.1 of the Vienna Convention, "[i]f a diplomatic agent passes through or is in the territory of a third State . . . while proceeding to take up or to return to his post, or when returning to his own country, the third State shall accord him inviolability and such other immunities as may be required to ensure his transit or return."  Id. at 20.  Here, plaintiffs do not even have the excuse that Prince Turki is "in the territory" of, or "pass[ing] through," the United States.  They are trying to use service of process to compel him to come here from the country to which he is posted.  But New York courts have long applied principles of international law to deny process to be served against third-country diplomats against whom process is attempted while in the United States.[14]  Had Prince Turki traveled to the United States and been personally served with the complaint, therefore, Article 40 would have ensured his immunity from such service.  Instead, Prince Turki appeared voluntarily to assert his diplomatic immunity.  The end result is the same – this Court may not exercise jurisdiction over him.

The rationale for protecting foreign diplomats, even those posted to other countries, from suits in the United States has long been understood by the federal courts.  As the Second Circuit has explained, the need for immunity in countries other than the one where the diplomat is

---

[14] See, e.g., Wilson v. Blanco, 4 N.Y.S. 714, 714 (Super. Ct. 1889) (holding that Venezuelan envoy to France could not be served with civil summons while in New York because of diplomatic immunity recognized by international law); Holbrook v. Henderson, 4 Sandf. 620, 6 N.Y. Super. Ct. 619 (N.Y. 1839) (Ambassador from Republic of Texas entitled to immunity from process while in transit in New York on return from mission to France); Carbone v. Carbone, 123 Misc. 656, 656-57, 206 N.Y.S. 40, 41 (Sup. Ct. 1924) (quashing summons on Panamanian attaché to Italy for divorce proceeding filed in New York).

posted is, if anything, greater than in the receiving country itself.  Bergman v. De Sieyes, 170

F.2d 360, 362-63 (2d Cir. 1948) (L. Hand, J.).  In quashing service of process in New York on a

diplomat accredited by France to Bolivia, the Bergman court noted that two main concerns

underlie diplomatic immunity:  "[1] the indignity to the sovereign from the arrest of his

representative, or even from subjecting him to suit; and [2] the interference with his duties which

either arrest or service entails."  Id. at 362.

　　　　Plaintiffs' suit against Prince Turki presents both concerns.  Attempting to use U.S.

process on the Saudi Ambassador to the United Kingdom to compel his attendance in a U.S.

court undermines the dignity of Saudi Arabia and interferes with its ability to conduct its foreign

relations through its chosen diplomatic personnel.  See id.  Plaintiffs command the Saudi

Ambassador to appear and defend in a series of massive lawsuits 3,000 miles and across an

ocean from his diplomatic post.  As Bergman recognized, suit in a third country "will ordinarily

more interfere with the discharge of [the diplomat's] duties . . . than . . . one pending in the state

of his post."  Id. at 363.  For those reasons, this Court should quash service of process on Prince

Turki and dismiss all claims against him.  See Aidi v. Yaron, 672 F. Supp. 516, 517 (D.D.C.

1987) (granting motion to quash process based on diplomatic immunity because, "if jurisdiction

is not available, then service of process is void, making a motion to quash service of process a

valid remedy").

**Conclusion**

For the foregoing reasons, the Federal Insurance Plaintiffs' complaint against Prince

Turki should be dismissed in its entirety.

Respectfully submitted,

KELLOGG, HUBER, HANSEN,
    TODD & EVANS, P.L.L.C.

By: /s/_____
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

May 10, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 10th day of May 2004, I caused copies of the foregoing

<u>Memorandum of Law in Support of Motion To Dismiss Complaint by Federal Insurance</u>

<u>Plaintiffs and To Quash Service of Process of His Royal Highness Prince Turki Al-Faisal bin</u>

<u>Abdulaziz Al-Saud</u> to be served electronically pursuant to the Court's ECF system and by United

States first-class mail on any parties not participating in the Court's ECF system as thereafter

advised by the Court.


/s/ _____

Kelly J. Thompson