— PROVIDED BY —
FindLaw
WWW.FINDLAW.COM

1 | THOMAS E. MOSS
UNITED STATES ATTORNEY
2 | KIM R. LINDQUIST
ASSISTANT UNITED STATES ATTORNEY.
3 | TERRY L. DERDEN
FIRST ASSISTANT UNITED STATES ATTORNEY
4 | and CRIMINAL CHIEF
DISTRICT OF IDAHO
5 | WELLS FARGO BUILDING
877 WEST MAIN STREET, SUITE 201
6 | BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
7 | MAILING ADDRESS:
BOX 32
8 | BOISE, IDAHO 83707

9

10

11

12

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

13 | UNITED STATES OF AMERICA,                    )   Cr. No. CR-03  048-N EJL
                                                  )
14 |            Plaintiff,                         )   INDICTMENT
                                                  )
15 | vs.                                           )   (Vio. 18 U.S.C. 1546(a); 1001(a)(1) and
                                                  )       (2), 3237 and 3238)
16 | SAMI OMAR AL-HUSSAYEN,                        )
                                                  )
17 |            Defendant.                         )

18

19 | THE GRAND JURY CHARGES:

20

21 | At all times pertinent to this Indictment:

22

23 | VISA FRAUD AND FALSE STATEMENT

24 |     The Student Visas

25 |         Background

26 | 1.   In order for a foreign student to study in the United States on an F-1 student visa

27

28 |                                              1

1  the student must declare and promise under oath to United States authorities that the student
2  seeks a presence in the United States solely for the purpose of pursuing the student's
3  course of studies. In relation thereto, the foreign student must truthfully and fully declare his
4  associations with organizations to the appropriate United States Government authorities in
5  order for those authorities to evaluate any such association and related activities in relation to
6  the interests of the United States.

7      2.    SAMI OMAR AL-HUSSAYEN was a citizen of Saudi Arabia. Between about
8  August 7, 1994 and September 23, 1998, AL-HUSSAYEN studied in the United States as a
9  foreign student. He studied at Ball State University in Muncie, Indiana, where he obtained a
10  Masters of Science degree in computer science; and at Southern Methodist University in
11  Dallas, Texas.

12      3.    On or about September 23, 1998, AL-HUSSAYEN applied to the University of
13  Idaho at Moscow, Idaho, by submitting an International Application Form requesting that he
14  be admitted to the Computer Science PhD program for the Spring 1999 Semester.

15      4.    In or about January, 1999, AL-HUSSAYEN was admitted to the Computer
16  Science PhD program at the University of Idaho, with an emphasis on computer security and
17  intrusion techniques. University of Idaho records indicated that he began his studies the
18  Spring 1999 Semester. At the time he published his permanent address as ▓▓▓▓▓
19  ▓▓▓Moscow, Idaho.

20          The year 1999 transactions

21      5.    On or about May 17, 1999, United States Immigration and Nationalization (INS)
22  Form I-20 was issued by the University of Idaho, allowing AL-HUSSAYEN to study in the
23  Computer Science PhD program beginning no later than August 24, 1999, and ending no later
24  than December 17, 2004.

2

6.     On or about July 17, 1999, while outside the United States, AL-HUSSAYEN signed the Student Certification of the INS Form I-20 at section #11, which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . .
> I certify that all information provided on this form refers specifically to me and is true
> and correct to the best of my knowledge. I certify that I seek to enter or remain in the
> United States temporarily, and **solely for the purpose of pursuing a full course of
> study at [the University of Idaho].** I also authorize the named school to release any
> information from my records which is needed. [Emphasis added.]

AL-HUSSAYEN falsely made said certification, knowing of his internet and business activities alleged hereafter. On or about July 20, 1999, the United States Government issued an F-1 student visa to AL-HUSSAYEN at Riyadh, Saudi Arabia. The visa was valid for twenty-four months, or until July 20, 2001. (See Counts One and Two hereafter.)

