**EXHIBIT C**

THOMAS E. MOSS
UNITED STATES ATTORNEY

KIM R. LINDQUIST
ASSISTANT UNITED STATES ATTORNEY

TERRY L. DERDEN
FIRST ASSISTANT UNITED STATES ATTORNEY
    and CRIMINAL CHIEF

DISTRICT OF IDAHO

DAVID B. DEITCH
TRIAL ATTORNEY, UNITED STATES DEPARTMENT OF JUSTICE

WELLS FARGO BUILDING
877 WEST MAIN STREET, SUITE 201
BOISE, IDAHO  83702
TELEPHONE:  (208) 334-1211
**MAILING ADDRESS:**
 **BOX 32**
 **BOISE, IDAHO  83707**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | ) | Cr. No. **CR 03-0048-C-EJL** |
|---|---|---|
| Plaintiff, | ) | SUPERSEDING INDICTMENT |
| vs. | ) | (Vio. 18 U.S.C. 371 , 956, 2339A, |
| SAMI OMAR AL-HUSSAYEN, | ) | 1546(a), 1001(a)(2), 3237, 3238 |
| Defendant. | ) | |

THE GRAND JURY CHARGES:

At all times pertinent to this Superseding Indictment:

1

378

## INTRODUCTION

1.      This Superseding Indictment charges defendant **SAMI OMAR AL-HUSSAYEN** with various criminal offenses arising from his work on behalf of the Islamic Assembly of North America (hereafter the "IANA"), the Al-Haramain Islamic Foundation (hereafter "Al-Haramain") , Dar Al-Asr and other entities through which he provided material support and resources to terrorists.  As described in further detail in this Superseding Indictment, **AL-HUSSAYEN** provided, among other things, computer advice and assistance, communications facilities, and financial instruments and services that assisted in the creation and maintenance of internet websites and other internet media intended to recruit and to raise funds for violent jihad, particularly in Palestine and Chechnya.  **AL-HUSSAYEN's** conduct in furtherance of this conspiracy violated federal law barring material support of terrorists, and the false statements and omissions he made during the process of obtaining student non-immigrant visas to enter the United States also constituted violations of federal law.

2.      As used in this Superseding Indictment, "jihad" is an Arabic word meaning "holy war."  In this context, it refers to the taking of actions against persons or governments that are deemed to be enemies of a fundamentalist version of Islam.  Historically, violent jihad has included armed conflicts and other violence in numerous areas of the world, including Afghanistan, Chechnya, Israel, the Philippines and Indonesia.  The armed conflicts in these geographic areas and elsewhere have involved murder, maiming, kidnaping, and the destruction of property.

3.      In addition to and in conjunction with dates otherwise specifically indicated herein, reference in this Superseding Indictment to "at all times pertinent to this Superseding Indictment" shall mean at least between September 13, 1994 and on or about February 26, 2003.

## DEFENDANT

4.      Defendant **SAMI OMAR AL-HUSSAYEN** is a citizen of Saudi Arabia.  Between about August 7, 1994 and February, 2003, **AL-HUSSAYEN** studied in the United States as a foreign student. He studied at Ball State University in Muncie, Indiana, where he obtained a Masters of Science degree in computer science and at Southern Methodist University in Dallas, Texas.  Thereafter, **AL-HUSSAYEN**

studied at the University of Idaho in the Ph.D. program in computer science.

## DEFENDANT'S RELATIONSHIP WITH IANA AND AL-HARAMAIN

### The Islamic Assembly of North America (IANA)

5.      At all times pertinent to this Superseding Indictment, the IANA purported to be a non-profit charity organized pursuant to the laws of the United States.  Between at least January 1, 1999 and the date of this Superseding Indictment, the IANA maintained offices in Ann Arbor, Michigan.  The IANA provided a number of internet websites and other internet-related outlets for disseminating information regarding Islam, as well as for soliciting and receiving donations of monies both from within the United States and without.  As detailed below, IANA-sponsored websites included a variety of materials intended to recruit and to raise funds for violent jihad.  The IANA also hosted regular conferences in the United States, with participation by individuals affiliated with other purported charitable organizations located within the United States as well.

6.      During the period between on or about November 16, 1999, to February 13, 2003, **AL-HUSSAYEN** functioned as an employee and official of the IANA and, together with the president of the IANA, engaged in significant decision-making and business transactions related to IANA's business, particularly with respect to the creation, maintenance and content of websites and the associated fundraising for IANA.  Since May 11, 2001, **AL-HUSSAYEN** has been the registered agent for the IANA in Idaho.  **AL-HUSSAYEN** was involved in the planning of at least one of the IANA conferences described above, and attended and participated in more than one such conference.

