UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001          03 MDL 1570 (RCC)

------------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

**THOMAS E. BURNETT, SR., ET AL. VS. AL BARAKA**
**INVESTMENT AND DEVELOPMENT CORP., ET AL.**
**03 CV 9849 (RCC); 03 CV 5738 (RCC)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTION OF ABDULRAHMAN BIN MAHFOUZ TO**
**DISMISS THE CLAIMS AGAINST HIM**

May 14, 2004

# TABLE OF CONTENTS

*Page*

I.   INTRODUCTION...............................................................................................................1

II.  SERVICE OF PROCESS WAS EFFECTIVE ON BIN MAHFOUZ...........................1

III. THIS COURT HAS PERSONAL JURISDICTION OVER BIN MAHFOUZ............4

IV.  PLAINTIFFS MAKE SUFFICIENT ALLEGATIONS AGAINST BIN
     MAHFOUZ.....................................................................................................................8

     A.  PLAINTIFFS ADEQUATELY ALLEGE CAUSATION REGARDING ALL
         CLAIMS ...................................................................................................................8

     B.  PRINCIPLES OF CORPORATE LAW DO NOT PROTECT BIN MAHFOUZ .................13

     C.  BIN MAHFOUZ'S FIRST AMENDMENT ARGUMENT FAILS.....................................14

     D.  BIN MAHFOUZ IS NOT ENTITLED TO THE PROTECTION OF THE
         VOLUNTEER PROTECTION ACT ............................................................................14

     E.  THE COMPLAINT STATES A CLAIM AGAINST BIN MAHFOUZ UNDER THE
         ANTI-TERRORISM ACT .........................................................................................15

     F.  THE COMPLAINT STATES A CLAIM AGAINST BIN MAHFOUZ UNDER THE
         ALIEN TORT CLAIMS ACT ....................................................................................16

         1.  *Non-state actors who engage in terrorist acts, crimes against
             humanity, and other egregious acts commit torts in violation of
             customary international law, the law of nations, and the ATCA.*...........17

         2.  *The attacks of September 11th and the material support of those
             terrorist acts violate customary international law, the law of
             nations and constitute grossly egregious misconduct.*.............................18

         3.  *Plaintiffs have alleged facts sufficient to state a claim under the
             ATCA.* ..................................................................................................20

     G.  THE COMPLAINT ADEQUATELY ALLEGES COMMON LAW CLAIMS ...................21

V.   CONCLUSION ..........................................................................................................23

## TABLE OF AUTHORITIES

*Page*

# Cases

*Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) .................................................................. 25

*American Land Co. v. Zeiss*, 219 U.S. 47 ....................................................................................... 3

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 22 n.5 (D.D.C. 2000), *aff,* 35 Fed. Appx. 1, U.S. App. LEXIS 7311 (2002) .......................................................................................................... 19

*Barrueto v. Larios*, 205 F. Supp. 2d 1325 (S.D. Fla. 2002) ........................................................ 25

*Billy v. Consol Machine Corp.*, 432 N.Y.S 2d. 879 (N.Y. 1980) ................................................ 16

*Blinn v. Nelson*, 222 U.S. 1 .............................................................................................................. 3

*Boim v. Quranic Literacy Institute, et al.,* 291 F.3d 1000 (7th Cir. 2002) ........................... passim

*Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................... 6

*Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886 (1961) .............. 5

*Calder v. Jones*, 465 U.S. 783 (1984) ......................................................................................... 5, 6

*Chiminya Tachiiona v. Mugabo*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002) ..................................... 19

*Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000) ................................................................... 7, 8

*Doe v. Islamic Salvation Front (FIS)*, 993 F. Supp. 3 (D.D.C. 1998) ....................... 19, 20, 21, 22

*Doe v. Islamic Salvation Front*, 2003 WL 1740436 (D.D.C. Mar. 31, 2003) ....................... 20, 21

*F.D.I.C. v. McSweeney*, 976 F.2d 532m, 538 n.7 (9th Cir. 1992), *cert denied*, 508 U.S. 950, 113 S. Ct. 2440, 124 L. Ed. 2d 658 (1993) ...................................................................... 27

*Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980) ............................................................ 19, 21

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) ....................................... 6, 11

*Goodrich v. Ferris*, 214 U.S. 71 ..................................................................................................... 3

*Grannis v. Ordean*, 234 U.S. 385 (1914) ........................................................................................ 3

*Halberstam v. Welch*, 705 F.2d 472, 483-485 (D.C. Cir. 1973) ...................................... 13, 14, 15

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ........................................................... 25

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ........................................... 11

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................... 4

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ................................................................ 20, 21, 24

*Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920) ..................................................................... 27

*Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 2002 WL 851751 (N.D. Ga. Apr. 29, 2002) ......................................................................................................................................... 25

*Milliken v. Meyer*, 311 U.S. 457 ........................................................................................... 3

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950) ........................................... 2, 3

*Palestine Information Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988)........................... 6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 2003 WL 1339181 (S.D.N.Y.)..... 23, 25

*Priest v. Las Vegas*, 232 U.S. 604 ..................................................................................... 3

*Resolution Trust Corp. v. Hess*, 820 F. Supp. 1359 (D. Utah 1993) .......................... 27

*Roller v. Holly*, 176 U.S. 398 ............................................................................................. 3

*S.E.C. v. Tome*, 833 F.2d 1086, 1089 (2nd Cir. 1987) ............................................... 2, 3

*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001)................................................................. 17

*Smith, et al., vs. The Islamic Emirate of Afghanistan, et al.*, 2003 WL 21027170
(S.D.N.Y.) ....................................................................................................................... 21

*Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774 (D.C. Cir. 1984) ........................ 20, 21

*Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F. Supp. 1054 (W.D. Pa. 1990) ........... 15

*Zubik v. Zubik*, 384 F. 2d. 267 (3d. Cir. 1967) *cert. denied,* 390 U.S. 988, 88 S. Ct. 1183,
19 L.E.2d 1291 (1968).................................................................................................. 16

## Other Authorities

45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE,
§ 1351, at 253-59 (2d ed. 1990)......................................................................................8

*Federal Statutes in State Negligence Per Se Actions*, 13 Whittier L. Rev. 831 (1993)................26

Hearing Before the Sub-Committee on Courts and Administrative Practice, Senate
Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991).............................8

S. Rep. 102-342 at 122.......................................................................................................10

## United States Code

18 U.S.C. § 2331.....................................................................................................14, 17

