UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

|  |  |
|---|---|
| Thomas Burnett, Sr., *et al*.<br> - against –<br>Al Baraka Investment & Development Corp., *et al*., | 03 CV 9849 (RCC) |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED MASTER COMPLAINT

Ronald L. Motley, Esq. (SC Bar #4123)
William H. Narwold, Esq. (WN-1713)
Jodi Westbrook Flowers, Esq. (SC Bar #66300)
Donald A. Migliori, Esq. (RI Bar #4936)
Michael Elsner, Esq. (NY & VA Bar #ME-8337)
Ingrid L. Moll, Esq. (IM-3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Elizabeth Smith, Esq.
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

*Attorneys for Plaintiffs*

May 14, 2004

# TABLE OF CONTENTS

*Page*

Tables of Authorities ..................................................................................................... iii

Introduction ................................................................................................................... 1

Facts ............................................................................................................................... 1

I.   IIRO's Involvement in Funneling Money and Other Support to al Qaeda to
     Support Terrorist Activities ................................................................................... 1

II.  IIRO's Structure and Connections to al Qaeda ..................................................... 2

III. IIRO's Contacts with the United States ................................................................. 5

Applicable Legal Standards ............................................................................................ 6

I.   Fed. R. Civ. P. 12(b)(2) Standard ........................................................................ 6

II.  Fed. R. Civ. P. 12(b)(6) Standard ........................................................................ 6

Argument ....................................................................................................................... 7

I.   The Court Has Personal Jurisdiction Over the IIRO ............................................ 7

     A.   The Defendant IIRO Has Sufficient Contacts with the United States to
          Satisfy Due Process ...................................................................................... 7

          1.   Specific Jurisdiction ............................................................................. 9

          2.   General Jurisdiction ............................................................................ 11

          3.   Conspiracy-based Jurisdiction ........................................................... 13

     B.   In the Alternative, Should This Court Conclude That, on the Existing
          Record, There Are Insufficient Grounds to Support Personal Jurisdiction
          Over Defendant IIRO, Plaintiffs Are Entitled to Conduct Further
          Jurisdictional Discovery .............................................................................. 15

II.  The Complaint Sufficiently States Claims Against the IIRO ............................. 16

     A.   This Court Is Not Bound Under a Law-of-the-Case Theory ....................... 17

     B.   The Complaint Gives Adequate Notice to the IIRO of the Claims Against It. ..... 17

1.   The Complaint Makes a *Prima Facie* Showing Under Traditional Tort Law....................................................................................................19

2.   The Complaint Gives IIRO Sufficient Notice of Aiding and Abetting Liability......................................................................................20

Conclusion .......................................................................................................................25

ii

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215 (S.D.N.Y. 1992) ...........................13

*Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) .................................................22

*Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998).......................................................................22

*Boim v. Quranic Literary Inst.*, 291 F.3d 1000 (7th Cir. 2002)............................18, 19, 20, 22, 23

*Burnett v. al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ...................11, 12, 24

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................................................12, 13

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991)..........13, 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................6-7, 22, 23

*Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996) ...................................17

*Distefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001)..........................................6

*Dixon v. Mack*, 507 F. Supp. 345 (S.D.N.Y. 1980) ......................................................................14

*English v. Cowell*, 10 F.3d 434 (7th Cir. 1993) .............................................................................8

*Estate of Ungar v. The Palestinian Authority*, 153 F. Supp. 2d 76 (D.R.I. 2001)........................12

*Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320 (5th Cir. 1996).........................................8

*Filus v. Lot Polish Airlines*, 907 F.2d 1328 (2d Cir. 1990) ..........................................................15

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)........................................21, 23

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ........................................................................7

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ......................................................20, 21, 23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................9

*In re Grand Jury Proceedings (Kluger)*, 827 F.2d 868 (2d Cir. 1987).........................................17

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) ................................6

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................8, 14

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997) .........................................8

*Krieger v. Fadely*, 211 F.3d 134 (D.C. Cir. 2000).........................................................................22

*Kurowski v. City of Bridgeport*, 1988 WL 25417 (D. Conn. Mar. 14, 1988) ..........................17, 18

*Lamarca v. United States*, 31 F. Supp. 2d 110 (E.D.N.Y. 1998)......................................................19

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) .........................................8, 15

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996)..................................................9, 11

*Meyers v. Epstein*, 282 F. Supp. 2d 151 (S.D.N.Y. 2003) ..............................................................19

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987) .......................................8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).............................................................15

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003) 20

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003).......12, 13

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F. Supp. 325 (E.D.N.Y.), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998),
    *cert. denied*, 527 U.S. 1003 (1999).................................................................................. 12-13

*Renner v. Chase Manhattan Bank, N.A.*, 85 Fed. Appx. 782 (2d Cir. 2004)................................21

*Second Amendment Foundation v. U.S. Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001).......................................................................................6, 15

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003)....................21, 23

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)...............................................22

*Strategem Devel. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535 (S.D.N.Y. 1994) ...........................16

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)...................................................................7, 22, 23

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300
    (2d Cir. 1981), *cert. denied*, 454 U.S. 1148 (1982) ..............................................................8-9

*United Elec., Radio & Mach. Workers & America v. 163 Pleasant St. Corp.*,
   960 F.2d 1080 (1st Cir. 1992) ..................................................................................8

*Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ...................20

*World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................................................13

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ..........................................................................7

## Statutes

18 U.S.C. § 2331 ......................................................................................................................18, 20

18 U.S.C. § 2333 ......................................................................................................................18, 20

18 U.S.C. § 2339A .........................................................................................................................18

18 U.S.C. § 2339B .........................................................................................................................18

## Federal Rules

Fed. R. Civ. P. 8(a) ...................................................................................................................7, 22

Fed. R. Civ. P. 12(b)(2) ......................................................................................................6, 7, 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................................6

Fed. R. Civ. P. 54(b) ....................................................................................................................17

## Other Authorities

5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1990) .......16, 23

W. Page Keeton et al, Prosser & Keeton on the Law of Torts (5th ed. 1984) ...............................19

Restatement (Third) of Torts ..........................................................................................................19

## INTRODUCTION

In these consolidated actions, Defendant International Islamic Relief Organization (hereinafter "IIRO") is alleged to have knowingly financed and supported al Qaeda in its pursuit of terror against the United States, its citizens and its residents in violation of (among others) the Anti-Terrorism Act ("ATA"). In its motion to dismiss the Third Amended Complaint ("Complaint" or "TAC"), the IIRO seeks to escape accountability for its significant role in financing and assisting al Qaeda by making the following two arguments: (1) this Court lacks personal jurisdiction over it because it claims to have no contacts with the United States; and (2) Plaintiffs have failed to state a claim against it. Each of these assertions is unavailing.

