UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001          03 MDL 1570 (RCC)

------------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

> **THOMAS E. BURNETT, SR., ET AL. VS. AL BARAKA**
> **INVESTMENT AND DEVELOPMENT CORP., ET AL.**
> **03 CV 9849 (RCC); 03 CV 5738 (RCC)**

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MAR-JAC POULTRY, INC.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

May 14, 2004

# TABLE OF CONTENTS

*Page*

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................1

II.     ARGUMENT ....................................................................................................................4

        A.      PLAINTIFFS PROPERLY SERVED MAR-JAC POULTRY...........................................4

        B.      FED. R. CIV. P. 12(B)(6) STANDARD ....................................................................5

        C.      THE PLAINTIFFS HAVE ADEQUATELY ALLEGED CAUSATION AS TO
                DEFENDANT MAR-JAC POULTRY ..........................................................................6

        D.      MAR-JAC POULTRY'S CONNECTIONS TO THE OTHER SAAR NETWORK
                DEFENDANTS .......................................................................................................7

        E.      THE COMPLAINT STATES A CLAIM AGAINST DEFENDANTS UNDER THE
                ANTI-TERRORISM ACT (18 U.S.C. §§ 2331 *ET SEQ.*). .................................9

        F.      THE COMPLAINT STATES A CLAIM AGAINST MAR-JAC POULTRY UNDER
                THE ALIEN TORT CLAIMS ACT. .........................................................................11

                1.      Plaintiffs have alleged facts sufficient to state a claim under the
                        ATCA ....................................................................................................11

III.    CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

*Page*

## CASES

*Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) .................................................................12

*Barrueto v. Larios*, 205 F. Supp. 2d 1325 (S.D. Fla. 2002).......................................................12

*Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Development*, 291 F.3d 1000 (7th Cir. 2002) ............................................................9, 10

*Burnett v. Al Baraka Inv. and Development Corp.*, 274 F.Supp.2d 86 (D.D.C. 2003) ..................5

*Conley v. Gibson*, 355 U.S. 41 (1957) .........................................................................................5

*Degulis v. LXR Biotechnology, Inc.*, 928 F.Supp. 1301 (S.D.N.Y. 1996) ....................................3

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998).....................................19

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) .....................................................................5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)...........................................................17, 18

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987).............................................................3

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ..........................................................12

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ........................................3

*Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 2002 WL 851751, at *24-25 (N.D. Ga. Apr. 29, 2002)........................................................................................................12

*Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991).............................................................19

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, No. 01 CIV 9882 (AGS), 2003 WL 1339181, at *46-47 (S.D.N.Y. Mar. 19, 2003)..............................................12

*Schuler v. United States*, 617 F.2d 605 (D.C. Cir. 1979)...........................................................3

*Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217 (2003) ........................................9

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C.Cir. 2002)...............................................6

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).........................................................................3, 5

*Thompson v. Greeley*, 107 Mo. 577, 592, 17 S.W. 962 (1891) .................................................19

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002)................................13, 14

*Wiggins v. Hitchens*, 853 F. Supp. 505, 509 n.1 (D.D.C. 1994).................................................3

*Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004).........................................................5

## UNITED STATES CODE

18 U.S.C. § 2339A...........................................................................................................9

18 U.S.C. § 2339B ...........................................................................................................9

18 U.S.C. §§ 1961-65; Racketeer Influenced and Corrupt Organizations Act (RICO).........2, 3, 18

18 U.S.C. §§ 2331-38; Anti-Terrorism Act (ATA) ................................................................ passim

28 U.S.C. § 1350; Alien Tort Claims Act (ATCA) ............................................................... passim

28 U.S.C. § 1605; Foreign Sovereign Immunities Act (FSIA) ...............................................2, 14

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P.  4 ...................................................................................................................1

Fed. R. Civ. P.  8 ............................................................................................................. passim

Fed. R. Civ. P.  8(a)(2) ..........................................................................................................5

Fed. R. Civ. P. 12 .......................................................................................................11, 13, 14

Fed. R. Civ. P. 12(b)(2) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(4) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(5) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... passim

## RESTATEMENTS

Restatement (Second) of Torts § 908(1) (1977) .......................................................................19

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

In its Motion to Dismiss, the Defendant Mar-Jac Poultry, Inc. ("Mar-Jac Poultry" or "Defendant") moves to dismiss the Third Amended Complaint ("TAC" or "Complaint") for failure to effect service within the meaning of Fed. R. Civ. P. 4 and for failure to state a claim upon which relief can be granted.  In doing so, Mar-Jac Poultry distorts and ignores the facts alleged in the Complaint in an attempt to distance itself both from the SAAR Foundation, *aka* SAAR Network, a network of non-profit and for-profit companies and/or shell organizations (or "SAAR"[1]) (hereinafter collectively referred to as the "SAAR Network Defendants"), and from the totality of the allegations set forth in the Complaint as to all Defendants.  TAC pp. 198 – 219; ¶¶ 150 – 153; ¶¶ 261 – 267.

