UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                    :
**In re Terrorist Attacks on September 11, 2001**    :     03 MDL 1570 (RCC)
                                                    :
------------------------------------------------------------------- X

This Document Relates To:                            :

*Federal Insurance Co., et al. v. Al-Qaida, et al.*   :     03 CV 6978 (RCC)
                                                    :
------------------------------------------------------------------- X

**ARAB BANK PLC's MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

**KING & SPALDING LLP**

*ATTORNEYS FOR DEFENDANT
ARAB BANK PLC*

1185 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036-4003
TELEPHONE: (212) 556-2100
FACSIMILE: (212) 556-2222

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.  PRELIMINARY STATEMENT .............................................................................. 1

II.  ANALYSIS OF ALLEGATIONS CONCERNING ARAB BANK ................................. 3

III.  ARGUMENT ....................................................................................................... 5

    A.  The Court Should Dismiss the First Amended Complaint Because Plaintiffs Fail to Allege Wrongdoing or Proximate Cause Regarding Arab Bank ...................... 5

        1.  Rule 12(b)(6) Standard ................................................................. 5

        2.  General Standards Regarding Banking Liability ............................. 6

        3.  Plaintiffs Fail to Plead the Elements of Their Claims....................... 9

            a.  Plaintiffs Fail to State a Claim for Trespass (Count One) ............. 9

            b.  Plaintiffs Fail to State a Claim for Wrongful Death (Count Two)........................................................................ 9

            c.  Plaintiffs Fail to State a Claim for Survival (Count Three) .......... 10

            d.  Plaintiffs Fail to State a Claim for Assault and Battery (Count Four)........................................................................ 10

            e.  Plaintiffs Fail to State a Claim for Intentional and/or Negligent Infliction of Emotional Distress (Count Five) .............................. 11

            f.  Plaintiffs Fail to State a Claim Under the Torture Victim Protection Act (Count Six).......................................................... 12

            g.  Plaintiffs Fail to State a Claim for Conspiracy or Aiding and Abetting (Counts Seven and Nine) ............................................... 13

            h.  Plaintiffs Fail to State a RICO Claim (Count Eight) .................... 15

            i.  Plaintiffs Fail to State a Claim Under 18 U.S.C. § 2331 *et seq.* (Count Ten)................................................................................ 17

            j.  Plaintiffs Fail to State a Claim for Negligence (Count Eleven).... 19

            k.  Plaintiffs Fail to State a Claim for Punitive Damages (Count Twelve) ............................................................................ 19

IV.  CONCLUSION.................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                            **Page(s)**

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000)............................................................................12

Berk v. Tradewell, Inc.,
    No. 01 Civ. 9035, 2003 WL 21664679 (S.D.N.Y. July 16, 2003) ............................16

Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.,
    291 F.3d 1000 (7th Cir. 2002) ......................................................... 8, 17-19

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................3, 6, 9

Chimarev v. TD Waterhouse Investor Servs., Inc.,
    280 F. Supp. 2d 208 (S.D.N.Y. 2003)..............................................................6

Cohen v. Standard Bank Inv. Corp.,
    No. 97 Civ. 3802, 1998 WL 782024 (S.D.N.Y. Nov. 6, 1998) ..................................7

In re Cross Media Mktg. Corp. Sec. Litig.,
    -- F. Supp. 2d --, 2004 WL 842350 (S.D.N.Y. Apr. 20, 2004)....................................6

Curley v. AMR Corp.,
    153 F.3d 5 (2d Cir. 1998) ...........................................................................19

Daniels v. St. Luke's-Roosevelt Hosp. Ctr.,
    No. 02 Civ. 9567, 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) ............................11

Doe v. Islamic Salvation Front,
    257 F. Supp. 2d 115 (D.D.C. 2003) ...........................................................8, 18

Dreizis v. Metro. Opera Ass'n, Inc.,
    No. 01 Civ. 1999, 2004 WL 736882 (S.D.N.Y. Apr. 5, 2004)....................................11

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003)............................................... 7, 14-15

Eisenberg v. Wachovia Bank, N.A.,
    301 F.3d 220 (4th Cir. 2002) .......................................................................7

El-Meswari v. Wash. Gas Light Co.,
    785 F.2d 483 (4th Cir. 1986) ......................................................................10

## <u>TABLE OF AUTHORITIES - Continued</u>

<u>Estate of DiGiacomo v. Lentz</u>,
   No. 03 Civ. 6724, 2004 WL 66690 (S.D.N.Y. Jan. 14, 2004)....................................10

<u>E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.</u>,
   No. 00 Civ. 8670, 2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003)..............................13

<u>In re Federated Dep't Stores, Inc., Sec. Litig.</u>,
   No. 00 Civ. 6362, 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004) .................................5

<u>Gaines-Tabb v. ICI Explosives, USA, Inc.</u>,
   160 F.3d 613 (10th Cir. 1998) ...................................................................................19

<u>Green v. City of N.Y.</u>,
   No. 01 Civ 1996, 2004 WL 213009 (S.D.N.Y. Feb. 4, 2004) ...................................10

<u>Guidry v. Bank of LaPlace</u>,
   740 F. Supp. 1208 (E.D. La. 1990), <u>aff'd as modified</u>,
   954 F.2d 278 (5th Cir. 1992) ........................................................................................7

<u>Higgins v. Islamic Republic of Iran</u>,
   No. 1:99CV00377, 2000 WL 33674311 (D.D.C. Sept. 21, 2000) ...............................8

<u>Holmes v. Sec. Investor Prot. Corp.</u>,
   503 U.S. 258 (1992)....................................................................................................19

<u>Kades v. Organic Inc.</u>,
   No. 00 Civ. 3671, 2003 WL 470331 (S.D.N.Y. Feb. 24, 2003) .................................15

<u>Kashi v. Gratsos</u>,
   790 F.2d 1050 (2d Cir. 1986)......................................................................................13

<u>In re Korean Air Lines Disaster</u>,
   MDL No. 565, 1985 WL 9447 (D.D.C. Aug. 2, 1985).................................................19

<u>Mortise v. United States</u>,
   102 F.3d 693 (2d Cir. 1996).........................................................................................12

