IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK<br>ON SEPTEMBER 11, 2001<br><br>-------------------------------------------------<br><br>FEDERAL INSURANCE CO., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AL QAIDA, et al.,<br><br>　　　　　Defendants. | CASE NO. 03 MD 1570<br><br>-------------------------------------------------<br><br>CASE NO.  03 CV 6978 |

**NOTICE OF MOTION**

　　　　PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), and upon the declaration and memorandum of law attached hereto, the undersigned will move the Court, before the Honorable Richard C. Casey, U.S.D.J., at the United States District Court, Southern District of New York, 500 Pearl Street, New York, New York, 10007, at a date and time to be determined, for an order dismissing the First Amended Complaint against African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation for the following reasons:

　　　　(a)　　The Complaint fails to state any claim upon which relief can be granted because it fails *to allege any facts* against the Movants from which the Court could infer a cognizable claim; and

(b) Plaintiffs have failed to plead and do not have any facts to demonstrate (because there are none) that the Court has personal jurisdiction over these entities, given that they have no contacts with the State of New York, and none of the counts that could potentially confer jurisdiction states a claim against them.

WHEREFORE, African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation respectfully request that the Court grant their motion to dismiss with prejudice.

Respectfully submitted,

Dated: May 21, 2004

By: /s/ Nancy Luque
NANCY LUQUE (NL-1012)
DONNA M. SHEINBACH (DS-6247 )
**GRAY CARY WARE & FREIDENRICH** LLP
1625 Massachusetts Avenue NW, Suite 300
Washington, DC  20036-2247
Tel: 202-238-7764
Fax: 202-238-7701

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation (Admitted Pro Hac Vice)*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | CASE NO. 03 MD 1570 |
| -------------------------------------------- | -------------------------------------------- |
| FEDERAL INSURANCE CO., et al., Plaintiffs, v. AL QAIDA, et al., Defendants. | CASE NO. 03 CV 6978 |

**MEMORANDUM OF LAW IN SUPPORT OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, SANA-BELL, INC., STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC., AND YORK FOUNDATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation ("Movants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).

**SUMMARY OF ARGUMENT**

This Complaint states no facts about any of the Movants. They are listed once in a section entitled "The SAAR Network" as either (a) "established and funded by, or closely affiliated with, defendant Suleiman Abdul Aziz al Rajhi"; or (b) "operating within the SAAR Network." (Compl. at ¶¶ 223-24.) The "SAAR Network" is nowhere defined or elucidated; there is not one fact alleged about what any of these twelve entities did, or conspired to do, to fund al Qaida or cause the atrocities of September 11th. The claims against these entities should be dismissed with prejudice for Plaintiffs' failure to state *any* claim against *any* of them for anything at all.

Plaintiffs' "SAAR Network" is a fiction that apparently includes essentially every Muslim charity in the United States (and presumably elsewhere). By sleight of hand, Plaintiffs have lumped Movants into a nebulous web *without any factual support*, among other things, as to: (1) why and how the listed entities are a "network"; (2) why and how any of these entities are included in the "network"; (3) how the purported network is structured; (4) when and whether the "network" meets; (5) what the relationships are between the members; (6) whether any of those in the "network" have a common operating scheme; and (7) what that scheme is.

Indeed, no allegations are made concerning any particular of this invented network. It is as if Plaintiffs discovered that 100 of the Fortune 500 companies had overlapping board members and randomly called them the "Fortune 500 Network" and alleged a factually baseless ill-purpose. The mere fact that the entities are Muslim charities provides no better—and no sufficient—basis for conclusory allegations of a network of entities acting together.

Despite Plaintiffs' collective references to Movants as part of the "SAAR Network,"[1] the fact that the allegations of the Complaint fail to support the conclusion that any such thing exists dooms any claims they have against this fictitious entity. The "SAAR Network" *has no recognized existence*. As it is entirely an invention of Plaintiffs, it is remarkable—and egregiously impermissible—that Plaintiffs have attempted to rely on this entirely fictitious entity to *avoid all of the required steps* of pleading an *actual* conspiracy.

Further, by carefully defining this imaginary conglomerate of entities as a "network," Plaintiffs ask this Court to infer that this is a "fact" which can rise to the level of an "allegation" against these defendants which entitles them to relief. *It does not.* Plaintiffs have used the term "network" in an attempt to connote a relationship between disparate entities that exists for an improper purpose. But because Plaintiffs have grouped defendants together under a title of their own design, without *any factual support* for any conclusion that they acted together (because there is none), this Court cannot infer that such a "web" exists in the first place, much less that it is a front for "material support to terrorism." Movants respectfully submit that when the Court views the Complaint without considering Plaintiffs' impermissible hyperbole, innuendo, rank speculation, and unsupported deductions, it will find that Plaintiffs do not allege *any facts* that could state *any cognizable claim* against the moving entities.

