IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON<br>SEPTEMBER 11, 2001 | )<br>)<br>)<br>) | **Civil Action No. 03MDL1570 (RCC)**<br>Relates to:  C.A. No. 03 CV 6978 (RCC) |

**MEMORANDUM IN SUPPORT OF MOTION FOR
LIMITED APPEARANCE OF THE ROYAL EMBASSY OF SAUDI ARABIA,
HRH PRINCE BANDAR BIN SULTAN BIN ABDULAZIZ,
HRH PRINCESS HAIFA AL-FAISAL, AHMED A. KATTAN, AND
ABDUL RAHMAN I. AL-NOAH TO MOVE FOR A PROTECTIVE ORDER**

KELLOGG, HUBER, HANSEN,
  TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

May 24, 2004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ................................................................................................................2

ARGUMENT ......................................................................................................................4

I.      The Discovery Sought by the Plaintiffs Infringes on the Sovereign Immunity of Saudi Arabia in Violation of the Foreign Sovereign Immunities Act............................................5

II.     The Subpoenas Seek Protected Diplomatic Records in Violation of Core Diplomatic Immunities Provided Under the Diplomatic Relations Act of 1978 and the Vienna Convention on Diplomatic Relations of 1961 ....................................................................7

III.    The Discovery Sought by Plaintiffs Would Unreasonably Infringe on the Movants' Privacy Interests..................................................................................................................9

CONCLUSION..................................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES** Page

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989) ............................................................................................................5

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ........................................................................................6

Burnett v. Al Baraka Inv. & Dev. Corp.,
    No. 02-1616, mem. op. (D.D.C. July 7, 2003) ....................................................................6

Carey v. Berisford Metals Corp.,
    No. 90-1045, 1991 WL 44843 (S.D.N.Y. Mar. 28, 1991) ..................................................4

Catskill Dev., LLC v. Park Place Entm't Corp.,
    206 F.R.D. 78 (S.D.N.Y. 2002) .........................................................................................4

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) ..........................................................................................5, 6

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) ............................................................................................6

Gabay v. Mostazafan Found. of Iran,
    151 F.R.D. 250 (S.D.N.Y. 1993) ........................................................................................5

Liberian Eastern Timber Corp. v. Government of the Republic of Liberia,
    659 F. Supp. 606 (D.D.C. 1987) ........................................................................................8

In re Machne Israel, Inc.,
    48 Fed. Appx. 859, No. 02-1962, 2002 WL 31228282 (3d Cir. Oct. 4, 2002) ....................1

Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan,
    134 F. Supp. 2d 528 (S.D.N.Y. 2001) ..........................................................4, 5, 6, 7, 8, 10

In re Papandreou,
    139 F.3d 247 (D.C. Cir. 1998) ............................................................................................6

Sales v. Republic of Uganda,
    No. 99-3972, 1993 WL 437762 (S.D.N.Y. Oct. 23, 1993) .................................................8

Sierra R. v. Katz utile Ltd,
    No. 90 Civ. 4913, 1994 WL 185751 (S.D.N.Y. May 11, 1994) .........................................4

Transcor, Inc. v. Furney Charters, Inc.,
    212 F.R.D. 588 (D. Kan. 2003)..................................................................................4

**STATUTES AND RULES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq................................1

Vienna Convention on Diplomatic Relations of 1961 ...................................................................1

Diplomatic Relations Act of 1978, 22 U.S.C. § 254d.................................................................1, 9

28 U.S.C. § 1603.............................................................................................................................5

Federal Rules of Civil Procedure:

    Rule 12(b)(2).......................................................................................................................1

    Rule 26(c).......................................................................................................................1, 9

    Rule 26(c)(1).......................................................................................................................4

    Rule 26(c)(4).......................................................................................................................4

    Rule 45(c)(3)(A) .................................................................................................................3

    Rule 45(c)(3)(A)(iii) ...........................................................................................................9

**OTHER MATERIALS**

Charles A. Wright & Arthur Miller, Federal Practice & Procedure:

