# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FEDERAL INSURANCE CO. et al., | § | |
| 15 Mountain View Road | § | |
| Warren, New Jersey 07059 | § | |
| | § | |
| Plaintiffs, | § | |
| | § | MISC. NO. _____ |
| | § | Subpoena Duces Tecum Arising out of |
| v. | § | Case No. 1:03-cv-06978-RCC |
| | § | United States District Court |
| AL-QAIDA et al., | § | Southern District of New York |
| (address unknown) | § | |
| | § | |
| Defendants. | § | |

**MOTION OF THE ROYAL EMBASSY OF SAUDI ARABIA, HRH PRINCE BANDAR
BIN SULTAN BIN ABDULAZIZ, HRH PRINCESS HAIFA AL-FAISAL,
AHMED A. KATTAN, AND ABDUL RAHMAN I. AL-NOAH TO QUASH
SUBPOENAS DUCES TECUM  ISSUED BY FEDERAL INSURANCE CO.**

The Royal Embassy of the Kingdom of Saudi Arabia, HRH Prince Bandar bin Sultan bin

Abdulaziz (Ambassador Extraordinary and Plenipotentiary and Consul General from the

Kingdom of Saudi Arabia), HRH Princess Haifa Al-Faisal (his wife), Ahmed A. Kattan (Deputy

Chief of Mission at the Royal Embassy of Saudi Arabia), and Abdul Rahman I. Al-Noah

(Counselor at the Royal Embassy of Saudi Arabia) (collectively, the "Movants") hereby move

pursuant to Federal Rule of Civil Procedure 45(c) to quash subpoenas served on Riggs National

Bank, N.A. ("Riggs") for documents pertaining to financial accounts held by the Movants.

The subpoenas at issue arise from one of a number of lawsuits that attempt to blame

Saudi Arabia and its officials – along with dozens of other Saudi banks, charities, institutions and

wealthy individuals – for the terrorist attacks against the United States on September 11, 2001.

On March 10, 2004, the Judicial Panel on Multidistrict Litigation consolidated this action with

similar suits for pretrial proceedings in the Southern District of New York before the Honorable Richard C. Casey.  Following consolidation, Judge Casey entered two orders outlining the timing for motion practice and directing the parties to establish a framework for discovery.  Pursuant to those orders, the parties will submit a proposed Case Management Order to Judge Casey on April 30, 2004, reflecting the parties' unanimous recommendations and noting the grounds for any disagreements.  Judge Casey has set May 25, 2004, as the date for a scheduling conference to resolve issues on the proposed Case Management Order.

In advance of that conference, but without approval from the Court, the Federal Insurance Plaintiffs ("Plaintiffs") have commenced discovery against the Movants by issuing four separate subpoenas to Riggs.  The subpoenas demand a broad array of private financial information including, but not limited to, monthly account statements, deposits, withdrawals, checks, and wire transfers.  The subpoenas also seek a host of correspondence, letters, memos, notes, and e-mails regarding the Movants' financial holdings.

This Court should quash the Plaintiffs' subpoenas duces tecum.  The subpoenas have been issued in violation of Federal Rule of Civil Procedure 26(d) and will interfere with the orderly process of discovery under active management by Judge Casey in the Southern District of New York.  Rule 26(d) precludes discovery "from any source" before the initial scheduling conference, absent express permission from the Court.  That conference has not yet taken place, and the Plaintiffs have neither sought nor received permission to begin discovery.

It is well-established, moreover, that merits discovery may not be had against defendants covered by the Foreign Sovereign Immunities Act unless and until the Court in which the suit is pending determines that one or more exceptions to immunity applies.  In addition, it is unprecedented to allow such subpoenas against an Embassy and its diplomatic officers.  The

2

production demanded would infringe on the diplomatic immunities provided under the Vienna Convention on Diplomatic Relations of 1961 and the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d.

Finally, due to the early stage of these proceedings and the forthcoming proposed Case Management Order, Judge Casey has not yet entered any orders protecting the confidentiality of sensitive materials produced in discovery.  He will consider proposed protective orders at his scheduled May 25 conference.  Given that any production in response to the subpoenas would necessitate the formulation of a complex and nuanced protective order, this Court should quash the subpoenas and allow the MDL court to resolve these concerns as already scheduled.

## BACKGROUND

This matter involves an alleged conspiracy among literally hundreds of individuals, corporations, and foreign nations, who the Plaintiffs claim provided financial support for the al-Qaida terrorist attacks on the United States on September 11, 2001.  Plaintiff Federal Insurance Co. provided insurance coverage to some individuals and entities harmed in the September 11 attacks.  On September 10, 2003, Federal Insurance and several dozen insurance providers filed the underlying suit in the Southern District of New York asserting a variety of tortious acts and omissions by the defendants as individuals and as part of a conspiracy.[1]  Despite the breadth of the Plaintiffs' allegations, the Ambassador's alleged involvement in this matter is set forth in just five of the more than 600 paragraphs in the complaint.  The Plaintiffs allege that Prince Bandar

---

[1] Both the Ambassador, Prince Bandar, and his wife, Princess Haifa, are named as defendants, as is the Kingdom of Saudi Arabia.  Prince Haifa, however, has not been served at this time, and thus remains a non-party to this action.  The Royal Embassy of Saudi Arabia, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah are not named in the Plaintiffs' complaint and are also non-parties.  The Plaintiffs filed an amended complaint on March 10, 2004.  That amended complaint has not yet been served on either the Kingdom or Prince Bandar. Accordingly, they have not yet had an opportunity to move to dismiss the charges against them.

directed personal funds, as well as those held by the Royal Embassy of Saudi Arabia, to charitable organizations in the United States and abroad.  The Plaintiffs allege that these charities, either directly or indirectly, provided money to al-Qaida's infrastructure and thus ultimately contributed to the acts of terrorism committed by al-Qaida members.

On March 11, 2004 the Judicial Panel on Multidistrict Litigation ordered this suit consolidated with other pending actions and transferred to the Honorable Richard C. Casey of the United States District Court for the Southern District of New York for pretrial proceedings. On March 3, 2004, Judge Casey entered an order establishing, among other things, a schedule for amending complaints, supplementing the pleadings, and briefing motions to dismiss.  On April 5, 2004, Judge Casey entered a second order directing all counsel to meet and negotiate a Case Management Order and pretrial schedule.  Judge Casey specified that in the event the parties could not agree on all issues, each side would present its own position for resolution by the Court.  In any case, the order concluded, a proposed Case Management Order must be submitted to Judge Casey no later than April 30, 2004.  Judge Casey has scheduled a hearing on the proposed Case Management Order on May 25, 2004.

On March 29, 2004, while the parties were continuing their work on the Case Management Order, the Plaintiffs issued three subpoenas to Riggs seeking the production of detailed financial records related to the Royal Embassy of Saudi Arabia, the Ambassador, and his wife, Princess Haifa.[2]  On April 9, 2004, the Plaintiffs issued a fourth subpoena to Riggs seeking financial documents from Ahmed A. Kattan  and Abdul Rahman I. Al-Noah.

