**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
In re Terrorist Attacks on September 11, 2001       )        No. 03-MD-1570 (RCC)
_____)
                                                    )
KATHLEEN ASHTON, et al.,                            )        No. 02-CV-6977 (RCC)
                                                    )
                        PLAINTIFFS,                 )
                                                    )
            v.                                      )
AL QAEDA ISLAMIC ARMY, et al.,                      )
                                                    )
                        DEFENDANTS.                 )
_____)

**DEFENDANT SAUDI BINLADIN GROUP'S**
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**
**OR IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT**

May 28, 2004

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... **1**

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER SBG** .......... **1**

A. SBG Did Not "Purposefully Direct" Its Conduct At The United States .......... 1

B. SBG's Conduct Does Not Give Rise to Conspiracy Jurisdiction .......... 3

C. Plaintiffs Are Not Entitled to Jurisdictional Discovery .......... 4

**II. PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AGAINST SBG** .......... **6**

A. Plaintiffs Do Not Adequately Allege A Violation of the Anti-Terrorism Act ("ATA") .......... 6

1. SBG's Alleged Conduct Does Not Constitute Knowing And Intentional Support of Terrorism .......... 6

2. Plaintiffs' Injuries Were Not Caused By SBG's Alleged Conduct .......... 9

B. Plaintiffs Do Not Adequately Allege A Violation of the Torture Victim Protection Act ("TVPA") .......... 10

C. Plaintiffs Have Not Adequately Alleged State Or Common Law Claims .......... 10

**CONCLUSION** .......... **10**

# TABLE OF AUTHORITIES

## CASES

*Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215 (S.D.N.Y. 1992) ...........................3

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)..................................................2

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562 (S.D.N.Y. 1997)....................1, 5

*Boim v. Quranic Literacy Inst. & Holy Land Found.*, 291 F.3d 1000 (7th Cir. 2002) ...................7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...........................................................2, 3

*Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)*, 274 F. Supp. 2d 86 (D.D.C. 2003) ...........7, 9

*Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett II)*, 292 F. Supp. 2d 9 (D.D.C. 2003).............2, 4

*Bush v. Stern Bros. & Co.*, 524 F. Supp. 12 (S.D.N.Y. 1981) ........................................................6

*Calder v. Jones*, 465 U.S. 783 (1984)...........................................................................................2

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)............................................5

*Ideal Steel Supply Corp. v. Anza*, 254 F. Supp. 2d 464 (S.D.N.Y. 2003).......................................6

*In re Commodore Int'l, Ltd. v. Transpacific Corp., Ltd.*, 242 B.R. 243 (S.D.N.Y. 1999)
    *aff'd*, 2000 WL 977681 (S.D.N.Y. Jul. 17, 2000)..................................................................5

*Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) .....................................................2

*Daval Steel Prod. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159 (S.D.N.Y. 1989) .........................4

*Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001)......................................2

*Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995) ...................................................2

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998).................................................2

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206
    (2d Cir. 2004)...........................................................................................................................4

*Halberstam v. Walsh*, 705 F.2d 472 (D.C. Cir. 1983) ....................................................................7

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)............................................................9

*International Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*, No. 00 CIV. 8695, 2002 WL 465291 (S.D.N.Y. Mar. 27, 2002) ........................................................5

*Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998) ................................4

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)...................................................5

*Laborers Local 17 Health & Benefit Fund v. Phillip Morris*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998) ......................................................................................................5

*Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975)............................3

*Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203 (S.D.N.Y. 1998) ..........................3, 7

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y.), *aff'd in part, rev'd in part*, 162 F.3d 748 (2d Cir. 1998)................................................2

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ..........................................................................5

*Socialist Workers Party v. Attorney Gen. of the United States*, 375 F. Supp. 318 (S.D.N.Y. 1974) ......................................................................................................4

## STATUTES

18 U.S.C. § 2333 ...............................................................................................................9

18 U.S.C. § 2339C(a)(3) ...................................................................................................9

28 U.S.C. § 1350 .............................................................................................................10

## <u>INTRODUCTION</u>

Plaintiffs have chosen to ignore many of the arguments raised by the Saudi Binladin Group ("SBG") in its motion to dismiss and have improperly attempted to plead new allegations in their brief.  Nonetheless, Plaintiffs' opposition demonstrates the absence of any legitimate claim against SBG, both because this Court lacks personal jurisdiction and because SBG is not adequately alleged to have done anything to cause Plaintiffs' injuries.  SBG – drawn into this litigation and accused of these fiendish acts solely because of its name – must be dismissed.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER SBG

