**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re TERRORIST ATTACKS on ) | **03 MDL 1570 (RCC)** |
| SEPTEMBER 11, 2001 ) | |
| ) | |
| ) | |
| KATHLEEN ASHTON et al., ) | |
| Plaintiffs, ) | |
| ) | 02 CV 6977 (RCC) |
| v. ) | |
| ) | |
| AL QAEDA ISLAMIC ARMY et al., ) | |
| Defendants. ) | |

**REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Dated: May 28, 2004
      Washington, D.C.

Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
Ugo Colella (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

**Table of Contents**

I.     NCB is Immune from Suit Under the FSIA ................................................................1

II.    Plaintiffs' Claims Against NCB are Not Justiciable ......................................................4

III.   This Court Lacks Personal Jurisdiction Over NCB ......................................................6

IV.    Plaintiffs Fail to State a Claim Against NCB................................................................8

## Table of Authorities

### Cases

*Andros Compania Maritima, S.A. v. Intertanker Ltd.,*
    714 F. Supp. 669 (S.D.N.Y. 1989) ................................................................7

*Bank of China v. NBM L.L.C.,*
    2002 WL 1072235 (S.D.N.Y. May 28, 2002)...............................................2

*Burnett v. Al Baraka Inv. & Dev. Corp.,*
    274 F. Supp. 2d 86 (D.D.C. 2003) .............................................................3, 9

*Burnett v. Al Baraka,*
    292 F. Supp. 2d 9 (D.D.C. 2003) ................................................................6

*Calder v. Jones,*
    465 U.S. 783 (1984) ....................................................................................6

*Chan v. Reno,*
    916 F. Supp. 1289 (S.D.N.Y. 1996) ............................................................3

*Colson Services Corp. v. Bank of Baltimore,*
    712 F. Supp. 28 (S.D.N.Y. 1989) ................................................................8

*Compagnie Noga v. The Russian Federation,*
    361 F.3d 676 (2d Cir. 2004) .............................................................. 1, 2, 3

*Daliberti v. Iraq,*
    97 F. Supp. 2d 38 (D.D.C. 2000) ................................................................6

*Dole Food Co. v. Patrickson,*
    123 S. Ct. 1655 (2003)................................................................................2

*Filler v. Hanvit Bank,*
    2003 WL 21729978 (S.D.N.Y. July 25, 2003) ............................................2

*Hyatt Corp. v. Stanton,*
    945 F. Supp. 675 (S.D.N.Y. 1996) ..............................................................2

*In re Ski Train Fire,*
    198 F. Supp. 2d 420 (S.D.N.Y. 2002).........................................................2

*Kato v. Ishihara,*
    360 F.3d 106 (2d Cir. 2004) .......................................................................3

*Klinghoffer v. S.N.C. Achille Lauro,*
    937 F.2d 44 (2d Cir. 1991) .........................................................................7

*Kolbeck v. LIT Am., Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996) ............................................................................. 10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ............................................................................ 7

*Letelier v. Republic of Chile*,
    488 F. Supp. 665 (D.D.C. 1980) .................................................................................. 4

*Liu v. Republic of China*,
    892 F.2d 1419 (9th Cir. 1989) ..................................................................................... 4

*O'Brien v. National Property Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) .............................................................................. 9

*O'Connell Machinery Co. v. M.V. "Americana"*,
    734 F.2d 115 (2d Cir. 1984) .................................................................................... 1, 2

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F. Supp. 325 (E.D.N.Y. 1998) .............................................................................. 6

*Twentieth Century Fox v. Marvel Enters.*,
    220 F. Supp. 2d 289 (S.D.N.Y. 2002) .......................................................................... 7

*Zuchowicz v. United States*,
    140 F.3d 381 (2d Cir. 1998) ........................................................................................ 9

## Federal Statutes

18 U.S.C.

    § 2333 ................................................................................................................... 8

    § 2337(2) ............................................................................................................ 4, 5

    § 2339C(a)(3) ......................................................................................................... 8

28 U.S.C.

    § 1603(b)(2) ........................................................................................................... 2

    § 1605(a)(2) ........................................................................................................... 3

    § 1605(a)(5) ........................................................................................................ 3, 4

    § 1605(a)(7) ........................................................................................................... 3

**Federal Rules of Evidence**

Rule 201.................................................................................................................................................7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re TERRORIST ATTACKS on ) | 03 MDL 1570 (RCC) |
| SEPTEMBER 11, 2001 ) | ECF Case |

