UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001      03 MDL 1570 (RCC)
                                                   ECF Case

-------------------------------------------------------------x

KATHLEEN ASHTON, et al.,

                Plaintiffs,                        02 CV 6977 (RCC)
                                                   ECF Case
        v.

AL QAEDA ISLAMIC ARMY, et al.,

                Defendants.
-------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF PRINCE MOHAMED AL-FAISAL AL-SAUD
IN SUPPORT OF HIS MOTION TO DISMISS
THE FOURTH AMENDED CONSOLIDATED MASTER COMPLAINT**

Louis R. Cohen (LC 4012)
WILMER CUTLER PICKERING LLP
2445 M Street N.W.
Washington, D.C. 20037
Tel.: 202-663-6000
Fax: 202-663-6363

David P. Donovan (DD 7012)
WILMER CUTLER PICKERING LLP
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102
Tel: 703-251-9700
Fax: 703-251-9797

Matthew Previn (MP 2173)
WILMER CUTLER PICKERING LLP
399 Park Avenue
New York, NY 10022
Tel.: 212-230-8800
Fax: 212-230-8888

Attorneys for Defendant Prince Mohamed Al-Faisal
Al-Saud

Plaintiffs' Opposition ("Opp.") to Prince Mohamed's Motion to Dismiss depends entirely on gross misrepresentations of what their Complaint alleges. Plaintiffs' Fourth Amended Complaint ("4AC") does not allege *any* facts suggesting that Prince Mohamed "knowingly… provid[ed] al Qaeda financial support." *See, e.g.,* Opp. 12, 13, 17, 20. The factual allegations in the 4AC are wholly insufficient to support personal jurisdiction or to state a claim, and plaintiffs cannot avoid dismissal by lying—there is no other word for it—about the allegations in their own Complaint.

**I.  PLAINTIFFS' ENTIRE OPPOSITION ARGUMENT DEPENDS ON GROSS MISREPRESENTATIONS OF THE ALLEGATIONS IN THE 4AC.**

Plaintiffs' Opposition grossly misrepresents the allegations in the 4AC, and their legal arguments depend entirely on these misrepresentations. *Nothing* in the 4AC connects Prince Mohamed with terrorism, the events of September 11, or (except incidentally) the United States or New York, and this Court must dismiss the claims against him for (1) lack of personal jurisdiction and (2) failure to state a claim on any theory.

Plaintiffs' misrepresentations of the 4AC fall into three main categories: *First*, plaintiffs repeatedly assert, "big-lie" style (*see, e.g.*, Opp. at 1, 2, 5, 6, 9, 12, 13, 17, 18, 20), that the 4AC alleges that Prince Mohamed "knowingly and intentionally provided al Qaeda currency, financing, financial services and support, bank accounts, and facilities," citing a string of 4AC paragraphs in support. None of those paragraphs, however, alleges that Prince Mohamed provided currency, or any services, or anything else of value to *anyone*, intentionally or otherwise, or assisted al Qaeda in any way. Here are some examples of plaintiffs' misrepresentations:

- Plaintiffs' Opp. asserts (at 3) that the 4AC alleges that "Prince Mohamed co-founded Faisal Islamic Bank with defendant Youssef Nada [a designated terrorist]," citing

4AC ¶¶ 330, 337.  But these paragraphs do not *mention* Prince Mohamed or Faisal Islamic Bank, and nothing in the 4AC links Prince Mohamed in any way with Youssef Nada.

- The Opp. asserts (at 3) that the 4AC alleges that "Prince Mohamed chose Defendant Yusuf Al Qardawi to sit on the sharia (Islamic law) board of three DMI companies chaired by Prince Mohamed," citing 4AC ¶¶ 531, 534.  These paragraphs *never mention* Prince Mohamed, DMI, or any "sharia board" (and nothing else in the 4AC helps).

