IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-MD-1570 |
| ------------------------------------------------ | ------------------------------------------------ |
| KATHLEEN ASHTON, et al., | Case No. 02-CV-6977 (RCC) |
| Plaintiffs, v. | |
| AL QAEDA ISLAMIC ARMY, et al., | |
| Defendants. | |

**INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FOURTH AMENDED CONSOLIDATED MASTER COMPLAINT**

The Ashton Plaintiffs' Memorandum of Law in Opposition to Mar-Jac Poultry, Inc. and International Institute of Islamic Thought Motion to Dismiss ("Plaintiffs' Opposition) is, in the first instance, wholly inappropriate because it is filed as a joint opposition when Mar-Jac Poultry, Inc. and the International Institute of Islamic Thought ("IIIT") are unrelated, filed separate motions, and have separate counsel and defenses. The improper joinder of the two oppositions is not surprising, given that Plaintiffs continually have tried to mask the fact that they plead no specific facts, and state no supportable theory of liability by simply lumping IIIT in an amorphous group Plaintiffs call the "SAAR network."

The Fourth Amended Complaint ("Complaint" or "4AC") employs the same faulty tactic; namely, by cobbling together a number of vague accusations about an invented network of entities, Plaintiffs hope they will be allowed to pursue claims against all defendants if they can make sufficient allegations against any one of them. Just like the Complaint, the Opposition does not point to *one fact* that links IIIT to the September 11th atrocity, and their general allegations about the so-called "SAAR network" are no substitute for factual allegations.

Second, Plaintiffs' Opposition entirely fails to address the points made in IIIT's Motion to Dismiss; namely, that (1) bare assertions regarding the existence of a conspiracy do not allege an actual conspiracy; and (2) Plaintiffs are required to allege some connection between IIIT, the so-called "charitable organizations" IIIT allegedly financed, and the injury for which Plaintiffs seek redress. Plaintiffs state that they have alleged causation sufficiently because they "need only allege that defendants' support for al Qaeda and terrorism increased the chances that terror attacks on the U.S. would occur." (Pltfs.' Opp. at 8.) Even if this were a correct statement of the law, the 4AC does not allege *any facts* to show that IIIT supported al Qaeda and terrorism. Thus, even viewing the 4AC in its most favorable light, it is apparent that Plaintiffs can prove no set of facts that would support their claim that IIIT had anything to do with al Qaeda or September 11th, and IIIT's motion to dismiss should be granted.

I. **PLAINTIFFS' RELIANCE ON ALLEGATIONS AGAINST OTHER DEFENDANTS TO STATE A CLAIM AGAINST IIIT HAS NO BASIS IN LAW OR FACT**

Plaintiffs claim that IIIT is viewing the 4AC in a vacuum, and that analyzing the Complaint in its entirety saves it from dismissal because it "describes the makeup and activities of the terrorist network of which defendants are members." (Pltfs.' Opp. at 3-4.) It is even impossible to discern to what "terrorist network" Plaintiffs refer, al Qaeda or the contrived "SAAR Network"—a term that does not exist anywhere in reality; rather, that was *invented* by Plaintiffs. This fatal flaw that permeates the 4AC—that Plaintiffs' "allegations" against IIIT, if any, do not connect IIIT to anything—requires dismissal of the Complaint.

Plaintiffs' Opposition remarkably states, without any supporting factual allegation in the 4AC, or any legal support for that matter, that "[a]s SAAR Network members, defendants are liable for their support of al Qaeda and Bin Laden, the support of the organization as a whole, and the support of the other individual SAAR entities." (Pltfs.' Opp. at 7.) To support their argument that

they have pled a causal connection, Plaintiffs claim that IIIT is "part of a complex organization that contributed very substantial financial and logistical support to al Qaeda," and cite to paragraph 339 of their Complaint. (Pltfs.' Opp. at 7.) But paragraph 339 does not state anything of the kind; instead, it states in its entirety:

