UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY BOIM, Individually and          )
as Administrator of the                 )
Estate of DAVID BOIM, deceased, and )
                                        )
JOYCE BOIM,                             )
                                        )
                    *Plaintiffs,*       )
                                        )
v.                                      )
                                        )
QURANIC LITERACY INSTITUTE              )
9425 S. 68th Court                      )
Oak Lawn, IL  60453-2036                )
                                        )
HOLY LAND FOUNDATION FOR RELIEF         )    **COMPLAINT**
AND DEVELOPMENT                         )
9748 Roberts Road                       )
Palos Hills, IL 60463                   )
                                        )
ISLAMIC ASSOCIATION FOR PALESTINE,      )
10661 S. Roberts Road #202              )
Palos Hills, IL 60465                   )
                                        )    Civil No. _____
AMERICAN MUSLIM SOCIETY                 )
(d/b/a ISLAMIC ASSOCIATION FOR          )
PALESTINE IN CHICAGO)                   )
10661 S. Roberts Road #202              )
Palos Hills, IL 60465                   )
                                        )
AMERICAN MIDDLE EASTERN LEAGUE          )
FOR PALESTINE                           )
P.O. Box 741805                         )
Dallas, Texas  75374                    )
                                        )
UNITED ASSOCIATION FOR STUDIES AND )
RESEARCH                                )
77 W. Washington #505                   )
Chicago, IL 60602                       )
                                        )
MOHAMMED ABDUL HAMID KHALIL SALAH )
(a/k/a ABU AHMED)                       )
9229 South Thomas Avenue                )
Bridgeview, IL 60455                    )
                                        )



DOC 2905

JUDGE KENNELLY

MAGISTRATE JUDGE

FILED
00 MAY 12 AM 11:27
CLERK
U.S. DISTRICT COURT

DOCKETED
MAY 15 2000

1

|— (

MOUSA MOHAMMED ABU MARZOOK          )
(a/k/a ABU OMAR MUSA),              )
                                    )
AMJAD HINAWI,                       )
Palestinian Authority               )
                                    )
ESTATE OF KHALIL TAWFIQ AL-SHARIF,  )
                                    )
and JOHN DOES 1-99,                 )
                                    )
                      *Defendants.* )

## Introduction

1.    This action arises out of the murder by Hamas terrorists of seventeen-year-old David Boim, an American citizen who was the son of Stanley and Joyce Boim.  The plaintiffs bring this action under the federal Antiterrorism Act of 1990, against the Hamas-front organizations in the United States that solicited, financed, and provided material support for the attack and against the Hamas terrorist agents who carried them out.

2.    This action is related to a pending action in this Court brought by the United States seeking forfeiture of the funds of the Quranic Literacy Institute and Mohammed Salah, who are defendants in this action.  United States v. One 1997 E3J Ford Van, et al., No. 98C-3548 (verified complaint and affidavit of Special Agent Robert Wright attached hereto as Exhibit A).  In that action the United States has seized funds raised to support the terrorist activity that gives rise to the present claim.  Plaintiffs in this case therefore seek special injunctive relief including an order setting aside, for the benefit of the plaintiffs in this case, the funds seized in the forfeiture action.

## PARTIES

3.    Plaintiff STANLEY BOIM is the father of the decedent, David Boim, and the administrator of his estate.  Mr. Boim is a U.S. national and was a legal resident of the State of New York at the time of his son's murder.  He was then, and is now, living in Jerusalem.

4.    Plaintiff JOYCE BOIM is the mother of David Boim. Mrs. Boim is a U.S. national and was a legal resident of New York at the time of David Boim's murder.  She was then, and is now, living in Jerusalem.

