UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) <br> ECF Case |

*This document relates to:*

CIVIL ACTION 1:03-CV-9849 (RCC)
THOMAS BURNETT, SR., ET AL., PLAINTIFFS, v.
AL BARAKA INVESTMENT & DEVELOPMENT CORP., ET AL., DEFENDANTS

### DEFENDANT ABDULRAHMAN BIN MAHFOUZ'S REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLAIMS AGAINST HIM

Gerald A. Feffer (GF-2179)
Peter J. Kahn (PK-3611)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

Dated: May 28, 2004

## INTRODUCTION

In his opening memorandum ("Def. Mem."), Abdulrahman Bin Mahfouz argued that plaintiffs' Third Amended Complaint ("3AC") alleged no facts that, even if true, could give rise to the charges improperly leveled against him. Instead, plaintiffs' claims rest entirely upon Mr. Bin Mahfouz's alleged positions with a Channel Islands charitable organization ("Blessed Relief"), a Saudi commercial bank ("NCB"), and a Saudi corporation ("Nimir"), each of which, plaintiffs claim, supported terrorism. But such claims of "derivative liability" are patently inadequate, absent some specific allegation (not made here) that Mr. Bin Mahfouz participated in, ratified, or even knew of these entities' alleged (and allegedly wrongful) conduct.

Plaintiffs' Opposition ("Opp.") does not remedy these fatal deficiencies. Plaintiffs primarily seek refuge in the generalized allegations averred collectively against more than 200 defendants – a decidedly improper and blunderbuss approach. Plaintiffs secondarily level newly-minted (supposedly "specific") allegations about business entities with which Mr. Bin Mahfouz allegedly is associated. Such allegations may not be first aired in an Opposition, and moreover, some of these allegations are refuted by judicially noticeable documents. In short, Plaintiffs' Opposition does not – and cannot – remedy what their Complaint so badly lacks: allegations that *Mr. Bin Mahfouz* (rather than other entities and defendants, or "all named defendants") "provided material support to al Qaeda," Opp. at 1. It therefore should be dismissed against Mr. Bin Mahfouz with prejudice.

## ARGUMENT

I. **PLAINTIFFS' "GENERAL ALLEGATIONS" DO NOT MEET THE PLEADING REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 8(a).**

Plaintiffs have alleged nothing regarding Mr. Bin Mahfouz beyond corporate positions with one charity and two business entities. See 3AC ¶¶ 331, 443, 445. Plaintiffs' Opposition summarily contends that the Complaint "makes many general allegations common to all named defendants including Bin Mahfouz, and is therefore sufficient under Rule 12." Opp. at 8. That argument is not well-founded – even the simplified pleading standard of Rule 8(a) requires

plaintiffs to plead that Mr. Bin Mahfouz himself, and not merely "all named defendants," engaged in conduct giving rise to plaintiffs' claims. Indeed, the transferor court cautioned that:

> [G]iven the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the 3AC.

Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003).

In this case, the Complaint contains no allegations of conduct, knowledge, or ratification by Mr. Bin Mahfouz. It is well-settled that where "a defendant is merely named in the caption of a complaint but is nowhere claimed to have caused the plaintiff injury, the complaint against him must be dismissed." Child v. Beame, 417 F. Supp. 1023, 1025-26 (S.D.N.Y. 1976). "Admittedly, the plaintiffs' amended complaint does contain some very broad allegations that all defendants" engaged in various actions, "[h]owever, such conclusory allegations are clearly insufficient to charge the defendants . . . . Thus, the complaint also fails adequately to notify the movants of any cause of action that plaintiffs might have against them."[1] Id. As the transferor court has noted, "the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading." Burnett, 274 F. Supp. 2d at 111. As regards Mr. Bin Mahfouz, the Complaint does not come close to providing the requisite "sufficient information."

