UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570 (RCC) |
| This document relates to: KATHLEEN ASHTON, et al, <br><br>v.<br><br> AL-QAEDA ISLAMIC ARMY, et al. | 02 CV 6977 |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT

Defendant International Islamic Relief Organization of Saudi Arabia ("IIROSA"), through undersigned counsel, submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiffs' Fourth Amended Complaint ("Complaint"), pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

In their Opposition Brief, Plaintiffs improperly recast the allegations in their Complaint from scattered and disjointed assertions to a tightly written story. By "paraphrasing" the allegations against IIROSA in the Complaint, Plaintiffs "fill in the blanks" and now allege that IIROSA "intentionally and knowingly provided al Qaeda funds and recruits for terrorist attacks against America." (Opposition Br. at 1). This succinct assertion has been made -- for the first time -- in order to stave off IIROSA's motion to dismiss. But the Court "is not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983), and given that these newly crafted arguments contradict the contents of the Complaint, IIROSA should prevail on its Motion to Dismiss. *See Hirsch v. Arthur*

*Anderson & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995) (conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purpose of ruling on a motion to dismiss); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (when reviewing a motion to dismiss "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." (citation omitted)).

Plaintiffs' references to allegations in the Complaint deviate significantly from the statements made in their Opposition Brief. For example, Plaintiffs aver in their Opposition Brief that "[i]n the United States, IIRO financed al Qaeda terrorist attacks against America from [the IRO's] office in Virginia before, on, and after September 11, 2002" and it refers to paragraphs 311, 313, 322, 326 of the Complaint. (Opposition Br. at 2). But the allegations contained in these paragraphs do not contain that statement. While a Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) is not the vehicle to dispute the factual allegations contained in the Complaint – and IIROSA does indeed dispute the truth of these factual assertions – Plaintiffs blatant attempt to recast the disparate allegations against IIROSA into a neatly packaged "story" to jibe with the pleading requirements should not be countenanced by the Court. *See* Fed. R. Civ. P. 11(b)(3) (requiring parties to make "allegations and other factual contentions [that] have evidentiary support . . .").

**I. IIROSA Lacks the "Minimum Contacts" for the Court to Exercise Personal Jurisdiction Over It**

Plaintiffs first argue that IIROSA's alleged conduct and connection to the U.S. are such that IIROSA should reasonably anticipate being haled into a U.S. court. (Opposition Br. at 17). Plaintiffs' self-serving recasting of the Complaint allegations as they pertain to

2

IIROSA becomes clear here.  Plaintiffs argue that the effects of IIROSA's alleged funding of al Qaeda for "attacks targeting Americans" provide a sufficient legal basis for a U.S. court's exercise of personal jurisdiction over it.  When determining whether the Court may exercise personal jurisdiction over IIROSA, the question is whether IIROSA, a Saudi-based nongovernmental charitable organization which provides humanitarian assistance and administers international development programs in countries around the world, has "minimum contacts" with the U.S.  In connection with addressing the "minimum contacts" issue, one consideration, although by no means the sole consideration, is whether the allegations against IIROSA are such that IIROSA would "reasonably anticipate being haled into court" there.  *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Because IIROSA has no "minimum contacts" with the U.S., this Court may not exercise personal jurisdiction over it.  As set forth in the Al-Saikhan Affidavit accompanying IIROSA's Initial Brief, IIROSA has no office in the U.S. and conducts no business in the U.S.  While IIROSA concedes that a separate legal entity called the International Relief Organization ("IRO") was based in Virginia from 1991 through 1998, that office was neither the alter ego nor a "mere department" of IIROSA and the physical presence of the IRO in Virginia from is wholly insufficient for this Court to exercise personal jurisdiction over IIROSA.  (Initial Br. at 7-14).

Citing Judge Robertson's opinion in *Burnett*, Plaintiffs argue that IIROSA is similar to the Muslim World League ("MWL"), an organization with two active U.S.-based offices, and that the *Burnett* opinion supports the conclusion that the existence of those U.S.-based offices alone was sufficient for the court to exercise personal jurisdiction over the MWL.  *Burnett v. Al Baraka Investment & Dev. Corp.*, 274 F. Supp. 2d 86, 96

3

(D.D.C. 2003).  Significantly, however, Plaintiffs omit the fact that Judge Robertson noted that "MWL's own website identifies the MWL entities in Virginia and New York as 'Offices Abroad' and that it makes no distinction between those offices and MWL itself. . . ."  Moreover, when rendering his decision to exercise personal jurisdiction over the MWL, Judge Robertson specifically highlighted the fact that the "MWL presents no evidence whatsoever – not a single affidavit or article of incorporation – to support its conclusory assertion that the [U.S.-based] offices are legally separate and independent entities from MWL." *Id.* at 97.  Rather than citing the applicable case law or acknowledging the affidavit IIROSA has submitted in connection with its Initial Brief in support of its Motion to Dismiss demonstrating that IIROSA and the U.S.-based entity called IRO are indeed separate legal entities, Plaintiffs instead present facts previously conceded by IIROSA, namely that the IRO established an office in Virginia in 1991.  (Opposition Br. at 21).  The fact that the IRO had a U.S.-based office alone, however, is completely insufficient to establish personal jurisdiction over IIROSA.  *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2nd Cir. 1984) ("[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation.").

