**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 1570 (RCC)** |
| This document relates to: THOMAS BURNETT, et al, v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., et al. | 03 CV 9849 (RCC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT INTERNATIONAL ISLAMIC RELIEF ORGANIZATION'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant International Islamic Relief Organization of Saudi Arabia ("IIROSA"), through undersigned counsel, submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiffs' Third Amended Complaint ("Complaint"), pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

In their Opposition Brief, Plaintiffs begin their "FACTS" section with a patently false statement, namely that IIROSA has been "[d]esignated by the United States Department of State as an organization that sponsors terrorism." (Opposition Br. at 1). But no such designation has occurred. *See* http://www.state.gov/r/pa/prs/ps/2003/ 24851pf.htm for the list entitled "Redesignation of Foreign Terrorist Organizations" as of October 2, 2003 (the most current comprehensive list). IIROSA does not appear on that list. In fact, IIROSA has not been designated by any U.S. government entity as a terrorist organization or financier of terrorism. At most, Plaintiffs' Opposition Brief merely restates allegations regarding IIROSA's "involvement" and "affiliations" with terrorist

organizations and acts and other conclusory statements – with virtually no details to back up these conclusions – that IIROSA has served as a "center of terrorist financing and training activity for al Qaeda operations." (Opposition Br. at 2-3). Plaintiffs continue to rely on guilt by association and singular statements offered without date, context, or verification of reliability or accuracy.

For example, Plaintiffs rely on the alleged statement of a former terrorist for the Abu Sayef Group – which, unlike IIROSA, *i*s on the U.S. State Department's list of Foreign Terrorist Organizations – averring that "[l]ess than 30% of the IIRO funds went to legitimate public works, the rest going toward the purchase of weapons." (Opposition Br. at 4). Nowhere do Plaintiffs provide the name of this former terrorist or the timeframe he is referring to in the statement about "IIRO funds." In addition, no information as to when he or she made the statement and under what circumstances the statement was made is provided. Was this former terrorist in custody? What is a former terrorist? Was the statement part of a sworn statement or was the statement made in connection with a plea negotiation? How would he or she, as a former terrorist from the Abu Sayef Group, know with any certainty about the overall IIROSA budget? This one example of the factual assertions made against IIROSA reveals the unreliability of this string of conclusory allegations implicating IIROSA in terrorist activities.

Significantly, the Court "is not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983). Accordingly, IIROSA should prevail on its Motion to Dismiss. *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995) (conclusory allegations of the legal

status of defendant's acts need not be accepted as true for the purpose of ruling on a motion to dismiss); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (when reviewing a motion to dismiss "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." (citation omitted)).

**I.  IIROSA Lacks the "Minimum Contacts" for the Court to Exercise Personal Jurisdiction Over It**

Plaintiffs claim that the Court may exercise specific jurisdiction over IIROSA "because the suit directly relates to IIRO's contacts with the forum, *i.e.*, the United States." (Opposition Br. at 9). But because IIROSA has no "minimum contacts" with the U.S., this Court may not exercise personal jurisdiction over it. As set forth in the Al-Saikhan Affidavit accompanying IIROSA's Initial Brief, IIROSA has no office in the U.S. and conducts no business in the U.S. While IIROSA concedes that a separate legal entity called the International Relief Organization ("IRO") was based in Virginia from 1991 through 1998, that office was neither the alter ego nor a "mere department" of IIROSA and the physical presence of the IRO in Virginia alone is wholly insufficient for this Court to exercise personal jurisdiction over IIROSA. (Initial Br. at 7-14). Plaintiffs' "proof" to the contrary ignores the relevant case law and provides no basis for the Court to exercise jurisdiction over IIROSA based on its alleged affiliation with the IRO, the Muslim World League ("MWL"), or the Success Foundation.

Next, citing Judge Robertson's opinion in *Burnett*, Plaintiffs argue that IIROSA is similar to the Muslim World League ("MWL"), an organization with two active U.S.-

