UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570 (RCC) |
|---|---|
| This document relates to: KATHLEEN ASHTON, et al, Plaintiffs, v. AL-QAEDA ISLAMIC ARMY, et al., Defendants. | NO. 02 CV 6977 (RCC) |

**RABITA TRUST'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Rabita Trust*

Dated: Washington, D.C.
June 2, 2004

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

    I.      PLAINTIFFS FAILED TO PLEAD
           THAT RABITA TRUST ENGAGED
           IN INTENTIONAL TORTIOUS CONDUCT
           DIRECTED AT THE UNITED STATES ......................................1

    II.     PLAINTIFFS FAILED TO PLEAD
           THAT RABITA TRUST CONSPIRED
           WITH ANY CO-DEFENDANTS WHO
           DIRECTED TORTIOUS ACTIONS TOWARDS
           THE UNITED STATES .................................................................3

    III.    PLAINTIFFS FAIL TO ALLEGE A
           CAUSAL CONNECTION BETWEEN
           RABITA TRUST'S CONDUCT AND
           TERRORIST ATTACKS AGAINST
           THE UNITED STATES .................................................................5

    IV.    PLAINTIFFS SHOULD BE DENIED
            JURISDICTIONAL DISCOVERY .............................................8

CONCLUSION.................................................................................................9

## TABLE OF AUTORITIES

Burnett v. Al Baraka Inv. & Dev. Corp.,
274 F. Supp.2d 86 (D.D.C. 2003) ...................................................................................6

Chrysler Capital Corp. v. Century Power Corp.,
778 F. Supp. 1260, (S.D.N.Y. 1991)................................................................................4

Daliberti v. Iraq, 97 F. Supp.2d 38, (D.D.C. 2000) ............................................................2

Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993) .......................................5

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, (S.D.N.Y. 1991).......................5

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
218 F. Supp.2d 369, (S.D.N.Y. 2002)..............................................................................3

Herbstein v. Bruetman, 768 F. Supp. 79, (S.D.N.Y. 1991) ...............................................5

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, (S.D.N.Y. 1987)...................................5

In re Sumitomo Copper Litig., 120 F. Supp.2d 328, (S.D.N.Y. 2000) .............................4

Papasan v. Allain, 478 U.S. 265, (1986).............................................................................2

Rein v. Socialist People's Libyan Arab Jamahiriya,
995 F. Supp. 325, (E.D.N.Y. 1998) ..................................................................................2

Schenker v. Assicurazioni Genereali S.p.A., Consol.,
NO. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002)..........................5

Second Amend. Found. v. U.S. Conference of Mayors,
274 F.3d 521, (D.C. Cir. 2001) .........................................................................................2

**INTRODUCTION**

Like the Complaint, Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Wael Jelaidan ("Jelaidan") and Rabita Trust's respective Motions to Dismiss ("Opposition") is no more than a series of legal conclusions without supporting facts. Plaintiffs embellish and exaggerate the actual Complaint allegations, and misconstrue and misrepresent the law and Rabita Trust's legal arguments. Apparently, Plaintiffs even concede that there is no foundation for general jurisdiction over Rabita Trust. The Complaint allegations fail to give rise to personal jurisdiction over Rabita Trust under either the "effects test" or a conspiracy-based theory of personal jurisdiction, and therefore the Complaint against Rabita Trust must be dismissed.

**I.   PLAINTIFFS FAILED TO PLEAD THAT RABITA TRUST ENGAGED IN INTENTIONAL TORTIOUS CONDUCT DIRECTED AT THE UNITED STATES**

