UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001<br><br>This document relates to:<br><br>KATHLEEN ASHTON, et al,<br>　　　　　　　　Plaintiffs,<br>　　　v.<br><br>AL-QAEDA ISLAMIC ARMY, et al.,<br>　　　　　　　　Defendants. | MDL No. 1570 (RCC)<br><br>NO. 02 CV 6977 (RCC) |

**WAEL JELAIDAN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Wael Jelaidan*

Dated: Washington, D.C.
June 2, 2004

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

    I.      PLAINTIFFS FAILED TO PLEAD
           THAT JELAIDAN ENGAGED IN
           INTENTIONAL TORTIOUS CONDUCT
           DIRECTED AT THE UNITED STATES ......................................1

    II.     PLAINTIFFS FAIL TO PLEAD THAT
           JELAIDAN CONSPIRED WITH ANY
           CO-DEFENDANTS WHO DIRECTED
           TORTIOUS ACTIONS TOWARDS
           THE UNITED STATES .................................................................3

    III.    PLAINTIFFS FAIL TO ALLEGE A
           CAUSAL CONNECTION BETWEEN
           JELAIDAN'S CONDUCT AND
           TERRORIST ATTACKS AGAINST
           THE UNITED STATES .................................................................5

    IV.    PLAINTIFFS SHOULD BE DENIED
           JURISDICTIONAL DISCOVERY ..............................................7

CONCLUSION......................................................................................................8

## TABLE OF AUTORITIES

Burnett v. Al Baraka Inv. & Dev. Corp.,
274 F. Supp.2d 86 (D.D.C. 2003) ...............................................................................6

Chrysler Capital Corp. v. Century Power Corp.,
778 F. Supp. 1260, (S.D.N.Y. 1991)............................................................................4

Daliberti v. Iraq, 97 F. Supp.2d 38, (D.D.C. 2000) ...........................................................2

DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, (D.D.C. 2002) ...................................4

Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993) .......................................5

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, (S.D.N.Y. 1991).......................5

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
218 F. Supp.2d 369, (S.D.N.Y. 2002).........................................................................3

Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, (D.D.C. 1998) .................................2

Herbstein v. Bruetman, 768 F. Supp. 79, (S.D.N.Y. 1991) ...............................................5

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, (S.D.N.Y. 1987).................................5

In re Sumitomo Copper Litig., 120 F. Supp.2d 328, (S.D.N.Y. 2000) ..............................4

Naartex Consulting Corp. v. Watt, 722 F.2d 779, (D.C. Cir. 1983) .................................6

Papasan v. Allain, 478 U.S. 265, (1986).............................................................................2

Rein v. Socialist People's Libyan Arab Jamahiriya,
995 F. Supp. 325, (E.D.N.Y. 1998) ............................................................................2

Schenker v. Assicurazioni Genereali S.p.A., Consol.,
NO. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002).........................5

Second Amend. Found. v. U.S. Conference of Mayors,
274 F.3d 521, (D.C. Cir. 2001) ...................................................................................2

**INTRODUCTION**

Like the Complaint, Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Wael Jelaidan ("Jelaidan") and Rabita Trust's respective Motions to Dismiss ("Opposition") is no more than a series of legal conclusions without supporting facts. Plaintiffs embellish and exaggerate the actual Complaint allegations, and misconstrue and misrepresent the law and Jelaidan's legal arguments. Apparently, Plaintiffs even concede that there is no foundation for general jurisdiction over Jelaidan. The Complaint allegations fail to give rise to personal jurisdiction over Jelaidan under either the "effects test" or a conspiracy-based theory of personal jurisdiction.

**I.   PLAINTIFFS FAILED TO PLEAD THAT JELAIDAN ENGAGED IN INTENTIONAL TORTIOUS CONDUCT DIRECTED AT THE UNITED STATES**

Plaintiffs' Opposition plays fast and loose with the Complaint allegations regarding personal jurisdiction, making arguments without any basis in the Complaint. According to the Plaintiffs, in order to show that personal jurisdiction exists over Jelaidan, Plaintiffs must plead that Jelaidan knowingly assisted terrorists in committing terrorist activities directed at the United States. See Pls.' Opp'n at 9. To support this theory, Plaintiffs contend that the Complaint alleges that Jelaidan: 1) Conspired with al Qaeda terrorists; 2) Recruited al Qaeda terrorists and otherwise supported al Qaeda's mission to kill Americans; 3) Continued in his role as a key al Qaeda member through September 11, 2001; 4) Furthered al Qaeda's plots to cause injury to the United States and Americans; 5) Intentionally advanced al Qaeda's goal of causing damage to the United States; 6) Supported al Qaeda attacks on America; and 7) Provided support that substantially contributed to the September 11, 2001 attacks. See Pls.' Opp'n at 2-5, 9.

