UNITED STATES DISTRICT COURT
SOUTHERN DISTRIC OF NEW YORK

| | | |
|---|---|---|
| In re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL 1570 (RCC) |
| KATHLEEN ASHTON et al | ) ) ) | |
| Plaintiffs, v. | ) ) ) ) | 02 CV 6977 (RCC) |
| AL QAEDA ISLAMIC ARMY  et al | ) ) ) ) | |
| Defendants | ) ) | |

**REPLY MEMORANDUM OF DEFENDANTS SALEH ABDULLAH KAMEL
AND AL BARAKA INVESTMENT & DEVELOPMENT CORPORATION
IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
JURISDICTION AND FOR FAILURE TO STATE A CLAIM
<u>FOR WHICH RELIEF CAN BE GRANTED</u>**

Martin McMahon & Associates
1150 Connecticut Avenue, NW
Suite 900
Washington, D.C. 20036
(202) 862-4361

*Attorneys for Defendants
Saleh Abdullah Kamel and
Al Baraka Investment & Development Corp.*

**TABLE OF CONTENTS**

Page Number

The Plaintiffs' Characterization of the Facts In Their Brief
Exaggerates The Specific Facts Actually Alleged In the Complaint . . . . . . . . . . .  2

1.  The Facts Actually Alleged State Only That Defendants
    Became Minority Shareholders in Middle East Banks in the 1980s,
    and There Are No Factual Allegations That Defendants Provided
    Funding to Terrorists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

2.  Corporate Affiliates Are Not Liable For the Acts of Related
    Companies' Former Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

The Plaintiffs Proposed Amendments Are Also Legally Inadequate
And Likewise Fail To State A Claim for Which Relief Can Be Granted. . . . . . . .  9

CONCLUSION:  The Complaint Against Saleh Kamel and Al Baraka
Investment & Development Corp. Should be Dismissed. . . . . . . . . . . . . . . . . . .  10

## TABLE OF AUTHORITIES

Page Number

**Federal Cases:**

American Express Co. Shareholder Litigation, 39 F.3d 395
(2nd Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        10

Boim v. Quranic Literacy Institute, 291 F.3d 1000 (7th Cir. 2002) . . . .        8

Briscoe v. LaHue, 663 F.2d 713 (7th Cir. 1981), *aff'd*, 460 U.S.
325 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        1

Burnett v. Al Baraka Investment & Development Corp., 274 F.Supp.
2d 86 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        2, 3, 6

Casey v. Corson and Grumman Company, 221 F.2d 51 (D.C. Cir. 1955)        9

Dwares v. City of New York, 985 F.2d 94 (2nd Cir. 1993). . . . . . . . . . .        1

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2nd Cir.),
*cert. denied,* 513 U.S. 1079 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . .        1, 9

Galeri Gmurzynka v. Hutton, 257 F.Supp.2d 621 (S.D.N.Y. 2003,
*aff'd,* 355 F.2d 206 (2nd Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . .        1

Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2nd Cir. 1995). . . . . . .        1

North South Finance Corp. v. Al-Turki, 100 F.3d 1046 (2nd Cir. 1996) .        8

Papasan v. Allain, 478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . .        1

Tasso v. Platinum Guild Int'l, 1997 WL 16066 (S.D.N.Y., Jan. 16, 1997).        7

**State Cases:**

Weissich v. County of Marin, 274 Cal.Rptr. 342, 224 Cal.App.3d
1069 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        9

**Other Authorities:**

Restatement (Third) Foreign Relations §§402, 403 . . . . . . . . . . . . . . . .        7

Restatement (Second) Torts §433. . . . . . . . . . . . . . . . . . . . . . . . . . . .        9

*May It Please the Court*:

The Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss confirms that the Motion to Dismiss of Saleh Kamel and Al Baraka Investment & Development Corp. must be granted. The Plaintiffs' brief, which rests entirely on an argumentative legal conclusion and not the facts actually alleged in the Complaint, comes down to this argument: "[F]or many years Saleh Abdullah Kamel and his company, Al Baraka Investment and Development Corporation supported international terrorism by providing financial support and assistance to al Qaeda. . . . [by] providing the financial infrastructure through which Osama bin Laden and al Qaeda ran their worldwide terrorist operations." (Ashton Plaintiffs' Memorandum of Law in Opposition at 1 (May 14, 2004)(hereinafter "*Plaintiffs' Mem.*")). As demonstrated herein, the facts actually alleged in the Complaint[1] not only fail to support this argument, they contradict it as well.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2nd Cir.), *cert. denied,* 513 U.S. 1079 (1994)("[T]he well pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not." ).[2] The Plaintiffs' brief reveals an inadequate legal claim based on unwarranted deductions.

