UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001<br><br>This document relates to:<br><br>THOMAS BURNETT, SR., et al,<br><br>                    Plaintiffs,<br>        v.<br><br>AL BARAKA INVESTMENT & DEVELOPMENT CORP., et al.,<br><br>                    Defendants. | MDL No. 1570 (RCC)<br><br>NO. 03 CV 9849 (RCC) |

**RABITA TRUST'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Rabita Trust*

Dated: Washington, D.C.
June 2, 2004

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

    I.      THE LAW OF THE CASE DOCTRINE
           BARS PLAINTIFFS' NEGLIGENCE AND
           RICO CLAIMS AGAINST RABITA TRUST ............................. 1

    II.     PLAINTIFFS FAILED TO PLEAD
           THAT RABITA TRUST ENGAGED IN
           INTENTIONAL TORTIOUS CONDUCT
           DIRECTED AT THE UNITED STATES .................................... 2

    III.    PLAINTIFFS FAIL TO PLEAD THAT
           RABITA TRUST CONSPIRED WITH
           ANY CO-DEFENDANTS WHO DIRECTED
           TORTIOUS ACTIONS TOWARDS
           THE UNITED STATES ................................................................ 4

    III.    PLAINTIFFS FAIL TO ALLEGE A
           CAUSAL CONNECTION BETWEEN
           RABITA TRUST'S CONDUCT AND
           TERRORIST ATTACKS AGAINST
           THE UNITED STATES. ............................................................... 6

    IV.    PLAINTIFFS SHOULD BE DENIED
           JURISDICTIONAL DISCOVERY ............................................. 8

CONCLUSION ............................................................................................ 9

## TABLE OF AUTHORITIES

Bancoult v. McNamara, 214 F.R.D. 5, (D.D.C. 2003) ..........................................8

Burnett v. Al Baraka Inv. & Dev. Corp.,
274 F. Supp.2d 86 (D.D.C. 2003) ...................................................................1

Daliberti v. Iraq, 97 F. Supp.2d 38, (D.D.C. 2000) .............................................3

Degulis v. LXR Biotechnology, Inc.,
928 F. Supp. 1301 (S.D.N.Y. 1996)................................................................1

Dooley v. United Tech. Corp., 786 F. Supp. 65, (D.D.C. 1992) ..........................5

DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, (D.D.C. 2002) ......................4

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, (S.D.N.Y. 1991)..........6

Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, (D.D.C. 1998) ....................2

Herbstein v. Bruetman, 768 F. Supp. 79, (S.D.N.Y. 1991) .................................7

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, (S.D.N.Y. 1987)......................7

Naartex Consulting Corp. v. Watt, 722 F.2d 779, (D.C. Cir. 1983) ....................6

Palestine Info. Office v. Shultz, 853 F.2d 932, (D.C. Cir. 1988) ........................2

Papasan v. Allain, 478 U.S. 265, (1986)..............................................................3

Pugh v. Socialist People's Libyan Arab Jamahiriya,
290 F. Supp.2d 54 (D.D.C. 2003) ...................................................................4

Rein v. Socialist People's Libyan Arab Jamahiriya,
995 F. Supp. 325, (E.D.N.Y. 1998) ................................................................3

Second Amend. Found. v. U.S. Conference of Mayors,
274 F.3d 521, (D.C. Cir. 2001) .......................................................................3

Ungar v. Islamic Republic of Iran, 211 F. Supp.2d 91, (D.D.C. 2002) ...............5

United States v. Philip Morris, Inc., 116 F. Supp.2d 116, (D.D.C. 2000) ...........5

**INTRODUCTION**

Like the Complaint, Plaintiffs' Memorandum of Law in Opposition to Defendant Rabita Trust's Motion to Dismiss ("Opposition") is no more than a series of legal conclusions without supporting facts. Plaintiffs embellish and exaggerate the actual Complaint allegations, and misconstrue and misrepresent the law and Rabita Trust's legal arguments. Apparently, Plaintiffs even concede that there is no foundation for general jurisdiction over Rabita Trust. The Complaint allegations fail to give rise to personal jurisdiction over Rabita Trust under either the "effects test" or a conspiracy-based theory of personal jurisdiction, and therefore the Complaint against Rabita Trust must be dismissed.

