UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570 (RCC) |
|---|---|
| This document relates to: | |
| THOMAS BURNETT, SR., et al, | NO. 03 CV 9849 (RCC) |
| Plaintiffs, | |
| v. | |
| AL BARAKA INVESTMENT & DEVELOPMENT CORP., et al., | |
| Defendants. | |

# WAEL JELAIDAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

MARTIN MCMAHON & ASSOCIATES

By:_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendant Wael Jelaidan*

Dated: Washington, D.C.
June 2, 2004

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

    I.     THE LAW OF THE CASE
          DOCTRINE BARS PLAINTIFFS'
          NEGLIGENCE AND RICO CLAIMS
          AGAINST JELAIDAN ...................................................................1

    II.    PLAINTIFFS FAILED TO PLEAD
          THAT JELAIDAN ENGAGED IN
          INTENTIONAL TORTIOUS CONDUCT
          DIRECTED AT THE UNITED STATES ....................................2

    III.   PLAINTIFFS FAIL TO PLEAD
          THAT JELAIDAN CONSPIRED WITH
          ANY CO-DEFENDANTS WHO DIRECTED
          TORTIOUS ACTIONS TOWARDS
          THE UNITED STATES ................................................................5

    III.   PLAINTIFFS FAIL TO ALLEGE A
          CAUSAL CONNECTION BETWEEN
          JELAIDAN'S CONDUCT AND
          TERRORIST ATTACKS AGAINST
          THE UNITED STATES ................................................................6

    IV.   PLAINTIFFS SHOULD BE DENIED
          JURISDICTIONAL DISCOVERY .............................................8

CONCLUSION....................................................................................................9

## TABLE OF AUTORITIES

Bancoult v. McNamara, 214 F.R.D. 5, (D.D.C. 2003) ........................................................ 8

Burnett v. Al Baraka Inv. & Dev. Corp.,
274 F. Supp.2d 86 (D.D.C. 2003) ..................................................................................... 1

Daliberti v. Iraq, 97 F. Supp.2d 38, (D.D.C. 2000) .......................................................... 4

Degulis v. LXR Biotechnology, Inc.,
928 F. Supp. 1301 (S.D.N.Y. 1996)................................................................................... 1

Dooley v. United Tech. Corp., 786 F. Supp. 65, (D.D.C. 1992) ....................................... 6

DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, (D.D.C. 2002) ................................... 5

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, (S.D.N.Y. 1991)....................... 6

Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, (D.D.C. 1998) ................................. 2

Herbstein v. Bruetman, 768 F. Supp. 79, (S.D.N.Y. 1991) ............................................... 8

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, (S.D.N.Y. 1987).................................... 8

Naartex Consulting Corp. v. Watt, 722 F.2d 779, (D.C. Cir. 1983) ................................. 6

Papasan v. Allain, 478 U.S. 265, (1986)........................................................................... 3

Palestine Info. Office v. Shultz, 853 F.2d 932, (D.C. Cir. 1988) ...................................... 2

Pugh v. Socialist People's Libyan Arab Jamahiriya,
290 F. Supp.2d 54 (D.D.C. 2003) ..................................................................................... 4

Rein v. Socialist People's Libyan Arab Jamahiriya,
995 F. Supp. 325, (E.D.N.Y. 1998) ................................................................................... 4

Second Amend. Found. v. U.S. Conference of Mayors,
274 F.3d 521, (D.C. Cir. 2001) ......................................................................................... 3

Ungar v. Islamic Republic of Iran, 211 F. Supp.2d 91, (D.D.C. 2002) ............................ 5

United States v. Philip Morris, Inc.,
116 F. Supp.2d 116, (D.D.C. 2000) .................................................................................. 5

**INTRODUCTION**

Like the Complaint, Plaintiffs' Memorandum of Law in Opposition to Defendant Wael Jelaidan's ("Jelaidan") Motion to Dismiss ("Opposition") is no more than a series of legal conclusions without supporting facts. Plaintiffs embellish and exaggerate the actual Complaint allegations, and misconstrue and misrepresent the law and Jelaidan's legal arguments. Apparently, Plaintiffs even concede that there is no foundation for general jurisdiction over Jelaidan. The Complaint allegations fail to give rise to personal jurisdiction over Jelaidan under either the "effects test" or a conspiracy-based theory of personal jurisdiction, and therefore the Complaint against Jelaidan must be dismissed.

