UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001          03 MDL 1570 (RCC)

-------------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

    *THOMAS E. BURNETT, SR., ET AL. VS. AL BARAKA*
    *INVESTMENT AND DEVELOPMENT CORP., ET AL.*
    **03 CV 9849 (RCC); 03 CV 5738 (RCC)**

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JAMAL KHALIFA'S MOTION TO DISMISS WITH SUPPORTING POINTS AND AUTHORITIES

June 4, 2004

# TABLE OF CONTENTS

*Page*

I.      INTRODUCTION.....................................................................................................1

II.     THE THIRD AMENDED COMPLAINT MEETS THE PLEADING
        REQUIREMENTS OF FEDERAL RULES OF CIVIL PROCEDURE ..........2

        A.      THE PLEADING STANDARD UNDER FED. R. CIV. P. 8(A) ..........................2

        B.      THE MOTION TO DISMISS STANDARD UNDER FED. R. CIV. P. 12 .............4

        C.      THE THIRD AMENDED COMPLAINT ADEQUATELY ALLEGES THE
                GROUNDS FOR THE COURT'S JURISDICTION .................................................6

        D.      THE COMPLAINT PLEADS FACTS SUFFICIENT TO APPRISE
                DEFENDANT OF THE NATURE OF THE CLAIMS AGAINST HIM ...................8

III.    THIS COURT HAS PERSONAL JURISDICTION OVER
        DEFENDANT...........................................................................................................11

IV.     SERVICE OF PROCESS BY PUBLICATION WAS EFFECTIVE
        ON DEFENDANT...................................................................................................12

V.      THE COMPLAINT ADEQUATELY ALLEGES VALID CAUSES
        OF ACTION AGAINST DEFENDANT, INCLUDING CAUSATION..........15

        A.      THE PLAINTIFFS SUFFICIENTLY ALLEGE THE ELEMENTS OF ALL
                CLAIMS AGAINST DEFENDANT .................................................................15

        B.      THE PLAINTIFFS ADEQUATELY ALLEGE CAUSATION ...........................16

VI.     CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

*Page*

## CASES

*American Land Co. v. Zeiss*, 219 U.S. 47 (1911) .............................................................14

*Argentina v. Weltover Inc.,* 504 U.S. 607 (1992) ..............................................................7

*Bennett v. Schmidt*, 153 F.3d 516, 519 (7th. Cir. 1998)....................................................5

*Blinn v. Nelson*, 222 U.S. 1 (1911) .....................................................................................14

*Boim v. Quranic Literacy Institute, et. al*., 291 F.3d 1000 (7th Cir. 2002) .............2, 18, 19

*Browning v. Clinton,* 292 F.3d 235 (D.C. Cir. 2002) .........................................................4

*Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985).........................................11

*Burnett v. Al Baraka,* 274 F.Supp.2d 86 (D.D.C. 2003).....................................................6

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................3, 4, 5

*Crawford-El v. Britton*, 523 U.S. 523 (1998) ....................................................................4

*Daliberti v. Iraq*, 97 F.Supp.2d. 38 (D.D.C. 2000)...........................................................12

*Goodrich v. Ferris*, 214 U.S. 71 (1909)............................................................................14

*Grannis v. Ordean*, 234 U.S. 385 (1914)..........................................................................14

*H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ...........................................5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ......................................................19

*Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997)............................................................5

*Holmes v. Securities Investor Protection Corp.* 503 U.S. 258 (1992).............................16

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ...............................18

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ...........................................11

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .............................5

*Krieger v. Fadely,* 211 F.3d 134 (D.C. Cir. 2000)..........................................................3, 5

*Laborers Local 17 Health and Benefit Fund v. Philip Morris*, 26 F.Supp.2d
    (S.D.N.Y 1998)............................................................................................................12

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507
    U.S. 163, 164 (1993)......................................................................................................5

*Milliken v. Meyer*, 311 U.S. 457 (1940) ...........................................................................14

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950)........................................13, 14

*NOW v. Scheidler*, 510 U.S. 249 (1994) ............................................................................5

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999)..............................................16, 17

*Pelt v. Utah*, 104 F.3d 1534 (10th Cir. 1996) .......................................................................4

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1988)...................................................16, 17

*Priest v. Las Vegas*, 232 U.S. 604 (1914).........................................................................14

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D.D.C. 2003) .........................................................................................................................12

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F.Supp.2d. 325 (E.D.N.Y. 1998), aff'd in part, dis'd in part, 162 F.3d. 748 (2d Cir. 1998) ....................................11

*Roller v. Holly*, 176 U.S. 398 (1900) ...............................................................................14

*S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292 (11th Cir. 2000) .........................................7

*S.E.C. v. Tome*, 833 F.2d 1086 (2nd Cir. 1987) ..........................................................13, 14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................................................5

*Shear v. National Rifle Association,* 606 F.2d 1251 (D.C. Cir. 1979)................................4

*Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111 (D.C. Cir. 2000).................................3

*Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (Sup. Ct. Ca. 1948) ......................................16

*Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002)....................................................3, 4

*Tones v. U.S. Dept. of Veteran Affairs, 2004 WL 691237 (S.D.N.Y., March 31, 2004)* ..........................................................................................................................4

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 16 F.Supp.2d 326 (S.D.N.Y. 1998), *modified on other grounds,* 182 F.R.D. 97 (S.D.N.Y. 1998), *aff'd on other grounds,* 241 F.3d 135 (2d Cir. 2001)...........................................7

