Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000
Fax:  (212) 848-7179

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

In re Terrorist Attacks on September 11, 2001   :     03 MD 1570 (RCC)

              :

------------------------------------------------------------------ x

              :

KATHLEEN ASHTON, et al.,          :

              :     02 CV 6977 (RCC)

        Plaintiffs,       :

              :

        v.          :

              :

AL-QAEDA ISLAMIC ARMY, et al.,   :

              :

        Defendants.     :

              :

------------------------------------------------------------------ x

## NOTICE OF MOTION OF DEFENDANT
## SAUDI AMERICAN BANK TO DISMISS THE COMPLAINT

**PLEASE TAKE NOTICE**, that upon the accompanying memorandum of law

and all of the prior pleadings and papers in this action, defendant Saudi American Bank, through

undersigned counsel, will move this Court, before the Honorable Richard Conway Casey, at the

United States District Court House for the Southern District of New York, 500 Pearl Street, New

York, NY 10007, for an order:

(1) dismissing the claims asserted against it in the above-captioned action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

(2) for such other and further relief as the Court may deem just and proper.

Dated: New York, NY
       January 31, 2004

SHEARMAN & STERLING LLP

By: _____

Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Fax: (212) 848-7179

Attorneys for Defendant Saudi American Bank

To:    All Counsel on the Attached Service List

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
                                                             :
In re Terrorist Attacks on September 11, 2001                :        03 MD 1570 (RCC)
                                                             :
------------------------------------------------------------ x
                                                             :
KATHLEEN ASHTON, et al.,                                     :
                                                             :        02 CV 6977 (RCC)
            Plaintiffs,                                      :
                                                             :
            v.                                               :
                                                             :
AL-QAEDA ISLAMIC ARMY, et al.,                               :
                                                             :
            Defendants.                                      :
                                                             :
------------------------------------------------------------ x
```

### MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK IN SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT

Henry S. Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000
Fax:  (212) 848-7179

Attorneys for Defendant Saudi American Bank

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................. 5

I.    PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK DO NOT
      COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8 ............................. 5

II.   PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK MUST BE
      DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY
      BE GRANTED ...................................................................................................... 10

      A.    Plaintiffs' Federal Statutory Claims Must Be Dismissed Because They Are
            Barred By Section 408(b)(1) of the ATSSSA And, In Any Event, Fail To
            State A Claim ............................................................................................... 10

            1.   Plaintiffs Fail To State A Claim Against Saudi American Bank Under
                 The Anti-Terrorism Act (Count 4) ........................................................... 11

            2.   Plaintiffs Fail To State A Claim Against Saudi American Bank Under
                 The Torture Victim Protection Act (Count 5) ............................................ 13

      B.    Plaintiffs' State Law Claims Must Be Dismissed Because They Fail To State
            A Claim ....................................................................................................... 15

            1.   Plaintiffs Fail To State A Claim Against Saudi American Bank For
                 Wrongful Death Based On Intentional Murder (Count 1) ......................... 16

            2.   Plaintiffs Fail To State A Claim Against Saudi American Bank For
                 Survival Damages Based On Intentional Murder (Count 2) ..................... 16

            3.   Plaintiffs Fail To State A Claim Against Saudi American Bank For
                 Assault And Battery (Count 3) ................................................................ 17

            4.   Plaintiffs Fail To State A Claim Against Saudi American Bank For
                 Property Damage (Count 8) .................................................................... 18

            5.   Plaintiffs Fail To State A Claim Against Saudi American Bank For
                 Punitive Damages (Count 7) Because Punitive Damages Are Not A
                 Cause Of Action ................................................................................... 18

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

### Cases                                                          Page

*Atuahene v. Hartford*, 10 Fed. Appx. 33,
    2001 WL 604902 (2d Cir. 2001) ................................................................. 9

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000) ................................ 15

*Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362 (E.D. La. 1997) ...................... 14

*Benas v. Baca*, No. CV-00-11507, 2001 WL 485168, (C.D. Cal. Apr. 23, 2001),
    *aff'd*, 30 Fed. Appx. 753, 2002 WL 257669 (9th Cir. Feb. 15, 2002) ...................... 14

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002) ............................ 12-13

*Bonsignore v. N.Y.*, 683 F.2d 635 (2d Cir. 1982) ....................................... 12

*Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983) .............. 10

