UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ————————————————— ) | |
| In Re TERRORIST ATTACKS on ) | |
| SEPTEMBER 11, 2001          ) | 03 MDL 1570 (RCC) |
| ————————————————— ) | |
| ) | |
| KATHLEEN ASHTON et al.,     ) | |
| ) | |
| Plaintiffs,  ) | |
| v.          ) | 02 CV 6977 (RCC) |
| ) | |
| AL QAEDA ISLAMIC ARMY et al., ) | |
| ) | |
| Defendants.  ) | |
| ————————————————— ) | |

**ASHTON PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT SAUDI AMERICAN BANK'S MOTION TO DISMISS**

KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5540
Phone: (212) 687-8181
Fax: (212) 972-9432

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    PLAINTIFFS' BURDEN AT THE PLEADING STAGE IS MINIMAL  . . . . . . . 2

      B.    PLAINTIFFS' COMPLAINT
            STATES A CLAIM UNDER THE
            ANTI-TERRORISM ACT (ATA), 18 U.S.C. §2333(a)  . . . . . . . . . . . . . . . . . . . 3

            1.    Defendants Have Committed Acts of
                  International Terrorism as Defined by the Statute . . . . . . . . . . . . . . . . . . 6

            2.    General Tort Law Principles Govern the
                  Application of the ATA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                  a.    Aiding and Abetting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            3.    Plaintiffs Have Properly Pled Causation  . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    PLAINTIFFS HAVE ADEQUATELY PLEAD STATE
            LAW CLAIMS AGAINST SAMBA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    PLAINTIFFS CLAIMS ARE NOT BARRED
            BY THE AIR TRANSPORTATION SAFETY
            AND SYSTEM STABILIZATION ACT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      E.    PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES  . . . . . . . . . . . . . 13

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Boim v. Quranic Literary Institute, et al.*, 291 F.3d 1000 . . . . . . . . . . . . . . . . . . . . *passim*

*Burnett v. Al Baraka*, 274 F.Supp.2d 86 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . *passim*

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1 (D.D.C. 1998) . . . . . . . . . . . . . . . 13

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Lamarca v. United States*, 31 F.Supp.2d 110 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . 10

*Lee v. Bankers Trust Co.*, 166 F.3d 540(2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Morton v. Mancari*, 417 U.S. 535 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Simmons v. Abruzzo*, 49 F.3d 83 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Stanford v. Kuwait Airways, Corp.*, 89 F.3d 117 (2d Cir. 1996) . . . . . . . . . . . . . . . . . 10

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Woodford v. Community Action Agency of Green County*,
239 F.3d 577 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Zuchowicz v. United States*, 140 F.3d 381 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 10

### <u>STATE CASES</u>

*Bastein v. Sotto*, 749 N.Y.S.2d 538 (N.Y.A.D. 2d Dep't 2002) . . . . . . . . . . . . . . . . . 12

*Goff v. Clark*, 755 N.Y.S.2d 493 (N.Y.A.D. 3d Dep't 2003) . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

Air Transportation Safety and System Stabilization Act
49 U.S.C.A. §40101 note, Pub. L. No. 107-42, 115 Stat.
230-242 (Sept. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12, 13

Anti-Terrorism Act (ATA), 18 U.S.C. §2331 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §2339A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

18 U.S.C. §2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

147 Cong.Rec. H5894-5918 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

147 Cong.Rec. S9589-9603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

Restatement (Second) Torts § 876 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

2A *Moore's Federal Practice* ¶ 8.13 (2nd ed. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

P.L. 102-572, Federal Courts Administration Act of 1992 . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiffs submit this Memorandum of Law in opposition to defendant Saudi American Bank's ("SAMBA") motion to dismiss the complaint.

