UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____  )
                                   )
In Re TERRORIST ATTACKS on         )
SEPTEMBER 11, 2001                 )      03 MDL 1570 (RCC)
_____  )
                                   )
KATHLEEN ASHTON et al.,            )
                                   )
                       Plaintiffs, )
              v.                   )      02 CV 6977 (RCC)
                                   )
AL QAEDA ISLAMIC ARMY et al.,      )
                                   )
                       Defendants. )
_____  )

**ASHTON PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO MAR-JAC POULTRY, INC. AND INTERNATIONAL INSTITUTE
OF ISLAMIC THOUGHT MOTIONS TO DISMISS**

KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5540
Phone:  (212) 687-8181
Fax: (212) 972-9432

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ALLEGATIONS AGAINST DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANTS' MOTIONS ARE WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD ON MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT:

      I.     PLAINTIFFS HAVE ADEQUATELY
             ALLEGED CLAIMS PURSUANT TO THE ATA . . . . . . . . . . . . . . . . . . . . . . . . 5

             A.     Plaintiffs Have Properly Alleged Causation . . . . . . . . . . . . . . . . . . . . . . . 7

             B.     Plaintiffs Have Properly Alleged Foreseeability . . . . . . . . . . . . . . . . . . . 9

             C.     Plaintiffs Have Properly Alleged Criminal
                    Violations And Breach of General Tort Principles . . . . . . . . . . . . . . . . . 10

                    1.     Liability Through Criminal Violations . . . . . . . . . . . . . . . . . . . . 10

                    2.     Liability Through General Tort Principles . . . . . . . . . . . . . . . . . 11

                          a.     Aiding and Abetting . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                          b.     Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     II.     PLAINTIFFS HAVE ADEQUATELY
             ALLEGED STATE LAW CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Atkins v. County of Orange*,
  251 F.Supp.2d 1225 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Boim v. Quranic Literacy Institute, et al.*,
  291 F.3d 1000 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 10-12

*Burnett v. Al Baraka Investment and Development Corp.*,
  274 F.Supp.2d 86 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 14

*Central Bank of Denver v. First Interstate Bank of Denver*,
  511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chance v. Armstrong*,
  143 F.3d 698 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Conley v. Gibson*,
  355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fassett v. Delta Kappa Epsilon (New York)*,
  807 F.3d 1150 (3rd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*In re Temperomandibular Joint (TMJ) Implants Products Liability Litigation*,
  113 F.3d 1484 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lee v. Bankers Trust Co.*,
  166 F.3d 540 (2nd cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Munsey v. Webb*,
  233 U.S. 150 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Simmons v. Abruzzo*,
  49 F.3d 83 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Woodford v. Community Action Agency of Greene County*,
  239 F.3d 517 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Zuchowicz v. United States*,
  140 F.3d 381 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATE CASES

*Bastein v. Sotto*,
  749 N.Y.S.2d 538 (N.Y.A.D. 2nd Dept. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Goff v. Clark*,
  755 N.Y.S.2d 493 (N.Y.A.D. 3rd Dept. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Palsgraf v. Long Island R. R. Co.*,
  248 N.Y. 339 (N.Y. 1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

18 U.S.C. § 2331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

18 U.S.C. § 2333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. §2339A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. §2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

18 U.S.C. § 2339C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## MISCELLANEOUS

Wex S. Malone, Remuniations on Cause-in-Fact,
  9 Stan.L.Rev. 60, 72-73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6 N.Y. Prac. § 6:12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4 Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray,
  The Law of Torts § 20.2, at 94-101(2 ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

W. Page Keeton et al., PROSSER AND KEETON ON TORTS
§ 43, p. 299 (5th ed. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**INTRODUCTION**

Plaintiffs sued Mar-Jac Poultry, Inc. ("Mar-Jac") and International Institute of Islamic Thought ("IIIT") (collectively "defendants") because they are part of a vast and complex network of entities - - the "SAAR Network" - - specifically set up to covertly provide money and support to Osama Bin Laden ("Bin Laden") and al Qaeda, and other international terrorist groups.  This support substantially contributed to the September 11, 2001 attacks.  Plaintiffs properly allege these claims in the Fourth Amended Complaint ("4AC").[1]  When taken as true as they must be here, plaintiffs' allegations establish defendants' liability under the Anti-Terrorism Act ("ATA") and the various state law theories alleged.  Therefore, defendants' motions to dismiss must be denied.

