**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001                 03 MDL 1570 (RCC)
                                                              **ECF Case**

-------------------------------------------------------------x

**FEDERAL INSURANCE CO., et al.,**

                    **Plaintiffs,**                          03 6978 CV  (RCC)
                                                             **ECF Case**

          v.

**AL QAIDA, et al.,**

                    **Defendants.**
-------------------------------------------------------------x

## <u>MEMORANDUM OF LAW OF PRINCE MOHAMED AL-FAISAL AL-SAUD IN</u> <u>SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

Louis R. Cohen (LC 4012 )
WILMER CUTLER PICKERING HALE AND
DORR LLP
2445 M Street N.W.
Washington, D.C. 20037
Tel.: 202-663-6000
Fax: 202-663-6363

David P. Donovan (DD 7012)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102
Tel: 703-251-9700
Fax: 703-251-9797

Matthew Previn (MP 2173)
WILMER CUTLER PICKERING HALE AND
DORR LLP
399 Park Avenue
New York, NY 10022
Tel.: 212-230-8800
Fax: 212-230-8888

Attorneys for Defendant Prince Mohamed Al-Faisal
Al-Saud

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

SUMMARY OF ALLEGATIONS AGAINST PRINCE MOHAMED ........................................ 1

ARGUMENT ............................................................................................................. 4

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER PRINCE
        MOHAMED. ................................................................................................. 5

        A.      This Court Cannot Exercise Personal Jurisdiction Over Prince Mohamed
                Because He Has No Alleged Contacts With the United States. ........................... 5

        B.      Plaintiffs' General Allegations of "Conspiracy" and "Aiding and
                Abetting" Provide No Basis for Jurisdiction Over Prince Mohamed. .................. 9

II.     THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST PRINCE
        MOHAMED UPON WHICH RELIEF CAN BE GRANTED. ...................................... 10

        A.      Each of Plaintiffs' Causes of Action Requires That the Defendant's
                Alleged Actions Proximately Caused Their Injury. ............................................ 11

        B.      The Complaint Does Not Allege That Prince Mohamed Proximately (or
                Otherwise) Caused Plaintiffs' Injuries. . ......................................................... 17

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

Page(s)

*A.J. Cunningham Packing Corp. v. Congress Financial Corp.*,
792 F.2d 330 (3d Cir. 1986) ........................................................................................... 11

*Albert v. Carovano*,
851 F.2d 561 (2d Cir. 1988) ............................................................................................. 3

*Alexander & Alexander of New York, Inc. v. Fritzen*,
503 N.E.2d 102 (N.Y. Ct. App. 1986) ........................................................................... 14

*Alvarez-Machain v. United States*,
331 F.3d 604 (9th Cir.), *cert. granted*, 124 S. Ct. 807 (2003) ...................................... 14

*America Online, Inc. v. LCGM, Inc.*,
46 F. Supp. 2d 444 (E.D. Va. 1998) .............................................................................. 11

*Armour & Co. v. Celic*,
294 F.2d 432 (2d Cir. 1961) ........................................................................................... 20

*Asahi Metal Industry Co. v. Superior Court*,
480 U.S. 102 (1987) ..................................................................................................... 4, 5

*Associated General Contractors, Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983) ....................................................................................................... 17

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ........................................................................................ 5, 9

*Bao Ge v. Li Peng*,
201 F. Supp. 2d 14 (D.D.C. 2000), *aff'd*,
35 Fed. Appx. 1 (D.C. Cir. 2002) .................................................................................. 14

*Bieregu v. Ashcroft*,
259 F. Supp. 2d 342 (D.N.J. 2003) ................................................................................ 14

*Bigio v. Coca-Cola Co.*,
239 F.3d 440 (2d Cir. 2000) ........................................................................................... 14

*Boim v. Quranic Literacy Institute*,
291 F.3d 1000 (7th Cir. 2002) ............................................................................. 17, 19, 21

*Boyanowski v. Capital Area Intermediate Unit*,
215 F.3d 396 (3d Cir. 2000) ............................................................................. 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................. 5, 6, 8

*Burnett et al. v. Al Baraka Investment & Development Corp. et al.*,
274 F. Supp. 2d 86 (D.D.C. 2003) ........................................................ 3, 15, 17, 19

*Calder v. Jones*,
465 U.S. 783 (1984) ......................................................................................... 6

*Carmichael v. United Technologies Corporation*,
835 F.2d 109 (5th Cir. 1988) ........................................................................... 14

*Carroll v. Colon*,
608 F. Supp. 1277 (E.D. Pa. 1985) ................................................................... 12

*Century Business Credit Corp. v. North Fork Bank*,
668 N.Y.S.2d 18 (App. Div. 1998) ................................................................... 20

*Citibank N.A. v. K-H Corp.*,
968 F.2d 1489 (2d Cir. 1992) ........................................................................... 18

*Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*,
453 S.E.2d 261 (Va. 1995) ............................................................................... 15

*Commercial Business System, Inc. v. Halifax Corp.*,
233 Va. 292 (1997) ......................................................................................... 14

*Cooper v. First Government Mortgage & Investors Corp.*,
206 F. Supp. 2d 33 (D.D.C. 2002) ................................................................... 21

*Cooper v. Horn*,
448 S.E.2d 403 (Va. 1994) ............................................................................... 11

*Cucinotti v. Ortmann*,
159 A.2d 216 (Pa. 1960) ............................................................................ 12, 13

*DM Research, Inc. v. College of American Pathologists*,
170 F.3d 53 (1st Cir. 1999) ............................................................................. 15

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ............................................................................. 15

*De Jesus v. Sears, Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996) ................................................................ 3, 15

*Delk v. Columbia/HCA Healthcare Corp.*,
523 S.E.2d 826 (Va. 2000) ................................................................ 13

*Didato v. Strehler*,
554 S.E.2d 42 (Va. 2001) ................................................................ 17

*Doe v. Islamic Salvation Front*,
993 F. Supp. 3 (D.D.C. 1998) ................................................................ 14

*Doe v. State*,
588 N.Y.S.2d 698 (Ct. Cl. 1992), *aff'd*,
595 N.Y.S.2d 592 (App. Div. 1993) ................................................................ 12

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) ................................................................ 20

*El-Meswari v. Washington Gas Light Co.*,
785 F.2d 483 (4th Cir. 1986) ................................................................ 12

*Ellis v. Sherman*,
515 A.2d 1327 (Pa. 1986) ................................................................ 17

*Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS),
1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ................................................................ 7

*First Capital Asset Mgmt v. Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) ................................................................ 9

*First Nationwide Bank v. Gelt Funding Corporation*,
27 F.3d 763 (2d Cir. 1994) ................................................................ 18

*Foreign Mission Board of Southern Baptist Convention v. Wade*,
409 S.E.2d 144 (Va. 1991) ................................................................ 17

*Gibbs v. Hawaiian Eugenia Corporation*,
966 F.2d 101 (2d Cir. 1992) ................................................................ 1, 10

*Girden v. Sandals International*,
262 F.3d 195 (2d Cir. 2001) ................................................................ 12, 13

*Goren v. New Vision International, Inc.*,
156 F.3d 721 (7th Cir. 1998) ................................................................ 4

*Great American Insurance Co. v. United States,*
575 F.2d 1031 (2d Cir. 1978) ................................................................................ 12

*Grove Press, Inc. v. Angleton,*
649 F.2d 121 (2d Cir. 1981) .................................................................................. 10

