COZEN O'CONNOR
Attorneys for Plaintiffs
Michael J. Sommi, Esq. (MS-7910)
45 Broadway, 16th Floor
New York, New York 10006
(212) 509-9400

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK            :
ON SEPTEMBER 11, 2001                          CIVIL ACTION NO.: 03 MD 1570
                                  :

---

FEDERAL INSURANCE COMPANY;        :
PACIFIC INDEMNITY COMPANY;        :
CHUBB CUSTOM INSURANCE            :      CIVIL ACTION NO.: 03 CV 6978
COMPANY; CHUBB INDEMNITY          :
INSURANCE COMPANY; CHUBB          :
INSURANCE COMPANY OF CANADA;      :
CHUBB INSURANCE COMPANY OF        :
NEW JERSEY; GREAT NORTHERN        :      **FIRST AMENDED**
INSURANCE COMPANY; VIGILANT       :      **COMPLAINT**
INSURANCE COMPANY; ZURICH         :
AMERICAN INSURANCE COMPANY;       :
AMERICAN GUARANTEE AND            :
LIABILITY INSURANCE COMPANY;      :
AMERICAN ZURICH INSURANCE         :      **JURY TRIAL DEMANDED**
COMPANY; ASSURANCE COMPANY        :
OF AMERICA; COLONIAL AMERICAN     :
CASUALTY AND SURETY               :
INSURANCE COMPANY; FIDELITY       :
AND DEPOSIT COMPANY OF            :
MARYLAND; MARYLAND                :
CASUALTY COMPANY; NORTHERN        :
INSURANCE COMPANY OF NEW          :
YORK; STEADFAST INSURANCE         :
COMPANY; VALIANT INSURANCE        :
COMPANY; ONE BEACON               :
INSURANCE COMPANY; ONE            :
BEACON AMERICA INSURANCE          :
COMPANY; AMERICAN EMPLOYERS'      :
INSURANCE COMPANY; THE            :
CAMDEN FIRE INSURANCE             :

66. Defendants Princess Haifa Al-Faisal; Prince Bandar bin Sultan bin Abdulaziz al Saud; Osama Bassnan; Omar Al-Bayoumi; Fahad Al-Thumairy; World Assembly of Muslim Youth; Sheikh Ahmed Salim Swedan; Muhammad Abu-Islam; Abdullah 'Qassim; Hashim Abdulrahman; Jamal Al-Badawi; Mohammed Omar Al-Harazi; Walid Al-Sourouri; Fatha Adbul Rahman; Yasser Al-Azzani; Jamal Ba Khorsh; Ahmad Al-Shinni; Jamil Qasim Saeed; Abu Abdul Rahman; Mohamed Bayazid; Abu Musab Zarqawi; Sheikh Omar Bakri Muhammad; Abdul Fattah Zammar; Ghasoub Al Abrash Ghalyoun a/k/a Abu Musab; Bensayah Belkacem; Sabir Lamar; Wadih El-Hage; Wali Khan Amin Shah; Zacarias Moussaoui; The Taliban; Maulvi Abdul Kabir; Jalil Shinwari; Noor Jalil; Abdel Hussein; Adu Agab; National Islamic Front; Hassan Turabi; Iss El-Din El Sayed; Lashkar Redayan-E-Islami; Ahmad Salah a/k/a Salim; Abd Al-Mushin Al-Libi; Abdul Rahman Khaled Bin Mahfouz; Abdul Rahman Yasin; Abdulla Al Obaid; Abdula Bin Laden; Advice and Reformation Committee; Afghan Support Committee; Al Khaleejia for Export Promotion and Marketing Company; Al-Haramain a/k/a Al-Haramain Foundation; Enaam M. Arnanout; International Development Foundation; International Islamic Relief Organization; International Institute of Islamic Thought; Islamic Cultural Institute of Milan; Jamal Barzinji; Khaled Bin Mahfouz; Mohammed Jamal Khalifa; Mohammed Salim Bin Mahfouz; Muslim World League; National Commercial Bank; Prince Nayef Bin Abdulaziz Al Saud; Prince Sultan Bin Abdulaziz Al Saud; Rabih Haddah; SAAR Foundation; Saudi Sudanese Bank; Al Shamal Islamic Bank ;Sheikh Abu Bdul Aziz Nagi; Sheik Adil Galil Batargy a/k/a Adel Abdul Jalil Batterjee; Suleiman Abdel Aziz Al Rajhi; Taba Investments; Tanzanite King; Ulema Union of Afghanistan; Wadi Al Aqiq; Infocus Tech of Malaysia; Yazid Sufaat of Kuala Lumpur Malaysia; Al-Shaykh Al-Iraqi; Azzam Service Center; Abu Hajer Al Iraqi;

