UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
IN RE TERRORIST ATTACKS ON                                  :
SEPTEMBER 11, 2001                                          :    03 MD 1570 (RCC)
                                                            :
------------------------------------------------------------x
                                                            :
THOMAS E. BURNETT, SR., et al.,                             :
                                                            :
              Plaintiffs,                                   :    02 CV 9849 (RCC)
                                                            :
       v.                                                   :
                                                            :
AL BARAKA INVESTMENT AND                                    :
DEVELOPMENT CORP., et al.,                                  :
                                                            :
              Defendants.                                   :
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

WHITE & CASE LLP

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I  PLAINTIFFS HAVE ENTIRELY FAILED TO MAKE OUT A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER DMI S.A. ................................................................ 5

II  PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A. ......... 8

CONCLUSION ................................................................................................................... 10

## INTRODUCTION

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss the claims against it in the Third Amended Complaint ("TAC"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons stated herein and in the remainder of the record, this motion should be granted in all respects.

## PRELIMINARY STATEMENT

Plaintiffs could not have lodged a more inflammatory charge than that DMI S.A. "has involved itself" in the financing of al Qaeda and the murderous terrorist attacks of September 11, 2001. Now, almost two years after filing this action, plaintiffs in their Memorandum of Law in Opposition to the Motion to Dismiss of DMI S.A. ("Pl. Mem." or "Opposition") effectively abandon most of their arguments in support of that accusation, and in support of the antecedent and companion proposition that DMI S.A. is subject to this Court's jurisdiction. Plaintiffs now assert only that the Court may exercise specific personal jurisdiction over DMI S.A. based upon the proposition that DMI S.A. 'purposefully directed' tortious activities at the United States, or that jurisdiction may be had over DMI S.A. as a co-conspirator or aider and abettor of those who plotted the September 11 attacks. In so doing, plaintiffs concede that DMI S.A. has never had any contacts with the United States that could give rise to general personal jurisdiction.

Plaintiffs also make no substantive effort to defend the sufficiency of most of their thirteen causes of action against DMI S.A. under Rules 8(a) and 12(b)(6); instead, they now essentially limit themselves to their claims under the Anti-Terrorism, Alien Tort Claims, and Racketeer Influenced Corrupt Organizations Acts, with a desultory attempt to defend their wholly insufficient state law claims tacked on for good measure. And throughout, plaintiffs continually and blatantly misrepresent the allegations of their Complaint, and blithely ignore the law that DMI S.A. has already set forth in its opening Memorandum in support of the instant motion ("Def. Mem."). Plaintiffs' Opposition, in retreat, is as thoroughly meritless as the noxious claims whose rear guard it seeks to defend. Those claims are now due to be dismissed in their entirety.

## ARGUMENT

Throughout their Opposition, plaintiffs repeatedly misrepresent the contents of their own allegations, attributing to DMI S.A. various actions, states of mind, agreements, and associations *that are nowhere alleged in the Complaint*. This propensity to fabricate the contents of their own Complaint speaks volumes about the lengths to which plaintiffs' counsel must go -- and have gone -- in their endeavor to maintain this action against DMI S.A.

The vaporous and conclusory nature of plaintiffs' few allegations against DMI S.A. has already been made abundantly clear. See Def. Mem. at 1-3, 6-9, 11-12, 21-23. Contrary to the repeated assertions made in their Opposition, the Complaint does *not* allege that DMI S.A. "knowingly provided material support, in the form of banking and financial services, to the September 11 terrorists." Cf. Pl. Mem. at 2, with TAC ¶¶ 79, 97-101, 108-09, 364, 592-96. Plaintiffs also have not alleged that DMI S.A.: (i) "hid its involvement in corporate layers designed to make it difficult to trace the money back to its source," see Pl. Mem. at 2; or (ii) "was one of several banking entities . . . that, in the early 1990s, set up a financial infrastructure in Sudan for Osama bin Laden and his growing terrorist organization," see id.; or (iii) "used [its putative Sudanese subsidiaries] as instruments for its own provision of financial support to bin Laden and al Qaeda," see id., at 7; or (iv) "assisted bin Laden in this plan [to "recruit and train terrorists to attack the United States"] by establishing Al Shamal and other banking entities," see id., at 9; or (v) "operating through a variety of direct and indirect subsidiaries, . . . provided financial infrastructure and banking services to Osama bin Laden for his terrorist recruitment and training programs," see id. at 15; or (vi) "provided banking services to bin Laden and al Qaeda with knowledge of the terrorist uses to which those services were being put," see id. at 15-16. *Every single one* of these reckless and vicious accusations is proffered for the first time in the Opposition, with no such allegations having been included in the Complaint, see TAC ¶¶ 79, 97-101, 108-09, 364, 592-96,[1] and no other apparent support therefor.

