**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) <br> ECF Case |

This document relates to: *Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT SALMAN AL-OADAH

June 30, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ............................................................................................................................ 3

ARGUMENT .................................................................................................................................... 4

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER AL-OADAH BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES ........................... 4

        A.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present .......................................... 5

        B.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Al-Oadah Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities ................................................................. 5

            1.    *Al-Oadah Provided Support to Al Qaeda* ........................................ 6

            2.    *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States* ............................................ 6

    II.    AL-OADAH WAS PROPERLY SERVED ....................................................................... 7

CONCLUSION ................................................................................................................................ 12

## TABLE OF AUTHORITIES

*Page*

### Cases

*Baade v. Price*, 175 F.R.D. 403 (D.D.C. 1997) ........................................................................ 11, 12

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986). ................................................. 4

*Grannis v. Ordean*, 234 U.S. 385 (1914), ..................................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................ 9, 10, 11

*National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253 (2d Cir. 1991) ..................................... 11

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ............................................................... 5

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) ................................................................... 8, 11, 12

### Statutes & Rules

18 U.S.C. § 2333 ............................................................................................................................. 4

28 U.S.C. § 1653 ............................................................................................................................. 5

Fed.R.Civ.P. 12(b)(2) ...................................................................................................................... 4

Fed.R.Civ.P. 4 ..................................................................................................................... 4, 11, 12

## INTRODUCTION

Defendant Salman Al-Oadah seeks to dismiss the Complaint for want of personal jurisdiction and for defective service of process.[1] Essentially, Al-Oadah argues that he cannot be made to answer for the murderous attacks on the United States perpetrated on September 11, 2001, because he claims to have had insufficient contact with the United States to satisfy the requirements of due process. This argument is wrong. Al-Oadah – one of Osama bin Laden's mentors -- aimed his conduct at the United States when he provided support to bin Laden and al Qaeda, with knowledge that al Qaeda was engaged in terrorist activities targeted primarily and specifically at the United States and its citizens and residents. The deliberate targeting of the United States satisfies the minimum contacts test, even if the defendant never entered the United States. The principle is a simple one: no one is entitled deliberately to plot, launch, or provide financing for attacks on the United States and evade U.S. justice merely because the attacks could be planned, supported or financed from afar.

---

[1] Al-Oadah's motion is one of a group of 11 nearly identical motions filed simultaneously by the law firm of Bernabei & Katz on behalf of 11 of the defendants (Shahir Abdulraoof Batterjee, Abdullah Omar Naseef, Abdullah Muhsen Al Turki, Saleh Al-Hussayen, Hamad Al-Husaini, Hamad Al-Husaini, Safar Al-Hawali, Abdul Rahman Al Swailem, Mohammed Ali Sayed Mushayt, Abdullah Bin Saleh Al-Obaid, and Saudi Red Crescent) in this case. The motion brought on behalf of Al-Oadah is styled as one brought pursuant to F.R.C.P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (improper service of process), but contains no argument whatsoever concerning subject matter jurisdiction. Accordingly, plaintiffs treat this motion as challenging personal jurisdiction and service of process only. (Some of the 11 motions do challenge subject matter jurisdiction, under the Foreign Sovereign Immunities Act, and it is reasonable to assume that the reference to Rule 12(b)(1) in Al-Oadah's motion papers was intended to apply to those motions and overlooked here.)

Because these motions make virtually identical (in many instance, *verbatim*) arguments, plaintiffs proposed to defendants' counsel that plaintiffs submit one consolidated response (of somewhat longer length than a single brief, but considerably shorter than the 275 pages allotted by the local rules to these 11 briefs) and that defendants submit a single, consolidated reply (again, of an adjusted length). Defendants refused and accordingly, plaintiffs now file a separate response to each motion. Plaintiffs have attempted to avoid duplication and hereby incorporate and cross-reference each of their responses into each of the others.

