**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to: *Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT SHAHIR A. BATTERJEE**

June 30, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER BATTERJEE BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES ........................... 4

        A.    This Court Has Jurisdiction Over Shahir A. Batterjee Because Plaintiffs' Claims Against Him Arise in Part from His Role as an Official of Certain American Organizations ................................................. 5

        B.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present .......................................... 7

        C.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Batterjee Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities ....................................................................................... 7

            1.    *Batterjee Provided Material Support to Al Qaeda* .......................... 7

            2.    *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States* ........................................... 8

    II.    BATTERJEE WAS PROPERLY SERVED ........................................................................ 8

CONCLUSION .............................................................................................................................. 13

i

# TABLE OF AUTHORITIES

*Page*

## Cases

*Baade v. Price*, 175 F.R.D. 403 (D.D.C. 1997) .................................................................... 12

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986). .................................................. 5

*Grannis v. Ordean*, 234 U.S. 385 (1914)....................................................................................... 11

*Hanson v. Denckla*, 357 U.S. 235 (1958) ........................................................................................ 6

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................... 9, 11

*National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253 (2d Cir. 1991) ..................................... 12

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)................................................................ 5

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987).................................................................... 9, 11, 12

## Statutes & Rules

18 U.S.C. § 2333................................................................................................................... 4

28 U.S.C. § 1653 ................................................................................................................... 5

Fed.R.Civ.P. 12(b)(2)............................................................................................................ 4

Fed.R.Civ.P. 4 .......................................................................................................... 4, 11, 12

**INTRODUCTION**

Defendant Shahir Batterjee seeks to dismiss the Complaint for want of personal jurisdiction and for defective service of process.[1] Essentially, Batterjee argues that he cannot be made to answer for the murderous attacks on the United States perpetrated on September 11, 2001, because he claims to have had insufficient contact with the United States to satisfy the requirements of due process. This argument is wrong. Batterjee – an officer and a director of Benevolence International Foundation, an organization devoted to assisting bin Laden -- is subject to jurisdiction here because the claims arise out of his conduct as an officer and director of a U.S. corporation. Moreover, Batterjee aimed his conduct at the United States when he provided material support to Osama bin Laden and al Qaeda, with knowledge that al Qaeda was engaged in terrorist activities targeted primarily and specifically at the United States and its citizens and residents. The deliberate targeting of the United States satisfies the minimum contacts test, even if the defendant never entered the United States. The principle is a simple one:

---

[1] Batterjee's motion is one of a group of 11 nearly identical motions filed simultaneously by the law firm of Bernabei & Katz on behalf of 11 of the defendants (Abdullah Omar Naseef, Abdullah Muhsen Al Turki, Saleh Al-Hussayen, Sheik Salman Al-Oadah, Hamad Al-Husaini, Safar Al-Hawali, Abdul Rahman Al Swailem, Mohammed Ali Sayed Mushayt, Abdullah Bin Saleh Al-Obaid, and Saudi Red Crescent) in this case. The motion brought on behalf of Batterjee is styled as one brought pursuant to F.R.C.P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (improper service of process), but contains no argument whatsoever concerning subject matter jurisdiction. Accordingly, plaintiffs treat this motion as challenging personal jurisdiction and service of process only. (Some of the 11 motions do challenge subject matter jurisdiction, under the Foreign Sovereign Immunities Act, and it is reasonable to assume that the reference to Rule 12(b)(1) in Batterjee's motion papers was intended to apply to those motions and overlooked here.)

Because these motions make virtually identical (in many instance, *verbatim*) arguments, plaintiffs proposed to defendants' counsel that plaintiffs submit one consolidated response (of somewhat longer length than a single brief, but considerably shorter than the 275 pages allotted by the local rules to these 11 briefs) and that defendants submit a single, consolidated reply (again, of an adjusted length). Defendants refused and accordingly, plaintiffs now file a separate response to each motion. Plaintiffs have attempted to avoid duplication and hereby incorporate and cross-reference each of their responses into each of the others.

3

no one is entitled deliberately to plot, launch, or provide financing for attacks on the United States and evade U.S. justice merely because the attacks could be planned, supported or financed from afar.

Batterjee's challenge to service of process fares no better. The method of service used here – service by publication – was specifically approved by the district court in Washington, D.C. Moreover, it worked. Batterjee received notice of this action, retained counsel and has appeared to defend himself. His argument that the notice approved by the Court was not reasonably calculated to apprise him of the pendency of this action when in fact it did precisely that rings hollow and should be rejected. The motion to dismiss should be denied in its entirety.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER BATTERJEE BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES

Batterjee contends that he is not subject to jurisdiction in this Court because he lacks minimum contacts with the United States. Defendant is wrong: he is subject to jurisdiction because he was Vice-President and Director of Benevolence International Corporation, an Illinois charity that provided material support to al Qaeda. Moreover, in supporting Osama bin Laden and al Qaeda in their terrorist war against America, Batterjee purposefully directed his conduct at the United States. No more is required to satisfy the requirements of due process.[2]

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made (like this one) before discovery, plaintiffs "need make only a prima facie showing by

---

[2] Batterjee also claims that the District of Columbia long-arm statute does not authorize jurisdiction here. But plaintiffs do not rely on the D.C. long-arm statute. Rather, they rely on Fed.R.Civ.P. 4(k)(2) which authorizes jurisdiction over foreign defendants in the United States for federal claims (including plaintiffs' claims under the Anti-Terrorism Act, 18 U.S.C. § 2333) where jurisdiction is not otherwise available, subject only to the due process limits of the Constitution. In the context of Rule 4(k)(2), the relevant minimum contacts are with the United States as a whole.

4

[their] pleadings and affidavits that jurisdiction exists." *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Indeed, plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case. To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653. That is particularly true where the factual predicates are complex and the parties numerous, as herein. Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

    **A.    This Court Has Jurisdiction Over Shahir A. Batterjee Because Plaintiffs' Claims Against Him Arise in Part from His Role as an Official of Certain American Organizations**

Batterjee was Vice-President and Director of the Benevolence International Foundation ("BIF"), a purported international charity organization founded by his brother, Adel Batterjee. see Affirmation of Andrea Bierstein in Opposition to Motion of Shahir Battterjee ("Bierstein Batterjee Aff."), Exhibits 1, 2. He also served on the Board of Directors of the Florida branch of BIF. *See* Bierstein Batterjee Aff., Exhibit 3.

Plaintiffs' claims arise from precisely these activities of Shahir Batterjee, for as Vice-President and Director of BIF, and a Director of the Florida branch of BIF, Batterjee provided material support to al Qaeda and bin Laden. As detailed in the federal government's offer of proof in the prosecution of Enaam Arnaout, the head of BIF's Bosnian branch, BIF was a major source of funding for al Qaeda. *See* Evidentiary Proffer Supporting the Admissibility of Co-conspirator Statements in the case of *U.S. v. Arnaout* (N.D.Ill.), a copy of which is annexed as Exhibit 1 to the Affirmation of Andrea Bierstein submitted in opposition to the motion to dismiss

5

filed by Hamad Al-Husaini ("Bierstein Al-Husaini Aff.") and incorporated by reference herein. BIF was incorporated in the State of Illinois in 1992. It provided assistance to al Qaeda in the form of housing, travel documents and funding. Al Qaeda members were given jobs with the Foundation in order to transfer money to them. BIF was specifically mentioned by Osama bin Laden as one of the charities on which he relied for al Qaeda funding. *See* Bierstein Al-Husaini Aff., Ex. 1 at 23. Indeed, bin Laden told another al Qaeda member that these charities, including BIF, would receive funds that could be withdrawn in cash, that a part of the money would be used for legitimate relief purposes, while the rest would be diverted to al Qaeda; the money for al Qaeda operations would nonetheless be listed in the charities' books as expenses for building mosques or schools or feeding the poor or the needy. *Id.* at 24. BIF thus provided assistance to al Qaeda; it is this assistance that gives rise to plaintiffs' claims against Shahir Batterjee, who was an officer and director of BIF and who plaintiffs believe was one of those responsible for placing BIF at Osama bin Laden's service.

     Having undertaken to act as an officer and director of two separate branches of an American corporation, Batterjee cannot be heard to say that he lacks "minimum contacts" with the United States or that he cannot be sued here in connection with activities undertaken through those U.S. entities. BIF is entirely a creature of American statutory law; all authority for the directors to exercise control over corporate affairs is conferred by American (in particular, Illinois) law. Thus, it is clear that in serving as an officer and director of BIF, Batterjee purposefully availed himself of the privileges of conducting the activities of BIF under the protection of American law and could reasonably anticipate being haled into an American court. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

**B.     A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present**

Even if Batterjee were not subject to jurisdiction in the United States because of his positions with BIF, he would still be subject to jurisdiction here because in providing funds for al Qaeda, Batterjee purposefully directed his conduct at the United States. For a discussion of the legal standard applicable here, plaintiffs respectfully refer the Court, and incorporate by reference, their memorandum of law in opposition to the motion to dismiss filed by Hamad Al-Husaini, filed contemporaneously with this memorandum.

**C.     The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Batterjee Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities**

The Third Amended Complaint and the evidence submitted sufficiently make out a *prima facie* case pleaded that, in supporting al Qaeda, Batterjee purposefully directed his conduct at the United States so as to subject him to jurisdiction in the Courts of the United States.

*1.     Batterjee Provided Material Support to Al Qaeda*

As noted above, Shahir Batterjee was Vice-President and Director of BIF and further served as a Director of BIF's florida branch. In serving on the Board of BIF, Shahir Batterjee participated in BIF's mission to provide covert funding to al Qaeda. *See supra* Point I.A. Moreover, in providing this financial assistance to al Qaeda, Batterjee purposefullly directed his conduct at the United States because, as demonstrated below, the evidence that plaintiffs have gathered to date shows that, throughout the 1990's, al Qaeda's target was the United States. Moreover, Osama bin Laden announced this, repeatedly and publicly, so that individuals like Mr. Batterjee who provided material support in that period plainly knew that they were targeting the United States when they assisted al Qaeda with its terrorist agenda.

7

    *2.*  *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States*

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaeda terrorist network had launched an international campaign of terror directed at the United States. For a full discussion of the evidence demonstrating that supporters of al Qaeda were purposefully directing their conduct at the United States because the United States and its nationals were the primary avowed targets of al Qaeda, plaintiffs respectfully refer this Court to their memorandum of law submitted in opposition to the motion to dismiss filed by Hamad Al-Husaini, and to the Affirmation of Andrea Bierstein accompanying it, as well as to the exhibits annexed to the affirmation, all of which are hereby incorporated.

## II. BATTERJEE WAS PROPERLY SERVED

Defendant Batterjee argues that he has not been properly served. (Batterjee Memorandum at 12-14.) As part of Batterjee's argument, he cites Plaintiffs' March 24, 2003 motion for leave to serve by publication in which the plaintiffs requested leave to serve by publication defendants located in the Saudi Arabia, Sudan and United Arab Emirates. *Burnett* D.D.C. Docket No. 95, 3. (A copy of plaintiffs' papers in support of that motion are annexed to the Bierstein Batterjee Aff. as Exhibit 4.) In that motion, plaintiffs asked for an extension of time to serve all originally named defendants and, by implication, any defendants added subsequently that are either at large or in the region of the Gulf States, and specifically in Saudi Arabia, Sudan and United Arab Emirates. Additionally, plaintiffs asked for permission to serve by publication defendants that were listed in the Exhibit A attached to the motion, which included Batterjee. On March 25, 2003, the Court granted the March 24, 2003 request to serve certain defendants by publication. Batterjee was served by publication in *Al-Quds Al-Arabi* on

8

June 3, 11, 18 and 24, and July 12 and 14, 2003, and in the *International Herald Tribune* on May 23, 30, June 6, 13, 20, and 27, 2003.

Batterjee argues that the notices published were not reasonably calculated to advise him of this lawsuit, because the notices appeared in newspapers he claims he does not, and cannot, read. As an initial matter, it is hard to argue credibly that one has not received notice of a lawsuit when one has retained counsel, appeared and filed a motion to dismiss. Nevertheless, Batterjee argues that the notice in the *International Herald Tribune,* which is published in English, does not provide notice because it is in a language he cannot read and because he claims it has a small circulation in Saudi Arabia. Batterjee also posits that *Al-Quds Al-Arabi,* which is published in Arabic, a language that he can read, is banned in Saudi Arabia and thus, provides no notice of the instant lawsuit.

Batterjee's argument ignores the purpose and requirements of due process. The Second Circuit explained in *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

Furthermore, as the U.S. Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, *to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections*.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added). The question before the Court is, therefore, whether publication in the *International Herald Tribune* and *Al-Quds Al-Arabi* was "reasonably calculated" to notify Batterjee of the suit against him. It was. By its March 25, 2003 Order, the Court agreed that publication in these periodicals was appropriate and was reasonably calculated to apprise defendants in Saudi Arabia of the case

9

against them. *Al-Quds Al-Arabi* has published several *fatwas* by Osama bin Laden and is therefore reasonably calculated to reach his supporters, regardless of where they live. The possibility that *Al-Quds Al-Arabi* may be banned in Saudi Arabia does not mean that the publication does not make its way to Osama bin Laden's supporters, much like banned periodicals, of various sorts, made their way to the former Soviet Union. Indeed, the TAC has been available on numerous websites in numerous languages, including Arabic, for almost two years. The coverage of this case in the Arab media has been widespread. Notice by publication is designed to impart information about a lawsuit. There is nothing that requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice. Moreover, that the D.C. court was correct in determining that notice by publication was reasonably calculated to apprise Batterjee of the claims against him is confirmed by the large number of such defendants, including Batterjee himself, who in fact received notice and have appeared.

Batterjee next claims that service is void here because Plaintiffs "made no attempt, at the time they sought leave to serve some defendants by publication, to show that Sheikh Batterjee's addresses were unavailable . . . ." (Batterjee's Memorandum at 12.) This argument ignores the reasons presented to the Court in support of serving various defendants by publication in this action. In support of their request, Plaintiffs submitted the Affidavit of Nelson Tucker, president of the international service of process firm retained by Plaintiffs to serve all defendants. Mr. Tucker stated therein that he assigned various services to a private process server in Riyadh, Saudi Arabia, who was subsequently murdered while carrying out service of process in Harad, Saudi Arabia. Mr. Tucker further stated that "[i]t will be extremely difficult to complete the services in the three (3) referenced countries [i.e., Saudi Arabia, Sudan and the United Arab

10

Emirates] since there are no other known private process servers who will accept assignments from entities in the United States of America, and due to the political situation in the region." (Affidavit of Nelson Tucker, 10.)  Service by publication is certainly appropriate where to do so personally is impossible.

Batterjee also argues, albeit summarily, that service by publication does not comport with due process if the defendant lives outside "the newspaper's normal circulation" and would have this Court believe that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), so holds.  The Court in *Mullane* stated, however – in the context of *constructive* notice – that the chance of actual notice is reduced when a defendant lives outside the newspaper's normal circulation and when the notice "does not even name those whose attention it is supposed to attract."  *Id.* at 315.  Thus, the Court concluded, "[i]n weighing its sufficiency *on the basis of equivalence with actual notice* we are unable to regard this as more than a feint."  *Id.* (emphasis added).  Here, Batterjee's reliance on *Mullane* is misplaced, where there is no dispute that he has actual notice of this action.

Finally, Batterjee claims that actual notice is no substitute for proper service of process under Rule 4.  Batterjee misunderstands the cases he cites and does not take into account governing precedent that addresses service by publication.  As stated by the Second Circuit in *Tome*, in which defendants were served by publication:  "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive* notice."  833 F.2d at 1093 (emphasis in original).  At a minimum, in this instance there is constructive notice, because Batterjee has appeared to defend this action.  As the United States Supreme Court stated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."  The record in this

11

matter establishes that Batterjee did receive notice of the suit, understood that he should hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss. This manifests the adequacy of the notice by publication.

The cases cited by Batterjee do not instruct otherwise, principally because (1) neither case involves service by publication and (2) each case involves a specific requirement of Rule 4 with which the plaintiffs did not comply.  In *National Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991), the Second Circuit affirmed the district court's conclusion that service was proper, finding that the defendant was served at a "dwelling house or usual place of abode" under (former) Rule 4(d)(1).  In the absence of such a finding, there would have been no rule supporting such service.  Furthermore, in *Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997), the summons and complaint were served upon a receptionist employed by one of the defendants. The court concluded that such service was insufficient as to a different defendant because Fed. R. Civ. P. 4(h) specifically dictates that service on domestic corporations is effected only upon an authorized agent of the corporation.   *Id.* at 404-05.  The court noted that the law requires strict compliance with Rule 4(h).

Here, Batterjee does not contend that Rule 4 contains a specific requirement with which Plaintiffs did not comply, but rather, contends that service was inadequate to apprise him of this action.  As *Tome* instructs, actual notice is an appropriate consideration in analyzing service by publication made pursuant to a court order under Rule 4(f)(3) (allowing service on a foreign defendant "as directed by order of the court").  Here, Plaintiffs complied with Rule 4 and followed the court order allowing service by publication, proven effective by Batterjee's receiving actual notice of this action.

In sum, plaintiffs obtained permission from the Court to serve Mr. Batterjee by publication. He was served in this manner and in fact received notice of the pendency of the action. The action should not be dismissed for improper service of process.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(5) should be denied in its entirety.

Dated: New York, NY                                  Respectfully submitted,
       June 30, 2004

/s/_____
Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
William H. Narwold, Esq.
Ingrid L. Moll, Esq.
Justin B. Kaplan
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone:  (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP

Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs