**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to: *Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT ABDULLAH NASEEF**

June 30, 2004

## TABLE OF CONTENTS

*Page*

INTRODUCTION .................................................................................................................................3

ARGUMENT .......................................................................................................................................4

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER NASEEF BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES ............................4

          A.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present ..........................................5

          B.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Naseef Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities ......................................................................................5

                1.    *Naseef Provided Material Support to Al Qaeda* ..............................5

                2.    *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States*...........................................6

    II.    THE COMPLAINT SHOULD NOT BE DISMISSED FOR DEFECTIVE SERVICE .................7

CONCLUSION.....................................................................................................................................7

**INTRODUCTION**

Defendant Abdullah Omar Naseef seeks to dismiss the Complaint for want of personal jurisdiction and for defective service of process.[1] Essentially, Naseef argues that he cannot be made to answer for the murderous attacks on the United States perpetrated on September 11, 2001, because he claims to have had insufficient contact with the United States to satisfy the requirements of due process. This argument is wrong. Naseef – the founder and chair of Rabita Trust, an al Qaeda front organization -- aimed his conduct at the United States when he provided material support to Osama bin Laden and al Qaeda, with knowledge that al Qaeda was engaged in terrorist activities targeted primarily and specifically at the United States and its citizens and residents. The deliberate targeting of the United States satisfies the minimum contacts test, even if the defendant never entered the United States. The principle is a simple one: no one is entitled deliberately to plot, launch, or provide financing for attacks on the United States and evade U.S. justice merely because the attacks could be planned, supported or financed from afar.

---

[1] Naseef's motion is one of a group of 11 nearly identical motions filed simultaneously by the law firm of Bernabei & Katz on behalf of 11 of the defendants (Shahir Batterjee, Abdullah Muhsen Al Turki, Saleh Al-Hussayen, Sheik Salman Al-Oadah, Hamad Al-Husaini, Safar Al-Hawali, Abdul Rahman Al Swailem, Mohammed Ali Sayed Mushayt, Abdullah Bin Saleh Al-Obaid, and Saudi Red Crescent) in this case. The motion brought on behalf of Batterjee is styled as one brought pursuant to F.R.C.P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (improper service of process), but contains no argument whatsoever concerning subject matter jurisdiction. Accordingly, plaintiffs treat this motion as challenging personal jurisdiction and service of process only. (Some of the 11 motions do challenge subject matter jurisdiction, under the Foreign Sovereign Immunities Act, and it is reasonable to assume that the reference to Rule 12(b)(1) in Naseef's motion papers was intended to apply to those motions and overlooked here.)

Because these motions make virtually identical (in many instance, *verbatim*) arguments, plaintiffs proposed to defendants' counsel that plaintiffs submit one consolidated response (of somewhat longer length than a single brief, but considerably shorter than the 275 pages allotted by the local rules to these 11 briefs) and that defendants submit a single, consolidated reply (again, of an adjusted length). Defendants refused and accordingly, plaintiffs now file a separate response to each motion. Plaintiffs have attempted to avoid duplication and hereby incorporate and cross-reference each of their responses into each of the others.

Nor should this Court dismiss plaintiffs' claims against Naseef for improper service of process. Plaintiffs have already sought this Court's permission to serve Naseef by publication. Alternatively, plaintiffs propose to serve Naseef by service on his counsel. Either way, any defect in service can be readily cured and provides no basis to dismiss claims that should be adjudicated on their merits.

## ARGUMENT

**I.     THIS COURT HAS PERSONAL JURISDICTION OVER NASEEF BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES**

Naseef contends that he is not subject to jurisdiction in this Court because he lacks minimum contacts with the United States. Defendant is wrong: he is subject to jurisdiction because, in supporting Osama bin Laden and al Qaeda in their terrorist war against America, Naseef purposefully directed his conduct at the United States. No more is required to satisfy the requirements of due process.[2]

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made (like this one) before discovery, plaintiffs "need make only a prima facie showing by [their] pleadings and affidavits that jurisdiction exists." *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Indeed, plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case. To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653. That is particularly true where the factual predicates are complex and the parties numerous, as herein.

---

[2] Naseef also claims that the District of Columbia long-arm statute does not authorize jurisdiction here. But plaintiffs do not rely on the D.C. long-arm statute. Rather, they rely on Fed.R.Civ.P. 4(k)(2) which authorizes jurisdiction over foreign defendants in the United States for federal claims (including plaintiffs' claims under the Anti-Terrorism Act, 18 U.S.C. § 2333) where jurisdiction is not otherwise available, subject only to the due process limits of the Constitution. In the context of Rule 4(k)(2), the relevant minimum contacts are with the United States as a whole.

Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

> **A.** **A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present**

Naseef is subject to jurisdiction in this Court because he purposefully directed his conduct at the United States. For a discussion of the legal standard applicable here, plaintiffs respectfully refer the Court, and incorporate by reference, their memorandum of law in opposition to the motion to dismiss filed by Hamad Al-Husaini, filed contemporaneously with this memorandum.

> **B.** **The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Naseef Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities**

The Third Amended Complaint and the evidence submitted sufficiently make out a *prima facie* case pleaded that, in supporting al Qaeda, Naseef purposefully directed his conduct at the United States so as to subject him to jurisdiction in the Courts of the United States.

> *1.    Naseef Provided Material Support to Al Qaeda*

Naseef is the founder and chairman of co-defendant Rabita Trust. 3AC ¶ 274. He also served as Secretary-General of Muslim World League ("MWL"). *Id.* at ¶ 275. Both Rabita Trust and MWL operated as fronts for support to al Qaeda and bin Laden. The role of MWL in supporting al Qaeda is detailed in plaintiffs' opposition to the motion to dismiss filed by Abdullah Bin Abdul Mohsen Al-Turki. Plaintiffs respectfully refer the Court to those papers and

5

incorporate them herein. Similarly, the role of Rabita in supporting al Qaeda is set forth in detail in plaintiffs' opposition to the motion to dismiss filed by Rabita, to which plaintiffs refer the court and which also is incorporated herein.[3] As the head of both of these organizations during the period that they were providing support to al Qaeda, Naseef is responsible for the perversion of these "charitiable" organizations into instruments and supporters of terror.

In addition, the Complaint alleges, and the massive evidence that plaintiffs' have compiled demonstrates, that al Qaeda directed its terrorist activities against the United States *and* that bin Laden announced this, repeatedly and publicly throughout the mid- and late 1990's, so that individuals like Mr. Naseef who provided material support in that period plainly knew that they were targeting the United States when they assisted al Qaeda with its terrorist agenda.

> 2. *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States*

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaeda terrorist network had launched an international campaign of terror directed at the United States. For a full discussion of the evidence demonstrating that supporters of al Qaeda were purposefully directing their conduct at the United States because the United States and its nationals were the primary avowed targets of al Qaeda, plaintiffs respectfully refer this Court to their memorandum of law submitted in opposition to the motion to dismiss filed by Hamad Al-Husaini, and to the Affirmation of Andrea Bierstein accompanying it, as well as to the exhibits annexed to the affirmation, all of which are hereby incorporated.

---

[3] Rabita was apparently more successful as a funding source for al Qaeda than as a charity. As alleged in the Complaint, Rabita was initially granted 250 million Riyals from the Pakistani government as well as 50 million Riyals from the Muslim World League to help relocate some 250,000 displaced Pakistani refugees in Bangladesh. In its 15 years of existence, Rabita has only managed to relocate a few hundred Biharis. 3AC ¶ 269. Apparently, it had other uses for the money it was given.

6

## II.     THE COMPLAINT SHOULD NOT BE DISMISSED FOR DEFECTIVE SERVICE

Plaintiffs' claims should not be dismissed for failure to serve, because any defect in service can be cured. On June 4, 2004, plaintiffs in *Burnett, Federal Insurance*, and *Ashton* filed a joint motion seeking leave to serve the remaining unserved defendants by publication. Naseef was one of the unserved defendants identified in that motion as to whom plaintiffs now seek permission to complete service by publication. Fed.R.Civ.P. 4(m) provides that the Court may extend the time for plaintiff to accomplish service upon a showing of good cause. In their pending motion, the *Burnett*, *Federal Insurance*, and *Ashton* plaintiffs have demonstrated good cause to permit them to serve Naseef now. Accordingly, the court should exercise its discretion and permit plaintiffs to cure any defect in service. *See, e.g., Feingold v. Hankin,* 269 F.Supp.2d 268, 276-78 (S.D.N.Y. 2003). That is particularly true in this case where Naseef has appeared by counsel, who could easily accept service on his behalf. Accordingly, plaintiffs respectfully request, as an alternative to the service by publication requested in their June 4 motion, that this Court permit them to serve Naseef by serving his counsel.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(5) should be denied in its entirety.

Dated: New York, NY		Respectfully submitted,
      June 30, 2004

/s/
Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
William H. Narwold, Esq.
Ingrid L. Moll, Esq.
Justin B. Kaplan
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone: (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone: (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone: (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel: (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs