UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:  *Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT ABDULLAH BIN SALEH AL-OBAID

June 30, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER AL-OBAID BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES .......................... 4

        A.    This Court Has Jurisdiction Over Al-Obaid Because Plaintiffs' Claims Against Him Arise in Part from His Role as an Official of Certain American Organizations ................................................................ 5

        B.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present ......................................... 6

        C.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Al-Obaid Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities ................................................. 7

            1.    *Al-Obaid Provided Material Support to Al Qaeda* ......................... 7

            2.    *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States* .......................................... 8

    II.    AL-OBAID WAS PROPERLY SERVED ...................................................... 9

    III.    THE FSIA DOES NOT PRECLUDE PLAINTIFF' SUIT AGAINST AL-OBAID ............... 10

CONCLUSION ..................................................................................................................... 12

i

# TABLE OF AUTHORITIES

*Page*

## Cases

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ................................ 5

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C.Cir.1996). ................................ 10

*Halberstam v. Welch*, 705 F.2d 472 (D.C.Cir. 1983) ................................ 11

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................ 6

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) ................................ 5

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) ................................ 10

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ................................ 5

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ................................ 11

*Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2003) ................................ 11

## Statutes & Rules

18 U.S.C. § 2333 ................................ 4

28 U.S.C. § 1605(a)(5) ................................ 11

28 U.S.C. § 1653 ................................ 5

Fed.R.Civ.P. 12(b)(2) ................................ 4

Fed.R.Civ.P. 4 ................................ 4

## INTRODUCTION

Defendant Abdullah bin Saleh Al-Obaid seeks to dismiss the Complaint for want of personal jurisdiction and for defective service of process.[1]  Essentially, Al-Obaid argues that he cannot be made to answer for the murderous attacks on the United States perpetrated on September 11, 2001, because he claims to have had insufficient contact with the United States to satisfy the requirements of due process.  This argument is wrong.  Al-Obaid – who headed several of the most prominent charity fronts for al Qaeda, including three U.S. corporations – is subject to jurisdiction here because the claims arise out of his conduct as an officer of three U.S. corporations.  Moreover, Al-Obaid aimed his conduct at the United States when he provided material support to Osama bin Laden and al Qaeda, with knowledge that al Qaeda was engaged in terrorist activities targeted primarily and specifically at the United States and its citizens and residents.  The deliberate targeting of the United States satisfies the minimum contacts test, even if the defendant never entered the United States. The principle is a simple one: no one is entitled deliberately to plot, launch, or provide financing for attacks on the United States and evade U.S. justice merely because the attacks could be planned, supported or financed from afar.

Al-Obaid's challenge to service of process fares no better.  The method of service used here – service by publication – was specifically approved by the district court in Washington,

---

[1]       Al-Obaid's motion is one of a group of 11 nearly identical motions filed simultaneously by the law firm of Bernabei & Katz on behalf of 11 of the defendants (Shahir Abdulraoof Batterjee, Abdullah Omar Naseef, Abdullah Muhsen Al Turki, Saleh Al-Hussayen, Sheik Salman Al-Oadah, Sheik Hamad Al-Husaini, Safar Al-Hawali, Abdul Rahman Al Swailem, Mohammed Ali Sayed Mushayt, Hamad Al-Hussaini, and Saudi Red Crescent) in this case. Because these motions make virtually identical (in many instance, verbatim) arguments, plaintiffs proposed to defendants' counsel that plaintiffs submit one consolidated response (of somewhat longer length than a single brief, but considerably shorter than the 275 pages allotted by the local rules to these 11 briefs) and that defendants submit a single, consolidated reply (again, of an adjusted length).  Defendants refused and accordingly, plaintiffs now file a separate response to each motion.  Plaintiffs have attempted to avoid duplication and hereby incorporate and cross-reference each of their responses into each of the others.

D.C.  Moreover, it worked.  Al-Obaid received notice of this action, retained counsel and has appeared to defend himself.  His argument that the notice approved by the Court was not reasonably calculated to apprise him of the pendency of this action when in fact it did precisely that rings hollow and should be rejected.  The motion to dismiss should be denied in its entirety.

Nor is Al-Obaid entitled to sovereign immunity.  Even if his position as Secretary-General of the Muslim World League were a governmental one – and he has not demonstrated that it was – under the "tortious act" exception to the Foreign Sovereign Immunities Act, Al-Obaid may not claim immunity from suit here.

## ARGUMENT

## I.  THIS COURT HAS PERSONAL JURISDICTION OVER AL-OBAID BECAUSE HE PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES

Al-Obaid contends that he is not subject to jurisdiction in this Court because he lacks minimum contacts with the United States.  Defendant is wrong:  he is subject to jurisdiction because, served as President of three U.S. corporations that provided material support to al Qaeda.  Moreover, in supporting Osama bin Laden and al Qaeda in their terrorist war against America, Al-Obaid purposefully directed his conduct at the United States.  No more is required to satisfy the requirements of due process.[2]

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made (like this one) before discovery, plaintiffs "need make only a prima facie showing by [their] pleadings and affidavits that jurisdiction exists." *Cutco Industries, Inc. v. Naughton*, 806

---

[2]     Al-Obaid also claims that the District of Columbia long-arm statute does not authorize jurisdiction here.  But plaintiffs do not rely on the D.C. long-arm statute.  Rather, they rely on Fed.R.Civ.P. 4(k)(2) which authorizes jurisdiction over foreign defendants in the United States for federal claims (including plaintiffs' claims under the Anti-Terrorism Act, 18 U.S.C. § 2333) where jurisdiction is not otherwise available, subject only to the due process limits of the Constitution.  In the context of Rule 4(k)(2), the relevant minimum contacts are with the United States as a whole.

F.2d 361, 365 (2d Cir. 1986). Indeed, plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case.  To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653. That is particularly true where the factual predicates are complex and the parties numerous, as herein. Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).  Here, plaintiffs have satisfied their burden to make a prima facie showing that jurisdiction exists.

### A.    This Court Has Jurisdiction Over Al-Obaid Because Plaintiffs' Claims Against Him Arise in Part from His Role as an Official of Certain American Organizations

As alleged in the Complaint, Al-Obaid is the President of the U.S. branch of the Muslim World League ("MWL"), *see* 3AC ¶ 251, a fact which he acknowledges.  He also served as President of two Virginia corporations, Sana-Bell, Inc. and Sanabel Al Kheer, Inc.  *See* 3AC ¶¶ 268, 275.  Both entities are part of the the "SAAR network" (a group of charities so named because of funding provided by Sulaiman Abdul Aziz al-Rajhi, *see* 3AC ¶ 261) and both are alleged to have engaged in fund-raising and money-laundering for al Qaeda and bin Laden.  *See* 3AC ¶¶ 262-266; *see also* Affirmation of Andrea Bierstein submitted in opposition to the motion to dismiss filed by Abdullah Bin Abdul Mohsen Al-Turki ("Bierstein Al-Turki Aff."), Ex. 3.

Plaintiffs' claims arise from precisely these activities of Al-Obaid, for plaintiffs allege that Al-Obaid provided material support to al Qaeda and bin Laden by using MWL and of Sana-Bell, Inc. and Sanabel Al Kheer, Inc. to raise funds, ostensibly for charitable purposes, but in reality to support al Qaeda and its terrorist *jihad* against the United States.  Al-Obaid claims that

he was president of the MWL office in the United States in name only and played no actual role in that organization, but that is irrelevant. Having undertaken to act as an officer of three American corporations, Al-Obaid cannot be heard to say that he lacks "minimum contacts" with the United States or that he cannot be sued here in connection with activities undertaken through those U.S. entities. Sanabell, Inc. and Sanabel Al Kheer, Inc. are entirely creatures of American statutory law; all authority for the directors to exercise control over corporate affairs is conferred by American (in particular, Virginia) law. Thus, it is clear that in serving as an officer and director of these entities, Al-Obaid purposefully availed himself of the privileges of conducting the activities of the corporations under the protection of American law and could reasonably anticipate being haled into an American court. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

> **B.      A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present**

Even if Al-Obaid were not subject to jurisdiction in the United States because of his position as president of three U.S. corporate entities, he would still be subject to jurisdiction here because in providing funds for al Qaeda, Al-Obaid purposefully directed his conduct at the United States. For a discussion of the legal standard applicable here, plaintiffs respectfully refer the Court, and incorporate by reference, their memorandum of law in opposition to the motion to dismiss filed by Hamad Al-Husaini, filed contemporaneously with this memorandum.

**C.  The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, Al-Obaid Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities**

The Third Amended Complaint and the evidence submitted sufficiently make out a *prima facie* case pleaded that, in supporting al Qaeda, Al-Obaid purposefully directed his conduct at the United States so as to subject him to jurisdiction in the Courts of the United States.

*1.  Al-Obaid Provided Material Support to Al Qaeda*

Al-Obaid has held high positions in numerous charities that operated as conduits for al Qaeda financing, including the Muslim World League ("MWL"), Rabita Trust ("Rabita"), Sanabell, Inc., and Sanabel al-Khair. Al-Obaid was Secretary-General of MWL and now heads MWL's U.S. branch. He was vice-chairman of the Board of Trustees of Rabita and president of Sanabell, Inc. and Sanabel al-Khair. 3AC ¶¶ 251-52, 273, 275. Each of these organizations has ties and has provided assistance to al Qaeda. Although one might (conceivably) be associated with one such charity-front without taking an active role in diverting funds to al Qaeda, Al-Obaid's positions with at least four such organizations cannot be a coincidence. The only plausible inference is that Al-Obaid himself was instrumental in funneling funds from the various organizations with which he was affiliated to Osama bin Laden and al Qaeda to support their *jihad* against the United States.

As described in testimony before the House Committee on Financial Services Subcommittee on Oversight and Investigations in March, 2003, "As part of [its] mission over the past two decades, MWL has. . . secretly provided critical financial and organizational assistance to Islamic militants loyal to Al-Qaida and Usama Bin Laden." Matthew Epstein with Evan F. Kohlmann, "Arabian Gulf Financial Sponsorship of Al-Qaida via U.S.-Based Banks, Corporations and Charities," March 11, 2003, at 2. Bierstein Al-Turki Aff., Ex. 3. According to

Epstein and Kohlmann, MWL is one of "three organizations [that] served a critical role in the Arab-Afghan terrorist infrastructure by laundering money originating from bank accounts belonging to Bin Laden and his sympathetic patrons in the Arabian Gulf, providing employment and travel documents to Al- Qaida personnel worldwide, and helping "to move funds to areas where Al-Qaeda was carrying out operations." *Id.* at 1. Details of MWL's role in financing bin Laden are al Qaeda are provided in the Epstein and Kohlmann report.

Rabita, which is an arm of MWL, is in reality an Al Qaeda front. 3AC ¶¶ 268, 270. Its Secretary General, Wael Jelaidan, is known to be an al Qaeda member and has repeatedly aided and abetted terrorists. 3AC at ¶ 236, 270. The U.S. Treasury Department has described Jelaidan as "the head of various non-governmental organizations providing financial and logistical support to the al-Qa'ida network." 3AC at ¶ 236. In October, 2001, Rabita was designated by President Bush as a "Specially Designated Global Terrorist Entity" ("SDGTE") and its assets were frozen by the Treasury Department. 3AC at ¶ 274. *See also* Exhibit Bierstein Al-Turki Aff., Exhibit 3 at 3.

Sanabell, Inc. and Sanabel al-Khair, both part of the "SAAR network" (a group of charities so named because of funding provided by Sulaiman Abdul Aziz al-Rajhi, *see* 3AC ¶ 261), played a substantial role in raising funds for MWL and for the International Islamic Relief Organization ("IIRO"), and then diverting those funds to terrorist causes. *See* Bierstein Al-Turki Aff., Exhibit 3 at 7-15.

   2. *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States*

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaeda terrorist network had launched an international campaign of terror directed at the United States. For a complete discussion of the evidence demonstrating that supporters of al

Qaeda were purposefully directing their conduct at the United States because the United States and its nationals were the primary avowed targets of al Qaeda, plaintiffs respectfully refer this Court to their memorandum of law submitted in opposition to the motion to dismiss filed by Hamad Al-Husaini, and to the Affirmation of Andrea Bierstein accompanying it, as well as to the exhibits annexed to the affirmation, all of which are hereby incorporated.

## II.   AL-OBAID WAS PROPERLY SERVED

Al-Obaid also contends that he was not properly served. (Al-Obaid Memorandum at 20-22.)  Al-Obaid makes the identical arguments about service by publication made by his co-defendant, Shahir A. Batterjee.  Plaintiffs have addressed each of those arguments in their opposition brief to Shahir A. Batterjee's motion to dismiss.  Rather than repeat those arguments here, plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

As demonstrated in plaintiffs' memorandum of law in opposition to Sahir Batterjee's motion to dismiss, service by publication on defendants in the Middle East, includingAl-Obaid, was proper.  On March 24, 2003, Plaintiffs filed a motion for leave to serve by publication Defendants located in Saudi Arabia, Sudan and United Arab Emirates.  *Burnett* D.D.C. Docket No. 95, 3.  Plaintiffs in that motion asked for an extension of time to serve all originally named dfendants and, by implication, any defendants added subsequently that are either at large or in the region of the Gulf States, and specifically in Saudi Arabia, Sudan and United Arab Emirates. Additionally, plaintiffs asked for permission to serve by publication defendants that were listed in the Exhibit A attached to the motion, which included Al-Obaid.  On March 25, 2003, the Court granted the March 24, 2003 request to serve certain defendants by publication.  Al-Obaid was served by publication in *Al-Quds Al-Arabi* on June 3, 11, 18 and 24, and July 12 and 14,

2003 and in the *International Herald Tribune* on May 23, 30, June 6, 13, 20, and 27, 2003.  On April 8, 2004, Al-Obaid appeared and filed this motion to dismiss.  In short, plaintiffs served Al-Obaid in accordance with the Court's March 25, 2003 order granting their March 24, 2003 request to serve certain defendants by publication and that service sufficiently apprised Al-Obaid of this action that he retained counsel and appeared.

## III.   THE FSIA DOES NOT PRECLUDE PLAINTIFF' SUIT AGAINST AL-OBAID

Al-Obaid claims that he is entitled to sovereign immunity because he has held various positions in the Saudi Arabian government.  Plaintiffs do not dispute that Al-Obaid has been an official of the Saudi government.  But the Complaint does not allege that Al-Obaid's assistance to al Qaeda took place in his official capacity.  Rather, plaintiffs allege that as President of Sanabell, Inc. and Sanabel al-Khair (as well as of the American branch of MWL), Al-Obaid raised funds for al Qaeda and diverted money ostensibly donated for charitable purposes for the use of Osama bin Laden's campaign of terrorism.  Al-Obaid has no immunity for these private actions.

The law is quite clear that even government officials have no immunity for acts undertaken in a personal or private capacity.  *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997) ("Individuals acting in their official capacities are considered agencies or instrumentalities of a foreign state; these same individuals, however, are not entitled to immunity under the FSIA for acts that are not committed in an official capacity."); *accord El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.Cir.1996).  To the extent that the Complaint alleges that Al-Obaid used Sanabell, Inc. and Sanabel al-Khair, two Virginia corporations, as conduits to funnel money to al Qaeda, the FSIA does not shield him from liability for those private acts.

But even if Al-Obaid's acts were official, he would not be entitled to immunity because this case falls within the "tortious act" exceptions to the FSIA.  Plaintiffs note that although they have "the burden of going forward with evidence showing that . . . immunity should not be granted . . . the ultimate burden of persuasion remains with the alleged foreign sovereign" to show that the claimed exception does not apply and that immunity should be granted. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2003).  Al-Obaid has not met that burden here, because this case falls within the "tortious act" exception.  *See* 28 U.S.C. § 1605(a)(5).

The "tortious act" exception provides that a foreign official has no immunity for any case:

> in which money damages are sought against a foreign state for personal injury or death or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .

28 U.S.C. § 1605(a)(5).  Because plaintiffs' claims arise from deaths and injuries incurred in the September 11 terrorist attacks, they are seeking money damages for personal injury and/or death in the United States based on tortious conduct.  Their claims fall squarely within this exception.

Echoing arguments made by co-defendants, Al-Obaid contends that this exception does not apply because he has not committed any tortious acts and, even if he did, those acts did not cause plaintiffs' injuries.  Al-Obaid is wrong:  under common law principles of aiding and abetting, Al-Obaid may be charged with the murderous acts of the September 11 hijackers if he knowing provided substantial assistance to them.  *See, e.g, Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983).  *See also Robinson v. Government of Malaysia*, 269 F.3d 133, 143 (2d Cir. 2001) (plaintiff required to meet the same standard to fall within the "tortious act" exception as would be required to prevail on the merits).  By raising funds for al Qaeda and its terrorist

crusade against the United States, Al-Obaid knowingly and substantially assisted the hijackers – indeed, without financing, those attacks could not have taken place.  Moreover, and significantly, Al-Obaid is not alleged merely to have donated money to charities with knowledge that the money would be diverted to al Qaeda – as president of the charities that were operating as al Qaeda fund-raisers, he is responsible for the actual diversion of funds.  That is, he provided the money to al Qaeda, rather than using it for truly charitable purposes.  That this satisfies the requirements of the "tortious act" exception is further demonstrated in Plaintiffs' Consolidated Memorandum Of Law in Opposition to Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints, to which plaintiffs respectfully refer the Court and which is incorporated by reference herein.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(5) should be denied in its entirety.

Dated: New York, NY                         Respectfully submitted,
            June 30, 2004


                                            /s/_____
                                            Ronald L. Motley, Esq.
                                            Jodi Westbrook Flowers, Esq.
                                            Donald A. Migliori, Esq.
                                            Michael Elsner, Esq. (ME-8337)
                                            William H. Narwold, Esq.
                                            Ingrid L. Moll, Esq.
                                            Justin B. Kaplan
                                            MOTLEY RICE LLC
                                            28 Bridgeside Boulevard
                                            P.O. Box 1792
                                            Mount Pleasant, South Carolina 29465
                                            Telephone:  (843) 216-9000

                                            Paul J. Hanly, Jr., Esq. (PH-5486)
                                            Jayne Conroy, Esq. (JC-8611)
                                            Andrea Bierstein, Esq. (AB-4618)

HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone: (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone: (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel: (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone: (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs