**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*          Federal Insurance Co. v. al Qaida
                                     03 CV 06978 (RCC)

**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE MOTION TO DISMISS**
**FILED BY SAAR EXECUTIVE DEFENDANTS**
**TAHA AL-ALWANI, MUHAMMAD ASHRAF,**
**M. OMAR ASHRAF, M. YAQUB MIRZA AND IQBAL UNUS**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

*Attorneys for the Federal Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ............................................................................................. 1

II.   ALLEGATIONS AGAINST THE SAAR EXECUTIVE DEFENDANTS ...................... 1

III.  ARGUMENT ................................................................................................... 4

   A.   The Federal Plaintiffs Have Jurisdiction Over The SAAR Executive Defendants
        And Have Stated Their Claims Against The SAAR Executive Defendants And The
        SAAR Executive Defendants' Motion To Dismiss Is Properly Denied ....................... 4

   B.   The Federal Plaintiffs Have Sufficiently Pled Allegations That The SAAR Executive
        Defendants Acted As Aiders and Abettors and Co-Conspirators In Violation Of The
        ATA, TVPA, RICO and The State Common Law Claims ........................................... 7

      1.   The Federal Plaintiffs Have Alleged Claims Pursuant To The Anti Terrorism And
           Effective Death Penalty Act, 18 USC § 2331 ............................................. 8

      2.   The Complaint States a Claim Against The SAAR Executive Defendants Under
           the Torture Victim Protection Act ................................................................ 11

   C.   The Federal Plaintiffs Have Sufficiently Pled a Claim Against The SAAR Executive
        Defendants Pursuant to the Racketeer Influenced and Corrupt Organization Act . 12

   D.   This Court Has Personal Jurisdiction Over The SAAR Executive Defendants Under
        New York's Long Arm Statute And Pursuant To Both The Traditional Due Process
        Analysis And The Modified Due Process Standard For Mass Torts ........................ 19

   CONCLUSION ..................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986)............................................................ 20

Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 114 (1987) ............................................. 22

Asip v. Nielsen Media Research, Inc., No. 03-CIV-5866, 2004 U.S. Dist. LEXIS 2350, at * 5
    (S.D. N.Y. Feb. 18, 2004) ..................................................................................................... 5

Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S.
    519, 536-37 (1983).............................................................................................................. 16

Boim v. Quaranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002)................................................. 4

Boim v. Quranic Literacy Inst ..................................................................................................... 8

Burger King v. Rudzewicz, 471 U.S. 462, 471-72 & n.13 (1985) ........................................ 21, 22

Calder v. Jones, 465 U.S. 783 (1984). .................................................................................. 21, 22

Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027-28 (2nd Cir. 1997) ..................................... 21

Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). ........................................................... 5

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D. N.Y. 1991). ... 19,
    20

Cleft of the Rock Fdn. v. Wilson, 992 F. Supp. 574, 581 (E.D. N.Y. 1998)............................... 19

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999)....... 20

Conley v. Gibson, 355 U.S. 41 (1957) ..................................................................................... 5, 6

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ............................................................................. 5

Dixon v. Mack, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ............................................................ 24

Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985)............... 20

Geisler  v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)............................................................... 5

Holmes v. Security Investor Prot. Corp., 503 U.S. 258, 268 (1992) .................................... 15, 16

In re DES Cases, 789 F. Supp. 552, 574-77 (E.D.N.Y. 1992)...................................................... 24

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 & n.10
    (1982)................................................................................................................................... 21

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ...................................................... 22

Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984).......................................................... 21, 22

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D.
    N.Y. 1998).......................................................................................................................... 20

Leatherman v. Tarrant County, 507 U.S. 163 (1993) .................................................................. 6

Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003).............................................. 15, 17

Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc., 10 F. Supp. 2d 334, 342
    (S.D. N.Y. 1998)............................................................................................................ 19, 20

Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 38 (2nd Cir.
    2001) ................................................................................................................................... 21

MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 977-79 (7th Cir. 1995). 14

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) ............. 22

National Asbestos Workers Med. Fund v. Philip Morris, Inc., 74 F. Supp. 2d 221, 225 (E.D. N.Y.
    1999) ................................................................................................................................... 16

Pitman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998)................................................. 20

Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 320 (S.D. N.Y. 2003) .................................................................................................................. 11

Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D.D.C. 2003) ........ 23, 24

Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995) ......................... 1

Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) ........... 23

Salinas v. United States, 522 U.S. 52 (1997)............................................................... 17, 18

Schenker v. Assicurazioni Generali S.p.A., Consolidated, No. 98-CIV-9186, 2002 U.S. Dist. LEXIS 12845, at * 5-6 (S.D. N.Y. July 15, 2002).................................................. 21

Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995).......................................................... 5

Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 119 (E.D. N.Y. Jan. 4, 2000)................... passim

Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002)................................... 6

Swierkiewicz v.Sorema, 534 U.S. 506 (2002)............................................................. 5, 6

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2nd Cir. 2001) ...................................................................................................................... 21

United States v. Louie, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985)................................... 14, 15

United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980)..................................................... 15

United States v. Turkette, 452 U.S. 576, 583 n.5 (1981).................................................... 14

Von Bulow v. Von Bulow, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986) ................................. 16

Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001).. 5

Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004) ................................................. 5

**Statutes**

18 U.S.C. § 1962(c) ........................................................................................... 14

18 U.S.C. § 1962(d) ........................................................................................... 17

Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq* ............................... 8

**Fed. R. Civ. P.** 15(a); ........................................................................................... 1

N.Y. C.P.L.R. §302(a)(2)....................................................................................... 19


**Rules**

**Fed. R. Civ. P.** 8 & 12........................................................................................ 6


Fed. R. Civ. P. 15(a) .............................................................................................1

I.     **<u>INTRODUCTION</u>**

The Federal Plaintiffs have sued Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza and Iqbal Unus (hereinafter collectively referred to as the "SAAR Executive Defendants") because they are five of the founders, officers and directors of a constellation of entities commonly known as the "SAAR Network."  The SAAR Network is comprised of no fewer than sixty-five complex and interrelated entities (the "SAAR Network Entities"), both for-profit and nonprofit.  The SAAR Network was established to funnel money and support covertly to al Qaida and to other terrorist groups in furtherance of a specific fundamentalist Islamic agenda that includes attacks on the United States.  The SAAR Executive Defendants' control of these dozens of SAAR Network entities was integral to the conspiracy to commit these atrocities, of which the September 11, 2001 attack (the "Attack") was a natural, intended and foreseeable result.   In their First Amended Complaint (the "Complaint" or the "FAC"), the Federal Plaintiffs have sufficiently stated claims arising from the conspiracy that gave rise to the Attack.  When taken as true, as they must be here, the Federal Plaintiffs' allegations provide a sufficient basis for asserting jurisdiction over the SAAR Executive Defendants, and state cognizable claims against the SAAR Executive Defendants.

Therefore, the SAAR Executive Defendants' motion to dismiss must be denied.    In the event, however, that this Court finds the Federal Plaintiffs' First Amended Complaint lacking, leave to amend should be granted.  See **Fed. R. Civ. P.** 15(a); <u>see also Rachman Bag Co. v. Liberty Mut. Ins. Co.</u>, 46 F.3d 230, 234-35 (2d Cir. 1995). <u>Whyte v. Contemporary Guidance Servs.</u>, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. NY. July 2, 2004).

II.    **<u>ALLEGATIONS AGAINST THE SAAR EXECUTIVE DEFENDANTS</u>**

The Court is undoubtedly familiar with the Attack that prompted this action.  On September 11, 2001, nineteen members of the al Qaida terrorist network hijacked four

commercial airliners and used those planes as weapons in a coordinated terrorist attack on the

World Trade Center complex in New York and the Pentagon in Arlington, Virginia.  The Attack

resulted in the tragic loss of several thousand lives, personal injuries to countless other persons,

and property damage on a catastrophic scale, including the complete destruction of the World

Trade Center complex.  FAC ¶¶ 70, 71.  The Federal Plaintiffs' Complaint alleges that the SAAR

Executive Defendants are among the al Qaida sympathizers, supporters, and financiers who

conspired toward and otherwise enabled the Attack by acting as founders, officers and directors

of the numerous SAAR Network entities that provided support for al Qaida.

 Seemingly reputable individuals, like the SAAR Executive Defendants, and ostensibly

legitimate organizations, like the SAAR Network entities, played key roles in the conspiracy that

gave rise to the Attack.  In the words of the United Nations Security Council Committee

Concerning al Qaida and the Taliban:

> From its inception, al-Qaida has relied heavily on charities and
> donations from its sympathizers to finance its activities.  Charities
> provide al-Qaida with a very useful international channel for
> soliciting, collecting, transferring and distributing the funds it
> needs for indoctrination, recruitment, training, and logistical and
> operational support.   These funds are often merged with and
> hidden among funds used for other legitimate humanitarian or
> social programs.  Al-Qaida supporters and financiers have also
> established front charity networks whose main purpose is to raise
> and deliver funds to al-Qaida.

FAC ¶ 80.

 Beginning in the 1980s, several prominent and wealthy sponsors of al Qaida's global

*jihad* began establishing in the United States what came to be known as the SAAR Network, a

group of interrelated purported charities, think tanks and for-profit businesses to generate and

surreptitiously transfer funds to al Qaida.  FAC ¶ 222.  By September 11, 2001, no fewer than

sixty-five so-called charities and business enterprises functioned under the umbrella of the

SAAR Network.  The vast majority of the SAAR Network entities are located at a single address

in Herndon, Virginia, and have common officers, directors, and management.  FAC ¶¶ 225-227.

The SAAR Executive Defendants are known to currently control, or to have previously

controlled, as executives and/or directors more than sixty five of the SAAR Network Entities.

      Each of the SAAR Executive Defendants is identified in the Federal Plaintiffs' Complaint

as having "aided and abetted, conspired with, and provided material support and resources to al

Qaida and/or affiliated Foreign Terrorist Organizations ("FTOs"), associations, organizations or

persons."  FAC ¶ 66.  Specifically, defendant M. Yaqub Mirza is, or has served, as an officer

and/or director of twenty-nine SAAR Network Entities, and maintains signatory authority over

seventeen different bank accounts associated with fifteen different SAAR Network Entities.

Mirza is also the first organizer of the U.S offices of Muslim World League, notorious for its

close association with and support of Bin Laden and other high ranking al Qaida officials.  FAC

¶¶ 113-129.  Defendant Muhammad Ashraf is an officer and/or director of twenty-seven SAAR

Network Entities.  Defendant M. Omar Ashraf is an officer and/or director of eleven SAAR

Network Entities.  Defendants Taha Al-Alwani and Iqbal Unus are officers and/or directors of

four SAAR Network Entities.

      On March 20 and 21, 2002, federal authorities raided the SAAR Network facilities (the

"SAAR Raid").  FAC ¶ 227.  The SAAR Raid was part of an ongoing federal investigation into

money laundering, tax evasion activities, and ties to terrorist individuals and organizations.  In

addition to executing a search at the Herndon headquarters, federal authorities searched the

residences of eight SAAR Network Executives, including the five moving defendants.  FAC ¶¶

223-225.

      The ongoing investigation of the SAAR Network Entities, which prompted the March

2002 searches, has revealed that SAAR Network Entities' funds have been transferred to

Youssef Nada and Ahmed Idris Nasreddin, both of whom have been designated "Global

Terrorist  Individuals" under Executive Order 13224 based on their material support and

sponsorship of al-Qaida.  FAC ¶ 228.  The funds were transferred through Bank al-Takwa and

Akida Bank Private Ltd., two Bahamas-based banks controlled by terrorists Nada and Nasreddin.

Both of those banks have been designated "Specially Designated Global Terrorist Entities" by

the U.S. government pursuant to Executive Order 13224, based on their involvement in financing

radical groups throughout the world, including al Qaida, both before and after the Attack.  FAC ¶

228.  As of late September 2001, al Qaida continued to receive financial assistance from Nada,

through entities he controlled.  FAC ¶ 266.

As more fully discussed below, the Federal Plaintiffs have alleged sufficiently that the

SAAR Executive Defendants, in their respective roles as control persons in charge of dozens of

SAAR Network Entities, aided and abetted and conspired to covertly provide material support

and resources to al Qaida.  Further still, the Complaint expressly alleges the Attack was a direct,

intended and foreseeable product of a larger conspiracy to commit acts of international terrorism

against the United States, its nationals and allies.

When read in its entirety, the Federal Plaintiffs' Complaint sufficiently alleges that the

SAAR Executive Defendants knowingly participated in a global conspiracy to commit acts of

international terrorism, which acts included the horrific Attack.  Plainly, responsibility for

international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot

the airplanes, but also with those who facilitated those events through financial or other means.

See Boim v. Quaranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002).  Accordingly, pursuant to the

liberal pleading provisions of Fed. R. Civ. P. 8(a)(2), the Complaint provides the SAAR

Executive Defendants fair notice of the Federal Plaintiffs' claims.

III.   **ARGUMENT**

   A.   **The Federal Plaintiffs Have Jurisdiction Over The SAAR Executive
        Defendants And Have Stated Their Claims Against The SAAR Executive**

**Defendants And The SAAR Executive Defendants' Motion To Dismiss Is Properly Denied**

The SAAR Executive Defendants move to dismiss the Federal Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), for lack of jurisdiction and failure to state a claim.  The SAAR Executive Defendants' motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995); Asip v. Nielsen Media Research, Inc., No. 03-CIV-5866, 2004 U.S. Dist. LEXIS 2350, at * 5 (S.D. N.Y. Feb. 18, 2004).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  Geisler  v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether Federal Plaintiffs ultimately could prevail, the court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of the Federal Plaintiffs.  Wynder, 360 F.3d at 77.  Federal Plaintiffs are not required to prove their case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided."  Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001).  The issue raised by a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Wynder, 360 F.3d at 77.

Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).  As a judge in this District recently explained, "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."  In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D. N.Y. 2003) (quoting Conley, 355 U.S. at 48).  Consequently, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly written sentence can satisfy Rule 8(a)(2)."  Id. at 323.  By way of illustration, one Court of Appeals recently held that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be sufficient to survive a Rule 12(b)(6) motion.  Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002).

In the present case, the Federal Plaintiffs have provided the SAAR Executive Defendants with the requisite notice in alleging that the SAAR Executive Defendants are part of a vast network that knowingly aided, abetted and conspired to fund the activities of terrorists, including al Qaida, and that a terrorist attack on American soil was a direct, intended and foreseeable product of a larger conspiracy to commit acts of international terrorism against the United States, its nationals and allies.

To expect or require the Federal Plaintiffs to set forth every wrongful act of the SAAR Executive Defendants is as unreasonable as it is unnecessary at this stage in the proceedings.  It simply is not required in notice pleading.  See **Fed. R. Civ. P.** 8 & 12.  Having stated a claim against the SAAR Executive Defendants, the Federal Plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence.

B.  **The Federal Plaintiffs Have Sufficiently Pled Allegations That The SAAR Executive Defendants Acted As Aiders and Abettors and Co-Conspirators In Violation Of The ATA, TVPA, RICO and The State Common Law Claims**

Each of the SAAR Executive Defendants is identified in the Federal Plaintiffs' Complaint as having "aided and abetted, conspired with, and provided material support and resources to al Qaida and/or affiliated Foreign Terrorist Organizations ("FTOs"), associations, organizations or persons."  FAC ¶ 66.  In addition, the complex web of alleged charities and for-profit entities, known as the SAAR Network, with which the SAAR Executive Defendants are directly linked either as founders, board members, or officers or directors, are identified as funders, planners, coordinators, and organizers of Al Qaida.  FAC ¶¶ 79-83.  Still further, the Complaint expressly alleges the Attack was a direct, intended and foreseeable product of a larger conspiracy, including the provision of material support and resources provided by the SAAR Executive Defendants to commit acts of international terrorism against the United States, its nationals and allies.  FAC ¶ 72.  The Federal Plaintiffs further allege that absent the material support and resources provided by its co-conspirators, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the Attack.  See FAC ¶¶ 70-74, 78.  When read in its entirety, and pursuant to the liberal pleading provisions of Fed. R. Civ. P. 8(a)(2), the Complaint sufficiently alleges that the SAAR Executive Defendants are major supporters of al Qaida and provides the SAAR Executive Defendants fair notice of the Federal Plaintiffs' claims.

The SAAR Executive Defendants' motion asserts that mere use of the terms "aiders and abetters" and "co-conspirators" within the Complaint is insufficient to give the SAAR Executive Defendants fair notice of the Federal Plaintiffs' claims and the grounds upon which they rest.  See Defs.' Br. at 3.  The SAAR Executive Defendants' motion misrepresents the allegations contained in the Complaint, and fails to read the Complaint in its totality.  The Federal Plaintiffs'

Complaint contains over one hundred eighty pages in which the Federal Plaintiffs describe a sophisticated and complex network of individuals and entities that have knowingly conspired to fund, conceive, plan and execute an international act of terrorism- the Attack.  In doing so, the SAAR Executive Defendants have violated the Anti Terrorism Act, the Alien Claims' Torts Victim Act, the Racketeering Influenced and Corrupt Organization Act and numerous common law duties.  Although the Complaint certainly does not accuse the SAAR Executive Defendants of having committed the direct act of flying two commercial jet liners into the World Trade Center Complex, the Complaint sufficiently alleges that SAAR Executive Defendants knowingly participated in the conspiracy which brought about the Attack, by providing material support to al Qaida with the reasonable anticipation that an act of international terrorism was a natural consequence of such conspiracy.

1.    **The Federal Plaintiffs Have Alleged Claims Pursuant To The Anti Terrorism And Effective Death Penalty Act, 18 USC § 2331**

A plaintiff may assert a valid claim under the Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq.* (the "ATA") under either of two alternative approaches:  (1) pursuant to general tort principles, including concerted action theories of liability; or (2) by demonstrating that the defendant violated the ATA's criminal standards, and that the defendant's violation was a substantial factor in bringing about plaintiff's injuries.  Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1015, 1020 (7th Cir. 2002).  The Federal Plaintiffs have done both.

a.    **The Federal Plaintiffs Have Properly Alleged Claims under the ATA Pursuant to General Tort Principles**

At the Court's direction to avoid duplication of arguments, the Federal Plaintiffs incorporate by reference certain sections of the *Federal Plaintiffs' Memorandum of Law in Opposition to Mar-Jac Poultry, Inc's Motion to Dismiss First Amended Complaint*, dated July 9, 2004 (hereinafter the "Mar-Jac Opp.").  Specifically, the Federal Plaintiffs incorporate by

8

reference the section entitled "The Federal Plaintiffs Have Adequately Alleged Claims under the ATA Pursuant to General Tort Principles."  See Mar-Jac. Opp. part C.1 at 8.

When read as a whole, the Federal Plaintiffs' Complaint plainly and adequately states claims against the SAAR Executive Defendants under the ATA, pursuant to aiding and abetting and conspiracy theories.  In this regard, the following allegations of the Complaint are illustrative:

> Defendants . . . have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein.

FAC ¶ 66.

> The entities operating within the SAAR Network have long acted as fully integrated components of al Qaida's logistical and financial support infrastructure, and provided material support and resources to al Qaida and affiliated FTOs.

FAC ¶ 226.

> The September 11th Attack was a direct, intended and foreseeable product of the SAAR Network's participation in al Qaida's jihadist campaign.

FAC ¶ 232.

The Federal Plaintiffs' Complaint further alleges that the SAAR Executive Defendants were integral members of the SAAR Network, and describes in detail the SAAR Network's role in al Qaida's global conspiracy to commit terrorist atrocities against the United States.  See FAC ¶¶ 222-232.  Read collectively, the forgoing allegations of the Complaint unambiguously allege that the SAAR Executive Defendants knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the September 11th Attack was a direct, intended and foreseeable product of that larger conspiracy.  These allegations satisfy the

liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

b.     **The Federal Plaintiffs Adequately Alleged Claims under the ATA based on SAAR Executive Defendants Criminal Violations**

The Federal Plaintiffs have also adequately pleaded claims against the SAAR Executive Defendants under the ATA based upon the SAAR Executive Defendants' violations of the ATA's criminal standards.  The Federal Plaintiffs incorporate by reference the section entitled "The Federal Plaintiffs Have Adequately Alleged Claims under the ATA based upon Mar-Jac's Criminal Violations."  See Mar-Jac. Opp. part C.2 at 10.

The Federal Plaintiffs have alleged that the SAAR Executive Defendants participated in acts giving rise to liability under the ATA.  Specifically, the Federal Plaintiffs have alleged that the SAAR Executive Defendants, through their control of the SAAR Network Entities, participated in a conspiracy to provide funding and support to the al Qaida terrorist network.  See supra part II.  Death and destruction in the United States was the well-publicized aim of al Qaida and its terrorist network.  As is alleged in the Complaint, the SAAR Executive Defendants, through their control of the SAAR Network entities, provided funding and support to the al Qaida terrorist network.  In light of these allegations, the Federal Plaintiffs have stated a cause of action against the SAAR Executive Defendants pursuant to the criminal provisions of the ATA.

c.     **Federal Plaintiffs Have Properly Alleged Causation**

The Federal Plaintiffs incorporate by reference the section entitled "Federal Plaintiffs Have Adequately Pleaded Causation."  See Mar-Jac Opp. part C.3 at 11.  The Complaint adequately alleges that the SAAR Executive Defendants knowingly provided "material support and resources" and that the "Attack was a direct, intended and foreseeable product of a larger conspiracy among the SAAR Executive Defendants to commit acts of international terrorism

against the United States" FAC ¶¶ 66 & 74. These allegations are sufficient to state a claim of causation at this preliminary stage.

      **2.**      **The Complaint States a Claim Against The SAAR Executive Defendants Under the Torture Victim Protection Act**

The Federal Plaintiffs have alleged facts sufficient to state a cause of action under the TVPA. The Complaint describes in detail how the Islamic charitable system has been utilized to finance and otherwise support illegal al Qaida activities. FAC ¶¶ 75-252. Moreover, the allegations specific to the SAAR Executive Defendants state clearly that that the SAAR Executive Defendants are active al Qaida sponsors. <u>Id.</u> at ¶ 66.

Given the Complaint's allegations regarding how the SAAR Executive Defendants through the SAAR Network fostered and financed terrorism, it can, at the very least, be reasonably inferred for Rule 12(b)(6) purposes that the SAAR Executive Defendants were materially involved in aiding and abetting and/or conspiring with other defendants and with al Qaida in a manner intended to enable and proximately cause acts of violence and international terrorism, including the Attack. Such conduct clearly violates the law of nations or, alternatively, otherwise constitutes actionable conduct under the TVPA. Moreover, to sufficiently allege a TVPA cause of action against the SAAR Executive Defendants, the Federal Plaintiffs need not allege that the SAAR Executive Defendants were directly involved in the Attack itself. Rather, it is sufficient for Federal Plaintiffs to allege, as they have, that the SAAR Executive Defendants conspired with or aided and abetted other of the defendants in a violation of the law of nations. Indeed, many federal courts have recognized that TVPA liability can be based on conspiratorial relationships or theories of aiding and abetting. <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 244 F. Supp. 2d 289, 320 (S.D. N.Y. 2003). Here, the Complaint alleges a violation of the law of nations, *i.e.*, the Attack. Such conduct is actionable under the TVPA. The Complaint alleges that SAAR Executive Defendants facilitated, fostered,

financed, or otherwise supported terrorists that committed the Attack.  The Complaint alleges that the SAAR Executive Defendants acted in collusion with the other defendants.  FAC ¶ 73.  The Complaint alleges an illegal relationship among the SAAR Executive Defendants and al Qaida. FAC ¶ 72-74.  The Complaint also alleges the Attack could not have been carried out in the absence of financing and logistical support to al Qaida through that relationship.  FAC ¶ 74.

Unquestionably, such allegations satisfactorily allege that the SAAR Executive Defendants conspired and aided and abetted with others to facilitate the terrorist activities of al Qaida, resulting in the Attack.  Pursuant to Rules 8 and 12, the Federal Plaintiffs have sufficiently alleged their claim --  that the SAAR Executive Defendants sponsored international terrorism.  The Complaint alleges a vast network of overlapping entities, charities, corporations, banks, state sponsors and individuals who financed and promoted terrorism, and also concealed the involvement of many of the important participants.  Based on the extraordinary circumstances surrounding the events of September 11, 2001 and the complex web of individuals and entities who conspired to commit acts of international terrorism against the United States, its implausible, and unnecessary in notice pleading to require more.  The Complaint when read as a whole sufficiently pleads a claim against the SAAR Executive Defendants under the TVPA.

**C.     The Federal Plaintiffs Have Sufficiently Pled a Claim Against The SAAR Executive Defendants Pursuant to the Racketeer Influenced and Corrupt Organization Act**

The SAAR Executive Defendants' arguments for the dismissal of the Federal Plaintiffs' RICO claims are almost lost in their stew of generalized arguments for dismissal.  When their brief is boiled down to its essence, however, two arguments pertaining to RICO emerge:

- the SAAR Executive Defendants claim that the Federal Plaintiffs have failed to allege the elements of a civil RICO action (the "Section 1962(c) Argument"); and

- the SAAR Executive Defendants claim that a general "aider and abettor" or "coconspirator" allegation cannot serve to properly plead a civil RICO claim (the "Section 1962(d) Argument").

See Defs.' Br. at 4-5.  Both Arguments fail for the reasons stated below.

1.    **The SAAR Executive Defendants' Section 1962(c) Argument Should Be Rejected**

According to the Section 1962(c) Argument, "[t]he elements of a civil RICO [action] are nowhere to be found in the [Amended] Complaint."  See Defs.' Br. at 4.  What the Section 1962(c) Argument fails to take into account, however, is that the Federal Plaintiffs' RICO Statement, provided pursuant to Case Management Order # 2, is "deemed an amendment to the Federal Insurance Plaintiffs' . . . Amended Complaint, by incorporation by reference."  See Case Mgmt. Order ¶ 14.  Hence, the Federal Plaintiffs have made many more detailed allegations than the SAAR Executive Defendants acknowledge in their motion to dismiss.

According to the RICO Statement, the "Enterprise," or "Radical Muslim Terrorism," is comprised of the defendants named in the Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact with complex goals that consist of far more than the desire to perpetrate just the acts of racketeering outlined herein.  See RICO Statement ¶ 6.  Rather, the Enterprise utilizes acts of racketeering, including those acts of money laundering and other improprieties conducted by the SAAR Executive Defendants, to further its overall common purposes of:  (a) spreading a particularly virulent brand of radical, conservative Islam; (b) eliminating Western influences in Islamic countries; and (c) punishing Israel, and the United States for its perceived support of Israel.  Id.  Thus, the Federal Plaintiffs have sufficiently pled the existence of an enterprise:  "a group of persons associated together for a

13

common purpose of engaging in a course of conduct" or "an ongoing organization, formal or informal." United States v. Turkette, 452 U.S. 576, 583 n.5 (1981).

Further, the Federal Plaintiffs also have sufficiently pled the SAAR Executive Defendants' participation in that Enterprise. Pursuant to Sections 1962(c) and 1962(d), "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'" United States v. Louie, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985) (citing 18 U.S.C. § 1962(c)). The Federal Plaintiffs have alleged an "association in fact" enterprise consisting of a vast number of defendants, some of whom are "lower rung" members who merely implemented the decisions of other members of the Enterprise. When a "lower rung" coconspirator knowingly implements the decisions of "upper management" to effectuate the goals of the enterprise, those defendants "participate" in the direction of the enterprise and are equally liable as the higher-ranking members. See MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 977-79 (7th Cir. 1995). Here, the Federal Plaintiffs have alleged that, although al Qaida had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. The SAAR Executive Defendants fit neatly into this framework by raising funds for and providing funding to and otherwise providing material support for the members of the Enterprise who participated in the Attack by engaging in a course of conduct that included money laundering and tax evasion.

In the Complaint, the Federal Plaintiffs allege that the SAAR Executive Defendants have aided and abetted, conspired with, and provided material support and resources to, defendant al

Qaida and/or affiliated FTOs, associations, organizations or persons.  FAC ¶ 66.  Further

according to the Complaint, the SAAR Executive Defendants are members of or affiliated with

the SAAR Network, which was established and funded by, or closely affiliated with, defendant

Suleiman Abdul Aziz.  FAC ¶ 223.  The Federal Plaintiffs further allege that the SAAR

Executive Defendants, along with the rest of the SAAR Network, have long acted as a fully

integrated component of al Qaida's logistical and financial support infrastructure, and have

provided material support and resources to al Qaida and affiliated FTOs.  FAC ¶ 226.   When the

complicated and multi-layered relationships between the SAAR Executive Defendants herein,

the other defendants, and the perpetrators of the Attack are sorted out, these allegations are

sufficient to withstand a motion to dismiss.

Moreover, the Federal Plaintiffs need not plead or prove that a predicate act furthered the

purpose for which the organization was founded but only that it was related to the enterprise.

Louie, 625 F. Supp. at 1333  (citing United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980)).

Thus, the question for the jury is not only the actions taken by the SAAR Executive Defendants

(in this case, money laundering and other crimes), but the motivation or intent underlying the

SAAR Executive Defendants' criminal activity and the acts' relationship to the enterprise (in this

case, Radical Muslim Terrorism, which the Federal Plaintiffs allege SAAR Executive

Defendants intended to support through money laundering and other predicate acts).  Id.

The Federal Plaintiffs have also adequately alleged proximate cause.  This requirement is

satisfied if the Defendant's injurious conduct is both the factual and the proximate cause of the

injury alleged.  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003) (citing Holmes v.

Security Investor Prot. Corp., 503 U.S. 258, 268 (1992).  Because "[t]he legal concept of

proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the

pleadings stage of a RICO claim is likely imprudent.  National Asbestos Workers Med. Fund v. Philip Morris, Inc., 74 F. Supp. 2d 221, 225 (E.D. N.Y. 1999).  This Court's decision "should be guided by a flexible, case-by-case approach."  Id. (citing Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 536-37 (1983) and Holmes, 503 U.S. at 272 n.20).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  Id.  Further, failure to explain the alleged injury in detail is not fatal.  Von Bulow v. Von Bulow, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986).  Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6).  Id.  The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts."  Id. (citations omitted).

Here, the Federal Plaintiffs allege that they were directly injured in their business and property by the SAAR Executive Defendants' participation in worldwide terrorism as a "fully integrated component of al Qaida's logistical and financial support infrastructure" and by its provision of "material support and resources to al Qaida."  FAC ¶ 226.  The SAAR Executive Defendants have participated in worldwide terrorism, and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States, by providing al Qaida with "the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the [] Attack."  FAC ¶ 74.

The Federal Plaintiffs' damages -- injuries, the loss of life and property damage that resulted from SAAR Executive Defendants' actions -- are not derivative of damage to a third party.  Rather the Federal Plaintiffs' insureds' and assignees were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," i.e.,

terrorism.  Lerner, 318 F.3d at 124.  Thus, the Federal Plaintiffs have standing to bring claims

under RICO.

A conspiracy of this nature is not a simple linear being, but is instead a complex, multi-

dimensional web of relationships and intrigue.  The RICO statute is flexible enough to embrace

the complexity of the conspiracy alleged here, and the Federal Plaintiffs' allegations are

sufficient, at this stage, to meet their burden.  For all these reasons, therefore, SAAR Executive

Defendants' motion to dismiss Count VIII should be denied.

2.    **The SAAR Executive Defendants' Section 1962(d) Argument Should Be Rejected**

According to the SAAR Executive Defendants' Section 1962(d) Argument, "a general

'aider and abettor' or 'co-conspirator' allegation cannot serve to plead properly a civil RICO

action."  See Defs.' Br. at 3.  SAAR Executive Defendants have grossly oversimplified the

argument, something that should not be permitted in such a complex case as this.

The Supreme Court recently addressed the scope of RICO's conspiracy provision, 18

U.S.C. § 1962(d), in Salinas v. United States, 522 U.S. 52 (1997).  In Salinas, the Court analyzed

a scheme in which a federal prisoner incarcerated in a county jail paid a series of bribes to the

sheriff in exchange for unsupervised conjugal visits with the prisoner's wife and girlfriend.  Id.

at 55.  Although the chief deputy never personally accepted any bribes from the prisoner, he

agreed to arrange the prisoner's visits when the sheriff was away from the jail and, on occasion,

stood watch outside the room where the visits took place.  Id. at 64-65.

Affirming the chief deputy's conviction on the conspiracy charge under Section 1962(d),

the Court began its analysis by noting that the RICO conspiracy provision must be interpreted in

light of the traditional understanding of the term "to conspire."  Id.  Accordingly, the Court set

forth the following well-established principles of conspiracy law:  (1) an individual can be

17

convicted of a conspiracy even if he "does not agree to commit or facilitate every part of the substantive offense"; (2) an individual who agrees with others to pursue a shared criminal objective may be held liable for the acts of the other conspirators; (3) such an individual may be held liable for the conspiracy even if he does not perpetrate the crime himself but provides support to those who do; and (4) an individual may be held liable for a conspiracy "even though he was incapable of committing the substantive offense."  Id.

Based on these general principles, the Court rejected the chief deputy's argument that the government was required to show that he agreed to commit personally two predicate acts of racketeering activity in order to convict him under Section 1962(d).  Id. at 65.  Instead, the Court held that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."  Id.  In the chief deputy's case, therefore, the government met this burden by showing that he "knew about and agreed to facilitate the scheme."  Id.

In the present action, the Federal Plaintiffs have pled the existence of an Enterprise that exists to promote the spread of radical fundamentalist Islam, to eliminate Western influence from Muslim lands, and to punish America and Israel.  An integral part of this scheme was al Qaida's intention to launch terrorist attacks on America.  The SAAR Executive Defendants knew about this scheme, and, as alleged in the Complaint and the RICO Statement, they supported and facilitated it.  There is no requirement that the SAAR Executive Defendants themselves have committed two predicate acts.  SAAR Executive Defendants therefore may be held liable under Section 1962(d).

For this additional reason, SAAR Executive Defendants' motion to dismiss Count VIII should be denied.

      **D.**     **This Court Has Personal Jurisdiction Over The SAAR Executive Defendants Under New York's Long Arm Statute And Pursuant To Both The Traditional Due Process Analysis And The Modified Due Process Standard For Mass Torts**

The Federal Plaintiffs have made a *prima facie* showing that the SAAR Executive Defendants are subject to personal jurisdiction by virtue of their conduct in the United States. The SAAR Executive Defendants argue that the Complaint does not allege any facts showing that they have minimum contacts with this forum, since they are residents of Virginia. The SAAR Executive Defendants' emphasis is misplaced, as this Court has personal jurisdiction over the SAAR Executive Defendants because they were participants in a conspiracy that resulted in catastrophic effects in this jurisdiction. In addition, the Second Circuit recognizes a modified due process standard for mass torts in which territorial contacts are replaced with state interests as the constitutional touchstone of in personam jurisdiction. Accordingly, this Court has personal jurisdiction over the SAAR Executive Defendants.

New York's long arm statute, C.P.L.R. 302(a)(2), provides, in pertinent part, that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent commits a tortious act within the state." N.Y. C.P.L.R. §302(a)(2); See also Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc., 10 F. Supp. 2d 334, 342 (S.D. N.Y. 1998). The term "agent" in this context has been read to include co-conspirators. Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 119 (E.D. N.Y. Jan. 4, 2000); Cleft of the Rock Fdn. v. Wilson, 992 F. Supp. 574, 581 (E.D. N.Y. 1998); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D. N.Y. 1991). "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators." Laborers

Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D. N.Y. 1998)

Accordingly, "[i]t is well-settled that acts committed in New York by the co-conspirator of an

out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to

jurisdiction under CPLR 302(a)(2)."  Simon, 86 F. Supp. 2d at 99 (citations omitted); see also

Levisohn, 10 F. Supp. 2d at 342; Chrysler Capital, 778 F. Supp. at 1266.

New York law does not recognize the substantive tort of civil conspiracy.  Durante Bros.

& Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985).  Rather, allegations of a

conspiracy connect the actions of separate defendants with an otherwise actionable tort.

Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986).  Both conspiracy and aiding and

abetting create concerted-action liability in New York.  Pitman v. Grayson, 149 F.3d 111, 122

(2d Cir. 1998).  "The elements of concerted-action liability are an express or tacit agreement 'to

participate in a common plan or design to commit a tortious act,' tortious conduct by each

defendant, and the commission by one of the defendants, in pursuance of the agreement, of an

act that constitutes a tort."  Id..  Conspiracy requires an agreement to commit a tortious act while

aiding and abetting requires that the defendant have given substantial assistance or

encouragement to the primary wrongdoer.  Id. at 122-23.  For the reasons set forth above, the

conduct of the SAAR Executive Defendants constitutes both forms of concerted-action liability

under New York law and, as such, connects each with the subject transaction, charges them with

the acts of and declarations of their co-conspirators, and exposes the SAAR Executive

Defendants to joint and several liability.  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,

187 F.3d 229, 240 (2d Cir. 1999).  This Court therefore has personal jurisdiction over the SAAR

Executive Defendants pursuant to the well recognized conspiracy jurisdiction theory under New

York law.

The exercise of personal jurisdiction must also be consistent with the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Schenker v. Assicurazioni Generali S.p.A., Consolidated, No. 98-CIV-9186, 2002 U.S. Dist. LEXIS 12845, at * 5-6 (S.D. N.Y. July 15, 2002).  The Due Process Clause has been interpreted to protect individual liberty interests by limiting state courts' exercise of personal jurisdiction over non-resident defendants. See, e.g., Burger King v. Rudzewicz, 471 U.S. 462, 471-72 & n.13 (1985); Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 & n.10 (1982).

Where, as here, the claim arises out of, or relates to, a defendant's contacts with the forum, i.e., the attack in New York, the plaintiff need only prove specific jurisdiction.  See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2nd Cir. 2001) (citing Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027-28 (2nd Cir. 1997)).  Specific jurisdiction is determined by analyzing first whether the claim arises out of or relates to the defendant's contacts with the state, and then whether that defendant purposefully availed himself of the privilege of doing business in the forum so that it reasonably could foresee being haled into the court in the forum state.  See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 38 (2nd Cir. 2001).  Jurisdiction on the basis of the in-state effects of intentional out-of-state conduct was held by the Supreme Court to be consistent with the requirement of the Due Process Clause in Calder v. Jones, 465 U.S. 783 (1984).

Thus, the Federal Plaintiffs must first adequately allege that the SAAR Executive Defendants established minimum contacts with the forum state to justify assertion of personal jurisdiction over them.  This first prong of the bifurcated due process test -- "minimum contacts" -- has been described as a "fair warning" requirement.  Simon, 86 F. Supp. 2d at 126.  It "focuses on the relationship among the defendant, the forum and the litigation."  Id. at 126 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984) (internal quotations omitted)).  The

Plaintiffs have alleged that the SAAR Executive Defendants were engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies.  The actions of the conspirators were expressly aimed at the United States in general and New York in particular such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with United States citizens as passengers, provide support for exercising personal jurisdiction here.[1] Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland.  Judge Platt, in the Eastern District of New York, reasoned that the destruction of the airplane, 189 deaths, and significant security concerns for the country and its aviation industry arguably "has had extensive impacts" on the United States.  Id. at 330.

> Any foreign state would know that the United States has substantial interest in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

Id.

In Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D.D.C. 2003), Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States citizens.  The plaintiffs in Pugh alleged that the defendants "conspired to sabotage and succeeded

---

[1]     While the defendants in these two cited cases are foreign states, as opposed to individuals, the holdings in both comport with the principle that participation in terrorist activities aimed at the United States, permits a court to subject the participants to personal jurisdiction, even in the absence of other minimum contacts with the jurisdiction.  Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D. N.Y. 1998) and Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp.2d 54 (D. D.C. 2003).  The analysis also enables a New York court to exercise jurisdiction over Virginia residents who participated in a conspiracy directed at New York.

in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight." Id. at 59.  The Court noted the United States' well known, worldwide interest in preventing and punishing terrorism by reference to Congress' adoption of criminal statutes contemplating jurisdiction in the United States over foreign nationals for activities abroad regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil *in personam* jurisdiction over those same individuals for the same acts.

Id.

In addition, of those few New York cases that have directly considered the due process implications of the conspiracy theory of jurisdiction, at least two have found the "purposeful availment" or "purposefully directed" requirement satisfied by a showing that the defendant chose to participate in the conspiracy in question with the knowledge that overt acts in furtherance of it had been or likely would be committed in New York.  Simon, 86 F. Supp. 2d at 89-90 (*citing* Cleft of the Rock Fdn., 992 F. Supp. at 584-85 *and* Dixon v. Mack, 507 F. Supp. 345, 352 (S.D. N.Y. 1980)).

The SAAR Executive Defendants also are subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in DES and tobacco cases.  Simon, 86 F.2d at 129-37; In re DES Cases, 789 F. Supp. 552, 574-77 (E.D. N.Y. 1992).  In Simon, Judge Weinstein reasoned that, because effective adjudication of mass torts requires the presence of essentially all the plaintiffs and all major defendants, continued reliance on defendant-forum contacts as a precondition for the exercise of personal jurisdiction is being abandoned as detrimental to the fair resolution of mass tort cases.  Simon, 86 F.2d  at 129.  Jurisdictional due process has evolved over time from a

24

strict geographical based doctrine into one rooted in the protection of individual liberty interests. Id. at 130. "New York's interest in this dispute is intense, and the burden on [defendants] is minimal compared to the difficulty of the plaintiffs' litigating in [several hundred jurisdictions throughout the world]." Simon, 86 F.2d at 137. [2]

Accordingly, this Court has personal jurisdiction over the SAAR Executive Defendants based on New York's Long Arm statute which does not violate constitutional due process.

## CONCLUSION

For the reasons stated above, the Federal Plaintiffs respectfully request that the SAAR Executive Defendants' Motion to Dismiss be denied in all respects, with prejudice.

Respectfully submitted,

COZEN O'CONNOR

By:    _____/s/_____
       STEPHEN A. COZEN, ESQUIRE
       ELLIOTT R. FELDMAN, ESQUIRE
       SEAN P. CARTER, ESQUIRE
       MARK T. MULLEN, ESQUIRE
       1900 Market Street
       Philadelphia, PA  19103
       Tel.:  (215) 665-2000
       Fax:  (215) 665-2013

       Attorneys for the Federal Plaintiffs

---

[2]     The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation. Simon, 86 F.2d at 131.  Since New York has an appreciable state interest, in that this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is *prima facie* constitutional. Id. Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, the SAAR Executive Defendants are unable to mount a defense in the forum state without suffering a relatively substantial hardship. Id.  Moving SAAR Executive Defendants can make no such showing here.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*      Federal Insurance Co. v. al Qaida
                            03 CV 06978 (RCC)

## [PROPOSED] ORDER

UPON CONSIDERATION OF Defendants Taha Al-Alwani, Muhammad Ashraf, M.

Omar Ashraf, M. Yaqub Mirza and Iqbal Unus' Motion to Dismiss the First Amended Complaint

of Plaintiffs Federal Insurance Company, et al., and Federal Insurance Company's opposition

thereto, it is hereby

ORDERED that said Defendants' Motion to Dismiss is DENIED.

Dated: _____
        New York, NY              _____
                              RICHARD CONWAY CASEY
                              United States District Judge