**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*     Federal Insurance Co. v. al Qaida
03 CV 06978 (RCC)

**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE MOTION TO DISMISS**
**FILED BY JAMAL BARZINJI**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION.................................................................................................... 1

II.     ALLEGATIONS AGAINST DR. BARZINJI ........................................................ 1

III.    ARGUMENT ........................................................................................................... 4

   A.   The Federal Plaintiffs Have Jurisdiction Over Dr. Barzinji And Have Adequately
        Stated Their Claims Against Dr. Barzinji Such That Dr. Barzinji's Motion To
        Dismiss Is Properly Denied ..................................................................................... 4

   B.   The Federal Plaintiffs Have Sufficiently Pled Allegations That Dr. Barzinji Acted As
        an Aider and Abettor and Co-Conspirator In Violation Of The ATA, The TVPA,
        RICO and The State Common Law ........................................................................ 6

        1.   The Federal Plaintiffs Have Alleged Claims Pursuant To The Anti Terrorism And
             Effective Death Penalty Act, 18 USC § 2331 ................................................ 7

        2.   The Complaint States a Claim Against  Dr. Barzinjis Under the Torture Victim
             Protection Act.............................................................................................. 10

        3.   The Federal Plaintiffs Have Sufficiently Pled A Claim Against Dr. Barzinji Under
             RICO ........................................................................................................... 12

   C.   This Court Has Jurisdiction Over Dr. Barzinji Under New York's Long Arm
        Statute And Pursuant To The Modified Due Process Standard For Mass Torts ..... 17

   CONCLUSION ............................................................................................................ 24

## **TABLE OF AUTHORITIES**

### **Cases**

Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986) ............................................................ 18

Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 114 (1987) .............................................. 20

Asip v. Nielsen Media Research, Inc., No. 03-CIV-5866, 2004 U.S. Dist. LEXIS 2350, at * 5
    (S.D. N.Y. Feb. 18, 2004). ................................................................................................... 4

Boim v. Quaranic Literacy Institute, 291 F.3d 1000, 1021 (7th Cir. 2002) ................................ 1

Boim v. Quranic Literacy Inst ..................................................................................................... 8

Burger King v. Rudzewicz, 471 U.S. 462, 471-72 & n.13 (1985) .................................. 19, 20, 21

Calder v. Jones, 465 U.S. 783 (1984). ................................................................................. 20, 21

Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027-28 (2d Cir. 1997) ....................................... 19

Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). ............................................................ 5

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). .... 18

Cleft of the Rock Fdn. v. Wilson, 992 F. Supp. 574, 581 (E.D. N.Y. 1998) ............................... 18

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999) ....... 19

Conley v. Gibson, 355 U.S. 41 (1957) ........................................................................................ 5

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ............................................................................. 4

Dixon v. Mack, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ........................................................... 23

Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985). .............. 18

Geisler  v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). ............................................................. 4

In re DES Cases, 789 F. Supp. 552, 574-77 (E.D.N.Y. 1992). ................................................... 23

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 & n.10
    (1982). ................................................................................................................................. 19

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ..................................................... 21

Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984). ........................................................... 20

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D.
    N.Y. 1998) ........................................................................................................................... 18

Leatherman v. Tarrant County, 507 U.S. 163 (1993) .................................................................. 5

Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc., 10 F. Supp. 2d 334, 342
    (S.D. N.Y. 1998) .................................................................................................................. 18

Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 38 (2d Cir.
    2001) .................................................................................................................................... 20

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) ............. 21

Pitman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998). ............................................................. 19

Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 289, 320 (S.D. N.Y.
    2003) .................................................................................................................................... 11

Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D.D.C. 2003) ............. 22

Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) ...... 21, 22

Salinas v. United States, 522 U.S. 52 (1997). ..................................................................... 16, 17

Schenker v. Assicurazioni Generali S.p.A., Consolidated, No. 98-CIV-9186, 2002 U.S. Dist.
    LEXIS 12845, at * 5-6 (S.D. N.Y. July 15, 2002) ................................................................ 19

Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995). .................................................................. 4

Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 119 (E.D. N.Y. Jan. 4, 2000) ......... 18, 20, 22, 23

Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002)........................................5
Swierkiewicz v.Sorema, 534 U.S. 506 (2002)......................................................................................5
U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001) 19
Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001).. 4
Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004) ..........................................................4

**Statutes**
18 U.S.C. § 1962(c) ......................................................................................................... 12, 13
Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq* ...................................... 7
Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S.
    519, 536-37 (1983)........................................................................................................... 15
Holmes v. Security Investor Prot. Corp., 503 U.S. 258, 268 (1992) ...................................... 14, 15
Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003).............................................. 14, 15
Louie ......................................................................................................................................... 14
MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 977-79 (7th Cir. 1995). 13
N.Y. C.P.L.R. §302(a)(2)............................................................................................................ 18
National Asbestos Workers Med. Fund v. Philip Morris, Inc., 74 F. Supp. 2d 221, 225 (E.D. N.Y.
    1999).................................................................................................................................. 15
United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980)................................................................ 14
Von Bulow v. Von Bulow, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986) ...................................... 15

**Rules**
**Fed. R. Civ. P.** 8 & 12.................................................................................................................. 6
United States v. Louie, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985)............................................. 13
United States v. Turkette, 452 U.S. 576, 583 n.5 (1981)............................................................. 13

I.    **INTRODUCTION**

The Federal Plaintiffs have sued Jamal Barzinji ("Dr. Barzinji") based on his integral role as an officer and director of over fourteen organizations (the "SAAR Network Entities"), some for-profit and some nonprofit, through which he has covertly provided money, material support and resources to al Qaida, and other international terrorist groups.  The Federal Plaintiffs allege that Dr. Barzinji knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 attack (the "Attack") was a natural, intended and foreseeable result.   When taken as true, as they must be here, the Federal Plaintiffs' allegations provide a suitable basis for asserting jurisdiction over Dr. Barzinji, and state a claim against Dr. Barzinji pursuant to the causes of action set forth in the Federal Plaintiffs' First Amended Complaint ("Complaint" or "FAC").  Indeed, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated those events through financial or other means. See Boim v. Quaranic Literacy Institute, 291 F.3d 1000, 1021 (7th Cir. 2002).  Therefore, Dr. Barzinji's motion to dismiss must be denied.

II.   **ALLEGATIONS AGAINST DR. BARZINJI**

The circumstances prompting this lawsuit are undoubtedly familiar to this Court.  On September 11, 2001, nineteen members of the al Qaida terrorist network hijacked four commercial airliners and used those planes as weapons in a coordinated terrorist attack on the World Trade Center complex in New York and the Pentagon in Arlington, Virginia.  The Attack resulted in the tragic loss of several thousand lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center complex.  FAC ¶¶ 70 & 71.  At this point in time, it is beyond dispute that the

Attack was a direct, intended and foreseeable product of a larger conspiracy, spearheaded by the al Qaida movement, to commit acts of international terrorism against the United States, its nationals and allies.

Seemingly reputable individuals, like Dr. Barzinji, and ostensibly legitimate organizations, like the SAAR Network Entities, played key roles in the conspiracy that gave rise to the attack. In the words of the United Nations Security Council Committee Concerning al Qaida and the Taliban:

> From its inception, al-Qaida has relied heavily on charities and donations from its sympathizers to finance its activities. Charities provide al-Qaida with a very useful international channel for soliciting, collecting, transferring and distributing the funds it needs for indoctrination, recruitment, training, and logistical and operational support. These funds are often merged with and hidden among funds used for other legitimate humanitarian or social programs. Al-Qaida supporters and financiers have also established front charity networks whose main purpose is to raise and deliver funds to al-Qaida.

FAC ¶ 80.

Beginning in the 1980s, several prominent and wealthy sponsors of al Qaida's global *jihad* began establishing in the United States what came to be known as the SAAR Network, a group of interrelated purported charities, think tanks and for-profit businesses used to generate and surreptitiously transfer funds to al Qaida. FAC ¶ 222. By September 11, 2001, no fewer than sixty-five so-called charities and business enterprises functioned under the umbrella of the SAAR Network. The vast majority of the SAAR Network Entities are located at a single address in Herndon, Virginia, and have common officers, directors, and management. FAC ¶¶ 225-227.

Dr. Barzinji is currently, or has been, an executive and/or director of more than fourteen of the SAAR Network Entities, including World Assembly of Muslim Youth, Safa Trust, Mar-Jac Poultry Inc. and SAAR Foundation. FAC ¶ 490. In his executive and director roles, Dr.

Barzinji has authority over eighteen bank accounts for SAAR Network Entities, which Dr.

Barzinji used to aid and abet, conspire with, and support al Qaida.  FAC ¶¶ 490-491.

According to the Federal Plaintiffs, Dr. Barzinji "committed and conspired to: transmit

money internationally for the purpose of promoting offenses against foreign nations involving

murder or the destruction of property by means of explosive, fire, kidnapping or extortion…;

provide material support or resources to foreign terrorist organizations…; and provide material

support or conceal or disguise the source of ownership of material support intended for use in

preparation for or in carrying out a terrorist act."  FAC ¶ 490.

On March 20 and 21, 2002,  as part of an ongoing federal investigation into money

laundering, tax evasion activities, and ties to terrorist individuals and organizations, federal

authorities raided the SAAR Network facilities (the "SAAR Raid").  FAC ¶ 227.  In addition to

executing a search at the Herndon headquarters, Federal authorities searched the residences of

eight  SAAR Network leaders, including that of Dr. Barzinji and five other executives of the

SAAR Network (the "SAAR Executive Defendants").  FAC ¶¶ 223-225.

The Federal Plaintiffs have also alleged that Dr. Barzinji is a business associate of Yousef

Nada, who has been designated a "Global Terrorist Individual" under Executive Order 13224

based on his material support and sponsorship of al-Qaida.  FAC ¶ 490.  Through his various for-

profit enterprises and involvement with charities and individuals operating within al Qaida's

infrastructure, Dr. Barzinji has long provided material support and resources to al Qaida with full

knowledge that those funds would be used to support al Qaida's operations and terrorist attacks.

FAC ¶¶ 490- 491.  The Federal Plaintiffs have alleged sufficiently that Dr. Barzinji, in his role as

an executive and director of numerous SAAR Network Entities, aided and abetted and conspired

to covertly provide material support and resources to al Qaida.  FAC ¶ 66.  Further still, the

Complaint expressly alleges that the Attack was a direct, intended and foreseeable product of a

larger conspiracy to commit acts of international terrorism against the United States, its

nationals and allies.  FAC ¶ 72.  When read in its entirety, the Federal Plaintiffs' Complaint

sufficiently alleges that Dr. Barzinji knowingly participated in a global conspiracy to commit

acts of international terrorism, which acts included the horrific Attack.  Accordingly, pursuant to

the liberal pleading provisions of Fed. R. Civ. P. 8(a)(2), the Complaint provides Dr. Barzinji fair

notice of the Federal Plaintiffs' claims.

### III.   ARGUMENT

#### A.   The Federal Plaintiffs Have Jurisdiction Over Dr. Barzinji And Have Adequately Stated Their Claims Against Dr. Barzinji Such That Dr. Barzinji's Motion To Dismiss Is Properly Denied

Dr. Barzinji moves to dismiss the Federal Plaintiffs' Complaint, pursuant to Federal

Rules of Civil Procedure 12(b)(2) and (6), for lack of jurisdiction and failure to state a claim.

Dr. Barzinji's motion must be denied unless "it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355

U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Simmons v.

Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995);  Asip v. Nielsen Media Research, Inc., No. 03-CIV-

5866, 2004 U.S. Dist. LEXIS 2350, at * 5 (S.D. N.Y. Feb. 18, 2004)..  The Court's role is "not to

assay the weight of the evidence which might be offered in support" of the Complaint, but

"merely to assess the legal feasibility" of the Complaint.  Geisler v. Petrocelli, 616 F.2d 636,

639 (2d Cir. 1980).  In evaluating whether the Federal Plaintiffs ultimately could prevail, the

court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in

favor of the Federal Plaintiffs.  Wynder, 360 F.3d at 77.  The Federal Plaintiffs are not required

to prove their case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided."

Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517 (2d Cir. 2001).

The issue raised by a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail

ultimately, but whether the claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive. Swierkiewicz v.Sorema, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Wynder, 360 F.3d at 77. Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993). As a judge in this District recently explained, "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D. N.Y. 2003) (quoting Conley, 355 U.S. at 48). Consequently, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly written sentence can satisfy Rule 8(a)(2)." Id. at 323. By way of illustration, one Court of Appeals recently held that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be sufficient to survive a Rule 12(b)(6) motion. Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002).

In the present case, the Federal Plaintiffs have provided Dr. Barzinji with the requisite notice in alleging that as an officer and member of the boards of directors of several SAAR Network Entities, Dr. Barzinji is part of a vast network that knowingly aided, abetted and

conspired to fund the activities of terrorists, including al Qaida, and that a terrorist attack on American soil was a direct, intended and foreseeable product of a larger conspiracy to commit acts of international terrorism against the United States, its nationals and allies.

To expect or require the Federal Plaintiffs to set forth every wrongful act of Dr. Barzinji is as unreasonable as it is unnecessary at this stage in the proceedings.  It simply is not required in notice pleading.  See **Fed. R. Civ. P.** 8 & 12.  Having stated a claim against Dr. Barzinji, the Federal Plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence.

> **B.     The Federal Plaintiffs Have Sufficiently Pled Allegations That Dr. Barzinji Acted As an Aider and Abettor and Co-Conspirator In Violation Of The ATA, The TVPA, RICO and The State Common Law**

Dr. Barzinji is identified in the Federal Plaintiffs' Complaint as having "aided and abetted, conspired with, and providing material support and resources to al Qaida and/or affiliated Foreign Terrorist Organizations ("FTOs"), associations, organizations or persons." FAC ¶ 66.  In addition, the complex web of alleged charities and for-profit entities, known as the SAAR Network, with which Dr. Barzinji is directly linked either as a founder, officer or member of the boards of directors, are identified as funders, planners, coordinators, and organizers of Al Qaida.  FAC ¶¶ 79-83.  Still further, the Complaint expressly alleges that the Attack was a direct, intended and foreseeable product of a larger conspiracy, including the provision of material support and resources provided by Dr. Barzinji through his control of numerous SAAR Network Entities, to commit acts of international terrorism against the United States, its nationals and allies.  FAC ¶ 72.  The Federal Plaintiffs further allege, that absent the material support and resources provided by its co-conspirators, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the Attack.  See FAC ¶¶ 70-74 & 78.

Although the Federal Plaintiffs have included "but for" allegations in their Complaint, such allegations are not necessary under the notice pleading standard to sufficiently plead Dr. Barzinji participation in a concerted action theory of liability.

When read in its entirety, and pursuant to the liberal pleading provisions of Fed. R. Civ. P. 8(a)(2), the Complaint sufficiently alleges that Dr. Barzinji is a major supporter of al Qaida and provides Dr. Barzinji fair notice of the Federal Plaintiffs' claims.

Dr. Barzinji's motion asserts that mere use of the terms "aider and abetter" and "co-conspirator" within the Complaint is insufficient to give Dr. Barzinji fair notice of the Federal Plaintiffs' claims and the grounds upon which they rest.  See Def's Brf. at 3.  Dr. Barzinji's motion misrepresents the allegations contained in the Complaint, and fails to read the Complaint in its totality.  The Federal Plaintiffs' Complaint contains over one hundred eighty pages in which the Federal Plaintiffs describe a sophisticated and complex network of individuals, including Dr. Barzinji, and entities, including the SAAR Network Entities, that have knowingly conspired to fund, conceive, plan and execute an act of terrorism -- the Attack.  In doing so, Dr. Barzinji has violated the Anti Terrorism Act, the Alien Claims' Torts Victim Act, the Racketeering Influenced and Corrupt Organization Act and numerous common law duties. Although the Complaint certainly does not accuse Dr. Barzinji of having committed the direct act of flying two commercial jet liners into the World Trade Center complex, the Complaint sufficiently alleges that Dr. Barzinji knowingly participated in the conspiracy which brought about the Attack, by providing material support to al Qaida with the reasonable anticipation that an act of terrorism was a natural consequence of such conspiracy.

1.      **The Federal Plaintiffs Have Alleged Claims Pursuant To The Anti Terrorism And Effective Death Penalty Act, 18 USC § 2331**

A plaintiff may assert a valid claim under the Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq.* (the "ATA") under either of two alternative approaches:  (1)

pursuant to general tort principles, including concerted action theories of liability; or (2) by demonstrating that the defendant violated the ATA's criminal standards, and that the defendant's violation was a substantial factor in bringing about plaintiff's injuries.  <u>Boim v. Quranic Literacy Inst.</u>, 291 F.3d 1000, 1015, 1020 (7th Cir. 2002).  The Federal Plaintiffs have done both.

> **a.**      **The Federal Plaintiffs Have Properly Alleged Claims under the ATA Pursuant to General Tort Principles**

At the Court's direction to avoid duplication of arguments, the Federal Plaintiffs incorporate by reference certain sections of the *Federal Plaintiffs' Memorandum of Law in Opposition to Mar-Jac Poultry, Inc's Motion to Dismiss First Amended Complaint*, dated July 9, 2004 (hereinafter the "Mar-Jac Opp.").  Specifically, the Federal Plaintiffs incorporate by reference the section entitled "The Federal Plaintiffs Have Adequately Alleged Claims under the ATA Pursuant to General Tort Principles."  <u>See</u> Mar-Jac Opp. part C.1 at 8.

When read as a whole, the Federal Plaintiffs' Complaint plainly and adequately states claims against Dr. Barzinji under the ATA, pursuant to aiding and abetting and conspiracy theories.  In this regard, the following allegations of the Complaint are illustrative:

> The Defendants . . . have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein.

FAC ¶ 66.

> The September 11th Attack was a direct, intended and foreseeable product of a larger conspiracy among the defendants, to commit acts of international terrorism against the United States, its nationals and allies.

FAC ¶ 72.

> The conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons,

> organizations, commercial entities and other parties, as discussed herein.

FAC ¶ 73.

> Absent the material support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack.

FAC ¶ 74. The Federal Plaintiffs' Complaint further alleges that Dr. Barzinji was an integral member of the SAAR Network, and describes in detail the SAAR Network's role in al Qaida's conspiracy to commit terrorist attacks against the United States. FAC ¶¶ 222-232. Read collectively, the forgoing allegations of the Complaint unambiguously allege that Dr. Barzinji knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the September 11th Attack was a direct, intended and foreseeable product of that larger conspiracy. These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

### b. The Federal Plaintiffs Adequately Alleged Claims under the ATA Based On Dr. Barzinji's Criminal Violations

The Federal Plaintiffs have also adequately pleaded claims against Dr. Barzinji under the ATA based upon Dr. Barzinji's violations of the ATA's criminal standards. The Federal Plaintiffs incorporate by reference the section entitled "The Federal Plaintiffs Have Adequately Alleged Claims under the ATA based upon Mar-Jac's Criminal Violations." See Mar-Jac. Opp. part C.2 at 10.

The Federal Plaintiffs have alleged that Dr. Barzinji participated in acts giving rise to liability under the ATA § 2339A and 2339B. Specifically, the Federal Plaintiffs have alleged

that Dr. Barzinji, through his control of the SAAR Network Entities, participated in a conspiracy to provide funding and support to the al Qaida terrorist network.  See *supra* part II..  Death and destruction in the United States was the well-publicized aim of al Qaida and its terrorist network. In light of these allegations, the Federal Plaintiffs have stated a cause of action against Dr. Barzinji pursuant to the criminal provisions of the ATA.

<strong>c.      The Federal Plaintiffs Have Properly Alleged Causation</strong>

The Federal Plaintiffs incorporate by reference the section entitled "Federal Plaintiffs Have Adequately Pleaded Causation."  See Mar-Jac Opp. part C.3 at 11.  The Complaint adequately alleges that Dr. Barzinji knowingly provided "material support and resources" and that the "Attack was a direct, intended and foreseeable product of a larger conspiracy among the defendants to commit acts of international terrorism against the United States"  FAC ¶¶ 66 & 74. These allegations are adequately sufficient to state a claim of causation at this preliminary stage.

<strong>2.      The Complaint States a Claim Against   Dr. Barzinji Under the Torture Victim Protection Act</strong>

The Federal Plaintiffs have alleged facts sufficient to state a cause of action under the TVPA.  The Complaint describes in detail how the Islamic charitable system has been utilized to finance and otherwise support illegal al Qaida activities.  FAC ¶¶ 75-252.  Moreover, the allegations specific to Dr. Barzinji through his various for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, state that Dr. Barzinji provided material support and resources to al Qaida.  FAC at ¶ 491.

Given the Complaint's allegations regarding how Dr. Barzinji through the SAAR Network fostered and financed terrorism, it can, at the very least, be reasonably inferred for Rule 12(b)(6) purposes that Dr. Barzinji was materially involved in aiding and abetting and/or conspiring with other co-defendants and with al Qaida in a manner intended to enable and proximately cause acts of violence and international terrorism, including the attack of September

10

11th.  Such conduct clearly violates the law of nations or, alternatively, otherwise constitutes

actionable conduct under the TVPA.  Moreover, to sufficiently allege a TVPA cause of action

against Dr. Barzinji, the Federal Plaintiffs need not allege that Dr. Barzinji was directly involved

in the terrorist attacks itself.  Rather, it is sufficient for the Federal Plaintiffs to allege, as they

have, that Dr. Barzinji conspired with or aided and abetted other co-defendants in a violation of

the law of nations.  Indeed, many federal courts have recognized that TVPA liability can be

based on conspiratorial relationships or theories of aiding and abetting.  Presbyterian Church of

Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 320 (S.D. N.Y. 2003).  Here, the

Complaint alleges a violation of the law of nations, i.e., the Attack.  Such conduct is actionable

under the TVPA.  The Complaint alleges that Dr. Barzinji facilitated, fostered, financed, or

otherwise supported terrorists that committed the Attack.  The Complaint alleges that Dr.

Barzinji acted in collusion with the other defendants.  FAC ¶ 73.  The Complaint alleges an

illegal relationship among Dr. Barzinji and al Qaida. FAC ¶ 72-74.  The Complaint also alleges

the Attack could not have been carried out in the absence of financing and logistical support to al

Qaida through that relationship.  FAC ¶ 74.

Unquestionably, such allegations satisfactorily allege that Dr. Barzinji conspired and

aided and abetted with others to facilitate the terrorist activities of al Qaida, resulting in the

Attack.  Pursuant to Rules 8 and 12, the Federal Plaintiffs have sufficiently alleged their claim --

that Dr. Barzinji sponsored international terrorism.  The Complaint alleges a vast network of

overlapping entities, charities, corporations, banks, state sponsors and individuals who financed

and promoted terrorism, and also concealed the involvement of many of the important

participants.  Based on the extraordinary circumstances surrounding the events of September 11,

2001 and the complex web of individuals and entities who conspired to commit acts of

international terrorism against the United States, it is implausible, and unnecessary in notice

pleading to require more.  The Complaint when read as a whole sufficiently pleads a claim
against Dr. Barzinji under the TVPA.

### 3.   The Federal Plaintiffs Have Sufficiently Pled A Claim Against Dr. Barzinji Under RICO

Dr. Barzinji's arguments for the dismissal of  the Federal Plaintiffs' RICO claims are
almost lost in his outrage at being sued at all.  What it all boils down to, however, are two
general arguments made almost in passing:  (1) the Federal Plaintiffs have failed to state a claim
for participation liability under 18 U.S.C. § 1962(c); and (2) the Federal Plaintiffs have failed to
state a claim for conspiracy liability under 18 U.S.C. § 1962(d).

### a.   Plaintiffs Have Stated  A Claim Under Section 1962(c)

According to Dr. Barzinji, "[t]he elements of a civil RICO [action] are nowhere to be
found in the [Amended] Complaint."  See Def's' Br. at 3-4.  What Dr. Barzinji fails to take into
account, however, is that the Federal Plaintiffs' RICO Statement, provided pursuant to Case
Management Order # 2, is "deemed an amendment to the Federal Insurance plaintiffs' . . .
Amended Complaint, by incorporation by reference."  See Case Mgmt. Order ¶ 14.  Hence, the
Federal Plaintiffs have made many more detailed allegations than Dr. Barzinji acknowledges in
his motion to dismiss.

According to the RICO Statement, the "Enterprise," or "Radical Muslim Terrorism," is
comprised of the defendants named in the First Amended Complaint, and is a collection of
persons, organizations, businesses, and nations associated in fact with complex goals that consist
of far more than the desire to perpetrate just the acts of racketeering outlined herein.  See RICO
Statement ¶ 5.  Rather, the Enterprise utilizes acts of racketeering, including those acts of money
laundering and other improprieties conducted by defendants, to further its overall common
purposes of:  (a) spreading a particularly virulent brand of radical, conservative Islam; (b)
eliminating Western influences in Islamic countries; and (c) punishing Israel, and the United

States for its perceived support of Israel.  Id.  Thus, the Federal Plaintiffs have sufficiently pled

the existence of an enterprise:  "a group of persons associated together for a common purpose of

engaging in a course of conduct" or "an ongoing organization, formal or informal."  United

States v. Turkette, 452 U.S. 576, 583 n.5 (1981).

Further, the Federal Plaintiffs also have sufficiently pled Dr. Barzinji's participation in

that enterprise.  Pursuant to Section 1962(c) and 1962(d), "a proper RICO allegation does not

require that each member agree with the actions taken by other members of the enterprise but

only that they intended to 'participate in the enterprise.'"  United States v. Louie, 625 F. Supp.

1327, 1333 (S.D. N.Y. 1985) (citing 18 U.S.C. § 1962(c)).  The Federal Plaintiffs have alleged

an "association in fact" enterprise consisting of a vast number of defendants, some of whom are

"lower rung" members who merely implemented the decisions of other members of the

enterprise.  When a "lower rung" coconspirator knowingly implements the decisions of "upper

management" to effectuate the goals of the enterprise, those defendants "participate" in the

direction of the enterprise and are equally liable as the higher-ranking members.  See MCM

Partners, Inc. v. Andrews-Bartlett & Assocs., Inc., 62 F.3d 967, 977-79 (7th Cir. 1995).  Here,

the Federal Plaintiffs have alleged that, although al Qaida had its own membership roster and a

structure of "committees" to guide and oversee such functions as training terrorists, proposing

targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of

command but were instead a means for coordinating functions and providing material support to

operations.  Dr. Barzinji fits neatly into this framework by raising funds for and providing

funding to and otherwise providing material support for the members of the Enterprise who

engaged in the Attack by engaging in a course of conduct that included money laundering and

tax evasion.

The Federal Plaintiffs' Complaint alleges that Dr. Barzinji has aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons. FAC ¶ 66. Further according to the Complaint, Dr. Barzinji is an officer or director of several of the SAAR Network Entities, which were established and funded by, or closely affiliated with, defendant Suleiman Abdul Aziz. FAC ¶ 223. The Federal Plaintiffs further allege that Dr. Barzinji, along with the rest of the SAAR Network, has long acted as a fully integrated component of al Qaida's logistical and financial support infrastructure, and has provided material support and resources to al Qaida and affiliated FTOs. FAC ¶ 226. When the complicated and layered relationships between Dr. Barzinji, the other defendants, and the perpetrators of the Attack are sorted out, these allegations are sufficient to withstand a motion to dismiss.

Moreover, the Federal Plaintiffs need not plead or prove that a predicate act furthered the purpose for which the organization was founded but only that it was related to the enterprise. Louie, 625 F. Supp. at 1333 (citing United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980)). Thus, the question for the jury is not only the actions taken by Dr. Barzinji (in this case, money laundering and other crimes), but the motivation or intent underlying Dr. Barzinji's criminal activity and the acts' relationship to the enterprise (in this case, Radical Muslim Terrorism, which the Federal Plaintiffs allege Dr. Barzinji intended to support through money laundering and other predicate acts). Id.

Plaintiffs have also adequately alleged proximate cause. This requirement is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003) (citing Holmes v. Security Investor Prot. Corp., 503 U.S. 258, 268 (1992)). Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings

stage of a RICO claim is likely imprudent.  <u>National Asbestos Workers Med. Fund v. Philip</u>
<u>Morris, Inc.</u>, 74 F. Supp. 2d 221, 225 (E.D. N.Y. 1999).  This Court's decision "should be guided
by a flexible, case-by-case approach."  <u>Id</u>. (citing <u>Associated Gen'l Contractors of Cal., Inc. v.</u>
<u>California State Council of Carpenters</u>, 459 U.S. 519, 536-37 (1983) <u>and</u> <u>Holmes</u>, 503 U.S. 258,
272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible,
rather than static:  as society, its needs, and its norms change, so too must the contours of tort
liability and enforcement procedures."  <u>Id</u>.  Further, failure to explain the alleged injury in detail
is not fatal.  <u>Von Bulow v. Von Bulow</u>, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986).  Allegations
of injury, because they necessarily involve questions of fact, must be construed liberally on a
motion to dismiss under Rule 12(b)(6).  <u>Id</u>.  The Complaint need only "allege[] compensable
injury flowing from the commission of the predicate acts."  <u>Id</u>. (citations omitted).

        Here, the Federal Plaintiffs allege that they were directly injured in their business and
property by Dr. Barzinji's participation in worldwide terrorism as a "fully integrated component
of al Qaida's logistical and financial support infrastructure" and by its provision of "material
support and resources to al Qaida."  FAC ¶ 226.  Dr. Barzinji has participated in worldwide
terrorism, and specifically in furthering al Qaida's goal of committing acts of terrorism against
the United States, by providing al Qaida with "the financial resources, physical assets,
membership base, technological knowledge, communication skills, and global reach required to
conceive plan and execute the September 11th Attack."  FAC ¶ 74.

        The Federal Plaintiffs' damages -- injuries, the loss of life and property damage that
resulted from Dr. Barzinji's actions -- are not derivative of damage to a third party.  Rather the
Federal Plaintiffs' insureds' assignees were the "reasonably foreseeable victims of a RICO
violation" and the "intended victims of the racketeering enterprise," <i>i.e.</i>, terrorism.  <u>Lerner</u>, 318
F.3d at 124.  Thus, the Federal Plaintiffs have standing to bring claims under RICO.

A conspiracy of this nature is not a simple linear being, but is instead a complex, multi-dimensional web of relationships and intrigue.  The RICO statute is flexible enough to embrace the complexity of the conspiracy alleged here, and the Federal Plaintiffs' allegations are sufficient, at this stage, to meet their burden.  For all these reasons, therefore, Dr. Barzinji's motion to dismiss Count VIII should be denied.

> **b.    The Federal Plaintiffs Have Stated A Claim Under Section 1962(d)**

According to Dr. Barzinji, "a general 'aider and abettor' or 'co-conspirator' allegation cannot serve to plead properly a civil RICO action."  See Def's Br. at 4.  Dr. Barzinji has grossly oversimplified the RICO argument, something that should not be permitted in such a complex case as this.

The Supreme Court recently addressed the scope of RICO's conspiracy provision, Section 1962(d), in Salinas v. United States, 522 U.S. 52 (1997).  In Salinas, the Court analyzed a scheme in which a federal prisoner incarcerated in a county jail paid a series of bribes to the sheriff in exchange for unsupervised conjugal visits with the prisoner's wife and girlfriend.  Although the chief deputy never personally accepted any bribes from the prisoner, he agreed to arrange the prisoner's visits when the sheriff was away from the jail and, on occasion, stood watch outside the room where the visits took place.

Affirming the chief deputy's conviction on the conspiracy charge under Section 1962(d), the Court began its analysis by noting that the RICO conspiracy provision must be interpreted in light of the traditional understanding of the term "to conspire."  Id. at 476-77.  Accordingly, the Court set forth the following well-established principles of conspiracy law:  (1) an individual can be convicted of a conspiracy even if he "does not agree to commit or facilitate every part of the substantive offense"; (2) an individual who agrees with others to pursue a shared criminal objective may be held liable for the acts of the other conspirators; (3) such an individual may be

held liable for the conspiracy even if he does not perpetrate the crime himself but provides support to those who do; and (4) an individual may be held liable for a conspiracy "even though he was incapable of committing the substantive offense." Id.

Based on these general principles, the Court rejected the chief deputy's argument that the government was required to show that he agreed to commit personally two predicate acts of racketeering activity in order to convict him under Section 1962(d). Instead, the Court held that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Id. In the chief deputy's case, therefore, the government met this burden by showing that he "knew about and agreed to facilitate the scheme." Id. at 478.

In the present action, the Federal Plaintiffs have pled the existence of an Enterprise that exists to promote the spread of radical fundamentalist Islam, to eliminate Western influence from Muslim lands, and to punish America and Israel. An integral part of this scheme was al Qaida's intention to launch terrorist attacks on America. Dr. Barzinji knew about this scheme, and, as alleged in the Plaintiffs' Complaint and the RICO Statement, he supported and facilitated it. Dr. Barzinji therefore may be held liable under Section 1962(d).

For this additional reason, Dr. Barzinji's motion to dismiss Count VIII should be denied.

## C.    This Court Has Jurisdiction Over Dr. Barzinji Under New York's Long Arm Statute And Pursuant To The Modified Due Process Standard For Mass Torts

The Federal Plaintiffs have made a *prima facie* showing that Dr. Barzinji is subject to personal jurisdiction by virtue of his conduct in the United States. Dr. Barzinji argues that the Complaint does not allege any facts showing that Dr. Barzinji has minimum contacts with this forum, since he is a resident of Virginia. Dr. Barzinji's emphasis is misplaced, as this Court has personal jurisdiction over Dr. Barzinji because he participated in a conspiracy that resulted in

catastrophic effects in this jurisdiction.  In addition, the Second Circuit recognizes a modified

due process standard for mass torts in which territorial contacts are replaced with state interests

as the constitutional touchstone of in personam jurisdiction.  Accordingly, this Court has

personal jurisdiction over Dr. Barzinji.

New York's long arm statute, C.P.L.R. 302(a)(2), provides, in pertinent part, that "a court

may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent

commits a tortious act within the state."  N.Y. C.P.L.R. §302(a)(2);  See also Levisohn, Lerner,

Berger & Langsam v. Medical Taping Systems, Inc., 10 F. Supp. 2d 334, 342 (S.D. N.Y. 1998).

The term "agent" in this context has been read to include co-conspirators.  Simon v. Philip

Morris, Inc., 86 F. Supp. 2d 95, 119 (E.D. N.Y. Jan. 4, 2000); Cleft of the Rock Fdn. v. Wilson,

992 F. Supp. 574, 581 (E.D. N.Y. 1998); Chrysler Capital Corp. v. Century Power Corp., 778 F.

Supp. 1260, 1266 (S.D. N.Y. 1991). "Both state and federal courts have found that where a

plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may

exist over a defendant based on acts that were committed by his co-conspirators."  Laborers

Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D. N.Y. 1998)

Accordingly, "[i]t is well-settled that acts committed in New York by the co-conspirator of an

out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to

jurisdiction under CPLR 302(a)(2)."  Simon, 86 F. Supp. 2d at 99 (citations omitted); see also

Levisohn, 10 F. Supp. 2d at 342; Chrysler Capital, 778 F. Supp. at 1266.

New York law does not recognize the substantive tort of civil conspiracy.  Durante Bros.

& Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985).  Rather, allegations of a

conspiracy connect the actions of separate defendant with an otherwise actionable tort.

Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986).  Both conspiracy and aiding and

abetting create concerted-action liability in New York.  Pitman v. Grayson, 149 F.3d 111, 122

(2d Cir. 1998).  "The elements of concerted-action liability are an express or tacit agreement 'to participate in a common plan or design to commit a tortious act,' tortious conduct by each defendant, and the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort."  Id.  Conspiracy requires an agreement to commit a tortious act while aiding and abetting requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer.  Id. at 122-23.  For the reasons set forth above, the conduct of Dr. Barzinji constitutes both forms of concerted-action liability under New York law and, as such,  connects each with the subject transaction, charges them with the acts of and declarations of their co-conspirators, and exposes defendants to joint and several liability.  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999).  This Court therefore has personal jurisdiction over Dr. Barzinji pursuant to the well recognized conspiracy jurisdiction theory under New York law.

The exercise of personal jurisdiction must also be consistent with the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Schenker v. Assicurazioni Generali S.p.A., Consolidated, No. 98-CIV-9186, 2002 U.S. Dist. LEXIS 12845, at * 5-6 (S.D. N.Y. July 15, 2002).  The Due Process Clause has been interpreted to protect individual liberty interests by limiting state courts' exercise of personal jurisdiction over non-resident defendants.  See, e.g., Burger King v. Rudzewicz, 471 U.S. 462, 471-72 & n.13 (1985); Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 & n.10 (1982).

Where, as here, the claim arises out of, or relates to, a defendant's contacts with the forum, i.e., the attack in New York, the plaintiff need only prove specific jurisdiction.  See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001) (citing Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027-28 (2d Cir. 1997)).  Specific jurisdiction is determined by analyzing first whether the claim arises out of or relates to the defendant's

contacts with the state, and then whether that defendant purposefully availed himself of the privilege of doing business in the forum so that it reasonably could foresee being haled into the court in the forum state.  See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 38 (2d Cir. 2001).  Jurisdiction on the basis of the in-state effects of intentional out-of-state conduct was held by the Supreme Court to be consistent with the requirement of the Due Process Clause in Calder v. Jones, 465 U.S. 783 (1984).

Thus, the Federal Plaintiffs must first adequately allege that Dr. Barzinji established minimum contacts with the forum state to justify assertion of personal jurisdiction over him.  This first prong of the bifurcated due process test -- "minimum contacts" -- has been described as a "fair warning" requirement.  Simon, 86 F. Supp. 2d at 126.  It "focuses on the relationship among the defendant, the forum and the litigation."  Id. at 126 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984) (internal quotations omitted)).  The minimum-contacts prong is satisfied by a determination that "the defendant has 'purposefully directed' his activities at the forum."  Burger King, 471 U.S. at 473 (quoting Keeton, 465 U.S. at 774).

The second phase of the due process inquiry assesses the reasonableness of exercising jurisdiction once "minimum contacts" have been established.  See Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 114 (1987); Simon, 86 F. Supp. 2d at 100-01.  This analysis entails consideration of five factors:  the burden on the defendant; the interest of the forum state in adjudicating the controversy; the interest of the plaintiff in obtaining convenient and effective relief; the interest of the interstate judicial system in obtaining the most efficient resolution of the dispute; and the shared interest of the states in furthering fundamental social policies.  Asahi, 480 U.S. at 113.

The purpose of both the "minimum contacts" and "reasonableness" prongs of the analysis is to ensure that jurisdiction comports with "traditional notions of fair play and substantial

justice. " International Shoe Co. v. Washington, 326 U.S. 310 (1945).  Since these two prongs are interrelated, enhanced proof of one reduces the required showing of the other.  Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).  Consideration of reasonableness factors can sometimes "establish . . . jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  Burger King, 471 U.S. at 477 (citations omitted).  By the same token, where activities are purposefully directed at the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Id.

The Supreme Court has held that in an action involving the harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  Calder, 465 U.S. at 788.   Such is the case here.  The Federal Plaintiffs have alleged that Dr. Barzinji was engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies.  The actions of the conspirators were expressly aimed at the United States in general and New York in particular such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with United States citizens as passengers, provide support for exercising personal jurisdiction here.[1] Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland.  Judge Platt, in the Eastern District of New York, reasoned

---

[1] While the defendants in these two cited cases are foreign states, as opposed to individuals, the holdings in both comport with the principle that participation in terrorist activities aimed at the United States, permits a court to subject the participants to personal jurisdiction, even in the absence of other minimum contacts with the jurisdiction. Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) and Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D.D.C. 2003).  The analysis also enables a New York court to exercise jurisdiction over Virginia residents who participated in a conspiracy directed at New York.

that the destruction of the airplane, 189 deaths, and significant security concerns for the country

and its aviation industry arguably "has had extensive impacts" on the United States.  Id. at 330.

> Any foreign state would know that the United States has
> substantial interest in protecting its flag carriers and its nationals
> from terrorist activities and should reasonably expect that if these
> interests were harmed, it would be subject to a variety of potential
> responses, including civil actions in United States courts.

Id.  In Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp.2d 54 (D.D.C. 2003),

Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit

involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States

citizens.  The plaintiffs in Pugh alleged that the defendants "conspired to sabotage and succeeded

in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting

passengers while in flight."  Id. at 59.  The Court noted the United States' well known,

worldwide interest in preventing and punishing terrorism.  Congress had enacted several criminal

statutes dealing with such cases starting at least five years before the bombing.  These criminal

statutes contemplated jurisdiction in the United States over foreign nationals for activities abroad

regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutionally
> exercise criminal jurisdiction over such individuals, the
> Constitution should be no bar to those same federal courts, in a
> civil action for damages, exercising civil *in personam* jurisdiction
> over those same individuals for the same acts.

Id.

In addition, of those few New York cases that have directly considered the due process

implications of the conspiracy theory of jurisdiction, at least two have found the "purposeful

availment" or "purposefully directed" requirement satisfied by a showing that the defendant

chose to participate in the conspiracy in question with the knowledge that overt acts in

furtherance of it had been or likely would be committed in New York.  Simon, 86 F. Supp. 2d at

89-90 (citing Cleft of the Rock Fdn., 992 F. Supp. at 584-85 and Dixon v. Mack, 507 F. Supp. 345, 352 (S.D.N.Y. 1980)).

Dr. Barzinji also is subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in DES and tobacco cases.  Simon, 86 F.2d at 129-37; In re DES Cases, 789 F. Supp. 552, 574-77 (E.D.N.Y. 1992).  In Simon, Judge Weinstein reasoned that, because effective adjudication of mass torts requires the presence of essentially all the plaintiffs and all major defendants, continued reliance on defendant-forum contacts as a precondition for the exercise of personal jurisdiction is being abandoned as detrimental to the fair resolution of mass tort cases. Simon, 86 F.2d  at 129.  Jurisdictional due process has evolved over time from a strict geographical based doctrine into one rooted in the protection of individual liberty interests.  Id. at 130. "New York's interest in this dispute is intense, and the burden on [defendants] is minimal compared to the difficulty of the plaintiffs' litigating in [several hundred jurisdictions throughout the world]."  Simon, 86 F.2d at 137. [2]

Accordingly, the Federal Plaintiffs have personal jurisdiction over Dr. Barzinji  based on New York's Long Arm statute and pursuant to the modified due process standard for mass torts.

---

[2] The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation.  Simon, 86 F.2d at 131 (citation omitted).  Since New York has an appreciable state interest, in that this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is prima facie constitutional.  Id. Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, Dr. Barzinji is unable to mount a defense in the forum state without suffering a relatively substantial hardship.  Id.  Dr. Barzinji can make no such showing here.

## **CONCLUSION**

For the reasons stated above, the Federal Plaintiffs respectfully request that Dr. Barzinji's Motion to Dismiss be denied in all respects, with prejudice.


Respectfully submitted,

COZEN O'CONNOR


By:  _____/s/_____
     STEPHEN A. COZEN, ESQUIRE
     ELLIOTT R. FELDMAN, ESQUIRE
     SEAN P. CARTER, ESQUIRE
     MARK T. MULLEN, ESQUIRE
     1900 Market Street
     Philadelphia, PA  19103
     Tel.:  (215) 665-2000
     Fax:   (215) 665-2013

     Attorneys for the Federal Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*          Federal Insurance Co. v. al Qaida
                                       03 CV 06978 (RCC)

## [PROPOSED] ORDER

UPON CONSIDERATION OF Defendant Jamal Barzinji's Motion to Dismiss the First

Amended Complaint of Plaintiffs Federal Insurance Company, et al., and Federal Insurance

Company's opposition thereto, it is hereby

ORDERED that Defendant's Motion to Dismiss is DENIED.


Dated: _____
       New York, NY                    _____
                                       RICHARD CONWAY CASEY
                                       United States District Judge