# EXHIBIT H

The PRESIDING OFFICER. The question is on agreeing to the resolution.

The resolution (S. Res. 102) was agreed to.

The preamble was agreed to.

The resolution, with its preamble, is as follows:

S. RES. 102

Whereas Kelli McCarty, a native of Liberal, Kansas, was crowned Miss U.S.A. 1991 in Wichita, Kansas, on February 22, 1991;

Whereas she is the first person from the state of Kansas to become Miss U.S.A.;

Whereas her charm, beauty, grace and commitment to education, charity and professional excellence make her an inspiration to young people across America; and

Whereas Kelli McCarty will represent the United States on May 17 in the Miss Universe Pageant: Therefore be it

*Resolved,* That the United States Senate expresses its congratulations to Kelli McCarty for achieving the Miss U.S.A. title, and that the Senate wishes her the best of luck as she represents the United States in the Miss Universe Pageant on May 17.

Mr. DOLE. Mr. President, I move to reconsider the vote.

Mr. DASCHLE. I move to lay that motion on the table.

The motion to lay on the table was agreed to.

APPOINTMENT BY THE VICE PRESIDENT

The PRESIDING OFFICER. The Chair, on behalf of the Vice President, pursuant to section 1024, title 15, United States Code, appoints the Senator from New Hampshire [Mr. SMITH] to the Joint Economic Committee.

EXECUTIVE SESSION

EXECUTIVE CALENDAR

Mr. DASCHLE. Mr. President, I ask unanimous consent that the Senate proceed to executive session to consider the following nomination: Calendar No. 68, James F. Hoobler to be Inspector General, Small Business Administration.

I further ask unanimous consent that the nominee be confirmed; that any statements appear in the RECORD as if read; that the motion to reconsider be laid upon the table; that the President be immediately notified of the Senate's action; and that the Senate return to legislative session.

The PRESIDING OFFICER. Without objection, it is so ordered.

The nomination, considered and confirmed, is as follows:

SMALL BUSINESS ADMINISTRATION

James F. Hoobler, of New York, to be Inspector General, Small Business Administration.

LEGISLATIVE SESSION

The PRESIDING OFFICER. Under the previous order, the Senate will return to legislative session.

THE ANTITERRORISM ACT OF 1991

Mr. DASCHLE. Mr. President, I ask unanimous consent that the Senate proceed to the immediate consideration of S. 740, the Antiterrorism Act of 1991, now at the desk.

The PRESIDING OFFICER. The bill will be stated by title.

The assistant legislative clerk read as follows:

A bill (S. 740) to provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals.

The PRESIDING OFFICER. Is there objection to the immediate consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

Mr. GRASSLEY. Mr. President, last April, I, along with Senator HEFLIN, first introduced the Antiterrorism Act of 1990 [ATA] S. 740. It was introduced in the House by Congressman FEIGHAN and HYDE. On October 1, the ATA unanimously passed the Senate as part of the military construction appropriations bill.

This legislation would, for the first time, provide for Federal civil remedies for American victims of international terrorism.

Specifically, the ATA amends title 18 of the United States Code, which extends American criminal jurisdiction over terrorists. S. 740 provides that any national of the United States, injured by an act of international terrorism, his estate, heirs, or survivors, may sue in U.S. district court. The ATA removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation, including: Subpoenas for financial records, banking information, and shipping receipts—this bill provides victims with the tools necessary to find terrorists' assets and seize them. The ATA accords victims of terrorism the remedies of American tort law, including treble damages and attorney's fees.

The ATA garnered strong bipartisan support in both the House and Senate. Ten of the 14 members of the Senate Judiciary Committee cosponsored the measure. Last July 25, the Subcommittee on Courts and Administrative Practice held a hearing where families of victims of terrorism testified along the legal experts, and the administration. The ATA was unanimously polled out of subcommittee.

The families of victims of Pan Am 103 testified in support of the ATA and have worked tirelessly for its enactment. Lisa and Ilsa Klinghoffer, daughters of American Leon Klinghoffer who was murdered by PLO terrorists on the Achille Lauro Cruisliner, also testified in support of Grassley-Heflin.

Last June, a New York Federal District Court ruled in the Klinghoffer versus PLO case (after years of litigation), that the U.S. courts have jurisdiction over the PLO. The New York court set the precedent; S. 740 would codify that ruling and makes the right of American victims definitive.

Due to an enrolling error, the ATA was enacted into law on November 5, 1990 as part of the Military Construction Appropriations Act—Public Law 101-519. The ATA stood as the law of the land for 5 months. It was promulgated and relied upon. In the 5 months that the ATA was law, no problems were found with it or its application.

In fact, in March, the Second Circuit Court of Appeals heard oral arguments in the PLO's appeal of the district court's decision granting finding jurisdiction in the Klinghoffer case. Several parties in the case, including the Klinghoffers—and the Anti-Defamation League in an amicus curiae brief—cited and relied upon the ATA in their appellate briefs.

Unfortunately, this law was repealed just a few weeks after oral argument; albeit, on purely technical grounds. The repeal came despite the strong support in Congress for the law. However, I am pleased that once again the Senate is unanimously supporting the ATA.

This should send a clear signal to the courts that the repeal of the ATA a few weeks ago was a wholly technical matter and did not in any way reflect Congress' intent on the substance of the legislation. Our resolve to fight terrorism and equip victims with civil remedies for terrorists acts is as strong as ever.

I now urge the House to act expeditiously and pass the ATA. The Senate unanimously supports the ATA. President Bush already has signed the ATA into law once, without objection: Now is the time for the House to join us in passage of the ATA.

Thank you, Mr. President, and I thank my colleagues for their support of this important legislation.

The PRESIDING OFFICER. The bill is before the Senate and open to amendment. If there be no amendment to be proposed, the question is on the engrossment and third reading of the bill.

The bill was ordered to be engrossed for a third reading, was read the third time, and passed, as follows:

S. 740

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

(a) SHORT TITLE.—This section may be cited as the "Antiterrorism Act of 1991".

(b) TERRORISM.—Chapter 113A of Title 18, United States Code, is amended—

(1) in section 2331 by striking subsection (d) and redesignating subsection (e) as subsection (d);

(2) by redesignating section 2331 as 2332 and striking the caption for section 2331 and inserting the following:

"§ 2332. Criminal penalties";

(3) by inserting before section 2332 as redesignated the following:

"§ 2331. Definitions

"As used in this chapter—

"(1) the term 'international terrorism' means activities that—

"(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

"(B) appear to be intended—

"(i) to intimidate or coerce a civilian population;

"(ii) to influence the policy of a government by intimidation or coercion; or

"(iii) to affect the conduct of a government by assassination or kidnapping; and

"(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum;

"(2) the term 'national of the United States' has the meaning given such term in section 101(a)(22) of the Immigration and Nationality Act;

"(3) term 'person' means any individual or entity capable of holding a legal or beneficial interest in property; and

"(4) the term 'act of war' means any act occurring in the course of—

"(A) declared war;

"(B) armed conflict, whether or not war has been declared, between two or more nations; or

"(C) armed conflict between military forces of any origin.".

(4) by adding immediately after section 2332 as redesignated the following new sections:

"§ 2333. Civil remedies

"(a) ACTION AND JURISDICTION.—Any national of the United States injured in his person, property, or business by reason of an act of international terrorism, or his estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he sustains and the cost of the suit, including attorney's fees.

"(b) ESTOPPED UNDER UNITED STATES LAW.—A final judgment or decree rendered in favor of the United States in any criminal proceeding under section 1116, 1201, 1203, or 2332 of this title or section 1472 (i), (k), (l), (n), or (r) of title 49 App. shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.

"(c) ESTOPPED UNDER FOREIGN LAW.—A final judgment or decree rendered in favor of any foreign state in any criminal proceeding shall, to the extent that such judgment or decree may be accorded full faith and credit under the law of the United States, estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.

"§ 2334. Jurisdiction and venue

"(a) GENERAL VENUE.—Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

"(b) SPECIAL MARITIME OR TERRITORIAL JURISDICTION.—If the actions giving rise to the claim occurred within the special maritime and territorial jurisdiction of the United States, as defined in section 7 of this title, then any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district in which any plaintiff resides or the defendant resides, is served, or has an agent.

"(c) SERVICE ON WITNESSES.—A witness in a civil action brought under section 2333 of this title may be served in any district where the witness resides, is found, or has an agent.

"(d) CONVENIENCE OF THE FORUM.—The district court shall not dismiss any action brought under section 2333 of this title on the grounds of the inconvenience or inappropriateness of the forum chosen, unless—

"(1) the action may be maintained in a foreign court that has jurisdiction over the subject matter and over all the defendants;

"(2) that foreign court is significantly more convenient and appropriate; and

"(3) that foreign court offers a remedy which is substantially the same as the one available in the courts of the United States.

"§ 2335. Limitation of actions

"(a) IN GENERAL.—Subject to subsection (b), a suit for recovery of damages under section 2333 of this title shall not be maintained unless commenced within 3 years from the date the cause of action accrued.

"(b) CALCULATION OF PERIOD.—The time of the absence of the defendant from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, or any concealment of his whereabouts, shall not be reckoned within this period of limitation.

"§ 2336. Other limitations

"No action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war.

"§ 2337. Suits against government officials

"No action shall be maintained under section 2333 of this title against—

"(1) the United States, an agency of the United States, or an officer or employee of the United States or any agency thereof acting within his official capacity or under color of legal authority; or

"(2) a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his official capacity or under color of legal authority.

"§ 2338. Exclusive Federal jurisdiction

"The district courts of the United States shall have exclusive jurisdiction over an action brought under this chapter."; and

"(5) by amending the table of sections to read as follows:

"CHAPTER 113A—TERRORISM

"Sec.
"2331. Definitions.
"2332. Criminal penalties.
"2333. Civil remedies.
"2334. Jurisdiction and venue.
"2335. Limitation of actions.
"2336. Other limitations.
"2337. Suits against government officials.
"2338. Exclusive Federal jurisdiction.

(c) TABLE OF CONTENTS.—The table of contents of part 1, title 18, United States Code, is amended by striking:

"113A.   Extraterritorial jurisdiction over terrorist acts abroad against United States nationals .................... 2331"

and inserting in lieu thereof:

"113A. Terrorism ................................ 2331

(d) EFFECTIVE DATE.—This section and amendments made by this section shall apply to any pending case or any cause of action arising on or after 4 years before the date of enactment of this section.

Mr. DOLE. Mr. President, I move to reconsider the vote.

Mr. DASCHLE. I move to lay that motion on the table.

The motion to lay on the table was agreed to.

---

PRINTING OF EULOGIES

Mr. DOLE. Mr. President, I ask unanimous consent that all Senators have until the close of business Thursday, April 18, 1991, to submit eulogies for our former colleague, the Senator from Texas, Mr. Tower, and that at that time the eulogies be printed as a Senate document, with 300 additional copies printed for use of the Senate.

The PRESIDING OFFICER. Without objection, it is so ordered.

---

FUTURES TRADING PRACTICES ACT

The Senate continued with the consideration of the bill.

Mr. DASCHLE. Mr. President, the Senate throughout the day has been discussing the CFTC reauthorization and I wanted to have just a couple of minutes to discuss my views on the subject. This has been an issue that has been pending before the Senate now for over 2 years, without a solution.

During this time, the creative energies of our financial markets have been left to languish, while Congress continues to carry on its seemingly incessant debate. Not only has our position as a financial leader in the world been damaged, but the public has been left without the benefit of the new protections that would have resulted from the trading practice reforms which are included in this bill. It is time that we get back to the task of cleaning up some of the abuses which have occurred in the futures markets. It is very unfortunate that something as important as public protection is being held hostage to a jurisdictional dispute between the securities and futures industries.

The compromise contained in the Agriculture Committee's version of this legislation offers a fair and workable solution to the jurisdictional dispute. The delineation between futures and securities will be based on whether an instrument's primary function is for capital formation or risk management. The distinction between capital formation and risk management is the fundamental principle upon which our regulatory scheme for futures and securities is based. It is only sensible that we continue to rely on the distinction t...