UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570 |

*This document relates to:*

| | |
|---|---|
| THOMAS BURNETT, SR., *et al.*<br>                         Plaintiffs<br>           - against –<br>AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,<br>                         Defendants. | Civil Action No. 03 CV 9849 (RCC) |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF YASSIN AL KADI FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA SERVED ON CITIBANK FSB

July 16, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

PROCEDURAL BACKGROUND ......................................................................................................... 2

ARGUMENT ..................................................................................................................................... 4

    I.    THE CITIBANK SUBPOENA IS NOT IMPROPER UNDER CASE MANAGEMENT
         ORDER #2 .......................................................................................................... 4

    II.   THE CITIBANK SUBPOENA IS NOT OVERBROAD ....................................................... 8

CONCLUSION ................................................................................................................................. 11

i

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Chazin v. Lieberman,* 129 F.R.D. 97 (S.D.N.Y. 1990) ................................................................... 1

*Estee Lauder, Inc. v. The Fragrance Counter, Inc.*, 189 F.R.D. 269 (S.D.N.Y. 1999) ................... 9

*Innomed Labs, LLC v. Alza Corporation,* 211 F.R.D. 237 (S.D.N.Y. 2002) .............................. 8, 9

**Rules**

Fed.R.Civ.P. 26 ........................................................................................................................... 8, 9

**Other Authorities**

Wright & Miller, *Federal Practice and Procedure* (1971) ............................................................ 1

## INTRODUCTION

This case is about the money and resources that fund and support terrorism: who financed al Qaeda, its terrorist training programs, and the September 11 attacks, and how did they transfer money to the terrorists? In this motion, defendant Yassin Al Kadi, named by the U.S. government as a Specially-Designated Global Terrorist, seeks to quash a subpoena calling for Citibank, a non-party, to produce bank records that potentially document some of the transactions used to finance terrorism. Kadi is alleged to have provided financial support to al Qaeda and Osama bin Laden by transferring funds, including millions of dollars of his own money, through an entity called the Muwaffaq Foundation to bin Laden's terrorist network. Kadi seeks to quash a subpoena served on Citibank FSB on June 23, 2004 (the "Subpoena"), seeking records of numerous bank accounts potentially linked to al Qaeda. A handful of the requests call for records of accounts associated with certain transfers of funds by Kadi.[1]

Kadi offers no substantive reason to quash the Subpoena; he does not contest that records pertaining to his financial transactions are relevant to claims that he knowingly transferred funds to al Qaeda and groups acting as fronts for al Qaeda. Kadi argues only that the Subpoena is premature under the CMO.[2] But even as to this procedural point, Kadi is wrong.

---

[1] Kadi contends that he has standing to make this motion because he claims, in the text of his memorandum of law, that the Subpoena seeks banking records that pertain to him. *See* Kadi Mem. at 2. In a footnote, however, Kadi states that he "does not admit that he has a direct beneficial ownership or, or signatory authority for, any of the accounts identified in the Subpoena." Kadi Mem. at 2 n.3. Kadi cannot have it both ways. If he has no interest in the accounts identified in the Subpoena, he has no standing to object. *See, e.g., Chazin v. Lieberman,* 129 F.R.D. 97 (S.D.N.Y. 1990) ("Ordinarily a party has no standing to seek to quash a subpoena to one who is not a party *unless the party claims some personal right or privilege with regard to the documents sought*."), (emphasis added), *quoting* 9 Wright & Miller, *Federal Practice and Procedure* § 2457 (1971).

[2] Kadi does argue that the list of documents sought is overbroad, impliedly conceding that at least some of the documents are relevant and the proper subject of discovery at some point in the case.

The Subpoena should not be quashed because in its Case Management Order #2, this Court authorized the parties to commence non-party discovery and because the Subpoena seeks evidence that is relevant to plaintiffs' claims.  Moreover, any objection that Kadi had to the Subpoena has been waived by Kadi's failure to object to plaintiffs' previous subpoena, dated April 4, 2004, to Citibank seeking precisely the same documents as those requested in the June Subpoena.  Nor is Kadi entitled to a protective order limiting the scope of the documents to be produce under the Subpoena.  The document schedule annexed to the Subpoena is not overbroad – under the Federal Rules of Civil Procedure, plaintiffs are entitled to broad discovery of relevant information.  The documents subpoenaed call for no more.  Kadi's motion should be denied in its entirety.

## **PROCEDURAL BACKGROUND**

In this action, plaintiffs seek compensation for injuries and deaths suffered in the attacks of September 11, 2001 from the sponsors of terrorism who provided material support to al Qaeda and bin Laden and enabled them to carry out their murderous attacks on the United States.  Defendant Yassin Al Kadi was named in the Complaint in 2002; he was served by publication in the *International Herald Tribune* on May 23, May 30, June 6, June 13, June 20, and June 27, 2003 and in *Al Quds al-Arabi* on June 3, June 11, June 18, June 24, July 12, and July 14, 2003.  *See* Affirmation of Justin Kaplan ("Kaplan Aff."), Exhibit 1.  On September 12, 2003, Thomas Steindler of the law firm McDermott Will & Emery filed a Notice of Appearance on behalf of Kadi.  *See* Kaplan Aff., Exhibit 2.  Kadi then sought numerous extensions of his time to answer or otherwise respond to the Third Amended Complaint.  Eventually, Kadi and plaintiffs agreed that Kadi's response would be filed no later than July 16, 2004.

On April 5, 2004, the *Burnett* plaintiffs served a subpoena addressed to "Citibank" (the "April subpoena").  The April subpoena called for production of documents in 137 categories set forth on a schedule. That schedule was identical to the schedule annexed to the June Subpoena at issue in this motion, including identical requests referencing Kadi and bank accounts associated with certain of Kadi's financial transactions.  The April subpoena called for Citibank to produce documents on May 10, 2004, at the offices of Hanly Conroy Bierstein & Sheridan LLP in New York.  On April 6, 2004, plaintiffs sent a copy of the April subpoena to all counsel, including the lawyers representing Kadi, by email.  *See* Kaplan Aff., Exhibit 3.  Kadi never made any objection to the April subpoena.

Citibank did not seek to quash the April subpoena.  Rather, in recognition of the significance of the evidence plaintiffs seek, Citibank (after obtaining an extension of the May 10 due date) began producing documents in June, 2004.  During the course of production, Citibank alerted plaintiffs that the April subpoena was, technically, not addressed to the right entity, because the subpoena named the bank simply as "Citibank" and not as "Citibank FSB," the correct legal name.  Citibank requested that plaintiffs re-serve the subpoena with the correct name and, on June 23, 2004, plaintiffs complied by serving the Subpoena at issue here.  That same day, plaintiffs once again sent a copy of the subpoena they had served to all counsel, by email.  *See* Kaplan Aff., Exhibit 4.  On July 1, 2003 – nearly three months after service of the original subpoena – Kadi filed this motion to quash the subpoena or, in the alternative, for a protective order.

## ARGUMENT

### I. THE CITIBANK SUBPOENA IS NOT IMPROPER UNDER CASE MANAGEMENT ORDER #2

Kadi argues that the Subpoena is improper under Case Management Order ("CMO") #2, but he misconstrues that order, offering a nonsensical and impractical interpretation. CMO #2, ¶ 17 provides:

> Written discovery and depositions addressed to non-parties and to or from any defendant that has filed an Answer in any of the Individual Actions as to liability issues only may commence immediately.

Because plaintiffs' subpoena is addressed to a non-party, that is, Citibank, it is authorized by the CMO. Kadi relies, however, on the next sentence of paragraph 17, which states that "as to any defendant that has filed a motion to dismiss . . . for lack of personal jurisdiction, merits discovery shall not take place until such jurisdictional motion has been resolved by this Court, except upon application to the Court based on extenuating circumstances." CMO #2, ¶ 17. Kadi contends that this sentence applies to any discovery *concerning* a defendant, not merely to discovery to be had *from* a defendant. Kadi is wrong. His interpretation is unworkable, serves no legitimate purpose, would unjustifiably delay the progress of this action and puts the second sentence of paragraph 17 irretrievably at odds with the first.

Under Kadi's interpretation of CMO #2, plaintiffs may take discovery immediately from non-parties and defendants who have filed Answers, but may not obtain from them information about defendants who have not yet answered the Complaint. This is unworkable. The subpoena in question on this motion illustrates why. Although some of the requests in the Subpoena mention defendant Kadi by name, other requests seek information about bank accounts that plaintiffs have reason to believe were tied to terrorist financing or terrorist activities. For some of these accounts, plaintiffs may know the account number (based on the transaction from which

4

the account number was identified), but do not know who the account-holder is. Kadi's interpretation of CMO #2 would require non-party recipients of subpoenas to determine all of the defendants mentioned in the documents called for by the subpoena and then determine which of those defendants had filed Answers!

This is untenable, especially because the kinds of financial records that plaintiffs seek in the Subpoena are not tangential to their case; they are central to getting at the truth of who financed the September 11 attacks and how it was done. Plaintiffs emphasize that at the heart of their Complaint are allegations about financial transactions akin to money laundering. As explained in a report prepared by the Council on Foreign Relations and quoted at length in the Third Amended Complaint:

> Organizationally, al Qaeda is notably and deliberately decentralized, compartmentalized, flexible and diverse in its methods and targets. The same description applies to its financial network. . . . [A]l Qaeda's financial network is characterized by layers and redundancies. It raises money from a variety of sources and moves money in a variety of manners. . . .However, the most important source of al Qaeda's money is its continuous fundraising efforts. Al Qaeda's financial backbone was built from the foundation of charities, nongovernmental organizations, mosques, web sites, fundraisers, intermediaries, facilitators and banks and other financial institutions that help finance the mujahideen throughout the 1980s.

*Terrorism Financing, Report of an Independent Task Force Sponsored by the Council on Foreign Relations*, 2002, *quoted at* Third Amended Complaint at p. 204. Moreover, as alleged in the Complaint, "[t]he charity Defendants in this action are used as terrorist fronts, to mask money transfers and provide cover for terrorist operatives." 3AC ¶ 153. Kadi is alleged to head one of these terrorist fronts, as alleged in the Complaint (and as set forth in a United States Department of Treasury Press Release on October 12, 2001): "Yasin al-Qadi (heads) the Saudi-based Muwafaq (or "Blessed Relief") Foundation, an al Qaeda front that transfers millions of dollars from wealthy Saudi businessmen to bin Laden." 3AC ¶ 330. Moreover, the Complaint

alleges that "Yassin al-Kadi ran Blessed Relief from 1992 until approximately 1997 *with $15 to $20 million of his own money*, along with contributions from other wealthy associates. Millions of dollars have been transferred to Osama bin Laden and al Qaeda through Blessed Relief." 3AC ¶ 332 (emphasis added).

Banking records, thus, are crucial to this case. Such records demonstrate how money was transferred from individuals to charities to terrorists. Plaintiffs have obtained documents providing information about specific transactions supporting bin Laden, al Qaeda, and various individuals instrumental in plotting al Qaeda's terrorist campaign. Frequently, these documents include the account numbers from which, or to which, transfers were made, but not necessarily the name of the person or persons who owned the accounts. Subpoenas to banks like Citibank that have records of whose accounts were used are crucial to exposing who was behind the financial network that sponsored the September 11 attacks.

Kadi's interpretation of the CMO would entirely hamstring non-party discovery, by requiring plaintiffs and banks to know in advance which defendants would be implicated by banking records relevant to particular transactions and then to withhold evidence behind certain transactions if it pertains to a defendant who has not yet answered. Moreover, Kadi offers this convoluted and cumbersome approach to discovery with no justification whatsoever. He has identified no interests that will be served by requiring the parties to proceed in this absurd fashion.

Moreover, Kadi's interpretation of the CMO would needlessly delay discovery in this case. It would require plaintiffs to issue multiple, successive subpoenas to the same non-party or to forego discovery altogether until all defendants have answered. The Subpoena in question calls for documents in 137 categories; only 14 refer to Kadi by name. (Requests 109, 114, and

117 refer to accounts held by unnamed account holders, but since Kadi does not acknowledge any interest in these accounts, he lacks standing to challenge the requests concerning them.) Kadi would require plaintiffs to forego discovery in the other 123 categories at this time (if plaintiffs are required to wait until all defendants have filed Answers before they seek evidence from non-parties that may pertain to any of the defendants) or subject Citibank to multiple subpoenas (if, every time a defendant answers the Complaint, plaintiffs are required to serve a new subpoena seeking any Citibank records that mention *that* particular defendant). Neither result is justified.

The delay that Kadi seeks is particularly inappropriate in this case. On August 22 of this year, this case will mark its two-year anniversary; on September 11, 2004 the world will mark the third anniversary of the tragedy that gave rise to it. Although plaintiffs have served more than 120 defendants, few of them (approximately two) have filed Answers. Instead, nearly all have sought extensions of their time to respond to the Complaint and then have filed motions to dismiss. Despite the enormous delays that result, plaintiffs readily agreed not to subject a defendant to the burden of responding to merits discovery prior to the filing of that defendant's Answer.[3] Thus, party discovery has barely commenced, even after two years. As a practical matter, Kadi now seeks to delay non-party discovery as well. But discovery requests addressed to third-parties create no burdens for defendants and thus provide no basis for further delay in the discovery process in this two-year old case. Moreover, Kadi himself has delayed responding to the Complaint *more than nine months* since his lawyer filed a notice of appearance in this case. That he now seeks to magnify the effect of that delay by preventing plaintiffs from taking

---

[3] This agreement is now reflected in this Court's Case Management Order, but plaintiffs note that it was included in the proposal submitted by plaintiffs, as well as the one submitted by defendants.

7

discovery from cooperative non-parties provides further illustration of why his proposed interpretation of the CMO would be unjust.[4]

Nor is Kadi's interpretation justified by the language of the CMO. The first sentence of paragraph 17 clearly states that discovery from non-parties may commence now. CMO #2, ¶ 17. Kadi's interpretation of the second sentence – that discovery may not be had from third parties if it relates to defendants who, like Kadi, have not answered the complaint -- undercuts, and indeed contradicts, the first sentence of that paragraph. By contrast, plaintiffs' reading – that the second sentence refers to discovery *from* defendants, not concerning them – harmonizes the two sentences and gives effect to both.

With neither language nor logic nor equity behind it, Kadi's motion to quash the June Subpoena should be denied.[5]

## II.  THE CITIBANK SUBPOENA IS NOT OVERBROAD

Nor is Kadi entitled to a protective order on the basis that the Subpoena is overbroad. At the outset, plaintiffs note that, with respect to any claim of overbreadth, Kadi has failed to comply with the Federal Rules of Civil Procedure and with the individual practice rules of this Court. Although Kadi's lawyer was required to make a good faith attempt to resolve the dispute with plaintiffs' counsel, *see* Fed.R.Civ.P. 26(c); "Practice Before United States District Judge

---

[4] The alternative, requiring non-parties like Citibank to respond to multiple, successive subpoenas, puts an unfair burden on those who are not parties to this case and are not alleged to have committed any wrong. This is both unfair and impractical.

[5] Plaintiffs also note that Kadi waived any objection he might have had to plaintiffs' subpoena to Citibank when he failed to object to the April subpoena, which called for production in May. The document schedule on the April subpoena was identical to the document schedule on the June Subpoena at issue here. The only difference between the two subpoenas (other than the differences of date and signature) is that the April subpoena was addressed to "Citibank," while the later Subpoena is addressed to "Citibank FSB." *See Innomed Labs, LLC v. Alza Corporation,* 211 F.R.D. 237 (S.D.N.Y. 2002) ("Although Rule 45(c)(3)(A)(iv) requires that the motion to

8

Richard Conway Casey" (as amended 11/10/2003), ¶ 3(b), he never attempted to discuss the breadth of the Subpoena with plaintiffs' counsel. Rather, as set forth in the affirmation of Justin Kaplan, Kadi's lawyer asserted only his position that the Subpoena was not authorized by the CMO and asked if plaintiffs would withdraw it. He never asked plaintiffs to narrow the date range of the Subpoena nor to narrow in any other way the scope of the documents sought, nor in any other way indicated to plaintiffs that the scope of the Subpoena was at issue. *See* Kaplan Aff., ¶¶ 2-3. Accordingly, defendant's objection to the scope of the Subpoena is not ripe.

Even if it were, his motion should be denied. Rule 26(b) provides that "[p]arties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. . . ."[6] It is clear that, in interpreting this rule, "[t]he discovery rules are to be given a broad and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark." *Estee Lauder, Inc. v. The Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999). Moreover, "the concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial." *Id.* The Subpoena at issue here is not overbroad because the documents it calls for are relevant and Kadi's proposed limitations would eliminate much, if not all, of the most relevant evidence.

Kadi objects first to the production of documents dating before January 1, 2001 or after September 11, 2001. But Kadi ignores that the September 11 attacks were the culmination of

---

quash be timely without defining what 'timely' is, it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled [discovery].").

[6] Rule 26(c) provides that a court may issue a protective order limiting the scope of discovery "to protect a party or person from annoyance, embarrassment, oppression or under burden or expense." Fed.R.Civ.P. 26(c). Kadi does not claim, however, that the Subpoena should be limited for any of these reasons; he argues only that it is overbroad because it seeks documents not relevant to this case.

9

years of planning. As alleged in the Complaint, "[i]n October of 1999 or earlier, the [Hamburg Cell's] members finalized their terrorist scheme, which called for the use of airplanes in 'jihad' to kill as many 'infidels' in the United States as possible." 3AC ¶ 21.  Moreover, many of the hijackers were trained at terrorist training camps built (and financed) years before and maintained over the years with ongoing financing.  *See* 3AC ¶¶22-23; pp. 210-212.  Thus, the subpoena to Citibank calls for records dating back to 1988—the date generally accepted as the founding of al Qaeda.  If Kadi's financial transfers were used to help build al Qaeda, even in its earliest days, that information is relevant to plaintiffs' claims against him and should be provided.  The dates proposed by Kadi, by contrast, would not only exclude large amounts of relevant evidence, they would exclude evidence from the most critical period, when bin Laden was building his camps and when the Hamburg Cell was planning the September 11 attacks.  Indeed, by January 1, 2001, even flying lessons for some of the hijackers had been completed (and, presumably, paid for).  *See* 3AC ¶¶ 24-26.  Thus, if the bank records called for contained a cancelled check made out directly to Mohammed Atta labeled "for flying lessons to attack U.S.,"[7] Mr. Kadi's proposed narrowing of the subpoena would not call for its production.

Similarly, plaintiffs seek documents about banking transactions after September 11, 2001, because ongoing transactions between Kadi and al Qaeda are relevant to the nature and type of transfers used and may assist in identifying methods of surreptitious funding used even before September 11.

Kadi also seeks to limit the types of documents that should be produced in response to the Subpoena, but the Subpoena should not be narrowed in the manner proposed by Kadi.  As

---

[7] Plaintiffs have no reason to believe that such is the case (nor would such evidence be required, although there can be no dispute it would be relevant).  Rather, as set forth in the Complaint,

alleged in the Complaint, al Qaeda used a complicated system of financial transactions, with layers of redundancies, to hide the trail of terrorist financing. Limiting production to documents concerning withdrawals and transfer only would exclude documents necessary to reconstruct this trail. This is especially true where in-and-out transactions may have occurred primarily to conceal the source and destination of certain funds. Thus, if the Subpoena were narrowed as Kadi proposes, documents showing money transferred to Kadi by al Qaeda members, and transferred out again to support specific al Qaeda efforts, could not be matched. This problem is especially acute because as alleged in the Complaint, defendants acted consciously to conceal the mechanisms of terrorist financing. As noted above, the scope of discovery is properly broad. This Court should not limit discovery of relevant evidence at the outset, especially where the party producing the evidence has not objected and the Court has determined that non-party discovery is appropriate.

## CONCLUSION

For the foregoing reasons, this Court should deny Kadi's motion to quash or for a protective order in its entirety.

Dated: New York, NY  
       July 16, 2004

Respectfully submitted,

/s/_____  
Ronald L. Motley, Esq.  
Jodi Westbrook Flowers, Esq.  
Donald A. Migliori, Esq.  
Michael Elsner, Esq. (ME-8337)  
Ingrid L. Moll, Esq.  
Justin B. Kaplan, Esq.  
MOTLEY RICE LLC  
28 Bridgeside Boulevard  
P.O. Box 1792

---

financing for al Qaeda's operations was carried out in a more indirect fashion. The example is hypothetical only, but illustrates the absurdity of Kadi's proposed narrowing of the Subpoena.

11

Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY  BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone:  (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs

12