**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*   Federal Insurance Co. v. al Qaida
03 CV 06978 (RCC)

### THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO THE MOTION TO DISMISS
### FILED BY ARAB BANK PLC

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ALLEGATIONS AGAINST DEFENDANT ARAB BANK............................... 1

III.   ARGUMENT ...................................................................................................... 4

   A.   Applicable Legal Standards ........................................................................ 4

   B.   The Federal Plaintiffs Have Stated Claims Against Arab Bank and Arab Bank's
       Motion To Dismiss Is Properly Denied ...................................................... 6

   C.   The Federal Plaintiffs Have Adequately Alleged Claims Under the
       Anti-Terrorism and Effective Death Penalty Act ....................................... 7

      1.   The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA
           Pursuant to General Tort Principles .................................................... 7

      2.   Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Based
           Upon Arab Bank's Criminal Violations ............................................. 9

      3.   The Federal Plaintiffs Have Adequately Pled Causation............................ 10

   D.   The Complaint States a Claim Against Arab Bank Under the Torture Victim
       Protection Act ............................................................................................ 12

   E.   The Federal Plaintiffs Have Sufficiently Pled A  RICO Claim Against Arab Bank ........ 13

      1.   The Federal Plaintiffs Have Stated A Claim Under RICO .......................... 14

   F.   The Federal Plaintiffs Have Sufficiently Pled Claims Against Arab Bank
       for Conspiracy and Aiding and Abetting ................................................. 17

   G.   The Federal Plaintiffs Have Adequately Alleged State Common Law Claims............... 18

IV.    CONCLUSION.................................................................................................. 21

## TABLE OF AUTHORITIES

### CASES

Asip v. Nielsen Media Research, Inc.,
    2004 U.S. Dist. LEXIS 2350 (S.D. N.Y. Feb. 18, 2004) ..................................................7

Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters,
    459 U.S. 519 (1983) ..................................................................................................16

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000) .....................................................................................20

Bastein v. Sotto,
    749 N.Y.S.2d 538 (N.Y. App. Div. 2002) ..............................................................19

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) .........................................................................1, 7, 9

Brewer v. Brewer, 34 Fed. Appx. 28, 30 (2d Cir. 2002) ...............................................20

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998) ...................................................................................3, 5

Conley v. Gibson,
    355 U.S. 41 (1957) .......................................................................................................4

Continental Ore Co. v. Union Carbide & Carbon Corp.,
    370 U.S. 690 (1962) ..................................................................................................10

Flatow v. Islamic Republic of Iran,
    999 F. Supp. 1 (D.D.C. 1998) ..................................................................................21

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980) .......................................................................................5

Goff v. Clark,
    755 N.Y.S.2d 493 (N.Y.App. Div. 2003) ...............................................................19

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ....................................................................8, 10, 18

Holmes v. Security Investor Prot. Corp.,
    503 U.S. 258 (1992) ..................................................................................................16

Howell v. New York Post Co., Inc.,
    612 N.E.2d 699 (N.Y. 1993)............................................................20

In re Initial Public Offering Sec. Litigation,
    241 F. Supp. 2d 281 (S.D. N.Y. 2003)...........................................5

Ivancic v. Olmstead,
    488 N.E.2d 72 (N.Y.1985), *cert. denied*, 476 U.S. 1117 (1986) ......................18

LaMarca v. United States,
    31 F. Supp. 2d 110 (E.D. N.Y. 1998) ............................................18

Leatherman v. Tarrant County,
    507 U.S. 163 (1993).....................................................................5

Lerner v. Fleet Bank, N.A.,
    318 F.3d 113 (2d Cir. 2003)...................................................16, 17

Lumbard v. Maglia, Inc.,
    621 F. Supp. 1529 (S.D. N.Y. 1985)............................................10

Merrill Lynch Futures, Inc. v. Kelly,
    585 F. Supp. 1245 (S.D. N.Y. 1984).............................................8

Mortise v. United States,
    102 F.3d 693 (2d Cir. 1996)........................................................20

National Asbestos Workers Medical Fund v. Philip Morris, Inc.,
    74 F. Supp. 2d 221 (E.D. N.Y. 1999) ..........................................16

In re Phillip Servs. Corp. Secs. Litig.,
    2004 U.S. Dist. LEXIS 9261 (S.D. N.Y. May 24, 2004) ....................4

Phillips v. Sun Oil Co.,
    307 N.Y. 328 (N.Y. 1954) ...........................................................18

Pittman by Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998)........................................................18

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    244 F. Supp. 2d 289 (S.D. N.Y. 2003)..........................................13

Rachman Bag Co. v. Liberty Mutual Insurance Co.,
    46 F.3d 230 (2d Cir. 1995)............................................................1

Rich-Taubman Associate v. Stamford Restaurant Operating Co., Inc.,

    587 F. Supp. 875 (S.D. N.Y. 1984)..................................................................................8

Salinas v. United States,
    522 U.S. 52 (1997)........................................................................................................17

Scribner v. Summers,
    84 F.3d 554 (2d Cir. 1996)...........................................................................................18

Simmons v. Abruzzo,
    49 F.3d 83 (2d Cir. 1995) ..............................................................................................4

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2002) .....................................................................................6

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)........................................................................................................5

United States v. Louie,
    625 F. Supp. 1327 (S.D. N.Y. 1985)......................................................................15, 16

United States v. Turkette,
    452 U.S. 576 (1981)......................................................................................................15

Valdan Sportswear v. Montgomery Ward & Co.,
    591 F. Supp. 1188 (S.D. N.Y. 1984)............................................................................19

Von Bulow v. Von Bulow,
    634 F. Supp. 1284 (S.D. N.Y. 1986)............................................................................16

Wahad v. FBI,
    813 F. Supp. 224 (S.D. N.Y. 1993)................................................................................8

Wantanabe Realty Corp. v. City of New York,
    2003 U.S. Dist. LEXIS 21602 (S.D. N.Y., 2003)........................................................18

Whyte v. Contemporary Guidance Servs.,
    2004 U.S. Dist. LEXIS 12447 (S.D. NY. July 2, 2004) ..................................................1

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001)...........................................................................................5

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004)..........................................................................................4, 5

**STATUTES**

18 U.S.C. § 1962(d) ...........................................................................................17

Anti-Terrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq* ..................................7

Fed. R. Civ. P. 8(a)(2) ....................................................................................5, 7

Fed. R. Civ. Procedure 12(b)(6) .............................................................................4

Fed. R. Civ. P. 15(a) .......................................................................................1

N.Y. Est. Powers & Trusts Law § 5-4.1 ......................................................................18

N.Y. Est. Powers & Trusts Law § 11-3.2 .....................................................................19

TVPA, 28 U.S.C. § 1350 ......................................................................................12

USA Patriot Act of 2001, Pub. L. No. 107-056, 115 Stat. 391 (emphasis added)............................2

**MISCELLANEOUS**

Restatement (Second) of Torts § 302........................................................................20

Restatement (Second) of Torts § 876(b) cmt. d..............................................................18

I.       **INTRODUCTION**

The Federal Plaintiffs sued Arab Bank, PLC ("Arab Bank") based on its longstanding role as a financial services provider to, and material supporter of, terrorist organizations including al Qaida.  The Federal Plaintiffs clearly pled these allegations in their First Amended Complaint.  (The "Complaint" or "FAC").  The Federal Plaintiffs allege that Arab Bank knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 attack (the "Attack") was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Federal Plaintiffs' allegations state valid claims against Arab Bank under the Anti-Terrorism Act (the "ATA"), the Torture Victim Protection Act (the "TVPA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and several state common law tort theories.  Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated those events through financial or other means.  Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1021 (7th Cir. 2002).

Therefore, Arab Bank's motion to dismiss must be denied.  In the event, however, that this Court finds the Federal Plaintiffs' First Amended Complaint lacking, leave to amend should be granted.  See **Fed. R. Civ. P.** 15(a); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995). Whyte v. Contemporary Guidance Servs., 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. NY. July 2, 2004).

II.      **ALLEGATIONS AGAINST DEFENDANT ARAB BANK**

The circumstances prompting this lawsuit are undoubtedly familiar to this Court.  On September 11, 2001, nineteen members of the al Qaida terrorist network hijacked four commercial airliners and used those planes as weapons in a coordinated terrorist attack on the World Trade Center complex in New York and the Pentagon in Arlington, Virginia.  The Attack

resulted in the tragic loss of several thousand lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center complex.  FAC ¶¶ 70 & 71.  The Attack was the end-result of over a decade of strategic planning, lavish financial support and extraordinary logistical support of a grand international web of co-conspirators, including the State defendants, the individual defendants, the charity defendants, the bank defendants, and others.   It is beyond dispute that the Attack was a direct, intended and foreseeable product of  this massive conspiracy, spearheaded by the al Qaida movement, to commit acts of international terrorism against the United States, its nationals and allies.

Congress quickly reacted to the Attack and made its message clear:  "All Americans are united in condemning, in the strongest possible terms, the terrorists who planned and carried out the attacks against the United States on September 11, 2001, and in pursuing all those responsible for those attacks *and their sponsors* until they are brought to justice." See USA Patriot Act of 2001, Pub. L. No. 107-056, 115 Stat. 391 (emphasis added).

The Federal Plaintiffs' Complaint plainly asserts that Arab Bank was one of those sponsors. FAC  357-364.  Specifically, the Federal Plaintiffs' Complaint alleges that Arab Bank knowingly maintained accounts that were being used to solicit and transfer funds to terrorist organizations, including al Qaida.  FAC ¶ 362.  In doing so, Arab Bank aided and abetted, conspired with, and provided material support and resources to al Qaida and affiliated foreign terrorist organizations ("FTOs"), associations, organizations or persons.  FAC ¶¶ 66.  Specifically, the Complaint alleges that Arab Bank maintained accounts for many of the charity defendants that operate within al Qaida's infrastructure, including the International Islamic Relief Organization, Muslim World League, World African Muslim Youth, Benevolence International Foundation, Blessed Relief (Muwafaq) Foundation and al Haramain, among

others.  FAC ¶ 360.  Spanish investigators have confirmed that al Qaida transferred money to the Spanish logistical cell that funded the September 11th Attack through Arab Bank. FAC ¶ 359.   It is further alleged that the Kingdom of Saudi Arabia used accounts maintained by Arab Bank to fund al Qaida operations, and as the principal vehicle for supporting Palestinian suicide attacks.  FAC ¶ 360.   Still further, Israeli officials seized funds associated with several accounts maintained by Arab Bank on behalf of known Hamas fronts.  These accounts were identified to Israeli officials by Arab Bank employees, confirming the bank's specific knowledge that accounts it maintained were being used to sponsor terrorist activity.  FAC ¶361. Arab Bank has long known that the accounts it maintained were being used to solicit and transfer funds to terrorist organizations, including al Qaida.  Despite this knowledge, Arab Bank has continued to maintain those accounts.  In doing so, Arab Bank knowingly provided financial services and other forms of material support to al Qaida. FAC ¶ 362.   It is indisputable that Plaintiffs' Complaint alleges that Arab Bank knowingly participated in al Qaida's global conspiracy to commit acts of international terrorism against the United States, its nationals and allies.

Arab Bank asserts that the Complaint fails to allege facts supporting the conclusions that "Arab Bank knowingly and intentionally participated in any wrongdoing" or that "any action or inaction by Arab Bank proximately caused the Attack."  Def.'s Br. at 9.  Yet Arab Bank devotes several pages of its motion to setting forth substantive responses to these very allegations of fact.  Def.'s Br. at 3-5.  By presenting such arguments, Arab Bank belies its own assertion that Plaintiffs' Complaint fails to "create a cause of action against the bank."  Def.'s Br. at 5.  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  Where Arab Bank finds it necessary to defend against the factual allegations in the Plaintiffs' Complaint, Arab Bank concedes that Plaintiffs' Complaint

contains allegations that are comprehensible, specific, and germane.  Therefore, Plaintiffs'
Complaint must survive a Rule 12(b) (6) motion.  See, *supra* "Applicable Legal Standards."

Further, in view of the detailed allegations regarding Arab Bank's role in al Qaida's
global conspiracy to attack the United States, Arab Bank cannot credibly maintain that it is not
sufficiently on notice of the nature of the claims asserted against it.  Indeed, when read as a
whole, and in accordance with the mandates of Rule 8(a)(2), the Complaint sufficiently supports
multiple claims, in that it alleges that Arab Bank knowingly provided material support and
resources to al Qaida, that al Qaida would not have possessed the financial resources, physical
assets, membership base, technological knowledge, communication skills, and global reach
required to conceive, plan and execute the Attack absent the sponsorship of Arab Bank and the
other defendants, and that Arab Bank thus knowingly participated in the conspiracy with the
intent to advance the commission of terrorist attacks against the United States, of which the
Attack was a natural, intended and foreseeable consequence.  FAC ¶¶ 72 & 74.   Plaintiffs have
asserted sufficient allegations against  the defendant to survive a motion to dismiss, and therefore
Arab Bank's motion to dismiss must be denied in its entirety.

## III.   ARGUMENT

### A.   Applicable Legal Standards

Arab Bank moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6), for failure to state a claim.  Such a motion must be denied unless "it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360
F.3d 73, 78 n.8 (2d Cir. 2004); Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995).  Moreover,
"[i]t is elementary that on a motion to dismiss, the Complaint must be read as a whole."  In re
Phillip Servs. Corp. Secs. Litig., No. 98-CIV-0835 (MBM), 2004 U.S. Dist Lexis 9261, at * 32

(S.D. N.Y. May 24, 2004).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  Geisler  v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether the Federal Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them.  Wynder, 360 F.3d at 77.  The Federal Plaintiffs are not required to prove their case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided."  Woodford v. Community Action Agency, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).  Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Wynder, 360 F.3d at 77.  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).  As a judge in this District recently explained, "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."  In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D. N.Y. 2003) (quoting Conley, 355 U.S. at 48).

Consequently, "[a]s the Supreme Court recognized in <u>Swierkiewicz</u>, one clearly written sentence can satisfy Rule 8(a)(2)." <u>Id.</u> at 323.  By way of illustration, one Court of Appeals recently held that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be sufficient to survive a Rule 12(b)(6) motion.  <u>Sparrow v. United Airlines, Inc.</u>, 216 F.3d 1111, 1115 (D.C. Cir. 2002).

> **B.    The Federal Plaintiffs Have Stated Claims Against Arab Bank and Arab Bank's Motion To Dismiss Is Properly Denied**

Arab Bank's motion asserts two arguments: first, that the Complaint fails to allege that "Arab Bank knowingly and intentionally participated in any wrongdoing," and second, that "any action or inaction by Arab Bank proximately caused the Attack." Def.'s Br. at 9.[1]  Arab Bank's motion to dismiss is fatally flawed because it fails to consider the Complaint in its entirety, and, with respect to Count VIII, the RICO Statement that was filed on July 16, 2004, pursuant to Case Management Order No. 2.   The Federal Plaintiffs have alleged that Arab Bank long has known that accounts it maintained were being used to solicit and transfer funds to terrorist organizations, including al Qaida; despite this knowledge, Arab Bank has continued to maintain those accounts; in doing so, Arab Bank knowingly provided financial services and other forms of material support to al Qaida; and that the Attack was a natural, intended and foreseeable product of the conspiracy in which Arab Bank participated.  These allegations in the Federal Plaintiffs' Complaint are more than adequate to provide Arab Bank with fair notice of the claims and the

---

[1]     As an aside, Arab Bank also offers the general proposition that "a bank owes no duty to its non-customers concerning the wrongful acts of a bank customer."  Def.'s Br. at 6-7.   To support this general, but irrelevant,  proposition, defendant cites a string of bank fraud cases. Arab Bank has wholly misread the Complaint.  Nowhere in Plaintiffs' Complaint is there an allegation that Arab Bank defrauded Plaintiffs.  To the contrary, Federal Plaintiffs have alleged that Arab Bank acted as an integrated component of al Qaida's financial and logistical infrastructure, in that it knowingly maintained accounts for individuals and organizations operating within al Qaida's infrastructure, and facilitated the distribution and laundering of such funds.  FAC ¶ 255.  Plaintiffs' Complaint does not assert a fraud claim, and accordingly caselaw to support the proposition that a bank has no liability to a non–customer in a fraud claim is of no moment in this litigation.

grounds upon which they rest.  <u>Asip v. Nielsen Media Research, Inc.</u>, 03-CIV-5866 (SAS), 2004

U.S. Dist. LEXIS 2350, at * 11-12 (S.D. N.Y. Feb. 18, 2004).  To expect or require the Federal

Plaintiffs to set forth every wrongful act of Arab Bank is as unreasonable as it is unnecessary at

this stage of the proceedings.  It simply is not required of notice pleading.  <u>See</u> **Fed. R. Civ. P.** 8

& 12.  Having stated a cognizable claim against Arab Bank, the Federal Plaintiffs are entitled to

conduct discovery before they should be called upon to present their evidence.

> **C.     The Federal Plaintiffs Have Adequately Alleged Claims Under the Anti-Terrorism and Effective Death Penalty Act**[2]

A plaintiff may assert a valid claim under the Anti-Terrorism and Effective Death Penalty

Act, 18 U.S.C. § 2331, *et seq.* (the "ATA") under either of two alternative approaches:  (1)

pursuant to general tort principles, including concerted action theories of liability; or (2) by

demonstrating that the defendant violated the ATA's criminal standards, and that the defendant's

violation was a substantial factor in bringing about plaintiff's injuries.  <u>Boim v. Quranic Literacy

Inst.</u>, 291 F.3d 1000, 1015, 1020 (7th Cir. 2002).  The Federal Plaintiffs have done both.

> **1.     The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Pursuant to General Tort Principles**

In <u>Boim</u>, the Court of Appeals for the Seventh Circuit held that the legislative history of

the ATA evinces a clear intent by Congress to codify general common law tort principles, and to

impose civil liability for acts of international terrorism to the full reaches of traditional tort law.

<u>Boim</u>, 291 F.3d at 1010.  Accordingly, the <u>Boim</u> court specifically embraced the use of

concerted action theories of liability, such as aiding and abetting and conspiracy,  to establish

liability over a defendant under the ATA.  <u>Id.</u> at 1020.

---

[2]     Arab Bank has presented the arguments in it motion to dismiss in the same sequence as the causes of action are pled in Plaintiffs' Complaint.  Federal Plaintiffs, however, will discuss the sufficiency of the ATA claim (Count X) first, since these allegations include assertions of aiding and abetting and conspiracy which are integral to Federal Plaintiffs' other claims.

The elements necessary to establish liability for a defendant's participation in a conspiracy to commit a tort are:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was done pursuant to and in furtherance of the overall scheme.  Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).[3]

Civil liability for aiding and abetting will be imposed where:  (1) the party whom the defendant aids or abets performs a wrongful act that causes injury; (2) the defendant is generally aware of his role in an overall illegal scheme or tortious plan at the time he provides the assistance; and (3) the defendant knowingly provides substantial assistance to the wrongdoer.  Id. at 477.

When read as a whole, the Federal Plaintiffs' Complaint plainly and adequately states claims against Arab Bank under the ATA, pursuant to aiding and abetting and conspiracy theories.  The Complaint alleges that Arab Bank has "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons."  FAC ¶ 66.   The Complaint alleges that the Attack "was a direct, intended and foreseeable product of a larger conspiracy among the defendants, to commit acts of international terrorism against the United States, its nationals and allies."  FAC ¶ 72.  Describing the conspiracy, the Complaint states that it "included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties."  FAC ¶ 73.  The Complaint also sets forth

---

[3]     Although New York law likely controls the vast majority of the Federal Plaintiffs' claims, Halberstam long has been regarded as the leading case on concerted action liability, and the New York courts have repeatedly relied on Halberstam in analyzing conspiracy and aiding and abetting claims.  See Wahad v. FBI, 813 F. Supp. 224, 233 (S.D.N.Y. 1993); Rich-Taubman Assoc. v. Stamford Rest. Operating Co., Inc., 587 F. Supp. 875, 879 n.5 (S.D.N.Y. 1984); Merrill Lynch  Futures, Inc. v. Kelly, 585 F. Supp. 1245, 1254 (S.D.N.Y. 1984).

the consequences of Arab Bank's participation, in that "[a]bsent the material support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack." FAC ¶ 74. Further, the Complaint describes, in reasonable detail, the specific role of Arab Bank in al Qaida's conspiracy to commit terrorist attacks against the United States. See also FAC ¶¶ 357-364.

Read collectively, the foregoing allegations of the First Amended Complaint unambiguously allege that Arab Bank knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the Attack was a direct, intended and foreseeable product of that larger conspiracy. These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

### 2. Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Based Upon Arab Bank's Criminal Violations

The Federal Plaintiffs also have adequately pled claims against Arab Bank under the ATA based upon Arab Bank's violations of the ATA's criminal standards. The Boim court concluded that the ATA's criminal provisions are a clear indication of Congress' intent to deem financial support of a terrorist organization to be itself an act of international terrorism. Boim, 291 F.3d at 1015.

The Federal Plaintiffs have alleged that Arab Bank participated in acts giving rise to liability under the ATA. Specifically, the Federal Plaintiffs have alleged that Arab Bank was an active member of a network established to support terrorists, including al Qaida. See supra part II. Death and destruction in the United States was the well-publicized aim of al Qaida and its

terrorist network.  As is alleged in the Complaint, Arab Bank  knowingly provided financial

services and other forms of material support to the al Qaida terrorist network.  In light of these

allegations, the Federal Plaintiffs have stated a cause of action against Arab Bank pursuant to the

criminal provisions of the ATA.

### 3.   The Federal Plaintiffs Have Adequately Pled Causation

Arab Bank further argues that the Federal Plaintiffs have not adequately pleaded a causal

link between its illicit conduct and the Attack, sufficient to sustain claims under the ATA and

state common law theories.  In making this argument, Arab Bank fundamentally misapprehends

the elements of the Federal Plaintiffs' aiding and abetting and conspiracy theories, and ignores

the allegations of the Complaint.  Under New York law, "those who aid or abet or conspire in

tortious conduct are jointly and severally liable with other participants in the tortious conduct,

regardless of the degree of  their participation or culpability in the overall scheme."  Lumbard v.

Maglia, Inc., 621 F. Supp. 1529, 1536 (S.D. N.Y. 1985).  Consistent with this rule, the causation

analysis in a civil conspiracy action focuses solely on whether the plaintiff's injuries were caused

by "an unlawful overt act performed by *one of the parties* to the agreement."  Halberstam, 705

F.2d at 477 (emphasis added).  Similarly, a plaintiff need only allege that the defendant provided

substantial assistance to the wrongdoer to establish tort liability based on the defendant's aiding

and abetting of the principal tortfeasor.  Id.  Pursuant to these standards, Arab Bank's

participation in al Qaida's conspiracy to commit terrorist attacks against the United States, and

aiding and abetting of that terrorist organization, ties it inextricably to the Attack.[4]  As the

Federal Plaintiffs' injuries are indisputably the direct result of that Attack, the Federal Plaintiffs

---

[4]     The United States Supreme Court has held that in cases that involve alleged conspiracy
among multiple actors involving multiple acts, "plaintiffs should be given the full benefit of their
proof without tightly compartmentalizing the various factual components and wiping the slate
clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by
dismembering it and viewing its separate parts, but only by looking as it as a whole."
Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690 (1962).

have properly and adequately alleged causation.  Accordingly, Arab Bank's causation-based arguments must be rejected.

While unnecessary to establish liability over Arab Bank given the asserted concerted action theories, it should be noted that the Complaint does specifically allege that the Attack would not have been possible absent the sponsorship and support provided by Arab Bank and the other defendants.  According to the Complaint, "[a]bsent the material, support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack."  FAC ¶ 74.  Arab Bank conveniently ignores these and similar allegations of the First Amended Complaint.  For purposes of the present motion, however, the allegations of the Complaint must be accepted as true.

Moreover, the Complaint also adequately alleges that the Attack was a foreseeable product of the conspiracy in which Arab Bank knowingly participated, and of Arab Bank's aiding and abetting of al Qaida.  Indeed, the Complaint unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy.  While it would be improper to test the sufficiency of the evidence in support of that allegation in the context of the present Motion, it should be noted that al Qaida had unequivocally proclaimed its intention to attack the United States, and had in fact done so, on numerous occasions over a period of several years prior to the Attack.  For example, in 1996 and 1998, al Qaida issued *fatwas*, or religious decrees, authorizing attacks against the United States and its citizens.  In the 1998 *fatwa*, issued under the banner "the World Islamic Front for Jihad Against Jews and Crusaders," Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens -- civilian or military -- and their allies everywhere.  FAC ¶ 30.  Just a few months later, al Qaida acted on that threat,

bombing the U.S. embassies in Kenya and Tanzania, leaving 258 people dead and more than 5,000 injured.

As the conduct of terrorist attacks against the United States and its citizens was, for many years prior to September 11, 2001, al Qaida's stated objective, it is absurd to suggest that the Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaida, as Arab Bank is alleged to have done.

### D.   The Complaint States a Claim Against Arab Bank Under the Torture Victim Protection Act

Plaintiffs have alleged facts sufficient to state a cause of action under the TVPA, 28 U.S.C. § 1350.  The Complaint describes in detail how the Islamic charitable system has been utilized to finance and otherwise support illegal al Qaida activities.  FAC ¶¶ 75-252.  Moreover, the allegations specific to Arab Bank state clearly that Arab Bank has knowingly provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad. FAC ¶¶ 357-364.  Given the Complaint's allegations regarding how Arab Bank fostered terrorism and provided financial services and other forms of material support to al Qaida, it can, at the very least, be reasonably inferred for Rule 12(b)(6) purposes that Arab Bank was materially involved in aiding and abetting and/or conspiring with other defendants and with al Qaida in a manner intended to enable and proximately cause acts of violence and international terrorism, including the Attack.  Such conduct clearly violates the law of nations or, alternatively, otherwise constitutes actionable conduct under the TVPA.

Moreover, to sufficiently allege a TVPA cause of action against Arab Bank, the Federal Plaintiffs need not allege that Arab Bank was directly involved in the Attack itself.  Rather, it is sufficient for the Federal Plaintiffs to allege, as they have, that Arab Bank conspired with or aided and abetted other defendants in a violation of the law of nations.  Indeed, federal courts have recognized that TVPA liability can be based on conspiratorial relationships or theories of

aiding and abetting.  Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 320 (S.D. N.Y. 2003).  Here, the Complaint alleges a violation of the law of nations, *i.e.*, the Attack.  Such conduct is actionable under the TVPA.  The Complaint alleges that Arab Bank facilitated, fostered, financed, or otherwise supported terrorists who committed the Attack.  The Complaint alleges Arab Bank acted in collusion with other defendants.  FAC ¶¶ 357-364.  The Complaint alleges an illegal relationship among the defendants and al Qaida.  The Complaint also alleges the Attack could not have been carried out in the absence of financing and logistical support to al Qaida through that relationship.  FAC ¶ 74.

Unquestionably, such allegations satisfactorily set forth the Federal Plaintiffs' claim that Arab Bank conspired with others to facilitate the terrorist activities of al Qaida, aided and abetted, and that those activities resulted in the attack of September 11th.   Pursuant to Rules 8 and 12, the Federal Plaintiffs have sufficiently alleged their claim - that Arab Bank sponsored international terrorism.  FAC ¶¶ 357-364.  The Complaint alleges a vast network of overlapping entities, charities, corporations, banks, state sponsors, and individuals who financed and promoted terrorism and also concealed the involvement of many of the important participants.  Based on the extraordinary circumstances surrounding the events of September 11, 2001 and the complex web of individuals and entities who conspired to commit acts of international terrorism against the United States, it is implausible and unnecessary in notice pleading to require more.  The Complaint when read as a whole sufficiently asserts a claim against Arab Bank under the TVPA.

**E.      The Federal Plaintiffs Have Sufficiently Pled A  RICO Claim Against Arab Bank**

Arab Bank makes the same two-pronged argument in opposition to the Federal Plaintiffs' RICO claim, as it asserts to all the other causes of action:  (1) that the Federal Plaintiffs have failed to allege any wrongdoing on the part of Arab Bank; and (2) that the Federal Plaintiffs have

not alleged any proximate cause between any alleged act by Arab Bank and the Attack, and accordingly Arab Bank asserts Federal Plaintiffs have failed to state a cause of action under Rico. See Def.'s Br. at 16.   For the following reasons, Arab Bank's motion to dismiss as to Count VIII must be denied.

### 1.   The Federal Plaintiffs Have Stated A Claim Under RICO

Arab Bank concedes that Federal Plaintiffs "allege a 1962(a) claim" against the defendant.  See Def.'s  Br. at 15.   In addition, the Federal Plaintiffs' RICO Statement provided pursuant to Case Management Order No. 2, is "deemed an amendment to the Federal Insurance plaintiffs' . . . Amended Complaint, by incorporation by reference."  See Case Mgmt. Order ¶ 14. The RICO Statement was filed on July 16, 2004, subsequent to the filing of defendant's motion to dismiss, so Arab Bank has not yet had the benefit of reviewing it.  Nevertheless, because it is deemed an amendment to the Complaint, the Federal Plaintiffs will not respond to Arab Bank's arguments so much as they will explain why they have, through both the Complaint and the RICO Statement, stated a claim under RICO against Arab Bank.

According to the RICO Statement, the Federal Plaintiffs bring their claims against Arab Bank pursuant to Sections 1962(c) and 1962(d).  The Enterprise, Radical Muslim Terrorism, is comprised of the defendants named in the Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact with complex goals that consist of far more than the desire to perpetrate the acts of racketeering outlined herein.  See RICO Statement ¶ 5.  Rather, Radical Muslim Terrorism utilizes acts of racketeering, including acts of money laundering and other improprieties conducted by Arab Bank, to further its overall common purposes of:  (a) spreading a particularly virulent brand of radical Islam; (b) eliminating Western influences in Islamic countries; and (c) punishing the United States for its perceived support of

Israel, all by sponsoring, supporting and funding acts of terror in the United States.  Id.  Thus, the Federal Plaintiffs have sufficiently pled the existence of an enterprise:  "a group of persons associated together for a common purpose of engaging in a course of conduct" or "an ongoing organization, formal or informal."  United States v. Turkette, 452 U.S. 576, 583 n.5 (1981).

Further, the Federal Plaintiffs also have sufficiently pled Arab Bank's participation in that enterprise. Pursuant to Sections 1962(c),  "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'"  United States v. Louie, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985).  In the Complaint, the Federal Plaintiffs allege that Arab Bank has aided and abetted, conspired with, and provided material support and resources to al Qaida and/or affiliated FTOs, associations, organizations or persons.  FAC ¶ 66.  Arab Bank maintains accounts for many of the charity defendants that operate within al Qaida's infrastructure, including the International Islamic Relief Organization, Muslim World League, World African Muslim Youth, Benevolence International Foundation, Blessed Relief (Muwafaq) Foundation and al Haramain, among others.  The Kingdom of Saudi Arabia uses these accounts to fund al Qaida operations, and as the principal vehicle for supporting Palestinian suicide attacks.  FAC ¶ 360.  Plaintiffs further allege that, Arab Bank has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.  FAC ¶ 363.

Moreover, the Federal Plaintiffs need not plead or prove that a predicate act furthered the purpose for which the organization was founded, but only that it was related to the enterprise. Louie, 625 F. Supp. at 1333.  Thus, the finder of fact must consider not only the actions taken by Arab Bank (in this case, money laundering and other crimes), but also the motivation or intent underlying Arab Bank's criminal activity and the acts' relationship to the enterprise (in this case,

terrorism, which the plaintiffs allege Arab Bank intended to support through money laundering).

Id.

The Federal Plaintiffs also have adequately alleged proximate causation under RICO. This requirement is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003) (citing Holmes v. Security Investor Prot. Corp., 503 U.S. 258, 268 (1992)).  Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is likely imprudent.  National Asbestos Workers Med. Fund v. Philip Morris, Inc., 74 F. Supp. 2d 221, 225 (E.D. N.Y. 1999). This Court's decision "should be guided by a flexible, case-by-case approach."  Id. (citing Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 536-37 (1983) and Holmes, 503 U.S. at 272 n.20.  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  Id.  Further, failure to explain the alleged injury in detail is not fatal.  Von Bulow v. Von Bulow, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986).  Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6).  Id.  The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts."  Id. (citations omitted).

Here, the Federal Plaintiffs allege that they were directly injured in their business and property by Arab Bank's participation in worldwide terrorism as a "fully integrated component of al Qaida's logistical and financial support infrastructure" and by its provision of "material support and resources to al Qaida."  FAC ¶ 226.  Arab Bank has participated in Radical Muslim

Terrorism, and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States, by providing al Qaida with "the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack."  FAC ¶ 74.

The Federal Plaintiffs' damages – injuries, the loss of life and property damage that resulted from Arab Bank's actions -- are not derivative of damage to a third party.  Rather, the Federal Plaintiffs' insureds and assignors were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," *i.e.*, terrorism.  Lerner, 318 F.3d at 124.  Thus, the Federal Plaintiffs have standing to bring claims under RICO.

A conspiracy of this nature is not a simple linear being, but is instead a complex, multi-dimensional web of relationships and intrigue.  The Supreme Court recently addressed the scope of RICO's conspiracy provision, 18 U.S.C. § 1962(d), in Salinas v. United States, 522 U.S. 52 (1997).  That holding establishes that the RICO statute is flexible enough to embrace the complexity of the conspiracy alleged here, and the Federal Plaintiffs' allegations are sufficient, at this stage, to meet their burden.

For all these reasons, therefore, Arab Bank's motion to dismiss Count VIII should be denied.

### F.    The Federal Plaintiffs Have Sufficiently Pled Claims Against Arab Bank for Conspiracy and Aiding and Abetting

Arab Bank alleges that the Federal Plaintiffs have failed to plead facts or circumstances to establish its participation in a civil conspiracy or to establish a claim for aiding and abetting. For the reasons stated in relation to the discussion of the Federal Plaintiffs' ATA claims, see *supra* part C, the Federal Plaintiffs respectfully submit that the Complaint adequately alleges claims under both theories of concerted action liability.

**G.     The Federal Plaintiffs Have Adequately Alleged State Common Law Claims**

Arab Bank challenges the Federal Plaintiffs' claims under New York common law for trespass, wrongful death, survival, assault and battery, and intentional and/or negligent infliction of emotional distress, negligence, and punitive damages.  However, these claims have been sufficiently alleged in the Complaint, as discussed in detail above.

Under New York law, trespass is the "intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996) (*citing* Ivancic v. Olmstead, 488 N.E.2d 72 (N.Y.1985), *cert. denied*, 476 U.S. 1117 (1986)).  "To be liable, the trespasser 'need not intend or expect the damaging consequences of his intrusion[;]' rather, he need only 'intend the act which amounts to or produces the unlawful invasion.'" Phillips v. Sun Oil Co., 307 N.Y. 328, 331 (N.Y. 1954).  As is alleged in the Complaint, Arab Bank assisted and encouraged those who intentionally entered the World Trade Center property to perpetrate the Attack, knowing that the Attack constituted an intrusion.  Under New York caselaw, such allegations support a claim for trespass.  Wantanabe Realty Corp. v. City of New York, 01-CIV-10137 (LAK), 2003 U.S. Dist. LEXIS 21602, at * 16-17 n.31 (S.D. N.Y., 2003) (*citing* Pittman by Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)).

New York law provides that a personal representative of a decedent may maintain a wrongful death action provided the defendant "would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." LaMarca v. United States, 31 F. Supp. 2d 110, 124 (E.D. N.Y. 1998) (*citing* **N.Y. Est. Powers & Trusts Law** § 5-4.1).  As is alleged in the Complaint, Arab Bank is liable to such decedents because it knowingly provided material support to the terrorists who deliberately caused their death.  It is well established that the knowing provision of material support for homicide gives rise to liability for the resulting death. See Halberstam, 705 F.2d. at 483-84 (reviewing case law from a number of jurisdictions, citing the Restatement (Second) of Torts § 876(b) cmt. d, and concluding that five factors should be

taken into consideration when considering whether the defendant offered enough assistance for liability:  the nature of the act encouraged; the amount [and kind] of assistance given; the defendant's absence or presence at the time of the tort; his relation to the tortious actor; and the defendant's state of mind).  In general, New York recognizes that those who aid and abet tortious conduct are jointly and severally liable with other participants, regardless of the degree of their participation or culpability in the overall scheme.  Valdan Sportswear v. Montgomery Ward & Co., 591 F. Supp. 1188, 1191 (S.D. N.Y. 1984).  The Federal Plaintiffs thus have sufficiently alleged the wrongful death claim.

In addition, New York recognizes survival actions "for injury to person or property . . . despite death of person in whose favor or against whom cause of action existed."  **N.Y. Est. Powers & Trusts Law** § 11-3.2.  As is alleged in the Complaint, Arab Bank knowingly provided material support to the terrorists who carried out the Attack.  As is noted above, it is well established that the knowing provision of material support for tortious acts gives rise to liability for the resulting harm.  The Federal Plaintiffs thus have sufficiently alleged the elements of a survival claim for the injuries to persons and property resulting from the Attack.

To sustain a claim for assault under New York law, there must be physical contact placing an individual in imminent apprehension of harmful contact.  Bastein v. Sotto, 749 N.Y.S.2d 538, 539 (N.Y. App. Div. 2002).  A battery, under New York law, consists of an intentional, offensive, wrongful bodily contact.  Goff v. Clark, 755 N.Y.S.2d. 493, 495 (N.Y.App. Div. 2003).  It is beyond dispute that the Attack involved both physical contact placing individuals in imminent apprehension of harmful contact and also intentional offensive, wrongful bodily contact.  As is alleged in the Complaint, Arab Bank knowingly provided material support to the terrorists who carried out the Attack.  As is noted above, it is well established that the knowing provision of material support for tortious acts gives rise to liability

for the resulting harm.  Thus, the Federal Plaintiffs have sufficiently alleged Arab Bank's liability under a theory of assault and battery for the injuries to persons resulting from the Attack.

To state a claim under New York law for intentional infliction of emotional distress, the Federal Plaintiffs must allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress."  Brewer v. Brewer, 34 Fed. Appx. 28, 30 (2d Cir. 2002) (citing Howell v. New York Post Co., Inc., 612 N.E.2d 699, 702 (N.Y. 1993)).  To state a claim for negligent infliction of emotional distress, the Federal Plaintiffs must allege emotional distress caused by "defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety."  Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (citing Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996).

Arab Bank argues that the Complaint does not allege that it intentionally engaged in extreme, intentional, or recklessly outrageous conduct that caused severe emotional distress.  No person reasonably can contend that the Attack was not outrageous, extreme and intentional.  Under notice pleading, the Federal Plaintiffs have stated a claim for intentional or negligent infliction of emotional distress.

Arab Bank contends that it cannot be liable under a negligence theory because, it says, it owed no duty to the Federal Plaintiffs.  Arab Bank's assertion that an individual has no duty to avoid committing acts of murder or intentional destruction of another's property is almost incomprehensible.  As a general principle of tort law, every individual has a duty to exercise reasonable care to avoid physical harm to others' person and property.  See **Restatement (Second) of Torts** § 302.  Without a doubt, Arab Bank had a duty to recognize that its funds were being used to finance killings and destruction of property.  There can be no question that

the violations of law described in the Federal Plaintiffs' Complaint state a claim sounding in both negligence and gross negligence.

Arab Bank also claims that the Federal Plaintiffs are not entitled to punitive damages. Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 32 (D.D.C. 1998). If the Federal Plaintiffs prove their allegations that Arab Bank knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Arab Bank's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

## IV.  CONCLUSION

For the reasons stated above, plaintiffs respectfully request that Arab Bank's Motion to Dismiss be denied in all respects, with prejudice.

Respectfully submitted,

COZEN O'CONNOR

By:  _____
    STEPHEN A. COZEN, ESQUIRE
    ELLIOTT R. FELDMAN, ESQUIRE
    SEAN P. CARTER, ESQUIRE
    MARK T. MULLEN, ESQUIRE
    1900 Market Street
    Philadelphia, PA  19103
    Tel.:  (215) 665-2000
    Fax:   (215) 665-2013

    *Attorneys for Plaintiffs*