**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*    Federal Insurance Co. v. al Qaida
03 CV 06978 (RCC)

**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION TO DISMISS
FILED BY PRINCE MOHAMED AL-FAISAL AL-SAUD**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

## Table of Contents

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL ALLEGATIONS ............................................................................... 1

III. ARGUMENT ...................................................................................................... 3

    A.  The Federal Plaintiffs Have Fulfilled Their Obligations Under the Federal Notice
        Pleading Requirements ................................................................................... 3

    B.  This Court Has Personal Jurisdiction Over Prince Mohamed Under New York's
        Long-Arm Statute and Pursuant to Both the Traditional Due Process Analysis
        and the Modified Due Process Standard for Mass Torts ................................... 5

        1.  Legal Standard. ...................................................................................... 5

        2.  Prince Mohamed Knowingly and Intentionally Participated in a Grand
            Conspiracy to Bring About the Attack, and is Therefore Subject to
            the *In Personam* Jurisdiction of this Court. .................................................. 6

    C.  The Federal Plaintiffs Have Adequately Stated Claims Upon Which Relief Can Be
        Granted Against Prince Mohamed ..................................................................... 13

        1.  Legal Standard. ...................................................................................... 13

        2.  The Federal Plaintiffs Have Adequately Pled Causation ............................. 14

        3.  Prince Mohamed Misconstrues the Allegations Against Him In the Complaint,
            and as a Result, Makes Erroneous Arguments Which Should be Disregarded
            By The Court............................................................................................ 16

        4.  Prince Mohamed's Bank Related Causation Arguments are in Error and
            Should Be Disregarded ............................................................................. 19

IV. CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

Alexander v. Fritzen,
    503 N.E.2d 102 (N.Y. 1986) ................................................................................7

Asahi Metal Industrial v. Superior Court,
    480 U.S. 102 (1987) ...............................................................................9, 10

Ball v. Matallurgie Hoboken-Overpelt S.A.,
    902 F.2d 194 (2d Cir. 1990) .............................................................................5

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) ...................................................................17, 19

Burger King v. Rudzewicz,
    471 U.S. 462 (1985) ...........................................................................8,  9, 10

Calder v. Jones,
    465 U.S. 783 (1984) ...............................................................................9, 10

Cedric Kushner Promotion, Ltd. v. King,
    533 U.S. 158 (2001) ................................................................................21

Chaiken v. VV Publ'g Corp.,
    119 F.3d 1018 (2d Cir. 1997) .........................................................................9

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998) ...............................................................................13

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................................7

Cleft of the Rock Fdn. v. Wilson,
    992 F. Supp. 574 (E.D.N.Y. 1998) .............................................................7, 12

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
    187 F.3d 229 (2d Cir. 1999) ...........................................................................8

Conley v. Gibson,
    355 U.S. 41 (1957) ..........................................................................4, 13, 14

Continental Ore Co. v. Union Carbide & Carbon Corp.,
    370 U.S. 690 (1962) ................................................................................15

Credit Lyonnais Secs. (USA), Inc. v. Acantara,
    183 F.3d 151, 153 (2d Cir. 1999)…………………………………………...15

In re DES Cases,
 789 F. Supp. 552 (E.D. N.Y. 1992) ...............................................................12

DigiGAN, Inc. v. iValidate, Inc.,
 No. 02-CV-420 (RCC), 2004 U.S. Dist. LEXIS 1324 (S.D.N.Y. Feb. 3, 2004) ................5

Dixon v. Mack
 507 F. Supp. 345 (S.D.N.Y. 1980)………………………………...........................12

Donsco, Corp. v. Casper Corp.
 587 F.2d 602 (3d Cir 1978)...........................................................................20

Durante Brothers & Sons, Inc. v. Flushing National Bank,
 755 F.2d 239 (2d Cir. 1985)...........................................................................7

Geisler v. Petrcelli,
 616 F.2d 636 (2d Cir. 1980)..........................................................................13

Halberstam v. Welch,
 705 F.2d 472 (D.C. Cir. 1983) ..............................................................8, 14, 15

IUE AFL-CIO Pension Fund v. Herrmann,
 9 F.3d 1049 (2d Cir. 1993)............................................................................6

In re Initial Public Offering Sec. Litigation,
 241 F. Supp. 2d 281 (S.D.N.Y. 2003).............................................................4

In re Phillip Servs. Corp. Secs. Litig,
 2004 U.S. Dist. LEXIS 9261 (S.D.N.Y May 24, 2004) ......................................13

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,
 456 U.S. 694 (1982)....................................................................................8

International Shoe Co. v. Washington,
 326 U.S. 310 (1945)...................................................................................10

Keeten v. Hustler Magazine,
 465 U.S. 770 (1984)....................................................................................9

Kilduff v. Adams, Inc,
 593 A.2d 478 (Conn. 1991) ..........................................................................20

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
 26 F. Supp. 2d 593 (S.D.N.Y. 1998)................................................................7

Leatherman v. Tarrant County,
 507 U.S. 163 (1993)................................................................................3, 14

Levisohn Lerner, Berger & Langsam v. Medical Taping Systems, Inc.,
    10 F. Supp. 2d 334 (S.D.N.Y. 1998)................................................................7

Lumbard v. Maglia, Inc.,
    621 F. Supp. 1529 (S.D. N.Y. 1985)...............................................................14

Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.,
    264 F.3d 32 (2d Cir. 2001)..............................................................................9

Merrill Lynch Futures, Inc. v. Kelly,
    585 F. Supp. 1245 (S.D.N.Y. 1984)................................................................8

Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)....................................................................4, 5, 10

Negussey v. Syracuse Univ.,
    1997 U.S. Dist. LEXIS 3853 (N.D.N.Y. Mar. 24, 1997) .................................20

PDK Laboratoriess v. Friedlander,
    103 F.3d 1105 (2d Cir. 1997)..........................................................................6

Pitman v. Grayson,
    149 F.3d 111 (2d Cir. 1998)............................................................................7

Pugh v. Socialist People's Libyan Arab Jamahiriya,
    290 F. Supp. 2d 54 (D. D.C. 2003) ...........................................................10, 11

Rachman Bag Co. v. Liberty Mutual Insurance Co.,
    46 F.3d 230 (2d Cir. 1995).............................................................................14

Rein v. Socialists People's Libyan Arab Jamahiriya,
    995 F. Supp. 325 (E.D. N.Y. 1998) ...........................................................10, 11

Rich-Taubman Associate v. Stamford Restaurant Operating Co., Inc.,
    587 F. Supp. 875 (S.D. N.Y. 1984)................................................................8

Sabo v. Automated Light Technologies, Inc.,
    1994 Conn. Super. LEXIS 1516 (Conn. Super. Jun. 14, 1994) ......................20

Schenker v. Assicurazioni Generali S.P.A., Consolidated,
    2002 U.S. Dist. LEXIS 12845 (S.D. N.Y. July 15, 2002) ................................8

Simon v. Philip Morris, Inc.,
    86 F. Supp. 2d 95 (E.D.N.Y. Jan. 4, 2000) .............................................7, 9, 12

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)...............................................................................3, 13, 14

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,
    241 F.3d 135 (2d Cir. 2001)....................................................................................9

Ushodaya Enterprises, Ltd. v. V.R.S. International, Inc.,
    63 F. Supp. 2d 329 (S.D.N.Y. 1999)....................................................................20

Wahad v. FBI,
    813 F. Supp. 224 (S.D. N.Y. 1993)........................................................................8

Whyte v. Contemporary Guidance Servs.,
    2004 U.S. Dist. LEXIS 12447 (S.D.N.Y. Jul. 2, 2004) ....................................14

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001)..................................................................................13

Wynder v. McMahon
    360 F.3d 73 ..................................................................................................13, 14

## STATUTES

Anti-Terrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq* .................................17

Fed. R. Civ. P. 8(a) ....................................................................................3, 4, 14, 16

Fed.R.Civ.P. 15(a) ................................................................................................14

Foreign Sovereign Immunities Act, 29 U.S.C. §§ 1330, 1602 *et seq* .............................................5

Racketeering Influeced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq* ......................21

Federal Rule of Civil Procedure 12(b)(2) ....................................................................1, 2, 5

Federal Rule of Civil Procedure 12(b)(6) .................................................................13, 19

N.Y. CPLR § 302(a)(2)........................................................................................7

I.      **INTRODUCTION**

Defendant Prince Mohamed Al-Faisal Al-Saud ("Prince Mohamed") has moved to dismiss the Federal Plaintiffs' First Amended Complaint ("Complaint" or "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(2) for want of personal jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In doing so, however, Prince Mohamed ignores and oversimplifies the factual allegations made against him in the Complaint, as well as the applicable substantive and procedural law.  For the reasons that follow, Prince Mohamed's Motion should be denied in its entirety.

II.     **FACTUAL ALLEGATIONS**

As this Court is undoubtedly aware, on September 11, 2001, a diabolical and catastrophic attack (the "Attack") was unleashed on the innocent American public by terrorists seeking the destruction of American life and property.  These terrorists were successful, killing and injuring thousands of Americans, and bringing about the large-scale destruction of the World Trade Center complex and other property.  Almost three years later, nearly every American knows that Defendant al Qaida carried out the Attack through its operatives.  However, al Qaida did not and could not have done it alone.  The Attack was the end-result of over a decade of strategic planning, and massive financial and logistical support of a global network of charities, banks and wealthy individual sponsors.

The Federal Plaintiffs, who are forty-one insurers who have paid and reserved claims in excess of $4.5 billion as a result of the Attack, have alleged claims against Prince Mohamed in their Complaint based on his participation in the global conspiracy which gave rise to the Attack.  Prince Mohamed was, during the relevant time-period, the chairman of several financial institutions which facilitated the al Qaida operation by laundering significant sums of money to finance the preparations for and carrying out of the Attack.  (FAC ¶¶ 307-309, 312, 472-474.)

Prince Mohamed knew of these terrorist activities, and he supported their ultimate goal.  (FAC ¶¶ 474, 477.)  The Federal Plaintiffs have made sufficient allegations of Prince Mohamed's conduct, which must be taken as true for purposes of this Motion, which demonstrate that he is procedurally and substantively an appropriate defendant in this case.  Those allegations, summarized herein, are adequate under Rule 8 of the Federal Rules of Civil Procedure's notice pleading requirement.

The financial entities over which Prince Mohamed executed ultimate control are Dar al Maal al Islami ("DMI"), Islamic Investment Co. of the Gulf-Bahrain EC ("IICG"), and the Faisal Islamic Bank-Sudan ("FIBS").  (FAC  ¶¶ 307, 309, 312.)  DMI, and hence Prince Mohamed, is the ultimate parent company of IICG, FIBS, and other institutions, all of which have ties to al Qaida and the Attack.  (FAC ¶¶ 308, 311, 473.)  DMI was created in 1981, and has always operated under Islamic law which prohibits the earning or payment of interest and imposes an obligation to contribute and manage *Zakat*, funds intended to be used to promote Islam throughout the world.  (FAC ¶¶ 308, 310.)  Consistent with this obligation, DMI sets aside a percentage of funds from each banking transaction with the institution as *zakat*.  (FAC ¶ 310.)  These *zakat* funds literally disappear from the bank's financial books.  In the case of the financial institutions controlled by Prince Mohamed, they were used to fund radical, anti-American Islamic terrorist organizations.  Id.

DMI is at the center of a complex banking system through which, beginning in the early 1980s, the Kingdom of Saudi Arabia channeled massive financial support for the spread of Wahhabism, the radical sect of Islam which is the keystone of the al Qaida ideology.  (FAC ¶ 307.)  Prince Mohamed, under the cloak of DMI and its subsidiaries, knowingly provided material support and resources to al Qaida with the direct intent to support al Qaida in its campaign to attack America.  (FAC ¶¶ 66, 73.)  Indeed, through the banks he ran, Prince

Mohamed intentionally directed significant funds to al Qaida after al Qaida issued religious decrees, or *fatwas*, authorizing and encouraging attacks against the United States and its military, as well as civilian citizens.  (FAC ¶ 42.)  Prince Mohamed cannot hide behind the institutions which he knowingly directed to aid and abet al Qaida in preparations for the Attack.

Pursuant to Rule 8's notice pleading requirements, the Federal Plaintiffs have made adequate allegations against Prince Mohamed for his role in the grand international conspiracy which led to the Attack.  As such, Prince Mohamed's Motion to Dismiss the Complaint must be denied in its entirety.

## III.   <u>ARGUMENT</u>

### A.   <u>The Federal Plaintiffs Have Fulfilled Their Obligations Under the Federal Notice Pleading Requirements</u>

Rule 8 of the Federal Rules of Civil Procedure provides in relevant part:

> **Claims for relief.**  A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks . . .

Fed. R. Civ. P. 8(a).  Rule 8 provides the "notice pleading" requirement for federal courts.  The Rule imposes a lenient obligation on the pleader, requiring only that the pleader provide its opponent with fair notice of its claim and the grounds upon which that claim rests.  <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).  In the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those prescribed by Rule 8(a).  <u>See</u>, <u>e.g.</u>, <u>Leatherman v. Tarrant County</u>, 507 U.S. 163, 168-69 (1993).  "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial

procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D.N.Y. 2003) (*quoting* Conley v. Gibson, 355 U.S. 41, 48 (1957)). Consequently, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly written sentence can satisfy Rule 8(a)(2)." Id. at 323.

Prince Mohamed's Motion is rife with accusations that the Federal Plaintiffs have not pled sufficient facts to establish either personal jurisdiction or a valid claim against Prince Mohamed. However, Prince Mohamed is mistaken and misunderstands the meaning and intent behind Rule 8(a). The Federal Plaintiffs have provided Prince Mohamed with the requisite notice in alleging that he personally is a part of a vast network that knowingly aided, abetted and conspired to fund the activities of terrorists, including al Qaida, and that a terrorist attack on American soil was a direct, intended and foreseeable product of a larger conspiracy to commit acts of international terrorism against the United States, its nationals and allies. (FAC ¶¶66, 73.)

To expect or require the Federal Plaintiffs to set forth every wrongful act of Prince Mohamed is as unreasonable as it is unnecessary at this stage in the proceedings. It simply is not required in notice pleading. See Fed. R. Civ. P. 8, 12. Having stated a claim against Prince Mohamed, the Federal Plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence. Indeed, as to Prince Mohamed's jurisdictional challenge, only a *prima facie* showing of jurisdiction is required at the pleading stage. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 576 (2d Cir. 1996). Indeed, a plaintiff is entitled to jurisdictional discovery and an evidentiary hearing before having to demonstrate jurisdiction by a preponderance of the evidence. Id. Under the Federal Rules and relevant case law, it is inappropriate and untimely for Prince Mohamed to challenge the substance of the Federal Plaintiffs' good faith allegations which have effectively put him on notice of the claims and

jurisdictional bases against him.  For this reason, Prince Mohamed's Motion to Dismiss should be denied in its entirety.

**B.      This Court Has Personal Jurisdiction Over Prince Mohamed Under New York's Long-Arm Statute and Pursuant to Both the Traditional Due Process Analysis and the Modified Due Process Standard for Mass Torts**

1.      Legal Standard.

Prince Mohamed has brought the instant Motion to Dismiss, in part, under Federal Rule of Civil Procedure 12(b)(2) for want of personal jurisdiction.[1] However, the Federal Plaintiffs have adequately and appropriately pled personal jurisdiction against Prince Mohamed at this stage of the litigation.  In ruling on those parts of Prince's Mohamed's Motion brought pursuant to Rule 12(b)(2), the Court should note that "the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation."  DigiGAN, Inc. v. iValidate, Inc., No. 02-CV-420 (RCC), 2004 U.S. Dist. LEXIS 1324, at *21 (S.D.N.Y. Feb. 3, 2004) (*quoting* Ball v. Matallurgie Hoboken-Overpelt S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  As this Motion was filed prior to discovery, the Federal Plaintiffs must make only a *prima facie* showing of jurisdiction in the allegations of the FAC.  Id. at *23 (*citing* Metropolitan Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

Prince Mohamed has challenged both the Federal Plaintiffs' theory of jurisdiction and the veracity of the factual allegations that support that theory, but this Court need not decide both challenges at the same time.  DigiGAN, No. 02-CV-420 (RCC), 2004 U.S. Dist. LEXIS 1324, at *21 (*citing* Ball, 902 F.2d at 197).  Instead, "the court may provisionally accept disputed factual allegations as true . . . The court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is

---

[1]      Prince Mohamed is a member of the Saudi royal family, but holds no state sovereign role. He therefore does not, and cannot challenge subject-matter jurisdiction under the Foreign Sovereign Immunities Act, 29 U.S.C. §§ 1330, 1602 *et seq.*

necessary for that purpose." Id. (*quoting* Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999)).

In evaluating the Federal Plaintiffs' *prima facie* showing of personal jurisdiction, this Court must construe all pleadings and affidavits in a light most favorable to the Federal Plaintiffs. PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Additionally, the Court must resolve all doubts in favor of the Federal Plaintiffs. Id. Furthermore, the Court must construe the Complaint liberally, and must draw all inferences in favor of the Federal Plaintiffs. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993).

> **2.  Prince Mohamed Knowingly and Intentionally Participated in a Grand Conspiracy to Bring About the Attack, and is Therefore Subject to the *In Personam* Jurisdiction of this Court.**

This Court has personal jurisdiction over Prince Mohamed because he was a willing participant in a conspiracy with direct effects in this jurisdiction, to which Prince Mohamed directed his conspiratorial activities, such that he could reasonably expect to be haled into this Court.

The Federal Plaintiffs have made a *prima facie* showing that Prince Mohamed is subject to personal jurisdiction by virtue of his conduct in the United States. Prince Mohamed argues that the Complaint does not allege any facts showing that he had or has minimum contacts with this forum, since he is a Saudi citizen and has no alleged contacts with the United States. Prince Mohamed's argument is misplaced, as this Court has personal jurisdiction over him because he was a participant in a conspiracy that resulted in catastrophic damages in this judicial district. (FAC ¶¶ 66, 72-74.) In addition, the Second Circuit recognizes a modified due process standard for mass torts in which territorial contacts are replaced with state interests as the constitutional touchstone of *in personam* jurisdiction. Accordingly, this Court has personal jurisdiction over Prince Mohamed.

a.      The New York Long-Arm Statute, CPLR 302(a)(2)

New York's long-arm statute, CPLR 302(a)(2), provides, in pertinent part, that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent commits a tortious act within the state."  N.Y. CPLR § 302(a)(2).  See also Levisohn Lerner, Berger & Langsam v. Medical Taping Systems, Inc., 10 F. Supp. 2d 334, 342 (S.D.N.Y. 1998).  The term "agent" in this context has been read to include co-conspirators.  Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 119 (E.D.N.Y. Jan. 4, 2000); Cleft of the Rock Fdn. v. Wilson, 992 F. Supp. 574, 581 (E.D.N.Y. 1998); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators."  Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998). Accordingly, "[i]t is well-settled that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR 302(a)(2)."  Simon, 86 F. Supp. 2d at 99 (citations omitted); see also Levisohn, 10 F. Supp. 2d at 342; Chrysler Capital, 778 F. Supp. at 1266.

New York law does not recognize the substantive tort of civil conspiracy.  Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985).  Rather, allegations of a conspiracy connect the actions of separate defendants with an otherwise actionable tort. Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986).  Both conspiracy and aiding and abetting create concerted-action liability in New York.  Pitman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998).  The elements necessary to establish liability for a defendant's participation in a conspiracy to commit a tort are:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was

done pursuant to and in furtherance of the overall scheme.  Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).[2]  Civil liability for aiding and abetting will be imposed where:  (1) the party whom the defendant aids or abets performs a wrongful act that causes injury; (2) the defendant is generally aware of his role in an overall illegal scheme or tortious plan at the time he provides the assistance; and (3) the defendant knowingly provides substantial assistance to the wrongdoer.  Id. at 477.  For the reasons set forth above, the allegations of the Complaint adequately state tort claims against Prince Mohamed under conspiracy and aiding and abetting theories, and as such, connect him with the subject transaction, charge him with the acts of and declarations of his co-conspirators, and expose him to joint and several liability.  See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999).  This Court therefore has personal jurisdiction over Prince Mohamed pursuant to the well-recognized conspiracy jurisdiction theory under New York law.

> b.  The "Minimum Contacts" Requirement

The exercise of personal jurisdiction also must be consistent with the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Schenker v. Assicurazioni Generali S.P.A., Consolidated, No. 98-CIV-9186, 2002 U.S. Dist. LEXIS 12845, at * 5-6 (S.D. N.Y. July 15, 2002).  The Due Process Clause has been interpreted to protect individual liberty interests by limiting state courts' exercise of personal jurisdiction over non-resident defendants. See, e.g., Burger King v. Rudzewicz, 471 U.S. 462, 471-72 & n.13 (1985); Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 & n.10 (1982).

---

[2]  Although New York law likely controls the vast majority of the Federal Plaintiffs' claims, Halberstam long has been regarded as the leading case on concerted action liability, and the New York courts have repeatedly relied on Halberstam in analyzing conspiracy and aiding and abetting claims.  See Wahad v. FBI, 813 F. Supp. 224, 233 (S.D. N.Y. 1993); Rich-Taubman Assoc. v. Stamford Rest. Operating Co., Inc., 587 F. Supp. 875, 879 n.5 (S.D. N.Y. 1984); Merrill Lynch  Futures, Inc. v. Kelly, 585 F. Supp. 1245, 1254 (S.D. N.Y. 1984).

Where, as here, the claim arises out of, or relates to, a defendant's contacts with the forum, *i.e.*, the Attack, the plaintiff need only prove specific jurisdiction.  See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 152 (2d Cir. 2001) (*citing* Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1027-28 (2d Cir. 1997)).  Specific jurisdiction is determined by analyzing first whether the claim arises out of or relates to the defendant's contacts with the state, and then whether that defendant purposefully availed himself of the privilege of doing business in the forum so that he reasonably could foresee being haled into the court in the forum state.  See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 38 (2d Cir. 2001).  Jurisdiction on the basis of the in-state effects of intentional out-of-state conduct was held by the Supreme Court to be consistent with the requirement of the Due Process Clause in Calder v. Jones, 465 U.S. 783 (1984).

This first prong of the bifurcated due process test -- "minimum contacts" -- has been described as a "fair warning" requirement.  Simon, 86 F. Supp. 2d at 126.  It "focuses on the relationship among the defendant, the forum and the litigation."  Id. at 126 (*quoting* Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984) (internal quotations omitted)).  The minimum-contacts prong is satisfied by a determination that "the defendant has 'purposefully directed' his activities at the forum."  Burger King, 471 U.S. at 473 (*quoting* Keeton, 465 U.S. at 774).

The second phase of the due process inquiry assesses the reasonableness of exercising jurisdiction once "minimum contacts" have been established.  See Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 114 (1987); Simon, 86 F. Supp. 2d at  100-01.  This analysis entails consideration of five factors: the burden on the defendant; the interest of the forum state in adjudicating the controversy; the interest of the plaintiff in obtaining convenient and effective relief; the interest of the interstate judicial system in obtaining the most efficient resolution of the

dispute; and the shared interest of the states in furthering fundamental social policies.  <u>Asahi</u>, 480 U.S. at 113.

The purpose of both the "minimum contacts" and "reasonableness" prongs of the analysis is to ensure that jurisdiction comports with "traditional notions of fair play and substantial justice. "  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945).  Since these two prongs are interrelated, enhanced proof of one reduces the required showing of the other.  <u>Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. 1996).  Consideration of reasonableness factors can sometimes "establish . . . jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  <u>Burger King</u>, 471 U.S. at 477 (citations omitted).  By the same token, where activities are purposefully directed at the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  <u>Id.</u>

The Supreme Court has held that in an action involving the harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  <u>Calder</u>, 465 U.S. at 788.  Such is the case here.  The Federal Plaintiffs have alleged that Prince Mohamed was engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies.  (FAC ¶¶ 66, 73.)  The actions of the conspirators were expressly aimed at the United States in general and New York in particular such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with United States citizens as passengers, provide support for exercising personal jurisdiction here.[3]

---

[3]   While the defendants in these two cited cases are foreign states, as opposed to individuals, the holdings in both comport with the principle that participation in terrorist activities aimed at the United States permits a court to subject the participants to personal jurisdiction, even in the absence of other minimum contacts with the jurisdiction. <u>Rein v. Socialists People's Libyan Arab Jamahiriya</u>, 995 F. Supp. 325 (E.D. N.Y. 1998) <i>and</i> <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, 290 F. Supp. 2d 54  (D. D.C. 2003).  The analysis

Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998) involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland.  Judge Platt, in the Eastern District of New York, reasoned that the destruction of the airplane, 189 deaths, and significant security concerns for the country and its aviation industry arguably "has had extensive impacts" on the United States.  Id. at 330.

> Any foreign state would know that the United States has substantial interest in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

Id.

In Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp. 2d 54 (D.D.C. 2003), Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States citizens.  The plaintiffs in Pugh alleged that the defendants "conspired to sabotage and succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight."  Id. at 59.  The Court noted the United States' well known, worldwide interest in preventing and punishing terrorism by reference to Congress' adoption of criminal statutes contemplating jurisdiction in the United States over foreign nationals for activities abroad regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil in personam jurisdiction over those same individuals for the same acts.

Id.

---

also enables a New York court to exercise jurisdiction over non-residents who participated in a conspiracy directed at New York.

In addition, of those few New York cases that have directly considered the due process implications of the conspiracy theory of jurisdiction, at least two have found the "purposeful availment" or "purposefully directed" requirement satisfied by a showing that the defendant chose to participate in the conspiracy in question with the knowledge that overt acts in furtherance of it had been or likely would be committed in New York. Simon, 86 F. Supp. 2d at 126-127 (citing Cleft of the Rock Fdn., 992 F. Supp. at 584-85 and Dixon v. Mack, 507 F. Supp. 345, 352 (S.D. N.Y. 1980)).

c.    The Modified Due Process Standard for Mass Torts

Prince Mohamed is also subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in DES and tobacco cases. Simon, 86 F. Supp. 2d at 129-37; In re DES Cases, 789 F. Supp. 552, 574-77 (E.D. N.Y. 1992). In Simon, Judge Weinstein reasoned that, because effective adjudication of mass torts requires the presence of essentially all the plaintiffs and all major defendants, continued reliance on defendant-forum contacts as a precondition for the exercise of personal jurisdiction is being abandoned as detrimental to the fair resolution of mass tort cases. Simon, 86 F. Supp. 2d at 129. Jurisdictional due process has evolved over time from a strict geographical-based doctrine into one rooted in the protection of individual liberty interests. Id. at 130. "New York's interest in this dispute is intense, and the burden on [defendants] is minimal compared to the difficulty of the plaintiffs' litigating in [several hundred jurisdictions throughout the world]." Simon, 86 F. Supp. 2d at 137. [4]

---

[4]    The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation. Simon, 86 F. Supp. 2d at 131. Since New York has an appreciable state interest, in that this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is prima facie constitutional. Id. Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, Prince Mohamed is unable to mount a defense in the forum state

Accordingly, this Court has personal jurisdiction over Prince Mohamed based on New York's Long Arm statute which does not violate constitutional due process.

### C.   The Federal Plaintiffs Have Adequately Stated Claims Upon Which Relief Can Be Granted Against Prince Mohamed

#### 1.   Legal Standard.

Prince Mohamed also moves to dismiss the Complaint as to him for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  However, such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Simmons v.  Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995).  Moreover, "[i]t is elementary that on a motion to dismiss, the Complaint must be read as a whole."  In re Phillip Servs. Corp. Secs. Litig., No. 98-CV-0835 (MBM), 2004 U.S. Dist. LEXIS 9261, at *32 (S.D.N.Y. May 24, 2004). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the FAC but "merely to assess the legal feasibility" of the FAC.  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether the Federal Plaintiffs could prevail, the Court must accept as true the facts alleged in the FAC and draw all reasonable inferences in favor of them.  Wynder, 360 F.3d at 77.  The Federal Plaintiffs are not required to prove their case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided."  Woodford v. Community Action Agency, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).

---

without suffering a relatively substantial hardship.  Id.  Prince Mohamed, a member of the Saudi Royal family with access to nearly limitless wealth, can make no such showing here.

Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Wynder, 360 F.3d at 77. Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993). See also Section III.A., supra.

### 2.        The Federal Plaintiffs Have Adequately Pled Causation

Prince Mohamed challenges each of the Federal Defendant's causes of action based solely on the argument that the Federal Plaintiffs failed to plead that Prince Mohamed's actions have a proximate causal link to the Attack. Inasmuch as he has only challenged causation, the Federal Plaintiffs respond solely to that argument.[5] In making his argument, Prince Mohamed fundamentally misapprehends the elements of the Federal Plaintiffs' aiding and abetting and conspiracy theories, and ignores the allegations of the Complaint. Under New York law, "those who aid or abet or conspire in tortious conduct are jointly and severally liable with other participants in the tortious conduct, regardless of the degree of their participation or culpability in the overall scheme." Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1536 (S.D. N.Y. 1985). Consistent with this rule, the causation analysis in a civil conspiracy action focuses solely on whether the plaintiff's injuries were caused by "an unlawful overt act performed by one of the parties to the agreement." Halberstam, 705 F.2d at 477 (emphasis added). Similarly, a plaintiff

---

[5]        In the unlikely event that the Court agrees with Prince Mohamed and finds the Complaint lacking in detail, leave to amend should be granted. See Fed.R.Civ.P. 15(a); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995); Whyte v. Contemporary Guidance Servs., 03-CV-5544 (GBD), 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D.N.Y. Jul. 2, 2004).

need only allege that the defendant provided substantial assistance to the wrongdoer to establish tort liability based on the defendant's aiding and abetting of the principal tortfeasor.  Id. Pursuant to these standards, Prince Mohamed's participation in al Qaida's conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that terrorist organization, ties him inextricably to the Attack.[6]  As the Federal Plaintiffs' injuries are indisputably the direct result of that Attack, the Federal Plaintiffs have properly and adequately alleged causation. Accordingly, Prince Mohamed's causation-based arguments must be rejected.

While unnecessary to establish liability over Prince Mohamed given the asserted aiding and abetting and conspiracy theories, it should be noted that the Complaint does specifically allege that the Attack would not have been possible absent the sponsorship and support provided by Prince Mohamed and the other defendants.  According to the Complaint, "[a]bsent the material, support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack."  (FAC ¶ 74.)  Prince Mohamed conveniently ignores these and similar allegations of the Complaint in his Motion to Dismiss.  For purposes of the present motion, however, the allegations of the Complaint must be accepted as true.

Moreover, the Complaint also adequately alleges that the Attack was a foreseeable product of the conspiracy in which Prince Mohamed knowingly participated, and of Prince Mohamed's aiding and abetting of al Qaida.  Indeed, the Complaint unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy.  (FAC ¶ 72.)

---

[6]      The United States Supreme Court has held that in cases that involve alleged conspiracy among multiple actors involving multiple acts, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking as it as a whole." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690 (1962).

While it would be improper to test the sufficiency of the evidence in support of that allegation in the context of the present Motion, it should be noted that al Qaida had unequivocally proclaimed its ambition to attack the United States, and had in fact done so, on numerous occasions over a period of several years prior to the Attack.  For example, in 1996 and 1998, al Qaida issued *fatwas*, or religious decrees, authorizing attacks against the United States and its citizens.  (FAC ¶ 42.)  In the 1998 *fatwa*, issued under the banner "the World Islamic Front for Jihad Against Jews and Crusaders," Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens -- civilian or military -- and their allies everywhere.  Id.  Just a few months later, al Qaida acted on that threat, bombing the U.S. embassies in Kenya and Tanzania, leaving 258 people dead and more than 5,000 injured.

As the conduct of terrorist attacks against the United States and its citizens was, for many years prior to September 11, 2001, al Qaida's stated objective, it is absurd to suggest that the Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaida, as Prince Mohamed is alleged to have done.

### 3. Prince Mohamed Misconstrues the Allegations Against Him In the Complaint, and as a Result, Makes Erroneous Arguments Which Should be Disregarded By The Court

Prince Mohamed argues that "there is only one alleged factual basis for the claim against Prince Mohamed: that he purportedly chaired a bank in Sudan (FIBS) in which al Qaida 'maintained' accounts that were allegedly used to 'transfer' or 'launder and distribute' funds for al Qaida's 'operations' and 'terrorist attacks.'"  See Def's. Br. at p.18.  Prince Mohamed is incorrect in his analysis of the Complaint, wholly ignores the liberal notice pleading requirements of the Federal Rules of Civil Procedure and fails to read the Complaint in its entirety.  Fed. R. Civ. P. 8(a); Section III.,A., *supra*.  The Federal Plaintiffs pled far more than one "alleged fact." Indeed, the Federal Plaintiffs, as has been noted, adequately alleged that Prince Mohamed engaged in a conspiracy to support, aid and abet al Qaida by knowingly

providing material support and resources to al Qaida.  (FAC ¶ 66, 73, 472.)  Through his operation and control of DMI, Prince Mohamed directed *zakat* funds to al Qaida and knowingly providing critical financial and logistical support to al Qaida for a period of many years.  (FAC ¶ 477.)

Erroneously relying on his misperceptions and misreading of the Complaint, Prince Mohamed argues that the Complaint does not, and somehow should, allege that "accounts" from FIBS were a cause of the Attack.  See Def's. Br. at 19.  In support of his argument, Prince Mohamed misconstrues a Seventh Circuit case addressing the Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq.* (the "ATA"), which actually supports the Federal Plaintiffs' adequately pled claims.  See id., *citing* Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002).

The ATA imposes direct civil liability on anyone who "knowingly provides material support or resources for foreign terrorists organizations."  18 U.S.C. § 2331, *et seq.*  See also Boim, 291 F.3d at 1015-16.  "Material support" refers to the *type* of support provided (*i.e.*, financial support), rather than whether such support is substantial or considerable.  Id.  Boim also confirms that a plaintiff may also assert a valid claim against a defendant under the ATA pursuant to general tort principles, including aiding and abetting and conspiracy theories of liability.  Id. at 1020.  The Federal Plaintiffs have effectively pled Prince Mohamed's participation in the global conspiracy to commit international acts of terrorism for the purpose of bringing about death and property destruction to Americans, the direct effect of which was the Attack.

When read as a whole, the Complaint plainly and adequately states claims against Prince Mohamed under the ATA, pursuant to aiding and abetting and conspiracy theories.[7]  At the

---

[7]     Prince Mohamed's liability under the aiding and abetting and conspiracy theories is not limited to the ATA.  While the Federal Plaintiffs can and will defend *each* of their claims against

threshold, the Complaint alleges that Prince Mohamed has "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." (FAC ¶ 66.)  Further, the Complaint alleges that the Attack "was a direct, intended and foreseeable product of a larger conspiracy among the defendants, to commit acts of international terrorism against the United States, its nationals and allies." (FAC ¶ 72.)   Describing the conspiracy, the Complaint states that it "included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties." (FAC ¶ 73.)  The Complaint also sets forth the consequences of Prince Mohamed's participation, in that "[a]bsent the material support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack." (FAC ¶ 74.)  Thus, the Complaint  describes, in reasonable detail, the specific role of Prince Mohamed in furthering the conspiracy to support al Qaida in its self-proclaimed global jihad to commit terrorist attacks against the United States.  (See also FAC ¶¶ 308-312; 472-474; 477.)

Read collectively, the foregoing allegations of the Complaint unambiguously allege that Prince Mohamed knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the Attack was a direct, intended and foreseeable product of that larger conspiracy.  These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

---

Prince Mohamed, he has only moved to dismiss on grounds of proximate causation and has only relied on an ATA analysis to support his unfounded arguments.

Under the ATA, Prince Mohamed's provision of material support and services to al Qaida was a proximate cause of the Attack.  The <u>Boim</u> court explained the causal link under the ATA:

> [T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.  Moreover, the organizations, businesses and nations that support and encourage terrorist acts are likely to have reachable assets that they wish to protect.  The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply funds to the persons who commit the violent acts.

<u>Boim</u>, 291 F.3d at 1021.  The Federal Plaintiffs have adequately pled that Prince Mohamed provided and/or directed such support.  Under a Rule 12(b)(6) standard, this is sufficient, and the Federal Plaintiffs are properly permitted to proceed to the discovery phase of the litigation to obtain additional information and documents.  For this reason, Prince Mohamed's Motion to Dismiss must be denied.

      4.     <u>Prince Mohamed's Bank Related Causation Arguments are in Error and Should Be Disregarded</u>

Finally, in what appears to be a "last-ditch effort" to obtain dismissal of the claims against him, Prince Mohamed argues that he is not liable to the Federal Plaintiffs because: (1) banks cannot be held liable for the torts of their depositors; and (2) Prince Mohamed, as a chairman of the financial institutions in question, is not liable for the tortious or illegal conduct of the institutions themselves.

Prince Mohamed incorrectly assumes that the Federal Plaintiffs have sued him on the basis of the acts of the financial entities such as DMI and FIBS, and therefore states that he cannot, as a chairman, be sued for the torts of the banks.  He is wrong on both counts.  As has repeatedly been noted, the Complaint adequately sets forth allegations that Prince Mohamed, as an individual, was a co-conspirator with al Qaida and aided and abetted al Qaida in bringing

about the Attack.  (FAC ¶¶ 66.)  He did so in his capacity as an officer of these entities, directing that these entities maintain accounts, launder significant sums of money and provide *zakat* funds to al Qaida and the known "charities" through which it raised the necessary financial resources to carry out the Attack.  (FAC ¶¶  308-312, 472-474, 477.)   By using the financial institutions in question as vehicles through which he directed his conspiratorial activity, Prince Mohamed committed torts independent of the banks under various statutes and in violation of common law duties as has been pled by the Federal Plaintiffs.

Numerous state and federal courts throughout the United States have recognized that an officer of a corporation may be sued in his or her individual capacity in certain circumstances. This Court has held that "a corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort."  Ushodaya Enterprises, Ltd. v. V.R.S. International, Inc., 63 F. Supp. 2d 329, 341-42 (S.D.N.Y. 1999) (Cedarbaum, J.) (*citing* Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978)).  See also Negussey v. Syracuse Univ., 95-CV-1827, 1997 U.S. Dist, LEXIS 3853, at *18 (N.D.N.Y. Mar. 24, 1997) (supervisors individually liable for discrimination under § 1981 if personally involved in the discriminatory conduct; supervisors also individually liable for personal involvement in discrimination under New York's Human Rights Law); Sabo v. Automated Light Technologies, Inc., No. 0110800, 1994 Conn. Super. LEXIS 1516, at *4 (Conn. Super. Jun. 14, 1994) ("A president or director of a corporation may be held individually liable for the fraudulent misrepresentations he or she made while acting on behalf of a corporation, regardless of whether facts exist that constitute grounds to pierce the corporate veil.") (*citing* Kilduff v. Adams, Inc., 593 A.2d 478 (Conn. 1991) ("It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation is liable.")).

The Supreme Court of the United States determined that in a civil action brought pursuant to the Racketeering Influeced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), a statute under which the Federal Plaintiffs have sued Prince Mohamed in the instant action, "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities, due to its different legal status."  Cedric Kushner Promotion, Ltd. v. King, 533 U.S. 158, 163 (2001).  The Court elaborated:

> Linguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual . . . capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a corporation.

Id.

> The Court has held that RICO both protects a legitimate "enterprise" from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which "unlawful . . . activity is committed."  A corporate employee who conducts the corporation's affairs through an unlawful RICO "pattern . . . of activity" uses that corporation as a "vehicle" whether he is, or is not, its sole owner.

Id. at 164-65 (internal citations omitted).

Based on the well-pleaded allegations in the Complaint, and the foregoing authority, there is no basis for Prince Mohamed's argument that he cannot be sued because of his role as chairman of the banks in question.  Indeed, because he used his position as chairman to conspire with and aid and abet al Qaida, he is personally liable regardless of the liability of the banks.

Prince Mohamed also offers the general proposition that "banks are *not* responsible for assuring that their customers are good people, or for policing how their customers use the money in their accounts."  Def.'s Br. at 19.  To support this general, but irrelevant,  proposition, Prince

Mohamed cites a string of bank fraud cases.  See Def.'s Br. at 20, n. 27.  Prince Mohamed has

wholly misread the Complaint.  Nowhere in the Complaint is there an allegation that Prince

Mohamed or the banks over which he is or was a chairman defrauded the Federal Plaintiffs.  To

the contrary, the Federal Plaintiffs have alleged that Prince Mohamed acted as an integral

component of al Qaida's financial and logistical infrastructure by knowingly providing critical

financial and logistical support to al Qaida for a period of many years, and by facilitating DMI

and FIBS in their material sponsorship of al Qaida.  (FAC ¶¶ 66, 474, 477.)   The Federal

Plaintiffs' Complaint does not assert a fraud claim, and accordingly, caselaw to support the

proposition that a bank has no liability to a non–customer in a fraud claim is of no moment in

this litigation.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Federal Plaintiffs respectfully request that Prince

Mohamed's Motion to Dismiss be denied in all respects, with prejudice.


Respectfully submitted,

COZEN O'CONNOR

By:   _____/s/_____
     STEPHEN A. COZEN (SC 1625)
     ELLIOTT R. FELDMAN (EF 8111)
     SEAN P. CARTER (SC 0636)
     MARK T. MULLEN (MM 2384)
     1900 Market Street
     Philadelphia, PA  19103
     Tel.:  (215) 665-2000
     Fax:   (215) 665-2013

     Attorneys for the Federal Plaintiffs