UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC) (ECF CASE) |
| This document relates to:<br><br>THOMAS BURNETT, *et al*,<br><br>v.<br><br>AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.* | 03 CV 9849 (RCC) |

**DEFENDANT YASSIN ABDULLAH AL KADI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA SERVED ON CITIBANK FSB**

Thomas P. Steindler (TS-6620)
Stanton D. Anderson (SA-1511)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 756-8000

*Attorneys for Defendant
Yassin Abdullah Al Kadi*

Dated: July 23, 2004

Ignoring the plain language of Case Management Order No. 2 (the "CMO"), plaintiffs concoct several spurious grounds to oppose the motion of defendant Yassin Abdullah Al Kadi[1] for a Protective Order quashing the subpoena *duces tecum* issued by the *Burnett* Plaintiffs to Citibank FSB on June 23, 2004 (the "Citibank Subpoena") to the extent that it seeks documents "as to" Mr. Kadi.[2]  Rooted neither in law nor a plausible interpretation of the facts at issue, plaintiffs' arguments fail.  Mr. Kadi's motion accordingly should be granted.[3]

## I. The CMO Prohibits Discovery Of Bank Records "As To" Defendants With Pending Motions To Dismiss

Plaintiffs' central argument is that the CMO permits discovery of bank records relating to a defendant, like Mr. Kadi, who has a pending motion to dismiss.  Plaintiffs claim that postponing such discovery until the Court determines whether it actually has jurisdiction over such defendants is inconsistent with the language of the CMO and is "unworkable."  This argument is wrong for several reasons.

The CMO makes plain that plaintiffs *may not proceed* with non-party discovery "as to" any defendant with a pending motion to dismiss.  CMO paragraph 17 states, in pertinent part:

> Written discovery and depositions addressed to non-parties and to or from any defendant that has filed an Answer in any of the Individual Actions as to liability issues only may commence immediately.  *As to any defendant that has filed a*

---

[1] Mr. Kadi is referred to as "Yassin Qadi" in the Citibank Subpoena.
[2] A copy of the Citibank Subpoena is attached as Exhibit A to the Declaration of Thomas P. Steindler dated July 1, 2004 (the "Steindler Decl."), which was submitted with the motion.
[3] As a threshold matter, plaintiffs' contention that Mr. Kadi lacks standing to object to the subpoena is completely without merit.  The subpoena *on its face* establishes  Mr. Kadi's standing, as it identifies Mr. Kadi by name in connection with particular bank accounts.  Contrary to plaintiffs' assertion, Mr. Kadi's standing does not require that these bank accounts be owned by him personally, but turns on his indisputable privacy interest in the records sought regardless of ownership.  See *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990)(defendants had standing to move to quash subpoenas issued to banks seeking "records relating to defendants or members of their family" because defendants had personal privacy rights in the records sought, even of family members); *see also Sierra Rutile Ltd. v. Katz*, 1994 U.S. Dist. LEXIS 6188, at *6 (S.D.N.Y. May 11, 1994)(non-parties had "a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoenas"); *Carey v. Berisford Metals Corp.*, 1991 U.S. Dist. LEXIS 3776, at *22 (S.D.N.Y. Mar. 28, 1991)(plaintiff's "contention that he ha[d] a privacy interest in the bank records sought by [defendant] is sufficient to give him standing to contest the propriety of the discovery").

*motion to dismiss* on grounds of immunity from suit (based on the Foreign Sovereign Immunities Act or diplomatic immunity) or *for lack of personal jurisdiction, merits discovery shall not take place until such jurisdictional motion has been resolved by this Court,* except upon application to the Court based on extenuating circumstances. (Emphasis added).

This language on its face prohibits discovery from non-party banks "as to" defendants with pending motions to dismiss. While the first sentence permits discovery "to or from" any defendant (that has filed an Answer), the second sentence *prohibits* discovery "[a]s to" any defendant that has filed a motion to dismiss. Plaintiffs ignore the critical distinction between the phrases "to or from" in the first sentence, and "as to" in the second sentence. They apparently interpret the second sentence as if it is identical to the first, prohibiting only discovery "to or from" a defendant that had filed a motion to dismiss. But this reading flatly ignores the actual words used by the Court.

To be sure, the Citibank subpoena was not directed to Mr. Kadi, and thus if the second sentence had been written to preclude discovery *from* a defendant with a pending motion to dismiss, then the Citibank subpoena would be permissible as to Mr. Kadi. But despite plaintiffs' tortured interpretation, the second sentence is *not* written that way. It instead uses language that is importantly different from the first sentence, broadly prohibiting discovery "as to" defendants who have filed motions to dismiss, and not only discovery "to or from" such defendants. For obvious reasons, plaintiffs attempt to construe the second sentence to prohibit only discovery *from* a defendant with a pending motion (Plaintiffs' Opp. Br. at 8), but this most decidedly is *not* what the CMO says. As such, there can be no serious question that the CMO prohibits discovery against a non-party such as Citibank to the extent that such discovery seeks material "as to" a defendant who has filed a motion to dismiss.

The absurdity of plaintiffs' position is more starkly revealed as applied to the subpoenas which the Federal Insurance plaintiffs issued in March and April 2004 to Riggs Bank for records

- 2 -

relating to the Saudi Embassy, HRH Prince Bandar Bin Sultan Bin Abdullaziz, his wife, and other diplomats and members of the Saudi royal family.[4] Under plaintiffs' interpretation of the CMO, this set of discovery requests would be allowed to proceed notwithstanding the fact that the target defendants are entitled to sovereign and diplomatic immunity and have filed motions to dismiss on these grounds. The CMO, which was entered on June 15, 2004 -- three weeks after the Saudi Embassy, Prince Bandar, et al. filed their motion for protective order -- makes crystal clear that such discovery of bank records relating to defendants with pending motions to dismiss *cannot* proceed, except under extenuating circumstances not present here.

The CMO's prohibition on discovery of bank records "as to" defendants who have moved to dismiss makes perfect sense. If the Court dismisses a defendant on grounds of sovereign immunity, diplomatic immunity, or lack of jurisdiction, then discovery as to that defendant would be unwarranted. Here, if the Court grants Mr. Kadi's motion and dismisses him from the case, then discovery of bank records which relate to Mr. Kadi would be wholly inappropriate. The procedure established in the CMO recognizes this fact, and provides that no discovery shall proceed "as to" a party with a pending motion to dismiss, whether directly from that party or from non-parties, until the motion is resolved and it is determined that the defendant is properly in the case. Surely this procedure protects and advances the interests of justice and judicial efficiency in a case of this scope.

Plaintiffs' contrary claim that this approach is "unworkable" is completely without merit. Specifically, it is difficult to see how successive subpoenas issued as the Court resolves motions

---

[4] *See* Memorandum In Support Of Motion For Limited Appearance Of The Royal Embassy Of Saudi Arabia, HRH Prince Bandar Bin Sultan Bin Abdullaziz, HRH Princess Haifa Al-Faisal, Ahmed A. Kattan, And Abdul Rahman I. Al-Noah To Move For A Protective Order, dated May 24, 2004. These subpoenas were ultimately withdrawn, but the Saudi Embassy, Prince Bandar, etc. moved for a protective order based on plaintiffs' representation that they intended to re-issue the subpoenas at a later date.

to dismiss would be "unduly burdensome." Moreover, even if the Court were to permit ongoing discovery of bank records relating to defendants with pending motions to dismiss, it is hardly likely that plaintiffs would only issue a single subpoena to any given bank. As plaintiffs develop their case, new information is likely to emerge pertaining to the bank accounts and financial transactions of various defendants. This new information presumably will lead plaintiffs to issue additional, successive subpoenas. In any event, the inevitable fact that there may be successive subpoenas to the same bank can hardly be considered "unworkable" or unduly burdensome. Even with the subpoena at issue, Citibank appears to be making a rolling production, meaning that the calls of this subpoena are being treated as if they were, in effect, successive subpoenas. The notion that it is "unworkable" for plaintiffs to issue additional subpoenas for bank records relating to defendants who are ultimately kept in the case is bizarre.

Equally baseless is plaintiffs' argument that Mr. Kadi's interpretation of the CMO "would require the non-party recipients of subpoenas to determine all of the defendants mentioned in the documents called for by the subpoena and then determine which of those defendants had filed Answers." Opp. Br. at 5. Plaintiffs are simply wrong; the banks would not be required to make this determination. On the contrary, the determination should be made by the plaintiffs in the first instance, and if, through inadvertence or otherwise, plaintiffs were to include requests for bank records relating to a defendant with a pending motion to dismiss, then that defendant would move for a protective order and to quash the subpoena as it pertains to him, as Mr. Kadi has done here. Again, there is nothing "unworkable" about this approach.[5]

---

[5] Plaintiffs appear to suggest that Mr. Kadi is seeking to quash the entire subpoena directed to Citibank, and/or that plaintiffs are required "to wait until all defendants have filed Answers before they seek evidence from non-parties that may pertain to any of the defendants." Opp. Br. at 7. That is not the case. Mr. Kadi seeks only to quash those portions of the Citibank subpoena which pertain to him, and there is no reason why the other calls of the subpoena would be barred in the absence of objections from other defendants.

## II. The Citibank Subpoena Is Overbroad

Assuming (contrary to fact) that plaintiffs were entitled to discovery of bank records relating to Mr. Kadi, the Citibank subpoena is impermissibly overbroad. The subpoena seeks bank records relating to Mr. Kadi that date back to 1988. There is no conceivable justification for discovery dating back 13 years prior to September 11, 2001. In the 1980s, Osama bin Laden was a leader of the mujahideen in their war against the Soviets in Afghanistan. The United States Congress passed a joint resolution in support of the mujahideen in 1986 (S.J. Res. 365, 99th Cong., 100 Stat. 756 (1986)), and the U.S. government provided military and logistical support to the mujahideen through 1991.[6] It was not until February 23, 1998 that bin Laden issued his *fatwa* announcing his intention to kill American civilians. *The 9/11 Commission Report*, at 47 n.1, available at www.9-11commission.gov (last visited July 23, 2004). Osama bin Laden did not authorize the September 11 attacks until late 1998 or early 1999. *Id*. at 149. The United States Government, moreover, did not designate al Qaeda as a foreign terrorist organization until 1999. 64 Fed. Reg. 55, 112 (Oct. 8, 1999). Plaintiffs' subpoena, therefore, is overbroad by at least a *decade*.

At bottom, plaintiffs must prove that financial contributions made by the defendants were proximately related to the September 11, 2001 attacks. There is no conceivable set of circumstances in which bank records from 1988 – when Osama bin Laden was still a mujahideen -- are likely to lead to admissible evidence of a proximate relationship to the September 11 attacks. Cognizant of these facts, Judge Robertson indicated, in his first opinion in the *Burnett*

---

[6] *See* James A. Baker and Boris D. Pankin, *US-Soviet Joint Statement on Afghanistan* (Sept. 13, 1991), in *Dep't of State Dispatch*, September 16, 1991, available at http://dosfan.lib.uic.edu/ERC/briefing/dispatch/1991/html/Dispatchv2no37.html (last visited July 22, 2004).

case, what he considered a relevant time period for discovery in his discussion of the allegations again Al-Haramain Islamic Foundation:

> It is properly alleged that al Qaeda committed a wrongful act that caused injury to the plaintiffs and that Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism . . . in the year 2001, a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

*Burnett, et al. v. Al Baraka Investment and Development Corp.*, 274 F. Supp. 2d 86, 105 (2001).

As Judge Robertson implicitly recognized, it cannot be the case that every financial contribution ever made to al Qaeda after 1988 is relevant to this case. Indeed, were that true, then the United States government would potentially bear complicity because it supported the freedom fighters in Afghanistan through 1991. Given that the September 11th attacks were not approved until late 1998 or early 1999, this timeframe would appear to be the outside relevant date.

### III. Mr. Kadi Did Not Waive His Right To Object To The Citibank Subpoena

Plaintiffs' argument that Mr. Kadi waived his right to object to the Citibank subpoena because he did not object to an earlier subpoena, dated April 4, 2004, to "Citibank" is also without merit. Plaintiffs admit that the April 4, 2004 subpoena served upon "Citibank" was defective in that it was "not addressed to the right entity" and did not bear "the correct legal name" "Citibank FSB." Opp. Br. at 3. It is beyond dispute that a defective subpoena cannot trigger a party's obligation to object. When a non-defective subpoena was finally served, Mr. Kadi responded promptly.

Further, and of more practical importance, the "notice" of the original defective subpoena was circulated by e-mail to all counsel on April 6, 2004 by a Loretta Warnock, an individual who does not appear to be a lawyer and in any event is not listed as counsel on any of plaintiffs'

papers. Compounding Ms. Warnock's obscurity is the fact that she sent the e-mail without identifying a subject matter in the reference line of the e-mail. Thus, the e-mail message bore only a date and the unfamiliar name of "Loretta Warnock." Without reference to the MDL 1570 or at least some subject matter to identify the contents or purpose of the e-mail, it was indistinguishable from the dozens of spam e-mail messages counsel receive every day, many of which, if opened, contain damaging viruses. Thus, even assuming, *arguendo*, that a defective subpoena could be a predicate for a waiver argument, the circulation of the defective subpoena via this e-mail cannot be deemed sufficient notice for purposes of a waiver argument.

Finally, even if this Court does determine that Mr. Kadi's motion is untimely, the court has discretion to consider the motion. *See Grigsby & Assocs. v. Rice Derivative Holdings, L.P.*, 2001 U.S. Dist. LEXIS 16112, at *11 (S.D.N.Y. Sept. 21, 2001); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996).[7] Mr. Kadi requests that the Court do so.[8]

---

[7] Counsel for Citibank has assured undersigned counsel that Citibank will not produce any documents responsive to the contested calls of the subpoena pending resolution of the instant motion. *See* Second Declaration of Thomas P. Steindler, at ¶ 5.

[8] Plaintiffs baselessly accuse the undersigned counsel of failing to comply with this Court's "meet and confer" obligations. As Plaintiffs acknowledge, prior to filing the instant motion undersigned counsel telephoned one of plaintiffs' lawyers, Justin Kaplan, Esquire, advised him that Mr. Kadi intended to file a motion for protective order and to quash, and asked for plaintiffs' position with regard to the motion. Second Declaration of Thomas P. Steindler, at ¶ 2. Mr. Kaplan indicated that he would consult with his colleagues and get back with an answer. *Id.* He called back later the same day and advised that plaintiffs would oppose the motion. *Id.* After Mr. Kaplan had indicated that plaintiffs would oppose the motion, the undersigned received a letter from plaintiffs' lead counsel, Ronald L. Motley, indicating that he had just returned from a trip to Europe and would discuss Mr. Kadi's impending motion request with "those in our group vested principally with legal matters related to discovery." *Id.* at ¶ 3. Mr. Motley stated that he should "be able to have you a written response by next Wednesday or Thursday," six days later. Undersigned counsel telephoned Mr. Kaplan immediately following the July 4 holiday and indicated that if Mr. Motley or others wished to discuss the motion (which had by then been filed, based on Mr. Kaplan's representation), we would be happy to discuss it. *Id.* at ¶ 4. Despite this second offer to meet and confer, neither Mr. Motley nor any other plaintiffs' counsel ever called, and their only further communication on this subject was a request for an extension of time for plaintiffs to file their opposition brief, to which we consented. *Id.*

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Kadi's opening brief, the Court should grant Mr. Kadi a protective order and quash the portions of the Citibank subpoena that relate to him.

                                Respectfully submitted,

                                MCDERMOTT WILL & EMERY LLP

                        By:  /s/ Thomas P. Steindler
                                Thomas P. Steindler (TS-6220)
                                Stanton D. Anderson (SA-1511)
                                600 Thirteenth Street, N.W.
                                Washington, D.C. 20005
                                (202) 756-8000

                                *Attorneys for Defendant*
                                *Yassin Abdullah Al Kadi*

Dated: July 23, 2004