THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————
                                                    )
IN RE: TERRORIST ATTACKS ON        )        03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                          )
—————————————————————)
Relates to:                                             )
                                                    )
Thomas Burnett, *et al.*,                        )        03 CV 5738 (RCC)
                                                    )        03 CV 9849 (RCC)
v.                                                      )
                                                    )
Al Baraka Investment & Development  )
Corp., *et al.*                                        )
—————————————————————)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANT SAMI OMAR AL-HUSSAYEN

Joshua L. Dratel (JLD 4037)                David Z. Nevin (DN2615)
Marshall A. Mintz (MAM 6157)           Scott McKay (SM3530)
JOSHUA L. DRATEL, P.C.                     Dean Arnold (DA6178)
14 Wall Street, 28th Floor                     NEVIN, BENJAMIN & MCKAY LLP
New York, NY 10005                           303 West Bannock
Telephone: 212-732-0707                     P.O. Box 2772
Facsimile: 212-571-6341                      Boise, ID 83701
                                                    Telephone:  208-343-1000
                                                    Facsimile: 208-345-8274

*Attorneys for Defendant Sami Omar Al-Hussayen*

July 23, 2004

**TABLE OF CONTENTS**

Table of Authorities ................................................................. ii

I.  Introduction ...................................................................... 1

II.  Background ...................................................................... 1

III.  Argument ....................................................................... 2

A.  The Court Lacks Personal Jurisdiction over Mr. Al-Hussayen ............................ 2

    i.  Plaintiffs Fail to Allege Specific Facts Connecting Mr. Al-Hussayen With the Forum ...... 3
    ii.  Plaintiffs Fail to Make a Prima Facie Showing of a Conspiracy ....................... 3
    iii.  Plaintiffs Fail to Make a Prima Facie Showing of Aiding and Abetting ................ 5
    iv.  Assertion of Personal Jurisdiction Over Mr. Al-Hussayen Violates Due Process ........ 6

B.  The Court Should Dismiss the Third Amended Complaint Because the Plaintiffs Fail
    to State a Claim Upon Which Relief Can be Granted ...................................... 7

    i.  Plaintiffs' Allegations Consist of Legal Conclusions and Opinions Contradicted
      by the Attached Documents ........................................................ 7
    ii.  Plaintiffs Allege Activities Protected by the First Amendment That Cannot
      Subject Mr. Al-Hussayen to Liability ............................................... 9
        a.  Freedom of Association ....................................................... 9
        b.  Freedom of Religion ......................................................... 10
        c.  Freedom of Speech .......................................................... 11
        d.  Plaintiffs' Claims are Barred by the First Amendment ...................... 13
    iii.  Congress has Provided Immunity for the Allegations Against Mr. Al-Hussayen ........ 16
    iv.  All Claims Must be Dismissed as Plaintiffs fail to Allege the Necessary Causal
      Link Between Mr. Al-Hussayen's Alleged Acts and the Plaintiffs' Injuries ............ 18
    v.  Count 1 Fails to State a Claim Against Mr. Al-Hussayen ............................ 19
    vi.  Count 2 Fails to State a Claim Under the TVPA ................................... 19
    vii.  Count 3 Fails to State a Claim Under the Anti-Terrorism Act ...................... 20
    viii.  Counts 9 and 10 Fail to State a Claim for Conspiracy or Aiding or Abetting ......... 22
    ix.  Plaintiffs Fail to Allege Mr. Al-Hussayen Conspired with or Aided and Abetted
      Those Who Allegedly Committed the Tort ......................................... 23
    x.  Counts 11, 12, and 13 Fail to State a Claim under RICO ........................... 24
    xi.  All Negligence Claims Fail to State a Claim Upon Which Relief Can be Granted ...... 24

IV.  Conclusion ...................................................................... 25

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16
*Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.*, 206 F.3d 980 (10th Cir. 2000) . . . . . . . 17
*Biton v. Palestinian Interim Self Government*, 310 F.Supp.2d 172 (D.D.C. 2004) . . . . . . . . . . . . . 22
*Blatzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), *cert. denied*, 124 S.Ct. 2812 (2004) . . . . . . . . . . 16
*Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Dev.*, 291 F.3d
    1000 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22
*Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C. 1998) . . . . . . . . . .    . . . . . . . . . . . . . . . . . . 17
*Brandenburg v. Ohio*, 395 U.S. 444 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 16
*Bridges v. Wixon*, 326 U.S. 135 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Buckley v. Valeo*, 424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Caraballo v. United States*, 830 F.2d 19 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) . . . . . . . . . . . . . 11
*Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290 (1981) . . . . . . 9, 11
*Doe v. Islamic Salvation Front*, 993 F. Supp. 3 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Dooley v. United Tech. Corp.*, 786 F. Supp. 65 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Elfbrandt v. Russell*, 384 U.S. 11 (1966)*;* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Employment Division, Department of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990) . . . . . 10, 11
*First Chicago International v. United Exch. Co., Ltd.*, 836 F.2d 1375 (D.C. Cir. 1988) . . . . . . . . . . 4
*GTE New Media Service, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) . . . . . . . . . . . . . 6
*Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 23
*Hanson v. Denckla*, 357 U.S. 235 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
*Healy v. James*, 408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Hess v. Indiana*, 414 U.S. 105 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15
*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 13
*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . 3
*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guineee*, 456 U.S. 694 (1982) . . . . . . . . . . . 3
*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
*Jungquist v. Sheikh Sultan bin Khalifa al Nahyen*, 115 F.3d 1020 (D.C. Cir. 1997) . . . . . . . . . . . 3, 7
*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Knox v. Palestine Liberation Organization*, 306 F.Supp.2d 424 (S.D.N.Y. 2004) . . . . . . . . . . . . . . 22
*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Lamont v. Postmaster General*, 381 U.S. 301 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Mason v. America Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003), *citing DeMuria v. Hawkes,*
    328 F.3d 704 (2d Cir. 2003), *cert. denied*, 124 S.Ct. 2163 (2004) . . . . . . . . . . . . . . . . . . . . 7
*Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*NAACP v. Claiborne Hardware Co.*, 458 U.S. 866 (1982) . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 14
*Noah v. AOL Time Warner*, 261 F.Supp.2d 532 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . 16, 17
*Noto v. United States*, 367 U.S. 290 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*In re PCH Associate*, 949 F.2d 585 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Pittman by Pittman v. Grayson*, 149 F.3d 111 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Polur v. Raffe*, 912 F.2d 52 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*Rapoport v. Asia Elec. Holding Co., Inc.,* 88 F.Supp.2d 179 (S.D.N.Y. 2000) . . . . . . . . . . . . . . 8
*Republic of Panama v. BCCI Holdings (Luxembory) S.A.,* 119 F.3d 935 (11th Cir. 1997) . . . . . . . . 3
*Roberts v. United States Jaycees,* 468 U.S. 609 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Scales v. United States,* 367 U.S. 203 (1961); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14
*Second Amendment Foundation v. United States Conference of Mayors,* 274 F.3d 521
   (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*United States v. Mitlof,* 165 F.Supp.2d 558 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*United States v. Robel,* 389 U.S. 258 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*United States v. Verdugo-Urquidez,* 494 U.S. 259 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATE CASES

*Gentry v. eBay, Inc.,* 121 Cal. Rptr. 2d 703, 99 Cal. App. 4th 816 (2002) . . . . . . . . . . . . . . . . . . 16
*National Westminster Bank USA v. Weksel,* 511 N.Y.S.2d 626 (N.Y. App. Div. 1987) . . . . . . . . 23
*Schneider v. Amazon.com, Inc.,* 31 P.3d 37 (Wash. Ct. App. 2001)) . . . . . . . . . . . . . . . . . . . . . . 16
*Small v. Lorillard Tobacco Co.,* 720 N.E.2d 892, 94 N.Y.2d 43 (N.Y. 1999) . . . . . . . . . . . . . . . 22
*Ungar v. Islamic Republic of Iran,* 211 F.Supp.2d 91 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . 4

## DOCKETED CASES

*Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738 (RCC) . . . . . . . 1
*Caruso v. United States,* No. 01-CV-1207 (DRH), 2002 WL 31870571 (N.D.N.Y.
   Dec. 23, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Perez v. Posse Comitatus,* No. 03-7963, 2004 WL 1435116 (2d Cir. June 28, 2004) . . . . . . . . 9, 13
*Sepenuk v. Marshall,* No. 98-Civ.-1569 (RCC), 2000 WL 1808977 (S.D.N.Y. Dec. 8, 2000) . . . 22
*In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* No. MDL No. 1428 (SAS),
2004 WL 515534 (S.D.N.Y. Mar. 15, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
*Zhu v. Federal Housing Finance Bd.,* No. 03-5297, 2004 WL 1249788 (D.C. Cir. June 7, 2004) . . 3

## FEDERAL STATUTES

18 U.S.C. § 956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
18 U.S.C. § 2331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
18 U.S.C. § 2339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
47 U.S.C. § 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19
Fed.R.Civ.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
H.R. Rep. 104-383 at 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* . . . . . . . . . . . . 24
U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

iii

**STATE STATUTES**

D.C. Code Ann. § 13-422 ................................................................................................................3

D.C. Code Ann. § 13-423 ................................................................................................................3

## I.   Introduction

Generally, plaintiffs allege that Defendant Sami Omar Al-Hussayen is liable for the attacks of September 11, 2001, based upon the publication of writings on websites for which he provided technical assistance, as well as for his association with a U.S.-based religious organization, the Islamic Assembly of North America (IANA), and two Islamic Sheikhs who authored some of the material posted on the websites.  Mr. Al-Hussayen moves to dismiss the Third Amended Complaint (hereinafter "3AC") in its entirety on five separate grounds.  First, the court lacks personal jurisdiction over Mr. Al-Hussayen. Second, Plaintiffs' claims are barred because they seek to impose liability for activities protected by the First Amendment – most notably the right to free speech, but also the rights to associate freely and to the free exercise of religion.  Third, Plaintiffs' claims are barred by a federal statute which provides civil immunity to individuals who place information on the Internet which originates from third parties. Fourth, Plaintiffs fail to allege a sufficient causal link to impose liability.  Fifth, Plaintiffs fail to allege sufficient facts to impose liability under either a conspiracy or aiding and abetting theory.  Alternatively, Mr. Al-Hussayen moves to dismiss Counts 1, 2, 3, 9, 10, 11, 12, and 13 as well as all negligence claims contained in the 3AC because Plaintiffs fail to state a claim upon which relief can be granted.

## II.   Background

Approximately one year after the filing of the 3AC, Plaintiffs added Mr. Al-Hussayen as a defendant in *Burnett, et al. v. Al Baraka Investment & Development Corp., et al.,* No. 03-CV-5738 (RCC); 03 CV 9849 (RCC).  Mr. Al-Hussayen was not mentioned within the 406 pages of the 3AC, and in response to our motion, Plaintiffs filed a More Definite Statement as to Mr. Al-Hussayen (Docket No. 149) (hereinafter referred to as "MDS").  According to the MDS, Plaintiffs' allegations are based almost entirely upon criminal indictments filed in the District of Idaho alleging Mr. Al-Hussayen violated 18 U.S.C. § 2339A by providing "material support" to unidentified violations of 18 U.S.C. § 956 "in such

1

places as Chechnya and Israel."[1]  The indictments do not allege a connection between Mr. Al-Hussayen and al Qaeda or the attacks of September 11, 2001.[2]

*III. Argument*

A.      The Court Lacks Personal Jurisdiction over Mr. Al-Hussayen

"A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction."  *In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* No. MDL No. 1428 (SAS), 2004 WL 515534, at *2 (S.D.N.Y. Mar. 15, 2004).  Moreover, it is the plaintiffs who bear the ultimate burden of establishing, by a preponderance of the evidence, that the Court has jurisdiction over the defendant.  *Id., citing Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999).  In determining whether to assert personal jurisdiction over a defendant, the Court conducts a two-part inquiry:  "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  *Kurz-Hastings,* 175 F.3d at 240 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996)).  When cases are consolidated pursuant to 28 U.S.C. § 1407, the forum state is the district in which the action was originally filed.  *See In re Ski Train Fire in Kaprun, Austria,* 2004 WL 515534, at *3.  As Mr. Al-Hussayen

--------

[1]  On June 10, 2004, following a seven week jury trial, Mr. Al-Hussayen was acquitted of six of the eleven charges stated in the Indictment including all of the terrorism-related charges.  *See* Jury Verdict Form, attached hereto as Exhibit 1.  The jury deadlocked on the remaining charges which were mere immigration charges.  Those charges were later dismissed by the government.  *See* Notice of Dismissal, attached hereto as Exhibit 2.

[2]  There is no connection between Mr. Al-Hussayen and the terrible events of September 11th.  On the contrary, the government prior to commencement of the criminal trial conceded that no such connection existed and agreed that neither Al-Qaeda nor September 11 should even be mentioned in the presence of the jury.  *See* Government Memo of Law, Docket Entry 483, at 3 ("As we have previously stated, 'The government does not intend to assert during trial, that defendant was involved with the events of September 11, 2001, or that he has any direct connection with Usama bin Laden or al Qaeda'").  **The documents in the record in the criminal case are available from the District Court's web site, at http://www.id.uscourts.gov/wconnect/wc.dll?usdc_racer~get_case_jb~3:3-cr-48~%20~All+Documents~on~PUID=RESTRICTED**

2

has been named a defendant in *Burnett,* the laws of the District of Columbia govern whether the Court

can assert personal jurisdiction over him.

    i.    <u>Plaintiffs Fail to Allege Specific Facts Connecting Mr. Al-Hussayen With the Forum</u>

The Plaintiffs assert no facts which would establish personal jurisdiction under the District of

Columbia's general jurisdiction statute, *see* D.C. Code Ann. § 13-422, or its specific jurisdiction (long-

arm) statute.  *See* D.C. Code Ann. § 13-423. .  In fact, the only allegation in the 3AC in regards to

personal jurisdiction is the conclusory statement that "[t]his Court has both personal and subject matter

jurisdiction over the Defendants herein."  3AC at ¶ 1.  Such an assertion is wholly inadequate.  Having

failed to establish personal jurisdiction, Plaintiff's complaint against Mr. Al-Hussayen must be

dismissed.[3]  *See* Fed.R.Civ.P. 12(b)(2).

    ii.    <u>Plaintiffs Fail to Make a Prima Facie Showing of a Conspiracy</u>

Plaintiffs' mere allegations of conspiracy and aiding and abetting in Counts 9 and 10 of the 3AC

fail to comport with the pleading requirements of personal jurisdiction.  It is well established that "'bald

speculation' or a 'conclusory statement' that individuals are co-conspirators is insufficient to establish

personal jurisdiction under a conspiracy theory."  *Jungquist v. Sheikh Sultan bin Khalifa al Nahyen,* 115 F.3d

1020, 1031 (D.C. Cir. 1997) (quoting N*aartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir. 1983),

*cert denied,* 467 U.S. 1210 (1984)).  Instead, Plaintiffs are required to plead with particularity not only the

elements of the conspiracy itself, but the overt acts within the forum that were undertaken taken in

---

[3]  Nor may the plaintiffs assert jurisdiction over Mr. Al-Hussayen under the guise of "nationwide jurisdiction."  In order to invoke the authority of a federal statute which allows for nationwide service of process the plaintiffs must make a "colorable claim."  *See Republic of Panama v. BCCI Holdings (Luxemborg) S.A.,* 119 F.3d 935, 941 (11th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055-57 (2d Cir. 1993).  However, as detailed throughout this memorandum, Plaintiffs' have asserted a claim against Mr. Al-Hussayen which is "so insubstantial, implausible, [and] foreclosed by prior decisions of this [and other] Court[s]," that it is insufficient to impose personal jurisdiction over him.  *See BCCI Holdings,* 119 F.3d at 941.  In addition, even if the Court were to find that nationwide jurisdiction exists under a valid claim against Mr. Al-Hussayen, the Court's assertion of jurisdiction must still comply with due process.  *Id.* at 942; *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty").  As detailed further below, any such assertion of personal jurisdiction would violate due process.

furtherance of the conspiracy. *Id., citing Dooley v. United Tech. Corp.,* 786 F.Supp. 65, 78 (D.D.C. 1992).

Thus, to prevail on a conspiracy-based jurisdictional theory, Plaintiffs must make a prima facie showing of a civil conspiracy. *Second Amendment Found. v. United States Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001); *see also Zhu v. Fed. Hous. Fin. Bd.,* No. 03-5297, 2004 WL 1249788, at *2 (D.C. Cir. June 7, 2004) (affirming dismissal for lack of personal jurisdiction where plaintiff failed to allege "the requisite elements" necessary to establish a civil conspiracy). In the District of Columbia, a civil conspiracy consists of four elements: "1) an agreement between two or more persons; 2) to participate in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; 4) which overt act was done pursuant to and in furtherance of the common scheme." *Id., citing Halberstam v. Welch,* 705 F.2d 472, 477 (D.C. Cir. 1983). Plaintiffs have not made a prima facie showing of the existence of a conspiracy among the named defendants, and have failed to allege sufficient facts from which the Court could infer that Mr. Al-Hussayen entered into an agreement to participate in an unlawful act, or a lawful act in an unlawful manner. *See id.; see also Ungar v. Islamic Republic of Iran,* 211 F.Supp.2d 91, 100 (D.D.C. 2002) ("More broadly, courts focus on whether the parties share a common goal, the degree of interdependence between the alleged participants, and any overlap between participants among the various operations alleged to comprise a single conspiracy").

Plaintiffs allege nothing more than a legal conclusion that the defendants "conspired together." *Id.* However, the Court of Appeals for the District of Columbia has held that such allegations "[do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction."[4] *Id., citing Naartex,* 722 F.2d at 787-88; *see also First Chicago Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375,

---

[4] In this regard, the D.C. Circuit has emphasized that "to infer a conspiracy from indirect evidence, [the Court] must initially look to see if the alleged joint tortfeasors are *pursuing the same goal*–although performing different functions–and are *in contact with one another.*" *Halberstam,* 705 F.2d at 481 (emphasis added). "Additionally, the *length of time* two parties work closely together may also strengthen the likelihood that they are engaged in a common pursuit." *Id.* (emphasis in original). Here, however, the plaintiffs fail to allege any contact between Mr. Al-Hussayen and the supposed tortfeasors. This failure, of course, is because there have been absolutely no such contacts. Such an omission eliminates any discussion regarding the length of time the parties were in contact and compels the conclusion that no conspiracy can be inferred.

1378 (D.C. Cir. 1988) ("There is no concrete evidence in the record indicating that there was a common plan–in the District or anywhere else–to [commit a tort against the plaintiffs] and that [the defendants] conspired and acted to further that plan").

    iii.    <u>Plaintiffs Fail to Make a Prima Facie Showing of Aiding and Abetting</u>

       The aiding and abetting claim fails for the same reason – Plaintiffs have failed to set forth a prima facie showing that Mr. Al-Hussayen aided and abetted those responsible for the injuries suffered. In the District of Columbia, the elements of aiding and abetting include: "1) the party the defendant aids must perform a wrongful act that causes an injury; 2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and 3) the defendant must knowingly and substantially assist the principal violation." *Halberstam,* 705 F.2d at 487-88.   Even if the Court were to find that the allegations of Mr. Al-Hussayen's activities somehow "aided" the alleged tortfeasors in this action, Plaintiffs fail to make a prima facie showing of the second and third elements required to impose aiding and abetting liability.

       Moreover, the allegations against Mr. Al-Hussayen do not describe *substantial* assistance.  The District of Columbia has identified six factors in determining whether an individual's assistance was substantial: 1) the nature of the act encouraged; 2) the amount and kind of assistance given; 3) the defendant's absence or presence at the time of the tort; 4) his relation to the tortious actor; 5) the defendant's state of mind; and 6) the duration of the assistance.  *Id.* at 488.  All of these factors weigh against a finding that Mr. Al-Hussayen's alleged acts were substantial.

       First, the nature of the act encouraged is important because it "dictates what aid might matter, *i.e.,* be substantial." *Id.* at 484.  Although there are numerous imaginable acts which could constitute "substantial assistance" to those who hijacked the four airplanes, no such acts are described in the allegations against Mr. Al-Hussayen, *i.e.,* nothing he is alleged to have done would have actually mattered.  Second, the amount and kind of assistance alleged is not of the nature that would have actually contributed to, or prompted, the tort.  *Id.*  Third, there is no allegation that Mr. Al-Hussayen

was present at the time of the alleged tort. Fourth, there is absolutely no relationship alleged between Mr. Al-Hussayen and the alleged tortfeasors. In fact, there is no allegation that those involved in the September 11th attacks were even aware of Mr. Al-Hussayen or his alleged activities. Fifth, the indictments relied upon by Plaintiffs fail to allege that Mr. Al-Hussayen supported, morally or otherwise, the activities of al Qaeda, including the events of September 11, 2001.[5] Sixth, having not provided any assistance, the duration factor weighs against a finding that Mr. Al-Hussayen provided *substantial* assistance.

iv.    Assertion of Personal Jurisdiction Over Mr. Al-Hussayen Violates Due Process

Moreover, even if Plaintiffs were to allege personal jurisdiction under the District of Columbia's long-arm statute, the Court should find that exercising such jurisdiction over Mr. Al-Hussayen offends traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *see also GTE New Media Serv., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000) ("Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause"). There is no allegation that Mr. Al-Hussayen purposely availed himself of the privilege of conducting activities within the forum, *see Hanson v. Denckla,* 357 U.S. 235, 253 (1958), nor is there any allegation that he "should reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Accordingly, Mr. Al-Hussayen lacks the "minimum contacts" with the forum to establish personal jurisdiction over him. *See Int'l Shoe,* 326 U.S. at 316.

Although Plaintiffs' theory is that Mr. Al-Hussayen somehow encouraged the September 11th attacks, they do not allege, nor is there any evidence that, Mr. Al-Hussayen "authorized, intended, or

---

[5]   In this respect, the plaintiffs purposely omit a significant portion of the Indictment's first sentence in paragraph 55 of the MDS. The original sentence reads: "The purpose of the conspiracy was to create and maintain websites and other internet media, which were intended in part to recruit personnel and raise funds for violent jihad *in such places as Chechnya and Israel.*" Superseding Indictment, *U.S. v. Sami Omar Al-Hussayen,* p. 14, Cr. No. 03-048 EJL (D.C. Idaho) (January 9, 2004) (emphasis added). There is no allegation contained in the indictment that Mr. Al-Hussayen supported al Qaeda or the events of September 11, 2001.

even knew of, the performance of these actions in the District of Columbia, and hence, even if this claim fell within the long-arm statute, the exercise of personal jurisdiction would be inconsistent with due process." *Jungquist,* 115 F.3d at 1032-33, *citing World-Wide Volkswagen,* 444 U.S. at 294.

B.     The Court Should Dismiss the Third Amended Complaint Because the Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted

The standard for dismissal under Rule 12(b)(6) is well established.  The factual allegations of the plaintiffs must be accepted as true and all reasonable inferences must be drawn in thier favor.[6]  *Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir. 2003), *citing DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir. 2003), *cert. denied,* 124 S.Ct. 2163 (2004).  However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness*." Id.* [quoting *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27 (2d Cir. 1989)].

Although the Court is normally limited to the facts alleged in the complaint, it may consider any document attached as an exhibit to the complaint.  *See Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000), *citing* Fed.R.Civ.P. 10(c).  If these documents contradict the allegations of the complaint, the documents control and the Court need not accept the allegations in the complaint as true. *See Rapoport v. Asia Elec. Holding Co., Inc.,* 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000).

In this case, because of the extreme nature of the claims against Mr. Al-Hussayen, "fairness requires *extra-careful scrutiny* of plaintiffs' allegations ... to ensure that ... no inferences are accepted that are unsupported by the facts set out in the 3AC."  *Burnett v. Al Baraka Inv. & Devel. Corp.,* 274 F.Supp.2d 86, 104 (D.D.C. 2003) (emphasis added).

i.     Plaintiffs' Allegations Consist of Legal Conclusions and Opinions Contradicted by the Attached Documents

Plaintiffs misconstrue and mis-characterize previous allegations and other information from various sources in an effort to include Mr. Al-Hussayen as a defendant.  However, even a cursory review

---

[6]  In this respect, Mr. Al-Hussayen makes no admissions as to the Plaintiffs' allegations, but merely accepts them as true, as he must, for purposes of this motion.

of the underlying documents – only some of which were attached as exhibits – reveals that Plaintiffs'
allegations are mere legal conclusions and opinions which are either unsupported or contradicted by the
underlying documents.

The primary documents relied upon by Plaintiffs are two indictments filed against Mr. Al-
Hussayen alleging terrorism charges – of which he was acquitted.  Neither document alleges any
connection between Mr. Al-Hussayen and al Qaeda or the events of September 11, 2001.  In fact, the
terms "al Qaeda" and "September 11, 2001" (or any derivations thereof) are not even contained within
these documents.  Accordingly, Plaintiffs' allegations are contradicted by the very documents used to
support them and need not be accepted as true.[7]

The same is true of the allegations of financial support.  Plaintiffs cite allegations in the
indictments concerning the maintenance of bank accounts in the United States, monetary donations to
IANA, and monetary disbursements to individuals outside the U.S., only to conclude wildly that a
portion of the money *distributed by IANA* was "used to support jihad and the Al Qaeda network."[8]  *Id.*
at ¶ 49.  Such statements are "legal conclusions, deductions, or opinions couched as factual allegations."

Accordingly, all allegations concerning a connection between Mr. Al-Hussayen and al Qaeda are
mere legal conclusions or opinions, and in any event, are contradicted by the underlying documents.
Therefore, the Court need not accept these allegations as true.[9]

---

[7]  The underlying documents allege Mr. Al-Hussayen provided technical assistance to websites which,
*inter alia,* supposedly encouraged others through speech to support Muslims in Chechnya and Palestine.
Plaintiffs mis-characterize these allegations by omitting the geographic limitations of the allegations or simply
replacing them with the term "al Qaeda network."  *See* MDS at ¶¶ 18, 25, 55, 59.  In so doing, Plaintiffs
misrepresent the allegations contained therein and falsely imply that Mr. Al-Hussayen was indicted for
providing material support, including financial support, to al Qaeda.

[8]  In this respect, Plaintiffs have based similar allegations against other defendants upon the fact that
an individual or entity has been designated by the United States as a "foreign terrorist organization" or
"specially designated global terrorist" for materially assisting al Qaeda.  No such designation has occurred
with respect to Mr. Al-Hussayen or IANA, a 501(c)(3) organization still in operation today.

[9]  Several of the citations in their MDS are incorrect, presumably because of their misuse of the
citation *"id."*  In any event, footnote 26 is clearly erroneous – the source cited for this proposition contains no
such information.

ii.    Plaintiffs Allege Activities Protected by the First Amendment That Cannot Subject Mr. Al-Hussayen to Liability

Mr. Al-Hussayen has constitutional rights of association, to the free exercise of the religion of his choosing, and of freedom of speech.[10]  U.S. Const. amend. I.  Plaintiffs, however, seek to hold Mr. Al-Hussayen liable for such protected activities.  When a complaint fails to allege conduct "which would fall outside the realm of constitutionally protected [activities]," it is appropriate for the Court to dismiss the complaint under Rule 12(b)(6).  *See Perez v. Posse Comitatus,* No. 03-7963, 2004 WL 1435116, at *2 (2d Cir., June 28, 2004) (quoting from District Court's unreported decision, which was not appealed);  *see also Turkish Amer. Societies v. ABC,* 620 F. Supp. 56, 58 (S.D.N.Y. 1985) (dismissing complaint on First Amendment grounds).

a.    Freedom of Association

The First Amendment protects the right to associate with others to express beliefs and ideas, a right implicit in the freedoms of speech, assembly, and petition.  *Healy v. James*, 408 U.S. 169, 181 (1972). The purpose of the freedom to associate is to permit individuals to engage in collective efforts to pursue First Amendment protected activity - speech, assembly, petition, and the exercise of religion - and to pursue a wide variety of political, social, economic, educational, religious, and cultural ends.  *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 622 (1980) ("According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority").  Joining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection.  *See Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294-96 (1981) (holding unconstitutional ordinance that placed limitation on contributions to committees formed to support or oppose ballot measures); *Buckley v. Valeo*, 424 U.S. 1, 14-25 (1976)

---

[10]   Although he is an alient, Mr. Al-Hussayen is afforded all Constitutional protections provided by the First Amendment.  *See United States v. Verdugo-Urquidez,* 494 U.S. 259, 271 (1990); *Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 n.5 (1953); *Bridges v. Wixon,* 326 U.S. 135, 148 (1945).

(freedom of association includes right to contribute and pool money together for political organization; limitations are subject to strict scrutiny).  The right to association includes the right to associate with foreign individuals.  *See, e.g.*, *Lamont v. Postmaster General*, 381 U.S. 301 (1965) (allowing U.S. citizen to receive, without interference, mail from foreign communist organizations).

Through a long line of cases, the Supreme Court has repeatedly held that the First Amendment right to association prevents the government from imposing guilt by association alone in the absence of a *specific intent* to further an organization's illegal purposes, if any.  *See Scales v. United States*, 367 U.S. 203, 229 (1961) (holding Smith Act survived constitutional challenge as it required proof of specific intent to accomplish the organization's aim by resorting to violence); *Aptheker v. Secretary of State*, 378 U.S. 500, 511 (1964) (striking down provisions of statute that prohibited members of a Communist organization from applying for or using a passport because the statute, *inter alia,* did not require any specific intent to further the unlawful aims of the organization); *Elfbrandt v. Russell,* 384 U.S. 11, 16 (1966) ("Any lingering doubt that proscription of mere knowing membership, without any showing of 'specific intent,' would run afoul of the Constitution was set at rest by our decision in *Aptheker")*; *United States v. Robel,* 389 U.S. 258, 265 (1967) (striking down a statute which "quite literally establishes guilt by association alone"). This line of Supreme Court authority culminated in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 866, 920 (1982), in which the Court applied these same constitutional protections to the civil arena:

> Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence.  For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a *specific intent to further those illegal aims.*

(Emphasis added) (holding that NAACP leaders could not be held liable for injuries sustained in NAACP-led boycott without proof that they specifically intended to further the unlawful activities); *see also Healy v. James,* 408 U.S. 169, 186 (1972) ("Guilt by association alone ... is an impermissible basis upon which to deny First Amendment rights").

   b.   Freedom of Religion

10

"[T]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990). The "exercise of religion" involves not only belief and profession, but also the performance of physical acts such as assembly and proselytizing. *Id.* At a minimum, the protections of the Free Exercise Clause pertain if one is discriminated against based upon conduct which is undertaken for religious purposes. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).

  c. <u>Freedom of Speech</u>

"[T]he freedom of speech" referred to in the First Amendment includes the right to engage in speech, including controversial or political speech. *See Citizens Against Rent Control*, 454 U.S. at 294 ("the practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process"). Such constitutional protections exist regardless of whether they are accomplished individually or by a group. *Id.* at 296 ("There are, of course, some activities, legal if engaged by one, yet illegal if performed in concert with others, but political expression is not one of them"); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly").

  Moreover, speech that advocates the use of force or the violation of law is protected, and can only lose its constitutional protections "where such advocacy is directed to inciting or producing *imminent lawless action* and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam) (emphasis added); *see also Noto v. United States,* 367 U.S. 290, 297-98 (1961) ("the mere abstract teaching ... of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action"). Thus, advocacy for illegal action – including violence – at some *indefinite time in the future* is protected. *Hess v.*

*Indiana*, 414 U.S. 105, 108-09 (1973) (per curiam) ("since there was no evidence or rational inference

from the import of the language, that his words were intended to produce, and likely to produce,

imminent disorder, those words could not be punished by the State on the ground that they had a

tendency to lead to violence").  Accordingly, because the First Amendment draws "vital distinctions

between words and deeds, between ideas and conduct," speech which encourages others to engage in

illegal conduct "at some indefinite future time" is protected even if such speech "increases the chance an

unlawful act will be committed."  *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) (quoting

*Hess,* 414 U.S. at 108) (ban on virtual child pornography violates First Amendment notwithstanding

government's argument that such pornography "whets the appetite of pedophiles and encourages them

to engage in illegal conduct").

　　　　Even when actual but non-imminent violence occurs in direct response to such advocacy,

neither the speaker nor those who supported such advocacy can be held civilly liable for the criminal

acts of others.  *Claiborne Hardware*, 458 U.S. at 927-29 (barring liability based upon speech where

subsequent violent acts occurred "weeks or months" afterward).  Therefore, as long as the speech is

protected, no liability can be imposed upon those who participated in its dissemination.  *Id.* at 928 ("An

advocate must be free to stimulate his audience with spontaneous and emotional appeals for unity and

action in a common cause. When such appeals do not incite lawless action, they must be regarded as

protected speech. To rule otherwise would ignore the 'profound national commitment' that 'debate on

public issues should be uninhibited, robust, and wide-open'") (quoting *New York Times Co. v. Sullivan,*

376 U.S. 254, 270 (1964)).

　　　　Moreover, such protections are not lost simply because the speech consists of ideologies which

Plaintiffs contend encourage terrorists acts.  Indeed, the legislative history of the federal terrorism

statutes clearly indicates that advocacy on behalf of terrorists or in support of terrorist ideologies is

constitutionally protected.  As noted by Congress:

　　　　The ban [on material support for terrorist activities and organizations] does not restrict

an organization's or an individual's ability to freely express a particular ideology or political philosophy. *Those inside the United States will continue to be free to advocate, think, and profess the attitudes and philosophies of [terrorists].* They are simply not allowed to send material support or resources to those groups, or their subsidiary groups, overseas.

H.R. Rep. 104-383 at 45 (emphasis added). At least two federal appellate courts have expressly recognized the distinction between speech and conduct. In particular, the Ninth Circuit stated:

The [material support] statute does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group. *[Individuals] are even free to praise the groups for using terrorism as a means of achieving their ends.*

\*\*\*

*Plaintiffs here do not contend they are prohibited from advocating the goals of the foreign terrorist organizations, espousing their views or even being members of such groups.* They can do so without fear of penalty right up to the line established in *Brandenburg v. Ohio.*

*Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133-34 (9th Cir. 2000) (emphasis added). Similarly, the Seventh Circuit declared that advocating the philosophies and goals of terrorists is protected by the First Amendment:

Under section 2339B, and indeed under section 2333, [defendants] may, with impunity, become members of [a foreign terrorist organization], praise [the organization] for its use of terrorism, and *vigorously advocate the goals and philosophies of [the organization].*

\*\*\*

We note that Congress *did not attach liability* for simply joining a terrorist organization or *zealously espousing its views.*

*Boim,* 291 F.3d at 1026-27 (emphasis added).

      d.   <u>Plaintiffs' Claims Are Barred by the First Amendment</u>

The Plaintiffs allege nothing more than Mr. Al-Hussayen's association with others, the exercise of his religious beliefs, and assisting in the publication of protected speech – all of which are constitutionally protected. Accordingly, "the First Amendment bars these claims" and the complaint against him must be dismissed. *See Posse Comitatus,* 2004 WL 1435116, at *2 (quoting from District Court's unreported decision, which was not appealed); *see also Turkish Amer. Societies v. ABC*, 620 F. Supp. 56, 58 (S.D.N.Y. 1985) (dismissing complaint on First Amendment grounds).

The Plaintiffs do not contend, nor can they contend, that Mr. Al-Hussayen was an al Qaeda

member, knew of, or was in anyway involved in the events of September 11, 2001.  Nor do they allege that he "authorized, directed, or ratified specific tortious activity" or "gave other specific instructions to carry out violent acts or threats."  *See Claiborne Hardware,* 458 U.S. at 927.  Rather, Plaintiffs allege that Mr. Al-Hussayen was associated with a non-profit religious organization operating openly in the United States, and that he assisted this organization with its websites.  MDS at ¶¶ 5-7.  Plaintiffs do not allege that IANA has an illegal purpose, let alone that Mr. Al-Hussayen had the specific intent to further any such purpose.  *See Scales,* 367 U.S. 203, and its progeny.  Rather, Plaintiffs allege a tangential association between IANA and *other charities* which are alleged to have funneled money to al Qaeda.  MDS at ¶¶ 45-46.  That is, the allegations against Mr. Al-Hussayen are of mere association – albeit two steps removed – an activity which enjoys First Amendment protection.  *See Claiborne Hardware,* 458 U.S. at 908 ("The right to associate does not lose all constitutional protection merely because *some members of the group* may have participated in conduct or advanced doctrine that is itself not protected") (emphasis added).

Plaintiffs allege that Mr. Al-Hussayen is associated with Sheikhs Safar Al-Hawali and Salman Al-Ouda.  MDS at ¶ 25.  However, neither of these individuals are alleged to be members of al Qaeda, nor are they alleged to have participated in the attacks of September 11.  Rather, Plaintiffs allege that the Sheikhs themselves disseminated protected speech, *id.* at ¶¶ 19, 23, 24-25, 27-28, that Mr. Al-Hussayen assisted them in this endeavor, *id.* at ¶¶ 25, 27-29, 59, and such speech included religious edicts or "fatwas" written by these Sheikhs.  *Id.* at ¶¶ 27-28, 59.

As to the remaining allegations, the Plaintiffs merely assert that Mr. Al-Hussayen either published protected speech, assisted others in doing so, or participated in an Internet e-mail group in which he and others posted protected statements.  *See id.* at ¶ 30 (Mr. Al-Hussayen forwarded a poem to his brother); *id.* at ¶¶ 32-33, 55-57, 59 (Mr. Al-Hussayen participated in the dissemination of protected speech over the Internet); *id.* at ¶¶ 36-38 (Mr. Al-Hussayen and others broadcasted protected speech in a Yahoo! Internet e-mail group); *id.* at ¶¶ 6-7, 39, 50 (Mr. Al-Hussayen assisted the IANA websites); *id.* at ¶¶ 40-42 (other individuals posted protected speech on IANA's websites); *id.* at ¶ 47 (protected images

14

found on Mr. Al-Hussayen's computer).  In their assault on the First Amendment, Plaintiffs contend

that Mr. Al-Hussayen provided "material support" through the dissemination of speech, *see, e.g., id.* at ¶

59 ("Sami Al-Hussayen materially supported the Al Qaeda network ... by promoting and distributing

articles and fatwas issued by the spiritual leaders of Al Qaeda Sheiks Ouda and Al-Hawali"), despite the

express declaration of Congress that advocacy cannot form the basis for such a claim.  *See* H.R. Rep.

104-383 at 45.

Plaintiffs all but admit that they seek to impose liability not for Mr. Al-Hussayen's conduct, but

rather, for his thoughts.  *Id.* at ¶ 18 ("Sami Al-Hussayen is committed to the principles of violent jihad.

He actively supports and promotes this ideology by registering and maintaining websites"); ¶ 58 ("Sami

Al-Hussayen ideologically supports global jihad believing that, irrespective of location, Muslims should

support fellow Muslims who are engaging in violent jihad against non-Muslim regimes including the

United States of America").  Such attempts violate the First Amendment.  *See, e.g., Free Speech Coalition,*

535 U.S. at 253 ("First Amendment freedoms are most in danger when the government seeks to control

thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom,

and speech must be protected from the government because speech is the beginning of thought").

Plaintiffs go to great lengths in their attempts to inflame the Court with short excerpts of a

handful of articles posted on the Internet and elsewhere – some alleged to be associated with Mr. Al-

Hussayen, *id.* at ¶¶ 28, 30, 32, 50, 55, some alleged to be associated with the IANA websites, *id.* at ¶¶ 36-

37, 40-42, and others with no connection to Mr. Al-Hussayen or IANA whatsoever.  *Id.* at ¶¶ 10, 14-16,

19-22, 24.  Regardless of such attempts, none of these articles are directed to "inciting or producing

imminent lawless action," nor are they "likely to incite or produce such action."[11]  *See Brandenburg,* 395

---

[11]  For example, the Plaintiffs recite a portion of Osama bin Laden's "Declaration of War...."  MDS,
at ¶ 21.  The full text of this document, which never appeared on any of the websites with which Mr. Al-
Hussayen was allegedly affiliated, was actually published by Time Magazine and is currently available on the
Internet via organizations such as the Public Broadcasting Service (PBS). E.g.,
ww.pbs.org/newshour/terrorism/international/fatwa_1996.html.  Just as these entities cannot be held liable
for publishing protected speech, neither can Mr. Al-Hussayen.

U.S. at 448-49.  At worst, these articles merely advocate for unlawful acts at some indefinite time in the future, and are therefore protected.  *See Hess,* 414 U.S. at 108-09.

Accordingly, all of these articles are protected by the First Amendment and cannot subject Mr. Al-Hussayen – or anyone else – to civil liability.  *See Claiborne Hardware,* 458 U.S. at 927-30.  Therefore, Plaintiffs have failed to state a claim upon which relief can be granted.

iii.    Congress Has Provided Immunity for the Allegations Against Mr. Al-Hussayen

In addition to being protected by the First Amendment, the allegations against Mr. Al-Hussayen are specifically barred by 47 U.S..C. § 230, which provides that "[n]o provider or user of an interactive computer service[12] shall be treated as the publisher or speaker of any information provided by another information content provider."[13]  47 U.S.C. § 230(c)(1).

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone or alter content--are barred.

*Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997).

In order to qualify for § 230's immunity, one need merely demonstrate that he *provides or uses* an interactive computer service, and that the information contained thereon was provided by a third-party for use on the Internet or other interactive computer service.  *Blatzel v. Smith,* 333 F.3d 1018, 1030-35 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 2812 (2004).  Thus, one need not be an Internet Service Provider to qualify for immunity under § 230;  mere operation of a website or moderation of a listserv qualifies as a "user of an interactive computer service."  *Id.* at 1030-31; *see also Gentry v. eBay, Inc.,* 121 Cal. Rptr. 2d

---

[12]  An interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

[13]  An information content provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230 (f)(3).

703, 99 Cal.App.4th 816, 831 & n.7 (2002) (website is an interactive computer service); *Schneider v. Amazon.com, Inc.,* 31 P.3d 37, 40-41 & n.13 (Wash. Ct. App. 2001) (same).  Similarly, providers and users of Internet e-mail groups or chat rooms are protected by § 230's immunity where the information complained of was created by a third-party.  *See Noah v. AOL Time Warner,* 261 F.Supp.2d 532, 538 (E.D. Va. 2003).

Moreover, such immunity is absolute.  For instance, in *Blumenthal v. Drudge,* 992 F.Supp. 44, 49 (D.D.C. 1998), the court stated: "Whether wisely or not, [Congress] made the legislative judgment to effectively immunize providers [and users] of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others."  There, the court found that the defendants were immune even though they had entered into a contract with the author, paid the author a monthly salary, promoted their association with the author, and even reserved editorial rights to the author's work.  *Id.* at 51.  In rejecting the plaintiffs' argument that such involvement effectively removed the defendants from § 230's immunity the court stated, "[b]ut Congress has made a different policy choice by providing immunity even where the interactive service provider has an *active, even aggressive role in making available content prepared by others." Id.* at 52 (emphasis added); *see also Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.,* 206 F.3d 980, 985-86 (10th Cir. 2000) (interactive service provider did not transform itself into an information content provider by deleting portion of original content and was therefore immune from suit under § 230).

Here, Plaintiffs' allegations attempt to impose civil liability upon Mr. Al-Hussayen for the publication of information created by third-parties despite the fact that Mr. Al-Hussayen was the mere user or provider of the interactive computer service upon which it was published.  *See* MDS at ¶¶ 6-7 (alleging Mr. Al-Hussayen registered several websites); ¶ 18 ("Sami Al-Hussayen established, developed and maintained websites for individuals and groups which promote violent jihad and directly support Al Qaeda"); ¶ 25 ("Sami Al-Hussayen assisted in their promotional efforts by creating a medium for them to express their ideology"); ¶ 27 ("Sheik Ouda publishes his articles and fatwas on the website"); ¶ 28

("an article written by Sheik Ouda called 'Suicide Operations' posted on the website"); ¶ 29 ("Al-Hussayen uploaded these files from his computer to the website"); ¶ 36 ("Al-Hussayen also monitored and participated in the Yahoo!QoqazGroup chat room"); ¶ 39 (alleging Al-Hussayen was the "webmaster" for the IANA websites); ¶ 40 ("IANA's website [] published an article by al-Hawali"); ¶¶ 41-42 (articles written by third-parties posted on IANA's website); ¶ 57 (alleging Al-Hussayen "published graphic videos"); ¶ 59 (alleging Al-Hussayen published articles and fatwas written by Sheiks Ouda and Al-Hawali).

Accordingly, Mr. Al-Hussayen is entitled to absolute immunity under § 230, and the Plaintiff's claims against him are barred.

iv.   All Claims Must Be Dismissed as Plaintiffs Fail to Allege the Necessary Causal Link Between Mr. Al-Hussayen's Alleged Acts and the Plaintiffs' Injuries

"In order to succeed on any of their claims ... plaintiffs will have to establish an appropriate level of knowledge and intent on the part of [Mr. Al-Hussayen] and an appropriate causal link between [his actions] and the plaintiffs' injuries." *Burnett,* 274 F.Supp.2d at 102.  However, Plaintiffs fail to allege any such knowledge and intent by Mr. Al-Hussayen, let alone a sufficient causal link.  First, Plaintiffs fail to allege any facts which establish that Mr. Al-Hussayen had an appropriate level of knowledge and intent to "further al Qaeda's terrorist activities," *see id.* at 104, let alone the specific acts causing Plaintiffs' injuries.  Moreover, there are insufficient allegations to infer that he provided "material support" to al Qaeda.

Second, there is no causal link between the alleged activities of Mr. Al-Hussayen and the Plaintiffs' injuries.  In *Burnett,* Judge Robertson applied the definition of proximate cause in order to establish a causal link between Plaintiffs' allegations and their injuries.  274 F.Supp.2d at 105.  However, under either the District of Columbia's definition, *see id.* ("a test of whether the injury is the natural and probable consequence of the negligent or wrongful act and ought to be foreseen in light of the circumstances"), or that of New York, *see Caruso v. United States,* No. 01-CV-1207 (DRH), 2002 WL

31870571, at *3 (N.D.N.Y. Dec. 23, 2002) ("Proximate cause is defined as a cause which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred"), Plaintiffs' allegations fail to establish a sufficient causal link between Mr. Al-Hussayen's alleged acts and Plaintiffs' injuries.[14]

Although somewhat obscured, in sum the MDS merely alleges that Mr. Al-Hussayen "ideologically supports global jihad," MDS at ¶ 58, and that he "materially supported the Al Qaeda network which carried out the September 11, 2001 attacks upon the United States by promoting and distributing articles and fatwas issued by the spiritual leaders of Al Qaeda." *Id.* at ¶ 59. The allegations concerning financial support are unrelated to Mr. Al-Hussayen, *see id.* at ¶ 49 (alleging a portion of funds distributed by IANA "supported jihad and the Al Qaeda network"), and in any event, are contradicted by the underlying documents. These allegations are insufficient to impose liability, and therefore fail to state a claim upon which relief can be granted.

      v.      <u>Count 1 Fails to State a Claim Against Mr. Al-Hussayen</u>

Count 1 attempts to impose liability against the Republic of Sudan, identified as a "Foreign State Defendant." Accordingly, Count 1 fails to state a claim upon which relief can be granted against Mr. Al-Hussayen and must be dismissed as to him.

      vi.     <u>Count 2 Fails to State a Claim Under the TVPA</u>

In Count 2 of the 3AC, Plaintiffs seek compensation pursuant to the Torture Victim Protection Act (TVPA). However, because the TVPA only imposes liability for acts of torture or extrajudicial killing which occur *outside the United States* <u>and</u> *under the actual or apparent authority of a foreign nation,* Plaintiffs allegations fail to state a claim upon which relief can be granted.

---

[14] For example, Plaintiffs go to great lengths to discuss various articles published on websites, including one which discusses the use of an airplane as a weapon. *See* MDS at ¶ 28. Ignoring the fact that this article was published only a few months prior to the events of September 11, 2001, and in no way could have provided "substantial assistance" to those involved, Plaintiffs do not, and cannot, allege that the hijackers were even aware of the existence of this or any other article described in the MDS.

The relevant portion of § 2(a) of the TVPA states:

An individual who, under actual or apparent authority, or color of law, *of any foreign nation*–(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

Pub. L. No. 102-256, 106 Stat. 73 (enacted Mar. 12, 1992) (codified as note to 28 U.S.C. § 1350) (emphasis added).  The legislative history of the TVPA indicates that it was passed in order to create a civil cause of action in the United States for acts of torture and extrajudicial killing committed outside this country by individuals acting under color of authority of a foreign nation.  *See* S. Rep. No. 102-249, at 3, 8 (1991) ("the [TVPA] is designed to respond to this situation by providing a civil cause of action in U.S. courts for torture committed abroad;" "this legislation does not cover purely private criminal acts by individuals or nongovernmental organizations"); *see also Doe v. Islamic Salvation Front,* 993 F.Supp. 3, 9 (D.D.C. 1998) (quoting H.R. Rep. No. 367, at 5) ("The bill does not attempt to deal with torture or killing by purely private groups").

In fact, the statute is so entirely focused on providing a cause of action in U.S. courts for acts occurring outside its jurisdiction, it specifically requires a claimant to exhaust all adequate and available remedies "in the place in which the conduct giving rise to the claim occurred" prior to the Court hearing a TVPA claim.  § 2(b); *see also* S. Rep. No. 102-249, at 9 ("A court may decline to exercise the TVPA's grant of jurisdiction only if it appears that adequate and available remedies can be assured where the conduct complained of occurred, and that the plaintiff has not exhausted local remedies there").

Despite these express limitations of the TVPA, Plaintiffs seek to use – or more appropriately "misuse" – the TVPA for acts which they allege were accomplished entirely within the borders of the United States by private individuals acting on behalf of a nongovernmental organization.  Even if the TVPA allowed such suits, Plaintiffs have failed to exhaust all adequate and available remedies as required.  Instead, they have simply alleged a count under the TVPA *in addition to* the adequate remedies already available in United States courts.  In either case, the Plaintiffs fail to state a claim upon which

relief can be granted under the TVPA requiring dismissal of Count 2.

   vii.   Count 3 Fails to State a Claim Under the Anti-Terrorism Act

   In Count 3,  Plaintiffs seek compensation pursuant to 18 U.S.C. § 2331, *et seq.* (referred to as the

Anti-Terrorism Act) (hereinafter "ATA").  This claim must be dismissed because Plaintiffs fail to state a

claim upon which relief can be granted.  The relevant portion of § 2333 states:

> (a) Action and jurisdiction.–Any national of the United States injured in his or her
> person, property, or business by reason of an act of *international terrorism,* or his or her
> estate, survivors, or heirs, may sue therefor in any appropriate district court of the
> United States and shall recover threefold the damages her or she sustains and the cost of
> the suit, including attorney's fees.

(Emphasis added.)  However, to constitute "international terrorism," the acts involved must:

> *occur primarily outside the territorial jurisdiction of the United States,* or transcend national
> boundaries in terms of the means by which they are accomplished, the persons they
> appear intended to intimidate or coerce, or the locale in which their perpetrators operate
> or seek asylum.

18 U.S.C. § 2331(1)(C) (emphasis added).   Thus, Congress specifically distinguished "international

terrorism" from "domestic terrorism" by defining the later to include terrorist acts which "occur

primarily within the territorial jurisdiction of the United States."  18 U.S.C. § 2331(5)(C).

   Therefore, Congress has provided civil remedies under the ATA only for those acts which occur

primarily outside the territorial jurisdiction of the United States and not for the acts alleged by Plaintiffs

which occurred primarily within the jurisdiction of the United States.  In fact, Congress specifically

noted that the statute "would allow the law to catch up with contemporary reality by providing victims

of terrorism with a remedy for a wrong that, *by its nature, falls outside the usual jurisdictional categories of wrongs*

*that national legal systems have traditionally addressed."* S. Rep. No. 102-342, at 22 (1992); *see also Boim v.*

*Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,* 291 F.3d 1000, 1010-11 (7th Cir. 2002)

(concluding the legislative history of the ATA indicates Congress intended to extend liability to "land-

based terrorism that occurred in a *foreign country"* since such actions may not be subject to civil action in

U.S. courts) (emphasis added).[15]  Thus, similar to the TVPA, the ATA was enacted to create a cause of

action for acts – unlike the allegations here – not otherwise actionable in U.S. courts.

Here, the claims by Plaintiffs "occurred primarily within the United States," fall within the

definition of "domestic terrorism" rather than "international terrorism," consist of acts which have

traditionally been within the jurisdictional reach of U.S. courts, and therefore do not constitute a claim

upon which relief can be granted under the ATA.  *Cf. Boim,* 291 F.3d 1000, 1002 (applying ATA to

terrorists who killed a United States citizen in Israel); *Knox v. Palestine Liberation Organization,* 306

F.Supp.2d 424, 426 (S.D.N.Y. 2004) (same); *Biton v. Palestinian Interim Self Government,* 310 F.Supp.2d 172,

175 (D.D.C. 2004) (applying ATA to terrorists who killed a United States citizen in Gaza Strip).

Accordingly, Count 3 must be dismissed.[16]

    viii.    Counts 9 and 10 Fail to State a Claim for Conspiracy or Aiding and Abetting

Conspiracy and aiding and abetting do not constitute independent causes of action and therefore

do not state a claim upon which relief can be granted.  As the Court has previously stated:

> It is textbook law that New York does not recognize an independent tort of conspiracy.
> If an underlying, actionable tort is established, however, plaintiff may plead the existence
> of a conspiracy in order to demonstrate that each defendant's conduct was part of a
> common scheme.  In this way, the defendants may be held jointly and severally liable for

---

[15]  Although at least one district court in the Southern District of New York has concluded that the events of September 11, 2001 "arguably" "fall within the statute's definition of 'international terrorism,'" its reasoning is clearly at odds with itself.  *See Smith ex rel. Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217, 221-22 (S.D.N.Y. 2003).  There, the court specifically stated "The acts of September 11 clearly 'occurred primarily' in the United States--indeed, they occurred entirely in the United States: airplanes owned and operated by U.S. carriers took off from U.S. airports and were in route to U.S. destinations when they were hijacked and crashed into U.S. landmarks."

*Id.* at 221.  The court reasoned, however, that the events were "arguably" within the definition of international terrorism because they were "carried out by foreign nationals who apparently received their orders and funding and some training from foreign sources."  *Id.* at 221-22.  Such reasoning ignores the purpose for which Congress passed the statute – to allow a civil remedy for those acts which fall *outside* the jurisdiction of the United States, *see* S. Rep. No. 102-342, at 22 – while effectively eliminating the statutory distinction between domestic and international terrorism.  Moreover, the "transcend national boundaries" language applies to the means by which the *act itself* is accomplished, and not to every act made in preparation thereof.

[16]  In *Burnett,* 274 F.Supp.2d at 106, Judge Robertson acknowledged that no defendant had raised this issue.

any compensatory and punitive damages awarded for the underlying torts, although damages may not be awarded on the conspiracy count itself.

*Sepenuk v. Marshall,* No. 98-Civ.-1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citations omitted). This reasoning is equally applicable to aiding and abetting liability. *See Small v. Lorillard Tobacco Co.,* 720 N.E.2d 892, 94 N.Y.2d 43, 57 (N.Y. 1999). Thus, Plaintiffs cannot seek additional damages on Counts 9 (conspiracy) and 10 (aiding and abetting), but may only attempt to hold jointly and severally liable those who conspired with and/or aided and abetted the actual tortfeasors – if and when an underlying tort is established. Accordingly, Counts 9 and 10 fail to state a claim upon which relief can be granted and must be dismissed.

ix.    Plaintiffs Fail to Allege Mr. Al-Hussayen Conspired with or Aided and Abetted Those Who Allegedly Committed the Tort

In addition, Plaintiffs' allegations fail to state a claim that Mr. Al-Hussayen conspired with or aided and abetted the alleged tortfeasors. As Plaintiffs' entire theory is premised on such allegations, the 3AC must be dismissed against Mr. Al-Hussayen. *See Nat'l Westminster Bank USA v. Weksel,* 511 N.Y.S.2d 626, 628-29 (N.Y. App. Div. 1987) (dismissing complaint alleging theories of conspiracy and aiding and abetting where plaintiffs failed to allege facts from which it could be inferred an agreement existed, or that defendant knew of or intended to aid the commission of a tort).

> Conspiracy and aiding and abetting are varieties of concerted-action liability: conspiracy requires an agreement to commit a tortious act, aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer. In order to be liable for acting in concert with the primary tortfeasor under either theory, the defendant must know the wrongful nature of the primary actor's conduct.

*Pittman by Pittman v. Grayson,* 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Thus, neither conspiracy nor aiding and abetting liability is sustainable unless it is alleged that the defendant knew of or intended to aid in the commission of a tort. *Id., citing Weksel,* 511 N.Y.S.2d at 629.

There is no allegation that Mr. Al-Hussayen knew of or intended to aid in the commission of the September 11th attacks. In addition, there is no allegation that Mr. Al-Hussayen entered into any

agreement to commit a tortious act, nor are there any facts alleged from which such an agreement could be inferred. Instead, Plaintiffs attempt to rely on vague, prolix allegations of a conspiracy without providing a basis in fact for their claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990). Moreover, whatever "assistance" Mr. Al-Hussayen is alleged to have contributed, none of it could be considered "substantial," s*ee, e.g., Halberstam,* 705 F.2d at 487-88. Accordingly, Plaintiffs fail to allege sufficient facts to impose liability upon Mr. Al-Hussayen under either a conspiracy or aiding and abetting theory.

        x.     <u>Counts 11, 12, and 13 Fail to State a Claim Under RICO</u>

In Counts 11-13, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). However, in order to have standing in a civil cause of action under RICO the Plaintiff must have been "injured in his business or property." 18 U.S.C. § 1964(c). "The plaintiffs in this case have alleged personal injuries, and economic losses derived therefrom, but not any specific injuries to business or property that are separate from their personal injuries." *Burnett,* 274 F.Supp.2d at 100. Having concluded that the "overwhelming weight of authority discussing the RICO standing issue holds that the 'business or property' language of Section 1964(c) does not encompass personal injuries," *id.* at 101, *citing Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir. 1984), Judge Robertson held that Plaintiffs failed to make a claim upon which relief could be granted and dismissed the RICO claims against a co-defendant pursuant to Rule 12(b)(6). *Id.* at 111. Based upon the plain language of the statute, Judge Robertson's legal reasoning and conclusions in *Burnett,* as well as the "law of the case" doctrine, *see, e.g., In re PCH Assoc.,* 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation"), Counts 11, 12, and 13 must be dismissed against Mr. Al-Hussayen.

        xi.     <u>All Negligence Claims Fail to State a Claim Upon Which Relief Can Be Granted</u>

The 3AC seeks to impose liability upon Mr. Al-Hussayen under the theory of negligence. The Plaintiffs, however, fail to allege or identify a duty that Mr. Al-Hussayen owed to them. Therefore, all

negligence claims must be dismissed for failure to state a claim upon which relief can be granted.[17]
*Burnett,* 274 F.Supp.2d at 108.  Having failed to allege any duty owed, "Plaintiffs have thus failed to state
claims for negligence or for negligent infliction of emotional distress."  *Id., citing Mortise v. United States,*
102 F.3d 693, 696 (2d Cir. 1996).

Moreover, even if a duty were alleged, Plaintiffs fail to allege sufficient causation to impose
liability against Mr. Al-Hussayen.  "Proximate or legal cause is defined as that 'which in a natural
sequence, unbroken by any new cause, produces that event and without which that event would not
have occurred.'" *Caraballo v. United States,* 830 F.2d 19, 22 (2d Cir. 1987) (quoting *Rider v. Syracuse Rapid
Transit Ry. Co.,* 171 N.Y. 139, 147 (1902)).  The factual allegations fail to meet this requirement;
accordingly, the negligence claims must be dismissed as well.

### IV. Conclusion

Based upon the foregoing, the claims against Mr. Al-Hussayen should be dismissed.

DATED this 23rd day of July, 2004.

Nevin, Benjamin & McKay, LLP

_____
David Nevin
Scott McKay
Dean Arnold
*Attorneys for Defendant Sami Omar Al-Hussayen*

---

[17] Of course, one cannot conspire to act negligently.  *See United States v. Mitlof,* 165 F.Supp.2d 558, 564 (S.D.N.Y. 2001).