**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

**REPLY BRIEF IN SUPPORT OF SALMAN AL-OADAH'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

        Lynne Bernabei, Esquire  (LB2489)
        Alan R. Kabat, Esquire  (AK7194)
        Bernabei & Katz, PLLC
        1773 T Street, N.W.
        Washington, D.C. 20009-7139
        (202) 745-1942

        Attorneys for Defendant
         Salman Al-Oadah (D220)

DATED:  July 23, 2004

**INTRODUCTION**

In his motion to dismiss (Docket No. 84), Salman Al-Oadah (D220) argued that dismissal was warranted, pursuant to Rules 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because this court lacks personal jurisdiction over him, since his sole contact with this country were two visits more than a decade ago, and because plaintiffs' attempt to serve him by publication was substantively improper. Plaintiffs' Opposition (Docket No. 275) relies substantially on factual allegations which appear nowhere in the Complaint. This Court should not consider new allegations since they are not part of the Complaint and Mr. Al-Oadah has not had an opportunity to address them in his motion to dismiss.

Even if the Court decides it will consider the "new allegations," however, they fail to provide any legally sufficient basis for keeping Mr. Al-Oadah in this lawsuit.

Finally, and most importantly, plaintiffs' counsel materially misrepresent both a court document they filed regarding service of process by publication, and Judge Robertson's order granting this motion, in a desperate and wholly improper attempt to make out proper service of process on Mr. Al-Oadah.

**ARGUMENT**

**I.     This Court Does Not Have Personal Jurisdiction Over Mr. Al-Oadah.**

Plaintiffs' Opposition fails to address the threshold issue: this Court lacks personal jurisdiction over Mr. Al-Oadah, a nonresident foreign defendant, because he has not done anything that connects him to this forum, or to the acts that allegedly caused or supported the September 11 attacks. Although plaintiffs raise new allegations that Mr. Al-Oadah somehow supported al Qaeda (Opp. at 5-6), the evidence they have presented, in fact, disproves their own

1

argument that Mr. Al-Oadah supported, or proximately caused, the September 11 attacks.

Plaintiffs cannot satisfy their burden to "allege facts constituting a *prima facie* showing of personal jurisdiction," PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). They have argued that this Court should look at personal jurisdiction with respect to <u>all</u> <u>defendants</u>. Plaintiffs' argument is contrary to the Supreme Court's mandate that "each defendant's contacts with the forum state must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984); PDK Labs, 103 F.3d at 1108 ("personal jurisdiction inquiries are necessarily fact sensitive because each case is dependent upon its own particular circumstances.").[1]

Further, Mr. Al-Oadah's motion to dismiss set forth three defenses to support his argument that personal jurisdiction was improper under a general jurisdiction theory, a specific jurisdiction theory, or the forum's long-arm statute. The <u>only</u> theory that plaintiffs now rely upon is that Mr. Al-Oadah "purposefully directed his conduct at the United States," <u>see</u> Opp. at 5, thereby conceding that jurisdiction is not proper under the other two approaches.[2]

### A. Plaintiffs Have Improperly, And Without Court Approval, Amended Their Complaint By Raising New Allegations In Their Opposition Brief.

This Court must disregard any new allegations submitted by plaintiffs in their Opposition

---

[1] Contrary to plaintiffs' claim in their Opposition that it is Mr. Al-Oadah's responsibility to get a more definite statement of facts under Rule 12(e), Fed. R. Civ. P., it is plaintiffs' burden, under Rule 8(a)(1), Fed. R. Civ. P., to plead facts in their complaint that would support the exercise of personal jurisdiction over each defendant. As the courts in this jurisdiction have made clear, it is not defendants' burden to ask for a more definite statement with respect to personal jurisdiction. "Motions for more definite statements are generally disfavored," MTV Networks v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994), since Rule 12(e) "is designed to correct only unintelligibility in a pleading, not merely a claimed lack of detail." FRA S.p.A. v. Surg-O-Flex of Amer., Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976).

[2] It is settled law that when a defense is raised in a dispositive motion, but the plaintiff fails to respond to that defense, the plaintiff has conceded the defense. Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

as constituting an improper attempt to amend their Complaint without court permission, in effect creating a "moving target" for defendants. If the Court does permit the plaintiffs to amend their Complaint in this unorthodox fashion, then the defendant must be given an opportunity to move to dismiss the newly amended Complaint. Otherwise, Mr. Al-Oadah will have no opportunity to address the allegations in the amended Complaint.

Under Second Circuit precedent, this Court should not permit plaintiffs to amend their Complaint by adding allegations in an opposition to a motion to dismiss.[3] Nor does 28 U.S.C. § 1653 allow the plaintiffs "liberal amendments as to jurisdiction" (Opp. at 3), since it is settled law that Section 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."[4]

Thus, this Court should not allow plaintiffs to oppose Mr. Al-Oadah's motion to dismiss based on "new facts" identified for the first time in the plaintiffs' Opposition.

### B.      Even If This Court Considers Plaintiffs's New Allegations, They Do Not Support This Court's Exercise of Personal Jurisdiction Over Mr. Al-Oadah.

Even if this Court were to consider plaintiffs' new allegations about Mr. Al-Oadah, it must still find that those allegations fail to support the exercise of personal jurisdiction over him.

First, plaintiffs allege that Mr. Al-Oadah somehow inspired or motivated Osama bin Laden and al Qaeda. See Opp. at 6. However, the only evidence that plaintiffs set forth is an interview of bin Laden in 1997, id. (citing Ex. 11 to Pl. Opp. (Al-Husaini) (Docket No. 272)),

---

[3] See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

[4] Newman-Green v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989); accord Asset Value Fund Ltd. P'ship v. The Care Group, 179 F.R.D. 117, 119 (S.D.N.Y. 1998) (quoting Newman-Green).

which does not state what plaintiffs now allege. What bin Laden actually said was that after the Saudi government silenced Islamic scholars, including Mr. Al-Oadah, from speaking out on Islamic matters, he took it upon himself "to carry out a small part of <u>my duty</u> of enjoining what is right and forbidding what is wrong." <u>Id.</u>, Ex. 11 at 4, ¶ 1 (emphasis added). This statement is critical for what is not said – bin Laden did not say that he adopted or espoused statements made by Mr. Al-Oadah, or that Mr. Al-Oadah directed or supported bin Laden's activities. The only reasonable interpretation of his statement is that when he thought that the Saudi government was silencing some Islamic scholars, bin Laden decided on his own to enter the public arena in order to espouse his own views on Islamic "law."

This statement by bin Laden fails to demonstrate that Mr. Al-Oadah himself ever <u>said</u> or did anything that was intended to cause an imminent danger to harm, or that was likely to incite directly anyone to engage in terrorist activities, as would be required to impose liability on him. <u>See</u> <u>Brandenburg v. Ohio</u>, 395 U.S. 444, 448-49 (1969) (<u>per curiam</u>). Bin Laden's statement shows no causal connection between Mr. Al-Oadah's speech and bin Laden's conduct. All it may show is that there is some connection between the Saudi government's treatment of Mr. Al-Oadah and bin Laden's action, but that does not provide any basis for holding Mr. Al-Oadah responsible for the former's actions. Any other advocacy he undertook does not justify the exercise of personal jurisdiction, let alone imposing liability on him. <u>Melzer v. Bd. of Educ. of the City Sch. Dist. of N.Y.</u>, 336 F.3d 185, 198 (3d Cir. 2003) ("Melzer himself could not be punished absent clear proof – also not present here – that he knew of such illegal aims and specifically intended to accomplish them"), <u>cert. denied</u>, 124 S. Ct. 1424 (2004); <u>Federation of Turkish-Amer. Societies v. ABC</u>, 620 F. Supp. 56, 58 (S.D.N.Y. 1985) (dismissing complaint on

First Amendment grounds since defendant did not engage in "immediate incitements to violence"). Nor does it constitute material support as a matter of law. Humanitarian Law Project v. Reno, 205 F.3d 1130, 1137 (9th Cir. 2000) ("Someone who advocates the cause of the PKK could be seen as supplying them with personnel . . . . But advocacy is pure speech protected by the First Amendment.").[5] Plaintiffs have offered no evidence that anyone involved with the September 11 attacks was incited to engage in those violent actions by anything said or done by Mr. Al-Oadah. The absence of any nexus between Mr. Al-Oadah and the September 11 attacks, therefore, forecloses plaintiffs' personal jurisdiction argument.

Plaintiffs then make the new and generic allegation (which they incorporate by reference from their Opposition to Al-Husaini's motion to dismiss (Docket No. 272)), that it was well known that bin Laden and al Qaeda had directed their activities against this country since the mid-1990's, so that "supporters of al Qaeda were purposefully directing their conduct towards the United States." See Opp. at 6. Plaintiffs have not identified any material support that Mr. Al-Oadah provided to al Qaeda at any time. Nor have plaintiffs identified any acts by Mr. Al-Oadah during the relevant time frame, i.e., from the mid-1990's to the present, that aided any terrorist activity, much less al Qaeda activities leading to the September 11 attacks. The only time frame given by plaintiffs for Al-Oadah's own acts is "in the early 1990s." See Opp. at 6. This forecloses plaintiffs' personal jurisdiction argument, because by plaintiffs' admissions in other pleadings, their own evidence shows that not until 1996 and later did bin Laden openly target the United States. See Third Am. Compl., ¶¶ 315, 576, 584-85; Pl. Opp. (Al-Husaini)

---

[5] Indeed, the U.S. government allows for the distribution of "information and informational materials" which are defined as "publications, films, posters . . . and informational articles" by designated terrorist entities, thereby recognizing the right to engage in advocacy. See 31 C.F.R. §§ 595.206, 594.305-594.306.

(Docket No. 272), at 13-15 (citing documents from 1996-1999 and 2001) and Ex. 16, at 18.

Clearly, the only reasonable inference that can be drawn from plaintiffs' new factual allegations is that any activity that Mr. Al-Oadah may have engaged in, which was primarily, if not entirely religious advocacy, took place <u>before</u> bin Laden had targeted the United States, and at a time when the U.S. government was supporting the mujahedin in Afghanistan, of which bin Laden was a leader.[6]  Taken together, plaintiffs' new allegations regarding Mr. Al-Oadah thus do not support any claim that he supported or contributed to al Qaeda's terrorist activities directed towards the United States.

### C. This Court Cannot Exercise Personal Jurisdiction Over Mr. Al-Oadah Under The Specific Jurisdiction Theory.

Plaintiffs' allegations fail to support their "purposefully directed" claim as required for the exercise of specific jurisdiction over Mr. Al-Oadah.  Plaintiffs have not offered any competent evidence that Mr. Al-Oadah's activities – if the Court considers the new allegations – were "expressly aimed" at the United States, as required for the exercise of personal jurisdiction. <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474-76 (1985); <u>Calder</u>, 465 U.S. 789-90.  At most, plaintiffs have alleged that Mr. Al-Oadah engaged in constitutionally protected advocacy during a time period <u>before</u> al Qaeda announced that it was targeting this country.  Nor have plaintiffs set forth evidence to support any allegation that Mr. Al-Oadah was a "primary participant" in the September 11 attacks as required for this Court to exercise personal jurisdiction over him. *In re* <u>Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 208 (2d Cir. 2003).  Therefore, even if the

---

[6] Defendant respectfully refers this Court, and incorporates herein, the discussion in Al-Husaini's Reply Brief (July 23, 2004) of the U.S. Government's support for the mujahedin in Afghanistan during the 1980's and early 1990's, at a time when Osama bin Laden was also part of the mujahedin. <u>See</u> Reply Brief in Support of Hamad Al-Husaini's Motion to Dismiss the Third Amended Complaint, at Part I.B (July 23, 2004) (incorporated by reference herein).

Court considers plaintiffs' new allegations about Mr. Al-Oadah, this Court still cannot find that plaintiffs made a *prima facie* showing of personal jurisdiction over him.

## II. Plaintiffs Have Not Properly Served Mr. Al-Oadah.

### A. Judge Robertson Did Not Approve Service By Publication on Mr. Al-Oadah.

Plaintiffs have fabricated the content of a court document, and misrepresented Judge Robertson's court order, in a desperate attempt to argue that they have properly served Mr. Al-Oadah and several other defendants through publication in two newspapers, neither of which he reads or can access. Plaintiffs' fabrication of the court documents is described as follows:

On March 24, 2003, plaintiffs sought leave to serve thirty-six (36) named defendants by publication. See Pl. Mot., Ex. A (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95) (attached hereto as Exhibit 1). Judge Robertson approved this request by minute order on March 25, 2003, see Order (Mar. 25, 2003) (attached hereto as Exhibit 2), thereby approving service by publication on the 36 individuals or entities named in Exhibit A.

Plaintiffs, in their opposition to Mr. Al-Oadah's motion, falsely stated that "Plaintiffs requested leave to serve by publication any defendants in the Gulf States region, which included those specifically listed defendants located in Saudi Arabia, Sudan and United Arab Emirates *and* defendants subsequently added from that geographical area." See Opp. at 7 (emphasis in original). Plaintiffs, in their contemporaneous oppositions to the motions to dismiss filed by four other defendants, claimed that each defendant was "included" on Exhibit A.[7] To support their

---

[7] See Pl. Opp. (Al-Husaini) (Docket No. 272), at 18 ("Plaintiffs asked for permission to serve by publication defendants that were listed in the Exhibit A attached to the motion, **which included Al-Husaini**") (emphasis added); Pl. Opp. (Al-Hussayen) (Docket No. 281), at 6 (same, for Mr. Al-Hussayen); Pl. Opp. (Al-Hawali) (Docket No. 282), at 7 (same, for Mr. Al-Hawali); Pl. Opp. (Saudi Red Crescent) (Docket No. 277), at 9 (same, for Saudi Red Crescent).

7

claim, plaintiffs' counsel submitted to this Court an exhibit that they asserted was their March 24, 2003 motion and its list of defendants. See Pl. Opp. (S. Batterjee), Ex. 4 (Docket No. 276) (attached hereto as Exhibit 3).

Plaintiffs have misrepresented the relief sought in their March 24, 2003 motion, which requested distinct types of relief: (1) another extension of time to serve the current defendants "as well as any Defendants added subsequently;" and (2) permission for "service by publication on the Defendants listed in Exhibit A through publication." See Ex. 1, Mem. at 6. Plaintiffs did not, in the motion, or in Exhibit A, seek leave to serve "subsequently added defendants" by publication as they now claim.

Moreover, the "Exhibit A" that plaintiffs submitted to this Court is not the Exhibit A that plaintiffs filed with the court on March 24, 2003, upon which Judge Robertson acted in his Order of March 25, 2003 (Ex. 2). Comparison of Exhibit A in the actual court filing, see Ex. 1, with the plaintiffs' new version, see Ex. 3, demonstrates that the plaintiffs have altered a court document in order to assert, falsely, that Mr. Al-Oadah and nineteen other defendants (including the Saudi Arabian Red Crescent Society, Safer Al-Hawali, Hamad Al-Husaini, and Saleh Al-Hussayen) were on the list that was submitted to, and approved by, Judge Robertson. What plaintiffs' counsel failed to realize in fabricating this document is that these defendants' names could not have possibly have appeared on the original list, filed on March 24, 2003, because they were not added as defendants until May 2, 2003. See "Plaintiffs' Second Addition and Removal of Defendants Pursuant to Case Management Order No. 1 and Federal Rule of Civil Procedure 15(d)," Att. B (May 2, 2003) (*Burnett* D.D.C. Docket No. 139) (attached hereto as Exhibit 4).

It is obvious that what plaintiffs did was to add twenty names at the end of their original

8

list, and then misrepresent to this Court, which had not decided the original motion to serve 36 defendants by publication, that this altered court document supports their argument. This fraud on the court is clearly sanctionable conduct and should not be condoned.[8] This court has the authority under its inherent powers, and under 28 U.S.C. § 1927, to sanction plaintiffs' counsel for their willful conduct in misrepresenting, <u>five</u> <u>times</u>, the contents of this court filing.[9] Regardless of whether this Court imposes sanctions on plaintiffs' counsel for this fabrication of a court document, at a minimum it should strike plaintiffs' Opposition that relies on the fabricated document and treat Mr. Al-Oadah's motion as conceded.

### B. Plaintiffs' Attempt to Serve By Publication was Substantively Improper.

Even if this Court were to ignore plaintiffs' false representations regarding their March 24, 2003 court filing, it must still find that plaintiffs' attempt to serve Mr. Al-Oadah by publication in two newspapers – which he cannot read or access – was substantively improper. Mr. Al-Oadah respectfully refers this Court, and incorporates herein, the discussion of the plaintiffs' improper service of process by publication in the reply brief filed by Mr. Al-Hussayen (July 23, 2004).

This Court should find that service by publication on Mr. Al-Oadah was not authorized by Judge Robertson, does not constitute adequate notice to him, and was not justified.

---

[8] See, e.g., *In re* Furtzaig, 305 A.D.2d 7, 762 N.Y.S.2d 335 (2003) (suspending attorney for five years for fabricating court documents, in violation of N.Y. Code Prof. Resp. DR 1-102(A) (4), (7)); *In re* Kantor, 241 A.D.2d 103, 670 N.Y.S.2d 448 (1998) (same); *In re* Nadler, 229 A.D.2d 175, 653 N.Y.S.2d 657 (1997) (same).

[9] See Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, (S.D.N.Y. 2002) (dismissing case for backdating and fabricating documents), aff'd 81 Fed. Appx. 396 (2d Cir. 2003); accord Chemtall, Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1408-09 (S.D. Ga. 1998) (entering default judgment for altering documents); Richardson v. Union Oil Co. of Calif., 167 F.R.D. 1, 2-6 (D.D.C. 1996) (sanctions for altering documents); Brady v. United States, 877 F. Supp. 444, 450-53 (C.D. Ill. 1994) (dismissing case for backdating and fabricating documents); *In re* Mapson, 93 B.R. 161, 167-72 (Bankr. C.D. Ill. 1988) (sanctions for altering court document); see generally G.P. Joseph, Sanctions: The Federal Law of Litigation Abuse (3d ed. 2000).

## **CONCLUSION**

For the foregoing reasons, and those set forth in Mr. Al-Oadah's motion to dismiss, this Court must grant defendant's motion to dismiss plaintiffs' Third Amended Complaint for lack of personal jurisdiction and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Salman Al-Oadah (D220)

DATED:  July 23, 2004

## CERTIFICATE OF SERVICE

      I hereby certify that on July 23, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat