## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                              )
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001    )    03 MDL No. 1570 (RCC)
_____)    ECF Case

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

### REPLY BRIEF IN SUPPORT OF SHAHIR A. BATTERJEE'S
### MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Shahir A. Batterjee (D67)

DATED:  July 23, 2004

**INTRODUCTION**

In his motion to dismiss (Docket No. 86), Shahir A. Batterjee (D67) argued that dismissal was warranted, pursuant to Rules 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because this court lacks personal jurisdiction over him, since his minimal contacts with this country were unrelated to the plaintiffs' allegations against him, and because plaintiffs' attempt to serve him by publication was substantively improper.  Plaintiffs' Opposition (Docket No. 276) improperly makes new factual allegations – which appear nowhere in the Complaint.  However, even if the Court were to consider these "new allegations," they still fail to provide any legally sufficient basis for keeping Mr. Batterjee in this lawsuit.

**ARGUMENT**

**I.      This Court Does Not Have Personal Jurisdiction Over Mr. Batterjee.**

Plaintiffs' Opposition fails to address the threshold issue:  this Court lacks personal jurisdiction over Mr. Batterjee, a nonresident foreign defendant, because he has not done anything that connects him to this forum, or to the acts that allegedly caused or supported the September 11 attacks.  Although plaintiffs now claim that Mr. Batterjee somehow supported al Qaeda (Opp. at 5-8), the evidence they have presented disproves their arguments that anything he ever did supported or proximately caused the September 11 attacks.

Plaintiffs are required, under Second Circuit precedent, to "allege facts constituting a *prima facie* showing of personal jurisdiction."  PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).  Instead, they have impermissibly argued to this Court that it should look at personal jurisdiction with respect to all defendants.  This argument clearly contravenes the Supreme Court's mandate that "each defendant's contacts with the forum state must be assessed

individually." Calder v. Jones, 465 U.S. 783, 790 (1984); PDK Labs, 103 F.3d at 1108 ("personal jurisdiction inquiries are necessarily fact sensitive because each case is dependent upon its own particular circumstances.").[1]

Further, at this point the plaintiffs have conceded all arguments on personal jurisdiction except their argument that this Court may exercise personal jurisdiction over Mr. Batterjee under the "specific jurisdiction" theory. Plaintiffs claim that "as an officer and director of BIF," Mr. Batterjee "purposefully directed his conduct at the United States." See Opp. at 6, 7. By failing to address Mr. Batterjee's arguments regarding "general jurisdiction" and the forum's long-arm statute, plaintiffs have conceded that jurisdiction is not proper under these two approaches. It is settled law that when a defense is raised in a dispositive motion, but the plaintiff fails to respond to that defense, the plaintiff has conceded the defense. Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

A.  **Plaintiffs Have Improperly, And Without Court Approval, Amended Their Complaint By Raising New Allegations In Their Opposition Brief.**

This Court must disregard any new allegations submitted by plaintiffs in their Opposition as constituting an improper attempt to amend their complaint without obtaining court

---

[1] It is plaintiffs' burden, under Rule 8(a)(1), Fed. R. Civ. P., to plead facts in their complaint that would support the exercise of personal jurisdiction over each defendant. Conversely, it is not defendants' burden to ask for a more definite statement under Rule 12(e), Fed. R. Civ. P., with respect to personal jurisdiction. "Motions for more definite statements are generally disfavored," MTV Networks v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994), since Rule 12(e) "is designed to correct only unintelligibility in a pleading, not merely a claimed lack of detail." FRA S.p.A. v. Surg-O-Flex of Amer., Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976).

permission. The plaintiffs cannot create a "moving target" for the defendants, *sub rosa* and without court approval. The plaintiffs set forth two paragraphs of new facts which they aver support their claim that Mr. Batterjee provided material support to al Qaeda. See Opp. at 5-6. Under Second Circuit precedent, plaintiffs cannot amend their complaint by adding allegations for the first time in an opposition to a motion to dismiss. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief"). Nor does 28 U.S.C. § 1653 allow the plaintiffs "liberal amendments as to jurisdiction" (Opp. at 5), since it is settled law that Section 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Newman-Green v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989); accord Asset Value Fund Ltd. P'ship v. The Care Group, 179 F.R.D. 117, 119 (S.D.N.Y. 1998) (quoting Newman-Green).

If this Court permits plaintiffs to amend their complaint in this novel manner, Mr. Batterjee must be given an opportunity to move to dismiss the newly amended complaint, as an opposition cannot raise new facts that the movant has not had the opportunity to address in his dispositive motion.

  **B.**  **Even Plaintiffs's New Allegations Regarding Mr. Batterjee Fail To Support The Exercise of Personal Jurisdiction Over Him.**

Even if this Court were to consider plaintiffs' new allegations about Mr. Batterjee, it must still find that those allegations fail to support the exercise of personal jurisdiction over him. Plaintiffs raise two new allegations about Mr. Batterjee. See Opp. at 5-7.

First, plaintiffs allege that Mr. Batterjee's involvement as a director of a charity, the Benevolence International Foundation ("BIF") is sufficient to allow this Court to exercise

personal jurisdiction over him. See Opp. at 5-6. Tellingly, plaintiffs fail to inform this Court of the relevant time frame of Mr. Batterjee's involvement with BIF. As Mr. Batterjee stated in his motion to dismiss, his involvement was limited to the 1993-1994 time period. See Mot., at 2-3 & Decl. (Ex. 1) at ¶ 9.[2] Although the plaintiffs submitted BIF's incorporation papers as filed with the Illinois Secretary of State in 1993, see Opp. Ex. 2, the "Annual Report" that BIF filed on February 2, 1994, shows that by that time Mr. Batterjee and several other directors were replaced by other persons. See BIF, Annual Report (Feb. 2, 1994) (attached hereto as Exhibit 1). Thus, Mr. Batterjee's involvement with BIF ended by February 1994.

The timing of Mr. Batterjee's involvement with BIF is important because by plaintiffs' admissions in their pleadings, and their own evidence, not until 1996 and later did Osama bin Laden openly target the United States. See Third Am. Compl., ¶¶ 315, 576, 584-85; Pl. Opp. (Al-Husaini) (Docket No. 272), at 13-15 (citing documents from 1996, 1997, 1998, 1999, and 2001). Plaintiffs also rely on a report prepared by a law student, which states that "Bin Laden's first declaration of war" was in October 1996. Id., Ex. 16, at 18. This report nowhere mentions Mr. Batterjee. Clearly, the only reasonable inference that can be drawn from plaintiffs' new allegations, and newly attached documents, is that any activity that Mr. Batterjee may have engaged in took place before bin Laden had targeted the United States, and at a time when the U.S. government was supporting the mujahedin in Afghanistan, of which bin Laden was a leader.[3]

---

[2] Each of the three documents that plaintiffs submit regarding BIF all relate to 1993 and early 1994, but not later years. See Opp., Ex. 1-3.

[3] Defendant respectfully refers this Court, and incorporates herein, the discussion in Al-Husaini's Reply Brief (July 23, 2004) of the U.S. Government's support for the mujahedin in Afghanistan during the 1980's and early 1990's, at a time when Osama bin Laden was also part of the mujahedin. See Reply Brief in Support of Hamad

Even if this Court were to consider Mr. Batterjee's limited role with BIF as potentially indicative of his involvement with al Qaeda, it must still find that plaintiffs' allegations present no proof that Mr. Batterjee engaged in BIF activities with knowledge that he was aiding al Qaeda.  In fact, the government's evidentiary proffer in the criminal prosecution of Enaam Arnaout, the President of BIF, upon which plaintiffs heavily rely, proves just the opposite.  See Opp. at 5-6 (citing Pl. Opp. (Al-Husaini), Ex. 1, at 27-28 (Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements, at 27-28, United States v. Arnaout, No. 02 CR 892 (N.D. Ill.) (Jan. 6, 2003)) ("Proffer").  First, Mr. Batterjee is not named in this Proffer (the citations to "Batterjee" are to another person, Adel Batterjee).  The Proffer makes clear that the Illinois office "had not accomplished much in the U.S. before" the original board, which included Mr. Batterjee, was replaced with a new board.  See Proffer, at 44.  Not until September 15, 1994, does the Proffer identify specific actions taken by BIF.  Id. at 44-45.  Even by that time, as the Proffer repeatedly makes clear, Mr. Arnaout deceived others, including donors, of BIF's actions during that time period.  Id. at 46 ("persons affiliated with defendant Arnaout – including donors – were given varying accounts of BIF's purposes"); id. at 47 ("BIF had a fundamental mission which it did not share with the general public, including many of its donors"); id. at 90 ("the massive fraud BIF was perpetrating on unknowing donors").

Mr. Batterjee was not on the board of BIF during the time period that the government, in its Proffer, claims the Illinois office of BIF engaged in illegal activities.  Therefore, he was not in a position to have known of, or participate in, those activities.  Further, Judge Conlon struck the Proffer in its entirety as inadmissible hearsay of a broad terrorist conspiracy, as the government

---

Al-Husaini's Motion to Dismiss the Third Amended Complaint, at Part I.B (July 23, 2004) (incorporated by reference herein).

5

initially contended.  See United States v. Arnaout, No. 02 CR 892, 2003 WL 255226, at *1-*2 (N.D. Ill. Feb. 4, 2003).

Plaintiffs also submitted the Government's presentence report in the Arnaout prosecution.  See Pl. Opp. (Al-Husaini), Ex. 17 (Government's Response to Defendant's Position Paper as to Sentencing Factors, United States v. Arnaout, No. 02 CR 892 (N.D. Ill.) (June 12, 2004)) ("Presentence Report").  The government discussed Mr. Arnaout's involvement with BIF to support a sentencing enhancement on the racketeering fraud conspiracy claim to which he had pled guilty, claiming that Mr. Arnaout had provided material support for terrorism.[4]  Judge Conlon rejected this sentencing enhancement, since Mr. Arnaout had not pled guilty to material support charges.  See United States v. Arnaout, 282 F. Supp. 2d 838, 843-47 (N.D. Ill. 2003).  Thus, the Presentence Report was only relied upon by Judge Conlon with respect to the loss calculations for the racketeering charge, id. at 840-43, and provides no support for a claim that BIF was involved in terrorism.

Even if this Court, by some reasoning, were to rely upon the Presentence Report, it must still find that it does not support plaintiffs' allegations that Mr. Batterjee knew anything about the activities of BIF and Mr. Arnaout, from 1994 onwards.  The Presentence Report makes clear, as did the Proffer, that Arnaout misled his donors, including the post-1993 board members:

> Defendant acknowledged no wrongdoing until the eleventh hour, and only after his star witness, a former BIF board member [Muzaffer Khan], testified under oath in an evidentiary deposition that he would "be shocked" to learn that BIF provided items to fighters in Bosnia and that BIF's donors would "be shocked" to learn that defendant had a meeting about providing boots to Chechen fighters.

See Presentence Report, at 27.  Judge Conlon accepted the fact that Mr. Arnaout had misled

---

[4] The government, as part of its plea deal with Mr. Arnaout, dismissed the terrorism charges against him.

6

donors and others about BIF's activities:

> Arnaout ignores the fact that he consistently represented to donors and
> government authorities that BIF supported only humanitarian causes. . . . a
> preponderance of the evidence establishes that the undisclosed donation of this
> BIF property to the Bosnian army was during Arnaout's "watch" and perpetrated
> a fraud on BIF donors.

Arnaout, 282 F. Supp. 2d at 842. This Court must, therefore, find as did Judge Conlon (who had before her much more extensive evidence than does this Court) that the Proffer and Presentence Report presented by plaintiffs fails to show that Mr. Batterjee's pre-1994 involvement with BIF indicates his knowledge and participation in BIF's alleged terrorist activities.

Therefore, the plaintiffs fail to make out a prima facie showing of personal jurisdiction. In fact, they support the contrary conclusion – that Mr. Batterjee, as well as those who were donors and board members of BIF from 1994 onward, knew nothing of Mr. Arnaout's use of BIF funds for purposes other than humanitarian aid.

Second, plaintiffs make the blanket allegation, which they incorporate by reference from their Opposition to Al-Husaini's motion to dismiss (Docket No. 272), that it was well known that bin Laden and al Qaeda had directed their activities against this country since the mid-1990's, so that persons "who provided material support in that period plainly knew that they were targeting the United States." See Opp. at 8. Plaintiffs have not identified, and obviously cannot identify, any "material support" that Mr. Batterjee provided to bin Laden or al Qaeda from 1995 to the present, the relevant time period when al Qaeda began to target the United States, by plaintiffs' admission. They have also presented no evidence that Mr. Batterjee's actions in 1993 and early 1994, which are the only actions alleged, see Opp. (Ex. 1-3), were taken during a time period after al Qaeda began to target the United States.

### C.     This Court Cannot Exercise Personal Jurisdiction Over Mr. Batterjee Under The Specific Jurisdiction Theory.

Under the specific jurisdiction theory, plaintiffs' new allegations fail to support either the corporate officer approach or the "purposefully directed" approach.  This Court does not have personal jurisdiction over a nonresident director of a corporation absent a *prima facie* showing that the director took acts within this forum that were within the scope of his position.  It is settled law that in order for a court to exercise personal jurisdiction over a nonresident officer or director based on the acts of the corporation in this forum, the corporation's acts "must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction."  Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).[5]  Plaintiffs made no such showing that Mr. Batterjee had knowledge of, or consented to, actions of BIF that the plaintiffs allege to be "terrorist activities."  In fact, Mr. Batterjee was not involved with BIF in the relevant time period.  Thus, he could not have exercised control over BIF in any alleged terrorist activities from 1995 onward, the time period during which any BIF assistance to al Qaeda may have been used against the United States.

With respect to the second basis for specific jurisdiction, plaintiffs have not offered any competent evidence that Mr. Batterjee's activities – even as alleged by plaintiffs – were "expressly aimed" to cause injury in the United States, as is required to allow the exercise of

---

[5] See also Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction under a theory of agency."); Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995) ("it is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation"); see generally Wiggins v. Equifax, Inc., 853 F. Supp. 500, 503 (D.D.C. 1994) ("It is true that a court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation. Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity.").

personal jurisdiction.  Burger King v. Rudzewicz, 471 U.S. 462, 474-76 (1985); Calder, 465 U.S. at 789-90.  At most, plaintiffs have alleged that Mr. Batterjee was involved with a group (BIF) in this country during a time period when BIF was doing very little, if anything, in this country and also a time period before bin Laden announced that al Qaeda was targeting this country.  Therefore, Mr. Batterjee is not alleged to have participated in any activities during a period after bin Laden and al Qaeda began targeting actions against the United States.

Nor have plaintiffs set forth evidence to support any allegation that Mr. Batterjee was a "primary participant" (or any other kind of participant) in the September 11 attacks, as is required for this Court to exercise personal jurisdiction over him.  *In re* Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003).

Therefore, plaintiffs have failed to allege facts that make out a *prima facie* showing of personal jurisdiction over Mr. Batterjee.

### II.     Plaintiffs Have Not Properly Served Mr. Batterjee Because Their Attempt To Serve Him By Publication Was Substantively Improper.

Plaintiffs' attempt to serve Mr. Batterjee by publication in two newspapers – which he does not read or access – was substantively improper.  Mr. Batterjee respectfully refers this Court, and incorporates herein, the discussion of the plaintiffs' improper service of process by publication in the reply brief filed by Mr. Al-Hussayen (July 23, 2004).  See Reply Brief in Support of Saleh Al-Hussayen's Motion to Dismiss the Third Amended Complaint, at Part III.B (July 23, 2004) (incorporated by reference herein).

Therefore, this Court should find that service by publication on Mr. Batterjee did not constitute adequate notice to him, and was not justified under the circumstances.

## CONCLUSION

For the foregoing reasons, and those set forth in Mr. Batterjee's motion to dismiss, this Court must dismiss plaintiffs' Third Amended Complaint for lack of personal jurisdiction and improper service of process.

      Respectfully submitted,

      /s/ Lynne Bernabei

      Lynne Bernabei, Esquire  (LB2489)
      Alan R. Kabat, Esquire  (AK7194)
      Bernabei & Katz, PLLC
      1773 T Street, N.W.
      Washington, D.C. 20009-7139
      (202) 745-1942

      Attorneys for Defendant
       Shahir A. Batterjee (D67)

DATED:  July 23, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

————————————
Alan R. Kabat