**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL No. 1570 (RCC) ECF Case |

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

**REPLY BRIEF IN SUPPORT OF SALEH AL-HUSSAYEN'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

          Lynne Bernabei, Esquire  (LB2489)
          Alan R. Kabat, Esquire  (AK7194)
          Bernabei & Katz, PLLC
          1773 T Street, N.W.
          Washington, D.C. 20009-7139
          (202) 745-1942

          Attorneys for Defendant
           Saleh Al-Hussayen (D222)

DATED:  July 23, 2004

**INTRODUCTION**

In his motion to dismiss (Docket No. 81), Saleh Al-Hussayen (D222) argued that dismissal was warranted, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because he has sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, et seq. ("FSIA"), because this court lacks personal jurisdiction over him, since his sole contact with this country were two visits, for medical and tourist purposes, and because plaintiffs' attempt to serve him by publication was substantively improper. Plaintiffs, in their Opposition (Docket No. 281), have conceded Mr. Al-Hussayen's FSIA sovereign immunity, by not addressing defendant's argument. Therefore, this Court need go no further in considering plaintiffs' Opposition, and must grant Mr. Al-Hussayen's motion to dismiss on that ground by failing to address the primary argument in his motion.

Plaintiffs improperly attempt to amend their Complaint by making new factual allegations in their Opposition – that are not in the Complaint – which may not be considered by this Court.

Finally, plaintiffs' counsel misrepresent, in a material way, a court document they filed regarding service of process, and Judge Robertson's order, in a desperate and wholly improper attempt to make out proper service of process on Mr. Al-Hussayen. Plaintiffs' counsel's sanctionable conduct should led to this Court's striking of plaintiffs' Opposition to Mr. Al-Hussayen's motion to dismiss.

**ARGUMENT**

**I.      This Court Lacks Subject Matter Jurisdiction Because Mr. Al-Hussayen Is Immune From Suit Under The Foreign Sovereign Immunities Act.**

Plaintiffs have conceded that Mr. Al-Hussayen has sovereign immunity under the FSIA.

Mr. Al-Hussayen set forth three paragraphs describing the nature of his governmental positions (Mot., at 2-3), and five pages of legal argument explaining that this Court lacked subject matter jurisdiction over any claims against him, because none of the statutory exceptions to FSIA applied. Mot., at 4-9. Plaintiffs have conceded this argument through their failure to address it in their opposition to Mr. Al-Hussayen's motion to dismiss. It is settled law in this Circuit that when a defendant raises a particular defense in a dispositive motion, and the plaintiff fails to respond to that defense, then the plaintiff has conceded the defense. Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

## II.     This Court Does Not Have Personal Jurisdiction Over Mr. Al-Hussayen.

Even if this Court were to overrule *sua sponte* defendant's FSIA defense, it must still find that plaintiffs' Opposition fails to address the threshold issue: that this Court lacks personal jurisdiction over Mr. Al-Hussayen, a nonresident foreign defendant, because he has not done anything that connects him to this forum, or to the acts that caused or supported the September 11 attacks. Although plaintiffs now claim that Mr. Al-Hussayen somehow supported al Qaeda (Opp. at 4-5), the evidence they have presented fails to support that he ever did anything that proximately caused the September 11 attacks.

Plaintiffs have the burden to "allege facts constituting a *prima facie* showing of personal jurisdiction." PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Because they cannot meet that burden by reason of Mr. Al-Hussayen's minimal contacts with this country,

they have impermissibly argued that this Court should look at personal jurisdiction with respect to all defendants.  See Pl. Opp. (Al-Husaini), at 13-17.  Plaintiffs' approach contravenes the Supreme Court's clear precedent that holds that "each defendant's contacts with the forum state must be assessed individually."  Calder v. Jones, 465 U.S. 783, 790 (1984); PDK Labs, 103 F.3d at 1108 ("personal jurisdiction inquiries are necessarily fact sensitive because each case is dependent upon its own particular circumstances.").[1]

Further, plaintiffs have conceded that the sole basis on which personal jurisdiction over Mr. Al-Hussayen is under a theory of "specific jurisdiction" as they have failed to address Mr. Al-Hussayen's arguments on the other two approaches to personal jurisdiction.  Therefore, the only argument that this Court should consider is whether Mr. Al-Hussayen "purposefully directed his conduct at the United States," see Opp. at 4, as plaintiffs now argue.  It is settled law that when a defense is raised in a dispositive motion, but the plaintiff fails to respond to that defense, the plaintiff has conceded the defense.  Marks Music Corp., 222 F.2d at 493; Stephenson, 223 F. Supp. 2d at 121.

Since plaintiffs cannot demonstrate that Mr. Al-Hussayen "purposefully directed" any activities at the United States that caused their injuries, they fail to establish personal jurisdiction over him.

---

[1] It is plaintiffs' burden, under Rule 8(a)(1), Fed. R. Civ. P., to plead facts in their complaint that would support the exercise of personal jurisdiction over each defendant.  It is not, as plaintiffs' claim, see Opp. (Al-Husaini), at 10 n.3, defendants' burden to ask for a more definite statement under Rule 12(e), Fed. R. Civ. P., with respect to personal jurisdiction.  "Motions for more definite statements are generally disfavored," MTV Networks v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994), since Rule 12(e) "is designed to correct only unintelligibility in a pleading, not merely a claimed lack of detail."  FRA S.p.A. v. Surg-O-Flex of Amer., Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976).

### A. Plaintiffs Have Improperly, And Without Court Approval, Amended Their Complaint By Raising New Allegations In Their Opposition Brief.

This Court must disregard any new allegations submitted by plaintiffs in their Opposition as constituting an improper attempt to amend their Complaint. The plaintiffs have created a "moving target" for the defendants. Even if this Court permits this amendment, then Mr. Al-Hussayen must be given an opportunity to move to dismiss the newly amended Complaint, as an opposition cannot raise new facts that the movant has not had the opportunity to address in its dispositive motion.

Under Second Circuit precedent, plaintiffs cannot amend their complaint by adding allegations for the first time in an opposition to a motion to dismiss. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief"). Plaintiffs also cannot claim that 28 U.S.C. § 1653 allows them "liberal amendments as to jurisdiction" (Opp. at 3), since it is settled law that Section 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Newman-Green v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989); accord Asset Value Fund Ltd. P'ship v. The Care Group, 179 F.R.D. 117, 119 (S.D.N.Y. 1998) (quoting Newman-Green).

Therefore, this Court should not consider, in deciding Mr. Al-Hussayen's motion to dismiss, "new facts" identified for the first time in plaintiffs' Opposition.

### B. Even Plaintiffs' New Allegations Regarding Mr. Al-Hussayen Fail To Support The Exercise of Personal Jurisdiction Over Him.

Even if this Court were to consider plaintiffs' new allegations about Mr. Al-Hussayen, it

4

must still find that those allegations fail to support the exercise of personal jurisdiction over him.

Plaintiffs raise two new allegations about Mr. Al-Hussayen.  See Opp. at 4-5.  First, plaintiffs assert that "Saleh al-Hussayen actively supported co-Defendant Islamic Association of North America (IANA)," id. at 4, and claim falsely that this factual allegation is alleged in the Complaint.  Id.  Neither Mr. Al-Hussayen nor IANA are mentioned anywhere in the plaintiffs' Third Amended Complaint.  Furthermore, the only "authority" that plaintiffs cite for their allegations regarding Mr. Al-Hussayen or IANA is a newspaper article, published more than a year *after* the filing of their Third Amended Complaint.  Id. (citing Oct. 2, 2003 *Washington Post* article).  This newspaper article is inadmissible hearsay.[2]  Finally, this Court can take judicial notice of the fact that the U.S. government has never designated IANA as a terrorist organization, which contradicts plaintiffs' arguments regarding the organization's alleged terrorist activities.[3]

Next, plaintiffs make the equally baseless allegation that since bin Laden and al Qaeda had directed their activities against this country since the mid-1990's, persons "who provided material support in that period plainly knew that they were targeting the United States."  See Opp. at 5.  However, nowhere in the Complaint or in the newly submitted "factual" allegations have plaintiffs identified any "material support" that Mr. Al-Hussayen provided to IANA or any

---

[2] See Rule 801(c), Fed. R. Evid.; United States v. Microsoft Corp., 253 F.3d 34, 108 (D.C. Cir. 2001) (en banc) (per curiam) ("[W]e need to state a few words about the state of the record.  All we have are the published accounts . . . .  These accounts were not admitted in evidence.  They may be hearsay."); Metropolitan Council of NAACP Branches v. FCC, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a *New York Times* article is admissible evidence of the truthfulness of its contents.").

[3] See Department of the Treasury, Office of Foreign Assets Control, "Specially Designated Nationals and Blocked Persons" (July 23, 2004), <http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf>.

other organization, <u>with</u> <u>knowledge</u> that he was supporting terrorist activities.[4]  Nor have plaintiffs given a time frame for any such "support," other than noting that IANA was incorporated in 1993.  See Opp. at 4.  This likely precludes plaintiffs' personal jurisdiction argument, because by plaintiffs' admissions in other pleadings, their own evidence shows that it was not until 1996 and later that Osama bin Laden openly targeted the United States.  See Third Am. Compl., ¶¶ 315, 576, 584-85; Pl. Opp. (Al-Husaini) (Docket No. 272), at 13-15 (citing documents from 1996, 1997, 1998, 1999, and 2001).

Plaintiffs also rely on a report prepared by a law student, which states that "Bin Laden's first declaration of war" was in October 1996.  <u>Id.</u>, Ex. 16, at 18.  However, this report nowhere mentions Mr. Al-Hussayen.

Therefore, the only inference that can be drawn from any of plaintiffs' new allegations, and newly attached documents, is that any activity that Mr. Al-Hussayen may have engaged in, including advocacy, took place <u>before</u> bin Laden had targeted the United States, and at a time when the U.S. government was supporting bin Laden and the mujahedin in their fight against the Soviets in Afghanistan.[5]  Taken together, plaintiffs' new claim that Mr. Al-Hussayen provided support to al Qaeda by providing support to IANA is not supported by the documents which plaintiffs submit.

---

[4] Any advocacy that Mr. Al-Hussayen may ever have engaged in would not constitute material support as a matter of law, absent a showing of specific intent to cause imminent harm.  Mr. Al-Hussayen respectfully refers this Court to, and incorporates herein, the discussion of material support set forth in the reply briefs of Safer Al-Hawali and Salman Al-Oadah (July 23, 2004).

[5] Defendant respectfully refers this Court, and incorporates herein, the discussion in Al-Husaini's Reply Brief (July 23, 2004) of the U.S. Government's support for the mujahedin in Afghanistan during the 1980's and early 1990's, at a time when Osama bin Laden was also part of the mujahedin.  See Reply Brief in Support of Hamad Al-Husaini's Motion to Dismiss the Third Amended Complaint, at Part I.B (July 23, 2004) (incorporated by reference herein).

### C. This Court Cannot Exercise Personal Jurisdiction Over Mr. Al-Hussayen Under The Specific Jurisdiction Theory.

Under the specific jurisdiction theory, plaintiffs' allegations fail to support their "purposefully directed" claim. Plaintiffs have not offered any competent evidence that Mr. Al-Hussayen's activities – even as falsely alleged by plaintiffs – were "expressly aimed" at the United States, as is required to allow the exercise of personal jurisdiction. Burger King v. Rudzewicz, 471 U.S. 462, 474-76 (1985); Calder, 465 U.S. at 789-90. At most, plaintiffs have alleged that Al-Hussayen was involved with a group (IANA) that has not been designated as a terrorist organization. Plaintiffs have also failed to set forth any facts that would show that Mr. Al-Hussayen knowingly participated in any activities that he knew would lead to attacks on the United States, or the specific attacks of September 11, 2001.

Moreover, plaintiffs have failed to set forth any allegation that Mr. Al-Hussayen was a "primary participant" in the September 11 attacks, as is required for this Court to exercise personal jurisdiction over him. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003).

### III. Plaintiffs Have Not Properly Served Mr. Al-Hussayen.

### A. Judge Robertson Did Not Approve Service By Publication on Al-Hussayen.

Mr. Al-Hussayen refers this Court, and incorporates herein, the discussion of the plaintiffs' improper service of process by publication in the reply brief filed by Mr. Al-Oadah (July 23, 2004). As set forth in greater detail in Mr. Al-Oadah's reply brief, plaintiffs have fabricated a court document and misrepresented an order by Judge Robertson, in an attempt to argue that they have properly served Mr. Al-Hussayen and four other defendants. See Reply Brief in Support of Salman Al-Oadah's Motion to Dismiss the Third Amended Complaint, at

Part II.A (July 23, 2004) (incorporated by reference herein).

Because of plaintiffs' counsel's clearly sanctionable conduct, plaintiffs' opposition to Mr. Al-Hussayen's motion to dismiss should be stricken, and Mr. Al-Hussayen's motion granted.

### B.    **Plaintiffs' Attempt to Serve By Publication was Substantively Improper.**

Even if this Court were to ignore plaintiffs' reliance on a fabricated court filing, it must still find that plaintiffs' attempt to serve Mr. Al-Hussayen by publication in two newspapers – which he cannot read or access – was substantively improper. Plaintiffs recognize that the Second Circuit's decision in SEC v. Tome, 833 F.2d 1086 (2d Cir. 1987) sets forth the due process requirements of notice for service by publication. See Pl. Opp. (S. Batterjee) at 9, 11 (Docket No. 276); Pl. Opp. (Al-Oadah), at 8, 11 (Docket No. 275).

However, plaintiffs left out a key phrase from Tome in their opposition briefs: the Second Circuit upheld service by publication because the government "chose a publication likely to be read by international investors," in a lawsuit where the foreign defendants were international investors. Tome, 833 F.2d at 1093. Plaintiffs are aware of this statement, because they quoted it in their March 24, 2003 motion for service by publication, see Pl. Mot., at 4 (Mar. 24, 2003) (*Burnett* D.D.C. Docket No. 95) (attached hereto as Exhibit 1), but plaintiffs have now conveniently overlooked this statement in their opposition. In this instance, plaintiffs did not choose publications "likely to be read" by Mr. Al-Hussayen as the means to serve him by publication, a factor that the Tome court found important. Plaintiffs' own proof of service shows that one publication, the *International Herald Tribune*, has a circulation of only 199 in Saudi

8

Arabia.[6]  As for *Al Quds Al Arabi*, which is banned in Saudi Arabia, plaintiffs make the bizarre assertion that copies might somehow be smuggled into Saudi Arabia – which ignores that country's proscriptions on the importation of publications – and then somehow clandestinely provided to Mr. Al-Hussayen and others.  See Pl. Opp. (S. Batterjee), at 10 (Docket No. 276); Pl. Opp. (Al-Oadah), at 9 (Docket No. 275).  This wholly speculative approach is contrary to Tome and the Supreme Court's holding in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950) that service by publication violates due process where the publication is in newspapers that do not reach the defendant.

Plaintiffs have also argued that service by publication was warranted because their process server, Nelson Tucker, submitted a sworn affidavit, dated March 14, 2003, to support their assertion that it was not possible to serve defendants in Saudi Arabia.  See Ex. 1, Att. A, ¶ 10 (Tucker Aff.); Pl. Opp. (S. Batterjee), at 10-11 (Docket No. 276); Pl. Opp. (Al-Oadah), at 7-8, 10 (Docket No. 275).  However, the Tucker Affidavit is directly contradicted by his firm's website, which proclaims that "We Serve Anywhere in the World!" and has a lengthy section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quoting a specific rate for Saudi Arabia.  See Process Service Network, "International" and "Saudi Arabia" (attached hereto as Exhibits 2-3).  This Court must disregard Mr. Tucker's affidavit as being contradicted by his own business records, and thereby being of no evidentiary value.

Finally, plaintiffs argue that any defects in their service of process should be ignored because Mr. Al-Hussayen and other defendants entered an appearance in this case.  See Pl. Opp.

---

[6] Plaintiffs have conceded that this publication, in English, is not accessible to defendants Safer Al-Hawali, Salman Al-Oadah, and Hamad Al-Husaini, who cannot read English.

(Batterjee), at 9, 12-13 (Docket No. 276); Pl. Opp. (Al-Oadah), at 8, 12 (Docket No. 275). Plaintiffs' argument impermissibly renders Rule 12(b)(5) a nullity, thereby ignoring the fact that service of process challenges are expressly allowed under the Federal Rules, and must be filed with the defendant's initial response to a complaint.  Moreover, Mr. Al-Hussayen's entry of appearance was made with the express reservation of not "waiving any defenses under Rule 12(b), Fed. R. Civ. P."  See Entry of Appearance, at 2 (Docket No. 21) (Mar. 10, 2004).

Therefore, this Court should find that service by publication on Mr. Al-Hussayen was not authorized by Judge Robertson, does not constitute adequate notice to him, and was not justified under the circumstances.

## CONCLUSION

For the foregoing reasons, and those set forth in Mr. Al-Hussayen's motion to dismiss, this Court must dismiss plaintiffs' Third Amended Complaint for lack of personal jurisdiction and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Saleh Al-Hussayen (D222)

DATED:  July 23, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat