IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | CASE NO. 03 MD 1570 (RCC) |

*This document relates to*:   Federal Insurance Co. v. al Qaida
Case No. 03-CV-6978

### REPLY IN SUPPORT OF TAHA AL-ALWANI, MUHAMMAD ASHRAF, M. OMAR ASHRAF, M. YAQUB MIRZA, AND IQBAL UNUS'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

In their Opposition Brief,[1] Plaintiffs attempt in two ways to justify their lack of *any facts* connecting Dr. Taha Al-Alwani, Mr. Muhammad Ashraf, Mr. Omar Ashraf, Dr. Yaqub Mirza, and Dr. Iqbal Unus (collectively, the "Individuals")[2] to any act of terrorism alleged in the Complaint. First, Plaintiffs improperly rely on facts not alleged in the Complaint[3] (in clear contravention of the standard of review on a motion to dismiss); and second, by trying to weasel in "facts" against the Individuals by reference to general allegations against all defendants, all "charity defendants," and/or "a constellation of entities" Plaintiff refers to as the "SAAR Network," again with no supporting facts.

---

[1]   The Federal Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Filed By Saar Executive Defendants Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus is referred to herein as "Plaintiffs' Opposition" or the "Opposition Brief."

[2]   Plaintiffs refer to these Individuals as the "Saar Executive Defendants"—a term not condoned by the Individuals because it has no basis in fact, nor is it anywhere defined by Plaintiffs in their Opposition Brief or Complaint. This Court should strike all references to this phrase as these individuals most properly should be referred to by their names, in their individual capacities.

[3]   The Individuals intend to file a motion to strike the new allegations in Plaintiffs' Opposition.

Neither attempt has any merit, because *even with* the superfluous pleading, Plaintiffs still do not state what it is that the Individuals *did* (or agreed to do) that would connect them, individually, to any act of international terrorism. Such ghastly, baseless, fact-less charges hurled indiscriminately by this Complaint against these Americans are so inherently destructive of their rights and reputations that they are an abuse of the enlightened purposes behind the federal rules. Rule 8 of the Federal Rules of Civil Procedure's liberal standards are intended as a shield against the abuses of ancient pleading rules, not as a sword to destroy reputations and rights of these citizens where there are no supporting allegations of fact.

I.   **Plaintiffs Cannot Define the Individuals Into a "SAAR Network"**

Plaintiffs apparently have adopted the same theory, advanced without facts in the *Burnett*[4] and *Ashton*[5] actions, that the Individuals are part of a vast, "terrorist-financing" network in northern Virginia. They refer to it by the same name: the so-called "SAAR Network." And now, after months of referring to the Individuals as being part of the "SAAR Network" in the *Burnett* action, followed by *Ashton*, the Federal Plaintiffs claim that the Individuals are "*commonly known* as the 'SAAR Network.'" (Opp. at 1) (emphasis added). This categorization, though, is wholly contrived by the plaintiffs to suit their purposes in this litigation.

Given that this tautology is the only *possible* way to avoid the dismissal of the Complaint, because there are *no* facts alleged that relate to the Individuals personally, it is not surprising that Plaintiffs attempt to lump the Individuals together to fit them into their mass conspiracy theory.

---

[4]   *Burnett v. Al Baraka Investment Co.*, United States District Court for the Southern District of New York, Case No. 03-CV-9849 (RCC).

[5]   *Ashton v. Al Qaeda Islamic Army*, United States District Court for the Southern District of New York, Case No. 02-CV-6977 (RCC).

But not only is there no such thing as "The SAAR Network," these Individuals *are not even mentioned* in the section of the Complaint where the Plaintiffs attempt to create the network, making their reliance on this argument even more confusing and troubling.

Plaintiffs state that they are not required to present their evidence against each of the Individuals at this stage in the proceedings. (Opp. at 6.) It is "unnecessary" and "simply [ ] not required in notice pleading." (*Id.*) Plaintiffs rely on the United States Court of Appeals for the District of Columbia Circuit's holding in *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2002) that one sentence, "I was turned down for a job because of my race," was sufficient to survive a 12(b)(6) motion.

But this sentence clearly alleges who the victim is; what happened; why; and the basis for liability. Here, in response to a motion made by Dr. Al-Alwani for failure to state a claim against him, Plaintiffs rely on a section of the Complaint that does not have his name in it; what he did; or why what he did is the basis of any claim. Rather, the section refers to an alleged group of "charities, think tanks and for-profit businesses within the United States . . . [that] generate and surreptitiously transfer funds to terrorist organizations, including al-Qaida." (Compl. at ¶ 222.) Neither the Complaint nor Plaintiffs' Opposition states which entity, if any, Dr. Al-Alwani was a member of, when, or which specifically transferred funds to terrorist organizations, or whether he was the one that transferred the funds, knew about it, or did it because he foresaw the attack on the United States that came to be known as "9/11." The same is true for Mr. M. Ashraf, Mr. O. Ashraf, Dr. Mirza, and Dr. Unus.

Plaintiffs apparently believe that it is not unconscionable to allege that law-abiding citizens are involved in a conspiracy to finance al Qaida, or have aided and abetted terrorist organizations, in post-9/11 America, *despite that* they have no facts to prove their theory. In

fact, Plaintiffs appear to admit that they cannot support their conspiracy theory against the Individuals because they argue that "notice pleading" allows them to "conduct discovery before they should be called upon to present their evidence." (Opp. at 6.) But the "liberal opportunity for discovery" made possible by "notice pleading" was not intended to permit a complainant to make sweeping allegations against anyone and through this act, somehow, earn the right to *fish* for evidence later. *Id.*, quoting *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 322 (S.D.N.Y. 2003).

Plaintiffs' insistence that their Complaint be read "in its entirety" is also wrong and based on false assumptions. Whereas Plaintiffs point the Individuals to their "General Allegations Common to All Charity Defendants" section to search for facts related specifically to them, Plaintiffs can find none. (Compl. at ¶¶ 79-83.) The "general allegations" that relate to the "charity defendants" instead focus on "Islamic charities under the control of the Kingdom of Saudi Arabia."[6] (Compl. at ¶ 79.) Given that all of the other "ostensible charitable organizations" that Plaintiffs attempt to pin the destruction of the World Trade Center on are each alleged to be "an agency, instrumentality and organ of the Kingdom of Saudi Arabia," . . .

---

[6] Three other "charity defendants" are not alleged to be agencies, instrumentalities, or organs of the Kingdom of Saudi Arabia, but two of these three organizations already have been designated by the government as terrorist organizations, and the third has admitted to be a successor of a designated entity, pursuant to the Complaint. *See* Compl. at ¶ 218 (Global Relief Foundation: designated); ¶ 235 (Blessed Relief (Muwafaq) Foundation: designated); and ¶ 250 (Taibah International Aid Association: successor to Global Relief Foundation following its designation by the U.S. government in October 2002).

4

"control[led] and direct[ed]" by the Kingdom, reliance on this section as proof of the claims against the Individuals seems misplaced.[7]

Plaintiffs also appear to be attempting to group the Individuals into categories within which they simply do not fit. But there are no allegations that the Individuals are Wahhabis; Islamic fundamentalists; or that their mission is to spread conservatism among Muslims—likely because Plaintiffs know that their goals are the opposite. For example, Dr. Al-Alwani teaches Islamic thought to *women* students and employs *women* teachers at his school. These men are United States citizens who escaped oppressive regimes to come to the United States to educate other Muslims so that they could live in a modern world and still practice Islamic teachings.

The fact that the Individuals are each mentioned in this Complaint *once*, in a laundry-list of the defendants who are alleged to be "among the al Qaida sympathizers, supporters, and financiers who conspired toward and otherwise enabled the Attack by acting as founders, officers and directors of the numerous SAAR Network entities that provided support for al Qaida," is wholly insufficient to state a claim. (Opp. at 2.) These are not *facts*, and do not sufficiently apprise the Individuals of the allegations against them. The Complaint as to them should be dismissed.

## II.  Plaintiffs' RICO Statement Does Not Assist Their RICO Claim

Plaintiffs criticize the Individuals for "fail[ing] to take into account . . . Plaintiffs' RICO

---

[7] *See* Compl. at ¶ 85 (Benevolence International Foundation); ¶ 114 (Muslim World League); ¶ 131 (International Islamic Relief Organization); ¶ 151 (World Assembly of Muslim Youth); ¶ 168 (Al Haramain Islamic Foundation); ¶ 181 (Saudi High Commission); ¶ 191 (Saudi Red Crescent Society); ¶ 203 (Saudi Joint Relief Committee for Kosovo and Chechnya); and ¶ 208 (Rabita Trust) (all "charity" defendants that are agents or instrumentalities of the Kingdom of Saudi Arabia and controlled and directed by same.

Statement, provided pursuant to Case Management Order #2, [which] is 'deemed an amendment to the Federal Insurance Plaintiffs' . . . Amended Complaint, by incorporation by reference.'" (Opp. at 13, citing Case Mgmt. Order ¶ 14.)  But Plaintiffs' RICO Statement *was not filed* until July 16, 2004 (one week ago), and the Individuals did not have it when they filed their motion to dismiss; in fact, it was filed and received *after* Plaintiffs filed their Opposition Brief.

Notwithstanding the belated RICO Statement, Plaintiffs still have not made out a RICO claim against the Individuals.  Plaintiffs claim that the Individuals participated in an alleged racketeering enterprise, "Radical Muslim Terrorism," but their alleged predicate acts fail to support such a claim.  Plaintiffs have failed to allege a "pattern" of racketeering activity, consisting of two predicate acts, that are related, and that "amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Section 1961(1)(A) defines the necessary predicate acts that can be defined as "racketeering activity."  This list does *not* include "defrauding the US Government" (18 U.S.C. § 371 (RICO Stmt. at ¶ 5(a)); "filing false or materially false tax returns" (26 U.S.C. ¶ 7206(1), (2)) (*id.*); or "engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws" (26 U.S.C. § 7212(a)) (*id.*).

Further, the predicate acts of "money laundering" and "illegal transactions in monetary instruments" (*id.*) require specific allegations as to the transactions that caused such violations.  Plaintiffs do not indicate in their RICO Statement what any of the Individuals did to cause such alleged violations, nor do they indicate that any of the Individuals used "proceeds" from a designated "specified unlawful activity . . . knowing that the property involved represents the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(c)(1), (4), (7).  Plaintiffs also do not allege that the Individuals "knowingly engaged in any monetary transaction in criminally

6

derived property." 18 U.S.C. § 1957(a). Plaintiffs only mention one of the Individuals by name, Dr. Mirza, and attempt to lure him into a RICO action due only to his "control" of unnamed entities. (RICO Stmt. at ¶ 5(f).) This also patently fails to state a RICO cause of action.

### III. Plaintiffs' Conspiracy Theory for Personal Jurisdiction Also Fails On the Pleading

Relying on New York's long-arm statute,[8] Plaintiffs state—without reference to the Complaint—that the Individuals "were participants in a conspiracy that resulted in catastrophic effects in this jurisdiction." (Opp. at 19.) In addition, Plaintiffs point to "a modified due process standard for mass torts in which territorial contacts are replaced with state interests" for purposes of in personam jurisdiction. (*Id.*) But for all the reasons articulated above—that Plaintiffs have not adequately pled a conspiracy or any of the statutory claims with adequate specificity—their reliance on the "general allegations" of the Complaint in support of their claim that the court can exercise personal jurisdiction over these Individuals, similarly, fails. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (nexus between New York contacts and illegal conduct must be demonstrated with "specific facts"); *In re Nazi Era Cases Against German Defendants Litig.*, Civil No. 02-3890 (WGB), 2004 WL 1246020, at *15 (D.N.J. May 20, 2004) ("a plaintiff must allege specific facts connecting the non-resident defendant to activity in New York *in furtherance of the conspiracy*") (emphasis added).

#### A. "Conspiracy Jurisdiction"

As the Court is well aware, it may exercise personal jurisdiction over a non-resident who "in person or through an agent . . . commits a tortious act without the state causing injury to

---

[8] Plaintiffs do not address the Individuals' contacts with the United States as a whole under either of the statutes that confer personal jurisdiction based upon their nationwide service of process provisions; therefore this argument is not addressed herein.

7

person or property within the state . . . ." N.Y.C.P.L.R. § 302(a)(3).  Plaintiffs argue that this section of New York's long-arm statute confers jurisdiction "where a plaintiff has presented a sufficient showing that a conspiracy exists" because personal jurisdiction may be "based on acts committed by [the defendant's] co-conspirators."  Opp. at 19, quoting *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998).

It is axiomatic, then, that jurisdiction may not be conferred under this concerted-action theory of liability where the Plaintiffs have not pled properly a conspiracy.  *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction."); *In re Nazi Era Cases*, 2004 WL 1246020, at *15 ("A plaintiff may not rely solely upon a 'bland assertion' of conspiracy to establish personal jurisdiction over a non-resident defendant.")  Plaintiffs simply have stated no facts that would subject the Individuals to conspiracy liability.  *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

To establish conspiracy jurisdiction, a plaintiff must (1) make a *prima facie* showing of a conspiracy; (2) "allege *specific facts* warranting the inference that the defendant was a member of the conspiracy"; and (3) "show that the defendant's co-conspirator committed a tortious act in New York during and pursuant to the conspiracy."  *Id.* (emphasis added); *see also Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998).[9]  Because Plaintiffs have not met this test, this Court should not exercise jurisdiction over the Individuals.

---

[9] If the Court finds that the Plaintiffs have made a *prima facie* showing of conspiracy, they then must show the Individuals' membership in the conspiracy by "establishing: (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New

(footnote continued on next page)

In the alternative, Plaintiffs' "conspiracy" jurisdiction theory fails because the defendant or agent must (i) "regularly do[ ] or solicit[ ] business, . . . or derive[ ] substantial revenue from goods used or consumed or services rendered, in the state" or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y.C.P.L.R. § 302(a)(3)(i)-(ii).  There are absolutely no allegations in the Complaint that the Individuals or any co-conspirators derive substantial revenue from New York or from international commerce, such that this Court should hold that personal jurisdiction should be exercised over the Individuals under New York's long-arm statute.

**B.     Due Process**

Not only does jurisdiction over the Individuals fail under New York law, but it similarly fails under the constitutional rigors of due process.  Due process permits a court's exercise of personal jurisdiction over a non-resident defendant only if there exists sufficient "minimum contacts" between the defendant and the forum state such that they should reasonably anticipate being haled into court there.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Even if the facts demonstrated the necessary showing of "minimum contacts" in this case (which they do not), the Court would still have to find that the exercise of jurisdiction over the non-domiciliary Individuals was reasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112-14 (1987).  Under this analysis, Plaintiffs reliance on *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp.

---

(footnote continued from previous page)
York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant." *In re Nazi Era Cases*, 2004 WL 1246020, at *17, citing *Simon*, 86 F. Supp. 2d at 120; *Chrysler*, 778 F. Supp. at 1269.

325 (E.D.N.Y. 1998) and *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003) is misplaced, which Plaintiffs admit as such by acknowledging that these cases apply to foreign states, not American citizens.  (Opp. at 23 n.1.)

Neither should the Court condone the application of the "modified due process standard for mass torts in which territorial contacts are replaced with state interests" here.  (Opp. at 19.)  Presumably, because Plaintiffs are aware that the Court cannot sustain a finding of personal jurisdiction under traditional standards, they hope that the Court will lower the due process standard given the atrocity that occurred on September 11th.  (Opp. at 19.)  The Court should refuse to do so, given that (a) the Individuals are by no stretch of the imagination "major defendants" in this litigation (*Simon*, 86 F. Supp. 2d at 129); and (b) such horrific accusations mandate that the Court uphold traditional constitutional guarantees.

## CONCLUSION

For all the foregoing reasons, Messrs. Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint with prejudice.

                                                               Respectfully submitted,

Dated:   July 23, 2004                  By:  /s/ Nancy Luque
                                                   NANCY LUQUE (NL-1012)
                                                   DONNA M. SHEINBACH (DS-6247 )
                                                   **GRAY CARY WARE & FREIDENRICH LLP**
                                                 1625 Massachusetts Avenue NW, Suite 300
                                                 Washington, DC  20036-2247
                                                 Tel: 202-238-7764
                                                 Fax: 202-238-7701

                                                 *Attorneys for Taha Al-Alwani,*
                                                 *Muhammad Ashraf, M. Omar Ashraf,*
                                                 *M. Yaqub Mirza, and Iqbal Unus*
                                                 *(Admitted Pro Hac Vice)*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of July, 2004, I caused an electronic copy of the foregoing Reply in Support of Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus's Motion to Dismiss the First Amended Complaint to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

                                                        /s/ Donna M. Sheinbach
                                                        Donna M. Sheinbach (DS-6247)