IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

CASE NO. 03 MD 1570 (RCC)

*This document relates to*:   Federal Insurance Co. v. al Qaida
Case No. 03-CV-6978

### REPLY IN SUPPORT OF JAMAL BARZINJI'S
### MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

In their Opposition Brief,[1] Plaintiffs attempt in two ways to justify their lack of *any facts* connecting Dr. Jamal Barzinji to any act of terrorism alleged in the Complaint. First, Plaintiffs improperly rely on facts not alleged in the Complaint[2] (in clear contravention of the standard of review on a motion to dismiss); and second, by trying to weasel in "facts" against Dr. Barzinji by reference to general allegations against all defendants, all "charity defendants," and/or "a constellation of entities" Plaintiff refers to as the "SAAR Network," again with no supporting facts.

Neither attempt has any merit, because *even with* the superfluous pleading, Plaintiffs still do not state what it is that Dr. Barzinji *did* (or agreed to do) that would connect him, individually, to any act of international terrorism. Such ghastly, baseless, fact-less charges hurled indiscriminately by this Complaint against this American citizen are so inherently destructive of his rights and reputation that they are an abuse of the enlightened purposes behind

---

[1] The Federal Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Filed By Jamal Barzinji is referred to herein as "Plaintiffs' Opposition" or the "Opposition Brief."

[2] Dr. Barzinji intends to file a motion to strike the new allegations in Plaintiffs' Opposition.

the federal rules. Rule 8 of the Federal Rules of Civil Procedure's liberal standards are intended as a shield against the abuses of ancient pleading rules, not as a sword to destroy reputations and rights of citizens where there are no supporting allegations of fact.

**I.     Plaintiffs Cannot Define Dr. Barzinji As "The SAAR Network"**

Plaintiffs apparently have adopted the same theory, advanced without facts in the *Burnett*[3] and *Ashton*[4] actions, that Dr. Barzinji is part of a vast, "terrorist-financing" network in northern Virginia. They refer to it by the same name: the so-called "SAAR Network." This categorization, though, is wholly contrived by the plaintiffs to suit their purposes in this litigation, but is confusing, especially with respect to Dr. Barzinji, because Plaintiffs refer to him as "an executive and/or director of more than fourteen of the SAAR Network Entities," but he is not mentioned in the section of the Complaint entitled "The SAAR Network."

Plaintiffs state that they are not required to present their evidence against Dr. Barzinji at this stage in the proceedings. (Opp. at 6.) It is "unnecessary" and "simply [ ] not required in notice pleading." (*Id.*) Plaintiffs rely on the United States Court of Appeals for the District of Columbia Circuit's holding in *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2002) that one sentence, "I was turned down for a job because of my race," was sufficient to survive a 12(b)(6) motion.

But this sentence clearly alleges who the victim is; what happened; why; and the basis for liability. Here, in response to Dr. Barzinji's motion for failure to state a claim, Plaintiffs oppose

---

[3]   *Burnett v. Al Baraka Investment Co.*, United States District Court for the Southern District of New York, Case No. 03-CV-9849 (RCC).

[4]   *Ashton v. Al Qaeda Islamic Army*, United States District Court for the Southern District of New York, Case No. 02-CV-6977 (RCC).

the motion to dismiss based on his "executive and director roles," and his "authority over eighteen bank accounts for SAAR Network Entities." (Opp. at 2-3.)  From here, Plaintiffs make the inexplicable leap to the allegation that "Dr. Barzinji used [his executive and director roles] to aid and abet, conspire with, and support al Qaida."  (Opp. at 3, citing FAC ¶¶ 490-91.)

The remaining allegations are more conclusory allegations: for example, the Complaint states that Dr. Barzinji

> committed and conspired to: transmit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive [sic], fire, kidnapping or extortion . . . ; provide material support or resources to foreign terrorist organizations . . . ; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act.

Opp. at 3, citing FAC ¶ 490.  Plaintiffs claim the above is a statement by "federal authorities," but it does nothing to illuminate the claims against him.

Apparently, Plaintiffs believe that it is not unconscionable to allege that law-abiding citizens are involved in a conspiracy to finance al Qaida, or have aided and abetted terrorist organizations, in post-9/11 America, *despite that* they have no facts to prove their theory.  In fact, Plaintiffs appear to admit that they cannot support their conspiracy theory against Dr. Barzinji because they argue that "notice pleading" allows them to "conduct discovery before they should be called upon to present their evidence."  (Opp. at 6.)  But the "liberal opportunity for discovery" made possible by "notice pleading" was not intended to permit a complainant to make sweeping allegations against anyone and through this act, somehow, earn the right to *fish* for evidence later.  *Id.*, quoting *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 322 (S.D.N.Y. 2003).

3

Plaintiffs' insistence that their Complaint be read "in its entirety" is also wrong and based on false assumptions. Whereas Plaintiffs point Dr. Barzinji to paragraphs 79-83 of the Complaint, this section relates to the "General Allegations Common to All Charity Defendants." Dr. Barzinji obviously is not a "charity defendant"; moreover, the "general allegations" that relate to the "charity defendants" focus on "Islamic charities under the control of the Kingdom of Saudi Arabia."[5] (Compl. at ¶ 79.) Given that all of the other "ostensible charitable organizations" that Plaintiffs attempt to pin the destruction of the World Trade Center on are each alleged to be "an agency, instrumentality and organ of the Kingdom of Saudi Arabia," . . . "control[led] and direct[ed]" by the Kingdom, reliance on this section as proof of the claims against Dr. Barzinji, seems misplaced.[6]

Plaintiffs also appear to be attempting to group Dr. Barzinji into categories within which he simply does not fit. But there are no allegations that he is a Wahhabi; an Islamic fundamentalist; or that his mission is to spread conservatism among Muslims—likely because Plaintiffs know that his goals are the opposite. Dr. Barzinji is a United States citizen who

---

[5] Three other "charity defendants" are not alleged to be agencies, instrumentalities, or organs of the Kingdom of Saudi Arabia, but two of these three organizations already have been designated by the government as terrorist organizations, and the third has admitted to be a successor of a designated entity, pursuant to the Complaint. *See* Compl. at ¶ 218 (Global Relief Foundation: designated); ¶ 235 (Blessed Relief (Muwafaq) Foundation: designated); and ¶ 250 (Taibah International Aid Association: successor to Global Relief Foundation following its designation by the U.S. government in October 2002).

[6] *See* Compl. at ¶ 85 (Benevolence International Foundation); ¶ 114 (Muslim World League); ¶ 131 (International Islamic Relief Organization); ¶ 151 (World Assembly of Muslim Youth); ¶ 168 (Al Haramain Islamic Foundation); ¶ 181 (Saudi High Commission); ¶ 191 (Saudi Red Crescent Society); ¶ 203 (Saudi Joint Relief Committee for Kosovo and Chechnya); and ¶ 208 (Rabita Trust) (all "charity" defendants that are agents or instrumentalities of the Kingdom of Saudi Arabia and controlled and directed by same.

escaped an oppressive regime to come to the United States to educate other Muslims so that they could live in a modern world and still practice Islamic teachings.

Because Plaintiffs' rank speculation is the only thing that ties Dr. Barzinji to the allegations in the Complaint, the Complaint should be dismissed with prejudice.

## II.     Plaintiffs' RICO Statement Does Not Assist Their RICO Claim

Plaintiffs criticize Dr. Barzinji for "fail[ing] to take into account . . . Plaintiffs' RICO Statement, provided pursuant to Case Management Order #2, [which] is 'deemed an amendment to the Federal Insurance Plaintiffs' . . . Amended Complaint, by incorporation by reference.'" (Opp. at 12, citing Case Mgmt. Order ¶ 14.)  But Plaintiffs' RICO Statement *was not filed* until July 16, 2004 (one week ago), and Dr. Barzinji did not have it when he filed his motion to dismiss; in fact, it was filed and received *after* Plaintiffs filed their Opposition Brief.

Notwithstanding the belated RICO Statement, Plaintiffs still have not made out a RICO claim against him.  Plaintiffs claim that he participated in an alleged racketeering enterprise, "Radical Muslim Terrorism," but their alleged predicate acts fail to support such a claim. Plaintiffs have failed to allege a "pattern" of racketeering activity, consisting of two predicate acts, that are related, and that "amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Section 1961(1)(A) defines the necessary predicate acts that can be defined as "racketeering activity."  This list does *not* include "defrauding the US Government" (18 U.S.C. § 371 (RICO Stmt. at ¶ 5(a)); "filing false or materially false tax returns" (26 U.S.C. ¶ 7206(1), (2)) (*id.*); or "engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws" (26 U.S.C. § 7212(a)) (*id.*).

Further, the predicate acts of "money laundering" and "illegal transactions in monetary instruments" (*id.*) require specific allegations as to the transactions that caused such violations. Plaintiffs do not indicate in their RICO Statement what Dr. Barzinji did to cause such alleged violations, nor do they indicate that Dr. Barzinji used "proceeds" from a designated "specified unlawful activity . . . knowing that the property involved represents the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(c)(1), (4), (7). Plaintiffs also do not allege that Dr. Barzinji "knowingly engaged in any monetary transaction in criminally derived property." 18 U.S.C. § 1957(a). Plaintiffs do not even mention Dr. Barzinji by name.

The utter lack of any facts connecting Dr. Barzinji to a RICO cause of action destroys any claim Plaintiffs make that their RICO action should survive dismissal.

**III.    Plaintiffs' Conspiracy Theory for Personal Jurisdiction Also Fails On the Pleading**

Relying on New York's long-arm statute,[7] Plaintiffs state—without reference to the Complaint—that Dr. Barzinji "participated in a conspiracy that resulted in catastrophic effects in this jurisdiction." (Opp. at 17-18.) In addition, Plaintiffs point to "a modified due process standard for mass torts in which territorial contacts are replaced with state interests" for purposes of in personam jurisdiction. (Opp. at 18.) But for all the reasons articulated above—that Plaintiffs have not adequately pled a conspiracy or any of the statutory claims with adequate specificity—their reliance on the "general allegations" of the Complaint in support of their claim that the court can exercise personal jurisdiction over Dr. Barzinji, similarly, fails. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (nexus between New

---

[7]   Plaintiffs do not address Dr. Barzinji's contacts with the United States as a whole under either of the statutes that confer personal jurisdiction based upon their nationwide service of process provisions; therefore this argument is not addressed herein.

York contacts and illegal conduct must be demonstrated with "specific facts"); *In re Nazi Era Cases Against German Defendants Litig.*, Civil No. 02-3890 (WGB), 2004 WL 1246020, at *15 (D.N.J. May 20, 2004) ("a plaintiff must allege specific facts connecting the non-resident defendant to activity in New York *in furtherance of the conspiracy*") (emphasis added).

### A. "Conspiracy Jurisdiction"

As the Court is well aware, it may exercise personal jurisdiction over a non-resident who "in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . ." N.Y.C.P.L.R. § 302(a)(3). Plaintiffs argue that this section of New York's long-arm statute confers jurisdiction "where a plaintiff has presented a sufficient showing that a conspiracy exists" because personal jurisdiction may be "based on acts committed by [the defendant's] co-conspirators." Opp. at 19, quoting *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998).

It is axiomatic, then, that jurisdiction may not be conferred under this concerted-action theory of liability where the Plaintiffs have not pled properly a conspiracy. *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction."); *In re Nazi Era Cases*, 2004 WL 1246020, at *15 ("A plaintiff may not rely solely upon a 'bland assertion' of conspiracy to establish personal jurisdiction over a non-resident defendant.") Plaintiffs simply have stated no facts that would subject Dr. Barzinji to conspiracy liability. *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

To establish conspiracy jurisdiction, a plaintiff must (1) make a *prima facie* showing of a conspiracy; (2) "allege *specific facts* warranting the inference that the defendant was a member of the conspiracy"; and (3) "show that the defendant's co-conspirator committed a tortious act in

7

New York during and pursuant to the conspiracy." *Id.* (emphasis added); *see also Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998).[8]  Because Plaintiffs have not met this test, this Court should not exercise jurisdiction over Dr. Barzinji.

In the alternative, Plaintiffs' "conspiracy" jurisdiction theory fails because the defendant or agent must (i) "regularly do[ ] or solicit[ ] business, . . . or derive[ ] substantial revenue from goods used or consumed or services rendered, in the state" or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y.C.P.L.R. § 302(a)(3)(i)-(ii).  There are absolutely no allegations in the Complaint that Dr. Barzinji or any of his alleged co-conspirators derive substantial revenue from New York or from international commerce, such that this Court should hold that personal jurisdiction should be exercised over Dr. Barzinji under New York's long-arm statute.

**B.     Due Process**

Not only does jurisdiction over Dr. Barzinji fail under New York law, but it similarly fails under the constitutional rigors of due process.  Due process permits a court's exercise of personal jurisdiction over a non-resident defendant only if there exists sufficient "minimum contacts" between the defendant and the forum state such that they should reasonably anticipate being haled into court there.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[8]  If the Court finds that the Plaintiffs have made a *prima facie* showing of conspiracy, they then must show Dr. Barzinji's membership in the conspiracy by "establishing: (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant." *In re Nazi Era Cases*, 2004 WL 1246020, at *17, citing *Simon*, 86 F. Supp. 2d at 120; *Chrysler*, 778 F. Supp. at 1269.

Even if the facts demonstrated the necessary showing of "minimum contacts" in this case (which they do not), the Court would still have to find that the exercise of jurisdiction over Dr. Barzinji, a non-domiciliary, was reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112-14 (1987). Under this analysis, Plaintiffs reliance on *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998) and *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003) is misplaced, which Plaintiffs admit as such by acknowledging that these cases apply to foreign states, not American citizens. (Opp. at 23 n.1.)

Neither should the Court condone the application of the "modified due process standard for mass torts in which territorial contacts are replaced with state interests" here. (Opp. at 19.) Presumably, because Plaintiffs are aware that the Court cannot sustain a finding of personal jurisdiction under traditional standards, they hope that the Court will lower the due process standard given the atrocity that occurred on September 11th. (Opp. at 19.) The Court should refuse to do so, given that (a) Dr. Barzinji is by no stretch of the imagination a "major defendant[ ]" in this litigation (*Simon*, 86 F. Supp. 2d at 129); and (b) such horrific accusations mandate that the Court uphold traditional constitutional guarantees.

## CONCLUSION

For all the foregoing reasons, Dr. Barzinji respectfully requests that the Court grant his Motion to Dismiss the First Amended Complaint with prejudice.

Respectfully submitted,

Dated:  July 23, 2004       By:  /s/ Nancy Luque
                                                  NANCY LUQUE (NL-1012)
                                                  DONNA M. SHEINBACH (DS-6247 )
                                                  **GRAY CARY WARE & FREIDENRICH** LLP
                                                  1625 Massachusetts Avenue NW, Suite 300
                                                  Washington, DC  20036-2247
                                                  Tel: 202-238-7764
                                                  Fax: 202-238-7701

                                                  *Attorneys for Jamal Barzinji*
                                                  *(Admitted Pro Hac Vice)*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of July, 2004, I caused an electronic copy of the foregoing Reply in Support of Jamal Barzinji's Motion to Dismiss the First Amended Complaint to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

                                          /s/ Donna M. Sheinbach
                                          Donna M. Sheinbach (DS-6247)