T. Barry Kingham (TBK-1219)
Daria M. Ciaputa (DC-0490)
Jesse Clarke (JC-4410)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for*
*HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud,*
*Mohammed Bin Abdulrahman Al Ariefy*
*and Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
IN RE: TERRORIST ATTACKS ON          )          03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                   )          ECF Case
———————————————————— )

***This document relates to: Ashton v. Al Qaeda***
***Islamic Army, 02 CIV 6977 (RCC)***

**MEMORANDUM OF LAW OF HIS ROYAL HIGHNESS
PRINCE ABDULLAH AL FAISAL BIN ABDULAZIZ AL SAUD,
MOHAMMED BIN ABDULRAHMAN AL ARIEFY AND ALFAISALIAH
GROUP (A/K/A FAISAL GROUP HOLDING CO.) IN SUPPORT OF
THEIR MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

**Table Of Contents**

Page #

Table Of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Summary Of Allegations ............................................................................................... 2

Argument ....................................................................................................................... 4

   I   THIS COURT LACKS PERSONAL
       JURISDICTION OVER THE AFG DEFENDANTS ........................................ 4

      A.   Plaintiffs Have Not Alleged Any Facts Supporting
           The Exercise Of Personal Jurisdiction ................................................. 4

      B.   Plaintiffs Have Not Alleged That Any Of The
           AFG Defendants Has Any Contacts With The United States .................... 5

           1.   Prince Abdullah Has No Contacts With The United States ............... 6

           2.   Mohammed Al Ariefy Has No Contacts With The United States ...... 6

           3.   AFG Has No Contacts With The United States .............................. 7

      C.   Plaintiffs Have Not Alleged That Any Of The AFG Defendants
           "Purposefully Directed" Any Act Toward The United States ................. 8

           1.   The Only Act Alleged As To AFG
               Was Not Connected To The United States ...................................... 9

           2.   Prince Abdullah Cannot Be Subject To Personal
               Jurisdiction Based Solely Upon The Unilateral Acts Of Others ...... 10

           3.   The Complaint Does Not Allege That Mohammed Al Ariefy
               Committed Any Act Whatsoever .................................................. 12

      D.   The Status Of Price Abdullah And Mohammed Al Ariefy
           As Officers Or Shareholders Of AFG Does Not
           Subject Them To The Jurisdiction Of This Court ............................... 13

      E.   Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting"
           Are Insufficient To Establish Jurisdiction Over The AFG Defendants ......... 14

   II   THE COMPLAINT FAILS TO STATE
       ANY CLAIM AGAINST THE AFG DEFENDANTS ................................... 17

  III   PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE .......................... 23

      A.   Torture Victim Protection Act ............................................................ 23

      B.   Assault And Battery ......................................................................... 23

      C.   Non-Claim Counts ........................................................................... 24

Conclusion .................................................................................................................. 25

i

## Table Of Authorities

Page #

**Cases**

Alexander & Alexander, Inc. v. Fritzen,
    68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) ............................................................................ 22

Allstate Life Ins. Co. v. Linter Group Ltd.,
    782 F. Supp. 215 (S.D.N.Y. 1992) ...................................................................................... 15

Andre Emmerich Gallery, Inc. v. Segre,
    96 Civ. 889, 1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. Oct. 29, 1997) .................................. 16

ATSI Communications Inc. v. Shaar Fund Ltd.,
    No. 02 Civ. 8726, 2004 WL 9091773 (S.D.N.Y. Apr. 28, 2004) ........................................... 5

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
    902 F.2d 194 (2d Cir. 1990) ................................................................................................ 4

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) .......................................................................................... 4, 15

Bao Ge v. Li Peng,
    201 F. Supp. 2d 14 (D.D.C. 2000),
    aff'd, 35 Fed. Appx. 1 (D.C. Cir. 2002) .............................................................................. 23

Bellepointe Inc. v. Kohl's Dep't Stores Inc.,
    975 F. Supp. 562 (S.D.N.Y 1997) ........................................................................................ 4

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) ........................................................................................... 19

Boyanowski v. Capital Area Intermediate Unit,
    215 F.3d 396 (3d Cir. 2000) .............................................................................................. 22

Bradley v. Staubach,
    No. 03 Civ. 4160, 2004 WL 830066 (S.D.N.Y. Apr. 13, 2004) ............................................ 14

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ........................................................................................ 8, 9, 11, 16

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ..................................................................................... 21

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) .............................................................................. 6, 8, 20

Calder v. Jones,
    465 U.S. 783 (1984) ..................................................................................................... 9, 13

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................................................. 15

Citibank, N.A. v. K-H Corp.,
    968 F.2d 1489 (2d Cir. 1992) ............................................................................................ 21

Cohn v. Knowledge Connections, Inc.,
    585 S.E.2d 578 (Va. 2003) ................................................................................................ 18

Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc.,
    453 S.E.2d 261 (Va. 1995) ................................................................................................ 22

Commercial Bus. Sys. Inc. v. Halifax Corp.,
    484 S.E.2d 892 (Va. 1997) ........................................................................ 22

Daniel v. Am. Bd. of Emergency Med.,
    802 F. Supp. 912 (W.D.N.Y. 1992) ........................................................... 13

Dardana Ltd. v. A.O. Yuganskneftegaz,
    317 F.3d 202 (2d Cir. 2003) ........................................................................ 5

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) .......................................................................... 21

Doe v. Islamic Salvation Front,
    257 F. Supp. 2d 115 (D.D.C. 2003) ........................................................... 20

Doe v. State,
    588 N.Y.S.2d 698, 709 (N.Y. Ct. Cl. 1992),
    aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993) ................................................. 24

El-Meswari v. Wash. Gas Light Co.,
    785 F.2d 483 (4th Cir. 1986) ..................................................................... 24

Family Internet, Inc. v. Cybernex, Inc.,
    No. 98 Civ. 0637, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ............... 13, 14

First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) .................................................. 6, 12, 15

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ........................................................................ 21

Foreign Mission Bd. of S. Baptist Convention v. Wade,
    409 S.E.2d 144 (Va. 1991) ........................................................................ 24

Garcia v. Spanish Broad. Sys. Inc.,
    92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490 (S.D.N.Y. May 17, 1993) ......... 17

Girden v. Sandals Int'l,
    262 F.3d 195 (2d Cir. 2001) ...................................................................... 24

Grove Press Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ...................................................................... 15

Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.,
    87 F.R.D. 93 (S.D.N.Y. 1980) ..................................................................... 8

Grow Group Inc. v. Jandernoa,
    No. 94 Civ. 5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ..................... 6

Hanson v. Denckla,
    357 U.S. 235 (1958) .................................................................................. 11

Helicopteros Nacionales de Colombia S.A. v. Hall,
    466 U.S. 408 (1984) .......................................................................... 5, 8, 11

Hecht v. Commerce Clearing House Inc.,
    897 F.2d 21 (2d Cir. 1990) ........................................................................ 17

Higgins v. Islamic Republic of Iran,
    No. 1 99-CV-00377, 2000 WL 33674311 (D.D.C. Sept. 21, 2000) ............ 20

Holmes v. Sec. Inv. Prot. Corp.,
    503 U.S. 258 (1992) .................................................................................. 17

In re Am. Express Co. S'holders Litig.,
  39 F.3d 395 (2d Cir. 1994) ............................................................................... 21

In re Kreta Shipping S.A.,
  No. 96 Civ. 1137, 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998)............................... 7

Interim Pers. Inc. v. Messer,
  559 S.E.2d 704 (Va. 2002) ............................................................................... 18

Int'l Shoe Co. v. Washington,
  326 U.S. 310 (1945)................................................................................... 4, 16

Jazini v. Nissan Motor Co.,
  148 F.3d 181 (2d Cir. 1998) ......................................................................... 4, 12

Kadic v. Karadzic,
  70 F.3d 232 (2d Cir. 1995) ............................................................................... 23

Karabu Corp. v. Gitner,
  16 F. Supp. 2d 319 (S.D.N.Y. 1998) ................................................................. 14

Keeton v. Hustler Magazine Inc.,
  465 U.S. 770 (1984) ............................................................................ 6, 8, 10

Kirkbride v. Lisbon Contractors, Inc.,
  555 A.2d 800 (Pa. 1989) ................................................................................. 24

Koken v. Steinberg,
  825 A.2d 723 (Pa. Commw. Ct. 2003) ........................................................ 22, 23

Kulko v. California Superior Court,
  436 U.S. 84 (1978)......................................................................................... 11

Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.,
  191 F.3d 229 (2d Cir. 1999) ............................................................................. 18

Lamar v. Am. Basketball Ass'n,
  468 F. Supp. 1198 (S.D.N.Y. 1979) .................................................................. 14

Leasco Data Processing Equip. Corp. v. Maxwell,
  468 F.2d 1326 (2d Cir. 1972) ........................................................................... 15

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
  507 U.S. 163 (1993) ......................................................................................... 3

Lehigh Valley Indus. Inc. v. Birenbaum,
  527 F.2d 87 (2d Cir. 1975) .............................................................................. 15

Lerner v. Fleet Bank N.A.,
  318 F.3d 113 (2d Cir. 2003) ............................................................................. 18

Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys. Inc.,
  10 F. Supp. 2d 334 (S.D.N.Y. 1998) ................................................................... 5

Libutti v. United States,
  178 F.3d 114 (2d Cir. 1999) ............................................................................. 10

Lindsay v. Lockwood,
  163 Misc.2d 228, 625 N.Y.S.2d 393 (Sup. Ct. Monroe County 1994) .................. 22

Maheshwari v. New York,
  No. 54, 2004 N.Y. LEXIS 978 (N.Y. May 6, 2004).............................................. 18

McGee v. Int'l Life Ins. Co.,
355 U.S. 220 (1957) ............................................................................................. 11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
84 F.3d 560 (2d Cir. 1996) ............................................................................... 5, 7

Nicholas v. Saul Stone & Co.,
224 F.3d 179 (3d Cir. 2000) ............................................................................... 13

Ontel Prods. Inc. v. Project Strategies Corp.,
899 F. Supp. 1144 (S.D.N.Y. 1995) ............................................................... 13, 14

Pittman by Pittman v. Grayson,
149 F.3d. 111 (2d Cir. 1998) .............................................................................. 16

Powell v. Drumheller,
653 A.2d 619 (Pa. 1995) ..................................................................................... 18

Priester v. Small,
Nos. 26541, 26520, 2003 WL 21729900 (Va. Cir. Ct. Apr. 14, 2003) ................... 23

Reo v. Shudt,
144 A.D.2d 793, 534 N.Y.S.2d 553 (3d Dep't 1988) .......................................... 22

Rocanova v. Equitable Life Assur. Soc'y of U.S.,
83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ........................................................... 24

Rush v. Savchuck,
444 U.S. 320 (1980) .............................................................................................. 6

Second Amendment Found. v. United States Conference of Mayors,
274 F.3d 521 (D.C. Cir. 2001) ............................................................................ 15

Shaffer v. Heitner,
433 U.S. 186 (1977) ........................................................................................ 8, 13

Simon v. Phillip Morris,
86 F. Supp. 2d 95 (E.D.N.Y. 2000) ..................................................................... 15

Skipworth v. Lead Indus. Ass'n,
690 A.2d 169 (Pa. 1997) ..................................................................................... 22

Small v. Lorillard Tobacco Co.,
94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ............................................................. 22

Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.,
985 F.2d 102 (2d Cir. 1993) ............................................................................... 17

Stauffacher v. Bennett,
969 F.2d 455 (7th Cir. 1992) .............................................................................. 15

Surette v. Islamic Republic of Iran,
231 F. Supp. 2d 260 (D.D.C. 2002) ..................................................................... 20

Time, Inc. v. Simpson,
No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) .......................... 12

Tulewicz v. S.E. Pa. Transp. Auth.,
606 A.2d 427 (Pa. 1992) ..................................................................................... 24

Tysons Toyota Inc. v. Commonwealth Life Ins.,
No. (Law) 94638, 1990 Va. Cir. LEXIS 229 (Va. Cir. Ct. Aug. 9, 1990) ............... 22

Ungar v. Islamic Republic of Iran,
    211 F. Supp. 2d 91 (D.D.C. 2002) ......................................................................... 20

United States v. Jimenez Recio,
    537 U.S. 270 (2003) ............................................................................................... 22

Weinstein v. Islamic Republic of Iran,
    184 F. Supp. 2d 13 (D.D.C. 2002) ......................................................................... 20

Whitaker v. Am. Telecasting Inc.,
    261 F.3d 196 (2d Cir. 2001) .................................................................................... 4

Young v. Colgate-Palmolive Co.,
    790 F.2d 567 (7th Cir. 1986) ................................................................................. 13

## Statutes and Rules

42 PA. CONS. STAT. ANN. § 8302 (West 2004) ............................................................. 24

FED. R. CIV. P. 12(b)(2) .................................................................................................. 1

FED. R. CIV. P. 12(b)(6) .................................................................................................. 1

FED. R. CIV. P. 4(k)(2) .................................................................................................... 5

Alien Tort Act, 28 U.S.C.A. § 1350 (West 2004) ...................................................... 17

Antiterrorism Act, 18 U.S.C.A. § 2333 (West 2004) ........................................... 17, 19

N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 2004) ............................. 24

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) .............. 17, 23

VA. CODE ANN. § 8.01-25 (West 2004) ...................................................................... 24

## Other Authorities

RESTATEMENT (SECOND) OF TORTS, § 876 ................................................................... 23

**Introduction**

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), defendants His Royal Highness Prince Abdullah Al Faisal Bin Abdulaziz Al Saud ("Prince Abdullah"), Mohammed Bin Abdulrahman Al Ariefy ("Mohammed Al Ariefy"), and Alfaisaliah Group (a/k/a Faisal Group Holding Co.) ("AFG") (collectively referred to as "the AFG defendants") hereby move to dismiss plaintiffs' Fourth Amended Complaint ("complaint") originally filed in Ashton v. Al Qaeda Islamic Army, 02 CIV 6977 (RCC).[1]  The complaint must be dismissed on two grounds: (1) none of the AFG defendants is subject to the personal jurisdiction of this Court; and (2) plaintiffs have failed to state any claim entitling them to relief against any of the AFG defendants.

It is understandable that the survivors and the victims' families seek compensation for the terrorist attacks committed on September 11, 2001.  However, in an excess of zeal, plaintiffs have cast too wide a net, irresponsibly naming as defendants AFG and its owners, Prince Abdullah and Mohammed Al Ariefy.  None of the AFG defendants had any connection to those events.  The complaint does not allege any such connection.  Nor does it allege that any of the AFG defendants has ever had any contact with the United States.  The complaint must be dismissed.

---

[1]     The AFG defendants have submitted three separate Memoranda of Law in support of their motions to dismiss the complaints filed in the Ashton, Burnett and Federal Insurance actions.  Although much of the text is identical, the filing of separate  Memoranda was necessary for two reasons.  First, Mohammed Al Ariefy is named as a defendant in the Ashton and Federal Insurance complaints but not the Burnett complaint.  Second, although the allegations contained in all three complaints overlap significantly, two of the complaints make some additional and different allegations.  This difference is most apparent in the Federal Insurance complaint because plaintiffs have confused defendant Prince Abdullah with the Crown Prince of Saudi Arabia who is not a defendant in any of the consolidated actions.

## Summary Of Allegations

Of the more than 600 paragraphs in the complaint, only a handful of allegations relate directly to the AFG defendants:[2]

- Prince Abdullah was born in 1923.  He is a son of the late King Faisal and a brother of defendants Prince Turki Al Faisal Al Saud and Prince Mohammed Al Faisal Al Saud.  (Complaint, ¶ 277.)

- AFG is a "large commercial conglomerate with 3,000 employees and thirteen subsidiaries involved in five business sectors…."  It maintains "branches" in Jeddah, Al Khobar, Khamis Mushait, Madinah, Qassim, Arar and Tabuk.  AFG is the "representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone."  (Complaint, ¶ 281.)

- As a 97.5% shareholder of AFG, Prince Abdullah "own[s] and control[s]" AFG.  (Complaint, ¶¶ 279, 280, 283.)[3]

- Mohammed Al Ariefy, a businessman, is president and a 2.5% owner of AFG.  (Complaint, ¶ 280.)

- Defendant Muhammed Galeb Kalaje Zouaydi, who has been convicted in Spain of "financing al Qaeda operations in Europe," allegedly set up Spanish companies while "staying in Saudi Arabia and working for Prince Abdullah" between 1996 and 2000.  He is described only as "[o]ne of Prince Abdullah's accountants."  (Complaint, ¶¶ 284-85.)

- One of the hijackers, the hijacker's brother, and another al Qaeda suspect, supposedly had a "registered address … under the name of Al Faisaliah, P.O. Box 1717, Taif, Saudi Arabia."  Allegedly, this address corresponds to that of a "branch office of Alfaisaliah Group in Taif, a subsidiary of the Riyadh based holding company."  (Complaint, ¶¶ 282-83.)

Certain of these allegations are utterly false.  Specifically, the AFG defendants would establish without question that no AFG branch office ever had a post office address that

---

[2]      For convenience, the pages containing the paragraphs which relate to the AFG defendants have been attached as Exhibit A.

[3]      Prince Abdullah is also alleged to have been an "official of the Saudi Ministry of Interior [and the] Minister of Health between 1949 and 1950," Chairman of the Arabian Establishment for Trade and Shipping Ltd., Qassim Cement Company, and Chairman of the board of trustees of the King Faisal Foundation.  (Complaint, ¶ 278.) However, none of plaintiffs' allegations refers to any action Prince Abdullah took in those capacities.

corresponded to the address listed in the complaint; Zouaydi never worked for Prince Abdullah; and the AFG defendants have no connection to al Qaeda.  However, the AFG defendants recognize that the Court must consider the allegations of the complaint as true solely for the purpose of deciding this motion to dismiss.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (for the purposes of a motion to dismiss, the court must accepted as true all well pleaded factual allegations in the complaint).

In essence, plaintiffs seek to hold each of the AFG defendants liable for mass murder because:  (a) one of the hijackers, the hijacker's brother, and an al Qaeda suspect, at some unspecified time, allegedly had a registered address that corresponds to the post office box of a branch office of AFG in Taif, Saudi Arabia; and (b) an accountant employed at the time by Prince Abdullah allegedly set up Spanish companies through which he laundered money for al Qaeda cells in Europe.  But in the absence of *any* allegation concerning what the AFG defendants *knew* or how *they* acted, plaintiffs' allegations fail to support the exercise of personal jurisdiction or any theory that could establish liability.  The paucity of factual allegations relating directly to the AFG defendants demonstrates that they are not subject to this Court's jurisdiction and cannot be liable to the plaintiffs in any way.

Plaintiffs' baseless allegations against AFG, a respected industrial corporation, and its owners are shameful.  The complaint must be dismissed.

## Argument

### I

### THIS COURT LACKS
### PERSONAL JURISDICTION OVER THE AFG DEFENDANTS

**A.      Plaintiffs Have Not Alleged Any Facts Supporting
The Exercise Of Personal Jurisdiction**

Plaintiffs bear the burden of establishing that this Court has personal jurisdiction over Prince Abdullah, Mohammed Al Ariefy and AFG.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  To meet this burden, plaintiffs must plead, in good faith, facts that are legally sufficient to support personal jurisdiction.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  That is, plaintiffs must make "a 'prima facie showing'."  Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) (citations omitted).  See also Whitaker v. Am. Telecasting Inc., 261 F.3d 196, 208 (2d Cir. 2001).  Hence, plaintiffs "must plead facts which, if true, are sufficient in themselves to establish jurisdiction."  Bellepointe Inc. v. Kohl's Dep't Stores Inc., 975 F. Supp. 562, 564 (S.D.N.Y 1997).

Plaintiffs have not come close to meeting their burden.  Due process demands that a foreign defendant must not be subject to jurisdiction unless he has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Under the "minimum contacts" analysis mandated by International Shoe and its progeny, a plaintiff may establish jurisdiction over a defendant on a theory of general or specific personal

4

jurisdiction.[4]  Here, plaintiffs' allegations fail to support either theory.  They have not alleged

*any* fact that would subject any of the AFG defendants to the personal jurisdiction of this Court.

The complaint fails to identify any of the "continuous and systematic" contacts required for

general jurisdiction, or any factual allegation that the AFG defendants "purposefully directed"

any act towards the United States that could support specific jurisdiction.[5]

**B.      Plaintiffs Have Not Alleged That Any Of The AFG Defendants
Has Any Contacts With The United States**

"To establish general jurisdiction, the plaintiff must show that the defendant has

'continuous and systematic' contacts with the forum."  ATSI Communications Inc. v. Shaar

Fund Ltd., No. 02 Civ. 8726, 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004) (quoting

Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 416 (1984)).  If general

jurisdiction is established, a court will be permitted to exercise its power over a foreign

defendant even if the cause of action alleged against him does not arise from or relate to those

contacts.  See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

However, plaintiffs' allegations simply do not evidence "continuous and systematic" contacts of

any of the AFG defendants with the United States.

---

[4]      As Judge Kaplan recently explained:  "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'  By comparison, a court's general jurisdiction 'is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'"  ATSI Communications Inc. v. Shaar Fund Ltd., No. 02 Civ. 8726, 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004)  (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-16 & nn. 8-9 (1984)).

[5]      The AFG defendants recognize that the Court will scrutinize the complaint for allegations of the AFG defendants' contacts with the United States as a whole, rather than only their contacts with New York.  See Fed. R. Civ. P. 4(k)(2); Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003)  ("Under [Fed. R. Civ. P. 4(k)(2)], a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole … so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment.").  Moreover, because plaintiffs' allegations fail to show that the AFG defendants have minimum contacts with the United States as a whole, they necessarily fail to meet the requirements of the New York long-arm statute.  See Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys. Inc., 10 F. Supp. 2d 334, 339 (S.D.N.Y. 1998) (New York long-arm statute does not extend jurisdiction to the full extent permitted by constitutional due process) (and cases cited therein).

### 1. <u>Prince Abdullah Has No Contacts With The United States</u>

Prince Abdullah is a resident national of Saudi Arabia.  Plaintiffs do not allege that Prince Abdullah conducts business or other activities in the United States, owns property or holds a bank account in the United States, or has ever visited the United States.[6]  Instead, plaintiffs offer only the bald assertion that "Saudi Royal family members own substantial assets … and do substantial business in the United States of America."  (Complaint, ¶ 296.)  This allegation impermissibly aggregates individual members of the Saudi Royal Family who are named as defendants in plaintiffs' complaint.  See <u>Keeton v. Hustler Magazine Inc.</u>, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); <u>Rush v. Savchuck</u>, 444 U.S. 320, 332 (1980) ("considering the 'defending parties' together and aggregating their forum contacts … is plainly unconstitutional"); <u>Grow Group Inc. v. Jandernoa</u>, No. 94 Civ. 5679, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (allegations referring to "Officers & Directors Group" could not establish personal jurisdiction over individual defendants to whom no separate and specific acts were ascribed).  Consequently, plaintiffs' generalized allegations cannot establish minimum contacts with respect to Prince Abdullah.

### 2. <u>Mohammed Al Ariefy Has No Contacts With The United States</u>

Mohammed Al Ariefy is a resident national of Saudi Arabia with respect to whom plaintiffs have made no discernible allegation of any contact that could possibly support the exercise of general personal jurisdiction.  Plaintiffs do not allege that Mohammed Al Ariefy

---

[6]     Even these traditional contacts may be insufficient to establish general jurisdiction over an individual defendant.  See <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("<u>Burnett II</u>") ("Plaintiffs have made a desultory effort to sustain their burden of showing that Prince Sultan's visits to the United States … would support the assertion of personal jurisdiction over him."); <u>First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.</u>, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (no personal jurisdiction over Swiss defendant despite plaintiffs' allegations that she owned real estate, maintained a bank account, and had previously engaged in business transactions in New York) (applying New York law).

conducts business or other activities in the United States, owns property or holds a bank account in the United States, or has ever visited the United States. The claims against him must be dismissed.

**3.     AFG Has No Contacts With The United States**

Plaintiffs' complaint alleges that AFG is a large Saudi Arabian corporation. But, despite specifying that AFG has "3,000 employees and thirteen subsidiaries involved in five business sectors," plaintiffs do not allege that AFG conducts business in the United States. Furthermore, AFG is not alleged to own property or hold a bank account in the United States, solicit business in the United States, send employees to the United States, or supply goods or services to entities or individuals in the United States. See Metro. Life Ins., 84 F.3d at 573 (general jurisdiction established over out-of-forum corporation that solicited business in the forum and sold its products through forum dealers to customers in the forum). In the absence of such facts, plaintiffs cannot establish that AFG has the requisite substantial, continuous and systematic connections with the United States.

Plaintiffs likewise cannot establish general jurisdiction over AFG by alleging that it is the "representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone." (Complaint, ¶ 281.) Indeed, even if plaintiffs had alleged that one of these "international companies" was incorporated and did business in the United States, and that AFG was its agent in Saudi Arabia, that would not subject AFG to personal jurisdiction here.

As has been consistently held, "[w]hile the acts of the agent may be attributed to the principal for jurisdictional purposes, the converse is not true; a principal's conduct may not supply the jurisdictional basis for the agent." In re Kreta Shipping S.A., No. 96 Civ. 1137, 1998

WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998) (granting ship agent's motion to dismiss claims of cargo owners for lack of personal jurisdiction describing claimant's agency theory as "frivolous").  See also Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd., 87 F.R.D. 93, 96 (S.D.N.Y. 1980) (holding agency theory of personal jurisdiction "completely inapposite … where it is the alleged principal who does business in [the forum] and the agent who does not").  Consequently, personal jurisdiction cannot be established over AFG, even if one of the international companies for which it is a "representative agent" in Saudi Arabia does business in the United States.

### C.   Plaintiffs Have Not Alleged That Any Of The AFG Defendants "Purposefully Directed" Any Act Toward The United States

In the absence of continuous and substantial contacts giving rise to general personal jurisdiction, plaintiffs must allege that each of the AFG defendants had minimum contacts with the United States that satisfy the due process requirements of specific personal jurisdiction.  Specific jurisdiction will be established over a foreign defendant "if the defendant has 'purposefully directed' his activities at the residents of the forum and the litigation results from alleged injuries which 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton, 465 U.S. at 774 and Helicopteros, 466 U.S. at 414).  Only in these circumstances will a defendant have "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign."  Shaffer v. Heitner, 433 U.S. 186, 218 (1977).

However, it is clear from the dearth of direct factual allegations in the complaint that none of the AFG defendants played any role in sponsoring or carrying out the terrorist attacks for which plaintiffs seek redress.  In fact, plaintiffs' theory of specific jurisdiction has already been rejected by Judge Robertson in the related Burnett case.  See Burnett v. Al Baraka

Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Burnett II") (rejecting plaintiffs'

argument that "anyone whose actions have led to terrorist activity in the United States should

reasonably anticipate that he might be subject to suit here whether or not he himself has targeted

the United States" and holding that the complaint "stop[ed] well short of alleging that

[defendant's] actions were 'expressly aimed' or 'purposefully directed' at the United States").[7]

1.      **The Only Act Alleged As To AFG**
        **Was Not Connected To The United States**

Plaintiffs' complaint makes only a single allegation against AFG:  that one of the

hijackers, the hijacker's brother, and another al Qaeda suspect at some unspecified time

supposedly had a "registered address … under the name of Al Faisaliah, P.O. Box 1717, Taif,

Saudi Arabia" which allegedly corresponds to the address of a "branch office of [AFG] in Taif."

(Complaint, ¶ 283.)  *That is plaintiffs' only claim as to AFG.*  Even assuming this allegation were

true – which it is not – it cannot possibly meet the due process requirements of specific personal

jurisdiction, the very purpose of which is to "ensure[] that a defendant will not be haled into a

jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral

activity of another party or a third person."  Burger King, 471 U.S. at 475 (internal quotation

marks omitted).

Plaintiffs do not claim that AFG knew about or consented to the alleged use of its

post office box as a "registered address" by others; nor do they allege that AFG knew that

anyone who might have had such an address was involved in terrorist activity anywhere, let

alone in the United States.[8]  See Calder v. Jones, 465 U.S. 783, 789 (1984) (defendants' acts

---

[7]      The AFG defendants join in the argument made by other defendants that this decision constitutes law of the case and is owed substantial deference.  There is no reason for this sound opinion to be reconsidered.

[8]      As noted above, AFG denies it shared any post office box in Taif and can prove it through official records of the Saudi postal service.

were "expressly aimed" at the forum because defendants *knew* the subject of their defamatory article would potentially suffer injury in the forum where she resided).[9]  Nor is AFG alleged to have undertaken any act outside Saudi Arabia, or to have *intended* to affect residents of the United States in any way.  See Libutti v. United States, 178 F.3d 114, 123 (2d Cir. 1999) (out-of-forum company did not purposefully direct its activities at the forum because its activities were external to the forum and it did not intend to inflict harm on or commercially affect residents of the forum).

     **2.**       **Prince Abdullah Cannot Be Subject To Personal Jurisdiction Based Solely Upon The Unilateral Acts Of Others**

Plaintiffs' complaint does not allege that Prince Abdullah actually *did* anything. Indeed, the complaint contains only three substantive factual references to Prince Abdullah:  (1) that "[o]ne of Prince Abdullah's accountants in Jeddah, Saudi Arabia was … [defendant Zouaydi who has since been] convicted in Spain for financing al Qaeda operations in Europe" (Complaint, ¶ 284); (2) "Zouaydi set up Spanish companies established during the time he was staying in Saudi Arabia and working for Prince Abdullah, between 1996 and 2000" (id.); and (3) that "[e]vidence from eye witnesses indicates that Zouaydi was present in offices of Prince Abdullah in Jeddah" (id. at ¶ 285).  This attempt at pleading 'guilt by association' falls far short of alleging any act by Prince Abdullah purposefully directed toward the United States.[10]

Plaintiffs cannot draw Prince Abdullah into the Court's jurisdiction by alleging contacts that are dependent upon the unilateral acts of others, such as Zouaydi's alleged

---

[9]      See also Keeton, 465 U.S. at 774 (specific jurisdiction established over defendant publisher because the monthly circulation of millions of magazines was purposefully directed at the forum and inevitably affected persons in the forum).

[10]     While these allegations must be accepted as true for purposes of this motion, if later required to do so, Prince Abdullah will establish that he has no knowledge of or connection with Mr. Zouaydi.

financing activities in Spain.[11]   The Supreme Court has consistently rejected such arbitrary and

unilateral contacts.  See Helicopteros, 466 U.S. at 416-17 (no jurisdiction over foreign defendant

by reason of defendant's acceptance of checks which plaintiffs had drawn on a U.S. bank);

Kulko v. California Superior Court, 436 U.S. 84, 98 (1978) (no jurisdiction over divorced

husband whose only contact with the forum was created by his former spouse's decision to move

there); Hanson v. Denckla, 357 U.S. 235, 253 (1958) (no jurisdiction over trustee where only

connection with the forum resulted from plaintiff settlor's decision to exercise her power of

appointment there).

        Jurisdiction is proper only "where the contacts proximately result from action by

the defendant *himself* that create a 'substantial connection' with the forum State."  Burger King,

471 U.S. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)) (emphasis in

original).  Plaintiffs have not alleged that Prince Abdullah has done any 'act' whatsoever.

        In essence, plaintiffs ask this Court to extend its jurisdiction to all foreign

nationals who met or employed anybody who, unbeknownst to them at the time, is now alleged

or known to have supported international terrorism.  *That is not the law*.  Plaintiffs must plead

facts to show that Prince Abdullah "'purposefully directed' his activities at the residents of the

[United States] … 'such that he should reasonably anticipate being haled into court [here].'"

Burger King, 471 U.S. at 472, 474 (citations omitted).  They have utterly failed to do so.

        Nor is it sufficient to allege specific jurisdiction over Prince Abdullah by tarring

him with a generalized, conclusory and factually unsubstantiated theory that members of the

Saudi Royal Family purposefully provided support to Osama bin Laden or al Qaeda and thus

---

[11]     Significantly, the most plaintiffs allege is that "Zouaydi set up Spanish companies established during the time he was staying in Saudi Arabia and working for Prince Abdullah, between 1996 and 2000."  (Complaint, ¶ 284.)  Plaintiffs do not allege any connection between Prince Abdullah and the Spanish companies set up by Zouaydi.

knowingly sponsored the terrorist attacks of September 11.  As noted above, the Court must disregard plaintiffs' allegations that aggregate only a general group of defendants.  (Complaint, ¶¶ 250, 252, 292, 294-297 containing allegations against "a large number of Saudi citizens and members of the Saudi Royal Family," "Saudi businessmen," "Saudi Royal Family members," "certain Saudis," "wealthy Saudis" and "certain Saudi nationals.")

Similarly, plaintiffs' claims against Prince Abdullah cannot be advanced by the assertion of legal conclusions in place of factual allegations.  See Jazini, 148 F.3d at 185 (court not bound to accept legal conclusion couched as factual allegation); Time, Inc. v. Simpson, No. 02 Civ. 4917, 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003) (conclusory allegations insufficient to show personal jurisdiction based on defendants' personal involvement in tortious conduct); First Capital Asset Mgmt. Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 388 (S.D.N.Y. 2002) ("plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be 'factually supported'") (citations omitted).  Therefore, the Court must lend no weight to plaintiffs' allegation that Prince Abdullah "engaged in the aiding and abetting or material sponsorship of Osama bin Laden, al Qaeda and international terrorism *as described herein*."  (Complaint, ¶ 255) (emphasis added).  No such conduct is described.

### 3. The Complaint Does Not Allege That Mohammed Al Ariefy Committed Any Act Whatsoever

Plaintiffs' complaint is devoid of any allegation or suggestion that Mohammed Al Ariefy has committed any act whatsoever, purposeful or otherwise.  Plaintiffs' single allegation concerning Mohammed Al Areify is that he is president and a 2.5% owner of AFG.  (Complaint, ¶ 280.)  As established below, this is insufficient to establish jurisdiction over him, even assuming the court had jurisdiction over AFG.  Plaintiffs' attempt to subject Mohammed Al Ariefy to the jurisdiction of this Court is frivolous.

**D.    The Status Of Prince Abdullah And Mohammed Al Ariefy
As Officers Or Shareholders Of AFG Does Not
Subject Them To The Jurisdiction Of This Court**

Prince Abdullah and Mohammed Al Ariefy cannot be subject to personal

jurisdiction merely because they are alleged to hold shares in AFG.  (Complaint, ¶ 280.)  As

demonstrated above, the complaint fails completely to establish jurisdiction over AFG.  In any

event, however, a court cannot exercise jurisdiction over corporate officers and shareholders

merely because it has jurisdiction over the corporation.  See Shaffer, 433 U.S. at 215-16; see also

Shaffer, 433 U.S. at 217 (Powell, J., concurring) (defendants' "positions as directors and officers

of a Delaware corporation can[not] provide sufficient contact to support the Delaware court's

assertion of jurisdiction"); Daniel v. Am. Bd. of Emergency Med., 802 F. Supp. 912, 919

(W.D.N.Y. 1992) ("It is well settled that jurisdiction over the individual officers and directors of

a corporation cannot be predicated merely upon jurisdiction over the corporation.").[12] Officers

and shareholders are separate persons from the company and their minimum contacts must be

assessed independently.  See Calder, 465 U.S. at 790 (employees cannot be subject to

jurisdiction based on the conduct of their employer because minimum contacts "'must be met as

to each defendant over whom a … court exercises jurisdiction'") (citation omitted).  Therefore,

the corporate acts of AFG cannot provide any basis for establishing personal jurisdiction over

Prince Abdullah or Mohammed Al Ariefy.

---

[12]    See also Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637, 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("mere fact that a corporation is subject to jurisdiction under [CPLR] section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York"); Ontel Prods. Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("[Plaintiff] cannot obtain personal jurisdiction over [defendant] based solely on his position as President of [defendant corporation]; instead, [plaintiff] must show that [defendant] personally took part in the activities giving rise to the action at issue.").  Other circuits have followed this rule.  See, e.g., Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000) (affirming district court's holding that "jurisdiction over the defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction"); Young v. Colgate-Palmolive Co., 790 F.2d 567, 569 (7th Cir. 1986) ("individual board members cannot be said to have transacted business within [the forum] merely because the corporation is qualified to do business [in the forum]").

Plaintiffs cannot bolster their inadequate jurisdictional showing with the generalized allegation that Prince Abdullah "owned and controlled" AFG.  (Complaint, ¶ 283.) A "[foreign defendant's] status as the controlling shareholder in a … corporation [subject to jurisdiction in the forum] does not, without more, subject him individually to personal jurisdiction."  Lamar v. Am. Basketball Ass'n, 468 F. Supp. 1198, 1203 (S.D.N.Y. 1979) (applying New York law).[13]  Here, the complaint offers nothing more.  Even to establish jurisdiction over Prince Abdullah on a corporate agency theory "plaintiff's allegations must sufficiently detail [Prince Abdullah's] conduct so as to persuade a court that [he] was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon [Prince Abdullah's] title or position within the corporation, or upon conclusory allegations that [he] controls the corporation."  Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (applying New York law).  Here, however, plaintiffs have not alleged that 81 year-old Prince Abdullah – who is not an officer of AFG nor part of its management – had *any* role in any alleged act of AFG.[14]

E.    **Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting" Are Insufficient To Establish Jurisdiction Over The AFG Defendants**

Plaintiffs' general and conclusory allegations that defendants "conspired" or "aided and abetted" terrorism provide no basis for the exercise of personal jurisdiction. (Complaint, ¶¶ 23, 24, 255, 296.)  "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the jurisdiction of the court is not enough.

---

[13]    See also Ontel Prods., 899 F. Supp. at 1148 ("In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner.").

[14]    Compare Family Internet, 1999 WL 796177, at *9 (no jurisdiction where individual did not set policy or make business decisions without prior approval of the company) with Bradley v. Staubach, No. 03 Civ. 4160, 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) (jurisdiction granted over individual defendant alleged to be key figure and primary contact in a real estate transaction, negotiated and approved contract, and authorized payment of deposit).

Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums." Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992). See also Lehigh Valley Indus. Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("the bland assertion of conspiracy … is insufficient to establish [personal] jurisdiction").[15] Such a showing must be made by pleading facts, not legal conclusions.

"To establish jurisdiction on a [conspiracy theory], a plaintiff must clear two hurdles: (1) it must make a *prima facie* factual showing of a conspiracy; and (2) it must allege specific facts warranting the inference that the defendant was a member of the conspiracy." Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). See Grove Press Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction over an out-of-forum conspirator, a plaintiff must demonstrate that the in-forum actor acted "for the benefit, with the knowledge and consent of, and under some control by the [out-of-forum] principal").[16] Here, however, the complaint is fatally bereft of *facts* showing that any of the AFG defendants entered into *any* agreement, much less an agreement to support terrorism in

---

[15]    See also Bank Brussels Lambert, 171 F.3d at 793 (conclusory statements could not establish personal jurisdiction over defendant under common law conspiracy and aider and abettor theories); Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, J.) ("To be sure, the rule in this circuit is that the mere presence of one conspirator … does not confer jurisdiction over another alleged conspirator."); Second Amendment Found. v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("The allegation that the [defendants] conspired together represents nothing more than a legal conclusion which … does not constitute a prima face showing [of] personal jurisdiction.").

[16]    See also First Capital Asset Mgmt., 218 F. Supp. 2d at 394 (to establish jurisdiction based on conspiracy, "plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor") (citations omitted); Simon v. Phillip Morris, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (to establish relationship between defendant and co-conspirators, plaintiff must show "that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request and on behalf of' the out-of-state defendant") (citations omitted); Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp. 215, 222 (S.D.N.Y. 1992) (in addition to making a prima facie showing of conspiracy, plaintiffs must "set forth evidentiary facts to connect the defendants with transactions occurring in the United States").

general or attacks on the United States in particular.  There is no allegation that any of the AFG defendants controlled, directed, influenced, benefited from or participated in a common plan to commit a tort causing effects in the United States.[17]

Similarly, the conclusory allegation that the defendants aided and abetted terrorism cannot salvage plaintiffs' defective claim of personal jurisdiction.  (Complaint, ¶¶ 24, 255, 296.)  Aiding and abetting "requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer … [and that] the defendant must know the wrongful nature of the primary wrongdoer's conduct."  Pittman by Pittman v. Grayson, 149 F.3d. 111, 123 (2d Cir. 1998) (citation omitted) (applying New York Law).  Plaintiffs' complaint satisfies neither requirement.  At most, plaintiffs have alleged that a branch office of AFG at some time had a post office box that was also registered to someone who later became a terrorist, and that Prince Abdullah once employed an accountant who, it turns out, has since been convicted of financing terrorist cells in Europe.  Not only do these acts fall short of "substantial assistance or encouragement," but plaintiffs do not allege that any act was undertaken by the AFG defendants with the *knowledge* that these individuals supported or engaged in terrorist activity aimed at the United States.

In sum, plaintiffs have alleged no facts satisfying the "the constitutional touchstone" that any one of the AFG defendants "purposefully established 'minimum contacts' in the forum."  Burger King, 471 U.S. at 474 (quoting Int'l Shoe, 326 U.S. at 316).

---

[17]     See Andre Emmerich Gallery, Inc. v. Segre, 96 Civ. 889, 1997 U.S. Dist. LEXIS 16899, at *17 (S.D.N.Y. Oct. 29, 1997) (prima facie showing of jurisdiction established where complaint alleged that out-of-forum conspirator knew that sales of art were made under false pretences and that such sales were being made in New York and would have had significant impact on the New York art market) (applying New York law).

**II**

### THE COMPLAINT FAILS TO STATE
### <u>ANY CLAIM AGAINST THE AFG DEFENDANTS</u>

The complaint lists eight causes of action, none of which states a cognizable claim against any of the AFG defendants.  As an initial matter, the complaint makes no allegation against Mohammed Al Ariefy save that he is a minority shareholder of AFG.  He is not alleged to have done anything.  Accordingly, the complaint against him must be dismissed outright.

Second, five of the eight counts sound in tort.[18]  To state viable tort claims, plaintiffs must prove that their injuries were proximately caused by some act of the defendant.  However, even accepting the allegations as true – which they are not – plaintiffs do not allege that any act of any of the AFG defendants was a "substantial factor" that "foreseeably" led to plaintiffs' injuries or even an act "but for" which the attacks of September 11 would not have occurred.  Consequently, the complaint must be dismissed pursuant to Rule 12(b)(6).

Proximate cause is "a demand for some direct relation between the injury asserted and the injurious conduct alleged."  <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992).  As this Court has explained:

> Proximate causation is more than mere factual ("but for") causation.  The test of proximate causation is "whether the defendants acts 'are a substantial factor in the sequence of responsible causation' and whether 'the injury is reasonably foreseeable or anticipated as a consequence.'"

<u>Garcia v. Spanish Broad. Sys. Inc.</u>, 92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490, at * 3 (S.D.N.Y. May 17, 1993) (citing <u>Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.</u>, 985 F.2d 102, 104 (2d Cir. 1993) and <u>Hecht v. Commerce Clearing House Inc.</u>, 897 F.2d 21, 23 (2d Cir.

---

[18] The tort claims are:  wrongful death, assault and battery, Anti-Terrorism Act, Torture Victim Protection Act / Alien Tort Act, and property damage.  The sixth count, concerning the Anti Terrorism and Effective Death Penalty Act, is not asserted against the AFG defendants.  The remaining counts fail to state a claim even as a matter of form: survival damages and punitive damages.  (See pp. 23-24 below.)

1990)).  See also Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc., 191 F.3d 229,

235-36 (2d Cir. 1999) (holding that "proximate cause" encompasses several "independent"

elements requiring plaintiff to plead that "defendant's acts were a substantial cause of the injury,

and that plaintiff's injury was reasonably foreseeable, [as well as] alleging … a direct injury").[19]

        Plaintiffs' allegations fail to satisfy any of the constituent formulations of

proximate cause.  Plaintiffs have not alleged – nor could they allege – that the post office box

was used in or related in any way to carrying out terrorist attacks.  Nor have plaintiffs claimed

that Zouaydi's alleged employment as an accountant for Prince Abdullah was in any way related

to terrorism.  In these circumstances, the defendants' actions cannot even be considered a "but

for" cause in fact of plaintiffs' injuries.  These impotent allegations do not fall even near the

ambit of proximate cause.  Accordingly, having failed to allege this essential element of tort

liability, the complaint must be dismissed.  See Lerner v. Fleet Bank N.A., 318 F.3d 113, 129-30

(2d Cir. 2003) (failure to assert the necessary proximate cause for a RICO claim required the

dismissal of the complaint under Rule 12(b)(6)).

---

[19]     Plaintiffs' state law claims are subject to substantially the same test of proximate causation.  See Maheshwari v. New York, No. 54, 2004 N.Y. LEXIS 978, at *9 (N.Y. May 6, 2004) ("To establish a prima facie case of proximate cause, a plaintiff must show 'that the defendant's negligence was a substantial cause of the events which produced the injury'.") (citation omitted); Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995) (Pennsylvania law has long recognized that proximate cause requires that defendant's acts were a cause in fact and a "'substantial factor in bringing about the harm inflicted on the plaintiff'") (citation omitted); Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 582 (Va. 2003) ("'The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which the event would not have occurred.'") (citation omitted); Interim Pers. Inc. v. Messer, 559 S.E.2d 704, 708 (Va. 2002) (proximate cause requires "that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury should have been foreseen in the light of the attending circumstances").

Plaintiffs also have not alleged the requisite *legal* causation.  Indeed, their sparse allegations fall short of theories that have already been rejected by the courts.  First, plaintiffs' allegations do not demonstrate that their injuries were the reasonably foreseeable, natural or probable consequence of any act of any of the AFG defendants.  In the seminal case of Boim v. Quranic Literacy Institute., 291 F.3d 1000 (7th Cir. 2002), the parents of a student murdered by Hamas brought an action against organizations they alleged had raised donations and sent funds to Hamas to support its terrorist campaigns.  In holding that funding *simpliciter* could not constitute an act of "international terrorism" under the Antiterrorism Act, the court stated:

> [I]n order to recover, a plaintiff must be injured "by reason of" an act of international terrorism.  The Supreme Court has interpreted identical language to require a showing of proximate cause.  Foreseeability is the cornerstone of proximate cause, and in tort law, a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions.  In the circumstances of this case, the Boims cannot show that David Boim was injured "by reason of" the defendants' payments to Hamas in the traditional tort sense of causation *unless they can also show the murder was the reasonably foreseeable result of making the donation.*  …  [T]he complaint cannot be sustained on the theory that the defendants … donated unspecified amounts of money to Hamas, *neither knowing nor suspecting* that Hamas would in turn financially support the persons who murdered David Boim.

Id. at 1011-12 (citations omitted, emphasis added).  Here, in the absence of an allegation that AFG even knew, or had reason to know the "registered" address of a terrorist, or that Prince Abdullah knew, or had reason to know, that Zouaydi financed terrorism, it cannot be maintained that AFG or Prince Abdullah did anything that could have been a foreseeable or anticipated cause of plaintiffs' injuries.

Second, the attenuated facts attributed to the AFG defendants cannot constitute "substantial factors" in the chain of causation, nor establish any "direct relationship" between defendants' acts and plaintiffs' injuries.  Plaintiffs' meager allegations are highly attenuated in comparison to those that have been found sufficient to support liability for terrorism.  See, e.g.,

Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 265-66 (D.D.C. 2002) (Iran held liable

for kidnapping and murder committed by Hizballah, a terrorist group Iran "directed, formed,

organized and funded," where Iran supervised and approved the specific terrorist operation at

issue).[20]  Moreover, plaintiffs' allegations even fall short of those held to be *insufficient* to

support causation.  In Burnett II, Judge Robertson held that "plaintiffs' allegations that (i) [the

defendants] funded (ii) those [charities] who funded (iii) those who carried out the September 11

attacks would stretch the causation requirement … not only to the farthest reaches of the

common law but perhaps beyond, to terra incognita."  292 F. Supp. at 20 (applying the

noncommercial tort exception to the Foreign Sovereign Immunities Act).  Similarly, in Ungar v.

Islamic Republic of Iran, 211 F. Supp. 2d 91 (D.D.C. 2002), the family of a couple murdered by

Hamas brought an action alleging that Iran and its officials were liable for supporting Hamas'

terrorist activities.  The court held that, although the plaintiffs "established that Iran provided

extensive support to [Hamas], … their proof [did] not link that support to the Ungar murders

specifically."  211 F. Supp. 2d at 99 (refusing to enter default judgment against defendants).[21]

These decisions illustrate that, in applying tort principles to terrorism-sponsorship

cases, courts have consistently required a direct and substantial link between the particular

terrorist attack and the defendant's conduct at issue.  Here, however, rather than establishing a

direct causal link, the complaint alleges nothing more than the most remote and fanciful

---

[20]   See also Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 21-22 (D.D.C. 2002) (Iran, its
intelligence service and three officials held liable for a pre-approved Hamas suicide bombing where "defendants not
only provided the terrorists with the technical knowledge required to carry out the [specific attack], but also gave
[Hamas] the funding necessary to do so"); Higgins v. Islamic Republic of Iran, No. 1 99-CV-00377, 2000 WL
33674311, at *5-7 (D.D.C. Sept. 21, 2000) (Iran and its intelligence service were liable for Hizballah's kidnapping
and murder of a U.S. marine in Lebanon because plaintiffs' evidence showed that "Iran was responsible for the
formation, funding, training, and management of Hizballah," and it "virtually directed the terms and conditions
under which hostages [such as the marine] would be held or released").

[21]   See also Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 122 (D.D.C. 2003) (individual member of
Islamic Salvation Front was not liable for acts of terrorism committed by the organization, even though he was
aware of and condoned the use of violence, because plaintiffs' conclusory statements "did not … prove that he
assisted or directed armed Islamic groups in carrying out the particular acts which affected the plaintiffs").

connections between the AFG defendants and those who planned or carried out terrorist attacks in the United States. These allegations are wholly inadequate to state a claim in tort.

Plaintiffs' complaint cannot bridge the gap between the AFG defendants' acts and the terrorist attacks simply by alleging, in a wholly conclusory fashion, that, as "a direct and proximate result of … [their] acts," the defendants "caused" plaintiffs' injuries. (Complaint, ¶¶ 613, 624.) Courts have consistently held that "conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purposes of ruling on a motion to dismiss." In re Am. Express Co. S'holders Litig., 39 F.3d 395, 400, n. 3 (2d Cir. 1994). See also First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("'Courts do not accept conclusory allegations of the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'") (citation omitted); Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1495-96 (2d Cir. 1992) (dismissing complaint for failing to allege facts in support of the conclusory allegation that plaintiff's loss was caused by defendant's wrongdoing). Particularly in terrorism cases, "given the extreme nature of the charge," the Court should ensure that "no inferences are accepted that are unsupported by the facts set out in the [complaint]." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003) ("Burnett I"). But, as demonstrated above, plaintiffs here have not alleged a factual predicate permitting the conclusion that the defendants' acts were a proximate cause of their injuries.

Finally, plaintiffs cannot state a claim by making the naked allegation that the defendants "conspired" or "aided and abetted" terrorism. (Complaint, ¶¶ 23, 24, 255, 296.) These allegations are conclusory and must be discounted. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("'A complaint which consists of conclusory allegations

unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'") (citation

omitted).  Moreover, conspiracy and aiding and abetting are merely theories of liability, not

causes of action in themselves.  See Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969,

510 N.Y.S.2d 546, 547 (1986) ("'a mere conspiracy to commit a [tort] is never of itself a cause

of action'") (citation omitted);[22] Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 698 N.Y.S.2d

615, 621 (1999) (plaintiff's claim could not succeed on aiding and abetting theory without an

independent tort to provide a basis for liability).[23]

    Plaintiffs have failed to plead facts supporting either theory.  There is no

allegation that any of the AFG defendants entered into any agreement to sponsor terrorism.  See

United States v. Jimenez Recio, 537 U.S. 270, 274 (2003) ("the essence of conspiracy is 'an

agreement to commit an unlawful act'") (citations omitted).[24]  Nor have plaintiffs made any

showing that any of the AFG defendants provided "substantial assistance" to terrorists knowing

that their assistance would be used to commit acts of terrorism.  See Lindsay v. Lockwood, 163

Misc.2d 228, 233, 625 N.Y.S.2d 393, 397 (Sup. Ct. Monroe County 1994) (requirements of

aiding and abetting liability include "the defendant's awareness of a role as part of an overall

---

[22]    See also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-06 (3d Cir. 2000) (conspiracy is not independently actionable but depends upon performance of an underlying tortious act) (interpreting Pennsylvania law); Commercial Bus. Sys. Inc. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997) ("without proof of the underlying tort there can be no conspiracy to commit the tort").

[23]    See also Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (an underlying tortious act is an essential element of aiding and abetting); Tysons Toyota, Inc. v. Commonwealth Life Ins., No. (Law) 94638, 1990 Va. Cir. LEXIS 229, at *3 (Va. Cir. Ct. Aug. 9, 1990) ("[T]here is no authority which would support an independent action for aiding and abetting.  Failed counts cannot be rescued from oblivion merely by adding a separate count which concludes that unspecified defendants aided and abetted unspecified conduct in some unspecified way at some unspecified time.  A defendant who aids and abets in the commission of a tort may be jointly liable for that tort, but he is not liable for a separate tort of aiding and abetting.").

[24]    See also Reo v. Shudt, 144 A.D.2d 793, 794, 534 N.Y.S.2d 553, 554 (3d Dep't 1988) ("Conspiracy is an agreement to commit an unlawful act, or an agreement to commit a lawful act by unlawful means….") (citation omitted); Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 174 (Pa. 1997) ("In order to state a cause of action for civil conspiracy, a plaintiff must show that 'two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means'.") (citation omitted); Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc., 453 S.E.2d 261, 267 (Va. 1995) ("A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.").

illegal or tortious activity … and the defendant's knowing and substantial assistance in the principal violation").[25]   In these circumstances, plaintiffs' complaint must be dismissed.

### III

### PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE

In addition to plaintiffs' failure to allege proximate cause, independent grounds require the dismissal of a number of plaintiffs' causes of action.

### A.      Torture Victim Protection Act

Plaintiffs have failed to state a claim under the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) ("TVPA").  The TVPA proscribes *state* conduct. Private individuals and entities are only liable for action taken "under [the] actual or apparent authority, or color, of the law of any foreign nation."  See Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir. 1995) (citing TVPA); Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 21-23 (D.D.C. 2000), aff'd, 35 Fed. Appx. 1 (D.C. Cir. 2002) (dismissing TVPA claim because corporate defendant was not alleged to be a state actor or *de facto* state actor).  No 'state action' is alleged against the AFG defendants.

### B.      Assault And Battery

The complaint also fails to allege, other than in an impermissibly conclusory fashion, that the AFG defendants acted *intentionally* to support terrorism or with the *intent* to cause the plaintiffs' injuries.  This is fatal to plaintiffs' assault and battery claim.  See, e.g.,

---

[25]      See RESTATEMENT (SECOND) OF TORTS, § 876 (aiding and abetting liability is founded on knowledge of the tort and the provision of substantial assistance); Koken, 825 A.2d at 732 (applying Restatement formulation); Priester v. Small, Nos. 26541, 26520, 2003 WL 21729900 (Va. Cir. Ct. Apr. 14, 2003) (requiring defendant's knowledge of the tort and the provision of substantial assistance).

Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (defendant must have intended plaintiff to fear or suffer harmful contact to be liable for assault or battery).

## C.   Non-Claim Counts

Several of plaintiffs' "counts" do not allege causes of action even as a matter of form.  Plaintiffs' "survival damages" action is not an independent cause of action – it is a procedural device by which a deceased's estate may pursue the deceased's causes of action.[26]  Similarly, plaintiffs' count for "punitive damages" also fails to allege a cause of action.  Punitive damages are a form of relief and as such are dependent upon pleading and proving an underlying tort. [27]

---

[26]     See N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 2004); Doe v. State, 588 N.Y.S.2d 698, 709 (N.Y. Ct. Cl. 1992), aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993); 42 PA. CONS. STAT. ANN. § 8302 (West 2004); Tulewicz v. S.E. Pa. Transp. Auth., 606 A.2d 427, 431 (Pa. 1992).  Virginia's survival statute differs from New York's and Pennsylvania's by transforming any survival cause of action into a wrongful death claim.  VA. CODE. ANN. § 8.01-25 (West 2004); El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 491 (4th Cir. 1986).

[27]     See Rocanova v. Equitable Life Assur. Soc'y of U.S., 83 N.Y.2d 603, 616, 612 N.Y.S.2d 339, 344 (1994); Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989); Foreign Mission Bd. of S. Baptist Convention v. Wade, 409 S.E.2d 144, 148 (Va. 1991).

**<u>Conclusion</u>**

The complaint against His Royal Highness Prince Abdullah Al Faisal Bin

Abdulaziz Al Saud, Mohammed Bin Abdulrahman Al Ariefy and Alfaisaliah Group (a/k/a Faisal

Group Holding Co.) should be dismissed with prejudice.

Dated:  New York, New York
        July 29, 2004

Respectfully submitted,


CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP


By:_____/s/_____
    T. Barry Kingham (TBK-1219)
    Daria M. Ciaputa (DC-0490)
    Jesse Clarke (JC-4410)
    101 Park Avenue
    New York, New York  10178
    (212) 696-6000

Attorneys for
*HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud,*
*Mohammed Bin Abdulrahman Al Ariefy*
*and Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*

**EXHIBIT A**

OSAMA BIN LADEN. FAISAL ISLAMIC BANK SUDAN was one of the five main founders of AL SHAMAL ISLAMIC BANK.

275. Prominent Saudi businessman and terrorism financier ADEL ABDUL JALIL BATTERJEE is the Chairman and one of the largest shareholders of AL SHAMAL ISLAMIC BANK in Khartoum, SUDAN. AL SHAMAL ISLAMIC BANK is an instrumental bank in BIN LADEN's financial support network. BIN LADEN used AL SHAMAL BANK for the funding of his AL QAEDA network leading up to the 1998 United States Embassy bombings in Africa. Defendant FAISAL ISLAMIC BANK was implicated during Al Fadl's May 2001 United States trial testimony regarding the bombings as holding and managing bank accounts for AL QAEDA operatives (*supra*).

276. As the head of DMI, PRINCE MOHAMMED knew or should have known of these and other activities and acted as an aider and abettor and material sponsor of AL QAEDA, BIN LADEN, and international terrorism.

277. PRINCE ABDULLAH was born in 1923 and is the son of former King Faisal. His brothers include Defendant PRINCE TURKI and Defendant PRINCE MOHAMMED.

278. PRINCE ABDULLAH AL FAISAL, a former official of the Saudi Ministry of Interior, was Minister of Health between 1949 and 1950. He is Chairman of the Arabian Establishment for Trade and Shipping Ltd, Qassim Cement Company and owner of ALFAISALIAH GROUP. He is also Chairman of the board of trustees of the King Faisal

Foundation.

279.   ALFAISALIAH GROUP (a/k/a Al Faisal Group Holding Co.) (or "AFG") is based in Riyadh, Saudi Arabia. Its main shareholder is PRINCE ABDULLAH. Its Chairman is MOHAMMED ABDULLAH AL FAISAL, PRINCE ABDULLAH AL FAISAL's son.

280.   ALFAISALIAH GROUP was reorganized in 2001 with PRINCE ABDULLAH holding 97.5% of the shares, and businessman MOHAMMED BIN ABDULRAHMAN AL ARIEFY, President, owning 2.5 percent of the shares. The company at that time changed its name to AL FAISAL GROUP HOLDING CO., a successor in interest to ALFAISALIAH GROUP.

281.   Founded in 1970, the ALFAISALIAH GROUP is a large commercial conglomerate with 3,000 employees and thirteen subsidiaries involved in five business sectors (Food & Beverages, Petrochemicals & Plastics, Entertainment & Multimedia, Consumer Electronics, and High Tech & Information Technology). ALFAISALIAH GROUP is the representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone. Its main subsidiaries include Modern Electronic Establishment, Modern Petrochemicals Establishment, Al Safi Diary Establishment, Al Faisalia Agricultural Establishment, Al Faisalia Real Estate Establishment and Al Faisalia Computer & Communication Services Establishment. ALFAISALIAH GROUP maintains branches

in Jeddah, Al Khobar, Khamis Mushait, Madinah, Qassim, Arar and Tabuk.

282.   According to FBI records, September 11, 2001, hijacker HANI SALEH H. HANJOUR (a/k/a Hani Saleh Hanjour, Hani Saleh, Hani Hanjour) is a Saudi national from the city of Taif, Saudi Arabia. HANJOUR was one of the hijackers on American Airlines flight 77 that crashed into the Pentagon on September 11, 2001. His brother Abdulrahman Saleh Hanjour harbored him in Tucson, Arizona, in the months preceding the September 11, 2001 attacks.

283.   The two Hanjour brothers and another AL QAEDA suspect in the attacks, Abdal Monem Zelitny, had a registered address in Taif, Saudi Arabia, under the name of Al Faisaliah, P.O. Box 1717, Taif, Saudi Arabia.  The name and address are the branch office of ALFAISALIAH GROUP in Taif, a subsidiary of the Riyadh based holding company.  As detailed above, ALFAISALIAH is owned and controlled by PRINCE ABDULLAH AL FAISAL, son of King Faisal, and for whom terrorist financier ZOUAYDI has worked as an accountant in Jeddah, Saudi Arabia.

284.   One of PRINCE ABDULLAH'S accountants in Jeddah, Saudi Arabia was Defendant MUHAMMED GALEB KALAJE ZOUAYDI, (a/k/a Abu Talha) (or "ZOUAYDI") convicted in Spain for financing AL QAEDA operations in Europe. ZOUAYDI set up Spanish companies established during the time he was staying in Saudi Arabia and working for PRINCE ABDULLAH, between 1996 and 2000. ZOUAYDI laundered Saudi money through Spain to an AL QAEDA cell in Germany.

285.   Evidence from eye witnesses indicates that ZOUAYDI was present in offices of PRINCE ABDULLAH in Jeddah.

286.   PRINCE NAYEF is Saudi Minister of Interior and heads the Saudi Committee for relief to Afghans, which supervises the activities of Defendant AL-HARAMAIN FOUNDATION whose sponsorship of terrorism is detailed *infra*. The Minister of Interior, by function, controls the activities of Islamic Charities and is empowered to verify their legality and conduct.

287.   PRINCE NAYEF is the Chairman of the Saudi Arabian Committee for Support of the Intifada al Quds. According to documents captured by the Government of Israel in the Palestinian territories during operation Defensive Shield, this committee knowingly transferred large sums of money to the families of Hamas terrorists who had executed murderous attacks against Israelis. PRINCE NAYEF, along with others in Saudi Arabia, supports suicide martyrs.

288.   PRINCE NAYEF has engaged in a pattern of conduct that aids, abets, and materially sponsors international terrorism and AL QAEDA. As with PRINCE SULTAN and PRINCE TURKI, PRINCE NAYEF has engaged in material support, including but not limited to monetary payoffs, to OSAMA BIN LADEN's AL QAEDA.

289.   PRINCE SALMAN was named Chairman of the General Donation Committee for Afghanistan (a/k/a Afghan Jihad Support Committee) in 1980 and has a history of funding Islamic extremism. In 1981, the General Donation Committee for