T. Barry Kingham (TBK-1219)
Daria M. Ciaputa (DC-0490)
Jesse Clarke (JC-4410)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for*
*HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud*
*and Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— )
                                              )
IN RE: TERRORIST ATTACKS ON        )         03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                       )         ECF Case
                                              )
———————————————————— )

***This document relates to: Burnett v. Al Baraka***
***Investment & Development Corp., 03 CIV 9849 (RCC);***
***Burnett v. Al Baraka Investment & Development Corp., 03 CIV 5738 (RCC)***

### MEMORANDUM OF LAW OF HIS ROYAL HIGHNESS PRINCE ABDULLAH AL FAISAL BIN ABDULAZIZ AL SAUD AND ALFAISALIAH GROUP (A/K/A FAISAL GROUP HOLDING CO.) IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

**Table Of Contents**

Page #

Table Of Authorities ........................................................................................................... ii

Introduction ......................................................................................................................... 1

Summary Of Allegations .................................................................................................... 2

Argument ............................................................................................................................. 4

   I   THIS COURT LACKS PERSONAL JURISDICTION
       OVER THE AFG DEFENDANTS ................................................................................ 4

      A.   Plaintiffs Have Not Alleged Any Facts
           Supporting The Exercise Of Personal Jurisdiction ................................................ 4

      B.   Plaintiffs Have Not Alleged That Any Of The AFG
           Defendants Has Any Contacts With The United States ........................................... 5

           1.   Prince Abdullah Has No Contacts With The United States ............................ 6

           2.   AFG Has No Contacts With The United States ............................................... 7

      C.   Plaintiffs Have Not Alleged That Either Of The AFG Defendants
           "Purposefully Directed" Any Act Toward The United States ................................. 8

           1.   The Only Act Alleged As To AFG
               Was Not Connected To The United States ...................................................... 9

           2.   Prince Abdullah Cannot Be Subject To Personal Jurisdiction
               Based Solely Upon The Unilateral Acts Of Others ...................................... 10

      D.   The Status Of Prince Abdullah As A Shareholder Of AFG
           Does Not Subject Him To The Jurisdiction Of This Court .................................... 12

      E.   Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting"
           Are Insufficient To Establish Jurisdiction Over The AFG Defendants ................. 14

   II   THE COMPLAINT FAILS TO STATE ANY
       CLAIM AGAINST THE AFG DEFENDANTS ........................................................... 16

  III   PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE .................................... 23

      A.   RICO ..................................................................................................................... 23

      B.   Torture Victim Protection Act .............................................................................. 23

      C.   Negligence ............................................................................................................ 24

      D.   Non-Claim Counts ................................................................................................ 24

Conclusion ......................................................................................................................... 25

**Table Of Authorities**

Page #

**Cases**

Alexander & Alexander, Inc. v. Fritzen,
  68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) ............................................................. 21

Allstate Life Ins. Co. v. Linter Group Ltd.,
  782 F. Supp. 215 (S.D.N.Y. 1992) .................................................................... 15

Andre Emmerich Gallery, Inc. v. Segre,
  96 Civ. 889, 1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. Oct. 29, 1997) ................ 15

ATSI Communications Inc. v. Shaar Fund Ltd.,
  No. 02 Civ. 8726, 2004 WL 9091773 (S.D.N.Y. Apr. 28, 2004) ........................... 5

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
  902 F.2d 194 (2d Cir. 1990) ............................................................................. 4

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
  171 F.3d 779 (2d Cir. 1999) ....................................................................... 4, 14

Bao Ge v. Li Peng,
  201 F. Supp. 2d 14 (D.D.C. 2000),
  aff'd, 35 Fed. Appx. 1 (D.C. Cir. 2002) ............................................................ 23

Bellepointe Inc. v. Kohl's Dep't Stores Inc.,
  975 F. Supp. 562 (S.D.N.Y 1997) ...................................................................... 4

Boim v. Quranic Literacy Inst.,
  291 F.3d 1000 (7th Cir. 2002) .................................................................... 18, 24

Boyanowski v. Capital Area Intermediate Unit,
  215 F.3d 396 (3d Cir. 2000) ........................................................................... 21

Bradley v. Staubach,
  No. 03 Civ. 4160, 2004 WL 830066 (S.D.N.Y. Apr. 13, 2004)........................... 14

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985)........................................................................ 8, 9, 11, 16

Burnett v. Al Baraka Inv. & Dev. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003)............................................................ 21, 23, 24

Burnett v. Al Baraka Inv. & Dev. Corp.,
  292 F. Supp. 2d 9 (D.D.C. 2003)............................................................... 6, 8, 19

Calder v. Jones,
  465 U.S. 783 (1984)...................................................................................... 9, 12

Chrysler Capital Corp. v. Century Power Corp.,
  778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................. 14

Citibank, N.A. v. K-H Corp.,
  968 F.2d 1489 (2d Cir. 1992) .......................................................................... 21

Cohn v. Knowledge Connections, Inc.,
  585 S.E.2d 578 (Va. 2003) .............................................................................. 17

Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc.,
  453 S.E.2d 261 (Va. 1995) .............................................................................. 22

Commercial Bus. Sys. Inc. v. Halifax Corp.,
    484 S.E.2d 892 (Va. 1997) ........................................................................... 21

Daniel v. Am. Bd. of Emergency Med.,
    802 F. Supp. 912 (W.D.N.Y. 1992) ............................................................. 13

Dardana Ltd. v. A.O. Yug021skneftegaz,
    317 F.3d 202 (2d Cir. 2003) .......................................................................... 5

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ............................................................................. 21

DeFalco v. Bernas,
    244 F.3d 286 (2d Cir. 2001) ........................................................................ 24

Doe v. Islamic Salvation Front,
    257 F. Supp. 2d 115 (D.D.C. 2003) ............................................................ 20

Doe v. State,
    588 N.Y.S.2d 698 (N.Y. Ct. Cl. 1992),
    aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993) ................................................... 24

El-Meswari v. Wash. Gas Light Co.,
    785 F.2d 483 (4th Cir. 1986) ....................................................................... 24

Family Internet, Inc. v. Cybernex, Inc.,
    No. 98 Civ. 0637, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) .............. 13, 14

First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) .................................................. 6, 12, 15

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) .......................................................................... 20

Foreign Mission Bd. of S. Baptist Convention v. Wade,
    409 S.E.2d 144 (Va. 1991) .......................................................................... 24

Garcia v. Spanish Broad. Sys. Inc.,
    92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490 (S.D.N.Y. May 17, 1993) ....... 17

Grove Press Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ........................................................................ 15

Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.,
    87 F.R.D. 93 (S.D.N.Y. 1980) ...................................................................... 7

Grow Group Inc. v. Jandernoa,
    No. 94 Civ. 5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ...................... 6

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) .................................................................... 22

Hanson v. Denckla,
    357 U.S. 235 (1958) ..................................................................................... 11

Helicopteros Nacionales de Colombia S.A. v. Hall,
    466 U.S. 408 (1984) ........................................................................... 5, 8, 11

Hecht v. Commerce Clearing House Inc.,
    897 F.2d 21 (2d Cir. 1990) .......................................................................... 17

Higgins v. Islamic Republic of Iran,
    No. 1 99-CV-00377, 2000 WL 33674311 (D.D.C. Sept. 21, 2000) ............. 19

Holmes v. Sec. Inv. Prot. Corp.,
   503 U.S. 258 (1992)................................................................................ 17

In re Am. Express Co. S'holders Litig.,
   39 F.3d 395 (2d Cir. 1994) ..................................................................... 20

In re Kreta Shipping S.A.,
   No. 96 Civ. 1137, 1998 WL 173167  (S.D.N.Y. Jan. 29, 1998)................. 7

Interim Pers. Inc. v. Messer,
   559 S.E.2d 704 (Va. 2002) ..................................................................... 17

Int'l Shoe Co. v. Washington,
   326 U.S. 310 (1945).......................................................................... 4, 16

Jazini v. Nissan Motor Co.,
   148 F.3d 181 (2d Cir. 1998) .............................................................. 4, 12

Johnson-Tanner v. First Cash Fin. Servs., Inc.,
   239 F. Supp. 2d 34 (D.D.C. 2003) ........................................................... 5

Kadic v. Karadzic,
   70 F.3d 232 (2d Cir. 1995) ..................................................................... 23

Karabu Corp. v. Gitner,
   16 F. Supp. 2d 319 (S.D.N.Y. 1998) ...................................................... 13

Keeton v. Hustler Magazine Inc.,
   465 U.S. 770 (1984).......................................................................... 6, 8, 9

Kirkbride v. Lisbon Contractors, Inc.,
   555 A.2d 800 (Pa. 1989) ........................................................................ 24

Koken v. Steinberg,
   825 A.2d 723 (Pa. Commw. Ct. 2003) .............................................. 21, 22

Kulko v. California Superior Court,
   436 U.S. 84 (1978).................................................................................. 11

Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.,
   191 F.3d 229 (2d Cir. 1999) ................................................................... 17

Lamar v. Am. Basketball Ass'n,
   468 F. Supp. 1198 (S.D.N.Y. 1979) ....................................................... 13

Leasco Data Processing Equip. Corp. v. Maxwell,
   468 F.2d 1326 (2d Cir. 1972) ................................................................. 14

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
   507 U.S. 163 (1993)................................................................................. 3

Lehigh Valley Indus. Inc. v. Birenbaum,
   527 F.2d 87 (2d Cir. 1975) ..................................................................... 14

Lerner v. Fleet Bank N.A.,
   318 F.3d 113 (2d Cir. 2003) ................................................................... 18

Libutti v. United States,
   178 F.3d 114 (2d Cir. 1999) ................................................................... 10

Lindsay v. Lockwood,
   163 Misc.2d 228, 625 N.Y.S.2d 393 (Sup. Ct. Monroe County 1994) .... 22

Maheshwari v. New York,
  No. 54, 2004 N.Y. LEXIS 978 (N.Y. May 6, 2004)...............................................17

McGee v. Int'l Life Ins. Co.,
  355 U.S. 220 (1957)...............................................................................................11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
  84 F.3d 560 (2d Cir. 1996).................................................................................5, 7

Nicholas v. Saul Stone & Co.,
  224 F.3d 179 (3d Cir. 2000)..................................................................................13

Ontel Prods. Inc. v. Project Strategies Corp.,
  899 F. Supp. 1144 (S.D.N.Y. 1995) ......................................................................13

Pittman by Pittman v. Grayson,
  149 F.3d. 111 (2d Cir. 1998) .................................................................................15

Powell v. Drumheller,
  653 A.2d 619 (Pa. 1995).......................................................................................17

Priester v. Small,
  Nos. 26541, 26520, 2003 WL 21729700 (Va. Cir. Ct. Apr. 14, 2003) ..................22

Reo v. Shudt,
  144 A.D.2d 793, 534 N.Y.S.2d 553 (3d Dep't 1988).............................................22

Rocanova v. Equitable Life Assur. Soc'y of U.S.,
  83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) .............................................................24

Rush v. Savchuck,
  444 U.S. 320 (1980)................................................................................................6

Second Amendment Found. v. United States Conference of Mayors,
  274 F.3d 521 (D.C. Cir. 2001) ..............................................................................14

Shaffer v. Heitner,
  433 U.S. 186 (1977)..........................................................................................8, 13

Simon v. Phillip Morris,
  86 F. Supp. 2d 95 (E.D.N.Y. 2000) .......................................................................15

Skipworth v. Lead Indus. Ass'n,
  690 A.2d 169 (Pa. 1997).......................................................................................22

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ...............................................................21

Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.,
  985 F.2d 102 (2d Cir. 1993) .................................................................................17

Stauffacher v. Bennett,
  969 F.2d 455 (7th Cir. 1992) ................................................................................14

Surette v. Islamic Republic of Iran,
  231 F. Supp. 2d 260 (D.D.C. 2002) ......................................................................19

Time, Inc. v. Simpson,
  No. 02 Civ. 4917, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003).........................12

Tulewicz v. S.E. Pa. Transp. Auth.,
  606 A.2d 427 (Pa. 1992).......................................................................................24

<u>Tysons Toyota Inc. v. Commonwealth Life Ins.</u>,
   No. (Law) 94638, 1990 Va. Cir. LEXIS 229 (Va. Cir. Ct. Aug. 9, 1990)............................. 21

<u>Ungar v. Islamic Republic of Iran</u>,
   211 F. Supp. 2d 91 (D.D.C. 2002) ................................................................................ 19, 20

<u>United States v. Jimenez Recio</u>,
   537 U.S. 270 (2003) ..................................................................................................... 22

<u>Weinstein v. Islamic Republic of Iran</u>,
   184 F. Supp. 2d 13 (D.D.C. 2002) ................................................................................. 19

<u>Whitaker v. Am. Telecasting Inc.</u>,
   261 F.3d 196 (2d Cir. 2001) ............................................................................................ 4

<u>Young v. Colgate-Palmolive Co.</u>,
   790 F.2d 567 (7th Cir. 1986) ........................................................................................ 13

**Statutes and Rules**

18 U.S.C.A. § 1962(a) (West 2004).................................................................................. 23

18 U.S.C.A. § 1962(c) (West 2004).................................................................................. 23

18 U.S.C.A. § 1962(d) (West 2004) ................................................................................. 23

18 U.S.C.A. § 1964(c) (West 2004).................................................................................. 23

42 PA. CONS. STAT. ANN. § 8302 (West 2004) ................................................................. 24

Alien Tort Claims Act, 28 U.S.C.A. § 1350 (West 2004) .................................................. 16

Antiterrorism Act, 18 U.S.C.A. §§ 2331, 2333 (West 2004) ....................................... 16, 18

D.C. CODE ANN. § 13-423 (2001)..................................................................................... 5

FED. R. CIV. P. 12(b)(2)..................................................................................................... 1

FED. R. CIV. P. 12(b)(6)..................................................................................................... 1

FED. R. CIV. P. 4(k)(2)....................................................................................................... 5

N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 2004)............................... 24

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) .............. 16, 23

VA. CODE ANN. § 8.01-25 (West 2004) ........................................................................... 24

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS, § 876 ..................................................................... 22

**Introduction**

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), defendants His Royal Highness Prince Abdullah Al Faisal Bin Abdulaziz Al Saud ("Prince Abdullah") and Alfaisaliah Group (a/k/a Faisal Group Holding Co.) ("AFG") (collectively referred to as "the AFG defendants") hereby move to dismiss plaintiffs' Third Amended Complaint ("complaint") originally filed in Burnett v. Al Baraka Investment & Development Corp., 03 CIV 5738 (RCC).[1]  The complaint must be dismissed on two grounds:  (1) neither of the AFG defendants is subject to the personal jurisdiction of this Court; and (2) plaintiffs have failed to state any claim entitling them to relief against either of the AFG defendants.

It is understandable that the survivors and the victims' families seek compensation for the terrorist attacks committed on September 11, 2001.  However, in an excess of zeal, plaintiffs have cast too wide a net, irresponsibly naming as defendants AFG and its majority shareholder, Prince Abdullah.  Neither of the AFG defendants had any connection to those events.  The complaint does not allege any such connection.  Nor does it allege that either of the AFG defendants has ever had any contact with the United States.  The complaint must be dismissed.

---

[1]      The AFG defendants have submitted three separate Memoranda of Law in support of their motions to dismiss the complaints filed in the Burnett, Ashton and Federal Insurance actions.  Although much of the text is identical, the filing of separate  Memoranda was necessary for two reasons.  First, Mohammed Al Ariefy is named as a defendant in the Ashton and Federal Insurance complaints but not the Burnett complaint.  Second, although the allegations contained in all three complaints overlap significantly, two of the complaints make some additional and different allegations.  This difference is most apparent in the Federal Insurance complaint because plaintiffs have confused defendant Prince Abdullah with the Crown Prince of Saudi Arabia who is not a defendant in any of the consolidated actions.

## Summary Of Allegations

Of the more than 600 paragraphs in the complaint, only a handful of allegations

relate directly to the AFG defendants:[2]

- Prince Abdullah was born in 1923.  He is a son of the late King Faisal and a brother of defendants Prince Turki Al Faisal Al Saud and Prince Mohammed Al Faisal Al Saud.  (Complaint, ¶ 367.)

- AFG is a "large commercial conglomerate with 3,000 employees and thirteen subsidiaries involved in five business sectors…."  It maintains "branches" in Jeddah, Al Khobar, Khamis Mushait, Madinah, Qassim, Arar and Tabuk.  AFG is the "representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone."  (Complaint, ¶ 371.)

- As a 97.5% shareholder of AFG, Prince Abdullah "own[s] and control[s]" AFG. (Complaint, ¶¶ 369-70, 373.)[3]

- One of the hijackers, the hijacker's brother, and another al Qaeda suspect, supposedly had a "registered address … under the name of Alfaisaliah, P.O. Box 1717, Taif, Saudi Arabia."  Allegedly, this address corresponds to that of a "branch office of Alfaisaliah Group in Taif, a subsidiary of the Riyadh based holding company."  (Complaint, ¶¶ 372-73.)

- Defendant Muhammed Galeb Kalaje Zouaydi, who has been convicted in Spain of "financing al Qaeda operations in Europe," allegedly set up Spanish companies while "staying in Saudi Arabia and working for Prince Abdullah" between 1996 and 2000.  He is described only as "[o]ne of Prince Abdullah al Faisal's accountants."  (Complaint, ¶¶ 373-75.)

- "Evidence recovered by the Spanish authorities [not otherwise described] shows that … [Zouaydi and] several associates … funneled money from the Saudi-based company, Mushayt for Trading Establishment …, through Spanish corporations to entities and individuals known to be associated with al Qaeda terrorist organizations in Europe."  Without further information, Prince Abdullah is said to be "implicated in these financial transactions of material support to al Qaeda…." (Complaint, ¶ 376.)

---

[2]     For convenience, the pages containing the paragraphs which relate to the AFG defendants have been attached as Exhibit A.

[3]     Prince Abdullah is also alleged to have been an "official of the Saudi Ministry of Interior [and the] Minister of Health between 1949 and 1950," Chairman of the Arabian Establishment for Trade and Shipping Ltd., Qassim Cement Company, and Chairman of the board of trustees of the King Faisal Foundation.  (Complaint, ¶ 368.) However, none of plaintiffs' allegations refer to any action Prince Abdullah took in those capacities.

Certain of these allegations are utterly false.  Specifically, the AFG defendants would establish without question that no AFG branch office ever had a post office address that corresponded to the address listed in the complaint; Zouaydi never worked for Prince Abdullah; Prince Abdullah never did business with the Mushayt for Trading Establishment; and the AFG defendants have no connection to al Qaeda.  However, the AFG defendants recognize that the Court must consider the allegations of the complaint as true solely for the purpose of deciding this motion to dismiss.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (for the purposes of a motion to dismiss, the court must accepted as true all well pleaded factual allegations in the complaint).

In essence, plaintiffs seek to hold both of the AFG defendants liable for mass murder because:  (a) one of the hijackers, the hijacker's brother, and an al Qaeda suspect, at some unspecified time, allegedly had a registered address that corresponds to the post office box of a branch office of AFG in Taif, Saudi Arabia; (b) an accountant employed at the time by Prince Abdullah allegedly set up Spanish companies through which he laundered money for al Qaeda cells in Europe; and (c) without any factual basis, Prince Abdullah is "implicated" in transactions undertaken by Zouaydi and the Mushayt for Trading Establishment.  But in the absence of *any* allegation concerning what the AFG defendants *knew* or how *they* acted, plaintiffs' allegations fail to support the exercise of personal jurisdiction or any theory that could establish liability.  The paucity of factual allegations relating directly to the AFG defendants demonstrates that they are not subject to this Court's jurisdiction and cannot be liable to the plaintiffs in any way.

Plaintiffs' baseless allegations against AFG, a respected industrial corporation, and its principal owner are shameful.  The complaint must be dismissed.

**Argument**

**I**

**THIS COURT LACKS
PERSONAL JURISDICTION OVER THE AFG DEFENDANTS**

**A.      Plaintiffs Have Not Alleged Any Facts Supporting
         The Exercise Of Personal Jurisdiction**

         Plaintiffs bear the burden of establishing that this Court has personal jurisdiction

over Prince Abdullah and AFG.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171

F.3d 779, 784 (2d Cir. 1999).  To meet this burden, plaintiffs must plead, in good faith, facts that

are legally sufficient to support personal jurisdiction.  Ball v. Metallurgie Hoboken-Overpelt,

S.A., 902 F.2d 194, 197 (2d Cir. 1990).  That is, plaintiffs must make "a 'prima facie showing'."

Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) (citations omitted).  See also

Whitaker v. Am. Telecasting Inc., 261 F.3d 196, 208 (2d Cir. 2001).  Hence, plaintiffs "must

plead facts which, if true, are sufficient in themselves to establish jurisdiction."  Bellepointe Inc.

v. Kohl's Dep't Stores Inc., 975 F. Supp. 562, 564 (S.D.N.Y 1997).

         Plaintiffs have not come close to meeting their burden.  Due process demands that

a foreign defendant must not be subject to jurisdiction unless he has "certain minimum contacts

with [the forum] such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Under

the "minimum contacts" analysis mandated by International Shoe and its progeny, a plaintiff

may establish jurisdiction over a defendant on a theory of general or specific personal

jurisdiction.[4]  Here, plaintiffs' allegations fail to support either theory.  They have not alleged

*any* fact that would subject either of the AFG defendants to the personal jurisdiction of this

Court.  The complaint fails to identify any of the "continuous and systematic" contacts required

for general jurisdiction, or any factual allegation that the AFG defendants "purposefully

directed" any act towards the United States that could support specific jurisdiction.[5]

**B.      Plaintiffs Have Not Alleged That Any Of The AFG Defendants
          Has Any Contacts With The United States**

        "To establish general jurisdiction, the plaintiff must show that the defendant has

'continuous and systematic' contacts with the forum."  ATSI Communications Inc. v. Shaar

Fund Ltd., No. 02 Civ. 8726, 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004) (quoting

Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 416 (1984)).  If general

jurisdiction is established, a court will be permitted to exercise its power over a foreign

defendant even if the cause of action alleged against him does not arise from or relate to those

contacts.  See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

---

[4]      As Judge Kaplan recently explained:  "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'  By comparison, a court's general jurisdiction 'is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'"  ATSI Communications Inc. v. Shaar Fund Ltd., No. 02 Civ. 8726, 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004) (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-16 & nn. 8-9 (1984)).

[5]      The AFG defendants recognize that the Court will scrutinize the complaint for allegations of the AFG defendants' contacts with the United States as a whole, rather than only their contacts with the District of Columbia.  See Fed. R. Civ. P. 4(k)(2); Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 207 (2d Cir. 2003) ("Under [Fed. R. Civ. P. 4(k)(2)], a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole … so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment.").  Moreover, because plaintiffs' allegations fail to show that the AFG defendants have minimum contacts with the United States as a whole, they also fail to meet the requirements of D.C. Code Ann. § 13-423 (2001).  See Johnson-Tanner v. First Cash Fin. Servs., Inc., 239 F. Supp. 2d 34, 37 (D.D.C. 2003) (long-arm provisions of the D.C. Code are coextensive with constitutional due process); ATSI Communications, 2004 WL 9091773, at *2 ("[T]he Second Circuit has noted that the due process analysis is basically the same under both the Fifth and Fourteenth Amendments, the principal [difference] being that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only contacts with the forum state may be considered.") (internal quotation marks omitted).

However, plaintiffs' allegations simply do not evidence "continuous and systematic" contacts of any of the AFG defendants with the United States.

      **1.**      **<u>Prince Abdullah Has No Contacts With The United States</u>**

Prince Abdullah is a resident national of Saudi Arabia.  Plaintiffs do not allege that Prince Abdullah conducts business or other activities in the United States, owns property or holds a bank account in the United States, or has ever visited the United States.[6]  Instead, plaintiffs offer only the bald assertion that "Saudi Royal family members own substantial assets … and do substantial business in the United States of America."  (Complaint, ¶ 431.)  This allegation impermissibly aggregates individual members of the Saudi Royal Family who are named as defendants in plaintiffs' complaint.  See <u>Keeton v. Hustler Magazine Inc.</u>, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); <u>Rush v. Savchuck</u>, 444 U.S. 320, 332 (1980) ("considering the 'defending parties' together and aggregating their forum contacts … is plainly unconstitutional"); <u>Grow Group Inc. v. Jandernoa</u>, No. 94 Civ. 5679, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (allegations referring to "Officers & Directors Group" could not establish personal jurisdiction over individual defendants to whom no separate and specific acts were ascribed).  Consequently, plaintiffs' generalized allegations cannot establish minimum contacts with respect to Prince Abdullah.

---

[6]      Even these traditional contacts may be insufficient to establish general jurisdiction over an individual defendant.  See <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("<u>Burnett II</u>") ("Plaintiffs have made a desultory effort to sustain their burden of showing that Prince Sultan's visits to the United States … would support the assertion of personal jurisdiction over him."); <u>First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.</u>, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (no personal jurisdiction over Swiss defendant despite plaintiffs' allegations that she owned real estate, maintained a bank account, and had previously engaged in business transactions in New York) (applying New York law).

2.      **AFG Has No Contacts With The United States**

Plaintiffs' complaint alleges that AFG is a large Saudi Arabian corporation.  But, despite specifying that AFG has "3,000 employees and thirteen subsidiaries involved in five business sectors," plaintiffs do not allege that AFG conducts business in the United States. (Complaint, ¶ 371.)  Furthermore, AFG is not alleged to own property or hold a bank account in the United States, solicit business in the United States, send employees to the United States, or supply goods or services to entities or individuals in the United States.  See Metro. Life Ins., 84 F.3d at 573 (general jurisdiction established over out-of-forum corporation that solicited business in the forum and sold its products through forum dealers to customers in the forum).  In the absence of such facts, plaintiffs cannot establish that AFG has the requisite substantial, continuous and systematic connections with the United States.

Plaintiffs likewise cannot establish general jurisdiction over AFG by alleging that it is the "representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone." (Complaint, ¶ 371.)  Indeed, even if plaintiffs had alleged that one of these "international companies" was incorporated and did business in the United States, and that AFG was its agent in Saudi Arabia, that would not subject AFG to personal jurisdiction here.

As has been consistently held, "[w]hile the acts of the agent may be attributed to the principal for jurisdictional purposes, the converse is not true; a principal's conduct may not supply the jurisdictional basis for the agent."  In re Kreta Shipping S.A., No. 96 Civ. 1137, 1998 WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998) (granting ship agent's motion to dismiss claims of cargo owners for lack of personal jurisdiction describing claimant's agency theory as "frivolous").  See also Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd., 87 F.R.D. 93, 96 (S.D.N.Y. 1980) (holding agency theory of personal jurisdiction "completely inapposite …

where it is the alleged principal who does business in [the forum] and the agent who does not"). Consequently, personal jurisdiction cannot be established over AFG, even if one of the international companies for which it is a "representative agent" in Saudi Arabia does business in the United States.

**C.     Plaintiffs Have Not Alleged That Either Of The AFG Defendants "Purposefully Directed" Any Act Toward The United States**

In the absence of continuous and substantial contacts giving rise to general personal jurisdiction, plaintiffs must allege that the AFG defendants had minimum contacts with the United States that satisfy the due process requirements of specific personal jurisdiction. Specific jurisdiction will be established over a foreign defendant "if the defendant has 'purposefully directed' his activities at the residents of the forum and the litigation results from alleged injuries which 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton, 465 U.S. at 774 and Helicopteros, 466 U.S. at 414). Only in these circumstances will a defendant have "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign." Shaffer v. Heitner, 433 U.S. 186, 218 (1977).

However, it is clear from the dearth of direct factual allegations in the complaint that neither of the AFG defendants played any role in sponsoring or carrying out the terrorist attacks for which plaintiffs seek redress. In fact, plaintiffs' theory of specific jurisdiction has already been rejected by Judge Robertson. See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Burnett II") (rejecting plaintiffs' argument that "anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States" and

8

holding that the complaint "stop[ed] well short of alleging that [defendant's] actions were

'expressly aimed' or 'purposefully directed' at the United States").[7]

1.    **The Only Act Alleged As To AFG**
      **Was Not Connected To The United States**

Plaintiffs' complaint makes only a single allegation against AFG:  that one of the

hijackers, the hijacker's brother, and another al Qaeda suspect at some unspecified time

supposedly had a "registered address … under the name of Alfaisaliah, P.O. Box 1717, Taif,

Saudi Arabia" which allegedly corresponds to the address of a "branch office of [AFG] in Taif."

(Complaint, ¶ 373.)  *That is plaintiffs' only claim as to AFG.*  Even assuming this allegation were

true – which it is not – it cannot possibly meet the due process requirements of specific personal

jurisdiction, the very purpose of which is to "ensure[] that a defendant will not be haled into a

jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral

activity of another party or a third person."  Burger King, 471 U.S. at 475 (internal quotation

marks omitted).

Plaintiffs do not claim that AFG knew about or consented to the alleged use of its

post office box as a "registered address" by others; nor do they allege that AFG knew that

anyone who might have had such an address was involved in terrorist activity anywhere, let

alone in the United States.[8]  See Calder v. Jones, 465 U.S. 783, 789 (1984) (defendants' acts

were "expressly aimed" at the forum because defendants *knew* the subject of their defamatory

article would potentially suffer injury in the forum where she resided).[9]  Nor is AFG alleged to

---

[7]       The AFG defendants join in the argument made by other defendants that this decision constitutes law of the
case and is owed substantial deference.  There is no reason for this sound opinion to be reconsidered.

[8]       As noted above, AFG denies it shared any post office box in Taif and can prove it through official records
of the Saudi postal service.

[9]       See also Keeton, 465 U.S. at 774 (specific jurisdiction established over defendant publisher because the
monthly circulation of millions of magazines was purposefully directed at the forum and inevitably affected persons
in the forum).

have undertaken any act outside Saudi Arabia, or to have *intended* to affect residents of the United States in any way.  See Libutti v. United States, 178 F.3d 114, 123 (2d Cir. 1999) (out-of-forum company did not purposefully direct its activities at the forum because its activities were external to the forum and it did not intend to inflict harm on or commercially affect residents of the forum).

### 2.      Prince Abdullah Cannot Be Subject To Personal Jurisdiction Based Solely Upon The Unilateral Acts Of Others

Plaintiffs' complaint does not allege that Prince Abdullah actually *did* anything. Indeed, the complaint contains only four substantive factual references to Prince Abdullah:  (1) that "[o]ne of Prince Abdullah al Faisal's accountants in Jeddah, Saudi Arabia was … [defendant Zouaydi who has since been] convicted in Spain for financing al Qaeda operations in Europe" (Complaint, ¶ 374); (2) "Zouaydi set up Spanish companies established during the time he was staying in Saudi Arabia and working for Prince Abdullah al Faisal, between 1996 and 2000" (id.); (3) that "[e]vidence from eye witnesses indicates that Zouaydi was present in offices of Prince Abdullah al Faisal in Jeddah" (id. at ¶ 375); and (4) that Prince Abdullah is somehow "implicated in … financial transactions" in which Zouaydi and "several associates … funneled money from … Mushayt for Trading Establishment … through Spanish corporations to entities and individuals known to be associated with al Qaeda terrorist organizations in Europe" (id., ¶ 376).  This attempt at pleading 'guilt by association' falls far short of alleging any act by Prince Abdullah purposefully directed toward the United States.[10]

Plaintiffs cannot draw Prince Abdullah into the Court's jurisdiction by alleging contacts that are dependent upon the unilateral acts of others, such the money laundering

---

[10]      While these allegations must be accepted as true for purposes of this motion, if later required to do so, Prince Abdullah will establish that he has no knowledge of or connection with Mr. Zouaydi or Mushayt for Trading.

activities of Zouaydi and Mushayt for Trading.  The Supreme Court has consistently rejected such arbitrary and unilateral contacts.  See Helicopteros, 466 U.S. at 416-17 (no jurisdiction over foreign defendant by reason of defendant's acceptance of checks which plaintiffs had drawn on a U.S. bank); Kulko v. California Superior Court, 436 U.S. 84, 98 (1978) (no jurisdiction over divorced husband whose only contact with the forum was created by his former spouse's decision to move there); Hanson v. Denckla, 357 U.S. 235, 253 (1958) (no jurisdiction over trustee where only connection with the forum resulted from plaintiff settlor's decision to exercise her power of appointment there).

Jurisdiction is proper only "where the contacts proximately result from action by the defendant *himself* that create a 'substantial connection' with the forum State."  Burger King, 471 U.S. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)) (emphasis in original).  Plaintiffs have not alleged that Prince Abdullah has done any 'act' whatsoever.

In essence, plaintiffs ask this Court to extend its jurisdiction to all foreign nationals who met, employed or did business with anybody who, unbeknownst to them at the time, is now alleged or known to have supported international terrorism.  *That is not the law*. Plaintiffs must plead facts to show that Prince Abdullah "'purposefully directed' his activities at residents of the [United States] … 'such that he should reasonably anticipate being haled into court [here].'"  Burger King, 471 U.S. at 472, 474 (citations omitted).  They have utterly failed to do so.

Nor is it sufficient to allege specific jurisdiction over Prince Abdullah by tarring him with a generalized, conclusory and factually unsubstantiated theory that members of the Saudi Royal Family purposefully provided support to Osama bin Laden or al Qaeda and thus knowingly sponsored the terrorist attacks of September 11.  As noted above, the Court must

disregard plaintiffs' allegations that aggregate only a general group of defendants.  (See Complaint, "Introduction" and ¶¶ 339, 427, 430, 431-32 containing allegations against "certain members of Saudi Arabian society," "[c]ertain entities and individuals in Saudi Arabia," "certain of the highest members of the Saudi Royal family," "certain Saudis," "certain Saudi nationals," "Saudi Royal Family members" and "[t]he Saudis.")

Similarly, plaintiffs' claims against Prince Abdullah cannot be advanced by the assertion of legal conclusions in place of factual allegations.  See Jazini, 148 F.3d at 185 (court not bound to accept legal conclusion couched as factual allegation); Time, Inc. v. Simpson, No. 02 Civ. 4917, 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003) (conclusory allegations insufficient to show personal jurisdiction based on defendants' personal involvement in tortious conduct); First Capital Asset Mgmt. Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 388 (S.D.N.Y. 2002) ("plaintiff cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported'") (citations omitted).  Therefore, the Court must lend no weight to plaintiffs' allegation that Prince Abdullah "engaged in the aiding and abetting or material sponsorship of Osama bin Laden, al Qaeda, and international terrorism as described herein."  (Complaint, ¶ 342) (emphasis added).  No such conduct is described.

**D.     The Status Of Prince Abdullah As A Shareholder Of AFG
        Does Not Subject Him To The Jurisdiction Of This Court**

Prince Abdullah cannot be subject to personal jurisdiction merely because he holds shares in AFG.  (Complaint, ¶ 370.)  As demonstrated above, the complaint fails completely to establish jurisdiction over AFG.  In any event, however, a court cannot exercise jurisdiction over a shareholder merely because it has jurisdiction over the corporation.  Shareholders are separate persons from the company and their minimum contacts must be assessed independently.  See Calder, 465 U.S. at 790 (minimum contacts "must be met as to each

defendant over whom a … court exercises jurisdiction"); <u>Shaffer</u>, 433 U.S. at 215-16 (1977); <u>see also Shaffer</u>, 433 U.S. at 217 (Powell, J., concurring) (defendants' "positions as directors and officers of a Delaware corporation can[not] provide sufficient contact to support the Delaware court's assertion of jurisdiction").[11]  Therefore, the corporate acts of AFG cannot provide any basis for establishing personal jurisdiction over Prince Abdullah.

　　　Plaintiffs cannot bolster their inadequate jurisdictional showing with the generalized allegation that Prince Abdullah "owned and controlled" AFG.  (Complaint, ¶ 373.) A "[foreign defendant's] status as the controlling shareholder in a … corporation [subject to jurisdiction in the forum] does not, without more, subject him individually to personal jurisdiction." <u>Lamar v. Am. Basketball Ass'n</u>, 468 F. Supp. 1198, 1203 (S.D.N.Y. 1979) (applying New York law).[12]  Here, the complaint offers nothing more.  Even to establish jurisdiction over Prince Abdullah on a corporate agency theory "plaintiff's allegations must sufficiently detail [Prince Abdullah's] conduct so as to persuade a court that [he] was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon [Prince Abdullah's] title or position within the corporation, or upon conclusory allegations that [he] controls the corporation." <u>Karabu Corp. v. Gitner</u>, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (applying New York law).  Here, however, plaintiffs have not alleged that 81 year-old Prince

---

[11]　　See also <u>Family Internet, Inc. v. Cybernex, Inc.</u>, No. 98 Civ. 0637, 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("mere fact that a corporation is subject to jurisdiction under [CPLR] section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York"); <u>Daniel v. Am. Bd. of Emergency Med.</u>, 802 F. Supp. 912, 919 (W.D.N.Y. 1992) ("It is well settled that jurisdiction over the individual officers and directors of a corporation cannot be predicated merely upon jurisdiction over the corporation").  Other circuits have followed this rule.  <u>See</u>, <u>e.g.</u>, <u>Nicholas v. Saul Stone & Co.</u>, 224 F.3d 179, 184 (3d Cir. 2000) (affirming district court's holding that "jurisdiction over the defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction"); <u>Young v. Colgate-Palmolive Co.</u>, 790 F.2d 567, 569 (7th Cir. 1986) ("individual board members cannot be said to have transacted business within [the forum] merely because the corporation is qualified to do business [in the forum]").

[12]　　See <u>Ontel Prods. Inc. v. Project Strategies Corp.</u>, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner.").

Abdullah – who is not an officer of AFG nor part of its management – had *any* role in any

alleged act of AFG.[13]

**E.      Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting"
         Are Insufficient To Establish Jurisdiction Over The AFG Defendants**

Plaintiffs' general and conclusory allegations that defendants "conspired" or

"aided and abetted" terrorism provide no basis for the exercise of personal jurisdiction.

(Complaint, "Introduction" and ¶¶ 11, 342, 431, 678-82, 684-88.)  "The cases are unanimous that

a bare allegation of a conspiracy between the defendant and a person within the jurisdiction of

the court is not enough.  Otherwise plaintiffs could drag defendants to remote forums for

protracted proceedings even though there were grave reasons for questioning whether the

defendant was actually suable in those forums."  Stauffacher v. Bennett, 969 F.2d 455, 460 (7th

Cir. 1992).  See also Lehigh Valley Indus. Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975)

("the bland assertion of conspiracy … is insufficient to establish [personal] jurisdiction").[14]  Such

a showing must be made by pleading facts, not legal conclusions.

"To establish jurisdiction on a [conspiracy theory], a plaintiff must clear two

hurdles: (1) it must make a *prima facie* factual showing of a conspiracy; and (2) it must allege

specific facts warranting the inference that the defendant was a member of the conspiracy."

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  See

---

[13]      Compare Family Internet, 1999 WL 796177, at *9 (no jurisdiction where individual did not set policy or make business decisions without prior approval of the company) with Bradley v. Staubach, No. 03 Civ. 4160, 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) (jurisdiction granted over individual defendant alleged to be key figure and primary contact in a real estate transaction, negotiated and approved contract, and authorized payment of deposit).

[14]      See also Bank Brussels Lambert, 171 F.3d at 793 (conclusory statements could not establish personal jurisdiction over defendant under common law conspiracy and aider and abettor theories); Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, J.) ("To be sure, the rule in this circuit is that the mere presence of one conspirator … does not confer jurisdiction over another alleged conspirator."); Second Amendment Found. v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("The allegation that the [defendants] conspired together represents nothing more than a legal conclusion which … does not constitute a prima face showing [of] personal jurisdiction.").

Grove Press Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction over an out-of-forum conspirator, a plaintiff must demonstrate that the in-forum actor acted "for the benefit, with the knowledge and consent of, and under some control by the [out-of-forum] principal").[15]  The complaint fails to make the necessary showing.  Plaintiffs' allegation that Prince Abdullah is "implicated" in money laundering "transactions" undertaken by Zouaydi and the Mushayt for Trading Establishment is nothing more than a shameful slur.  (Complaint, ¶ 376.)  Whatever "implicated" means, it does not demonstrate that Prince Abdullah entered into any agreement, much less an agreement to support terrorism in general or attacks on the United States in particular.  Moreover, there is no allegation that any of the AFG defendants controlled, directed, influenced, benefited from or participated in a common plan to commit a tort causing effects in the United States.[16]

Similarly, the conclusory allegation that the defendants aided and abetted terrorism cannot salvage plaintiffs' defective claim of personal jurisdiction.  (Complaint, "Introduction" and ¶¶ 342, 431, 684-88.)  Aiding and abetting "requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer … [and that] the defendant must know the wrongful nature of the primary wrongdoer's conduct."  Pittman by

---

[15]     See also First Capital Asset Mgmt., 218 F. Supp. 2d at 394 (to establish jurisdiction based on conspiracy, "plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor") (applying New York law); Simon v. Phillip Morris, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000) (to establish relationship between defendant and co-conspirators, plaintiff must show "that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request and on behalf of' the out-of-state defendant") (citation omitted); Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp. 215, 222 (S.D.N.Y. 1992) (in addition to making a prima facie showing of conspiracy, plaintiffs must "set forth evidentiary facts to connect the defendants with transactions occurring in the United States").

[16]     See Andre Emmerich Gallery, Inc. v. Segre, 96 Civ. 889, 1997 U.S. Dist. LEXIS 16899, at *17 (S.D.N.Y. Oct. 29, 1997) (prima facie showing of jurisdiction established where complaint alleged that out-of-forum conspirator knew that sales of art were made under false pretences and that such sales were being made in New York and would have had significant impact on the New York art market) (applying New York law).

<u>Pittman v. Grayson</u>, 149 F.3d. 111, 123 (2d Cir. 1998) (citation omitted) (applying New York Law).  Plaintiffs' complaint satisfies neither requirement.  At most, plaintiffs have alleged that a branch office of AFG at some time had a post office box that was also registered to someone who later became a terrorist; that Prince Abdullah once employed an accountant who, it turns out, has since been convicted of financing terrorist cells in Europe; and that Prince Abdullah is "implicated" in money laundering transactions, although it is not alleged he was aware of the nature or purpose of those transactions.  Not only do these acts fall short of "substantial assistance or encouragement," but plaintiffs do not allege that any act was undertaken by the AFG defendants with the *knowledge* that these individuals supported or engaged in terrorist activity aimed at the United States.

In sum, plaintiffs have alleged no facts satisfying the "the constitutional touchstone" that either of the AFG defendants "purposefully established 'minimum contacts' in the forum."  <u>Burger King</u>, 471 U.S. at 474 (quoting <u>Int'l Shoe</u>, 326 U.S. at 316).

## II

### THE COMPLAINT FAILS TO STATE
### <u>ANY CLAIM AGAINST THE AFG DEFENDANTS</u>

The complaint lists fifteen causes of action, nine of which sound in tort.[17]  To state viable tort claims, plaintiffs must prove that their injuries were proximately caused by some act of the defendant.  However, even accepting the allegations as true – which they are not – plaintiffs do not allege that any act of either of the AFG defendants was a "substantial factor" that "foreseeably" led to their injuries or even an act "but for" which the attacks of September 11

---

[17]     The tort claims are:  Torture Victim Protection Act, Antiterrorism Act, Alien Tort Claims Act, wrongful death, negligence, negligent and/or intentional infliction of emotional distress, and three counts of civil RICO.  The first and fifteenth counts, concerning the Foreign Sovereign Immunities Act, are not asserted against the AFG defendants.  The remaining counts fail to state a claim even as a matter of form: survival, conspiracy, aiding and abetting, and punitive damages.  (See pp. 23-24 below.)

would not have occurred.  Consequently, the complaint must be dismissed pursuant to Rule

12(b)(6).

Proximate cause is "a demand for some direct relation between the injury asserted

and the injurious conduct alleged."  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268

(1992).  As this Court has explained:

> Proximate causation is more than mere factual ("but for")
> causation.  The test of proximate causation is "whether the
> defendants acts 'are a substantial factor in the sequence of
> responsible causation' and whether 'the injury is reasonably
> foreseeable or anticipated as a consequence.'"

Garcia v. Spanish Broad. Sys. Inc., 92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490, at * 3 (S.D.N.Y.

May 17, 1993) (citing Standardbred Owners Ass'n v. Roosevelt Raceway Assoc., 985 F.2d 102,

104 (2d Cir. 1993) and Hecht v. Commerce Clearing House Inc., 897 F.2d 21, 23 (2d Cir.

1990)).  See also Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc., 191 F.3d 229,

235-36 (2d Cir. 1999) (holding that "proximate cause" encompasses several "independent"

elements requiring plaintiff to plead that "defendant's acts were a substantial cause of the injury,

and that plaintiff's injury was reasonably foreseeable, [as well as] alleging … a direct injury").[18]

Plaintiffs' allegations fail to satisfy any of the constituent formulations of

proximate cause.  Plaintiffs have not alleged – nor could they allege – that the post office box

was used in or related in any way to carrying out terrorist attacks.  Plaintiffs do not suggest that

Zouaydi's alleged employment as an accountant for Prince Abdullah was in any way related to

---

[18]    Plaintiffs' state law claims are subject to substantially the same test of proximate causation.  See
Maheshwari v. New York, No. 54, 2004 N.Y. LEXIS 978, at *9 (N.Y. May 6, 2004) ("To establish a prima facie
case of proximate cause, a plaintiff must show 'that the defendant's negligence was a substantial cause of the events
which produced the injury'.") (citation omitted); Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995) (Pennsylvania
law has long recognized that proximate cause requires that defendant's acts were a cause in fact and a "'substantial
factor in bringing about the harm inflicted on the plaintiff'") (citation omitted); Cohn v. Knowledge Connections,
Inc., 585 S.E.2d 578, 582 (Va. 2003) ("'The proximate cause of an event is that act or omission which, in natural
and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which the
event would not have occurred.'") (citation omitted); Interim Pers. Inc. v. Messer, 559 S.E.2d 704, 708 (Va. 2002)
(proximate cause requires "that the injury was the natural and probable consequence of the negligent or wrongful
act, and that the injury should have been foreseen in the light of the attending circumstances").

terrorism.  Nor does the complaint set forth Prince Abdullah's role in the transactions in which

he is supposedly "implicated."  In these circumstances, the defendants' actions cannot even be

considered a "but for" cause in fact of plaintiffs' injuries.  These impotent allegations do not fall

even near the ambit of proximate cause.  Accordingly, having failed to allege this essential

element of tort liability, the complaint must be dismissed.  See Lerner v. Fleet Bank N.A., 318

F.3d 113, 129-30 (2d Cir. 2003) (failure to assert the necessary proximate cause for a RICO

claim required the dismissal of the complaint under Rule 12(b)(6)).

      Plaintiffs also have not alleged the requisite legal causation.  Indeed, their sparse

allegations fall short of theories that have already been rejected by the courts.  First, plaintiffs'

allegations do not demonstrate that their injuries were the reasonably foreseeable, natural or

probable consequence of any act of either of the AFG defendants.  In the seminal case of Boim v.

Quranic Literacy Institute, 291 F.3d 1000 (7th Cir. 2002), the parents of a student murdered by

Hamas brought an action against organizations they alleged had raised donations and sent funds

to Hamas to support its terrorist campaigns.  In holding that funding *simpliciter* could not

constitute an act of "international terrorism" under the Antiterrorism Act, the court stated:

> [I]n order to recover, a plaintiff must be injured "by reason of" an
> act of international terrorism.  The Supreme Court has interpreted
> identical language to require a showing of proximate cause.
> Foreseeability is the cornerstone of proximate cause, and in tort
> law, a defendant will be held liable only for those injuries that
> might have reasonably been anticipated as a natural consequence
> of the defendant's actions.  In the circumstances of this case, the
> Boims cannot show that David Boim was injured "by reason of"
> the defendants' payments to Hamas in the traditional tort sense of
> causation *unless they can also show the murder was the reasonably
> foreseeable result of making the donation*.  … [T]he complaint
> cannot be sustained on the theory that the defendants … donated
> unspecified amounts of money to Hamas, *neither knowing nor
> suspecting* that Hamas would in turn financially support the
> persons who murdered David Boim.

Id. at 1011-12 (citations omitted, emphasis added).  Here, plaintiffs do not allege AFG even

knew, or had reason to know, the "registered" address of a terrorist.  Nor do they claim that

Prince Abdullah knew, or had reason to know, that Zouaydi financed terrorism or that the "transactions" in which he is supposedly implicated were undertaken to support terrorism.  In the absence of factual allegations that AFG or Prince Abdullah knew that their acts were even connected to terrorism, it cannot be maintained that those acts were a foreseeable or anticipated cause of plaintiffs' injuries.

Second, the attenuated facts attributed to the AFG defendants cannot constitute "substantial factors" in the chain of causation, nor establish any "direct relationship" between defendants' acts and plaintiffs' injuries.  Plaintiffs' meager allegations are highly attenuated in comparison to those that have been found sufficient to support liability for terrorism.  See, e.g., Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 265-66 (D.D.C. 2002) (Iran held liable for kidnapping and murder committed by Hizballah, a terrorist group Iran "directed, formed, organized and funded," where Iran supervised and approved the specific terrorist operation at issue).[19]  Moreover, plaintiffs' allegations even fall short of those held to be *insufficient* to support causation.  In Burnett II, Judge Robertson held that "plaintiffs' allegations that (i) [the defendants] funded (ii) those [charities] who funded (iii) those who carried out the September 11 attacks would stretch the causation requirement … not only to the farthest reaches of the common law but perhaps beyond, to terra incognita."  292 F. Supp. at 20 (applying the noncommercial tort exception to the Foreign Sovereign Immunities Act).  Similarly, in Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91 (D.D.C. 2002), the family of a couple murdered by

_____

[19]     See also Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 21-22 (D.D.C. 2002) (Iran, its intelligence service and three officials held liable for a pre-approved Hamas suicide bombing where "defendants not only provided the terrorists with the technical knowledge required to carry out the [specific attack], but also gave [Hamas] the funding necessary to do so"); Higgins v. Islamic Republic of Iran, No. 1 99-CV-00377, 2000 WL 33674311, at *5-7 (D.D.C. Sept. 21, 2000) (Iran and its intelligence service were liable for Hizballah's kidnapping and murder of a U.S. marine in Lebanon because plaintiffs' evidence showed that "Iran was responsible for the formation, funding, training, and management of Hizballah," and it "virtually directed the terms and conditions under which hostages [such as the marine] would be held or released").

Hamas brought an action alleging that Iran and its officials were liable for supporting Hamas'

terrorist activities.  The court held that, although the plaintiffs "established that Iran provided

extensive support to [Hamas], … their proof [did] not link that support to the Ungar murders

specifically."  211 F. Supp. 2d at 99 (refusing to enter default judgment against defendants).[20]

      These decisions illustrate that, in applying tort principles to terrorism-sponsorship

cases, courts have consistently required a direct and substantial link between the particular

terrorist attack and the defendant's conduct at issue.  Here, however, rather than establishing a

direct causal link, the complaint alleges nothing more than the most remote and fanciful

connections between the AFG defendants and those who planned or carried out terrorist attacks

in the United States.  These allegations are wholly inadequate to state a claim in tort.

      Plaintiffs' complaint cannot bridge the gap between the AFG defendants' acts and

the terrorist attacks simply by alleging, in a wholly conclusory fashion, that the defendants acts

were "a direct and proximate cause" of plaintiffs' injuries or that such injuries were "reasonably

foreseeable."  (Complaint, ¶¶ 11, 644, 649, 654, 659, 661-63, 667, 674-75, 680-81, 687, 698,

706, 714.)  Courts have consistently held that "conclusory allegations of the legal status of

defendant's acts need not be accepted as true for the purposes of ruling on a motion to dismiss."

In re Am. Express Co. S'holders Litig., 39 F.3d 395, 400, n. 3 (2d Cir. 1994).  See also First

Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("'Courts do not accept

conclusory allegations of the legal effect of the events plaintiff has set out if these allegations do

not reasonably follow from his description of what happened.'") (citation omitted); Citibank,

N.A. v. K-H Corp., 968 F.2d 1489, 1495-96 (2d Cir. 1992) (dismissing complaint for failing to

---

[20]    See also Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 122 (D.D.C. 2003) (individual member of Islamic Salvation Front was not liable for acts of terrorism committed by the organization, even though he was aware of and condoned the use of violence, because plaintiffs' conclusory statements "did not … prove that he assisted or directed armed Islamic groups in carrying out the particular acts which affected the plaintiffs").

allege facts in support of the conclusory allegation that plaintiff's loss was caused by defendant's wrongdoing).  Particularly in terrorism cases, "given the extreme nature of the charge," the Court should ensure that "no inferences are accepted that are unsupported by the facts set out in the [complaint]."  Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003) ("Burnett I").  But, as demonstrated above, plaintiffs here have not alleged a factual predicate permitting the conclusion that the defendants' acts were a proximate cause of their injuries.

Finally, plaintiffs cannot state a claim by making the naked allegation that the defendants "conspired" or "aided and abetted" terrorism.  (Complaint, "Introduction" and ¶¶ 11, 342, 431, 678-82, 684-88.)  These allegations are conclusory and must be discounted.  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("'A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'") (citation omitted).  Moreover, conspiracy and aiding and abetting are merely theories of liability, not causes of action in themselves.  See Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986) ("'a mere conspiracy to commit a [tort] is never of itself a cause of action'") (citation omitted);[21] Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 698 N.Y.S.2d 615, 621 (1999) (plaintiff's claim could not succeed on aiding and abetting theory without an independent tort to provide a basis for liability).[22]

---

[21]    See also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-06 (3d Cir. 2000) (conspiracy is not independently actionable but depends upon performance of an underlying tortious act) (interpreting Pennsylvania law); Commercial Bus. Sys. Inc. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997) ("without proof of the underlying tort there can be no conspiracy to commit the tort").

[22]    See also Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (an underlying tortious act is an essential element of aiding and abetting); Tysons Toyota, Inc. v. Commonwealth Life Ins., No. (Law) 94638, 1990 Va. Cir. LEXIS 229, at *3 (Va. Cir. Ct. Aug. 9, 1990) ("[T]here is no authority which would support an independent action for aiding and abetting.  Failed counts cannot be rescued from oblivion merely by adding a separate count which concludes that unspecified defendants aided and abetted unspecified conduct in some unspecified way at some unspecified time.  A defendant who aids and abets in the commission of a tort may be jointly liable for that tort, but he is not liable for a separate tort of aiding and abetting.").

Plaintiffs have failed to plead facts supporting either theory.  There is no allegation that any of the AFG defendants entered into any agreement to sponsor terrorism.  See United States v. Jimenez Recio, 537 U.S. 270, 274 (2003) ("the essence of conspiracy is 'an agreement to commit an unlawful act'") (citation omitted).[23]  Nor have plaintiffs made any showing that any of the AFG defendants provided "substantial assistance" to terrorists knowing that their assistance would be used to commit acts of terrorism.  See Lindsay v. Lockwood, 163 Misc.2d 228, 233, 625 N.Y.S.2d 393, 397 (Sup. Ct. Monroe County 1994) (requirements of aiding and abetting liability include "the defendant's awareness of a role as part of an overall illegal or tortious activity … [and] the defendant['s] knowing[] and substantial[] assist[ance in] the principal violation") (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983) (alteration in original).[24]  In these circumstances, plaintiffs' complaint must be dismissed.

---

[23]    See also Reo v. Shudt, 144 A.D.2d 793, 794, 534 N.Y.S.2d 553, 554 (3d Dep't 1988) ("Conspiracy is an agreement to commit an unlawful act, or an agreement to commit a lawful act by unlawful means….") (citation omitted); Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 174 (Pa. 1997) ("In order to state a cause of action for civil conspiracy, a plaintiff must show that 'two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means'.") (citation omitted); Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc., 453 S.E.2d 261, 267 (Va. 1995) ("A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.").

[24]    See RESTATEMENT (SECOND) OF TORTS, § 876 (aiding and abetting liability is founded on knowledge of the tort and the provision of substantial assistance); Koken, 825 A.2d at 732 (applying Restatement formulation); Priester v. Small, Nos. 26541, 26520, 2003 WL 21729900 (Va. Cir. Ct. Apr. 14, 2003) (requiring defendant's knowledge of the tort and the provision of substantial assistance).

# III

## PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE

In addition to plaintiffs' failure to allege proximate cause, independent grounds require the dismissal of a number of plaintiffs' causes of action.

## A.   RICO

Plaintiffs' complaint contains no allegations that could possibly sustain a civil RICO claim against the AFG defendants.  See 18 U.S.C.A. § 1962(a) (West 2004) (prohibiting the investment of "income derived … from a pattern of racketeering activity" in enterprises "affect[ing] interstate or foreign commerce"); § 1962(c) (prohibiting a person from "conduct[ing] or participat[ing]" in enterprises "affect[ing] interstate or foreign commerce" through "a pattern of racketeering activity"): § 1962(d) (conspiracy).  Moreover, plaintiffs' injuries do not constitute an injury to "business or property" as required by 18 U.S.C.A. § 1964(c).  See Burnett I, 274 F. Supp. 2d at 100-02 (no recovery under civil RICO for personal injuries or economic loss arising therefrom) (and cases cited therein).  The RICO claim must be dismissed.

## B.   Torture Victim Protection Act

Plaintiffs have failed to state a claim under the Torture Victim Protection Act ("TVPA").  The TVPA proscribes *state* conduct.  Private individuals and entities are only liable for action taken "under [the] actual or apparent authority, or color, of the law of any foreign nation."  See Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir. 1995) (citing TVPA); Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 21-23 (D.D.C. 2000), aff'd, 35 Fed. Appx. 1 (D.C. Cir. 2002) (dismissing TVPA claim because corporate defendant was not alleged to be a state actor or *de facto* state actor).  No 'state action' is alleged against the AFG defendants.

## C.    Negligence

The complaint also fails to allege that the AFG defendants acted *knowingly* to support terrorism.  This is fatal to plaintiffs' negligence-based claims.  See Burnett I, 274 F. Supp. 2d at 108 (dismissing plaintiffs' claims for negligence and negligent infliction of emotional distress because the complaint "neither allege[d] nor identifie[d] a duty [where the defendant] had no knowledge that the funds it was disbursing were making their way into the coffers of al Qaeda").  In these circumstances, plaintiffs have failed to allege that the AFG defendants owed them a duty of care.

## D.    Non-Claim Counts

Several of plaintiffs' "counts" do not allege causes of action even as a matter of form.  Plaintiffs' "survival" action is not an independent cause of action – it is a procedural device by which a deceased's estate may pursue the deceased's causes of action.[25]  Similarly, as demonstrated above, plaintiffs' counts of "conspiracy" and "aiding and abetting" are not causes of action but merely theories of liability which are wholly dependent upon the proof of an underlying tort.[26]  Finally, plaintiffs' count for "punitive damages" also fails to allege a cause of action.  Punitive damages are a form of relief and as such are dependent upon pleading and proving an underlying tort.[27]

---

[25]    See N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 2004); Doe v. State, 588 N.Y.S.2d 698, 709 (N.Y. Ct. Cl. 1992), aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993); 42 PA. CONS. STAT. ANN. § 8302 (West 2004); Tulewicz v. S.E. Pa. Transp. Auth., 606 A.2d 427, 431 (Pa. 1992).  Virginia's survival statute differs from New York's and Pennsylvania's by transforming any survival cause of action into a wrongful death claim.  VA. CODE. ANN. § 8.01-25 (West 2004); El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 491 (4th Cir. 1986).

[26]    See pp. 20-21 above for New York, Pennsylvania and Virginia authorities.  Moreover, RICO does not permit recovery for aiding and abetting.  See, e.g., DeFalco v. Bernas, 244 F.3d 286, 330 (2d Cir. 2001).  Nor have courts in this circuit determined whether the Antiterrorism Act permits recovery under an aiding and abetting theory.  Cf. Boim, 291 F.3d at 1016-21.

[27]    See Rocanova v. Equitable Life Assur. Soc'y of U.S., 83 N.Y.2d 603, 616, 612 N.Y.S.2d 339, 344 (1994); Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989); Foreign Mission Bd. of S. Baptist Convention v. Wade, 409 S.E.2d 144, 148 (Va. 1991).

## <u>Conclusion</u>

The complaint against His Royal Highness Prince Abdullah Al Faisal Bin

Abdulaziz Al Saud and Alfaisaliah Group (a/k/a Faisal Group Holding Co.) should be dismissed

with prejudice.

Dated: New York, New York
      July 29, 2004

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP

By:_____/s/_____
   T. Barry Kingham (TBK-1219)
   Daria M. Ciaputa (DC-0490)
   Jesse Clarke (JC-4410)
   101 Park Avenue
   New York, New York  10178
   (212) 696-6000

Attorneys for
*HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud and*
*Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*

**E**XHIBIT **A**

366.    As the head of DMI, Prince Mohammed knew or should have known of these and other activities and acted as an aider and abettor and material sponsor of al Qaeda, Osama bin Laden, and international terrorism.

367.    Prince Abdullah al Faisal was born in 1923 and is the son of former King Faisal. His brothers include Defendant Turki al Faisal al Saud and Defendant Mohammed al Faisal al Saud.

368.    Prince Abdullah al Faisal, a former official of the Saudi Ministry of Interior, was Minister of Health between 1949 and 1950. He is Chairman of the Arabian Establishment for Trade and Shipping Ltd, Qassim Cement Company and owner of Alfaisaliah Group. He is also Chairman of the board of trustees of the King Faisal Foundation.

369.    Alfaisaliah Group (a/k/a Al Faisal Group Holding Co.) (or "AFG") is based in Riyadh, Saudi Arabia.  Its main shareholder is Prince Abdullah al Faisal. Its Chairman is Mohammed Abdullah al Faisal, Prince Abdullah al Faisal's son.

370.    Alfaisaliah Group was reorganized in 2001 with Prince Abdullah al Faisal holding 97.5% of the shares, and businessman Mohammed bin Abdulrahman al Ariefy, President, owning 2.5 percent of the shares. The company at that time changed its name to al Faisal Group Holding Co., a successor in interest to Alfaisaliah Group.

371.    Founded in 1970, the Alfaisaliah Group is a large commercial conglomerates with 3,000 employees and thirteen subsidiaries involved in five business sectors (Food & Beverages, Petrochemicals & Plastics, Entertainment & Multimedia, Consumer Electronics, and High Tech & Information Technology).  Alfaisaliah Group is the representative agent in Saudi Arabia of several international companies, including Sony, Hewlett Packard, MegaStar, Columbia Tristar, 20th Century Fox, Motorola, Toshiba and Danone.   Its main subsidiaries include Modern

Electronic Establishment, Modern Petrochemicals Establishment, Al Safi Diary Establishment, Al Faisalia Agricultural Establishment, Al Faisalia Real Estate Establishment and Al Faisalia Computer & Communication Services Establishment.  Alfaisaliah Group maintains branches in Jeddah, Al Khobar, Khamis Mushait, Madinah, Qassim, Arar and Tabuk.

372.     According to FBI records, September 11, 2001, hijacker Hani Saleh H. Hanjour (a/k/a Hani Saleh Hanjour, Hani Saleh, Hani Hanjour) is a Saudi national from the city of Taif, Saudi Arabia.  Hanour was one of the hijackers on American Airlines flight 77 that crashed into the Pentagon on September 11, 2001.  His brother Abdulrahman Saleh Hanjour harboured him in Tucson, Arizona, in the months preceding the September 11, 2001 attacks.

373.     The two Hanjour brothers and another al Qaeda suspect in the attacks, Abdal Monem Zelitny, had a registered address in Taif, Saudi Arabia, under the name of Alfaisaliah, P.O. Box 1717, Taif, Saudi Arabia.  The name and address are the branch office of Alfaisaliah Group in Taif, a subsidiary of the Riyadh based holding company.  As detailed above, Alfaisaliah is owned and controlled by Prince Abdullah al Faisal, son of King Faisal, and for whom, terrorist financier Zouaydi was worked as an accountant in Jeddah, Saudi Arabia.

374.     One of Prince Abdullah al Faisal's accountants in Jeddah, Saudi Arabia was Defendant Muhammed Galeb Kalaje Zouaydi, (a/k/a Abu Talha) (or "Zouaydi") convicted in Spain for financing al Qaeda operations in Europe.  Zouaydi set up Spanish companies established during the time he was staying in Saudi Arabia and working for Prince Abdullah al Faisal, between 1996 and 2000.  Zouaydi laundered Saudi money through Spain to an al Qaeda cell in Germany.

375.     Evidence from eye witnesses indicates that Zouaydi was present in offices of Prince Abdullah al Faisal in Jeddah.  Zouaydi was also recognized in the offices of Dr. Bakhsh

317

Hospital with its Chairman, Abdul Rahman Taha Bakhsh, brother of businessman Abdullah Taha Bakhsh, former director of Zakat and Income Tax at the Saudi Ministry of Finance.  Both brothers are members of the board of Trading Engineering & Contracting Corp.  (Traco), based in Jeddah, Saudi Arabia.

376.    Evidence recovered by the Spanish authorities shows that Muhammed Galeb Kalaje Zouaydi, a Syrian born businessman, along with several associates in Spain and Europe, funneled money from the Saudi-based company, Mushayt for Trading Establishment (or "Mushayt"), through Spanish corporations to entities and individuals known to be associated with the al Qaeda terrorist organization in Europe.  Prince Abdullah al Faisal is implicated in these financial transactions of material support to al Qaeda, as is Prince Turki.  When this and other evidence has been fully analyzed, additional parties or persons may be implicated.

377.    According to Spanish authorities, Mushayt received funds and donations from other companies and individuals in Saudi Arabia that were funneled to al Qaeda through Spain. This fraudulent scheme provided material, financial support to the Global Relief Foundation in Spain, to Abdul Fattah Zammar and Mamoun Darkazanli in Germany, who maintained the bank accounts of hijacker Mohamed Atta and other members of the Hamburg al Qaeda cell.  These co-conspirators (Zammar and Darkazanli) are awaiting trial in Germany on charges of providing financial and logistical support to the organization of the September 11, 2001 attacks.

378.    Ghasoub Al Abrash Ghalyoun (a/k/a Abu Musab), an associate of Zouaydi's in Spain, was observed filming future targets of al Qaeda in the United States.  In his videotapes, Spanish authorities found pictures of the World Trade Center taken on August 9, 1997.

379.    Prince Naif is the Chairman of the Saudi Arabian Committee for Support of the Intifada al Quds.  According to documents captured by the Government of Israel in the

318