T. Barry Kingham (TBK-1219)
Daria M. Ciaputa (DC-0490)
Jesse Clarke (JC-4410)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for*
*HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud,*
*Mohammed Bin Abdulrahman Al Ariefy*
*and Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— )
IN RE: TERRORIST ATTACKS ON          )          03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                          )          ECF Case
———————————————————————— )
**This document relates to: *Federal Insurance Company***
***v. Al Qaida, 03 CIV 6978 (RCC)***


**MEMORANDUM OF LAW OF HIS ROYAL HIGHNESS
PRINCE ABDULLAH AL FAISAL BIN ABDULAZIZ AL SAUD,
MOHAMMED BIN ABDULRAHMAN AL ARIEFY AND ALFAISALIAH
GROUP (A/K/A FAISAL GROUP HOLDING CO.) IN SUPPORT OF
THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# Table Of Contents

Page #

Table Of Authorities ..................................................................................................... iii

Introduction .................................................................................................................... 1

The AFG Defendants ...................................................................................................... 1

The Non-Complaint Against Mohammed Al Ariefy .................................................... 2

Plaintiffs' Misidentification Of Prince Abdullah .......................................................... 2

Summary Of Allegations ............................................................................................... 3

Argument ....................................................................................................................... 4

I   THIS COURT LACKS PERSONAL JURISDICTION
    OVER THE AFG DEFENDANTS ......................................................................... 4

    A.   Plaintiffs Have Not Alleged Any Facts Supporting
         The Exercise Of Personal Jurisdiction ........................................................ 4

    B.   Plaintiffs Have Not Alleged That Any Of The AFG Defendants
         Has Any Contacts With The United States .................................................. 5

         1.   Prince Abdullah Has No Contacts With The United States................. 6

         2.   AFG Has No Contacts With The United States.................................... 6

    C.   Plaintiffs Have Not Alleged That Any Of The AFG Defendants
         "Purposefully Directed" Any Act Toward The United States ...................... 7

         1.   The Only Act Alleged As To AFG Was
              Not Connected To The United States .................................................. 8

         2.   Prince Abdullah Did Not Purposefully Direct
              Any Act Toward the United States ...................................................... 9

              (i)     Jurisdiction Over Prince Abdullah Cannot Be Based
                      On The Acts Of Defendants Zouaydi
                      Or Mushayt For Trading ........................................................ 9

              (ii)    Allegations Of Prince Abdullah's Contributions
                      To Charities Are Insufficient
                      To Establish Specific Jurisdiction ...................................... 10

              (iii)   Jurisdiction Cannot Be Established
                      By Aggregating Defendants' Contacts .................................. 12

    D.   Prince Abdullah's Controlling Interest In AFG Does Not
         Subject Him To The Jurisdiction Of This Court ........................................ 12

    E.   Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting"
         Are Insufficient To Establish Jurisdiction Over The AFG Defendants ................. 13

II  THE COMPLAINT FAILS TO STATE ANY COGNIZABLE
    TORT CLAIM AGAINST THE AFG DEFENDANTS ......................................... 15

    A.   The Only Act Alleged As To AFG Was Not A
         Factual Or Legal Cause Of Plaintiffs' Injuries ........................................ 17

    B.   Prince Abdullah's Alleged Acts Were Not
         A Proximate Cause Of Plaintiffs' Injuries ................................................ 17

     C.    Plaintiffs Conclusory Allegations Do Not
          Adequately Plead Proximate Cause .................................................................. 20

III  PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE ..................................... 22

    A.    RICO .......................................................................................................... 22

    B.    Torture Victim Protection Act ................................................................ 22

    C.    Assault, Battery And Negligence ........................................................... 23

    D.    Non-Claim Counts .................................................................................. 23

Conclusion .......................................................................................................................... 25

# Table Of Authorities

Page #

## Cases

Alexander & Alexander, Inc. v. Fritzen,
 68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) ............................................................ 20

Am. Fuel Corp. v. Utah Energy Dev. Co.,
 122 F.3d 130 (2d Cir. 1997) ............................................................................... 13

ATSI Communications Inc. v. Shaar Fund Ltd.,
 No. 02 Civ. 8726, 2004 WL 9091773 .................................................................. 5

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
 902 F.2d 194 (2d Cir. 1990) ............................................................................... 4

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
 171 F.3d 779 (2d Cir. 1999) ........................................................................... 4, 14

Bao Ge v. Li Peng,
 201 F. Supp. 2d 14 (D.D.C. 2000),
 aff'd, 35 Fed. Appx. 1 (D.C. Cir. 2002) ............................................................. 22

Bellepointe Inc. v. Kohl's Dep't Stores Inc.,
 975 F. Supp. 562 (S.D.N.Y 1997) ........................................................................ 5

Bersch v. Drexel Firestone Inc.,
 519 F.2d 974 (2d Cir. 1975) ............................................................................... 11

Boim v. Quranic Literacy Inst.,
 291 F.3d 1000 (7th Cir. 2002) ...................................................................... 19, 23

Boyanowski v. Capital Area Intermediate Unit,
 215 F.3d 396 (3d Cir. 2000) ............................................................................... 21

Burger King Corp. v. Rudzewicz,
 471 U.S. 462 (1985) ........................................................................... 7, 9, 10, 11

Burnett v. Al Baraka Inv. & Dev. Corp.,
 274 F. Supp. 2d 86 (D.D.C. 2003) ......................................................... 20, 22, 23

Burnett v. Al Baraka Inv. & Dev. Corp.,
 292 F. Supp. 2d 9 (D.D.C. 2003) ......................................................... 6, 8, 11, 19

Calder v. Jones,
 465 U.S. 783 (1984) ....................................................................................... 9, 12

Chrysler Capital Corp. v. Century Power Corp.,
 778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................................... 14

Cohn v. Knowledge Connections, Inc.,
 585 S.E.2d 578 (Va. 2003) ................................................................................ 16

Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc.,
 453 S.E.2d 261 (Va. 1995) ................................................................................ 21

Commercial Bus. Sys. Inc. v. Halifax Corp.,
 484 S.E.2d 892 (Va. 1997) ................................................................................ 21

Dardana Ltd. v. A.O. Yugskneftegaz,
 317 F.3d 202 (2d Cir. 2003) ............................................................................... 6

iii

De Jesus v. Sears, Roebuck & Co.,
  87 F.3d 65 (2d Cir. 1996) .................................................................................. 20

DeFalco v. Bernas,
  244 F.3d 286 (2d Cir. 2001) .............................................................................. 23

Doe v. Islamic Salvation Front,
  257 F. Supp. 2d 115 (D.D.C. 2003) .................................................................. 18

Doe v. State,
  588 N.Y.S.2d 698 (N.Y. Ct. Cl. 1992),
  aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993) ........................................................ 23

El-Meswari v. Wash. Gas Light Co.,
  785 F.2d 483 (4th Cir. 1986) ............................................................................ 23

Family Internet Inc. v. Cybernex Inc.,
  No. 98 Civ. 0637, 1999 WL 796177 (S.D.N.Y. Oct.6, 1999) .......................... 13

First Capital Asset Mgmt. Inc. v. Brickellbush, Inc.,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002) ................................................................ 6

First Nationwide Bank v. Gelt Funding Corp.,
  27 F.3d 763 (2d Cir. 1994) ................................................................................ 11

Foreign Mission Bd. of S. Baptist Convention v. Wade,
  409 S.E.2d 144 (Va. 1991) ................................................................................ 24

Garcia v. Spanish Broad. Sys. Inc.,
  92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490 (S.D.N.Y. May 17, 1993) ............ 16

Girden v. Sandals Int'l,
  262 F.3d 195 (2d Cir. 2001) .............................................................................. 23

Grove Press Inc. v. Angleton,
  649 F.2d 121 (2d Cir. 1981) .............................................................................. 14

Grow Group Inc. v. Jandernoa,
  No. 94 Civ. 5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) .......................... 12

Halberstam v. Welch,
  705 F.2d 472 (D.C. Cir. 1983) .......................................................................... 22

Hanson v. Denckla,
  357 U.S. 235 (1958) ........................................................................................... 10

Helicopteros Nacionales de Colombia S.A. v. Hall,
  466 U.S. 408 (1984) ............................................................................. 5, 6, 8, 10

Hecht v. Commerce Clearing House Inc.,
  897 F.2d 21 (2d Cir. 1990) ................................................................................ 16

Higgins v. Islamic Republic of Iran,
  No. 1 99-CV-00377, 2000 WL 33674311 (D.D.C. Sept. 21, 2000) .................. 18

Holmes v. Sec. Investor Prot. Corp.,
  503 U.S. 258 (1992) ........................................................................................... 15

In re Am. Express Co. S'holders Litig.,
  39 F.3d 395 (2d Cir. 1994) ................................................................................ 20

In re Kreta Shipping S.A.,
  No. 96 Civ. 1137, 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998) .......................... 7

iv

In re Magnetic Audiotape Antitrust Litig.
  334 F.3d 204 (2d Cir. 2003) ............................................................................ 11

Interim Pers. of Cent. Va. Inc. v. Messer,
  559 S.E.2d 704 (Va. 2002) ............................................................................. 16

Int'l Shoe Co. v. Washington,
  326 U.S. 310 (1945)......................................................................................... 5

Jazini v. Nissan Motor Co.,
  148 F.3d 181 (2d Cir. 1998) ....................................................................... 5, 13

Kadic v. Karadzic,
  70 F.3d 232 (2d Cir. 1995) ............................................................................ 22

Karabu Corp. v. Gitner,
  16 F. Supp. 2d 319 (S.D.N.Y. 1998) ............................................................. 13

Keeton v. Hustler Magazine Inc.,
  465 U.S. 770 (1984)........................................................................... 8, 9, 11, 12

Kirkbride v. Lisbon Contractors, Inc.,
  555 A.2d 800 (Pa. 1989).................................................................................. 24

Koken v. Steinberg,
  825 A.2d 723 (Pa. Commw. Ct. 2003) ...................................................... 21, 22

Kulko v. California Superior Court,
  436 U.S. 84 (1978).......................................................................................... 10

Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.,
  191 F.3d 229 (2d Cir. 1999) ........................................................................... 16

Lamar v. Am. Basketball Ass'n,
  468 F. Supp. 1198 (S.D.N.Y. 1979) ............................................................... 13

Leasco Data Processing Equip. Corp. v. Maxwell,
  468 F.2d 1326 (2d Cir. 1972) ......................................................................... 14

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
  507 U.S. 163 (1993)........................................................................................... 4

Lehigh Valley Indus. Inc. v. Birenbaum,
  527 F.2d 87 (2d Cir. 1975) ............................................................................. 14

Lerner v. Fleet Bank N.A.,
  318 F.3d 113 (2d Cir. 2003) ........................................................................... 16

Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys. Inc.,
  10 F. Supp. 2d 334 (S.D.N.Y. 1998) ............................................................... 6

Libutti v. United States,
  178 F.3d 114 (2d Cir. 1999) ............................................................................. 9

Lindsay v. Lockwood,
  163 Misc.2d 228, 625 N.Y.S.2d 393 (Sup. Ct. Monroe County 1994) ................. 21

Maheshwari v. New York,
  No. 54, 2004 N.Y. LEXIS 978 (N.Y. May 6, 2004)........................................ 16

McGee v. Int'l Life Ins. Co.,
  355 U.S. 220 (1957).......................................................................................... 10

Meadowbrook-Richman, Inc. v. Associated Fin. Corp.,
253 F. Supp. 2d 666 (S.D.N.Y. 2003) ............................................................. 13

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
84 F.3d 560 (2d Cir. 1996) ............................................................................ 7

Ontel Prods. Inc. v. Project Strategies Corp.,
899 F. Supp. 1144 (S.D.N.Y. 1995) ............................................................. 13

Pittman by Pittman v. Grayson,
149 F.3d. 111 (2d Cir. 1998) ........................................................................ 14

Powell v. Drumheller,
653 A.2d 619 (Pa. 1995)............................................................................... 16

Priester v. Small,
Nos. 26541, 26520, 2003 WL 21729900 (Va. Cir. Ct. Apr. 14, 2003) ................... 22

Reo v. Shudt,
144 A.D.2d 793, 534 N.Y.S.2d 553 (3d Dep't 1988)............................................ 21

Rocanova v. Equitable Life Assur. Soc'y of U.S.,
83 N.Y.2d 603 (N.Y. 1994) ........................................................................... 24

Rush v. Savchuck,
444 U.S. 320 (1980)...................................................................................... 12

S.E.C. v Unifund SAL,
910 F.2d 1028 (2d. Cir 1990) ....................................................................... 11

Second Amendment Found. v. United States Conference of Mayors,
274 F.3d 521 (D.C. Cir. 2001)....................................................................... 14

Shaffer v. Heitner,
433 U.S. 186 (1977)................................................................................. 8, 12

Skipworth v. Lead Indus. Ass'n,
690 A.2d 169 (Pa. 1997) ............................................................................... 21

Small v. Lorillard Tobacco Co.,
94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ....................................................... 21

Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.,
985 F.2d 102 (2d Cir. 1993) ......................................................................... 16

Stauffacher v. Bennett,
969 F.2d 455 (7th Cir. 1992) ........................................................................ 14

Surette v. Islamic Republic of Iran,
231 F. Supp. 2d 260 (D.D.C. 2002)............................................................... 17

Tulewicz v. S.E. Pa. Transp. Auth.,
606 A.2d 427 (Pa. 1992) ............................................................................... 23

Tysons Toyota, Inc. v. Commonwealth Life Ins.,
No. (Law) 94638, 1990 Va. Cir. LEXIS 229 (Va. Cir. Ct. Aug. 9, 1990)............... 21

Ungar v. Islamic Republic of Iran,
211 F. Supp. 2d 91 (D.D.C. 2002) ................................................................ 18

United States v. Jimenez Recio,
537 U.S. 270 (2003)...................................................................................... 21

<u>Weinstein v. Islamic Republic of Iran,</u>
    184 F. Supp. 2d 13 (D.D.C. 2002) ............................................................. 18

<u>Whitaker v. Am. Telecasting Inc.,</u>
    261 F.3d 196 (2d Cir. 2001) ...................................................................... 5

**Statutes and Rules**

18 U.S.C.A. § 1962(a) (West 2004) ............................................................... 22

18 U.S.C.A. § 1964(c) (West 2004) ............................................................... 22

42 Pa. Cons. Stat. Ann. § 8302 (West 2004) ................................................ 23

Alien Tort Claims Act, 28 U.S.C.A. § 1350 (West 2004) ............................. 15

Antiterrorism Act, 18 U.S.C.A. §§ 2331, 2333 (West 2004) ................... 15, 19

Fed. R. Civ. P. 12(b)(2) ................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 15

Fed. R. Civ. P. 4(k)(2) .................................................................................. 6

N.Y. Est. Powers & Trusts Law § 11-3.2(b) (McKinney 2004) .................. 23

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) ................... 22

Va. Code. Ann. § 8.01-25 (West 2004) ......................................................... 23

**Other Authorities**

Restatement (Second) of Torts, § 876 ......................................................... 22

## Introduction

Defendants His Royal Highness Prince Abdullah Al Faisal Bin Abdulaziz Al Saud ("Prince Abdullah"), Mohammed Bin Abdulrahman Al Ariefy ("Mohammed Al Ariefy"), and Alfaisaliah Group (a/k/a Faisal Group Holding Co.) ("AFG") (collectively referred to as "the AFG defendants") respectfully move to dismiss plaintiffs' First Amended Complaint ("complaint") originally filed in <u>Federal Insurance Co. v. Al Qaida</u>, 03 CIV 6978 (RCC).[1]  The complaint must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), because:  (1) none of the AFG defendants is subject to the personal jurisdiction of this Court; and (2) plaintiffs have failed to state any claim entitling them to relief against any of the AFG defendants.

Plaintiff-subrogees seek to recoup insurance payments made in the wake of the terrorist attacks of September 11, 2001.  In their complaint, plaintiffs have irresponsibly named as defendants AFG and its owners, Prince Abdullah and Mohammed Al Ariefy, none of whom had any connection to those events.  The complaint does not allege any such connection.  Nor does it allege that any of the AFG defendants has ever had any contact with the United States. The complaint must be dismissed.

## The AFG Defendants

Alfaisaliah Group is a substantial Saudi Arabian commercial enterprise headquartered in Riyadh, with branches throughout Saudi Arabia.  It has more than 3,000 employees and it operates, among other businesses, the largest integrated dairy farm in the world.  Alfaisaliah Group also acts as the representative in Saudi Arabia of a number of major

---

[1]  The AFG defendants have submitted three separate Memoranda of Law in support of their motions to dismiss the complaints filed in the <u>Ashton</u>, <u>Burnett</u> and <u>Federal Insurance</u> actions.  Although much of the text is identical, the filing of separate  Memoranda was necessary for two reasons.  First, Mohammed Al Ariefy is named as a defendant in the <u>Ashton</u> and <u>Federal Insurance</u> complaints but not the <u>Burnett</u> complaint.  Second, although the allegations contained in all three complaints overlap significantly, two of the complaints make some additional and different allegations.  This difference is most apparent in the <u>Federal Insurance</u> complaint because plaintiffs have confused defendant Prince Abdullah with the Crown Prince of Saudi Arabia who is not a defendant in any of the consolidated actions.

foreign enterprises, such as Sony, Hewlett-Packard, MegaStar, Columbia TriStar, 20th Century Fox, Motorola, Toshiba and Danone.

His Royal Highness Prince Abdullah Al Faisal Bin Abdulaziz Al Saud is 81 years old.  He is the eldest son of the late King Faisal.  Prince Abdullah is a 97.5% owner of Alfaisaliah Group.  Although he was a government official in 1949-1950, Prince Abdullah has not since been involved officially in the government of Saudi Arabia.  More particularly, he is *not* Crown Prince Abdullah Bin Abdulaziz Al Saud, identified by plaintiffs as the "de facto" ruler of Saudi Arabia following the stroke that afflicted King Fahd in 1999.

Mohammed Al Ariefy is a Saudi Arabian businessman who owns 2.5% of Alfaisaliah Group and is its president.  He is listed as a defendant in the caption of this action but no allegation is made against him in the complaint.

### The Non-Complaint Against Mohammed Al Ariefy

As noted above, the complaint makes no allegation whatsoever as to Mohammed Al Ariefy.  Accordingly, it must be dismissed as to him with prejudice and we will not refer to him again in this motion.

### Plaintiffs' Misidentification Of Prince Abdullah

Plaintiffs have misidentified "Prince Abdullah al Faisal" as "the de facto ruler of Saudi Arabia."  (Complaint, ¶ 465.)  Plaintiffs have confused defendant Prince Abdullah *Al Faisal* Bin Abdulaziz Al Saud, who is the majority shareholder of AFG, with Crown Prince Abdullah Bin Abdulaziz Al Saud, who is First Deputy Prime Minister of Saudi Arabia and is not a defendant.[2]  Therefore, the Court should disregard allegations about acts the defendant Prince Abdullah supposedly took "in his capacity as de-facto head of the Kingdom of Saudi Arabia"

---

[2]      See Exhibit A to this memorandum, the CIA's list of Chiefs of State and Cabinet Members of Foreign Governments which properly identifies the Crown Prince of Saudi Arabia (http://www.odci.gov/cia/publications/chiefs/chiefs154.html).

(Complaint, ¶ 466),[3] because Prince Abdullah is not and has never been the Crown Prince or "the de facto ruler of Saudi Arabia."

## Summary Of Allegations

Of the more than 600 paragraphs in the complaint, only a handful of allegations relate directly to the AFG defendants.[4]  And plaintiffs' confusion about the identity of Prince Abdullah casts doubt on the accuracy of all the allegations leveled at him.  Ignoring the allegations that clearly do not relate to the defendant Prince Abdullah, the remaining pertinent allegations can be summarized as follows:

- Prince Abdullah has "significant business interests, including a controlling stake in [AFG]."  (Complaint, ¶ 465.)

- "[AFG] is the representative agent in Saudi Arabia of several international companies."  (Complaint, ¶ 465.)

- At unspecified times, Prince Abdullah made "significant personal contributions to Saudi-based charities … [knowing] and intend[ing] that the contributions … would be used to fund al Qaida's global operations and acts of international terrorism."  (Complaint, ¶¶ 467, 468.)[5]

- "[S]ubstantial evidence" [not otherwise described] suggests that Prince Abdullah "engaged in transactions with Mushayt for Trading establishment, the funding mechanism for the Spanish al Qaida cell."  (Complaint, ¶ 470.)

- Prince Abdullah's accountant of "many years" was "Muhammed Galeb Klaje Zouaydi."  Zouaydi "founded the network of companies which served as a vehicle for financing al Qaida's activities in Europe."  "During the period of time that Mushayt for Trading was laundering money for the Spanish cell, Prince Abdullah and Zouaydi maintained a business partnership."  (Complaint, ¶ 470.)

---

[3]    Complaint, ¶¶ 466, 471 falsely allege:  "*In his capacity as de-facto head of the Kingdom of Saudi Arabia*, Prince Abdullah has consistently appointed al Qaida supporters and collaborators to head the charities controlled by the Kingdom.  Prince Abdullah has done so in order to ensure that the charities would continue to serve as vehicles for sponsoring and sustaining terrorist organizations, including al Qaida."; and that "[t]hrough his *official* and personal acts, as described herein, Prince Abdullah has provided critical financial and logistical support to al Qaida for a period of many years." (Emphasis added.)

[4]    For convenience, the pages containing the paragraphs which relate to the AFG defendants have been attached as Exhibit B.

[5]    It is not clear whether these allegations are meant to refer to defendant Prince Abdullah or to the Crown Prince, who is not a defendant.

- One of the September 11 hijackers "maintained a registered address" which "corresponds with the branch office of al Faisaliah Group in Taif." This "establishes a direct link between Prince Abdullah's business concerns and one of the September 11th hijackers." (Complaint, ¶ 469.)

These allegations, except for background information, are utterly false. Specifically, the AFG defendants would establish without question that no AFG branch office ever had a post office address that corresponded to the address listed in the complaint; Zouaydi was not an "account of many years" for Prince Abdullah; he never worked for nor with Prince Abdullah; Prince Abdullah did not do business with Mushayt for Trading establishment; and none of the AFG defendants supported international terrorism or had any connection to al Qaida.

However, the AFG defendants recognize that well-pleaded allegations which properly identify them will be considered as true by the Court solely for the purpose of deciding this motion to dismiss. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (for the purposes of a motion to dismiss, the court must accepted as true all well pleaded factual allegations in the complaint). Here, the allegations are wholly insufficient to support the exercise of personal jurisdiction over the AFG defendants in the United States or any theory that could possibly establish their liability.

## Argument

## I

## THIS COURT LACKS
## PERSONAL JURISDICTION OVER THE AFG DEFENDANTS

### A.    Plaintiffs Have Not Alleged Any Facts Supporting The Exercise Of Personal Jurisdiction

Plaintiffs bear the burden of establishing that this Court has personal jurisdiction over Prince Abdullah, Mohammed Al Ariefy and AFG. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). To meet this burden, plaintiffs must plead, in good faith, facts that are legally sufficient to support personal jurisdiction. Ball v.

4

<u>Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).  That is, plaintiffs must

make "a 'prima facie showing'."  <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 184 (2d Cir. 1998)

(citations omitted).  <u>See</u> <u>also</u> <u>Whitaker v. Am. Telecasting Inc.</u>, 261 F.3d 196, 208 (2d Cir.

2001).  Hence, plaintiffs "must plead facts which, if true, are sufficient in themselves to establish

jurisdiction."  <u>Bellepointe Inc. v. Kohl's Dep't Stores Inc.</u>, 975 F. Supp. 562, 564 (S.D.N.Y

1997).

  Plaintiffs have not come close to meeting their burden.  Due process demands that

a foreign defendant must not be subject to jurisdiction unless he has "certain minimum contacts

with [the forum] such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice."  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).  Under

the "minimum contacts" analysis mandated by <u>International Shoe</u> and its progeny, a plaintiff

may establish jurisdiction over a defendant on a theory of general or specific personal

jurisdiction.[6]  Here, plaintiffs' allegations fail to support either theory.  They have not alleged

*any* fact that would subject any of the AFG defendants to the personal jurisdiction of this Court.

The complaint fails to identify any of the "continuous and systematic" contacts required for

general jurisdiction, or any factual allegation that the AFG defendants "purposefully directed"

any act towards the United States that could support specific jurisdiction.

**B.** **Plaintiffs Have Not Alleged That Any Of The AFG Defendants**
  <u>**Has Any Contacts With The United States**</u>

  "To establish general jurisdiction, the plaintiff must show that the defendant has

'continuous and systematic' contacts with the forum."  <u>ATSI Communications Inc. v. Shaar</u>

---

[6] As Judge Kaplan recently explained:  "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'  By comparison, a court's general jurisdiction 'is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'"  <u>ATSI Communications Inc. v. Shaar Fund Ltd.</u>, No. 02 Civ. 8726, 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004) (quoting <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 414-16 & nn. 8-9 (1984)).

Fund Ltd., No. 02 Civ. 8726 (LAK), 2004 WL 9091773, at *2 (S.D.N.Y. Apr. 28, 2004) (quoting

Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 416 (1984)).  If general

jurisdiction is established, a court will be permitted to exercise its power over a foreign

defendant even if the cause of action alleged against him does not arise from or relate to those

contacts.  See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

However, plaintiffs' allegations simply do not evidence "continuous and systematic" contacts of

any of the AFG defendants with the United States.[7]

### 1.   Prince Abdullah Has No Contacts With The United States

Prince Abdullah is a resident national of Saudi Arabia with respect to whom

plaintiffs have made no discernible allegation of any contact that could possibly support the

exercise of general personal jurisdiction.  Plaintiffs do not allege that Prince Abdullah conducts

business or other activities in the United States, owns property or holds a bank account in the

United States, or has ever visited the United States.[8]  The claims against him must be dismissed.

### 2.   AFG Has No Contacts With The United States

Plaintiffs' complaint alleges nothing about the nature of AFG's business.  AFG, a

large Saudi Arabian corporation, is not alleged to conduct or solicit business in the United States,

---

[7]       The AFG defendants recognize that the Court will scrutinize the complaint for allegations of the AFG
defendants' contacts with the United States as a whole, rather than only their contacts with New York.  See FED. R.
CIV. P. 4(k)(2); Dardana Ltd. v. A.O. Yugansknef+egaz, 317 F.3d 202, 207 (2d Cir. 2003) ("Under [Fed. R. Civ. P.
4(k)(2)], a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United
States as a whole … so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth
Amendment.").  Moreover, because plaintiffs' allegations fail to show that the AFG defendants have minimum
contacts with the United States as a whole, they necessarily fail to meet the requirements of the New York long-arm
statute.  See Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys. Inc., 10 F. Supp. 2d 334, 339 (S.D.N.Y.
1998) (New York long-arm statute does not extend jurisdiction to the full extent permitted by constitutional due
process) (and cases cited therein).
[8]       Even these traditional contacts may be insufficient to establish general jurisdiction over an individual
defendant.  See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Burnett II")
("Plaintiffs have made a desultory effort to sustain their burden of showing that Prince Sultan's visits to the United
States … would support the assertion of personal jurisdiction over him."); First Capital Asset Mgmt. Inc. v.
Brickellbush, Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (no personal jurisdiction over Swiss defendant despite
plaintiffs' allegations that she owned real estate, maintained a bank account, and had previously engaged in business
transactions in New York) (applying New York law).

own property or hold a bank account in the United States, send employees to the United States,
or supply goods or services to entities or individuals in the United States. See Metro. Life Ins.,
84 F.3d at 573 (general jurisdiction established over out-of-forum corporation that solicited
business in the forum and sold its products through forum dealers to customers in the forum). In
the absence of such facts, plaintiffs cannot establish that AFG has the requisite substantial,
continuous and systematic connections with the United States.

Plaintiffs likewise cannot establish general jurisdiction over AFG by alleging that
it is "the representative agent in Saudi Arabia of several international companies." (Complaint,
¶ 465.) Indeed, even if plaintiffs had alleged that one of these "international companies" was
incorporated and did business in the United States, and that AFG was its agent in Saudi Arabia,
that would not subject AFG to personal jurisdiction here. As has been consistently held, "[w]hile
the acts of the agent may be attributed to the principal for jurisdictional purposes, the converse is
not true; a principal's conduct may not supply the jurisdictional basis for the agent." In re Kreta
Shipping S.A., No. 96 Civ. 1137, 1998 WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998) (granting
ship agent's motion to dismiss claims of cargo owners for lack of personal jurisdiction describing
claimant's agency theory as "frivolous").

**C.**      **Plaintiffs Have Not Alleged That Any Of The AFG Defendants
        "Purposefully Directed" Any Act Toward The United States**

In the absence of continuous and substantial contacts giving rise to general
personal jurisdiction, plaintiffs must allege that each of the AFG defendants had minimum
contacts with the United States that satisfy the due process requirements of specific personal
jurisdiction. Specific jurisdiction will be established over a foreign defendant "if the defendant
has 'purposefully directed' his activities at the residents of the forum and the litigation results
from alleged injuries which 'arise out of or relate to' those activities." Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Magazine Inc., 465 U.S. 770,

774 (1984) and Helicopteros, 466 U.S. at 414).  Only in these circumstances will a defendant

have "fair warning that a particular activity may subject [him] to the jurisdiction of a foreign

sovereign."  Shaffer v. Heitner, 433 U.S. 186, 218 (1977).

However, it is clear from the dearth of direct factual allegations in the complaint

that none of the AFG defendants played any role in sponsoring or carrying out the terrorist

attacks for which plaintiffs seek redress.  In fact, plaintiffs' theory of specific jurisdiction has

already been rejected by Judge Robertson in the related Burnett case.  See Burnett v. Al Baraka

Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Burnett II") (rejecting plaintiffs'

argument that "anyone whose actions have led to terrorist activity in the United States should

reasonably anticipate that he might be subject to suit here whether or not he himself has targeted

the United States" and holding that the complaint "stop[ed] well short of alleging that

[defendant's] actions were 'expressly aimed' or 'purposefully directed' at the United States").[9]

1.     **The Only Act Alleged As To AFG
       Was Not Connected To The United States**

Plaintiffs' complaint makes only a single allegation against AFG:  that one of the

hijackers, at some unspecified time, supposedly "maintained a registered address in Taif, Saudi

Arabia, under the name of al Faisaliah [which allegedly] corresponds with the branch office of al

Faisaliah Group in Taif."  (Complaint, ¶ 469.)  *That is plaintiffs' only claim as to AFG.*  Even

assuming this allegation were true – which it is not – it cannot possibly meet the due process

requirements of specific personal jurisdiction, the very purpose of which is to "ensure[] that a

defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or

---

[9]     The AFG defendants join in the argument made by other defendants that this decision constitutes law of the case and is owed substantial deference.  There is no reason for this sound opinion to be reconsidered.

attenuated contacts, or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475 (internal quotation marks omitted).

Plaintiffs do not claim that AFG consented to the alleged use of its post office box as a "registered address" by others; nor do they allege that AFG knew that anyone who might have had such an address was involved in terrorist activity.[10] See Calder v. Jones, 465 U.S. 783, 789 (1984) (defendants' acts were "expressly aimed" at the forum because defendants *knew* the subject of their defamatory article would have potentially suffered injury in the forum where she resided).[11] Nor is AFG alleged to have undertaken any act outside Saudi Arabia, or to have *intended* to affect residents of the United States in any way. See Libutti v. United States, 178 F.3d 114, 123 (2d Cir. 1999) (out-of-forum company did not purposefully direct its activities at the forum because its activities were external to the forum and it did not intend to inflict harm on or commercially affect residents of the forum).

### 2. Prince Abdullah Did Not Purposefully Direct Any Act Toward the United States

Plaintiffs' complaint does not allege that Prince Abdullah actually *did* anything to connect himself to the attacks of September 11. Indeed, the complaint's three posited "connections" between Prince Abdullah and international terrorism rely upon the acts of others and cannot constitute acts *he* "purposefully directed" toward to the United States.

### (i) Jurisdiction Over Prince Abdullah Cannot Be Based On The Acts Of Defendants Zouaydi Or Mushayt For Trading

Plaintiffs cannot draw Prince Abdullah into the Court's jurisdiction by alleging contacts that are dependent upon the unilateral acts of others. The Supreme Court has

---

[10]     As noted above, AFG denies it shared any post office box in Taif and can prove it through official records of the Saudi postal service.

[11]     See also Keeton, 465 U.S. at 774 (specific jurisdiction established over defendant publisher because the monthly circulation of millions of magazines was purposefully directed at the forum and inevitably affected persons in the forum).

consistently rejected such arbitrary and unilateral contacts. See Helicopteros, 466 U.S. at 416-17

(no jurisdiction over foreign defendant by reason of defendant's acceptance of checks which

plaintiffs had drawn on a U.S. bank); Kulko v. California Superior Court, 436 U.S. 84, 98 (1978)

(no jurisdiction over divorced husband whose only contact with the forum was created by his

former spouse's decision to move there); Hanson v. Denckla, 357 U.S. 235, 253 (1958) (no

jurisdiction over trustee where only connection with the forum resulted from plaintiff settlor's

decision to exercise her power of appointment there).

       Jurisdiction is proper only "where the contacts proximately result from action by

the defendant *himself* that create a 'substantial connection' with the forum State." Burger King,

471 U.S. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)) (emphasis in

original).  However, plaintiffs do not allege that Prince Abdullah was aware that Zouaydi was

involved in financing terrorism.  Nor do they allege that Prince Abdullah knew that Mushayt for

Trading was involved in financing terrorism or that such was the purpose of the transactions.

Indeed, despite their claim to have "substantial evidence," the most plaintiffs offer is a

suggestion that Prince Abdullah engaged in some unspecified transactions.  (Complaint, ¶ 470.)

That suggestion does not establish a personal contact between Prince Abdullah and the United

States sufficient to establish jurisdiction over him.

    **(ii)**    **Allegations Of Prince Abdullah's Contributions To**
                 **Charities Are Insufficient To Establish Specific Jurisdiction**

       Plaintiffs have attempted to short-circuit the vast distance between Prince

Abdullah and al Qaida's terrorist acts by pleading, in a wholly conclusory fashion, that Prince

Abdullah "*knew and intended* that the contributions he made to [certain Saudi-based charities]

would be used to fund al Qaida's global operations and acts of international terrorism."

(Complaint, ¶ 468, emphasis added.)  This baseless and reprehensible allegation should not be

10

credited by the Court in absence of a factual predicate warranting such an inference.  See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("'Courts do not accept conclusory allegations of the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'") (citation omitted).

But even if it were true that Prince Abdullah knowingly donated money at unspecified times and in unspecified amounts to charities supporting terrorism, it would not follow that he had "purposefully directed" his acts towards the United States.  Judge Robertson reached this exact conclusion when granting defendant Prince Sultan's motion to dismiss in Burnett II.  Prince Sultan was alleged to have "personally donated money to [charitable foundations] knowing that those foundations funded terrorist organizations including Al Qaeda." 292 F. Supp. 2d at 22-23.  However, the court held that those allegations "stop[ed] well short of alleging that Prince Sultan's actions were 'expressly aimed' or 'purposefully directed' at the United States" and rejected plaintiffs' argument that "anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself has targeted the United States."  Id. (quoting Burger King, 471 U.S. at 472 and Keeton, 454 U.S. at 774-75).  The same result is required here.

Judge Robertson's sound opinion is consistent with Supreme Court and Second Circuit precedent.  It is not enough for plaintiffs to demonstrate, even if they could, that Prince Abdullah's acts caused foreseeable injuries or effects in the United States.[12]  Jurisdiction can only be asserted properly over Prince Abdullah if he was a "primary participant in the intentional wrong-doing" and engaged in conduct "expressly directed" at the United States.  In re Magnetic

_____

[12]      "[E]ven assuming that [the foreign defendant's] acts had some causal relation to the alleged injuries [suffered by] Americans or United States citizens, … the test for in personam jurisdiction is somewhat more demanding." Bersch v. Drexel Firestone Inc. 519 F.2d 974, 1000 (2d Cir. 1975) (Friendly, J.) (requiring that injury in the United States be the direct and foreseeable result of the conduct outside the territory).  See also S.E.C. v Unifund SAL, 910 F.2d 1028, 1033 (2d. Cir 1990).

Audiotape Antitrust Litig. 334 F.3d 204, 208 (2d Cir. 2003) (citing Calder, 465 U.S. at 789-90).

No such allegation is made here.

> ### (iii)   Jurisdiction Cannot Be Established
> ### By Aggregating Defendants' Contacts

Plaintiffs cannot exercise jurisdiction over Prince Abdullah by tarring him with a

generalized, conclusory and factually unsubstantiated theory that "members of the Saudi Royal

Family knew and intended [to provide] funding and support … to al Qaida … to attack U.S.

interests."  (Complaint, ¶ 402.)[13]  The Court must disregard such allegations which

impermissibly aggregate only a general group of defendants.  See Keeton, 465 U.S. at 781 n.13

("Each defendant's contacts with the forum State must be assessed individually."); Rush v.

Savchuck, 444 U.S. 320, 331-32 (1980) ("considering the 'defending parties' together and

aggregating their forum contacts … is plainly unconstitutional"); Grow Group Inc. v. Jandernoa,

No. 94 Civ. 5679, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (allegations referring to

"Officers & Directors Group" could not establish personal jurisdiction over individual

defendants to whom no separate and specific acts were ascribed).

**D.      Prince Abdullah's Controlling Interest In AFG Does
        Not Subject Him To The Jurisdiction Of This Court**

Prince Abdullah cannot be subject to personal jurisdiction merely because he is

alleged to have "a controlling stake" in AFG.  (Complaint, ¶ 465.)  Shareholders have a separate

legal personality from their company and their minimum contacts must be assessed

independently.  See Calder, 465 U.S. at 790 (minimum contacts "must be met as to each

defendant over whom a … court exercises jurisdiction").  See also Shaffer, 433 U.S. at 217

(Powell, J., concurring) (defendants' "positions as directors and officers of a Delaware

---

[13]      See also Complaint, ¶¶ 376, 387, 398-400, 426, 483 (containing allegations against "wealthy donors," "Saudi … companies," "members of the Saudi Royal Family," "prominent members of Saudi society," "[s]everal members of Saudi Arabia's Royal Family," "business leaders" and "generous benefactors").

corporation can[not] provide sufficient contact to support the Delaware court's assertion of jurisdiction").  Consequently, a "[foreign defendant's] status as the controlling shareholder in a … corporation [subject to jurisdiction in the forum] does not, without more, subject him individually to personal jurisdiction."  Lamar v. Am. Basketball Ass'n, 468 F. Supp. 1198, 1203 (S.D.N.Y. 1979) (applying New York law).  See Ontel Prods. Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner.").

Plaintiffs have not alleged that AFG is the mere alter ego or agent of Prince Abdullah.  Nor could there be an allegation that 81 year-old Prince Abdullah – who is not an officer of AFG or part of its management – controlled, directed or participated in any alleged act of AFG.[14]  Therefore, the corporate acts of AFG cannot provide any basis for establishing personal jurisdiction over Prince Abdullah.

**E.  Plaintiffs' General Allegations Of "Conspiracy" And "Aiding And Abetting" Are Insufficient To Establish Jurisdiction Over The AFG Defendants**

Plaintiffs' general and conclusory allegations that defendants "conspired" or "aided and abetted" terrorism provide no basis for the exercise of personal jurisdiction. (Complaint, ¶¶ 66, 72, 73, 624-26, 631-33.)  See Jazini, 148 F.3d at 185 (court not bound to accept legal conclusion couched as factual allegation).  "The cases are unanimous that a bare

---

[14]     See Meadowbrook-Richman, Inc. v. Associated Fin. Corp., 253 F. Supp. 2d 666, 678 (S.D.N.Y. 2003) (to establish jurisdiction over a company owner by piercing the corporate veil, plaintiffs must show that the owner "exercised complete domination" over the company and that such domination was used to commit the wrong that injured the plaintiff) (citing Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)) (applying New York law); Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (to establish jurisdiction over out-of-state defendant officer of a corporation on an agency theory, plaintiff's allegations must "sufficiently detail the defendant's conduct so as to persuade a court that defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation.") (applying New York law); Family Internet Inc. v. Cybernex Inc., No. 98 Civ. 0637, 1999 WL 796177, at *9 (S.D.N.Y. Oct.6, 1999) (no jurisdiction where individual did not set policy or make business decisions without prior approval of the company).

allegation of a conspiracy between the defendant and a person within the jurisdiction of the court

is not enough.  Otherwise plaintiffs could drag defendants to remote forums for protracted

proceedings even though there were grave reasons for questioning whether the defendant was

actually suable in those forums."  Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992).  See

Lehigh Valley Indus. Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("the bland assertion

of conspiracy … is insufficient to establish [personal] jurisdiction").[15]  Such a showing must be

made by pleading facts, not legal conclusions.

   "To establish jurisdiction on a [conspiracy theory], a plaintiff must clear two

hurdles: (1) it must make a *prima facie* factual showing of a conspiracy; and (2) it must allege

specific facts warranting the inference that the defendant was a member of the conspiracy."

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  See

Grove Press Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction over an

out-of-forum conspirator, a plaintiff must demonstrate that the in-forum actor acted "for the

benefit, with the knowledge and consent of, and under some control by the [out-of-forum]

principal").  No such facts are pleaded here.

   Similarly, the conclusory allegation that the defendants aided and abetted

terrorism cannot salvage plaintiffs' defective claim of personal jurisdiction.  (Complaint, ¶¶ 66,

631-633.)  Aiding and abetting "requires that the defendant have given 'substantial assistance or

encouragement' to the primary wrongdoer … [and that] the defendant must know the wrongful

nature of the primary wrongdoer's conduct."  Pittman by Pittman v. Grayson, 149 F.3d 111, 123

---

[15] See also Bank Brussels Lambert, 171 F.3d at 793 (conclusory statements could not establish personal
jurisdiction over defendant under common law conspiracy and aider and abettor theories); Leasco Data Processing
Equip. Corp. v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, J.) ("To be sure, the rule in this circuit is
that the mere presence of one conspirator … does not confer jurisdiction over another alleged conspirator."); Second
Amendment Found. v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("The allegation
that the [defendants] conspired together represents nothing more than a legal conclusion which … does not
constitute a prima face showing [of] personal jurisdiction.").

(2d Cir. 1998) (citation omitted) (applying New York Law).  Plaintiffs' complaint satisfies

neither requirement.  Therefore, the Court should lend no weight to plaintiffs' allegation that

Prince Abdullah "aided and abetted, conspired with and provided material support and resources

to, defendant al Qaida and/or [foreign terrorist organizations,] associations or persons *as

described herein*…."  (Complaint, ¶ 66) (emphasis added).  No such conduct is described.

## II

### THE COMPLAINT FAILS TO STATE ANY
### <u>COGNIZABLE TORT CLAIM AGAINST THE AFG DEFENDANTS</u>

The complaint lists twelve causes of action, eight of which sound in tort.[16]  To

state viable tort claims, plaintiff-subrogees must prove that the injuries of their insureds were

proximately caused by some act of the defendant.  However, even accepting the allegations as

true – which they are not – plaintiffs do not allege that any act of any of the AFG defendants was

a "substantial factor" that "foreseeably" led to the insureds' injuries or even an act "but for"

which the attacks of September 11 would not have occurred.  Consequently, the complaint must

be dismissed pursuant to Rule 12(b)(6).

Proximate cause is "a demand for some direct relation between the injury asserted

and the injurious conduct alleged."  <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268

(1992).  As this Court has explained:

> Proximate causation is more than mere factual ("but for")
> causation.  The test of proximate causation is "whether the
> defendants acts 'are a substantial factor in the sequence of
> responsible causation' and whether 'the injury is reasonably
> foreseeable or anticipated as a consequence.'"

---

[16]    The tort claims are:  trespass, wrongful death, assault and battery, intentional and/or negligent infliction of emotional distress, Alien Tort Claims Act/Torture Victim Protection Act, civil RICO, Antiterrorism Act, and negligence.  The remaining counts fail to state a claim even as a matter of form: survival action, conspiracy, aiding and abetting, and punitive damages.  (See pp. 22-24 below.)

Garcia v. Spanish Broad. Sys. Inc., 92 Civ. 7964, 1993 U.S. Dist. LEXIS 6490, at * 3 (S.D.N.Y. May 17, 1993) (citing Standardbred Owners Ass'n v. Roosevelt Raceway Assoc., 985 F.2d 102, 104 (2d Cir. 1993) and Hecht v. Commerce Clearing House Inc., 897 F.2d 21, 23 (2d Cir. 1990)).  See also Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (holding that "proximate cause" encompasses several "independent" elements requiring plaintiff to plead that "defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable, [as well as] alleging … a direct injury").[17]

        Plaintiffs' allegations fail to satisfy any of the constituent formulations of proximate cause.  Plaintiffs have not alleged that any of the AFG defendants had prior knowledge of any terrorist attack, nor that they were personally involved in the planning or carrying out of terrorist operations.  Instead, the complaint merely proffers attenuated and remote 'links' between the AFG defendants and international terrorism, wraps them in conclusory language, and asks this Court to shut its eyes to the effects of the conduct of an unknown number of variously motivated individuals which indisputably lie between the acts of the AFG defendants and the terrorist attacks of September 11.  But despite this effort, the fact remains that plaintiffs' impotent allegations do not fall anywhere near the ambit of proximate cause.  Accordingly, having failed to allege this essential element of tort liability, the complaint must be dismissed.  See Lerner v. Fleet Bank N.A., 318 F.3d 113, 129-30 (2d Cir. 2003) (failure to assert

---

[17]        Plaintiffs' state law claims are subject to substantially the same test of proximate causation.  See Maheshwari v. New York, No. 54, 2004 N.Y. LEXIS 978, at *9 (N.Y. May 6, 2004) ("To establish a prima facie case of proximate cause, a plaintiff must show 'that the defendant's negligence was a substantial cause of the events which produced the injury'.") (citation omitted); Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995) (Pennsylvania law has long recognized that proximate cause requires that defendant's acts were a cause in fact and a "'substantial factor in bringing about the harm inflicted on the plaintiff'") (citation omitted); Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 582 (Va. 2003) ("'The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which the event would not have occurred.'") (citation omitted); Interim Pers. Inc. v. Messer, 559 S.E.2d 704, 708 (Va. 2002) (proximate cause requires "that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury should have been foreseen in the light of the attending circumstances").

the necessary proximate cause for a RICO claim required the dismissal of the complaint under Rule 12(b)(6)).

**A.    The Only Act Alleged As To AFG Was Not A
Factual Or Legal Cause Of Plaintiffs' Injuries**

Plaintiffs' sole allegation with respect to AFG is that one of the hijackers had a registered address which corresponds with the post office box of the branch office of AFG in Taif.  With this single allegation, plaintiffs contend that they established a "direct link" between AFG and the September 11 hijackings sufficient to hold AFG liable for mass murder. (Complaint, ¶ 469.)  This contention is specious and shameful.  Plaintiffs have not alleged – nor could they allege – that the post office box was used in any way for planning, preparing or carrying out any terrorist attack.  In these circumstances, the defendants' actions cannot even be considered a "but for" cause in fact of the insureds' injuries, much less a foreseeable or proximate cause.

**B.    Prince Abdullah's Alleged Acts Were Not A
Proximate Cause Of Plaintiffs' Injuries**

Plaintiffs have not alleged the requisite legal causation with respect to Prince Abdullah.  First, Prince Abdullah is alleged to have "engaged in transactions" with a company, and employed an accountant, who were later found to be involved in financing terrorism. Second, Prince Abdullah is alleged to have made contributions to charities, in unspecified amounts and at unspecified times, supposedly knowing that funding would somehow make its way to al Qaida.  Both of these posited 'chains of causation' fall woefully short of the mark.

First, the acts attributed to Prince Abdullah cannot constitute "substantial factors" in the chain of causation, nor establish any "direct relationship" to plaintiffs' injuries.  Plaintiffs' meager allegations are highly attenuated in comparison to those that have been found sufficient to support liability for terrorism.  See, e.g., Surette v. Islamic Republic of Iran, 231 F. Supp. 2d

17

260, 265-66 (D.D.C. 2002) (Iran liable for kidnapping and murder committed by Hizballah, a

terrorist group Iran "directed, formed, organized and funded," where Iran supervised and

approved the specific terrorist operation at issue).[18]

   The allegations against Prince Abdullah are even more remote and insubstantial

than facts held elsewhere to be insufficient to support causation.  In Ungar v. Islamic Republic of

Iran, 211 F. Supp. 2d 91 (D.D.C. 2002) the family of a couple murdered by Hamas brought an

action against Iran and its officials for supporting Hamas' terrorist activities.  However,

declining to grant a default judgment because "the acts of the defendants were not a necessary

condition or 'but for' cause of the Ungars' deaths," the court stated:

> [P]laintiffs have established that Iran provided extensive support to
> HAMAS, but their proof does not link that support to the Ungar
> murders specifically.  The men who killed [the Ungars] received
> funding and weapons from other sources as well as HAMAS, [and]
> they were not in contact with HAMAS for several months
> spanning the date of the Ungar murders….

Id. at 98-99.[19]  In contrast, Prince Abdullah is not alleged to have provided any funds or

resources directly to terrorists, nor to have planned, controlled or directed their activities.  Nor is

it alleged that Prince Abdullah was aware that anyone he employed or did business with was

involved in financing terrorism.  Even his contributions to charities are not alleged to have been

made to fund a particular terrorist attack of which he had prior knowledge.  Given these

---

[18] See also Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 21-22 (D.D.C. 2002) (Iran, its
intelligence service and three officials held liable for a pre-approved Hamas suicide bombing where "defendants not
only provided the terrorists with the technical knowledge required to carry out the [specific attack], but also gave
[Hamas] the funding necessary to do so"); Higgins v. Islamic Republic of Iran, No. 1 99-CV-00377, 2000 WL
33674311, at *5-7 (D.D.C. Sept. 21, 2000) (Iran and its intelligence service were liable for Hizballah's kidnapping
and murder of a U.S. marine in Lebanon because plaintiffs' evidence showed that "Iran was responsible for the
formation, funding, training, and management of Hizballah," and it "virtually directed the terms and conditions
under which hostages [such as the marine] would be held or released").

[19] See also Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 122 (D.D.C. 2003) (individual member of
Islamic Salvation Front was not liable for acts of terrorism committed by the organization, even though he was
aware of and condoned the use of violence, because plaintiffs' conclusory statements "did not … prove that he
assisted or directed armed Islamic groups in carrying out the particular acts which affected the plaintiffs").

deficiencies, plaintiffs have plainly failed to allege a substantial or direct link between Prince

Abdullah's acts and the injuries caused by the terrorist attacks of September 11.

   Second, plaintiffs' allegations do not demonstrate that the insureds' injuries were

a reasonably foreseeable, natural or probable consequence of any act of Prince Abdullah.  In the

seminal case of <u>Boim v. Quranic Literacy Institute</u>, 291 F.3d 1000 (7th Cir. 2002) the parents of

a student murdered by Hamas brought an action against organizations they alleged had raised

donations and sent funds to Hamas to support its terrorist campaigns.  In holding that funding

*simpliciter* could not constitute an act of "international terrorism" under the Antiterrorism Act,

the court stated:

> In the circumstances of this case, the Boims cannot show that
> David Boim was injured "by reason of" the defendants' payments
> to Hamas in the traditional tort sense of causation *unless they can
> also show the murder was the reasonably foreseeable result of
> making the donation*.  …  [T]he complaint cannot be sustained on
> the theory that the defendants … donated unspecified amounts of
> money to Hamas, *neither knowing nor suspecting* that Hamas
> would in turn financially support the persons who murdered David
> Boim.

<u>Id.</u> at 1012 (emphasis added).  The court followed similar reasoning in <u>Burnett II</u> where

defendant Prince Sultan was alleged to have "personally donated money to [charitable

foundations] knowing that those foundations funded terrorist organizations including Al Qaeda."

292 F. Supp. 2d at 22-23.  In applying the noncommercial tort exception of the Foreign

Sovereign Immunities Act, Judge Robertson held that, "plaintiffs' allegations that (i) … Prince

Sultan funded (ii) those who funded (iii) those who carried out the September 11 attacks would

stretch the causation requirement … not only to the farthest reaches of the common law but

perhaps beyond, to terra incognita."  <u>Id.</u> at 20.  In light of this authority, it cannot be maintained

that the insureds' injuries were the foreseeable or natural consequence of the alleged acts of

Prince Abdullah.

**C.**   **Plaintiffs Conclusory Allegations Do Not Adequately Plead Proximate Cause**

Plaintiffs' complaint cannot bridge the gap between the AFG defendants' acts and the terrorist attacks simply by alleging, in a wholly conclusory fashion, that "the damages suffered by plaintiffs … were the direct and proximate result of" the defendants actions. (Complaint, ¶ 603; see also ¶¶ 72, 397, 425, 469, 617, 626, 629, 633 and 643 for similarly conclusory allegations.)  Courts have consistently held that "conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purposes of ruling on a motion to dismiss."  In re Am. Express Co. S'holders Litig., 39 F.3d 395, 400, n.3 (2d Cir. 1994). Particularly in terrorism cases, "given the extreme nature of the charge," the Court should ensure that "no inferences are accepted that are unsupported by the facts set out in the [complaint]." Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003) ("Burnett I"). But, as demonstrated above, plaintiffs here have not alleged a factual predicate permitting the conclusion that the defendants' acts were a proximate cause of the insureds' injuries.

Similarly, plaintiffs cannot state a claim by making the naked allegation that the defendants "conspired" or "aided and abetted" terrorists.  (Complaint, ¶¶ 66, 72, 73, 624-26, 631-33.)  These allegations are conclusory and must be discounted.  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("'A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'") (citation omitted).  Moreover, conspiracy and aiding and abetting are merely theories of liability, not causes of action in themselves.  See Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986) ("'a mere conspiracy to commit a [tort] is never of itself a

cause of action'") (citation omitted);[20] Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 698

N.Y.S.2d 615, 621 (1999) (plaintiff's claim could not succeed on aiding and abetting theory

without an independent tort to provide a basis for liability).[21]

       Plaintiffs have failed to plead facts supporting either theory.  There is no

allegation that any of the AFG defendants entered into any agreement to sponsor terrorism.  See

United States v. Jimenez Recio, 537 U.S. 270, 274 (2003) ("the essence of conspiracy is 'an

agreement to commit an unlawful act'") (citations omitted).[22]  Nor have plaintiffs made any

showing that any of the AFG defendants had prior knowledge of the September 11 attacks or

provided "substantial assistance" directly to terrorists.  See Lindsay v. Lockwood, 163 Misc.2d

228, 233, 625 N.Y.S.2d 393, 397 (Sup. Ct. Monroe County 1994) (requirements of aiding and

abetting liability include "the defendant's awareness of a role 'as part of an overall illegal or

tortious activity … [and] the defendant['s] knowing[] and substantial[] assist[ance in] the

---

[20]    See also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-06 (3d Cir. 2000) (conspiracy is not independently actionable but depends upon performance of an underlying tortious act) (interpreting Pennsylvania law); Commercial Bus. Sys. Inc. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997) ("without proof of the underlying tort there can be no conspiracy to commit the tort").

[21]    See also Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (an underlying tortious act is an essential element of aiding and abetting); Tysons Toyota, Inc. v. Commonwealth Life Ins., No. (Law) 94638, 1990 Va. Cir. LEXIS 229, at *3 (Va. Cir. Ct. Aug. 9, 1990) ("[T]here is no authority which would support an independent action for aiding and abetting.  Failed counts cannot be rescued from oblivion merely by adding a separate count which concludes that unspecified defendants aided and abetted unspecified conduct in some unspecified way at some unspecified time.  A defendant who aids and abets in the commission of a tort may be jointly liable for that tort, but he is not liable for a separate tort of aiding and abetting.").

[22]    See also Reo v. Shudt, 144 A.D.2d 793, 794, 534 N.Y.S.2d 553, 554 (3d Dep't 1988) ("Conspiracy is an agreement to commit an unlawful act, or an agreement to commit a lawful act by unlawful means….") (citation omitted); Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 174 (Pa. 1997) ("In order to state a cause of action for civil conspiracy, a plaintiff must show that 'two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means'.") (citation omitted); Commercial Bus. Sys. Inc. v. Bellsouth Servs. Inc., 453 S.E.2d 261, 267 (Va. 1995) ("A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.").

principal violation'") (quoting <u>Halberstam v. Welch</u>, 705 F.2d 472, 477 (D.C. Cir. 1983) (alteration in original).[23]  In these circumstances, plaintiffs' complaint must be dismissed.

**III**

**PLAINTIFFS' OTHER CLAIMS ARE NOT COGNIZABLE**

In addition to plaintiffs' failure to allege proximate cause, independent grounds require the dismissal of a number of plaintiffs' causes of action.

**A.      RICO**

Plaintiffs' complaint contains no allegations that could possibly sustain a civil RICO claim against the AFG defendants.  <u>See</u> 18 U.S.C.A. § 1962(a) (West 2004) (prohibiting the investment of "income derived … from a pattern of racketeering activity" in enterprises "affect[ing] interstate or foreign commerce").  Moreover, plaintiffs' injuries do not constitute an injury to "business or property" as required by 18 U.S.C.A. § 1964(c) (West 2004).  <u>See</u> <u>Burnett I</u>, 274 F. Supp. 2d at 100-02 (no recovery under civil RICO for personal injuries or economic loss arising therefrom) (and cases cited therein).  The RICO claim must be dismissed.

**B.      Torture Victim Protection Act**

Plaintiffs have failed to state a claim under the Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) ("TVPA").  The TVPA proscribes *state* conduct. Private individuals and entities are only liable for action taken "under [the] actual or apparent authority, or color, of the law of any foreign nation."  <u>See</u> <u>Kadic v. Karadzic</u>, 70 F.3d 232, 245 (2d Cir. 1995) (citing TVPA); <u>Bao Ge v. Li Peng</u>, 201 F. Supp. 2d 14, 21-23 (D.D.C. 2000), <u>aff'd</u>, 35 Fed. Appx. 1 (D.C. Cir. 2002) (dismissing TVPA claim because corporate defendant

---

[23]      <u>See</u> RESTATEMENT (SECOND) OF TORTS, § 876 (aiding and abetting liability is founded on knowledge of the tort and the provision of substantial assistance); <u>Koken</u>, 825 A.2d at 732 (applying Restatement formulation); <u>Priester v. Small</u>, Nos. 26541, 26520, 2003 WL 21729900 (Va. Cir. Ct. Apr. 14, 2003) (requiring defendant's knowledge of the tort and the provision of substantial assistance).

was not alleged to be a state actor or *de facto* state actor).  No 'state action' is alleged against the AFG defendants.

## C.      Assault, Battery And Negligence

The complaint also fails to allege, other than in an impermissibly conclusory fashion, that the AFG defendants acted *knowingly* to support terrorism or with the *intent* to cause the insureds' injuries.  This is fatal to plaintiffs' assault and battery and negligence-based claims. See, e.g., Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (defendant must have intended plaintiff to fear or suffer harmful contact to be liable for assault or battery); Burnett I, 274 F. Supp. 2d at 108 (dismissing plaintiffs' claims for negligence and negligent infliction of emotional distress because the complaint "neither allege[d] nor identifie[d] a duty [where the defendant] had no knowledge that the funds it was disbursing were making their way into the coffers of al Qaeda").

## D.      Non-Claim Counts

Several of plaintiffs' "counts" do not allege causes of action even as a matter of form.  Plaintiffs' "survival action" is not an independent cause of action – it is a procedural device by which a deceased's estate may pursue the deceased's causes of action.[24]  Similarly, as demonstrated above, plaintiffs' counts of "conspiracy" and "aiding and abetting" are not causes of action but merely theories of liability which are wholly dependent upon the proof of an underlying tort.[25]  Finally, plaintiffs' count for "punitive damages" also fails to allege a cause of

---

[24]      See N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 2004); Doe v. State, 588 N.Y.S.2d 698, 709 (N.Y. Ct. Cl. 1992), aff'd, 595 N.Y.S.2d 592 (4th Dep't 1993); 42 PA. CONS. STAT. ANN. § 8302 (West 2004); Tulewicz v. S.E. Pa. Transp. Auth., 606 A.2d 427, 431 (Pa. 1992).  Virginia's survival statute differs from New York's and Pennsylvania's by transforming any survival cause of action into a wrongful death claim.  VA. CODE. ANN. § 8.01-25 (West 2004); El-Meswari v. Wash. Gas Light Co., 785 F.2d 483, 491 (4th Cir. 1986).

[25]      See pp. 20-21 above for New York, Pennsylvania and Virginia authorities.  Moreover, RICO does not permit recovery for aiding and abetting.  See, e.g., DeFalco v. Bernas, 244 F.3d 286, 330 (2d Cir. 2001).  Nor have courts in this circuit determined whether the Antiterrorism Act permits recovery under an aiding and abetting theory. Cf. Boim, 291 F.3d at 1016-21.

action.  Punitive damages are a form of relief and as such are dependent upon pleading and proving an underlying tort. [26]

---

[26]     See Rocanova v. Equitable Life Assur. Soc'y of U.S., 83 N.Y.2d 603, 616, 612 N.Y.S.2d 339, 344 (1994); Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa. 1989); Foreign Mission Bd. of S. Baptist Convention v. Wade, 409 S.E.2d 144, 148 (Va. 1991).

**<u>Conclusion</u>**

The complaint against His Royal Highness Prince Abdullah Al Faisal Bin

Abdulaziz Al Saud, Mohammed Bin Abdulrahman Al Ariefy and Alfaisaliah Group (a/k/a Faisal

Group Holding Co.) should be dismissed with prejudice.

Dated: New York, New York
      July 29, 2004

                            Respectfully submitted,

                            CURTIS, MALLET-PREVOST,
                              COLT & MOSLE LLP

                            By:_____/s/_____
                                T. Barry Kingham (TBK-1219)
                                Daria M. Ciaputa (DC-0490)
                                Jesse Clarke (JC-4410)
                                101 Park Avenue
                                New York, New York  10178
                                (212) 696-6000

                            Attorneys for
                            *HRH Prince Abdullah Al Faisal Bin Abdulaziz Al Saud,*
                            *Mohammed Bin Abdulrahman Al Ariefy and*
                            *Alfaisaliah Group (a/k/a Faisal Group Holding Co.)*

25

**E<small>XHIBIT</small> A**

Saudi Arabia - 7/1/04

# Chiefs of State and Cabinet Members of Foreign Governments

Last Updated: 7/1/04

## Saudi Arabia

| | |
|---|---|
| King | **Saud, FAHD,** bin Abd al-Aziz Al |
| Prime Minister | **Saud, FAHD,** bin Abd al-Aziz Al |
| First Dep. Prime Min. | **Saud, ABDALLAH,** bin Abd al-Aziz Al |
| Second Dep. Prime Min. | **Saud, SULTAN,** bin Abd al-Aziz Al |
| Min. of Agriculture | **Balghunaym,** Fahd bin Abd al-Rahman bin Sulayman |
| Min. of Civil Service | **Fayiz,** Muhammad bin Ali |
| Min. of Commerce & Industry | **Yamani,** Hashim bin Abdallah bin Hashim |
| Min. of Communications & Information Technology | **Mulla,** Muhammad bin Jamil bin Ahmed |
| Min. of Culture & Information | **Farsi,** Fuad Abd al-Salam Muhammad |
| Min. of Defense & Aviation | **Saud, SULTAN,** bin Abd al-Aziz Al |
| Min. of Economy & Planning | **Qusaybi,** Khalid bin Muhammad |
| Min. of Education | **Rashid,** Muhammad Ahmad al- |
| Min. of Finance | **Asaf,** Ibrahim Abd al-Aziz al- |
| Min. of Foreign Affairs | **Saud, SAUD al-FAYSAL,** bin Abd al-Aziz Al |
| Min. of Health | **Manei,** Hamad bin Abdallah al- |
| Min. of Higher Education | **Anqari,** Khalid bin Muhammad al- |
| Min. of Interior | **Saud, NAYIF,** bin Abd al-Aziz Al |
| Min. of Islamic Guidance | **Shaykh,** Salih bin Abd al-Aziz bin Muhammad bin Ibrahim |
| Min. of Justice | **Shaykh,** Abdallah Muhammad Ibrahim Al al- |
| Min. of Labor | **Qusaybi,** Ghazi bin Abd al-Rahman al- |
| Min. of Municipal & Rural Affairs | **Saud, MITIB,** bin Abd al-Aziz Al |
| Min. of Petroleum & Mineral Resources | **Naimi,** Ali Ibrahim |
| Min. of Pilgrimage Affairs & Religious Trusts | **Madani,** Iyad bin Amin |
| Min. of Social Affairs | **Namla,** Ali bin Ibrahim |
| Min. of Transport | **Suraysri,** Jubara bin Id al- |
| Min. of Water & Electricity | **Husayn,** Abdallah al- |
| Min. of State | **Ayban,** Musaid bin Muhammad al- |
| Min. of State | **Khuwaytir,** Abd al-Aziz bin Abdallah al- |
| Min. of State | **Nafisa,** Mutalib bin Abdallah al- |

| Min. of State | **Saud, ABD AL-AZIZ,** bin Fahd bin Abd al-Aziz Al |
|---|---|
| Min. of State | **Zaynal,** Abdallah bin Ahmad bin Yusif |
| Pres. of the Higher Council of Ulema | **Shaykh,** Abd al-Aziz Abdallah al- |
| Governor, Saudi Arabian Monetary Agency | **Sayyari,** Hamad al- |
| Ambassador to the US | **Saud, BANDAR,** bin Sultan bin Abd al-Aziz Al |
| Permanent Representative to the UN, New York | **Shubukshi,** Fawzi bin Abd al-Majid |

**Chiefs of State Home**

**EXHIBIT B**

462.    In addition, Prince Salman has been instrumental in raising funds for charities within al Qaida's infrastructure from third parties.  During a 1994 conference sponsored by the IIRO and Sanabel al-Kheer, Prince Salman publicly stated that he had personally raised more than 6 million Saudi Riyals for Sanabel and IIRO from wealthy Saudi citizens.

463.    At all times material hereto, Prince Salman knew and intended that the contributions he made to, and funds he raised on behalf of, IIRO, WAMY, MWL, Sanabel al-Kheer and al Haramain Foundation would be used to fund al Qaida's global operations and acts of international terrorism.

464.    Through his official and personal acts, as described herein, Prince Salman has provided critical financial and logistical support to al Qaida for a period of many years.

465.    Prince Abdullah al Faisal (Prince Abdullah) is a former official of the Saudi Ministry of Interior, and has served as the de facto ruler of Saudi Arabia since King Fahd's stroke in 1999.  In addition to his role within the Saudi government, Prince Abdullah maintains significant business interests, including a controlling stake in al Faisal Group Holding Co., and its predecessor-in-interest, al Faisaliah Group.  Al Faisal Group is the representative agent in Saudi Arabia of several international companies.

466.    In his capacity as de-facto head of the Kingdom of Saudi Arabaia, Prince Abdullah has consistently appointed al Qaida supporters and collaborators to head the charities controlled by the Kingdom.  Prince Abdullah has done so in order to ensure that the charities would continue to serve as vehicles for sponsoring and sustaining terrorist organizations, including al Qaida.

467.    Prince Abdullah has made significant personal contributions to Saudi-based charities that he knew to be sponsors of al Qaida's global operations as well, including IIRO, MWL, WAMY, BIF, the Saudi High Commission, SJRC and al Haramain, among others.

468.    At all times material hereto, Prince Abdullah knew and intended that the contributions he made to IIRO, WAMY, MWL, Sanabel al-Kheer and al Haramain Foundation would be used to fund al Qaida's global operations and acts of international terrorism.

469.    According to FBI records, September 11th hijacker Hani Saleh Hanjour maintained a registered address in Taif, Saudi Arabia, under the name of al Faisaliah. That address corresponds with the branch office of al Faisaliah Group in Taif. This evidence thus establishes a direct link between Prince Abdullah's business concerns and one of the September 11th hijackers.

470.    There is substantial evidence that Prince Abdullah engaged in transactions with Mushayt-for Trading establishment, the funding mechanism for the Spanish al Qaida cell. Muhammed Galeb Klaje Zouaydi, who founded the network of companies which served as a vehicle for financing al Qaida's activities in Europe, served for many years as Prince Abdulah's accountant. During the period of time that Mushayt for Trading was laundering money for the Spanish cell, Prince Abdulah and Zouaydi maintained a business partnership.

471.    Through his official and personal acts, as described herein, Prince Abdullah has provided critical financial and logistical support to al Qaida for a period of many years.