**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 03 MD 1570 (RCC)** |
| This document relates to: | |
| FEDERAL INSURANCE COMPANY, et al, | NO. 03 CV 6978 (RCC) |
|           Plaintiffs, | |
|       v. | |
| AL QAIDA, et al., | |
|           Defendants. | |

**MEMORANDUM OF LAW OF RABITA TRUST IN SUPPORT OF ITS MOTION**
**TO DISMISS THE FIRST AMENDED COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Rabita Trust*

Dated:  Washington, DC
July 30, 2004

i

# **Table of Contents**

CONTENTS                                                      Page No.

TABLE OF CONTENTS                                               i

TABLE OF AUTHORITIES                                           ii

INTRODUCTION                                                    1

I.  FACTUAL BACKGROUND                                         1

SUMMARY OF ALLEGATIONS
AGAINST RABITA TRUST                                           2

II.    LEGAL ANALYSIS                                          4

       The Court Must Dismiss the Complaint
       for Lack of Personal Jurisdiction Over
       Rabita Trust                                            4

       A.    Standard of Review                               4

       B.    Legal Background                                 5

       C.    Rabita Trust Lacks Minimum Contacts with
             the United States for General Personal Jurisdiction    6

       D.    Rabita Trust Lacks Minimum Contacts with the
             United States Under the Effects Test             7

       E.    Personal Jurisdiction Over Rabita Trust Does
             not Arise from Allegations of Conspiracy,
             and Aiding and Abetting                          11

       F.    Rabita Trust Lacks Minimum Contacts
             Through Wael Jelaidan                            14

       G.    Rabita Trust Lacks Minimum Contacts
             Through Muslim World League, Sanabell
             Al-Kheer, Makkah al-Mukarrahmah and
             Al-Watania Poultry                               14

III.   CONCLUSION                                             20

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases:</u>                                                    <u>Page No.:</u>

<u>Albert v. Carovano,</u>
851 F.2d 561 (2d Cir. 1988)                                             11

<u>Asahi Metal Indus. Co. v. Superior Court,</u>
480 U.S. 102 (1987)                                                     5, 11

<u>Bersch v. Drexel Firstone, Inc.,</u>
519 F.2d 974 (2d Cir. 1975)                                             11

<u>Burger King Corp. v. Rudzewicz,</u>
471 U.S. 462 (1985)                                                     5, 14

<u>Burnett v. Al Baraka Inv. and Dev. Corp.,</u>
274 F. Supp.2d 86 (D.D.C. 2003)                                         20

<u>Calder v. Jones,</u>
465 U.S. 783 (1984)                                                     7

<u>Dardana Ltd. v. A.O. Yugangkneftegaz,</u>
317 F.3d 202 (2d Cir. 2003)                                             6

<u>Derthick v. Bassett-Walker, Inc.,</u>
Nos. 90 Civ. 5427, 90 Civ. 7479,
90 Civ. 3845, 1992 WL 249951 at *3
(S.D.N.Y. Sept. 23, 1992)                                               17

<u>Doe v. Unocal Corp.,</u>
248 F.3d 915 (9th Cir. 2001)                                            15

<u>Dorfman v. Marriott Int'l Hotels, Inc.,</u>
No. 99 CIV 10496, 2002 WL 14363 at *7
(S.D.N.Y. Jan. 3, 2002)                                                 19

<u>ESI, Inc. v. Coastal Corp.,</u>
61 F. Supp.2d 35 (S.D.N.Y. 1999)                                        17, 18, 19

<u>E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc.,</u>
No. 00 CUV, 8670, 2003 WL 22064259 at *12
(S.D.N.Y. Sept. 5, 2003)                                                12

<u>Federal Deposit Ins. Corp. v. Milken,</u>
781 F. Supp. 226 (S.D.N.Y. 1991)                                        8

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
218 F. Supp.2d 369 (S.D.N.Y. 2002)                    12

Galeri Gmurzynska v. Hutton,
257 F. Supp.2d 621 (S.D.N.Y. 2003)                    12, 13

Helicopteros Nacionales de Colombia v. Hall,
466 U.S. 408 (1984)                                   5, 7

Herbstein v. Bruetman,
768 F. Supp. 79 (S.D.N.Y. 1991)                       8

Huang v. Sentinel Gov't Sec.,
657 F. Supp. 485 (S.D.N.Y. 1987)                     8, 11

Intermor v. Walt Disney Co.,
250 F. Supp.2d 116 (E.D.N.Y. 2003)                   15

International Shoe Co. v. Washington,
326 U.S. 310 (1945)                                   5

Jazini v. Nissan Motor Co., LTD.,
148 F.3d 181 (2d Cir. 1998)                          10, 15

Keeton v. Hustler Magazine, Inc.,
465 U.S. 770 (1984)                                   15

Leasco Data Processing Equip. Corp. v. Maxwell,
468 F.2d 1326 (2d Cir. 1972)                         7, 8

Lehigh Val. Indus., Inc. v. Birenbaum,
527 F.2d 87 (2d Cir. 1975)                            11

Magnetic Audiotape Antitrust Litig.,
334 F.3d 204 (2d Cir. 2003)                          4, 6, 7

Meteoro Amusement Corp. v. Six Flags,
267 F. Supp.2d 263 (N.D.N.Y. 2003)                   15, 18

Metropolitan Life Ins. Co. v. Robertson-CECO Corp.,
84 F.3d 560 (2d Cir. 1996)                           5, 6

Obabueki v. International Bus. Mach. Corp.,
Nos. 99 Civ. 11262, 99 Civ. 12486, 2001 WL 921172 at *5
(S.D.N.Y. Aug. 14, 2001)                             18

Ruhrgas AG v. Marathon Oil Co.,
526 U.S. 574 (1999)                                         20

Schenker v. Assicurazioni Genereali S.p.A., Consol.,
No. 98 Civ. 9186, 2002 WL 1560788 at *10
(S.D.N.Y. July 15, 2002)                                    13

S.E.C. v. Unifund SAL,
910 F.2d 1028 (2d Cir. 1990)                                8

Second Amendment Found. v. U.S. Conference of Mayors,
274 F.3d 521 (D.C. Cir. 2001)                               4, 13

Self Int'l (HK) Ltd. v. La Salle Nat'l Bank, Chicago,
01 Civ. 4291, 2002 WL 500372 at *3
(S.D.N.Y. March 29, 2002)                                   18

Southridge Capital Mgmt., LLC v. Lowry,
188 F. Supp.2d 388 (S.D.N.Y. 2002)                          4

United States v. Bestfoods,
524 U.S. 51 (1998)                                          15

Vermont Agency of Natural Res. v. United States *ex rel.* Stevens,
529 U.S. 765 (2000)                                         19

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
751 F.2d 117 (2d Cir. 1984)                                 14, 16, 17

Weiss v. La Suisse,
69 F. Supp.2d 449 (S.D.N.Y. 1999)                           17

Ying Jing Gan v. City of New York,
996 F.2d 522 (2d Cir. 1993)                                 10


**Statutes and Rules:**

ATA, 18 U.S.C. § 2334(a)                                    6

Fed.R.Civ.P. 4(k)(2)                                        5, 6

Fed.R.Civ.P. 12(b)(2)                                       1, 4

## INTRODUCTION

Defendant Rabita Trust, through undersigned counsel, submits this Memorandum of Law in support of its motion to dismiss Plaintiffs' First Amended Complaint ("Complaint"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

This Court lacks personal jurisdiction over Rabita Trust because it does not do any charitable work in, receive any donations from and has absolutely no connection with the United States. Nor have Plaintiffs adequately pled that Rabita Trust has purposefully directed any tortious activity towards the United States or conspired with anyone to do the same. Simply put, Rabita Trust lacks the necessary minimum contacts to trigger personal jurisdiction in a United States court, and thus, the Complaint against it must be dismissed.

## I.    FACTUAL BACKGROUND

Rabita Trust is a charitable organization dedicated to helping suffering refugees in Bangladesh. Headquartered in Islamabad, Pakistan and headed by Secretary General Wael Jelaidan, the sole purpose of Rabita Trust was and is to repatriate and rehabilitate 40,000 Pakistani families (Biharis) stranded in Bangladesh as a result of the 1970 Indo-Pak War.[1] See Ex. 1 attached, Affidavit of W. Jelaidan. Rabita Trust is devoted to making human lives better, not destroying them as in the senseless and horrific attacks of 9/11.

From 1992 to 1994, Rabita Trust faithfully conducted its charitable activity constructing housing units for Biharis in Pakistan. See Ex. 2 attached, Second Affidavit of W. Jelaidan. Unfortunately for the refugees, a change in Pakistani government in 1994

resulted in Rabita Trust being placed in isolation.  See id.  Consequently, all construction

and repatriation ceased and Rabita Trust held no further board meetings after 1994.  See

id.  Having ceased operations a decade ago, Rabita Trust is baffled and dumbfounded as

to how anyone could tie the entity to the destructive and murderous acts of 9/11, acts

which go against the core of Rabita Trust's purpose as a charitable organization.

     As may be already apparent, Rabita Trust maintains no physical presence in the

U.S., *i.e.*, Rabita Trust has no field offices in the United States and Rabita Trust carries

out no program-related work in the United States.  See Ex. 1.  It neither solicits nor

receives funding from any individuals or entities in the United States.  See id.  The focus

of all of Rabita Trust's efforts are in Pakistan and Bangladesh.  See id.  In short, Rabita

Trust has absolutely no connection with the United States and should be dismissed from

this lawsuit.  See id.

### SUMMARY OF ALLEGATIONS AGAINST RABITA TRUST

     The Complaint fails to sufficiently plead that Rabita Trust has minimum contacts

with the United States directly or through its officers and/or alleged related entities, has

ever directed any tortious action aimed at the United States, has ever conspired with

anyone to direct a tortious action aimed at the United States or has taken any action that

proximately caused the attacks on September 11, 2001.

     Plaintiffs' allegations against Rabita Trust fall into the following categories:

- The United States government designated Rabita Trust as a supporter and/or associate of terrorists.  See First Am. Compl. ("FAC") at ¶¶ 65, 214.

- Al Qaeda members have managed and operated Rabita Trust, and it has

---

[1] Mistakenly, Plaintiffs allege that Rabita Trust is headquartered in Lahore, Pakistan.

provided logistical and financial support to Al Qaeda in diverse regions throughout the world related to Al Qaeda's global jihad.  See id. at ¶¶ 100, 117, 121, 127, 195, 210-12, 214-215.

- A document found in a March, 2002 raid of the Benevolence International Foundation's ("BIF") offices in Bosnia shows that Osama Bin Laden ("OBL") suggested that a committee, with Rabita Trust as a member, be created to receive and distribute donations to Al Qaeda.  See id. at ¶¶ 100, 121, 195, 211.

- Rabita Trust is related to the Muslim World League (MWL), is led by Wael Jelaidan, and shared officers with MWL, Makkahl-Mukarramah, Inc., Sanabell al-Kheer and al-Watania Poultry.  See id. at ¶¶ 113, 117, 127, 208, 212-13.

- The September 11th Attack was a direct, intended and foreseeable product of Rabita Trust's participation in Al Qaeda's jihadist campaign.  See id. at ¶ 216.

Plaintiffs are likely to argue that personal jurisdiction exists over Rabita Trust based on its alleged organizational ties to the aforementioned entities, which allegedly have minimum contacts with the United States, or through some form of the "effects test."  With regard to the latter, not a single one of the allegations listed above connects Rabita Trust with the September 11th attacks.  Not only are most of the allegations conclusory and unsubstantiated, but they fail to connect Rabita Trust with the United States in any manner or show that it knew of or assisted in causing the September 11th attacks.

Moreover, even assuming that the above listed entities have minimum contacts with the United States, Plaintiffs fail to adequately plead that Rabita Trust is an agent or "mere department" of one of those entities, sufficient to allow Plaintiffs to piggyback that

entity's minimum contacts onto Rabita Trust.  The most Plaintiffs allege is that Rabita Trust is a subsidiary of MWL and shares common officers with some of the other listed entities, hardly sufficient to justify the argument that Rabita Trust does not operate independently as a separate legal and corporate entity from those organizations.[2]

II.   **LEGAL ANALYSIS**

**The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over Rabita Trust**

The Court must dismiss Plaintiffs' Complaint for lack of personal jurisdiction under Rule 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between Rabita Trust and the United States to establish personal jurisdiction over Rabita Trust in this lawsuit.

A.   **Standard of Review**

Under Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* case that personal jurisdiction exists over the defendant.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  At this stage of the proceedings, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Southridge Capital Mgmt., LLC v. Lowry, 188 F. Supp.2d 388, 397 (S.D.N.Y. 2002).  However, to survive a motion to dismiss under Rule 12(b)(2), the plaintiff must allege facts connecting the defendant with the forum.  See Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (citation omitted).  Moreover, the Supreme Court has cautioned that special care should be exercised when extending our notions of personal jurisdiction to alien

---

[2] Plaintiffs make the puzzling argument that Rabita Trust is an agent, instrumentality and organ of the Kingdom of Saudi Arabia.  See FAC at ¶¶ 208-09.  To the extent that the Court finds Saudi Arabia to be

defendants.  See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114-15 (1987).

Consistent with the Due Process Clause of the 5th Amendment, a Court may exercise

personal jurisdiction over a defendant only where the defendant has "certain minimum

contacts … such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310,

316 (1945).

> **B.**  **Legal Background**

Under the "minimum contacts" inquiry of International Shoe Co. a distinction is

made between general jurisdiction and specific jurisdiction.  See  Metropolitan Life Ins.

Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 1996).  General jurisdiction

exists over a defendant if the defendant has "continuous and systematic" contacts with

the forum.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415-416

(1984).  Alternatively, where the claims at issue are related to or arise out of the

defendant's contacts with the forum, a court may exercise specific jurisdiction over the

defendant.  See id. at 414.  Specific jurisdiction is satisfied where "the Defendant has

'purposefully directed' his activities at residents of the forum, and the litigation results

from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp.

v. Rudzewicz, 471 U.S. 462, 472 (1985).

In performing the "minimum contacts" analysis, the service of process provision

at issue determines the relevant forum against which to measure minimum contacts.

Where service of process is based on a federal statute providing for nationwide service of

process or on Fed.R.Civ.P. 4(k)(2), essentially the federal long-arm statute, minimum

---

immune from this lawsuit, Rabita Trust adopts the Plaintiffs' allegations that Rabita Trust is an organ of the
Saudi government and seeks dismissal on such grounds.

contacts are measured by the defendant's contacts with the United States as a whole, and

not a particular state.  See In re:  Magnetic Audiotape Antitrust Litig., 334 F.3d at 207

(holding that defendants minimum contacts should be measured with regard to the United

States as whole where § 12 of the Clayton Act provides for worldwide service of

process).  See also Dardana Ltd. v. A.O. Yugankneftegaz, 317 F.3d 202, 207 (2d Cir.

2003) (holding that where personal jurisdiction is based on Fed.R.Civ.P. 4(k)(2), the due

process analysis involves contacts with the United States as a whole).  In the case herein,

Plaintiffs are likely to argue that Rabita Trust is subject to this Court's personal

jurisdiction based on the ATA, 18 U.S.C. § 2334(a) ("Process in such a civil action may

be served in any district where the defendant resides, is found, or has an agent"), or

Fed.R.Civ.P. 4(k)(2), both of which provide for nationwide service of process.  Given

that Rabita Trust has accepted service of process, the sole issue before the Court is

whether Rabita Trust has the necessary minimum contacts with the United States to

trigger personal jurisdiction.

### C.    Rabita Trust Lacks Minimum Contacts with the United States for General Personal Jurisdiction

Under the concept of general jurisdiction, Plaintiffs bear the burden of

establishing that Mr. Jelaidan has "continuous and systematic" contacts with the United

States.  See Metropolitan Life Ins. Co., 84 F.3d at 568.  However, Plaintiffs utterly fail to

plead any meaningful nexus between Rabita Trust and the United States; not a single

allegation within the entire Complaint connects Rabita Trust with the United States.[3]

Plaintiffs fail to allege that Rabita Trust maintains any, let alone, the requisite

---

[3] Plaintiffs also fail to allege that Rabita Trust has any contacts, whatsoever, with New York or Washington, D.C., thereby, precluding jurisdiction over Rabita Trust pursuant to those two states' respective long-arm statutes.

"substantial, continuous and systematic" contacts with the United States to support general personal jurisdiction.  See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 413-15.

### D.   Rabita Trust Lacks Minimum Contacts with the United States Under the Effects Test

Not only do Plaintiffs fail to plead that general jurisdiction exists over Rabita Trust, but they also fail to plead that Rabita Trust purposefully directed any tortious activity towards the United States under the "effects test."  The "effects test" holds that a foreign defendant may be subject to personal jurisdiction within the United States if that defendant commits an intentional wrongful act outside of the forum directed at an entity or individual within the forum.  See Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Under the "effects test," Rabita Trust would be subject to personal jurisdiction within the United States only if:  1) Rabita Trust's activities outside of the United States caused the 9/11 attacks; 2) The 9/11 attacks were a "direct and foreseeable result" of the conduct of Rabita Trust; and 3) Rabita Trust knew, or had good reason to know, that its conduct would result in the 9/11 attacks.  See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1338-1341 (2d Cir. 1972).  Even if the Plaintiffs allege, which they have not done, that the 9/11 attacks were the result of acts committed by Rabita Trust outside of the United States, this in and of itself is not enough to subject Rabita Trust to personal jurisdiction in this Court.  See id.

The "effects test" is hardly a lax doctrine subject to minimal judicial scrutiny.  For example, the Second Circuit has held that the "effects test" is satisfied only where the defendant is a *primary participant* in the intentional wrongdoing.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (emphasis added).  Moreover, in order to

meet the causation element of the "effects test" Plaintiffs must plead more than some nonspecific allegation that Rabita Trust caused the 9/11 attacks.  Rather, Plaintiffs must plead a *close causal connection* between the out of forum actions of Rabita Trust and the 9/11 attacks in the United States.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (emphasis added).  See also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990) (holding that not every causal connection between action abroad and ultimate injury in the United States will suffice); Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (holding that the standard for causation under the "effects test" "is somewhat more demanding than just 'some causal relation'").

Likewise, the Second Circuit has held, with regard to foreseeability, that "the 'low floor' of foreseeability needed in the tort context is not enough to support personal jurisdiction …." Leasco Data Processing Equip. Corp., 468 F.2d at 1330.  See also Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that "it is not enough that causing an injury within the forum may be foreseeable, within the meaning of proximate causation and tort liability").  The Plaintiff must meet a higher burden by pleading that the effect within the forum occurred "as a direct and foreseeable result of the conduct outside the territory."  Leasco Data Processing Equip. Corp., 468 F.2d at 1341.

The Terrorist Designation and Al Qaeda Connections Allegations

Plaintiffs allege that Rabita Trust has been designated as a supporter and/or associate of terrorists by the United States government.  See FAC at ¶¶ 65, 214. Attempting to expound on that allegation, Plaintiffs also allege that Al Qaeda members have managed and operated Rabita Trust, and that Rabita Trust has provided logistical

and financial support to Al Qaeda in diverse regions throughout the world related to Al Qaeda's global jihad.[4]  See id. at ¶¶ 100, 117, 121, 127, 195, 210-12, 214-215.

First and foremost, Rabita Trust denies any support for terrorism.  Moreover, assuming the legitimacy of the Treasury Department designation, which is in doubt, Plaintiffs fail to even plead what the Treasury Department designation statement actually says or how it causally connects Rabita Trust as a primary participant in the September 11th attacks.  Likewise, Plaintiffs' allegations of vague logistical and financial support to Al Qaeda in unspecified areas of the world for the purpose of some undefined global jihad does not raise an inference of a close causal connection between Rabita Trust's alleged support and the 9/11 attacks.  Nor do any of Plaintiffs' very general allegations raise any inference that the 9/11 attacks were the direct and foreseeable result of Rabita Trust's alleged support or the role of Al Qaeda members as managers of Rabita Trust.

The BIF Document

Plaintiffs attempt to snow the Court into drawing a connection between Rabita Trust and the 9/11 attacks by alleging that a March, 2002 raid of BIF's Bosnian office yielded a document, which allegedly shows that OBL urged the creation of a committee, and *suggested* Rabita Trust as a member thereof, in order to receive and distribute donations to Al Qaeda.  See FAC at ¶¶ 100, 121, 195, 211 (emphasis added).  Plaintiffs do not identify the date of the document or any other identifying characteristics, never allege that this committee was actually created, and never allege that Rabita Trust was actually a member of such a committee.  The mere suggestion by OBL that Rabita Trust

_____

[4] Playing fast and loose with their allegations, Plaintiffs allege that Al Qaeda officials managed Rabita Trust, yet only identify one individual, Wael Jelaidan, who managed Rabita Trust and, according to Plaintiffs' allegations, was a alleged founding member of Al Qaeda.

be placed on a committee that was yet to be created falls far short of raising any inference that Rabita Trust was causally connected to the 9/11 attacks in any form whatsoever.

<u>Rabita Trust's Alleged Organizational Links with Other Alleged Terror Supporters</u>

In a creative attempt to infer the existence of some global charity-based 9/11 conspiracy, Plaintiffs allege that Rabita Trust is connected through its organizational structure to various other alleged supporters of terror, including MWL, Wael Jelaidan, Makkahl-Mukarramah, Inc., Sanabell al-Kheer and al-Watania Poultry.  <u>See</u> FAC at ¶¶ 113, 117, 127, 208, 212-13.  Once again, Plaintiffs allegations fail to address the issues of causation and foreseeability, which are crucial to any "effects test" analysis. Surely, the allegation that Rabita Trust shares directors with or is connected as a subsidiary to other alleged terrorist supporting entities cannot lead to the conclusion that Rabita Trust proximately, or directly and foreseeably caused the 9/11 attacks, let alone even knew that such attacks would take place.

<u>The Allegation that the September 11th Attack was a Direct, Intended and Foreseeable Product of Rabita Trust's Participation in Al Qaeda's Jihadist Campaign</u>

The allegation that the 9/11 Attacks were the direct, intended and foreseeable result of Rabita Trust's actions deserves little attention.  <u>See</u> FAC at ¶ 216.  This allegation is no more than a legal conclusion, and on a motion to dismiss, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."  <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 534 (2d Cir. 1993).  A Court should give no weight to legal conclusions couched as factual allegations.  <u>See</u> <u>Jazini v. Nissan Motor Co., LTD.</u>, 148 F.3d 181, 184 (2d Cir. 1998);

Albert v. Carovano, 851 F.2d 561, 572-73 (2d Cir. 1988).  Accordingly, the Court should give no weight to this legal conclusion either.

Under the "effects test's" primary participant requirement, heightened standards of causation and foreseeability and the greater scrutiny afforded to "effects test"-based claims of personal jurisdiction in the international context, Plaintiffs' Complaint falls far short of sufficiency.  See Asahi, 480 U.S. at 113 (holding that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders); Huang, 657 F. Supp. at 489, *citing*, Bersch v. Drexel Firstone, Inc., 519 F.2d 974, 1000 (2d Cir. 1975) (citation omitted) (holding that "when a court bases personal jurisdiction on effects in a [forum] caused by acts done elsewhere, it must proceed 'with caution, particularly in an international context'").  There is no basis in the Complaint for the conclusion that Rabita Trust's actions are causally connected to the September 11th attacks or that Rabita Trust purposefully directed its actions towards committing a tort within the United States.

**E.    Personal Jurisdiction Over Rabita Trust Does Not Arise from Allegations of Conspiracy, and Aiding and Abetting**

Despite Rabita Trust's lack of minimum contacts with the United States, Plaintiffs appear to allege that it is subject to personal jurisdiction because Rabita Trust conspired with other Defendants, including some allegedly having "minimum contacts," to cause the terrible 9/11 attacks.  See FAC at ¶ 623-26.  While New York federal courts recognize conspiracy-based personal jurisdiction, "the bland assertion of conspiracy or agency is insufficient to establish jurisdiction …."  Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975) (finding that there were no allegations of

11

specific facts connecting the defendant with any activity within the New York forum).

See also Galeri Gmurzynska v. Hutton, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003)

(citation omitted) (holding that conclusory allegations and speculation of conspiracy-

based personal jurisdiction will not survive a motion to dismiss for lack of personal

jurisdiction).

      To establish jurisdiction over a non-resident conspirator:

> [O]n the basis of the [forum] acts of a co-conspirator, the plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in [the forum], and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-[forum] tortfeasor.

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y.

2002).  Accordingly, Plaintiffs must establish a *prima facie* case of conspiracy by

alleging "the primary tort and four elements: (a) a corrupt agreement between two or

more persons; (b) an overt act in furtherance of the corrupt agreement; (c) the parties'

intentional participation in the furtherance of the common plan or purpose; and (d) the

resulting damage or injury."  E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc.,

No. 00 CUV, 8670, 2003 WL 22064259 at *12 (S.D.N.Y. Sept. 5, 2003).  Furthermore,

Plaintiffs must establish Rabita Trust's membership in the conspiracy by alleging:

> (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in [the forum], (2) that the [forum] co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in [forum] acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

Id. (citation omitted).

      Plaintiffs' "bare bones" attempt to establish personal jurisdiction over Rabita

Trust by piggybacking the actions of alleged co-conspirators with alleged contacts to the

forum onto Rabita Trust must fail.  The Complaint contains absolutely no factual allegations supporting:  1) The inference that Rabita Trust was a member of a "9/11 Conspiracy"; 2) That Rabita Trust had any prior knowledge about the 9/11 attacks; 3) The existence of an agency relationship between Rabita Trust and those who actually perpetrated the 9/11 attacks within the United States; 3) The theory that Rabita Trust had an awareness of the effects on the United States of any activity that he conducted; 4) The theory that the 9/11 attacks were for the benefit of Rabita Trust; or 5) The theory that Rabita Trust consented to, directed or exercised any control over the perpetrators of the 9/11 attacks within the United States.

A careful review of the Complaint reveals only the most vague, catch-all and conclusory allegations of conspiracy, which hardly form a solid foundation in fact to support the inference that Rabita Trust was a part of a "9/11 Conspiracy."  See FAC at ¶¶ 65, 623-26.  The Courts have held that "such wholly non- specific allegations cannot form the 'sole basis' for connecting the moving parties to the alleged conspiracy." Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002).  See also Second Amend. Found., 274 F.3d at 524 (holding that "[t]he allegation that the [Defendants] 'conspired together' represents nothing more than a legal conclusion, which we have held 'does not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction'").

Although Rule 8 establishes a liberal pleading standard, the "mere incantation of the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the Rule's requirements."  Galeri Gmurzynska, 257 F. Supp.2d at 631 (citation omitted). Plaintiffs have failed to meet even this lowest of standards because they have failed to

allege any facts establishing or even supporting Rabita Trust's involvement in a "9/11 Conspiracy."  Plaintiffs have only succeeded in alleging the type of unilateral activity by third parties that the "purposeful availment" requirement is designed to eliminate.  See Burger King Corp., 471 U.S. at 475.

F.     **Rabita Trust Lacks Minimum Contacts Through Wael Jelaidan**

Although Plaintiffs may try to argue that Rabita Trust is subject to personal jurisdiction through its Secretary-General, Wael Jelaidan, for the reasons stated in Wael Jelaidan's Motion to Dismiss there is no personal jurisdiction over Wael Jelaidan.  See Defendant Wael Jelaidan's Motion to Dismiss, pp.4-17.  Given that the Court has no personal jurisdiction over Wael Jelaidan, it is impossible for the Court to have personal jurisdiction over Rabita Trust through Wael Jelaidan.

G.     **Rabita Trust Lacks Minimum Contacts Through Muslim World League, Sanabell Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry**

Plaintiffs are likely to attempt to establish Rabita Trust's minimum contacts through its alleged affiliations with MWL, Sanabell Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry.  See FAC at ¶¶ 113, 117, 127, 208, 213.  Plaintiffs will likely argue that either or all of the aforementioned entities have minimum contacts with United States, and that Rabita Trust is subject to personal jurisdiction through its alleged affiliations with those entities.

The law is clear that " the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).  Similarly, "jurisdiction over a parent corporation [does not] automatically

establish jurisdiction over a wholly owned subsidiary." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). See also Intermor v. Walt Disney Co., 250 F. Supp.2d 116, 120 (E.D.N.Y. 2003) (citation omitted) (holding that corporate parent doing business in forum and being subject to personal jurisdiction was insufficient to subject foreign subsidiary to personal jurisdiction). Courts have even maintained that a foreign affiliate or subsidiary remains a separate entity for purposes of minimum contacts analysis even though the parent is involved in monitoring the performance, supervising the budgetary decisions, and articulating the policies of the subsidiary. See United States v. Bestfoods, 524 U.S. 51, 69 (1998); Doe v. Unocal Corp., 248 F.3d 915, 925-931 (9th Cir. 2001) (holding that corporate relationship alone was insufficient to exercise personal jurisdiction over parent). Only where an agency or "mere department" relationship exists, may the forum contacts of a corporation be imputed to a foreign affiliate/subsidiary. See Jazini, 148 F.3d at 184.

Assuming, without conceding that one of the aforementioned four entities is subject to personal jurisdiction in the United States, the agency test requires the Plaintiffs to establish that one of these entities "does all the business which [Rabita Trust] could do were it here by its own officials." Id. Stated differently, Plaintiffs must show that Rabita Trust would have to initiate direct contacts with the United States if the alleged forum entity were absent from the United States because the United States is too important to Rabita Trust's welfare. See Meteoro Amusement Corp. v. Six Flags, 267 F. Supp.2d 263, 270 (N.D.N.Y. 2003).

The Complaint does not allege any facts to support the contention that if MWL, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry were absent from the

United States, Rabita Trust would need to create a presence in the United States because the United States is so important to Rabita Trust's welfare.  Rabita Trust's mission has nothing to do with the United States, it raises no money from the United States and has no need for a presence in the United States.

Failing the agency test, Plaintiffs' minimum contacts argument rests upon establishing that Rabita Trust is a mere department of one of the four listed entities.[5] Accordingly, Plaintiffs must establish the following four factors in order to meet the "mere department" test:  1) There is common ownership over the forum corporation and the foreign corporation, which is essential to the "mere department" test; 2) Either corporation is financially dependant on the other; 3) Either corporation interferes with the selection and assignment of the other corporation's executive personnel and fails to observe the corporate formalities; and 4) Either corporation exercises sufficient control over the other corporation's marketing and operational policies.  See Volkswagenwerk Aktiengesellschaft, 751 F.2d at 120-122.

Starting with the common ownership factor, there are absolutely no allegations within the Complaint that there is any common ownership between Rabita Trust and Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Wantania Poultry.  Given that this factor is essential to the "mere department" test, there can be no jurisdiction over Rabita Trust through its alleged connections to any of those three organizations.

Even though the Complaint arguably alleges that common ownership exists between MWL and Rabita Trust, *i.e.* alleging that Rabita Trust is a subsidiary of MWL, Plaintiffs fail to establish the other three factors of the "mere department" test with regard

to MWL.[6]  See FAC at ¶ 208.  Plaintiffs fail to allege that Rabita Trust is "wholly

dependant upon [MWL's] financial support to remain in business."  Derthick v. Bassett-

Walker, Inc., Nos. 90 Civ. 5427, 90 Civ. 7479, 90 Civ. 3845, 1992 WL 249951 at *3

(S.D.N.Y. Sept. 23, 1992).  Rather, Plaintiffs contend that virtually all of Rabita Trust's

funding comes from the Kingdom of Saudi Arabia.  See FAC at ¶ 208.  Moreover, under

the "mere department" test the Court would normally determine financial dependency by

examining whether MWL "provides no- or low-interest loans to [Rabita Trust] or extends

credit on terms not otherwise available, guarantees [Rabita Trust's] obligations, or

provides and pays for insurance coverage or other necessities on behalf of [Rabita

Trust.]"  ESI, Inc. v. Coastal Corp., 61 F. Supp.2d 35, 53 (S.D.N.Y. 1999).  Significantly,

none of these factors apply in this context because the Court is examining two charitable

organizations, not corporations.

       The "mere department" test also requires Plaintiffs to establish that MWL officers

extended their control over Rabita Trust "beyond that normally exercised by boards of

directors."  Volkswagenwerk Aktiengesellschaft, 751 F.2d at 121.  The only remotely

relevant allegation regarding corporate formalities is the allegation that Rabita Trust and

MWL have shared three officers.  See FAC at ¶¶ 117, 213.  Significantly, the Complaint

does not allege that Rabita Trust and MWL shared these three officers during the same

time period.  Moreover, "the overlap of directors and officers between a parent and

subsidiary alone does not render the subsidiary a 'mere department' for jurisdictional

purposes."  Weiss v. La Suisse, 69 F. Supp.2d 449, 458 (S.D.N.Y. 1999).  See also

---

[5] Given the elements of the "mere department" test, it appears to be designed for use in the context of
related corporations.  It appears imperfect and not useful in application to a situation involving related
charitable entities.

Meteoro Amusement Corp., 267 F. Supp.2d at 271.  Rather, the focus of this factor is broader and examines "whether the parent shares officers with the subsidiary and shifts executives among its subsidiaries, whether the parent pays the executives' salaries, and whether the subsidiary holds separate meetings of its Board of Directors."  ESI, Inc., 61 F. Supp.2d at 54.

In the cases finding that the existence of overlapping directors and officers favored the Plaintiffs in a "mere department" analysis, the factual scenarios almost always involved situations in which there was practically 'mirror image symmetry' between the directors and officers of the forum corporation and the foreign corporation. See Self Int'l (HK) Ltd. v. La Salle Nat'l Bank, Chicago, 01 Civ. 4291, 2002 WL 500372 at *3 (S.D.N.Y. March 29, 2002) (both companies shared the same Senior Vice Presidents and the two Executive Vice Presidents of one company were also the Chairman and CEO of the related company); Obabueki v. International Bus. Mach. Corp., Nos. 99 Civ. 11262, 99 Civ. 12486, 2001 WL 921172 at *5 (S.D.N.Y. Aug. 14, 2001) (all board members of one company were officers or directors of the related company and both companies shared all, but one of the same officers); ESI, Inc., 61 F. Supp.2d at 54 (S.D.N.Y. 1999) (finding a massive overlap of corporate directors and officers).  In contrast, the Complaint alleges that Rabita Trust has only shared three officers with MWL, and the Complaint fails to allege that MWL shifts executives among its subsidiaries, pays the salaries of Rabita Trust's executives, or that Rabita Trust does not hold separate meetings of its Board of Directors.[7]

---

[6] It is questionable whether the concept of common ownership applies within the context of charitable organizations.

[7] The factor regarding the shifting of executive officers among subsidiaries also appears inapplicable in the context of charitable organizations.

The final element of the "mere department" test, the extent of control over marketing and operational policies, focuses on whether "the parent's promotional materials or public documents hold out the subsidiary as a branch or division of the parent, or the parent determines the subsidiary's operational policies and strategy." ESI, Inc., 61 F. Supp.2d at 55.  Once again, there are no allegations within the Complaint that MWL's promotional materials or public documents indicate that Rabita Trust is a branch or division of MWL, or that MWL determines Rabita Trust's operational policies.

In the end, to obtain jurisdiction over Rabita Trust through MWL, Sanabel Al-Kheer, Makkah al-Mukarrahmah or Al-Watania Poultry, Plaintiffs must establish that one of these named entities is subject to personal jurisdiction in the United States, *and* that an agency or "mere department" relationship exists between that entity with minimum contacts and Rabita Trust, or that there has been a total disregard for the separate corporate existence of Rabita Trust vis-à-vis the entity with minimum contacts.  See Weiss, 69 F. Supp.2d at 458.  At best, Plaintiffs have alleged that common ownership exists between MWL and Rabita Trust.  However, where a plaintiff produces "evidence of common ownership and little else, courts refuse to treat a subsidiary as a 'mere department' for jurisdictional purposes." Dorfman v. Marriott Int'l Hotels, Inc., No. 99 CIV 10496, 2002 WL 14363 at *7 (S.D.N.Y. Jan. 3, 2002).  Rabita Trust is in fact a separate and independent corporate entity from MWL, Sanabel Al-Kheer, Makkah al-Mukarrahmah and Al-Watania Poultry, and the Complaint fails to allege any different.

Because the Court lacks personal jurisdiction over Rabita Trust, it must dismiss it as a defendant in this lawsuit.  See Vermont Agency of Natural Res. v. United States *ex*

*rel.* Stevens, 529 U.S. 765, 778-79 (2000); Ruhrgas AG v. Marathon Oil Co., 526 U.S.

574, 584 (1999).

## III.   <u>CONCLUSION</u>

As Judge Robertson held in the pre-consolidation decision of <u>Burnett v. Al</u>

<u>Baraka Inv. and Dev. Corp.</u>, 274 F. Supp.2d 86, 103-04 (D.D.C. 2003):

> Given the extreme nature of the charge of terrorism, fairness requires
> extra-careful scrutiny of plaintiffs' allegations as to any particular
> defendant, to ensure that … no inferences are accepted that are
> unsupported by the facts set out in the 3 AC.

Extra-careful scrutiny of the Complaint reveals that Plaintiffs' allegations in support of

personal jurisdiction over Rabita Trust are general, conclusory, and unsupported by the

facts.  Accordingly, the Court should dismiss the Complaint against Rabita Trust.


Respectfully submitted,


_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Rabita Trust*

Dated:  July 30, 2004