**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 03 MD 1570 (RCC)** |
| This document relates to: | |
| FEDERAL INSURANCE COMPANY, et al, | NO. 03 CV 6978 (RCC) |
| Plaintiffs, | |
| v. | |
| AL QAIDA, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW OF WAEL JELAIDEN IN SUPPORT OF HIS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**MARTIN MCMAHON & ASSOCIATES**

By:_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Wael Jelaiden*

Dated:  Washington, DC
July 30, 2004

# **Table of Contents**

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

INTRODUCTION ....................................................................................................1

I.  FACTUAL BACKGROUND.................................................................................1

SUMMARY OF ALLEGATIONS AGAINST WAEL JELAIDAN...........................2

II.  LEGAL ANALYSIS

    The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over
    Wael Jelaiden .................................................................................................4

    A.      Standard of Review................................................................................4

    B.      Legal Background .................................................................................5

    C.      Wael Jelaiden Lacks Minimum Contacts with the United States for
           General Personal Jurisdiction ...............................................................6

    E.      Wael Jelaiden Lacks Minimum Contacts with the United States Under
           the Effects Test ....................................................................................8

    F.      Personal Jurisdiction Over Wael Jelaiden Does Not Arise from
           Allegations of Conspiracy, and Aiding and Abetting...........................13

III.  CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Cases:**

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).......................................4, 13

Bersch v. Drexel Firstone, Inc., 519 F.2d 974 (2d Cir. 1975)..............................................13

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).....................................................5, 16

Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp.2d 86 (D.D.C. 2003).................16

Calder v. Jones, 465 U.S. 783 (1984) ..................................................................................7, 8

Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202 (2d Cir. 2003).............................5

E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc., No. 00 CUV, 8670,
2003 WL 22064259 (S.D.N.Y. Sept. 5, 2003)....................................................................4

Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226 (S.D.N.Y. 1991).......................9

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369
(S.D.N.Y. 2002).......................................................................................................................14

Galeri Gmurzynska v. Hutton, 257 F. Supp.2d 621 (S.D.N.Y. 2003) ..............................13, 15

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984) ................................5, 8

Herbstein v. Bruetman, 768 F. Supp. 79 (S.D.N.Y. 1991) .................................................9

Huang v. Sentinel Gov't Sec., 657 F. Supp. 485 (S.D.N.Y. 1987).....................................9, 13

In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204 (2d Cir. 2003) ..........................4, 5, 9

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ...............................................5

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) .....................................................7, 10

Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972)............8, 9

Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87 (2d Cir. 1975)..................................13

Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246 (S.D.N.Y. 2003) .............................7

<u>Metropolitan Life Ins. Co. v. Robertson-CECO Corp.</u>, 84 F.3d 560 (2d Cir. 1996) .........5, 6

<u>Schenker v. Assicurazioni Genereali S.p.A., Consol.</u>, No. 98 Civ. 9186,
2002 WL 1560788 (S.D.N.Y. July 15, 2002) ....................................................15

<u>Shaffer v. Heitner</u>, 433 U.S. 186, 215-16 (1977)...........................................10

<u>Second Amendment Found. v. U.S. Conference of Mayors</u>, 274 F.3d 521
(D.C. Cir. 2001) ...........................................................................3, 4

<u>S.E.C. v. Unifund SAL</u>, 910 F.2d 1028 (2d Cir. 1990).....................................9

<u>Southridge Capital Mgmt., LLC v. Lowry</u>, 188 F. Supp.2d 388 (S.D.N.Y. 2002) ..........4

**<u>Federal Rules and Statutes:</u>**

ATA, 18 U.S.C. § 2334(a) .............................................................6

Fed.R.Civ.P. 12(b)(2) ...............................................................1, 4

Fed.R.Civ.P. 4(k)(2) ................................................................5, 6

## INTRODUCTION

Defendant Wael Jelaidan, by and through undersigned counsel, submits this Memorandum of Law in support of his motion to dismiss Plaintiffs' First Amended Complaint ("Complaint"), under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

This Court lacks personal jurisdiction over Mr. Jelaidan because he does not do any business in, own any property in, and has absolutely no connection with the United States. Nor have Plaintiffs adequately pled that Mr. Jelaidan has purposefully directed any tortious activities towards the United States or conspired with anyone to do the same. Simply put, Mr. Jelaidan lacks the necessary minimum contacts to trigger personal jurisdiction in a United States court, and thus, the Complaint against him must be dismissed.

## I.      FACTUAL BACKGROUND

Wael Jelaidan has been and is a respected officer of Muslim charities in the Middle East. Through his charity work, Mr. Jelaidan devotes his life to helping the poor, the needy and society in general. Mr. Jelaidan wants nothing more than to make society a better place. A mild-mannered and gentle man, Mr. Jelaidan is the antithesis of the monsters who committed the atrocious attacks on September 11, 2001. Mr. Jelaidan condemns those who perpetrated the attacks and is appalled that the Plaintiffs would connect him with such individuals.

Mr. Jelaidan resides at Al-Salama District, Jeddah in the Kingdom of Saudi Arabia, and his principal place of business is located at Beshawari Building, Madinah Road, Sari Road intersection, Jeddah, Kingdom of Saudi Arabia. See Affidavit of W.

Jelaidan, attached as Ex. 1.  In Saudi Arabia, he serves as the Secretary General of Rabita Trust, a charitable organization located in Islamabad, Pakistan, which serves the sole purpose of repatriating and rehabilitating 40,000 Pakistani families (Biharis) stranded in Bangladesh as a result of the 1970 Indo-Pak War.  See Ex. 1.  According to the Complaint, Mr. Jelaidan also served as a director of the Saudi Joint Relief Committee (SJRC) in Kosovo as well as the Saudi Red Crescent.  See First Am. Compl. ("FAC") at ¶¶ 125, 193.

As may be already apparent, Mr. Jelaidan does not own any property in, have any investments or bank accounts in, and does not do any business in the United States, with the United States, or with any United States based entity.  See Ex. 1.  In short, he has no ongoing connections, whatsoever, with the United States and should be dismissed from this lawsuit.

## SUMMARY OF ALLEGATIONS AGAINST WAEL JELAIDAN

The Complaint fails to allege that Mr. Jelaidan has any regular contacts with the United States, has ever directed any tortious action aimed at the United States, has ever conspired with anyone to direct a tortious action aimed at the United States or took any action that proximately caused the attacks on September 11, 2001.

The allegations against Mr. Jelaidan are as follows:

- The United States government designated Mr. Jelaidan as a supporter and/or associate of terrorists.  See FAC at ¶¶ 65, 117.

- Mr. Jelaidan was an official of Benevolence International Foundation (BIF). See id. at ¶ 91.

- Mr. Jelaidan headed the Muslim World League (MWL) office in Peshawar, Pakistan.  See id. at ¶ 117.

- Mr. Jelaidan served as the Director General and a member of the Board of Trustees of Rabita Trust.  See id. at ¶¶ 117, 212.

- Mr. Jelaidan was a founding member of Al Qaeda.  See id.

- Mr. Jelaidan is associated with several individuals and entities linked to Al Qaeda.  See id. at ¶ 117.

- Mr. Jelaidan met with Osama bin Laden ("OBL") in the summer of 2000 in Pakistan.  See id.

- Mr. Jelaidan directed organizations that have provided financial and logistical support to Al Qaeda.  See id.

- Mr. Jelaidan served as a director of the SJRC in Kosovo.  See id. at ¶ 125.

- Mr. Jelaidan served as an officer of the Saudi Red Crescent.  See id. at ¶ 193.

- A raid on Benevolent International Foundation's ("BIF") offices in Bosnia allegedly yielded a letter on Saudi Red Crescent stationary including a note at the bottom from OBL to Mr. Jelaidan stating that Al Qaeda has an extreme need for weapons.  See id. at ¶ 196.

As the Plaintiffs in the Burnett and Ashton actions have done, the Federal Insurance Plaintiffs are likely to argue that personal jurisdiction exists over Mr. Jelaidan under some form of the "effects test."  Yet, not a single one of the allegations listed above connects Mr. Jelaidan with the September 11th attacks, which are the minimum contacts foundation for Plaintiffs' assertion of personal jurisdiction.  Not only are most of the allegations conclusory and unsubstantiated, but they fail to connect Mr. Jelaidan with

the United States in any manner or show that he knew of or assisted in causing the

September 11th attacks.

## II.   LEGAL ANALYSIS

### The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over Wael Jelaidan

The Court must dismiss Plaintiffs' Complaint for lack of personal jurisdiction

under Rule 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts,

connection or nexus between Wael Jelaidan and the United States sufficient to give rise

to personal jurisdiction over Mr. Jelaidan.

### A.   Standard of Review

Under Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* case

that personal jurisdiction exists over the defendant.  See In re Magnetic Audiotape

Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  At this stage of the proceedings, "all

allegations are construed in the light most favorable to the plaintiff and doubts are

resolved in the plaintiff's favor."  Southridge Capital Mgmt., LLC v. Lowry, 188 F.

Supp.2d 388, 397 (S.D.N.Y. 2002).  However, to survive a motion to dismiss under Rule

12(b)(2), the plaintiff must allege facts connecting the defendant with the forum.  See

Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir.

2001) (citation omitted).  Moreover, the Supreme Court has cautioned that special care

should be exercised when extending notions of personal jurisdiction to alien defendants.

See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114-15 (1987).  Consistent

with the Due Process Clause of the 5th Amendment, a Court may exercise personal

jurisdiction over a defendant only where the defendant has "certain minimum contacts …

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

   **B.    Legal Background**

   Under the "minimum contacts" inquiry of International Shoe Co. a distinction is made between general jurisdiction and specific jurisdiction.  See Metropolitan Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 1996).  General jurisdiction exists over a defendant if the defendant has "continuous and systematic" contacts with the forum.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415-416 (1984).  Alternatively, where the claims at issue are related to or arise out of the defendant's contacts with the forum, a court may exercise specific jurisdiction over the defendant.  See id. at 414.  Specific jurisdiction is satisfied where "the Defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

   In performing the "minimum contacts" analysis, the service of process provision at issue determines the relevant forum against which to measure minimum contacts. Where service of process is based on a federal statute providing for nationwide service of process or on Fed.R.Civ.P. 4(k)(2), essentially the federal long-arm statute, minimum contacts are measured by the defendant's contacts with the United States as a whole, and not a particular state.  See In re:  Magnetic Audiotape Antitrust Litig., 334 F.3d at 207 (holding that defendants minimum contacts should be measured with regard to the United States as whole where § 12 of the Clayton Act provides for worldwide service of process).  See also Dardana Ltd. v. A.O. Yugankneftegaz, 317 F.3d 202, 207 (2d Cir.

2003) (holding that where personal jurisdiction is based on Fed.R.Civ.P. 4(k)(2), the due

process analysis involves contacts with the United States as a whole).  In the case herein,

Plaintiffs are likely to argue that Mr. Jelaidan is subject to this Court's personal

jurisdiction based on the ATA, 18 U.S.C. § 2334(a) ("Process in such a civil action may

be served in any district where the defendant resides, is found, or has an agent"), or

Fed.R.Civ.P. 4(k)(2), both of which provide for nationwide service of process.  Given

that Mr. Jelaidan has accepted service of process, the sole issue before the Court is

whether Mr. Jelaidan has the necessary minimum contacts with the United States to

trigger personal jurisdiction.

### C.    Wael Jelaidan Lacks Minimum Contacts with the United States for General Personal Jurisdiction

Under the concept of general jurisdiction, Plaintiffs bear the burden of

establishing that Mr. Jelaidan has "continuous and systematic" contacts with the United

States.  See Metropolitan Life Ins. Co., 84 F.3d at 568.  However, Plaintiffs utterly fail to

plead any meaningful nexus between Mr. Jelaidan and the United States; not a single

allegation within the entire Complaint connects Mr. Jelaidan with the United States.[1]

Unable to directly connect Mr. Jelaidan with the United States, Plaintiffs may

contend that personal jurisdiction exists over Mr. Jelaidan through his role as a former

BIF official, former head of the MWL office in Pakistan, Secretary General of Rabita

Trust, a former SJRC director in Kosovo and/or a former officer of the Saudi Red

Crescent.  See FAC at ¶¶ 91, 117, 125, 193.  Assuming the Court has personal

jurisdiction over one of the listed entities, which the Plaintiffs must prove, personal

---

[1] Plaintiffs also fail to allege that Mr. Jelaidan has any "continuing and systematic" contacts with New York or Washington, D.C., thereby, precluding jurisdiction over Mr. Jelaidan pursuant to those two states' respective long-arm statutes.

jurisdiction over a corporation does not automatically provide justification for personal jurisdiction over the individual officers and employees of that corporation. See Calder v. Jones, 465 U.S. 783, 790 (1984); Keeton v. Hustler Magazine, 465 U.S. 770, 781 n. 13 (1984).

Generally, "each defendant's contacts with the forum State must be assessed individually." Keeton, 465 U.S. at 781, n. 13. The only exception is where the corporation doing business in the forum is acting as the agent of the corporate officer. See Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246, 253, n. 5 (S.D.N.Y. 2003). In such a situation, personal jurisdiction may be imputed to the individual officer only where the plaintiff shows that:

> [T]he agent transacting business engaged in purposeful activity in the [forum] (1) that related to the … underlying … lawsuit, (2) that was taken for the benefit and with the knowledge of the defendant, and (3) over which the defendant exercised some control.

H.S.W. Enter., Inc. v. Woo Lae Oak, Inc., 171 F. Supp.2d 135, 145 (S.D.N.Y. 2001).

As with many of the other defendants in this lawsuit, the Plaintiffs have arguably failed to allege that either BIF, SJRC of Kosovo, Saudi Red Crescent, the Pakistani office of MWL or Rabita Trust engaged in any activity within the United States related to the 9/11 attacks. Even if Plaintiffs have alleged such, there is not a single allegation in the complaint that any purposeful activity by the aforementioned entities in the United States related to the September 11th attacks was taken for the benefit of or with the knowledge of Mr. Jelaidan. Nor are there any allegations that Mr. Jelaidan exercised any degree of control over such activity.

As stated above, Mr. Jelaidan is a resident of the Kingdom of Saudi Arabia. See Ex. 1. He does not do any business with the United States or in the United States, and he

does not own any property there.  See id.  In fact, Mr. Jelaidan works for the Rabita

Trust, an Islamic charity, which does not raise any money in the United States, and

conducts its relief efforts solely in Pakistan and Bangladesh.  See Ex. 2 attached,

Affidavit of W. Jelaidan, as Secretary General of the Rabita Trust.  The Plaintiffs

completely fail to plead that Mr. Jelaidan maintains *any*, let alone the requisite

"substantial, continuous and systematic" contacts with the United States to support

general personal jurisdiction.  See Helicopteros Nacionales de Colombia, S.A., 466 U.S.

at 413-15.

### D.    Wael Jelaidan Lacks Minimum Contacts with the United States Under the Effects Test

Not only do Plaintiffs fail to plead that general jurisdiction exists over Mr.

Jelaidan, but they also fail to plead that Mr. Jelaidan purposefully directed any tortious

activity towards the United States under the "effects test."  The "effects test" holds that a

foreign defendant may be subject to personal jurisdiction within the United States if that

defendant commits an intentional wrongful act outside of the forum directed at an entity

or individual within the forum.  See Calder, 465 U.S. at 789-90.  Accordingly, Mr.

Jelaidan is subject to personal jurisdiction within the United States only if Plaintiffs have

pled that:  1) His activities outside of the United States caused the 9/11 attacks; 2) The

9/11 attacks were a "direct and foreseeable result" of his conduct; and 3) He knew, or had

good reason to know, that his conduct would result in the 9/11 attacks.  See Leasco Data

Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1338-1341 (2d Cir. 1972).  Even if

the Plaintiffs allege, which they have not done, that the 9/11 attacks were the result of

acts committed by Mr. Jelaidan outside of the United States, this in and of itself is not

enough to subject Mr. Jelaidan to personal jurisdiction in this Court.  See id.

The "effects test" is hardly a lax doctrine subject to minimal judicial scrutiny.  For example, the Second Circuit has held that the "effects test" is satisfied only where the defendant is a *primary participant* in the intentional wrongdoing.  See In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208 (emphasis added).  Moreover, in order to meet the causation element of the "effects test" Plaintiffs must plead more than some nonspecific allegation that Mr. Jelaidan caused the 9/11 attacks.  Rather, Plaintiffs must plead a *close causal connection* between the out of forum actions of Mr. Jelaidan and the 9/11 attacks in the United States.  See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (emphasis added).  See also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990) (holding that not every causal connection between action abroad and ultimate injury in the United States will suffice); Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (holding that the standard for causation under the "effects test" "is somewhat more demanding than just 'some causal relation'").

Likewise, the Second Circuit has held, with regard to foreseeability, that "the 'low floor' of foreseeability needed in the tort context is not enough to support personal jurisdiction …."  Leasco Data Processing Equip. Corp., 468 F.2d at 1330.  See also Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that "it is not enough that causing an injury within the forum may be foreseeable, within the meaning of proximate causation and tort liability").  The Plaintiff must meet a higher burden by pleading that the effect within the forum occurred "as a direct and foreseeable result of the conduct outside the territory."  Leasco Data Processing Equip. Corp., 468 F.2d at 1341.

<u>The Terrorist Designation Allegation</u>

Plaintiffs allege that Mr. Jelaidan has been designated as a supporter and/or associate of terrorists by the United States government.  <u>See</u> FAC at ¶¶ 65, 117.  First and foremost, Mr. Jelaidan denies any support for terrorism.  Moreover, even assuming the legitimacy of the designation, which is in doubt, the Treasury Department statement regarding the designation fails to causally connect Mr. Jelaidan as a primary participant in the September 11th attacks.

Close review of the Treasury Department statement reveals that it does little more than raise a series of "guilt by association" inferences by commenting on meetings and associations between Mr. Jelaidan and Al Qaeda members.  <u>See</u> FAC at ¶ 117.  In fact, the only activity attributed to Mr. Jelaidan in the statement is the claim that Mr. Jelaidan "directed organizations that have provided financial and logistical support to al –Qa'ida." <u>Id.</u> at ¶ 117.  Notably, this statement does not allege that Mr. Jelaidan provided financial and logistical support; it alleges organizational support to Al Qaeda.  Mr. Jelaidan, as an officer of these unnamed organizations, is subject to jurisdiction on account of organizational support only if he personally participated.  <u>See</u> <u>Keeton</u>, 465 U.S. at 781 n.13; <u>Shaffer v. Heitner</u>, 433 U.S. 186, 215-16 (1977).  The critical element of personal participation is missing from the Complaint, along with how or when he participated in providing such support.  Even if such an inference could be drawn, this allegation fails to causally connect the provision of such support to the 9/11 attacks, let alone raising an inference that the attacks were the direct and foreseeable result of such support and that Mr. Jelaidan had reason to know as much.

<u>The BIF, SJRC, Saudi Red Crescent, Rabita Trust and MWL Allegations</u>

Plaintiffs claim that Mr. Jelaidan served as an officer or director for BIF, SJRC of Kosovo, the Saudi Red Crescent, Rabita Trust and MWL of Pakistan.  <u>See</u> FAC at ¶¶ 91, 117, 125, 193, 205, 212.  From that point, Plaintiffs proceed to accuse these organizations of being fronts for Al Qaeda.  <u>See</u> <u>e.g.</u> FAC at ¶ 79.  Assuming Plaintiffs have alleged a sufficient causal connection between the alleged organizational action of these entities and the 9/11 attacks, a dubious assumption, Plaintiffs once again fail to allege that Mr. Jelaidan took any actions as an officer or director of those organizations, which proximately caused, and directly and foreseeably resulted in the 9/11 attacks.  As explained above, provided there is no allegation that Mr. Jelaidan personally participated in the organizational support for Al Qaeda, there can be no jurisdiction over him as a corporate officer based on the organizational actions of the entities in question.

Like the Treasury Department statement, Plaintiffs are left to hang their hat on one quasi-specific allegation that a March, 2002, raid of BIF's Bosnian office produced a letter to Abu Rida with a note at the bottom, allegedly from OBL to Mr. Jelaidan, which stated that Al Qaeda has an extreme need for weapons.  <u>See</u> FAC at ¶ 196.  Absent from the Complaint is a date for the letter, to whom the weapons were directed, for what purpose the weapons were directed and the identity of the weapons' destination.  A similar raid in Illinois produced documents dated as far back as 1994.  <u>See</u> FAC at ¶ 98.  This letter could have been just as dated.  Moreover, given that the letter was found in Bosnia, the weapons could have been destined for the conflict in the former Yugoslavia.  This relatively vague note hardly creates the inference that Mr. Jelaidan, as a primary participant, in fact provided weapons at some unknown time, which somehow

proximately caused and foreseeably resulted in the 9/11 attacks, and which Mr. Jelaidan had reason to know would result in the 9/11 attacks.

Founding Al Qaeda Member Allegation

Plaintiffs contend that Mr. Jelaidan was a founding member of Al Qaeda.  See FAC at ¶¶ 117.  According to the Complaint, Al Qaeda appears to have been formed in 1989, twelve years before the September 11th attacks.  See FAC at ¶ 77.  Mr. Jelaidan's undefined role in helping to found Al Qaeda twelve years before the tort for which Plaintiffs attempt to hold him responsible is far too remote to give rise to any foreseeable and direct causal relationship between Mr. Jelaidan's alleged actions in 1989 and the 9/11 attacks in the United States forum more than a decade later.

Allegations of Associations with OBL and Associates

Plaintiffs assert that Mr. Jelaidan has associated with or has been linked with OBL and various other Al Qaeda leaders.  See FAC at ¶¶ 117.  These allegations are the quintessential "guilt by association" allegations; prejudicial allegations intended to make Mr. Jelaidan look like a bad guy without alleging that he has done anything wrong at all. Even if Mr. Jelaidan met with Bin Laden in the summer of 2000, surely this does not raise an inference that Mr. Jelaidan's meeting proximately caused the 9/11 attacks a year later, made them more foreseeable or provides a basis for finding that Mr. Jelaidan knew that his meeting would result in those same attacks.  If this were so, every individual who met with and interviewed Bin Laden in the 1990s should be similarly haled into Court, like Mr. Jelaidan.  There is no inference raised that any meeting or more general association between Mr. Jelaidan and Al Qaeda leaders amounts to a causal connection between any actions on the part of Mr. Jelaidan and the horrific 9/11 attacks.

Under the "effects test's" primary participant requirement, heightened standards of causation and foreseeability and the greater scrutiny afforded to "effects test"-based claims of personal jurisdiction in the international context, Plaintiffs' Complaint falls far short of sufficiency.  See Asahi, 480 U.S. at 113 (holding that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders); Huang, 657 F. Supp. at 489, *citing*, Bersch v. Drexel Firstone, Inc., 519 F.2d 974, 1000 (2d Cir. 1975) (citation omitted) (holding that "when a court bases personal jurisdiction on effects in a [forum] caused by acts done elsewhere, it must proceed 'with caution, particularly in an international context'").  There is no basis in the Complaint for the conclusion that Mr. Jelaidan's actions are causally connected to the September 11th attacks or that he purposefully directed his actions towards committing a tort within the United States.

### E.     Personal Jurisdiction Over Wael Jelaidan Does Not Arise from Allegations of Conspiracy, and Aiding and Abetting

Despite Mr. Jelaidan's lack of minimum contacts with the United States, Plaintiffs appear to allege that he is subject to personal jurisdiction because he conspired with other Defendants, including some allegedly having "minimum contacts," to cause the terrible 9/11 attacks.  See FAC at ¶ 623-26.  While New York federal courts recognize conspiracy-based personal jurisdiction, "the bland assertion of conspiracy or agency is insufficient to establish jurisdiction …."  Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975) (finding that there were no allegations of specific facts connecting the defendant with any activity within the New York forum).  See also Galeri Gmurzynska v. Hutton, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003) (citation omitted)

(holding that conclusory allegations and speculation of conspiracy-based personal jurisdiction will not survive a motion to dismiss for lack of personal jurisdiction).

To establish jurisdiction over a non-resident conspirator:

> [O]n the basis of the [forum] acts of a co-conspirator, the plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in [the forum], and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-[forum] tortfeasor.

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp.2d 369, 394 (S.D.N.Y. 2002).  Accordingly, Plaintiffs must establish a *prima facie* case of conspiracy by alleging "the primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the corrupt agreement; (c) the parties' intentional participation in the furtherance of the common plan or purpose; and (d) the resulting damage or injury."  E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc., No. 00 CUV, 8670, 2003 WL 22064259 at *12 (S.D.N.Y. Sept. 5, 2003).  Furthermore, Plaintiffs must establish Mr. Jelaidan's membership in the conspiracy by alleging:

> (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in [the forum], (2) that the [forum] co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in [the forum] acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

Id. (citation omitted)

Plaintiffs' "bare bones" attempt to establish personal jurisdiction over Mr. Jelaidan by piggybacking the actions of alleged co-conspirators with alleged contacts to the forum onto Mr. Jelaidan must fail.  The Complaint contains absolutely no factual allegations supporting:  1) The inference that Mr. Jelaidan was a member of a "9/11 Conspiracy"; 2) That he had any prior knowledge about the 9/11 attacks; 3) The existence

of an agency relationship between Mr. Jelaidan and those who actually perpetrated the 9/11 attacks within the United States; 3) The theory that Mr. Jelaidan had an awareness of the effects on the United States of any activity that he conducted; 4) The theory that the 9/11 attacks were for the benefit of Mr. Jelaidan; or 5) The theory that Mr. Jelaidan consented to, directed or exercised any control over the perpetrators of the 9/11 attacks within the United States.

A careful review of the Complaint reveals only the most vague, catch-all and conclusory allegations of conspiracy, along with charges of "guilt by association," which hardly form a solid foundation in fact to support the inference that Mr. Jelaidan was a part of a "9/11 Conspiracy." See FAC at ¶¶ 65, 117, 623-26.  The Courts have held that "such wholly non- specific allegations cannot form the 'sole basis' for connecting the moving parties to the alleged conspiracy." Schenker v. Assicurazioni Genereali S.p.A., Consol., No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002).  See also Second Amend. Found., 274 F.3d at 524 (holding that "[t]he allegation that the [Defendants] 'conspired together' represents nothing more than a legal conclusion, which we have held 'does not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction'").

Although Rule 8 establishes a liberal pleading standard, the "mere incantation of the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the Rule's requirements." Galeri Gmurzynska, 257 F. Supp.2d at 631 (citation omitted). Plaintiffs have failed to meet even this lowest of standards because they have failed to allege any facts establishing or even supporting Mr. Jelaidan's involvement in a "9/11 Conspiracy."  Plaintiffs have only succeeded in alleging the type of unilateral activity by

third parties that the "purposeful availment" requirement is designed to eliminate.  See

Burger King Corp., 471 U.S. at 475.

**III.**     **CONCLUSION**

As Judge Robertson held in the pre-consolidation decision of Burnett v. Al

Baraka Inv. and Dev. Corp., 274 F. Supp.2d 86, 103-04 (D.D.C. 2003):

> Given the extreme nature of the charge of terrorism, fairness requires
> extra-careful scrutiny of plaintiffs' allegations as to any particular
> defendant, to ensure that … no inferences are accepted that are
> unsupported by the facts set out in the 3 AC.

Extra-careful scrutiny of the Complaint reveals that Plaintiffs' allegations in support of

personal jurisdiction over Mr. Jelaidan are general, conclusory, and unsupported by the

facts.  Accordingly, the Court should dismiss the Complaint against Wael Jelaidan.


Respectfully submitted,


_____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Christopher R. Smith, Esq., C.S., 5455
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorneys for Defendant Wael Jelaidan*

Dated:  July 30, 2004