## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001          )          03 MDL No. 1570 (RCC)

_____)          ECF Case


This document relates to:

C.A. No. 03-CV-9849 (RCC)

THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*


## REPLY BRIEF IN SUPPORT OF
## DR. ABDULLAH BIN ABDUL MOHSEN AL-TURKI'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT



Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158)


DATED:  July 30, 2004

## <u>INTRODUCTION</u>

Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158), in his motion to dismiss (Docket No. 85), argued that dismissal was warranted, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because this Court lacks subject matter jurisdiction over plaintiffs' claims against him, as he has sovereign immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA").  In response, plaintiffs attempted to present what they claim are additional factual allegations – not in the Complaint – to support keeping Dr. Al-Turki in this lawsuit under two exceptions to the FSIA.  Plaintiffs fail to meet the requirements of either exception.

Dr. Al-Turki also argued that this Court lacks personal jurisdiction over him, since he lacks the requisite contacts with this country and that plaintiffs' attempt to serve him by publication was improper.  Plaintiffs now claim, with no factual support, that Dr. Al-Turki "purposefully directed his conduct at the United States."  Opp. at 5.  Plaintiffs' allegations, as explained by Dr. Al-Turki's affidavit, <u>see</u> Mot., at 4-5 & Ex. 1 (Decl.), ¶¶ 16-19, show only that a businessman in Spain engaged in preliminary negotiations with Dr. Al-Turki, which never led to a formal contract.  These allegations have nothing to do with showing that Dr. Al-Turki intentionally directed material support to the al Qaeda attacks on the United States.

## <u>ARGUMENT</u>

I.    **The Foreign Sovereign Immunities Act Precludes This Court's Exercise of <u>Subject Matter Jurisdiction Over Plaintiffs' Claims Against Dr. Al-Turki.</u>**

Plaintiffs concede that Dr. Al-Turki "has been an official of the Saudi government."  Opp. at 9.  Thus, the threshold issue is whether the plaintiffs have satisfied their "burden of going forward with evidence showing that, under [one or more] exceptions to the FSIA, immunity should not be granted."  <u>Virtual Countries, Inc. v. Republic of South Africa</u>, 300 F.3d 230, 241 (2d Cir. 2002).  Only if one or more of FSIA's exceptions, 28 U.S.C. § 1605(a)(1)-(7),

apply, will this Court have subject matter jurisdiction over plaintiffs' claims against Dr. Al-Turki. Id. Neither the "commercial activity," nor the "tortious act" exceptions, 28 U.S.C. § 1605(a)(2), (5), upon which plaintiffs rely, see Opp. at 10-13, can plaintiffs establish in this case.

Dr. Al-Turki, in his motion to dismiss, first argued that he never engaged in any commercial transactions with Zouaydi, a businessman in Spain, as plaintiffs alleged (Complaint, ¶¶ 384, 386, 388-390), since Zouaydi merely solicited Dr. Al-Turki to enter into transactions, which he did not do, thus there were no commercial acts that could trigger FSIA's commercial activity exception. Mot., at 9-11. Dr. Al-Turki then argued that plaintiffs' vague and conclusory allegations about this unconsummated relationship did not prove that he had any involvement with, or knowledge of, any acts by Zouaydi whom plaintiffs allege funded al Qaeda, so there were no tortious acts that could trigger FSIA's tortious act exception. Mot., at 12-13.[1]

Plaintiffs' Opposition reiterated the allegations in their Complaint, improperly supplemented with additional documents, which they averred showed that Dr. Al-Turki's "business transactions," and his involvement with a legitimate charity, resulted in tortious acts through material support of al Qaeda. Opp., at 6-7, 10-13. Plaintiffs' old and new allegations, infra, fail to show that Dr. Al-Turki engaged in any transactions knowing that it would have a direct effect on the United States, or that he knew his activities would result in tortious acts.[2]

---

[1] Dr. Al-Turki also argued that plaintiffs' allegations in paragraphs 385, 391, and 426 of the Complaint were irrelevant or factually incorrect. Mot., at 5. Plaintiffs have conceded that these allegations have no bearing on their claims against Dr. Al-Turki, as they did not address them in their Opposition.

[2] Dr. Al-Turki refers this Court, and incorporates herein, the argument in Dr. Al-Obaid's reply brief that plaintiffs' allegation that he provided material support to al Qaeda means that they can only proceed under FSIA's state-sponsored terrorism exception, Section 1605(a)(7), which does not apply since Saudi Arabia is not designated. See Al-Obaid's Reply Brief, Part I.A (July 30, 2004) (incorporated herein by reference as restated in its entirety).

**A.      Plaintiffs' Allegations Regarding Dr. Al-Turki's Conduct are Insufficient to Trigger the Commercial Activity Exception to FSIA.**

Even if this Court were to consider plaintiffs' allegations that Dr. Al-Turki somehow provided material support to al Qaeda, which are not set forth in plaintiffs' Complaint, or the new allegations plaintiffs attempt to add through the Opposition, it must still find that those allegations are insufficient to allow the exercise of subject matter jurisdiction under FSIA's "commercial activity" exception, which has three discrete categories of commercial activity:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case– . . . (2) in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2) (bracketed numbering added).  Plaintiffs rely solely upon the third clause, which expressly requires that the defendant's "act causes a direct effect in the United States."  Opp. at 11.  However, the U.S. Supreme Court has held that this "direct effect" requirement must be based on "an immediate consequence of the defendant's activity," not some attenuated chain of causation.  See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis added); see also Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 390 (2d Cir. 2000) ("Thus, at the least, the 'act that caused a direct effect in the United States' . . . must be a 'but for' cause of the [actions] that are the ground of this suit.").  The Second Circuit has held that the commercial activity exception was inapplicable where the nexus between the defendant's actions and the plaintiffs' injuries was too attenuated.[3]

---

[3]  See Virtual Countries, 300 F.3d at 237-38 ("At a minimum, two independent kinds of actors . . . intervened between [defendant's act] and any alleged injurious effect on the plaintiff."); Transatlantic, 204 F.3d at 390-91 (acts of intervening entities could not be ascribed to defendant).

Plaintiffs' conclusory allegations about Dr. Al-Turki, even if accepted as sufficient, fail to satisfy Section 1605(a)(2)'s "direct effect" requirement, since intervening actors and events, over whom Dr. Al-Turki had no control, caused plaintiffs' injuries.

Plaintiffs' allegations and "inferences" regarding Dr. Al-Turki's commercial activities are a mixture of inconsequential facts and unsupported allegations to which this Court cannot give any weight.  Without any facts to support their claims, plaintiffs allege that Dr. Al-Turki entered into a contract with Zouaydi, and that as a result of that contractual relationship, Dr. Al-Turki provided money to Zouaydi that went "to al Qaeda cells in Germany."  <u>See</u> Opp., at 6, 11. However, plaintiffs' allegations, and newly-submitted facts and inferences, fail to counter Dr. Al-Turki's sworn statement that he did not enter into a contract with Zouaydi, after negotiations, and did not provide Zouaydi with funds.  <u>See</u> Mot., at 4 & Decl. (Ex. 1) at ¶ 16.[4]  Indeed, the most plaintiffs now say is that "it <u>appears</u> that the business transactions between Al-Turki and Zouaydi were part of this money laundering scheme," <u>see</u> Opp. at 6 (emphasis added), and even then, plaintiffs do not allege that Dr. Al-Turki knew of Zouaydi's alleged "money laundering scheme."[5]  Further, under Second Circuit precedent, plaintiffs cannot amend their Complaint by adding new allegations and inferences for the first time in an opposition to a dispositive motion.[6]

Even the new facts and inferences in plaintiffs' Opposition, however, fail to show any

---

[4] <u>Filetech S.A. v. France Telecom S.A.</u>, 157 F.3d 922, 932 (2d Cir. 1998) ("it was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction" under FSIA).

[5] Plaintiffs' admission, <u>see</u> Opp., at 6, that the relationship was only apparent, and cannot be proven, means that their conclusion that "the money that Al-Turki's companies provided to al Qaeda went to the Hamburg al Qaeda cell, to those who actually carried out the September 11 attacks," <u>id.</u> at 11, is unsupported by any facts or reasonable inferences thereof.  This Court cannot give credence to plaintiffs' unsupported, and purely speculative, conclusions.

[6] <u>See</u> <u>Wright v. Ernst & Young, LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998); <u>Jacobson v. Peat, Marwick, Mitchell & Co.</u>, 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

agreement between Dr. Al-Turki and someone "apparently representing Zouaydi," see Opp., at 6 & Ex. 1, much less any activity by Dr. Al-Turki under that agreement that assisted al Qaeda.  It is hornbook law – in both Spain and New York –  that a contract is not formed absent offer, acceptance, and consideration.[7]  Preliminary negotiations, which plaintiffs allege are evidenced by their Exhibit 1, do not prove contract formation, as required to show a definite commercial act.  Plaintiffs also submit a copy of a check from Zouaydi to Dr. Al-Turki, see Opp., at 6 & Ex. 2, which they now aver supports a claim of a contractual relationship between the two.  However, plaintiffs can only speculate "that the check was in fact cashed," id., which is insufficient to counter Dr. Al-Turki's sworn statement that he merely received a copy of the check, the original of which was held by Zouaydi as a "guarantee" for the proposed construction project.  See Mot., at 4 & Decl. (Ex. 1) at ¶ 16.  Even if the original check were sent to Dr. Al-Turki, which is nowhere demonstrated in the documents relied upon by plaintiffs, that alone fails to support plaintiffs' allegations that Dr. Al-Turki provided funds to Zouaydi, and through Zouaydi, to al Qaeda.  Instead, the check indicates funds flowed in the opposite direction – from Zouaydi to Dr. Al-Turki – which, if it had occurred (and it did not), would show that Dr. Al-Turki took funds away from Zouaydi, an alleged terrorist.  It shows nothing about Dr. Al-Turki contributing money to an alleged terrorist, or money to an al Qaeda cell in Hamburg.

Since plaintiffs support their allegations against Dr. Al-Turki with no evidence other than these two documents – a draft proposal and a copy of a check – they have failed to make out sufficient allegations that Dr. Al-Turki funded an alleged terrorist, Zouaydi, knowing that his

_____

[7] Oscar Productions, Inc. v. Zacharius, 893 F. Supp. 250, 255 (S.D.N.Y. 1995) (New York law); Civil Code of Spain, §§ 1261-79 (Spanish law) (J. Romanach transl., 1994) (excerpts attached hereto as Exhibit 1).  The Second Circuit has relied upon this translation of the Civil Code of Spain with respect to issues of Spanish contract law.  See Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A., 176 F.3d 601, 604 (2d Cir. 1999).

funds would go to the September 11 attacks.  Plaintiffs may be able to show that Zouaydi funded al Qaeda.  They have no facts that show that Dr. Al-Turki did so.

It is clear that even if plaintiffs' allegations are restated in some unimaginable way to suggest that Dr. Al-Turki gave money to Zouaydi, instead of taking money from Zouaydi, intervening events preclude jurisdiction over him in this case.  The Second Circuit has held that the presence of intervening actors and events "does not provide the requisite immediacy to establish jurisdiction" over such a defendant.  See Virtual Countries, 300 F.3d at 238.  Plaintiffs' counsel admitted, during oral argument before Judge Robertson, that plaintiffs "don't have a case against most of these defendants" because they could not show that "the person who receives the money says I'm going to send a thousand dollars to Mohammad Atta so he can get some flight simulator."  See Tr., at 77-78 (June 24, 2003) (excerpts attached hereto as Exhibit 2).  Plaintiffs' counsel was accurate – they have proffered absolutely no facts, or even reasonable inferences, that Dr. Al-Turki knew that Zouaydi would engage in other than legitimate activities.

This Court should similarly find that plaintiffs' allegations and unfounded inferences regarding Dr. Al-Turki's commercial activities, no matter how broadly construed, fail to show that those acts "cause[d] a direct effect in the United States," as Section 1605(a)(2) requires.

**B.      Plaintiffs' Allegations Regarding Dr. Al-Turki's Conduct are Insufficient to Trigger the Tortious Act Exception to FSIA.**

The tortious act exception to FSIA, Section 1605(a)(5), also fails to support the exercise of subject matter jurisdiction over plaintiffs' claims against Dr. Al-Turki, since plaintiffs cannot show their injuries are "caused by the tortious act or omission . . . of any official or employee of that foreign state while acting within the scope of his office or employment."  The key phrase in this exception is "caused by" – thereby ensuring that any attenuated chain of causation or

6

speculative allegation does not support this exception.[8]  As the Second Circuit expressly held,

conclusory allegations cannot suffice to exercise jurisdiction under FSIA:

> To sustain federal jurisdiction on generic allegations . . . absent an assertion or
> evidence of a factual predicate for such jurisdiction, would invite plaintiffs to
> circumvent the jurisdictional hurdle of the FSIA by inserting vague and
> conclusory allegations of tortious conduct in their complaints – and then to rely
> on the federal courts to conclude that some conceivable non-discretionary tortious
> act falls within the purview of these generic allegations under the applicable
> substantive law.

Robinson, 269 F.3d at 146; see also Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,

215 F.3d 247, 253 (2d Cir. 2000) ("conclusory allegations" insufficient for FSIA jurisdiction).

Plaintiffs claim that they meet the tortious acts exception, alleging that Dr. Al-Turki had

"business ventures with Zouaydi."  However, they fare no better here than under the

"commercial activities" exception.  Plaintiffs speculate that the preliminary negotiations

"appear" to be "part of" a money laundering scheme, Opp. at 6, but set forth no competent

evidence that Dr. Al-Turki had any knowledge of such a scheme, let alone that he consummated

the proposed contract, or participated in tortious activities under the contract.  The only thing

that plaintiffs have shown is what Dr. Al-Turki states in his affidavit:  his agent had negotiations

with Zouaydi, whom Dr. Al-Turki believed was involved in legitimate real estate development.

The negotiations led to no contract and no joint activities.  Thus, plaintiffs' speculations

regarding Dr. Al-Turki's activities are insufficient to invoke the tortious act exception:

> In the FSIA context, plaintiffs' allegations that (i) Prince Turki or Prince Sultan
> funded (ii) those who funded (iii) those who carried out the September 11th
> attacks would stretch the causation requirement of the noncommercial tort
> exception not only to "the farthest reaches of the common law," but perhaps

---

[8]  See Robinson v. Malaysia, 269 F.3d 133, 146 (2d Cir. 2001) ("the conclusory nature of Robinson's allegations alone would give us pause before we would allow them to sustain jurisdiction"); Burnett, 292 F. Supp. 2d at 19 (causation requirement means that this exception "should be narrowly construed").

beyond, to terra incognita.  I find, accordingly, that the noncommercial tort exception afforded by § 1605(a)(5) is not applicable.

Burnett, 292 F. Supp. 2d at 20.  Here, plaintiffs' allegations that Dr. Al-Turki somehow funded Zouaydi, who in turn funded al Qaeda, is contradictory to the facts, which show no more than that Zouaydi intended money to go to Dr. Al-Turki.

## II.     Even if Plaintiffs Overcome Their Burden Under FSIA, This Court Still Does Not Have Personal Jurisdiction Over Dr. Al-Turki.

To counter defendant's argument that this Court lacks personal jurisdiction over Dr. Al-Turki, because he has not done anything that connects him to this forum, or to the acts that allegedly supported the September 11 attacks, plaintiffs now claim that Dr. Al-Turki somehow supported al Qaeda.  Opp. at 5.  However, the hodgepodge of facts and inferences they present fails to support any claim that he proximately caused the September 11 attacks, as is required to show personal jurisdiction.  Thus, plaintiffs still cannot "allege facts constituting a *prima facie* showing of personal jurisdiction," either in their Complaint, or in their newly modified factual allegations, as is required.  PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).[9]

With respect to the legal standard for personal jurisdiction, and plaintiffs' improper amending of their Complaint through adding new facts in their Opposition, Dr. Al-Turki incorporates the discussion in Mr. Al-Husaini's reply brief.  See Al-Husaini's Reply Brief, at 1-4 (July 23, 2004) (Docket No. 331) (incorporated herein by reference as restated in its entirety).

Plaintiffs' Opposition sets forth two paragraphs of additional facts which they aver

_____

[9] Dr. Al-Turki's motion to dismiss set forth three defenses to support his argument that personal jurisdiction was improper under a general jurisdiction theory, a specific jurisdiction theory, or the forum's long-arm statute.  The only theory upon which plaintiffs now rely is that he "purposefully directed his conduct at the United States," see Opp. at 4-5, thereby conceding that jurisdiction is not proper under the other approaches.  It is settled law that when a defense is raised in a dispositive motion, but plaintiffs fail to respond to that defense, plaintiffs have conceded the defense.  Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

support their claim that Dr. Al-Turki provided material support to al Qaeda.  <u>See</u> Opp. at 6-7.

Plaintiffs first allege that Dr. Al-Turki's business transactions with Zouaydi support the exercise

of personal jurisdiction.  <u>Id.</u> at 5-7.  However, their own evidence, *supra,* shows that these

"transactions" were never consummated and consisted merely of preliminary negotiations with

Zouaydi.  Plaintiffs have not proffered any competent evidence that Dr. Al-Turki provided funds

to Zouaydi, let alone that he knew that those funds would be diverted to al Qaeda.

Plaintiffs next allege that Dr. Al-Turki's role as Secretary-General of the Muslim World

League ("MWL") shows that he knew that MWL was supporting terrorism.  Opp. at 7.

However, this Court can take judicial notice of the fact that MWL has never been designated as a

terrorist entity or supporter of terrorism.[10]  At most, plaintiffs' allegations regarding MWL show

that one or more persons associated with MWL diverted its resources on a number of occasions

for illegal purposes.[11]  Certainly this falls far short of a showing, allegation, or reasonable

inference, that Dr. Al-Turki knew of and participated in those particular instances in which

MWL funds were diverted to alleged terrorist activities, or that he had knowledge that al Qaeda

would use these funds, ten years later, to strike at the United States.[12]  In fact, there is no

---

[10]  <u>See</u> Department of the Treasury, Office of Foreign Assets Control, "Specially Designated Nationals and Blocked Persons" (July 30, 2004), <http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf>.

[11]  The document that plaintiffs rely upon for their allegation that MWL "funded" terrorism – the Epstein and Kohlmann report (Opp. at 7 & Ex. 3) – in turn relies primarily upon an evidentiary proffer that was struck by the U.S. District Court as inadmissible hearsay in a material support prosecution.  <u>See</u> United States v. Arnaout, No. 02 CR 892, 2003 WL 255226, at *1-*2 (N.D. Ill. Feb. 4, 2003).  The Epstein and Kohlman report, at 2-3, also relies on several sources published in 1991 and 1993, to support the allegation that MWL funded al Qaeda.  However, that time period was several years <u>before</u> al Qaeda targeted the United States, as plaintiffs' own evidence shows.  <u>See</u> Pl. Opp. (Al-Husaini), Ex. 16, at 18 ("Bin Laden's first declaration of war" was in October 1996.) (Docket No. 272).

[12]  Although the U.S. government designated an individual and an entity associated with MWL, the designation announcements made no mention of the MWL itself.  <u>See</u> Treasury Department Statement on the Designation of Wa'el Hamza Julidan (Sept. 6, 2002); Treasury Department Releases List of 39 Additional Specially Designated Global Terrorists (Oct. 12, 2001) (attached hereto as Exhibits 3-4).

allegation that Dr. Al-Turki knew about any of these alleged diversions.

Taken together, plaintiffs' new and old allegations regarding Dr. Al-Turki fail to support any claim that he was a "primary participant" in the specific September 11 attacks as would be required for the exercise of personal jurisdiction over him in this case.  *In re* Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003).[13]

### III.   Plaintiffs Have Not Properly Served Dr. Al-Turki.

Plaintiffs' attempt to serve Dr. Al-Turki by publication in two newspapers – which he does not read or access – was substantively improper.  Dr. Al-Turki respectfully refers this Court, and incorporates herein, the discussion of plaintiffs' improper service of process in the reply brief filed by Mr. Al-Hussayen.  See Al Hussayen's Reply Brief, at Part III.B (July 23, 2004) (Docket No. 335) (incorporated by reference herein).  Therefore, this Court should find that service by publication on Dr. Al-Turki did not constitute adequate notice to him, and was not justified under the circumstances, where plaintiffs made no attempt to serve him directly.

### CONCLUSION

For the foregoing reasons, and those set forth in Dr. Al-Turki's motion to dismiss, this Court must dismiss plaintiffs' Third Amended Complaint for lack of subject matter jurisdiction under the FSIA, lack of personal jurisdiction, and improper service of process.

---

[13] Nor should this Court allow the plaintiffs an opportunity to conduct jurisdictional discovery (Opp., at 7), since under Second Circuit precedent, plaintiffs' conclusory allegations regarding Dr. Al-Turki are insufficient to allow them to engage in a fishing expedition.  See Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2d Cir. 1998) (plaintiffs' "conclusory non-fact-specific jurisdictional allegations" did not warrant discovery on that issue).

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
  Dr. Abdullah Bin Abdul Mohsen Al-Turki (D158)

DATED:  July 30, 2004

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____

Alan R. Kabat