# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

## REPLY BRIEF IN SUPPORT OF
## DR. ABDULLAH BIN SALEH AL-OBAID'S
## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Saleh Al-Obaid (D23)

DATED:  July 30, 2004

**INTRODUCTION**

Dr. Abdullah Bin Saleh Al-Obaid (D23), in his motion to dismiss (Docket No. 98), argued that dismissal was warranted, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because this Court lacks subject matter jurisdiction over plaintiffs' claims against him, due to his sovereign immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Plaintiffs, in their Opposition (Docket No. 280), presented additional factual allegations, not in the Complaint, which they argue should keep Dr. Al-Obaid in this lawsuit under the tortious act exception to the FSIA. However, plaintiffs fail to meet the requirements of this exception.

Dr. Al-Obaid also argued that this Court does not have personal jurisdiction over him, since he lacks the requisite contacts with this country, and that plaintiffs' attempt to serve him by publication was improper. Plaintiffs responded by claiming, with no factual support in their Complaint or in their Opposition, that Dr. Al-Obaid "purposefully directed his conduct at the United States." Opp. at 4. However, plaintiffs' allegations show nothing more than that Dr. Al-Obaid had an official role with several entities, but fail to allege that he knew about any illegal activities carried out by persons associated with those entities, as confirmed in Dr. Al-Obaid's affidavit, see Mot., at 4-5 & Ex. 1 (Decl.), ¶¶ 12-15. Thus, plaintiffs' allegations do not show that Dr. Al-Obaid intentionally directed material support to those who planned or carried out the September 11 attacks, such that this Court may exercise personal jurisdiction over him.

**ARGUMENT**

**I. The Foreign Sovereign Immunities Act Precludes This Court's Exercise of Subject Matter Jurisdiction Over Plaintiffs' Claims Against Dr. Al-Obaid.**

Plaintiffs concede that Dr. Al-Obaid "has been an official of the Saudi government." Opp. at 10. Thus, the threshold issue for this Court is whether the plaintiffs have satisfied their "burden of going forward with evidence showing that, under [one or more] exceptions to the

FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). Only if one or more of FSIA's exceptions, 28 U.S.C. § 1605(a)(1)-(7), apply, will this Court have subject matter jurisdiction over plaintiffs' claims against Dr. Al-Obaid. Id. However, plaintiffs cannot make out the "tortious act" exception, 28 U.S.C. § 1605(a)(5), upon which plaintiffs rely in this case. See Opp. at 10-12.

### A.  Plaintiffs' Argument that Dr. Al-Obaid Provided Material Support to al Qaeda Precludes the Tortious Act Exception to Foreign Sovereign Immunity under FSIA.

Plaintiffs now state that their theory of recovery against Dr. Al-Obaid is based on the allegation that he "provided material support to al Qaeda." Opp., at 7. However, given this argument, plaintiffs cannot proceed under the "tortious act" exception to FSIA. The provision of material support is governed by the state-sponsored terrorism exception to FSIA, Section 1605(a)(7), which applies when monetary damages "are sought against a foreign state for personal injury or death that was caused by . . . the provision of material support or resources." Plaintiffs cannot use this exception as Saudi Arabia has not been designated as a state sponsor of terrorism. Bettis v. Islamic Republic of Iran, 315 F.3d 325, 329 (D.C. Cir. 2003) (Under Section 1605(a)(7), "only a defendant that has been specifically designated by the State Department as a 'state sponsor of terrorism' is subject to the loss of its sovereign immunity."). Only seven countries have been so designated. See 31 C.F.R. § 596.201 (2004). Congress intentionally inserted "material support" in Section 1605(a)(7), so that "the omission of 'provision of material support' from § 1605(a)(5) should be treated as intentional." Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 20 n.5 (D.D.C. 2003).

Since none of the other FSIA exceptions includes the language of "material support" as

an enumerated act, these exceptions cannot be used as a basis for this Court to exercise subject matter jurisdiction over plaintiffs' claims that Dr. Al-Obaid provided material support to al Qaeda.[1]  Therefore, there is no jurisdiction under FSIA against Dr. Al-Obaid.

**B.  Plaintiffs' Allegations Regarding Dr. Al-Obaid's Conduct are Insufficient to Trigger the Tortious Act Exception to FSIA.**

Even if this Court were to consider plaintiffs' allegations that Dr. Al-Obaid somehow provided material support to al Qaeda, which nowhere are supported by the Complaint or new allegations in the Opposition, it must still find that those allegations are insufficient to allow the exercise of subject matter jurisdiction under FSIA's tortious act exception, Section 1605(a)(5). Plaintiffs cannot show their injuries are "caused by the tortious act or omission . . . of any official or employee of that foreign state while acting within the scope of his office or employment."  The key phrase "caused by" means that speculative allegations or attenuated chains of causation cannot support this exception.  See Robinson v. Malaysia, 269 F.3d 133, 146 (2d Cir. 2001) ("the conclusory nature of Robinson's allegations alone would give us pause before we would allow them to sustain jurisdiction"); Burnett, 292 F. Supp. 2d at 19 (causation requirement means that this exception "should be narrowly construed").

The Second Circuit has affirmed strongly that conclusory allegations cannot form the basis for a district court to exercise subject matter jurisdiction under FSIA:

> To sustain federal jurisdiction on generic allegations . . . absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints – and then to rely

---

[1] Plaintiffs also alleged that Dr. Al-Turki and the Saudi Arabian Red Crescent Society provided material support to al Qaeda.  See Pl. Opp (Al-Turki), at 5, 7 (Docket No. 273); Pl. Opp (Saudi Red Crescent), at 6 (Docket No. 277).  For the same reasons, this allegation precludes application of FSIA's commercial activity or tortious act exceptions to those defendants, whom plaintiffs acknowledge have sovereign immunity.

on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law.

Robinson, 269 F.3d at 146; see also Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) ("conclusory allegations" insufficient for FSIA jurisdiction).

Dr. Al-Obaid, in his motion to dismiss, argued that the "tortious act" exception did not apply. Mot., at 8-11. Dr. Al-Obaid argued that plaintiffs' allegations against him, no matter how broadly construed, amounted to nothing more than "guilt by association" arising from his official positions with several charities and other entities. Id.

Plaintiffs alleged several categories of conduct in their Complaint, two of which they have now abandoned. Plaintiffs made the conclusory allegation that Dr. Al-Obaid was one of several "co-conspirators, material sponsors and/or aiders and abettors and members of the terrorist enterprise of the International Islamic Relief Organization" [IIRO]. Complaint, at ¶ 248. However, plaintiffs did not identify any acts that Dr. Al-Obaid took on behalf of IIRO, and in their Opposition, plaintiffs failed to set forth any facts or evidence to support this allegation. Indeed, the only mention of IIRO in the Opposition is a passing note that another entity raised funds ostensibly for IIRO, but then diverted those funds from IIRO to other purposes. Opp., at 8. Even if true, it certainly is not an act on behalf of IIRO, as necessary to impose liability on Dr. Al-Obaid. There are no allegations that Dr. Al-Obaid participated in, or knew about, this act.[2]

Plaintiffs also alleged that Dr. Al-Obaid was an officer of the al-Watania Poultry company. Complaint, at ¶¶ 252, 275. After Dr. Al-Obaid pointed out that this was based on a

---

[2] Further, this Court can take judicial notice of the fact that the U.S. government has never designated IIRO as a terrorist organization, which contradicts plaintiffs' arguments regarding the organization's alleged terrorist activities. See Department of the Treasury, Office of Foreign Assets Control, "Specially Designated Nationals and Blocked Persons" (July 30, 2004), <http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf>.

4

mistaken identity, see Mot. at 5 & n.5, plaintiffs abandoned this allegation in their Opposition.

Plaintiffs' remaining allegations regarding Dr. Al-Obaid fare no better. Plaintiffs allege that he was an officer of the Muslim World League (MWL) and of Rabita Trust. Complaint, at ¶¶ 251, 252, 273. Plaintiffs also allege that Dr. Al-Obaid was an officer of two Virginia corporations. Id. at ¶¶ 273, 275. However, plaintiffs failed to make any allegation, or provide any evidence showing that, Dr. Al-Obaid knew that these entities, or persons using the names of those entities, carried out illegal acts. Moreover, plaintiffs fail to mention that neither MWL, nor the two Virginia entities, have been designated as terrorist entities or sponsors of terrorism. While the U.S. government, in 2001 and 2002, designated the Rabita Trust and one of its former field managers, Dr. Al-Obaid's involvement with the Rabita Trust ended in 2000, see Mot., at 3 & Ex. 1 (Decl.), ¶ 5, and the government's designations did not mention Dr. Al-Obaid.[3]

Plaintiffs' Opposition materially misrepresents the allegations in their Complaint in an unsuccessful attempt to argue that they made allegations about Dr. Al-Obaid's assisting al Qaeda. Plaintiffs state "to the extent that the Complaint alleges that Al-Obaid used Sanabell, Inc. and Sanabel al-Khair, two Virginia corporations, as conduits to funnel money to al Qaeda, the FSIA does not shield him from liability for those private acts." Opp., at 10. However, plaintiffs' statement is false, since they do not make any such allegation in their Complaint. While the Complaint makes several allegations about those corporations, see Complaint, at ¶¶ 247, 275, 359, it does not allege that Dr. Al-Obaid had any knowledge of the acts of those entities, or that he "used" them "as conduits to funnel money to al Qaeda," as plaintiffs now

---

[3] See Treasury Department Statement on the Designation of Wa'el Hamza Julidan (Sept. 6, 2002); Treasury Department Releases List of 39 Additional Specially Designated Global Terrorists (Oct. 12, 2001) (attached hereto as Exhibits 1-2). If the U.S. government had evidence to designate the MWL or Dr. Al-Obaid, it would have done so by now.

5

claim.[4]

Plaintiffs also allege that Dr. Al-Obaid "rais[ed] funds for al Qaeda" and "provided the money to al Qaeda." Opp., at 10-12. As before, plaintiffs' Complaint does not contain any allegation that Dr. Al-Obaid himself raised funds for, or provided money to, al Qaeda. This Court cannot accept plaintiffs' counsel's misstatements about the facts alleged in the Complaint.

Moreover, the Second Circuit has been clear that plaintiffs cannot amend their Complaint by adding new allegations and inferences for the first time in an opposition to a dispositive motion. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

Even if this Court were to give some credence to plaintiffs' new allegations (which do not appear in their Complaint and are nowhere based on facts or documents) that Dr. Al-Obaid raised funds for, or donated to, Islamic charities, there are intervening events between Dr. Al-Obaid's fundraising or donations to the charities and the attacks of September 11, that preclude jurisdiction. The Second Circuit has held that the presence of intervening actors and events "does not provide the requisite immediacy to establish jurisdiction" over such a defendant. See Virtual Countries, 300 F.3d at 238.[5]

---

[4] Plaintiffs submit, as an exhibit, unofficial corporate records of these two entities, one of which was revoked on July 31, 2001, and the other of which was not incorporated until August 14, 2000. See Plaintiffs' Notice of Filing of Omitted Exhibit (July 1, 2004) (Docket No. 285). However, these documents show only that Dr. Al Obaid was a corporate officer. They do not show that he had any knowledge of the activities carried out by these entities, or by persons using the name of these entities, that plaintiffs allege were illegal.

[5] Plaintiffs' counsel admitted, during oral argument before Judge Robertson, that plaintiffs "don't have a case against most of these defendants" because they could not show that "the person who receives the money says I'm going to send a thousand dollars to Mohammad Atta so he can get some flight simulator." See Tr., at 77-78 (June 24, 2003) (excerpts attached hereto as Exhibit 3).

Here, plaintiffs have proffered absolutely no facts, or even inferences from well-pleaded facts, that Dr. Al-Obaid knew that any entity with which he was involved was going to engage in anything other than legitimate activities. Nor have plaintiffs set forth any facts showing that he knew that any funds raised on behalf of those entities would be diverted to illegal purposes.

Plaintiffs' counsel's speculations regarding Dr. Al-Obaid's activities, which are not pled in the Complaint, are patently insufficient to allow plaintiffs to invoke the tortious act exception:

> In the FSIA context, plaintiffs' allegations that (i) Prince Turki or Prince Sultan funded (ii) those who funded (iii) those who carried out the September 11th attacks would stretch the causation requirement of the noncommercial tort exception not only to "the farthest reaches of the common law," but perhaps beyond, to terra incognita. I find, accordingly, that the noncommercial tort exception afforded by § 1605(a)(5) is not applicable.

Burnett, 292 F. Supp. 2d at 20.

This Court should similarly find that plaintiffs' allegations and unfounded inferences regarding Dr. Al-Obaid's acts, no matter how construed, fail to show that plaintiffs' injuries were "caused by" his acts, as Section 1605(a)(5) requires.

## II. Even if Plaintiffs Overcome Their Burden Under FSIA, This Court Still Does Not Have Personal Jurisdiction Over Dr. Al-Obaid.

Even if plaintiffs can somehow show that an exception to FSIA may be invoked, they still cannot "allege facts constituting a *prima facie* showing of personal jurisdiction," either in their Complaint, or in their new factual allegations, as is required. PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). In an attempt to counter Dr. Al-Obaid's argument that this Court lacks personal jurisdiction over him because he has not done anything that connects him to this forum, or to the September 11 attacks, plaintiffs now claim that he somehow supported al Qaeda more directly. Opp. at 5-6. The problem is that the facts, and the reasonable inferences

7

from those facts, fail to support any claim that he proximately caused the September 11 attacks, as is required to show personal jurisdiction. PDK Labs, 103 F.3d at 1108.

First, with respect to the legal standard for personal jurisdiction, and plaintiffs' improper amending of their Complaint through adding new facts in their Opposition, Dr. Al-Obaid incorporates the discussion in Mr. Al-Husaini's reply brief. See Al-Husaini's Reply Brief, at 1-4 (July 23, 2004) (Docket No. 331) (incorporated herein by reference as restated in its entirety).[6]

Second, even if this Court considers the new factual allegations presented for the first time in plaintiffs' Opposition, the law is clear that Dr. Al-Obaid's role as a director of domestic entities does not allow this Court to exercise personal jurisdiction over him. Plaintiffs must make a *prima facie* showing that as a director, Dr. Al-Obaid took acts within this forum that were within the scope of his position. In order for this Court to exercise personal jurisdiction over a nonresident officer or director based on the acts of a corporation in this forum, the corporation's acts "must be with the knowledge and consent of the [non-resident] officer and the officer must have exercised control over the corporation in the transaction." Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).[7] Plaintiffs have not alleged

---

[6] Dr. Al-Obaid's motion to dismiss set forth three defenses to support his argument that personal jurisdiction was improper under a general jurisdiction theory, a specific jurisdiction theory, or the forum's long-arm statute. The only theory upon which plaintiffs now rely is that he "purposefully directed his conduct at the United States," see Opp. at 4, thereby conceding that jurisdiction is not proper under the other approaches. It is settled law that when a defense is raised in a dispositive motion, but plaintiffs fail to respond to that defense, plaintiffs have conceded the defense. Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

[7] See also Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction under a theory of agency."); Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995) ("it is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation"); accord Wiggins v. Equifax, Inc., 853 F. Supp. 500, 503 (D.D.C. 1994) ("It is true that a court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation. Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their

8

that Dr. Al-Obaid had the requisite "knowledge and consent" or "control."  In fact, their allegations are so vague with respect to Dr. Al-Obaid that any donor to the charities with which Dr. Al-Obaid was involved could be named as a defendant in this suit under plaintiffs' theory.

Plaintiffs' Opposition sets forth several paragraphs of additional "facts" which they aver support their claim that Dr. Al-Obaid provided material support to al Qaeda.  See Opp. at 5-6, 8. Plaintiffs first allege that as an officer of the MWL office in the United States, and of two Virginia entities, he "provided material support to al Qaeda" by using those entities "to raise funds, ostensibly for charitable purposes."  Id. at 5.  Plaintiffs have set forth no evidence of any kind to counter Dr. Al-Obaid's sworn statement that he was not involved with the day-to-day operations of those entities and had no knowledge of any illegal acts purportedly taken by, or on behalf of, those entities.  See Mot., at 5 & Ex. 1 (Decl.), at ¶¶ 14-15.  The only evidence that plaintiffs now proffer in their Opposition is a report prepared by Epstein and Kohlmann.  See Opp. at 5 (citing Pl. Opp. (Al-Turki), Ex. 3 (Docket No. 273)).  Even that report only mentions Dr. Al-Obaid's involvement in a purely administrative capacity, see Pl. Opp. (Al-Turki), Ex. 3, at 10, and does not allege or claim that Dr. Al-Obaid had any knowledge of illegal acts that either Epstein and Kohlmann, or plaintiffs, ascribe to those entities.  This Court cannot exercise personal jurisdiction over Dr. Al-Obaid based solely on plaintiffs' counsel's speculations, which are not set forth in plaintiffs' Complaint.

Taken together, plaintiffs' allegations regarding Dr. Al-Obaid's activities with charities or business entities fail to support any claim that he was a "primary participant" in the specific September 11 attacks as is required for the exercise of personal jurisdiction over him in this case.

---

personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity.").

*In re* Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003).[8]

### III. Plaintiffs Have Not Properly Served Dr. Al-Obaid.

Plaintiffs' attempt to serve Dr. Al-Obaid by publication in two newspapers – which he does not read or access – was substantively improper. Dr. Al-Obaid respectfully refers this Court, and incorporates herein, the discussion of plaintiffs' improper service of process in the reply brief filed by Mr. Al-Hussayen. See Al Hussayen's Reply Brief, at Part III.B (July 23, 2004) (Docket No. 335) (incorporated herein by reference as restated in its entirety). Therefore, this Court should find that service by publication on Dr. Al-Obaid did not constitute adequate notice to him, and was not justified.

### CONCLUSION

For the foregoing reasons, and those set forth in Dr. Al-Obaid's motion to dismiss, this Court must dismiss plaintiffs' Third Amended Complaint for lack of subject matter jurisdiction under the FSIA, lack of personal jurisdiction, and improper service of process.

---

[8] Nor should this Court allow the plaintiffs an opportunity to conduct jurisdictional discovery, as plaintiffs have argued with respect to other defendants. See, e.g., Pl. Opp. (Al-Turki), at 7 (Docket No. 273). Under Second Circuit precedent, plaintiffs' conclusory allegations regarding Dr. Al-Obaid are insufficient to allow them to engage in a fishing expedition. See Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2d Cir. 1998) (plaintiffs' "conclusory non-fact-specific jurisdictional allegations" did not warrant discovery on that issue).

Respectfully submitted,

/s/ Lynne Bernabei

---

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Saleh Al-Obaid (D23)

DATED:  July 30, 2004

11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat