**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | 03 MDL No. 1570 (RCC)<br>ECF Case |

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

**REPLY BRIEF IN SUPPORT OF**
**SAUDI ARABIAN RED CRESCENT SOCIETY'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Lynne Bernabei, Esquire (LB2489)
Alan R. Kabat, Esquire (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
Saudi Arabian Red Crescent Society (D211)

DATED: July 30, 2004

## INTRODUCTION

The Saudi Arabian Red Crescent Society (D211) ("Saudi Red Crescent"), in its motion to dismiss (Docket No. 99), argued that dismissal was warranted, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(5), Fed. R. Civ. P., because this Court lacks subject matter jurisdiction over plaintiffs' claims against it, as it has sovereign immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Plaintiffs' Opposition (Docket No. 277) presented additional factual allegations, not in their Complaint, which they claim allows jurisdiction under FSIA's tortious act exception. However, plaintiffs fail to meet the requirements of this exception.

The Saudi Red Crescent also argued that since it lacks the requisite contacts with this country, this Court does not have personal jurisdiction over it. Plaintiffs responded by claiming, with no factual support, that the Saudi Red Crescent "purposefully directed his [*sic*] conduct at the United States." Opp. at 5. However, plaintiffs' allegations show nothing more than that the Saudi Red Crescent was involved with various other charities in humanitarian activities, but fail to allege that it knew about any illegal activities carried out by persons associated with those entities, as confirmed by the affidavit submitted by the head of the Saudi Red Crescent. See Mot., at 2-4 & Ex. 1 (Decl.), ¶¶ 7-10. Thus, plaintiffs' allegations do not show that the Saudi Red Crescent knowingly directed material support to those who planned or carried out the September 11 attacks, which precludes this Court from exercising personal jurisdiction over it.

Finally, this Court must strike plaintiffs' Opposition, since it relies on a Court document fabricated by plaintiffs' counsel in order to address a defense regarding service of process raised by the Saudi Red Crescent in its motion to dismiss.

## ARGUMENT

### I. The Foreign Sovereign Immunities Act Precludes The Exercise of Subject Matter Jurisdiction Over Plaintiffs' Claims Against The Saudi Red Crescent.

Plaintiffs concede that the Saudi Red Crescent is covered by FSIA, and their sole argument regarding its sovereign immunity is that FSIA's "tortious act" exception applies. Opp. at 9. Thus, the threshold issue for this Court is whether the plaintiffs have satisfied their "burden of going forward with evidence showing that, under [one or more] exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). Only if one or more of FSIA's exceptions, 28 U.S.C. § 1605(a)(1)-(7), apply, will this Court have subject matter jurisdiction over plaintiffs' claims against the Saudi Red Crescent. Id. However, plaintiffs cannot make out the "tortious act" exception, 28 U.S.C. § 1605(a)(5), upon which plaintiffs rely in this case. See Opp. at 9.[1]

#### A. Plaintiffs' Allegations Regarding the Saudi Red Crescent's Conduct are Insufficient to Trigger the Tortious Act Exception to FSIA.

Plaintiffs' allegations that the Saudi Red Crescent somehow provided material support to al Qaeda, which are not supported by the Complaint or the new allegations in the Opposition, are insufficient for this Court to find that it can exercise subject matter jurisdiction under FSIA's tortious act exception, Section 1605(a)(5). Plaintiffs cannot show their injuries are "caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." The central phrase – "caused by" – means that speculative allegations or attenuated chains of causation are insufficient to

[1] The Saudi Red Crescent refers this Court, and incorporates herein, the argument in Dr. Al-Obaid's reply brief that plaintiffs' allegation that it provided material support to al Qaeda means that they can only proceed under FSIA's state-sponsored terrorism exception, Section 1605(a)(7), which does not apply since Saudi Arabia is not designated. See Al-Obaid's Reply Brief, Part I.A (July 30, 2004) (incorporated herein by reference).

support this exception. See Robinson v. Malaysia, 269 F.3d 133, 146 (2d Cir. 2001) ("the conclusory nature of Robinson's allegations alone would give us pause before we would allow them to sustain jurisdiction"); Burnett, 292 F. Supp. 2d at 19 (causation requirement means that this exception "should be narrowly construed").

The Second Circuit has decisively held that conclusory allegations cannot form the basis for a district court to exercise subject matter jurisdiction under FSIA:

> To sustain federal jurisdiction on generic allegations . . . absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints – and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law.

Robinson, 269 F.3d at 146; see also Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) ("conclusory allegations" insufficient for FSIA jurisdiction).

The Saudi Red Crescent's motion to dismiss argued that the "tortious act" exception did not apply because plaintiffs failed to allege any acts, tortious or otherwise, that plaintiffs ascribe to the Saudi Red Crescent, let alone that its acts caused plaintiffs' injuries. Mot., at 10-11.

Plaintiffs made two allegations in their Complaint, the first of which they have now abandoned. Plaintiffs first alleged that the Saudi Red Crescent received donations through the National Commercial Bank. Complaint, at ¶ 95. However, this purely commercial relationship between a bank and an account holder does not make out any allegation that the donations were either illegally obtained or used for illegal purposes. Mot., at 4. Plaintiffs' Opposition omits this allegation, and fails to set forth any facts or evidence to support it, thereby conceding that this allegation cannot form the basis for plaintiffs' claims against the Saudi Red Crescent.

Plaintiffs then make the conclusory allegation that the Saudi Red Crescent, along with several other charities, formed the Saudi Joint Relief Committee ("SJRC"), which was somehow "connected to Osama bin Laden and two of his top operatives." See Complaint, ¶ 172. However, plaintiffs did not allege, either in their Complaint or in their Opposition, that the Saudi Red Crescent knew of any illegal acts by the SJRC or its operatives. In fact, the new evidence that plaintiffs put forward, for the first time, in their Opposition, supports the contrary conclusion: that the Saudi Red Crescent did not know of the illegal acts that plaintiffs attribute to Wael Jelaidan, who allegedly acted under its name. Plaintiffs' Opposition describes Jelaidan's acts, but expressly states that Jelaidan had "turned" the Saudi Red Crescent's field office in Pakistan "into an accomplice of bin Laden" and that after Jelaidan left that office, al Qaeda could no longer use Jelaidan's services in its favor. Opp. at 6-7 & Ex. 3.[2]

The only reasonable inference that can be drawn from plaintiffs' allegations is that Jelaidan covertly misused the Saudi Red Crescent's name and field office for unauthorized purposes, as demonstrated by the fact that this misuse ended once Jelaidan had left the office. Plaintiffs' allegations regarding Jelaidan actually support a conclusion contrary to that asserted by plaintiffs – that the Saudi Red Crescent did not know of, or authorize, Jelaidan's acts. If those acts were authorized, then this "support" would have continued regardless of whether Jelaidan was in the office. Instead, plaintiffs' allegations only show that Jelaidan was acting on his own, contrary to the Saudi Red Crescent's humanitarian goals.

---

[2] Plaintiffs state that Exhibit 3, an undated memorandum, also supports their allegations regarding Jelaidan. Opp. at 7. This memorandum was submitted by the prosecution as part of an evidentiary proffer in a criminal conspiracy and material support prosecution. However, the U.S. District Court struck this proffer as inadmissible hearsay. See United States v. Arnaout, No. 02 CR 892, 2003 WL 255226, at *1-*2 (N.D. Ill. Feb. 4, 2003). This Court should not give any greater credence to Plaintiffs' Exhibit 3 than did the judge in that prosecution, who had a broader exposure to this and related documents.

Moreover, plaintiffs' argument that Jelaidan's designation as a terrorist by the U.S. government is somehow relevant to this Court's determination of whether the Saudi Red Crescent provided material support to al Qaeda is undercut by the fact that the designation of Jelaidan made no mention of the Saudi Red Crescent.[3] Further, the Saudi Red Crescent itself has never been designated by the U.S. Government.[4]

Plaintiffs' Opposition raises, for the first time, several new allegations about the Saudi Red Crescent. Opp. at 6-7 & Ex. 1-4. Plaintiffs allege that a document shows that the Saudi Red Crescent "was one of the earliest supporters of bin Laden and the Maktab Al-Khadimat, the predecessor to al Qaeda." Id. at 6 & Ex. 1. Although this document is undated, the author is Abdallah Azzam. Id., Ex. 1 at 3. Plaintiffs' Complaint makes clear that Azzam, an early colleague of bin Laden, "was assassinated in 1989." Complaint, at ¶ 543. This timing issue is critical, for the 1980's was a period when the U.S. government itself was supporting the mujahedin in Afghanistan, of which bin Laden was part. See Al-Husaini's Reply Brief, at 5-6 (July 23, 2004) (Docket No. 331) (incorporated herein by reference as restated in its entirety). Moreover, that time period was several years before al Qaeda targeted the United States, as plaintiffs' own evidence shows. See Pl. Opp. (Al-Husaini), Ex. 16, at 18 ("Bin Laden's first declaration of war" was in October 1996.) (Docket No. 272).

Thus, any support that the Saudi Red Crescent might have provided to the mujahedin in Afghanistan during that time period does not support plaintiffs' allegations that its acts somehow

---

[3] See Treasury Department Statement on the Designation of Wa'el Hamza Julidan (Sept. 6, 2002) (attached hereto as Exhibit 1).

[4] See Department of the Treasury, Office of Foreign Assets Control, "Specially Designated Nationals and Blocked Persons" (July 30, 2004), <http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf>.

caused the September 11 attacks. Otherwise, under plaintiffs' theory, the U.S. government itself would also be liable for plaintiffs' injuries based on its foreign policy decisions in the 1980's.

Plaintiffs then allege that "a memo from a file marked 'Osama History'" identified the Saudi Red Crescent "as a potential member of a committee being set up to 'receive donations and maintain an account and the spending' for Osama's organization." See Opp., at 6 & Ex. 2. This document is also undated, has no author, and there is chain of custody other than the assertion that it was "recovered from Bosnia." See Bierstein Decl., ¶ 2. Morever, plaintiffs admit that the Saudi Red Crescent's involvement with this unnamed committee was only "potential," see Opp. at 6, and allege no facts showing that it had any actual involvement.

Plaintiffs also allege that a "terrorism expert" testified before a congressional hearing that "a message on the letterhead of the Saudi Red Crescent bureau in Peshawar requests that 'weapons' be inventoried." See Opp. at 6 & Ex. 14. Plaintiffs do not inform this Court that this "terrorism expert" is one of plaintiffs' own paid expert witnesses, as the expert admits on the first page of his report.[5] Even then, the report does not have any sources or citations for its allegations regarding the Saudi Red Crescent – there are no footnotes or bibliographies. At most, this report only shows that Jelaidan, who formerly worked in the Saudi Red Crescent's office in Pakistan, misused the agency's name and office for his own purposes. Id., Ex. 14, at 17-18. This report does not support plaintiffs' allegations that the Saudi Red Crescent itself knew of Jelaidan's acts, let alone that it condoned or ratified those acts.[6]

---

[5] One British court in the Queen's Bench Division recently entered a default judgment against Brisard in a libel action arising from his allegations that wealthy Saudis were donors to bin Laden and al Qaeda. See Mahfouz v. Brisard, [2004] EWHC 1735, at ¶¶ 32-33, 37 (Q.B. Jul. 1, 2004) (attached hereto as Exhibit 2).

[6] Plaintiffs submitted three other documents in their Opposition. See Opp., Bierstein Decl., Ex. 5-7. However, these three documents are not cited anywhere in plaintiffs' Opposition, and make no mention of the Saudi

Moreover, plaintiffs cannot use these newly submitted exhibits, or newly raised allegations in their Opposition as an unauthorized means for amending their Complaint. The Second Circuit has made clear that adding new allegations and inferences for the first time in an opposition to a dispositive motion is impermissible. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

Even if this Court were to give some credence to plaintiffs' new allegations, which do not appear in their Complaint, that the Saudi Red Crescent was involved with other charitable entities, or even involved with bin Laden, it must find that the allegations refer to a time period before bin Laden had turned against the United States. If plaintiffs' allegations regarding the Saudi Red Crescent itself could somehow be extended into later time periods – something that plaintiffs themselves do not even attempt – this Court must still find that there are intervening events between anything that the Saudi Red Crescent did, and the attacks of September 11, thereby precluding jurisdiction. The Second Circuit has held that the presence of intervening actors and events "does not provide the requisite immediacy to establish jurisdiction" over such a defendant. See Virtual Countries, 300 F.3d at 238.[7]

Here, plaintiffs have proffered absolutely no facts, or even inferences from well-pleaded facts, that the Saudi Red Crescent knew that any entity with which it was involved was going to

---

Red Crescent. Thus, these exhibits lend no support to plaintiffs' allegations regarding the Saudi Red Crescent, and should be disregarded by this Court as having been included in error.

[7] Plaintiffs' counsel admitted, during oral argument before Judge Robertson, that plaintiffs "don't have a case against most of these defendants" because they could not show that "the person who receives the money says I'm going to send a thousand dollars to Mohammad Atta so he can get some flight simulator." See Tr., at 77-78 (June 24, 2003) (excerpts attached hereto as Exhibit 3).

engage in other than legitimate activities.

Plaintiffs' counsel's speculations in their Opposition brief regarding the Saudi Red Crescent's activities, which are not pled in the Complaint, are patently insufficient to allow plaintiffs to invoke the tortious act exception:

> In the FSIA context, plaintiffs' allegations that (i) Prince Turki or Prince Sultan funded (ii) those who funded (iii) those who carried out the September 11th attacks would stretch the causation requirement of the noncommercial tort exception not only to "the farthest reaches of the common law," but perhaps beyond, to terra incognita. I find, accordingly, that the noncommercial tort exception afforded by § 1605(a)(5) is not applicable.

Burnett, 292 F. Supp. 2d at 20.

This Court should similarly find that plaintiffs' allegations and unfounded inferences regarding the Saudi Red Crescent's acts, no matter how generously construed, fail to show that plaintiffs' injuries were "caused by" its acts, as Section 1605(a)(5) requires.[8]

## II. Even if Plaintiffs Overcome Their Burden Under FSIA, This Court Still Does Not Have Personal Jurisdiction Over the Saudi Red Crescent.

Even if plaintiffs can somehow show that the tortious act exception to FSIA may be invoked against the Saudi Red Crescent, they still cannot "allege facts constituting a *prima facie* showing of personal jurisdiction," either in their Complaint, or in their new factual allegations, as is required. PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

The facts alleged by plaintiffs, and the reasonable inferences from those facts, fail to

[8] The Saudi Red Crescent also argued that plaintiffs' allegations in the Complaint regarding its activities did not implicate FSIA's "commercial activity" exception, 28 U.S.C. § 1605(a)(2), since its use of the National Commercial Bank and its long-ago employment of Jelaidan were not commercial activities with "a direct effect in the United States," as Section 1605(a)(2) requires. See Mot., at 8-9. Plaintiffs have conceded that the "commercial activity" exception does not apply, since they did not respond to this defense in their Opposition. It is settled law that when a defense is raised in a dispositive motion, but the plaintiff fails to respond, the plaintiff has conceded the defense. Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

support plaintiffs' claim that the Saudi Red Crescent proximately caused the September 11 attacks, as is required to show personal jurisdiction. PDK Labs, 103 F.3d at 1108.

First, as to the legal standard for personal jurisdiction, and plaintiffs' improper amending of their Complaint through adding new facts in their Opposition, the Saudi Red Crescent incorporates the discussion in Mr. Al-Husaini's reply brief. See Al-Husaini's Reply Brief, at 1-4 (July 23, 2004) (Docket No. 331) (incorporated herein by reference as restated in its entirety).[9]

Second, even if this Court considers the new factual allegations presented for the first time in plaintiffs' Opposition, those allegations do not counter the sworn statement of the Saudi Red Crescent's chairman that it had no knowledge of any illegal acts that plaintiffs ascribe with respect to Jelaidan or the Saudi Joint Relief Committee. See Mot., at 4 & Ex. 1 (Decl.), ¶¶ 7-10. All that is left are plaintiffs' counsel's speculations, which cannot be used by this Court as a basis for exercising personal jurisdiction over the Saudi Red Crescent.

Taken together, plaintiffs' allegations regarding the Saudi Red Crescent's activities fail to support any claim that it was a "primary participant" in the specific September 11 attacks as is required for the exercise of personal jurisdiction over it in this case. *In re* Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003).

## III. Plaintiffs Have Not Properly Served The Saudi Red Crescent.

The Saudi Red Crescent refers this Court, and incorporates herein, the discussion of the plaintiffs' improper service of process by publication in the reply brief filed by Mr. Al-Oadah.

---

[9] The Saudi Red Crescent's motion to dismiss set forth three defenses to support its argument that personal jurisdiction was improper under a general jurisdiction theory, a specific jurisdiction theory, or the forum's long-arm statute. The only theory upon which plaintiffs now rely is that the Saudi Red Crescent "purposefully directed his [*sic*] conduct at the United States," see Opp. at 5, thereby conceding that jurisdiction is not proper under the other approaches. When a defense is raised in a dispositive motion, but plaintiffs fail to respond, plaintiffs have conceded the defense. Edward B. Marks Music Corp., 222 F.2d at 493.

Plaintiffs fabricated a court document and misrepresented an order by Judge Robertson, in an attempt to argue that they properly served five defendants, including the Saudi Red Crescent. See Salman Al-Oadah's Reply Brief, at Part II.A (July 23, 2004) (Docket No. 330) (incorporated herein by reference as restated in its entirety). The minimum appropriate sanction to be imposed on plaintiffs' counsel for submitting a fabricated court filing is to strike their opposition to the Saudi Red Crescent's motion to dismiss, thereby treating its motion as conceded.

**B. Plaintiffs' Attempt to Serve By Publication was Substantively Improper.**

Even if this Court were to ignore plaintiffs' misrepresentations regarding their March 24, 2003 court filing, it must still find that plaintiffs' attempt to serve the Saudi Red Crescent by publication in two newspapers that it cannot access was substantively improper. The Saudi Red Crescent refers this Court to the discussion of the plaintiffs' improper service of process in the reply brief filed by Mr. Al-Hussayen. See Saleh Al-Hussayen's Reply Brief, at Part III.B (July 23, 2004) (Docket No. 335) (incorporated herein by reference as restated in its entirety).

This Court should find that service by publication on the Saudi Red Crescent was not authorized by Judge Robertson, does not constitute adequate notice, and was not justified.

## CONCLUSION

For the foregoing reasons, and those set forth in the Saudi Red Crescent's motion to dismiss, this Court must dismiss plaintiffs' Third Amended Complaint for lack of subject matter jurisdiction under the FSIA, lack of personal jurisdiction, and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei

______________________________

Lynne Bernabei, Esquire (LB2489)
Alan R. Kabat, Esquire (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
Saudi Arabian Red Crescent Society (D211)

DATED: July 30, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat