UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re Terrorist Attacks on September 11, 2001         03 MDL 1570 (RCC)
                                                      ECF Case
-----------------------------------------------------------x

FEDERAL INSURANCE CO., et al.,

        Plaintiffs,                           03 6978 CV (RCC)
                                                      ECF Case
  v.

AL QAIDA, et al.,

        Defendants.
-----------------------------------------------------------x

### REPLY MEMORANDUM OF LAW OF PRINCE MOHAMED AL-FAISAL AL-SAUD IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Louis R. Cohen (LC 4012)
WILMER CUTLER PICKERING LLP
2445 M Street N.W.
Washington, D.C. 20037
Tel.: 202-663-6000
Fax: 202-663-6363

David P. Donovan (DD 7012)
WILMER CUTLER PICKERING LLP
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102
Tel: 703-251-9700
Fax: 703-251-9797

David Bowker (DWB 3029)
WILMER CUTLER PICKERING LLP
399 Park Avenue
New York, NY 10022
Tel.: 212-230-8800
Fax: 212-230-8888

Attorneys for Defendant Prince Mohamed Al-Faisal Al-Saud

The only specific allegation against Prince Mohamed in plaintiffs' First Amended Complaint ("FAC") is that he is Chairman of a bank in Sudan ("FIBS") that held undescribed "accounts" associated with al Qaida. The FAC does not allege that he (i) has had any contact with New York or the United States, (ii) transferred money or anything else of value to anyone, either directly or through any intermediary, or (iii) reached any agreement with anyone about anything. As Prince Mohamed's opening Memorandum ("MMem.") showed (at 5-10) and plaintiffs' Opposition ("Opp.") essentially concedes (at 6), allegations that al Qaeda members were depositors in a foreign bank do not establish this Court's jurisdiction over the bank's chairman, nor do they state a claim against him.[1]

In an attempt to avoid dismissal, plaintiffs misrepresent the contents of their own FAC and assert over and over that Prince Mohamed "supported al Qaida" and was part of a "global conspiracy," without stating any facts to support either conclusion. Their difficulty is not, as plaintiffs suggest (Opp. 4), that the FAC fails to "set forth every [allegedly] wrongful act" of Prince Mohamed, but that it fails to identify *any* allegedly wrongful act or to connect him to New York, the United States, September 11, or any "global conspiracy."

## I. Plaintiffs' Opposition Grossly Misrepresents the Allegations in the FAC.

Plaintiffs' legal arguments depend entirely on several misrepresentations of the allegations in the FAC:

---

[1] As noted, MMem. 1, n.1, the FAC originally also alleged that (1) Prince Mohamed is the chairman of another bank called Al Shamal (*see* FAC ¶¶ 473, 474) and (2) he contributed money to charitable organizations that provided funds to al Qaeda (*see* FAC ¶¶ 475, 476). Plaintiffs agreed to withdraw those allegations, however, in response to Prince Mohamed's motion (served but not filed) under Fed. R. Civ. P. 11 identifying those allegations as false and lacking any good-faith basis. (*See* letter to Prince Mohamed's counsel, attached as Exhibit A.) Plaintiffs nevertheless made similar assertions in their RICO Statement filed on July 16, 2004, but their counsel has assured Prince Mohamed's counsel that the inclusion was (another) oversight, and the allegations have been withdrawn. A stipulation to that effect will be filed.

- Plaintiffs assert (Opp. 1) that the FAC alleges that Prince Mohamed was "the chairman of several financial institutions which facilitated the al Qaida operation by laundering significant sums of money to finance the preparations for and carrying out of the Attack." But the FAC alleges no facts, either in the cited paragraphs (¶¶ 307-309, 312, 472-474) or elsewhere, suggesting that any such institution provided, or "laundered" any sum to finance anything related in any way to "the Attack." Moreover, the FAC does not allege, anywhere, that Prince Mohamed knew of or had anything personally to do with any such activity.[2]

- Plaintiffs assert (Opp. 2, citing FAC ¶¶ 474, 477) that the FAC alleges that "Prince Mohamed knew of [al Qaida's] terrorist activities, and he supported their ultimate goal." The cited paragraphs do not support this assertion but instead make a teasing promise that facts will be supplied "elsewhere" in the FAC: "Prince Mohamed has facilitated the material sponsorship of al Qaida by [two banks] *as further detailed herein*" (FAC ¶ 474, emphasis added); Prince Mohamed has, "*as described herein*, provided critical financial and logistical support [for al Qaida]." (FAC ¶ 477, emphasis added.) *But plaintiffs never supply any such "details" or "descriptions" anywhere in the FAC.* Moreover, nothing in these paragraphs ties this alleged "sponsorship" or "support" to the Attack. Plaintiffs also assert (Opp. 2, citing FAC ¶¶ 308, 311, 473) that the banks with which Prince Mohamed allegedly is affiliated "have ties to al Qaida and the Attack." Except for the one FIBS allegation noted above, the FAC alleges ties

---

[2]   The FAC alleges that FIBS (not Prince Mohamed) knew that al Qaida cells maintained accounts to "launder" funds for al Qaida. *See* ¶¶ 316-317. But the word "launder," used without any allegation as to the source of any funds, is a meaningless color-word that adds nothing to the allegation that FIBS held undescribed al Qaida-related accounts. The key point is that there is no allegation that Prince Mohamed knew anything about the supposed accounts.

to al Qaeda only in a conclusory assertion in ¶ 311 that again promises a "descri[ption] herein" that is never supplied.

- Plaintiffs assert (Opp. 2, citing FAC ¶ 310) that the FAC alleges that "DMI sets aside a percentage of funds . . . as *zakat*," and that these monies "were used to fund radical, anti-American Islamic terrorist organizations." But the FAC does not allege that any DMI funds were so used. It merely hypothesizes that zakat funds "*can be used*" to fund Islamic organizations. (FAC ¶ 310.)[3/] (Plaintiffs assert that zakat funds "disappear" from the balance sheet when spent but do not explain why this is different from the accounting for any other asset disposition by anyone, or why it is relevant.) Plaintiffs also assert (Opp. 17) that "Prince Mohamed directed *zakat* funds to al Qaida," but the FAC says no such thing, anywhere.

- Plaintiffs assert (Opp. 3, citing ¶ 42) that the FAC alleges that "Prince Mohamed intentionally directed significant funds to al Qaida after al Qaida issued religious decrees . . . encouraging attacks against the United States," but ¶ 42 does not mention Prince Mohamed, and the FAC does not state, anywhere, that Prince Mohamed directed money to al Qaeda at any time.

## II. This Court Lacks Personal Jurisdiction Over Prince Mohamed.

Plaintiffs concede (Opp. 5) that it is their burden to "make a *prima facie* showing of [personal] jurisdiction" before they are entitled even to discovery, and that to do so they must allege "*facts* . . . sufficient to establish personal jurisdiction." They are right. *See, e.g., Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("factual specificity" is necessary to establish personal jurisdiction); *id.* at 184 (legal conclusion that "states no facts supporting that conclusion . . . does not constitute a prima facie showing [under Fed. R. Civ. P. 12(b)(2)]").

---

[3/] "Charitable giving, or *zakat*, is one of the five pillars of Islam." The 9/11 Commission Report 372 (2004). It is an entirely honorable activity. The assertion that zakat "can be" misused (like any other sum of money) is a truism that adds nothing to plaintiffs' claims.

3

Plaintiffs also essentially concede (Opp. 6) that their one concrete factual allegation--that Prince Mohamed chaired three foreign banks, one of which allegedly held undescribed al Qaida-related accounts--is wholly insufficient to establish personal jurisdiction over Prince Mohamed in this Court. *See* MMem. 4-21. Their drumbeat of conclusory (but wholly fact-free) allegations that Prince Mohamed and all other defendants provided "material support and resources" to al Qaeda (*see, e.g.*, FAC ¶¶ 66, 73, 74, 472) has no bearing on whether this Court has personal jurisdiction over Prince Mohamed. *See* MMem. at 3 & n.3.

Since they plainly have not made sufficient allegations specific to Prince Mohamed, plaintiffs instead seek to establish personal jurisdiction by repeatedly asserting that he (and every other defendant) was part of a "global conspiracy." Opp. 1, 3-4, 6, 8, 10, 14-18, 22, citing FAC ¶¶ 66, 72, 73, 74, 308-312, 472-474, 477. But while plaintiffs seem to argue that the bare allegation of "conspiracy" is enough to withstand a motion to dismiss, *see* Opp. 6-7, the Second Circuit explicitly disagrees. *See Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction."); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 793 (2d Cir. 1999) (same); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002) (same).[4]

In particular, to establish jurisdiction over an individual defendant on a "conspiracy" basis, the plaintiffs must make *prima facie* showings that (i) he was a *member* of the conspiracy, i.e., that he made some agreement with some other person in the pursuit of some illegal purpose

---

[4] *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) (same); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) (Posner, J.) ("[C]ases are unanimous that a bare allegation of a conspiracy" between the defendant and a person within the jurisdiction is not enough to establish personal jurisdiction.).

4

or the commission of some illegal act (*Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); *Laborers Local*, 26 F. Supp. 2d at 601 (S.D.N.Y. 1998)); and (ii) the persons who acted tortiously in New York were acting as his agent. *See Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981) (reh'g & reh'g en banc denied); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1269 (S.D.N.Y. 1991); *Laborers Local,* 26 F. Supp. 2d at 602. The essence of conspiracy is agreement. *See United States v. Jimenez Recio*, 537 U.S. 270 (2003); *Laborers Local*, 26 F. Supp. 2d at 603-04 (allegations failed to meet constitutional requirements for personal jurisdiction where complaint did "not set forth any facts indicating that [defendant] was in any way a party to this alleged scheme;" lacked "clear, well-defined explanation of [defendant's] role in the alleged conspiracy;" and lacked "any references to specific connections between [defendant] and the conspiracy in New York"). Plaintiffs' difficulty in this case is that they do not allege that Prince Mohamed ever agreed with anyone about anything--let alone anything improper.[5]

Plaintiffs assert (Opp. 10) that "[t]wo recent cases involving the hijacking of airplanes outside the United States . . . provide support for exercising personal jurisdiction here." But the defendants in *Rein v. Socialist People's Libyan Arab Jamahiriya,* 995 F. Supp. 325 (E.D.N.Y. 1998), and *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 290 F. Supp. 2d 54 (D.D.C. 2003)) were Libya and Libyan officials subject to *personal* jurisdiction under the Foreign

---

[5]  Plaintiffs, at Opp. 6, cite FAC ¶¶ 66 and 72-74 in support of their conspiracy allegation, but ¶ 66 merely asserts that all defendants were co-conspirators, without any supporting facts (there or elsewhere) as to Prince Mohamed. Paragraph 72 alleges that the Attack was a direct, intended, foreseeable product of *some* conspiracy, which is surely true but irrelevant to Prince Mohamed in the absence of facts connecting *him* to the conspiracy. Paragraphs 73 and 74, alleging that the conspiracy called for the material support of the co-defendants and that al Qaeda could not have achieved the Attack without support, are similarly irrelevant to Prince Mohamed in the absence of any facts connecting him to the conspiracy.

5

Sovereign Immunities Act, 28 U.S.C. s 1330(a). The *Pugh* court found sufficient minimum contacts because the officials allegedly conspired specifically to destroy aircraft containing Americans. 290 F. Supp. 2d. at 59. The cases are irrelevant to the question in this case: whether plaintiffs have sufficiently alleged any connection whatever between Prince Mohamed and either the United States or September 11.

Plaintiffs also argue (Opp. 12-13) that "the Second Circuit recognizes a modified due process standard for mass torts," which abandons "defendant-forum contacts as a precondition for the exercise of personal jurisdiction." *See* Opp. 12-13. But they cite only two decisions of a single district judge, who obviously could not overrule the Supreme Court's repeated holdings that due process requires that the defendant have sufficient minimum contacts with the forum. *See* MMem. 5. Indeed, in the most recent case, *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 128 (E.D.N.Y. 2000), the district judge said *"[o]nce it is determined that minimum contacts exist*, the reasonableness of exercising jurisdiction must be assessed," and that the mass tort situation made New York a "reasonable" forum. (Emphasis added.) Nothing in either *Simon* or *In re DES Cases*, 789 F. Supp. 552 (E.D.N.Y. 1992), suggests that a Saudi citizen who has no alleged contacts with New York, the United States, or September 11 may fairly be required to respond to a complaint in this Court just because that is convenient for plaintiffs.[6]

---

[6] Plaintiffs' novel theory (*see* Opp. 12 n.4) that they can make a *prima facie* showing of personal jurisdiction without pleading "minimum contacts" has been flatly rejected by the Supreme Court. *See, e.g., International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (the Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.") (citations omitted); *see also Bank Brussels*, 171 F.3d at 785.

6

### III. The FAC Fails To State any Claim Against Prince Mohamed Upon Which Relief Can Be Granted.

Plaintiffs nowhere dispute Prince Mohamed's showing (MMem. 11-17) that every one of their causes of action against him depends on establishing that he proximately caused the injuries at issue.[7] But they make no attempt to argue that anything Prince Mohamed himself did or failed to do was a proximate cause of these injuries.[8] Instead, plaintiffs argue that their allegations of "aiding and abetting" and "conspiracy" are sufficient to hold Prince Mohamed liable for injuries directly caused by others. But plaintiffs *also* failed to allege, except in utterly conclusory terms, that Prince Mohamed aided and abetted anyone, or conspired with anyone, who *did* cause their injuries.

With respect to aiding and abetting, plaintiffs cite *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), but that case requires "knowing action that substantially aids" the tortious conduct at issue. *Id.* at 478. The defendant accused of aiding and abetting must have knowingly provided help, and he must in fact have substantially assisted the tortfeasor in committing the acts that injured the plaintiff. *See id.* Plaintiffs also cite *Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002), but that case (similarly) allowed an aiding and abetting claim to proceed only because it was alleged that the defendants knowingly, substantially, and actually

---

[7] Plaintiffs' assertion (Opp. 14) that Prince Mohamed has moved to dismiss under Rule 12(b)(6) solely on the basis of failure to plead proximate causation is incorrect. Prince Mohamed has moved to dismiss certain counts under Rule 12(b)(6) for a variety of other reasons that plaintiffs do not deign to answer. *See* MMem. at 11-17.

[8] They do argue (Opp. 15, citing FAC ¶ 75) that their general allegation that the Attack would not have been possible without the assistance of all the defendants (collectively) is sufficient. But neither FAC ¶ 75 nor anything else in the FAC connects *Prince Mohamed* to their injuries, even in a "but for" sense. The allegation, "I would not have been injured 'but for' the unspecified actions of several hundred defendants" is obviously not enough, in itself, to connect any particular defendant with a plaintiff's injury. *See* MMem. 3-4, n.3.

assisted the misconduct at issue: the *Boim* plaintiffs alleged that defendants "knowingly and intentionally supp[lied] the funds to the persons who committed the violent acts [that killed plaintiffs' son]." *Id.* at 1021. Fact-free generalizations aside, plaintiffs here have not alleged that Prince Mohamed gave anything of value to anyone, or that he knowingly (or otherwise) assisted the September 11 terrorists or anyone else in any way.

With respect to conspiracy, plaintiffs concede (Opp. 14) that they must allege that their injuries were caused by "an unlawful overt act by *one of the parties to the agreement*" (emphasis by plaintiffs). Plaintiffs who allege conspiracy must plead specific facts showing that there was an *agreement* to participate in an unlawful act, and that the injury was caused by the unlawful act.[9] *See* MMem. 14-15; *see also Heart Disease Research Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972); *Chrysler Capital*, 778 F. Supp. at 1266; *Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (Sup. Ct. 1994). But they have not alleged that Prince Mohamed was a party to any such "agreement." They do fill their Opposition with phrases like "Prince Mohamed's participation in al Qaida's conspiracy to commit terrorist attacks against the United States" (Opp. 15), but they do not allege any facts suggesting that he entered into any agreement with anyone, within al Qaeda or otherwise, or that he participated in, knew about, desired, supported, or otherwise had anything whatsoever to do with September 11 or any other such attack.

At best, the FAC alleges that FIBS was a funnel for funds from wholly unidentified sources. The bank, and *a fortiori*, its chairman, cannot be held liable under these circumstances

---

[9] The wholly conclusory allegation that Prince Mohamed (and every other defendant) "conspired with" al Qaeda (FAC ¶ 66) is insufficient to state a claim. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (conclusory allegations unsupported by factual assertions fail even the liberal pleading standard of Rule 12(b)(6)); *Smith*, 291 F.3d at 240 (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss).

for the allegedly unlawful acts of its depositors. *See* MMem. 19 (citing *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) (Robertson, J.); *Armour & Co. v. Celic*, 294 F.2d 432, 439 (2d Cir. 1961)).

Finally, plaintiffs' reliance on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), is misplaced. That case, which involved an employment discrimination claim, did not change the law of the Second Circuit that a *conspiracy* must be pleaded with sufficient particularity and a "bare bones statement of conspiracy . . . without any supporting facts permits dismissal" under Rule 12(b)(6). *Heart Disease*, 463 F.2d at 100; *see also Twombly v. Bell Atlantic Corp.*, 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003).

In *Twombly*, a conspiracy case, the court ruled that *Swierkiewicz* "did not change the law of pleading ... but simply re-emphasized" that heightened pleading standards do not apply to Title VII claims. 313 F. Supp. 2d at 181. The court reasoned that a plaintiff's theory in Title VII cases is "fairly self-evident" so that "defendants will be apprised of the basic facts, and will know how to defend the action." *Id.* By contrast, a plaintiff's conspiracy theory "is not evident from a conclusory allegation of conspiracy, and there is simply no way to defend against such a claim without having some idea of how and why the defendants are alleged to have conspired." *Id.* Requiring notice of the conduct which is alleged to be conspiratorial is "fully consistent with the liberal notice-pleading requirements [under Rule 8] in that it seeks only to notify the defendant of the legal theory upon which plaintiff intends to proceed." *Id.* at 181-82 (quoting *Levitch v. Columbia Broad. Sys.*, 495 F. Supp. 649, 675 (S.D.N.Y. 1980)).[10]

---

[10]   *See also Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004) (under *Swierkiewicz,* plaintiffs must plead factual predicate sufficient under the circumstances of the particular case); *Internet Law Library Inc. v. Southbridge Capital Mgmt., LLC*, 223 F. Supp. 2d

9

---

Prince Mohamed is a respected and thoroughly honorable man who--in February 2002, long before any of these cases was filed--publicly expressed his personal condolences to the victims of September 11 and joined "with the rest of the world in utterly condemning such acts unreservedly." The horrific assertion that he is complicit in mass murder has no basis in fact, and no facts that support it are alleged. He is entitled to swift dismissal of the FAC.

## CONCLUSION

For the foregoing reasons, and those contained in the Memorandum of Law in Support of the Motion to Dismiss the First Amended Complaint, Prince Mohamed respectfully requests that the Court grant his motion to dismiss, with prejudice.[11]

---

474, 488 (S.D.N.Y. 2002) (*Swierkiewicz* does not change Second Circuit requirement to plead sufficient facts to state a claim).

[11] Plaintiffs should not be given leave to amend their pleadings at this late date. This lawsuit has been pending since September 24, 2003. The FAC, which has already been massively amended, and is being further modified by plaintiffs' agreement to eliminate false and baseless allegations against Prince Mohamed, utterly fails to state any basis for asserting jurisdiction over him, or any claim against him. He has suffered the emotional burden of false allegations of complicity in mass murder, as well as the personal and financial burden of this lawsuit. He is entitled to swift final dismissal of the FAC. Amendment would be futile and should not be allowed. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995).

|  |  |
|---|---|
| August 4, 2004 | Respectfully submitted,<br><br>*/s/ Louis R. Cohen*<br>Louis R. Cohen (LC 4012)<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>2445 M Street N.W.<br>Washington, D.C. 20037<br>Tel.: 202-663-6000<br>Fax: 202-663-6363<br><br>David P. Donovan (DD 7012)<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>1600 Tysons Boulevard, 10th Floor<br>McLean, VA 22102<br>Tel: 703-251-9700<br>Fax: 703-251-9797<br><br>David W. Bowker (DB 3029)<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>399 Park Avenue<br>New York, NY 10022<br>Tel.: 212-230-8800<br>Fax: 212-230-8888 |

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 4, 2004, I caused an electronic copy of the REPLY MEMORANDUM OF LAW OF PRINCE MOHAMED AL-FAISAL AL-SAUD IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT to be served electronically by the Court's Electronic Case Filing (ECF) System on all parties scheduled for electronic notice and by first-class mail on any parties not participating in the Court's ECF system as thereafter advised by the Court.

August 4, 2004                                                Louis R. Cohen