**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| IN RE:  TERRORIST ATTACKS ON ) | **Civil Action No. 03 MDL 1570 (RCC)** |
| SEPTEMBER 11, 2001 ) | |
| _____) | |

This document relates to:

| | |
|---|---|
| _____ ) | |
| FEDERAL INSURANCE CO., <u>et al.</u>, ) | |
| Plaintiffs, ) | |
| v. ) | **Civil Action No. 03 CV 6978 (RCC)** |
| ) | |
| AL QAIDA, <u>et al.</u>, ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OF THE KINGDOM OF SAUDI ARABIA**

KELLOGG, HUBER, HANSEN,
 TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

August 4, 2004

**Table Of Contents**

Page

Table Of Authorities ..................................................................................................... ii

Standard Of Review For A Motion To Dismiss A Foreign Sovereign ........................... 2

Statement Of Facts ......................................................................................................... 3

Summary Of Argument ................................................................................................... 7

Argument:

      Under Well-Settled Principles, Saudi Arabia Is Immune From Plaintiffs' Suit ................. 7

    A.     The FSIA Requires Dismissal of the Claims Against Saudi Arabia ....................... 7

    B.     The FSIA Exceptions Do Not Apply ................................................................... 8

        1.     The allegations do not implicate the "state sponsors of terrorism" FSIA exception ................................................................................................ 8

        2.     The non-commercial torts exception does not confer jurisdiction over plaintiffs' suit ......................................................................................... 9

        3.     The allegations do not implicate the "commercial activities" FSIA exception ............................................................................................. 14

Conclusion .................................................................................................................... 16

# Table Of Authorities

Page

**CASES**

Alicog v. Kingdom of Saudi Arabia,
    860 F. Supp. 379 (S.D. Tex. 1994) .......................................................................8

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989).........................................................................................11, 14

Asociacion de Reclamantes v. United Mexican States,
    735 F.2d 1517 (D.C. Cir. 1984) .......................................................................14

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003).......................................10, 11, 12, 13, 14, 16

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993)..........................................................................2

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998)............................................................................2

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) ........................................................................3

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    507 U.S. 163 (1993)........................................................................................2

Letelier v. Republic of Chile,
    488 F. Supp. 665 (D.D.C. 1980) ...............................................................13, 14

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001).............................................................2

Liu v. Republic of China,
    892 F.2d 1419 (9th Cir. 1989) ...................................................................13, 14

MacArthur Area Citizens' Ass'n v. Republic of Peru,
    809 F.2d 918 (D.C. Cir. 1987) ...................................................................12, 13

Morgan v. International Bank for Reconstruction & Dev.,
    752 F. Supp. 492 (D.D.C. 1990) ....................................................................13

Persinger v. Islamic Republic of Iran,
    729 F.2d 835 (D.C. Cir. 1984) .......................................................................14

<u>Phoenix Consulting, Inc. v. Republic of Angola,</u>
    216 F.3d 36 (D.C. Cir. 2000) ..................................................3

<u>Price v. Socialist People's Libyan Arab Jamahiriya,</u>
    294 F.3d 82 (D.C. Cir. 2002) ..................................................11

<u>Republic of Argentina v. Weltover, Inc.,</u>
    504 U.S. 607 (1992) ..................................................15

<u>Robinson v. Government of Malaysia,</u>
    269 F.3d 133 (2d Cir. 2001) ..................................................3

<u>Saudi Arabia v. Nelson,</u>
    507 U.S. 349 (1993) ..................................................8, 15

<u>Tel-Oren v. Libyan Arab Republic,</u>
    726 F.2d 774 (D.C. Cir. 1984) ..................................................14

<u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),</u>
    467 U.S. 797 (1984) ..................................................12, 13

<u>Virtual Countries, Inc. v. Republic of South Africa,</u>
    300 F.3d 230 (2d Cir. 2002) ..................................................2

## STATUTES AND RULES

Export Administration Act of 1979, 50 U.S.C. App. §§ 2401 <u>et seq.</u>:

    50 U.S.C. App. § 2405(j) ..................................................9

    50 U.S.C. App. § 2405(j)(1)(A) ..................................................8-9

    50 U.S.C. App. § 2405(j)(2)-(4) ..................................................9

Federal Tort Claims Act, 28 U.S.C. § 2680(a) ..................................................12

Foreign Assistance Act of 1961, 22 U.S.C. § 2371 ..................................................9

    22 U.S.C. § 2371(a) ..................................................8

    22 U.S.C. § 2371(b) ..................................................9

    22 U.S.C. § 2371(c) ..................................................9

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq.................................1

     28 U.S.C. § 1330...........................................................................................16

     28 U.S.C. § 1603(d)......................................................................................15

     28 U.S.C. § 1603(e)......................................................................................16

     28 U.S.C. § 1604........................................................................................7, 8

     28 U.S.C. § 1605(a)(2)...............................................................2, 8, 14, 15, 16

     28 U.S.C. § 1605(a)(5).............................................................1, 8, 9, 10, 11, 14

     28 U.S.C. § 1605(a)(5)(A).............................................................................12

     28 U.S.C. § 1605(a)(7)..........................................................1, 5, 6, 7, 8, 9, 10, 11

Fed. R. Civ. P. 12(b)..........................................................................................2

Fed. R. Civ. P. 12(h)(2)......................................................................................2

Fed. R. Civ. P. 12(h)(3)......................................................................................2

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604....................................12, 14

**OTHER MATERIALS**

Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1.........................6

David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times,
     July 23, 2004, at A11 ........................................................................................6

The 9/11 Commission Report: Final Report of the National Commission on Terrorist
     Attacks Upon the United States (July 2004)....................................................1, 6

Following an exhaustive and authoritative investigation, the presidentially appointed and congressionally chartered National Commission on Terrorist Attacks Upon the United States ("9/11 Commission") has definitively concluded that the Kingdom of Saudi Arabia had no role in perpetrating the attacks of September 11, 2001.  In particular, the 9/11 Commission found that the Kingdom of Saudi Arabia did <u>not</u> provide financial or material assistance to the September 11 terrorists or their Al-Qaeda organization:  "Saudi Arabia has long been considered the primary source of al Qaeda funding, but we have found <u>no evidence</u> that the Saudi government as an institution or senior Saudi officials individually funded the organization."  <u>The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States</u> 171 (July 2004) ("9/11 Commission Report") (emphasis added).

The Kingdom of Saudi Arabia has nonetheless been named as a defendant in the complaint filed by the Federal Insurance Plaintiffs.[1]  Even aside from the fact that it is a complete fabrication, that complaint must be dismissed.  The Kingdom is immune from suit under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602 <u>et seq</u>.  Plaintiffs have made no effort to meet the pleading requirements of the FSIA as to a foreign sovereign.  Indeed, from the face of the complaint, those requisites are clearly not satisfied.  The Kingdom of Saudi Arabia has not been designated as a state sponsor of terrorism by the United States Department of State and therefore the jurisdictional provision of 28 U.S.C. § 1605(a)(7) may not be invoked.

Nor may the plaintiffs make an end run around the requirement of State Department designation by invoking the non-commercial torts exceptions of § 1605(a)(5).  Claims that a foreign state provided material support to terrorists may only be brought following such a

---

[1] <u>Federal Ins. Co., et al. v. Al Qaida, et al.</u>, Civil Action No. 03 CV 6978 (S.D.N.Y.).

designation.  In any event, the non-commercial torts exception does not apply for multiple,

independently dispositive reasons.  Nor do plaintiffs' allegations involve "commercial activities"

of the state, 28 U.S.C. § 1605(a)(2), under well-established law.  Accordingly, the Kingdom of

Saudi Arabia must be dismissed from this suit.[2]

### Standard Of Review For A Motion To Dismiss A Foreign Sovereign

Although normally this Court would assume the truth of a complaint's allegations when

reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b), see, e.g.,

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164

(1993), that standard does not apply in judging the adequacy of allegations involving the official

acts of a foreign sovereign.  In resolving immunity claims under the FSIA, a district court may

not "accept the mere allegations of the complaint as a basis for finding subject matter

jurisdiction."  Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).  Where a

defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has the burden

of going forward with evidence showing that, under exceptions to the FSIA, immunity should

not be granted."  Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir.

2002) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993)

(emphasis added)); see also Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,

184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (once defendant has proffered evidence of its status as

sovereign, plaintiff can "rebut the presumption of immunity for the foreign defendant by

---

[2] The Kingdom has additional defenses based on justiciability and failure to state a claim.
Since these are not subject to waiver, however, see Fed. R. Civ. P. 12(h)(2), (3), the Kingdom
will reserve those claims.

proffering evidence of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity").[3]

### Statement Of Facts

The principal allegations made against the Kingdom of Saudi Arabia as a sovereign (as distinct from entities plaintiffs claim to be "agencies and instrumentalities" of the Kingdom[4]) are captured in but a few paragraphs of the complaint.  See First Amended Complaint ¶¶ 398-410 (S.D.N.Y. filed Mar. 10, 2004) ("Compl.").  Those paragraphs allege that the government of Saudi Arabia gave financial and material assistance to Al-Qaeda.  Importantly, none of them alleges that the government of Saudi Arabia played any role in the events of September 11. In any event, the allegations are pure fabrication, as both the State Department and the 9/11 Commission have concluded.

**A.**  The complaint alleges that Al-Qaeda's "phenomenal growth and development into a sophisticated global terrorist network" was made possible by the "massive financial, logisitcal [sic] and other support it received from the Kingdom of Saudi Arabia."  Id. ¶ 398.  It further

---

[3] See also Robinson v. Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001) (quoting Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[w]hen the defendant has . . . challenged the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss")); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 448-49 (D.C. Cir. 1990) (holding that, where the "conclusory allegations" in a plaintiff's complaint are challenged by a sovereign defendant, "the district court must do more than just look to the pleadings to ascertain whether to grant the motion to dismiss").

[4] The complaint asserts that a number of other defendants are "agencies or instrumentalities" of the Kingdom of Saudi Arabia.  See, e.g., Compl. ¶¶ 85 (Benevolence International Foundation), 114 (Muslim World League), 130 (International Islamic Relief Organization), 150 (World Assembly of Muslim Youth), 167 (Al Haramain Islamic Foundation), 180 (Saudi High Commission), 191 (Saudi Red Crescent), 208 (Rabita Trust), 287 (National Commercial Bank).  Each of those entities is separately represented in this lawsuit.  The purpose of this motion to dismiss is to address the allegations as they pertain to the Kingdom of Saudi Arabia.

asserts that the government of Saudi Arabia "established, funded, managed, maintained, directed and controlled many of the ostensible charities and banks that operate within al Qaida's support infrastructure," and that "[t]he vast majority of these funds" for Al-Qaeda "have been provided by the Kingdom of Saudi Arbia [sic] and members of the Saudi Royal Family." Id. ¶ 399.  The complaint further alleges that "the Kingdom of Saudi Arabia has appointed senior members of the al Qaida movement to high ranking positions within the charities it controlled, thereby providing a cover for their terrorist activity and facilitating the provision of material support and resources to al Qaida." Id.  The complaint further asserts that Al-Qaeda has "planned and coordinated terrorist attacks from branch offices of the charities, including branches which operated from within Saudi embassies throughout the world." Id.  Plaintiffs contend that French and U.S. government officials raised with Saudi officials their concern that Saudi charities were deeply involved "in the sponsorship and funding of terrorist organizations." Id. ¶ 400.

The complaint then contends that, in spite of international opposition, the government of Saudi Arabia "continued to funnel enormous amounts of money and other resources to the charities supporting al Qaida's operations." Id. ¶ 401.  Through those actions, plaintiffs allege, "the Kingdom of Saudi Arabia and members fo [sic] the Royal Family knew and intended that the funding and support funneled to al Qaida through the charities and banks would be used to attack U.S. interests." Id. ¶ 402.  Plaintiffs further seek to establish a link between Saudi Arabia and the September 11 attacks through alleged links between the Saudi government and the Taliban. See id. ¶¶ 403-407.  Without that support, plaintiffs assert, Al-Qaeda would not have been able to grow and develop into a network capable of conducting "large scale acts of terrorism on a global scale, such as the September 11th Attack." Id. ¶ 409.

Elsewhere, the complaint repeats the conclusory allegation that "the Kingdom of Saudi Arabia has, for many years and in diverse regions throughout the world, played a central and critical role in funding, facilitating and supporting al Qaida's global operations."  Id. ¶ 423. Plaintiffs do not assert any direct link between Saudi Arabia and the September 11 attacks, but rather contend that those attacks were a "direct, intended and foreseeable product of the Kingdom of Saudi Arabia's participation in al Qaida's jihadist campaign."  Id. ¶ 425.

Those claims, which are untrue, do not in any event implicate the government of Saudi Arabia in the September 11 attacks.  The complaint alleges no knowledge of the attacks on the part of any Saudi government official, much less complicity in their perpetration.  Nor does the complaint assert any linkage between alleged Saudi material support to the Taliban and Al-Qaeda in the 1990s, and the terrorist acts by Al-Qaeda terrorists committed on September 11, 2001.

**B.**  Plaintiffs' claims are directly rebutted in numerous ways by dispositive facts found by the United States government.  First, the complaint concedes by omission that the Department of State has not made the formal determination that the Kingdom of Saudi Arabia is a state sponsor of terrorism that is required for this Court to exercise jurisdiction under the FSIA, 28 U.S.C. § 1605(a)(7).  In lieu of a direct allegation that Saudi Arabia has received the necessary designation as a state sponsor of terrorism, plaintiffs make the wholly unsupported assertion that "Saudi Arabia has long provided material support and resources to al Qaida, including massive financial and logistical assistance, as further described herein."  Compl. ¶ 64.  The State Department, however, clearly disagrees with plaintiffs' contentions, because it has not made such a designation, which it is required to do before plaintiffs may invoke this Court's jurisdiction under the FSIA, 28 U.S.C. § 1605(a)(7).

Second, as already noted, the presidentially appointed and congressionally chartered 9/11 Commission has concluded that the Kingdom of Saudi Arabia did not provide financial or material assistance to the September 11 terrorists.  While not ruling out the possibility that some charities diverted funds to Al-Qaeda, the 9/11 Commission "found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al-Qaeda.  9/11 Commission Report at 171.  See also David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times, July 23, 2004, at A11 ("The commission did not find any Saudi government involvement in the Sept. 11 attacks or in financing Al Qaeda, contrary to charges made popular by books and films."); Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1 ("In a long-awaited final report scheduled for release today, the Sept. 11 panel concluded that there was no evidence that the Saudi government or Saudi officials knew of or supported the plot to attack the United States").

The 9/11 Commission further notes that the Kingdom of Saudi Arabia, along with the United States, is "now locked in mortal combat with al Qaeda."  9/11 Commission Report at 373.  Indeed, as far back as 1996, Osama bin Laden "condemned the Saudi monarchy for allowing the presence of [American troups] in a land with the sites most sacred to Islam" and called for attacks on the Kingdom.  Id. at 48.  The Kingdom of Saudi Arabia thus itself became a target of Al-Qaeda because of its strong ties to the United States.  Shortly thereafter, the Kingdom and the United States established a joint intelligence committee and worked together in an effort to stop bin Laden and his terrorist organization.  Id. at 115-22.

## Summary Of Argument

The Kingdom of Saudi Arabia is entitled to sovereign immunity against the claims asserted by the Federal Insurance Plaintiffs.  Jurisdiction is foreclosed under the FSIA because Saudi Arabia is a sovereign nation to which the general rule of immunity applies.  None of the exceptions to sovereign immunity is applicable here.  The terrorism exception is foreclosed because the State Department has not designated Saudi Arabia as a state sponsor of terrorism.

Nor can the plaintiffs evade that requirement by invoking the non-commercial torts exception.  Such an end run would eviscerate § 1605(a)(7)'s requirement of State Department designation of state sponsorship of terrorism before a sovereign nation can be sued for allegedly providing material support for terrorism.  In any event, any alleged torts committed by Saudi government officials would fall within the discretionary function exception to the non-commercial torts provision; and the mass attack on September 11 is not the type of tort contemplated by Congress in the enactment of the non-commercial torts exception.

Finally, the commercial activities exception does not apply because none of the allegations asserts that Saudi Arabia engaged in "commercial activities" as that exception has been construed by the courts.

## Argument

### Under Well-Settled Principles, Saudi Arabia Is Immune From Plaintiffs' Suit

### A.    The FSIA Requires Dismissal of the Claims Against Saudi Arabia

The general rule announced in the FSIA is that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  It is well settled

7

that Saudi Arabia, as a foreign sovereign, is entitled to the general provision of immunity

conferred by § 1604.  See, e.g., Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (holding that

"a foreign state is presumptively immune from the jurisdiction of the United States courts; unless

a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim

against a foreign state"; Saudi Arabia therefore was immune from suit); Alicog v. Kingdom of

Saudi Arabia, 860 F. Supp. 379, 385 (S.D. Tex. 1994) (holding that Saudi Arabia was immune

from suit for alleged acts of its consular officers in United States notwithstanding the

discretionary torts exception).

### B.       The FSIA Exceptions Do Not Apply

The complaint recognizes the FSIA's applicability, but purports to base jurisdiction on

three exceptions:  commercial activities, 28 U.S.C. § 1605(a)(2); state sponsors of terrorism, id.

§ 1605(a)(7); and non-commercial torts committed in the United States, id. § 1605(a)(5).  See

Compl. ¶ 68.  Those exceptions do not apply to the allegations against Saudi Arabia.

1.   The allegations do not implicate the "state sponsors of terrorism" FSIA exception.

The plain text of § 1605(a)(7) covers jurisdiction for claims, in pertinent part:

> in which money damages are sought against a foreign state for personal injury or
> death that was caused by an act of torture, extrajudicial killing, aircraft sabotage,
> hostage taking, or the provision of material support or resources (as defined in
> section 2339A of title 18) for such an act if such act or provision of material
> support is engaged in by an official, employee, or agent of such foreign state
> while acting within the scope of his or her office . . . , except that the court shall
> decline to hear a claim under this paragraph —
>      (A) if the foreign state was not designated as a state sponsor of terrorism
> under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App.
> 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)
> at the time the act occurred . . . .[5]

---

[5] Existing mechanisms in federal statutory law provide that the United States will not
provide foreign assistance or validate an export license for business to any country that "has
repeatedly provided support for acts of international terrorism."  22 U.S.C. § 2371(a); 50 U.S.

The Federal Insurance Plaintiffs' complaint clearly seeks money damages (Compl. ¶ 646), and its central allegations against Saudi Arabia involve that country's supposed "material support" for "Al-Qaeda" (id. ¶ 409), which allegedly enabled Al-Qaeda to "conduct large scale acts of terrorism on a global scale, such as the September 11th Attack" (id.).  Thus, the FSIA exception that most closely tracks the allegations made against Saudi Arabia for its alleged role in the September 11 attacks is § 1605(a)(7).  Yet the terrorist acts exception itself contains a provision specifying that "the court shall decline to hear a claim under this paragraph . . . if the foreign state was not designated as a state sponsor of terrorism" under 50 U.S.C. App. § 2405(j) or 22 U.S.C. § 2371, pursuant to which the State Department is required to make such designations for export license and foreign assistance purposes.  It is undisputed that the State Department has not designated Saudi Arabia under either statutory provision as "a state sponsor of terrorism."  Thus, the "material support" for terrorism exception does not apply and jurisdiction may not be obtained under § 1605(a)(7).

2.  <u>The non-commercial torts exception does not confer jurisdiction over plaintiffs' suit</u>. The non-commercial torts exception permits, with certain exceptions, actions "in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5).  The non-commercial torts exception does not apply here for multiple, independent reasons.

---

App. § 2405(j)(1)(A).  Both provisions provide similar mechanisms for the Secretary of State to report his findings to Congress and to publish such determinations in the Federal Register, and for the President to rescind the Secretary of State's findings when the foreign state is found no longer to be supporting acts of terrorism.  <u>See</u> 22 U.S.C. § 2371(b) & (c); 50 U.S.C. App. § 2405(j)(2)-(4).

      <u>First</u>, the Federal Insurance Plaintiffs may not make an end run around the requirement of State Department designation by recasting their "support for terrorism" claims as an ordinary tort.  The claims against Saudi Arabia are, in substance, no different than those already rejected by Judge Robertson that were brought in <u>Burnett v. Al Baraka Investment & Development Corp.</u>, 292 F. Supp. 2d 9 (D.D.C. 2003), against Prince Turki Al-Faisal bin Abdulaziz Al-Saud and Prince Sultan bin Abdulaziz Al-Saud:  "claims that Prince Turki and Prince Sultan, acting in their official capacities, funded or provided material resources to those who funded or provided material resources to the terrorists who perpetrated the September 11th attacks."  <u>Id.</u> at 19.  Such claims must be brought, not under § 1605(a)(5), but under § 1605(a)(7), which expressly covers allegations of "the provision of material support or resources" for terrorist actions.  28 U.S.C. § 1605(a)(7).  Section 1605(a)(7) requires that, for immunity to be denied to a foreign state or an official of a foreign state, the State Department must determine whether that state is sponsoring terrorism through "material support or resources" in the conduct of a terrorist act.  By invoking § 1605(a)(5), plaintiffs are simply attempting an end run around that requirement.

      Congress made a deliberate legislative choice to confer on the State Department the important role of designating state sponsors of terrorism to avoid the potential clash of judicial findings about a state's involvement in terrorism with decisions of the Executive Branch, which is entrusted to conduct the Nation's foreign affairs.  If plaintiffs cannot sue the Kingdom of Saudi Arabia for allegedly aiding terrorist acts — because the Kingdom is not on the State Department's list of state sponsors of terrorism — then they cannot sue the Kingdom (or its top government officials) under a similar theory, simply by citing § 1605(a)(5) instead of § 1605(a)(7).  To hold otherwise would render § 1605(a)(7) meaningless and launch suits that Congress sought to prevent against foreign states that have not been designated sponsors of

terrorism.  See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 88 (D.C.

Cir. 2002) (holding that original FSIA did not encompass claims of state-sponsored terrorism

because that was considered an "immunized form[] of state activity").  See also id. (the

amendments added a "new class of claims for which certain foreign states would be precluded

from asserting sovereign immunity" that included when a state provides "material support or

resources" for terrorists, 28 U.S.C. § 1605(a)(7)).

        In granting Prince Turki Al-Faisal's motion to dismiss in Burnett, Judge Robertson

expressly adopted this reasoning.  He concluded that the omission of the "provision of material

support" as an act giving rise to liability under § 1605(a)(5) "should be treated as intentional" by

Congress.  292 F. Supp. 2d at 20 (internal quotation marks omitted).  Accordingly, the FSIA

exception that specifically addresses the "provision of material support" — § 1605(a)(7) — does

not apply here because the State Department has not designated Saudi Arabia as a state sponsor

of terrorism, and plaintiffs cannot evade that Executive Branch determination by invoking

§ 1605(a)(5).  See 292 F. Supp. 2d at 20 n.5.

        Second, plaintiffs' claims — concerning alleged official support by the Saudi government

of the Taliban and other groups — fall far afield of Congress's primary purpose in enacting the

non-commercial torts exception, which was to treat foreign sovereigns like other employers with

respect to respondeat superior liability for injuries caused by their employees acting within the

scope of their employment.  This FSIA provision seeks "to eliminate a foreign state's immunity

for traffic accidents and other torts committed in the United States, for which liability is imposed

under domestic tort law."  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

439-40 (1989).  The Federal Insurance Plaintiffs' complaint does not allege the types of routine

tort or respondeat superior claims that the exception was intended to address.

11

As Judge Robertson agreed in <u>Burnett</u>, " 'the legislative history [of the FSIA] counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law.' " 292 F. Supp. 2d at 19 (quoting <u>MacArthur Area Citizens' Ass'n v. Republic of Peru</u>, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Here, plaintiffs allege an extravagantly attenuated theory of causation against the government of Saudi Arabia in an attempt to hold the nation, its instrumentalities and agencies, and its foreign government officials responsible for the actions of terrorists in the United States.  This theory extends far beyond any conceivable purpose for the exception as designed by Congress.  As Judge Robertson concluded in dismissing the claims against Prince Turki Al-Faisal and Prince Sultan, "[i]n the FSIA context, plaintiffs' allegations that (i) Prince Turki or Prince Sultan funded (ii) those who funded (iii) those who carried out the September 11 attacks would stretch the causation requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita." <u>Id.</u> at 20.

<u>Third</u>, the non-commercial torts exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A).  The FSIA's discretionary function exception is modeled on a similar exception to jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  <u>See</u> H.R. Rep. No. 94-1487, at 20-21 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6619-20.  The purpose of both exceptions is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 814 (1984) (construing FTCA).

Like the <u>Burnett</u> claims that Judge Robertson rejected, the Federal Insurance Plaintiffs'

claims involve purely "official acts . . . squarely covered by the 'discretionary function' language

of subsection A."  <u>Burnett</u>, 292 F. Supp. 2d at 20.  The complaint involves an unabashed attack

on the Saudi government's policy of supporting Islamic charities, coupled with assertions that

Saudi governmental funds played a role in the September 11 attacks, but the purpose behind the

discretionary function exception is to avoid judicial scrutiny of foreign governmental policies in

a manner that would bring the Judicial Branch into conflict with the Executive.  That concern is

all the more pressing here, given that plaintiffs' baseless allegations run headlong into

determinations by the State Department and the 9/11 Commission that the government of Saudi

Arabia has not provided material support to terrorists generally or the September 11 attackers

specifically.  In any event, any decisions by the Saudi government to provide funds to particular

charities would clearly be " 'decisions grounded in social, economic, and political policy.' "  <u>Id.</u>

at 20-21 (quoting <u>Varig Airlines</u>, 467 U.S. at 814).  All of the acts alleged to have been

committed by Saudi government officials occurred — according to plaintiffs' own

representations — in the exercise of their discretion in carrying out the foreign intelligence and

international security policies of the Kingdom of Saudi Arabia.  Under the FSIA, those policies

are not subject to attack through a tort suit, any more than the official actions of the United States

could be attacked through an FTCA tort suit.  <u>See</u>, <u>e.g.</u>, <u>MacArthur Area Citizens' Ass'n</u>, 809

F.2d at 923 (finding immunity based on exercise of discretionary function); <u>Morgan v.</u>

<u>International Bank for Reconstruction & Dev.</u>, 752 F. Supp. 492, 495 (D.D.C. 1990) (same).[6]

---

[6] <u>Letelier v. Republic of Chile</u>, 488 F. Supp. 665, 673 (D.D.C. 1980), and <u>Liu v. Republic</u>
<u>of China</u>, 892 F.2d 1419 (9th Cir. 1989), do not apply.  Those cases "involved causal links
significantly shorter and more direct than those alleged here:  in <u>Letelier</u>, the foreign sovereign
and sovereign officeholders were alleged to have 'caused or aided' in the assassinations; in <u>Liu</u>,

Fourth, for § 1605(a)(5) to apply, the tortious act itself, and not merely the injury caused by it, must occur in the United States.  See, e.g., Persinger v. Islamic Republic of Iran, 729 F.2d 835, 842 (D.C. Cir. 1984); see also H.R. Rep. No. 94-1487, at 7, 20-21, reprinted in 1976 U.S.C.C.A.N. 6604, 6605, 6619 ("the tortious act or omission must occur within the jurisdiction of the United States").  The Saudi government is not alleged to have committed any act, much less any tortious act, in this country.  The "entire tort" for which the defendant is to be held responsible must occur in the United States.  Asociacion de Reclamantes v. United Mexican States, 735 F.2d 1517, 1524-25 (D.C. Cir. 1984).  Effect in the United States is not enough.  Id. at 1524 (comparing § 1605(a)(5) with § 1605(a)(2)'s language concerning acts "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States").[7]  All of the Saudi government's alleged actions occurred overseas.  See Compl. ¶¶ 398-409.  The non-commercial torts exception, therefore, simply does not apply.

    3.  The allegations do not implicate the "commercial activities" FSIA exception.  The complaint nowhere alleges that Saudi Arabia engaged in any commercial activity under § 1605(a)(2), either in the United States or abroad.  Plaintiffs' allegations assert that Saudi Arabia provided material support to various Islamic charities, which in turn provided assistance

_____

the foreign state was held vicariously liable for the actions of its employee, criminal acts of a rather different character and order."  Burnett, 292 F. Supp. 2d at 21.  The assassins in Letelier and Liu were thus agents of the foreign government.  No claim has been made here that the September 11 hijackers were in any respect agents of the government of Saudi Arabia.  And any such claim has been decisively rejected by the 9/11 Commission's authoritative findings.  See pp. 1, 6, supra.

    [7] Judge Robertson rejected this argument, but in doing so made no effort to distinguish Amerada Hess or Asociacion de Reclamantes.  Instead, he relied on a concurring opinion by Judge Edwards in a case that pre-dated Asociacion de Reclamantes, Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 775 (D.C. Cir. 1984).

to the September 11 terrorists, and not that supposed "commercial" activities of the Saudi

government itself had the requisite direct effect on the terrorist attacks.  At the most basic level,

jurisdiction does not exist over plaintiffs' claims because they have not asserted any

"commercial activity" on the part of Saudi Arabia.  At best, the allegations assert that the Saudi

government provided funds to various Islamic charities.  Such actions are not "commercial" in

nature and therefore do not satisfy the basic feature of § 1605(a)(2).

The FSIA defines "commercial activity" as "either a regular course of commercial

conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  That provision

further clarifies that "[t]he commercial character of an activity shall be determined by reference

to the nature of the course of conduct or particular transaction or act, rather than by reference to

its purpose."  Id.  Under that definition, even accepting plaintiffs' allegations as true, the mere

giving of governmental funds must be viewed as a non-commercial charitable or sovereign act,

which would remove the plaintiffs' allegations from the scope of the statute.  See, e.g., Saudi

Arabia v. Nelson, 507 U.S. at 360 (noting that foreign state's actions fall within commercial

activities exception only when "it acts 'in the manner of a private player within' the market")

(quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)).  Governmental

support for charities does not meet that standard.

Even if it were not fatal to plaintiffs' jurisdiction argument that the mere transferring of

governmental funds to charitable organizations is not a "commercial activity," the Federal

Insurance Plaintiffs' complaint further fails to assert relevant facts that would bring the

"commercial activity" exception within any of the three enumerated statutory prerequisites, none

of which is satisfied here.  The allegations do not meet the first aspect of § 1605(a)(2) because no

"commercial activity" of Saudi Arabia was allegedly "carried on in the United States."  All of

15

the supposed transfers of funds occurred in Saudi Arabia; none was alleged to have occurred in the United States.  Even if some transfers did occur in the United States, the complaint nowhere alleges that those commercial activities had "substantial contact with the United States." 28 U.S.C. § 1603(e).

Nor do the allegations satisfy the second clause of § 1605(a)(2) because there is no assertion of any "act performed in the United States in connection with a commercial activity of the foreign state elsewhere" (emphasis added).  To meet that requirement, the allegations must assert a connection between the putative act of the foreign state elsewhere — i.e., the giving of funds to Islamic charities — and the "act performed in the United States."  Yet the alleged causal connection between the allegations of funds to charities and the September 11 attacks is completely attenuated — as Judge Robertson explained in rejecting similar allegations. See Burnett, 292 F. Supp. 2d at 20.

Finally, and relatedly, the third clause of § 1605(a)(2) requires "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  Plaintiffs have not asserted (and cannot plausibly assert) a "direct effect" between any of Saudi Arabia's alleged actions elsewhere and the United States.

### Conclusion

Because plaintiffs' allegations against Saudi Arabia fall directly within the general rule of sovereign immunity and the statutory exceptions to immunity do not apply, the Federal Insurance Plaintiffs' complaint against Saudi Arabia must be dismissed in its entirety for lack of jurisdiction under the FSIA.  See 28 U.S.C. § 1330.

Respectfully submitted,

KELLOGG, HUBER, HANSEN,
  TODD & EVANS, P.L.L.C.

By: /s/_____
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

August 4, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 4th day of August 2004, I caused copies of the <u>Notice of</u>
<u>Motion</u>, the <u>Memorandum of Law in Support of Motion To Dismiss of the Kingdom of Saudi</u>
<u>Arabia</u>, and a proposed <u>Order</u> to be to be served electronically pursuant to the Court's ECF
system and by United States first-class mail on any parties not participating with the Court's
ECF system as thereafter advised by the Court.

/s/ _____
Michael J. Guzman