**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
IN RE:  TERRORIST ATTACKS ON          )          **Civil Action No. 03 MDL 1570 (RCC)**
SEPTEMBER 11, 2001                          )
_____)

This document relates to:

_____
                                                    )
FEDERAL INSURANCE CO., <u>et al.</u>,       )
                            Plaintiffs,          )
v.                                                    )          **Civil Action No. 03 CV 6978 (RCC)**
                                                    )
AL QAIDA, <u>et al.</u>,                           )
                            Defendants.        )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**AND TO QUASH SERVICE OF PROCESS OF HIS ROYAL HIGHNESS**
**PRINCE BANDAR BIN SULTAN BIN ABDULAZIZ**

KELLOGG, HUBER, HANSEN,
   TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

August 4, 2004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

STANDARD OF REVIEW ..............................................................................................2

STATEMENT OF FACTS ...............................................................................................3

SUMMARY OF ARGUMENT ........................................................................................4

ARGUMENT ....................................................................................................................5

I.      Prince Bandar Enjoys Diplomatic Immunity From Plaintiffs' Suit .....................5

II.     The FSIA Requires Dismissal Of The Claims Against Prince Bandar For
The Official Acts Alleged In The Complaint ......................................................9

        A.     The FSIA's General Rule Affords Prince Bandar Immunity from
Plaintiffs' Suit ..........................................................................................9

        B.     None of the FSIA Exceptions to Immunity Applies ...............................11

              1.     The Allegations Do Not Implicate the Exception for "State
Sponsors of Terrorism" Under the FSIA Exceptions ...............11

              2.     The Non-Commercial Torts Exception Does Not Confer
Jurisdiction over Plaintiffs' Suit .............................................12

              3.     The Alleged Charitable Contributions Are Not "Commercial
Activities" Under the FSIA Exceptions ....................................16

        CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

Abdulaziz v. Metropolitan Dade County,
741 F.2d 1328 (11th Cir. 1984) ................................................................9

Aidi v. Yaron,
672 F. Supp. 516 (D.D.C. 1987) ..............................................................2

Argentine Republic v. Amerada Hess Shipping Corp.,
488 U.S. 428 (1989)..............................................................................9, 14

Baiz, In re,
135 U.S. 403 (1890)................................................................................6

Bryks v. Canadian Broad. Corp.,
906 F. Supp. 204 (S.D.N.Y. 1995).........................................................10

Burnett v. Al Baraka Inv. & Dev. Corp.,
292 F. Supp. 2d 9 (D.D.C. 2003) .........................................12, 13, 14, 15, 16, 17

Cargill Int'l S.A. v. M/T Pavel Dybenko,
991 F.2d 1012 (2d Cir. 1993)................................................................2

Carrera v. Carrera,
174 F.2d 496 (D.C. Cir. 1949) ..............................................................9

Chuidian v. Philippine Nat'l Bank,
912 F.2d 1095 (9th Cir. 1990) ..............................................................10

El-Fadl v. Central Bank of Jordan,
75 F.3d 668 (D.C. Cir. 1996) ................................................................10

Filetech S.A. v. France Telecom S.A.,
157 F.3d 922 (2d Cir. 1998)..................................................................2

First Am. Corp. v. Sheikh Zayed Bin Sultan Al-Nahyan,
948 F. Supp. 1107 (D.D.C. 1996) ..................................................... 10-11

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
905 F.2d 438 (D.C. Cir. 1990) ..............................................................3

Herbage v. Meese,
747 F. Supp. 60 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991) ..........................11

Hitz, Ex parte,
     111 U.S. 766 (1884) ...................................................................................6

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan:
     940 F. Supp. 312 (D.D.C. 1996), rev'd in part, 115 F.3d 1020 (D.C. Cir. 1997)...............6

     115 F.3d 1020 (D.C. Cir. 1997) .................................................................10

Letelier v. Republic of Chile:
     488 F. Supp. 665 (D.D.C. 1980) ..........................................................15, 16

     748 F.2d 790 (2d Cir. 1984).........................................................................17

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
     184 F. Supp. 2d 277 (S.D.N.Y. 2001)..........................................2, 10, 11

Liu v. Republic of China,
     892 F.2d 1419 (9th Cir. 1989) .............................................................15, 16

MacArthur Area Citizens' Ass'n v. Republic of Peru,
     809 F.2d 918 (D.C. Cir. 1987) ..................................................................14

Monell v. Department of Social Servs.,
     436 U.S. 658 (1978)...................................................................................10

Phaneuf v. Republic of Indonesia,
     106 F.3d 302 (9th Cir. 1997) .....................................................................11

Phoenix Consulting, Inc. v. Republic of Angola,
     216 F.3d 36 (D.C. Cir. 2000) ......................................................................3

Price v. Socialist People's Libyan Arab Jamahiriya,
     294 F.3d 82 (D.C. Cir. 2002) ....................................................................13

Reers v. Deutsche Bahn AG,
     No. 03-5360, 2004 WL 1229711 (S.D.N.Y. June 3, 2004) .................................2

Republic of Argentina v. Weltover, Inc.,
     504 U.S. 607 (1992)...................................................................................16

Republic of Philippines v. Marcos,
     665 F. Supp. 793 (N.D. Cal. 1987) ......................................................5, 6, 9

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001)...........................................................................3

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)..........................................................................................16

Shaffer v. Singh,
    343 F.2d 324 (D.C. Cir. 1965) .........................................................................9

Tabion v. Mufti,
    877 F. Supp. 285 (E.D. Va. 1995), aff'd, 73 F.3d 535 (4th Cir. 1996) ..........7, 8

United States v. Al-Hamdi,
    356 F.3d 564 (4th Cir. 2004) ...........................................................................6

United States v. Coplon,
    84 F. Supp. 472 (S.D.N.Y. 1949).....................................................................6

United States v. Enger,
    472 F. Supp. 490 (D.N.J. 1978) .......................................................................9

United States v. Lumumba,
    578 F. Supp. 100 (S.D.N.Y. 1983)...................................................................6

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
    467 U.S. 797 (1984)..........................................................................................15

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)..............................................................................2

Zdravkovich v. Consul Gen. of Yugoslavia,
    No. 98-7034, 1998 WL 389086 (D.C. Cir. June 23, 1998) ................................9


## TREATIES, STATUTES, AND RULES

Vienna Convention on Diplomatic Relations, done Apr. 18, 1961, United States
    accession, Dec. 13, 1972, 23 U.S.T. 3227, T.I.A.S. No. 7502,
    500 U.N.T.S. 95 ..........................................................................................1, 5, 6, 7, 8

Diplomatic Relations Act of 1978, 22 U.S.C. § 254d........................................1, 2, 5, 6

Federal Tort Claims Act, 28 U.S.C. § 2680(a) ......................................................15

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq. ...............................1

    28 U.S.C. § 1330 ...............................................................................................11

    28 U.S.C. § 1603(a) ..........................................................................................10

    28 U.S.C. § 1603(b) ..........................................................................................10

    28 U.S.C. § 1603(d) ......................................................................................... 16

    28 U.S.C. § 1604 ...............................................................................................10

    28 U.S.C. § 1605(a)(2) ..........................................................................11, 16, 17

    28 U.S.C. § 1605(a)(5) ..........................................................................11, 12, 13

    28 U.S.C. § 1605(a)(5)(A) .................................................................................15

    28 U.S.C. § 1605(a)(7) ..........................................................................11, 12, 13

    28 U.S.C. § 1605(a)(7)(A) .................................................................................12

Fed. R. Civ. P. 12(b) ................................................................................................1

Fed. R. Civ. P. 12(b)(2) ...........................................................................................2

Fed. R. Civ. P. 12(h)(2) ...........................................................................................1

Fed. R. Civ. P. 12(h)(3) ...........................................................................................1

## LEGISLATIVE MATERIALS

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604 ...........................10, 15, 17

## OTHER MATERIALS

Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1 ........................4

Restatement (Third) of Foreign Relations Law of the United States (1987) ...................................9

David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times,
    July 23, 2004, at A11 ..........................................................................................................4

Statement of Interest of the United States, <u>Tabion v. Mufti</u>, Civ. A. No. 94-1481-A
(E.D. Va. filed Jan. 27, 1995) ............................................................................8

<u>The 9/11 Commission Report: Final Report of the National Commission on Terrorist
Attacks Upon the United States</u> (July 2004)....................................................4

His Royal Highness Prince Bandar bin Sultan bin Abdulaziz ("Prince Bandar") hereby moves, pursuant to Federal Rule of Civil Procedure 12(b) and the Diplomatic Relations Act of 1978, 22 U.S.C. § 254d, to dismiss all of the claims asserted against him and to quash service of process upon him.

As the Ambassador of the Kingdom of Saudi Arabia to the United States since 1983, Prince Bandar must be dismissed from this litigation based on his diplomatic immunity.  Article 31 of the Vienna Convention on Diplomatic Relations of 1961 — expressly incorporated into § 254d of the Diplomatic Relations Act — states that an ambassador is immune from the civil jurisdiction of the receiving state, except in very limited circumstances not present here.  By Certification of Status (attached hereto as Ex. A), the United States Department of State has confirmed Prince Bandar's diplomatic rank of Ambassador of the Kingdom of Saudi Arabia, and thus his immunity from suit pursuant to the terms of the Vienna Convention.

In addition to the Ambassador's diplomatic immunity, the Foreign Sovereign Immunities Act of 1976 ("FSIA") requires dismissing Prince Bandar from this suit.  The few allegations raised against Prince Bandar in this action all concern charitable contributions made in Prince Bandar's capacity as Ambassador to the United States.  None of the exceptions to the FSIA raised in the complaint — concerning state sponsors of terrorism, non-commercial torts committed in the United States, and commercial activities — applies to the allegations against Prince Bandar.

Accordingly, this Court should quash service of process upon Prince Bandar and dismiss all claims against him for lack of jurisdiction.[1]

---

[1] Prince Bandar has additional defenses based on justiciability and failure to state a claim. Since these defenses are not subject to waiver, see Fed. R. Civ. P. 12(h)(2), (3), Prince Bandar will reserve them.

## STANDARD OF REVIEW

Under the Diplomatic Relations Act of 1978, "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed." 22 U.S.C. § 254d. Diplomatic immunity prevents the exercise of personal jurisdiction. It is thus properly raised both in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and as a motion to quash service of process. See Aidi v. Yaron, 672 F. Supp. 516, 517-18 (D.D.C. 1987) ("It is axiomatic that if jurisdiction is not available, then service of process is void, making a motion to quash service of process a valid remedy."). Although this Court views the pleadings in the light most favorable to plaintiffs when reviewing a motion to dismiss, plaintiffs bear the burden of establishing that this Court may exercise personal jurisdiction over Prince Bandar. See Reers v. Deutsche Bahn AG, No. 03-5360, 2004 WL 1229711, at *4 (S.D.N.Y. June 3, 2004) (to be reported at 320 F. Supp. 2d 140).

In addition, because the complaint contains allegations involving the official acts of a foreign sovereign, and thus raises immunity claims under the FSIA, this Court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Where a defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993) (emphasis added)); see also Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (once defendant has proffered evidence of its status as sovereign, plaintiff can

"rebut the presumption of immunity for the foreign defendant by proffering evidence of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity").[2]

### STATEMENT OF FACTS

Only seven paragraphs in the complaint of Federal Insurance Co., et al. ("Federal Insurance Plaintiffs") reference Prince Bandar.  See First Amended Complaint ¶¶ 66, 420, 478-482 (S.D.N.Y. filed Mar. 10, 2004) ("Compl.").  None of those allegations suggests that Prince Bandar knew in advance about, participated in, or approved of the events of September 11, 2001, that caused these plaintiffs their claimed losses.

Instead, plaintiffs allege in the most conclusory terms that Prince Bandar "aided and abetted, conspired with, and provided material support and resources to" Al-Qaeda.  Id. ¶ 66.  Only slightly more specifically, plaintiffs allege that Prince Bandar, "[i]n his capacity as Ambassador to the United States," directed "millions of dollars" in embassy and personal funds to "charities operating within [Al-Qaeda's] infrastructure."  Id. ¶¶ 479-480.  Plaintiffs try to bolster this allegation by alluding to an unspecified federal investigation into funds in the bank accounts of Prince Bandar and the Royal Embassy and the "possible funneling of those funds to terrorist organizations."  Id. ¶¶ 481-482.

---

[2]   See also Robinson v. Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001) (quoting Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[w]hen the defendant has . . . challenged the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss")); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 448-49 (D.C. Cir. 1990) (holding that, where the "conclusory allegations" in a plaintiff's complaint are challenged by a sovereign defendant, "the district court must do more than just look to the pleadings to ascertain whether to grant the motion to dismiss").

Nowhere do plaintiffs allege that Prince Bandar knew or intended that any purported charitable contributions would materially benefit Al-Qaeda.  Instead, plaintiffs claim that, at some unspecified time, Prince Bandar gave money to various different charities, which in turn gave money to Al-Qaeda, which in turn sponsored terrorism around the world.  That claim, however, has now been flatly rejected by the National Commission on Terrorist Attacks Upon the United States ("9/11 Commission").  While not ruling out the possibility that some charities diverted funds to Al-Qaeda, the 9/11 Commission "found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al-Qaeda.  The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States 171 (July 2004) ("9/11 Commission Report").  See also David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times, July 23, 2004, at A11 ("The commission did not find any Saudi government involvement in the Sept. 11 attacks or in financing Al Qaeda, contrary to charges made popular by books and films."); Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1 ("In a long-awaited final report scheduled for release today, the Sept. 11 panel concluded that there was no evidence that the Saudi government or Saudi officials knew of or supported the plot to attack the United States").

## SUMMARY OF ARGUMENT

As the Ambassador of the Kingdom of Saudi Arabia to the United States since 1983, Prince Bandar is entitled to diplomatic immunity from the claims in this suit.  This Court is obliged under well-settled precedent to respect that immunity, quash any official service of process, and dismiss this action to prevent plaintiffs from subjecting the Ambassador to suit during his diplomatic service.  Plaintiffs' allegations do not fall within any recognized exception to diplomatic immunity.  Plaintiffs assert that the Ambassador directed personal and Embassy

funds to charitable organizations in the United States and abroad.  They allege that those charities, either directly or indirectly, provided money to Al-Qaeda's infrastructure and thus ultimately contributed to the acts of terrorism committed by Al-Qaeda members.  No allegation suggests that the Ambassador conducted any commercial activity for personal profit in the United States connected to the September 11 attacks.  Without that connection, Prince Bandar's diplomatic immunity may not be infringed.

In addition, Prince Bandar is immune from suit under the FSIA for his alleged acts as head of the Mission of the Kingdom of Saudi Arabia to the United States.  His official actions as Ambassador represent the sovereign acts of the Kingdom of Saudi Arabia, and no exception to the FSIA allows this suit to proceed against him.  Accordingly, this action must be dismissed.

## ARGUMENT

### I.     Prince Bandar Enjoys Diplomatic Immunity From Plaintiffs' Suit

Under the well-settled doctrine of diplomatic immunity, established by international treaty and codified in federal law, Prince Bandar is immune from civil suit for the acts alleged in plaintiffs' complaint.  The international practice of diplomatic immunity enjoys a longstanding and "rich jurisprudential and statutory history."  Republic of Philippines v. Marcos, 665 F. Supp. 793, 798 (N.D. Cal. 1987).  The custom of immunizing diplomats from the civil jurisdiction of the receiving state was officially codified in 1961 with the adoption of the Vienna Convention on Diplomatic Relations, done Apr. 18, 1961, United States accession, Dec. 13, 1972, 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 95 ("Vienna Convention").  Article 31.1 of the Vienna Convention states that a diplomatic agent "shall enjoy immunity" from the civil and administrative jurisdiction of the receiving state.  Congress incorporated the protections of the Vienna Convention into the Diplomatic Relations Act of 1978, which states that "[a]ny action or

proceeding brought against an individual who is entitled to immunity with respect to such action

or proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed."

22 U.S.C. § 254d.  Accordingly, the Diplomatic Relations Act requires courts to recognize all of

the privileges and immunities extended under the Vienna Convention and to dismiss any suit that

encroaches upon those rights.  Republic of Philippines, 665 F. Supp. at 798.

Determining whether a foreign citizen is protected by diplomatic immunity is a question

entrusted to the Executive Branch of the federal government.  See In re Baiz, 135 U.S. 403, 432

(1890); Ex parte Hitz, 111 U.S. 766 (1884); United States v. Al-Hamdi, 356 F.3d 564, 570 (4th

Cir. 2004); Republic of Philippines, 665 F. Supp. at 799-800; United States v. Coplon, 84 F.

Supp. 472, 475 (S.D.N.Y. 1949).  The status of a diplomat turns upon the receiving state's

decision to accept the head of the sending state's mission.  See United States v. Lumumba, 578

F. Supp. 100, 103 (S.D.N.Y. 1983).  Therefore, diplomatic immunity is decided not by the

federal courts, but by the Executive, acting through the Department of State.  See Jungquist v.

Sheikh Sultan Bin Khalifa Al Nahyan, 940 F. Supp. 312, 321-22 (D.D.C. 1996) ("[T]he

determination of a diplomat's status as such is made by the State Department, not the Court."),

rev'd in part on other grounds, 115 F.3d 1020 (D.C. Cir. 1997); Coplon, 84 F. Supp. at 475.

The Diplomatic Relations Act specifies that the status, and hence immunity, of a

diplomat "may be established upon motion or suggestion by or on behalf of the individual."  22

U.S.C. § 254d.  By a Certification of Status prepared by the United States Department of State,

through the Office of Protocol, the United States has confirmed that Prince Bandar is currently

registered (and has been since 1983) on the Diplomatic List maintained by the State Department

commonly known as the "Blue List."  See Ex. A.  The State Department's Certification expressly

notes that Prince Bandar, as the recognized Ambassador from the Kingdom of Saudi Arabia,

enjoys full immunity under the provisions of the Vienna Convention on Diplomatic Relations.
Id.

As noted in the State Department's Certification, the immunity guaranteed in Article 31.1 of the Vienna Convention is subject to three narrow exceptions.  Article 31.1(a) denies diplomatic immunity in the case of "a real action relating to private immovable property situated in the territory of the receiving State."  Article 31.1(b) denies immunity for "an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee."  And Article 31.1(c) denies immunity for "an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions."

None of these exceptions is applicable to the facts alleged in this suit.  This is not "a real action relating to private immovable property."  This is not "an action relating to succession."  And this is not "an action relating to any professional or commercial activity exercised by the diplomatic agent."

Plaintiffs apparently intend to rely upon the last of these provisions.  But, in any relevant sense, the giving of charitable donations is neither "professional" nor "commercial" activity.  The language of Article 31.1(c), moreover, must be read in conjunction with Article 42, which states that "[a] diplomatic agent shall not in the receiving State practice for personal profit any professional or commercial activity" (emphasis added).  These closely linked provisions make it "evident" that "Article 31(1)(c) was intended to reach those rare instances where a diplomatic agent ignores the restraints of his office and, contrary to Article 42, engages in [commercial] activity in the receiving State."  Tabion v. Mufti, 877 F. Supp. 285, 291 (E.D. Va. 1995), aff'd, 73 F.3d 535 (4th Cir. 1996); see also Declaration of Professor Eileen Denza ¶ 3 ("Denza Decl.") ("The underlying concern was that it was normally improper for an ambassador to engage in

trade, and that if he did in fact trade for personal profit he should not be able to take advantage of his immune status.") (attached as Ex. B).  Interpreting those provisions, the United States government has explained that the term "commercial activity" does not mean any commercial transaction, but refers specifically to " 'the pursuit of trade or business.' "  Statement of Interest of the United States at 4, <u>Tabion v. Mufti</u>, Civ. A. No. 94-1481-A (E.D. Va. filed Jan. 27, 1995) (<u>quoted in</u> <u>Tabion</u>, 877 F. Supp. at 292).  Article 31.1(c), therefore, applies only where a diplomat engages in a systematic and ongoing course of business, for personal profit, inside the receiving state.  <u>See</u> <u>Tabion</u>, 877 F. Supp. at 291.

Plaintiffs' complaint contains no allegation that Prince Bandar engaged in a continuous course of commercial activity inside the United States related to the September 11 attacks. Rather, plaintiffs merely allege that the Ambassador made or oversaw a number of unspecified charitable contributions.  <u>See</u> Compl. ¶¶ 479-480.  Even accepting this allegation as true for the purposes of this motion, it fails to satisfy the express requirements of Article 31.1(c).  As explained by the leading authority on the Vienna Convention:

> To stretch the exception from diplomatic immunity in Article 31.1(c) to cover charitable contributions by an ambassador — whether made in his official or in his personal capacity — would totally alter its purpose and scope.  By their nature, gifts to charity are not made for personal profit or reward.  They are not made pursuant to any contract, and they are not in any normal sense of the words "professional or commercial activities."

Denza Decl. ¶ 4.  Given the plain meaning of this limited exception, it is not surprising that "there is no case where any court in the United States or in any other country has applied Article 31.1(c) of the Vienna Convention so as to withdraw the normal immunity of a diplomat in respect of contributions that he has given to charities."  <u>Id.</u> ¶ 6.  No facts alleged in plaintiffs' complaint, therefore, justify an exception to the Ambassador's diplomatic immunity, and this

Court "must dismiss [the] action." Restatement (Third) of Foreign Relations Law of the United States § 464, at 461 (1987).

Because Prince Bandar is not alleged to have engaged in any continuous commercial activity in the United States related to the September 11 attacks, his alleged charitable donations cannot provide any basis for eliminating his diplomatic immunity. Accordingly, the State Department's Certification confirming Prince Bandar's inclusion on the Diplomatic Blue List and his immunity from the jurisdiction of this Court dictates dismissal of this suit, for "[i]t is enough that an ambassador has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court." Carrera v. Carrera, 174 F.2d 496, 497 (D.C. Cir. 1949). Once the Executive Branch has certified the diplomatic status of a foreign citizen, "[t]he courts are required to accept the State Department's determination that a foreign official possesses diplomatic immunity from suit." Zdravkovich v. Consul Gen. of Yugoslavia, No. 98-7034, 1998 WL 389086, at *1 (D.C. Cir. June 23, 1998); see also Abdulaziz v. Metropolitan Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984); Shaffer v. Singh, 343 F.2d 324, 325-26 (D.C. Cir. 1965); Carrera, 174 F.2d at 497; Republic of Philippines, 665 F. Supp. at 799; United States v. Enger, 472 F. Supp. 490, 506 n.19 (D.N.J. 1978).

## II.     The FSIA Requires Dismissal Of The Claims Against Prince Bandar For The Official Acts Alleged In The Complaint

### A.     The FSIA's General Rule Affords Prince Bandar Immunity from Plaintiffs' Suit

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). It prescribes "when and how parties can maintain a lawsuit against a foreign state or its entities in

the courts of the United States and . . . when a foreign state is entitled to sovereign immunity."

H.R. Rep. No. 94-1487, at 6 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6604.  The FSIA

provides a general grant of immunity to "foreign states":

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act a foreign state shall be immune from the
> jurisdiction of the courts of the United States and of the States except as provided
> in sections 1605 to 1607 of this chapter.  28 U.S.C. § 1604.

The Act defines the term "foreign state" to include a "political subdivision of a foreign

state or an agency or instrumentality of a foreign state."  Id. § 1603(a).  Courts have expressly

recognized that "[a]n individual can qualify as an 'agency or instrumentality of a foreign state' "

for FSIA purposes.  El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996)

(quoting 28 U.S.C. § 1603(b); citing Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03

(9th Cir. 1990) (finding Philippine government official entitled to immunity under FSIA));

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027 (D.C. Cir. 1997)

(individuals acting in official capacity are considered "agencies or instrumentalities of a foreign

state"); Leutwyler, 184 F. Supp. 2d at 286-87 ("it has been generally recognized that individuals

employed by a foreign state's agencies or instrumentalities are deemed 'foreign states' [under the

FSIA] when they are sued for actions undertaken within the scope of their official capacities")

(citing Bryks v. Canadian Broad. Corp., 906 F. Supp. 204, 210 (S.D.N.Y. 1995)).  The rationale

for that principle stems from the common-sense recognition that "a suit against an individual

acting in his official capacity is the practical equivalent of a suit against the sovereign directly."

Chuidian, 912 F.2d at 1101-02 (citing, inter alia, Monell v. Department of Social Servs., 436

U.S. 658, 690 n.55 (1978)).  FSIA immunity thus is not based on the identity of the defendant so

much as the "nature of the act for which the person or entity is claiming immunity."  First Am.

Corp. v. Sheikh Zayed Bin Sultan Al-Nahyan, 948 F. Supp. 1107, 1120 (D.D.C. 1996) (quoting

Herbage v. Meese, 747 F. Supp. 60, 66 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991)).

The Certification provided by the State Department — which this Court must accord

"great weight" in resolving Prince Bandar's claim of immunity, Leutwyler, 184 F. Supp. 2d at

287 — conclusively establishes that Prince Bandar has served as the Ambassador from the

Kingdom of Saudi Arabia to the United States since 1983.  That Certification confirms the

common-sense conclusion that, as the sitting Ambassador of the Kingdom of Saudi Arabia to the

United States, Prince Bandar is an official of the Kingdom whose diplomatic mission constitutes

the official conduct of a foreign sovereign.  See, e.g., Phaneuf v. Republic of Indonesia, 106 F.3d

302, 306-07 (9th Cir. 1997) (ambassador "is entitled to a presumption of immunity under the

FSIA" for official acts taken "within the scope of his authority").  In this case, the few

allegations against Prince Bandar all concern charitable contributions he allegedly made in his

capacity as Ambassador to the United States.  See Compl. ¶ 479.  Prince Bandar is therefore

immune from suit for these acts unless the claims against him fall within one of the exceptions to

FSIA immunity.  Because none of these statutory exceptions to sovereign immunity applies,

plaintiffs' allegations against Prince Bandar involving his actions as Ambassador to the United

States must be dismissed for lack of jurisdiction under the FSIA.  See 28 U.S.C. § 1330.

**B.**     **None of the FSIA Exceptions to Immunity Applies**

1.     The Allegations Do Not Implicate the Exception for "State Sponsors of
Terrorism" Under the FSIA Exceptions

The complaint recognizes the FSIA's applicability, but purports to base jurisdiction on

three exceptions:  state sponsors of terrorism, 28 U.S.C. § 1605(a)(7); non-commercial torts

committed in the United States, id. § 1605(a)(5); and commercial activities, id. § 1605(a)(2).  See

Compl. ¶ 68.  Those exceptions do not apply to the allegations against Prince Bandar.

The first exception — which exempts from sovereign immunity a defendant who, among other things, is alleged to have provided "material support or resources" to terrorists — does not apply because Saudi Arabia has not been designated by the Department of State as a state sponsor of terrorism, which is a prerequisite for the § 1605(a)(7)(A) exception.  The complaint concedes this point by omission in reciting in other paragraphs that Iran, Iraq, Sudan, and Syria have been so designated.  See id. ¶¶ 55, 57, 59, 61.  Cf. id. ¶ 63.

2.      The Non-Commercial Torts Exception Does Not Confer Jurisdiction over Plaintiffs' Suit

The non-commercial torts exception permits, with certain exceptions, actions "in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5).  That exception does not apply to the allegations against Prince Bandar for three reasons.

First, the allegations against Prince Bandar, like those against other officials of the Kingdom of Saudi Arabia dismissed by Judge Robertson in Burnett v. Al Baraka Investment & Development Corp., 292 F. Supp. 2d 9 (D.D.C. 2003), amount to no more than the claim that Prince Bandar, in his official capacity as Ambassador, used charitable donations to "fund[] or provide[] material resources to those who funded or provided material resources to the terrorists who perpetrated the September 11th attacks."  Id. at 19.  Such claims must be brought, not under § 1605(a)(5), but under § 1605(a)(7), which expressly covers allegations of "the provision of material support or resources" for terrorist actions.  28 U.S.C. § 1605(a)(7).  Section 1605(a)(7) requires that, for immunity to be denied to a foreign state or official of a foreign state, the State Department must determine whether that state is sponsoring terrorism through "material support

12

or resources" in the conduct of a terrorist act.  By suing under § 1605(a)(5), plaintiffs impermissibly attempt an end run around this statutory requirement.

Congress made a deliberate choice to confer on the State Department the important role of designating state sponsors of terrorism to avoid the potential clash of judicial findings about a state's involvement in terrorism with decisions of the Executive Branch, which is entrusted to conduct the Nation's foreign affairs.  If plaintiffs cannot sue the Kingdom of Saudi Arabia for allegedly aiding terrorist acts — because Saudi Arabia is not on the State Department's list of state sponsors of terrorism — then they cannot sue its Ambassador under that same theory, simply by citing § 1605(a)(5) instead of § 1605(a)(7).  To hold otherwise would render § 1605(a)(7) meaningless and launch suits that Congress sought to prevent against foreign states that have not been designated sponsors of terrorism.  See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 88 (D.C. Cir. 2002) (holding that original FSIA did not encompass claims of state-sponsored terrorism because that was considered an "immunized form[] of state activity").  See also id. (the amendments added a "new class of claims for which certain foreign states would be precluded from asserting sovereign immunity" that included when a state provides "material support or resources" for terrorists, 28 U.S.C. § 1605(a)(7)).

Judge Robertson's decision in Burnett expressly adopts this reasoning.  Judge Robertson concluded that the omission of the "provision of material support" as an act giving rise to liability under § 1605(a)(5) "should be treated as intentional" by Congress.  292 F. Supp. 2d at 20 (internal quotation marks omitted).  Accordingly, the FSIA exception that specifically addresses the "provision of material support" — § 1605(a)(7) — does not apply here because the State Department has not designated Saudi Arabia as a state sponsor of terrorism, and plaintiffs cannot evade that determination of the Executive Branch by invoking § 1605(a)(5).  Id. at 20 n.5.

Second, plaintiffs' claim — that Prince Bandar coordinated support for charities, which in turn supported yet other entities that ultimately funded or provided material resources to the terrorists who perpetrated the September 11 attacks — falls far afield of Congress's primary purpose in enacting the non-commercial torts exception.  Congress sought to treat foreign sovereigns like other employers with respect to <u>respondeat superior</u> liability for injuries caused by their employees acting within the scope of their employment, and thus "eliminate[d] a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law."  <u>Amerada Hess</u>, 488 U.S. at 439-40.  The complaint does not allege the types of routine tort or <u>respondeat superior</u> claims the exception was intended to address.

Once again, <u>Burnett</u> agrees with this analysis, holding that "'the legislative history [of the FSIA] counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law.'"  292 F. Supp. 2d at 19 (quoting <u>MacArthur Area Citizens' Ass'n v. Republic of Peru</u>, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Like the allegations in <u>Burnett</u>, plaintiffs here allege an unprecedented and attenuated theory of causation in an attempt to hold the Ambassador of the Kingdom of Saudi Arabia responsible for the actions of terrorists in the United States on nothing more than the allegation that the Ambassador's charitable contributions were unknowingly routed through myriad channels into the hands of the terrorists.  This sweeping theory extends far beyond any conceivable purpose for the exception as designed by Congress.  As Judge Robertson concluded in dismissing the similar claims alleged in <u>Burnett</u>, "[i]n the FSIA context, plaintiffs' allegations that (i) [Saudi officials] funded (ii) those who funded (iii) those who carried out the September 11 attacks would stretch the causation

14

requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita."  Id. at 20.

Third, the non-commercial torts exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  The FSIA's discretionary function exception is modeled on a similar exception to jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  See H.R. Rep. No. 94-1487, at 20-21, reprinted in 1976 U.S.C.C.A.N. 6604, 6619-20.  The purpose of both exceptions is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984) (construing FTCA).

As Judge Robertson concluded, the allegation that Saudi officials coordinated charitable contributions is "squarely covered by the 'discretionary function' language of subsection A."  Burnett, 292 F. Supp. 2d at 20.  Judge Robertson explained that it is "nearly self-evident" that "making recommendations . . . about requests for assistance from Islamic organizations" and "deciding what disbursements should be made to Islamic charitable organizations" are "clearly . . . 'decisions grounded in social, economic, and political policy.' "  Id. at 20-21 (quoting Varig Airlines, 467 U.S. at 814).

In Burnett, plaintiffs invoked Letelier v. Republic of Chile, 488 F. Supp. 665, 673 (D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), to argue that terrorist acts can never be considered "discretionary."  But the relevant question is whether the acts of the official in question were discretionary.  As Judge Robertson correctly noted, those cases "involved causal links significantly shorter and more direct than those alleged here:  in

15

Letelier, the foreign sovereign and sovereign officeholders were alleged to have 'caused or aided' in the assassinations; in Liu, the foreign state was held vicariously liable for the actions of its employee, criminal acts of a rather different character and order." 292 F. Supp. 2d at 21. The assassins in Letelier and Liu were thus agents of the foreign government. No claim has been made here (nor could it be following the conclusions of the 9/11 Commission) that the September 11 hijackers were in any respect agents of Prince Bandar or the government of Saudi Arabia.

Accordingly, no interpretation of the statutory exception for non-commercial torts applies to plaintiffs' allegations against Prince Bandar.

3.      The Alleged Charitable Contributions Are Not "Commercial Activities" Under the FSIA Exceptions

Section 1605(a)(2) removes immunity for acts of foreign states "based upon a commercial activity" or performed "in connection with a commercial activity" of the foreign state. 28 U.S.C. § 1605(a)(2). The FSIA defines a "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act" with the commercial character of the activity "determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. § 1603(d). The Supreme Court has construed that provision to depend on "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." Saudi Arabia v. Nelson, 507 U.S. 349, 360-61 (1993) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)) (internal quotation marks omitted).

As Judge Robertson concluded in Burnett, the argument that charitable contributions constitute a commercial activity outside of the FSIA "is readily disposed of." 292 F. Supp. 2d at

16

17.  Plainly, "[t]he act of contributing to a foundation is not within our ordinary understanding of 'trade and traffic or commerce.' " <u>Id.</u> at 18.  Equally important, charitable contributions were not "within the contemplation of the Congress that enacted the FSIA in 1976." <u>Id.</u>  In adopting the commercial activity exception, Congress expected courts to look to the " 'essential nature' " of the act in question, and the "legislative history makes clear that courts should not deem activity 'commercial' as a whole simply because certain aspects of it are commercial." <u>Letelier v. Republic of Chile</u>, 748 F.2d 790, 796 (2d Cir. 1984) (quoting H.R. Rep. No. 94-1487, at 16, <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6615).  Congress thus sought to distinguish between purely commercial acts (such as a "contract to make repairs on an embassy building") and governmental acts that contain some commercial component (such as a state's "mere participation in a foreign assistance program").  H.R. Rep. No. 94-1487, at 16, <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6615.  Accordingly, a governmental act does not lose its sovereign nature simply because it "involve[s] behavior traditionally performed by private persons." <u>Letelier</u>, 748 F.2d at 796-97.

The legislative history clarifies even further the plain language of the FSIA's text, that Prince Bandar's alleged charitable contributions, even if they occurred, would not constitute a "commercial activity" within the meaning of the FSIA.  Nothing in the complaint alleges that Prince Bandar's official acts were of a type by which a private party engages in trade and traffic or commerce.  Accordingly, the exception to immunity in § 1605(a)(2) does not apply.

## CONCLUSION

For the foregoing reasons, the Court should quash service of process upon Prince Bandar and dismiss the complaint against His Excellency in its entirety.

Respectfully submitted,

KELLOGG, HUBER, HANSEN,
  TODD & EVANS, P.L.L.C.

_____
                /s/
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

*Attorneys for HRH Prince Bandar bin
Sultan bin Abdulaziz*

August 4, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of August 2004, I caused copies of the <u>Notice of Motion</u>, the <u>Memorandum of Law in Support of Motion To Dismiss and To Quash Service of Process of His Royal Highness Prince Bandar bin Sultan bin Abdulaziz</u>, and a proposed <u>Order</u> to be to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
—————————————————————
Michael J. Guzman
