# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| IN RE:  TERRORIST ATTACKS ON          ) | **Civil Action No. 03 MDL 1570 (RCC)** |
| SEPTEMBER 11, 2001                            ) | |
| _____) | |

This document relates to:

| | |
|---|---|
| _____ ) | |
| FEDERAL INSURANCE CO., et al.,          ) | |
|                 Plaintiffs,          ) | |
| v.                                                          ) | **Civil Action No. 03 CV 6978 (RCC)** |
|                          ) | |
| AL QAIDA, et al.,                                    ) | |
|                 Defendants.          ) | |
| _____) | |

## DECLARATION OF PROFESSOR EILEEN DENZA

Eileen Denza declares as follows:

1.        From 1963 until 1986, I was an Assistant Legal Adviser and later a Legal Counselor in the United Kingdom Foreign and Commonwealth Office.  From 1987 until 1995, I was Second Counsel to the Chairman of Committees and Legal Adviser to the European Communities Committee of the House of Lords.  I am the author of two books published by Oxford University Press, including Diplomatic Law, Commentary on the Vienna Convention on Diplomatic Relations (2d ed. 1998).  I also have contributed to Satow's Guide to Diplomatic Practice and to Lee's Consular Law and Practice and have published numerous other papers and articles on international and European law.

2.        Article 31.1(c) of the Vienna Convention on Diplomatic Relations created a new and limited exception to the general immunity of an ambassador from the civil jurisdiction of the host State.  It excludes diplomatic immunity in relation to any professional or commercial activity exercised by a diplomatic agent in the receiving State outside his official functions.

3.      As was pointed out by the United States Government during the preparation of the Articles of the Vienna Convention, this exception from diplomatic immunity was not part of customary international law.  At the Vienna Conference that negotiated and adopted the Convention, the proposal for a further exception was discussed in the context of the provision that became Article 42 of the Convention.  Article 42 states that "[a] diplomatic agent shall not in the receiving State practice for personal profit any professional or commercial activity."  The Conference records make clear that these two provisions were very closely linked.  The underlying concern was that it was normally improper for an ambassador to engage in trade, and that if he did in fact trade for personal profit he should not be able to take advantage of his immune status.

4.      To stretch the exception from diplomatic immunity in Article 31.1(c) to cover charitable contributions by an ambassador — whether made in his official or in his personal capacity — would totally alter its purpose and scope.  By their nature, gifts to charity are not made for personal profit or reward.  They are not made pursuant to any contract, and they are not in any normal sense of the words "professional or commercial activities."

5.      It is extremely common for diplomatic agents, and for ambassadors in particular, to support charitable bodies and to make gifts to charities in the receiving State and elsewhere.  It has never previously been suggested that this is in any way improper or that it should not be covered by diplomatic immunity in the ordinary way.

6.      To the best of my knowledge and belief, there is no case where any court in the United States or in any other country has applied Article 31.1(c) of the Vienna Convention so as to withdraw the normal immunity of a diplomat in respect of contributions that he has given to charities.

Executed this **28th** day of July, 2004, in London, England.

_____
Eileen Denza