# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **Civil Action No. 03 MDL 1570 (RCC)** |

This document relates to:

|  |  |
|---|---|
| FEDERAL INSURANCE CO., et al., <br>        Plaintiffs, <br> v. <br> AL QAIDA, et al., <br>        Defendants. | **Civil Action No. 03 CV 6978 (RCC)** |

## REPLY IN SUPPORT OF MOTION TO DISMISS
## AND TO QUASH SERVICE OF PROCESS OF HIS ROYAL HIGHNESS
## PRINCE TURKI AL-FAISAL BIN ABDULAZIZ AL-SAUD

KELLOGG, HUBER, HANSEN,
 TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

August 9, 2004

**Table Of Contents**

Page

Table Of Authorities ................................................................................................................. ii

Argument:

    I.       The FSIA Requires Dismissal Of The Claims Against Prince Turki ...................... 1

           A.     Plaintiffs Have Failed To Present Any Evidence To Rebut FSIA Immunity ................................................................................................ 1

           B.     Plaintiffs' FSIA Argument Is Also Legally Flawed ................................... 3

                  1.     The FSIA confers immunity on foreign officials like Prince Turki ................................................................................................. 3

                  2.     Plaintiffs' claims implicate the terrorism exception, which cannot apply here ............................................................................. 5

                  3.     The non-commercial torts exception does not apply to discretionary functions ................................................................... 6

                  4.     Plaintiffs do not allege that Prince Turki committed a tort within the U.S. ............................................................................... 7

                  5.     Plaintiffs have not adequately pleaded, much less proved, causation ....................................................................................... 8

           C.     The Commercial Activity Exception Does Not Apply ............................... 9

    II.      This Court Lacks Personal Jurisdiction Over Prince Turki .................................... 9

    III.     Diplomatic Immunity Requires Dismissal ........................................................... 10

# Table Of Authorities

Page

**CASES**

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989)..................................................................................................8

Arriba Ltd. v. Petroleos Mexicanos,
    962 F.2d 528 (5th Cir. 1992) .....................................................................................3

Asahi Metal Indus. Co. v. Superior Court,
    480 U.S. 102 (1987)................................................................................................10

Asociacion de Reclamantes v. United Mexican States,
    735 F.2d 1517 (D.C. Cir. 1984)..............................................................................7, 8

Bergman v. De Sieyes,
    170 F.2d 360 (2d Cir. 1948)....................................................................................10

Berkovitz v. United States,
    486 U.S. 531 (1988)..................................................................................................7

Bryks v. Canadian Broad. Corp.,
    906 F. Supp. 204 (S.D.N.Y. 1995)............................................................................3

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ..........................................................1, 3, 5, 6, 8, 9

Byrd v. Corporacion Forestal y Industrial de Olancho S.A.,
    182 F.3d 380 (5th Cir. 1999) .....................................................................................3

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993)....................................................................................1

Cruikshank v. United States,
    431 F. Supp. 1355 (D. Haw. 1977)............................................................................7

Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003)..................................................................................................4

Drexel Burnham Lambert Group Inc. v. Committee of Receivers for A.W. Galadari,
    12 F.3d 317 (2d Cir. 1993)........................................................................................6

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) ....................................................................................3

Filetech S.A. v. France Telecom S.A.:

    157 F.3d 922 (2d Cir. 1998)..................................................................................................1

    304 F.3d 180 (2d Cir. 2002)..................................................................................................2

Glickman v. United States,
    626 F.Supp. 171 (S.D.N.Y. 1985).........................................................................................7

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ..........................................................................................8, 9

Herbage v. Meese,
    747 F. Supp. 60 (D.D.C. 1990), aff'd, 946 F.2d 1564 (D.C. Cir. 1991) ...............................6

Joseph v. Office of Consulate General,
    830 F.2d 1018 (9th Cir. 1987) ..............................................................................................4

Kentucky v. Graham,
    473 U.S. 159 (1985)..............................................................................................................4

Kline v. Kaneko,
    685 F. Supp. 386 (S.D.N.Y. 1988).......................................................................................3

Letelier v. Republic of Chile,
    488 F. Supp. 665 (D.D.C. 1980) ......................................................................................6, 7

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)...............................................................................2, 3

Liu v. Republic of China,
    892 F.2d 1419 (9th Cir. 1989) .........................................................................................6, 7

Mateo v. Perez,
    No. 98 Civ. 7426 (SAS), 1999 U.S. Dist. LEXIS 4871 (S.D.N.Y. Apr. 13, 1999).............3

Olsen v. Government of Mexico,
    729 F.2d 641 (9th Cir. 1984) ...............................................................................................7

Orlikow v. United States,
    682 F. Supp. 77 (D.D.C. 1988) ............................................................................................7

Park v. Shin,
    313 F.3d 1138 (9th Cir. 2002) .............................................................................................4

Persinger v. Islamic Republic of Iran,
    729 F.2d 835 (D.C. Cir. 1984) .............................................................................................7

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992).................................................................................................6

Risk v. Halvorsen,
    936 F.2d 393 (9th Cir. 1991) .....................................................................................7

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001).................................................................................1, 3

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993).................................................................................................6

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
    467 U.S. 797 (1984).................................................................................................7

Velasco v. Government of Indonesia,
    370 F.3d 392 (4th Cir. 2004) ...................................................................................3

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002).................................................................................1, 2

**TREATY AND STATUTES**

Vienna Convention on Diplomatic Relations, done Apr. 18, 1961, United States
    accession, Dec. 13, 1972, 23 U.S.T. 3227, T.I.A.S. No. 7502,
    500 U.N.T.S. 95 .....................................................................................................10

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq.:

    28 U.S.C. § 1605(a)(2)..............................................................................................9

    28 U.S.C. § 1605(a)(5).........................................................................................5, 6

    28 U.S.C. § 1605(a)(5)(A) ........................................................................................6

    28 U.S.C. § 1605(a)(7).........................................................................................5, 6

    28 U.S.C. § 1605(a)(7)(A) ........................................................................................5

**OTHER MATERIALS**

The 9/11 Commission Report: Final Report of the National Commission on Terrorist
Attacks Upon the United States (July 2004)...................................................................2

## I. The FSIA Requires Dismissal Of The Claims Against Prince Turki

### A. Plaintiffs Have Failed To Present Any Evidence To Rebut FSIA Immunity

1. The Federal Insurance Plaintiffs misstate the applicable standard of review in FSIA cases. Although they acknowledge that the burden of production shifts to the plaintiff when the defendant challenges the subject matter jurisdiction of the Court, see Opp. 4, they contend that the plaintiff need then only "come forward with specific factual *allegations* which, if proven, would bring the plaintiff's claims within one of the exceptions to immunity set forth in the FSIA," id. (emphasis added). Plaintiffs accordingly rely only upon the allegations in their complaint to establish an FSIA exception and present no evidence whatsoever to rebut Prince Turki's factual showing that he is entitled to the protections of the FSIA.

The law is absolutely clear, however, that, in resolving immunity claims under the FSIA, a district court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Where a defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. South Africa, 300 F.3d 230, 241 (2d Cir. 2002) (emphasis added). Accord Robinson v. Malaysia, 269 F.3d 133, 141-42 (2d Cir. 2001); Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993).

2. Prince Turki provided a detailed Declaration in which he explained that "[a]ll [his] interactions with Osama bin Laden, Al-Qaeda, and the Taliban were in [his] official capacity as Director of [Saudi intelligence]." Decl. ¶ 5. In Burnett, Judge Robertson properly concluded that the absence of any contrary showing by plaintiffs "compels the conclusion that the allegations against Prince Turki only relate to actions he took in his official capacity." Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 15 (D.D.C. 2003).

The FSIA accordingly confers immunity on Prince Turki unless plaintiffs present "evidence of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). Plaintiffs suggest that the non-commercial tort exception applies because Prince Turki aided and abetted the September 11 attacks by providing material support to Osama bin Laden and Al-Qaeda. But on this issue, too, the only competent evidence is Prince Turki's emphatic denial that he "in any way encouraged, funded, or provided any form of material or other assistance – direct or indirect – to enable Osama bin Laden and his Al-Qaeda network of terrorists to perpetrate [the September 11] attacks." Decl. ¶ 4. In fact, he actively worked on joint intelligence efforts with the United States "to combat terrorism in general and Osama bin Laden in particular." Id. ¶ 10.[1]

This unrebutted showing makes it clear that the non-commercial torts exception cannot be applied here to abrogate Prince Turki's FSIA immunity. The requirement that plaintiffs present evidence to defeat a claim of FSIA immunity "is not altered by the claimed interconnection of the merits and jurisdiction." Filetech S.A. v. France Telecom S.A., 304 F.3d 180, 182 (2d Cir. 2002). Because Prince Turki resolutely denies the core allegations against him, plaintiffs cannot rely upon those allegations in attempting to establish that an FSIA exception applies. In the absence of contrary evidence, Prince Turki's sworn Declaration is dispositive on this issue. See Virtual Countries, 300 F.3d at 241 (affirming dismissal of complaint against foreign sovereign where, "[d]espite an opportunity to come forward with evidence to meet its burden of production in order to prevail on the jurisdiction issue, [plaintiff] failed to provide

---

[1] Following an exhaustive investigation, a presidentially appointed and congressionally chartered commission authoritatively confirmed Prince Turki's account of his efforts to bring bin Laden to justice. See The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States 115-22 (July 2004). Compare Decl. ¶¶ 10-13.

2

sufficient evidence for [its] contentions"). See also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) ("[b]ecause [plaintiff] failed to present any evidence that [defendant] was acting outside his official capacity," the district court properly dismissed the case). Accordingly, the case against Prince Turki must be dismissed.[2]

### B. Plaintiffs' FSIA Argument Is Also Legally Flawed

Even if this Court could accept the allegations in plaintiffs' complaint as true, which it cannot under the FSIA, plaintiffs still could not establish an exception to immunity.

#### 1. The FSIA confers immunity on foreign officials like Prince Turki

Plaintiffs begin with an unsupported challenge to a proposition that has long been accepted (even by all the other plaintiffs in this case). They assert that it is "questionable" whether the FSIA applies to "officials of a foreign state." Opp. 5. That argument has no merit. This Court and others have uniformly recognized that FSIA immunity applies to foreign persons for their official acts.[3] Plaintiffs can cite no case to the contrary, and for good reason. As plaintiffs themselves admit (Opp. 5-6), "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [sovereign] entity." Kentucky v. Graham, 473 U.S. 159,

---

[2] Instead of proffering evidence, plaintiffs ask for discovery "as to any disputed fact the Court deems material to the FSIA jurisdictional analysis." Opp. 5 n.4. But there are no disputed facts. Plaintiffs offer only unsupported allegations. As Judge Robertson explained, discovery is inappropriate if the party opposing immunity "ma[kes] no showing that any of [the defendant's] alleged actions were taken other than in his official capacity." Burnett, 292 F. Supp. 2d at 15. Otherwise, allowing discovery prior to dismissal "would frustrate the significance and benefit of entitlement to immunity from suit." El-Fadl, 75 F.3d at 671 (citation omitted). See, e.g., Robinson, 269 F.3d at 146 (refusing to allow jurisdictional discovery based on "generic allegations"); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 536-37 (5th Cir. 1992) (same).

[3] See, e.g., Leutwyler, 184 F. Supp. 2d at 286-87 ("individuals employed by a foreign state's agencies or instrumentalities are deemed 'foreign states' [under the FSIA] when they are sued for actions undertaken within the scope of their official capacities"); Bryks v. Canadian Broad. Corp., 906 F. Supp. 204, 210 (S.D.N.Y. 1995) (same); Kline v. Kaneko, 685 F. Supp. 386, 389 (S.D.N.Y. 1988) (same). Accord Velasco v. Government of Indonesia, 370 F.3d 392, 398-99 (4th Cir. 2004); Park v. Shin, 313 F.3d 1138, 1144 (9th Cir. 2002); Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 388 (5th Cir. 1999); El-Fadl, 75 F.3d at 671.

3

166 (1985). It would make no sense to deny an official the immunity due to the state when, by definition, a damages judgment in an official-capacity suit is enforceable against the state itself (and only against the state). Id. ("a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself" for any recovery).

Nor is plaintiffs' invocation of Dole Food Co. v. Patrickson, 538 U.S. 468 (2003), persuasive. The Court there held that FSIA immunity is determined for a government corporation when suit is filed. For all relevant purposes, Prince Turki was a Saudi government official entitled to immunity, whether gauged when suit was filed (as Saudi ambassador to the United Kingdom) or when the operative facts in the complaint arose (as head of Saudi intelligence). No case supports plaintiffs' assertion that a government official cannot assert sovereign immunity for acts committed when he held a different government post.[4]

Finally, plaintiffs assert that, insofar as "Prince Turki made personal contributions to charities he knew to be sponsors of al Qaida," those claims fall outside his official capacity. Opp. 8. But Prince Turki has denied providing any such support to Al-Qaeda, see Decl. ¶ 4, and plaintiffs offer no contrary evidence.[5] In any event, as Judge Robertson concluded, there is no personal jurisdiction for maintaining such claims. See pp. 9-10, infra.

---

[4] Plaintiffs miscite two cases for the facially implausible proposition that a diplomat is not a government official for purposes of the FSIA. In Joseph v. Office of Consulate General, 830 F.2d 1018 (9th Cir. 1987), the court held that a consular office could assert FSIA immunity, but found on the facts that FSIA exceptions applied. In Mateo v. Perez, No. 98 Civ. 7426 (SAS), 1999 U.S. Dist. LEXIS 4871 (S.D.N.Y. Apr. 13, 1999), the court addressed whether a diplomat could invoke immunity under both the Vienna Convention and the FSIA for statements made at a press conference in New York that were allegedly defamatory. In ruling that an evidentiary hearing should proceed only on the diplomat's claim of consular immunity, the court simply determined that an inquiry into FSIA immunity in this context would be "redundant." Id. at *11. That is not true here, where plaintiffs assert (albeit wrongly) that a diplomat assigned to a third country enjoys no diplomatic immunity in the United States.

[5] In light of the FSIA dismissals made by Judge Robertson, the Federal Insurance Plaintiffs added boilerplate charitable contribution allegations against a number of Saudi

4

### 2. Plaintiffs' claims implicate the terrorism exception, which cannot apply here

Plaintiffs allege that Prince Turki and other Saudi officials provided "material support and resources" (Compl. ¶¶ 66, 446) for the September 11 terrorists. The FSIA explicitly conditions such suits on official designation of the state in question as a "state sponsor of terrorism." 28 U.S.C. § 1605(a)(7)(A). The State Department has not so designated Saudi Arabia. Thus, plaintiffs have no legal basis for suing Saudi Arabia or its officers under § 1605(a)(7), and cannot evade the need for State Department designation by invoking § 1605(a)(5).

Plaintiffs dismiss this point – which Judge Robertson found persuasive, see Burnett, 292 F. Supp. 2d at 20 – with the claim that § 1605(a)(7) was intended to apply only to "claims arising from injuries sustained outside the United States." Opp. 17. But the language of that provision is not so limited – it applies to any act of terrorism for which a foreign state provides "material support or resources." 28 U.S.C. § 1605(a)(7). The only limitation – and this is the critical one – is that, before it or its agents and instrumentalities can be sued, the state in question must be designated as a state sponsor of terrorism by the State Department.

To read the non-commercial torts exception as plaintiffs do – to include acts in support of terrorism committed abroad by ministers acting in their official capacity – obviates the need for the State Department to determine whether the minister's foreign state sponsors terrorism. But Congress made a specific legislative choice to confer that important role on the State Department. To allow plaintiffs to sue Saudi Arabia's top government officials under an aiding/abetting theory, simply by citing § 1605(a)(5) instead of § 1605(a)(7), would render

---

government officials, including Prince Turki. Since Prince Turki made no such contributions, we sent plaintiffs a Rule 11 letter a month ago asking either that the allegations be withdrawn or that plaintiffs state a good-faith basis for them. See Exhibit A. Plaintiffs have not responded to that letter.

§ 1605(a)(7) meaningless and launch the very kinds of suits that Congress sought to prevent against foreign states that have <u>not</u> been designated sponsors of terrorism.[6]

### 3. The non-commercial torts exception does not apply to discretionary functions

Even if Congress intended to include claims such as plaintiffs' within the non-commercial torts exception, that exception does not apply to "the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 1605(a)(5)(A). Plaintiffs allege that Prince Turki committed torts in carrying out Saudi policies in dealing with the Taliban and Al-Qaeda. But "[t]he activities of the DGI are an integral part of Saudi Arabia's foreign and national security policies" (Decl. ¶ 5) – <u>i.e.</u>, classic discretionary functions immune from challenge. Judge Robertson found it "nearly self-evident" that Prince Turki's alleged actions are "squarely covered" by the "discretionary function" exception. 292 F. Supp. 2d at 20.

Plaintiffs assert that "sponsorship of terrorism is not a discretionary function." Opp. 18. The falsity of plaintiffs' underlying assumption aside, courts have correctly upheld FSIA immunity for acts "belonging to the discretion of the executive" of a foreign country, which "is absolute in this regard, no matter how heinous the alleged illegalities." <u>Herbage v. Meese</u>, 747 F. Supp. 60, 67 (D.D.C. 1990), <u>aff'd</u>, 946 F.2d 1564 (D.C. Cir. 1991) (Table). Neither <u>Letelier v. Republic of Chile</u>, 488 F. Supp. 665 (D.D.C. 1980), nor <u>Liu v. Republic of China</u>, 892 F.2d 1419 (9th Cir. 1989), applies here. Those cases involved unrebutted proof that foreign agents committed murder in violation of their own country's law. <u>See</u> 488 F. Supp. at 671; 892 F.2d at 1431. Here, all the unrebutted proof goes against plaintiffs.

---

[6] The omission of property damage claims in § 1605(a)(7) does not mean that such claims are swept into § 1605(a)(5). <u>See</u> Opp. 18. Plaintiffs' argument overlooks that "a foreign state is presumptively immune from the jurisdiction of United States courts[] <u>unless</u> a specified exception applies." <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993); <u>see also</u> <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 610-11 (1992); <u>Drexel Burnham Lambert Group Inc. v. Committee of Receivers for A.W. Galadari</u>, 12 F.3d 317, 325 (2d Cir. 1993).

6

But even if this Court were to accept plaintiffs' allegations as true – an error of law, to be sure – the allegations here are a far cry from the proof in Letelier and Liu that agents of foreign governments carried out assassinations in the United States. No claim has been made here that the September 11 hijackers were in any sense agents of Prince Turki or his government. Rather, plaintiffs allege only that Prince Turki on behalf of his government provided material support to the Taliban and Al-Qaeda. See Opp. 19. Such allegations are far too vague and indirect to take Prince Turki's conduct of Saudi intelligence operations outside the discretionary function exception. Plaintiffs cannot meet their burden of showing that Prince Turki's actions as outlined in his Declaration (or even as stated in plaintiffs' complaint) did not "involve[] an element of judgment or choice" based on "considerations of public policy" and therefore did not involve discretionary functions for which immunity has long been the rule. Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).[7]

### 4.     Plaintiffs do not allege that Prince Turki committed a tort within the U.S.

All allegations against Prince Turki concern actions he took in Saudi Arabia and Afghanistan. The non-commercial torts exception does not extend to alleged torts committed abroad by a foreign sovereign.[8] No court has construed that exception to encompass the kinds of

---

[7] For similar reasons, the cases cited by plaintiffs from other districts involving claims under the FTCA are inapposite. See Glickman v. United States, 626 F. Supp. 171, 175 (S.D.N.Y. 1985); Orlikow v. United States, 682 F. Supp. 77 (D.D.C. 1988); Cruikshank v. United States, 431 F. Supp. 1355 (D. Haw. 1977). Here, Prince Turki's undisputed Declaration establishes that he was acting at all times to carry out the policies of his country, and there is no suggestion that he violated Saudi law in any respect. See also Risk v. Halvorsen, 936 F.2d 393, 396-97 (9th Cir. 1991) (holding that act is an immune discretionary function if official complies with foreign state's law even if that act violates U.S. law).

[8] See Asociacion de Reclamantes v. United Mexican States, 735 F.2d 1517, 1525 (D.C. Cir. 1984); Persinger v. Islamic Republic of Iran, 729 F.2d 835, 841 (D.C. Cir. 1984) ("If Congress had meant to remove sovereign immunity for governments acting on their own

7

causally attenuated acts committed abroad with unintended consequences in the U.S. that plaintiffs have asserted – but not proved in any respect – against Prince Turki.[9]

### 5. Plaintiffs have not adequately pleaded, much less proved, causation

Notwithstanding Prince Turki's blanket denial of any assistance to Al-Qaeda, plaintiffs persist in alleging his "extensive sponsorship of al Qaida that ties him inextricably to the September 11th Attack." Opp. 13. Not only must those repeated allegations be rejected for failure to rebut the proof Prince Turki has offered, but, even accepted as true, they are far too attenuated to sustain a causal link. As Judge Robertson properly concluded, plaintiffs' claims amount to an assertion that "those who funded" the people who in turn "funded . . . those who carried out the September 11 attacks" are liable in tort. Burnett, 292 F. Supp. 2d at 20. Such a claim goes beyond "the farthest reaches of the common law," to "terra incognita." Id.

Plaintiffs fall back to an aiding-and-abetting theory, but the principal case they cite provides no support for applying such a theory to Prince Turki's alleged acts. In Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983), the court held that aiding-and-abetting liability requires a showing, among other things, of "knowing[] and substantial[] assist[ance] [of] the principal

---

territory, with all of the potential for international discord and for foreign government retaliation that that involves, it is hardly likely that Congress would have ignored those topics and discussed instead automobile accidents in this country."). See also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 441-42 (1989) (rejecting claim where the wrongful conduct occurred outside the United States even though the effects and injury were felt within the United States).

[9] Plaintiffs' reliance (at 16) on Olsen v. Government of Mexico, 729 F.2d 641 (9th Cir. 1984), is misplaced. The court there held that FSIA immunity would not apply "if plaintiffs allege at least one entire tort occurring in the United States." Id. at 646. Because plaintiffs there "allege[d] conduct constituting a single tort – the negligent piloting of the aircraft – which occurred in the United States," the court ruled that the FSIA did not bar the suit. Id. Here, however, plaintiffs made no such allegations. Rather, all of Prince Turki's alleged tortious conduct occurred outside the U.S. In any event, plaintiffs have no answer that the post-Olsen cases of Amerada Hess, 488 U.S. at 439-40, and Asociacion de Reclamantes, 735 F.2d at 1524-25, more definitely establish the rule that the "entire tort" must occur within the U.S. See Motion 15-16.

8

violation." Id. at 477-78.  Plaintiffs make no effort even to allege, much less rebut Prince Turki's Declaration denying, that he knew about or assisted the September 11 attackers.

### C. The Commercial Activity Exception Does Not Apply

Plaintiffs attempt to invoke the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), through Prince Turki's alleged contributions to Islamic charities.  Prince Turki denies, however, that he "in any way encouraged, funded, or provided any form of material or other assistance – direct or indirect – to enable Osama bin Laden and his Al-Qaeda network of terrorists to perpetrate [the 9/11] attacks."  Decl. ¶ 4.  Plaintiffs further assert that Prince Turki's supposed contributions constitute "money laundering," Opp. 21, but they have adduced no facts or specific allegations to make such a leap.  In rejecting virtually identical allegations against Prince Sultan, Judge Robertson concluded that "[t]he act of contributing to a foundation is not within our ordinary understanding of 'trade and traffic or commerce.'"  292 F. Supp. 2d at 18.[10]

## II. This Court Lacks Personal Jurisdiction Over Prince Turki

Even if he were not immune under the FSIA, Prince Turki has established that he lacks the requisite contacts to support this Court's exercise of personal jurisdiction over him.  See Motion 18-20; Decl. ¶ 20.  Plaintiffs do not dispute the inadequacy of Prince Turki's contacts with New York or the United States.  Instead, plaintiffs assert that the September 11 attacks were a "foreseeable product" of Prince Turki's support for Al-Qaeda.  Opp. 1.  Under a specific jurisdiction analysis, however, a plaintiff must establish that the defendant had a "substantial

---

[10] Plaintiffs also contend that the acts of others – such as the commandeering of planes and use of them as bombs – are "commercial" acts attributable to Prince Turki.  See Opp. 21. Those assertions ignore the plain text of § 1605(a)(2), which requires that "the action is based upon a commercial activity carried on in the United States by the foreign state"; or that the act in the U.S. was "in connection with" a "commercial activity" of the foreign state elsewhere; or that the commercial activity outside the U.S. had a "direct effect" in the U.S.  Plaintiffs assert none of those elements in their complaint.

9

connection" with the forum state, as demonstrated by "<u>an action of the defendant purposefully directed toward the forum State</u>." <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 112 (1987) (plurality op.) (emphasis added).  Even if it were true that Prince Turki made payments to Al-Qaeda, it would not follow that Prince Turki "purposefully directed" any of his actions toward the United States.  <u>Id.</u>  Under plaintiffs' theory, every person in the world who made a contribution to an Islamic charity that in turn provided funds to members of Al-Qaeda meets the requisites of specific jurisdiction.  The law of personal jurisdiction does not sweep so broadly.

**III.     Diplomatic Immunity Requires Dismissal**

Plaintiffs have no rebuttal to the cases cited in the opening brief, which establish that Prince Turki enjoys long-established diplomatic immunity in the U.K. and in third countries. <u>See</u> Motion 23 & n.14.  In their perfunctory rebuttal, plaintiffs misconstrue Vienna Convention Article 40, which provides that, when a diplomat "passes through or is <u>in the territory</u> of a third State," that third state "shall accord [the diplomat] <u>inviolability and such other immunities</u> as may be required to ensure his transit or return" from or to the receiving state.  T.I.A.S. No. 7502, at 20 (emphases added).  If a third state cannot exercise jurisdiction over an ambassador when he is "in the territory of [the] third State," then it certainly cannot hale him 3,000 miles into court while he is still in his receiving state performing ambassadorial duties.  That logic is inescapable: had Prince Turki traveled to the United States and been personally served with the complaint, Article 40 would have ensured his immunity from such service so that he could return to the United Kingdom to resume his ambassadorial duties.  The result is no different simply because Prince Turki voluntarily accepted service to quash process against him.  <u>Bergman v. De Sieyes</u>, 170 F.2d 360, 362-63 (2d Cir. 1948) (L. Hand, J.), is still good law on this point.

                                        Respectfully submitted,

                                        KELLOGG, HUBER, HANSEN,
                                          TODD & EVANS, P.L.L.C.

                                        By: /s/_____
                                        Mark C. Hansen (MH0359)
                                        Michael K. Kellogg (MK4579)
                                        David C. Frederick (DF4906)
                                        Michael J. Guzman (MG9623)
                                        J.C. Rozendaal (JR1430)

                                        Sumner Square
                                        1615 M Street, N.W., Suite 400
                                        Washington, D.C. 20036-3209
                                        (202) 326-7900

August 9, 2004

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 9th day of August 2004, I caused copies of the <u>Reply in Support of Motion to Dismiss and to Quash Service of Process of His Royal Highness Prince Turki Al-Faisal Bin Abdulaziz Al-Saud</u> to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
Michael J. Guzman