**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | 03 MDL 1570 (RCC)<br>ECF Case |

*This Document Relates to:* <u>Federal Insurance Co. v. Al Qaida</u>, 03-CV-6978 (RCC)

# REPLY IN SUPPORT OF
# HIS ROYAL HIGHNESS PRINCE SULTAN BIN ABDULAZIZ AL-SAUD'S
# MOTION TO DISMISS THE AMENDED COMPLAINT

William H. Jeffress, Jr. (admitted *pro hac vice*)
D.C. Bar No. 041152

Christopher R. Cooper (admitted *pro hac vice*)
D.C. Bar No. 453387

Jamie S. Kilberg (admitted *pro hac vice*)
D.C. Bar No. 480207

Sara E. Kropf (admitted *pro hac vice*)
D.C. Bar No. 481501

BAKER BOTTS, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
 Phone:  (202) 639-7700
 Fax:    (202) 639-7890

**Attorneys for HRH Prince Sultan bin Abdulaziz Al-Saud**

The Federal Insurance Plaintiffs (the "Plaintiffs"), like the other plaintiffs in this consolidated proceeding, continue to operate on the fundamentally flawed theory that the government of Saudi Arabia – directly or through its officials – supports or condones Osama bin Laden, al Qaeda, or terrorism in general. They perpetuate these baseless and unfounded allegations – despite the growing and overwhelming evidence to the contrary best exemplified in the official findings of the U.S. government in the Final Report of the National Commission on Terrorist Attacks Upon the United States (the "9/11 Report").[1] The 9/11 Report debunks the allegation of official Saudi complicity with Osama bin Laden or al Qaeda. Even a brief review of these findings, summarized and attached as Exhibit 1 hereto, establishes the point. Nevertheless, the Plaintiffs persist with their claims. Because none of their arguments opposing Prince Sultan's motion to dismiss has any merit, Prince Sultan's motion should be granted.

**I.    Judge Robertson's Decision is Entitled to Deference**

Plaintiffs argue that Judge Robertson's decision in Burnett is entitled to no deference whatsoever. Plaintiffs' primary contention is that this is a different case with different allegations. The Plaintiffs, however, have not alleged one single fact not previously alleged by the Burnett plaintiffs – whose factual allegations were found to be insufficient either to overcome foreign sovereign immunity or to establish personal jurisdiction. Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003). As argued in his opening brief, the only difference between the Burnett allegations and the Federal Insurance allegations is a difference in alleged intent. See Prince Sultan's Memorandum in Support of His Motion to Dismiss the Amended

---

[1] Given that the Plaintiffs quote from and rely extensively on statements and findings from U.S. governmental and other bodies to support their general allegations, they would be hard-pressed now to argue that the definitive findings of the 9/11 Commission carry little weight in testing the sufficiency of their allegations. See, e.g., Am. Compl. ¶¶ 80, 81, 87, 117, 134, 171, 173, 219, 266, 321, 411, 420, 518, 526, 537.

Complaint ["Sultan Memo"], at 9-10 & Ex. 4. While the Burnett plaintiffs restrained themselves to alleging that Prince Sultan must have known but chose to ignore that donations allegedly found their way to terrorists, the Federal Insurance Plaintiffs allege that Prince Sultan actually intended that result. Id. Judge Robertson, however, did not dismiss Burnett as to Prince Sultan because the Burnett plaintiffs failed to allege sufficient intent. He dismissed the case because irrespective of intent, Prince Sultan's actions were much too far down the chain of causation to support a cause of action for the 9/11 attacks. Thus, the "different allegations" to which the Federal Insurance Plaintiffs refer merely create a distinction without a difference.[2] Nor is there any meaningful conflict between D.C. Circuit law and Second Circuit law on the issues upon which Judge Robertson ruled.

The Plaintiffs' Amended Complaint thus can no more be sustained against Prince Sultan than could the Burnett plaintiffs' complaint. Judge Robertson's ruling is entitled to the deference argued in Prince Sultan's opening brief, see Sultan Memo at 10-13, and, in any event, this Court should find the same under Second Circuit law.

## II. The Federal Insurance Plaintiffs Are Not Entitled to FSIA Discovery

"[S]overeign immunity is an immunity from trial and the attendant burdens of litigation[.]" Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 756 (2d Cir. 1998) (quotation and citation omitted). When a complaint contains only "general allegations . . . absent an assertion of evidence of a factual predicate for such jurisdiction," the Second Circuit has suggested exposure to discovery would be "at odds with the goal of the FSIA to enable a foreign government to obtain early dismissal when the substance of the claim against it does not

---

[2] In any event, merely alleging a different state of mind – without any facts to support such an allegation – cannot cure the defect rightly found by Judge Robertson. Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998) (even on motion to dismiss, conclusory allegations that lack factual support cannot be accepted as true).

support jurisdiction." Robinson v. Government of Malaysia, 269 F.3d 133, 146 (2d Cir. 2001) (citing with approval Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 536-37 (5th Cir. 1992) ("We would not allow such generalized conspiratorial allegations aginst an American government entity to provoke massive discovery. . . . It is unimanginable that [the] FSIA would authorize broader exposure to suit of a foreign government instrumentality. . . .")). The Plaintiffs here have followed the example of each of the other sets of plaintiffs in this consolidated proceeding and have repeatedly characterized as "fact" allegations which amount to nothing more than conclusions as to Prince Sultan's intent. Under Robinson and Arriba, then, the Plaintiffs are entitled to no discovery.

The Plaintiffs argue that they have met their burden by making allegations sufficient to defeat immunity, and that Prince Sultan has challenged the accuracy of these unsupported allegations. Fed. Ins. Memo at 4-5. The Plaintiffs' argument, however, does not entitle them to discovery for the simple reason that they have misstated their burden. Where a defendant presents a prima facie case that he is entitled to sovereign immunity (which Prince Sultan has, see infra), the Plaintiffs' burden is to come forward with *evidence to support their allegations*, not simply to make allegations. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993) (holding that "plaintiff has the burden of going forward *with evidence* showing that . . . immunity should not be granted," not that plaintiffs need only come forward with *allegations* to that effect) (internal citation omitted). The Plaintiffs have offered no evidence to support their claims – only conclusions. This is precisely when discovery against a foreign sovereign is not allowed.[3]

---

[3] Nor have the Plaintiffs proffered to the Court what they might hope to gain from any discovery. Cf. Burnett, 292 F. Supp. 2d at 22 (declining to permit jurisdictional discovery in the absence of "even a basic outline" of how Plaintiffs' showing might be enhanced).

3

### III. Prince Sultan is Entitled to Immunity Under the FSIA

#### A. The FSIA Applies to Prince Sultan

Plaintiffs lead their FSIA arguments by asserting that Prince Sultan is not even entitled to sovereign immunity. Plaintiffs suggest that neither the Second Circuit nor the U.S. Supreme Court has held that FSIA immunity extends to individual government officials acting in their official capacities. See Fed. Ins. Memo. of Law in Opp. to the Motion to Dismiss Filed by Prince Sultan bin Abdulaziz al-Saud ["Fed. Ins. Memo"], at 7.

Plaintiffs fail to cite to even *one solitary* case to support their claim. Each and every case located by undersigned counsel that addressed the issue has held that FSIA immunity does, in fact, extend to individual government officials, like Prince Sultan, acting pursuant to their official authority. See Granville Gold Trust-Switzerland v. Commissione Del Fallimento/Interchange Bank, 928 F. Supp. 241, 243 (E.D.N.Y. 1996) (Swiss government bank commissioners); Kline v. Kaneko, 685 F. Supp. 386, 389 (S.D.N.Y. 1988) (Mexican Secretary of Government); see also Velasco v. Government of Indonesia, 370 F.3d 392, 398-99 (4th Cir. 2004) (various Indonesian government officials, including National Defense Security Counsel staff); Park v. Shin, 313 F.3d 1138, 1144 (9th Cir. 2002) (Deputy Consul General of the Korean Consulate in San Francisco); Byrd v. Corporacion Forestal y Industrial de Olancho, S.A., 182 F.3d 380, 388 (5th Cir. 1999) (Honduran-government owned corporation President and Executive Vice President); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (Jordanian national bank Deputy Governor). This Court should reject the Plaintiffs' novel argument.

#### B. Prince Sultan Exercised a Discretionary Function

In determining whether the non-commercial tort exception to FSIA immunity applies, the

4

Court must first decide whether Prince Sultan's alleged conduct – directing or making recommendations about the disbursement of government funds, pursuant to his authority as head of the Special Committee of the Council of Ministers or as Chairman of the Supreme Council, to various Islamic charities – constitutes a "discretionary function." As Judge Robertson correctly held, because such conduct clearly is an exercise of a discretionary function, FSIA immunity applies. Burnett, 292 F. Supp. 2d at 20-21.

Despite their accusations to the contrary, the Plaintiffs "mischaracterize[] the proper focus on the nature of the act performed." Fed. Ins. Memo at 12. The Plaintiffs invite this Court to focus on their self-serving characterizations of Prince Sultan's alleged conduct, rather than on his conduct itself. See Fed. Ins. Memo at 11 (characterizing Prince Sultan's alleged conduct as "provid[ing] material support and resources to al Qaida"). The Court should not take this bait. Berkovitz v. United States, 489 U.S. 531, 536-37 (1988) (discretionary function test looks solely at the nature of the conduct involved).[4]

Moreover, in each of the cases Plaintiffs rely on, the basic conduct at issue was illegal on its face. See Glickman v. United States, 626 F. Supp. 171 (S.D.N.Y. 1985) (CIA agents gave plaintiff LSD without his knowledge); Orlikow v. United States, 682 F. Supp. 77 (D.D.C. 1988) (CIA agents conducted experimental psychiatric treatments on plaintiff without his knowledge of CIA involvement); Cruikshank v. United States, 431 F. Supp. 1355 (D. Haw. 1977) (CIA read plaintiff's outgoing mail without his knowledge). The relevant conduct here, the authorization of government funds by the government official in charge of such authorizations to various

---

[4] Even if the Court were to accept Plaintiffs' characterization of Prince Sultan's conduct, the Second Circuit has explicitly declined to address whether the Plaintiffs' theory is viable. Birnbaum v. United States, 588 F.2d 319, 329 (1978) (refusing to decide whether properly delegated but illegal activity falls outside the discretionary function proviso); cf. Risk v. Norway, 707 F. Supp. 1159, 1166 (N.D. Cal. 1989) (holding that not "every act which may have criminal consequences falls outside the discretionary function exception").

recognized charitable entities, is not itself illegal.[5]

In any event, in each case cited by the Plaintiffs – including Letelier v. Republic of Chile, 488 F. Supp. 665 (D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), which Prince Sultan entirely distinguished in his opening brief and which the Plaintiffs make absolutely no effort to resurrect – the government official in question actually conducted or ordered the act which was the direct cause of the plaintiff's injuries. As Judge Robertson has already held, those cases "involved causal links significantly shorter and more direct that those alleged here." Burnett, 292 F. Supp. 2d at 21.

### C.  Plaintiffs' Noncommercial Tort Allegations Are More Properly Classified Under Section 1605(a)(7)

The Plaintiffs completely misconstrue Prince Sultan's argument with respect to the state-sponsored terrorism exception in 28 U.S.C. § 1605(a)(7). Prince Sultan is not arguing that these Plaintiffs *ought* to have brought their claims under Section 1605(a)(7). Rather, it is the nature of these Plaintiffs' claims – that Prince Sultan provided material support and resources to terrorists – that makes Section 1605(a)(5) inapplicable, because Congress specifically limited such claims to Section 1605(a)(7), and established conditions on such claims that are not met here.

Neither of the cases Plaintiffs cite involve a claim of material support or resources to terrorists; in both of those cases, the foreign sovereign was directly implicated in the tortious act itself. See Letelier, 488 F. Supp. at 665; Liu, 892 F.2d at 1421. Section 1605(a)(5) simply does

---

[5] Plaintiffs suggest that they ought to be afforded discovery to pursue whether Prince Sultan's conduct is illegal under Saudi Arabian law. Fed. Ins. Memo at 12 n.5. There appears to be no intelligible reason why Plaintiffs would need discovery from Prince Sultan – which would be premature in any event – on matters of public Saudi Arabian law. Moreover, to the extent the Plaintiffs are asking this Court to deny Prince Sultan's motion while they pursue discovery – from Prince Sultan or some other person or entity in Saudi Arabia – this case has been pending since September 10, 2003. The Plaintiffs proffer no reason why they have not yet sought the discovery they now claim they need, especially given that Judge Robertson ruled on this very issue nine months ago, after seven months of briefing.

not envision jurisdiction over a claim that a defendant provided material support or resources to terrorists; presumably, if Congress had intended otherwise, it easily could have inserted those words in the statute when it enacted Section 1605(a)(7). See Burnett, 292 F. Supp. 2d at 20 n.5 (finding that Congress' failure to include "the provision of material support or resources" as a category of conduct excepted from immunity under Section 1605(a)(5) creates a "powerful presumption" that Congress meant to exclude such conduct from the reach of that exception).

### D.   Plaintiffs Fail to Adequately Plead Causation

To support their argument that the non-commercial tort exception applies because Prince Sultan's alleged conduct "caused" their injuries, the Plaintiffs rely on conclusory allegations of conspiracy and aiding and abetting. In particular, the Plaintiffs argue that so long as the injuries were caused by one member of the alleged conspiracy, all co-conspirators can be liable for "causing" the injury, and that so long as Plaintiffs blandly assert that Prince Sultan provided substantial assistance to the actual wrongdoer, they have sufficiently alleged that Prince Sultan "caused" their injuries. Plaintiffs do not, however, rely on a single Second Circuit case to support their assertions that these general and vague allegations, devoid of any facts to support the inferences Plaintiffs seek to draw, are sufficient to allege causation under the non-commercial tort exception.

To state a claim for aiding and abetting, the Second Circuit requires the Plaintiffs to allege that Prince Sultan gave "substantial assistance to the primary wrongdoer [and] . . . [knew] the wrongful nature of the primary wrongdoer's conduct." Pittman by Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (quotation marks omitted). Merely saying that Prince Sultan provided "substantial assistance," without more, cannot suffice. See, generally, The Limited, Inc. v. McCory Corp., 683 F. Supp. 387, 401 (S.D.N.Y. 1988) (dismissing aiding and abetting

7

claim where "complaint fails to allege facts" to support allegation of substantial assistance).

The conspiracy argument is even more far-fetched. A conspiracy claim requires Plaintiffs to allege that Prince Sultan personally agreed to be a part of the conspiracy. U.S. v. Jiminez-Recio, 537 U.S. 270, 274 (2003). The Plaintiffs have failed to allege Prince Sultan agreed to be a part of any conspiratorial agreement; nor could they in good faith do so. See 9/11 Report, at 171-72 ("[W]e have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded [al Qaeda]. . . . [W]e have seen no evidence that any foreign government—or foreign government official—supplied any funding.").

E.   **The Alleged Conduct Cannot Be a Commercial Activity**

The Plaintiffs have proffered the baseless, albeit unique, argument that Prince Sultan's alleged conduct amounts to money laundering, and therefore also falls under the commercial-activity exception to FSIA immunity. See 28 U.S.C. § 1605(a)(2). The Plaintiffs fail to identify how Prince Sultan's alleged conduct comes remotely close to falling into the category of transactions proscribed by 18 U.S.C. § 1956.[6] (Indeed, the Plaintiffs fail even to cite the statute.) Moreover, assuming Prince Sultan's conduct does fit the money laundering statute (which it does not), this defeats Plaintiffs' own claim. As Prince Sultan argued in his opening brief, and as the Plaintiffs remarkably completely ignore, under Supreme Court, Second Circuit and this Court's *explicit* precedent, criminal activities cannot be commercial activities under the FSIA. See Sultan Memo at 16; see also Saudi Arabia v. Nelson, 507 U.S. 349, 361 (1993) (alleged detention and torture cannot be commercial activity of foreign state); Letelier v. Republic of

---

[6] Section 1956 makes it a crime to conduct a financial transaction with the proceeds of unlawful activity. 18 U.S.C. § 1956(a). The "transactions" at issue here would be Prince Sultan's approval of disbursement of government funds to various charities, or the alleged contribution of his personal funds to various charities. *Nowhere* do Plaintiffs allege that the funds used by Prince Sultan for any of these alleged transactions were the "proceeds" of unlawful activity.

Chile, 748 F.2d 790, 797 (2d Cir. 1984) (criminal activity cannot be "commercial activity"); Kline v. Kaneko, 685 F. Supp. 386, 391 (S.D.N.Y. 1988) ("Kidnapping cannot be considered a commercial activity, because a private person cannot lawfully engage in that activity.").

Additionally, Plaintiffs argue that Prince Sultan's actions fall within the commercial-activity exception because money laundering and terrorism are not unique to nations and therefore Prince Sultan was acting as a private player in, not a regulator of, the market. See Fed. Ins. Memo at 19. The Plaintiffs' argument is too clever by half. What matters is not how the Plaintiffs characterize Prince Sultan's conduct, but the nature of that conduct. What is at issue here are official grants of government funds – a decidedly governmental function.

### IV. Plaintiffs Fail to Adequately Allege Personal Jurisdiction

The Plaintiffs, like other plaintiffs before them, do not contest that they cannot establish any contacts between Prince Sultan and the United States sufficient to support personal jurisdiction. Instead, they rely on the so-called conspiracy theory of personal jurisdiction. They also suggest that a lessened due-process standard applies in a "mass tort" case. Neither of these arguments suffice to overcome Prince Sultan's opening arguments that the Plaintiffs have failed to make a prima facie showing of personal jurisdiction.

First, as argued earlier, the Plaintiffs have failed to allege a conspiratorial agreement to which Prince Sultan was a party, and therefore the conspiracy theory of personal jurisdiction cannot apply. Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (plaintiffs must make prima facie showing that conspiracy exists and that defendant was member of conspiracy). In any event, the Second Circuit requires a plaintiff asserting the conspiracy theory of personal jurisdiction to demonstrate that the in-forum actor acted "for the benefit, with the knowledge and consent of, and under some control by the [out-of-

9

forum] defendant." Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981). The Plaintiffs have not even attempted to allege that the 9/11 hijackers acted for the benefit, with the knowledge and consent of, and under control by Prince Sultan. Their conspiracy theory of personal jurisdiction must fail.

Second, the Plaintiffs make a rather astounding argument – that Prince Sultan is entitled to less due process because this is a "mass torts" case – in the space of six lines, without any analysis or explanation whatsoever. Fed. Ins. Memo at 24 (citing Simon, 86 F. Supp. 2d at 129-37; In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992)). The Supreme Court has made it abundantly clear that the Constitution requires that before any lessened, reasonableness standard can apply, the court must still find the defendant purposefully established minimum contacts in the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 476 (1985). As argued above, the Plaintiffs have failed this threshold showing. In any event, if there exists any such modified due-process standard, it does not apply to a case of this nature. The very case on which Plaintiffs rely, In re DES Cases, defines "[g]enuine mass torts" as something *other* than "air crash and other disasters." Id., 789 F. Supp. at 561. The court there found the modified due process standard applicable only to "mass torts" such as traditional "mass toxic torts," involving widespread exposure to harmful agents over a long period of time, affecting an indeterminate number of plaintiffs, often in different ways, such that causation is difficult to prove, resulting in multiple litigations that burden the courts and potentially threaten the financial viability of whole industries. Id. at 562.

## V.     Conclusion

For all of the foregoing reasons, and for all of the reasons argued in Prince Sultan's opening brief, the Plaintiffs' Amended Complaint should be dismissed as to Prince Sultan.

Dated: August 9, 2004

Respectfully submitted,

_S/_____
William H. Jeffress, Jr. (admitted *pro hac vice*)
D.C. Bar No. 041152

Christopher R. Cooper (admitted *pro hac vice*)
D.C. Bar No. 453387

Jamie S. Kilberg (admitted *pro hac vice*)
D.C. Bar No. 480207

Sara E. Kropf (admitted *pro hac vice*)
D.C. Bar No. 481501

BAKER BOTTS, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
  Phone:  (202) 639-7700
  Fax:     (202) 639-7890