IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | **Civil Action No. 03MDL1570 (RCC)** |

This document relates to:

|  |  |  |
|---|---|---|
| THOMAS BURNETT, SR., <u>et al.</u>,             Plaintiffs, v. AL BARAKA INVESTMENT &   DEVELOPMENT CORP., <u>et al.</u>,             Defendants. | ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 03 CV 9849 (RCC)** |

**MEMORANDUM OF LAW IN OPPOSITION TO BURNETT PLAINTIFFS' MOTION
TO RECONSIDER THE ORDER DISMISSING ALL CLAIMS AGAINST
HIS ROYAL HIGHNESS PRINCE TURKI AL-FAISAL BIN ABDULAZIZ AL-SAUD**

KELLOGG, HUBER, HANSEN,
  TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
J.C. Rozendaal (JR1430)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
Telephone:    202-326-7900
Facsimile:     202-326-7999

*Attorneys for HRH Prince Turki
Al-Faisal bin Abdulaziz Al-Saud*

August 13, 2004

**Table Of Contents**

Page

Table Of Authorities ................................................................................................................ ii

Argument:

      A.      There Has Been No Change In Controlling Law ...................................................... 2

      B.      Plaintiffs Have Failed To Present Any Evidence To Rebut FSIA Immunity .......... 5

      C.      Judge Robertson Did Not Commit "Plain Error" ..................................................... 8

Conclusion ............................................................................................................................... 9

## Table Of Authorities

Page

**CASES**

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) .......................................................................... 1, 3, 4, 5, 8

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993) ............................................................................................. 6

Christianson v. Colt Indus. Operating Corp.,
    486 U.S. 800 (1988) ............................................................................................................ 1

Degulis v. LXR Biotechnology, Inc.,
    928 F. Supp. 1301 (S.D.N.Y. 1996) ................................................................................... 2

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) ............................................................................................. 7

Filetech S.A. v. France Telecom S.A.:

    157 F.3d 922 (2d Cir. 1998) .............................................................................................. 6

    304 F.3d 180 (2d Cir. 2002) .............................................................................................. 6

Fogel v. Chestnutt,
    668 F.2d 100 (2d Cir. 1981) .............................................................................................. 1

Kilburn v. Socialist People's Libyan Arab Jamahiriya,
    No. 03-7117, 2004 WL 1698198 (D.C. Cir. July 30, 2004) ............................................. 5

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ............................................................................... 6

Menowitz v. Brown,
    991 F.2d 36 (2d Cir. 1993) ................................................................................................ 2

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001) ..................................................................................... 3, 4, 5, 6

Shrader v. CSX Transp., Inc.,
    70 F.3d 255 (2d Cir. 1995) ................................................................................................ 1

Supply & Building Co. v. Estee Lauder Int'l, Inc.,
    No. 95 Civ. 8136, 2000 WL 223838 (S.D.N.Y. Feb. 25, 2000) ........................................ 1

Virgin Atl. Airways, Ltd. v. National Mediation Bd.,
    956 F.2d 1245 (2d Cir. 1992)..................................................................................1

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)..............................................................................2, 5, 7

**STATUTES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq.:

    28 U.S.C. § 1605(a)(5)..........................................................................................1, 3

    28 U.S.C. § 1605(a)(5)(A) .......................................................................................4

    28 U.S.C. § 1605(a)(7)..........................................................................................1, 3

**OTHER MATERIALS**

Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1.....................7-8

David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times,
    July 23, 2004, at A11 ...............................................................................................7

The 9/11 Commission Report: Final Report of the National Commission on Terrorist
    Attacks Upon the United States (July 2004)............................................................7

We do not dispute that an MDL Court "has the power to revisit prior decisions of . . . a coordinate court," just as it may revisit its own decisions. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). But it should do so only in "extraordinary circumstances," id., such as "[1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). See also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981). As this Court has explained, "[t]his standard is strictly construed against the moving party." Supply & Building Co. v. Estee Lauder Int'l, Inc., No. 95 Civ. 8136, 2000 WL 223838, at *1 (S.D.N.Y. Feb. 25, 2000) (Casey, J.).

The Burnett plaintiffs have utterly failed to satisfy their burden with respect to Judge Robertson's pre-transfer decision dismissing their claims against Prince Turki. See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9 (D.D.C. 2003). *First*, there has been no "intervening change of controlling law" caused by the MDL transfer. Despite plaintiffs' promise to identify "Second Circuit precedent" under which "Judge Robertson's decision would come out differently," May 25, 2004 Tr. at 61, ll. 15-19, they cite only one Second Circuit case and only on the issue of causation under the FSIA, and that case is consistent with Judge Robertson's ruling on the issue. Plaintiffs cite no Second Circuit authority on two other issues – that their claims do not fall within the non-commercial torts exception of 28 U.S.C. § 1605(a)(5), in light of the more specific provision governing material support for terrorism in 28 U.S.C. § 1605(a)(7); and that Prince Turki was exercising a discretionary function – each of which was independently a valid ground for dismissal. See 292 F. Supp. 2d at 20-21 & n.5.

*Second*, plaintiffs do not claim that they have any new evidence against Prince Turki that would somehow defeat his claim to FSIA immunity. Indeed, despite plaintiffs' frank acknowledgement that, in response to a claim of FSIA immunity, they have "'the burden of going forward with evidence showing that . . . immunity should not be granted,'" Motion at 6 n.4 (quoting Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002)) (ellipsis in original), plaintiffs have never offered any evidence whatever concerning Prince Turki, whether new or old. For that reason alone, their complaint had to be dismissed.

*Finally*, plaintiffs offer no reason to believe that Judge Robertson committed "clear error" in dismissing Prince Turki from this case. Instead, they selectively re-hash arguments that were already and properly rejected. The Burnett plaintiffs' reconsideration motion is precisely what this Court forbade: an attempt "to revisit the old papers." May 25, 2004 Tr. at 63, ll. 6-7. It should be denied.

### A.    There Has Been No Change In Controlling Law

Where there is a conflict in controlling law, the "transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (per curiam). Accordingly, "transfer of an action by the JPML can constitute" a circumstance warranting a court's reconsideration, but transfer alone "does not mean that it need do so or should do so." Degulis v. LXR Biotechnology, Inc., 928 F. Supp. 1301, 1309 (S.D.N.Y. 1996) (emphasis added). It all depends on whether there is indeed a conflict in controlling law on an issue decided by the transferor court.

Judge Robertson decided three issues with respect to Prince Turki that are relevant to this reconsideration motion. After concluding that "the allegations against Prince Turki only relate to

actions he took in his official capacity" as Director of Saudi intelligence, <u>Burnett</u>, 292 F. Supp. 2d at 15 (a finding that the <u>Burnett</u> plaintiffs do not challenge here), he decided that the "non-commercial torts" exception to FSIA immunity did not apply for three separate and independent reasons: first, plaintiffs did not adequately plead causation, <u>see</u> <u>id.</u> at 19-20; second, plaintiffs' claims did not fall within the non-commercial torts exception of § 1605(a)(5), in light of the more specific provision governing material support for terrorism in § 1605(a)(7), <u>see</u> <u>id.</u> at 20 n.5; and, third, Prince Turki was exercising a discretionary function, <u>see</u> <u>id.</u> at 20-21.[1]

Plaintiffs' reconsideration motion does not even mention the second of these holdings, which was itself a sufficient basis for dismissal. And although plaintiffs contend that Prince Turki was not exercising a discretionary function, they do not offer any Second Circuit precedent to call into question Judge Robertson's ruling. Instead, they frankly admit that they are citing the exact same cases and making the exact same arguments that they unsuccessfully urged on Judge Roberston. <u>See</u> Motion at 15 ("As set forth in detail in the prior briefing in the District of Columbia . . ."). Accordingly, on these two independently dispositive issues, plaintiffs have not even attempted to show a change in controlling law that would warrant reconsideration.

Even on the issue of causation, plaintiffs offer only a single Second Circuit case, <u>Robinson v. Government of Malaysia</u>, 269 F.3d 133 (2d Cir. 2001). But <u>Robinson</u> is on all fours with the D.C. Circuit law that controlled Judge Robertson's rulings. As an initial matter, <u>Robinson</u> instructs, precisely as Judge Robertson held, that plaintiffs have the burden of putting

---

[1] Plaintiffs' claim that Judge Robertson's decision on this point was dictum is simply wrong. <u>See</u> Motion at 15. Judge Robertson's decision that Prince Turki's alleged acts were all of a discretionary nature is an alternate holding to his conclusion that the acts do not fall within the non-commercial torts exception at all. <u>Burnett</u>, 292 F. Supp. 2d at 20 ("In case a reviewing court should reject that ruling, however, I will briefly state my reasons for concluding that the official acts plaintiffs ascribe to Prince Turki . . . are squarely covered by the 'discretionary function' language of subsection A.").

3

forth evidence that immunity should not be granted. Robinson, 269 F.3d at 141; Burnett, 292 F. Supp. 2d at 15-16. The case also instructs, as Judge Robertson again held, that the non-commercial torts exception does not apply to any claim " 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.' " Robinson, 269 F.3d at 142 (quoting 28 U.S.C. § 1605(a)(5)(A)); Burnett, 292 F. Supp. 2d at 18-19.

While ignoring these points of obvious agreement, plaintiffs allege that Robinson articulated a different standard of "causation" from the one applied by Judge Robertson in Burnett. See Motion at 7-8. But Judge Robertson expressly stated that his opinion "d[id] not present the occasion for a general disquisition on the subject of causation." 292 F. Supp. 2d at 19. In any event, when he concluded that "plaintiffs' allegations that (i) Prince Turki or Prince Sultan funded (ii) those who funded (iii) those who carried out the September 11th attacks would stretch the causation requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita," id. at 20, Judge Robertson merely echoed precisely what the Robinson court had said:

> To sustain federal jurisdiction on generic allegations of "negligence . . . caused by" a "dangerous and defective condition," Pl.'s Compl. ¶ 10, absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints – and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law. . . .
>
> We therefore hold that Robinson has neither pleaded nor come forward with evidence sufficient to show that his claim is for a "tortious act or omission" caused by the Malaysian government.

4

269 F.3d at 146 (first ellipsis in original). In both statement and application of the law, therefore, Judge Robertson's opinion falls four-square within the holding of Robinson.[2]

In short, plaintiffs have utterly failed to demonstrate that any "change of controlling law" warranting reconsideration has occurred by virtue of the MDL transfer in this case.

### B.     Plaintiffs Have Failed To Present Any Evidence To Rebut FSIA Immunity

Plaintiffs admit, as they must, that, in response to a claim of FSIA immunity, they have "'the burden of going forward with evidence showing that . . . immunity should not be granted.'" Motion at 6 n.4 (quoting Virtual Countries, 300 F.3d at 241) (ellipsis in original). Plaintiffs failed to present any evidence to Judge Robertson, and they have failed to present any evidence here as well.

Prince Turki provided a detailed Declaration in which he explained that "[a]ll [his] interactions with Osama bin Laden, Al-Qaeda, and the Taliban were in [his] official capacity as Director of [Saudi intelligence]." Decl. ¶ 5. In Burnett, Judge Robertson properly concluded that the absence of any contrary showing by plaintiffs "compels the conclusion that the allegations against Prince Turki only relate to actions he took in his official capacity." 292 F. Supp. 2d at 15. As noted, plaintiffs do not challenge that holding here.

---

[2] The D.C. Circuit's recent decision in Kilburn v. Socialist People's Libyan Arab Jamahiriya, No. 03-7117, 2004 WL 1698198 (D.C. Cir. July 30, 2004), underscores the importance of a proximate causal connection. In that case, Libya was held not entitled to sovereign immunity, where it was designated by the State Department as a state sponsor of terrorism and where the plaintiff offered unrebutted evidence that the terrorist group that murdered his brother was "not just . . . supported and funded by the Libyan government, but that it was directed by that government and acted as its agent in Lebanon to carry out terrorist activities." Id. at *6. Here, by contrast, there is no allegation, much less evidence, that the 9/11 hijackers were in any sense agents of Prince Turki or the government of Saudi Arabia. Indeed, as noted in Section B, infra, plaintiffs have failed to present any evidence whatsoever to rebut FSIA immunity.

5

Plaintiffs do contend that the non-commercial torts exception applies to abrogate Prince Turki's FSIA immunity. See Motion at 7-17. But, again, they do not present any evidence to support that position. Their one-page discussion of Prince Turki (id. at 14) consists solely of citations to their own complaint. But it is well-established that a district court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Accord Robinson, 269 F.3d at 141-42; Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993).

The FSIA confers immunity on Prince Turki unless plaintiffs present "evidence of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). Because Prince Turki denies the core allegations against him, plaintiffs cannot rely upon those allegations in attempting to establish that an FSIA exception applies. The requirement that plaintiffs present evidence to defeat a claim of FSIA immunity "is not altered by the claimed interconnection of the merits and jurisdiction." Filetech S.A. v. France Telecom S.A., 304 F.3d 180, 182 (2d Cir. 2000).

Accordingly, on the issue of FSIA immunity, the only competent evidence is Prince Turki's emphatic denial that he "in any way encouraged, funded, or provided any form of material or other assistance – direct or indirect – to enable Osama bin Laden and his Al-Qaeda network of terrorists to perpetrate [the September 11] attacks." Decl. ¶ 4. In fact, he actively worked on joint intelligence efforts with the United States "to combat terrorism in general and Osama bin Laden in particular." Id. ¶ 10. In all his interactions with Osama bin Laden, Al-Qaeda, and the Taliban, Prince Turki carried out "Saudi Arabia's foreign and national security policies." Id. ¶ 5.

6

These unrebutted assertions make it clear, as Judge Robertson held, that the non-commercial torts exception cannot be applied here to abrogate Prince Turki's FSIA immunity (and that, even if it did apply, Prince Turki was exercising a discretionary function). In the absence of contrary evidence, Prince Turki's sworn declaration is dispositive on the issue of FSIA immunity. Virtual Countries, 300 F.3d at 241 (affirming dismissal of complaint against foreign sovereign where, "[d]espite an opportunity to come forward with evidence to meet its burden of production in order to prevail on the jurisdiction issue, [plaintiff] failed to provide sufficient evidence for [its] contentions"). See also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) ("[b]ecause [plaintiff] failed to present any evidence that [defendant] was acting outside his official capacity," the district court properly dismissed the case).

The only "new evidence" on this issue, moreover, vindicates Prince Turki. Following an exhaustive investigation based on unprecedented access to intelligence materials, a presidentially appointed and congressionally chartered commission authoritatively confirmed Prince Turki's account of his efforts to bring bin Laden to justice. See The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States 115-22 (July 2004) ("9/11 Commission Report"). Compare Decl. ¶¶ 10-13. More generally, the Commission concluded that "we have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al-Qaeda, as well as "no evidence that any foreign government – or foreign government official – supplied any funding" to the terrorists. 9/11 Commission Report at 171-72. See also David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times, July 23, 2004, at A11 ("The commission did not find any Saudi government involvement in the Sept. 11 attacks or in financing Al Qaeda, contrary to charges made popular by books and films."); Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times,

7

July 22, 2004, at A1 ("In a long-awaited final report scheduled for release today, the Sept. 11 panel concluded that there was no evidence that the Saudi government or Saudi officials knew of or supported the plot to attack the United States"). These findings exonerate Prince Turki and demonstrate the complete absence of any evidence that the Kingdom of Saudi Arabia or any of its officials assisted in the terrorist attacks.

        **C.**      **Judge Robertson Did Not Commit "Plain Error"**

With neither a change in controlling law nor any new facts to support their motion, plaintiffs fall back on re-arguing the very issues concerning FSIA and personal jurisdiction on which they lost before Judge Robertson, citing the same cases and rehashing the same arguments. Prince Turki has fully dealt with these issues in his motions to dismiss and replies in the other consolidated cases.[3] We will not repeat those arguments here.[4] We will simply note our continued belief that, far from committing plain error, Judge Robertson was plainly correct on these issues.[5]

---

[3] See Ashton v. Al Qaeda Islamic Army, C.A. No. 1:02-6977 (S.D.N.Y.); Tremsky v. Osama bin Laden, C.A. No. 1:02-7300 (S.D.N.Y.); Salvo v. Al Qaeda Islamic Army, C.A. No. 1:03-5071 (S.D.N.Y.); Burnett v. Al Baraka Inv. & Dev. Corp., C.A. No. 1:03-5738 (S.D.N.Y.); Federal Ins. Co. v. Al Qaida, C.A. No. 1:03-6978 (S.D.N.Y.); and Barrera v. Al Qaeda Islamic Army, C.A. No. 1:03-7036 (S.D.N.Y.).

[4] Because Judge Robertson concluded that all of Prince Turki's possible contacts with the United States arose from his "official capacity" and he was therefore immune from suit under the FSIA, the court did not expressly address Prince Turki's claim that the court lacked personal jurisdiction over him to the extent any claims might be construed as concerning actions taken in his individual capacity. Because plaintiffs have not challenged in their motion for reconsideration Judge Robertson's holding that their allegations only concerned Prince Turki's official acts, there is no claim left for which personal jurisdiction over Prince Turki is relevant. We would note, however, that, in asking the Court to reconsider the personal jurisdiction ruling with regard to Prince Sultan, plaintiffs again fail to present any new facts or change in controlling law that would justify such reconsideration.

[5] Judge Robertson expressly did not reach the other numerous grounds for dismissal, including diplomatic immunity, that were briefed by Prince Turki. See Burnett, 292 F. Supp. 2d at 23. As the extensive briefing on those other issues demonstrates, Judge Robertson's dismissal of all claims against Prince Turki with prejudice was amply supported on alternative grounds.

8

Finally, we note that there is no "manifest injustice" in adhering to Judge Robertson's ruling dismissing Prince Turki. The motion was exhaustively briefed and argued by able counsel. Despite repeated rounds of briefing (including sur-replies and sur-sur-replies), the Burnett plaintiffs never made good on their promise to present evidence implicating Prince Turki in the September 11 attacks. One can only conclude that they have neither documents nor eyewitness testimony to support the serious allegations that they have made. The only "manifest injustice" would be to allow such unsubstantiated and irresponsible claims to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should decline to exercise its discretion to reconsider Judge Robertson's order dismissing all claims against Prince Turki.

---

See Motion to Dismiss and Motion to Quash Service of Process of HRH Prince Turki Al-Faisal bin Abdulaziz Al-Saud at 17-30, 39-51 (D.D.C. filed May 5, 2003); Reply in Support of Motion to Dismiss and Motion to Quash Service of Process of Prince Turki Al-Faisal bin Abdulaziz Al-Saud at 13-16, 23-40 (D.D.C. filed Aug. 8, 2003); Response of Prince Turki Al-Faisal to Plaintiffs' Sur-Reply in Further Opposition to Prince Turki's Motion to Dismiss at 10-14 (D.D.C. filed Sept. 10, 2003).

        Respectfully submitted,

        KELLOGG, HUBER, HANSEN,
          TODD & EVANS, P.L.L.C.

        By: _____/s/_____
        Mark C. Hansen (MH0359)
        Michael K. Kellogg (MK4579)
        David C. Frederick (DF4906)
        Michael J. Guzman (MG9623)
        J.C. Rozendaal (JR1430)

        Sumner Square
        1615 M Street, N.W., Suite 400
        Washington, D.C. 20036-3209
        Telephone:    202-326-7900
        Facsimile:    202-326-7999

        *Attorneys for HRH Prince Turki*
        *Al-Faisal bin Abdulaziz Al-Saud*

August 13, 2004

**CERTIFICATE OF SERVICE**

    I hereby certify that, on this 13th day of August 2004, I caused copies of the Memorandum of Law in Opposition to Burnett Plaintiffs' Motion to Reconsider the Order Dismissing All Claims Against His Royal Highness Prince Turki Al-Faisal bin Abdulaziz Al-Saud to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
Michael J. Guzman