United States District Court
Southern District Of New York

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This Document Relates to: Burnett v. Al Baraka, 03-CV-9849*

# OPPOSITION OF PRINCE SULTAN BIN ABDULAZIZ AL-SAUD TO THE *BURNETT* PLAINTIFFS' MOTION TO RECONSIDER JUDGE ROBERTSON'S ORDER OF DISMISSAL

William H. Jeffress, Jr. (admitted *pro hac vice*)
D.C. Bar No. 041152

Christopher R. Cooper (admitted *pro hac vice*)
D.C. Bar No. 453387

Jamie S. Kilberg (admitted *pro hac vice*)
D.C. Bar No. 480207

Sara E. Kropf (admitted *pro hac vice*)
D.C. Bar No. 481501

BAKER BOTTS, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400
Phone: (202) 639-7700
Fax: (202) 639-7890

**Attorneys for HRH Prince Sultan bin Abdulaziz Al-Saud**

## INTRODUCTION

After twice representing to the Court that their motion for reconsideration was meant to address a "procedural" issue and would not re-argue legal positions that had been raised in the multitude of briefs already filed in this case, and receiving leave to file the motion on these pretenses, the Burnett plaintiffs have done precisely what they promised the Court they would not do. Rather than addressing a procedural issue (which was never an issue to begin with), their brief merely rehashes the same arguments that are pending before the Court on Prince Sultan and Prince Turki's motions to dismiss. This needless motion demonstrates one of the central reasons why this Court should extend deference to Judge Robertson's prior ruling: Having fought long and hard for his dismissal in Burnett, it is fundamentally unfair for Prince Sultan to confront multiple and duplicative relitigation of the same issues here. Yet once again the Burnett plaintiffs have raised these issues and once again they have failed to present any "extraordinary circumstance" that would warrant a departure from Judge Robertson's legally sound dismissal of Prince Sultan from the D.C. action. Judge Robertson's ruling should be maintained in Burnett and adopted in the Consolidated Actions.

## BACKGROUND

On November 14, 2003, after a year of active litigation, Judge James Robertson of the District Court for the District of Columbia dismissed the Third Amended Complaint in Burnett as to Princes Sultan and Turki. Burnett et al. v. Al Baraka Dev. Corp. et al., 292 F. Supp. 2d (D.D.C. 2003). Approximately three weeks later, the Panel on Multidistrict Litigation transferred Burnett and the related September 11 actions to this Court ("Consolidated Actions"). As we have noted in detail elsewhere, the complaints in the Consolidated Actions (which include an exact replica of the Burnett complaint filed originally in the Southern District of New York)

1

make virtually identical factual allegations against Prince Sultan and proceed under the same legal theories. See Memorandum in Support of Prince Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints, at 8-9. On March 19, 2004, Prince Sultan moved to dismiss the Consolidated Actions under the Court's previously-established case management procedures, which include a 25-page limitation on supporting memoranda and a requirement that plaintiffs in the Consolidated Actions file a single 25-page opposition. See id.

Prince Sultan's motion to dismiss made two overarching arguments: *first*, the Court should give substantial deference to Judge Robertson's dismissal of Prince Sultan in Burnett under the "law of the case" doctrine; and, *second*, Judge Robertson's ruling should be adopted in the identical Consolidated Actions because it is correct under both D.C. Circuit and Second Circuit law. The plaintiffs (including the Burnett plaintiffs) filed their 25-page opposition addressing both these arguments, and Prince Sultan filed a reply memorandum on May 28, 2004. The motion is therefore fully briefed and awaiting a hearing.

Apparently not satisfied with the briefing procedures established by the Court, the Burnett plaintiffs sought leave to file a motion for reconsideration of Judge Robertson's ruling, which they had neglected to do in the intervening five months since it had issued. The plaintiffs emphasized to the Court that the motion was "procedural" insofar as it was meant to ensure that, should the Court disagree with Judge Robertson and deny Prince Sultan's motion to dismiss the Consolidated Actions, that ruling would apply as well to Burnett. As counsel for the plaintiffs advised the Court during the May 12, 2004 status hearing:

> This is not an instance where we are trying to be repetitious or overlap. These two defendants [Prince Sultan and Prince Turki] have made a consolidated motion in all of the other cases. We're not looking for a chance to put in a duplicative brief. What we are looking for is the procedural opportunity to make sure that if the

2

>court reaches a different result in the other cases it will also apply in <u>Burnett</u>.

5/12/04 Hearing Tr. at 60.[1]

Plaintiffs' "procedural" justification was red herring. As counsel for Prince Sultan noted at the May 25 hearing, if the Court were to reject Judge Robertson's ruling and deny Prince Sultan's motion to dismiss the Consolidated Actions, the plaintiffs of course would request and the Court surely would agree that its ruling be applied to <u>Burnett</u>. There is simply no procedural reason why the plaintiffs needed to seek reconsideration before the Court decides Prince Sultan and Prince Turki's pending motions.

The obvious purpose for the motion for reconsideration was to obtain an additional opportunity (and additional pages) to address the issues presented in the pending motions to dismiss. But surely recognizing that the application of Judge Robertson's ruling to the MDL cases was squarely presented in briefing on the pending motions (in which the <u>Burnett</u> plaintiffs had every opportunity to participate), plaintiffs' counsel justified a separate motion for reconsideration by suggesting the existence of Second Circuit precedent that had not previously been presented to the Court. Specifically, counsel stated that the <u>Burnett</u> plaintiffs "would like to cite to Your Honor" Southern District precedent in which an MDL Court had reconsidered a transferee Court ruling under circumstances purported similar to those here. 5/12/04 Hearing Tr. at 61. Although the Court indicated that it would "appreciate" being apprised of any Second Circuit cases "that need to be brought to our attention," it made abundantly clear that, if the motion were allowed, plaintiffs were not to cover terrain that had been covered in other motions:

---

[1] Counsel returned to this procedural justification during the May 25, 2004 status hearing, stating that "the real thrust of our request is a procedural one because these same defendants . . . have moved to dismiss in the other actions that are pending before Your Honor. . . . That is all we are trying to accomplish here, . . . a procedural way of making sure that we get consistent results across the board." 5/25/04 Hearing Tr. at 61-63.

3

"Should I allow [the motion], we are not going to revisit the old papers. No repetition." Id. at 63.

Despite the Court's admonition, the motion for reconsideration does not raise a single new legal issue or discuss any relevant precedent that was not cited or discussed in the briefing on Prince Sultan's motion to dismiss the Consolidated Actions. Specifically, the Southern District MDL case (Degulis v. LXR Biotechnology) that plaintiffs' counsel suggested was on all fours with this case but had not previously been cited to the Court, had in fact twice been cited in other briefs. See Memorandum in Support of Prince Sultan's Motion to Dismiss Certain Consolidated Complaints, at 10; Plaintiffs' Consolidated Memorandum in Opposition to Sultan's Motion to Dismiss Certain of the Consolidated Complaints, at 14 n.5 (both citing Degulis). Even more troubling, the motion for reconsideration devotes twelve full pages to arguing the same sovereign immunity and personal jurisdiction issues that were the basis for Judge Robertson's decision and that have been briefed extensively in pending motions. See Burnett Plaintiffs' Memorandum of Law in Support of Motion Pursuant to F.R.C.P. 54(b) to Re-Consider Non-Final Ruling Dismissing Claims Against Defendants Sultan bin Abdulaziz Al-Saud and Turki Al-Faisal bin Abdulaziz Al-Saud ("Pl. Mem."), at 6-18.[2]

In short, the Burnett plaintiffs sought leave to file their motion for reconsideration on misleading pretenses and have ignored the conditions the Court placed on its acceptance of the motion. Such conduct should not be tolerated and certainly should not be rewarded.

---

[2] In rearguing Judge Robertson's ruling on personal jurisdiction, the Burnett plaintiffs go so far as to cite and "incorporate by reference" the plaintiffs' unauthorized "Personal Jurisdiction Brief" which the Court struck from the record by order filed on June 18, 2004.

4

## ARGUMENT

### I. Judge Robertson's Dismissal of Prince Sultan is Entitled to Substantial Deference

The plaintiffs mischaracterize Prince Sultan's position on the application of the "law of the case" doctrine. Nowhere does his consolidated motion to dismiss argue that the Court lacks the *power* to revisit Judge Robertson's rulings in Burnett. Nor does it assert that the law of the case doctrine strictly applies to cases (such as the other Consolidated Actions) that were not before the Court that issued the prior ruling. Our position, rather, is that the Court *should* defer to Judge Robertson's rulings, and extend them to the other, virtually identical Consolidated Actions, because no "extraordinary circumstances" are present that would warrant revisiting a prior ruling of a coordinate court.

In Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988), the Supreme Court announced that "a court has the power to revisit prior decisions of its own or of a coordinate court . . . , although as a rule courts should be loathe to do so in the absence of *extraordinary circumstances* such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Id. at 817 (emphasis added, internal citations omitted). The Second Circuit has identified three such "extraordinary circumstances" which might lead a court (including a transfer court) to reconsider a prior ruling in a case: (1) new evidence; (2) an intervening change in controlling law; and (3) the need to correct clear error or correct manifest injustice. Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2nd Cir. 1992). None of these extraordinary circumstance exists here.[3]

---

[3] The Burnett plaintiffs emphasize the fact that Federal Rule of Civil Procedure 54(b) allows for the reconsideration of non-final judgments at any time during the proceedings. Pl. Mem. at 2. The Second Circuit has squarely held, however, that "[e]ven if Rule 54(b) allows parties to request district courts to revisit earlier rulings, the moving party must do so within the strictures of the law of the case doctrine." Virgin Atlantic Airways, 956 F.2d at 1255. Thus, Rule 54(b) does not eliminate the

A.     **There is No New Evidence**

There is no new evidence. The Third Amended Complaint, which Judge Robertson dismissed as to Prince Sultan, remains operative in Burnett, and the active Complaints in the other cases are essentially mirror images of that in Burnett. The plaintiffs have attempted to bolster their deficient allegations with a handful of exhibits to their opposition to Prince Sultan's consolidated motion to dismiss, consisting primarily of media articles. Yet this new "evidence" (which we debunk in our reply memorandum) does nothing to change the underlying legal hypothesis that Judge Robertson so soundly rejected: that an official of a friendly foreign government may be sued in the United States for lawfully carrying out his government's foreign policy, wholly within its own territory, because he (allegedly) intended for his lawful actions indirectly to benefit persons who had announced an intention to harm Americans.

If anything, it is the *absence* of evidence supporting the plaintiffs' claims that is more apparent now than it was when Judge Robertson ruled. On July 22, 2004, the bipartisan National Commission of Terrorist Attacks Upon the United States issued its final report, which directly refutes the plaintiffs' central accusation against Prince Sultan. After interviewing more that 1200 individuals in 10 countries including nearly every senior government official from the current and previous administrations with responsibility for topics covered by its mandate (including President Bush), reviewing over 2.5 million pages of documents (including classified intelligence material), and taking public testimony from 160 witnesses over 19 days of hearings, the Commission unanimously exonerated the government of Saudi Arabia and its officials of funding Al Qaeda in general and the 9/11 attacks in particular:

---

requirement that "exceptional circumstances" be present in order to justify upsetting a prior ruling in a case.

6

> [W]e have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded [al Qaeda].
>
> * * *
>
> Similarly, we have found no evidence that any foreign government -- or foreign government official -- supplied any funding [to the 9/11 plotters].

Final Report of the National Commission on Terrorist Attacks Upon the United States, at 171-72 (July 2004).[4]

The Commission's findings reveal why the plaintiffs have had to resort to an unprecedented theory of indirect tort liability (not to mention strained interpretations of sovereign immunity and personal jurisdiction), and why Judge Robertson concluded that their allegations against Prince Sultan stretched the common law to "terra incognita." Burnett, 292 F. Supp. 2d at 20. The plaintiffs have offered no new evidence to cast doubt on the Commission's definitive findings.

**B.     There Has Been No Change in Controlling Law**

No decision by the U.S. Supreme Court, the D.C. Circuit, or the Second Circuit issued since Judge Robertson's ruling in November 2003 has suggested a change in controlling law that would warrant upsetting the ruling of the D.C. Court. Cf. Crane Co. v. American Std. Inc., 603 F.2d 244 (2d Cir. 1979) (where "before a case in a district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend is in error, no principle of the 'law of the case' would warrant a failure . . . to correct the ruling."); see also Wash. Nat'l Life Ins. Co. v. Morgan Stanley & Co., 974 F. Supp. 214, 219 (S.D.N.Y. 1997) (finding no intervening change in higher authority following post-MDL remand

---

[4] For the Court's convenience, Prince Sultan's reply brief in support of his motion to dismiss the Federal Insurance complaint, filed on August 9, 2004, attaches a summary of relevant findings of the 9/11 Commission.

7

to transferor court); Erie Conduit Corp. v. Metropolitan Asphalt Paving Ass'n, 560 F. Supp. 305, 308 (E.D.N.Y. 1993) (applying law of the case where no cases decided by the Second Circuit after the previous judge's rulings expanded on legal authority on which prior decision rested).

The mere fact that Burnett was transferred to a Court in a different federal circuit does not constitute a "change in controlling law" sufficient to disregard the law of the case. While Plaintiffs are correct that the this Court is bound to apply the substantive law of the Second Circuit and to reject rulings by transferor courts that are clearly wrong under Second Circuit law, they have attempted to manufacture a conflict of law where none exists.

Judge Robertson announced *four* separate holdings in Burnett as to Prince Sultan: (1) the plaintiffs' claims do not satisfy the FSIA's commercial activity exception, 292 F. Supp. 2d at 17-18; (2) the plaintiffs' "attenuated chain of causation" does not satisfy the causation requirements of the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5), in light of both the narrow purpose of the exception and the more specific FSIA exception, 28 U.S.C. § 1605(a)(7), concerning material support for terrorism, id. at 19-20; (3) the non-commercial tort exception also does not apply because Prince Sultan was exercising a discretionary official function, id. at 20-21; and (3) the Court lacked personal jurisdiction over Prince Sultan because the plaintiffs alleged neither traditional minimum contacts nor facts establishing that he "purposefully directed" his activities at the United States, id. at 22-23. The Burnett plaintiffs do not challenge Judge Robertson's first holding, on the commercial activity exception. With respect to the third and fourth holdings, the plaintiffs do not even rely on Second Circuit law in arguing that Judge Robertson ruled incorrectly. Their primary authority for the contention that the discretionary function exclusion does not apply is from Judge Robertson's own court (Letelier v. Republic of Chile, 488 F. Supp. 665 (D.D.C. 1980)) and the Ninth Circuit (Liu v. Republic of China, 892

F.2d 1419 (9th Cir. 1989)). And the Supreme Court cases on which they base their "purposeful direction" theory of personal jurisdiction (Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) and Calder v. Jones, 465 U.S. 783 (1984)) by definition cannot be at odds with any governing law in the Second Circuit. Accordingly, the plaintiffs are unable to identify any conflict between Judge Robertson's rulings and Second Circuit law as to these two, dispositive holdings.[5] This Court therefore should not upset Judge Robertson's findings on these two issues.

The only conflict with Second Circuit law that the Plaintiffs have even asserted exists comes in connection with Judge Robertson's holding on the causation element of the FSIA's non-commercial tort exception. See Pl. Mem. at 7-8 (arguing that the Second Circuit's decision in Robinson v. Malaysia calls for a different conclusion than that reached by Judge Robertson). We and other defendants have explained at length elsewhere why Judge Robertson's ruling is fully consistent with Robinson. We will not repeat those arguments here.

By letter dated August 12, 2004, the Plaintiffs have also contended that Kilburn v. v. Socialist People's Libyan Arab Jamahiriya, No. 03-7117, 2004 WL 1698198 (D.C. Cir. July 30, 2004), somehow commands reconsideration and reversal of Judge Robertson's causation decision. The Plaintiffs contend that Kilburn implicitly rejects Judge Robertson's causation

---

[5] Certainly recognizing that there is no Second Circuit conflict regarding Judge Robertson's discretionary function holding, the Plaintiffs attempt to relegate the holding by erroneously characterizing it as "dictum." Pl. Mem. at 15. In fact, the Supreme Court has consistently stated that alternative holdings are binding precedent and not mere dicta. See, e.g., Kimble v. D.J. McDuffy, Inc., 454 U.S. 1110, 1113 n.4 (1981) (White, J., dissenting from denial of certiorari) (fact of alternative holding "does not mitigate [its] precedential effect" "nor does it lessen the conflict in the Circuits"); United States Steel Corp. v. EPA, 444 U.S. 1035, 1038 (1980) (Rehnquist, J., dissenting from denial of certiorari) ("independent, alternative basis for the decision of the court below" is not "dicta" and is entitled to review); Woods v. Interstate Realty Co., 337 U.S. 535, 537 ("where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum"); United States v. Title Ins. & Trust Co., 265 U.S. 472, 486 (1924) ("where there are two grounds, upon either of which an appellate court may rests its decision, and it adopts both, the ruling on neither is obiter, but each is the judgment of the court.

analysis under the non-commercial tort exception, effectively overruling that decision. The Plaintiffs are wrong for several reasons.[6]

*First*, the plaintiff in Kilburn alleged that the terrorist organization directly responsible for the death of the plaintiff's brother was "not just . . . supported and funded by the Libyan government [the defendant], but that it was directed by that government, and acted as its agent in Lebanon to carry out terrorist activities." Kilburn, 2004 WL 1698198, at *6 (quotations omitted). The Plaintiffs have made no such allegations against Prince Sultan. Indeed, Judge Robertson recognized the importance of this distinction, holding that jurisdiction under the FSIA may be appropriate in cases involving "causal links significantly shorter and more direct than those alleged here." Burnett, 292 F. Supp. 2d at 21. This is not one of those cases.

*Second*, Plaintiffs fail to note that the plaintiff in Kilburn satisfied his burden of coming forward with evidence demonstrating that jurisdiction was proper. The D.C. Circuit noted that the plaintiff submitted "expert . . . and first-hand knowledge of some of the events in question" in the form of an affidavit of a retired Ambassador. Kilburn, 2004 WL 1698198, at *8. As we have previously argued at length, the Plaintiffs here have offered no factual and supported evidence whatsoever, and certainly no first-hand evidence, that Prince Sultan funded al Qaeda or participated in the 9/11 attacks.

*Finally*, the Plaintiffs' reliance on Kilburn, at most, gets them past Judge Robertson causation analysis. It does nothing to suggest that Judge Robertson was incorrect in holding that the Prince Sultan's actions are "squarely covered" by the discretionary function exception to the non-commercial tort exception. Burnett, 292 F. Supp. 2d at 20. As noted above, the Plaintiffs do not even rely on Second Circuit law in arguing that Judge Robertson ruled incorrectly. We

---

[6] These reasons are more fully explicated in Prince Sultan's and Prince Turki's joint letter to the Court dated August 13, 2004, which we incorporate herein by reference.

10

have previously, and at length, argued why the discretionary function provision offers a completely independent ground for rejecting the applicability of the non-commercial tort exception to FSIA immunity. We will not repeat those arguments here.

The lack of any real conflict of law undermines the plaintiffs' argument that Judge Robertson's ruling must be reconsidered *de novo* in order to ensure consistency with other consolidated actions. As we noted in Prince Sultan's motion to dismiss the consolidated cases, application of Judge Robertson's ruling to the other cases would be fully consistent with what little law has been developed thus far in the non-Burnett actions.

Degulis v. LXR Biotechnology, 928 F. Supp 1301 (S.D.N.Y. 1996), which plaintiffs touted at the May 25 status hearing, does not instruct a different result. In Degulis, Judge Sweet reconsidered (and then upheld) the denial of a motion to dismiss an action in the Southern District of Texas issued prior to the MDL Panel's transfer of that and similar actions to the Southern District of New York. The Court correctly recognized that it should not reconsider the Texas court's ruling unless there had been an "intervening change of controlling law" or some other "compelling circumstance." Id. at 1309. It erroneously concluded, however, that the MDL transfer *itself* represented the kind of change in controlling law sufficient to the disregard standard law of the case principles. To support that flawed conclusion, the Degulis court relied on the Second Circuit's statement in United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982), that "judges of coordinate jurisdictions are not bound by each others rulings, but are free to disregard them if they so choose." Id. Yet six years after Birney, the Supreme Court had made clear in Christianson, supra, that, in applying law of the case doctrine, a transfer court should not differentiate between its own decisions and those of the originating court. 486 U.S. at 817. In either situation, the Supreme Court held, courts should be "loathe" to revisit prior decisions "in

the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and work a manifest injustice.'" Id. (internal citations omitted). If the mere fact of an MDL transfer were to be considered a "change in controlling law" sufficient to disregard law of the case principles, then the Supreme Court's instruction in <u>Christianson</u> to apply the law-of-the-case doctrine equally to decisions of coordinate courts would be meaningless. Plaintiffs' reliance on <u>Degulis</u> is therefore misplaced.

<u>In re Korean Airlines Disaster</u>, 814 F. Supp 599 (S.D.N.Y. 1993), another transfer case from this district, provides a much more instructive (and intuitive) example of how to apply a prior decision of a transferor court. There, a negligence action against Korean Airlines was remanded to the Southern District of New York for a trial on damages after liability had been found by a jury in consolidated MDL proceedings in the District of Columbia. Id. at 600. Prior to remand, the airline had moved to strike the plaintiffs' demand for a jury trial on damages, but the D.C. court denied the motion. Id. After remand, the airline sought reconsideration of the D.C. court's ruling. Id. The plaintiffs argued that the prior ruling was law of the case and should not be revisited. In resolving the matter, Judge Lowe, unlike the Court in <u>Degulis</u>, adhered to the Supreme Court's guidance on according deference to the transferor court's ruling:

> This case is unusual in that the prior ruling on the jury trial issue came not from this court but from the District Court for the District of Columbia. The decisions of that court will of course be accorded the deference that this court would accord its own decisions. Yet, realistically speaking, the issues have not been examined in this Court. Some measure of de novo consideration is necessary if this Court's deference is to have any studied basis. Accordingly, the substance of [the defendant's] motion will be addressed, although in the end the motion would have to prove especially meritorious to justify a departure from the prior ruling.

Id. at 601.

We too appreciate that, in order to determine what degree of deference to extend to Judge Robertson's decision, the Court must give "some measure" of consideration to its merits. So as not to offend law of the case principles, however, the Court should depart from Judge Robertson's ruling only if finds "extraordinary circumstances" or, in Judge Lowe's words, "especially meritorious" reasons for doing so. Plaintiffs have presented no such reasons.

### C.     Judge Robertson's Ruling Was Not Clearly Erroneous

Finally, Judge Robertson's dismissal of Prince Sultan was not clearly erroneous. In fact, it was correct in all respects. We have presented arguments on the substance of Judge Robertson's rulings in other briefs and decline to take the plaintiffs' lead in rearguing the merits here. We respectfully refer the Court to our earlier pleadings in the MDL action, as well as the original briefing before Judge Robertson.

## CONCLUSION

For the reasons stated above, Judge Robertson's ruling in <u>Burnett</u> should not be overturned and should extended to the nearly identical complaints against Prince Sultan in the other Consolidated Actions.

Dated: August 13, 2004                    Respectfully submitted,

                                          S/
                                          _____
                                          William H. Jeffress, Jr. (admitted *pro hac vice*)
                                          D.C. Bar No. 041152

                                          Christopher R. Cooper (admitted *pro hac vice*)
                                          D.C. Bar No. 453387

                                          Jamie S. Kilberg (admitted *pro hac vice*)
                                          D.C. Bar No. 480207

                                          Sara E. Kropf (admitted *pro hac vice*)
                                          D.C. Bar No. 481501

                                          BAKER BOTTS, LLP
                                          1299 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20004-2400
                                           Phone:   (202) 639-7700
                                           Fax:     (202) 639-7890