UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*  Federal Insurance Co. v. al Qaida
 03 CV 06978 (RCC)


**THE FEDERAL PLAINTIFFS' OPPOSITION
TO THE MOTIONS TO STRIKE
FILED BY SAAR NETWORK ENTITY DEFENDANTS
AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC.
HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC
THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON
INVESTMENTS, INC., SAFA TRUST, SANA-BELL, INC., STERLING CHARITABLE
GIFT FUND, STERLING MANAGEMENT GROUP, INC. AND YORK FOUNDATION,**
*AND*
**THE SAAR NETWORK EXECUTIVE DEFENDANTS
TAHA AL-ALWANI, MUHAMMAD ASHRAF,
<u>M. OMAR ASHRAF, M. YAQUB MIRZA, AND IQBAL UNUS</u>**

The Federal Plaintiffs hereby respond to the motions to strike submitted by the SAAR Network Entities and by the SAAR Network Executives. (The SAAR Network Entities and the SAAR Network Executives are hereinafter sometimes collectively referred to as the "SAAR Network Defendants.") Because their motions are largely duplicative, the Federal Plaintiffs will respond with a single opposition. In sum, the Executives seek to strike allegations regarding their control over the Entities, and the Entities seek to strike allegations regarding an ongoing investigation into their activities. Both species of allegations are proper, and neither should be stricken.

I.         **Defendants Misconstrue The Standard Under Rule 12(b)(6)**

According to the SAAR Network Defendants, the Federal Plaintiffs "went far beyond the FAC and spent most of their Opposition Brief describing and referencing matters not pled in the FAC." According to the SAAR Network Defendants, such references are "improper" and should be dismissed by the Court. The SAAR Network Defendants are wrong, and their decision to proceed with the filing of motions to strike needlessly burdens the Court with additional, and needless, motion practice.

First, the Federal Plaintiffs are required under Federal Rule of Civil Procedure 8(a)(2) to set forth only a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). In a case as dizzyingly complex as this, if the Federal Plaintiffs were required to set forth all that they knew, the complaint would run to thousands of pages. This is not only unnecessary, but contrary to the Federal Rules, which require notice only.

Second, the Federal Plaintiffs' RICO Statement, filed on July 16, 2004 and provided pursuant to Case Management Order # 2, is "deemed an amendment to the Federal Insurance the Federal Plaintiffs' . . . Amended Complaint, by incorporation by reference." See Case Mgmt. Order ¶ 14. The matters of which the SAAR Network Defendants complain in the present motion are included in the RICO Statement, and are therefore properly referenced in the Opposition Briefs. For example, the SAAR Network Executives take issue with the sentence in the Opposition Brief that states that they "are among the al-Qaida sympathizers, supporters and financiers who conspired toward and otherwise enabled the Attack by acting as founders, officers and directors of the numerous SAAR Network entities that provided support for al Qaida." According to the SAAR Network Executives, "[t]his is not alleged in the FAC." Yet the facts

2

supporting this statement are alleged, in detail, in the RICO Statement, and in particular in Exhibit "A" to the RICO Statement which describes each of the Executives' role in the SAAR Network.

Third, the Court of Appeals for the Second Circuit has deemed a complaint "to include . . . documents that the the Federal Plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted). The allegations that the SAAR Network Defendants seek to strike fall within these parameters, and are therefore properly set forth in the Opposition Briefs.

The SAAR Network Entities seek to strike allegations regarding official investigations into the Network, as well as the purpose for which the Network was founded. The SAAR Network Executives seek to strike allegations that they are al Qaida sympathizers, supporters, and financiers who conspired toward and otherwise enabled the Attack by acting as founders, officers and directors of the SAAR Network Entities, and that they control more than sixty-five of the SAAR Network Entities.[1] The SAAR Network Executives also seek to strike specific allegations made regarding each individual Executive. For example, the SAAR Network Executives seek to strike allegations regarding the control they had over the SAAR Network Entities, yet the relationship between the Executives and the Entities are detailed in the RICO Statements, particularly in Exhibit "A" to the RICO Statements for the Executives.

These allegations were, however, contained in documents possessed by the Federal Plaintiffs and relied upon by them in bringing this action and in filing the RICO

---

[1] The SAAR Network Executives try to make much of the Federal Plaintiffs' "confusion" as to whether there are "more than sixty-five of the SAAR Network Entities" or "more than one hundred." For purposes of the present motion, it hardly matters, but the Federal Plaintiffs also note that these statements are not necessarily inconsistent, and the truth will come out in discovery.

Statements.  See, e.g., Affidavit by David Kane in Support of Application for Search Warrant, In the Matter of Searches Involving 555 Grove Street and Related Locations, E.D. Va. (Oct. 2003); Douglas Farah & John Mintz, *U.S. Trails Va. Muslim Money, Ties:  Clues Raise Questions About Terror Funding*, Wash. Post at A1 (Oct. 7, 2002) (stating that "[t]he SAAR network consists of more than 100 Muslim think tanks, charities and companies, many of which are linked by overlapping boards of directors, shared offices and the circular movement of money, according to tax forms and federal investigators.").  Accordingly, these allegations are properly made in the Opposition Briefs, and should not be stricken.

Finally, the cases cited by the SAAR Network Defendants do not support their motion to strike.  Mayer v. Oil Field Systems Corp., 721 F. F.2d 59, 62-63 (2d Cir. 1983) stated that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."  According to Mayer, no notice of "conversion" from Rule 12(b)(6) to Rule 56 had been provided.  Id. at 63.  Here, no such conversion is sought or necessary, so Mayer is inapposite.  In Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998), the plaintiff attempted to assert a new claim -- a "duty to correct" misleading statements in a prospectus -- by mentioning it for the first time in her opposition memorandum to the motion to dismiss.  Here, the Federal Plaintiffs are not attempting to assert a new claim, so Wright is inapposite.  In Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D. N.Y. 1977), the plaintiff attempted to supply a missing element of his claim -- in a fraud case, the date on which he learned of the misrepresentations he relied upon -- "but a party is not entitled to amend his pleading through statements in his brief."  Here, the Federal Plaintiffs do not attempt to supply a missing element of their claim, so Jacobson is inapposite.

4

In contrast to the plaintiffs in <u>Mayer</u>, <u>Wright</u>, and <u>Jacobson</u>, the Federal Plaintiffs here merely provided some additional details drawn from the documents upon which they relied when drafting the FAC. This is an unprecedented case that involves a conspiracy that all defendants wish to keep secret and with a fact pattern of enormous and almost mind-boggling complexity. As such, providing additional details from the voluminous documents upon which the Federal Plaintiffs relied in drafting their complaint does not constitute a violation of Rule 12(b)(6), and the motion to strike should be denied.

## II.      Plaintiffs Have Not Made Impertinent or Scandalous Allegations

According to the SAAR Network Defendants, the Federal Plaintiffs' opposition contains "clearly 'impertinent' and 'scandalous' matter such that this Court should strike from the record the portions of its pleading that extend beyond the four corners of the Complaint."

The SAAR Network Defendants' argument regarding "impertinence" is difficult to understand. The Federal Plaintiffs' brief stated allegations that were contained in documents possessed by the Federal Plaintiffs and relied upon by them in bringing this action referred to in those documents. Those allegations concerned official investigations into the Network's links to al Qaida, as well as the purpose for which the Network was founded, and the Executives' sympathy and support for and financing of al Qaida. What could possibly be more pertinent to a case about al Qaida's co-conspirators?

The SAAR Network Defendants' argument alleging that these matters are "scandalous" is even more troubling. In the present action, the entire point of which is to hold certain parties liable for their support of al Qaida and their role in the diabolical Attack on New York, how can averments about links to radical Islamic terrorism be deemed

5

scandalous? Indeed, the Federal Plaintiffs could not bring their case at all if these sort of allegations are "scandalous" because they are exactly what this case is about.

The SAAR Network Defendants also claim that the averments "have the potential to harm the Entities irreparably in the public eye" because the allegations are "lifted from inaccurate media reports." Certainly, if those allegations are already in the media, the SAAR Network Defendants have little to fear from their recitation here, which would be, in any event, subject to judicial privilege. Because repeating those allegations are not an abuse of the judicial privilege, the Federal Plaintiffs are free to repeat them.

Moreover, many of these allegations were necessitated by the SAAR Network Defendants' insistence, in their motions to dismiss, that there is no "SAAR Network," and that the Federal Plaintiffs have "wholly contrived" the terms "with no supporting facts." In a case such as this, however, with hundreds of defendants, many with names to which Westerners are unaccustomed and still more with names that are similar to one another, it only makes sense to aggregate some defendants when they have some significant commonalities and label them in a coherent fashion. That is standard practice in litigation. Here, because these defendants had presented themselves to this Court together and presented a unified defense, and since all of them are associated with a group of charities with common addresses in Northern Virginia, and since these charities are commonly called the "SAAR Network," the appellation was used here, and many of the allegations made in the Opposition Briefs, which are now the subject of the present motion to strike, related to the existence of the SAAR Network.

**III.     CONCLUSION**

        For all these reasons, the Federal Plaintiffs respectfully request that the motions to strike filed by the SAAR Network Executives and the SAAR Network Entities be denied.

        Respectfully submitted,

        COZEN O'CONNOR


        By: _____/s/_____
              STEPHEN A. COZEN, ESQUIRE
              ELLIOTT R. FELDMAN, ESQUIRE
              SEAN P. CARTER, ESQUIRE
              MARK T. MULLEN, ESQUIRE
              1900 Market Street
              Philadelphia, PA  19103
              Tel.:  (215) 665-2000
              Fax:   (215) 665-2013

        *Attorneys for the Federal Plaintiffs*


Dated: August 16, 2004