## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | **03-MDL-1570** |
| ) | |
| In re Terrorist Attacks on September 11, 2001 ) | **ECF Case** |
| ) | |
| ) | |

**Relates to:**
*Ashton v. Al Qaeda Islamic Army,* **02-CV-6977 (RCC)**
*Burnett v. Al Baraka Investment & Development Corp.*, **03-CV-5738 (RCC)**
*Federal Insurance Co. v. Al Qaida*, **03-CV-9849 (RCC)**
*Salvo v. Al Qaeda Islamic Army*, **03-CV-5071 (RCC)**


## REPLY MEMORANDUM IN SUPPORT OF CONSOLIDATED
## MOTION TO DISMISS OF PRINCE NAIF BIN ABDULAZIZ AL-SAUD

**James M. Cole (admitted *pro hac* vice)**          **Michael G. Biggers (MB 4743)**
**D.C. Bar No. 385857**

**James J. Murphy (admitted *pro hac* vice)**
**D.C. Bar No. 227926**

**BRYAN CAVE LLP**                                   **BRYAN CAVE LLP**
**700 Thirteenth Street, N.W.**                      **1290 Avenue of the Americas**
**Washington, DC  20005**                            **New York, NY 10104**
**Phone: (202) 508-6000**                            **Phone: (212) 541-2000**
**Fax: (202) 508-6200**                              **Fax:    (212) 541-4630**

## <u>TABLE OF CONTENTS</u>

1.      Plaintiffs have failed to supplement the bare allegations of their Complaints with any admissible evidence to establish the subject matter jurisdiction of the Court. .....................1

2.      Plaintiffs have failed to demonstrate any extraordinary circumstances that would justify departing from the prior decision of the United States District Court for the District of Columbia in this case. ..........................................................................................................8

3.      Plaintiffs have not pleaded or otherwise submitted facts sufficient to invoke the non-commercial tort exception to the immunity to which Prince Naif is entitled under the FSIA .............................................................................................................................9

4.      Plaintiffs' pleadings do not establish *prima facie* that this Court has personal jurisdiction over Prince Naif ........................................................................................................14

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Antares Aircraft, L.P. v. Federal Republic of Nigeria*,
   948 F.2d 90 (2d Cir. 1991), *vacated on other grounds,* 505 U.S. 1215 (1992) ........ 1-2

*Applegate v. Top Associates, Inc.*,
   425 F.2d 92 (2d Cir. 1970) ..................................................................................2

*Boim v. Quranic Literacy Institute*,
   291 F.3d 1000 (7th Cir. 2002) ...........................................................................12

*Bryks v. Canadian Broadcasting Corp.*,
   906 F. Supp. 204 (S.D.N.Y. 1995) ......................................................................9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...........................................................................................15

*Burnett v. Al Baraka Investment & Development Corp.*,
   292 F. Supp. 2d 9 (D.D.C. 2003) ..................................................................passim

*Chuidian v. Philippine National Bank*,
   912 F.2d 1095 (9th Cir. 1990) .............................................................................9

*CutCo Industries v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) ...............................................................................14

*Flatow v. Islamic Republic of Iran*,
   999 F. Supp. 1 (D.D.C. 1998) ............................................................................12

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) ...............................................................................14

*Kamen v. American Telephone & Telegraph Co.*,
   791 F.2d 1006 (2d Cir. 1986) ...............................................................................2

*Kato v. Ishihara*,
   239 F. Supp. 2d 359 (S.D.N.Y. 2002), *aff'd*, 360 F.3d 106 (2d Cir. 2004) ..................9

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ...........................................................................................15

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
   376 F.3d 1123 (D.C. Cir. 2004) .........................................................................11

*Letelier v. Republic of Chile*,
    488 F. Supp. 665 (D.D.C. 1980) .................................................................10

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001).........................................................9

*Liu v. Republic of China*,
    892 F.2d 1419 (9th Cir. 1989) ...................................................................10

*Lynch v. Patrolmen's Benevolent Ass'n*,
    162 L.R.R.M. 2187 (S.D.N.Y. 1999)...........................................................3

*Robinson v. Government of Malaysia*,
    269 F.3d 133 (2d Cir. 2001)......................................................................11

*Smith v. Islamic Emirate of Afghanistan*,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003)........................................................12

*Virtual Countries, Inc. v. Republic of South Africa*,
    148 F. Supp. 2d 256 (S.D.N.Y. 2001), *aff'd*, 300 F.3d 230 (2d Cir. 2002) ................10

## STATUTES & RULES

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq* ...........................................1

28 U.S.C. § 1605(a)(2)..........................................................................................9

28 U.S.C. § 1605(a)(5)...................................................................................passim

28 U.S.C. § 1605(a)(7)..........................................................................11, 12, 13

Fed. R. Civ. P. 12(b)(5).........................................................................................1

## MISCELLANEOUS AUTHORITIES

Final Report of the National Commission on Terrorist Attacks Upon the
    United States ..............................................................................................7, 11

Statement of Louis J. Freeh before the Joint Intelligence Committee (Oct. 8,
    2002), available at http://intelligence.senate.gov/0201hrg/021008/freeh.pdf ..............3

Plaintiffs' cases against the Defendant, HRH Prince Naif bin Abdulaziz Al Saud ("Prince Naif"), are unfounded as a matter of law, in that this Court lacks jurisdiction, both over the subject matter of these actions and over the person of the defendant.  As set out in detail in the Memorandum in support of his Motion to Dismiss ("Defendant's Mem."),[1/]  Prince Naif, the Minister of Interior of the Kingdom of Saudi Arabia, is immune from these suits under the applicable provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq.*  Further, he has no contacts whatsoever with either the United States as a whole or the State of New York, so that there is no basis for subjecting him to the exercise of this Court's jurisdiction.

1.      **Plaintiffs have failed to supplement the bare allegations of their Complaints with any admissible evidence to establish the subject matter jurisdiction of the Court.**

Plaintiffs' Consolidated Memorandum in Opposition to Prince Naif's Motion to Dismiss ("Opp. Mem.") responds initially to these legal issues with a lengthy segment (misleadingly entitled "Facts") drawn from snippets of news items and similar hearsay sources, devoid of any claim of personal knowledge, and consisting largely of inference and innuendo.  Opp. Mem. at 2-8.  It is on this flimsy structure that Plaintiffs rest their unsupportable contention that Prince Naif shares legal responsibility with the 9/11 hijackers and is liable for damages to their victims.

To justify this extraordinary narrative — far removed from the allegations of their Complaints — Plaintiffs rely on the holding in *Antares Aircraft, L.P. v. Federal Republic*

---

[1/]      Plaintiffs note that Prince Naif's motion was directed at the wrong *Burnett* case.  They say that service on this Defendant was made in 03-CV-9849, but not in 03-CV-5738.  Opp. Mem. at 1 n.1. Accepting Plaintiffs' correction, this Reply addresses the former case and Defendant moves the dismissal of the latter case for insufficiency of service of process.  Fed. R. Civ. P. 12(b)(5).

*of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *vacated on other grounds*, 505 U.S. 1215 (1992) that, in deciding a motion challenging subject matter jurisdiction under Rule 26(b)(1), the "court may resolve disputed factual issues pertaining to subject matter jurisdiction by reference to *evidence* outside the pleadings" (emphasis added).  Opp. Mem. at 2 n.3.  However, in *Antares* the court noted that items such as affidavits are the type of evidence to which it is referring.  Plaintiffs omit the reference to affidavits from their description of *Antares*, no doubt because their "evidence" is a collection of unsworn assertions, hearsay, and discredited information.

In *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006 (2d Cir. 1986), a case similarly involving a Rule 12(b)(1) motion attacking subject matter jurisdiction, which was cited by the *Antares* court, the Second Circuit looked to Federal Civil Rule 56, "in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings."  *Id*. at 1011.  The Court of Appeals elaborated that "courts have required that evidence submitted outside the pleadings be 'competent,'" and that "affidavits not based upon personal knowledge have been held not to comply with Rule 56(e)".  *Id*.  Thus, the court held the district court erred in "consider[ing] the conclusory and hearsay statements contained in the affidavits submitted by defendants." *Id*.

In *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 97 (2d Cir. 1970), the Court of Appeals described the inadequacies of a Rule 56 affidavit in terms remarkably applicable to these Plaintiffs' purported evidence:  "[Affiant] . . . has submitted an affidavit grounded on suspicion, and bound together with rumor and hearsay.  He has provided the court with characters and plot line for a novel of intrigue rather than the concrete

2

particulars that would entitle him to a trial." *See also Lynch v. Patrolmen's Benevolent Ass'n*, 162 L.R.R.M. 2187 (S.D.N.Y. 1999)  (Dispute of jurisdictional facts raised by Rule 12(b)(1) motion; court held inadmissible as hearsay portions of affidavit asserting facts "[a]ccording to various newspaper and media reports").

The sources Plaintiffs rely on for their purported factual narrative are of the same character as those described in the foregoing cases and equally lacking in evidentiary value.  The exhibits attached to the Opposition Memorandum consist of four news clippings and a letter from Senator Charles Schumer to Saudi Ambassador to the United States Prince Bandar demanding the dismissal from office of Prince Naif.[2/]  Yet these hearsay documents make up the linchpin of Plaintiffs' flawed contention that Prince Naif was in a position to know, and must have known, that funds intended as charitable contributions (including, presumably, his own innocuous donation for the purchase of tents for Chechen refugees, Opp. Mem. Ex. 2) went for support of terrorists.  These and

---

[2/]     Senator Schumer's letter charges, among other things, that Prince Naif is culpable for his role as head of the Saudi Committee for Support of Intifada Al Qud, which provides financial assistance to Palestinians.  Plaintiffs attack him vehemently on the same basis (Opp. Mem. at 8, n.5).  Saudi Arabia's support for the Palestinian cause is well known.  Indeed, one of the attachments to the Schumer letter is an article from a Saudi news publication, *Ain-Al Yaqeen*, that quotes the Saudi Minister of Finance as stating that assistance to the Palestinians has been one of the principles of policy of the Kingdom since its establishment.  The conduct complained of by Senator Schumer and the Plaintiffs constitutes performance of his official duties by Prince Naif and has no relevance to this lawsuit.  Senator Schumer also charges that Prince Naif obstructed U.S. efforts in regard to the investigation of the Khobar Towers bombing, however, that was not the case.  According to Louis Freeh, the Director of the FBI during the relevant time period, Prince Naif's support of U.S. efforts was "unprecedented and invaluable."  In testimony before the Joint Senate Select Intelligence Committee on October 8, 2002, Director Freeh stated:

> Fortunately, the FBI was able to forge an effective working relationship with the Saudi police and Interior Ministry.  After several trips and meetings with the Saudi leadership and particularly, Prince Nayef, the Interior Minister, the FBI was granted permission to expand its presence and joint, operational capability within the Kingdom.
>
> * * *
>
> The cooperation the FBI received as a result of Princes Bandar and Nayef's personal intervention and support was unprecedented and invaluable.

the similar sources cross-referenced in exhibits to other of Plaintiffs' Memoranda in related cases are inadmissible hearsay, they are not based on personal knowledge, and they do not constitute the "evidence" that the *Antares* decision held to be deserving of consideration in order to resolve disputed jurisdictional facts. The Plaintiffs' embellishments should be disregarded by the Court.

Moreover, Plaintiffs' factual allegations, even if they were to be considered by the Court, fall far short of establishing the proposition for which they are offered — that Prince Naif raised funds for Islamic charitable organizations with knowledge that these organizations would direct funds to Osama Bin Laden's al Qaeda, and that al Qaeda would use the resources thus acquired to attack targets inside the United States.

Plaintiffs point to Prince Naif's supervisory responsibility regarding the Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"), which they mischaracterize as a consortium of charities, and argue that "it is inconceivable" that Prince Naif did not know these organizations gave support to al Qaeda. Opp. Mem. at 3. As shown in the attached translation of High Order 7/B/1863 by which the SJRC was established, it was in fact not a consortium of charitable organizations, but a governmental body composed of "representatives of high rank" from a number of ministries, plus a representative from each of the Saudi charities that participated in relief work. Ex. 1. Plaintiffs mistakenly refer to these charities as constituting the entire Joint Committee.[3] The Committee was chaired by the President of the Saudi Red Crescent (a governmental entity of the Kingdom of Saudi Arabia) and assigned for supervisory purposes to the Ministry of

---

[3] The charities represented on the SJRC are the International Islamic Relief Organization ("IIRO"), World Assembly of Muslim Youth ("WAMY"), Al Haramain Charitable Foundation ("Al Haramain"), and Islamic Endowment Foundation ("IEF"). Ex. 1.

Interior — one of Prince Naif's many official duties.  Its specific purpose, according to the High Order, was to provide relief to Muslim refugees from Kosovo (and subsequently from Chechnya), whose plight was among the causes for the eventual intervention of NATO in the former Yugoslavia.  In claiming that Prince Naif must have known that these charities gave support to al Qaeda, Plaintiffs ignore the historical realities of the time when the SJRC was formed.  Many Muslims in both Chechnya and Kosovo were being oppressed by the ruling regimes in those countries.  The SJRC provided important aid to those oppressed Muslims and continues today as an agency of the Kingdom with discretion to donate public funds, and operates in accordance with the laws and regulations of the Kingdom.  Ex. 2.  Importantly, to the extent that any of the charities represented on the SJRC has been identified as a supporter of terrorism, that did not occur until after September 11, 2001.  Accordingly, there is nothing presented by the Plaintiffs that could have put Prince Naif on notice concerning these charities.  Even if some charities associated with the SJRC had been co-opted in certain individual instances, that would not render every act by the SJRC suspect and evil.

Obviously, the supervisory role that Prince Naif had in the performance of this discretionary official function qualifies for immunity under § 1605(a)(5)(A) of the FSIA, but Plaintiffs' purported evidence of SJRC links to terrorism is unconvincing in any case.  They rely on testimony by a self-styled terrorism expert, Jean-Charles Brisard, before a U.S. Senate Committee that $74 million was funneled to local bureaus of the SJRC that were allegedly terrorist-controlled.  Opp. Mem. at 6 (citing Ex. 4 to Bierstein Affirmation in Opp. to Motion to Dismiss of Saudi Red Crescent Society at 8).  Brisard provided no source or documentation for this charge; it was merely his assertion.  The need for

authoritative back-up is paramount as to Brisard's claims.  He has been expressly found by the High Court of Justice in London to be a purveyor of false information in regard to certain of his allegations about the sources of terrorist finances (Ex. 3 ¶ 2), and about the supposed official U.N. auspices under which he compiled his untruths (Ex. 4 ¶¶ 27-30).

Plaintiffs also rely on an April 3, 2000, BBC report of a raid on a house in Kosovo rented by the SJRC, conducted by K-For, the NATO Force in Kosovo (also mentioned by Brisard).[4/]  Opp. Mem. at 6-7 (citing Ex. 20 to Bierstein Affirmation Opposing Prince Sultan's Motion to Dismiss).  Both Plaintiffs and Brisard, however, fail to mention the key fact disclosed in the BBC report — that the search of the SJRC house did not reveal any evidence that could link the group with terrorist activity.

Prince Naif's membership on the Supreme Council for Islamic Affairs ("Supreme Council") is also cited by Plaintiffs as a basis from which "[t]he inference is overwhelming" and "[i]t can be presumed" that Prince Naif had knowledge that the funds of Islamic charities were being diverted to al Qaeda.  Opp. Mem. at 6, 5.  Prince Sultan heads the Supreme Council and the Reply submitted to this Court in support of his Motion to Dismiss (at 2) effectively disposes of Plaintiffs' argument on this score.  It is one of the purposes of the Supreme Council to recommend to the government financial support for Islamic organizations, but the Supreme Council "does not have the function of policing the activities of such [charitable] organizations abroad, nor as a practical matter could it do so."  Declaration of Abdulaziz H. Al Fahad submitted as Ex. 1 in support of Prince Sultan's Motion to Dismiss, ¶ 11, attached hereto as Ex. 5.  Oversight

---

[4/]    Both Plaintiffs and Brisard incorrectly refer to the search party as a U.N. unit.

of the recipient organizations remains the responsibility of the officials who head them.
*Id.*

Plaintiffs apparently recognize the lack of probative force of their charges that Prince Naif supported al Qaeda through the SJRC, an agency of the Saudi government, for they repeatedly refer to funds donated to the SJRC as being distributed to al Qaeda by what they describe as its "constituent parts" or "constituent charities," referring to the IIRO, WAMY, and Al Haramain. Opp. Mem. at, *e.g.*, 3, 17. But as shown in the attached Exhibit 1, Plaintiffs are simply wrong on the facts. These groups were not the parts that constituted the SJRC; they were established Saudi charities that each merely had a representative on the SJRC. Whether they received any funds from the SJRC – or indeed the uses they made of any funds they received from any source – has not been established by Plaintiffs through any evidence, let alone admissible evidence.

The most authoritative refutation of Plaintiffs' arguments concerning Prince Naif is contained in the Final Report of the Presidentially-appointed National Commission on Terrorist Attacks on the United States ("9/11 Report"). The Commission based its report on extensive classified information and interviews with more than 1200 individuals, including "nearly every senior official from the current and previous administrations who had responsibility for topics covered in our mandate … Executive branch agencies have searched records and produced a multitude of documents for us." 9/11 Report, Preface, at xv, xvii.

The Commission firmly rejected the contention advanced here by Plaintiffs that Saudi officials, including Prince Naif, knowingly contributed funds to al Qaeda. The Commission reported that "we have found no evidence that the Saudi government as an

institution or senior Saudi officials individually funded [al Qaeda]."  9/11 Report at 171.

Although the Commission added that it could not exclude the likelihood that charities

sponsored by the Saudi government had diverted funds to al Qaeda, at most this

possibility, if established, would only show that, as stated in one of Plaintiffs' exhibits,

the charities had been "hijacked" by Muslim radicals.  Opp. Mem. Ex. 4.  These

statements of the Commission, when read together as they must be, indicate that Prince

Naif was not a knowing provider of funds to al Qaeda, even through Saudi charities.

2.     **Plaintiffs have failed to demonstrate any extraordinary circumstances that would justify departing from the prior decision of the United States District Court for the District of Columbia in this case.**

Our opening brief pointed out the relevance to Prince Naif of Judge Robertson's

rulings made in dismissing the *Burnett* Complaint as to Prince Sultan and Prince Turki,

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9 (D.D.C. 2003).  Defendant's

Mem. at 5-6.  The same FSIA and personal jurisdiction principles that Judge Robertson

applied in *Burnett* warrant dismissal in this Court of all the Plaintiffs' Complaints against

Prince Naif.

Plaintiffs, not surprisingly, denigrate both the legal authority and the

persuasiveness of Judge Robertson's decision.  But as the Memoranda submitted by

Prince Sultan and Prince Turki in Opposition to Plaintiffs' Motions to Reconsider Judge

Robertson's decision explain, this Court's undoubted power to revisit a prior decision of

a transferring court should be exercised only in extraordinary circumstances, none of

which Plaintiffs have shown to exist here.  Prince Naif adopts and incorporates by

reference the cogent arguments in these Memoranda of Prince Sultan and Prince Turki

and urges this Court to decline to reconsider the carefully reasoned decision of Judge

Robertson, and to recognize its precedential effect as to Prince Naif.

**3.      Plaintiffs have not pleaded or otherwise submitted facts sufficient to invoke the non-commercial tort exception to the immunity to which Prince Naif is entitled under the FSIA [5/]**

As set out in the Defendant's Memorandum (at Section II.A), the noncommercial

tort exception to the FSIA, § 1605(a)(5) has no application to Prince Naif in this case for

several reasons, including (i) the effect of the discretionary function "exception to the

exception," (ii) the failure of Plaintiffs to link Prince Naif to their damages as the

proximate cause thereof, and (iii) the absence of any statutory reference to the "provision

of material support" for terrorism as a basis for applying the noncommercial tort

exception.  Nothing in the Opposition Memorandum effectively counters these

arguments. [6/]

### Discretionary function

Plaintiffs make no effort to answer in depth Prince Naif's position that their

allegations relate only to his official actions as Minister of the Interior and therefore

---

[5/]      The *Federal Insurance* Plaintiffs assert, but do not argue, that the commercial activity exception of the FSIA, § 1605(a)(2), operates to deny Prince Naif immunity for conduct alleged in their Complaint. Opp. Mem. at 12 n.8.  Judge Robertson considered at some length whether the commercial activity exception applied to similar allegations made by the *Burnett* Plaintiffs against Prince Sultan, and concluded it was inapplicable.  292 F. Supp. 2d at 17-18.  The same result should obtain for Prince Naif.  Inasmuch as the *Federal Insurance* Plaintiffs incorporate their arguments that the commercial activity exception applies to the activities of Prince Sultan and Prince Turki, as set out in their Memoranda Opposing these Defendants' Motion to Dismiss, we adopt the Replies thereto of these Defendants and incorporate them herein.

[6/]      Plaintiffs' argument that individual officers of a foreign sovereign are not entitled to immunity under the FSIA is a measure of their desperation.  Opp. Mem. at 10-11.  The absence of any authoritative Second Circuit ruling on such immunity very likely shows that it is widely accepted, for a number of District Court decisions in the Second Circuit have held such individual officers to be covered by immunity.  *Kato v. Ishihara*, 239 F. Supp. 2d 359, 363 (S.D.N.Y. 2002), *aff'd*, 360 F.3d 106 (2d Cir. 2004); *Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 286-87 (S.D.N.Y. 2001); *Bryks v. Canadian Broadcasting Corp.*, 906 F. Supp. 204, 210 (S.D.N.Y. 1995).  The disinclination of parties to appeal such rulings suggests they routinely go uncontested.  The textual analysis of § 1603(b)(2) advanced by Plaintiffs was considered and rejected by the first appellate decision on this point.  *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1100-03 (9th Cir. 1990).

constitute discretionary functions to which the noncommercial tort exception does not apply pursuant to § 1605(a)(5)(A). [7/]

Rather, the Plaintiffs merely cite *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) and *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980), and for the rest incorporate by reference their briefs filed in opposition to the Motions to Dismiss of Prince Sultan and Prince Turki.  Accordingly, as to the distinctions between *Liu* and *Letelier* and this case, Prince Naif incorporates by reference the arguments on this point submitted by Prince Sultan and Prince Turki.  We also note that Judge Robertson's decision in *Burnett* effectively distinguished *Liu* and *Letelier*, 292 F. Supp. 2d at 21.

### Causation

Prince Naif has pointed out the long, convoluted and flawed chain of causation that Plaintiffs try to construct, reaching from Prince Naif's dispensation of government funds to organizations doing charitable work, through innumerable and unknowable intervening causes, to the damages inflicted on Plaintiffs by the 9/11 hijackers. Defendant's Mem. at 16.  But there is nothing other than Plaintiffs' conclusory assertions to establish knowledge on the part of Prince Naif that such funds might find their way to al Qaeda to be used in an attack on the United States. [8/]  As the 9/11 Commission stated with respect to such contributions:  "Some … surely knew, and others did not, the

---

[7/]     The *Burnett* and *Ashton* Plaintiffs try to bootstrap themselves into an allegation, like that in the *Federal Insurance* complaint (¶¶ 442-443), that Prince Naif made personal contributions to support al Qaeda that were not part of his official duties and are therefore not entitled to immunity under the FSIA. Opp. Mem. at 9-10.  They point to allegations, made in identical terms in both Complaints, that Prince Naif made "monetary payoffs" to Osama bin Laden and al Qaeda (*Burnett, ¶* 381, *Ashton*, ¶ 288).  Our opening brief explained that such allegations, while emphatically denied, necessarily refer to governmental conduct because the purpose of such payoffs was alleged to be deterrence of al Qaeda actions that targeted Saudi Arabia, thus enhancing the security of the Kingdom.  Defendant's Mem. at 9.  The *Burnett* and *Ashton* parties showed they knew how to construct unequivocal allegations of personal contributions as they did in regard to Prince Sultan (*Burnett ¶¶ 359-362; Ashton* ¶¶ 269-272).  They have not done so as to Prince Naif.

[8/]     Such "bald assertions" are insufficient, *Virtual Countries, Inc. v. Republic of South Africa*, 148 F. Supp. 2d 256, 269 (S.D.N.Y. 2001); *aff'd,* 300 F.3d 230 (2d Cir. 2002).

ultimate destination of their donations."  9/11 Report at 170.  Fairly read, the 9/11 Report concluded that Prince Naif did not know.  9/11 Report at 171.

This attenuated theory of causation was examined and rejected by Judge Robertson in *Burnett*, 292 F. Supp. 2d at 19-20.  Plaintiffs respond that Judge Robertson erred in setting an excessively stringent standard of causation in FSIA cases, citing *Robinson v. Government of Malaysia*, 269 F.3d 133, 143 (2d Cir. 2001), and, in correspondence with the Court (citing *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123 (D.C. Cir. 2004)).

Neither case warrants any departure from Judge Robertson's causation analysis. *Robinson* did no more than restate the conventional proximate cause principle of tort law (also discussed in Defendant's Mem. at 15).  Judge Robertson's decision in *Burnett* is fully consistent with this holding.  While he did not speak specifically in terms of proximate cause, surely a causation theory that stretches "not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita," is the antithesis of "proximate".  292 F. Supp. 2d at 20.

*Kilburn* is distinguishable from this case.  As explained in a letter filed with the Court dated August 13, 2004, on behalf of Prince Turki and Prince Sultan (incorporated herein by Prince Naif as if set out in full), the Court found that the parties who tortured and killed the plaintiff's brother were agents of the Libyan government, thus establishing a direct link between the perpetrators and their government sponsors.  Inasmuch as Libya had been designated as a state sponsor of terrorism, it was amenable to suit for its agents' actions pursuant to the exception to immunity set out in § 1605(a)(7).  Similarly, Plaintiffs citation of *Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002);

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998); *and Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003), Opp. Mem. at 16, is unavailing.  In each of those cases the defendants were declared to be state sponsors or terrorism and were alleged to have provided support directly to a terrorist organization.

Here, there is no contention of any such direct link between Prince Naif and the 9/11 hijackers, nor any credible claim that he had knowledge of their plan to attack the United States.  This is a critical distinction.  The most that has been properly alleged is that, in his official capacity, Prince Naif directed contributions to organizations that, in addition to their undeniably charitable activities, are alleged to have provided funds to militant Islamic groups.[9/]  To attempt to tie Prince Naif to the tragedies of 9/11 on this basis is the rankest of speculation.  The requirement of § 1605(a)(5) that Plaintiffs show their damages to have been "caused by the tortious act … of any official … of [a] foreign state" has not be met by Plaintiffs.

### "Material Support" as an element only of § 1605(a)(7)

Plaintiffs reject as "nonsense" the position advanced in our first brief that, in § 1605(a)(7) of the FSIA, Congress consciously associated the "provision of material support" of terrorist activity as a basis for denying immunity only with foreign nations and their officials that have been formally designated as state sponsors of terrorists.  Opp. Mem. at 21.  In so doing, Plaintiffs are impliedly branding Judge Robertson's decision in *Burnett* as "nonsense" as well, for he held that inclusion of the "material support" language in § 1605(a)(7), and its omission from the noncommercial tort provision, § 1605(a)(5), signified a purposeful decision by Congress to provide an exception from

---

[9/]    Plaintiffs' argument that Prince Naif conspired with or aided and abetted the 9/11 terrorists is rebutted in Defendant's Mem. at 23-24.

FSIA immunity on the basis of "material support" of terrorism only as to state sponsors of terrorism. 292 F. Supp. 2d at 20 n.5.

Plaintiffs' argument that Judge Robertson was wrong in his ruling on this point is based on a spurious distinction. They read the non-commercial tort exception, § 1605(a)(5), as covering acts occurring in the United States, and the state-supported terrorism exception, § 1605(a)(7), as covering acts that occur overseas, thus complementing one another. But this analysis is flawed in a fundamental element because § 1605(a)(7), the state sponsored terrorism exception, covers not only acts committed abroad, but also those that occur in the United States. In this respect, it overlaps and conflicts with § 1605(a)(5) if interpreted as Plaintiffs do, so that many offenses described in § 1605(a)(7) are no different from noncommercial torts in § 1605(a)(5).

A far more plausible explanation is that in § 1605(a)(7) Congress carved out certain terrorist-related conduct by declared state sponsors of terrorism, including material support of terrorist organizations, to assure that government officials engaged in such acts could not claim immunity on the ground that they were engaged in a discretionary function, as would be permitted under § 1605(a)(5)(A). And, by limiting that category of conduct to § 1605(a)(7), Congress quite reasonably sought to avoid precisely the situation found in this case, where private plaintiffs take onto themselves the governmental function of determining which states are deemed to be sponsors of terrorism by having given "material support" to terrorist organizations. Plaintiffs cannot proceed against Prince Naif under § 1605(a)(7) inasmuch as Saudi Arabia has never been designated as a sponsor of terrorism, and should not be allowed to thwart Congressional

intent by importing the concept of material support of terrorism from that provision to the noncommercial tort exception, § 1605(a)(5).

**4.      Plaintiffs' pleadings do not establish *prima facie* that this Court has personal jurisdiction over Prince Naif**

Plaintiffs rely on *CutCo Industries v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986), to allow the submission of evidence in attempting to make their *prima facie* case for personal jurisdiction. But again they have attached no affidavits lending "factual specificity" to the conclusory statements of their Complaints. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Rather, they make sweeping accusations concerning the conduct of Prince Naif with no factual support. The purported facts they rely on are the same inadmissible collection of news clippings and similar materials that, as previously pointed out, are only notable for their lack of evidentiary value.

Plaintiffs' brief contends that Prince Naif "purposefully directed" his activities at the United States. Opp. Mem. at 25. Their pleadings say no such thing.

The Complaints themselves – which in the absence of any supplementary affidavits are all that the Court has before it on this issue – do not contain any facts that would even give rise to an inference that Prince Naif's conduct was directed at the United States. They do not allege that he participated in, or had advance knowledge of, the 9/11 attacks. It is claimed that Prince Naif, in his official capacity, directed funds to charities that he knew supported al Qaeda (and in his private capacity as well according to the *Federal Insurance* Complaint). While this underlying premise is not true, the point for purposes of this motion is that the Complaints make no allegation that Prince Naif knew that al Qaeda had plans to attack the United States. *See Ashton*, ¶¶ 286-288; *Burnett*, ¶¶ 379-382; *Federal Insurance*, ¶¶ 433-443. All that is alleged is that it was well known

that al Qaeda was targeting United States interests.  But those interests were not

identified as necessarily being in the United States.  Furthermore, the United States was

not the only target of al Qaeda's ire.  It also targeted, ironically, the Government of Saudi

Arabia, the Saudi Royal Family and Prince Naif personally.  *See* Plaintiffs' Consolidated

Mem. of Law in Opp. to Prince Sultan's Motion to Dismiss (Docket # 156), Ex. 3 at 4, 7-

8.  The mere allegation of supporting al Qaeda does not lead to the ineluctable conclusion

that this support will further attacks inside the United States.  Because of this, Plaintiffs

theory of personal jurisdiction fails.

In brief, the allegations against Prince Naif do not differ in any material way from

those made against Prince Sultan, as described by Judge Robertson, "that he personally

donated money to the IIRO, the WML, the WAMY and Al-Haramain, knowing that those

foundations funded terrorist organizations, including Al Qaeda."  *Burnett*, 292 F. Supp.

2d at 22-23.  Judge Robertson held that these allegations "stop[] well short of alleging

that Prince Sultan's actions were 'expressly aimed' or 'purposefully directed' at the

United States," thus failing to meet the tests for establishing personal jurisdiction laid out

in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770 (1984).  The same analysis applies to Prince Naif.


**CONCLUSION**

Try as they might, Plaintiffs have not alleged or produced any facts to support

their sweeping, conclusory allegations against Prince Naif.  Without such support, their

Complaints are insufficient and should be dismissed.

Respectfully submitted,


_____
                  /s/

**James M. Cole (admitted *pro hac* vice)**   **Michael G. Biggers (MB 4743)**
**D.C. Bar No. 385857**

**James J. Murphy (admitted *pro hac* vice)**
**D.C. Bar No. 227926**

**BRYAN CAVE LLP**                **BRYAN CAVE LLP**
**700 Thirteenth Street, N.W.**   **1290 Avenue of the Americas**
**Washington, DC  20005**         **New York, NY 10104**
**Phone: (202) 508-6000**         **Phone: (212) 541-2000**
**Fax: (202) 508-6200**           **Fax:    (212) 541-4630**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this 27th day of August, 2004, I caused copies of the Reply Memorandum in Support of the Consolidated Motion to Dismiss of Prince Naif Bin Abdulaziz Al-Saud to be served electronically pursuant to the Court's ECF system, and by United States first-class mail on all parties' attorneys who are not participating in the Court's ECF system.

<u>/s/</u>_____
James M. Cole