**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:  *Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849

**PLAINTIFFS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT SAUDI ARABIAN RED CRESCENT SOCIETY**

August 27, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 3

ARGUMENT ..................................................................................................................................... 4

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER SRCS BECAUSE IT PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES ............................ 4

        A.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present .......................................... 5

        B.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, SRCS Purposefully Directed Its Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities ....................................................................................... 5

            1.    *SRCS Provided Material Support to Al Qaeda* ................................ 6

            2.    *Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States* ........................................... 8

    II.    SRCS WAS PROPERLY SERVED ................................................................................. 8

    III.    THE FSIA DOES NOT PRECLUDE PLAINTIFF' SUIT AGAINST SRCS .......................... 9

CONCLUSION ................................................................................................................................. 10

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986). ............................................... 4

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993). ....................................... 5

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997). ............................................................. 5

**Statutes & Rules**

18 U.S.C. § 2333 ............................................................................................................................ 4

28 U.S.C. § 1605(a)(5) ................................................................................................................... 9

28 U.S.C. § 1653 ............................................................................................................................ 4

Fed.R.Civ.P. 12(b)(2) ..................................................................................................................... 4

Fed.R.Civ.P. 4 ................................................................................................................................ 4

## INTRODUCTION

Defendant Saudi Arabian Red Crescent Society ("SRCS) seeks to dismiss the Complaint for want of personal jurisdiction and for defective service of process.[1]  Essentially, SRCS argues that it cannot be made to answer for the murderous attacks on the United States perpetrated on September 11, 2001, because it claims to have had insufficient contact with the United States to satisfy the requirements of due process.  This argument is wrong.  SRCS – which provided financial support for al Qaeda -- aimed its conduct at the United States when it provided material support to Osama bin Laden and al Qaeda, with knowledge that al Qaeda was engaged in terrorist activities targeted primarily and specifically at the United States and its citizens and residents.  The deliberate targeting of the United States satisfies the minimum contacts test, even if the defendant never entered the United States. The principle is a simple one: no one is entitled deliberately to plot, launch, or provide financing for attacks on the United States and evade U.S. justice merely because the attacks could be planned, supported or financed from afar.

SRCS's challenge to service of process fares no better.  The method of service used here – service by publication – was specifically approved by the district court in Washington, D.C. for defendants who, like SRCS, are located in Saudi Arabia; that approval plainly applied to all similarly-situated defendants.  Moreover, it worked.  SRCS received notice of this action,

---

[1] SRCS's motion is one of a group of 11 nearly identical motions filed simultaneously by the law firm of Bernabei & Katz on behalf of 11 of the defendants (Shahir Abdulraoof Batterjee, Abdullah Omar Naseef, Abdullah Muhsen Al Turki, Saleh Al-Hussayen, Sheik Salman Al-Oadah, Sheik Hamad Al-Husaini, Safar Al-Hawali, Abdul Rahman Al Swailem, Mohammed Ali Sayed Mushayt, Hamad Al-Hussaini, and Abdullah bin Saleh Al-Obaid) in this case.  Because these motions make virtually identical (in many instance, verbatim) arguments, plaintiffs proposed to defendants' counsel that plaintiffs submit one consolidated response (of somewhat longer length than a single brief, but considerably shorter than the 275 pages allotted by the local rules to these 11 briefs) and that defendants submit a single, consolidated reply (again, of an adjusted length).  Defendants refused and accordingly, plaintiffs now file a separate response to each motion.  Plaintiffs have attempted to avoid duplication and hereby incorporate and cross-reference each of their responses into each of the others.

retained counsel and has appeared to defend himself. Its argument that the notice approved by the Court was not reasonably calculated to apprise it of the pendency of this action when in fact it did precisely that rings hollow and should be rejected. The motion to dismiss should be denied in its entirety.

Nor is SRCS entitled to sovereign immunity; its support of al Qaeda and its terrorist program falls within the "tortious act" exception to the FSIA.

## ARGUMENT

### I. THIS COURT HAS PERSONAL JURISDICTION OVER SRCS BECAUSE IT PURPOSEFULLY DIRECTED HIS CONDUCT AT THE UNITED STATES

SRCS contends that it is not subject to jurisdiction in this Court because it lacks minimum contacts with the United States. Defendant is wrong: it is subject to jurisdiction because, in supporting Osama bin Laden and al Qaeda in their terrorist war against America, SRCS purposefully directed its conduct at the United States. No more is required to satisfy the requirements of due process.[2]

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made (like this one) before discovery, plaintiffs "need make only a prima facie showing by [their] pleadings and affidavits that jurisdiction exists." *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Indeed, plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case. To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653. That is

---

[2] Saudi Arabian Red Crescent Society also claims that the District of Columbia long-arm statute does not authorize jurisdiction here. But plaintiffs do not rely on the D.C. long-arm statute. Rather, they rely on Fed.R.Civ.P. 4(k)(2) which authorizes jurisdiction over foreign defendants in the United States for federal claims (including plaintiffs' claims under the Anti-Terrorism Act, 18 U.S.C. § 2333) where jurisdiction is not otherwise available, subject only to the due process limits of the Constitution. In the context of Rule 4(k)(2), the relevant minimum contacts are with the United States as a whole.

4

particularly true where the factual predicates are complex and the parties numerous, as herein. Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

> **A.    A Defendant Who Purposefully Directs His Conduct at the United States Can Reasonably Expect to be Haled Into Court Here, Even if the Defendant Was Never Physically Present**

SRCS is subject to jurisdiction in this Court because it purposefully directed its conduct at the United States.  For a discussion of the legal standard applicable here, plaintiffs respectfully refer the Court, and incorporate by reference, their memorandum of law in opposition to the motion to dismiss filed by Hamad Al-Husaini, filed contemporaneously with this memorandum.

> **B.    The Complaint Adequately Alleges, and the Evidence Demonstrates, that, in Supporting Al Qaeda, SRCS Purposefully Directed Its Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities**

The Third Amended Complaint and the evidence submitted sufficiently make out a *prima facie* case pleaded that, in supporting al Qaeda, SRCS purposefully directed its conduct at the United States so as to subject it to jurisdiction in the Courts of the United States.[3]

---

[3]  SRCS was named as a defendant in May, 2003, after the filing of the Third Amended Complaint.  It was added through the procedure set forth in the D.C. court's Case Management Order #1, which called for the filing of a list of names of additional defendants.  SRCS never requested a more definite statement containing specific allegations against it.  Accordingly, with respect to SRCS's specific role, plaintiffs rely on the evidence submitted in connection with this memorandum.  With respect to such matters as the manner in which al Qaeda used the material support it received, al Qaeda's targeting of the United States, bin Laden's public pronouncements about his intentions to attack the United States, and the September 11 attacks themselves, plaintiffs rely on the allegations in the Third Amended Complaint, allegations in other, supplemental pleadings, and on evidence submitted herewith and in connection with other filings, where specifically noted.

5

### 1. SRCS Provided Material Support to Al Qaeda

The Saudi Red Crescent is a charitable organization based in Saudi Arabia. It was one of the earliest supporters of bin Laden and the Maktab Al-Khadimat, the predecessor to al Qaeda. *See* Affirmation of Andrea Bierstein in opposition to motion to SRCS ("Bierstein SRCS Aff."), Exhibit 1. In a memo recovered from a file marked "Osama History," SRCS was identified as a potential member of a committee being set up to "receive donations and maintain an account and the spending" for Osama's organization. Bierstein Aff., Ex. 2. Together with other well known supporters of al Qaeda, Al Haramain (which has since been dissolved because of its connections to terrorist activities), IIRO, WAMY and MWL, Saudi Red Crescent was part of the Saudi Joint Relief Committee ("SJRC") for Kosovo and Chechnya, itself a conduit to transfer funds to al Qaeda. 3AC ¶ 172.

SRCS's support of al Qaeda was facilitated by Wael Jelaidan, a/k/a Abu Al Hasan, the head of SRCS's bureau in Pakistan. Jelaidan was a supporter of al Qaeda and its cause literally from its inception: along with Osama bin Laden, Jelaidan was one of the founders of al Qaeda. *See* 3AC ¶¶ 255, 270-71. Later, Jelaidan's support of bin Laden and Al Qaeda took a different form: Jelaidan served as head of the Muslim World League office in Peshawar, Pakistan, alongside al Qaeda member Wadih el-Hage who was convicted for his role in the 1998 United States Embassy bombings in Africa. 3AC at ¶ 236, 255, 256. According to the account of al Qaeda member and Osama bin Laden associate Mohammed Bayazid, the MWL opened the office in Pakistan specifically for the use of the founders of al Qaeda. 3AC at ¶ 239. Jelaidan also served as Secretary General of the Rabita Trust, another branch of the MWL. The U.S. government has identified Jelaidan as a Specially-Designated Global Terrorist. 3AC ¶ 172.

That Jelaidan had turned SRCS into an accomplice of bin Laden is confirmed by an internal al Qaeda document noting that Saudi Red Crescent could no longer be relied on to

6

function as an "umbrella" for al Qaeda members and to hold passports for them because Jelaidan was being recalled to Saudi Arabia. *See* Bierstein SRCS Aff., Ex. 3. The implication is plain that prior to Jelaidan's recall, SRCS was one of a group of organizations supporting and providing assistance to al Qaeda.

Moreover, as described by a terrorism expert who testified before the Senate Committee on Banking, Housing and Urban Affairs, "A message on the letterhead of the Saudi Red Crescent bureau in Peshawar requests that 'weapons' be inventoried. The letter contains a note from Usama Bin Laden to its then director stating 'we have an extreme need for weapons.'" *See* Bierstein SRCS Aff., Ex. 4.

Under the direction of Jelaidan, then, SRCS provided support to al Qaeda, assisting it in raising money, concealing documents, giving shelter to operatives, and apparently, maintaining and transporting weapons. SRCS claims that Jelaidan was hired merely to do public relations work, but that is clearly not so. The al Qaeda document expressing concern about his recall makes clear that Jelaidan had the power and the authority to ensure that SRCS could provide support to al Qaeda. If, after a change of administration, SRCS at some point ceased providing services to al Qaeda, that does not in any way lessen its liability for the aid it previously provided.

In addition, the Complaint alleges, and the massive evidence that plaintiffs' have compiled demonstrates, that al Qaeda directed its terrorist activities against the United States *and* that bin Laden announced this, repeatedly and publicly throughout the mid- and late 1990's, so that defendants like SRCS who provided material support in that period plainly knew that they were targeting the United States when they assisted al Qaeda with its terrorist agenda.

7

### 2. Al Qaeda Openly and Publicly Announced its Terrorist Agenda and Targeted the United States

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaeda terrorist network had launched an international campaign of terror directed at the United States. For a full discussion of the evidence demonstrating that supporters of al Qaeda were purposefully directing their conduct at the United States because the United States and its nationals were the primary avowed targets of al Qaeda, plaintiffs respectfully refer this Court to their memorandum of law submitted in opposition to the motion to dismiss filed by Hamad Al-Husaini, and to the Affirmation of Andrea Bierstein accompanying it, as well as to the exhibits annexed to the affirmation, all of which are hereby incorporated.

## II. SRCS WAS PROPERLY SERVED

SRCS also argues that it has not been properly served. (SRCS Memorandum at 10-13.) SRCS makes the identical arguments about service by publication made by its co-defendant Sheikh Salman Ol-Oadah. Plaintiffs have addressed each of those arguments in their opposition brief to Sheikh Salman Ol-Oadah's Motion to Dismiss. Rather than repeat those arguments here, plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

As demonstrated in plaintiffs' memorandum of law in opposition to Al-Oadah's motion to dismiss, service by publication on defendants in the Middle East, including Saudi Arabian Red Cresent Society, was proper. On March 24, 2003, Plaintiffs filed a motion for leave to serve by publication defendants located in Saudi Arabia, Sudan and United Arab Emirates. *Burnett* D.D.C. Docket No. 95, 3. (A copy of plaintiffs' March 24, 2003 motion is Exhibit A to plaintiffs' Notice of Filing of Corrected Exhibit to Affirmation of Andrea Bierstein in Opposition to Motion to Dismiss Of Shahir Batterjee.) In that motion, plaintiffs asked for an extension of time to serve all originally named defendants and, by implication, any defendants added

8

subsequently that are either at large or in the region of the Gulf States, and specifically in Saudi Arabia, Sudan and United Arab Emirates.  Additionally, the Plaintiffs asked for permission to serve by publication defendants that were listed in the Exhibit A attached to the motion.  On March 25, 2003, the Court granted the March 24, 2003 request to serve certain Defendants by publication.  On May 2, 2003, SRCS was added as a defendant, see Burnett D.D.C. Docket No. 139, and was served by publication in *Al-Quds Al-Arabi* on June 3, 11, 18 and 24, and July 12 and 14, 2003 and in the *International Herald Tribune* on May 23, 30, June 6, 13, 20, and 27, 2003.  On April 9, SRCS appeared and filed this motion to dismiss.  In short, plaintiffs served SRCS in accordance with the Court's March 25, 2003 order granting their March 24, 2003 request to serve certain defendants by publication and the notice successfully apprised it of this lawsuit.  That SRCS was not specifically named in the D.C. court's March, 2003 order is irrelevant for the reasons set forth in plaintiffs' opposition brief to Sheikh Salman Ol-Oadah's Motion to Dismiss.

## III.  THE FSIA DOES NOT PRECLUDE PLAINTIFF' SUIT AGAINST SRCS

SRCS also claims that it is entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA").  But SRCS's support for al Qaeda falls within the "tortious act" exception to the FSIA.  *See* 28 U.S.C. § 1605(a)(5).  Plaintiffs hereby incorporate by reference and respectfully refer the Court to the arguments concerning the FSIA and the "tortious act" exception set forth in plaintiffs' opposition to motions to dismiss filed by Abdullah Muhsen Al Turki and Abdullah Bin Saleh Al-Obaid and to Plaintiffs' Consolidated Memorandum Of Law in Opposition to Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints.

9

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(5) should be denied in its entirety.

Dated: New York, NY                                 Respectfully submitted,
       August 27, 2004

/s/_____
Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
William H. Narwold, Esq.
Ingrid L. Moll, Esq.
Justin B. Kaplan, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone:  (317) 848-7939

Harry Huge, Esq.
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel: (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON
  & OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone: (573) 659-4454

Jack Cordray, Esq.
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for *Burnett* Plaintiffs

11