**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO RECONSIDER NON-FINAL RULING DISMISSING CLAIMS AGAINST DEFENDANTS SULTAN BIN ABDULAZIZ AL-SAUD AND TURKI AL-FAISAL BIN ABDULAZIZ AL-SAUD

August 27, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

    I.     COMPELLING CIRCUMSTANCES, NEW LAW, AND NEW EVIDENCE REQUIRE THIS COURT TO RECONSIDER THE DECISION OF THE D.C. COURT ..................................... 1

          A.     The Transfer and Consolidation of *Burnett* in this MDL Proceeding Provides a Compelling Reason for this Court to Revisit the Decision of the D.C. Court ..................................................................... 1

          B.     New Law Provides An Additional Basis for Reconsideration ..................... 4

          C.     Additional Facts Warrant Reconsideration of *Burnett II* ............................ 7

    II.    UPON RECONSIDERATION, THIS COURT SHOULD DENY SULTAN AND TURKI'S MOTIONS TO DISMISS ............................................................................................... 8

          A.     The "Discretionary Function" Clause Does Not Provide Immunity Here ................................................................................................................ 8

          B.     Defendants Directed Their Conduct at the United States by Personally Providing Support to al Qaeda .................................................. 9

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Burnett v. Al Baraka Invest. & Devel. Corp.*, 292 F.Supp.2d 9 (D.D.C. 2003) .................. 1, 5, 6, 7

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................................................ 10

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ............................................ 3, 4

*Degulis v. LXR Biotechnology, Inc.*, 928 F.Supp. 1301 (S.D.N.Y. 1996) .............................. 2, 3, 4

*Devlin v. Transp. Communications International Union*, 175 F.2d 121 (2d Cir. 1999) ................. 2

*Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir. 1982) ............................................. 3

*In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831 (2d Cir. 1992) ............................... 2

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) ............................. 10

*Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933) ..................................................................... 2

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123 (D.C. Cir. 2004) ...... 5, 6, 7

*MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918 (D.C. Cir. 1987) .................... 5

*Retail Software Services, Inc.*, 854 F.2d 18 (2d Cir. 1988) .......................................................... 10

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ......................................... 5, 7

*Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir. 1976) ....................................................... 4

*Time, Inc. v. Simpson*, 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ....................................... 10

*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ............... 4

**Statutes**

28 U.S.C. § 1404 ............................................................................................................................. 4

28 U.S.C. § 1406 ............................................................................................................................. 4

28 U.S.C. § 1407 ............................................................................................................................. 1

28 U.S.C. § 1606 ............................................................................................................................. 7

## INTRODUCTION

In their opposition to plaintiffs' motion for reconsideration, defendants Sultan bin Abdulaziz al-Saud ("Sultan") and Turki al-Faisal bin Abdulaziz al-Saud ("Turki") argue both that this Court should defer to the opinion of the D.C. district court in *Burnett v. Al Baraka Invest. & Devel. Corp.*, 292 F.Supp.2d 9 (D.D.C. 2003) ( "*Burnett II*") as "law of the case" and also that *Burnett II* was, in any event, correct. Although there is no necessary contradiction between these positions, there is some tension between them, for if *Burnett II* indeed could stand on its own merits, defendants would not need to spend so much time attempting to convince this Court that it ought not to examine that decision very closely. But defendants are wrong on both points: this Court ought not to accord the decision of the D.C. court the amount of deference urged by Sultan and Turki and that decision ought not be followed here.

## ARGUMENT

## I.  COMPELLING CIRCUMSTANCES, NEW LAW, AND NEW EVIDENCE REQUIRE THIS COURT TO RECONSIDER THE DECISION OF THE D.C. COURT

### A.   The Transfer and Consolidation of *Burnett* in this MDL Proceeding Provides a Compelling Reason for this Court to Revisit the Decision of the D.C. Court

In urging this Court to defer to the decision of the D.C. district court, defendants completely ignore that this case has been transferred pursuant to 28 U.S.C. § 1407 for MDL consolidation with other actions already pending here. Indeed, Sultan explicitly argues that the fact of such a transfer ought not to count as a "compelling circumstance" requiring this Court to take a close look at what was decided in the District of Columbia. *See* Sultan Br. at 11. Sultan's position is, however, both illogical and unworkable.

Sultan recognizes, as he must, that *Burnett II* is not "law of the case" in the other actions consolidated with *Burnett* in this proceeding. *See* Sultan Br. at 5. In those actions, this Court is

to treat the decision of the D.C. court in *Burnett* as precedent (persuasive or not) from a coordinate court, accord it as much or as little deference as it believes the decision warrants, and decide the issues raised in it *de novo*. But, according to defendants, in *Burnett* itself, this Court should apply a completely different standard and accord a completely different level of deference to the D.C. court's ruling. How, then, is this Court to ensure uniformity in the various cases consolidated before it, when, according to defendants, it is to give completely different levels of scrutiny to Judge Robertson's decision? No purpose other than the possibility of inconsistent rulings can conceivably be accomplished by the application in *Burnett* of a standard radically different from the one to be applied in *Ashton*, *Federal*, *Salvo, Barrero,* and *O'Neill* – unless it is the surreptitious importation into those cases of a "law of the case" standard that has no place there.[1] *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 497 (1933) ("consolidation does not merge the suits into a single cause or change the rights of the parties"); *Devlin v. Transp. Communications International Union*, 175 F.2d 121, 130 (2d Cir. 1999); *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 853 (2d Cir. 1992); *see also* The *Federal* Plaintiffs' Memorandum Of Law In Opposition To The Motion To Dismiss Filed By Prince Sultan Bin Abdulaziz Al-Saud.

It was in recognition of precisely this difficulty that Judge Sweet held in *Degulis v. LXR Biotechnology, Inc.*, 928 F.Supp. 1301, 1309 (S.D.N.Y. 1996) that transfer by the JPML can, by itself, be a compelling circumstance and a "'significant' and 'fundamental' change," warranting

---

[1] In this regard, Sultan's efforts to impugn plaintiffs' motive in filing this motion are particularly puzzling and wide of the mark. Sultan suggests that there is no procedural need for this motion because, he suggests, whatever decision this Court reaches in *Ashton*, *Federal*, etc., "the plaintiffs of course would request and the Court surely would agree that its ruling be applied to *Burnett*." Sultan Br. at 3. Absent from this prediction is any suggestion that *Sultan* would agree to the application to *Burnett* of a ruling in any other case that differs from the ruling of the D.C. court and indeed, his argument, on this motion, that the highest "law of the case" standard applies, without regard to the fact of consolidation or the need for uniformity, suggests just the opposite. Sultan cannot simultaneously insist, on the one hand, that the standard to be applied to Judge Robertson's decision is different in *Burnett* than in the

2

reconsideration of a pre-transfer decision, because "[r]econsideration following transfer by the JPML can ensure consistent pretrial rulings." The *Degulis* court elaborated:

> Here, the Court has before it motions to dismiss in four of the other related actions, which involve in large part the same facts and legal issues. To achieve consistent rulings on the motions to dismiss currently pending before the Court in all of the *Blech Securities* matters, it is appropriate, regardless of the merits of the Texas Court's order, to readdress the TBC Defendants' motion to dismiss in *Weiss*.

*Id.* Sultan dismisses *Degulis* as incorrect, but offers no alternate solution to the problem it addresses. Simply put, Sultan does not, and cannot, explain how an MDL transferee court, confronted with a piecemeal, pre-transfer ruling applicable to only one of the consolidated actions, is to achieve the efficiencies and uniformities that were the entire basis of the transfer and consolidation unless it is free to reconsider the pre-transfer ruling and bring it into harmony with rulings based on the transferee court's own best judgment in the remainder of the consolidated cases.

Moreover, Sultan is simply wrong in contending that *Degulis* is in any way inconsistent with the ruling of the Supreme Court in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). *Christianson* did not involve, and has nothing to say about, a § 1407 transfer and consolidation by the JPML. When a case is transferred under any other transfer statute, the unique problems of consistency that exist in a consolidated, multidistrict litigation simply do not arise. And, indeed, *Christianson* and the cases cited by the *Christianson* court arose under other transfer statutes, and there was no question of consistency with other, consolidated cases, *see Christianson,* 486 U.S. at 806 (transfer of appeal under 28 U.S.C. § 1631); *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir. 1982) (transfer under 28 U.S.C. § 1406(a)); *Skil*

---

other cases and, on the other, that uniformity may be so assumed in this proceeding that plaintiffs had no need to file this motion to ensure it.

*Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir. 1976) (transfer under 28 U.S.C. § 1404(a)).[2]

Nor is *Degulis* inconsistent with the Second Circuit decision in *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992), also relied on by defendants.  In *Virgin Atlantic*, the Second Circuit recognized that "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," 956 F.2d at 1255, without in any way suggesting that its list was intended to be exclusive of other compelling circumstances justifying reconsideration. *Degulis* describes one such other compelling circumstance – precisely the one confronting this Court.[3]

### B.    New Law Provides An Additional Basis for Reconsideration

In addition to the "compelling" circumstances resulting from the need for uniformity of decision with the other cases consolidated with this one, another circumstance justifies reconsideration here:  there has been a change in the applicable law.  Indeed, there have been at least two such changes, which, together, provide a more than sufficient basis to revisit the D.C. court's ruling.

First, by virtue of the transfer from D.C. to New York, the governing law shifted from D.C. Circuit precedent to Second Circuit precedent.  As set forth in plaintiffs' opening memorandum, Second Circuit law requires that the substantive state or federal rule that governs

---

[2] As it happens, in *Skil Corp.*, the case was transferred under § 1404(a) in order to consolidate it with other pending litigation between the same parties.  But the ruling held to be "law of the case" was the ruling upholding the *transfer itself*, so that no issue of consistency among the cases consolidated in the transferee court was, or could have been, presented. Indeed, all of the authorities that Sultan relies on for his discussion of the applicability of the "law of the case" doctrine in the context of a transfer relate to the effect to be give *to* a transfer order, *not* to the effect to be given, in a transferee court, to prior, substantive orders of the transferor court.

[3] Nor have plaintiffs been dilatory in any way in seeking reconsideration.  Rather, plaintiffs requested leave to make this motion shortly after this case was transferred and consolidated and Sultan and Turki moved to dismiss the other actions pending against them. It was these new motions that created a need for uniformity and triggered plaintiffs' request for leave to file this motion.

4

plaintiffs' cause of action be used to resolve the threshold question of the court's jurisdiction under the FSIA. *Robinson v. Government of Malaysia*, 269 F.3d 133, 143 (2d Cir. 2001). Judge Robertson relied on D.C. Circuit precedent in concluding that, regardless of the rule to be applied to plaintiffs' substantive causes of action, the FSIA should be narrowly construed with respect to threshold jurisdictional questions. *See Burnett II* at 19-20, *citing MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918 (D.C. Cir. 1987). Sultan and Turki claim that there is no inconsistency between *Robinson* and Judge Robertson's ruling, but their refusal to recognize the conflict does not make it go away. The D.C. court in *Burnett II* held that *regardless of the standard of causation that would apply to the plaintiffs' claims*, the "tortious act" exception to the FSIA should be narrowly construed to require a higher level of causation than what would be recognized by the common law, 292 F.Supp.2d at 19-20; *Robinson* requires, by contrast, that the court use the underlying cause of action as the yardstick for assessing plaintiffs' claims under the FSIA. 269 F.2d at 143. The two are not the same. Because the D.C. court failed to look to the underlying cause of action, but rather, interpreted the FSIA narrowly to require a higher standard of causation than might be applicable to the underlying claims, its decision is inconsistent with Second Circuit law and should be revisited.[4]

Second, the law in the D.C. Circuit has itself changed since the district court issued *Burnett II*. On July 30, 2004, the D.C. Circuit decided *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123 (D.C. Cir. 2004). In *Kilburn*, the D.C. Circuit held that the FSIA does not impose its own standard of causation, but rather imports, at most, the standard applicable to the underlying cause of action. In language that directly rejects the reasoning used

---

[4] Turki notes that the D.C. court found it unnecessary to decide whether plaintiffs sufficiently alleged causation to state a cause of action, but, inexplicably, suggests that this demonstrates that *Burnett II* is consistent with *Robinson*. The D.C. court explicitly recognized that plaintiffs might well satisfy the underlying standard for their claims, but

5

in *Burnett II*, the D.C. Circuit held that "[a]ny concerns about reaching too far to charge foreign states with the attenuated impact of their financial activities are better addressed as questions of substantive law," and not jurisdiction under the FSIA. *Id.* at 1129.

Defendants go to great length to distinguish the facts of *Kilburn*, but the purported distinctions are entirely beside the point. Plaintiffs' point is not that the facts of *Kilburn* require a similar result in this case, but rather that *Kilburn* requires the application of a different legal standard than the one applied by the D.C. court in *Burnett II*.[5] This aspect of *Kilburn* is not rooted at all in the specific facts of the case or in the evidence the parties presented there – it is rooted in the language of the FSIA and thus fully applicable here. The *Kilburn* court found that there was "no textual warrant" for the imposition of a a greater causal connection under the FSIA than under ordinary tort law. Finding that the words "caused by" had elsewhere been interpreted to require only "proximate cause," the D.C. Circuit rejected defendants' argument that the FSIA contained any "unexpressed requirement" of a greater causal connection. *Id.* at 1128. Moreover, the D.C. Circuit noted in *Kilburn* that imposition of a single, more restrictive standard of causation than the baseline standard of "proximate cause" applicable to the plaintiffs' claims "runs afoul of the FSIA's injunction that a non-immune 'foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances.'" *Id.* at 1129, citing 28 U.S.C. § 1606. This is not the standard that Judge Robertson applied in *Burnett II*. *See* 292 F.Supp.2d at 19-20. Since that opinion is no longer good law even in the District of

---

found that irrelevant because, it believed, the FSIA imposed a higher standard. It was precisely in this imposition of a higher standard that the D.C. court departed from the law of the Second Circuit.

[5] Plaintiffs do, of course, also argue that application of the *Kilburn* standard would have brought about a different result, although not by analogy to the facts of *Kilburn*, but rather by analogy to caselaw relevant to the underlying claims in this action. But the outcome of applying the *Kilburn* standard to plaintiffs' claims here is a purely academic exercise unless this Court grants reconsideration of *Burnett II*.

6

Columbia, there is no reason for this Court to defer to it and all the more reason for this Court to grant reconsideration.

Sultan contends that "*Kilburn*, at most, gets [plaintiffs] past Judge Robertson [*sic*] causation analysis" and argues that *Burnett II* still stands on other grounds.  *See* Sultan Br. at 10.  But the issue is whether there are sufficient compelling circumstances and sufficient changes in the law to warrant this Court revisiting the issues addressed in *Burnett II*.  Plaintiffs are not appealing that ruling, but rather are seeking to have this Court address the issues *de novo* in this case, as it must in any event with respect to the other motions to dismiss filed by these defendants.  In that context, and given the MDL transfer and the need for uniformity, the fact that *Kilburn* (and *Robinson*) undercut the reasoning of a substantial portion of *Burnett II* is sufficient basis to warrant reconsideration of that decision.  Upon reconsideration, this Court can decide for itself whether *Burnett II* was correct on any ground.

### C.    Additional Facts Warrant Reconsideration of *Burnett II*

Defendants claim that no new evidence justifies reconsideration, but they are wrong.  Plaintiffs have obtained substantial new evidence concerning al Qaeda's targeting of the United States; the extent to which that targeting was publicly announced from the mid-1990's on; and the extent to which Sultan was privy to information about al Qaeda and the charities that acted as conduits for al Qaeda funding at the time he made contributions to those charities.  *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints and the Affirmation of Andrea Bierstein in Opposition to Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints ("Bierstein Sultan Aff."), Ex. 1-24.  This evidence is relevant to plaintiffs' contention that in making his contributions to the charities in question, Sultan "purposefully directed" his conduct at the United States and thus subjected himself to jurisdiction here.  It is also relevant to

plaintiffs' argument that Sultan may be held accountable for the attacks of September 11 under standard tort law principles of causation, because he knew what that the charities were funding al Qaeda and assisted them in doing so.  The availability of this evidence – and its submission in connection with the consolidated motion in the other cases in this proceeding – provides further reason for this Court to reconsider *Burnett II*.[6]

## II. UPON RECONSIDERATION, THIS COURT SHOULD DENY SULTAN AND TURKI'S MOTIONS TO DISMISS

Upon reconsideration of *Burnett II*, this Court should deny the motions to dismiss filed by Sultan and Turki in the *Burnett* action.[7]  As demonstrated in plaintiffs' filings in response to defendants' consolidated motions and in response to Sultan and Turki's filings in the *Federal* action, the "tortious act" exception removes any immunity that Sultan and Turki might otherwise claim under the FSIA.  Moreover, Sultan and Turki purposefully directed their conduct at the United States sufficiently to subject them to personal jurisdiction in the United States.

### A. The "Discretionary Function" Clause Does Not Provide Immunity Here

Relying on the "discretionary function" clause of the "tortious act" exemption, Sultan attempts to recast plaintiffs' claims as seeking relief for Sultan's failure to carry out his official

---

[6] That the September 11 Commission was unable to conclude that Sultan, Turki or other members of the Saudi royal family funded al Qaeda is completely irrelevant to whether this Court should reconsider *Burnett II*.  That the Commission did not see evidence from which its members were willing to conclude that any of these defendants knowingly funded the perpetrators of the September 11 attacks does not mean that such evidence does not exist.  Moreover, there is no reason to believe that the Commission applied the same legal standard this Court would apply in determining culpability.  In addition, the Commission had various constituencies to satisfy in discharging its mission that are not relevant to this Court's adjudication of the issues in this case.  In short, the relevant evidence in this case is the evidence submitted to this Court and the significance of that evidence must be determined by the fact-finder in this proceeding.

[7] Defendants take plaintiffs to task for reaching this issue and suggest that plaintiffs misled the Court in seeking to bring this motion.  As noted above, *see* footnote 1, *supra*, the procedural necessity of this motion is clear as defendants have never conceded, and do not concede, that whatever result is reached on their motions to dismiss in the other cases should be applied automatically in this case.  Defendants also make much of plaintiffs' undertaking not to repeat arguments made elsewhere, but somehow fail to notice that in their opening memorandum on this motion, plaintiffs' arguments on the merits of defendants' motions incorporated by reference arguments made elsewhere.

duties in his own country. That is not the case. Plaintiffs seek to hold Sultan liable for financial support that he gave to organizations that plaintiffs allege he knew were funneling money to al Qaeda. Sultan's responsibilities for overseeing charities are relevant *not* because Sultan failed properly to carry them out, but rather because they give rise to a compelling inference that Sultan *knew* that the charities were conduits for funding al Qaeda and he nonetheless knowingly continued to provide funding to those very groups. That is, plaintiffs' case proceeds from the assumption that Sultan carried out his responsibilities well enough that he knew precisely who and what he was giving money to, because it was his job to know. But surely it could not be a "discretionary function" for Sultan to funnel money to terrorists when the sole purpose of bringing the overseas activities of Saudi charities under government control was to cut off funding to those very terrorists. *See* Bierstein Sultan Aff., Ex. 9, 10, 11; *see also* Affirmation of Andrea Bierstein in Opposition to Motion to Dismiss of Naif bin Abdulaziz al-Saud, Exhibit 4. Sultan, of course, denies that he had any role in overseeing charities or that the purpose of the Supreme Council, which he headed, was to cut off financing to terrorists, but his convenient, after-the-fact denials do not refute the contemporaneous evidence plaintiffs have submitted and do not satisfy Sultan's burden of proof in demonstrating his entitlement to FSIA protection. *See* The Federal Plaintiffs' Memorandum Of Law In Opposition To The Motion To Dismiss Filed By Prince Turki Al-Faisal Bin Abdulaziz Al-Saud, at pp. 4-5.

**B.     Defendants Directed Their Conduct at the United States by Personally Providing Support to al Qaeda**

Sultan and Turki purposefully directed their conduct at the United States when they provided material support to al Qaeda with knowledge that the terrorist program they were supporting was directed at the United States. That Sultan and Turki did not personally hijack the planes does not excuse them from being held accountable in an American court for the role they

9

did play. So long as the defendants' own "intentional, and allegedly tortious, actions were expressly aimed" at the United States, they may be subject to jurisdiction here. *Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *accord Retail Software Services, Inc.*, 854 F.2d 18, 23-24 (2d Cir. 1988); *Time, Inc. v. Simpson*, 2003 WL 23018890, *4-5 (S.D.N.Y. Dec. 22, 2003). Sultan has elsewhere interpreted case law permitting jurisdiction over a "primary participant" who is "personally involved" to require that a defendant play a greater role than the provision of material support alleged here, but he has misread the law. In context, it is clear that defendant must be a "primary participant" or be "personally involved" only in the sense that conduct that is directed at the forum cannot be vicariously attributed to others. *See Retail Software*, 854 F.2d at 23-24; *Time,* 2003 WL 23018890, *4-5. Here, plaintiffs do not seek to impose vicarious liability on Sultan because others directed their conduct at the United States – rather, plaintiffs have demonstrated that Sultan *himself* directed his conduct at the United States when he knowingly provided material support to terrorists whose avowed purpose was to attack the United States. No greater degree of personal involvement is required.[8]

---

[8] *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) is not to the contrary. In *Magnetic Audiotape*, the Second Circuit described the *Calder* case as finding "personal jurisdiction over defendant consistent with due process when defendant is a primary participant in intentional wrongdoing--albeit extraterritorially--expressly directed at forum." 334 F.3d at 208. But it is clear that in *Calder* itself, what the Supreme Court meant by "primary participant" was simply that the individual employees of the corporate defendant had themselves been involved in intentional wrongdoing and plaintiffs were not seeking to impose vicarious liability on innocent or merely negligent employees. 465 U.S. at 788-90. There was no implication in *Calder* -- or in *Magnetic Audiotape* – that jurisdiction would depend in any way on the importance of the role that defendant played. Rather, jurisdiction is based on the defendant's intentional direction of his own conduct at the United States and the effects in the United States that resulted, without reference to whether others involved themselves to an even greater degree.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in plaintiffs' opening memorandum of law, this Court should grant plaintiffs' motion for reconsideration and, upon reconsideration, should deny the motions to dismiss filed by Sultan and Turki.

Dated: New York, NY   Respectfully submitted,
       August 27, 2004

/s/ _____
Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
Ingrid Moll, Esq.
Justin Kaplan, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone: (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone: (212) 401-7600

William N. Riley, Esq.
Amy Ficklin DeBrota, Esq.
Riley Debrota LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone: (317) 848-7939

Harry Huge, Esq.
Harry Huge Law Firm, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Allan Gerson, Esq.
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
Bartimus, Frickleton, Robertson
  & Obetz
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq.
Cordray Law Firm
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

Attorneys for Burnett Plaintiffs