Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Fax: (212) 848-7179

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
                                                    :
In re Terrorist Attacks on September 11, 2001       :     03 MD 1570 (RCC)
                                                    :     ECF Case
                                                    :
———————————————————————x

This document relates to: *Federal Insurance
Company, et al. v. al Qaida, et al.,* 03 CV 6978
(RCC)

## NOTICE OF MOTION OF DEFENDANT
## <u>SAUDI AMERICAN BANK TO DISMISS THE CLAIMS AGAINST IT</u>

**PLEASE TAKE NOTICE,** that upon the accompanying memorandum of law

and all of the prior pleadings and papers in this action, defendant Saudi American Bank, through

undersigned counsel, will move this Court, before the Honorable Richard Conway Casey, at the

United States District Court House for the Southern District of New York, 500 Pearl Street, New

York, NY 10007, for an order:

(1) dismissing the claims asserted against it in the above-captioned action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

(2) for such other and further relief as the Court may deem just and proper.

Dated: New York, NY
        August 27, 2004

SHEARMAN & STERLING LLP

By: _____
        Henry Weisburg (HW 9820)
        Brian H. Polovoy (BP 4723)
        Daniel M. Segal (DS 2106)

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Fax: (212) 848-7179

Attorneys for Defendant Saudi American Bank

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
——————————————————————x
                        :
                        :      03 MD 1570 (RCC)
In re Terrorist Attacks on September 11, 2001    :      ECF Case
                        :
                        :
                        :
——————————————————————x
```

This document relates to: *Federal Insurance
Company, et al. v. Al Qaida, et al.,* 03 CV 6978
(RCC)

## MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK IN SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT

Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT .................................................................................................... 3

I.    PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK DO NOT
      COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8 ............................. 3

II.   PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK MUST BE
      DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY
      BE GRANTED ................................................................................................ 9

      A.    Plaintiffs' Federal Statutory Claims Must Be Dismissed Because  They Are
            Barred By Section 408(b)(1) Of The ATSSSA And, In Any Event, Fail To
            State A Claim ....................................................................................... 9

            1.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank Under The Torture Victim Protection Act (Count 6) ........................ 10

            2.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank Under The Anti-Terrorism Act (Count 10) ....................................... 12

            3.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank Under Civil RICO (Count 8) ............................................................ 14

                  a.    Plaintiffs do not allege the causation required for their RICO
                        claims ........................................................................................... 15

                  b.    Plaintiffs fail to state a claim under 18 U.S.C. § 1962(c) ............. 16

                  c.    Plaintiffs fail to state a claim under 18 U.S.C. § 1962(d) ............. 17

      B.    Plaintiffs' State Law Claims Must Be Dismissed Because  They Fail To State
            A Claim ................................................................................................ 18

            1.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank For Trespass (Count 1) .................................................................... 18

            2.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank For Wrongful Death (Count 2) ......................................................... 19

            3.    Plaintiffs Fail To State A Claim Against Saudi American
                  Bank For Survival Damages (Count 3) ...................................................... 19

i

4.  Plaintiffs Fail To State A Claim Against Saudi American Bank For Assault And Battery (Count 4) ....................................................20

5.  Plaintiffs Fail To State A Claim Against Saudi American Bank For Intentional And/Or Negligent Infliction of Emotional Distress (Count 5)...............................................................20

    a.  Plaintiffs fail to state a claim against Saudi American Bank for intentional infliction of emotional distress..............................20

    b.  Plaintiffs fail to state a claim against Saudi American Bank for negligent infliction of emotional distress.................................21

6.  Plaintiffs Fail To State A Claim Against Saudi American Bank For Conspiracy (Count 7)................................................................22

7.  Plaintiffs Fail To State A Claim Against Saudi American Bank For Aiding And Abetting (Count 9) ....................................................23

8.  Plaintiffs Fail To State A Claim Against Saudi American Bank For Negligence (Count 11)..............................................................24

9.  Plaintiffs Can Not State A Claim Against Saudi American Bank For Punitive Damages (Count 12) Because Punitive Damages Are Not A Cause Of Action .......................................................25

CONCLUSION............................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 CIV. 4978 (LMM), 2002 WL 88226
    (S.D.N.Y. Jan. 23, 2002).........................................................................................24

*Atuahene v. Hartford*, 10 Fed. App. 33, 2001 WL 604902 (2d Cir. May 31, 2001) .......................8

*Baker v. Dorfman*, 239 F.3d 415 (2d Cir. 2000) ........................................................................21

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000), *aff'd*, 35 Fed. App. 1, 2002 WL
    1052012 (D.C. Cir. Mar. 1, 2002)............................................................................12

*Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362 (E.D. La. 1997), *aff'd*, 197 F.3d
    161 (5th Cir. 1999).....................................................................................................11

*Benas v. Baca*, No. CV-00-11507 LGB (SHX), 2001 WL 485168 (C.D. Cal. Apr. 23,
    2001), *aff'd*, 30 Fed. App. 753, 2002 WL 257669 (9th Cir. Feb. 15, 2002). ...................11

*Bender v. New York*, 78 F.3d 787 (2d Cir. 1996).........................................................................20

*Bey v. Welsbach Elec. Corp.*, 38 Fed. App. 690, 2002 WL 1467736 (2d Cir. Jul. 3, 2002),
    *cert. denied*, 538 U.S. 988 (2003) ................................................................................7

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002)...................................................13

*Bonsignore v. N.Y.*, 683 F.2d 635 (2d Cir. 1982) ...................................................................12-13

*Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983).................................8

*Burnett v. Al Baraka*, 274 F. Supp. 2d 86 (D.D.C. 2003).............................................4, 7, 21, 24

*Conley v. Gibson*, 355 U.S. 41 (1957)............................................................................................3

*Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir. 1998) ........................................................................25

*Dineen v. Stramka*, 228 F. Supp. 2d 447 (S.D.N.Y. 2002)..........................................................19

*Doe v. N.Y.*, 588 N.Y.S.2d 698 (Ct. Cl. 1992) ...........................................................................19

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003) .............................24

*Friedman v. Bayer Corp.*, No. 99-CV-3675, 1999 WL 33457825
    (E.D.N.Y. Dec. 15, 1999)...........................................................................................11

*Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001) .................................................................20

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d
    Cir. 2004) ..................................................................................................................22

*Golden First Mortgage Corp. v. Berger*, 251 F. Supp. 2d 1132 (E.D.N.Y. 2003).......................25

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) .......................................17

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)........................................15

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70
    (D.D.C. 2000) ............................................................................................................25

*Kades v. Organic Inc.*, No. 00 Civ. 3671 (LTS)(RLE), 2003 WL 470331
(S.D.N.Y. Feb. 24, 2003) .................................................................... 17-18

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995) ............................................ 12

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918
(1998) ............................................................................................... 23

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229
(2d Cir. 1999) .................................................................................... 15

*Long Island Gynecological Servs., P.C. v. Murphy*, 298 A.D.2d 504, 748 N.Y.S.2d 776
(2nd Dep't 2002) ............................................................................... 18-19

*Manhattan Telecomms. Corp. v. DialAmerica Mktg.*, 156 F. Supp. 2d 376
(S.D.N.Y. 2001) .................................................................................. 3

*Mason v. Am. Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003), *cert. denied*, 124 S. Ct. 2163
(2004) ............................................................................................... 3

*Medina v. Bauer*, No. 02 Cic. 8837 (DC), 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ............... 8

*Melnitzky v. Rose*, 299 F. Supp. 2d 219 (S.D.N.Y. 2004) ................................... 22

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989) .......................................... 17

*Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996) ...................................... 21

*Okusami v. Psychiatric Insitute of Washington, Inc.*, 959 F.2d 1062 (D.C. Cir. 1992) ......... 22-23

*In re Oliver L. North (Gadd Fee Application)*, 12 F.3d 252 (D.C. Cir. 1994) ................... 10-11

*Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 1999 WL 47239 (S.D.N.Y.
Feb. 3, 1999) ..................................................................................... 24

*Renner v. Chase Manhattan Bank, N.A.*, 85 Fed. App. 782, 2004 WL 48867
(2d Cir. Jan. 7, 2004) ........................................................................... 23

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ............................................... 16

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940 (N.Y. 1994) ......... 25

*Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265
(E.D.N.Y. Sept. 20, 2000) ..................................................................... 24

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ................................... 16

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ............................................. 3

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ..................... 11

*Smith v. United States*, 508 U.S. 223 (1993) ................................................ 10

*Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236 (S.D.N.Y. 2003), *aff'd* 80
Fed. App. 722, 2003 WL 22717684 (2d Cir. Nov. 17, 2003) ................................. 23

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ......................................... 7-8

*Tzaras v. Evergreen Intern. Spot Trading, Inc.*, No. 01 Civ. 10726 (LAP),
2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ............................................... 24-25

*USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319 (S.D.N.Y. 2003)..............................16

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432 (S.D.N.Y. 2004)..... 16-17

*Estate of Valmore Lacarno Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250
    (N.D. Ala. 2003) ........................................................................................11

*Villeda Aldana v. Fresh Del Monte Produce, Inc.*, 305 F. Supp. 2d 1285 (S.D. Fla. 2003) .........12

*Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW), 2002 WL 319887
    (S.D.N.Y. Feb. 28, 2002) .....................................................................11, 23

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994) ........................................................3

## FEDERAL STATUTES

18 U.S.C. § 1962(a) ........................................................................................14

18 U.S.C. § 1962(c) .................................................................................... 14-18

18 U.S.C. § 1962(d) ................................................................................ 14, 16-18

18 U.S.C. § 1964(c) ........................................................................................14

The Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq* .................................................. 12-13

18 U.S.C. § 2333(a) ........................................................................................12

Torture Victim Protection Act ("TVPA"), Pub. L. 102-256, 106 Stat. 73
    (reprinted at 28 U.S.C. § 1350 note)................................................................10-12

Air Transportation Safety and System Stabilization Act ("ATSSSA"), Pub. L. No. 107-
    42, 115 Stat. 230-242 (Sept. 22, 2001) (reprinted, as amended, at 49 U.S.C.A. §
    40101 note) ................................................................................... 9-11, 18

## OTHER AUTHORITIES

102 H. Rpt. 367 ............................................................................................11

102 S. Rpt. 249 ............................................................................................11

FED. R. CIV. P. 9(b)................................................................................... 16-17

FED. R. CIV. P. 11 ........................................................................................14

FED. R. CIV. P. 12(b)(6) ...................................................................................1

U.S.D.C., S.D.N.Y., *Individual Practices, Instructions for Filing RICO Statement* at
    http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf................................14

N.Y. E.P.T.L. § 11-3.3(a) ................................................................................19

JPMorgan Chase & Co.'s website, "About Our Business" at
    http://www.jpmorgan.com/cm/cs?pagename=Chase/Href&urlname=jpmorgan/cas
    h/aboutus ...............................................................................................7

v

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x
                                          :
                                          :       03 MD 1570 (RCC)
In re Terrorist Attacks on September 11, 2001   :    ECF Case
                                          :
                                          :
——————————————————————x

This document relates to: *Federal Insurance
Company, et al. v. al Qaida, et al.,* 03 CV 6978
(RCC)

## MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK IN SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT

Defendant Saudi American Bank respectfully submits this memorandum of law in

support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss the claims asserted against it in plaintiffs' First Amended Complaint, dated March 10,

2004 ("Complaint" or "FAC"), for failure to state a claim upon which relief can be granted.

### PRELIMINARY STATEMENT

Saudi American Bank is the second largest bank in Saudi Arabia, with 62

branches and a staff of over 2,200 people.  It is a conventional commercial and investment bank

that was formed and, at all relevant times, managed by Citibank, N.A.  Saudi American Bank has

never been designated by the United States or any other government as a sponsor of terrorism.

Indeed, no one other than plaintiffs' counsel has even suggested that Saudi American Bank

supported, sponsored, aided, funded or had anything to do with terrorism.

Saudi American Bank had nothing whatsoever to do with the September 11, 2001

terrorist attacks on the United States.  The September 11 attacks were tragic and despicable acts.

However, they should not be accepted as a pretext for dispensing with the fundamental precepts

of due process that are embodied in the pleading requirements of the Federal Rules of Civil

Procedure.  The Complaint in this action accuses Saudi American Bank of active complicity in

the murder of more than 3000 people, without a single concrete factual averment suggesting what it actually did to contribute to that awful event. Plaintiffs' RICO Statement applicable to Saudi American Bank is similarly nothing more than conclusory doublespeak. The Complaint ignores the necessity to state a claim and seeks to brand Saudi American Bank as a sponsor of terror solely because it is a large Saudi Arabian bank. That is not a sufficient basis to tar Saudi American Bank as a terrorist financier and to drag its name through the mud.

Saudi American Bank therefore moves to dismiss the claims asserted against it on two grounds: (1) the Complaint fails to meet the pleading standards set forth in Rule 8 and (2) the individual causes of action are each defective as pleaded against Saudi American Bank.

## STATEMENT OF FACTS

The facts hardly need to be recounted: on the morning of September 11, 2001, terrorists hijacked four commercial airplanes. Two of the planes crashed into and caused the collapse of the World Trade Center towers in New York City, one was flown into the Pentagon, and one was crashed into the ground in Western Pennsylvania. Approximately 3000 people were killed during these attacks; many others were injured. (FAC ¶¶ 70-71.)

Osama bin Laden and al Qaida are responsible for the terrorist attacks. (*Id.* ¶ 70.) The Complaint, brought on behalf of insurance companies that insured individual and corporate victims of the attacks, alleges that the attacks were the result of a "larger conspiracy among the defendants, to commit acts of international terrorism. . ." (*Id.* ¶ 72.) Plaintiffs contend that Muslim charities (*id.* ¶¶ 79-252) and members of the Saudi royal family and other wealthy Saudi individuals (*id.* ¶¶ 398–508) aided Osama bin Laden or al Qaida. The Complaint also asserts that certain "financial institutions established by al Qaida and its partner banks within the Islamic banking system operated as fully integrated components of the al Qaida's [sic] financial and logistical infrastructure." (*Id.* ¶ 257.)

2

It is with this background that Saudi American Bank has been named in the Complaint. In essence, plaintiffs' argument seems to be that since al Qaida has a network of organizations and individuals around the world that contribute money to its terrorist cause, Saudi American Bank, as a bank in Saudi Arabia, must somehow, in some way, be responsible for funding terrorism.

As demonstrated below, plaintiffs here have done nothing more than embellish wholly conclusory allegations in the predecessor *Burnett* and *Ashton* complaints. Notably absent, however, is any concrete factual averment that actually states a claim. Under any fair reading of the Complaint, the claims against Saudi American Bank should be dismissed now.

## **ARGUMENT**

### I. **PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK DO NOT COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8**

While any well-pleaded allegation in the Complaint and RICO Statement is, solely for purposes of this motion, accepted as true, "[l]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir. 2003), *cert. denied*, 124 S. Ct. 2163 (2004) (citation omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Manhattan Telecomms. Corp. v. DialAmerica Mktg.*, 156 F. Supp. 2d 376, 379 n.3 (S.D.N.Y. 2001). Similarly, "naked assertions" without supporting facts need not be accepted as true. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). The Second Circuit has made plain that "[l]iberally reading the complaint does not require ignoring specific factual allegations in order to broadly read sweeping equivocal assertions." *Shapiro v. Cantor*, 123 F.3d 717, 721 (2d Cir. 1997).

If there ever was a case in which the plaintiffs should be required to set forth a claim that shows that they are entitled to relief, it is this case. The plaintiffs have accused Saudi

3

American Bank of somehow causing the September 11th attacks and more than 3000 deaths. As

Judge Robertson recognized in *Burnett*:

> [I]t is difficult to imagine uglier or more serious charges than those the plaintiffs
> have leveled at these defendants. . . . [G]iven the extreme nature of the charge of
> terrorism, fairness requires <u>extra-careful scrutiny of plaintiffs' allegations as to
> any particular defendant,</u> to ensure that he – or it – does indeed have fair notice of
> what the plaintiffs' claim is and the grounds upon which it rests. . . .

*Burnett v. Al Baraka,* 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003) (emphasis added). Plaintiffs'

prolix Complaint does not meet that standard.

Instead, the plaintiffs here appear to have done nothing more than taken the

identical conclusory allegations against Saudi American Bank contained in the complaints in

*Burnett v. Al Baraka*, 03 CV 9849 (S.D.N.Y.), and *Ashton v. Al Qaida*, 02 CV 6977 (S.D.N.Y.),

and "spice them up" in an attempt to squeak through the motion to dismiss stage. The *Burnett*

and *Ashton* complaints, for example, allege that Saudi American Bank was the banker for the

Saudi Binladin Group when *that* organization constructed an airport and highway in Sudan. As

Osama bin Ladin was also living in Sudan at the time, those complaints make the leap that Saudi

American Bank had, in some way, assisted him. (*Burnett*, Third Amended Complaint ("Burnett

3AC") dated November 22, 2002, at ¶¶ 145-146; *Ashton*, Consolidated Master Complaint

("Ashton CMC") dated March 6, 2003, at ¶ 525.) Saudi American Bank's motion to dismiss

*Burnett* was filed on September 8, 2003. Plaintiffs here, with the benefit of having seen that

motion, obviously recognized that such attenuated links do not satisfy the Rule 8 pleading

standards. Thus, with a liberal pen, and little regard for the notion of "evidentiary support,"

plaintiffs in this case twisted the inadequate *Burnett* and *Ashton* allegations into this:

> 367.    *Saudi American Bank financed many of the projects undertaken by Osama
> bin Laden and al Qaida in the Sudan during the years that the al Qaida
> leadership structure operated from that country, including the construction of*

4

> *major roads and the Port of Sudan airport.  The Saudi Binladin Group and*
> *Mohamed Binladin Organization provided technical assistance on these projects.*
>
> *368.      Through its participation in the projects undertaken by Osama bin Laden*
> *in Sudan, Saudi American Bank knowingly provided material support and*
> *resources to al Qaida.*

(FAC ¶¶ 367-368; *compare Burnett* 3AC ¶¶ 145-46.)  Although it is fanciful to even hint that *Al*

*Qaida* – as opposed to the Saudi Binladin Group – constructed the airport and highways in

Sudan, these plaintiffs have repackaged the earlier allegations in the hope that this Court will link

Saudi American Bank with Osama bin Ladin.  But making up facts is not enough and is not

proper, especially in a case involving allegations as heinous as this.

Another example of these plaintiffs' attempts to repackage obviously deficient

pleadings is the allegation in *Burnett* and *Ashton* that Saudi American Bank "participated in a

fund-raising campaign" that received donations for specific charities.  (*Burnett* 3AC ¶ 147,

*Ashton* CMC ¶ 526.)  Plaintiffs in this case had the benefit of reviewing Saudi American Bank's

motion in *Burnett*, which explained that the account in question was not only mandated of all

Saudi banks by the Saudi Arabian Monetary Authority, but also related only to Palestinian

issues, and had nothing to do with Al Qaida or the September 11 attacks.  (*See Burnett* D.D.C.

Docket No. 308 at 21.)  No problem for these plaintiffs:  they simply re-wrote the allegations in

*Burnett* and *Ashton* to make it sound like there is more there.  But a close read of these

paragraphs demonstrates that there is still nothing that states a claim against Saudi American

Bank.  The Complaint alleges:

> *370.      In cooperation with the charities operating within al Qaida's*
> *infrastructure, Saudi American Bank advertises the existence and numerical*
> *designation of the accounts it maintains for those charities throughout the Muslim*
> *world, and provides a mechanism to allow al Qaida supporters to deposit funds*
> *directly into those accounts.  Through this mechanism, Saudi American Bank*
> *facilities al Qaida's fundraising efforts.*

> 371.   The accounts maintained by Saudi American Bank on behalf of the charities operating within the al Qaida's infrastructure, and in particular, accounts it maintained for IIRO, WAMY and al Haramain, have been used to transfer funds to Al Qaida cells throughout the World.
>
> 372.   Saudi American Bank has long known that accounts it maintained for many ostensible charities were being used to solicit and transfer funds to terrorist organizations, including al Qaida.  Despite this knowledge, Saudi American Bank has continued to maintain those accounts.  In doing so, Saudi American Bank knowingly provided financial services and other forms of material support to al Qaida.

(FAC ¶¶ 370-72.)  It is not sufficient to take allegations from another complaint and add baseless embellishments to avoid dismissal.  Indeed, the "cut-and-paste" nature of Plaintiffs' Complaint is made clear when they copy allegations about another defendant into the section of the Complaint concerning Saudi American Bank – but forget to even change the names.  For example, in the Saudi American Bank section of the Complaint, plaintiffs allege:

> 374.   As the forgoing demonstrates, _Arab Bank_ has, for a period of many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global jihad.
>
> 375.   The September 11[th] Attack was a direct, intended and foreseeable product of _Arab Bank's_ participation in al Qaida's jihadist campaign.

(FAC ¶¶ 374-75) (emphasis added.)  Plaintiffs simply copied and pasted their allegations concerning Arab Bank PLC into the Saudi American Bank section.  (_Compare_ FAC ¶¶ 363-64 (Arab Bank) to ¶¶ 374-75 (Saudi American Bank); _compare also_ ¶ 362 (Arab Bank) _to_ ¶ 372 (Saudi American Bank) and ¶ 360 (Arab Bank) _to_ ¶ 369 (Saudi American Bank).)  Making up specific facts about a defendant or cutting and pasting allegations against one defendant so that they appear to apply to another defendant do not meet the requirements of Rule 8 or 11.

The question before this Court is whether the "allegations" give Saudi American Bank fair notice of the plaintiffs' claims and the grounds upon which those claims rest, especially given the "extra-careful scrutiny" fairness requires.  They do not.  The allegations are

6

a mixture of conclusions and irrelevance.  Statements that the bank "knowingly provided

material support" or "provided critical financial and logistical support" are nothing more than

conclusions added in an attempt to try to somehow link Saudi American Bank to terrorism.  They

may not be considered on a motion to dismiss.  *Bey v. Welsbach Elec. Corp.*, 38 Fed. App. 690,

693, 2002 WL 1467736, at *2 (2d Cir. Jul. 3, 2002) ("[c]onclusory allegations or legal

conclusions masquerading as factual conclusions . . . will not suffice to prevent a motion to

dismiss") (internal quotations omitted), *cert. denied*, 538 U.S. 988 (2003).

How can these allegations put Saudi American Bank on notice of the grounds on

> Other allegations are simply not actionable.  There is nothing illegal or improper
about a bank having international correspondent bank relationships.[1]  (FAC ¶ 373.)  Likewise, it
is clear that a bank is not liable for the acts of its customers.  *Burnett*, 274 F. Supp. 2d at 109
("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for
injuries done with money that passes through its hands. . . .").  Thus, even if the specific charities
plaintiffs mention do have accounts at Saudi American Bank (FAC ¶¶ 369-72), plaintiffs do not
state a claim against Saudi American Bank.

> How can these allegations put Saudi American Bank on notice of the grounds on
which plaintiffs rest their claims when the allegations involve either common banking
relationships or legal conclusions that unsuccessfully attempt to link Saudi American Bank to
actual terrorists?  A complaint must give fair notice to the defendant of the plaintiffs' claims and
the grounds upon which those claims rest.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512
(2002).  The test is not the length of the allegations, but whether a defendant is on notice such
that it can mount a defense.  Thus, a short statement such as "I was turned down for a job

---

[1]  Indeed, major U.S. financial institutions rely on correspondent banking relationships for international transactions as well.  *See* http://www.jpmorgan.com/cm/cs?pagename=Chase/Href&urlname=jpmorgan/cash/aboutus (From JPMorgan Chase & Co.'s website:  "On any given day, up to $2.3 trillion in U.S. dollar wire transfers pass through our systems on behalf of more than 50,000 clients and a presence in 35 countries and we operate the most extensive correspondent banking network in the industry.").

because of my race" is sufficient because it puts the specific defendant on notice that it was alleged to have engaged in employment discrimination against the plaintiff, to have injured the plaintiff by that discrimination, and to have carried out that discrimination by refusing employment based on race. *Swierkiewicz,* 534 U.S. at 514. In practical terms, the defendant then knows exactly what it has been accused of and how to determine whether it has a defense. Unlike *Swierkiewicz,* where there was only one defendant, a case with hundreds of defendants necessarily requires more specificity to give notice to each defendant.

The Complaint here does not give Saudi American Bank notice of what it is alleged to have done or any grounds upon which claims against Saudi American Bank rest. While *Swierkiewicz* and Rule 8(a) allow for liberal pleading, they do not allow plaintiffs to ignore all facts and simply make the conclusion that hundreds of defendants "conspired to commit acts of international terrorism." (FAC ¶ 624.) If the Court were to so hold, then no person or entity included among "defendants" could ever succeed on a motion to dismiss. It cannot be enough to file a complaint that alleges that a number of defendants committed murder with no facts to back up that statement as against each defendant.

Lumping defendants together without distinguishing the factual allegations against each has *repeatedly* been held not to be sufficient to satisfy Rule 8(a). *Atuahene v. Hartford,* 10 Fed. App. 33, 2001 WL 604902, at *1 (2d Cir. May 31, 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy" the pleading requirement of Rule 8.); *Medina v. Bauer,* 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy . . . Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did

wrong."); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983).

Plaintiffs have charged Saudi American Bank with 3,000 murders. It is not enough to simply recount standard banking operations and embellish conclusory allegations. Sweeping allegations about terrorism and conclusory assertions that all defendants somehow participated in the September 11th attacks are absolutely not a permissible substitute for factual allegations that would state a claim against Saudi American Bank.

## II. PLAINTIFFS' CLAIMS AGAINST SAUDI AMERICAN BANK MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' Complaint purports to allege claims against Saudi American Bank under three federal statutes (the Torture Victim Protection Act, Racketeer Influenced Corrupt Organizations Act ("RICO"), and the Anti-Terrorism Act), eight common law causes of action (trespass, wrongful death, survival, assault and battery, intentional and/or negligent infliction of emotional distress, conspiracy, aiding and abetting, and negligence), and one non-existent cause of action (punitive damages). Each of them fails for multiple reasons.

### A. Plaintiffs' Federal Statutory Claims Must Be Dismissed Because They Are Barred By Section 408(b)(1) Of The ATSSSA And, In Any Event, Fail To State A Claim

Plaintiffs cannot state a claim against Saudi American Bank under the Anti-Terrorism Act, RICO, or the Torture Victim Protection Act because such claims are barred as a matter of law in actions arising out of the "hijacking and subsequent crashes" of the four September 11 flights. In the aftermath of the September 11th attacks, Congress passed the Air Transportation Safety and System Stabilization Act ("ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230-242 (Sept. 22, 2001) (reprinted, as amended, at 49 U.S.C.A. § 40101 note (West Supp. 2003)). Section 408(b) provides:

(b) FEDERAL CAUSE OF ACTION.--

(1) AVAILABILITY OF ACTION.--There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001.  Notwithstanding section 40120(c) of title 49, United States Code [49 U.S.C.A. § 40120 (c)] this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.

(2) SUBSTANTIVE LAW.--The substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law.

Thus, Sections 408(b)(1) and 408(b)(2) of the ATSSSA provide the "exclusive remedy for damages arising out of the hijacking and subsequent crashes" of the September 11 flights and "[t]he substantive law for decision in any such suit" are governed by the law of the *State* in which the crash occurred.  Accordingly, plaintiffs cannot, in these circumstances, assert claims under *Federal* statutes other than Section 408(b)(1) of the ATSSSA, and the federal statutory claims they do assert must be dismissed.

1.  **Plaintiffs Fail To State A Claim Against Saudi American Bank Under The Torture Victim Protection Act (Count 6)**

Even if Section 408(b)(1) of the ATSSSA did not apply, each federal claim must be dismissed as against Saudi American Bank for several independent reasons.  To state a claim under the Torture Victim Protection Act ("TVPA"), Pub. L. 102-256, 106 Stat. 73 (*reprinted at* 28 U.S.C.A. § 1350 note), plaintiffs must allege that an individual acting under actual or apparent authority, or color of law, of any foreign nation subjected an individual to torture or extrajudicial killing.  28 U.S.C. § 1350 note § 2(a).

This cause of action must be dismissed as against Saudi American Bank because the TVPA applies only to individuals, and Saudi American Bank is a corporation.  28 U.S.C. § 1350 note § 2(a)(1).  Since the word "individual" is not explicitly defined in the statute, it is

10

given its ordinary and natural meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993). The common usage of "individual" is to describe a natural person. *In re Oliver L. North (Gadd Fee Application)*, 12 F.3d 252, 254 (D.C. Cir. 1994). If a statute uses the word "individual," application of that statute to corporations would "deprive words used by Congress of all content." *Id*. at 255. Thus, the TVPA can only be used to bring suits against individuals, not corporations. *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 381-82 (E.D. La. 1997), *aff'd*, 197 F.3d 161 (5th Cir. 1999); *Friedman v. Bayer Corp.*, No. 99-CV-3675, 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999); *but see Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358-59 (S.D. Fla. 2003); *Estate of Valmore Lacarno Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1266-67 (N.D. Ala. 2003).

Further, the TVPA is not applicable to the September 11th terrorist attacks because it only applies to torts committed against United States citizens who, "while in a foreign country, are victims of torture or 'extra-judicial killing.'" *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW), 2002 WL 319887, at *3 (S.D.N.Y. Feb. 28, 2002); *Benas v. Baca*, No. CV-00-11507 LGB (SHX), 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001) (explaining that Congress chose to limit a remedy under the TVPA to foreign, rather than domestic, torture), *aff'd*, 30 Fed. App. 753, 2002 WL 257669 (9th Cir. Feb. 15, 2002). The legislative history confirms that the TVPA was to apply only to incidents abroad. 102 H. Rpt. 367, at *4 ("the TVPA would extend a civil remedy also to U.S. citizens who may have been tortured abroad"); 102 S. Rpt. 249, at *5 (the TVPA is designed to provide "a civil cause of action in U.S. courts for torture committed abroad"). All of the injuries and deaths that form the basis for this lawsuit occurred within the United States. As such, plaintiffs' claims against Saudi American Bank under the TVPA must be dismissed.

11

Finally, even if the TVPA did apply to corporations – *and* the injuries had not occurred in the United States – Saudi American Bank is not alleged to have acted under the authority or color of law of any foreign nation, as required by the TVPA.[2] *Kadic v. Karadzic*, 70 F.3d 232, 243-44 (2d Cir. 1995); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 19-20 (D.D.C. 2000), *aff'd*, 35 Fed. App. 1, 2002 WL 1052012 (D.C. Cir. Mar. 1, 2002).

## 2. Plaintiffs Fail To State A Claim Against Saudi American Bank Under The Anti-Terrorism Act (Count 10)

The Anti-Terrorism Act, 18 U.S.C. Section 2331 *et seq.* ("ATA"), provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court. . . ." 18 U.S.C. § 2333(a). Even assuming, *arguendo*, that the terrorist acts of September 11th are international, rather than domestic, terrorism, this cause of action must be dismissed as against Saudi American Bank because there are no allegations in the Complaint contending that Saudi American Bank was the proximate cause of or aided and abetted that terrorism. "International terrorism" is defined as activities that "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State. . . ." 18 U.S.C. § 2331(1)(A). There are no non-conclusory allegations that link Saudi American Bank to any violent acts or that assert that Saudi American Bank was an integral part in any such activities or the proximate cause of the plaintiffs' injuries. In order to show proximate cause, plaintiffs must show that the injury was foreseeable. *Bonsignore v. N.Y.*, 683

---

[2] Plaintiffs allege that Saudi American Bank "operates as an agency and instrumentality of the Kingdom of Saudi Arabia" (FAC ¶ 365), but do not allege that any of Saudi American Bank's actions were under the authority or color of law of Saudi Arabia. The conclusory assertion that Saudi American Bank is an agency and instrumentality of Saudi Arabia is nonsense. If there were such a connection, Saudi American Bank would have an immunity defense under the Foreign Sovereign Immunities Act. In any event, conclusory allegations such as this are not sufficient to satisfy the plaintiffs' burden of showing state action. *Villeda Aldana v. Fresh Del Monte Produce, Inc.*, 305 F. Supp. 2d 1285, 1301 (S.D. Fla. 2003).

F.2d 635, 637 (2d Cir. 1982) ("Proximate cause . . . limits a defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing."). Plaintiffs do not allege that Saudi American Bank's conduct was the proximate cause of the terrorist attacks or that by its conduct (which itself is not alleged), Saudi American Bank should have been able to foresee the attacks. The well-pleaded allegations against Saudi American Bank merely recount normal banking transactions – none of which is alleged to be dangerous, violent or unlawful.

It is settled law that neither the allegation of an act of financing the terrorist organization nor an act that had the end result of facilitating terrorism is sufficient to withstand a motion to dismiss. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011 (7th Cir. 2002) ("To say that funding *simpliciter* constitutes an act of terrorism is to give the statute an almost unlimited reach."). To avoid dismissal, the plaintiffs must allege facts establishing a "knowledge of and intent to further" the terrorist acts. *Id.* In order for a defendant to be liable for aiding and abetting terrorism under the ATA, the plaintiffs must "prove that the defendants knew of [the alleged terrorists'] illegal activities, that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities." *Id.* at 1023.

Plaintiffs' sparse allegations against Saudi American Bank simply do not state facts that, if proved, would establish that Saudi American Bank had "knowledge of and intent to further" the terrorist actions that caused plaintiffs' losses or that Saudi American Bank "engaged in some act of helping the illegal activities." *Id.* Simply stating their conclusion that Saudi American Bank "knowingly provided financial services . . . to al Qaida" is not sufficient. (FAC ¶ 372.) The complaint must show that the plaintiffs are entitled to relief and must put the defendants on notice. Here, even absent the "extra-careful scrutiny" required given the "extreme

nature" of the charge, it cannot fairly be said that the Complaint includes any allegation of a causal link between Saudi American Bank and the September 11th attacks.

### 3.   Plaintiffs Fail To State A Claim Against Saudi American Bank Under Civil RICO (Count 8)[3]

Plaintiffs' RICO Statement makes plain that the allegations against Saudi American Bank are wholly conclusory and fail to state a claim. Under this Court's Individual Practices, a RICO Statement "*shall* include the facts the party is relying upon to assert the RICO claim as a result of the 'reasonable inquiry' required by Rule 11, Fed.R.Civ.P." (*See* http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf) (emphasis added). Far short of any reasonable inquiry, it appears that plaintiffs have made no inquiry at all in connection with the allegations against Saudi American Bank in their Complaint or RICO Statement: Plaintiffs simply repeat their conclusory allegations about activities in the Sudan (*see supra* at 4-5). (*RICO Statement Applicable to Saudi American Bank* ("RICO St."), 03 MD 1570 Docket # 393, at Exhibit A.) The only "new" allegation against Saudi American Bank is plaintiffs' statement that "from 1996 through 2001, the Saudi American Bank funneled money to and/or from the Spanish al Qaida cell." *Id.* Once again, it appears that the plaintiffs cut and pasted from their allegations against Arab Bank so that they appear to relate to Saudi American Bank. It is Arab Bank, not Saudi American Bank, that is alleged in the Complaint to have transferred money to the Spanish al Qaida cell. (FAC ¶ 359.) Plaintiffs are required to make a reasonable inquiry of Saudi American Bank's supposed misconduct. Cutting, pasting, and concocting do not meet that test.

---

[3] Plaintiffs appear to have abandoned the Section 1962(a) cause of action specified in the Complaint. *See RICO Statement Applicable to Saudi American Bank*, MDL Docket # 393, at ¶ 1 ("The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and/or (d)."). This is not surprising, as the plaintiffs have not alleged that Saudi American Bank (1) received income derived, directly or indirectly, from a pattern of racketeering activity; (2) used or invested that income, either directly or indirectly, in the acquisition of any interest in, or the establishment or operation of, an enterprise; or (3) that the enterprise affects interstate or foreign commerce. 18 U.S.C. § 1962(a).

a.   **Plaintiffs do not allege the causation required for their RICO claims**

A person who suffers damage to his business or property only has standing to bring a RICO claim if the damage is "by reason of" a violation of RICO. 18 U.S.C. § 1964(c). A plaintiff must show that the "defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). This requires a showing that the ultimate injury was foreseeable, that the defendant's actions were a substantial cause of the ultimate injury, and that the injury was a direct result of the defendant's actions. *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235-36 (2d Cir. 1999).

The misconduct plaintiffs attribute to Saudi American Bank consists of the supposed financing of projects in the Sudan in the mid-1990's and the funneling of money to the Spanish al Qaida cell. (RICO St. at Exhibit A.) Even if these allegations were true and not simply a re-write of other inadequate allegations, they do not meet the RICO standing requirements. *First*, plaintiffs do not allege that by this supposed misconduct, it was foreseeable that al Qaida would commit the September 11 attacks. *Second*, among the 200+ defendants, it would be laughable if plaintiffs even attempted to argue that Saudi American Bank's purported misconduct was a *substantial* cause of the attacks. *Third*, Saudi American Bank's supposed actions concerned and affected third parties. It was then those third parties who, in turn, harmed the plaintiffs. This is the very definition of an indirect injury, the type not recoverable through RICO. *Laborers Local 17 Health and Benefit Fund*, 191 F.3d at 236-37. Plaintiffs have fallen far short of meeting RICO's causation requirement. As such, they have no standing to bring this cause of action and it must be dismissed. Even if plaintiffs did have standing, as detailed below, they fail to allege a violation of the relevant sections.

15

b.      **Plaintiffs fail to state a claim under 18 U.S.C. § 1962(c)**

Section 1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In order to state a claim based on a violation of Section 1962(c), a plaintiff must thus allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (internal quotations omitted); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985).

The Supreme Court has found that the words "conduct" and "participate" in Section 1962(c) require an active role in fashioning the direction of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Plaintiffs have not alleged that Saudi American Bank participated in the operation or management of any enterprise. *Id.* at 183.

Plaintiffs have also failed to allege that Saudi American Bank engaged in a pattern of racketeering behavior. *U.S. Fire Ins. Co.*, 303 F. Supp. 2d at 451 (quoting *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).")). Plaintiffs are required to plead with particularity all predicate acts that sound in fraud. *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003) ("It is well settled that when a RICO plaintiff alleges that one of the predicate acts is fraud, the predicate acts must be pled with particularity."); FED. R. CIV. P. 9(b). Here, two of the predicate acts alleged against Saudi American Bank ("defrauding the US Government" and "filing false or materially false tax returns") are based in fraud. (RICO St. at 2.) As such, plaintiffs must (1) show how the

16

government was defrauded, including where and when the fraud occurred, and (2) specify which tax returns were fraudulent and why they were fraudulent. *See U.S. Fire Ins. Co.*, 303 F. Supp. 2d at 443. With no details whatsoever, the plaintiffs have not met the Rule 9(b) requirements.

As to the other predicate acts, the RICO Statement refers to "racketeering activities conducted by Saudi American Bank" and states that "the racketeering activity conducted by Saudi American Bank funds [terrorism]." (RICO St. at 4.) But simply repeating over and over that Saudi American Bank engaged in racketeering activity does not make it so. If ever there were a case in which the court "should strive to flush out frivolous RICO allegations at an early stage of the litigation," it is this case with these allegations. *U.S. Fire Ins. Co.* 303 F. Supp. 2d at 443. There are no allegations showing a pattern of racketeering activity by Saudi American Bank. As such, plaintiffs' Section 1962(c) cause of action must be dismissed.

### c. Plaintiffs fail to state a claim under 18 U.S.C. § 1962(d)

To state a cause of action under Section 1962(d), plaintiffs must allege that Saudi American Bank "manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise." *Kades v. Organic Inc.*, No. 00 Civ. 3671 (LTS) (RLE), 2003 WL 470331, at *13 (S.D.N.Y. Feb. 24, 2003). Plaintiffs must also show "some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990); *Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989) ("[B]are allegations of conspiracy . . . are insufficient to support a civil RICO claim. . . . [A] plaintiff must show that the defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses.") (internal quotations omitted).

This claim fails for numerous reasons. First, there is no well-pleaded allegation that Saudi American Bank manifested any agreement, let alone one to commit two separate

17

predicate acts in furtherance of al Qaida's goals.  The RICO Statement is nothing more than a

hodgepodge of wholly conclusory statements and falls far short of establishing a factual basis for

a conscious agreement entered into by Saudi American Bank.  Second, there can be no RICO

conspiracy (and thus no claim under Section 1962(d)) without a substantive RICO violation.

*Kades*, 2003 WL 470331, at *14.  Since plaintiffs have not adequately pled their cause of action

under Section 1962(c), the Section 1962(d) cause of action must be dismissed.

**B.      Plaintiffs' State Law Claims Must Be Dismissed Because
          They Fail To State A Claim**

As noted above, Section 408(b)(2) of the ATSSSA provides that the "substantive

law for decision in any such suit shall be derived from the law, including choice of law

principles, of the State in which the crash occurred unless such law is inconsistent with or

preempted by Federal Law."  ATSSSA § 408(b)(2).  This section creates a federal remedy for

state law.  Given that plaintiffs are victims of airplane crashes in New York, Virginia, and

Pennsylvania, proper analysis of the state law claims that plaintiffs assert requires analysis under

the laws of each of these jurisdictions.  At this stage, because there is no apparent difference in

the outcome given the paucity of allegations against Saudi American Bank, we do not analyze

each claim under the laws of each jurisdiction (with or without regard to their choice of law

principles).  Instead, we analyze them under New York law.  Should the Court wish, we will set

forth the analysis under all possible scenarios.

**1.      Plaintiffs Fail To State A Claim Against Saudi American Bank For
          Trespass (Count 1)**

Plaintiffs fail to state a claim against Saudi American Bank for trespass because

they do not allege that Saudi American Bank "without justification or permission, either

intentionally entered upon another's property, or, if entry was permitted . . . refused to leave after

permission to remain ha[d] been withdrawn."  *Long Island Gynecological Servs., P.C. v.*

*Murphy*, 298 A.D.2d 504, 504, 748 N.Y.S.2d 776, 777 (2nd Dep't 2002) (internal quotations omitted). The well-pleaded allegations against Saudi American Bank simply provide its corporate background and cursory detail concerning its banking relationships. Absent factual allegations establishing the elements of this tort, plaintiffs' claim against Saudi American Bank should be dismissed.

### 2. Plaintiffs Fail To State A Claim Against Saudi American Bank For Wrongful Death (Count 2)

Plaintiffs fail to state a claim against Saudi American Bank for wrongful death because there are no factual allegations that would establish that Saudi American Bank caused the deaths of plaintiffs' insureds' decedent employees. Under New York law, the tort of wrongful death is governed by Section 5-4.1(1) of the New York Estates, Powers and Trusts Law. A wrongful death action requires a showing that the defendant caused the deaths and that the killings were wrongful. *Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) ("one of the elements of a wrongful death action is the showing of a 'wrongful act, neglect, or default of the defendant by which the decedent's death was caused'") (quoting *Chong v. N.Y.C. Transit Auth.*, 83 A.D.2d 546, 547, 441 N.Y.S.2d 24, 25 (2d Dep't 1981)). Here, plaintiffs have not alleged facts that suggest in any way that Saudi American Bank committed a wrongful act, neglect or default which caused any deaths, much less the deaths of the plaintiffs' decedents.

### 3. Plaintiffs Fail To State A Claim Against Saudi American Bank For Survival Damages (Count 3)

A survival action is one that could have been brought by the decedent but for the decedent's death. It includes damages for an injury that took place prior to the death and caused the death. N.Y. E.P.T.L. § 11-3.3(a); *Doe v. N.Y.*, 588 N.Y.S.2d 698, 709 (Ct. Cl. 1992) ("[A] cause of action on behalf of a decedent may be maintained for the decedent's conscious pain and suffering, medical expenses, and loss of wages prior to death, but the common law does not

allow a person to recover for death itself."). The Complaint does not allege any injury caused by Saudi American Bank. The Complaint contains no factual allegations that would establish that Saudi American Bank caused or contributed to the death of the victims.

### 4. Plaintiffs Fail To State A Claim Against Saudi American Bank For Assault And Battery (Count 4)

Under New York law, an assault "is an intentional placing of another person in fear of imminent harmful or offensive contact. A battery is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (internal quotations omitted).

There is no allegation in the Complaint that Saudi American Bank assaulted or battered the employees of the plaintiffs' insureds. The Complaint states that the employees of the plaintiffs' insureds were "placed in apprehension of harmful and/or offensive bodily contact to which they did not consent." (FAC ¶ 611.) This apprehension and contact, however, are not alleged to have been perpetrated by Saudi American Bank or as a result of any conduct by Saudi American Bank.

### 5. Plaintiffs Fail To State A Claim Against Saudi American Bank For Intentional And/Or Negligent Infliction of Emotional Distress (Count 5)

#### a. Plaintiffs fail to state a claim against Saudi American Bank for intentional infliction of emotional distress

To state a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant took part in (1) extreme and outrageous conduct (2) with intent to cause severe emotional distress, and must show (3) a causal connection between the conduct and the injury and (4) severe emotional distress. *Bender v. New York*, 78 F.3d 787, 790 (2d Cir. 1996). Plaintiffs may not rely on their conclusory statements that "all defendants" engaged in such

behavior without giving any details whatsoever and without specifically alleging any extreme or outrageous behavior on the part of Saudi American Bank.

Even if *banking* activities could ever be extreme and outrageous, there is no allegation that Saudi American Bank intended to cause any harm, let alone severe emotional distress. The Complaint states that "defendants knew or should have known that their actions [would leave] the victims and their family members with severe and permanent physical, psychological and emotional injuries." (FAC ¶ 615.) Yet this conclusory statement and others like it are not shown to relate to Saudi American Bank. There are no allegations concerning Saudi American Bank's institutional knowledge regarding the individuals or corporations with which it dealt and there are no allegations that it was unlawful, improper, or reckless for Saudi American Bank to have entered into transactions with these individuals and corporations.

**b.      Plaintiffs fail to state a claim against Saudi American Bank for negligent infliction of emotional distress**

New York law is clear that Saudi American Bank owed no duty to the plaintiffs. *See* discussion below at Section II.B.8. In comparable circumstances, Judge Robertson has already held that no duty was owed to the plaintiffs by defendant Al-Haramain Islamic Foundation ("AHIF"). *Burnett*, 274 F. Supp. 2d at 108-09. Absent a duty, plaintiffs cannot assert a claim for negligent infliction of emotional distress against Saudi American Bank. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).

Even if there were a duty owed, there are no well-pleaded allegations that state a claim for negligent infliction of emotional distress. Under New York law, plaintiffs must allege either that the distress was a result of the observation of injury or death caused by the defendant (the bystander theory) or that the defendant's breach of duty directly endangered the plaintiffs' physical safety (the direct duty theory). *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000).

21

The sparse allegations against Saudi American Bank are not adequate under either theory.

### 6.   Plaintiffs Fail To State A Claim Against Saudi American Bank For Conspiracy (Count 7)

A cause of action for civil conspiracy is based on the link between separate defendants to an underlying tort. Without well-pleaded allegations concerning an underlying tort, there may be no cause of action for conspiracy. *Melnitzky v. Rose*, 299 F. Supp. 2d 219, 227 (S.D.N.Y. 2004). As detailed in the sections concerning each tort, plaintiffs have not met their burden of stating a claim against Saudi American Bank. Accordingly, plaintiffs may not simply muddy the waters and allege enough disjointed facts to have Saudi American Bank lumped into the pot of "conspiracy."

Plaintiffs have also failed to allege the elements of conspiracy: (1) a corrupt agreement; (2) an overt act in furtherance of that agreement; (3) the parties' intentional participation in the furtherance of the plan; and (4) resulting damage or injury. *Id.* Nowhere do plaintiffs allege that Saudi American Bank made any agreement to perpetrate the September 11 attacks (or any other terrorist acts). The well-pleaded allegations against Saudi American Bank detail history and banking relationships. The remaining allegations, all conclusory, are insufficient to state a conspiracy cause of action. *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 630-31 (S.D.N.Y. 2003) (allegation that defendants had prior relationships held insufficient to state a conspiracy claim: "While the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements.") (internal quotations omitted), *aff'd*, 355 F.3d 206 (2d Cir. 2004). Without an allegation that Saudi American Bank entered into an agreement to participate in an unlawful act, the conspiracy claims must be dismissed. *Okusami v. Psychiatric Insitute of Washington, Inc.*, 959 F.2d 1062, 1064-65 (D.C. Cir. 1992) ("[b]y attributing form and intention

to the indistinct figures discernible through the fog that is the complaint, one with a particularly

vivid imagination might think he sees there portrayed a conspiracy among the defendants").

**7.   Plaintiffs Fail To State A Claim Against Saudi American Bank For Aiding And Abetting (Count 9)**

While similar to conspiracy, aiding and abetting is distinguishable in that in order

to make out a claim, the plaintiffs must show that the defendant knowingly and substantially

assisted in causing the tortious act. *Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236,

250 (S.D.N.Y. 2003), *aff'd* 80 Fed. App. 722, 2003 WL 22717684 (2d Cir. Nov. 17, 2003).  The

elements that the plaintiffs must allege to withstand a motion to dismiss a claim of aiding and

abetting are (1) the existence of a violation by the primary wrongdoer; (2) knowledge of this

violation by the aider and abettor; and (3) substantial assistance by the aider and abettor in the

principal violation.  *Id.*

Plaintiffs have not alleged that Saudi American Bank had knowledge of the

attacks or substantially assisted in the commission of the attacks.  New York law uses the "actual

knowledge" standard for aiding and abetting liability.  *Renner v. Chase Manhattan Bank, N.A.*,

85 Fed. App. 782, 784 2004 WL 48867, at *1 (2d Cir. Jan. 7, 2004) ("As to the knowledge

requirement, New York courts require that the alleged abettor have *actual* knowledge of the

primary wrong.") (emphasis in original);  *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246

(S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (1998).  In other words, plaintiffs must include non-

conclusory allegations that Saudi American Bank had actual knowledge of the attacks.  *Williams

v. Bank Leumi Trust Co. of New York*, No. 96 Civ. 6695 (LMM), 1997 WL 289865, at *5

(S.D.N.Y. May 30, 1997) ("conclusory allegations that [the bank] was aware of the scheme . . .

faile[ed] to satisfy plaintiff's burden to plead actual knowledge").  They have failed to do so.

There are likewise no allegations that Saudi American Bank substantially assisted

al Qaida in perpetrating the attacks.  Courts routinely reject plaintiffs' attempts to impose aiding and abetting liability on banks by claiming that the bank substantially assisted with the commission of a tort.  *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003) ("The mere fact that participants in a . . . scheme use accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance.") (internal quotations omitted); *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("The affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance.").  Without a non-conclusory allegation that Saudi American Bank was the proximate cause of the September 11 attacks, plaintiffs have not stated a claim for aiding and abetting. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 CIV. 4978 (LMM), 2002 WL 88226, at *12 (S.D.N.Y. Jan. 23, 2002).  The Complaint makes no such allegation.  Especially given the "extra-careful scrutiny" required, there can be no suggestion that plaintiffs state a claim for aiding and abetting as against Saudi American Bank.

### 8.     Plaintiffs Fail To State A Claim Against Saudi American Bank For Negligence (Count 11)

In *Burnett*, Judge Robertson dismissed the plaintiffs' negligence (and negligent infliction of emotional distress) causes of action against defendant AHIF on the ground that plaintiffs did not allege or identify any duty owed by AHIF.  *Burnett*, 274 F. Supp. 2d at 108-09. The Complaint in this case exhibits the same deficiency as to Saudi American Bank:  no facts are alleged that would give rise to a duty to plaintiffs on the part of Saudi American Bank.  A bank owes no general duty of care to non-customers.  *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) ("it is well settled that a bank owes no such duty to a non-customer third-party"); *Tzaras v. Evergreen Intern. Spot Trading, Inc.*, No.

01 Civ. 10726 (LAP), 2003 WL 470611, at *5-6  (S.D.N.Y. Feb. 25, 2003).  Thus, the

negligence claim against Saudi American Bank must be dismissed.[4]

> **9.     Plaintiffs Can Not State A Claim Against Saudi American Bank For Punitive Damages (Count 12) Because Punitive Damages Are Not A Cause Of Action**

Punitive damages are not a cause of action, but rather are a type of relief.

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 945-46 (N.Y. 1994);

*Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74

(D.D.C. 2000) (dismissing plaintiff's punitive damages "claim" because "punitive damages is a

remedy and not a freestanding cause of action"); *Golden First Mortgage Corp. v. Berger*,

251 F. Supp. 2d 1132, 1141 (E.D.N.Y. 2003).  Accordingly, plaintiffs' claim for punitive

damages should be dismissed as to Saudi American Bank.

## CONCLUSION

Plaintiffs' claims against Saudi American Bank should be dismissed.

Dated:   New York, NY
         August 27, 2004

Respectfully submitted,

SHEARMAN & STERLING LLP

By: _____
       Henry Weisburg (HW 9820)
       Brian H. Polovoy (BP 4723)
       Daniel M. Segal (DS 2106)
     599 Lexington Avenue
     New York, NY 10022-6069
     Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

---

[4]  The FAC also fails to allege other elements of negligence:  (1) defendant must breach the duty it owes; and (2) the plaintiff must have suffered damage as a result of the breach.  *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).

## CERTIFICATE OF SERVICE

I, Daniel M. Segal, one of the attorneys for defendant Saudi American Bank,

hereby certify that on August 27, 2004, I caused a true and correct copy of the foregoing Notice

of Motion of Defendant Saudi American Bank To Dismiss The Claims Against It and the

Memorandum of Law Of Defendant Saudi American Bank In Support Of Its Motion To Dismiss

The Claims Against It to be served by the Court's Electronic Case Filing System.

Dated: New York, NY
      August 27, 2004

 

Daniel M. Segal, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000