**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In Re TERRORIST ATTACKS on | ) | 03 MDL 1570 (RCC) |
| SEPTEMBER 11, 2001 | ) | ECF Case |
|  | ) |  |

*This document relates to:*
    *Federal Ins. Co. v. Al Qaida*, 03 CV 6978 (RCC)
    *Kathleen Ashton v. Al Qaeda Islamic Army*, 02 CV 6977 (RCC)

**CONSOLIDATED MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS OF DEFENDANTS**
**SNCB CORPORATE FINANCE LTD. AND SNCB SECURITIES LTD.**

Dated:  August 30, 2004
       Washington, D.C.

Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
Ugo Colella (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendants*
*SNCB Corporate Finance Ltd. and*
*SNCB Securities Ltd.*

# Table of Contents

Argument ...................................................................................................................................1

I.   As a Dissolved Corporation, SNCB Corporate Cannot be Sued Under Controlling English Law ...................................................................................................2

II.  The Court Lacks Personal Jurisdiction Over the SNCB English Companies .............3

   A.   SNCB Corporate was Dissolved, and SNCB Securities was Not Doing Business, at the Time Suit was Commenced Against Them ...........................3

   B.   Alternatively, Plaintiffs' Empty Allegations Preclude the Exercise of Personal Jurisdiction over the SNCB English Companies ................................4

      1.   Nationwide Service of Process Theory and New York Law ...............5

      2.   Minimum Contacts ..................................................................................8

      3.   NCB's Alleged (But Non-Existent) Jurisdictional Contacts Cannot be Imputed to the SNCB English Companies ...........................................9

         a.   Mere Department .......................................................................10

         b.   Agency ........................................................................................12

      4.   If NCB's Alleged Jurisdictional Contacts Were Imputed to the SNCB English Companies, Then Those Companies Would be Immune from Suite Under the Foreign Sovereign Immunities Act ..........................13

III. Plaintiffs Fail to State a Claim Against the SNCB English Companies .....................14

   A.   Common Defenses .............................................................................................15

      1.   NCB's Alleged Acts are Not Imputable to the SNCB English Companies ..............................................................................................15

      2.   Causation ................................................................................................16

      3.   Aiding and Abetting/Conspiracy .........................................................17

      4.   Additional Claim-Specific Grounds ....................................................17

   B.   Defenses Specific to the *Federal Insurance* Plaintiffs ...........................................18

      1.   Standing ..................................................................................................18

2.    RICO ................................................................................................................18

3.    Negligence ........................................................................................................19

Conclusion  ......................................................................................................................19

## Table of Authorities

### Cases

*Andros Compania Maritima S.A. v. Intertanker, Ltd.*,
    714 F. Supp. 669 (S.D.N.Y. 1989) ............................................................4, 6

*Beacon Enters., Inc. v. Menzies*,
    715 F.2d 757 (2d Cir. 1983) .....................................................................8

*Briley v. Blackford*,
    No. 89-8365, 1990 WL 124341 (S.D.N.Y. Aug. 21, 1990) .......................13

*Burnett v. Al Baraka*,
    292 F. Supp. 2d 9 (D.D.C. 2003) .............................................................9

*Calder v. Jones*,
    465 U.S. 783 (1984) ................................................................................9

*Complaint of Kreta Shipping, S.A.*,
    No. 96-1137, 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998) .......................13

*Darby v. Compagnie Nationale Air France*,
    735 F. Supp. 555 (S.D.N.Y. 1990) ...........................................................3

*Domino Media, Inc. v. Kranis*,
    9 F. Supp. 2d 374 (S.D.N.Y. 1998),
    *aff'd*, 173 F.3d 843 (2d Cir. 1999) (unpublished) ..................................2

*Dorfman v. Marriott Int'l Hotels, Inc.*,
    No. 99-10496, 2002 U.S. Dist. LEXIS (S.D.N.Y. Jan. 3, 2002) ...............11

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) .........................................................11

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir.),
    *cert. denied*, 513 U.S. 1079 (1995) .......................................................19

*Grove Valve & Regulator Co. v. Iranian Oil Servs., Ltd.*,
    87 F.R.D. 93 (S.D.N.Y. 1980) .................................................................13

*Guidi v. Inter-Continental Hotels Corp.*,
    No. 95-9006, 2003 WL 1907901 (S.D.N.Y. Apr. 16, 2003) .......................3

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ..............................................................................8, 9

*Holland v. Fahnestock & Co., Inc.,*
    No. 01-2462, 2003 WL 21697880 (S.D.N.Y. July 21, 2003) ................................12

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000,*
    No. 01-MDL-1428, 2003 WL 22909153 (S.D.N.Y. Dec. 9, 2003) ..............................4

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000,*
    230 F. Supp. 2d 403 (S.D.N.Y. 2002)................................................... 10, 12

*In re Vebeliunas,*
    332 F.3d 85 (2d Cir. 2003) .........................................................15

*International Customs Assocs., Inc. v. Ford Motor Co.,*
    893 F. Supp. 1251 (S.D.N.Y. 1995),
    *aff'd,* 201 F.3d 431 (2d Cir. 1999) (unpublished),
    *cert. denied,* 530 U.S. 1264 (2000) ................................................13

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) .................................................................8

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,*
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ...............................6, 10, 12, 13

*Jazini v. Nissan Motor Co.,*
    148 F.3d 181 (2d Cir. 1998) ......................................................7, 10

*Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd.,*
    956 F. Supp. 1131 (S.D.N.Y. 1997) ...............................................8

*Kalb v. Voorhis & Co. v. Am. Fin. Corp.,*
    8 F.3d 130 (2d Cir. 1993) ........................................................15

*Karabu Corp. v. Gitner,*
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..............................................8

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,*
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ............................................9, 10

*LNC Investments, Inc. v. The Republic of Nicaragua,*
    115 F. Supp. 2d 358 (S.D.N.Y.),
    *aff'd,* 228 F.3d 423 (2d Cir. 2000) ............................................14

*Mantello v. Hall,*
    947 F. Supp. 92 (S.D.N.Y. 1996) ...............................................8

*Meteoro Amusement Corp. v. Six Flags, Inc.,*
    267 F. Supp. 2d 263 (N.D.N.Y. 2003) .........................................7

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir.),
   *cert. denied*, 519 U.S. 1006 (1996) ......................................................................8

*Morse Typewriter Co. v. Samanda Office Com. Ltd.*,
   629 F. Supp. 1150 (S.D.N.Y. 1986) ................................................................ 11, 12

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*,
   170 F.R.D. 361 (S.D.N.Y. 1997) ........................................................................2

*Philip Morris Inc. v. Otamedia*,
   No. 02-7575, 2004 WL 1348987 (S.D.N.Y. June 15, 2004) ......................................12

*Reers v. Deutsche Bahn AG*,
   320 F. Supp. 2d 140 (S.D.N.Y. 2004) ................................................................14

*Saraceno v. S.C. Johnson & Son, Inc.*,
   83 F.R.D. 65 (S.D.N.Y. 1979) ..........................................................................11

*Sargent v. Budget Rent-A-Car Corp.*,
   No. 94-9215, 1996 WL 413725 (S.D.N.Y. July 24, 1996) .......................................13

*Schenker v. Assicurazioni Generali S.P.A. Consolid.*,
   No. 98-9186, 2002 WL 1560788 (S.D.N.Y. July 15, 2002) ......................................11

*Vendetti v. Fiat Auto S.p.A.*,
   802 F. Supp. 886 (W.D.N.Y. 1992) ...................................................................12

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) ...........................................................................10

*Whitaker v. American Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001) .............................................................................3

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000)
   *cert. denied*, 532 U.S. 941 (2001) .....................................................................6

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*,
   No. 03-7778, 2004 WL 1328215 (S.D.N.Y. June 15, 2004).....................................17

**Federal Statutes**

18 U.S.C.

      § 1962(a), (c) & (d) ...................................................................................14

      § 2331 ...........................................................................................................5

      § 2333 .........................................................................................................14

28 U.S.C. § 1350 .........................................................................................................14

**Federal Rules of Civil Procedure**

Rule 4(k) .......................................................................................................................4

Rule 12(b)(6) ..............................................................................................................17

Rule 17(b) .....................................................................................................................2

Rule 44.1 .......................................................................................................................3

**State Statutes**

N.Y. CPLR

      § 301 .............................................................................................................5

      § 302 .............................................................................................................5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In Re TERRORIST ATTACKS on | )    03 MDL 1570 (RCC) |
| SEPTEMBER 11, 2001 | )    ECF Case |

) 

*This document relates to:*
    *Federal Ins. Co. v. Al Qaida*, 03 CV 6978 (RCC)
    *Kathleen Ashton v. Al Qaeda Islamic Army*, 02 CV 6977 (RCC)

### CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS SNCB CORPORATE FINANCE LTD. AND SNCB SECURITIES LTD.

SNCB Corporate Finance Ltd. ("SNCB Corporate") and SNCB Securities Ltd. ("SNCB Securities") are English companies[1] that the *Ashton* and *Federal Insurance* plaintiffs have sued for no apparent reason, other than that they were affiliated with defendant The National Commercial Bank ("NCB"). Neither set of Plaintiffs alleges a single fact suggesting that the SNCB English companies committed any wrongful act, or that they had any contact with the United States. In any event, Plaintiffs could not establish jurisdiction over, or state legally sufficient claims against, the SNCB English companies because:

- SNCB Corporate was dissolved more than two years before Plaintiffs filed these lawsuits, and almost one year before the September 11th attacks.

- Before its dissolution, SNCB Corporate simply administered and collected loans that previously had been made by the closed London branch of NCB.

- SNCB Securities ceased doing all business in February 2003.

- Before then, SNCB Securities' only business was to provide a British Virgin Islands affiliate of NCB with investment advisory services relating to certain mutual funds distributed in the Kingdom of Saudi Arabia.

---

[1]    SNCB Corporate and SNCB Securities are collectively referred to herein as the "SNCB English companies."

These indisputable facts require dismissal of the claims against the SNCB English companies.  First, under controlling English law, dissolved corporations like SNCB Corporate cannot be sued, and any proceedings or judgments against it are null and invalid.  Second, the Court lacks personal jurisdiction over the SNCB English companies.  Loan administration in England, and investment advice in the British Virgin Islands, cannot conceivably provide a basis for asserting U.S. jurisdiction over the SNCB English companies.  Third, because Plaintiffs do not allege any facts suggesting any wrongdoing by the SNCB English companies, Plaintiffs fail to state any cognizable claim under which these entities can be liable for the September 11th attacks.

## I.      As a Dissolved Corporation, SNCB Corporate Cannot be Sued Under Controlling English Law.

"The capacity of a corporation to sue or be sued shall be determined by the law under which it is organized."  FED. R. CIV. P. 17(b); *accord Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 170 F.R.D. 361, 372 (S.D.N.Y. 1997); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 380-81 & n.35 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 843 (2d Cir. 1999) (unpublished).  SNCB Corporate was established in England in November 1992, and was incorporated and headquartered there.  *See* Affidavit of Mitchell R. Berger ("Berger Aff."), Exh. 1, Declaration of Jorge Juco ("Juco Decl. (Corporate)"), ¶ 3.  English law therefore determines whether SNCB Corporate can be sued in these consolidated actions.  As a matter of English law, it cannot be sued.

SNCB Corporate was dissolved in November 2000.  Juco Decl. (Corporate), ¶ 3 & exh. A.  Under English law:

> [o]nce a company is dissolved, it ceases to exist as a legal entity.  As a result, it can no longer be sued . . . .  Any proceedings brought against a dissolved corporation are null and any judgment obtained against a dissolved company is invalid.

Berger Aff., Exh. 3, Declaration of Michael John Brindle Q.C. ("Brindle Decl."), ¶¶ 46, 52.6 (footnotes and citations omitted).[2]  Plaintiffs do not allege, nor can they, that they have obtained an order of an English court voiding the dissolution of SNCB Corporate, without which English law bars these lawsuits.  *See Id.*, ¶¶ 48-51.[3]  Therefore, Plaintiffs' claims against SNCB Corporate must be dismissed.

## II.     The Court Lacks Personal Jurisdiction Over the SNCB English Companies.

Neither the *Ashton* nor the *Federal Insurance* plaintiffs meet their burden of alleging a *prima facie* case of personal jurisdiction over either SNCB Corporate or SNCB Securities.  *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  Plaintiffs' personal jurisdiction theory suffers from a fatal timing defect, and in any event lacks any factual support.

### A.     SNCB Corporate was Dissolved, and SNCB Securities was Not Doing Business, at the Time Suit was Commenced Against Them.

Personal jurisdiction is determined as of the date on which Plaintiffs filed their complaints against the SNCB English companies.  *See Darby v. Compagnie Nationale Air France*, 735 F. Supp. 555, 560 (S.D.N.Y. 1990).  The *Ashton* plaintiffs named the SNCB English companies as defendants on

---

[2]      Rule 44.1 of the Federal Rules of Civil Procedure provides:  "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice."  Courts have found persuasive affidavits on foreign law that (1) contain a "point-by-point survey" of the relevant precedents, and (2) attach copies of those precedents as exhibits to the affidavits.  *See, e.g., Guidi v. Inter-Continental Hotels Corp.*, No. 95-9006, 2003 WL 1907901, at *16 (S.D.N.Y. Apr. 16, 2003).  The Brindle Declaration exhaustively reviews English law applicable to this motion and attaches as exhibits copies of the relevant English precedent.  Brindle Decl., ¶¶ 8-14, 17-51 & exhs. 1-28.  Mr. Brindle has been practicing law in England for approximately thirty years and has substantial expertise in England's company and commercial law.  *Id.*, ¶ 1 & exh. 1.

[3]      Even if Plaintiffs were to petition an English court and satisfy the rigorous criteria for voiding SNCB Corporate's dissolution, *see* Brindle Decl., ¶¶ 48-50, SNCB Corporate would not be restored to its pre-dissolution status.  To the contrary, under English law, "an order of the court declaring the dissolution void does not render valid proceedings taken against the company after its dissolution and before the date of the order [as here].  Rather, it simply allows fresh proceedings to be brought" and "will not upset any previous distributions made by the liquidator."  *Id.*, ¶¶ 48, 51.  As a result, "[t]he resurrected company . . . may not have sufficient (or any) assets to satisfy any judgment obtained after the resurrection of the company."  *Id.*, ¶ 51.

March 6, 2003 (*Ashton* Dkt. #11), and the *Federal Insurance* plaintiffs did so on September 10, 2003 (*Fed. Ins.* Dkt. #104).  The indisputable facts confirm that, as of those dates, SNCB Corporate did not exist as a corporate entity (*see supra* at 2-3), and SNCB Securities already had ceased doing all business.  *See* Berger Aff., Exh. 2, Declaration of Jorge Juco ("Juco Decl. (Securities)"), ¶ 3 (SNCB Securities ceased doing business in February 2003).  Personal jurisdiction over a company ceases to exist when either the company itself, or its relationship with the forum, has terminated by the time suit is commenced.  *See Andros Compania Maritima S.A. v. Intertanker, Ltd.*, 714 F. Supp. 669, 675 (S.D.N.Y. 1989) (no personal jurisdiction over company that ceased doing business in the jurisdictional forum prior to plaintiff's filing suit).

**B.    Alternatively, Plaintiffs' Empty Allegations Preclude the Exercise of Personal Jurisdiction over the SNCB English Companies.**

Even if SNCB Corporate could be resurrected from the corporate graveyard and SNCB Securities could be pressed back into business, Plaintiffs still would fail to make a *prima facie* case of personal jurisdiction against those companies.  Plaintiffs must rely on one of two theories to establish the required *prima facie* case of personal jurisdiction:  either a nationwide contacts theory pursuant to a federal statute that provides for nationwide service of process; or a New York law theory of either a "general" or "specific" (long-arm) jurisdiction.  *See* FED. R. CIV. P. 4(k).[4]

The sum of Plaintiffs' allegations against the SNCB English companies is as follows:

---

[4]     Because Plaintiffs' complaints were filed in this Court, New York's law of personal jurisdiction applies.  *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, No. 01-MDL-1428, 2003 WL 22909153, at *2 (S.D.N.Y. Dec. 9, 2003) (in a MDL proceeding, the court applies the law of the state where the action was originally filed in determining whether a defendant is subject to jurisdiction under the state's long-arm statute).

(1)     The SNCB English companies purportedly are "wholly-owned subsidiaries" of NCB
        through which NCB allegedly "operates an international banking enterprise." *Ashton*
        4AC, ¶ 563.[5]

(2)     In an undifferentiated way, along with more than 200 other defendants, the SNCB
        English companies purportedly "aided and abetted, conspired with, and provided
        material support and resources to, defendant al Qaida and/or affiliated FTOs,
        associations, organizations or persons, as described herein." *Fed. Ins.* 1AC, ¶ 66.[6]

(3)     The SNCB English companies allegedly played some unspecified role in a so-called
        "Radical Muslim Terrorism" enterprise.   *Fed. Ins.*, RICO Statement, ¶ Exh. A
        (attached to Berger Aff., Exh. 4).

There are no allegations in either the *Ashton* or *Federal Insurance* complaints suggesting that the SNCB

English companies committed any wrongful acts in the United States (or in any other country) or

that these entities otherwise had any contact with the United States.  Plaintiffs' allegations thus fall

far short of establishing personal jurisdiction over the SNCB English companies.

### 1.     Nationwide Service of Process Theory and New York Law

The *Ashton* and *Federal Insurance* plaintiffs assert claims under the Anti-Terrorism Act

("ATA"), 18 U.S.C. § 2331, and the *Federal Insurance* plaintiffs alone assert a RICO claim.  *Ashton*

4AC, Count IV; *Fed. Ins.* 1AC, Count VIII (RICO), Count X (ATA).  Both the ATA and RICO

provide for nationwide service of process.  Plaintiffs, however, fail to state claims under either

statute.  *See* Part III, *infra*.  Accordingly, Plaintiffs' only possible basis for asserting personal

jurisdiction over the SNCB English companies is New York law.  *See* N.Y. C.P.L.R. §§ 301, 302.

---

[5]      "4AC" means the Fourth Am. Consolidated Master Compl., which the *Ashton* plaintiffs
sought permission to file on March 10, 2004.  The 4AC consolidated and incorporates *York* (03-
5493), which has been voluntarily dismissed.  *See* Not. of Voluntary Dismissal (Mar. 16, 2004).
Otherwise, the allegations in the 4AC are identical to the *Ashton* plaintiffs' Third Am. Master
Consolidated Compl.

[6]      "1AC" refers to the *Federal Insurance* plaintiffs' First Amended Complaint, filed March 10,
2004.

But New York law does not assist Plaintiffs either, whether they assert a theory of general or specific jurisdiction.

General jurisdiction exists only where the defendant is "doing business" in New York such that the defendant's contacts with the forum are "continuous, permanent, and substantial." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000), *cert. denied*, 532 U.S. 941 (2001); *see Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (the "doing business" standard is "stringent").  The "doing business" test is applied as of the time that the suit is commenced.  *Andros Compania Maritima S.A.*, 714 F. Supp. at 675.

Even if the Court indulged the counter-factual notion that the SNCB English companies were doing business as of March 2003 and September 2003, Plaintiffs have not alleged—and there is no basis to allege—that the SNCB English companies ever were "doing business" in New York that is "continuous, permanent, and substantial."  Indeed, even when the SNCB English companies were operational, they had no contacts with New York.  Specifically:

- Before its dissolution in November 2000, SNCB Corporate had its principal place of business in London, and its only business was to administer and collect outstanding loans issued by NCB's London branch after that branch closed.  Juco Decl. (Corporate), ¶ 3.

- Before ceasing to do business in February 2003, SNCB Securities managed its business from its headquarters in London, England.  Juco Decl. (Securities), ¶ 4. SNCB's principal business was to provide investment advisory services to certain mutual funds distributed in the Kingdom of Saudi Arabia, under contract with another affiliate of NCB incorporated under the laws of, and doing business in, the British Virgin Islands.  *Id.*

- SNCB Securities does not currently have a branch office, subsidiary, or agency in the United States.  Juco Decl. (Securities), ¶ 5.  SNCB owned 100% of SNCB Securities

Inc. (Delaware), but the Delaware company was dissolved in February 2001.  *Id.* & exh. A.[7]

- SNCB Securities did not and does not transact or solicit business in the United States either on its own behalf or on behalf of NCB, and did not and does not advertise or market its services in the United States.  Juco Decl. (Securities), ¶ 6.

- SNCB Securities has never been registered or licensed to do business in the United States, and has never been registered with any agency of the U.S. government.  Juco Decl. (Securities), ¶ 7.

- SNCB Securities did not and does not have a general agent for service of legal process in the United States.  Juco Decl. (Securities), ¶ 8.

- SNCB Securities did not and does not:  own or maintain a website; own or lease real property in the United States; raise capital in the United States; sell its shares within the United States; offer its shares for sale to any U.S. citizen; maintain correspondent, settlement, or clearing accounts in the United States; or, issue letters of credit or guarantees to U.S.-based companies or companies that transact business in the United States.  Juco Decl. (Securities), ¶¶ 9-13.

Plaintiffs' theory of specific jurisdiction also fails.  A court may exercise specific (or long-arm) jurisdiction only when (1) the cause of action "arises out of" or has a "substantial relationship" to the defendant's contacts with New York and (2) the defendant commits one of the predicate

---

[7]       The *Ashton* plaintiffs allege that SNCB Securities has an office in New York City (4AC, ¶ 563), but that allegation is not supported by the facts.  SNCB Securities Inc. ("SNCB Delaware")— whose shares were owned by SNCB Securities (London)—maintained an office in New York City. But SNCB Delaware was dissolved in February 2001, and its New York City office was closed at approximately the same time.  *See* Juco Decl. (Securities), ¶ 5 & exh. A; Berger Aff., Exh. 5, Supplemental Declaration of Jorge Juco, ¶¶ 2-4 & exh. A; *see also* Mem. of Law in Support of Mot. to Dismiss of Defendant The National Commercial Bank, MDL Dkt. #46 ("*Ashton* Op. Mem."), Berger Aff., Exh. 5 (Juco Decl.), ¶ 5 & exh. A; Reply Mem. of The National Commercial Bank in Support of its Mot. to Dismiss, MDL Dkt. #170 ("*Ashton* Reply Mem."), Berger Aff., Exh. 8, ¶¶ 2-4 & exh. A.  Even if SNCB Delaware still existed, moreover, the presence of a subsidiary or branch office in the forum is insufficient, without more, to confer personal jurisdiction over the foreign corporate parent.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *Meteoro Amusement Corp. v. Six Flags, Inc.*, 267 F. Supp. 2d 263, 269-70 (N.D.N.Y. 2003).

jurisdictional acts in New York.[8]   It is fanciful to suggest that the SNCB English companies are in
any way connected to the September 11th attacks, when Plaintiffs' complaints provide <u>no facts</u> from
which to infer that these entities engaged in <u>any</u> conduct—much less the September 11th terrorist
attacks—in the United States.

### 2.       Minimum Contacts

In any event, the SNCB English companies do not have the constitutionally required
minimum contacts with the United States.  The Due Process Clause limits the power of courts to
assert personal jurisdiction over non-resident defendants like the SNCB English companies.  The
constitutionally-based "minimum contacts" requirement thus ensures that "maintenance of the suit
does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v.
Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

There are two approaches—general jurisdiction and specific jurisdiction—to assessing
whether a defendant has minimum contacts with the forum.  "[A] court's general jurisdiction . . . is
based on the defendant's general business contacts with the forum state and permits a court to
exercise its power in a case where the subject matter of the suit is unrelated to those contacts."
*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.), *cert. denied*, 519 U.S. 1006
(1996).  "Because general jurisdiction is not related to the events giving rise to the suit, courts
impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the
defendant's 'continuous and systematic general business contacts.'"  *Id.* (quoting *Helicopteros
Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  On the other hand, "[s]pecific

---

[8]       *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983); *Karabu Corp. v. Gitner*, 16 F.
Supp. 2d 319, 322 (S.D.N.Y. 1998) (absent general jurisdiction, a court may exercise specific
jurisdiction where the plaintiff's claim relates directly to the defendant's New York contacts);
*Mantello v. Hall*, 947 F. Supp. 92, 100 (S.D.N.Y. 1996) (requiring that the connection between the
jurisdictional contact and the claim to be "direct"); *Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd.*, 956 F.
Supp. 1131, 1134 (S.D.N.Y. 1997) (requiring a "substantial nexus").

jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'"  *Id.* at 567-68 (quoting *Helicopteros*, 466 U.S. at 414-16 & nn.8-9).

Plaintiffs cannot succeed under either approach.  The SNCB English companies do not now have, nor have they ever had, "continuous and systematic business contacts" with the United States.  *See supra* at 6-7.  Equally, the SNCB English companies' lack of contact with the United States necessarily precludes a specific-jurisdiction effort to show that Plaintiffs' claims arise from some connection between the SNCB English companies and this country.  *Id.*  Thus, *Calder v. Jones*, 465 U.S. 783, 789 (1984), provides no basis for specific jurisdiction here because Plaintiffs do not allege that SNCB English companies engaged in any conduct that purportedly was "purposefully directed" or "expressly aimed" at the United States.  *See Burnett v. Al Baraka*, 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003) (rejecting *Calder*-based theory of personal jurisdiction against HRH Prince Sultan).[9]

### 3.     NCB's Alleged (But Non-Existent) Jurisdictional Contacts Cannot be Imputed to the SNCB English companies

Plaintiffs cannot bootstrap an alternative basis for jurisdiction over the SNCB English companies by imputing to those NCB-affiliates the alleged contacts that NCB itself has with the United States.  As separately shown,[10] NCB is not subject to personal jurisdiction in the United

---

[9]     Nor can Plaintiffs establish personal jurisdiction based upon a conspiracy theory.  To establish jurisdiction under this theory, Plaintiffs must demonstrate that:  1) the out-of-state co-conspirator had an awareness of the effects of the activity in the forum; (2) the in-state co-conspirator's activity was for the benefit of the out-of-state conspirators; and (3) the in-state co-conspirators acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 602 (S.D.N.Y. 1998).  Plaintiffs cannot allege any facts that satisfy these required elements.  SNCB Corporate did not even exist as a corporation at the time of the September 11th attacks.  Nor have Plaintiffs alleged that SNCB Securities knew that the September 11th attacks were to occur, or that the hijackers acted "for the benefit of" or "under the control of" SNCB Securities.

[10]     *See Ashton* Op. Mem., at 21-24; *Ashton* Reply Mem., at 6-8; Mem. of Law in Support of Mot. To Dismiss of Defendant The National Commercial Bank, filed Aug. 30, 2004, at 12-13 ("*Fed. Ins.* Op. Mem.").

States.  Thus, it would be futile to impute NCB's jurisdictionally-insufficient contacts to the SNCB English companies.  In any event, NCB's alleged jurisdictional contacts cannot be imputed to the NCB-affilated SNCB English companies unless the Plaintiffs could demonstrate that the English companies are or were "mere departments" or "agents" of NCB.  *See Laborers Local 17*, 26 F. Supp. 2d at 604-05 (related corporations are presumed to be separate entities for jurisdictional purposes unless the parent entity treats the subsidiary as its "mere department" or an "agency" relationship exists).  The indisputable facts refute any such conclusion.  Even if the facts were otherwise, Plaintiffs then would face a separate problem—the SNCB English companies, as mere departments or agencies of NCB, would be protected by NCB's sovereign immunity from suit.

### a.   Mere Department

To satisfy the mere department test, Plaintiffs would have to demonstrate that NCB exercised such "pervasive control" and "domination" over the SNCB English companies so as to disregard the separate corporate existence of NCB and the SNCB English companies. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  In assessing a claim of "mere department" status, courts consider:   (1) common ownership; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the subsidiary's marketing and operational policies. *Beech Aircraft Corp.*, 751 F.2d at 120-22; *accord Jazini*, 148 F.3d at 184-85; *Jacobs*, 160 F. Supp. 2d at 734.  Conclusory allegations, or legal conclusions masquerading as factual allegations, on these issues are insufficient. *Jazini*, 148 F.3d at 185; *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2002).

First, the SNCB English companies cannot be mere departments of NCB because the SNCB English companies were not operational or "doing business" at the jurisdictionally relevant time, *i.e.*, the dates on which Plaintiffs named SNCB Securities and SNCB Corporate as defendants.  *See supra* at 2-4, 6-7.  These indisputable facts alone preclude Plaintiffs' reliance on a "mere department" theory of personal jurisdiction.  *Schenker v. Assicurazioni Generali S.P.A. Consolid.*, No. 98-9186, 2002 WL 1560788, at *4 (S.D.N.Y. July 15, 2002) (explaining that the "only relevant inquiry" for personal jurisdiction purposes was whether the parent company had an "agency" or "mere department" relationship with the subsidiary at the time the complaint was filed).

Second, even when operational, SNCB Securities was not financially dependent on NCB.  In assessing financial dependency, courts consider whether the affiliated companies have disregarded corporate formalities with respect to finances (*i.e.*, whether the company accounts have been intermingled, the parent has paid the subsidiary's expenses, the parent has loaned money to the subsidiary without interest, or the parent has guaranteed a subsidiary's obligations).  *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99-10496, 2002 U.S. Dist. LEXIS, at *26 & n.12 (S.D.N.Y. Jan. 3, 2002); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 53-54 (S.D.N.Y. 1999).  NCB did not and does not: extend credit to SNCB Securities on terms that are not otherwise available on the market, guarantee any of SNCB Securities' obligations, or pay SNCB Securities' insurance costs.  *See* Juco Decl. (Securities), ¶ 14; *see Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65, 69 (S.D.N.Y. 1979) (a subsidiary was not a mere department where parent did not guarantee or collateralize the loans of the subsidiary, guarantee the receivables of the subsidiary, or provide supplies to the subsidiaries at no cost).

Third, when SNCB Securities had employees, they were selected by SNCB Securities' Board of Directors, and their salaries were paid by SNCB Securities, not by NCB.  *See* Juco Decl. (Securities), ¶ 17; *see Morse Typewriter Co. v. Samanda Office Com. Ltd.*, 629 F. Supp. 1150, 1153

(S.D.N.Y. 1986).  Nor did NCB train or otherwise oversee the hiring of any of SNCB Securities' employees.  Juco Decl. (Securities), ¶ 17.

Fourth, SNCB Securities and NCB observed corporate formalities.  *See* Juco Decl. (Securities), ¶¶ 15-16.  NCB and SNCB Securities had separate officers and boards of directors.  *Id.*, ¶ 16; *see Morse Typewriter*, 629 F. Supp. at 1153; *compare Vendetti v. Fiat Auto S.p.A.*, 802 F. Supp. 886, 893 (W.D.N.Y. 1992) (subsidiary not a mere department of the parent corporation even though there were at least nine common officers and directors).  In addition, when SNCB Securities was operational, its transactions did not require NCB's approval, and SNCB Securities maintained its books, records, and accounts separate from those of NCB.  Juco Decl. (Securities), ¶ 15; *see Jacobs*, 160 F. Supp. 2d at 735-36 (maintaining separate books, records, bank accounts and independent day-to-day operations sufficient to establish observance of corporate formalities under mere department test); *In re Ski Train Fire*, 230 F. Supp. at 441 (same).

Fifth, when SNCB Securities was operational, NCB did not control SNCB Securities' operating and marketing policies.  Instead, SNCB Securities always had its own policies and procedures.  Juco Decl. (Securities), ¶ 15; *see Morse Typewriter*, 629 F. Supp. at 1153-54.[11]

### b.    Agency

An agency theory of personal jurisdiction likewise would fail as a matter of law because precedent of this Court confirms that a principal's jurisdictional contacts cannot be imputed to its agent.[12]  In any event, Plaintiffs cannot demonstrate that NCB functioned as the SNCB English

---

[11]    The mere fact that NCB owned all but one of SNCB Securities' outstanding shares (Juco Decl. (Securities), ¶ 2) is insufficient standing alone to satisfy the mere department test.  *See, e.g.*, *Philip Morris Inc. v. Otamedia*, No. 02-7575, 2004 WL 1348987, at *3 (S.D.N.Y. June 15, 2004) (holding that common ownership established, but rejecting mere department status where other factors not met); *Vendetti*, 802 F. Supp. at 893 (same).

[12]    *See Holland v. Fahnestock & Co., Inc.*, No. 01-2462, 2003 WL 21697880, at *4 (S.D.N.Y. July 21, 2003) ("[U]nder New York law, the acts of a principal cannot subject its agent to jurisdiction.");

companies' "agent" for any purpose.  To establish agency, Plaintiffs must show that NCB conducted all of the business that the SNCB English companies would have conducted in the U.S. were the SNCB entities here "on [their] own account."  *See Jacobs*, 160 F. Supp. 2d at 737.  However, NCB did not transact business in the United States on behalf of the SNCB English companies.  *See* Juco Decl. (Securities), ¶ 14.  Moreover, Plaintiffs do not allege that NCB acted within the jurisdictional forum for the benefit, with the knowledge and consent, and under the control of the SNCB English companies.  *Briley v. Blackford*, No. 89-8365, 1990 WL 124341, at *7 (S.D.N.Y. Aug. 21, 1990) ("The key to agency for jurisdiction purposes is that the individuals outside the jurisdiction must have sufficient contact with and control over the agent's acts within the jurisdiction so that the activity within the jurisdiction can fairly be imputed to those outside [the jurisdiction].").

> **4.**     **If NCB's Alleged Jurisdictional Contacts Were Imputed to the SNCB English Companies, Then Those Companies Would be Immune from Suit Under the Foreign Sovereign Immunities Act.**

Plaintiffs would jump from the frying pan to the fire if they somehow succeeded in imputing NCB's alleged jurisdictional contacts to the SNCB English companies.  If seen as part-and-parcel of NCB, then the SNCB English companies would share in NCB's immunity from suit under the Foreign Sovereign Immunities Act ("FSIA").[13]  As another judge of this Court recently held:

---

*Complaint of Kreta Shipping, S.A.*, No. 96-1137, 1998 WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998) ("While the acts of an agent may be attributed to the principal for jurisdictional purposes, the converse is not true; a principal's conduct may not supply the jurisdicitional basis for an agent."); *Sargent v. Budget Rent-A-Car Corp.*, No. 94-9215, 1996 WL 413725, *3 (S.D.N.Y. July 24, 1996) (noting that under New York law, the acts of a principal cannot be imputed to a foreign agent to confer jurisdiction over the agent); *International Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995) (same), *aff'd*, 201 F.3d 431 (2d Cir. 1999) (unpublished), *cert. denied*, 530 U.S. 1264 (2000); *e.g.*, *Grove Valve & Regulator Co. v. Iranian Oil Servs., Ltd.*, 87 F.R.D. 93, 96 (S.D.N.Y. 1980) ("While it is possible to find jurisdiction over a principal based on the acts in New York of its agent . . ., this theory of jurisdiction is completely inapposite here where it is the alleged principal who does business in New York and the agent who does not.").

[13]     NCB has demonstrated that it is entitled to FSIA immunity in these consolidated actions. *See* Mem. of Law in Support of Mot. to Dismiss of Defendant The National Commercial Bank, Oct.

> There is a serious problem with plaintiffs' attempt to premise personal jurisdiction over the German subsidiaries on Deutsche Bahn's contacts with New York. Deutsche Bahn is immune from suit in the United States [under the FSIA]. By alleging that these subsidiaries are mere departments of Deutsche Bahn, plaintiffs are alleging that the subsidiaries are not separate corporate entities at all, but rather alter egos of an immune entity. If, as plaintiffs insist, the subsidiaries' independent corporate form is a mere facade, and Deutsche Bahn exerts pervasive control over them, then the entities must share Deutsche Bahn's immunity.

*Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 151 (S.D.N.Y. 2004); *see also LNC Investments, Inc. v. The Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y.) (government entity loses separate juridical status when it is alter ego or agent of parent government), *aff'd*, 228 F.3d 423 (2d Cir. 2000).

## III.   Plaintiffs Fail to State a Claim Against the SNCB English Companies.

The *Ashton* and *Federal Insurance* plaintiffs assert largely identical causes of action against the SNCB English companies.[14]  However, unlike the *Ashton* plaintiffs, the *Federal Insurance* plaintiffs are not victims of the September 11th attacks, but rather insurance companies seeking reimbursement, on a subrogation theory, for insurance payments they allegedly have made to victims. *See Fed. Ins.* Mem., at 1, 14-16.  However, the unavoidable conclusion is the same for both complaints—neither states any cognizable claims against the SNCB English companies.

---

14, 2003, Dkt. (DC) #359 ("*Burnett* Op. Mem."), at 33-54; Reply Mem. of The National Commercial Bank in Support of its Mot. to Dismiss, MDL Dkt. #45 ("*Burnett* Reply Mem."), at 2-5; *Ashton* Op. Mem., at 2-18; *Ashton* Reply Mem., at 1-4; *Fed. Ins.* Op. Mem., at 2-11.

[14]     They are:  wrongful death based on intentional murder (*Ashton* 4AC, Count One; *Fed. Ins.* 1AC, Count II); survival damages based on intentional murder (*Ashton* 4AC, Count Two; *Fed. Ins.* 1AC, Count III); assault and battery (*Ashton* 4AC, Count Three; *Fed. Ins.* 1AC, Count IV); violation of the ATA, 18 U.S.C. § 2333 (*Ashton* 4AC, Count Four; *Fed. Ins.* 1AC, Count X); violation of the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 (*Ashton* 4AC, Count Five; *Fed. Ins.* 1AC, Count VI); and, punitive damages (*Ashton* 4AC, Count Seven; *Fed. Ins.* 1AC, Count XII).  The *Ashton* plaintiffs separately assert a cause of action for property damage (4AC, Count Seven), and the *Federal Insurance* plaintiffs separately assert causes of action for intentional and/or negligent infliction of emotional distress (1AC, Count V), conspiracy (*id.*, Count VII), civil RICO violations, 18 U.S.C. § 1962(a), (c) & (d) (*id.*, Count VIII; RICO Statement, ¶ 1), aiding and abetting (*id.*, Count IX), and negligence (*id.*, Count XI).  Although the *Ashton* plaintiffs do not assert separate causes of action for aiding and abetting and conspiracy, their claims against the SNCB English companies plainly are premised on these derivative theories of liability.  *See* 4AC, ¶¶ 5, 23.

A.     **Common Defenses**

1.     **NCB's Alleged Acts are Not Imputable to the SNCB English Companies.**

Plaintiffs cannot impute NCB's alleged actions to the SNCB English companies under either a so-called "reverse veil piercing" theory—*i.e.*, that a subsidiary is liable for the parent's alleged misconduct—or an agency theory.   Because the SNCB English companies are incorporated in England (*see supra* at 1, 2), English law determines whether the alleged facts could justify imputation through reverse veil piercing or agency.   *See Kalb v. Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993).

Any theory of "reverse" veil-piercing would be governed by the same requirements that apply to "straight" veil piercing under English law, although reverse veil-piercing is "more difficult" because "a subsidiary is much less likely to have the relevant degree of control over the parent."  *See* Brindle Decl., ¶¶ 41-42.   English law begins with the presumption that parent and subsidiary corporations are separate legal entities for purposes of assessing liability.  *Id.*, ¶¶ 8, 11.   Nevertheless, English courts will disregard corporate separateness and pierce the corporate veil only where a particular statute or contract requires it or where special circumstances indicate the corporate veil is a mere façade concealing the true facts.  *Id.*, ¶¶ 9-14, 16-30 (discussing cases).   However, English courts do not pierce the corporate veil simply because the claim is made that it would be in the interest of justice to do so.  *Id.*, ¶ 30.4.

Plaintiffs cannot meet the veil-piercing requirements of English law.  First, no statute or contract justifies disregarding NCB's separate legal status from that of the SNCB English companies.   Statutory provisions that justify veil-piercing include, *inter alia*, those relating to taxation, competition law, and merger law.   Brindle Decl., ¶ 17.   None of those statutes applies here. Moreover, the relationship between NCB and the SNCB English companies is not a "façade" designed to conceal the "true facts."   Like U.S. law, English law disregards the corporate form when

15

it is used as a "sham," "fraud," or to dece[ive]."  *Id.*, ¶¶ 19, 21, 24, 25, 30.7; *compare In re Vebeliunas*, 332 F.3d 85, 91 (2d Cir. 2003) (interpreting New York law; veil-piercing requires, *inter alia*, corporate form to be used to commit "fraud" or "other wrong").   However, Plaintiffs allege no facts suggesting that the affiliate relationship between NCB and the SNCB English companies was designed to facilitate, or to otherwise disguise, any wrongful conduct.

Nor can Plaintiffs impute NCB's alleged conduct to the SNCB English companies on an agency theory.  Under English law, the "relevant test" is whether NCB was carrying on the SNCB English companies' business as its own and had the authority to bind those entities to contractual obligations.  Brindle Decl., ¶¶ 33, 36.  This test in substance is identical to the U.S.-law based agency theory of personal jurisdiction.  *See supra* at 12-13.  Accordingly, any attempt by Plaintiffs to invoke an agency theory would fail because Plaintiffs do not allege that NCB was conducting the SNCB English companies' business or otherwise acting on behalf of, and with the authority to bind, those entities.

In short, the factual void in Plaintiffs' complaints cannot be filled by seeking to hold the SNCB English companies derivatively liable for the alleged actions of NCB.[15]  And that same factual void confirms that the SNCB English companies do not have even the slightest connection to the September 11th attacks.

### 2.    Causation

Proximate cause is an essential element of all of Plaintiffs' claims, requiring <u>factual</u> allegations sufficient to establish that the SNCB English companies' alleged conduct was a cause-in-fact of the September 11th attacks.  *See Ashton* Op. Mem., at 24-25; *Ashton* Reply Mem., at 8-10; *Fed.*

---

[15]    In any event, Plaintiffs' allegations against NCB fail to state any cognizable claims, so that imputing NCB's alleged actions to the SNCB English companies could not revive Plaintiffs' deficient claims against those entities.  *See Ashton* Op. Mem., at 24-25; *Ashton* Reply Mem., at 8-10; *Fed. Ins.* Op. Mem., at 13-21.

*Ins.* Op. Mem., at 14.  However, Plaintiffs do not allege any <u>facts</u> suggesting that the SNCB English companies engaged in <u>any</u> wrongful conduct.  That leaves only Plaintiffs' conclusory allegations—which lump the SNCB English companies together with <u>all</u> defendants—as a basis for establishing cause-in-fact.  But such allegations are entitled to no deference on a Rule 12(b)(6) motion to dismiss.  *See Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03-7778, 2004 WL 1328215, at *6 (S.D.N.Y. June 15, 2004) ("The Amended Complaint does not include a single factual allegation against [the defendant bank] in support of any of [plaintiff's] claims.  Instead, it lumps the three bank defendants together . . . .  This type of group pleading is inadequate to state a claim against [the defendant bank]."); *Fed. Ins.* Op. Mem., at 14.

### 3.    Aiding and Abetting/Conspiracy

Plaintiffs do not state claims against the SNCB English companies for aiding and abetting and conspiracy because they allege no facts suggesting that those companies:  (1) provided substantial assistance to the September 11th hijackers (or to any other person or entity allegedly involved in the September 11th attacks) or otherwise had <u>actual knowledge</u> of the September 11th attacks, two essential elements of an aiding and abetting claim; or, (2) entered into a corrupt agreement with any person or entity, an essential element of a conspiracy claim.  *See Ashton* Op. Mem., at 24; *Ashton* Reply Mem., at 10; *Fed. Ins.* Op. Mem., at 19-20.

### 4.    Additional Claim-Specific Grounds

<u>ATA and TVPA</u>:  If the Court concluded that the SNCB English companies are alter egos of NCB—and therefore, like NCB itself, a government instrumentality under the FSIA (*see supra* at 13-14)—then Plaintiffs' ATA claim would fail because that statute does not apply to foreign government instrumentalities.  *Fed. Ins.* Op. Mem., at 20.  Regardless, the ATA's act of war exception independently bars Plaintiffs' claim.  *Id.*  If, on the other hand, the Court concluded that

the SNCB English companies are not instrumentalities under the FSIA, then Plaintiffs' TVPA claim would fail because that statute requires state action.  *Id.*

Assault and Battery and Intentional Infliction of Emotional Distress:   Because the SNCB English companies were sued more than one year after the September 11th attacks, *see supra* at 3-4, Plaintiffs' assault and battery claims and the *Federal Insurance* plaintiffs' claim for intentional infliction of emotional distress are barred by New York's one-year statute of limitations.  *Fed. Ins.* Op. Mem., at 20-21.

Punitive Damages:   Plaintiffs' claim for punitive damages is a form of relief, and not a cognizable cause of action.  *Fed. Ins.* Op. Mem., at 20.

**B.      Defenses Specific to the *Federal Insurance* Plaintiffs**

**1.        Standing**

For the reasons stated in NCB's motion to dismiss the *Federal Insurance* complaint, the *Federal Insurance* plaintiffs lack standing as subrogees to assert claims against the SNCB English companies for payments that have not yet been made to their insureds.  *Fed. Ins.* Op. Mem., at 14-16 & nn.19-23.

**2.        RICO**

The *Federal Insurance* Plaintiffs' RICO claims against the SNCB English companies suffer from the same deficiencies that undermine Plaintiffs' identical RICO claims against NCB.  *See Fed. Ins.* Op. Mem., at 16-19.  Insurers who seek reimbursement for payments made to employers whose employees were "injured or killed" in the September 11th attacks do not meet RICO's requirement that only those injured in their "business or property" have standing to bring a RICO claim.  *Id.* at 16.  Equally, the *Federal Insurance* Plaintiffs allege no facts suggesting that the SNCB English companies committed any one of the eight predicate acts specified in plaintiffs' RICO Statement, or that those entities "operated" or "managed" the so-called "Radical Muslim Terrorism" enterprise.

*Id.* at 17-18.  For example, the *Federal Insurance* Plaintiffs in their RICO Statement allege that the SNCB English companies purportedly "participated in the activities outlined above."   RICO Statement, Exh. A.  However, those "activities" refer to <u>NCB's</u> alleged provision of banking services to its customers and <u>NCB's customers'</u> alleged advertising of their claim of accounts with <u>NCB</u>. The *Federal Insurance* Plaintiffs do not allege any facts—because there are none—describing the London-based SNCB English companies' alleged "participat[ion]" in NCB's Saudi-based banking business.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir.) ("Courts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." (internal quotations and citation omitted)), *cert. denied*, 513 U.S. 1079 (1995).

### 3.      Negligence

The *Federal Insurance* Plaintiffs do not allege any facts suggesting that the SNCB English companies owed a duty to plaintiffs or that those entities violated any laws or regulations that could form the basis of a negligence *per se* claim.  *See Fed. Ins.* Op. Mem., at 20.

### Conclusion

For the foregoing reasons, the SNCB English companies' motion to dismiss should be granted, and the claims against them should be dismissed with prejudice.

Dated: August 30, 2004              /s/ Ronald S. Liebman
      Washington, D.C.             Ronald S. Liebman (admitted *pro hac vice*)
                                   Mitchell R. Berger (MB-4112)
                                   Ugo Colella (admitted *pro hac vice*)
                                   PATTON BOGGS LLP
                                   2550 M Street, N.W.
                                   Washington, D.C. 20037
                                   Phone: 202-457-6000
                                   Fax:    202-457-6315

                                   *Attorneys for Defendants*
                                   *SNCB Corporate Finance Ltd. and*
                                   *SNCB Securities Ltd.*