# Exhibit 2

[1977]  774
A.C.

a

[HOUSE OF LORDS]

b
| ALBACRUZ (CARGO OWNERS) | RESPONDENTS |
| AND | |
| ALBAZERO (OWNERS) | APPELLANTS |

THE ALBAZERO

c  1973 Nov. 19, 20, 21, 22, 23, 26;                                  Brandon J.
   1974 Jan. 14

   1975 April 14, 15, 16, 17, 18; May 14          Cairns, Roskill and Ormrod L.JJ.
d
   1976 June 15, 16, 17, 21, 22, 23, 24; July 28    Lord Diplock, Viscount Dilhorne, Lord Simon
                                                    of Glaisdale and Lord Fraser of Tullybelton

e  Shipping - Contracts of carriage - Who may sue - Time charterparty - Bill of lading providing that
     cargo deliverable to order of charterer - Total loss of cargo during voyage - Action for damages
     brought by charterer against shipowner - Title to property and right to possession passing before
     loss - Party entitled to recover substantial damages
   Sale of Goods - C.i.f. - When property passes - Bulk purchase of crude oil shipped f.o.b. and sold
f    c.i.f. to associated company - Bills of lading stating that cargo deliverable to order of seller -
     Endorsed bills of lading dispatched by post to buyer by seller's agent during voyage - Total loss
     of cargo after bills of lading posted and before receipt by buyer - Whether property and right to
     possession of cargo passed to buyers before loss - Intention of parties - Sale of Goods Act 1893
g    (56 & 57 Vict. c. 71), s. 19 (1) (2)
   Ships' Names - Albacruz - Albazero

   By a time charterparty the plaintiffs chartered the Albacruz, owned by the defendants, and shipped on
   board her a cargo of crude oil to be carried from Venezuela to a discharging port subsequently designated
h  as Antwerp. The carriage was covered by a bill of lading issued pursuant to the charterparty naming the
   plaintiffs as consignees, the goods being deliverable to their

© An extract from a JUSTIS database

order. In the course of the voyage the ship and cargo became a total loss. The day before the loss agents for the plaintiffs in Paris indorsed the bill of lading to a Belgian company in Antwerp and posted it to the company who received it the day after the loss. The plaintiffs brought an action against the defendants for damages for breach of the charter. They arrested the Albazero owned by the same shipowners. A preliminary issue was directed to be tried. For the purposes of the issue the loss was to be assumed to be attributable to breaches of the charterparty by the defendants.

Brandon J. held that at the time of the loss the property in the cargo was no longer in the plaintiffs but in the indorsees of the bill of lading. He also held that the measure of damages to which the plaintiffs were entitled was the arrived value of the goods lost, although at the time of the loss they had no longer any property in the goods and suffered no loss themselves by reason of the non-delivery. The Court of Appeal, dismissing the appeal, affirmed his decision.

On appeal by the defendants: -

Held (1) that, in all the circumstances of the case the property in, and the right to the possession of, the cargo had at the time of the loss passed from the plaintiffs to the indorsees of the bill of lading (post, p. 840E-G).

(2) That the rule in Dunlop v. Lambert (1839) 6 Cl. F. 600 that the consignor of goods might recover substantial damages from the carrier if there was privity of contract between them for the carriage of goods, even though the property in the goods might be in the consignee, should not be extended beyond what was justified by the rationale of that case, and since the passing of the Bills of Lading Act 1855 the rationale should no longer apply in cases of carriage of goods by sea where the contract contemplated that the shipowner would also enter into separate bill of lading contracts with whoever might become the owners of the goods and the indorsees of the bills of lading (post, pp. 842B-C, 846 G-H, 847B-F, H - 848A).

Dunlop v. Lambert (1839) 6 Cl. F. 600, H.L.(Sc.) distinguished.

Davis and Jordan v. James (1770) 5 Burr. 2680; Joseph v. Knox (1813) 3 Camp. 320; Hayn, Roman Co. v. Culliford (1879) 4 C.P.D. 182, C.A. and Gardano and Giampieri v. Greek Petroleum George Mamidakis Co. [1962] 1 W.L.R. 40 considered.

Decision of the Court of Appeal, post, p. 803C; [1975] 3 W.L.R. 491; [1975] 3 All E.R. 21 reversed.

The following cases are referred to in their Lordships' opinions in the House of Lords:

Allen v. Coltart Co. (1883) 11 Q.B.D. 782.
Brandt v. Liverpool, Brazil and River Plate Steam Navigation Co. Ltd. [1924] 1 K.B. 575, C.A.
Davis and Jordan v. James (1770) 5 Burr. 2680.
Dunlop v. Lambert (1839) 6 Cl. F. 600, H.L.(Sc.).
Gardano and Giampieri v. Greek Petroleum George Mamidakis Co. [1962] 1 W.L.R. 40; [1961] 3 All E.R. 919.
Hayn, Roman Co. v. Culliford (1879) 4 C.P.D. 182, C.A.
Joseph v. Knox (1813) 3 Camp. 320.
Lickbarrow v. Mason (1794) 5 Term Rep. 683.

© An extract from a JUSTIS database

Case 1:03-md-01570-GBD-SN   Document 415-9   Filed 08/30/04   Page 4 of 4

a   already referred to, should or should be deemed to include the clause paramount. If therefore R.B.P. had asserted a claim under the bill of lading on any wider basis of liability than that contained in the Hague Rules, the defendants would have had, both under clauses 13 and 48 and at common law a claim for indemnity against the plaintiffs as a result of the bill of lading signed by the master at
b   the plaintiffs' behest exposing the defendants to a greater liability than the liability permitted under the time charter. But R.B.P. did not start proceedings or seek to be joined in the present action within the 12 months time limit prescribed by the Hague Rules. It was accepted in argument before us that any claim by R.B.P. under the bill of lading against the defendants was now time barred.

Thus the defendants seek to escape liability for (on the assumptions made) breach of the time
c   charter upon the technical ground that the wrong company in a group of companies has been named as plaintiffs and that it is now too late to join what, on the defendants' case regarding passing of property and the right to possession, would be the right company in the group to join as the proper plaintiffs in an action upon the bill of lading. Since it is common ground that the present claim is brought for the benefit of cargo underwriters who were at risk under the open policy once
d   declaration was made, irrespective of the technical question of title or right to possession as between the different companies in the group, it might be thought harsh that success or failure of the exercise of cargo underwriters' right of subrogation should depend upon such technical considerations. But such defences are able to be advanced because of two fundamental principles of English law long established and now unchallengeable by judicial decision, at least in this court, first, that an
e   underwriter who pays a claim to an assured must exercise his rights of subrogation in the name of his assured, having no greater rights than his assured possessed, and cannot exercise those rights in his own name, and secondly, that each company in a group of companies (a relatively modern concept) is a separate legal entity possessed of separate legal rights and liabilities so that the rights of one company in a group cannot be exercised by another company in that group even though the
f   ultimate benefit of the exercise of those rights would enure beneficially to the same person or corporate body irrespective of the person or body in whom those rights were vested in law. It is perhaps permissible under modern commercial conditions to regret the existence of these principles. But it is impossible to deny, ignore or disobey them.

Faced with this defence, the plaintiffs have had resort to a group of judicial decisions given over the last two centuries, but mainly in the latter part of the 18th century and the first half of the 19th
g   century which they claim then entitled and still entitle a plaintiff who has made an express contract with carriers for the carriage of goods by sea to recover the full value of the cargo lost or damaged in transit even though the property, immediate right to possession and risk in those goods have passed from the plaintiff before the loss or damage took place. It will be necessary to consider some of those cases in detail and to seek to determine what principles can be deduced from them. By far
h   the most important of them is Dunlop v. Lambert (1839) 6 Cl. F. 600; M'L R. 663; a decision of

© An extract from a JUSTIS database