# Exhibit 4

sections 4 to 13;

...

(6)–(13) (*The provisions of this Act which are not reproduced in this title are considered in Vol 11, title Courts and Legal Services.*)

**NOTES**

The words omitted from sub-s (5) are printed in Vol 11, title Courts and Legal Services.

**One month beginning with, etc.** "Month" means calendar month, see the Interpretation Act 1978, s 5, Sch 1, Vol 41, title Statutes. The use of the words "beginning with" makes it clear that in computing this period the day (ie 29 July 1977) on which this Act was passed (ie received the Royal Assent) is included; see *Hare v Gocher* [1962] 2 QB 641, [1962] 2 All ER 763; *Trow v Ind Coope (West Midlands) Ltd* [1967] 2 QB 899 at 909, [1967] 2 All ER 900, CA. The provisions mentioned in sub-s (5) above accordingly came into force on 29 August 1977.

## SCHEDULES

(*The provisions of this Act which are not reproduced in this title are considered in Vol 11, title Courts and Legal Services.*)

# COMPANIES ACT 1985

(1985 c 6)

## ARRANGEMENT OF SECTIONS

### PART I

### FORMATION AND REGISTRATION OF COMPANIES; JURIDICAL STATUS AND MEMBERSHIP

### CHAPTER I

### COMPANY FORMATION

*Memorandum of association*

| Section | | Page |
|---|---|---|
| 1 | Mode of forming incorporated company | 103 |
| 2 | Requirements with respect to memorandum | 105 |
| 3 | Forms of memorandum | 106 |
| 3A | Statement of company's objects: general commercial company | 107 |
| 4 | Resolution to alter objects | 108 |
| 5 | Procedure for objecting to alteration | 108 |
| 6 | Provisions supplementing ss 4, 5 | 109 |

*Articles of association*

| | | |
|---|---|---|
| 7 | Articles prescribing regulations for companies | 111 |
| 8 | Tables A, C, D and E | 111 |
| 8A | Table G | 112 |
| 9 | Alteration of articles by special resolution | 112 |

*Registration and its consequences*

| | | |
|---|---|---|
| 10 | Documents to be sent to registrar | 113 |
| 11 | Minimum authorised capital (public companies) | 114 |
| 12 | Duty of registrar | 115 |
| 13 | Effect of registration | 116 |
| 14 | Effect of memorandum and articles | 117 |
| 15 | Memorandum and articles of company limited by guarantee | 118 |
| 16 | Effect of alteration on company's members | 118 |
| 17 | Conditions in memorandum which could have been in articles | 119 |

18 Amendme
19 Copies of
20 Issued cop

22 Definition
23 Membersh
24 Minimum

25 Name as st
26 Prohibition
27 Alternative
28 Change of
29 Regulation
30 Exemption
31 Provisions
32 Power to r
33 Prohibition
34 Penalty for

A COMP

35 A company
35A Power of di
35B No duty to
36 Company c
36A Execution o
36C Pre-incorpo
37 Bills of exch
38 Execution o
39 Power of co
40 Official seal
41 Authenticati
42 Events affect

RE-REGIS

43 Re-registrati
44 Consideratic
45 Additional r
46 Meaning of '
47 Certificate o
48 Modificatior

49 Re-registrati
50 Certificate of

51 Re-registrati
52 Certificate of

53 Re-registrati
54 Litigated obj
55 Certificate of

**Definitions.** For "company", see s 735(1) post; for "director", see s 741(1) post; for "articles", "memorandum" and "the registrar of companies", see s 744 post.

## 13 Effect of registration

(1) On the registration of a company's memorandum, the registrar of companies shall give a certificate that the company is incorporated and, in the case of a limited company, that it is limited.

(2) The certificate may be signed by the registrar, or authenticated by his official seal.

(3) From the date of incorporation mentioned in the certificate, the subscribers of the memorandum, together with such other persons as may from time to time become members of the company, shall be a body corporate by the name contained in the memorandum.

(4) That body corporate is then capable forthwith of exercising all the functions of an incorporated company, but with such liability on the part of its members to contribute to its assets in the event of its being wound up as is provided by this Act [and the Insolvency Act].

This is subject, in the case of a public company, to section 117 (additional certificate as to amount of allotted share capital).

(5) The persons named in the statement under section 10 as directors, secretary or joint secretaries are, on the company's incorporation, deemed to have been respectively appointed as its first directors, secretary or joint secretaries.

(6) Where the registrar registers an association's memorandum which states that the association is to be a public company, the certificate of incorporation shall contain a statement that the company is a public company.

(7) A certificate of incorporation given in respect of an association is conclusive evidence—

    (a) that the requirements of this Act in respect of registration and of matters precedent and incidental to it have been complied with, and that the association is a company authorised to be registered, and is duly registered, under this Act, and

    (b) if the certificate contains a statement that the company is a public company, that the company is such a company.

**NOTES**

The words in square brackets in sub-s (4) were inserted by the Insolvency Act 1986, s 439(1), Sch 13, Pt I.

**Sub-s (1): Registrar of companies.** As to the exercise of the functions of the registrar of companies, see the note "The registrar" to s 6 ante.

**Certificate.** Notice of the issue of the certificate is published in the Gazette; see s 711(1)(a) post.

**Limited company.** Ie a company limited by guarantee or by shares; see s 1(2) ante.

**Sub-s (2): Official seal.** As to the registrar's official seal, see s 704(4) post.

**Sub-s (3): Subscribers of the memorandum.** As to the subscribers to the memorandum, see ss 1(1), 2(5), (6) ante.

**By the name etc.** As to the company's name, see generally s 25 et seq post.

**Sub-s (4): Wound up.** For the statutory provisions relating to the winding up of companies, see the Insolvency Act 1986, s 73 et seq, Vol 4, title Bankruptcy and Insolvency.

**Sub-s (5): Secretary.** Every company must have a secretary; see s 283(1) post.

**Sub-s (7): Conclusive evidence.** The certificate is conclusive evidence that the company was formed on the day mentioned in the certificate; see *Jubilee Cotton Mills Ltd (Official Receiver and Liquidator) v Lewis* [1924] AC 958, 93 LJ Ch 414.

The objects specified in the memorandum, if otherwise illegal, are not rendered legal by the certificate being given, and where a company has been registered for an illegal object, proceedings may be instituted by the Attorney General to have the registration cancelled; but while the certificate remains unrevoked it is absolutely conclusive, even though the objects of the company are illegal; see *Bowman v Secular Society Ltd* [1917] AC 406, [1916–17] All ER Rep 1, HL.

Case 1:03-md-01570-GBD-SN   Document 415-13   Filed 08/30/04   Page 4 of 9

**Requirements . . . in respect of registration.** See generally s 10 ante and the note "Delivered to the registrar of companies" thereto.

**Registration under earlier legislation.** Nothing in this Act or the Companies Consolidation (Consequential Provisions) Act 1985 (or the Company Securities (Insider Dealing) Act 1985 (repealed and replaced by the Criminal Justice Act 1993, Pt V post) or the Business Names Act 1985, Vol 48, title Trade Marks and Trade Names) affects the registration of any company under the Companies Acts 1948 to 1983 or the continued existence of any company by virtue of such registration; see the Companies Consolidation (Consequential Provisions) Act 1985, s 31(1), (8) post.

**Definitions.** For "public company", see s 1(3) ante and the note "Public company" thereto; for "member", see s 22 post; for "company", see s 735(1) post; for "allotted", see s 738(1) post; for "body corporate", see s 740 post; for "director", see s 741(1) post; for "memorandum", "the registrar" and "the registrar of companies", see s 744 post.

**Insolvency Act.** Ie the Insolvency Act 1986, Vol 4, title Bankruptcy and Insolvency; see s 735A(1) post.

## 14 Effect of memorandum and articles

(1) Subject to the provisions of this Act, the memorandum and articles, when registered, bind the company and its members to the same extent as if they respectively had been signed and sealed by each member, and contained covenants on the part of each member to observe all the provisions of the memorandum and of the articles.

(2) Money payable by a member to the company under the memorandum or articles is a debt due from him to the company, and in England and Wales is of the nature of a specialty debt.

**NOTES**

**General Note.** Though this section does not in terms say that the implied covenants by the members are with the company it seems quite clear that this is so and that the memorandum and articles constitute a contract between the company and its members in respect of their rights as such; see *Hickman v Kent or Romney Marsh Sheep-Breeders' Association* [1915] 1 Ch 881, [1914–15] All ER Rep 900; *Bradford Banking Co Ltd v Briggs & Co Ltd* (1886) 12 App Cas 29, 56 LJ Ch 364; *Imperial Hydropathic Hotel Co, Blackpool v Hampson* (1882) 23 Ch D 1, 49 LT 150, CA; *Stafford Coal and Iron Co Ltd v Brogan (Inspector of Taxes), Stafford Coal and Iron Co Ltd v IRC* [1963] 3 All ER 277, [1963] 1 WLR 905, HL.

The company is not bound to members by provisions not affecting the members as such, such as, eg a provision in the articles that a member shall be employed as a solicitor for the company; see *Eley v Positive Government Security Life Assurance Co* (1876) 1 Ex D 88, 45 LJQB 451. Nor by a provision that a contract, entered into by a member with a trustee for the company, should be adopted by the company; see *Browne v La Trinidad* (1887) 37 Ch D 1, 57 LJ Ch 292. With regard to contracts between the directors as such and the members as such, see *Beattie v Beattie Ltd* [1938] Ch 708, [1938] 3 All ER 214.

Although the articles regulate the rights of members inter se they do not constitute a contract between the members; see *London Sack and Bag Co Ltd v Dixon and Lugton Ltd* [1943] 2 All ER 763, 170 LT 70, CA; cf *Rayfield v Hands* [1960] Ch 1, [1958] 2 All ER 194 (in which the directors were held bound by a provision that they would take at a fair value shares offered to them by members). In case of a breach by a member of the provisions of the articles, it is in general for the company to take proceedings; see *Foss v Harbottle* (1843) 2 Hare 416. If the company refuse to sue and the acts complained of are fraudulent, oppressive or ultra vires, the complaining members may sue in their own names; see *Burland v Earle* [1902] AC 83, 71 LJPC 1.

As between the company and a person who is not a member, the articles do not constitute a contract of which that person can take advantage, as, for example, where they provide that the preliminary expenses of forming the company are to be paid out of the assets of the company (*Melhado v Porto Alegre Rly Co* (1874) LR 9 CP 503, [1874–80] All ER Rep Ext 2005), or that a solicitor is to be the solicitor of the company (*Re Rotherham Alum and Chemical Co* (1883) 25 Ch D 103, 53 LJ Ch 290, CA).

The articles are subordinate to the memorandum and where there is any inconsistency between them the memorandum prevails; see *Ashbury v Watson* (1885) 30 Ch D 376, 54 LJ Ch 985, CA. Any provision in the articles at variance with the provisions of the Act is void, as, eg an article purporting to authorise the company to purchase its own shares; see *Re Liverpool Cotton Association Ltd* (1963) 107 Sol Jo 195. As to the principle of construction applied to articles, see *Holmes v Lord Keyes* [1959] Ch 199 at 209, [1958] 2 All ER 129 at 138, CA per Jenkins LJ.

**Registered.** For the registration of a company's memorandum and articles, see s 10 ante.

**England; Wales.** See the note to s 2 ante.

**[227 Duty to prepare group accounts**

(1) If at the end of a financial year a company is a parent company the directors shall, as well as preparing individual accounts for the year, prepare group accounts.

(2) Group accounts shall be consolidated accounts comprising—

   (a) a consolidated balance sheet dealing with the state of affairs of the parent company and its subsidiary undertakings, and
   (b) a consolidated profit and loss account dealing with the profit or loss of the parent company and its subsidiary undertakings.

(3) The accounts shall give a true and fair view of the state of affairs as at the end of the financial year, and the profit or loss for the financial year, of the undertakings included in the consolidation as a whole, so far as concerns members of the company.

(4) A company's group accounts shall comply with the provisions of Schedule 4A as to the form and content of the consolidated balance sheet and consolidated profit and loss account and additional information to be provided by way of notes to the accounts.

(5) Where compliance with the provisions of that Schedule, and the other provisions of this Act, as to the matters to be included in a company's group accounts or in notes to those accounts, would not be sufficient to give a true and fair view, the necessary additional information shall be given in the accounts or in a note to them.

(6) If in special circumstances compliance with any of those provisions is inconsistent with the requirement to give a true and fair view, the directors shall depart from that provision to the extent necessary to give a true and fair view.

Particulars of any such departure, the reasons for it and its effect shall be given in a note to the accounts.]

**NOTES**

This section was inserted by the Companies Act 1989, s 5(1).
**Sub-s (3): True and fair view.** See the note to s 226 ante.
**Further provisions.** Cf the note to s 226 ante.
**Small and medium-sized companies.** Small and medium-sized companies may prepare modified accounts in accordance with ss 246, 246A, 248, 248A, Schs 8, 8A post.
**Banking and insurance groups.** For special provisions for such groups, see s 255A, Sch 9, Pt II, Sch 9A, Pt II post.
**Unregistered companies; power to modify; company directors disqualification.** See the notes to s 221 ante.
**Application to other bodies.** See the note to s 221 ante.
**Oversea companies.** See the note to s 226 ante.
**Definitions.** For "members", see s 22 ante; for "financial year", see s 223 ante; for "individual accounts", see s 226(1) ante; for "parent company" and "subsidiary undertaking", see s 258, Sch 10A post; for "undertaking", see s 259(1) post; as to "notes to the accounts", see s 261(1) post; as to "balance sheet" and "profit and loss account", see s 261(2) post (and see also as to "profit and loss account", s 262(2) post); for "group", "included in the consolidation" and "true and fair view", see s 262(1) post; for "company", see s 735(1) post; for "director", see s 741(1) post.
**Transitional provisions for Companies Act 1989.** See the Introductory Note to this Part of this Act. Note also the Companies Act 1989 (Commencement No 4 and Transitional and Saving Provisions) Order 1990, SI 1990/355, Sch 2, paras 2, 3 (as amended by SI 1993/3246), which provide as follows:

"*Application of section 245 of the old Part VII*

   2. Section 245 of the old Part VII shall have effect for any financial year of a company other than a relevant financial year as if the references in sub-section (2) thereof to sections 229(5) to (7) and section 230 were references to sections 227, 231 and 232 of the new Part VII and to paragraph 3 of this Schedule. [This paragraph was revoked by the Companies Act 1989 (Commencement No 8 and Transitional and Saving Provisions) Order 1990, SI 1990/2569, art 8(2), save to the extent that the said s 245 as originally enacted is continued in force by art 6 of that Order].

*Insurance groups*

3.—(1) Notwithstanding any provisions of the new Part VII, the directors of the parent company of an insurance group (within the meaning of section 255A(4) thereof) which is required by section 227 thereof to prepare group accounts may prepare those accounts for any financial year commencing before 23rd December 1994 in other than consolidated form, if:

(a) an undertaking within the group is authorised to carry on both long term and general business (those expressions having the meaning ascribed to them by section 1 of the Insurance Companies Act 1982) or the group comprises one or more undertakings authorised to carry on long term business and one or more undertakings authorised to carry on general business; and

(b) that form would have been permitted by section 229(6) of the old Part VII.

(2) Where the parent company of an insurance group takes advantage of sub-paragraph (1), the provisions of the new Part VII shall apply with respect to such alternate-form group accounts (and in particular their content) with any necessary modifications as a consequence of their being other than in consolidated form.

(3) The provisions of this paragraph take effect subject to Part II of this Schedule.".

## [228 Exemption for parent companies included in accounts of larger group

(1) A company is exempt from the requirement to prepare group accounts if it is itself a subsidiary undertaking and its immediate parent undertaking is established under the law of a member State of the European Economic Community, in the following cases—

(a) where the company is a wholly-owned subsidiary of that parent undertaking;

(b) where that parent undertaking holds more than 50 per cent of the shares in the company and notice requesting the preparation of group accounts has not been served on the company by shareholders holding in aggregate—

(i) more than half of the remaining shares in the company, or
(ii) 5 per cent of the total shares in the company.

Such notice must be served not later than six months after the end of the financial year before that to which it relates.

(2) Exemption is conditional upon compliance with all of the following conditions—

(a) that the company is included in consolidated accounts for a larger group drawn up to the same date, or to an earlier date in the same financial year, by a parent undertaking established under the law of a member State of the European Economic Community;

(b) that those accounts are drawn up and audited, and that parent undertaking's annual report is drawn up, according to that law, in accordance with the provisions of the Seventh Directive (83/349/EEC) [(where applicable as modified by the provisions of the Bank Accounts Directive (86/635/EEC) [or the Insurance Accounts Directive (91/674/EEC)])];

(c) that the company discloses in its individual accounts that it is exempt from the obligation to prepare and deliver group accounts;

(d) that the company states in its individual accounts the name of the parent undertaking which draws up the group accounts referred to above and—

(i) if it is incorporated outside Great Britain, the country in which it is incorporated,
(ii) . . ., and
(iii) if it is unincorporated, the address of its principal place of business;

(e) that the company delivers to the registrar, within the period allowed for delivering its individual accounts, copies of those group accounts and of

e court",

, it may
plained

s order

ar ct
tit     r

ehalf of
e court

mpany
urchase
capital

or any
ot then
each of

irtue of
of the
icles as

o alter,
of the
mpany
fau   in
to      1
t fine.

s shall,
etition

in square
l.

ht under
validity
ejudicial
94.
4, [1984]
interest
le power

just and
e London

**Provide for the purchase of the shares.** Whether the price of the shares should be fixed on a pro rata or on a discount basis depends on the facts of the particular case; see *Re Bird Precision Bellows Ltd* above.

**Sub-s (5): Delivered . . . to the registrar.** As to the delivery of documents to the registrar and as to the keeping of company records by the registrar, see ss 706, 707, 707A post, and see also the note "Delivery to the registrar" to s 706 post.

**Fine.** For the mode of prosecution and punishment of offences under sub-s (5) above, see s 730 and Sch 24 post; and as to summary proceedings under this Act, see s 731 post.

**Variation of class rights.** See the note to s 459 ante.

**Definitions.** For "member", see s 22 ante; for "company", see ss 459(3), 460(2) ante; for "officer who is in default", see s 730(5) post; for "articles", "the court", "memorandum", "officer", "the registrar of companies" and "share", see s 744 post.

**Insolvency Act.** Ie the Insolvency Act 1986, Vol 4, title Bankruptcy and Insolvency; see s 735A(1) post.

---

**462–500** ((*Pts XVIII, XIX*) *Ss 462–466, 486, 487 apply to Scotland only; ss 467–485, 488–500 repealed, with savings, by the Insolvency Act 1986, ss 437, 438, Schs 11, 12, Vol 4, title* Bankruptcy and Insolvency.)

## PART XX

## WINDING-UP OF COMPANIES REGISTERED UNDER THIS ACT OR THE FORMER COMPANIES ACTS

**501–650** (*Repealed, with savings, by the Insolvency Act 1986, ss 437, 438, Schs 11, 12, Vol 4, title* Bankruptcy and Insolvency.)

## CHAPTER VI

## MATTERS ARISING SUBSEQUENT TO WINDING UP

### 651 Power of court to declare dissolution of company void

(1) Where a company has been dissolved, the court may . . . , on an application made for the purpose by the liquidator of the company or by any other person appearing to the court to be interested, make an order, on such terms as the court thinks fit, declaring the dissolution to have been void.

(2) Thereupon such proceedings may be taken as might have been taken if the company had not been dissolved.

(3) It is the duty of the person on whose application the order was made, within 7 days after its making (or such further time as the court may allow), to deliver to the registrar of companies for registration an office copy of the order.

If the person fails to do so, he is liable to a fine and, for continued contravention, to a daily default fine.

[(4) Subject to the following provisions, an application under this section may not be made after the end of the period of two years from the date of the dissolution of the company.

(5) An application for the purpose of bringing proceedings against the company—

 (a) for damages in respect of personal injuries (including any sum claimed by virtue of section 1(2)(c) of the Law Reform (Miscellaneous Provisions) Act 1934 (funeral expenses)), or
 (b) for damages under the Fatal Accidents Act 1976 or the Damages (Scotland) Act 1976,

may be made at any time; but no order shall be made on such an application if it appears to the court that the proceedings would fail by virtue of any enactment as to the time within which proceedings must be brought.

(6) Nothing in subsection (5) affects the power of the court on making an order under this section to direct that the period between the dissolution of the company and the making of the order shall not count for the purposes of any such enactment.

(7) In subsection (5)(a) "personal injuries" includes any disease and any impairment of a person's physical or mental condition.]

## NOTES

The words omitted from sub-s (1) were repealed, and sub-ss (4)–(7) were added, by the Companies Act 1989, ss 141(1)–(3), 212, Sch 24, subject to transitional provisions contained in s 141(4), (5) of that Act post.

**Sub-s (1): Where a company has been dissolved.** As respects a charitable company which has been dissolved, see the Charities Act 1993, s 63(3), (5), (6), Vol 6, title Charities.

**Person . . . interested.** The Secretary of State may apply; see *Re Townreach Ltd* [1995] Ch 28, [1994] 3 WLR. Persons having unsatisfied claims against the dissolved company are entitled to apply (*Re Spottiswoode, Dixon and Hunting Ltd* [1912] 1 Ch 410, [1911–13] All ER Rep 526). See also *Re Henderson's Nigel Co Ltd* (1911) 105 LT 370, where an application by the liquidator of a company, who after dissolution had realised assets which might have been bona vacantia, was granted, the Crown (see s 654 post) waiving its claim.

A solicitor whose client is interested but who has not himself a financial or proprietory interest has no status to apply in his own name; see *Re Roehampton Swimming Pool Ltd* [1968] 3 All ER 661, [1968] 1 WLR 1693.

As to whether an applicant is entitled to proceed as "liquidator" or as "person . . . interested" where a company has, prior to his appointment, been struck off the register, see *Re Wood and Martin (Bricklaying Contractors) Ltd* [1971] 1 All ER 732, [1971] 1 WLR 293.

Although the official receiver may have locus standi to make an application as a "person interested", in all but the most exceptional cases the primary responsibility for making the application falls on the petitioner; see *Re Thompson & Riches Ltd* [1981] 2 All ER 477, [1981] 1 WLR 682.

In the case of any company which is either the holder of a licence under the Coal Industry Act 1994, Pt II, or a licensed operator by virtue of s 25(3) thereof, the Coal Authority is included in the persons who are entitled to make an application under sub-s (1) above or s 653(2) post, and accordingly s 653(1) post is to be disregarded where an application under s 653(2) post is so made; see s 36(5), (6) of the 1994 Act, Vol 29, title Mines, Minerals and Quarries.

**Order . . . declaring the dissolution to have been void.** The court is not confined to declaring a dissolution to be void but has a discretion to give consequential directions; see *Re Townreach Ltd* [1995] Ch 28, [1994] 3 WLR.

Relief will not automatically be granted under this section whenever the petitioner brings himself within the wording of the section (*Re Thompson & Riches Ltd* above). A purpose of this section is to enable distribution to be made of an asset of the company, and an order to enable a charity to accept a gift by will from a testatrix dying after the date of dissolution was refused; see *Re Servers of the Blind League* [1960] 2 All ER 298, [1960] 1 WLR 564. An order will not be made on an application unless it is proved that notice has been served on the Treasury Solicitor in order to ascertain whether the Attorney General wishes to intervene (*Re Home and Colonial Insurance Co Ltd* (1928) 44 TLR 718). The court cannot declare the dissolution void for a limited purpose only (*Re Champdany Jute Co Ltd* 1924 SC 209). The validity of proceedings taken during the interval between the dissolution and avoidance is not affected (*Morris v Harris* [1927] AC 252, [1926] All ER Rep 15, HL; *Re Lewis and Smart Ltd* [1954] 2 All ER 19, [1954] 1 WLR 755).

Where a company has been dissolved under s 652 post the court has power under the present section to declare the dissolution void (*Re M Belmont & Co Ltd* [1952] Ch 10, [1951] 2 All ER 898; *Re Test Holdings (Clifton) Ltd* [1970] Ch 285, [1969] 3 All ER 517; *Re Townreach Ltd* [1995] Ch 28, [1994] 3 WLR); and where an application may be made under s 653 post for the restoration of a company to the register the petitioner may in the alternative apply for an order under this section (*Re Thompson & Riches Ltd* above).

As to the effect of an order avoiding dissolution, see the second paragraph of the General Note to s 654 post.

For the form of order, see *Re C W Dixon Ltd* [1947] Ch 251, [1947] 1 All ER 279.

**Sub-s (3): Deliver to the registrar.** As to the delivery of documents to the registrar and as to the keeping of company records by the registrar, see ss 706, 707, 707A post, and see also the note "Delivery to the registrar" to s 706 post.

**Fine.** For the mode of prosecution and punishment of offences under sub-s (3) above, see s 730 and Sch 24 post; and as to summary proceedings under this Act, see s 731 post.

**Sub-s (5): Enactment as to the time within which proceedings must be brought.** For the relevant enactments, see Vol 24, title Limitation of Actions. For consideration of the construction of sub-s (5) above, see *Re Workvale (No 2)* [1992] 2 All ER 627, CA.

**Definitions.** For "company", see s 735(1) post; for "the court" and "the registrar of companies", see s 744 post.

Law Reform (Miscellaneous Provisions) Act 1934, s 1(2)(c). See Vol 17, title Executors and Administrators.
Fatal Accidents Act 1976. See Vol 31, title Negligence.
Damages (Scotland) Act 1976. 1976 c 13; not printed in this work.

### 652 Registrar may strike defunct company off register

(1) If the registrar of companies has reasonable cause to believe that a company is not carrying on business or in operation, he may send to the company by post a letter inquiring whether the company is carrying on business or in operation.

(2) If the registrar does not within one month of sending the letter receive any answer to it, he shall within 14 days after the expiration of that month send to the company by post a registered letter referring to the first letter, and stating that no answer to it has been received, and that if an answer is not received to the second letter within one month from its date, a notice will be published in the Gazette with a view to striking the company's name off the register.

(3) If the registrar either receives an answer to the effect that the company is not carrying on business or in operation, or does not within one month after sending the second letter receive any answer, he may publish in the Gazette, and send to the company by post, a notice that at the expiration of 3 months from the date of that notice the name of the company mentioned in it will, unless cause is shown to the contrary, be struck off the register and the company will be dissolved.

(4) If, in a case where a company is being wound up, the registrar has reasonable cause to believe either that no liquidator is acting, or that the affairs of the company are fully wound up, and the returns required to be made by the liquidator have not been made for a period of 6 consecutive months, the registrar shall publish in the Gazette and send to the company or the liquidator (if any) a like notice as is provided in subsection (3).

(5) At the expiration of the time mentioned in the notice the registrar may, unless cause to the contrary is previously shown by the company, strike its name off the register, and shall publish notice of this in the Gazette; and on the publication of that notice in the Gazette the company is dissolved.

(6) However—
  (a) the liability (if any) of every director, managing officer and member of the company continues and may be enforced as if the company had not been dissolved, and
  (b) nothing in subsection (5) affects the power of the court to wind up a company the name of which has been struck off the register.

(7) A notice to be sent to a liquidator under this section may be addressed to him at his last known place of business; and a letter or notice to be sent under this section to a company may be addressed to the company at its registered office or, if no office has been registered, to the care of some officer of the company.

If there is no officer of the company whose name and address are known to the registrar of companies, the letter or notice may be sent to each of the persons who subscribed the memorandum, addressed to him at the address mentioned in the memorandum.

**NOTES**

**Sub-s (1): Carrying on business.** The words "carry on business" denote something of a permanent character, not merely an isolated transaction and a business is carried on only where there is some degree of management or control; see *Brown v London and North Western Rly Co* (1863) 32 LJQB 318, [1861–73] All ER Rep 487; *Graham v Lewis* (1888) 22 QBD 1, CA; and *Cain v Butler* [1916] 1 KB 759 at 762; but contrast *Cornelius v Phillips* [1918] AC 199, [1916–17] All ER Rep 685, HL. See also *Kirkwood v Gadd* [1910] AC 422 at 423, [1908–10] All ER Rep 768 at 771, HL; *Newman v Oughton* [1911] 1 KB 792; *Transport and General Credit Corpn Ltd v Morgan* [1939] Ch 531, [1939] 2