# Exhibit 9

[1962] 832
1 W.L.R.

a

[CHANCERY DIVISION.]

b

JONES AND ANOTHER *v.* LIPMAN AND ANOTHER.

[1961 J. No. 2666.]

c

1961 June 16; July 26.                                                              Russell J.

*Vendor and Purchaser - Specific performance - Vendor's power to convey - Sale by vendor to a*
d  *limited company under his control before completion of the first contract - Whether specific*
*performance could be ordered against the vendor and the company - Whether appropriate case to*
*refuse leave to defend - R.S.C., Ord. 14A, r. 1.*

e
By an agreement in writing dated February 27, 1961, the first defendant agreed to sell for £5,250 to the plaintiffs certain freehold land which was registered with absolute title under the Land Registration Act, 1925. Pending completion the first defendant sold and transferred the land to the defendant company for
f  £3,000. The company, which had a nominal capital of £100, had been acquired by the first defendant and he and a clerk employed by his solicitors were the only shareholders and directors. This sale was financed by the borrowing by the company of £1,564 from a bank whilst the rest of the purchase-money remained owing to the first defendant.

g  In an action by specially endorsed writ for specific performance of the agreement of February 27, 1961:-
*Held*, (1) that the defendant company was the creature of the

---

h

[Reported by A. RAZI, Esq., Barrister-at-Law.]

© An extract from a JUSTIS database

first defendant, a mask to avoid recognition by the eye of equity, and that, accordingly, in those circumstances, a decree of specific performance could not be resisted by a vendor, since by his control of the limited company, in which the property was vested, he was in a position to cause the contract in question to be completed.

(2) That this was an appropriate case to be disposed of under R.S.C., Ord. 14A.

b (3) That, accordingly, the contract dated February 27, 1961, ought to be specifically performed as to both the realty and personalty comprised therein by the first defendant and as to the realty comprised therein by the defendant company.

*Elliott and H. Elliott (Builders) Ltd. v. Pierson* [1948] Ch. 452; [1948] 1 All E.R. 939 and *Gilford Motor Co. Ltd. v. Horne* [1933] Ch. 935, C.A. followed.

ADJOURNED SUMMONS.

c On February 27, 1961, by a contract embodying the National Conditions of Sale, 17th ed., the first defendant, Benny Lipman of 3, Fairlawn Avenue, Chiswick, in the county of Middlesex, agreed to sell to the plaintiffs, David James Jones and Martha Ann Jones (his wife), of 157, Queen's Drive, London, N.4, the freehold property known as and situate at 3, Fairlawn Avenue, aforesaid, for the sum of £5,250, together with certain chattels therein for a further sum of £750. March 20, 1961, was the date fixed for completion.

d Condition 22 of the National Conditions of Sale, 17th ed., was as follows:

"(1) At any time on or after the completion date either party, being himself able, ready and willing to complete may (without prejudice to any other right or remedy available to him) give to the other party ... notice in writing requiring completion of the contract in conformity with this condition. (2) Upon service of such notice as aforesaid it shall become and be a term of the contract, in respect of which time shall be of the essence thereof, that the party to whom the notice is given shall complete the contract within 28 days after service of the notice ..."

e

On March 21, 1961, the plaintiff's solicitors served on the first defendant a notice under condition 22 requiring completion of the contract thus making it obligatory upon him to complete within 28 days of the notice. Thereupon the first defendant and the plaintiffs agreed for completion to take place on April 5, 1961.

f Meantime the first defendant changed his solicitors. The new solicitors wrote to the plaintiffs' solicitors on March 30, 1961, as follows:

"... Our client has today executed a transfer of the property to a third party and is in breach of his contract to your clients ...";

and offered to pay damages to the plaintiffs. On inquiries from the plaintiffs' solicitors about

g "(a) the name and address of the transferee; (b) the consideration for the transfer, (c) the proposed date of completion, (d) the date of [the] contract affecting the matter,"

the first defendant's solicitors answered

h "... we do not feel that we are able to give this information. We can tell you that the transfer was

© An extract from a JUSTIS database

completed on Thursday of last week and the documents were lodged on that day. We may also tell you that the transferee is a limited company."

b Subsequently by a letter dated May 10, 1961, the first defendant's solicitors wrote:

"We are proposing to advise our client to pay by way of salve because we consider it to be far in excess of the damage suffered by your clients, a sum of £250 ..."

c On May 2, 1961, the plaintiffs issued a writ in which they claimed specific performance of the contract, necessary and consequential accounts, directions and inquiries and damages for breach of contract in addition or in lieu of specific performance. At that date the first defendant was the sole defendant. On May 30, 1961, the plaintiffs issued a summons under R.S.C., Ord. 14A, which was set down for hearing before the master on June 16, 1961. At the hearing an affidavit was tendered by the first defendant stating that he had transferred the freehold property to Alamed Ltd. on March 30, d 1961. The registration of the property had been completed. He repeated the offer of £250 damages. Leave was granted to join Alamed Ltd. as the second defendant. It was so joined and a prayer for an order to set aside the transfer and damages for conspiracy was made against it.

The summons was adjourned to the judge in chambers and therefrom into open court for full argument. It was also directed that the directors and secretary of the defendant company and the first e defendant should attend to be examined on oath and to produce any documents in their possession or control and were relevant to the question whether Alamed Ltd. acquired such title to the property that was good against the plaintiffs and whether Alamed Ltd. held the property in trust for the first defendant.

On the day of hearing the court was informed that it had not been possible to arrange for the f directors and secretary to attend but that the first defendant had been asked to do so. Thereupon it was directed that the defendants' solicitors should instruct the counsel as to who the directors were. Later the court was informed of defendant's wish to appeal against the order directing attendance for oral examination. No information as to the identity of the directors and the secretary was given. Leave was granted to amend the plaintiffs' statement of claim to claim specific performance also against g Alamed Ltd. In order to afford the defendants an opportunity to file evidence in connection with Alamed Ltd. and the transfer of property to it, an adjournment was granted and the matter was directed to be heard in chambers. From the first defendant's evidence it appeared that he contracted to sell the property to Alamed Ltd. for £3,000. Alamed Ltd. borrowed £1,564 from a bank to meet this transaction. This was the sum required to redeem the mortgage of the property. It was paid to the first h defendant and the balance remained owing to him.

It appeared from the evidence that Alamed Ltd. was a private

a    company incorporated with a capital of £100 in shares of £1 each. Although the secretary had resigned on March 24, 1961, when the company was sold to the first defendant's solicitors, no return in respect of the appointment of directors had been filed until July 5, 1961. The secretary was shown as one Stanley Herbert Lucas of Surrey Street, Strand, W.C. The registered office was shown to be at

b    that address and it was shown to have been formed by law stationers of the same address. There was no record of any of the share capital having been issued. It appeared later, however, that the directors of Alamed Ltd. were the first defendant and a clerk of his solicitors. They were also the sole registered shareholders in Alamed Ltd.

The following judgment was delivered in open court.

c

*Gershon Ellenbogen* for the plaintiffs.
*Francis Ferris* for the defendants.

All the cases cited in argument were referred to in the judgment.

d
*Cur. adv. vult.*

July 26. RUSSELL J. stated the facts and continued: When the matter came on again in chambers the affidavit evidence by the first defendant made it plain (i) that the defendant company was, and at

e    all material times had been, under the complete control of the first defendant, and (ii) that the acquisition of the defendant company by the first defendant and the transfer to it of the real property comprised in the contract with the plaintiffs (for the chattels remained in the ownership of the first defendant) was carried through solely for the purpose of defeating the plaintiff's rights to specific performance and in order to leave them to claim such damages, if any, as they might establish. So

f    much was, quite rightly, admitted by counsel for the defendants.

For the plaintiffs the argument was twofold. First, that specific performance would be ordered against a party to a contract who has it in his power to compel another person to convey the property in question; and that admittedly the first defendant had this power over the defendant company. Second, that specific performance would also, in circumstances such as the present, be ordered against the defendant company. For the first proposition reference was made to *Elliott and H. Elliott*

g    *(Builders) Ltd. v. Pierson.*[1] In that case resistance to specific performance at the suit of a vendor was grounded on the fact that the property was vested in a limited company and not in the vendor. The company, however, was wholly owned and controlled by the vendor, who could compel it to transfer the property, and on this ground the defence to the claim for specific performance failed. It seems to me, not only from dicta of the judge but also on principle, that it necessarily follows that specific

h

1 [1948] Ch. 452; [1948] 1 All E.R. 939.

a  performance cannot be resisted by a vendor who, by his absolute ownership and control of a limited company in which the property is vested, is in a position to cause the contract to be completed.

For the second proposition reference was made to *Gilford Motor Co. Ltd. v. Horne*.[2] In that case the individual defendant had entered into covenants restricting his trading activities. It caused the defendant company in that case to be formed. This company was under his control and did things
b  which, if they had been done by him, would have been a breach of the covenants. An injunction was granted not only against him but also against the company. In that case Lord Hanworth M.R., after referring to *Smith v. Hancock*,[3] said[4]:

c  "Lindley L.J.[5] indicated the rule which ought to be followed by the court: 'If the evidence admitted of the conclusion that what was being done was a mere cloak or sham, and that in truth the business was being carried on by the wife and Kerr for the defendant, or by the defendant through his wife for Kerr, I certainly should not hesitate to draw that conclusion, and to grant the plaintiff relief accordingly.' I do draw that conclusion; I do hold that the company was 'a mere cloak or sham'; I do hold that it was a mere device for enabling Mr. E. B. Horne to continue to commit breaches of [the covenant], and under those circumstances the injunction must go against both defendants ..."

d  Lawrence L.J., in his judgment, said[6]:

"... I agree with the finding by the learned judge that the defendant company was a mere channel used by the defendant Horne for the purpose of enabling him, for his own benefit, to obtain the advantage of the customers of the plaintiff company, and that therefore the defendant company ought to be restrained as well as the defendant Horne."

e  Similarly, Romer L.J. said[7]:

f  "In my opinion Farwell J. was right in the conclusion to which he came ... that this defendant company was formed and was carrying on business merely as cloak or sham for the purpose of enabling the defendant Horne to commit the breach of the covenant that he entered into deliberately with the plaintiffs on the occasion of and as consideration for his employment as managing director. For this reason, in addition to the reasons given by my Lords, I agree that the appeal must be allowed, with the consequences which have been indicated by the Master of the Rolls."

g  Those comments on the relationship between the individual and the company apply even more forcibly to the present case. The defendant company is the creature of the first defendant, a device and a sham, a mask which he holds before his face in an attempt to avoid recognition by the eye of equity. The case cited[8] illustrates that an equitable remedy is rightly to be granted

2 [1933] Ch. 935.
3 [1894] 2 Ch. 377; 10 T.L.R. 433, C.A.
4 [1933] Ch. 935, 961.
5 [1894] 2 Ch. 377, 385.
6 [1933] Ch. 935, 965.
h  7 Ibid. 969.
8 Ibid. 935.

© An extract from a JUSTIS database

| [1962] | | 837 |
|---|---|---|
| 1 W.L.R. | JONES v. LIPMAN. | Russell J. |

a   directly against the creature in such circumstances. Counsel for the defendants argued that though
b   there was no dispute as to the facts, this was not a case for summary judgment under R.S.C., Ord. 14A, since there was a matter of law which should be kept for argument at the trial, and on which there was sufficient uncertainty to justify leave being given to defend. He submitted that the plaintiffs'
c   second proposition ran counter to the express statutory provisions as to title to be found in section 20 and section 59 of the Land Registration Act, 1925. On the plaintiffs' first proposition he argued (correctly) that the facts were not the same as those in the present case: and further that the point was
d   not plain. In my judgment, however, the case is a plain one, and appropriate to be dealt with under R.S.C., Ord. 14A. It would be quite wrong to conclude that there was justification for giving leave to defend, and I decline to do so. The propositions put forward for the plaintiffs are plainly correct.
e   The proper order to make is an order on both the defendants specifically to perform the agreement between the plaintiffs and the first defendant, but excepting from the order against the defendant
f   company that part of the agreement which involves the chattels. Accordingly, the court will declare that the contract dated February 27, 1961, mentioned in the writ of summons, ought to be specifically performed as to both the realty and personalty comprised therein by the first defendant and as to the
g   realty comprised therein by the second defendant.

*Order accordingly.*

h   Solicitors: *D. Miles Griffiths, Piercy    Co.; Beach    Beach.*

© An extract from a JUSTIS database