# Exhibit 11

: I would dismiss this

or the reasons Peter and position of the he requirements for ient of Cotton LJ in D 30 at 39, a classic That statement was Cia Naviera SA, The Peter Gibson LJ has ke in terms of the because in that case on for an injunction esent case is entirely proceed by way of

ismiss this appeal.

Esq Barrister.

# Re H and others (restraint order: realisable property)

COURT OF APPEAL, CIVIL DIVISION
ROSE, ALDOUS LJJ AND SIR IAIN GLIDEWELL
13, 14, 16 FEBRUARY 1996

*Company – Corporate personality – Lifting corporate veil – Shareholders – Realisable property – Shareholders being charged with evasion of customs and excise duty effected through company – Court appointing receiver to manage and sell shareholders' realisable property – Whether company assets to be treated as shareholders' realisable property – Criminal Justice Act 1988, s 77.*

The three defendants and the intervenor owned 100% of the issued share capital of two family companies. In August 1995 the Commissioners of Customs and Excise applied ex parte to the court for orders under s 77[a] of the Criminal Justice Act 1988 to restrain them from dealing with their realisable property and to appoint a receiver to take possession of and manage that property, on the basis that through the companies and otherwise they had committed excise duty fraud in relation to alcoholic liquor in a sum estimated in excess of £100m. The orders were duly made and specifically referred to a number of bank accounts, motor vehicles, properties and shares in a considerable number of companies, including the two family companies. Several days thereafter the three defendants were arrested and charged with excise duty evasion offences. The defendants subsequently applied by summons to amend the restraining order to prevent the receiver disposing of their assets without their agreement or the leave of the court and the intervenor sought an injunction to the same effect. As a preliminary matter the judge rejected the defendants' challenge to the jurisdiction of the judge who had made the ex parte orders and then dismissed the applications. The defendants and the intervenor appealed, contending inter alia that the receiver could not treat the assets of the two family companies as the realisable property of the defendants.

**Held** – Where a defendant had used the corporate structure as a device or façade to conceal his criminal activities, the court could lift the corporate veil and treat the assets of the company as the realisable property of the defendant under the 1988 Act. On the facts, there was a prima facie case that the defendants controlled the two companies, that the companies had been used for the fraudulent evasion of excise duty on a large scale, that the defendants regarded the companies as carrying on a family business and that they had benefited from company cash in substantial amounts; and further no useful purpose would have been served by involving the companies in the criminal proceedings. In all the circumstances it was therefore appropriate to lift the corporate veil and treat the stock in the companies' warehouses and the companies' motor vehicles as realisable property held by the defendants. It followed that the judge had correctly rejected the challenge to the court's

a Section 77, so far as material, is set out at p 395 *f* to *h*, post

jurisdiction. The appeals would accordingly be dismissed, although the sale of non-depreciating or non-surplus assets would be stayed pending an application by the receiver for the court's directions (see p 401 *e* to p 402 *e g j* to p 403 *a*, post).

*Re O (disclosure order)* [1991] 1 All ER 330 distinguished.

*Adams v Cape Industries plc* [1991] 1 All ER 929 considered.

**Notes**

For piercing the corporate veil, see 7(1) *Halsbury's Laws* (4th edn reissue) para 90.

For the Criminal Justice Act 1988, s 77, see 12 *Halsbury's Statutes* (4th edn) (1994 reissue) 1213.

**Cases referred to in judgments**

*Adams v Cape Industries plc* [1991] 1 All ER 929, [1990] Ch 433, [1990] 2 WLR 657, Ch D and CA.

*Borland's Trustee v Steel Bros & Co Ltd* [1901] 1 Ch 279.

*Brydges v Brydges* [1909] P 187, CA.

*Company, Re a* (1985) 1 BCC 99,421, CA.

*Macaura v Northern Assurance Co Ltd* [1925] AC 619, [1925] All ER Rep 51, HL.

*Merchandise Transport Ltd v British Transport Commission, Arnold Transport (Rochester) Ltd v British Transport Commission* [1961] 3 All ER 495, [1962] 2 QB 173, [1961] 3 WLR 1358, CA.

*O (disclosure order), Re* [1991] 1 All ER 330, [1991] 2 QB 520, [1991] 2 WLR 475, CA.

*P, Re* (26 July 1994, unreported), QBD.

*Salomon v Salomon & Co* [1897] AC 22, [1895–9] All ER Rep 33, HL.

**Cases also cited or referred to in skeleton arguments**

*Aiden Shipping Co Ltd v Interbulk Ltd, The Vimeira* [1985] 3 All ER 641, [1986] 1 AC 965, CA.

*Allied Arab Bank Ltd v Hajjar* [1987] 3 All ER 739, [1988] QB 787.

*Anton Piller KG v Manufacturing Processes Ltd* [1976] 1 All ER 779, [1976] Ch 55, CA.

*Arab Monetary Fund v Hashim* [1989] 3 All ER 466, [1984] 1 WLR 565.

*Atlas Maritime Co SA v Avalon Maritime Ltd, The Coral Rose (No 3)* [1991] 4 All ER 783, [1991] 1 WLR 917, CA.

*Behbehani v Salem* [1989] 2 All ER 143, [1989] 1 WLR 723, CA.

*Bekhor (A J) & Co Ltd v Bilton* [1981] 2 All ER 565, [1981] QB 923, CA.

*Bhimji v Chatwani (No 3)* [1992] 4 All ER 912, [1992] 1 WLR 1158, CA.

*Clayhope Properties Ltd v Evans* [1986] 2 All ER 795, [1986] 1 WLR 1223, CA.

*Columbia Pictures Industries Inc v Robinson* [1986] 3 All ER 338, [1987] Ch 38.

*Defendant, Re a* (1987) Independent, 2 April.

*Derby & Co Ltd v Weldon* [1989] 1 All ER 469, [1990] Ch 48, CA.

*Derby & Co Ltd v Weldon (No 3)* [1989] 3 All ER 118, [1990] Ch 65.

*DHN Food Distributors Ltd v Tower Hamlets London BC* [1976] 3 All ER 462, [1976] 1 WLR 852, CA.

*J, Re* [1992] CA Transcript 1295.

*Jones v Lipman* [1962] 1 All ER 442, [1962] 1 WLR 832.

*K (restraint order), Re* [1990] 2 All ER 562, [1990] 2 QB 298.

ılthough the sale of
ding an application
402 *e g j* to p 403 *a*,

l.

h edn reissue) para

's *Statutes* (4th edn)

, [1990] 2 WLR 657,

ıll ER Rep 51, HL.
ı, *Arnold Transport*
ER 5, [1962] 2 QB

[1991] 2 WLR 475,

33, HL.

ıll ER 641, [1986] 1

787.
779, [1976] Ch 55,

VLR 565.
*Io 3*) [1991] 4 All ER

A.
923, CA.
1158, CA.
WLR 1223, CA.
8, [1987] Ch 38.

C.
Ch 65.
3 All ER 462, [1976]

*M (restraint order), Re* [1992] 1 All ER 537, [1992] QB 377.
*Manchester and Milford Rly Co, Re, ex p Cambrian Rly Co* (1880) 14 Ch D 645, CA.
*Manor Electronics Ltd v Dickson* [1988] RPC 618.
*Moss Steamship Co Ltd v Whinney* [1912] AC 254, [1911–13] All ER Rep 344, HL.
*Parsons v Sovereign Bank of Canada* [1913] AC 160, PC.
*Paterson v Gas Light and Coke Co* [1896] 2 Ch 476, CA.
*Paulin, Re, Re Crossman* [1935] 1 KB 26, CA.
*Peters, Re* [1988] 3 All ER 46, [1988] QB 871, CA.
*R v Dickens* [1990] 2 All ER 626, [1990] 2 QB 102, CA.
*Rank Film Distributors Ltd v Video Information Centre* [1981] 2 All ER 76, [1982] AC 380, HL.
*Sartoris's Estate, Re, Sartoris v Sartoris* [1892] 1 Ch 11, [1891–4] All ER Rep 193, Ch D and CA.
*SCF Finance Co Ltd v Masri* [1985] 2 All ER 747, [1985] 1 WLR 876, CA.
*Slater v Comr of Police of the Metropolis* (1996) Times, 23 January.
*Smith, Stone and Knight Ltd v Birmingham Corp* [1939] 4 All ER 116.
*Thermax v Schott Industrial Glass Ltd* [1981] FSR 289.
*Third Chandris Shipping Corp v Unimarine SA, The Pythia, The Angelic Wings, The Genie* [1979] 2 All ER 972, [1979] QB 645, QBD and CA.
*Tinsley v Milligan* [1993] 3 All ER 65, [1994] 1 AC 340, HL.
*US v Milwaukee Refrigerator Transit Co* (1905) 142 Fed 247, Wis Cir Ct (ED).
*Woolfson v Strathclyde Regional Council* 1978 SLT 159, HL.

**Interlocutory appeals**

By amended notice dated 12 January 1996 the three defendants appealed, with leave granted by the Court of Appeal on 21 December 1995, from the order of Dyson J on 19 December 1995 dismissing their summons dated 15 December 1995 seeking, inter alia, variation of the order of Popplewell J made on 18 August 1995, whereby, on an ex parte application by the Commissioners of Customs and Excise, he restrained the defendants (which at the time included the intervenor) from dealing with their realisable property and appointed a receiver in respect of that property. By notice dated 2 February 1996 the intervenor appealed (also with leave granted by the Court of Appeal on 21 December 1995) from the order of Dyson J dismissing his summons dated 19 December 1995 seeking, inter alia, an injunction to restrain the receiver from selling certain companies' assets pending determination of an application by the intervenor to discharge or vary Popplewell J's order. The facts are set out in the judgment of Rose LJ.

*John Higham QC* and *Jonathan Crystal* (instructed by *Stringer Saul*) for the defendants.
*Michael Hartman* (instructed by *Bhardwaj Singh & Co*) for the intervenor.
*Andrew Mitchell* and *Alastair Walton* (instructed by *Denton Hall*) for the receiver.
*Andrew Mitchell* and *Kennedy Talbot* (instructed by the *Solicitor for Customs and Excise*) for the commissioners.

**ROSE LJ.** This is an appeal with the leave of the Court of Appeal from the judgment of Dyson J on 19 December 1995. The proceedings arise under the Criminal Justice Act 1988. The appellants are AH, SH and KH (the defendants). SSH intervenes (the intervenor).

On 18 August 1995 Popplewell J, on an ex parte application by HM Customs and Excise, made a number of orders, in particular restraining the defendants from dealing with their realisable property and appointing a receiver—

> 'to take possession of preserve collect get in sell receive and manage all the realisable property of the Defendant and including for the avoidance of doubt the management of the affairs of the companies named ... above ...'

The defendants at that time included the intervenor. The companies included HWB Ltd and HWL Ltd (the companies). The restraint order made against all the defendants specifically referred to seven bank accounts, a considerable number of motor vehicles, several properties, and shares in a considerable number of companies, including HWB Ltd and HWL Ltd. Paragraph 2 of the order was in these terms:

> 'The Defendant and any person having possession of realisable property of the Defendant do forthwith deliver up to the Receiver possession of all such realisable property, including but not limited to shares held by the Defendant [in a number of companies including HWL Ltd and HWB Ltd] ...'

Paragraph 4 was in these terms:

> 'The Receiver shall have the following powers without prejudice to any existing powers vested in her whether by statute or otherwise—(a) power to determine whether in the light of the circumstances of the trading position of any or all of the said companies there is any justification in allowing them to continue to trade and in the event that there be no such justification then the power to institute winding up proceedings in respect of the company or companies in question. In the event that a company or companies are viable then the power to continue to manage the business of the said company or companies if such management is consistent with the purpose of this Order namely to preserve the realisable property of the defendant herein ... (d) power to execute all such documents in the name of and on behalf of the Defendant as may be necessary to receive, preserve, manage and or sell the realisable property of the Defendant ... (i) power to sell any vehicle that is considered by the receiver to be an asset that is likely to significantly depreciate or is surplus to the proper administration of any of the businesses under her control or unnecessary for the defendant (should he be admitted to bail) to have the use of from day to day.'

The basis of the application to the judge and the order which he made was that the defendants, through the companies and otherwise, had carried out excise duty fraud in relation to alcoholic liquor in a sum then estimated as being in excess of £100m.

On 21 August 1995 the defendants were arrested and charged with excise duty evasion offences between January and August 1995. They own between them 75% of the issued share capital of both companies. The remaining 25% of the shares in the companies is owned by the intervenor, who has not been charged with any offence. He is on bail and is to be further interviewed in April. Although the documents before the court do not show this, it is apparently common ground that the order of Popplewell J in relation to the

intervenor was in part discharged by Sedley J on 25 August, although the restraint of the intervenor remained in force. On the same occasion Sedley J, and subsequently Hooper J and Collins J, varied the order of Popplewell J in respects which are, for present purposes, immaterial.

Matters then came before Dyson J on the hearing of three summonses. One, by the Customs and Excise to add a further company to the list of companies referred to in the order, is of no present significance. A summons by the defendants sought amendment of para 4 of Popplewell J's order, so as to prevent the receiver from disposing of the companies' assets prior to 28 February 1996 or thereafter, save with the agreement of the defendants and the intervenor or the leave of the court. A summons by the intervenor sought an injunction to restrain the receiver from selling the two companies' assets pending determination of an application to discharge or vary Popplewell J's order restraining the intervenor, and provision in relation to the intervenor's living and legal expenses was sought. The issue of discharge and variation was apparently dealt with by Dyson J on the same occasion. Furthermore, although the summonses of the defendants and the intervenor did not refer to the matter, the jurisdiction of Popplewell J to make the order in the form in which he did was challenged before Dyson J by way of a preliminary point. The intervenor also sought orders for the realisation of his 25% shares and permission to run HWL Ltd, although these matters were not referred to in his summons. The judge rejected the challenge to jurisdiction and dismissed the applications of the defendants and the intervenor. Against that decision the defendants and intervenor appeal to this court.

Before turning to the rival submissions, it is necessary to describe the legislative framework of Pt VI of the 1988 Act. Section 71 confers on Crown Courts and magistrates' courts the power to make confiscation orders, the amount of such orders being limited by sub-s (6) to the benefit from the offence or the amount realisable, whichever is the less. Section 77(1) empowers the High Court to 'prohibit any person from dealing with any realisable property', that being a restraint order. Subsection (3) provides that a restraint order may apply '(a) to all realisable property held by a specified person, whether the property is described in the order or not'. Subsection (8) is in these terms:

> 'Where the High Court has made a restraint order, the court may at any time appoint a receiver—(a) to take possession of any realisable property, and (b) in accordance with the court's directions, to manage or otherwise deal with any property in respect of which he is appointed, subject to such exceptions and conditions as may be specified by the court; and may require any person having possession of property in respect of which a receiver is appointed under this section to give possession of it to the receiver.'

Section 74(1)(a) defines realisable property as 'any property held by the defendant'. Section 102(1) and (7) provides:

> '(1) ... "interest", in relation to property, includes right; "property" includes money and all other property, real or personal, heritable or moveable, including things in action and other intangible or incorporeal property ...
>
> (7) Property is held by any person if he holds any interest in it.'

Section 82 applies to the powers of a receiver. Subsections (2) and (4) provide:

> '(2) Subject to the following provisions of this section, the powers shall be exercised with a view to making available for satisfying the confiscation order or, as the case may be, any confiscation order that may be made in the defendant's case the value for the time being of realisable property held by any person by the realisation of such property ...
>
> (4) The powers shall be exercised with a view to allowing any person other than the defendant or the recipient of any such gift to retain or recover the value of any property held by him.'

For the defendants, Mr Higham QC's broad submission is that, although Popplewell J was entitled to treat the defendants' shares in the companies as realisable property within the Act, a receiver taking possession of the shares could only exercise the voting and other rights of a shareholder and could not manage the company, that being the responsibility of the company's directors. It was not open to the judge to short-circuit Companies Act procedures and purport to empower the receiver to dispose of the assets of the companies. Such assets are not realisable property of the defendants.

In support of that submission, he addressed three issues. First, he says the terms of the 1988 Act, in particular s 77(8), empower the court to appoint a receiver in relation only to realisable property of the defendants. The reference in s 77(8)(b) to 'any property' has to be read as a reference to realisable property because the purpose of restraint orders, to which the appointment of a receiver is ancillary, is to preserve the value of assets which may later be required to satisfy a confiscation order. The statutory definitions of 'realisable property' in s 74(1)(a) and 'property' in s 102(1) and (7) are confined to property in which the defendant holds an interest. Restraint orders are directed by s 77(1) to realisable property. The reference to property at the end of s 77(8) must be a reference back to realisable property in (a). There are similar references to property in other sections of the Act. As examples, see s 77(3)(a), which I have read, and ss 80(3)(a) and 88(1)(a), which it is unnecessary to read. Such a construction, submits Mr Higham, was adopted by May J in *Re P* (26 July 1994, unreported). Accordingly, he submits that Dyson J was wrong to accept that there is any power under s 77 to appoint a receiver for property which is not realisable.

Secondly, he submits that the companies' assets were not realisable property of the defendants. A company is a separate legal entity. Its assets belong to the company, not to its shareholders (see, for example, *Borland's Trustee v Steel Bros & Co Ltd* [1901] 1 Ch 279 at 288 per Farwell J and *Macaura v Northern Assurance Co Ltd* [1925] AC 619 at 626, 630 and 633, [1925] All ER Rep 51 at 54 and 55 per Lord Buckmaster, Lord Sumner and Lord Wrenbury). Accordingly, unless it is appropriate to pierce the corporate veil, a company's assets cannot be regarded as a defendant's realisable property. Such piercing was not considered by either Popplewell J or Dyson J, but is raised before this court in the respondents' notice. Mr Higham says the evidence before the court does not justify piercing. In particular, the evidence is insufficiently precise as to which companies are involved in criminal activities and to what extent. No charges have been brought against the companies or the intervenor. It was accepted that there were some legitimate parts to the business, because this was the reason for applying for a receiver. Control of the companies by the defendants

is inadequate to justify an allegation of criminal activity by the companies. He referred to *Adams v Cape Industries plc* [1991] 1 All ER 929, [1990] Ch 433. He accepts that if the companies were set up solely for the purpose of criminal activity, there would be little difficulty in piercing the corporate veil. But he does not accept that piercing is permissible if a business is set up or used for purposes which, to a significant or substantial extent, are illegitimate. A large quantity of stock on which duty has not been paid was seized and remains with the Customs and Excise. Stock now sought to be sold off is not tainted with illegality.

Mr Higham's fall-back position, if he fails on his first two submissions, is that Dyson J should have directed the receiver not to sell assets of the companies other than perishables or those otherwise declining in value. The Act does not provide for realisation until a confiscation order has been made after trial. The purpose of appointing a receiver was to preserve, not to sell off, assets, and the court's directions should have been sought prior to selling off as though on a closing-down. Dyson J was, says Mr Higham, in an impossible position, in that he was not asked to consider whether it was right to deprive the defendants of their source of livelihood while the criminal proceedings remain unresolved. This court should therefore consider the matters afresh and order that there be no sale of non-perishables pending further directions of the court.

For the intervenor, Mr Hartman adopts, or at least does not dissent from, most of Mr Higham's submissions, save in two respects. First, unlike Mr Higham, he contends that shares in the companies are not realisable assets, on the grounds, as I understand him, that they were acquired for value untainted by criminal activity and that, in the light of s 74(5)(a), there is no evidence as to their value at the time of their acquisition. In my judgment this argument is not well founded. Source of funding is relevant under the Act when assessing benefit after conviction, but neither source of funding nor value are relevant to determination as to a defendant's realisable assets. Mr Hartman further submits that the Act provides no jurisdiction to appoint a receiver in relation to a company which is not a party to proceedings because s 37(1) of the Supreme Court Act 1981 requires a company to be made a party.

The second respect in which Mr Hartman differs from Mr Higham is in submitting that the court can, on the material before it, here look behind the corporate veil to decide whether the companies are being used as a sham, so as to make it just and convenient to appoint a receiver. However, says Mr Hartman, the ability to look behind the corporate veil does not create jurisdiction, and an inquiry can only properly be conducted if the company is a party to the proceedings. He relies on *Brydges v Brydges* [1909] P 187 at 191 per Farwell LJ. Mr Hartman stresses the terms of s 82(4). The powers of appointing a receiver must be exercised with a view to allowing the intervenor 'to retain or recover the value of any property held by him'. The judge, he says, had no proper regard to this. If the corporate veil is to be lifted, there should be a direction that 25% of the assets and profits be paid to the intervenor. There was no reason to appoint a receiver of the companies in this case. Dyson J failed properly to carry out the necessary balancing act in the light of the intervenor's affidavit, which raised credible issues contravening the basis on which Popplewell J had made his order. He was wrong to find that the companies' assets were the assets of the defendants and that the defendants controlled the companies. As the purpose of his order was to preserve the

legitimate part of the business, the intervenor was the proper person to continue running the business and the restraint order against him should have been discharged. Furthermore, the order does not protect the intervenor against self-incrimination or provide for his legal expenses.

    For the Customs and Excise and the receiver, Mr Mitchell makes submissions in support of Dyson J's decision and the additional grounds in his notice under RSC Ord 59, r 7(1). He submits that there are four possible routes whereby jurisdiction is conferred to appoint a receiver to manage the companies' assets. First, somewhat faintly, he contends that the definitions in s 102 of 'interest' and 'property' are such as to confer jurisdiction to empower a receiver not only to exercise all the shareholders' rights but also to ensure that the value of the assets of the company is maintained. The bundle of rights which a shareholder has is 'property' and include an interest in the company. Such an 'interest' is also property by virtue of sub-s (7). By virtue of s 82(2) the value of the shares has to be made available by the receiver and that value can only be maintained if the receiver manages the company's affairs.

    Secondly, he submits that s 77(8) is to be interpreted by reading the word 'and' at the end of (a) disjunctively, so that the subsection is to be understood as conferring power to appoint a receiver both in relation to realisable property under (a) and in relation to any property under (b). Section 82(4) shows that Parliament envisaged circumstances in which a receiver could possess an innocent third party's property. Accordingly, jurisdiction to appoint a receiver to manage a company's underlying assets is conferred by s 77(8).

    Thirdly, he says the judge was right to conclude that a court has an inherent power to appoint a receiver to manage the companies' affairs. *Re O (disclosure order)* [1991] 1 All ER 330, [1991] 2 QB 520 shows that the court has the inherent power to make the 1988 Act work properly and the power to appoint a receiver must include a power to make the receiver's work effective, that is, enabling him to manage the companies' affairs. On the balance of convenience, the judge was right to make such an order because there was prima facie evidence of a large fraud and the defendants were, in the light of the evidence to which in a moment I shall come, 'cash-rich and income-poor'.

    Fourthly, the companies were nothing more than a sham, providing a façade for the defendants' illegal activities. The court should therefore look behind and lift the corporate veil.

    His written skeleton relied on *Adams v Cape Industries plc* [1991] 1 All ER 929 at 1022, [1990] Ch 433 at 539, and in oral argument he referred to *Re a Company* (1985) 1 BCC 99,421.

    In support of this submission he relied on the evidence contained in the defendants' own affidavits sworn the day after the hearing before Dyson J, an affidavit sworn by their solicitor in September 1995 and an affidavit of Mr Matthews of the Customs and Excise, which were both before the judge, and an affidavit sworn by the receiver on 11 January 1996.

    Mr Higham suggested it was unfair for this court to draw inferences from the defendants' own affidavits, which they had had to swear in response to an order for disclosure, which were not directed to the corporate veil question, and which they had had no opportunity of explaining in oral evidence. I am wholly unable to accept that submission. The information in those affidavits was necessarily well known to the defendants and could not possibly be said to take them by surprise. Indeed, it appears that had they complied with the

court's order as to when those affidavits would be sworn, they would have been sworn long before 20 December. I see no possible unfairness in this court considering their content and drawing such inferences as may be appropriate from that content, both in itself and in conjunction with the other affidavit evidence to which I have referred.

Each defendant has a wife and at least two dependent children. Each claims to have a gross monthly income of £2,312, yet their solicitor's affidavit claims that AH's monthly expenditure is £4,939; SH's, £11,731; and KH's, £8,441. That expenditure includes large sums by way of pension policy premiums and mortgage payments, which are wholly inconsistent with the incomes claimed. Furthermore, each defendant refers to, and seeks in the affidavit to explain, a very large sum of cash found in his house by the Customs and Excise. There was £40,000 in a trunk kept by AH's wife, £16,000 of which is said to have been saved from his monthly salary and £21,000 of which allegedly belongs to HWB Ltd and was awaiting banking. There was £40,000 in SH's bedroom, said to be takings from HWB Ltd awaiting banking, and £12,500 in his wife's trunk. There was £76,000 in KH's bedroom, also said to await banking for HWB Ltd. In addition, SH swears as follows:

> 'Following the raid by HM Customs & Excise in December 1994, stocks were sold but at that time, not all of these sales were paid for. In about June 1995, I received approximately £400,000 in respect of these earlier sales which I then sent to India ...'

The implications of this passage, particularly as to the control and appropriation of company assets, are obvious.

The receiver's evidence as to the state of the companies' books is as follows. In relation to HWL Ltd:

> 'There was in existence a computer record purporting to be a stock list. However, this was out of date, indicating no sales in 1995. There were no computer records of purchases. A file was found of outstanding invoices, but these related mainly to running expenses rather than stock purchases. In respect of sales, there were handwritten daily cash sheets showing sums of cash received every day. However, these did not identify purchasers nor the nature of the stock sold. No stock movement schedules or ledger were found, nor any other record [or] document relating to sales. A computer record of outstanding debts was discovered (to a total of over £4·4m, half of which were debts from associated companies) but no supporting invoices were located. No nominal ledgers, showing the current trading position of the company have been located. No staff or payroll details and no fixed asset register were located. No management accounts were located.'

As to HWB Ltd:

> 'There was in existence a computer record purporting to be a stock list. However, no sales were indicated within the previous 12 months. There was a nominal ledger found indicating purchases for the year to September 1995 of £55m. However, there were no underlying records and the sales figures were not recorded at all on this document. In respect of sales, a sales book was found together with handwritten daily cash sheets showing sums of cash received every day. This showed sales of £32m in the

calendar year to August 1995. This figure [was] contradicted by computer records showing sales of £23m. A record of outstanding debts was discovered (to a total of over £1·5m, most of which were debts from associated companies). No staff or payroll details and no fixed asset register were located. No management accounts were located.'

In relation to another related company:

> 'No stock valuation reports were found, nor any information in relation to purchases. As mail began to arrive and known creditors were identified it became impossible to identify creditors of £52,000. A sales book has been found indicating sales from March to August 1995 of £8·5m. A computer record showed the last day of trading to have enjoyed a turnover of £103,000. Historical information could not be extracted from the computer. Debtors were shown as £329,000 together with a list of debtors ... No nominal ledger or fixed asset register has been located.'

The affidavit of the receiver goes on to say, in respect of all the companies, that the majority of their stock is claimed by the Customs and Excise as liable to forfeiture as VAT and/or excise duty had not been paid. She reached the conclusion that there was insufficient financial information to decide that the companies could resume trading. She also considered the potential liabilities which would be incurred in the form of trading debts at a time when the ability to meet trading debts was uncertain. She was therefore in a position of holding substantial stocks in the companies and had to decide how to dispose of it, and she took advice in that respect.

The affidavit of Mr Matthews indicates the substantial number of interrelated companies of which the defendants or their relations were at one time or another directors. It suffices to say that all the defendants were directors of HW Ltd, which went into liquidation following the Customs and Excise raid in December 1994; that the defendants and the intervenor each, as I have said, hold 25% of the shares of HWB Ltd and HWL Ltd; that the directors of HWB Ltd are SH's wife and a relative of the defendants who lives in British Columbia; and that AH was a director of HWL Ltd from its incorporation in November 1994 until the following March. Observations and inquiries during 1995 have shown that the HW companies, including HWB Ltd and HWL Ltd, were apparently receiving huge quantities of spirits, wines and beers on which duty had not been paid. The defendants appear to have abused the administrative accompanying documents scheme, using forged Italian customs stamps. According to Mr Matthews, the defendants appear to be responsible for conducting such business at a level which involved a loss to Customs and Excise of at least £1m a week.

I should add that although, as I have said, the intervenor is the registered owner of 25% of the shares of the companies, it is the prosecution case that he does not hold those shares beneficially.

In the light of this evidence, submits Mr Mitchell, it is appropriate to lift the corporate veil and to treat the stock in the companies' warehouses and the motor vehicles as realisable property of the defendants. Popplewell J accordingly had jurisdiction to make the order which he did in relation to that stock, and Dyson J was right not to discharge or vary it.

In my judgment neither s 102(1) and (7) nor s 77(8), properly construed, confers on the court jurisdiction, for which Mr Mitchell contends, to appoint a

receiver of the companies' property. As to s 102, a statute's definition section is, in itself, an unlikely source of conferment of power and, broad though the definition of property is, that definition, neither alone nor in conjunction with other definitions in the section, is in my view able to sustain Mr Mitchell's argument. As to s 77(8), if Mr Mitchell's disjunctive construction of (a) and (b) were correct, (a) would be otiose, for 'any property' and 'manage or otherwise deal' in (b) respectively embrace 'realisable property' and taking possession in (a). Accordingly, and for the other reasons advanced by Mr Higham, s 77(8) cannot in my view be construed so as to confer jurisdiction.

With regard to inherent jurisdiction, on which Dyson J relied by analogy with *Re O (disclosure order)*, I am not persuaded that this analogy is sound. I accept, of course, as Lord Donaldson MR said ([1991] 1 All ER 330 at 334, [1991] 2 QB 520 at 528): '... the High Court must have been intended to have power to render effective a restraint order made under section 77 ...' In that case, the court's conclusion that there was jurisdiction to make an order for disclosure, so as to identify and ascertain the whereabouts and value of assets, merely provided teeth to render effective undoubted existing powers. In the present case, however, what is sought to be achieved by Mr Mitchell's reliance on the court's inherent power is, as it seems to me, the creation of a wholly new power, whereby the court can deal with the realisable property of another in the same way as the realisable property of the defendants. In my judgment *Re O* does not support such a conclusion.

I turn to the corporate veil. This involves two questions: first, whether in law it is permissible to pierce or lift the veil; secondly, whether, on the evidence before the court, this should be done in the present case.

As to the law, the general principle remains that which was enunciated in *Salomon v Salomon & Co* [1897] AC 22, [1895–9] All ER Rep 33, namely that a company duly formed and registered is a separate legal entity and must be treated like any other independent person with its own rights and liabilities distinct from those of its shareholders. But a succession of cases throughout the twentieth century show, as Danckwerts LJ said in *Merchandise Transport Ltd v British Transport Commission, Arnold Transport (Rochester) Ltd v British Transport Commission* [1961] 3 All ER 495 at 518, [1962] 2 QB 173 at 206–207:

> '... where the character of a company, or the nature of the persons who control it, is a relevant feature the court will go behind the mere status of the company as a legal entity, and will consider who are the persons as shareholders or even as agents who direct and control the activities of a company which is incapable of doing anything without human assistance.'

In *Adams v Cape Industries plc* [1991] 1 All ER 929 at 1024, [1990] Ch 433 at 542 Slade LJ, giving the judgment of the Court of Appeal (of which Mustill and Ralph Gibson LJJ were the other members) cited this passage and added: 'The correctness of this statement has not been disputed.' The court also assumed to be correct the proposition that—

> 'the court will lift the corporate veil where a defendant by the device of a corporate structure attempts to evade (i) limitations imposed on his conduct by law ...' (See [1991] 1 All ER 929 at 1026, [1990] Ch 433 at 544.)

Clearly, as a matter of law, the corporate veil can be lifted in appropriate circumstances.

As to the evidence, it provides a prima facie case that the defendants control these companies; that the companies have been used for fraud, in particular the evasion of excise duty on a large scale; that the defendants regard the companies as carrying on a family business, and that company cash has benefited the defendants in substantial amounts. It is, I think, conceded by the defendants and the intervenor (and, if not conceded, the contrary is unarguable) that if the companies had been about to be charged with criminal offences, Popplewell J could have appointed a receiver of the companies' realisable property; and, indeed, all the companies' shareholders were represented before Popplewell J. In my judgment, the Customs and Excise are not to be criticised for not charging the companies. The more complex commercial activities become, the more vital it is for prosecuting authorities to be selective in whom and what they charge, so that issues can be presented in as clear and short a form as possible. In the present case, it seems to me that no useful purpose would have been served by introducing into criminal proceedings the additional complexities as to the corporate mind and will which charging the companies would have involved. Conversely, there could have been justified criticism had the companies been charged merely as a device for obtaining orders under the Act in relation to their assets.

In all the circumstances, I am entirely satisfied that it is appropriate to lift the corporate veil in this case and to treat the stock in the companies' warehouses and the motor vehicles as property held by the defendants. Accordingly, Dyson J was correct to reject the challenge to the court's jurisdiction. I would add that, in a case where the corporate veil cannot properly be lifted, it may be open to a prosecutor to apply to the court under s 37 of the Supreme Court Act 1981 for the appointment of a receiver of the company.

There remains, in relation to the defendants and the intervenor, the question of variation. Although I accept that Mr Mitchell's reason for including sub-paras (a) and (i) in para 4 in the order which he sought was to avoid doubt about, and to clarify, the receiver's powers, Popplewell J's inclusion of those subparagraphs in the order made suggests, to my mind, that the judge intended that the receiver should seek the court's directions as to winding up and the sale of non-depreciating or non-surplus items. Such an intention on the judge's part would be consonant with the general practice in relation to the court's control of receivers. For my part, therefore, without varying the terms of Popplewell J's order, I would order a stay on the sale of non-depreciating or non-surplus goods pending an application by the receiver for the court's directions.

The only remaining matter is the intervenor's application for variation of the restraint against him to provide for legal expenses and against self-incrimination. Although we are told these matters were raised before the judge, they were, like jurisdiction, further novel points which had not been raised in the summonses before him: indeed, his judgment contains no reference to the self-incrimination point. The judge referred to the lack of material evidence before him. I am unpersuaded that, in so far as the matters were raised, he fell into any error. If the intervenor wishes to pursue these matters, it seems to me that the proper course is for him to take out a summons supported by affidavit evidence in the usual way.

Save to the extent of ordering the stay which I have indicated, I would dismiss these appeals.

CA

ALDOUS LJ. LJ.

SIR IAIN GI

*Appeals dismi*

Case 1:03-md-01570-GBD-SN Document 415-20 Filed 08/30/04 Page 14 of 14

: defendants control
ıud, in particular the
endants regard the
company cash has
nk, conceded by the
d, the contrary is
arged with criminal
of the companies'
shareholders were
toms and Excise are
The more complex
cuting authorities to
can be presented in
it seems to me that
ıcing into criminal
rate mind and will
versely, there could
ıarged merely as a
eir assets.

ppropriate to lift the
panies' warehouses
ants. Accordingly,
ır tion. I would
be ıfted, it may be
Supreme Court Act

venor, the question
ason for including
was to avoid doubt
s inclusion of those
t the judge intended
winding up and the
ntion on the judge's
ation to the court's
ırying the terms of
ıon-depreciating or
ver for the court's

ı for variation of the
and against self-
e raised before the
which had not been
gment contains no
rı o the lack of
o far as the matters
ıes to pursue these
ake out a summons

indicated, I would

**ALDOUS LJ.** I would also dismiss these appeals for the reasons given by Rose LJ.

**SIR IAIN GLIDEWELL.** I entirely agree.

*Appeals dismissed. Leave to appeal to the House of Lords refused.*

L I Zysman Esq Barrister.