# Exhibit 17

[1953] 1 W.L.R.                                                                483

As, however, the argument which has succeeded appears to have either not been taken or, at least, not urged in the Court of Appeal, each party must pay its own costs of the proceedings in the courts of Malta and before their Lordships' Board.

J. C.
1953

EDGAR STAINES
v.
VICTOR LA ROSA.

*Appeal allowed.*

Solicitors: *Ashurst, Morris Crisp & Co.; Thomas Cooper & Co.*

C. C.

[CHANCERY DIVISION.]

\* *In re* F. G. (FILMS) LD.

[1952 F. 2397.]

1953
Feb. 12, 18.

Valsey J.

*Cinematograph Film—British film—" Maker "—Sole maker—Person by whom arrangements for making undertaken—Agreement with American company to produce film with finance and all facilities from American company—Cinematograph Films Act, 1938 (1 & 2 Geo. 6, c. 17), ss. 25 (1) (a), 44 (1)—Cinematograph Films Act, 1948 (11 & 12 Geo. 6, c. 23), Sch. I.*

The applicants were incorporated under the Companies Act, 1948, with a capital of £100 in £1 shares, 90 of which were held by one director, J., an American citizen, 10 by the second, who was British, and none by the third, who also was British. The applicants' sole place of business was their registered office, and they did not employ any staff. They agreed to produce a film based on a story the film rights in which were in an American company of which J. was president, and which agreed to provide the finance and whatever facilities the applicants might require. The film was made in India, and the applicants applied to the Board of Trade to register it as a British film, which the Board of Trade, while admitting that the applicants were a British company as defined in the Act, declined to do on the ground that the applicants were not the " maker " of the film within the meaning of sections 25 (1) (a) and 44 (1) of the Cinematograph Films Act, 1938. On a summons by the applicants pursuant to section 31 of the Act:—

*Held,* (1) that to satisfy the requirement of section 25 (1) (a) the applicants must establish that they were the sole makers of the film; (2) that it was contrary to all sense and reason and to the proved and admitted facts to say that the applicants undertook the arrangements for the making of the film, as their participation in any such undertaking was so small as to be practically negligible, and as they had acted, in so far as they acted at all, merely as the nominees of the American company. The applicants' intervention was purely colourable, and they were brought into existence for the sole purpose of being put forward as having undertaken the arrangements necessary for the making of the film and of enabling it to qualify as a British film, and the Board of Trade's decision not to register the film as a British film was right.

1953

F. G.
(Films)
Ld.,
In re.

Adjourned summons.

On May 29, 1951, the applicants were incorporated under the Companies Act, 1948, with a capital of £100 divided into 100 shares of £1 each. There were three directors: one, an American citizen, who held 90 of the shares, and the other two British subjects, one of whom held the remaining 10, the other having no shareholding. The applicants had no place of business apart from their registered office, and did not employ any staff. They agreed to produce a film entitled "Monsoon," based on a story the film rights in which had been acquired by an American company called Film Group Incorporated, of which the American citizen who was the principal shareholder in the applicant company was president. Film Group Incorporated agreed to and did provide the necessary finance for the film and all the facilities required by the applicants for the production which took place in India. Pursuant to section 23 of the Cinematograph Films Act, 1938, as amended by the schedule to the Cinematograph Films Act, 1948, the applicants applied to the Board of Trade for the registration of the film as a British film. The Board of Trade admitted that the applicants were a "British company" as defined by the Act, being, within section 25 (2) thereof, "a company incorporated under the laws "of any part of His Majesty's dominions, being a company the "directors of which, or a majority of the directors of which, were "British subjects"; that the studio used in making the film was within Her Majesty's dominions, namely, in India; and that the statutory requirement concerning the labour costs had been fulfilled: but the Board refused to register the film as a British film on the ground that it was not made by the applicants.

By this summons the applicants sought a declaration (1) that they were the "maker" of the film "Monsoon" within the meaning of the Act and of the amending Act of 1948; (2) that throughout the time when the film was being made they were a British company within the meaning of the Act; and (3) that the maker of the film was, throughout the time that it was being made, a British company, namely, the applicants.

*Cyril Salmon Q.C.* and *Claude Duveen* for the applicants.
*Sir Reginald Manningham-Buller S.-G.* and *Denys Buckley* for the Board of Trade.

*Cur. adv. vult.*

February 18. VAISEY J., reading his judgment, after referring to sections 22, 23 and 25 of the Act of 1938 [1] and stating some of the facts continued:

---

[1] Cinematograph Films Act, 1938 (as amended by Sch. I to the Cinematograph Films Act, 1948), s. 22: "No person shall . . . deliver to an "exhibitor in Great Britain for "public exhibition therein any film "to which this Act applies, unless, "at the time of the delivery, the film "is a registered film; and no person "shall . . . exhibit to the public at a

Case 1:03-md-01570-GBD-SN   Document 415-26   Filed 08/30/04   Page 4 of 5

The sole question, therefore, which I have to decide is whether the applicants were the "maker" of the film. This is what they claim to be, but the respondent has decided that they were not and has, on that ground, refused to register the film "Monsoon" as a British film. The applicants, being aggrieved by that decision, are, in accordance with section 31 of the Act making the present application to the court. In substance, I am asked to reverse the respondent's decision and to say that "Monsoon" is a British film under the Act.

In section 44 of the Act the expression "maker" is defined as meaning, "in relation to a film, the person by whom the "arrangements necessary for the making of the film are under- "taken. . . ." This is perhaps a strange collocation of words which might in other circumstances give rise to some difficulty of interpretation. "Undertake" means, I think, "be responsible "for," especially in the financial sense, but also generally. So far as the present case is concerned, I think that it plainly suggests the following problem: was it the applicants alone who undertook the arrangements necessary for the making of the film, or did they do so in co-operation with some other person, firm or company, reading as including the plural number (in accordance with the Interpretation Act, 1889) the words "maker," "British "subject" and "British company" in section 25 and the words

1953

F. G.
(FILMS)
LD.,
In re.

Vaisey J.

"theatre in Great Britain any film to "which this Act applies, being a film "which he knows, or ought to have "known, not to be a registered film. ". . ."

S. 23: "(1) Upon application duly "made to them . . . for the registra- "tion of a film to which this Act "applies, the Board of Trade shall, "subject to the following provisions "of this Part of this Act, register the "film under this Part of this Act in "a register to be kept by the Board "for the purpose."

"(2) The register shall be so kept "as to record, in relation to each film "registered therein—(a) . . . the fact "that it is a British film or a foreign "film, as the case may be. . . ."

S. 25 (1): ". . . a film shall . . . "be deemed to be a British film if, "and only if,—(a) the maker of the "film was, throughout the time "during which the film was being "made, either a British subject or a "British company, and (b) the "studio, if any, used in making the "film was within His Majesty's "dominions, and (c) not less than "the requisite amount of labour costs "represents payments paid or pay- "able in respect of the labour or ser- "vices of British subjects or persons "domiciled in some part of His "Majesty's dominions."

S. 31 (1): "Any person who is "aggrieved by any decision taken by "the Board of Trade for the purpose "of the performance of their duties in "relation to the register, may, subject "to rules of court, make application "in the matter to the High Court, "and the decision of that court on "any such application shall be final "and not subject to appeal to any "other court."

S. 35: "The films to which "this Act [and the Act of 1948] "apply are all cinematograph films "other than—(a) films consisting "wholly or mainly of photographs "which, at the time when they were "taken, were means of communicat- "ing news, or (b) films made wholly "or mainly for the purpose of com- "mercial advertisement, or (c) films "certified under subsection (2) of "section 7 of the Finance Act, 1935, "as being entitled to exemption from "customs duties under the convention "for facilitating the international "circulation of films of an educational "character which is referred to in "that subsection."

S. 44 (1): "In this Act . . . "'maker,' in relation to a film, "means the person by whom the "arrangements necessary for the "making of the film are under- "taken. . . ."

486      THE WEEKLY LAW REPORTS      MARCH 6, 1953

1953
F. G.
(FILMS)
LD.,
*In re.*

Vaisey J.

" maker " and " person " in the definition ? Here the applicants can succeed only if they establish themselves as the sole statutory makers of the film, for, if they were (as may well be the case) one of several makers, the other " maker " or " makers " certainly cannot, in the circumstances of this case, be brought within the description of " British subject " or " British company." Their claim is to be, or to have been, the sole exclusive maker of the film.

The applicants have a capital of £100, divided into 100 shares of £1 each, 90 of which are held by the American director and the remaining 10 by a British one. The third director has no shareholding. I now understand that they have no place of business apart from their registered office, and they did not employ any staff. It seems to me to be contrary, not only to all sense and reason, but to the proved and admitted facts of the case, to say or to believe that this insignificant company undertook in any real sense of that word the arrangements for the making of this film. I think that their participation in any such undertaking was so small as to be practically negligible, and that they acted, in so far as they acted at all in the matter, merely as the nominee of and agent for an American company called Film Group Incorporated, which seems (among other things) to have financed the making of the film to the extent of at least £80,000 under the auspices and direction of the said American director, who happened to be its president. The suggestion that this American company and that director were merely agents for the applicants is, to my mind, inconsistent with and contradicted by the evidence, and a mere travesty of the facts, as I understand and hold them to be.

The applicants' intervention in the matter was purely colourable. They were brought into existence for the sole purpose of being put forward as having undertaken the very elaborate arrangements necessary for the making of this film and of enabling it thereby to qualify as a British film. The attempt has failed, and the respondent's decision not to register " Monsoon " as a British film was, in my judgment, plainly right.

In lieu of the declarations for which the applicants ask, I will declare that the applicants were not the makers of the film called " Monsoon " and that that film is not a British film within the meaning of the Cinematograph Films Acts, 1938 and 1948.

*Judgment for respondent.*

Solicitors: *Edwin Arthur Davis; Solicitor, Board of Trade.*

K. R. A. H.