# Exhibit 22

Case 1:03-md-01570-GBD-SN   Document 415-31   Filed 08/30/04   Page 2 of 20

[HOUSE OF LORDS.]

H. L. (E.)*  MORRIS . . . . . . . . . . Appellant ;
1926                          AND
Nov. 26.  HARRIS (Pauper) . . . . . . . . Respondent.

*Company—Winding Up—Dissolution—Order avoiding Dissolution—Validity*
*of Acts done in the Interval—Companies (Consolidation) Act, 1908*
*(8 Edw. 7, c. 69), s. 223.*

> An order of the Court made under s. 223 of the Companies (Consolidation) Act, 1908, declaring the dissolution of a company to have been void does not affect the validity of proceedings taken during the interval between the dissolution and its avoidance :—
>
> So *held* by Viscount Dunedin, Lord Sumner and Lord Blanesburgh (Lord Shaw of Dunfermline and Lord Wrenbury dissenting).

THE appellant was the liquidator of Morris Russell & Co., Ld., which went into voluntary liquidation on November 21, 1919, for the purposes of reconstruction. The respondent claimed to prove as a creditor of the company in the winding up.

This was an appeal from an order of the Court of Appeal (Pollock M.R., Sargant L.J. and Astbury J.), reversing an order of Romer J. and admitting the respondent's proof.

The facts sufficiently appear from the opinion of Lord Sumner.

The only question of general legal interest raised by the appeal was as to the effect of an order of the Court under s. 223 of the Companies (Consolidation) Act, 1908 (1), avoiding the dissolution of the company upon acts done during the interval between the dissolution and the order of avoidance.

* *Present :* VISCOUNT DUNEDIN, LORD SHAW OF DUNFERMLINE, LORD SUMNER, LORD WRENBURY, and LORD BLANESBURGH.

(1) Sect. 223, sub-s. 1 : " Where a company has been dissolved the Court may at any time within two years of the date of the dissolution, on an application being made for the purpose by the liquidator of the company or by any other person who appears to the Court to be interested, make an order, upon such terms as the Court thinks fit, declaring the dissolution to have been void, and thereupon such proceedings may be taken as might have been taken if the company had not been dissolved."

1926. July 5, 6. *Preston K.C.* and *Croom-Johnson* for the appellant.

*Topham K.C.* and *A. R. Taylour* for the respondent.

The House took time for consideration.

1926. Nov. 26. VISCOUNT DUNEDIN. My Lords, in this case I have had the advantage of perusing the opinion which will be shortly delivered by Lord Sumner. I agree with that opinion in every particular and have nothing to add.

LORD SHAW OF DUNFERMLINE. My Lords, the opinion about to be read by my noble and learned friend Lord Wrenbury so clearly and distinctly expresses the opinion which, after consideration and reconsideration, I have formed upon this case, that I respectfully and entirely adopt it, and I agree with the course which Lord Wrenbury recommends.

LORD SUMNER. My Lords, in 1917 the respondent was engaged as a commercial traveller by three companies, Morris Russell & Co., Ld., Atkey (London), Ld., and another not now material. These businesses and his duties were separate, but the companies engaged him under a written agreement jointly and severally. Next year they dispensed with his services, whereupon he claimed damages for wrongful dismissal. Atkey (London), Ld., ultimately went into liquidation, and the respondent in October, 1921, came to an agreement with the liquidator that he should be placed on the list of creditors in the liquidation for 1075*l.*, but so far nothing has been paid to him.

His claim against Morris Russell & Co., Ld. (called for convenience " the old company "), he pressed further. Accordingly, in August, 1919, the old company claimed arbitration under the agreement, and eventually Sir Walter Schwabe K.C. was appointed arbitrator, and held a first meeting on December 19, 1919. For the purposes of this arbitration the old company had specially retained an eminent firm of commercial solicitors, who did not regularly act for them, and when the respondent's solicitor stated that he heard the

H. L. (E.)

1926

MORRIS
*v.*
HARRIS.

Lord Sumner.

old company had gone into liquidation and that another company, Morris Russell & Co. (1919), whom I shall call "the new company," had agreed to acquire their assets, and that he wished to know what the position in the arbitration really was, counsel instructed on the other side could only say generally, that he did not exactly know how that might be, but there was no desire to take any technical points and that, if the respondent's claim was established, the new company would discharge it. This was the substance of what passed on this occasion. It was then arranged that the firm instructing him should write a letter to this effect, and this letter was written on December 30, concluding thus, "our clients have instructed us to give you a formal assurance, that they are prepared to accept responsibility for any sum awarded to your client either as against the old company or the new company."

Thereafter meetings in the arbitration were held from time to time and, after delays the cause of which does not now matter, an award was made in favour of the respondent for 5964*l.* 16*s.* 8*d.* and costs—taxed at 2121*l.* 5*s.* 2*d.*—on June 6, 1921. No change having been made in the parties, who were formally before the arbitrator, the award was naturally against the old company.

The old company had, however, already been dissolved. The winding-up resolutions had been duly passed in November, 1919. The only object of the reconstruction was to facilitate the raising of fresh capital, and accordingly, the new company having been incorporated and having agreed to take over the old company's assets and to make provision for its liabilities on terms agreed in writing, the liquidator, the present appellant, duly prepared the final balance sheet, and on December 1, 1920, held the final meeting requisite for the conclusion of the winding up. He lodged with the Registrar of Companies the necessary documents, and they appeared in the Gazette in due course. In March, 1921, the old company was formally dissolved, pursuant to s. 195.

Meantime the business went on without change. It was carried on as a going concern throughout. The old board

became the new board, with the addition of one director, and it did not occur to any one that any real change had occurred. The liquidator, acting in perfect good faith, left ·all current business to the directors, and, though aware of the arbitration, took no part in it and gave no instructions. If the reconstruction had been successful, no one would have been one penny the worse.

H. L. (E.)

1926

MORRIS
*v.*
HARRIS.

Lord Sumner.

Unfortunately, the new company got into difficulties, and on May 31, 1921, proposed a scheme of arrangement to its creditors. A meeting of creditors was held on June 15, 1921, at which the respondent attended. He inquired about his claims, but did not vote. Eventually the scheme was approved, and became binding on the unsecured creditors of the new company. Then, some six months later, the respondent claimed to be a secured creditor of the old company, entitled to priority against certain of the new company's assets. Next, he took proceedings to enforce his award, which were dismissed on the ground that the award was against a company which had been dissolved. Afterwards, he issued a writ against the liquidator of the old company, with a personal claim against him for negligence and misfeasance as liquidator, and it was dismissed. Meantime, on February 20, 1923, Astbury J. made an order, declaring the dissolution of the old company to be void under s. 223, and the respondent claimed to be admitted to prove in its liquidation. The liquidator rejected this proof and his decision was affirmed by Romer J. This judgment was reversed by the Court of Appeal. Hence the present appeal is brought to your Lordships.

I agree that the respondent has failed in proving, as he undertook to prove, that " the old company " was, by a tripartite agreement, released from its liability to him, in consideration of the agreement of the " new company " to be bound to him to the same extent as the old company had been bound before.

This is not a case, in which an inference has to be drawn from the conduct of the parties simply, without any special interview at which a specific agreement can be deemed to

256          HOUSE OF LORDS          [1927]

have been made.  If that were all, the dissolution of the old company, coupled with the conduct of Mr. Harris at the meeting of the creditors of the new company, after it had got into difficulties, might with other similar circumstances have gone some distance to justify the inference of a novation.  As the case stands, however, a particular interview on a definite date is vouched as the occasion on which the alleged novation was agreed upon, in the presence of a number of persons, all or nearly all of whom were called as witnesses in the action. After carefully considering the notes of their evidence, I think it is clear that they fall short of proving the novation required.  Even Mr. Cornwall, whose credit and intelligence are of course unimpeached, does not go far enough.  If the circumstances then existing had been such as to raise in the mind of any one present any anticipation of the misfortunes that afterwards befell the new company, the advisability of a novation in the interest of the old company might have suggested itself on the one side, but its unwisdom would equally have presented itself on the other.  In fact, no one thought of it, or of the materiality, except for formal purposes, of considering the difference between the two companies at all. With every respect to Romer J. I think that he has rather considered what contract the old company ought to have made, if its liquidator had been more prescient, than what contract was made in fact.

When the new company "assumed" liability for the obligations of the old one to Mr. Harris, that liability was in terms and, so far as it went, was in fact a cumulative, not a substitutional liability.  I do not think it is correct to say that in that case it was nudum pactum.  If consideration had to be proved, I think it could be found in the consent of Mr. Harris to go on with the arbitration proceedings in their existing form instead of stickling for correctness by discontinuing the existing proceedings and putting himself and his de facto opponents to the trouble and expense of beginning the arbitration afresh.  As to the supposed advantage to the new company of being able after a novation to dispose freely of the old company's assets, earmarked for the

satisfaction of Mr. Harris's claim, there is no evidence to show that it was of any practical moment, and I do not think it was ever considered.

The next question turns on the language and effect of s. 223 of the Companies (Consolidation) Act, 1908. It deals with the case of a company which has been dissolved, and that at an ascertained or ascertainable date. It provides for an order, which it empowers a Court to make in all such cases, on such terms as the Court may think fit (and therefore also without terms, if the Court so thinks fit) "declaring the dissolution to have been void." Pausing here, I remark that the order is not expressed to be one setting anything aside or declaring that the dissolution is to be deemed not to have taken place and thus reversing the actual language of s. 195, or declaring the dissolution to be void. Nor, again, is the phraseology of s. 242 followed, whereby, when the registrar has reasonable cause to believe certain things and has taken certain action, ending in the erasure of the company's name from the register and a publication of the fact in the Gazette, the company thereupon "shall be dissolved." Under this section, when the Court intervenes by order to modify this result, "the company shall be deemed to have continued in existence, as if its name had not been struck off," and then the Court can give directions to replace the company and all parties affected in an "as you were" position. The words "to have been void," in s. 223, appear, it is true, so far as they go, to have some retrospective effect, and tend to some extent to support the respondent's argument. On the other hand, the remaining words, which define the order, point rather to a declaration removing a bar to such action as might otherwise have been taken, than to one validating past proceedings, taken since the dissolution through ignorance or disregard of it and consequently invalid. The remaining words, "and thereupon such proceedings may be taken, as might have been taken if the company had not been dissolved," seem to me to point conclusively in the same direction. They describe an authority given to the parties concerned to do,

H. L. (E.)

1926

MORRIS
v.
HARRIS.

Lord Sumner.

H. L. (E.)
1926
MORRIS
v.
HARRIS.

Lord Sumner.

" thereupon " and accordingly thereafter, things which they might have done but obviously had not done theretofore, and, but for the order, could not have done after the dissolution. I think these words do not affect the validity or the contrary of steps taken during that interval. They must still depend on the facts existing and the rights arising before and independently of the order.

It is to be remembered what the scheme of the Act is. The statutory dissolution does not take place till three months have passed from the time when the registrar has registered a return, made to him by the liquidator and stating that, having brought the liquidation to an end, he has embodied the results in a final winding-up account, which he has submitted to a general meeting. If the liquidator here had attended to matters himself, instead of " delegating " them, as he calls it, to the directors of the new company, no doubt the winding up would have been complete, as the Act intended it to be, and proper provision of some kind would have been made for Mr. Harris's claim. Accordingly, the last three months of the life of the old company would have been, as they ought to have been under the statute, a period during which the company, stripped of its property and discharged from its debts, would have simply awaited dissolution. In case, however, of accidents there is a provision in s. 194, sub-s. 4, that the Court may make an order deferring the date at which the dissolution is to take effect.

My Lords, I think it follows that only in the rarest cases and always contrary to the contemplation of the Act is it possible for proceedings to have continued in fact during these three months when the company is moribund, and further that after dissolution, which is an event calculable by anybody from a date, of which public notice has been given, whatever is done is done at the actor's peril. The Legislature would never have bestowed on the Court a power to declare the dissolution void, without imposing terms, as by the section it certainly is empowered to do, if the effect of this order of avoidance might be to undo the reversion of freeholds to an original grantor or the acceleration of a

reversioner's immediate title to leaseholds in the case of lands accidentally undisposed of in the winding up (Co. Litt. 136 ; *Hastings Corporation* v. *Letton* (1) ; *In re Woking Urban Council (Basingstoke Canal) Act*, 1911 (2) ; *In re Albert Road, Norwood* (3)) ; yet such would be the effect of the construction contended for, with a consequent avoidance of all dispositions made by such grantor or reversioner in favour of third parties, wholly innocent of any irregularity. This must be the result, if the judge's order simply puts back the clock and restores things, as though the dissolution had never been. Accordingly, I see no reason why the Legislature should be deemed to have had in its contemplation any intermediate proceedings. They must in any case be so rare and exceptional, that they might well either be passed over unconsidered òr, if considered, be left by the Act to the ordinary operation of the law. The object of the provision was, I think, to give a fresh start to proceedings, which owing to the dissolution had been impossible and had not been taken, and thereupon it was to be open to those concerned to take them in the future as if the dissolution had not happened. In my opinion most of the proceedings in the arbitration in this case, and, above all, the award itself, are null, for they were taken and made against a company which did not exist, and no subsequent validity has been or could be given to them. The respondent must therefore prove his claim afresh in proceedings, to which the appellant will be a party.

As to the Atkey (London), Ld., claim, I think on the facts that there was an accord between the respondent and Atkey, Ld., who were joint and several debtors with the old company, and that the accord is effectual to bind the respondent in so far as it agrees to qualify and limit his claim, but I do not think that the accord has been followed by any satisfaction. The fact that under the accord his name was to be placed on the list of the admitted creditors of Atkey, Ld., is not a satisfaction, unless and until it is followed by some

H. L. (E.)

1926

MORRIS
*v.*
HARRIS.

Lord Sumner.

(1) [1908] 1 K. B. 378.      (2) [1914] 1 Ch. 300.
(3) [1916] 1 Ch. 289.

H. L. (E.)
1926
MORRIS
*v.*
HARRIS.

Lord Sumner.

payment of the agreed debt, and then only to the extent of any sums paid in respect of it. Accordingly the respondent will be entitled as against the liquidator to prove for such amount, not exceeding 1075*l.* in all, as may still be due from and unpaid by Atkey, Ld., as well as for such sums as he can prove in respect of his direct claim on the old company.

LORD WRENBURY. My Lords, the appellant, the liquidator of the old company, contends that on December 19, 1919, before the arbitrator there was a novation, whereby the old company was released from liability to the respondent and the liability of the new company was given and taken in substitution. The facts relevant to the decision of this question lie in a small compass. We have been referred to a number of letters which passed between the parties. I do not find it necessary upon this point to refer to any of them. The relevant facts are simply as follows. There were before the arbitrator as represented by counsel all three parties if and only if the old company was there. Upon this part of the case, therefore, it must be part of the appellant's case that the old company was there by solicitors and counsel representing it. I must presently say something as to whether this was so in fact, but for the moment I will in favour of the appellant assume that it was so. If it was not then there could be no novation, for upon that hypothesis the old company was not present. As to the other two parties, the one—namely, Mr. Harris— was present by counsel, and the new company was also present if, as I have no doubt was the fact, Messrs. Coward & Co. represented it and were there as representing it.

The old company was in liquidation—the new company had been formed—the directors were the same as before, and, as it was expressed by the witnesses, there had been no break in the business. It is clear, I think, that the parties, under these circumstances, largely ignored the fact that the old company and the new company were in law distinct entities. They were indifferent whether the one or the other paid or remained or became liable to pay the debt. But that by

no means decides the question of novation. The parties contractually bound by the arbitration clause were Mr. Harris and the old company. The new company was not bound by it. The arbitration, which all parties were treating as valid, whether it was, in fact, valid or not (a question upon which again I will say something presently), was between Mr. Harris and the old company. The new company was not a party to the arbitration clause and was not a party over whom the arbitrator had jurisdiction. Under these circumstances the arbitrator, who was called as a witness, says (reading his note) : " Somebody representing Harris—Bartley, I think—called attention to fact that respondent company was in voluntary liquidation for reconstruction and asked how he stood. Discussion ensued between Cornwall of Coward & Hawksley and Jowitt and statement was made to Bartley in my presence coming from respondents to arbitrate—You needn't trouble—You can treat them all as one—and if you get anything on your arbitration—new company will see you are paid—No question of releasing the old company or novation otherwise I should not have gone on in the absence of new company."

Mr. Jowitt was counsel, instructed by Messrs. Coward & Co. That firm was acting also for the new company. Cornwall was managing clerk of Messrs. Coward. The situation as indicated by the arbitrator is so obviously correctly stated that it is, in my opinion, impossible to do otherwise than accept it. The new company was no party to the arbitration. If there was novation it would be impossible to go on unless the new company was brought under the arbitrator's jurisdiction as a party who by novation had become liable in place of the old company who had been released. Nothing was done to bring them there. " There was no question," says the arbitrator, " of releasing the old company or novation otherwise I should not have gone on in the absence of new company." Absence here means, of course, absence as a party over whom he had jurisdiction. There may have been presence in fact if, as I have no doubt, Messrs. Coward who were there represented them.

H. L. (E.)

1926

MORRIS
v.
HARRIS.

Lord Wrenbury.

H. L. (E.)

1926

MORRIS
*v.*
HARRIS.

Lord Wrenbury.

My Lords, upon these facts there was, in my opinion, no novation.

For decision of the rest of the case three questions have to be considered: First, was the arbitration duly instituted? The facts are as follows.  By letter of August 13, 1919, the old company, writing to Mr. Harris, gave notice to arbitrate, and requested Mr. Harris to appoint an arbitrator.  They asked him to prepare his case for arbitration.  Some negotiations seem to have taken place, but they came to nothing, and on December 1, 1919, Messrs. Gedge & Co., for Mr. Harris, addressed a letter to Messrs. Coward & Co., in which they said they understood that the latter were acting for the old company, and referring to arbitration as necessary suggested the appointment of a sole arbitrator.  On December 2 Messrs. Coward replied asking Messrs. Gedge to send the names of several King's Counsel and they would take their client's instructions in the matter.  On December 3 Messrs. Gedge sent names.  On December 4 Messrs. Coward replied.  Other letters passed on December 8 and 9, and in the result Mr. Schwabe was agreed upon as arbitrator, and it was agreed that the parties should be represented by junior counsel only.  In the course of this correspondence the subject cropped up of the old company being in liquidation and of the registration of the new company.  On December 1 Gedge & Co. wrote that the old company was the party to the contract which contained the arbitration clause, and asking : " Do you suggest that it is the new company—namely, Morris Russell, 1919, Ld.—who would be parties to the arbitration ? " On December 11 Messrs. Coward replied : " It would be more convenient if the new company were made parties to the arbitration.  However, if you prefer otherwise it does not in the least matter."  There the matter rested.  The new company were not made parties to the arbitration, and in that state of things the preliminary meeting before the arbitrator took place on December 19.

Upon these facts it seems to me that the old company by Messrs. Coward & Co. were before the arbitrator on December 19 as the party to the arbitration, and that the

new company (although present as parties interested) were
not before the arbitrator as parties to the arbitration. The
liquidator says he was not consulted in the matter. The
fact, however, seems to have been that the directors of
the old company and of the new company being the same
the liquidator left in the hands of the directors the conduct
of this matter. I hold that there was an arbitration duly
constituted between Mr. Harris and the old company,
and that to this arbitration the new company were not
parties.

Secondly. The following point arises. The arbitration was
postponed from 1919, and was not, in fact, held until after
March 3, 1921. The award was made on June 6, 1921. In
the interval between 1919 and 1921 the liquidator had in
December, 1920, made his final return under s. 195 of the
Companies (Consolidation) Act, 1908. It had been registered,
and by virtue of s. 195, sub-s. 4, the old company on March 3,
1921, was "deemed to be dissolved." However, on Feb-
ruary 20, 1923, Astbury J. made, under s. 223 of the Act,
an order declaring the dissolution "to have been void." The
award, therefore, was made at a time when the company
was to be "deemed to be dissolved," but this dissolution
was by subsequent order declared "to have been void." It
is not necessary to consider what would have been the result
of these provisions of the Act if during what I may call the
suspense period acts had been done which affected third
parties. The whole question here is whether the liquidator
who, in fact, was a party to the arbitration in 1921, can say
that the arbitration does not bind him, and that (looking at
the last words of s. 223) such proceedings cannot be taken
to enforce the award as might have been taken if the company
had not been dissolved. In my opinion he cannot support
that contention. The order made under s. 223 declaring
the dissolution "to have been void" operates to displace the
state of facts in June, 1921, as they would have been in the
absence of that order, and substitutes a state of facts in which
there was in June, 1921, no dissolution. The result, in my
judgment, is that at the date of the award it must be taken

H. L. (E.)
1926
MORRIS
*v.*
HARRIS.

Lord Wrenbury.

that the dissolution, although then existing, was then a void dissolution and the award was good, and such proceedings can be taken upon it as might have been taken if the company had not been dissolved.

Thirdly. A further point arises as to a sum of 1075*l.*, which on October 5, 1921, was agreed as being in settlement of a claim by Mr. Harris in respect of which he was to be placed on the list of creditors of Atkey (London), Ld., which was then in liquidation. This was a sum due under the agreement of September 26, 1917, in respect of which the three companies, of which the old company was one, were jointly and severally liable. The agreement of October 5, 1921, was not, I think, accord and satisfaction of this debt. It remains a debt in respect of which the old company was severally liable, and the amount of their liability remains yet to be ascertained.

The result, therefore, is that the order of the Court of Appeal reversing the order of Romer J. should be affirmed, and that a proof should be admitted for the amount of the award, and that as regards the 1075*l.* a proof should be admitted for such sum as Mr. Harris can establish, but not exceeding 1075*l.*

LORD BLANESBURGH (read by VISCOUNT DUNEDIN). My Lords, left to myself, I confess that, with the learned judge, Romer J., I would in this case have reached the conclusion, despite all technical difficulties obstructing the road to it, that there was here effected on December 19, 1919, an arrangement, indorsed by Messrs. Coward's letter of December 30, 1919, under which the new company assumed direct but sole liability to the respondent for the consequences of his dismissal by the old company. That assumption of liability involved a condition of the first importance to the new company, though of little or no moment, as it then seemed, to the respondent—namely, that the liability to him of the old company should *eo instanti* disappear. In the case of every other creditor of the old company, including even its bankers after some little delay, this assumption of liability,

H. L. (E.)
1926
MORRIS
v.
HARRIS.
Lord
Blanesburgh.

on these terms, was effected by express novation. Left to
myself, I should have reached the conclusion that, though
less formally, the same result was both intended and achieved
in relation to the respondent's claim. That result was alone
of any value to the new company, its purpose from beginning
to end being that as the sequel of its assumption of direct
and sole liability for the debts of the old company, an imme-
diate transfer to itself of the entire undertaking of that com-
pany might be made possible, the continuance of the business
without break and with increased resources be facilitated,
the liquidation of the old company, thus reduced almost to
a formality, be brought to a speedy close, the way to the
dissolution of that company be opened, and the opportunity
afforded to the new company of assuming—I had almost
said resuming—the old company's name be presented to it
at the earliest moment. And it appeared to me, no suggestion
of fraud or sharp practice being either open or made, that
except on that footing no reasonable explanation was forth-
coming either of the complete aloofness of the liquidator
of the old company from the arbitration proceedings or of
the old company's dissolution carried out as that dissolution
was with the new company's knowledge and before these
proceedings even reached a hearing.

And left to myself, my Lords, I should have reached the
conclusion that the respondent, too, appreciated and accepted
the condition. Of the view of the Court of Appeal that the
assumption by the new company of a liability additional to
the existing liability of the old was all that had taken place,
nothing confirmatory is, almost admittedly, to be found in
the actions either of the new company or the liquidator;
nothing as I thought in those of the respondent. For, incon-
sistent as has been his attitude at different times in this
matter, he has at no time, as it seemed to me, treated his
rights as being those declared by the Court of Appeal. While
his conduct up to the change of solicitors on or about
December 31, 1921, indicates no trace of any claim reserved
against the old company, his invariable course since that
date has been to ignore the existence or attitude of the new

H. L. (E.)
1926
——
MORRIS
*v.*
HARRIS.
——
Lord
Blanesburgh.
——

company altogether. He did not even bring into account, in reduction of his claim for damages against the liquidator personally, either the 25 per cent. of that total claim which the new company had ready for him in cash or the amount of any value attributable to the balance of debentures which were his for asking.

My Lords, I had prepared a reasoned and detailed statement on the above lines, when I became aware that your Lordships were all resolved that the old company had not, by reason of anything that happened on October 19, 1919, been released from liability to the respondent. I bow readily to so strong an intimation of judicial opinion upon an equivocal question on which one cannot but be distrustful of one's own views made more difficult as they are by technical considerations. Accordingly, my Lords, I do not trouble your Lordships further on this branch of the case. I do not resist the decision upon it intimated by all your Lordships who have preceded me.

Thereupon at once arises the second question—one which did not receive in the Court of Appeal the consideration devoted to it in your Lordships' House. The respondent is entitled to prove in the revived liquidation of the old company for any damages for breach of his contract with that company that he can establish. But is the liquidator, as the Court of Appeal has held, bound to admit his proof for the sum awarded by Sir Walter Schwabe ? In other words, is that award binding in any sense upon the old company or its liquidator ?

My Lords, on this subject I find myself in entire agreement with my noble and learned friend Lord Sumner, whose judgment I have had the advantage of seeing in print.

The whole question turns upon the effect of Astbury J.'s order of February 20, 1923, under which, in terms unqualified in every relevant sense, he declared the dissolution of the old company " to have been void." That order was made in pursuance of power conferred upon the learned judge by s. 223 of the Companies (Consolidation) Act, 1908, and this present question depends entirely upon the effect, under that section, of such an order.

My Lords, the Companies (Consolidation) Act, 1908, makes the dissolution of one of its companies possible in three different events.

First of all, a company treated as defunct by the registrar in the circumstance stated in s. 242, may by him be struck off the register under that section, " and the company will be dissolved." It must be noted that in this case the dissolution takes place without any previous winding up and may be effected without any one interested in the company in fact being aware of it. Sub-s. 6 of s. 242 accordingly provides : " If a company or any member or creditor thereof feels aggrieved by the company having been struck off the register, the Court on the application of the company or member or creditor may, if satisfied that the company was at the time of the striking off carrying on business or in operation, or otherwise that it is just that the company be restored to the register, order the name of the company to be restored to the register, *and thereupon the company shall be deemed to have continued in existence as if its name had not been struck off ; and the Court may by the order give such directions and make such provisions as seem just for placing the company and all other persons in the same position as nearly as may be as if the name of the company had not been struck off.*"

My Lords, this section first appeared in company legislation in s. 26 of the Companies Act, 1900. It was before the Legislature when s. 223 was first enacted in 1907. It will appear in a moment how significant is the fact that the provisions of s. 242, sub-s. 6, which I have italicized, are not repeated in s. 223.

That section is concerned with a dissolution of a company following a winding up by the Court or one following a voluntary winding up the second and third of the events which may precede a dissolution. Sect. 172 regulates dissolution complementary to a compulsory liquidation. When the affairs of the company have been completely wound up the Court is to make an order that the company be dissolved from the date of the order, "and the company shall be dissolved accordingly." Sect. 195 regulates dissolution succeeding a

H. L. (E.)

1926

MORRIS
*v.*
HARRIS.

Lord
Blanesburgh.

H. L. (E.)
1926
MORRIS
*v.*
HARRIS.

Lord
Blanesburgh.

voluntary winding up.  The liquidator, as soon as the affairs of the company are fully wound up, convenes by advertisement a final meeting of the company and lays before it an account of the winding up.  Within a week after the meeting the liquidator must make a return to the registrar of the holding of the meeting and its date ;  on receipt the registrar must forthwith register the return, and on the expiration of three months from that registration " the company shall be deemed to be dissolved." Sect. 223, which, as I have already indicated, did not appear in company legislation until the Act of 1907, applies equally but exclusively to a company which has been " dissolved accordingly " under s. 172, and to a company which has been " deemed to be dissolved " under s. 195, and an order under that section may be made at any time " within two years of the date of the dissolution."

In these circumstances, I cannot myself doubt that both the words of s. 223 empowering the Court to make an order " declaring the dissolution to have been void," and the following words expository of the result, " and thereupon such proceedings may be taken as might have been taken if the company had not been dissolved," were in each case designedly chosen to produce the precise result which my noble and learned friend has attributed to them.  It is true that a declaratory order under the section unqualified in terms does, and it was in my judgment essential, if many difficulties which readily occur to the mind were to be avoided, that such an order should have the effect of restoring to the revived company its corporate existence as from the very moment of the dissolution thereby declared " to have been void."  But the expository words which follow carefully and, as I think, advisedly refrain from adding that such an order is to have the effect of restoring to the company from the same moment, not its corporate existence only, but its corporate activity also.  On the contrary, these expository words import, as I think, that it is only after the order has been made—it is " thereupon " but not before—that any active consequences are to ensue.

I think, my Lords, that the terms in which these conse-
quences are described are exhaustive and emphatic. They
are intended to show that an order under the section made,
it may be, as long as two years after a dissolution which
up to that moment was completely effective, is not at once
and as of course to ratify acts done during the interval, which,
if done at all, must necessarily have been acts of mere
usurpation, by a liquidator or other pretended agent with
no office knowingly done on behalf of a company which had
no existence. On consideration, it appears, I think, clear
that automatically to validate such acts as being the acts
of a duly constituted officer on behalf of a duly incorporated
company might involve consequences too disastrous to be
even envisaged. These are avoided by the terms of the
section. The company is restored to life as from the moment
of dissolution but, continuing a convenient metaphor, it
remains buried, unconscious, asleep and powerless until the
order is made which declares the dissolution to have been
void. Then, and only then, is the company restored to
activity.

And now is made apparent the reason for the difference
in phraseology and effect between s. 223 and sub-s. 6 of s. 242.
A dissolution under s. 242, as I have said, is preceded by no
winding up, and the section had to envisage a dissolution
which might have taken place without the knowledge of
any one concerned in the company. Hence the wide powers
given to the Court by sub-s. 6. Sect. 223, on the other hand,
is confined to cases where the dissolution succeeds the complete
winding up of the company's affairs and cannot take effect
at all except at the instance or with the knowledge of the
liquidator, the company's only executive officer. The Legis-
lature has not seen fit to make provision for validating any
intermediate acts done on behalf of such a company so
dissolved.

In my judgment, accordingly, the arbitration proceedings
which abated on the dissolution of the old company thereby
became abortive and have in no sense been reconstituted as
a result of Astbury J.'s order. In my opinion the result is

H. L. (E.)

1926

Morris
*v.*
Harris.

Lord
Blanesburgh.

H. L. (E.)
1926
MORRIS
*v.*
HARRIS.

Lord
Blanesburgh.

that expounded by my noble and learned friend, with whom also I am in entire accord as to the respondent's claim against Atkey, Ld.

He is entitled to prove in the liquidation of this company for such amount, not exceeding 1075*l.* in all, as he can show to be still due from and unpaid by Atkey, Ld.  That right, with the further right to prove for such sum as he can show to be payable to him in respect of his direct claim against the company is, in my judgment, the measure of his rights in this liquidation.

> *Order of the Court of Appeal varied by omitting para. 2 of the said order and, subject to the said variation, affirmed.  Cause remitted back to the Chancery Division of the High Court, Companies (Winding-up), with a direction that the respondent was entitled to prove in the liquidation of Morris Russell & Co., Ld., referred to in the case as "the old company," for such sums as he can establish : (1.) for damages for breach by them of the contract of service and/or for commission and profits, and (2.) for his claim against Atkey (London), Ld., not exceeding the sum of one thousand and seventy-five pounds (1075l.).  The costs of the appellant and respondent respectively, incurred in respect of the appeal to this House to be taxed as between solicitor and client, the costs of the respondent to be taxed in the manner usual when the respondent defends his interest in the appeal in forma pauperis.*
>
> *Lords' Journals,* Nov. 26, 1926.

Solicitors for the appellant : *Goodman, Saunders, Squires & Co.*

Solicitors for the respondent : *Arnold, Fooks, Chadwick & Co.*