# Exhibit 23

SALTON *v.* NEW BEESTON CYCLE COMPANY.   STIRLING J.

[1898 S. 724.]

1899

Nov. 1, 8.

*Principal and Agent—Warrant of Authority—Solicitor—Authority to Defend Action in Name of Company—Revocation of Authority—Notice of Revocation—Payment by Defendant's Solicitor of Plaintiff's Costs of Abortive Action—Company—Dissolution pendente lite—Judgment against Dissolved Company—Jurisdiction.*

A solicitor had originally authority to defend an action in the name of a company, but his authority was revoked by the dissolution of the company shortly before the trial. The trial of the action was delayed owing partly to the state of the business of the Court and partly to the pleadings being amended. The action was tried on the assumption that the company was in existence, and judgment was given for the plaintiff. Neither the solicitor nor the plaintiff knew till after the trial that the company had been dissolved; but on the day of the trial the solicitor was informed that the company had held its final meeting, and he took no steps to ascertain whether or not it had been dissolved. Upon motion by the plaintiff that the solicitor might be ordered to pay his costs of the action as from the date of the dissolution of the company:—

*Held,* (1.) (distinguishing *Whiteley Exerciser, Limited* v. *Gamage,* [1898] 2 Ch. 405) that the judgment was invalid against the company for want of jurisdiction; (2.) that the solicitor having originally authority to represent the company was not liable for acting on that authority after it had been revoked by the dissolution of the company until he knew or, by the exercise of due diligence, might have known of the dissolution; (3.) that on the day of the trial the solicitor did not use due diligence in ascertaining whether or not the company had been dissolved, and that he ought to pay the plaintiff's costs of the action after that date as between solicitor and client.

The principle of *Smout* v. *Ilbery,* (1842) 10 M. & W. 1, applies to a solicitor representing a party in an action, and it applies to a revocation of authority by the dissolution of a company as well as by the death of an individual.

THIS was a motion on behalf of the plaintiff that the proceedings in the action might be set aside as from November 12, 1898, and that the solicitors for the defendant company, Messrs. Hughes & Masser, might be ordered to pay to the plaintiff his costs of those proceedings as between solicitor and client. The writ in the action was issued on February 25, 1898, and on March 4 an appearance was entered on behalf of the defendant company. On March 17, 1898, the statement of claim was

44 CHANCERY DIVISION. [1900]

STIRLING J.

1899

SALTON
v.
NEW BEESTON
CYCLE
COMPANY.

delivered; on April 13 the defence was put in; on April 18 the reply was delivered, and on April 20 the action was set down for trial. On November 18, 1898, the statement of claim was amended, and on December 9 the defence was amended. On February 1, 1899, the defence was re-amended, and on February 14 an order for particulars was made.

The action was tried on March 16, 1899, and on March 23 judgment was given for the plaintiff against the defendant company for 566*l*. 13*s*. 4*d*. and costs. (1) When the plaintiff came to enforce his judgment it was discovered that the company had been dissolved on November 12, 1898, whereupon notice of the present motion was served.

It appeared that at extraordinary general meetings of the company held on October 14 and November 2, 1897, resolutions were passed for the voluntary winding-up of the company, and a liquidator was appointed and directed to carry into effect two contracts for the sale of the assets of the defendant company to two new companies proposed to be formed. One of these new companies was the Beeston Cycle Company, which took over certain assets and liabilities of the defendant company (including the liability to the plaintiff which was the subject of the present action), and by the agreement for sale that company was authorized to defend in the name of the defendant company all actions brought against it with reference to the liabilities so taken over. On February 26, 1898, the writ in this action was left by the liquidator of the defendant company, or by his direction, with the solicitors of the Beeston Cycle Company with instructions to attend to it. The solicitors thereupon brought the matter before the directors of the Beeston Cycle Company, and, by their instructions, appeared to the writ and defended the action.

It now appeared that on July 25, 1898, the liquidator held a final meeting of the defendant company pursuant to s. 142 of the Companies Act, 1862, and made a return of that meeting to the registrar on August 4, and that the return was registered on August 12. Consequently, by virtue of s. 143 of the Act, the defendant company was on November 12, 1898, dissolved.

(1) See [1899] 1 Ch. 775.

Case 1:03-md-01570-GBD-SN   Document 415-32   Filed 08/30/04   Page 4 of 9

The solicitors had no knowledge of these facts until March 16, 1899, the day of the trial. On that day Mr. Masser was informed that the liquidator had called the final meeting of the defendant company, but he was not informed whether the final return of the meeting had been filed with the registrar, and he took no steps to ascertain whether the company had actually been dissolved or not.

*Jenkins*, Q.C., and *T. L. Wilkinson*, for the plaintiff. It has been decided that a plaintiff in whose name an action has been brought by a solicitor without authority can apply to the Court and obtain an order against the solicitor for payment of the costs occasioned by the unauthorized use of his name: *Fricker v. Van Grutten* (1), and a similar order has been obtained by a defendant whose name has been used without authority in defending an action: *In re Gray*. (2) It has also been decided that a defendant who is injured by the unauthorized use of the plaintiff's name may obtain costs against the solicitor: *Geilinger v. Gibbs*. (3) The question here is whether a plaintiff who is injured by the unauthorized use of the defendant's name is entitled to similar relief. This is the converse of *Geilinger v. Gibbs* (3), and the same reasoning applies. The authority of the solicitors expired on November 12, when the company ceased to exist, and, inasmuch as the plaintiff has incurred fruitless expense in consequence of these solicitors acting without authority, the Court will order them to pay him the costs of the abortive proceedings as between solicitor and client: *Nurse v. Durnford*. (4) The knowledge of the solicitors is immaterial; the question is whether or not they had the authority.

*Upjohn*, Q.C., and *Younger*, for the solicitors. No case has been made out for making the solicitors pay costs.

First, there is here a valid judgment binding on the company. The solicitors had authority to represent the defendant company when this action was commenced and when it was set down for trial, and the subsequent dissolution of the company

(1) [1896] 2 Ch. 649.   (3) [1897] 1 Ch. 479.
(2) (1891) 65 L. T. 743.   (4) (1879) 13 Ch. D. 764.

Stirling J.
1899
Salton
v.
New Beeston
Cycle
Company.

does not affect the jurisdiction of the Court to try the action. The delay in the trial of the action was due to the state of business in the Court, and consequently the maxim "Actus curiae nemini facit injuriam" applies: *Whiteley Exerciser, Limited* v. *Gamage* (1); *In re Crookhaven Mining Co.* (2); and see *Cumber* v. *Wane*. (3) If this action had been tried when it was ready for trial, this question would never have arisen. The cases cited by the plaintiff are distinguishable because in those cases the solicitor had no initial authority, and they proceeded on the principle that the litigation was a nullity: see *Reynolds* v. *Howell*. (4)

Secondly, the solicitors having received authority in the first instance to represent the company, they are under no liability for having acted on that authority after it had expired until they had notice of its expiration: *Smout* v. *Ilbery* (5); and they had no notice of the dissolution of the company till after the trial. The Court has a discretion in the matter, and it will not make an order against a solicitor for payment of costs unless something amounting to professional negligence or professional misconduct is proved against him: *Wade* v. *Keefe*. (6)

[Stirling J. Is not that inconsistent with the English authorities?]

*Geilinger* v. *Gibbs* (7), which points the other way, is inconsistent with the decision of the Court of Appeal in *La Compagnie de Mayville* v. *Whitley* (8), and cannot be supported.

[Upon the question of the quantum of costs they referred to *Newbiggin-by-the-Sea Gas Co.* v. *Armstrong* (9) and *Nurse* v. *Durnford*. (10)]

*Jenkins*, Q.C., in reply. The solicitor must be treated as warranting the continuation of the authority as well as the inception of it. This judgment is a nullity, because at that

(1) [1898] 2 Ch. 405.
(2) (1866) L. R. 3 Eq. 69.
(3) (1718) 1 Sm. L. C. 10th ed. 325.
(4) (1873) L. R. 8 Q. B. 398.
(5) 10 M. & W. 1.
(6) (1888) 22 L. R. Ir. 154.
(7) [1897] 1 Ch. 479.
(8) [1896] 1 Ch. 788, 803.
(9) (1879) 13 Ch. D. 310.
(10) 13 Ch. D. 764.

date there was no company in existence. It cannot be enforced by a winding-up petition or otherwise, for the Court has no jurisdiction to go behind the dissolution, except possibly on the ground of fraud: *In re London and Caledonian Marine Insurance Co.* (1) In *Whiteley Exerciser, Limited* v. *Gamage* (2) judgment had been obtained before the company was dissolved, and the learned judge was dealing with the amount of the costs payable under the judgment. That case may be distinguishable from the present upon that ground. If not distinguishable, it is inconsistent with the decision of the Court of Appeal in *In re London and Caledonian Marine Insurance Co.* (1), and ought not to be followed.

STIRLING J.

1899

SALTON
v.
NEW BEESTON
CYCLE
COMPANY.

*Cur. adv. vult.*

Nov. 8. STIRLING J., after stating the facts, and expressing his opinion that the legal advisers of the defendant company, upon being informed that the final meeting of the company had been held, ought to have examined the documents at the office of the Registrar of Joint Stock Companies in order to ascertain whether or not the company had been dissolved, and, further, that the fact of the dissolution, when ascertained, ought to have been mentioned to the judge who tried the action, continued as follows:—

It was not disputed that the solicitors had authority to appear and defend the action down to November 12, 1898, but it was contended that their authority terminated on that day. On the other hand, it was contended, mainly on the authority of *Whiteley Exerciser, Limited* v. *Gamage* (2), that the judgment was perfectly valid. In that case, on August 5, 1897, the plaintiff's action was dismissed with costs. The defendant proceeded to tax his costs, and the taxing master made his certificate. On February 4, 1898, the defendant took out a summons to vary the certificate, but owing to the state of business it did not come on until July 15 following. In the meantime on April 14 the company was dissolved in the same way as in the present case. It was held by North J. that the summons could proceed, and he made an order on it adverse to

(1) (1879) 11 Ch. D. 140.  (2) [1898] 2 Ch. 405.

48                    CHANCERY DIVISION.              [1900]

Stirling J.
1899

Salton
v.
New Beeston
Cycle
Company.

the company. That decision, as I understand it, rested on the ground that the delay was entirely due to the state of business in the Court, and consequently that the maxim "Actus curiae nemini facit injuriam" applied: see *Cumber* v. *Wane.* (1) In my opinion, however, that reasoning does not apply to the present case, for the simple reason that the delay is not shewn to have been entirely due to the state of business of the Court. The action was no doubt set down for trial on April 20, and would have been ripe for trial so far as the Court was concerned early in May; but long after that it was found necessary to amend the pleadings and even to re-amend the defence. The delay, therefore, was partly attributable to the parties themselves.

It was further contended that the solicitors were not liable, because they had originally authority to defend the action, and had no knowledge that the authority had been revoked by the dissolution of the defendant company. Upon this branch of the law the case of *Smout* v. *Ilbery* (2) is the leading authority. There a man who had been in the habit of dealing with the plaintiff for meat supplied to his house went abroad, leaving his wife and family resident in this country, and died abroad. It was held that the wife was not liable for goods supplied to her after his death, but before information of his death had been received; and that decision was given notwithstanding that there was no remedy against the estate of the deceased. Alderson B., in the course of his judgment, said (3): "Here the agent had in fact full authority originally to contract, and did contract in the name of the principal. There is no ground for saying, that in representing her authority as continuing she did any wrong whatever. There was no mala fides on her part— no want of due diligence in acquiring knowledge of the revocation—no omission to state any fact within her knowledge relating to it, and the revocation itself was by the act of God. The continuance of the life of the principal was, under these circumstances, a fact equally within the knowledge of both contracting parties. If, then, the true principle derivable from the cases is, that there must be some wrong or omission of right

(1) 1 Sm. L. C. 10th ed. 325.          (2) 10 M. & W. 1.
                 (3) 10 M. & W. 10.

on the part of the agent, in order to make him personally liable on a contract made in the name of his principal, it will follow that the agent is not responsible in such a case as the present. And to this conclusion we have come."

This judgment is referred to with approval in Story on Agency, s. 265 a, "upon the ground that the continuance of the life of the principal must be deemed to be a fact equally within the contemplation of both parties, as the basis of the contract; and, consequently, neither is deceived or misled by the other as to the conditions essential to give it validity. In short, each understands that the contract proceeds upon the presumption, that the principal is still living, and capable of being bound by the contract, and that the agent only stipulates for good faith and the existence of an original authority to make the contract." It has now to be considered whether this principle applies to the present case. That was a case of an agent entering into a contract for a principal, but the principle laid down is one of the general law of agency. A solicitor is an agent of a special kind. By entering an appearance on behalf of his client he represents or warrants to the opposite party that he has authority so to do; if it turns out that he has not he is liable. That is well established, and has been decided in many cases. No hardship is thereby thrown on the solicitor, because it is his initial duty, both as regards his client and third parties in entering upon the defence or the prosecution of an action, to obtain from his client a proper retainer. But why should a solicitor warrant anything to the opposite party in the further stages of the action beyond that which is termed by Story " good faith," including the use of due diligence in ascertaining whether anything has happened which may have the effect of terminating his authority? It seems to me that the principle laid down in *Smout* v. *Ilbery* (1) applies to a solicitor appearing for a party in an action and known to the opposite party to be such, and applies just as much to the dissolution of a legal entity as to the death of a living person. In my opinion the solicitors ought not to be held liable for any costs down to March 16, 1899. I think, however, that on

STIRLING J.
1899
SALTON
v.
NEW BEESTON
CYCLE
COMPANY.

(1) 10 M. & W. 1.

50 CHANCERY DIVISION. [1900]

STIRLING J.

1899

SALTON
v.
NEW BEESTON
CYCLE
COMPANY.

that day Mr. Masser did not use due diligence to ascertain whether the defendant company was dissolved or not, and that any costs incurred by the plaintiff after that day ought to be borne by the solicitors. There will be no costs of the present application.

*Jenkins*, Q.C. The costs to be paid by the solicitors will be as between solicitor and client.

STIRLING J. Yes.

Solicitors: *Robert Greening*; *Sharpe, Parker & Co.*, for *Hughes & Masser, Coventry.*

H. B. H.