# Exhibit 24

Case 1:03-md-01570-GBD-SN   Document 415-33   Filed 08/30/04   Page 2 of 10

# Stanhope Pension Trust Ltd and another v Registrar of Companies and another

COURT OF APPEAL, CIVIL DIVISION
SIR THOMAS BINGHAM MR, HOFFMANN AND HENRY LJJ
22, 23 NOVEMBER, 17 DECEMBER 1993

*Winding up – Dissolution of company – Application to restore company to register – Persons interested in restoration – Companies Act 1985, s 651.*

Forte's (Manufacturing) Ltd (Forte) was dissolved in February 1992 following a members' voluntary winding up. The applicants were lessors under two registered underleases by which premises were let to Forte for a term of 42 years. Forte assigned the underleases to Post Inns Ltd (Post) which in turn assigned it to Forte Properties Ltd (Properties). Properties assigned it to BCCI which was ordered to be wound up in January 1992 and the liquidators disclaimed the lease. The applicants applied to have Forte restored to the register. Post and Properties applied to be joined as parties under RSC Ord 15, r 6(2)(b) so that they could object to the order being made and the judge granted them leave. Although Forte did not have assets, the applicants claimed that the restoration of Forte to the register would bring into being a new asset, namely its right of indemnity under s 24(1)(b) of the Land Registration Act 1925 which it had against Post, a solvent company. The judge held that as a matter of principle he ought not to exercise his discretion to restore the company to the register since this would put the applicants in a better position than it would have been in if the liquidation had been properly conducted and would deprive third parties of benefits that had accrued to them during the liquidation or thereafter.

**Held** – Ordinarily the purposes for which s 651 of the Companies Act 1985 could be invoked were either to enable the liquidator to distribute an overlooked asset or a creditor to make a claim which he had previously not made. On the facts, the judge had erred in holding that as a matter of principle he should not make an order under s 651. Although it was unclear how much or for how long Forte could claim under the indemnity under s 24(1)(b) of the 1925 Act, the entitlement to recover something was not merely shadowy and therefore the court should exercise its discretion to restore Forte to the register.

**Cases referred to in judgments**
*Bradley v Eagle Star Insurance Co Ltd* [1989] BCLC 469, [1989] 1 All ER 961, [1989] AC 957, [1989] 2 WLR 568, HL.
*Harrington Motor Co Ltd, Re, ex p Chaplin* [1928] Ch 105, CA.
*House Property & Investment Co Ltd, Re* [1953] 2 All ER 1525, [1954] Ch 576, [1953] 3 WLR 1037.

*Northern Counties of England Fire Insurance Co, Re, Macfarlanes's Claim* (1880) 17 Ch D 337.
*Perkins, Re, Poyser v Beyfus* [1898] 2 Ch 182, [1895-9] All ER Rep 230, CA.
*Portafram Ltd, Re* [1986] BCLC 533.
*Servers of the Blind League, Re* [1960] 2 All ER 298, [1960] 1 WLR 564.
*Spottiswoode, Dixon & Hunting Ltd, Re* [1912] 1 Ch 410, [1911-13] All ER Rep 526.
*Wood and Martin (Bricklaying Contractors) Ltd, Re* [1971] 1 All ER 732, [1971] 1 WLR 293.

**Cases also cited or referred to in skeleton arguments**
*Bridges, Re, Hill v Bridges* (1881) 17 Ch D 342.
*Clarkson (H) (Overseas) Ltd, Re* [1987] 3 BCC 606.
*Ellis & Co's Trustee v Dixon-Johnson* [1924] 1 Ch 342.
*Foster Yates & Thom Ltd v H W Edgehill Equipment Ltd* (1978) Times, 30 November, [1978] CA Transcript 800.
*Gurtner v Circuit* [1968] 1 All ER 328, [1968] 2 QB 587, CA.
*Hardy v Fothergill* (1888) 13 App Cas 351, [1886-90] All ER Rep 597, HL.
*Harris v Boots Cash Chemists (Southern) Ltd* [1904] 2 Ch 376.
*Law Guarantee Trust & Accident Society Ltd, Re, Liverpool Mortgage Insurance Co's Case* [1914] 2 Ch 617, [1914-15] All ER Rep 1158, CA.
*Mirror Group (Holdings) Ltd, Re* [1992] BCC 972.
*New Oriental Banking Corp, Re (No 2)* [1895] 1 Ch 753, [1895-9] All ER Rep 910.
*Smith (MH) (Plant Hire) Ltd v Mainwaring* [1986] BCLC 342, CA.
*Test Holdings (Clifton) Ltd, Re* [1969] 3 All ER 517, [1970] Ch 285.
*Thompson and Cotrell's Contract, Re* [1943] 1 All ER 169, [1943] 1 Ch 97.
*Trepca Mines Ltd, Re* [1960] 3 All ER 304n, [1960] 1 WLR 1273, CA.
*Tymans Ltd v Craven* [1952] 1 All ER 613, [1952] 2 QB 100, CA.
*Workvale Ltd, Re* [1991] BCLC 528, [1991] 1 WLR 294.

**Interlocutory appeal**
The plaintiffs, Stanhope Pension Trust Ltd and Custodian Holdings Ltd, appealed from the orders of Judge Weeks QC, sitting as a judge of the High Court in the Chancery Division, made on 17 May 1993 ([1994] 1 BCLC 166), whereby, inter alia, he (1) discharged the order of Mr Registrar Buckley made on 11 March 1993 dismissing the application of Post Inns Ltd and Forte Properties Ltd (the interveners) to be joined as defendants to the plaintiffs' action for a declaration that the dissolution of Forte's (Manufacturing) Ltd (the company) was void, and ordered that the interveners be joined as third and fourth defendants respectively, and (2) discharged the order of Mr Registrar Buckley made on 11 March 1993 declaring the dissolution of the company to be void and appointed the second defendant, Colin Graham Bird, voluntary liquidator of the company. The facts are set out in the judgment of Hoffmann LJ.

*James Munby QC* and *Christopher Pymont* (instructed by *Jaques & Lewis*) for the plaintiffs.
*Terence Etherton QC* and *James Ayliffe* (instructed by *Paisner & Co*) for the interveners.
The first and second defendants did not appear and were not represented.

*Cur adv vult*

17 December 1993. The following judgments were delivered.

**HOFFMANN LJ** (giving the first judgment at the invitation of Sir Thomas Bingham MR). A company is a legal person whose existence is bounded by events analogous to the birth and death of a natural person. It can come into existence by, among other things, registration under the Companies Act 1985. It will cease to exist upon, among other things, dissolution after the winding up of its affairs under the Insolvency Act 1986. In the case of a company which has been voluntarily wound up, dissolution ordinarily occurs three months after the liquidator's final account and return has been registered.

Unlike a natural person, however, a company which has ceased to exist may be restored to life. In the case of a company dissolved after winding up, the court has power under s 651 of the Companies Act 1985 to declare the dissolution to have been void. This appeal concerns an application for such an order.

The company in question was a member of the Forte group called Forte's (Manufacturing) Ltd (Forte). On 27 October 1988, for the purposes of a reconstruction of various group companies and the directors having made a declaration of solvency, it passed a resolution for members' voluntary winding up. The liquidator advertised for claims in the normal way, paid the creditors and distributed the assets. His final account and return were registered on 8 November 1991 and the company was therefore deemed to have been dissolved on 8 February 1992.

The applicants, whom I shall jointly call the landlord, are the lessors under two registered underleases granted in 1960 by which premises in Oxford Street were let to Forte for a term of 42 years. It covenanted, among other things, to pay the rent during the whole of the term. On 28 January 1964 Forte assigned the underleases to Post Inns Ltd (Post), another company in the Forte group. On 29 September 1967 there was a further assignment within the Forte group to Forte Properties Ltd (Properties). On 9 February 1979 Properties assigned the underleases to BCCI.

In January 1992 BCCI was ordered to be wound up. It stopped paying rent and on 10 June 1992 the liquidators disclaimed the underleases. The landlord as usual looked to the original tenant for the rent. But the original tenant no longer existed. The landlord therefore applied on 17 December 1992 for an order under s 651 declaring the dissolution of Forte to have been void.

There is usually little point in reviving a company to enable a new claim to be made because (as in this case) all its assets will have been distributed. It is a general principle of insolvency law that although a creditor can prove (or increase the amount of his proof) at any time during the liquidation, distributions which have already been properly made cannot be disturbed. But the landlord says that in this case its claim for rent will bring into existence a new asset, namely Forte's right of indemnity against Post under the covenant implied in the 1964 assignment by s 24(1)(b) of the Land Registration Act 1925. This is a covenant –

'... that during the residue of the term the transferee and the persons deriving title under him will pay, perform and observe the rent,

covenants and conditions by and in the registered lease reserved and contained, and on the part of the lessee to be paid, performed and observed, and will keep the transferor and the persons deriving title under him indemnified against all actions, expenses, and claims on account of the non-payment of the said rent or any part thereof, or the breach of the said covenants or conditions, or any of them.'

Post is a solvent company and so the landlord says that the liquidator of Forte will be able to recover under the indemnity. Forte will be entitled to recover the full amount of the claim, even if the creditor is likely to be paid only a small dividend: see *Re Perkins, Poyser v Beyfus* [1898] 2 Ch 182, [1895-9] All ER Rep 230. But in any case, the landlord in this case would receive substantially the whole of any payment under the indemnity. It is true that it will have no proprietary interest in the money. It will be an asset in the liquidation. But since the landlord will be the only outstanding creditor, this will make little practical difference. In fact the landlord says that if Forte is restored to the register, the liquidator is unlikely to want to be a regular quarterly conduit. He will therefore be inclined to assign the right of indemnity to the landlord and drop out.

The Registrar of Companies and the former liquidator are normally the only respondents to an application under s 651. But Post and Properties applied to be joined as defendants under RSC Ord 15, r 6(2)(b) so that they could object to an order being made. The judge said that their presence before the court was, in the words of r 6(2)(b)(i), 'necessary to ensure that all matters in dispute in the cause or matter may be effectually and completely determined'. In this appeal, Mr Munby QC for the landlord has challenged the decision and said that it was not a proper exercise of the judge's discretion. Since however Mr Etherton QC has appeared for Post and Properties both before the judge and in this court and the case has been fully argued, it will be more convenient to keep my comments on the question of joinder until after I have dealt with the merits of the application.

What are the principles upon which the power under s 651 should be exercised? The first two subsections reads as follows:

'(1) Where a company has been dissolved, the court may . . . on an application made for the purpose by the liquidator of the company or by any other person appearing to the court to be interested, make an order, on such terms as the court thinks fit, declaring the dissolution to have been void.

(2) Thereupon such proceedings may be taken as might have been taken if the company had not been dissolved.'

Subsection (3) is immaterial and sub-ss (4) to (7) (which were introduced by amendment in 1989) provide that with the exception of applications made for the purpose of bringing proceedings against the company for personal injury or under the Fatal Accidents Act 1976, an application may not be made more than two years after the date of dissolution.

Subsection (1) thus confers a discretion in apparently unrestricted terms. But the judicial exercise of any statutory discretion is impliedly limited to the purposes for which it was conferred. What is the purpose of s 651?

Case 1:03-md-01570-GBD-SN   Document 415-33   Filed 08/30/04   Page 6 of 10

In *Re Servers of the Blind League* [1960] 2 All ER 298 at 299, [1960] 1 WLR 564 at 565 Pennycuick J said:

> 'Generally speaking, the purpose of an order under section [651] is to enable distribution to be made of an asset which belonged to the company before dissolution but which, for some reason, was overlooked and has vested in the Crown as bona vacantia . . .'

But the section can also be used to enable a new or increased claim to be made by a creditor. For example, in recent years, particularly since the section was amended in 1989, it has become fairly common for dissolutions to be declared void to enable a former employee of the company to make a claim for personal injury (for example, negligence in allowing him to contract an insidious industrial disease) which was not or could not have been made at the time of the company's liquidation. The purpose of such applications is to obtain a judgment against the company which can be enforced against its insurer under the Third Parties (Rights Against Insurers) Act 1930. This Act provides that a right to indemnity under a contract of insurance vests in the claimant on the date of the winding up and does not become an asset in the liquidation. The applicant will therefore not have to prove as a creditor. He will need to revive the company only to obtain the judgment which establishes the company's right to indemnity: *Bradley v Eagle Star Insurance Co Ltd* [1989] BCLC 469, [1989] AC 957.

I think it would therefore be nowadays more accurate to say that ordinarily the purposes of s 651 are either to enable the liquidator to distribute an overlooked asset or a creditor to make a claim which he has not previously made. *Re Servers of the Blind League*, from which I have cited above, is an example of an unsuccessful attempt to use the section for an altogether different purpose. A charitable company had gone into voluntary liquidation. Dissolution took place on 6 June 1958. On 5 January 1959 occurred the death of a Mrs Petrie, who bequeathed the company a quarter of her residuary estate. The effect of the company having ceased to exist was that, as in the case of the pre-decease of a natural legatee, the gift lapsed and accrued to the other residuary beneficiaries. The liquidator applied for an order declaring the dissolution void in order retrospectively to validate the legacy. Pennycuick J refused the order, saying that 'without seeking to lay down any rule of universal application' he did not think that an order which would 'dispossess other persons who obtained a vested interest in the asset under a title not derived from the company' was properly within the intended purpose of the section (see [1960] 2 All ER 298 at 299, [1960] 1 WLR 564 at 565).

This seems to me, if I may respectfully say so, quite right. The application had nothing to do with the distribution of assets or the making of claims in the liquidation. It was simply an attempt to play ontological ducks and drakes with the law relating to legacies. But the learned judge in this case extracted from it a far wider principle. He said it showed that the jurisdiction under s 651 –

> 'ought not to be exercised to put the applicant for an order in a better position that he would have been in if the liquidation had been properly conducted and so to deprive third parties of benefits which have accrued to them during the course of the liquidation or thereafter.'

(See [1994] 1 BCLC 166 at 171-172.)

I have an initial difficulty in understanding what the principle means. 'If the liquidation had been properly conducted' suggests that the liquidation has not been properly conducted. But in this case it has. No one says that it has not. I suspect that what the judge meant was that the applicant should not be put in a better position *unless* the liquidation has not been properly conducted. But better than what? Presumably better than if he had proved in the liquidation. The only other possibility is that he should not be in a better position than he is. But this makes no sense because the whole point of the application is to improve the applicant's position.

Mr Etherton's submission is that if the landlord had proved in the liquidation, it could only have claimed as a contingent creditor. BCCI was still trading and there had been no default in any payment of rent. The value of its contingent claim would have been the difference between the respective values of its reversion with and without Forte's covenant. At the time, this would not have been a great deal. Nor, he said, would such a claim have given rise to any liability on the part of Post under s 24(1)(b) of the Land Registration Act 1925. The implied covenant is to indemnify Forte against liability arising out of non-payment of rent, not against liability to pay a notional difference in reversionary values at a time when no failure to pay rent has yet occurred.

Mr Etherton is certainly right in saying that the landlord's claim will be greater now than it would have been in 1988. He may well also be right in saying that a contingent claim does not give rise to a right of indemnity under s 24(1)(b). But why should that be a reason for refusing an order under s 651? The principle formulated by the judge cannot be derived from *Re Servers of the Blind League*, for which I have already suggested a much simpler explanation. Nor is it consistent with the purpose of the 1989 amendment, which, as I have mentioned, was to extend indefinitely the time for reviving the company so as to allow former employees to make claims alleging that they had contracted diseases which had not yet manifested themselves at the time when the company was dissolved. The applicants would often have been able to prove for little or nothing at the time of the liquidation (if it had occurred to them to do so) and the revival of the company is intended to put them in a better position and to deprive a third party, namely the insurance company, of the immunity which, as the House of Lords demonstrated in *Bradley v Eagle Star Insurance Co Ltd*, it would otherwise have enjoyed. Mr Etherton says that the personal injury cases are distinguishable because the applicant, even if he did not know it, had a vested claim at the time of the liquidation. But this technical distinction is not reflected in the way the judge formulated his principle and would in any case be highly artificial.

The exception for cases in which the liquidation was not properly conducted is intended to accommodate *Re Spottiswoode, Dixon & Hunting Ltd* [1912] 1 Ch 410, [1911-13] All ER Rep 526, in which Neville J revived a company to enable a creditor to make a claim which was only contingent at the time of the liquidation. The facts were that company A, which held partly-paid shares in company B, was wound up for the purposes of reconstruction. The potential liability for calls was thus a contingent debt. The liquidator of company A transferred all its other assets to company C, leaving company A with the shares but nothing to pay any calls which might

be made. After company A had been dissolved, company B made a call. It applied for the restoration of company A to enable it to make a claim.

Neville J clearly thought that the directors of company A had not behaved very honourably in using a reconstruction to remove the assets of the company and leave a contingent creditor to whistle for his debt. But he did not suggest that there was anything improper in the way the liquidation had been conducted. Due notice had been given and the necessary resolutions properly passed. Neville J was glad that the then equivalent of s 651 gave him power to prevent company A from avoiding its plain liability. But the same can be said in other cases, including this one, and has nothing to do with the way the liquidation has been conducted. In my view *Re Spottiswoode, Dixon & Hunting Ltd* contradicts the judge's principle and does not fall within the exception.

Mr Etherton said that an English company has an inalienable right to wind itself up and dissolve, whatever might be its outstanding liabilities. It is entitled to have its assets distributed to creditors and shareholders in accordance with the rules of liquidation, paying contingent creditors the value of their claims at the date of liquidation and no more. Furthermore, there is a strong policy which required such distribution to be final and undisturbed.

In my judgment there are elements of truth in each of Mr Etherton's propositions, but they are qualified in various ways which do not allow such broad brush strokes to present an adequate picture of the law. A company is certainly entitled to initiate and complete the process of winding up notwithstanding that it will thereby become unable to fulfil future or contingent obligations. Contingent creditors become entitled to prove for the value of their claims at the date of winding up, but the company cannot be required to set aside a fund against the possibility that the contingency may happen. The liquidator is entitled to distribute the assets in accordance with the rules and such distributions cannot afterwards be disturbed. *Re House Property & Investment Co Ltd* [1953] 2 All ER 1525, [1954] Ch 576, in which a landlord tried unsuccessfully to require the liquidator of its original tenant company to set aside a fund to pay the rent if the assignee should default, illustrates all these principles very well.

On the other hand, it is also a rule of winding up that a creditor may submit a proof or amend an existing proof at any time during the liquidation. The rule that prior distributions cannot be disturbed means that it may not do him much good, but in principle he is entitled to make his claim. Another principle of liquidation is that contingent claims are valued in the light of subsequent events, so that a proof may be increased because the contingency has happened: see *Re Northern Counties of England Fire Insurance Co, Re Macfarlane's Claim* (1880) 17 Ch D 337. Furthermore, it is possible that a creditor may be entitled to prove for an accrued debt when the contingency has occurred after the winding up. I express no opinion on this point, but whatever the form of the proof, there is no principle which excludes new or increased claims.

I also accept that the liquidator is entitled to complete the winding up and file his final accounts and report, with the consequence that the company is thereafter dissolved. But the finality of the dissolution is qualified by the express provisions of s 651. While the power under that section remains

a    exercisable, the dissolution is *not* final. The company may be revived, the liquidation re-opened and new or increased claims made.

a    In my judgment, therefore, the learned judge was wrong in law to hold that he ought not as a matter of principle to make an order under s 651. It was open to him to do so and it is therefore open to this court to exercise its own discretion.

Mr Etherton's alternative submission, to which I have already alluded, is
b    that the order would not serve any purpose because Post is not liable to indemnify Forte under s 24(1)(b) of the Land Registration Act 1925 and there is no other potential source of funds to discharge Forte's liability. As I have said, I am willing for the purposes of argument to accept that no liability could have arisen under s 24(1)(b) before actual default occurred in payment of the rent. I am not persuaded that this remains true once the tenant has actually
c    defaulted, even though this did not happen until after the date of the winding up. Nor do I think it necessarily matters for this purpose whether the default enables the landlord to prove for an accrued debt or to revalue a contingent one. Mr Etherton said that even if Post was liable on the indemnity, it could be only for the unpaid rent accrued to date. That again may well be true, but the court has power under s 201(3) of the Insolvency Act 1986 to defer the
d    date of dissolution of the company for such time as the court thinks fit. The registrar or judge of the Companies Court might think it right to exercise this power to enable Forte to claim under the indemnity for each quarter's rent as it fell due. Mr Munby plausibly submits that if the court took this course, the liquidator would soon enough extricate himself from the chain of liability
e    by assigning the benefit of the indemnity to the landlord. Mr Etherton once more appealed to be principle of finality as an objection to using s 201(3) to prolong Forte's life until the lease comes to an end in nine years' time. Once more I give the same answer: the principle is subject to express statutory qualifications.

It is not however necessary for us to express any concluded view on
f    whether or how much or for how long Forte will be entitled to recover under the indemnity. As Megarry J said in *Re Wood and Martin (Bricklaying Contractors) Ltd* [1971] 1 All ER 732 at 736, [1971] 1 WLR 293 at 297, the interest of an applicant under s 651 in having the company revived does not have to be firmly established or highly likely to prevail. It is sufficient that
g    it is not 'merely shadowy' and I think that the possibility that assets may become available under the indemnity is far from shadowy.

It follows that an order under s 651 may enable the company to meet a liability which would otherwise remain unpaid. This seems to me a sufficient ground for exercising the discretion and I would do so.

That leaves the now academic question of whether the judge should have
h    allowed Post and Properties to be joined in the proceedings. As Harman J remarked in *Re Portafram Ltd* [1986] BCLC 533 at 534 such applications are usually to all intents and purposes ex parte. The Registrar of Companies, who appears by counsel instructed by the Treasury Solicitor, will assist the court on whether the requirements of the section have been satisfied but has no interest except in securing the Registrar's costs. The making of the order does
i    not determine whether the applicant has a claim against the company or the company has a claim against a third party. As I have already said, all that is required is that the claim should not be merely shadowy. It therefore seems

to me that a third party who merely wants to say that the applicant has no claim against the company or that the proceedings which the revived company proposes to bring against him have no prospect of success should not be entitled to intervene in the application.

There are however some cases in which the order will directly affect the rights of a third party, irrespective of whether the applicant has any claim against the company or the company has any claim against the third party. *Re Servers of the Blind League* was such a case. The residuary legatees had a right (which in the event was adequately safeguarded by Pennycuick J without their appearance) to their bequests under the will which would have been divested if the judge had made the order. In those circumstances I think that they were entitled to be joined in order to argue that such an order should not be made.

In this case it seems to me that Post and Properties were wanting to argue that in principle their potential liabilities under their indemnities had been irrevocably discharged by the dissolution of Forte. As I have said in the first part of this judgment, I think that the alleged principle is fallacious. But it was sufficiently arguable to have persuaded the judge and I think that Post and Properties were entitled to be joined in order to argue it. I would nevertheless allow the appeal and restore Forte to the register.

**HENRY LJ.** I agree.

**SIR THOMAS BINGHAM MR.** I also agree on both points.

*Appeal allowed. Leave to appeal to the House of Lords refused.*

L I Zyzman Esq   Barrister.