# Exhibit 26

Court of Appeal

## *Smith v White Knight Laundry Ltd

[2001] EWCA Civ 660

2001 April 10; May 11     Waller, Laws and Jonathan Parker LJJ

Company — Register — Restoration to register — Action against company for personal injury — Injury manifesting itself during period of dissolution — Direction that period of dissolution should not count for limitation purposes — Whether limitation period starting during dissolution — Whether action statute-barred — Whether direction appropriate — Companies Act 1985 (c 6), s 651(1) (as amended by Companies Act 1989 (c 40), s 141)

In February 1995 the claimant's husband died as a result of mesothelioma allegedly contracted between 1950 and 1956 whilst he was employed by the defendant company. The claimant wished to commence an action against the defendant. Since it had been dissolved in 1963 she applied to the Companies Court for an order pursuant to section 651 of the Companies Act 1985[1] declaring the dissolution to have been void. On an application without notice the registrar ordered the restoration of the company's name to the register and made a direction pursuant to section 651(1) that the period from the dissolution to the date of the order should not be taken into account for limitation purposes. The claimant commenced legal proceedings in 1999. She contended that her husband had no knowledge of his condition before the dissolution of the defendant, that no cause of action could have accrued while the company was in dissolution and that, accordingly, the cause of action had not arisen until after the defendant's restoration to the register. In the event that the claim was statute-barred, the claimant asked that the primary limitation period be disapplied pursuant to section 33 of the Limitation Act 1980[2]. On the defendant's application, a hearing of a preliminary issue was ordered to determine whether the action was statute-barred. The judge dismissed the claimant's appeal from that order holding that there was a triable issue as to whether the cause of action accrued whilst the defendant was in dissolution and was therefore statute-barred. Of his own motion the judge set aside the registrar's direction that the period of dissolution should not be taken into account for limitation purposes.

On the claimant's appeal—

*Held*, dismissing the appeal, that, since the effect of an order under section 651(1) of the 1985 Act restoring a company to the register was to render its dissolution void ab initio, any cause of action against the defendant accrued on the date on which it would otherwise have accrued but for the dissolution; accordingly, since the claimant's action had been brought outside the primary limitation period, in the absence of the section 651 direction, her action was statute-barred; that, where the applicant for a restoration order was a prospective claimant in a personal injuries action in circumstances where the claim would otherwise have been statute-barred, the effect of a section 651 direction was the same as a grant of relief under section 33 of the Limitation Act 1980; and that, since the section 651 direction was made in the absence of the defendant and it was by no means clear that the claimant would succeed if she made an application pursuant to section 33 of the 1980 Act, justice

---

[1] Companies Act 1985, as amended, s 651(1): see post, para 20.
[2] Limitation Act 1980, s 33: "(1) If it appears to the court that it would be equitable to allow an action to proceed having regard to the degree to which—(a) the [time limits set out in] section 11 . . . or 12 of this Act prejudice the plaintiff or any person whom he represents; and (b) any decision of the court under this subsection would prejudice the defendant or any person whom he represents; the court may direct that those provisions shall not apply to the action . . ."

A   required that the section 651(1) direction be set aside so that the defendant's insurers could be heard on any application the claimant might make pursuant to section 33 (post, paras 52–59, 62).

*In re C W Dixon Ltd* [1947] Ch 251 and *In re Workvale Ltd* [1992] 1 WLR 416, CA applied.

*Per curiam.* Where a restoration order is sought in the Companies Court by a prospective claimant in a personal injuries action a section 651 direction should not

B   normally be made unless (a) notice of the application has first been given to all those parties who may be expected to oppose the making of such a direction, including the company's insurers, and (b) the court is satisfied (i) that it has before it all the evidence which the parties would wish to adduce on an application by the prospective claimant under section 33 and (ii) that an application under section 33 would be bound to succeed (post, para 60).

Decision of Judge Pryor QC sitting as a judge of the Queen's Bench Division

C   affirmed.

The following cases are referred to in the judgment of the court:

*Cartledge v E Jopling & Sons Ltd* [1963] AC 758; [1963] 2 WLR 210; [1963] 1 All ER 341, HL(E)
*Dixon (C W) Ltd, In re* [1947] Ch 251; [1947] 1 All ER 279
*Morris v Harris* [1927] AC 252, HL(E)
D   *Musurus Bey v Gadban* [1894] 2 QB 352, CA
*Russo-Asiatic Bank, In re* [1934] Ch 720
*Thomson v Lord Clanmorris* [1900] 1 Ch 718, CA
*Workvale Ltd, In re* [1991] 1 WLR 294; [1992] 1 WLR 416, [1992] 2 All ER 627, CA

The following cases were cited in argument:

*Chan Kit San v Ho Fung Hang* [1902] AC 257, PC
E   *Kenyon (Donald) Ltd, In re* [1956] 1 WLR 1397; [1956] 3 All ER 596
*Regent Insulation, In re* The Times, 4 November 1981

APPEAL from Judge Robert Pryor QC sitting as a judge of the Queen's Bench Division

The claimant was the widow and personal representative of Thomas Albert Smith. She wished to commence an action against the defendant,
F   White Knight Laundry Ltd pursuant to the Law Reform (Miscellaneous Provisions) Act 1934 and the Fatal Accidents Act 1976 for damages for personal injury allegedly suffered by the deceased during his employment with the defendant between 1950 and 1956. Since the company had been dissolved in 1963, the claimant applied to the Companies Court under section 651 of the Companies Act 1985 for a declaration that the dissolution
G   was void and an order restoring the company to the Register of Companies. On 23 January 1998 Mr Registrar Buckley made the order sought and in addition directed that the period from dissolution to restoration should be discounted for limitation purposes. By a writ issued on 14 April 1999 the claimant commenced proceedings against the company and on 21 September 1999 Master Ungley, on the application of the defendant, directed that a preliminary issue as to limitation should be heard. On 22 October 1999,
H   Judge Pryor dismissed the claimant's appeal against the master's order and set aside the section 651 direction.

By an appellant's notice dated 8 February 2000, the claimant sought the reinstatement of the order of Mr Registrar Buckley and the setting aside of the order for a trial of a preliminary issue. The grounds of appeal were

that the judge erred in law (1) in failing to hold that time did not start to run for the purpose of a statute of limitation against a company that had been dissolved before the cause of action had accrued; (2) in holding that there was a triable issue that a cause of action could become statute-barred under the Limitation Act 1980 against a company that had been dissolved before the cause of action had accrued; (3) in holding that he had jurisdiction to set aside the order of Mr Registrar Buckley, and (4) alternatively, that in exercising such discretion that he might have had, he did so perversely in failing to take account of relevant material and taking into account irrelevant material.

The facts are stated in the judgment of the court.

*Allan Gore* for the claimant.
*Richard Methuen* QC for the company.

*Cur adv vult*

11 May. JONATHAN PARKER LJ handed down the following judgment of the court.

*Introduction*

1 This is the judgment of the court.

2 This is an appeal by Mrs Maria Smith, the claimant in a personal injuries action, against an order made by Judge Robert Pryor QC (sitting as a judge of the Queen's Bench Division) on 22 October 1999. The defendant in the action, White Knight Laundry Ltd, is the respondent to the appeal. The judge refused permission to appeal, but permission was granted by Chadwick LJ on 31 January 2000.

3 Mrs Smith is the widow and personal representative of Thomas Albert Smith, who died on 6 February 1995, aged 68. Mrs Smith claims damages against the company pursuant to the Law Reform (Miscellaneous Provisions) Act 1934 and the Fatal Accidents Act 1976, alleging the deceased's death was caused by negligence and breach of duty by the company.

4 The company was dissolved on 21 October 1963, and (as is common ground) so long as it remained dissolved Mrs Smith could not commence proceedings against it. On 22 December 1997 Mrs Smith applied to the Companies Court for an order under section 651 of the Companies Act 1985 declaring the dissolution to have been void and restoring the name of the company to the register of companies. In accordance with normal practice notice of Mrs Smith's application was served on the Registrar of Companies and on the Treasury Solicitor. No other party was served. On 23 January 1998 Mr Registrar Buckley made the order sought.

5 In addition to declaring the dissolution of the company to have been void, the restoration order also directed, pursuant to section 651, that the period from dissolution to the date of the order should not count for limitation purposes. We will refer to such a direction hereafter as "a section 651 direction".

6 The restoration order was not served on the company until May 1999, shortly after the commencement of this action.

A   7  The action was commenced by writ issued on 14 April 1999. By her statement of claim, Mrs Smith alleges that the deceased was employed by the company from 1950 to 1956, and that his work brought him in contact with asbestos. She alleges that in consequence he contracted mesothelioma, from which he died. She alleges that his death was caused by negligence and breach of statutory duty on the part of the company, and she claims damages for the deceased's estate (pursuant to the 1934 Act) and for herself as a dependant (pursuant to the 1976 Act).

B

8  By its defence, the company alleges that the claim is statute-barred because the deceased had the requisite knowledge about his condition for the purposes of the Limitation Act 1980 more than three years before the date of his death (that is to say, prior to 5 February 1992); alternatively because Mrs Smith commenced the present action more than three years after the deceased's death (that is to say, after 5 February 1998); and that the court should not make a direction pursuant to section 33 of the 1980 Act allowing the action to proceed notwithstanding that the claim would otherwise be statute-barred, since it would not be equitable in all the circumstances so to direct.

C

9  By her reply, Mrs Smith admits that the action was commenced more than three years after the date of death but denies that the claim is statute-barred. She alleges that the deceased first had knowledge of his condition on 5 January 1993, that is to say less than three years before his death. The reply goes on to plead the dissolution of the company and the restoration order, alleging that the company was not available to be sued until the restoration order was made; alternatively, if the claim would otherwise be statute-barred, Mrs Smith seeks relief under section 33 of the 1980 Act on the grounds (a) that she commenced proceedings within one year and three months of making of the restoration order; (b) that no prejudice would be caused to the company by the grant of relief under section 33; and (c) that the claim does not depend upon witness recollection and that the evidence to be adduced has not been rendered less cogent by the passage of time.

D

E

10  The company applied in the action for the trial of a preliminary issue as to limitation. The application was opposed by Mrs Smith on the basis that no cause of action arose until there was a defendant available to be sued—that is to say, until the making of the restoration order. In the alternative, Mrs Smith relied on the section 651 direction contained in the restoration order. It was accordingly contended on behalf of Mrs Smith that there was no issue as to limitation since the pleaded limitation defence was bound to fail. However, by order dated 21 September 1999 Master Ungley directed a preliminary issue as to limitation. Mrs Smith appealed against that order.

F

G

11  Mrs Smith's appeal against Master Ungley's order was heard by Judge Pryor QC on 22 October 1999, when he made the order against which Mrs Smith now appeals to this court.

12  The judge not only dismissed Mrs Smith's appeal against Master Ungley's order; he also varied the restoration order by setting aside the section 651 direction. Thus, the effect of the judge's order is that so much of the restoration order as declared the dissolution of the company to have been void still stands, as does Master Ungley's direction for the trial of a preliminary issue as to limitation; but that the period from the dissolution of the company to the date of the restoration order counts for limitation purposes. Thus, if the judge's order stands, preliminary issues will arise in

H

the action as to whether the claim is statute-barred and, if so, whether relief should be granted under section 33 and the action be allowed to proceed.   A

13 In this appeal, Mrs Smith essentially repeats the contentions which were made unsuccessfully on her behalf before Master Ungley and before the judge. She contends firstly that no cause of action accrued to the deceased prior to the dissolution of the company on 21 October 1963—a contention which the company is content to accept for the purposes of this appeal. Mrs Smith goes on to contend that no cause of action can have accrued to the deceased (or to her) during the period while the company was in dissolution, since throughout that period there was no defendant available to be sued. It follows, so it is contended, that the cause of action arose only on the making of the restoration order, with the consequence that the claim is not statute-barred. Hence, so it is said, there is no need for a preliminary issue as to limitation since the limitation defence is bound to fail. That is Mrs Smith's primary basis for challenging the judge's order. It is to be noted that if Mrs Smith is right in her primary contention the section 651 direction was wholly unnecessary since it achieved nothing.   B   C

14 In the alternative, Mrs Smith relies on the section 651 direction. She contends firstly that the judge had no jurisdiction to set aside the section 651 direction since (a) no application to that effect had been made by the company either in this action or in the proceedings in the Companies Court in which the restoration order was made, and (b) no step had been taken by the company to seek to appeal the restoration order out of time. Alternatively, she contends that even if the judge had power to set aside the section 651 direction, he ought not to have exercised that power in the circumstances of this case; and that his decision to do so was perverse and against the weight of the evidence.   D   E

15 We must now set this appeal in its statutory context, by referring to the relevant statutory provisions.

*The relevant statutory provisions*

*The Limitation Act 1980*

16 Section 11 of the 1980 Act provides for a special time limit for personal injury actions. Section 11(2) provides that none of the time limits provided elsewhere in the 1980 Act applies to personal injury actions, and section 11(3) provides that the limitation period for personal injury actions is that which is applicable under subsections (4) and (5). Subsection (4) provides that (save where subsection (5) applies) the applicable limitation period is three years from the date on which the cause of action accrued or (if later) the date of knowledge of the person injured. Subsection (5) provides that if the person injured dies within that period, the applicable limitation period in respect of the cause of action surviving for the benefit of his estate by reason of the Law Reform (Miscellaneous Provisions) Act 1934 is three years from the date of death or (if later) the date of the personal representative's knowledge.   F   G

17 Section 12 of the 1980 Act provides for a special time limit for actions under the Fatal Accidents 1976 Act. Section 12(1) provides that an action under the 1976 Act shall not be brought if the death of the person injured occurred when that person could no longer maintain a personal injuries action (whether because the claim is statute-barred or for any other   H

Case 1:03-md-01570-GBD-SN   Document 415-35   Filed 08/30/04   Page 7 of 17

A  reason). Section 12(2) provides that the limitation period for an action under the 1976 Act is three years from whichever is the later of the date of death or the date of knowledge of the person for whose benefit the action is brought.

18 Section 14 of the 1980 Act defines what is meant by a person's date of knowledge for the purposes of the above provisions. The detailed provisions of section 14 are not material for present purposes.

B  19 Section 33 gives the court a discretion to direct that sections 11 or 12 shall not apply to an action, if it considers that it would be equitable to allow the action to proceed having regard to the degree to which those sections prejudice the claimant or anyone whom the claimant represents and the degree to which a decision to disapply those sections would prejudice the defendant and anyone whom he represents. Section 33(3) provides that in

C  acting under the section the court is to have regard to all the circumstances of the case, and in particular to a number of matters there specified including any delay on the part of the claimant and the conduct of the defendant after the cause of action arose.

### The Companies Act 1985

D  20 Section 651 of the 1985 Act (as amended by section 141 the Companies Act 1989) is in the following terms, so far as material:

> "(1) Where a company has been dissolved, the court may, on an application made for the purpose by the liquidator of the company or by any other person appearing to the court to be interested, make an order, on such terms as the court thinks fit, declaring the dissolution to have been void.
>
E  > "(2) Thereupon such proceedings may be taken as might have been taken if the company had not been dissolved."
>
> "(4) Subject to the following provisions, an application under this section may not be made after the end of the period of two years from the date of dissolution of the company.
>
> "(5) An application for the purpose of bringing proceedings against the
F  > company—(a) for damages in respect of personal injuries ... or (b) for damages under [the 1976 Act] may be made at any time; but no order shall be made on such an application if it appears to the court that the proceedings would fail by virtue of any enactment as to the time within which proceedings must be brought.
>
> "(6) Nothing in subsection (5) affects the power of the court on making
G  > an order under this section to direct that the period between the dissolution of the company and the making of the order shall not count for the purposes of any such enactment.
>
> "(7) In subsection 5(a) 'personal injuries' includes any disease and any impairment of a person's physical or mental condition."

### The judgment of Judge Pryor QC

H  21 After summarising the factual background, the judge turned to the first submission made on behalf of Mrs Smith by Mr Allan Gore (who also appears for her on this appeal), namely that no issue arises as to limitation in the instant case since so long as the company remained dissolved there was no entity capable of being sued and accordingly no cause of action accrued

Case 1:03-md-01570-GBD-SN   Document 415-35   Filed 08/30/04   Page 8 of 17

until the making of the restoration order. The judge referred to two authorities cited by Mr Gore in support of that submission, namely *Thomson v Lord Clanmorris* [1900] 1 Ch 718 and *In re Russo-Asiatic Bank* [1934] Ch 720 (a decision of Eve J), but stated that he did not find either authority of assistance in the instant case. The judge then recited the relevant provisions of section 651 of the 1985 Act, and continued:

> "It seems to me that this section is inconsistent with the notion that no question of limitation ever arises where the company was not in existence at the time when the cause of action arose. It seems to me that the law is the same, whether the cause of action arose before the dissolution of the company, or after. I take the point made by [counsel then appearing for the company] that if that was not the case, it would mean that it would be open to a claimant in that situation to delay deliberately, to seek to take advantage of the situation which might arise simply because they were dealing with a dissolved company and no limitation period therefore applied. There might be an answer to that in the sense that that could be dealt with as an abuse of the process of the court, but I prefer the view that this is not a decisive factor in this case, as Mr Gore argues, and that it makes no difference whether the limitation period had started to run before the dissolution, that is to say the cause of action had arisen before the dissolution, or whether it arose afterwards. I am not persuaded by the cases he has put before me that that is right. I am not saying that my decision makes that unarguable at the hearing that I am suggesting is going to have to take place, but I am not persuaded that the matter is so clear that I should make an order here and now on this appeal, made a decision to the effect that the limitation period does not arise at all."

22 The judge then turned to the procedural situation:

> "It seems to me right, and I think there is power to do it, to allow an application to be made (I know it is out of time) in respect of the decision of Mr Registrar Buckley. I think that must be right, because that was an application not made on notice, so there has never been an inter partes hearing before the registrar to consider whether the 1980 Act applies or whether it does not, or whether it should be applied. So it seems to me that the matter must be open on an inter partes hearing to be argued. I do not think, on the information I have in front of me, that the matter is so clear that I can dispose of it."

23 The judge then referred to the Court of Appeal decision in *In re Workvale Ltd* [1992] 1 WLR 416 (as to which, see below), and continued:

> "That leads me to the view that what I should do now to progress this action is to direct that the direction of the registrar in relation to limitation should be set aside. I know that application is not before me, but I think that should be done, and I think that the master's order should stand, that there should be an issue as to limitation. I do not regard myself as having enough information before me to reach a conclusion, though I am bound to say that I would think that there is a strong probability on the evidence that I do have that such an application is likely to succeed, but I am not going to express myself any further than that . . . So, the effect of it is that the master's order stands, but in order to

A    clear the procedural ground I consider that the order of the registrar disapplying the 1980 Act should be set aside so that the matter can be dealt with fully without procedural complications by the judge who hears it. That is the conclusion I arrive at."

*In re Workvale Ltd*

B    24 In *In re Workvale Ltd* a prospective claimant against a dissolved company applied for an order under section 651(5) of the 1985 Act declaring the dissolution of the company to have been void and restoring the company to the register, in circumstances where the primary limitation period had expired (albeit after the date of dissolution). The company's insurers were made respondents to the application. They contended since the primary limitation period had expired the action "would fail" on C    grounds of limitation for the purposes section 651(5), and that accordingly there was no jurisdiction to make an order under the section. In the course of his judgment Harman J [1991] 1 WLR 294, at first instance, said that before refusing to make an order on that ground he would have to be convinced "to a very high degree" that an application under section 33 would not succeed, and that he was not so convinced. He concluded that although in the event the court might refuse relief under section 33, the issue D    was not sufficiently plain to justify refusing to make an order under section 651. He accordingly made the order sought, but he did not include in it any section 651 direction. It was thus left to the applicant to apply for relief under section 33 of the Limitation Act 1980. The insurers appealed. Their primary contention was that which they had advanced to the judge, that is to say that in considering whether an action "would fail" for the E    purposes of section 651(5) no account is to be taken of the possibility of relief being granted under section 33. In the alternative, they contended that in considering the prospects of relief being granted under section 33 Harman J had applied the wrong test, the right test being the balance of probabilities; and that on the balance of probabilities an application for relief under section 33 would fail. In the further alternative the insurers F    contended that an application under section 33 would be bound to fail.

   25 Scott LJ (who gave the leading judgment in the Court of Appeal, with which Sir Stephen Brown P and Stocker LJ agreed) rejected the insurers' primary contention. He concluded that in considering whether an action "would fail" on limitation grounds, for the purposes of section 651(5), account had to be taken of the possibility of relief being granted under section 33. As to the insurers' alternative contention as to the test to be G    applied in considering the possibility of relief being granted under section 33, Scott LJ held that where the primary limitation period had expired the judge should ask himself the question whether the applicant had an arguable case for relief under section 33; and that if there was an arguable case for such relief it could not be predicated that the claim "would fail". As to the insurers' further contention that on the facts of that case an application under section 33 was bound to fail, Scott LJ noted that Harman J had not H    decided that point but had preferred to leave it to be decided by a Queen's Bench judge. However, Scott LJ then went on to conclude that the applicant's case for relief was "well arguable". Accordingly he held that Harman J was right to make an order under section 651(5), and on that basis the insurers' appeal was dismissed.

26 However, Scott LJ then went on to make some general observations as to the procedural practice in relation to the making of orders under section 651, saying [1992] 1 WLR 416, 424–425:

"There is, however, an additional matter of procedural practice that I want to mention. As the case now stands, there will have to be an application in the Queen's Bench Division or in the county court, as the case may be, for a section 33 order. The material put before the court will be the same material as is now before us. There is, as I understand it, nothing extra that either side will want to adduce for the purpose of the section 33 application. So there is no point in putting the parties to the extra expense and continued delay that the further application will inevitably entail. It was, in my opinion, open to Harman J, if satisfied that a section 33 application would succeed, to exercise the power conferred on the court by section 651(6) and [to make a section 651 direction].

"In a case in which the primary limitation period had expired before the dissolution of the company it would not be possible to avoid the necessity of a section 33 application by making [a section 651 direction]. But this is not such a case. In a case in which the insurers of the proposed defendant, or the persons interested in defending the proposed action, were not the respondents to the section 651(5) application, it would not be proper to make a [section 651 direction]. To do so might prejudice the rights of absent parties. But in the present case the insurers are respondents. In a case in which either party desired to adduce evidence on the section 33 application which was not before the court on the section 651(5) application, it might not be possible for the court hearing the section 651(5) application to conclude that the section 33 application would succeed. But in the present case, as I understand the position, all the evidence is before the court. Finally, the judge who hears the section 651(5) application may, having regard to the particular issues which will be debated on the section 33 application, conclude that those issues ought to be dealt with in the courts—Queen's Bench Division or county court as the case might be—more accustomed to dealing with such applications. It may be that this is a view which, if he had been asked to address his mind to the matter, Harman J would have adopted in the present case. However, in a case in which all the requisite evidence is before the court on the section 651(5) application and in which the judge is able to be satisfied that a section 33 application would succeed and that the right parties are represented, the judge can, in my opinion, make an appropriate [section 651 direction] and thereby avoid an unnecessary section 33 application."

*The arguments on this appeal*

27 We can now turn to the arguments on this appeal.

28 In support of his primary submission that the cause of action did not accrue until the making of the Companies Court order, Mr Gore's starting-point is the uncontroversial proposition that a cause of action in tort does not arise until damage which is more than de minimis has been suffered: see *Cartledge v E Jopling & Sons Ltd* [1963] AC 758. In the instant case, he submits, no such damage had been suffered by the deceased by the date on which the company was dissolved, so that as at that date the cause of action

A   had not accrued. As we indicated earlier, that is conceded by the company for the purposes of this appeal.

29   Mr Gore goes on to submit that no cause of action could accrue while the company was in dissolution, since, as Vaughan Williams LJ said in *Thomson v Lord Clanmorris* [1900] 1 Ch 718, 728–729: "A Statute of limitations cannot begin to run unless there are two things present—a party capable of suing and a party liable to be sued."

B   30   He also relies on the decision of the Court of Appeal in *Musurus Bey v Gadban* [1894] 2 QB 352, 358. In that case the Court of Appeal held that no cause of action could accrue against a debtor during such period as he enjoyed diplomatic immunity.

31   Mr Gore further submits that the instant case is on all fours with *In re Russo-Asiatic Bank* [1934] Ch 720. In that case, the Russo-Asiatic Bank,
C   based in Petrograd, had in 1915 drawn sterling bills for acceptance by banks and accepting houses in the City of London. By a decree issued by the Soviet Government in December 1917, all private banks in Russia (including the Russo-Asiatic Bank) were abolished and their assets expropriated. In January 1918, shortly before the bills matured, all acceptances were assigned to the Bank of England in exchange for an issue of Exchequer bonds
D   to the face value of the bills. In 1926 the London branch of the Russo-Asiatic Bank, which had been established since 1908, was wound up by the Companies Court, and the Bank of England (on behalf of the Crown) lodged a proof of debt in the liquidation in respect of the proceeds of the bills. The liquidator rejected the proof on the ground that the Bank of England's claim was statute-barred. The Crown applied for a review of the liquidator's rejection of the proof, seeking to have the proof allowed in full. The Crown
E   argued, among other things, that the claim was not statute-barred because there must be some debtor in existence against whom an action could be brought, and that the effect of the Soviet Government's decree was that there was no debtor who could be sued. The liquidator, on the other hand, argued that whatever might be the effect of the decree under Russian law, the bank still continued to exist in England following the making of the decree, so that
F   it could not be said that there was no debtor who could be sued. Expert evidence was called on both sides as to the effect of the Soviet Government's decree. In the result, Eve J preferred the expert evidence called by the Crown and held that the corporate existence of the bank ceased on the making of the decree and that in consequence the Statute of Limitations had no application and the proof should be admitted in the liquidation.

G   32   Mr Gore submits that in the instant case there was no defendant available to be sued until the making of the restoration order, and that, by analogy with the *Russo-Asiatic Bank* case, the cause of action cannot have accrued at any earlier date. Thus, he submits, the claim cannot be statute-barred and there is no need for any preliminary issue as to limitation.

33   Mr Gore also seeks to distinguish the decision in *In re Workvale Ltd* [1992] 1 WLR 416 on the ground that in that case the cause of action had
H   accrued prior to the dissolution of the company. He submits that the position is entirely different where as at the date of dissolution no cause of action has as yet accrued. Indeed, he accepts that the effect of his primary contention, if correct, is that a prospective claimant against a company which was dissolved before the accrual of the cause of action is not subject to

Case 1:03-md-01570-GBD-SN   Document 415-35   Filed 08/30/04   Page 12 of 17

any period of limitation, but can (as the judge pointed out) delay indefinitely before applying for an order under section 651.

34   Mr Gore also places strong reliance on the House of Lords case of *Morris v Harris* [1927] AC 252. The detailed facts of that case are not recited in the report, but the central issue in the case was whether the effect of declaring the dissolution of a company to have been void, pursuant to the then statutory equivalent of section 651, was to validate arbitration proceedings taken after the dissolution. The relevant statutory provision was section 223 of the Companies (Consolidation) Act 1908, subsection (1) of which was in the following terms:

> "Where a company has been dissolved, the court may at any time within two years of the date of the dissolution, on an application being made for the purpose by the liquidator of the company or by any other person who appears to the court to be interested, make an order, upon such terms as the court thinks fit, declaring the dissolution to have been void, and thereupon such proceedings may be taken as might have been taken if the company had not been dissolved."

35   Their Lordships held by a majority (Viscount Dunedin, Lord Sumner and Lord Blanesborough; Lord Shaw of Dunfermline and Lord Wrenbury dissenting) that the order did not have the effect of validating the arbitration proceedings. Lord Sumner (with whom Viscount Dunedin agreed), after referring to the terms of the section, continued, at p 257, in a passage on which Mr Gore relies:

> "The words 'to have been void' in section 223 appear, it is true, so far as they go, to have some retrospective effect, and tend to some extent to support the respondent's argument [that the arbitration proceedings were validated]. On the other hand, the remaining words which define the order, point rather to a declaration removing a bar to such action as might otherwise have been taken, than to one validating past proceedings, taken since the dissolution through ignorance or disregard of it and consequently invalid. The remaining words, 'and thereupon such proceedings may be taken, as might have been taken if the company had not been dissolved', seem to me to point conclusively in the same direction."

36   Mr Gore also relies on a passage from the speech of Lord Blanesborough, where he said, at pp 268–269:

> "... I cannot myself doubt that both the words of section 223 empowering the court to make an order 'declaring the dissolution to have been void', and the following words expository of the result, 'and thereupon such proceedings may be taken as might have been taken if the company had not been dissolved', were in each case designedly chosen to produce the precise result which my noble and learned friend [Lord Sumner] has attributed to them. It is true that a declaratory order under the section unqualified in terms does ... have the effect of restoring to the revived company its corporate existence as from the very moment of dissolution thereby declared 'to have been void'. But the expository words which follow carefully and, as I think, advisedly refrain from adding that such an order is to have the effect of restoring to the company

Case 1:03-md-01570-GBD-SN   Document 415-35   Filed 08/30/04   Page 13 of 17

A   from the same moment, not its corporate existence only, but its corporate activity also. On the contrary, those expository words import, as I think, that it is only after the order has been made—it is 'thereupon' but not before—that any active consequences are to ensue.

"I think, my Lords, that the terms in which these consequences are described are exhaustive and emphatic. They are intended to show that an order under the section made, it may be, as long as two years after a
B   dissolution which up to that moment was completely effective, is not at once and as of course to ratify acts done during the interval, which, if done at all, must necessarily have been acts of mere usurpation, by a liquidator or other pretended agent with no office knowingly done on behalf of a company which had no existence. On consideration, it appears, I think, clear that automatically to validate such acts as being the
C   acts of a duly constituted officer on behalf of a duly incorporated company might involve consequences too disastrous to be even envisaged. These are avoided by the terms of the section. The company is restored to life as from the moment of dissolution but, continuing a convenient metaphor, it remains buried, unconscious, asleep and powerless until the order is made which declares the dissolution to have
D   been void. Then, and only then, is the company restored to activity . . .

"In my judgment, accordingly, the arbitration proceedings which abated on the dissolution of the . . . company thereby became abortive and have in no sense been reconstituted as a result of [the judge's] order."

37  Mr Gore submits that these passages from the speeches of Lord Sumner and Lord Blanesborough in *Morris v Harris* support his primary
E   proposition that the restoration order does not have the effect of creating a cause of action retrospectively, in the sense that once the dissolution has been declared to have been void the Limitation Act 1980 applies (subject to any section 651 direction) as if a cause of action had accrued during the period of dissolution.

38  If Mr Gore is right in his primary submission, it is (as noted earlier) unnecessary to consider whether the judge was right to set aside the
F   section 651 direction, since on Mr Gore's argument time did not run during that period. However, in the alternative to his primary submission he submits that the judge ought not to have set aside the section 651 direction. He does not press the contention (which is raised in Mrs Smith's grounds of appeal) that the judge had no power to set the section 651 direction aside; rather, he submits that in all the circumstances it was unjust to do so, given
G   that at no stage did the company seek to appeal that part of the restoration order, nor did it expressly invite the judge to set the section 651 direction aside.

39  Further Mr Gore submits that the judge's order setting aside the section 651 direction was unjust in that it deprived Mrs Smith retrospectively of the benefit of that direction. He submits that had the restoration order not contained such a direction, Mrs Smith might well have
H   been in a position to commence proceedings earlier, thus putting her in a stronger position to obtain relief under section 33 of the Limitation Act 1980.

40  Mr Gore submits that in the instant case the court can conclude, on the evidence presently before it, that an application by Mrs Smith for relief

under section 33 would be bound to succeed; and that on that footing the section 651 direction ought to remain in place, thereby avoiding the need for a further application by Mrs Smith.

41 For the company, Mr Methuen accepts (at least for the purposes of this appeal) that no cause of action can accrue against a company which has been dissolved, unless and until an order is made under section 651 declaring the dissolution to have been void. He submits, however, that the effect of such a declaration is to restore the company's corporate existence retrospectively, as if it had never been dissolved. It follows, he submits, that for limitation purposes—and looking at the matter as at the date when the action was commenced—the cause of action accrued on the date when the deceased had the requisite knowledge of damage (whenever that might be) notwithstanding that as at that date the company was in dissolution.

42 In support of that submission, Mr Methuen relies on the decision of Vaisey J in *In re C W Dixon Ltd* [1947] 1 Ch 251. The issue in that case was whether a restoration order under section 294 of the Companies Act 1929 had the effect of automatically revesting in the company property which had vested in the Crown on dissolution as bona vacantia, without the need for a vesting order. Vaisey J held that the effect of declaring the dissolution "to have been void" was to avoid the dissolution ab initio, and that accordingly there was no need for an order revesting the property in the company. In reaching his decision, Vaisey J relied on *Morris v Harris* [1927] AC 252.

43 Mr Methuen submits that, far from providing support for Mr Gore's primary submission, *Morris v Harris* (properly understood) supports his own submission, and that Vaisey J was right to cite it in support of his decision in *In re C W Dixon* [1947] 1 Ch 251.

44 Mr Methuen submits that the judge had power to set aside the section 651 direction, and that he was right to exercise that power in the circumstances of the instant case. Mr Methuen submits that, procedurally, the order which the judge made was wholly in accordance with the overriding objective of the Civil Procedure Rules, and that it was not necessary that the company should have expressly applied for such an order. The section 651 direction was originally made without notice to the company's insurers, and, as the judge pointed out, the insurers had never been heard on that application. Nor has disclosure yet been made of the evidence which was before Mr Registrar Buckley when he made the restoration order.

45 Mr Methuen submits that it may be arguable that the deceased's date of knowledge was more than three years before his death, with the consequence that by the time of his death the primary limitation period had expired; and that the company ought not to be deprived of the opportunity of taking that point if it is one that can be taken on the facts. Mr Methuen points out that within days after being served with the restoration order the solicitors for the insurers wrote to Mrs Smith's solicitors saying that the claim was statute-barred and that they considered that the issue of limitation would have to be dealt with as a preliminary issue, so there can be no prejudice to Mrs Smith by reason of the company's failure to apply in the Companies Court to set the section 651 direction aside.

46 Mr Methuen suggests that had such an application been made in May 1999 it is quite likely that it would not have been heard before the end of September 1999, when Master Ungley made his order directing a

A    preliminary issue as to limitation. Equally, he submits, it is quite likely that it would have been remitted to a Queen's Bench master for further directions. In the circumstances, to have required the company to apply to the Companies Court would have simply been to waste time and costs.

47   Mr Methuen submits that an application for a restoration order by a prospective claimant in a personal injuries action should normally be made on notice to the company's insurers and to any other defendants in the proposed action, and (on the authority of *In re Workvale Ltd*) that unless the court hearing the application is satisfied (a) that all the right parties are before it, (b) that no additional evidence would be adduced on an application for relief under section 33 of the Limitation Act 1980, and (c) that such an application would be bound to succeed, the correct course for the court to adopt, assuming that an application under section would be arguable, is that which was adopted by Harman J in *In re Workvale Ltd* [1991] 1 WLR 294: that is to say to make no section 651 direction but to leave it to the applicant to seek relief under section 33.

48   In the instant case, Mr Methuen submits, an application by Mrs Smith under section 33, though plainly arguable, cannot be said to be bound to succeed. In those circumstances, he submits, the judge was plainly right to set aside the section 651 direction and to allow the preliminary issue as to limitation to proceed.

*Conclusions*

49   The starting-point is section 651 itself. Subsection (1) enables the court to declare the dissolution of a company to have been void "on such terms as [it] thinks fit". In the exercise of this jurisdiction the court can adjust the limitation consequences of the declaration so as to produce a just result in the circumstances of the particular case. In our judgment the power to make a section 651 direction is to be found in subsection (1), not in subsection (6). This is consistent with the terms of subsection (6), which does not in terms confer such a power but merely provides that nothing in subsection (5) shall affect that power.

50   Thus in the exercise of the jurisdiction conferred by subsection (1) the court can, in an appropriate case, make a section 651 direction. It is, however, to be borne in mind that in a case where an applicant for a restoration order is a prospective claimant in a personal injuries action in circumstances where the claim would otherwise have been statute-barred, the effect of making a section 651 direction will be the same as granting the applicant relief under section 33 of the 1980 Act.

51   We can now turn to Mr Gore's primary submission, to the effect that there was no defendant available to sue until the restoration order was made, and that it follows that the cause of action cannot have accrued until the restoration order was made. In our judgment, that simply begs the question as to the effect of declaring the dissolution to have been void.

52   In our judgment, the effect of a declaration under section 651(1) declaring the dissolution of a company "to have been void" is as described by Vaisey J *In re C W Dixon* [1947] 1 Ch 251. The section with which Vaisey J was concerned was section 294 of the Companies Act 1929 (which was in all material respects in the same terms as section 651(1)). Vaisey J said, at p 255:

"Anyone can declare a dissolution to be void; it is a mere matter of utterance; but when the court is given power to declare that something has happened, I apprehend the legislature must inevitably intend to give the court power of making a declaration which is effective. In other words, if a declaration is made to that effect, the dissolution is void. It is to be observed that the declaration is not that the dissolution is void at the date of the order, or that it is to be deemed to be void, or that it is to become void, or anything of the kind, but the order which is contemplated is an order declaring 'the dissolution to have been void'; that is to say, void at the time when the company was supposed, wrongly as we now know, to have been dissolved. In my judgment, if I declare the dissolution of C W Dixon Ltd . . . to have been void, the result will be that it was void ab initio, and all the consequences under the [Companies Act 1929], or otherwise, which flow from that dissolution are themselves avoided . . . In my view, the avoidance of dissolution has the effect which one would have expected, and I propose, therefore, to give the present petitioners no more than an order following the precise words of the relevant section."

53  As mentioned earlier, Vaisey J cited *Morris v Harris* [1927] AC 252 as providing support for his decision. In our judgment he was right to do so. In the passages from the speeches of Lord Sumner and Lord Blanesborough on which Mr Gore relies (quoted earlier in this judgment) a crucial distinction is made between on the one hand the corporate existence of the company, which is restored as from the date of the dissolution, and on the other hand proceedings which had taken place during the period of dissolution (referred by Lord Blanesborough as "corporate activity"). In *Morris v Harris* the House of Lords decided that purported acts of a dissolved, and hence non-existent, company were not validated by the subsequent avoidance of the dissolution. But that it not the instant case. In the instant case, all that is needed for the accrual of a cause of action against the company is corporate existence—no question of "corporate activity", in the sense in which Lord Blanesborough used that expression, arises.

54  We conclude, therefore, that by virtue of the restoration order Mrs Smith's cause of action against the company accrued on the date on which it would have accrued but for the dissolution.

55  On that basis, therefore, and leaving the section 651 direction out of account for the moment, the position following the making of the restoration order is that Mrs Smith's claim is statute-barred since she did not commence proceedings within three years of the death of the deceased (that being the applicable limitation period: see section 12(2) of the 1980 Act). Absent the section 651 direction, therefore, Mrs Smith has to seek an order under section 33 of the 1980 Act disapplying section 12(2). Further, as noted earlier, it may also be open to the company to argue that the claim was already statute-barred at the date of the deceased's death, on the basis that the deceased acquired the requisite knowledge more than three years before his death: see section 12(1) of the 1980 Act.

56  However, when one takes the section 651 direction into account, the consequence is that (as pointed out earlier) Mrs Smith is in precisely the same position as if she had obtained relief under section 33. Viewing the

Case 1:03-md-01570-GBD-SN  Document 415-35  Filed 08/30/04  Page 17 of 17

A    section 651 direction in that light, one can readily see why justice requires that it be set aside so that the company's insurers may have an opportunity of being heard on the issue of limitation and in opposition to Mrs Smith's application under section 33.

57 Nor, in our judgment, is this a case like *In re Workvale Ltd* in which the court can see at this stage that an application by Mrs Smith under section 33 is bound to succeed. The judge was in our judgment clearly right

B    not to reach a concluded view as to that. In any event, that is a matter which would fall for consideration at first instance (rather than in the Court of Appeal), in the context of a hearing at which the company's insurers have the opportunity of being present and where all the evidence on which the parties would wish to rely in an application under section 33 is before the court.

C    58 In our judgment, therefore, the decision of the judge to set aside the section 651 direction, far from being perverse, was entirely in accordance with the overriding objective of doing justice in the case. The judge having, as he put it, cleared the procedural ground, the parties can litigate the limitation issues as preliminary issues in the action, as directed by Master Ungley.

59 We accordingly conclude that the judge took the right procedural

D    course for the right reasons.

60 Finally, as a matter of general practice it seems to us that where a restoration order is sought in the Companies Court by a prospective claimant in a personal injuries action a section 651 direction should not normally be made unless (a) notice of the application has first been given to all those parties who may be expected to oppose the making of such a

E    direction, including the company's insurers, and (b) (following the decision of this court in *In re Workvale Ltd* [1992] 1 WLR 416) the court is satisfied: (i) that it has before it all the evidence which the parties would wish to adduce on an application by the prospective claimant under section 33; and (ii) that an application under section 33 would be bound to succeed.

61 If the above conditions are not met, the applicant should normally be left to seek relief under section 33: in other words, the court should take the

F    course which Harman J took in *In re Workvale Ltd* [1991] 1 WLR 294.

62 For the reasons which we have given, however, we would dismiss this appeal.

*Appeal dismissed with costs.*

Solicitors: Field Fisher Waterhouse; Davies Arnold Cooper.

G

Reported by EDWINA EPSTEIN, Barrister