# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
In Re TERRORIST ATTACKS on          )    03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                  )    ECF Case
                                    )
_____)

*This document relates to: Kathleen Ashton v. Al Qaeda Islamic Army*, 02 CV 6977 (RCC)

### SUPPLEMENTAL DECLARATION OF JORGE JUCO

1.  My name is Jorge Juco and I am employed by The National Commercial Bank ("NCB") in Jeddah, Kingdom of Saudi Arabia as a legal advisor. This declaration supplements my previous declaration ("Original Declaration"), executed on September 22, 2003, which I understand was submitted to the U.S. court in connection with NCB's motion to dismiss the Fourth Amended Consolidated Master Complaint. I submit this supplemental declaration in further support NCB's motion to dismiss, filed on March 19, 2004. I am advised by NCB's United States legal counsel that this supplemental declaration is not intended to waive, in any way, NCB's claim of immunity from suit or its jurisdictional defenses, and is not intended to be a general appearance by NCB in this lawsuit. I understand and believe the following matters to be true, through the date of this supplemental declaration, based both on my personal knowledge and on inquiries made of other personnel who have knowledge about specific matters addressed in this supplemental declaration. I have been assisted by NCB's United States legal counsel in the phrasing of this supplemental declaration.

2.  The Ashton Plaintiffs' Opposition to National Commercial Bank's Motion to Dismiss ("Opposition") and the Affidavit of John Fawcett in Support of Ashton Plaintiffs' Opposition to National Commercial Bank's Motion to Dismiss ("Fawcett Affidavit") make statements concerning office space in New York City that was previously leased by a former, second-tier subsidiary of NCB called SNCB Securities, Inc. ("SNCB"). The purpose of this

1

supplemental declaration is to provide the Court with the facts concerning the status of SNCB and its former lease of office space at 420 Lexington Avenue, Room 460, New York, New York 10170 (the "SNCB New York office").

3. As stated in my Original Declaration, and as confirmed by the Fawcett Affidavit (paragraph 4 and exhibit 3), SNCB was dissolved on February 28, 2001. Orig. Decl., ¶ 5 & Exh. A. In connection with its dissolution, SNCB surrendered the SNCB New York office effective January 31, 2001 pursuant to a Surrender Agreement entered into between SNCB and its landlord SLG Graybar Sublease LLC on February 16, 2001. A true and correct copy of the Surrender Agreement is attached to this supplemental declaration as Exhibit A.

4. No one at NCB has control over what the landlord or building manager lists in the lobby building directory at 420 Lexington Avenue, which, according to paragraph 6 of the Fawcett Affidavit, indicates that "SNBC (sic) Securities, Inc." occupies Suite 460. Neither NCB nor any NCB affiliate (other than SNCB) has ever occupied that office space. SNCB has not occupied that office space since the Surrender Agreement took effect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my knowledge, information and belief.

Executed in this 25th day of May 2004 (A.D.) in Jeddah, Kingdom of Saudi Arabia.

_____
Jorge Juco

2

**Exhibit A**

## SURRENDER AGREEMENT

SURRENDER AGREEMENT (this "Agreement") dated as of the 16th day of February, 2001 between SLG Graybar Sublease LLC, having an office c/o SL Green Realty Corp., 420 Lexington Avenue, New York, New York 10170 (hereinafter referred to as "Landlord") and SNCB Securities, Inc., a Delaware corporation, having an office at 420 Lexington, New York, New York 10170 (hereinafter referred to as "Tenant").

### WITNESSETH:

WHEREAS, Landlord, as landlord, and Tenant, as tenant, entered into that certain lease agreement (the "Lease") made as of February 29, 2000, covering certain premises consisting of Room 460 more particularly described therein (the "Premises") in the building known as 420 Lexington, New York, New York (the "Building") under the terms and conditions contained therein; and

WHEREAS, the term of the Lease is set to expire on March 31, 2005 (the "Expiration Date") unless earlier terminated in accordance with the provisions thereof; and

WHEREAS, Tenant has requested that Landlord agree to cancel the Lease prior to the Expiration Date and accept surrender of the Premises effective as of January 31, 2001 (the "Early Cancellation Date") subject to and in accordance with the terms and conditions of this Agreement;

WHEREAS, Tenant acknowledges and agrees that Landlord intends to lease the Premises to a third-party for a term commencing immediately following the Early Cancellation Date; and

WHEREAS, Landlord has agreed to cancel the Lease prior to the Expiration Date and accept surrender of the Premises under the terms and conditions contained herein;

NOW, THEREFORE, in consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. *Cancellation of Lease and Surrender of Premises.*

Tenant hereby surrenders to Landlord effective as of January 31, 2001 (the "Early Cancellation Date") the Lease and the term and estate thereby granted (including all renewal and/or extension rights), together with the Premises thereby demised, with the intent and purposes that the estate of Tenant in and to the Premises shall be extinguished in its entirety and the term of the Lease shall expire on the Early Cancellation Date with the same force and effect as if the Early Cancellation Date were the original Expiration Date of the term of the Lease subject, however, to the provisions of this Agreement. On or prior to the Early Cancellation

Date, Tenant shall deliver to Landlord possession of the Premises (i) vacant and broom clean, (ii) free of all rights in any other party, as tenant, subtenant or other occupant ("Occupancies") and all encumbrances and (iii) otherwise in accordance with the terms, covenants and conditions of the Lease as if the Early Cancellation Date were the Expiration Date. On or before the Early Cancellation Date, Tenant shall pay to Landlord the sum of $23,327.50 (the "Surrender Consideration") as consideration for Landlord's Agreement to accept Tenant's surrender of the Premises in accordance with the provisions hereof; provided, however, that if Tenant surrenders the Premises to Landlord in accordance with the provisions of this Agreement on or before the Early Cancellation Date, time being of the essence, and is not in default of the Lease, Landlord shall apply the security deposit held by Landlord under the Lease (which Tenant acknowledges and agrees is in the amount of $23,327.50) towards the payment of the Surrender Consideration.

2. **Tenant's Representations and Warranties.**

Tenant hereby represents and warrants to Landlord, its successors and assigns, that: (i) the Lease has not been assigned, pledged or encumbered, (ii) except for Tenant, the Premises are free of all Occupancies, (iii) Tenant has not created or suffered any Occupancies in and/or to the Premises through and including the date of this Agreement and (iv) no materials, personality, furnishings, personal property, fixtures, trade fixtures and equipment ("Property") presently in the Premises are subject to any lien, encumbrance, chattel mortgage, title retention or security agreement and no action has been taken or suffered by Tenant as a result of which either the Premises or any Property shall or might be subject thereto. Tenant covenants and agrees that it shall not at any time hereafter create, suffer or permit the creation of any such rights or encumbrances in or to the Premises or the Property contained therein. Any Property left in the Premises by Tenant after the Early Cancellation Date shall be deemed to have been abandoned by Tenant, and Landlord shall have the right to retain or dispose of such Property in any manner at the expense of Tenant without any obligation to account to Tenant therefor.

3. **Survival of Obligations.**

Neither the cancellation of the Lease hereunder nor the surrender of the Premises pursuant hereto shall release Tenant from its liability for any of its obligations accruing: (a) under this Agreement, or (b) under the Lease through and including the Early Cancellation Date. Tenant acknowledges and agrees that (i) the Lease is in full force and effect, that Landlord is not in default in performance of any covenant, agreement or condition contained in the Lease and that there are no offsets or defenses which Tenant may have against Landlord and (ii) no consideration has been paid or is payable by Landlord in connection with the transaction which is the subject of this Agreement.

4. **Successors and Assigns.**

This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

2

5. <u>Entire Agreement</u>.

The Lease, as modified by this Agreement, represents the entire understanding between the parties with regard to the matters addressed herein and may only be modified by written agreement executed by all parties hereto. All prior understandings or representations between the parties hereto, oral or written, with regard to the matters addressed herein, other than the Lease, are hereby merged herein. Tenant acknowledges that neither Landlord nor any representative or agent of Landlord has made any representation or warranty, express or implied, except as specifically set forth in this Agreement. Tenant has not been induced by and has not relied upon any statement, representation or agreement, whether express or implied, not specifically set forth in this Agreement. Tenant shall not be liable or bound in any manner by any oral or written statement, broker's "set-up," representation, agreement or information pertaining to this Agreement furnished by any real estate broker, agent, servant, employee or other person, unless specifically set forth herein, and no rights are or shall be acquired by Tenant by implication or otherwise unless expressly set forth herein.

6. <u>Effectiveness</u>.

This agreement shall not be binding upon Landlord and Tenant until executed and delivered by both Landlord and Tenant.

7. <u>Ratification</u>.

Except as specifically modified herein, all other terms, covenants and conditions of the Lease are and shall remain in full force and effect and are hereby ratified and confirmed. Tenant acknowledges that Landlord has not waived any requirement of the Lease, Landlord is not in breach of the Lease and Tenant has no claim for any failure of Landlord to perform it obligations under the Lease.

8. <u>No Brokers/Indemnification</u>.

Tenant covenants, represents and warrants that Tenant has had no dealings or negotiations with any broker or agent in connection with the consummation of this agreement other than SL Green Leasing LLC with whom Tenant has dealt in connection with this Agreement solely as a consultant to Tenant, and Tenant covenants and agrees to defend, hold harmless and indemnify Landlord from and against any and all cost, expense (including reasonable attorneys' fees) or liability for any compensation, commissions or charges claimed by any broker or agent with respect to this Agreement or the negotiation thereof.

9. <u>Miscellaneous</u>.

(a) The captions in this Agreement are for convenience only are not to be considered in construing this agreement.

(b) This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this agreement to be drafted.

3

(c)    Terms used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed thereto in the Lease.

(d)    If any provision of this Agreement or its application to any person or circumstances is invalid or unenforceable to any extent, the remainder of this agreement, or the applicability of such provision to other persons or circumstances, shall be valid and enforceable to the fullest extent permitted by law and shall be deemed to be separate from such invalid or unenforceable provisions and shall continue in full force and effect.

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Agreement as of the day and year first above written.

SLG GRAYBAR SUBLEASE LLC, a New York limited liability company

BY: SLG GRAYBAR SUBLEASE CORP., a New York corporation, its Managing Member

By: _____
Name:
Title: Andrew S. Levine
       Executive Vice President

Witness:

_____
Name:
Title:

SNCB Securities, Inc.

By: _____
Name: THOMAS M. KROHLEY
Title: President

Witness:
_____
Name: ESPERANZA QUINTERO
Title:

4