UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)

## SUPPLEMENTAL AFFIDAVIT IN FURTHER OPPOSITION TO NATIONAL COMMERCIAL BANK'S MOTION TO DISMISS

State of New York   )
                    ).ss.:
County of New York  )

David K. Draper, being sworn, states:

1. I am a banking consultant to Motley Rice, LLC, counsel for plaintiffs in *Burnett vs. Al Baraka Investment and Development Corp.* I also serve as a Managing Director of Hemisphere Capital Partners, LLC. a Merchant Banking Firm, located in New York City. My background includes serving as a Vice President of International Commercial Lending at The Fuji Bank, Ltd. and a Commercial Lending Officer at the Bank of America. I submit this affidavit to bring to the Court's attention information concerning the ownership of National Commercial Bank ("NCB"), one of the defendants in *Burnett*.

2. I understand that NCB contends that a majority of its shares are owned by the government of Saudi Arabia through an entity known as the Public Investment Fund ("PIF") and that NCB contends that it is, accordingly, an "agency or instrumentality" of

1

the Saudi government, entitled to sovereign immunity. I have been advised by plaintiffs' counsel that, with respect to "agency or instrumentality" status, the relevant point in time is the date on which the lawsuit is filed. My review of certain banking resources as described below leads me to believe that on August 15, 2002, the date the *Burnett* action was commenced, the PIF did not yet own a majority of the shares of NCB. Rather, on that date, it appears from the records I have examined, that 50% of NCB was owned by the PIF and the remaining 50% of NCB was in private hands. At some later point, the PIF increased its holdings and came to own more than 50% of NCB but so far as I can tell from the documents I have examined, on the date the *Burnett* case was filed, 50% of NCB was owned by private individuals, so that a majority (which I understand to mean more than 50%) could not have been held by the Saudi government at that time.

3.     Among the documents I reviewed is a *Bankers' Almanac* profile on Saudi National Commercial Bank (NCB) dated June 2002. A copy of the profile, as downloaded from the Internet (with my hand-written notes, for which I apologize), is annexed as Exhibit 1. Based on my experience as a banker, I am aware that the *Bankers' Almanac* is viewed in the banking community as a reputable and reliable source for information on the international banking market. The information is updated continuously and *Bankers' Almanac* products have become essential tools for professionals involved in processing payments, credit analysis and financial research.

4.     As reflected in the *Bankers Almanac* report, NCB was founded in 1938, established as Joint Liability Partnership in 1951 as the first Licensed Saudi bank, and became a Joint Stock company on July 1, 1997. In May of 1999 the PIF purchased 50 % of the outstanding stock and subsequently sold 10% of the ownership to The General

Organization for Social Insurance. A number of individuals owned the other 50% of the joint stock, including Naila Kaki (the wife of Khalid bin Mahfouz), Abdulrahman bin Mahfouz, Sultan bin Mahfouz, Abdullah Kamel, Khalid Salim bin Mahfouz and Abdul Qader Al-Fadl.

5. The information from the *Bankers' Almanac* is confirmed by information on a website operated by Khalid bin Mahfouz known as Bin Mahfouz Information, http://www.binmahfouz.info/history.html. As set forth on that website:

> [I]n 1997, Khalid Bin Mahfouz sold a 20.7% stake in NCB to a group of private investors in order to facilitate the transition of the bank on 1st July that year from an unlimited liability private partnership to an incorporated public limited company. In 1999, a further 50% of the family's holding was sold to the Saudi Public Ownership Fund and in late 2002, the family sold its remaining stake to the same fund.

A copy of a screen print from that website is annexed as Exhibit 2.

6. I have also looked at the website operated by AME Info, a respected Middle Eastern media outlet (http://www.ameinfo.com/news/Detailed/16806.html). As reported on that site on January 22, 2003, the increase in state shareholding in NCB from 50% to 80% was on that date a "recent" event. (A copy of the article from AME info is annexed as Exhibit 3.)

7. I have also used waybackmachine.org, a website archive retrieval tool that permits viewing of historical versions of websites, to view National Commercial Bank's own website, www.alahli.com, as it appeared during 2002 and the first half of 2003. Throughout 2002 and through April of 2003, NCB's website described PIF's acquisition of 50% of NCB's stock. (A copy of a description of NCB from the NCB website as it appeared in April, 2003 is annexed as Exhibit 4.) In late May or early June, 2003, the website was changed so that, in a section labeled "Press Releases," a message from the

Chairman, Abdulla S. Bahamdan, stated that the transfer of NCB's ownership "took longer than had been expected and was only finished in late 2002." The Chairman's message went on to report PIF's holding as 69.3% of NCB's stock. As far as I can tell from the archived web pages, this was the first time that NCB's web site reported ownership by public entities of more than 50%. A copy of the 2003 web page with the revised information is annexed as Exhibit 5.

8. Based on this information, it appears that on August 15, 2002, the PIF owned only 50% of NCB and that it increased its holdings to a majority share at the end of 2002.

9. I understand that NCB has submitted an affidavit asserting that a majority of its shares are owned by the government of Saudi Arabia. I have reviewed this affidavit and I note that it does not state the date on which Saudi governmental entities acquired more than 50% of the shares of NCB; rather it asserts in the present tense (apparently, as of the date of the affidavit, in 2003) that a majority of NCB's shares are owned by the Saudi government entities. I have also reviewed NCB's annual reports. These reports similarly do not provide the precise date on which PIF's (or any other Saudi government entity's) share of ownership in NCB increased beyond 50%.

_____
David K. Draper

Sworn to before me this
21st day of September 2004.

_____
Notary Public

MARY PALMER
Notary Public, State of New York
No. 31-4946822
Qualified in New York County
Commission Expires March 18, 20 07

4