**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*       Federal Insurance Co. v. al Qaida
03 CV 06978 (RCC)

**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE MOTION TO DISMISS**
**FILED BY SALEH ABDULLAH KAMEL**
**AND AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:  (215) 665-2013

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................................1

II.   ALLEGATIONS AGAINST SALEH ABDULLAH KAMEL AND AL
      BARAKA INVESTMENT AND DEVELOPMENT CORPORATION ..............................1

      A.   Allegations Against Al Qaida's Partners in the International Banking
           System...........................................................................................................1

      B.   Allegations Against Saleh Abdullah Kamel ...................................................2

      C.   Allegations Against Al Baraka Investment and Development Corporation..................3

III.  ARGUMENT..............................................................................................................5

      A.   Applicable Standards on a Motion to Dismiss................................................5

           1.   Rule 12(b)(1)........................................................................................5

           2.   Rule 12(b)(6)........................................................................................6

      B.   This Court Has Subject-Matter Jurisdiction Over the Defendants
           and § 403 (2)(a) of the Restatement (Third) of Foreign Relations
           Does Not Preclude the  Exercise of that Jurisdiction.....................................8

           1.   The Defendants' Claim that § 403 (2)(a) of the Restatement Requires
                a "Direct" Link Does Not Address Subject-Matter Jurisdiction..............8

           2.   The Defendants' Argument that the "by reason of" Language in
                the ATA Requires A Direct Relation Between the Injury Asserted
                and  the Injurious Conduct Alleged Misconstrues the Statute...............11

           3.   The Defendants' Argument that the Supreme Court Has Stated that,
                for Jurisdictional Purposes, Effects on the U.S. Are Direct If They
                Follow Immediately from the Defendants' Activity is Misleading......................12

           4.   The RICO, Securities Law, and Antitrust Cases that Defendants
                Rely on to Support Their Jurisdiction Argument Are Inapplicable.....................13

      C.   The Defendants' Failure to State a Claim Argument Fails Because
           They Demand a Higher Burden of Pleading and Seek to Prematurely
           Test the  Evidence ......................................................................................14

      D.   The Federal Plaintiffs Have Sufficiently Alleged Claims Under the
           Anti-Terrorism and Effective Death Penalty Act .......................................17

1.   The Federal Plaintiffs Have Adequately Alleged Claims
     Under the ATA Pursuant to General Tort Principles.............................................18

2.   The Federal Plaintiffs Have Adequately Alleged Claims Under
     the ATA Based Upon the Defendants' Criminal Violations ................................20

3.   The Federal Plaintiffs Have Adequately Pled Causation......................................21

IV.   CONCLUSION.......................................................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

Bingham v. Meachum,
    77 F.3d 626 (2d Cir. 1996).......................................................................7

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) .......................................................12, 18, 20

Burnett v. Al Baraka Investment & Development Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .........................................................5, 15-16

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998)......................................................................7

Conley v. Gibson,
    355 U.S. 41 (1957)...............................................................................6-7

Continental Ore Co. v. Union Carbide & Carbon Corp.,
    370 U.S. 690 (1962)..............................................................................21

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980)............................................................6, 15, 17

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) .......................................................18-19, 21

Hartford Fire Insurance v. California,
    509 U.S. 764 (1993)...........................................................................8-11

Humanitarian Law Project v. Reno,
    205 F.3d 1130 (9th Cir. 2000) ...........................................................17-18

In re Initial Public Offering Sec. Litigation,
    241 F. Supp. 2d 281 (S.D. N.Y. 2003)....................................................7-8

Jameel v. Times Newspapers, Ltd.,
    2003 EWHC 2609 (Q.B. November 7, 2003)(Gray, J.) ...................................15

Kreindler & Kreindler v. United Techs. Corp.,
    985 F.2d 1148 (2d Cir. 1993)....................................................................6

Leatherman v. Tarrant County,
    507 U.S. 163 (1993).............................................................................7

Lumbard v. Maglia, Inc.,
    621 F. Supp. 1529 (S.D. N.Y. 1985)....................................................................21

Magee v. Nassau County Medical Center,
    27 F. Supp. 2d 154, 158 (EDNY 1998) ..............................................................6

Merrill Lynch Futures, Inc. v. Kelly,
    585 F. Supp. 1245 (S.D. N.Y. 1984)..................................................................19

In re Phillip Servs. Corp. Secs. Litig.,
    No. 98-CIV-0835 (MBM), 2004 U.S. Dist. LEXIS 9261
    (S.D. N.Y. May 24, 2004)....................................................................................6

Republic of Argentina v. Weltover,
    504 U.S. 607 (1992)...................................................................................... 12-13

Rich-Taubman Associate v. Stamford Restaurant Operating Co., Inc.,
    587 F. Supp. 875 (S.D. N.Y. 1984)............................................................... 18-19

Shipping Financial Services Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998)................................................................................6

Simmons v. Abruzzo,
    49 F.3d 83 (2d Cir. 1995) ....................................................................................6

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2002) ..........................................................................8

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)............................................................................7, 14, 17, 20

Wahad v. FBI,
    813 F. Supp. 224 (S.D. N.Y. 1993)................................................................ 18-19

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001)...........................................................7, 15, 17, 22

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004) ......................................................................... 6-7, 14

Yilmaz v. McElroy,
    No. 00-CV-7542 (RCC), 2001 U.S. Dist. LEXIS 20839
    (S.D. N.Y. Dec. 17, 2001)............................................................................ 5-7, 22

Yoder v. Orthomolecular Nutritionist Institute, Inc.,
      751 F.2d 555 (2d Cir. 1985)............................................................6

## RULES, STATUTES AND RESTATEMENTS

18 U.S.C. § 1961 ..............................................................................13

18 U.S.C. § 2331 ....................................................................5, 8, 9-10

18 U.S.C. § 2333 ........................................................................9, 11-12

18 U.S.C. §§ 2339A, 2339B, 2339C.............................................20

28 U.S.C. § 1330 ..............................................................................13

28 U.S.C. § 1605(a)(2)...................................................................13

Fed. R. Civ. P. 8(a) .......................................................................5, 7

Fed. R. Civ. P. 9(b) ...........................................................................7

Fed. R. Civ. P. 12(b)(1)...............................................................5, 10

Fed. R. Civ. P. 12(b)(6)...............................................................6-8

U.S. Const. art. I, § 8, cl. 3 ...........................................................9

U.S. Const. art. I, § 8, cl. 10 .........................................................9

U.S. Const. art. I, § 8, cl. 18 .........................................................9

U.S. Const. art. III, § 2 ..................................................................9

Restatement (Third) of Foreign Relations § 403 ..................5, 8-13, 21

Restatement (Third) of Foreign Relations § 402 ....................11

Restatement (Third) of Foreign Relations § 404 ....................11

## I.      INTRODUCTION

The Federal Plaintiffs have sued Saleh Abdullah Kamel ("Kamel") and Al Baraka

Investment and Development Corporation ("ABDIC") based on their participation in a global

conspiracy to conduct terrorist attacks against the United States, spearheaded by al Qaida, of

which the September 11th Attack was a natural, intended and foreseeable product.  FAC ¶¶ 72.

306, 333, 342, 600, 625, 632 & 640.

## II.     ALLEGATIONS AGAINST SALEH ABDULLAH KAMEL AND AL BARAKA
       INVESTMENT AND DEVELOPMENT CORPORATION

The First Amended Complaint ("FAC") alleges that Kamel and ABIDC were among the

sponsors of terrorism whose participation in al Qaida's global conspiracy led to the Attack and

its devastating consequences.  FAC ¶¶ 299-306 & 501-02.  Specifically, as the following

discussions will demonstrate, the FAC alleges that Kamel and ABIDC aided and abetted,

conspired with, and provided material support and resources to al Qaida and/or affiliated foreign

terrorist organizations, associations, organizations or persons.  FAC ¶¶ 66 & 73.

### A.      Allegations Against Al Qaida's Partners in the International Banking System

While testifying before Congress, U.S. Treasury Department General Counsel David

Aufhauser estimated that al Qaida had an annual budget of approximately $35 million in the

years leading up to the September 11th Attack.  FAC ¶ 253.  As with any global criminal

enterprise, al Qaida's survival required that it develop safe and efficient mechanisms to launder

and distribute the funds required to sustain the global operations of individuals and entities

operating within its infrastructure throughout the world.  FAC ¶ 254.  The scope of al Qaida's

global operations, the number of entities operating within its infrastructure, and the extent of its

funding required that al Qaida resort to the international banking system to facilitate the

distribution and laundering of its funds.  FAC ¶ 255.  Simultaneously, al Qaida needed to avoid

triggering any of the regulatory devices developed by the international banking system to identify money laundering and illicit financial transactions.  FAC ¶ 255.  By both establishing its own financial institutions in under-regulated jurisdictions and fostering relationships with banks and individuals operating within the Islamic banking system that shared al Qaida's perverse worldview and were willing collaborators in al Qaida's global *jihad*, al Qaida was able to gain access to the international banking system and conceal the illicit nature of the transactions that it conducted through that system.  FAC ¶ 256.

The financial institutions established by al Qaida and its partner banks within the Islamic banking system operated as fully integrated components of al Qaida's financial and logistical infrastructure.  FAC ¶ 257.  These banks knowingly maintained accounts for individuals and organizations operating within al Qaida's infrastructure, and facilitated transfers between those entities.  FAC ¶ 257.  Furthermore, many of these banks directly funded al Qaida's global operations.  FAC ¶ 257.  And once funds had been deposited with or laundered through one of the banks operating within al Qaida's infrastructure, al Qaida could move funds throughout the world by exploiting correspondent banking relationships.  FAC ¶ 257.

Absent the material support and sponsorship provided by banks and individuals within the Islamic banking system, al Qaida would have remained a regional extremist organization incapable of conducting large scale terrorist attacks on a global level.  FAC ¶ 258.  The FAC alleges, as the following discussions will show, that Kamel and ABIDC were key players in the Islamic banking system that supported al Qaida's global operations.

**B.**     **Allegations Against Saleh Abdullah Kamel**

Kamel is a wealthy Saudi businessman and one of al Qaida's principal individual financiers.  FAC ¶ 501.  Kamel is a shareholder in Al Shamal Islamic Bank and Tadamon Islamic Bank, as well as the Chairman of al Baraka Financial Institution.  FAC ¶ 501.  Those

three institutions are deeply involved in providing financial services and other forms of material support to al Qaida.  FAC ¶ 501.  In addition to those institutions, Kamel also co-founded the U.S. branch of Sana-Bell, Inc., an enterprise established to provide revenues to sustain the U.S. operations of the International Islamic Relief Organization ("IIRO").  FAC ¶ 501.  In founding Sana-Bell, Inc., Kamel knew and intended that it would be used as a vehicle for funding terrorist organizations, including al Qaida.  FAC ¶ 501.

In addition, Kamel has made substantial contributions to many of the charities operating within al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's global operations and terrorist attacks.  FAC ¶ 501.  He is identified on the "Golden Chain" document as one of al Qaida's principal financiers.  FAC ¶ 501.  The Golden Chain is "a list of people referred to within al Qaida" as wealthy donors to the al Qaida movement.  FAC ¶ 101.

Through his for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, Kamel has aided and abetted, conspired with, and long provided material support and resources to al Qaida and/or affiliated foreign terrorist organizations, associations or persons.  FAC ¶¶ 66 & 502.  Furthermore, the September 11th Attack was a direct, intended and foreseeable product of Kamel's participation in the conspiracy among the defendants to commit acts of international terrorism against the U.S., its nationals and allies.  FAC ¶ 72.

C.      **Allegations Against Al Baraka Investment and Development Corporation**

ABIDC is a wholly owned subsidiary of Dallah al Baraka Group, LLC., and it is headed by Kamel.  FAC ¶ 298.  ABIDC has knowingly maintained accounts for many of the charity defendants that operate within al Qaida's infrastructure.  FAC ¶ 299.  In cooperation with those charities operating within al Qaida's infrastructure, ABIDC advertises the existence and

numerical designations of the accounts it maintains for those charities throughout the Muslim world, and it provides a mechanism to all al Qaida's supporters to deposit funds directly into those accounts.  FAC ¶ 300.  By providing such a mechanism, ABIDC facilitates al Qaida's fundraising efforts.  FAC ¶ 300.  The accounts maintained by ABIDC on behalf of the charities operating within al Qaida's infrastructure have been used to transfer funds to al Qaida cells throughout the world.  FAC ¶ 301.  In particular, according to Bosnian officials, the accounts ABIDC maintained on behalf of al Haramain Islamic Foundation, a Saudi Arabia-based ostensible charity, have served as a principal vehicle for funding al Qaida's operations in Bosnia. FAC ¶¶ 167 & 301.

ABIDC has long known that the accounts it maintained for many ostensible charities were being used to solicit and transfer funds to terrorist organizations, including al Qaida.  FAC ¶ 302.  Despite this knowledge, ABIDC has continued to maintain those accounts.  FAC ¶ 303. In doing so, ABIDC knowingly provided financial services and other forms of material support to al Qaida.  FAC ¶ 303.  Additionally, ABIDC has provided substantial support to al Qaida through its subsidiaries and affiliates, including Al Shamal Islamic Bank, Tadamon Islamic Bank and al Aqsa Bank.  FAC ¶ 304.

As the above discussion shows, ABIDC has, for many years, provided critical financial and logistical support to al Qaida in relation to that terrorist organization's global *jihad*.  FAC ¶ 305.  Thus, ABIDC has aided and abetted, conspired with, and long provided material support and resources to al Qaida and/or affiliated foreign terrorist organizations, associations or persons. FAC ¶ 66.  Moreover, the September 11th Attack was a direct, intended and foreseeable product of ABIDC's participation in al Qaida's jihadist campaign.  FAC ¶ 306.

III.   **ARGUMENT**

The Defendants make two broad arguments in favor of dismissal of the Federal Plaintiffs'

FAC:  (1) that this Court lacks subject-matter jurisdiction,[1] and (2) that the Federal Plaintiffs

have failed to state a claim.  See K & A Br. at 1-4, 6, & 14.[2]  This Court has subject-matter

jurisdiction under the Anti-Terrorism and Effective Death Penalty Act ("ATA"), 18 U.S.C. §

2331, *et seq*.  Additionally, because the Federal Plaintiffs have sufficiently pled a cause of

action under FED. R. CIV. P. 8(a) and the ATA, the Defendants' motion must be denied.  The

Federal Plaintiffs also alert this Court to the fact that they are responding to the arguments set

forth in the summary memorandum of law filed by Kamel and ABIDC in this case.[3]

A.   **Applicable Standards on a Motion to Dismiss**

1.   **Rule 12(b)(1)**

In ruling on those parts of the Defendants' Motion to Dismiss brought pursuant to Federal

Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, this Court must presume

that all of the Federal Plaintiffs' allegations are true and read the FAC in the light most favorable

---

[1]      The Defendants' subject-matter jurisdiction argument is that this Court lacks jurisdiction because there is no direct and foreseeable causal connection between their actions and the Attack on September 11th.  Because the Defendants' subject-matter jurisdiction argument is primarily based on the Anti-Terrorism and Effective Death Penalty Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, and the RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 403 (2)(a) (1987) ("Restatement"), the Federal Plaintiffs assert that the Defendants are not challenging subject-matter jurisdiction. Instead, the Defendants are attempting to put forth their substantive challenges to the FAC under the guise of subject-matter jurisdiction.  Although the Federal Plaintiffs do not view the Defendants' argument to be a challenge to this Court's subject-matter jurisdiction, the Federal Plaintiffs do address the merits of the Defendants' so-called subject-matter jurisdiction argument in order to demonstrate to this Court that it fails as a matter of law.  See Part III, B, *infra*.

[2]      Kamel and ABIDC have filed a joint memorandum of law in support of their Motion to Dismiss, which is referred to herein as "K & A Br."

[3]      In Burnett, the Defendants filed a 62 page memorandum of law in support of their motion to dismiss, as well as attachments.  Now, through incorporation, they seek to have the Federal Plaintiffs respond to arguments put forth in both that 62 page memorandum of law and the 20 page "summary version" filed in the Federal Plaintiffs' case.  See K & A Br. at 1.  As a result, the Federal Plaintiffs only respond to those arguments found in the "summary version" filed in the Federal Plaintiffs' case.  The Federal Plaintiffs cannot be expected to respond to two memoranda, let alone a 62 page memorandum, in the 25 pages allowed by this Court.

to the Plaintiffs.  See Yilmaz v. McElroy, No. 00-CV-7542 (RCC), 2001 U.S. Dist. LEXIS

20839, at * 6 (S.D. N.Y. Dec. 17, 2001) (*citing* Shipping Financial Servs. Corp. v. Drakos, 140

F.3d 129, 131 (2d Cir. 1998)).  In most cases, the Court will consider a motion brought under

Rule 12(b)(1) before ruling on any other motions to dismiss, since dismissal of an action for lack

of subject-matter jurisdiction will render all other accompanying defenses and motions moot.

See id. at * 5 (*citing* Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1155-56 (2d

Cir. 1993)).  Consequently, a court confronted with a motion to dismiss pursuant to Rule

12(b)(1), as well as Rule 12(b)(6), must decide the jurisdictional questions first because "a

disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of

jurisdiction."  Id. at * 5-6 (*quoting* Magee v. Nassau County Medical Ctr., 27 F. Supp. 2d 154,

158 (E.D. N.Y. 1998)).

### 2.  Rule 12(b)(6)

In ruling on those parts of the present motion brought pursuant to Rule 12(b)(6), for

failure to state a claim, it is important to remember that the motion must be denied unless "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted);

Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Simmons v. Abruzzo, 49 F.3d 83, 87

(2d Cir. 1995).  Moreover, "[i]t is elementary that, on a motion to dismiss, the Complaint must

be read as a whole."  In re Phillip Servs. Corp. Secs. Litig., No. 98-CIV-0835 (MBM), 2004 U.S.

Dist Lexis 9261, at * 32 (S.D. N.Y. May 24, 2004) (*quoting* Yoder v. Orthomolecular

Nutritionist Inst., Inc., 751 F.2d 555, 562 (2d Cir. 1985) (citation omitted)).  The Court's role is

"not to assay the weight of the evidence which might be offered in support" of the FAC, but

"merely to assess the legal feasibility" of the FAC.  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d

Cir. 1980) (*citing* Conley, 355 U.S. at 45).  In evaluating whether the Federal Plaintiffs

ultimately could prevail, the Court must accept as true the facts alleged in the FAC and draw all reasonable inferences in favor of the Federal Plaintiffs.  See Yilmaz, 2001 U.S. Dist. LEXIS 20839, at * 6 .  The Federal Plaintiffs "are not required to prove [their] case at the pleading stage; indeed, the pleading of evidence should be avoided."  Woodford v. Cmty. Action Agency, 239 F.3d 517, 526 (2d Cir. 2001) (internal quotation marks and citations omitted).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (*quoting* Bingham v. Meachum, 77 F.3d 626 (2d Cir. 1996) (citation omitted)).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of FED. R. CIV. P. 8(a)(2), which is extremely permissive.  Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).  Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief," and that such a statement simply shall "give the respondent fair notice of what the petitioner's claims are and the grounds upon which they rest."  Id. (*quoting* Conley, 355 U.S. at 47); see also Wynder, 360 F.3d at 77.  Furthermore, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those prescribed under Rule 8(a).  See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).  As a judge in this District recently explained, "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."  In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D. N.Y. 2003) (*quoting* Conley, 355 U.S. at 48).  Thus, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly written sentence can satisfy Rule

7

8(a)(2)." Id. at 323.  By way of illustration, one Court of Appeals recently held that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be sufficient to survive a Rule 12(b)(6) motion.  Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002).

**B.    This Court Has Subject-Matter Jurisdiction Over the Defendants and § 403 (2)(a) of the Restatement (Third) of Foreign Relations Does Not Preclude the Exercise of that Jurisdiction**

This Court has subject-matter jurisdiction pursuant to the ATA, 18 U.S.C. § 2331, *et seq*. The Defendants, however, assert that the causal connection between their actions and the Attack on September 11th is a question of subject-matter jurisdiction.[4]  K & A Br. at 15.  In taking this approach, they misconstrue the applicability of the RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 403 (2)(a) (1987)[5] ("Restatement") and the Supreme Court's decision in Hartford Fire Ins. v. California, 509 U.S. 764 (1993).

**1.    The Defendants' Claim that § 403 (2)(a) of the Restatement Requires a "Direct" Link Does Not Address Subject-Matter Jurisdiction**

The Defendants contend that subject-matter jurisdiction is appropriate only if the Federal Plaintiffs can prove that their actions had a direct and foreseeable effect on the U.S. or its

---

[4]    Although the Defendants assert that subject-matter jurisdiction in this case is dependent on direct causation, the Federal Plaintiffs address the specific allegations linking the Defendants to al Qaida and the September 11th Attack in the discussion of the Defendants' Rule 12(b)(6) argument.  See Part III, D, 3, *infra*.  The Federal Plaintiffs take this approach because, other than a challenge to the ATA itself and an attempt to read § 403 of the Restatment into the ATA, the Defendants discussion of causation is more akin to a challenge to the allegations pled in the FAC.

[5]    Section 403 (2)(a) provides:

> Whether exercise of jurisdiction over a person or activity is unreasonable is determined by evaluating all relevant factors, including, where appropriate the link of the activity to the territory of the regulating state, *i.e.*, the extent to which the activity takes place within the territory, or has substantial, *direct*, and foreseeable effect upon or in the territory . . . .

(emphasis added)

nationals.  K & A Br. at 16.  That is, they assert that, as part of determining whether this Court

has subject-matter jurisdiction, this Court must find a direct – as opposed to proximate – link

between their actions and the horrific Attack in order to exercise jurisdiction.[6]  K & A Br. at 16.

As support for this argument, the Defendants attempt to assimilate § 403 (2)(a) of the

Restatement into the provisions of the ATA.  The Defendants have misconstrued the law.

   This Court must uphold the laws enacted by Congress, not the Restatement.  Congress

has the power to confer jurisdiction over the conduct of foreign defendants and to make laws

applicable to persons or activities beyond the U.S. where such persons or activities affect

American interests.  See U.S. CONST. art. I, § 8, cl. 3 (conferring power to "regulate Commerce

with foreign nations"); U.S. CONST. art. I, § 8, cl. 10 (conferring power to "define and punish . . .

Offenses against the Law of Nations"); U.S. CONST. art. I, § 8, cl. 18 (conferring power to "make

all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers,

and all other Powers vested by this Constitution"); U.S. CONST. art. III, § 2 (extending

jurisdiction of the federal courts to controversies "between a State, or the Citizens thereof, and

foreign States, Citizens or Subjects").   In enacting the ATA, Congress intended to reach beyond

the borders of the U.S., because the ATA provides a cause of action for victims of "international

terrorism." 18 U.S.C. § 2333.  Congress has defined "international terrorism" as terrorist acts

that "occur primarily outside the territorial jurisdiction of the United States, or transcend national

boundaries in terms of the means by which they are accomplished, the persons they appear

intended to intimidate or coerce, or the locale in which their perpetrators operate or seek

---

[6]  Although the Defendants' summary memorandum uses the words "proximate cause" in
relation to their discussion of the link between their conduct and the Attack, the Defendants are
really arguing that this court must find a direct link between the Attack and their conduct.  K &
A Br. at 16.  This is the proper reading of their argument here, because they rely on § 403 of the
Restatement, which states that jurisdiction is determined by evaluating "the extent to which the
activity . . . has substantial, *direct*, and foreseeable effect upon or in the territory . . . ."
(emphasis added).

asylum." 18 U.S.C. § 2331(1)(C).  These provisions of the ATA are a clear statement of

Congress' intent to extend the statute to the conduct alleged by the Federal Plaintiffs in this case.

Therefore, the Defendants' assertion that "[t]he instant 12(b)(1) motion raises the issue as to the

extra-territorial reach of the Antiterrorism Act of 1992" is incorrect.  See K & A Br. at 15.

Despite the fact that the ATA confers jurisdiction, the Defendants argue that § 403 (2)(a)

of the Restatement limits the jurisdiction of this Court because the Federal Plaintiffs' claims have

extraterritorial connections.  K & A Br. at 16.  The Defendants' reliance on § 403 (2)(a) does not

address the jurisdiction of this Court to adjudicate; rather, the Defendants are challenging the

jurisdiction of Congress to enact legislation.  Put another way, the Defendants' reliance on § 403

(2)(a) is a substantive challenge to the statute, not a jurisdictional challenge to this Court's

authority to hear the case.  More importantly, the Restatement is not part of American law, and it

cannot be used in any way to limit the power of Congress to extend the reach of the ATA beyond

the boundaries of the U.S.  Even Justice Scalia, who applied the Restatement as part of his

"prescriptive jurisdiction" analysis in his partial dissent in Hartford Fire Ins, acknowledged

Congress' authority to make a statute apply beyond the boundaries of the U.S.  509 U.S. at 814

(Scalia, J., dissenting).

Contrary to the Defendants' characterization of the majority opinion of the Supreme

Court in Hartford Fire Ins., the majority in that case did not use § 403 (2)(a) of the Restatement

as a basis for its holding.  K & A Br. at 15-16.  The majority analyzed the question of the

extraterritorial reach of statutes enacted by Congress as implicating questions of Congressional

intent and international comity.[7]  Hartford Fire Ins., 509 U.S. at 796 n.22 & 799.  Therefore, the

---

[7]      In Hartford Fire Ins., the Supreme Court recognized that the Sherman Act undoubtedly
conferred jurisdiction on the federal courts.  The Supreme Court then analyzed the defendants'
concerns about the extraterritorial reach of that statute solely in terms of the prudential
considerations governing whether the Court ought to exercise the jurisdiction that it plainly had.
509 U.S. at 795-796 & 813.

Defendants' arguments about the extraterritorial reach of the ATA do not address this Court's

authority to hear this case, but only whether this Court should decline to exercise jurisdiction

under principles of international comity.[8]  See id. at 795.  This Court should reject the

Defendants' effort to transform their challenge to the statute – which is based on the "direct" link

requirement in § 403 (2)(a) of the Restatement – into a jurisdictional argument.[9]

> **2.    The Defendants' Argument that the "by reason of" Language in the ATA Requires A Direct Relation Between the Injury Asserted and the Injurious Conduct Alleged Misconstrues the Statute**

The Defendants assert that by including the phrase "by reason of an act of international

terrorism" in the ATA, 18 U.S.C. § 2333 (a), Congress "obviously married the statute to the well

known Restatement's requirements."  See K & A Br. at 17.  The Defendants' point is anything

but obvious.  First off, the phrase "by reason of" in the ATA is not the central point of that

---

[8]    It is also important to note that the majority of the Supreme Court held that unless foreign defendants could show that the law of their home jurisdiction required them to act in a manner prohibited by American law or that it was impossible to comply with the laws of both jurisdictions, there was no conflict between the laws of the two countries requiring abstention based on international comity.  Hartford Fire Ins., 509 U.S. at 799.

[9]    Although the Federal Plaintiffs contend that § 403 of the Restatement does not apply, the Restatement does not prevent this Court from exercising proper subject-matter jurisdiction. Section 402 (1)(c) & (3) of the Restatement recognizes that a State may prescribe the law applicable to "conduct outside its territory that has or is intended to have substantial effect within its territory" and "certain conduct outside its territory by persons not is nationals that is directed against the security of the state."  Moreover, section 404 of the Restatement recognizes that there is jurisdiction to prescribe law with respect to "hijacking of aircraft" and "certain acts of terrorism."  Thus, the Restatement recognizes the appropriateness of jurisdiction over the perpetrators, both direct and indirect, of the September 11th Attack.

Instead of recognizing that the Restatement supports jurisdiction, the Defendants assert that jurisdiction would be "unreasonable" under the factors listed in § 403.  However, the very Restatement factors upon which the Defendants rely also argue in favor of jurisdiction.  Section 403 includes such elements as "the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect," § 403 (2)(b); "the importance of regulation to the regulating state," § 403 (2)(c); "the importance of the regulation to the international political, legal, or economic system," § 403 (2)(e); and "the extent to which the regulation is consistent with the traditions of the international system," § 403 (2)(f). These elements support jurisdiction in this case.

statute's requirement of some causal connection between the conduct of the Defendants and the act of international terrorism that gave rise to the Federal Plaintiffs' injuries.  Instead, "by reason of" expresses that there has to be a connection between the Federal Plaintiffs' injuries and an "act of international terrorism."  18 U.S.C. § 2333(a).  There can be no doubt that the Federal Plaintiffs' injuries arose "by reason of an act of international terrorism."  Id.

While the ATA itself is silent on the required causal connection between the Defendants' conduct and the terrorist act giving rise to the claim, the Seventh Circuit has found that Congress intended that the statute include some notion of proximate cause.  Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1011-12 (7th Cir. 2002).  While the Defendants do discuss Boim, their argument does not bear any resemblance to the Seventh Circuit's approach.  See K & A Br. at 17.  The Defendants seem to be asserting that because § 403 of the Restatement contains a clause focusing on the direct causal connection between their acts and the Federal Plaintiffs' injuries, any statute that requires some connection between a defendant's acts and a plaintiff's injuries necessarily imports § 403 of the Restatement, thereby converting that causation requirement into a jurisdictional prerequisite.  K & A Br. at 15-17.  Simply stated, there is no basis for this Court to assume that Congress "obviously married" the ATA to § 403 of the Restatement.  See K & A Br. at 17.  Therefore, this Court should reject the Defendants' attempt to read into the ATA language that is not there.

> **3.**    **The Defendants' Argument that the Supreme Court Has Stated that, for Jurisdictional Purposes, Effects on the U.S. Are Direct If They Follow Immediately from the Defendants' Activity is Misleading**

As another argument that the causal connection between their acts and the Attack of September 11th raises a subject-matter jurisdiction question, the Defendants assert that the Supreme Court has determined whether an "effect" on the U.S. is sufficiently "direct" for the purposes of jurisdiction.  See K & A Br. at 17-18.  This assertion is misleading, because the

Defendants rely on <u>Republic of Argentina v. Weltover</u>, 504 U.S. 607, 618 (1992).  In <u>Weltover</u>, the Supreme Court was construing the "commercial activity" exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(2).  The FSIA is undoubtedly a jurisdictional statute, <u>see</u> 28 U.S.C. § 1330, and the "commercial activity" exception to immunity does require that, in some circumstances, the defendant's conduct caused a "direct effect" on the U.S., <u>see</u> 28 U.S.C. § 1605(a)(2).[10]  However, in the absence of a statute explicitly incorporating those provisions into a jurisdictional prerequisite for the Defendants in this case, nothing in <u>Weltover</u> can be read to suggest that the question of the effect of a foreign national's conduct on the U.S. is jurisdictional.

### 4.    The RICO, Securities Law, and Antitrust Cases that Defendants Rely on to Support Their Jurisdiction Argument Are Inapplicable

The Defendants assert that the Second Circuit has addressed the issue of "direct effects" jurisdiction for foreign-based conduct under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, securities law and antitrust law.  K & A Br. at 18. Instead of burdening the Court with a recitation of the Second Circuit case law that the Defendants use as additional support for their "direct effects" jurisdiction argument, the Federal Plaintiffs refer the Court to the Defendants' memorandum of law in support of their Motion to Dismiss.  See K & A Br. at 18-19.  The Federal Plaintiffs submit that the cases that the Defendants rely on are inapplicable, because they do not construe the ATA.  Furthermore, cases addressing RICO law, securities law, and antitrust law cannot support the Defendants' reliance on § 403 of the Restatement or make that section a prerequisite for exercising jurisdiction.

---

[10]    Even under the "commercial activity" exception to the FSIA, a "direct effect" on the U.S. is irrelevant to the jurisdiction of the Court if the plaintiff proceeds under the first or second clause of that exception.  <u>See</u> 28 U.S.C. § 1605(a)(2).

**C.      The Defendants' Failure to State a Claim Argument Fails Because They Demand a Higher Burden of Pleading and Seek to Prematurely Test the Evidence**

The Defendants essentially make six arguments to support their Motion to Dismiss for failure to state a claim.  When viewed collectively, as the following discussion will illustrate, the Defendants' arguments show that they are (1) demanding a higher burden of pleading than that required by Rule 8 and (2) seeking to prematurely test the evidence.  The Defendants' arguments fail, because the allegations in the FAC sufficiently state a claim.  To the extent that this Court finds the Federal Plaintiffs' allegations to be insufficient, the Federal Plaintiffs should be granted leave to amend the FAC.

The Defendants first argue that the allegations in the First Amended Complaint ("FAC") are legally insufficient because they are legal conclusions "couched" as factual allegations.  See K & A Br. at 6 & 11.  The allegations in the FAC are not legal conclusions couched as factual allegations; they are fair statements that give the Defendants notice of the Federal Plaintiffs' claims and the grounds upon which they are based.  See Wynder, 360 F.3d at 77.  Moreover, the allegations set forth in the FAC are sufficient to state a claim under the liberal pleading standards allowed by Rule 8.  See Swierkiewicz, 534 U.S. at 521-13.

As a second argument, the Defendants contend that the general "catch-all" allegations against all of the defendants who sponsored and financed al Qaida's global operations are legally insufficient, because the Federal Plaintiffs have not alleged facts that distinguish their conduct from that of the other defendants.  K & A Br. at 7 & 12.  The Federal Plaintiffs contend that the general allegations in the FAC are necessary in order to define the parameters of the conspiracy that took place to bring about the September 11th Attack.  If the Federal Plaintiffs had failed to provide such structure through general allegations, the Defendants would have surely complained that the Federal Plaintiffs failed to fully describe the nature of the conspiracy.  More importantly, the Federal Plaintiffs have augmented the general allegations in the FAC with

14

specific allegations against the Defendants.  See FAC ¶¶ 299-306 & 501-502.  Therefore, the
general allegations do in fact provide a framework for understanding the Defendants' role in the
global conspiracy.

Next, the Defendants assert that this Court should not rely on allegations related to the
Golden Chain document, because it is "a dated, historical document that has been recently
described by an English court . . . as falling 'well short of establishing the existence of sufficient
grounds for an enquiry or investigation.' "  K & A Br. at 8-10 (citation omitted).  This argument
is without merit.  First off, the Defendants' are attempting to test the evidence, which is
inappropriate at this stage of the proceedings.  See  Woodford, 239 F.3d at 517; Geisler, 616 F.2d
at 639.  Moreover, the Defendants incorrectly rely on a decision from an English court as support
for their argument.[11]  See K & A Br. at 8-10.

The Defendants' fourth argument is that any allegation that they invested in the
international banking system that funded al Qaida's terrorist campaign against the U.S. is barred
by law of the case.  K & A Br. at 3 & 11.  The Defendants rely on Judge Robertson's previous
holding in Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 109 (D.D.C. 2003), that
banks, acting as funnels, cannot be held liable.  K & A Br. at 3 & 11.  As an initial matter, Judge
Robertson's earlier ruling in Burnett is not, as Defendants suggest, the "law of the case."  To the
contrary, the Federal Plaintiffs' case is a different matter.  More importantly, the arguments
advanced by the Defendants based on Judge Robertson's prior ruling in Burnett misconstrue the
nature of the allegations made against the Defendants in this case.  The Federal Plaintiffs do not

---

[11]     The Defendants provide no case law from the United States to support their position.
Instead, they rely on Jameel v. Times Newspapers Ltd., 2003 EWHC 2609 (Q.B. November 7,
2003) (Gray, J.), an English court case.  While the Federal Plaintiffs are confident that the
Defendants are well aware that a decision of an English court is not binding on this Court, the
Federal Plaintiffs feel compelled to point out that this case is the only case law support that the
Defendants point to for their argument to ignore the Golden Chain.  Furthermore, as the
Defendants themselves point out, Jameel dealt with a libel action.  K & A Br. at 8-10.

allege some passive involvement on the part of these Defendants in the conspiracy that led to the

September 11th Attack.  Rather, the FAC asserts that these Defendants knowingly provided

financial services and other forms or material support to al Qaida, in an effort to further that

organization's *jihad*.  Such material support is precisely the kind of conduct actionable

under the ATA, and removes the present action from the portion of the prior decision in <u>Burnett</u>

on which the Defendants rely.

In connection with their reliance on <u>Burnett</u>, the Defendants also add that the Federal

Plaintiffs have alleged only one instance of investment.  K & A Br. at 11-12.  The Defendants

assert that the FAC fails to state a claim because the only instance of investment alleged by the

Federal Plaintiffs occurred in 1983.[12]  The allegations relating to the establishment of Islamic

banks in 1983 serve to place the material support and resources provided by the Defendants into

a historical context and assist with describing the relations between the Defendants and al

Qaida's global organization.[13]  Furthermore, the allegations in the FAC should be read as

alleging that the Defendants provided continual support and resources – as opposed to one

instance – to al Qaida in the years leading up to the horrific Attack.

Finally, the Defendants challenge any allegations in the FAC related to Omar Al-

Bayoumi.  K & A Br. at 13-14.  They base their argument on Judge Ronbertson's previous

discussion in <u>Burnett</u> that there were no allegations in that case that supported imposing

vicarious liability on Al Rajhi Bank for the acts of its officers and employees.  K & A Br. at 14.

As the Federal Plaintiffs have already shown, Judge Robertson's reasoning is not controlling on

this Court.  See pages 15-16, *supra*.  The Defendants also assert, in a footnote, that because the

---

[12]     The Defendants' argument apparently refers to the allegations in the FAC that Al Shamal
Islamic Bank and Tadamon Islamic Bank were both established in or around 1983.  FAC ¶¶ 320
& 334.

[13]     The Federal Plaintiffs also note that the Defendants' argument that the FAC alleges only
one instance of investment is an attempt to recast their subject-matter jurisdiction argument, in
which they contend that subject-matter jurisdiction is dependent on a direct link.

9/11 Commission discounted the allegation that Al Bayoumi knowingly aided terrorists in the

conspiracy, any allegations in the FAC related to Al Bayoumi should be disregarded.  K & A Br.

at 14, n.4.  Once again, the Defendants are attempting to challenge the evidence, which is

inappropriate at this stage.[14]  See  Woodford, 239 F.3d at 517; Geisler, 616 F.2d at 639.

At this stage of the litigation, the Defendants are entitled to "a short and plain statement

of the facts" supporting the Federal Plaintiffs' claims.  Swierkiewicz, 534 U.S. at 512-13.   They

have been provided with this in the FAC.  The FAC sufficiently supports multiple claims, in that

it alleges that the Defendants knowingly provided material support and resources to al Qaida,

that al Qaida would not have possessed the financial resources, physical assets, membership

base, technological knowledge, communication skills, and global reach required to conceive,

plan and execute the Attack absent the sponsorship of Kamel and ABIDC and the other

defendants, and that the Defendants thus knowingly participated in the conspiracy with the intent

to advance the commission of terrorist attacks against the United States, of which the Attack was

a natural, intended and foreseeable consequence.  FAC ¶¶ 72 & 74.

**D.     The Federal Plaintiffs Have Sufficiently Alleged Claims Under  the Anti-Terrorism and Effective Death Penalty Act**

Kamel and ABIDC also claim that the Federal Plaintiffs have failed to state a sufficient

causal connection between their actions and the September 11th terrorist Attack.  K & A Br. at

15-17.  Under the ATA, the Defendants are liable if they provided *any* material support to al

Qaida with knowledge of its terrorist agenda.  See Humanitarian Law Project v. Reno, 205 F.3d

---

[14]     The Federal Plaintiffs note that Senator Bob Graham, a longtime member of the Senate
Intelligence Committee and Co-Chair of the Congressional Joint Inquiry into the September 11th
Attacks, recently published a book in which he affirms his belief, based on evidence amassed by
the Joint Inquiry, that al Bayoumi knowingly supported two of the September 11th hijackers.
Furthermore, in a recent interview, Graham stated that he would swear to that opinion under
oath.

1130, 1136 (9th Cir. 2000).[15]  A plaintiff may assert a valid claim under the ATA, 18 U.S.C. §

2331, *et seq.*, under either of two alternative approaches:  (1) pursuant to general tort principles,

including concerted action theories of liability; or (2) by demonstrating that the defendant

violated the ATA's criminal standards, and that the defendant's violation was a substantial factor

in bringing about plaintiff's injuries.  Boim, 291 F.3d at 1015 & 1020.  The Federal Plaintiffs

have done both.

> ### 1.    The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Pursuant to General Tort Principles

In Boim, the Court of Appeals for the Seventh Circuit held that the legislative history of

the ATA evinces a clear intent by Congress to codify general common law tort principles, and to

impose civil liability for acts of international terrorism to the full reaches of traditional tort law.

291 F.3d at 1010.  Accordingly, the Boim court specifically embraced the use of concerted action

theories of liability, such as aiding and abetting and conspiracy, to establish liability over a

defendant under the ATA.[16]  Id. at 1020.

The elements necessary to establish liability for a defendant's participation in a

conspiracy to commit a tort are:  (1) an agreement between two or more persons; (2) to

participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an

unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was

done pursuant to and in furtherance of the overall scheme.  Halberstam v. Welch, 705 F.2d 472,

477 (D.C. Cir. 1983).[17]  Civil liability for aiding and abetting will be imposed where:  (1) the

---

[15]    In Humanitarian Law Project, the Court of Appeals for the Ninth Circuit stated that any contribution to a terrorist organization gives rise to criminal responsibility, regardless of whether the support given is intended for or flows directly to the organization's terrorist activities.  205 F.3d at 1136.

[16]    The Boim court reasoned that "although the words 'aid and abet' do not appear in the statute, Congress purposely drafted the statute to extend liability to all points along the causal chain of terrorism."  291 F.3d at 1019-20.

[17]    Although New York law likely controls the vast majority of the Federal Plaintiffs' claims, Halberstam long has been regarded as the leading case on concerted action liability, and

party whom the defendant aids or abets performs a wrongful act that causes injury; (2) the

defendant is generally aware of his role in an overall illegal scheme or tortious plan at the time

he provides the assistance; and (3) the defendant knowingly provides substantial assistance to the

wrongdoer.  Id. at 477.

When read as a whole, the Federal Plaintiffs' FAC plainly and adequately states claims

against the Defendants pursuant to aiding and abetting and conspiracy theories.  At the threshold,

the FAC alleges that both Kamel and ABIDC "have aided and abetted, conspired with, and

provided material support and resources to, defendant al Qaida and/or affiliated FTOs,

associations, organizations or persons."  FAC ¶ 66.  Further, the FAC alleges that the Attack

"was a direct, intended and foreseeable product of a larger conspiracy among the defendants, to

commit acts of international terrorism against the United States, its nationals and allies."  FAC ¶

72.  Describing the conspiracy, the FAC states that it "included the provision of material support

and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations,

commercial entities and other parties."  FAC ¶ 73.  The FAC also sets forth the consequences of

the Defendants' participation, in that "[a]bsent the material support and resources provided by

the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial

resources, physical assets, membership base, technological knowledge, communication skills,

and global reach required to conceive, plan and execute the September 11th Attack."  FAC ¶ 74.

Thus, the FAC describes, in reasonable detail, the specific role of both Kamel and ABIDC in al

Qaida's conspiracy to commit terrorist attacks against the United States.  FAC ¶¶ 298-306 &

501-502.

---

the New York courts have repeatedly relied on Halberstam in analyzing conspiracy and aiding
and abetting claims.  See Wahad v. FBI, 813 F. Supp. 224, 233 (S.D. N.Y. 1993); Rich-Taubman
Assoc. v. Stamford Rest. Operating Co., Inc., 587 F. Supp. 875, 879 n.5 (S.D. N.Y. 1984);
Merrill Lynch  Futures, Inc. v. Kelly, 585 F. Supp. 1245, 1254 (S.D. N.Y. 1984).

Read collectively, the allegations in the FAC unambiguously allege that the Defendants knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the Attack was a direct, intended and foreseeable product of that larger conspiracy. These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.  See Swierkiewicz, 534 U.S. at 512-13.

## 2.    The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Based Upon the Defendants' Criminal Violations

The Federal Plaintiffs have also adequately pled claims against Kamel and ABIDC under the ATA based upon the Defendants' violations of the ATA's criminal standards.  See 18 U.S.C. §§ 2339A, 2339B, and 2339C.[18]   The Boim court concluded that the ATA's criminal provisions are a clear indication of Congress' intent to deem financial support of a terrorist organization to be itself an act of international terrorism.  291 F.3d at 1015.  Therefore, because the FAC alleges that the Defendants provided financial and logistical support to al Qaida and organizations that helped to sustain al Qaida, the Federal Plaintiffs have stated a cause of action against the Defendants pursuant to the criminal provisions of the ATA.  See Part II, B & C, *supra*.

---

[18]     Section 23339A makes it unlawful to "provide[] material support or resources or conceal[] or disguise[] the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" numerous criminal statutes.  Section 2339B prohibits the knowing provision of "material support or resources to a foreign terrorist organization."  In regard to both sections, "material support or resources" is defined as currency or monetary assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.  18 U.S.C. § 2339A.  The term "material," as used in these sections, "relates to the type of aid provided rather than whether it is substantial or considerable."  Boim, 291 F.3d at 1015.   Finally, section 2339C makes it unlawful to provide or collect funds "with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" terrorist attacks.

### 3.    The Federal Plaintiffs Have Adequately Pled Causation

In making their argument that the Federal Plaintiffs have not adequately pled a link between their illicit conduct and the Attack, the Defendants fundamentally misconstrue the elements of the Federal Plaintiffs' theories of aiding and abetting and conspiracy.  Moreover, the Defendants' argument ignores the numerous allegations in the FAC.  Under New York law, "those who aid and abet or conspire in tortious conduct are jointly and severally liable with other participants in the tortious conduct, regardless of the degree of their participation or culpability in the overall scheme."  Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1536 (S.D. N.Y. 1985) (citations omitted).  Consistent with this rule, the causation analysis in a civil conspiracy action focuses solely on whether the plaintiff's injuries were caused by "an unlawful overt act performed by *one of the parties* to the agreement."  Halberstam, 705 F.2d at 477 (emphasis added).  Similarly, a plaintiff need only allege that the defendant provided substantial assistance to the wrongdoer to establish tort liability based on the defendant's aiding and abetting of the principal tortfeasor.  Id.  Pursuant to these standards, the Defendants' participation in al Qaida's conspiracy to commit terrorist attacks against the United States and their aiding and abetting of that terrorist organization ties them inextricably to the Attack.[19]  As the Federal Plaintiffs' injuries are indisputably the result of the September 11th Attack, the Federal Plaintiffs have properly and adequately alleged causation.  Accordingly, the Defendants' causation-based arguments must be rejected.[20]

While unnecessary to establish liability over the Defendants given the asserted concerted action theories, it should be noted that the FAC does specifically allege that the Attack would not

---

[19]    The United States Supreme Court has held that, in cases that involve alleged conspiracy among multiple actors involving multiple acts, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."  Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 699 (1962).

[20]    Section 403 of the Restatement, upon which the Defendants rely for support of their causation argument, does not alter the foregoing analysis.  See Part III, A, 1, *supra*.

have been possible absent the sponsorship and support provided by Kamel and ABIDC. According to the FAC, "[a]bsent the material, support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." FAC ¶ 74.  The Defendants conveniently disregard this and similar allegations of the FAC in their Motion to Dismiss.  For purposes of the present motion, however, the allegations of the FAC must be accepted as true.  See Yilmaz, 2001 U.S. Dist. LEXIS 208939, at * 6.

Moreover, the FAC adequately alleges that the Attack was a foreseeable consequence of both the conspiracy in which the Defendants knowingly participated and the Defendants' aiding and abetting of al Qaida.  Indeed, the FAC unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy.  FAC ¶ 72.  While it would be improper to test the sufficiency of the evidence in support of that allegation at the pleading stage, see Woodford, 239 F.3d at 517, it should be noted that al Qaida had unequivocally proclaimed its ambition to attack the United States.  In fact, al Qaida had done so on numerous occasions over a period of several years prior to the Attack.  In 1996 and 1998, al Qaida issued *fatwas*, or religious decrees, authorizing attacks against the United States and its citizens.  In the 1998 *fatwa*, issued under the banner "the World Islamic Front for Jihad Against Jews and Crusaders," Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens – civilian or military – and their allies everywhere.  FAC ¶ 42.  Just a few months later, al Qaida acted on that threat, bombing the U.S. embassies in Kenya and Tanzania, leaving 258 people dead and more than 5,000 injured.

As the conduct of terrorist attacks against the United States and its citizens was, for many years prior to September 11, 2001, al Qaida's stated objective, it is absurd to suggest that the

Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaida, as the Defendants are alleged to have done.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Federal Plaintiffs respectfully request that the joint Motion to Dismiss filed by Saleh Abdullah Kamel and Al Baraka Investment and Development Corporation be denied in all respects, with prejudice.

Respectfully submitted,

COZEN O'CONNOR

By:   _____/s/_____
      STEPHEN A. COZEN, ESQUIRE
      ELLIOTT R. FELDMAN, ESQUIRE
      SEAN P. CARTER, ESQUIRE
      MARK T. MULLEN, ESQUIRE
      1900 Market Street
      Philadelphia, PA  19103
      Tel.:  (215) 665-2000
      Fax:   (215) 665-2013

      *Attorneys for the Federal Plaintiffs*