**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*      Federal Insurance Co. v. al Qaida
                                 03 CV 06978 (RCC)

**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION
TO DISMISS FILED BY DEFENDANT WAEL JULAIDAN**

COZEN O'CONNOR
The Atrium – Third Floor
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. FACTS ..................................................................................................................................... 4

III. APPLICABLE LAW ................................................................................................................ 6

    A. Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's *Prima Facie* Showing of Personal Jurisdiction May be Established Solely by Legally Sufficient Allegations of Jurisdiction. ................................................. 6

IV. ARGUMENT ........................................................................................................................... 7

    A. This Court Has Personal Jurisdiction Over Wael Julaidan Under New York's Long Arm Statute. ............................................................................ 7

    B. This Court's Exercise of Jurisdiction Over Defendant Wael Julaidan Does Not Violate Due Process. ............................................................................ 8

        1) This Court Can Constitutionally Exercise Specific Jurisdiction. .................................................................................................. 8

        2) Defendant Wael Julaidan is Also Constitutionally Subject to Jurisdiction Pursuant to the Modified Due Process Standard For Mass Torts. ................................................................................... 10

V. CONCLUSION ...................................................................................................................... 11

## TABLE OF AUTHORITIES

Page

### CASES

*Alexander v. Fritzen*,
    503 N.E.2d 102 (N.Y. 1986)..................................................................................................8

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990).............................................. 6-7

*Boim v. Quranic Literacy Institute*,
    291 F.3d 1000 (7th Cir. 2002) ..............................................................................................11

*Calder v. Jones*,
    465 U.S. 781 (1984)................................................................................................................8

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991).......................................................................................7

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229 (2d Cir. 1999)...................................................................................................8

*In re DES Cases*,
    79 F. Supp. 552 (E.D.N.Y. 1992) ..................................................................................10, 11

*DiStefano v. Carozzi North America, Inc.*,
    286 F.3d 81 (2d Cir. 2001).....................................................................................................7

*Durante Brothers & Sons, Inc. v. Flushing National Bank*,
    755 F.2d 239 (2d Cir. 1985)...................................................................................................7

*Hogan v. Wal-Mart Stores, Inc.*,
    167 F.3d 781 (2d Cir. 1999)...................................................................................................6

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
    313 U.S. 487 (1941)................................................................................................................5

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998).....................................................................................7

*In re Magnetic Audiotape Antitrust Litigation*,
    334 F.3d 204 (2d Cir. 2003)...................................................................................................7

*Pittman v. Grayson*,
    149 F.3d 111 (2d Cir. 1998)..................................................................................................8

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
    290 F. Supp. 2d 55 (D.D.C. 2003) ......................................................................................10

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F. Supp. 325 (E.D. N.Y. 1998) *aff'd in part*, 162 F.3d 748 (2d Cir. 1998),
    *cert. denied*, 527 U.S. 1003 (1999).....................................................................................9

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ........................................................................... 7, 10-11

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*,
    241 F.3d 135 (2d Cir. 2001)............................................................................................. 8-9

## RULES AND STATUTES

N.Y.C.P.L.R. §302(a)(2).....................................................................................................7

Fed. R. Civ. P. 12(b)(2).......................................................................................................6

Fed. R. Civ. P. 56................................................................................................................6

## MISCELLANEOUS

*Second Report of the Monitoring Group Established Pursuant to
Resolution 1363 (2001), on Sanctions Against Al Qaida, the Taliban and
Individuals and Entities Associated With Them (December 2, 2003)* at ¶ 34.............................. 2-3

**I.     INTRODUCTION**

Plaintiffs have sued Defendant, Wael Julaidan, based on his participation in a global conspiracy to conduct terrorist attacks against the United States, spearheaded by al Qaida, of which he was a founding member and the September 11th Attack was a natural, intended and foreseeable product.  Wael Julaidan has moved to dismiss the Federal Plaintiffs' claims before any discovery, contending that he lacks the necessary minimum contacts with the United States to trigger personal jurisdiction because he does not do any business here and the Federal Plaintiffs failed to adequately plead that he purposefully directed any tortious activity here or conspired with anyone to do so.  The thirteen paragraphs in the Complaint specifically addressing Defendant Wael Julaidan, which this Court must accept as true, establish the legal nexus of Wael Julaidan's contacts to the United States for this Court properly to exercise its jurisdiction.  For the reasons set forth below, Defendant Wael Julaidan's motion should be denied in all respects.

Ongoing investigations around the world are slowly revealing the unprecedented scope and sophistication of the global conspiracy.  According to published reports, al Qaida maintained and operated at least twelve training camps in Afghanistan before the United States' military action forced the organization to disperse.  As many as 20,000 dedicated *jihadists*, including all nineteen of the September 11 hijackers, received indoctrination and training at those camps between 1996 and September 11, 2001.  By September 11, al Qaida drew from the resources of a vast network of terrorist cells in more than 100 countries.  That network's strength was reinforced by al Qaida's strategic alliances with other like minded terrorist organizations.  To this day, the depth and breadth of the organization's infrastructure enable it to mount attacks

throughout the World, even though international efforts have resulted in the capture of more than 3,000 al Qaida members in over 100 countries since September 11.

Post 9/11 investigations have confirmed that al Qaida relied heavily on its global infrastructure to plan, support and coordinate the September 11th Attack, and that it would have been impossible for al Qaida to carry out an attack on that scale within the United States without that infrastructure.  According to the *Report of the Joint Inquiry Into Intelligence Community Activities Before and After the Terrorist Attacks of September 11, 2001*, plans for the Attack were carefully vetted through al Qaida's most senior leadership over a period of six (6) years, while those leaders were safely ensconced in training camps and safe houses funded by al Qaida's financial supporters.  The individual participants in the Attack were chosen from an enormous pool of potential candidates, who were recruited, trained and indoctrinated using funds provided by the organization's supporters.  Each of the hijackers received training at one or more of al Qaida's well funded training camps in Afghanistan.  Until the last minute, details of the plot were revised through a global communication network, the existence of which also was made possible by the financial sponsorship of al Qaida's supporters.  In these ways, and others too numerous and complex to detail herein, the success of the September 11th Attack depended critically on the sophistication and extensiveness of the organization's global resources.

By all accounts, the infrastructure that made the September 11th Attack possible was built over a period of many years, using the financial and logistical support of a vast network of charities, banks and wealthy donors.[1]  As the United Nations Security Counsel Committee Concerning al Qaida and the Taliban succinctly explained:

---

[1] The estimated costs of building and sustaining that infrastructure are staggering.  David Aufhasuer, the former General Counsel of the Treasury Department, estimated that al Qaida needed $35 million to support its infrastructure on an annual basis prior to September 11.

-2-

> From its inception, al Qaida has relied heavily on charities and donations from its sympathizers to finance its activities. Charities provide al Qaida with the very useful international channel for soliciting, collecting, transferring and distributing the funds it needs for indoctrination, recruitment, training, and logistical and operational support. These funds are often merged with and hidden among funds used for other legitimate humanitarian or social programmes. Al Qaida supporters and financiers have also established front charity networks whose main purpose is to raise and deliver funds to al Qaida.

*Second Report of the Monitoring Group Established Pursuant to Resolution 1363 (2001), on Sanctions Against Al Qaida, the Taliban and Individuals and Entities Associated With Them (December 2, 2003)* at ¶ 34.

Government officials and experts also agree that charities established and funded by the Kingdom of Saudi Arabia, and wealthy Saudi supporters, played a singularly important role in al Qaida's development and pursuit of its perverse ambitions. Indeed, David Aufhauser has described Saudi Arabia as the "epicenter" of al Qaida's financing. Almost three years after the September 11th Attack, Saudi Arabia is finally bowing to international pressure and itself acknowledging the pervasiveness of its charities' involvement in the sponsorship of al Qaida. In fact, on June 2, 2004, Saudi Arabia announced that it intended to dissolve **all** of its international charities as a "counter-terrorism" measure.

The Federal Plaintiffs' claims against Wael Julaidan arise from his participation, from the very beginning, in the conspiracy outlined in general above. The allegations against the Wael Julaidan are set forth in detail in the Federal Plaintiffs' 646-paragraph, 182-page FAC. In addition to a number of general allegations that apply, the specific allegations relating to him are contained at Paragraphs 65, 91, 117, 125, 193, 196, 205, and 212.

## II. FACTS

All of the following facts must be taken as true from the Federal Plaintiffs' Complaint. Defendant Wael Julaidan is a founding member of al Qaida who has been designated as a Specially Designated Global Terrorist pursuant to Executive Order 13224. The Treasury Department statement supporting that designation states as follows:

> Wa' el Hamza Julaidan, a Saudi citizen, is an associate of Osama bin Laden. Julaidan fought with bin Laden in Afghanistan in the 1980s. Julaidan is also associated with several individuals and entities linked to al Qaida, including bin Laden's lieutenants, Ayman al Zawahri, Abu Zubaida, and Muhammad Atef; and the organizations: Makatab al Khidmat, the Rabita Trust, and al-Gamma al Islamiya. These individuals and entities have been previously designated under President Bush's Executive Order and by the United Nations. Bin Laden himself acknowledged close ties to Julaidan during a 1999 interview with al-Jazeera TV. When referring to the assassination of al Qaida's co-founder Abdallah Azzam, bin Laden stated that "we were all in one boat, as is known to you, including our brother, Wa' el Juliadan." Juliadan has established contacts with several known Islamic extremists, including bin Laden's principal lieutenant, Ayman al-Zawahri. Another bin Laden lieutenant, Abu Zubaida, claimed that he had accompanied Julaidan from Pakistan to Kandahar, Afghanistan during the summer of 2000. Zubaida said that Julaidan met with bin Laden and senior bin Laden lieutenant Muhammad Atef soon after arriving in Kandahar.
>
> In February 2000, Julaidan was appointed to the Board of Trustees of the Rabita Trust and served as its director general. The Rabita Trust is an NGO designated under President Bush's Executive Order as an organization that provided logistical and financial support to al-Qa'ida.
>
> **BASIS FOR DESIGNATION**
>
> The United States has credible information that Wa' el Hamza Julaidan is an associate of Osama bin Laden and several of bin Laden's top lieutenants. Julaidan has directed organizations that have provided financial and logistical support to al-Qa'ida.
>
> Accordingly, the United States is designating Julaidan under Executive Order 13224 as a person who supports terror.

FAC¶117.

Julaidan served as an official of the Benevolence International Foundation (BIF). FAC¶91. Defendant Julaidan replaced Abdullah Azzam, Osama bin Laden's spiritual mentor, and heading the MWL's Office in Peshawar, Pakistan and he also served as Director General and a member of the Board of Trustees of Rabita Trust, a financial arm of the MWL. FAC¶117. Julaidan also served as a director of the Saudi Joint Relief Commission (SJRC). FAC¶125. Between 1998 and 2000, the Kingdom of Saudi Arabia, through SJRC, directed more than $74,000,000 to al Qaida members and loyalists affiliated with SJRC bureaus. FAC¶126.

Defendant Julaidan also served as an officer of the Saudi Red Crescent for many years and continued to fill that role following the establishment of al Qaida. Throughout the 1990s, the Saudi Red Crescent provided extensive financial and logistical support to the mujihadeen in Afghanistan. Following the withdraw of Soviet troops from Afghanistan, the Saudi Red Crescent re-directed its efforts toward the fulfillment of the objectives of the newly established al Qaida movement. FAC¶194. The Saudi Red Crescent's integral role in the growth and development of the nascent al Qaida movement has been confirmed by documents seized in Bosnia and Herzegovina during searches of the BIF offices. During one of those searches, investigators recovered a list of orders from Osama bin Laden regarding the management of Islamic charities. At the bottom of the letter is a note from Osama bin Laden to Wael Julaidan stating that al Qaida has an extreme need for weapons. FAC¶¶195 and 196. The United Nations' mission in Kosovo has declared that the SJRC office in Pristina, Kosovo served as a cover for several al Qaida operatives, including Wael Hamza Julaidan. Rabita Trust, which Julaidan headed before September 11, 2001, provided material sponsorship to al Qaida. FAC¶211.

### III.     APPLICABLE LAW

The law that this Court must apply depends upon the issue being decided. Federal law and the Federal Rules of Civil Procedure control all Constitutional and federal question issues, both substantive and procedural. For plaintiffs' common law claims, the Court must apply the substantive law of New York, the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The Federal Rules of Civil Procedure control all procedural issues, even on the common law claims. *Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir. 1999).

### A.     Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's *Prima Facie* Showing of Personal Jurisdiction May be Established Solely by Legally Sufficient Allegations of Jurisdiction.

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted]. At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990). The Second Circuit has observed that a plaintiff's averment of jurisdictional facts will normally be met in one of three ways when in dispute: (1) by a Rule 12(b)(2) motion, which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency; (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction; or (3) by request for an adjudication of disputed

jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits. *Id.* at 197. Where, as here, "the defendant is content to challenge only the sufficiency of the plaintiff's factual allegations, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Id.* In order to meet its prima facie showing, the Federal Plaintiffs need only allege facts that connect the defendant with the applicable forum, here, the United States. The plaintiff's averments of jurisdictional facts must be taken as true. *Id*; *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003). The Court also construes the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001).

IV. **ARGUMENT**

    A. **This Court Has Personal Jurisdiction Over Wael Julaidan Under New York's Long Arm Statute.**

This Court has jurisdiction over the Federal Plaintiffs' claims pursuant to New York's long arm statute. That statute provides, in part, that "the court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent commits a tortious act within the state." N.Y.C.P.L.R. §302(a)(2). "It is well settled that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. §302(a)(2)." *Simon v. Philip Morris, Inc.*, 86 F. Supp.2d 95, 99 (E.D.N.Y. 2000) (citation omitted); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp.2d 593, 601 (S.D.N.Y. 1998).

New York law does not recognize the substantive tort of civil conspiracy. *Durante Bros. & Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir. 1985). Rather, allegations of a conspiracy connect the actions of separate defendants with an otherwise actionable tort. *Alexander v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986). Both conspiracy and aiding and abetting create concerted-action liability in New York. *Pittman v. Grayson*, 149 F.3d 111, 122 (2d Cir. 1998). Conspiracy requires an agreement to commit a tortious act while aiding and abetting requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer. *Id.* at 122-23. For the reasons set forth above, the conduct of Wael Julaidan constitutes both forms of concerted-action liability under New York law as set forth in the allegations of the Complaint and, as such, connects him with the subject transaction, charges Wael Julaidan with the acts and declarations of his co-conspirators, and exposes him to joint and several liability. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 240 (2d Cir. 1999). The FAC specifically alleges Julaidan is a founding member of al Qaida. FAC¶117. This Court therefore has personal jurisdiction over Wael Julaidan pursuant to New York's long arm statute and the well-recognized conspiracy jurisdiction theory under New York law.

  **B.**  **This Court's Exercise of Jurisdiction Over Defendant Wael Julaidan Does Not Violate Due Process.**

    **1)**  **This Court Can Constitutionally Exercise Specific Jurisdiction.**

The Supreme Court repeatedly has held that the due process clause of the Fourteenth Amendment permits personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. *Calder v. Jones*, 465 U.S. 781, 788 (1984). Where, as here, the claim arises out of, or relates to, a defendant's contact with the forum, i.e., the attack

in New York, the plaintiff need only prove specific jurisdiction. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001) (citation omitted).

When considering specific jurisdiction, the court properly focuses on the relationship among the defendant, the forum and the litigation in judging minimum contacts. *Calder*, 465 U.S. at 788.  In an action involving the harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  The Federal Plaintiffs have alleged that Defendant Wael Julaidan was engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies.  FAC ¶73.  The actions of the conspirators were expressly aimed at the United States such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with some United States citizens as passengers, provide support for exercising personal jurisdiction here. *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D. N.Y. 1998), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998), *cert. denied*, 527 U.S. 1003 (1999), involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland.  Judge Platt, in the Eastern District of New York, reasoned that the destruction of the airplane, 189 deaths, and significant security concerns for the country and its aviation industry arguably "has had extensive impacts" on the United States. *Id.* at 330.

> Any foreign state would know that the United States has substantial interest in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

*Id.* The September 11th Attack indisputably had impacts in and on the United States like few events in its history.

In *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp.2d 55 (D.D.C. 2003), Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States citizens. The plaintiffs in *Pugh* alleged that the defendants "conspired to sabotage and succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight." *Id.* at 59. The court noted that the United States had a well known, worldwide interest in preventing and punishing terrorism. Congress had enacted several criminal statutes dealing with such cases starting at least five years before the bombing. These criminal statutes contemplated jurisdiction in the United States over foreign nationals for activities abroad regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutional exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil *in personam* jurisdiction over those same individuals for the same acts.

*Id.* That same logic applies here.

In sum, this Court's exercise of specific personal jurisdiction does not violate Wael Julaidan's due process rights.

> **2)   Defendant Wael Julaidan is Also Constitutionally Subject to Jurisdiction Pursuant to the Modified Due Process Standard For Mass Torts.**

Defendant Wael Julaidan is also subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in both tobacco and DES cases. *Simon*, 86 F. Supp.2d at 129-37;

*In re DES Cases*, 79 F. Supp. 552, 574-77 (E.D.N.Y. 1992). "New York's interest in this dispute is intense, and the burden on [defendant] is minimal compared to the difficulty of the plaintiffs litigating in [Saudi Arabia]." *Simon*, 86 F. Supp.2d at 137.

The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation. *Id.* at 131 (citation omitted). Since New York has an appreciable state interest because this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is *prima facie* constitutional. *Id.* Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, the defendant is unable to amount a defense in the forum state without suffering a relatively substantial hardship. *Id.* Defendant Wael Julaidan can make no such showing here.

## V.     CONCLUSION

Defendant Wael Julaidan "repeatedly confuse[s] what must be alleged with what must be proved. The plaintiffs need not set out in detail all of the facts upon which they base their claim. They need only give [defendant] fair notice of what their claim is and the grounds upon which it rests. [citation omitted]. This, they have done." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1024 (7th Cir. 2002). For all of the foregoing reasons, the Federal Plaintiffs respectfully submit that the Motion to Dismiss of Defendant Wael Julaidan should be denied in its entirety.

        Respectfully submitted,

        COZEN O'CONNOR

By: _____/s/_____
        STEPHEN A. COZEN (SAC 1625)
        ELLIOTT R. FELDMAN (ERF 8111)
        SEAN P. CARTER (SPC 0636)
        MARK T. MULLEN (MTM 2384)
        The Atrium – Third Floor
        1900 Market Street
        Philadelphia, PA  19103
        Attorneys for Plaintiffs

Phila1\2140575\1 117430.000