**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STRIKE OF CERTAIN DEFENDANTS

October 1, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................................... II

INTRODUCTION .......................................................................................................................... 1

FACTS ........................................................................................................................................ 2

ARGUMENT ................................................................................................................................ 5

    I.     PLAINTIFFS' CORRECTED BRIEFS SHOULD NOT BE STRICKEN .................................. 5

          A.     Dismissal Is Not Warranted For an Innocent Mistake, Promptly Corrected .......................................................................................................... 6

          B.     Plaintiffs' Argument in Opposition to Salman Al-Oadah's Motion that the March 2003 Order of Publication Should Be Interpreted to Authorize Service on Defendants in Saudi Arabia Who Were Not Specifically Listed in the Motion Is Not Frivolous and Provides No Basis for Dismissal ................................................................................... 11

          C.     Plaintiffs' Corrected Briefs Are Not Sur-Replies ..................................... 12

    II.    DEFENDANTS SHOULD NOT BE REWARDED WITH ATTORNEYS' FEES FOR THEIR UNFOUNDED HARASSMENT OF PLAINTIFFS' COUNSEL ........................................... 14

CONCLUSION ........................................................................................................................... 16

TABLE OF AUTHORITIES

*Page*

**Cases**

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ................................................................ 7

*Banfield v. UHS Home Attendants, Inc.*, 1997 WL 342422 (S.D.N.Y. June 23, 1997) .................. 9

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) ................................................................................................................................ 8, 9

*Cody v. Mello*, 59 F.3d 13 (2d Cir. 1995) ...................................................................................... 6

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir.1993) ............................................................ 6

*Graham v. Rider Maint. Corp.*, 1986 WL 2411 (S.D.N.Y. Feb. 19. 1986) ................................... 9

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) .................................................. 10

*In re 680 Fifth Avenue Assoc.*, 218 B.R. 305 (Bkr. S.D.N.Y. 1998) ........................................... 7

*McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F.Supp.2d 440 (S.D.N.Y. 2002) .. 6, 7

*Meehan v. Snow*, 652 F.2d 274 (2d Cir.1981) .............................................................................. 6

*Nittolo v. Brand*, 96 F.R.D. 672 (S.D.N.Y. 1983) ....................................................................... 9

*Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449 (E.D.N.Y. 1995) ...................... 10

*Radetsky v. Barney & Smith, Inc.*, 1989 WL 234026 (S.D.N.Y. Dec. 13, 1989) ......................... 8

*Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425 (S.D.N.Y. 2002) ............................................... 7

*Shepherd v. American Broadcasting Companies*, 62 F.3d 1469 (D.C. Cir. 1995) ........................ 7

*Skywark v. Isaacson*, 1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999) ........................................... 7

*Traguth v. Zuck*, 710 F.2d 90 (2d Cir.1983) ................................................................................ 6

*Vernon v. The Port Authority of New York and New Jersey*, 2003 WL 21314049 (S.D.N.Y. June 6, 2003) ................................................................................................................................ 7

*Walker v. Cox*, 1997 WL 177854 (E.D.N.Y. March 27, 1997) ................................................... 10

**Statutes**

Fed.R. Civ. P. 7 ................................................................................................................. 12

Fed.R.Civ.P. 11 ....................................................................................................... 4, 11, 12

Fed.R.Civ.P. 12(f) ................................................................................................. 1, 2, 11, 12

## INTRODUCTION

In a motion styled as one to strike under Fed.R.Civ.P. 12(f), defendants Saudi Arabian Red Crescent Society, Hamad Al-Husaini, Salman Al-Oadah, Safer Al-Hawali, Saleh Al-Hussayen, and Shahir A. Batterjee (collectively, the "B&K Defendants") contend that the appropriate remedy for an erroneous filing by plaintiffs' counsel is the outright dismissal of all the claims against them.   Asserting without any basis whatsoever that counsel's error was deliberate and that plaintiffs fabricated a document for the purpose of misleading the Court, the B&K Defendants attempt to justify imposition of the severest sanction for what was in reality an honest mistake, corrected as soon as it was pointed out.   There is not even a shred of evidence that counsel's erroneous submission was intentional.   In fact, it is clear from the evidence affirmations submitted herewith that counsel's error was entirely innocent.   Counsel has never attempted to deny the mistake – rather, they moved quickly to correct it, as required by the Federal Rules of Civil Procedure.   The B&K Defendants did not want a correction, however; they wanted an issue.   After demanding that plaintiffs correct the mistake, the B&K Defendants now assert that plaintiffs are not entitled to set the record straight but instead must have their claims dismissed.

Defendants are wrong.   The Federal Rules expressly and quite sensibly permit parties to correct their mistakes; sanctions cannot be imposed for the "sin" of unintentional human error. Moreover, although the B&K Defendants accuse plaintiffs' counsel of fraud and seek sanctions in the form of an outright dismissal of all claims against them and an award of attorneys' fees (and despite defendants' original invocation of Rule 11 procedures), defendants improperly style their motion as one to strike a pleading under Rule 12(f). But plaintiffs' papers in opposition to defendants' motions to dismiss are not "pleadings" within the meaning of the Federal Rules of

Civil Procedure and a Rule 12(f) motion cannot be used to obtain a default on a motion to dismiss.  Under any name, this is a motion for sanctions, albeit one entirely lacking in factual or legal basis.

There is no genuine issue here about how counsel's error occurred or that it was entirely inadvertent -- but the accusation itself is sufficiently inflammatory to achieve defendants' purpose, casting aspersions on plaintiffs' lawyers' reputations and deflecting attention away from the reprehensible conduct of the defendants.  This smear tactic should be not allowed to succeed.  What has been fabricated here is not the document that counsel inadvertently submitted to the Court (created for another, legitimate purpose and mistakenly retrieved from a computer file in place of the correct one, which it closely resembles), but rather the charge that plaintiffs or their lawyers deliberately attempted to mislead the Court.  This disguised, over-reaching Rule 11 motion is simply an effort to punish plaintiffs' for their counsel's error and to distract counsel and the Court from the proper focus of the case:  whether defendants, including the B&K Defendants, provided material support to the perpetrators of the September 11 attacks and whether they are answerable for their conduct in the courts of the United States.  The motion should be denied so that the Court and the parties can return to the proper business of adjudicating plaintiffs' claims.

## FACTS

The facts pertaining to this motion are set forth in detail in the accompanying Affirmations of Andrea Bierstein ("Bierstein Aff.") and Justin Kaplan ("Kaplan Aff.").  As set forth in those affirmations, following the murder of a process server in Saudi Arabia, plaintiffs filed a motion in March, 2003, seeking leave to serve defendants located in Saudi Arabia, the United Arab Emirates, and Sudan by publication because "[p]laintiffs are unable to find an

individual willing to undertake service of process in these three countries." They annexed to the motion a list of defendants, denominated "Exhibit A," that fell into that category (the "March 2003 List"). The D.C. court granted plaintiffs' motion.  Thereafter, on May 2, 2003, plaintiffs added new defendants, including additional defendants who, like the defendants listed in the March motion, were located in Saudi Arabia, the United Arab Emirates, and/or Sudan.   In May, June, and July, plaintiffs caused a notice of the lawsuit to appear in two publications, *The International Herald Tribune* and *Al Quds Al-Arabi*.   The notice set forth the names of defendants located in Saudi Arabia, the United Arab Emirates and Sudan, including both defendants whose names had been listed in the exhibit to the March, 2003 motion and defendants added to the Complaint in May, whose names had not been so listed.

In connection with the preparation of the published notice, in May, 2003, plaintiffs' counsel retained a translation service to translate the notice into Arabic.  Counsel sent the translators the list of names to be included in the notice, so that those names could be rendered into Arabic.  To provide a complete list of names, counsel marked up the March 2003 List, adding new names to the already existing list.  The new names were inserted into the electronic version of the document, creating a revised list (the "May 2003 List"), which was then emailed to the translators.  *See* Bierstein Aff., ¶ 8.  The May 2003 List was saved in counsel's computer system and, as reflected in the records of the system, was not modified after May 7, 2003.  *See* Kaplan Aff., Exhibit 1.

In April, 2004, the B&K Defendants, along with other defendants represented by the same lawyers (11 defendants in all), filed motions to dismiss.   Nine of these defendants had been served by publication and all nine of them challenged service of process as improper.  Although the arguments presented by the nine defendants concerning service by publication were

nearly identical, some of the defendants argued that service was improper because their names had not appeared on the March 2003 List, while others argued that service was improper even though their names had appeared on the March 2003 List.   (Apparently even the B&K Defendants' attorneys had difficulty keeping all of these nearly-identical motions straight – they argued on behalf of Saleh Al-Hussayen that his name appeared on the March 2003 List, when in fact it did not.  *See* Bierstein Aff., ¶ 18.)

In preparing their opposition to the motions, plaintiffs' counsel drafted two separate arguments concerning service by publication, one responding to the argument that service was improper even as to those defendants whose names appeared on the March 2003 List and one responding to the argument that service was improper as to defendants whose names did not appear on that list.  Unfortunately, during the preparation of these arguments, one of plaintiffs' attorneys inadvertently retrieved the May 2003 List instead of the March 2003 List from his firm's computer system.  Erroneously believing that the May 2003 list was the list that had been annexed to the motion in March, 2003, counsel inserted the argument for defendants whose names had been submitted to the court in March, 2003 into briefs responding to motions made by defendants whose names had not in fact been included in the March 2003 List.  Counsel also submitted the May 2003 List as an exhibit to one of their opposition briefs, under the mistaken impression that it was the list that had been submitted as Exhibit A in March, 2003.

Plaintiffs' counsel first learned of their error when the B&K Defendants served a Rule 11 motion accusing plaintiffs of deliberate fraud.[1]  (Pursuant to the procedures set forth in Rule

---

[1]  Curiously, just a few days before service of the Rule 11 motion, plaintiffs counsel had spoken to Lynne Bernabei of Bernabei & Katz about Ms. Bernabei's request for additional time for defendants to submit reply briefs (a request that plaintiffs granted).  Ms. Bernabei failed to mention the error during that phone call.

11(c), the B&K Defendants did not file their motion with the Court.)   After investigation, counsel determined that they had, in fact, submitted the wrong list to the Court and had further based their arguments in four of the opposition briefs on the wrong list.   Plaintiffs wrote to Lynne Bernabei of Bernabei & Katz, acknowledged the error, apologized, and explained that they would file a corrected exhibit to replace the erroneous one and further would file corrected briefs in each instance where plaintiffs' brief erroneously asserted that defendant was on the March 2003 List.   Defendants did not respond or in any way object to this procedure.

Plaintiffs then filed the correct exhibit, annexing it to a "Notice of Filing of Corrected Exhibit." *See* Bierstein Aff., Ex. 2.   The notice explained that the previous exhibit "was, inadvertently, not a true and correct copy of the document in question, but rather a later modified version that was submitted under the mistaken belief that it was the correct one."   The notice further stated that the correct document, which was attached to it, should be substituted for the incorrect one.   *Id.*   Plaintiffs also submitted corrected briefs, each one bearing the title "Corrected Memorandum of Law in Opposition" with the appropriate motion identified.   After plaintiffs filed their corrections, Ms. Bernabei wrote to plaintiffs' counsel.   She accused counsel of having fabricated the May 2003 List for the purpose of deceiving the Court, and demanded that plaintiffs' opposition to the motions in question be withdrawn entirely and the motions to dismiss be deemed conceded.   When plaintiffs refused, the B&K Defendants filed the instant motion.

## ARGUMENT

## I.   PLAINTIFFS' CORRECTED BRIEFS SHOULD NOT BE STRICKEN

The B&K defendants argue that plaintiffs' corrected briefs should be stricken – and their motions to dismiss be deemed conceded -- for two reasons. First, the B&K defendants claim that dismissal of plaintiffs' claims is an appropriate sanction for what they characterize as improper

conduct.   Second, they claim the briefs should be stricken as improper sur-replies.   Neither argument has merit.

### A.       Dismissal Is Not Warranted For an Innocent Mistake, Promptly Corrected

The B&K Defendants readily acknowledge that the relief they seek is equivalent to dismissal of all of plaintiffs claims against them, but they argue that this most drastic of sanctions is warranted here.   They are wrong.   Plaintiffs' claims should not be dismissed because counsel's inadvertent errors provide no basis for sanction, much less for the most drastic sanction of all.

The Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995), *citing Enron Oil Corp. v Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993); *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981).   For that reason, the court has recognized that "dismissal is a harsh remedy to be utilized only in extreme situations." *Cody*, 59 F.2d at 15.   Indeed, the Second Circuit has noted that dismissal is a sanction that is "rarely used" and that "[a] district judge should employ it only when he is sure of the impotence of lesser sanctions."   *Id.   See also McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F.Supp.2d 440, 442 (S.D.N.Y. 2002) (dismissal is "a particularly severe sanction . . . even for a fraud upon the court. . . .").

Here, no sanction, certainly not the sanction of dismissal, is warranted.   The B&K Defendants contend that plaintiffs' counsel committed, or attempted to commit, a fraud on the Court, but the evidence demonstrates that what counsel actually committed was an all-too-human error, which they readily admitted and corrected.   Before a sanction can be granted based on a fraud on the Court, "it must be established by clear and convincing evidence that [the party to be sanctioned] has 'sentiently set in motion some unconscionable scheme calculated to interfere

with the judicial system's ability impartially to adjudicate' the action." *Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425 (S.D.N.Y. 2002), *quoting Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989); *see also Shepherd v. American Broadcasting Companies*, 62 F.3d 1469 (D.C. Cir. 1995) (requiring "clear and convincing evidence" of litigation misconduct as a condition for a default judgment); *McMunn,* 191 F.Supp.2d at 445 (applying "clear and convincing standard); *Skywark v. Isaacson*, 1999 WL 1489038, *14 (S.D.N.Y. Oct. 14, 1999) (requiring clear and convincing evidence of misconduct that "seriously affects the integrity of the normal process of adjudication"). Thus, the purported "fraud" must be intentional; "a statement made by an attorney due to an honest mistake or confusion . . . cannot be sanctionable." *In re 680 Fifth Avenue Assoc.*, 218 B.R. 305, 321 (Bkr. S.D.N.Y. 1998); *accord Vernon v. The Port Authority of New York and New Jersey*, 2003 WL 21314049 (S.D.N.Y. June 6, 2003) (sanctions not justified where misrepresentation to court was inadvertent).

The evidence overwhelmingly demonstrates that the submission of the May 2003 List was inadvertent and that the document was not fabricated, but rather was created for a legitimate purpose. To begin with, the computer system at Motley Rice LLP, from which the May 2003 List was inadvertently retrieved, shows that the May 2003 List was last modified in May, 2003. *See* Kaplan Affirmation, Ex. 1. Quite simply, it could not have been manufactured in response to defendants' motions to dismiss, which were filed 11 months later, in April, 2004. It was, rather, created to provide plaintiffs' translators with a complete list of all the names that were to appear in the Arabic version of the published notice. *See* Bierstein Aff., ¶ 8. The B&K Defendants' assertion to the contrary is simply belied by the evidence.

Moreover, counsel have provided a detailed explanation of how the document was modified in connection with the actual published notice and how the wrong document was then

inadvertently retrieved from the Motley Rice computer system and came to be used as the basis for plaintiffs' opposition to defendants' motions to dismiss. *See* Bierstein Aff., ¶¶ 18-23; Kaplan Aff., ¶¶ 2-3. Moreover, the attorney responsible for preparing the opposition briefs had not been involved in the preparation of the March 2003 motion or the May 2003 published notice and did not know that the list had been modified for use by the translators. She was thus not in a position to realize that the list she was provided was not what it appeared to be.

The B&K Defendants dismiss plaintiffs' explanation of the creation of the May 2003 List on the ground that the title "Exhibit A" was unnecessary in a list used for purposes of publication, but their argument misses the point. *See* Def. Mem., Exhibit 6. The March 2003 List already had the title "Exhibit A" on it. Rather than start over creating a new list, counsel simply started with the old one and marked it up. There was no need to *remove* the phrase "Exhibit A" when the point was to provide the translator with the list of names to be translated.

Significantly, the B&K Defendants present *no* evidence – much less clear and convincing evidence -- in support of their outrageous accusation that plaintiffs fabricated a document in an effort to mislead the Court. They ask this Court to infer a fraudulent intent from a simple, readily-admitted mistake, but provide no basis on which this Court could or should do so.

Nor do they provide any case law to support their contention that sanctions are warranted here. Significantly, the cases they cite – and from which they draw their inflammatory quotations – deal with extensive patterns of abuse (generally discovery abuse) over many years. *See, e.g., Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) (three year delay in responding to discovery requests); *Radetsky v. Barney & Smith, Inc.*, 1989 WL 234026 (S.D.N.Y. Dec. 13, 1989) (failure to provide discovery over several years, up to and including date of sanctions order); *Graham v. Rider Maint. Corp.*, 1986 WL 2411

(S.D.N.Y. Feb. 19. 1986) (refusal to provide discovery material over two years); *Nittolo v. Brand*, 96 F.R.D. 672 (S.D.N.Y. 1983) (party repeatedly gave false evidence and testimony, concealed evidence, then lied about it).  Here, by contrast, counsel submitted one erroneous document – and then provided a correction as soon as the error was called to their attention.

Defendants claim that plaintiffs' correction must be ignored, but the cases on which they rely concerning the ineffectiveness of a later correction arose in the context of parties who defied court orders and refused to provide discovery over many years, only to offer to produce the documents at the 11th hour, when faced, finally, with the prospect of sanctions.  *See Cine Forty-Second St.*, 602 F.2d at 1068 (plaintiffs' offer to provide interrogatory answers after refusing and delaying litigation for nearly four years was insufficient to avoid sanctions); *Graham*, 1986 WL 2411, *1-3 (after plaintiff claimed for more than a year that he could not comply with discovery orders and that tapes in question had been stolen, offer to produce in face of sanctions motion confirmed willfulness of prior refusals).  These cases have no applicability here, where plaintiffs made their correction at the first opportunity.[2]  That is especially true in light of the express language of Rule 11, which provides that a motion for sanctions under that rule may be filed with the Court only if the challenged document is not withdrawn or "appropriately corrected" within the applicable time.  Fed.R.Civ.P. 11(c)(1)(A).  There would be no purpose in providing an opportunity to withdraw or correct an erroneous filing if sanctions were imposed equally for corrected and uncorrected errors.  *See Banfield v. UHS Home Attendants, Inc.*, 1997 WL 342422, *2 (S.D.N.Y. June 23, 1997) (purpose of 21-day "safe-harbor provision" is to allow the opposing

---

[2] That plaintiffs first opportunity to correct their error arose in the context of a Rule 11 motion (albeit one that was never filed) is entirely attributable to the B&K Defendants' litigation tactics. They could have called the error to plaintiffs' attention informally and resorted to a Rule 11 motion only if they had been rebuffed.  They chose instead to respond to an obvious error with

party to amend or withdraw the challenged pleading or motion); *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449 (E.D.N.Y. 1995) (sanctions could not be imposed where attorney withdrew offending pleading within 21 days of service of motion); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) (sanctions could not be imposed where party not given an opportunity to withdraw or correct).  In this regard, it is significant that Rule 11 specifically envisions that filings can be "corrected"; it does not required that counsel withdraw a challenged filing in order to avoid sanctions.[3]

Here, Rule 11 required the B&K Defendants to give plaintiffs an opportunity to correct their erroneous filings and plaintiffs promptly did so.  The corrections cannot be ignored simply because defendants would rather play "gotcha!"[4]  Nor is it appropriate to impose on plaintiffs the

---

an immediate threat of sanctions and should not therefore be heard to say that it took a threat of sanctions to induce plaintiffs to correct their mistake.

[3]   Although the B&K Defendants style their motion as one to strike under Fed.R.Civ.P. 12(f), it is in reality a Rule 11 motion.  To begin with, Rule 12(f) applies only to "pleadings," defined in Rule 7 to include only "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third party complaint . . . and a third party answer.  Fed.R. Civ. P. 7(a).  Thus, Rule 12(f) cannot be used to strike papers submitted on a motion.  *See also Walker v. Cox*, 1997 WL 177854, *5 (E.D.N.Y March 27, 1997) (motion to strike under Rule 12(f) inappropriate when addressed to affidavit submitted on motion).  Moreover, the B&K Defendants well recognize that the effect of the relief they seek would be outright dismissal of all claims against them; they argue that such drastic relief is appropriate as a sanction.  Regardless of defendants' reluctance to give it its rightful name, this is a motion for sanctions pursuant to Rule 11.

[4]   Although sanctions are inappropriate in any of the motions at issue here, the B&K Defendants' motion reaches the height of absurdity and over-reaching in the context of the motion to dismiss filed by Shahir Batterjee.  There is no doubt that Mr. Batterjee's name actually appears on the March 2003 List and was submitted to the D.C. court in March 2003 and indeed Mr. Batterjee has conceded that is so.  *See* Memorandum of Law in Support of Shahir A. Batterjee's Motion to Dismiss at 12.  Plaintiffs' opposition papers similarly recognized that Mr. Batterjee was on the March 2003 List and argued that service by publication was expressly authorized by Judge Robertson and was proper.  Plaintiffs stand by this argument and Mr. Batterjee does not contend that there is anything improper in it.  Nonetheless, Mr. Batterjee asserts that plaintiffs' opposition to his motion should be stricken and the claims against him dismissed because plaintiffs annexed the incorrect document to the affirmation submitted in connection with his motion, and cross-referenced it in the other opposition briefs.

ultimate sanction of dismissal for an innocent (and corrected) error by their counsel.

> **B.    Plaintiffs' Argument in Opposition to Salman Al-Oadah's Motion that the March 2003 Order of Publication Should Be Interpreted to Authorize Service on Defendants in Saudi Arabia Who Were Not Specifically Listed in the Motion Is Not Frivolous and Provides No Basis for Dismissal**

The B&K Defendants make a different argument with respect to the motion to dismiss filed by Salman Al-Oadah, but that argument is no more meritorious and plaintiffs' opposition to the Al-Oadah motion should not be stricken.

The B&K Defendants recognize that plaintiffs did not rely on the May 2003 List in their opposition to Salman Al-Oadah's motion to dismiss and did not assert that Al-Oadah's name appeared in the March, 2003 motion. Nonetheless, they contend that the claims against Al-Oadah should be dismissed, this time as a sanction for plaintiffs' argument that the March 2003 order permitting service by publication should be construed as applying to all defendants who reside in Saudi Arabia, the United Arab Emirates, and Sudan.  There is nothing sanctionable about this argument, whether or not this Court finds it persuasive.

In obtaining the March, 2003, order of publication, plaintiffs did not assert that they had encountered any difficulties in serving the named defendants that were particular to those defendants.  Rather, plaintiffs asserted that, in light of the reported murder of their process server in Saudi Arabia, and difficulties they had entered in finding individuals willing to undertake personal service there, it was not feasible to serve personally defendants located there. Specifically, plaintiffs argued that "[p]ersonal service of process on individuals, corporations and organizations in Saudi Arabia, Sudan and United Arab Emirates is not possible because cultural hostilities and fear of retribution have made it impossible to find anyone in Saudi Arabia or the

Gulf State region willing or able to execute service of process."[5]   In their accompanying Memorandum of Law, plaintiffs further elaborated:   "The process server hired to serve the Defendants listed on Exhibit A was apparently murdered during his attempts to complete service of process for the instant lawsuit. . . .   Plaintiffs do not want to risk another innocent life, when an acceptable alternative means of service is available under Fed. R. Civ. P. 4(f)(3)."[6]

The D.C. court granted plaintiffs' motion, plainly accepting that personal service in Saudi Arabia, the United Arab Emirates, and Sudan was simply too dangerous or unfeasible to attempt. When new defendants located in those countries were added to the case in May, 2003 – after entry of the court's order permitting service by publication, but before the publication had taken place -- there was no reason to make a separate application to publish with respect to these individuals, given the basis of the court's original ruling.  The most sensible interpretation of the D.C. court's March 2003 order was that plaintiffs would not be required to attempt personal service in Saudi Arabia, the United Arab Emirates or Sudan on any defendant, at least not without some reason to believe that circumstances there had changed.  Neither plaintiffs nor their counsel can be sanctioned for having urged this Court to adopt this construction.

## C.   Plaintiffs' Corrected Briefs Are Not Sur-Replies

Defendants also seek to have plaintiffs' corrected opposition briefs stricken as sur-reply briefs.  Separate and apart from the fact that this argument show astonishing nerve on the part of the B&K Defendants, who demanded that plaintiffs correct their erroneous filings, only to seek to strike the corrections as unauthorized, defendants' argument is entirely unfounded.  Plainly, the corrected opposition briefs *replace* the erroneous opposition briefs; they do not respond to

---

[5]  Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants By Publication Pursuant To Federal Rule 4(f), at 2.

defendants' reply briefs.  The corrected opposition briefs repeat exactly the same arguments made in the original opposition briefs, except that the arguments concerning defendants' inclusion in the D.C. court's order of publication have been corrected to conform to the argument previously offered in opposition to motions filed by defendant and Al-Oadah whose name did not appear on the March 2003 List.  This was not a new argument specifically crafted to respond to defendants' reply briefs.  It was the same argument that plaintiffs had already made at before, in their opposition to the Al-Oadah motion (and previously, in opposition to the motion to dismiss filed by defendant Mohammad Abdullah Al Jomaih's motion to dismiss).  Indeed, that these are not sur-reply briefs can be seen from the fact that the arguments concerning service by publication do not respond in any way to arguments contained in defendants' reply briefs. Nonetheless, counsel would readily have consented to defendants' filing corrected or amended reply briefs to address any prejudice defendants believed they suffered by the correction of plaintiffs' errors in their opposition briefs.  Defendants never asked.  (Plaintiffs further note that amended reply briefs would not have been necessary had the B&K Defendants called the problem to plaintiffs' attention *before* they wrote their reply briefs.)

One other point remains.  In submitting a corrected opposition brief on the motion to dismiss filed by Saleh Al-Hussayen, plaintiffs did take the opportunity to correct an additional error that had appeared in that brief, but even here their correction was not a sur-reply.  Plaintiffs added the following inadvertently omitted material to their opposition brief:

> Al-Hussayen also claims that he is entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA").  But defendant's support for al Qaeda falls within the "tortious act" exception to the FSIA.  *See* 28 U.S.C. § 1605(a)(5). Plaintiffs hereby incorporate by reference and respectfully refer the Court to the arguments concerning the FSIA and the "tortious act" exception set forth in

---

[6] Memorandum in Support of Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Defendants by Publication at 2.

plaintiffs' opposition to motions to dismiss filed by Abdullah Muhsen Al Turki and Abdullah Bin Saleh Al-Obaid and to Plaintiffs' Consolidated Memorandum Of Law in Opposition to Sultan Bin Abdulaziz Al-Saud's Motion to Dismiss Certain Consolidated Complaints.

With the exception of defendant Al-Hussayen's name, this was verbatim the exact same argument that plaintiffs had included in their original brief in opposition to the motion filed by Saudi Red Crescent Society.  It cross-referenced the more-fully developed versions of arguments concerning the FSIA presented in opposition to the motions filed by other defendants.  More important, plaintiffs had presented some version of this argument, either the longer, more fully-developed version, or the shorter, cross-referenced version, in their opposition to every one of the B&K motions that raised the issue of the FSIA, with the sole exception of the Al-Hussayen brief.  Plainly, this was an oversight in the press of filing 10 simultaneous, nearly identical briefs – an error, which plaintiffs corrected when they submitted their corrected brief.

Notably, plaintiffs did *not* take the opportunity of filing a corrected brief to respond to arguments concerning the FSIA raised by defendants in their reply briefs.  Rather, they merely inserted the cross-reference that had been inadvertently omitted from the opposition brief.  It made no sense for plaintiffs to submit a brief denominated as a "corrected" one that repeated errors in the original filing.  In no sense was this a "sur-reply"; it was, rather, the brief that plaintiffs intended to, and should have, filed the first time around, but did not because of mistakes made in the press of filing 10 briefs at one time.

## II.   DEFENDANTS SHOULD NOT BE REWARDED WITH ATTORNEYS' FEES FOR THEIR UNFOUNDED HARASSMENT OF PLAINTIFFS' COUNSEL

The B&K Defendants also seek to recover attorneys' fees and costs in connection with their motion.  Their request should be denied.  As described above, counsel's mistake was entirely inadvertent.  Moreover, the B&K Defendants need not have incurred any costs at all as a

result.  It was their choice to draft and serve a Rule 11 motion before attempting to call the error by plaintiffs' attention by telephone, letter or email.  It was their choice to complete and file their reply briefs before seeking corrections from plaintiffs' counsel, although plaintiffs agreed to extend their time to reply. Indeed, it is the B&K Defendants, not plaintiffs or their counsel, that have improperly and needlessly increased the costs of litigation in this case, first by failing to bring plaintiffs' error to their attention through some means less drastic and time-consuming than service of a fully-drafted Rule 11 motion and then by bringing on this entirely unnecessary (and improper) motion in an attempt to turn an inadvertent error on counsel's part into the huge windfall of an undeserved dismissal.  Indeed, it is plaintiffs, not the B&K Defendants, that should be awarded the costs and fees of having to respond to this entirely baseless, harassing, and unnecessary motion.

## CONCLUSION

For the foregoing reasons, this Court should deny the B&K Defendants' motion to strike

plaintiffs' opposition to their motions to dismiss in its entirety.

Dated: New York, NY                    Respectfully submitted,
      October 1, 2004


                          /s/_____
                          Ronald L. Motley, Esq.
                          Jodi Westbrook Flowers, Esq.
                          Donald A. Migliori, Esq.
                          Michael Elsner, Esq. (ME-8337)
                          Ingrid Moll, Esq.
                          Justin Kaplan, Esq.
                          MOTLEY RICE LLC
                          28 Bridgeside Boulevard
                          P.O. Box 1792
                          Mount Pleasant, South Carolina 29465
                          Telephone:  (843) 216-9000

                          Paul J. Hanly, Jr., Esq. (PH-5486)
                          Jayne Conroy, Esq. (JC-8611)
                          Andrea Bierstein, Esq. (AB-4618)
                          HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                          415 Madison Avenue
                          New York, NY 10017-1111
                          Telephone:  (212) 401-7600

                          William N. Riley, Esq.
                          Amy Ficklin DeBrota, Esq.
                          Riley Debrota LLP
                          3815 River Crossing Parkway, Suite 340
                          Indianapolis, Indiana 46240
                          Telephone:  (317) 848-7939

                          Harry Huge, Esq.
                          Harry Huge Law Firm, LLP
                          Market Square North
                          1401 Ninth Street, N.W., Suite 450
                          Washington, D.C. 20004
                          (202) 824-6046

Allan Gerson, Esq.
Attorney At Law
2131 S Street NW
Washington, DC 20008
Tel:  (202) 234-9717

Attorneys for Plaintiffs