**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | MDL No. 1570<br>ECF case |

*This document relates to:*

| | |
|---|---|
| THOMAS BURNETT, SR., *et al.*<br>       Plaintiffs<br>   - against –<br>AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*,<br>      Defendants. | Civil Action No. 03 CV 9849<br>(RCC) |

**AFFIRMATION OF ANDREA BIERSTEIN IN OPPOSITION TO MOTION TO STRIKE OF CERTAIN DEFENDANTS**

Andrea Bierstein, Esq., affirms as follows:

1.  I an an attorney admitted to practice in New York and in this Court and am a member of the law firm Hanly Conroy Bierstein & Sheridan LLP, co-counsel for the *Burnett* plaintiffs. I submit this affirmation in opposition to the motion of certain defendants to strike plaintiffs' papers filed in opposition to six motions to dismiss.

2.  In particular, I submit this affirmation to respond to the baseless charges made by defendants' counsel, Bernabei & Katz ("B&K"). B&K has accused me and my co-counsel, Motley Rice LLC, of fabricating a document and attempting to perpetrate a fraud on the Court. These are serious charges – or they would be if there were any truth to them at all. As the person responsible for submitting the documents in question, I can state unequivocally that there is absolutely no truth to B&K's accusations. In the press of time to submit 10 opposition briefs at a time, the lawyers assisting me and I made an innocent mistake and based our briefs on the wrong

1

version of a document that contained a list of defendants' names.  Because we were working from the wrong version of the list, we also annexed that incorrect version to our opposition papers. When B&K called this fact to my attention (with a draft Rule 11 motion!), I filed a Notice of Corrected Exhibit with the correct document and corrected the briefs that had made arguments based on the wrong document.

3.      I would have expected the matter to end there.  Instead, B&K has filed a motion styled as one to strike under F.R.C.P. 12(f) (but in reality a Rule 11 motion by another name), accusing me of deliberately falsifying the document in question and asserting that the appropriate remedy for our error is outright dismissal of the *Burnett* claims against six of the defendants represented by B&K.

4.      This is not the first time B&K has accused me or Motley Rice of lying and deception.  Rather, that seems to be their favorite, all-purpose charge.  Previously, B&K claimed that a sworn affidavit of service from a process server was false – again, without any basis whatsoever for such an inflammatory charge.  When I defended that affidavit in open court, Lynne Bernabei accused me in a subsequent conversation of lying.

5.      Regardless of the baselessness of the charges or the frequency with which they are made by defendants' counsel, I here provide the Court a full explanation of the error that was made, how it was made, and how it was corrected.

**The Motion For Leave to Serve By Publication**

6.      As reflected on the docket sheet in the District of Columbia, on March 24, 2003, plaintiffs filed a motion for leave to serve defendants by publication.  Exhibit A to that motion was a list of defendants' names (the "March 2003 List").  As set forth in the motion, the basis on which plaintiffs sought leave to serve by publication was that "[p]ersonal service of process on individuals, corporations and organizations in Saudi Arabia, Sudan and United Arab Emirates is

not possible because cultural hostilities and fear of retribution have made it impossible to find anyone in Saudi Arabia or the Gulf State region willing or able to execute service of process." In their accompanying memorandum of law, plaintiffs' further explained: "The process server hired to serve the Defendants listed on Exhibit A was apparently murdered during his attempts to complete service of process for the instant lawsuit. . . . Plaintiffs do not want to risk another innocent life, when an acceptable alternative means of service is available under Fed. R. Civ. P 4(f)(3)." On March 25, 2004, Judge Robertson granted the motion for leave to serve by publication with a minute order which stated in its entirety: "Court grants plaintiffs' motion for extension of time to June 30, 2003 for service of process and grants leave to provide service by publication."

7.     On May 2, 2002, plaintiffs added defendants to the action, including defendants located in Saudi Arabia and the United Arab Emirates.

8.     Thereafter, plaintiffs' counsel caused notice of the *Burnett* action to be published in the manner described in the motion for leave to serve by publication. The defendants listed in the published notice included both defendants whose names appeared on the March 2003 List and additional defendants whose names had not appeared in that document. In order to render the names of the defendants into Arabic for publication in *Al-Quds Al-Arabi*, I understand that co-counsel handling the service retained a translation firm. From documents that I have reviewed, it is clear that, in order to supply the translators with the list of names to be translated for publication, in May, 2003, Motley Rice used the March 2003 List as the starting point and added the names of additional defendants to that list. The revised document was saved as a .pdf file (the "May 2003 List") and emailed to co-counsel for forwarding on to the translator. I had no involvement in the motion for leave to serve by publication or in the subsequent project of

causing the notice to be published and had no knowledge that the list supplied to the translators was a marked-up version of the list that had been supplied to the court in connection with the March 2003 motion.

9.      On August 8, 2003, plaintiffs filed a Notice of Service by Publication, annexing statements from the *International Herald-Tribune* and *Al-Quds Al-Arabi* confirming that publication had occurred. These statements included copies of the published notices as they had actually appeared, showing the names of all defendants listed in the notice, including those whose names had not appeared in the March 2003 List.

**The B&K Motions & Plaintiffs' Opposition to Them**

10.      On April 19, 2004, B&K filed motions to dismiss on behalf of 11 defendants. The motions were substantially identical, with a few variations.  One variation was that, while all 11 motions asserted that the claims should be dismissed for lack of personal jurisdiction and failure to effect proper service, some of the motions also sought dismissal pursuant to the Foreign Sovereign Immunities Act.  Another variation related to the argument about service of process.  Nine of the defendants had been served by publication.  All nine challenged that service, but some acknowledged that their names appeared in the March 2003 List but contended that service was nonetheless improper, while others asserted that their names had not been included in the March 2003 List and claimed that service was improper for that additional reason.  At B&K's request, the parties agreed to an extended briefing schedule for the 11 motions, with plaintiffs' responses to be due on June 30.

11.      I undertook to prepare the 11 responses.  As the attorney responsible for preparing these responses, I was and am the person with responsibility for everything that went into them.  Although others assisted me in preparing the responses, I incorporated their work into the final product and authorized the filing of each opposition brief and affirmation.

12.     As part of my work on these motions, I prepared a spreadsheet summarizing the arguments made in each of the 11 motions, noting for the nine defendants challenging service by publication whether each defendant claimed to be on the March 2003 List.  After noting the similarities among the motions, on June 23, 2004, I sent an email to Alan Kabat requesting that B&K agree to allow us to file a single memorandum of up to 75 pages in opposition to the 11 motions, rather than 11 separate memos of up to 25 pages each.  I further proposed that B&K file a consolidated reply, also of an expanded length.  B&K refused, insisting that plaintiffs file separate responses for each defendant.

13.     On June 23, 2004, I sent an email to Ingrid Moll, an associate at Motley Rice, asking her to assist me in the preparation of the 11 opposition briefs.  Specifically, I asked Ms. Moll to handle the service by publication issue.  I asked her to prepare "two versions of the legal framework for the service by publication argument, one for defendants whose names appeared in Judge Robertson's order allowing service by publication and one for defendants whose names did not appear in that order."  I explained to Ms. Moll that, in order to avoid duplication, a full discussion of each argument would appear in only one brief, and that the other briefs would cross-reference the appropriate argument and contain a shorter argument applying the full legal discussion to the particulars of the relevant defendant.

14.     As reflected in email correspondence that I have reviewed, Ms. Moll asked Justin Kaplan, another Motley Rice associate, to send her the March, 2003 motion papers for her use in preparing the service by publication portions of the opposition briefs.  On June 27, 2004, Mr. Kaplan sent the March, 2003 motion papers, including exhibits, to Ms. Moll.  She used the documents sent by Mr. Kaplan to prepare her sections on service by publication.

15.    As set forth in the accompanying affirmation of Justin Kaplan, in response to Ms. Moll's request for documents to assist her in writing the argument about service by publication, Mr. Kaplan retrieved the wrong document from the Motley Rice computer system. *See* Affirmation of Justin B. Kaplan In Opposition To Motion To Strike Of Certain Defendants, ¶ 2. Instead of the March 2003 List that had been submitted to the Court, he copied the May 2003 List that had been revised for use by the translators preparing the final list of names to appear in *Al-Quds Al-Arabi*. As reflected on the Motley Rice computer system, the document that Mr. Kaplan retrieved had been originally created on Monday, March 24, 2003 at 3:02 p.m., but had been modified thereafter. According to the records in the computer, the May 2003 List was last modified on Wednesday, May 7, 2003 at 2:41 p.m. A copy of the computer record reflecting this information is annexed to Mr. Kaplan's affirmation. (Given that the last date on which the May 2003 List was modified was May 7, 2003, nearly a full year before the B&K Defendants' motions were even filed, the B&K Defendants' charge that the May 2003 List was fabricated for use in response to their motions is plainly false.) As shown on this document, the name of the document was apparently not changed when the document was modified in May, 2003, so that, by designation, it appeared to be the document that had been annexed as Exhibit A to the March 2003 motion. The May 2003 List that Mr. Kaplan retrieved contained listed more names than the March 2003 List that had been submitted to the Court because the May 2003 List included additional defendants whose names were to be listed in the published notice.

16.    Using the incorrect list of defendants that Mr. Kaplan sent her, Ms. Moll prepared the sections for the briefs that I had requested. Ms. Moll made the section dealing with service on Salman al-Oadah the "lead" section on publication for those defendants whose names were not included in plaintiffs' March 2003 motion. She made the section dealing with service on

Shahir A. Batterjee the "lead" section on publication for those defendants whose names had appeared in the March, 2003 motion and, as a result, we decided to provide the a copy of the motion as an exhibit to our opposition to the Batterjee motion.  The other briefs referred either to the Al-Oadah brief or to the Batterjee brief, depending on which category the defendant fell into.

17.     With respect to defendants whose names did not appear on the list submitted to the Court with the March, 2003 motion, Ms. Moll argued that Judge Robertson's order should be interpreted to include all defendants in Saudi Arabia, the United Arab Emirates, and Sudan, because the basis of that order was the situation in those countries, not the particular circumstances of any defendant.  Because Ms. Moll was inadvertently working from the wrong list of names, she believed that more of the defendants had been on the list submitted to Judge Robertson than was actually the case and she erroneously applied the "Batterjee" argument (that service was explicitly authorized), rather than the "Al-Oadah argument" (that service was implicitly authorized) to those additional defendants.

18.     One of the responses that Ms. Moll prepared replicated an error made by defendants' counsel.   Although Saleh Al-Hussayen's name did not appear in the March 2003 List, the brief that B&K filed for Mr. Al-Hussayen asserted that it did.  I categorized Mr. Al-Hussayen's response with the defendants whose names were on the list, rather than with those whose names were not, and, using my chart, Ms. Moll cross-referenced the argument in the Batterjee brief, rather than the one in the Al-Oadah brief.  In addition, Mr. Al-Oadah's name, which did not appear on the March 2003 List, was one of the names that had been added to the May 2003 List that Ms. Moll was inadvertently using, but the spelling used on the May 2003 List was different from the spelling used in the motion papers.   As a result, Ms. Moll did not realize that the name on the exhibit was the same as the name on the motions and she (correctly as it

turned out) prepared an argument based on the assumption that Mr. Al-Oadah's name did not appear on the March 2003 List.

19.      On June 28, Ms. Moll sent me the sections for the nine briefs addressing service by publication.  I reviewed the two long sections (the sections pertaining to Mr. Batterjee and Mr. Al-Oadah), which contained the expanded version of the arguments we were making.  Ms. Moll's fortuitously correct argument concerning Mr. Al-Oadah prevented me from realizing that the list of defendants' names that we were using included every one of the B&K Defendants, which (had I realized it) would have alerted me to the possibility of a mistake.

20.      In finalizing the briefs, I asked Mr. Kaplan to provide me with a copy of the March, 2003, motion papers so that I could attach it to the papers.   Mr. Kaplan forwarded to me the email that he had previously sent to Ms. Moll, attaching the motion and what we all believed to be the March 2003 List as submitted to the Court, but which was, in fact, the May 2003 List. It was this document that I annexed to my affirmation in opposition to the motion to dismiss filed by Shahir Batterjee and referred to in each of the other briefs.

21.      On June 30, 2004, I completed the opposition to 10 of the motions to dismiss and, at my direction, paralegals from my firm and from Motley Rice filed the documents electronically.  (We decided voluntarily to dismiss the 11th defendant.)  At the time we filed the papers, I believed that the May 2003 List that we provided to the Court was in fact a true and correct copy of the list that had been annexed as Exhibit A to the March, 2003 motion in the D.C. district court.  I also believed that the arguments in each of our briefs accurately addressed the situation of each defendant. I understood that, at least with respect to Mr. al-Oadah, our argument was that the March, 2003 order, should be interpreted to apply to defendants other than those whose names were on the list submitted to Judge Robertson and that, as to those

defendants, service by publication had been implicitly, although not explicitly, authorized.  I believed, and continue to believe, that this is a good-faith argument for a broad and sensible construction of that order.

22.     At no time did I or to my knowledge anyone working under my supervision engage in the fabrication of any document, knowingly submit a false document, or in any other way attempt to mislead or defraud the Court.  Rather, my submission to the Court of the May 2003 List instead of the March 2003 List was entirely inadvertent and unintentional – in short, a mistake.

**B&K's Rule 11 Motion**

23.     On Wednesday, July 21, 2004, I received an email message from Alan Kabat, an attorney at B&K, requesting an extension of time, to July 30, for B&K to submit reply briefs with respect to some, but not all, of the motions to dismiss.  According to Mr. Kabat's note, his firm wanted the extension because of Lynne Bernabei's "absence from town last week, and her other commitments . . . ."  I spoke to Ms. Bernabei by telephone about this request that same day.  I discussed with her the need for reciprocal courtesies and concerns I had that in the past her office had not been cooperative in matters that needed to be worked out between the parties.  Ms. Bernabei assured me that she and her firm had worked and would continue to work professionally and cooperatively with us and I agreed to the extension she was seeking.  At no time during our phone conversation did Ms. Bernabei suggest that the document I had submitted to the court as the March 2003 List was not the correct document nor did she request that I withdraw or correct our submissions in any way, although at that time her firm had not yet completed its reply briefs.

24.     In light of this phone conversation, I was quite surprised on the following Monday, July 26, 2004, to receive from Ms. Bernabei a Rule 11 motion, served on all parties but,

as required by the Federal Rules of Civil Procedure, not filed with the Court.  In that Rule 11 motion, B&K informed plaintiffs for the very first time of its view that the list of defendants' names that we had submitted to this Court was not in fact identical to the list that plaintiffs had provided to the D.C. court in March, 2003.

25.    I reviewed the material contained in the Rule 11 motion and asked my co-counsel at Motley Rice to determine if there was any truth to the assertions in the motion.  It was then that I learned that B&K was correct and that the exhibit that had been submitted to the D.C. court in March, 2003, was a different document, with fewer names on it, than the version I had submitted to the Court.

26.    Once I had determined that I had inadvertently submitted an incorrect document, I determined that it was my professional obligation to correct that erroneous submission. Moreover, from my review of Rule 11, I understood that I was required to correct my erroneous submission before the deadline for the filing of B&K's sanctions motion (which we and B&K had agreed to extend).  It was, and is, my understanding that a party may file a motion under Rule 11 for sanctions only if the other side has refused to withdraw or correct, as may be appropriate, the challenged filing.  In this circumstance, we never considered refusing to correct our submissions, as they were plainly, albeit inadvertently, incorrect.

27.    I determined that in addition to submitting a corrected version of the March 2003 List, we were obliged also to submit corrected versions of the briefs in which we had argued, again inadvertently, but nonetheless erroneously, that defendants' names had been set forth in the March 2003 motion and that, accordingly, service by publication was explicitly authorized.  The defendants for whom we had erroneously made this argument were Saudi Arabian Red Crescent, Hamad Al-Husaini, Safer Al-Hawali, and Saleh Al-Hussayen.  I further determined that although

B&K's Rule 11 motion asserted that we had erroneously treated defendant Al-Oadah as having been listed in the March, 2003, motion, in fact our opposition to Mr. Al-Oadah's motion contained no such assertion, but simply argued that service in his case was implicitly, rather than explicitly, authorized.  Accordingly, I determined that no corrected filing was necessary as to Mr. Al-Oadah.  Finally, I determined that, in the case of Mr. Al-Hussayen, it was Mr. Al-Hussayen's brief that had asserted that his name appeared in the March 2003 List and we had simply repeated the error. Nonetheless, I determined that it was necessary to correct this error as well.

28.     Accordingly, on August 24, 2004, I wrote to Ms. Bernabei to respond to her Rule 11 motion.  (A copy of my August 24, 2004 letter is Exhibit 1 to this affirmation.)  In my letter, I acknowledged that the document we had filed contained the wrong list of defendants and I apologized for the error.  I further assured Ms. Bernabei that the error was inadvertent and that no deception was intended.  Indeed, pointing to our opposition to Mr. Al-Oadah's motion (and to an earlier motion where we had presented the same argument), I noted that "[p]lainly, we made no secret of the fact that additional names had been added to the publication notice and were quite prepared to defend our position with respect to such added defendants.  We were simply mistaken as to which category certain of the defendants fell into.  We apologize for that error."  I informed Ms. Bernabei of my intention to file a corrected exhibit and corrected memoranda of law.  I further suggested that this entire issue could have been dealt with by a phone call and urged her to call me if she had any questions or wanted to discuss the issue further.  I heard nothing from Ms. Bernabei or any other B&K lawyer.

29.     Accordingly, on August 27, 2004, plaintiffs filed corrected memoranda of law and a Notice of Filing of Corrected Exhibit, as set forth in my August 24 letter. (The Notice of Filing of Corrected Exhibit is attached hereto as Exhibit 2.)  The Notice of Filing of Corrected Exhibit

stated that the list previously submitted "was, inadvertently, not a true and correct copy of the document in question, but rather a later modified version that was submitted under the mistaken belief that it was the correct one."  The notice further stated that the correct document, which was attached to it, should be substituted for the incorrect one.  The corrected memoranda of law were all denominated as such and the description of them as "corrected" memoranda was included in the description carried by the electronic filing system and the electronic docket.

      30.    On September 1, 2004 (while I was on vacation), I received a letter from Ms. Bernabei stating her view that plaintiffs were not entitled to correct their mistake and demanding that, instead, our entire opposition to her motion to dismiss be withdrawn or stricken.  The letter concluded with a threat that, if we did not withdraw our opposition and treat defendants' motions as conceded, defendants would file their Rule 11 motion.  (A copy of Ms. Beranbei's September 1 letter is annexed as Exhibit 3.)  On September 9, 2004 (having returned from vacation), I wrote to Ms. Bernabei again.  (A copy of my September 9 letter is annexed hereto as Exhibit 4.)   I told her that plaintiffs had rejected her preposterous suggestion that the appropriate remedy for this error was outright dismissal of all claims against her clients.  I informed her that the filing of a Rule 11 motion in the face of the correction we had provided was improper.  I further informed her that plaintiffs would prefer to "focus on the merits of the case rather than to trade personal accusations," but that her insistence on pursuing her baseless accusations against us would result in a full examination not only of our conduct, but of hers, as well.

31.     Several hours after I emailed my September 9 letter to Ms. Bernabei, B&K filed the instant motion, seeking precisely the same sanctions it asked for in its Rule 11 motion, but styled, this time, as one under Rule 12(f).

Affirmed under penalty of perjury in New York, New York on October 1, 2004

Andrea Bierstein