UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————   )
                                                           )
In Re TERRORIST ATTACKS on            )
SEPTEMBER 11, 2001                          )      03 MDL 1570 (RCC)
—————————————————————   )
                                                           )
KATHLEEN ASHTON et al.,                   )
                                                           )
                          Plaintiffs,            )
              v.                                       )      02 CV 6977 (RCC)
                                                           )
AL QAEDA ISLAMIC ARMY et al.,         )
                                                           )
                          Defendants.         )
—————————————————————   )

**ASHTON PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS PRINCE ABDULLAH AL FAISAL BIN ABDULAZIZ AL SAUD,
MOHAMMED BIN ABDULRAHMAN AL ARIEFY AND AL FAISALIAH GROUP'S
<u>MOTION TO DISMISS</u>**

KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017-5540
Phone:  (212) 687-8181
Fax: (212) 972-9432

Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION
     IN THE UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   This Court Has Personal Jurisdiction Over Prince
          Abdullah Because He Knowingly & Intentionally
          Provided Financial Support For Al Qaeda
          Attacks Targeting America . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     C.   This Court Has Personal Jurisdiction Over
          Prince Abdullah Because  He  Knew & Intended
          That The Acts Of His Al Qaeda Co-Conspirators
          Would Impact The United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.   This Court Has General Personal Jurisdiction Over
          AFG Because Of Its Continuous & Systematic
          Activities In The United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     E.   Plaintiffs Should Be Allowed To Conduct
          Jurisdictional Discovery        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  PLAINTIFFS' FACTUAL ALLEGATIONS ARE SUFFICIENT
     TO DEFEAT DEFENDANT'S MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Plaintiffs' Burden at the Pleading Stage Is Minimal . . . . . . . . . . . . . . . . . . . 9

     B.   Plaintiffs' Complaint States a Claim under the Anti-terrorism Act
          (the "ATA"), 18 U.S.C. §2333(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.   Defendants Have Committed Acts of
               International Terrorism as Defined by the Statute . . . . . . . . . . . . . . . . . 13

          2.   General Tort Law Principles Govern the Application of the ATA . . . . . 14

          3.   Plaintiffs Have Properly Pled Causation . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*All State Life Insurance Co. v. Linter Group Ltd.*,
782 F.Supp. 215 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Andre Emmerich Gallery v. Segre*,
1997 U.S.Dist. LEXIS 16899 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Boim v. Quranic Literary Institute, et al.*, 291 F.3d 1000 (7th Cir. 2004) . . . . . . . . *passim*

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burnett v. Al Baraka*, 274 F.Supp.2d 86 (D.D.C. 2003) . . . . . . . . . . . . . . . . 1, 10, 13, 16

*Calder v. Jones*, 465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chrysler Capital Corp.*, 778 F.Supp. at 1266-70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) . . . . . . . . . . . . . . . . 2

*Dixon v. Mack*, 507 F.Supp. 345 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) . . . . . . . . . . . . . 2

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . 3, 8

*Kamen v. American Telegraph & Telegraph Co.*, 791 F.2d 1006 (2d Cir. 1986) . . . . . . 9

*Lamarca v. United States*, 31 F.Supp.2d 110 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . 16

*Lee v. Bankers Trust Co.*, 166 F.3d 540 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*PDK Laboratoriess v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) . . . . . . . . . . . . . . . . 2

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 . . . . . . . 2, 3, 5, 7

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
995 F.Supp. 325, (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stanford v. Kuwait Airways, Corp.*, 89 F.3d 117 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 16

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. at 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . 1, 15

*World-Wide Volkswagen Corp. V. Woodson,* 444 U.S. 286 . . . . . . . . . . . . . . . . . . 2, 5, 6

*Zuchowicz v. United States*, 140 F.3d 381 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 16

## STATE CASES

*Laufer v. Ostrow*, 55 N.Y.2d 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL STATUTES

Anti-Terrorism Act (ATA), 18 U.S.C. §2331 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §2339A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

18 U.S.C. §2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

## OVERVIEW

Defendants Prince Abdullah Al Faisal Bin Abdulaziz Al Saud ("Prince Abdullah") Al Faisaliah Group ("AFG"), and Mohammed bin Abdulrahman Al Ariefy ("Al Ariefy"), are subject to the jurisdiction of this Court because they directed activity at the United States designed to harm U.S.'s citizens and interests, and because of AFG's systematic contacts with the United States.

Furthermore, plaintiffs' factual allegations are sufficient to defeat defendant's motion. Fed. R. Civ. P. 8(a) requires only that the complaint contain a short and plain statement of the court's jurisdiction, a short and plain statement of plaintiffs' claims, and a demand for relief. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957). Fed. R. Civ. P. 8(a) does "not require a claimant to set out in detail the facts upon which he bases his claim." "All that is required is fair notice to defendant "of what the plaintiff's claim is and the grounds upon which it rests." *Id.; see Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002) (Rule 8 "establishes a pleading standard without regard to whether a claim will succeed on the merits."); *Burnett v. Al Baraka*, 274 F.Supp.2d 86, 103, 107, 110 (D.D.C. 2003) ("*Burnett I*"). Plaintiffs have met these requirements.

Plaintiffs have alleged that defendants were part of a global conspiracy to assist al Qaeda's efforts to attack America and American interests. Furthermore, plaintiffs allege that Prince Abdullah and AFG had close ties to known terror financier, Mohammed Galeb Kalaje Zouaydi. 4AD ¶241. Zouaydi funneled money from Saudi based company Mushayt for Trading Establishment through Spanish corporations to entities and individuals known to be associated with al Qaeda. *Id.* The Fourth Amended Complaint ("4AC") clearly alleges that defendants,

1

alone and with other entities aided and abetted al Qaeda.  The September 11th attacks were a natural consequence of these activities.


## ARGUMENT

## I.   DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN THE UNITED STATES

### A.   Legal Standards

To defeat a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction made before discovery, plaintiffs "need make only a *prima facie* showing by [their] pleadings and affidavits that jurisdiction exists."  *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  In evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor.  *PDK Labs v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997).  In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir. 1993).


### B.   This Court Has Personal Jurisdiction Over Defendants Because They Knowingly & Intentionally Provided Financial Support For Al Qaeda Attacks Targeting America

Defendants' arguments that plaintiffs have not alleged facts sufficient to establish minimum contacts with the United States, is without merit.  In "ascertaining whether a defendant meets the 'minimum contacts' test, the single most important consideration is whether a defendant's 'conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there.'" *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 290 F. Supp. 2d 54, 59 (D.D.C. Oct. 27, 2003) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Here, because defendants, through their involvement with terrorist financier, defendant Muhammed Galeb Kalaje Zouaydi, knowingly and intentionally provided financial support to al Qaeda for attacks targeting America, including the September 11th attacks, he should have reasonably anticipated being haled into Court in the United States.  Thus the exercise of personal jurisdiction over Prince Abdullah does "not offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp.*, 444 U.S. at 292 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In his recent *Pugh* decision, District Judge Thomas Penfield Jackson upheld personal jurisdiction over individual Libyan defendants in their personal capacities who conspired to bomb a French aircraft over Niger *en route* from Congo to Paris, killing 170 passengers, including seven Americans.  *Pugh*, 290 F. Supp. 2d at 56, 58-60.  *Pugh* reasoned:

> [T]he individual defendants . . . conspired to sabotage and succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight.  As the plane they chose to destroy was on an international flight and expected to stop in several nations before reaching its final destination, the individual defendants could and should have reasonably postulated that passengers of many nationalities would be on board, from which they could also expect they might be haled into the courts of those nations whose citizens would die.  Given the number of passengers on UTA Flight 772, and the international nature of the flight, it was also altogether foreseeable that *some* Americans would be aboard the plane, whose lives would be lost, *and that the individual defendants would have to answer in some fashion in American courts for the consequences of their actions.* . . .

*Id.* at 59 (emphasis added).  Congress has passed many United States statutes over the past twenty years that impose sanctions on those who commit acts of international terrorism; therefore, the "interest of the United States in preventing and punishing international terrorism

3

has been a matter of worldwide common knowledge for years." *Id.* Hence, Judge Jackson

concluded that due process is not offended by the exercise of personal jurisdiction in a civil

action over foreign defendants who conspire to commit acts of international terrorism that risk

injuring Americans:

> Thus, in light of the pre-existing statutory authority providing for the criminal
> prosecution of those who carry out terrorist acts, and the defendants' intentional
> targeting of foreign nationals at the risk of killing Americans among them,
> defendants should have anticipated the possibility of being 'haled into court' in
> the United States in some capacity. And because they should have anticipated as
> much, this Court concludes that it may constitutionally exercise personal
> jurisdiction over the individual defendants in their personal capacities without
> offending any 'traditional notions of fair play and substantial justice.'

*Id.* at 59-60. Since the Constitution allows the exercise of personal jurisdiction over foreign

defendants who "should have anticipated the possibility of being haled into court in the United

States" for conspiring to bomb a French plane flying from Congo to Paris "at the risk of killing

Americans," *id.,* our Constitution likewise allows this Court to exercise personal jurisdiction

over Prince Abdullah who plaintiffs allege knowingly supported and financed al Qaeda attacks

specifically targeting and killing thousands of American civilians on American soil. *See* 4AC at

¶¶ 241, 255.

Likewise, in *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325

(E.D.N.Y. 1998), *aff'd in part,* 162 F.3d 748 (2d Cir. 1998), District Judge Thomas C. Platt

exercised personal jurisdiction over Libyan defendants based on their "intentional, tortious acts

that were expressly aimed at the United States" by supporting terrorists who killed U.S. citizens

by bombing a United States flag aircraft over Lockerbie, Scotland. *Id.,* 995 F. Supp. at 330

(citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Reasoning that because the "effects" of the

4

defendants' extraterritorial conduct upon the United States "are sufficient to provide fair warning such that the foreign [defendants] may be subject to the jurisdiction of the courts of the United States," *id.* at 330 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)), the assertion of personal jurisdiction over non-resident defendants who support and enable terrorist attacks against the United States is not without due process:

> Any foreign [defendant] would know that the United States has substantial interests in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, *including civil actions in United States courts.*

*Rein*, 995 F. Supp. at 330 (emphasis added).

*Rein* and *Pugh* find clear support in *Calder v. Jones*, where the Supreme Court held that due process extends personal jurisdiction over non-resident defendants who knowingly engage in conduct "calculated to cause injury" in the forum. *Calder*, 465 U.S. 783, 791 (1984). In *Calder*, the plaintiff, a famous entertainer, brought suit in her home state of California, pleading that she suffered intentional infliction of emotional distress and invasion of privacy because of a defamatory article written by defendants in Florida. *Id.* at 785. Dispensing with argument that the Constitution does not permit jurisdiction over these non-resident defendants, the Court ruled:

> [Defendants] are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. [Defendant] South wrote and [defendant] Calder edited an article that they *knew would have a potentially devastating impact* upon [plaintiff.] And they *knew that the brunt of that injury would be felt by respondent in the State in which she lives and works*. . . . Under these circumstances, [defendants] must 'reasonably anticipate being haled into court there' to answer. . . . An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Id.* at 789-90 (emphasis added).

5

Applying *Calder, Rein* and *Pugh* to the case at bar, when defendants knowingly provided support and services for al Qaeda attacks targeting America and American interests, including the 1998 bombings of U.S. Embassies in Kenya and Tanzania and the September 11 attacks, Prince Abdullah knew or should have known that those attacks would have a devastating impact on the United States.   Accordingly, defendants "should [have] reasonably anticipate[d] being haled into court [here]." *World Wide Volkswagen Corp.*, 444 U.S. at 297.

### C.   This Court Has Personal Jurisdiction Over Defendants Because They Knew & Intended That The Acts Of His Al Qaeda Co-Conspirators Would Impact The United States.

The Second Circuit recognizes conspiracy-based personal jurisdiction: "Many courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory." *All State Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (asserting personal jurisdiction over Australian defendants via conspiracy theory by imputing forum acts of co-conspirators done in furtherance of conspiracy) (citing *Chrysler Capital Corp.*, 778 F. Supp. at 1266-70 (asserting personal jurisdiction over non-resident defendant via conspiracy theory)).   To assert personal jurisdiction, "[t]he conspiracy theory is merely a way of imputing acts done in the state to the out-of-state conspirator." *All State Life Ins. Co.*, 782 F. Supp. at 221 n.6. By imputing forum acts of their co-conspirators to non-resident defendants, this Court has repeatedly found that such non-resident defendants have minimum contacts with the forum to satisfy due process. *Dixon v. Mack*, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course, complained of in the suit, supplies the necessary minimum contacts [under] *International*

*Shoe*, 326, U.S. 310, 316 (1945).”); *Andre Emmerich Gallery v. Segre*, 1997 U.S. Dist. LEXIS

16899 at * 17 (S.D.N.Y. 1997) (imputation of forum activities of co-conspirator to non-resident

defendant establishes minimum contacts satisfying due process).

        Consonant with the logic of *Calder, Pugh,* and *Rein, supra*, the Second Circuit

conspiracy jurisdiction cases of *Dixon* and *Andre Emmerich Gallery* explain that when non-

resident defendants enter into a conspiracy knowing that the forum acts of their co-conspirators

(done in furtherance of the conspiracy) would impact the forum, such non-resident defendants

should “reasonably anticipate being haled into court there.”  *Dixon,* 507 F. Supp. at 352; *Andre*

*Emmerich*, 1997 U.S. Dist. 16899 at * 17 (both citing *World-Wide Volkswagen Corp.*, 444 U.S.

at 295 (1980)); *see also, Chrysler Capital Corp.*, 778 F. Supp. at 1270 (asserting personal

jurisdiction over non-resident co-conspirator where conspiracy “could reasonably have been

expected to have effects” in the forum).  Hence, the exercise of personal jurisdiction over non-

resident defendants based on forum acts of their co-conspirators satisfies due process.

        Not disputing that the forum acts of a co-conspirator may be imputed to a foreign

defendant to establish his minimum contacts, defendants argue that the plaintiffs have not

adequately pleaded conspiracy.  We disagree.  As explained above, the 4AC makes a *prima facie*

showing of conspiracy between defendants and al Qaeda to injure America through his

involvement with known terrorist financier, defendant Zouaydi.  Hence, by imputing the

September 11 forum contacts of his al Qaeda co-conspirators to Prince Abdullah, AFG and Al

Ariefy, this Court may assert personal jurisdiction over them in accordance with due process.

**D.      This Court Has General Personal Jurisdiction Over AFG Because Of Its Continuous & Systematic Activities In The United States**

Through several of its many subsidiaries, Al Faisaliah Group, conducts a substantial amount of business in the United States, even with the United States government.  One of its subsidiaries, Al Faisaliah Medical Systems had a contract with the United States Department of Defense as late as 2001.  Another subsidiary, Megastar, conducts business with numerous U.S. companies, representing Columbia 20th Century and Motorola, to name two, in Saudi Arabia.  Finally, Al Faisaliah has a majority interest in Ebttikar Technology Company, which has a U.S. subsidiary, Gulf Stars International.

Through these subsidiaries, AFG conducts continuous activities which "result[] in a large volume of ...business, in the course of which [AFG] received the benefits and protections of the laws of the [United States], including the right to resort to the courts for the enforcement of its rights."  *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  Accordingly, "[i]t is evident that these operations establish sufficient contacts or ties with the [United States] forum to make it reasonable . . . to justify suit against [AFG] on causes of action arising from dealings entirely distinct from those activities."  *Id.* at 318, 320.  Hence, general jurisdiction lies.[1]

---

[1]   *See Laufer v. Ostrow,* 55 N.Y.2d 305, 310 (1982) (citing *International Shoe Co.,* 326 U.S. at 316) (asserting general jurisdiction over non-resident defendant where "the aggregate of the corporation's activities in the State [are] such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity' and . . . the quality and nature of the corporation's contacts with the State [are] sufficient to make it reasonable and just according to 'traditional notions of fair play and substantial justice' that it be required to defend the action here); *Abkco Industries, Inc. v. Lennon,* 384 N.Y.S.2d 781, 783-84 (1st Dep't 1976) (applying general jurisdiction test to individuals as well as corporations); 2 Weinstein, Korn & Miller, New York Civil Practice ¶ 301.15, at 3-30 (2003) ("there is an abundance of well-reasoned authority that has imposed general jurisdiction in New York on noncorporate defendants") (citing cases).

### E.    Plaintiffs Should Be Allowed To Conduct Jurisdictional Discovery

At minimum, this Court should exercise its broad discretion to permit plaintiffs to conduct jurisdictional discovery.  Especially where, as here, pertinent jurisdictional facts lie only within the control and knowledge of defendants contesting jurisdiction, it would be fundamentally unfair for this Court to deny plaintiffs the opportunity to conduct discovery of facts demonstrating jurisdiction.  *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986) ("Under Rule 12(b) . . . in resolving claims that they lack jurisdiction, courts . . . have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party").

## II.    PLAINTIFFS' FACTUAL ALLEGATIONS ARE SUFFICIENT TO DEFEAT DEFENDANT'S MOTION

### A.    Plaintiffs' Burden at the Pleading Stage Is Minimal

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must be denied unless it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).  It is axiomatic that the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true, and plaintiff must be given the benefit of every reasonable inference that may be drawn from the complaint. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999).  "A plaintiff is not required to prove her case at the pleading stage; indeed, "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency of Greene County,* 239 F.3d 517 (2d Cir. 2001), (citing  2A *Moore's Federal Practice* ¶ 8.13, at 8-68 (2d ed.1989)); *see, e.g., Geisler v. Petrocelli,* 616 F.2d 636, 639-40 (2d

9

Cir.1980)  (pleading of evidence beyond allegations contravenes proper pleading procedure). The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (internal quotation marks omitted).  Fed. R. Civ. P. 8(a)(2) requires only that a complaint contain a "short plain statement of the claim showing that the pleader is entitled to relief ." *Id.*   There is no heightened standard of pleading applicable to this case (as there is, for example, in fraud cases under Fed. R. Civ. P. 9(b)).  *Burnett I,*  95-96.

### B.    Plaintiffs' Complaint States a Claim under the Anti-terrorism Act (the "ATA"), 18 U.S.C. §2333(a)

Defendants assert that the 4AC should be dismissed because plaintiffs have not adequately plead facts which show that their actions were the proximate cause of or a substantial factor in causing plaintiffs' injuries.  Plaintiffs need only allege that defendants provided "material support" to al Qaeda, or "aided and abetted" such organizations, or conspired with such organizations, to commit terrorist attacks against the U.S.  *Boim v. Quranic Literary Institute, et al.,* 291 F.3d 1000 (7th Cir. 2002).

To recover under the ATA plaintiffs need only show that defendants: 1) knowingly provided material support to a recognized terrorist organization with the intent to support that organization's illegal activities; and/or 2) aided and abetted acts of international terrorism; and/or 3) could foresee that their support would contribute to the commission of a terrorist act.  *See Boim* 291 F.3d at 1012-2.

In creating a civil cause of action for United States nationals injured as a result of

10

international terrorism the ATA provides that:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

*Id.*

"International terrorism" is specifically defined in 18 U.S.C. § 2331(1) as activities that

(A)     involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or any State, or that would be a criminal violation if committed within the jurisdiction of the United Sates or of any state;

(B)     appear to be intended
(i) to intimidate or coerce a civilian population;
(ii) to influence the policy of a government by intimidation or coercion; or
(iii) to affect the conduct of a government by assassination or kidnaping; and

(C)     occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

*Id.*

*Boim v. Quranic Literacy Institute* recognized a cause of action under the ATA for aiding and abetting with terrorists. In *Boim*, a seventeen year old American citizen was gunned down in Israel's West Bank territory. The gunmen were members of Hamas, a known terrorist organization. His parents filed a civil action in the United States District Court for the Northern District of Illinois under the ATA against several nonprofit entities that the Boims alleged solicited and laundered funds to provide financial support to Hamas terrorist activities. The nonprofits moved to dismiss for failure to state a claim upon which relief could be granted. The District Court denied the motion and the Seventh Circuit affirmed.

11

Pointing at length to the legislative history of the statute, the Seventh Circuit emphasized

Congress' intent to reach beyond those persons who themselves commit the violent act that

directly causes the injury and impose liability *"at any point along the causal chain of terrorism,"*

*Id.* at 1011 (citations omitted), particularly on those who provide the finances for the

commission of terrorist acts:

> The statute would have little effect if liability were limited to the
> persons who pull the trigger or plant the bomb because such
> persons are unlikely to have assets, much less assets in the United
> States, and would not be deterred by the statute. . . . perhaps most
> importantly, there would not be a trigger to pull or a bomb to blow
> up without the resources to acquire such toils of terrorism and to
> bankroll the persons who actually commit the violence.  Moreover,
> the organizations, businesses and nations that support and
> encourage terrorist acts are likely to have reachable assets that they
> wish to protect. *The only way to imperil the flow of money and
> discourage the financing of terrorist acts is to impose liability on
> those who knowingly and intentionally supply the funds to the
> persons who commit the violent acts.*

*Id.* at 1021 (emphasis added); *see* P.L. 102-572, Federal Courts Administration Act of 1992,

Senate Report 102-342 (July 27, 1992) at 22 (Congress intended to impose "liability at any point

along the causal chain of terrorism").

The *Boim* court also acknowledged that the legislative history of the ATA evidences an

intent by Congress to codify general common law tort principles and to extend civil liability for

acts of international terrorism to the full reaches of traditional tort law. *Id.* at 1010 (citations

omitted).  Comparing the statute to a traditional tort, the court found that the statute contains all

of the elements of a traditional tort: breach of a duty (i.e., committing an act of international

terrorism), injury to the person, property or business of another and causation (injured by reason

of). *Boim* at 1010.

*Boim* ultimately delineated two paths to proving a claim supporting liability:  i) by proving conduct which is "international terrorism" as defined in the criminal counterparts to §2333 - 18U.S.C. §2339A and §2339B; and, ii) by proving the elements of traditional tort aiding and abetting theory.  Plaintiffs have adequately plead facts which support both of these theories of liability.

### 1.   Defendants Have Committed Acts of International Terrorism as Defined by the Statute

*Boim* concluded that because Congress intended to impose criminal liability for funding terrorism, that it also intended to impose civil liability for the "at least as broad a class of violent terrorist acts" as in §§2333 and 2331(1), and that therefore, the criminal provisions of the ATA are a clear indication of Congress' intent to consider financial support of a terrorist organization to be an act of international terrorism under §2333. *Boim* at 1015.   Therefore, conduct which violates §2339A or §2339B is sufficient to meet the definition of international terrorism under §§2333 and 2331(1).  *Id; see Burnett I*, 274 F. Supp.2d at 106.  ("Liability can be established by proving violations of the criminal counterparts of 18 U.S.C. §2333 and §2339A").

Looking to the conduct specifically outlined in these criminal counterparts to §2333, §2339A prohibits the provision of "material support" for an extensive list of specific violent crimes associated with terrorism.  By definition, material support includes "currency or other financial securities, financial services . . ."  18 U.S.C. §2339A.  Under this definition,  "even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability in §2333." *Boim* at 1015.   Section 2339 B then extends criminal liability to those who knowingly provide material support to foreign terrorist organizations:

13

> Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years . . .

*Id.*

Under *Boim,* conduct which could be considered a violation of either section, will be considered an act of international terrorism subject to civil liability under §2333.  This recognizes Congress' unequivocal intent to "interrupt or at least imperil the flow of money" to terrorist organizations by imposing liability for financing terrorist activities, *no matter how small.  Boim* at 1011 (emphasis in original).

The 4AC clearly alleges that defendants, through known terrorist financier Zouaydi, supported al Qaeda.

### 2.        General Tort Law Principles Govern the Application of the ATA

*Boim* held that Congress expressed an intent to expand the reach of the §2333 to the limits of general tort law principles, and to make the civil liability provisions of §2333 at least as extensive as the corresponding criminal provisions under §2339A and B.  *Id* at 1020.  The definition of "international terrorism" under §2331(1)(A) includes activities that

> involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or any State, or that would be a criminal violation if committed within the jurisdiction of the United Sates or of any state[.]

*Id.*  The *Boim* court found that, "[t]his language, embracing activities that "involve" violent acts, taken at face value, should certainly cover aiding and abetting violent acts," and noted that if liability were not extended to aiders and abettors who knowingly and intentionally fund acts of

14

terrorism, Congressional intent to "cut off the flow of money to terrorists at every point along the causal chain" would be frustrated. *Id.* at 1020-21. Liability must therefore extend beyond those who physically detonate bombs or hijack aircraft.

### a. Aiding and Abetting

Plaintiffs adequately plead a cause of action for aiding and abetting under the ATA. Plaintiffs need only plead facts which show that: i) the defendants aided those who financed, organized and perpetrated the 9/11 attacks; ii) the defendants were generally aware of their role as part of an overall illegal or tortious activity at the time that they provided the assistance; and iii) the defendant must knowingly and substantially assist the principal violation. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983); *see also Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 181 (1994) (describing Halberstam as "a comprehensive opinion on the subject"). In *Halberstam,* a wrongful death case, the court held that the defendant Hamilton could be liable for aiding and abetting her co-defendant Welch in the murder of plaintiff's husband during a burglary even though she was not present at the burglary. The court found that Hamilton was liable for aiding and abetting the murder/burglary because she knew that Welch was involved in some type of crime, in which violence and killing was always a foreseeable risk, and assisted him in disposing of large quantities of stolen goods. Essentially, Hamilton provided general assistance to Welch which facilitated his criminal activities, and while she did not provide specific assistance in the crime for which she was held liable, she was found to have aided and abetted Welch in committing it. *Id.*

Applying *Halberstam* to this case, plaintiffs need only show that defendants knew that they were supporting al Qaeda and Bin Laden (whether directly or indirectly makes no

difference), that they provided substantial assistance to organizations that aided and abetted al

Qaeda, and could foresee that such assistance would result in a terrorist attack against U.S.

citizens.  Plaintiffs need not allege or prove that defendants knew that al Qaeda was going to

commit the specific horrific acts of September 11th but only that it knew that they were assisting

terrorists in committing terrorist activities aimed at the United States.  Death and destruction in

the United States was the well publicized aim of al Qaeda and its terrorist network.  By providing

assistance and services to the terrorist network, defendants knew that acts of violence were a

foreseeable consequence of their support.

### 3.    Plaintiffs Have Properly Pled Causation

Plaintiffs need not allege that the financial and other support defendants  provided to al

Qaeda were used by the specific terrorists who committed the attacks of September 11th in those

attacks.  "[S]uch specificity [is] not required at the pleading stage."  *Burnett I* at 107 (citing

*Swierkiewicz*, 534 U.S. at 512-413).  Proximate cause does not require a direct link or even

foreseeability of the precise events.  *Stanford v. Kuwait Airways, Corp.,* 89 F. 3d 117, 127 (2d

Cir. 1996)*.*  It is sufficient that defendants should have been able to foresee that some injury to

some person might result as a consequence of their acts.  *Lamarca v. United States,* 31 F.

Supp.2d 110, 127 (E.D.N.Y. 1998).  In any event, by knowingly providing al Qaeda with

financial support and services, defendants knew that they were was providing support and

services to an organization whose aim was to commit terror attacks.  Therefore, it was

foreseeable that with their assistance, injury to some persons might result.

Furthermore, the Court should also consider Congress' goal of cutting off terrorist

funding when it enacted the Anti-Terrorism Act.  Given the difficulty in tying specific cash

support to the September 11th, 2001 attacks, forcing plaintiffs to plead and prove but for

causation would frustrate this goal.  As Judge Calabresi noted:

> [I]f (a) negligent act was deemed wrongful because that act increased the
> chances that a particular type of accident would occur, and (b) a mishap of
> that very sort did happen, this was enough to support a finding by the trier
> of fact that the negligent behavior caused the harm.  Where such a strong
> causal link exists, it is up to the negligent party to bring in evidence
> denying but for cause and suggesting that in the actual case the wrongful
> conduct had not been a substantial factor.

*Zuchowicz v. United States,* 140 F.3d 381, 390-91(2d Cir. 1998).  Judge Calabresi's reasoning

applies to Prince Abdullah and AFG 's support of al Qaeda, which at the very least increased the

likelihood that terrorists would attack the United States.

Plaintiffs allege that defendants, through known terrorist financier Zouaydi, provided

logistical support, financing and funding to al Qaeda which increased the risk that al Qaeda

would be able to commit terrorist attacks.  The September 11, 2001 terror attacks were thus a

foreseeable result of its support.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Prince Abdullah, Mohammed bin

Abdulazis Al Saud, Mohammed Bin Abdulrahman Al Ariefy and Al Faisaliah Group's motion to

dismiss.

Dated: New York, New York
      October 4, 2004

KREINDLER & KREINDLER LLP
*Plaintiffs Liaison Counsel*


By:   _____/S/_____
      James P. Kreindler (JK7084)
      Marc S. Moller (MM0143)
      Justin T. Green (JG0318)
      Andrew J. Maloney, III (AM8684)
      100 Park Avenue
      New York, NY  10017-5590
      Phone: (212) 687-8181
      Fax:  (212) 972-9432

18