**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| _____ | ) | |
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) | 03 MDL No. 1570 (RCC) |
| _____ | ) | ECF Case |

This document relates to:

C.A. No. 03-CV-9849 (RCC)
THOMAS E. BURNETT, SR., *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
THE *BURNETT* PLAINTIFFS' OPPOSITIONS
TO DEFENDANTS' MOTIONS TO DISMISS AND
PLAINTIFFS' SUR-REPLY ("CORRECTED") BRIEFS AND AFFIDAVIT**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Saudi Arabian Red Crescent Society (D211),
 Hamad Al-Husaini (D209), Salman Al-Oadah (D220),
 Safer Al-Hawali (D221), Saleh Al-Hussayen (D222), and
 Shahir Batterjee (D67)

DATED:  October 7, 2004

**INTRODUCTION**

In their motion to strike, defendants Saudi Arabian Red Crescent Society (D211), Hamad Al-Husaini (D209), Salman Al-Oadah (D220), Safer Al-Hawali (D221), Saleh Al-Hussayen (D222), and Shahir A. Batterjee (D67), asked this Court to strike the *Burnett* plaintiffs' oppositions to their motions to dismiss, and their *post hoc* filing of "corrected" opposition briefs, filed after the defendants filed their reply briefs. *See* Defendants' Motion ("Def. Mot.") (Sept. 9, 2004) (Docket No. 425). Plaintiffs' original oppositions contained legal arguments based on an altered Court document, *i.e.*, "Exhibit A," which purported to list the defendants whom Judge Robertson had authorized to be served by publication, but actually included twenty additional names not approved by the court. *Id.* Plaintiffs' so-called "corrected" oppositions and affidavit were impermissible sur-reply briefs containing arguments not made in plaintiffs' original oppositions, and were filed only after plaintiffs were placed on notice of their conduct. *Id.* at 5.

The *Burnett* plaintiffs' shifting explanations for how they came to file an altered court document with this Court, and their misrepresentation of Judge Robertson's March 25, 2003 Order, *see* Plaintiffs' Opposition ("Pl. Opp.") (Oct. 1, 2004), clearly justify this Court's imposition of the most severe sanction of striking the oppositions, and "corrected" pleadings. Allowing plaintiffs to file sur-replies would reward them for filing false pleadings by permitting them to make new arguments and essentially "take two bites at the apple," after they were discovered to have filed a false pleading with this Court. Defendants are prejudiced further by having to file new "reply" briefs that answer new arguments in plaintiffs' sur-reply briefs.

**I.    This Court has the Authority to Rule on Defendants' Motion to Strike.**

As a preliminary matter, this Court has the inherent authority to rule on defendants' motion to strike, contrary to plaintiffs' argument that a motion to strike is inapplicable in the

context of dispositive motions.  *See* Pl. Opp., at 1-2.  Indeed, the *Burnett* plaintiffs themselves filed a motion to strike with respect to a dispositive motion when this case was before Judge Robertson.  *See* Plaintiffs' Motion to Strike (May 2, 2003) (D.D.C. Docket No. 140).  Thus, the *Burnett* plaintiffs are estopped from arguing the contrary to this Court.

> **II.     The Plaintiffs Continue to Misrepresent the Order that They Sought and Obtained from Judge Robertson for Service of Process by Publication.**
>
> **A.     The Scope of Judge Robertson's March 25, 2003 Order.**

The *Burnett* Plaintiffs continue to misrepresent the Order that they sought and obtained from Judge Robertson governing service of process by publication.  This issue is fundamental, since plaintiffs cannot claim that they had permission to serve defendants by publication unless they distort Judge Robertson's Order beyond recognition.  In their motion of March 24, 2003, plaintiffs sought two distinct forms of relief:

(1)     "the Court extend the service of process deadline to June 30, 2003;" and

(2)     to "be permitted to serve the Defendants listed on Exhibit A by publication."

*See* "Plaintiffs' Motion for Extension of Time for Service of Process and for Leave to Serve Certain Listed Defendants by Publication Pursuant to Federal Rule 4(f)," at 2 (D.D.C. Docket No. 95) (Mar. 24, 2003) (Exhibit 1 to Def. Mot.).  Plaintiffs reiterated these terms in their Memorandum.  *Id.*, Mem. at 1, 6.  The caption of their motion was unambiguous:  "Certain Listed Defendants."  *Id.*  Judge Robertson granted the motion, without modifying its specific terms.  *See* Minute Entry (*Burnett* D.D.C.) (Mar. 25, 2003) (Exhibit 2 to Def. Mot.).

> **B.     The *Burnett* Plaintiffs Never Sought Leave to Modify Their Exhibit A or Judge Robertson's March 25, 2003 Order.**

The *Burnett* plaintiffs never sought leave from Judge Robertson to expand or modify the

scope of his Order with respect to service by publication, or the contents of their Exhibit A.  Nor did they notify Judge Robertson or this Court of their unilateral intent to do so.  Plaintiffs know that in order to seek relief that is broader or different from that authorized by the court, it is necessary to file a motion or letter application.  Indeed, plaintiffs' March 24, 2003 motion was itself a motion to modify the relief that Judge Robertson had previously granted them with respect to service of process, *i.e.*, a further extension of time to complete service.

The *Burnett* plaintiffs filed three other motions with Judge Robertson, all seeking leave to modify prior orders with respect to the deadline for completing service of process.[1]  Critically, the fourth motion sought to modify the relief granted by Judge Robertson in his March 25, 2003 Order with respect to the deadline for service of process.  Thus, plaintiffs know that they need to seek court permission to alter an order.  Yet, they never sought leave to enlarge the scope of the March 25, 2003 Order, with respect to the defendants who were to be served by publication.[2]  Given the plaintiffs' repeated requests to modify prior court orders, *including* Judge Robertson's March 25, 2003 Order, their failure to do so with respect to that same Order governing service by publication indicates that plaintiffs knowingly attempted to exceed the scope of Judge Robertson's order with respect to the defendants who have filed the instant motions to dismiss.

Plaintiffs initially averred that the "import of Judge Robertson's order was to permit us to

---

[1] *See* Plaintiffs' Motion for Enlargement of Time (Nov. 6, 2002) (*Burnett* D.D.C. Docket No. 22); Plaintiffs' [Second] Motion for Extension of Time to Complete Service of Process (Dec. 12, 2002) (*Burnett* D.D.C. Docket No. 38); Plaintiffs' [Fourth] Motion for Extension of Time to Complete Service of Process (June 30, 2003) (*Burnett* D.D.C. Docket No. 189).

[2] Even in this Court, the *Burnett* plaintiffs continue to be aware of their obligations to file a motion or letter application in order to modify or enlarge the scope of this Court's orders.  On September 28, 2004, the plaintiffs sought leave to modify this Court's September 15 order governing service by publication, by adding several recently filed cases, and the defendants thereto, to the listing of cases and defendants to be served by publication.  *See* R. Motley letter to Hon. R. Casey (Sept. 28, 2004).

serve by publication both 'specifically listed defendants located in Saudi Arabia, Sudan and United Arab Emirates and defendants subsequently added from that geographical area.'" *See* A. Bierstein to L. Bernabei (Aug. 24, 2004) (Exhibit 5 to Def. Mot.). Plaintiffs then argued that "there was no reason to make a separate application to publish with respect to those individuals [new defendants], given the basis of the court's original ruling." *See* Pl. Opp., at 12. Plaintiffs are trying to use this *post hoc* argument to justify their unilateral addition of defendants' names to Exhibit A. Plaintiffs do not explain how the "import" or "basis" of Judge Robertson's order allowed them to modify the scope of the March 25, 2003 Order with respect to service of publication, but *not* with respect to completing service of process. Plaintiffs cannot have it both ways – by representing to Judge Robertson, that it was necessary to move to enlarge the deadline for service of process – while now claiming it is unnecessary to file comparable motions with respect to the same order governing service by publication.

    **C.**    **The *Burnett* Plaintiffs Were Placed on Notice of the Alteration to Their Exhibit A, but Failed to Investigate Diligently.**

The *Burnett* plaintiffs' explanation for making the legal arguments that certain defendants were included on "Exhibit A" lack any record support. Critically, the defendants' initial motions to dismiss, filed on April 8 and 9, 2004, emphasized that their names were *not* on Exhibit A filed with Judge Robertson on March 24, 2003. Defendants attached, as an exhibit to their motions to dismiss, the plaintiffs' original court filing, complete with a copy of the Electronic Case Filing (ECF) notification that the U.S. District Court for the District of Columbia issued on that date. *See* Def. Mot., Ex. 1. Plaintiffs, as a threshold matter, had obligations under Rule 11, Fed. R. Civ. P., to examine Exhibit A, as originally filed with Judge

Robertson (which the plaintiffs were required to maintain intact in their own pleading files),[3] and that filed by the defendants with this Court. Even if plaintiffs still believed that they had not altered their own court filing, they were under an obligation to obtain the original filing from the U.S. District Court for the District of Columbia, by using that court's PACER system, to be certain about what pleadings they had previously filed in the *Burnett* case.

Plaintiffs also should have taken the time to inquire of defendants' counsel as to the obvious discrepancy between their version of "Exhibit A" and the version that was originally filed with Judge Robertson, and subsequently filed with this Court by the defendants in their motions to dismiss, in order to clarify their own understanding of what had caused their mistakes. Had plaintiffs done any of this *before* drafting their opposition briefs in June 2004, they would have discovered that their version of "Exhibit A" was incorrect, and the plaintiffs would not be in a sanctionable position that is entirely of their own making.

Instead, plaintiffs' counsel failed to take any of these investigatory steps. These steps were clearly warranted, given that plaintiffs' counsel were explicitly placed on notice through the defendants' motions to dismiss that Exhibit A did not contain defendants' names and could not even have contained defendants' names, because these five defendants were not added to the

---

[3] Under the applicable rules of the U.S. District Court for the District of Columbia, all parties who submit electronic filings are required to retain the original version:

> The electronic filing of a document that contains a sworn declaration, verification, certificate, statement, oath or affidavit certifies that the original signed document is in the possession of the attorney or pro se party responsible for the filing and that it is available for review upon request by a party or by the Court.

*See* Local Civil Rule 5.4(b)(5) (D.D.C.) (as amended on April 14, 2003). This Court similarly requires retention of the originals. *See* Procedures for Electronic Case Filing, No. 7, "Retention Requirements" (S.D.N.Y.) (Mar. 6, 2003). The *Burnett* plaintiffs, through their alteration of Exhibit A, failed to do so.

5

*Burnett* case until after March 24, 2003. *See* Def. Mot., at 1-2.

Plaintiffs' counsel were required to undertake an "inquiry reasonable under the circumstances" *see* Rule 11(b), Fed. R. Civ. P., to investigate the obvious discrepancy between their altered version of Exhibit A, and the original version of Exhibit A. Instead, plaintiffs' counsel heedlessly pursued arguments that were flatly contradicted by the record evidence set forth in defendants' original motions to dismiss. This deliberate conduct, taken directly in the face of unimpeachable record evidence to the contrary, does not satisfy the obligations of plaintiffs' counsel to make only those representations to the Court that they know to "have evidentiary support" or "are warranted on the evidence." *See* Rule 11(b)(3), (4), Fed. R. Civ. P.[4]

### III. The *Burnett* Plaintiffs' Shifting Explanations for their Filing of an Altered Court Document Lack Credibility.

Plaintiffs' shifting explanations for the process that allegedly led to the filing of an altered court document, Exhibit A to their March 24, 2003 motion for service by publication, demonstrate a further lack of veracity on plaintiffs' counsel's part.[5] As a threshold issue, plaintiffs rely almost entirely on an affidavit by Andrea Bierstein, an attorney with the Hanly Conroy firm in New York. However, this affidavit purports to set forth acts taken by several

---

[4] *See also* Business Guides, Inc. v. Chromatic Communications Enter., 498 U.S. 533, 543 (1991) (each filing "certifies to the court that the signer . . . has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive"); Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994) (purpose of Rule 11 is "the deterrence of baseless filings and the curbing of abuses"); Murray v. Dominick Corp. of Canada, Ltd., 117 F.R.D. 512, 516 (S.D.N.Y. 1987) (Rule 11 allows for dismissal where plaintiffs' "submissions on his behalf were not well grounded in fact in violation of Rule 11.").

[5] Defendants will not reiterate the procedural history of this matter, which is set forth in their motion to strike. However, there are inaccuracies in the plaintiffs' recitation of the procedural history. Plaintiffs claim that they first learned of the altered Exhibit A through defendants' draft Rule 11 motion. *See* Bierstein Aff., ¶¶ 2, 24. In fact, this was brought to plaintiffs' attention through the defendants' reply briefs, all but one of which were filed on July 23, 2004, *before* the draft Rule 11 motion was served.

attorneys at the Motley Rice firm in South Carolina, and evidently by yet other attorney(s) at another law firm.[6]  *See* Bierstein Aff., ¶¶ 8, 14-15, 17.  Yet, plaintiffs submit no other affidavits, besides an one-page affidavit by Justin Kaplan which attests to nothing more than the fact that sometime in 2004, he retrieved the altered Exhibit A from somewhere on his firm's computer system, and sent it to Ms. Moll, and that the document was altered in May 2003.  *See* Kaplan Dec., ¶¶ 1-2.  Under Second Circuit precedent, in the context of Rule 12 motions, it is "improper . . . to have considered the conclusory and hearsay statements contained in the affidavits."  *Kamen v. AT&T Co.*, 791 F.2d 1006 (2d Cir. 1986).

Most of these acts described in Ms. Bierstein's affidavit are attributed to Ingrid Moll, who is identified as an associate at the Motley Rice firm.[7]  *See* Bierstein Aff., at ¶¶ 13-19.  Tellingly, the *Burnett* plaintiffs did not submit an affidavit from Ms. Moll, setting forth her first-hand knowledge of what Ms. Bierstein now alleges that Ms. Moll said and did.  Instead, plaintiffs rely almost entirely on Ms. Bierstein's own affidavit, which describes, at length, events and acts of which Ms. Bierstein does not have first-hand knowledge, and are  replete with inadmissible hearsay.  Indeed, she admits as much.  *See* Bierstein Aff., ¶ 8 ("I had no involvement . . . and had no knowledge").  The affidavit also contains references to various "documents" and "e-mails," but does not attach any of them as exhibits.  *Id.* at ¶¶ 8, 13, 14.  Under the Second Circuit's *Kamen* precedent, this Court may not consider the hearsay in Ms. Bierstein's affidavit.

---

[6] The proofs of service of process were prepared in 2003 by lawyers from a third law firm, Riley DeBrota in Indianapolis, who evidently were responsible for implementing the service of process.

[7] That firm's website states that Ms. Moll is still employed as an associate.  *See* Motley Rice, "Ingrid L. Moll," <http://www.motleyrice.com/attorneys/?lawyerid=215> (last viewed Oct. 7, 2004).

7

Moreover, some of the events described in Ms. Bierstein's affidavit are not even attributed to any particular person, particularly her representations regarding the alteration of Exhibit A in order to submit it to translators. *See* Bierstein Aff., ¶ 8. Plaintiffs do not identify, let alone submit any affidavit by, the persons who: (1) decided, in or around May 2003, that Exhibit A could be altered without seeking modification of Judge Robertson's order, at the same time that plaintiffs' counsel sought an extension with respect to the deadline for service of process; (2) altered Exhibit A by adding twenty more names; and (3) retained the translation firm and submitted the altered Exhibit A to that firm.

Even with respect to the core facts, the plaintiffs have provided shifting explanations for why Exhibit A was altered. Initially, plaintiffs claimed that it was "updated at some point in connection with the transmittal to the various publications of the relevant names." *See* A. Bierstein to L. Bernabei (Aug. 24, 2004) (Exhibit 5 to Def. Mot.). After defendants pointed out that this was implausible, *i.e.*, that there was no need to submit a document captioned "Exhibit A" to the publications, *see* Def. Mot. at 4, plaintiffs abandoned that argument, and aver now that Exhibit A was altered in connection with submitting the names to the "translation firm" to render the names into Arabic. *See* Bierstein Aff., at ¶ 8. However, plaintiffs have offered no competent evidence of this, other than Ms. Bierstein's self-admitted hearsay.

Nor does Mr. Kaplan's affidavit justify plaintiffs' conduct. Mr. Kaplan's affidavit does not say who altered Exhibit A. Nor does it confirm Ms. Bierstein's affidavit, which claims that he provided Ms. Moll with all of the "March, 2003 motion papers, including exhibits," and that she used those "documents" from plaintiffs' filing on March 24, 2003.

Mr. Kaplan's affidavit, and Ms. Bierstein's description of what Mr. Kaplan actually did,

8

generate more questions than they resolve:

(1) The ECF Notification issued by the U.S. District Court for the District of Columbia (Exhibit 1 to Def. Mot.) shows that Exhibit A was uploaded from the following subdirectory:

P:\FACT1\All\911 Litigation\**Saudi Arabia**\ ...

However, Mr. Kaplan's affidavit shows that the "Exhibit A" that he gave to Ms. Moll was located in a different subdirectory:

P:\FACT1\All\911 Litigation\**Burnett v Al Baraka**\ ...

(2) The *Burnett* plaintiffs filed their motion for service by publication at 2:11 p.m. on March 24, 2003. *See* Motion, ECF Notification (Exhibit 1 to Def. Mot.).

However, the Exhibit to Mr. Kaplan's affidavit shows that the "Exhibit A" that he ostensibly gave to Ms. Moll was not even created until 3:02 p.m. on March 24, 2003, nearly an hour later. *See* Kaplan Aff., Ex. 1.

(3) When plaintiffs filed their Motion for service by publication with Judge Robertson, the electronic filing consisted of four separate documents: Motion, Exhibit A, Exhibit B, and Memorandum. *See* Motion, ECF Notification (Mar. 24, 2003) (Exhibit 1 to Def. Mot.).

However, when plaintiffs filed their version of Exhibit A, as part of Exhibit 4 to their Opposition to Shahir Batterjee's motion to dismiss, they filed the entire motion as a single PDF file. *See* ECF Notification, Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss of Defendant Shahir A. Batterjee (June 30, 2004) (Docket No. 276) (attached hereto as Exhibit 1). Therefore, plaintiffs knew, or should have known, that they did not file the original pleading with this Court, since they had to modify their March 24, 2003 filing in order to combine the four computer files into a single file.

In sum, plaintiffs' current explanations of how they came to file a false Exhibit A with this Court are unsupported by the very affidavits they now submit. They have failed to submit competent affidavits from persons with first-hand knowledge of how the false affidavit came to be filed.

### IV.     The Plaintiffs' "Corrected" Briefs are Impermissible Sur-Reply Briefs.

Plaintiffs' arguments that they have not filed "sur-reply" briefs are contradicted by the

9

actual contents of their so-called corrected briefs.  Each of the four "corrected" briefs makes a *different* argument about service of process than was made in the plaintiffs' original opposition briefs.  Further, the "corrected" brief for Mr. Al-Hussayen makes an entirely new argument to respond to his sovereign immunity defense under the Foreign Sovereign Immunities Act of 1976 ("FSIA").  This argument was not made in plaintiffs' original opposition, and was raised only after Mr. Al-Hussayen, in his reply brief, emphasized that plaintiffs had failed to respond to the threshold and dispositive argument in his motion to dismiss.[8]  Since Mr. Al-Hussayen's FSIA defense was his first argument, and occupied nearly half of his motion to dismiss, *i.e.,* pages 1 to 8, plaintiffs cannot now claim that their failure to respond to that argument was inadvertent.  Plaintiffs' "corrected" briefs are thus impermissible sur-reply briefs, which the plaintiffs *never* sought leave to file.  Further, defendants should not be put to the time and expense of filing *new* reply briefs because of plaintiffs' counsel's sanctionable conduct, *i.e.*, plaintiffs should not benefit because defendants have exposed their use of an altered court document.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion to Strike (Docket No. 425), and the Defendants' motions to dismiss, and Defendants' reply briefs thereto, the Defendants respectfully request that this Court strike the *Burnett* plaintiffs' oppositions to their motions to dismiss, as well as the "corrected" affidavit and oppositions thereto, and treat the motions to dismiss of the Saudi Arabian Red Crescent Society (D211), Hamad Al-Husaini (D209), Salman Al-Oadah (D220), Safer Al-Hawali (D221), and Saleh Al-Hussayen (D222) as conceded.

---

[8] It is settled law that a defense in a dispositive motion is conceded when the plaintiff fails to respond to that defense.  Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002).

Respectfully submitted,

/s/ Lynne Bernabei

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Saudi Arabian Red Crescent Society (D211),
 Hamad Al-Husaini (D209), Salman Al-Oadah (D220),
 Safer Al-Hawali (D221), Saleh Al-Hussayen (D222), and
 Shahir Batterjee (D67)

DATED:  October 7, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2004, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat