UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 |
|---|
| This document relates to: |
| FEDERAL INSURANCE CO., et al, Plaintiffs, v. AL QAIDA, et al., Defendants. |

MDL No. 1570 (RCC)

NO. 03 CV 6978 (RCC)

**RABITA TRUST'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Like the Complaint, Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Filed by Defendant Rabita Trust inappropriately focuses on the general and ignores the requirements of specificity and causation embodied in the strict standards of specific personal jurisdiction and conspiracy-based jurisdiction. The first quarter of Plaintiffs' brief is the type of "lump the defendants together" discussion on conspiracy that could be cut and pasted into Plaintiffs' opposition to most, if not all, of defendants' motions to dismiss.

Even when Plaintiffs do recite seemingly specific allegations against Rabita Trust, close review reveals that such allegations are actually generalities or attempts to convert allegations without substantive effect into substantive allegations. None of Plaintiffs' allegations adequately plead that Rabita Trust was a primary participant in the 9/11 attacks, that a close causal connection existed between Rabita Trust's actions and the 9/11 attacks and that Rabita Trust proximately, directly and foreseeably caused the 9/11 attacks. If the allegations of Plaintiffs' Complaint cannot meet these requirements, then the Complaint cannot stand and must be dismissed.

In the end, Plaintiffs concede that there is no foundation for general jurisdiction over Rabita Trust, and the Complaint allegations fail to give rise to specific personal jurisdiction or conspiracy-based personal jurisdiction over Rabita Trust.

I.  **PLAINTIFFS FAILED TO PLEAD THAT RABITA TRUST CONSPIRED WITH ANY CO-DEFENDANTS WHO DIRECTED TORTIOUS ACTIONS TOWARDS THE UNITED STATES**

Plaintiffs contend that conspiracy-based and aiding and abetting-based personal jurisdiction exists over Rabita Trust under New York's long arm statute, N.Y.C.P.L.R. §302(a)(2). [1] In support of this contention, Plaintiffs state that for reasons stated elsewhere in their brief Rabita Trust's conduct "constitutes both forms of concerted-action liability under New York law as set forth in the allegations of the Complaint and, as such, connects it with the subject transaction, charges Rabita Trust with the acts and declarations of its co-conspirators, and exposes it to joint and several liability." See Pls.' Opp'n Br. at 7-8. This is exactly the kind of broad legal conclusion and "bland assertion of conspiracy" that is insufficient to establish personal jurisdiction in the Second Circuit. Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-95 (2d Cir. 1975). Plaintiffs have failed to allege how Rabita Trust is connected to the subject transaction, how it can be charged with the acts and declarations of alleged co-conspirators and how it can be exposed to joint and several liability.

The weakness of Plaintiffs' conspiracy-based jurisdiction argument is exposed in Plaintiffs' failure to argue how specific allegations within the Complaint meet the standards of conspiracy-based personal jurisdiction. Nowhere in Plaintiffs Opposition Brief do they argue how the Complaint allegations establish a prima facie case of conspiracy. Plaintiffs failed to allege: "(1) an agreement to enter into a conspiracy, (2) the non-domiciliary's participation in the conspiracy and acts in furtherance thereof, and

---

[1] It is questionable whether, under Second Circuit law, such a creature exists as aiding and abetting-based personal jurisdiction. Plaintiffs certainly cite no law to that effect. The jurisdictional cases cited by Plaintiffs address only conspiracy-based jurisdiction. See Simon v. Philip Morris, Inc., 86 F. Supp.2d 95

3

(3) a connection between the non-domiciliary and thee allegedly tortious acts committed in New York." See Andre Emmerich Gallery, Inc. v. Segre, No. 96-Civ-889, 1997 WL 672009, at *4-5 (S.D.N.Y. Oct. 29,1997); Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc., 10 F. Supp. 2d 334 (S.D.N.Y. 1998).  Plaintiffs also omitted any allegation of Rabita Trust's membership in a 9/11 conspiracy:

> (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in [the forum], (2) that the [forum] co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in [the forum] acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.

E-Z Bowz, L.L.C. v. Professional Prod. Research  Co, Inc., No. 00 CUV, 8670, 2003 WL 22064259 at *12 (S.D.N.Y. Sept. 5, 2003) (citation omitted).

Plaintiffs continue to rely on a "guilt by association" theory, which lacks a solid foundation in law to support the argument that Rabita Trust was a member of and participated in a "9/11 Conspiracy."  See FAC at ¶ 213 (alleging that Rabita Trust is associated with a number of entities and individuals operating within Al Qaeda's infrastructure).  Allegations of connections with "bad guys," without more, provides no support for the contention that Rabita Trust was part of a 9/11 Conspiracy.  Plaintiffs have failed to plead allegations sufficient to meet the standards of and establish conspiracy-based personal jurisdiction over Rabita Trust.

II. **PLAINTIFFS FAILED TO PLEAD THAT RABITA TRUST ENGAGED IN INTENTIONAL TORTIOUS CONDUCT DIRECTED AT THE UNITED STATES**

Much like Plaintiffs' conspiracy-based jurisdiction argument, Plaintiffs allegations of specific personal jurisdiction over Rabita Trust suffer from a similarly fatal

---

(E.D.N.Y. 2000); Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp.2d 593 (S.D.N.Y. 1998); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991).

flaw: generality.  In In re Magnetic Audiotape Antitrust Litig., 334 F. 3d 204, 208 (2d. Cir. 2003), the Second Circuit held that specific personal jurisdiction exists only where "defendant is a *primary participant* in intentional wrongdoing – albeit extraterritorially – *expressly directed* at the forum" (emphasis added).  Moreover, federal courts require Plaintiffs to plead that Rabita Trust's conduct was "intentionally targeted at and focused on" the forum, ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997), and that Rabita Trust was "personally involved in the specific conduct that gave rise to the plaintiff's claim."  Time, Inc. v. Simpson, No. 02-Civ-4917, 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003).

The First Amended Complaint falls far short of the strict standards for specific personal jurisdiction outlined above.  In support of establishing specific personal jurisdiction, Plaintiffs appear to rely most heavily on the following allegation:  "The conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties, as discussed herein."  FAC at ¶ 73.  See also Pls.' Opp'n Br. at 9.  Far from establishing specific personal jurisdiction, this allegation fails to explain how Rabita Trust was a primary participant in the 9/11 attacks or how it expressly directed any of its activities towards causing tortious harm in the United States.  This general and conclusory allegation is exactly the type of catch-all allegation applicable to all defendants that is insufficient to support a claim of personal jurisdiction over individual defendants, such as Rabita Trust.  See Papasan v. Allain, 478 U.S. 265, 286 (1986) (holding that the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation"); Second Amend. Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001).

Not only does Plaintiffs' argument for specific personal jurisdiction lack support from the Complaint allegations, but it also lacks legal support.  Plaintiffs' reliance on Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325, 329-30 (E.D.N.Y. 1998) and Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp.2d 54 (D.D.C. 2003), is misplaced and those cases are distinguishable on numerous grounds from the case against Rabita Trust.  Rein applied the Foreign Sovereign Immunities Act's ("FSIA") terrorism exception to a foreign state, Libya.  995 F. Supp at 328-29.  The Rein Court limited its discussion to whether the terrorism exception to FSIA can be constitutionally applied to governments and government officials.  Id.  By contrast, FSIA is not at issue in the case against Rabita Trust.[2]

Pugh similarly involved the application of FSIA, which, again, is not at issue with regard to Rabita Trust.  Moreover, even though Pugh involved the exercise of specific personal jurisdiction over individuals not acting in their official capacities, the Pugh Court reasoned that jurisdiction existed because the individual defendants conspired to sabotage the aircraft in question and specifically targeted foreign nationals at the risk of killing Americans.  290 F. Supp.2d at 59-60.  Unlike Pugh, Plaintiffs herein have failed to allege such specificity and have failed to even plead a prima facie case of conspiracy for purposes of establishing conspiracy-based jurisdiction.  Accordingly, Pugh cannot govern the exercise of specific personal jurisdiction over Rabita Trust.

---

[2] Though Plaintiffs contend that Rabita Trust is an agent, instrument or organ of Saudi Arabia, Plaintiffs do not allege that jurisdiction exists over Rabita Trust under an exception to FSIA.  See FAC at ¶¶ 68, 208.  Nevertheless, to the extent that the Court finds Saudi Arabia to be immune from this lawsuit, Rabita Trust

Rabita Trust has argued that specific personal jurisdiction does not exist over it because the Complaint allegations against it are too generalized and fail to specifically connect Rabita Trust's activities with tortious activities directed at the United States. Neither Rein, nor Pugh appear to have addressed such an argument, and are, therefore, inapplicable to the case herein.

### III.  PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN RABITA TRUST'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Not only do Plaintiffs fail to avoid conclusory and generalized allegations, but they do not even attempt to address Rabita Trust's argument that proximate causation is a linchpin for specific personal jurisdiction. Causation is so essential to establishing specific personal jurisdiction that New York federal courts have held that the standard for showing proximate causation in the personal jurisdiction context is higher than the standard for proximate causation in the tort context. See Federal Deposit Ins. Corp. v. Milken, 781 F. Supp. 226, 233 (S.D.N.Y. 1991) (holding that causation is an element of the "effects test"); Herbstein v. Bruetman, 768 F. Supp. 79, 81 (S.D.N.Y. 1991) (holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context). Federal courts have also held that the standard for causation and foreseeability in the context of specific personal jurisdiction is even more stringent when determining personal jurisdiction over international defendants, such as Rabita Trust. See Huang v. Sentinel Gov't Sec., 657 F. Supp. 485, 489 (S.D.N.Y. 1987).

Nowhere in Plaintiffs' Opposition Brief, do they devote any time to this argument, beyond assuming that they have adequately pled the necessary proximate

---

adopts the Plaintiffs' allegations that Rabita Trust is an organ of the Saudi government and seeks dismissal on such grounds.

7

causal connection. This is simply not enough. In the related case of <u>Burnett v. Al Baraka Inv. and Dev. Corp.</u>, 274 F. Supp.2d 86, 105 (D.D.C. 2003), Judge Robertson discussed the importance of a temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism' … in the year 2001 … a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the Court's reasoning equally applies in the personal jurisdiction context.

Plaintiffs never address Judge Robertson's decision, never discuss how their allegations against Rabita Trust are temporally significant in terms of proximate causation and nowhere do Plaintiffs allege anything along the lines that Rabita Trust provided support to al Qaeda in the year 2001. Given the heightened standards of foreseeability and proximate causation in establishing specific personal jurisdiction in an international context, it would be a miscarriage of justice to force Rabita Trust to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation.

### IV. PLAINTIFFS' MODIFIED DUE PROCESS STANDARD FOR MASS TORTS DOES NOT APPLY TO RABITA TRUST

Attempting to lower the standards for personal jurisdiction, Plaintiffs contend that a modified due process standard for mass torts should apply to Rabita Trust. However, the contexts in which this standard has arisen in the Second Circuit are significantly different from the facts and circumstances involving the case against Rabita

8

Trust. First, substantial doubt exists as to whether In re DES Cases, 79 F. Supp. 552 (E.D.N.Y. 1992) and Simon v. Philip Morris, Inc., 86 F. Supp.2d 95 (E.D.N.Y. 2000), the cases cited by Plaintiffs, have disposed with any minimum contacts analysis in tort cases such as the one at hand. Simon continued to apply the traditional minimum contacts analysis, despite its criticism to the contrary. 86 F. Supp.2d at 132-37. Moreover, in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 476 (1985) the Supreme Court expressly held that a finding of minimum contacts is a requisite predicate to any application of a modified due process reasonableness standard, and the Supreme Court has yet to rule otherwise. For the reasons outlined above, Plaintiffs have failed to establish minimum contacts through either specific personal jurisdiction or conspiracy-based jurisdiction with respect to Rabita Trust, and, therefore, never reach the second step of reasonableness.

Even if the Court finds that a modified due process standard has replaced the minimum contacts analysis endorsed by the Supreme Court for mass torts, this is not such a mass tort case. Plaintiffs seek support for application of a modified due process standard from In re DES Cases, in which the New York Federal Court expressly defined "mass torts" to exclude "air crash and other disasters," such as the crashes/disasters at issue in the case herein. 79 F. Supp. at 561. In re DES Cases and Simon are also distinguishable because both involved manufacturers of a harmful product that was injected into interstate commerce across the United States and from which the respective defendants financially benefited. Cases such as those present overarching concerns of long term exposure to the tort causing product, indeterminate numbers of plaintiffs, myriad types of harms and difficulties in proving causation. See In re DES Cases, 789 F.

Supp. 562.  As <u>In re DES Cases</u> implied, air crashes do not involve such issues that stymie traditional minimum contacts analysis.

It shocks the conscience to think that a benevolent, charitable organization, such as Rabita Trust, which is accused of targeting the United States for the worst attack on American soil in the history of the United States should be subject to what appears to be the lowest standard of due process possible.  On the contrary, as Judge Robertson noted in <u>Burnett v. Al Baraka Inv. and Dev. Corp.</u>, 274 F. Supp.2d 86, 103-04 (D.D.C. 2003), the extreme nature of the charges at issue require, if anything, more searching scrutiny, not less.

## **CONCLUSION**

For the foregoing reasons and those outlined in Rabita Trust's Motion to Dismiss, the Court should dismiss the Complaint against Rabita Trust.

          Respectfully submitted,

          _____/s/_____
          Martin F. McMahon, Esq., M.M., 4389
          Christopher R. Smith, Esq., C.S., 5455
          Martin McMahon & Associates
          1150 Connecticut Ave., N.W.
          Ste. 900
          Washington, D.C.  20036
          (202) 862-4343

Dated:  October 12, 2004     *Attorneys for Defendant Wael Jelaidan*