**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 1570 (RCC)** |
| This document relates to: | |
| FEDERAL INSURANCE CO., et al, <br>                    Plaintiffs, <br>                        v. <br> AL QAIDA, et al., <br>                    Defendants. | NO. 03 CV 6978 (RCC) |

**REPLY MEMORANDUM OF DEFENDANT'S SALEH A. KAMEL
AND AL BARAKA INVESTMENT & DEVELOPMENT
CORP., IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

*May it Please the Court:*

The Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss confirms that the Motion to Dismiss of Saleh Kamel and Al Baraka Investment & Development Corp. (ABIDC) must be granted. The Plaintiff's brief, which rests entirely on an argumentative legal conclusion and not the facts actually alleged in the Complaint, comes down to these arguments: 1) Saleh Kamel, through his for profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, has aided and abetted, conspired with, and long provided material support and resources to al Qaida and/or affiliated foreign terrorist organizations, associations or persons. 2) ABIDC has long known that the accounts it maintained for many ostensible charities were being used to solicit and transfer funds to terrorist organizations, including al Qaida.

Therefore, Plaintiffs allege that ABIDC has aided and abetted, conspired with, and provided material support and resources to al Qaida and/or affiliated foreign terrorist organizations, associations or persons. As demonstrated herein, the facts actually alleged in the Complaint not only fail to support these arguments, they contradict it as well.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papsan v. Allain,* 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2nd Cir.), *cert. denied,* 513 U.S. 1079 (1994)("[T]he well pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not.")[1] The Plaintiffs' brief reveals an inadequate legal claim based on unwarranted deductions.

---

[1] *Hirssch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1088 (2nd Cir. 1995)(conclusory allegations of the legal status of defendant's acts need not be accepted as true for the purpose of ruling on a motion to dismiss); *Dwares v. City of New York,* 985 F.2d 94, 100 (2nd Cir. 1993)(conspiracy claims should contain more than conclusory, vague or general allegations, and should provide some detail of time and place and the alleged

1

Defendants ask the Court to look skeptically at the "facts" described by the Plaintiffs in their brief and to look instead to the "facts" actually alleged in the Complaint.

In *Burnett v. Al Baraka Investment & Development Corp.,* 274 F.Supp.2d 86, 103 (D.D.C. 2003), Judge Robertson correctly cautioned that "given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations to ensure that…no inferences are accepted that are unsupported by the facts set out in the [Complaint]." The facts alleged in the Complaint and relied upon by the Plaintiffs' for their legal claim of supporting terrorism simply cannot pass this scrutiny.

## I. PRINCIPLES OF INTERNATIONAL LAW LIMIT THE COURT'S JURISDICTION OVER THE ALLEGATIONS MADE WITH RESPECT TO SALEH KAMEL AND ABIDC.

In *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993), the Supreme Court, in Part III of Justice Souter's opinion took up the question of whether "certain claims against the London reinsurers should have been dismissed as improper applications of the Sherman Act to foreign conduct." 509 U.S. at 794-95. Instead of rejecting the application of the Restatement (Third) of Foreign Relations § 403, the entire Supreme Court in fact applied it. A five member majority of the Court concluded that their analysis of the factors articulated in Restatement (Third) §403(2) "would not counsel against exercising jurisdiction in the circumstances alleged here." *Id.* at 798. The majority agreed with the Ninth Circuit that the Complaint alleged an effect on United States commerce, effectively satisfying the requirement of Section 403(2)(a), *id.*, and disagreed with the Petitioners, holding that there was no conflict between the Sherman Act and British law, the factor identified in Restatement (Third) §403(2)(h). 509 U.S. at

---

effect of the conspiracy); *Galeri Gmurzynka v. Hutton*, 257 F.Supp.2d 621, 631 (S.D.N.Y. 2003)(same), aff'd 355 F.2d 206 (2nd Cir. 2004).

798-99. Given its holding on these two factors, the majority declined to consider the "other considerations [under Section 403(2)] that might inform a decision to refrain from the exercise of jurisdiction." 509 U.S. at 799.[2]

Four members of the Court dissented from the majority's holding under Part III of *Hartford Fire Insurance*, 509 U.S. at 812. Justice Scalia's dissenting opinion argued the view that the factors enumerated in Section 403(2) were relevant to determining whether the Complaint stated a cause of action, not a jurisdictional issue. 509 U.S. at 814-18. The majority treated the question as a question of subject matter jurisdiction. But far from "rejecting the use of the Restatement altogether," as Plaintiffs now urge upon this Court, Justice Scalia acknowledged that "there is a type of 'jurisdiction' relevant to determining the extraterritorial reach of a statute." 509 U.S. at 813. He wrote, "In sum, the practice of using international law to limit the extraterritorial reach of statutes is firmly established in our jurisprudence." 509 U.S. at 818. The dissenting opinion went on to analyze the Complaint under Restatement (Third) §403(2) and concluded after weighing the various factors, "I think it is unimaginable that an assertion of legislative jurisdiction by the United States would be considered reasonable, and therefore it is inappropriate to assume, in the absence of statutory indication to the contrary, that Congress has made such an assertion." *Id.* at 819.

No justice of the Supreme Court disagreed with the proposition that Restatement (Third) §403(2) could not guide a court in declining to exercise jurisdiction (or finding that the statute did not apply to the claims against a defendant as Justice Scalia argued);

---

[2] The finding of a foreseeable effect between the overseas activities of the defendants and the United States is a key point of distinction between the pleadings in *Hartford Fire Insurance* and the Complaint's allegations in this action about the activities of Saleh Kamel and Al Baraka Investment & Development Corp.

3

the dispute was over the application of the factors articulated in Section 403(2) to the facts in the Complaint.[3] In the 2nd Circuit, as elsewhere, this is a jurisdictional question. *United Phosphorous, Ltd. V. Angus Chemical Co.,* 322 F.3d 942 (7th Cor. 2003)(5-4 en banc, FTAIA); *Empagram S.A. v. F. Hoffman-LaRoche, Ltd.,* 315 F.3d 338 (D.C. Cir. 2003)(FTAIA); *North South Finance Corp. v. Al-Turki,* 100 F.3d 1046 (2nd Cir. 1996)(RICO); *Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378, 1385 (9th Cir. 1984), *cert. denied,* 472 U.S. 1032 (1985); *Sinaltrainal v. Coca-Cola Company,* 256 F.Supp.2d 1345 (S.D.Fla. 2003)(RICO).

The defendants are not arguing that the Complaint fails to allege some effect on the United States. The hijacking of aircraft and murder of American citizens in the United States is the basis of the claims against al Qaeda in this case. The defendants do argue that the allegations in the Complaint do not show that the alleged extraterritorial activities of Saleh A. Kamel or ABIDC had an effect on the United States or meet the proximate cause and foreseeable effects requirement of either AntiTerrorism Act, 18 U.S.C. §2333 ("by reason of") or the Restatement (Third) Foreign Relations §403(2)(a). The defendants' motion addresses the specific factual allegations and claims made with respect to them, and as demonstrated in their Motion to Dismiss, the factors identified in Restatement (Third) Foreign Relations §403(2)(a,d,g, and h) substantially weigh against the reasonableness of exercising subject-matter jurisdiction with respect to the claims against Saleh A. Kamel and ABIDC. Alternatetively, the defendants assert that these factors weigh against the conclusion that the Anti Terrorism Act, the Alien Tort Claims

---

[3] Under Justice Scalia's view, the question would be whether in enacting the AntiTerrorism Act, that Alien Tort Claims Act or RICO, Congress expressed an intent to override the considerations of international law articulated in Section 403(2) and impose liability on persons because they own stock in financial institutions in which either al Qaeda had an account or charities that allegedly gave assistance to al Qaeda had an account. The defendants submit that the Court's distinction between a "funnel" and one who is engaged in "funneling" answers this question negatively.

Act, and the Racketeering Act (RICO) apply to the factual allegations made with respect to them.

> II. **THE FACTS ACTUALLY ALLEGED STATE ONLY THAT DEFENDANTS BECAME MINORITY SHAREHOLDERS IN MIDDLE EAST BANKS IN THE 1980s, AND THERE ARE NO FACTUAL ALLEGATIONS THAT DEFENDANTS PROVIDED FUNDING TO TERRORISTS.**

According to facts actually alleged in the Complaint, Defendants Saleh A. Kamel and Al Baraka Investment & Development Corp. are shareholder investors in banks located in Arab and Islamic countries. More specifically, in 1984, Saleh A. Kamel and Al Baraka Investment & Development Corp. directly or indirectly became minority shareholders in various banks in The Sudan, including Al Shamal Islamic Bank, Faisal Islamic Bank, Tadamon Islamic Bank, and National Development Bank. From the fact that Defendants Saleh Kamel and ABIDC became minority shareholders in these banks in 1984, the Plaintiffs ask the Court to reach a conclusion that Defendants supported international terrorism by providing financial support and assistance to al Qaeda.

No court would impose liability on persons merely because they were a minority shareholder in a bank that was later used by criminals to deposit their money, write checks, make withdrawals, transmit funds, or assuming that a subsequent shareholder was a criminal. The illogic in that proposition is supported by Judge Robertson's ruling in his July 25, 2003 opinion in *Burnett v. Al Baraka Investment & Development Corp.,* 274 F.Supp2d 86, 109 (D.D.C. 2003), holding that a bank is <u>not</u> liable for supporting or sponsoring terrorism  use the bank as a "funnel" to hold and move money through the bank "in the form of deposits, withdrawals, check clearing services, or any other routine banking service." And if a bank is not liable for supporting or sponsoring terrorism

because a terrorist uses its facilities, it is incomprehensible that a minority shareholder is liable for sponsoring terrorism in such circumstances. Furthermore, no court would find that a defendant knowingly provided "substantial assistance" to a wrongdoer, a legal predicate for aiding and abetting liability, based on these facts either.

### III. THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE GRANTED.

The legal inadequacy of the Plaintiffs' allegations demonstrates that not only is there no viable legal claim that Saleh Kamel or Al Baraka Investment & Development Corp. aided and abetted an act of international terrorism or sponsored international terrorism, but they establish that there is no viable legal claim that Saleh Kamel or ABIDC are the proximate cause of the Plaintiffs' injuries. This latter point implicates not only the merits of the substantive legal claims against Saleh Kamel and ABIDC, but it also implicates the subject matter jurisdiction of this Court because principles of international law limit the ability of a nation to legislate respecting extra-territorial conduct of foreign nationals to conduct that "has a substantial, direct and foreseeable effect upon or in its territory." *Restatement (Third) of Foreign Relations* §§402(1)(c) and 403(2)(a). The conduct of Saleh Kamel and ABIDC making investments in and becoming shareholders of Middle Eastern banks in the 1980s has anything but "a substantial, direct and foreseeable effect" of the United States, and to construe the AntiTerrorism Act or any other statute to apply to the alleged conduct of these two Defendants would provide a construction on the statute that exceeds the prescriptive power of Congress under international law. *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1050-52 (2nd Cir. 1996)(affirming dismissal of RICO claims under Rule 12(b)(1) because extraterritorial conduct had only "remote and indirect effects in the United States do not qualify as "substantial").

6

The Defendants' argue that the factual allegations of the Complaint contradict and fail to support the conclusory legal allegations regarding causation and support for terrorism. There are no factual allegations that these Defendants conspired with anyone and no effort is made to argue a conspiracy in Plaintiffs' brief. The allegations in Plaintiffs Complaint fail to state a claim which relief can be granted.

### A. Conspiracy

The Plaintiffs have made no effort to defend the inadequacy of their conspiracy allegations against Saleh A. Kamel or ABIDC. Unlike allegations made with respect to other defendants, there are no allegations that Saleh A. Kamel or ABIDC agreed or acted in concert with anyone. Nor are there any facts alleged about Saleh Kamel or ABIDC that warrant even an interference of concerted action. All the Court is left with is the same naked, conclusory allegation of conspiracy that the Seventh Circuit dismissed in *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *reversed on other grounds,* 460 U.S. 325 (1983), and which the U.S. Supreme Court cited in *Papasan v. Allain*, 478 U.S. 265, 286 (1986) as an example of a claim that warranted dismissal even under liberal notice pleading rules. Dismissal of the Conspiracy Count is warranted as to Saleh Kamel and ABIDC.

### B. Aiding and Abetting

Plaintiffs do not make any effort to explain where the Complaint describes how either Saleh Kamel or ABIDC provided "substantial assistance" to al Qaeda, and of course the Complaint does not. Furthermore, the Plaintiffs make no effort to explain where the Complaint describes any facts from which reasonable inferences could be drawn that Saleh Kamel or ABIDC acted with knowledge and intent to further violent

7

criminal acts. The Complaint does not. Dismissal of the Aiding and Abetting Counts is warranted as to Saleh Kamel and ABIDC.

### C.  Providing Material Support to a Foreign Terrorist

The Plaintiffs' effort to explain that Saleh Kamel and ABIDC provided "material support to a terrorist, as that term is defined in 18 U.S.C. §2339A, is based entirely on allegations made about money or financial services allegedly provided by others. There are no facts alleged from which any inferences can be drawn that Saleh Kamel or ABIDC provided material support. Plaintiff's theory is wrongheaded and when taken to a logical conclusion exposes the AntiTerrorism Act to an interpretation that would attribute "almost unlimited liability to any act that had some link to a terrorist act. Congress could not have meant to attach unlimited liability to even remote acts." *Boim,* 291 F.3d at 1020.

There are absolutely no allegations in the Complaint about Saleh Kamel or ABIDC from which even an inference of an act of international terrorism can be drawn.

### D.  The Alien Tort Claims Act

We reiterate our argument that only actions arising under the law prize are actionable under the ATCA. Even if the Court's opinion is correct, the dismissal of the aiding and abetting and the conspiracy claims warrants dismissal of any claims under the Alien Tort Claims Act as to Saleh Kamel and ABIDC.

### IV.  PLAINTIFFS FAIL TO ALLEGE A CAUSAL CONNECTION BETWEEN SALEH KAMEL AND ABIDC'S CONDUCT AND TERRORIST ATTACKS AGAINST THE UNITED STATES.

Not only do Plaintiffs fail to avoid conclusory and generalized allegations, but they do not even attempt to address Saleh Kamel or ABIDC's argument that proximate causation is a linchpin for specific jurisdiction. Causation is so essential to the establishing specific personal jurisdiction that New York federal courts have held that the

8

standard for showing proximate causation in the personal jurisdiction context is higher than the standard for proximate causation in the tort context. *Federal Deposit Ins. Corp. v. Miliken*, 781 F.Supp. 226, 233 (S.D.N.Y. 1991) (holding that causation is an element of the "effects test"); Herbstein v. Bruetman, 786 F. Supp. 79, 81 (S.D.N.Y. 1991)(holding that the standard of proximate cause in the context of the "effects test" is higher than that in the tort context). Federal courts have also held that the standard for causation and foreseeability in the context of specific personal jurisdiction is even more stringent when determinig personal jurisdiction over international defendants, such as Saleh Kamel and ABIDC. *Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 489 (S.D.N.Y. 1987).

Nowhere in Plaintiffs Opposition Brief, do they devote any time to this argument, beyond assuming that they have adequately pled the necessary proximate causal connection. This is simply not enough. In the related case of *Burnett v. Al Baraka Inv. And Dev. Corp.*, 274 F.Supp. 86, 105 (D.D.C. 2003), Judge Robertson discussed the importance of temporal connection between the date of support for al Qaeda and the 9/11 Attacks resulting from the alleged support, noting the following:

> That Al-Haramain knowingly financed al Qaeda 'in the furtherance of international terrorism'…in the year 2001…a temporal allegation that does not prove but provides some support for an inference that Al-Haramain's money helped pay for the September 11 terrorist attacks in the United States.

Though Judge Robertson's discussion was in the context of a motion to dismiss for failure to state a claim, the Court's reasoning equally applies in the personal jurisdiction context.

Plaintiffs never address Judge Roberstson's decision, never discuss how their allegations against Saleh Kamel and ABIDC are temporally significant in terms of proximate causation and nowhere do Plaintiffs allege anything along the lines that Saleh

9

Kamel or ABIDC provided support to al Qaeda in the year 2001. Given the heightened standards of foreseeability and proximate cause in deciding personal juridiction in the context of specific personal jurisdiction in an international context, it would be a miscarriage of justice to force Saleh Kamel and ABIDC to answer in a United States court for vague and conclusory allegations, which have no temporal connection to the harm for which Plaintiffs seek compensation.

## CONCLUSION

The Court should grant the motions to dismiss the Complaint as to defendants Saleh A. Kamel and ABIDC under both Rule 12(b)(1) and 12(b)(6).

Respectfully submitted,

_____
Martin F. McMahon, Esq. #196642
Martin F. McMahon & Associates
1150 Connecticut Ave., NW
Suite 900
Washington, DC 20036
(202) 862-4343

Date: October 12, 2004

10