**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                             :
IN RE TERRORIST ATTACKS ON                                   :
SEPTEMBER 11, 2001                                           :          03 MD 1570 (RCC)
                                                             :          ECF Case
------------------------------------------------------------x
                                                             :
FEDERAL INSURANCE CO., et al.,                               :
                                                             :
                       Plaintiffs,                           :          03 CV 6978 (RCC)
                                                             :          ECF Case
           v.                                                :
                                                             :
AL QAIDA, et al.,                                            :
                                                             :
                       Defendants.                           :
                                                             :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. ...................................................1

ARGUMENT......................................................................................................................3

I  THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A. ..................................3

    A.    This Court Cannot Exercise Personal Jurisdiction Over DMI S.A.
        Because Plaintiffs Have Not Made a Prima Facie Case For Jurisdiction. ...................4

    B.    Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and
        Abetting Provide No Basis for Personal Jurisdiction Over DMI S.A........................8

II  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ...............................11

    A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any
        Actions By DMI S.A.Proximately Caused Plaintiffs' Injuries.................................13

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To Make Out Any Of
        The Twelve Causes Of Action Against DMI S.A. ...................................................15

        1.    RICO  (Count VIII)......................................................................16
        2.    Conspiracy  (Count VII)................................................................17
        3.    Aiding and Abetting  (Count IX).....................................................19
        4.    Anti-Terrorism Act  (Count X). .....................................................19
        5.    Trespass  (Count I). ......................................................................20
        6.    Wrongful Death  (Count II)............................................................21
        7.    Survival (Count III).......................................................................21
        8.    Assault & Battery  (Count IV).........................................................22
        9.    Intentional and/or Negligent Infliction of Emotional Distress
            (Count V)....................................................................................22
        10.    Torture Victims Protection Act (Count VI)........................................23
        11.    Negligence (Count XI)...................................................................23
        12.    Punitive Damages  (Count XII).......................................................24

III PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ...........................24

CONCLUSION .................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

A.G. Van Metre Const., Inc. v. N.V. Kettler, L.P.,
    1992 WL 88 4467 (Va. Cir. Ct. Sept. 27, 2002) ................................................................ 18

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ......................................................................................... 20

Alexander & Alexander of New York, Inc. v. Fritzen,
    68 N.Y.2d 968, 503 N.E.2d 102 (1986) .......................................................................... 18

Asahi Metal Indus. Co. v. Superior Ct., Solano Cty.,
    480 U.S. 102 (1987) ...................................................................................................... 3

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
    459 U.S. 519 (1983) .................................................................................................... 18

Atuahene v. City of Hanford,
    10 Fed. Appx. 33 (2d Cir. 2001) .................................................................................. 12

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ................................................................................... 4,5,9

Bao Ge v. Li Peng,
    201 F. Supp. 2d 14 (D.D.C. 2000), aff'd, 2002 WL 1052012 (D.C. Cir. 2002) ...................... 23

Beanal v. Freeport-McMoRan, Inc.,
    969 F. Supp 362 (E.D. La. 1997), aff'd on other grounds, 197 F.3d 161 (5th Cir. 1999) ........ 25

Becker v. Schwartz,
    46 N.Y.2d 401, 386 N.E.2d 807 (1978) .......................................................................... 23

Benas v. Baca,
    2001 WL 485168 (C.D. Cal. Apr. 23, 2001) .................................................................... 23

Board of Dirs. of the Lesner Pointe Condominium v. Harbour Point Bldg. Corp.,
    2002 WL 32072394 (Va. Cir. Ct.) ................................................................................. 18

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) ..................................................................................... 19

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) ..................................................................................... 15

Burger King Corp. v. Rudzewicz,
        471 U.S. 462 (1985) .................................................................................... 4,5,8

Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)
        274 F. Supp. 2d 86 (D.D.C. 2003).......................................................... 15, 16

Burnett v. Al Baraka Inv. & Dev. Corp. II,
        292 F. Supp. 9 (D.D.C. 2003)...........................................................4,19, 24

Calder v. Jones,
        465 U.S. 783 (1984) .............................................................................7

Chudasama v. Mazda Motor Corp.,
        123 F.3d 1353 (6 Cir. 1998) ................................................................12

Chew v. Dietrich,
        143 F.3d 24 (2d Cir. 1998) ...............................................................5,8

Cohen v. Standard Bank Inv. Corp., Ltd.,
        1998 WL 782024 (S.D.N.Y., Nov. 6, 1998) .............................................

Cooper Indus., Inc. v. Leatherman Tool Group,
        532 U.S. 424 (2001) ............................................................................20

Cucinotti v. Ortmann,
        159 A.2d 216 (Pa. 1960) .....................................................................21

DeJesus v. Sears, Roebuck & Co., Inc.,
        87 F.3d 65 (2d Cir. 1996) .......................................................... 11,4,16, 21

Delk v. Columbia/HCA Healthcare Corp.,
        259 Va. 125, 523 S.E.2d 826 (2000) ..................................................22, 24

Eisenberg v. Wachovia Bank, N.A.,
        301 F.3d 220 (4 Cir. 2002) ................................................................24

Electronic Communications Corp. v. Toshiba America,
        129 F.3d 240 (2d Cir. 1997) ...............................................................25

Filartiga v. Pena-Irala,
        630 F.2d 876 (2d Cir. 1980) ...............................................................23

Flanagan v. Shively,
        783 F. Supp. 922 (M.D. Penn. 1992) ...................................................17

Flores v. Southern Peru Copper Corp.,
    343 F.3d 140 (2d Cir. 2003) ........................................................................23

Friedman v. Bayer Corp.,
    1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ....................................23

Gillette v. Philips Oral Healthcare Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) ....................................12

Girden v. Sandals International,
    262 F.3d 195 (2d Cir. 2001) ........................................................................21

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ...............................12,13

Great American Ins. Co. v. United States,
    575 F.2d 1031 (2d Cir. 1978) ....................................................................22

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ........................................................................9

Guadagnoli v. Seaview Radiology, P.C.,
    184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ...........................21

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985).........................................................................17

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ..................................................................................13

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) ...............................................22

Hughes v. Moore,
    214 Va. 27, 197 S.E.2d 214 (1973) .........................................................23

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) .......................................17

In re Aircrash Crash Disaster at Cove Neck Long Island, New York on January 25, 1990,
    8857 F. Sup. 434 (E.D.N.Y. 1995) ........................................................20

In re American Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) ..................................................................13,14

In re Cendant Corp. Sec. Litig.,
    190 F.R.D. 331 (D.N.J. 1999) ................................................................12

In re DES Cases,
    789 F.Supp. 552 (E.D.N.Y. 1992) ..................................................... 8

In re Livent, Inc. Noteholders Secs. Litig.,
    151 F.Supp. 2d 371 (S.D.N.Y. 2001) ................................................ 15

In re NASDAQ Market-Makers Antitrust Litig.,
    894 F.Supp. 703 (S.D.N.Y. 1995) ..................................................... 18

In Re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
    L004 WL 515534 (S.D.N.Y. Mar. 16, 2004) ..................................... 11

International Shoe Co. v. State of Washington,
    326 U.S. 310 (1945) .................................................................... 3,8

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ..................................................... 4,6,7,11

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y.) Nov. 10, 1993 .................................... 19

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995), reh'g denied, 74 F.3d 377 (2d Cir. 1996) ................................... 23

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) ........................................................ 13

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ............................................. 18

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    26 F.Supp.2d 593 (S.D.N.Y.  1998) ............................................... 9

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ........................................................ 13

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972) ....................................................... 7

Leeds v. Meltz,
    85 F.3d 51 (2d Cir. 1996) ........................................................... 13

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975) ..................................................... 6,7,8,11

Levenson v. Souser,

557 A.2d 1081 (Pa. Super. 1989) .......................................................................21

Liberman v. Worden,
701 N.Y.S.2d 419 (App. Div. 1st Dep't 2000) ...................................................18

Lichtenstein v. State,
712 N.E.2d 1218 (Ny. Ct. App. 1999) ..............................................................21

Madison Models, Inc. v. Casta.,
2003 WL 219786 28 (S.D.N.Y. Aug. 20, 2003) ...............................................11

Manhattan Telecomms. Corp. v. Dialamerica Marketing, Inc.,
156 F.Supp. 2d 376 (S.D.N.Y. 2001).................................................................13

Martin v. Evans,
551 Pa. 496, 711 A.2d 458 (1998) .....................................................................24

Mende v. Milestone Tech. Inc.,
269 F. Supp. 2d 246 (S.D.N.Y. 2003) ...........................................................4,6,7

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
506 N.Y.S.2d 174 (2d Dep't 1986) ....................................................................21

Miele v. United States,
800 F.2d 50 (2d Cir. 1986).................................................................................21

Mortise v. United States,
102 F.3d 693 (2d Cir. 1996) .........................................................................22, 23

Moss v. Morgan Stanley Inc.,
719 F.2d 5 (2d. Cir. 1983) .................................................................................16

Oneida Indian Nation of New York v. City of Sherrill,
337 F.3d 138 (2d Cir. 2003) ..............................................................................25

Papasan v. Allain,
478 U.S. 265 (1986) ..........................................................................................14

Papieves v. Lawrence,
437 Pa. 373, 263 A.2d 118 (1970) .....................................................................22

Park v. Shiflett,
250 F.3d 843 (4th Cir. 2001) .............................................................................21

Pittman v. Grayson,
149 F.3d 111 (2d Cir. 1998) ..........................................................................10,18

Powell v. Jarvis,
  460 F.2d 551 (2d Cir. 1972) ............................................................11,12

Renner v. Chase Manhattan Bank,
  1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) .............................................26

Robinson v. Overseas Military Sales Corp.,
  21 F.3d 502 (2d Cir. 1994) ...................................................................4

Rose v. Goldman, Sachs & Co.,
  163 F.Supp.2d 238 (S.D.N.Y. 2001) ...................................................13

Ross v. UKI Ltd.,
  2004 WL 384885 (S.D.N.Y. Mar. 1, 2004) ...........................................6

Ruffolo v. Oppenheimer & Co., Inc.,
  1991 WL 17857 (S.D.N.Y. Feb. 5, 1991) .............................................22

S.E.C. v. Unifund SAL,
  910 F.2d 1028 (2d Cir. 1990) ................................................................7

Second Amend. Found. v. United States Conf. of Mayors,
  274 F.3d 521 (D.C. Cir. 2001) ..............................................................8

Sherry Wilson & Co., Inc. v. Generals Court, L. Co.,
  2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ...............................18

Simon v. Philip Morris, Inc.,
86 F.Supp.2d 95 (E.D.N.Y. 2000) ...........................................................8

Sinn v. Burd,
  486 Pa. 146, 404 A.2d 672 (1979) ......................................................23

Skipworth v. Lead Industries Ass'n. Inc.,
  690 A.2d 169 (Penn. 1997) .................................................................17

Smith v. County of Erie,
  295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ................24

Smith v. Islamic Emirate of Afghanistan,
  262 F.Supp.2d 217 (S.D.N.Y. 2003) ..............................................19,20

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) ...............................................................11

Sodepac. S.A. v. Choyang Park In Rem,
    2002 WL 3129641 (S.D.N.Y. Oct. 10, 2002) ........................................................ 6

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F.Supp. 2d 303 (S.D.N.Y. 2001) ................................................................ 15

Stauffacher v. Bennet,
    969 F.2d 455 (7 Cir. 1992)............................................................................. 99

Suarez v. Underwood,
    103 Misc.2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. Mar 11, 1980) ............................... 17

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002) ..................................................................................... 15

Talmor v. Talmor,
    185 Misc.2d 293, 297, 712 N.Y.S.2d 833, 836 (N.Y. Sup. 2000) ........................... 24

Terrydale Liquidating Trust v. Gramlich,
    549 F. Supp. 529, 530 (S.D.N.Y. 1982) ............................................................ 10

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) ..................................................................... 4,5,8

U.S. v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ............................................................................ 21

United States v. Uccio,
    940 F.2d 753 (2d Cir. 1991) .......................................................................... 16

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002) ........................................................................... 4

Whitaker v. American Telecasting. Inc.,
    261 F.3d 196 (2d Cir. 2001) ........................................................................... 4

York v. Association of the Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002) .......................................................................... 15

## **STATUTES**

Fed. R. Civ. P. 8(a) ............................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 3,11

Fed. R. Civ. P. 12(b)(2) ........................................................................................ 3

Torture Victims Protection Act, 28 U.S.C. § 1350, note §2(a) (1953) ................................. 25

Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ........................................................ 19

N.Y. E.P.T.L. § 5-4.1(1) ....................................................................................................... 20

42 Pa. Cons. Stat. § 8301........................................................................................................ 22

Va. Code Ann. §§ 8.01-50 ...................................................................................................... 22

## **OTHER TREATISES**

5A Wright & Miller, Federal Practice & Procedure § 1363 (2d Ed. 1990) ......................... 12

N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001) ........................................................................ 23

N.Y. E.P.T.L. §11-3.3 (McKinney 2001) .......................................................................

8 N. Y. Jur., Conspiracy, § 4............................................................................................17,18

8 N.Y. Jur., Conspiracy, § 19 (1982) .................................................................................... 19

Restatement (Second) of Torts § 281 (1965) ........................................................................ 25

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Memorandum of Law in support of its motion to dismiss the claims against it in the First Amended Complaint ("FAC"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons stated herein and in the remainder of the record, this motion is meritorious and should be granted in all respects.

## PRELIMINARY STATEMENT

Plaintiffs have made sweeping allegations of grave wrongdoing by the defendants named in this action, which defendants include DMI S.A.  But neither the Complaint nor the Plaintiffs' RICO Statement, filed September 17, 2004, Docket No. 446 ("RICO Statement"), contain a single, solitary allegation of fact that, if proven, would show any connection between DMI S.A. and al Qaeda, or (for that matter) any contact between DMI S.A. and the United States.  In fact, plaintiffs fail even to *mention* DMI S.A. in their Complaint, and proceed instead solely on the basis of the averments contained in their RICO Statement.  And in place of factual allegations, plaintiffs in their RICO Statement offer only conclusory allegations and boilerplate conclusions of law that, under the law of the Second Circuit and every other federal court, are patently insufficient to withstand a motion to dismiss.   As counsel for the plaintiffs conceded in argument before the Court on October 12, 2004, their case is predicated, first and foremost, upon generalized allegations regarding the history of al Qaeda, and in this action, as in others, plaintiffs have offered nothing at all to connect DMI S.A. to al Qaeda or to the September 11 attacks.  In the absence of any such allegations, plaintiffs' claims are due to be dismissed.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

DMI S.A. is not referred to in the text of the Complaint whatsoever.  See FAC ¶¶ 66, 307-12.  Moreover, the Plaintiffs' RICO Statement contains only boilerplate RICO assertions regarding DMI S.A., which are restated below in their entirety:

- DMI S.A. has "long provided financial services and other forms of material support to terrorist organizations, including al Qaida." RICO Statement Exh. A.

- "[T]he racketeering activity conducted by DMI Administrative Services S.A. . . . funds [terrorism all over the world], which activity culminated in the Attack." <u>Id.</u> ¶ 8.

- The racketeering activity conducted by DMI S.A. "relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions." <u>Id.</u> ¶ 10.

- DMI S.A. "rais[ed] funds for and provid[ed] funding to and otherwise provid[ed] material support for" the "Enterprise" of "Radical Muslim Terrorism." DMI S.A. is "associated with" and is a "member[] of" the "Enterprise" of "Radical Muslim Terrorism." DMI S.A. also "intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack." <u>Id.</u> ¶ 6.

- "After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including DMI Administrative Services S.A., who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors." <u>Id.</u> ¶ 14.

- DMI S.A. "conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, which conspiracy culminated in the Attack." DMI S.A. "agreed to commit more than two predicate acts, *i.e.,* multiple acts of murder and arson" in furtherance thereof. DMI S.A. "also, with knowledge and intent, agreed to and did aid and abet" illegal activities, RICO predicate acts, and RICO violations. DMI S.A. knew that Radical Muslim Terrorism "planned and would commit an act of deadly aggression against the United States in the near future, using … resources and support" from DMI S.A., and "would not have been successful without the enthusiastic participation" and "assistance" of DMI S.A. <u>Id.</u> ¶¶ 5, 14.[1]

As the above recitation makes clear, Plaintiffs do *not* allege any facts showing that DMI S.A. ever entered into any transaction with any person, much less any facts showing that DMI S.A. ever "rais[ed] funds for and provid[ed] funding to" al Qaeda or any other terrorist organization.

---

[1] The RICO Statement also makes reference to certain Sudanese banks that are putatively related to DMI S.A., but does not assert that those entities are subsidiaries of DMI S.A. or that they are related to DMI S.A. in any way. Because the FAC does not assert that these entities are subsidiaries of DMI S.A., or that those entities are otherwise "alter egos" of DMI S.A. (and because plaintiffs' claims against DMI S.A. would be wholly baseless even if such an allegation were made), plaintiffs' allegations regarding those entities are immaterial to the present motion.

Nor do plaintiffs allege facts showing that DMI S.A. ever entered into any agreement with any person, much less that DMI S.A. ever entered into an agreement "to commit an act of deadly aggression against the United States." Indeed, in both the FAC and the RICO Statement, the plaintiffs fail to allege any communication by DMI S.A. with anyone associated with al Qaeda; any transfer of money to or from DMI S.A., by or to anyone associated with al Qaeda; any facts that would show that DMI S.A. aided al Qaeda or abetted any of al Qaeda's activities; any facts that could be read to imply DMI S.A.'s supposed "enthusiastic" intent to cause an attack on the United States; or any facts connecting DMI S.A. *in any way whatsoever* with the events of September 11.

## ARGUMENT

All claims asserted against DMI S.A. should be dismissed for two reasons. First, the Court should dismiss pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over DMI S.A. As the above recitation of plaintiffs' skeletal allegations shows, plaintiffs have alleged no facts whatsoever connecting DMI S.A. with the United States or the events of September 11. Requiring DMI S.A. to respond and defend itself in this Court in these circumstances would be wholly inconsistent with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Ct., Solano Cty., 480 U.S. 102, 113 (1987) (quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)). Second, the Court should dismiss under Fed. R. Civ. P. 12(b)(6), because the plaintiffs have entirely failed to state any claim against DMI S.A.

## I

## THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, a *société anonyme* organized under the laws of Switzerland. As is clear from the preceding discussion, neither the Complaint nor the RICO Statement alleges any facts whatsoever that could be read to show that DMI S.A. has had any contacts with the United States or any role in the terrorist attacks of September 11, 2001. Consequently, plaintiffs have not made the *prima facie* showing of minimum contacts necessary, for

due process purposes, to invoke personal jurisdiction over DMI S.A., and the claims against DMI

S.A. are due to be dismissed in their entirety.

> ### A.   This Court Cannot Exercise Personal Jurisdiction Over DMI S.A. Because Plaintiffs Have Not Made a Prima Facie Case For Jurisdiction.

The plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.

See Whitaker v. American Telecasting. Inc., 261 F.3d 196, 208 (2nd Cir. 2001) ("The plaintiff bears

the burden of establishing that the court has jurisdiction over the defendant when served with a Rule

12(b)(2) motion to dismiss."); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d

779, 784 (2nd Cir. 1999) (same).  To survive such a motion, plaintiffs must make a *prima facie* showing

of facts sufficient to support a finding of personal jurisdiction.  See Whitaker, 261 F.3d at 208

(plaintiff must make *prima facie* showing of jurisdiction); Jazini v. Nissan Motor Co., Ltd., 148 F.3d

181, 184-85 (2nd Cir. 1998) (same; "conclusory, non-fact-specific allegations" are insufficient).

Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual

allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v.

Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003), quoting Robinson v. Overseas

Military Sales Corp., 21 F.3d 502, 507 (2nd Cir. 1994).

Whether it is maintained that a Court has general or specific jurisdiction over a

defendant, constitutional due process requires that a plaintiff must always allege facts demonstrating

that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice."  U.S. Titan, Inc. v.

Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2nd Cir. 2001) (quoting Calder v. Jones, 465

U.S. 783, 788 (1984)) (internal quotation marks omitted); see also Burger King Corp. v. Rudzewicz,

471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant

purposefully established 'minimum contacts' in the forum . . . ."); Chew v. Dietrich, 143 F.3d 24, 28

(2nd Cir. 1998) ("The due process clause of the Fourteenth Amendment permits a state to exercise

personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts …

such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice.") (citations and internal quotation marks omitted).  In the instant case, plaintiffs have failed to allege *any* contact of *any* kind between DMI S.A. and New York or any other of the United States.

As the allegations described above illustrate, plaintiffs have proffered no facts whatsoever in support of the proposition that DMI S.A. has had even minimal contacts with the United States.  In actuality, plaintiffs cannot possibly make any such allegation because DMI S.A. has had no substantive contacts at all with this country.  DMI S.A. has never done business, maintained a place of business, or been licensed to do business in any U.S. jurisdiction, and plaintiffs have made no such allegation.  Plaintiffs do not allege that DMI S.A. has ever entered into any contracts with U.S. entities or any contracts to be performed in whole or in part in the U.S., or that DMI S.A. has ever entered into any partnership, joint venture, or other such relationship with a U.S. entity, invested in any U.S. entity, or had any U.S. investors or clients.  Plaintiffs do not assert that DMI S.A. has ever maintained an agent for service of process in the U.S., brought an action in a U.S. Court, or otherwise submitted itself to the jurisdiction of any U.S. authority in any way.  In short, plaintiffs tender nothing that could conceivably be read to assert that DMI S.A. has had the purposeful contacts necessary, for due process purposes, to establish general personal jurisdiction over it.  See RICO Statement ¶ 5, 6, 8, 10, 14 and Exh. A; Burger King, 471 U.S. at 471-73; Bank Brussels Lambert, 305 F.3d at 127.

Instead, plaintiffs offer only the unsupported assertion, in paragraph 10 of their RICO Statement, that

> The Enterprise [of Radical Muslim Terrorism], and the racketeering activities conducted by . . . [DMI S.A.], rel[y] heavily on the American interstate system of commerce for banking, supp[l]ies, communications, and virtually all [their] essential commercial functions, and in that manner affects interstate commerce.  Additionally, the Attack itself affected commerce.

On its face this paragraph appears to assert both general and specific personal jurisdiction over DMI S.A.  See id. (DMI S.A. relies "on the American interstate system of commerce"; and "the Attack itself affected commerce").  As the above recitation of plaintiffs' RICO allegations demonstrates, however, plaintiffs have offered no allegations of fact in support of either the proposition that DMI

S.A. has done business in U.S. commerce or the allegation that DMI S.A. involved itself in the RICO 'enterprise' of "Radical Muslim Terrorism."  Such conclusions of law, though couched as factual allegations, do not suffice to make out the *prima facie* showing of minimum contacts necessary for this Court to exercise personal jurisdiction over DMI S.A.  See Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege facts supporting said conclusion); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2nd Cir. 1975) (conclusory allegations insufficient to establish personal jurisdiction); Sodepac S.A. v. Choyang Park In Rem, No. 02-Civ-3927, 2002 WL 3129641, at *4 (S.D.N.Y. Oct. 10, 2002) ("legal conclusions couched as factual allegations are not facts and cannot substitute for" them); Bellepointe v. Kohl's Department Stores, Inc., 975 F.Supp. 562 (S.D.N.Y. 1997) ("plaintiff misunderstands exactly what a *prima facie* case is"; to state a *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.").

In the absence of any allegations that could give rise to general personal jurisdiction over DMI S.A., plaintiffs apparently rely on a theory of specific jurisdiction, *i.e.*, that personal jurisdiction over DMI S.A. may be had because DMI S.A.'s tortious actions (whatever those unalleged actions might have been) had a direct effect in the United States.  Neither in the RICO Statement nor in the Complaint, however, do plaintiffs allege any facts that could bear out that assertion; for instance, as demonstrated above and as discussed *infra* Part II.B.1, Plaintiffs have alleged no facts that could show that DMI S.A. has conducted any racketeering activity at all, and no facts that could show that DMI S.A. had anything to do with the "Enterprise" of "Radical Muslim Terrorism."

Plaintiffs offer no allegations of fact in support of their sweeping assertion that "the racketeering activity conducted by DMI Administrative Services S.A. . . . funds [terrorism all over the world], which activity culminated in the Attack."  See RICO Statement ¶ 8.  Plaintiffs also offer no support at all for the odious propositions that DMI S.A. "rais[ed] funds for and provid[ed]

funding to and otherwise provid[ed] material support for" the "persons, organizations, businesses, and nations associated in fact" in the RICO enterprise of "Radical Muslim Terrorism"; "intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor"; "laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors;" and joined a conspiracy whose aim was to "commit an act of deadly aggression against the United States." See id. ¶¶ 5-6, 14. In other words, plaintiffs' unsupported assertions of tortious activity by DMI S.A., which unalleged activity putatively had direct effects in the United States, are wholly conclusory. Again, these conclusory assertions of fact, and legal conclusions masquerading as allegations of fact, are entirely insufficient to confer personal jurisdiction over DMI S.A. See Jazini, 148 F.3d at 184-85; Lehigh Valley, 527 F.2d at 93-94; Ross, 2004 WL 384885, at *3; Mende, 269 F. Supp. 2d at 251.[2]

In short, in support of their invocation of personal jurisdiction over DMI S.A. -- and their claim that DMI S.A. willingly participated in a plot to murder thousands of Americans in the attacks of September 11 -- plaintiffs have offered up no allegations at all in their 183-page Complaint, and sheer boilerplate in their RICO Statement. Plaintiffs now will ask the Court to ignore the fact that they have made no factual allegations whatsoever in support of their invocation of specific personal jurisdiction over DMI S.A. Courts in this Circuit, however, have held that the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New

---

[2] Two district court cases, Rein v. Socialist People's Libyan Arab Jamahirya, 995 F.Supp. 325 (E.D.N.Y. 1998) and Pugh v. Socialist People's Libyan Arab Jamahirya, 290 F.Supp.2d 54 (D.D.C. 2003), have been read broadly by some plaintiffs to import the due process standards of the Foreign Sovereign Immunities Act ("FSIA") to cases brought under the Anti-Terrorism Act ("ATA"). The District Court for the District of Columbia, however, when recently presented with this exact question, held that "the differences between the ATA and the FSIA are too great for their common focus on antiterrorism to allow cross-pollination on this issue" of personal jurisdiction. Biton v. Palestinian Interim Self-Government, 310 F.Supp.2d 172, 178 (D.D.C. 2004); see also Estates of Ungar v. The Palestinian Authority, 153 F.Supp.2d 76, 95 (D.R.I. 2001) ("this Court declines plaintiffs' invitation to extend the due process analysis applied by the district courts under the state-sponsored terrorist exception to the FSIA to the case currently before the Court" brought under the ATA). In both Biton and Ungar, the courts, applying traditional "minimum contacts" analysis, dismissed the claims against the individual defendants for lack of personal jurisdiction. Biton, 310 F.Supp.2d at 178-79; Ungar, 153 F.Supp.2d at 95. More importantly, Pugh and Rein simply do not address the fundamental issue presented here -- whether the plaintiffs have alleged sufficient facts to connect DMI S.A. to the United States or to the attacks of September 11. As discussed throughout, Plaintiffs have not.

York "must be applied with caution, particularly in an international context." Leasco Data

Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2nd Cir. 1972). Accordingly, a foreign

defendant may be subject to personal jurisdiction only where it "has good reason" to know that its

conduct will have a "direct" effect in the forum. Id.; see also S.E.C. v. Unifund SAL, 910 F.2d 1028,

1033 (2nd Cir. 1990). Again, conclusory allegations or statements of law couched as factual

allegations do not suffice. Plaintiffs must properly allege some tortious acts by the defendant, and

allege facts showing that the defendant "expressly aimed" such tortious acts at the forum. See

Calder, 465 U.S. at 789 (1984). Here, plaintiffs do not allege any particular wrongful conduct by

DMI S.A. whatsoever. Furthermore, plaintiffs entirely fail to allege facts indicating that DMI S.A.

was aware that any of its actions (whatever those unalleged actions might have been) would affect

New York and/or the United States in any way, let alone that DMI S.A. *directed* any wrongful actions

toward the United States. Accordingly, to the extent that plaintiffs rely upon a theory of specific

personal jurisdiction over DMI S.A., that reliance is misplaced, and plaintiffs' claims are due to be

dismissed.[3]

### B. Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and Abetting Provide No Basis for Personal Jurisdiction Over DMI S.A.

Finally, plaintiffs assert that DMI S.A. has "aided and abetted, [and] conspired with .

. . defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," see FAC ¶ 66;

---

[3] Two decisions by a single district judge in the Eastern District of New York, Simon v. Philip Morris, Inc., 86 F.Supp.2d 95 (E.D.N.Y. 2000), and In re DES Cases, 789 F.Supp. 552 (E.D.N.Y. 1992), have sometimes been read to suggest that in certain mass tort class actions, a Court may do away with the minimum contacts requirement and seek to exercise personal jurisdiction over a non-resident defendant based upon a loosely-drawn 'governmental interest' test. In at least one of the two cases, however, see Simon, 86 F.Supp.2d at 132-33, the District Court explicitly found that the defendant *did* have minimum contacts with the forum, rendering its previous discussion of a 'modified due process standard' a dictum. To the extent that those two cases do stand for the proposition that the minimum contacts test may be abandoned, those decisions run directly contrary to long-standing, controlling precedent. See, e.g., International Shoe, 326 U.S. at 319 (Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts"); see also Burger King, 471 U.S. at 474-76; U.S. Titan, 241 F.3d at 152 (same); Chew, 143 F.3d at 28 (same). And indeed, the Second Circuit has implicitly called into question the 'modified due process' standard suggested by In re DES. See In re DES Litig., 7 F.3d 20, 24-25 (2d Cir. 1993) ("[W]hether or not other trial judges find Judge Weinstein's opinion a persuasive precedent, they are not bound to apply it in any subsequent litigation" for collateral estoppel purposes).

that DMI S.A. "conspired to support . . . Radical Muslim Terrorism;" that DMI S.A. agreed to "associate" itself with the RICO enterprise of Radical Muslim Terrorism and "agreed to commit" "multiple acts of murder and arson" in furtherance of that enterprise; and that DMI S.A. "with knowledge and intent, agreed to and did aid and abet" that enterprise.  See RICO Statement ¶ 5.

These wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage plaintiffs' failed assertion of personal jurisdiction over DMI S.A.  "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ."  Lehigh Valley, 527 F.2d at 93-94; see also In re Nazi Era Cases, 320 F.Supp.2d 204, 222 (S.D.N.Y. 2004) (plaintiff must "allege specific facts warranting the inference that the defendant was a member of the conspiracy"); Second Amend. Found. v. United States Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("the allegation that the [defendants] conspired together represents nothing more than a legal conclusion, which we have held does not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction") (internal citations and quotations omitted).  "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough.  Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums."  Stauffacher v. Bennet, 969 F.2d 455, 460 (7th Cir. 1992); see also Bank Brussels Lambert, 171 F.3d at 793 (same).

"Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States."  Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 601-02 (S.D.N.Y.1998) (internal quotation marks and citation omitted, emphases added); see also In re Nazi Era Cases, 320 F.Supp.2d at 222. First, "[t]o establish a *prima facie* case for conspiracy under New York law, a plaintiff must properly allege the primary tort and the following four elements: (1) a corrupt agreement between two or

more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury." Laborers Local 17, 26 F.Supp.2d at 602.  Second, plaintiffs must allege specific facts connecting DMI S.A. to the conspiracy and specific facts connecting DMI S.A. to the in-state actors.  In other words, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  Laborers Local 17, 26 F.Supp.2d at 602; see also Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to invoke jurisdiction over a nonresident co-conspirator, plaintiff must show that the in-state actor acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").

Here, plaintiffs' Complaint offers no allegations at all, factual or otherwise, as to DMI S.A.  See FAC ¶¶ 66, 307-12.  Only in their RICO Statement do the plaintiffs make the assertion that DMI S.A. "conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism."  See RICO Statement ¶ 5.  And in both the Complaint and the RICO Statement, plaintiffs entirely fail to identify any in-state actor who acted for the benefit of DMI S.A., or to allege facts showing that DMI S.A. exercised control over any such actor.  Thus, plaintiffs have not alleged facts sufficient to show that DMI S.A. entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of DMI S.A.; or that that DMI S.A. exercised control over any such actor.  See infra, Part II.B.2.

Like their allegations regarding an alleged conspiracy, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A.  See RICO Statement ¶ 5 (DMI S.A., "with knowledge and intent, agreed to and did aid and abet" the RICO enterprise of "Radical Muslim Terrorism").  A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary

wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 123 (2nd Cir. 1998) (internal citations omitted); see also Terrydale Liquidating Trust v. Gramlich, 549 F. Supp. 529, 530 (S.D.N.Y. 1982) (plaintiff must allege facts demonstrating "substantial assistance" to support finding of personal jurisdiction over abettor); Part II.B.3, infra. In short, the alleged aider and abettor must have been aware of the wrongdoing, and must have provided substantial assistance in its commission. Here, plaintiffs have alleged no facts sufficient to support any such finding as to DMI S.A. Thus, to the extent that plaintiffs rely upon a theory of personal jurisdiction over DMI S.A. as a putative co-conspirator or aider-and-abettor of al Qaeda, that reliance is also misplaced, and plaintiffs' claims are due to be dismissed.

For the foregoing reasons, plaintiffs have completely failed to make out a prima facie case for personal jurisdiction over DMI S.A.[4] Plaintiffs' claims against DMI S.A. therefore should be dismissed in their entirety.

## II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.

Plaintiffs have also completely failed to allege facts sufficient to make out any of the twelve different causes of action lodged against DMI S.A. Indeed, as the above recitation of plaintiffs' allegations shows, plaintiffs have failed to allege any particular conduct by DMI S.A. whatsoever, much less any wrongful conduct. Furthermore, plaintiffs have alleged no facts that, if proved out, would establish that any conduct by DMI S.A. -- if any were in fact alleged -- proximately caused plaintiffs' injuries. Finally, plaintiffs have entirely failed to plead facts sufficient to make out the numerous more specific requirements of their causes of action against DMI S.A.

---

[4]   Moreover, plaintiffs have alleged no facts, and can tender no argument, that this complete failure to make out a prima facie case for jurisdiction could be remedied by limited jurisdictional discovery. See Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 2004 WL 515534, at *6 (S.D.N.Y. Mar. 16, 2004) (jurisdictional discovery denied where defendant had no apparent contacts with United States; such discovery unlikely to yield additional useful information); Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

In the face of conclusory allegations of endless scope, and in the absence of any specific allegations of fact, DMI S.A. is left with no idea as to what conduct is the supposed basis of plaintiffs' claims against it.  Plaintiffs therefore have not satisfied even the lenient notice pleading standard of Fed. R. Civ. P. 8(a), and the Complaint against DMI S.A. is due to be dismissed in its entirety.  See DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2nd Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."), cert. denied, 519 U.S. 1007, 117 S.Ct. 509 (1996); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2nd Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Powell v. Jarvis, 460 F.2d 551, 553 (2nd Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations"); In re Cendant Corp. Sec. Litig., 190 F.R.D. 331, 335 (D.N.J. 1999) (rejecting complaint that "lumped the defendants together and made general conclusory allegations of wrongdoing"); 5A Wright & Miller, Federal Practice & Procedure § 1363 at 464-65 (2d Ed. 1990) (upon motion to dismiss, unsupported conclusions of law never deemed admitted; court will not accept conclusory allegations contradicted by other allegations or facts judicially noticed).

In lieu of any specific allegations regarding DMI S.A., plaintiffs offer the unsupported, boilerplate averment that DMI S.A. has involved itself in the RICO enterprise of "Radical Muslim Terrorism," by conspiring to support that RICO enterprise, conspiring to commit murder and arson, "raising funds for and providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack," "laundering" money from unidentified organizations, using unspecified means, and aiding and abetting such crimes.  See RICO Statement ¶¶ 5-8, 14.  These conclusory allegations, standing alone, do not provide DMI S.A.

with any meaningful notice of the conduct of which plaintiffs now complain.  Such allegations thus cannot suffice to state plaintiffs' inflammatory claims against DMI S.A.[5]  See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001), quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2nd Cir. 2001):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a
> model of clarity or exhaustively present the facts alleged, it requires,
> at a minimum, that a complaint give *each defendant* 'fair notice of what
> the plaintiff's claim is and the ground on which it rests.'  *By lumping the*
> *defendants together in each claim and providing no factual basis to distinguish*
> *their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2nd Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Leeds v. Meltz, 85 F.3d 51, 53 (2nd Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); Barr v. Abrams, 810 F.2d 358, 363 (2nd Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Rose v. Goldman, Sachs & Co., 163 F.Supp.2d 238, 241 (S.D.N.Y. 2001) (same).

### A. Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A.Proximately Caused Plaintiffs' Injuries.

Plaintiffs also proffer nothing to support the proposition that any actions of DMI S.A. -- and again, no such actions have been properly alleged -- proximately caused the injuries suffered by plaintiffs on September 11, 2001.  See RICO Statement, ¶¶ 5-14.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI S.A.'s own tortious conduct.  See Holmes v. Sec. Investor Prot. Corp.,

---

[5] Such boundless allegations also promise a boundless discovery process, if plaintiffs' case is allowed to proceed.  Such a discovery process, untethered to any specific allegations of fact, would be unmanageable, for both the parties and the Court.  See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

503 U.S. 258, 268, 112 S.Ct. 1311, 1317 (1992); <u>In re American Express Co. S'holder Litig.</u>, 39 F.3d 395, 401-02 (2nd Cir. 1994) (proximate cause requires showing that defendant's wrongful action was substantial factor in plaintiff's injury; injury must also have been reasonably foreseeable); <u>Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 235 (2nd Cir. 1999) (same).

       Here, plaintiffs have failed to allege that any conduct by DMI S.A. -- whatever that unalleged conduct might have been -- was a substantial factor in the terrorist attacks on September 11, 2001. They do not specifically aver that DMI S.A. gave funds to or otherwise provided material support to any of the terrorists who carried out those attacks or anyone who assisted them in doing so. Moreover, apart from baldly conclusory assertions contained in their recited causes of action, <u>see</u> FAC ¶¶ 600, 606, 608, 611, 617, 625, 629, 632, 636-37, 640, plaintiffs do not assert that the horrific events of September 11 were the direct and foreseeable result of any action by DMI S.A., and cannot do so because, again, Plaintiffs have not alleged that DMI S.A. engaged in any particular conduct at all. In short, plaintiffs have failed to tender any allegation against DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

       Instead, plaintiffs proffer conclusory, blanket allegations of causation in connection with their various causes of action, ostensibly applicable to all defendants without distinction (and again, DMI S.A. is nowhere mentioned in the Complaint). <u>See</u>, <u>e.g.</u>, FAC ¶ 600 (as to trespass claim, "the September 11th Attack was a direct, intended and foreseeable product of a larger conspiracy among the defendants to commit acts of international terrorism against the United States"); <u>id.</u> ¶ 617 (as to claim for infliction of emotional distress, "[a]s a direct and proximate result of the defendants' intentional, malicious, willful, unconscionable, reckless and/or negligent actions, plaintiffs' assignors have suffered and will continue to suffer severe and permanent emotional distress and anxiety"); <u>id.</u> ¶ 625 (as to RICO claim, "the damages suffered by plaintiffs and plaintiffs' assignors . . . were the direct and proximate result of the aforesaid pattern of racketeering activity by the defendants"). These indiscriminate, "catch-all" averments cannot suffice to plead proximate causation. <u>See</u> <u>American Express</u>, 39 F.3d at 400 n.3; <u>DeJesus</u>, 87 F.3d at 70; <u>see also</u> <u>Papasan v. Allain</u>, 478 U.S.

265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Thus, these generalized allegations cannot rescue plaintiffs' claims from the requirements of Rule 12(b)(6).

**B.  Plaintiffs Have Failed To Plead Facts Sufficient To Make Out Any Of The Twelve Causes Of Action Against DMI S.A.**

Plaintiffs also have failed to plead properly any of the twelve causes of action against DMI S.A. because, in addition to their failure to plead causation, plaintiffs have completely failed to allege more specific facts necessary to make out their causes of action. Even under the lenient notice pleading standard, neither inferences unsupported by specific factual allegations nor legal conclusions cast as factual allegations suffice to state a claim. See Smith, 291 F.3d at 240; York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); DeJesus, 87 F.3d at 70; In re Livent, Inc. Noteholders Secs. Litig., 151 F.Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the factual pleadings in the complaint must be sufficient to state all the requisite elements of a given theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F.Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.") (internal citations and quotations omitted); see also Burnett v. Al Baraka Inv. and Dev. Corp., 274 F.Supp.2d 86, 103 (D.D.C. 2003) ("Burnett I") (court may accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations).

Thus, the boilerplate, conclusory allegations contained in plaintiffs' RICO Statement, see RICO Statement ¶¶ 5-14, cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- that DMI S.A. ever actually *did* anything to cause the injuries for which plaintiffs

now seek redress.  See Smith, 291 F.3d at 240; DeJesus, 87 F.3d at 70; In re Cendant, 190 F.R.D. at 335.  Apart from such legal boilerplate masquerading as factual allegations, plaintiffs have entirely failed to plead *any* of the many elements of their twelve causes of action.  While plaintiffs are not required to allege a full *prima facie* case to survive a Rule 12(b)(6) motion, in the absence of any factual allegations at all, DMI S.A. is again left with no notice as to the basis for plaintiffs' claims against it.  For this reason as well, plaintiffs have failed to meet even the liberal requirements of Fed. R. Civ. P. 8(a), and the claims against DMI S.A. must be dismissed.

       1.     RICO  (Count VIII).

      Judge Robertson, in Burnett I, dismissed plaintiffs' RICO claims for lack of standing. See Burnett I, 274 F. Supp. 2d at 100-02.  That holding was clearly correct, and DMI S.A. urges the Court to adopt it in this action as well.  See id. (citing cases); Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2nd Cir.1984) (RICO claim may only be brought for proprietary injury; "a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which [RICO] permits suit").

      The plaintiffs also have entirely failed to properly plead their RICO claims against DMI S.A.  To state a claim for a civil violation of RICO, a plaintiff must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d. Cir. 1983). Where a plaintiff cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  See, e.g., Moss, 719 F.2d at 18-19 (dismissing RICO action where complaint contained no valid allegation of fraud).

      Once more, plaintiffs' sparse allegations regarding DMI S.A., even if true, would establish *none* of the requisite elements of a civil RICO claim.  Neither the Complaint nor the RICO

Statement alleges any predicate acts or any facts that could show an agreement to commit predicate acts by DMI S.A.  Plaintiffs allege no facts showing that DMI S.A. engaged in any 'pattern' of 'racketeering activity'; no facts that could imply assent by DMI S.A. to any alleged RICO conspiracy; no overt acts by DMI S.A. in furtherance of any alleged conspiracy; and no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise.'  Plaintiffs' statements of legal conclusions couched as factual allegations, see RICO Statement ¶¶ 5-14, therefore do not state any RICO claims against DMI S.A.[6]  See, e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim"). And again, plaintiffs have failed to plead proximate causation as to DMI S.A.

        2.    <u>Conspiracy (Count VII).</u>

To state a cause of action for conspiracy under New York law, plaintiffs must allege (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting injury.[7]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc.2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. Mar 11, 1980).

Plaintiffs here assert, again in conclusory fashion, that DMI S.A. "conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, which conspiracy culminated in the Attack" and "agreed to commit more than

---

[6] Plaintiffs' conclusory legal assertion that DMI S.A. engaged in "money laundering," for instance, does not substitute for allegations of facts sufficient to show that 1) DMI S.A. conducted a financial transaction in interstate commerce; 2) DMI S.A. knew that the property involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000).

[7] Pennsylvania and Virginia law do not materially differ from New York law as to the basic requirements of a conspiracy claim.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Penn. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

two predicate acts, *i.e.*, multiple acts of murder and arson." see RICO Statement ¶ 5. These

incantations are entirely insufficient to make out an assertion of tortious conspiracy. To do so,

> [t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."

See Flanagan v. Shively, 783 F. Supp. 922 (M.D. Penn. 1992); accord, Alexander & Alexander of

New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-03 (1986) (requiring

allegation of explicit agreement); Board of Dirs. of the Lesner Pointe Condominium v. Harbour

Point Bldg. Corp., 2002 WL 32072394, *8 (Va. Cir. Ct.) (same); see also In re NASDAQ Market-

Makers Antitrust Litig., 894 F.Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations

insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide

notice to the potential defendants."), citing Associated Gen. Contractors, Inc. v. California State

Council of Carpenters, 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17 (1983) ("Certainly in a case

of this magnitude, a district court must retain the power to insist on some specificity in pleading

before allowing a potentially massive factual controversy to proceed."); Twombly v. Bell Atlantic

Corp., 313 F.Supp.2d 174, 181 (S.D.N.Y. 2003) ("holding that plaintiffs must allege facts to support

claims of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit").

    In this case, the Complaint alleges *no* communications or consultations of *any* kind by

*any* personnel of DMI S.A., let alone communications from which one might infer the company's

assent to a conspiracy to "commit an act of deadly aggression against the United States[, including]

multiple acts of murder and arson." Furthermore, the Complaint alleges *no* overt acts by DMI S.A.

in furtherance of the purported conspiracy, and no intentional participation in furtherance of the

plan, as required under New York law. See, e.g., 8 N. Y. Jur., Conspiracy, § 4. In sum, plaintiffs

have proffered no cognizable basis whatsoever for their conspiracy claims against DMI S.A.

3.     Aiding and Abetting  (Count IX).

To state a cause of action in New York for aiding and abetting, plaintiffs must allege that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in its commission.[8]  See Pittman, 149 F.3d at 123; Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that "defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").  The allegations in the Complaint and the RICO Statement do not even begin to establish such knowing and substantial assistance by DMI S.A.  Plaintiffs' conclusory, blanket allegation that "[t]he September 11 attack was a direct, intended and foreseeable product of the aiding and abetting of al Qaida by the co-defendants" see FAC ¶ 632, and their unsupported, conclusory assertion that DMI S.A. "agreed to and did aid and abet" al Qaeda, see RICO Statement ¶ 14, do not suffice to state a claim against DMI S.A.  See, e.g., Johnston v. Norton, 1993 WL 465333, *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting or conspiracy are not enough" to state claim).

4.     Anti-Terrorism Act  (Count X).

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff or his/her estate may bring a private cause of action for threefold damages plus costs, where (i) plaintiff is a national of the United States, and (ii) was injured in his/her person, property, or business, (iii) due to international terrorism.  18 U.S.C. §§ 2331-2333 (2000); U.S. v. Yousef, 327 F.3d 56, 116-18 (2nd Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F.Supp.2d 217, 220-222 & n.5 (S.D.N.Y. 2003).[9]  Plaintiffs have alleged no facts that could support a finding of proximate cause in support of their ATA claim against DMI S.A.  Furthermore, plaintiffs have

---

[8]     The elements of an aiding and abetting claim do not differ under Pennsylvania and Virginia law. See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

[9]     Additionally, since the ATA is available only to U.S. nationals, all plaintiffs's assignors who are not U.S. nationals lacked standing to bring their ATA claims, and plaintiffs' claims as subrogees of those assignors thus should be dismissed.  See, e.g., Burnett I, 274 F. Supp. 2d at 105.

proffered no specific, cognizable allegation that DMI S.A. engaged in any actions constituting "international terrorism" or that DMI S.A. did so knowingly, as the ATA has been held to require. See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1012, 1023 (7th Cir. 2002) (requiring allegations of proximate cause; noting that "[t]o say that funding *simpliciter* constitutes an act of terrorism is to give the statute an almost unlimited reach"; and holding that defendants therefore must be alleged to have acted knowingly in order to be held liable under the ATA); Burnett I, 274 F.Supp.2d at 106 (ATA claim requires knowledge and intent to further violent acts; and those violent acts must be reasonably foreseeable result of defendant's actions); Smith v. Afghanistan, 262 F.Supp.2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts and proximate cause.").

5.     Trespass (Count I).

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner. The act must be intentional and the damages a direct consequence of the defendant's act." Tornheim v. Federal Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997). Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant. See In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[10] Here, again, plaintiffs have alleged no facts that, if proven, could show that DMI S.A. intended any trespass, or even that DMI S.A. committed any wrongful act that resulted in any trespass.

---

[10]   The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant"); A.J. Cunningham Packing Corp. v. Congress Fin. Corp., 792 F.2d 330, 334 & n.4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

6.  <u>Wrongful Death  (Count II).</u>

For plaintiffs to maintain a wrongful death claim under New York law,[11] they must allege, through a properly appointed personal representative, that a defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death.  <u>See</u> N.Y. E.P.T.L. § 5-4.1(1).  Here, again, plaintiffs have not only failed to allege any *wrongful* acts by DMI S.A., they have failed to allege any specific conduct by DMI S.A. whatsoever.  Furthermore, plaintiffs proffer nothing to support the proposition that any actions of DMI S.A. proximately caused the deaths of the victims of the attacks on September 11, 2001.  Plaintiffs do make the conclusory, global allegation that "[a]s a result of the September 11th Attack, certain of plaintiffs' insureds' employees were killed."  <u>See</u> FAC ¶ 605.  As set forth above, however, no wrongful act, neglect, or default by DMI S.A. is alleged.  That conclusory allegation therefore cannot suffice to make out plaintiffs' claims for wrongful death.  <u>See</u>, <u>e.g.</u>, <u>Guadagnoli v. Seaview Radiology, P.C.</u>, 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegation of negligence); <u>see</u> <u>also</u> <u>DeJesus</u>, 87 F.3d at 70.

7.  <u>Survival (Count III).</u>

The New York Estate Powers & Trusts Law governs survival actions in the State of New York and permits the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death.  N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001).  The statutes and the courts require that, for a personal representative plaintiff to maintain a survival claim, he must allege that an underlying tort was committed by a defendant against the deceased prior to death.  <u>See</u> N.Y. E.P.T.L. §11-3.3 (McKinney 2001), Practice Commentary; <u>Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity</u>, 506 N.Y.S.2d 174, 179 (2d Dep't 1986).  As is detailed throughout this Memorandum, plaintiffs have not properly alleged any underlying tort by DMI S.A.

---

[11]  The wrongful death statutes of Pennsylvania and Virginia do not differ substantially from that of New York.  <u>See</u> 42 Pa. Cons. Stat. § 8301 (requiring personal representative and wrongful act or neglect or unlawful violence or negligence of another causing death of decedent); Va. Code Ann. §§ 8.01-50 (same).

8.      Assault & Battery  (Count IV).

"Under New York law, 'an assault is an intentional placing of another person in fear of imminent harmful or offensive contact.  A battery is an intentional wrongful physical contact with another person without consent.'"  Girden v. Sandals International, 262 F.3d 195, 204 (2nd Cir. 2001) (internal citation omitted).  "The gravamen of an action for assault and battery under New York law is the intent to make contact."  Miele v. U.S., 800 F.2d 50, 53 (2nd Cir. 1986).[12]  Again, plaintiffs have alleged no facts that, if proven, could show that DMI S.A. intended any assault or battery, or even that DMI S.A. committed any wrongful act that resulted in any assault or battery.[13]

9.      Intentional and/or Negligent Infliction of Emotional Distress
         (Count V).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress.  See Howell v. New York Post Co., 81 N.Y.2d 115, 120-22, 612 N.E.2d 699, 702 (1993); Papieves v. Lawrence, 437 Pa. 373, 378-79, 263 A.2d 118, 121 (1970); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 136-37, 523 S.E.2d 826, 833 (2000).  As noted, the FAC contains no allegation of any particular conduct by DMI S.A., much less any allegation of extreme and outrageous conduct sufficient to give rise to this claim.  The FAC also contains no allegations of facts that could give rise to an inference of intent or recklessness, and no proper allegation of causation.  Mere conclusory allegations are insufficient as a matter of law to support a

---

[12]  The laws of Virginia and Pennsylvania do not materially differ.  See Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001); Park v. Shiflett, 250 F.3d 843, 852 (4th Cir. 2001); Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960) (assault); Levenson v. Souser, 557 A.2d 1081, 1088 (Pa. Super. 1989) (battery).  The laws of New York, Virginia, and Pennsylvania all require the defendant's intent to commit the tort.  See Girden, 262 F.3d at 203; Park, 250 F.3d at 852; Cucinotti, A.2d at 217; Levenson, 557 A.2d at 1088.

[13]  Moreover, under New York law, plaintiffs' claim is time-barred because the original complaint was not filed until September 10, 2003, nearly two years after the 9/11 attacks.  See N.Y. C.P.L.R. § 215(3) (action to recover damages for assault and battery shall be commenced within one year); see also Great American Insurance Co. v. United States, 575 F.2d 1031, 1033 (2d Cir. 1978) (subrogee is subject to the same statute of limitations as insured).

cause of action for intentional infliction of emotional distress.  See, e.g., Ruffolo v. Oppenheimer & Co., Inc., 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991); Talmor v. Talmor, 185 Misc.2d 293, 297, 712 N.Y.S.2d 833, 836 (N.Y. Sup. 2000).  Plaintiffs' claims for *negligent* infliction of emotional distress should be dismissed for all the reasons set forth in Part II.B.11, *infra*.  See Mortise v. United States, 102 F.3d 693, 696 (2nd Cir. 1996) (breach of recognized duty essential element of negligent infliction of emotional distress claim under both 'bystander' and 'direct duty' theories).[14]

10.    Torture Victims Protection Act (Count VI).

A plaintiff may bring a private cause of action under the Torture Victims Protection Act, 28 U.S.C. § 1350, note §2(a) ("TVPA"), by alleging that (i) an individual, (ii) under actual or apparent authority, or color of law, of any foreign nation, (iii) subjected another individual to extrajudicial killing or torture.  28 U.S.C.A. § 1350, note § 2(a) (1993); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 152-54 (2nd Cir. 2003); Kadic v. Karadzic, 70 F.3d 232, 245 (2nd Cir. 1995), reh'g denied, 74 F.3d 377 (2nd Cir. 1996); Filartiga v. Pena-Irala, 630 F.2d 876 (2nd Cir. 1980).  None of the above factual predicates has been alleged by plaintiffs here.  Since DMI S.A. is a company, not an individual, the TVPA does not apply.  See Beanal v. Freeport-McMoRan, Inc., 969 F. Supp 362 381-82 (E.D. La. 1997), aff'd on other grounds, 197 F.3d 161 (5th Cir. 1999); Friedman v. Bayer Corp., 1999 WL 33457825, *2 (E.D.N.Y. Dec. 15, 1999).  Moreover, there is no allegation that any action by DMI S.A. -- whatever such unalleged action might have been -- was taken under color of foreign law.  See Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 19-20 (D.D.C. 2000), aff'd, 2002 WL 1052012 (D.C. Cir. 2002).  And again, plaintiffs have proffered nothing more than a non-cognizable legal conclusion regarding causation.

11.    Negligence (Count XI).

Plaintiffs' claims for negligence require them to allege (i) the existence of a duty owed by defendant to plaintiff, (ii) the breach of this duty, (iii) proximate causation of the resulting

---

[14]    Pennsylvania and Virginia law do not materially differ from New York law on this point.  See Sinn v. Burd, 486 Pa. 146, 155-173, 404 A.2d 672, 677-686 (1979); Hughes v. Moore, 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973).

injury, and (iv) actual damages.  See Becker v. Schwartz, 46 N.Y.2d 401, 410, 386 N.E.2d 807 (1978),

citing Restatement (Second) of Torts § 281 (1965); Martin v. Evans, 551 Pa. 496, 501, 711 A.2d 458,

461 (1998); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000).

In the instant case, the plaintiffs cannot allege that DMI S.A. owed them any duty of care.  It is

settled law that financial institutions owe no duty to non-customers to prevent wrongful acts of a

bank customer.  See Renner v. Chase Manhattan Bank, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3,

1999) (dismissing negligence claim against bank and finding no duty to prevent bank's customer

from defrauding plaintiff); Cohen v. Standard Bank Inv. Corp., Ltd., 1998 WL 782024, at *7

(S.D.N.Y., Nov. 6, 1998) (same); Burnett I, 274 F. Supp. 2d 86, 109 ("Plaintiffs offer no support,

and we have found none, for the proposition that a bank is liable for injuries done with money that

passes through its hands in the form of deposits, withdrawals, check clearing services, or any other

routine banking service."); see also Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 225 (4th Cir.

2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a

noncustomer with whom the bank has no direct relationship.").  Plaintiffs also do not properly

allege a breach of any such duty of care by DMI S.A. -- since plaintiffs allege no wrongful act or

omission by DMI S.A. at all -- or proximate causation of their injuries.

        12.    Punitive Damages  (Count XII).

        Finally, plaintiffs also have failed to state a claim for punitive damages, because

punitive damages are a form of relief and not an independent cause of action.  See Cooper Indus.,

Inc. v. Leatherman Tool Group, 532 U.S. 424, 432 (2001); Smith v. County of Erie, 295 A.D.2d

1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

# III

## PLAINTIFFS' CLAIMS SHOULD
## BE DISMISSED WITH PREJUDICE.

        Plaintiffs' action is now over a year old, and plaintiffs have filed two Complaints and

a RICO Statement in support of their claims against DMI S.A.  Nevertheless, as demonstrated

throughout this Memorandum, plaintiffs' failure to make out any of their numerous claims against

DMI S.A. is as complete as one could imagine.  There is no indication, within or outside of the four corners of the FAC, that plaintiffs will in good faith be able to cure these defects, and no reasonable prospect that plaintiffs will be able to remedy this total failure to properly plead any of their twelve claims against DMI S.A.  Accordingly, each and every one of those claims should be dismissed with prejudice.  See e.g., Electronic Communications Corp. v. Toshiba America, 129 F.3d 240, 246 (2nd Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile); Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2nd Cir. 2003) (leave to amend not warranted where amendment would be futile).

## CONCLUSION

DMI S.A. is deeply sympathetic to the injuries suffered by plaintiffs' assignors, and acknowledges the difficulty that plaintiffs must face in presenting claims of such scope and gravity. Precisely because of the gravity of their claims, however, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI S.A., and for haling DMI S.A. before this Court.  They have not done so.  For that reason and all the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
　　　  October 15, 2004

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:　　　   /s/
　　  James J. McGuire (JM-5390)

30 Rockefeller Plaza
New York, New York 10112
(212) 332-3800
*Attorneys for Defendant*
 *DMI Administrative Services S.A.*

Tim McCarthy
　 Of Counsel