**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) ) | **Civil Action No. 03 MDL 1570 (RCC)** |

This document relates to:

|  |  |  |
|---|---|---|
| FEDERAL INSURANCE CO., et al., Plaintiffs, v. AL QAIDA, et al., Defendants. | ) ) ) ) ) ) ) ) ) | **Civil Action No. 03 CV 6978 (RCC)** |

and

|  |  |  |
|---|---|---|
| VIGILANT INSURANCE CO., et al., Plaintiffs, v. KINGDOM OF SAUDI ARABIA, et al., Defendants. | ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 03 CV 8591 (RCC)** |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF
THE KINGDOM OF SAUDI ARABIA**

KELLOGG, HUBER, HANSEN,
 TODD & EVANS, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Michael J. Guzman (MG9623)
Paul B. Matey (PM2093)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

October 15, 2004

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................................2

    I.    The Kingdom Of Saudi Arabia Is A Sovereign Nation Entitled To Immunity From Suit Under The FSIA Unless One Of The FSIA's Designated Exceptions Applies ...............................................................................2

    II.    Plaintiffs Make No Allegation Against The Kingdom Of Saudi Arabia Supporting An Exception To FSIA Immunity ...........................................................5

        A.    Plaintiffs' Allegations Are Grounded on the Terrorism Exception, Which Cannot Apply to the Kingdom of Saudi Arabia ...............................5

        B.    The Non-Commercial Torts Exception Is Inapplicable to Discretionary Functions ................................................................................6

        C.    Plaintiffs Identify No Commercial Activity as Defined Under the FSIA ...............................................................................................................8

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

Arriba Ltd. v. Petroleos Mexicanos,
 962 F.2d 528 (5th Cir. 1992) ........................................................................................7

Berkovitz v. United States,
 486 U.S. 531 (1988)........................................................................................................7

Burnett v. Al Baraka Inv. & Dev. Corp.,
 292 F. Supp. 2d 9 (D.D.C. 2003) ..........................................................................6, 7, 8

Cabiri v. Republic of Ghana,
 165 F.3d 193 (2d Cir. 1999)..........................................................................................3

El-Fadl v. Central Bank of Jordan,
 75 F.3d 668 (D.C. Cir. 1996) ........................................................................................7

Filetech S.A. v. France Telecom S.A.,
 157 F.3d 922 (2d Cir. 1998)..........................................................................................7

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
 905 F.2d 438 (D.C. Cir. 1990) ..................................................................................4, 7

Frolova v. Union of Soviet Socialist Republics,
 761 F.2d 370 (7th Cir. 1985) ........................................................................................3

HCSC Laundry v. United States,
 450 U.S. 1 (1981)............................................................................................................6

Kline v. Kaneko,
 685 F. Supp. 386 (S.D.N.Y. 1988)................................................................................9

Letelier v. Republic of Chile,
 748 F.2d 790 (2d Cir. 1984)..........................................................................2, 4, 8, 9

Moran v. Kingdom of Saudi Arabia,
 27 F.3d 169 (5th Cir. 1994) ..........................................................................................2

Republic of Argentina v. Weltover, Inc.,
 504 U.S. 607 (1992)........................................................................................................8

Robinson v. Government of Malaysia,
 269 F.3d 133 (2d Cir. 2001)..........................................................................................7


Saudi Arabia v. Nelson,
  507 U.S. 349 (1993)..........................................................................................2, 8, 9

Shapiro v. Republic of Bolivia,
  930 F.2d 1013 (2d Cir. 1991)......................................................................................3

United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),
  467 U.S. 797 (1984).......................................................................................................7

Virtual Countries, Inc. v. Republic of South Africa,
  300 F.3d 230 (2d Cir. 2002)........................................................................................7

**STATUTES AND RULES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 et seq..........................................1

  28 U.S.C. § 1603(a) ...................................................................................................3

  28 U.S.C. § 1603(d) ...................................................................................................8

  28 U.S.C. § 1604.........................................................................................................2

  28 U.S.C. § 1605(a)(2).......................................................................................4, 6, 8, 9

  28 U.S.C. § 1605(a)(5)..........................................................................................4, 6

  28 U.S.C. § 1605(a)(5)(A) ...........................................................................................6

  28 U.S.C. § 1605(a)(7)......................................................................................4, 5, 6

  28 U.S.C. § 1605(a)(7)(A) ...........................................................................................5

S.D.N.Y. Indiv. R. Prac. 2(c)..............................................................................................5

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 94-1487 (1976), reprinted in 1976 U.S.C.C.A.N. 6604......................................8, 9

**OTHER MATERIALS**

The 9/11 Commission Report: Final Report of the National Commission on Terrorist
    Attacks Upon the United States (July 2004) ............................................................. 7, 8, 9

U.S. Dep't of State, Interview on Al Arabiya With Lukman Ahmed (Sept. 15, 2004),
    available at http://www.state.gov/secretary/rm/36226.htm ................................................. 5

U.S. Dep't of State, Press Briefing With Saudi Arabian Foreign Minister Prince Saud Al-
    Faisal (Mar. 19, 2004), available at http://www.state.gov/secretary/rm/30623.htm ........... 5

The Kingdom of Saudi Arabia supported its motion to dismiss the claims asserted by the Federal Insurance plaintiffs[1] with two straightforward points.  First, the Kingdom is, without question, a sovereign nation immune from the jurisdiction of the United States courts under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 et seq. (the "FSIA"), unless one of the FSIA's designated exceptions applies.  Second, because the Kingdom is not a "state sponsor of terrorism," and because plaintiffs' allegations do not fall within the plain meaning of the exceptions to FSIA immunity for non-commercial torts or commercial activities, the Kingdom is immune from suit in this matter and must be dismissed as a defendant.

Plaintiffs' brief in response fails to address either of these points.  Instead, plaintiffs devote their opposition to an entirely irrelevant claim: that various charitable organizations should be deemed agencies, instrumentalities, or organs of the Kingdom such that the Kingdom is "legally responsible" for the conduct of those charitable organizations.  Pls. Br. 7-8.  But the alleged status of various charities must be determined in the context of the claims brought against those charities.  The purely legal question here is whether the Kingdom itself can be properly named as a defendant in this suit.  And that question can only be determined through the very examination that plaintiffs eschew, of the enumerated exceptions to the immunity guaranteed to the Kingdom of Saudi Arabia under the FSIA.

Plaintiffs do not refute, or even challenge, the Kingdom's showing that none of the exceptions to sovereign immunity for state sponsors of terrorism, non-commercial torts, or commercial activities applies to the allegations in their complaint.  The Kingdom of Saudi Arabia thus remains immune from the claims alleged in this matter and must be dismissed as a defendant.

---

[1] By agreement of the parties, the Kingdom's motion to dismiss applies to the complaint filed by the Federal Insurance plaintiffs, Case No. 03 CV 6978 (RCC), and Vigilant Insurance Co., et al. v. Kingdom of Saudi Arabia, et al., Case No. 03 CV 8591 (RCC).

**ARGUMENT**

I.  **The Kingdom Of Saudi Arabia Is A Sovereign Nation Entitled To Immunity From Suit Under The FSIA Unless One Of The FSIA's Designated Exceptions Applies**

The FSIA establishes a general rule that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  Plaintiffs do not, and of course could not, dispute that the Kingdom of Saudi Arabia is a foreign sovereign, and presumptively immune from suit under § 1604.  See, e.g., Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994).  Accordingly, the Kingdom is immune from this suit "unless the conduct complained of comes within the exceptions set forth" in the FSIA.  Letelier v. Republic of Chile, 748 F.2d 790, 793 (2d Cir. 1984).

Plaintiffs ignore this latter requirement and instead wander through a series of anecdotes and allegations regarding a collection of charitable entities named as defendants in their complaint.  Plaintiffs' focus on the alleged conduct of these entities, however, simply misapprehends the statutory framework of the FSIA.  Some of the entities discussed in plaintiffs' opposition (at 8) – specifically, the Saudi High Commission, the Saudi Joint Relief Commission, and the Saudi Red Crescent Society – are indeed agencies or instrumentalities of the Kingdom of Saudi Arabia.  Others – including the Muslim World League, International Islamic Relief Organization, World Assembly of Muslim Youth, Al Haramain Islamic Foundation, Inc., Rabita Trust, Benevolence International Foundation – are not.  But the line of distinction between the two groups is irrelevant for purposes of this motion.  At issue here is the FSIA immunity of the sovereign Kingdom of Saudi Arabia.  The only question for purposes of this motion is not

whether plaintiffs can maintain a suit against the Muslim World League or even the Saudi High Commission, but whether they can maintain a suit directly against the Kingdom of Saudi Arabia. And the answer to that question – which plaintiffs barely address – is clearly and emphatically "No."

Plaintiffs' suggestion that the Kingdom has somehow "waived" its sovereign immunity because the various non-governmental entities listed above omitted any reliance on the FSIA in their filings before this Court is absurd. Because they are not sovereign entities, those charities would have had no basis for asserting an FSIA defense. In any event, their independent litigation conduct cannot affect plaintiffs' claims against the sovereign itself, which plainly and at all times has maintained its immunity from suit.[2]

The factual details of the relationship between the Kingdom of Saudi Arabia and the charities listed by plaintiffs are accordingly irrelevant to the present motion. Plaintiffs chose to

---

[2] As the Second Circuit has noted, the "[f]ederal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991) (collecting cases). Congress anticipated, at a minimum, that " 'waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so.' " Cabiri v. Republic of Ghana, 165 F.3d 193, 201 (2d Cir. 1999) (quoting Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 378 (7th Cir. 1985) (per curiam)). Plaintiffs' claim that the pleadings filed by certain charitable organizations, and not the Kingdom itself, could waive the Kingdom's right to assert its immunity from suit in this, or any future motion, is nowhere near the narrow exception intended by Congress and recognized by the courts.

Even if the Court were ultimately to determine that one of the listed charities that the Kingdom considers to be non-governmental was more properly viewed as an "agency or instrumentality" of the Kingdom, the Kingdom would still enjoy immunity from suit under the FSIA because none of the exceptions to that immunity applies. The FSIA specifically defines a "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state," 28 U.S.C. § 1603(a), and in this case the foreign state is asserting its complete immunity from suit, a claim that extends to any derivative liability based on the actions of its agencies and instrumentalities. The Kingdom's good-faith assertion that certain charities are non-governmental is not sufficient to constitute a waiver of the Kingdom's immunity, even if the Court should ultimately conclude that one or more of those charities is more properly viewed as governmental.

3

name the Kingdom of Saudi Arabia as a defendant in this suit. The FSIA makes clear that the Kingdom is immune from this action and must be dismissed as a defendant *unless* plaintiffs demonstrate an applicable exception to this presumptive immunity. The availability of FSIA immunity must be determined through analysis of the complaints' allegations against the Kingdom itself, not the governmental or non-governmental status of any other entities named as defendants. See Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990) ("Subject matter jurisdiction in a civil action against a foreign sovereign depends on whether one of the exceptions to immunity applies."); Letelier, 748 F.2d at 795 (dismissing suit under FSIA because, "[e]ven assuming" that national airline was entity of a foreign state, plaintiffs failed to demonstrate relevant exception to immunity).[3] The purely legal question raised in this motion to dismiss remains unchanged by plaintiffs' response, and Saudi Arabia must be dismissed because none of the statutory exceptions to immunity – state sponsors of terrorism, § 1605(a)(7), non-commercial torts committed in the United States, § 1605(a)(5), or commercial activities, § 1605(a)(2) – applies to the allegations in plaintiffs' suit.

---

[3] In any event, the allegations against these entities – that they provided material support and resources to terrorism – are precisely the same as the allegations against the Kingdom itself. And, as we demonstrated in our opening brief and explain further below, those allegations are insufficient to trigger an exception to FSIA immunity. Thus, *if* the non-governmental entities listed above *were* agencies of instrumentality of the Kingdom, they too would be entitled to FSIA immunity. Plaintiffs cannot have it both ways: relying on their non-governmental status as a basis for proceeding with their suit and yet claiming that the Kingdom is ultimately responsible for these entities. Nor is the Kingdom trapped in a Catch 22 in which it must either claim instrumentality status for entities that it does not believe qualify or be taken as waiving the Kingdom's own immunity.

## II.     Plaintiffs Make No Allegation Against The Kingdom Of Saudi Arabia Supporting An Exception To FSIA Immunity[4]

### A.     Plaintiffs' Allegations Are Grounded on the Terrorism Exception, Which Cannot Apply to the Kingdom of Saudi Arabia

Plaintiffs argue that the Kingdom is liable for injuries resulting from the September 11 terrorist attacks because Saudi officials used their governmental positions to "channel financial and logistical support" to Al-Qaeda.  Pls. Br. 1, 4.  The FSIA, however, explicitly conditions the removal of sovereign immunity in a suit arising from an act of terrorism on an official designation of the state in question as a "state sponsor of terrorism."  28 U.S.C. § 1605(a)(7)(A).  The State Department has not so designated the Kingdom of Saudi Arabia, and plaintiffs do not suggest otherwise.  To the contrary, Secretary of State Colin L. Powell has stated that the United States and Saudi Arabia are "united in the war against terror."  U.S. Dep't of State, Press Briefing With Saudi Arabian Foreign Minister Prince Saud Al-Faisal (Mar. 19, 2004) (Statement of Secretary Colin L. Powell), available at http://www.state.gov/secretary/rm/30623.htm; see also U.S. Dep't of State, Interview on Al Arabiya With Lukman Ahmed (Sept. 15, 2004) (Statement of Secretary Colin L. Powell) ("Saudi Arabia is a great friend of the United States and has been for many years and we have nothing but the highest respect for the . . . Government of Saudi Arabia."), available at http://www.state.gov/secretary/rm/36226.htm.  Thus, plaintiffs have no legal basis for arguing that the Kingdom of Saudi Arabia does not enjoy sovereign immunity under § 1605(a)(7), and cannot evade the need for State Department designation by

---

[4] In violation of the briefing requirements specified by Case Management Order ¶ 23 and Rule 2(c) of the Court's Individual Rules of Practice, plaintiffs largely decline to address the arguments regarding the exceptions to the FSIA raised in the Kingdom's motion to dismiss, and instead "incorporate by reference" their arguments in opposition to motions by other defendants. To the extent that the Court permits such incorporation by reference, plaintiffs' referenced arguments are fully refuted in the reply briefs filed in support of the motions to dismiss of HRH Prince Turki Al-Faisal bin Abdulaziz Al-Saud and the Saudi High Commission.

5

invoking either the non-commercial torts exception in § 1605(a)(5) or the commercial activities exception in § 1605(a)(2).

As noted by Judge Robertson, § 1605(a)(7) applies to any act of terrorism for which a foreign state provides "material support or resources." See Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 20 n.5 (D.D.C. 2003). The only limitation that Congress specified on the reach of this provision is that the state in question must be designated as a state sponsor of terrorism by the State Department. To read other FSIA exceptions as plaintiffs urge – to include acts in support of terrorism committed by a foreign state – obviates the need for the State Department to determine whether the foreign state sponsors terrorism. That result is foreclosed by Congress's specific legislative choice to confer that important role on the State Department. "[I]t is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . , particularly when the two are interrelated and closely positioned." HCSC Laundry v. United States, 450 U.S. 1, 6 (1981) (per curiam). Allowing plaintiffs to sue the Kingdom of Saudi Arabia simply by citing § 1605(a)(5) or § 1605(a)(2), instead of § 1605(a)(7), would render § 1605(a)(7) meaningless and launch the very kinds of suits that Congress sought to prevent against foreign states that have *not* been designated sponsors of terrorism.

### B. The Non-Commercial Torts Exception Is Inapplicable to Discretionary Functions

Even aside from plaintiffs' attempted end-run around the requirements of § 1605(a)(7), the non-commercial torts exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). Although plaintiffs repeatedly attack the Kingdom's policy of supporting Islamic charities as a basis for removing the immunity provided by the FSIA, such decisions are classic discretionary functions, which "involve[] an element of

judgment" or "choice" based on "considerations of public policy." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984). As Judge Robertson explained, activities such as considering "requests for assistance from Islamic organizations outside Saudi Arabia" and "deciding what disbursements should be made to Islamic charitable organizations" are "squarely covered by the 'discretionary function' language" of the FSIA. Burnett, 292 F. Supp. 2d at 20-21.

Even if such activities were not, as a matter of law, "squarely covered" by the discretionary function exception, plaintiffs have failed to meet their burden of presenting "evidence" that the Kingdom in any way supported Al-Qaeda or the September 11 attacks.[5] Indeed, plaintiffs' allegations have already been rejected by the Final Report of the National Commission on Terrorist Attacks Upon the United States ("9/11 Report"), which, after an exhaustive investigation, flatly concluded that "we have found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al-Qaeda. 9/11 Report at 171. The 9/11 Report further concludes that "we have seen no evidence that any foreign government – or foreign government official – supplied any funding" to the September

---

[5] The law is absolutely clear that, in resolving immunity claims under the FSIA, a district court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Instead, where a defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) (internal quotation marks and emphasis omitted). The Second Circuit has also made clear that discovery against a sovereign entitled to immunity under the FSIA will not be permitted based on "generic allegations." Robinson v. Government of Malaysia, 269 F.3d 133, 146 (2d Cir. 2001); see also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (explaining that allowing discovery prior to dismissal "would 'frustrate the significance and benefit of entitlement to immunity from suit' ") (quoting Foremost-McKesson, 905 F.2d at 449); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 536-37 (5th Cir. 1992) (same).

7

11 hijackers. Id. at 172. Plaintiffs have made no attempt to meet their burden of coming forward with competent evidence to support a contrary conclusion.

### C. Plaintiffs Identify No Commercial Activity as Defined Under the FSIA

Finally, plaintiffs argue that the commercial activity exception of the FSIA applies to the alleged support of charitable organizations by Saudi officials and, hence, eliminates the Kingdom's immunity under § 1605(a)(2). Section 1603(d) defines commercial activities as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The FSIA, however, clearly states that the commercial character of the activity is "determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. The Supreme Court has construed that provision to depend on "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." Nelson, 507 U.S. at 360-61 (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)) (internal quotation marks omitted).

As Judge Robertson concluded in Burnett, the argument that charitable contributions constitute a commercial activity outside of the FSIA "is readily disposed of." 292 F. Supp. 2d at 17. Plainly, "[t]he act of contributing to a foundation is not within our ordinary understanding of 'trade and traffic or commerce.'" Id. at 18. Equally important, charitable contributions were not "within the contemplation of the Congress that enacted the FSIA in 1976." Id. In adopting the commercial activity exception, Congress expected courts to look to the "'essential nature'" of the act in question, and the "legislative history makes clear that courts should not deem activity 'commercial' as a whole simply because certain aspects of it are commercial." Letelier, 748 F.2d at 796 (quoting H.R. Rep. No. 94-1487, at 16 (1976), reprinted in 1976 U.S.C.C.A.N. 6604,

8

6615). Congress thus sought to distinguish between purely commercial acts (such as a "contract to make repairs on an embassy building") and governmental acts that contain some commercial component (such as a state's "mere participation in a foreign assistance program"). H.R. Rep. No. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. 6604, 6615.

Plaintiffs' only answer to this line of authority is to suggest – though only by reference to other pleadings – that the "vast majority" of contributions to "Saudi charities" consisted of laundering funds on behalf of Al-Qaeda. Plaintiffs' suggestion that the Kingdom of Saudi Arabia used third parties to launder funds so as covertly to support the September 11 attacks is nothing short of outrageous. Plaintiffs offer no facts to support this theory and detail no specific transactions by the Kingdom of Saudi Arabia or its officials that would constitute a violation of the federal money laundering statute (indeed, they do not even cite a provision of domestic or international law purportedly violated by the alleged "money laundering"). This lack of detail is hardly surprising given that the 9/11 Report "found no evidence that the Saudi government as an institution or senior Saudi officials individually funded" Al-Qaeda. 9/11 Report at 171.

In any event, plaintiffs' theory is wrong as a matter of law. The Supreme Court, the Second Circuit, and courts within this district have all held that criminal conduct is not an activity by which a private party engages in trade and traffic or commerce, and thus is not a commercial activity under the FSIA. See, e.g., Nelson, 507 U.S. at 361; Letelier, 748 F.2d at 797; Kline v. Kaneko, 685 F. Supp. 386, 391 (S.D.N.Y. 1988). Even if plaintiffs adduced some facts or specific allegations to support their leap from donations to crimes, their allegations would still fail to warrant an exception to Saudi Arabia's sovereign immunity under § 1605(a)(2).

## CONCLUSION

The Kingdom of Saudi Arabia enjoys immunity from suit under the FSIA. Because none of the FSIA's exceptions applies, the case against the Kingdom must be dismissed.

> Respectfully submitted,
>
> KELLOGG, HUBER, HANSEN, TODD
>  & EVANS, P.L.L.C.
>
> _____/s/_____
> Mark C. Hansen (MH0359)
> Michael K. Kellogg (MK4579)
> David C. Frederick (DF4906)
> Michael J. Guzman (MG9623)
> Paul B. Matey (PM2093)
>
> Sumner Square
> 1615 M Street, N.W., Suite 400
> Washington, D.C. 20036-3209
> (202) 326-7900
>
> *Attorneys for The Kingdom of Saudi Arabia*

October 15, 2004

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on this 15th day of October 2004, I caused copies of the <u>Reply in Support of Motion to Dismiss of the Kingdom of Saudi Arabia</u>, to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
Sara J. Mallory