UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001        03 MDL 1570 (RCC)

-------------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

*THOMAS E. BURNETT, SR., ET AL. VS. AL BARAKA*
*INVESTMENT AND DEVELOPMENT CORP., ET AL.*
**03 CV 9849 (RCC); 03 CV 5738 (RCC)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT YASSIN ABDULLAH AL KADI'S MOTION TO DISMISS**

OCTOBER 15, 2004

# TABLE OF CONTENTS

*Page*

I.      INTRODUCTION ..................................................................................................1

II.     SERVICE OF PROCESS WAS EFFECTIVE ON DEFENDANT KADI .................................2

III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT KADI...................5

IV.     THE ATA AND ATCA APPLY TO THIS MATTER ......................................................9

    A.   DEFENDANT'S ARGUMENTS ON THE ATA FAIL ..............................................9

    B.   THE COMPLAINT STATES A CLAIM AGAINST DEFENDANT KADI UNDER THE
         ALIEN TORT CLAIMS ACT ..........................................................................12

        1.   Non-state actors who engage in terrorist acts, crimes against
             humanity, and other egregious acts commit torts in violation of
             customary international law, the law of nations, and the ATCA. ................12

        2.   The attacks of September 11th and the material support of those
             terrorist acts violate customary international law, the law of
             nations and constitute grossly egregious misconduct. ...................13

        3.   Plaintiffs have alleged facts sufficient to state a claim under the
             ATCA.................................................................................16

    C.   DEFENDANT KADI ALLEGES HE CANNOT RECEIVE A FAIR TRIAL IN THE
         UNITED STATES ..........................................................................17

V.      CONCLUSION..................................................................................17

# TABLE OF AUTHORITIES

*Page*

## Cases

*Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) ........................................................ 16

*American Land Co. v. Zeiss*, 219 U.S. 47 (1911) ............................................................... 4

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000)...................................................... 12

*Barrueto v. Larios*, 205 F. Supp. 2d 1325 (S.D. Fla. 2002)............................................... 16

*Blinn v. Nelson*, 222 U.S. 1 (1911) ...................................................................................... 4

*Boim v. Quranic Literacy Institute,* 291 F.3d 1000 (7th Cir. 2002) ........................... 10, 11

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985)............................................................. 6, 7

*Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886
  (1961).................................................................................................................................. 6

*Calder v. Jones*, 465 U.S. 783 (1984)................................................................................. 6

*Chiminya Tachiiona v. Mugabe*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002)......................... 12

*Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000)............................................................. 8

*Doe v. Islamic Salvation Front (FIS),* 993 F. Supp. 3 (D.D.C. 1998) ................. 12, 13, 14

*Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 2003 WL 1740436 (D.D.C.) . 12, 13

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998).................................... 7

*Goodrich v. Ferris*, 214 U.S. 71 (1909)............................................................................... 4

*Grannis v. Ordean*, 234 U.S. 385 (1914).............................................................................. 4

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1973) ...................................................... 10

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ................................................. 16

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .............................................. 5

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995)............................................... 12, 13, 14, 15

*Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002)...................................... 16

*Milliken v. Meyer*, 311 U.S. 457 (1940) .............................................................................. 4

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950)............................................ 3, 4

*Palestine Information Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988)............................. 7

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d
  (S.D.N.Y. 2003)........................................................................................................... 15, 16

*Priest v. Las Vegas*, 232 U.S. 604 (1914)........................................................................... 4

*Roller v. Holly*, 176 U.S. 398 (1900) ................................................................................ 4

*S.E.C. v. Tome*, 833 F.2d 1086 (2nd Cir. 1987) ................................................................ 3

*Smith, et al., vs. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217 (2003) .......... 11, 13

## Other Authorities

45A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure,
§ 1351, at 253-59 (2d ed. 1990) ....................................................................................... 9

## United States Code

18 U.S.C. § 2339C ....................................................................................................... 10, 14

18 U.S.C. §§ 2331-38; Anti-Terrorism Act (ATA) ................................................... passim

28 U.S.C. § 1350; Alien Tort Claims Act (ATCA) ...................................... 12, 13, 14, 16

## Public Laws

Senate Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991) .......... 8

Senate Report on Section 2333(a), S. Rep. 102-342 at 122 ............................................. 10

U.N. Security Council Resolution 1373 (September 28, 2001) ........................................ 14

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) .................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 13

## Restatements

Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S.
Treaty Doc. No. 106-6, at 4, 37 I.L.M. 249, 253 ...................................................... 14

Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16,
1970, 22 U.S.T. 1641 ................................................................................................. 14

International Convention for the Suppression of the Financing of Terrorism, G.A.
Res. 54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999) ........................... 14

*Treasury Department Releases List of 39 Additional Specially Designated Global Terrorists*

*Treasury Office of Foreign Asset Control (OFAC) has added the names of 39 terrorists to its list of Specially Designated Global Terrorists (SDGT). Their assets must be blocked immediately. ... AL-QADI, Yasin (a.k.a. KADI, Shaykh Yassin Abdullah; a.k.a. KAHDI, Yasin), Jeddah, Saudi Arabia (individual)[SDGT].* United States Department of Treasury Press Release on October 12, 2001. Declaration of Michael E. Elsner (or "Plaintiffs' Dec."), Attachment 1.

*The pattern of activity displayed by Mr. Kadi, and his foundation and businesses, is typical of the financial support network of Al Qa'ida and other terrorist organizations.* Correspondence from David D. Aufhauser of the U.S. Treasury Department dated November 29, 2001. Plaintiffs' Dec., Attachment 2.

## I.   INTRODUCTION

Defendant Yassin Abdullah Al Kadi (D92) (hereinafter "Defendant Kadi") was designated by President George Bush's Executive Order 13224 as a terrorist responsible for funding al Qaeda. Plaintiffs' Dec., Attachment 3. The United Nations Security Council Committee on Afghanistan also placed Defendant Kadi on a list of individuals and entities "associated with Usama bin Laden, including those in the Al-Qaida organization." Plaintiffs' Dec., Attachment 4. Because of these allegations and the investigation by the Plaintiffs, Defendant Kadi is a party in this matter. Defendant Kadi, urges the Court to dismiss the Plaintiffs Third Amended Complaint (hereinafter "TAC"), pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), and (b)(6). The Court should deny Defendant Kadi's Motion to Dismiss because: 1) service of process was demonstrably effective in this matter; 2) the Court has personal jurisdiction over Defendant Kadi because he provided material support to al Qaeda, whose terrorist activities were targeted at the United States; and 3) Defendant Kadi has failed to demonstrate that he will not receive a fair trial in the United States. Defendant Kadi's motion should be denied *in toto*.

## II.     SERVICE OF PROCESS WAS EFFECTIVE ON DEFENDANT KADI

Plaintiffs requested leave to serve by publication Defendants in the Gulf States region, which included Defendants located in Saudi Arabia, Sudan and United Arab Emirates, Transferor Docket No. 95 ¶ 3.  The motion set out the *necessity* of such service based on the Affidavit of Nelson Tucker, Plaintiffs' process server.  The Court, by granting the Plaintiffs' motion on March 25, 2003, indicated that it was appropriate for the Plaintiffs to attempt to serve such geographically located Defendants by publication.   Among those to be served by publication was Defendant Kadi, who lives in Saudi Arabia.   Plaintiffs properly served Defendant Kadi by publication, in compliance with the Court's Order of March 25, 2003.

The argument raised by Defendant Kadi is that the notice published was not reasonably calculated to advise him of this lawsuit.  There is no doubt from his pleading that he is aware that he has been designated an al Qaeda terrorist and facilitator.  Based on the public nature of the United States government's allegations made against him, it is hard to believe he was not aware of this action at the time of the filing of the Plaintiffs' Complaint.  It is also hard to believe that he did not receive notice of the lawsuit, when he has retained counsel, appeared and filed a motion to dismiss.  Moreover, Defendant Kadi, filed a collateral attack against the lawsuit by alleging that one of the 9/11 families' investigators, Jean-Charles Brisard, could not be an impartial investigator in Switzerland.  When filing the complaint Kadi stated:

> Brisard is the lead investigator for the US lawyers in the civil action brought in US courts on behalf of the families of the victims of the Sept. 11, 2001 attacks and cannot therefore be regarded as independent.

Plaintiffs' Dec., Attachment 5.  It seems incredible that Defendant Kadi would argue before this Court that he did not have proper notice, while arguing before the court in Switzerland that he is disadvantaged because the investigator for a lawsuit which he is unaware of, is serving as an

expert for authorities in Switzerland.  Not only was Defendant Kadi aware of the 9/11 suit, he was aware of investigators that plaintiffs were using in the case.

Defendant Kadi, in support of his position that publication did not reasonably advise him of the pending action, argues that the notice in the *International Herald Tribune*, which is published in English, does not have wide circulation in Saudi Arabia.  He also posits that the *Al-Quds Al-Arabi* notice, which is published in Arabic, is not distributed in Saudi Arabia, and thus, provides no notice of the instant lawsuit.

The Second Circuit stated the following in *S.E.C. v. Tome*, 833 F.2d 1086, 1089 (2nd Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

In addition, as Justice Jackson stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).  The question before the Court is whether publication in the *International Herald Tribune* and *Al-Quds Al-Arabi* was "reasonably calculated" to notify Defendant Kadi of the suit against him.  Defendant Kadi's appearance in this case demonstrates that service by publication was adequate.

The Second Circuit stated in *Tome*: "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive notice*."  *Tome*, 833 F.2d at 1089.  In this instance there is constructive notice, because Defendant Kadi has appeared to defend this action.  As the Supreme Court stated in

*Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."   The record in this matter establishes that Defendant Kadi did receive notice of the suit, understood that he had to hire counsel, and understood his rights because he instructed said counsel to file a motion to dismiss.  This demonstrates the adequacy of the notice by publication.  Justice Jackson succinctly summed up this type of situation when he wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Milliken v. Meyer*, 311 U.S. 457 (1940); *Grannis v. Ordean*, 234 U.S. at 385; *Priest v. Las Vegas*, 232 U.S. 604 (1914); *Roller v. Holly*, 176 U.S. 398 (1900).  The notice must be of such nature as reasonable to convey the required information, *Grannis v. Ordean*, *supra*, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly*, *supra*, and *cf. Goodrich v. Ferris*, 214 U.S. 71 (1909).  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.  'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'  *American Land Co. v. Zeiss*, 219 U.S. 47, 67 (1911); and *see Blinn v. Nelson*, 222 U.S. 1, 7 (1911).

*Mullane*, 399 U.S. at 314-15.

By its March 25, 2003 Order, the transferor Court agreed that publication in these periodicals was necessary and appropriate.  Historically, *Al-Quds Al-Arabi* has published several fatwas by Osama bin Laden and he has, therefore, reasonably calculated it can reach his supporters, regardless of where they live.[1]  In that the United States  has alleged that Defendant Kadi has enduring ties with bin Laden, it is appropriate that Plaintiffs chose the same periodical utilized by the titular head of al Qaeda.  Additionally, the *International Herald Tribune* is

---

[1] As Defendant Kadi points out in his footnote 13, "Official: 15 of 19 of Sept. 11 were Saudi hijackers."  USA Today (Feb. 6, 2002).

distributed in the world community, of which Defendant Kadi and his business interests are a part.  Notice by publication is designed to impart information about a lawsuit.  However, there is nothing that requires the target of the notice to gain the information directly from reading the notice himself, as opposed to someone else telling him about the notice.  In this instance, unlike other Defendants, an affidavit was not even supplied indicating he had not read the notice in either publication.  Without question, the notice in this case accomplished the goal of informing Defendant Kadi of the instant action and allowing him to appear and defend.

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT KADI

Defendant Kadi also contends that this Court lacks personal jurisdiction over him.  However, a federal court may exercise personal jurisdiction over a non-resident defendant when: (1) the defendant is amenable to service of process pursuant to a statute or rule of court that authorizes such an exercise; and, (2) such an exercise is consistent with due process of law. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Service of process on Defendant Kadi was demonstrably adequate, as discussed above.  Similarly, the evidence shows that an exercise of jurisdiction by this Court would be consistent with due process of law because the TAC alleges Defendant Kadi purposely directed his actions at residents of the United States when he financed al Qaeda, whose stated purpose was targeting Americans.  As the transferor Court held, the relevant "minimum contacts" as referenced in *International Shoe* are with the United States.  Memorandum Opinion of November 14, 2003, Docket No. 392.  The standard for determining whether a defendant has sufficient contacts with the forum is not a rigid one, nor can it be applied without reference to the nature of the underlying claims against the defendant.  As the Supreme Court has explained, "'[d]ue process,' unlike some legal rules, is not a technical

conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 (1961).

In the context of an intentional tort claim, the Supreme Court has held that intentional conduct calculated to cause injury in the forum satisfies the due process requirements for jurisdiction, even if *none* of the defendant's conduct took place in the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984). The *Calder* Court went on to distinguish the intentional tort, of which defendants were accused, from allegations of "untargeted negligence." 465 U.S. at 789. Recognizing that the mere foreseeability of an effect in the forum state is insufficient to satisfy the demands of due process, the Court held that jurisdiction was warranted because the defendants' intentional, and allegedly tortuous, actions were "expressly aimed at California." *Id*. Because they knew that plaintiff would suffer injury in the state in which she lived and worked, the Court held that defendants should "reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." *Id*. at 790. Thus, the Court concluded: "An individual injured in California need not go to Florida to seek redress from person who, though remaining in Florida, knowingly caused the injury to California." *Id*.

Like the defendants in *Calder*, Defendant Kadi is accused of intentionally tortuous acts. Just as the *Calder* defendants knew that plaintiff would suffer her injury in California, here, Plaintiffs and their deceased loved ones were targeted because they were in America. Residence and the site of injury in *Calder*, or the instant matter, are not merely incidental.

In addition, the Supreme Court has stated that "reasonableness considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King v. Rudzewicz*, 471 U.S. 462, 483-84 (1985). Policy considerations may play a part in determining what due process is in a particular situation.

*See Palestine Information Office v. Shultz*, 853 F.2d 932, 942 (D.C. Cir. 1988); *see also Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 22-23 (D.D.C. 1998). If ever a case called for recognition of the policy considerations that determine what process is due, it is this one.

In *Burger King*, the Supreme Court held that the requirements of due process were satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (citations omitted). Here, Plaintiffs allege that Defendant Kadi and others knowingly provided material support to terrorism targeted against the United States, by providing funds for that purpose to al Qaeda and organizations which funneled money to al Qaeda. TAC Introduction, pp. 207-208, 212-213, 217-218; ¶¶ 7-11, ¶ 18, ¶ 21, ¶¶ 24-26, ¶¶ 27-30, ¶ 33, ¶¶ 54-56, ¶ 71, ¶¶ 117-121, ¶ 131, ¶ 148, ¶ 150, ¶¶154-155, ¶ 156, ¶ 158, ¶ 166, ¶ 168, ¶¶ 172-173, ¶¶ 180-181, ¶¶ 186-187, ¶¶ 190-193, ¶ 196, ¶ 199, ¶¶ 201-208, ¶¶ 222-228, ¶ 234, ¶ 236, ¶ 240, ¶ 242, ¶¶244-248, ¶ 255, ¶¶ 266-267, ¶ 270, ¶ 277, ¶¶ 282-283, ¶ 285, ¶¶ 288-289, ¶ 296, ¶ 298, ¶ 299, ¶ 305, ¶ 308, ¶328, ¶330, ¶ 331, ¶ 332, ¶ 334, ¶335, ¶337, ¶ 338, ¶¶ 340-342, ¶¶ 346-350, ¶ 359, ¶ 372, ¶ 381, ¶ 384, ¶ 387, ¶ 428, ¶¶ 431-432, ¶¶464-465, ¶ 468, ¶¶ 470-473, ¶ 486, ¶ 498, ¶ 515, ¶ 517, ¶¶ 530-531, ¶¶ 534-535, ¶ 538, ¶ 542, ¶¶ 548-549, ¶ 553, ¶¶ 562-563, ¶ 565, ¶ 577, ¶¶ 579-581, ¶ 585, ¶ 599, ¶ 605, ¶ 612, ¶ 625, ¶ 628, ¶ 650, ¶ 684, ¶ 686. As alleged in the TAC, al Qaeda specifically targeted civilians in the United States, proclaiming that, "America is a state at war with us" and noting that "killing of women and the old and children of the war states . . . is permissible . . . ." TAC at p. 207. Thus, al Qaeda made no secret of the fact that its intended target was citizens and residents of the United States. At the heart of Plaintiffs' TAC, then, is the allegation that Defendant Kadi and others, "purposefully

directed" activities at the United States by funding, to the tune of millions of dollars, those whose "activities" included killing innocent people for no reason other than that they were Americans.

Indeed, given al Qaeda's explicit direction of terrorist activities toward the United States, as alleged in Plaintiffs' TAC, it can hardly be said that Defendant Kadi had no warning that he might be answerable in United States court for his conduct in supporting these acts.  In *Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000), the Court found that state sponsors of terrorism were provided sufficient warning of the seriousness with which the United States views terrorist attacks against Americans, that it was reasonable for them to held accountable for such acts in the courts of the United States.  Accordingly, the Court found that the assertion of personal jurisdiction did not offend "traditional notions of fair play and substantial justice" and that defendant's targeting of Americans provided a sufficient nexus with the United States to satisfy due process concerns.  *Id*. at 54.  This case is precisely analogous to *Daliberti*.

In addition, while enacting the Anti-Terrorism Act of 1990 (hereinafter "ATA"), which Plaintiffs invoke, the Congress sought to lessen jurisdictional issues, such as those presented in the instant case.  The ATA "removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation."  Anti-Terrorism Act of 1990, Hearing Before the Sub-Committee on Courts and Administrative Practice, Senate Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991).

Aside from the direct funding of terrorism, Defendant Kadi has many business interests which include setting up and serving on the board of directors of American corporations. Specifically, he incorporated Blessed Relief in Delaware in 1992.  Plaintiffs' Dec., Attachment 6. Defendant Kadi invested over five million dollars in a Quincy Massachusetts company P-Tech, which was raided by federal agents on December 5, 2002.  Plaintiffs' Dec., Attachment 7.

Further, Defendant Kadi transferred the money through a subsidiary company, Sarmany Ltd., controlled by Kadi. Plaintiffs' Dec., Attachment 8.  Additionally, Defendant Kadi sits on the Board of Directors of Global Diamond Resources, a Nevada corporation.  Plaintiffs' Dec., Attachment 9.  The Chicago FBI Terrorist Task Force found probable cause to believe that Defendant Kadi transferred money to individuals in the United States who transferred money in support of domestic and international terrorist activities.  *See,* Affidavit of FBI Special Agent Robert Wright, dated June 8, 1998. Plaintiffs' Dec., Attachment 10.  This evidence provides an additional basis that Defendant Kadi has contacts with the United States or directs others under his control to have contacts in this country.[2]

## IV.    THE ATA AND ATCA APPLY TO THIS MATTER

### A.    Defendant's Arguments on the ATA Fail

Defendant Kadi argues that the Plaintiffs cannot prove causation under the ATA.  This argument avoids both the case law and the Act's legislative history.  The second broader prong of Defendant Kadi's defense involves avoiding the jurisdiction of the act altogether.  In order to avoid the nationwide contacts test of the ATA, Defendant Kadi amazingly, and without a sense of the irony of his position, argues that the ATA only applies to international terrorism, and the events of September 11, 2001, were not international terrorism.  Defendant Kadi, in unabashed linguistics deconstructionalism, attempts to rewrite the definition of "international terrorism" as it is defined in 18 U.S.C. § 2331 (1).  This argument avoids the actual language of the statute in

---

[2] If the Court determines that Plaintiffs' allegations are not enough to establish personal jurisdiction, then Plaintiffs seek leave to conduct discovery to determine the extent to which Defendant Kadi handles the administration and direction of his company's activities in the United States and his personal contacts with the United States.  A motion requesting same is being filed concurrently with this brief.   "[A] district court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable a party to conduct discovery." 45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, at 253-59 (2d ed. 1990).

which events such as September 11th fall within the ambit of international terrorism.  Defendant Kadi's attempt to exculpate himself by word play must be rejected.

Responsibility for international terrorism rests not only with those who pull the trigger or plant the bomb or man the airplanes, but, with those who facilitated those events through financial or other material means.  *Boim v. Quranic Literacy Institute*, *et al.,* 291 F.3d 1000 (7th Cir. 2002).  Congress' rationale as to the extent of liability under the ATA is directly related to the issue of proximate causation.  "The Senate Report on Section 2333(a) emphasized that, *by imposing liability along the causal chain of terrorism, it would interrupt or at least imperil, the flow of money.*"  Senate Report on Section 2333(a), S. Rep. 102-342 at 122 (emphasis added), cited in *Boim*, 291 F. 3d at 1011.

In *Boim*, the Seventh Circuit found there would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.  *Id.* at 1021.  "The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts."  *Id.*

"The statute clearly is meant to reach beyond those persons who themselves commit the violent act that directly causes the injury."  *Id.* at 1011.  In making that point even clearer by enacting 2339C, Congress further refined the causal chain analysis for causation purposes. Defendant does not have to participate in or even know about, the *specific* bad act that ultimately harms the victim.  Defendant need only assist the terrorist group knowing that the assistance would lead to wrongful and harmful acts.  *See also Halberstam v. Welch*, 705 F.2d 472, 483-485 (D.C. Cir. 1973).  Even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability under section 2333.  *Boim*, 291 F. 3d at 1015.

*Boim* makes clear that causation under the ATA proceeds along the causal chain of financing. To suggest otherwise would be to negate the purpose of the law. Defendant Kadi's first argument should be rejected.

Defendant Kadi argues "As the foregoing legislative history demonstrates, Congress plainly intended the ATA to cover terrorist acts which occur *outside* the United States, and to provide a remedy where none otherwise was available." (Def. brief p. 10) The defect in Defendant Kadi's analysis is the very definition of international terrorism that he relies on: "Occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate to seek asylum." (Def. brief p. 7) Defendant Kadi incredibly loses sight of the language, "transcend nation boundaries in terms of the means by which they are accomplished …." The TAC makes clear that al-Qaeda operated a world-wide international terrorist organization which drew its funds from across the globe for the purpose of carrying out a jihad that ultimately resulted in the attacks of September 11, 2001. Plaintiffs and the United States have alleged that Defendant Kadi funneled millions of dollars to al Qaeda, the money that made the attacks possible. The allegation against Defendant Kadi falls squarely under the ATA's definition of international terrorism.

The ATA creates a private cause of action for injuries resulting from international terrorism. 18 U.S.C. § 2333. The Plaintiffs have adequately alleged causation in this matter and there can be no doubt that the acts of September 11th were acts of "international terrorism" within the meaning of 18 U.S.C. § 2331 *et seq. Smith, et al., vs. Islamic Emirate of Afghanistan, et al.,* 262 F. Supp. 2d 217, 221-22 (2003).

### B. The Complaint States a Claim Against Defendant Kadi Under the Alien Tort Claims Act

Defendant Kadi states that Plaintiffs fail to state a claim under the ATCA.[3]  Defendant Kadi contends, as a private actor, he cannot be held liable for alleged violations of the "law of nations."  Defendant Kadi also claims that Plaintiffs fail to allege a violation of international law.[4]  *Id*.  This argument ignores the general allegations which apply to all Defendants, including Defendant Kadi.

### 1. Non-state actors who engage in terrorist acts, crimes against humanity, and other egregious acts commit torts in violation of customary international law, the law of nations, and the ATCA.

A recently affirmed case recognizes that "ATCA jurisdiction extends to private [non-state] parties for egregious acts of misconduct." *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000).     In *Doe v. Islamic Salvation Front (FIS)*, the court concluded that it had subject matter jurisdiction over plaintiffs' ATCA claims, even though the defendant was not a state actor, because the violations of the law of nations alleged by the plaintiffs included egregious acts, such as crimes against humanity, war crimes, aircraft hijacking, summary execution, and other violations of international law.  993 F. Supp. 3 (D.D.C. 1998) ("*Doe I*"); *see also Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 2003 WL 1740436 (D.D.C.) (acknowledging that hijacking a recognized violation of the law of nations) ("*Doe II*").[5]

---

[3]  Count Four, which alleges claims under the Alien Tort Claims Act, is brought on behalf of "plaintiffs who are estates, survivors, and heirs of non-United States citizens . . . ." TAC at p. 385.  The Alien Tort Claims Act provides for jurisdiction over claims (1) brought by aliens (2) alleging torts (3) committed in violation of the law of nations or a treaty of the United States. *Chiminya Tachiiona v. Mugabe*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002).

[4]  The Alien Tort Claims Act provides federal jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  The ATCA opens U.S. federal courts for adjudication of rights recognized by international law. *See Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980).

[5]  The Second Circuit likewise has concluded that plaintiffs are not barred from bringing suit under the ATCA merely because the defendants are private parties.  In *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), the court held

In *Doe I*, the Court denied the Defendants' Rule 12(b)(6) motion to dismiss, and held:  1) ATCA should remain intact, despite enactment of Torture Victims' Protection Act, to permit suits based on other norms that already exist or may ripen into rules of international law; 2) aircraft hijacking by a non-state actor violates law of nations and hence, the ATCA; 3) the D.C. Circuit decision in *Tel-Oren* no longer is "timely," and *Kadic* "addresses issues in the instant case more pointedly" than *Tel-Oren*; and, 4)  plaintiffs' claims alleging murder, rape, torture, and the like were sufficiently pleaded under ATCA.  *Doe I*, 993 F.Supp. 3.  In *Doe II*, the Court held that aircraft hijacking by a non-state actor is a violation of law of nations and hence the ATCA, despite *Tel-Oren*.  2003 WL 1740436 (D.D.C. 2003).

The crucial question for ATCA purposes, therefore, is *not* whether Defendant Kadi is a private or state actor, *defacto* or otherwise, but whether the type of action alleged amounts to a violation of the law of nations.  On this question, however, there can be little doubt that the attacks of September 11, 2001 do constitute both egregious misconduct and a violation of customary international law.  *Smith, et al., vs. Islamic Emirate of Afghanistan, et al.*, 262 F. Supp. 2d 217 (2003).

2.     **The attacks of September 11th and the material support of those terrorist acts violate customary international law, the law of nations and constitute grossly egregious misconduct.**

As numerous courts have noted, the "law of nations, currently known as international customary law, is formed by the 'general assent of civilized nations.'" *Id.* at 7 (citing *Filartiga v. Pena-Irala*, 630 F.2d 876, 880 (2d Cir. 1980)).  Moreover, "courts must interpret international law under the ATCA as 'it has evolved and exists among the nations of the world today.'" *Islamic Salvation Front*, 993 F. Supp. at 8 (quoting *Karadzic*, 70 F.3d at 238).

---

that ATCA claims could proceed against the Bosnian Serb leader Radovan Karadzic for genocide and war crimes

13

There are at least three ways in which the murderous attacks of September 11, 2001 qualify as violations of customary international law and thus the law of nations. The attacks were specific acts of terrorism that are universally condemned under international law. *See* U.N. Security Council Resolution 1373 (September 28, 2001). The perpetrators violated numerous pre-existing, widely ratified, international anti-terrorism conventions, including, but not limited to: the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16, 1970, 22 U.S.T. 1641; the Tokyo Convention on Offences and Certain Other Acts Committed on Board Aircraft, Sept. 14, 1963, 704 U.N.T.S. 219; and, the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, Sept. 23, 1971, 24 U.S.T. 565 (making aircraft hijacking and other offenses committed aboard aircraft international criminal offenses).

The attacks also were a violation of the more recent International Convention for the Suppression of Terrorist Bombings. See Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. TREATY DOC. NO. 106-6, at 4, 37 I.L.M. 249, 253. Moreover, the financing of these acts is a serious crime under international law. International Convention for the Suppression of the Financing of Terrorism, G.A. Res. 54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999). Accordingly, such acts of terrorism – and the financing or material support of them – committed by private parties are actionable and can give rise to liability under the ATCA. *See, e.g., Islamic Salvation Front*, 993 F. Supp. at 5 (describing "terrorist activities" alleged in complaint), 18 U.S.C. §§ 2333, 2339C.

The attacks of September 11, 2001 in addition to being violations of formal international law also represent behavior that manifestly assaults the very foundation of international law and civilized conduct. The calculated devastation of September 11th is the very embodiment of the

---

irrespective of whether or not he qualified as a state actor. *Id*. at 241-44.

violation of the *jus cogens* norms.  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d (S.D.N.Y. 2003).  Violations of *jus cogens* norms are violations *erga omnes*, or obligations owed to all.  *Id.*  These fundamental obligations owed between individuals and states, were ripped to shreds on September 11th through the perverse aid of the Defendants, including Bin Mahfouz.   The Court in the *Presbyterian Church of Sudan* stated as follows:

> The fact that they [piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and certain acts of terrorism] are treated differently under international law (by permitting states to exercise universal jurisdiction over these crimes, and by entailing individual responsibility) reflects the fact that these acts are offenses of universal concern by virtue of the "depths of depravity the conduct encompasses, the often countless toll of human suffering the misdeeds inflict upon their victims, and the consequential disruption of the domestic and international order they produce. (citation omitted).

*Id.*  The Court in the above-referenced quote eloquently sets out that *jus cogens* violations are violations of a kind separate from other violations of international law.  *Id.*

The Court went on to state the extent of the reaction of civilization through the judicial process:

> In other words, states may exercise universal jurisdiction over acts committed in violation of *jus cogens* norms.  This universal jurisdiction extends not merely to criminal liability but may also extend to civil liability.  See *id.* at § 404 cmt. B.  In addition to triggering the potentially universal exercise of jurisdiction, *jus cogens* violations may entail not only state but individual responsibility.  For example, it is well-established in the post-World War II world that individuals may be held liable for acts of genocide, war crimes, or torture.  *See*, *e.g.*, *Kadic v. Karadzic*, 70 F.3d 232, 241-42 (2d Cir. 1995).

*Id.*  By any definition, based in an understanding of the rudiments of civilized conduct, the attacks of September 11th represent a peremptory violation of norms, or a violation of *jus cogens*.

### 3. Plaintiffs have alleged facts sufficient to state a claim under the ATCA.

The alien Plaintiffs unquestionably have alleged facts sufficient to state a cause of action under the ATCA. The TAC describes in detail how the Islamic charitable system and donor/sponsors like Defendant Kadi have been utilized to finance illegal al Qaeda activities targeted at the United States. TAC Introduction, pp. 199-200, 203-205. The TAC also alleges that al Qaeda, in particular, has used the Islamic charity system to funnel money – and hatred – through Islamic charities, with the charities', and thus, the donor's, material support. *Id*. at pp. 207-208. Moreover, the Plaintiffs make allegations specific to Defendant Kadi and other Defendants alleging their active monetary sponsorship of al Qaeda sponsors. TAC ¶¶ 328, 330, 331, 332, 334, 335, 337, 338.

Moreover, to sufficiently allege an ATCA cause of action against Defendant Kadi, the Plaintiffs need not allege, or prove, that Defendant Kadi was directly involved in the terrorist attacks themselves. Rather, it is sufficient for the Plaintiffs to allege, as they have, that Defendant Kadi with other of the Defendants, conspired with or aided and abetted in a violation of the law of nations. Indeed, many federal courts have recognized that ATCA liability can be based on conspiratorial relationships or theories of aiding and abetting.[6]

---

[6] *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 776 (9th Cir. 1996) (affirming district court's jury instruction allowing foreign leader to be held liable upon finding that he "directed, ordered, conspired with, or aided the military in torture, summary execution, and 'disappearance'"); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., No. 01 CIV 9882 (AGS), 2003 WL 1339181, at *46-47 (S.D.N.Y. Mar. 19, 2003) (collecting cases) ("U.S. courts have consistently permitted ATCA suits to proceed based on theories of conspiracy and aiding and abetting."); *Barrueto v. Larios*, 205 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2002) (holding ATCA liability can be based on allegations that defendants conspired or aided and abetted violations of the law of nations); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 2002 WL 851751, at *24-25 (N.D. Ga. Apr. 29, 2002) (holding defendant liable for aiding and abetting in acts that violate customary international law); and *Abebe-Jira v. Negewo*, 72 F.3d 844, 845-48 (11th Cir. 1996) (affirming verdict for torture and cruel, inhuman or degrading treatment where defendant supervised or participated with others in "some of the acts of torture" against plaintiffs).

### C.        Defendant Kadi Alleges He Cannot Receive a Fair Trial in the United States

Defendant Kadi alleges, without support, that he cannot receive a fair trial in a United States District Court.  He marshals no real evidence that the federal judiciary is incapable of guaranteeing a defendant a fair trial in either the civil or criminal context.  Defendant Kadi's argument is based on his designation under Executive Order 13224.  If such inherent bias towards those accused of terrorism existed in the federal courts, no terrorist's criminal trial could be conducted.  Recent events show that is not the case.  Additionally, no matter involving facts that outrage popular sensibilities could ever be conducted.  The development of our jurisprudence has gone to great lengths to guarantee a fair trial to every litigant.  There is no reason to believe that principle has been sacrificed in this litigation.  Defendant Kadi will be undoubtedly guaranteed every safeguard due him in civil litigation.  The Defendant has failed utterly in this showing, and his complaint that he cannot have a fair trial should be dismissed as hysteria.

## V.        CONCLUSION

Service of process on Defendant Kadi was demonstrably adequate, as evidenced by his counsel's appearance and motion to dismiss on his behalf.  The Court has personal jurisdiction over Defendant Kadi by virtue of the Plaintiffs' allegations that the illegal activities he engaged in or supported were purposefully targeted at the United States.  Moreover, the Complaint makes sufficient allegations against Defendant Kadi to satisfy the Rule 12 standard.  This Court should deny Defendant Kadi's motion to dismiss in its entirety.

Dated: New York, NY
October 15, 2004

Respectfully submitted,


/S/

_____

Michael E. Elsner, Esq. (NY & VA-ME8337)
Ronald L. Motley, Esq. (SC-4123)
Jodi Westbrook Flowers, Esq. (SC-66300)
Donald A. Migliori, Esq. (RI-4936; MA-567562;
    MN-0245951)
William H. Narwold, Esq. (NY-WN1713)
Ingrid L. Moll, Esq. (CT-21866 & NY-IM3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Elizabeth Smith, Esq.
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Jayne Conroy, Esq. (NY-JC8611)
Paul J. Hanly, Jr., Esq. (NY-PH5486)
Andrea Bierstein, Esq. (NY-AB4618)
HANLY CONROY BIERSTEIN
    & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq. (IN - 4941-49)
Amy Ficklin DeBrota, Esq. (IN - 17294-49)
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240
Telephone:  (317) 848-7939

Harry Huge, Esq. (DC-55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
401 Ninth Street, N.W., Suite 450
Washington, DC 20004

Telephone:  (202) 824-6046

Allan Gerson, Esq. (DC-327494)
ATTORNEY AT LAW
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone:  (843) 577-9761


Attorneys for Plaintiffs