**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Burnett v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)
*Burnett v. Al Baraka Investment & Develop. Corp.*, 03 CV 5738 (RCC)

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF YOUSEF ABDUL LATIF JAMEEL

October 18, 2004

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

APPLICABLE LEGAL STANDARDS ............................................................................... 1

ARGUMENT ................................................................................................................. 3

I.    DEFENDANT YOUSEF JAMEEL IS SUBJECT TO PERSONAL JURISDICTION IN THE UNITED STATES ................................................................................................... 3

    A.    Jameel Was Properly Served by Publication, Does Not Dispute That Service Was Proper and Effective, and Improperly Asserts the Application of the New York and D.C. Long-Arm Statutes. ........................................................................ 4

    B.    The Exercise of Jurisdiction Over Jameel Comports with Due Process Because Jameel, Who Purposefully Directed His Conduct at the United States, Could Reasonably Expect to be Haled Into Court Here. ........................................ 6

        1.    Standard for Satisfying Due Process ............................................................ 6

        2.    The Complaint Adequately Alleges that, in Supporting Al Qaeda, Jameel Purposefully Directed His Conduct at the United States Because Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities. ............................................. 9-10

    C.    Jameel Is Also Subject to Jurisdiction in This Court Because He Conspired With al Qaeda to Attack the United States ........................................................ 13

II.    THE COMPLAINT SUFFICIENTLY ALLEGES A CAUSAL CONNECTION BETWEEN JAMEEL AND THE INJURIES AND DEATHS THAT OCCURRED ON SEPTEMBER 11, 2001 ............................. 16

    A.    Plaintiffs Have Sufficiently Alleged Acts of International Terrorism, and Therefore Have Stated a Valid Cause of Action Under the ATA ......................... 16

    B.    The Complaint Sufficiently Alleges Violations of the ATA. ............................... 19

    C.    The Complaint Sufficiently Alleges that Jameel Knowingly and Intentionally Violated the ATA ................................................................................................. 21

    D.    Jameel's Conduct Is Not Too Remote to Constitute the Proximate Cause of Plaintiffs' Injuries. ............................................................................................. 23

    E.    Plaintiffs' Non-ATA Claims Against Jameel. ...................................................... 24

Conclusion .........................................................................................................................25

Table of Authorities

*Page*

**Cases**

*Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) ....................................................25

*All State Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215 (S.D.N.Y. 1992) ...........................14

*Andre Emmerich Gallery v. Segre*, 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997) .........................14

*Application to Enforce Administrative Subpoenas Duces Tecum v. Knowles*, 87 F.3d 413 (10th Cir. 1996) ................................................................................................6

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) .................6

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000) ................................................................24

*Barrueto v. Larios*, 205 F. Supp. 2d 1325 (S.D. Fla. 2002) ........................................................25

*Boim v. Quranic Literary Inst.*, 291 F.3d 1000 (7th Cir. 2002) ...........................................19,20,23

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ......................................................................6,7

*Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886 (1961) .................6

*Calder v. Jones*, 465 U.S. 783 (1984) .................................................................................7,9,13

*Carmichael v. United Tech. Corp.*, 835 F.2d 109 (5th Cir 1988) ................................................25

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000) .....................................................................................4,6

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991) ..........14,15

*Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515 (D.D.C. 1995) ......................................4

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................................2-3

*Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987) ............................................................................5

*Cutco Indus. Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ......................................................2

*Daliberti v. Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) ..............................................................7,9,13

*Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996) ..................................25

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F. Supp. 802 (S.D.N.Y. 1991), ), *aff'd in part, rev'd in part*, 974 F.2d 270 (2d Cir. 1992)..................................................................15

*Distefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001)...................................1

*Dixon v. Mack*, 507 F. Supp. 345 (S.D.N.Y. 1980) .............................................................14

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)..................................... 6-7

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ...............................................................2

*Grove Press, Inc. v. Angelton*, 649 F.2d 121 (2d Cir. 1981) .........................................13,16

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .........................................................20

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) .....................................................24

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000), *aff'd in part, rev'd in part*, 352 F.3d 382 (9th Cir 2003), *reh'g granted*, 382 F.3d 1154 (9thCir. 2004 ........19,21

*In re Grand Jury Proceedings (Kluger)*, 827 F.2d 868 (2d Cir. 1987)...................................25

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) ..........................1

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .............................................. 3-6

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001) ........................ 5-6

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)...................................2

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995)...................................................................24

*Kurowski v. City of Bridgeport*, 1988 WL 25417 (D. Conn. Mar. 14, 1988).........................24

*Lamarca v. United States*, 31 F. Supp. 2d 110 (E.D.N.Y. 1998).........................................23

*Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975)..................................13

*Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002).........................................25

*Meyers v. Epstein*, 282 F. Supp. 2d 151 (S.D.N.Y. 2003).................................................24

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987) ...............................4

*Palestine Info. Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988) ............................................6

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997).....................................................2

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003...................................................................................................25

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003)...... 7-9,13

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F. Supp. 325 (E.D.N.Y.), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998),
    *cert. denied*, 527 U.S. 1003 (1999)...........................................................7,8,13

*Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95 (E.D.N.Y. 2000)................................15

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003).........................17

*Sosa v. Alvarez-Machain*, 124 S. Ct. 2739 (2004)................................................. 24-25

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).................................................3

*United States v. Swiss American Bank, Ltd.*, 191 F.3d 30 (1st Cir 1999)....................................5-6

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).........................................6,8,14

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004)................................................. 2-3

**Statutes**

18 U.S.C. § 1367...........................................................................................25

18 U.S.C. § 1965(b)...........................................................................................5

18 U.S.C. § 2331.......................................................................................... 17-19

18 U.S.C. § 2333.......................................................................................... 16-21

18 U.S.C. § 2334(a)...........................................................................................5

18 U.S.C. § 2336(a)...........................................................................................16,18

18 U.S.C. § 2339..........................................................................................16,19,20,21

28 U.S.C. § 1332...........................................................................................5

28 U.S.C. § 1350...........................................................................................5

28 U.S.C. § 1653...........................................................................................2

**Federal Rules**

Fed. R. Civ. P. 4(k)(2)..............................................................................................4,5

Fed. R. Civ. P. 8(a) ..................................................................................................3

Fed. R. Civ. P. 12(b)(2)......................................................................................1,3,16

Fed. R. Civ. P. 12(b)(6)......................................................................................1,2,16

Fed. R. Civ. P. 54(b) ..............................................................................................25

**New York Rule**

N.Y. Civil Practice Law and Rules § 302(a)(2)..........................................................13

**Other Authorities**

5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1990) ............16

W. Page Keeton et al, Prosser & Keeton on the Law of Torts (5th ed. 1984)..............................23

Restatement (Third) of Torts ..........................................................................................24

# INTRODUCTION

Defendant Yousef Abdul Latif Jameel (D#201) (hereinafter "Jameel") is alleged to have knowingly and intentionally provided material support to Osama bin Laden, al Qaeda and other al Qaeda financiers in furtherance of al Qaeda's terrorist agenda against the United States.  Jameel now moves the Court to dismiss the Third Amended Complaint ("TAC") and Plaintiffs' More Definite Statement As To Defendant Yousef Abdul Latif Jameel dated March 16, 2004 ("MDS") (hereinafter collectively referred to as the "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

The Court should deny Jameel's Motion to Dismiss because: (1) Jameel is subject to personal jurisdiction in the United States; and (2) Plaintiffs have adequately stated their claims against him.

# APPLICABLE LEGAL STANDARDS

Jameel has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Each alleged basis for dismissal is to be considered under its own discreet legal standard provided below.

## I.  FED. R. CIV. P. 12(B)(2) STANDARD

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the minimal burden of showing a factual basis upon which the court may exercise personal jurisdiction over the defendant.  *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).  In this regard, at the pleading stage, the plaintiff need only make a *prima facie* showing of personal jurisdiction in order to defeat a defendant's 12(b)(2) motion.  *Distefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  In ruling on the motion, the Court should resolve factual discrepancies appearing in the record in favor of the Plaintiffs.  *Id.* at 84.

In making their *prima facie* case for personal jurisdiction, however, plaintiffs are not limited to their pleadings.  Rather, that case may be established through pleadings and affidavits. *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  Moreover, plaintiffs are not required to know or to plead all possible jurisdictional grounds from the outset of the case.  To the contrary, the relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction. *See* 28 U.S.C. § 1653.  That is particularly true where the factual predicates are complex and the parties numerous, as herein.  Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor. *PDK Labs v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997).  In addition, the Court "must read the Complaint liberally, drawing all inferences in favor of the pleader." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

## II.    FED. R. CIV. P. 12(B)(6) STANDARD

If the Court concludes that it may exercise personal jurisdiction over him, Jameel moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating the motion to dismiss, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of Plaintiffs. *Wynder*, 360 F.3d at 77.

Relatedly, Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Under *Swierkiewicz* [*v. Sorema*, 534 U.S. 506 (2002)], Rule 8 pleading is extremely permissive. 534 U.S. at 512-13, 122 S. Ct. 992. As the Supreme Court there noted, Rule 8(a)(2) provides (a) that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and (b) that such a statement simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' 534 U.S. at 512, 122 S. Ct. 992 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957))." *Wynder*, 360 F.3d at 77.

## ARGUMENT

### I.    DEFENDANT YOUSEF JAMEEL IS SUBJECT TO PERSONAL JURISDICTION IN THE UNITED STATES

Jameel moves, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the claims against him in the Complaint, claiming that Plaintiffs have not sufficiently alleged a basis upon which the Court can exercise personal jurisdiction over him. First, Jameel claims that the Court lacks jurisdiction under the New York or District of Columbia long-arm statutes. (Jameel's Memorandum of Law in Support of Motion to Dismiss Action Originally Commenced in S.D.N.Y. ("Jameel (03 CV 5738) Mem.") at 1-4; Jameel (03 CV 9849) Mem. at 7-8.) Second, Jameel also contends that Plaintiffs have not alleged that he "purposefully directed" his actions at the United States and that he could not have reasonably foreseen being haled into court here. Jameel's arguments are based, however, on flawed legal and factual premises. Accordingly, Jameel's motion should be denied.

As a threshold matter, it is well settled that a federal court may exercise personal jurisdiction over a non-resident defendant when: (1) the defendant is amenable to service of process pursuant to a statute or rule of court that authorizes such an exercise; and (2) such an exercise is consistent with due process of law. *See International Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945); *see also Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

These factors are satisfied here and are addressed in turn.

> **A.    Jameel Was Properly Served by Publication, Does Not Dispute That Service Was Proper and Effective, and Improperly Asserts the Application of the New York and D.C. Long-Arm Statutes.**

Significantly, Jameel does not actually contend that service upon him was in any way improper or ineffective.   Jameel was served by publication, in compliance with the Transferor Court's March 25, 2003 Order, indicating that it was appropriate to serve defendants located in Saudi Arabia, Sudan and the United Arab Emirates by publication.   Here, service of process was properly made under Fed. R. Civ. P. 4(k)(2).

Fed. R. Civ. P. Rule 4(k)(2) authorizes service of process: (1) with respect to claims arising under federal law; (2) "[i]f the exercise of jurisdiction is consistent with the Constitution and Laws of the United States;" and (3) the defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any state."   Fed. R. Civ. P. 4(k)(2).   "Rule 4(k)(2) only provides federal courts with personal jurisdiction over a foreign defendant in federal question cases and only if the foreign defendant has sufficient contacts with the United States to satisfy due process requirements."  *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 525 (D.D.C. 1995).

The first prong is clearly satisfied, as Jameel has been sued under the ATA, RICO, and the ATCA.   The second prong of Rule 4(k)(2) supports the exercise of jurisdiction if worldwide service is "consistent with the Constitution and Laws of the United States."   Fed. R. Civ. P. 4(k)(2).   "[I]f a statutory provision permits nationwide service but is silent with respect to worldwide service, then worldwide service is 'consistent' with this statute, since such service does not contradict or oppose the statutory language."  *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000).   Here, worldwide service is consistent with the federal statutes pursuant to which Jameel has been sued.

Both RICO and the ATA permit nationwide service of process, but are silent as concerns worldwide service. *See* ATA, 18 U.S.C. § 2334(a); RICO, 18 U.S.C. § 1965(b). Moreover, the ATCA is entirely silent as to service of process. *See* 28 U.S.C. § 1350. Thus, worldwide service is "consistent" with these statutes.

The third prong of Rule 4(k)(2) is also satisfied in the event Jameel "is not subject to the jurisdiction of the courts of general jurisdiction of any state." Fed. R. Civ. P. 4(k)(2). "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent of personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l, Inc v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 41-42 (1st Cir. 1999) (discussing burden-shifting in Rule 4(k)(2) context). Thus, the first prong of *International Shoe* is satisfied.

Jameel's only contention with regard to the first prong of *International Shoe* is that this Court must apply the New York and D.C. long-arm statutes. Contrary to his contention, however, the Court need not refer to the New York or D.C. long-arm statutes in its analysis under *International Shoe*. With respect to the Due Process prong of *International Shoe*, where service is effected based upon Fed. R. Civ. P. 4(k)(2) (or any federal statute permitting nationwide or worldwide service), the familiar "minimum contacts" doctrine is measured in terms of a defendant's contacts with the United States, rather than with the particular forum state.[1] *See, e.g.*,

---

[1]     Jameel's reliance on *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987), for the proposition that the D.C. long-arm statute controls jurisdiction of this Court is misplaced. *See* Jameel (03 CV 9849) Mem. at 8. *Crane* was a case brought pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. Here, however, Plaintiffs do not rely upon diversity jurisdiction and, therefore, D.C. local law does not control.

*ISI Int'l, Inc.*, 256 F.3d at 551; *Central States, Southeast & Sw. Areas Pension Fund*, 230 F.3d at 946, 946 n.10; *United States v. Swiss Amer. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999); *see also Application to Enforce Admin. Subp. Duces Tecum v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996).

> **B.** **The Exercise of Jurisdiction Over Jameel Comports with Due Process Because Jameel, Who Purposefully Directed His Conduct at the United States, Could Reasonably Expect to be Haled Into Court Here.**

> **1.** **Standard for Satisfying Due Process**

Jameel is subject to personal jurisdiction here because, in providing support to al Qaeda, which had announced its intentions to attack the United States, Jameel purposefully directed his conduct here.  The standard for determining whether a defendant has sufficient contacts with the forum is not a rigid one, nor can it be applied without reference to the nature of the underlying claims against the defendant.  As the Supreme Court has explained, "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."  *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961).  It is for this reason that the Supreme Court has rejected a rigid formula for discerning the contacts necessary to satisfy due process, opting instead for an approach whereby each case could be evaluated in light of its own unique facts and circumstances, in order to ensure that the exercise of jurisdiction complies with "fair play and substantial justice."  *International Shoe Co.*, 326 U.S. at 316.  The issue is whether the defendant should "reasonably anticipate being haled into court."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987).

The Supreme Court has further stated that reasonableness "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  *Burger King v. Rudzewicz*, 471 U.S. 462, 487 (1985); *see Palestine Info. Office v. Shultz*, 853 F.2d 932, 942 (D.C. Cir. 1988); *see also Flatow v. Islamic Republic of*

*Iran*, 999 F. Supp. 1, 22 (D.D.C. 1998) (policy behind statute giving terrorism victims remedy "could significantly lower the threshold of constitutional requirements").

The reasonableness of subjecting defendants to jurisdiction in the U.S. must be assessed in light of the horrific manner in which U.S. residents were attacked for no reason other than that they were in the United States.  The policies of "fair play" and "substantial justice" cannot be applied without recognizing the deliberate attacks on the U.S. that gave rise to Plaintiffs' claims.

In *Burger King*, the Supreme Court held that the requirements of due process were satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  471 U.S. at 472.  Physical presence is *not* a requirement.  *Id.* at 475.  In the context of an intentional tort claim, the Supreme Court has held that intentional conduct calculated to cause injury in the forum state satisfies the due process requirements for jurisdiction, even if *none* of the defendant's conduct took place in the forum.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  Thus, the *Calder* Court concluded:  "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."  *Id.* at 790.

Three recent cases involving jurisdiction over those who participate in terrorist attacks on Americans demonstrate the appropriateness of jurisdiction here.  *See Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003); *Daliberti v. Iraq*, 97 F. Supp. 2d 38, 54 (D.D.C. 2000); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325, 330 (E.D.N.Y. 1998), *aff'd in part, dismissed in part*, 162 F.3d 748 (2d Cir. 1998).  These cases make clear that where terrorists target Americans, they should reasonably foresee being haled into court in the United States, such that due process is not violated by the exercise of jurisdiction.

In *Pugh*, the court analyzed the minimum contacts of certain Libyans accused of conspiring in the terrorist downing of a French commercial aircraft en route from Congo to Paris,

with an intermediate stop in Chad.  The passengers, all of whom were killed, were from 17 different countries; seven passengers were Americans and the action was brought by their survivors.  The individual defendants were accused of conspiring (in their individual capacity, and not merely as members of the Libyan government) to sabotage the plane.  Applying the *World-Wide Volkswagen* test, which requires the court to look at whether the defendant "should reasonably anticipate being haled into court" in the United States, the court in *Pugh* held:

> Given the number of passengers on UTA Flight 772, and the international nature of the flight, it was also altogether foreseeable that some Americans would be aboard the plane, whose lives would be lost, and that the individual defendants would have to answer in some fashion in American courts for the consequences of their actions if their identities were ever discovered.

290 F. Supp. 2d at 59.  In language especially relevant to this case, the *Pugh* court continued:

> The interest of the United States in preventing and punishing international terrorism has been a matter of worldwide common knowledge for years. . . . Beginning at least five years before the UTA Flight 772 bombing, a succession of federal statutes had evinced an intent to assure the criminal prosecution of foreign individuals who committed terrorist acts overseas against U.S. persons or property. . . . These criminal statutes all contemplated the assertion by a United States court of jurisdiction over a foreign national for terrorist activities committed abroad, irrespective of the number and nature of that individual's other "contacts" with the United States. It logically follows that if federal courts may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil *in personam* jurisdiction over those same individuals for the same acts.

*Id.*   Thus, in *Pugh*, the defendants were found to have purposefully directed their conduct at the United States sufficiently to subject them to jurisdiction in an American court even though the plane they attacked was a French carrier and the flight was not scheduled to, and did not, take off or land in the United States.

Similarly, in *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325, 330 (E.D.N.Y. 1998), *aff'd in part, dis'd in part*, 162 F.3d 748 (2d Cir. 1998), the court found that Libya's "intentional, tortious actions that were expressly aimed at the United States" in connection

with the bombing of Pan Am Flight 103 over Lockerbie, Scotland were sufficient to establish the requisite contacts for personal jurisdiction. Like the attack in *Pugh*, the attack at issue in *Rein* did not take place in the United States. Nonetheless, the court found that the targeting of an American-flagged carrier provided a sufficient nexus for the assertion of jurisdiction. *See also Daliberti*, 97 F. Supp. 2d at 54 (assertion of personal jurisdiction did not offend "traditional notions of fair play and substantial justice" where defendant's targeting of Americans in overseas attack provided a sufficient nexus with the United States to satisfy due process concerns). In all three cases, *Rein*, *Pugh*, and *Daliberti*, the attacks on Americans took place abroad. In none were the defendants alleged to have taken any steps in the United States in furtherance of the plots. Yet, in each case, the court found that the defendant had sufficiently targeted Americans and had sufficient notice that U.S. law and U.S. courts would subject it to liability so that the assertion of personal jurisdiction was constitutional.

Here, by contrast, the entire September 11 attack was focused specifically on, and took place in, the United States. Moreover, as discussed further below, *see* Section I.B.2, the record before this Court demonstrates that bin Laden and al Qaeda had publicly and repeatedly announced their intention to attack the United States from the early 1990s on, and that at the time Jameel provided material support to al Qaeda and known al Qaeda financiers, Jameel knew or should have known that providing such support would further acts of terrorism directed at the United States. In this context, Jameel's conduct amounts to purposeful direction at the United States sufficient in order to satisfy the "minimum contacts" test. Under *Calder*, *Rein*, *Pugh*, and *Daliberti*, no more is required to satisfy the "minimum contacts" test and subject Jameel to jurisdiction in the United States.

2. **The Complaint Adequately Alleges that, in Supporting Al Qaeda, Jameel Purposefully Directed His Conduct at the United States Because**

9

**Al Qaeda Had Publicly Announced that the United States Was the Target of Its Terrorist Activities.**

Based on the principles just discussed, Plaintiffs have satisfied their burden to make a *prima facie* showing that jurisdiction exists over Jameel.  The Complaint specifically alleges that Jameel directed his activities at the United States and to persons and entities long associated with al Qaeda, and that he provided material support to al Qaeda and its sponsors with the knowledge that the funds would be used to support al Qaeda's international terrorist agenda in attacking the United States.  MDS ¶¶ 9-11.  Jameel's name appears on the "Golden Chain" list, a list of wealthy sponsors and supporters of al Qaeda.  MDS ¶ 12.  The Golden Chain was seized by Bosnian police during searches of the offices of the Benevolence International Foundation in Sarajevo, Bosnia and Herzegovina.  MDS ¶ 12.  According to the United States government, the Golden Chain document is a list of people referred to within al Qaeda as the "Golden Chain."  MDS ¶ 13.  The Golden Chain document was part of a computer file containing the formation minutes of al Qaeda.  MDS ¶ 14.  Recipients of the Golden Chain are Osama bin Laden and co-Defendant and al Qaeda member Adel Abdul Jalil Batterjee.  MDS ¶¶ 14-15.

The background to and significance of the Golden Chain list are further set forth in the affidavit of Evan F. Kohlmann ("Kohlmann Aff.") and affidavit of Jean-Charles Brisard ("Brisard Aff.").  As these affidavits attest, Jamal Al-Fadl, a former top Al-Qaeda lieutenant and BIF officer in the Sudan, was prepared to testify in *United States v. Enaam M. Arnaout*, United States District Court, Northern District of Illinois, Eastern Division, Case #02CR 892, concerning Exhibit 5 of the Government's Proffer.  (Kohlmann Aff. at ¶¶ 16, 24; Brisard Aff. at ¶ 7).  According to Al Fadl, the list known as the "Golden Chain" identifies a number of individuals who regularly provided Usama Bin Laden his associates with funding for transportation, communications equipment, weapons and ammunition.  *See* Kohlmann Aff. at ¶ 24; Brisard Aff. at ¶ 7.  Al Fadl

10

specifically stated that Jameel donated funds to al Qaeda, as well as a satellite phone.  *See* Brisard Aff. at ¶ 7.  Al Fadl's eyewitness testimony concerning contributions of the Golden Chain members extends into the early to mid 1990s long after the formation of Al Qaeda.  *See* Kohlmann Aff. at ¶ 28; Brisard Aff. at ¶ 9.  In sum, Al Fadl's potential testimony indicates that the Golden Chain list is a list of donors to Al Qaeda and not a list of individuals who provided financial support to Osama bin Laden during the first Afghan war.  *See* Brisard Aff. at ¶ 7.

The Complaint also alleges that Jameel and the Jameel Group, of which Jameel was a managing officer at all relevant times, provided material support to charity front groups that directly supported al Qaeda and terrorist activities worldwide, including Benevolence International Foundation ("BIF"), Saudi Red Crescent Society, the Saudi Joint Relief Committee, Saudi High Commission for Donations and Collections for Bosnia Herzegovina ("Saudi High Commission"), Al Haramain Islamic Foundation, Inc, the International Islamic Relief Organization ("IIRO"), and the World Assembly of Muslim Youth ("WAMY").  MDS ¶¶ 2, 17.  BIF has been a key financier and supporter of al Qaeda beginning as early as the 1990s.  MDS ¶ 18.  Beginning in the 1980s, Jameel contributed money and equipment to a number of extremist groups and organizations known to be al Qaeda supporters, including the Red Crescent Society and the Saudi High Commission.  MDS ¶¶ 21, 23, 24.  In August, 1995, the Jameel Group donated vehicles to the Saudi High Commission for Donations and Collections for Bosnia Herzegovina, the Bosnian offices of which serve as a front for radical and terrorism-related activities.  MDS ¶¶ 33, 36-37.  Jameel is also alleged to have made financial contributions in at least April and December, 1999 to the Saudi Red Crescent Society.  MDS ¶¶ 21, 23.  Also in December, 1999, Jameel and the Jameel Group provided funding to three other known al Qaeda sponsors: Al Haramain Islamic Foundation, the IIRO, and WAMY.  MDS ¶¶ 25, 26.  The allegations regarding Al Haramain's sponsorship of al Qaeda are numerous, *see, e.g.*, MDS ¶¶ 26-27; TAC ¶¶ 156, 158-161, 164, 167,

169, as are those against the IIRO.  The IIRO was involved with the 1993 World Trade Center bombing, the plot to destroy the Lincoln Tunnel and Brooklyn Bridge, the plot to assassinate former President William Jefferson Clinton and Pope John Paul II, the plot to blow up twelve American airplanes simultaneously, and the 1998 Embassy bombings in East Africa.  MDS ¶ 28. The Complaint alleges that WAMY, among other things, has been officially identified as a "suspected terrorist organization" by the FBI since 1996.  MDS ¶ 29.  The Complaint further alleges that Jameel purchased a satellite phone for Osama bin Laden.  MDS ¶ 19.

In addition to those contacts, Plaintiffs allege that Jameel and others knowingly provided material support to terrorism targeted against the United States, by providing funds for that purpose to al Qaeda and organizations that funneled money to al Qaeda.  TAC Introduction, pp. 207-208, 212-213, 217-218; ¶¶ 7-11, 18, 21, 24-30, 33, 54-56, 71, 117-121, 131, 148, 150, 154-156, 158, 166, 168, 172-173, 180-81, 186-87, 190-93, 196, 199, 201-08, 222-28, 234, 236, 240, 242, 244-48, 255, 266-67, 270, 277, 282-83, 285, 288-89, 296, 298-99, 305, 308, 332, 334, 340-42, 346-50, 359, 372, 381, 384, 387, 428, 431-32, 464-65, 468, 470-73, 486, 498, 515, 517, 530-31, 534-35, 538, 542, 548-49, 553, 562-63, 565, 577, 579-81, 585, 599, 605, 612, 625, 628, 650, 684, 686.  As alleged in the TAC, al Qaeda specifically targeted civilians in the United States, proclaiming that "America is a state at war with us" and noting that "killing of women and the old and children of the war states . . . is permissible."  TAC at p. 207.  Moreover, as stated in an October 2003 interview with al Qaeda member Abd Al-'Aziz bin 'Issa bin Abd Al-Mohsen,

> Jihad members and lovers of Mujahideen were split: There were those who said we must attack the invading forces that defile the land of the two holy places, and that we must turn the Americans' concerns to themselves and their bases, so they would not take off from there to crush Muslim lands and countries, one by one.  There were others who said we had to preserve the security of this base and this country [i.e., Saudi Arabia], from which we recruit the armies, from which we take the youth, from which we get the [financial] backing. It must therefore remain safe. My opinion is midway between the two... It is also true that we must use this country [Saudi Arabia] because it is the primary source of funds for most Jihad movements, and it has some

> degree of security and freedom of movement. However, we must strike a balance between this and the American invasion of the Islamic world and its [strangling of] the Jihad movement and even other Islamic movements.

Update on the Global Campaign Against Terrorist Financing, Second Report of an Independent Task Force on Terrorist Financing Sponsored by the Council on Foreign Relations (June 15, 2004) at 3 n.2 (attached hereto as Exhibit C).  In short, al Qaeda made no secret that its intended target was citizens and residents of the United States.

Indeed, the crux of Plaintiffs' Complaint is the allegation that Jameel and others "purposefully directed" activities at the United States by providing material support to those whose "activities" included killing innocent people for no other reason than they were Americans. In sum, given al Qaeda's explicit direction of terrorist activities at the United States and at Americans everywhere, as alleged in the Complaint, it can hardly be said that Jameel had no warning that he might be answerable in an American court for his conduct in supporting these acts.  Thus, the exercise of personal jurisdiction over Jameel would comport with due process and the principles set forth in *Calder*, *Rein*, *Pugh*, and *Daliberti*, discussed above.

C.    **Jameel Is Also Subject to Jurisdiction in This Court Because He Conspired With al Qaeda to Attack the United States**

In the alternative, this Court may exercise personal jurisdiction over Jameel based on the contacts of his co-conspirators because Jameel knew and intended that the acts of his al Qaeda co-conspirators would impact the United States.   New York's Civil Practice Law and Rules § 302(a)(2) confers jurisdiction over a nondomiciliary who "in person or through an agent . . commits a tortious act within the state."  The term "agent" under that provision has been broadly construed to include a defendant's co-conspirators.  *Grove Press, Inc. v. Angelton*, 649 F.2d 121, 122-23 (2d Cir. 1981); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 92-94 (2d Cir. 1975).  Under this theory, federal and state courts in New York have found that where a plaintiff

has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991) (holding that "[i]t is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR 302(a)(2)**.**"); *All State Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992).

To assert personal jurisdiction, "[t]he conspiracy theory is merely a way of imputing acts done in the state to the out-of-state conspirator." *All State*, 782 F. Supp. at 221 n.6. By imputing forum acts of their co-conspirators to non-resident defendants, this Court has repeatedly found that such non-resident defendants have minimum contacts with the forum to satisfy Due Process. *Dixon v. Mack*, 507 F. Supp. 345, 352 (S.D.N.Y. 1980) ("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course, complained of in the suit, supplies the necessary minimum contacts"); *Andre Emmerich Gallery v. Segre*, 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997). Courts recognizing conspiracy-based personal jurisdiction have held that when non-resident defendants enter into a conspiracy knowing that the forum acts of their co-conspirators (done in furtherance of the conspiracy) would impact the forum, such non-resident defendants should "reasonably anticipate being haled into court there." *Dixon*, 507 F. Supp. at 352; *Andre Emmerich*, 1997 WL 672009, *6 (both citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (1980)); *see also Chrysler Capital Corp.*, 778 F. Supp. at 1270 (asserting personal jurisdiction over non-resident co-conspirator where conspiracy "could reasonably have been expected to have consequences" in the forum). Under these circumstances, due process is satisfied.

Plaintiffs have made a *prima facie* showing of conspiracy between Jameel and al Qaeda. A *prima facie* showing of conspiracy requires allegations of the primary tort (in this case, the attacks

14

of September 11) and four additional elements: (1) a corrupt agreement between two or more

parties; (2) an overt act in furtherance of the agreement; (3) the defendant's intentional

participation in the furtherance of a plan; and (4) resulting damage or injury. *Chrysler Capital*

*Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991); *see also Simon v. Philip*

*Morris, Inc.*, 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000).

With regard to each of these elements, the Complaint alleges that:

(1)    Jameel and al Qaeda, as well as co-Defendants Adel Abdul Batterjee, Benevolence
       International Foundation, Saudi Red Crescent Society, the Saudi Joint Relief
       Committee, Saudi High Commission for Donations and Collections for Bosnia
       Herzegovina, Al Haramain Islamic Foundation, Inc., the IIRO, WAMY, and the
       MWL (among others), agreed to injure the United States through acts of
       international terrorism, *see, e.g.*, MDS ¶¶ 9-11, 15, 17-18, 20-21, 30-32;[2]

(2)    the September 11 attacks were acts done in furtherance of that common scheme,
       *see, e.g.*, TAC, Introduction, ¶¶ 6-11; MDS ¶ 44;

(3)    Jameel actively participated and cooperated in that conspiracy by knowingly and
       intentionally providing such material support as currency, communications
       equipment (a phone), and transportation (vehicles) to al Qaeda and several al Qaeda
       front charities to launch terrorist attacks against America, *see* MDS ¶¶ 9, 12, 13,
       14, 19, 21, 23, 24, 25, 30, 31, 32, 36, 38-40, 41; and

(4)    the September 11 attacks caused Plaintiffs' decedents' deaths and injuries, *see, e.g.*,
       TAC at ¶¶ 4, 11.

Accordingly, the Complaint makes a *prima facie* showing of conspiracy between Jameel

and his conspirators to injure the United States through terrorist attacks. Not only was the

conspiracy directed at the U.S., but the Complaint expressly alleges that Jameel's co-conspirators,

identified above, had a physical presence in the United States, in some cases, in New York. *See,*

*e.g.*, TAC ¶¶ 228-29 (Adel Abdul Batterjee); ¶¶ 180, 183, 198 (Benevolence International

Foundation); ¶¶ 154-157, 173 (Al Haramain Islamic Foundation, Inc.); ¶¶ 237, 246 (International

---

[2]    For a civil conspiracy, tacit understanding is sufficient to infer agreement. *Diduck v.*
*Kaszycki & Sons Contractors, Inc.*, 774 F. Supp. 802, 813 (S.D.N.Y. 1991), *aff'd in part, rev'd in*
*part*, 974 F.2d 270 (2d Cir. 1992).

Islamic Relief Organization); ¶¶ 250-251, 260 (Muslim World League).  The allegations identified above also fairly permit the inference the September 11 attacks were carried out on behalf of the extensive al Qaeda network supported by the financiers such as Jameel.  *See Grove Press, Inc.*, 649 F.2d at 122.  By imputing the forum contacts of his al Qaeda co-conspirators to Jameel, the Court may exercise personal jurisdiction over him in accordance with due process.[3]

## II.   THE COMPLAINT SUFFICIENTLY ALLEGES A CAUSAL CONNECTION BETWEEN JAMEEL AND THE INJURIES AND DEATHS THAT OCCURRED ON SEPTEMBER 11, 2001

Jameel also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the primary ground that the Complaint fails to state a claim against him under the ATA.[4]  He argues that: (1) the Plaintiffs' claim cannot be maintained under 18 U.S.C. § 2333 because the September 11 attacks were acts of domestic terrorism and also constituted an "act of war" under 18 U.S.C. § 2336(a); (2) the ATA does not create a cause of action for providing "material support" to the September 11 hijackers in violation of 18 U.S.C. § 2339A, or aiding and abetting or conspiring with them; and (3) his alleged conduct is too remote to constitute the proximate cause of Plaintiffs' injuries.

### A.   Plaintiffs Have Sufficiently Alleged Acts of International Terrorism, and Therefore Have Stated a Valid Cause of Action Under the ATA.

As an initial matter, Jameel's argument that the September 11 attacks were acts of "'domestic terrorism' for which section 2333 of the Anti-Terrorism Act ("ATA") does not provide a cause of action" (*see* Jameel (03 CV 9849) Mem. at 10 n.19), is also unavailing.  The ATA

---

[3]    If the Court determines that Plaintiffs' allegations are not enough to establish personal jurisdiction, then Plaintiffs seek leave to conduct discovery to further determine the extent of Jameel's contacts with the United States.  *See* 45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, § 1351, at 253-59 (2d ed. 1990) (court has discretion to allow jurisdictional discovery and hold 12(b)(2) motion in abeyance).

permits a private cause of action for injuries resulting from international terrorism.  18 U.S.C. § 2333.  The ATA distinguishes between "domestic terrorism" and "international terrorism." "Domestic terrorism" is defined as involving "activities that . . . occur primarily within the territorial jurisdiction of the United States," 18 U.S.C. § 2331(5)(C), while "international terrorism" involves acts that "occur primarily outside the territorial jurisdiction of the United States, or *transcend national boundaries in terms of the means by which they are accomplished*, the persons they appear intended to intimidate or coerce, *or the locale in which their perpetrators operate* or seek asylum," 18 U.S.C. § 2331(1)(C) (emphasis added).

If there were ever a case in which the acts giving rise to a terrorist attack "transcended boundaries in terms of the means by which they are accomplished . . . or the locale in which their perpetrators operate," so as to constitute "international terrorism" under § 2331(1)(C), this is it. The Complaint makes clear that al Qaeda operated a global terrorist organization that drew its funding and other material support from around the world for the purpose of carrying out a jihad that ultimately resulted in the September 11 attacks.  As discussed previously, Plaintiffs have alleged that Jameel provided funding, telecommunications equipment and vehicles to al Qaeda in support of its terrorist agenda.  These allegations fall squarely within the ATA's definition of "international terrorism."  Indeed, Judge Baer has already concluded, in *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 221-22 (S.D.N.Y. 2003), that the facts underlying the September 11 attacks fall within the statute's definition of "international terrorism" and that the *Smith* plaintiffs pled a valid cause of action under the ATA.

Jameel next argues that the ATA does not provide a remedy for the September 11 attacks because such attacks constitute an "act of war" as defined in § 2331(4) and are therefore excluded

---

[4]     Jameel argues, albeit cursorily in a footnote, that Plaintiffs' other claims against him should be dismissed.  His arguments are addressed in Section II.E *infra.*

from the purview of § 2333.  Jameel's argument that certain acts of international terrorism give rise to civil liability under § 2333, but that "the 9/11 attacks crossed the line," (*see* Jameel (03 CV 9849) Mem. at 11), is nonsense.

Section 2336(a) provides that "[n]o action shall be maintained under section 2333 of this title for injury or loss by reason of an act of war."  Section 2331(4) defines "act of war" as "any act occurring in the course of – (A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin."  Jameel suggests that the September 11 attacks constitute an "act of war," as an "armed conflict between military forces of any origin" under subdivision (C).[5]  As an initial matter, Plaintiffs are not aware of any support in the case law, legislative history, surrounding statutes, or in policy in favor of the argument that § 2331(4)(C) includes certain *terrorist* acts in the phrase "armed conflict between military forces of any origin," rendering them non-compensable "act[s] of war."  Even if al Qaeda were deemed a "military force" for purposes of § 2331(4)(C), the exception requires an "armed conflict *between* military forces."   (Emphasis added.)   Jameel certainly cannot suggest that the individuals who were killed or injured in the September 11 attacks were a "military force."  Relatedly, the fact that the United States has used military force *in response to* the September 11 attacks does not render the September 11 attacks acts occurring in the course of an armed conflict between military forces.

In addition, Jameel takes out of context the frequent reference to the September 11 attacks as an act of war, Plaintiffs' reference to "armed conflicts" in their opposition brief to Al Haramain's Motion to Dismiss in *Burnett* (D.C. Docket No. 02-1616(JR)), and the other references cited in his brief.  Such references were not made in the context of construing

---

[5]      Jameel does not contend that the September 11 attacks fall under § 2331(4)(A) or (B).

§ 2331(4), and lend no support to Jameel's argument that § 2331(4) carves out an exception to the scope of § 2333 for certain terrorist acts (such as the September 11 attacks), but not others. Finally, it would be nonsensical to conclude that a group of terrorists could organize themselves in such a way to be considered a "military force," attack innocent citizens and residents of the United States, and have such an attack considered an "armed conflict between military forces of any origin," thereby taking themselves and their supporters out of the scope of the ATA, which, as Congress expressly directed, is intended to "impos[] liability at any point along the causal chain of terrorism."  S. Rep. No. 342, 1992 WL 187372, *22 (emphasis added).

> **B.     The Complaint Sufficiently Alleges Violations of the ATA.**

Jameel also argues that the ATA does not provide a cause of action for: (1) providing "material support" to the September 11 hijackers in violation of 18 U.S.C. § 2339A; (2) aiding and abetting the hijackers; or (3) conspiring with the hijackers.  Simply put, Jameel ignores the relevant case law and legislative history that provides that such support need not be given directly to the hijackers themselves.

Under the ATA, defendants are liable if they provided any material support to al Qaeda with knowledge of its terrorist agenda or if they aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct.  *See Boim*, 291 F.3d 1000; *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000); *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).  In *Boim*, the Seventh Circuit recognized two theories of causation under which a civil suit may be sustained under § 2333.  First, the court concluded, a plaintiff may recover under § 2333 if the defendants violated the criminal provisions of the ATA.  *See Boim*, 291 F.3d at 1012-14.  The relevant criminal provisions, set forth at 18 U.S.C. §§ 2339A, 2339B, and 2339C, impose liability on those who provide "material support" to acts of terrorism or to designated terrorist

organizations.[6]  Provision of material support gives rise to civil liability under § 2333 so long as the support was provided knowingly and intentionally.  *Boim*, 291 F.3d at 1015.

The second theory of causation endorsed by the Seventh Circuit permits recovery under § 2333 where the defendants have aided and abetted an act of international terrorism.  *Boim*, 291 F.3d at 1021.  With regard to this prong, it is not necessary for Plaintiffs to allege that Jameel knew specifically about the September 11 attacks.  Rather, it is enough that, when he provided financial support to bin Laden and al Qaeda, he knew or should have known that al Qaeda was preparing to engage in some kind of terrorist activity.  *See Halberstam*, 705 F.2d at 489.

Here, the Complaint alleges that Jameel provided "material support" to al Qaeda in violation of 18 U.S.C. § 2339B and that he aided and abetted al Qaeda in its terrorist enterprise. As discussed above, the Complaint alleges that Jameel provided "material support" in the form of currency, telecommunications equipment, and transportation to al Qaeda, and that his material support, aiding and abetting, and acts of conspiracy in supporting al Qaeda were a proximate cause of the September 11 attacks.   Under *Boim*, these allegations state claims against Jameel for violations of the ATA.

Moreover, Plaintiffs need not allege that Jameel provided his support directly to the terrorists who carried out the September 11 attacks.  Rather, as previously noted, Congress expressly stated its intention that the ATA be used to "interrupt, or at least imperil, the flow of money" to terrorists through the "imposition of liability at any point along the causal chain of terrorism."  S. Rep. No. 342, 1992 WL 187372, *22 (emphasis added).  Thus, it is sufficient that Jameel knowingly provided material support to those who instigated and planned the September 11 attacks.  Nor is it necessary for Plaintiffs to show that the specific dollars, telecommunications

---

[6]      The phrase "material support" refers to "the type of aid provided rather than whether it is substantial or considerable."  *See Boim*, 291 F.3d at 1015.

equipment or vehicles that Jameel provided were used in the September 11 attacks.  As the Ninth

Circuit held in *Humanitarian Law Project*, 205 F.3d at 1136, the knowing provision of "material

support" to a designated terrorist entity violates § 2339B regardless of whether the donor intended

to support the terrorist activities of the group and regardless of whether the particular support

provided to the organization can be traced to the resulting acts of terrorism.  The court explained:

> [A]ll material support given to such organizations aids their unlawful goals.
> Indeed, as the government points out, terrorist organizations do not maintain open
> books.  Therefore, when someone makes a donation to them, there is no way to tell
> how the donation is used. . . . More fundamentally, money is fungible; giving
> support intended to aid an organization's peaceful activities frees up resources that
> can be used for terrorist acts.

*Id.*  Far from requiring direct participation in a particular terrorist act, then, § 2339B does not

even require support for, or agreement with, the violent portion of a terrorist group's agenda;

rather, the statute recognizes that even the provision of "humanitarian" support to such a group

inevitably redounds to the benefit of the group's terrorist purposes.  *See also* 18 U.S.C.

§ 2339C(a)(3).  Thus, under § 2339B, anyone who knowingly contributes to the terrorist agenda is

responsible for all of the terrorist acts that transpire from that agenda.  Plaintiffs allege that Jameel

helped to support al Qaeda and its terrorist agenda.  Plaintiffs need not allege that this Defendant

purchased the specific "weapons" for the September 11 attacks when he helped provide the

financing that allowed bin Laden to train terrorists and to set up a vast terrorist infrastructure,

which in turn enabled multiple acts of international terrorism, including those attacks.

### C.     The Complaint Sufficiently Alleges that Jameel Knowingly and Intentionally Violated the ATA.

In this case, Plaintiffs have sufficiently alleged a cause of action under 18 U.S.C. § 2333

against Jameel.   The Complaint alleges that Jameel knowingly aided, abetted or otherwise

conspire to provide material support to al Qaeda with Adel Abdul Batterjee, Benevolence

International Foundation, Saudi Red Crescent Society, the Saudi Joint Relief Committee, Saudi

High Commission for Donations and Collections for Bosnia Herzegovina, Al Haramain Islamic Foundation, Inc., the International Islamic Relief Organization, the World Assembly of Muslim Youth, and the Muslim World League.  *See* MDS ¶¶ 10-11, 15, 17, 20, 22, 31.  Jameel's material support to al Qaeda is alleged to have come in the form of currency, communications equipment (a phone), and transportation (vehicles).  *See* MDS ¶¶ 9, 12-15, 17, 19, 21, 23-25, 30-32, 36, 38-41. Therefore, the Complaint states an ATA claim against Jameel.

Jameel makes a number of arguments challenging Plaintiffs' allegations with regard to timing and the "Golden Chain" list.  First, Jameel attempts to make much of the notion that the Complaint "ignores the timing of Mr. Jameel's alleged contributions and activities."  Jameel (03 CV 9849) Mem. at 4.  Third, Jameel contends that Plaintiffs merely allege that Jameel made contributions to charitable organizations and that "plaintiffs allege no facts to support an inference that Mr. Jameel knew at the time of any purported contribution that the charity was involved in terrorism, was a front for al Qaeda, or would pass the money on to terrorists."  Jameel (03 CV 9849) Mem. at 19.  This argument is incorrect and ignores the law.

The appropriate standard, of course, is whether Jameel knew or should have known that his support would fund al Qaeda's terrorist agenda against the United States.  Throughout the More Definite Statement relating to Jameel are allegations that his material support to al Qaeda and al Qaeda sponsors was given with the *contemporaneous* knowledge that such support would be used in furtherance of al Qaeda's terrorist agenda against the United States. *See, e.g.*, MDS ¶¶ 10-11, 23-24.  Specifically, however (and by way of example), Plaintiffs allege that Jameel intentionally and knowingly provided financial support to (among others) the World Assembly of Muslim Youth ("WAMY") *in December, 1999*.  *See* MDS ¶ 25.  Plaintiffs also allege that WAMY has been officially identified as a "suspected terrorist organization" by the FBI *since 1996*.  MDS ¶ 29. These allegations are sufficient under the case law and Rule 8 to support Plaintiffs' claim.

Second, regarding the "Golden Chain" document, it is simply a misrepresentation by Jameel that "[a]nother court has recognized that the list has no probative value." As Jameel states, he has brought a libel action in England against the Sunday Times, which filed a summary judgment motion. In order to prevail on summary judgment, the Times had to show that there were "sufficient grounds for enquiry into or investigation of Mr. Jameel's association through funding with [Osama bin Laden]." Jameel Exhibit T at 15 ¶ 32. Although the court concluded that the Golden Chain list, by itself, did not entitle to the Times to summary judgment, *id.* at 15-16 ¶¶ 34-36, the court did *not* hold that the Golden Chain list lacked any probative value.

### D.   Jameel's Conduct Is Not Too Remote to Constitute the Proximate Cause of Plaintiffs' Injuries.

Jameel also contends that Plaintiffs cannot satisfy their burden to show that his conduct was the proximate cause of the September 11 attacks under the ATA. This argument fails. Because the ATA "extend[s] civil liability for acts of international terrorism to the full reaches of traditional tort law, . . . causation may be demonstrated as it would be in traditional tort law." *Boim*, 291 F.3d at 1010, 1015. The scope of ATA liability involves, therefore, traditional notions of proximate cause and reasonable foreseeability. In order to establish proximate cause,

> The requirement that the injury must be one that was reasonably to be foreseen does not mean that the exact occurrence or the precise injury resulting from the act need be foreseen; all that is necessary is that the person charged with [the wrongful act] should have been able to foresee that some injury to some person might result from his act.

*Lamarca v. United States*, 31 F. Supp. 2d 110, 127 (E.D.N.Y. 1998); *see also* W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 43, p. 299 (5th ed. 1984) (recognizing the "quite universal agreement that what is required to be foreseeable is only the 'general character' or 'general type' of the event of the harm, and not its 'precise' nature, details, or above all manner of occurrence"); Restatement (Third) of Torts § 29 cmt. f. Furthermore, the concept of reasonable

foreseeability is applied more broadly in the context of intentional torts and reckless torts, as compared to negligence.  *See Meyers v. Epstein*, 282 F. Supp. 2d 151, 154 (S.D.N.Y. 2003).

Applying these principles of proximate cause and reasonable foreseeability, it becomes clear that the Complaint makes a *prima facie* showing of proximate cause.  Knowingly providing financial and material support to al Qaeda (i.e., an act of international terrorism under the ATA) is indisputably tortious, because Jameel should have foreseen that his support increased the risk that al Qaeda would intentionally kill Americans in terrorist attacks.  The hijackers' criminal acts do not supersede Jameel's conduct and break the chain of causation, as Congress expressly directed that the ATA is intended to "impos[] liability at any point along the causal chain of terrorism."  S. Rep. No. 342, 1992 WL 187372, *22 (emphasis added).

### E.      Plaintiffs' Non-ATA Claims Against Jameel.

Albeit in a footnote, Jameel also argues that Plaintiffs' non-ATA claims against him should be dismissed for failure to state a claim.  *See* Jameel (03 CV 9849) Mem. at 24 n.35.  First, regarding Plaintiffs' claim under the ATCA, Jameel's one-sentence challenge should be dismissed as inadequately briefed.  *See Kurowski v. City of Bridgeport*, 1988 WL 25417 (D. Conn. Mar. 14, 1988).  In any event, Jameel improperly states the law.  He first states that the ATCA does not impose liability on private, non-state actors.  That is incorrect.  *See Kadic v. Karadzic*, 70 F.3d 232, 239-40 (2d Cir. 1995) (citing examples); *Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 22 n.5 (D.D.C. 2000); *see also Sosa v. Alvarez-Machain*, 124 S. Ct. 2739, 2766 n.20 (2004).

Jameel also states that the ATCA does not create a cause of action for aiding and abetting or conspiracy.  This, too, is incorrect.[7]  *Hilao v. Estate of Marcos*, 103 F.3d 767, 776 (9th Cir.

---

[7]      The only citation provided by Jameel in challenging Plaintiffs' ATCA claim is *Sosa v. Alvarez-Machain*, 124 S. Ct. 2739, 2755 (2004).  *Sosa* does not, however, alter the viability of Plaintiffs' claim.  In *Sosa*, the U.S. Supreme Court held that the plaintiff's ATCA claim failed.  In

1996); *Pres. Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 343-44 (S.D.N.Y. 2003(collecting cases); *Barrueto v. Larios*, 205 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2002); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1355-56 (N.D. Ga. 2002); *Abebe-Jira v. Negewo*, 72 F.3d 844, 845-48 (11th Cir. 1996); *Carmichael v. UTC*, 835 F.2d 109, 113 (5th Cir. 1988).

With respect to Plaintiffs' RICO claim, Jameel claims that the ruling by the D.C. court dismissing Plaintiffs' RICO claim against certain defendants prior to consolidation is law of the case. This Court is not bound, however, by that ruling. *See* Fed. R. Civ. P. 54(b) (orders adjudicating claims against fewer than all defendants open to revision prior to final judgment); *In re Grand Jury Proc. (Kluger)*, 827 F.2d 868, 871 n.3 (2d Cir. 1987); *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1308-09 (S.D.N.Y. 1996). Accordingly, this Court need not follow, and may indeed modify, the D.C. court ruling in order to achieve uniformity in this consolidated proceeding.[8] Finally, because Plaintiffs have adequately stated a claim under (among others) the ATA, Plaintiffs' state law claims should not be dismissed under § 1367(c).[9]

## CONCLUSION

For the foregoing reasons, this Court should deny Jameel's motion to dismiss for lack of jurisdiction in its entirety.

Dated: New York, NY                           Respectfully submitted,

---

a split decision, Justice Souter (with whom Justices Ginsburg and Breyer agreed), reasoned that the plaintiff's claim failed because the norm asserted was not sufficiently specific. *Id.* at 2761-62.

[8]    Should the Court decide to revisit the viability of Plaintiffs' RICO claim, Plaintiffs respectfully refer the Court to the RICO section of their opposition memoranda to the motions to dismiss of Al Rajhi Banking & Investment Corporation, Al Haramain Islamic Foundation, and Muslim World League filed in *Burnett* prior to consolidation.

[9]    Plaintiffs recognize that, with the evidence currently available, they cannot maintain their claim under the Torture Victims Protection Act ("TVPA") as against this Defendant, although they continue to pursue it against other Defendants in this case. If additional information becomes available that necessitates a change in this position, Plaintiffs will amend their allegations.

October 18, 2004

   /s/_____

Ronald L. Motley, Esq. (SC Bar #4123)
Jodi Westbrook Flowers, Esq. (SC Bar #66300)
Donald A. Migliori, Esq. (RI Bar #4936)
Michael Elsner, Esq. (NY & VA Bar #ME-8337)
Ingrid L. Moll, Esq. (IM-3949)
Robert T. Haefele, Esq. (NJ-58293; PA-57937)
Justin B. Kaplan, Esq. (TN-022145)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Harry Huge, Esq. (D.C. Bar #55640)
HARRY HUGE LAW FIRM, LLP
Market Square North
1401 Ninth Street, N.W., Suite 450
Washington, D.C. 20004
(202) 824-6046

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

William N. Riley, Esq. (IN Bar #4941-49)
Amy Ficklin DeBrota, Esq. (IN Bar #17294-49)
RILEY DEBROTA LLP
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240
Telephone:  (317) 848-7939

Allan Gerson, Esq. (DC Bar #327494)
Attorney At Law
4221 Lenore Lane
Washington, DC 20008
Tel:  (202) 966-8557

Edward D. Robertson, Esq.
Mary Doerhoff Winter, Esq.
BARTIMUS, FRICKLETON, ROBERTSON

26

& OBETZ
200 Madison Street, Suite 1000
Jefferson City, MO 65101
Telephone:  (573) 659-4454

Jack Cordray, Esq. (SC-1400)
CORDRAY LAW FIRM
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 577-9761

*Attorneys for Plaintiffs*