IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

In re Terrorist Attacks on September 11, 2001          MDL 1570

------------------------------------------------x

*This filing applies to the Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment and
Development Corporation, et. al., 04 CV 01923 (RCC)*

U.S. DISTRICT COURT
FILED
OCT 1 5 2004
S. D. OF N.Y.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                     :
ESTATE OF JOHN P. O'NEILL, SR.,                                      :      **FIRST AMENDED**
**on behalf of JOHN P. O'NEILL, SR.,**                               :      **COMPLAINT**
deceased, and on behalf of decedent' s heirs-at-law,                 :
                                                                     :      **CLASS ACTION**
**J. P. O'NEILL, JR.,**                                              :
                                                                     :
**C.I. O'NEILL,**                                                    :
                                                                     :
**C. O'NEILL,**                                                      :
                                                                     :      **CASE NO:**
**D. A. O'NEILL,**                                                   :      **04-1923(RCC)**
                                                                     :
                                    Plaintiffs,                      :
                                                                     :      **Jury Trial Demanded**
**On Behalf of Themselves and**                                      :
**All Others Similarly Situated,**                                   :
                                                                     :
                           v.                                        :
                                                                     :
**AL BARAKA INVESTMENT**                                             :
**AND DEVELOPMENT CORPORATION,**                                     :
a/k/a AL BARAKA BANK, a/k/a DALLAH                                   :
AL BARAKA GROUP, LLC                                                 :
                                                                     :
**NATIONAL COMMERCIAL BANK** a/k/a NATIONAL                          :
COMMERCIAL BANK OF SAUDI ARABIA                                      :
                                                                     :
**FAISAL ISLAMIC BANK- SUDAN** a/k/a FAYSAL                          :

1

ISLAMIC BANK- SUDAN a/k/a FAISAL ISLAMIC      :
BANK a/k/a FAYSAL ISLAMIC BANK                :
                                              :
**AL-RAJHI BANKING AND INVESTMENT**           :
 **CORPORATION,** a/k/a AL RAJHI BANK         :
                                              :
**AL BARAKAAT EXCHANGE LLC,**                 :
a/k/a AL BARAKAAT BANK                        :
                                              :
**DAR AL MAAL ISLAMI** a/k/a DAR-AL-MALL AL   :
ISLAMI a/k/a DAR AL-MAAL AL- ISLAMI *(DMI)*   :
                                              :
**AL SHAMAL ISLAMIC BANK,**                   :
a/k/A SHAMEL BANK, A/K/A BANK EL SHAMAR       :
                                              :
**TADAMON ISLAMIC BANK**                      :
                                              :
**DUBAI ISLAMIC BANK**                        :
                                              :
**BANK AL-TAQWA, LTD.** a/k/a BANK OF TAQWA a/k/a :
BANK AL-TAQWA a/k/a BANK OF TAQWA LIMITED :
                                              :
**NADA INTERNATIONAL ANSTALT** a/k/a YOUSSEF M :
 NADA & CO GESELLSCHAFT MBH a/k/a YOUSSEF     :
 M. NADA ESTABLISHMENT                        :
                                              :
**ARAB BANK, PLC**                            :
                                              :
**SAUDI AMERICAN BANK**                       :
                                              :
**TRIPLE-B TRADING COMPANY GmbH**             :
                                              :
**TATEX TRADING GMBHT** a/k/a TATEX TRADING   :
GmbH                                          :
                                              :
**YOUSSEF M NADA & CO.** a/k/a YOUSSEF M      :
 NADA & CO GESELLSCHAFT MBH a/k/a YOUSSEF     :
 M. NADA ESTABLISHMENT                        :
                                              :
**INTERNATIONAL ISLAMIC RELIEF**              :
**ORGANIZATION,** a/k/a ISLAMIC RELIEF        :
ORGANIZATION, a/k/a INTERNATIONAL RELIEF      :
ORGANIZATION, a/k/a SUCCESS FOUNDATION        :

**MUSLIM WORLD LEAGUE,** :
a/k/a RABITA AL-ALAM AL-ISLAMI, a/k/a :
ISLAMIC WORLD LEAGUE :
:
**SAAR FOUNDATION** :
:
**RABITA TRUST** :
:
**AL-HARAMAIN ISLAMIC FOUNDATION,** :
**INC.,** a/k/a AL-HARAMAIN ISLAMIC FOUNDATION, :
a/k/a ISLAMIC AL-HARAMAIN :
:
**BENEVOLENCE INTERNATIONAL** :
**FOUNDATION**, a/k/a AL BIR AL DAWALIA, :
a/k/a AL BIR SOCIETY ORGANIZATION a/k/a :
BENEVOLENCE INTERNATIONAL FUND <u>and</u> :
BENEVOLENCE INTERNATIONAL FOUNDATION :
CANADA <u>and</u> BENEVOLENCE INTERNATIONAL :
FOUNDATION USA <u>and</u> BENEVOLENCE :
INTERNATIONAL FOUNDATION, INC. :
:
**WORLD ASSEMBLY OF MUSLIM YOUTH,** :
a/k/a WAMY INTERNATIONAL, INC., a/k/a WORLD :
ASSOCIATION FOR MUSLIM YOUTH :
:
**MUWAFFAQ FOUNDATION** a/k/a BLESSED RELIEF :
FOUNDATION a/k/a BLESSED RELIEF :
:
**SALEH ABDULLAH KAMEL** :
:
**KHALID BIN MAHFOUZ** a/k/a KHALED BIN :
MAHFOUZ a/k/a KHALID BIN MAHFOUZ :
:
**MOHAMMED AL FAISAL AL SAUD** :
:
**SULAIMAN ABDUL AZIZ AL-RAJHI** a/k/a :
SULEIMAN ABDEL AZIZ AL RAJHI a/k/a SULAIMAN :
ABDEL AZIZ AL RAJHI :
:
**KHALID SULAIMAN AL-RAJHI** :
:
**ABDUL MATIN TATARI** :
:
**MAZIN M.H. BAHARETH** :
:
**SHAHIR ABDULRAOOF BATTERJEE** :

| | |
|---|---|
| **HASSAN BAHTZALLAH** a/k/a HASSAN A. A. HAHFZALLAH | : |
| | : |
| **MOHAMMED MLJED SAID** a/k/a MOHAMMED MAJED SAID | : |
| | : |
| **HAMEL AL BARAKATI** | : |
| | : |
| **YOUSSEF M. NADA** *a/k/a YOUSSEF NADA a/k/a YOUSSEF MUSTAFA NADA* | : |
| | : |
| **ENAAM MAHMOUD ARNAOUT,** a/k/a ABDEL SAMIL, A/K/A ABU MAHMOUD, a/k/a AMU MAHMOUD AL SURI, a/k/a ABU MAHMOUD AL HAMAWI | : |
| | : |
| **YASSIN ABDULLAH AL QADI** a/k/a YASSIN AL-QADI, a/k/a YASSIN AL-KADI a/k/a YASIN AL-QADi | : |
| | : |
| **And JOHN DOES 1-99,** | : |
| Defendants. | : |
| _____ | X |

## CLASS ACTION COMPLAINT

1.      On September 11, 2001, 3029 individuals were murdered when nineteen terrorists perpetrated an attack on the United States that was unprecedented in history. The nineteen terrorists (hereinafter referred to as the "al Qaeda hijackers" or the "hijackers") were members of a terrorist network known as "al Qaeda." In a coordinated attack, they hijacked four passenger jet airliners, causing two jets to crash into the World Trade Center Towers in New York, and a third to crash into the Pentagon Building in Arlington County, Virginia. The fourth airliner crashed into a field near the town of Shanksville, Pennsylvania, after innocent passengers challenged the hijackers and prevented them from reaching their apparent destination in Washington, B.C.

2.     The attacks of September 11, 2001, were not isolated incidents, but rather a coordinated effort by the al Qaeda terrorist organization, planned for years by an extensive network of Islamic militants with the support, aid and assistance of banks, governments, and individuals. The leader of al Qaeda, Osama bin Laden, has admitted his responsibility for planning and carrying out the September 11 attacks. The al Qaeda organization, with the aid and assistance of various individuals, organizations and governments, sponsored, trained, funded, and supported the hijackers.

3.     Plaintiffs, through their undersigned attorneys, do hereby bring this Complaint seeking damages on behalf of themselves, as descendants and as Executor of the Estate of John P. O'Neill, deceased, and on behalf of a class of all those similarly situated, arising out of those terrorist attacks. Plaintiffs demand judgment against the Defendants, and, through their undersigned attorneys, do hereby bring this Class Action Complaint seeking damages arising out of those terrorist attacks, and states as follows:

4.     Plaintiffs are the Estate and immediate family of John P. O'Neill Sr., former head of the counterterrorism division of the Federal Bureau of Investigation ("F.B.I.) and the world's foremost expert on Islamic terrorism and Osama Bin Laden's terror network. John P. O'Neill, Sr., was killed in the attacks on the World Trade Center ("WTC").

5.     John P. O'Neill, Sr., became Chief of Security for the World Trade Center less than two weeks prior to the September 11th attacks. On the morning of September 11, 2001, John P. O'Neill, Sr., was in his office in the WTC South Tower at the time the first plane hit the North Tower. He immediately left his office and headed to the lobby of the North Tower to determine what had happened and to assess the damage. A command post was set up in the lobby of the North Tower from which he was able to direct the rescue efforts of the first emergency responders. When the second plane hit the South Tower, he returned there to coordinate the

5

rescue efforts in that building. John P. O'Neill, Sr., was killed when that the South Tower collapsed.

6.      On the morning of September 11, 2001, al Qaeda hijackers Mohammed Atta, Abdul Alomari, Wail al-Shehri, Waleed al-Shehri, and Satam al-Suqami hijacked American Airlines flight 11, bound from Boston to Los Angeles, and crashed it into the North Tower (Tower One) of the World Trade Center in New York.

7.      On the morning of September 11, 2001, al Qaeda hijackers Marwan al-Shehhi, Fayez Ahmed a/k/a/ Bamihammad Fayez, Ahmed al-Ghamdi, Hazma al- Ghamdi, and Molahd al-Shehri hijacked United Airlines Flight 175, bound from Boston to Los Angeles, and crashed it into the South Tower (Tower Two) of the World Trade Center in New York City.

8.      On the morning of September 11, 2001, al Qaeda hijackers Khalid al-Midhar, Nawalf al-Hazmi, Salem al-Hazmi, Hani Hanjour, and Majed Moqued hijacked American Airlines Flight 77, bound from Dulles Airport in Sterling, Virginia, to Los Angeles, California, and crashed it into the Pentagon in Arlington, Virginia.

9.      On September 11, 2001, al Qaeda hijackers Zihad Jarrah, Ahmed Al-Haznawi, Saeed Al-Ghamdi, and Ahmed al-Nami hijacked United Airlines Flight 93, bound from Newark, New Jersey to San Francisco, California, with the intention of crashing that plane into either the United States Capitol building or the White House in Washington, B.C. In a heroic act of defiance and courage, the passengers of Flight 93 overtook the hijackers, and the plane crashed near Shanksville, Pennsylvania, prior to reaching its target in Washington, B.C.

10.      All nineteen (19) hijackers were members of Osama Bin Laden's al Qaeda network. All of the hijackers received sponsorship, funding, training, and other support through the al Qaeda network.

11.      Plaintiffs move for judgment against Befendants, jointly and severally. In support

of their Complaint, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

12.     Jurisdiction arises pursuant to 28 U.S.C. §§1330(a), 1331 and 1332(a)(2) and 18 U.S.C. §2388. Jurisdiction also arises based on the Named Defendants' violations within the meaning of 28 U.S.C. §§1605(a)(2), (a)(5) and (a)(7) (the Foreign Sovereign Immunities Act), 28 U.S.C. §1350 ("Alien Tort Act"), the Torture Victim Protection Act, PL 102-256, 106 Stat. 73 (reprinted at 28 U.S.C.A. §1350 note (West 1993)), and 18 U.S.C. §2333. Plaintiffs allege that both personal and federal question jurisdiction exists and arise pursuant to these laws and statutes.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(2), 1391(d), 1391(f)(l), and 1391(f)(3).

## PLAINTIFFS
### *THE CLASS*

14.     The Plaintiffs specifically named below (the "Class Representatives") bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated persons and entities, as defined as follows:

> **The following persons shall be members of the Class: (1) all spouses, children, parents, or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11,2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11,2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11,2001.**

15.     All members of the Class are hereinafter referred to collectively as either the

**"Class"** or the **"Plaintiffs."** All persons who perished as a result of the September 11 terrorist attacks

are referred to collectively as the **"Decedents."**

## *ORIGINAL PLAINTIFFS*

16.     Plaintiffs' decedent, **John P. O'Neill, Sr.** was a United States citizen and a

resident of the State of New Jersey. He was killed in the terrorist attack on the World Trade Center

Towers in New York City on September 11, 2001.

17.     The **Estate of John P. O'Neill, Sr.** is the legal entity created to recover damages

on behalf of John P. O'Neill, Sr., deceased, and his heirs-at-law arising from the September 11, 2001

terrorist attack on the World Trade Center. Plaintiffs J. P. O'Neill, Jr., and C. I. O'Neill are co-

executors of the Estate of John P. O'Neill Sr., deceased.

18.     Plaintiff **J. P. O'Neill, Jr.,** is a United States citizen and a resident of the State of

Maryland. He is the surviving son of **John P. O'Neill, Sr.,** who was killed in the terrorist attack on

the World Trade Center Towers in New York City on September 11, 2001.

19.     Plaintiff **C. I. O'Neill** is a United States citizen and a resident of the State of New

Jersey. She is the surviving widow of **John P. O'Neill, Sr.,** who was killed in the terrorist attack on

the World Trade Center Towers in New York City on September 11, 2001.

20.     Plaintiff **C. O'Neill** is a United States citizen and a resident of the State of New

Jersey. She is the surviving daughter of **John P. O'Neill, Sr.,** who was killed in the terrorist attack

on the World Trade Center Towers in New York City on September 11, 2001.

21.     Plaintiff **D. A. O'Neill** is a United States citizen and a resident of the State of New

Jersey. She is the surviving mother of **John P. O'Neill, Sr.,** who was killed in the terrorist attack on

the World Trade Center Towers in New York City on September 11, 2001.

8

## DEFENDANTS

22.     Defendants Al Baraka Investment & Development Corporation a/k/a Al Baraka Bank a/k/a Dallah Albaraka Group, LLC, National Commercial Bank, a/k/a Natiional Commercial Bank of Saudi Arabia, Faisal Islamic Bank – Sudan a/k/a Faysal        Islamic Bank-  Sudan a/k/a Faisal Islamic Bank a/k/a Faysal Islamic Bank, Al Rajhi Banking and Investment a/k/a/ Al Rajhi Bank, Al Barakaat Exchange LLC a/k/a al Barakaat Bank, Dar al Maal al Islami a/k/a a/k/a Dar-Al-Mall Al Islami a/k/a Dar al-Maal al- Islami *(DMI)*, Al Shamal Islamic Bank a/k/a Shamel Bank a/k/a/ Bank el Shamar, Tatex Trading GmbH, Triple-B Trading GmbH, Tadamon Islamic Bank, Arab Bank, PLC, Dubai Islamic Bank, Bank al-Taqwa, Ltd. a/k/a Bank of Taqwa a/k/a Bank Al-Taqwa a/k/a Bank of Taqwa Limited, Nada International Anstalt a/k/a Yousef M. Nada & Co Gesellschaft MBH a/k/a Youssef M. Nada Establishment, Saudi American Bank, Youssef M Nada & Co. Yousef M. Nada & Co Gesellschaft MBH a/k/a Youssef M. Nada Establishment, and Islamic Investment Company of the Gulf (Bahrain) EC, are banks, financial organizations, and companies located all over the world who have conspired with Osama bin Laden and al Qaeda to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaeda in order to support and finance their terrorist activities including, but not limited to, the September 11th attacks.

23.     Defendants Saleh Abdullah Kamel, Abdul-Matin Tatari, Mazin M.H. Bahareth, Shahir Abdulraoof Batterjee, Hassan Bahfzallah a/k/a Hassan A.A. Hahfzallah, Mohammed Majed Said a/k/a Mohammed Mljed Said, Hamed al- Barakati, Yassin Abdullah al Qadi a/k/a Yassin Al-Qadi a/k/a Yassin al Kadi a/k/a Yasin al-Qadi, Youssef M. Nada a/k/a YoussefNada a/k/a Youssef Mustafa Nada, Khalid bin Mahfouz a/k/a Khaded Bin Mahfous a/k/a Khalid bin Mahfouz, Sulaiman Abdul Aziz al-Rajhi a/k/a Suleiman Abdel Aziz Al Rajhi a/k/a Sulaiman Abdel Aziz Al Rajhi, Mohammed al Faisal al Saud and Enaam Mahmoud Arnaout a/k/a Abdel Samil a/k/a Abu Mahmoud a/k/a Amu Mahmoud Al Suri a/k/a Abu

9

Mahmoud Al Hamawi are all businessmen, bankers, financiers, and operatives who have conspired with Osama bin Laden and al Qaeda to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaeda in order to support and finance their terrorist activities including, but not limited to, the September 11th attacks.

24.     Defendants International Islamic Relief Organization a/k/a Islamic Relief Organization a/ka International Relief Organization a/k/a Success Foundation, Muslim World League a/k/a Rabita Al-Alam Al-Islami a/k/a Islamic World League, Dar al Maal al Islami a/k/a Dar-Al-Mall Al Islami a/k/a Dar al-Maal al- Islami *(DMI)*, Saar Foundation, Rabita Trust, Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain, Benevolence International Foundation a/k/a Al Bir Al Dawalia a/k/a Al Bir Society Organization a/k/a Benevolence International Fund AND Benevolence International Foundation Canada AND Benevolence International Foundation USA AND Benevolence International Foundation, Inc., World Assembly of Muslim Youth a/k/a WAMY International, Inc. a/k/a World Association For Muslim Youth, and Muwaffaq Foundation a/k/a Blessed Relief Foundation a/k/a Blessed Relief are all charities and charitable foundations which are used as terrorist fronts to mask money transfers and provide cover for terrorist operatives and operations.

25.     These Defendants, located all over the world, conspired with Osama bin Laden, al Qaeda, Iraq, and the Taliban to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaeda in order to support and finance their terrorist activities including but not limited to, the September 11th attacks. Some of the banks, companies, and charities operate legitimately but also maintain a secret dual role as al Qaeda front organizations and actively support its terrorist activities and goals. Some of those organizations are purely a sham front for al Qaeda.

26.     In a similar fashion, some of the individual Defendants operate apparently

legitimate charities, while maintaining a secret dual role as Al Qaeda operatives, and others are full-fledged members of Al Qaeda who operate openly.

27.     Defendants John Does 1-99 are other officials, employees, and/or agents or instrumentalities of the named Defendants, or others, whose identities are presently unknown, who performed acts that resulted in acts of terrorism, including the actions relating to the attacks on the World Trade Center on September 11, 2001, which caused the extrajudicial killing of the decedent John P. O'Neill, Sr., and others. Defendants John Does 1-99 acted as officials, employees, and/or agents or instrumentalities of the named Defendants, performed acts within the scope of their offices, employments and/or agencies, within the meaning of 28 U.S.C. § 1605 note, which caused the extrajudicial killings described herein.

## FACTUAL ALLEGATIONS AGAINST THE DEFENDANTS

### *Al Baraka Investment and Development Corporation and Dallah Albaraka Group*

28.     Defendant Al Baraka Investment & Development Corporation (or "al Baraka"), a wholly owned subsidiary of Dallah Albaraka Group LLC, is based in Jeddah, Saudi Arabia. Its investments include 43 subsidiaries, mainly banks in Arab and Islamic countries. Most of them are known as or registered as "al Baraka Bank." United States assets include al Baraka Bancorp Inc. in Chicago, Illinois, and al Baraka Bancorp Inc. in Houston, Texas.

29.     Dallah Albaraka Group LLC (or "Dallah Albaraka"), a diversified conglomerate based in Jeddah, Saudi Arabia, is involved in various industries, services and financial activities. The group includes twenty-three banks in Arab and Islamic countries, in addition to several investment and financial companies.

30.     Defendants al Baraka and Dallah Albaraka have played direct roles in funding al Qaida, in part, through Defendant al-Haramain, and another terrorist organization, HAMAS.

31.     The al Baraka Bank provided Osama bin Laden with financial infrastructures in the

Sudan beginning in 1983.

### National Commercial Bank

32.     Defendant National Commercial Bank (or "NCB") was founded in 1950. The largest bank in the Kingdzom of Saudi Arabia, Defendant NCB also has several wholly-owned subsidiaries, including SNCB Corporate Finance Ltd. in London, SNCB Securities Ltd. in London, and SNCB Securities Ltd. in New York City through which it operates an international banking enterprise.

33.     Defendant Khalid bin Mahfouz was President and CEO of the Defendant National Commercial Bank and remained in that position until 1999. He was also the largest shareholder on NCB. Khalid bin Salim bin Mahfouz was previously Chief Operating Officer of the Bank of Credit and Commerce International ("BCCI") from 1986 to 1990.

34.     NCB has been used by Osama bin Laden and al Qaeda as a financial arm and a conduit for al Qaeda operations. A 1998 bank audit revealed that, over a ten year period, NCB funneled $74 million to the Defendant International Islamic Relief Organization. The audit also revealed a $3 million transfer to Defendant Muwaffaq Foundation, a charity founded by Khalid bin Salim Mahfouz which supports Osama bin Laden. Former Central Intelligence Agency Director James Woolsey testified before the Senate Judiciary Committee that bin Mahfouz was Osama bin Laden's brother-in-law by marriage. Khalid bin Salim Mahfouz has set up various charity organizations around the world since 1991, many of which are linked to al Qaeda and are involved in financing Osama bin Laden's al Qaeda operations.

### Faisal Islamic Bank - Sudan

35.     Defendant Faisal Islamic Bank was one of the five main founders of al Shamal Islamic Bank. Defendant Mohammed al Faisal al Saud is heavily involved in the sponsorship of

terror through Faisal Islamic Bank - Sudan.

36.    Defendant Faisal Islamic Bank was implicated in the management of al Qaeda operatives' bank accounts by the testimony of a former finance manager of al Qaeda during the trial on the 1998 U.S. embassy bombings in Africa.

### Al-Rajhi Banking and Investment Corporation

37.    Defendant al-Rajhi Banking & Investment Corporation has a network of nearly 400 branch offices throughout Saudi Arabia and manages seventeen subsidiaries across the world.

38.    Defendant al-Rajhi Banking & Investment Corporation is the primary bank for a number of charities that serve as al Qaeda fronts, including Defendants Al-Haramain Islamic Foundation, the Muslim World League, and Defendant the International Islamic Relief Organization.

39.    Defendant Sulaiman Abdul Aziz al-Rajhi has a history of financially supporting al Qaeda terrorists. Upon information and belief, co-conspirators, agents, aiders and abettors of the al-Rajhi banking scheme to fund or otherwise materially support terrorism include Defendant Sulaiman Abdul Aziz al-Rajhi, and Defendant Khalid Sulaiman al-Rajhi. All of these Defendants do business in and have a significant business presence in the United States and are also material sponsors of international terrorism.

### Al Barakaat Exchange LLC

40.    Defendant Al Barakaat Exchange LLC (or "al Barakaat") is an international banking enterprise based in Dubai, United Arab Emirates. The United States government designated al Barakaat and its branches as terrorist entities on November 7, 2001, and froze the organization's assets. High officials of the U.S. government have testified that the al Barakaat

companies are a principal source of funding, intelligence, and money transfers for Osama bin Laden.

### Dar Al Maal Islami

41.     Defendant Dar al Maal al Islami (or "House of Islamic Money" or "DMI") is the registered name for DMI Administrative Services SA and is headquartered in Cointrin, Switzerland. On October 17, 1983, Prince Mohamed al Faisal al Saud became CEO of DMI. Under Mohammed al Faisal al Saud's chairmanship, DMI developed banking, investment and insurance activities in approximately twenty offices around the world. His actions and breach of duty have aided, abetted, and provided material sponsorship of the spread of international terrorism and al Qaeda. DMI has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Defendant Faisal Islamic Bank, Defendant Tadamon Islamic Bank, and Defendant Al Shamal Islamic Bank.

### Al Shamal Islamic Bank

42.     Al Shamal Islamic Bank was formed in the Republic of the Sudan in April 1983, and started operations on January 2, 1990, in part with a capital contribution of some $50 million by Osama bin Laden. In or about 1984, Osama bin Laden moved several of his Saudi businesses and assets, or extended the reach of those businesses and assets, into the Sudan.

43.     Osama bin Laden and other al Qaida operatives had bank accounts with al Shamal Islamic Bank and used al Shamal to fund terrorist activities.

44.     In April 1984, al Shamal Islamic Bank issued shares to major shareholders, among others, Defendant al Baraka Investment and Development Corporation and Defendant Faisal Islamic Bank.

45.     The chairman and a major shareholder of al Shamal Islamic Bank is Adel Abdul

14

Jalil Batterjee, who is also chairman of al-Bir Saudi Organization, whos U.S. Branch, Benevolence International Foundation is also a front for al Qaida sponsorship.

46.     Batterjee was also chairman of a Saudi charity, the World Assembly of Youth ("WAMY"), which is the subject of an F.B.I, investigation for terrorist activities.

### *Tadamon Islamic Bank*

47.     Defendant Tadamon Islamic Bank was formed in Khartoum, Sudan on November 28, 1981. It has twenty-one different establishments and has several subsidiaries in the Sudan.

48.     Defendant Tadamon Islamic Bank has facilitated, materially sponsored, aided and abetted, and/or conspired with al Qaeda. According to testimony in the 2001 trial of the 1998 U.S. embassy bombings in Africa, Tadamon Islamic Bank managed the financial accounts of al Qaeda operatives.

49.     Defendant Tadamon Islamic Bank is also a shareholder of Defendant al Shamal Islamic Bank which is used extensively to support and finance al Qaeda operations.

### *Dubai Islamic Bank*

50.     Defendant Dubai Islamic Bank, headquartered in the United Arab Emirates, and is a shareholder of Baraka Islamic Bank EC, an affiliate of Defendant Al Baraka Bank, and is also a shareholder of Defendant Tadamon Islamic Bank of the Sudan.

51.     Defendant Dubai Islamic Bank has a history of money laundering, including for Osama bin Laden.

52.     Defendant Dubai Islamic Bank is involved in providing financial facilities and support to terrorists, including those involved in the September 11, 2001 attacks. U.S. authorities have identified at least $500,000 that flowed from Mustafa Ahmed al-Hisawi's accounts at the Dubai Islamic Bank to several of the hijackers, including Mohammed Atta and Marwan al-

Shehhi. They used the money to pay for their flight training at two airports and for other expenses related to the attacks.

### Bank al-Taqwa Limited

53.   Defendant Bank al-Taqwa Limited ("al-Taqwa"), established during the spring of 1988 in Nassau, Bahamas, has been shrouded in secrecy. The actual number and locations of its branches are unclear, although it is reported to have a presence in some thirty countries.

54.   Defendant Bank al-Taqwa Limited was founded by members of the Muslim Brotherhood, including Defendant Youssef Nada, a member of the Egyptian Muslim Brotherhood for fifty years, and a member of Jamaa al-Islamiye, which is directly tied to al Qaeda through Dr. Ayman al-Zawahiri, second in command to Osama bin Laden.

55.   On November 7, 2001, Bank al-Taqwa, its affiliated businesses, and its key executives were designated as financial supporters of al Qaeda by President George W. Bush. The President explained that Bank al-Taqwa has helped raise money for, and has shifted money around the world, for al Qaeda. It also provides terrorists with internet connections, telephone communications, and shipment of weapons. The President also stated that Bank al-Taqwa skims money off of transactions and transfers the money to al Qaeda.

56.   On August 29, 2002, fourteen additional organizations affiliated with Bank al-Taqwa had their assets frozen for financially aiding and supporting al Qaeda.

57.   efendant Nada International Anstalt is an instrumentality of Defendant al-Taqwa and is used to aid and abet al Qaeda terror operations.

58.   Defendant Youssef Nada is a executive of Defendant al-Taqwa who is involved in supporting, aiding and abetting al Qaeda terrorist activities.

### Arab Bank, PLC

59.     Defendant Arab Bank, PLC, with branch offices in the U.S., and across the world, operates an international banking system used regularly by al Qaeda's Spanish cell for transfers of cash to al Qaeda operatives in many countries.

60.     Defendant Arab Bank, PLC, has materially supported, aided, abetted, and financed al Qaeda.

### Saudi American Bank

61.     Defendant Saudi American Bank, based in Riyadh, Saudi Arabia, was formed by royal decree in 1980, and is the second largest bank in the country. It has U.S. offices in New York.

62.     Defendant Saudi American Bank serves as the bank for the Defendant Dallah al Baraka Group, which is chaired by Defendant Saleh Abdullah Kamel, who also has undertaken financial transactions through Defendant al-Taqwa Bank.

63.     In 2000, Defendant Saudi American Bank participated in the fund raising campaign in Saudi Arabia for collecting donations to the "heroes of the Al Quds uprising" (Intifada) by providing a bank account and facilities to receive donations for a committee of charity organizations including Defendants WAMY, IIRO and the al Haramain Foundation.

### Triple-B Trading Gmbh of Rethwisch

64.     Defendant Triple-B Trading Gmbh of Rethwisch, Germany ("Triple-B"), is owned by Defendant Abdul-Matin Tatari, who also owns the Hamburg, Germany, firm Tatex Trading Gmbh, together with other major shareholders Defendants Mazin M.H. Bahareth and Shahir Abdulraoof Batterjee, and Hassan Bahtzallah. All of these wealthy Saudis are linked to Defendant Enaam Mahmoud Arnaout.

65.    Defendant Arnaout, the current Chief Executive Officer of Defendant Benevolence International Foundation ("BIF"), was criminally indicted for his role in sponsoring al Qaeda through diversion of charitable funds.

66.    Defendant BIF and Defendant Arnaout facilitated the travel of an influential founding member of the al Qaeda network, Mamdouh Mahmud Salim (a/k/a Abu Hajer al Iraqi), to Bosnia-Herzegovina by indicating that Salim was a director of BIF in or about May 1998. Salim, arrested in Munich, Germany in February 1999, was associated with Mamoun Darkanzanli, a former employee of Defendant Tatex Trading GmbH. Darkanzanli has appeared in a video with several September 11th hijackers made at the wedding of accused September 11th co-conspirator Said Bahaji, a former friend and fellow student of Mohammed Hady Tatari.

67.    Defendant Triple-B has hired a number of persons associated with the September 11th hijackers. Hijacker Mohammed Atta was employed by Defendant Tatari for a period of time. Defendant Tatari is a member of the Syrian Brotherhood.

68.    Defendant Triple-B and its principal shareholders and associates have materially supported, aided, abetted, and financed al Qaeda.

### *Tatex Trading Gmbh*

69.    Defendant Tatex Trading Gmbh, a Hamburg, Germany company, is owned by Defendant Abdul-Matin Tatari.

70.    Among Tatex Trading's principal shareholders are Mohammed Majed Said, a member of the Syrian National Security Council and a former Director of the Syrian intelligence service, and Hamed al Barakati of Mecca, Saudi Arabia.

71.    Defendant Tatex Trading and its principal shareholders and associates have materially supported, aided, abetted, and financed al Qaeda.

### *Youssef M. Nada & Co.*

72.    Defendant Youssef M. Nada & Co., a co-conspirator of Defendant Bank al-Taqwa Limited, has aided, abetted, and materially sponsored and al Qaeda and international terrorism.

### *International Islamic Relief Organization*

73.    Defendant International Islamic Relief Organization ("IIRO") has materially supporter terror around the globe, including Osama bin Laden and al Qaeda. IIRO's office in the Philippines is headed by Osama bin Laden's brother-in-law and has acted as a center of terrorist financing and training activity worldwide. IIRO was involved in funding the 1993 WTC bombing and the 1998 embassy bombings in East Africa, as well as plots to destroy the Lincoln Tunnel and the Brooklyn Bridge, to assassinate President Bill Clinton and Pope John Paul II, and to blow up twelve American airplanes simultaneously.

74.    ERG sister organizations, the International Relief Organization ("IRO") and the Success Foundation, circulate money with the ERG in the course of funding terror operations. The Secretary of the Success Foundation, Abdurahman Alamoudi, has openly supported HAMAS and Hezbollah, both designated Foreign Terrorist Organizations.

75.    Defendant IIRO's parent organization, Defendant Muslim World League, has been infiltrated by Osama bin Laden and al Qaeda associates.

76.    Defendant IIRO's major financing comes from Saudi Arabia, King Fahd, and the royal family.

77.    Defendant IIRO works in concert with other charities, including Defendants BIF and WAMY, to fund and support al Qaeda.

78.    Defendant IIRO also supported and funded the Taliban in Afghanistan, which in turn provided sanctuary to Osama bin Laden and al Qaeda.

### Muslim World League

79.    Defendant Muslim World League ("WML"), founded in 1962 in Saudi Arabia, is the parent organization of Defendant IIRO, and it uses the DRO as an operational arm.

80.    Defendant MWL is funded, supported, financed, and controlled by government of Saudi Arabia.

81.    Defendant MWL has numerous connections to al Qaeda operatives. Osama bin Laden's brother-in-law, Jamal Khalifa, opened a MWL office in Pakistan for the purpose of providing an umbrella under which al Qaeda could operate there freely. Wa'el Jalaidan, named by the U.S. Treasury Department as one of the founders of al Qaeda, headed the MWL office is Peshawar, Pakistan, and also served as the Secretary-General of the Defendant Rabita Trust. Wadih el-Hage, convicted for his role in the 1998 U.S. Embassy bombings in Africa, stated at his trial that he also worked for MWL in Peshawar. Diab Ali, another al Qaeda operative, now in a U.S. prison, and who played a major role in the U.S. Embassy bombings and who piloted Osama bin Laden's personal jet, also worked for the MWL.

### SAAR Foundation

82.    Defendant SAAR Foundation ("SAAR") was formed in the 1970' s by a group of Muslim scholars and scientists from the Middle East and Asia. Incorporated in Herndon, Virginia, a suburb of Washington, B.C., as a 501c(3) non-profit organization on July 29, 1983, it was dissolved as of December 28, 2000.

83.    The SAAR Foundation reported revenues of over $1.7 billion in 1998, more than any U.S. charity has ever generated. Yet SAAR does not reach out publicly to potential donors, keeping a low public profile.

84.    SAAR was a long-time financially supporter of terrorism. According to the Virginia Secretary of State Corporate Records, there are more than one hundred affiliated

organizations registered or doing business at just one of SAAR's addresses in Herndon, Virginia. Most of these organizations do not maintain a physical presence there, or anywhere. The SAAR network is a sophisticated arrangement of front groups for fundamentalist Islamic terrorist organizations. After September 11, 2001, the SAAR network was raided under a search warrant by the U.S. Treasury Department's Operation Greenquest looking for "potential money laundering and tax evasion activities and their ties to terrorist groups such as ... al Qaeda as well as individual terrorists . . . (including) Osama bin Laden."

85.     Two SAAR executives were former executives at Defendant Bank al-Taqwa . Two others worked for Defendant Youssef M. Nada, the head of al-Taqwa, whose assets were frozen along with al-Taqwa. Other SAAR associates were implicated in the 1998 U.S. Embassy bombins in East Africa.

86.     The SAAR network is closely intertwined with Defendants IIRO, MWL, and other related charities.

### *Rabita Trust*

87.     Defendant Rabita Trust is a charitable organization created in 1988 jointly by the government of Pakistan and the Defendant MWL to organize the repatriation and rehabilitation of stranded Pakistanis (Biharis) from Bangladesh. During its 15-year existence it has managed to relocate only a few hundred Biharis.

88.     Defendant Rabita Trust is a front for al Qaeda, and its head, Wa'el Jalaidan, is one of the founders of al Qaeda and its logistics chief. He is a long-time associate of Osama bin Laden.

89.     A subsidiary of the MWL, Defendant Rabita Trust is connected to the SAAR Network through its officers.

90.     Defendant Rabita Trust was designated by President George W. Bush as a

"Specially Designated Global Terrorist Entity, and its assets have been frozen by the U.S. Treasury Department.

### Al-Haramain Islamic Foundation, Inc.

91.     Defendant al-Haramain Islamic Foundation, Inc. ("al-Haramain"), based in Riyadh, Saudi Arabia, is a private charitable organization that is supposed to provide a variety of humanitarian services to Muslims worldwide. It has a vast network of offices and representatives spanning fifty nations. Defendant al-Haramain raises most of its funds in Saudi Arabia, and it is controlled from its Riyadh headquarters.

92.     Defendant al-Haramain is a charity front for al Qaeda and Osama bin Laden and provides direct material support to al Qaeda. In December 1999, al-Haramain conducted a joint fundraising event with Defendants ERG and WAMY in Riyadh.

93.     Defendant al-Haramain's branch in Ashland, Oregon, is specifically linked to al Qaeda operations.

94.     The U.S. government has designated two al-Haramain branches, in Bosnia and Somalia, as terrorist entities and has frozen the assets of both because they are clearly linked to terrorist financing. Both branches are controlled, including their funding, management, and direction, by the central al-Haramain headquarters in Riyadh, Saudi Arabia.

95.     Defendant al-Haramain's branch in Jakarta, Indonesia, is the main financial mechanism for funding terrorist operations in the region, including those of al Qaeda affiliate Jemaah Islamiye, and has played a role in terrorist attacks in that country.

96.     Defendant al-Haramain was banned from Kenya after the 1998 U.S. Embassy bombings. Osama bin Laden and al Qaeda were indicted and convicted in the United States for plotting and executing these dual attacks in East Africa.

97.     Defendant al-Haramain uses its humanitarian mission to disguise its financing of

terrorist operations. It disguises the terrorist funds as, among other things, money for projects such as orphanage or Islamic school projects and mosque construction.

### Benevolence International Foundation

98.    Defendant Benevolence International Foundation ("BIF"), was originally founded in the 1980's by a wealthy Saudi Arabian, Adel Abdul Jalil Batterjee, an associate of Osama bin Laden. It is headquartered in Palos Hills, Illinois, and has offices in numerous Asian countries. It purports to be an international charity, but is actually an al Qaeda affiliate engaged in support of terrorist activities.

99.    One of BIF's directors is Defendant Adel Abdul Jalil Batterjee; Defendant Enaam Arnaout, a known associate of Osama bin Laden's, has also been affiliated with BIF.

100.    Defendant BIF is tightly connected with Defendant WAMY, sharing the same leadership and working together on many projects, including support for al Qaeda and its terrorist operations. One such project was the publication of a biography of Osama bin Laden and the origins of the al Qaeda network.

101.    Defendant BIF has been deeply involved in financing, supporting, and facilitating al Qaeda terror operations through provision of money, equipment, and information, and by concealing and fabricating information and evidence concerning same.

102.    Defendant BIF's involvement in support and financing for al Qaeda terrorist operations is disguised as charitable activities.

### World Assembly of Muslim Youth

103.    Defendant World Assembly of Muslim Youth ("WAMY") is tightly connected with Defendant BIF, sharing the same leadership and working together on many projects, including support for al Qaeda and its terrorist operations.   One such project was the publication

of a biography of Osama bin Laden and the origins of the al Qaeda network.

104.   Defendant WAMY is an al Qaeda front. In particular, it is involved in the production and/or distribution of al Qaeda training manuals, propaganda, and hate literature aimed against Americans, Christians, and Jews.

### *Muwaffaq Foundation*

105.   Defendant Muwaffaq Foundation, or "Blessed Relief," is a nominally charitable organization which is, in fact, a supporter of Osama bin Laden and al Qaeda. Muwaffaq Foundation was founded by Defendant Khalid bin Salim bin Mahfouz, who was dismissed from Defendant NCB after a bank audit revealed a $53 million transfer to Muwaffaq Foundation. Upon information and belief, such funds were channeled to al Qaeda.

## CLASS ACTION ALLEGATIONS

106.   Class Definition: Named Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated, as members of a proposed Class defined as follows:

> **The following persons shall be members of the Class: (1) all spouses, children, parents or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia or in the airliner crash in Shanksville, Pennsylvania as the result of terrorist attacks on September 11,2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11,2001; but excluding (3) all individuals, and all spouses, children, parents, siblings and legal representative of individuals, identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to or otherwise supported the terrorist attacks of September 11,2001.**

107.   Numerosity: The members of the Class are so numerous that their individual joinder

would be impracticable in that:

(a)     The Class includes the legal representatives and families of over 3,000 people murdered by defendants in the September 11, 2001 attacks in New York, Virginia and Pennsylvania;

(b)     It would be highly impractical and a waste of judicial resources for each of those approximately 3,029 Decedents and their related Class members to be individually represented in separate actions or a single action; and

(c)     Each of the putative Class members seek to recover damages based upon the common and coordinated conduct of the Defendants.

108.     Commonality of Factual and Legal Questions: Common questions of law and fact exist as to all members of the Class. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether damages alleged by the Class were proximately caused by the conduct of the Defendants;

(b)     Whether Defendants are liable to the Class for damages for wrongful death, survival and intentional infliction of emotional distress;

(c)     Whether the Defendants are liable to the Class for damages pursuant to the Foreign Sovereign Immunities Act, the Alien Tort Act and/or the Torture Victim Protection Act;

(d)     Whether Defendants are liable to the Class for punitive damages;

(e)     What is the proper method for calculating damages for members of the Class;

(f)     Whether members of the Class can gain access to those assets of Defendants that have been frozen by the United States Department of Treasury in order to satisfy a judgment; and

(g)     Whether members of the Class can gain access to those assets of Defendants that have been frozen by foreign states in order to satisfy a judgment.

109.    Typicality: The claims of the Class Representatives are typical of the claims of all members of the Class in that:

(a)     The Class Representatives and all other Class members suffered damages as the result of common conduct and acts of the Defendants;

(b)     Defendants used identical instruments, methods, and plans to inflict harm upon the Class Representatives and all other Class members;

(c)     The method used to compute compensatory damages will be identical for the Named Plaintiffs and all other members of the Class; and

(d)     Punitive damages should be awarded against the Defendants for singular acts that impacted the Class Representatives and all other Class members.

110.    Adequacy of Class Representatives: The Named Plaintiffs are adequate representatives of the Class in that:

(a)     The Class Representatives and all other Class members have a unity in interest in bringing this action against the Defendants;

(b)     The Class Representatives have made provision for adequate financial resources to be available for the conduct of this litigation in order to ensure that the interests of the Class will not be harmed; and

(c)     Members of the Class will be adequately represented by the Class Representatives and their Counsel who are experienced in class action litigation,

111.    Predominance of Common Issues and Efficiency of Class Treatment: The common issues of fact and law enumerated above predominate over any individual factual or legal issues, and a Class Action is a superior method for the fair and efficient adjudication of

those issues in that:

> (a)    Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the burden and expense to all parties and to the court system;

> (b)    By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court; and

> (c)    The claims of the Class Representatives and each Class member as set forth above shall be governed by either federal law or substantially identical state law.

112.    **WHEREFORE,** Plaintiffs request that this Honorable Court certify this matter as a Class Action and award Plaintiffs and the Class damages on each of the causes of action stated herein plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## CLAIMS

### COUNT ONE
### *TORTURE VICTIM PROTECTION ACT*

113.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

114.    The actions of the Defendants, as described above, subjected the Decedents to torture and extrajudicial killing within the meaning of the Torture Victim Protection Act, Pub.L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C.A. §1350 note (West 1993)).

115.    In carrying out the extrajudicial torture and killings of the Decedents, the actions of each Defendant were conducted under actual or apparent authority, or under color of law.

116.    As a result of the Defendants' violation of the Torture Victim Protection Act, Class members suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT TWO
### *ALIEN TORT CLAIMS ACT*

117.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

118.    As set forth above, the Defendants, jointly and severally, caused the deaths of each of the Decedents through and by reason of acts of international terrorism. These terrorist activities constitute violations of the law of nations, including those international legal norms prohibiting torture, genocide, air piracy, terrorism, and mass murder.

119.    As a result of the Defendants' violation of the law of nations, all Class members suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

120.    Pursuant to 28 U.S.C. §1350, the estates, survivors, and heirs of Decedents who were aliens at the time of their deaths are entitled to recover damages they have sustained by reason of the Defendants' actions.

WHEREFORE, Plaintiffs who are estates, survivors and heirs of alien Decedents, on behalf of themselves and the Class, demand judgment in their favor against all

Defendants, jointly, severally, and/or individually, in excess of Ten Billion Dollars ($10,000,000,000), plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT THREE
### WRONGFUL DEATH

121.    Plaintiffs incorporate by reference the averments in the preceding paragraphs as though fully set forth at length.

122.    Decedents are survived by family members entitled to recover damages from all Defendants for wrongful death. These Plaintiffs and the Class are entitled to damages deemed as a fair and just compensation for the injuries resulting from the deaths of the Decedents.

123.    The injuries and damages suffered by the Plaintiffs and the Class by virtue of the death of the Decedents, and the consequences resulting therefrom, were proximately caused by the intentional and reckless acts, omissions, and other tortuous conduct of all Defendants as described herein.

124.    As a direct and proximate result of the deaths of the Decedents, their heirs have been deprived of future aid, assistance, services, comfort, and financial support.

125.    As a direct and proximate result of the Defendants' intentional, willful, and malicious killing of the Decedents, including barbaric and outrageous acts of murder, the heirs of the Decedents will forever grieve the deaths of the Decedents, and the Plaintiffs and the Class have suffered severe and permanent injuries, damages, and losses, including:

        a.    Economic damages, including but not limited to pecuniary losses, past and future wage losses, loss of support, loss of prospective inheritance; and

b.   Non-economic damages, including but not limited to the loss of consortium, solatium, society, companionship, care, comfort, love, mental anguish, bereavement and grief.

126.   As a further result of the intentional and reckless acts, omissions, and other tortuous conduct of the Defendants, the Plaintiffs and the Class have been caused to expend various sums to administer the estates of Decedents and have incurred other expenses for which they are entitled to recover.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT FOUR
### *SURVIVAL*

127.   Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

128.   Plaintiffs, on behalf of themselves and the class members, bring this action for damages suffered by the Decedents and caused by the Defendants' conduct. As a result of the intentional and negligent acts of the Defendants, as described above, the Decedents suffered conscious pain and suffering and fear of their impending deaths, were placed in apprehension of harmful and offensive bodily contact (assault), suffered offensive and harmful bodily contact (battery), suffered extreme fear, anxiety, emotional and psychological distress (intentional/negligent infliction of emotional distress), and were mentally and physically harmed,

trapped, and falsely imprisoned (false imprisonment) prior to their deaths.

129.    As a result of the Defendants' murderous conduct, the Decedents suffered damages including pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, loss of accretion to their estates and other items of damages, as fully set forth in the paragraphs above which are incorporated herein by reference.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT FIVE
### *NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

130.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

131.    All Defendants knew or should have known that their actions in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11, 2001, attacks, would result in the murder of innocent persons, leaving family members with severe and permanent physical, psychological, and emotional injuries.

132.    The actions of the Defendants in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11, 2001, attacks, were intentional, malicious, willful, unconscionable, reckless,

and/or negligent.

133.    As a direct and proximate result of Defendants' intentional, malicious, willful, unconscionable, reckless, and/or negligent conduct, Plaintiffs and the Class have suffered and will forever in the future suffer severe and permanent psychiatric disorders, emotional distress and anxiety, permanent psychological distress, and permanent mental impairment requiring ongoing and long-term expenses for medical services, care, and counseling, as well as other economic losses.

134.    The Defendants, by engaging in this unlawful conduct, negligently and/or intentionally inflicted emotional distress upon Plaintiffs and the Class members.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT SIX
### *CONSPIRACY*

135.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

136.    As set forth more fully above, all Defendants conspired to commit acts of international terrorism against the United States, its nationals and allies, which conspiracy included the provision of material support and resources to al Qaeda, Osama bin Laden, the hijackers, and affiliated foreign states, FTO's, persons, organizations, commercial entities and other parties.

32

137.    As set forth above, all Defendants engaged in concerted efforts and activities designed to attack the United States and inflict harm on U.S. citizens and property.

138.    As set forth above, the Defendants' conspiracy resulted in the September 11th terrorist attacks that killed the Decedents.

139.    The September 11th attack was a direct, foreseeable, and intended product of the conspiracy among the Defendants, as set forth above, to commit acts of international terrorism against the United States, its nationals and allies.

140.    As a result of the Defendants' conspiracy, as set forth above, Plaintiffs and the Class have suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT SEVEN
### *AIDING & ABETTING*

141.    Through the material support and resources provided to al Qaida, the Defendants aided and abetted al Qaida, Osama bin Laden, and the hijackers in their campaign to commit acts of international terrorism against the United States, its nationals, and allies.

142.    The September 11, 2001 attack was a direct, intended and foreseeable product of the aiding and abetting of al Qaida, Osama bin Laden, and the hijackers by the Defendants.

143.    The damages suffered by the Plaintiffs and the Class, as described in greater detail herein, were the direct and proximate result of the aforesaid aiding and abetting of al

Qaida,

Osama bin Laden, and the hijackers by the Defendants, acting individually and in concert with one another and other co-conspirators.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the class members, demand judgment in their favor against all defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT EIGHT
### *NEGLIGENCE*

144.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

145.    As set forth above, the September 11, 2001 attack was a direct, intended and foreseeable product of a larger conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies.

146.    The conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to al Qaida, Osama bin Ladin, the hijackers, affiliated foreign states, foreign terrorist organizations, persons, organizations, commercial entities, and other parties.

147.    By virtue of their participation in the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11, 2001 attack, the Defendants negligently, intentionally, recklessly, willfully

and wantonly breached duties of care owed to the Plaintiffs, the Class, and Decedents.

148.    The damages suffered by Plaintiffs, the Class, and Decedents, as described herein, were the direct and proximate result of the aforesaid breaches of care by the Defendants.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the class members, demand judgment in their favor against all defendants, jointly, severally, and/or individually, in an amount in excess of Ten Billion Dollars ($10,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT NINE
### 18 U.S.C. §2333 (ANTI-TERRORISM ACT)

149.    Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

150.    The September 11th attack constitutes an act of international terrorism within the meaning of 18 U.S.C. §2331.

151.    As set forth above, the Defendants, jointly and severally, caused the deaths of each of the Decedents through and by reason of acts of international terrorism.

152.    As a result of the Defendants' acts of international terrorism, Plaintiffs and the Class suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

153.    Pursuant to 18 U.S.C. §2333, the estates, survivors, and heirs of the Decedents who are nationals of the United States are entitled to recover threefold the damages they have sustained and the cost of suit, including attorneys' fees.

**WHEREFORE,** Plaintiffs who are nationals of the United States, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly,

severally, and/or individually, and demand treble damages in excess of Ten Billion Dollars ($10,000,000,000), plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT TEN
### *18 U.S.C. §1962(a) - CIVIL RICO*

154.   Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

155.   In furtherance of their conspiracy to commit acts of international terrorism against the United States, its nationals and allies, the Defendants engaged in a pattern of racketeering activity which included, without limitation: acts of murder, kidnapping, arson, robbery, and extortion; dealings in controlled substances and listed chemicals; the falsification of identification documents; the unlawful procurement, reproduction, sale and use of naturalization and citizenship papers, passports and visas; the obstruction of federal and state criminal investigations; and financial institution and mail fraud.

156.   The damages suffered by the Plaintiffs and class members, as described herein, were the direct and proximate result of the aforesaid pattern of racketeering activity by the Defendants, acting individually and in concert with one another.

**WHEREFORE,** Plaintiffs who are nationals of the United States, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, and demand treble damages in excess of Ten Billion Dollars ($10,000,000,000), plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT ELEVEN
### *PUNITIVE DAMAGES*

157.     Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

158.     The actions of all Defendants, acting in concert to carry out their unlawful objectives, were malicious, outrageous and in willful, wanton, and reckless disregard of the rights of all Plaintiffs, the Class, and Decedents. The Defendants, acting individually and jointly, intended to carry out actions that would end the lives of the Decedents.

159.     As a result of their intentional, malicious, outrageous, willful and wanton conduct, all Defendants are jointly and severally liable to all Plaintiffs and the Class for punitive damages.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of One Hundred Billion Dollars ($100,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT TWELVE
### *PUNITIVE DAMAGES*
### *FOREIGN STATE AGENCIES AND INSTRUMENTALITIES*

160.     Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

161.     As Agencies and Instrumentalities of foreign states, Defendants directly or indirectly caused, contributed to, supported, aided, and abetted the commission of the

terrorist acts that resulted in the deaths of the Decedents as described above.

162.    The actions of the Defendants, acting as Agencies and Instrumentalities of foreign states, acting individually and in concert to carry out their unlawful objectives, were malicious, outrageous and in willful, wanton, and reckless disregard of the rights of the Plaintiffs and the Class and the Decedents. These Defendants, as Agencies and Instrumentalities of foreign states, acting individually and jointly, specifically intended to carry out actions that would end the lives of the Decedents.

163.    Pursuant to 28 U.S.C.A. §1606, which specifically authorizes a claim for punitive damages arising from state-sponsored terrorist acts actionable under 28 U.S.C. §1605 (a)(7), and for the reasons stated above, the Defendants, as Agencies and Instrumentalities of foreign states, are jointly and severally liable to all Plaintiffs and the Class for punitive damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, demand judgment in their favor against the Defendants as Agencies and Instrumentalities of foreign states, jointly and severally, in an amount in excess of One Hundred Billion Dollars ($100,000,000,000) plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## PRAYER FOR RELIEF

164.    Plaintiffs request that this Honorable Court grant judgment in their favor and against Defendants on Counts One through Twelve, and grant Plaintiffs and the Class:

a.    Compensatory Damages against Defendants, for each cause of action in the amount described above, plus economic damages in an amount to be determined at trial for the Decedent's Estate and the Class;

b.     Punitive damages against Defendants in the amount of ONE TRILLION

DOLLARS ($1,000,000,000,000.00);

c.     Reasonable costs and expenses;

d.     Reasonable attorneys' fees; and

e.     Such other and further relief that the Court may determine to be just and

equitable under the circumstances.

## DEMAND FOR JURY TRIAL

A trial by jury against all Defendants is demanded.

September 23, 2004

Respectfully submitted,

Joshua M. Ambush, Esquire
LAW OFFICES OF JOSHUA M. AMBUSH, LLC
600 Reisterstown Road
Suite 200 A
Baltimore, MD 21208
Tel: (410) 484-2070
Fax: (410) 484-9330
Bar Number: MD 27025

Jerry S. Goldman, Esquire
LAW OFFICES OF JERRY S. GOLDMAN AND
ASSOCIATES, P.C.
111 Broadway, 13thFloor
New York, New York 10006
Tel:(212)385-1005
Fax: (212) 346-4665
NY Bar Number: 1302454
S.D.N.Y. Bar No. JG 8445

*Attorneys for the Plaintiffs*