THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) ) | 03 MDL 1570 (RCC) |
| Relates to: | ) ) |  |
| Thomas Burnett, *et al.*, | ) ) | 03 CV 5738 (RCC) 03 CV 9849 (RCC) |
| v. | ) ) |  |
| Al Baraka Investment & Development Corp., *et al.* | ) ) ) |  |

**REPLY IN SUPPORT OF MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT
SAMI OMAR AL-HUSSAYEN**

David Z. Nevin (DN2615)
Scott McKay (SM3330)
Dean Arnold (DA6178)
NEVIN, BENJAMIN & MCKAY LLP
303 West Bannock
P.O. Box 2772
Boise, ID 83701
Telephone: 208-343-1000
Facsimile: 208-345-8274

Joshua L. Dratel (JLD 4037)
JOSHUA L. DRATEL, P.C.
14 Wall Street, 28th Floor
New York, NY 10005
Telephone: 212-732-0707
Facsimile: 212-571-6341

*Attorneys for Defendant Sami Omar Al-Hussayen*

November 5, 2004

*I. Introduction*

Plaintiffs' assert nationwide jurisdiction under two statutes, yet they have all but abandoned their RICO claims and fail to rebut the fact that the ATA does not apply to the facts of this case. Further, in an effort to save their jurisdictional problems, Plaintiffs exaggerate the allegations in the MDS and the IANA MDS in order to argue personal jurisdiction on a conspiracy theory. However, in doing so, Plaintiffs misrepresent the requirements of pleading a conspiracy while ignoring the fact that the actual allegations are contradicted by the documents they attached to support them. As if that weren't enough, Plaintiffs then attempt to circumvent the protections of the First Amendment by incorrectly applying the limitations on expressive conduct to pure speech, and even claim that Mr. Al-Hussayen is the only provider or user of an interactive computer service not protected with civil immunity under 47 U.S.C. § 230. We respectfully urge the Court to reject these arguments.

*II. This Court is Without Personal Jurisdiction Over Mr. Al-Hussayen*

A.   Plaintiffs Cannot Rely on Nationwide Service of Process

Plaintiffs cannot assert personal jurisdiction under statutes allowing nationwide service of process once those claims have been dismissed. Otherwise, this nation's long standing personal jurisdiction requirements would be meaningless. Plaintiffs have all but abandoned their RICO claims.[1] Moreover, the ATA does not apply to the facts of this case and must be dismissed.

The ATA was not enacted for the survivors of the September 11th attacks. Rather, it was a congressional reaction to the difficulty of the survivors of Leon Klinghoffer to obtain jurisdiction in U.S. courts over the terrorists who murdered him on a cruise ship in the Mediterranean Sea. *Boim v.*

---

[1] Not only did Judge Robertson dismiss these claims against other defendants, Plaintiffs did not even bother to include argument regarding this issue in their Response. Had Plaintiffs been able to assert any reasonable argument, they were required to do so in compliance with the Court's page limitations. Plaintiffs' attempt to circumvent such limits by "incorporating by reference" other pleadings should not be tolerated. *See* Plaintiffs' Response (Resp.) at n.16. In any event, their argument is without merit.

*Quranic Literary Institute,* 291 F.3d 1000, 1010-11 (7th Cir. 2002) (summarizing legislative history of ATA), *citing Klinghoffer v. Palestine Liberation Organization,* 739 F.Supp. 854 (S.D.N.Y. 1990). His family members were able to obtain jurisdiction in federal court only under admiralty laws because his death occurred on navigable waters. *Id.* at 1010. Fearful that future acts of terror committed abroad would be beyond the reaches of U.S. courts, Congress passed the ATA to "extend this liability to *land-based terrorism that occurred in a foreign country." Id.* (emphasis added).

Thus, the ATA was specifically enacted to provide a civil remedy for those actions previously beyond the reach of U.S. courts. But the survivors of an attack similar to that which occurred on September 11, 2001 would have always been able to pursue civil litigation against anyone responsible in U.S. courts. That is why Plaintiffs' allegations do not constitute "international terrorism" as defined by the ATA – it was never meant to include such acts. While Plaintiffs may have recourse in U.S. courts, their claims are not cognizable under the ATA.[2]

B.  Plaintiffs Cannot Establish Personal Jurisdiction under a Conspiracy Theory

Plaintiffs claim to have properly asserted personal jurisdiction over Mr. Al-Hussayen as a co-conspirator. In doing so, they ignore the requirements of the very cases they cite in support of their argument while greatly exaggerating the allegations contained in the MDS and the IANA MDS.

    i.  Plaintiffs have not established a prima facie case of conspiracy

Plaintiffs contend New York law applies to the requirements of personal jurisdiction in this multi-district litigation case. Although we disagree, *see* Defendant's Memorandum (Memo.), pp. 2-3, Plaintiffs nevertheless fail to meet the requirements of New York law. In any event, the laws of the District of Columbia control, and Plaintiffs' allegations do not satisfy it.

---

[2] Even if the Court finds the Plaintiffs' allegations cognizable under the ATA, their claims against Mr. Al-Hussayen are so insubstantial, implausible, and foreclosed by prior decisions of this and other courts that they are insufficient to impose personal jurisdiction over him. *See* Memo., p.3.

2

Plaintiffs must plead *facts* rather than conclusions to establish a prima facie conspiracy. *Andre Emmerich Gallery v. Segre,* 1997 WL 672009, at *5 (S.D.N.Y. Oct. 29, 1997), *citing Grosser v. Commodity Exch., Inc.,* 639 F.Supp. 1293, 1308-09 (S.D.N.Y. 1986). They have not. Since there is no allegation that Mr. Al-Hussayen entered into an agreement or intentionally participated in furtherance of such a plan or purpose, he cannot be held liable for any "overt act" or any "resulting damage." *See Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1267 (S.D.N.Y.1991).

Furthermore, Plaintiffs fail to show a sufficient relationship between Mr. Al-Hussayen and any conspiracy to warrant the inference that he was a member. *Id.* at 1268-70. In order to do so, Plaintiffs must show that: 1) Mr. Al-Hussayen had an awareness of the effects in the forum of his activity; 2) the activity of the co-conspirators in the forum was to the benefit of Mr. Al-Hussayen; and 3) the co-conspirators were acting "at the direction or under the control," or "at the request of or on behalf of" Mr. Al-Hussayen. *Id.* at 1269. This requirement, although included in every case cited by Plaintiffs, *see id.; Simon v. Philip Morris, Inc.,* 86 F.Supp.2d 95, 120 (E.D.N.Y. 2000); *Andre Emmerich,* 1997 WL 672009, at *6; *All State Life Ins. Co. v. Linter Group Ltd.,* 782 F.Supp. 215, 222 (S.D.N.Y. 1992); *Dixon v. Mack,* 507 F.Supp. 345, 350 (S.D.N.Y. 1980), is simply ignored in their Response. There can be no doubt that the allegations in the 3AC, MDS, and IANA MDS fail to meet these requirements with respect to Mr. Al-Hussayen.

Just as in *Socialist Workers Party v. Attorney General of United States,* there is no factual allegation that Mr. Al-Hussayen ever visited the forum in connection with such activities or that he ever requested, directed, or had any communications relating to the alleged conspiracy. 375 F.Supp. 318, 322 (S.D.N.Y. 1974). Plaintiffs rely heavily upon criminal indictments filed against Mr. Al-Hussayen in the District of Idaho. Notwithstanding the fact that Mr. Al-Hussayen was acquitted of the alleged criminal conduct, "[t]he trouble is that there is not one word about [al Qaeda or the 9/11 attacks], or any plans or operations directed [in support] of these groups" contained in these documents. *Id.*

3

And regardless of the veracity of the indictments, "there is not the slightest indication that any of [those] activities had any connection with [al Qaeda or the 9/11 attacks]." *Id.* at 324.

      ii.      <u>Plaintiffs' embellishments and unfair comparisons do not allege a conspiracy</u>

Plaintiffs "allegations" as described in their Response are greatly exaggerated as compared to those contained in the MDS and the IANA MDS. This has the practical effect of amending the pleading which of course requires leave of Court. *See Wright v. Ernst & Young, LLP,* 152 F.3d 169, 178 (2d Cir. 1998); *see also* F.R.Civ.P. 15(a).

First, Plaintiffs state in their Response that Mr. Al-Hussayen is alleged to have provided money to a member of an FTO, Resp., p.11, but the actual allegations are that this person is a former member of such a group and that Mr. Al-Hussayen assisted him with an Internet magazine. *See* IANA MDS at ¶91.[3] Second, Plaintiffs state that "IANA was a known Al-Qaeda charity front." Resp., p.11. Neither the MDS nor the IANA MDS contain such an allegation. In fact, it is odd that IANA is currently operating openly in the United States as a 501(c)(3) organization, has never been designated as a terrorist organization by the United States, and has never been indicted, if it is a known al Qaeda front as Plaintiffs' claim.[4]

Recognizing they cannot connect Mr. Al-Hussayen to a conspiracy, Plaintiffs instead argue the existence of a "tacit" agreement. But the very case they cite requires them to show a relationship

---

[3] In this regard, we reject Plaintiffs' assertion that it is illegal to have significant contact financially or otherwise with a former member of an FTO. *See* IANA MDS at ¶ 90. There is no liability for associating with an individual who is a member of an FTO, nor is there strict liability for providing monetary donations to an FTO or one of its members. *See Boim,* 291 F.3d at 1011-12. Such allegations do not equate to providing material support.

[4] Plaintiffs continue with further embellishments and misstatements: 1) that Mr. Al-Hussayen provided money to IANA "knowing that IANA was supporting Al Qaeda," Resp., p.11; 2) that Mr. Al-Hussayen exercised "a great deal of control over the *editorial* content" of certain websites, Resp., pp.11-12 (emphasis added); and 3) that Mr. Al-Hussayen is alleged to have used the websites as a recruiting and fundraising tool in support of "groups like Al Qaeda," Resp., p.12. None of the paragraphs cited by Plaintiffs support these exaggerated claims.

4

between the proximity in time and place of the acts and the duration of the actors' *joint activity* in order to find a conspiracy. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 774 F.Supp. 802, 813 (S.D.N.Y. 1991). There has been no such showing involving Mr. Al-Hussayen.

Lastly, Plaintiffs' comparison to the allegations against Al-Haramain are completely unfounded. Judge Robertson allowed allegations against Al-Haramain (an organization which had branch offices designated as Foreign Terrorist Organizations (FTO's)) to survive a Rule 12(b)(6) motion because it was alleged to have aided al Qaeda by: 1) providing recruits, weapons, and money to al Qaeda; 2) employing senior al Qaeda members; 3) financing al Qaeda's terrorist activities in Indonesia; and 4) providing funding directly to Osama bin Laden and al Qaeda. *Burnett v. Al Baraka Inv. & Dev. Corp.,* 274 F.Supp.2d 86, 104 (D.D.C. 2003). It was only based upon those specific allegations that Judge Robertson analyzed whether Plaintiffs could establish a causal link under conspiracy or aiding and abetting theories.

There are no such allegations against Mr. Al-Hussayen. Rather, Plaintiffs allege that he provided money to IANA – a non-designated, 501(c)(3) organization operating openly in the United States today – and assisted with websites upon which a few religious fatwas were published. Such allegations do not constitute a *prima facie* case of conspiracy involving Mr. Al-Hussayen. Thus, under the laws of the District of Columbia (or for that matter New York), the Court is compelled to dismiss this action.

### III. *Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted*

A.     The Court Need Not Accept Plaintiffs' Allegations as True

Plaintiffs do not attempt to refute our argument that the criminal indictments upon which their allegations are based contradict the very premise of their claim against Mr. Al-Hussayen. Accordingly, the documents control and Plaintiffs' allegations lose their presumption of

5

truthfulness.[5]  *See* Memo., pp.7-8.

Based on these indictments, Plaintiffs allege Mr. Al-Hussayen provided material support and resources to al Qaeda through monetary donations to IANA, *see* MDS at ¶¶44, 48-49, 51, and by assisting with websites upon which religious fatwas and other "propaganda" have been disseminated, *id.* at ¶¶18, 27-29, 39-41, 54-59.  However, the indictments themselves do not allege he provided material support in the form of money to any terrorist organization let alone al Qaeda. Moreover, the allegations charged under 18 U.S.C. § 2339A (of which he was acquitted) had nothing to do with al Qaeda or the September 11th attacks, as readily acknowledged by the government.

Plaintiffs' attempt to twist these allegations into charges of providing material support to al Qaeda and the September 11th attacks is grossly misleading and should not be countenanced.    In any event, the Court need not and should not accept Plaintiffs' allegations as true for purposes of dismissal under Rule 12(b)(6), F.R.Civ.P.

B.      Mr. Al-Hussayen's Alleged Activities are Protected by the First Amendment

i.      <u>Plaintiffs seek to impose liability based upon pure speech, not expressive conduct</u>

Plaintiffs attempt to circumvent the First Amendment by omitting any discussion of the vast majority of their allegations against Mr. Al-Hussayen – dissemination of speech.  The allegations against Mr. Al-Hussayen are clear – Plaintiffs seek to impose liability upon him for assisting in the dissemination of protected speech.  In fact, 40 of the 59 paragraphs in the MDS focus on the publication of speech over the Internet and Mr. Al-Hussayen's alleged involvement therein, *see* MDS, at ¶¶3-7, 25, 27-42, 47, 50, 54-59, and numerous unrelated references to the Internet and

---

[5] Plaintiffs attempt to rely on a lengthy pleading in an effort to escape their unsupported conclusions.  *See* Resp., n.7.  However, even if the underlying factual allegations are true, the Plaintiffs' gigantic leap from donating money to IANA and broadcasting speech over the Internet to providing material support to terrorism is so unsubstantiated that it can only  be considered "mere legal conclusions and opinions."  *See* Memo., p.8.

6

terrorism, *id.* at ¶¶8-17. *See also* Memo., pp. 14-16.

Plaintiffs do not contest these articles are protected by the First Amendment. The advocacy of unlawful acts, including violence, is protected by the First Amendment unless it is directed to inciting imminent lawless action and is likely to do so. *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). Speech which Plaintiffs characterize as "propaganda" is protected as well. *LaMont v. Postmaster General,* 381 U.S. 301 (1965). If the speech is protected, those who assisted in its dissemination cannot be held civilly liable even where it may have caused others to commit unlawful, even violent, acts against others. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 866 (1982).

Plaintiffs attempt to apply First Amendment standards which have been applied in cases of direct monetary donations to FTO's.[6] *See Humanitarian Law Project (HLP) v. Reno,* 205 F.3d 1130, 1133-34 (9th Cir. 2000); *see also Boim,* 291 F.3d at 1025-27. However, both *HLP* and *Boim* (as well as Congress) recognized that advocacy, *i.e.,* pure speech, is protected by the First Amendment and cannot constitute "material support." *See* Memo., pp.12-13. As Judge Kozinski stated, we are all free to advocate the goals and espouse the views of terrorists "without fear of penalty right up to the line established in *Brandenburg v. Ohio.*" *HLP,* 205 F.3d at 1134. Thus, neither the words on the websites, the acts necessary to place them there, nor any act carried out by others who read them can constitute "material support."

  ii. <u>Plaintiffs attempt to impose liability for the unrelated acts of others constitutes guilt by association and violates the First Amendment</u>

Once the allegations involving speech are removed, all that remains is the allegation that Mr. Al-Hussayen donated money to IANA – a lawful act. The best Plaintiffs can muster in this respect

---

[6] Those standards do not apply here. Mr. Al-Hussayen is not alleged to have donated money to a FTO nor is he seeking permission to do so. Rather, he is alleged to have provided money to IANA, a non-designated organization. Thus, Plaintiffs attempt to apply intermediate scrutiny is inapposite. In fact, no level of scrutiny applies because the statute does not inhibit speech. *See* H.R. Rep. 104-383 at 45.

is an allegation that these donations went to "bankrolling IANA's illicit goals." Resp., p.20. However, Plaintiffs fail to explain what those illicit goals are and the unintelligible quote they offer adds nothing. *See id*. But there is nothing in Plaintiffs' allegations connecting Mr. Al-Hussayen (or his association with IANA) to terrorism. Plaintiffs complain of fatwas allegedly published on websites and/or statements made by individuals alleged to be associated with IANA, but this cannot establish the civil liability of Mr. Al-Hussayen for providing material support to al Qaeda.

As we stated previously, Plaintiffs seek to impose liability on Mr. Al-Hussayen based upon the alleged acts of *other organizations* that have tangential connections to IANA. *See* Memo., pp.13-14; IANA MDS at ¶¶95-96, 98. However, Plaintiffs have yet to assert a connection between Mr. Al-Hussayen, his alleged donations to IANA, and any acts of terrorism (let alone providing material support to al Qaeda). What Plaintiffs seek is classic "guilt by association" in violation of the First Amendment. *See Claiborne Hardware,* 458 U.S. at 920; *see also* Memo., pp.9-10, 13-14.

C.   Federal Law Provides Absolute Immunity for Mr. Al-Hussayen

Remarkably, Plaintiffs single out Mr. Al-Hussayen as the only person in the world not provided civil immunity under 47 U.S.C. § 230. Their argument – that only generic hosting companies are immunized under the statute – is ludicrous. In fact, the only case cited by Plaintiffs clearly states that immunity is conferred on *any provider or user* of an interactive computer service, including an operator of a website. *Batzel v. Smith,* 333 F.3d 1018, 1030-31 (9th Cir. 2003).

In *Batzel,* the Ninth Circuit held that an individual who received an email, made minor edits to it, and then posted the edited version on both his website and listserve qualified as a provider or user of an interactive computer service. *Id.* Thus, Plaintiffs' claim that § 230's immunity extends only to a "generic business hosting provider" is simply wrong. Resp., p.23. Furthermore, *Batzel* and every other court which has addressed the issue have rejected Plaintiffs argument that one who takes an active role in selecting information for publication is not immune. 333 F.3d at 1032; *and see, e.g.,*

8

*Blumenthal v. Drudge,* 992 F.Supp. 44, 52 (D.D.C. 1998) (proving immunity to those who take "an active, even aggressive role in making available content prepared by others").

While Plaintiffs seize on language in *Batzel* suggesting that the person who originally wrote the e-mail claimed to have never intended it to be placed on a website, Resp., p.22, to use Plaintiffs' words, "that is not what is at issue here." No one is contending that the authors of these various articles or fatwas claim not to have submitted them for publication on the Internet. In fact, Plaintiffs' allegations presume that the authors intended them to be placed there. *See* MDS at ¶¶27, 40.

Mr. Al-Hussayen is civilly immune with respect to all materials created by others which he is alleged to have posted on websites or to Internet e-mail groups. *See* Memo., pp.16-18.

D.  Plaintiffs Fail to Identify a Causal Link

In the end, Plaintiffs simply miss the point – there is no causal connection between the allegations against Mr. Al-Hussayen and the injuries they seek to redress. As stated previously, *Boim* and *HLP* involved donations of money directly to FTO's and do not apply here (only *Boim* discusses causation and the ATA).[7] While Plaintiffs rely on the language "at any point along the causal chain of terrorism," Resp., p.13, they fail to address the requirement that there be a "causal chain." The allegations against Mr. Al-Hussayen do not place him in the causal chain of terrorism generally, let alone the September 11th attacks in particular.

The best Plaintiffs can do is reference three religious fatwas published on websites. *See* MDS at ¶¶28, 40; IANA MDS at ¶¶46-47, 72. However, there is no allegation that anyone involved in the attacks was even aware of these alleged postings, and regardless, such a preposterous suggestion of a

---

[7] In fact, *Boim* was a proper application of the ATA: it allowed the parents of a U.S. citizen killed in a *foreign country, i.e.,* "international terrorism," to pursue a civil suit against those who admittedly *sent money directly to the organization* the killers were members of because his parents alleged *facts* indicating the defendants did so with the *knowledge and intent* to further the organization's *terrorist goals*.

9

causal link between the two ignores the fact that the events of September 11, 2001 were set in motion years before and were not a spontaneous response of 19 individuals to a website posting.[8] There is no causal connection nor has one been alleged.

The Court should reject Plaintiffs unsupported leaps from making lawful donations to a non-designated organization to being a knowing and intentional participant in activities resulting in the September 11th attacks. This is exactly why Judge Robertson warned us to review Plaintiffs' allegations with "extra-careful scrutiny ... to ensure that ... no inferences are accepted that are unsupported by the facts set out in the 3AC [and MDS]."[9] *Burnett,* 274 F.Supp.2d at 104.

*IV. All Counts Moved for Dismissal and Not Rebutted Must be Dismissed*

Plaintiffs do not respond to our argument that Counts 1, 2, 9, 10, and all negligence claims must be dismissed. In addition, Plaintiffs all but concede that Counts 11, 12, and 13 must be dismissed. *See* n.1, *supra.* As Count 15 is dependant upon Count 1, it must be dismissed as well.

*V. Conclusion*

The motion to dismiss should be granted.

DATED this 5th day of November, 2004.

                                      NEVIN, BENJAMIN & MCKAY LLP

                                      /s/ Scott McKay
                                      Scott McKay

                                      *Attorneys for Defendant Sami Omar Al-Hussayen*

---

[8] Of course, even if these articles caused others to act in this manner, those who assisted in their dissemination would be protected by the First Amendment. *See* Section III., B., *supra.*

[9] Mr. Al-Hussayen argued convincingly that the 9/11 attacks do not constitute "international terrorism" under the ATA, Memo., pp.21-22, and rejects Plaintiffs' false claim that he concedes otherwise, Resp., p.14.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 5th day of November, 2004, I caused copies of the **Reply in Support of Memorandum of Law in Support of Motion to Dismiss of Sami Omar Al-Hussayen** to be served electronically pursuant to the Court's ECF system.

      /s/Scott McKay_____
      Scott McKay