UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In Re TERRORIST ATTACKS on SEPTEMBER 11, 2001 | ) ) ) ) ) | 03 MDL 1570 (RCC) ECF Case |

*This document relates to:*
    *Federal Insurance Co. v. Al Qaida,* 03 CV 6978 (RCC)


# REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK IN SUPPORT OF ITS MOTION TO DISMISS


Dated: November 29, 2004
      Washington, D.C.

Ronald S. Liebman (admitted *pro hac vice*)
Mitchell R. Berger (MB-4112)
Ugo Colella (admitted *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315

*Attorneys for Defendant*
*The National Commercial Bank*

# Table of Contents

Argument ........................................................................................................................................1

    I.      None of the FSIA's Exceptions Apply ................................................................2

           The Cannistraro Statement ...........................................................................2

           The Muwafaq Foundation .............................................................................4

           The Golden Chain ........................................................................................5

           Jurisdictional Discovery ................................................................................6

    II.     This Court Lacks Personal Jurisdiction Over NCB ..........................................7

           *Calder*-Based Theory of Specific Jurisdiction ...............................................7

           Conspiracy Jurisdiction .................................................................................8

           Jurisdictional Discovery ................................................................................8

    III.    Plaintiffs Have Failed to State A Legally Sufficient Claim Against NCB ......9

           Causation/Aiding and Abetting/Conspiracy .................................................9

           RICO ...............................................................................................................9

           Negligence/Limitations ..............................................................................10

Conclusion ..................................................................................................................................10

## Table of Authorities

### Cases

*Abrams v. Societe Nationale,*
     --- F.3d ---, 2004 WL 2525864 (2d Cir. Nov. 9, 2004) ................................................................2

*Boim v. Quranic Literacy Institute,*
     No. 00-2905, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) ...........................................................9

*Boim v. Quranic Literacy Institute,*
     291 F.3d 1000 (7th Cir. 2002) ........................................................................................................9

*Build of Buffalo v. Sedita,*
     441 F.2d 284 (2d Cir. 1971) ...........................................................................................................9

*Burnett v. Al Baraka,*
     274 F. Supp. 2d 86 (D.D.C. 2003) .............................................................................................3, 5

*Burnett v. Al Baraka,*
     292 F. Supp. 2d 9 (D.D.C. 2003) ........................................................................................... 6, 7, 8

*Calder v. Jones,*
     465 U.S. 783 (1984) .......................................................................................................................7

*Dr. Beck & Co. v. General Electric,*
     210 F. Supp. 86 (S.D.N.Y. 1962),
     *aff'd,* 317 F.2d 538 (2d Cir. 1963) .................................................................................................3

*Eiseman v. State,*
     511 N.E.2d 1128 (N.Y. 1987).......................................................................................................10

*Grosser v. Commodity Exch.,*
     639 F. Supp. 1293 (S.D.N.Y. 1986),
     *aff'd,* 859 F.2d 148 (2d Cir. 1988) .................................................................................................9

*In re Magnetic Audiotape Antitrust Litig.,*
     334 F.3d 204 (2d Cir. 2003) ...........................................................................................................7

*In re Ski Train Fire,*
     2004 WL 2260594 (S.D.N.Y. Oct. 8, 2004) ..................................................................................8

*Jazini v. Nissan Motor Corp.,*
     148 F.3d 181 (2d Cir. 1998) ...........................................................................................................8

*Jin v. Ministry of State Security,*
     2004 WL 2026339 (D.D.C. Sept. 9, 2004)....................................................................................8

*Kamen v. Am. Tel. & Tel.*,
    791 F.2d 1006 (2d Cir. 1986) ..................................................................................2

*Laborers Local 17 v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................................................8

*Laborers Local 17 v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999),
    *cert. denied*, 528 U.S. 1080 (2000) ........................................................................10

*National Asbestos v. Philip Morris, Inc.*,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) ......................................................................10

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002),
    *cert. denied*, 538 U.S. 922 (2003) ..........................................................................10

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
    290 F. Supp. 2d 55 (D.D.C. 2003) ............................................................................7

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    162 F.3d 748 (2d Cir. 1998),
    *cert. denied*, 527 U.S. 1003 (1999) ..........................................................................7

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    995 F. Supp. 325 (E.D.N.Y. 1998) ............................................................................7

*Robinson v. Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001) ......................................................................................6

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ..................................................................................................6

*Tasini v. New York Times*,
    184 F. Supp. 2d 350 (S.D.N.Y. 2002) ......................................................................3

*Time, Inc. v. Simpson*,
    2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ........................................................7

**Federal Statutes**

18 U.S.C.

    § 2337(2) ..................................................................................................................9

28 U.S.C.

    § 1605(a)(2) ..............................................................................................................5

§ 1605(a)(5) ........................................................................................................................5

§ 1605(a)(7) ........................................................................................................................9

## Federal Rules of Civil Procedure

Rule 12(b)(1) .......................................................................................................................3

## Federal Rules of Evidence

Rule 803(8) .........................................................................................................................2

## Treatises

Restatement (Second) of Torts § 302 & cmt. a ...............................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re TERRORIST ATTACKS on ) | 03 MDL 1570 (RCC) |
| SEPTEMBER 11, 2001            ) | ECF Case |

*This document relates to:*
   *Federal Insurance Co. v. Al Qaida,* 03 CV 6978 (RCC)

## REPLY MEMORANDUM OF THE NATIONAL COMMERCIAL BANK IN SUPPORT OF ITS MOTION TO DISMISS

The Opposition reveals that Plaintiffs' claims against The National Commercial Bank ("NCB") rest solely on inadmissible hearsay, spliced with generic and insupportable legal conclusions that NCB knowingly and intentionally supported al Qaeda. Southern District precedent is emphatic, however, that neither hearsay nor conclusory allegations are entitled to any weight in opposition to a Rule 12 motion that raises jurisdictional defenses. NCB has moved to dismiss the *Federal Insurance* complaint based pre-eminently on jurisdictional defenses—specifically, NCB's jurisdictional immunity under the Foreign Sovereign Immunities Act ("FSIA"), and the lack of personal jurisdiction over NCB in the United States. In resolving those jurisdictional defenses, the Court cannot accept Plaintiffs' allegations at face value, but rather must consider only evidence that would have testimonial value at trial. The Court is fully familiar with the evidentiary record supporting NCB's jurisdictional defenses, having recently held a hearing on NCB's motions to dismiss the *Burnett* and *Ashton* actions. The *Federal Insurance* Plaintiffs offer nothing new. Indeed, counsel for the *Federal Insurance* Plaintiffs participated in the hearing on NCB's motions to dismiss *Burnett* and *Ashton*, and made concessions that are fatal to their arguments in the subsequently-filed *Federal Insurance* Opposition papers.[1]

---

[1] "Opp." refers to The Federal Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Filed by National Commercial Bank, MDL Dkt. #515, Oct. 29, 2004. "1AC" refers to Plaintiffs' First Amended Complaint. "*Fed. Ins.* Mem." refers to the Memorandum of Law in Support of Motion to Dismiss of The National Commercial Bank, MDL Dkt. #413, Aug. 30, 2004.

1

I.      **None of the FSIA's Exceptions Apply.**

Plaintiffs concede that NCB is an instrumentality of the Saudi Government. Opp. 10, 22; 1AC, ¶ 287. Both the facts and the law compel that concession. The Saudi Government acquired majority-ownership of NCB well before this lawsuit was filed (MDL Dkt. #487), and the Second Circuit recently reconfirmed—yet again—that the FSIA provides jurisdictional immunity to a corporation that is majority-owned by a foreign government at the time that the lawsuit is filed. *Abrams v. Societe Nationale*, --- F.3d ---, 2004 WL 2525864, at *2-*3 (2d Cir. Nov. 9, 2004). Plaintiffs have not established an exception to FSIA immunity because they rely exclusively on hearsay statements that are inadmissible and that, in any event, do not actually say what the Plaintiffs would like to believe.

**The Cannistraro Statement.** Plaintiffs quote a snippet of allegations made by former CIA agent Vincent Cannistraro before a congressional committee in October 2001 to argue that NCB "was not a passive conduit" in unspecified fund-transfers to Osama Bin Laden. Opp. 1. The Cannistraro statement, however, was the subject of a colloquy at the hearing on NCB's motion to dismiss *Burnett* and *Ashton*, and counsel for the *Federal Insurance* Plaintiffs conceded that the statement was inadmissible:

> THE COURT:  Do you have any facts to back . . . up [Mr. Cannistraro's claims]?
> MR CARTER:  Your Honor, we do not have evidence which would necessarily be admissible of record in a trial at this point. . . .

MDL Dkt. #509, Tr. of 10/12/04 Hearing, at 78-79 (emphasis added). Indeed, as a matter of law, the Cannistraro statement is inadmissible hearsay that may not be considered on a motion to dismiss for lack of jurisdiction.[2] *See Kamen v. Am. Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[I]t was improper for the district court, in ruling on the 12(b)(1) motion, to have considered the conclusory

---

[2]     The public records exception to the hearsay rule (FED. R. EVID. 803(8)) does not apply because Mr. Cannistraro's statement is not a "[r]ecord[], report[], statement[], or data compilation[] ... of [a] public office[] or agenc[y] ...." *See* Opp. 1 (Cannistraro was the "former chief of counter-terrorism" at the CIA; Carter Affirmation (MDL Dkt. #516) ("Carter Aff."), Exh. 1, at 18 (same).

2

and hearsay statements"); *Dr. Beck & Co. v. General Electric*, 210 F. Supp. 86, 92 (S.D.N.Y. 1962) ("On a motion to dismiss for lack of jurisdiction, the court may only consider evidence which would be of testimonial value at a trial."), *aff'd*, 317 F.2d 538 (2d Cir. 1963); *Tasini v. New York Times*, 184 F. Supp. 2d 350, 357 (S.D.N.Y. 2002) (rejecting articles and newspaper clippings as hearsay that "do[es] [not] rise to the level of competent evidence" for purposes of 12(b)(1) motion to dismiss).

Moreover, Mr. Cannistraro's statement does not come close to establishing that NCB "knowingly and intentionally" supported Osama bin Laden or al Qaeda. Opp. 1. As a matter of law, a bank like NCB cannot be held liable for any wrongful financial transfers by its customers (*e.g.*, *Fed. Ins.* Mem., at 4-5, 7-8), and the Cannistraro statement alleges nothing more than that. Mr. Cannistraro alleged that "several wealthy Saudis were funneling contributions to bin Laden through this mechanism"—meaning NCB—and that these "businessmen in Saudi Arabia and the Gulf contribute monies…out of a sense of Islamic solidarity" or "as 'protection' to avoid having the enterprises run by these men attacked." Opp. 1 & Carter Aff., Exh. 1 at 20. This statement does not even implicate the unnamed "businessmen" in any wrongdoing, and certainly says nothing about NCB's knowledge of, or intent to support, the objectives of those businessmen in transferring money through NCB facilities. As Judge Robertson held in *Burnett I*: "Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service." *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003).

Similarly, Plaintiffs are wildly off base in their effort to read this statement as support for the notion that the Saudi Government arrested "NCB employees." Opp. 1. Rather, Mr. Cannistraro stated only that the Saudi Government "arrested a number of persons," without specifying who those "persons" were. Indeed, as the *Federal Insurance* Plaintiffs acknowledged to the Court during

3

the recent hearings on NCB's motions to dismiss *Burnett* and *Ashton*, nothing in Mr. Cannistraro's statement suggests that the Saudi Government believed that NCB supported al Qaeda or Bin Laden:

> MR. CARTER: . . . [A]n extensive investigation that led to a disclosure that NCB was funneling money to terrorists . . . prompted the Saudi government to take control of the bank in 1999. . . .
> THE COURT: Did the Saudi government state that's why they were doing it?
> MR. CARTER: No, they didn't say that's why they were doing it, your Honor.

MDL Dkt. #509, Tr. of 10/12/04 Hearing, at 78-79 (emphasis added).

**The Muwafaq Foundation.** Plaintiffs cannot get their story straight about the alleged connection between NCB and the Muwafaq Foundation (a/k/a Blessed Relief Foundation), a charity that Plaintiffs allege was an al Qaeda front. Opp. 2-4. Plaintiffs inconsistently contend that NCB "contributed" its own funds to the Foundation, or that NCB was a "channel[]" through which others did so. *Id.* at 2, 3. However, the complaint itself resolves that ambiguity by alleging only that funds were "transferred…to al Qaida through Blessed Relief Foundation accounts" (1AC ¶ 292 (emphasis added))—an allegation that simply repeats the legally insufficient "conduit" theory of liability. *See supra* at 3. Plaintiffs' intent to allege only that others transferred money to Blessed Relief through NCB is further confirmed by another inadmissible hearsay statement cited by Plaintiffs that "Saudi businessmen"—not NCB—"contributed" to Bin Laden through Muwafaq. Opp. 3 & Carter Aff., Exh. 3, at 5.

Regardless of whose money was transferred, moreover, Plaintiffs do not allege that NCB knew of, and intended to support, a link between Blessed Relief and al Qaeda. Plaintiffs cannot supply the missing elements of NCB knowledge and intent simply by noting that two former NCB officer-directors—Khalid bin Mahfouz and Abdulrahman bin Mahfouz—also allegedly served as directors of Blessed Relief. Opp. 3-4. The complaint expressly acknowledges that both the senior and junior bin Mahfouz occupied numerous positions of responsibility outside NCB, including senior roles in "various for-profit enterprises" (including another bank, BCCI) and "charities"

4

(including Muwafaq).  1AC, ¶¶ 286, 288, 497.  It therefore would be unreasonable to infer that the senior and junior bin Mahfouz were acting within the scope of their NCB duties when they made alleged efforts to support Muwafaq and al Qaeda.  As Judge Robertson held in *Burnett I* with respect to another bank defendant:  Plaintiffs must allege facts to show that a bank official was "acting within the scope of his bank employment when he allegedly provided support to al Qaeda…to impose vicarious liability on the bank for acts of its officers and employees."  274 F. Supp. 2d at 109.  There are no such scope-of-employment allegations in the complaint.

Finally, even if all of these hurdles could be cleared, the complaint nonetheless alleges that Muwafaq ceased operations not later than 1997, years before the September 11th attacks occurred.  1AC, ¶ 488.  Any NCB involvement with Muwafaq thus would be far too remote-in-time from the attacks to satisfy either the "direct effect" requirement of FSIA exception (a)(2) or the proximate cause requirement of FSIA exception (a)(5).  *Fed. Ins.* Mem., at 9-11.

**The Golden Chain.**  Plaintiffs also try to link NCB to al Qaeda and bin Laden because the name of Khalid bin Mahfouz appears on the so-called "Golden Chain" list.  Opp. 3-4 & n.2.  Like the rest of the materials referenced in Plaintiffs' opposition papers, the "Golden Chain" list is inadmissible hearsay and cannot be considered in assessing NCB's jurisdictional defenses.  *See supra* at 2-3.  Plaintiffs themselves concede "that the current record [is] insufficient to establish the authenticity or admissibility" of the Golden Chain document.  Opp. 4 n.2.  The Court confirmed this point during colloquies with other plaintiffs' counsel at the October 2004 motions hearings:

> MR. MOTLEY: . . .  I'd like to spend a minute on what counsel has called the Golden Chain document. . . . .
> THE COURT:  Is there anything in the record that identifies who the author of that document is?
> MR. MOTLEY:  Not to my knowledge, your Honor.
>                           * * * * * * * * *
> THE COURT:  Is there anything in that document that indicates that anybody on that document, anyone listed in the document made a specific donation?
> MR. MOTLEY:  On that document, no.
>                           * * * * * * * * * *

5

> THE COURT:  Do we even know when the document was written?  Is there a date on it?
> MR. MOTLEY:  I personally do not know when it was written.
> THE COURT:  Is there a date on it?
> MR. MOTLEY:  No, sir.

MDL Dkt. #509, Tr. of 10/12/04 Hearing, at 59-60; *see also* MDL Dkt. #510, Tr. of 10/14/04 Hearing, at 99-104 (same). Regardless, as with the Muwafaq allegations, the Golden Chain allegations about Mr. bin Mahfouz cannot be imputed to NCB. *See supra* at 5.

**Jurisdictional Discovery**. Plaintiffs' alternative request for jurisdictional discovery (Opp. 6 n.3) should be denied because Plaintiffs have not identified any material factual issues warranting discovery with respect to NCB's entitlement to FSIA immunity. Any effort to defeat FSIA immunity must focus on the "particular conduct" in which the sovereign defendant allegedly engaged. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993) (emphasis added); *accord Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141, 147 (2d Cir. 2001) (court must examine the "defendant's activities"; inappropriate for plaintiffs to make "generic" allegations and "then to rely on the federal courts to conclude that some conceivable" act falls within one of the FSIA's exceptions). Improperly, Plaintiffs do not tailor their jurisdictional discovery request to NCB. Instead, they ask the Court to do their work for them by allowing jurisdictional discovery on any issue "the Court deems material to the FSIA jurisdictional analysis." *Id.* (emphasis added). FSIA jurisdictional discovery thus would be improper as a matter of law. *See, e.g.*, *Burnett v. Al Baraka*, 292 F. Supp. 2d 9, 15-16 (D.D.C. 2003) ("*Burnett II*") (denying FSIA jurisdictional discovery where Plaintiffs provided only "conclusory" allegations to support an exception to FSIA immunity, and "jurisdictional discovery would 'frustrate the significance and benefit of entitlement to immunity from suit.'").

## II.     This Court Lacks Personal Jurisdiction Over NCB.

*Calder*-**Based Theory of Specific Jurisdiction.**[3]   Judge Robertson previously rejected precisely the same argument that underlies Plaintiffs' claim (Opp. 11-12) that NCB took actions "expressly aimed" at the United States within the meaning of *Calder v. Jones*, 465 U.S. 783, 789 (1984).  In *Burnett II*, Judge Robertson held that charitable contributions or other actions that may have funded third-parties who, in turn, funded terrorism "stops well short" of making a *prima facie* case of actions "expressly aimed" by the initial actor at the United States.  292 F. Supp. 2d at 22-23; *Fed. Ins.* Mem., at 13-14.   Here, Plaintiffs contend only that NCB transferred funds, or made donations, to third-parties <u>other than</u> al Qaeda or bin Laden, and Plaintiffs expressly disavow any effort to show that NCB directly participated in the funding, planning or any other aspect of the September 11th attacks.   Opp. 14-17, 19-20.   Plaintiffs therefore cannot meet this Circuit's formulation of *Calder*-type jurisdiction, which holds that only "primary participant[s]" in wrongdoing can be said to have expressly aimed their actions at the United States.  *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003); *Time, Inc. v. Simpson*, 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003).

The decisions in *Rein* and *Pugh* do not cure this shortcoming.  *See* Opp. at 12-13 (citing *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998) and *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 55 (D.D.C. 2003)).  *Rein* involved the FSIA's state-sponsor of terrorism exception, which "do[es] not entail any finding of minimum contacts." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 761 (2d Cir. 1998), *cert. denied*, 527 U.S. 1003 (1999).  *Pugh* is distinguishable on its facts because the defendants there were <u>directly</u> involved in planning and executing the terrorist act.  *Pugh* cannot be stretched to endorse jurisdiction over NCB, whose alleged actions have only the most remote, attenuated, and unintentional link to al Qaeda or

---

[3]     Plaintiffs do not contend that the Court has personal jurisdiction over NCB under a theory of general jurisdiction.  *Fed. Ins.* Mem., at 13.

bin Laden.  *See Burnett II*, 292 F. Supp. 2d at 23 (rejecting the notion that "anyone whose actions have led to terrorist activity in the United States should reasonably anticipate that he might be subject to suit here whether or not he himself targeted the United States").

**Conspiracy Jurisdiction.**  Plaintiffs' conspiracy-based theory of personal jurisdiction (Opp. 10-12) is doomed by one of their own cases.  *Laborers Local 17 v. Philip Morris, Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998) (cited in Opp. at 11) held that conspiracy-based jurisdiction can exist only if: (1) the out-of-state co-conspirator had an awareness of the effects of the activity of others in the forum; (2) the in-state co-conspirator's activity was for the benefit of the out-of-state conspirators; and (3) the in-state co-conspirators acted at the behest of or on behalf of, or under the control of the out-of-state conspirators.  *Id.* at 602.  These requirements ensure that the theory of conspiracy-jurisdiction does not eliminate due process requirements like "minimum contacts."  *See Jin v. Ministry of State Security*, 2004 WL 2026339, at *5, *9 n.5 (D.D.C. Sept. 9, 2004) (adopting *Laborers Local* requirements).  Plaintiffs quite correctly do not make what would be a purely fanciful allegation that NCB was aware of the actions of the September 11th hijackers or that the hijackers were acting for the benefit, at the behest, or under the control of NCB.

**Jurisdictional Discovery.**  The Second Circuit's decision in *Jazini v. Nissan Motor Corp.*, 148 F.3d 181, 184 (2d Cir. 1998), prohibits jurisdictional discovery unless the plaintiff already has established a *prima facie* case of personal jurisdiction.  *Accord In re Ski Train Fire*, 2004 WL 2260594, at *2 (S.D.N.Y. Oct. 8, 2004).  As shown, Plaintiffs have failed to do so, either under a *Calder*-based theory of specific jurisdiction or under a theory of conspiracy jurisdiction.  Their request for jurisdictional discovery (Opp. 9) thus should be denied, regardless of the difficulties that this outcome obviously poses for the Plaintiffs.  *Jazini*, 148 F.3d at 186.  These strict limits apply with even greater force when, as here, the scope of jurisdictional discovery would be as broad as full-blown merits discovery.  *Grosser v. Commodity Exch.*, 639 F. Supp. 1293, 1308-12 (S.D.N.Y. 1986),

8

*aff'd*, 859 F.2d 148 (2d Cir. 1988). Plaintiffs' jurisdictional theory—that NCB "knowingly aided, abetted and conspired to fund the activities of terrorists" (Opp. 9)—is indistinguishable from their merits theory of liability.

### III. Plaintiffs Have Failed to State A Legally Sufficient Claim Against NCB.

**Causation/Aiding and Abetting/Conspiracy**. Plaintiffs do not allege any specifics to suggest that NCB actions were a cause-in-fact of the September 11th attacks, an essential element of proximate cause. *Fed. Ins.* Mem., at 14-15. Plaintiffs' vicarious liability theories of aiding/abetting and conspiracy (Opp. 14-17) do not supply the missing causal connection. Plaintiffs concede that New York law controls those vicarious liability theories. *Id.* at 20 n.14. Under New York law, Plaintiffs cannot state an aiding/abetting claim because they disclaim any attempt to allege that NCB substantially assisted, or had actual knowledge of, the principal act of wrongdoing, *i.e.*, the September 11th attacks—two essential New York law elements of aiding and abetting. *Fed. Ins.* Mem., at 20. Likewise, Plaintiffs do not try to allege the "corrupt agreement" required to state a conspiracy claim. *Id.* Merely mouthing the word "conspiracy" or grouping NCB with hundreds of other alleged "co-conspirators" does not suffice. *Id.* at 20-21. As the Second Circuit has held, "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Build of Buffalo v. Sedita*, 441 F.2d 284, 288 (2d Cir. 1971).[4]

**RICO**. Plaintiffs duck NCB's showing that the complaint lacks legally sufficient allegations of two predicate acts by NCB, or of any NCB participation in the "operation or management" of

---

[4] The magistrate's decision in *Boim v. Quranic Literacy Institute*, No. 00-2905, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) cannot help Plaintiffs overcome these deficiencies. *Boim* involves a claim under the Anti-Terrorism Act, the scope of which expressly mirrors the jurisdictional requirements of exception (a)(7) of the Foreign Sovereign Immunities Act. *Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1016 (7th Cir. 2002). FSIA exception (a)(7) cannot be used against NCB because Saudi Arabia is not a designated state sponsor of terrorism. *Fed. Ins.* Mem., at 5-6. Moreover, Anti-Terrorism Act jurisdiction cannot be exercised over instrumentalities of foreign governments, like NCB. 18 U.S.C. § 2337(2). Further, *Boim* alleged a high degree of direct involvement by the defendants in the activities of Hamas, in stark contrast to the attenuated allegations against NCB. *See Boim*, 2004 WL 2554446 at *9, *23, *25, *31.

9

the alleged "Radical Muslim Terrorism" enterprise. *Fed. Ins.* Mem., at 17-19. Further, *National Asbestos v. Philip Morris, Inc.*, 74 F. Supp. 2d 221 (E.D.N.Y. 1999), cannot overcome the Second Circuit rule that workers' compensation insurers lack RICO standing because they seek damages for personal injury and death claims. *Laborers Local 17 v. Philip Morris*, 191 F.3d 229, 241 (2d Cir. 1999), *cert. denied*, 528 U.S. 1080 (2000).

**Negligence/Limitations**. Restatement (Second) of Torts § 302 does not salvage Plaintiffs' negligence claims because it does not create a duty of care. *Compare* Opp. 21 *with Eiseman v. State*, 511 N.E.2d 1128, 1136 n.3 (N.Y. 1987) (§ 302 "presupposes the existence of a duty" and therefore "cannot supply" a duty where none otherwise exists).[5] As to the intentional torts, there is no "federal common law" (Opp. 23) to displace New York's one-year limitations period, and the doctrine of equitable tolling does not apply because Plaintiffs do not, and cannot, contend that NCB fraudulently concealed the existence of Plaintiffs' causes of action. *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003).

### Conclusion

For the foregoing reasons, and those set forth in NCB's Opening Memorandum of Law, NCB's motion to dismiss should be granted, and Plaintiffs' claims should be dismissed with prejudice.

Dated: November 29, 2004　　　　　　　　　　/s/ Ronald S. Liebman
　　　　Washington, D.C.　　　　　　　　　　Ronald S. Liebman (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Mitchell R. Berger (MB-4112)
　　　　　　　　　　　　　　　　　　　　　Ugo Colella (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　PATTON BOGGS LLP
　　　　　　　　　　　　　　　　　　　　　2550 M Street, N.W.
　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20037
　　　　　　　　　　　　　　　　　　　　　Phone: 202-457-6000
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　*The National Commercial Bank*

---

[5] *See* RESTATEMENT (SECOND) OF TORTS § 302 cmt. a ("This Section is concerned only with the negligent character of the actor's conduct, <u>and not with his duty to avoid the unreasonable risk</u>." (emphasis added)).