UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X
IN RE TERRORIST ATTACKS ON : 
SEPTEMBER 11, 2001 :
: **03-MDL 1570 (RCC)**
This document relates to: : **ECF CASE**
:
THOMAS BURNETT, *et al*, :
: 03 CV 9849 (RCC)
v. :
:
AL BARAKA INVESTMENT & :
DEVELOPMENT CORP., *et al*. :
------------------------------X
THOMAS BURNETT, *et al*, :
: 03 CV 5738 (RCC)
v. :
:
AL BARAKA INVESTMENT & :
DEVELOPMENT CORP., *et al*. :
------------------------------X
KATHLEEN ASHTON, *et al*, :
: 02 CV 6977 (RCC)
v. :
:
AL QAEDA ISLAMIC ARMY, *et al*. :
------------------------------X

**DEFENDANT YASSIN ABDULLAH KADI'S REPLY IN SUPPORT OF MR. KADI'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT**

Joseph J. Saltarelli (JS-1560)
Hunton & Williams LLP
200 Park Avenue, 43rd Floor
New York, New York 10166-0136
and
David F. Geneson (*pro hac vice* motion pending)
Bonnie K. Arthur (*pro hac vice* motion pending)

Attorneys for Defendant
Yassin Abdullah Kadi

Dated: December 3, 2004

I.      Introduction

  *Burnett* and *Ashton* plaintiffs devote much of their opposition papers ("*Burnett* Opp." and "*Ashton* Opp.") to new, unplead allegations in a desperate attempt to link Mr. Kadi to the September 11 attacks. However, these allegations are not only insufficient to state a claim and establish personal jurisdiction, as discussed below, but many are patently false, including:

- Based on Attachment 3 to their opposition, *Burnett* plaintiffs allege that President Bush designated Mr. Kadi as "a terrorist responsible for funding al Qaeda." That document only lists Mr. Kadi's name among foreign persons whose assets were blocked by the Office of Foreign Assets Control ("OFAC"). Mr. Kadi's name is listed alone, with no mention of al Qaeda or any explanation of why his name is on the list. Plaintiffs' embellishment cannot be accepted as fact.[1]

- Based on Exhibit D, *Ashton* plaintiffs state "the United Nations Security Council officially recognized" Mr. Kadi as "a financier to Usama Bin Laden and the al Qaeda terrorist organization on October 19, 2001." However, Exhibit D says no such thing. It is a UN list that was updated a week after the U.S. put out its post-9/11 list.[2] Although Mr. Kadi is on the list, it does ***not*** say he financed either bin Laden or al Qaeda. To the contrary, the list includes people who are "indirectly" associated with entities "associated with" bin Laden. There is no evidence in this document or otherwise of any "official recognition" by the UN that Mr. Kadi financed al Qaeda.

- *Burnett* plaintiffs claim the FBI found "probable cause" to believe Mr. Kadi "transferred money to individuals who transferred money in support of domestic and international terrorist activities." *Burnett* Opp. at 9, citing Attachment 10. Attachment 10 is not an "FBI finding." It is an affidavit by an FBI agent, Robert Wright, issued in support of a civil forfeiture action in 1998, unrelated to al Qaeda. It says ***nothing*** about Mr. Kadi supporting terrorism. The affidavit merely notes that in 1991, Mr. Kadi conferred money to a charity for the purchase of property. In fact, the federal court to whom the affidavit was submitted, commented on the affidavit, noting that

---

[1] Tellingly, plaintiffs do not refute the non-existence of their fictional U.S. Treasury press release. *See Mr. Kadi's Memorandum in Support of his Motion to Dismiss* at 12.

[2] Moreover, the 9/11 Commission Report addresses OFAC's designations immediately following September 11: "Treasury officials acknowledged that some of the evidentiary foundations for the early designations were quite weak." 9/11 Commission Report, Staff Monograph, Ch. 5, Terrorist Financing (the "Report") (discussing OFAC's "terrorist" designations immediately following September 11 and the political pressure to increase the number of entities designated.) Plaintiffs' reliance on such lists should be disregarded.

1

"the government has yet to produce any evidence in support of these allegations." *United States v. One 1997 E35 Ford Van*, 50 F.Supp.2d 789, 793 (N.D. Ill. 1999).

Plaintiffs' blatant misrepresentations are inexcusable, especially in light of the heinous acts of which they accuse Mr. Kadi. The Court need not accept as true plaintiffs' conclusory allegations and unsupported far-fetched inferences. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

## II. Plaintiffs have not properly served Mr. Kadi.

### A. The New York *Burnett* Action

No order authorizing service by publication was sought by *Burnett* plaintiffs or issued by the Court in this case. Absent such an order, service by publication is invalid as a matter of law. Fed. R. Civ. P. 4(f)(3); *Ryan v. Brunswick Corp.*, No. 02-cv-0133E(F), 2002 U.S. Dist LEXIS 13837 *6 (W.D.N.Y. 2002). The New York *Burnett* action must be dismissed as to Mr. Kadi.[3]

### B. The Washington, D.C. *Burnett* Action

*Burnett* plaintiffs argue that service by publication on Mr. Kadi must have been sufficient because he has retained counsel to dismiss the case. *Burnett* Opp. at 2. This argument is contrary to law and defies common sense. *Burnett* plaintiffs argue it is "hard to believe that [Mr. Kadi] did not receive notice of this lawsuit, when he has retained counsel, appeared and filed a motion to dismiss." *Burnett* Opp. at 2. However, whether Mr. Kadi has actual notice of the lawsuit is not dispositive of the question of sufficiency of process. *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("[w]e reject the notion that 'actual notice' suffices to cure a void service"). If the *Burnett* plaintiffs' theory had merit, no party could ever

---

[3] Notably, in their opposition brief the *Burnett* plaintiffs do not address service of process on Mr. Kadi in the New York action. Instead, plaintiffs' arguments are limited to the validity of service in the D.C. *Burnett* action. *See Burnett* Opp. at 2-5.

move to dismiss based on insufficiency of process because doing so would amount to conceding actual notice, an absurd result expressly precluded by Fed. R. Civ. P. 12(b)(5).

Tellingly, *Burnett* plaintiffs make little effort to address the inadequacies of the specific publications chosen for service on Mr. Kadi. They correctly acknowledge that "[t]he question before the Court is whether publication in the *International Herald Tribune* and *Al Quds Al-Arabi* was 'reasonably calculated' to notify Defendant Kadi of the suit against him." *Burnett* Opp. at 3. However, rather than attempt to demonstrate how these publications were reasonably calculated to give notice to Mr. Kadi (admittedly an impossible task), *Burnett* plaintiffs simply state that "Defendant Kadi's appearance in this case demonstrates that service by publication was adequate." *Burnett* Opp. at 3. *Burnett* plaintiffs' silence with respect to the adequacy of the chosen publications speaks volumes.[4] Accordingly, the Washington, D.C. *Burnett* action must be dismissed as to Mr. Kadi for insufficiency of process.

### C. The *Ashton* Action

*Ashton* plaintiffs argue that while service may not have complied with Fed. R. Civ. P. 4(f)(2) because registered mail is not permitted in Saudi Arabia, nevertheless service was proper under Fed. R. Civ. P. 4(f)(3). *Ashton* Opp. at 3. However, *Ashton* plaintiffs misread Rule 4(f)(3). The Rule provides that service on individuals in foreign countries may be effected "by other means not prohibited by international agreement as may be directed by the court." *Ashton*

---

[4] With respect to the *International Herald Tribune*, *Burnett* plaintiffs' assert only that it "is distributed in the world community, of which Defendant Kadi and his business interests are a part." However, plaintiffs do not contest the paper's extremely limited distribution in Saudi Arabia, where Mr. Kadi resides. As to *Al-Quds Al-Arabi*, plaintiffs appear to argue that publication in this paper, which is **banned** in Saudi Arabia, was reasonable because Osama Bin Laden uses the paper to communicate with his supporters. *Burnett* Opp. at 4-5. This argument is self-serving, as it requires the Court to accept that Mr. Kadi is a supporter of Osama Bin Laden, a fact Mr. Kadi strenuously denies and plaintiffs cannot support.

plaintiffs argue that by simply serving process as directed by the Court, they have complied with Rule 4(f)(3).  However, as this Court has held, "[w]hile Rule 4(f)(3) provides for substitute service 'as may be directed by the court,' any such service must comport with the laws of the foreign country."  *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 2003 U.S. Dist. LEXIS 11961 *10 (S.D.N.Y. 2003); *see also* Fed. R. Civ. P. 4(f) Adv. Comm. Note ("Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law").  Service by registered mail does not comport with Saudi Arabian law.  Thus, service of process was invalid, and the *Ashton* case should be dismissed against Mr. Kadi.

**III.    The Court lacks jurisdiction over Mr. Kadi.**

    **A.    Plaintiffs' specific jurisdiction theory is without merit.**

This Court does not have general jurisdiction over Mr. Kadi because he does not have the "substantial, systematic, and continuous" contacts with the United States, or more importantly, with New York or Washington, DC, that is required to sustain suit against him.  Therefore, plaintiffs argue the Court should apply specific jurisdiction.  However, to state a case for this Court to exercise specific jurisdiction over Mr. Kadi, plaintiffs must prove by a preponderance of the evidence that Mr. Kadi's contacts with the relevant forum are a direct cause of the events of September 11, 2001.  A court assessing jurisdiction over a nonresident defendant must do so based solely on the contacts of the ***individual defendant*** with the forum, ***not*** the contacts or activities of the individual defendant's employer or codefendants.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984).  Moreover, for specific jurisdiction to exist, plaintiffs must allege that the nonresident defendant "purposefully directed" his activity toward the forum state.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112 (1987).

Plaintiffs have a burden to establish that the cause of action ***arose out of*** Mr. Kadi's contacts with the relevant forum. *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391 (S.D.N.Y. 2004) (holding that to assert specific jurisdiction, the claim must arise out of or relate to the defendant's contacts with the forum state); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (U.S. 1984). "Arises out of" does not mean that attenuated conclusory allegations requiring the leaps of faith as alleged here are sufficient. In *Bersch v. Drexel Firestone, Inc.*, the Second Circuit held the connection between defendant's contacts with the forum and the alleged injuries was "too tenuous to permit those torts to be considered as 'arising from'" defendant's actions within the forum. 519 F.2d 974, 1000 (2d Cir. 1975). Here too, the leap of logic and reality linking a charitable contribution by a corporate entity associated with Mr. Kadi in ***1991***, portions of which allegedly fell into the hands of Hamas operatives,[5] to the tragic events of September 11, ***2001***, which Osama bin Laden and his al Qaeda group have taken credit for,[6] is far-fetched. Notably, Mr. Kadi is not even mentioned in the 585-page "9/11 Commission Report." Nor does it mention any of the companies alleged by plaintiffs to have been connected with Mr. Kadi. *See* http://www.9-11commission.gov/report/ 911Report.pdf (visited November 26, 2004).

Plaintiffs make conclusory allegations equating Mr. Kadi to al Qaeda, thereby attempting to convolute the lack of specific allegations against Mr. Kadi himself. Plaintiffs do not

---

[5] It was not until ***1995*** that OFAC designated Hamas as a Specially Designated Terrorist organization and Mohammad Salah as a Specially Designated Terrorist. Moreover, personal jurisdiction cannot be measured by events so remote in time. *E.g.*, *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996).

[6] Additionally, courts have held that specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else. *E.g., OMI Holdings Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1092 (10th Cir. 1998).

5

specifically allege that Mr. Kadi took any action or directed action causing the events of September 11, 2001. Even if plaintiffs had alleged that Mr. Kadi "should have known" or that the events of September 11, 2001 were foreseeable, foreseeability is not enough to establish specific jurisdiction. *Calder v. Jones*, 465 U.S. 783, 789 (1984). Actions must be intentionally directed towards the forum for a non-resident defendant to reasonably anticipate he would be haled into court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiffs use al Qaeda and Mr. Kadi interchangeably – without evidence to prove that Mr. Kadi ever had any interaction with al Qaeda, or any other terrorist organization ("given al Qaeda's explicit direction of terrorist activities toward the United States . . . it can hardly be said that Defendant Kadi had no warning that he might be answerable in United States court for his conduct in supporting these acts." *Burnett* Opp. at 8.). Contrary to *Burnett* plaintiffs' contentions, no allegations in the complaint support the proposition that Mr. Kadi "knowingly provided material support to terrorism targeted against the United States, by providing funds for that purpose to al Qaeda." *Burnett* Opp. 7. Additionally, in 1991, there was no basis for Mr. Kadi to suspect anyone associated with the charity, years later, would be designated "terrorist."

The only acts plaintiffs allege are Mr. Kadi's involvement as an officer or director of either the Muwafaq Foundation or another corporation. That is not enough to sustain a jurisdictional claim. *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 821(D. Md. 1999) (holding that jurisdiction over an officer of a company cannot be predicated solely upon the court's jurisdiction over the company itself). Mr. Kadi's relationship with Global Diamond

Resources,[7] Muwafaq Foundation,[8] and Saudi Arabian-based companies M.M. Badkook Co. for Catering & Trading and the National Management Consultancy Center cannot give rise to personal jurisdiction.  *See Mr. Kadi's Memorandum in Support of his Motion to Dismiss* at 10-11; 13-16.  Moreover, plaintiffs also contend in their opposition (but not in the complaint) that Mr. Kadi invested in Ptech, a Massachusetts corporation that was reported as having been investigated by the federal government.  Plaintiffs' own "Attachment 8" recognizes the investment in Ptech came from a corporation, not Mr. Kadi in his individual capacity.  Mr. Kadi could not have "reasonably expected to be haled into court" when the alleged actions were not even his own, but rather investments made by a corporation, a separate legal entity.

    **B.**    **Plaintiffs did not allege conspiracy.**

The *Ashton* Opposition asserts that this Court can exercise conspiracy-based jurisdiction over Mr. Kadi.  However, plaintiffs have plead no facts sufficient to sustain a conspiracy allegation.  Conclusory allegations of conspiracy or agency are insufficient to establish jurisdiction; plaintiffs must allege specific facts to warrant an inference that defendant was part of a conspiracy.  *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260 (S.D.N.Y. 1991).  There is no allegation that Mr. Kadi entered into an agreement or participated in any agreement that resulted in the injury at issue here.

---

[7] Mr. Kadi's connection to Global Diamond Resources is even more attenuated.  Plaintiffs acknowledge in their complaint that Mr. Kadi was "a representative of New Diamond Holdings, a firm that has a controlling interest in Global Diamond."  TAC ¶ 335.

[8] The Muwafaq Foundation has been void since 1994, as indicated by the Secretary of State in Delaware.  *See Declaration of Joseph J. Saltarelli:  Exhibit A*.

**IV.     Plaintiffs' allegations fail to state a claim upon which relief may be granted.**

   **A.     Plaintiffs fail to state a claim under The Anti-Terrorism Act.**

The ATA, which covers acts of "international terrorism," does not apply to terrorist acts which occur in the United States, and thus is inapplicable here. Plaintiffs rely on *Smith v. The Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 221 (S.D.N.Y. 2003) to argue the September 11 attack meets the ATA definition of "international terrorism" because it was executed by foreign nationals with orders from abroad. *Ashton* Opp. at 7. However, the *Smith* court confessed its uncertainty on this point by stating its conclusion was not self-evident; the application of the definition of "international terrorism" was "arguable;" and "an expansive interpretation of 'international terrorism' might render 'domestic terrorism' superfluous." *Smith*, 262 F.Supp.2d at 221-22. The decision in *Smith* departs from the legislative history of the ATA and ignores the Congressional distinction between "domestic terrorism" and "international terrorism." The Seventh Circuit recognized the ATA provides liability for terrorist acts that "occurred in a foreign country." *Boim v. Quranic Literary Institute*, 291 F.3d 1000, 1010-11 (7th Cir. 2002) (stating that the "repeated favorable references to *Klinghoffer* indicate a desire on the part of Congress to extend this liability to land-based terrorism that occurred in a foreign country.").

Even if the ATA did apply here, plaintiffs fail to allege Mr. Kadi's actions violated the ATA. The minimum standard for stating a claim under the ATA requires allegations showing "not funding by itself . . . but funding provided with knowledge of and intent to further violent acts, which must be a reasonably foreseeable result of the funding." *Burnett I*, 274 F.Supp.2d at

8

106.[9] Plaintiffs allege no facts Mr. Kadi had knowledge, intent, or that the September 11 attacks were a foreseeable result of his alleged actions. Plaintiffs allege no facts demonstrating that Mr. Kadi desired al Qaeda's success; nor do plaintiffs plead a single act of Mr. Kadi helping al Qaeda. The most plaintiffs offer is Mr. Kadi's involvement with Muwafaq charity and other businesses. These allegations do not link him to the advancement of al Qaeda, and do not support a claim under the ATA.

### B. Plaintiffs fail to state a claim under the Alien Tort Claims Act.

Plaintiffs contend the allegations in the complaint are sufficient to state a claim under the ATCA. However, they allege only "donor/sponsors *like* Defendant Kadi have been utilized to finance illegal al Qaeda activities." *Burnett* Opp. at 16 (emphasis added). Alleging ***someone else*** financed al Qaeda does not satisfy plaintiffs' burden. Therefore, the ATCA claims, which depend on theories of "aiding and abetting" and conspiracy, fail and should be dismissed.[10]

Although Plaintiffs go to great lengths to argue that the September 11 attacks themselves violated international law, Mr. Kadi is not accused of those acts. Plaintiffs make no allegation that any action by Mr. Kadi constitutes a violation of the law of nations. Plaintiffs make no argument as to how these alleged actions – made with no knowledge of the September 11

---

[9] *See also Boim*, 291 F.3d at 1011-12 (plaintiffs must show defendant knew about al Qaeda's illegal activities, that he desired to help those activities succeed, and that he engaged in some act of helping al Qaeda that was a proximate cause of the plaintiffs' injuries); *Boim II*, 2004 WL 2554446 at *7, No. 00 CC 2905 (N.D. Ill. Nov. 10, 2004) (rejecting broad-brush conclusions such as those alleged by plaintiffs); *Biton v. Palestinian Interim Self-Government Authority*, 310 F.Supp.2d 172, 182 (D.D.C. 2004) (liability only "for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions").

[10] *See In re : S. African Apartheid Litig. v. Citigroup, Inc.*, MDL No. 1499, 2004 U.S. Dist. LEXIS 23944, at 21 (S.D.N.Y. Nov. 29, 2004) ("the ATCA presently does not provide for aider and abettor liability, and this Court will not write it into the statute.").

9

attacks, and no allegation that such actions were a proximate cause of Plaintiffs' injuries – could constitute a violation of international law under some theory of vicarious or indirect liability.[11]

## V. Jurisdictional discovery is not warranted.

Only "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *Burnett I*, 274 F.Supp.2d at 97. Plaintiffs have not demonstrated what, if any, jurisdictional discovery would supplement their specious allegations. Therefore, they have not made the requisite showing and should not be granted the opportunity to harass and burden Mr. Kadi further.

## VI. Conclusion

Plaintiffs inappropriately used their oppositions to try to bolster their thin complaints with new allegations while failing to respond to many of the arguments presented in Mr. Kadi's motion to dismiss.[12] For the foregoing reasons and the reasons set forth in Mr. Kadi's initial brief, his motion should be granted and the complaints against Mr. Kadi should be dismissed with prejudice.

---

[11] The International Convention for the Suppression of the Financing of Terrorism, *Burnett* Opp. at 14, was not adopted by the U.S. until after the September 11 attacks, and by its terms is limited to acts undertaken with actual knowledge or intent, *see* art. 2(1), 2(5).

[12] These include the RICO, FSIA, Torture Victim Protection Act, ATSSSA, and state law claims against him. Accordingly, these claims should be dismissed.

Dated:  December 3, 2004

Respectfully submitted,

HUNTON & WILLIAMS LLP


By:  /s/ Joseph J. Saltarelli
Joseph J. Saltarelli  (JS-1560)
200 Park Avenue, 43rd Floor
New York, New York 10166-0136

and

David F. Geneson (*pro hac vice* motion pending)
Bonnie K. Arthur (*pro hac vice* motion pending)
barthur@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C.  2006-1109
(202) 955-1500

Attorneys for Defendant
Yassin Abdullah Kadi

## CERTIFICATE OF SERVICE

I certify that, on the 3rd day of December, I caused copies of **DEFENDANT YASSIN ABDULLAH KADI'S REPLY IN SUPPORT OF MR. KADI'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT** to be served electronically pursuant to the Court's ECF system.

/s/ Joseph J. Saltarelli_____

Joseph J. Saltarelli