# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br> ECF Case |

*This document relates to:*     Federal Insurance Co. v. al Qaida
03 CV 06978 (RCC)


## THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS FILED BY ISLAMIC INVESTMENT COMPANY OF THE GULF (SHARJAH)


COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Telephone:     (215) 665-2000
Facsimile:     (215) 665-2013

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  ALLEGATIONS AGAINST DEFENDANT IICG ...........................................1

III. APPLICABLE LAW ..............................................................................................3

    A.   Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's Prima Facie
    Showing of Personal Jurisdiction May be Established Solely by Legally
    Sufficient Allegations of Jurisdiction ..............................................................3

    B.   Under Rule 12(b)(6), The Federal Plaintiffs' Complaint Need Only Give
    the Defendant Fair Notice of Their Claims and the Grounds Upon Which
    They Rest .........................................................................................................4

IV.  ARGUMENT ..........................................................................................................5

    A.   The Federal Plaintiffs Have Fulfilled Their Obligations Under the Federal
    Notice Pleading Requirements .........................................................................5

    B.   This Court Has Personal Jurisdiction Over IICG Under New York's Long
    Arm Statute......................................................................................................7

    C.   This Court's Exercise of Jurisdiction Over IICG Does Not Violate Due
    Process .............................................................................................................8

        1.   This Court Can Constitutionally Exercise Specific Jurisdiction.........8

        2.   IICG is Also Constitutionally Subject to Jurisdiction Pursuant to the
        Modified Due Process Standard For Mass Torts ...............................10

    D.   The Federal Plaintiffs Have Adequately Pled Causation............................11

    E.   As Subrogees, The Federal Plaintiffs Have Standing Under RICO, And
    They Have Sufficiently Pled A Claim Against IICG .....................................14

    F.   The Federal Plaintiffs Have Adequately Alleged Claims Under the Anti-
    Terrorism and Effective Death Penalty Act...................................................15

        1.   The Federal Plaintiffs Have Adequately Alleged Claims Under the
        ATA Pursuant to General Tort Principles.........................................15

        2.   Federal Plaintiffs Have Adequately Alleged Claims Under the ATA
        Based Upon IICG's Criminal Violations...........................................19

G.   The Federal Plaintiffs Have Sufficiently Pled Claims Against IICG for Conspiracy and Aiding and Abetting ........................................................................20

H.   The Complaint States Valid Claims For Trespass, Wrongful Death, Survival, Assault and Battery, Intentional Infliction of Emotional Distress, Negligence and Punitive Damages ..............................................................20

V.   CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

Alexander v. Fritzen,
    503 N.E.2d 102 (N.Y. 1986) ..................................................................8

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000) .................................................................23

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
    902 F.2d 194 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990) ................................4

Bastein v. Sotto,
    749 N.Y.S.2d 538 (N.Y. App. Div. 2002) ........................................22

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) ................................................1, 12, 15, 18, 19

Boim v. Quranic Literary Institute,
    2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) ........................................16, 17, 18

Brewer v. Brewer,
    34 Fed. Appx. 28, 30 (2d Cir. 2002) ......................................................23

Calder v. Jones,
    465 U.S. 781 (1984) ..............................................................................8

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998) ...................................................................5

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) .........................................................7

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
    187 F.3d 229 (2d Cir. 1999) ...................................................................8

Conley v. Gibson,
    355 U.S. 41 (1957) ............................................................................5, 6

Continental Ore Co. v. Union Carbide & Carbon Corp.,
    370 U.S. 690 (1962) ..........................................................................11

In re DES Cases,
    79 F. Supp. 552 (E.D.N.Y. 1992) ..........................................................10

<u>Davis v. Barrett Day Securities, Inc.</u>,
    1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995) ................................................9

<u>DiStefano v. Carozzi North America, Inc.</u>,
    286 F.3d 81 (2d Cir. 2001) ................................................................................4

<u>Durante Brothers & Sons, Inc. v. Flushing National Bank</u>,
    755 F.2d 239 (2d Cir. 1985) ..............................................................................7

<u>Flatow v. Islamic Republic of Iran</u>,
    999 F. Supp. 1 (D.D.C. 1998) ....................................................................12, 25

<u>Geisler v. Petrocelli</u>,
    616 F.2d 636 (2d Cir. 1980) ..............................................................................5

<u>Goff v. Clark</u>,
    755 N.Y.S.2d 493 (N.Y.App. Div. 2003) .........................................................22

<u>Halberstam v. Welch</u>,
    705 F.2d 472 (D.C. Cir. 1983) ....................................................11, 15, 16, 21

<u>Hishon v. King & Spalding</u>,
    467 U.S. 69 (1984) ...........................................................................................18

<u>Howell v. New York Post Co., Inc.</u>,
    612 N.E.2d 699 (N.Y. 1993) ...........................................................................23

<u>In re Initial Public Offering Sec. Litigation</u>,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ...............................................................6

<u>Ivancic v. Olmstead</u>,
    488 N.E.2d 72 (N.Y.1985), <i>cert. denied</i>, 476 U.S. 1117 (1986) ....................20

<u>Johnson v. Nyack Hospital</u>,
    86 F.3d 8 (2d Cir. 1996) ..................................................................................23

<u>Jones v. R.R. Donnelly & Sons Co.</u>,
    124 S. Ct. 1836 (2004) .....................................................................................22

<u>Kilburn v. Socialist People's Libyan Arab Jamahiriya</u>,
    376 F.3d 1123 (D.C. Cir. 2004) .......................................................................12

<u>LaMarca v. United States</u>,
    31 F. Supp. 2d 110 (E.D. N.Y. 1998) ..............................................................21

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
   26 F. Supp. 2d 593 (S.D.N.Y. 1998)............................................................7

Leatherman v. Tarrant County,
   507 U.S. 163 (1993)...................................................................................6

Lichtenstein v. State,
   712 N.E.2d 1218 (N.Y. Ct. App. 1999) ....................................................22

Louisiana Land & Exploration Co. v. Unocal Corp.,
   863 F. Supp. 306 (E.D. La. 1994) ............................................................22

Lumbard v. Maglia, Inc.,
   621 F. Supp. 1529 (S.D. N.Y. 1985)........................................................11

In re Magnetic Audiotape Antitrust Litigation,
   334 F.3d 204 (2d Cir. 2003)....................................................................4, 9

Merrill Lynch Futures, Inc. v. Kelly,
   585 F. Supp. 1245 (S.D. N.Y. 1984)....................................................15, 16

Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.,
   84 F.3d 560 (2d Cir. 1996)........................................................................7

Mortise v. United States,
   102 F.3d 693 (2d Cir. 1996).....................................................................23

Phillips v. Sun Oil Co.,
   307 N.Y. 328 (N.Y. 1954) .......................................................................20

Pittman v. Grayson,
   149 F.3d 111 (2d Cir. 1998)...................................................................8, 21

Pugh v. Socialist People's Libyan Arab Jamahiriya,
   290 F. Supp. 2d 55 (D.D.C. 2003).........................................................9, 10

Rachman Bag Co. v. Liberty Mutual Insurance Co.,
   46 F.3d 230 (2d Cir. 1995)........................................................................1

Rein v. Socialist People's Libyan Arab Jamahiriya,
   995 F. Supp. 325 (E.D.N.Y. 1998) ............................................................9

Rich-Taubman Associate v. Stamford Restaurant Operating Co., Inc.,
   587 F. Supp. 875 (S.D. N.Y. 1984)..........................................................15

Scribner v. Summers,
    84 F.3d 554 (2d Cir. 1996)........................................................................20

Simmons v. Abruzzo,
    49 F.3d 83 (2d Cir. 1995) ..........................................................................5

Simon v. Philip Morris, Inc.,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) .......................................................7, 10

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002).................................................................................5, 6

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.,
    241 F.3d 135 (2d Cir. 2001).........................................................................8

Valdan Sportswear v. Montgomery Ward & Co.,
    591 F. Supp. 1188 (S.D. N.Y. 1984)..........................................................21

Wahad v. FBI,
    813 F. Supp. 224 (S.D. N.Y. 1993).............................................................15

Wantanabe Realty Corp. v. City of New York,
    2003 U.S. Dist. LEXIS 21602 (S.D. N.Y. 2003)........................................21

Whyte v. Contemporary Guidance Servs.,
    2004 U.S. Dist. LEXIS 12447 (S.D. NY. July 2, 2004) ...............................1

Woodford v. Committee Action Agency,
    239 F.3d 517 (2d Cir. 2001).........................................................................5

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004)...........................................................................5

## RULES AND STATUTES

Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq* ....................................15

Fed. R. Civ. P. 8(a) ..........................................................................................5, 6

Fed. R. Civ. P. 12(b)(2)....................................................................................3, 4

Fed. R. Civ. P. 12(b)(6)....................................................................................4, 5

Fed. R. Civ. P. 15(a) ............................................................................................1

N.Y.C.P.L.R. §302(a)(2).......................................................................................7

N.Y. Est. Powers & Trusts Law § 5-4.1 .................................................................21

N.Y. Est.  Powers & Trusts Law § 11-3.2 ..............................................................21

Restatement (Second) of Torts § 302.....................................................................24

Restatement (Second) of Torts § 876(b).................................................................21

USA Patriot Act of 2001, Pub. L. No. 107-056, 115 Stat. 391.......................................2

## I.   <u>INTRODUCTION</u>

The Federal Plaintiffs have sued Islamic Investment Company of the Gulf (Sharjah) ("IICG") based on its longstanding role as a financial services provider to, and material supporter of, terrorist organizations including al Qaida.  While the First Amended Complaint ("FAC") must be read as a whole in order to fully understand the Federal Plaintiffs' claims against IICG, the principal allegations against IICG are set forth in paragraphs 308-313.  The Federal Plaintiffs allege that IICG knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 attack (the "Attack") was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Federal Plaintiffs' allegations state valid claims against IICG under the Anti-Terrorism Act (the "ATA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and state and federal common law tort theories.  Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated those events through financial or other means. <u>Boim v. Quranic Literacy Inst.</u>, 291 F.3d 1000, 1021 (7th Cir. 2002).  Therefore, IICG's motion to dismiss must be denied.  In the event, however, that this Court finds the Federal Plaintiffs' FAC lacking, leave to amend should be granted.  <u>See</u> Fed. R. Civ. P. 15(a); <u>see also</u> <u>Rachman Bag Co. v. Liberty Mut. Ins. Co.</u>, 46 F.3d 230, 234-35 (2d Cir. 1995). <u>Whyte v. Contemporary Guidance Servs.</u>, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. NY. July 2, 2004).

## II.   <u>ALLEGATIONS AGAINST DEFENDANT IICG</u>

The circumstances prompting this lawsuit are undoubtedly familiar to this Court.  On September 11, 2001, nineteen members of the al Qaida terrorist network hijacked four commercial airliners and used those planes as weapons in a coordinated terrorist attack on the

World Trade Center complex in New York and the Pentagon in Arlington, Virginia.   The Attack resulted in the tragic loss of several thousand lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center complex.  FAC ¶¶ 70 & 71.  The Attack was the end-result of over a decade of strategic planning, lavish financial and logistical support of an international web of co-conspirators, including the State defendants, the individual defendants, the charity defendants, the bank defendants, and others.  It is beyond dispute that the Attack was a direct, intended and foreseeable product of this massive conspiracy, spearheaded by the al Qaida movement, to commit acts of international terrorism against the United States, its nationals and allies.

Congress quickly reacted to the Attack and made its message clear:  "All Americans are united in condemning, in the strongest possible terms, the terrorists who planned and carried out the attacks against the United States on September 11, 2001, and in pursuing all those responsible for those attacks *and their sponsors* until they are brought to justice."  See USA Patriot Act of 2001, Pub. L. No. 107-056, 115 Stat. 391 (emphasis added).

The Federal Plaintiffs' FAC plainly asserts that IICG was one of those sponsors.  FAC ¶ 311.  Specifically, the Federal Plaintiffs' FAC alleges that IICG, a subsidiary of Dar-Al-Maal Al Islami ("DMI"), was part of a complex banking system through which al Qaida' sponsors channeled support to that terrorist organization.  FAC ¶¶ 307, 311.  Operating under the rules of Islamic law (Shariah), including the principles of Zakat (Islamic charity), IICG and its parent organization, DMI, gave extensive financial support to radical Islamic organizations.  Moreover, IICG knowingly provided material support and resources to al Qaida with the direct intent to support al Qaida in its campaign to attack America.  FAC ¶¶ 66, 73.  In doing so, IICG aided and abetted, conspired with, and provided material support and resources to al Qaida and affiliated foreign terrorist organizations ("FTOs"), associations, organizations or persons.  FAC ¶ 66.

It is indisputable that the Federal Plaintiffs' FAC alleges that IICG knowingly participated in al Qaida's global conspiracy to commit acts of international terrorism against the United States, its nationals and allies.  Indeed, when read as a whole, and in accordance with the mandates of Rule 8(a)(2), the Complaint sufficiently supports multiple claims, in that it alleges that IICG knowingly provided material support and resources to al Qaida, that al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the Attack absent the sponsorship of IICG and the other defendants, and that IICG thus knowingly participated in the conspiracy with the intent to advance the commission of terrorist attacks against the United States, of which the Attack was a natural, intended and foreseeable consequence.  FAC ¶¶ 72 & 74.   Plaintiffs have asserted sufficient allegations against the defendant to survive a motion to dismiss, and therefore IICG's motion to dismiss must be denied in its entirety.

## III.   APPLICABLE LAW

Defendant IICG makes two broad arguments in favor of dismissal of the claims asserted against it in the FAC:  (1) that this Court lacks personal jurisdiction over IICG; and (2) that the Federal Plaintiffs have failed to state any claim entitling them to relief against IICG.  For the reasons set forth below, the Federal Plaintiffs respectfully request that the Motion to Dismiss filed by IICG be denied in all respects, with prejudice.

### A.   Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's *Prima Facie* Showing of Personal Jurisdiction May be Established Solely by Legally Sufficient Allegations of Jurisdiction

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation

> omitted] legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted].  At that point, the *prima facie* showing must be factually supported.

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990).  The Second Circuit has observed that a plaintiff's averment of jurisdictional facts will normally be met in one of three ways when in dispute:  (1) by a Rule 12(b)(2) motion, which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency; (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction; or (3) by request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits.  Id. at 197.  Where, as here, "the defendant is content to challenge only the sufficiency of the plaintiff's factual allegations, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction."  Id.  In order to meet its prima facie showing, the Federal Plaintiffs need only allege facts that connect the defendant with the applicable forum, here, the United States.  The plaintiff's averments of jurisdictional facts must be taken as true.  Id.;  In re  Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003).  The Court also construes the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor.  DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001).

**B.      Under Rule 12(b)(6), The Federal Plaintiffs' Complaint Need Only Give the Defendant Fair Notice of Their Claims and the Grounds Upon Which They Rest**

IICG alternatively moves to dismiss the Federal Plaintiffs' claims pursuant to Rule 12(b)(6).  Such a motion must be denied unless " it appears beyond doubt that the plaintiff can

prove no set of facts in support of its claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n. 8. (2d Cir. 2004); Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  The Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of plaintiffs.  Wynder, 360 F.3d at 77.  Plaintiffs are not required to prove their case at the pleading stage; indeed, the pleading of evidence should be avoided.  Woodford v. Comm. Action Agency, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion is "not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Under Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002), Rule 8 pleadings are extremely permissive.  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41 (1957)); Wynder, 360 F.3d at 77.

## IV.    ARGUMENT

### A.    The Federal Plaintiffs Have Fulfilled Their Obligations Under the Federal Notice Pleading Requirements

Rule 8 of the Federal Rules of Civil Procedure provides in relevant part:

> **Claims for relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of

> jurisdiction to support it, (2) a short and plain statement of the
> claim showing that the pleader is entitled to relief, and
> (3) a demand for judgment for the relief the pleader seeks . . .

Fed. R. Civ. P. 8(a).  Rule 8 provides the "notice pleading" requirement for federal

courts.  The Rule imposes a lenient obligation on the pleader, requiring only that the pleader

provide its opponent with fair notice of its claim and the grounds upon which that claim rests.

See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  In the absence of averments of

fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is

prohibited from imposing more demanding requirements than those prescribed by Rule 8(a).

See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).  "Such simplified 'notice

pleading' is made possible by the liberal opportunity for discovery and the other pretrial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense and to define more narrowly the disputed facts and issues."  In re Initial Pub. Offering

Sec. Litig., 241 F. Supp. 2d 281, 322 (S.D.N.Y. 2003) (quoting Conley v. Gibson, 355 U.S.

41, 48 (1957)).  Consequently, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly

written sentence can satisfy Rule 8(a)(2)."  Id. at 323.

Defendant IICG's Motion is rife with accusations that the Federal Plaintiffs have not pled

sufficient facts to establish either personal jurisdiction or valid claims against it.  However, IICG

is mistaken and misunderstands the meaning and intent behind Rule 8(a).  The Federal Plaintiffs

have provided IICG with the requisite notice in alleging that they knowingly aided, abetted and

conspired to fund the activities of terrorists, including al Qaida, and that a terrorist attack on

American soil was a direct, intended and foreseeable product of a larger conspiracy to commit

acts of international terrorism against the United States, its nationals and allies. (FAC ¶¶ 66, 73.).

To expect or require the Federal Plaintiffs to set forth every wrongful act of IICG is as

unreasonable as it is unnecessary at this stage in the proceedings.  It simply is not required in

notice pleading.  See Fed. R. Civ. P. 8, 12.  Having stated a claim against IICG, the Federal

Plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence.  Indeed, as to IICG's personal jurisdictional challenge, only a *prima facie* showing of jurisdiction is required at the pleading stage.  See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 576 (2d Cir. 1996).  A plaintiff is entitled to jurisdictional discovery and an evidentiary hearing before having to demonstrate jurisdiction by a preponderance of the evidence.  Id.  Under the Federal Rules and relevant case law, it is inappropriate and untimely for IICG to challenge the substance of the Federal Plaintiffs' good faith allegations which have effectively put them on notice of the claims and jurisdictional bases against them.  For this reason, IICG's Motion to Dismiss should be denied in its entirety.

### B.    This Court Has Personal Jurisdiction Over IICG Under New York's Long Arm Statute

This Court has jurisdiction over the Federal Plaintiffs' claims pursuant to New York's long arm statute.  That statute provides, in part, that "the court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent commits a tortious act within the state."  N.Y.C.P.L.R. §302(a)(2).  "It is well settled that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. §302(a)(2)."  Simon v. Philip Morris, Inc., 86 F. Supp.2d 95, 99 (E.D.N.Y. 2000) (citation omitted); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators."  Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F. Supp.2d 593, 601 (S.D.N.Y. 1998).

New York law does not recognize the substantive tort of civil conspiracy.  Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985).  Rather, allegations of a conspiracy connect the actions of separate defendants with an otherwise actionable tort.

Alexander v. Fritzen, 503 N.E.2d 102, 103 (N.Y. 1986). Both conspiracy and aiding and abetting create concerted-action liability in New York. Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998). Conspiracy requires an agreement to commit a tortious act while aiding and abetting requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer. Id. at 122-23. For the reasons set forth above, the conduct of IICG constitutes both forms of concerted-action liability under New York law as set forth in the allegations of the Complaint and, as such, connects it with the subject transaction, charges IICG with the acts and declarations of its co-conspirators, and exposes it to joint and several liability. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999). This Court therefore has personal jurisdiction over IICG pursuant to New York's long arm statute and the well-recognized conspiracy jurisdiction theory under New York law.

**C.    This Court's Exercise of Jurisdiction Over IICG Does Not Violate Due Process**

**1.    This Court Can Constitutionally Exercise Specific Jurisdiction**

The Supreme Court repeatedly has held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. Calder v. Jones, 465 U.S. 781, 788 (1984). Where, as here, the claim arises out of, or relates to, a defendant's contact with the forum, i.e., the attack in New York, the plaintiff need only prove specific jurisdiction. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd., 241 F.3d 135, 152 (2d Cir. 2001) (citation omitted).

When considering specific jurisdiction, the court properly focuses on the relationship among the defendant, the forum and the litigation in judging minimum contacts. Calder, 465 U.S. at 788. In an action involving the harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their

absence."  The Federal Plaintiffs have alleged that IICG was engaged in a conspiracy to attack

and wage war against the United States, its nationals, interests, and allies.  FAC ¶ 73.[1]  The

actions of the conspirators were expressly aimed at the United States such that, under the

circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with

some United States citizens as passengers, provide support for exercising personal jurisdiction

here.  Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998),

aff'd in part, 162 F.3d 748 (2d Cir. 1998), cert. denied, 527 U.S. 1003 (1999), involved the

in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States

citizens over Lockerbie, Scotland.  Judge Platt, in the Eastern District of New York, reasoned

that the destruction of the airplane, 189 deaths, and significant security concerns for the country

and its aviation industry arguably "has had extensive impacts" on the United States.  Id. at 330.

> Any foreign state would know that the United States has
> substantial interest in protecting its flag carriers and its nationals
> from terrorist activities and should reasonably expect that if these
> interests were harmed, it would be subject to a variety of potential
> responses, including civil actions in United States courts.

Id.  The September 11th Attack indisputably had impacts in and on the United States like few

events in its history.

In Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp.2d 55 (D.D.C. 2003),

Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit

involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States

citizens.  The plaintiffs in Pugh alleged that the defendants "conspired to sabotage and succeeded

in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting

passengers while in flight."  Id. at 59.  The court noted that the United States had a well known,

---

[1]        The Federal Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage
of the litigation.  In Re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); see also Davis v. Barrett Day
Securities, Inc., 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

worldwide interest in preventing and punishing terrorism.  Congress had enacted several criminal statutes dealing with such cases starting at least five years before the bombing.  These criminal statutes contemplated jurisdiction in the United States over foreign nationals for activities abroad regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil *in personam* jurisdiction over those same individuals for the same acts.

Id.  That same logic applies here.  In sum, this Court's exercise of specific personal jurisdiction does not violate IICG's due process rights.

### 2.    IICG is Also Constitutionally Subject to Jurisdiction Pursuant to the Modified Due Process Standard For Mass Torts

IICG is also subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in both tobacco and DES cases.  Simon, 86 F. Supp. 2d at 129-37; In re DES Cases, 79 F. Supp. 552, 574-77 (E.D.N.Y. 1992).  "New York's interest in this dispute is intense, and the burden on [defendant] is minimal compared to the difficulty of the plaintiffs' litigating in [Saudi Arabia]."  Simon, 86 F. Supp.2d at 137.

The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation.  Id. at 131 (citation omitted).  Since New York has an appreciable state interest because this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is *prima facie* constitutional.  Id. Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, the defendant is unable to amount a defense in the forum state without suffering a relatively substantial hardship.  Id.  IICG can make no such showing here.

D.      **The Federal Plaintiffs Have Adequately Pled Causation**

IICG further challenges the Federal Plaintiffs' causes of action based on the argument that the Federal Plaintiffs failed to plead that IICG's actions have a proximate causal link to the Attack.  In making this argument, IICG fundamentally misapprehends the elements of the Federal Plaintiffs' aiding and abetting and conspiracy theories, and ignores the allegations of the Complaint.  Under New York law, "those who aid or abet or conspire in tortious conduct are jointly and severally liable with other participants in the tortious conduct, regardless of the degree of their participation or culpability in the overall scheme." Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1536 (S.D. N.Y. 1985).

Consistent with this rule, the causation analysis in a civil conspiracy action focuses solely on whether the plaintiff's injuries were caused by "an unlawful overt act performed by *one of the parties* to the agreement." Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis added).  Similarly, a plaintiff need only allege that the defendant provided substantial assistance to the wrongdoer to establish tort liability based on the defendant's aiding and abetting of the principal tortfeasor.  Id.  Pursuant to these standards, IICG's participation in al Qaida's conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that terrorist organization, ties them inextricably to the Attack.[2]  As the Federal Plaintiffs' injuries are indisputably the direct result of that Attack, the Federal Plaintiffs have properly and adequately alleged causation.  Accordingly, IICG's causation-based arguments must be rejected.

In keeping with the foregoing principles, courts repeatedly have held that victims of terrorism are entitled to recover from the knowing financiers and sponsors of the terrorist organization responsible for carrying out the plot that produced their injuries, and need not

---

[2]      The United States Supreme Court has held that in cases that involve alleged conspiracy among multiple actors involving multiple acts, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking as it as a whole." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690 (1962).

demonstrate any direct involvement by the defendant in that specific plot.  As the United States District Court for the District of Columbia observed in <u>Flatow v. Islamic Republic of Iran</u>, 999 F. Supp. 1 (D.D.C. 1998):  "[a] plaintiff need not establish that the material support and resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises…[s]ponsorship of a terrorist group which causes the personal injury or death of a United States national alone is sufficient…."  <u>Id.</u> at 18.  The Seventh Circuit adopted the same standard in <u>Boim v. Quranic Literacy Inst.,</u> 291 F.3d 1000 (7th Cir. 2002), holding that plaintiffs who are victims of terrorism need show only that the defendant knew of the terrorist organization's illegal activities, desired to help those activities, and engaged in some affirmative act in support thereof. <u>Id.</u> at 1023.  More recently, the D.C. Circuit explicitly held that application of the "but for" standard of causation is manifestly improper in cases arising from the provision of material support to a terrorist organization.  <u>Kilburn v. Socialist People's Libyan Arab Jamahiriya</u>, 376 F.3d 1123, 1130 (D.C. Cir. 2004).  In support of its decision, the D.C. Circuit insightfully reasoned as follows:

> [T]he more likely situation is not Libya's hypothetical, involving one direct and one general state sponsor, but rather the case in which multiple foreign states claim to be providing only "general support."  Such a case, in which application of a "but for" standard to joint tortfeasors could absolve them all, is precisely the one for which courts generally regard "but for" causation as inappropriate.

<u>Id.</u>  Pursuant to these standards, IICG's participation in al Qaida's conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that terrorist organization, ties them inextricably to the Attack.  As the plaintiffs' injuries are indisputably the direct result of that Attack, the plaintiffs have properly and adequately alleged causation.  Accordingly, IICG's causation-based arguments must be rejected.

While unnecessary to establish liability over IICG given the asserted aiding and abetting and conspiracy theories, it should be noted that the Complaint does specifically allege that the

Attack would not have been possible absent the sponsorship and support provided by IICG and the other defendants.  According to the Complaint, "[a]bsent the material, support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack."  FAC ¶ 74.  IICG conveniently ignores these and similar allegations of the Complaint in their Motion to Dismiss.  For purposes of the present motion, however, the allegations of the Complaint must be accepted as true.

The Complaint also sufficiently alleges that the Attack was a foreseeable product of the conspiracy in which IICG knowingly participated, and of IICG's aiding and abetting of al Qaida. Indeed, the Complaint unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy.  FAC ¶ 72.  While at this stage it is not necessary for the Federal Plaintiffs to provide evidence of its allegations, it should be noted that al Qaida had unequivocally declared, through statements and actions, that the primary objective of its global conspiracy was to attack the United States and kill its citizens.  For example, in 1996 and 1998, al Qaida issued *fatwas*, or religious decrees, authorizing attacks against the United States and its citizens.  In the 1998 *fatwa*, issued under the banner "The World Islamic Front For Jihad Against Jews And Crusaders," Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens, civilian or military, "in any country in which it is possible to do it… ."

During the years before the September 11 Attack, al Qaida followed through on its threats, plotting and carrying out a series of calculated and increasingly violent attacks against U.S. interests, including:  the first World Trade Center bombing in 1993; the planned attacks against the Lincoln-Holland Tunnels and George Washington Bridge and other sites in New York in July 1993; the planned assassination of Pope John Paul II in the Philippines, including

the Americans in his entourage; the planned assassination of President Clinton in the Philippines; the planned bombing of eleven to thirteen American airliners over the Pacific in January 1995; the car bombing of the U.S. military mission in Rihadh, Saudi Arabia in 1995; the truck bombing of the U.S. Housing area Khobar Towers in Dhahran, Saudi Arabia in 1996; the simultaneous bombings of the U.S. Embassies in Kenya and Tanzania in 1998; the Millennium plot to bomb the Los Angeles International Airport; the plot to attack a U.S. Naval ship in Yemen in January of 2000; and the actual suicide attack on the USS Cole in October of 2000.

As the conduct of terrorist acts against the United States and its citizens was, for many years prior to September 11, 2001, al Qaida's declared objective, it is inconceivable to suggest that the Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaida, as IICG is alleged to have done.[3]

### E.   As Subrogees, The Federal Plaintiffs Have Standing Under RICO, And They Have Sufficiently Pled A Claim Against IICG

Defendant IICG makes a two-pronged argument in opposition to the Federal Plaintiffs' RICO claim:  (1) that the Federal Plaintiffs lack standing to bring a claim under RICO; and (2) that the Federal Plaintiffs have failed to state a claim under RICO.  See Def's Br. at 16-17.  At this point in the litigation, the Federal Plaintiffs have extensively addressed and briefed RICO arguments analogous to those put forth by IICG.  Rather than burdening the Court with a restatement of those same arguments herein, the Federal Plaintiffs incorporate those arguments by reference.[4]

---

[3]   Not surprisingly, IICG denies and challenges the allegations in the FAC.  Consistent with the precedents of the Second Circuit, the Federal Plaintiffs request the opportunity to conduct discovery if the Court, for some reason, does not assume the truth of all of the allegations in the FAC.

[4]   See Opposition to Mar-Jac Poultry, Inc. at 14-20 (filed on 07/09/04); Opposition to Arab Bank PLC at 13-17 (filed on 07/19/04).

**F.     The Federal Plaintiffs Have Adequately Alleged Claims Under the Anti-Terrorism and Effective Death Penalty Act**

A plaintiff may assert a valid claim under the Antiterrorism and Effective Death Penalty Act, 18 U.S.C. § 2331, *et seq.* (the "ATA") under either of two alternative approaches:  (1) pursuant to general tort principles, including concerted action theories of liability; or (2) by demonstrating that the defendant violated the ATA's criminal standards, and that the defendant's violation was a substantial factor in bringing about plaintiff's injuries.  Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1015, 1020 (7th Cir. 2002) ("Boim I").  The Federal Plaintiffs have done both.

**1.     The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Pursuant to General Tort Principles**

In Boim I, the Court of Appeals for the Seventh Circuit held that the legislative history of the ATA evinces a clear intent by Congress to codify general common law tort principles, and to impose civil liability for acts of international terrorism to the full reaches of traditional tort law. Boim, 291 F.3d at 1010.  Accordingly, the Boim I court specifically embraced the use of concerted action theories of liability, such as aiding and abetting and conspiracy, to establish liability over a defendant under the ATA.  Id. at 1020.

The elements necessary to establish liability for a defendant's participation in a conspiracy to commit a tort are:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was done pursuant to and in furtherance of the overall scheme.  Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).[5]

---

[5]     Although New York law likely controls the vast majority of the Federal Plaintiffs' claims, Halberstam long has been regarded as the leading case on concerted action liability, and the New York courts have repeatedly relied on Halberstam in analyzing conspiracy and aiding and abetting claims.  See Wahad v. FBI, 813 F. Supp. 224, 233 (S.D.N.Y. 1993); Rich-Taubman Assoc. v. Stamford Rest. Operating Co., Inc., 587 F. Supp. 875, 879 n.5 (S.D.N.Y. 1984); Merrill Lynch  Futures, Inc. v. Kelly, 585 F. Supp. 1245, 1254 (S.D.N.Y. 1984).

Civil liability for aiding and abetting will be imposed where:  (1) the party whom the defendant aids or abets performs a wrongful act that causes injury; (2) the defendant is generally aware of his role in an overall illegal scheme or tortious plan at the time he provides the assistance; and (3) the defendant knowingly provides substantial assistance to the wrongdoer.  Id. at 477.

In its recent decision in Boim v. Quranic Literary Institute, No. 00 C 2905, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) ("Boim II"), the United States District Court for the Northern District of Illinois engaged in a thorough and insightful analysis of these standards of concerted action liability in the context of an action arising from a terrorist attack.  In Boim II, the parents of an American citizen assassinated in Israel by Hamas sought to hold several entities, including purported charities, liable for their son's death under the Anti-Terrorism Act and concerted action theories.  In support of their claims, the plaintiffs alleged that the defendants knowingly provided material support and resources to Hamas.

Consistent with the principles announced in Boim I, the court defined at the outset plaintiffs' burden in establishing defendants' liability. The court noted that "[t]o prove that the defendants provided material support to Hamas in violation of § 2333, the Boims would have to show that they knew about Hamas' illegal activity, that they desired to help those activities succeed, and that they engaged in some act of helping." 2004 WL 2554446 at *7. With respect to establishing that defendants conspired to provide material support to Hamas, the court held:

> The Boims need not show that the defendants knew about the attack that killed David Boim, or that they committed any specific acts in furtherance of that attack; rather, the Boims need only show that the defendants were involved in an agreement to accomplish an unlawful act and that the attack that killed David Boim was a reasonably foreseeable consequence of the conspiracy.

Boim II, 2004 WL 2554446 at *7.  Moreover, the court explained that "the Boims [would not] required to provide direct evidence of an agreement between the parties; '[c]ircumstantial

evidence may provide adequate proof of conspiracy." Id.  The Boim II court thus made clear that defendants who knowingly and intentionally provide *any* assistance to terrorist groups may be held liable for all of the terrorist acts the group commits.

The court in Boim II also considered, and rejected, another argument made by many of the defendants in this proceeding - that defendants cannot be liable for material support they provided years before the attack in question took place.  In Boim II, defendant Mohammed Salah argued that he was entitled to summary judgment because plaintiffs had not demonstrated that he provided any support after 1993, while David Boim was not killed until 1996. The Boim II court rejected this argument and, indeed, found it to be of "no moment" that Salah was actually was in prison in Israel when David Boim was murdered.  The court reiterated:

> The Seventh Circuit did not say that, to impose liability under §
> 2333, the Boims have to link.., any of the.., defendants specifically
> to the attack that killed David Boim; rather, the court held that, to
> impose liability for aiding and abetting - that is, providing material
> support to - a terrorist organization, the Boims need only show that
> the defendants knew of Hamas' illegal activities, that they desired
> to help those activities succeed, and that they engaged in some act
> of helping.

Id. at *36.  Because there was no factual dispute about any of those elements, the court granted summary judgment to plaintiffs even though none of Salah's "act[s] of helping" took place after 1993.  Moreover, the court noted, under principles of civil conspiracy, Salah could be liable for acts committed in furtherance of the conspiracy even if the acts were committed after he had ceased to be an active participant. Id.

Boim II is also significant in that the court imposed liability for assistance provided to Hamas indirectly, through intermediaries.  Although one defendant, a purported "charity" called the Holy Land Foundation for Relief and Development ("HLF"), was found to have provided material support directly to Hamas, others, such as the Islamic Association for Palestine ("IAP") and the American Muslim Society ("AMS"), were found have provided support to HLF, with

knowledge that the support would flow through to Hamas.  The district court held "[a]lthough these fundraising and financing activities relate to HLF, and not Hamas, taken in the context of the findings made.., about HLF's established link to Hamas, *this is strong evidence that IAP was supporting Hamas ....*"  Boim II, 2004 WL 2554446 at *23 (emphasis added).[6]

Finally, the evidence described in the Boim II decision demonstrates that transactions that appear on their face to be innocuous - including a stipend paid to one defendant purportedly for his voluntary assistance in a project to translate the Quran, *see* 2004 WL 2554446 at *40-42, and a "loan" made purportedly to enable a charity to purchase real estate, *see id.* at *43-44 - may, with further discovery, be revealed to be sham transactions by which material support to terrorism is concealed.[7]

When read as a whole, and in light of the foregoing standards, the Federal Plaintiffs' FAC plainly and adequately states claims against IICG under the ATA, pursuant to aiding and abetting and conspiracy theories.  At the threshold, the FAC alleges that IICG has "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons."  FAC ¶ 66.  Further, the FAC alleges that the Attack "was a direct, intended and foreseeable product of a larger conspiracy among the defendants, to commit acts of international terrorism against the United States, its nationals and allies."  FAC ¶ 72.  Describing the conspiracy, the FAC states that it "included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties."  FAC ¶ 73.  The FAC also

---

[6]     Defendants before this Court have similarly argued that support they provided to al Qaeda through intermediaries such as "charities" cannot subject them to liability. The Boim decision makes clear, however, that if the purported "charities" had established links to al Qaida, the Court may infer that those who supported the "charities" were supporting al Qaida.

[7]     It should be noted that the district court's decision in Boim II is a summary judgment ruling, with a fully developed factual record. In connection with the motions to dismiss filed by the various defendants in this MDL proceeding, plaintiffs cannot, of course, be held to the same evidentiary standard that plaintiffs in Boim II were able to meet. Nor do plaintiffs contend that they are entitled to judgment at this time. But Boim II demonstrates the factual scenarios that, when fully developed after discovery, may give rise to liability under the ATA. Only if there can be *no* such factual scenarios that could be proved consistent with the allegation in plaintiffs' complaints in these cases may plaintiffs be denied the opportunity to take discovery and prove their case. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

sets forth the consequences of IICG's participation, in that "[a]bsent the material support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack." FAC ¶ 74.

Read collectively, the forgoing allegations of the FAC unambiguously allege that IICG knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the Attack was a direct, intended and foreseeable product of that larger conspiracy. Moreover, the FAC describes in reasonable detail, the role that IICG played in al Qaida's conspiracy to commit terrorist attacks against the United States. These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

> **2.     Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Based Upon IICG's Criminal Violations**

The Federal Plaintiffs have also adequately pled claims against IICG under the ATA based upon IICG's violations of the ATA's criminal standards. The <u>Boim I</u> court concluded that the ATA's criminal provisions are a clear indication of Congress' intent to deem financial support of a terrorist organization to be itself an act of international terrorism. <u>Boim</u>, 291 F.3d at 1015.

The Federal Plaintiffs have alleged that IICG participated in acts giving rise to liability under the ATA. Specifically, the Federal Plaintiffs have alleged that IICG was an active member of a network established to support terrorists, including al Qaida. <u>See</u> *supra* part II. Death and destruction in the United States was the well-publicized aim of al Qaida and its terrorist network. As is alleged in the FAC, IICG was a part of a complex banking system through which extensive funding and support were provided to the al Qaida terrorist network. In light of these allegations,

the Federal Plaintiffs have stated a cause of action against IICG pursuant to the criminal

provisions of the ATA.[8]

> ### G.   The Federal Plaintiffs Have Sufficiently Pled Claims Against IICG for Conspiracy and Aiding and Abetting

Defendant IICG further argues that the Federal Plaintiffs have failed to plead facts or

circumstances to establish its participation in a civil conspiracy or to establish a claim for aiding

and abetting.  For the reasons stated in relation to the discussion of the Federal Plaintiffs' ATA

claim, see Part F, *supra*, the Federal Plaintiffs respectfully submit that the FAC and RICO

Statement adequately allege claims under both theories of concerted action liability.

> ### H.   The Complaint States Valid Claims For Trespass, Wrongful Death, Survival, Assault and Battery, Intentional Infliction of Emotional Distress, Negligence and Punitive Damages

Defendant IICG further challenges the Federal Plaintiffs' claims under New York

common law for trespass, wrongful death, survival, assault and battery, intentional infliction of

emotional distress, negligence, and punitive damages.[9]

Under New York law, trespass is the "intentional invasion of another's property."

Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996) (*citing* Ivancic v. Olmstead, 488 N.E.2d

72 (N.Y.1985), *cert. denied*, 476 U.S. 1117 (1986)).  "To be liable, the trespasser 'need not

intend or expect the damaging consequences of his intrusion[;]' rather, he need only 'intend the

act which amounts to or produces the unlawful invasion.'" Phillips v. Sun Oil Co., 307 N.Y. 328,

331 (N.Y. 1954).  As is alleged in the FAC, IICG assisted and encouraged those who

intentionally entered the World Trade Center property to perpetrate the Attack, knowing that the

---

[8]     Defendant IICG also challenges the Federal Plaintiffs' claim under the Torture Victim Protection Act ("TVPA").  After further review, the Federal Plaintiffs find that the TVPA is not a viable cause of action against IICG.

[9]     Given the number of lawsuits filed as a result of the September 11th Attack, and the consequent possibility that the Federal Insurance case could be transferred to a jurisdiction other than New York, the FAC sets forth several claims in separate counts, including punitive damages.  To the extent that these counts are not recognized as separate or independent theories under New York or federal common law, these counts should be liberally construed to modify and/or supplement other counts of the FAC.

Attack constituted an intrusion.  Under New York caselaw, such allegations support a claim for trespass.  Wantanabe Realty Corp. v. City of New York, 01-CIV-10137 (LAK), 2003 U.S. Dist. LEXIS 21602, at * 16-17 n.31 (S.D. N.Y., 2003) (citing Pittman by Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)).  The Federal Plaintiffs have therefore sufficiently alleged a trespass claim against IICG.

New York law provides that a personal representative of a decedent may maintain a wrongful death action provided the defendant "would have been liable to the decedent by reason of such wrongful conduct if death had not ensued."  LaMarca v. United States, 31 F. Supp. 2d 110, 124 (E.D. N.Y. 1998) (citing **N.Y. Est. Powers & Trusts Law** § 5-4.1).  As is alleged in the FAC, IICG is liable to such decedents because it knowingly provided material support to the terrorists who deliberately caused their death.  It is well established that the knowing provision of material support for homicide gives rise to liability for the resulting death.  See Halberstam, 705 F.2d. at 483-84 (reviewing case law from a number of jurisdictions, citing the Restatement (Second) of Torts § 876(b) cmt. d, and concluding that five factors should be taken into consideration when considering whether the defendant offered enough assistance for liability: the nature of the act encouraged; the amount [and kind] of assistance given; the defendant's absence or presence at the time of the tort; his relation to the tortious actor; and the defendant's state of mind).  In general, New York recognizes that those who aid and abet tortious conduct are jointly and severally liable with other participants, regardless of the degree of their participation or culpability in the overall scheme.  Valdan Sportswear v. Montgomery Ward & Co., 591 F. Supp. 1188, 1191 (S.D. N.Y. 1984).  The Federal Plaintiffs have thus sufficiently alleged the wrongful death claim.

In addition, New York recognizes survival actions "for injury to person or property . . . despite death of person in whose favor or against whom cause of action existed."  **N.Y. Est.**

**Powers & Trusts Law** § 11-3.2.  As is alleged in the FAC, IICG knowingly provided material support to the terrorists who carried out the Attack.  As is noted above, it is well established that the knowing provision of material support for tortious acts gives rise to liability for the resulting harm.  The Federal Plaintiffs thus have sufficiently alleged the elements of a survival claim for the injuries to persons and property resulting from the Attack.[10]

To sustain a claim for assault under New York law, there must be physical contact placing an individual in imminent apprehension of harmful contact.  Bastein v. Sotto, 749 N.Y.S.2d 538, 539 (N.Y. App. Div. 2002).  A battery, under New York law, consists of an intentional, offensive, wrongful bodily contact.  Goff v. Clark, 755 N.Y.S.2d 493, 495 (N.Y.App. Div. 2003).  It is beyond dispute that the Attack involved both physical contact placing individuals in imminent apprehension of harmful contact and also intentional offensive, wrongful bodily contact.  As is alleged in the FAC, IICG knowingly provided material support to the terrorists who carried out the Attack.  It is well established that the knowing provision of material support for tortious acts gives rise to liability for the resulting harm.  Thus, the Federal Plaintiffs have sufficiently alleged IICG's liability under a theory of assault and battery for the injuries to persons resulting from the Attack.

IICG further claims that the Federal Plaintiffs' causes of actions for assault and battery and intentional infliction of emotional distress are barred by New York's one-year statute of limitations.  Pursuant to relevant federal statutes, Federal Plaintiffs may simultaneously pursue claims under state common law and federal common law.  As to the federal common law claims, state statutes of limitations are inapplicable.  See Jones v. R.R. Donnelly & Sons Co., 124 S. Ct. 1836 (2004).  See also Louisiana Land & Exploration Co. v. Unocal Corp., 863 F. Supp. 306,

---

[10]     Defendant IICG's reliance on the holding in Lichtenstein v. State, 712 N.E.2d 1218, 1219 (N.Y. Ct. App. 1999), is misplaced.  See Def.'s Br. at 21, n.11. The requirements for commencing a survival claim, as described in Lichtenstein, apply only to those cases where an action is contemplated against the State of New York.  Federal Plaintiffs have brought their survival claim against defendants for their participation in a massive conspiracy, spearheaded by al Qaida, to commit acts of international terrorism against the United States.  The filing requirements in Lichtenstein are therefore inapplicable in the instant case.

309 (E.D. La. 1994) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).  Moreover, all of Federal Plaintiffs' claims arise from IICG's participation in the conspiracy to conduct terrorist attacks against the United States; a conspiracy designed to hide the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until the Federal Plaintiffs reasonably should have become aware of IICG's involvement within the conspiracy.  Once IICG's involvement was discovered, the Federal Plaintiffs brought this claim against IICG. Given this fact, equitable principles require that the statute of limitations be tolled.  See Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").

To state a claim under New York law for intentional infliction of emotional distress, the Federal Plaintiffs must allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury, and (iv) severe emotional distress."  Brewer v. Brewer, 34 Fed. Appx. 28, 30 (2d Cir. 2002) (citing Howell v. New York Post Co., Inc., 612 N.E.2d 699, 702 (N.Y. 1993)).  To state a claim for negligent infliction of emotional distress, the Federal Plaintiffs must allege emotional distress caused by "defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety."  Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (citing Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996).  IICG argues that the Complaint does not allege that it intentionally engaged in extreme, intentional, or recklessly outrageous conduct that caused severe emotional distress.  No person reasonably can contend that the Attack was not outrageous, extreme and intentional.  Under notice pleading, the Federal Plaintiffs have stated a claim for intentional or negligent infliction of emotional distress.

IICG also contends that it cannot be liable under a theory of negligence because the Federal Plaintiffs do not allege or identify a duty owed by IICG to the Plaintiffs.  As is alleged in the FAC, IICG *knowingly* provided material support and resources to the terrorists who carried out the Attack.  The idea that an individual has no duty to avoid committing acts of murder or intentional destruction of another's property is almost incomprehensible.  As a general principle of tort law, every individual has a duty to exercise reasonable care to avoid physical harm to others' person and property.  See **Restatement (Second) of Torts** § 302.  Without a doubt, IICG had a duty to recognize that its funds were being used to finance killings and destruction of property.  IICG further offers the general proposition that "financial institutions owe no duty to non-customers to prevent wrongful acts of a bank customer."  See Def.'s Br. at 24.  To support this general, but irrelevant, proposition, IICG cites to several cases involving bank fraud.  Id. IICG has wholly misread the Complaint.  Nowhere in the Complaint is there an allegation that IICG defrauded the Federal Plaintiffs.  To the contrary, the Federal Plaintiffs have alleged that IICG acted as an integral component of al Qaida's financial and logistical infrastructure by knowingly providing critical financial and logistical support to al Qaida for a period of many years, and by facilitating DMI in their material sponsorship of al Qaida.  (FAC ¶¶ 66, 307-311). The Federal Plaintiffs' FAC does not assert a fraud claim, and accordingly, caselaw to support the proposition that a bank has no liability to a non–customer in a fraud claim is of no moment in this litigation.  There can be no question that the violations of law described in the Federal Plaintiffs' FAC state a claim sounding in both negligence and gross negligence.[11]

IICG also claims that the Federal Plaintiffs are not entitled to punitive damages.  Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and

---

[11]     Without question, the knowing provision of financial services to a terrorist organization, and the failure to implement procedures to prevent money laundering in support of terrorism, is inconsistent with international banking laws and standards. See The Forty Recommendations of the Financial Action Task Force on Money Laundering (1996), http://www.fatf-gafi.org/40Recs-1996_en.htm.  Given the widely recognized obligation of banking institutions to engage in good faith efforts to prevent the financing of terrorism, IICG unquestionably owed a duty of care to plaintiffs.

others like him from similar conduct in the future." <u>Flatow v. Islamic Republic of Iran</u>, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Federal Plaintiffs prove their allegations that IICG knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, IICG's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

## V.    **CONCLUSION**

For the reasons stated above, the Federal Plaintiffs respectfully request that the Motion to Dismiss filed by Islamic Investment Company of the Gulf (Sharjah) be denied in all respects, with prejudice.

Dated:  December 7, 2004                     Respectfully submitted,

                                                             COZEN O'CONNOR


                                                             By:    _____/s/_____
                                                                       STEPHEN A. COZEN, ESQUIRE
                                                                       ELLIOTT R. FELDMAN, ESQUIRE
                                                                       SEAN P. CARTER, ESQUIRE
                                                                       MARK T. MULLEN, ESQUIRE
                                                                       1900 Market Street
                                                                       Philadelphia, PA  19103
                                                                       Telephone:     (215) 665-2000
                                                                       Facsimile:      (215) 665-2013

                                                             *Attorneys for the Federal Plaintiffs*