UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**Applicable to Prince Mohamed al Faisal Al Saud** |

*This document relates to :*      Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO PRINCE MOHAMED AL FAISAL AL SAUD

Based on information currently available, plaintiffs submit this RICO Statement with respect to their claims against defendant Prince Mohamed al Faisal Al Saud ("Prince Faisal"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.      This RICO Statement pertains to defendant Prince Faisal. For almost twenty years, DMI Administrative Services SA and DMI Trust (collectively "DMI") were operated under the chairmanship of Prince Faisal. Additionally, Prince Faisal has chaired Faisal Islamic Bank (Sudan) and has been involved in its operation and management. DMI and Faisal Islamic Bank (Sudan) have knowingly and intentionally lent repeated material support to Al Qaeda through *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings. Faisal Islamic Bank (Sudan) provided financial and bank account services to several Al Qaeda operatives. For instance, a former finance manager for Al Qaeda testified in a United States trial that Al Qaeda maintained accounts in Faisal Islamic Bank (Sudan). DMI's *Zakat* accounts have been used to support Al Qaeda.

Prior to September 11, 2001 Prince Faisal was on notice that Al Qaeda: (A) was soliciting and raising funds in and from Saudi Arabia through purportedly legitimate businesses and financial entities; and (B) intended to use the material support and substantial assistance it acquired to kill Americans and attack American interests around the world. Despite the known and foreseeable risks posed to the United States citizens and property by Al Qaeda, Prince Faisal acted with the knowledge and intent that the flow of funds through and use of DMI and Faisal Islamic Bank (Sudan) would continue unabated. To that end, Prince Faisal conducted or participated, directly or indirectly, in the affairs of the RICO Enterprises Faisal Islamic Bank (Sudan) and DMI (sometimes referred to herein as the "Enterprises") through a pattern of racketeering activity that, among other things, facilitated, materially supported and substantially assisted Al Qaeda.

130778 v2

Prince Faisal's misconduct includes conducting or participating in, directly or indirectly, the affairs of DMI and Faisal Islamic Bank (Sudan) through a pattern of racketeering activity by, *inter alia*, authorizing, ratifying, supervising, controlling, overseeing and/or directing these enterprises in knowingly and intentionally providing financial services to Al Qaeda, and in servicing Al Qaeda bank accounts and other accounts used to fund and support Al Qaeda. This uninterrupted financial and material support and substantial assistance enabled Al Qaeda to plan, orchestrate, and carry out the September 11th attack. The basis of Prince Faisal's liability is 18 U.S.C. § 1962(c).

3.      All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.      The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of their PATH train stations.

130778 v2

5.      (a)      **List Of Predicate Acts And Specific Statutes Violated**

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B) <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|

(b)      Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts

Prince Faisal was Chairman of DMI from 1983 through at least 2002.  Prince Faisal was also chairman of Faisal Islamic Bank (Sudan) for much of the same time period.  As Chairman of DMI and Faisal Islamic Bank (Sudan) Enterprises, Prince Faisal conducted or participated in, directly or indirectly, the operation and management of Faisal Islamic Bank (Sudan) and DMI through a pattern of racketeering activity by, *inter alia,* authorizing, ratifying, supervising, controlling, overseeing and/or directing these enterprises in knowingly and intentionally providing financial services to Al Qaeda, and in servicing Al Qaeda bank accounts and other accounts used to fund and support Al Qaeda.  This uninterrupted financial and material support and substantial assistance through DMI and Faisal Islamic Bank (Sudan) enabled Al Qaeda to plan, orchestrate, and carry out the September 11th attack.  The basis of Prince Faisal's liability is 18 U.S.C. § 1962(c).

(c)      Not applicable.

(d)      No.

(e)      No.

(f)      The predicate acts of providing material support for terrorism as conducted by Prince Faisal form a pattern of racketeering in that they are repeated and continuous.

(g)      The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because Prince Faisal's knowing and intentional provision of financial services to Al Qaeda, and service of Al Qaeda bank accounts and other accounts used to fund and support Al Qaeda through DMI and Faisal Islamic Bank (Sudan) materially supported and assisted Al Qaeda, which assistance culminated in the September 11th attack.

6.      (a)      Faisal Islamic Bank (Sudan) is the "Enterprise" for purposes of the RICO claim against Prince Faisal in Count Five of the First Amended Complaint .  In addition, DMI also is an "Enterprise" for purposes of the RICO claim against Prince Faisal in Count Five of the First Amended Complaint.

(b)      According to its 2003 Annual Report, DMI was founded in 1981 and has a geographic structure that extends over four continents and includes well integrated regional subsidiaries.  DMI has a Board of Supervisors that manages the business and an administrative body that provides assistance to the Board of Supervisors and under direction to its subsidiaries, in the areas of legal and financial control, audit and risk management and information technology.  DMI engages in Islamic banking, Islamic investment and Islamic insurance.  One of DMI's purposes is to maintain and promote Islamic financial institutions.  Separate and apart

130778 v2

from this purpose, DMI knowingly and intentionally lent repeated material support and assistance to Al Qaeda. For instance, DMI's *Zakat* accounts have been used to support Al Qaeda.

Faisal Islamic Bank (Sudan) holds itself out as a legitimate international banking and financial institution. Faisal Islamic Bank (Sudan) is listed on the Khartoum Stock Exchange and engages in banking sector activities. Faisal Islamic Bank (Sudan) is a subsidiary of Islamic Investment Company of the Gulf (Bahrain) EC. Additionally, Faisal Islamic Bank (Sudan) is a major shareholder of Al Shamal Bank. Separate and apart from this purpose, Faisal Islamic Bank (Sudan) knowingly and intentionally lent repeated material support and assistance to Al Qaeda. For instance, Faisal Islamic Bank (Sudan) provided financial and bank account services to Al Qaeda and its operatives.

(c)     Prince Faisal was employed by or associated himself with the Faisal Islamic Bank (Sudan) and DMI Enterprises. Prince Faisal was Chairman of Faisal Islamic Bank (Sudan) and was Chairman of DMI until at least 2002.

(d)     Prince Faisal is associated with the DMI Enterprise. Prince Faisal is associated with the Faisal Islamic Bank (Sudan) Enterprise.

(e)     Prince Faisal is an entity that is separate and distinct from the Enterprises, Faisal Islamic Bank (Sudan) and DMI, but Prince Faisal associated with the Enterprises.

(f)     Not applicable.

7.     Enterprises Faisal Islamic Bank (Sudan) and DMI are highly organized and exhibit a definitive structure, separate and apart from the material support and assistance they provide to Al Qaeda under Prince Faisal's operation and management. DMI is involved in various aspects of the financial services industry including banking, investment, and insurance services. Faisal Islamic Bank (Sudan) engages in banking sector activities. DMI and Faisal Islamic Bank (Sudan) hold themselves out as legitimate international banking and financial institutions. The pattern of racketeering activity in which Prince Faisal engaged is separate from the existence of Faisal Islamic Bank (Sudan) and DMI.

8.     Through Prince Faisal's operation and management, DMI and Faisal Islamic Bank (Sudan) provide material support and assistance to Al Qaeda. Prince Faisal conducted racketeering activity through the banking and financial operations of DMI and Faisal Islamic Bank (Sudan), including provision of financial services to Al Qaeda members, maintenance and service of Al Qaeda bank accounts and accounts used to fund and support Al Qaeda. The usual and daily activities of DMI and Faisal Islamic differ from the daily activities of the Enterprises. The usual and daily activities of the Enterprises include legitimate banking and finance activities.

9.     Upon information and belief, Faisal Islamic Bank (Sudan) and DMI Enterprises benefit from the alleged pattern of racketeering activity, subject to the availability of future discovery.

10.     The Enterprises' activities in support of terrorism affect interstate commerce in that the Enterprises conducted and/or transacted business in the United States and elsewhere and possessed, used, or transferred assets in the United States and elsewhere. Moreover, the Enterprises' activities affect interstate commerce as illustrated by the September 11th attack,

130778 v2

which damaged the United States economy when four commercial airlines were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11.     Not applicable.

12.     Not applicable.

13.     (a)     Prince Faisal is associated with the DMI Enterprise and the Faisal Islamic Bank (Sudan) Enterprise. Additionally, individuals whose identities are unknown are employed by or associated with the Enterprises.

        (b)     The same entity is not both the liable "person" and the "enterprise" under 1962(c). Faisal Islamic Bank (Sudan) and DMI are the RICO Enterprises. Prince Faisal is a separate "person" within the meaning of RICO.

14.     Not applicable.

15.     The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

        The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16.     Prince Faisal conducted or participated in, directly or indirectly, the affairs of Faisal Islamic Bank (Sudan) and DMI through a pattern of racketeering activity by, *inter alia*, authorizing, ratifying, supervising, controlling, overseeing and/or directing these enterprises in knowingly and intentionally providing financial services to Al Qaeda, and in servicing Al Qaeda bank accounts and other accounts used to fund and support Al Qaeda. This uninterrupted financial and material support of terrorism as described herein and in the First Amended Complaint, enabled Al Qaeda to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of Prince Faisal proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of Prince Faisal.

17.     Prince Faisal is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18.     Federal Causes of Action

| | |
|---|---|
| **Count Two** | Anti-Terrorism Act,<br>18 U.S.C. §2331 , 2333<br>18 U.S.C §2333<br>18 U.S.C. §2339A<br>18 U.S.C. §2339B<br>18 U.S.C. §2339C |
| **Count Four** | Civil Rico,<br>18 U.S.C. §1962 |
| **Count Nine** | Violations of International Law, *see* 28 U.S.C.§1331 |

19.     Pendant State Claims

| | |
|---|---|
| **Count One** | Trespass |
| **Count Ten** | Conspiracy |
| **Count Eleven** | Aiding and Abetting |
| **Count Twelve** | Punitive Damages |

130778 v2

| Count Thirteen | Contribution and Indemnity |
|---|---|
|  |  |

**20.**     Not applicable

Dated: December 9, 2004             Respectfully submitted

By: _____
  Jonathan M. Goodman (JG 3031)
  Kenneth L. Adams
  Christopher T. Leonardo
  Stacey A. Saiontz
  DICKSTEIN SHAPIRO MORIN
    & OSHINSKY LLP
  1177 Avenue of the Americas
  New York, New York 10036
  (212) 835-1400

  Attorneys for Plaintiffs

130778 v2