**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 |
| This document relates to:<br><br>KATHLEEN ASHTON, et al,<br>                         Plaintiffs<br><br>                    v.<br><br>AL-QAEDA ISLAMIC ARMY, et al,<br>                         Defendants |

**02 CV 6977**

**MEMORANDUM OF DEFENDANT OMAR ABDULLAH KAMEL**
**IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF**
**SUBJECT MATTER AND PERSONAL JURISDICTION AND FOR FAILURE TO**
**STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

**MARTIN F. MCMAHON & ASSOCIATES**

By: _____/s/_____
Martin F. McMahon, Esq., M.M., 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, DC 20036
(202) 862-4343

*Attorneys for Defendant Omar Abdullah Kamel*

Date: December 6, 2004

**TABLE OF CONTENTS**

FACTUAL BACKGROUND……………………………………………………………2-3

LEGAL ANALYSIS…………………………………………………………………...3-18

     A.  The Court Must Dismiss the Complaint for Lack of
        Personal Jurisdiction Over Omar Abdullah Kamel……………………………..3-8

         1.  Applicable Legal Standard…………………………………………………3-5

         2.  Omar Abdullah Kamel Lacks Minimum Contacts
            with the United States……………………………………………………5-6

         3.  Allegations of Aiding and Abetting are Insufficient to
            Exercise Personal Jurisdiction over Omar Abdullah Kamel………………6-7

         4.  Use of the "Effect Test" will not Result in the Proper
            Exercise of Personal Jurisdiction over Omar Abdullah Kamel……………7-8

     B.  The Court Must Dismiss the Complaint for Lack of Subject
        Matter Jurisdiction Over Omar Abdullah Kamel……………………………..8-14

     C.  The Court Must Dismiss the Complaint for Failure to State a
        Claim Against Omar Abdullah Kamel…………………………………………14-18

         1.  Applicable Legal Standard…………………………………………………14-15

         2.  Some of Plaintiff's Causes of Action Must be Dismissed
            against Omar Abdullah Kamel because that is the Law
            of the Case……………………………………………………………..15-16

         3.  Plaintiffs' Fail to Provide Omar Abdullah Kamel with Notice
            of the Claims against Him……………………………………………..16-18

CONCLUSION………………………………………………………………………18

## TABLE OF AUTHORITIES

**Cases**

*Atuahene v. City of Harford*, 10 Fed.Appx. 33 (2d Cir. 2001)…………………………………..16

*Boim v. Quranic Literacy Institute & H.L.F.*, 291 F.3d 1000 (7th. Cir. 2002)………………10, 17

*Briscoe v. LaHue*, 663 F.2d 713 (7th Cir. 1981)………………………………….………………...15

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)…………………….………………………...15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)……………………………..……………4

*Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp.2d 86…………………………….5, 16, 17

*Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994)………..…….5

*Calder v. Jones*, 465 U.S. 783 (1984)…………………………………………………………7

*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d. Cir.1989)……………....8, 12

*Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364 (2d Cir. 2000)………………...8

*DiPonzio v. Riordan*, 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377 (1997)…………………………13

*Estate of Ungar v. The Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001)…………………5, 6

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp.2d 369 (S.D.N. Y. 2002)………………………………………………………6

*Galeri Gmurzynska v. Hutton*, 257 F. Supp.2d 621 (S.D.N.Y. 2003)……………...………6, 7

*Gauvin v. Trembatore*, 682 F. Supp. 1067………………………………………………16

*Ge v. Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000)………………………………………...15

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, (D.D.C. 2001)…….9

*Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, (1984)…………………4, 5

*Hartford Fire Insurance Co. v. California*, 509 U.S. 764, (1993)………………………….9

*Hishon v. King & Spalding*, 467 U.S. 69, (1984)………………………………………..14

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, (1992)…………….………11

*Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, (S.D.N.Y. 1987)………………………………8

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, (2d Cir. 2003)…………...………....3

*International Shoe Co. v. Washington*, 326 U.S. 310, (1945)…………………..………………..4

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, (2d Cir. 1999)…………………..………………..4

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271, (D.C. Cir. 1994)…………………….....15

*Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, (2d Cir. 1972)……..…….8

*Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, (2d Cir. 1975)……………………….…6

*Metropolitan Life Ins. Co. v. Robertson CECO Corp.*, 84 F.3d 560, (2d Cir. 1996)…..…..….4, 5

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779, (D.C. Cir. 1983)…….……………………3

*North South Finance Corp. v. Al- Turki*, 100 F.3d 1046, (2d. Cir. 1996)………………………12

*Papasan v. Allain*, 478 U.S. 265, (1986)……………………….……………………………15

*Republic of Argentina v. Weltover*, 504 U.S. 607, (1992)…………...…………………….....11

*Schenker v. Assicurazioni Genereali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002)……………………………………………………………………….7

*S.E.C. v. Vision Communications, Inc.*, 74 F.3d 287, (D.C. Cir. 1996)…………………….....5

*Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, (D.C. Cir. 2001)…………...……………………………………………….3, 7

*Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp.2d 388 (SDNY 2002)…………………3

*Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409 (1986)…………………..………3, 15

*TIFA, Ltd. v. Republic of Ghana*, C.A. No. 99-1513, 1991 WL 179098, at *8 (D.D.C. Aug. 27, 1991)……………………………………………………………………………………….4

*Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378, (9th. Cir. 1984)………..……13, 14

*United States v. Philip Morris Inc.*, 116 F. Supp.2d 116,  (D.D.C. 2000)……………..……….3, 4

**Federal Rules and Statutes**

Fed.R.Civ.P. 8(a)(2)…………………………………………………………………16

Fed.R.Civ.P. 12(b)(1)…………………………………………………………………2

Fed.R.Civ.P. 12(b)(2)…………………………………………………………………2

Fed.R.Civ.P. 12(b)(6)………………………………………………………………2, 14

18 U.S.C. 2333 (a)……………………………………………………………………10

**Secondary Authority**

Restatement (Third) of Foreign Relations ("Restatement"), section 403……………………..9, 10

Restatement (Third) of Foreign Relations ("Restatement"), section 401(1)(c)………………..12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | **MDL No. 1570 (RCC)** |
| This document relates to: | |
| KATHLEEN ASHTON, et al, | 02 CV 6977 |
| v. | |
| AL-QAEDA ISLAMIC ARMY, et al. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT OMAR ABDULLAH KAMEL**
**MOTION TO DISMISS THE FIFTH AMENDED COMPLAINT**

Defendant Omar Abdullah Kamel, through undersigned counsel, submits this
Memorandum of Law in support of its motion to dismiss Plaintiffs' Fifth Amended Complaint
("Compl."), pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(1) and 12(b)(6) for lack of personal
jurisdiction, lack of subject matter jurisdiction and failure to state a claim upon which relief can
be granted.

**I.      FACTUAL BACKGROUND**

Omar Abdullah Kamel is a citizen of Saudi Arabia who does not reside or own property
in the United States.  (See Affidavit of Omar Abdullah Kamel dated November 30, 2004
("Kamel Aff.") ¶ 3)).  Mr. Kamel also does not transact business with any entities or persons
located in the United States.  (Kamel Aff. ¶ 2).  Omar Kamel has never supported Al Qaeda or
international terrorism in any way, nor does the complaint allege he has ever done so.  The only
allegation specific to Omar Abdullah Kamel is that in April of 1984 the Al Shamal Islamic Bank
issued shares to him.  (Compl. ¶ 53).  It is clear from this allegation that any investment Mr.
Kamel made in the Al Shamal bank must have taken place prior to 1984.  Nowhere else in the

2

lawsuit is Omar Abdullah Kamel mentioned, and nowhere, including the aforementioned paragraph, is he ever alleged to have taken action to support international terrorism in any form.

## II.   LEGAL ANALYSIS

### A.   The Court Must Dismiss the Complaint for Lack of Personal Jurisdiction Over Omar Abdullah Kamel

The Court must dismiss plaintiffs' Complaint against Mr. Kamel for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2).  Plaintiffs have utterly failed to show sufficient minimum contacts, connection, or nexus between Omar Abdullah Kamel and the United States to establish personal jurisdiction over it as a defendant in this lawsuit.  Accordingly, because this Court lacks personal jurisdiction over Omar Abdullah Kamel, the Complaint against him must be dismissed.

### 1.   Applicable Legal Standard

Pursuant to Rule 12(b)(2), the plaintiff bears the burden of making out a *prima facie* case to establish personal jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  Although at this stage of the proceedings, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor*," Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp.2d 388, 397 (SDNY 2002), in order to survive a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff must provide facts sufficient to establish minimum contacts between the defendants and the forum.  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  "A plaintiff makes such a showing by alleging specific acts connecting the defendant with the forum; mere allegations of a conspiracy will not suffice."  *United States v. Philip Morris Inc.*, 116 F. Supp.2d 116, 121 (D.D.C. 2000) (*citing Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).  In order to meet this burden, a plaintiff must demonstrate "that the

3

defendants' connections with the forum suffice to justify the exercise of personal jurisdiction, however, 'the Court is no longer bound to treat all of plaintiff's allegations as true.'" *United States v. Philip Morris Inc.*, 116 F. Supp.2d at 120 n. 4 (*quoting TIFA, Ltd. v. Republic of Ghana*, C.A. No. 99-1513, 1991 WL 179098, at *8 (D.D.C. Aug. 27, 1991) (citation omitted)).

In *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), the U.S. Supreme Court held that a court may exercise personal jurisdiction over a nonresident defendant only if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999).  Moreover, this "minimum contacts" analysis is performed in two distinct contexts:  general jurisdiction and specific jurisdiction.  *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *see also Metropolitan Life Ins. Co. v. Robertson CECO Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  General jurisdiction over a defendant may be exercised to resolve claims that do not arise from the defendant's contacts with the forum state if the defendant has "continuous and systematic" contacts with the forum state.  *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. at 415-16.  Alternatively, a court may exercise specific jurisdiction over the nonresident defendant if the nonresident defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In their Complaint, plaintiffs assert a claim under the Antiterrorism Act ("ATA") 18 U.S.C. § 2334(a), among others.  In *Burnett*, Judge Robertson stated that "[b]ecause the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes . . . 'is whether the defendant has had minimum contacts with the United

States.'" *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp.2d 86, 95-6 *citing Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted).  Therefore, the appropriate question is whether Omar Abdullah Kamel has sufficient "minimum contacts" with the *United States* for the Court to exercise personal jurisdiction over it. *See S.E.C. v. Vision Communications, Inc.*, 74 F.3d 287, 289-90 (D.C. Cir. 1996) (emphasis added).

As demonstrated below, because Omar Abdullah Kamel has absolutely *no* contacts with the United States, the Complaint must be dismissed against it for lack of personal jurisdiction.

**2.      Omar Abdullah Kamel Lacks Minimum Contacts with the United States**

The Court must dismiss plaintiffs' lawsuit against Omar Abdullah Kamel because plaintiffs have utterly failed to plead any nexus between it and the United States.  Not only have plaintiffs failed to plead minimum contacts, plaintiffs have failed to plead *any* contacts whatsoever.

Nothing in Plaintiffs' Complaint establishes "continuous and systematic general business contacts" between Omar Abdullah Kamel and the United States.  *See Metropolitan Life Ins. Co.*, 84 F.3d at 568.  In fact, the only allegation concerning Omar Abdullah Kamel relates to investments that Mr. Kamel is alleged to have made *in a foreign country and prior to 1984.* (Compl. ¶ 53).  Therefore, Plaintiffs have failed to establish general personal jurisdiction over him.  *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 413-15.

Moreover, Omar Abdullah Kamel does not own any property, have any investments, or maintain a bank account located in the United States.  (Kamel Aff. ¶ 3).  This clearly differentiates Mr. Kamel from "defendants PA and PLO" in *Estate of Ungar v. The Palestinian*

*Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001), on which plaintiffs have relied in their opposition to other defendants' motions to dismiss.

**3.      Allegations of Aiding and Abetting are Insufficient to Exercise Personal Jurisdiction over Omar Abdullah Kamel**

Despite Osama Abdullah Kamel's complete lack of contacts with the United States, plaintiffs are expected to allege personal jurisdiction on the basis of conspiracy with other defendants.  While the Second Circuit recognizes conspiracy-based personal jurisdiction, "the bland assertion of a conspiracy or agency is insufficient to establish [such personal] jurisdiction." *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975); *see also Galeri Gmurzynska v. Hutton*, 257 F. Supp.2d 621, 631 (S.D.N.Y. 2003) (holding that conclusory allegations and speculation of conspiracy-based personal jurisdiction will not survive a motion to dismiss for lack of personal jurisdiction).

In order to exercise jurisdiction over a nonresident defendant based on that defendant's co-conspirator's contacts with the forum, a plaintiff must demonstrate:  (a) a *prima facie* case of conspiracy; (b) specific facts justifying the inference that the defendant was a participant in the conspiracy; (c) commission of a tortious act within the forum; and (d) an agency relationship between the nonresident defendant and the tortfeasor acting within the forum.  *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp.2d 369, 394 (S.D.N. Y. 2002).  The complaint is wholly lacking in any allegations that Mr. Kamel even participated in a conspiracy or the alleged criminal enterprise in any way.  In fact, the only allegation about Osama Abdullah Kamel related to an alleged investment made in 1984, *prior to the establishment of Al Qaeda*, making it impossible that the specific allegation against him fits into the alleged conspiracy. (*See* Compl. ¶ 33, 53.)

Since plaintiffs have failed to plead specific acts that connect Omar Abdullah Kamel with the United States, their reliance on bare allegations and legal conclusions of conspiracy applicable to all defendants are insufficient to establish personal jurisdiction over Mr. Kamel. *See Schenker v. Assicurazioni Genereali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788 at *10 (S.D.N.Y. July 15, 2002); *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (failure to make a *prima facie* showing of civil conspiracy defeated attempt to invoke "conspiracy-based jurisdiction").

Although Rule 8 establishes a liberal pleading standard, "mere incantation of the words 'conspiracy' or 'acted in concert with' does not talismanically satisfy the Rule's requirements." *Galeri Gmurzynska*, 257 F. Supp.2d at 631. Accordingly, plaintiffs have utterly failed to allege facts establishing Mr. Kamel's involvement in a conspiracy sufficient to have the Court exercise personal jurisdiction over him and this Court should dismiss the complaint as Omar Abdullah Kamel.

**4.      Use of the "Effect Test" will not Result in the Proper Exercise of Personal Jurisdiction over Omar Abdullah Kamel**

Plaintiffs are also expected to put forth an argument based on the "effects test" enunciated in *Calder v. Jones*, 465 U.S. 783, 790 (1984). This argument must also fail. Under the "effects test," Omar Abdullah Kamel would be subject to personal jurisdiction within the United States only if plaintiffs make a *prima facie* showing that he committed an intentional wrongful act outside the forum directed at an entity or individual inside the forum. *Id.* If Mr. Kamel's actions outside the U.S. caused the September 11, 2001, terrorist attacks in the U.S. and the terrorist attacks were a "direct and foreseeable result" of his conduct and he knew or should have known that its conduct would result in the September 11, 2001, terrorist attacks, Mr. Kamel

would be subject to this Court's jurisdiction under the "effects test." *See Corning Inc. v. Shin Etsu Quartz Prod. Co. Ltd.*, 242 F.3d 364, 364 (2d Cir. 2000).

But Plaintiffs have failed to plead the requisite close causal connection – or any causal connection -- between Omar Abdullah conduct and the September 11 terrorist attacks.  Nor do plaintiffs satisfy the pleading requirements for foreseeability, *i.e.*, that the effect within the forum must occur "as a direct and foreseeable result of the conduct outside the territory. *Corning*, 242 F.3d at 364, citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972).  Finally, plaintiffs offer no allegations that Omar Abdullah Kamel either knew or should have known its conduct would have effects in the U.S.  Plaintiffs allege only that Mr. Kamel made an investment in a Sudanese bank prior to 1984.  (Compl. ¶ 53).  Based on plaintiffs' own allegations, Osama bin Laden and Al Qaeda did not initiate meaningful activities with Sudan until 1991.  (Compl. ¶ 47, 48, 50, 61).  Nowhere do plaintiffs offer any explanation as to how Mr. Kamel's had knowledge that his alleged investment in a foreign bank, made more than *7 years before* Al Qaeda started operating simply in that country, would result in the horrible attacks of Septemeber 11, 2001, *almost 20 years later.*

Because the "effects test" exercise of personal jurisdiction requires heightened pleadings of causation, foreseeability, and knowledge and plaintiffs have not set forth such allegations against Omar Abdullah Kamel, the Complaint must be dismissed against him.  *See Huang v. Sentinel Gov't Sec.*, 657 F. Supp. 485, 489 (S.D.N.Y. 1987) (citation omitted).

**B.  The Court Must Dismiss the Complaint for Lack of Subject Matter Jurisdiction Over Omar Abdullah Kamel**

While the relief requested is the same under the instant Fed.R.Civ.P. 12(b)(2) and (6) motions, the factual allegations at issue are given closer scrutiny under Fed.R.Civ.P. (b)(1), since the motion inherently focuses on the court's power to hear the claims.  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001).  And, the plaintiff bears the burden of proof on the issue of jurisdiction.  *Id.*

The instant 12(b)(1) motion raises the issue as to the extra-territorial reach of the Antiterrorism Act of 1992, 18 U.S.C. section 2333 ["ATA"].  Contrary to the Plaintiffs' view, an unlimited causation chain stretching back to 1983, the Defendant asserts that the power of Congress to prescribe with respect to extraterritorial conduct [even the ATA] is not unlimited.

Justice Scalia, e.g., in *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 813 (1993), noted that "there is a type of 'jurisdiction' relevant to determining the extraterritorial reach of a statute."  He wrote "[i]n sum, the practice of using international law to limit the extraterritorial reach of statutes is firmly established in our jurisprudence." *Id* at 818.

In *Hartford*, the Supreme Court, in Part III of Justice Souter's opinion (509 U.S. 17 794-799), took up the question of whether certain antitrust claims "should have been dismissed as improper applications of the Sherman Act *to foreign conduct*" (emhasis added).  To resolve that question, the Court looked to the Restatement (Third) of Foreign Relations ("Restatement"), and more specifically section 403 thereof.  A five member majority, after considering the factors articulated in section 403, concluded that they "would not counsel against exercising jurisdiction in the circumstances here." *Id.* at 798.

The Court's rational in reaching that conclusion is especially instructive herein, i.e., that the requirements of section 403(2)(a) were satisfied since the majority found that the complaint therein, unlike the *Ashton* Complaint, had alleged a direct effect on U.S. commerce. Defendant

9

Kamel, of course, is not arguing that the complaints fail to allege some effect on American soil; 3,000 American citizens were murdered, a barbaric act that Defendant Kamel has condemned.

What the Defendant does argue, however, is that the *Ashton* allegations do not show that their alleged extraterritorial *activities had an effect on U.S. soil or met the proximate cause and foreseeable effects requirement of either the ATA ["by reason of"] or section 403 (2)(a) of the Restatement.* The Defendants argue that the factors identified in section 403 of the Restatement substantially weigh against the reasonableness of exercising subject matter jurisdiction over the claims made herein against these defendants. And, alternatively, that these same factors weigh against the conclusion that the ATA applies to the factual allegations made against them.

The federal statutes forming the bases for the various claims made herein recognize several of these limitations, e.g., Restatement section 403(2)(a)'s requirement that the alleged extraterritorial activities have a direct, foreseeable effect on the U.S. or its nationals. In providing a civil cause of action under ATA, Congress specifically stated: "Any [U.S.] national injured ...*by reason of an act of international terrorism*... may sue therefore..." (emphasis added) ATA, 18 U.S.C. 2333 (a).

The above "by reason of" language is crucial and is essentially what the parties herein disagree about, with the Plaintiffs taking the position that it means unlimited liability, even for defendants who are merely investors in banks [a/k/a "funnels"]. This language has been extensively examined by the Seventh Circuit Court of Appeals, which construed the language to mean that Congress has prescribed only that *foreign conduct* where the injuries "might have reasonably been anticipated as a natural consequence of the defendant's actions. *Boim v. Quranic Literacy Institute & H.L.F.*, 291 F.3d 1000, 1011-12 (7th. Cir. 2002).

10

The *Boim* court recognized that this "by reason of" language requires a showing of "proximate cause" as well as "foreseeability." *Id*. More importantly, it concluded that the ATA cannot be construed in a manner that would attribute "almost unlimited liability to even remote acts; *it must have meant something else*." (emphasis added) *Id*. at 1020. Yet that is exactly what the Plaintiffs are asking this Court to do in seeking to hold liable herein mere investors in a bank [a/k/a "funnel"].

The *Boim* court examined *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) at length, where the Supreme Court had to determine the reach of the RICO statute's "by reason of" language. The *Holmes* opinion undercuts the Plaintiffs expansive reading of the ATA's "by reason of" language by importing the tort concept of "proximate cause" into the statutory construction analysis. Not surprisingly, the Court also recognized that at common law the concept of "proximate cause" incorporated a requirement of "some *direct relation between the injury asserted and injurious conduct alleged*." (emphasis added) *Id*.

What is clear from the Defendant's viewpoint is that in enacting the ATA civil remedy Congress: (a) certainly had other similar statutory language and case law precedent to look to; and (b) obviously married the statute to the well known Restatement's requirements. Thus, the Plaintiffs herein must allege that their injuries are not only a *direct* consequence of foreign conduct taken by Defendant Kamel, but that the injuries arising out of the 9/11 tragedy are also the *foreseeable consequences of* such foreign conduct.

The Supreme Court has stated that, for jurisdictional purposes, an "effect" on the U.S. is "direct if it follows as an immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover*, 504 U.S. 607, 618 (1992) [construing the "commercial activity" exception under the Foreign Sovereign Immunity Act]. The Second Circuit has addressed the issue of

"direct" effects of foreign-based conduct in the RICO, securities law and antitrust settings.  In *North South Finance Corp. v. Al- Turki*, 100 F.3d 1046, 1050-52 (2d. Cir. 1996), the Second Circuit affirmed dismissal of RICO claims under Fed.R.Civ.P. (12)(b)(1), citing the "effects test," which is regarded as a jurisdictional requirement Id., at 1053, and has been construed to mean that "transactions with only remote and indirect effects in the United States do not qualify as substantial." *Id*., at 1051.

In addressing securities fraud arising out of foreign conduct, U.S. securities laws "may be given extraterritorial reach whenever a predominantly foreign transaction has substantial effects within the United States." *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261-62 (2d. Cir.1989)", cited in *North South Finance Corp.*, 100 F.3d at 1051.  However, "transactions with only remote and indirect effects in the United States do not qualify as substantial." *Id.* at 262, similarly cited.

In *North South Finance Corp.* the Court also addressed the issue of antitrust liability arising out of foreign conduct, to wit:  "It is also settled that antitrust liability may attach to anticompetitive conduct occurring outside the United States, but having consequences here, if the conduct is intended to and actually does have an effect on United States imports or exports which the state reprehends." *Id.* at1052.; *See* Restatement 401(1)(c) ["conduct outside its territory that has or is intended to have substantial effect within its territory"].

The Plaintiffs not only have a problem in showing that Defendant's investment activity dating back to 1983 had a "direct effect" on U.S. soil.  Plaintiffs' claims also fail as a matter of law because their injuries could not have been foreseen by the Defendant when the Defendant made his investments in Islamic banks in 1983.  The foreseeability analysis employed under

Fed.R.Civ.P. 12(b)(1) necessarily implicates the doctrine of "remoteness," which has been addressed by numerous courts.

As one court observed:  "Although virtually every untoward consequence can theoretically be foreseen 'with the wisdom born of the event,' the law draws a line between remote possibilities and those that are reasonably foreseeable because 'no person can be expected to guard against harm from events which are so unlikely to occur that the risk...would commonly be disregarded." *DiPonzio v. Riordan*, 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377,380 (1997). There is also the "related problem" of the "need to analyze the relationship between the risk created by the actor's conduct and the actual occurrence that caused the harm." *Id*.

The actor's conduct complained of herein involves various investments in and start-up of new financial institutions or business in the Middle East, occurring between 1983 and 1991. This "conduct" obviously bears no relationship to the actual occurrence that caused the plaintiffs' harm on September 11th.  Even if the Court makes a giant leap of logic that there is some consequential relationship between this "conduct" and the occurrence of September 11th, it is the kind of "indirect consequence...at most, *a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence*."  (emphasis added) *Di Ponzio*, 89 N.Y.2d at 657; N.Y.S.2d at 381; *See also Timberlane Lumber Co. v. Bank of America*, 749 F.2d 1378,

1385 (9th. Cir. 1984), *cert. den.*, 472 U.S. 1032 )1985) (investment decision to foreclose

on assets in Honduras, which later has effect on plaintiff in the United States *does not*

*meet foreseability requirement for subject matter jurisdiction*).

  Based on all of the above considerations, this Court has ample cause to grant

Defendant Kamel's Fed.R.Civ.P. 12(b)(1) motion for lack of subject matter jurisdiction.

### C. The Court Must Dismiss the Complaint for Failure to State a Claim Against Omar Abdullah Kamel

  Even if the Court ultimately decides to exercise personal jurisdiction over Omar

Abdullah Kamel, the Court must still dismiss plaintiffs' Complaint for failure to state a

claim against him.  Plaintiffs' claims against Mr. Kamel consist solely of an alleged

investment in Sudanese Bank made prior to 1984.   (Compl. ¶ 53).  This investment took

place over 5 years *before* it is claimed that Al Qaeda was founded (Compl. ¶¶ 33, 34) and

over 7 years *before* Al Qaeda is alleged to have begun operations in Sudan. (Compl. ¶¶

47, 48, 50, 61) (All alleging that Osama bin Laden and Al Qaeda's acitivities in Sudan

began in 1991).  As such, Omar Abdullah Kamel has insufficient notice of what it is

alleged to have done and the Complaint must be dismissed.

### 1. Applicable Legal Standard

  Under Rule 12(b)(6), a court may dismiss a complaint if it is clear that no relief

could be granted under any set of facts that could be proved consistent with the

allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  In reviewing such a

motion, a court must construe the complaint in the light most favorable to the plaintiff,

and must accept as true all allegations and all reasonable factual inferences drawn from

the well-pleaded factual allegations.  *See Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409, 411 (1986).  "However, the Court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), or if the facts are not well pleaded.  *See Ge v. Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd on other grounds*, 460 U.S. 325 (1983).

**2.      Some of Plaintiff's Causes of Action Must be Dismissed against Omar Abdullah Kamel because that is the Law of the Case**

        At the outset, plaintiffs' RICO allegations and allegations of negligence and negligent infliction of emotional distress must be dismissed as against Omar Abdullah Kamel pursuant a pre-consolidation ruling on the motions to dismiss of defendants Al Rajhi Banking & Investment Corporation, Al-Haramain Islamic Foundation, Muslim World League, and Soliman J. Khudeira.  *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp.2d 86 (D.D.C. 2003).  As the Court is well aware, the opinion concluded that plaintiffs lacked standing to bring their civil RICO claims (Counts XI, XII, and XIII).  *Id.* at 101-02.  For the same reasons outlined in the Court's opinion, plaintiffs also lack standing to bring civil RICO claims against Mr. Kamel.  Accordingly, the RICO claims must be dismissed against Omar Abdullah Kamel.

        The *Burnett* Court's pre-consolidation ruling also held that plaintiffs' negligence (Count VI) and negligent infliction of emotional distress claims (Count VIII) must be dismissed as to Al-Haramain Islamic Foundation because plaintiffs failed to allege a duty

that Al-Haramain Islamic Foundation owed to the plaintiffs.  *Id.* at 108.  Similarly, plaintiffs have also failed to allege that Omar Abdullah Kamel owed them any duty. Thus, plaintiffs' negligence and negligent infliction of emotional distress claims against him must also be dismissed.

**3.     Plaintiffs' Fail to Provide Omar Abdullah Kamel with Notice of the Claims against Him**

As detailed below, the Complaint relies substantially on conclusory legal allegations to "all defendants," and a singular unrelated allegation directed at Omar Abdullah Kamel.  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief …"  Here, plaintiffs' pleadings fail to meet even this most liberal notice pleading requirement.  *See Atuahene v. City of Harford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001) ("By lumping all defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy th[e] minimum standard [under Rule 8]."); *Gauvin v. Trembatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (rejecting a complaint where all defendants were "lumped together in a single, broad allegation").

Moreover, the *Burnett* Court has acknowledged the severity of the allegations contained in the Complaint and the impact those allegations have had on the named defendants:

> [I]t is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants.  The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage. . .  No heightened standard of pleading will be applied in this case, but, given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant to ensure that he – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds

upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [Complaint].

*Burnett*, 274 F. Supp.2d at 103-04.

Even relaxed scrutiny, let alone "extra-careful scrutiny", reveals that Mr. Kamel has not been provided with fair notice as to what plaintiffs' claims are against him and the grounds upon which those claims rest.  The linchpin for establishing liability against Omar Abdullah Kamel in this lawsuit is proof of (i) his knowledge of and intent to further al Qaeda's terrorist activities; (ii) a causal link between his actions funding and the September 11 attacks; and (iii) aiding and abetting or conspiring to carry out the September 11 attacks.  The Complaint, however, fails to allege that (a) Omar Abdullah Kamel possessed the requisite knowledge and intent,(b) that Mr. Kamel's actions were a proximate cause of the September 11 attacks, and (c) that  Omar Abdullah Kamel aided and abetted or conspired with anyone or any entity.  (*See* Complaint ¶ 53.)  In fact, the sole allegation against Omar Abdullah Kamel is that he invested in a Sudanese bank 5 years *before* Al Qaeda was formed, 7 years *before* Al Qaeda operated in Sudan, and almost 20 years *before* the attacks of September 11, 2001.  (Comp. ¶¶ 33, 47, 53)

In fact, based on plaintiffs' counsels own view of liability in this case the complaint against Omar Abdullah Kamel should be dismissed.  Recently plaintiffs' co-counsel, Andrea Bierstein, wrote a letter to this Court regarding the District Court's decision in *Boim v. Quranic Literacy Institute*, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004).  (Letter of Andrea Bierstein dated November 16, 2004 ("Bierstein Letter") p. 1).  According to plaintiffs' co-counsel "allegations that defendants knowingly provided material support to al Qaeda, directly or through intermediaries, from the early 1990's forward, if proven, do give rise to liability…"  (Bierstien Letter p. 3).

17

While defendant Kamel does not accept plaintiffs' co-counsels statement of the law, the complaint against him should be dismissed even if it is assumed to be accurate. Omar Abdullah Kamel is only accused of investing in a bank *prior to 1984*. (Compl. ¶ 54). This is clearly before plaintiffs' allege al Qaeda was formed (Compl. ¶ 33) and before plaintiffs' even claim that liability should attach. (Bierstein Letter p. 3). The counts against Omar Abdullah Kamel should then be dismissed based on *plaintiffs' co-counsel's* statement of the law.

The single allegation against Mr. Kamel is wholly insufficient to establish an inference of liability against him. Significantly, plaintiffs allege no temporal connection or "causal link" between Omar Abdullah Kamel's actions and the carrying out of terrorist acts on September 11, 2001, in the U.S. Plaintiffs also failed to allege knowledge or any means by which Mr. Kamel could have sufficient knowledge that his alleged action, *investing in a bank 5 years before Al Qaeda was founded*, of the potential for Al Qaeda's attack on the U.S. Accordingly, Omar Abdullah Kamel has not been provided with fair notice of the allegations against them. Therefore, this Court must dismiss the Complaint against Mr. Kamel for failure to state a claim.

**III.**     **CONCLUSION**

For the foregoing reasons, Omar Abdullah Kamel respectfully requests that this Court grant his Motion to Dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted,

_____
Martin F. McMahon, Esq.
D.C. Bar No. 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C.  20036
(202) 862-4343

*Attorney for Defendant*
*Omar Abdullah Kamel*

Dated: December 10, 2004