**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*        Federal Insurance Co. v. al Qaida
                                   03 CV 06978 (RCC)


**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE MOTION TO DISMISS FILED BY**
**DMI ADMINISTRATIVE SERVICES, S.A.**


COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
Tel.:  (215) 665-2000
Fax:   (215) 665-2013

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................... 1

II.   ALLEGATIONS AGAINST DMI ............................................. 2

III.  APPLICABLE LAW ............................................................... 3

    A.   Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's Prima Facie
        Showing of Personal Jurisdiction May be Established Solely by Legally
        Sufficient Allegations of Jurisdiction ........................................... 3

    B.   Under Rule 12(b)(6), The Federal Plaintiffs' Complaint Need Only
        Give the  Defendant Fair Notice of Their Claims and the Grounds Upon
        Which They  Rest ...................................................................... 4

IV.   ARGUMENT ......................................................................... 5

    A.   The Federal Plaintiffs Have Fulfilled Their Obligations Under the
        Federal  Notice  Pleading Requirements ....................................... 5

    B.   This Court Has Personal Jurisdiction Over DMI Under New York's
        Long  Arm Statute ..................................................................... 8

    C.   This Court's Exercise of Jurisdiction Over DMI Does Not Violate Due
        Process .................................................................................... 9

        1.   This Court Can Constitutionally Exercise Specific Jurisdiction ...... 9

        2.   DMI is Also Constitutionally Subject to Jurisdiction Pursuant to
            the Modified Due Process Standard For Mass Torts ..................... 11

    D.   The Federal Plaintiffs Have Adequately Pled Causation ................ 12

    E.   As Subrogees, The Federal Plaintiffs Have Standing Under RICO, And
        They  Have Sufficiently Pled A Claim Against DMI ...................... 16

    F.   The Federal Plaintiffs Have Adequately Alleged Claims Under the
        Anti- Terrorism and Effective Death Penalty Act ......................... 16

        1.   The Federal Plaintiffs Have Adequately Alleged Claims Under the
            ATA Pursuant to General Tort Principles ................................... 17

        2.   Federal Plaintiffs Have Adequately Alleged Claims Under the
            ATA Based Upon DMI's Criminal Violations .............................. 21

G.   The Federal Plaintiffs Have Sufficiently Pled Claims Against DMI for
     Conspiracy and Aiding and Abetting.................................................................. 22

H.   The Complaint States Valid Claims For Trespass, Wrongful Death,
     Survival,  Assault and Battery, Intentional Infliction of Emotional
     Distress, Negligence  and Punitive Damages ......................................................... 22

V.   CONCLUSION.......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

Page

### CASES

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)........................................................................................4

*Biton v. Palestinian Interim Self-Government Auth.*,
    310 F. Supp. 2d 172 (D.D.C. 2004) ........................................................................11

*Boim v. Quranic Literacy Institute* ("*Boim I*"),
    291 F.3d 1000 (7th Cir. 2002) ............................................. 1, 14, 17, 18-20, 21

*Boim v. Quranic Literary Institute* ("*Boim II*"),
    No. 00-C-2905, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) ................................... 18-20

*Boim v. Quranic Literacy Institute* ("*Boim II*"),
    No. 00-C-2905, 2004 U.S. Dist. LEXIS 22745 (N.D. Ill. Nov. 10, 2004) .......................18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................12

*Calder v. Jones*,
    465 U.S. 781 (1984).................................................................................................9

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998)....................................................................................5

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991).........................................................................8

*Conley v. Gibson*,
    355 U.S. 41 (1957).............................................................................................4-5, 7

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962).................................................................................................13

*Davis v. Barrett Day Securities, Inc.*,
    1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995)...........................................................9

*In re DES Cases*,
    789 F. Supp. 552 (E.D.N.Y. 1992) ........................................................................11-12

*In re DES Litigation*,
    7 F.3d 20 (2d Cir. 1993)..........................................................................................12

*DiStefano v. Carozzi North America, Inc.*,
   286 F.3d 81 (2d Cir. 2001)....................................................................................4

*Estates of Ungar v. Palestinian Auth.*,
   153 F. Supp. 2d 76 (D.R.I. 2001)...........................................................................11

*Flatow v. Islamic Republic of Iran*,
   999 F. Supp. 1 (D.D.C. 1998)................................................................................13

*Foman v. Davis*,
   371 U.S. 178, 182 (1962).......................................................................................1

*Geisler v. Petrocelli*,
   616 F.2d 636 (2d Cir. 1980)...................................................................................5

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983)...........................................................................13, 17

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)................................................................................................20

*Hoffman-LaRoche, Inc. v. Greenberg*,
   447 F.2d 872 (7th Cir. 1971) .............................................................................18-19

*In re Initial Public Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)...................................................................6, 7

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998)...................................................................................7

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
   376 F.3d 1123 (D.C. Cir. 2004)..............................................................................14

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   26 F. Supp. 2d 593 (S.D.N.Y. 1998).......................................................................8

*Leatherman v. Tarrant County*,
   507 U.S. 163 (1993)..............................................................................................6

*Lumbard v. Maglia, Inc.*,
   621 F. Supp. 1529 (S.D.N.Y. 1985)......................................................................13

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003)................................................................................4, 9

*Merrill Lynch Futures, Inc. v. Kelly,*
    585 F. Supp. 1245 (S.D.N.Y. 1984)..................................................................17

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996).............................................................................7

*Pugh v. Socialist People's Libyan Arab Jamahiriya,*
    290 F. Supp. 2d 54 (D.D.C. 2003) ............................................................ 10-11

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,*
    46 F.3d 230 (2d Cir. 1995)........................................................................ 1, 7-8

*Rein v. Socialist People's Libyan Arab Jamahiriya,*
    995 F. Supp. 325 (E.D.N.Y. 1998) .......................................................... 10-11

*Rich-Taubman Associate v. Stamford Restaurant Operating Co., Inc.,*
    587 F. Supp. 875 (S.D.N.Y. 1984).................................................................17

*Simmons v. Abruzzo,*
    49 F.3d 83 (2d Cir. 1995) ...........................................................................4-5

*Simon v. Philip Morris, Inc.,*
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ........................................................ 8, 11-12

*Sparrow v. United Airlines, Inc.,*
    216 F.3d 1111 (D.C. Cir. 2002) ......................................................................6

*Swierkiewicz v. Sorema,*
    534 U.S. 506 (2002)...................................................................................5, 6

*Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,*
    31 Fed. Appx. 738 (2d Cir. 2002) ...................................................................7

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.,*
    241 F.3d 135 (2d Cir. 2001).........................................................................9

*Wahad v. FBI,*
    813 F. Supp. 224 (S.D.N.Y. 1993).................................................................17

*Whyte v. Contemporary Guidance Servs.,*
    No. 03-C 2004 U.S. Dist. LEXIS 12447 (S.D.N.Y. July 2, 2004) ............................ 1, 7-8

*Woodford v. Committee Action Agency,*
    239 F.3d 517 (2d Cir. 2001)...........................................................................5

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)............................................................................................4-5

## RULES, STATUTES, AND OTHER MATERIALS

Fed. R. Civ. P. 8 ................................................................................................. 5-6, 7

Fed. R. Civ. P. 9(b) ............................................................................................. 6

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 3-4, 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4-5, 7

Fed. R. Civ. P. 15(a) .......................................................................................... 1

RICO, 18 U.S.C. § 1961 *et seq.* ......................................................................... 16

The Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ........................................... 16

Torture Victim Protection Act, Pub. L. 102-256, 106 Stat. 73 (1992) (reprinted at 28 U.S.C. § 1350 note)................................................................................. 22

N.Y. C.P.L.R. §302(a)(2) (2004) ........................................................................ 8

I.    **INTRODUCTION**

The Federal Plaintiffs have sued DMI[1] based on its longstanding role as a financial

services provider to, and material supporter of, terrorist organizations, including al Qaida.

Responsibility for international terrorism rests not only with those "who pull the trigger or plant

the bomb" or pilot the airplanes, but also with those who facilitated those events through

financial or other means. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002)

("*Boim I*"). Therefore, DMI's motion to dismiss must be denied. In the event, however, that this

Court finds the Federal Plaintiffs' First Amended Complaints ("FAC") lacking, leave to amend

should be granted. *See* FED. R. CIV. P. 15(a) ("leave shall be freely given when justice so

requires"); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995)

("The Supreme Court has emphasized that amendment should normally be permitted, and has

stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal

Rules.' " (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Whyte v. Contemporary*

*Guidance Servs.*, No. 03-CV-5544 (GBD), 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D.N.Y.

July 2, 2004) (mem.) (explaining that "leave to amend should be freely given when justice

dictates" (citations omitted)).

---

[1]    The FAC names DMI Administrative Services, S.A. ("DMI S.A."), Dar al Maal al Islami ("House of
Islamic Money"), and Dar al Maal al Islami Trust ("DMI Trust") as defendants. The FAC alleges that each of those
entities "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida
and/or affiliated FTOs, associations, organizations or persons." FAC ¶ 66. Although the Federal Plaintiffs' current
Memorandum has been written in response to the Motion to Dismiss filed by DMI S.A., the Federal Plaintiffs have
grouped all of the DMI entities together, calling them collectively "DMI." The Federal Plaintiffs have taken this
approach because the DMI entities all have close corporate ties and act in concert with one another. Because these
defendants act in concert with one another and enable each other to act, the conduct of each is attributable to the
others.

## II.   **ALLEGATIONS AGAINST DMI**

The Federal Plaintiffs' FAC plainly asserts that DMI was one of al Qaida's sponsors. FAC ¶¶ 307-312.[2]  DMI was created on July 19, 1981, and is headquartered in Switzerland. FAC ¶ 308; RICO at Exhibit A.

Specifically, the Federal Plaintiffs' FAC alleges that DMI was part of a complex banking system through which al Qaida's sponsors channeled support to that terrorist organization.  FAC ¶¶ 307-312.  DMI has actively sponsored and supported the al Qaida movement through several of its subsidiaries, including but not limited to, Islamic Investment Company of the Gulf,[3] Faisal Islamic Bank of Bahrain,[4] Faisal Finance, Tadamon Islamic Bank, and Al Shamal Islamic Bank. FAC ¶¶ 308 & 311.  Operating under the rules of Islamic law (*Shariah*) including the principles of *Zakat* (Islamic charity), DMI, by itself and through its subsidiaries, gave extensive financial support to radical Islamic organizations.[5]  FAC ¶¶ 307-312.

It is indisputable that the Federal Plaintiffs' FAC alleges that DMI knowingly participated in al Qaida's global conspiracy to commit acts of international terrorism against the United States, its nationals and allies.  Indeed, when read as a whole, and in accordance with the mandates of Rule 8(a)(2), the FAC sufficiently supports multiple claims, in that it alleges that DMI knowingly provided material support and resources to al Qaida, that al Qaida would not have possessed the financial resources, physical assets, membership base, technological

---

[2]     "FAC ¶ #" refers to the Federal Plaintiffs' First Amended Complaint.  "RICO at page #." refers to the Federal Plaintiffs' RICO Statement for DMI.  Under paragraph 14 of Case Management Order No. 2, "[a]ny such RICO Statement shall be deemed an amendment to the Federal Insurance plaintiffs' . . . Amended Complaint, by incorporation by reference."

[3]     Osama bin Laden's brother, Haydr Mohammad bin Laden, served as a Director of the Islamic Investment Company of the Gulf.  FAC ¶ 312.

[4]     Faisal Islamic Bank was implicated during the 2001 U.S. trial on the 1998 embassy bombings in Africa as holding bank accounts for al Qaida operatives.  RICO at Exhibit A.

[5]     Like other Islamic banking institutions, DMI abides by *Shariah* (Islamic Law), which prohibits the earning or payment of interest.  FAC ¶ 310.  One of the obligations imposed on Islamic banking systems under *Sharia* is the duty to contribute to and manage *Zakat* funds.  *Id.*  Consistent with this obligation, Islamic banking institutions set aside a percentage of funds associated with each transaction as a *Zakat*. *Id.*  As a practical matter, these funds disappear from the banking institution's books and can be used to fund radical Islamic organizations, such as al Qaida.  FAC ¶ 310; RICO at Exhibit A.

knowledge, communication skills, and global reach required to conceive, plan and execute the

Attack absent the sponsorship of DMI and the other defendants, and that DMI thus knowingly

participated in the conspiracy with the intent to advance the commission of terrorist attacks

against the United States, of which the Attack was a natural, intended and foreseeable

consequence.  FAC ¶¶ 72-74.  In doing so, DMI aided and abetted, conspired with, and provided

material support and resources to al Qaida and affiliated foreign terrorist organizations ("FTOs"),

associations, organizations or persons.  FAC ¶ 66.

As the above discussion illustrates, the Federal Plaintiffs have asserted sufficient

allegations against the Defendant to survive a motion to dismiss, and therefore DMI's motion to

dismiss must be denied in its entirety.

## III.   <u>APPLICABLE LAW</u>

Defendant DMI makes two broad arguments in favor of dismissal of the claims asserted

against it in the FAC:  (1) that this Court lacks personal jurisdiction over DMI; and (2) that the

Federal Plaintiffs have failed to state any claim entitling them to relief against DMI.  DMI Br. at

1, 3 & 11.[6]  For the reasons set forth below, the Federal Plaintiffs respectfully request that the

Motion to Dismiss filed by DMI be denied in all respects, with prejudice**.**

### A.   Prior to Discovery on a Rule 12(b)(2) Motion, a Plaintiff's *Prima Facie* Showing of Personal Jurisdiction May be Established Solely by Legally <u>Sufficient Allegations of Jurisdiction</u>

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing
> motion may defeat the motion by pleading in good faith, [citation
> omitted] legally sufficient allegations of jurisdiction.  At that
> preliminary stage, the plaintiff's *prima facie* showing may be
> established solely by allegations.  After discovery, the plaintiff's
> *prima facie* showing, necessary to defeat a jurisdiction testing

---

[6]      "DMI Br. at page #." refers to DMI's Memorandum of Law in support of its Motion to Dismiss.

> motion, must include an averment of facts that, if credited by the
> trier, would suffice to establish jurisdiction over the defendant.
> [citations omitted].  At that point, the *prima facie* showing must be
> factually supported.

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S.

854 (1990).  The Second Circuit has observed that a plaintiff's averment of jurisdictional facts

will normally be met in one of three ways when in dispute:  (1) by a Rule 12(b)(2) motion, which

assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges

their sufficiency; (2) by a Rule 56 motion, which asserts that there are undisputed facts

demonstrating the absence of jurisdiction; or (3) by request for an adjudication of disputed

jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the

merits.  *Id.* at 197.  Where, as here, "the defendant is content to challenge only the sufficiency of

the plaintiff's factual allegations, in effect demurring by filing a Rule 12(b)(2) motion, the

plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing

of jurisdiction."  *Id.*  In order to meet its prima facie showing, the Federal Plaintiffs need only

allege facts that connect the defendant with the applicable forum, here, the United States.  The

plaintiff's averments of jurisdictional facts must be taken as true.  *Id.*;  *In re  Magnetic Audiotape*

*Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  The Court also construes the pleadings in a

light most favorable to plaintiff, resolving all doubts in his favor.  *DiStefano v. Carozzi North*

*America, Inc.*, 286 F.3d 81 (2d Cir. 2001).

    **B.**    **Under Rule 12(b)(6), The Federal Plaintiffs' Complaint Need Only Give the**
                 **Defendant Fair Notice of Their Claims and the Grounds Upon Which They**
                 **Rest**

        DMI alternatively moves to dismiss the Federal Plaintiffs' claims pursuant to Rule

12(b)(6).  DMI Br. at 1 & 11.  Such a motion must be denied unless "it appears beyond doubt

that the plaintiff can prove no set of facts in support of its claim which would entitle him to

relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n. 8.

(2d Cir. 2004); *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the FAC, but "merely to assess the legal feasibility" of the FAC.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  The Court must accept as true the facts alleged in the FAC and draw all reasonable inferences in favor of the Federal Plaintiffs.  *Wynder*, 360 F.3d at 77.  The Federal Plaintiffs are not required to prove their case at the pleading stage; indeed, the pleading of evidence should be avoided. *Woodford v. Comm. Action Agency*, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion is "not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Under *Swierkiewicz v. Sorema,* 534 U.S. 506, 512-13 (2002), Rule 8 pleadings are extremely permissive.  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," and such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Wynder*, 360 F.3d at 77.

## IV.    <u>ARGUMENT</u>

### A.    <u>The Federal Plaintiffs Have Fulfilled Their Obligations Under the Federal Notice Pleading Requirements</u>

The Federal Plaintiffs have satisfied the requirements of notice pleading.[7]  Rule 8 of the Federal Rules of Civil Procedure provides in relevant part:

> Claims for relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party

---

[7]     DMI asserts that "plaintiffs fail even to *mention* DMI S.A. in their Complaint," and that "DMI S.A. is not referred to in the text of the Complaint whatsoever."  DMI Br. at 1.  As has been previously explained, the Federal Plaintiffs used the label "DMI" to refer to all of the DMI entities, which includes DMI S.A.  See note 1, *supra*. Furthermore, contrary to DMI's characterization of the FAC, the FAC specifically names "DMI S.A." as a defendant.  FAC at p.16.

> claim, shall contain (1) a short and plain statement of the grounds
> upon which the court's jurisdiction depends, unless the court
> already has jurisdiction and the claim needs no new grounds of
> jurisdiction to support it, (2) a short and plain statement of the
> claim showing that the pleader is entitled to relief, and
> (3) a demand for judgment for the relief the pleader seeks. . . .

FED. R. CIV. P. 8(a).  Rule 8 provides the "notice pleading" requirement for federal courts.  The

Rule imposes a lenient obligation on the pleader, requiring only that the pleader provide its

opponent with fair notice of its claim and the grounds upon which that claim rests.  *See*

*Swierkiewicz*, 534 U.S. at 512.  In the absence of averments of fraud or mistake, which must be

pled with particularity pursuant to FED. R. CIV. P. 9(b), a federal court is prohibited from

imposing more demanding requirements than those prescribed by Rule 8(a).  *See, e.g.,*

*Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).  "Such simplified 'notice pleading'

is made possible by the liberal opportunity for discovery and the other pretrial procedures

established by the Rules to disclose more precisely the basis of both claim and defense and to

define more narrowly the disputed facts and issues."  *In re Initial Pub. Offering Sec. Litig.*, 241

F. Supp. 2d 281, 322 (S.D.N.Y. 2003) (quoting *Conley*, 355 U.S. at 47-48).  Consequently, "[a]s

the Supreme Court recognized in *Swierkiewicz*, one clearly written sentence can satisfy Rule

8(a)(2)."[8]  *Id*. at 323.

Defendant DMI's Motion to Dismiss is rife with accusations that the Federal Plaintiffs

have not pled sufficient facts to establish either personal jurisdiction or valid claims against it.

However, DMI is mistaken and misunderstands the meaning and intent behind Rule 8(a).  The

Federal Plaintiffs have provided DMI with the requisite notice in alleging that it knowingly aided

and abetted and conspired to fund the activities of terrorists, including al Qaida, and that a

terrorist attack on American soil was a direct, intended and foreseeable product of a larger

---

[8]     By way of illustration, one Court of Appeals recently held that the allegation, "I was turned down for a job because of my race," when included in a complaint, would be sufficient to survive a Rule 12(b)(6) motion.  *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2002).

conspiracy to commit acts of international terrorism against the United States, its nationals and allies.[9]  FAC ¶¶ 66 & 73.

To expect or require the Federal Plaintiffs to set forth every wrongful act of DMI is as unreasonable as it is unnecessary at this stage in the proceedings.  It simply is not required in notice pleading.  *See* FED. R. CIV. P. 8 & 12.  Having stated a claim against DMI, the Federal Plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence.  Indeed, as to DMI's personal jurisdictional challenge, only a *prima facie* showing of jurisdiction is required at the pleading stage.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 576 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996).  A plaintiff is entitled to jurisdictional discovery and an evidentiary hearing before having to demonstrate jurisdiction by a preponderance of the evidence.[10]  *Id.*  Under the Federal Rules and relevant case law, it is inappropriate and untimely for DMI to challenge the substance of the Federal Plaintiffs' good faith allegations, which have effectively put them on notice of the claims and jurisdictional bases against them.  For this reason, DMI's Motion to Dismiss should be denied in its entirety.  If the Court finds, however, that the allegations in the FAC are in any way insufficient, the Federal

---

[9]      DMI argues that the Federal Plaintiffs' "boundless allegations also promise a boundless discovery process, if plaintiffs' case is allowed to proceed," and that "[s]uch a discovery process, untethered to any specific allegations of fact, would be unmanageable, for both the parties and the Court."  DMI Br. at 13 n.5.  DMI fails to recognize that, as a judge in this District recently explained, "[s]uch simplified 'notice pleading' is made possible by *the liberal opportunity for discovery* and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."  *In re Initial Pub. Offering Sec. Litig.,* 241 F. Supp. 2d at 322 (quoting *Conley*, 355 U.S. at 47-48) (emphasis added).  As that statement shows, Defendant's attempt to use the possibility of a lengthy discovery process as a reason for demanding a higher burden of pleading is contrary to the Rules.

[10]     DMI asserts, in a footnote, that the Federal Plaintiffs "can tender no argument, that this complete failure to make out a *prima facie* case for jurisdiction could be remedied by limited jurisdictional discovery."  DMI Br. at 11 n.4.  One of the cases that DMI cites as support is *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185-86 (2d Cir. 1998).  The Second Circuit, however, declined to follow *Jazini* in *Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. Appx. 738, 739 (2d Cir. 2002) (summary order), finding that jurisdictional discovery over a foreign corporation was appropriate.  In *Tex. Int'l Magnetics*, the Second Circuit explained that "[i]n the instant case, plaintiff's jurisdictional allegations are neither sparse nor insufficiently specific; *they are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate*."  *Id.* (emphasis added).  Thus, if the Court finds that the Federal Plaintiffs' jurisdictional allegations are "simply insufficiently developed at this time," limited jurisdictional discovery is appropriate.

Plaintiffs should be granted leave to amend. *See Rachman Bag Co.*, 46 F.3d at 234 ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." (internal quotation marks and citation omitted)); *Whyte*, 2004 U.S. Dist. LEXIS 12447, at *13-14 (explaining that "leave to amend should be freely given when justice dictates" (citations omitted)).

**B.    This Court Has Personal Jurisdiction Over DMI Under New York's Long Arm Statute**

This Court has jurisdiction over the Federal Plaintiffs' claims pursuant to New York's long arm statute. That statute provides, in part, that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent commits a tortious act within the state."[11] N.Y. C.P.L.R. §302(a)(2) (2004). "It is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (citations omitted); *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 119 (E.D.N.Y. 2000) (mem.). "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998).

---

[11]    Defendant DMI argues that "plaintiffs' unsupported assertions of tortious activity by DMI S.A. . . . are wholly conclusory," and that "these conclusory allegations of fact, and legal conclusions masquerading as allegations of fact, are entirely insufficient to confer personal jurisdiction over DMI S.A." DMI Br. at 7. The allegations in the FAC and RICO Statement are not legal conclusions, as DMI asserts; they are fair statements that give DMI notice of the Federal Plaintiffs' claims and the grounds upon which they are based. See Part IV., A., *supra*. To the extent that the Court finds that the Federal Plaintiffs' allegations are insufficient, the Federal Plaintiffs should be granted leave to amend.

For the reasons set forth in Parts IV., D. & IV., F., 1., *infra*, the FAC states valid claims against DMI for the September 11[12] Attack under conspiracy and aiding and abetting theories.[12] This Court therefore has personal jurisdiction over DMI pursuant to New York's long arm statute and the well-recognized conspiracy jurisdiction theory under New York law.

### C.    This Court's Exercise of Jurisdiction Over DMI Does Not Violate Due Process

### 1.    This Court Can Constitutionally Exercise Specific Jurisdiction

The Supreme Court repeatedly has held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. *Calder v. Jones*, 465 U.S. 781, 788 (1984). Where, as here, the claim arises out of, or relates to, a defendant's contact with the forum, i.e., the attack in New York, the plaintiff need only prove specific jurisdiction. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001) (citation omitted).

When considering specific jurisdiction, the court properly focuses on the relationship among the defendant, the forum and the litigation in judging minimum contacts. *Calder*, 465 U.S. at 788. In an action involving the harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence." *Id*. The Federal Plaintiffs have alleged that DMI was engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies. FAC ¶ 73.[13]

---

[12]    Defendant DMI argues that the Federal Plaintiffs' "wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage plaintiffs' failed assertion of personal jurisdiction over DMI S.A." DMI Br. at 9. DMI's argument is unpersuasive, because the Federal Plaintiffs have sufficiently alleged conspiracy and aiding and abetting at this stage of the proceedings. *See* Part IV., F., 1., *infra*.

[13]    The Federal Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation. *In Re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208; *see also Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995) (mem.).

The actions of the conspirators were expressly aimed at the United States such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with some United States citizens as passengers, provide support for exercising personal jurisdiction here. *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998), *aff'd in part*, 162 F.3d 748 (2d Cir. 1998), *cert. denied*, 527 U.S. 1003 (1999), involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland. Judge Platt, in the Eastern District of New York, reasoned that the destruction of the airplane, 189 deaths, and significant security concerns for the country and its aviation industry arguably "has had extensive impacts" on the United States. *Id.* at 330. According to Judge Platt,

> Any foreign [entity] would know that the United States has substantial interest in protecting its flag carriers and its nationals from terrorist activities and should reasonably expect that if these interests were harmed, it would be subject to a variety of potential responses, including civil actions in United States courts.

*Id.* The September 11th Attack indisputably had impacts in and on the United States like few events in its history.

In *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003), *appeal dismissed for lack of jurisdiction by* 2004 U.S. App. LEXIS 24404 (D.C. Cir. Nov. 22, 2004), Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit involving the 1989 mid-air explosion of a French airline in Africa that killed seven United States citizens. The plaintiffs in *Pugh* alleged that the defendants "conspired to sabotage and succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and unsuspecting passengers while in flight." *Id.* at 59. The court noted that the United States had a well known, worldwide interest in preventing and punishing terrorism. Congress

had enacted several criminal statutes dealing with such cases starting at least five years before the bombing.  These criminal statutes contemplated jurisdiction in the United States over foreign nationals for activities abroad regardless of other contacts with the United States.  The court in *Pugh* explained:

> It logically follows that if federal courts may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil *in personam* jurisdiction over those same individuals for the same acts.

*Id.*  That same logic applies here.[14]  In sum, this Court's exercise of specific personal jurisdiction does not violate DMI's due process rights.

### 2.    DMI is Also Constitutionally Subject to Jurisdiction Pursuant to the Modified Due Process Standard For Mass Torts

DMI is also subject to personal jurisdiction pursuant to the "modified due process standard for mass torts" adopted on several occasions by courts in the Eastern District of New York in both tobacco and DES cases.  *Simon*, 86 F. Supp. 2d at 129-37; *In re DES Cases*, 789 F. Supp. 552, 574-77 (E.D.N.Y. 1992) (mem.).[15]  "New York's interest in this dispute is

---

[14]     DMI challenges the Federal Plaintiffs' reliance on *Rein* and *Pugh*, stating that those two cases "have been read broadly by some plaintiffs to import the die process standards of the Foreign Sovereign Immunities Act ("FSIA") to cases brought under the Anti-Terrorism Act ("ATA")."  DMI Br. at 7 n.2.  DMI relies on *Biton v. Palestinian Interim Self-Government Auth.*, 310 F. Supp. 2d 172, 178 (D.D.C. 2004) and *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 95 (D.R.I. 2001), asserting that that those cases stand for the proposition that " 'the difference between the ATA and FSIA are too great for their common focus on antiterrorism to allow cross-pollination on this issue' of personal jurisdiction."  DMI Br. at 7 n.2 (quoting *Biton*, 310 F. Supp. 2d at 178).  DMI also argues that, in *Biton* and *Ungar*, the courts applied a "traditional 'minimum contacts' analysis" and dismissed the claims for lack of personal jurisdiction.  *Id.*

DMI's reliance on *Biton* and *Ungar* is misplaced.  As an initial matter, *Pugh* involved claims against individuals who were sued in their personal capacities, and the court engaged in an extensive and thorough analysis of due process in relation to those specific claims.  And although the claims in *Rein* were against a foreign state, that did not alleviate the need for the court in that case to go through a complete analysis of due process.  The court in that case was required to conduct a thorough due process analysis, because, as the Court is aware, foreign states are entitled to due process as persons within the meaning of the Constitution in the Second Circuit.  Thus, it appears that *Biton* and *Ungar* fundamentally misconstrue *Pugh* and *Rein*, in suggesting that they do not involve traditional due process considerations.

[15]     DMI argues that "[t]o the extent that those two cases do stand for the proposition that the minimum contacts test may be abandoned, those decisions run directly contrary to long-standing, controlling precedent."  DMI Br. at 8 n.3 (citations omitted).  Contrary to DMI's characterizations, *Simon* and *In re DES Cases* do not abandon minimum contacts.  Instead, they recognize that the due process analysis must be informed by relevant policy considerations, which include the forum's interest in adjudicating the dispute and the plaintiffs' interest in having an

intense, and the burden on [defendant] is minimal compared to the difficulty of the plaintiffs' litigating in [dozens of other countries]."  *Simon*, 86 F. Supp.2d at 137.

The courts of the United States in general, and New York in particular, have an undeniable and overwhelming appreciable interest in the World Trade Center litigation.  *Id.* at 131 (citation omitted).  Since New York has an appreciable state interest because this litigation raises serious issues that would affect or have a probable impact on the vindication of policies expressed in the laws of New York, the assertion of jurisdiction is *prima facie* constitutional.  *Id.*  Thus, the assertion of jurisdiction is considered constitutional unless, given the actual circumstances of the case, the defendant is unable to amount a defense in the forum state without suffering a relatively substantial hardship.  *Id.*  DMI can make no such showing here.

### D.   The Federal Plaintiffs Have Adequately Pled Causation

DMI next challenges the Federal Plaintiffs' causes of action based on the argument that the Federal Plaintiffs have failed to plead that DMI's actions have a proximate causal link to the Attack.  DMI Br. at 13-15.  In making this argument, DMI fundamentally misapprehends the elements of the Federal Plaintiffs' aiding and abetting and conspiracy theories, and ignores the

---

efficient and convenient forum for obtaining redress.  Indeed, the Supreme Court has explicitly held that such policy considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." (citations omitted)).  Here, the policy considerations are even greater than those addressed in *Simon* and *In re DES Cases*.

DMI also mistakenly reads the relevant discussions in the two cases.  First, DMI incorrectly states that the discussion of modified due process in *Simon* is "dictum" because the court there found that the defendant did have minimum contacts.  DMI Br. at 8 n.3.  The Federal Plaintiffs disagree with DMI's reading of *Simon*, because the court in *Simon* was explaining the approach taken in *In re DES Cases*.  More importantly, the court noted that "[t]he constitutionality of exercising jurisdiction over [defendant] in this mass tobacco litigation *may also be analyzed under [the modified due process] standard*," which clearly evidences an acceptance of modified due process.  *Simon*, 86 F. Supp. 2d at 132 (emphasis added).  Second, DMI argues that "the Second Circuit has implicitly called into question the 'modified due process' standard suggested by *In re DES*."  DMI Br. at 8 n.3 (citing *In re DES Litig.*, 7 F.3d 20, 24-25 (2d Cir. 1993) ("whether or not other trial judges find Judge Weinstein's opinion a persuasive precedent, they are not bound to apply it in any subsequent litigation" for collateral estoppel  purposes)).  DMI mischaracterizes the Second Circuit's statement, because the Second Circuit did not explicitly disapprove of or call into question Judge Weinstein's approach; the Second Circuit only ruled that Judge Weinstein's decision did not have collateral estoppel effect in other DES cases that were being pursued against the same defendant.  *In re DES Litig.*, 7 F.3d at 23 & 24-25.

allegations of the FAC.  Under New York law, "those who aid or abet or conspire in tortious

conduct are jointly and severally liable with other participants in the tortious conduct, regardless

of the degree of their participation or culpability in the overall scheme."  *Lumbard v. Maglia,*

*Inc.*, 621 F. Supp. 1529, 1536 (S.D.N.Y. 1985).

Consistent with this rule, the causation analysis in a civil conspiracy action focuses solely

on whether the plaintiff's injuries were caused by "an unlawful overt act performed by *one of the*

*parties* to the agreement."  *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis

added).[16]  Similarly, a plaintiff need only allege that the defendant provided substantial

assistance to the wrongdoer to establish tort liability based on the defendant's aiding and abetting

of the principal tortfeasor.  *Id.*  Pursuant to these standards, DMI's participation in al Qaida's

conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that

terrorist organization, ties them inextricably to the Attack.[17]  As the Federal Plaintiffs' injuries

are indisputably the direct result of that Attack, the Federal Plaintiffs have properly and

adequately alleged causation.  Accordingly, DMI's causation-based arguments must be rejected.

In keeping with the foregoing principles, courts repeatedly have held that victims of

terrorism are entitled to recover from the knowing financiers and sponsors of the terrorist

organization responsible for carrying out the plot that produced their injuries, and need not

demonstrate any direct involvement by the defendant in that specific plot.  As the United States

District Court for the District of Columbia observed in *Flatow v. Islamic Republic of Iran*, 999 F.

Supp. 1, 18 (D.D.C. 1998):  "[a] plaintiff need not establish that the material support and

resources provided by a foreign state for a terrorist act contributed directly to the act from which

---

[16]     See note 22, *infra*.

[17]     The United States Supreme Court has held that in cases that involve alleged conspiracy among multiple
actors involving multiple acts, "plaintiffs should be given the full benefit of their proof without tightly
compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  The character
and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by
looking as it as a whole."  *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962).

his claim arises . . . [s]ponsorship of a terrorist group which causes the personal injury or death

of a United States national alone is sufficient . . . ."  The Seventh Circuit adopted the same

standard in *Boim I*, holding that plaintiffs who are victims of terrorism need show only that the

defendant knew of the terrorist organization's illegal activities, desired to help those activities,

and engaged in some affirmative act in support thereof.  291 F.3d at 1023.  More recently, the

D.C. Circuit explicitly held that application of the "but for" standard of causation is manifestly

improper in cases arising from the provision of material support to a terrorist organization.

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1130 (D.C. Cir. 2004).  In

support of its decision, the D.C. Circuit insightfully reasoned as follows:

> [T]he more likely situation is not Libya's hypothetical, involving
> one direct and one general state sponsor, but rather the case in
> which multiple foreign states claim to be providing only "general
> support."  Such a case, in which application of a "but for" standard
> to joint tortfeasors could absolve them all, is precisely the one for
> which courts generally regard "but for" causation as inappropriate.

*Id.*  Pursuant to these standards, DMI's participation in al Qaida's conspiracy to commit terrorist

attacks against the United States, and aiding and abetting of that terrorist organization, ties them

inextricably to the Attack.  As the plaintiffs' injuries are indisputably the direct result of that

Attack, the plaintiffs have properly and adequately alleged causation.  Accordingly, DMI's

causation-based arguments must be rejected.

    While unnecessary to establish liability over DMI given the asserted aiding and abetting

and conspiracy theories, it should be noted that the FAC does specifically allege that the Attack

would not have been possible absent the sponsorship and support provided by DMI and the other

defendants.  According to the Complaint, "[a]bsent the material support and resources provided

by the co-defendants, both directly and indirectly, al Qaida would not have possessed the

financial resources, physical assets, membership base, technological knowledge, communication

skills, and global reach required to conceive, plan and execute the September 11th Attack."  FAC

¶ 74.  DMI conveniently ignores these and similar allegations of the FAC in its Motion to Dismiss.[18]  For purposes of the present motion, however, the allegations of the FAC must be accepted as true.

The FAC also sufficiently alleges that the Attack was a foreseeable product of the conspiracy in which DMI knowingly participated, and of DMI's aiding and abetting of al Qaida. Indeed, the FAC unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy.  FAC ¶ 72.  While at this stage it is not necessary for the Federal Plaintiffs to provide evidence of their allegations, it should be noted that al Qaida had unequivocally declared, through statements and actions, that the primary objective of its global conspiracy was to attack the United States and kill its citizens.  For example, in 1996 and 1998, al Qaida issued *fatwas*, or religious decrees, authorizing attacks against the United States and its citizens.  In the 1998 *fatwa*, issued under the banner "The World Islamic Front For Jihad Against Jews And Crusaders," Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens, civilian or military, "in any country in which it is possible to do it . . . ."

During the years before the September 11 Attack, al Qaida followed through on its threats, plotting and carrying out a series of calculated and increasingly violent attacks against U.S. interests, including:  the first World Trade Center bombing in 1993; the planned attacks against the Lincoln-Holland Tunnels and George Washington Bridge and other sites in New York in July 1993; the planned assassination of Pope John Paul II in the Philippines, including the Americans in his entourage; the planned assassination of President Clinton in the Philippines; the planned bombing of eleven to thirteen American airliners over the Pacific in January 1995;

---

[18]     DMI's assertion that "indiscriminate, 'catch-all' averments cannot suffice to plead proximate causation" is misplaced.  DMI Br. at 14.  The general allegations in the FAC are necessary in order to define the parameters of the conspiracy that gave rise to the September 11th Attack.  If the Federal Plaintiffs had failed to provide such structure through general allegations, DMI would have surely complained that the Federal Plaintiffs failed to fully describe the nature of the conspiracy.  More importantly, the Federal Plaintiffs have augmented the general allegations in the FAC, which clearly demonstrate proximate cause, with specific allegations against DMI.  *See* FAC ¶¶ 307-321.

the car bombing of the U.S. military mission in Rihadh, Saudi Arabia in 1995; the truck bombing of the U.S. Housing area Khobar Towers in Dhahran, Saudi Arabia in 1996; the simultaneous bombings of the U.S. Embassies in Kenya and Tanzania in 1998; the Millennium plot to bomb the Los Angeles International Airport; the plot to attack a U.S. Naval ship in Yemen in January of 2000; and the actual suicide attack on the USS Cole in October of 2000.

As the conduct of terrorist acts against the United States and its citizens was, for many years prior to September 11, 2001, al Qaida's declared objective, it is inconceivable to suggest that the Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaida, as DMI is alleged to have done.[19]

**E.    As Subrogees, The Federal Plaintiffs Have Standing Under RICO, And They Have Sufficiently Pled A Claim Against DMI**

Defendant DMI makes a two-pronged argument in opposition to the Federal Plaintiffs' RICO claim:  (1) that the Federal Plaintiffs lack standing to bring a claim under RICO; and (2) that the Federal Plaintiffs have failed to state a claim under RICO.  DMI Br. at 16-17.  At this point in the litigation, the Federal Plaintiffs have extensively addressed and briefed RICO arguments analogous to those put forth by DMI.  Rather than burdening the Court with a restatement of those same arguments herein, the Federal Plaintiffs incorporate those arguments by reference.[20]

**F.    The Federal Plaintiffs Have Adequately Alleged Claims Under the Anti-Terrorism and Effective Death Penalty Act**

A plaintiff may assert a valid claim under the Antiterrorism and Effective Death Penalty Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, under either of two alternative approaches:  (1) pursuant to general tort principles, including concerted action theories of liability; or (2) by demonstrating

---

[19]    Not surprisingly, DMI denies and challenges the allegations in the FAC.  Consistent with the precedents of the Second Circuit, the Federal Plaintiffs request the opportunity to conduct discovery if the Court, for some reason, does not assume the truth of all of the allegations in the FAC.

[20]    See Opposition to Mar-Jac Poultry, Inc. at 14-20 (filed on 07/09/04); Opposition to Tarik Hamdi at 15-20 (filed on 12/14/04).

that the defendant violated the ATA's criminal standards, and that the defendant's violation was a substantial factor in bringing about plaintiff's injuries. *Boim I*, 291 F.3d at 1015 & 1020. The Federal Plaintiffs have done both.[21]

### 1. The Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Pursuant to General Tort Principles

In *Boim I*, the Court of Appeals for the Seventh Circuit held that the legislative history of the ATA evinces a clear intent by Congress to codify general common law tort principles, and to impose civil liability for acts of international terrorism to the full reaches of traditional tort law. *Boim I*, 291 F.3d at 1010. Accordingly, the *Boim I* court specifically embraced the use of concerted action theories of liability, such as aiding and abetting and conspiracy, to establish liability over a defendant under the ATA. *Id.* at 1020.

The elements necessary to establish liability for a defendant's participation in a conspiracy to commit a tort are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was done pursuant to and in furtherance of the overall scheme. *Halberstam*, 705 F.2d at 477.[22] Civil liability for aiding and abetting will be imposed where: (1) the party whom the defendant aids or abets performs a wrongful act that causes injury; (2) the defendant is generally aware of his role

---

[21]    DMI puts forth the argument that "since the ATA is available only to U.S. nationals, all plaintiffs's [sic] assignors who are not U.S. nationals lacked standing to bring their ATA claims, and plaintiffs' claims as subrogees of those assignors thus should be dismissed." DMI Br. at 19 n.9. DMI's argument fails in several respects. First, and foremost, DMI has failed to identify the subrogors or assignors whom it alleges lack standing. And DMI has never requested permission to review any of the sealed exhibits. Thus, DMI cannot meet its burden of proof, as it must on a Motion to Dismiss. To the extent that the insurer plaintiffs themselves are citizens of the U.S., they possess independent standing to pursue claims under the ATA for their injuries.

[22]    Although New York law likely controls the vast majority of the Federal Plaintiffs' claims, *Halberstam* long has been regarded as the leading case on concerted action liability, and the New York courts have repeatedly relied on *Halberstam* in analyzing conspiracy and aiding and abetting claims. *See Wahad v. FBI*, 813 F. Supp. 224, 233 (S.D.N.Y. 1993); *Rich-Taubman Assoc. v. Stamford Rest. Operating Co., Inc.*, 587 F. Supp. 875, 879 n.5 (S.D.N.Y. 1984); *Merrill Lynch Futures, Inc. v. Kelly*, 585 F. Supp. 1245, 1254 (S.D.N.Y. 1984).

in an overall illegal scheme or tortious plan at the time he provides the assistance; and (3) the defendant knowingly provides substantial assistance to the wrongdoer.  *Id*.

In its recent decision in *Boim v. Quranic Literary Inst.,* No. 00-C-2905, 2004 WL 2554446 (N.D. Ill. Nov. 10, 2004) (mem.) ("*Boim II*"),[23] the United States District Court for the Northern District of Illinois engaged in a thorough and insightful analysis of these standards of concerted action liability in the context of an action arising from a terrorist attack.  In *Boim II*, the parents of an American citizen assassinated in Israel by Hamas sought to hold several entities, including purported charities, liable for their son's death under the Anti-Terrorism Act and concerted action theories.  In support of their claims, the plaintiffs alleged that the defendants knowingly provided material support and resources to Hamas.

Consistent with the principles announced in *Boim I*, the court defined at the outset plaintiffs' burden in establishing defendants' liability. The court noted that "[t]o prove that the defendants provided material support to Hamas in violation of § 2333, the Boims would have to show that they knew about Hamas' illegal activity, that they desired to help those activities succeed, and that they engaged in some act of helping." 2004 WL 2554446 at *7. With respect to establishing that defendants conspired to provide material support to Hamas, the court held:

> The Boims need not show that the defendants knew about the attack that killed David Boim, or that they committed any specific acts in furtherance of that attack; rather, the Boims need only show that the defendants were involved in an agreement to accomplish an unlawful act and that the attack that killed David Boim was a reasonably foreseeable consequence of the conspiracy.

*Boim II*, 2004 WL 2554446 at *7 (citation omitted).  Moreover, the court explained that "the Boims [would not be] required to provide direct evidence of an agreement between the parties; 'circumstantial evidence may provide adequate proof of conspiracy.' "  *Id*. (quoting *Hoffman-*

---

[23]     This decision is also available on LEXIS.  *See Boim v. Quranic Literacy Inst.*, No. 00-C-2905, 2004 U.S. Dist. LEXIS 22745 (Nov. 10, 2004) (mem.).

*LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971)).  The *Boim II* court thus made clear that defendants who knowingly and intentionally provide *any* assistance to terrorist groups may be held liable for all of the terrorist acts the group commits.

The court in *Boim II* also considered, and rejected, another argument made by many of the defendants in this proceeding – that defendants cannot be liable for material support they provided years before the attack in question took place.  In *Boim II,* defendant Mohammed Salah argued that he was entitled to summary judgment because plaintiffs had not demonstrated that he provided any support after 1993, while David Boim was not killed until 1996. The *Boim II* court rejected this argument and, indeed, found it to be of "no moment" that Salah was actually in prison in Israel when David Boim was murdered.  *Id.* at *36.  The court reiterated:

> The Seventh Circuit did not say that, to impose liability under § 2333, the Boims have to link Mr. Salah or any of the other defendants specifically to the attack that killed David Boim; rather, the court held that, to impose liability for aiding and abetting – that is, providing material support to – a terrorist organization, the Boims need only show that the defendants knew of Hamas' illegal activities, that they desired to help those activities succeed, and that they engaged in some act of helping.

*Id.* (citing *Boim I*, 291 F.3d at 1028).  Because there was no factual dispute about any of those elements, the court granted summary judgment to plaintiffs even though none of Salah's "act[s] of helping" took place after 1993.  Moreover, the court noted, under principles of civil conspiracy, Salah could be liable for acts committed in furtherance of the conspiracy even if the acts were committed after he had ceased to be an active participant. *Id.*

*Boim II* is also significant in that the court imposed liability for assistance provided to Hamas indirectly, through intermediaries.  Although one defendant, a purported "charity" called the Holy Land Foundation for Relief and Development ("HLF"), was found to have provided material support directly to Hamas, others, such as the Islamic Association for Palestine ("IAP") and the American Muslim Society ("AMS"), were found to have provided support to HLF, with

knowledge that the support would flow through to Hamas.  The district court held that

"[a]lthough these fundraising and financing activities relate to HLF, and not Hamas, taken in the

context of the findings made . . . about HLF's established link to Hamas, *this is strong evidence

that IAP was supporting Hamas . . . ."  Boim II*, 2004 WL 2554446 at *23 (emphasis added).[24]

      Finally, the evidence described in the *Boim II* decision demonstrates that transactions that

appear on their face to be innocuous – including a stipend paid to one defendant purportedly for

his voluntary assistance in a project to translate the Quran, *see* 2004 WL 2554446 at *40-42, and

a "loan" made purportedly to enable a charity to purchase real estate, *see id.* at *43-44 – may,

with further discovery, be revealed to be sham transactions by which material support to

terrorism is concealed.[25]

      When read as a whole, and in light of the foregoing standards, the Federal Plaintiffs'

FAC plainly and adequately states claims against DMI under the ATA, pursuant to aiding and

abetting and conspiracy theories.  At the threshold, the FAC alleges that DMI has "aided and

abetted, conspired with, and provided material support and resources to, defendant al Qaida

and/or affiliated FTOs, associations, organizations or persons."[26]  FAC ¶ 66.  Further, the FAC

alleges that the Attack "was a direct, intended and foreseeable product of a larger conspiracy

among the defendants, to commit acts of international terrorism against the United States, its

nationals and allies."  FAC ¶ 72.  Describing the conspiracy, the FAC states that it "included the

---

[24]    Defendants before this Court have similarly argued that support they provided to al Qaeda through intermediaries such as "charities" cannot subject them to liability. The *Boim II* decision makes clear, however, that if the purported "charities" had established links to al Qaida, the Court may infer that those who supported the "charities" were supporting al Qaida.

[25]    It should be noted that the district court's decision in *Boim II* is a summary judgment ruling, with a fully developed factual record. In connection with the motions to dismiss filed by the various defendants in this MDL proceeding, plaintiffs cannot, of course, be held to the same evidentiary standard that plaintiffs in *Boim II* were able to meet. Nor do plaintiffs contend that they are entitled to judgment at this time. But *Boim II* demonstrates the factual scenarios that, when fully developed after discovery, may give rise to liability under the ATA. Only if there can be *no* such factual scenarios that could be proved consistent with the allegation in plaintiffs' complaints in these cases may plaintiffs be denied the opportunity to take discovery and prove their case. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

[26]    The RICO Statement also alleges that DMI raised funds for, provided funding to, and otherwise provided material support to al Qaida and the members of the conspiracy that brought about the Attack.  RICO at ¶ 6(b).

provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties." FAC ¶ 73. The FAC also sets forth the consequences of DMI's participation, in that "[a]bsent the material support and resources provided by the co-defendants, both directly and indirectly, al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th Attack." FAC ¶ 74.

Read collectively, the forgoing allegations of the FAC unambiguously allege that DMI knowingly and intentionally aided and abetted and conspired with al Qaida, in furtherance of the terrorist organization's calculated campaign to commit terrorist attacks against the United States, and that the Attack was a direct, intended and foreseeable product of that larger conspiracy. Moreover, the FAC describes in reasonable detail, the role that DMI played in al Qaida's conspiracy to commit terrorist attacks against the United States. These allegations satisfy the liberal pleading requirements necessary to state a claim under the ATA pursuant to conspiracy and aiding and abetting theories of tort liability.

### 2. Federal Plaintiffs Have Adequately Alleged Claims Under the ATA Based Upon DMI's Criminal Violations

The Federal Plaintiffs have also adequately pled claims against DMI under the ATA based upon DMI's violations of the ATA's criminal standards. The *Boim I* court concluded that the ATA's criminal provisions are a clear indication of Congress' intent to deem financial support of a terrorist organization to be itself an act of international terrorism. 291 F.3d at 1015. The FAC alleges that DMI participated in acts giving rise to liability under the ATA. Specifically, the Federal Plaintiffs have alleged that DMI was an active member of a network established to support terrorists, including al Qaida. *See* Part II., *supra*. Death and destruction in the United States was the well-publicized aim of al Qaida and its terrorist network. As is alleged in the

FAC, DMI was a part of a complex banking system through which extensive funding and support were provided to the al Qaida terrorist network.  *See id.*  In light of these allegations, the Federal Plaintiffs have stated a cause of action against DMI pursuant to the criminal provisions of the ATA.[27]

### G.   The Federal Plaintiffs Have Sufficiently Pled Claims Against DMI for Conspiracy and Aiding and Abetting

Defendant DMI further argues that the Federal Plaintiffs' allegations of conspiracy and aiding and abetting do not provide a basis for personal jurisdiction, and that the Federal Plaintiffs have failed to plead facts or circumstances to establish its participation in a civil conspiracy or to establish a claim for aiding and abetting.[28]  DMI Br. at 8-11 & 17-19.   For the reasons stated in relation to the discussion of the Federal Plaintiffs' ATA claim, see Part IV., F., 1., *supra*, the Federal Plaintiffs respectfully submit that the FAC adequately alleges claims under both theories of concerted action liability.

### H.   The Complaint States Valid Claims For Trespass, Wrongful Death, Survival, Assault and Battery, Intentional Infliction of Emotional Distress, Negligence and Punitive Damages

Defendant DMI further challenges the Federal Plaintiffs' claims under New York common law for trespass, wrongful death, survival, assault and battery, intentional and/or negligent infliction of emotional distress, negligence, and punitive damages.[29]  DMI Br. at 20-24. At this point in the litigation, the Federal Plaintiffs have extensively addressed and briefed

---

[27]       Defendant DMI also challenges the Federal Plaintiffs' claim under the Torture Victim Protection Act ("TVPA").  *See* Pub. L. 102-256, 106 Stat. 73 (1992) (reprinted at 28 U.S.C. § 1350 note).  After further review, the Federal Plaintiffs find that the TVPA is not a viable cause of action against DMI.

[28]       Although DMI argues against the Federal Plaintiffs' claims for conspiracy and aiding and abetting in its argument sections on personal jurisdiction and failure to state a claim, the Federal Plaintiffs address DMI's arguments at the same time.  The Federal Plaintiffs have taken this approach because both of DMI's arguments against conspiracy and aiding and abetting are essentially the same, *i.e.*, that the Federal Plaintiffs have failed to sufficiently state claims for conspiracy and aiding and abetting.

[29]       Given the number of lawsuits filed as a result of the September 11th Attack, and the consequent possibility that the *Federal Insurance* case could be transferred to a jurisdiction other than New York, the FAC sets forth several claims in separate counts, including punitive damages.  To the extent that these counts are not recognized as separate or independent theories under New York or federal common law, these counts should be liberally construed to modify and/or supplement other counts of the FAC.

common law arguments analogous to those put forth by DMI.  Rather than burdening the Court with a restatement of those same arguments herein, the Federal Plaintiffs incorporate those arguments by reference.[30]

## V.      <u>CONCLUSION</u>

For the reasons stated above, the Federal Plaintiffs respectfully request that the Motion to Dismiss filed by DMI be denied in all respects, with prejudice.

Respectfully submitted,

COZEN O'CONNOR

By:      _____/s/_____
        STEPHEN A. COZEN, ESQUIRE
        ELLIOTT R. FELDMAN, ESQUIRE
        SEAN P. CARTER, ESQUIRE
        MARK T. MULLEN, ESQUIRE
        1900 Market Street
        Philadelphia, PA  19103
        Telephone:     (215) 665-2000
        Facsimile:     (215) 665-2013

*Attorneys for the Federal Plaintiffs*

---

[30]      See Opposition to Islamic Investment Company of the Gulf at 20-25 (filed on 12/07/04); Opposition to Mar-Jac Poultry, Inc. at 20-23 (filed on 07/09/04).