UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**applicable to Saudi Joint Committee For Relief of Kosovo and Chechnya** |

*This document relates to:*     Federal Insurance Co. v. al Qaida
                                03 CV 06978 (RCC)


### RICO STATEMENT APPLICABLE TO
### SAUDI JOINT COMMITTEE FOR RELIEF
### OF KOSOVO AND CHECHNYA

Based on information currently available, and pursuant to the Case Management Order dated June 15, 2004, plaintiffs submit this RICO statement for defendant Saudi Joint Committee for Relief of Kosovo and Chechnya.

Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

1. The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and/or (d).

2. The names of the defendant to whom this RICO statement pertains is Saudi Joint Relief Committee for Relief of Kosovo and Chechnya. The alleged misconduct and basis for liability is set forth in Exhibit "A".

3. Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

4. The name of each victim and the manner in which each was injured is indicated on the chart attached hereto as Exhibit "B".

5. (a) <u>list of predicate acts and specific statutes violated</u>:

| | |
|---|---|
| conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal § 125.25(xi) |
| conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |

(b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| mid-1990s to 9/11/2001 | The Saudi Joint Committee for Relief of Kosovo and Chechnya (the "SJRC") | The SJRC conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, which conspiracy culminated in the Attack. |
| late 1990s to 9/11/2001 | The SJRC | The SJRC undertook the above-named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, Radical Muslim Terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied. |
| mid-1990s to 9/11/2001 | The SJRC | The SJRC agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts, *i.e.*, multiple |

2

|  |  | acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |
|---|---|---|

(c) not applicable

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscate their support of Radical Muslim Terrorism.

(g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of money laundering and tax evasion allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaida, which conspiracy culminated in the Attack.

6.

(a)     The enterprise (the "Enterprise" or "Radical Muslim Terrorism") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b)     The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Saudi Joint Relief Committee fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

    (c)    no.

    (d)    The SJRC is associated with the Enterprise.

    (e)    The SJRC is a member of the Enterprise, and is separate and distinct from the Enterprise.

    (f)    The SJRC intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by the SJRC is separate from the existence of Radical Muslim Terrorism, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by the SJRC furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9. The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by the SJRC, relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13. Radical Muslim Terrorism "employs" certain individuals, only a few of whose identities are known, including defendant Osama bin Ladin.

14. The history of the conspiracy behind Radical Muslim Terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including the Saudi Joint Relief Committee, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *zakat*, the mandatory charitable contributions required of all Muslims. Al Qaida also collected money from employees of corrupted charities.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like the SJRC. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including the SJRC. In order to identify nineteen individuals willing, able and competent to carry out the Attack, al Qaida needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by the SJRC. The SJRC, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. The SJRC also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out or for which they have reserved.

16. Plaintiffs' damages -- injuries, the loss of life and property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. Rather the plaintiffs' insureds' assignees were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," *i.e.*, terrorism, the culmination of which was the Attack.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff, as set forth in Exhibit "C".

18.

| **VI** | Torture Victim Protection Act, 28 U.S.C. § 1350 |
|---|---|
| **VIII** | RICO, 18 U.S.C. § 1962(c), 1962(d) |
| **X** | Anti-Terrorism Act, 18 U.S.C. § 2333 |

5

19. pendent state claims:

| I | Trespass |
|---|---|
| II | Wrongful Death |
| III | Survival |
| IV | Assault & Battery |
| V | Intentional and Negligent Infliction of Emotional Distress |
| VII | Conspiracy |
| IX | Aiding and Abetting |
| XI | Negligence |
| XII | Punitive Damages |

20. not applicable

EXHIBIT "A"

RICO STATEMENT

QUESTION # 2

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Saudi Joint Relief Committee ("SJRC") | The Saudi Joint Committee for Relief of Kosovo and Chechnya (SJRC) was formed by the Kingdom of Saudi Arabia in 1999, pursuant to Royal Order 7/B/1863, to coordinate, direct and supervise the ostensible relief efforts of several Saudi charitable organizations in Kosovo and Chechnya. The charities comprising the SJRC include the Muslim World League, International Islamic Relief Organization, Saudi Red Crescent Society, World Assembly of Muslim Youth, Al Haramain Foundation, and the Waqf Foundation. The constituent member charities of the SJRC serve as the operational arms of the SJRC in Chechnya and Kosovo, and operate under the SJRC's direction and control. At all times, Saudi Interior Minister Prince Naif bin Abdul Aziz headed the SJRC, and actively supervised and directed the organization's operations.

Between its formation in 1999 and 2001, the SJRC and constituent charities comprising the SJRC were deeply involved in supporting al Qaida operations in Kosovo and Chechnya, and in supporting the terrorist organization's global infrastructure. Between 1999 and 2001, the SJRC channeled more than $74,000,000 to al Qaida members and loyalists affiliated with the SJRC bureaus. In addition, the SJRC offices in Pristina, Kosovo, served as a cover for senior al Qaida operatives, including Adel Muhammad Sadi bin Kazam and Wa'el Hamza Julaidan, both of whom served as directors of the SJRC and are close associates of Osama bin Laden. Kazam and Julaidan, | 1962(c) 1962(d) |

7

| | and many other extremists, used the cover of employment with the SJRC to gain entry into Kosovo and Chechnya. After gaining entry into these conflict regions with the assistance of the SJRC and its constituent charities, these al Qaida members channeled charitable contributions to the al Qaida network, facilitated the transfer of physical assets to al Qaida members fighting alongside Chechen rebels, and actively recruited and trained new al Qaida members from the local Muslim population. This pattern of activity is typical of al Qaida's charity fronts. As Treasury Department General Counsel David Aufhauser explained in a November 29, 2001 letter to Swiss officials: <br><br> > Working in troubled areas such as Bosnia, Somalia, Sudan and various refugee camps, the putative "relief" organizations provide cover for individuals engaged in recruiting, organizing, and training terrorist cells. Their provision of humanitarian aid and educational services is done in concert with the terrorists to win the hearts and minds of the local people to whatever causes the terrorists espouse. When a region becomes more settled, such as Bosnia or Albania today, seemingly legitimate businesses replace charitable foundations as cover for continuing terrorist organizational activity. <br><br>In addition to the logistical and financial support of al Qaida, members of the SJRC staff have actively participated in the development and planning of terrorist attacks against American interests. In April of 2000, NATO forces raided SJRC offices in Kosovo, based on intelligence gathered by U.S. officials which indicated that employees of the ostensible charity were planning a terrorist attack on US and NATO headquarters in Pristina. | |
|---|---|---|