UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――x
                                              :
In re Terrorist Attacks on September 11, 2001  :   03 MD 1570 (RCC)
                                              :   ECF Case
                                              :
                                              :
――――――――――――――――――――――――x

This document relates to: *Federal Insurance Company, et al. v. Al Qaida, et al.*, 03 CV 6978 (RCC)


# REPLY MEMORANDUM OF LAW OF DEFENDANT SAUDI AMERICAN BANK IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS AGAINST IT

Henry Weisburg (HW 9820)
Brian H. Polovoy (BP 4723)
Daniel M. Segal (DS 2106)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM
    AGAINST SAUDI AMERICAN BANK ........................................................................... 2

        A.    Plaintiffs Do Not Plead Proximate Causation ............................................. 2

        B.    Plaintiffs' Claims Against Saudi American Bank Do Not Comply
            With The Pleading Requirements Of Rule 8 ............................................... 5

        C.    Plaintiffs Do Not State A Claim Against Saudi American Bank Under
            Any Of Plaintiffs' Specific Causes Of Action ............................................ 5

            1.    Plaintiffs' Federal Statutory Claims Must be Dismissed
                  Because They are Barred by Section 408(b)(1) of the ATSSSA
                  and, in any Event, Fail to State a Claim ........................................... 6

            2.    Plaintiffs' State Law Claims Fail to State a Claim .......................... 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ............................................3

*Atuahene v. Hartford*, 10 Fed. Appx. 33, 2001 WL 604902 (2d Cir. May 31, 2001) ...............5, 6

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002) ................................................4, 8

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374
    (2d Cir. 2001) .........................................................................................................................2

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ................................................................4

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................................................10

*Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918
    (2d Cir. 1998) .......................................................................................................................10

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ..........................................................2, 3

*Mason v. Am. Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003), *cert. denied*,
    124 S. Ct. 2163 (2004) ..........................................................................................................5

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989) ......................................................................9

*Reves v. Ernst & Young*, 113 S. Ct. 1163 (1993) ..........................................................................9

*Sosa v. Alvarez-Machain*, 124 S. Ct. 2739 (2004) ....................................................................2, 3

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) ............................................5

*Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992 (2002) ....................................................................5

**STATUTES AND OTHER AUTHORITIES**

Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* .......................................................................7, 8, 9

Air Transportation Safety and System Stabilization Act ("ATSSSA"), Pub. L. No. 107-
    42, 115 Stat. 230-242 (Sept. 22, 2001) (reprinted, as amended, at 49 U.S.C.A. §
    40101 note) ........................................................................................................................6, 7

Dep't of State Public Notice 1878, *Determination Sudan*,
    58 Fed. Reg. 52,523 (Oct. 8, 1993) .......................................................................................8

Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 ...............7, 9

*Staff Statement No. 15: Overview of the Enemy*, Nat'l Comm'n on Terrorist Attacks
    Upon the U.S. .........................................................................................................................8

Defendant Saudi American Bank respectfully submits this reply memorandum in further support of its motion to dismiss the claims asserted against it in plaintiffs' First Amended Complaint ("Complaint" or "FAC"). [03 MD 1570, Docket No. 410.] This memorandum replies to arguments made in the Federal Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Filed by Saudi American Bank ("Opp. Br."). [03 MD 1570, Docket No. 511.]

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief offers the Court a lengthy description of Osama bin Laden's activities in Sudan ten years ago. But that history is irrelevant for purposes of Saudi American Bank's motion to dismiss. Even accepting every one of plaintiffs' factual assertions as true, there is nothing in plaintiffs' opposition brief or their lawyer's affidavit that states a claim against Saudi American Bank. Put simply: even if Saudi American Bank – which was formed by and 20% owned by Citibank, N.A. – made loans to finance the construction of a road and an airport in Sudan in 1991 that somehow benefited Osama bin Laden, these loans would not, as a matter of law, be a *proximate cause* of the horrific attacks that took place here ten years later on September 11, 2001. Plaintiffs do not even attempt to respond to most of Saudi American Bank's arguments. Instead, they refer the Court to briefs they filed in response to motions submitted by *other* defendants that do not address any specific allegations against Saudi American Bank. Especially given the gravity of this matter, it is simply inexcusable for plaintiffs' counsel to name Saudi American Bank as a defendant where there are absolutely no well-pleaded factual allegations that state a claim against the bank.

# ARGUMENT

## PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST SAUDI AMERICAN BANK

### A. Plaintiffs Do Not Plead Proximate Causation

Nothing that Saudi American Bank is said to have done was remotely a proximate cause of the September 11, 2001 attacks. "Proximate cause is causation *substantial enough* and *close enough to the harm* to be recognized by law . . . ." *Sosa v. Alvarez-Machain*, 124 S. Ct. 2739, 2750 (2004) (emphasis added). It is an element of each of plaintiffs' claims. "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was *reasonably foreseeable or anticipated* as a natural consequence." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) (internal citations and quotation marks omitted) (emphasis added). "The requirement that a defendant's actions be the proximate cause of a plaintiff's harm represents a policy choice premised on recognition of the impracticality of asserting liability based on the almost infinite expanse of actions that are in some sense causally related to an injury. In marking that boundary, the Supreme Court has emphasized that a plaintiff cannot complain of harm so remotely caused by a defendant's actions that imposing legal liability would transgress our ideas of what justice demands, or of what is administratively possible and convenient." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001) (internal citations and quotation marks omitted).

Whether or not a complaint's allegations could establish that a defendant's conduct was the proximate cause of a plaintiff's harm is a matter for the court to decide on a Rule 12(b)(6) motion to dismiss. Indeed, the Second Circuit has routinely upheld Rule 12(b)(6)

dismissals where the complaint did not establish proximate cause. *See, e.g., Lerner*, 318 F.3d 113, *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994).

Here, plaintiffs allege that "[a]mong the projects that the al-Hijrah Construction firm performed for the Sudanese government were the construction of the Tahaddi Road linking Khartoum with the Port of Sudan, and the construction of a modern international airport near the Port of Sudan. FAC ¶ 379. Defendant [Saudi American Bank] financed these construction projects. FAC ¶ 367." (Opp. Br. at 8.) As best we can tell from the chronology sketched by plaintiffs, these loans were supposedly made in or about 1991. (*Id.* at 10; the *Ashton* complaint suggests 1993 (*Ashton* ¶ 551).) According to plaintiffs, Saudi American Bank "should be held accountable [for the attacks of September 11, 2001], because the construction projects that [Saudi American Bank] financed were essentially al Qaida's payment to Sudan for safe harbor [and the] financing for the construction projects in Sudan is a form of support which enabled al Qaida to cultivate its goal of terrorist acts against the U.S. while it resided in Sudan." (*Id.* at 9.)

It is unacceptable to argue that a bank is liable for terrorist activities committed by al Qaeda in 2001 because a decade earlier the bank provided a loan to a company now alleged to have been controlled by Osama bin Laden to build a road in Sudan. It is not enough that plaintiffs' counsel can dream up an argument. The alleged wrongdoing must be "***substantial enough*** and ***close enough to the harm***," *Sosa*, 124 S. Ct. at 2750, and be "a ***substantial factor*** in the sequence of responsible causation." *Lerner*, 318 F.3d at 123 (emphases added). Whether or not the alleged loans were a proximate cause in Sudan's determination not to evict Osama bin Laden is not relevant; the question is whether the alleged loans were a ***substantial factor*** and ***close enough to the harm*** that occurred 10 years later and that caused plaintiffs' economic injury, and whether Saudi American Bank should have "reasonably foreseen" that the September

3

11 attacks would follow. We respectfully submit that it is wrong to suggest that the injuries these insurers suffered as a result of the September 11, 2001 attacks were "reasonably foreseeable or anticipated as a natural consequence" of a loan that Saudi American Bank allegedly made in 1991 for the purpose of building a road and an airport. (Indeed, the September 11 attacks caused the total destruction of the headquarters of Solomon Smith Barney, another Citibank affiliate.) It is settled law that an allegation of funding *simpliciter* is not sufficient to show proximate cause. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1012 (7th Cir. 2002). If funding a terrorist organization does not meet the proximate cause standard, then certainly loaning money to a construction company that years later is alleged to be affiliated with a terrorist organization does not do so.

      The voluminous affirmation that plaintiffs' counsel submitted does nothing to bolster their argument. Indeed, the mere submission of this "evidence" tacitly acknowledges that the Complaint itself does not put Saudi American Bank on notice of the claims against it. Under settled law, the Court may not consider the various exhibits attached to the Affirmation of Sean P. Carter ("Carter Aff.") on a motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("district court errs when it considers affidavits and exhibits . . . or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss") (internal citations and quotation marks omitted). But even if these exhibits could be considered, they do not support plaintiffs' contention that they have met the Rule 8 pleading requirements (or go towards establishing proximate cause). Not one of the exhibits even ***mentions*** Saudi American Bank. Instead, they primarily outline the history of bin Laden and al Qaida. Moreover, as these reports were written well ***after*** Saudi American Bank is alleged to have made the loans at issue, there is no support for plaintiffs' suggestion that Saudi American

4

Bank was aware at the relevant time of Osama bin Laden's supposed *quid pro quo* with the Sudanese government.

### B. Plaintiffs' Claims Against Saudi American Bank Do Not Comply With The Pleading Requirements Of Rule 8

Plaintiffs do not refute Saudi American Bank's argument that the Complaint impermissibly lumps together multiple defendants without distinguishing factual allegations against each. (Mot. at 8-9); *Atuahene v. Hartford*, 10 Fed. Appx. 33, 34, 2001 WL 604902, at *1 (2d Cir. May 31, 2001). Unable to cite any case to support their position, plaintiffs instead argue that the general allegations in the Complaint "are necessary" and that there are some specific allegations against Saudi American Bank. (Opp. Br. at 19.) This misses the point. The "lumping" cases stand for the proposition that plaintiffs may not make allegations against "all defendants" and the like without differentiating what each defendant actually did.

We invite the Court to scrutinize the allegations against Saudi American Bank that are set forth in the Complaint. (FAC ¶ 365-375). These paragraphs simply do not come close to stating a claim against Saudi American Bank. Conclusory and embellished allegations do not satisfy Rule 8. *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003), *cert. denied*, 124 S. Ct. 2163 (2004). Both *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114-15 (D.C. Cir. 2000), and *Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992, 999 (2002) require fair notice of the plaintiffs' claims and the grounds on which those claims rest. Allegations that all defendants engaged in acts of terrorism and the like do not give a particular defendant in a 200+ defendant case any notice of the claims against it.

### C. Plaintiffs Do Not State A Claim Against Saudi American Bank Under Any Of Plaintiffs' Specific Causes Of Action

Plaintiffs entirely fail to respond to Saudi American Bank's arguments regarding the specific causes of action in the Complaint. Rather than confront these arguments, plaintiffs

refer the Court to briefs they submitted in response to motions to dismiss filed by *other* defendants.[1] These other briefs, of course, do not include any references to Saudi American Bank or the section of plaintiffs' Complaint that contains allegations against Saudi American Bank. Instead, these briefs refer to either specific allegations against *other* defendants or the general conclusory allegations against *all* defendants. By not even attempting to demonstrate how specific allegations against Saudi American Bank establish the elements of each of the causes of action, plaintiffs have effectively conceded that the section of the Complaint with specific "allegations" about Saudi American Bank does not state a claim. It is clear that plaintiffs' only hope is to impermissibly rely on the general allegations against all defendants, allegations which are not adequate to survive a motion to dismiss. *Atuahene*, 2001 WL 604902, at *1.

1. **Plaintiffs' Federal Statutory Claims Must be Dismissed Because They are Barred by Section 408(b)(1) of the ATSSSA and, in any Event, Fail to State a Claim**

The Air Transportation Safety and System Stabilization Act ("ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230-242 (Sept. 22, 2001) (reprinted, as amended, at 49 U.S.C.A. § 40101 note (West Supp. 2003)), establishes "a Federal cause of action for damages arising out of the hijacking and subsequent crashes" and mandates that "this cause of action shall be the *exclusive remedy for damages*" for such claims. ATSSSA § 408(b)(1). Because plaintiffs' damages arise out of the hijackings and subsequent crashes, plaintiffs cannot assert claims under federal statutes other than Section 408(b)(1) of the ATSSSA, and their federal statutory claims must be dismissed. That should be the end of the story.

---

[1] Plaintiffs refer the Court to the briefs they submitted in opposition to motions to dismiss filed by Mar-Jac Poultry, Inc. ("Mar-Jac Opp."), Saleh Abdullah Kamel and Al Baraka Investment and Development Corporation ("Al Baraka Opp."), Prince Adbullah al Faisal bin Abdulaziz al Saud, Mohammed bin Adbulrahman al Ariefy, and Alfaisaliah Group (a/k/a Faisal Group Holding Co.) ("Prince Abdullah Opp."), and Arab Bank PLC ("Arab Bank Opp.").

6

Plaintiffs make two arguments in an attempt to avoid the clear terms of the ATSSSA. First, plaintiffs argue that Section 405(c)(3)(B)(i) somehow affects the exclusive cause of action provision in Section 408(b)(1), despite the fact that there is no support for this contention either in the statute or the case law. Section 405 governs the Victims' Compensation Fund. The provision plaintiffs cite (although they incorrectly at times cite it as *408*, rather than *405*(c)(3)(B)(i)) prohibits any individual who receives compensation from the government through this fund from bringing a lawsuit for damages. Since one rationale behind the fund was to avoid litigation against (and possible bankruptcy of) the airline industry, recipients of fund proceeds could not also bring a lawsuit against the airlines. This same rationale did not apply for "knowing participants," and as such, fund recipients were free to collect proceeds from the fund and also pursue litigation against those responsible for the attacks. This has no bearing on or relationship to the "exclusive remedy for damages" provision in Section 408.

Plaintiffs' second argument is that in the absence of clear congressional intent, the Court should read Section 408 so as not to conflict with other statutes. Yet Congress could not have been clearer that this Federal cause of action is the "exclusive remedy for damages." ATSSSA § 408(b)(1). The case plaintiffs cite does not hold otherwise. As such, plaintiffs may not assert any other Federal causes of action.

Plaintiffs have dropped their claim that Saudi American Bank violated the Torture Victim Protection Act. (Opp. Br. at 14.) They are still pursuing their claims under the Anti-Terrorism Act ("ATA") and the RICO Act. But even if Section 408(b)(1) of the ATSSSA did not foreclose the ATA and RICO claims, those claims would fail as a matter of law. In order to state a cause of action under the ATA, plaintiffs must allege that Saudi American Bank had knowledge of and intent to further the terrorist actions that resulted in plaintiffs' injuries, and

plaintiffs must plead facts that would establish proximate cause. *Boim*, 291 F.3d at 1023 (7th Cir. 2002). Plaintiffs assert in their Opposition that "[w]hen Osama bin Laden relocated to Sudan in 1991, [Saudi American Bank] unquestionably knew that bin Laden was a terrorist and that it was supporting al Qaida by financing bin Laden's construction projects." (Opp. Br. at 3.) This preposterous statement is belied by the very exhibits plaintiffs submitted to support the charge. Exhibit 7 is the U.S. Department of State "Patterns of Global Terrorism" from April 1994. In the section of that document relating to Sudan, there is no mention of Osama bin Laden or al Qaeda. (Carter Aff. Ex. 7 at 5.) It is nonsensical to suggest that Saudi American Bank "unquestionably" had information at least three years before even the Department of State had such information. It likewise makes little sense to argue that somehow Saudi American Bank knew that Osama bin Laden was a terrorist when he had yet to be linked to any terrorist act and when Sudan had not yet been designated as a supporter of terrorism. *See generally Staff Statement No. 15: Overview of the Enemy*, Nat'l Comm'n on Terrorist Attacks Upon the U.S.; Dep't of State Public Notice 1878, *Determination Sudan*, 58 Fed. Reg. 52,523 (Oct. 8, 1993).

   Rather than address their need to plead knowledge, intent, and proximate cause under the ATA (a difficult proposition given the paucity of the allegations against Saudi American Bank), plaintiffs instead focus on the elements of conspiracy and aiding and abetting. (Mar-Jac Opp. at 8-9.) Other than the conclusory allegations against all defendants, the Complaint does not allege that Saudi American Bank is liable based on the elements of conspiracy or aiding and abetting. There are no allegations that Saudi American Bank made any agreement to participate in any unlawful act or was aware of any "overall illegal scheme." (*Id.*) Plaintiffs admit that they must allege that Saudi American Bank "provided *substantial*

8

assistance" yet do not even attempt to show if and how they have met this high standard. (*Id.* at 11 (emphasis added).) They have not.

Plaintiffs' RICO claims fare no better. Neither the Prince Abdullah Opposition nor the Arab Bank Opposition, both of which supposedly contain the plaintiffs' response to our RICO arguments, mention Saudi American Bank or respond to numerous Saudi American Bank arguments. Plaintiffs do not refute, for example, the argument that they have not made out the four elements of Section 1962(c) (Mot. at 16-17), that Saudi American Bank was not alleged to have participated in the operation or management of the enterprise as required by the Supreme Court (*see Reves v. Ernst & Young*, 113 S. Ct. 1163, 1170 (1993)), or that plaintiffs have not plead with particularity the predicate acts that sound in fraud as required by Rule 9(b). Instead, plaintiffs rehash their overview of "Radical Muslim Terrorism," as they have named the "enterprise" they claim includes all two hundred defendants. (Arab Bank Opp. at 14-15.)

Neither the Complaint nor the RICO Statement allege any specific acts by Saudi American Bank that would allow for RICO liability. The conclusory allegations that plaintiffs make against all defendants are not sufficient. *Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989) ("the plaintiffs' allegations must delineate among the defendants as to their participation or responsibilities in making the statements which are the subject of the suit" (internal quotation marks omitted)).

### 2. **Plaintiffs' State Law Claims Fail to State a Claim**

Plaintiffs' argument that they have adequately pled state law claims is notable for what it omits: namely, any reference to specific allegations against Saudi American Bank. Once again, plaintiffs refer the Court to briefs filed in response to motions submitted by other defendants that do not mention any allegations against Saudi American Bank. Plaintiffs' refrain in these briefs is more of the same: rather than argue that they have properly alleged each cause

9

of action against a specific defendant, they revert to their usual conclusory and generalized positions. It is irrelevant, for example, that the September 11 attacks included "intentional offensive, wrongful bodily contact" (Arab Bank Opp. at 19) or that an individual has a "duty to avoid committing acts of murder." (Prince Abdullah Opp. at 22.) What matters for the purposes of Saudi American Bank's motion is whether the plaintiffs have alleged that Saudi American Bank committed such contact or has such duty. They have not – and plaintiffs do not argue otherwise in their Opposition Brief.

Moreover, plaintiffs' state law claims are not rescued by their invocation of conspiracy and aiding and abetting. As shown above, plaintiffs have not alleged the required elements of either. Furthermore, under New York law, to show aiding and abetting liability, plaintiffs must allege actual knowledge, not merely constructive knowledge, of the wrong. *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *see also Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (aiding and abetting requires knowingly and *substantially* assisting the principal violation). Nowhere in the Complaint is there a well-pleaded allegation that Saudi American Bank had even constructive knowledge of any improper or unlawful activity, let alone actual knowledge of plans to commit terrorist attacks. There is no allegation that Saudi American Bank knew of the September 11 attacks, that Saudi American Bank had any desire to help those activities, or that Saudi American Bank did in fact help those activities. In short, there is absolutely no allegation that meets the required causation standard and no allegation that states a claim under any of the Complaint's causes of action.

## CONCLUSION

For the foregoing reasons and those set forth in our opening memorandum, plaintiffs' claims against Saudi American Bank should be dismissed.

Dated:  New York, New York
        December 15, 2004

Respectfully submitted,

SHEARMAN & STERLING LLP

By: _____
    Henry Weisburg (HW 9820)
    Brian H. Polovoy (BP 4723)
    Daniel M. Segal (DS 2106)

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

Attorneys for Defendant Saudi American Bank