7.     On or about August 11, 1999, AL-HUSSAYEN was admitted by the United States Government into the United States at John F. Kennedy International Airport in New York City, New York, as an F-1 student. AL-HUSSAYEN was admitted into the United States by the United States Government pursuant to the July 20, 1999 visa and in direct reliance upon AL-HUSSAYEN's certification on the INS Form I-20 dated July 17, 1999. (See Count Three hereafter.)

### The year 2000 transactions

8.     On or about July 7, 2000, a second INS Form I-20 was issued by the University of Idaho and designated "for Continued attendance at this school" and in order "to add dependant." On or about this same day and in Moscow, Idaho, AL-HUSSAYEN signed the Student Certification of said INS Form I-20 at section #11 and which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . .
> I certify that all information provided on this form refers specifically to me and is true
> and correct to the best of my knowledge. I certify that I seek to enter or remain in the
> United States temporarily, and **solely for the purpose of pursuing a full course of
> study at [the University of Idaho].** I also authorize the named school to release any
> information from my records which is needed. [Emphasis added.]

AL-HUSSAYEN falsely made said certification, knowing of his internet and business activities alleged hereafter. (See Counts Four and Five hereafter.) On or about July 9, 2000,

3

1  AL-HUSSAYEN departed from the United States at the John F. Kennedy International

2  Airport in New York City, New York.

3       9.    On or about August 25, 2000, AL-HUSSAYEN was admitted into the United

4  States by the United States Government at Washington, D.C., as an F-1 student.  AL-

5  HUSSAYEN was admitted into the United States by the United States Government pursuant

6  to the student visa dated July 20, 1999 as previously referenced and in reliance upon AL-

7  HUSSAYEN's certification on the INS Form I-20 dated July 7, 2000.  (See Count Six

8  hereafter.)

9                **The year 2002 transactions**

10      10.    On or about January 10, 2002, AL-HUSSAYEN departed the United States at

11  the John F. Kennedy International Airport in New York City, New York.  On or about January

12  13, 2002, AL-HUSSAYEN signed and submitted to the United States embassy a DOS Form

13  DS-156 for the purpose of obtaining another F-1 student visa.  Section 36 of the form reads in

14  pertinent part:

15         I certify that I have read and understand all the questions set forth in this application
16         and the answers I have furnished on this form are true and correct to the best of my
        knowledge and belief.  I understand that any false or misleading statement may result
17         in the permanent refusal of a visa or denial of entry into the United States.  I
        understand that possession of a visa does not automatically entitle the bearer to enter
18         the United States of America upon arrival at a port of entry if he or she is found
        inadmissable.

19  At section nineteen of the Form DS-156, AL-HUSSAYEN stated that the purpose of his entry

20  into the United States was to "study;" and, at section twenty-six, that he would do so at the

21  University of Idaho.  At section 20 he stated his permanent address in the United States to be

22  ▮▮▮▮▮▮▮▮▮ Moscow, Idaho, 83843.  As part of his application for the F-1 student

23  visa, AL-HUSSAYEN relied upon and/or submitted the INS Form I-20 dated July 7, 2000, as

24  previously referenced.

25      11.    On or about January 14, 2002, the DOS Form DS-156 was formally stamped as

26  received by the United States Government at the United States Embassy in Riyadh, Kingdom

27  of Saudi Arabia.  However, the application was refused because the birth date of AL-

28                             4

1  HUSSAYEN on the visa application and the July 7, 2000 INS Form I-20 did not match the

2  birth date on his passport.

3     12.   On or about January 14, 2002, and in conjunction with the same F-1 student visa

4  application, AL-HUSSAYEN submitted a DOS Form DS-157 Supplemental Non-immigrant

5  Visa Application to the United States Government at the United States Embassy in Riyadh,

6  Kingdom of Saudi Arabia, which DOS Form DS-157 was attached to the original DOS Form

7  DS-156 submitted on January 14, 2002.  Section 13 of the DOS Form DS-157 required the

8  applicant to "[l]ist all Professional, Social, Charitable Organizations to Which You Belong

9  (Belonged) or Contribute (Contributed) or with Which You Work (Have Worked)."  AL-

10  HUSSAYEN listed "ACM & IEEE."  ("ACM" stands for the Association for Computive

11  Machinery, and "IEEE" stands for the Institute of Electrical and Electronic Engineers.)  AL-

12  HUSSAYEN listed no other affiliations. AL-HUSSAYEN falsely and intentionally did not

13  list the Islamic Assembly of North America (hereafter the IANA) and other entities.  (See

14  Counts Seven and Eight hereafter.)

15     13.   On or about March 19, 2002, the University of Idaho provided an INS Form I-20

16  for AL-HUSSAYEN "for Continued attendance at this school" and to "correct birth-date."

17  On or about April 6, 2002, AL-HUSSAYEN signed the Student Certification of the INS Form

18  I-20 at section eleven, which stated in pertinent part:

19     I have read and agreed to comply with the terms and conditions of my admission. . . .
      I certify that all information provided on this form refers specifically to me and is true
20     and correct to the best of my knowledge.  I certify that I seek to enter or remain in the
      United States temporarily, and solely for the purpose of pursuing a full course of
21     study at [the University of Idaho].  I also authorize the named school to release any
      information from my records which is needed. [Emphasis added.]
22

23  AL-HUSSAYEN falsely made the certification, knowing of his internet and business

24  activities alleged hereafter.  On or about the same day of April 6, 2002, AL-HUSSAYEN

25  formally submitted the INS Form I-20 dated April 6, 2002, to the United States Government

26  at the United States Embassy in Riyadh, Kingdom of Saudi Arabia, and the United States

27  Government issued AL-HUSSAYEN an F-1 student visa in direct reliance upon AL-

28

1   HUSSAYEN's certifications on the DOS Form DS-156 dated January 14, 2002, and attached

2   DOS Form DS-157, together with the INS Form I-20 dated April 6, 2002. (See Counts Nine

3   and Ten hereafter.)

4        14.   On or about May 9, 2002, AL-HUSSAYEN was admitted by the United States

5   Government into the United States at the John F. Kennedy International Airport in New York

6   City, New York, as an F-1 student by virtue of the F-1 student visa issued April 6, 2002, and

7   in direct reliance upon AL-HUSSAYEN'S certifications on the DOS Form DS-156 dated

8   January 14, 2002, and attached DOS Form DS-157, together with the INS Form I-20 dated

9   April 6, 2002. During the admission at the John F. Kennedy International Airport, AL-

10  HUSSAYEN was inspected by INS and Customs officials. During the inspections, the INS

11  Form I-20 dated April 6, 2002, was photocopied by the Customs officials, with the Customs

12  officials retaining the copy and the original being returned to AL-HUSSAYEN. (See Count

13  Eleven hereafter.)

14       **The Web-site Activities**

15       15.   From at least October 2, 1998, until the date of this Indictment, AL-

16  HUSSAYEN engaged in computer web-site activities that exceeded his course of study at the

17  University of Idaho. These activities included expert computer services, advice, assistance

18  and support to organizations and individuals, including the IANA, in the form of web-site

19  registration, management, administration and maintenance. A number of those web-sites

20  accommodated materials that both advocated violence against the United States.

21       16.   The IANA was incorporated in 1993 in Colorado as a non-profit, charitable

22  organization. It maintained offices in Ann Arbor, Michigan. Its official mission statement

23  was that of *Da'wa*: the proselytizing and spreading the word of Islam. The IANA did this, in

24  part, by providing a number of media outlets as vehicles for advocating Islam, such as internet

25  web-sites with "bulletin boards," internet magazines, toll-free telephone lines, and audio

26  ("radio.net") services. The IANA solicited and received donations of monies both from

27  within the United States and without. The IANA also hosted regular Islamic

28                                    6

1  conferences in the United States, with participation by individuals affiliated with other

2  charitable organizations also located within the United States.

3      17.   AL-HUSSAYEN was the formal registered agent for the IANA in Idaho (since

4  May 11, 2001) and a business associate of the IANA in its purpose of *Da'wa* (proselytizing),

5  which included the web-site dissemination of radical Islamic ideology the purpose of which

6  was indoctrination, recruitment of members, and the instigation of acts of violence and

7  terrorism.

8      18.   AL-HUSSAYEN was either the registrant or the administrative contact for a

9  number of internet web-sites which either belonged to or were linked to the IANA. A number

10  of said IANA-related web-sites were registered to AL-HUSSAYEN directly, to the IANA or

11  to Dar Al-Asr, a Saudi Arabian company that provided web hostings on the internet. AL-

12  HUSSAYEN registered web-sites on behalf of Dar Al-Asr, identifying himself as the

13  administrative point of contact for Dar Al-Asr and giving his Moscow, Idaho street address

14  and University of Idaho e-mail address for reference.

15      19.   Of the afore-referenced web-sites, AL-HUSSAYEN was the sole registrant of

16  web-sites www.alasr.ws (created September 11, 2000), www.cybermsa.org (created March

17  15, 2001) and www.liveislam.net (created July 8, 2002). Web-sites www.alasr.net (created

18  August 15, 1999), www.almawred.com (created November 1, 1999) and www.heejrah.com

19  (February 22, 2000) were registered to Dar Al-Asr, with AL-HUSSAYEN as the

20  administrative contact person. Web-site www.almanar.net (created October 2, 1998) was

21  registered to Al-Manar Al-Jadeed Magazine, with AL-HUSSAYEN as the administrative

22  contact person. Iananet.org (created August 11, 1995) was registered to IANA and designed

23  and maintained by the web-site entity Dar Al-Asr. Ianaradionet.com (created May 25, 1999)

24  was registered to IANA, with AL-HUSSAYEN as the head of its supervisory committee and

25  member of its technical committee. Islamway.com (created August 18, 1998) was registered

26  to IANA, with direct links to AL-HUSSAYEN's web-sites, including www.alasr.ws and

27  www.cybersma.org. The registration of web-sites www.alhawali.org and www.alhawali.com

28

1  (both created November 18, 2000) referenced Al-Asr and AL-HUSSAYEN, with AL-

2  HUSSAYEN as the administrative contact for www.alhawali.com. These two web-sites

3  corresponded to a radical sheikh referenced in paragraph 21 hereafter. Web-site

4  www.islamtoday.net (created March 17, 2000) was related to a radical sheikh also referenced

5  in paragraph 21 hereafter and posted articles to some of the Dar Al-Asr and AL-HUSSAYEN

6  web-sites.

7       20.     One of the afore-referenced web-sites registered by AL-HUSSAYEN was

8  www.alasr.ws. On September 11, 2000, AL-HUSSAYEN registered the www.alasr.ws web-

9  site. In about June of 2001, an article entitled "Provision of Suicide Operations" was

10 published on the internet magazine of the website www.alasr.ws. The article was written by

11 a radical Saudi sheikh. A portion of the article read as follows:

12

13       The second part is the rule that the *Mujahid* (warrior) must kill himself if he knows
         that this will lead to killing a great number of the enemies, and that he will not be able

14       to kill them without killing himself first, or demolishing a center vital to the enemy or
         its military force, and so on. This is not possible except by involving the human

15       element in the operation. In this new era, this can be accomplished with the modern
         means of bombing or bringing down an airplane on an important location that will

16       cause the enemy great losses. [Emphasis added.]

17       21.     Www.alasr.ws and other web-sites registered or linked to, or technically advised

18 by AL-HUSSAYEN, including www.islamway.com (previously mentioned), also posted

19 other violent *jihad* (holy war)-related messages by other radical sheikhs, including those

20 referenced in preceding paragraph 19.

21       **Financial and Business Activities**

22       22.     From on or about August 17, 1994, until the date of this Indictment, AL-

23 HUSSAYEN, at various times, maintained at least six United States bank accounts in Indiana,

24 Texas, Idaho and Michigan. From at least January 23, 1997, until the date of this Indictment,

25 AL-HUSSAYEN used said bank accounts to receive large sums of monies from within and

26 without the United States, and to transfer and cause to be transferred large sums of monies to

27 the IANA and other organizations and individuals.

28

23.   From at least January 23, 1997, until the date of this Indictment, AL-HUSSAYEN received into and disbursed out of his bank accounts approximately $300,000.00 in excess of the university study-related funds he received during the same period of time, such as the monthly stipend he was given by the Saudi Arabian Government, and the living expenses that corresponded thereto. These excess funds included $49,992.00 paid to AL-HUSSAYEN on September 10, 1998, and $49,985.00 paid to him on September 25, 1998.

24.   From at least November 16, 1999, to the date of this Indictment, AL-HUSSAYEN made disbursements of the excess funds referenced in the preceding paragraph to the IANA and to the IANA's officers, including a leading official of the IANA. A portion of these funds was used to pay operating expenses of the IANA, including salaries of IANA employees. Furthermore, in 1999, 2000 and 2001 wire transfers were made from AL-HUSSAYEN to individuals in Cairo, Egypt; Montreal, Canada; Riyadh, Kingdom of Saudi Arabia; Amman, Jordan; and Islamabad, Pakistan. AL-HUSSAYEN also made disbursements to other organizations and individuals associated therewith during the time referenced in this paragraph.

25.   From at least November 16, 1999, to the date of this Indictment, AL-HUSSAYEN maintained frequent business contact with the leading IANA official referenced above. Not only did AL-HUSSAYEN disburse money directly to the official in the form of wire transfers and personal checks, their relationship also included the maintenance of a checking account in a Michigan bank in AL-HUSSAYEN's name alone, but with the official's home address and the official's apparently exclusive use of the account. Among the deposits into the account was a $4,000.00 wire transfer from AL-HUSSAYEN, 311 Sweet Avenue, Apt 6, Moscow, Idaho, to AL-HUSSAYEN, 219 Fieldcrest Street, Ann Arbor, Michigan. In addition, numerous telephone calls between AL-HUSSAYEN and the official were made during the time referenced in this paragraph.

26. From at least March of 1995 until about February of 2002, the IANA received into its bank accounts approximately three million dollars ($3,000,000.00), including the funds received from AL-HUSSAYEN as referenced above, and disbursed approximately the same amount. The deposits included a three hundred thousand dollar ($300,000.00) transfer from a Swiss bank account on or about May 14, 1998.

27. From about December of 1994 to about July of 2002, AL-HUSSAYEN traveled and otherwise funded travel for other individuals, including travel related to the IANA, through AL-HUSSAYEN's bank accounts and to locations in numerous states, as well as foreign countries.

28. From at least January 1, 1997, until on or about August 28, 2002, telephones corresponding to AL-HUSSAYEN had contact with telephones subscribed to individuals or entities in numerous states, as well as foreign countries. Subscribers corresponding to or associated with some of the numbers included the IANA and the source of the $49,992.00 and $49,985.00 transfers previously referenced paragraph 23.

# THE VIOLATIONS

In material reliance upon the information contained in the INS I-20 forms and the DOS Forms DS-156 and DS-157 as heretofore referenced, the United States Government issued AL-HUSSAYEN F-1 student visas and allowed him to enter and remain in the United States. However, AL-HUSSAYEN entered into and remained in the United States for purposes other than that of solely pursuing his studies, including, but not limited to, material support of the IANA and others by means of his web-site and business activities, and knowingly and wilfully made false statements and omissions to the authorities of the United States in relation thereto. By not truthfully stating and revealing the nature and extent of his activities and affiliations in the United States, AL-HUSSAYEN thereby deprived the authorities of the United States of the knowledge thereof and the opportunity to evaluate and address the same within the context of the laws of the United States, resulting in felony violations by the Defendant, SAMI OMAR AL-HUSSAYEN, consisting of Counts One through Eleven.

10

COUNT ONE
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 17, 1999, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to SAMI OMAR AL-HUSSAYEN's status as a foreign student in the United States, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, SAMI OMAR AL-HUSSAYEN knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraphs 5 and 6.)

COUNT TWO
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 17, 1999, until the date of this Indictment, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration

11

1  laws and regulations of the United States and (2) knowingly presented such application and
2  other document required by the immigration laws and regulations of the United States which
3  contained a materially false statement, in that SAMI OMAR AL-HUSSAYEN, in applying
4  for and receiving a student visa, signed and submitted an Immigration and Naturalization
5  (INS) form I-20, thereby knowingly and willfully representing to United States Government
6  authorities that he sought to enter into the United States for the sole purpose of pursuing a full
7  course of study at the University of Idaho, when, in fact, SAMI OMAR AL-HUSSAYEN
8  knowingly had been, was and would be engaged in activities other than his course of study at
9  the University of Idaho, including, but not limited to, his involvement with the Islamic
10 Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a)
11 and 3238. (See previous paragraphs 5 and 6.)

12

13

**COUNT THREE**
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3237)

14
15      The previous numbered paragraphs one through twenty-eight are hereby re-alleged as
though set forth in full herein.

16
17      On or about August 11, 1999, within and as the same pertains to the District of Idaho,
18  SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and
19  subscribed as true to the United States a false statement with respect to a material fact in an
20  application and other document required by the immigration laws and regulations of the
21  United States, (2) knowingly presented such application and other document required by the
22  immigration laws and regulations of the United States which contained a materially false
23  statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and
24  claim, in that SAMI OMAR AL-HUSSAYEN, in entering into the United States, presented
25  to United States Government authorities a student visa procured by means of a false statement
26  and claim and other document containing such false statement and claim; in violation of Title
27  18, United States Code, Sections 1546(a) and 3237. (See previous paragraphs 5 through 7.)

28

12

COUNT FOUR
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 7, 2000, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to SAMI OMAR AL-HUSSAYEN's status as a foreign student in the United States, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, SAMI OMAR AL-HUSSAYEN knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See previous paragraph 8.)

COUNT FIVE
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about July 27, 1999, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the

13

1   United States and (2) knowingly presented such application and other document required by
2   the immigration laws and regulations of the United States which contained a materially false
3   statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student
4   visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby
5   knowingly and willfully representing to United States Government authorities that he sought
6   to enter into the United States for the sole purpose of pursuing a full course of study at the
7   University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was
8   and would be engaged in activities other than his course of study at the University of Idaho,
9   including, but not limited to, his involvement with the Islamic Assembly of North America;
10  in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous
11  paragraph 8.)
12
13              COUNT SIX
                VISA FRAUD
14      (Violation 18 U.S.C. 1546(a) and 3237)
15      The previous numbered paragraphs one through twenty-eight are hereby re-alleged as
    though set forth in full herein.
16
17      On or about August 25, 2000, within and as the same pertains to the District of Idaho,
18  **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and
19  subscribed as true to the United States a false statement with respect to a material fact in an
20  application and other document required by the immigration laws and regulations of the
21  United States, (2) knowingly presented such application and other document required by the
22  immigration laws and regulations of the United States which contained a materially false
23  statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and
24  claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented
25  to United States Government authorities a student visa procured by means of a false statement
26  and claim and other document containing such false statement and claim; in violation of Title
27  18, United States Code, Sections 1546(a) and 3237. (See previous paragraphs 8 and 9.)
28
                        14

1

2

COUNT SEVEN
**FALSE STATEMENT TO THE UNITED STATES**
(Violation 18 U.S.C. 1001(a)(2) and 3238)

3   The previous numbered paragraphs one through twenty-eight are hereby re-alleged as

4   though set forth in full herein.

5   On or about January 14, 2002, within and as the same pertains to the District of Idaho,

6   SAMI OMAR AL-HUSSAYEN, Defendant herein, in a matter within the jurisdiction of the

7   Executive Branch of the United States Government, knowingly and willfully made a

8   materially false, fictitious and fraudulent statement and representation to authorities of the

9   United States in relation to SAMI OMAR AL-HUSSAYEN's status as a foreign student in

10   the United States, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a

11   student visa, signed and submitted Department of State (DOS) form DS-156 and form DS-

12   157, thereby knowingly and wilfully failing and refusing to inform United States Government

13   authorities of his involvement with the Islamic Assembly of North America and other entities;

14   in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.  (See previous

15   paragraphs 10 through12.)

16

17

COUNT EIGHT
**VISA FRAUD**
(Violation 18 U.S.C. 1546(a) and 3238)

18

19   The previous numbered paragraphs one through twenty-eight are hereby re-alleged as

20   though set forth in full herein.

21   On or about January 14, 2002, within and as the same pertains to the District of Idaho,

22   SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and

23   subscribed as true to the United States a false statement with respect to a material fact in an

24   application and other document required by the immigration laws and regulations of the

25   United States and (2) knowingly presented such application and other document required by

26   the immigration laws and regulations of the United States which contained a materially false

27   statement, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a student

28

15

1  visa, signed and submitted Department of State (DOS) form DS-156 and form DS-157,

2  thereby knowingly and wilfully failing and refusing to inform United States Government

3  authorities of his involvement with the Islamic Assembly of North America and other entities;

4  in violation of Title 18, United States Code, Sections 1546(a) and 3238. (See previous

5  paragraphs 10 through 12.)

6

7                              COUNT NINE
                    FALSE STATEMENT TO THE UNITED STATES
8                       (Violation 18 U.S.C. 1001(a)(2) and 3238)

9       The previous numbered paragraphs one through twenty-eight are hereby re-alleged as

10  though set forth in full herein.

11      On or about April 6, 2002, within and as the same pertains to the District of Idaho,

12  SAMI OMAR AL-HUSSAYEN, Defendant herein, in a matter within the jurisdiction of the

13  Executive Branch of the United States Government, knowingly and willfully made a

14  materially false, fictitious and fraudulent statement and representation to authorities of the

15  United States in relation to SAMI OMAR AL-HUSSAYEN's status as a foreign student in

16  the United States, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a

17  student visa, signed and submitted an Immigration and Naturalization (INS) form I-20,

18  thereby knowingly and willfully representing to United States Government authorities that he

19  sought to enter into the United States for the sole purpose of pursuing a full course of study at

20  the University of Idaho, when, in fact, SAMI OMAR AL-HUSSAYEN knowingly had been,

21  was and would be engaged in activities other than his course of study at the University of

22  Idaho, including, but not limited to, his involvement with the Islamic Assembly of North

23  America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238. (See

24  previous paragraphs 10 through 13.)

25

26

27

28                              16

COUNT TEN
VISA FRAUD
(Violation 18 U.S.C. 1546(a) and 3238)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about April 6, 2002, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that SAMI OMAR AL-HUSSAYEN, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, SAMI OMAR AL-HUSSAYEN knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238.  (See previous paragraphs 10 through 13.)

COUNT ELEVEN
VISA FRAUD
(Violation 18 U.S.C. 1546(a) and 3237)

The previous numbered paragraphs one through twenty-eight are hereby re-alleged as though set forth in full herein.

On or about May 9, 2002, within and as the same pertains to the District of Idaho, SAMI OMAR AL-HUSSAYEN, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an

17

1  application and other document required by the immigration laws and regulations of the
2  United States, (2) knowingly presented such application and other document required by the
3  immigration laws and regulations of the United States which contained a materially false
4  statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and
5  claim, in that SAMI OMAR AL-HUSSAYEN, in entering into the United States, presented
6  to United States Government authorities a student visa procured by means of a false statement
7  and claim and other document containing such false statement and claim; in violation of Title
8  18, United States Code, Sections 1546(a) and 3237.  (See previous paragraphs 10 through 14.)

9

10  Dated this ___ 13th day of February, 2003.

11

12                                    A TRUE BILL

13

14                                    _____
15                                    FOREPERSON

16

17  THOMAS E. MOSS
18  UNITED STATES ATTORNEY

19

20  KIM R. LINDQUIST
21  Assistant United States Attorney

22

23
    TERRY L. DERDEN
24  First Assistant United States Attorney
    Chief, Criminal Section
25

26

27

28                         18