7.      During **AL-HUSSAYEN**'s period of study, the government of his native country paid for his tuition and provided to him and his family a stipend for living expenses.  Beginning on or about August 17, 1994, **AL-HUSSAYEN**, at various times, maintained at least six United States bank accounts in Indiana, Texas, Idaho and Michigan.  From at least January 23, 1997, until the date of this Superseding Indictment, **AL-HUSSAYEN** received into and disbursed out of his bank accounts more than $300,000.00 in excess of the study-related funds he received during the same period of time.

8.      Beginning on or about November 16, 1999, **AL-HUSSAYEN** made disbursements of the

3

1    excess funds referenced in the preceding paragraph to the IANA, to the IANA's officers (including its
2    president), and for other operating expenses of the IANA, such as the salaries of its employees. From
3    about December of 1994 to about July of 2002, **AL-HUSSAYEN** traveled and otherwise funded travel
4    for other individuals, including travel related to the IANA, through **AL-HUSSAYEN**'s bank accounts
5    and to locations in numerous states, as well as foreign countries.

6         9.    Between on or about November 16, 1999, to February 13, 2003, **AL-HUSSAYEN's** IANA-
7    related business activities included frequent contact with the president of the IANA, including numerous
8    telephone conversations and e-mails, as well as face-to-face meetings. **AL-HUSSAYEN** disbursed
9    money directly to said president of the IANA in the form of wire transfers and personal checks, and **AL-**
10   **HUSSAYEN** also maintained a checking account in a Michigan bank in **AL-HUSSAYEN's** name alone,
11   but with the president's home address.

12   **The Al-Haramain Islamic Foundation**

13        10.   At all times pertinent to this superseding indictment, Al-Haramain was a purported charity
14   centered in Saudi Arabia. It developed a world-wide network of offices and representatives in a number
15   of countries, including Saudi Arabia, the United States (Ashland, Oregon), Chechnya, Bosnia, Somalia
16   and Kenya. Its stated mission included the dissemination of fundamentalist Islamic doctrines, including
17   by means of the Internet. On or about March 11, 2002, pursuant to Executive Order 13224, the United
18   States Government designated the Bosnia and Somalia branches of Al-Haramain as Specially Designated
19   Global Terrorists.

20        11.   From at least on or about November 10, 2001, until February 13, 2003, **AL-HUSSAYEN**
21   was a representative of Al-Haramain in that he provided assistance in that organization's internet-related
22   business and activities. **AL-HUSSAYEN's** Al-Haramain activities included contact with Al-Haramain
23   officials. In addition, on one or more occasions, **AL-HUSSAYEN** signed contracts on behalf of Al-
24   Haramain, and, in doing so, represented that he was legally authorized to do so.

25

26

27

28                                        4

1

**DEFENDANT'S WEBSITE WORK**

2       12.    From at least October 2, 1998, until February 13, 2003, **AL-HUSSAYEN** engaged in

3  extensive computer website support activities beyond his course of study at the University of Idaho.

4  These activities included expert computer services, advice, assistance and support to and for

5  organizations and individuals, including the IANA, a Saudi information technology company known as

6  Dar Al-Asr and two Saudi sheikhs. **AL-HUSSAYEN's** activities included website creation, registration,

7  management, administration and maintenance. A number of these websites accommodated and contained

8  materials intended to recruit and to raise funds for violent jihad.

9  **The IANA Websites**

10      13.    At all times pertinent to this Superseding Indictment, through the efforts of **AL-**

11  **HUSSAYEN** and others known and unknown to the grand jury, the IANA maintained and/or controlled a

12  number of websites. These websites included the following:

13         a.    www.al-multaqa.com, a website that included the online publication of

14  "Al-Multaqa," an Arabic language magazine of which **AL-HUSSAYEN** was a member of the Board of

15  Editors, and which was created April 5, 1999, and registered to "Al-Multaqa" at a Moscow, Idaho

16  address used by **AL-HUSSAYEN** and others.

17         b.    www.islamway.com, a website created August 18, 1998 and registered to the

18  IANA. **AL-HUSSAYEN** was the director, administrator, and advisor to other webmasters of the

19  website, in creating, maintaining and controlling the site's format and content.

20         c.    www.alasr.ws, an internet magazine created September 11, 2000, with **AL-**

21  **HUSSAYEN** as the sole registrant, editor of the magazine and administrator of the website.

22         d.    www.iananet.org, a website created August 1, 1995, registered to the IANA, and

23  subsequently designed and maintained by Dar Al-Asr.

24         e.    www.almanar.net, a website created October 2, 1998, and registered to Al-Manar

25  Al-Jadeed Magazine, with **AL-HUSSAYEN** as the administrative contact person.

26         f.    www.ianaradionet.com, essentially an Internet radio station, which was created

27

28                       5

1  May 25, 1999 and registered to the IANA, with **AL-HUSSAYEN** as the head of its supervisory

2  committee and member of its technical committee.

3          g.    www.almawred.com, an Islam-related shopping website associated with the IANA,

4  which was created November 1, 1999 and registered to Dar Al-Asr, with **AL-HUSSAYEN** as the

5  administrative contact person.

6          h.    www.liveislam.net, a website created July 8, 2002 which, though never active,

7  listed **AL-HUSSAYEN** as the sole registrant and designated administrator.

8          i.    www.liveislam.com, a speech broadcast-facilitating Website, which was created

9  June 12, 2000, with **AL-HUSSAYEN** as a key administrator and providing technical support.

10      14.    These websites were intended to assist in recruiting and in raising funds for violent jihad.

11  To that end, one or more of the websites contained explicit calls for violent jihad against non-Muslims

12  and for financial support for those who went to fight jihad.  These websites urged visitors that their

13  religious duty was to participate in violent jihad or to make financial contributions to support violent

14  jihad, and at least one such page provided a link to a website for such donations.

15  **The Internet E-Mail Group**

16      15.    Beginning in early 2000, visitors to www.islamway.com and to the Arabic language

17  website described in the preceding paragraph (as well as other websites such as www.al-multaqa.com)

18  who wished to see so-called "news" concerning jihad were directed to sign up for an internet e-mail

19  group maintained and moderated by **AL-HUSSAYEN** and others.  An internet e-mail group is an

20  internet facility that permits members to post e-mails, files (such as documents, images, and audio or

21  video files), as well as links to internet websites, to which other members then have access.  This

22  particular internet e-mail group, which grew to more than 2400 members, was intended to permit

23  members to post inquiries and information relating to violent jihad, and thereby provided a

24  communications platform for individuals who wished to engage in violent jihad.  **AL-HUSSAYEN's**

25  status as a moderator of the internet e-mail group gave him various privileges with respect to the

26  acceptance, retention and deletion of messages posted to the group.

27

28                            6

16.    The invitation to join the internet e-mail group included a "Cry and Call" to Muslims that exhorted them to "fight the idolater with your money, your selves, your tongues and your prayers." The first posting on the internet e-mail group (on February 2, 2000) was an identical "Cry and Call" posted by **AL-HUSSAYEN**, one of numerous postings that he made to the internet e-mail group.

17.    Posts to the internet e-mail group included a July 14, 2001, posting that purported to be from a mujahid (warrior) departing from Bosnia, and extolled the virtues of violent jihad. Other members who responded with further posts to the internet e-mail group stated that they too had fought violent jihad.

18.    Another example of posts to the internet e-mail group is a February 25, 2000, post responding to a specific request for information on how one could train for violent jihad. In the post, a member of the internet e-mail group gave detailed instructions on how to travel and train at a particular terrorist training camp outside of the United States.

19.    Another example is a February 25, 2003, posting to the internet e-mail group that contained an "urgent appeal" to Muslims serving in the American military. The posting called upon such individuals to provide information about valuable targets for attacks, particularly in the Middle East. The long list of requested targets included American military bases, the logistical support (including drinking water) for such bases, the residences of civilian workers supporting the bases, storage facilities for weaponry and ammunition, facilities of American oil companies, and the routes followed by oil tankers. The posting specifically urged an attack upon a specifically identified high-ranking American military official.

20.    The internet e-mail group also served as a platform for **AL-HUSSAYEN's** direct fundraising appeals. In February, 2000 (shortly after the creation of the internet e-mail group), **AL-HUSSAYEN** sent a message to all members of the internet e-mail group urging them to donate money to support those who were participating in violent jihad in order to provide "them with weapons and physical strength to carry on with the war against those who kill them." This message was thereafter sent at the beginning of each month as a "monthly reminder" to donate money in support of violent jihad.

7

**The Dar Al-Asr Websites**

21.    At all times pertinent to this Superseding Indictment, Dar Al-Asr was an information technology company in Saudi Arabia.  From at least August of 1999, **AL-HUSSAYEN** was a representative and official of Dar Al-Asr in the United States.  Dar Al-Asr's principal website was www.alasr.net, which was created on August 15, 1999 and registered to Dar Al-Asr in **AL-HUSSAYEN's** name and at his Moscow, Idaho, address.  The website www.hccjrah.com was created February 22, 2000 and was registered to Dar Al-Asr, with **AL-HUSSAYEN** as the administrative contact person.  The website www.alsunnah.com was created August 10, 2000, and registered, with **AL-HUSSAYEN** paying the invoice.  As previously referenced, Dar Al-Asr was affiliated with a number of IANA Websites, including www.alasr.ws, www.almanar.net, www.al-multaqa.com, www.iananet.org and www.ianaradionet.com.

**The Websites of the Sheikhs**

22.    During the period of time pertinent to this Superseding Indictment, **AL-HUSSAYEN** had personal contact with two sheikhs known to the Grand Jury, in that he performed internet-related business and activities on their behalf, including the publication of fatwas – that is, religious decrees – justifying violent jihad .

23.    **AL-HUSSAYEN** registered the websites www.alhawali.org and www.alhawali.com for one of these sheikhs.  Both websites were created November 18, 2000 and in their registration referenced both Dar Al-Asr and **AL-HUSSAYEN**, with **AL-HUSSAYEN** as the administrative contact for www.alhawali.com.  The website www.islamtoday.net, created March 17, 2000 and registered to an official of the Al-Haramain Foundation, was the website for and on behalf of the other of these two sheikhs and was administered at least in part by **AL-HUSSAYEN**.  It was also linked to some of the other websites described above.

**Defendant's Control Over The Websites**

24.    **AL-HUSSAYEN** exercised significant control over the IANA websites and others.  In e-mails to **AL-HUSSAYEN** and others, IANA and Al-Haramain officials expressly recognized

8

1  **AL-HUSSAYEN's** expertise, and deferred to him on decisions as to the content and management of the
2  websites.

3      25.    In his capacity as Dar Al-Asr agent, **AL-HUSSAYEN** had financial and operational
4  responsibility for www.alasr.net and www.alasr.ws, as well as financial responsibility for a number of
5  other website domains owned by and/or affiliated with Dar Al-Asr, including www.alhawali.com,
6  www.alhawali.org, www.adssite.net, www.almandhoor.com, www.al-duaij.net, and www.alyaqaza.com.

7      26.    As a result of **AL-HUSSAYEN's** control over, and extensive involvement with, these
8  websites and other internet media, **AL-HUSSAYEN** not only knew that the communications platform he
9  created would be used to support and justify violent activities, but he also specifically intended that the
10  expert advice and assistance, communication facilities, financial instruments and services, and other
11  material support he provided would be used to recruit and to raise funds for violent jihad.  As such,
12  **AL-HUSSAYEN** knew and intended that the material support and resources that he provided were to be
13  used in preparation for, and to commit, violations of federal law involving murder, maiming, kidnaping,
14  and the destruction of property.  **AL-HUSSAYEN** also sought to conceal and disguise the nature,
15  location, source and ownership of the material support and resources that he provided.

16      **THE STUDENT VISAS**

17      27.    In order for a foreign student to study in the United States on an F-1 student
18  visa, the student must declare and promise under oath to United States authorities that the
19  student seeks a presence in the United States solely for the purpose of pursuing the student's
20  course of studies.  The foreign student must truthfully and fully declare his associations with
21  organizations to the appropriate United States Government authorities in order for those
22  authorities to evaluate any such association and related activities in relation to the interests of
23  the United States.

24      28.    On or about September 23, 1998, **AL-HUSSAYEN** applied to the University of
25  Idaho at Moscow, Idaho, by submitting an International Application Form requesting that he
26  be admitted to the Computer Science Ph.D. program for the Spring 1999 Semester.

27

28          9

29.   In or about January, 1999, **AL-HUSSAYEN** was admitted to the Computer Science PhD program at the University of Idaho, with an emphasis on computer security and intrusion techniques. University of Idaho records indicated that he began his studies during the Spring 1999 Semester. At the time, the defendant published his permanent address as 311 Sweet Ave., Apt. #6, Moscow, Idaho.

**The year 1999 transactions**

30.   On or about May 17, 1999, United States Immigration and Nationalization (INS) Form I-20 was issued by the University of Idaho, allowing **AL-HUSSAYEN** to study in the Computer Science Ph.D. program beginning no later than August 24, 1999, and ending no later than December 17, 2004.

31.   On or about July 17, 1999, while outside the United States, **AL-HUSSAYEN** signed the Student Certification of the INS Form I-20 at section #11, which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and solely for the purpose of pursuing a full course of study at [the University of Idaho].** I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

**AL-HUSSAYEN** falsely made said certification, despite his extensive internet and business activities described above. On or about July 20, 1999, the United States Government issued an F-1 student visa to **AL-HUSSAYEN** at Riyadh, Saudi Arabia. The visa was valid for twenty-four months, or until July 20, 2001.

32.   On or about August 11, 1999, **AL-HUSSAYEN** was admitted by the United States Government into the United States at John F. Kennedy International Airport in New York City, New York, as an F-1 student. **AL-HUSSAYEN** was admitted into the United States by the United States Government pursuant to the July 20, 1999 visa and in direct reliance upon **AL-HUSSAYEN's** certification on the INS Form I-20 dated July 17, 1999.

**The year 2000 transactions**

10

33.     On or about July 7, 2000, a second INS Form I-20 was issued by the University of Idaho and designated "for Continued attendance at this school" and in order "to add dependant." On or about this same day and in Moscow, Idaho, **AL-HUSSAYEN** signed the Student Certification of said INS Form I-20 at section #11 and which read in pertinent part:

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and solely for the purpose of pursuing a full course of study at [the University of Idaho]**. I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

**AL-HUSSAYEN** falsely made said certification, despite his extensive internet and business activities described above. On or about July 9, 2000, **AL-HUSSAYEN** departed from the United States at the John F. Kennedy International Airport in New York City, New York.

34.     On or about August 25, 2000, **AL-HUSSAYEN** was admitted into the United States by the United States Government at Washington, DC, as an F-1 student. **AL-HUSSAYEN** was admitted into the United States by the United States Government pursuant to the student visa dated July 20, 1999 as previously referenced and in reliance upon **AL-HUSSAYEN's** certification on the INS Form I-20 dated July 7, 2000.

**The year 2002 transactions**

35.     On or about January 10, 2002, **AL-HUSSAYEN** departed the United States at the John F. Kennedy International Airport in New York City, New York. On or about January 13, 2002, **AL-HUSSAYEN** signed and submitted to the United States embassy a DOS Form DS-156 for the purpose of obtaining another F-1 student visa. Section 36 of the form reads in pertinent part:

> I certify that I have read and understand all the questions set forth in this application and the answers I have furnished on this form are true and correct to the best of my knowledge and belief. I understand that any false or misleading statement may result in the permanent refusal of a visa or denial of entry into the United States. I understand that possession of a visa does not automatically entitle the bearer to enter the United States of America upon arrival at a port of entry if he or she is found inadmissable.

At section nineteen of the Form DS-156, **AL-HUSSAYEN** stated that the purpose of his entry

11

into the United States was to "study;" and, at section twenty-six, that he would do so at the
University of Idaho.  At section 20, he stated his permanent address in the United States to be
311 Sweet Ave. #6, Moscow, Idaho, 83843.  As part of his application for the F-1 student
visa, **AL-HUSSAYEN** relied upon and/or submitted the INS Form I-20 dated July 7, 2000, as
previously referenced.

36.  On or about January 14, 2002, the DOS Form DS-156 was formally stamped as
received by the United States Government at the United States Embassy in Riyadh, Kingdom
of Saudi Arabia.  However, the application was refused because the birth date of
**AL-HUSSAYEN** on the visa application and the July 7, 2000 INS Form I-20 did not match
the birth date on his passport.

37.  On or about January 14, 2002, and in conjunction with the same F-1 student visa
application, **AL-HUSSAYEN** submitted a DOS Form DS-157 Supplemental Non-immigrant
Visa Application to the United States Government at the United States Embassy in Riyadh,
Kingdom of Saudi Arabia, which DOS Form DS-157 was attached to the original DOS Form
DS-156 submitted on January 14, 2002.  Section 13 of the DOS Form DS-157 required the
applicant to "[l]ist all Professional, Social, and Charitable Organizations to Which You
Belong (Belonged) or Contribute (Contributed) or with Which You Work (Have Worked)."
**AL-HUSSAYEN** listed "ACM & IEEE."  ("ACM" stands for the Association for Computive
Machinery, and "IEEE" stands for the Institute of Electrical and Electronic Engineers.)
**AL-HUSSAYEN** listed no other affiliations, particularly of any charitable organizations.
**AL-HUSSAYEN** falsely and intentionally did not list the IANA, Al-Haramain or other
entities.

38.  On or about March 19, 2002, the University of Idaho provided an INS Form I-20
for **AL-HUSSAYEN** "for Continued attendance at this school" and to "correct birth-date."
On or about April 6, 2002, **AL-HUSSAYEN** signed the Student Certification of the INS Form
I-20 at section eleven, which stated in pertinent part:

12

> I have read and agreed to comply with the terms and conditions of my admission. . . . I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, **and solely for the purpose of pursuing a full course of study at [the University of Idaho]**. I also authorize the named school to release any information from my records which is needed. [Emphasis added.]

AL-HUSSAYEN falsely made the certification, despite his extensive internet and business activities described above. On or about the same day of April 6, 2002, **AL-HUSSAYEN** formally submitted the INS Form I-20 dated April 6, 2002, to the United States Government at the United States Embassy in Riyadh, Kingdom of Saudi Arabia, and the United States Government issued **AL-HUSSAYEN** an F-1 student visa in direct reliance upon **AL-HUSSAYEN's** certifications on the DOS Form DS-156 dated January 14, 2002, and attached DOS Form DS-157, together with the INS Form I-20 dated April 6, 2002.

39.     On or about May 9, 2002, **AL-HUSSAYEN** was admitted by the United States Government into the United States at the John F. Kennedy International Airport in New York City, New York, as an F-1 student by virtue of the F-1 student visa issued April 6, 2002, and in direct reliance upon **AL-HUSSAYEN'S** certifications on the DOS Form DS-156 dated January 14, 2002, and attached DOS Form DS-157, together with the INS Form I-20 dated April 6, 2002. During the admission at the John F. Kennedy International Airport, **AL-HUSSAYEN** was inspected by INS and Customs officials. During the inspections, the INS Form I-20 dated April 6, 2002, was photocopied by the Customs officials, with the Customs officials retaining the copy and the original being returned to **AL-HUSSAYEN.**

**COUNT ONE**
**CONSPIRACY TO PROVIDE MATERIAL SUPPORT**
**OR RESOURCES TO TERRORISTS**
**(Violation 18 U.S.C. 371 and 2339A)**

The facts set forth in the previously numbered paragraphs 1 through 39 are hereby re-alleged as though set forth in full herein.

13

1    Beginning at a time uncertain, but no later than September 13, 1994, until on or about

2  February 26, 2003, within and as the same pertains to the District of Idaho, **SAMI OMAR**

3  **AL-HUSSAYEN** did knowingly conspire, combine, confederate, and agree with persons

4  known and unknown to the Grand Jury, to provide material support and resources, and to

5  conceal and disguise the nature, location, source and ownership of material support and

6  resources, intending that they were to be used in preparation for and in carrying out a violation

7  of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure

8  persons or damage property in a foreign country), in violation of Title 18, United States Code,

9  Section 2339A and Section 371.

10    **The Purpose of the Conspiracy**

11    The purpose of the conspiracy was to create and maintain websites and other internet

12  media, which were intended in part to recruit personnel and raise funds for violent jihad in

13  such places as Chechnya and Israel.

14    **The Manner and Means of the Conspiracy**

15    From on or about September 13, 1994, until on or about October 26, 2001, the

16  material support and resources that were the manner and means of the conspiracy included

17  currency, financial services, communications equipment, and personnel.  From on or about

18  October 26, 2001, until on or about February 26, 2003, the material support and resources that

19  were the manner and means of the conspiracy included currency, monetary instruments,

20  financial services, expert advice and assistance, communications equipment, and personnel.

21    At times relevant to the conspiracy, **AL-HUSSAYEN** provided these material support

22  and resources at the request of certain persons located in the United States and abroad,

23  knowing that the persons to whom he provided the material support and resources were

24  attempting to fund and facilitate overseas violence, and intending to assist in these efforts.

25    **Overt Acts in Furtherance of the Conspiracy**

26    Defendant **AL-HUSSAYEN**, together with co-conspirators known and unknown to

27

28                                                    14

the Grand Jury, committed overt acts as part of and in furtherance of the conspiracy, including the following:

a.      On or about January 29, 2000, on the www.al-multaqa.com website, defendant, together with co-conspirators known and unknown to the Grand Jury, invited "those who cannot physically engage in holy war" to join an internet e-mail group "for all news, discussions, dialogues, and consultations relating to the issue of our Chechen holy warrior brothers," and urged all readers "to help the Chechen holy warriors with [their] support, [their] money, and [their] selves." As described above, members of this internet e-mail group posted inquiries and information relating to violent jihad. The internet e-mail group thus provided a communications platform for individuals who wished to engage in violent jihad.

b.      On or about May 15, 2001, on the www.alasr.ws website, defendant, together with co-conspirators known and unknown to the Grand Jury, published several fatwas (that is, religious decrees) justifying and encouraging violent jihad, including suicide attacks.

c.      Defendant, together with co-conspirators known and unknown to the Grand Jury, published or broadcasted a wide variety of speeches, lectures and articles justifying and glorifying violent jihad. Thus, for example, the following articles were transmitted to the internet service provider that hosted the www.al-multaqa.com website: "The World's Bravest People" (extolling the Chechen mujahideen (warriors) and asking Allah to destroy the Russian army and make their wives into widows), "Jihad in the Qur'an and the Sunnah", "The True Meaning of Shaheed" (stating that to die as a shaheed (martyr) is the ultimate honor), "The Objectives and Aims of Jihad"; and "The Religious and Moral Doctrine on Jihad." These same articles were also found on defendant's home computer in a subdirectory named "almultaqa"

d.      Defendant, together with co-conspirators known and unknown to the Grand Jury, called upon Muslims to participate personally in violent jihad, or, alternatively, to provide financial assistance to such groups. For example, from in or about October, 2000, to

15

1   in or about September, 2002, the www.islamway.com website included a specific solicitation
2   of donations to the Islamic Resistance Movement, also known as HAMAS, and provided a
3   link for that purpose to a website that it characterized as the official mouthpiece of HAMAS.
4   As a result of HAMAS's participation in violent jihad in Israel, HAMAS has been designated
5   by the United States Department of State since 1997 as a foreign terrorist organization,
6   pursuant to Section 219 of the Immigration and Nationality Act.  On April 15, 2002, Al-
7   Hussayen received an e-mail in which the sender forwarded a solicitation for donations to
8   Hamas.  The original e-mail purported to be from "the battalion of the martyr Ezeldeen Al-
9   Qassam" of "the military wing for the Islamic Resistance Movement," and stressed the need
10  for money in order to arm fighters against the "Zionists occupiers."  **AL-HUSSAYEN** thus
11  knew and intended that the donations he solicited on behalf of HAMAS would be used in
12  preparation for, and in committing, violent jihad.

13          e.      Defendant, together with co-conspirators known and unknown to the Grand
14  Jury, published graphic videos depicting mujahideen and other subjects relating to violent
15  jihad with the intent to inspire viewers to engage in violent jihad or to provide financial
16  assistance to those who did so.  Individuals in the United States who viewed these videos was
17  inspired at least in part by the videos to travel overseas to train for and engage in violent jihad
18  and related terrorist offenses.

19          f.      **AL-HUSSAYEN** sent numerous messages to the internet e-mail group.  For
20  example, on February 20, 2000, **AL-HUSSAYEN** sent a post to the internet e-mail group
21  forwarding materials titled "Virtues of Jihad" that glorified those who die in battle while
22  performing violent jihad.  The post explained that such people have their own place in heaven
23  close to Allah, and that the problem with Islam today is that Muslims have given up on violent
24  jihad and are not practicing it enough.

25          g.      Defendant, together with co-conspirators known and unknown to the Grand
26  Jury, sought to conceal their participation in the broadcast of an inflammatory lecture (by one
27

28                                              16

of the sheikhs described above) in which the sheikh urged listeners to participate in violent
jihad in Israel.  In particular, on or about January 19, 2003, **AL-HUSSAYEN** discussed with
another individual a plan to deny to authorities, if questioned, that they knew the nature of the
materials that they were broadcasting, and the way in which they could structure the broadcast
to permit them to make that denial.

**COUNT TWO**
**FALSE STATEMENT TO THE UNITED STATES**
**(Violation 18 U.S.C. 1001(a)(2) and 3238)**

The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set
forth in full herein.

On or about July 17, 1999, within and as the same pertains to the District of Idaho,
**SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the
Executive Branch of the United States Government, knowingly and willfully made a
materially false, fictitious and fraudulent statement and representation to authorities of the
United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in
the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a
student visa, signed and submitted an Immigration and Naturalization (INS) form I-20,
thereby knowingly and willfully representing to United States Government authorities that he
sought to enter into the United States for the sole purpose of pursuing a full course of study at
the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been,
was and would be engaged in activities other than his course of study at the University of
Idaho, including, but not limited to, his involvement with the Islamic Assembly of North
America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

17

**COUNT THREE**
**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3238)**

The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set forth in full herein.

On or about July 17, 1999, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238.

**COUNT FOUR**
**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3237)**

The previous numbered paragraphs 1 through 39, are hereby re-alleged as though set forth in full herein.

On or about August 11, 1999, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an

18

1     application and other document required by the immigration laws and regulations of the

2     United States, (2) knowingly presented such application and other document required by the

3     immigration laws and regulations of the United States which contained a materially false

4     statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and

5     claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented

6     to United States Government authorities a student visa procured by means of a false statement

7     and claim and other document containing such false statement and claim; in violation of Title

8     18, United States Code, Sections 1546(a) and 3237.

9

10                      **COUNT FIVE**
          **FALSE STATEMENT TO THE UNITED STATES**

11            **(Violation 18 U.S.C. 1001(a)(2) and 3238)**

12         The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set

13     forth in full herein.

14         On or about July 7, 2000, within and as the same pertains to the District of Idaho,

15     **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the

16     Executive Branch of the United States Government, knowingly and willfully made a

17     materially false, fictitious and fraudulent statement and representation to authorities of the

18     United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in

19     the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a

20     student visa, signed and submitted an Immigration and Naturalization (INS) form I-20,

21     thereby knowingly and willfully representing to United States Government authorities that he

22     sought to enter into the United States for the sole purpose of pursuing a full course of study at

23     the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been,

24     was and would be engaged in activities other than his course of study at the University of

25     Idaho, including, but not limited to, his involvement with the Islamic Assembly of North

26     America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

27

28                           19

1

2

**COUNT SIX**
**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3238)**

3   The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set

4   forth in full herein.

5   On or about July 7, 2000, within and as the same pertains to the District of Idaho,

6   **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and

7   subscribed as true to the United States a false statement with respect to a material fact in an

8   application and other document required by the immigration laws and regulations of the

9   United States and (2) knowingly presented such application and other document required by

10   the immigration laws and regulations of the United States which contained a materially false

11   statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student

12   visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby

13   knowingly and willfully representing to United States Government authorities that he sought

14   to enter into the United States for the sole purpose of pursuing a full course of study at the

15   University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was

16   and would be engaged in activities other than his course of study at the University of Idaho,

17   including, but not limited to, his involvement with the Islamic Assembly of North America;

18   in violation of Title 18, United States Code, Sections 1546(a) and 3238.

19

20

21

**COUNT SEVEN**
**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3237)**

22   The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set

23   forth in full herein.

24   On or about August 25, 2000, within and as the same pertains to the District of Idaho,

25   **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and

26   subscribed as true to the United States a false statement with respect to a material fact in an

27

28

1 | application and other document required by the immigration laws and regulations of the
2 | United States, (2) knowingly presented such application and other document required by the
3 | immigration laws and regulations of the United States which contained a materially false
4 | statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and
5 | claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented
6 | to United States Government authorities a student visa procured by means of a false statement
7 | and claim and other document containing such false statement and claim; in violation of Title
8 | 18, United States Code, Sections 1546(a) and 3237.

9 |

10 | **COUNT EIGHT**
**FALSE STATEMENT TO THE UNITED STATES**
11 | **(Violation 18 U.S.C. 1001(a)(2) and 3238)**
12 |

13 | The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set
14 | forth in full herein.

15 | On or about January 14, 2002, within and as the same pertains to the District of Idaho,
16 | **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the
17 | Executive Branch of the United States Government, knowingly and willfully made a
18 | materially false, fictitious and fraudulent statement and representation to authorities of the
19 | United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in
20 | the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a
21 | student visa, signed and submitted Department of State (DOS) form DS-156 and form DS-
22 | 157, thereby knowingly and wilfully failing and refusing to inform United States Government
23 | authorities of his involvement with the Islamic Assembly of North America and other entities;
24 | in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

25 |
26 |
27 |
28 | 21

1

2

### COUNT NINE
### VISA FRAUD
### (Violation 18 U.S.C. 1546(a) and 3238)

3     The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set

4 forth in full herein.

5     On or about January 14, 2002, within and as the same pertains to the District of Idaho,

6 **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and

7 subscribed as true to the United States a false statement with respect to a material fact in an

8 application and other document required by the immigration laws and regulations of the

9 United States and (2) knowingly presented such application and other document required by

10 the immigration laws and regulations of the United States which contained a materially false

11 statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student

12 visa, signed and submitted Department of State (DOS) form DS-156 and form DS-157,

13 thereby knowingly and wilfully failing and refusing to inform United States Government

14 authorities of his involvement with the Islamic Assembly of North America and other entities;

15 in violation of Title 18, United States Code, Sections 1546(a) and 3238.

16

17

18

### COUNT TEN
### FALSE STATEMENT TO THE UNITED STATES
### (Violation 18 U.S.C. 1001(a)(2) and 3238)

19     The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set

20 forth in full herein.

21     On or about April 6, 2002, within and as the same pertains to the District of Idaho,

22 **SAMI OMAR AL-HUSSAYEN**, Defendant herein, in a matter within the jurisdiction of the

23 Executive Branch of the United States Government, knowingly and willfully made a

24 materially false, fictitious and fraudulent statement and representation to authorities of the

25 United States in relation to **SAMI OMAR AL-HUSSAYEN's** status as a foreign student in

26 the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a

27

28

1 | student visa, signed and submitted an Immigration and Naturalization (INS) form I-20,
2 | thereby knowingly and willfully representing to United States Government authorities that he
3 | sought to enter into the United States for the sole purpose of pursuing a full course of study at
4 | the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been,
5 | was and would be engaged in activities other than his course of study at the University of
6 | Idaho, including, but not limited to, his involvement with the Islamic Assembly of North
7 | America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

**COUNT ELEVEN**
**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3238)**

The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set forth in full herein.

On or about April 6, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) form I-20, thereby knowingly and willfully representing to United States Government authorities that he sought to enter into the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238.

23

### COUNT TWELVE
### VISA FRAUD
### (Violation 18 U.S.C. 1546(a) and 3237)

The previous numbered paragraphs 1 through 39 are hereby re-alleged as though set forth in full herein.

On or about May 9, 2002, within and as the same pertains to the District of Idaho, **SAMI OMAR AL-HUSSAYEN**, Defendant herein, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false statement and claim and other document containing such false statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237.

Dated this _8th_ day of January, 2004.

A TRUE BILL

_Kristine J. Crawford_
FOREPERSON

THOMAS E. MOSS
UNITED STATES ATTORNEY

_[signature]_
KIM R. LINDQUIST
Assistant United States Attorney

_[signature]_
TERRY L. DERDEN
First Assistant United States Attorney
Chief, Criminal Section

_[signature]_
DAVID B. DEITCH
Trial Attorney