18 U.S.C. § 2333.................................................................................................... passim

18 U.S.C. § 2333(a) ...............................................................................................10

18 U.S.C. § 2339A...............................................................................................13, 17, 18

18 U.S.C. § 2339B ................................................................................................ passim

28 U.S.C. § 1350.....................................................................................................19

42 U.S.C § 14501.....................................................................................................16

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12 .................................................................................................9, 11

Fed. R. Civ. P. 12(b)(2) ...............................................................................................1

Fed. R. Civ. P. 12(b)(5) ...............................................................................................1

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 20

Fed. R. Civ. P. 12(e) ...............................................................................................1, 9

**International Law and Conventions**

Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. TREATY
   DOC. NO. 106-6, at 4, 37 I.L.M. 249, 253 ...............................................................22

Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16, 1970,
   22 U.S.T. 1641 ..................................................................................................22

International Convention for the Suppression of the Financing of Terrorism, G.A. Res.
   54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999) ................................22

Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil
   Aviation, Sept. 23, 1971, 24 U.S.T. 565 ...................................................................22

Tokyo Convention on Offences and Certain Other Acts Committed on Board Aircraft,
   Sept. 14, 1963, 704 U.N.T.S. 219 ............................................................................22

U.N. Security Council Resolution 1373 (September 28, 2001) .......................................21

**Restatements**

Rest. 2d of Torts § 288 B (1) ......................................................................................26

The Restatement (Second) of Torts § 285 (1965) .........................................................26

## I.    INTRODUCTION

The Defendant, Abdulrahman Bin Mahfouz (D82) (hereinafter "Bin Mahfouz"), urges the Court to dismiss the Plaintiffs Third Amended Complaint (hereinafter "TAC"), pursuant to Federal Rule of Civil Procedure 12(b)(2), (b)(5), and (b)(6).   The Court should deny Bin Mahfouz's Motion to Dismiss because 1) service of process was demonstrably effective in this matter; 2) the Court has personal jurisdiction over Bin Mahfouz because he supported al Qaeda, whose terrorist activities were targeted at the United States; and, 3) Plaintiffs have made sufficient allegations against Bin Mahfouz, in the form of general allegations made as to all Defendants, to apprise him of the claims against him.   If Bin Mahfouz had thought the allegations against him were deficient, he should have filed a motion pursuant to Fed. R. Civ. P. 12(e) for a more definite statement.  He chose not to.  Nevertheless, Plaintiffs provide allegations in the Complaint and additional specifics as to jurisdiction in this brief that, despite his protestations to the contrary, Bin Mahfouz provided material support to al Qaeda, which in turn resulted in the attacks on September 11, 2001.  Bin Mahfouz's motion should be denied.

## II.    SERVICE OF PROCESS WAS EFFECTIVE ON BIN MAHFOUZ

Plaintiffs requested leave to serve by publication any Defendants in the Gulf States region, which included Defendants located in Saudi Arabia, Sudan and United Arab Emirates, Transferor Docket No. 95 ¶ 3.  The motion set out the *necessity* of such service based on the Affidavit of Nelson Tucker, Plaintiffs' process server.  The Court, by granting the Plaintiffs' motion on March 25, 2003, indicated that it was appropriate for the Plaintiffs to attempt to serve such geographically located Defendants by publication.   Among those to be served by publication was Bin Mahfouz, who lives in Saudi Arabia.   Plaintiffs properly served Bin Mahfouz by publication, in compliance with the Court's Order of March 25, 2003.

The argument raised by Bin Mahfouz is that the notice published was not reasonably calculated to advise him of this lawsuit.  It is hard to credibly argue that one has not received notice of a lawsuit, when one has retained counsel, appeared and filed a motion to dismiss.  Nevertheless, Bin Mahfouz argues that the notice in the *International Herald Tribune*, which is published in English, does not have wide circulation in Saudi Arabia.  He also posits that the *Al-Quds Al-Arabi* notice, which is published in Arabic, is not distributed in Saudi Arabia, and thus, provides no notice of the instant lawsuit.

The Second Circuit stated the following in *S.E.C. v. Tome*, 833 F.2d 1086, 1089 (2nd Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

In addition, as Justice Jackson stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).  The question before the Court is whether publication in the *International Herald Tribune* and *Al-Quds Al-Arabi* was "reasonably calculated" to notify Bin Mahfouz of the suit against him.  Bin Mahfouz's appearance in this case demonstrates that service by publication was adequate.

The Second Circuit stated in *Tome*: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*."  *Tome*, 833 F.2d at 1089.  In this instance there is constructive notice, because Bin Mahfouz has appeared to defend this action.  As the Supreme Court stated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law

2

is the opportunity to be heard."   The record in this matter establishes that Bin Mahfouz did receive notice of the suit, understood that he had to hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss.   This demonstrates the adequacy of the notice by publication.  Justice Jackson succinctly summed up this matter when he wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Milliken v. Meyer*, 311 U.S. 457; *Grannis v. Ordean*, 234 U.S. 385; *Priest v. Las Vegas*, 232 U.S. 604; *Roller v. Holly*, 176 U.S. 398.  The notice must be of such nature as reasonable to convey the required information, *Grannis v. Ordean*, *supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly*, *supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71.  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.  'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'  *American Land Co. v. Zeiss*, 219 U.S. 47, 67; and *see Blinn v. Nelson*, 222 U.S. 1, 7.

*Mullane*, 399 U.S. at 314-15.

By its March 25, 2003 Order, the transferor Court agreed that publication in these periodicals was necessary and appropriate.  Historically, *Al-Quds Al-Arabi* has published several fatwas by Osama bin Laden and he has, therefore, reasonably calculated it can reach his supporters, regardless of where they live.  Similarly, *International Herald Tribune* is distributed in the world community, of which Bin Mahfouz and his business interests are a part.  Notice by publication is designed to impart information about a lawsuit.  However, there is nothing that requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice.  Without question, the notice in this case accomplished the goal of informing Bin Mahfouz of the instant action.

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER BIN MAHFOUZ

Bin Mahfouz also contends that this Court lacks personal jurisdiction over him. However, a federal court may exercise personal jurisdiction over a non-resident defendant when: (1) the defendant is amenable to service of process pursuant to a statute or rule of court that authorizes such an exercise; and, (2) such an exercise is consistent with due process of law. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Service of process on Bin Mahfouz was demonstrably adequate, as discussed above. Similarly, the evidence shows that an exercise of jurisdiction by this Court would be consistent with due process of law because the TAC alleges Bin Mahfouz purposely directed his actions at residents of the United States when he financed Al Qaeda, whose stated purpose was targeting Americans. As the transferor Court held, the relevant "minimum contacts" as referenced in *International Shoe* are with the United States. Memorandum Opinion of November 14, 2003, Docket No. 392. The standard for determining whether a defendant has sufficient contacts with the forum is not a rigid one, nor can it be applied without reference to the nature of the underlying claims against the defendant. As the Supreme Court has explained, "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 (1961).

In the context of an intentional tort claim, the Supreme Court has held that intentional conduct calculated to cause injury in the forum satisfies the due process requirements for jurisdiction, even if *none* of the defendant's conduct took place in the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984). The *Calder* Court went on to distinguish the intentional tort, of which defendants were accused, from allegations of "untargeted negligence." 465 U.S. at 789. Recognizing that the mere foreseeability of an effect in the forum state is insufficient to satisfy

the demands of due process, the Court held that jurisdiction was warranted because the defendants' intentional, and allegedly tortuous, actions were "expressly aimed at California."  *Id*. Because they knew that plaintiff would suffer injury in the state in which she lived and worked, the Court held that defendants should "reasonably anticipate being haled into court there to answer for the truth of the statements made in their article."  *Id*. at 790.  Thus, the Court concluded:  "An individual injured in California need not go to Florida to seek redress from person who, though remaining in Florida, knowingly caused the injury to California."  *Id*.

Like the defendants in *Calder*, Bin Mahfouz is accused of intentionally tortuous acts. Just as the *Calder* defendants knew that plaintiff there would suffer her injury in California, here, plaintiffs and their deceased loved ones were targeted because they were in America.  Residence and the site of injury in *Calder* or the instant matter are not merely incidental.

In addition, the Supreme Court has stated that "reasonableness considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 483-84 (1985).   Policy considerations may play a part in determining what due process is in a particular situation.  *See Palestine Information Office v. Shultz*, 853 F.2d 932, 942 (D.C. Cir. 1988); *see also Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 22-23 (D.D.C. 1998).  If ever a case called for recognition of the policy considerations that determine what process is due, it is this one.

In *Burger King*, the Supreme Court held that the requirements of due process were satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (citations omitted).  Here, Plaintiffs allege that Bin Mahfouz and others

5

knowingly provided material support to terrorism targeted against the United States, by providing funds for that purpose to al Qaeda and organizations which funneled money to al Qaeda.  TAC Introduction, pp. 207-208, 212-213, 217-218; ¶¶ 7-11, ¶ 18, ¶ 21, ¶¶ 24-26, ¶¶ 27-30, ¶ 33, ¶¶ 54-56, ¶ 71, ¶¶ 117-121, ¶ 131, ¶ 148, ¶ 150, ¶¶154-155, ¶ 156, ¶ 158, ¶ 166, ¶ 168, ¶¶ 172-173, ¶¶ 180-181, ¶¶ 186-187, ¶¶ 190-193, ¶ 196, ¶ 199, ¶¶ 201-208, ¶¶ 222-228, ¶ 234, ¶ 236, ¶ 240, ¶ 242, ¶¶244-248, ¶ 255, ¶¶ 266-267, ¶ 270, ¶ 277, ¶¶ 282-283, ¶ 285, ¶¶ 288-289, ¶ 296, ¶ 298, ¶ 299, ¶ 305, ¶ 308, ¶ 332, ¶ 334, ¶¶ 340-342, ¶¶ 346-350, ¶ 359, ¶ 372, ¶ 381, ¶ 384, ¶ 387, ¶ 428, ¶¶ 431-432, ¶¶464-465, ¶ 468, ¶¶ 470-473, ¶ 486, ¶ 498, ¶ 515, ¶ 517, ¶¶ 530-531, ¶¶ 534-535, ¶ 538, ¶ 542, ¶¶ 548-549, ¶ 553, ¶¶ 562-563, ¶ 565, ¶ 577, ¶¶ 579-581, ¶ 585, ¶ 599, ¶ 605, ¶ 612, ¶ 625, ¶ 628, ¶ 650, ¶ 684, ¶ 686.  As alleged in the TAC, al Qaeda specifically targeted civilians in the United States, proclaiming that, "America is a state at war with us" and noting that "killing of women and the old and children of the war states . . . is permissible . . . ." TAC at p. 207.  Thus, al Qaeda made no secret of the fact that its intended target was citizens and residents of the United States.  At the heart of Plaintiffs' TAC, then, is the allegation that Bin Mahfouz and others, "purposefully directed" activities at the United States by funding those whose "activities" included killing innocent people for no reason other than that they were Americans.

Indeed, given al Qaeda's explicit direction of terrorist activities at the United States, as alleged in Plaintiffs' Complaint, it can hardly be said that Bin Mahfouz had no warning that he might be answerable in United States court for his conduct in supporting these acts.  In *Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000), the Court found that state sponsors of terrorism were provided sufficient warning of the seriousness with which the United States views terrorist attacks against Americans, that it was reasonable for them to held accountable for such acts in

the courts of the United States.  Accordingly, the Court found that the assertion of personal jurisdiction did not offend "traditional notions of fair play and substantial justice" and that defendant's targeting of Americans provided a sufficient nexus with the United States to satisfy due process concerns.  *Id*. at 54.  This case is precisely analogous to *Daliberti*.

In addition, while enacting the Anti-Terrorism Act of 1990 (hereinafter "ATA"), which Plaintiffs invoke, the Congress sought to lessen jurisdictional issues, such as those presented in the instant case.  The ATA "removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation."  Anti-Terrorism Act of 1990, Hearing Before the Sub-Committee on Courts and Administrative Practice, Senate Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991).

In addition, Bin Mahfouz has many business interests which include extensive dealings with American corporations, or corporations which do extensive business in the United States.  Specifically, he is a shareholder in Hybridon, Inc., located in Cambridge, Massachusetts, and in Washington D.C. based World Space Corporation.  Additionally, Bin Mahfouz's company, Al Murjan, has extensive dealings with American phone company Hughes Technologies, Inc.  Additionally, as a member on the board of NCB, until recently, Bin Mahfouz had contact with SNCB Securities, Inc., located in New York.  This evidence provides an additional basis that Bin Mahfouz has contacts with the United States or directs others under his control to have contacts in this country.[1]

---

[1] If the Court determines that Plaintiffs' allegations are not enough to establish personal jurisdiction, then Plaintiffs seek leave to conduct discovery to determine the extent to which Bin Mahfouz handles the administration and direction of his company's activities in the United States and his personal contacts with the United States.  A motion requesting same is being filed concurrently with this brief.  "[A] district court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable a party to conduct discovery.  45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, at 253-59 (2d ed. 1990).

## IV.   PLAINTIFFS MAKE SUFFICIENT ALLEGATIONS AGAINST BIN MAHFOUZ

If Bin Mahfouz wanted additional information about the allegations against him, then a motion for more definite statement, pursuant to Fed. R. Civ. P. 12(e), would have been appropriate.  Memorandum Opinion, Docket No. 224, July 25, 2003, transferee Court Case Management Order No. 1.  However, the Complaint provides allegations directed against all Defendants collectively stating that all defendants participated in a conspiracy to support al Qaeda and its stated goals.  TAC Introduction, pp. 199-200, 203-206, 217-218; ¶ 89, ¶¶ 631-634. Thus, the TAC makes many general allegations common to all named defendants, including Bin Mahfouz, and is therefore sufficient under Rule 12.  Additionally, while serving as a member of the board and Vice Chairman of the Executive Management Committee of NCB, Bin Mahfouz became trustee of the Muwafaq ("Blessed Relief") Foundation in Sudan.  In a recent interview in Forbes Global, March 18, 2002, entitled, "Sins of the Father?" Bin Mahfouz stated that Blessed Relief was the "brainchild" of his father, Khalid Bin Salim Bin Mahfhouz (D81).  Blessed Relief's other founder is Yasin al Qadi, who the United States Treasury Department states is an al Qaeda financier.  Blessed Relief and Al Qadi were both designated as Specially Designated Global Terrorists ("SDGT") by the Treasury Department in late 2001.  Bin Mahfouz was actively involved in an entity designated SDGT, that funded al Qaeda.

### A.   Plaintiffs Adequately Allege Causation Regarding All Claims

Responsibility for international terrorism rests not only with those who pull the trigger or plant the bomb or man the airplanes, but, with those who facilitated those events through financial or other material means.  *Boim v. Quranic Literacy Institute*, *et al.,* 291 F.3d 1000 (7th Cir. 2002).  Congress' rationale as to the extent of liability under the ATA is directly related to the issue of proximate causation.  "The Senate Report on Section 2333(a) emphasized that, *by imposing liability along the causal chain of terrorism, it would interrupt or at least imperil, the*

*flow of money."*   Senate Report on Section 2333(a), S. Rep. 102-342 at 122 (emphasis added),

cited in *Boim*, 291 F. 3d at 1011.  Plaintiffs adequately allege causation under the ATA and the

other legal theories pled.

In *Boim*, the Seventh Circuit found there would not be a trigger to pull or a bomb to blow

up without the resources to acquire such tools of terrorism and to bankroll the persons who

actually commit the violence.  *Id.* at 1021.  "The only way to imperil the flow of money and

discourage the financing of terrorist acts is to impose liability on those who knowingly and

intentionally supply the funds to the persons who commit the violent acts."  *Id.*  As herein, in

*Boim*, "(t)he defendants repeatedly confuse what must be alleged with what must be proved.

**The plaintiffs need not set out in detail all of the facts on which they base their claim**."  *Id.*

at 1025 (emphasis supplied).   Ultimately, Plaintiffs must show that Bin Mahfouz knew of al

Qaeda's illegal activities, that he desired to help those activities succeed, and he engaged in some

act to help the illegal activities.  *Id.*  at 1023.

The *Boim* Court found that plaintiffs' general accusations such as:  defendants were

engaged in raising and laundering money for [the terrorist organization]; defendants raised and

channeled funds to the terrorist organization to finance terrorist activity; and, the victim was

attacked by the terrorists, were sufficient allegations for Rule 12 purposes.  The Court held that

**"plaintiffs need not set out in detail all of the facts upon which they base their claim.  They**

**need only give Defendants fair notice of what their claim is and the grounds upon which it**

**rests."**  *Id.* at 1024 (emphasis supplied).  In stating a claim, a plaintiff need not establish that the

material support or resources provided by the defendant contributed directly to the act from

which his claim arose  . . . sponsorship of a terrorist group which causes the personal injury of a

United States national alone is sufficient.  *Flatow*, 999 F. Supp. at 17.  The Plaintiffs allegations herein meet this standard.

Similarly, the Ninth Circuit held in *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000), that the knowing provision of "material support" to a designated terrorist entity violates 18 U.S.C. § 2339B, regardless of whether the donor intended to support the terrorist activities of the group and regardless of whether the particular dollars provided to the organization can be traced to the resulting acts of terrorism.  The Ninth Circuit explained:

> [A]ll material support given to such organizations aids their unlawful goals. Indeed, as the government points out, terrorist organizations do not maintain open books.  Therefore, when someone makes a donation to them, there is no way to tell how the donation is used.  Further . . . even contributions earmarked for peaceful purposes can be used to give aid to the families of those killed while carrying out terrorist acts, thus making the decision to engage in terrorism more attractive.  More fundamentally, money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts.

*Id*.  Far from requiring direct participation in a particular terrorist act, then, § 2339B does not even require support for, or agreement with, the violent portion of a terrorist group's agenda; rather, the statute recognizes that even the provision of "humanitarian" support to such a group inevitably redounds to the benefit of the group's terrorist purposes.[2] [3]

The indirect versus direct component of the casual analysis in the context of terrorism was recently examined by the United States Congress.  In June 2002, Congress further

---

[2] That direct participation is not a requirement is further made clear in § 2339C, which makes it a crime knowingly to provide funds for terrorist acts and further provides that "[f]or an act to constitute an offense set forth in this subsection, it shall not be necessarily that the funds were actually used to carry out a predicate act."  18 U.S.C. § 2339C(a)(3).

[3] As noted above, the Seventh Circuit in *Boim* held that § 2333 incorporates the standards of § 2339B because it would make no sense to conclude, "that Congress imposed criminal liability . . . on those who financed terrorism, but did not intend to impose civil liability on those same persons. . ." 291 F.3d at 1014.

strengthened anti-terrorism law by enacting 18 U.S.C. § 2339C "Prohibitions Against the Financing of Terrorism."  This Act provides:

    (a)    OFFENSES

    (1)    IN GENERAL.— Whoever, in a circumstance described in subsection (c), by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the intention that such funds be used, or with the knowledge that such funds are to used, in full or in part, in order to carry out [terrorism] –

    (A)    an act which constitutes an offense within the scope of a treaty specified in subsection (e)(7), as implemented by the United States, or

    (B)    any other act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act.

    (3)    RELATIONSHIP TO PREDICATE ACT.—For an act to constitute an offense set forth in this subsection, *it shall not be necessary that the funds were actually used to carry out a predicate act.*

    (e)    DEFINITIONS

    (6)    The term predicate act means any act referred to in subparagraph (A) of subsection (a) (1).  (18 USC § 2339C (e)).

International Convention for the Suppression of Terrorist Bombings, Section 202, Terrorism Financing Statute, enacting § 2339 C, Prohibitions Against The Financing of Terrorism, (emphasis supplied).  Under *Boim*, 18 U.S.C. 2339 A & B were used to discern Congressional intent regarding what constitutes material support of international terrorism, although the terrorist group, HAMAS, was not designated as a terrorist entity until 1997.  *Boim,* 291 F.3d at 1016.  The 7th Circuit held:  "No timing problem arises because sections 2339 A and 2339 B merely elucidate conduct that was already prohibited by section 2333."  *Id.*  The same rationale applies for 18 U.S.C. § 2339 C.

"The statute clearly is meant to reach beyond those persons who themselves commit the violent act that directly causes the injury." *Id.* at 1011.  In making that point even more clear by enacting 2339C, Congress further refined the causal chain analysis for causation purposes. Defendant does not have to participate in or even know about, the *specific* bad act that ultimately harms the victim.  Defendant need only assist the terrorist group knowing that the assistance would lead to wrongful and harmful acts.  *See also Halberstam v. Welch*, 705 F.2d 472, 483-485 (D.C. Cir. 1973).  Even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability under section 2333.  *Boim,* 291 F. 3d at 1015.

The *Boim* court directs at least two ways that a plaintiff could allege an adequate causal connection:  through the criminal provisions of the anti-terrorism act (material support) or the traditional common law doctrine of aiding and abetting.  In this case, plaintiffs' allegations are sufficient under either of these approaches.  The *Boim* court held that if a defendant's conduct rose to the level of criminality as proscribed under the ATA, that is enough to create civil liability.  *Id.* at 1010, 1015.  As the Seventh Circuit noted in *Boim* "the legislative history of sections 2331 and 2333 in combination with the language of the statute itself, evidence an intent by Congress to codify general common law tort principles and to extend civil liability to the full reaches of traditional tort law." *Id.* at 1010.

*Boim* was also clear that tort principles of "aiding and abetting" imposed broader liability than the criminal provisions of the ATA and that the level of causation required for a criminal violation is not necessary to make out a claim under § 2333.  *Id.* at 1015.  Under traditional tort law theories of aiding and abetting, it is not necessary that the defendant assist directly in the primary violation, or even know that the perpetrator intends to commit it.  As the D.C. Circuit has explained:

It was not necessary that Hamilton knew specifically that Welch was committing burglaries. Rather, when she assisted him, it was enough that she knew he was involved in some type of personal property crime at night – whether as a fence, burglar, or armed robber made no difference – because violence and killing is a foreseeable risk in any of these enterprises.

*Halberstam,* 705 F.2d at 489.

Substituting the situation of this case into the framework of *Halberstam*, it is not necessary for Plaintiffs to allege or prove that Bin Mahfouz knew specifically that al Qaeda was going to commit the precise atrocities of September 11th. Rather, when Bin Mahfouz and other Defendants provided funds or other material support to al Qaeda, it was enough that they knew it was involved in terrorist activity purposefully directed at the United States.

The Plaintiffs' allegations about the Defendants' material support of al Qaeda, which targets the United States, satisfies the proximate cause analysis. Plaintiffs also maintain aiding and abetting and conspiracy claims under 18 U.S.C. § 2333 against Defendants, including Bin Mahfouz. An aiding and abetting claim will require the Plaintiffs to prove that [the donees] knew about [the terrorist organization's] illegal operations and provided aid to [the terrorist organizations] with the intent to facilitate those illegal activities. *Boim*, 291 F.3d at 1024. That is precisely what the Plaintiffs allege. TAC Introduction, pp. 199-200, 203-206, 217-218; ¶ 89, ¶¶ 631-634.

### B.      Principles of Corporate Law do not Protect Bin Mahfouz

Bin Mahfouz correctly argues that corporations are separate and distinct from shareholders, for the purposes of liability. This may be true for legitimate corporations. Blessed Relief, in which Bin Mahfouz was an officer, is not entitled to the normal protection of corporate law, because it is a Specially Designated Global Terrorist entity. "The corporate veil is pierced only when 'the corporation was an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries.'" *Wheeling-Pittsburgh Steel Corp. v.*

13

*Intersteel, Inc.*, 758 F. Supp. 1054, 1058 (W.D. Pa. 1990) (citing *Zubik v. Zubik,* 384 F. 2d. 267 (3d. Cir. 1967) *cert. denied,* 390 U.S. 988, 88 S. Ct. 1183, 19 L.E.2d 1291 (1968).   Bin Mahfouz's interaction as an officer and director of an SDGT, does not allow him the protections set out in *Billy v. Consol Machine Corp.*, 432 N.Y.S 2d. 879, 886 (N.Y. 1980).   The allegation of the TAC is that Blessed Relief is not a legitimate corporation, but a terrorist financing and support front.  TAC ¶¶ 332 and 333.  This issue cannot be resolved on a motion to dismiss.

**C.**      **Bin Mahfouz's First Amendment Argument Fails**

Bin Mahfouz's argument that Plaintiffs claims are thwarted by the First Amendment to the United States Constitution lacks merit.   The Defendant admits that *Boim* upheld the constitutionality of the ATA.   Falling back from his initial line of defense, Bin Mahfouz then states that, "he has no fair notice of Plaintiffs claim." (p. 15).  This ignores the plain language of the allegations made against the Defendants.   Even a cursory consideration of the allegations concerning the network of interlocking donors, charities and other sponsors of al Qaeda demonstrates that Plaintiffs have adequately and reasonably alleged the Defendants' role in the sponsoring and financing al Qaeda, sufficient to apprise them of the nature of the claims.   The Complaint, as drafted, sufficiently puts Bin Mahfouz on notice of the nature of the claims against him.

**D.**      **Bin Mahfouz is not Entitled to the Protection of the Volunteer Protection Act**

By far, the most ludicrous argument advanced by Bin Mahfouz is that 42 U.S. C § 14501, the Volunteer Protection Act, shields him from civil liability for alleged acts of terrorism.  Blessed Relief is a Specially Designated Global Terrorist entity and the TAC specifically states that it funded al Qaeda.   TAC ¶¶ 332 and 333.   The *Boim* court made it clear that liability extends to individuals and organizations that raise money for terrorist organizations.  *Boim*, 291

F.3d at 1024.  Individuals, like Bin Mahfouz, voluntarily running an SDGT, are not shielded for their "good works."

E.     **The Complaint States a Claim Against Bin Mahfouz Under the Anti-Terrorism Act**

Bin Mahfouz also argues that the Plaintiffs failed to adequately allege that he knowingly or intentionally provided material support to terrorist activities sufficient to support a cause of action under the ATA, 18 U.S.C. § 2331 *et seq.*[4]  Bin Mahfouz protests his innocence, claiming he did not support the events of September 11th.  This argument is meritless and premature.

The ATA creates a private cause of action for injuries resulting from international terrorism.  18 U.S.C. § 2333.  There can be no doubt that the acts of September 11th were acts of "international terrorism" within the meaning of 18 U.S.C. § 2331 *et seq. See Smith,* 247 F. 3d 532, *supra*.  In *Boim*, the court recognized two theories on which a plaintiff can proceed.  *See Boim*, 291 F.3d at 1009.  First, the court concluded, a plaintiff may recover under § 2333 if the defendants violated 18 U.S.C. §§ 2339A and 2339B, which criminalize the provision of "material support or resources" to terrorists and foreign terrorist organizations, respectively.  *Id.* at 1012-14.[5]  Provision of such support gives rise to civil liability under § 2333 where the

---

[4] The statute provides in relevant part:  "Any national of the United States injured in his or her person, property, or business *by reason of* an act of international terrorism, or his or her estate, survivors, heirs, may sue therefore in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333.  (emphasis added)  The term "international terrorism" is defined to include "activities that – (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State . . . ."  18 U.S.C. § 2331(1).

[5] Section 2339A makes it unlawful to "provide[] material support or resources or conceal[] or disguise[] the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out . . ." a violation of criminal acts including, but not limited to murder, conspiracy to murder, destruction of aircraft, engaging in physical violence, and related criminal acts directly at issue in this matter.  18 U.S.C. § 2339A.  Section 2339B prohibits the knowing provision of "material support or resources to [] foreign terrorist organization[s]."  18 U.S.C. § 2339B. With respect to both sections, "material support or resources" is defined as: "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials."  18 U.S.C. § 2339A.  The term "material," as used within this statutory framework, "relates to the type of aid provided rather than whether it is substantial or considerable." *Boim*, 291 F.3d at 1015.

support was material -- that is, of the type that implies the element of knowing or intentional support. *Id.* at 1015.

The second theory of liability endorsed in *Boim* permits recovery where the defendants have aided and abetted an act of international terrorism. *Id.* at 1021. The court reasoned that "although the words 'aid and abet' do not appear in the statute, Congress purposely drafted the statute to extend liability to all points along the causal chain of terrorism." *Id.* at 1019-20. The court stated that the failure to impose aider and abettor liability on those who knowingly and intentionally funded acts of terrorism would thwart "*Congress' clearly expressed intent to cut off the flow of money to terrorists at every point along the causal chain of violence.*" *Id.* at 1021 (emphasis supplied).

Here, the Complaint adequately alleges that Bin Mahfouz and the other Defendants provided "material support or resources" and "aided and abetted" al Qaeda terrorists and that they did so "knowingly and intentionally, resulting in the causal chain of violence." TAC ¶ 267, ¶¶ 645-652. Indeed, the Introduction to the Complaint alleges as to all Defendants:

> Defendants knew or reasonably should have known they were providing material support to terrorists and terrorist organizations who committed the September 11, 2001 savagery that murdered thousands of innocent people. Defendants clearly knew or should have known, they were providing material support, aiding and abetting and enabling the terrorists that brutalized America and the world on September 11, 2001.

TAC, Introduction, p. 217.

### F.   The Complaint States a Claim Against Bin Mahfouz Under the Alien Tort Claims Act

Bin Mahfouz states that Plaintiffs fail to state a claim under the ATCA[6]  Bin Mahfouz

---

[6]  Count Four, which alleges claims under the Alien Tort Claims Act, is brought on behalf of "plaintiffs who are estates, survivors, and heirs of non-United States citizens . . . ." TAC at p. 385. The Alien Tort Claims Act provides for jurisdiction over claims (1) brought by aliens (2) alleging torts (3) committed in violation of the law of nations or a treaty of the United States. *Chiminya Tachiiona v. Mugabe*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002).

contends, as a private actor, he cannot be held liable for alleged violations of the "law of nations." Bin Mahfouz also claims that Plaintiffs fail to allege a violation of international law.[7] *Id*. This argument ignores the general allegations which apply to all Defendants, including Bin Mahfouz.

> 1.    **Non-state actors who engage in terrorist acts, crimes against humanity, and other egregious acts commit torts in violation of customary international law, the law of nations, and the ATCA.**

A recently affirmed case recognizes that "ATCA jurisdiction extends to private [non-state] parties for egregious acts of misconduct." *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 22 n.5 (D.D.C. 2000), *aff*, 35 Fed. Appx. 1, U.S. App. LEXIS 7311 (2002) (*per curiam*). In *Doe v. Islamic Salvation Front (FIS)*, the court concluded that it had subject matter jurisdiction over plaintiffs' ATCA claims, even though the defendant was not a state actor, because the violations of the law of nations alleged by the plaintiffs included egregious acts, such as crimes against humanity, war crimes, aircraft hijacking, summary execution, and other violations of international law. 993 F. Supp. 3 (D.D.C. 1998) ("*Doe I*"); *see also Doe v. Islamic Salvation Front*, 2003 WL 1740436 (D.D.C. Mar. 31, 2003) (acknowledging that hijacking a recognized violation of the law of nations) ("*Doe II*").[8]

In *Doe I*, the Court denied the Defendants' Rule 12(b)(6) motion to dismiss, and held:

1) ATCA should remain intact, despite enactment of Torture Victims' Protection Act, to permit suits based on other norms that already exist or may ripen into rules of international law;

---

[7]  The Alien Tort Claims Act provides federal jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATCA opens U.S. federal courts for adjudication of rights recognized by international law. *See Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980).

[8]  The Second Circuit likewise has concluded that plaintiffs are not barred from bringing suit under the ATCA merely because the defendants are private parties. In *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), the court held that ATCA claims could proceed against the Bosnian Serb leader Radovan Karadzic for genocide and war crimes irrespective of whether or not he qualified as a state actor. *Id*. at 241-44.

2) aircraft hijacking by a non-state actor violates law of nations and hence, the ATCA; 3) the D.C. Circuit decision in *Tel-Oren* no longer is "timely," and *Kadic* "addresses issues in the instant case more pointedly" than *Tel-Oren*; and, 4)  plaintiffs' claims alleging murder, rape, torture, and the like were sufficiently pleaded under ATCA  *Doe I*, 993 F.Supp. 3.  In *Doe II*, the Court held that aircraft hijacking by a non-state actor is a violation of law of nations and hence the ATCA, despite *Tel-Oren*.  2003 WL 1740436 (D.D.C. 2003).

The crucial question for ATCA purposes, therefore, is *not* whether Bin Mahfouz is a private or state actor, *defacto* or otherwise, but whether the type of action alleged amounts to a violation of the law of nations.  On this question, however, there can be little doubt that the attacks of September 11, 2001 do constitute both egregious misconduct and a violation of customary international law.  *Smith, et al., vs. The Islamic Emirate of Afghanistan, et al*., 2003 WL 21027170 (S.D.N.Y.)

2.    <strong>The attacks of September 11th and the material support of those terrorist acts violate customary international law, the law of nations and constitute grossly egregious misconduct.</strong>

As numerous courts have noted, the "law of nations, currently known as international customary law, is formed by the 'general assent of civilized nations.'" *Id.* at 7 (citing *Filartiga v. Pena-Irala*, 630 F.2d 876, 880 (2d Cir. 1980)).  Moreover, "courts must interpret international law under the ATCA as 'it has evolved and exists among the nations of the world today.'" *Islamic Salvation Front*, 993 F. Supp. at 8 (quoting *Karadzic*, 70 F.3d at 238).

There are at least three ways in which the murderous attacks of September 11, 2001 qualify as violations of customary international law and thus the law of nations.  The attacks were specific acts of terrorism that are universally condemned under international law.  *See* U.N. Security Council Resolution 1373 (September 28, 2001).  The perpetrators violated numerous pre-existing, widely ratified, international anti-terrorism conventions, including, but not limited

18

to:  the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16, 1970, 22 U.S.T. 1641; the Tokyo Convention on Offences and Certain Other Acts Committed on Board Aircraft, Sept. 14, 1963, 704 U.N.T.S. 219; and, the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, Sept. 23, 1971, 24 U.S.T. 565 (making aircraft hijacking and other offenses committed aboard aircraft international criminal offenses). The attacks also were a violation of the more recent International Convention for the Suppression of Terrorist Bombings.  See Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. TREATY DOC. NO. 106-6, at 4, 37 I.L.M. 249, 253.  Moreover, the financing of these acts is a serious crime under international law.  International Convention for the Suppression of the Financing of Terrorism, G.A. Res. 54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999).  Accordingly, such acts of terrorism – and the financing or material support of them – committed by private parties are actionable and can give rise to liability under the ATCA.  *See, e.g., Islamic Salvation Front*, 993 F. Supp. at 5 (describing "terrorist activities" alleged in complaint), 18 U.S.C. §§ 2333, 2339C.

The attacks of September 11, 2001 in addition to being violations of formal international law also represent behavior that manifestly assaults the very foundation of international law and civilized conduct.  The calculated devastation of September 11th is the very embodiment of the violation of the *jus cogens* norms.  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 2003 WL 1339181 (S.D.N.Y.).  Violations of *jus cogens* norms are violations *erga omnes*, or obligations owed to all.  *Id.*  These fundamental obligations owed between individuals and states, were ripped to shreds on September 11th through the perverse aid of the Defendants, including Bin Mahfouz.  The Court in the *Presbyterian Church of Sudan* stated as follows:

> The fact that they [piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and certain acts of terrorism] are treated differently under

> international law (by permitting states to exercise universal jurisdiction over these crimes, and by entailing individual responsibility) reflects the fact that these acts are offenses of universal concern by virtue of the "depths of depravity the conduct encompasses, the often countless toll of human suffering the misdeeds inflict upon their victims, and the consequential disruption of the domestic and international order they produce.  (citation omitted).

*Id*.  The Court in the above-referenced quote eloquently sets out that *jus cogens* violations are violations of a kind separate from other violations of international law.  *Id*.

The Court went on to state the extent of the reaction of civilization through the judicial process:

> In other words, states may exercise universal jurisdiction over acts committed in violation of *jus cogens* norms.  This universal jurisdiction extends not merely to criminal liability but may also extend to civil liability.  See *id*. at § 404 cmt. B.  In addition to triggering the potentially universal exercise of jurisdiction, *jus cogens* violations may entail not only state but individual responsibility.  For example, it is well-established in the post-World War II world that individuals may be held liable for acts of genocide, war crimes, or torture.  *See*, *e.g.*, *Kadic v. Karadzic*, 70 F.3d 232, 241-42 (2d Cir. 1995).

*Id*)  By any definition, based in an understanding of the rudiments of civilized conduct, the attacks of September 11th represent a peremptory violation of norms, or a violation of *jus cogens*.

### 3.    Plaintiffs have alleged facts sufficient to state a claim under the ATCA.

The alien Plaintiffs unquestionably have alleged facts sufficient to state a cause of action under the ATCA.  The Complaint describes in detail how the Islamic charitable system and donor/sponsors like Bin Mahfouz have been utilized to finance illegal al Qaeda activities targeted at the United States.  TAC Introduction, pp. 199-200, 203-205.  The Complaint also alleges that al Qaeda, in particular, has used the Islamic charity system to funnel money – and hatred – through Islamic charities, with the charities', and thus, the donor's, material support.  *Id*. at pp. 207-208.  Moreover, the Plaintiffs make allegations specific to Bin Mahfouz and other

Defendants alleging their active monetary sponsorship of al Qaeda sponsors.  TAC ¶¶ 261-267.

Moreover, to sufficiently allege an ATCA cause of action against Bin Mahfouz, the Plaintiffs need not allege, or prove, that Bin Mahfouz was directly involved in the terrorist attacks themselves.  Rather, it is sufficient for the Plaintiffs to allege, as they have, that Bin Mahfouz with other of the Defendants, conspired with or aided and abetted in a violation of the law of nations.  Indeed, many federal courts have recognized that ATCA liability can be based on conspiratorial relationships or theories of aiding and abetting.[9]

### G.    The Complaint Adequately Alleges Common Law Claims

With respect to plaintiffs' claims for wrongful death, aiding and abetting, survival, negligent and intentional infliction of emotional distress, conspiracy, and negligence, Bin Mahfouz's arguments are a variation on a single theme.  Ignoring the allegations of the TAC, about his knowing support of terrorism, Bin Mahfouz continues to insist that the TAC alleges that he did nothing.  Because the complaint alleges substantially more than that, it properly asserts these common law claims.

Bin Mahfouz posits that he had no duty of care to Plaintiffs.  However, this argument ignores the fact that Plaintiffs' Complaint alleges that Bin Mahfouz breached the duties encompassed in the norms of conduct found in international law.  Bin Mahfouz further argues that he was not involved in international terrorism or mass murder, and as such, Plaintiffs have not sufficiently alleged a negligence claim.  Bin Mahfouz is again mistaken.  Plaintiffs pled that

---

[9]   *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 776 (9th Cir. 1996) (affirming district court's jury instruction allowing foreign leader to be held liable upon finding that he "directed, ordered, conspired with, or aided the military in torture, summary execution, and 'disappearance'"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, No. 01 CIV 9882 (AGS), 2003 WL 1339181, at *46-47 (S.D.N.Y. Mar. 19, 2003) (collecting cases) ("U.S. courts have consistently permitted ATCA suits to proceed based on theories of conspiracy and aiding and abetting."); *Barrueto v. Larios*, 205 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2002) (holding ATCA liability can be based on allegations that defendants conspired or aided and abetted violations of the law of nations); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 2002 WL 851751, at *24-25 (N.D. Ga. Apr. 29, 2002) (holding defendant liable for aiding and abetting in acts that violate customary international law); and *Abebe-Jira v. Negewo*, 72 F.3d 844, 845-48

Bin Mahfouz was engaged in a conspiracy to provide funding to al Qaeda and that such funding was a proximate cause of Plaintiffs' damages.  These allegations constitute adequate notice of a claim for negligence.  The truth of these allegations must be determined at trial, not in the context of a motion to dismiss.

Plaintiffs have an additional basis for their negligence claims.  The TAC alleges that Bin Mahfouz violated the ATA and ATCA.  These statutes define the duty Bin Mahfouz owed to Plaintiffs.  Negligence *per se* is a concept that developed at common law and found its way into the jurisprudence of all of the states.  *Use of Federal Statutes in State Negligence Per Se Actions*, 13 Whittier L. Rev. 831 (1993).  Negligence *per se* establishes that statutes may be used to define the scope of duty owed by an actor to an individual who has been injured as a result of his conduct.  *Id.*

The Restatement (Second) of Torts § 285 (1965) states:

The standard of conduct of a reasonable man may be … (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, if its purpose is found to be exclusively or in part:

    (a)    to protect a class of persons which includes the ones whose interest is invaded, and
    (b)    to protect the particular interest which is invaded, and
    (c)    to protect that interest against the kind of harm which has resulted, and
    (d)    to protect that interest against the particular hazard from which the harm results.

The Restatement Second goes on to say: "The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself." Rest. 2d of Torts § 288 B (1).  This approach is well established.  On this subject, Judge Cardozo stated:

(11th Cir. 1996) (affirming verdict for torture and cruel, inhuman or degrading treatment where defendant supervised or

> We think the unexcused omission of the statutory signals is more than some evidence of negligence.  It is negligence in itself…  By the very terms of the hypothesis, to omit, willfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform.

*Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920).

Courts have held that negligence *per se* is a cognizable claim under federal common law.

*See Resolution Trust Corp. v. Hess*, 820 F. Supp. 1359 (D. Utah 1993); *F.D.I.C. v. McSweeney*, 976 F.2d 532m, 538 n.7 (9th Cir. 1992), *cert denied*, 508 U.S. 950, 113 S. Ct. 2440, 124 L. Ed. 2d 658 (1993).

Bin Mahfouz's argument concerning plaintiffs' claim for intentional and negligent infliction of emotional distress (Count Eight) continues in this same vein.  Bin Mahfouz argues that there is no allegation that he engaged in any outrageous and extreme conduct intended to cause severe emotional distress.  The defendant ignores the allegations of the TAC

## V.   CONCLUSION

Service of process on Bin Mahfouz was demonstrably adequate, as evidenced by his counsel's appearance and motion to dismiss on his behalf.  The Court has personal jurisdiction over Bin Mahfouz by virtue of the Plaintiffs' allegations that the illegal activities he engaged in or supported were purposefully targeted at the United States.   Moreover, the Complaint makes sufficient general allegations against Bin Mahfouz and the other Defendants to satisfy Rule 12. This Court should deny Bin Mahfouz's motion to dismiss in its entirety.

---

participated with others in "some of the acts of torture" against plaintiffs).

Dated: May 14, 2004                    Respectfully submitted,
       New York, NY


  /S/_____

Ronald L. Motley, Esq. (SC-4123)
Jodi Westbrook Flowers, Esq. (SC-66300)
Donald A. Migliori, Esq. (RI-4936; MA-567562;
   MN-0245951)
Michael E. Elsner, Esq. (NY & VA-ME8337)
William H. Narwold, Esq. (NY-WN1713)
Ingrid L. Moll, Esq. (CT-21866 & NY-IM3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Elizabeth Smith, Esq.
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000


William N. Riley, Esq. (IN - 4941-49)
Amy Ficklin DeBrota, Esq. (IN - 17294-49)
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240
Telephone:  (317) 848-7939


Jayne Conroy, Esq. (NY-JC8611)
Paul J. Hanly, Jr., Esq. (NY-PH5486)
Andrea Bierstein, Esq. (NY-AB4618)
HANLY CONROY BIERSTEIN
   & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600


Harry Huge, Esq. (DC-55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
401 Ninth Street, N.W., Suite 450
Washington, DC 20004
Telephone:  (202) 824-6046

Allan Gerson, Esq. (DC-327494)
ATTORNEY AT LAW
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557


Chip Robertson, Esq.
Mary Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
   & OBETZ
200 Madison Avenue, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 230-4665


Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone:  (843) 577-9761


Attorneys for Plaintiffs