## FACTS

### I.   IIRO'S INVOLVEMENT IN FUNNELING MONEY AND OTHER SUPPORT TO AL QAEDA TO SUPPORT TERRORIST ACTIVITIES

The Complaint makes the following allegations concerning the IIRO. When Osama bin Laden formed al Qaeda, the charities and entities he developed grew into an essential part of his and al Qaeda's support network, providing the financial resources that enabled them to move from war in Afghanistan to the stage of international terrorism. TAC, p. 209. The charity Defendants serve as terrorist fronts, to mask money transfers and to provide cover for and sponsorship of terrorist operatives. TAC at ¶ 153.

Designated by the United States Department of State as an organization that sponsors terrorism, Defendant IIRO is al Qaeda's foremost charity in the network, used as a means to transfer funds, personnel, and other means of material support. TAC at ¶¶ 326, 354. As a "known al Qaeda front," the IIRO has materially supported terror around the globe, including Osama bin Laden and al Qaeda. TAC at ¶¶ 156, 234, 326, 359.

IIRO's office in the Philippines, headed by Osama bin Laden's brother-in-law, Defendant Mohammed Jamal Khalifa, has acted as a center of terrorist financing and training activity for al Qaeda operations, including the collection and laundering of money around the world. *Id.* at ¶¶ 234, 240.  IIRO evolved into a vast independent terrorist machine – funding, recruiting and aiding and abetting al Qaeda members around the globe.  TAC at ¶ 234.  IIRO was involved with the 1993 World Trade Center bombing, the plot to destroy the Lincoln Tunnel and the Brooklyn Bridge, the plot to assassinate former President William Jefferson Clinton and Pope John Paul II, the plot to blow up twelve American airplanes simultaneously, and the 1998 Embassy bombings in Kenya and Tanzania.  *Id.* at ¶¶ 234, 242.

## II.    IIRO'S STRUCTURE AND CONNECTIONS TO AL QAEDA

The IIRO's structure and affiliations with other Charity Defendants is a tangled web. The IIRO is the daughter organization of the Muslim World League (a co-Defendant in this case, which has explicitly worked with al Qaeda), and a sister organization of the Success Foundation and the International Relief Organization[1] ("IRO"), which are each alleged to send money to other organizations that sponsor terror.  TAC at ¶¶ 235-37, 249.  The IIRO, IRO (to the extent there is any distinction between the two) and Success Foundation send money back and forth one to the other.  TAC at ¶ 235.

Mohammed Omeish is the President of the United States branches of the IIRO, IRO, and Success Foundation, and is also Vice-President of the American Muslim Foundation (the president of which, Abdurahman Alamoudi, has openly stated his support for HAMAS and Hizbollah, both designated terrorist organizations).  TAC at ¶¶ 237, 245.  Omeish gave money to Tarik Hamdi, who in turn helped Osama bin Laden obtain a satellite phone and other electronic

---

[1]     The Complaint alleges that (at a minimum) IIRO and IRO are sister organizations.  As will be discussed below, there is documentary evidence to show that IIRO and IRO are in fact the same organization.

equipment used to coordinate acts of international terrorism. TAC at ¶ 245. Adnan Basha, the IIRO's Secretary-General, has written that "[t]he major finance is coming from the generous people of Saudi Arabia, King Fahd, and the royal family." TAC at ¶ 238. Arafat El-Ashi, head of IIRO's Canada branch, testified in the trial of Mahmoud Jaballah that IIRO and MWL were intimately connected to and funded by certain Saudi Arabian interests. *Id.*

Several employees of the Muslim World League, IIRO's parent organization, have explicitly worked with al Qaeda. IIRO also works with other al Qaeda affiliated charities. IIRO shares the same address in the United Kingdom as the International Development Foundation (or "IDF"), a charity affiliated with Defendant Khalid bin Mafouz, a senior al Qaeda financier. TAC at ¶ 244. Mafouz also funds the Success Foundation, IIRO's namesake. IIRO also provides support to the Saudi Joint Relief Committee, an al Qaeda charity in Bosnia and elsewhere. IIRO, through Khalifa, sponsors, aids and abets Benevolence International Foundation, the al Qaeda charity front. IIRO provides funding for other alleged humanitarian organizations that have materially sponsored, aided and abetted and conspired with al Qaeda: Global Relief Foundation (or "GRF"), Taibah International, Islamic African Relief Agency, World Assembly of Muslim Youth (or "WAMY"). *Id.*

Along with co-Defendants al Haramain, WAMY, the Saudi Red Crescent, and the Muslim World League, among others, IIRO is a member of the Saudi Joint Relief Committee, which has been connected to Osama bin Laden and two of his top operatives, Wa'el Hamza Jalaidan (who has branded a Specially Designated Global Terrorist Entity by the U.S. Treasury Department) and Adel Muhammad Sadiq bin Kazem. TAC at ¶ 172. IIRO has also conducted a joint fundraising event with co-Defendants Al Haramain and the WAMY in Riyadh, Saudi Arabia. TAC at ¶ 156.

Defendant Mohamad Jamal Khalifa has been affiliated with the IIRO. TAC at ¶ 189. At the time of his affiliation, Khalifa had been convicted in absentia in Jordan for his involvement in 1993 and 1994 in a series of bombings in Jordan. *Id.*

IIRO has also funded the terrorist al Qaeda groups Moro Islamic Liberation Front and the Abu Sayef Group (or "ASG"). *Id.* at ¶ 240. A former ASG member stated: "Less than 30% of the IIRO funds went to legitimate public works, the rest going toward the purchase of weapons." *Id.* The IIRO also supported an al Qaeda guest house in Egypt. TAC at ¶ 239.

IIRO built its office in Khartoum, Sudan in the same residential neighborhood as Osama bin Laden's personal office, according to the testimony of a former al Qaeda member, Jamal Ahmed Mohammed Al-Fadl. TAC at ¶ 241. IIRO also built its Khartoum office near the office of Benevolence International Foundation, another al Qaeda front, and in the same residential neighborhood where Osama bin Laden had his personal office. *Id.* IIRO Tanzania was reportedly working with al Qaeda immediately before the United States Embassy bombing. TAC at ¶ 242. IIRO went on to plot the destruction of United States Consulates in India in 1999. *Id.*

One of the September 11 hijackers claimed to be going to work for IIRO's Fazeh Ahed. IIRO also extensively funded the Taliban regime. TAC at ¶ 246. As stated by Dr. Adan Basha, Secretary-General of IIRO, the IIRO donated more than Sixty Million ($60,000,000) dollars to the Taliban regime, which was a known material sponsor, aider and abettor of al Qaeda terrorists. *Id.*

The Complaint also alleges that additional co-conspirators, material sponsors and/or aiders and abettors and members of the terrorist enterprise of the IIRO include co-Defendants Success Foundation, Inc., Mohamed S. Omeish, Abdurahman Alamoudi, Khaled Nouri,

Sulaiman al-Ali, Abdullah M. al-Mahdi, Tareq M. al-Swaidan, Abdul al-Moslah, Salah Badahdh, Abdullah bin Saleh al Obaid, Hassan A.A. Bahfzallah, and M. Yaqub Mirza, all located, doing business or registered to do business in the United States. TAC at ¶ 248. In sum, and according to the Arabic publication *Rose Al-Yusuf*, the IIRO is firmly entrenched with Osama bin Laden's al Qaeda organization. TAC at ¶ 239.

## III.   IIRO's CONTACTS WITH THE UNITED STATES

The IIRO's contacts with the United States are numerous. IIRO maintained an office in Virginia prior to and subsequent to September 11, 2001. As alleged in the Complaint, after September 11, 2001, IIRO's offices in Virginia were raided by the FBI because of IIRO's al Qaeda sponsorship. TAC at ¶ 246. One of the September 11 hijackers claimed to be going to work for IIRO's Fazeh Ahed. *Id.* IIRO established, for operation at its Virginia office, an endowment fund called Sanabil al-Khair, which it created to manage its financial assets. TAC at ¶ 247. IIRO's website states that "[i]t has established an endowment fund (Sanabil al-Khair) which will be used to generate a stable income to finance its various activities." The corporate records of Sanabil al-Khair, which incorporated in the United States under two different names, namely, the Sana-Bell, Inc. and Sanabel al-Kheer, Inc., indicate the same address as IIRO in Herndon, Virginia. *Id.*

Moreover, the IIRO, as well as Defendant Mohamad Khalifa, gave al Qaeda funding and support to the perpetrators of the first attack on the World Trade Center in 1993. TAC at ¶ 240. As mentioned previously, IIRO was also involved in plots to destroy the Lincoln Tunnel and the Brooklyn Bridge and to assassinate former President Clinton. TAC at ¶¶ 234, 242. Additional connections to the United States are discussed in Section I.A of the Argument Section below.

## APPLICABLE LEGAL STANDARDS

The IIRO has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Each alleged basis for dismissal is to be considered under its own discreet legal standard provided below.

### I.   FED. R. CIV. P. 12(B)(2) STANDARD

The IIRO has moved to dismiss the Complaint based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the minimal burden of showing a factual basis upon which the court may exercise personal jurisdiction over the defendant.  *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).  In this regard, at the pleading stage, the plaintiff need only make a *prima facie* showing of personal jurisdiction in order to defeat a defendant's 12(b)(2) motion.  *Distefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

To meet this burden, the Plaintiffs must allege facts connecting the Defendant with the applicable forum – here, the United States.[2]  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  In ruling on the motion, the Court should resolve factual discrepancies appearing in the record in favor of the Plaintiffs.  *Distefano*, 286 F.3d at 84.

### II.   FED. R. CIV. P. 12(B)(6) STANDARD

If the Court concludes that it may exercise personal jurisdiction over it, the IIRO moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). In evaluating whether plaintiffs could ultimately prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of plaintiffs. *Wynder*, 360 F.3d at 77.

Relatedly, Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Under *Swierkiewicz* [*v. Sorema*, 534 U.S. 506 (2002)], Rule 8 pleading is extremely permissive. 534 U.S. at 512-13, 122 S. Ct. 992. As the Supreme Court there noted, Rule 8(a)(2) provides (a) that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and (b) that such a statement simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' 534 U.S. at 512, 122 S. Ct. 992 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957))." *Wynder*, 360 F.3d at 77.

## ARGUMENT

### I.   THE COURT HAS PERSONAL JURISDICTION OVER THE IIRO

#### A.   The Defendant IIRO Has Sufficient Contacts with the United States to Satisfy Due Process.

Defendant IIRO moves, pursuant to Rule 12(b)(2), to dismiss the claims against it in the Complaint, claiming that there is no basis upon which the Court can exercise personal jurisdiction over it. Incredibly, the IIRO argues that it "has no connection to the U.S. . . .

---

[2]     Because the Plaintiffs have alleged causes of action under federal statutes that permit the assertion of nationwide personal jurisdiction, they need only allege facts connecting the IIRO to the United States, not one

maintains no physical presence in the U.S., *i.e.*, . . . currently has no foreign office in the United

States and . . . carries out no program-related work in the United States. . . . Moreover, IIROSA

neither solicits nor receives funding from any individuals or entities in the United States." *See*

IIRO Memorandum of Law in Support of Motion to Dismiss ("IIRO Memorandum") at 2. The

IIRO further argues that no allegation in the Complaint "specifically links IIROSA with the

terrorist plot resulting in the September 11, 2001, attacks." *See id.* All of these arguments are

based, however, on flawed factual and legal premises. Accordingly, the IIRO's motion to

dismiss should be denied.

As a threshold matter, it is well settled that a federal court may exercise personal

jurisdiction over a non-resident defendant when: (1) the defendant is amenable to service of

process pursuant to a statute or rule of court that authorizes such an exercise; and (2) such an

exercise is consistent with due process of law. *See International Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97,

104 (1987). In its motion, the IIRO challenges only the second prong. Thus, the Court's

analysis of whether it may assert personal jurisdiction over Defendant IIRO turns upon whether

the Defendant has the requisite "minimum contacts" with the United States.[3] *See, e.g., Omni*

*Capital Int'l, Ltd.*, 484 U.S. at 102 n.54; *United Elec., Radio & Mach. Workers of America v.*

*163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992); *Texas Trading & Milling Corp. v.*

---

particular state. In its motion papers, the IIRO does not argue otherwise. *See* IIRO Memorandum at 4.

[3]      Notably, the law is clear that on a Rule 12(b)(2) motion challenging personal jurisdiction, the court may, and indeed may be required to, consider evidence outside the pleadings in determining whether jurisdiction in fact exists. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court . . . may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing"); *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997); *Felch v. Transportes Lar-Mex SA De Cv*, 92 F.3d 320, 327 (5th Cir. 1996); Fed. R. Civ. P. 12(b) (providing procedure for conversion to summary judgment on submission of matters outside the pleadings only with respect to motions brought under Rule 12(b)(6)).

*Federal Republic of Nigeria*, 647 F.2d 300, 314 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148 (1982).

Contacts with the forum may confer either specific or general jurisdiction. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996). Specific jurisdiction exists when a forum "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn. 8-9 (1984)). In contrast, general jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metropolitan Life*, 84 F.3d at 568. To establish general jurisdiction, the plaintiff must show that the defendant has "continuous and systematic" contacts within the forum. *Id.* The Court does not examine these contacts in isolation, but rather, *in toto*. *Id.* at 571. The Court need only have, however, one basis on which it may exercise personal jurisdiction over a defendant.

### 1.    Specific Jurisdiction

Here, the Court may exercise specific jurisdiction over the IIRO because the suit directly relates to the IIRO's contacts with the forum, *i.e.*, the United States. Here, as an initial matter, it is beyond dispute that the IIRO maintained a Virginia office, both prior and subsequent to September 11, 2001. Notably, the IIRO does not even dispute the allegations in the Complaint concerning its Virginia office, namely, that the IIRO maintained a Herndon, Virginia office and that its Virginia offices were raided by the FBI as a result of its al Qaeda sponsorship. TAC at ¶¶ 241, 246. Instead, the IIRO merely states that it "*currently* has no foreign office in the United States." *See* IIRO Memorandum at 2 (emphasis added). Whether or not the IIRO *currently* has a

U.S. office is immaterial to the minimum contacts analysis, however, because IIRO undisputedly had an office in the United States before and after September 11, 2001, from which it provided financial and material support for terrorist attacks, including the September 11 attacks. *See Metropolitan Life Ins. Co.*, 84 F.3d at 569 (in deciding a Rule 12(b)(2) motion, the Court must look at contacts for a reasonable period prior to the filing of the complaint).

Other evidence demonstrates IIRO's presence in the United States. The IIRO was originally organized as International Relief Organization in the United States on July 22, 1991. *See* Exhibit E attached hereto. On February 18, 1992, the IIRO was formed in the District of Columbia. *See* Exhibit F attached hereto. Contrary to IIRO's assertion in its motion that "there is no proof that [it] is the agent or alter ego of the MWL, the now defunct U.S.-based Islamic Relief Organization, or the Success Foundation," *see* IIRO Memorandum at 3, a memo on IIRO letterhead lists its address as 360 S. Washington Street, Falls Church, VA  22046, which the *Muslim World League* continues to list on its website as its address. *See* Memo attached hereto as Exhibit A; Offices Abroad link under Muslim World League link at www.muslimworldleague.org (attached hereto as Exhibit B). Moreover, the same memo is entitled "An Extremely Urgent Apppeal [sic] from *IRO* in Bosnia-Hercegovina." (Emphasis added.) In addition, the memo's author is shown as Sulaiman A. Al-Ali. During a U.S. Treasury interrogation of Al-Ali's former U.S. business partner, Soliman Biheiri, customs agents wrote: "[H]e found it very strange that Al-Ali opened up the office of the International Islamic Relief Organization (IIRO) in the United States as 'International Relief Organization.' Biheiri told the agents that Al-Ali's IRO was one and the same organization as the IIRO in Saudi Arabia. He related that he suspected that the IIRO's U.S. office had been deliberately named the IRO, so that one could not make the connection between the two organizations." *See* Interview of Soliman

Biheiri; Report of Investigation, Department of the Treasury, United States Customs Service, Case No. DC02PU02DC0005; July 14, 2003 (attached as Exhibit G).

Moreover, in March 1993, IRO filed a certificate with the Virginia State Corporation Commission indicating it would conduct business under the fictitious name "International Islamic Relief Organization." *See* Exhibit C attached hereto.

IIRO points out in its motion that it is not clear what specific entity Plaintiffs refer to in the Complaint when using the name "Success Foundation," and that it (IIRO) located a postal address of P.O. Box 8125, Falls Church, Virginia 22041 on a Success Foundation website. *See* IIRO Memorandum at 3 n.2. Interestingly, that same address was used on a tax return filed by the International Relief Organization, to which IIRO also claims no affiliation, despite the documentary evidence cited above. *See* Exhibit D attached hereto, 1992 IRO Return of Organization Exempt from Income Tax.

In sum, the IIRO maintained one or more offices in Virginia, before and after the events of September 11 – a fact that it does not even dispute. From that Virginia office, it provided material support to the al Qaeda organization and its terrorist mission, including the September 11 attacks. TAC at ¶¶ 241, 246. Because this "suit aris[es] out of or relate[s] to the defendant's contacts with the forum," *Metropolitan Life Ins. Co.*, 84 F.3d at 567-68, this Court has ample support for the exercise of personal jurisdiction over IIRO.

### 2. General Jurisdiction

Alternatively, the Court may also exercise general jurisdiction over the IIRO because, at a minimum, and as described above, it maintained an office in the United States. Relating to IIRO's parent organization, the Muslim World League ("MWL"), Judge Robertson in *Burnett v. al Baraka Inv. & Dev. Corp. et al.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ("*Burnett I*"), concluded

that personal jurisdiction was properly exercised over the MWL because "[i]f MWL maintains branch offices in New York and Virginia, then it has minimum contacts with the United States." *Burnett I*, 274 F. Supp. 2d at 96.

Similarly, in *Estate of Ungar v. The Palestinian Authority*, 153 F. Supp. 2d 76 (D.R.I. 2001), for example, the Court considered the personal jurisdiction reach of the ATA in a case brought against several institutional and individual defendants relating to the death of a husband and wife in Israel. With respect to the foreign institutional defendants, the Court concluded that it could exercise personal jurisdiction over them because they had "contacts with the United States sufficient to confer general personal jurisdiction." *Id.* at 95. Those contacts included a Washington, D.C. office, fundraising activities and a public relations campaign in the U.S., as well as several bank accounts in New York. *Id.* at 88-89.

Even beyond the IIRO's physical presence in the United States, however, a defendant such as IIRO can expect to be haled into a United States court when its conduct is directed at this country, its citizens or residents. For example, in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54, 59 (D.D.C. 2003), the court exercised personal jurisdiction over individual Libyan defendants who conspired to attack a French airplane over Niger en route from Congo to Paris, killing, among others, seven Americans. *Id.* at 56-60. The court reasoned that "the individual defendants could and should have reasonably postulated that passengers of many nationalities would be on board, from which they could also expect they might be haled into the courts of those nations whose citizens would die." *Id.* at 59. *See also Calder v. Jones*, 465 U.S. 783, 790 (1984); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y.) (court exercised personal jurisdiction over Libyan defendants based on their

intentional, tortious acts that were expressly aimed at the United States"), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998), *cert. denied*, 527 U.S. 1003 (1999).

The *Calder*, *Pugh* and *Rein* rulings – that due process would not be offended by the exercise of personal jurisdiction under the circumstances – is even more germane where the material support provided by IIRO to al Qaeda's efforts to target America, including the 1993 World Trade Center bombing, the plot to destroy the Lincoln Tunnel and the Brooklyn Bridge, the plot to assassinate former President William Jefferson Clinton, the plot to blow up twelve American airplanes simultaneously, the 1998 Embassy bombings in Kenya and Tanzania, and the September 11 attacks.  TAC at ¶¶ 234, 242.  Because the IIRO could reasonably expect to know that its material support of al Qaeda would have an impact on the United States, it "should [have] reasonably anticipate[d] being haled into court" here," *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Therefore, exercising personal jurisdiction over the IIRO does not offend notions of due process.

### 3.    Conspiracy-Based Jurisdiction

Finally, and also in the alternative, even if this Court were to conclude that the IIRO does not have sufficient minimum contacts, this Court may exercise personal jurisdiction over IIRO based on the contacts of its co-conspirators, because IIRO knew and intended that the acts of its al Qaeda co-conspirators would impact the United States.

"Many courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory." *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (asserting personal jurisdiction over Australian defendants via conspiracy theory by imputing forum acts of co-conspirators done in furtherance of conspiracy) (citing *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991)

(asserting personal jurisdiction over non-resident defendant based on conspiracy theory)). By imputing to non-resident defendants the forum acts of their co-conspirators, this Court has repeatedly found that such non-resident defendants have minimum contacts with the forum to satisfy due process concerns. *Dixon v. Mack*, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ("The act of conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course, complained of in the suit, supplies the necessary minimum contacts [under] *International Shoe*, 326 U.S. 310, 316 (1945).").

Courts recognizing conspiracy-based personal jurisdiction have held that when non-resident defendants enter into a conspiracy knowing that the forum acts of their co-conspirators, done in furtherance of the conspiracy, would impact the forum, such non-resident defendants should "reasonably anticipate being haled into court there." *Dixon*, 507 F. Supp. at 532. Under these circumstances, Due Process is satisfied.

The Complaint makes a *prima facie* showing of conspiracy between IIRO and al Qaeda. Under New York law, a *prima facie* showing of conspiracy requires allegations of the underlying tort and the following elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) the resulting damage or injury. *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991). With regard to each of these elements, the Complaint alleges that:

(1)     IIRO and al Qaeda, as well as co-Defendants Success Foundation, Inc., Mohamed S. Omeish, Abdurahman Alamoudi, Khaled Nouri, Sulaiman al-Ali, Abdullah M. al-Mahdi, Tareq M. al-Swaidan, Abdul al-Moslah, Salah Badahdh, Abdullah bin Saleh al Obaid, Hassan A.A. Bahfzallah, and M. Yaqub Mirza, (all located, doing business or registered to do business in the United States), agreed to injure the United States through acts of international terrorism, *see, e.g.*, TAC Introduction, ¶¶ 156, 172, 189, 234-50, 266, 326-27, 354, 359-60, 431;

14

(2)     the September 11 attacks were acts done in furtherance of that common scheme, *see, e.g.*, TAC, Introduction, ¶ 11;

(3)     IIRO actively participated and co-operated in that conspiracy by knowingly and intentionally provided currency, financial services, money laundering services, recruits, personnel, training, and facilities to al Qaeda to launch terrorist attacks against America, *see* TAC at ¶¶ 156, 172, 189, 234-50, 266, 326-27, 354, 359-60, 431; and

(4)     the September 11 attacks cause plaintiffs' decedents' deaths and injuries, *see, e.g.*, TAC at ¶ 4.

Accordingly, the Complaint makes a *prima facie* showing of conspiracy between IIRO and its conspirators to injure the United States through terrorist attacks.  By imputing the forum contacts of its al Qaeda co-conspirators to IIRO, the Court may exercise personal jurisdiction over IIRO in accordance with due process concerns.

**B.     In the Alternative, Should This Court Conclude That, on the Existing Record, There Are Insufficient Grounds to Support Personal Jurisdiction Over Defendant IIRO, Plaintiffs Are Entitled to Conduct Further Jurisdictional Discovery.**

In the alternative, should the Court conclude that, on the existing record, there are insufficient grounds to support personal jurisdiction over Defendant IIRO, Plaintiffs request, and move this Court for, the opportunity to conduct further jurisdictional discovery.  It is well settled that a plaintiff faced with a motion to dismiss challenging personal jurisdiction "is entitled to reasonable discovery." *Second Amendment Found.*, 274 F.3d at 525; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) ("generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue"); *Marine Midland Bank NA*, 664 F.2d at 904 (court may decide challenge to personal jurisdiction "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of

the motion"); *Strategem Devel. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535 (S.D.N.Y. 1994) (where plaintiff had not made *prima facie* showing of jurisdiction, but had made "a sufficient start toward establishing personal jurisdiction" court order jurisdictional discovery). Moreover, "[a] district court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable a party to conduct discovery. 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, at 253-59 (2d ed. 1990).

Certainly IIRO's motion to dismiss, in which it claims to have *no* contacts with the United States (despite the numerous allegations in the Complaint and the attached documentary evidence to the contrary), provides an appropriate context in which to permit the Plaintiffs to conduct jurisdictional discovery, in the absence of an outright denial of IIRO's motion. As demonstrated above, however, Plaintiffs believe the extent of IIRO's contacts with and presence in the United States is sufficient to satisfy due process.

## II.     THE COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST THE IIRO

The IIRO also argues that, even if the Court concludes that it may exercise personal jurisdiction over the IIRO, the Court should dismiss the Complaint for failure to state a claim. *See* IIRO Memorandum at 14. The IIRO first contends that those claims previously dismissed (by the D.C. court) in relation to certain defendants – RICO, negligence and negligent infliction of emotional distress – "must be dismissed as against [IIRO]" under a law-of-the-case theory. *See* IIRO Memorandum at 15. The IIRO next contends, albeit in a conclusory manner, that Plaintiffs have not provided notice of the claims against it. *See* IIRO Memorandum at 16. These arguments are addressed in turn.

## A.   This Court Is Not Bound Under a Law-of-the-Case Theory

Contrary to the IIRO's assertion, this Court is not bound by the ruling of the D.C. court

with respect to those claims dismissed against certain defendants prior to the consolidation. *See*

Fed. R. Civ. P. 54(b) (orders adjudicating claims against fewer than all defendants open to

revision at any time before final judgment); *In re Grand Jury Proceedings (Kluger)*, 827 F.2d

868, 871 n.3 (2d Cir. 1987) (following § 1407 transfer, district court has power and obligation

"to modify or rescind any orders in effect in the transferred case which it concludes are

incorrect"); *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1308-1309 (S.D.N.Y. 1996)

(re-considering ruling of district court in Texas after transfer).  Accordingly, this Court need not

follow, and may indeed modify, the D.C. court ruling in order to achieve uniformity in all cases

in this consolidated proceeding.

In any event, the IIRO has not provided any independent briefing on the viability of the

RICO, negligence and negligent infliction of emotional distress claims, and on this basis, its

12(b)(6) motion should be denied. *See Kurowski v. City of Bridgeport*, 1988 WL 25417 (D.

Conn. Mar. 14, 1988) (court declines to consider issue raised cursorily in 12(b)(6) motion for

defendant's failure to adequately brief it).  To the extent this Court decides to revisit these issues,

Plaintiffs refer the Court to the RICO, negligence and negligent infliction of emotion distress

sections of their opposition memoranda to the motions to dismiss of Al Rajhi Banking &

Investment Corporation, Al Haramain Islamic Foundation, Muslim World League, and Soliman

J. Khudeira filed in *Burnett* prior to consolidation.

## B.   The Complaint Gives Adequate Notice to the IIRO of the Claims Against It.

IIRO also argues, albeit cursorily, that the Complaint must be dismissed for failure to

state a claim.  *See* IIRO Memorandum at 17-18.  Without providing any further analysis, IIRO's

entire argument is that the Complaint "fails to allege that (a) [IIRO] possessed the requisite

knowledge and intent, (b) [IIRO] funded al Qaeda and that the timing of such funding created an inference of proximate cause between the funding and the September 11 attacks, and (c) [IIRO] aided and abetted or conspired with anyone or any entity." *See* IIRO Memorandum at 17.  As an initial matter, this argument should also be dismissed as inadequately briefed. *See Kurowski*, 1988 WL 25417.

Notwithstanding, Plaintiffs adequately allege that the IIRO proximately caused the deaths and injuries in the September 11 attacks because it knowingly aided and abetted al Qaeda in carrying out the attacks by providing it with financial and material support.  The ATA, pursuant to 18 U.S.C. § 2331 *et seq.*, attaches civil liability to the provision of material support or resources to terrorists and foreign terrorist organizations.  "Material support" is expressly defined as "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials."  18 U.S.C. § 2339A.  "Congress consider[s] the provision of [such] material support to terrorists an act of international terrorism." *Boim v. Quranic Literary Inst.*, 291 F.3d 1000, 1015-16 (7th Cir. 2002).

The Seventh Circuit, in *Boim*, recognized two theories of liability: (1) a plaintiff may recover under § 2333 if the defendants violated 18 U.S.C. §§ 2339A and 2339B, which criminalize the provision of "material support or resources" to terrorists and foreign terrorist organizations, respectively; and (2) a plaintiff may recover against aiders and abettors of international terrorism, who have given "substantial assistance or encouragement" to those who commit acts of international terrorism. *Boim*, 291 F.3d at 1012-18, 1021.

1.    **The Complaint Makes a *Prima Facie* Showing Under Traditional Tort Law.**

Because the ATA "extend[s] civil liability for acts of international terrorism to the full reaches of traditional tort law, . . . causation may be demonstrated as it would be in traditional tort law." *Boim*, 291 F.3d at 1010, 1015. The scope of liability under the ATA involves, therefore, traditional notions of proximate cause and reasonable foreseeability. IIRO improperly suggests that Plaintiffs must allege that IIRO must have known that the September 11 attacks would result from its funding of al Qaeda. *See* IIRO Memorandum at 17. This is not so.

In order to establish proximate cause,

> The requirement that the injury must be one that was reasonably to be foreseen does not mean that the exact occurrence or the precise injury resulting from the act need be foreseen; all that is necessary is that the person charged with [the wrongful act] should have been able to foresee that some injury to some person might result from his act.

*Lamarca v. United States*, 31 F. Supp. 2d 110, 127 (E.D.N.Y. 1998); *see also* W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 43, p. 299 (5th ed. 1984) (recognizing the "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event of the harm, and not its 'precise' nature, details, or above all manner of occurrence"); Restatement (Third) of Torts § 29 cmt. f (because "the harms risked by that tortious conduct include the general sort of harm suffered by the plaintiff, the defendant is subject to liability for the plaintiff's harm").

Furthermore, the concept of reasonable foreseeability is applied more broadly in the context of intentional torts and reckless torts, as compared to negligence. *See Meyers v. Epstein*, 282 F. Supp. 2d 151, 154 (S.D.N.Y. 2003) ("responsibility for harmful consequences should be carried further in the case of one who does an intentionally wrongful act than in the case of one who is merely negligent or is not at fault") (citing Keeton, Prosser & Keeton on the Law of

Torts, § 8, at 37 n.27 (5th ed. 1984) ("For an intended injury the law is astute to discover even very remote causation.").

Applying these principles of proximate cause and reasonable foreseeability, it becomes clear that the Complaint makes a *prima facie* showing of proximate cause.  Knowingly providing financial and material support to al Qaeda (i.e., an act of international terrorism under the ATA) is indisputably tortious, because IIRO should have foreseen that its support increased the risk that al Qaeda would intentionally kill Americans in terrorist attacks.

### 2.     The Complaint Gives IIRO Sufficient Notice of Aiding and Abetting Liability.

The Complaint also sufficiently alleges aiding and abetting claims against IIRO under the Anti-Terrorism Act (18 U.S.C. § 2331 *et seq.*), the Alien Tort Claims Act, the Torture Victim Protection Act, wrongful death and survival statutes, and the common law.  *See Boim*, 291 F.3d at 1019 ("failing to extent section 2333 liability [under the ATA] to aiders and abettors is contrary to Congress's stated purposes of cutting off the flow of money to terrorists at every point along the causal chain of causation"); *Presbyterian Church of Sudan v. Talisman Energy Inc.*, 244 F. Supp. 2d 289, 321 (S.D.N.Y. 2003) ("ATCA suits [may] proceed based on theories of conspiracy and aiding and abetting"); *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) (recognizing aiding and abetting liability under TVPA).

The doctrine of aiding and abetting does not require that plaintiffs plead a direct link between IIRO's conduct and the actual attacks of September 11.  In *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983), the court set forth a three-part test for holding a defendant liable for aiding and abetting: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must

knowingly and substantially assist the principal violation." *See also Renner v. Chase Manhattan Bank, N.A.*, 85 Fed. Appx. 782, 784 (2d Cir. 2004).  Applying these factors, the *Halberstam* court held that the defendant Hamilton could be liable for aiding and abetting her co-defendant Welch in the murder of the plaintiff's husband during the course of a burglary, despite the fact that Hamilton was not present during the burglary and claimed not to have known that Welch was even a burglar.  Finding that Hamilton had assisted Welch for years in disposing of large quantities of jewelry and precious metals, the court held:

> It was not necessary that Hamilton knew specifically that Welch was committing burglaries.  Rather, when she assisted him, it was enough that she knew he was involved in some type of personal property crime at night – whether as a fence, burglar, or armed robber made no difference – because *violence and killing is a foreseeable risk in any of these enterprises.*

*Halberstam*, 705 F.2d at 489 (emphasis added).  Thus, the Court reasoned, Hamilton was liable not only for the burglaries – whether she knew about them or not – but also for the murder that Welch committed during the course of one of them.  *Id.*  Significantly, even though there was no evidence that Hamilton had actual knowledge of the final event, the court concluded that Hamilton must have known because it was a foreseeable risk of the enterprise.  *Id.* at 486-87.

Applying that same standard in *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998), the court held that "a plaintiff need not establish that the material support or resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises . . . . Sponsorship of a terrorist group which causes the personal injury or death of a United States national alone is sufficient . . . ." *Id.* at 18.  Recently, and even more relatedly, in *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 232 (S.D.N.Y. 2003), the court granted a default judgment to plaintiffs against Iraq for injuries arising out of the September 11 attacks after plaintiffs provided "a sufficient basis for a reasonable jury to draw inferences which could lead to the conclusion that Iraq provided material support to al Qaeda and that it did so

with knowledge and intent to further al Qaeda's criminal acts." *See also Boim*, 291 F.3d at 1023

(plaintiffs need show only that defendants knew of the terrorist organization's illegal activities,

that they desired to assist in those activities, and that they engaged in some act in furtherance

thereof).

These cases must also be considered in light of the pleading requirements of Rule 8.

Rule 8(a) provides the requirements for stating a legally sufficient claim for relief.  It states that

the complaint must contain:

> (1) a short and plain statement of the grounds upon which the court's jurisdiction
> depends . . . (2) a short and plain statement of the claim showing that the pleader
> is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

(Emphasis added). The leading case on this issue remains *Conley v. Gibson*, 355 U.S. 41 (1957).

*Conley* holds that the federal rules do not require a claimant to set out the facts upon which the

claim is based in detail.  Rather, all that is required is "'a short and plain statement of the claim'

that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests." *Id.* at 47.

A pleading ordinarily is sufficient if within its framework evidence may be introduced

that will sustain a statement of claim.  Complaints "need not plead law or match facts to every

element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000), quoting

*Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).  Further, "a plaintiff need not allege all

the facts necessary to prove his claim." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1115

(D.C. Cir. 2000), quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir.

1996).  Notice pleading is made possible by the liberal opportunity for discovery to disclose

more precisely the basis of both the claims and defenses and to define more narrowly the

disputed facts and issues. *Conley*, 355 U.S. at 48. *Accord Swierkiewicz*, 534 U.S. at 512-13

("The provisions for discovery are so flexible and the procedures for pretrial procedure and

summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."), citing 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1202, p. 76 (2d ed. 1990)).

The Supreme Court recently reiterated its *Conley* standard in *Swierkiewicz*, stating that the Rules are intended "to focus litigation on the merits of a claim" by giving "fair notice" of the plaintiff's claim. In short, Rule 8(a)'s standard is set "without regard to whether a claim will succeed on the merits. Indeed, it even may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Swierkiewicz*, 534 U.S. at 512-13 (citations omitted).

IIRO does not dispute that al Qaeda carried out the September 11 attacks. Pursuant to the foregoing authorities, Plaintiffs need not allege (nor ultimately prove) that the IIRO participated in the planning or implementation of the September 11 attacks or even that the support provided was used specifically to assist in those attacks. *See Boim*, 291 F.3d at 1000; *Halberstam*, 705 F.2d at 472; *Smith*, 2003 WL 21027170; *Flatow*, 999 F. Supp. at 1. Instead, as these cases instruct, because the attacks of September 11 were a foreseeable risk of al Qaeda's terrorist activity, it is sufficient that the IIRO knew of al Qaeda's terrorist activity when it intentionally provided al Qaeda with material support. *See Halberstam*, 705 F.2d at 489 ("violence and killing is a foreseeable risk" of criminal enterprises involving property crimes). The Complaint alleges as much. *See, e.g.*, TAC, Introduction, at p. 217; ¶¶ 156, 172, 189, 234-50, 266, 326-27, 353-54, 359-60, 431.

The Complaint further alleges that the IIRO provided material support to al Qaeda before and after Osama bin Laden al Qaeda declared war on America in 1998. TAC, Introduction, p.

213, ¶¶ 234, 240, 242.  In *Burnett v. al Baraka et al.*, 274 F. Supp. 2d 86 (D.D.C. 2003)

("*Burnett I*"), the district court found a *prima facie* showing of proximate cause based on such

allegations:

> Any terrorist act, including the September 11 attack, might have been the natural
> and probable consequence of knowingly and intentionally providing financial
> support to al Qaeda, given the 3AC's allegations that, prior to September 11, al
> Qaeda and Osama Bin Laden had proclaimed their intentions to commit
> murderous terrorist activities against the United States and its citizens, and had
> accompanied these words with actions by implementing, and publicly
> acknowledging responsibility for, such terrorist schemes as the 1993 bombings of
> the World Trade Center, the 1998 attack of U.S. embassies in Kenya and
> Tanzania, and the 2000 attack of the U.S.S. Cole in Yemen.

*Burnett*, 274 F. Supp. 2d at 105.

In short, measured against the standard discussed above, the Complaint is plainly

sufficient to state claims against the IIRO.  Any suggestion that in 200 pages of allegations the

IIRO has not been given notice of the claims against it is absurd on its face.  *See* TAC,

Introduction; ¶¶ 156, 172, 189, 234-50, 266, 326-27, 353-54, 359-60, 431.  It also ignores the

allegations against other Defendants that bear on the IIRO, to the extent the Complaint alleges

inter-connections between and among various Defendants.  The Complaint sufficiently alleges

IIRO's involvement in the financing of Al Qaeda to sustain Plaintiffs' pleading.  Accordingly,

the IIRO's 12(b)(6) motion must be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the IIRO's motion to dismiss.


Dated: May 14, 2004                           Respectfully submitted,


                                              _____/s/_____
                                              Ronald L. Motley, Esq. (SC Bar #4123)
                                              William H. Narwold, Esq. (WN-1713)
                                              Jodi Westbrook Flowers, Esq. (SC Bar #66300)
                                              Donald A. Migliori, Esq. (RI Bar #4936)
                                              Michael Elsner, Esq. (NY & VA Bar #ME-8337)
                                              Ingrid L. Moll, Esq. (IM-3949)
                                              Robert T. Haefele, Esq. (NJ-58293; PA-57937)
                                              Elizabeth Smith, Esq.
                                              Justin B. Kaplan, Esq. (TN-022145)
                                              MOTLEY RICE LLC
                                              28 Bridgeside Boulevard
                                              P.O. Box 1792
                                              Mount Pleasant, South Carolina 29465
                                              Telephone:  (843) 216-9000

                                              Harry Huge, Esq. (D.C. Bar #55640)
                                              HARRY HUGE LAW FIRM, LLP
                                              Market Square North
                                              1401 Ninth Street, N.W., Suite 450
                                              Washington, D.C. 20004
                                              (202) 824-6046

                                              Paul J. Hanly, Jr., Esq. (PH-5486)
                                              Jayne Conroy, Esq. (JC-8611)
                                              Andrea Bierstein, Esq. (AB-4618)
                                              HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                                              415 Madison Avenue
                                              New York, NY 10017-1111
                                              Telephone:  (212) 401-7600

                                              William N. Riley, Esq. (IN Bar #4941-49)
                                              Amy Ficklin DeBrota, Esq. (IN Bar #17294-49)
                                              RILEY DEBROTA LLP
                                              3815 River Crossing Parkway, Suite 340
                                              Indianapolis, Indiana 46240
                                              Telephone:  (317) 848-7939

Allan Gerson, Esq. (DC Bar #327494)
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

*Attorneys for Plaintiffs*