As detailed in the Complaint, Mar-Jac Poultry is one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network. . . ."  TAC ¶ 267. Essentially, Defendant contends that the Complaint should be dismissed against it because the Plaintiffs have not sufficiently parsed out the precise role and conduct of Mar-Jac Poultry in the SAAR Foundation network, or the overall al Qaeda network, and that as a result causation has not been sufficiently alleged.

The Defendant seeks to narrowly focus this Court and this inquiry on a couple of discreet paragraphs in the Complaint and ignores the preceding and related paragraphs concerning SAAR specifically, the totality of the Complaint as it relates to al Qaeda sponsorship, the use of charity and business fronts to advance that sponsorship, and the ability of al Qaeda to carry out the September 11th attacks as a result of that material

---

[1] The term "SAAR" is understood to be an acronym for Defendant #88, Sulaiman Abdul Aziz al-Rajhi. TAC ¶ 216.  The other SAAR Network Defendants are African Muslim Agency (D39); International Institute of Islamic Thought (D43); Grove Corporate, Inc. (D41); Heritage Education Trust (D42); Mar-Jac Investments, Inc. (D44); Reston Investments, Inc. (D47); SAFA Trust (D49); and York Foundation (D52).

support.  TAC ¶¶ 261 – 267, pp. 198 – 219, ¶¶ 150 – 153.  In pointing to an isolated paragraph of the Complaint, Defendant contends that Plaintiffs' pleading does not adequately allege connexity between itself and al Qaeda or the attacks of September 11, 2001.  This is not a fair reading either of the Complaint or the law.

Plaintiffs herein seek truth and accountability with respect to the individuals and entities who sponsored, aided and abetted or otherwise materially supported the terrorist attacks of September 11, 2001.  As set forth in the Complaint, there exists an extensive and growing body of evidence that a global network of charities, banks, front related organizations and individuals aided, abetted and conspired to covertly finance, facilitate, fund, and provide logistical and/or material support to al Qaeda and Osama bin Laden.  TAC pp. 198 – 219, ¶¶ 150 – 153, ¶¶ 261 – 267.  But for, and without, this assistance, sponsorship and material support, al Qaeda would not have had the means to plan and carry out the massive attacks inflicted on September 11th.  *Id.*

Accepting Defendant's argument would require the court to not read the actual allegations contained in the Complaint.  This is true in that Defendant ignores Plaintiffs' underlying factual allegations – that Mar-Jac Poultry was a part of an extensive and overlapping network of companies and persons engaged in the provision of material support to al Qaeda's terrorist activities and that this material support was a proximate cause of the horrific events and injuries alleged.  TAC ¶¶ 261 – 267, p. 217, 210, 199.

The allegations in the Complaint subject Mar-Jac Poultry the Defendants to a determination of liability under the Anti-Terrorism Act ("ATA"), the Alien Tort Claims Act ("ATCA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO")[2], and

---

[2] Plaintiffs recognize that in *Burnett v. Al Baraka Investment and Devel. Corp.*, 274 F.Supp.2d 86 (D.D.C. 2003) ("Burnett I"), the D.C. district court dismissed plaintiffs' RICO claims and their negligence claims

various common law doctrines.  Imposition of liability in such circumstances is neither

unprecedented nor unwarranted.  The standard for pleadings under Rule 12(b)(6) is clear:

> Motions. . . that would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, should be treated with the greatest of care. A motion to dismiss should be granted only when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief.

*Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Swierkiewicz v. Sorema*,

534 U.S. 506, 514 (2002); Fed. R. Civ. P. 8.  Accordingly, "[the] [p]laintiff's factual

allegations must be presumed true and liberally construed in favor of the plaintiff when

reviewing the adequacy of a complaint for the purposes of a Rule 12(b)(6) motion."

*Wiggins v. Hitchens*, 853 F. Supp. 505, 509 n.1 (D.D.C. 1994).  Moreover, the Court

must grant plaintiffs the benefit of all inferences that can be derived from the facts

alleged.  *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)

(citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

In that Plaintiffs' allegations and claims, including proximate causation, are

specifically and adequately alleged in the Complaint under recognized legal theories,

Defendants' dispute is with plaintiffs' factual allegations and cannot properly be resolved

through these motions.  The Complaint sufficiently notifies Defendants of the nature of

the claims against them and satisfies the pleading requirements of Rule 12(b)(6) and Rule

---

against a charity defendant.  Plaintiffs do not believe that the rulings of the D.C. court in this case prior to transfer to this district are binding on this Court.  *See Degulis v. LXR Biotechnology, Inc.*, 928 F.Supp. 1301 (S.D.N.Y. 1996); *see also* Plaintiffs' Memorandum Of Law In Opposition To Motion To Dismiss Of Defendant The National Commercial Bank at pp. 23-24.  Accordingly, plaintiffs incorporate by reference the Negligence arguments set forth in their oppositions to the motions of Al Rajhi Bank (Docket #97) and Al Haramain (Docket #106).  In the event this Court finds no duty exists as to plaintiffs on the allegations at this time, plaintiffs reserve the right to re-plead this claim against Mar-Jac Poultry, Inc. should additional information become available in discovery.  Similarly, with respect to their RICO claims, plaintiffs incorporate by reference the arguments concerning RICO set forth in their oppositions to the motions of Al Rajhi Bank (Docket #97) and Al Haramain (Docket #106).

8.

## II.   ARGUMENT

### A.   Plaintiffs Properly Served Mar-Jac Poultry

In its motion to dismiss, Defendant attempts to argue that it was never properly served.  First, Mar-Jac Poultry attaches several affidavits to its Motion to Dismiss incorrectly asserting that its registered agent was not personally served.  In fact, Defendant's agent was personally served on November 12, 2002, at his registered address.  *See* attached Exhibit 1, Summons and Declaration of Server.  Second, Defendant claims the process server served Defendant only with the Complaint, rather than with the summons and the complaint.  This claim, as well, is without merit.  *See* attached Exhibit 1.  Finally, Defendant goes so far as to contend that Plaintiffs submitted a false declaration.  Not only is this claim, like all of the Defendant's other claims, without merit, but also it is patently offensive.  Plaintiffs stand by Mr. Robertson's Declaration that, contrary to Defendant's conflicting affidavits, Defendant's registered agent was in fact personally served.  *See* Exhibit 1.

Defendant's argument represents a calculated attempt to slow down the progress of the lawsuit by having this Court invite ancillary litigation regarding the conflicting Affidavits and Declarations.  Not only has Mar-Jac Poultry received actual notice of the lawsuit against it, but it has retained counsel and filed a Motion to Dismiss.  Although Plaintiffs still stand by the attached Declaration of Server and believe that Mar-Jac Poultry, Inc. has been properly served, if Defendants so desire and this Court believes it necessary, Plaintiffs would be more than happy to serve yet another copy of the TAC and Summons which Defendant has already received on Defendant's counsel.

### B.     Fed. R. Civ. P. 12(b)(6) Standard

Defendant also moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether plaintiffs could ultimately prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of plaintiffs.  *Wynder*, 360 F.3d at 77.

The analysis of 12(b)(6) motions are made in the context of the requirements of Fed. R. Civ. P. 8(a)(2).  "Under *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)*,* Rule 8 pleading is extremely permissive. 534 U.S. at 512-13, 122 S. Ct. 992.  As the Supreme Court there noted, Rule 8(a)(2) provides (a) that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and (b) that such a statement simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'  534 U.S. at 512, 122 S. Ct. 992 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957))."  *Wynder*, 360 F.3d at 77. The "short and plain statement" must simply give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests.  *Burnett v. Al Baraka Inv. and Development Corp.*, 274 F.Supp.2d 86, 103 (D.D.C. 2003).  By way of illustration, the D.C. Court of Appeals recently held, in a civil rights case, that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be

sufficient to survive a 12(b)(6) motion.  *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C.Cir. 2002).  In the present case, Plaintiffs have unambiguously alleged that Mar-Jac is part of a vast network of organizations that fund the activities of terrorists, including OBL and al Qaeda, and that consequently, Mar-Jac has funded such terrorists, and that without such funding, the attacks of September 11, 2001, could never have occurred.  As such, Plaintiffs have stated causes of action against Mar-Jac under the ATA, the ATCA, RICO, and under common law causes of action.

### C. The Plaintiffs Have Adequately Alleged Causation as to Defendant Mar-Jac Poultry

At the heart of its motion, Defendant makes what boils down to the same argument previously asserted by all of the other SAAR related defendants, that its name appears only twice in the Complaint -- once in the caption and once at the conclusion of the Complaint subsection entitled "The SAAR Foundation."  Memorandum of Law In Support of Mar-Jac Poultry, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6); TAC ¶ 261-287; Docket #'s 115-125, at pp. 1-3.

In *Plaintiffs' Memorandum of Law in Response to African Muslim Agency, International Institute of Islamic Thought, Grove Corporate, Inc., Mar-Jac Investments, Inc., SAFA Trust, York Foundation, Reston Investments and Heritage Education Trust's Motions to Dismiss The Third Amended Complaint*, Docket #188 (hereinafter referred to as "Plaintiffs' SAAR Network Brief"), the Plaintiffs submitted a consolidated response to all eight of the SAAR Network Defendants' motions because the SAAR Network Defendants made identical arguments.  See Plaintiffs' SAAR Network Brief, p. 1. Although Mar-Jac Poultry, Inc. filed its Motion to Dismiss at a later date, it too advances more or less the identical arguments.  Therefore, in an effort to avoid unnecessary

repetition, Plaintiffs hereby incorporate by reference the argument set forth on pages 3-20 of The SAAR Network Brief, Docket #188 and supplement it as follows.

>    **D.**    **Mar-Jac Poultry's Connections to the other SAAR Network Defendants**

An inherent aspect of the SAAR Network is the interconnectivity of its organizations as alleged in the complaint.  TAC ¶¶ 262, 266, 267.  There is an extremely high level of overlap in the directors of these organizations.  By way of illustration, Mar Jac Poultry's President, Jamal Barzinji is or has been an officer of the following SAAR Network defendant companies:  Grove Corporate Plaza; Heritage Education Trust, Inc.; IIIT; Mar-Jac Investments Inc.; Mena Estates, Inc.; Reston Investments Inc.; SAAR Foundation Inc.; and Safa Trust Inc.[3]

Mar-Jac Poultry's Chief Financial Officer, Yaqub Mirza, is or has been an officer of the following SAAR Network defendant companies:  African Muslim Agency; Grove Corporate Plaza; Heritage Education Trust, Inc.; Mar-Jac Investments Inc.; Mena Estates, Inc.; Muslim World League; Reston Investments Inc.; SAAR Foundation Inc.; Safa Trust Inc.; Sanabel Al Kheer, Inc.; and York Foundation.[4]

Mar-Jac Poultry's Secretary, Hisham Al-Talib, is or has been an officer of the following SAAR Network defendant companies:  African Muslim Agency; Aradi, Inc.;

---

[3] Form 990's filed with the IRS for Grove Corporate Plaza; Heritage Education Trust, Inc.; IIIT; Mar-Jac Poultry, Mar-Jac Investments Inc.; Mena Estates, Inc.; Muslim World League; Reston Investments Inc.; SAAR Foundation Inc.; Safa Trust Inc.; Sanabel Al Kheer, Inc. 1984-2002.  Annual reports for Grove Corporate Plaza; Heritage Education Trust, Inc.; IIIT; Mar-Jac Poultry, Mar-Jac Investments Inc.; Mena Estates, Inc.; Muslim World League; Reston Investments Inc.; SAAR Foundation Inc.; Safa Trust Inc.; Sanabel Al Kheer, Inc. 1994-2002.

[4] *Id*

Grove Corporate Plaza; IIIT; Mar-Jac Investments Inc.; Mena Estates, Inc.; Reston Investments Inc.; SAAR Foundation Inc.; and Safa Trust Inc.[5]

SAAR and the businesses and individuals that run and comprise it are fronts for the sponsors of al-Qaeda and international terror. TAC at ¶ 266. These organizations are closely inter-twined with Defendants IIRO, Muslim World League and their related "charities." *Id.* The connections between the al-Rajhi family, SAAR, and the terrorist front-groups extends past the financial network to a repetitious pattern of overlapping officers. *Id.* The United States branches of the Muslim World League and its subsidiaries are a part of SAAR. *Id.* The Muslim World League and SAAR share officers and addresses in Virginia. *Id.* They also play an intermediary role between wealthy Saudi financers and terrorist groups. *Id.*

Defendant ignores how the conduct and interrelations alleged regarding other Defendants bear a direct relationship to it. Indeed, the Complaint alleges a conspiracy with and/or aiding and abetting between and among Defendants. *Id.* at ¶ 267. As its plain reading suggests, the Complaint sufficiently alleges the nature of Defendant's involvement in the material support of al Qaeda. Mar-Jac Poultry cannot seriously maintain it is not sufficiently on notice of the nature of the claims against them and the role of the Islamic charities in sponsoring al Qaeda. As one commentator put it:

> No one is at war with the idea of building hospitals or orphanages or taking care of people who are displaced. But the same people that govern how to apply the money to hospitals govern how to apply the money to killing people, and you cannot abdicate responsibility for one and celebrate the other; it remains blood money.

David Aufhauser, General Counsel of the U. S. Treasury Department Chairman of the Interagency Task Force on Terrorism; See generally TAC pp. 200, 204.

---

[5] *Id.*

### E.     The Complaint States a Claim Against Defendants Under the Anti-Terrorism Act (18 U.S.C. §§ 2331 *et seq.*).

Mar-Jac Poultry also argues that the Plaintiffs failed to adequately allege that it knowingly or intentionally provided material support to terrorist activities sufficient to support a cause of action under the ATA, 18 U.S.C. § 2331 *et seq.*  This argument is meritless.

The ATA creates a private cause of action for injuries resulting from international terrorism.   There can be no doubt that the acts of September 11th were acts of "international terrorism" within the meaning of 18 U.S.C. § 2331 *et seq. See Smith v. Islamic Emirate of Afghanistan,* 262 F.Supp.2d 217 (2003).   In the leading case construing the ATA, the Seventh Circuit recognized two theories on which a plaintiff can proceed.   *See Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1009 (7th Cir. 2002).   First, the court concluded, a plaintiff may recover under § 2333 if the defendant violated 18 U.S.C. §§ 2339A and 2339B, which criminalize the provision of "material support or resources" to terrorists and foreign terrorist organizations, respectively.   *Id.* at 1012-14.[6]   Provision of such support gives rise to civil liability under § 2333 where the support was material -- that is, of the type that implies the element of knowing or intentional support.  *Id.* at 1015.

---

[6]  Section 2339A makes it unlawful to "provide material support or resources or conceal or disguise the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out . . ." a violation of criminal acts including, but not limited to murder, conspiracy to murder, destruction of aircraft, engaging in physical violence, and related criminal acts directly at issue in this matter.  18 U.S.C. § 2339A.  Section 2339B prohibits the knowing provision of "material support or resources to foreign terrorist organization[s]."  18 U.S.C. § 2339B.  With respect to both sections, "material support or resources" is defined as: "currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials."  18 U.S.C. § 2339A.  The term "material," as used within this statutory framework, "relates to the type of aid provided rather than whether it is substantial or considerable."  *Boim*, 291 F.3d at 1015.

The second theory of liability endorsed in *Boim* permits recovery where the defendant has aided and abetted an act of international terrorism. *Id.* at 1021. The court reasoned that "although the words 'aid and abet' do not appear in the statute, Congress purposely drafted the statute to extend liability to all points along the causal chain of terrorism." *Id.* at 1019-20, *see also* Brief for the United States as Amicus Curaie Supports Affirmance, Plaintiffs Reference Materials, Vol. I, Tab 2, submitted 6/24/03, *Burnett, et al. v. Al Baraka, et al.,* Civil Action No. 02-1616, also available at www.motleyrice.com. Specifically, Congress defined "international terrorism" to include activities that "*involve* violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State . . . ." 18 U.S.C. § 2331(1) (emphasis added). The court concluded that such language "taken at face value would certainly cover aiding and abetting violent acts." *Boim*, 291 F.3d at 1020. The court further stated that the failure to impose aider and abettor liability on those who knowingly and intentionally funded acts of terrorism would thwart "*Congress' clearly expressed intent to cut off the flow of money to terrorists at every point along the causal chain of violence.*" *Id.* at 1021 (emphasis added).

Here, the Complaint adequately alleges that Mar-Jac Poultry provided "material support or resources" and "aided and abetted" al Qaeda terrorists and that it did so "knowingly and intentionally, resulting in the causal chain of violence." TAC ¶¶ 267, 645-652. Indeed, the Introduction to the Complaint alleges as to all defendants:

> Defendants knew or reasonably should have known they were providing material support to terrorists and terrorist organizations who committed the September 11, 2001 savagery that murdered thousands of innocent people. Defendants clearly knew or should have known, they were providing material support, aiding and abetting and enabling the terrorists that brutalized America and the world on September 11, 2001.

TAC, Introduction, p. 217.

Even a cursory consideration of the allegations concerning the network of interlocking charities and relationships among the SAAR Network Defendants demonstrates that Plaintiffs have adequately and reasonably alleged Mar-Jac Poultry's role in the sponsoring, financing and fostering al Qaeda, sufficient to apprise it of the nature of the claims against it.  Since the November 22, 2002 filing of the Complaint, evidence continues to amass and the fact that all the evidence is not available or presented now should not preclude  Plaintiffs from proceeding to formal discovery, nor should it require constant re-pleading to account for newly discovered evidence.  The Complaint as drafted sufficiently puts Mar-Jac Poultry on notice of the nature of the ATA claims against it, as required by FRCP 8 and 12.

      **F.**      **The Complaint States a Claim Against Mar-Jac Poultry Under the Alien Tort Claims Act.**

           **1.**      **Plaintiffs have alleged facts sufficient to state a claim under the ATCA**

The alien Plaintiffs unquestionably have alleged facts sufficient to state a cause of action under the ATCA.  The Complaint describes in detail how the Islamic charitable system has been utilized to finance illegal al Qaeda activities.  TAC Introduction, pp. 199-200, 203-205.  The Complaint also alleges that al Qaeda, in particular, has used the Islamic charity system to funnel money – and hatred – through Islamic charities, with the charities' material support.  *Id*. at pp. 207-208.  Moreover, the allegations specific to Mar-Jac Poultry and the other SAAR Network Defendants allege that Mar-Jac Poultry is an active al Qaeda sponsor, through SAAR.  TAC ¶¶ 261-267.

Given the Complaint's allegations regarding the structure of and how SAAR is

used to foster and finance terrorism, it can, at the very least, be reasonably inferred – for 12(b)(6) purposes – that Mar-Jac Poultry was materially involved in aiding and abetting and/or conspiring with other Defendants and with al Qaeda in a manner intended to enable and proximately cause acts of violence and international terrorism, including the attacks of September 11th.   Such conduct clearly violates the law of nations or, alternatively, otherwise constitutes actionable conduct under the ATCA.

Moreover, to sufficiently allege an ATCA cause of action against Mar-Jac Poultry, the Plaintiffs need not allege, or prove, that Mar-Jac Poultry was directly involved in the terrorist attacks itself.  Rather, it is sufficient for the Plaintiffs to allege, as they have, that Mar-Jac Poultry conspired with or aided and abetted other Defendants in a violation of the law of nations.  Indeed, many federal courts have recognized that ATCA liability can be based on conspiratorial relationships or theories of aiding and abetting.[7]

Here, the Complaint alleges a violation of the law of nations, *i.e.*, the terrorist attacks on September 11, 2001.  Such conduct is actionable under the ATCA.  The Complaint alleges that Mar-Jac Poultry facilitated, fostered, financed, or otherwise supported terrorists that committed terrorist attacks.  The Complaint alleges Mar-Jac Poultry acted in collusion with the other SAAR Network Defendants and with SAAR.

---

[7] *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 776 (9th Cir. 1996) (affirming district court's jury instruction allowing foreign leader to be held liable upon finding that he "directed, ordered, conspired with, or aided the military in torture, summary execution, and 'disappearance'"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, No. 01 CIV 9882 (AGS), 2003 WL 1339181, at *46-47 (S.D.N.Y. Mar. 19, 2003) (collecting cases) ("U.S. courts have consistently permitted ATCA suits to proceed based on theories of conspiracy and aiding and abetting."); *Barrueto v. Larios*, 205 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2002) (holding ATCA liability can be based on allegations that defendants conspired or aided and abetted violations of the law of nations); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 2002 WL 851751, at *24-25 (N.D. Ga. Apr. 29, 2002) (holding defendant liable for aiding and abetting in acts that violate customary international law); and *Abebe-Jira v. Negewo*, 72 F.3d 844, 845-48 (11th Cir. 1996) (affirming verdict for torture and cruel, inhuman or degrading treatment where defendant supervised or participated with others in "some of the acts of torture" against plaintiffs).

TAC ¶ 267.   The Complaint alleges an illegal relationship among SAAR Network Defendants, al Qaeda and Osama bin Laden.   The Complaint also alleges those attacks could not have been carried out in the absence of financing and logistical support to al Qaeda through that relationship.   Unquestionably, such allegations satisfactorily allege that Mar-Jac Poultry conspired with others to facilitate the terrorist activities of al Qaeda, aided and abetted those activities, resulting in the attacks of September 11th.   Based on the foregoing, Plaintiffs have sufficiently alleged an ATCA claim against Mar-Jac Poultry for purposes of Rule 12.

Defendant claims that Plaintiffs were not injured "but for" Defendant's acts, that is, that proximate cause is pled incorrectly.   This contention finds support only if one assumes, as Mar-Jac Poultry apparently asks this Court to do, that the allegations of the Complaint are wrong:

> By knowingly, purposefully, recklessly and in many instances maliciously engaging in international terrorism activity, Defendant's acts were a proximate cause of the events of September 11, 2001, for which they are jointly and severely liable.

TAC p. 217-18.

If, as alleged, Mar-Jac Poultry knowingly or intentionally sponsored, supported and/or financed al Qaeda and its stated goals of committing acts of international terrorism against the United States, then it would be absurd to suggest that those very terrorist acts, including the murder of innocent people, were "unforeseeable," or that they are an intervening cause between the wrongful conduct of Mar-Jac Poultry and the death and injury to the Plaintiffs.   Defendant's reliance on this Court's decision in *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002) in support of this meritless argument is misplaced.   In *Ungar*, the foreign state defendant defaulted and plaintiffs were called

upon to establish their "claim or right to relief by evidence satisfactory to the court." *Id.* at 93. Specifically, *Ungar* involved a different set of facts, and a different standard of proof; the sufficiency of proof to sustain claims against a state actor under the FSIA in a default proceeding. *Id.* The Court's finding, after the defendant failed to answer the complaint, that the evidence presented was insufficient to satisfy a reasonable jury has no bearing on whether in this case, Plaintiffs have adequately pled their claims under Rules 8 and 12.

In any event, Plaintiffs need not prove their claims at this time, under either a default or any other standard. Pursuant to Rules 8 and 12, Plaintiffs have sufficiently alleged their claims -- that Mar-Jac Poultry sponsored international terrorism. TAC ¶ 87, ¶¶ 150 – 153, ¶¶ 261 – 267, ¶¶ 631 - 634. While Mar-Jac Poultry focuses on this paragraph in isolation, the Complaint alleges a vast network of overlapping entities – charities, corporations, banks, state sponsors and individuals – used not only to finance and promote terrorism, but also to conceal the involvement of many of the important participants. Thus, even where the conduct of an entity or individual may not yet be precisely detailed as to the ultimate proof of the material support of al Qaeda's international terrorism, dismissal under Rule 12 is not warranted.

**B.      Plaintiffs Sufficiently Allege That Their Injuries Were Proximately Caused by Defendants' Conduct.**

Mar-Jac Poultry repeatedly argues that Plaintiffs do not properly allege that any of the Defendant's actions were a "but for," or proximate cause, of their injuries. As stated above, this is not true. In light of Plaintiffs' allegations that Mar-Jac Poultry knowingly provided material support to al Qaeda for the perpetration of acts of international terrorism, specifically the attacks on September 11th, Plaintiffs have sufficiently alleged

that Mar-Jac Poultry's support was a substantial factor and proximate cause of their injuries. *See*, *e.g*., TAC Introduction, pp. 207-208, 214-219; TAC ¶¶ 150-153, 267.

Mar-Jac Poultry contends that its knowing support of al Qaeda was not a substantial factor in Plaintiffs' injuries, or that the injuries and deaths were not foreseeable. Given Osama bin Laden's express messages calling for acts of terror and violence against Americans as early as 1996, it is difficult to comprehend how it was not foreseeable that material support of al Qaeda would enable and proximately cause such terrorist acts. Nor is it comprehensible to say the sheer measure of destruction and damage was not anticipated. The notion that injuries and death were not foreseeable is particularly offensive because, as Plaintiffs allege, the murder of Americans – with its attendant personal and financial consequences – was al Qaeda's stated goal. *See* TAC Introduction, pp. 207-208, 214-219. Accordingly, "proximate cause" has been more than adequately alleged. To the extent that Mar-Jac Poultry suggests that it did not knowingly finance and support al Qaeda's campaign of terrorism, and therefore could not foresee the murderous acts of al Qaeda, then there exists a dispute over the evidence that cannot be addressed in a Rule 12(b)(6) motion.

## VI. The Complaint Adequately Alleges Common Law Claims Against Mar-Jac Poultry

With respect to Plaintiffs' claims for wrongful death, aiding and abetting, survival, negligent and intentional infliction of emotional distress, conspiracy, and negligence, Mar-Jac Poultry' arguments are a variation on a single theme. Ignoring the allegations of the Complaint about their material support of terrorism, Mar-Jac Poultry insists that the Complaint alleges that it did nothing. Because the Complaint alleges substantially more than that, it properly asserts these common law claims.

15

Mar-Jac Poultry makes the assertion that the allegations against it are insufficient, citing a couple of allegations in isolation.  As summarized herein, and detailed in the Complaint, Plaintiffs' allegations against Mar-Jac Poultry and its co-defendants are not bare.  TAC ¶¶ 261-267, ¶¶ 150-153 .  Only if the Court reads each paragraph in isolation could Mar-Jac Poultry's motion to dismiss conceivably be granted.  The Complaint alleges that Mar-Jac Poultry knowingly provided material support to terrorists determined to target the United States and kill innocent persons.  Assuming this is true, such conduct would surely constitute a "wrongful" act.

Similarly, Mar-Jac Poultry contends that no survival claim (Count Seven) can be maintained because such a claim requires an underlying wrong.  Again, however, if as alleged in the Complaint, Mar-Jac Poultry materially sponsored, financed, aided, abetted, or conspired with al Qaeda, proximately causing the September 11th terrorist acts and the undeniably "wrongful" deaths, then that would more than satisfy the "underlying wrong" requirement of any wrongful death statute.

Mar-Jac Poultry's argument concerning Plaintiffs' claim for intentional and negligent infliction of emotional distress (Count Eight) continues in this vein.  Mar-Jac Poultry argues that the Complaint does not allege that it intentionally engaged in extreme, intentional, or recklessly outrageous conduct that caused severe emotional distress.  No person can reasonably contend the attacks of September 11th were not outrageous and extreme and intentional.  Assuming, as this Court must on these motions to dismiss, that the allegations in the Complaint about Mar-Jac Poultry's role are true, Plaintiffs have stated a claim for intentional or negligent infliction of emotional distress.

The same is true with respect to Plaintiffs' claims for "aiding and abetting"

(Count Ten) and for "conspiracy" (Count Nine).  Again, Mar-Jac Poultry does not allege legal insufficiency.  It argues, instead, that the Complaint fails to allege that Mar-Jac Poultry along with other SAAR Network Defendants entered into a conspiracy with anyone to commit any act of terrorism and further fails to allege that Defendant had any awareness of a role in the September 11th attack.  Defendant argues that Plaintiffs have not alleged that they agreed to participate in a conspiracy to commit the alleged murders and injuries.  The elements of a civil conspiracy are:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and, (4) which overt act was done pursuant to and in furtherance of the common scheme.  *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983.

Plaintiffs' Complaint pleads causation between Mar-Jac Poultry's actions as co-conspirators with SAAR and others, and SAAR's aid to al Qaeda's terrorist activities. Further, naming Mar-Jac Poultry as a co-conspirator implicates causation, as well as Mar-Jac Poultry's state of mind and intent.  *Black's Law Dictionary* defines conspiracy as:

> A combination or confederation between two or more persons **formed for the purpose of committing by their joint efforts, some unlawful or criminal act,** or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful.

309 (6th ed. 1990) (emphasis added).  The Complaint alleges that Mar-Jac Poultry was a member of the conspiracy and that the conspiracy's goal was to fund international terrorism, Osama bin Laden and al Qaeda in particular.  TAC ¶ 267.  Plaintiffs have given Mar-Jac Poultry sufficient notice of and adequately pled its conspiracy claims.

As to the aiding and abetting count, Defendant argues that Plaintiffs have not

alleged that Mar-Jac Poultry knowingly assisted terrorist acts.   The elements of aiding

and abetting are:  (1) the party whom the defendant aids must perform a wrongful act that

causes an injury; (2) the defendant must be generally aware of his role as part of an

overall illegal or tortuous activity at the time that he provides the assistance; and, (3) the

defendant knowingly and substantially assists the principal violation.   *Halberstam*, 705

F.2d at 477.  Plaintiffs have alleged that Mar-Jac Poultry aided and abetted the funding of

international terrorism and al Qaeda.  TAC ¶¶ 157, 166, 179.  As the Complaint states:

> As set forth above, Defendants knowingly and substantially assisted in the
> sponsorship of Osama Bin Laden, al Qaeda, international terrorism and the
> September 11, 2001 terrorist attacks that killed and injured the Plaintiffs
> herein.

TAC, ¶ 684.

> At the time of such aiding and abetting, Defendants knew or should have
> known that its role was part of an overall and ongoing illegal, criminal
> and/or tortuous activity.

*Id.* at ¶ 685.

> As set forth above, the Defendants aided and abetted in concerted efforts,
> transactions, acts and activities designed to cause the attacks of September
> 11, 2001, on the United States, its citizens, foreign citizens, its liberties
> and freedoms.

*Id.* at ¶ 686.

As demonstrated *supra*, Plaintiffs may maintain their claims under the ATA

against Mar-Jac Poultry, and the same allegations support claims for aiding and abetting

and conspiracy.

Mar-Jac Poultry contends that it cannot be liable under a negligence theory

because, it says, it owed no duty to the Plaintiffs.  That is simply not the case.  Mar-Jac

Poultry has a duty to recognize when its funds are being used to finance radical terrorist

activities.  As a basic premise at common law, "(e)very violation of law is a breach of duty." *Thompson v. Greeley*, 107 Mo. 577, 592, 17 S.W. 962, 966 (1891).  There can be no doubt that the violations of law described herein rise to the level of negligence or gross negligence.

## VII.    The Complaint Properly Alleges Plaintiffs Are Entitled To Punitive Damages

Mar-Jac Poultry also claims that Plaintiffs are not entitled to punitive damages. (Plaintiffs seek punitive damages from Defendants, other than the Foreign State Defendant, in Count 14 of the Complaint.)  Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998) (quoting Restatement (Second) of Torts § 908(1) (1977); s*ee also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991).  If Plaintiffs prove their allegations that Mar-Jac Poultry knowingly financed and provided material support to al Qaeda knowing its purpose to commit international terrorist acts against innocent persons in the United States, those acts are obviously sufficiently outrageous to warrant an imposition of punitive damages where appropriate.

Mar-Jac Poultry's contention that the claim for punitive damages should be dismissed is entirely derivative of its contention that the Complaint fails to state any claim against it.  As previously discussed, this is not so.  As Plaintiffs properly assert claims under federal statutes allowing the broadest measure of damages with the intended goal of deterrence (as well common law claims for which punitive damages are available), they are entitled to seek punitive damages.[8]

---

[8] In order to not burden the court with an unnecessary repetition of arguments already advanced on the issue of jurisdiction, Plaintiffs incorporate herein the arguments raised in conjunction with Mr. Kazmi's

III.    **CONCLUSION**

In its motion, Mar-Jac Poultry relies entirely upon inappropriate legal standards and flawed arguments about what the evidence will show, instead of focusing on the sufficiency of the Plaintiffs' Complaint.   These arguments are improper under Rule 12(b)(6).  Plaintiffs' Complaint adequately advises Mar-Jac Poultry of the nature of the claims against it, and the claims are well-established and available to Plaintiffs, thus the Court should deny Defendants' Motions to Dismiss in their entirety.

However, recently the Plaintiffs have obtained an abundance of additional, critical information regarding the activities of Mar-Jac Poultry as well as the other SAAR Network Defendants as a result of the ongoing criminal investigation into Mar-Jac Poultry's financing of terrorism.   Therefore, if the Court still does not feel the Complaint adequately advises Mar-Jac Poultry of the nature of the claims against it or that the Complaint is not sufficient to state a claim against Mar-Jac Poultry, Plaintiffs respectfully request that this court allow Plaintiffs the opportunity to provide a more definitive statement in accordance with Rule 12(e) as requested by the accompanying motion.

New York, New York                    Respectfully submitted,
Dated:  May 14, 2004


                                                      /S/
                              _____
                              Ronald L. Motley, Esq. (SC-4123)
                              Jodi Westbrook Flowers, Esq. (SC-66300)
                              Donald A. Migliori, Esq. (RI-4936; MA-567562;
                                   MN-0245951)
                              Michael E. Elsner, Esq. (NY & VA-ME8337)
                              William H. Narwold, Esq. (NY-WN1713)

_____

Motion to Dismiss, Docket #'s 35, 44, 54, and the Order of Judge Robertson on the jurisdictional point raised by defendants.  Order, Docket #93, 3/18/03.

Ingrid L. Moll, Esq. (CT-21866 & NY-IM3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Elizabeth Smith, Esq.
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Jayne Conroy, Esq. (NY-JC8611)
Paul J. Hanly, Jr., Esq. (NY-PH5486)
Andrea Bierstein, Esq. (NY-AB4618)
HANLY CONROY BIERSTEIN
    & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq. (IN - 4941-49)
Amy Ficklin DeBrota, Esq. (IN - 17294-49)
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240
Telephone:  (317) 848-7939

Harry Huge, Esq. (DC-55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
401 Ninth Street, N.W., Suite 450
Washington, DC 20004
Telephone:  (202) 824-6046

Allan Gerson, Esq. (DC-327494)
ATTORNEY AT LAW
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Chip Robertson, Esq.
Mary Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
    & OBETZ
200 Madison Avenue, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 230-4665

21

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone:  (843) 577-9761


Attorneys for Plaintiffs