<u>Nat'l Union Fire Ins. Co. v. Allfirst Bank</u>,
   282 F. Supp. 2d 339 (D. Md. 2003) ..............................................................................7

<u>Paredes v. City of N.Y.</u>,
   No. 01 Civ. 521, 2002 WL 31093606 (S.D.N.Y. Sept. 18, 2002)................................6

## <u>TABLE OF AUTHORITIES - Continued</u>

<u>Port Auth. v. Arcadian Corp.</u>,
    189 F.3d 305 (3rd Cir. 1999) ......................................................................19

<u>Renner v. Chase Manhattan Bank</u>,
    No. 98 Civ. 926, 1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ...................................7, 14

<u>Renner v. Chase Manhattan Bank</u>,
    No. 98 Civ. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000), <u>aff'd</u>, 85 Fed.
    Appx. 782, 2004 WL 48867 (2d Cir. Jan. 7, 2004) .................................................5, 14

<u>Renner v. Chase Manhattan Bank</u>,
    85 Fed. Appx. 782, 2004 WL 48867 (2d Cir. Jan. 7, 2004) .......................................13

<u>Sec. First Network Bank v. C.A.P.S., Inc.</u>,
    No. 01 C 342, 2003 WL 22299011 (N.D. Ill. Oct. 7, 2003).........................................7

<u>Smith ex rel. Smith v. Islamic Emirate of Afghanistan</u>,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003)...........................................................................8

<u>Sullivan v. Ford Motor Co.</u>,
    No. 97 Civ. 0593, 2000 WL 343777 (S.D.N.Y. Mar. 31, 2000) ...............................12

<u>Surette v. Islamic Republic of Iran</u>,
    231 F. Supp. 2d 260 (D.D.C. 2002)...............................................................................8

<u>Troni v. Banca Popolare Di Milano</u>,
    No. 89 Civ. 3299, 1992 WL 8341 (S.D.N.Y. Jan. 14, 1992)........................................6

<u>Tzaras v. Evergreen Int'l Spot Trading, Inc.</u>,
    No. 01 Civ. 10726, 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ...........................7, 19

<u>U.S. for Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v.</u>
    <u>Merritt Meridian Constr. Corp.</u>, 95 F.3d 153 (2d Cir. 1996)......................................19

<u>Ungar v. Islamic Republic of Iran</u>,
    211 F. Supp. 2d 91 (D.D.C. 2002).........................................................................8, 18

<u>Vision Specialty Food Prods., Inc. v. Ultimate Gourmet, L.L.C.</u>,
    No. 01 Civ. 3497, 2001 WL 1506008 (S.D.N.Y. Nov. 26, 2001) ..............................13

<u>Weinstein v. Islamic Republic of Iran</u>,
    184 F. Supp. 2d 13 (D.D.C. 2002) .................................................................................8

**TABLE OF AUTHORITIES - Continued**

Williams v. Bank Leumi Trust Co.,
  No. 96 Civ. 6695, 1997 WL 289865 (S.D.N.Y. May 30, 1997)........................ 7, 14-15

Wiwa v. Royal Dutch Petroleum Co.,
  No. 96 Civ. 8386, 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) .................................13

Zeising v. Kelly,
  152 F. Supp. 2d 335 (S.D.N.Y. 2001)............................................................................6

**State Cases**

A.G. Van Metre Constr., Inc. v. NVKettler L.P.,
  In Chancery Nos. 13174, 13175, 1992 WL 884467
  (Va. Cir. Ct. Jan. 29, 1992) .........................................................................................13

Bovsun v. Sanperi,
  61 N.Y.2d 219 (1984) ...................................................................................................12

Chong v. N.Y. City Transit Auth.,
  441 N.Y.S.2d 24 (App. Div. 1981) ................................................................................9

Kwarren v. Am. Airlines,
  757 N.Y.S.2d 105 (App. Div. 2003) ............................................................................11

McCallum v. Rizzo,
  No. 942878, 1995 WL 1146812 (Mass. Super. Ct. Oct. 13, 1995) ..............................7

Meroni v. Holy Spirit Ass'n for Unification of World Christianity,
  506 N.Y.S.2d 174 (App. Div. 1986) ....................................................................... 9-10

Rocanova v. Equitable Life Assurance Soc'y of the United States,
  83 N.Y.2d 603 (1994) ...................................................................................................19

Skipworth v. Lead Indus. Ass'n,
  690 A.2d 169 (Pa. 1997) ...............................................................................................13

St. Matthew Church of Christ Disciples of Christ, Inc. v. Creech,
  768 N.Y.S.2d 111 (Sup. Ct. 2003) ................................................................................9

**TABLE OF AUTHORITIES - Continued**

**Federal Statutes**

Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 ....................................................17

Antiterrorism Act ("ATA"), 18 U.S.C. § 2333 ..........................................17-18

Fed. R. Civ. P. 12(b)(6) ...............................................................................5-6

Racketeer Influenced and Corrupt Organizations Act ("RICO"),
    18 U.S.C. §§ 1962(a) ...........................................................................15-16

Torture Victim Protection Act ("TVPA"), Pub. L. 102-256, 106 Stat. 73 (1992),
    28 U.S.C. § 1350 note § 2(a) ....................................................................12

**State Statutes**

N.Y. C.P.L.R. § 215(3) (2004) ..................................................................10-11

N.Y. Est. Powers & Trusts Law § 5-4.1(1) (McKinney 2004) ............................9

N.Y. Est. Powers & Trusts Law § 11-3.2 (McKinney 2004) ............................10

Va. Code Ann. § 8.01-25 (Michie 2002) ..........................................................10

Va. Code Ann. § 8.01-56 (Michie 2002) ..........................................................10

## I.   <u>PRELIMINARY STATEMENT</u>

In addition to the <u>Federal Insurance</u> case that is the subject of this motion, Arab Bank has been named as a defendant in three other actions that have been consolidated in this proceeding: (i) <u>Burnett v. Al Baraka Investment & Development Corp.</u>, Civ. Action No. 03 CV 5738 (JR); (ii) <u>Burnett v. Al Baraka Investment & Development Corp.</u>, Civ. Action No. 03 CV 9849 (RCC)[1]; and (iii) <u>O'Neill v. Kingdom of Saudi Arabia</u>, Civ. Action No. 03 CV 1922 (RCC). Arab Bank's motion to dismiss the <u>Burnett</u> action has been fully briefed since September 12, 2003, but oral argument has not been heard.   Arab Bank has not been served by the <u>O'Neill</u> plaintiffs and, therefore, has not yet filed a motion to dismiss that action.

Like the <u>Burnett</u> and <u>O'Neill</u> complaints, the <u>Federal Insurance</u> First Amended Complaint ("First Am. Compl.") should be dismissed because it fails to state any claim against Arab Bank. Arab Bank is mentioned in only eight paragraphs of the First Amended Complaint.   <u>See</u> First Am. Compl. ¶¶ 357-64.   The only factual allegations concerning Arab Bank are that individuals and organizations that purportedly support al Qaida maintained accounts with and made wire transfers through the bank.   Such allegations do not give rise to any cause of action under settled law.   The First Amended Complaint also contains vague legal conclusions about Arab Bank's "material support" and "knowledge" of al Qaida's activities.   <u>Id.</u> ¶¶ 358, 361-63.   Not a single factual allegation supports these vague legal conclusions, and they do not give rise to any cause of action under settled pleading standards.   Simply stated, there is nothing in the First Amended Complaint (or any other complaint in this proceeding) from which the Court could infer any wrongdoing on behalf of Arab Bank.

---

[1]   The <u>Burnett</u> action filed in New York contains identical allegations as the <u>Burnett</u> action filed in Washington, D.C. that was pending before Judge Robertson.   Plaintiffs' counsel apparently filed the New York <u>Burnett</u> action as a safeguard in case Judge Robertson dismissed the Washington <u>Burnett</u> action on subject matter jurisdiction grounds.   For all practical purposes, the two <u>Burnett</u> actions should be treated as one case.

The First Amended Complaint also contains mistakes that could easily have been avoided by visiting Arab Bank's website (http://www.arabbank.com).  For example, plaintiffs mistakenly allege that Arab Bank is "headquartered in Egypt" and has "offices" in New York.  See First Am. Compl. ¶ 357.  Arab Bank actually is a Jordanian bank headquartered in Amman, Jordan whose stock is publicly traded on the Amman stock exchange.  It has only one office in the United States – a federally-licensed branch office that has been in New York for over 20 years (at 520 Madison Avenue) and is regulated by the Comptroller of Currency of the U.S. Treasury Department and the Board of Governors of the Federal Reserve System.  The bank enjoys a first-rate reputation with its U.S. regulatory authorities in terms of credit-worthiness, security, and compliance with all applicable banking laws and regulations.

In fact, for over 70 years Arab Bank has been one of the largest and most venerable financial institutions in the Middle East.  The bank manages over $20 billion in assets and ranks among the leading international banks in terms of equity, earnings and assets.  Arab Bank has operations in over 25 countries worldwide, including Great Britain, France, Italy and the United States.  Arab Bank processes tens of thousands of wire transfers each day, maintains hundreds of thousands of individual and corporate accounts, and engages in a wide variety of financial services, which include corporate, retail banking, private banking, trade financing, commercial real estate lending and other banking services.

Arab Bank condemns in the strongest of terms the horrific events of September 11, 2001.  Arab Bank is not, and never has been, a supporter of Osama Bin Laden, al Qaida, or terrorism.  Arab Bank is not among the hundreds of individuals, organizations and entities designated by the United States government as supporters of terrorism.  Arab Bank was highly offended to see its

good name listed as a defendant in these cases, and respectfully requests the Court dismiss all claims against it.

## II.   ANALYSIS OF ALLEGATIONS CONCERNING ARAB BANK

In his opinion addressing certain motions to dismiss in the Burnett case, Judge Robertson appropriately noted:

> [G]iven the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [complaint].

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003).  Careful scrutiny of the First Amended Complaint demonstrates that plaintiffs allege no facts that could give rise to any cause of action against Arab Bank.  See First Am. Compl. ¶¶ 357-64.

Paragraph 357 alleges "Arab Bank, PLC is a financial institution headquartered in Egypt, with branch offices throughout the world, including offices in New York."  Id. at ¶ 357.  This paragraph contains no allegations of wrongdoing and, in any event, is factually inaccurate as noted above.

Paragraph 358 alleges "Arab Bank has long provided financial services and other forms of material support to terrorist organizations, including al Qaida."  Id. at ¶ 358.  No factual allegation supports this vague legal conclusion.  To the contrary, the only "financial services" and "material support" allegedly provided by Arab Bank are routine banking services such as maintaining accounts and processing wire transfers.  Id. ¶¶ 359-60.

Paragraph 359 alleges "Spanish investigators have confirmed that al Qaida transferred money to the Spanish logistical cell that funded the September 11th Attack through Arab Bank.  Arab Bank accounts have also been used to distribute funds to al Qaida cells in other parts of the

world."  First Am. Compl. ¶ 359.  Paragraph 360 alleges "Arab Bank also maintains accounts for many of the charity defendants that operate within al Qaida's infrastructure, including the IIRO, MWL, WAMY, BIF, Blessed Relief (Muwafaq) Foundation and al Haramain, among others. The Kingdom of Saudi Arabia uses these accounts to fund al Qaida operations, and as the principal vehicle for supporting Palestinian suicide attacks."  Id. at ¶ 360.  Paragraphs 359 and 360 allege nothing more than supporters of al Qaida used Arab Bank's system to maintain accounts and make wire transfers.

Paragraph 361 alleges "More recently, Israeli officials seized funds associated with several accounts maintained by Arab Bank on behalf of known Hamas fronts.  These accounts were identified to Israeli officials by Arab Bank employees, confirming the bank's specific knowledge that accounts it maintained were being used to sponsor terrorist activity."  Id. at ¶ 361.  This paragraph refers to an Israeli raid of an Arab Bank branch in Ramallah in connection with the Israeli/Palestinian conflict that was the subject of a New York Times article published on February 26, 2004.  These allegations relate to the Israeli/Palestinian conflict and have nothing to do with Al Qaida or the horrific events of September 11.

Paragraph 362 alleges "Arab Bank has long known that accounts it maintained were being used to solicit and transfer funds to terrorist organizations, including al Qaida.  Despite this knowledge, Arab Bank has continued to maintain those accounts.  In doing so, Arab Bank knowingly provided financial services and other forms of material support to al Qaida."  Id. at ¶ 362.  Not a single fact supports the vague, conclusory allegation that Arab Bank has "long known" that supporters of al Qaida maintained accounts with Arab Bank.  Further, plaintiffs allege no facts from which the Court could infer Arab Bank intentionally and substantially

participated in any wrongdoing or that the bank did anything other than provide routine banking services in the ordinary course of business.

Paragraph 363 alleges "As the forgoing demonstrates, Arab Bank has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad."  First Am. Compl. ¶ 363.  Similarly, Paragraph 364 alleges "The September 11th Attack was a direct, intended and foreseeable product of Arab Bank's participation in al Qaida's jihadist campaign."  Id. at ¶ 364.  The "forgoing" actually demonstrates the exact opposite – that Arab Bank did nothing other than provide routine banking services in the ordinary course of business.  The vague, inflammatory allegations in paragraphs 363 and 364 are unsupported by a single fact and do not create a cause of action against the bank.

## III.  ARGUMENT

A.  THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT BECAUSE PLAINTIFFS FAIL TO ALLEGE WRONGDOING OR PROXIMATE CAUSE REGARDING ARAB BANK

1.  Rule 12(b)(6) Standard

Under Rule 12(b)(6), a court should dismiss the complaint if it appears that "plaintiffs can prove no set of facts in support of their claim that would entitle them to relief."  In re Federated Dep't Stores, Inc., Sec. Litig., No. 00 Civ. 6362, 2004 WL 444559, at *3 (S.D.N.Y. Mar. 11, 2004) (citing Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)).  The court must accept plaintiff's well-pleaded factual allegations as true, and the allegations must be "construed favorably to the plaintiff."  Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2000 WL 781081, at *4 (S.D.N.Y. June 16, 2000) (citations omitted), aff'd, 85 Fed. Appx. 782, 2004 WL 48867 (2d Cir. Jan. 7, 2004).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

The liberal Rule 12(b)(6) standard has important limitations, however, designed to protect defendants like Arab Bank from protracted and burdensome litigation based on insufficient allegations.  Thus, conclusory labels unsupported by factual assertions fail to satisfy the Rule 12(b)(6) standard.  See In re Cross Media Mktg. Corp. Sec. Litig., -- F. Supp. 2d --, 2004 WL 842350, at *4 (S.D.N.Y. Apr. 20, 2004) ("[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)); Paredes v. City of N.Y., No. 01 Civ. 521, 2002 WL 31093606, at *2 (S.D.N.Y. Sept. 18, 2002) ("In order to avoid dismissal, a plaintiff must do more than plead mere '[c]onclusory allegations or legal conclusions masquerading as factual conclusions.'") (citation omitted).  Indeed, "vague and conclusory allegations are insufficient."  Zeising v. Kelly, 152 F. Supp. 2d 335, 342 (S.D.N.Y. 2001) (citing Elec. Communications Corp. v. Toshiba Am. Consumer Prods., Inc., 129 F.3d 240, 243 (2d Cir. 1997)).  Further, the court "is under no obligation to accept unsupported inferences or 'sweeping legal conclusions cast in the form of factual allegations.'"  Troni v. Banca Popolare Di Milano, No. 89 Civ. 3299, 1992 WL 8341, at *2 (S.D.N.Y. Jan. 14, 1992); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 221 (S.D.N.Y. 2003) ("[T]he Court is not required to accept as true plaintiff's 'conclusions of law or unwarranted deductions of fact.'") (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)).

### 2.    General Standards Regarding Banking Liability

Judge Robertson noted there is "no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service."  Burnett, 274 F. Supp. 2d at 109.  Indeed, a bank owes no duty to non-customers concerning the wrongful

acts of a bank customer.  See Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726,

2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (Bank that accepted wire transfers from non-

customer investor for deposit into customer's account owed no duty of care to non-customer and

no duty to prevent its customer from defrauding non-customer, which thus precluded non-

customer's negligence claim under New York law); Renner v. Chase Manhattan Bank, No. 98

Civ. 926, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (dismissing negligence claim against

bank because bank owed no duty to plaintiff to prevent its customer from defrauding plaintiff).[2]

Potential liability can arise only if the bank was an active, intentional participant in the

alleged wrongdoing that caused plaintiff's injuries.  See generally Dubai Islamic Bank v.

Citibank, N.A., 256 F. Supp. 2d 158, 166-68 (S.D.N.Y. 2003); Renner, 1999 WL 47239, at **11-

12; Williams v. Bank Leumi Trust Co., No. 96 Civ. 6695, 1997 WL 289865, at **3-5 (S.D.N.Y.

May 30, 1997).  Providing routine banking services such as maintaining accounts and processing

wire transfers do not give rise to any cause of action.  Id.  These long-standing rules concerning

---

[2]    See also Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 225 (4th Cir. 2002) ("Courts
in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer
with whom the bank has no direct relationship.") (citing cases); Nat'l Union Fire Ins. Co. v.
Allfirst Bank, 282 F. Supp. 2d 339, 345 (D. Md. 2003) (A bank's "duty is owed exclusively to
the customer, not to the persons with whom the customer has dealings.  [T]o extend a duty of
care to strangers . . . would be contrary to the normal understanding of the purpose of a bank
account and would expose banks to unlimited liability for unforeseeable frauds."); Sec. First
Network Bank v. C.A.P.S., Inc., No. 01 C 342, 2003 WL 22299011, at *5 (N.D. Ill. Oct. 7, 2003)
("a bank does not have a general duty to non-customer third parties."); Cohen v. Standard Bank
Inv. Corp., No. 97 Civ. 3802, 1998 WL 782024, at *7 (S.D.N.Y. Nov. 6, 1998) (no duty of care
owed by bank to investor in allegedly fraudulent scheme perpetrated by bank borrower); Guidry
v. Bank of LaPlace, 740 F. Supp. 1208, 1218-19 (E.D. La. 1990) (as a matter of law, bank owes
no duty of care to non-customer defrauded by bank customer), aff'd as modified, 954 F.2d 278
(5th Cir. 1992); McCallum v. Rizzo, No. 942878, 1995 WL 1146812, at *2 (Mass. Super. Ct.
Oct. 13, 1995) ("[A] bank's failure to investigate a customer's suspicious activity . . . does not
give rise to liability to the third party who is injured by the customer's fraud.  The mere fact that
a bank account can be used in the course of perpetrating fraud does not mean that banks have a
duty to persons other than their own customers.").

banking liability are logical and reasonable – otherwise, banks would have unlimited exposure whenever a customer committed a wrongful act involving funds handled by the bank.

The fact that this case arises in the context of the events of September 11 does not change this general legal framework.  Recent cases decided in the context of terrorist-related injuries uniformly hold that a defendant cannot be held liable unless plaintiff alleges and proves that defendant played an active, intentional role in terrorist activities that proximately caused plaintiff's injuries.  See Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 226 (S.D.N.Y. 2003) (To state a cause of action under the Antiterrorism Act, "plaintiffs must . . . show a proximate cause between the support and resources provided, and that the defendant knew and intended to further the criminal acts."); Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev., 291 F.3d 1000, 1011-12, 1021-22 (7th Cir. 2002) (holding Antiterrorism Act requires plaintiff to plead and prove proximate cause, and that liability may be imposed only "on those who knowingly and intentionally" participate in terrorist activities).[3]

---

[3]    See also Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (holding plaintiffs failed to show a link between a member of the Islamic Salvation Front and alleged acts of terrorism committed by the group because plaintiffs offered only "conclusory statements about [defendant's] alleged role" and did not "link [defendant] to any specific acts"); Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 267-68 (D.D.C. 2002) (holding it was "conclusive that defendants had caused Buckley's death by providing material support and resources for Hizballah to abduct Buckley, torture him and deny him essential medical care."); Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (refusing to issue default judgment against defendants because plaintiffs had failed to show a direct link between defendants and the injury in question); Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 21-22 (D.D.C. 2002) (holding defendants were liable for a suicide bombing in Israel because "the defendants not only provided the terrorists with the technical knowledge required to carry out the [attack] but also gave HAMAS the funding necessary to do so"); Higgins v. Islamic Republic of Iran, No. 1:99CV00377, 2000 WL 33674311, at **5-6 (D.D.C. Sept. 21, 2000) (holding defendants were liable for death of plaintiff in Lebanon because plaintiff presented evidence that Hizballah, which had killed plaintiff, was "totally controlled" by the defendants through "formation, funding, training and management").

As noted above in Part II, plaintiffs fail to plead a single fact that could give rise to any cause of action against Arab Bank under this legal framework.  No factual allegations exist from which this Court could infer (i) Arab Bank knowingly and intentionally participated in any wrongdoing, and (ii) that any action or inaction by Arab Bank proximately caused the events of September 11.  We address briefly below the specific elements of each claim alleged in the First Amended Complaint.

    3.    <u>Plaintiffs Fail to Plead the Elements of Their Claims</u>

        a.    <u>Plaintiffs Fail to State a Claim for Trespass (Count One)</u>

Under New York law,[4] liability for civil trespass attaches when a person, "without justification or permission, either intentionally entered upon another's property, or, if entry was permitted, that the person refused 'to leave after permission to remain ha[d] been withdrawn.'" <u>St. Matthew Church of Christ Disciples of Christ, Inc. v. Creech</u>, 768 N.Y.S.2d 111, 122 (Sup. Ct. 2003) (citing <u>Rager v. McCloskey</u>, 305 N.Y. 75, 79 (1953)).  Plaintiffs clearly fail to allege any facts supporting a trespass claim against Arab Bank.

        b.    <u>Plaintiffs Fail to State a Claim for Wrongful Death (Count Two)</u>

Wrongful death actions require the plaintiff, among other things, to allege and prove that defendant committed a "wrongful act, neglect or default" that caused decedent's death.  <u>Chong v. N.Y. City Transit Auth.</u>, 441 N.Y.S.2d 24, 25 (App. Div. 1981); N.Y. Est. Powers & Trusts Law § 5-4.1(1) (McKinney 2004).  This claim fails because plaintiffs have not alleged any facts from which the Court could infer that Arab Bank committed any wrongful act, neglect or default that caused the events of September 11.  See <u>Meroni v. Holy Spirit Ass'n for Unification of World</u>

---

[4]    In <u>Burnett</u>, Judge Robertson noted that New York law "seems most likely applicable to the great majority of the claims presented here."  274 F. Supp. 2d at 108 n.16.  We assume for purposes of this motion that New York law applies to plaintiffs' common law claims, although Virginia and Pennsylvania law potentially could apply.  Any material differences between New York, Virginia and Pennsylvania law are noted herein.

Christianity, 506 N.Y.S.2d 174, 179 (App. Div. 1986) (dismissing wrongful death action because plaintiff failed to plead underlying claim).

     c.     Plaintiffs Fail to State a Claim for Survival (Count Three)

Survival actions in New York are governed by N.Y. Est. Powers & Trusts Law § 11-3.2 (McKinney 2004), which allows decedents' representatives to recover on claims that the decedent had against a defendant at the time of death.[5]  The statute and the courts require an underlying wrong to have been committed against the decedent before death, as well as the appointment of a personal representative.  See Meroni, 506 N.Y.S.2d at 179; Estate of DiGiacomo v. Lentz, No. 03 Civ. 6724, 2004 WL 66690, at *1 (S.D.N.Y. Jan. 14, 2004).  As discussed above, plaintiffs have not alleged any facts from which the Court could infer Arab Bank committed a wrongful act, neglect or default by Arab Bank that caused the events of September 11.  Accordingly, plaintiffs' survival claim must be dismissed.

     d.     Plaintiffs Fail to State a Claim for Assault and Battery (Count Four)

"In New York, an assault is 'an intentional placing of another person in fear of imminent harmful or offensive contact.'"  Green v. City of N.Y., No. 01 Civ. 1996, 2004 WL 213009, at *3 (S.D.N.Y. Feb. 4, 2004) (quoting United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)).   "A battery is 'an intentional wrongful physical contact with another person without consent.'"  Id.  Not a single fact regarding Arab Bank supports a claim for assault and battery.[6]

---

[5]     Virginia does not recognize a claim for survival.  See Va. Code Ann. §§ 8.01-25 & 8.01-56 (Michie 2002); El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 491 (4th Cir. 1986) ("[Section] 8.01-25 defers to the wrongful death statute as the exclusive statement of the grievances that Virginia will recognize when a tort victim dies of her injuries.").

[6]     Moreover, plaintiffs' claim for assault and battery is barred by the applicable statute of limitations.  CPLR § 215(3) (2004) ("[A]n action to recover damages for assault [and] battery . . . shall be commenced within one year.").  Plaintiffs asserted this claim on September

e.      Plaintiffs Fail to State a Claim for Intentional and/or Negligent Infliction of Emotional Distress (Count Five)

In New York, "to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show '(1) extreme and outrageous conduct, (2) intent to cause extreme emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'"  Dreizis v. Metro. Opera Ass'n, Inc., No. 01 Civ. 1999, 2004 WL 736882, at *4 (S.D.N.Y. Apr. 5, 2004) (quoting Bender v. City of N.Y., 78 F.3d 787, 790 (2d Cir. 1996)). "The requirements of the rule, especially the element of extreme and outrageous conduct, are rigorous and difficult to satisfy."  Daniels v. St. Luke's-Roosevelt Hosp. Ctr., No. 02 Civ. 9567, 2003 WL 22410623, at *6 (S.D.N.Y. Oct. 21, 2003).  A cause of action for intentional infliction of emotional distress must be supported by allegations of conduct by a defendant "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Id. (quoting Howell v. N.Y. Post Co., Inc., 81 N.Y.2d 115, 122 (1993)).

Plaintiffs' factual allegations regarding Arab Bank obviously fail to satisfy these standards: they have not alleged facts concerning "extreme and outrageous conduct" by Arab Bank; an "intent" to cause or "disregard of the probability of causing emotional distress" by the bank; nor any "causal connection" between an act by the bank and plaintiffs' injuries.[7]

---

10, 2003, the date on which the original Complaint was filed, and nearly two years after September 11, 2001.

[7]      This claim also is barred by the applicable statute of limitations.  In New York, "[t]he statute of limitations for intentional infliction of emotional distress is one year."  Dreizis, 2004 WL 736882, at *4 (citing CPLR § 215(3)); Kwarren v. Am. Airlines, 757 N.Y.S.2d 105 (App. Div. 2003).  Plaintiffs asserted this claim on September 10, 2003, the date on which the original Complaint was filed, and nearly two years September 11, 2001.  Thus, plaintiffs' claim for intentional infliction of emotional distress is time-barred.

Under New York law, a plaintiff may establish a claim of negligent infliction of emotional distress in one of two ways: (1) the "bystander" theory or (2) the "direct duty" theory. Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000). A defendant is liable under the "bystander" theory if: (1) the defendant's negligence created an unreasonable risk of bodily harm to a plaintiff and (2) that plaintiff suffered emotional injury from observing a serious physical injury or death inflicted on a member of the plaintiff's immediate family by the actions of the defendant. See id. (citing Bovsun v. Sanperi, 61 N.Y.2d 219, 230-31 (1984)). Plaintiffs must allege that they were in the "zone of danger," exposed to a risk of physical harm. See Bovsun, 61 N.Y.2d at 231 n.10; Sullivan v. Ford Motor Co., No. 97 Civ. 0593, 2000 WL 343777, at *8 (S.D.N.Y. Mar. 31, 2000). "Under the 'direct duty' theory, a plaintiff suffers emotional distress caused by 'defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety.'" Baker, 239 F.3d at 421 (quoting Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)). "The duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696. Plaintiffs fail to state a claim for negligent infliction of emotion distress because they have not alleged facts demonstrating duty, negligence or proximate causation. See supra at 6-9; infra at 16, 18-20.

f.   Plaintiffs Fail to State a Claim Under the Torture Victim Protection Act (Count Six)

To assert a claim under the Torture Victim Protection Act (the "TVPA"), plaintiffs must allege that Arab Bank, acting under actual or apparent authority or color of law of any foreign nation, subjected plaintiffs to torture or extrajudicial killing. See TVPA, Pub. L. 102-256, 106 Stat. 73 (1992), 28 U.S.C. § 1350 note § 2(a). This claim fails because plaintiffs do not allege facts supporting the inference that Arab Bank subjected them to "torture" or "extrajudicial killing." The claim also fails because plaintiffs do not allege Arab Bank acted "under actual or

apparent authority, or color of law, of any foreign nation." See Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386, 2002 WL 319887, at *12 (S.D.N.Y. Feb. 28, 2002) ("Statutory language makes clear that all claims brought under the TVPA must demonstrate [state action].").

g.  Plaintiffs Fail to State a Claim for Conspiracy or Aiding and Abetting (Counts Seven and Nine)

"To establish a prima facie case for conspiracy [under New York law] the plaintiff must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the corrupt agreement; (c) the parties' intentional participation in the furtherance of the common plan or purpose; and (d) the resulting damage or injury." E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., No. 00 Civ. 8670, 2003 WL 22064259, at *12 (S.D.N.Y. Sept. 5, 2003); Kashi v. Gratsos, 790 F.2d 1050, 1054-55 (2d Cir. 1986) (same).[8] Similarly, "[t]o plead an aiding and abetting claim under New York law, the plaintiff must establish the existence of a violation by the primary wrongdoer, knowledge of this violation by the aider and abettor and proof that the aider and abettor substantially assisted in the primary wrong." Renner, 2004 WL 48867, at *1 (citation omitted).[9]

Plaintiffs fail to allege the elements of a conspiracy or an aiding and abetting claim. Regarding conspiracy, there are no facts in the First Amended Complaint from which this Court can infer that Arab Bank entered into an agreement with anyone to aid and support al Qaida's terrorist activities, or otherwise intentionally or knowingly participated in terrorist activities that caused the events of September 11. See Vision Specialty Food Prods., Inc. v. Ultimate Gourmet, L.L.C., No. 01 Civ. 3497, 2001 WL 1506008, at *4 (S.D.N.Y. Nov. 26, 2001) (dismissing a

---

[8]    In addition to requiring these elements, Pennsylvania law also requires a showing of malice. See Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 174 (Pa. 1997).

[9]    Virginia does not recognize a civil cause of action for aiding and abetting. See A.G. Van Metre Constr., Inc. v. NVKettler L.P., In Chancery Nos. 13174, 13175, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992).

conspiracy claim for insufficient factual allegations: "an allegation of conspiracy requires allegations of fact from which it can be inferred that there existed an agreement between the parties to participate in the scheme.  A bare conclusory allegation of conspiracy is usually held insufficient.") (citing Nat'l Westminster Bank v. Weksel, 511 N.Y.S.2d 626, 629 (App. Div. 1987)).

Regarding the aiding and abetting claim, plaintiffs allege no facts supporting their vague, generalized conclusion that Arab Bank "knew" supporters of al Qaida maintained accounts with the bank and transferred funds through the bank's system.   "With respect to the knowledge element for aiding and abetting liability, 'New York courts and federal courts in this district have required actual knowledge.'"  Renner, 2000 WL 781081, at *6 (quoting Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996)); Williams, 1997 WL 289865, at *5.[10]  Plaintiffs allege no facts supporting their generalized legal conclusion that Arab Bank "knew" al Qaida supporters maintained accounts and transferred money through its system.  For this reason alone, the aiding and abetting count fails.  Williams, 1997 WL 289865, at *5 ("plaintiff's conclusory allegations that Bank Leumi was aware of the scheme . . . also fail to satisfy plaintiff's burden to plead actual knowledge."); Renner, 1999 WL 47239, at *12.

Further, the First Amended Complaint alleges no facts supporting the third element of an aiding and abetting claim – that Arab Bank "substantially assisted" al Qaida or the events of September 11.  Providing routine banking activities does not constitute substantial assistance under settled law.  Dubai Islamic Bank, 256 F. Supp. 2d at 167 ("The mere fact that participants in a fraudulent scheme 'use accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.")

---

[10]     But see Dubai Islamic Bank, 256 F. Supp. 2d at 166 (noting "[s]ome disagreement exists as to whether [aiding and abetting claims] require actual or constructive knowledge").

(quoting <u>Nigerian Nat'l Petroleum</u>, 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999)); <u>see id.</u> ("The affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance.") (quoting <u>Ryan v. Hunton & Williams</u>, 99-CV-5938, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000)); <u>Williams</u>, 1997 WL 289865, at *5 ("the mere fact that all the participants in the alleged scheme used accounts at Bank Leumi to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability.").

h.    <u>Plaintiffs Fail to State a RICO Claim (Count Eight)</u>

"In order to state a civil claim for damages under RICO, 'a plaintiff has two pleading burdens.'" <u>Kades v. Organic Inc.</u>, No. 00 Civ. 3671, 2003 WL 470331, at *8 (S.D.N.Y. Feb. 24, 2003) (quoting <u>Moss v. Morgan Stanley, Inc.</u>, 719 F.2d 5, 17 (2d Cir. 1983)). "First, a plaintiff must establish: '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" <u>Id.</u> "Second, a plaintiff must allege 'causation,' <u>i.e.</u>, that he or she was 'injured in his [or her] business or property by reason of a violation of section 1962.'" <u>Id.</u> ("These 'requirements . . . must be established as to each individual defendant.'") (quoting <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d Cir. 2001)).

The <u>Federal Insurance</u> plaintiffs allege only a 1962(a) claim. "To state a claim under section 1962(a) a plaintiff must make two basic allegations: first that defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise, and second, that the plaintiff suffered an injury as a result of that investment by the defendants." <u>Kades</u>, 2003 WL 470331, at *13 (dismissing § 1962(a) claim where complaint proffered only "conclusory

allegations that Defendants conspired to derive and did derive, substantial proceeds through the above-described pattern of racketeering activity and conspired to invest, and used or invested, such proceeds in the operation of the association-in-fact enterprises detailed above.").  "It is the law of this Circuit that a plaintiff must allege a particular 'investment injury,' an injury caused by the defendant's investment of racketeering income, to plead an injury under § 1962(a)." Berk v. Tradewell, Inc., No. 01 Civ. 9035, 2003 WL 21664679, at *11 (S.D.N.Y. July 16, 2003) (dismissing complaint where plaintiffs alleged no such investment injury) (quoting Quaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)).

Plaintiffs' RICO causes of action are deficient for the same reasons their other claims against Arab Bank fail:  plaintiffs have not alleged any wrongful action by Arab Bank and have not alleged proximate cause between any alleged act by Arab Bank and the events of September 11.  Within the context of the RICO statute, plaintiffs clearly fail to allege that Arab Bank "participated in" any "enterprise" through a "pattern" of racketeering activity[11] or that the bank "used or invested racketeering income to acquire or maintain an interest in the alleged enterprise."

---

[11]     Plaintiffs conclusorily allege that all defendants engaged in predicate "acts of murder, kidnapping, arson, robbery, and extortion; dealings in controlled substances and listed chemicals; the falsification of identification documents; the unlawful procurement, reproduction, sale and use of naturalization and citizenship papers, passports and visas; the obstruction of federal and state criminal investigations; and financial institution and mail fraud."  First Am. Compl. ¶ 628.  Plaintiffs, however, allege no facts against Arab Bank specifically concerning how it engaged in any of these alleged predicate acts.  Again, the only factual allegations regarding Arab Bank are that members of al Qaida wire transferred money through its system and that some of the charity defendants and Hamas fronts held accounts there, both of which are insufficient to state any cause of action against the bank.

      i.       <u>Plaintiffs Fail to State a Claim Under 18 U.S.C. § 2331 *et seq.*</u>
           <u>(Count Ten)</u>

Plaintiffs assert a claim under 18 U.S.C. § 2333, which provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorneys' fees.

18 U.S.C. § 2333(a).  The term "international terrorism" as used in § 2333 is defined in § 2331 as activities that:

> (A)     involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B)     appear to be intended –
>
> > (i)     to intimidate or coerce a civilian population;
> > (ii)    to influence the policy of a government by intimidation or coercion; or
> > (iii)   to affect the conduct of a government by mass destruction, assassination, or kidnapping.

18 U.S.C. § 2331(1)(A) and (B).  Plaintiffs fail to state a claim under this statute because the complaint is completely devoid of any factual allegations from which this Court can infer that Arab Bank engaged in any of the activities described in the statute.

Nor does the complaint state a claim against Arab Bank for providing "material support" to al Qaida or otherwise aiding and abetting terrorism pursuant to the Seventh Circuit's recent holding in <u>Boim v. Quaranic Literacy Institute and Holy Land Foundation for Relief and Development</u>, 291 F.3d 1000 (7th Cir. 2002).  In <u>Boim</u>, the parents of a U.S. citizen murdered in Israel by Hamas sued several individuals and "charitable organizations" under § 2333.  Two of the "charitable organizations" moved to dismiss the complaint for failure to state a claim.  The

district court denied their motion and the Seventh Circuit affirmed.  The Seventh Circuit held that § 2333 imposes liability for aiding and abetting terrorism only if plaintiffs "prove that the defendants knew of Hamas' illegal activities, that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities."  291 F.3d at 1023.[12]  Here, there is not one factual allegation supporting plaintiffs' legal conclusion that Arab Bank provided "material support" to al Qaida.

Plaintiffs' claim under § 2333 also fails because plaintiffs allege no facts linking the events of September 11 to any action or inaction by the bank.  As explained in Boim, § 2333 itself requires that a plaintiff must be injured "by reason of" an act of international terrorism, meaning that the defendant's conduct must have proximately caused the plaintiff's injury:

> In the circumstances of this case, the Boims cannot show that David Boim was injured 'by reason of' the defendants' payments to Hamas in the traditional tort sense of causation unless they can also show that murder was the reasonably foreseeable result of making the donation.  To hold defendants liable for donating money without knowledge of the donee's intended criminal use of the funds would impose strict liability.  Nothing in the language of the statute or its structure or history supports that formulation.[13]

---

[12]  In Boim, plaintiffs alleged that defendants "supplied money to Hamas to fund terrorist operations, that they are 'front' organizations with ostensibly legitimate purposes which are actually engaged in fund-raising and money laundering in support of terrorist activities . . . . [and that they] provided the money to purchase the weapons and train the men who killed David Boim."  Id.  Because plaintiffs' complaint contained specific allegations that the defendants knew about Hamas' illegal activities and provided aid to Hamas with the intent to facilitate those activities, the court upheld the complaint.  Id.  Unlike the allegations in Boim, plaintiffs make no such allegations vis-à-vis Arab Bank.

[13]  See also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68 (1992) ("by reason of" language in civil RICO statute requires a showing that defendant's conduct proximately caused plaintiff's damages); Doe, 257 F. Supp. 2d at 121 ("All ten of plaintiffs' declarations describe the effects on individuals of the horrific violence in Algeria and attribute blame to 'Islamic fundamentalists' . . . but none offers more than conclusory statements about [defendant's] alleged role."); Ungar, 211 F. Supp. at 99 ("[P]laintiffs have established that Iran provided extensive support to HAMAS, but their proof does not link that support to the Ungar murder specifically.").

Id. at 1012.  Plaintiffs make no factual allegations showing their injuries were the reasonably foreseeable result of any conduct by Arab Bank.  See In re Korean Air Lines Disaster, MDL No. 565, 1985 WL 9447, at **7-8 (D.D.C. Aug. 2, 1985) (dismissing claims against manufacturers because shooting down of airplane was a superceding cause not foreseeable by manufacturers).[14]

j.   Plaintiffs Fail to State a Claim for Negligence (Count Eleven)

To state a claim for negligence, plaintiffs must allege: (1) the existence of a duty flowing from defendant to plaintiffs; (2) a breach of that duty; (3) proximate causation; and (4) damages. See Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998); Tzaras, 2003 WL 470611, at *5.  This claim fails because plaintiffs have not alleged any facts showing that Arab Bank acted negligently or otherwise caused plaintiffs' injuries.  The claim also fails because the First Amended Complaint neither alleges nor identifies a duty that Arab Bank owed to plaintiff's insureds.  See supra Part III.A.

k.   Plaintiffs Fail to State a Claim for Punitive Damages (Count Twelve)

In New York, "a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of *a pattern of similar conduct directed at the public generally*."  U.S. for Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 161 (2d Cir. 1996) (affirming dismissal of claim for punitive damages where allegations failed to evince defendant's conduct was part of a pattern of similar conduct directed at the public generally); Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d

---

[14]    See also Port Auth. v. Arcadian Corp., 189 F.3d 305 (3rd Cir. 1999) and Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613 (10th Cir. 1998).  In both cases, the courts of appeals held that fertilizer manufacturers could not reasonably foresee that terrorists would mix their products with other ingredients to create explosives to cause buildings to collapse and occupants to be killed in the 1993 World Trade Center and 1995 Oklahoma City bombings.  The bomb-making by the terrorists were found to be superseding and intervening events.

603, 613 (1994) (same).   As discussed above, the First Amended Complaint's unsupported conclusory allegations do not even state a cause of action against Arab Bank, much less demonstrate egregious tortious conduct giving rise to a claim for punitive damages. Accordingly, Count Twelve must be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Arab Bank's motion to dismiss with prejudice.

Dated: May 21, 2004

KING & SPALDING LLP

By:   ____/s/ Richard T. Marooney, Jr._____
    Richard A. Cirillo  (RC 7472)
    Richard T. Marooney, Jr.  (RM 0276)
    Jeanette M. Viggiano  (JV 0802)
    1185 Avenue of the Americas
    New York, NY  10036-4003
    Telephone:  (212) 556-2100
    Facsimile:  (212) 556-2222

*Attorneys for Defendant Arab Bank Plc*