Claims stated without any basis in fact cannot be left to discovery; instead, they must be dismissed in their entirety at the outset. The rules of pleading have no meaning if a plaintiff is

---

[1] Sana-Bell, Inc. is not included in Plaintiffs' contrived definition of the "SAAR Network" (Compl. at ¶¶ 223-24), but is referred to in paragraph 229 as one of the "SAAR entities." Since the mid-1990s, Sana-Bell, Inc. has been a defunct corporation with no assets.

3

permitted to state conclusory allegations and then engage in a fishing expedition "wishing and hoping" to find some fact to support the allegations later. This Complaint must be dismissed with prejudice.

## STATEMENT OF "FACTS"

Plaintiffs' have claimed that the "SAAR Network" is the "surreptitious" transferor of funds to terrorist organizations, including al Qaida, within the United States. (Compl. at ¶ 222.) Rather than adduce facts to explain how the "SAAR Network" acts as such a conduit, Plaintiffs focus on the number of entities operating "under the umbrella of the SAAR Network" (allegedly more than one hundred) and that the entities "are related by common management and parent/subsidiary relationships." (Compl. at ¶¶ 224-25.) Plaintiffs also "allege" that many—but not which ones—of the "SAAR Network" entities "maintain[] no physical presence at their purported principal place of business." (Compl. at ¶ 225.)

*That is it*. From here, Plaintiffs ask the Court to swallow their next allegation, which is that all of "[t]he entities operating within the SAAR Network have long acted as fully integrated components of al Qaida's logistical and financial support infrastructure, and provided material support and resources to al Qaida and affiliated FTOs." (Compl. at ¶ 226.) Plaintiffs do not explain how these alleged interlocking directorates have "acted as fully integrated components of al Qaida" or support their claim that they are *fronts for terror*. They do not even attempt to demonstrate how they act in conjunction with al Qaida's infrastructure. It is inconceivable that a claim that a business does not maintain a public operating space is enough to require that the business defend itself in court on terrorism charges that are undeveloped and unspecific. The Complaint is nothing more than unsubstantiated, conclusory, and sweeping generalities masquerading—to Plaintiffs alone—as fact.

4

The sole allegation Plaintiffs make with respect to any of the Movants in paragraph 229, is that Sana-bell, Inc., a Plaintiff-defined "SAAR entity" (but not one of those listed in Plaintiffs' "SAAR Network" list), and another entity, also labeled by Plaintiffs as a "SAAR entity," "engaged in financial transactions with [an Islamic investing firm.]" The rest of this paragraph and the following paragraph purport to be allegations regarding what the Islamic investing firm did with its own funds, without any allegation as to Sana-bell, Inc.'s knowledge and intent, or as to causation. Despite Plaintiffs' claim that "the forgoing demonstrates" the providing of "critical financial and logistical support to al Qaida" (Compl. at ¶ 231), these statements provide *no basis* for this Court to determine that sufficient facts have been alleged to state a cause of action against Sana-bell, Inc. or the remaining Movants. In short, there simply are *no allegations* as to any of the necessary elements to support any of Plaintiffs' causes of action, including conspiracy, aiding and abetting, or material support to al Qaida, September 11th, or otherwise.

This Complaint serves only to demonstrate that Plaintiffs are not in possession of *any facts* that connect the Movants to al Qaida and/or September 11th. Plaintiffs have not made any allegations sufficient to demonstrate to this Court any sufficient factual support for their theory that the mysterious "SAAR Network"—merely because there are general allegations of overlapping officers and directors with other Muslim groups—exists or is the source of all evil, and the Court cannot properly infer such a conclusion from sweeping, general statements regarding these entities. Although Plaintiffs apparently know nothing about these businesses— nor comprehend their legitimate activities—their lack of any specificity is not "liberal pleading," but a heinous example of what can happen if the Federal Rules of Civil Procedure are not enforced strictly. As demonstrated below in detail, measuring the allegations contained in this

5

Complaint against the well-settled law compels the conclusion that Plaintiffs have not and cannot state a sufficient claim against the Movants.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THERE ARE NO FACTS TO SUPPORT THE ELEMENTS OF ANY OF THE COUNTS

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993) (internal quotations omitted). A complaint needs to allege *facts*, from which the court may at least infer that the plaintiff can prove its claims, for it to survive dismissal. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

Plaintiffs broadly state in Section I entitled "Parties" that all of the "non-designated"[2] defendants:

> 66.  . . . have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons.

The only other allegations Plaintiffs rely on to state a claim are the following:

> 146.  . . . The SAAR Network of businesses and charities was created to provide funding, money laundering and other material support to terrorist organizations, including al Qaida. . . .
>
> 222.  Beginning in the 1980s, several prominent and wealthy sponsors of al Qaida's global jihad began establishing a network of interrelated

---

[2] The term "designated" as used in the Complaint refers to the entities and individuals that "have been designated as supporters and associates of terrorists by the U.S. government, pursuant to Executive Order 13224." (Compl. at ¶ 65.)

6

>ostensible charities, think tanks and for-profit businesses within the United States, commonly referred to as the "SAAR Network," to generate and surreptitiously transfer funds to terrorist organizations, including al Qaida.

These demonstrate Plaintiffs' theme throughout the Complaint: that such wholly, non-specific, conclusory statements actually state a claim for conspiracy,[3] aiding and abetting, or material support to terrorism. *They do not*. *Schenker v. Assicurazioni Genereali S.P.A., Consol.*, No. 98 Civ. 9186 (MBM), 2002 WL 1560788, at *10 (S.D.N.Y. July 15, 2002) ("wholly non-specific allegations cannot form the 'sole basis' for connecting the moving parties to alleged conspiracy"). These conclusions masquerading as facts are repeated over and over throughout the Complaint, but repetition does not remedy their fatal defect.

Even worse, Plaintiffs remaining allegations are nothing but statements as to who they believe are members of their imaginary "SAAR Network," without any factual allegations as to why that belief is factually supported or what these entities or individuals *did* or *conspired to do* that would make them liable for September 11th. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (no weight to legal conclusions cast as factual allegations); *Albert v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988) (court should not give any weight to conclusory assertions ungrounded in any assertion of fact). Because there are *no specific allegations of fact*, there are no facts from which the Court can draw reasonable inferences to save this Complaint. *Amalgamated Cotton*, 2001 WL 314650, at

---

[3] It is also impossible to comprehend from the Complaint how many conspiracies Plaintiffs are "alleging." For example, is the conspiracy amongst the members of the so-called "SAAR Network," or have each of the Movants separately conspired with al Qaida, or both?

*2 ("vague and conclusory allegations" will not withstand a motion to dismiss); *see also Bell*, 2001 WL 262718, at *2 (same).

At best, Plaintiffs' allegations regarding the "SAAR Network" are based upon the alleged wrongs of others, not its alleged "members," and do not constitute a colorable cause of action. Nor can a general "aider and abettor," "co-conspirator," or "material supporter" "allegation" serve to plead properly either the federal statutory or common law state claims. *Bell*, 2001 WL 262718, at *2, quoting *Am. Council of Learned Societies v. MacMillan, Inc.*, No. 96 CIV. 4103, 1996 WL 706911, at *3 (S.D.N.Y. Dec. 6, 1996) (complaint "must 'contain allegations concerning *each of the material elements necessary to sustain recovery* under a viable legal theory'") (emphasis added); *see also Amalgamated Cotton Garment & Allied Indus. Retirement Fund v. Youngworld Stores Group, Inc.*, No. 99 Civ. 3852 (RCC), 2001 WL 314650, at *2 (Mar. 30, 2001, S.D.N.Y.).

The elements of a civil RICO[4] are nowhere to be found in the Complaint;[5] nor is there any allegation of an international agreement pursuant to which the ATA count could survive.[6]

---

[4] As Plaintiffs have not as of yet filed a RICO statement pursuant to this Court's individual practice rules, the Movants do not fully address this argument, but note simply that the Complaint does not include any facts to assert a RICO claim as a result of the "reasonable inquiry" required by Fed. R. Civ. P. 11.

[5] *See GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). A plaintiff alleging a civil RICO violation must establish a "pattern of racketeering activity." *Id.* "The plaintiff must plead at least two predicate acts, *see* § 1961(5), and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Id.* (internal citations omitted).

[6] *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1011-12 (7th Cir. 2002) (analyzing a motion to dismiss pursuant to 18 U.S.C. § 2333 and finding that the statute requires that a plaintiff be injured "by reason of" an act of international terrorism.) In *Boim*, the Seventh Circuit held that the statute should be analyzed like a tort claim, requiring that the defendant possess knowledge and intent, and requiring proof of proximate cause (foreseeability). *Id.*

The common law claims are also devoid of any factual support. As found recently by the Seventh Circuit, the bare allegation of giving money to an alleged terrorist group will not withstand a motion to dismiss based on the acts of that group. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011-12 (7th Cir. 2002) (making donations to an alleged terrorist group, without "knowledge of and intent to further payee's violent criminal acts," cannot sustain tort cause of action); *see also Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (financial support of alleged terrorist group not sufficient to establish liability for terrorist act in the absence of additional connection to the act).

Because a mere conclusory allegation that a party is an "aider and abettor," "co-conspirator," and/or "material supporter" is insufficient to state a claim, it is required that facts be alleged regarding each element of the claim to support these legal conclusions. *See, e.g., Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) (insufficient to plead a RICO claim by lumping together the defendants); *Pittman by Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1988) ("aiding and abetting" requires that the perpetrator *know* the acts he was assisting and actually have participated in the misconduct at issue). This Plaintiffs wholly failed to do.[7]

The conclusory "co-conspirator" statement not only gives no factual basis whatsoever for what, if any, agreement existed among these twelve entities and al Qaida; who made any such agreement; what was done in furtherance of any such agreement; or how the agreement's goals

---

[7] The policy behind this is clear: a defendant cannot possibly defend himself from such an allegation that states no factual basis. *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (conclusory, vague and general allegations of conspiracy insufficient); *Hattley v. Goord*, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (granting dismissal where complaint did not contain "a single allegation as to when, where or how" the alleged conspiracy was formed); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 125 (E.D.N.Y. 2000) (conclusory allegation

(footnote continued on next page)

9

were known to all, but it also fails even to allege the nature of the conspiracy (*i.e.*, RICO, ATA). *See Pollack v. Nash*, 58 F. Supp. 2d 294, 302 (S.D.N.Y. 1999) (citations omitted) (conspiracy claim only pled properly when a plaintiff alleges "specific facts suggesting that there was a mutual understanding among the conspirators to take action directed toward an unconstitutional end"); *see also Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir. 1993) (citations omitted) ("while a plaintiff should not plead mere evidence, he should make an effort to provide some details of time and place and the alleged effect of the conspiracy"); *Loftus v. Southeastern Pennsylvania Trans. Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (citation omitted) (complaint dismissed where no allegation of "'communication, consultation, cooperation, or command from which [ ] an agreement [could] be inferred'").

Here, where Plaintiffs' only allegations against Movants is that they are part of an "interlocking" group of charities and "ostensible" businesses, whose officers and directors sometimes sit on the boards of other charities and businesses, this Court must find that such relationships do not constitute a conspiracy, aiding and abetting, or "material support." The "network" is generally alleged to have conspired, but Plaintiffs do not explain or even allege how this "network" operated, or which one of its "members" conspired with anyone else. A complaint must contain *allegations* based on *facts*. Stating only that the entities within the "SAAR Network" are fronts for terror—*without more*—is not sufficient. *Campoverde v. Sony Pictures Entertainment*, No. 01 Civ. 7775 (LAP), 2002 WL 31163804, at *5 (S.D.N.Y. Sep. 30,

---

(footnote continued from previous page)
of conspiracy without reference to specific facts which might support a conspiracy not sufficient).

2002) ("legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss). Plaintiffs have not—and cannot—meet their burden of proof under Rule 12(b)(6) with respect to these entities and the Complaint should be dismissed as to them with prejudice.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER THESE ENTITIES

The Complaint does not state a *prima facie* case that this Court has personal jurisdiction over the Movants because it does not set forth "legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996); *SEB S.A. v. Montgomery Ward & Co.*, No. 99 CIV. 9284 (RCC), 2002 WL 31175244 (S.D.N.Y. Oct. 1, 2002). While a plaintiff's factual allegations are assumed to be true, for purposes of ruling on a Rule 12(b)(2) motion to dismiss, where Plaintiffs make *no* factual allegations, there is no basis for the Court's exercise of personal jurisdiction.

Plaintiffs fail to allege *anything* that Movants did within the State of New York that would subject them to the jurisdiction of this Court. Movants have no contacts with the State of New York: they do not conduct any business in New York; they are not incorporated in New York; and they do not derive any substantial revenue from New York.

Nor can Plaintiffs rely on New York's long arm statute to confer jurisdiction. Plaintiffs have not alleged that these entities committed a tortious act without the state that caused injury within the state. N.Y. C.P.L.R. § 302(a)(3) ("a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: . . . (3) commits a tortious act without the state causing injury to person or property within the state");

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 786 (2nd Cir. 1999) (a plaintiff must allege facts constituting "a tort under the law of the pertinent jurisdiction" under New York's long-arm statute).

Not only have Plaintiffs failed to allege any tortious act, but in order for subsection three of New York's long-arm statute to apply, these entities must either (i) regularly engage in business or "any other persistent course of conduct" in New York, or "derive[] substantial revenue from goods used or consumed or services rendered in the state"; or (ii) expect[] or should reasonably expect [the tortious act] to have consequences" there *and* "derive[] substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(i)-(ii). Plaintiffs have not alleged any act(s) by these entities that would cause them to be subject to New York's long-arm statute for purposes of conferring personal jurisdiction upon them.

Without any factual allegations as to personal jurisdiction, nor minimum contacts with the forum, this Court does not have jurisdiction over the Movants.

### III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE MOVANTS BASED ON THE FEDERAL STATUTORY CLAIMS EITHER

The venue provision of the Anti-Terrorism Act of 1991 ("ATA") provides that "[a]ny civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent." 18 U.S.C. § 2334(a). Process under the ATA may be served "in any district where the defendant resides, is found, or has an agent." *Id.*

Courts have interpreted federal statutes with nationwide service of process provisions to confer personal jurisdiction so long as the defendant has been properly served and due process concerns are met. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993),

12

*cert. denied*, 513 U.S. 822 (1994). Due process requires that the defendant have certain "minimum contacts" with the forum such that the assertion of personal jurisdiction "comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

But if the federal statutory claim is not colorable, this basis for personal jurisdiction over the defendant fails.[8] *See, e.g.*, *Nix v. Hoke*, 62 F. Supp. 2d 110, 115 (D.D.C. 1999) (where RICO claim dismissed, nationwide service of process provision inapplicable). As discussed in Part I., *supra*, Plaintiffs fail to state a cognizable claim under the ATA; most obviously, because they have not alleged the international act that they committed that caused September 11th or, alternatively, how Movants participated in any international act committed by anyone else. *Estates of Ungar v. Palestinian Authority*, 153 F. Supp. 2d 76, 97-98 (D.R.I. 2001) (18 U.S.C. § 2333 states a cause of action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism").[9] Thus, the Court lacks personal jurisdiction over these entities based on any federal cause of action, and must

---

[8] Whereas the court's jurisdiction is typically considered before any claim on the merits, it has been held that in the interest of convenience, a Rule 12(b)(6) motion for failure to state a claim may be decided prior to a Rule 12(b)(2) personal jurisdiction motion, where jurisdiction is based on the plaintiff's failure to state a claim. *W.H. Elliott & Sons Co. v. Nuodex Products Co.*, 243 F.2d 116, 119 (1st Cir. 1957).

[9] An act of international terrorism is defined in 18 U.S.C. § 2331: Plaintiffs had to have alleged (a) a violent act "dangerous to human life" that violates the criminal laws of the United States; (b) intended

    (i) to intimidate or coerce a civilian population;
    (ii) to influence the policy of a government y intimidation or coercion; or
    (iii) to affect the conduct of a government by assassination or kidnapping; and

(c) that occurs primarily outside the territorial jurisdiction of the United States, or that transcends boundaries in terms of the means by which they are accomplished.

dismiss the pendent state law claims as well pursuant to Movants' lack of "minimum contacts" with the State of New York as discussed in Part II, *supra*.[10]

---

[10] Under the Fourteenth Amendment due process analysis, consisting of a "minimum contacts" test and a "reasonableness" inquiry, see *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), this Court should also find that it would unreasonable to require Movants to defend themselves in a New York court. *See, e.g., Republic of panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 947 (11th Cir. 1997). Where a defendant who is subject to the personal jurisdiction of a court based on a federal statute because s/he has minimum contacts with the United States, a court may find that jurisdiction does not comport with "fair play and substantial justice" if s/he "will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id.*, quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

**CONCLUSION**

For all the foregoing reasons, African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint with prejudice.

Respectfully submitted,

Dated:   May 21, 2004	By:	/s/ Nancy Luque
	NANCY LUQUE (NL-1012)
	DONNA M. SHEINBACH (DS-6247 )
	**GRAY CARY WARE & FREIDENRICH** LLP
	1625 Massachusetts Avenue NW, Suite 300
	Washington, DC  20036-2247
	Tel: 202-238-7764
	Fax: 202-238-7701

	*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation (Admitted Pro Hac Vice)*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of May, 2004, I caused an electronic copy of the foregoing Motion to Dismiss the First Amended Complaint to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

 

/s/ Donna M. Sheinbach
Donna M. Sheinbach (DS-6247)