    Vol. 5A (1990 & Supp. 2004).............................................................................................1

    Vol. 9A (2d ed. 1995) .........................................................................................................5

Eileen Denza, Diplomatic Law (2d ed. 1998)

The Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz (Ambassador of the Kingdom of Saudi Arabia) ("Prince Bandar"), HRH Princess Haifa Al-Faisal (his wife) ("Princess Haifa"), Ahmed A. Kattan (Deputy Chief of Mission of the Royal Embassy of Saudi Arabia), and Abdul Rahman I. Al-Noah (Counselor at the Embassy of Saudi Arabia) (collectively, the "Movants") hereby seek to appear (as authorized by Federal Rule of Civil Procedure 12(b)(2)) and move for a protective order pursuant to Federal Rule of Civil Procedure 26(c) to preclude discovery into their bank records sought by the Federal Insurance Plaintiffs ("Plaintiffs").  See 5A Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 1344, at 167 (1990 & Supp. 2004) ("There no longer is any necessity for appearing specially to challenge personal jurisdiction, venue, or service of process"); see also In re Machne Israel, Inc., 48 Fed. Appx. 859, 862-63, No. 02-1962, 2002 WL 31228282, *2-3 (3d Cir. Oct. 4, 2002) (recognizing that movant can appear for the limited purpose of seeking a protective order without subjecting itself to jurisdiction of court).[1]

The Court should not allow the Plaintiffs to proceed with this unprecedented discovery of the records of an Embassy and individual diplomats.  The discovery sought by the Plaintiffs infringes on the sovereign immunity of the Kingdom of Saudi Arabia in violation of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq. (the "FSIA").  (Point I, infra.)  The discovery sought by the Plaintiffs also infringes on core diplomatic immunities protected under the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d, and the Vienna Convention on Diplomatic Relations of 1961 (the "Vienna Convention")  (Point II, infra.)

---

[1] In appearing for the limited purpose of seeking this protective order, the Movants are not waiving any defenses, including, but not limited to, the defenses of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, diplomatic immunity and foreign sovereign immunity.

Finally, the discovery sought by plaintiffs would unreasonably infringe on the Movants' privacy interests.  (Point III, infra.)

## BACKGROUND

On September 10, 2003, Federal Insurance and several dozen insurance providers filed suit in the Southern District of New York alleging that the Kingdom, Prince Bandar and Princess Haifa had each knowingly provided material support for terrorism by al-Qaida.[2]  Despite the breadth of the Plaintiffs' allegations, the Ambassador's alleged involvement in this matter is set forth in just five of the more than 600 paragraphs in the complaint.  The Plaintiffs allege that Prince Bandar directed personal funds, as well as those held by the Royal Embassy of Saudi Arabia, to charitable organizations allegedly linked to al-Qaida in the United States and abroad.

On March 11, 2004, the Court ordered the Federal Insurance claims consolidated with other related cases previously consolidated into MDL 1570, In Re Terrorist Attacks on September 11, 2001.   To move the cases forward, the Court ordered the parties to submit a joint case management order and set a scheduling conference for May 25, 2004, to resolve any issues arising from the parties' proposed Case Management Order.  Among other things, the proposed Case Management Order addressed the commencement and duration of discovery.

In advance of that conference -- while the parties were collaborating on the Case Management Order -- the Plaintiffs issued three subpoenas duces tecum on March 29, 2004 seeking the production of detailed financial records of the Royal Embassy of Saudi Arabia, the

---

[2]  The Ambassador, Prince Bandar, and his wife, Princess Haifa, are named as defendants, as is the Kingdom of Saudi Arabia.  Prince Haifa, however, has not been served at this time, and thus remains a non-party to this action.  The Royal Embassy of Saudi Arabia, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah are not named in the Plaintiffs' complaint and are also non-parties.  The Plaintiffs filed an amended complaint on March 10, 2004.  That amended complaint has not yet been served on either the Kingdom or Prince Bandar.  Accordingly, they have not yet had an opportunity to move to dismiss the charges against them.

2

Ambassador, and his wife, Princess Haifa.[3]  On April 9, 2004, the Plaintiffs issued a fourth subpoenas duces tecum seeking financial documents from Ahmed A. Kattan and Abdul Rahman I. Al-Noah.  While these four subpoenas (attached hereto as Exh. A) are addressed to Riggs Bank, they demand more than a decade of the Kingdom of Saudi Arabia's financial records, as well as the records of the Kingdom's appointed representatives.  The Plaintiffs' subpoenas seek a broad array of private financial information including, but not limited to, monthly account statements, deposits, withdrawals, checks, and wire transfers.  The subpoenas also seek correspondence, letters, memos, notes, and e-mails regarding the Movants' financial holdings.  For example, the subpoenas request copies of:

> Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by Prince Bandar Bin Sultan, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, disbursement checks, receipts, account notices . . . for the time period commencing January 1, 1991 and continuing through the present.

Exh. A, Attach. 1 at 1.  The subpoenas also seek copies of "[a]ny and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by the Saudi Embassy," Ex. 2, Attach. A at 1, as well as "correspondence, letters, memoranda, notes, and emails that refer to, relate to or reflect any and all communications" after January 1, 1991 between Riggs, the Royal Embassy, and Prince Bandar.  Exh. A, Attachs. 1-4 at 2.

On April 23, 2004, Riggs filed objections to the subpoenas.  Following the Movants' filing of a motion to quash these subpoenas pursuant to Federal Rule of Civil Procedure 45(c)(3)(A) in the U.S. District Court for the District of Columbia (Exh. B), the Plaintiffs

---

[3] These subpoenas were originally issued on behalf of the District Court for the Southern District of New York on March 9, 2004.  After it was pointed out to the Plaintiffs that they could not serve a Southern District of New York subpoena for records kept in the District of Columbia, see Fed. R. Civ. P. 45(a)(2), the subpoenas were reissued out of the District Court for the District of Columbia.

3

withdrew the four subpoenas <u>duces tecum</u>, without prejudice. (Exh. C). Nonetheless, this matter is ripe for consideration now because Plaintiffs have issued the subpoenas twice already and have stated unequivocally that they will reissue these subpoenas again as soon as this Court authorizes discovery. In a May 11 letter to this Court, counsel for the Federal Insurance Plaintiffs stated that "[w]e fully intend to re-submit the subpoenas if and when appropriate following a decision by Your Honor on the timing and scope of discovery." Letter from Elliott R. Feldman to the Honorable Richard Conway Casey at 2 (May 12, 2004) (Exh. D).

## ARGUMENT

This Court has discretion to preclude inappropriate discovery. Federal Rule of Civil Procedure 26(c)(1) permits this Court to order "that disclosure or discovery not be had," and Rule 26(c)(4) permits this Court to order "that certain matters not be inquired into."

The Movants have standing to contest the subpoenas because it is well-settled that a party claiming a personal right or privilege with regard to documents sought by a subpoena may seek protection from it. <u>See</u>, <u>e.g.</u>, <u>Transcor, Inc. v. Furney Charters, Inc.</u>, 212 F.R.D. 588, 591 (D. Kan. 2003) (holding that a company had "a personal right with respect to its bank account records at the subpoenaed banks, and this right gives it standing to move to quash the subpoenas"); <u>Catskill Dev., LLC v. Park Place Entm't Corp.</u>, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (listing cases holding that party whose banking records are subpoenaed has standing to oppose subpoena); <u>Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan</u>, 134 F. Supp. 2d 528, 530 (S.D.N.Y. 2001) (noting that where a subpoena to a bank seeks a party's confidential financial information, the party's "standing to contest the subpoena is indisputable"); <u>Sierra Rutile Ltd. v. Katz</u>, No. 90 Civ. 4913, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994) (same); <u>Carey v. Berisford Metals Corp.</u>, No. 90-1045, 1991 WL 44843, at *8 (S.D.N.Y. Mar. 28, 1991)

(finding that plaintiff had a privacy interest in his bank records sufficient to give him standing to contest discovery); 9A Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 2459, at 39 (2d ed. 1995).  Three separate grounds demonstrate the need for a protective order in this matter.

I.     **The Discovery Sought by the Plaintiffs Infringes on the Sovereign Immunity of Saudi Arabia in Violation of the Foreign Sovereign Immunities Act**

Plaintiffs seek full-blown merits discovery against an immunized foreign government and its recognized representatives.  The allegations underlying the Plaintiffs' suit relate to official actions by instrumentalities of the Kingdom of Saudi Arabia.  The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state" in the federal courts.  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  The FSIA defines a "foreign state" to include a "political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  Courts have interpreted this provision to hold that "[a]n individual can qualify as an 'agency or instrumentality of a foreign state'" within the meaning of the FSIA.  El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (citations omitted).  The Kingdom intends to assert an FSIA defense against the allegations raised by the Plaintiffs.  So, too, will the Kingdom's Ambassador, Prince Bandar, as well as asserting his diplomatic immunity.

The FSIA precludes all merits discovery until a sovereign defendant has had a full opportunity to litigate its immunity.  This Court has held that FSIA immunity "provides protection both from liability and the burdens of discovery."  Olympic Chartering, 134 F. Supp. 2d at 530; see also Gabay v. Mostazafan Found. of Iran, 151 F.R.D. 250, 256 (S.D.N.Y. 1993) ("[S]overeign immunity provides not merely a defense to liability, but immunity from the burdens of litigation as well.").  The FSIA is designed to immunize foreign sovereigns from both

liability and the accompanying "time and inconvenience . . . imposed on foreign sovereigns by litigation in U.S. courts." In re Papandreou, 139 F.3d 247, 254 (D.C. Cir. 1998).  Courts considering FSIA immunity must therefore "proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure." Id. at 253; see also Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990); and see Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 22 (D.D.C. 2003) (Order of Judge Robertson declining to allow jurisdictional discovery where plaintiffs failed to demonstrate how their allegations would be enhanced by discovery).

"When the defense of sovereign immunity is raised, the only type of discovery sanctioned by courts has been jurisdictional discovery to determine whether or not a party is immune." Olympic Chartering, 134 F. Supp. 2d at 536 (report and recommendation of Magistrate Judge Francis) (emphasis added).  As Judge Robertson explained, "[d]iscovery may be had to test the assertion of 'official capacity' immunity, but only when the party opposing immunity makes some showing that the defendant was not acting in his official capacity." Burnett v. Al Baraka Inv. & Dev. Corp., No. 02-1616, mem. op. at 4 (D.D.C. July 7, 2003) (citation omitted).  And such discovery, where allowed by the Court, must be strictly limited "so as to avoid frustrating the significance and benefit of . . . immunity from suit." Foremost-McKesson, 905 F.2d at 449 (internal quotation marks omitted).  Thus, in El-Fadl, the D.C. Circuit held that discovery against a foreign official was improper where the plaintiff failed to show that the defendant was not acting in his official capacity.  75 F. 3d at 671.

The Plaintiffs' attempt to launch wide-ranging, intrusive discovery against sovereign defendants before they have had a chance even to raise (see note 2, supra), much less to be heard

on, their immunity defenses is plainly an improper attempt to circumvent the protections provided by the FSIA.

## II. The Subpoenas Seek Protected Diplomatic Records in Violation of Core Diplomatic Immunities Provided Under the Diplomatic Relations Act of 1978 and the Vienna Convention on Diplomatic Relations of 1961

The subpoenas seeking the bank records of a foreign embassy and its diplomats also violate the Vienna Convention. We know of no case in which the financial records of a foreign embassy and its diplomatic staff have been ordered to be produced in civil discovery. In a recent case, this Court came to the same conclusion. In Olympic Chartering, a judgment creditor of Jordan's Ministry of Industry and Trade sought to attach ministry assets allegedly being held in a foreign central bank's account at a second bank. The central bank moved to intervene and quash the subpoena issued by the judgment creditor, asserting its immunity from discovery or attachment. In his Rule 72 report and recommendation, Magistrate Judge Francis noted: "After extensive research, this Court has not found any case where discovery was permitted once an entity was found to be immune." 134 F. Supp. 2d at 535. Magistrate Judge Francis's report was adopted by Judge Wood. Id. at 530.

Under the well-settled doctrine of diplomatic immunity, the bank records of the Royal Embassy, its Ambassador, and other diplomatic personnel are beyond the civil discovery provisions of Federal Rule of Civil Procedure 34 and the subpoena provisions of Rule 45. Article 24 of the Vienna Convention states that the "archives and documents of the mission shall be inviolable at any time and wherever they may be."[4] Article 25 of the Vienna Convention

---

[4] Diplomatic immunity from the civil jurisdiction of the receiving state was officially codified in 1961 with the adoption of the Vienna Convention on Diplomatic Relations, done Apr. 18, 1961, United States accession, Dec. 13, 1972, 23 U.S.T. 3227 T.I.A.S. No. 7502, 500 U.N.T.S. 95. Congress incorporated the protections of the Vienna Convention into the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d.

7

further states that the receiving state "shall accord full facilities for the performance of the functions of the mission."  Applying these provisions, courts have held that the bank accounts of a foreign embassy and its ministries are immune from attachment to satisfy a civil judgment.  See Olympic Chartering, 134 F. Supp. 2d 528; Sales v. Republic of Uganda, No. 99-3972, 1993 WL 437762, at *1 (S.D.N.Y. Oct. 23, 1993) see also Liberian Eastern Timber Corp. v. Government of the Republic of Liberia, 659 F. Supp. 606, 608 (D.D.C. 1987)  See Eileen Denza, Diplomatic Law 132 (2d ed. 1998) (noting that "[i]n most jurisdictions . . . courts have concluded that embassy bank accounts maintained to cover a mission's costs and running expenses are not subject to enforcement").  As explained in Liberian Eastern, "merely allowing [an embassy] to use bank accounts located in the United States but not affording the accounts the protection of diplomatic immunity would pay mere lip service both to Article 25 and to the intent of the Vienna Convention."  659 F. Supp. at 608.

The same result is required in this case where the Plaintiffs seek bank records for accounts that support the mission and its staff in the United States.  The purpose of diplomatic immunity "is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States."  Vienna Convention Preamble.  Allowing civil litigants access to sensitive financial information concerning accounts held by the Embassy, the Ambassador, his wife (who is also considered a member of the diplomatic mission under the Vienna Convention), and members of the diplomatic staff "is inconsistent with both the agreement set forth in Article 25 and the intention of the parties to the Vienna Convention."  Liberian Eastern, 659 F. Supp. at 608.  The bank records constitute protected documents within the scope of Article 24 of the Vienna Convention and are thus immune from the civil jurisdiction and subpoena power of the federal courts.

Articles 1, 24, 31, and 37 of the Vienna Convention extend immunities to the wife of the Ambassador, the Embassy itself, and members of the diplomatic staff. The Ambassador, Princess Haifa, Ahmed Kattan, and Abdul Rahman Al-Noah are all immune from the civil jurisdiction of the receiving state, except in strictly limited circumstances not present here. Congress incorporated the protections of Article 31 into the Diplomatic Relations Act of 1978, which states that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed." 22 U.S.C. § 254d. The Diplomatic Relations Act, therefore, requires this Court to recognize the immunity extended under the Vienna Convention and to issue the protective order sought by Movants.

### III.   The Discovery Sought by Plaintiffs Would Unreasonably Infringe on the Movants' Privacy Interests

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) states that a court shall quash or modify a subpoena that "requires disclosure of privileged or other protected" matters. It is well established that bank records constitute protected matters within the meaning of Rule 45. Catskill Dev., 206 F.R.D. at 93 (collecting cases). Federal Rule of Civil Procedure 26(c) calls for a protective order denying or limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Plaintiffs' attempt to rummage through more than a decade of the Movants' financial records is a direct affront to the privacy of the recognized representatives of the Kingdom of Saudi Arabia.

Here, the protections specified in Rule 45(c)(3)(A)(iii) and Rule 26(c) are particularly relevant given the jurisdictional limits of the FSIA, the guarantee in Article 24 of the Vienna Convention that the documents of the mission "shall be inviolable," and the assurance in Article 29 that the receiving state will "take all appropriate steps" to prevent any intrusion on the dignity

9

of a diplomatic agent.  See Olympic Chartering, 134 F. Supp. 2d at 530 (noting that immunity under the FSIA "provides protection both from liability and the burdens of discovery").  Given the clear threat to the personal, diplomatic, and sovereign immunities posed by the Plaintiffs' demands, this Court should order that this discovery not be had.

## CONCLUSION

The Court should grant the motion of the Royal Embassy of Saudi Arabia, Prince Bandar, Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, for a protective order to preclude discovery into their bank records sought by Plaintiffs.


Dated: New York, NY
       May 24, 2004                                 Respectfully submitted,

                                                                           /s/
                                       Mark C. Hansen (MH0359)
                                       Michael K. Kellogg (MK4579)
                                       Michael J. Guzman (MG9623)
                                       J.C. Rozendaal (JR1430)
                                       Kellogg, Huber, Hansen,
                                         Todd & Evans, P.L.L.C.
                                       Sumner Square
                                       1615 M Street, N.W., Suite 400
                                       Washington, D.C. 20036
                                       Telephone:    202-326-7900
                                       Facsimile:     202-326-7999

                                       *Attorneys for HRH Prince Bandar bin*
                                       *Sultan bin Abdulaziz, HRH Princess Haifa*
                                       *Al-Faisal, the Royal Embassy of Saudi*
                                       *Arabia, Ahmed A. Kattan, and Abdul*
                                       *Rahman I. Al-Noah*

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
IN RE: TERRORIST ATTACKS ON         )   **Civil Action No. 03MDL1570 (RCC)**
SEPTEMBER 11, 2001                  )   Relates to: C.A. No. 03 CV 6978 (RCC)
_____)

### ORDER

This matter is before the Court upon the motion of the Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, (the "Movants") for a protective order to preclude discovery sought in the subpoenas <u>duces tecum</u> served on Riggs National Bank, N.A. by Plaintiff Federal Insurance Company. Upon consideration of said motion, the opposition, the supporting materials and arguments, and for good cause shown,

**IT IS HEREBY ORDERED** this _____ day of _____, 2004 that the Movants' motion is **GRANTED** and that Plaintiffs are precluded from seeking discovery of Riggs National Bank, N.A., Movants and other defendants and non-parties covered by the Foreign Sovereign Immunities Act and diplomatic immunity.


                                        _____
                                        United States District Judge

**CERTIFICATION OF CONFERENCE**

Michael J. Guzman, undersigned counsel for the Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, hereby certifies that he conferred with Sean P. Carter, counsel for Plaintiff Federal Insurance Co. by telephone on May 24, 2004 to discuss this motion for a protective order as required by the Honorable Richard C. Casey's rules of practice. As a result of this conference, Mr. Carter indicated that Federal Insurance Co. would oppose this motion.

I certify under penalty of perjury that the foregoing is true and correct. Executed on the 24th day of May, 2004.

                                                                                                 /s/
                                             Michael J. Guzman (MG9623)
*Counsel for HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa Al-Faisal, the Royal Embassy of Saudi Arabia, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 24th day of May 2004, I caused copies of the <u>Notice of Motion and Memorandum of Law in Support of Motion For Limited Appearance of the Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al–Noah to Move for a Protective Order</u> to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
J. Maria Glover