---

[2] These subpoenas were originally issued on behalf of the District Court for the Southern District of New York on March 9, 2004.  After it was pointed out to the Plaintiffs that they could not serve a Southern District of New York subpoena for records kept in the District of Columbia, see Fed. R. Civ. P. 45(a)(2), the subpoenas were reissued on behalf of this Court.

The subpoenas seek more than a decade of personal and governmental financial records. Thus, the subpoenas request copies of :

> Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by Prince Bandar Bin Sultan, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or canceled checks, disbursement checks, receipts, account notices . . . for the time period commencing January 1, 1991 and continuing through the present.

Ex. 1, Attach. A at 1.  The subpoenas also seek copies of "[a]ny and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by the Saudi Embassy," Ex. 2, Attach. A at 1, as well as "correspondence, letters, memoranda, notes, and emails that refer to, relate to or reflect any and all communications" after January 1, 1991 between Riggs, the Royal Embassy, and Prince Bandar, Exs. 1-4, Attachs. A at 2.

On April 23, 2004, Riggs filed objections to the subpoenas.  This motion to quash is timely filed on April 30, 2004 pursuant to Federal Rule of Civil Procedure 45(c)(3)(A).

## GROUNDS FOR RELIEF

Federal Rule of Civil Procedure 45(c)(3)(A) permits this Court to quash or modify a civil subpoena in order "to protect a person subject to or affected by" the requested discovery.  It is well-settled that a party claiming a personal right or privilege with regard to documents sought by a subpoena has standing to bring a motion to quash.  Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 590-91 (D. Kan. 2003); Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002); Olympic Chartering S.A. v. Ministry of Indus. & Trade of Jordan, 134 F. Supp. 2d 528, 530 (S.D.N.Y. 2001) (noting that where a subpoena seeks confidential financial information, "standing to contest the subpoena is indisputable"); Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993); Carey v. Berisford Metals Corp., No. 90-1045, 1991 WL 44843, at *8 (S.D.N.Y. Mar. 28, 1991); Chazin v. Lieberman, 129 F.R.D. 97, 98

(S.D.N.Y. 1990); Charles Alan Wright et al., Federal Practice & Procedure § 2459, at 39 (2d ed. 1995).  Four separate grounds demonstrate the need to quash the subpoenas issued in this matter.

1.       **The Subpoenas Have Been Issued in Violation of Rule 26(d).**

Federal Rule of Civil Procedure 26(d) states that "a party may not seek discovery from any source" before the initial scheduling conference required under Rule 26(f).  As explained in the Manual for Complex Litigation, adopting a discovery plan "is a principal purpose of the initial conference" and essential to managing the litigation.  Manual for Complex Litigation (Fourth) § 11.421, at 51 (2004).  Consistent with these principles, Judge Casey entered an order on April 5, 2004 directing the parties to confer on the terms of a Case Management Order governing pretrial procedures, including discovery.  Judge Casey's order specified that the proposed Case Management Order should include all the terms on which the parties agreed and note the issues that remain in dispute.  The parties' proposed Case Management Order will be filed in the Southern District of New York on April 30, 2004 as required by Judge Casey.  Judge Casey will hold a hearing to resolve any disputed issues on May 25.

Despite this clearly established schedule, the Plaintiffs have unilaterally launched full-scale discovery by issuing these subpoenas.  No order from the Southern District of New York supports the argument that discovery should begin *before* the discovery procedures contained in the Case Management Order are approved by Judge Casey.  Nor have the Plaintiffs sought permission from the Court to conduct such discovery, as is required under Rule 26(d).

Notably, the Plaintiffs did not dispute that these subpoenas are premature in a letter to Judge Casey dated April 26, 2004.[3]  The letter attempts to justify the subpoenas by stating that the Case Management Order "*proposed by Plaintiffs*" would allow discovery from non-parties to

---

[3] The Plaintiffs' letter responded to an earlier letter to Judge Casey on behalf of the Movants attached as Exhibit 5.

commence immediately.  Ex. 6 at 2 (emphasis added).   But the Plaintiffs' subjective desire to commence discovery does not trump the requirements of the Federal Rules.  (The Plaintiffs also ignore the fact that the requested discovery is from parties to the lawsuit: specifically, Prince Bandar and the Kingdom of Saudi Arabia as represented here in the United States through its Embassy.)   As the Movants explained in a responsive letter to Judge Casey, the Defendants oppose any plan for immediate and uncoordinated discovery, and believe that motions to dismiss should be resolved before discovery begins.  Ex. 7 at 1.  Unless and until Judge Casey resolves these issues – as he is scheduled to do on May 25 – discovery "from any source" is precluded by Rule 26(d).

  **2.**  **Discovery is Not Permitted Against a Foreign Sovereign and Its Agents Unless and Until the Court Determines That an Exception to the Foreign Sovereign Immunities Act Applies.**

The Plaintiffs' violation of Federal Rule 26 and the orders of the Southern District of New York are not minor procedural errors.  The subpoenas seek full-blown merits discovery against an immunized foreign government and its recognized representatives.  Requesting the confidential financial records of the Kingdom of Saudi Arabia before a determination of the Kingdom's immunity from suit is inconsistent with the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq. (the "FSIA").

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state" in the federal courts.  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). The FSIA defines a "foreign state" to include a "political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  The D.C. Circuit has interpreted this provision to hold that "[a]n individual can qualify as an 'agency or instrumentality of a foreign state'" within the meaning of the FSIA.  El-Fadl v. Central Bank of

Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (citations omitted).  The Kingdom intends to assert an FSIA defense against the allegations raised by the Plaintiffs.  So, too, will the Kingdom's Ambassador,  Prince Bandar, as well as asserting his diplomatic immunity.

It is well established that discovery should not be had from sovereign defendants until they have had a full opportunity to litigate their immunity from suit.  The FSIA is designed to immunize foreign sovereigns from both liability and the accompanying "time and inconvenience . . . imposed on foreign sovereigns by litigation in U.S. courts." In re Papandreou, 139 F.3d 247, 254 (D.C. Cir. 1998).  Courts considering FSIA immunity must therefore "proceed with circumscription, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure." Id. at 253; see also Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990).  See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 22 (D.D.C. 2003) (Order of Judge Robertson declining to allow jurisdictional discovery where plaintiffs failed to demonstrate how their allegations would be enhanced by discovery).

As Judge Robertson explained, "[d]iscovery may be had to test the assertion of 'official capacity' immunity, but only when the party opposing immunity makes some showing that the defendant was not acting in his official capacity." Burnett v. Al Baraka Inv. & Dev. Corp., No. 02-1616, mem. op. at 4 (D.D.C. July 7, 2003) (citation omitted).  And such discovery, where allowed by the Court, must be strictly limited "so as to avoid frustrating the significance and benefit of . . . immunity from suit." Foremost-McKesson, 905 F.2d at 449.  Thus, in El-Fadl v. Central Bank of Jordan, 75 F.3d 668 (D.C. Cir. 1996), the D.C. Circuit held that discovery against a foreign official was improper where the plaintiff failed to show that the defendant was not acting in his official capacity. Id. at 671.  The Plaintiffs' attempt to launch wide-ranging,

intrusive discovery against sovereign defendants before they have had a chance even to raise (see note 1, supra), much less to be heard on, their immunity defenses is plainly improper.

### 3.  The Subpoenas Seek Protected Diplomatic Records.

Subpoenas seeking the bank records of a foreign embassy and its diplomats are in violation of the Vienna Convention.  We know of no case in which the financial records of a foreign embassy and its diplomatic staff have been ordered to be produced in civil discovery.

Under the well-settled doctrine of diplomatic immunity, the bank records of the Royal Embassy, its Ambassador, and other diplomatic personnel are beyond the civil subpoena provisions of Federal Rule 45.  Diplomatic immunity from the civil jurisdiction of the receiving state was officially codified in 1961 with the adoption of the Vienna Convention on Diplomatic Relations (the "Vienna Convention"), done Apr. 18, 1961, United States accession, Dec. 13, 1972, 23 U.S.T. 3227 T.I.A.S. No. 7502, 500 U.N.T.S. 95.  Congress incorporated the protections of the Vienna Convention into the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d.

Article 24 of the Vienna Convention states that the "archives and documents of the mission shall be inviolable at any time and wherever they may be."  Article 25 of the Vienna Convention further states that the receiving state "shall accord full facilities for the performance of the functions of the mission."  Applying these provisions, courts in this district have held that the bank accounts of a foreign embassy are immune from attachment to satisfy a civil judgment. Liberian Eastern Timber Corp. v. Government of the Republic of Liberia, 659 F. Supp. 606, 608 (D.D.C. 1987); see also Sales v. Republic of Uganda, No. 99-3972, 1993 WL 437762, at *1 (S.D.N.Y. Oct. 23, 1993).  See Eileen Denza, Diplomatic Law 132 (2d ed. 1998) (noting that "[i]n most jurisdictions . . . courts have concluded that embassy bank accounts maintained to

cover a mission's costs and running expenses are not subject to enforcement").  As explained in Liberian Eastern, "merely allowing [an embassy] to use bank accounts located in the United States but not affording the accounts the protection of diplomatic immunity would pay mere lip service both to Article 25 and to the intent of the Vienna Convention."  659 F. Supp. at 608.

The same result is required in this case where the Plaintiffs seek bank records for accounts that support the mission and its staff in the United States.  The purpose of diplomatic immunity "is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States."   Vienna Convention Preamble.   Allowing civil litigants access to sensitive financial information concerning accounts held by the Embassy, the Ambassador, his wife (who is also considered a member of the diplomatic mission under the Vienna Convention), and members of the diplomatic staff "is inconsistent with both the agreement set forth in Article 25 and the intention of the parties to the Vienna Convention." Liberian Eastern, 659 F. Supp. at 608.  The bank records constitute protected documents within the scope of Article 24 of the Vienna Convention and are thus immune from the civil jurisdiction and subpoena power of the federal courts.

Articles 1, 24, 31, and 37 of the Vienna Convention extend immunities to the wife of the Ambassador, the Embassy itself, and members of the diplomatic staff.   The Ambassador, Princess Haifa, Ahmed Kattan, and Abdul Rahman Al-Noah are all immune from the civil jurisdiction of the receiving state.  Congress incorporated the protections of Article 31 into the Diplomatic Relations Act of 1978, which states that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed."  22 U.S.C. § 254d.   The

Diplomatic Relations Act, therefore, requires this Court to recognize the immunity extended under the Vienna Convention and to quash the subpoenas.

      **4.**      **The Subpoenas Cannot Be Enforced in the Absence of a Strict Protective Order.**

Even if some discovery of these bank records were permitted – and it is not – the Court would need to strictly limit the scope, and vigorously protect the confidentiality, of any disclosures.  Federal Rule of Civil Procedure 45(c)(3)(A)(iii) states that a court shall quash or modify a subpoena that "requires disclosure of privileged or other protected" matters.  It is well established that bank records constitute protected matters within the meaning of Rule 45. Catskill Dev., 206 F.R.D. at 93 (collecting cases).  The Plaintiffs' attempt to rummage through more than a decade of the Movants' financial records is a direct affront to the privacy of the recognized representatives of the Kingdom of Saudi Arabia.  Given the clear threat to the personal, diplomatic, and sovereign immunities posed by the Plaintiffs' demands, this Court would need to strictly limit any access to the records specified in the subpoena and condition all production on an in camera review of relevance.

These same concerns would require that any production in response to the subpoenas occur under the terms of a stringent protective order.  Federal Rule of Civil Procedure 26(c) calls for a protective order denying or limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Courts have routinely restricted access to sensitive financial records by limiting the scope of production and prohibiting the disclosure of any documents produced.  Transcor, 212 F.R.D. at 593 (prohibiting disclosure of bank records to non-parties and limiting access to litigation purposes); Chemical Bank, 149 F.R.D. at 14 (denying disclosure of records unrelated to the specific contested issues raised in the plaintiff's complaint).  Here, the protections specified in Rule 26(c) are particularly relevant

given the jurisdictional limits of the FSIA, the guarantee in Article 24 of the Vienna Convention that the documents of the mission "shall be inviolable," and the assurance in Article 29 that the receiving state will "take all appropriate steps" to prevent any intrusion on the dignity of a diplomatic agent.  See Olympic Chartering, 134 F. Supp. 2d at 530 (noting that immunity under the FSIA "provides protection both from liability and the burdens of discovery").

Since discovery has not yet been authorized in this case, Judge Casey has not entered a protective order addressing the confidentiality of materials produced in discovery.  Allowing Judge Casey to consider the proposed Case Management Order, including a proposed protective order, will ensure that a uniform schedule for discovery is entered for all of the actions now consolidated in the MDL proceedings.  Rather than allow these premature requests to impede the orderly process required by the Federal Rules, and already underway in the Southern District of New York, the Court should quash the subpoenas at this time.  At a minimum, any response to the subpoenas should be stayed pending the MDL Court's adoption of a protective order and determination of what discovery, if any, will be permitted in connection with the motions to dismiss that will be filed after all of the named Movants have been served.

**CONCLUSION**

The Court should grant the motion of the Royal Embassy of Saudi Arabia, Prince Bandar bin Sultan bin Abdulaziz, Princess Haifa, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, to quash the subpoenas duces tecum served on Riggs National Bank, N.A. by the Plaintiffs.

Respectfully submitted,


_Michael Kellogg_

Michael K. Kellogg (D.C. Bar No. 372049)
Mark C. Hansen (D.C. Bar No. 425930)
Steven F. Benz (D.C. Bar No. 428026)
Paul B. Matey (D.C. Bar No. 486012)
Kellogg, Huber, Hansen,
  Todd & Evans, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:    202-326-7900
Facsimile:    202-326-7999
*Attorneys for HRH Prince Bandar bin
Sultan bin Abdulaziz, HRH Princess Haifa
Al-Faisal, the Royal Embassy of Saudi
Arabia, Ahmed A. Kattan, and Abdul
Rahman I. Al-Noah*

April 30, 2004

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL INSURANCE CO. et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | MISC. NO. _____ |
| | § | Subpoena Duces Tecum Arising out |
| v. | § | of Case No. 1:03-cv-06978-RCC |
| | § | United States District Court |
| AL-QAIDA et al., | § | Southern District of New York |
| | § | |
| | § | **ORDER** |
| Defendants. | § | |

This matter is before the Court upon the motion of the Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, (the "Movants") to quash the subpoenas duces tecum served on Riggs National Bank, N.A. by Plaintiff Federal Insurance Company. Upon consideration of said motion, the opposition, the supporting materials and arguments, and for good cause shown,

**IT IS HEREBY ORDERED** this _____ day of _____, 2004 that the Movants' motion is **GRANTED** and the subpoenas duces tecum served on Riggs National Bank, N.A. are quashed.

_____
United States District Judge

## <u>CERTIFICATION OF CONFERENCE</u>

Michael J. Guzman, undersigned counsel for the Royal Embassy of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH Princess Haifa al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah, hereby certifies that he conferred with Sean P. Carter, counsel for Plaintiff Federal Insurance Co. by telephone on April 29, 2004 to discuss this motion to quash as required by Local Civil Rule 7(m). As a result of this conference, Mr. Carter indicated that Federal Insurance Co. would oppose this motion.

I certify under penalty of perjury that the foregoing is true and correct. Executed on the 30th day of April 2004.

_Michael J. Guzman (D.C. Bar No. 445412)_
*Counsel for HRH Prince Bandar bin Sultan
bin Abdulaziz, HRH Princess Haifa Al-
Faisal, the Royal Embassy of Saudi Arabia,
Ahmed A. Kattan, and Abdul Rahman I. Al-
Noah*

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CO-932
Rev. 4/96

## NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

NOTICE TO PARTIES:

     Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

NOTICE TO DEFENDANT:

     Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

NOTICE TO ALL COUNSEL

     Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

The plaintiff, defendant or counsel must complete the following:

I.    RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

     A new case is deemed related to a case pending in this or another U.S. Court if the new case: [Check appropriate box(e's) below.]

- [ ] (a)   relates to common property
- [X] (b)   involves common issues of fact
- [X] (c)   grows out of the same event or transaction
- [ ] (d)   involves the validity or infringement of the same patent
- [ ] (e)   is filed by the same pro se litigant

2.    RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

     A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

Check box if new case is related to a dismissed case: [ ]

3.    NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.    CAPTION AND CASE NUMBER OF RELATED CASE(E'S). IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

| Burnett | v. | Al Baraka Investment & Development Corp. | C.A. No. | 02-01616 |

April 30, 2004            _JB.V____. (P.C. BAR No. 486012)_

DATE                 Signature of Plaintiff/Defendant (or counsel)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the Motion of the

Royal Embassy Of Saudi Arabia, HRH Prince Bandar bin Sultan bin Abdulaziz, HRH

Princess Haifa Al-Faisal, Ahmed A. Kattan, and Abdul Rahman I. Al-Noah to Quash

Subpoenas <u>Duces Tecum</u> Issued By Federal Insurance Co. has been served on counsel for

Plaintiff Federal Insurance Company by hand delivery to:

> Matthew G. Ash
> Cozen O'Connor
> 1667 K Street, N.W., Suite 500
> Washington, D.C. 20006

April 30, 2004

_____
Sara J. Mallory

# EXHIBIT 1

# United States District Court
### For the District of Columbia

Federal Insurance Company, et al.
#### v.
Al-Qaida, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 03-CV-6978(RCC)
(Southern District of New York)

**TO:**  Ms. Kathy Hays, Custodian of Records
Riggs National Bank, N.A.
800 17th Street, NW, 7th Floor
Washington, D.C.  20006

YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

[X]      YOU ARE COMMANDED   to produce and permit inspectio n and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Exhibit A attached.

| PLACE<br>Cozen O'Connor<br>1667 K Street, N.W.<br>Suite 500<br>Washington, D.C.  20006 | DATE AND TIME<br>April 30, 2004<br>5:00 p.m. |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE(INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*  attorney for plantiff | 3/29/2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Matthew H. Ash, Esquire
1667 K Street, NW, Suite 500, Washington, D.C. 20006   (202) 912-4830

## PROOF OF SERVICE

| SERVED | DATE | PLACE | |
|--------|------|-------|--|
| SERVED ON  (PRINT NAME) | | | MANNER OF SERVICE |
| SERVED BY  (PRINT NAME) | | | TITLE: |

## DECLARATION OF SERVER

I declare under penalty of perjury under the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and coping of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all the designated materials or of the premises. If objection is made, the party servicing the subpoena may, upon notice to the person commanded to produce, more at any time for any order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held,or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena

i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of any unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance to production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

- 2 -

**EXHIBIT "A"**
**To Subpoena Duces Tecum Served On**
**Riggs National Bank**

*As used herein, the term "Prince Bandar Bin Sultan" shall mean Prince Bandar Bin Sultan Bin Abdulaziz Al-Saud, Ambassador of the Kingdom of Saudi Arabia to the United States, and/or his agents, employees, attorneys and/or persons purporting to act on his behalf, and/or any Trust or other fund established for the benefit of Prince Bandar Bin Sultan Bin Abdulaziz Al-Saud.*

*As used herein, the term "you" shall mean Riggs National Bank, its representatives, agents, employees and affiliates.*

*As used herein, the term "Document" shall mean the original or any non-identical copy of any written, printed, typed, photographed or other graphic or electronically recorded matter of any kind or nature prepared or received by, or in the possession, custody or control of the answering party, its agents, servants, employees or other representatives.*

*Unless otherwise specified, the documents specified below are required for the time period commencing January 1, 1991 and continuing through the present.*

*Copies of documents may be served before April 30, 2004 on:*

Matthew G. Ash, Esquire
Cozen O'Connor
1667 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 912-4830

*Said Custodian of Records for Riggs National Bank is required to produce the following documents and other items, as specified below, which are in the possession, custody or control of Riggs National Bank and/or any of its predecessors in interest, or which were at one time under the possession, custody or control of Riggs National Bank's predecessors in interest but have since been turned over to Riggs National Bank:*

(1)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by Prince Bandar Bin Sultan, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or cancelled checks, disbursement checks, receipts, account notices;

(2)     Any and all documents, including but not limited to, wire transfer memos, debit slips, credit slips, confirmations, correspondence, or the like, showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from a Riggs National Bank account held either exclusively and/or jointly by Prince Bandar Bin Sultan, from January 1, 1991 through the present;

(3)    All documents, including but not limited to, correspondence, letters, memoranda, notes, and e-mails, that refer to, relate to or reflect any and all communications (oral and/or written) occurring after January 1, 1991, between or among you and Prince Bandar Bin Sultan.

(4)    Any and all documents indicating those persons and/or entities that: (i) have direct beneficial ownership and/or interest in a Riggs National Bank account held either exclusively and/or jointly by Prince Bandar Bin Sultan; (ii) have signatory authority for a Riggs National Bank account held either exclusively and/or jointly by Prince Bandar Bin Sultan.

(5)    All other documents in your possession, custody or control that refer to or relate to Prince Bandar Bin Sultan.

PHILA1\2019680\1 117430.000

2

# EXHIBIT 2

# United States District Court
### For the District of Columbia

Federal Insurance Company, et al.
**v.**
Al-Qaida, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 03-CV-6978(RCC)
(Southern District of New York)

**TO:**   Ms. Kathy Hays, Custodian of Records
Riggs National Bank, N.A.
800 17th Street, NW, 7th Floor
Washington, D.C.  20006

YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒    YOU ARE COMMANDED   to produce and permit inspectio n and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached.

| PLACE | DATE AND TIME |
|---|---|
| Cozen O'Connor | April 30, 2004 |
| 1667 K Street, N.W. | |
| Suite 500 | 5:00 p.m. |
| Washington, D.C.  20006 | |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE(INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _attorney for plaintiff_ | DATE 3/29/2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Matthew G. Ash, Esquire
1667 K Street, NW, Suite 500, Washington, D.C. 20006   (202) 912-4830

## PROOF OF SERVICE

| SERVED | DATE | PLACE | |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | | TITLE: |

## DECLARATION OF SERVER

I declare under penalty of perjury under the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and coping of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all the designated materials or of the premises.  If objection is made, the party servicing the subpoena may, upon notice to the person commanded to produce, more at any time for any order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(iii) of this rule, such a person may in order to attend trial be commanded to travel from

any such place within the state in which the trial is held,or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena

i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of any unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject  to or affected by the subpoena, quash or modify the subpoena    or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance to production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(I) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT "A"**
**To Subpoena Duces Tecum Served On**
**Riggs National Bank**

*As used herein, the term "Saudi Embassy" shall mean the Saudi Arabian Embassy to the United States, and/or its agents, employees, attorneys and/or persons purporting to act on its behalf, and/or any Trust or other fund established for the benefit of the Saudi Arabian Embassy to the United States.*

*As used herein, the term "you" shall mean Riggs National Bank, its representatives, agents, employees and affiliates.*

*As used herein, the term "Document" shall mean the original or any non-identical copy of any written, printed, typed, photographed or other graphic or electronically recorded matter of any kind or nature prepared or received by, or in the possession, custody or control of the answering party, its agents, servants, employees or other representatives.*

*Unless otherwise specified, the documents specified below are required for the time period commencing January 1, 1991 and continuing through the present.*

*Copies of documents may be served before April 30, 2004 on:*

Matthew G. Ash, Esquire
Cozen O'Connor
1667 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 912-4830

*Said Custodian of Records for Riggs National Bank is required to produce the following documents and other items, as specified below, which are in the possession, custody or control of Riggs National Bank and/or any of its predecessors in interest, or which were at one time under the possession, custody or control of Riggs National Bank's predecessors in interest but have since been turned over to Riggs National Bank:*

(1)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by the Saudi Embassy, and which are subject to the investigation conducted by the U.S. Treasury Department's Office of the Comptroller of the Currency, as discussed in the attached newspaper article from the Wall Street Journal.

(2)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by the Saudi Embassy, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or cancelled checks, disbursement checks, receipts, account notices.

(3)     Any and all documents, including but not limited to, wire transfer memos, debit slips, credit slips, confirmations, correspondence, or the like, showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from a Riggs National Bank account held either exclusively and/or jointly by the Saudi Embassy, from January 1, 1991 through the present.

(4)     All documents, including but not limited to, correspondence, letters, memoranda, notes, and e-mails, that refer to, relate to or reflect any and all communications (oral and/or written) occurring after January 1, 1991, between or among you and the Saudi Embassy.

(5)     Any and all documents indicating those persons and/or entities that: (i) have direct beneficial ownership and/or interest in a Riggs National Bank account held either exclusively and/or jointly by the Saudi Embassy; (ii) have signatory authority for a Riggs National Bank account held either exclusively and/or jointly by the Saudi Embassy.

(6)     All other documents in your possession, custody or control that refer to or relate to the Saudi Embassy.

PHILA1\2039140\1 117430.000

2

## Probe of Saudi Embassy Widens

U.S. Regulators Scrutinize
Many Bank Transactions
Not Properly Recorded

By **GLENN R. SIMPSON**
**Staff Reporter of THE WALL STREET JOURNAL**
January 14, 2004

WASHINGTON -- U.S. federal banking regulators looking into the Saudi Arabian Embassy's bank accounts are examining numerous transactions, totaling tens of millions of dollars in cash, that weren't properly reported, according to documents and interviews with lawyers and regulators.

While the U.S. investigation into the Saudi accounts was previously known, the discoveries at Riggs National Corp. show it is far broader than previously disclosed. When the inquiry began in 2002, it focused on only a few thousand dollars thought to be indirectly related to the Sept. 11, 2001, terrorist attacks. Now investigators are trying to account for millions of dollars in hard-to-trace cash.

Riggs repeatedly failed in 2001 and 2002 to file suspicious-activity reports related to cash transactions in the low tens of millions of dollars in Saudi accounts, said people familiar with the matter. While the basics of the large cash transactions were reported, the Treasury Department's Office of the Comptroller of the Currency accused the bank of failing to analyze the transactions for suspicious characteristics, as money-laundering rules require. In July, after the transactions were discovered, Treasury imposed unusually stringent controls and changes on the Washington bank holding company, according to investigators.

It is unusual for the U.S. to scrutinize the finances of a close ally such as Saudi Arabia. But since Sept. 11, the Justice and Treasury departments have been trying to track the origins and destinations of money brought by the Saudis to the U.S. to fund schools, mosques, charities and Islamic groups, some of which are considered extremist by the U.S.

Saudi representatives acknowledged past problems with weak controls on cash, but insisted there was no wrongdoing. They declined to comment further.

Some of the Saudi accounts are in the names of the country's diplomats, including the nation's ambassador to the U.S., Prince Bandar bin Sultan. The Saudis have waived their right of sovereign immunity and given investigators access to the accounts. The embassy also has pledged to overhaul its finances and to give U.S. law enforcement regular access to information about the charities and Islamic causes that receive funding.

"We've talked to them about it, and they have committed to us to be more careful about what they're doing," a senior U.S. official said.

Riggs officials, while conceding that the bank may face fines or other measures, said they have upgraded technology, changed procedures, and hired a new expert to fight money laundering.

"From the moment we learned of the OCC's findings, we have taken them very seriously, and we have been commended by government banking regulators for our responsiveness and cooperation," Riggs said.

The Treasury's Financial Crimes Enforcement Network continues to review the Riggs matter for possible violations of money-laundering law, said lawyers and officials. A parallel investigation by the Federal Bureau of Investigation is seeking to trace the flow of money to Islamic groups from Saudi Arabia.

Saudi officials said much of the money under examination is used for travel and medical treatment for Saudi citizens. But they have promised to curtail spending on Islamic causes.

Before Sept. 11, U.S. officials often turned a blind eye to the preference of many wealthy Saudis for carrying cash. Saudi diplomats often obtain large quantities of cash before a trip, then redeposit most of it in the bank upon their return, generating heavy turnover in accounts.

The inquiry began after investigators in 2002 found indications that funds from the Riggs account of Princess Haifa al Faisal, wife of Prince Bandar, ended up with two Sept. 11 hijackers. The Saudis insist the money was intended for charity, and investigators have no reason to suspect that Princess Haifa intended to aid the Sept. 11 plot.

While Riggs disclosed the Treasury sanctions in a public statement last summer, it didn't mention the Saudis. The comptroller ordered Riggs to "implement systems and controls to identify potentially suspicious transactions." Suspicious-activity rules require banks to analyze large cash transactions and determine, for instance, whether individuals involved are known to the bank. Riggs also was ordered to create a written program to review large cash purchases of money orders and cashier's checks.

Money-laundering experts said the order's language suggests that there were big problems at Riggs. "It looks to me like they had a total breakdown in the antimoney-laundering systems -- if they had any," said Robert Serino, former director of enforcement for the comptroller's office.

Riggs, founded in 1842, is Washington's biggest local bank. It handles the bulk of the city's diplomatic accounts, a niche market that revolves around relationships and discretion. In previous examinations, regulators had determined that the bank complied with money-laundering rules.

Riggs says it has upgraded technology and improved procedures. To lead the changes, Riggs hired David Caruso, a money-laundering expert formerly with KPMG LLP. Riggs said it has outsourced its internal auditing, hired a team of former U.S. Secret Service agents who specialize in money laundering, and hired other experts to set up a new monitoring system for suspicious activity.

"Riggs senior management, without caviling, went about remaking Riggs compliance systems with vigor, and now they have good compliance systems in place in this area," said Riggs consultant Eugene Ludwig, a former comptroller.

**Write to** Glenn R. Simpson at glenn.simpson@wsj.com <mailto:glenn.simpson@wsj.com>

# EXHIBIT 3

# United States District Court

### For the District of Columbia

Federal Insurance Company, et al.

**v.**

Al-Qaida, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 03-CV-6978(RCC)
(Southern District of New York)

**TO:**   Ms. Kathy Hays, Custodian of Records
Riggs National Bank, N.A.
800 17th Street, NW, 7th Floor
Washington, D.C.   20006

YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒   YOU ARE COMMANDED   to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached.

| PLACE<br>Cozen O'Connor<br>1667 K Street, N.W.<br>Suite 500<br>Washington, D.C.   20006 | DATE AND TIME<br>April 30, 2004<br>5:00 p.m. |
|---|---|

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.   Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE(INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_  attorney for plaintiff | 3/29/2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Matthew G. Ash, Esquire
1667 K Street, NW, Suite 500, Washington, D.C. 20006   (202) 912-4830

## PROOF OF SERVICE

| SERVED | DATE | PLACE | |
|--------|------|-------|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | | TITLE: |

## DECLARATION OF SERVER

I declare under penalty of perjury under the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The *court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A *person commanded to produce and permit inspection and coping of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the *party or attorney designated in the subpoena written objection to inspection or copying of any or all the designated materials or of the premises. If objection is made, the party servicing the subpoena may, upon notice to the person commanded to produce, more at any time for any order to compel the production. Such an order to *compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which subpoena was issued shall quash or modify the subpoena if it

(i) *fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the *provisions of clause (c)(3)(iii) of this rule, such a person may in order to attend trial be commanded to travel from

any such place within the state in which the trial is held,or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena

i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of any unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena     or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance to production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT "A"**
**To Subpoena Duces Tecum Served On**
**Riggs National Bank**

*As used herein, the term "Princess Haifa" shall mean Princess Haifa Al-Faisal, wife of Prince Bandar Bin Sultan Bin Abdulaziz Al-Saud, Ambassador of the Kingdom of Saudi Arabia to the United States, and/or her agents, employees, attorneys and/or persons purporting to act on her behalf, and/or any Trust or other fund established for the benefit of Princess Haifa Al-Faisal.*

*As used herein, the term "you" shall mean Riggs National Bank, its representatives, agents, employees and affiliates.*

*As used herein, the term "Document" shall mean the original or any non-identical copy of any written, printed, typed, photographed or other graphic or electronically recorded matter of any kind or nature prepared or received by, or in the possession, custody or control of the answering party, its agents, servants, employees or other representatives.*

*Unless otherwise specified, the documents specified below are required for the time period commencing January 1, 1991 and continuing through the present.*

*Copies of documents may be served before April 30, 2004 on:*

Matthew G. Ash, Esquire
Cozen O'Connor
1667 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 912-4830

*Said Custodian of Records for Riggs National Bank is required to produce the following documents and other items, as specified below, which are in the possession, custody or control of Riggs National Bank and/or any of its predecessors in interest, or which were at one time under the possession, custody or control of Riggs National Bank's predecessors in interest but have since been turned over to Riggs National Bank:*

(1)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by Princess Haifa, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or cancelled checks, disbursement checks, receipts, account notices;

(2)     Any and all documents, including but not limited to, wire transfer memos, debit slips, credit slips, confirmations, correspondence, or the like, showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from a Riggs National Bank account held either exclusively and/or jointly by Princess Haifa, from January 1, 1991 through the present;

(3)     All documents, including but not limited to, correspondence, letters, memoranda, notes, and e-mails, that refer to, relate to or reflect any and all communications (oral and/or written) occurring after January 1, 1991, between or among you and Princess Haifa.

(4)     Any and all documents indicating those persons and/or entities that: (i) have direct beneficial ownership and/or interest in a Riggs National Bank account held either exclusively and/or jointly by Princess Haifa; (ii) have signatory authority for a Riggs National Bank account held either exclusively and/or jointly by Princess Haifa.

(5)     All other documents in your possession, custody or control that refer to or relate to Princess Haifa.

PHILA1\2028339\1 117430.000

2

# EXHIBIT 4

# United States District Court
## For the District of Columbia

Federal Insurance Company, et al.

          v.

Al-Qaida, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 03-CV-6978 (RCC)
(Southern District of New York)

TO:  Ms. Kathy Hays, Custodian of Records
     Riggs National Bank, N.A.
     800 17th Street, NW, 7th Floor
     Washington, D.C.  20006

    YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| **RECEIVED** APR 13 2004 RIGGS BANK N.A. LEGAL AFFAIRS | DATE AND TIME |

    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒    YOU ARE COMMANDED   to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    See Exhibit A attached.

| PLACE Cozen O'Connor 1667 K Street, N.W. Suite 500 Washington, D.C.  20006 | DATE AND TIME May 7, 2004 5:00 p.m. |
|---|---|

    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matter on which the person will testify.  Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Matthew G. Ash, Atty for Plaintiff | 4/9/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER Matthew G. Ash, Esquire
1667 K Street, NW, Suite 500, Washington, D.C. 20006  (202) 912-4830

PHILA_1103660v1 117830.000

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|--------|------|-------|

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|------------------------|--|-------------------|

| SERVED BY (PRINT NAME) | | TITLE: |
|------------------------|--|--------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on

DATE                                    SIGNATURE OF SERVER


ADDRESS OF SERVER


Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all the designated materials or of the premises. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for any order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(iii) of this rule, such a person may be order to attend trial be commanded to travel from

any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden, or

(B) If a subpoena

i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of any unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT "A"**
**To Subpoena Duces Tecum Served On**
**Riggs National Bank**

*As used herein, the term "Ahmed Kattan" shall mean Ahmed A. Kattan, executive assistant to Prince Bandar Bin Sultan Bin Abdulaziz Al-Saud, Ambassador of the Kingdom of Saudi Arabia to the United States, and/or his agents, employees, attorneys and/or persons purporting to act on his behalf, and/or any Trust or other fund established for the benefit of Ahmed A. Kattan.*

*As used herein, the term "General Al-Noah" shall mean General Abdual Rahman Al-Noah, chief military aide to Prince Bandar Bin Sultan Bin Abdulaziz Al-Saud, Ambassador of the Kingdom of Saudi Arabia to the United States, and/or his agents, employees, attorneys and/or persons purporting to act on his behalf, and/or any Trust or other fund established for the benefit of General Al-Noah.*

*As used herein, the term "you" shall mean Riggs National Bank, its representatives, agents, employees and affiliates.*

*As used herein, the term "Document" shall mean the original or any non-identical copy of any written, printed, typed, photographed or other graphic or electronically recorded matter of any kind or nature prepared or received by, or in the possession, custody or control of the answering party, its agents, servants, employees or other representatives.*

*Unless otherwise specified, the documents specified below are required for the time period commencing January 1, 1991 and continuing through the present.*

*Copies of documents may be served before May 7, 2004 on:*

Matthew G. Ash, Esquire
Cozen O'Connor
1667 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 912-4830

*Said Custodian of Records for Riggs National Bank is required to produce the following documents and other items, as specified below, which are in the possession, custody or control of Riggs National Bank and/or any of its predecessors in interest, or which were at one time under the possession, custody or control of Riggs National Bank's predecessors in interest but have since been turned over to Riggs National Bank:*

(1)   Any and all documents pertaining to the Riggs National Bank accounts, financial transactions and individuals which are referenced in the April 7, 2004 Newsweek article titled, *Tangled Ties, Law Enforcement Officials Follow The Money Trail Among Suspected Terrorists Straight To The Doors Of The Saudi Embassy* (hereinafter "Newsweek Article"), which is attached hereto.

(2)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by Ahmed Kattan, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or cancelled checks, disbursement checks, receipts and account notices.

(3)     Any and all documents, including but not limited to, wire transfer memos, debit slips, credit slips, confirmations, correspondence, or the like, showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from a Riggs National Bank account held either exclusively and/or jointly by Ahmed Kattan, from January 1, 1991 through the present.

(4)     All documents, including but not limited to, correspondence, letters, memoranda, notes, and e-mails, that refer to, relate to or reflect any and all communications (oral and/or written) occurring after January 1, 1991, between or among you and Ahmed Kattan.

(5)     Any and all documents indicating those persons and/or entities that: (i) have direct beneficial ownership and/or interest in a Riggs National Bank account held either exclusively and/or jointly by Ahmed Kattan; (ii) have signatory authority for a Riggs National Bank account held either exclusively and/or jointly by Ahmed Kattan.

(6)     All other documents in your possession, custody or control that refer to or relate to Ahmed Kattan.

(7)     Any and all documents pertaining to Riggs National Bank accounts held either exclusively and/or jointly by General Al-Noah, including but not limited to, monthly account statements, annual account statements, deposits, withdrawals, deposit slips, check stubs, cleared or cancelled checks, disbursement checks, receipts and account notices.

(8)     Any and all documents, including but not limited to, wire transfer memos, debit slips, credit slips, confirmations, correspondence, or the like, showing the source(s) and/or destination(s) of any funds deposited into or withdrawn from a Riggs National Bank account held either exclusively and/or jointly by General Al-Noah, from January 1, 1991 through the present.

(9)     All documents, including but not limited to, correspondence, letters, memoranda, notes, and e-mails, that refer to, relate to or reflect any and all communications (oral and/or written) occurring after January 1, 1991, between or among you and General Al-Noah.

(10)    Any and all documents indicating those persons and/or entities that: (i) have direct beneficial ownership and/or interest in a Riggs National Bank account held either exclusively and/or jointly by General Al-Noah; (ii) have signatory authority for a Riggs National Bank account held either exclusively and/or jointly by General Al-Noah.

2

(11)  All other documents in your possession, custody or control that refer to or relate to General Al-Noah.

(12)  Any and all documents pertaining to any investigation, audit or review of financial transactions involving, or accounts associated with, Ahmed Kattan and/or General Al-Noah.

PHILA1\2046883\1 117430.000

3

# EXHIBIT 5

KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:
(202) 326-7999

April 21, 2004

**_VIA OVERNIGHT MAIL_**

The Honorable Richard C. Casey
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street, Room 1350
New York, New York 10007-1312

      Re:     Subpoenas issued in *In Re: Terrorist Attack on September 11, 2001*, MDL No.
            1570; *Federal Insurance Company, et al. v. Al-Qaeda, et al.*, Case No. 03 CV
            6978

Your Honor:

      I write to request that the Court direct plaintiffs in the above-captioned case to withdraw
four subpoenas *duces tecum* served on Riggs National Bank in the District of Columbia during
the week of April 5. These four subpoenas (attached) seek "[a]ny and all documents pertaining
to Riggs National Bank accounts held either exclusively and/or jointly" by the Royal Embassy of
Saudi Arabia, HRH Prince Bandar bin Sultan, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan,
Deputy Chief of Mission at the Royal Embassy of Saudi Arabia, and Counselor Abdul Rahman I.
Al Noah. Three of the subpoenas have a return date of April 30; one has a return date of May 7,
2004. This firm represents the embassy and the individual diplomats whose confidential
financial records are the subject of the four subpoenas.

      These subpoenas are a direct affront to the diplomatic immunity of the Kingdom of Saudi
Arabia and the individual diplomats whose records have been sought. They infringe on
immunities provided under the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d and Article
31 of the Vienna Convention on Diplomatic Relations of 1961, among others. They were also
served in violation of Fed. R. Civ. P. 26(d), which does not permit such discovery at this stage of
the proceedings without first seeking leave of the Court, which plaintiffs failed to do.

      Pursuant to the Court's order of April 5, the parties are negotiating the terms of a
proposed Case Management Order, which they intend to submit promptly for the Court's
approval. The proposed Case Management Order will contain recommendations for procedures
to govern coordinated discovery as well as for the commencement and staging of discovery.

KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C.

The Honorable Richard C. Casey
April 21, 2004
Page 2

Because there are defendants with sovereign immunity and some with sovereign and diplomatic immunity, for example, defendants will suggest in the Proposed Case Management Order that no discovery proceed against defendants that move for dismissal on immunity grounds until those motions have been resolved. The Manual for Complex Litigation recognizes that, in exactly these circumstances, it is inappropriate for any party to initiate discovery before the Court has reviewed and approved a comprehensive plan for the management of discovery. Manual for Complex Litigation (Fourth) § 11.11, at 32 (2002). See also id. § 11.421, at 52 ("It is ordinarily best to defer commencement of discovery until after a plan has been adopted.").

Pursuant to this Court's order, the parties are working cooperatively to prepare a comprehensive plan for the management of this complex lawsuit, including an orderly discovery process. We respectfully ask the Court to direct counsel for the plaintiffs in Federal Insurance to withdraw the Riggs subpoenas so that the parties can complete their efforts to submit their proposals to the Court, the Court can review such proposals and resolve any disagreements, and a Case Management Order can be entered. Only through this orderly process – required by the Federal Rules – can discovery proceed on an efficient and coordinated basis.

Respectfully submitted,

Mark C. Hansen

cc:   Matthew G. Ash, Esq. (via overnight mail)
       Attached service list (via e-mail)

# EXHIBIT 6



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
LAS VEGAS
LONDON
LOS ANGELES

## COZEN
## O'CONNOR
ATTORNEYS

NEWARK
NEW YORK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

**Elliott R. Feldman**
**Direct Dial : 215-665-2071**
**Direct Fax  : 215-701-2071**
**efeldman@cozen.com**

April 26, 2004

Via Fax: 212-805-7939

The Honorable Richard C. Casey
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1950
New York, New York 10007-1312

      Re:    Terrorist Attack on September 11, 2001
            MDL 03 MD 1570
            Our File No.  :  117430

Dear Judge Casey:

      I am writing in response to correspondence dated April 21, 2004 from Mark C. Hansen of the Kellogg, Huber firm.  Mr. Hansen suggests that the subpoenas directed to Riggs National Bank on behalf of the plaintiffs in this matter, seeking documents pertaining to accounts at Riggs maintained by the Royal Embassy of Saudi Arabia and certain members of the Saudi Arabian Royal Family and other Saudi officials, should be directed by the Court to be withdrawn.

      Our response is as follows.  First, respectfully, this case is in danger of devolving into an action comprised of applications by correspondence, with a veritable free-flow of letters now being directed to the Court in lieu of counsel pursuing the appropriate procedure of filing a motion if there is a legal and factual basis for the position advanced.  Thus, if Mr. Hansen believes there is an appropriate ground for objecting to the subpoena, and assuming he has standing to do so, he should file a motion to quash the subpoenas on behalf of his clients.

      Mr. Hansen raises the following issues: the return date for the subpoenas; alleged immunities; and the discovery process which is being developed under the Case Management Order.

April 26, 2004
Page 2

_____

      The return dates for the subpoenas will be extended as necessary, pursuant to request from Riggs National Bank.  Therefore, there clearly is no urgency regarding the request advanced by Mr. Hansen which can and should be addressed through proper procedures instead.

      We note, however, that the subpoenas seek to obtain information which will bear directly upon jurisdictional and immunity issues.  Thus, the Court and parties should have this information available in order to apply the pertinent facts to the relevant legal framework which, in part, includes evaluation of the immunities being claimed by the individuals whose banking records comprise the subject matter of the subpoenas.

      Moreover, discovery was ongoing in certain of the actions that have been consolidated within the instant MDL proceedings, without objection from the defendants in those actions. The Case Management Order proposed by plaintiffs recognizes that discovery has commenced and that discovery may be had from non-parties at this time.  Thus, apart from whatever specific objections Mr. Hansen may wish to raise in an appropriate motion, the subpoenas that plaintiffs have served are neither premature nor disruptive of the orderly case management process and we see no reason to withdraw them.

      While we are awaiting confirmation from the Court, we have advised Your Honor's staff that Wednesday, May 12, is an available date for this office and the Motley, Rice firm to have oral argument regarding the Federal Insurance plaintiffs' Motion to Intervene in the *Burnett* action.  Respectfully, the Court may wish to utilize that date and time for purposes of having a status conference with all counsel to address procedural issues, including confirmation of the Case Management Order.  It is the consensus position of lead counsel for all plaintiffs that subject only to particular objections properly raised as to particular requests, discovery from non-parties, and with Court approval, from parties, is appropriate at this time.  Such discovery should prove to be of assistance to the Court in resolving outstanding and anticipated motions to dismiss.

      Thank you for your kind consideration of this matter.

                    Very truly yours,

                    COZEN O'CONNOR

                    /s/

                    BY:  ELLIOTT R. FELDMAN

ERF/rd
cc:  All Counsel of Record – via fax or e-mail

# EXHIBIT 7

KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C.

SUMNER SQUARE

1615 M STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:

(202) 326-7999

April 26, 2004

*VIA OVERNIGHT MAIL*

The Honorable Richard C. Casey
United States District Judge
Daniel Patrick Moynihan
   United States Courthouse
500 Pearl Street, Room 1350
New York, New York 10007-1312

      Re:   Subpoenas issued in *In Re: Terrorist Attack on*
           *September 11, 2001*, MDL No. 1570; *Federal Insurance*
           *Company, et al. v. Al-Qaeda, et al.*, Case No. 03 CV
           6978

Your Honor:

     I write in response to the letter of Elliott Feldman dated
April 26, 2004, concerning the four subpoenas *duces tecum* served
on Riggs National Bank in the District of Columbia during the
week of April 5.  I wish to make four points.

     First, Mr. Feldman does not deny that the subpoenas were
issued in violation of Fed. R. Civ. P. 26(d), which does not
permit such discovery "from any source" at this stage of the
proceedings without first seeking leave of the Court, which
plaintiffs failed to do.  Instead, he notes that "[i]t is the
consensus position of lead counsel for all plaintiffs" that
discovery "is appropriate at this time."  The Court decides when
discovery begins, not the plaintiffs.  Pursuant to this Court's
order, the parties are directed to submit a Case Management
Order to the Court on April 30, reflecting the views of both the
plaintiffs and defendants and noting where they disagree.  The
defendants oppose any suggestion that the Court should permit
immediate, uncoordinated and uncontrolled discovery in this MDL
proceeding, and maintain that motions to dismiss should be
resolved before discovery is permitted.

The Honorable Richard C. Casey
April 26, 2004
Page 2

    Second, Mr. Feldman suggests that the Court should consider
at a proposed May 12 conference whether or not to confirm the
plaintiff's version of the proposed Case Management Order and,
hence, whether discovery "is appropriate at this time."  We have
no objection to that schedule.  But unless and until the Court
does so confirm, the subpoenas must be withdrawn as concededly
in violation of Rule 26(d).

    Third, Mr. Feldman maintains that discovery should proceed
because it may prove relevant to motions to dismiss on
jurisdictional and immunity grounds.   But whether – and how
much – discovery should be permitted on these particular issues
is for the Court to decide, not Mr. Feldman.   And as Judge
Robertson held in *Burnett*, applying settled precedent, discovery
should *not* routinely be granted in cases, like this one, against
foreign governments and their senior officials.  *Memorandum
Order* (July 7, 2003) (denying motion for leave to take
depositions).

    Finally, Mr. Feldman says that we should proceed by motion
to quash rather than by letter to the Court.  But a motion to
quash on sovereign immunity and other grounds in the District of
Columbia (where the subpoenas were issued) is not a substitute
for correcting plaintiffs' disregard of the Rules of Civil
Procedure in litigation before this Court.  Needless to say, if
this Court determines that the parties should proceed here by
motion on the issue of whether the subpoenas are in violation of
Rule 26(d) – although, as noted, Mr. Feldman does not dispute
that point – we will promptly file.   We believe that it is
plaintiffs' counsel that should have filed a motion if they
wanted to commence discovery not permitted under the Federal
Rules.

    We respectfully ask the Court to direct counsel for the
plaintiffs in Federal Insurance to withdraw the Riggs subpoenas
so that the parties can complete their efforts to submit their
proposals to the Court, the Court can review such proposals and
resolve any disagreements, and a Case Management Order can be
entered.   Only through this orderly process – required by the
Federal Rules – can discovery proceed on an efficient and
coordinated basis.

The Honorable Richard C. Casey
April 26, 2004
Page 3

Respectfully submitted,

Mark C. Hansen

cc:      Elliot R. Feldman (via overnight mail)
         Attached service list (via e-mail)