While acknowledging that they must "'*plead facts*, which, if true, are sufficient in themselves to establish jurisdiction,'" *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997) (emphasis added) (quoted in Plaintiffs' Mem. of Law in Opp. to SBG's Motion to Dismiss ("Pl. Opp.") at 5), Plaintiffs effectively concede that they have not pleaded or even identified sufficient facts to establish personal jurisdiction over SBG under the traditional minimum contacts test.  (*See* Pl. Opp. at 9.)  Rather, Plaintiffs employ novel conspiracy theories in an attempt to circumvent this required showing.  These theories, already rejected by Judge Robertson, fail as a matter of law.  Moreover, having failed to establish their primary grounds for jurisdiction, Plaintiffs should not be permitted to embark on a jurisdictional fishing expedition under the guise of discovery.

### A.    SBG Did Not "Purposefully Direct" Its Conduct At The United States

Plaintiffs begin with the remarkable notion that the horrific nature of the September 11 attacks somehow warrants a reduced jurisdictional inquiry.  The inflammatory accusation of complicity in such acts, however, warrants more careful attention, not less, to applicable jurisdictional requirements, especially in the case of foreign defendants such as SBG, whose contacts with the United States are virtually non-existent.  As SBG noted, the Supreme Court has

cautioned that "'[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" (Mem. of Law in Support of SBG's Mot. to Dismiss Compl. or in the Alternative for a More Definite Stmt. ("SBG Mem.") at 6 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).)

Plaintiffs essentially argue that because all 434 defendants are accused of supporting al Qaeda at some time in some way and that because it became apparent at some point that Osama Bin Laden ("OBL") was targeting the United States, all 434 defendants are subject to this Court's jurisdiction for "purposefully direct[ing]" their conduct at the United States. For this novel theory, they rely principally on *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) and *Calder v. Jones*, 465 U.S. 783 (1984).[1] However, they ignore *Burger King*'s express holding that personal jurisdiction is only proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." 471 U.S. at 475 (internal citation omitted). Similarly, while Plaintiffs invoke *Calder* on the ground that "SBG is accused of intentional tortious acts" (Pl. Opp. at 7), courts applying *Calder* have consistently held that it does not "create[] a per se rule that an allegation of an intentional tort creates personal jurisdiction." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995). Perhaps most importantly, Plaintiffs ignore the fact that the court in *Burnett* already rejected their reliance on exactly these theories as to Prince Sultan in his personal capacity. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003) (*Burnett II*).

---

[1] Plaintiffs' reliance on several cases decided under the Foreign Sovereign Immunities Act ("FSIA") – *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y.), *aff'd in part, rev'd in part*, 162 F.3d 748 (2d Cir. 1998); *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000); and *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) – is wholly misplaced. In fact, Plaintiffs' citation to them is misleading because those cases concern the much different jurisdictional inquiry under the FSIA's state-sponsor of terrorism exception. In deciding jurisdiction over a non-state alien defendant, the Court should, as another has done in a § 2333 case, "decline plaintiffs' invitation to extend the due process analysis applied by the district courts under the state-sponsored terrorist exception to the FSIA," and instead require Plaintiffs to "demonstrate that the defendant ha[d] sufficient minimum contacts to satisfy a traditional due process analysis." *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 95 (D.R.I. 2001).

Personal jurisdiction must be based on the defendant's specific actions that create a "substantial connection" with the forum, not "the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citation omitted).  Plaintiffs' theory, however, rests not on the assertion that SBG directed its conduct at the United States but that it was the *"terrorists* [SBG allegedly supported] who targeted the U.S."  (Pl. Opp. at 6 (emphasis added).) It remains undisputed that Plaintiffs have cited no act of SBG itself that was directed at the United States.  On the contrary, SBG's alleged acts, as characterized in Plaintiffs' brief, revolve around public works projects in Sudan undertaken almost ten years before the September 11 attacks – well before that nation was designated a state sponsor of terrorism and before OBL was known to have targeted the United States.  (Pl. Opp. at 2 n.2; SBG Mem. at 12.)

**B.      SBG's Conduct Does Not Give Rise to Conspiracy Jurisdiction**

Plaintiffs' invocation of conspiracy jurisdiction fails for the same reason.  As SBG demonstrated – and Plaintiffs admit – jurisdiction on this basis requires among other things "'a *prima facie* factual showing of a conspiracy'" and "'*specific facts* warranting the inference that the defendant was a member of the conspiracy.'"  (SBG Mem. at 9 (quoting *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992)) (emphasis added.); Pl. Opp. at 9 (paraphrasing same).)  It is well established that "the bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction," and "[c]onclusory allegations are insufficient to meet the somewhat stringent pleading requirements of this Circuit when conspiracy is alleged." (SBG Mem. at 9 (citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975), and *Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998)).)  Plaintiffs make no effort to respond, except simply to restate their empty conclusion that SBG "nurtur[ed] and develop[ed] al Qaeda."  (Pl. Opp. at 9.)  No matter how liberal the pleading standards, "mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" the

requirements for personal jurisdiction.  *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) (internal citation omitted).

      **C.**    **Plaintiffs Are Not Entitled to Jurisdictional Discovery**

      In the alternative, Plaintiffs seek jurisdictional discovery.  The purpose of such discovery – which is especially burdensome for an alien defendant – is to assist a plaintiff in substantiating relevant jurisdictional contacts already proffered, not to permit a plaintiff to flounder for support to sustain its baseless jurisdictional theories.  *See Daval Steel Prod. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (denying jurisdictional discovery, because "[t]he mere commencement of a lawsuit, without the support of a threshold showing of jurisdictional prerequisites, should not entitle the party to use the court processes to attempt to find support for having commenced the litigation."); *Socialist Workers Party v. Attorney Gen. of the United States*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974).  Thus, to obtain jurisdictional discovery, a plaintiff must first establish its *prima facie* case for jurisdiction.  *See Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998).  While recognizing that doing so prior to discovery may be difficult in some cases, the Second Circuit has declined to lower this requirement.  *Id.*

      Plaintiffs have fallen far short of a *prima facie* showing of personal jurisdiction as to SBG.  Importantly, none of the asserted contacts even arguably relate to Plaintiffs' causes of action and thus cannot establish specific jurisdiction.  Moreover, Plaintiffs themselves recognize that they have not asserted sufficient SBG contacts to satisfy a traditional minimum contacts analysis but merely "believe" that discovery would uncover "substantial contacts."  (Pl. Opp. at 10.)  While Plaintiffs identify a variety of sporadic contacts – either of SBG or assorted Binladin family members – they do not explain the relevance of such contacts, much less offer the requisite "basic outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery."  *Burnett II*, 292 F. Supp. 2d at 22.  Taken either alone or in the

aggregate, these asserted contacts come nowhere close to the kind of "substantial, continuous and systematic . . ." (SBG Mem. at 7 (citing cases)) contacts necessary to subject SBG to the general jurisdiction of United States courts. *See Bellepointe,* 975 F. Supp. at 564 (holding that "[d]oing business, however, requires more than just occasional or casual business activities; rather, the defendant's conduct must be with a fair measure of permanence and continuity." (internal quotation and citation omitted)).

The only contact alleged in Plaintiffs' complaint is an SBG office in Maryland that the complaint itself acknowledges was closed before the complaint was filed. (Third Amended Complaint ¶ 545 ("3AC").[2]) Because Plaintiffs do not dispute that "personal jurisdiction is determined as of the date the complaint is filed" (SBG Mem. at 8 (citing cases)), that contact is irrelevant. Many of Plaintiffs' other newly asserted contacts are equally irrelevant.[3] Some are too remote in time, such as donations to Harvard University ten years ago and participation in a U.S.-Saudi business conference in 1999. (Pl. Opp. at 10 and Ex. 9.) Others do not pertain to SBG itself, such as properties owned by individual Binladin family members.[4] In addition, neither the passive investments in U.S. funds or entities, *see Shaffer v. Heitner,* 433 U.S. 186, 216 (1977), nor banking relationships, *International Telecom, Inc. v. Generadora Electrica del Oriente, S.A.,* No. 00 CIV. 8695, 2002 WL 465291, at *4 (S.D.N.Y. Mar. 27, 2002), nor the mere fact that an officer-employee maintains a residence within the United States, *see In re Commodore Int'l, Ltd. v. Transpacific Corp.,* Ltd., 242 B.R. 243, 251 (S.D.N.Y. 1999) (finding

---

[2] As filed, Plaintiffs' Fourth Amended Complaint ("4AC") appears to consist of only a caption without the body of the complaint. SBG therefore has referred to the 3AC. To the extent Plaintiffs mean the 4AC to be identical in substance, the distinction is of no consequence.

[3] It is "questionable for [a] district court to [rely] on the plaintiffs' briefs to embellish the conclusory allegations of the complaint." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Laborers Local 17 Health & Benefit Fund v. Phillip Morris,* 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998) ("Extrinsic materials . . . cannot be used to amend pleading[s] that are themselves insufficient.")

[4] It is universally recognized that "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n.13 (1984).

that "mere fact that an officer [is present] in the state does not bring the corporation within the jurisdiction of New York."), *aff'd*, 2000 WL 977681 (S.D.N.Y. Jul. 17, 2000), can establish general personal jurisdiction.  And whether or not SBG retained a public relations firm can have no more impact on the inquiry than that it hired Jones Day.  *See Bush v. Stern Bros. & Co.*, 524 F. Supp. 12, 14 (S.D.N.Y. 1981) (retention of firms in the forum which perform services for a fee does not represent activity by the defendant in the forum for jurisdictional purposes).  Finally, Plaintiffs certainly cannot be entitled to discovery on the basis of vague assertions that "SBG has extensive international commercial ties," including relationships with international, U.S.-based companies such as Motorola and General Electric.  (Pl. Opp. at 10.)  SBG's presence in international commerce says nothing about its contacts in the United States.

## II.  PLAINTIFFS HAVE FAILED TO STATE ANY CLAIMS AGAINST SBG

### A.  Plaintiffs Do Not Adequately Allege A Violation of the Anti-Terrorism Act ("ATA")

Plaintiffs' ATA claims fail in two key respects.  First, whether concerned with a primary violation or a joint tort theory, Plaintiffs' allegations fail to link SBG to any terrorist activities of any kind.  Second, even if they did, Plaintiffs have failed to plead facts that would establish the required proximate causal connection between that conduct and the September 11 attacks.[5]

#### 1.  *SBG's Alleged Conduct Does Not Constitute Knowing And Intentional Support of Terrorism*

Liability for a primary violation of the ATA requires, first and foremost, that the defendant knowingly and intentionally provided material support to terrorism.  (SBG Mem. at

---

[5] Contrary to Plaintiffs' claims, SBG has not argued for a "heightened pleading standard" under Rule 9(b). (*Compare* Pl. Opp. at 1 *with* SBG Mem. at 3-4; *id.* at 9-10 (applying Rule 8(a)).)  Rather, SBG demonstrated that "notwithstanding the permissive standards of notice pleading under the federal rules" (SBG Mem. at 15), Plaintiffs' conclusory allegations are insufficient to state a claim against SBG.  Nor did SBG misrepresent relevant caselaw. While Plaintiffs deceptively omit a paragraph break and a citation in order to accuse SBG of "misquoting" *Ideal Steel Supply Corp. v. Anza*, 254 F. Supp. 2d 464, 467 (S.D.N.Y. 2003), SBG argued only that the Court should take account of the stigmatizing effect of these claims, just as courts do in the RICO context.  In the same way, Judge

11.)  *See also Boim v. Quranic Literacy Inst. & Holy Land Found.*, 291 F.3d 1000, 1011-12,

1016 (7th Cir. 2002); *Burnett I*, 274 F. Supp. 2d at 106.  Plaintiffs concede this point.  (Pl. Opp.

at 15 (admitting that they must "show . . . that SBG *knowingly* provided *material support* to a

recognized terrorist organization *with the intent* to support that organization's illegal activities."

(emphasis added)).)  Similarly, liability for aiding and abetting a violation of the ATA requires

allegations to show "knowing and substantial assistance" in the "principal violation."  (SBG

Mem. at 17.)  Again, Plaintiffs acknowledge their obligation to "plead facts showing that: . . . ii)

the defendant [was] generally aware of his role as part of an overall illegal or tortious activity *at*

*the time he provide[d] the assistance*; and iii) the defendant . . . knowingly and substantially

assist[ed] *the principal violation*."  (Pl. Opp. at 17 (citing *Halberstam v. Welch*, 705 F.2d 472,

477 (D.C. Cir. 1983) (emphasis added).)  Finally, to state a conspiracy claim Plaintiffs must

plead specific facts and may not simply rely on general or conclusory allegations of a conspiracy.

(SBG Mem. at 19-20.)  *See Nweke,* 25 F. Supp. 2d at 219.  Plaintiffs, in reciting the elements of a

conspiracy claim, again appear to be in substantial agreement.  (Pl. Opp. at 19 (citing *Burnett I*,

274 F. Supp. 2d at 107).)  As previously argued, failure to meet these standards requires

dismissal.  (SBG Mem. at 17, 19 (citing cases).)  Plaintiffs make no response.

 Although Plaintiffs assert that they have satisfied these legal standards, they fail to

address most of the deficiencies identified by SBG.[6]  First, they do not dispute that SBG's

alleged support of the U.S.-backed Afghan resistance in the late 1980s (3AC ¶¶ 546-47) does not

---

(continued…)

Robertson noted that the extreme nature of the charges in this case call for "extra-careful scrutiny of plaintiffs' allegations."  *Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)*, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003).

 [6] It should also be noted that because Plaintiffs' allegations against SBG cannot support any inference of an agreement between SBG and *anyone* to engage in *any* terrorist acts, (SBG Mem. at 19-20), Plaintiffs' disingenuous argument that "SBG contends that its putative disavowal of Bin Laden constitutes withdrawal" from the alleged terrorist conspiracy (Pl. Opp. at 20) misses the mark entirely.  Plaintiffs have failed sufficiently to allege that SBG was ever involved in any conspiracy, and thus there was nothing from which SBG could "withdraw."

in any way support their claim.  Second, although they recite Tariq Binladin's former role within the International Islamic Relief Organization ("IIRO"), they do not dispute that he served in his personal capacity and therefore his alleged conduct cannot be attributed to SBG.  (SBG Mem. at 5, n.6.)  Third, they also reference a tangential connection between SBG and Mohammed Jamal Khalifa (Pl. Opp. at 2), but again they make no response to SBG's argument regarding the insufficiency of those allegations.  (SBG Mem. at 12-13.)

        Instead, Plaintiffs now focus almost exclusively on SBG's alleged participation in Sudanese construction projects in approximately 1991 (Pl. Opp. at 1-2), but these allegations are insufficient in several respects.  First, Plaintiffs do not dispute that these projects were undertaken before Sudan was designated a state sponsor of terror and before OBL was recognized as a terrorist or publicly proclaimed the United States his target, not to mention a decade before the September 11 attacks.[7]  (SBG Mem. at 12 & n.12.)  Second, Plaintiffs admit that SBG's participation in these projects "provided support and contributions to . . . public works" – a road and an international airport – not terrorism.  (3AC ¶¶ 550, 551; SBG Mem. at 4, 12.)  While Plaintiffs' brief asserts that such projects were "critical to the operation of . . . al Qaeda in the first half of the 1990s" (Pl. Opp. at 16), they allege no facts supporting such an inference.  Third, the bulk of Plaintiffs' argument regarding Sudan concerns not those public works but wholly unrelated activities of OBL and his associates.  It was OBL who ran terrorist training camps there (Pl. Opp. at 1 (citing 4AC)) and the government of Sudan that provided financing, training and weapons (id.).  And according to the Complaint, while SBG worked on the Tahaddi Road, it was OBL's "own company, Al Hijra," that was "headed by Muslim activists" and whose "agents, officers or executives were directly involved in al Qaeda."  (3AC

------

    [7] As discussed in section II.A.2. below, that temporal disconnect also defeats Plaintiffs' attempt to establish proximate causation on this basis.

¶¶ 553-54.)[8]  Such allegations, coupled with Plaintiffs' impermissibly conclusory allegations

against all defendants generally (Pl. Opp. at 1-2 (citing 4AC)), do not sufficiently allege that

SBG provided or agreed to provide material support or substantial assistance to terrorism.

2. *Plaintiffs' Injuries Were Not Caused By SBG's Alleged Conduct*

SBG's causation argument focuses on proximate causation, not "but for" causation, as

Plaintiffs claim.  (Pl. Opp. at 11.)  Specifically, SBG relies on the ATA's textual prerequisite in

§ 2333 that Plaintiffs be injured "by reason of" SBG's conduct.  (SBG Mem. at 13-15 (citing

*Burnett I*, 274 F. Supp. 2d at 100).)  Plaintiffs acknowledge that "proximate cause [must] also

[be] shown" to maintain a civil ATA claim (Pl. Opp. at 12), and fail to contradict or even

mention the fact that "by reason of," as repeatedly used by Congress, "demand[s] some . . . direct

relation between the injury asserted and the injurious conduct alleged." (SBG Mem. at 13-14

(citing, *inter alia*, *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).)  Plaintiffs

attempt to avoid the requirement that they link SBG's conduct to the September 11 attacks by

invoking § 2339C, but that post-September 11 provision, which criminalizes intentional funding

of a terrorist act even if not "actually used to carry out a predicate act" of terrorism, 18 U.S.C. §

2339C(a)(3), by its terms reaches only "this subsection" (§ 2339C) and therefore has no impact

on § 2333's requirements for civil liability.[9]  For the reasons already stated, the allegations

against SBG fail to indicate any link, much less a direct one, between its alleged conduct and the

September 11 attacks that injured Plaintiffs.  Their claims therefore must be dismissed.  (*See*

SBG Mem. at 15 (citing numerous cases).)

_____

[8]  Plaintiffs' complaint does at another point suggest that Al Hijra was an "affiliate" or "subsidiary" of SBG (3AC ¶ 549), but putting aside the inherent contradiction of that allegation, the 3AC nevertheless offers no allegations to connect SBG to Al Hijra's activities in Sudan.

[9]  Indeed, if Plaintiffs' reading were accurate – which it is not – it would eradicate Article III's standing requirements in the context of civil ATA cases as claims then could be made by uninjured persons who had never "actually" (§ 2339C(a)(3)) been the victim of a terrorist attack.

**B.      Plaintiffs Do Not Adequately Allege A Violation of the Torture Victim Protection Act ("TVPA")**

Plaintiffs' response to SBG's TVPA argument, again, essentially ignores the central point. Although the TVPA applies only to "individual[s]," 28 U.S.C. § 1350, note, not corporations (SBG Mem. at 22 & n.20), even if it did reach corporations, Plaintiffs make virtually no response to the argument that SBG cannot be liable under the TVPA based on participation in legitimate construction projects over a decade ago in Sudan. As discussed earlier, such activities simply cannot support an inference that SBG committed or supported the September 11 attacks, much less that it did so while acting under the authority of a foreign state (SBG Mem. at 23), as the TVPA requires.

**C.      Plaintiffs Have Not Adequately Alleged State Or Common Law Claims**

Plaintiffs concede that they must resort to the same flawed joint tort theories relied upon in their other claims against SBG as the basis for all of their state law claims. (Pl. Opp. at 24-25.) Thus, for the same reasons that Plaintiffs' aiding and abetting and conspiracy claims fail, as demonstrated above and in SBG's opening brief (SBG Mem. at 16-20), Plaintiffs' state law claims must also fail. (SBG Mem. at 23-25.)

<u>CONCLUSION</u>

For all of the foregoing reasons, as well as those stated in its opening brief, SBG respectfully requests that all claims against it be dismissed, or that in the alternative Plaintiffs be ordered to submit a more definite statement of those claims.

Dated:  May 28, 2004                    Respectfully submitted,


                                        /s/ E. Michael Bradley
                                        _____
                                        E. Michael Bradley (EB-7822)
                                        Geoffrey S. Stewart (GS-5413)
                                        JONES DAY
                                        222 East 41st Street
                                        New York, New York  10017-6702
                                        Tel:  (212) 326-3939
                                        Fax:  (202) 755-7306

                                        Stephen J. Brogan (admitted *pro hac vice*)
                                        Timothy J. Finn (admitted *pro hac vice*)
                                        Jonathan C. Rose (admitted *pro hac vice*)
                                        James E. Gauch (admitted *pro hac vice*)
                                        Melissa D. Stear (admitted *pro hac vice*)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C.  20001
                                        Tel:  (202) 879-3939
                                        Fax:  (202) 626-1700

                                        *Attorneys for Defendant SBG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of May, 2004, I caused a true and correct copy of Defendant Saudi Binladin Group's Reply Memorandum in Support of Motion to Dismiss the Complaint or in the Alternative for More Definite Statement to be served in accordance with the Court's Electronic Case Filing System.

Dated:  May 28, 2004

/s/ E. Michael Bradley
_____

E. Michael Bradley (EB-7822)

WAI-2113223v4