*This document relates to: Kathleen Ashton v. Al Qaeda*
*Islamic Army,* 02 CV 6977 (RCC)

## REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK ("NCB") IN SUPPORT OF ITS MOTION TO DISMISS

The *Ashton* Plaintiffs offer a condensed but nearly-carbon copy of the *Burnett* plaintiffs' opposition to NCB's motion to dismiss that look-alike action. Mere repetition cannot alter the inevitable conclusion that NCB is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), and would not be subject to the jurisdiction of the U.S. courts even if NCB erroneously were treated as a non-sovereign entity. Moreover, Plaintiffs' claims unavoidably present non-justiciable questions, and fail as a matter of law to establish the required causal link between NCB's alleged actions and the September 11 attacks.

## I.   NCB is Immune From Suit Under the FSIA.

**Instrumentality Status.** The threshold question is whether the Saudi government owns NCB—making NCB an "instrumentality" that is presumptively entitled to FSIA immunity. *Ashton* MTD, at 2-10. Under *O'Connell Machinery Co. v. M.V. "Americana"*, 734 F.2d 115, 116 (2d Cir. 1984), NCB qualifies as an instrumentality of the Saudi government so long as NCB is owned by a department, ministry, office (*Ashton* MTD, at 6-8) or other "political subdivision" (*id.* at 9-10) of the Saudi government. *O'Connell* was just recently reaffirmed by the Second Circuit in *Compagnie Noga v. The Russian Federation*, 361 F.3d 676, 687 (2d Cir. 2004). NCB is owned by the Saudi government through the Saudi Ministry of Finance—specifically a bureau of the Ministry of Finance called the Public Investment Fund ("PIF"). *Ashton* MTD, at 2-10. *Compagnie Noga* makes clear that the PIF must be seen as part of the Saudi government because its activities implement Saudi national

1

economic policy.  *Ashton* MTD, at 7-10; *Burnett* Reply Mem., at 2-3.[1]  Under *Dole Food Co. v. Patrickson*, 123 S. Ct. 1655 (2003) ("*Dole*"), NCB could lose "instrumentality" status only if it were owned by another corporation that the Saudi government owns.  *Ashton* MTD, at 8.  Because the PIF is part of the Saudi government, not a corporation, NCB's "parent" is the Saudi government, and NCB is a Saudi government instrumentality.  *Id.* at 2-10.[2]

Plaintiffs try to avoid this result by relying on the outdated "legal characteristics" test[3] to analyze the PIF's status, but that test was jettisoned by the Second Circuit in *Compagnie Noga*.  Plaintiffs' instrumentality argument also squarely conflicts with *O'Connell*, which extended FSIA immunity to an instrumentality that was owned under a structure quite similar to PIF/NCB.[4]  Plaintiffs further misstate the law of this Circuit (Opp. 8) in suggesting that the PIF's core functions are not governmental in nature.  To the contrary, the Second Circuit—not once, but twice—recently has held that a governmental entity engaged in financial activities to promote a foreign sovereign's national economy performs a "quintessential governmental function."  *Ashton* MTD, at 6-7 & n.9

---

[1]   "*Burnett* Reply Mem." and "*Burnett* Op. Mem." refer to the pleadings identified at page 1, footnote 3 of the *Ashton* MTD.

[2]   Thus, in *Bank of China v. NBM L.L.C.*, 2002 WL 1072235, at *4-*5 (S.D.N.Y. May 28, 2002), which Plaintiffs cite (Opp. 7), Judge Chin held that the Bank of China, Head Office and its unincorporated branches were Chinese government instrumentalities, but that a separately incorporated subsidiary of the Bank of China was not.  Similarly, *In re Ski Train Fire*, 198 F. Supp. 2d 420 (S.D.N.Y. 2002) held that the defendant's state-owned "parent corporation…is a foreign state as that term is used in the definition of agency or instrumentality" under the FSIA (*id.* at 424), but that the defendant-subsidiary was not.  Notably, there was no assertion in *Ski Train Fire* that the defendant's "parent" was a "political subdivision" of the foreign government.  *Id.* at 425 n.9.  By contrast, NCB has shown here that the PIF qualifies, at the very least, as a "political subdivision" of the Saudi government.  *Ashton* MTD, at 9-10.  Plaintiffs also cite *Filler v. Hanvit Bank*, 2003 WL 21729978, at *1 (S.D.N.Y. July 25, 2003), which predates, and is inconsistent with, *Compagnie Noga* and its reaffirmation of the *O'Connell* rule that a corporation qualifies as an instrumentality of a foreign government when it is directly owned by the government.

[3]   Opp. 6-7, citing *Hyatt Corp. v. Stanton*, 945 F. Supp. 675 (S.D.N.Y. 1996).  In any event, the PIF would be considered part of the Saudi government itself even under *Hyatt*'s legal characteristics test.  945 F. Supp. at 682.  The undisputed facts confirm that the PIF cannot be sued in its own name, and as an administrative department of the Ministry of Finance with "no separate legal status from the Ministry itself," holds or owns property, and enters into contracts, only on behalf of the Kingdom of Saudi Arabia or the Ministry.  *Ashton* MTD, Exh. 4, ¶¶ 1-2, 4-6, 9, 12; Exh. 6, ¶¶ 4, 6-11.

[4]   A "closer analysis" (Opp. 9 n.5) of *O'Connell* confirms that it is consistent with *Dole*, as the Second Circuit necessarily recognized in recently reaffirming *O'Connell*.  Nor does *O'Connell* adopt the control test that *Dole* rejected.  Opp. 9 n.5.  In *O'Connell*, FINMARE (the political subdivision) owned a majority of Italian Line's (the instrumentality) shares, 734 F.2d at 116, and another Italian governmental entity controlled FINMARE, not Italian Line.  *Id.*  Thus, *O'Connell* comports with the FSIA's requirement that majority ownership, by either the foreign state "or [a] political subdivision thereof," confers instrumentality status.  28 U.S.C. § 1603(b)(2); *Ashton* MTD, at 2-3.

(citing and quoting *Compagnie Noga*, 361 F.3d at 686, and *Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004)).   The PIF indisputably performs that precise function, and Plaintiffs do not suggest otherwise.   *Ashton* MTD, at 3-6 & Exhs. 4, 6.   Plaintiffs do not address *Compagnie Noga* or *Kato*, except to misleadingly suggest that NCB relied upon the district court's vacated decision in *Compagnie Noga* (Opp. 9 n.5), rather than the Second Circuit's decision.   *Ashton* MTD, at 7-10.

These Second Circuit cases make it utterly insignificant that Plaintiffs (Opp. 4) now wish to abandon their prior position that the "Saudi government" bought "a majority of [NCB's] ownership" and allege instead that the PIF did so.   *See* Fourth Am. Consolidated Master Compl. ("4AC"), ¶ 573.[5]   The PIF is the Saudi government, and NCB is a government "instrumentality" no matter how Plaintiffs try to rewrite their complaint.[6]

**The FSIA's Exceptions.**   Plaintiffs do not dispute that Second Circuit precedent requires courts to determine the "gravamen" of a complaint when examining the applicability of the FSIA's exceptions.   *Ashton* MTD, at 12.[7]   Nor do Plaintiffs contest Judge Robertson's holding that the gravamen of the *Burnett* complaint—which Plaintiffs contend is "identical" to their 4AC (MDL Dkt. #154, at 7-8 n.3)—comes within the state-sponsor of terrorism exception (§ 1605(a)(7)), not the non-commercial tort exception (§ 1605(a)(5)).   *Ashton* MTD, at 12; *Burnett* Reply Mem., at 4.

Regardless, the non-commercial tort exception is inapplicable for several other reasons. First, Plaintiffs do not dispute that NCB's alleged conduct—providing banking services to its customers,[8] and making charitable donations—is not tortious as a matter of law.   *Ashton* MTD, at 15.  Second, consistent with Second Circuit precedent, Judge Robertson correctly held that the

---

[5]      *Ashton* Dkt. ##137, 138, at 1-2.  The proposed amendment therefore would not defeat FSIA immunity, and thus is futile.  *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996).

[6]      Read in their entirety, the Saudi government websites upon which Plaintiffs rely (Opp. 5-6 n.4) fully support the conclusion that the PIF is part of the Saudi government itself.  *Ashton* MTD, Exh. 6, ¶¶ 2-9; *Burnett* Reply Mem., at 3.

[7]      Plaintiffs do not dispute NCB's showing that the commercial activity exception (§ 1605(a)(2)) is inapplicable. *Ashton* MTD, at 12-15.

[8]      *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("*Burnett I*") ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.").

3

"caused by" requirement of (a)(5) is a stringent federal law standard, not a state-law standard applicable to the merits of Plaintiffs' claims.[9]  *Id.* at 16-17.  But even if a merits-type proximate cause standard applied, (a)(5) still would not waive NCB's immunity because Plaintiffs fail as a matter of law to establish that NCB was a cause-in-fact of the September 11 attacks, an essential element of proximate cause.  *Ashton* MTD, at 17; *Burnett* Reply Mem., at 4-5.[10]  <u>Third</u>, NCB's alleged "entire tort" did not occur in the United States even though the September 11 attacks occurred here.  *Compare* Opp. 10 *with Ashton* MTD, at 17-18.  Plaintiffs' theory of vicarious or derivative liability (Opp. 10) by definition does not satisfy the (a)(5) requirement that the "foreign state"—not others—commit a tortious act within the United States.  *Id.* at 18 & n.16.  Neither *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980) nor *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) assist Plaintiff because, in both cases, the tortious acts were committed in the United States by persons who incontestably were employees or agents of the foreign state.  *Ashton* MTD, at 17 n.15.[11]

## II.   Plaintiffs' Claims Against NCB are Not Justiciable.

The political question, act of state, and international comity doctrines are not as narrow as Plaintiffs would like them to be.  Opp. 12-14.  Despite their conclusory assertions to the contrary (*id.* at 13), Plaintiffs unavoidably ask the Judicial Branch to determine that the Kingdom of Saudi Arabia is a state sponsor of terrorism on the theory that its instrumentalities allegedly provided material support to the September 11 attacks.  *Ashton* MTD, at 19.  Any such adjudication would involve policy judgments that are reserved to the Executive Branch.  *Id.* at 19-20.  Dismissal for non-

---

[9]    Nor is the federal law "caused by" standard of (a)(5) modified by the Anti-Terrorism Act ("ATA").  Congress could not have intended in 1976 (the year the FSIA was enacted) to incorporate into the FSIA the substantive provisions of the ATA, which was enacted <u>sixteen years later</u> (1992), and which on its face is inapplicable to agencies or instrumentalities of a foreign state.  *See* 18 U.S.C. § 2337(2); *Burnett* Reply Mem., at 4-5.

[10]    Like the *Burnett* Plaintiffs, Plaintiffs here attempt to satisfy the (a)(5) causation standard by imputing to NCB the actions of its former CEO.  *Compare* Opp. 12 *with Burnett* Op. Mem., at 25-27 *and Burnett* Reply Mem., at 5 n.11.  However, Plaintiffs provide no basis for doing so because they do not make the necessary showing that NCB's former CEO was acting within the scope of his employment with NCB when he engaged in the alleged actions that purportedly trigger exception (a)(5).  *Ashton* MTD, at 11 n.12.

[11]    Plaintiffs do not dispute that they have not alleged actions in the United States by persons acting within the scope of any employment with NCB.  *Ashton* MTD, at 18 n.17.

justiciability would be fully consistent with the ATA, under which Congress prohibited any ability to sue foreign states, and their agencies and instrumentalities. 18 U.S.C. § 2337(2); *compare* Opp. 13.

Plaintiffs' contention that "the Executive Branch has never suggested that adjudication of this case in any way interferes with its conduct of foreign relations" (Opp. 13) is without merit. To the contrary, on behalf of the United States government, the Department of Justice ("DOJ") has filed two Statements of Interest in the consolidated *Federal Insurance* action opposing those Plaintiffs' requests for assistance with service of process. MDL Dkt. ##70, 115. The DOJ argued that identification of certain persons alleged to be in U.S. custody could have "grave consequences for the Government's efforts to combat terrorism," and that "the responsibility for regulating access to sensitive national security information is committed to the Executive Branch, not to the courts." MDL Dkt. #70, at 2; MDL Dkt. #115, at 3. The DOJ's Statements foreshadow the precise sort of proof problems that the political question doctrine is designed to avoid. *Burnett* Op. Mem., at 24-26.

Finally, Plaintiffs overlook precisely how their claims would require judicial examination of "acts of the Kingdom of Saudi Arabia" (Opp. 13), in violation of the act of state and international comity doctrines. Plaintiffs' claims impermissibly require the Court to adjudicate Saudi government actions ranging from the regulation of its banking system to the oversight of legally mandated charitable-giving and legally-established charities. *Ashton* MTD, at 20; *Burnett* Reply Mem., at 6. For example, the Saudi government mandates a type of charitable-giving called *zakat* (*Ashton* MTD, at 20), yet Plaintiffs contend that NCB is involved in "terrorist fund raising" because a charity advertised that it had an NCB account number to be used "for zakat only." Opp. 17; Fawcett Aff., exh. 5.[12] Inevitably, this claim would require the Court to determine how *zakat* is collected and used in Saudi Arabia—an impermissible examination into the internal affairs of a foreign sovereign. *Ashton* MTD, at 20-21. Likewise, Plaintiffs suggest that NCB supported "al Qaeda fronts" when it

---

[12]     "Fawcett Aff." refers to the Affidavit of John Fawcett in Support of Ashton Plaintiffs' Opposition to National Commercial Bank's Motion to Dismiss, *Ashton* Dkt. #128.

allegedly donated to the International Islamic Relief Organization ("IIRO") and other charities (Opp. 12), even though the Saudi Minister of Justice has confirmed that the IIRO and other charities were established and authorized to operate under the laws of Saudi Arabia.  *See* Supplemental Affidavit of Mitchell R. Berger, ¶ 5 & Exh. 9 ("Supp. Berger Aff.") (attached hereto); *see also id.*, ¶ 5, Exh. 10.  Thus, contrary to the act of state and international comity doctrines, Plaintiffs' claims would require this Court to pass judgment on the validity of the Saudi government authorization of those charities.  *Ashton* MTD, at 19-21.

## III.   The Court Lacks Personal Jurisdiction Over NCB.

Plaintiffs have failed to make the required *prima facie* showing that the Court has personal jurisdiction over NCB either under a general or specific jurisdiction theory, and they are not entitled to jurisdictional discovery to cure that defect.[13]  Plaintiffs cannot sustain their theory that NCB's alleged actions were "expressly aimed" at the United States.  Opp. 14-15.  Judge Robertson previously rejected precisely this same theory in *Burnett*, holding that a defendant's donations to a charity that, in turn, allegedly provided funds to al Qaeda  "stops well short" of making a *prima facie* case that the original donor-defendant "expressly aimed" its actions at the United States.  *Burnett v. Al Baraka*, 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003); *Ashton* MTD, at 24; *Burnett* Reply Mem., at 6-8.  Moreover, none of the cases plaintiffs cite supports U.S. jurisdiction here.  *Compare* Opp. 14-15, citing *Calder v. Jones*, 465 U.S. 783 (1984), *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998), and *Daliberti v. Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) *with Ashton* MTD, at 23-24 *and Burnett* Reply Mem., at 7-8.

Nor does Plaintiffs' conspiracy-based theory of jurisdiction have merit, even if Plaintiffs had stated a viable conspiracy claim (which they have not).  Opp. 15; *see infra* at 10.  To establish personal

---

[13]    Instrumentalities of a foreign state are entitled to the protections of the Due Process Clause under Second Circuit law.  *Compare Ashton* MTD, at 23-24; *Burnett* Reply Mem., at 7 *with* Opp. 16.  Plaintiffs' guess as to what Second Circuit law "may be" in the future (Opp. 16) is irrelevant.

jurisdiction based on a conspiracy theory, Plaintiffs must demonstrate that: (1) the out-of-state co-conspirator had an awareness of the effects of the activity of others in the forum; (2) the in-state co-conspirator's activity was for the benefit of the out-of-state conspirators; and (3) the in-state co-conspirators acted at the behest of or on behalf of, or under the control of the out-of-state conspirators. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.* 26 F. Supp. 2d 593, 602 (S.D.N.Y. 1998). Plaintiffs have alleged no facts, nor could they, that: NCB knew that the September 11 attacks were going to occur; the hijackers' actions were for the benefit of NCB; or, that the hijackers were acting on behalf, or under the control, of NCB. *Ashton* MTD, at 23 n.23.

Jurisdictional discovery cannot be used to resuscitate Plaintiffs' deficient allegations of personal jurisdiction. Opp. 16-17.[14] The relevant question is whether NCB has "substantial, continuous, and systematic" contacts with the United States as of September 4, 2002, the date on which Plaintiffs filed their suit against NCB. *Burnett* Op. Mem., at 56. None of Plaintiffs' stray assertions about NCB (*id.* & Fawcett Aff., ¶ 7), even if proved through discovery, come close to meeting this jurisdictional standard:

- Neither of two old lawsuits involving NCB (*Logan Feed* and *Morgan Stanley*) establish that NCB has "substantial" jurisdictional contacts with the United States. *Logan Feed*—as the Court may take judicial notice from the records of that case[15]—involved NCB's long-defunct New York branch, which was closed in 1992, *Ashton* MTD, Exh. 5 (Juco Decl.), ¶ 5, and the *Logan Feed* litigation was terminated in 1996. Likewise, the *Morgan Stanley* litigation was terminated in 1998. Both those lawsuits and NCB's former New York branch had passed into history long before Plaintiffs filed this lawsuit, and thus provide no basis for jurisdiction. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) (participation in an unrelated lawsuit does not subject a party to other lawsuits in the same jurisdiction); *Andros Compania Maritima, S.A. v. Intertanker Ltd*, 714 F. Supp. 669, 675 (S.D.N.Y. 1989) (a "mere handful of arbitrations and litigations in New York" does not satisfy the "fair level of permanence and continuity" required for general jurisdiction).

- Plaintiffs concede that NCB's former second-tier subsidiary, SNCB Securities, Inc. (Delaware) ("SNCB"), was dissolved in February 2001, *see* Fawcett Aff., ¶ 4 & exh. 3.

---

[14]   If, as Plaintiffs suggest (Opp. 17), jurisdictional discovery were permitted because a defendant is in possession of personal jurisdiction "facts," then such discovery would be permissible in all cases.

[15]   *See* Fed. R. Evid. 201; *Twentieth Century Fox v. Marvel Enters.*, 220 F. Supp. 2d 289, 293 n.4 (S.D.N.Y. 2002).

Moreover, the presence of even an active subsidiary in the forum, without more, is an insufficient basis to exercise jurisdiction over the parent corporation. *Ashton* MTD, at 22 n.22. Plaintiffs nevertheless seek jurisdictional discovery about SNCB's contacts with New York because the lobby directory of the New York City building where SNCB previously maintained an office ostensibly still lists SNCB as "occupying Suite 460." *Id.*, ¶ 6. The indisputable facts about SNCB's legal status and actual withdrawal from the United States cannot be trumped by an out-of-date lobby directory. SNCB surrendered its former New York office space effective January 31, 2001, pursuant to a Surrender Agreement executed between SNCB and the landlord. Supp. Berger Aff., ¶ 4, Exh. 8 (Supp. Juco Decl.), ¶ 3 & exh. A. No one at NCB has control over what the landlord or building manager lists in the lobby building directory. *Id.*, ¶ 4. Additionally, neither NCB nor any NCB affiliate (other than SNCB) ever occupied that office space, and SNCB has not occupied that space since the Surrender Agreement took effect. *Id.*, ¶ 4. Equally, SNCB cannot be exhumed from the corporate graveyard just because an August 2002 Dun & Bradstreet business report and the Online Yellow Pages carry out-of-date information about SNCB. *See* Fawcett Aff., ¶ 5; *see also Colson Services Corp. v. Bank of Baltimore*, 712 F. Supp. 28, 32-33 (S.D.N.Y. 1989) (jurisdictional discovery denied where plaintiff's speculative and legally insufficient jurisdictional allegations were specifically contradicted by defendant's sworn testimony).

- Finally, Plaintiffs recycle (Opp. 17) the *Burnett* plaintiffs' contention that NCB supposedly "facilitated and participated in fund-raising activities" in the United States because NCB account numbers appear in magazine advertisements of certain charities. Fawcett Aff., ¶ 8 & exh. 5. However, like the *Burnett* plaintiffs, Plaintiffs here make no showing that these charities actually raised contributions from the United States, that any such contributions were deposited into the advertised NCB accounts, or—most importantly—that any such contributions were diverted to Osama bin Laden, al Qaeda, or the September 11th hijackers. *Burnett* Reply Mem., at 8. Equally, it is not a "purposeful contact" with the United States <u>by NCB</u> if a charitable organization chooses to advertise that it has an account with NCB in Saudi Arabia. *Id.* at 9. Moreover, the Muslim World League, in whose Journal these advertisements appear, was lawfully constituted as a charity by the Saudi government (Berger Aff., Exh. 9), and therefore there is nothing inherently wrongful about these advertisements. *Burnett* Reply Mem., at 8-9.

## IV.    Plaintiffs Fail to State a Claim Against NCB.

**Causation.** The 4AC contains no allegations suggesting that NCB's alleged conduct was the cause-in-fact of the September 11 attacks, an essential element of proximate cause. *Ashton* MTD, at 24-25.[16] Plaintiffs attempt to compensate for this deficiency by suggesting that cause-in fact is too difficult to "plead and prove." Opp. 24. Plaintiffs then contend that they "should be entitled to an

---

[16]    The causation requirement of 18 U.S.C. § 2339C(a)(3) (Opp. 23-24) does not displace the proximate cause standard applicable to civil ATA actions brought pursuant to 18 U.S.C. § 2333. *Burnett* Op. Mem., at 73-74.

inference that NCB's financial support helped fund the September 11 attacks" purportedly because those attacks "could not have happened" without NCB's alleged "long and substantial support" for "build[ing] terrorist training camps," "recruit[ing] and indoctrinat[ing] young men to become terrorists," and "spread[ing] [al Qaeda's] message of hate and violence against the U.S.." *Id.* at 24, 25.

No allegation in the 4AC comes anywhere near supporting these "extreme," "ugl[y]," and "serious" assertions,[17] which are entitled to no deference. *See, e.g., O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). To the contrary, far from supporting these allegations, the 4AC contains no facts suggesting that NCB committed a wrongful act. NCB is alleged to have been a "funnel" through which its customers allegedly provided support to al Qaeda, *Ashton* MTD, at 11, yet Plaintiffs do not contest Judge Robertson's holding that a bank commits no wrong when it provides banking services to its customers. *Burnett I*, 274 F. Supp. 2d at 109. NCB also is alleged to have made charitable contributions, *Ashton* MTD, at 11, but Plaintiffs have no answer to NCB's showing that charitable giving is not inherently wrongful and that the 4AC contains no facts suggesting that NCB knew that its charitable donations would be diverted to Osama bin Laden or al Qaeda. *Id.* at 15.

*Zuchowicz v. United States*, 140 F.3d 381 (2d Cir. 1998) (interpreting Connecticut law) (Opp. 24-25), even if applicable, supports NCB's position, not Plaintiffs. *Zuchowicz* expressly held that, under Connecticut law, cause-in-fact is an essential element of causation. *Id.* at 388-89 nn.6-7. There was no dispute in *Zuchowicz* that the defendant's actions were a cause-in-fact of plaintiff's death. *Id.* at 390 (drug prescribed in overdose amounts). Thus, *Zuchwicz* addressed the distinctly different (and irrelevant) question of whether the defendant's "negligence" was a but-for cause of

---

[17]    *Burnett I*, 274 F. Supp. 2d at 103.

plaintiff's death. *Id.* ("[T]he defendant was undoubtedly a *but for* cause of the harm, but does this suffice to allow a fact finder to say that the defendant's *negligence* was a *but for* cause?" (original emphasis)).

**Aiding and Abetting/Conspiracy.** Plaintiffs fail as a matter of law to state aiding and abetting and conspiracy claims. *Ashton* MTD, at 24. Plaintiffs do not satisfy the essential element of "substantial assistance" necessary to state a claim for aiding and abetting because they concede (Opp. 22) that there is no direct link between NCB's alleged wrongdoing and the September 11 attacks. *Ashton* MTD, at 24. Plaintiffs misstate the law of aiding and abetting by suggesting that they "need not show that NCB knew that al Qaeda was going to commit the horrific acts of September 11, 2001 . . . ." Opp. 23. New York law, in fact, does require just such a showing. *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (under New York law, aiding and abetting requires actual, not constructive, knowledge of the primary wrong). Plaintiffs' conspiracy claim also fails as a matter of law because Plaintiffs have not established that NCB entered into an unlawful agreement. *Ashton* MTD, at 24. Providing banking services and making charitable donations are not wrongful, *id.*, and any alleged transactions between NCB's former CEO and Osama bin Laden or al Qaeda (Opp. 23) cannot be imputed to NCB. *See supra* n.10.

For the foregoing reasons, and those stated in NCB's opening memorandum of law, NCB's motion to dismiss should be granted and the claims against it dismissed with prejudice.

Dated: May 28, 2004
      Washington, D.C.

Respectfully submitted,

/s/ Ronald S. Liebman
Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
Ugo Colella (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: (202) 457-6000
Fax:     (202) 457-6315
*Attorneys for Defendant The National Commercial Bank*