- The Opp. asserts (at 25) that the 4AC alleges that "Prince Mohammed knowingly provided financial services to U.S.-designated terrorists Wa'el Julaidan and Yassin Kadi, who have engaged in or supported al Qaeda terrorist attacks on America," citing 4AC ¶¶ 304, 312, 329, 341, 484.  These paragraphs *never mention* Prince Mohamed, *or* any financial institution to which he is allegedly affiliated, and provide *no* support for the assertion.[1]

*Second*, Plaintiffs repeatedly assert that the 4AC alleges that Prince Mohamed owns, controls, and/or directs Al Shamal Islamic Bank (ASIB), and used that bank to provide financial and logistical support to al Qaeda.  (*E.g.*, pp. 1, 2, 3, 15, 25, citing 4AC ¶¶ 51, 54, 59-66, 274-76, 580.)  *Nothing* in those paragraphs, or elsewhere in the 4AC, alleges that Prince Mohamed *ever* owned any interest in ASIB, or was ever a director, officer, or employee of ASIB, or knew of, or had anything whatever to do with *any* banking activity of ASIB.

*Third*, Plaintiffs assert (Opp. at 2) that the 4AC alleges that Prince Mohamed "assisted" Osama bin Laden by "provid[ing] financial and logistical support for Osama bin Laden ("UBL") to move al Qaeda's base of operations to Sudan," and by "help[ing] Osama bin Laden 'invest'"… in ASIB, citing 4AC ¶¶ 44, 48-54, 57, 59-66, 387.)  These paragraphs (and the 4AC) say *nothing* linking Prince Mohamed with UBL or suggesting he assisted UBL in *any* way.

---

[1] Every other assertion in the Opp. about the allegations of the 4AC that purportedly tie Prince Mohamed to provision of financial and/or banking support to al Qaeda is similarly false.  *Compare, e.g.*, Opp. at 6 ("Prince Mohammed continued to finance al Qaeda *after* al Qaeda openly declared and commenced waging jihad 'to kill Americans and their allies…,'" citing 4AC ¶¶ 120, 46, 98-112, 130-136, 152-155, 310 *with* 4AC ¶¶ 120, 46, 98-112, 130-136, 152-15, 310  (making *no mention* of Prince Mohamed, or of any financial institution with which he is allegedly associated)).

The *only* factual allegation in the 4AC that underlies plaintiffs' shameful allegations of mass murder is that one "al Fadl," once allegedly associated with al Qaeda, once testified that "we got account" in Faisal Islamic Bank Sudan (FIBS).  (4AC ¶¶ 66, 582).  There is no 4AC allegation as to the nature, dates, sources, or uses of this "account," or the name in which it was held; nor is there any 4AC allegation that Prince Mohamed knew or should have known the "account" was associated with any terrorist activity.  As plaintiffs virtually concede, the unelaborated allegation that an al Qaeda operative once "got account" at FIBS is wholly insufficient to assert personal jurisdiction over, or state any claim against, the bank's alleged chairman.

## II.  THIS COURT LACKS PERSONAL JURISDICTION OVER PRINCE MOHAMED.

Plaintiffs argue (Opp. at 17-20) that the Court has personal jurisdiction over Prince Mohamed because he "expressly aimed" tortious acts at the United States.  But their argument depends entirely on misrepresenting the 4AC, which contains no such factual allegations.  The *Opp.* says over and over that he "knowingly and intentionally provided al Qaeda financial support for attacks targeting America," and thus "should have reasonably anticipated being haled into Court in America."  Opp. 17, 18, 20.  But the 4AC contains *no such allegations*.  Plaintiffs just recite the legal standard and then baldly (and falsely) assert the 4AC meets it.  Their long argument about the meaning of "expressly aimed" is irrelevant, because they allege no pertinent facts.

To make a prima facie showing of personal jurisdiction, plaintiffs must plead "legally sufficient allegations of jurisdiction."  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  They must plead *facts*. *See id.* at 185 (non-fact-specific allegations are insufficient to establish prima facie jurisdiction); *see also Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).  They cannot rely on conclusory assertions—and certainly not

3

on bald misrepresentations of their complaint. *See Jazini*, 148 F.3d at 184 ("conclusory statement" of the legal standard for personal jurisdiction does not make a prima facie showing; plaintiff must allege facts supporting the conclusion); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) (conclusory allegations insufficient to establish personal jurisdiction).[2]

The factual allegations in the 4AC fall woefully short. The 4AC alleges that Prince Mohamed is chairman of a bank in Sudan, FIBS, in which an individual allegedly associated with al Qaeda once said "we got account." 4AC ¶ 66. As explained in Prince Mohamed's Motion to Dismiss ("MTD"), at 6-9, there is no allegation that this "account" or its holder had anything to do with September 11 (or any other activity), or that Prince Mohamed knew of any such connection. The 4AC's allegations would obviously be insufficient to show that the *bank* committed any wrong or that it was "expressly aimed" at the United States, let alone that the *chairman* of the bank did so. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1977).

In the *Burnett* action, Judge Robertson applied this "expressly aimed" standard (which comes from *Calder v. Jones*, 465 U.S. 783, 789 (1984)), to claims that Prince Sultan, in his non-official capacity, "personally donated money to [certain charities], knowing that those foundations funded terrorist organizations including Al Qaeda." Judge Robertson dismissed for lack of personal jurisdiction, ruling that the complaint "stops well short of alleging that Prince Sultan's actions were 'expressly aimed' or 'purposefully directed' at the United States." *Burnett*, 292 F.

---

[2] Plaintiffs attempt to evade this Court's page limits by incorporating by reference a separate 25-page "Memorandum of Law" and a volume of exhibits in support of their jurisdictional argument. *See* Opp. at 16 n.11. Defendants have moved to strike this pleading. But in any event this 100+ page submission purporting to show "jurisdictional links" between various defendants (including Prince Mohamed) and terrorist financing *does not contain a single reference to Prince Mohamed*.

4

Supp. 2d 9, 22-23 (D.D.C. 2003).  The factual allegations against Prince Mohamed fall far short of those Judge Robertson deemed *insufficient* to establish minimum contacts in *Burnett*.

Plaintiffs' conclusory assertions that all "defendants" are "co-conspirator[s]" who "conspired" to "injure United States citizens" (4AC ¶ 5, 23) are also insufficient.  *There is no concrete 4AC allegation that Prince Mohamed conspired with anyone.*  Plaintiffs' theory is that since a terrible tort was indeed committed in the United States, they need only assert that Prince Mohamed "conspired" with the tortfeasors and need not allege any facts.  Opp. at 21, 14-16.[3/] That theory has been explicitly rejected by the Second Circuit.  *See Lehigh Valley Indus., Inc.*, 527 F.2d at 93 ("[T]he bland assertion of conspiracy … is insufficient to establish [personal] jurisdiction."); *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) (Posner, J.) ("cases are unanimous that a bare allegation of a conspiracy" between the defendant and a person within the jurisdiction is not enough to establish personal jurisdiction).

Finally, plaintiffs' half-hearted attempt (Opp. at 22) to argue *general* personal jurisdiction wholly fails to satisfy the New York's long-arm statute, N.Y. C.P.L.R. § 301.  Prince Mohamed is not physically "present" in New York, and plaintiffs have not come close to showing that he "engaged in such a continuous and systematic course of doing business in New York as to warrant" a finding that he is "present" there.  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (internal quotation marks and citation omitted).  This "doing business" standard requires a showing that the defendant has engaged in "continuous, permanent,

---

[3/]   The 4AC paragraphs that plaintiffs cite as supporting their horrendous but wholly unfounded claim that "Prince Mohamed and al Qaeda agreed to injure the United States through acts of international terrorism" (Opp. at 14) demonstrate the reprehensible way they have misrepresented the Complaint.  The cited paragraphs (¶¶ 5, 23, 51, 105-108, 120, 130-136, 152-155, 188, 255, 274-76, 580) detail the 1993 World Trade Center bombing, the 1998 Africa Embassy bombings, the U.S.S. Cole bombings, and 9/11. They contain no inkling of any "agreement" to which Prince Mohamed was a party, but only wholly conclusory assertions that all defendants are "co-conspirators," plus vicious but baseless conclusory assertions that Prince Mohamed is "engaged in the sponsorship of terror" (¶ 274), or "involved in the financing, aiding and abetting, and material support of Osama bin Laden" (¶¶ 255, 276).

and substantial activity in New York." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).[4/]

Plaintiffs' showing consists of undergraduate study in Pennsylvania 40+ years ago, two newspaper interviews 30 years ago in a New York apartment, a speech at Harvard, alleged investment by Prince Mohamed and/or DMI (allegedly a Swiss bank he "chairs") in a Massachusetts-based real estate firm and a D.C.-based equity fund, and purchases (by DMI and subsidiaries of DMI) of shares in companies listed on a U.S. stock exchange. *That is it.* Plaintiffs do not and could not allege that Prince Mohamed has an office in New York, solicits business in New York, owns property in New York, has employees in New York, or satisfies any of the indicia courts use to determine whether a defendant is "doing business" in New York. *See, e.g., Hoffritz Cutlery Inc.*, 763 F.2d at 58 (identifying indicia). *See also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 411-12, 416-18 (1984) (purchases in forum state, sending personnel for training in forum state, and negotiating a contract in forum state were not sufficient to establish the "continuous and systematic" contacts necessary to establish general personal jurisdiction); *Bersch v. Drexel Firestone Inc.*, 519 F.2d 974, 998 (2d Cir. 1975) (buying and selling American securities not sufficient to establish defendant was "doing business" in the United States); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (for general personal jurisdiction, relevant contacts with forum are evaluated over a "reasonable period of years" and six years was found reasonable); *Burnett*, 292 F. Supp. 2d at

---

[4/] It is an open question under New York law whether a natural person is subject to "doing business" jurisdiction. *See Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985). But the Court need not decide, because Plaintiffs have not begun to make a "doing business" showing.

21 (describing as "desultory," and rejecting, plaintiffs' attempt to establish personal jurisdiction based on speaking engagements, undergraduate study, or temporary visits to the U.S.).[5]

## III. THE FOURTH AMENDED COMPLAINT FAILS TO STATE ANY CLAIM AGAINST PRINCE MOHAMED UPON WHICH RELIEF CAN BE GRANTED.

Stripped of plaintiffs' misrepresentations about its contents, the 4AC utterly fails to state a legally sufficient claim against Prince Mohamed. As the MTD showed (pp. 12-16), each of plaintiffs' legal theories requires them to allege that Prince Mohamed proximately caused their injuries. But the only facts plaintiffs allege in the 4AC to try to tie Prince Mohamed to 9/11 is that he is the chairman of a bank in Sudan, FIBS, at which an account associated with al Qaeda allegedly existed at an unspecified time. That assertion is obviously insufficient to state a claim against the *bank* or, *a fortiori*, its *chairman*: it establishes neither that the alleged "account" involved wrongdoing by the bank, nor that 9/11 or any other event was a "natural and probable consequence" of the account, nor that Prince Mohamed intended any such consequence.[6]

*First*, a bank and, *a fortiori*, its alleged chairman are not liable for the acts of the bank's depositors. *See Burnett et al. v. Al Baraka Inv. & Dev. Corp. et al.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (Robertson, J.) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.") (footnote omitted); *see* MTD at 18 n.26 (citing cases). The consequences of any other rule are

---

[5] Plaintiffs' failure to allege a prima facie basis for personal jurisdiction also precludes subjecting Prince Mohamed to jurisdictional discovery. *See Jazini*, 148 F.3d at 185-86 (plaintiffs must allege facts making a prima facie showing of personal jurisdiction before being entitled to jurisdictional discovery); *Burnett*, 292 F. Supp. 2d at 22 (denying jurisdictional discovery because plaintiffs failed to provide an outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery).

[6] Plaintiffs' assertion that "[a]s head of DMI" Prince Mohamed "knew or should have known" of the existence of this account at *FIBS*, 4AC ¶¶ 275-76, is not only counterintuitive but wholly conclusory and can be given no weight by this Court. *See* MTD at 2 n.3, 8 n.10 (citing cases).

7

illustrated by plaintiffs' allegation (4AC ¶ 180) that the September 11 hijackers opened accounts in SunTrust Bank in Florida (which is *not* a defendant) from which they funded their activities. On plaintiffs' theory, this would state a claim against the *chairman* of SunTrust under § 2333 for the attacks of September 11, improperly giving § 2333 "an almost unlimited reach." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011 (7th Cir. 2002).

*Second*, unlike the SunTrust account, the alleged but undescribed FIBS "account" is not alleged to have had anything to do with the hijackers (or any other activity). The *Boim* court ruled that even an allegation of a direct payment of cash to a known terrorist organization (Hamas) did not establish that the payment was a proximate cause of a death at Hamas's hands. 291 F.3d at 1012. On the contrary, the *Boim* plaintiffs were required to allege facts to show, at "the very least," that the murder of their son was "reasonably foreseeable" as the "natural consequence" of the alleged donation. *Id.* The 4AC alleges *nothing* that would proximately connect the alleged but wholly undescribed "account" with plaintiffs' injuries. *See* MTD at 16-17.[7/] Plaintiffs' allegations are therefore far short of those deemed *in*sufficient in *Boim*.

*Third*, there is no allegation that Prince Mohamed had any responsibility for the alleged "account" or knowledge of its (undescribed) use (whatever that was). *Boim* also held that, to survive a motion to dismiss, a plaintiff must plead facts showing that the defendant *knew or intended* that any funds or "financial support" would be put to criminal use. *Boim*, 291 F.3d at 1012. Plaintiffs' abstract assertions about the nature of "Islamic banking" (Opp. at 1-2) do not establish that Prince Mohamed was responsible for an account about which nothing is alleged other than its existence. *Cf. Jazini*, 148 F.3d at 185 (argument that Japanese "cultural attributes"

---

[7/]   Plaintiffs erroneously assert that Prince Mohamed's only Rule 12(b)(6) argument is that plaintiffs have not properly pleaded causation. Opp. at 5. Although it is true that plaintiffs have failed to properly allege causation, and that all plaintiffs' claims fail for that reason, the individual claims each fail for other reasons as well. *See* MTD at 13-16.

8

and "peculiarly centralized character" should influence evaluation of parent's control over subsidiaries were "speculative and conjectural"). Bank chairmen who practice Islam are no more capable of knowing every depositor or "account" than Christians or Jews.

Plaintiffs' entire argument consists of identifying the legal standard for each cause of action, then baldly and falsely asserting that the 4AC alleges the elements of that cause of action. For example, plaintiffs assert that "knowingly providing financial support to al Qaeda" is a tortious act under § 2333 and that every al Qaeda activity, including 9/11, was proximately caused by every instance of such support. But (1) *nothing* in the 4AC suggests that Prince Mohamed knowingly provided support to al Qaeda to do anything;[8/] (2) the 4AC allegations about the "account" (which do not describe its dates, size, sources, or uses) say *nothing* that suggests that 9/11 was a foreseeable or natural or probable consequence of the "account"; and (3) *nothing* in the 4AC suggests any basis for holding Prince Mohamed liable for actions of persons allegedly related to one of FIBS's "account" holders. The allegation in the 4AC—that someone associated with al Qaeda held an "account" in a bank that Prince Mohamed allegedly chairs—is plainly insufficient to state a claim against Prince Mohamed.

Plaintiffs' aiding and abetting theory is equally unavailing. Plaintiffs assert that "by knowingly providing … financial support and services, Prince Mohamed provided al Qaeda substantial assistance to launch terror[] attacks against America, including the September 11 attacks." Opp. at 12. But (1) the premise is false: the 4AC does not allege any such knowing support. And (2) the sweeping conclusion does not satisfy even the liberal pleading standards of the Federal Rules. *See De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (conclusory allegations without supporting facts fail under Rule 12(b)(6)); *Gmurzynska v.*

---

[8/] The Court must disregard factual assertions in the Opposition that are not grounded in the 4AC. *See Freidl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000); *Maldonado v. Dominguez*, 137 F.3d 1, 5 (1st Cir. 1998).

9

*Hutton*, 355 F.3d 206 (2d Cir. 2004) (under *Swierkiewicz* plaintiffs must plead factual predicate); *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (Boudin, J.) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome.").[9/]

Plaintiffs' conspiracy allegations also rest on misrepresentations of their Complaint. Contrary to their Opp. (at 14-15 & n.9), the 4AC does not allege any agreement involving Prince Mohamed to "injure America," *or* that he "knowingly provided al Qaeda financial support and services to attack America," *or* that he "owned, managed, controlled or directed" Al Shamal Islamic Bank. As noted *supra*, nothing in the 4AC alleges that Prince Mohamed was ever an officer, director, shareholder or employee of Al Shamal, or that he knew of, initiated, approved or had anything to do with *any* banking activity of ASIB, or that FIBS ever controlled ASIB or knew of, initiated, or approved any banking activity of ASIB. There simply is no factual basis in the 4AC for plaintiffs' irresponsible claim of a "corrupt agreement" between Prince Mohamed and al Qaeda and that Prince Mohamed "actively participated" in the 9/11 conspiracy.

## CONCLUSION

For the foregoing reasons, defendant Prince Mohamed Al-Faisal Al-Saud asks the Court to dismiss all claims against him, with prejudice. In light of plaintiffs' mischaracterizations of the 4AC, the Court should also enter an order pursuant to Fed. R. Civ. P. 11(c)(1)(2) that plaintiffs show cause why they have not violated Rule 11.

---

[9/] Plaintiffs' argument about the "state action" requirement of the Torture Victim Protection Act (TVPA) also viciously misrepresents their Complaint. Their Opp. asserts that they have pleaded a "substantial degree of cooperative action between" the government of Sudan, the Taliban, al Qaeda, and Prince Mohamed in "launch[ing] terrorist attacks against America." Opp. at 12 n.7. The paragraphs in the 4AC cited as support for this assertion (¶¶ 10-12, 18, 23, 46-92, 181-82, 255, 274-76, 308, 580, 610) do not contain the faintest *hint* that Prince Mohamed acted "in concert" with Sudan, let alone the Taliban, or al Qaeda. Using clear misrepresentations to support an irresponsible accusation of complicity in mass murder is beyond the pale.

10

                                        Respectfully submitted,

                                        _____/s/_____

May 28, 2004                         Louis R. Cohen (LC 4012 )
                                        WILMER CUTLER PICKERING LLP
                                        2445 M Street N.W.
                                        Washington, D.C. 20037
                                        Tel.: 202-663-6000
                                        Fax: 202-663-6363

                                        David P. Donovan (DD 7012)
                                        WILMER CUTLER PICKERING LLP
                                        1600 Tysons Boulevard, 10th Floor
                                        McLean, VA 22102
                                        Tel: 703-251-9700
                                        Fax: 703-251-9797

                                        Matthew Previn (MP 2173)
                                        WILMER CUTLER PICKERING LLP
                                        399 Park Avenue
                                        New York, NY 10022
                                        Tel.: 212-230-8800
                                        Fax: 212-230-8888

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 28, 2004 I caused an electronic copy of PRINCE MOHAMED AL-FAISAL AL-SAUD'S REPLY MEMORANDUM OF LAW in support of his Motion to Dismiss to be served electronically by the Court's Electronic Case Filing (ECF) System on all parties scheduled for electronic notice and by first-class mail on any parties not participating in the Court's ECF system as thereafter advised by the Court.

May 28, 2004                                                                                             /s/_____
                                                                                                          Louis R. Cohen