> 339. Co-conspirators, material sponsors, and/or aiders and abettors of the SAAR network include Defendants: Ahmed Totonji, Hisham Al Talib, Iqbal Yunus, Jamal Al Barzinji, M. Omar Ashraf, Mohammed Jaghlit, Muhammad Ashraf, Taha Jaber Al Alwani, Tarik Hamdi, Yaqub Mirza, Cherif Sedky, African Muslim Agency, Aradi, Inc., Grove Corporate, Inc., Heritage Education Trust, **International Institute of Islamic Thought**, Mar-Jac Investments, Inc., Mar-Jac Poultry, inc., Mena Corporation, Reston Investments, inc., SAAR International, Safa Trust, Sterling Charitable Gift Fund, Sterling management Group, Inc., and York Foundation, all located doing business [sic] or registered to do business in the United States.

4AC at ¶ 339 (emphasis added).

In fact, the entire section of the Complaint that makes allegations against the "SAAR network" and its purported "members" states conclusory allegations for which Plaintiffs have no specific basis, or inconsequential, general facts regarding the entities' locations, revenue, and formation. Then, in the last sentence of each such numbered "allegation," on that same insufficient basis, Plaintiffs conclusorily allege that these entities and individuals must be conspirators, material sponsors, and/or aiders and abettors of al Qaeda, without explanation. For example:

> 333. The SAAR Foundation was named after SULAIMAN ABDUL AZIZ AL RAJHI, head of the Saudi Arabian AL RAJHI family, and was formed in the 1970s by a group of Muslim scholars and scientists from the Middle East and Asia. SAAR was incorporated in Herndon, Virginia as a 501c(3) non-profit organization on July 29, 1983, and dissolved as of December 28, 2000. The Saudi Arabian AL RAJHI family is the foundation's biggest donor. *The SAAR network financially supports terrorism* and its main contributors, the AL RAJHI Family, has a long history of supporting terrorism.
>
> 334. Virginia Secretary of State corporate records indicate that there are more than one hundred affiliated organizations registered or doing business at just one of SAAR's addresses in Herndon, Virginia. Most of these organizations do not maintain a physical presence at that address, or elsewhere. *The SAAR FOUNDATION and network is a*

> *sophisticated arrangement of non-profit and for-profit organizations that serve as front-groups for extremist Islamic terrorist organizations.*

4AC at ¶¶ 333-34 (emphasis added).

A logical reading of these paragraphs demonstrates that Plaintiffs' allegations are improperly conclusory, and based on unsupported deduction. These random factual allegations, which have nothing to do with IIIT or with how IIIT is a "front for terror," are nothing but broad, generalized, and conclusory statements that the defendants "support terrorism." Such rank speculation is no substitute for facts, and under the circumstances, is unconscionable.

Plaintiffs' Opposition also states haphazardly that "[i]n spite of the [SAAR] Foundation's dissolution [in December 2000], its network remained active supporters of terrorism through September 11, 2001. (Pltfs.' Opp. at 1.) In "support," Plaintiffs cite to the above two paragraphs plus the following:

> 335. On March 20-21, 2002, the offices of many SAAR network organizations, along with the residences of their top executives, were raided by the joint terrorism task-force, Operation Greenquest. Operation Greenquest was created after September 11, 2001, by the United States Treasury Department as a new multi-agency financial enforcement initiative bringing the full scope of the U.S. Government's financial expertise to bear against sources of terrorist funding. According to the search warrants issued at nearly twenty locations, the SAAR network was raided for 'potential money laundering and tax evasion activities and their ties to terrorist groups such as . . . Al Qaeda as well as individual terrorists . . . (including) Osama Bin Laden.'

4AC at ¶ 335. Not only does this paragraph *not* support the assertion that the "SAAR network" continued to operate, but *nothing* in any of the preceding three paragraphs supports Plaintiffs' statements that there is a "network" of entities supporting terrorism of which IIIT is or was a member, before or after September 11th. Plaintiffs do not even define the "network" until paragraph 339, and when they do, it is incomprehensible. Despite having defined it to include approximately twenty-five entities and individuals in paragraph 339, Plaintiffs go on to refer throughout the 4AC to

4

countless *other* entities and individuals, nowhere defined as part of the "network" but alleged as being "SAAR entities" and "SAAR executives." 4AC at ¶¶ 333, 337-38, 340-355.

Whenever Plaintiffs lack specific facts to support their insupportable claims, they simply make a general allusion to the "SAAR" term. Moreover, Plaintiffs' statement that the "threshold stage of notice pleading" does not require that they "marshal their evidence" at this point in the proceedings ignores IIIT's arguments in its opening brief and the law. (Pltfs.' Opp. at 5.) Because "notice" pleading "implies some minimum description of the defendant's complained-of conduct," Plaintiffs are required to say *something* about what *this particular movant* did for which they are seeking redress. *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999). This Plaintiffs have wholly failed to do. Plaintiffs' apparent belief that their unsupported and general allegations about "SAAR" somehow state a claim against IIIT individually is baseless and illogical. *See, e.g.*, *Watt v. City of Highland Park*, No. 98 C 8123, 2001 WL 1090152 (N.D. Ill. Sept. 13, 2001).

In *Watt*, the district court addressed the problem in connection with a complaint brought under 42 U.S.C. § 1983:

> The major problem facing the court in trying to determine if plaintiffs' second amended complaint satisfies this minimal standard [that each defendant is entitled to notice of the wrongs with which he is charged] is that plaintiffs have pleaded their claim against all of the defendants without differentiation. It is true that in their lengthy introductory section, plaintiffs make some allegations about what different groups of defendants did 'in general,' asserting , for instance, that 'in general, [defendants] have formulated the wrongful conduct against the Plaintiffs, [defendants] have knowingly allowed the conduct to continue, thereby ratifying same, the [defendants] have knowingly carried out the wrongful instructions given to them by [. . . ].' But when it comes to the specific claims, such as the ¶ [sic] 1983 claim in Count 1, plaintiffs provide no indication of what they are alleging that each defendant did.

*Id.* at *2 (finding insufficient notice to moving defendants, mandating their dismissal).

5

The *Watt* court's analysis compels this Court's dismissal as against IIIT.  Plaintiffs' "allegations" here do not even rise to the level of the facts pled in *Watt*.  The 4AC says *nothing* about the alleged relationship between the SAAR Foundation or the make-believe SAAR network other than the boilerplate assertion that IIIT is a "co-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network."  (4AC at ¶ 339.)  Plaintiffs' attempt to mask the Complaint's deficiencies by creating a link in its Opposition between SAAR and IIIT, perpetuates the Complaint's violation of the rules of pleading; by their failure to plead facts, they deliberately violate the rules of pleading.  *See* Fed. R. Civ. P. 11, 12(f).

Indeed, the single allegation actually made against IIIT—out of the 625 paragraphs in the Complaint—is not even presented in the section entitled "The SAAR Foundation," illuminating the paucity of facts linking "SAAR" to IIIT.  The vague and attenuated claim that IIIT provided "financ[ing] to two Florida charitable organizations accused of being cells for Islamic Jihad" is found in the section entitled "National Commercial Bank and Bin Mahfouz," again without any alleged factual link between defendants IIIT, National Commercial Bank, or Bin Mahfouz.  (4AC at ¶ 579.)  It is obvious why this "allegation" falls far short of stating a claim against IIIT: at a minimum, (a) it does not sufficiently allege any "network"—real or imagined; (b) it does not allege any act by IIIT that has any causal connection to September 11th; and (c) it does not allege that IIIT knew that the charitable organizations were cells for Islamic Jihad—or when such organizations were accused of being cells for Islamic Jihad, or who accused them of such, or that IIIT intended to cause harm to innocent people in America by "finance[ing]" such cells.  Plaintiffs have failed the pleading requirements of this Court.

The Complaint's failure to connect IIIT to any other entities or individuals that could potentially connect it to al Qaeda or September 11th, to say nothing of its failure to connect IIIT to any conduct, is fatal.  There is no way that the allegations against the SAAR Foundation or the "SAAR network"—even if true—can be read fairly to include any sufficient allegations as to IIIT.

6

Even under the most liberal pleading standards and the most generous of assumptions, the 4AC is devoid of any substantive allegations against IIIT.

## II. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE A CONSPIRACY, NOR THAT IIIT IS A CO-CONSPIRATOR

Plaintiffs argue they sufficiently allege a conspiracy because "[t]he agreement at issue was for defendants [defined in Plaintiffs' Opposition to include both Mar-Jac Poultry, Inc. and IIIT] to collect funds and direct them to terrorists, including Bin Laden and al Qaeda, through a vast and complex network designed specifically to obscure the ultimate goal of the transactions." (Pltfs.' Opp. at 14.) But because there are no such allegations in the Complaint, Plaintiffs are merely using the unsubstantiated "SAAR network" as a substitute for any adequate allegation against IIIT.

A complaint must plead the existence of the alleged conspiracy, either by direct allegations or by allegation of circumstances from which a conclusion of the existence of the conspiracy may be reasonably inferred. Thus, more is required than a simple statement that defendants are "co-conspirators," and at the very minimum, a complainant must show that the defendant personally participated in the act for which the plaintiff has alleged an injury.

Under New York law, a defendant may be held liable in tort for conspiracy "to do an unlawful thing, or to do a lawful thing in an unlawful manner." *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir. 1980), citing 8 N.Y.Jur., Conspiracy § 1, at 494 (1959). But the conspiracy allegation requires more than the allegation of the alleged tort itself. *See id.* at 640. Plaintiffs must allege evidence of a "common design" and an affirmative duty to act according to the conspiracy. *See id.* at 640. Not only are there no allegations as to what act committed by IIIT contributed to the act(s) of al Qaeda, but there is not one allegation from which the existence of a conspiracy between IIIT *and anyone* may be reasonably inferred.

Just as Plaintiffs lump approximately twenty-five defendants together by alleging only that they are part of the purported "SAAR network," attempting to use it as a vehicle to state a claim

7

against each defendant individually, they further hope that by referring to these twenty-five defendants conclusorily as "co-conspirators," they have sufficiently alleged that "SAAR" conspired with al Qaeda. It should be presumed that by pleading in this manner, Plaintiffs cannot plead properly that each and every one of the twenty-five defendants conspired with al Qaeda. In the alternative, the Court must infer two conspiracies: one between IIIT and "SAAR" (or the entities that comprise "SAAR"); and a second between "SAAR" and al Qaeda, even though Plaintiffs allege no facts in support of either.

In *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 254 (2d Cir. 1987), this Court found in connection with an antitrust action that defendants' motivation by a desire to make a profit, combined with "a number of communications among the defendants," without more, was not enough to infer the existence of a conspiracy without pure speculation. Plaintiffs here have done less. They have alleged no communications between IIIT and any of the members of the "SAAR network" or al Qaeda; thus, its participation in any alleged scheme between "SAAR" and al Qaeda does not come close to passing the "speculation" test.

Similarly, the United States District Court for the Eastern District of Pennsylvania has addressed the issue that specific facts are necessary to make a conspiracy claim in connection with an alleged civil rights violation:

> Viewing the complaint in a light most favorable to plaintiff, it is hard to see how the court could find that plaintiff has satisfied the requirement for specific factual allegations. As to the [defendants], plaintiff's 'facts' are part of a long narration which is sketchy, episodic and uneven. Throughout his complaint, plaintiff jumps from one isolated event to another, never really stating how one event is related to another, or how the whole narration proves conspiracy—a word plaintiff never uses. In effect, plaintiff asks the court to find specific factual allegations of conspiracy simply because the complaint contains 'general facts' and the phrase 'agents of the Committee and the Teamsters.' The court will not so find . . . .

*Gallas v. Supreme Court of Pennsylvania*, No. CIV.A. 96-6450, 1997 WL 256972 (E.D. Pa. May 15, 1997), at *16.

The 4AC is sprinkled with general allegations regarding al Qaeda and conclusory statements regarding the contrived "SAAR network." Plaintiffs ask the Court to infer that there are claims against IIIT by contending that there are allegations as to all of the defendants that apply to IIIT, despite having alleged no specific facts (*i.e.*, no facts in support of the conclusory "co-conspirator" and "aider and abettor" allegations). Plaintiffs' argument that there are allegations against the so-called "SAAR Network" that apply to IIIT fails as to their conspiracy allegations, just as they fail as to all of the other counts in the Complaint. IIIT is *not* a member of the "SAAR Network" and, even had Plaintiffs alleged facts to demonstrate that it was, they did not plead facts to demonstrate that SAAR caused September 11th either.

## III.   PLAINTIFFS' RELIANCE ON *BOIM* IS MISPLACED

Plaintiffs rely on the Seventh Circuit's decision in *Boim v. Quranic Literary Institute*, 291 F.3d 1000 (7th Cir. 2002) in support of their claim that they properly have stated a claim against IIIT under the Anti-Terrorism Act ("ATA"). But a simple comparison of the complaint filed by Boim to the 4AC demonstrates that the two pleadings are worlds apart, and that reliance on the fact that the Seventh Circuit did not dismiss the complaint in *Boim* is misplaced.

A review of the *Boim* complaint highlights the difference between what was pled there and what has been pled here concerning IIIT. *See Boim* Complaint, attached as Exhibit A.[1] The plaintiffs in *Boim* make specific factual allegations as to each named defendant, and as to each allege: (1) the explicit relationships that existed among the defendants; (2) the means by which funds for

---

[1] Only the body of the *Boim* complaint is attached as Exhibit A for the court's convenience. For the complaint plus exhibits, please see the Reply Brief in Support of African Muslim Agency's Motion to Dismiss, filed in the *Burnett* action, case no. 03-5738 (RCC) (formerly 02-CV-1616 (JR) in the United States District Court for the District of Columbia) dated August 8, 2003, attached as Exhibit A [dkt. no. 247].

terrorism were raised, laundered and distributed; (3) the role of each defendant in that process; and (4) the death of the plaintiff as a direct result of the funds raised, laundered and invested by defendants to purchase the weapons that killed the plaintiff.  The *Boim* complaint contains no shadowy innuendo, accusations of liability by association, or conclusory allegations but, rather, sets forth concrete and concise factual allegations as to each defendant.

After reading the *Boim* complaint, the district court knew what the allegations were against each individual defendant.  This Court has no idea what IIIT is; what it does; whether it is a corporation, a charity, a bank, or something else.  The Court does not know whether IIIT finances other charitable entities in the course of its regular business; whether it is a domestic organization or international; or whether it believed that by financing the alleged organizations that it was conspiring to harm or kill innocent Americans.  Nor does this Court know whether IIIT conspired with any other entities—the fictitious "SAAR network" or anyone else—to commit any act of international terrorism, or conspire to engage in any other tortious act of murder, wrongful death, or assault and battery.

This Court must make so many speculative leaps to get from the sole allegation against IIIT to the damage that was caused on September 11th that this Complaint fails on its face to state a claim against IIIT.  Plaintiffs' guilt by purported association claims must be dismissed.

## CONCLUSION

For all the foregoing reasons, the International Institute of Islamic Thought respectfully requests that this Court dismiss the claims against it in Plaintiffs' Fourth Amended Consolidated Master Complaint.

                Respectfully submitted,


        By: /s/ Nancy Luque_____
            NANCY LUQUE (NL-1012)
            DONNA M. SHEINBACH (DS-6247)
            **GRAY CARY WARE & FREIDENRICH LLP**
            1625 Massachusetts Avenue, NW, Suite 300
            Washington, DC  20036-2247
            Tel: 202-238-7700
            Fax: 202-238-7701

            *Attorneys for the International Institute*
             *of Islamic Thought (Admitted Pro Hac Vice)*


Dated:   May 28, 2004

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 28th day of May, 2004, I caused an electronic copy of the foregoing International Institute of Islamic Thought's Reply in Support of Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Master Complaint to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

                                              /s/ Donna M. Sheinbach
                                              Donna M. Sheinbach (DS-6247)

DC\14007506.1
2103638-6