5.    Defendant QURANIC LITERACY INSTITUTE ("QLI") is a not-for-profit organization incorporated in the State of Illinois and whose offices are in Oak Lawn, Illinois.  QLI purports to translate and publish sacred Islamic texts, but, upon information and belief, QLI was and is also engaged in raising and laundering money for Hamas.  Defendant MOHAMMED ABDUL HAMID KHALIL SALAH was nominally employed by QLI as a computer analyst.  There are, however, no records of regular periodic payments to Salah, and QLI now denies having employed him at any time. The FBI has been investigating QLI since 1989 as part of a larger nationwide terrorist money-laundering probe.  In June 1997, FBI agents confiscated $1.4 million in cash and property from Salah.

4

6.   Defendant HOLY LAND FOUNDATION FOR RELIEF AND DEVELOPMENT ("HLF") is a California corporation with a branch office in Illinois and a certificate to conduct affairs within Illinois.  HLF was originally incorporated in California in 1989 under the name "Occupied Land Fund." In 1991, a certificate of amendment was filed to change its name to "Holy Land Foundation for Relief and Development." HLF's American base of operations is currently in Texas. HLF also operated an office in Jerusalem, and the director of that office admitted HLF had provided funds to Hamas.  In the United States, HLF is organized as a not-for-profit charitable organization whose ostensible mission is to fund and conduct a variety of humanitarian relief and development efforts. Upon information and belief, however, HLF also functions as a front organization for Hamas.  Upon information and belief, HLF is actively involved in raising and channeling funds to Hamas agents to finance terrorist activities in Israel.

7.   Defendant ISLAMIC ASSOCIATION FOR PALESTINE ("IAP") is a Texas corporation.  IAP was originally incorporated in Illinois in 1981, but it was dissolved in 1991 for failure to file an annual report.  IAP was also incorporated in California in 1986, but its corporate status there was frozen in 1988 for failure to pay a franchise tax.  IAP incorporated as a separate entity in Texas in 1993. IAP is a not-for-profit organization

ostensibly dedicated to disseminating information on and promoting discussion of the Israeli-Palestinian conflict.  Upon information and belief, these activities serve as a cover for IAP's function as a major fund-raiser and financier for the network of front organizations which support Hamas's terrorist activities.

8.  Defendant AMERICAN MUSLIM SOCIETY ("AMS") is an Illinois corporation that is under the control of IAP.  AMS incorporated in Illinois in 1993.  In 1994 AMS applied for the name of "Islamic Association for Palestine in Chicago."  AMS functions as the Chicago branch office of IAP.  Upon information and belief, AMS has been an active participant in the network of front organizations that provide funds to Hamas terrorists.

9.  Defendant AMERICAN MIDDLE EASTERN LEAGUE FOR PALESTINE ("AMELP") is a Texas corporation that operates in conjunction with IAP.  Prior to its incorporation in 1990, AMELP operated as the Texas branch office of IAP.  When AMELP incorporated separately in 1990, it applied for two names: the "IAP Information Office" and the "Islamic Association for Palestine in North America."  AMELP thereafter remained under the control of IAP and now provides services and support to IAP in Texas. Upon information and belief, these activities include participation in IAP's fund-raising and channeling of money to Hamas operatives.

10.   Defendant UNITED ASSOCIATION FOR STUDIES AND RESEARCH ("UASR") is an Illinois corporation incorporated in 1989.   In 1992, UASR incorporated in Virginia where its headquarters are now located.   UASR conducts research on Mideastern and Islamic topics.   Upon information and belief, these activities serve as a cover for UASR's function as the political command center of Hamas in the United States.

11.   Defendant MOHAMMED ABDUL HAMID KHALIL SALAH ("Salah"), a/k/a Abu Ahmed is a naturalized U.S. citizen born in Jerusalem and currently residing in the State of Illinois. Salah is the admitted U.S.-based leader of the military branch of Hamas. Salah has been prosecuted for channeling money to Hamas and recruiting, organizing, and training terrorist operatives in Israel.   Salah was incarcerated in Israel from January 1993 to November 1997, during which period he admitted channeling money for Hamas operations.   He returned to the United States after his release.   Salah is named on the list of Specifically Designated Terrorists compiled by the U.S. Treasury Department's Office of Foreign Assets Control, and he was recently the subject of a major FBI investigation.   Pursuant to that investigation, the United States initiated its civil forfeiture action.

12.   Defendant MOUSA MOHAMMED ABU MARZOOK ("Marzook"), a/k/a Abu Omar Musa, is a native of Gaza who resided in the

United States from 1973 to 1993.  He received permanent resident alien status in 1990.  Marzook served for many years as the admitted leader of the political wing of Hamas in the United States.  Marzook traveled between the United States and the Middle East, appointed Hamas military commanders, and used his personal bank account to distribute funds to these Hamas operatives.  From 1993 to 1995, Marzook resided principally in Jordan, which deported him in June 1995 for his involvement in Hamas.  In July 1995, U.S. Customs Service and U.S. Immigration and Naturalization Service officials arrested Marzook at the request of the Israeli government, as he attempted to reenter the United States.  In May 1996, a United States District Court ordered Marzook's extradition to Israel to stand trial for offenses connected to Hamas-sponsored terrorism, including murder, attempted murder, and conspiracy.  The Israeli government thereafter dropped its request for extradition.  Marzook was deported to Jordan in 1997.  In 1999, he was deported from Jordan when Jordan's King Abdullah closed the Hamas Political Bureau headquarters in Amman and deported the leadership of the movement including Marzook.  Upon information and belief, Marzook is currently living in the United Arab Emirates or Syria.

13.  Defendant AMJAD HINAWI ("Hinawi") is a Hamas terrorist operating in Israel, the West Bank and Gaza.  Hinawi is one of

two Hamas agents who carried out the attack on David Boim.  He
was convicted of participating in David Boim's murder by a
Palestinian Authority court and sentenced to ten years'
imprisonment on February 17, 1998.

14.  Defendant KHALIL TAWFIQ AL-SHARIF ("Al-Sharif") was a
Hamas terrorist operating in Israel, the West Bank and Gaza.
Al-Sharif was one of the two Hamas agents who carried out the
fatal attack on David Boim.  Defendant Al-Sharif died on
September 4, 1997, as a Hamas suicide bomber who carried a bomb
that was exploded on Ben Yehuda Street in Jerusalem.  Five
civilians were killed in that attack, and 192 persons were
wounded.

## JURISDICTION AND VENUE

15.   This Court has subject matter jurisdiction over this action under 18 U.S.C. §§ 2333(a) and 2338, which authorize a private damages action in any appropriate District Court by a United States national who is injured "in his person, property or business by reason of an act of international terrorism." Subject-matter jurisdiction is also conferred by 28 U.S.C. §§ 1331 and 1332(a)(1)-(3).

16.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 2334(a).

17.   Defendants QLI, AMS and UASR are subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a) and 735 Ill. Comp. Stat. 5/2-209(b)(3) because they are Illinois corporations.

18.   Defendant HLF is subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a) and 735 Ill. Comp. Stat. 5/2-209(b)(4) because it has a branch office in Illinois and has obtained a certificate to conduct affairs in Illinois.

19.   Defendant IAP is subject to the jurisdiction of this Court pursuant to 225 Ill. Comp. Stat. 460/5(e) (solicitation for a charitable organization within Illinois); 735 Ill. Comp. Stat. 5/2-209(b)(4) (transaction of business within Illinois in the form of charitable solicitation); 735 Ill. Comp. Stat. 5/2-

10

209(a)(1) (cause of action arising from transaction of business within Illinois); and 735 Ill. Comp. Stat. 5/2-209(c) (jurisdiction in Illinois proper under federal and Illinois due process).

20.  Defendant AMELP is subject to the jurisdiction of this Court pursuant to 735 Ill. Comp. Stat. 5/2-209(b)(4) (subsidiary wholly controlled by parent doing business within Illinois); 225 Ill. Comp. Stat. 460/5(e) (solicitation for a charity within Illinois); 735 Ill. Comp. Stat. 5/2-209(b)(4) (transaction of business within Illinois in the form of charitable solicitation); 735 Ill. Comp. Stat. 5/2-209(a)(1) (cause of action arising from transaction of business within Illinois); and 735 Ill. Comp. Stat. 5/2-209(c) (jurisdiction in Illinois proper under federal and Illinois due process).

21.  Defendant Salah is subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a) and 735 Ill. Comp. Stat. 5/2-209(b)(2) because he is domiciled and resident within Illinois.

22.  Defendant Marzook is subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a) (agent within Illinois), 735 Ill. Comp. Stat. 5/2-209(a)(1) (transaction of business within Illinois) and 5/2-209(c) (extension of jurisdiction comports with federal and state due process).  Marzook was extensively involved in directing and supervising the conduct of business conducted in Illinois by Salah, the defendant-front

11

organizations, and donors to the organizations.  Marzook also transferred funds into the bank accounts of the defendant front organizations.

23.  Defendant Hinawi is subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a).

24.  Defendant Estate of Al-Sharif is subject to the jurisdiction of this Court under 18 U.S.C. § 2334(a).

## STATEMENT OF FACTS

### The Murder of David Boim

25.  David Boim ("David") was born in Brooklyn, New York, on March 27, 1979, and was, at the time of his death, a citizen of both the United States and Israel.  In 1996 David was studying at a yeshiva in Israel.  On May 13, 1996, David was waiting with other students at a bus stop near Beit El in the West Bank when he was gunned down by shots fired from a passing car.  His two attackers were Hamas terrorists who first opened fire on a civilian bus and injured two passengers on the bus.  They then traveled a few hundred yards and fired on David and the other students at the bus stop.  One student, Yair Greenbaum, was wounded in the chest.  David was shot in the head and was pronounced dead within an hour.  The terrorists then sped away from the scene and lost control of their car, which

crashed.  They then fled on foot towards Jalazun, in territory
controlled by the Palestinian Authority.

26.  The two operatives who carried out the shooting were
Amjad Hinawi and Khalil Tawfiq Al-Sharif.  Both were apprehended
and temporarily imprisoned by the Palestinian Authority in early
1997.  Both Hinawi and Al-Sharif were known members of Hamas'
military wing.  After his release, Al-Sharif joined two other
Hamas suicide bombers in a suicide bombing on September 4, 1997
on Ben Yehuda Street in Jerusalem.  Five civilians were killed
in that attack, and 192 persons were wounded.

27.  Defendant Hinawi confessed to participating in the
shooting of David Boim.  He was tried in a court of the
Palestinian Authority.  His confession was read in open court.
He was convicted of participating in David Boim's murder.  On
February 17, 1998, Hinawi was sentenced to ten years in prison
at hard labor.

28.  In the same month, Hinawi was granted leave from
prison for the Muslim holiday of Id Al-Fitr.  Hinawi did not
return to prison at the end of his leave.  He was missing for
several months.  According to public testimony from Martin
Indyk, presently U.S. Ambassador to Israel, Hinawi is now back
in a Palestinian Authority prison.  The Government of Israel
requested Hinawi's transfer to Israeli authorities on September

13

22, 1997.  The Palestinian Authority has not responded to that request.

## Hamas and Its United States Presence

29.  Hamas is an extremist Palestinian militant organization that seeks to establish a fundamentalist Palestinian state.  Hamas is a "foreign terrorist organization" as defined in 8 U.S.C. § 1189.  President Clinton designated it a terrorist group threatening to disrupt the Middle East peace process by Executive Order 12947, signed on January 23, 1995 (and entered into the Federal Register on January 25, 1995).

30.  Hamas is organized into two branches, one political and one military.  The military branch receives orders and material support from the political branch.  Hamas' central purpose is to advance political objectives through acts of terrorism. Hamas seeks to undermine the Middle East peace process through violent attacks against civilians.  Its tactics include shootings and bombings to intimidate, maim and kill civilians.

31.  Hamas' organizational presence is global.  Terrorist operatives in Gaza and the West Bank receive their instructions, as well as the funds, weapons, and practical support they need to carry out their missions, from Hamas organizers throughout the world.  Upon information and belief, Hamas currently has

command and control centers in the United States, Britain, and several Western European countries. The leaders of these control centers coordinate fund-raising from sympathetic parties in these countries, they launder and channel money to Hamas operatives in the West Bank and Gaza, they arrange for the purchase of weapons and the recruitment and training of military personnel, and they work with local commanders in the West Bank and Gaza to plan terrorist attacks.

32. Hamas' military wing depends on foreign contributions solicited by the overseas control centers. Approximately one-third of Hamas' multi-million dollar annual budget comes from fund-raising activity in North America and Western Europe. Hamas' other sources of funding include local contributions and support from several Middle Eastern governments.

33. Hamas' presence in the United States is significant but covert. It conducts its affairs through a network of front organizations that ostensibly have religious and charitable purposes. Upon information and belief, defendants QLI, UASR, HLF and IAP, and IAP's affiliates AMELP and AMS, are Hamas' main fronts in the United States. These organizations' purportedly humanitarian functions mask their core mission of raising and funneling money and other resources to Hamas operatives in support of their terrorist campaigns.

34. Defendants Mohammed Salah and Mousa Mohammed Abu Marzook have coordinated Hamas' fund-raising and money-laundering operations in the United States. As head of the political wing of Hamas operating from the United States, defendant Marzook issued instructions to Salah, the head of the military wing, for raising and channeling money to Hamas terrorists. Marzook admitted in a Preliminary Statement appended to his Petition for Writ of Habeas Corpus filed on November 16, 1995, that he is the leader of the political wing of Hamas and that he has raised money for Hamas. Evidence presented in Matter of Extradition of Marzook, 924 F. Supp 565 (S.D.N.Y. 1996), established that Marzook (a) transferred funds to Salah, (b) recruited Salah to organize Hamas military fund-raising in the U.S., (c) knew that Hamas operatives were carrying out terrorist attacks in Israel, and (d) gave one of the organizers of these terrorist operations a book of blank signed checks to finance Hamas' operations. Statements made by Salah to Israeli authorities corroborated these conclusions.

35. Defendant Salah's role in the fund-raising and money-channeling scheme was investigated and described in detail by FBI agents in United States v. One 1997 E35 Ford Van, the civil forfeiture action pending in this Court. The FBI affidavit in that action declares that from 1988 until his arrest by Israeli

16

authorities in January 1993, defendant Salah (a) actively recruited Hamas terrorists, (b) arranged for and directly financed their training, (c) served, at defendant Marzook's request, as a financial conduit for Hamas operations directed from the U.S., (d) paid for plane tickets to transport trained terrorists from the U.S. to the Middle East, and (e) gave approximately $100,000 to another Hamas operative for the express purpose of procuring weapons.

### Interrelationships Among the Defendants

36.   In the proceedings against defendant Marzook and Salah in this Court (United States v. One 1997 E35 Ford Van, 50 F. Supp. 2d 789 (N.D. Ill. 1999)), the United States alleged that the two defendants employed a number of charitable organizations in the United States to raise and launder money for Hamas. Salah told Israeli authorities that he received money from thirty-one charitable organizations that solicited contributions on behalf of Hamas, as well as from a network of mosques in Chicago.  The identities of all Hamas front organizations are not known at this time, but upon information and belief, the named defendant organizations HLF, IAP, AMELP, and AMS are among them.

37.   These front organizations are linked by interlocking directorates, and have ties to defendants Salah and Marzook.

Upon information and belief, the following links have been established to date:

38.   IAP and AMELP: IAP and AMELP have the same telephone number and the same registered office listing in incorporation records. AMELP distributes IAP's publications and it serves as the tax-exempt conduit for IAP and as the means by which the IAP files IRS Form 990 (Return of Organization Exempt from Income Tax).  AMELP's Form 990 lists a telephone number and mailing address for AMELP that is identical to IAP's telephone number and mailing address. Additionally, two past presidents of IAP, Yasser K. Salah Bushnaq and Omar Ahmad, are currently on the board of AMELP.

39.   IAP and AMS: The previous president of IAP, Rafeeq Jaber, is the current president of AMS. AMS works closely with IAP in coordinating events and publications. The editor of IAP's publication Al-Zaituna-Chicago is a member of the board of AMS. IAP holds its convention in Illinois and uses AMS's phone number as the contact.

40.   IAP and HLF: Ghassan Elashi, served as the incorporator for both IAP in California in 1986 and HLF in California in 1989.  He also served as treasurer of HLF from 1988-1993.  HLF's Secretary and Executive Director, Shukri Abu Baker, served as a member of IAP's advisory board.  Kifah

18

Mustapha, HLF's registered agent in Illinois, organized the programming for IAP's 1999 Annual Conference.

41.  HLF and AMELP: HLF's Director of Health, Ahmed Agha, is member of the board of AMELP.

42.  IAP and Marzook: Marzook served as a member of IAP's advisory board and served as its chairman in 1988-90.

43.  UASR and Marzook:  Marzook served as an original Director of UASR and as its president in 1990-1991.

44.  AMELP, Marzook, and Salah: Marzook shared a joint bank account with a member of the Board of Directors of AMELP, Ismael Elbarasse, whom Salah named in his statement to the Israeli authorities as a Hamas operative.  During Marzook's extradition proceedings, evidence was presented that funds were transferred from this joint bank account to Salah while Salah was rebuilding Hamas units in the West Bank and Gaza.  See Marzook, 924 F. Supp at 587, 592.

45.  QLI and Salah: Salah says that he is employed as a computer analyst at QLI.  QLI has been identified by the FBI as the vehicle through which Salah channeled hundreds of thousands of dollars to Hamas operatives outside the United States between 1991 and 1993.

### The Flow of Money from Defendants to Hamas Terrorists

46.   Money flows from American contributors to Hamas terrorist operatives in the West Bank and Gaza through a three-step process: First, the front organizations solicit contributions.  Second, the leaders arrange for the money to be laundered and wired overseas.  Third, Hamas operatives in the West Bank and Gaza use the money to finance terrorist activities.

47.   Fund-raising: The front organizations solicit contributions directly and through mosques in heavily Islamic areas in Illinois and Texas.  HLF also solicits donations over the internet.

48.   Channeling the Funds: It is illegal under the Antiterrorism Act of 1990 to provide financial support of any kind to recognized terrorist groups. Hence the money flows through a complicated series of transactions, changing hands several times and typically being commingled with funds from the front organizations' legitimate business and charitable dealings, before being transferred overseas.

49.   Defendant Marzook instructed Salah as to which units, operatives, and activities in the West Bank and Gaza were to receive the funds.  Marzook also acted, in some cases, as an originator of funds, transferring them to Salah to be laundered and sent overseas.

50.  Various means are used to launder money.  One method of generating income and laundering money is real-estate deals. Other money-laundering transactions involved direct transfers from Marzook's bank account to Salah's.  Money was also transferred via Swiss bank accounts.  Upon information and belief, the money transferred in this manner included funds raised by the defendant front organizations.  The organizations sometimes transferred funds directly into Salah's U.S. accounts without using any Swiss intermediary.  Salah sent money to Hamas operatives in the West Bank and Gaza through an unlicensed money-changer in Chicago.

51.  Upon information and belief, funds collected in the United States were sent to Hamas operatives for the purpose of financing terrorist activities.  Defendant Marzook signed blank checks and gave them to Hamas military commanders appointed by him, with instructions to use them to finance their operations. Defendant Marzook also opened local bank accounts in the Middle East to which Hamas operatives had access.  Salah delivered money to Hamas military operatives for the express purpose of procuring weapons.  The attached FBI affidavit describes travel by Salah to the West Bank in December 1992 at Marzook's request to carry out five Hamas missions.  Shortly before Salah's departure, according to the FBI affidavit, hundreds of thousands of dollars were transferred into Salah's account from an account

jointly held by Marzook and Ismael Elbarasse of AMELP.  These
funds were used for terrorist activities.

52.  <u>Terrorist Activities</u>: Hamas operatives in the West
Bank and Gaza used the money wired from the United States to buy
weapons and carry out terrorist attacks, including the attack on
David Boim.  Funds were drawn from a pool of such funds by Hamas
military organizers to finance training, weaponry, lodging,
false documentation/identification, communications equipment,
facilities, lethal substances, explosives, personnel,
transportation, and other material support.  Money from this
pool also went to pay stipends to the families of Hamas
terrorists "killed in action" in order to encourage others to
volunteer for suicide missions.  Upon information and belief,
among the expenditures paid for by this pool of money were the
vehicle, machine guns, and ammunition used to kill David Boim,
and the training of Hinawi, Al-Sharif, and other Hamas
operatives involved in this attack.  The funds were also used to
provide a stipend for Al-Sharif's family.

<u>PLAINTIFFS' CLAIM:</u>
<u>VIOLATION OF 18 U.S.C. § 2333</u>

53.  Plaintiffs incorporate paragraphs 1 through 52 as if
fully set forth herein.

54.  Defendants are civilly liable to the plaintiffs under
the Antiterrorism Act of 1990, as amended, 18 U.S.C. § 2333, for

the defendants' murder of David Boim in the course of terrorist activities outside the United States.  Defendants Hinawi and Al-Sharif actually committed the murder of David Boim.  They were, on information and belief, aided, abetted, and financed by the other defendants named herein.  The organizations named in this Complaint provided material support or resources to Hamas as defined in 18 U.S.C. §§ 2339A and 2339B.  Plaintiffs bring this action in their own right and on behalf of the Estate of David Boim and David's heirs-at-law, in accordance with 18 U.S.C. § 2333(a).

55.  Plaintiffs incurred damages as a result of defendants' conduct.  David Boim suffered extreme physical pain before his death.  His Estate suffered economic losses from funeral expenses and the loss of accretion to the Estate due to his death at age seventeen.  Plaintiffs Stanley Boim and Joyce Boim suffered extreme mental anguish and were deprived of the society of their son.  The plaintiffs are entitled to treble damages for their injuries under 18 U.S.C. § 2333(a).

## PRAYER FOR RELIEF

56.  WHEREFORE, plaintiffs Stanley and Joyce Boim and the Estate of David Boim pray that judgment be entered on their claims against the defendants, jointly and severally, for compensatory damages in the amount of ONE HUNDRED MILLION

DOLLARS ($100,000,000), and punitive damages in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000), plus costs and attorneys fees, and request the trebling of damages and such other relief as the Court may deem just and equitable.

## PRAYER FOR SPECIAL RELIEF

57.  Plaintiffs also petition this Court to set aside ONE MILLION FOUR HUNDRED THOUSAND DOLLARS ($1,400,000) of the assets of defendants Salah and QLI that are presently in the registry of the Court.  The FBI has determined that these assets have been raised and used to support the terrorist activities of Hamas that give rise to this civil suit under 18 U.S.C. § 2333. These assets are currently subject to civil forfeiture proceedings in this Court.  The Court should segregate these assets pending the outcome of both the forfeiture proceedings and the present suit.

58.   Plaintiffs also pray that this Court enjoin the defendants to cease collecting funds for the support of Hamas.

_____

NATHAN LEWIN
THOMAS B. CARR
ALYZA D. LEWIN
MILLER, CASSIDY, LARROCA & LEWIN, L.L.P.
2555 M Street, N.W.
Washington, D.C.  20037
(202) 293-6400

_____

SHELLY B. KULWIN
KULWIN & ASSOCIATES
ARDC No. 03125344
161 North Clark
Suite 2500
Chicago, IL  60601
(312) 641-0300

ATTORNEYS FOR THE PLAINTIFFS

JURY TRIAL DEMANDED ON ALL CLAIMS.

_____

NATHAN LEWIN

Date:  May 12, 2000