Painfully aware of their failure to surmount even the relatively low hurdle of Rule 8(a), plaintiffs argue that Mr. Bin Mahfouz's Rule 12(b) motion to dismiss should be denied simply

---

[1] See also Estate of Morris ex rel. Morris v. Dapolito, 297 F. Supp. 2d 680, 688 (S.D.N.Y. 2004) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (quotation marks omitted); Jung v. Association of Am. Med. Colleges, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("[P]laintiffs' use of the term 'defendants' to refer to multiple defendants situated very differently from one another in the context of general and global allegations is insufficient . . . . Plaintiffs cannot escape their burden . . . by using the term 'defendants' to apply to numerous parties without any specific allegations as to [defendant]."); Johnson ex rel. Johnson v. Columbia University, 2003 WL 22743675 at *15 (S.D.N.Y. Nov. 19, 2003) (quotation marks omitted) (allegation that "[a]ll the defendants herein conspired" failed to state a claim); Reisner v. Stoller, 51 F. Supp. 2d 430, 443 (S.D.N.Y. 1999) (where "[t]he complaint is completely devoid of any reference to, or allegation concerning" the defendant, "[t]o the extent he may be included in general allegations . . . pertaining to all defendants, the complaint fails to state any cognizable claim against him").

because he opted not to file a Rule 12(e) motion for a more definite statement. Opp. at 1, 8. Plaintiffs misapprehend the relationship between Rules 12(b) and 12(e). A Rule 12(e) motion is only proper "when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint." Humpherys v. Nager, 962 F. Supp. 347, 352-53 (E.D.N.Y. 1997). Here, the meager allegations of the Complaint cannot yield liability for Mr. Bin Mahfouz under any viable legal theory.[2]

## II. BLESSED RELIEF IS NOT A "SPECIALLY DESIGNATED GLOBAL TERRORIST," AND PLAINTIFFS' CLAIMS AGAINST MR. BIN MAHFOUZ ACCORDINGLY ARE BARRED BY PRINCIPLES OF CORPORATE LAW AND THE PLAIN TERMS OF THE VOLUNTEER PROTECTION ACT.

Mr. Bin Mahfouz argued that well-established principles of corporate law bar plaintiffs' claims against him. Def. Mem. at 10-11, 15-17. Plaintiffs offer no substantive argument against these straightforward points – and indeed concede (as they must) "that corporations are separate and distinct from shareholders, for the purposes of liability." Opp. at 13. Instead, plaintiffs argue *only* that Blessed Relief "is a Specially Designated Global Terrorist entity." Opp. at 13. According to plaintiffs, Mr. "Bin Mahfouz's interaction as an officer and director of an SDGT, does not allow him the protections set out" in these well-settled principles of corporate law. Opp. at 14. Plaintiffs' argument is factually incorrect.

As an initial matter, the plaintiffs' allegation that Blessed Relief is an SDGT appears nowhere in the Complaint, and plaintiffs may not use their Opposition to amend informally that complaint.[3] Moreover, plaintiffs' sole argument on this issue rests on an incorrect averment: Blessed Relief does *not* appear – and has never appeared – on the Treasury Department's published list of Specially Designated Nationals and Blocked Persons, including those who allegedly supported al Qaeda and other terrorists. See United States Department of the Treasury,

---

[2] See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1376 at 574-75 (2d ed. 1990) ("Inasmuch as no responsive pleading is required to a pleading that does not contain a claim, it should not be subject to a motion for a more definite statement.").

[3] See, e.g., Government of Guam v. American President Lines, 28 F.3d 142, 150-51 (D.C. Cir. 1994) ("appellants' opposition to the motion to dismiss . . . was [not] sufficient to constitute a motion under Rule 15(a) to amend the complaint"); Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers") (citations omitted).

3

Office of Foreign Asset Control, Specially Designated Nationals and Blocked Persons, May 18, 2004, available at http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf (last accessed May 28, 2004).[4]  Nor are NCB or Nimir on that comprehensive list.

In short, plaintiffs' only argument in favor of the imposition of derivative liability on Mr. Bin Mahfouz rests on an incorrect factual premise.  Once that mistake is corrected by review of the very document relied upon by plaintiffs, this case presents a textbook example of claims brought against a corporate officer – Mr. Bin Mahfouz – for the supposed conduct of three entities in which he allegedly served or serves as an officer or shareholder.  Liability cannot lie against Mr. Bin Mahfouz merely by virtue of his alleged status as an officer or shareholder.[5]

The same analysis bars plaintiffs' arguments against the application of the Volunteer Protection Act, 42 U.S.C. § 14501 (2000) ("VPA").  Because the parties agree that Blessed Relief is a charity, the VPA shields Mr. Bin Mahfouz from liability for any activities taken in his alleged capacity as a trustee of that charity.  See Def. Mem. at 16; 3AC ¶ 331.  Plaintiffs' sole response is their misplaced assertion, again, that "Blessed Relief is a Specially Designated Global Terrorist entity."  Opp. at 14.  Thus, they argue that "[i]ndividuals, like [Mr.] Bin Mahfouz, voluntarily running an SDGT, are not shielded for their 'good works.'"  Opp. at 15.  But because Blessed Relief is not a Specially Designated Global Terrorist, the VPA applies to bar those of plaintiffs' claims premised on Mr. Bin Mahfouz's alleged involvement with Blessed Relief.

---

[4] See also United States Department of the Treasury, Office of Foreign Assets Control, ASCII Versions of SDN Files, available at http://www.ustreas.gov/offices/eotffc/ofac/sdn/ascii-versions.html#changes (individual documents listing annual changes in the SDN list between 1994 and 2004) (last accessed May 28, 2004). The Court may take judicial notice of these official public record documents without converting Mr. Bin Mahfouz's motion to dismiss into a motion for summary judgment. See Def. Mem. at 3 n.4; Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

[5] As explained in Mr. Bin Mahfouz's opening memorandum, Plaintiffs' Complaint also does little more than allege that Blessed Relief and defendant NCB served as "funnels" for the transmission of funds to al Qaeda. See 3AC at 89, 334; see also Def. Mem. at 2, 4. The transferor Court already has held in this case that dismissal may be appropriate for those entities that are "alleged only to be the funnel[s]" for terrorist finances. Burnett, 274 F. Supp. 2d at 109. If Blessed Relief and NCB cannot be held liable for serving as "funnels" for al Qaeda, then Mr. Bin Mahfouz certainly cannot be held liable simply because he is allegedly an officer and director of those entities. Plaintiffs' Opposition nowhere disagrees with this straightforward argument or its logical conclusion.

III. **THE COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ.**

Plaintiffs cite no information or authorities supporting their argument that the Defendant had sufficient contacts with the United States to create personal jurisdiction. As previously established (Def. Mem. at 7-8), merely holding a corporate position in a foreign company does not create jurisdiction, even if the company does business in the United States, as the plaintiffs continue to allege anew (Opp. at 7). Accord Thomson McKinnon Sec., Inc. v. Hamiltonian Indus., Inc., 610 F. Supp. 5, 7-8 (S.D.N.Y. 1985). Nor does ownership of shares in a publicly-traded United States company – the subject of still more new allegations (Opp. at 7) – amount to a "contact" with the United States for personal-jurisdiction purposes. See Def. Mem. at 8.

Plaintiffs' citations are not to the contrary. Palestine Information Office v. Shultz, 853 F.2d 932 (D.C. Cir. 1988), did not address the right to sue foreign civilian defendants, but rather an entirely different issue, the power of the executive branch to limit foreign activities in the United States for reasons of national security. Both Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998), and Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38 (D.D.C. 2000), dealt with the right to sue foreign sovereign States under a narrow exception to the FSIA. Neither apply to the private Defendant here, and the holdings in both cases were recently repudiated in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1031 (D.C. Cir. 2004).

The fundamental flaw with plaintiffs' argument is that it is premised on the dogmatic view, based on a misreading of Calder v. Jones, 465 U.S. 783 (1984), and Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), that the mere allegation that "intentionally tortuous [sic] acts" occurred within the United States suffices to establish jurisdiction. Opp. at 5. But none of the allegations against Mr. Bin Mahfouz involve activity "expressly aimed" at the United States within the meaning of Calder. 465 U.S. at 789. Nor is Mr. Bin Mahfouz alleged to have derived any benefit or protection from the United States for these alleged activities, as required by Burger King. 471 U.S. at 472; see also Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1028-29 (2d Cir. 1997). Nor can it be alleged that he played any "primary" or "intimate" role in any transactions in the United States, much less the tortious conduct at issue here. Time, Inc. v. Simpson, 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003).

5

Instead, he is alleged to have occupied corporate positions in foreign businesses and institutions, which, in turn, donated money to charitable projects, which, in turn, are alleged to have diverted money to al Qaeda in addition to their eleemosynary activities – the sort of relationship that, in the words of the transferor court, "would stretch the causation requirement . . . not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita." Burnett v. Al Baraka Inv. and Dev. Corp., 292 F. Supp. 2d 9, 20 (D.D.C. 2003). Mr. Bin Mahfouz's alleged relationship to the injury clearly is too remote to confer jurisdiction. Analogizing the allegations in the Complaint to Calder, he is not accused of being the author or publisher of the injurious publication – rather, he is accused of "supporting" the publication by purchasing a copy on his way to work, or by being an officer of a company that placed an ad in it. According to the Complaint, Mr. Bin Mahfouz's connection to the claimed intentional torts is at least this remote, even if one accepts the truth of the allegations uncritically.

Finally, as if to underscore this point, the plaintiffs' opposition brief contains a laundry list of more than 140 paragraphs of the Complaint that supposedly show Mr. Bin Mahfouz's involvement in a scheme to fund al Qaeda. Not one mentions him.[6] See Opp. at 6. In short, there is no jurisdictional connection between Mr. Bin Mahfouz and the United States.

IV.  **PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT.**

Under NAACP v. Claiborne Hardware, 458 U.S. 886, 920 (1982), civil liability may not be imposed on Mr. Bin Mahfouz merely on the basis of his alleged associations. Plaintiffs have alleged nothing about Mr. Bin Mahfouz apart from associations with NCB, Nimir, and Blessed Relief. A claim predicated on such allegations is constitutionally infirm. See Def. Mem. at 13-15. Plaintiffs respond first with the non sequitur that "Boim upheld the constitutionality of the ATA," Opp. at 14, and second that they have "adequately and reasonably alleged the Defendants' role in the sponsoring and financing [of] al Qaeda." Id. This they have not done – certainly not with regard to Mr. Bin Mahfouz. Plaintiffs have alleged nothing about Mr. Bin

---

[6] The emptiness of these allegations demonstrates again that there is no ground for allowing jurisdictional discovery. See Burnett, 292 F. Supp. 2d at 21-22 & n.8; Singer v. Bell, 585 F. Supp. 300, 303-04 (S.D.N.Y. 1984) (allegations of conspiracy based on "speculation and conjecture" do not warrant jurisdictional discovery).

6

Mahfouz beyond corporate associations, notwithstanding cursory and generalized allegations against "all named defendants," and therefore, under Claiborne Hardware, cannot state a claim.

V.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ATA.

Plaintiffs refer this Court to 3AC ¶¶ 267, 645-52 as support for the proposition that they have stated a claim under the Anti-Terrorism Act ("ATA") by "adequately alleg[ing] that Bin Mahfouz . . . provided 'material support or resources' and 'aided and abetted' al Qaeda terrorists and that he did so 'knowingly and intentionally, resulting in the causal chain of violence.'" Opp. at 16. Paragraph 267 makes no reference to Mr. Bin Mahfouz or even to entities with which he is alleged to have associated, and paragraphs 645-52 are precisely those "legal conclusions cast in the form of factual allegations" against all defendant that cannot state a claim. Mountain States Legal Found. v. Bush, 306 F.3d 1132, 1134-35 (D.C. Cir. 2002), cert. denied, 124 S. Ct. 61 (2003).[7] Plaintiffs have alleged only that Mr. Bin Mahfouz had three corporate associations. Such sparse allegations: (a) fail to allege the "knowing and intentional provision of material support to further reasonably foreseeable terrorist acts" or proximate causation, as necessary for a direct ATA claim; (b) fail to allege that Mr. Bin Mahfouz was "generally aware of his role" and "knowingly and substantially assist[ed] the principal violation," as necessary for an aiding and abetting ATA claim; and (c) fail to allege an agreement, as necessary for a conspiracy ATA claim. See Def. Mem. at 17-20. Plaintiffs' ATA claim therefore must be dismissed.

VI.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ATCA.

The very authorities upon which plaintiffs rely underscore the lack of any actionable claim. Conclusory claims of the existence of a conspiracy, where no specific acts or personal participation have been alleged against a defendant, are "much too tenuous to support [a] finding of liability" under the Alien Tort Claims Act ("ATCA"). Doe v. Islamic Salvation Front, 257 F.

---

[7] See also Clapp v. Greene, 743 F. Supp. 273, 276 (S.D.N.Y. 1990), aff'd mem., 930 F.2d 912 (2d Cir. 1991) ("[C]onclusory allegations merely stating the general legal conclusions necessary to prevail on the merits and which are unsupported by facts are not taken as true."); Jung, 300 F. Supp. 2d at 163 ("[P]laintiffs' use of the term 'defendants' to refer to multiple defendants situated very differently from one another in the context of general and global allegations is insufficient . . . . Plaintiffs cannot escape their burden . . . by using the term 'defendants' to apply to numerous parties without any specific allegations . . . .").

7

Supp. 2d 115, 121 (D.D.C. 2003). Even assuming that the ACTA can be applied against the actions of non-state actors in certain cases, the law – that is, both of this Court and of this case before transfer – demands a more rigorous demonstration "that [defendants] were accomplices, aiders and abettors, or co-conspirators [to] support a finding of liability under the ATCA." Burnett, 274 F. Supp. 2d at 100 (citing Presbyterian Church of Sudan v. Talisman Energy Inc., 244 F. Supp. 2d 289, 311 (S.D.N.Y. 2003)). Furthermore, plaintiffs have utterly failed to allege that Mr. Bin Mahfouz engaged in egregious acts, or knew of the planned commission of torts. Def. Mem. at 20-21. The bare allegations against Mr. Bin Mahfouz – that he held three corporate positions but took no specific actions at all – thus fall so short that it hardly matters whether he is a state or non-state actor.

Plaintiffs emphasize the question of Mr. Bin Mahfouz's status as a non-state actor to distract from the primary flaw in their ATCA claim. Opp. at 17-21.[8] Plainly he is a non-state actor. The only allegations plaintiffs have stated against Mr. Bin Mahfouz, however, are of occupying officer or board positions in three private foreign entities, and this bare allegation is insufficient to state a claim against the individual for the alleged acts of the underlying entity.

### VII.  PLAINTIFFS' TORT CLAIMS MUST BE DISMISSED.

Plaintiffs appear to agree that there is no general duty "to control the conduct of third persons to prevent them from causing injury to others." McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997) (quoting Purdy v. Public Administrator of County of Westchester, 530 N.Y.S.2d 513, 516 (N.Y. 1988)). As to their negligence claims, plaintiffs merely state their legal conclusion that the "Complaint alleges that Bin Mahfouz breached the duties encompassed in the

---

[8] The facts of cases cited by plaintiffs tend to undermine their argument that ATCA jurisdiction may extend to Mr. Bin Mahfouz as a non-state actor. The Karadzic court, for example, found that the "Bosnian-Serb entity" headed by the defendant was a "State" under international law. Kadic v. Karadzic, 70 F.3d 232, 244-45 (2d Cir. 1995). In Doe v. Islamic Salvation Front (FIS), 993 F. Supp. 3, 8 (D.D.C. 1998), the defendants were belligerents in the Algerian civil war, and Judge Sporkin found that the FIS was a "State" under international law. Last year, in Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 120 (D.D.C. 2003), Judge Robertson – the transferor judge for this action – expressed doubts that the ATCA "confers subject matter jurisdiction over claims against non-state actors." Id. Moreover, an examination of the claims at issue in Presbyterian Church of Sudan, 244 F. Supp. 2d at 300-02, show that the defendant was charged with close collaboration and direct mutual support with the Sudanese government.

norms of conduct found in international law." Opp. at 21; see also id. at 22 (arguing that Mr. "Bin Mahfouz violated the ATA and ATCA").[9] But the Complaint sets forth no allegations whatsoever regarding any *conduct* – negligent or otherwise – by Mr. Bin Mahfouz.

That same analysis dooms plaintiffs' intentional tort claims. Plaintiffs' wrongful death claim should be dismissed because New York law does not support such a claim against those who allegedly simply created conditions that allowed others to perpetrate the events at issue. See Jantzen v. Leslie Edelman of N.Y., Inc., 614 N.Y.S.2d 744, 744-45 (2d Dep't 1994). And plaintiffs' claim for intentional infliction of emotional distress must be dismissed because plaintiffs have failed to plead, among other things, that Mr. Bin Mahfouz's supposed conduct was "intentionally directed at the plaintiff . . . ." Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033, 1048 (S.D.N.Y. 1993) (dismissing for failure adequately to plead specific intent).

## VIII. PLAINTIFFS HAVE FAILED TO SERVE PROCESS ON MR. BIN MAHFOUZ.

Before Mr. Bin Mahfouz's limited appearance in this action, plaintiffs designed and obtained an order of service by publication against defendants allegedly residing in Saudi Arabia. Docket (Burnett DC) No. 95 & Minute Entry (Mar. 25, 2003). However, plaintiffs asked the Court to order publication only in one newspaper (the International Herald Tribune) with a circulation of less than 200 copies in Saudi Arabia, Docket (Burnett DC) No. 244, and in another newspaper (Al Quds al-Arabi) which is banned in that nation, Def. Mem. at 5-6. Even so, plaintiffs failed to follow the order's terms, not publishing the Arabic notice each week for six weeks. Docket (Burnett DC) No. 244.

Plaintiffs now ask the Court to ignore these failures because Mr. Bin Mahfouz has made a limited appearance to challenge jurisdiction. Plaintiffs repeat that "notice [must be] reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the

---

[9] Plaintiffs also argue that their negligence claims are properly grounded in the doctrine of negligence per se. See Opp. at 22. The Complaint does not plead this new claim. Also, plaintiffs' argument is profoundly circular, as the existence of a specific, statutorily-prescribed *duty* is a threshold prerequisite for negligence per se liability. See, e.g., Smith v. Mitlof, 198 F. Supp. 2d 492, 505 (S.D.N.Y. 2002) (dismissing negligence per se claim); see also Pratico v. Portland Terminal Co., 783 F.2d 255, 262 (1st Cir. 1985) ("[N]egligence per se will be found where violation of a statutory duty caused precisely the kind of harm which the statute was designed to prevent."). Here, plaintiffs have identified no specific, statutorily-prescribed duty allegedly owed by Mr. Bin Mahfouz to plaintiffs.

9

action." Opp. at 2-3 (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)). Yet they ignore that the Second Circuit firmly has "reject[ed] the notion that 'actual notice' suffices to cure a void service . . . ." National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991). The focus properly rests on whether the notice itself is reasonably calculated to reach the defendant, not on "chance alone" or fortuitous subsequent developments. Mullane, 339 U.S. at 315. The authorities are clear that the sort of "service" by publication that plaintiffs' counsel requested of the transferor court, and undertook (but failed) to carry out, is inadequate under well-established standards of due process. See, e.g., Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795-96 (1983); Schroeder v. City of New York, 371 U.S. 208, 211-13 (1962); Mullane, 339 U.S. at 314-15; Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994). It is not as though plaintiffs are unaware of Mr. Bin Mahfouz's business. See Opp. at 7.

## CONCLUSION

Plaintiffs would like to be able to state a claim against Mr. Bin Mahfouz with the simple and sweeping allegation that all named defendants knowingly supported al Qaeda. However, this is not the law. Plaintiffs have alleged nothing regarding Mr. Bin Mahfouz apart from three corporate associations, and thereby have failed both to establish personal jurisdiction and to state a claim. The claims asserted against Mr. Bin Mahfouz should be dismissed with prejudice.[10]

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Gerald A. Feffer (GF-2179)
Peter J. Kahn (PK-3611)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

May 28, 2004                                    Attorneys for Defendant Abdulrahman Bin Mahfouz

---

[10] Plaintiffs' Opposition does not respond to Mr. Bin Mahfouz's arguments regarding plaintiffs' TVPA and RICO claims. The Court therefore should strike those improper claims from the Complaint. See, e.g., Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2004, I caused an electronic copy of DEFENDANT ABDULRAHMAN BIN MAHFOUZ'S REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLAIMS AGAINST HIM to be filed and served using the Court's Electronic Filing System.

May 28, 2004

_____
Thomas C. Viles