 Perhaps more puzzling and irrelevant though, is Plaintiffs' attempt to persuade the Court to exercise jurisdiction over IIROSA based on the summary of an interview with Soliman Biheiri by the U.S. Customs Service at Dulles Airport in July 2003 and Mr. Biheiri's deposition testimony in a civil lawsuit in October 1999.  (Opposition Br. at 21-22).  Contrary to Plaintiffs' argument, however, one man's subjective understanding of the relationship between two organizations is not the test U.S. courts employ to determine whether to exercise personal jurisdiction over a foreign entity having no presence in the

4

U.S. The "proof" set forth by Plaintiffs ignores well-established case law holding that "the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation." *Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 120. And Plaintiffs make no attempt to challenge IIROSA's argument that the IRO office in Virginia served as the agent or mere department of IIROSA. (Initial Br. at 10-14). Accordingly, the Court may not exercise jurisdiction over IIROSA, a nonresident parent, through what Plaintiffs appear to argue should be considered IIROSA's resident subsidiaries, the now defunct IRO entity or the Success Foundation. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citation omitted).

Finally, Plaintiffs state that IIROSA's argument that it is a separate legal entity from the IRO constitutes a "fact-driven dispute [that] should not be resolved at this early stage of the litigation before plaintiffs have had a chance to develop the facts of their case through discovery." (Opposition Br. at 22). But this "early stage of the litigation" is precisely the time when a determination regarding a court's exercise of personal jurisdiction over a defendant should be made, not after discovery.

### II.  This Court May not Exercise Jurisdiction Over IIROSA under the "Effects" Test or a Conspiracy Theory

Plaintiffs conclude that because IIROSA's alleged funding and support of al Qaeda was knowingly and intentionally directed towards harming Americans and the "effects" of IIROSA's knowing and intentional funding and support would be felt in the U.S., this Court may exercise personal jurisdiction over IIROSA. (Opposition Br. at 17-20). But Plaintiffs again embellish the allegations in the Complaint for purposes of making this argument. Although the Supreme Court upheld the exercise of personal jurisdiction over two individual non-resident defendants whose conduct was "calculated to cause injury" in

5

the forum state in *Calder v. Jones*, it noted that those "defendants [were] not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." 465 U.S. 783, 789-90 (1984). Significantly, even assuming the allegations in the Complaint are true for purposes of this motion, the Complaint does not allege that IIROSA's conduct was expressly targeted at the U.S. Indeed, there are allegations about IIROSA's disparate activities in the Philippines (310, 316), the Sudan (317), and Pakistan (312, 315). Plaintiffs failure to demonstrate that (i) IIROSA's actions outside the U.S. caused the September 11, 2001, terrorist attacks; (ii) the terrorist attacks were a "direct and foreseeable result" of IIROSA's conduct; and (iii) IIROSA knew or should have known that its conduct would result in the September 11, 2001, terrorist attacks, weighs against this Court's exercise of personal jurisdiction over IIROSA under the "effects test." *See Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364, 2000 U.S. App. LEXIS 31853, at *8 (2d Cir. 2000)( citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1338-1341 (2d Cir. 1972)).

Plaintiffs reliance on *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54, 59 (D.D.C. Oct. 27, 2003) and *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1995), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998) to support their application of the effects test as a basis for a U.S. court's exercise of personal jurisdiction over a foreign defendant alleged to have carried out a terrorist attack on American citizens is misplaced and ignores important factual distinctions between those cases and the case at hand. For example, both *Rein* and *Pugh* involve foreign state defendants named in a civil lawsuit with the U.S. court's jurisdiction over these foreign defendants arising under the Foreign Sovereign Immunity Act's limited waiver (of immunity) and its jurisdictional grant to suits against foreign states and individuals acting

on their behalf in an official capacity "in which money damages are sought.. for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking." 28 U.S.C. § 1605(a)(7). *Pugh* 290 F. Supp.2d at 58; *Rein*, 995 F. Supp. at 330. Therefore, the *Pugh* and *Rein* courts exercised personal jurisdiction over foreign state and individual defendants for alleged acts of terrorism under a statute *expressly* permitting the exercise of such jurisdiction over foreign state sponsors of terrorism and individuals acting on their behalf.

Arguably, the *Pugh* court extended the exercise of personal jurisdiction over several individual defendants named in both their official as well as their personal capacities. But the *Pugh* court acknowledged that the case presented "novel issues of first impression" and the allegations in the complaint portrayed these individual defendants as having carried out the destruction of an airplane on an international flight. 290 F. Supp. 2d at 57. The court concluded that it would be "altogether foreseeable that some Americans would be aboard the plane, whose lives would be lost, and that the individual defendants would have to answer in some fashion in American courts for the consequences of their actions if their identities were discovered." *Id*. at 59. Finally and importantly, the *Pugh* court chose to exercise personal jurisdiction over these individual defendants in their personal capacity *after* it had decided to exercise personal jurisdiction over these defendants in their official capacity. *See Id.* at 58-59.

The allegations against IIROSA are distinguishable as are the circumstances within which the Court would be making its decision whether to exercise personal jurisdiction over IIROSA. First, IIROSA is not a foreign state sponsor of terrorism. Second, unlike the facts alleged against the individuals named as defendants in *Pugh*, the facts alleged against IIROSA are not directly linked to carrying out a terrorist act on American citizens.

Third, the Court would not be choosing to exercise personal jurisdiction over IIROSA *after* it had utilized another statutorily sanctioned mechanism through which it could exercise personal jurisdiction over this foreign entity.  While Plaintiffs completely ignore these important distinctions between the *Pugh* defendants and IIROSA, they appear to advocate simply extending the Court's exercise of personal jurisdiction over a non-state foreign entity alleged – in broad and unspecified terms -- to have funded al Qaeda "around the globe," but the Complaint is devoid of specific dates and time periods for such funding and support and the allegations are far flung geographically and never expressly linked to the September 11, 2001, terrorist attacks.  Plaintiffs' are essentially requesting the Court to ignore the traditional due process considerations because of the tragedy of September 11, 2001.  This argument has no basis in the law.

Ignoring the two-prong test for establishing personal jurisdiction over a non-resident defendant based on a conspiracy theory, instead Plaintiffs state their unsupported conclusion that "the exercise of jurisdiction over non-resident defendants based on forum acts of their co-conspirators satisfies Due Process."  (Opposition Br. at 23).  But as Judge Haight's opinion in *Andre Emmerich Gallery v. Segre* makes clear, in order to "obtain personal jurisdiction over the defendant on the theory that the co-conspirator defendant is carrying out activities in New York in furtherance of the conspiracy", a plaintiff must (i) allege a *prima facie* case of civil conspiracy under New York law[1] ***and*** (ii) demonstrate "a

---

[1] *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a prima facie case of conspiracy).  A cause of action for civil conspiracy under New York law consists of the following elements:  "(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y 1991); *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993 (holding that conspiracy claims should contain more than conclusory, vague or general allegations and should provide some details of time and place); *Schenker v. Assicurazioni Genereali S.p.A.*, Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (holding that non-specific allegations cannot provide the basis for a conspiracy claim).

sufficient relationship between the defendant and the conspiracy to warrant the inference that the defendant was a member of the conspiracy." 1997 U.S. Dist. LEXIS 16899 at *11-13 (S.D.N.Y. 1997) (citations omitted); *see also In re Sumitomo Copper Litig.*, 120 F. Supp.2d 328, 340 (S.D.N.Y. 2000) (holding that conspiracy-based jurisdiction requires proof that out-of-forum defendant was a member of the conspiracy and that in-forum conspirator acted at the behest of or under the control of the out-of-forum defendant). Having no where near cleared the hurdle of establishing a *prima facie* case of civil conspiracy involving IIROSA, Plaintiffs do not even attempt to argue that they have properly alleged the "sufficient relationship" between IIROSA and the conspiracy to launch the September 11, 2001, attacks. In order to do so, Plaintiffs would have "to show that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant." *Chrysler Capital Corp. v Century Power Corp.*, 778 F. Supp. at 1269 (citations omitted). Plaintiffs utterly fail to make any specific allegations against IIROSA that support a "sufficient relationship" between IIROSA and the conspiracy to carry out the September 11, 2001, attacks. Accordingly, Plaintiffs' failure to even attempt to satisfy this two-prong and highly factually driven test for establishing personal jurisdiction over IIROSA under a conspiracy theory requires the Court to refrain from exercising personal jurisdiction over IIROSA on this basis.

## III. <u>CONCLUSION</u>

For the foregoing reasons, IIROSA respectfully requests that this Court grant its Motion to Dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

Dated: Washington, DC
       June 4, 2004

                                         Respectfully submitted,

                                         _____
                                         Martin F. McMahon (MM4389)
                                         Martin McMahon & Associates
                                         1150 Connecticut Ave., N.W.
                                         Ste. 900
                                         Washington, D.C.  20036
                                         (202) 862-4343

                                         *Attorneys for Defendant*
                                         *International Islamic Relief*
                                         *Organization of Saudi Arabia*