based offices, and that the *Burnett* opinion supports the conclusion that the existence of those U.S.-based offices alone was sufficient for the court to exercise personal jurisdiction over the MWL. *Burnett v. Al Baraka Investment & Dev. Corp.*, 274 F. Supp. 2d 86, 96 (D.D.C. 2003); (Opposition Br. at 11-12). Significantly, however, Plaintiffs omit the fact that Judge Robertson noted that "MWL's own website identifies the MWL entities in Virginia and New York as 'Offices Abroad' and that it makes no distinction between those offices and MWL itself. . . ." Moreover, when rendering his decision to exercise personal jurisdiction over the MWL, Judge Robertson specifically highlighted the fact that the "MWL presents no evidence whatsoever – not a single affidavit or article of incorporation – to support its conclusory assertion that the [U.S.-based] offices are legally separate and independent entities from MWL." *Id.* at 97. But IIROSA has submitted an affidavit supporting its assertion that it is a distinct legal entity from the IRO, MWL, and Success Foundation. (Affidavit of Saleh Bin A. Al-Saikhan dated March 15, 2004, accompanying IIROSA's Initial Brief). Plaintiffs ignore this submission. And Plaintiffs also ignore the distinction IIROSA made in its Initial Brief between the facts of *Estate of Ungar v. Palestinian Authority*, 153 F. Supp.2d 76 (D.R.I 2001), where the court exercised jurisdiction over the PA and PLO defendants and the facts alleged here. (Initial Br. at 7-8).

When determining whether the Court may exercise personal jurisdiction over IIROSA, the question is whether IIROSA, a Saudi-based nongovernmental charitable organization which provides humanitarian assistance and administers international development programs in countries around the world, has "minimum contacts" with the U.S. In connection with addressing the "minimum contacts" issue, one consideration,

although by no means the sole consideration, is whether the allegations against IIROSA are such that IIROSA would "reasonably anticipate being haled into court" there. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiffs' attempt to persuade the Court to exercise jurisdiction over IIROSA based on the summary of an interview with Soliman Biheiri by the U.S. Customs Service at Dulles Airport in July 2003, among other things (Opposition Br. at 10-11), is not persuasive on this issue. Contrary to Plaintiffs' argument, however, one man's subjective understanding of the relationship between two organizations is not the test U.S. courts employ to determine whether to exercise personal jurisdiction over a foreign entity having no presence in the U.S. The "proof" set forth by Plaintiffs ignores well-established case law holding that "the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). And Plaintiffs make no attempt to challenge IIROSA's argument that the IRO office in Virginia served as neither the agent or mere department of IIROSA. (Initial Br. at 10-14). Accordingly, the Court may not exercise jurisdiction over IIROSA through what Plaintiffs appear to argue should be considered IIROSA's resident subsidiaries, the now defunct IRO entity or the Success Foundation. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citation omitted).

### II. This Court May not Exercise Jurisdiction Over IIROSA under the "Effects" Test or a Conspiracy Theory

Plaintiffs argue next that "IIRO can expect to be haled into a United States court when its conduct is directed at this country, its citizens or residents." (Opposition Br. at

5

12). Although the Supreme Court upheld the exercise of personal jurisdiction over two individual non-resident defendants whose conduct was "calculated to cause injury" in the forum state in *Calder v. Jones*, it noted that those "defendants [were] not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." 465 U.S. 783, 789-90 (1984). Significantly, even assuming the allegations in the Complaint are true for purposes of this motion, Plaintiffs' failure to demonstrate that (i) IIROSA's actions outside the U.S. caused the September 11, 2001, terrorist attacks; (ii) the terrorist attacks were a "direct and foreseeable result" of IIROSA's conduct; and (iii) IIROSA knew or should have known that its conduct would result in the September 11, 2001, terrorist attacks, weighs against this Court's exercise of personal jurisdiction over IIROSA under the "effects test." *See Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364, 2000 U.S. App. LEXIS 31853, at *8 (2d Cir. 2000)( citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1338-1341 (2d Cir. 1972)).

In addition, Plaintiffs' reliance on *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54, 59 (D.D.C. Oct. 27, 2003) and *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1995), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998) to support their application of the effects test as a basis for a U.S. court's exercise of personal jurisdiction over a foreign defendant alleged to have carried out a terrorist attack on American citizens is misplaced and ignores important factual distinctions between those cases and the case at hand. (Opposition Br. at 12-13). For example, both *Rein* and *Pugh* involve foreign state defendants named in a U.S.-based civil lawsuit with the U.S. court's jurisdiction over these foreign defendants arising under

6

the Foreign Sovereign Immunity Act's limited waiver (of immunity) and its jurisdictional grant to suits against foreign states and individuals acting on their behalf in an official capacity "in which money damages are sought.. for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking." 28 U.S.C. § 1605(a)(7). *Pugh* 290 F. Supp.2d at 58; *Rein*, 995 F. Supp. at 330. Therefore, the *Pugh* and *Rein* courts exercised personal jurisdiction over foreign state and individual defendants for alleged acts of terrorism under a statute *expressly* permitting the exercise of such jurisdiction over foreign state sponsors of terrorism and individuals acting on their behalf.

Arguably, the *Pugh* court extended the exercise of personal jurisdiction over several individual defendants named in both their official as well as their personal capacities. But the *Pugh* court acknowledged that the case presented "novel issues of first impression" and the allegations in the complaint portrayed these individual defendants as having carried out the destruction of an airplane on an international flight. 290 F. Supp. 2d at 57. The court concluded that it would be "altogether foreseeable that some Americans would be aboard the plane, whose lives would be lost, and that the individual defendants would have to answer in some fashion in American courts for the consequences of their actions if their identities were discovered." *Id.* at 59. Finally and importantly, the *Pugh* court chose to exercise personal jurisdiction over these individual defendants in their personal capacity *after* it had decided to exercise personal jurisdiction over these defendants in their official capacity. *See Id.* at 58-59.

The allegations against IIROSA are distinguishable as are the circumstances within which the Court would be making its decision whether to exercise personal

7

jurisdiction over IIROSA.  First, IIROSA is not a foreign state sponsor of terrorism.  Second, unlike the facts alleged against the individuals named as defendants in *Pugh*, the facts alleged against IIROSA are not directly linked to carrying out a terrorist act on American citizens.  Third, the Court would not be choosing to exercise personal jurisdiction over IIROSA *after* it had utilized another statutorily sanctioned mechanism through which it could exercise personal jurisdiction over this foreign entity.

While Plaintiffs completely ignore these important distinctions between the *Pugh* defendants and IIROSA, they appear to advocate simply extending the Court's exercise of personal jurisdiction over a non-state foreign entity alleged – in broad and unspecified terms -- to have funded al Qaeda "around the globe," but the Complaint is devoid of specific dates and time periods for such funding and support and the allegations are far flung geographically and never expressly linked to the September 11, 2001, terrorist attacks.  Plaintiffs' are essentially requesting the Court to ignore the traditional due process considerations because of the tragedy of September 11, 2001.  This argument has no basis in the law.

Next, ignoring the two-prong test for establishing personal jurisdiction over a non-resident defendant based on a conspiracy theory, instead Plaintiffs state their unsupported conclusion that "this Court may exercise personal jurisdiction over IIRO based on the contacts of its co-conspirators, because IIRO knew and intended that the acts of its al Qaeda co-conspirators would impact the United States."  (Opposition Br. at 13).  As Judge Haight's opinion in *Andre Emmerich Gallery v. Segre* makes clear, in order to "obtain personal jurisdiction over the defendant on the theory that the co-conspirator defendant is carrying out activities in New York in furtherance of the

8

conspiracy", a plaintiff must (i) allege a *prima facie* case of civil conspiracy under New York law[1] *and* (ii) demonstrate "a sufficient relationship between the defendant and the conspiracy to warrant the inference that the defendant was a member of the conspiracy." 1997 U.S. Dist. LEXIS 16899, at *11-13 (S.D.N.Y. 1997) (citations omitted); *see also In re Sumitomo Copper Litig.*, 120 F. Supp.2d 328, 340 (S.D.N.Y. 2000) (holding that conspiracy-based jurisdiction requires proof that out-of-forum defendant was a member of the conspiracy and that in-forum conspirator acted at the behest of or under the control of the out-of-forum defendant).

Having nowhere near cleared the hurdle of establishing a *prima facie* case of civil conspiracy involving IIROSA, Plaintiffs do not even attempt to argue that they have properly alleged the "sufficient relationship" between IIROSA and the conspiracy to launch the September 11, 2001, attacks. In order to do so, Plaintiffs would have "to show that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant." *Chrysler Capital Corp. v Century Power Corp.*, 778 F. Supp. at 1269 (citations omitted). Plaintiffs utterly fail to make any specific allegations against IIROSA that support a

---

[1] *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a prima facie case of conspiracy). A cause of action for civil conspiracy under New York law consists of the following elements: "(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y 1991); *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993 (holding that conspiracy claims should contain more than conclusory, vague or general allegations and should provide some details of time and place); *Schenker v. Assicurazioni Genereali S.p.A.*, Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (holding that non-specific allegations cannot provide the basis for a conspiracy claim).

"sufficient relationship" between IIROSA and the conspiracy to carry out the September 11, 2001, attacks. Accordingly, Plaintiffs' inability to satisfy this two-prong and highly fact-intensive test for establishing personal jurisdiction over IIROSA under a conspiracy theory requires the Court to refrain from exercising personal jurisdiction over IIROSA on this basis.

### III. CONCLUSION

For the foregoing reasons, IIROSA respectfully requests that this Court grant its Motion to Dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

Dated: Washington, DC
       June 4, 2004

Respectfully submitted,

_____
Martin F. McMahon (MM4389)
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C. 20036
(202) 862-4343

*Attorneys for Defendant*
*International Islamic Relief*
*Organization of Saudi Arabia*