Plaintiffs' Opposition plays fast and loose with the Complaint allegations regarding personal jurisdiction, making arguments without any basis in the Complaint. According to the Plaintiffs, in order to show that personal jurisdiction exists over Rabita Trust, Plaintiffs must plead that Rabita Trust knowingly assisted terrorists in committing terrorist activities directed at the United States. See Pls.' Opp'n at 9. To support this theory, Plaintiffs contend that the Complaint alleges that Rabita Trust: 1) Conspired, aided and abetted other al Qaeda terrorists; 2) Recruited al Qaeda terrorists and otherwise supported al Qaeda's mission to kill Americans; 3) Intentionally advanced al Qaeda's goal of causing damage to the United States; 4) Supported al Qaeda attacks on America; 5) Provided financial and logistical support to al Qaeda members; 6) Provided support that substantially contributed to the September 11, 2001 attacks and 7) Provided

assistance and services to al Qaeda.  See Pls.' Opp'n at 2, 4-5, 7, 9-10.  However, nowhere in the entire Fourth Amended Complaint will the Court find allegations corresponding to these arguments.

The only specific Complaint allegations arguably alleging a connection between Rabita Trust and al Qaeda are the allegations that Rabita Trust has "been involved with terrorism" and "is an AL QAEDA front."  See 4AC at ¶¶ 521, 523.  These two non-specific, conclusory allegations do not equate with even a conclusory allegation that Rabita Trust assisted al Qaeda in committing terrorist activities directed towards the United States, let alone provide any of the necessary specifics on how Rabita Trust assisted al Qaeda's terrorist activities directed towards the United States.  These conclusory allegations and other general, catch-all allegations applicable to all defendants are insufficient to support a claim of personal jurisdiction over individual defendants, such as Rabita Trust.  See 4AC at ¶¶ 5, 23-24; Papasan v. Allain, 478 U.S. 265, 286 (1986) (holding that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Second Amend. Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).

Not only is Plaintiffs' jurisdictional argument unsupported by the Complaint allegations, but it is unsupported by Plaintiffs' cited case law as well.  Both Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325, 329-30 (E.D.N.Y. 1998), and Daliberti v. Iraq, 97 F. Supp.2d 38, 52-53 (D.D.C. 2000), cases cited by Plaintiffs, involved causes of action against sovereign governments where the respective courts found personal jurisdiction based on exceptions to the Foreign Sovereign Immunities Act.  The Daliberti Court expressly held that "the state sponsored terrorism exception

'provides an express jurisdictional nexus based upon the victim's United States nationality.'" 97 F. Supp.2d at 48 (citations omitted).  Rein and Daliberti are distinguishable from the case herein because Rabita Trust is not a government entity and Plaintiffs do not claim that personal jurisdiction exists over Rabita Trust under an exception to the Foreign Sovereign Immunities Act.  Moreover, Rabita Trust contends that personal jurisdiction does not exist because the Complaint allegations are too generalized and fail to specifically connect Rabita Trust's activities with tortious activities directed at the United States.  Neither Rein, nor Daliberti appear to have addressed such an argument.

Plaintiffs' non-specific allegations fail to support the theory that Rabita Trust knowingly assisted al Qaeda in achieving its goal of committing tortious conduct within the United States.  Without such support Plaintiffs have failed to show that personal jurisdiction exists over Rabita Trust.

## II. PLAINTIFFS FAILED TO PLEAD THAT RABITA TRUST CONSPIRED WITH ANY CO-DEFENDANTS WHO DIRECTED TORTIOUS ACTIONS TOWARDS THE UNITED STATES

Failing to plead any connection between Rabita Trust's activities and al Qaeda activities directed toward harming the United States, Plaintiffs rely on a conspiracy-based theory of personal jurisdiction.  This theory also fails because Plaintiffs have failed to allege a *prima facie* case of conspiracy against Rabita Trust.  See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a *prima facie* case of conspiracy).  Most significantly, the Complaint contains no allegations that Rabita Trust: 1) Was a member of a "9/11 Conspiracy," or even a more general conspiracy to attack the

3

United States; 2) Entered into any agreement to support the 9/11 Attacks on the United States, or any attack against the United States for that matter; or 3) Exercised any sort of control over or entered into an agency relationship with the in-forum perpetrators of the 9/11 Attacks.  See In re Sumitomo Copper Litig., 120 F. Supp.2d 328, 340 (S.D.N.Y. 2000) (holding that *prima facie* case of conspiracy-based jurisdiction requires proof that out-of-forum defendant was a member of the conspiracy and that in-forum conspirator acted at the behest of or under the control of the out-of-forum defendant); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) (holding that *prima facie* case of conspiracy requires proof of a corrupt agreement between two or more persons).

Ironically, Plaintiffs' own case law reveals the disfavor of the judicial system for the principle of conspiracy-based personal jurisdiction.  See DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, 20 (D.D.C. 2002) (holding that courts have applied the conspiracy theory of jurisdiction warily).  In discussing the skepticism of courts for conspiracy-based jurisdiction, the DSMC, Inc. Court noted that "courts have required *particularized* pleading of the conspiracy…. [and] mere speculation that the nonresident defendants are co-conspirators is insufficient to meet plaintiff's prima facie burden."  Id. (emphasis added).  That Rabita Trust has been allegedly involved with terrorism fails to show any particularized agreement between Rabita Trust and others to perpetrate the 9/11 attacks or any other attacks against the United States.  See 4AC at ¶ 521.

The Complaint is rife with vague catch-all allegations applying to all defendants and summary legal conclusions.  See 4AC at ¶ 5, 23-24.  None of these allegations or legal conclusions suffice to confer conspiracy-based personal jurisdiction over Rabita

4

Trust.  See Second Amend. Found., 274 F.3d at 524 (holding that legal conclusion that defendants "conspired together" does not state a *prima facie* case of conspiracy for the purpose of personal jurisdiction); Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993) (holding that conspiracy claims should contain more than conclusory, vague or general allegations, and should provide some details of time and place and the alleged effect of the conspiracy); Schenker v. Assicurazioni Genereali S.p.A., Consol., NO. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (holding that non-specific allegations cannot for the basis of a conspiracy claim).

### III. PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN RABITA TRUST'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Contrary to Plaintiffs' argument, causation is a linchpin for the "effects test" of personal jurisdiction, a linchpin which is missing from the Plaintiffs' case against Rabita Trust.  Causation is so important under the "effects test" that New York federal courts have held that the standard for showing proximate causation in the personal jurisdiction context is higher than the standard for proximate causation in the tort context.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (holding that causation is an element of the "effects test"); Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context).  Moreover, the federal courts have held that the standards for causation and foreseeability under the "effects test" are even more stringent when determining personal jurisdiction over international defendants.  See Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987).

Plaintiffs argue that they have sufficiently pled causation in the jurisdictional context by pleading that Rabita Trust conspired with or supported al Qaeda at a time when Rabita Trust knew that its support was assisting al Qaeda in committing terrorist activities aimed at the United States. See Pls.' Opp'n at 9. More specifically, Plaintiffs argue the following: 1) Rabita Trust provided support to al Qaeda during the 1998 time period when Bin Laden announced his fatwa on killing Americans; 2) Rabita Trust's support of al Qaeda substantially contributed to the 9/11 Attacks; and 3) Rabita Trust knew that attacks against the United States were a foreseeable consequence of its support. See id. at 7-10. Plaintiffs have the audacity to make these three arguments, yet nowhere in the Complaint do Plaintiffs allege that Rabita Trust provided support to al Qaeda in 1998, substantially contributed to the 9/11 Attacks or knew that its activities would foreseeably result in American deaths. Plaintiffs are once again making legal arguments without any factual support, which the Court should disregard.

Disposing with Plaintiffs' factually unsubstantiated arguments, the issue narrows to whether the allegations that Rabita Trust has "been involved with terrorism" and "is an AL QAEDA front" sufficiently plead an inference of proximate causation and foreseeability as to future terrorist acts against the United States, such that this Court can exercise personal jurisdiction over Rabita Trust. See 4AC at ¶¶ 521, 523. In the related case of Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp.2d 86, 105 (D.D.C. 2003), Judge Robertson discussed the importance of a temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism' … in the year 2001 … a temporal allegation that

6

> does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the court's reasoning equally applies in the personal jurisdiction context.

Since the Complaint fails to identify when Rabita Trust allegedly acted as an al Qaeda "front" and was "involved" in terrorism, it is entirely possible that such support, if it existed at all, occurred during the late 1980s or early 1990s, at a time when al Qaeda was not a designated terrorist entity and Osama bin Laden had yet to announce his ruling on killing Americans.  In fact, the Pakistani government placed Rabita Trust in isolation in 1994, making it impossible for Rabita Trust to provide any support to al Qaeda after that time period, which is at least seven years before September 11, 2001.  See Ex. 1, attached Affidavit of W. Jelaidan at ¶ 2.  If Rabita Trust served as a "front" for al Qaeda sometime prior to 1994, the Court should query could Rabita Trust reasonably foresee attacks on Americans in 2001 or reasonably anticipate being haled into a United States court for attacks on Americans in 2001?  The resounding answer should be no.  Given the heightened standards of foreseeability and proximate causation in deciding personal jurisdiction under the "effects test" in an international context, it would be a miscarriage of justice to force Rabita Trust to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation.

## IV.   PLAINTIFFS SHOULD BE DENIED JURISDICTIONAL DISCOVERY

In a last ditch effort to keep Rabita Trust in the case, Plaintiffs argue that they should be allowed to pursue jurisdictional discovery as to Rabita Trust on the grounds that Plaintiffs have alleged common ownership of Rabita Trust, Muslim World League ("MWL") and International Islamic Relief Organization ("IIRO"), and that some of the owners of those entities have maintained a continuous presence in the United States. See Pls.' Opp'n at 6-7.  The Second Circuit has held that jurisdictional discovery is appropriate only if the Plaintiff has pled in good faith a *prima facie* showing of jurisdiction.  See Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2nd Cir. 1998).  As argued above, Plaintiffs have failed to adequately plead that personal jurisdiction exists over Rabita Trust, and accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

The only allegations within the Complaint connecting Rabita Trust and MWL are that Rabita Trust initially received funding from MWL, is a subsidiary of MWL and that MWL and Rabita Trust shared three officers.  See 4AC at ¶¶ 312, 522, 525, 528.  The alleged connection between IIRO and Rabita Trust is even weaker, consisting solely of the allegation that they are sister entities.  See 4AC at ¶ 525.  The allegation that Rabita Trust is a subsidiary of MWL is plainly false, and Rabita Trust is, in fact, a distinct and separate entity from MWL and IIRO.  See Ex. 1.

For the reasons stated in Rabita Trust's Motion to Dismiss, Plaintiffs' sparse allegations of an alleged connection between Rabita Trust and MWL or IIRO fail to state a *prima facie* jurisdictional case that an agency or "mere department" relationship exists between Rabita Trust and any other Defendant in the lawsuit that may or may not have

minimum contacts with the United States.  See Jazini, 148 F.3d at 184 (holding that the forum contacts of an entity may be imputed to a foreign affiliate/subsidiary only where an agency or "mere department" relationship is shown to exist).  The Complaint allegations allegedly connecting Rabita Trust with MWL and IIRO are exactly the type of "conclusory non-fact-specific jurisdictional allegations," which the Jazini Court held, if credited, would lead to the exercise of jurisdiction over foreign entities "contrary to established law and to the understanding of the commercial community."  148 F.3d at 185.  Therefore, Plaintiffs' request for jurisdictional discovery should be denied.

## CONCLUSION

As Judge Robertson held:

> Given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that … no inferences are accepted that are unsupported by the facts set out in the 3 AC.

Burnett, 274 F. Supp.2d at 103-04.  Extra-careful scrutiny of Plaintiffs' Complaint reveals that Plaintiffs' allegations in support of personal jurisdiction over Rabita Trust are general, conclusory, and unsupported by the facts.  Accordingly, the Court should dismiss the Complaint against Rabita Trust.