1

However, nowhere in the entire Fourth Amended Complaint will the Court find allegations corresponding to these arguments.

The only relevant allegations regarding Jelaidan are the allegations that Jelaidan aided and abetted terrorists, headed various non-governmental organizations providing financial and logistical support to al Qaeda, recruited al Qaeda soldiers, supported al Qaeda terror, helped to found al Qaeda, is a member of al Qaeda, and is the logistics chief of al Qaeda.  See 4AC at ¶¶ 312, 341, 484, 523, 524.  While these allegations arguably state some form of assistance or support to al Qaeda, they fail to address the specifics of whether or how such assistance or support aided al Qaeda in activities directed towards causing harm to the United States.  Lacking the necessary specificity and causal connection, these general and conclusory allegations along with other catch-all allegations applicable to all defendants are insufficient to support a claim of personal jurisdiction over individual defendants, such as Jelaidan.  See 4AC at ¶¶ 5, 23-24; Papasan v. Allain, 478 U.S. 265, 286 (1986) (holding that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Second Amend. Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).

Not only does Plaintiffs' jurisdictional argument lack specific factual support, but it also lacks legal support.  Both Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325, 329-30 (E.D.N.Y. 1998) and Daliberti v. Iraq, 97 F. Supp.2d 38, 52-53 (D.D.C. 2000), cases cited by the Plaintiffs, involved causes of action against sovereign governments where the respective courts found personal jurisdiction over those governments based on exceptions to the Foreign Sovereign Immunities Act.  The Daliberti Court expressly held that "the state sponsored terrorism exception 'provides an

express jurisdictional nexus based upon the victim's United States nationality.'"  97 F. Supp.2d at 48 (citations omitted).  Rein and Daliberti are distinguishable from the case herein because Jelaidan is not a government entity and Plaintiffs do not claim that personal jurisdiction exists over Jelaidan under an exception to the Foreign Sovereign Immunities Act.  Moreover, Jelaidan contends that personal jurisdiction does not exist because the Complaint allegations are too generalized and fail to specifically connect Jelaidan's activities with tortious activities directed at the United States.  Neither Rein, nor Daliberti appear to have addressed such an argument.

Plaintiffs' non-specific allegations fail to support the theory that Jelaidan knowingly engaged in activities that assisted al Qaeda in achieving its goal of committing tortious conduct within the United States.  Without such support Plaintiffs have failed to show that personal jurisdiction exists over Jelaidan.

## II. PLAINTIFFS FAIL TO PLEAD THAT JELAIDAN CONSPIRED WITH ANY CO-DEFENDANTS WHO DIRECTED TORTIOUS ACTIONS TOWARDS THE UNITED STATES

Failing to plead with specificity any connection between Jelaidan's activities and al Qaeda activities directed toward harming the United States, Plaintiffs rely on a conspiracy-based theory of personal jurisdiction.  This theory also fails because Plaintiffs have failed to allege a *prima facie* case of conspiracy against Jelaidan.  See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a *prima facie* case of conspiracy).  Most significantly, the Complaint contains no allegations that Jelaidan was:  1) A member of a "9/11 Conspiracy," or even a more general conspiracy to attack the United States; 2) Entered into any agreement to support the 9/11 Attacks on the

3

United States, or any attack against the United States for that matter; or 3) Exercised any sort of control over or entered into an agency relationship with the in-forum perpetrators of the 9/11 Attacks.  See In re Sumitomo Copper Litig., 120 F. Supp.2d 328, 340 (S.D.N.Y. 2000) (holding that *prima facie* case of conspiracy-based jurisdiction requires proof that out-of-forum defendant was a member of the conspiracy and that in-forum conspirator acted at the behest of or under the control of the out-of-forum defendant); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) (holding that *prima facie* case of conspiracy requires proof of a corrupt agreement between two or more persons).

Ironically, Plaintiffs' cited case law reveals the disfavor of the judicial system for the principle of conspiracy-based personal jurisdiction.  See DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, 20 (D.D.C. 2002) (holding that courts have applied the conspiracy theory of jurisdiction warily).  In discussing the skepticism of courts for conspiracy-based jurisdiction, the DSMC, Inc. Court noted that "courts have required *particularized* pleading of the conspiracy…. [and] mere speculation that the nonresident defendants are co-conspirators is insufficient to meet plaintiff's prima facie burden."  Id. (emphasis added).  That Jelaidan allegedly aided and abetted terrorists is hardly a particularized pleading that Jelaidan conspired with al Qaeda to commit the 9/11 atrocities or planned any attacks against the United States.  See 4AC at ¶ 312.

The Complaint is rife with vague catch-all allegations applying to all defendants and summary legal conclusions.  See 4AC at ¶ 5, 23-24.  And none of these allegations or legal conclusions suffice to confer conspiracy-based personal jurisdiction over Jelaidan. See Second Amend. Found., 274 F.3d at 524 (holding that legal conclusion that

4

defendants "conspired together" does not state a *prima facie* case of conspiracy for the purpose of personal jurisdiction); Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993) (holding that conspiracy claims should contain more than conclusory, vague or general allegations, and should provide some details of time and place and the alleged effect of the conspiracy); Schenker v. Assicurazioni Genereali S.p.A., Consol., NO. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002) (holding that non-specific allegations cannot for the basis of a conspiracy claim).

### III. PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN JELAIDAN'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Contrary to Plaintiffs' argument, causation is a linchpin for the "effects test" of personal jurisdiction, a linchpin which is missing from the Plaintiffs' case against Jelaidan. Causation is so important under the "effects test" that New York federal courts have held that the standard for showing proximate causation in the personal jurisdiction context is higher than the standard for proximate causation in the tort context. See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (holding that causation is an element of the "effects test"); Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context). Moreover, the federal courts have held that the standards for causation and foreseeability under the "effects test" are even more stringent when determining personal jurisdiction over international defendants. See Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987).

Plaintiffs argue that they have sufficiently pled causation in the jurisdictional context by pleading that Jelaidan conspired with or supported al Qaeda at a time when he

5

knew that his support was assisting al Qaeda in committing terrorist activities aimed at the United States. See Pls.' Opp'n at 9. More specifically, Plaintiffs argue the following: 1) Jelaidan provided support to al Qaeda during the 1998 time period when Bin Laden announced his fatwa on killing Americans; 2) Jelaidan's support of al Qaeda substantially contributed to the 9/11 Attacks; and 3) Jelaidan knew that attacks against the United States were a foreseeable consequence of his support. See id. at 7-10. Plaintiffs have the audacity to make these three arguments, yet nowhere in the Complaint do Plaintiffs allege that Jelaidan provided support to al Qaeda in 1998, substantially contributed to the 9/11 Attacks or knew that his activities would foreseeably result in American deaths. Plaintiffs are once again making legal arguments without any factual support, which the Court should disregard.

Disposing with Plaintiffs' factually unsubstantiated arguments, the issue narrows to whether the general allegations purportedly connecting Jelaidan with al Qaeda sufficiently plead an inference of proximate causation and foreseeability as to future terrorist acts against the United States, such that this Court can exercise personal jurisdiction. In the related case of Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp.2d 86, 105 (D.D.C. 2003), Judge Robertson discussed the importance of a temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism' … in the year 2001 … a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

6

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the court's reasoning equally applies in the personal jurisdiction context.

Since the Complaint fails to identify when Jelaidan allegedly supported al Qaeda, it is entirely possible that such support, if it existed at all, occurred during the 1980s or early 1990s, at a time when al Qaeda was not a designated terrorist entity and Osama bin Laden had yet to announce his ruling on killing Americans.  In fact, the Complaint makes specific reference to Jelaidan and bin Laden joining together in December of 1979 and fighting against the Soviets in Afghanistan in the 1980s, both events occurring many, many years before September 11, 2001.  See 4AC at ¶ 524.  Notably, there are no other temporal allegations regarding Jelaidan in the entire Complaint.  If Jelaidan recruited al Qaeda members many years before September 11, 2001 and then dropped out of the picture, the Court should query could Jelaidan reasonably foresee attacks on Americans in 2001 or reasonably anticipate being haled into a United States court for attacks on Americans in 2001?  The resounding answer should be no.  Given the heightened standards of foreseeability and proximate causation in deciding personal jurisdiction under the "effects test" in an international context, it would be a miscarriage of justice to force Jelaidan to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation.

## IV. PLAINTIFFS SHOULD BE DENIED JURISDICTIONAL DISCOVERY

Although Plaintiffs' Opposition contains an argument regarding jurisdictional discovery, Plaintiffs do not appear to be seeking jurisdictional discovery from Jelaidan; Plaintiffs jurisdictional discovery argument focuses entirely on Rabita Trust.  See Pls.'

7

Opp'n at 6-7.  To the extent that Plaintiffs are seeking jurisdictional discovery from Jelaidan, Defendant hereby incorporates by reference Rabita Trust's Reply Brief argument on jurisdictional discovery.  Plaintiffs request should be denied.

## **CONCLUSION**

As Judge Robertson held:

> Given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that … no inferences are accepted that are unsupported by the facts set out in the 3 AC.

Burnett, 274 F. Supp.2d at 103-04.  Extra-careful scrutiny of Plaintiffs' Complaint reveals that Plaintiffs' allegations in support of personal jurisdiction over Jelaidan are general, conclusory, and unsupported by the facts.  Accordingly, the Court should dismiss the Complaint against Wael Jelaidan.