---

[1] All references to the "Complaint" are references to the Fourth Amended Complaint.

[2] *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2nd Cir. 1995)(conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purpose of ruling on a motion to dismiss); *Dwares v. City of New York,* 985 F.2d 94, 100 (2nd Cir. 1993)(conspiracy claims should contain more than conclusory, vague or general allegations, and should provide some details of time and place and the alleged effect of the conspiracy); *Galeri Gmurzynka v. Hutton*, 257 F.Supp.2d 621, 631 (S.D.N.Y. 2003)(same), aff'd 355 F.2d 206 (2nd Cir. 2004).

Defendants ask the Court to look skeptically at the "facts" described by the Plaintiffs in their brief and to look instead to the "facts" actually alleged in the Complaint, for as will be documented in this Reply Memorandum, there is a material variance between the two. Furthermore, the amendments to the Fourth Amended Complaint now proffered by the Plaintiffs suffer from the same legal inadequacy.

In *Burnett v. Al Baraka Investment & Development Corp.*, 274 F.Supp.2d 86, 103 (D.D.C. 2003), Judge Robertson correctly cautioned that ""given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations to ensure that . . . no inferences are accepted that are unsupported by the facts set out in the [Complaint]." The facts alleged in the Complaint and relied upon by the Plaintiffs' for their legal claim of supporting terrorism simply cannot pass this scrutiny.

### The Plaintiffs' Characterization of the Facts In Their Brief Exaggerates The Specific Facts Actually Alleged In the Complaint

### 1. The Facts Actually Alleged State Only That Defendants Became Minority Shareholders in Middle East Banks in the 1980s, and There Are No Factual Allegations That Defendants Provided Funding to Terrorists

According to facts actually alleged in the Complaint, Defendants Saleh A. Kamel and Al Baraka Investment & Development Corp. are shareholder investors in banks located in Arab and Islamic countries. More specifically, in 1984, Saleh A. Kamel and Al Baraka Investment & Development Corp. directly or indirectly became minority shareholders in various banks in The Sudan, including Al Shamal Islamic Bank, Faisal Islamic Bank, Tadamon Islamic Bank, and National Development Bank. From the fact that Defendants Saleh Kamel and Al Baraka Investment & Development Corp. became minority shareholders in these banks in 1984, the Plaintiffs ask the Court to reach a conclusion that Defendants supported international terrorism by providing financial

support and assistance to al Qaeda. . . . [by] providing the financial infrastructure through which Osama bin Laden and al Qaeda ran their worldwide terrorist operations," because *seven years later in 1991* Osama bin Laden allegedly invested $50 million in one of those banks, Al Shamal Islamic Bank, and companies established by Osama bin Laden had accounts at al Shamal Islamic Bank while bin Laden was in The Sudan and money in those accounts was used for purposes of terrorism. Bin Laden left The Sudan in 1996.

No court would impose liability on persons merely because they were a minority shareholder in a bank that was later used by criminals to deposit their money, write checks, make withdrawals, transmit funds, or assuming that the allegation that bin Laden invested $50 million in al Shamal Bank is true, that a subsequent shareholder was a criminal. If that were to become the law, courts will be looking at lawsuits against the shareholders of Florida Sun Trust Bank, Hong Kong Shanghai Bank, and Citibank, as well as banks in Germany, where the hijackers and those who provided them with funds had accounts that were used specifically in connection with murder of the Plaintiffs. *Fourth Amended Complaint ¶*233, 240. The illogic in that proposition is supported by Judge Robertson's ruling in his July 25, 2003 opinion in *Burnett v. Al Baraka Investment & Development Corp.,* 274 F.Supp2d 86, 109 (D.D.C. 2003), holding that a bank is <u>not</u> liable for supporting or sponsoring terrorism merely because terrorists or persons supporting terrorism use the bank as a "funnel" to hold and move money through the bank "in the form of deposits, withdrawals, check clearing services, or any other routine banking service." And if a bank is not liable for supporting or sponsoring terrorism because a terrorist uses its facilities, it is incomprehensible that a minority shareholder is liable for sponsoring terrorism in such circumstances. Furthermore, no court would find

that a defendant knowingly provided "substantial assistance" to a wrongdoer, a legal predicate for aiding and abetting liability, based on these facts either.

It is important to note what the Complaint does not allege. There are no allegations that defendant Al Baraka Investment and Development Corp. provides "banking services." There are no allegations that it is a "bank." Al Baraka Investment & Development Corp. is what the Complaint describes: a holding company investment vehicle in the financial services sector for Dallah Albaraka Group, LLC, its parent holding company. Nor are there any allegations that Saleh Kamel was involved in the day-to-day operations of the Sudanese banks or served as a director or officer in those banks, and we represent to the court that if such allegations were made, they would be false.[3]

The only other factual allegation in the Complaint that is part of the Plaintiffs' failed effort to link Saleh Kamel and Al Baraka Investment & Development to funding terrorism fails to pass scrutiny as well. The Complaint alleges that a Saudi-based charity, Al-Haramain, which allegedly supports terrorism, "maintained accounts at Al Baraka Bank in Saudi Arabia" and that in 1998 money was transferred to Al Haramain's account "at the Deposit Bank, Sarajevo, from the 'main' account, sent from Saudi Arabia via the Deutsch Bank and the Albaraka Bank in Turkey" for the purpose of supporting terrorism in Bosnia. *Fourth Amended Complaint* ¶¶585, 598. These allegations state no more than a third party used a subsidiary of Al Baraka Investment & Development Corp. to engage in routine banking transactions. Once again, the Plaintiffs argue in their brief far more

---

[3]   We note that Plaintiffs in their brief make an argument that cannot be supported by an allegation in the Complaint. At *Plaintiffs' Mem.* at 3, the brief argues, "Kamel's active participation in Al Shamal's business and banking affairs is an important factor supporting jurisdiction and ultimately, liability in this case." There are no facts alleged in the Complaint to support this argument, nor is the argument even made in the Complaint because there is no factual basis for the argument.

4

than what they allege factually in their Complaint.  At three places in the *Plaintiffs' Mem.* at pages 4, 7, and 11, Plaintiffs *argue* that "Al Baraka banks provided funding to Al Haramain, a charity known to have provided funds to al Qaeda."   The specific paragraphs of the Fourth Amended Complaint cited by the Plaintiffs for their argument (¶¶585 and 598) and just quoted above, contradict that argument because **these paragraphs do not allege that Al Baraka Banks provided any funding to Al Haramain or to anyone else to support terrorism**.  They allege only that Al Haramain had accounts at Al Baraka banks and that Al Haramain transferred funds from those accounts.  This is exactly what Judge Robertson held does not state a claim for which relief can be granted.

This illumination of the material variance between what Plaintiffs argue as "facts" in their brief and the facts actually alleged in the Complaint undermines the legal conclusion the Plaintiffs ask the Court to reach when they argue, "The Fourth Amended Complaint clearly alleges that Kamel and ABIDC provided both money and financial services to al Qaeda and thereby provided material support to a terrorist organization." *Plaintiffs Mem.* at 10.  There is absolutely no such allegation anywhere in the Complaint that either Saleh Kamel or Al Baraka Investment & Development Corp. provided any money or financial services to al Qaeda or to others allegedly supporting Al Qaeda.  Plaintiffs' argument is factually barren, and it is in fact contradicted by the allegations of the Complaint only shows that these two Defendants were merely shareholders in banks.

The Plaintiffs want the Court to draw an unreasonable inference that Defendants are the proximate cause of the murders of the Plaintiffs on September 11, 2001 from the fact that Saleh Kamel and Al Baraka Investment & Development Corp. became minority

5

shareholders in Al Shamal Islamic Bank in 1984.  The inference is unreasonable because the 1984 shareholding is six years prior to the establishment of a "radical Islamic government in Sudan, six years prior to the formation of al Qaeda, and eight years before Osama bin Laden moved his operations to the Sudan. It is fourteen years before bin Laden issued his 1998 "fatwah" directed at citizens of the United States and it is seventeen years before the heinous murders of the Plaintiffs by Al Qaeda.  The Plaintiffs' argument consists of only unwarranted deductions and legal conclusions.

### 2.  Corporate Affiliates Are Not Liable For the Acts of Related Companies' Former Employees

A final "example" from the Complaint also fails to support the Plaintiffs' legal argument.  In their brief, Plaintiffs argue, "Defendants' support of al Qaeda culminated in direct monetary support to specific September 11th al Qaeda terrorists when Omar Al-Bayoumi, the Director of Finance of ABIDC wholly-owned subsidiary, paid the rent for the San Diego apartment of two of the nineteen hijackers in the months leading up to September 11th.  *Plaintiffs Mem.* at 1-2.  As paragraphs 589-591 of the Fourth Amended Complaint *actually allege*, al Bayoumi was employed prior to 1998 by Dallah Avco, an aviation services subsidiary of Dallah Albaraka Group LLC, as an Assistant to the finance director of Dallah Avco.  Even if the Court accepts the allegation as true that al Bayoumi paid the rent of two September 11 hijackers while they were in San Diego, Judge Robertson's Opinion of July 25, 2003 in  *Burnett v. Al Baraka Investment & Development Corp.,* 274 F.Supp2d 86, 109 & n.18 (D.D.C. 2003) held, citing precedent from this Court, that this allegation is legally immaterial:

> The [Third Amended Complaint] asserts claims against members of the al-Rajhi family who are bank officers, but it makes no allegations that would support an inference that any al-Rajhi family member was acting within

6

>the scope of his bank employment when he allegedly provided support to al Qaeda, as would be necessary to impose vicarious liability on the bank for the acts of its officers and employees.  See e.g., Tasso v. Platinum Guild Int'l., 1997 WL 16066 at *6 (SDNY January 16, 1997).   (Slip Op.. at 46 & n.18).

The defendants Saleh A. Kamel and Al Baraka Investment & Development Corp. are even more remote from the Plaintiffs' cause of action than al Rajhi family members because al Bayoumi was neither an employee of Saleh Kamel or Al Baraka Investment & Development Corp.  He is alleged to have been an employee of a subsidiary of Dallah Albaraka Group, LLC.

The legal inadequacy of the Plaintiffs' allegations demonstrates that not only is there no viable legal claim that Saleh Kamel or Al Baraka Investment & Development Corp. aided and abetted an act of international terrorism or sponsored international terrorism, but they establish that there is no viable legal claim that Saleh Kamel or Al Baraka Investment & Development Corp. are the proximate cause of the Plaintiffs' injuries.  This latter point implicates not only the merits of the substantive legal claims against Saleh Kamel and Al Baraka Investment & Development Corp., but it also implicates the subject-matter jurisdiction of this Court because principles of international law limit the ability of a nation to legislate respecting extra-territorial conduct of foreign nationals to conduct that "has a substantial, direct and foreseeable effect upon or in its territory." *Restatement (Third) of Foreign Relations* §§402(1)(c) and 403(2)(a) (1986).  The conduct of Saleh Kamel and Al Baraka Investment & Development Corp. making investments in and becoming shareholders of Middle Eastern banks in the 1980s has anything but "a substantial, direct and foreseeable effect" of the United States, and to construe the AntiTerrorism Act or any other statute to apply to the alleged conduct of

7

these two Defendants would provide a construction on the statute that exceeds the prescriptive power of Congress under international law. *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1050-52 (2nd Cir. 1996)(affirming dismissal of RICO claims under Rule 12(b)(1) because extraterritorial conduct had only "remote and indirect effects in the United States do not qualify as "substantial.").[4]

The Plaintiffs' legal analysis of the Seventh Circuit's decision in *Boim v. Quranic Literacy Institute,* 291 F.3d 1000 (7th Cir. 2002) fails to address the legal inadequacy of the facts in their Complaint.  If the Justice Department advises the Seventh Circuit in *Boim* that Congress intended to impose liability "to the full reaches of traditional tort law," *Boim*, 291 F.3d at 1010, and it is beyond cavil that traditional tort law includes the requirements of foreseeable effect, a relationship, directness/remoteness, and other attributes of the proximate cause question, this Court cannot ignore that body of law, which is what the Plaintiffs appear to be suggesting by their argument that the "causal chain of terrorism" is infinite in its reach.  As detailed in Defendants' opening memorandum, the factual allegations of the Complaint pertaining to Saleh Kamel and Al Baraka Investment & Development Corp., describe at best allege a distant, remote and indirect relationship between the Defendants and the murders of the Plaintiffs separated from one another in both time (17 years) and space (relationships involving shareholdings

---

[4] Plaintiffs criticize Defendants' citation to the Second Circuit's opinion in *North South Finance* case by arguing that Congress clearly intended to apply the AntiTerrorism Act extraterritorially. *Plaintiffs Mem.* at 16. Plaintiffs have missed the point. Defendants never contended that the AntiTerrorism Act did not apply extraterritorially. Defendants have always argued that principles of international law found in *Restatement (Third) §402 and 403,* limit the prescriptive jurisdiction of Congress, and that a Court cannot construe a statute that has extraterritorial application in a manner that would exceed the prescriptive jurisdiction of Congress. The *effects* requirement of *North South Finance*, which embraces the proximate cause requirements of a direct and foreseeable effect, is a critical limit on the prescriptive power of Congress even when Congress intends to apply the law extraterritorially. The *North South Finance* case recognizes that when a U.S. statute is applied extraterritorially, proximate cause becomes a jurisdictional limit on the construction of the statute that denies the court subject-matter jurisdiction over the claim.

in entities that have some connection to someone else who has an alleged connection to the murders of the Plaintiffs).[5]

The Defendants' motion to dismiss is not premised only upon a failure to meet liberal notice pleading requirements, as Plaintiffs' suggest in their brief. *Plaintiffs' Mem.* at 2. The Defendants' argument is more compelling: that the factual allegations of the Complaint contradict and fail to support the conclusory legal allegations regarding causation and support for terrorism. There are no factual allegations that these Defendants provided any kind of material support for terrorism. There are no allegations that these Defendants conspired with anyone and no effort is made to argue a conspiracy in Plaintiffs' brief. The Plaintiffs' Complaint and it the argument of its brief is premised only on a theory that because these Defendants became minority shareholders in Middle Eastern banks in 1980s and that a former employee of another subsidiary of the parent company of Al Baraka Investment & Development Corp. allegedly paid rent for two of the hijackers, these two Defendants aided and abetted terrorists. These allegations fail to state a claim for which relief can be granted.

### The Plaintiffs Proposed Amendments Are Also Legally Inadequate And Likewise Fail To State A Claim for Which Relief Can Be Granted

Recognizing the legal inadequacy of the Fourth Amended Complaint with respect to Saleh Kamel and Al Baraka Investment & Development Corp., the Plaintiffs proposed to add ten new allegations, which like the allegations of the current Complaint, fail

---

[5] *Casey v. Corson and Grumman Company*, 221 F.2d 51, 52 (D.C. Cir. 1955)( "too remote . . .in time, place and circumstances to be a proximate cause of plaintiff's injuries); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2nd Cir. 1994)(5 year period of time between defendant's actions and plaintiffs injury suggests external factors were a substantial cause); *Weissich v. County of Marin*, 274 Cal.Rptr. 342, 351-52, 224 Cal.App.3d 1069, 1083-84 (1991)(*dicta:* eleven year lapse of time between the alleged negligent misrepresentation and the murder may be the case where the absence of proximate cause can be determined as a matter of law); *Restatement (Second) Torts*, §433(c) and *comment f* (1965)(distance of time important factor in whether actor's conduct is proximate cause of injury).

miserably to demonstrate that Saleh Kamel and Al Baraka Investment & Development provide support for terrorism. These new allegations contain the same type of inadequate factual allegations as the Fourth Amended complaint that try unsuccessfully to connect indirectly these Defendants to the murders of the Plaintiffs in 2001 by reference to historical events remote in time and place from September 11, 2001. The amendments are futile and leave to amend should be denied.[6]

For the reasons explained in Defendants' Memorandum in Opposition to Plaintiffs' Motion To Amend the Fourth Amended Complaint filed contemporaneously, these allegations likewise fail to state a claim for which relief can be granted.

## CONCLUSION

The Complaint fails to state a claim for which relief can be granted against Saleh Kamel and Al Baraka Investment & Development Corp., and the proposed amendments to the Complaint fail to state a claim against them. The Court lacks subject-matter jurisdiction over the claims against Saleh Kamel and Al Baraka Investment & Development Corp. The Complaint should be dismissed with prejudice.

Dated: June 4, 2004.                            Respectfully submitted,

                                                      Martin McMahon & Associates
                                                    1150 Connecticut Avenue, NW
                                                    Suite 900
                                                    Washington, D.C. 20036
                                                    (202) 862-4361

                                                    *Attorneys for Defendants*
                                                    *Saleh Abdullah Kamel and*
                                                    *Al Baraka Investment & Development Corp.*

---

[6] "Moreover, leave to amend may be denied if the amendment would be futile. [Citations omitted]. Appellants have not indicated how they could satisfy RICO's proximate cause requirement, and it is hardly self-evident that they could transform the facts pleaded into a sufficient allegation of proximate injury to American Express." *In re American Express Co. Shareholder Litigation,* 39 F.3d 395, 402 (2nd Cir. 1994)