**I.    THE LAW OF THE CASE DOCTRINE BARS PLAINTIFFS' NEGLIGENCE AND RICO CLAIMS AGAINST RABITA TRUST**

Plaintiffs' briefly argue, in a footnote, that this Court should disregard the law of the case doctrine and hold that Judge Robertson's decision in <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 274 F. Supp.2d 86 (D.D.C. 2003) does not bar Plaintiffs' negligence and RICO claims against Rabita Trust. <u>See</u> Pls.' Opp'n at 2, n. 1. Plaintiffs rely solely on <u>Degulis v. LXR Biotechnology, Inc.</u>, 928 F. Supp. 1301 (S.D.N.Y. 1996), which actually held that the law of the case doctrine "counsels against reopening issues previously decided." 928 F. Supp. at 309. The <u>Degulis</u> Court held that the law of the case doctrine should apply to a transferee court unless one of the following compelling circumstances exist: there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." <u>Id.</u> None of these compelling circumstances here, and therefore the Court should dismiss Plaintiffs' negligence and RICO claims against Rabita Trust under the law of the case doctrine.

1

## II. PLAINTIFFS FAILED TO PLEAD THAT RABITA TRUST ENGAGED IN INTENTIONAL TORTIOUS CONDUCT DIRECTED AT THE UNITED STATES

Perhaps realizing the weakness of their "effects test" argument on the merits, Plaintiffs' Opposition attempts to persuade this Court to lower the threshold of its minimum contacts analysis as a matter of public policy. See Pls.' Opp'n at 7. While Plaintiffs' cited case law supports the relaxation of minimum contacts scrutiny under certain circumstances, those circumstances have been limited to statutes implementing policy areas specifically committed to the political branches of government, such as foreign policy. See Palestine Info. Office v. Shultz, 853 F.2d 932, 942 (D.C. Cir. 1988); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 22 (D.D.C. 1998). By contrast, Plaintiffs argue that minimum contacts scrutiny should be relaxed in the case herein because of "the cold-blooded manner in which U.S. residents were attacked…" Pls.' Opp'n at 7. A request for a relaxation of due process standards on the basis of emotional appeal hardly equates with the relaxation of due process out of respect for the Constitutional division of power among the three branches of government.

Turning to the merits of Plaintiffs' minimum contacts argument, Plaintiffs contend that personal jurisdiction exists over Rabita Trust under the "effects test" because Plaintiffs have pled that Rabita Trust knowingly and purposefully provided direct support to al Qaeda and bin Laden to assist in attacks against the United States. See Pls.' Opp'n at 14. To support this theory, Plaintiffs' contend that the Complaint alleges that Rabita Trust: 1) Is one of the charities that financed and supported al Qaeda; 2) Was usurped by Islamist extremists as a means to raise funds and travel the world easily and efficiently; 3) Was used to mask money transfers and provide cover for terrorist operatives; 4)

2

Provided direct support to Osama bin Laden and al Qaeda; and 5) Knew that the purpose of its support was to assist in attacks against the United States.  See Pls.' Opp'n at 11, 13-14.  However, nowhere in the entire Third Amended Complaint will the Court find allegations corresponding to these arguments.

The only specific Complaint allegation arguably alleging a connection between Rabita Trust and al Qaeda is the allegation that Rabita Trust is an al Qaeda front.  See 3AC at ¶ 270.  This non-specific, conclusory allegation does not equate with even a general allegation that Rabita Trust assisted al Qaeda in committing terrorist activities directed towards the United States, let alone provide any of the necessary specifics on how Rabita Trust assisted al Qaeda's terrorist activities.  These conclusory allegations and other general, catch-all allegations applicable to all defendants are insufficient to support a claim of personal jurisdiction over individual defendants, such as Rabita Trust. See 3AC at ¶¶ 11, 151, 153, 236, 270, 641-717; Papasan v. Allain, 478 U.S. 265, 286 (1986) (holding that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Second Amend. Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).

Not only is Plaintiffs' jurisdictional argument unsupported by the Complaint allegations, but it is unsupported by Plaintiffs' cited case law as well.  Both Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325, 329-30 (E.D.N.Y. 1998), and Daliberti v. Iraq, 97 F. Supp.2d 38, 52-53 (D.D.C. 2000), cases cited by Plaintiffs, involved causes of action against sovereign governments where the respective courts found personal jurisdiction based on exceptions to the Foreign Sovereign Immunities Act. The Daliberti Court expressly held that "the state sponsored terrorism exception

3

'provides an express jurisdictional nexus based upon the victim's United States nationality.'" 97 F. Supp.2d at 48 (citations omitted).  Rein and Daliberti are distinguishable from the case herein because Rabita Trust is not a government entity and Plaintiffs do not claim that personal jurisdiction exists over Rabita Trust under an exception to the Foreign Sovereign Immunities Act.  Moreover, Rabita Trust contends that personal jurisdiction does not exist because the Complaint allegations are too generalized and fail to specifically connect Rabita Trust's activities with tortious activities directed at the United States.  Rein, Daliberti, and Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp.2d 54 (D.D.C. 2003) all appear not to have addressed such an argument.

Plaintiffs' non-specific allegations fail to support the theory that Rabita Trust knowingly assisted al Qaeda in achieving its goal of committing tortious conduct within the United States.  Without such support Plaintiffs have failed to show that personal jurisdiction exists over Rabita Trust.

### III. PLAINTIFFS FAIL TO PLEAD THAT RABITA TRUST CONSPIRED WITH ANY CO-DEFENDANTS WHO DIRECTED TORTIOUS ACTIONS TOWARDS THE UNITED STATES

Failing to plead any connection between Rabita Trust's activities and al Qaeda activities directed toward harming the United States, Plaintiffs rely on a conspiracy-based theory of personal jurisdiction.  This theory also fails because Plaintiffs have failed to allege a *prima facie* case of conspiracy against Rabita Trust.  See DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, 20 (D.D.C. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a *prima facie* case of conspiracy).  Establishing conspiracy-based jurisdiction under District of Columbia Circuit law is difficult because

4

the D.C. Circuit disfavors the idea of conspiracy-based personal jurisdiction.  See Id. at 20 (holding that courts have applied the conspiracy theory of jurisdiction warily); United States v. Philip Morris, Inc., 116 F. Supp.2d 116, 122 (D.D.C. 2000) (holding that conspiracy-based personal jurisdiction has only been recognized in cases where the defendant did not contest the existence of the conspiracy).  In discussing the skepticism of D.C. Circuit courts for conspiracy-based jurisdiction, the DSMC, Inc. Court noted that "courts have required *particularized* pleading of the conspiracy…. [and] mere speculation that the nonresident defendants are co-conspirators is insufficient to meet plaintiff's prima facie burden."  273 F. Supp.2d at 20 (emphasis added). The plaintiff "must allege specific acts connecting [the] defendant with the forum."  Id.

      Plaintiffs' Complaint allegations do anything but plead with particularity Rabita Trust's agreement with and participation in a 9/11 Conspiracy.  Just like the Plaintiffs in Ungar v. Islamic Republic of Iran, 211 F. Supp.2d 91, 99-100 (D.D.C. 2002), the Plaintiffs herein fail to plead any link between Rabita Trust's alleged support and the 9/11 attacks specifically.  Moreover, as with the Ghanimat group in Ungar, there are no allegations that Rabita Trust, at the end of a long "chain" conspiracy, knew of the existence of a larger 9/11 Conspiracy.  See id. at 100.  Compare with Dooley v. United Tech. Corp., 786 F. Supp. 65, 78 (D.D.C. 1992) (finding conspiracy-based jurisdiction where plaintiff set forth in great detail the allegations of conspiracy and each defendant's alleged involvement).  Rather, the allegations Plaintiffs cite to in support of the existence of conspiracy-based personal jurisdiction consist of conclusory bald speculations of a conspiracy applicable to all defendants and specific allegations against Rabita Trust, which have no bearing on the existence of a 9/11 Conspiracy.  See Pls.' Opp'n at 18-20.

None of these allegations suffice to confer conspiracy-based personal jurisdiction over Rabita Trust.  See Second Amend. Found., 274 F.3d at 524 (holding that legal conclusion that defendants "conspired together" does not state a *prima facie* case of conspiracy for the purpose of personal jurisdiction); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983) (holding that bald speculation of conspiracy does not establish personal jurisdiction); DSMC, Inc., 273 F. Supp.2d at 20 (holding that bare allegations of conspiracy does not suffice to establish personal jurisdiction).

### III. PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN RABITA TRUST'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Regardless of whether Plaintiffs argue that personal jurisdiction exists under the "effects test" or under conspiracy-based personal jurisdiction, Plaintiffs fail to account for proximate causation as a critical element of analysis under both standards.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (holding that causation is an element of the "effects test").  It is not enough that Plaintiffs plead that Rabita Trust directly supported al Qaeda or some general al Qaeda Conspiracy.  Plaintiffs must also plead that Rabita Trust's alleged support foreseeably resulted in al Qaeda or an al Qaeda conspiracy committing tortious acts in the United States.

In Burnett, 274 F. Supp.2d at 105, Judge Robertson discussed the importance of a temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism' … in the year 2001 … a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

6

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the court's reasoning equally applies in the personal jurisdiction context.

Since the Complaint fails to identify when Rabita Trust allegedly supported al Qaeda, it is entirely possible that such support, if it existed at all, occurred during the late 1980s and early 1990s, at a time when al Qaeda was not a designated terrorist entity and Osama bin Laden had yet to announce his ruling on killing Americans. In fact, the Pakistani government placed Rabita Trust in isolation in 1994, making it impossible for Rabita Trust to provide any support to al Qaeda after that time period, which is at least seven years before September 11, 2001. See Ex. 1 at ¶ 2. If Rabita Trust served as a "front" for al Qaeda sometime prior to 1994, the Court should query could Rabita Trust reasonably foresee attacks on Americans in 2001 or reasonably anticipate being haled into a United States court for attacks on Americans in 2001? The resounding answer should be no. Given the heightened standards of foreseeability and proximate causation in deciding personal jurisdiction under the "effects test" in an international context, it would be a miscarriage of justice to force Rabita Trust to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation. See Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context); Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (holding that the standards for causation and foreseeability under the "effects test" are even more stringent when determining personal jurisdiction over international defendants).

## IV.   PLAINTIFFS SHOULD BE DENIED JURISDICTIONAL DISCOVERY

In a last ditch effort to keep Rabita Trust in the case, Plaintiffs argue that they should be allowed to pursue jurisdictional discovery on the grounds that Plaintiffs believe that Rabita Trust is a subsidiary/alter ego of Muslim World League ("MWL"), which the Burnett Court has found is subject to personal jurisdiction. See Pls.' Opp'n at 15; 274 F. Supp.2d at 96-97. The District of Columbia Circuit has held that jurisdictional discovery is appropriate only if the Plaintiff can "demonstrate that it can supplement its jurisdictional allegations through discovery." Bancoult v. McNamara, 214 F.R.D. 5, 10 (D.D.C. 2003) (citations omitted). Moreover, a trial court may deny a request for jurisdictional discovery where:

> The plaintiff has provided statements too bare to support an inference of jurisdiction, responded to a defendant's affidavit with speculative or a complete absence of jurisdictional facts, or fails to make counter-allegations in its own affidavit…

Id.

The only allegations within the Complaint connecting Rabita Trust and MWL are that Rabita Trust initially received funding from MWL, is a subsidiary of MWL and that MWL and Rabita Trust shared two officers. See 3AC at ¶¶ 236, 252, 269. Rabita Trust's Motion to Dismiss exposes Plaintiffs' sparse allegations as too bare to support an inference of an alter ego relationship. See Rabita Trust's Motion to Dismiss at 10-14. Moreover, the attached affidavit of Wael Jelaidan factually rebuts any alter ego argument, and proves that Plaintiffs are plainly wrong that Rabita Trust is a subsidiary of MWL. See Ex. 1, attached Affidavit of W. Jelaidan. Where, as here, the allegations supporting personal jurisdiction are tenuous at best, a court should reject a request for jurisdictional discovery. See Bancoult, 214 F.R.D. at 13.

8

## CONCLUSION

As Judge Robertson held:

> Given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that … no inferences are accepted that are unsupported by the facts set out in the 3 AC.

Burnett, 274 F. Supp.2d at 103-04.  Extra-careful scrutiny of Plaintiffs' Complaint reveals that Plaintiffs' allegations in support of personal jurisdiction over Rabita Trust are general, conclusory, and unsupported by the facts.  Accordingly, the Court should dismiss the Complaint against Rabita Trust.