**I.    THE LAW OF THE CASE DOCTRINE BARS PLAINTIFFS' NEGLIGENCE AND RICO CLAIMS AGAINST JELAIDAN**

Plaintiffs' briefly argue, in a footnote, that this Court should disregard the law of the case doctrine and hold that Judge Robertson's decision in Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp.2d 86 (D.D.C. 2003) does not bar Plaintiffs' negligence and RICO claims against Jelaidan. See Pls.' Opp'n at 3, n. 4. Plaintiffs rely solely on Degulis v. LXR Biotechnology, Inc., 928 F. Supp. 1301 (S.D.N.Y. 1996), which actually held that the law of the case doctrine "counsels against reopening issues previously decided." 928 F. Supp. at 309. The Degulis Court held that the law of the case doctrine should apply to a transferee court unless one of the following compelling circumstances exist: there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Id. None of these compelling circumstances exist here, and, therefore, the Court should dismiss Plaintiffs' negligence and RICO claims against Jelaidan under the law of the case doctrine.

## II. PLAINTIFFS FAILED TO PLEAD THAT JELAIDAN ENGAGED IN INTENTIONAL TORTIOUS CONDUCT DIRECTED AT THE UNITED STATES

Perhaps realizing the weakness of their "effects test" argument on the merits, Plaintiffs' Opposition attempts to persuade this Court to lower the threshold of its minimum contacts analysis as a matter of public policy. See Pls.' Opp'n at 5. While Plaintiffs' cited case law supports the relaxation of minimum contacts scrutiny under certain circumstances, those circumstances have been limited to statutes implementing policy areas specifically committed to the political branches of government, such as foreign policy. See Palestine Info. Office v. Shultz, 853 F.2d 932, 942 (D.C. Cir. 1988); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 22 (D.D.C. 1998). By contrast, Plaintiffs argue that minimum contacts scrutiny should be relaxed in the case herein because of "the cold-blooded manner in which U.S. residents were attacked…" Pls.' Opp'n at 5. A request for a relaxation of due process standards on the basis of emotional appeal hardly equates with the relaxation of due process out of respect for the Constitutional division of power among the three branches of government.

Turning to the merits of Plaintiffs' minimum contacts argument, Plaintiffs contend that personal jurisdiction exists over Jelaidan under the "effects test" because Plaintiffs have pled that Jelaidan knowingly and purposefully provided direct support to al Qaeda and bin Laden to assist in attacks against the United States. See Pls.' Opp'n at 11. To support this theory, Plaintiffs contend that the Complaint alleges that Jelaidan: 1) Purposefully conspired with al Qaeda and bin Laden to assist in their attacks against the United States; 2) Aided and abetted al Qaeda in raising money to fund its terrorists acts; and 3) Helped al Qaeda commit the September 11, 2001 atrocities. See Pls.' Opp'n at 6,

2

11.  However, nowhere in the entire Third Amended Complaint will the Court find allegations corresponding to these arguments.

The actual allegations against Jelaidan are the following:  1) Jelaidan helped to found al Qaeda; 2) Jelaidan headed the Muslim World League Office in Pakistan and is Secretary General of Rabita Trust, which are alleged fronts for al Qaeda; 3) Jelaidan provided financial and logistical support to al Qaeda; and 4) Jelaidan repeatedly aided and abetted terrorists.  See 3AC at ¶¶ 236, 255-56, 270-71.  Each of these allegations fail to support the exercise of personal jurisdiction over Jelaidan.  As discussed in more detail below, there is no temporal or proximate causation connection between Jelaidan's alleged founding of al Qaeda and any al Qaeda attacks against the United States.  Moreover, for the reasons stated in Jelaidan's Motion to Dismiss, the naked allegation that Jelaidan headed various non-governmental organizations that are alleged to have been fronts for al Qaeda does not support the exercise of personal jurisdiction over Jelaidan in his individual capacity.  Wael Jelaidan's Motion to Dismiss at pp. 6-7.

Collectively, all four of the above allegations fail to address the specifics of whether or how Jelaidan assisted or supported al Qaeda's terrorist activities directed towards causing harm to the United States.  The aforementioned non-specific, conclusory allegations and other general, catch-all allegations applicable to all defendants are insufficient to support a claim of personal jurisdiction over individual defendants, such as Jelaidan.  See Papasan v. Allain, 478 U.S. 265, 286 (1986) (holding that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Second Amend. Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).

3

Not only is Plaintiffs' jurisdictional argument unsupported by the Complaint allegations, but it is unsupported by Plaintiffs' cited case law as well. Both <u>Rein v. Socialist People's Libyan Arab Jamahiriya</u>, 995 F. Supp. 325, 329-30 (E.D.N.Y. 1998), and <u>Daliberti v. Iraq</u>, 97 F. Supp.2d 38, 52-53 (D.D.C. 2000), cases cited by the Plaintiffs, involved causes of action against sovereign governments where the respective courts found personal jurisdiction based on exceptions to the Foreign Sovereign Immunities Act. The <u>Daliberti</u> Court expressly held that "the state sponsored terrorism exception 'provides an express jurisdictional nexus based upon the victim's United States nationality.'" 97 F. Supp.2d at 48 (citations omitted). <u>Rein</u> and <u>Daliberti</u> are distinguishable from the case herein because Jelaidan is not a government entity and Plaintiffs do not claim that personal jurisdiction exists over Jelaidan under an exception to the Foreign Sovereign Immunities Act. Moreover, Jelaidan contends that personal jurisdiction does not exist because the Complaint allegations are too generalized and fail to specifically connect Jelaidan's activities with tortious activities directed at the United States. <u>Rein</u>, <u>Daliberti</u>, and <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, 290 F. Supp.2d 54 (D.D.C. 2003) all appear not to have addressed such an argument.

Plaintiffs' non-specific allegations fail to support the theory that Jelaidan knowingly assisted al Qaeda in achieving its goal of committing tortious conduct within the United States. Without such support Plaintiffs have failed to show that personal jurisdiction exists over Jelaidan.

4

### III. PLAINTIFFS FAIL TO PLEAD THAT JELAIDAN CONSPIRED WITH ANY CO-DEFENDANTS WHO DIRECTED TORTIOUS ACTIONS TOWARDS THE UNITED STATES

Failing to plead any specific connection between Jelaidan's activities and al Qaeda activities directed toward harming the United States, Plaintiffs rely on a conspiracy-based theory of personal jurisdiction. This theory also fails because Plaintiffs have failed to allege a *prima facie* case of conspiracy against Jelaidan. See DSMC, Inc. v. Convera Corp., 273 F. Supp.2d 14, 20 (D.D.C. 2002) (holding that conspiracy-based personal jurisdiction requires allegations of a *prima facie* case of conspiracy). Establishing conspiracy-based jurisdiction under District of Columbia Circuit law is difficult because the D.C. Circuit disfavors the principle of conspiracy-based personal jurisdiction. See Id. at 20 (holding that courts have applied the conspiracy theory of jurisdiction warily); United States v. Philip Morris, Inc., 116 F. Supp.2d 116, 122 (D.D.C. 2000) (holding that conspiracy-based personal jurisdiction has only been recognized in cases where the defendant did not contest the existence of the conspiracy). In discussing the skepticism of D.C. Circuit courts for conspiracy-based jurisdiction, the DSMC, Inc. Court noted that "courts have required *particularized* pleading of the conspiracy…. [and] mere speculation that the nonresident defendants are co-conspirators is insufficient to meet plaintiff's prima facie burden." 273 F. Supp.2d at 20 (emphasis added). The plaintiff "must allege specific acts connecting [the] defendant with the forum." Id.

Plaintiffs' Complaint allegations do anything but plead with particularity Jelaidan's agreement with and participation in a 9/11 Conspiracy. Just like the Plaintiffs in Ungar v. Islamic Republic of Iran, 211 F. Supp.2d 91, 99-100 (D.D.C. 2002), the

5

Plaintiffs herein fail to plead any link between Jelaidan's alleged support and the 9/11 attacks specifically. Moreover, as with the Ghanimat group in Ungar, there are no allegations that Jelaidan, at the end of a long "chain" conspiracy, knew of the existence of a larger 9/11 Conspiracy. See id. at 100. Compare with Dooley v. United Tech. Corp., 786 F. Supp. 65, 78 (D.D.C. 1992) (finding conspiracy-based jurisdiction where plaintiff set forth in great detail the allegations of conspiracy and each defendant's alleged involvement). Rather, the allegations Plaintiffs cite to in support of the existence of conspiracy-based personal jurisdiction consist of conclusory bald speculations of a conspiracy applicable to all defendants and specific allegations against Jelaidan, which have no bearing on the existence of a 9/11 Conspiracy. See Pls.' Opp'n at 13-16. None of these allegations suffice to confer conspiracy-based personal jurisdiction over Jelaidan. See Second Amend. Found., 274 F.3d at 524 (holding that legal conclusion that defendants "conspired together" does not state a *prima facie* case of conspiracy for the purpose of personal jurisdiction); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983) (holding that bald speculation of conspiracy does not establish personal jurisdiction); DSMC, Inc., 273 F. Supp.2d at 20 (holding that bare allegations of conspiracy does not suffice to establish personal jurisdiction).

### III. PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN JELAIDAN'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Regardless of whether Plaintiffs argue that personal jurisdiction exists under the "effects test" or under conspiracy-based personal jurisdiction, Plaintiffs fail to account for proximate causation as a critical element of analysis under both standards. See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (holding that

6

causation is an element of the "effects test"). It is not enough that Plaintiffs plead that Jelaidan directly supported al Qaeda or some general al Qaeda conspiracy. Rather, Plaintiffs must also plead that Jelaidan's alleged support foreseeably resulted in al Qaeda or an al Qaeda conspiracy committing tortious acts in the United States.

In Burnett, 274 F. Supp.2d at 105, Judge Robertson discussed the importance of a temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism' … in the year 2001 … a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the court's reasoning equally applies in the personal jurisdiction context.

For example, Plaintiffs allege that Jelaidan founded al Qaeda. See 3AC at ¶¶ 255, 270-71. However, by Plaintiffs' own admission, al Qaeda was formed around 1989. See id. at 209. While Plaintiffs' brief argues that Jelaidan remained involved in al Qaeda since its inception, there are no allegations to support this argument within the Complaint. See Pls.' Opp'n at 2. If Jelaidan's only connection to al Qaeda is founding the entity in 1989, at a time when al Qaeda was not a designated terrorist entity and Osama bin Laden had yet to announce his ruling on killing Americans, then the Court should query could Jelaidan reasonably foresee attacks on Americans in 2001 or reasonably anticipate being haled into a United States court for attacks on Americans in 2001? The resounding answer should be no. Given the heightened standards of

7

foreseeability and proximate causation in deciding personal jurisdiction under the "effects test" in an international context, it would be a miscarriage of justice to force Jelaidan to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation.  See Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context); Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (holding that the standards for causation and foreseeability under the "effects test" are even more stringent when determining personal jurisdiction over international defendants).

### IV.  PLAINTIFFS SHOULD BE DENIED JURISDICTIONAL DISCOVERY

In a last ditch effort to keep Jelaidan in the case, Plaintiffs argue, in a footnote, that they should be allowed to pursue jurisdictional discovery on the grounds that Plaintiffs have alleged that Jelaidan conspired with other defendants who committed acts within the United States in furtherance of the conspiracy.  See Pls.' Opp'n at 11, n.8. The District of Columbia Circuit has held that jurisdictional discovery is appropriate only if the Plaintiff can "demonstrate that it can supplement its jurisdictional allegations through discovery." Bancoult v. McNamara, 214 F.R.D. 5, 10 (D.D.C. 2003) (citations omitted).  Moreover, a trial court may deny a request for jurisdictional discovery where:

> The plaintiff has provided statements too bare to support an inference of jurisdiction, responded to a defendant's affidavit with speculative or a complete absence of jurisdictional facts, or fails to make counter-allegations in its own affidavit…

Id.

Jelaidan's Motion to Dismiss and the above discussion on conspiracy-based personal jurisdiction, expose Plaintiffs' sparse and conclusory allegations as too bare to

8

support a *prima facie* case of conspiracy or an inference of conspiracy-based personal jurisdiction.  See Jelaidan's Motion to Dismiss at 7-9.  Where, as here, the allegations supporting personal jurisdiction are tenuous at best, a court should reject a request for jurisdictional discovery.  See Bancoult, 214 F.R.D. at 13.

## **CONCLUSION**

As Judge Robertson held:

> Given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that … no inferences are accepted that are unsupported by the facts set out in the 3 AC.

Burnett, 274 F. Supp.2d at 103-04.  Extra-careful scrutiny of Plaintiffs' Complaint reveals that Plaintiffs' allegations in support of personal jurisdiction over Jelaidan are general, conclusory, and unsupported by the facts.  Accordingly, the Court should dismiss the Complaint against Jelaidan.