*Wiggins v. Hitchens*, 853 F. Supp. 505 (D.D.C. 1994).......................................................5

**STATUTES**

Pub. L. No. 104-132, Sect. 301(a)(7), 110 Stat. 1214 (1996)...........................................18

**OTHER AUTHORITIES**

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1202, p.76 (2d ed. 1990)................................................................4

Encyclopedia of Federal Procedure, 3d. ed., vol. 4, § 14.15 ......................................3

W. Page Keeton, Prosser & Keeton, Torts 323 n.7 (5th Ed., 1984) ..................................17

**UNITED STATES CODE**

18 U.S.C. § 2333..............................................................................................2, 16, 18

18 U.S.C. § 2334.......................................................................................................7

18 U.S.C. § 2338.......................................................................................................7

18 U.S.C. § 2339A...................................................................................................18

18 U.S.C. § 2339B...................................................................................................18

28 U.S.C. § 1350 ................................................................................................7

28 U.S.C. § 1367 ................................................................................................7

28 U.S.C. § 1605(a)(2) .......................................................................................7

28 U.S.C. § 1605(a)(5) .......................................................................................7

28 U.S.C. § 1605(a)(7) .......................................................................................7

28 U.S.C. § 1653 ................................................................................................7

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8 .......................................................................................5, 6, 19

Fed. R. Civ. P. 8(a) ............................................................................2, 3, 4, 6

Fed. R. Civ. P. 8(a)(1) ........................................................................................7

Fed. R. Civ. P. 8(f) .............................................................................................3

Fed. R. Civ. P. 12 .....................................................................................2, 5, 19

Fed. R. Civ. P. 12(b)(2) ................................................................................1, 11

Fed. R. Civ. P. 12(b)(5) ......................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 4, 5

Fed. R. Civ. P. 12(b). ..........................................................................................5

Fed. R. Civ. P. 12(e) ...........................................................................................4

Fed. R. Civ. P. 56 ...........................................................................................4, 5

**RESTATEMENTS**

Restatement (Second) of Torts Sect. 876(b) ...................................................16

## I.   INTRODUCTION

Defendant Jamal Khalifa (D92) (or "Defendant" or "Khalifa") moves to dismiss the Third Amended Complaint (or "TAC" or "3AC" or "Complaint") pursuant to Fed. R. Civ. P. 12(b)(2); Fed. R. Civ. P. 12(b)(5); and Fed. R. Civ. P. 12(b)(6).   *See* Jamal Khalifa's Motion to Dismiss with Supporting Points and Authorities, filed April 9, 2004, Docket #105, hereinafter "Motion."   In bringing this motion, Defendant argues the following:  1) the Court lacks personal jurisdiction over the him; 2) the Defendant has not been properly served; and 3) the Plaintiffs have failed to properly allege the elements of their causes of action; specifically, that the Plaintiffs have not properly alleged "proximate cause."  *See* Motion at 1-3.

These arguments fail for the following reasons.  First, this Court has personal jurisdiction over the Defendant because service has been effectuated and there exist sufficient minimum contacts with, and purposeful targeting of, the United States to satisfy due process.  Traditional notions of fair play and substantial justice are advanced by an exercise of jurisdiction over Defendant under the facts and the law, and this is not altered by any arguments of inconvenience.  Second, service of process was properly effectuated and the Defendant was given fair and adequate notice of this lawsuit.  Third, the allegations and claims made against the Defendant are legally and factually sufficient under the applicable pleading rules and case law to withstand this motion to dismiss. This Defendant, like so many others, would have this Court essentially reject notice pleading and return to code pleading, a result that must be soundly rejected.

The Defendant also baldly asserts he has "absolutely no connection with the tragic events of September 11, 2001, nor does he support those that brought them about."  *See* Motion at 1. What the Defendant apparently seeks to argue, with this and similar

statements, and with the Declaration submitted in support of his motion, are the merits of this lawsuit. This is simply not a proper determination at this juncture. A motion to dismiss is designed to test the legal sufficiency of the allegations, not to determine the ultimate issues of fact that underlie the pleadings. While the Defendant might prefer to move the Court for an immediate ruling on the substantive underpinnings of Plaintiffs' allegations, the Defendant confuses "what must be alleged with what must be proved." *Boim v. Quranic Literacy Institute, et. al.*, 291 F.3d 1000, 1025 (7th Cir. 2002). Plaintiffs respectfully submit that whether or not the Defendant materially supported, aided and abetted, and/or conspired with al Qaeda or Osama bin Laden as alleged is an issue for the trier of fact and is not appropriate for a motion to dismiss. Clearly, significant differences as to the material facts at issue exist between the parties.[1] Moreover, and more to the point, there is no basis for dismissal pursuant to Fed. R. Civ. P. 12. For the reasons stated below, this Motion is without basis in law or fact and should be denied.

## II. THE THIRD AMENDED COMPLAINT MEETS THE PLEADING REQUIREMENTS OF FEDERAL RULES OF CIVIL PROCEDURE

### A. THE PLEADING STANDARD UNDER FED. R. CIV. P. 8(A)

Fed. R. Civ. P. 8(a) provides the requirements for stating a legally sufficient claim for relief. A complaint:

> shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the

---

[1] The Defendant also makes a passing reference to what Plaintiffs surmise is essentially a forum *non conveniens* argument in asserting "[i]f Plaintiff's (sic) counsel feels strongly enough about [Defendant's] supposed culpability, they can seek redress in Saudi courts." Motion at 2. Because this lone statement is given no argument or any authority, Plaintiffs will only respond that, clearly, not only does Saudi Arabia *not* provide an adequate alternative forum for this matter under a forum *non conveniens* analysis, the jurisprudence is clear that the Plaintiffs have the right to bring this action in the federal courts of the United States. *See e.g.* 18 U.S.C. § 2333. The Defendant's failure to raise the issue of subject matter jurisdiction may demonstrate their recognition of this basic premise. In any event, the assertion that the Plaintiffs should go to Saudi Arabia to seek redress has no merit or relevance for purposes of the present Motion, and Defendant has not made the requisite showing to dismiss on a forum *non conveniens* grounds.

*claim* showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a) (emphasis added). The leading case remains *Conley v. Gibson*, 355 U.S. 41 (1957). *Conley* holds that the Federal Rules of Civil Procedure do not require a claimant to set out the facts upon which the claim is based in detail. Rather, all that is required is "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47.

Whether a pleading constitutes a short and plain statement must be determined by the type of case, the relief sought, the situation of the parties, and the degree of particularity of statement desirable in effecting speedy justice. ENCYCLOPEDIA OF FEDERAL PROCEDURE, 3d. ed., vol. 4, § 14.15. A pleading generally suffices where there has been an honest attempt to make it simple, concise and direct, especially where the action is complex and involved. *Id.* "All pleadings shall be construed to do substantial justice." Fed. R. Civ. P. 8(f).

A pleading ordinarily is sufficient if, within its framework, evidence may be introduced which will sustain a statement of claim. Complaints "need not plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000) (internal citations omitted). Further, "a plaintiff need not allege all the facts necessary to prove his claim." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal citations omitted). Notice pleading is made possible by the liberal opportunity for discovery to disclose more precisely the basis of both the claims and defenses and to define more narrowly the disputed facts and issues. *Conley*, 355 U.S. at 48; *Accord, Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002) (The

provisions for discovery are so flexible and the procedures for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court, *citing* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202, p.76 (2d ed. 1990)).

The Supreme Court recently reiterated its Conley standard in *Swierkiewicz*, stating that the Rules are intended "to focus litigation on the merits of a claim" by giving "fair notice" of the plaintiff's claim.  534 U.S. at 512-13In short, Rule 8(a)'s standard is set "without regard to whether a claim will succeed on the merits.  Indeed, it even may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test."  *Id.* (citations omitted).[2]  Recent decisions reflect *Swierkiewicz's* pleading standard as controlling.[3]

**B.    THE MOTION TO DISMISS STANDARD UNDER FED. R. CIV. P. 12**

Rule 12(b)(6) motions are highly disfavored.  *Conley*, 355 U.S. at 45-46.[4]  To prevail on a Rule 12(b)(6) motion, a defendant must show beyond doubt that the Plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief.

---

[2] If a pleading fails to specify sufficient notice, a defendant can always move for a more definite statement under Rule 12(e); claims lacking factual merit are to be dealt with under Rule 56 (summary judgment).  *See Crawford-El v. Britton*, 523 U.S. 523, 597-601 (1998) (catalogue of procedures to control litigation), *accord* Case Management Order No. 1, MDL 1570, 3/3/04.

[3] *See, e.g. Tones v. U.S. Dept. of Veteran Affairs, 2004 WL 691237 (S.D.N.Y., March 31, 2004); Shear v. National Rifle Association,* 606 F.2d 1251, 1253 (D.C. Cir. 1979)(Actual facts are to be determined after a trial.); *Atchinson v. District of Columbia,* 73 F.3d 418, 423 (D.C. Cir. 1996)("a plaintiff need not plead multiple instances of misconduct")(*citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993)); *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002)(we do not assess the truth of what is asserted to determine whether a plaintiff has any evidence to back up what is in the complaint.).

[4] Granting a Rule 12(b)(6) is "a harsh remedy which must be cautiously studied not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Pelt v. Utah*, 104 F.3d 1534, 1540 (10th Cir. 1996).

4

*Id.*; ac*cord, Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997); *Wiggins v. Hitchens*, 853 F. Supp. 505 (D.D.C. 1994) ("Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief."); and *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989) (a court may not dismiss a complaint unless "it is clear that *no* relief could be granted under *any* set of facts that *could* be proved consistent with the allegations" (emphasis added)).  There has been no such showing here.  As the Supreme Court observed:

> When a federal court reviews the sufficiency of a complaint, its task is necessarily a limited one.  The issue is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)

Moreover, the complaint itself must be liberally construed in the plaintiff's favor and the Court is to grant plaintiffs the benefit of all inferences that can be derived from the facts alleged.  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal citations omitted).  Plaintiffs' allegations must be accepted as true on a motion to dismiss.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  Indeed, "at the pleading stage, general factual . . . allegations embrace those specific facts that are necessary to support the claim."  *NOW v. Scheidler*, 510 U.S. 249, 256 (1994).[5]

---

[5] Allowing defendants to use Rule 12(b)(6), rather than summary judgment under Rule 56, to challenge cases could create potential conflict with Rule 8.  *Krieger,* 211 F.3d at 136.  The rationale behind this position is simple – litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof defeats the function of Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998).  Furthermore, Rule 12 explicitly clarifies that if, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).  There has been no such opportunity here.

Defendant would hold Plaintiffs to a higher standard because of the horrific nature of the underlying crimes.  Motion at 2-3.  Defendant would do so despite arguing elsewhere that this is simply a tort case.  Motion at 14.  In any event, the support cited by Defendant for the adoption of a stricter pleading standard is from Judge Robertson in this very case.  *See* Motion at 3; *quoting Burnett v. Al Baraka,* 274 F.Supp.2d 86, 103-4 (D.D.C. 2003) (or "*Burnett I*").  However, the Defendant conveniently omits and thus misstates the actual holding in *Burnett I* by failing to include the first sentence of the quoted language:  "*No heightened standard of pleading will be applied in this case . . .*" *Burnett I,* 274 F.Supp.2d at 103-104, emphasis added.  *Burnett I* does indeed call for close scrutiny of Plaintiffs' allegations, but this does not change the pleading standard. Moreover, Plaintiffs' pleadings withstand scrutiny.  The Court in *Burnett I* also concluded:  "The 3AC's allegations provide support for an inference of a causal link between [Defendant's] funding and the attacks of September 11."  *Id. at 105.*  "There is no heightened pleading requirement for civil conspiracy, nor is civil conspiracy exempt from the operation of Rule 8(a)."  *Id.* at 110 (citations omitted).

### C.   THE THIRD AMENDED COMPLAINT ADEQUATELY ALLEGES THE GROUNDS FOR THE COURT'S JURISDICTION

Plaintiffs are not required to plead personal jurisdiction with specificity as Defendant appears to suggest.  Motion at 7-8.  The Plaintiffs herein satisfy the pleading requirement of Fed. R. Civ. P. 8 in making the requisite short and plain statement necessary to provide the relevant jurisdictional basis.  The basis for jurisdiction herein is

contained within the federal statutes under which plaintiffs plead and the allegation that this Court has personal jurisdiction over Defendants.  No more is required.[6]

Plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case, to the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction.  *See* 28 U.S.C. § 1653.  That is particularly true where the factual predicates are complex and the parties numerous, as herein.  Moreover, the conduct and injuries at issue are clearly in the United States' national interest.  Finding personal jurisdiction is seldom a problem when the wrongful act occurred in the United States.  *See, e.g., Argentina v. Weltover Inc.,* 504 U.S. 607, 619 (1992).  Occurrence of the injury alone might also be sufficient, depending on the specific provision of the statute being invoked.  *See, S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1298 (11th Cir. 2000) ("direct effects" and "minimum contacts" are "inextricably intertwined").  Both this Court and the Second Circuit have indicated that all doubtful questions regarding personal jurisdiction should be resolved in favor of the Plaintiff.  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 16 F.Supp.2d 326, 332-33 (S.D.N.Y. 1998), *modified on other grounds,* 182 F.R.D. 97 (S.D.N.Y. 1998), *aff'd on other grounds,* 241 F.3d 135 (2d Cir. 2001).

---

[6] *See*, Third Amended Complaint, ¶¶ 1, pleading 28 U.S.C. §§ 1330(a) (jurisdiction over a foreign state); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332(a)(2) (diversity jurisdiction over citizens or subjects of a foreign state); 18 U.S.C. §§ 2334 & 2338  (Anti-Terrorism Act jurisdictional provisions); 28 U.S.C. §§ 1605(a)(2), 1605(a)(5), 1605(a)(7) (jurisdictional provisions of the FSIA); 28 U.S.C. § 1350 (Alien Tort Claims Act); and 28 U.S.C. § 1367 (supplemental jurisdiction) (as the basis for subject matter jurisdiction); pleading personal jurisdiction over all Defendants herein.  No distinction is made in the pleading rules between personal and subject matter jurisdiction both require only a short and plain statement. *See* Fed. R. Civ. P. 8(a)(1).

### D.   THE COMPLAINT PLEADS FACTS SUFFICIENT TO APPRISE DEFENDANT OF THE NATURE OF THE CLAIMS AGAINST HIM

Defendant Khalifa, *a/k/a* "Abu Baraa," is a key al Qaeda operative and known terrorist who cannot seriously contest the allegations of the TAC.  Khalifa is a senior al Qaeda operative and financier involved in aiding, abetting and conspiring with the other Defendants herein.  TAC ¶¶ 244, 254.   Defendant Khalifa is alleged to be involved with the sponsorship of terrorism and al Qaeda, along with Defendant charities IIRO and BIF.  TAC ¶¶ 189-190, 234.  IIRO's office in the Phillipines is (or was) headed by Defendant Khalifa, who is Osama bin Laden't brother-in-law.  TAC ¶ 234.  The IIRO office in the Phillipines and Khalifa were involved in the 1993 World Trade Center bombing.  TAC ¶ 234.  Khalifa was the mastermind behind Plan Bojinka to blow up twelve United States airplanes simultaneously in 1995.  TAC ¶ 234.  Khalifa and the IIRO – Philippines were implicated in the plot to assassinate Pope John Paul I and President Clinton, and the 1998 United States Embassy bombings in Africa by al Qaeda.  TAC ¶ 234.  Khalifa has used the IIRO as a base to plan, launch, and finance al Qaeda and international terrorism.  TAC ¶ 240.  Khalifa opened an office of Defendant Muslim World League in Pakistan for al Qaeda.  TAC ¶ 254.  Khalifa has also been affiliated with Defendant Saudi Binladin Group, headed by Osama bin Laden's brothers.  TAC ¶ 324.

In addition to being affiliated with charity Defendants in this case, Defendant Khalifa has been criminally convicted (in absentia) for terrorist bombings in Jordan.  TAC ¶ 189.  Defendant Khalifa was later extradited from San Francisco to Jordan for trial.  TAC ¶ 189.  During this trial, Khalifa admitted he knew the bombers and sent them money.  TAC ¶ 189.

The allegations of the TAC are more than sufficient as to Defendant Khalifa. However, Khalifa has submitted a Declaration in which he claims: "At no time did I ever knowingly participate in, or in any way support in any way, terrorist activities, nor was anyone ever authorized by me, explicitly or implicitly, to engage in such activities." Declaration of Jamal Ahmad Mostafa Khalifa at ¶ 7.  There is substantial evidence to show this statement is false.  As an example, according to the record of the bond hearing of Khalifa in 1995, the United States government clearly concluded otherwise:

> The record also contains a three-page letter to Janet Reno, the Attorney General of the United States, from the Secretary of State of the United States, Warren Christopher regarding respondent herein . . . .Mr. Christopher identifies respondent [Khalifa] as an international terrorist, and concludes that "the presence or activities of Mohammad Khalifah in the United States would have potentially serious adverse foreign policy consequences for the United States."  *See* Declaration of Jodi Westbrook Flowers, (or "Plaintiffs' Dec."), Ex. 1, p. 5, 6, citations omitted.

> . . . "permitting Mr. Khalifah's presence in the United States would potentially undermine our longstanding and successful policy of international legal cooperation to bring about the prosecution of terrorists."  Plaintiffs' Dec., Ex. 1, p. 6, citation omitted, emphasis in original.

> Accordingly, it cannot be controverted that respondent is, in fact, an identified international terrorist.  Respondent has been convicted in absentia for his participation in a terrorist conspiracy in Jordan. Respondent has been sentenced to death as a result of this conviction." Plaintiffs' Dec., Ex. 1, p. 7.

> Even in the Philippines, respondent has been providing support to terrorist groups which have undertaken bombings of civilian targets in that country, including theaters, and have kidnapped American citizens.  The INS attempted to question respondent about these terrorist activities in the Philippines, as well as in other countries, but he invoked his 5th Amendment right against self-incrimination. . . . [Khalifa refused] to testify regarding his terrorist activities.  Plaintiffs' Dec., Ex. 1, p. 14, citation omitted.

> Most significantly, Warren Christopher, the Secretary of State of the United States, explicitly declared to the Attorney General that, "Mr.

<u>Khalifah has been identified to us by the Government of Jordan as a</u>
<u>terrorist.  He is accused of involvement in terrorist attacks against cinemas</u>
<u>in Jordan, and has been convicted in absentia</u>."  Plaintiffs' Dec., Ex. 1, p.
23, citation omitted, emphasis in original.

While respondent suggests that the Board should set a bail at a
"reasonable" amount, and recommends $50,000.00, this would hardly
deter respondent from fleeing.   According to respondent's brother,
respondent is affiliated with the Binladin family, because one of his wives
is from that family.  Respondent's brother further corroborated respondent
is affiliated with the Binladin Company.  Indeed, respondent listed the
Binladen Company in Saudi Arabia as his specific address when applying
for a visa to the Untied States.  As stated by respondent's brother, the
family is very wealthy.   With such an abundant monetary resource
available to him, no amount of bail will deter respondent from absconding.
Plaintiffs' Dec., Ex. 1, p. 25, citations omitted.

That [Khalifa] is a grave threat to the national security is clearly
established by the evidence discussed in detail above.  In particular, the
letter of the Secretary of State in and of itself proves that respondent is
such a dangerous threat.  Plaintiffs' Dec., Ex. 1, p. 26, citation omitted.

Exhibit 10 is a terrorist manual.  It is a catalogue for an educational
institute in the Philippines which is headed by brother Abu Al-Bara, the
respondent.  The curriculum of this school includes important religious
laws in understanding <u>jihad</u>, namely, provisions for assassinations and
kidnapping, provision for assassinating priests and Christians, provisions
for bombing churches and places of worship and provisions for martyrdom
operations.   As part of its practical program, the school curriculum
includes "making simple explosives" and "a round (training cycle) on
weapons and explosives, full military training."  Plaintiffs' Dec., Ex. 1, p.
27-28, citations omitted.

[That Khalifa] is a national security threat in addition to a flight risk is
further verified by the admissions respondent made in his motion to
reopen and reconsider bond proceedings.  In that motion, respondent
submitted proof that he is, in fact, brother Abu Al-Bara, the person "in
charge" of the terrorist school in the Philippines.  Plaintiffs' Dec., Ex. 1, p.
29, citation omitted, emphasis in original.

[Khalifa] has been engaged in instructing others in international terrorism,
<u>e.g.</u>, the making of explosives and the assassination of priests and
Christians.  Plaintiffs' Dec., Ex. 1, p. 30.

Kahlifa's Declaration, claiming that he has not engaged in terrorist activities, is as false as it is self-serving.  It should be disregarded in its entirety, as his terrorist activities and sponsorship are long-standing and continuing, as alleged.

## III.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Defendant maintains that this Court lacks personal jurisdiction over him, and asks the Court dismiss the TAC pursuant to Fed. R. Civ. P. 12(b)(2).   However, a federal court may exercise personal jurisdiction over a non-resident defendant where 1) the defendant is amenable to service of process pursuant to a statute or rule of court that authorizes such service; and 2) such an exercise is consistent with due process of law. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Service of process on Defendant was demonstrably adequate, as is discussed below.  Similarly, the evidence and allegations at issue show that an exercise of jurisdiction by this Court would be consistent with due process of law in that the Third Amended Complaint alleges that the Defendant purposefully directed his actions and conduct at the residents of the United States by aiding and abetting, conspiring with, or materially supporting al Qeada and Osama bin Laden, whose stated purpose was targeting the United States.[7]  *See* TAC at pp. 199, 202-203, 216-217, ¶ 1, ¶ 11, ¶ 493, ¶ 632-634; *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F.Supp.2d. 325 (E.D.N.Y. 1998), aff'd in part, dis'd in part, 162 F.3d. 748 (2d Cir. 1998);

---

[7] The Plaintiffs have advanced this argument in a common brief as relates to both al Qeada and the Defendant herein, and will not repeat those arguments, authorities, or *prima facie* showing, but rather incorporate them herein by reference.  Plaintiffs' Memorandum of Law in Support of Their *Prima Facie* Showing of Personal Jurisdiction and in Opposition to the Defendants' Challenges to Personal Jurisdiction, MDL 1570 Docket #154, filed May 14, 2004.  The Plaintiffs also incorporate by reference prior briefing on this issue, including but not limited to Plaintiffs' Memorandum in Opposition to National Commercial Bank, D.C. Docket #435.

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D.D.C. 2003); *Daliberti v. Iraq*, 97 F.Supp.2d. 38 (D.D.C. 2000).

In support of his Motion, the Defendant provides the Court with an Affidavit claiming non-resident status, no minimum contacts with the United States, and condemning acts of terrorism. *See* Declaration of Jamal Ahmad Mostafa Khalifa (D92), Attachment A to Motion.  The evidence as alleged by Plaintiffs contradicts this self-serving pleading, obviously drafted to attempt to evade the jurisdiction of this Court and the allegations of this lawsuit.  In that the Defendant has now challenged the Court's personal jurisdiction over him, and submitted extrinsic evidence in support of this challenge, the Plaintiffs are similarly allowed to go outside the pleadings (if necessary) to demonstrate a *prima facie* showing of personal jurisdiction. *Laborers Local 17 Health and Benefit Fund v. Philip Morris*, 26 F.Supp.2d (S.D.N.Y 1998).[8]  As is described herein, Plaintiffs have made their *prima facie* showing.  Clearly, Defendant's own conduct and actions in sponsoring al Qaeda and international terrorism as alleged by Plaintiffs must be considered in conjunction with Defendant's Declaration.

## IV.  SERVICE OF PROCESS BY PUBLICATION WAS EFFECTIVE ON DEFENDANT

Plaintiffs requested leave to serve by publication any Defendants in the Gulf States region, which included Defendants located in Saudi Arabia, Sudan and United Arab Emirates.  D.C. Docket No. 95 ¶ 3.  The motion set out the *necessity* of such service based on the Affidavit of Nelson Tucker, Plaintiffs' process server.  The Court, by granting the Plaintiffs' motion on March 25, 2003, indicated that it was appropriate for

---

[8] Because Defendant has brought his motion to dismiss under F.R.C.P. 12(b)(2), alleging that this Court lacks personal jurisdiction, this Court may consider evidence beyond the allegations of the complaints at issue. *See Antares Aircraft L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991).

the Plaintiffs to attempt to serve such geographically located Defendants by publication.

Among those served by publication was Defendant, who lives in Saudi Arabia.  Plaintiffs

properly served Defendant by publication, in compliance with the D.C. Court's Order of

March 25, 2003.

The argument raised by Defendant is that the notice published was not reasonably

calculated to advise him of this lawsuit.  It is difficult to credibly argue that one has not

received adequate notice of a lawsuit, when one has retained counsel, appeared and filed

a motion to dismiss.  Nevertheless, Defendant argues that the notice in the *International

Herald Tribune*, which is published in English, does not have wide circulation in Saudi

Arabia.  He also posits that the *Al-Quds Al-Arabi* notice, which is published in Arabic, is

not distributed in Saudi Arabia, and thus, provides no notice of the instant lawsuit.

The Second Circuit stated the following in *S.E.C. v. Tome*, 833 F.2d 1086, 1089

(2nd Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been
> held to require the giving of notice in such a manner that there can be little
> doubt that the party has actual notice of the claims in order to appear and
> defend.

In addition, as Justice Jackson stated:

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably
> calculated, under all the circumstances, to apprise interested parties of the
> pendency of the action and afford them an opportunity to present their
> objections.

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).  The question before the

Court is whether publication in the *International Herald Tribune* and *Al-Quds Al-Arabi*

was "reasonably calculated" to notify Defendant of the suit against him.  Defendant's

appearance in this case demonstrates that service by publication was adequate.

13

The Second Circuit stated in *Tome*: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*." *Tome*, 833 F.2d at 1089.  In this instance there is constructive notice, because Defendant has appeared to defend this action.   As the Supreme Court stated:   "the fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).  The record in this matter establishes that Defendant did receive notice of the suit, understood that he had to hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss.  This demonstrates the adequacy of the notice by publication.  Justice Jackson succinctly summed up this matter when he wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U.S. 457 (1940); *Grannis v. Ordean*, 234 U.S. at 385; *Priest v. Las Vegas*, 232 U.S. 604 (1914); *Roller v. Holly*, 176 U.S. 398 (1900).  The notice must be of such nature as reasonable to convey the required information, *Grannis v. Ordean, supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71 (1909).  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.  'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' *American Land Co. v. Zeiss*, 219 U.S. 47, 67 (1911); and *see Blinn v. Nelson*, 222 U.S. 1, 7 (1911).

*Mullane*, 399 U.S. at 314-15.

By its March 25, 2003 Order, the D.C. Court agreed that publication in these periodicals was necessary and appropriate.  Historically, *Al-Quds Al-Arabi* has published several fatwas by Osama bin Laden and he has, therefore, reasonably calculated it can reach his supporters, regardless of where they live.  Similarly, *International Herald*

*Tribune* is distributed in the world community, of which Defendant and his business interests are a part.  The TAC has been available on numerous websites in numerous languages, including Arabic, for almost two years.  The coverage of this case in the Arab media has been widespread.  Notice by publication is designed to impart information about a lawsuit.  However, there is nothing that requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice.  Without question, the notice in this case accomplished the goal of informing Defendant of the instant action.

## V.   THE COMPLAINT ADEQUATELY ALLEGES VALID CAUSES OF ACTION AGAINST DEFENDANT, INCLUDING CAUSATION

### A.   THE PLAINTIFFS SUFFICIENTLY ALLEGE THE ELEMENTS OF ALL CLAIMS AGAINST DEFENDANT

Defendant's papers give lip service to challenging the TAC's causes of action without giving any reason why they fail to state a claim.  *See* Motion at 13-14.  Other than the single and unsupported statement that "[n]one of the eight counts of the 3AC states all the elements of a cause of action against" Defendant, there is no challenge to the TAC's legal sufficiency other than the argument advanced that it does not sufficiently allege causation.  *See* Motion at 13-14.  Why Defendant refers to the TAC as containing eight counts, when it in fact contains fifteen, is unclear, but what is clear is that there are no substantive legal challenges advanced as to any specific count.[9]   As to the one substantive issue raised, causation, Defendant misreads both the TAC and the relevant case law.

---

[9] RICO and negligence are given short, conclusory treatment, almost as an afterthought.  Motion at 22. Plaintiffs, therefore, will not deal with these counts herein, but instead incorporate by reference prior arguments as to RICO and negligence issues.  *See* Plaintiffs' Memorandum of Law in Opposition to Motion of Abdulrahman Bin Mahfouz to Dismiss the Claims Against Him, MDL Docket #150, p. 21-23, Plaintiffs' Memorandum of Law in Opposition to Motion of Defendant Khalid Bin Mahfouz to Dismiss, *Burnett* Docket # 388.  The Defendant does not challenge the other common law or statutory claims advanced.

### B.   THE PLAINTIFFS ADEQUATELY ALLEGE CAUSATION

Defendant argues that the TAC fails to state a claim on any theory because it does not adequately allege proximate cause.  *See* Motion at 14.  The Defendant assumes, and incorrectly concludes, that the relevant inquiry for causation is whether "but for" the alleged wrongdoing, would the injury have occurred?  Motion at 15, citing *Holmes v. Securities Investor Protection Corp*. 503 U.S. 258 (1992).  A "but for" causation analysis is not relevant to the present case.

In situations where joint tortfeasors are involved, as here, there is no requirement that *all* defendants be the factual and proximate cause of the resulting damage.  Restatement (Second) of Torts Sect. 876(b), comment; *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (Sup. Ct. Ca. 1948); *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1988).  The Restatement provides that "a person who encourages another to commit a tortious act may be responsible for other acts by the other" and provides an example in which a joint tortfeasor is liable for an act of which he is neither the factual or proximate cause.  Restatement (Second) of Torts Sect. 876(b).  A rigid but-for factual causation standard to assess liability is simply untenable, as the Supreme Court has recognized.

In *Price Waterhouse*, the Supreme Court addressed the standard of causation required by the words "because of" in Title VII of the Civil Rights Act.   490 U.S. at 228.  The relevant language of the Anti-Terrorism Act, 18 U.S.C. § 2333, allows suit by any national "injured . . . by reason of an act of international terrorism."  18 U.S.C. § 2333.  The statutory language "because of" means "by reason of."  *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 626 (1999) (Thomas, J., dissenting).   The Court in *Price Waterhouse* noted that "[t]o construe the words 'because of' as colloquial shorthand for 'but-for causation' . . . is to misunderstand them."  490 U.S. at 240.  In the typical but-for

causation inquiry, "ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way." *Id.* at 241. *Price Waterhouse* alters the inquiry: "the words 'because of' do not mean 'solely because of.'" *Id.*

As stated, there is no difference in the meaning of "because of" as opposed to "by reason of" as both contemplate the same level of causation. *Olmstead,* 527 U.S. at 626 (Thomas, J., dissenting). Under the *Price Waterhouse* analysis, "by reason of" does not mean "solely by reason of," nor does it require a plaintiff to show traditional but-for causation, as Defendant would require. Using the *Price Waterhouse* test, if a plaintiff shows that the terrorist organization that injured him was funded at least in part by the defendant, them he succeeds in showing that he was injured "by reason of" the funding, though others may have also funded the act.

*Price Waterhouse* illustrates this interpretation of the causation requirement where joint tortfeasors are involved:

> Suppose two physical forces act upon and move an object, and suppose the either force acting alone would have moved the object. As the dissent would have it, *neither* physical force was a 'cause' of the motion unless we can show that but for one or both of them, the object would not have moved; apparently both forces were simply 'in the air' unless we can identify at least one of them as a but-for cause of the object's movement. Events that are causally over-determined, in other words, may not have any 'cause' at all. This cannot be so.

490 U.S. at 241.

This example is particularly applicable to the complex funding of terrorist organizations, and it comports with the well-settled law of joint torts. W. Page Keeton, Prosser & Keeton, Torts 323 n.7 (5th Ed., 1984) (internal citations omitted). From a practical perspective, it would be difficult, if not impossible, for a plaintiff to carry its burden of proving that a monetary contribution of material support to a terrorist

organization, after passing through several money laundering channels to an overseas terrorist organization, was used to finance, ultimately, the violent acts that form the basis for the suit.  In addition, sections 2339A and 2339B, which provide criminal penalties for providing material support to terrorists, do not require that the support be proximately related to a violent act.  18 U.S.C. § 2339A (1994) and 2339B (1996).  The financing of terror is a complicated process by design, as the *Boim* court recognized:

> The money flows through a series of complicated transactions, changing hands a number of times, and being co-mingled with funds from the front organizations' legitimate charity and business dealings.  The funds are laundered in a variety of ways, including through real estate deals and through Swiss bank accounts.

*Boim*, 291 F.3d at 1004.

As the *Humanitarian Law Project* court noted "terrorist organizations do not maintain open books" and there may be no practical means of tracking general material support to a specific attack.  *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000).  Clearly, such a result is not what was intended by Congress in enacting 18 U.S.C. § 2333.  Indeed, in Congressional findings accompanying the passage of the criminal component to Section 2333, Congress found that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."  Pub. L. No. 104-132, Sect. 301(a)(7), 110 Stat. 1214 (1996).  A logical conclusion to such a finding eliminates any proximate or factual cause requirement:  "All material support given to such organizations aids their unlawful goals."  *Humanitarian Law Project*, 205 F.3d at 1136.  The defect in a but-for causation standard is also articulated in *Halberstam*:

> As to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance

> of the conspiracy.  A conspirator need not participate actively in or benefit
> from the wrongful action in order to be found liable.  He need not even
> have planned or known about the injurious action . . . so long as the
> purpose of the tortious action was to advance the overall object of the
> conspiracy.

*Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

As a logical result of this holding, the Defendant need not provide material support in furtherance of the particular tort committed, provided the tort is within the overall scope of the conspiracy.  Here, the harming of innocents residing in the United States was well within the scope of the conspiracy, even if the Defendants can proclaim they did not know the ultimate time and place of attack.  The language of the statute pled here in Count Three clearly contemplates "the type of aide provided rather than whether is substantial or considerable . . . Even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability in section 2333."  *Boim*, 291 F.3d at 1015; TAC, Count Three.  Moreover, the intent requirement can be imputed from a showing of a general awareness of the criminal activity and a provision of some material support.  *See Halberstam*, 705 F.2d 472; *Boim*, 291 F.3d 1000.

## VI.   CONCLUSION

This Court has personal jurisdiction over Defendant by virtue of Plaintiffs' allegations and *prima facie* showing that the conduct Defendant engaged in or supported was purposefully targeted at the United States.  Service of process on Defendant was demonstrably adequate, as evidenced by his counsel's appearance and this Motion to Dismiss on his behalf.  Moreover, the Complaint makes sufficient general and specific allegations against Defendant to satisfy Rule 8 and 12.  The claims against Defendant have been adequately alleged, including causation.  For the reasons stated herein, the Defendant's Motion to Dismiss is without basis and should be denied.

New York, New York
Dated:  June 4, 2004

Respectfully submitted,


/S/

────────────────────────────

Ronald L. Motley, Esq. (SC-4123)
Jodi Westbrook Flowers, Esq. (SC-66300)
Donald A. Migliori, Esq. (RI-4936; MA-567562;
   MN-0245951)
Michael E. Elsner, Esq. (NY & VA-ME8337)
William H. Narwold, Esq. (NY-WN1713)
Ingrid L. Moll, Esq. (CT-21866 & NY-IM3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Elizabeth Smith, Esq.
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000


Jayne Conroy, Esq. (NY-JC8611)
Paul J. Hanly, Jr., Esq. (NY-PH5486)
Andrea Bierstein, Esq. (NY-AB4618)
HANLY CONROY BIERSTEIN
   & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600


William N. Riley, Esq. (IN - 4941-49)
Amy Ficklin DeBrota, Esq. (IN - 17294-49)
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240
Telephone:  (317) 848-7939


Harry Huge, Esq. (DC-55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
401 Ninth Street, N.W., Suite 450
Washington, DC 20004
Telephone:  (202) 824-6046


Allan Gerson, Esq. (DC-327494)
ATTORNEY AT LAW

4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Chip Robertson, Esq.
Mary Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
   & OBETZ
200 Madison Avenue, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 230-4665

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone:  (843) 577-9761


Attorneys for Plaintiffs

21