*Burnett v. Al Baraka*, 274 F. Supp. 2d 86 (D.D.C. 2003) ......................... passim

*Chong v. N.Y.C. Transit Auth.*, 441 N.Y.S.2d 24 (App. Div. 2d Dep't 1981) ............... 16

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................. 5

*Dineen v. Stramka*, 228 F. Supp. 2d 447 (S.D.N.Y. 2002) .............................. 16

*Doe v. N.Y.*, 588 N.Y.S.2d 698 (Ct. Cl. 1992) ........................................ 16

*Estate of Valmore Lacarno Rodriquez v. Drummond Co.*,
    256 F. Supp. 2d 1250 (N.D. Ala. 2003) ............................................ 14

*Friedman v. Bayer Corp.*, No. 99-CV-3675,
    1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ...................................... 14

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Ca. 1988) ........................... 9-10

*Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001) ................................. 17

*Golden First Mortgage Corp. v. Berger*,
    251 F. Supp. 2d 1132 (E.D.N.Y. 2003) ............................................ 18

*In re Oliver L. North (Gadd Fee Application)*, 12 F.3d 252 (D.C. Cir. 1994) ............... 14

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*,
    81 F. Supp. 2d 70 (D.D.C. 2000) ................................................. 18

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ...................................... 15

*L'Europeenne de Banque v. La Republica de Venezuela*,
    700 F. Supp. 114 (S.D.N.Y. 1998) ................................................. 5

*Meroni v. Holy Spirit Ass'n for Unification of World Christianity*,
    506 N.Y.S.2d 174 (App. Div. 2d Dep't 1986) ....................................... 17

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*,
    634 N.E.2d 940 (N.Y. 1994) ...................................................... 18

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ...................................... 5

## TABLE OF AUTHORITIES

### <u>Cases (Cont'd)</u>                                                      <u>Page</u>

*Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D. Or. 2002) .................................................. 10

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ........................... 14

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003) .......................... 12

*Smith v. United States*, 508 U.S. 223 (1993) ................................................................... 14

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................................ 9

*Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001) ................................. 13

*Weizmann Inst. of Science v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002) ............................................................................ 18

*Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386,
   2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) .................................................................. 14

Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994) ...................................................... 5

### <u>Federal Statutes</u>

*Anti-Terrorism Act*, 18 U.S.C. 2331 *et seq.* .............................................................. 11-13

*Torture Victim Protection Act*, 28 U.S.C. §1350 note,
Pub. L. 102-256, 106 Stat. 73 ........................................................................................ 12-14

*Air Transportation Safety and System Stabilization Act*, 49 U.S.C.A. § 40101 note,
Pub. L. No. 107-42, 115 Stat. 230-242 (Sept. 22, 2001) .............................................. 11, 15

### <u>Legislative History</u>

*Torture Victim Protection Act*, 102 H. Rpt. 367, 102 S. Rpt. 249 ............................... 14-15

### <u>Federal Rules</u>

F.R.C.P. 8(a) ..................................................................................................................... 5, 9

F.R.C.P. 12(b)(6) ............................................................................................................ 1, 18

### <u>State Statute</u>

N.Y. E.P.T.L. § 5-4.1(1), 11-3.3(a) ............................................................................... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                 :
In re Terrorist Attacks on September 11, 2001    :      03 MD 1570 (RCC)
                                 :
---------------------------------------------------------------- x
                                 :
KATHLEEN ASHTON, et al.,                :
                                 :      02 CV 6977 (RCC)
           Plaintiffs,            :
                                 :
           v.                    :
                                 :
AL-QAEDA ISLAMIC ARMY, et al.,        :
                                 :
           Defendants.          :
                                 :
---------------------------------------------------------------- x

## MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

       Defendant Saudi American Bank respectfully submits this memorandum of law in

support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss the claims asserted against it in plaintiffs' Consolidated Master Complaint, dated

March 6, 2003 ("Complaint" or "CMC"), for failure to state a claim upon which relief can be

granted.

### PRELIMINARY STATEMENT

       Saudi American Bank is the second largest bank in Saudi Arabia, with 62

branches and a staff of over 2,200 people.  With offices in London and throughout Saudi Arabia,

Saudi American Bank offers its customers a range of banking, insurance, and investment

services.  Saudi American Bank was the first Saudi bank to establish a local equity fund and the

first Saudi bank to establish a fund open to overseas investors, which is listed on the London

Stock Exchange.

Saudi American Bank is a conventional commercial and investment bank. It was formed by and is 20% owned by Citibank, N.A. Saudi American Bank has not been designated by the United States or any other government as a sponsor of terrorism. Indeed, no one other than plaintiffs' counsel has even suggested that Saudi American Bank supported, sponsored, aided, funded or had anything to do with terrorism. Saudi American Bank had nothing whatsoever to do with the September 11, 2001 terrorist attacks on the United States.

The September 11 attacks were tragic and despicable acts. However, they should not be accepted as a pretext for dispensing with the fundamental precepts of due process that are embodied in the pleading requirements of the Federal Rules of Civil Procedure. The Complaint in this action accuses Saudi American Bank of active complicity in the murder of more than 3000 people, without a single concrete factual averment suggesting what it actually did to contribute to that awful event. As the District Court for the District of Columbia recognized in an action now consolidated with this lawsuit, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants." *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003). Nevertheless, the Complaint ignores the necessity to state a claim, and seeks to brand Saudi American Bank as a sponsor of terror solely because it is a large Saudi-based bank. That is not a sufficient basis to tar Saudi American Bank as a terrorist financier and to drag its name through the mud.

Saudi American Bank therefore moves to dismiss the claims asserted against it on two grounds: (1) the Complaint fails to meet the pleading standards set forth in Federal Rule 8; and (2) the individual causes of action are each defective as pleaded against Saudi American Bank.

2

## STATEMENT OF FACTS[1]

The facts hardly need to be recounted: on the morning of September 11, 2001, terrorists hijacked four commercial airplanes. Two of the planes crashed into and caused the collapse of the World Trade Center towers in New York City, one was flown into the Pentagon, and one was crashed into the ground in Western Pennsylvania. Approximately three thousand people were killed during these attacks; many others were injured. CMC ¶¶ 180–185.

Osama bin Laden and al Qaeda have taken responsibility for the terrorist attacks. *Id.* ¶ 186. The Complaint, brought on behalf of victims' families, survivors of the attacks, and owners of damaged property, alleges that defendants "participated in or supported the September 11th terror attacks." *Id.* ¶ 32. Plaintiffs contend that members of the Saudi royal family (*id.* ¶¶ 242–327) and Muslim charities and businesses (*id.* ¶¶ 328-598) aided Osama bin Laden or al Qaeda. The Complaint asserts that certain individuals, businesses, banks, and charities "operate legitimate businesses but also maintain a dual role as an al Qaeda co-conspirator." *Id.* ¶ 23. Others are said to have been "a sham front" for al Qaeda. *Id.* Al Qaeda benefited financially when unspecified defendants worked with al Qaeda to "raise, launder, transfer, distribute, and hide funds" for Osama bin Laden and al Qaeda. *Id.*

It is with this background that Saudi American Bank has been named in the Complaint. In essence, plaintiffs' argument seems to be that since al Qaeda has a network of organizations and individuals around the world that contribute money to its terrorist cause, Saudi

---

[1]  Since purporting to serve Saudi American Bank with the Consolidated Master Complaint, plaintiffs have filed – but not served – a First Amended Consolidated Complaint and a Second Amended Consolidated Complaint. Moreover, although the Court granted plaintiffs leave to file a Third Amended Consolidated Master Complaint (the "Third Amended Complaint") on October 15, 2003, plaintiffs have not filed or served the Third Amended Complaint. Because (i) Saudi American Bank has not been served with the Third Amended Complaint, and (ii) the Court's Order dated December 29, 2003 directs Saudi American Bank to respond to the Consolidated Master Complaint, this motion is addressed to the Consolidated Master Complaint. We note, however, that the unfiled Third Amended Complaint does not add any

American Bank, as a bank in Saudi Arabia, must somehow, in some way, be responsible for funding terrorism.

  The Complaint is notable for the near total absence of allegations against Saudi American Bank.  In the eight paragraphs that refer to Saudi American Bank (*id.* ¶¶ 520-527), there is no allegation that Saudi American Bank has ever done business with, funded, or had as a customer al Qaeda, Osama bin Laden, or any of Osama bin Laden's businesses.  Nor do the allegations with respect to Saudi American Bank link Saudi American Bank to al Qaeda, to Osama bin Laden, to the individual terrorists or, in any way, to the September 11th attacks.

  At best, plaintiffs' allegations are reminiscent of a bad game of six degrees of separation:  What are Saudi American Bank's ties to Osama bin Laden?  Plaintiffs make the unamazing allegation that Saudi American Bank loaned money to a client in Sudan to build roads and an airport and this helped Osama bin Laden, who also happened to be in Sudan, to help train his followers.  *Id.* ¶ 525; *see* ¶¶ 337-38.  What are Saudi American Bank's ties to certain other banks that plaintiffs accuse of wrongdoing?  Plaintiffs make the unamazing allegation that Saudi American Bank served as a "correspondent bank" for these entities (not mentioning that Saudi American Bank, like other major financial institutions, has approximately 150 correspondent banking relationships with other banks (including three in the United States)).  *Id.* ¶¶ 523, 525.  Incredibly remote connections such as this are as close as the plaintiffs can get to linking Saudi American Bank to any wrongdoing concerning the September 11th attacks.

  Under any fair reading of the Complaint, the claims against Saudi American Bank should be dismissed now.

---

substantive allegations with respect to Saudi American Bank and, indeed, the Third Amended Complaint actually deletes certain allegations.  Thus, this motion applies equally to the Third Amended Complaint.

## ARGUMENT

**I.   PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK
      DO NOT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8**

While the Complaint's well-pleaded allegations are, solely for purposes of this motion, accepted as true, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 122 (S.D.N.Y. 1988) (citations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Similarly, "naked assertions" without supporting facts need not be accepted as true. *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). The Second Circuit has made plain that "[l]iberally reading the complaint does not require ignoring specific factual allegations in order to broadly read sweeping equivocal assertions." *Shapiro v. Cantor*, 123 F.3d 717, 721 (2d Cir. 1997).

If there ever was a case in which the plaintiffs should be required to set forth a claim that shows that they are entitled to relief, it is this case. The plaintiffs have accused Saudi American Bank of causing the September 11th attacks and more than 3000 deaths. As the District Court for the District of Columbia recognized in an action now consolidated with this lawsuit: "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants. The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage . . . . [G]iven the extreme nature of the charge of terrorism, fairness requires <u>extra-careful scrutiny of plaintiffs' allegations as to any particular defendant</u>, to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests. . ." *Burnett*, 274 F. Supp. 2d at 103-04 (emphasis added). Plaintiffs' prolix Complaint does not meet this standard.

Instead, the plaintiffs here assembled a few random "facts" about Saudi American Bank, none of which connect Saudi American Bank to the awful events of September 11th or come close to setting forth a recognized claim. These are the eight paragraphs from the more than two hundred and fifty page Complaint that plaintiffs designate as pertaining to Saudi American Bank:

> 520.    Saudi American Bank is based in Riyadh, Saudi Arabia, and was formed in 1980 pursuant to a royal decree to take over the then existing branches of Citibank in Riyadh and Jeddah, Saudi Arabia. Citibank opened its Jeddah branch in 1955 and its Riyadh branch in 1966. Saudi American Bank was formed in accordance with a program adopted by the Kingdom of Saudi Arabia in the mid-1970's under which all foreign banks were required to sell majority equity interests to Saudi nationals.

> 521.    Saudi American Bank started operations on July 12, 1980, based in Riyadh. The Saudi American Bank is chaired by Abdullaziz Bin Hamad Al Gosaibi. Khalil A. Kordi and Rashid M. Al. Romaizan are among the directors of the bank. The Saudi American Bank is the second largest bank in Saudi Arabia.

> 522.    The Saudi American Bank has offices in the United States based in New York. The Chairman of the bank is Abdullaziz Bin Hamad Al Gosaibi who was born in 1923 is also Chairman of the Saudi Cement Company in Damman, Saudi Arabia. The Saudi Cement Company shareholders include Defendant OMAR SULAIMAN AL-RAJHI. The Saudi American Bank is also the main banker of Arab Cement Company. The company is owned by Al Rajhi Group and Saudi Bin Laden Group. Arab Cement Company is managed by several other Defendants including KHALID BIN SALIM BIN MAHFOUZ and MOHAMMED BIN LADEN.

> 523.    The Saudi American Bank is the official correspondent of the al Baraka Bank Lebanon, based in Beirut and chaired by Defendant SALEH ABDULLAH KAMEL. The Saudi American Bank has maintained a partnership with al Baraka financial system since its beginning.

> 524.    The Saudi American Bank serves as the bank for the Dallah Al Baraka Group, named as Defendant herein and chaired by Defendant Saleh Abdullah Kamel. The Saudi American Bank is close to the Saudi Bin Laden family, and appears on its financial transactions. Bin Lden [sic] for Contracting and Trading is owned by members of the Bin Lade [sic] family including BAKR BIN LADEN and MOHAMMED BIN LADEN.

> 525.    Saudi American Bank financed these Sudanese projects, described above, by directly providing material support and assistance to OSAMA BIN LADEN. Indeed, Saudi American Bank was the main banker of the Saudi Bin Laden Group

*and Bin Laden Organization with respect to Sudanese operations. Saudi American Bank is also the Riyadh correspondent of AL FAISAL ISLAMIC BANK, which is managed by Defendant MOHAMMED AL FAISAL AL SAUD. AL FAISAL ISLAMIC BANK has facilitated AL QAEDA terrorist operations as detailed above. The Saudi American Bank is also the main correspondent in Riyadh for a branch of Al Shamal Bank, a branch of DMI Trust based in Nassau, involved in the financing of AL QAEDA.*

*526.   In year 2000, the Saudi American Bank participated in the fund raising campaign in Saudi Arabia for collecting donations to the "heroes of the Al Quds uprising" (Intifada) by providing a bank account and facilities to receive donations for a committee of charity organizations including Defendants WAMY, IIRO and AL HARAMAIN FOUNDATION.*

*527.   Defendant al Barakaat was able to penetrate the United States banking system with the help of AHMED ALI JUMALE (or "Jumale"). Employed by Barakaat Boston, AHMED ALI JUMALE, the financier who founded Barakaat and was a close associate of OSAMA BIN LADEN. From 1979 to 1986, Jumale worked in Jeddah, Saudi Arabia as a senior employee of the Saudi American Bank. The bank was founded by Citibank, which owned 40% of it at the time he worked there.*

(As capitalized in original.)

The question before this Court is whether these "allegations" give Saudi American Bank fair notice of the plaintiffs' claims and the grounds upon which those claims rest, especially given the "extra-careful scrutiny" fairness requires. They do not. The eight paragraphs above boil down to this:

- Saudi American Bank's history, including formation and management. CMC ¶¶ 520-522.

- Saudi American Bank is the bank for a cement company, whose shareholders include some other defendants. (There is no allegation that Saudi American Bank had anything to do with al Qaeda, September 11 or the plaintiffs, or even that the cement company did.) *Id.* ¶ 522.

- Saudi American Bank is a "correspondent bank" for several other banks that are either defendants or are managed by defendants. (Again, there is no allegation of any connection between Saudi American Bank and al Qaeda, September 11 or the plaintiffs.) *Id.* ¶¶ 523, 525. (Saudi American Bank, like most major financial institutions, has a substantial number of correspondent banking relationships. Currently, Saudi American Bank has correspondent banking relationships with

approximately 150 banks, including major financial institutions in the United States.)

- Saudi American Bank is "close" to the Saudi Binladin family and financed infrastructure projects in Sudan undertaken by the Saudi Binladin Group during the time Osama bin Laden was in Sudan.[2] (There is again no allegation of any connection between Saudi American Bank and al Qaeda, September 11 or any acts of terror.) *Id.* ¶¶ 524-25.

- Saudi American Bank provided a bank account for collecting donations for the "'heroes of the Al Quds uprising' (Intifada)." The Intifada is in Israel; "Al Quds" is Arabic for "Jerusalem." Again, there is no allegation of any connection between Saudi American Bank and al Qaeda, September 11th or the plaintiffs. *Id.* ¶ 526. (As plaintiffs' counsel are likely aware, these types of accounts were established pursuant to a general directive of the Saudi Arabian Monetary Authority (i.e., the Saudi central bank).)

- Saudi American Bank employed an individual who, *fifteen years* after the termination of his employment at Saudi American Bank, helped another defendant "penetrate the United States banking system."[3] *Id.* ¶ 527.

What is Saudi American Bank alleged to have done that violates the statutory and common law causes of action identified by the plaintiffs? The Complaint simply does not say. How can these "allegations" put Saudi American Bank on notice of the grounds on which plaintiffs rest their claims when the allegations involve either common banking relationships or outdated irrelevant connections from which one cannot pretend to infer that Saudi American Bank had some link to actual terrorists? Even if all of these allegations were true, they would not state a claim against Saudi American Bank. The only thing the Complaint establishes is that Saudi American Bank is a large international bank based in Saudi Arabia.

---

[2]   Paragraph 525 refers to "Sudanese projects, described above." Although it is not clear what plaintiffs refer to here, Saudi American Bank assumes that paragraph 524 refers to the matters set forth in paragraphs 337-38.

[3]   It is telling that plaintiffs, apparently realizing that this "allegation," even if true, does not link Saudi American Bank to any terrorist activity, have dropped it from the section pertaining to Saudi American Bank in the Third Amended Complaint.

8

A complaint must give fair notice to the defendant of the plaintiffs' claims and the grounds upon which those claims rest. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The test is not the length of the allegations, but whether a defendant is on notice such that it can mount a defense. Thus, a short statement such as "I was turned down for a job because of my race" is sufficient because it puts the specific defendant on notice that it was alleged to have engaged in employment discrimination against the plaintiff, to have injured the plaintiff by that discrimination, and to have carried out that discrimination by refusing employment based on race. *See Swierkiewicz, supra.* In practical terms, the defendant then knows exactly what it has been accused of and how to determine whether it has a defense. Unlike in *Swierkiewicz*, where there was only one defendant, a case with hundreds of defendants necessarily requires more specificity to give notice to each defendant.

The Complaint here does not give Saudi American Bank notice of what it is alleged to have done, or any grounds upon which claims against Saudi American Bank rest. While *Swierkiewicz* and Rule 8(a) allow for liberal pleading, they do not allow plaintiffs to ignore all facts and simply make the conclusion that hundreds of defendants "carried out a plan to murder, maim and injure United States citizens. . ." CMC ¶ 5. If the Court were to so hold, then no person or entity included among "defendants" could ever succeed on a motion to dismiss. It cannot be enough to file a complaint that alleges that a number of defendants committed murder with no facts to back up that statement as against each defendant.

Lumping defendants together without distinguishing the factual allegations against each has *repeatedly* been held not to be sufficient to satisfy Rule 8(a). *Atuahene v. Hartford*, 10 Fed. Appx. 33, 2001 WL 604902, at *1 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct,

9

[the] complaint failed to satisfy" the pleading requirement of Rule 8.); *Gauvin v. Trombatore*, 682 F. Supp 1067, 1071 (N.D. Ca. 1988) (finding that lumping defendants together into one broad allegation was not sufficient: "Plaintiff must allege the basis of his claim against each defendant. . . ."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 415 (D. Or. 2002) ("Broad allegations against numerous defendants are not specific enough to provide the defendants with notice of the plaintiffs' allegations."); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981) (dismissing a complaint that alleged that "all defendants...conspired together..." without setting forth any "specific facts" to support the "conspiracy"), *aff'd*, 460 U.S. 325 (1983).

Plaintiffs have charged Saudi American Bank with 3,000 murders. It is not enough to simply recount the names of the Bank's clients and correspondent banks. Sweeping allegations about terrorism and conclusory assertions that all defendants somehow participated in the September 11th attacks are absolutely not a permissible substitute for factual allegations that would state a claim against Saudi American Bank.

## II. PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' Complaint purports to allege claims against Saudi American Bank under two federal statutes (the Torture Victim Protection Act and the Anti-Terrorism Act), four common law causes of action (wrongful death, survival, assault and battery, and property damage), and one non-existent cause of action (punitive damages). Each of them fails for multiple reasons.

### A. Plaintiffs' Federal Statutory Claims Must Be Dismissed Because They Are Barred By Section 408(b)(1) Of The ATSSSA And, In Any Event, Fail To State A Claim

Plaintiffs cannot state a claim against Saudi American Bank under the Anti-Terrorism Act or the Torture Victim Protection Act because such claims are barred as a matter of

law in actions arising out of the "hijacking and subsequent crashes" of the four September 11th

flights. In the aftermath of the September 11th attacks, Congress passed the Air Transportation

Safety and System Stabilization Act ("ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230-242 (Sept.

22, 2001) (reprinted, as amended, at 49 U.S.C.A. § 40101 note (West Supp. 2003)). Section

408(b) of the ATSSSA provides:

> (b) FEDERAL CAUSE OF ACTION.--
>
> (1) AVAILABILITY OF ACTION.--There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001. Notwithstanding section 40120(c) of title 49, United States Code this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.
>
> (2) SUBSTANTIVE LAW.--The substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law.

Thus, Section 408(b)(1) of the ATSSSA provides the "exclusive remedy for

damages arising out of the hijacking and subsequent crashes" of the September 11 flights, and

"[t]he substantive law for decision in any such suit" is governed by the law of the <u>State</u> in which

the crash occurred. Accordingly, plaintiffs cannot, in these circumstances, assert claims under

federal statutes other than Section 408(b)(1) of the ATSSSA, and their federal statutory claims

must be dismissed.

### 1. Plaintiffs Fail To State A Claim Against Saudi American Bank Under The Anti-Terrorism Act (Count 4)

Even if Section 408(b)(1) did not apply, each federal claim, like the state claims,

must be dismissed as against Saudi American Bank for several independent reasons.

Plaintiffs' claim under the Anti-Terrorism Act fails as a matter of law against

Saudi American Bank. The Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ("ATA"), provides that

"[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court. . . ." 18 U.S.C. § 2333(a). There is some debate as to whether the events of September 11th were acts of international terrorism (as opposed to domestic terrorism). *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 222 (S.D.N.Y. 2003). But even assuming, *arguendo*, that the terrorist acts of September 11th could form the basis for an ATA claim, this cause of action must be dismissed as against Saudi American Bank because there are no allegations in the Complaint contending that Saudi American Bank was the proximate cause or aided and abetted that terrorism. "International terrorism" is defined as activities that "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State..." 18 U.S.C. § 2331(1)(A). Saudi American Bank is not alleged to have committed any violent acts, been an integral part in any such activities, or been the proximate cause of the plaintiffs' injuries. In order to show proximate cause, plaintiffs must show that the injury was foreseeable. *Bonsignore v. N.Y.*, 683 F.2d 635, 637 (2d Cir. 1982) ("Proximate cause...limits a defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing.") Plaintiffs do not allege that Saudi American Bank's conduct was the proximate cause of the terrorist attacks or that by its conduct (which itself is not alleged), Saudi American Bank should have been able to foresee the attacks. The allegations against Saudi American Bank merely recount normal banking transactions – none of which are alleged to be dangerous, violent or criminal.

It is settled law that neither the allegation of an act of financing the terrorist organization nor an act that had the end result of facilitating terrorism is sufficient to withstand a motion to dismiss. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011 (7th Cir. 2002) ("To say

that funding *simpliciter* constitutes an act of terrorism is to give the statute an almost unlimited

reach.") To avoid dismissal, the plaintiffs must allege "knowledge of and intent to further" the

terrorist acts. *Id.* In order for a defendant to be liable for aiding and abetting terrorism under the

ATA, the plaintiffs must "prove that the defendants knew of [the alleged terrorists'] illegal

activities, that they desired to help those activities succeed, and they engaged in some act of

helping the illegal activities." *Id.* at 1023.

      Plaintiffs' sparse allegations against Saudi American Bank simply do not state

facts that, if proved, would establish that Saudi American Bank had "knowledge of and intent to

further" the terrorist actions that caused plaintiffs' losses or that Saudi American Bank "engaged

in some act of helping the illegal activities." *Id.* The complaint must show that the plaintiffs are

entitled to relief and must put the defendants on notice. Here, even absent the "extra-careful

scrutiny" required given the "extreme nature" of the charge, it cannot fairly be said that the

Complaint includes any allegation of a causal link between Saudi American Bank and the

September 11th attacks.[4]

### 2.   Plaintiffs Fail To State A Claim Against Saudi American Bank Under The Torture Victim Protection Act (Count 5)

      To state a claim under the Torture Victim Protection Act ("TVPA"), Pub. L. 102-

256, 106 Stat. 73 (reprinted at 28 U.S.C.A. § 1350 note), plaintiffs must allege that (1) an

individual under actual or apparent authority, or color of law, of any foreign nation (2) subjected

an individual to torture or (3) subjected an individual to extrajudicial killing. 28 U.S.C. § 1350

note § 2(a).

---

[4]     Plaintiffs' ATA claim must in any event be dismissed as to any plaintiff who is not alleged to be a United States national (or the heirs or survivors of any victim not alleged to be a United States national), because the statute only covers United States nationals, their estates, survivors and heirs. 18 U.S.C. § 2333(a); *Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76, 97 (D.R.I. 2001).

This cause of action must be dismissed as against Saudi American Bank because the TVPA applies only to individuals, and Saudi American Bank is a corporation. 28 U.S.C. § 1350 note § 2(a)(1). Since the word "individual" is not explicitly defined in the statute, it is given its ordinary and natural meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993). The common usage of "individual" is to describe a natural person. *In re Oliver L. North (Gadd Fee Application)*, 12 F.3d 252, 254 (D.C. Cir. 1994). If a statute uses the word "individual," application of that statute to corporations would be to "deprive words used by Congress of all content." *Id.* at 255. Thus, given the use of the word "individual," the TVPA can only be used to bring suits against individuals, not corporations. *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 381-82 (E.D. La. 1997); *Friedman v. Bayer Corp.*, No. 99-CV-3675, 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999); *but see Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358-59 (S.D. Fla. 2003); *Estate of Valmore Lacarno Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1266-67 (N.D. Ala. 2003).

Further, the TVPA is not applicable to the September 11th terrorist attacks because it only applies to torts committed against United States citizens who, "while in a foreign country, are victims of torture or 'extra-judicial killing.'" *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2002 WL 319887, at *3 (S.D.N.Y. Feb. 28, 2002); *Benas v. Baca*, No. CV-00-11507, 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001) (explaining that Congress chose to limit a remedy under the TVPA to foreign, rather than domestic torture), *aff'd*, 30 Fed. Appx. 753, 2002 WL 257669 (9th Cir. Feb. 15, 2002). The legislative history confirms that the TVPA was to apply only to incidents abroad. 102 H. Rpt. 367 ("the TVPA would extend a civil remedy also to U.S. citizens who may have been tortured abroad"); 102 S. Rpt. 249 at *4 (the TVPA is designed to provide "a civil cause of action in U.S. courts for torture committed abroad"). All of

14

the injuries and deaths that form the basis for this lawsuit occurred within the United States. As such, plaintiffs' claims against Saudi American Bank under the TVPA must be dismissed.

Finally, even if the TVPA did apply to corporations – *and* the injuries and deaths had not occurred in the United States – Saudi American Bank is not alleged to have acted under the authority or color of law of any foreign nation, as required by the TVPA. *Kadic v. Karadzic*, 70 F.3d 232, 243-44 (2d Cir. 1995); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 19-20 (D.D.C. 2000). Plaintiffs allege no link between Saudi American Bank and any government. The allegations against Saudi American Bank (sparse as they are) concern private entities with which Saudi American Bank allegedly engages in normal banking transactions.

The TVPA claim must be dismissed as to Saudi American Bank.

**B.      Plaintiffs' State Law Claims Must Be Dismissed Because They Fail To State A Claim**

As noted above, Section 408(b)(2) of the ATSSSA provides that the "substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal Law." This section essentially creates a federal remedy for state law claims as long as they are not inconsistent with or preempted by Federal law. Given that plaintiffs are victims of airplane crashes in New York, Virginia, and Pennsylvania, proper analysis of the state law claims that plaintiffs assert requires analysis under the laws of each of these jurisdictions. At this stage, because there is no apparent difference in the outcome given the paucity of allegations against Saudi American Bank, we do not analyze each claim under the laws of each jurisdiction (with or without regard to their choice of law principles). Instead, with respect to certain claims, we analyze them under New York law. Should the Court wish, we will set forth the analysis under all possible scenarios.

1.   **Plaintiffs Fail To State A Claim Against Saudi American Bank For Wrongful Death Based On Intentional Murder (Count 1)**

Plaintiffs fail to state a claim against Saudi American Bank for wrongful death because there are no factual allegations that would establish that Saudi American Bank caused the deaths of plaintiffs' decedents.  Under New York law, the tort of wrongful death is governed by the New York Estates, Powers and Trusts Law ("EPTL") § 5-4.1(1).  A wrongful death action requires a showing that the defendant caused the deaths and that the killings were wrongful. *Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) ("one of the elements of a wrongful death action is the showing of a 'wrongful act, neglect, or default of the defendant by which the decedent's death was caused'") (quoting *Chong v. N.Y.C. Transit Auth.*, 441 N.Y.S.2d 24, 25 (App. Div. 2d Dep't 1981)).  Here, plaintiffs have not alleged facts that suggest in any way that Saudi American Bank committed a wrongful act, neglect or default which caused any deaths, much less the deaths of the plaintiffs' decedents.  The allegations leveled against Saudi American Bank simply provide its corporate background and cursory detail concerning a few of its banking relationships.  Absent factual allegations that would establish the elements of this tort, plaintiffs' claim against Saudi American Bank should be dismissed.

2.   **Plaintiffs Fail To State A Claim Against Saudi American Bank For Survival Damages Based On Intentional Murder (Count 2)**

A survival action is one that could have been brought by the decedent but for the decedent's death.  It includes damages for an injury that (1) took place prior to the death and (2) caused the death.  N.Y. E.P.T.L. § 11-3.3(a); *Doe v. N.Y.*, 588 N.Y.S.2d 698, 709 (Ct. Cl. 1992) ("a cause of action on behalf of a decedent may be maintained for the decedent's conscious pain and suffering, medical expenses, and loss of wages prior to death, but the common law does not allow a person to recover for death itself").

16

The Complaint does not allege any injury caused by Saudi American Bank. The legal analysis to be used is parallel to that used for the wrongful death claim, as outlined above. The Complaint contains no factual allegations that would establish that Saudi American Bank caused or contributed to the death of the victims. Instead, plaintiffs simply allege that Saudi American Bank was engaged in the normal activities of the banking business.

Separately, as is the case with the claim for wrongful death, the only plaintiffs that may assert a claim based on survival are those that are the legal representatives of the victims. *Meroni v. Holy Spirit Ass'n for Unification of World Christianity*, 506 N.Y.S.2d 174, 179 (App. Div. 2d Dep't 1986). Accordingly, any plaintiff who is not the legal representative of a victim may not assert a claim under the survival statute.

### 3. Plaintiffs Fail To State A Claim Against Saudi American Bank For Assault And Battery (Count 3)

Under New York law, an assault "is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (internal quotations omitted).

There is no allegation in the Complaint that Saudi American Bank assaulted or battered any of the plaintiffs. The Complaint states that plaintiffs were "placed in apprehension...and suffered harmful, offensive bodily contact." CMC ¶ 605. This apprehension and conduct, however, is not alleged to have been perpetrated by Saudi American Bank or even as a result of any conduct by Saudi American Bank. The allegations against Saudi American Bank, as detailed in paragraphs 520 through 527 of the Complaint, simply describe commercial banking transactions.

4.   **Plaintiffs Fail To State A Claim Against Saudi American Bank For Property Damage (Count 8)**

Plaintiffs' claim for damage to property states that the damage was a result of all defendants' "intentional, willful and malicious acts of terrorism. . ." CMC ¶ 623.  Even assuming that New York law even recognizes a separate cause of action for "property damage," conclusory statements of this sort can not state a claim.  *Weizmann Institute of Science*, 229 F. Supp. 2d at 245.  In any event, there are no allegations that Saudi American Bank participated in or aided any act of terrorism or was the proximate cause in damaging the plaintiffs' property.  As has been described above, the specific allegations concerning Saudi American Bank recount banking relationships and transactions.

5.   **Plaintiffs Can Not State A Claim Against Saudi American Bank For Punitive Damages (Count 7) Because Punitive Damages Are Not A Cause Of Action**

Punitive damages are not a cause of action, but rather are a type of relief. *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 945-46 (N.Y. 1994); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74 (D.D.C. 2000) (dismissing plaintiff's punitive damages "claim" because "punitive damages is a remedy and not a freestanding cause of action…"); *Golden First Mortgage Corp. v. Berger* 251 F. Supp. 2d 1132, 1141 (E.D.N.Y. 2003).  Accordingly, plaintiffs' claim for punitive damages requires should be dismissed as to Saudi American Bank.

18

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against Saudi American Bank should

be dismissed.

Dated:   New York, NY
         January 31, 2004

                              Respectfully submitted,

                              SHEARMAN & STERLING LLP

                              By: _____
                                   Henry Weisburg (HW 9820)
                                   Brian H. Polovoy (BP 4723)

                              599 Lexington Avenue
                              New York, NY 10022-6069
                              Telephone: (212) 848-4000

                              Attorneys for Defendant Saudi American Bank

19

## CERTIFICATE OF SERVICE

I, Daniel M. Segal, one of the attorneys for defendant Saudi American Bank,

hereby certify that on the 31st day of January, 2004, I caused a true and correct copy of the

foregoing Notice of Motion of Defendant Saudi American Bank to Dismiss the Complaint, the

Memorandum of Law of Defendant Saudi American Bank in Support of its Motion to Dismiss

the Complaint, and Rule 7.1 Statement of Defendant Saudi American Bank to be served by U.S.

first class mail, postage prepaid, addressed to all parties identified on the attached Service List.

Dated: New York, NY
      January 31, 2004

                                      Daniel M. Segal
                                      SHEARMAN & STERLING LLP
                                      599 Lexington Avenue
                                      New York, NY 10022-6069
                                      Telephone: (212) 848-4000

## **SERVICE LIST**

**Plaintiffs Counsel**

Andrew J. Maloney, Esq.
KREINDLER & KREINDLER
100 Park Avenue
New York, NY 10017

**Defendants Counsel**

Louis R. Cohen, Esq.
WILMER, CUTLER & PICKERING
2445 M Street, N.W.
Washington, D.C. 20037

*Counsel for Prince Mohamed al Faisal al Saud*

Mitchell R. Berger, Esq.
PATTON BOGGS LLP
2550 M Street N.W.
Washington, D.C. 20037

*Counsel for National Commercial Bank*

Blaney Harper, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

*Counsel for Saudi Bin Laden Group*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                          :

In re Terrorist Attacks on September 11, 2001     :        03 MD 1570 (RCC)
                                            :

--------------------------------------------------------------- x
                                          :

KATHLEEN ASHTON, et al.,              :
                                          :        02 CV 6977 (RCC)
         Plaintiffs,           :

                                          :
         v.                       :

AL-QAEDA ISLAMIC ARMY, et al.,       :
                                            :
         Defendants.          :
--------------------------------------------------------------- x
                                          :

## RULE 7.1 STATEMENT OF DEFENDANT SAUDI AMERICAN BANK

       Defendant Saudi American Bank, by its undersigned attorneys, Shearman &

Sterling LLP, hereby states, pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, that it

has no parent corporation and that the only publicly held corporation that directly or indirectly

owns 10% or more of its stock is Citigroup, Inc.

Dated: New York, NY
       January 31, 2004

                           SHEARMAN & STERLING LLP

                           By:_____
                               Henry Weisburg (HW 9820)
                               Brian H. Polovoy (BP 4723)

                           599 Lexington Avenue
                           New York, NY 10022-6069
                           Telephone: (212) 848-4000
                           Facsimile: (212) 848-7179

                           Attorneys for Defendant Saudi American Bank