## I.     OVERVIEW

Defendant's motion to dismiss charges that the pleadings fail to state a cause of action, or alternatively, that plaintiffs' claims are barred by the Air Transportation Safety and System Stabilization Act ("ATSSSA").  Since plaintiffs have met the notice pleading standards of Fed. R. Civ. P. 8(a) requires to survive such a motion, defendant's motion must be denied

Plaintiffs have alleged that SAMBA was part of a deliberately complex network of banks and other financial institutions, businesses, charities and individuals that provided financial and logistical support for Osama Bin Laden and the al Qaeda terrorist network.  SAMBA provided banking and financial services to defendant Dallah Al Baraka Group, and served as correspondent bank for defendants Al Shamal Islamic Bank and Al Faisal Islamic Bank, and Al Baraka Bank Lebanon.  Fourth Amended Complaint ("4AC")[1] ¶¶606, 607, 608.  SAMBA also provided Bin Laden with financial support for his operations in Sudan.  *Id.,*¶608.  SAMBA also provided financial services to the Arabian Cement Company, which is owned by defendants Al Rajhi and Saudi Bin Laden Group, and managed by other defendants, including Khalid Bin Salim Bin Mahfouz. *Id.,* ¶605. SAMBA maintained accounts for and provided services to charity defendants World Assembly of Muslim Youth, International Islamic Relief Organization and al

---

[1] SAMBA has moved to dismiss Plaintiffs' Consolidated Master Complaint however between the filing of Consolidated Master Complaint and the Third Amended Complaint, no substantive allegations relating to SAMBA have been added. Plaintiffs have now filed a Fourth Amended Complaint, and again there are no new substantive allegations. Since  most other defendants in this action have moved to dismiss Plaintiffs' Fourth Amended Complaint, and in the interest of brevity and consistency, only the 4AC will be referenced.

Haramain Foundation.  *Id.*, ¶ 609.  The interrelationships between SAMBA and these various financial institutions which were providing support to al Qaeda demonstrate that SAMBA knowingly provided material support to terror organizations prior to September 11.

Plaintiffs' factual allegations are sufficient to defeat defendant's motion.  Fed. R. Civ. P. 8(a) requires only that the complaint contain a short and plain statement of the court's jurisdiction, a short and plain statement of plaintiffs' claims, and a demand for relief.  *See Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Fed. R. Civ. P. 8(a) does "not require a claimant to set out in detail the facts upon which he bases his claim."  "All that is required is fair notice to defendant "of what the plaintiff's claim is and the grounds upon which it rests." *Id.; see Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (Rule 8 "establishes a pleading standard without regard to whether a claim will succeed on the merits.");  *Burnett v. Al Baraka*, 274 F.Supp.2d 86, 103, 107, 110 (D.D.C. 2003) ("*Burnett I*").  Plaintiffs have met these requirements.

Furthermore, the ATSSA does not preempt plaintiffs' claims under the ATA or the Alien Tort Claims Act.  *See Burnett I* at 95.  In *Burnett,* the court held that "[t]here is no conflict between the ATSSSA and the ATA if both statutes are given effect," and specifically held that the ATSSSA does not preempt plaintiffs' claims under other federal statutes. *Id*. at 95.

## II.    ARGUMENT

### A.    PLAINTIFFS' BURDEN AT THE PLEADING STAGE IS MINIMAL

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied unless it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957);  *Simmons v. Abruzzo,* 49 F.3d 83, 87

(2d Cir.1995).  It is axiomatic that the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true, and plaintiff must be given the benefit of every reasonable inference that may be drawn from the complaint.  *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999).  "A plaintiff is not required to prove her case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency of Greene County,* 239 F.3d 517 (2d Cir. 2001), (citing  2A *Moore's Federal Practice* ¶ 8.13, at 8-68 (2d ed.1989)); *see, e.g., Geisler v. Petrocelli,* 616 F.2d 636, 639-40 (2d Cir.1980)  (pleading of evidence beyond allegations contravenes proper pleading procedure). The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotation marks omitted).  Fed. R. Civ. P. 8(a)(2) requires only that a complaint contain a "short plain statement of the claim showing that the pleader is entitled to relief ." *Id.*   There is no heightened standard of pleading applicable to this case (as there is, for example, in fraud cases under Fed. R. Civ. P. 9(b)).  *Burnett I,*  95-96.


### B.     PLAINTIFFS' COMPLAINT STATES A CLAIM UNDER THE ANTI-TERRORISM ACT (ATA), 18 U.S.C. §2333(a)

SAMBA asserts that the 4AC should be dismissed because plaintiffs have not adequately plead facts which show that their actions were the proximate cause of or a substantial factor in causing plaintiffs' injuries. SAMBA is wrong on both the facts and the law.  Plaintiffs need only allege that defendants provided "material support" to al Qaeda, or "aided and abetted" such organizations, or conspired with such organizations, to commit terrorist attacks against the U.S.  *Boim v. Quranic Literary Institute, et al.,* 291 F.3d 1000 (7th Cir. 2002).

To recover under the ATA plaintiffs need only show that defendants: 1) knowingly provided material support to a recognized terrorist organization with the intent to support that organization's illegal activities; and/or 2) aided and abetted acts of international terrorism; and/or 3) could foresee that their support would contribute to the commission of a terrorist act.  *See Boim* 291 F.3d at 1012-2.  Plaintiffs have adequately alleged each element.

In creating a civil cause of action for United States nationals injured as a result of international terrorism the ATA provides that:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

*Id.*

"International terrorism" is specifically defined in 18 U.S.C. § 2331(1) as activities that

(A)     involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or any State, or that would be a criminal violation if committed within the jurisdiction of the United Sates or of any state;

(B)     appear to be intended
(i) to intimidate or coerce a civilian population;
(ii) to influence the policy of a government by intimidation or coercion; or
(iii) to affect the conduct of a government by assassination or kidnaping; and

(C)     occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

*Id.*

*Boim v. Quranic Literacy Institute* recognized a cause of action under the ATA for aiding and abetting with terrorists.  In *Boim*, a seventeen year old American citizen was gunned down in

-4-

Israel's West Bank territory.  The gunmen were members of Hamas, a known terrorist

organization.  His parents filed a civil action in the United States District Court for the Northern

District of Illinois under the ATA against several nonprofit entities that the Boims alleged

solicited and laundered funds to provide financial support to Hamas terrorist activities.  The

nonprofits moved to dismiss for failure to state a claim upon which relief could be granted.  The

District Court denied the motion and the Seventh Circuit affirmed.

Pointing at length to the legislative history of the statute, the Seventh Circuit emphasized

Congress' intent to reach beyond those persons who themselves commit the violent act that

directly causes the injury and impose liability *"at any point along the causal chain of terrorism,"*

*Id.*  at 1011 (citations omitted), particularly on those who provide the finances for the

commission of terrorist acts:

> The statute would have little effect if liability were limited to the
> persons who pull the trigger or plant the bomb because such
> persons are unlikely to have assets, much less assets in the United
> States, and would not be deterred by the statute. . . . perhaps most
> importantly, there would not be a trigger to pull or a bomb to blow
> up without the resources to acquire such toils of terrorism and to
> bankroll the persons who actually commit the violence.  Moreover,
> the organizations, businesses and nations that support and
> encourage terrorist acts are likely to have reachable assets that they
> wish to protect. *The only way to imperil the flow of money and
> discourage the financing of terrorist acts is to impose liability on
> those who knowingly and intentionally supply the funds to the
> persons who commit the violent acts.*

*Id.* at 1021 (emphasis added); *see* P.L. 102-572, Federal Courts Administration Act of 1992,

Senate Report 102-342 (July 27, 1992) at 22 (Congress intended to impose "liability at any point

along the causal chain of terrorism").

The *Boim* court also acknowledged that the legislative history of the ATA evidences an intent by Congress to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law. *Id.* at 1010 (citations omitted).  Comparing the statute to a traditional tort, the court found that the statute contains all of the elements of a traditional tort: breach of a duty (i.e., committing an act of international terrorism), injury to the person, property or business of another and causation (injured by reason of). *Boim* at 1010.

*Boim* ultimately delineated two paths to proving a claim supporting liability:  i) by proving conduct which is "international terrorism" as defined in the criminal counterparts to §2333 - 18U.S.C. §2339A and §2339B; and, ii) by proving the elements of traditional tort aiding and abetting theory.  Plaintiffs have adequately plead facts which support both of these theories of liability.

### 1.    Defendants Have Committed Acts of International Terrorism as Defined by the Statute

*Boim* concluded that because Congress intended to impose criminal liability for funding terrorism, that it also intended to impose civil liability for the "at least as broad a class of violent terrorist acts" as in §§2333 and 2331(1), and that therefore, the criminal provisions of the ATA are a clear indication of Congress' intent to consider financial support of a terrorist organization to be an act of international terrorism under §2333. *Boim* at 1015.   Therefore, conduct which violates §2339A or §2339B is sufficient to meet the definition of international terrorism under

§§2333 and 2331(1).  *Id; see Burnett I*, 274 F. Supp.2d at 106.  ("Liability can be established by proving violations of the criminal counterparts of 18 U.S.C. §2333 and §2339A").

Looking to the conduct specifically outlined in these criminal counterparts to §2333, §2339A prohibits the provision of "material support" for an extensive list of specific violent crimes associated with terrorism.  By definition, material support includes "currency or other financial securities, financial services . . ."  18 U.S.C. §2339A.  Under this definition, "even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability in §2333." *Boim* at 1015.   Section 2339 B then extends criminal liability to those who knowingly provide material support to foreign terrorist organizations:

> Whoever, within the United States or subject to the jurisdiction of the United
> States, knowingly provides material support or resources to a foreign terrorist
> organization, or attempts or conspires to do so, shall be fined under this title or
> imprisoned not more than 15 years . . .

*Id.*

Under *Boim,* conduct which could be considered a violation of either section, will be considered an act of international terrorism subject to civil liability under §2333.  This recognizes Congress' unequivocal intent to "interrupt or at least imperil the flow of money" to terrorist organizations by imposing liability for financing terrorist activities, *no matter how small.  Boim* at 1011 (emphasis in original).

The 4AC clearly alleges that SAMBA, through its support of Bin Laden and his operations in Sudan, through its banking relationships with Al Baraka banks, Dallah Al Baraka, Al Shamal and Al Faisal Islamic Bank, provided material support to terrorist activities.

### 2.      General Tort Law Principles Govern the Application of the ATA

*Boim* held that Congress expressed an intent to expand the reach of the §2333 to the limits of general tort law principles, and to make the civil liability provisions of §2333 at least as extensive as the corresponding criminal provisions under §2339A and B.  *Id* at 1020.  The definition of "international terrorism" under §2331(1)(A) includes activities that

> involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or any State, or that would be a criminal violation if committed within the jurisdiction of the United Sates or of any state[.]

*Id.*  The *Boim* court found that, "[t]his language, embracing activities that "involve" violent acts, taken at face value, should certainly cover aiding and abetting violent acts," and noted that if liability were not extended to aiders and abettors who knowingly and intentionally fund acts of terrorism, Congressional intent to "cut off the flow of money to terrorists at every point along the causal chain" would be frustrated. *Id.*  at 1020-21.   Liability must therefore extend beyond those who physically detonate bombs or hijack aircraft.

### a.      Aiding and Abetting

Plaintiffs adequately plead a cause of action for aiding and abetting under the ATA. Plaintiffs need only plead facts which show that: i) the defendants aided those who financed, organized and perpetrated the 9/11 attacks; ii) the defendants were generally aware of their role as part of an overall illegal or tortious activity at the time that they provided the assistance; and iii) the defendant must knowingly and substantially assist the principal violation.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983); *see also Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 181 (1994) (describing Halberstam as "a

comprehensive opinion on the subject"). In *Halberstam,* a wrongful death case, the court held

that the defendant Hamilton could be liable for aiding and abetting her co-defendant Welch in the

murder of plaintiff's husband during a burglary even though she was not present at the burglary.

The court found that Hamilton was liable for aiding and abetting the murder/burglary because she

knew that Welch was involved in some type of crime, in which violence and killing was always a

foreseeable risk, and assisted him in disposing of large quantities of stolen goods. Essentially,

Hamilton provided general assistance to Welch which facilitated his criminal activities, and

while she did not provide specific assistance in the crime for which she was held liable, she was

found to have aided and abetted Welch in committing it. *Id.*

      Applying *Halberstam* to this case, plaintiffs need only show that defendants knew that

they were supporting al Qaeda and Bin Laden (whether directly or indirectly makes no

difference), that they provided substantial assistance to organizations that aided and abetted al

Qaeda, and could foresee that such assistance would result in a terrorist attack against U.S.

citizens. Plaintiffs need not allege or prove that SAMBA knew that al Qaeda was going to

commit the specific horrific acts of September 11th but only that it knew that they were assisting

terrorists in committing terrorist activities aimed at the United States. Death and destruction in

the United States was the well publicized aim of al Qaeda and its terrorist network. By providing

assistance and services to the terrorist network, SAMBA knew that acts of violence were a

foreseeable consequence of their support.

      **3.**      **Plaintiffs Have Properly Pled Causation**

      Plaintiffs need not allege that the financial and other support SAMBA provided to al

Qaeda were used by the specific terrorists who committed the attacks of September 11th in those

attacks.  "[S]uch specificity [is] not required at the pleading stage." *Burnett I* at 107 (citing

*Swierkiewicz*, 534 U.S. at 512-413).  Proximate cause does not require a direct link or even

foreseeability of the precise events. *Stanford v. Kuwait Airways, Corp.,* 89 F. 3d 117, 127 (2d

Cir. 1996).  It is sufficient that defendants should have been able to foresee that some injury to

some person might result as a consequence of their acts. *Lamarca v. United States,* 31 F.

Supp.2d 110, 127 (E.D.N.Y. 1998).  Even though plaintiffs need not allege that defendants'

support was given directly to the 9/11 highjackers, plaintiffs have in fact done so - - alleging that

one of defendants' employees paid the rent for two of the 9/11 highjackers.  In any event, by

knowingly providing Bin Laden and al Qaeda with financial support and services, SAMBA knew

that it was providing support and services to an organization whose aim was to commit terror

attacks.  Therefore, it was foreseeable that with their assistance, injury to some persons might

result.

    Furthermore, the Court should also consider Congress' goal of cutting off terrorist

funding when it enacted the Anti-Terrorism Act.  Given the difficulty in tying specific cash

support to the September 11th, 2001 attacks, forcing plaintiffs to plead and prove but for

causation would frustrate this goal.  As Judge Calabresi noted:

> [I]f (a) negligent act was deemed wrongful because that act increased the
> chances that a particular type of accident would occur, and (b) a mishap of
> that very sort did happen, this was enough to support a finding by the trier
> of fact that the negligent behavior caused the harm.  Where such a strong
> causal link exists, it is up to the negligent party to bring in evidence
> denying but for cause and suggesting that in the actual case the wrongful
> conduct had not been a substantial factor.

*Zuchowicz v. United States,* 140 F.3d 381, 390-91(2d Cir. 1998).  Judge Calabresi's reasoning

applies to SAMBA's support of al Qaeda, which at the very least increased the likelihood that

terrorists would attack the United States.

Plaintiffs properly allege that SAMBA's logistical support, financing and funding of al

Qaeda increased the risk that al Qaeda would be able to commit terrorist attacks.  The September

11, 2001 terror attacks were thus a foreseeable result of its support.

### C.      PLAINTIFFS HAVE ADEQUATELY PLEAD STATE LAW CLAIMS AGAINST SAMBA

SAMBA's argument that plaintiffs' state law claims should be dismissed is simply a

repackaging of their arguments with respect to the claims under the ATA.   SAMBA contends

that plaintiffs have failed to adequately allege causes of action for wrongful death, survival

damages, and assault and battery because plaintiffs have not alleged that SAMBA caused any

deaths or injuries.   This reading of the complaint overlooks plaintiffs' allegations of aiding and

abetting.  As demonstrated above, plaintiffs adequately allege the causal connection between

SAMBA's acts and the September 11th attacks and, similarly, adequately allege that SAMBA

aided and abetted those attacks which resulted in plaintiffs' injuries.

There can be no doubt that aiders, abettors and co-conspirators may be liable for wrongful

death. *See Restatement (Second) Torts* § 876 (1979).  Indeed, *Halberstam*, 705 F.2d 472, was

itself a wrongful death case in which liability was imposed on the defendant, in large part,

because she provided financial assistance to the direct perpetrator of the murder in question.

Much like *Halberstam,* the 4AC sufficiently alleges that SAMBA, by providing an infrastructure

to channel financial support to terrorists, aided, abetted and/or conspired with those responsible for the September 11th murders.

Likewise, the facts alleged in the 4AC and discussed above give rise to plaintiffs' claims for assault, battery and intentional murder. To sustain a cause of action for assault, there must be proof of physical conduct placing plaintiff in imminent apprehension of harmful contact. *Bastein v. Sotto*, 749 N.Y.S.2d 538, 539 (N.Y.A.D. 2d Dept. 2002). A battery essentially consists of an intentional, offensive, wrongful bodily contact. *Goff v. Clark*, 755 N.Y.S.2d 493, 495 (N.Y.A.D. 3d Dept. 2003). Intentional murder requires the killing of another with some intent to do so. 6 N.Y.PRAC. § 6:12. The 4AC sufficiently states that SAMBA provided substantial material support to those responsible for the September 11 murders, that it did so with knowledge of and/or intent to bring about such terrorist acts, and that its support caused or contributed to those acts. Plaintiffs' allegations are sufficient to fulfill the required elements of the above-listed state law claims, especially when viewed in light of the allegations of aiding and abetting.

### D.    PLAINTIFFS CLAIMS ARE NOT BARRED BY THE AIR TRANSPORTATION SAFETY AND SYSTEM STABILIZATION ACT

SAMBA asserts that Section 408(b)(1) of the ATSSSA preempts all other federal statutes, therefore plaintiffs federal statutory claims, including those arising under the ATA and the Alien Tort Claims Act must be dismissed. This reading of the ATSSSA attempts to create a conflict where none exists and directly contradicts the holding in *Burnett*. In *Burnett*, the Court acknowledged that "[c]onstruing the ATSSA's exclusive jurisdiction language to encompass claims against the September 11 terrorists and their conspirators would bring the ATSSSA irreconcilably into conflict with the ATA." *Burnett*, 274 F. Supp.2d at 95. The Court went on to

note that "where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Id.* at 95; *see also Morton v. Mancari,* 417 U.S. 535, 551(1974).   There is no evidence to suggest that Congress intended to preempt the ATA when it passed the ATSSSA.   Rather, from the little legislative history available for this quickly passed law, the only clear congressional intent was to protect the financial well being of the airline industry.  See 147 Cong. Rec. S9589-9603(Sept 21, 2001); 147 Cong. Rec. H5894-5918 (Sept. 21, 2001).  Defendants arguments are without merit - the ATSSSA does not preempt plaintiffs' claims under the ATA and other applicable federal statutes.

### E.    PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES

SAMBA argues that plaintiffs' claims for punitive damages should be dismissed because "punitive damages are a type of relief not a cause of action."  SAMBA's Moving Brief at 18. However, the complaint makes clear that punitive damages are requested and warranted by virtue of the conduct spelled out in the body of the complaint.  Regardless of how punitive damages were requested in the 4AC, if plaintiffs prove that defendant knowingly financed and/or provided material support to terrorists whose aim was to harm the United States, its citizens and interest, then plaintiffs will be entitled to punitive damages.  Punitive damages are designed to punish defendants for outrageous conduct and to deter defendants and others from similar conduct in the future. *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998)(citing *Restatement (Second) of Torts*)§908(1)(1979).  The ATA and ATCA both provide for the imposition of punitive or exemplary damages.  Certainly, the support of terrorists whose goal is to harm innocent people is sufficiently outrageous to warrant punitive damages.

-13-

## CONCLUSION

For the foregoing reasons, this Court should deny Saudi American Bank's motion to

dismiss.

Dated: New York, New York
         June 11, 2004

                                        KREINDLER & KREINDLER LLP
                                        *Plaintiffs Liaison Counsel*


                              By:      _____/S/_____
                                        James P. Kreindler (JK7084)
                                        Marc S. Moller (MM0143)
                                        Justin T. Green (JG0318)
                                        Andrew J. Maloney, III (AM8684)
                                        100 Park Avenue
                                        New York, NY  10017-5590
                                        Phone: (212) 687-8181
                                        Fax:  (212) 972-9432

                                        Barasch McGarry Salzman Penson & Lim
                                        11 Park Place
                                        New York, NY 10007
                                        Phone:  (212) 385-8000
                                        Fax:  (212) 385-7845

                                        Baumeister & Samuels, P.C.
                                        One Exchange Plaza
                                        New York, NY 10006
                                        Phone:  (212) 363-1200
                                        Fax:  (212) 363-1346

                                        Speiser, Krause, Nolan & Granito
                                        Two Grand Central Tower
                                        140 East 45th Street (34th Floor)
                                        New York, NY 10017
                                        Phone:  (212) 661-0011
                                        Fax:  (212) 953-6483

Law Firm of Aaron J. Broder
      & Jonathan C. Reiter
350 Fifth Avenue, Suite 2811
New York, NY 10118
Phone:  (212) 244-2000

Jaroslawicz & Jaros, Esqs.
150 William Street
New York, NY 10038
Phone:  (212) 227-2780