**ALLEGATIONS AGAINST DEFENDANTS**

Plaintiffs allege that defendants are part of the SAAR Network and are co-conspirators, material sponsors and/or aiders and abetters of al Qaeda and terrorism. 4AC ¶ 339.  SAAR takes its name from Sulaiman Abdul Aziz Al Rajhi, who helped form the SAAR Foundation in the 1970's. *Id.* at ¶ 333.  The SAAR Foundation was incorporated in Herndon, Virginia as a non-profit organization in July, 1983, and was dissolved in December, 2000. *Id.*  In spite of the Foundation's dissolution, its network remained active supporters of terrorism through September 11, 2001. *Id.* at ¶¶ 333-35.  Indeed, the SAAR Foundation address on Grove Street in Herndon, Virginia was shared by more than one hundred affiliated organizations, including defendant Muslim World League, another terrorist supporting group whose assets were frozen by the U.S. because of its terrorism links. *Id.* at 334, 375.  The Muslim World League supported al Qaeda.  The League's secretary and treasurer, Yaqub Mirza, is also a Mar-Jac officer. *Id.* at

---

[1]  Mar-Jac has moved to dismiss plaintiffs' Third Amended Complaint (3AC) and IIIT has moved to dismiss the 4AC.  The substance of the two complaints is identical, but the 4AC adds several additional parties not relevant to this opposition.  Therefore, in the interest of brevity, only the 4AC will be referenced.

¶¶ 441 & 456.  Most of the SAAR Network organizations at the Grove Street address do not maintain a physical presence there, or elsewhere. *Id.* at ¶ 334.  In spite of this, the SAAR Foundation reported annual revenues of over $1.7 billion in 1998, revenues higher than any other U.S. charity. *Id.* at ¶ 336.  Not surprisingly, SAAR and its affiliated charities keep a low profile in that they do not conduct fund raising events or publicly reach out to potential donors. *Id.*

Plaintiffs allege that the SAAR Network and the more than one hundred businesses and individuals that comprise it (including Mar-Jac and IIIT) are al Qaeda fronts and support al Qaeda and international terrorism by raising and laundering money used to carry out terrorist activities. 4AC at ¶¶ 335 & 338.  The SAAR Network is a sophisticated arrangement of profit and non-profit entities that serve as fronts for Islamic terrorist groups. *Id.* at ¶ 334.  When read in its entirety, and pursuant to the liberal pleading provisions of Fed. R. Civ. P. 8(a)(2), the complaint sufficiently alleges that the SAAR Network, including its member entities Mar-Jac and IIIT, is a major al Qaeda supporter. *Id.* at ¶¶ 334-36; see also ¶¶ 333-55 (detailing the structure and operations of the SAAR Network).

SAAR entities do not function independently of one another.  Instead, there is a high degree of overlap among their corporate officers and board members. 4AC at ¶¶ 334 & 338.  The SAAR entities work together to support al Qaeda and terrorism. *Id.* at ¶ 333.  For example, the SAAR Network provided the bulk of IIIT's operating expenses and IIIT, in turn, financed "charitable" organizations, two of which have been accused of being Islamic Jihad cells. *Id.* at ¶ 579.  IIIT is directed by Taha Al Alwani, an Iraqi who founded defendant Muslim World League, a terrorism supporter. *Id.* at 375.

Two SAAR executives, defendants Samir Salah and Ibrahim Hassabella, were also directors of defendant Bank Al Taqwa. *Id.* at ¶ 337.  The U.S. designated Bank Al Taqwa as a

terrorist entity on November 7, 2001 and froze its U.S. assets. *Id.* The head of Al Taqwa was defendant Yousef Nada, an individual listed as a terrorist by the U.S. and United Nations and the U.S. has frozen Al Taqwa's assets. *Id.* Two Mar-JAC executives, defendants Jamal Al Barzinji and Hisham Al Talib worked for Nada. *Id.*; *see also* ¶ 537.

Mar-Jac is closely affiliated with the Al Rajhi Bank, which provided money to al Qaeda and was the primary bank of the Muslim World League. 4AC ¶¶ 333, 560 & 562. Al Rajhi Bank has had long-standing relationships with defendants who aided and abetted al Qaeda. *Id.* at ¶¶ 559-62. Defendant Sulaiman Abdul Aziz Al Rajhi (founder of the SAAR Foundation) is the Bank's managing director and his brother, defendant Saleh Abdul Aziz Al Rajhi, is its chairman. *Id.* at ¶ 559. Saleh Al Rajhi's contact information was found in the home address book of defendant Wadih El Hage after he was arrested. Plaintiffs allege that Hage was Bin Laden's personal secretary. Hage was convicted in New York in 2000 for his participation in the Al Qaeda conspiracy to bomb the U.S. Embassies in Kenya and Tanzania in 1998. *Id.*

On March 20-21, 2002, the Joint Terrorism Task Force, Operation Greenquest, raided the Virginia offices of many SAAR Network organizations (including Mar-Jac and IIIT). 4AC ¶ 335. That task force was created after September 11, 2001 to search for the sources of terrorist funding. *Id.* According to the search warrants, the raids focused on finding evidence of money laundering and tax evasion activities, and ties to terrorist individuals and organizations, such as al Qaeda and Bin Laden. *Id.*

## DEFENDANTS' MOTIONS ARE WITHOUT MERIT

Defendants' motions to dismiss ("MTD") are fatally flawed because they fail to consider the 4AC in its entirety. Defendants' narrow reading of the allegations misses the broader picture. The 4AC describes the makeup and activities of the terrorist network of which

defendants are members.  It is well-settled that complaints must be read as a whole to determine whether claims have been stated. *Atkins v. County of Orange*, 251 F. Supp.2d 1225, 1231-32 (S.D.N.Y. 2003).

## STANDARD ON MOTION TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should not be granted unless it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir.1995).  The court must presume that the complaint's allegations are true and give plaintiff the benefit of every reasonable inference that may be drawn therefrom. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999).  Plaintiffs are not required to prove their case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency of Greene County,* 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998).

The analysis of 12(b)(6) motions are made in the context of the requirements of Fed. R. Civ. P. 8(a)(2).  That rule requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Chance,* 143 F.3d at 701.  The "short and plain statement" must simply give the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests. *Burnett v. Al Baraka Inv. and Development Corp.*, 274 F. Supp.2d 86, 103 (D.D.C. 2003).  Here, plaintiffs have provided defendants with fair notice of plaintiffs' claims.  To expect or require plaintiffs to set forth every wrongful act of defendants is as unreasonable as it is impractical at this point in the proceedings.  More basically, however, it

-4-

is simply not required at this threshold stage of notice pleading. *See* Fed. R. Civ. P. 8 & 12.

Plaintiffs are entitled to discovery before they should be called upon to marshal their evidence.

**ARGUMENT**

I.  **PLAINTIFFS HAVE ADEQUATELY**
    **ALLEGED CLAIMS PURSUANT TO THE ATA**

        Defendants' motions assert, directly or impliedly, that plaintiffs must plead and prove

that "but for" each defendant's illegal activities, the September 11, 2001 attacks would not have

occurred. This contention distorts the requirements of the ATA and state law.  Plaintiffs must

simply allege that the defendants violated one of the ATA's criminal provisions and that the

violation was a substantial factor in bringing about plaintiffs' harm, or alternatively, plaintiffs

must establish liability pursuant to general tort law principles.  Plaintiffs have properly alleged

claims under both theories.

        The ATA provides a civil cause of action for United States nationals injured as a result of

international terrorism.  Specifically, it states that:

> Any national of the United States injured in his or her person,
> property, or business by reason of an act of international terrorism
> or his or her estate, survivors, or heirs, may sue therefor in any
> appropriate district court of the United States and shall recover
> threefold the damages he or she sustains and the cost of the suit,
> including attorney's fees.

18 U.S.C. § 2333(a).  "International terrorism" is specifically defined in 18 U.S.C. § 2331(1) as

activities that:

> (A)    involve violent acts or acts dangerous to human life that are a violation of the
> criminal laws of the United States or any State, or that would be a criminal
> violation if committed within the jurisdiction of the United Sates or of any state;
>
> (B)    appear to be intended
> (i) to intimidate or coerce a civilian population;
> (ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by assassination or kidnaping; and

(C)    occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

The seminal decision interpreting the ATA is *Boim v. Quranic Literacy Institute, et al.*, 291 F.3d 1000 (7th Cir. 2002).  In *Boim*, a seventeen year old American citizen was gunned down in Israel's West Bank territory by members of Hamas.  The decedent's parents filed a civil action under the ATA against several nonprofit entities that the Boims alleged solicited and laundered funds to provide financial support to Hamas terrorist activities.  The nonprofits moved to dismiss for failure to state a claim upon which relief could be granted.  The District Court denied the motion and the Seventh Circuit affirmed.

The Seventh Circuit recognized two distinct avenues for civil liability: one for providing "material support" to international terrorists in breach of the criminal provisions of §§ 2339A and 2339B; and the other under general tort law principles that are subsumed in the ATA, including liability for aiding, abetting or conspiring with terrorists.  After clearly enunciating that any criminal violation of §§ 2339A or 2339B gives rise to civil liability under the ATA so long as proximate cause is also shown, the court turned its attention to the general tort principles avenue, focusing primarily on the supporters of those who physically perpetrate the specific act of violence.  Pointing at length to the ATA's legislative history, the court emphasized  that Congress intended the statute to reach beyond those persons who directly commit the acts that cause injury, and impose liability "**at any point** along the causal chain of terrorism." *Boim,* 291 F.3d at 1011 (citations omitted and emphasis added).  The court expressly noted that the breadth

of the general tort principles avenue extends to those who provide financing for the commission

of terrorist acts:

> The statute would have little effect if liability were limited to the
> persons who pull the trigger or plant the bomb because such
> persons are unlikely to have assets, much less assets in the United
> States, and would not be deterred by the statute. . . . perhaps most
> importantly, there would not be a trigger to pull or a bomb to blow
> up without the resources to acquire such toils of terrorism and to
> bankroll the persons who actually commit the violence.

*Id.* at 1021.

A.     **Plaintiffs Have Properly Alleged Causation**

Under *Boim* and *Burnett I,* plaintiffs need not allege that the September 11, 2001

terrorists used the financial and logistical support provided by the SAAR Network, including

defendants Mar-Jac and IIIT. *See, e.g.,* 18 U.S.C. § 2339C(a)(3).  As Judge Robertson has held,

"such specificity cannot be required at the pleading stage." *See Burnett I*, 274 F. Supp.2d at 107.

Plaintiffs contend that defendants are part of a complex organization that contributed

very substantial financial and logistical support to al Qaeda. 4AC ¶ 339.  As SAAR Network

members, defendants are liable for their support of al Qaeda and Bin Laden, the support of the

organization as a whole, and the support of the other individual SAAR entities. *Cf. Boim*, 291

F.3d at 1015 (holding that "Congress' goal of cutting off funding for terrorism would be

seriously compromised if terrorist organizations could avoid liability by simply pooling together

small donations to fund a terrorist attack.").  The allegations against defendants may not be

viewed in isolation - - they must be read in the proper, broader context.  When viewed in this

light, the 4AC adequately alleges that the SAAR entities working together provided substantial

support to al Qaeda.

In determining causal issues, the Court should account for Congress' goal of cutting off funding for terrorism. *Cf.* Wex S. Malone, REMUNIATIONS ON CAUSE-IN-FACT, 9 Stan. L. Rev. 60, 72-73 (1956) (finding that the rigor with which courts hold plaintiffs to their burden of proof on factual cause depends on the importance of the claim being enforced and the connection between the harm and the interests the legal claim seeks to protect).  The plaintiffs need only allege that defendants' support for al Qaeda and terrorism increased the chances that terror attacks on the U.S. would occur.  Indeed, this conclusion is implied by a relevant causal inquiry articulated by Judge Calabresi:

> [I]f (a) a negligent act was deemed wrongful *because* that act increased the chances that a particular type of accident would occur, and (b) a mishap of that very sort did happen, this was enough to support a finding by the trier of fact that the negligent behavior caused the harm.  Where such a strong causal link exists, it is up to the negligent party to bring in evidence denying *but for* cause and suggesting that in the actual case the wrongful conduct had not been a substantial factor.

*Zuchowicz v. United States*, 140 F.3d 381, 390-91 (2d Cir. 1998); *see also* 4 Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, THE LAW OF TORTS § 20.2, at 94-101 (2d ed. 1986) (providing citations to cases taking a lenient view of plaintiff's burden on causation).

Plaintiffs allege that defendants' support of a known terrorist organization with the avowed purpose of attacking the U.S. increased the chances that attacks against the U.S., such as the September 11 terrorist attacks, would take place.  These allegations are sufficient on causation.

B.        **Plaintiffs Have Properly Alleged Foreseeability**

It has been held that "foreseeability is the cornerstone of proximate cause, and in tort law, a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions." *Boim*, 291 F.3d at 1012 (citations omitted).  Foreseeability is built into the ATA because §§ 2339A and 2339B require that the material support be offered with knowledge of and/or intent to further the terrorist activities.  In other words, a terrorist's financial supporter can obviously foresee that terrorist acts may occur as the result of the support.  Indeed, it can be assumed that the supporting person intends that such acts will happen. *See id.* at 1015 (holding that violations of §§ 2339A and/or 2339B will give rise to civil liability under § 2333 provided that knowledge and intent are also shown).

Foreseeability does not depend on the particular circumstances of an incident. *See, e.g., Palsgraf v. Long Island R. R. Co.*, 248 N.Y. 339, 344 (N.Y. 1928) ("It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye.") (quoting *Munsey v. Webb*, 233 U.S. 150, 156 (1913)); *see also* W. Page Keeton et al., PROSSER AND KEETON ON TORTS § 43, p. 299 (5th ed. 1984) (observing the "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event or harm, and not its 'precise' nature, details, or above all manner of occurrence") (citations omitted).  Accordingly, plaintiffs do not have to show that the specific events of September 11, 2001 were foreseeable or intended, but only that defendants intended, knew or could foresee that some event such as the attacks might result from their financial contributions and support.

Plaintiffs have alleged that defendants, as SAAR Network members, were al Qaeda fronts and supported its goals.  Because al Qaeda's stated goal was to attack the U.S., it was foreseeable to defendants that attacks like the September 11, 2001 attacks would occur.

### C.    Plaintiffs Have Properly Alleged Criminal Violations And Breach of General Tort Principles

Plaintiffs need only show: 1) that defendants knowingly provided material support to a recognized terrorist organization with the intent to support that organization's illegal activities; and/or 2) that they aided, abetted or conspired in acts of international terrorism.  Plaintiffs have adequately alleged facts which support both of these theories of liability.

### 1.    Liability Through Criminal Violations

The *Boim* court concluded that the ATA's criminal provisions are a clear indication of Congress' intent to deem financial support of a terrorist organization to be an act of international terrorism under § 2333. *Boim,* 291 F.3d at 1015.  ATA § 2339A prohibits giving "material support" for an extensive list of specific violent crimes associated with terrorism.  Material support is further defined in the statute as "currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials." 18 U.S.C. § 2339A.  Section 2339B extends criminal liability to those who knowingly provide material support to foreign terrorist organizations:

> Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years . . . .

-10-

18 U.S.C. § 2339B.  When considering the presence of "material support," "even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability in § 2333." *Boim*, 291 F.3d at 1015.  Under *Boim,* conduct that violates either criminal provision will be considered an act of international terrorism subject to civil liability under § 2333.

Plaintiffs have alleged that defendants participated in acts giving rise to liability under ATA §§ 2339A and 2339B.  Specifically, plaintiffs have alleged that defendants were active members of a network specifically established to support terrorists, including Bin Laden and al Qaeda.  (See "Allegations Against Defendants," *supra.*)  Death and destruction in the United States was the well-publicized aim of al Qaeda and its terrorist network.  As alleged in 4AC, defendants, through the SAAR Network, provided funding and support to Bin Laden and his terrorist network.  Given the level of terrorist activity that occurred in the years leading up to September 11, 2001, during which defendants continued to support terrorist organizations, defendants knew that attacks such as those of September 11, 2001 were a foreseeable consequence of their support.  Moreover, the support made by defendants and other members of the SAAR Network directly or indirectly to Bin Laden and al Qaeda significantly increased the risk and the possibility that the September 11, 2001 terrorist attacks could and would occur.  These allegations are contained in the 4AC when it is read as a whole.  Consequently, plaintiffs have stated a cause of action against defendants pursuant to the criminal violations provision of the ATA.

### 2. <u>Liability Through General Tort Principles</u>

The *Boim* court also acknowledged that the legislative history of the ATA evidences an intent by Congress to codify general common law tort principles and to extend civil liability for

acts of intentional terrorism to the full reaches of traditional tort law. *Boim,* 291 F.3d at 1010

(citations omitted).  Comparing the statute to a traditional tort, the court found that the ATA

essentially contains all of the elements of a traditional tort: breach of a duty (i.e., committing an

act of intentional terrorism), injury to the person, property or business of another and causation

(injured by reason thereof). *Id.* at 1010.

### a.   Aiding and Abetting

In analyzing the reach of the general tort principles avenue, the *Boim* court found that

liability under the ATA may be based upon aiding and abetting an act of international terrorism.

*Id.* at 1021.  The definition of "international terrorism" under §2331(1)(A) includes activities

that:

> ...involve violent acts or acts dangerous to human life that are a violation of the
> criminal laws of the United States or any State, or that would be a criminal
> violation if committed within the jurisdiction of the United Sates or of any state.

18 U.S.C. §2331(1)(A).  The court concluded that "[t]his language, embracing activities that

"involve" violent acts, taken at face value, should certainly cover aiding and abetting violent

acts." *Boim, 291* F.3d at 1020.  The court noted that if liability were not extended to aiders and

abettors who knowingly and intentionally fund acts of terrorism, congressional intent to "cut off

the flow of money to terrorists at every point along the causal chain" would be frustrated. *Id.* at

1021.  Liability must therefore extend beyond those immediately involved in acts of violence.

Under traditional tort doctrines of aiding and abetting, plaintiffs need only plead facts

showing that: i) the party whom defendants aid must perform a wrongful act that causes an

injury; ii) the defendants must be generally aware of their role as part of an overall illegal or

tortious activity at the time that they provides the assistance; and iii) the defendants must

knowingly and substantially assist the principal violation. *See Halberstam v. Welch* 705 F.2d

472, 477 (D.C.Cir. 1983).  It should be noted that *Halberstam* is recognized as an authoritative

opinion on the topic of civil liability for aiders and abetters. *Central Bank of Denver v. First*

*Interstate Bank of Denver*, 511 U.S. 164, 181 (1994) (describing *Halberstam* as "a

comprehensive opinion on the subject"); *In re Temperomandibular Joint (TMJ) Implants*

*Products Liability Litigation*, 113 F.3d 1484, 1495-96 (8th Cir. 1997) (relying on the *Halberstam*

discussion of civil aiding/abetting liability); *Fassett v. Delta Kappa Epsilon (New York)*, 807

F.3d 1150, 1162-64 (3d Cir.1986) (same).

   In *Halberstam,* a wrongful death case, the court held that the defendant Hamilton could

be liable for aiding and abetting her co-defendant Welch in the murder of plaintiff's husband

during a burglary even though she was not present at the burglary.  Indeed, the court found

Hamilton liable because she knew that Welch was involved in some type of crime, in which

violence and killing was always a foreseeable risk, and she assisted him in disposing of large

quantities of stolen goods.  Essentially, Hamilton provided general assistance to Welch that

facilitated his criminal activities and while she did not provide specific assistance in the crime

for which she was held liable, she was found to have aided and abetted Welch in committing it.

*Halberstam*, 705 F.2d at 486-88.

   Thus, under the framework outlined in *Halberstam*, plaintiffs need only show that

defendants knew they were supporting a terrorist organization, provided substantial assistance to

that organization (thus raising the risk of terrorist activities), and could foresee that such

assistance would result in a terrorist attack like that which occurred on September 11, 2001.  It is

not necessary for plaintiffs to show that defendants specifically knew that al Qaeda was going to

commit the horrific acts of September 11th but only that defendants knew that they were assisting

terrorists in committing terrorist activities aimed at the United States.  *(See discussion of foreseeability, supra.)*

The September 11, 2001 attacks were the foreseeable consequence of defendants' terrorism support.  Accordingly, plaintiffs have stated a claim against defendants under the ATA for aiding and abetting.

**b.**   **Conspiracy**

The 4AC also contains conspiracy allegations, which is another cognizable claim under the ATA. *See Burnett,* 274 F. Supp. 2d at 107.  Conspiracy requires: i) an agreement between two or more persons; ii) to participate in an unlawful act, or a lawful act in an unlawful manner; iii) an injury cause by one of the parties to the agreement; and iv) which overt act was done pursuant to and in furtherance of the scheme." *Id.*  The court in *Burnett* also noted that "[a] conspirator may be liable for an injury even if he or she did not plan or know about the particular act that caused the injury so long as the purpose of the act was to advance the overall object of the conspiracy." *Id.* at 105.

Plaintiffs have adequately alleged conspiracy.  The agreement at issue was for defendants to collect funds and direct them to terrorists, including Bin Laden and al Qaeda, through a vast and complex network designed specifically to obscure the ultimate goal of the transactions.  The unlawful acts were the resulting attacks of September 11, 2001 (although knowledge of that specific plan was not required for proximate cause).  The injury element is obvious: thousands of deaths and injuries caused by the attacks carried out by al Qaeda, a party to the conspiracy and the ultimate beneficiary of the funds distributed through the network.  Finally, the attacks were carried out pursuant to the scheme of the conspiracy.  Indeed, as previously stated and alleged, attacking the United States and its citizens was the well-publicized goal of al Qaeda and one of

-14-

the core reasons for the existence of the terrorist supporting SAAR Network.  The plaintiffs'

4AC alleges facts sufficient to support a conspiracy claim against defendants.

## II.   PLAINTIFFS HAVE ADEQUATELY
## ALLEGED STATE LAW CLAIMS

Defendants challenge plaintiffs' state law claims.  As demonstrated above, however,

plaintiffs have adequately alleged the causal connection between defendants' financial support of

terrorism and the September 11 attacks.

There can be no doubt that those who provide financial support for wrongful acts may be

held liable for wrongful death. *See* Restatement (Second) Torts § 876 (1979).  Indeed,

*Halberstam*, 705 F.2d 472, was itself a wrongful death case in which liability was imposed on

the defendant, in large part, because she provided financial assistance to the direct perpetrator of

the murder in question.  The facts contained in the 4AC and discussed in detail above, give rise

to plaintiffs' claims for assault, battery and intentional murder.  To sustain a cause of action for

assault, there must be proof of physical conduct placing plaintiff in imminent apprehension of

harmful contact. *Bastein v. Sotto*, 749 N.Y.S.2d 538, 539 (N.Y.A.D. 2d Dept. 2002).  A battery

essentially consists of an intentional, offensive, wrongful bodily contact. *Goff v. Clark*, 755

N.Y.S.2d 493, 495 (N.Y.A.D. 3d Dept. 2003).  Intentional murder requires the killing of another

with some intent to do so. 6 N.Y. PRAC. § 6:12.  The 4AC sufficiently states that defendants

helped fund those responsible for the September 11 murders, that they did so with knowledge of

and/or intent to bring about such terrorist acts, and that their support caused or contributed to

those acts.  Plaintiffs' allegations are sufficient to meet the required elements of the above-listed

state law claims, especially when viewed in light of the ancillary theories of aiding, abetting and

conspiracy.  Consequently, plaintiffs have sufficiently alleged state law claims against defendants.

## <u>CONCLUSION</u>

For the reasons stated above, plaintiffs respectfully request that defendants' motions to dismiss be denied in all respects.

Dated: New York, New York
       May 14, 2004

Respectfully Submitted,

KREINDLER & KREINDLER, LLP

By:_____/S/_____
       Marc S. Moller (MM0143)
       James P. Kreindler (JK7089)
       Justin T. Green (JG0318)
       Andrew J. Maloney (AM8684)
       William O. Angelley (WA5862)

       100 Park Avenue
       New York, New York 10017
       Phone:  (212) 973-3486
       Facsimile:  (212) 972-9432

#148731