*Holmes v. Security Investor Protection Corporation,*
503 U.S. 258 (1992) ........................................................................................ 15, 18

*Howell v. New York Post Co.,*
596 N.Y.S.2d 350 (Ct. App. 1993) ......................................................................... 13

*In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,*
885 F. Supp. 434 (E.D.N.Y. 1995) ........................................................................ 11

*In re American Express Company Shareholder Litigation,*
39 F.3d 395 (2d Cir. 1994) .................................................................................... 18

*In re Magnetic Audiotape Antitrust Litigation,*
334 F.3d 204 (2d Cir. 2003) .................................................................................... 8

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945) ............................................................................................... 5

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) ............................................................................... 3, 5

*Joyner v. School District of Philadelphia*, No. Civ. A. 03-3246,
2004 WL 801621 (E.D. Pa. Apr. 13, 2004) ........................................................... 13

*Kadic v. Karadzic,*
70 F.3d 232 (2d Cir. 1995) .................................................................................... 14

*Karabu Corporation v. Gitner,*
16 F. Supp. 2d 319 (S.D.N.Y. 1998) ....................................................................... 7

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984) ............................................................................................... 6

*Kinnel v. Mid-Atlantic Mausoleums, Inc.,*
850 F.2d 958 (3d Cir. 1988) .................................................................................. 20

*Kirkbride v. Lisbon Contractors, Inc.,*
555 A.2d 800 (Pa. 1989) ....................................................................................... 17

*Koken v. Steinberg*,
825 A.2d 723 (Pa. Super. 2003) ........................................................................ 16

*Kwarren v. American Airlines*,
757 N.Y.S.2d 105 (App. Div. 2003) .................................................................. 13

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) .............................................................................. 18

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998) ................................................................. 10

*Lakits v. York*,
258 F. Supp. 2d 401 (E.D. Pa. 2003) ................................................................. 13

*Lauer v. City of New York*,
659 N.Y.S.2d 57 (App. Div. 1997) .................................................................... 13

*Lawrence v. Walsh*,
187 N.Y.S.2d 71 (App. Div. 1959) .................................................................... 12

*Lehigh Valley Industries, Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) .................................................................................. 9

*Lerner v. Fleet Bank, NA*,
318 F.3d 113 (2d Cir.), *cert. denied*,
124 S. Ct. 532 (2003) ......................................................................................... 17

*Levenson v. Souser*,
557 A.2d 1081 (Pa. Super. 1989) ................................................................. 12, 13

*Lindsay v. Lockwood*,
625 N.Y.S.2d 393 (Sup. Ct. 1994) .............................................................. 14, 16

*Mascarella v. Brown*,
813 F. Supp. 1015 (S.D.N.Y. 1993) .................................................................. 11

*McCallum v. Rizzo*, No. 942878,
1995 WL 1146812 (Mass. Super. Oct. 13, 1995) ............................................. 20

*McCarthy v. Sturm, Ruger & Co.*,
916 F. Supp. 366 (S.D.N.Y. 1996) .................................................................... 12

*Meadow Limited Partnership v. Heritage Savings and Loan Association*,
639 F. Supp. 643 (E.D. Va. 1986) ..................................................................... 16

*Meyer v. Holley*,
537 U.S. 280 (2003) ................................................................................................ 21

*Mills v. Polar Molecular Corporation*,
12 F.3d 1170 (2d Cir. 1993) ..................................................................................... 4

*Nicholas v. Saul Stone & Co.*,
224 F.3d 179 (3d Cir. 2000) ................................................................................... 6-7

*Olszewski v. Waters of Orchard Park*,
758 N.Y.S.2d 716 (App. Div. 2003) ........................................................................ 20

*Ontel Products, Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995) .......................................................................... 7

*Ouaknine v. MacFarlane*,
897 F.2d 75 (2d Cir. 1990) ...................................................................................... 16

*Papasan v. Allain*,
478 U.S. 265 (1986) .................................................................................................. 3

*Park v. Shiflett*,
250 F.3d 843 (4th Cir. 2001) .............................................................................. 12, 13

*Pennsylvania Association of Edwards Heirs v. Rightenour*,
235 F.3d 839 (3d Cir. 2000) .................................................................................... 15

*Pittman by Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998) .................................................................................... 10

*Priester v. Small*, Nos. 26541, 26520,
2003 WL 21729900 (Va. Cir. Ct. April 14, 2003) ................................................... 16

*Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH),
1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ................................................................ 20

*Robinson v. Matt Mary Moran, Inc.*,
525 S.E.2d 559 (Va. 2000) ...................................................................................... 11

*Rocanova v. Equitable Life Assur. Society of U.S.*,
83 N.Y.2d 603 (Ct. App. 1994) ............................................................................... 17

*Russo v. White*,
400 S.E.2d 160 (Va. 1991) ...................................................................................... 13

*S.E.C. v. Unifund SAL*,
910 F.2d 1028 (2d Cir. 1990) ................................................................. 8

*Schoenbaum v. Firstbrook*,
405 F.2d 200 (2d Cir. 1968) ................................................................... 8

*School of Visual Arts v. Kuprewicz*,
771 N.Y.S.2d 804 (Sup. Ct. 2003) ........................................................ 11

*Schultz v. Boy Scouts of America, Inc.*,
65 N.Y.2d 189 (Ct. App. 1985) ............................................................. 11

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ............................................................................... 16

*Shaffer v. Heitner*,
433 U.S. 186 (1977) ................................................................................. 6

*Simon v. Philip Morris*,
86 F. Supp. 2d 95 (E.D.N.Y. 2000) ....................................................... 10

*Sit-Set, A.G. v. Universal Jet Exchange, Inc.*,
747 F.2d 921 (4th Cir. 1984) ................................................................. 21

*Skipworth v. Lead Industries Association, Inc.*,
690 A.2d 169 (Pa. 1997) ........................................................................ 15

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (Ct. App. 1999) ............................................................... 16

*Smith v. Afghanistan*, No. 01 Civ. 10132 (HB),
2003 WL 21027170 (S.D.N.Y. May 7, 2003) ...................................... 17

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002) ............................................................. 3, 15

*Solomon v. City of New York*,
66 N.Y.2d 1026 (Ct. App. 1985) ........................................................... 17

*Stauffacher v. Bennett*,
969 F.2d 455 (7th Cir. 1992) ............................................................... 8, 9

*Tulewicz v. S.E. Pa. Transport Authority*,
606 A.2d 427 (Pa. 1992) ........................................................................ 12

*Tzaras v. Evergreen International Spot Trading, Inc.*, No. 01 Civ. 10726 (LAP),
2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ............................................................ 20

*U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping Co.*,
241 F.3d 135 (2d Cir. 2001) ...................................................................................... 5

*United States v. Jimenez Recio*,
537 U.S. 270 (2003) ................................................................................................. 14

*Volpe v. Fleet National Bank*,
710 A.2d 661 (R.I. 1998) ......................................................................................... 20

*Young v. Colgate-Palmolive Co.*,
790 F.2d 567 (7th Cir. 1986) ..................................................................................... 7

## STATUTES

18 U.S.C. § 1962(a) ................................................................................................. 15

18 U.S.C. § 1964(c) ................................................................................................. 15

18 U.S.C. § 2333 ..................................................................................................... 16

28 U.S.C. 1350 ........................................................................................................ 13

N.Y. C.P.L.R. § 215(3) ...................................................................................... 12, 13

N.Y. Est. Powers & Trusts § 5-4.1(1) ..................................................................... 11

N.Y. Est. Powers & Trusts § 11-3.2(b) ................................................................... 12

42 Pa. Cons. Stat. § 8301 ........................................................................................ 11

42 Pa. Cons. Stat. § 8302 ........................................................................................ 12

Va. Code. Ann. § 8.01-25 ........................................................................................ 12

Va. Code Ann. § 8.01-50(A) .................................................................................... 11

## LEGISLATIVE HISTORY

H.R. Rep. No. 102-367 (1991) ................................................................................. 14

S. Rep. No. 102-249 (1991) ..................................................................................... 14

## BOOKS, ARTICLES, & TREATISES

2 Dobbs, Law of Torts § 295 .......................................................................... 12

3 Fletcher Cyclopedia of Corporations § 835 (2003) .................................... 8

3 Speiser *et al.*, Recovery for Wrongful Death and Injury § 14.1 (3d ed. 1992) ........................ 12

Couch on Insurance 3d § 222:5 (2003) ........................................................ 10

3 Speiser *et al.*, Recovery for Wrongful Death and Injury § 14.1 (3d ed. 1992) ........................ 12

Restatement (Second) of Torts § 217 cmt. d ............................................... 11

Restatement (Second) of Torts § 876, cmt. d .............................................. 16

*The War on Terror*, Newsday, Nov. 8, 2001, at A12 ................................... 7

## INTRODUCTION

Plaintiffs seek to recoup insurance payments related to the tragic events of September 11, 2001.  But defendant Prince Mohamed Al-Faisal Al-Saud ("Prince Mohamed"), a member of the royal family of Saudi Arabia, has no responsibility for those events or the losses suffered that day, and plaintiff insurers therefore have no claims against him as subrogees.  *See, e.g., Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992).

On the contrary, the only specific allegation in the First Amended Complaint ("FAC") against Prince Mohamed is that he is chairman of a bank (Faisal Islamic Bank -- Sudan or "FIBS") in which persons associated with al Qaida have, at some unspecified time, had undescribed "accounts."  There are no factual allegations suggesting that Prince Mohamed (i) has had any contacts with the United States; (ii) has ever done anything that had any connection, however remote, with the events of September 11; (iii) has ever expressed sympathy for or supported any terrorist activity; (iv) has ever given or transferred any money or other assets to anyone; or (v) is associated with any institution that ever engaged (knowingly or otherwise) in any wrongdoing.  All of plaintiffs' claims against Prince Mohamed therefore must be dismissed for (I) lack of personal jurisdiction and (II) failure to state a claim against him.[1]

### SUMMARY OF ALLEGATIONS AGAINST PRINCE MOHAMED

The FAC contains only 16 surviving paragraphs that allege facts relating to Prince Mohamed (FAC ¶¶ 66, 307-317, 472-474, 477).  None of those paragraphs alleges facts to show

---

[1]     As filed, the FAC also alleged (1) that Prince Mohamed is the chairman of another bank called Al Shamal (*see* FAC ¶¶ 473 and 474) and (2) that he contributed money to certain charitable organizations that allegedly provided funds to al Qaeda (*see* FAC ¶¶ 475 and 476). Plaintiffs have agreed to withdraw those allegations, however, following service by Prince Mohamed's counsel of a motion under Fed. R. Civ. P. 11 identifying those allegations as false and lacking any good-faith basis.  A stipulation reflecting plaintiffs' withdrawal of those allegations is being filed with this Court, and they are not further discussed in this Memorandum.

1

that Prince Mohamed (i) has had any contact with the United States; (ii) has engaged in any conduct expressly aimed at the United States, or (iii) ever did anything that could possibly be called a proximate cause of the events of September 11, 2001.[2/]

In summary, the FAC alleges as follows:

- Prince Mohamed is or was Chairman (in some paragraphs, "Chief Executive Officer") of three financial institutions:  Dar al Maal al Islami ("DMI"); Islamic Investment Co. of the Gulf--Bahrain EC ("IICG"); and Faisal Islamic Bank-Sudan. (FAC ¶¶ 307, 309, 312.)

- DMI has as its "main subsidiaries" IICG, FIB-Bahrain, and Faisal Finance *(id.* ¶ 308), and its subsidiaries "includ[e]" Al Shamal Bank *(id.* ¶ 311); DMI is the "ultimate parent" of FIBS (*id.* ¶ 473).  Haydar Mohammad bin Laden, one of Osama's many half-brothers, once "served" as a director of IICG.  (*Id.* ¶ 312.)

- DMI was "created" in 1981 (*id.* ¶ 308) and, "[l]ike other Islamic banking institutions, DMI abides by *sharia* or Islamic law, which prohibits the earning or payment of interest" and imposes the obligation "to contribute and manage Zakat funds," (*id.* ¶ 310).  "Consistent with this obligation, Islamic banking institutions set aside a percentage of funds associated with each transaction as zakat."  (*Id.*)  "As a practical matter these funds disappear from the bank's books and can be used to fund radical Islamic organizations."  (*Id.*)

- DMI is one of two entities at the "center" of a "complex banking system" through which, "[b]eginning in the early 1980's, [the Kingdom of] Saudi Arabia channeled

---

[2/]     For convenience, the pages of the FAC containing allegations relating to Prince Mohamed, including the four paragraphs that plaintiffs have withdrawn as described in footnote 1, are attached as Exhibit 1.

massive financial support for the spread of Wahhabism, the radical brand of Islam at the heart of the al Qaida ideology."  (*Id.* ¶ 307.)

- Al Qaida's alleged "financial chief" in Sudan testified in a criminal case resulting from the 1998 bombings of U.S. Embassies in Africa that al Qaida "maintained accounts with [FIBS]" (*id.* ¶ 315), which allegedly "knew" that al Qaida "cells" maintained accounts at the bank to "launder" and "distribute" funds for al Qaida "operations" and "terrorist attacks."  (*Id.* ¶¶ 316, 317.)

In sum, the only factual allegation that purports to tie Prince Mohamed to September 11 is that he chairs an entity (FIBS) in which persons associated with al Qaida have had "accounts" (amounts, dates, sources, and uses of any funds wholly unspecified).  Plaintiffs' repeated assertions that Prince Mohamed has "provided material support and resources" to al Qaida, has "conspired with" al Qaida or has "facilitated" support to al Qaida (*see* FAC ¶¶ 66, 308, 311, 314, 317, 318, 472, 474, 477) are entirely conclusory, baseless, and cannot bridge the chasm between the FAC's factual allegations and September 11.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court should give no weight to conclusory allegations not grounded in assertions of fact); *Albert v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988) (*en banc*) (same).[3/]  The allegations in the FAC do not come close to connecting Prince Mohamed to

---

[3/]     *See also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (conclusory allegations or legal conclusions masquerading as factual assertions will not suffice to prevent dismissal); *De Jesus v. Sears, Roebuck  & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (similar); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (legal conclusions cast in the form of factual allegations are insufficient to make prima facie showing to support personal jurisdiction); *Burnett et al. v. Al Baraka Inv. & Dev. Corp. et al.*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) (Robertson, J.) ("a court may accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations") (internal quotation marks and citations omitted).
        Likewise, allegations about "the defendants," or [unspecified] "members of the Royal Family," or "Saudi elites" *e.g.*, FAC ¶¶ 398-400, 402, 426, should be given no weight in

3

the United States or showing that he knew of, much less intended to assist, or that he assisted in, the events of September 11.[4/]

## ARGUMENT

The Court should dismiss the claims against Prince Mohamed with prejudice for two reasons.  First, the Court should dismiss under Rule 12(b)(2) because it lacks personal jurisdiction over Prince Mohamed:  there are no factual allegations connecting him with the United States or the events of September 11, and requiring him to defend himself in this Court based on these allegations would be wholly inconsistent with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  Second, the Court should dismiss all claims under Rule 12(b)(6) because the FAC fails to state a claim against Prince Mohamed on any of its numerous legal theories: there are no factual allegations that he engaged in or knowingly aided

---

evaluating the allegations against Prince Mohamed.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (complaint vaguely attributing alleged fraudulent statements to "defendants" was insufficient to state a claim); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("[L]umping together of defendants is clearly insufficient to state a RICO claim" against any of them).

[4/]     The remaining allegations concerning Al Shamal Bank are irrelevant to plaintiffs' claims against Prince Mohamed.  The FAC alleges that FIBS was one of the "founders" of Al Shamal Bank in the early 1980s and is one of its "principal shareholder[s]" (FAC ¶¶ 313, 320, 473); that Osama bin Laden allegedly invested $50 million in Al Shamal Bank during the 1990s  (*id.* ¶¶ 321-322) and that Al Shamal maintained accounts for Osama bin Laden and "ostensible charities" (*id.* ¶¶ 325-330).  But (after the withdrawal of allegations described in footnote 1, *supra*) the FAC does not allege that Prince Mohamed was ever a director, officer, shareholder, or employee of Al Shamal; that he ever engaged in any transaction of any kind with or involving Al Shamal; or that he knew of, initiated, approved, or had anything to do with any banking activity of Al Shamal.  The FAC alleges only that Prince Mohamed is today the chairman of FIBS, that FIBS was a founder *in circa 1983* of Al Shamal (*id.* ¶ 320); that FIBS allegedly owns "shares" in Al Shamal (*id.* ¶ 322) and that Osama bin Laden allegedly invested in the bank in the 1990's (*id.* ¶ 321-322).  The FAC does not allege that FIBS ever controlled Al Shamal or knew of, initiated, or approved any banking activity of Al Shamal, much less that Prince Mohamed ever did any of these things.

any misconduct, and there are no factual allegations suggesting that he caused plaintiffs'

insureds' losses.

## I.  THIS COURT LACKS PERSONAL JURISDICTION OVER PRINCE MOHAMED.

Prince Mohamed is a resident of Saudi Arabia, and the FAC alleges no facts to show

either that he has had any contact with the United States or that he engaged in any tortious

conduct aimed at the United States or had any role in the events of September 11.

### A.    This Court Cannot Exercise Personal Jurisdiction Over Prince Mohamed Because He Has No Alleged Contacts With the United States.

Plaintiffs bear the burden of establishing this Court's jurisdiction over Prince Mohamed.

*See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(2), plaintiffs must make a prima facie showing

of facts sufficient to support jurisdiction.  *See Jazini*, 148 F.3d at 184.  This must always include

a showing of at least "'minimum contacts [with the forum] . . . such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice.'"  *U.S. Titan, Inc. v.*

*Guanzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Calder v. Jones*,

465 U.S. 783, 788 (1984)) (internal quotation marks omitted); *see Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474 (1985).

Plaintiffs have failed to allege facts to show that Prince Mohamed has minimum contacts

with New York or the United States.  *See International Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945).  They allege no contact of any kind between Prince Mohamed and New York or the

United States, and *no f*acts connecting him in any way with the events of September 11.

A plaintiff may establish jurisdiction over a defendant located outside the forum by

showing that he engaged in a tortious act elsewhere that was "purposefully directed toward the

forum State."  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality

opinion); *Burger King*, 471 U.S. at 475 (requiring "actions of the defendant *himself*").  But the Supreme Court has expressly held that it is *not* sufficient merely to show that the defendant took an action with a "foreseeable effect" in the forum.  *Id*. at 474-75.  The plaintiff must show that he took actions abroad that were "expressly aimed" at the United States.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).

Plaintiffs here make no such allegations.  They do not allege that Prince Mohamed had any personal involvement in the events of September 11 or any prior knowledge of the attacks. After withdrawing several of their allegations against Prince Mohamed, plaintiffs now allege *only* that that Prince Mohamed chairs a financial institution in Sudan at which al Qaida-related "accounts" were maintained.  That allegation is wholly inadequate, for several reasons, to establish personal jurisdiction over him.

*First*, an *officer* of a bank (or other corporation), who does not himself have sufficient contacts with the forum, is not subject as an individual to the personal jurisdiction of its courts, even if the bank can be sued there.  "Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Calder*, 465 U.S. at 790 (personal jurisdiction cannot be exercised over employees of a company based on the activities of their employer in the forum; the constitutional requirement for minimum contacts "must be met as to each defendant over whom a . . .  court exercises jurisdiction").  Officers are different "persons" from their corporations and are not subject to jurisdiction on account of corporate acts in which they did not personally participate.  *See id.*; *Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1977); *id.* at 217 (Powell, J., concurring) (appellants' "positions as directors and officers of a Delaware corporation can[not] provide sufficient contacts to support the Delaware courts' assertion of jurisdiction in this case."); *Nicholas v. Saul*

6

*Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (jurisdiction over corporation does not create jurisdiction over its officers); *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 569 (7th Cir. 1986) ("individual board members cannot be said to have transacted business within Illinois merely because the corporation is qualified to do business here").[5/]

*Second*, as we show in more detail below (*see* p. 19-20, *infra*), banks (let alone their chairmen) are not liable for the tortious acts of their depositors.  If the rule were otherwise, the several U.S. banks identified as having held money belonging to the 9/11 conspirators (*e.g.*, SunTrust Bank, *see Ashton v. Al Qaeda Islamic Army*, No. 02 CV 6977, Fourth Amended Complaint ¶ 180, and Key Bank in Portland, Maine, *see* "The War on Terror," Newsday, Nov. 8, 2001 at A12), *and their chairmen* would also be subject to liability in these cases.  Even more important, the chairmen of U.S. banks could be hauled into court anywhere in the world to answer for alleged misdeeds of depositors or others who allegedly used the services of their banks.

*Third*, the FAC provides no information about these alleged "accounts" -- not their dates, their amounts, their sources, the names in which they were held, or anything about any alleged use of any proceeds from these accounts.  There is no allegation that the "accounts," or their holders, had any connection of any kind to the events of September 11.

---

[5/]     *See also Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("mere fact that a corporation is subject to jurisdiction under section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York"); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (rejecting argument that "because New York courts unquestionably have jurisdiction over TWA, jurisdiction can be imputed to defendants because TWA acted as defendants' agent in coercing and threatening the New York travel agencies"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("[Plaintiff] cannot obtain personal jurisdiction over [defendant] based solely on his position as President of P.S.C.; instead, [plaintiff] must show that [he] personally took part in the activities giving rise to the action at issue.").

*Fourth*, plaintiffs do not and could not allege that Prince Mohamed *knew* of, or otherwise had anything to do with, any purported activities of any "account" holder.  The bank's alleged knowledge is of course not imputed to its officers.  *See* 3 Fletcher Cyclopedia of Corporations § 835 (2003); *cf. Schoenbaum v. Firstbrook*, 405 F.2d 200, 211-12 & n.9 (2d Cir. 1968).

In sum, Prince Mohamed plainly did not have "fair warning that a particular activity"— here, allegedly serving as Chairman of a bank in Sudan that allegedly "maintained accounts" that were allegedly used to "distribute" or "transfer" funds to al Qaida—"m[ight] subject him to the jurisdiction of the United States." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)).  It would be wholly inconsistent with "notions of fair play and substantial justice" to require him to answer in an American court on the basis of his chairmanship of a Sudanese bank in which al Qaida-related persons allegedly had "accounts"  that are not even alleged to have had anything to do with the events that injured the plaintiffs.[6]

The Second Circuit has required a showing that a nonresident defendant was a "*primary participant* in intentional wrongdoing," who engaged in extraterritorial misconduct "expressly directed" at the United States.  *In re Magnetic Audiotape  Antitrust Litigation*, 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added), citing *Calder*, 465 U.S. at 790.  *See S.E.C.* v. *Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) ("some causal relation" is insufficient; "the test for *in personam* jurisdiction" requires that any injury be a "direct" result of the conduct outside the forum) (citing

---

[6]    In *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), Judge Posner made this precise point through a reverse example for which, ironically, he chose Saudi Arabia:

> We would not expect anyone to argue that if the First National Bank of Chicago accepts a deposit from a man in Saudi Arabia, this thrusts the bank into the banking business in Saudi Arabia, thus exposing it to suit there by any resident of the kingdom for anything at all, whether or not the plaintiff is the depositor or his claim is related to the deposit.

969 F.2d at 458.  An attempt to sue the *chairman* of the Chicago bank in Saudi Arabia would be even more obviously improper.

*Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 1000 (2d Cir. 1975)). Here, the allegation that Prince Mohamed chairs a bank in which, at some unspecified time, persons associated with al-Qaida had undescribed "accounts" falls far short of establishing that Prince Mohamed did anything "expressly aimed" at the United States. On the contrary, nothing in the FAC comes close to alleging that Prince Mohamed was *negligent* with respect to any purported activities of any "account" holder in any bank, let alone that his alleged action (or inaction) with respect to any "account" constituted intentional tortious actions "expressly aimed" at New York or the United States. The allegations in the FAC do not permit the exercise of personal jurisdiction over Prince Mohamed.

**B.    Plaintiffs' General Allegations of "Conspiracy" and "Aiding and Abetting" Provide No Basis for Jurisdiction Over Prince Mohamed.**

Plaintiffs cannot salvage their defective assertion of personal jurisdiction over Prince Mohamed by conclusory allegations that the defendants were engaged in a "conspiracy" and that they "aided and abetted" terrorism. (*See* FAC ¶ 66.) "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975). "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums." *Stauffacher*, 969 F.2d at 460; *see also Bank Brussels Lambert*, 171 F.3d at 793 (same).[7] To establish jurisdiction over a non-resident conspirator, a plaintiff must show that the

---

[7]    *See also First Capital Asset Mgmt v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002) (to assert jurisdiction based on alleged conspiracy, plaintiff must "(1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in

in-state actor acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981).[8/]  Here, there is no allegation of any facts to show that Prince Mohamed had any prior knowledge about the 9/11 attacks, let alone that he consented to, directed, or exercised any control over any act that injured the plaintiffs.

A claim of aiding and abetting likewise "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and "the defendant must know the wrongful nature of the primary actor's conduct." *Pittman by Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998) (New York law) (quotation marks omitted).  The alleged aider and abettor must have *known* that he was assisting and must *in fact* have substantially assisted the perpetration of the misconduct at issue.  Here, there are no factual allegations in the FAC to support any such claim.

## II.   THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST PRINCE MOHAMED UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' claims as subrogees of their insureds fail because they have not stated any claim on which their insureds could recover against Prince Mohamed.  *See Gibbs*, 966 F.2d at 106; *see also* Couch on Insurance 3d § 222:5 (2003).  None of the twelve counts of the FAC states a cause of action against Prince Mohamed.  Some do not state causes of action at all, even

---

New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor"); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) (same; plaintiffs must "set forth evidentiary facts to connect the defendants with transactions occurring in the United States") (internal quotation marks omitted).

[8/]     *See also Simon v. Philip Morris*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (requiring a showing that the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request or on behalf of" the out-of-state defendant." (internal quotation marks omitted)).

in form.  The others all fail for the same reason, among others: failure to allege any facts to show that Prince Mohamed did *anything* that proximately caused the tragic events that resulted in injury to plaintiffs' insureds.

> ### A.    Each of Plaintiffs' Causes of Action Requires That the Defendant's Alleged Actions Proximately Caused Their Injury.

The legal theory of each Count requires that plaintiffs establish that a named defendant engaged in a wrongful act that proximately caused plaintiffs' insureds' injury.[9]

*Count I:  "Trespass."*  A claim for the tort of trespass requires that the unlawful invasion be the "direct and immediate result" of some act by the defendant or was at a minimum proximately caused by the defendant.  Restatement (Second) of Torts § 217 cmt. d.[10]

*Count II:  "Wrongful Death."*   Under the laws of all three jurisdictions in which injuries occurred, a wrongful death claim requires a plaintiff to plead and prove that a defendant engaged in a wrongful act that proximately caused the death.[11]

---

[9]      Because these claims can be dismissed under general legal principles, a comprehensive choice-of-law analysis is unnecessary: every forum requires that plaintiffs establish causation. On state-law issues, New York's choice of law rules indicate that New York, Pennsylvania or Virginia law would likely apply, depending on which plane crash caused the injuries at issue. *See Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197-98 (Ct. App. 1985); *Mascarella v. Brown*, 813 F. Supp. 1015, 1018-20 (S.D.N.Y. 1993).

[10]      *See In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990*, 885 F. Supp. 434, 440 (E.D.N.Y. 1995) (invasion must be "the immediate or inevitable consequence of" the defendant's misconduct); *Cooper v. Horn*, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant"); *School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 807 (Sup. Ct. 2003) (for trespass to chattels the defendant must have caused harm to the property knowing it was substantially certain to result from his actions); *America Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451 (E.D. Va. 1998) (defendant liable for trespass to chattels when his misconduct causes harm to the property); *A.J. Cunningham Packing Corp. v. Congress Fin. Corp.*, 792 F.2d 330, 334 & n.4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

[11]      N.Y. Est. Powers & Trusts § 5-4.1(1); 42 Pa. Cons. Stat. § 8301; Va. Code Ann. § 8.01-50(A); *see Robinson v. Matt Mary Moran, Inc.*, 525 S.E.2d 559, 562-63 (Va. 2000) (dismissing

*Count III: "Survival Action."*  A survival statute does not create a separate cause of action.  It is a procedural device by which an individual's estate may pursue his cause of action for suffering before his death.[12/]  The estate must establish all the elements of the underlying tort, including a wrongful act that caused the decedent's injuries.  *See Lawrence v. Walsh*, 187 N.Y.S.2d 71, 74 (App. Div. 1959) (administrator has "burden of proving injuries and damages causally related to this accident").

*Count IV: "Assault and Battery."*  Under the laws of New York, Virginia, and Pennsylvania, claims of assault or battery require that the defendant wrongfully caused the plaintiffs' insureds to fear, or to suffer, harmful contact.[13/]  Moreover, under New York law, plaintiffs' claim is time barred because the original complaint was not filed until September 10, 2003, nearly two years after the 9/11 attacks.  N.Y. C.P.L.R. § 215(3) (action to recover damages for assault and battery shall be commenced within one year); *see also Great American Insurance Co. v. United States*, 575 F.2d 1031, 1033 (2d Cir. 1978) (subrogee is subject to same statute of limitations as insured).  These claims also require that the defendant intended to harm the

_____

wrongful death claim because defendant's conduct could not be proximate cause of plaintiff's injury); *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 372 (S.D.N.Y. 1996) (same); *Carroll v. Colon*, 608 F. Supp. 1277, 1279 (E.D. Pa. 1985) (same).

[12/]   *See* N.Y. Est. Powers & Trusts  § 11-3.2(b); *Doe v. State*, 588 N.Y.S.2d 698, 709 (Ct. Cl. 1992), *aff'd*, 595 N.Y.S.2d 592 (App. Div. 1993); 42 Pa. Cons. Stat. § 8302; *Tulewicz v. S.E. Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992);  *see generally* 3 Speiser *et al.*, Recovery for Wrongful Death and Injury § 14.1 at 3 (3d ed. 1992); 2 Dobbs, Law of Torts § 295 at 805. Virginia's survival statute differs from New York's and Pennsylvania's by transforming any survival cause of action into a wrongful death claim.  Va. Code. Ann. § 8.01-25; *El-Meswari v. Wash. Gas Light Co.*, 785 F.2d 483, 491 (4th Cir. 1986).

[13/]   *See Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001); *Park v. Shiflett*, 250 F.3d 843, 852 (4th Cir. 2001); *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960) (assault); *Levenson v. Souser*, 557 A.2d 1081, 1088 (Pa. Super. 1989) (battery).

plaintiffs' insureds, *Girden*, 262 F.3d at 203; *Park*, 250 F.3d at 852; *Cucinotti*, 159 A.2d at 217; *Levenson*, 557 A.2d at 1088, which the FAC nowhere alleges as to Prince Mohamed.

    *Count V: "Intentional and/or Negligent Infliction of Emotional Distress."* Causation is an essential element of any claim of infliction of emotional distress, whether done intentionally or negligently. Intentional infliction of emotional distress requires allegations and proof that (i) the defendant caused severe emotional distress; (ii) intentionally or recklessly; (iii) by extreme and outrageous conduct.[14/] As with any negligence claim, a plaintiff alleging negligent infliction of emotional distress must plead the existence of a duty, the breach of that duty, and proximate causation that results in emotional distress.[15/] Moreover, this claim is also barred by the applicable one-year statute of limitations under New York law. N.Y.C.P.L.R. § 215(3); *see also Kwarren v. American Airlines*, 757 N.Y.S.2d 105, 106 (App. Div. 2003).

    *Count VI: "Torture Victim Protection Act."* This count actually invokes two distinct federal laws, the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), and the Torture Victim Protection Act ("TVPA"), which appears in the U.S. Code as a "note" to Section 1350. To the extent that the ATS provides a cause of action,[16/] there is no question that the tort alleged by the

---

[14/]    *See Howell v. New York Post Co., Inc.*, 596 N.Y.S.2d 350, 353 (Ct. App. 1993); *Joyner v. Sch. Dist.*, 2004 WL 801621 at n.33 (E.D. Pa.); *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991).

[15/]    *See Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (App. Div. 1997) (negligent infliction of emotional distress claim dismissed because plaintiff failed to allege the he was "within [a] recognized orbit of duty on which liability may be based"); *Lakits v. York*, 258 F. Supp. 2d 401, 406 (E.D. Pa. 2003) (to recover on claim for negligent infliction of emotional distress plaintiffs must prove the elements of a cause of action for negligence); *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833-34 (Va. 2000) (requiring a negligent act and a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury).

[16/]    The ATS provides "jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Supreme Court has granted certiorari and heard oral argument on the question whether the ATS provides a cause of

plaintiff must have *caused* his injury.[17/]  Likewise, the TVPA provides a cause of action against

an individual who "subjects" the plaintiff to torture or extrajudicial killing.  *See* S. Rep. No. 102-

249 at 9 (1991) (describing bill that became TVPA as intended to impose liability on defendants

who "actually committed those [proscribed] acts" and those who had "command responsibility"

for primary tortfeasors).  No court has ever suggested that anything less than actual causation is

acceptable.[18/]

    *Count VII:  "Conspiracy."*  This Count is not itself a separate cause of action but is

instead a theory of liability.  *See Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102

(N.Y. Ct. App. 1986) ("a mere conspiracy to commit a tort is never of itself a cause of action")

(internal citation omitted).[19/]  In any event, the essence of a conspiracy is an agreement to

commit an unlawful act.  *See United States* v. *Jimenez Recio,* 537 U.S. 270 (2003); *Lindsay v.*

*Lockwood*, 625 N.Y.S.2d 393, 397 (Sup. Ct. 1994) (plaintiffs alleging conspiracy must plead

---

action, and if so, whether the actions so authorized are limited to suits for violation of *jus cogens* norms of international law.  *See Alvarez-Machain v. United States*, 331 F.3d 604, 611 (9th Cir.) (en banc), *cert. granted*, 124 S. Ct. 807 (2003) (No. 03-339).

[17/]    *See, e.g., Bigio v. Coca-Cola Co.*, 239 F.3d 440, 448 (2d Cir. 2000) (ATS claim requires causation); *Carmichael v. United Techs. Corp.*, 835 F.2d 109, 115 (5th Cir. 1988) (dismissing ATS claim for insufficient allegations of causation); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 353-354 (D.N.J. 2003) (ATS claim requires causation).

[18/]    Moreover, the TVPA requires state action.  *See Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995); *Doe v. Islamic Salvation Front*, 993 F. Supp. 3, 9 (D.D.C. 1998); H.R. Rep. No. 102-367 at 5 (1991); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 21-23 (D.D.C. 2000), *aff'd*, 35 Fed. Appx. 1 (D.C. Cir. 2002) (dismissing claims under TVPA for failure to allege "substantial degree of cooperative action" between private defendant and foreign government); *cf. Bigio v. Coca Cola Co.*, 239 F.3d 440, 448-49 (2d Cir. 2000) (finding no state action and dismissing ATS claim).  The FAC makes no such allegations with respect to Prince Mohamed.

[19/]    *See also Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405-06 (3d Cir. 2000) (Pennsylvania law does not recognize civil conspiracy as a separate cause of action); *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 300 (1997) (without proof of the underlying tort there can be no conspiracy to commit the tort).

specific facts showing that there was an agreement to participate in an unlawful act and that injury was caused by the unlawful act); *Skipworth* v. *Lead Indus. Assoc.*, 690 A.2d 169, 174 (Pa. 1997) (same); *Commercial Bus. Sys., Inc.* v. *Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995) (same).   The FAC nowhere alleges any agreement to which Prince Mohamed was a party, much less one to participate in an unlawful act.[20/]

   *Count VIII:   "18 U.S.C. § 1962(a) - Civil RICO."*   The civil liability section of RICO, 18 U.S.C. § 1964(c), provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may [sue for treble damages]."   The Supreme Court has held that the phrase "by reason of" in the RICO statute requires the showing of proximate cause; that is, there must be a "direct relation between the injury asserted and the injurious conduct alleged."   *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).[21/]   Moreover, the plaintiffs

---

[20/]     The wholly conclusory allegation that Prince Mohamed "conspired with" al Qaida (FAC ¶ 66) is woefully insufficient to state a claim.   *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (conclusory allegations unsupported by factual assertions fail even the liberal pleading standard of Rule 12(b)(6)); *Smith*, 291 F.3d at 240 (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss); *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (Boudin, J.) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome.").

[21/]     The FAC is also devoid of allegations, required to state a RICO claim under § 1962(a), that Prince Mohamed derived income from a pattern of racketeering activity, and that such income was invested in an enterprise that affects interstate or foreign commerce.   Although plaintiffs have not filed a RICO statement, nothing that plaintiffs could possibly allege in such a statement could save this claim from dismissal: plaintiffs cannot allege that the injuries from the attacks of September 11 resulted from "investment" of racketeering income.   Moreover, RICO does not permit recovery under an "aiding and abetting" theory.   *See, e.g., DeFalco v. Bernas*, 244 F.3d 286, 330 (2d Cir. 2001); *Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 842-44 (3d Cir. 2000).   Because plaintiffs do not (and cannot) allege that Prince Mohamed personally committed any RICO violation, this Count must be dismissed.   In any event, plaintiffs lack standing to raise subrogated RICO claims for personal injuries to their insureds and the economic losses derived therefrom.   *See Burnett*, 274 F. Supp. 2d at 101 (holding that plaintiffs alleging personal injuries and economic losses derived therefrom lacked standing to bring RICO claims, and citing the "overwhelming weight of authority" in the circuits that so holds).

must allege that the injury was proximately caused "by the conduct constituting the violation," *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985), which for plaintiffs' claim under § 1962(a) means plaintiffs must allege facts demonstrating that plaintiffs' insureds' injuries were caused by the defendant's *investment of the proceeds* of racketeering activity.  *See Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990) (emphasis added).

   *Count IX:  "Aiding and Abetting."*  Like civil conspiracy, aiding and abetting under New York law is a theory of liability and not an independent tort.  *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (Ct. App. 1999).  In any event, establishing liability for aiding and abetting requires a showing that the defendant had knowledge of the underlying tort and provided "substantial assistance" in its commission, and requires a showing of proximate cause to connect the defendant's "substantial assistance" with the accomplishment of the underlying tort.  *See* Restatement (Second) of Torts § 876, cmt d.[22/]  Plaintiffs' conclusory allegation that Prince Mohamed "aided and abetted" al Qaida is of course insufficient to state a claim, and plaintiffs nowhere allege that Prince Mohamed had knowledge of, much less provided "substantial assistance" in, the commission of the torts that resulted in plaintiffs' insureds' losses.

   *Count X:  "18 U.S.C. § 2333."*  Section 2333 of Title 18 provides a cause of action for a "national of the United States injured in his or her person or property *by reason of* an act of

---

[22/]   *See Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (Sup. Ct. 1994) (aiding and abetting requires knowledge of the underlying tort and substantial assistance in its commission; and requires proximate cause connecting defendant's "substantial assistance" with the accomplishment of the underlying tort); *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Super. 2003) (adopting Restatement formulation); *Meadow Limited Partnership v. Heritage Savings and Loan Ass'n.*, 639 F. Supp. 643, 654 (E.D. Va. 1986) (applying Restatement formulation); *see also Priester v. Small*, Nos. 26541, 26520, 2003 WL 21729900 at *2 (Va. Cir. Ct. April 14, 2003) (requiring knowledge of the underlying tort and substantial assistance in its commission).

international terrorism." (Emphasis added.) The phrase "by reason of," in this statute, "require[s] a showing of proximate cause."[23]

       *Count XI: "Negligence."* To establish a prima facie case of negligence under the laws of New York, Pennsylvania and Virginia, the plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused plaintiff's injury.[24]

       *Count XII: Punitive Damages."* This Count does not state a cause of action at all. A right to punitive damages depends on pleading and proving an underlying tort; it is not a separate cause of action.[25]

### B. The Complaint Does Not Allege That Prince Mohamed Proximately (or Otherwise) Caused Plaintiffs' Injuries.

       The FAC fails to state a claim on any of these theories because it does not allege that anything that Prince Mohamed did or failed to do led in any way to the events of September 11. To properly plead causation, a plaintiff must allege facts to show both that the injury would not

---

[23]      *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1012 (7th Cir. 2002) (noting Supreme Court has interpreted identical language to require a showing of proximate cause) (citing *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 265-68 (1992) (the phrase "by reason of" in civil RICO statute requires showing of "proximate cause")); *see Burnett*, 274 F. Supp. 2d at 106 (interpreting *Boim* to require knowledge and intent to further violent acts, and those violent acts must be a reasonably foreseeable result); *Smith v. Afghanistan*, No. 01 Civ. 10132 (HB), 2003 WL 21027170, at *6 n.12 (S.D.N.Y. May 7, 2003) ("*Boim* … held that … [a] plaintiff must show knowledge of and an intent to further the criminal acts and proximate cause."); *see also Lerner v. Fleet Bank, NA*, 318 F.3d 113, 122 (2d Cir.) (affirming dismissal of RICO claims for failure to allege facts showing proximate cause), *cert. denied*, 124 S. Ct. 532 (2003) (No. 03-189); *Associated Gen. Contractors, Inc. v. Carpenters,* 459 U.S. 519, 534 (1983) (interpreting "by reason of" in Clayton Act to require proximate cause).

[24]      *See Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (Ct. App. 1985); *Ellis v. Sherman*, 515 A.2d 1327, 1328 (Pa. 1986); *Didato v. Strehler*, 554 S.E. 2d 42, 47 (Va. 2001).

[25]      *See Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 616 (Ct. App. 1994); *Kirkbride v. Lisbon Contractors, Inc.,* 555 A.2d 800, 802 (Pa. 1989); *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).

have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial

factor foreseeably leading to the injury. *See, e.g., Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258,

268 (1992) (liability for injury "by reason of" defendant's conduct requires "a showing that the

defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as

well;" proximate cause requires "some direct relation between the injury asserted and the

injurious conduct alleged"); *see also In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 402

(2d Cir. 1994) (defendant's acts must have been "a substantial factor" leading to the injury, and

the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of

the acts) (internal citation omitted); *Laborers Local 17 Health & Benefit Fund v. Philip Morris,

Inc.*, 191 F.3d 229, 235 (2d Cir. 1999).[26/]

By these standards, the FAC is several large leaps away from stating a claim that Prince

Mohamed caused plaintiffs' insureds' injuries.  As shown above, there is only one alleged factual

basis for the claim against Prince Mohamed:  that he purportedly chaired a bank in Sudan (FIBS)

in which al Qaida "maintained" accounts that were allegedly used to "transfer" or "launder" and

distribute" funds for al Qaida's "operations" and "terrorist attacks."  (FAC ¶¶ 312; 315-316.)

---

[26/]    Plaintiffs' conclusory assertions that institutions with which Prince Mohamed is allegedly associated "caused" the attacks are insufficient to state a claim against those institutions, much less against Prince Mohamed.  *See, e.g.*, FAC ¶ 319 (conclusory assertion that the September 11 attacks were the "direct, intended and foreseeable product" of  FIBS' "participation in al Qaida's jihadist campaign").  "[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (internal quotation and citation omitted); *see also In re Am. Express Co. Shareholder Litig.*, 39 F.3d at 400 n.3 (conclusory allegations of proximate cause "need not be accepted as true for purposes of ruling on a motion to dismiss"); *Citibank N.A. v. K-H Corp.*, 968 F.2d 1489, 1495-96 (2d Cir. 1992) (affirming dismissal of securities fraud claim because plaintiff did "not allege facts that support its allegation that there is a causal connection between the fraud alleged and the subsequent loss that it suffered").

This allegation wholly fails, for three reasons, to connect any act of Prince Mohamed to plaintiffs' insureds' injuries.

First, the FAC does not allege that the "accounts" were a cause of—or were connected at all to—the events of September 11. Assuming the truth of the allegations that those accounts were, at some point in time, used to "transfer" or "launder" or "distribute" money for al Qaida "operations and terrorist attacks," plaintiffs do not allege that the accounts or any funds that allegedly passed through them were used in any way in connection with the events of 9/11. Plaintiffs thus allege no facts to show that the alleged accounts were either a "but for" cause or a "proximate cause" of the attacks of September 11 or that the attacks could in any way "have reasonably been anticipated as a natural consequence" of the "distribu[tion]" of funds at some unspecified time and amount for al Qaida's global "operations." *See Boim*, 291 F.3d at 1012.

Second, even if plaintiffs had alleged some actual connection between the "accounts" at FIBS and the events of 9/11, that would be wholly insufficient to state any claim against FIBS (much less against its chairman). As a matter of law, banks are *not* responsible for assuring that their customers are good people, or for policing how their customers use the money in their accounts. Plaintiffs' allegations about these "accounts" suggest at most that they were mere "funnels" through which funds passed. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (Robertson, J.) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other

routine banking service.") (footnote omitted).[27/]   As a matter of law, the mere existence of these accounts is insufficient to give rise to any claim.

Third, even if Plaintiffs' allegations were sufficient to link the "accounts" with the events of 9/11 *and* to state a claim against FIBS and not merely against its depositors, Plaintiffs do not allege any link between *Prince Mohamed* and these "accounts."  The FAC alleges only that "*FIBS*" knew that al Qaida allegedly maintained accounts at the banks.  (FAC ¶¶ 316 (emphasis added).)  Plaintiffs nowhere allege that Prince Mohamed even knew that these accounts existed, much less that he knew the identity of the alleged account holders or the alleged uses to which the funds had been (or would be) put.  Thus, even if plaintiffs' allegations were sufficient to state a claim against FIBS, they still would be insufficient to state any claim against any corporate officer of FIBS, including (allegedly) Prince Mohamed.  *See Armour & Co. v. Celic*, 294 F.2d 432, 439 (2d Cir. 1961) ("[A] director, merely by reason of his office, is not personally liable for the torts of his corporation; he must be shown to have personally voted for or otherwise participated in them.")[28/]

---

[27/]   *See also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (collecting cases and stating that "[c]ourts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship"); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 Civ. 10726 (LAP), 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (under New York law bank "owed no duty of care to" non-customer defrauded by bank's customer); *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (same); *Century Bus. Credit Corp. v. N. Fork Bank*, 668 N.Y.S.2d 18, 19 (App. Div. 1998) (declining to require bank "to monitor the depositors' financial activities" as it "would . . . unreasonably expand banks' orbit of duty"); *see also Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998) (collecting decisions holding that a "bank owes no duty of care to a noncustomer with whom it has no relationship"); *McCallum v. Rizzo*, No. 942878, 1995 WL 1146812 (Mass. Super. Oct. 13, 1995) (same).

[28/]   *See also Olszewski v. Waters of Orchard Park*, 758 N.Y.S.2d 716, 717 (App. Div. 2003) (corporate officer cannot be held individually liable for the tortious conduct of the corporation "merely because of his relationship to" the corporation); *Kinnel v. Mid-Atlantic Mausoleums, Inc.*, 850 F.2d 958, 966 n.10 (3d Cir. 1988) (corporate officer is individually liable for wrongful

The Seventh Circuit's decision in *Boim* illustrates how far short of the Rule 12(b)(6) standard the plaintiffs' allegations fall.  In *Boim*, the court held that allegations that the defendant made direct cash payments to a declared terrorist organization (Hamas), and that this organization itself later carried out the terrorist act at issue (killing the plaintiffs' son), were *not sufficient* to state a claim against the defendant donor for engaging in an act of "international terrorism," because the allegations did not establish that the son was killed "by reason of" the defendant's contributions, *i.e.*, that they were the proximate cause of his death.  *Boim*, 291 F.3d at 1012.  Plaintiffs' allegations here (that Prince Mohamed serves as the chairman of a bank which at some time allegedly held al Qaida-associated accounts) fall far short of the allegations of active contributions to an identified terrorist organization that the *Boim* court deemed insufficient.[29]

## CONCLUSION

If the tort at issue were anything other than the events of September 11, plaintiffs would almost certainly not have dreamed of suing Prince Mohamed, and this Court, we respectfully

---

act of the corporation only if the officer participated in the tortious activity); *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 929 (4th Cir. 1984) (corporate officer is individually liable for wrongful act of corporation only if the officer was directly engaged in the transaction giving rise to liability); *Cooper v. First Gov't Mortgage & Investors Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (corporate officer is individually liable for wrongful act of corporation only if the officer had "meaningful participation" in the tortious activity); *cf. Meyer v. Holley*, 537 U.S. 280, 286 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

[29]    The *Boim* court ruled that a defendant could be liable for aiding and abetting if it "knowingly and intentionally suppl[ied] the funds *to the persons who commit[ted] the violent acts*." *Boim*, 291 F.3d at 1021, 1024 (emphasis added).  It allowed the plaintiffs to pursue an aiding and abetting claim because plaintiffs alleged that the defendants' funds were themselves used to murder their son.  *Id.* (allegation was that defendant's money was *used "to purchase the vehicle, machine guns, and ammunition used to kill* [*plaintiffs' son*] *as well as to train his killers and to provide a stipend for the family of one of his murderers"*) (emphasis added).  Plaintiffs do not make any allegation remotely resembling this against Prince Mohamed.

suggest, would have swiftly dismissed any claim against him.  Alleged bank chairmen are not subject to jurisdiction in foreign forums, and they are not personally liable, merely because their banks (allegedly) held "accounts" for persons who commit tortious acts--however awful the acts themselves may be.  Horrendous as September 11 was--Prince Mohamed himself said so in writing in February 2002, long before these cases were brought--plaintiffs' claims are governed by long-settled principles of jurisdiction and causation that compel their dismissal here.

Respectfully submitted,

_____/s/_____

June 17, 2004

Louis R. Cohen (LC 4012 )
WILMER CUTLER PICKERING HALE
AND DORR LLP
2445 M Street N.W.
Washington, D.C. 20037
Tel.: 202-663-6000
Fax: 202-663-6363

David P. Donovan (DD 7012)
WILMER CUTLER PICKERING HALE
AND DORR LLP
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102
Tel: 703-251-9700
Fax: 703-251-9797

Matthew Previn (MP 2173)
WILMER CUTLER PICKERING HALE
AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel.: 212-230-8800
Fax: 212-230-8888

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2004 I caused an electronic copy of PRINCE

MOHAMED AL-FAISAL AL-SAUD'S NOTICE OF MOTION TO DISMISS and

MEMORANDUM OF LAW in support thereof to be served electronically by the Court's

Electronic Case Filing (ECF) System on all parties scheduled for electronic notice and by first-

class mail on any parties not participating in the Court's ECF system as thereafter advised by the

Court.


                                          /s/

June 17, 2004                                  Louis R. Cohen