Mohammed Al Faisal Al Saud; Al-Hijrah Construction and Development Limited; Gum Arabic Company Limited; Al Shamal For Investment and Development; Saleh Abdullah Kamel; Al Baraka Investment and Development; Saudi Dallah Al Baraka Group LLC; Islamic Investment Company of the Gulf; Dar-Al-Maal Al Islami; Al-Bir Saudi Organization; Mohammad S. Mohammad; Tadamon Islamic Bank; Mustasim Abdel-Rahim; National Fund for Social Insurance; Abdul-Rahim Mohammed Hussein; Al Amn Al-Dakhili; Al Amn Al-Khariji; Abd Al Samad Al-Ta'Ish; Mohamed Sadeek Odeh; Abdel Barry; Ahmad Salah a/k/a Salim; Mahdi Chamran Savehi; Mohammed Sarkawi; Al Tawhid; Haji Mohamad Akram; Abdallah Omar; Umar Faruq; Abd Al-Rahim Al-Nashiri; Turki Al Faisal Al Saud a/k/a Prince Turki; Prince Abdullah Al Faisal Bin Abdulaziz Al Saud a/k/a Prince Abdullah; Prince Salman Bin Abdul Aziz Al Saud a/k/a Prince Salman; Zouaydi a/k/a Muhammed Galeb Kalaje Zoaaydi a/k/a Abu Talha; Mullah Kakshar; Abdulaziz Bin Abdul Rahman Al Saud; Arafat El-Asahi; Haydar Mohamed Bin Laden; Mohammed Bin Abdulrahman Al Ariefy; Faisal Group Holding Company; Al Faisaliah Group; Bashsh Hospital; Mushayt for Trading Establishment; Abdullah Bin Abdul Muhsen Al Turki a/k/a Al Turki; Saudi High Commission a/k/a The Saudi High Relief Commission; Abdul Aziz Al Ibrahim a/k/a Al Ibrahim; Tarek Ayoubi; Al Anwa; Help African People; Ibrahim Bin Abdul Aziz Al Ibrahim Foundation; Mercy International Relief Agency; Islamic Movement of Uzbekistan; Saudi Bin Laden Group; Bakr M. Bin Laden; Salem Bin Laden; Saleh Gazaz; Mohammed Bahareth; Abdullah Bin Said; Mohammed Nur Rahmi; Tarek M. Bin Laden; Omar M. Bin Laden; Mohammed Bin Laden Organization; Saudi Bin Laden International Company; Yeslam M. Bin Laden; Global Diamond Resource; Human Concern International Society; Talal Mohammed Badkook; Dr. Mohaman Ali Elgari; New Diamond Holdings; M.M.

Badkook Company for Catering & Trading; Al-Mustaqbal Group; National Management Consultancy Center; Al-Rajhi Banking & Investment Corporation; Saleh Abdulaziz Al-Rajhi; Abdullah Sulaiman Al-Rajhi; Khalid Sulaiman Al-Rajhi; Al-Watania Poultry; Mar-Jac Poultry; Mar-Jac Investments, Inc.; Piedmont Poultry; Salim Bin Mahfouz; SNCB Corporate Finance Limited; SNCB Securities Limited in London; SNCB Securities Limited in New York; Saudi Economic and Development Company; Zakat Committee; Red Crescent Saudi Committee; Blessed Relief Foundation; Abdulkarim Khaled Uusuf Abdulla; Abdulrahman Bin Khalid Bin Mahfouz; Al-Birr; Hisham; Hezb-e-Islami; Saif Al Islam El Masry; Syed Suleman Ahmer; Mazin M.H. Bahareth; Shahir Abdulraoof Batterjee; Zahir H. Kazmi; Muzaffar Khan; Soliman J. Khudeira; Jamal Nyrabeh; Ahmad Ajaj; Success Foundation; Abdulrahman Alamoudi; American Muslim Foundation; Mohammed Omeish; Adnan Basha; Mahmoud Jaballah; Arafat El-Ashi; Moro Islamic Liberation Front; Jamal Ahmed Mohammed; Mohammed Khatib; Saudi Joint Relief Committee; Taibah International Aid Association; Islamic African Relief Agency; Tarik Hamdi; Fazeh Ahed; Sanabil Al-Khair; Sana-Bell, Inc.; Sanabel Al-Kheer, Inc.; Khaled Nouri; Abdullah M. Al-Mahdi; Tareq M. Al-Swaidan: Abdul Al-Moslah; Salah Badahdh; Hassan A.A. Bahfzallah; M. Yaqub Mirza; Ihab Ali; Samir Salah; Ibrahim Hassabella; Hisham Al-Talib; Abu Sulayman; Ahmed Totonji; Iqbal Yunus; M. Omar Ashraf; Mohammed Jaghlit; Muhammad Ashraf; Sherif Sedky; African Muslim Agency; Aradi, Inc.; Grove Corporate, Inc.; Heritage Education Trust; Mena Corporation; Reston Investments, Inc.; Safa Trust; Sterling Charitable Gift Fund; Sterling Management Group; York Foundation; National Development Bank; Dallah Avco Trans Arabia Co. Ltd.; Omar Al Bayoumi a/k/a Abu Imard; Masjed Al Madinah Al Munawarah a/k/a Masjid Al Madinah Al Munawarah; Aqsa Islamic Bank; Aqeel Al-Aqeel; Mansouri

Al-Kadi; Soliman H.S. Al-Buthe; Perouz Seda Ghaty; Ahmed Ibrahim Al Najjar; Adel Muhammad Sadiq Bin Kazem; Saudi American Bank; Abdulaziz Bin Hamad; Khalil A. Kordi; Rashid M. Al Romaizan; Abdulaziz Bin Hamad Al Gosaibi; Saudi Cement Company in Damman; Omar Sulaiman Al-Rajhi; Arab Cement Company; Zeinab Mansour-Fattouh; Mohammed Chehade; Hazem Ragab; Mohammed Alchurbaji; Mustafa Al-Kadir; Abu Al-Maid; Al Shamal Islamic Bank a/k/a Shamel Bank a/k/a Bank El Shamar; Sulaiman Al-Ali; Khaled Nouri; Muslim World League offices; Abdullah Bin saleh Al-Obaid; Taha Jaber Al-Alwani; International Institute of Islamic Thought; Ibrahim S. Abdullah; Mohammed Bin Faris; Dr. Mahmoud Dakhil; Mohammed Al Faisal Al Saud; Abdul Rahman Al Swailem; Delta Oil Company; Nimir, LLC; Arab Bank, PLC; Dubai Islamic Bank; Nada Management Organization, SA; Ary Group; Islamic Cultural Center of Geneva; Hani Ramadan; The Committee for the Defense of Legitimate Rights; Proyectos Y Promociones Iso; Afamia, SL; Cobis; Abrash Company; Promociones Y Construcciones Tetuan Pricote, S.A.; Contratas Gioma; Eurocovia Obras, S.A.; Proyectos Y Promociones Pardise, S.L.; Proyectos Edispan; Ghasoub Al Abrash; Mustaf Ahmed Al-Hisawi a/k/a Sheik Saeed; Imad Eddin Barakat Yarkas a/k/a Abu Dahdah; Muhammed Galeb Kalaje Zuoyadi a/k/a Abu Talha; Bassam Dalati Satut; Abdalrahman Alarnout Abu Aljer a/k/a Abu obed; Mohammed Khair Al Saqqa a/k/a Abu Al Darda; Ghasoub Al Abrash Ghalyoun a/k/a Abu Musab; Mohammed Ali Sayed Mushayt; Mohammed Hussein Al-Amoudi; Abu Qatada Al-Filistini a/k/a Abu Ismail a/k/a Abu Umar a/k/a Abu Omar Omar a/k/a Abu Umar Takfiri a/k/a Abu Umar umar a/k/a Ali-Samman Uthman a/k/a Omar Mahmoud Uthman a/k/a Umar Uthman; Yassir Al-Sirri a/k/a Ammar; Mohammed Al Massari; Lujain Al-Iman; Ziyad Khaleel; Ibrahim Bah; Abu Zubaydah; Mamdouh Mahmud Salim a/k/a Abu Hajer Al Iraqi; Sheikh

Abdullah Azzam a/k/a Abu Muhammed; Abdullah Samil Bahmadan; Essam Al Ridi; Omar Abu Omar; Mohammed Ali Hasan Al Moayad; Al Farooq Mosque; Yousef Jameel; Ibrahim Muhammed Afandi; Mohammed Bin Abdullah Al-Jomaith; Abdulrahman Hassan Sharbatly; Salahuddin Abduljawad; Ahmed Zaki Yamani; Ahmad Al Harbi; Mohammed Al-Issai; Hamad Hussaini; Abu Rida Al Suri a/k/a Mohammed Loay Bayazid; Saudi Red Crescent; Ahmed Brahim; Abu Musab Al-Zarqawi; Abu Ibrahim Al-Masri; Dar Al Maal Al Islami Trust; DMI Administrative Services, S.A.; Islamic Assembly of North America; Salman Al-Ouda; Safar Al-Hawali; Saleh Al-Hussayen; Sami Omar Al-Hussayen; Muhammed J. Fakihi; Queen City Cigarettes and Candy; Agus Budiman; Al-Baraka Bankcorp, Inc.; Ahmed Ressam; Said Bahaji; Zakariya Essabar, have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein.

## II.   JURISDICTION

67.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a)(2) (diversity), and 28 U.S.C. § 1350 (Alien Tort Claims Act).

68.   The jurisdiction of this Court over defendants Iran, Iraq, Sudan, Syria and Saudi Arabia is invoked pursuant to 28 U.S.C. § 1330, as the claims against those defendants fall within the exceptions to immunity set forth at 28 U.S.C. §§ 1605(a)(2), 1605(a)(5) and 1605(a)(7) (Foreign Sovereign Immunities Act).

69.   Venue in this district is proper pursuant to § 408(b)(3) of the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101, and 28 U.S.C. §§ 1391(b)(2) and 1391(f)(1).

maintained by Al Baraka on behalf of al Haramain have served as a principal vehicle for funding al Qaida's operations in Bosnia, according to Bosnian officials.

302. Al Baraka has long known that the accounts it maintained for many ostensible charities were being used to solicit and transfer funds to terrorist organizations, including al Qaida.

303. Despite this knowledge, Al Baraka has continued to maintain those accounts. In doing so, Al Baraka knowingly provided financial services and other forms of material support to al Qaida.

304. In addition, Al Baraka has provided substantial support to al Qaida through its subsidiaries and affiliates, including Al Shamal Islamic Bank, Tadamon Islamic Bank and al Aqsa Bank, as further described herein.

305. As the forgoing demonstrates, Al Baraka has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.

306. The September 11th Attack was a direct, intended and foreseeable product of Al Rajhi Bank's participation in al Qaida's jihadist campaign.

## DAR-AL-MAAL AL ISLAMI

307. Beginning in the early 1980's, Saudi Arabia channeled massive financial support for the spread of Wahhabism, the radical brand of Islam at the heart of the al Qaida ideology, through a complex banking system that had at its center two entities: Dar-Al-Maal Al Islami ("DMI"), chaired until recently by Prince Mohammed Al Faisal Al Saud; and Dallah Al-Baraka. Endowed with enormous funding, these institutions served the Saudi government's goals in two ways: they helped to boost the Kingdom's

financial preeminence in the Arab World, and they gave extensive support for radial Islamic causes.

308. DMI, or the House of Islamic money, was created on July 29, 1981 and is headquartered in Switzerland. Its main subsidiaries are the Islamic Investment Company of the Gulf, the Faisal Islamic Bank of Bahrain, and Faisal Finance. Until October 1983, the President of DMI was defendant Ibrahim Kamel.

309. Kamel was replaced as President of DMI on October 17, 1983 by Prince Mohammad Al Faisal Al Saud, who ran the Bank until the year 2000.

310. Like other Islamic banking institutions, DMI abides by *sharia* or Islamic law, which prohibits the earning or payment of interest. DMI operates by participating in investments, sharing profits on projects, and earning fees for services performed. One of the obligations imposed on Islamic banking systems under *sharia* is the duty to contribute and manage Zakat funds. Consistent with this obligation, Islamic banking institutions set aside a percentage of funds associated with each transaction as Zakat. As a practical matter, these funds disappear from the bank's books and can be used to fund radical Islamic organizations.

311. DMI has actively sponsored and supported the al Qaida movement through several of its subsidiaries, including but not limited to, the Islamic Investment Company of the Gulf, the Faisal Islamic Bank of Bahrain, Faisal Finance, Tadamon Islamic Bank, and Al Shamal Islamic Bank, as described herein.

312. Mohammad Al Faisal Al Saud chairs Islamic Investment Company of the Gulf, as well as Faisal Islamic Bank of Sudan. Osama bin Laden's brother, Haydr Mohammad bin Laden, served as a Director of the Islamic Investment Company of the Gulf.

## FAISAL ISLAMIC BANK – SUDAN

313. Faisal Islamic Bank of the Sudan is a subsidiary of the Islamic Investment Company of the Gulf. Faisal Islamic Bank of the Sudan is one of the founders of Al Shamal Islamic Bank, which was largely capitalized by Osama bin Laden.

314. Faisal Islamic Bank of Sudan has long provided financial services and other forms of material support to al Qaida.

315. During the 2001 trial of the al Qaida conspirators who conducted the 1998 African Embassy bombings in Kenya and Tanzania, Jamal Ahmed Al-Fadl, al Qaida's financial chief in Khartoum, Sudan, testified that al Qaida maintained accounts with the Faisal Islamic Bank of the Sudan.

316. At all times material hereto, Faisal Islamic Bank of Sudan knew that al Qaida cells maintained accounts with the bank, and that those accounts were being used to launder and distribute funds for al Qaida operations and terrorist attacks.

317. Despite its express knowledge that accounts it maintained were being used to launder and distribute funds for al Qaida operations and terrorist attacks, Faisal Islamic Bank continued to maintain those accounts. In doing so, Faisal Islamic Bank knowingly provided financial services and other forms of material support to al Qaida.

318. As the forgoing demonstrates, Faisal Islamic Bank has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.

319. The September 11th Attack was a direct, intended and foreseeable product of Faisal Islamic Bank's participation in al Qaida's jihadist campaign.

## AL SHAMAL ISLAMIC BANK

320.     Al Shamal Islamic Bank (Al Shamal Bank) was established in the Republic of Sudan in or around 1983.

321.     When Osama bin Laden relocated al Qaida's leadership structure to the Sudan in 1991, he invested heavily in businesses and infrastructure projects in the Sudan, in order to strengthen al Qaida's collaborative relationship with the ruling National Islamic Front regime.  Bin Laden's extensive investment in the Sudan during this period is described in a 2002 Congressional Research Service Report as follows:

> In 1991, bin Laden relocated to Sudan with the approval of Sudan National Islamic Front (NIF) leader Hasan al-Turabi. There, in concert with NIF leaders, [bin Laden] built a network of businesses including an Islamic bank (Al Shamal), an import/expert firm, and firms that exported agricultural products.  An engineer by training, bin Laden also used his family connections in the construction business to help Sudan build roads and airport facilities. The business in Sudan… enabled him to offer safe haven and employment in Sudan to al Qaida members, promoting their involvement in radical Islamic movements in their countries of origin (especially Egypt) as well as anti-US terrorism.

322.     According to the State Department, bin Laden invested approximately $50 million in Al Shamal Bank.  Other shareholders of Al Shamal Bank include defendant Saleh Abdullah Kamel, Omar Abdullah Kamel, al Baraka Investment and Development, Faisal Islamic Bank and the Sudanese Government.

323.     According to published reports, Osama bin Laden remains the principal shareholder in Al Shamal Bank.

324.     Al Shamal Bank has long provided financial services and other forms of material support to al Qaida.

99

325. Al Shamal Bank has maintained accounts for many of the charity defendants that operate within al Qaida's infrastructure, including the IIRO, MWL, WAMY, BIF and al Haramain, among others.

326. The accounts maintained by Al Shamal Bank, on behalf of the charities operating within al Qaida's infrastructure, have been used to transfer funds to al Qaida cells throughout the world.

327. Al Shamal Bank also maintained accounts on behalf of, and invested capital in, many of the commercial enterprises established by Osama bin Laden in the Sudan to fund al Qaida's global operations, including: Wadi al-Aqiq Company, Ltd.; Ladin International Company; Taba Investment Company, Ltd.; al-Hijrah for Construction and Development; and the Themar al Mubaraka Company.

328. According to Al Shamal Bank's general manager, Mohammad S. Mohammad, Al Shamal also maintained three personal accounts for Osama bin Laden between 1992 and 1997. Bin Laden wired al Qaida member Essam al Ridi $230,000 from one of those accounts to purchase a used jet in Arizona. According to al Ridi, bin Laden wanted the plane to ship Stinger anti-aircraft missiles from Pakistan to Sudan.

329. According to Jamal Ahmed Mohamed al Fadl, an al Qaida operative convicted in the 1998 bombings of the U.S. embassies in Kenya and Tanzania, al Qaida used accounts at Al Shamal Bank to finance terrorist operations, including the embassy attacks. Al Fadl further testified that al Qaida operatives maintained accounts at the bank openly, and regularly received disbursements from accounts at the bank to fund their activities.

330. Al Shamal Bank has long known that the accounts it maintained for Osama bin Laden, members of al Qaida, and many businesses and ostensible charities,

were being used to solicit and transfer funds to terrorist organizations, including al Qaida. Despite this knowledge, Al Shamal Bank has continued to maintain those accounts. In doing so, Al Shamal Bank knowingly provided financial services and other forms of material support to al Qaida.

331. The transfer of funds to al Qaida through accounts maintained by the Al Shamal Bank has been facilititated by the direct involvement of several senior al Qaida officials in the bank's management and operation. Defendant Adel Abdul Jalil Batterjee serves as the Chairman of Al Shamal Islamic Bank. As discussed previously, Batterjee is a senior official of al Qaida, and has served as a chairman of BIF and WAMY. Batterjee's longstanding involvement in al Qaida's global operations is detailed at length in the U.S. government's Santiago proffer in the criminal prosecution of Enaam Arnaout.

332. As the forgoing demonstrates, Al Shamal Bank has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.

333. The September 11th Attack was a direct, intended and foreseeable product of Al Shamal Bank's participation in al Qaida's jihadist campaign.

## TADAMON ISLAMIC BANK

334. Tadamon Islamic Bank is a Sudanese based banking institution, established in or around 1983.

335. The shareholders of Tadamon Islamic Bank include al Baraka Investment and Development Corporation, Saleh Abdullah Kamel, National Company for Development and Trade, Dubai Islamic Bank and Faisal Islamic Bank of Sudan.

336. Tadamon Islamic Bank has long provided financial services and other forms of material support to al Qaida.

throughout the world, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.

397.   The September 11th Attack was a direct, intended and foreseeable product of the participation of al Qaida's businesses and business partners in the terrorsit organization's jihadist campaign.

**KINGDOM OF SAUDI ARABIA, SAUDI ROYAL FAMILY AND SAUDI ELITES**

398.   More than any other factor, al Qaida's phenomenal growth and development into a sophisticated global terrorist network were made possible by the massive financial, logisitcal and other support it received from the Kingdom of Saudi Arabia, members of the Saudi Royal Family, and prominent members of Saudi society.

399.   As further described herein, the Kingdom of Saudi Arabia has established, funded, managed, maintained, directed and controlled many of the ostensible charities and banks that operate within al Qaida's support infrastructure.  These agencies and instrumentalities of the Kingdom of Saudi Arabia have served as the primary vehicle for raising, laundering and distributing funds on behalf of al Qaida, since the organization's inception.  The vast majority of these funds have been provided by the Kingdom of Saudi Arbia and members of the Saudi Royal Family.  In addition, purported charities, operating as arms of the Kingdom, have provided arms, false travel documentation, physical assets and logistical support to al Qaida.  In many cases, the Kingdom of Saudi Arabia has appointed senior members of the al Qaida movement to high ranking positions within the charities it controlled, thereby providing a cover for their terrorist activity and facilitating the provision of material support and resources to al Qaida.  Al Qaida has planned and coordinated terrorist attacks from branch offices of the charities, including branches which operated from within Saudi embassies throughout the world.

400. The Kingdom of Saudi Arabia and members of the Saudi Royal Family have known, for a period of many years, of the pervasive involvement of the Kingdom's charities and banks in funding and sustaining al Qaida's support infrastructure. In 1994, a French delegation led by French Interior Minister Charles Pasqua visited Saudi officials, including Saudi Minister of Interior Prince Naif, to discuss the French government's deep concerns regarding the pervasive involvment of the Saudi charities in the sponsorship and funding of terrorist organizations. In 1999 and again in 2000, U.S. officials visited Saudi Arabia to raise the same concerns.

401. Despite these pleas from the international community, the Kingdom of Saudi Arabia continued to funnel enormous amounts of money and other resources to the charities supporting al Qaida's operations.

402. As Osama bin Laden had publicly announced that his organization's principal objective was to wage war with the United States, and al Qaida had in fact conducted several attacks against U.S. interests over the years, it is clear that the Kingdom of Saudi Arabia and members fo the Royal Family knew and intended that the funding and support funneled to al Qaida through the charities and banks would be used to attack U.S. interests.

403. The Kingdom of Saudi Arabia also used its relationship with the Taliban regime in Afghanistan as a tool for sustaining al Qaida between 1991 and 1996.

404. During this time period, the Taliban regime openly harbored Osama bin Laden and the al Qaida leadership structure, and allowed al Qaida to maintain training camps throughout Afghanistan.

405. The relationship between the Taliban and al Qaida was truly symbiotic. In exchange for the support it received from the Taliban, al Qaida helped to train and fought

regular contact with Muhammad Jaber Fakihi, the head of the Islamic Affairs Department of the Saudi Embassy in Berlin. The German authorities' efforts to investigate connections between Fakihi and Mounir Mutasedek, a senior member of the Hamburg cell, have been frustrated by the Saudi government, which has refused to cooperate in the investigation.

422.  Fakihi was instrumental in obtaining funding for the Al-Nur Mosque, which served as a meeting place, recruitment center and base of operations for al Qaida within Germany. In his official capacity as a minister of the Saudi government, Fakihi solicited and obtained funding for the Mosque from Saleh bin Abdulaziz Al-Ashaikh, the Saudi Minister of Islamic Affairs and chairman of al Haramain.

423.  As the foregoing demonstrates, the Kingdom of Saudi Arabia has, for many years and in diverse regions throughout the world, played a central and critical role in funding, facilitating and supporting al Qaida's global operations.

424.  Absent the material support and resources provided to al Qaida by the Kingdom of Saudi Arabia, al Qaida would have remained a regional extremist organization, incapable of conducting large scale acts of international terrorism.

425.  The September 11th Attack was a direct, intended and foreseeable product of the Kingdom of Saudi Arabia's participation in al Qaida's jihadist campaign.

426.  Several members of Saudi Arabia's Royal Family have played particularly integral roles in the sponsorship of al Qaida's operations, acting in both their official and personal capacities.

427.  Prince Sultan bin Abdulaziz al Saud (Prince Sultan) is the Second Deputy Prime Minister and Minister of Defense and Aviation of the Kingdom of Saudi Arabia. In addition, Prince Sultan is the Chairman of the Supreme Council for Islamic affairs,

472. Prince Mohamed al Faisal al Saud (Prince Mohamed) has long provided material support and resources to al Qaida.

473. Prince Mohamed served, for many years, as the CEO of Dar al Maal al Islami. Dar al Maal al Islami is the ultimate parent of Faisal Islamic Bank of the Sudan, one of the principal shareholders of the Al Shamal Bank. Prince Mohamed chairs [both the Al Shamal Bank and]* Faisal Islamic Bank of the Sudan.

474. In his capacity as chairman of Dar al Maal al Islami, Faisal Islamic Bank of the Sudan [and Al Shamal Bank]* Prince Mohamed has facilitated the material sponsorship of al Qaida by those entities, as further detailed herein.

[475. Prince Mohamed has made significant personal contributions to Saudi-based charities that he knew to be sponsors of al Qaida's global operations as well, including IIRO, MWL, WAMY, BIF, the Saudi High Commission, SJRC and al Haramain, among others.]*

[476. At all times material hereto, Prince Mohamed knew and intended that the contributions he made to IIRO, WAMY, MWL, Sanabel al-Kheer and al Haramain Foundation would be used to fund al Qaida's global operations and acts of international terrorism.]*

477. Through his official and personal acts, as described herein, Prince Mohamed has provided critical financial and logistical support to al Qaida for a period of many years.

478. Prince Bandar bin Sultan bin Abdul Aziz al Saud (Prince Bandar) is the Ambassador of the Kingdom of Saudi Arabia to the United States.

**\* Bracketed text withdrawn by stipulation**