---

[1] As the record reflects, the allegations against DMI S.A. are not only reckless, they are untrue. And, we submit, plaintiffs' counsel could not have filed this action, even in August of 2002, had they conducted a reasonable investigation of their claims against DMI S.A. and assessed their merits in good faith. DMI S.A. does not make this assertion lightly. For this reason, as outlined in correspondence with the Court, DMI S.A. again respectfully requests leave to file its motion under Fed. R. Civ. P. 11 for appropriate sanctions.

Indeed, as DMI S.A. detailed in its opening Memorandum, plaintiffs have alleged no actions by DMI S.A. of any sort, wrongful or otherwise. Contrary to their Opposition, they have not alleged facts sufficient to show that DMI S.A. ever transferred any money at all to anyone associated with al Qaeda, much less to anyone connected with the September 11 attacks. They have not alleged facts showing that DMI S.A. provided banking services to any such person, or that any of DMI S.A.'s affiliates or putative subsidiaries did anything other than open bank accounts of alleged al Qaeda associates in the Sudan sometime in the mid-1990s, see TAC ¶ 79, 101, 109 (an allegation that could apply at least as well to SunTrust, Key Bank, NationsBank, or any other financial institution where the September 11 hijackers or their associates ever "got account"). They have not alleged that DMI S.A. entered into any agreement with Osama bin Laden or anyone else regarding any subject whatsoever, much less an agreement to attack the United States. They have *not* alleged that DMI S.A. established its supposed Sudanese subsidiaries for the purpose of providing 'financial infrastructure' to al Qaeda.[2] And they have not alleged that any actions by DMI S.A. -- whatever those unalleged actions might have been -- were taken with the knowledge that such actions would aid al Qaeda. In short, plaintiffs have brought a wholly vacuous case against DMI S.A., which plaintiffs' counsel now seek to rescue through wholesale fabrications.

Furthermore, plaintiffs have not even attempted to defend the adequacy of the numerous conclusory and generalized allegations upon which they base their claims against DMI S.A. Cf. TAC ¶¶ 1, 46, 642-43, 646, 649-50, 654-56, 666, 669, 672-74, 678-81, 684-87, 690-98, 700-06, 708-14 with Papasan v. Allain, 478 U.S. 265, 286 (1986) (on motion to dismiss, court should disregard conclusory allegations unsupported by specific allegations of fact) and DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."), cert. denied, 519 U.S. 1007, 117 S.Ct. 509 (1996); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)

---

[2] For the sake of clarity, DMI S.A. reiterates that none of the Sudanese entities in question is or ever has been a subsidiary, direct or indirect, of DMI S.A. or any of its affiliates. Cf. Pl. Mem. at 3 n. 3 with Def. Mem. at 3. As stated in DMI S.A.'s initial Memorandum, however, plaintiffs' claims against DMI S.A. are entirely devoid of merit, regardless of this ultimately immaterial factual dispute.

("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Albert v. Carovano, 851 F.2d 561, 572-73 (2d Cir. 1988) (*en banc*) (same); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Burnett v. Al Baraka Inv. and Dev. Corp., 274 F.Supp.2d 86, 103 (D.D.C. 2003) ("[A] court may accept neither inferences . . . unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations"); Def. Mem. at 11-12.[3]

Plaintiffs do not and cannot assert that the conclusory, generalized allegations catalogued in DMI S.A.'s opening Memorandum suffice to establish personal jurisdiction, see Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998); or suffice to allege conspiracy or aiding and abetting, for jurisdictional purposes or as discrete claims, see Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999), In re NASDAQ Market-Makers Antitrust Litig., 894 F.Supp. 703, 711 (S.D.N.Y. 1995), and Johnston v. Norton, 1993 WL 465333, *15 (S.D.N.Y.); or suffice to allege causation or any other element of their claims. See In re American Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994); Smith, 291 F.3d at 240; York v. Ass'n of the Bar of the City of New York, 286 F3d 122, 125 (2d Cir. 2002)("To survive a motion to dismiss[,] the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."). To the extent that plaintiffs' arguments in opposition to the instant motion depend on those non-cognizable, conclusory averments, see Pl. Mem. at 7, 9-10, 13, 15-16, 18-20, those arguments therefore should be rejected out of hand. And absent the conclusory allegations described above, and without benefit of plaintiffs' counsel's repeated misrepresentations regarding their Complaint, plaintiffs' Opposition simply falls apart.

---

[3] DMI S.A. does not "acknowledge[] that plaintiffs allege that it 'rais[ed], facilitat[ed], and transferr[ed] money" for al Qaeda, see Pl. Mem. at 16, or at least not that plaintiffs have so alleged in any cognizable way. As plaintiffs' Opposition seems to willfully ignore, that baldly conclusory and generalized allegation, see TAC ¶ 46, which by its terms supposedly applies to each every one of the dozens of "Banking Defendants" named by plaintiffs, does not indicate whether DMI S.A. is alleged to have given *zakat* funds to al Qaeda, loaned money to al Qaeda, laundered money for al Qaeda, written letters of credit for al Qaeda, maintained checking accounts for al Qaeda, provided investment advice to al Qaeda, or sent bin Laden ten dollars for his birthday. Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), this does not provide DMI S.A. with any meaningful notice of the supposed basis of the claims against it. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under notice pleading, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Glasheen v. City of Albany, 1999 WL 1249409 at *1 (N.D.N.Y. Dec. 16, 1999) (conclusory allegations lacking factual support "render[] it virtually impossible for each [d]efendant to respond to the allegations").

# I
# PLAINTIFFS HAVE ENTIRELY FAILED TO MAKE OUT A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER DMI S.A.

Plaintiffs now abandon any attempt to establish that DMI S.A. has had any contacts with the United States that could give rise to a finding of general personal jurisdiction. Instead, plaintiffs limit themselves to the assertion that jurisdiction over DMI S.A. may be premised upon theories of: (i) specific jurisdiction, i.e., that DMI S.A. "purposefully directed" some sort of tortious activity at the United States, or (ii) conspiracy with al Qaeda, or (iii) aiding and abetting al Qaeda in the attacks of September 11. See Pl. Mem. at 6-11. As a review of plaintiffs' actual allegations against DMI S.A. demonstrates, however, see Def. Mem. at 3, plaintiffs have not even remotely approximated a *prima facie* case for jurisdiction under either theory.

A foreign defendant may be subject to specific personal jurisdiction only where "actions by the defendant *himself*" were "expressly aimed" at the United States by the defendant. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (emphasis in original), Calder v. Jones, 465 U.S. 783, 789 (1984). It is not sufficient to allege, as plaintiffs claim to have done, merely that a defendant's actions might have "foreseeable effects" in the forum. See id. at 789. Plaintiffs must allege that defendant had "good reason" to know that its conduct would have a "direct effect" in the forum. See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972). Here, plaintiffs have alleged neither any actions by DMI S.A. itself, nor any facts that could even be read to imply that DMI S.A. "expressly aimed" any such unalleged tortious actions at the United States. See TAC ¶¶ 79, 97-101, 108-09, 364, 592-96, Even less have plaintiffs made any allegations that show that DMI S.A. took any such actions with "good reason" to know that such actions would have a "direct effect" in the United States. DMI S.A. plainly did not have "fair warning that a particular activity" -- in this case, apparently, failing to prevent its supposed Sudanese subsidiaries from opening bank accounts for unknown al Qaeda associates in the mid-1990s -- might subject it to the jurisdiction of the United States. See Burger King, 471 U.S. at 472.[4]

---

[4] Nor have plaintiffs made any allegations even remotely sufficient to establish specific personal jurisdiction over DMI S.A. as a result of the actions of its putative Sudanese subsidiaries, even if those actions had somehow been wrongful. As is set forth in detail in DMI S.A.'s initial Memorandum, to establish personal

Plaintiffs have also entirely failed to allege facts sufficient to warrant the exercise of specific jurisdiction on a theory of conspiracy or aiding and abetting. Again, plaintiffs simply ignore the law cited by DMI S.A. in its opening Memorandum, which establishes that "the bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction." See Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d at 93-94, and that in order to establish jurisdiction over a non-resident conspirator, a plaintiff must show that the in-state actor acted "for the benefit, with the knowledge and consent of, and under some control by, the nonresident principal." See Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981)[5]; see also Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (requiring showing that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request or on behalf of the out-of-state defendant" (internal quotation marks omitted)). Here, plaintiffs have not alleged any agreement between DMI S.A. and any in-state actor; that any such in-state actor acted for the benefit of DMI S.A.; or that that DMI S.A. exercised control over any such actor. More specifically, plaintiffs have *not* alleged that DMI S.A. "assisted bin Laden . . . by establishing Al Shamal and other banking entities to supply al Qaeda with the necessary financial infrastructure to carry out its plans." Cf. Pl. Mem. at 9-10, with TAC ¶¶ 79, 97-101, 108-09, 364, 592-96. That assertion appears for

---

jurisdiction over an entity through its subsidiaries, a plaintiff is required to allege much more than a mere parent-subsidiary relationship. A plaintiff must allege facts supporting the conclusion that the subsidiary in question acts as an "alter ego" or "mere department" of the parent. See Def. Mem. at 8-9. Plaintiffs in their Opposition do not even attempt to engage the argument and law presented by DMI S.A. regarding this point in its initial Memorandum. See Pl. Mem. at 7. Instead, plaintiffs offer sheer semantics, asserting that they have alleged that "*DMI* has involved itself in funding al Qaeda, using its subsidiaries as the conduits for this activity." See id. As usual, plaintiffs have not in fact made any such allegation in their Complaint. See TAC ¶¶ 79, 97-101, 108-09, 364, 592-96. In fact, they have not alleged that the Sudanese companies in question did any business or entered into any transactions whatsoever with DMI S.A., much less that such entities served as "conduits" for illicit funds from DMI S.A. to al Qaeda. In short, plaintiffs have failed to plead facts sufficient to establish that the Sudanese companies were "alter egos" or "mere departments" of DMI S.A., so as to make it possible for the Court to consider the activities of those companies in determining whether to exercise specific personal jurisdiction over DMI S.A.

[5] Plaintiffs do question the authority of Grove Press on this point. See Pl. Mem. at 10 n. 9. Plaintiffs do not, however, cite to any of the other controlling Second Circuit authority that establishes the applicability of the holding in Grove Press to allegations of conspiracy jurisdiction. See Lehigh Valley Indus., Inc. v. Birenbaum, 389 F.Supp. 798, 806-07 (S.D.N.Y.) ("there is no distinction between attributing the acts of an agent and those of a co-conspirator to a defendant for jurisdictional purposes"), aff'd, 527 F.2d 87 (2d Cir.1975).

the first time in the Opposition. Similarly, plaintiffs have cited no law in support of the proposition that DMI S.A.'s ostensible "control over the money in the various accounts maintained by bin Laden [in the Sudan in the mid-1990s] . . . would provide the requisite control over the conspirators" in the United States in 2001. See Pl. Mem. at 10. To the contrary, plaintiffs have not even alleged that such accounts were opened with DMI S.A.'s knowledge, much less that DMI S.A. somehow controlled the actions of the September 11 conspirators by failing to prevent its supposed subsidiaries from opening those bank accounts, in the Sudan, in the mid-1990s.

Similarly, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A. A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant ... know the wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted). In short, the alleged abettor must have been aware of the wrongdoing and provided substantial assistance in its commission. Here, plaintiffs have alleged no facts sufficient to show that DMI S.A. assisted al Qaeda in any way, much less that such assistance was knowing and substantial, as the law requires. And of course, no inferences may be drawn from nonexistent 'allegations' such as that DMI S.A. "provi[ded] financial services to bin Laden specifically for the purpose of recruiting and training terrorists," see Pl. Mem. at 11. For all the above reasons, plaintiffs' last-ditch attempt to stitch together a hypothesis of specific personal jurisdiction over DMI S.A. fails. Thus, the claims against DMI S.A. should be dismissed in their entirety.[6]

---

[6] Moreover, because plaintiffs have entirely failed to make out a *prima facie* case for personal jurisdiction over DMI S.A., jurisdictional discovery would be improper, and plaintiffs' request therefor must be denied. See Central States, Southeast and Southwest Areas Pension Funds v. Reimer Express World Corp., 230 F.3d 934, 946-7 (7th Cir. 2000) ("Foreign nationals usually should not be subjected to extensive discovery . . . to determine whether personal jurisdiction over them exists . . ."), citing Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction."); Norvel Ltd. v. Ulstein Propeller, 161 F.Supp.2d 190, 208 (S.D.N.Y. 2001) (absent *prima facie* case for jurisdiction, jurisdictional discovery, "which likely would result in a fishing expedition," is inappropriate). None of the authority cited in the Opposition, see Pl. Mem. at 11 n. 10, contradicts this well-established rule.

## II

## **PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.**

Plaintiffs in Part II of their Opposition effectively abandon most of their claims against DMI S.A., and address only their claims under the Anti-Terrorism, Alien Tort Claims, and Racketeer Influenced Corrupt Organizations Acts (the "ATA," "ATCA," and "RICO," respectively), with only a cursory effort to defend their wholly insufficient state law claims.[7] Part II of the Opposition begins with a recitation of the standards applicable to their claims, including a helpful reminder of plaintiffs' counsel's obligations under Rule 11.[8] At no point, however, do plaintiffs mount any substantive defense of the adequacy of their claims against DMI S.A. under Fed. R. Civ. P. 8, choosing instead to again fabricate the contents of their allegations against DMI S.A.

As to their claim under the ATA, for instance, plaintiffs again assert that they have alleged that DMI S.A. "knowingly provided material support to al Qaeda and/or aided and abetted al Qaeda in its terrorist agenda," and that DMI S.A., "operating through a variety of direct and indirect subsidiaries . . . provided financial infrastructure and banking services to Osama bin Laden." See Pl. Mem. at 13, 15. As the previous discussion has made clear, plaintiffs have alleged no such thing, see TAC ¶¶ 79, 97-101, 108-09, 364, 592-96, and could not so allege without violating their obligations under Rule 11. The same is true of plaintiffs' arguments regarding their claims under the ATCA and RICO. Contrary to plaintiffs' counsel's assertions, see Pl. Mem. at 18-19, plaintiffs have not alleged facts sufficient to show any wrongful conduct by DMI S.A. at all, let alone conduct in violation of the law of nations, as the

---

[7] Plaintiffs also semi-formally abandon their claim against DMI S.A. under the Torture Victims Protection Act. See Pl. Mem. at 22 n. 23. The Court should formally dismiss this claim, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Plaintiffs also ask the Court to allow their 'claim' for punitive damages to continue, even though no such cause of action exists, under New York law or any other applicable law. See id.; Def. Mem. at 24. The fact that no such claim exists is not a "technicality," however, and the Court therefore should dismiss this claim with prejudice as well.

[8] DMI S.A. has not "miss[ed] entirely the relationship between [Rule 11] and the reduced pleading standard of Rule 8," see Pl. Mem. at 13 n. 11, and does not regard the fact that it "turn[s] up again and again in plaintiffs' allegations" as an "innocent coincidence," see id. at 5. To the contrary, DMI S.A. asserts that plaintiffs have completely failed to meet the pleading requirements of Rule 8, both because the charges against it are false and because plaintiffs' counsel have failed to conduct the reasonable investigation of their claims that Rule 11 requires, and have failed to present their case to the Court in good faith. Nothing in the law requires the Court to "assume" otherwise, see id. at 13 n. 11, and indeed the character of the Opposition strongly indicates that the Court should not so assume.

ATCA requires. Cf., e.g., Kadic v. Karadzic, 70 F.3d 232, 238-44 (2d Cir. 1995) (listing genocide, war crimes, slave trading, and piracy as violative of law of nations) with TAC ¶¶ 79, 97-101, 108-09, 364, 592-96 (alleging no more than that DMI S.A. is the parent of entities that opened bank accounts for alleged al Qaeda associates).[9] Nor have plaintiffs even attempted to argue that they have properly pleaded *any* of the numerous requirements of a RICO claim against DMI S.A., other than injury to business or property. See Pl. Mem. at 19-20; Def. Mem. at 23-24 n. 17; Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d. Cir. 1983); DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations).[10]

Finally, plaintiffs mount a desultory and partial defense of their numerous state-law claims against DMI S.A., asserting that "[a]s demonstrated above . . . plaintiffs adequately allege the causal connection between [this] defendant's acts and the September 11 attacks." See Pl. Mem. at 20. Of course, plaintiffs did not "demonstrate" any such thing in their Opposition. To the contrary, they allege no "acts" by DMI S.A. at all, and plaintiffs' supposed allegations of causation consist entirely of the conclusory, generalized, and non-cognizable allegations contained in the recitations of each of their fourteen causes of action, see Def. Mem. at 13-14, which are wholly insufficient to plead proximate causation of the attacks of September 11 as to DMI S.A. See In re American Express, 39 F.3d at 400 n.3; DeJesus, 87 F.3d at 70. And in hopes of maintaining their state-law claims for conspiracy liability and aiding-and-abetting liability, plaintiffs' counsel again miscast the contents of their Complaint, asserting without elaboration that plaintiffs have properly alleged "that DMI aided and abetted and conspired with al Qaeda in connection with its terrorist attacks on the United States." See Pl. Mem. at

---

[9] In addition, plaintiffs do not attempt to defend the adequacy of their supposed pleading of aiding-and-abetting liability under the ATCA, which has consistently been held to require that a defendant *substantially* and *personally* participated in the tort in violation of the law of nations. See Def. Mem. at 17 n. 10. Plaintiffs flatly assert that they have succeeded in pleading aiding-and-abetting liability under the ATCA, see Pl. Mem. at 19, but do not in any way attempt to establish that they have alleged substantial and personal participation by DMI S.A. in al Qaeda's crimes, as the law requires them to do. See id. The Court may therefore deem this failure as admitted.

[10] Plaintiffs do attempt to defend their standing to bring a claim under RICO, asserting against the weight of authority and the law of the case that they do indeed allege injuries to their businesses and/or property. See Pl. Mem. at 19; Burnett I, 274 F.Supp.2d at 100-02 (holding that Burnett plaintiffs have no standing to bring RICO claims). Even if plaintiffs were correct on this point, however, they do not even attempt to argue that they have adequately alleged any of the numerous remaining elements of a civil RICO claim. See Def. Mem. at 24 n. 17. The Court may therefore deem this failure as admitted as well.

20. As is made clear above, however, no allegations sufficient to show conspiracy or aiding and abetting have been made by plaintiffs; again, plaintiffs offer only conclusory allegations whose sufficiency they do not even seek to defend. See id.; Def. Mem. at 12-13. Moreover, neither a conspiracy claim nor an aiding-and-abetting claim may proceed unless plaintiffs have properly pled some underlying tort by DMI S.A., and as has been made clear, they have done no such thing.

Apart from causation, plaintiffs do not even attempt to explain the many other deficiencies of their thirteen claims against DMI S.A., which are set forth in detail in DMI S.A.'s initial Memorandum. See Def. Mem. at 11-25. The Court may therefore deem those numerous deficiencies as admitted, and plaintiffs' claims thus are due to be dismissed in their entirety. Moreover, for all the reasons set forth in DMI S.A.'s initial Memorandum, see Def. Mem. at 24-25, and especially in light of the numerous misrepresentations upon which plaintiffs have been forced to rely, dismissal of the claims against DMI S.A. should be with prejudice.

## CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
June 18, 2004

Respectfully submitted,

**WHITE & CASE LLP**

By: _____
James J. McGuire (JJM-5390)

1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

*Attorneys for Defendant
DMI Administrative Services, S.A.*

Timothy J. McCarthy
Mark A. Berube
   Of Counsel