Al-Oadah's challenge to service of process fares no better. The method of service used here – service by publication – was approved by the district court in Washington, D.C. for defendants who, like Al-Oadah, reside in Saudi Arabia; that approval plainly applied to all similarly-situated defendants. Moreover, the Court's approved method of service worked. Al-Oadah received notice of this action, retained counsel and has appeared to defend himself. His argument that the notice approved by the Court was not reasonably calculated to apprise him of the pendency of this action when in fact it did precisely that rings hollow and should be rejected. The motion to dismiss should be denied in its entirety.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER AL-OADAH BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES

Al-Oadah contends that he is not subject to jurisdiction in this Court because he lacks minimum contacts with the United States. Defendant is wrong: he is subject to jurisdiction because, in supporting Osama bin Laden and al Qaeda in their terrorist war against America, Al-Oadah purposefully directed his conduct at the United States. No more is required to satisfy the requirements of due process.[2]

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made (like this one) before discovery, plaintiffs "need make only a prima facie showing by [their] pleadings and affidavits that jurisdiction exists." *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Indeed, plaintiffs are not required to know or to plead all possible

---

[2] Al-Oadah also claims that the District of Columbia long-arm statute does not authorize jurisdiction here. But plaintiffs do not rely on the D.C. long-arm statute. Rather, they rely on Fed.R.Civ.P. 4(k)(2) which authorizes jurisdiction over foreign defendants in the United States for federal claims (including plaintiffs' claims under the Anti-Terrorism Act, 18 U.S.C. § 2333) where jurisdiction is not otherwise available, subject only to the due process limits of the Constitution. In the context of Rule 4(k)(2), the relevant minimum contacts are with the United States as a whole.

jurisdictional grounds from the outset of the case. To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653. That is particularly true where the factual predicates are complex and the parties numerous, as herein. Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

      **A.**    **A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present**

Al-Oadah is subject to jurisdiction in this Court because he purposefully directed his conduct at the United States. For a discussion of the legal standard applicable here, plaintiffs respectfully refer the Court, and incorporate by reference, their memorandum of law in opposition to the motion to dismiss filed by Hamad Al-Husaini, filed contemporaneously with this memorandum.

      **B.**    **The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Al-Oadah Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities**

The Third Amended Complaint and the evidence submitted sufficiently make out a *prima facie* case pleaded that, in supporting al Qaeda, Al-Oadah purposefully directed his conduct at the United States so as to subject him to jurisdiction in the Courts of the United States.[3]

---

[3] Al-Oadah was named as a defendant in May, 2003, after the filing of the Third Amended Complaint. He was added through the procedure set forth in the D.C. court's Case Management Order #1, which called for the filing of a list of names of additional defendants. Al-Oadah never requested a more definite statement containing specific allegations against him. Accordingly, with respect to Al-Oadah's specific role, plaintiffs rely on the evidence submitted in connection

5

### 1.     *Al-Oadah Provided Support to Al Qaeda*

Salman al-Oadah is one of Saudi Arabia's most radical sheikhs.  Along with Safar Al-Hawali, Al-Oadah played a central role in providing a visionary framework and "spiritual" justification for Osama bin Laden's al Qaeda Islamist terrorist network in the early 1990s.  Al-Hawali and Al-Oadah advocated for suicide bombings and destroying the West and non-Muslims, religiously justifying al-Qaeda's terrorist attacks.  Al-Oadah provided motivational materials that could be used in recruiting terrorists.  Indeed, in a 1997 interview with CNN, bin Laden mentioned Al-Oadah as an inspiration to him.  *See* Affirmation of Andrea Bierstein, submitted in opposition to the motion to dismiss filed by Hamad Al-Husaini, Exhibit 11.  (The Bierstein Affirmation and all of the exhibits annexed to it are hereby incorporated by reference.)

In providing support and justification for al Qaeda, Al-Oadah had to have been well aware that the target of al Qaeda's terrorist operations would be the United States.

### 2.     *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States*

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaeda terrorist network had launched an international campaign of terror directed at the United States.  For a full discussion of the evidence demonstrating that supporters of al Qaeda were purposefully directing their conduct at the United States because the United States and its nationals were the primary avowed targets of al Qaeda, plaintiffs respectfully refer this Court to their memorandum of law submitted in opposition to the motion to dismiss filed by

---

with this memorandum.  With respect to such matters as the manner in which al Qaeda used the material support it received, al Qaeda's targeting of the United States, bin Laden's public pronouncements about his intentions to attack the United States, and the September 11 attacks themselves, plaintiffs rely on the allegations in the Third Amended Complaint, allegations in other, supplemental pleadings, and on evidence submitted in connection with plaintiffs' opposition to the motion to dismiss filed by defendant Hamad Al-Hussaini, which is hereby incorporated by reference.

Hamad Al-Husaini, and to the Affirmation of Andrea Bierstein accompanying it, as well as to the exhibits annexed to the affirmation, all of which are hereby incorporated.

## II.  AL-OADAH WAS PROPERLY SERVED

Al-Oadah also argues that he has not been properly served. (Memorandum at 10-13.) As part of Al-Oadah's argument, he cites plaintiffs' March 24, 2003 motion for leave to serve by publication in which the plaintiffs requested leave to serve by publication Defendants located in the Saudi Arabia, Sudan and United Arab Emirates. *Burnett* D.D.C. Docket No. 95, 3. Plaintiffs in that motion asked for an extension of time to serve all originally named defendants and any defendants added subsequently that are either at large or in the region of the Gulf States, and specifically in Saudi Arabia, Sudan and United Arab Emirates. Additionally, plaintiffs asked for permission to serve by publication defendants that were listed in the Exhibit attached to the motion. On March 25, 2003, the Court granted the March 24, 2003 request to serve certain defendants by publication. Al-Oadah was added as a Defendant on May 2, 2003 (see Burnett D.D.C. Docket No. 139), and was served by publication in *Al-Quds Al-Arabi* on June 3, 11, 18 and 24, and July 12 and 14, 2003, and in the *International Herald Tribune* on May 23, 30, June 6, 13, 20, and 27, 2003.

Al-Oadah argues that because his name does not appear on Exhibit A to the March 24, 2003 motion, plaintiffs did not obtain court permission to serve him by publication. Al-Oadah's argument ignores reality and misconstrues the instructions from the Court. Plaintiffs requested leave to serve by publication any defendants in the Gulf States region, which included those specifically listed defendants located in Saudi Arabia, Sudan and United Arab Emirates *and* defendants subsequently added from that geographical area. The motion set out the necessity of doing so based on the Affidavit of Nelson Tucker, Plaintiffs' process server. The Court, by

7

granting the Plaintiffs' motion on March 25, 2003, indicated that it was appropriate for the plaintiffs to attempt to serve any defendants, including those subsequently added, in Saudi Arabia, Sudan and United Arab Emirates, by publication. Given the circumstances set out in the Tucker Affidavit, it was the only reasonable course of action. On May 2, 2003, Plaintiffs properly added Al-Oadah, who lives in Saudi Arabia, as a defendant by the procedure prescribed by the Court. Plaintiffs then served Al-Oadah by publication, in compliance with the Court's Order of March 25, 2003.

Al-Oadah also argues that the notice published was not reasonably calculated to advise him of this lawsuit, because the notices appeared in newspapers he claims he does not, and cannot, read. As an initial matter, it is hard to argue credibly that one has not received notice of a lawsuit when one has retained counsel, appeared and filed a motion to dismiss. Nevertheless, Al-Oadah argues that the notice in the *International Herald Tribune*, which is published in English, does not provide notice because it is in a language he cannot read and because he claims it has a small circulation in Saudi Arabia. Al-Oadah also posits that *Al-Quds Al-Arabi*, which is published in Arabic, a language that he can read, is banned in Saudi Arabia and thus, provides no notice of the instant lawsuit.

Al-Oadah's argument ignores the purpose and requirements of due process. The Second Circuit explained in *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

Furthermore, as the U.S. Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, *to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections*.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added).

The question before the Court is, therefore, whether publication in the *International Herald Tribune* and *Al-Quds Al-Arabi* was "reasonably calculated" to notify Al-Oadah of the suit against him. It was. By its March 25, 2003 Order, the Court agreed that publication in these periodicals was appropriate and was reasonably calculated to apprise defendants in Saudi Arabia of the case against them. *Al-Quds Al-Arabi* has published several *fatwas* by Osama bin Laden and is therefore reasonably calculated to reach his supporters, regardless of where they live. The possibility that *Al-Quds Al-Arabi* may be banned in Saudi Arabia does not mean that the publication does not make its way to Osama bin Laden's supporters, much like banned periodicals, of various sorts, made their way to the former Soviet Union. Indeed, the TAC has been available on numerous websites in numerous languages, including Arabic, for almost two years. The coverage of this case in the Arab media has been widespread. Notice by publication is designed to impart information about a lawsuit. There is nothing that requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice.

Moreover, that the D.C. court was correct in determining that notice by publication was reasonably calculated to apprise defendants like Al-Oadah of the claims against them is confirmed by the large number of such defendants, including Al-Oadah himself, who in fact received notice and have appeared. Al-Oadah's name was included on the publication notices in both newspapers. *See* Exhibit A and B to Plaintiffs' Notice of Service by Publication, *Burnett* D.D.C. Docket No. 244, filed October 8, 2003. (The papers filed by the *Burnett* plaintiffs in D.C. in connection with their motion to serve by publication are annexed as Exhibit 4 to the Affirmation of Andrea Bierstein submitted in opposition to the motion to dismiss filed by Shahir

9

Batterjee (the "Bierstein Batterjee Aff."), to which the Court is respectfully referred.) If there is some argument as to the spelling of his name, the publication still provided to defendant notice of the nature of claims against him.

Al-Oadah next claims that service is void here because Plaintiffs "made no attempt, at the time they sought leave to serve some defendants by publication, to show that Sheikh Al-Oadah's addresses were unavailable . . . ." (Al-Oadah's Memorandum at 12.) This argument ignores the reasons presented to the Court in support of serving various defendants by publication in this action. In support of their request, plaintiffs submitted the Affidavit of Nelson Tucker, president of the international service of process firm retained by plaintiffs to serve all defendants. Mr. Tucker stated therein that he assigned various services to a private process server in Riyadh, Saudi Arabia, who was subsequently murdered while carrying out service of process in Harad, Saudi Arabia. Mr. Tucker further stated that "[i]t will be extremely difficult to complete the services in the three (3) referenced countries [i.e., Saudi Arabia, Sudan and the United Arab Emirates] since there are no other known private process servers who will accept assignments from entities in the United States of America, and due to the political situation in the region." *See* Bierstein Batterjee Aff., Ex. 4.

Al-Oadah also argues, albeit summarily, that service by publication does not comport with due process if the defendant lives outside "the newspaper's normal circulation" and would have this Court believe that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), so holds. The Court in *Mullane* stated, however – in the context of *constructive* notice – that the chance of actual notice is reduced when a defendant lives outside the newspaper's normal circulation and when the notice "does not even name those whose attention it is supposed to attract." *Id.* at 315. Thus, the Court concluded, "[i]n weighing its sufficiency *on the basis of*

10

*equivalence with actual notice* we are unable to regard this as more than a feint." *Id.* (emphasis added). Here, Al-Oadah's reliance on *Mullane* is misplaced, where there is no dispute that he has actual notice of this action.

Finally, Al-Oadah claims that actual notice is no substitute for proper service of process under Fed. R. Civ. P. 4. Al-Oadah misunderstands the cases he cites and does not take into account governing precedent that addresses service by publication. As stated by the Second Circuit in *Tome*, in which defendants were served by publication: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*." 833 F.2d at 1093 (emphasis in original). At a minimum, in this instance there is constructive notice, because Al-Oadah has appeared to defend this action. As the United States Supreme Court stated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard." The record in this matter establishes that Al-Oadah did receive notice of the suit, understood that he should hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss. This manifests the adequacy of the notice by publication.

The cases cited by Al-Oadah do not instruct otherwise, principally because (1) neither case involves service by publication and (2) each case involves a specific requirement of Rule 4 with which the plaintiffs did not comply. In *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991), the Second Circuit affirmed the district court's conclusion that service was proper, finding that the defendant was served at a "dwelling house or usual place of abode" under (former) Rule 4(d)(1). In the absence of such a finding, there would have been no rule supporting such service. Furthermore, in *Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997), the summons and complaint were served upon a receptionist employed by one of the defendants.

11

The court concluded that such service was insufficient as to a different defendant because Fed. R. Civ. P. 4(h) specifically dictates that service on domestic corporations is effected only upon an authorized agent of the corporation. *Id.* at 404-05. The court noted that the law requires strict compliance with Rule 4(h).

Here, Al-Oadah does not contend that Rule 4 contains a specific requirement with which plaintiffs did not comply, but rather, contends that service was inadequate to apprise him of this action. As *Tome* instructs, actual notice is an appropriate consideration in analyzing service by publication made pursuant to a court order under Rule 4(f)(3) (allowing service on a foreign defendant "as directed by order of the court").

In sum, plaintiffs obtained permission from the Court to serve by publication all originally named defendants, as well as any defendants subsequently added, that are either at large or in the region of the Gulf States, and specifically in Saudi Arabia, Sudan and the United Arab Emirates. Al-Oadah was served in this manner and in fact received notice of the pendency of the action. The action should not be dismissed for improper service of process.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(5) should be denied in its entirety.

Dated: New York, NY                              Respectfully submitted,
       June 30, 2004

/s/_____
Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
William H. Narwold, Esq.
Ingrid L. Moll, Esq.
Justin B. Kaplan
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone: (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone: (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone: (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel: (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
 & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs