UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Civil Action No.<br>03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

    Thomas E. Burnett, Sr., et al. v. Al Baraka
    Investment and Development Corp., et al., 03 CV 5738, 9849 (RCC)

REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS

CHADBOURNE & PARKE LLP
Kenneth A. Caruso
Marvin R. Lange
Jeffrey I. Wasserman

30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Viet D. Dinh
Pro Hac Vice
Brian A. Benczkowski
Christopher D. Thuma
Bancroft Associates PLLC
2121 Bancroft Place N.W.
Washington, DC 20008
(202) 234-0090

Attorneys for Defendant Yousef Jameel

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................i

I.   THE COURT LACKS PERSONAL JURISDICTION. ...................................................1

    A.   The Court Lacks Conspiracy Jurisdiction.............................................................1

    B.   The Court Lacks Jurisdiction Under Rule 4(k)(2) And The Due Process Clause...................................................................................................................2

        1.   Allegations About Bosnian "Golden Chain" Document And Satellite Phone ..................................................................................................3

            a.   The Affidavits Are Inadmissible....................................................4

            b.   The Affidavits Do Not Establish A Prima Facie Case..................4

        2.   Allegations About Charitable Contributions ...........................................7

II.   THE COMPLAINT FAILS TO STATE A CLAIM. ........................................................9

        1.   Civil Liability Is Barred Because The 9/11 Attacks Were An Act Of War ......................................................................................................9

        2.   The Complaint Does Not Permit An Inference Of Knowledge And Intent.......................................................................................................10

CONCLUSION..............................................................................................................................10

TABLE OF AUTHORITIES

Cases

Page

Ariel Maritime Group, Inc. v. Pellerin Milnor Corp.,
    1989 WL 31665 (S.D.N.Y. Mar. 29, 1989) .................................................................3

Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002) ........................................10

Cherry Communications, Inc. v. Coastal Tel Co., 906 F. Supp. 452 (N.D. Ill. 1995) ........3

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991) .......2

Copelco Capital, Inc. v. Gen. Consul of Bolivia, 940 F. Supp. 93 (S.D.N.Y. 1996) ..........6

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002) ..................................................................... 1-2

Gear, Inc. v. L.A. Gear Cal., Inc., 637 F. Supp. 1323 (S.D.N.Y. 1986) ..............................8

Hamdi v. Rumsfeld, 124 S.Ct. 2633 (2004) .................................................................... 2-3

Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998) ...................................................8

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) .....................................................2

Moran Pipe & Supply Co. v. Schwartz, 680 F. Supp. 1499 (E.D. Okl. 1988) ....................4

Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.,
    2004 WL 1620874 (S.D.N.Y. July 20, 2004) ............................................................3

NetKnowledge Technologies, L.L.C. v. Baron Capital V, Inc.,
    2003 WL 23201333 (N.D. Tex. July 24, 2003) .........................................................3

Pac-Tec, Inc. v. Amerace Corp., 903 F.2d 796 (Fed. Cir. 1990) ........................................6

Pittman v. Grayson, 149 F.3d 111 (2d Cir. 1998) ............................................................10

Precision Specialty Metals, Inc. v. United States,
    315 F.3d 1346 (Fed. Cir. 2003) ..................................................................................6

Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95 (E.D.N.Y. 2000) ......................................2

TABLE OF AUTHORITIES

CONTINUED

Page

In re South African Apartheid Litig., 2004 WL 2722204 (S.D.N.Y. Nov 29, 2004) ........10

Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216 (S.D.N.Y. 1987)................. 3, 6-7

Strong v. RG Indus., Inc., 691 F. Supp. 1017 (S.D. Miss. 1988) .......................................3

Travelers Cas. & Surety Co. v. Telstar Const. Co.,
252 F. Supp. 2d 917 (D. Ariz. 2003) ...............................................................................3

Federal Statutes

Fed. R. Civ. P. 4(k)(2) ..........................................................................................2

Fed. R. Evid. 803 ..........................................................................................4

Fed. R. Evid. 805 ..........................................................................................4

Fed. R. Evid. 806 ..........................................................................................4

18 U.S.C § 2331(4)(C)..........................................................................................9

18 U.S.C § 2336(a) ..........................................................................................9

Secondary Sources

Restatement (2d) Torts, § 876 (1979) ...................................................................10

After three attempts and more than 600 pages, plaintiffs have yet to show that Mr. Jameel harbors any animus toward the U.S., or why he would ally himself with terrorists who seek to harm the U.S. On the contrary, it is indisputable that for decades Mr. Jameel has supported American and Western institutions of unquestionable integrity.[1] Plaintiffs' self-styled "experts"

- rely on supposed "potential testimony" that was never given, much less cross-examined, and that is contradicted by actual testimony, available in the public record, which the "experts" do not bother to mention;

- use purported quotations without citing the source;

- cut off a supposedly critical quotation in mid-sentence, and then -- under oath -- make up a new ending for the sentence that completely changes its meaning.

I.  THE COURT LACKS PERSONAL JURISDICTION.

Plaintiffs drop all jurisdictional arguments except that Mr. Jameel (A) conspired with the 9/11 hijackers and (B) purposefully directed his activities at the U.S. by virtue of (1) his name appearing on the so-called "Golden Chain" document; (2) his supposed purchase of a satellite phone; and (3) his alleged charitable contributions. These arguments fail.

A.  The Court Lacks Conspiracy Jurisdiction

To establish jurisdiction over a nondomiciliary defendant on the basis of the New York acts of a co-conspirator, the plaintiff must (1) establish a prima facie case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor.

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 394 (S.D.N.Y. 2002). Here, as shown below, plaintiffs fail to make sufficient allegations of the first two elements. And to establish the fourth -- the requisite agency relationship -- they must show that

---

[1] Indeed, since Mr. Jameel filed his motion to dismiss, Cambridge University has honored him as a Companion to the Guild of Cambridge Benefactors. HRH The Duke of Edinburgh, Prince Philip, presided over the November 1, 2004, ceremony. See Caruso Reply Dec. Ex. A.

> (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirator[ ] was to the benefit of the out-of-state conspirator[ ]; and (c) the co-conspirator[ ] acting in New York acted 'at the direction or under the control' or 'at the request or on behalf of' the out-of-state defendant.

Id. at 394 (brackets in original).[2] Plaintiffs, however, do not and cannot allege that the 9/11 hijackers acted for Mr. Jameel's benefit, at his direction, under his control or at his request.[3]

B.   The Court Lacks Jurisdiction Under Rule 4(k)(2) And The Due Process Clause

Plaintiffs concede that this action does not arise out of Mr. Jameel's contacts with the U.S. Therefore, they must allege facts sufficient to support the inference that Mr. Jameel "expressly aimed" or "purposefully directed" his actions at the U.S., and that he could foresee being "haled into court" here.[4] Their failure to do so is fatal.

Plaintiffs cite no authority, and there is none, for their contention that personal jurisdiction "must be assessed in light of" the "horrific manner" of the 9/11 attacks. (PB 7.) The law of jurisdiction applies neutrally, regardless of the nature of the case or the "manner" of the tort. Defendants are entitled to the law as it exists, not as plaintiffs would like it. See Hamdi v. Rums-

---

[2] Plaintiffs misleadingly cite to only the portions of Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991), and Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95 (E.D.N.Y. 2000), that discuss a prima facie showing of conspiracy -- one, but only one, of the essential elements for jurisdiction. Chrysler Capital states further that a plaintiff "also must show a sufficient relationship between the defendant and the conspiracy to warrant the inference that the defendant was a member of the conspiracy," and uses the language of First Capital, quoted above, to define that additional essential element. 778 F. Supp. at 1268-69. Simon is the same. 86 F. Supp. 2d at 120.

[3] It is legally insufficient for plaintiffs to argue that the 9/11 attacks were "carried out on behalf of the extensive al Qaeda network" (Plaintiffs' Brief ["PB"] 16), rather than Mr. Jameel himself. Plaintiffs must establish jurisdiction over each defendant separately. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

[4] See Mr. Jameel's opening brief in 03cv5738 ("OB-NY") at 6 (citing cases). (Mr. Jameel's opening brief in 03cv9849 is referred to as "OB.") Plaintiffs misstate the law in contending that jurisdiction lies if Mr. Jameel "knew or should have known that providing such support would further acts of terrorism directed at the United States." (PB 9.) Jurisdiction turns on whether Mr. Jameel "expressly aimed" or "purposefully directed" his actions at the United States. (See OB-NY 6.) Whether he "should have known" some alleged fact -- a phrase transplanted from negligence law -- is irrelevant to personal jurisdiction analysis, as evidenced by plaintiffs' failure to cite any legal support.

2

feld, 124 S.Ct. 2633, 2648 (2004) ("It is during our most challenging and uncertain moments that our Nation's commitment to due process is most severely tested; and it is in those times that we must preserve our commitment at home to the principles for which we fight abroad.").[5]

Plaintiffs also erroneously urge the Court to "construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor." (PB 2.) Such deferential treatment applies only to admissible evidence. In assessing this motion, the Court does not consider hearsay or affidavits that are not based on first-hand, personal knowledge.[6]

1.     Allegations About Bosnian "Golden Chain" Document And Satellite Phone

In his motion papers, Mr. Jameel set forth the infirmity of plaintiffs' reliance on a document seized in Bosnia in 2002, which has inexplicably become something called the "Golden Chain." Mr. Jameel also showed how allegations that he purchased a satellite phone for al Qaeda did not withstand analysis.

Now, in an effort to salvage their case on both these points, plaintiffs submit the affidavits of Brisard and Kohlmann. After five pages without a single reference to Mr. Jameel, Brisard takes his best shot:

> Al Fadl said that the list "appeared to be members of a group referred to as the 'Golden Chain'". Al Fadl stated that the individuals mentioned in the list "provided Bin Laden and Al Qaeda with money on a regular basis," further stating that Bin Laden indicated

---

[5] Plaintiffs' reliance, PB 7-9, on cases where jurisdiction lies against foreign terrorists for torts against Americans abroad is misplaced. Those cases did not address the question presented here -- whether the plaintiffs have made a sufficient showing that the defendant was involved in the tort at all.

[6] See, e.g., Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co., 2004 WL 1620874 *2 n.3 (S.D.N.Y. July 20, 2004); Ariel Maritime Group, Inc. v. Pellerin Milnor Corp., 1989 WL 31665 *2 n.4 (S.D.N.Y. Mar. 29, 1989); Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1219 (S.D.N.Y. 1987); Travelers Cas. & Surety Co. v. Telstar Const. Co., 252 F. Supp. 2d 917, 923 (D. Ariz. 2003); NetKnowledge Technologies, L.L.C. v. Baron Capital V, Inc., 2003 WL 23201333 *3 (N.D. Tex. July 24, 2003); Cherry Communications, Inc. v. Coastal Tel Co., 906 F. Supp. 452, 454 (N.D. Ill. 1995); Strong v. RG Indus., Inc., 691 F. Supp. 1017, 1018-19 (S.D. Miss. 1988).

he "would never fight or attempt to change governments of any Gulf States because members of the Golden Chain reside in those states." Moreover, he specifically states that Youseff [sic] Jameel donated funds to Al Qaeda and a satellite phone. Al Fadl's potential testimony indicates that the Golden Chain list is a list of donors to Al Qaeda and not a list of individuals who provided financial support to Osama Bin Laden during the first Afghan war. (Brisard Aff. ¶ 7; see also Kohlmann Aff. ¶ 24.)

These hearsay affidavits, however, are nothing short of outrageous in their embellishment of, and inconsistency with, plaintiffs' prior statements; their contradiction by the public record, which the affiants ignore; their failure to cite anything to support even the most inflammatory charges; and their rewriting of a quote to change its meaning to fit plaintiffs' allegations.

    a.    <u>The Affidavits Are Inadmissible</u>

These affidavits are inadmissible hearsay. <u>See</u> note 6 <u>supra</u>. Al Fadl has not submitted an affidavit. No exception to the hearsay rule allows the Court to admit Al Fadl's declarations against Mr. Jameel through a hearsay declarant. Rule 803, Fed.R.Evid. At the very least, the affidavits should be excluded because they relate prohibited hearsay-within-hearsay, <u>see</u> Rule 805, Fed.R.Evid., without even identifying the declarants in the hearsay chain. Rule 806, Fed.R.Evid. Neither Brisard nor Kohlmann claims to have interviewed Al Fadl. Thus, assuming that the statements attributed to Al Fadl are not fabricated, Brisard and Kohlmann necessarily heard the statements from some unidentified declarant -- or through a chain of unidentified declarants -- who heard Al Fadl and told Brisard and/or Kohlmann and/or others along the chain. The Court cannot consider such hearsay. <u>Moran Pipe & Supply Co</u>. v. <u>Schwartz</u>, 680 F. Supp. 1499, 1503 (E.D. Okl. 1988).

    b.    <u>The Affidavits Do Not Establish A Prima Facie Case</u>

In any event, even if admissible, the affidavits do not establish a prima facie case for jurisdiction. First, the affiants provide no citations for any of the purported quotations and attributions. It is improper to quote what someone supposedly said without attributing a source. It is

4

improper to attribute a statement to a witness without identifying where the statement can be found.  The intentional omission of such information allows, if not requires, the Court to disregard these affidavits, which, for all that appears, are fabricated.

Second, the affidavits are an embellishment of, and are inconsistent with, plaintiffs' prior statements.  Plaintiffs previously averred that Madani Al Tayyib, "a treasurer for al Qaeda[,]" told Al Fadl that "Defendant Jameel donated funding via the Golden Chain to al Qaeda."  (MDS ¶ 19.)  Now, in a not-so-subtle effort to eliminate a layer of hearsay, Brisard and Kohlmann have excised Al Tayyib and transformed Al Fadl into an "eyewitness."  (PB 10-11.)

Third, the affidavits are contradicted by the public record.  Brisard states that Al Fadl "specifically states that Youseff [sic] Jameel donated funds to Al Qaeda and a satellite phone." (Brisard Aff. ¶ 7.)  See also MDS ¶ 19.  But in fact, Al Fadl has testified that Bin Laden himself bought the phone.  Al Fadl did not mention Mr. Jameel at all.

> Q.  Apparently Usama Bin Laden had a satellite phone?
> A.  Yes.
> Q.  A very expensive phone from Germany?
> A.  Yeah, I remember he buy some equipment from Germany.

United States v. El Hage, No. 98cr1023 (S.D.N.Y.), Feb. 13, 2001, pp. 454-55.  (Ex. B.)

Fourth, the affidavits include a patent fabrication.  Kohlmann refers to "Exhibit 105" to the Arnaout Proffer, a transcript of a videotape that Kohlmann does not actually have.  See Kohlmann Aff. ¶ 18 ("[T]he U.S. Attorney sent exhibits 5-103 of the 247 exhibits to the Arnaout Proffer.").  According to Kohlmann, "During the video, 'Arnaout, Hekmatyar and others assemble a satellite telephone provided' to Arnaout through the financial resources of a prominent member of the 'Golden Chain.'"  (Kohlmann Aff. ¶ 25.)  The internally quoted language, however, is only part of a sentence from the Arnaout Proffer.  The full sentence reads: "Shortly after the prayers, defendant Arnaout, Hekmatyar and others assemble a satellite telephone provided by

5

defendant Arnaout and his companion." (Kohlmann Aff. Ex. 5, p. 43) (emphasis added). The part that Kohlmann drops makes clear that the satellite phone had nothing to do with any so-called Golden Chain. Kohlmann changed the quote and its meaning to serve his purpose.[7]

Fifth, the affidavits do not advance the probative value of the Bosnian list beyond what the U.S. government alleged it to be -- a handwritten, draft list of donors to the mujahideen, our allies at the time. (See id. at 27.) The document makes no case against Mr. Jameel if, as Brisard previously accepted, it was written in 1988. So plaintiffs try to change the dates. Brisard conveniently states, "Al Fadl's statements concerning the contributions of the members of the Golden Chain extend into the early to mid 1990s long after the conclusion of the war in Afghanistan and the formation of Al Qaeda." (Brisard Aff. ¶ 8.) Kohlmann repeats the same. (Kohlmann Aff. ¶ 28.) Thus, plaintiffs now contend that "Al Fadl's potential testimony indicates that the Golden Chain is a list of donors to Al Qaeda," not to the mujahideen. (PB 11.)

These conclusory statements, however, are unsupported by any cited source, are based on "potential testimony," as if there were any such thing, and include meaningless characterization of what the "potential testimony" "indicates" or "extends into." Either Al Fadl said these things or he didn't. If he said them, Brisard and Kohlmann must state where and when. The requirement that plaintiffs make a prima facie case would be a dead letter if the Court accepts as true whatever unsupported conclusions or characterizations a plaintiff's paid investigator is willing to make. Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1219 (S.D.N.Y. 1987) (rejecting

---

[7] Such doctoring of quotations is sanctionable. See, e.g., Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346 (Fed. Cir. 2003); Pac-Tec, Inc. v. Amerace Corp., 903 F.2d 796 (Fed. Cir. 1990); Copelco Capital, Inc. v. Gen. Consul of Bolivia, 940 F. Supp. 93, 95 (S.D.N.Y. 1996).

affidavit that "lacks a sufficient degree of detail, is entirely hearsay, and puts forth legal conclusions rather than competent facts").[8]

### 2. Allegations About Charitable Contributions

Plaintiffs make no new allegations that Mr. Jameel knew, at the time of any purported contribution, that (a) the charity was involved in terrorism, was a front for al Qaeda or would pass money on to terrorists, and (b) that al Qaeda intended to attack the U.S. Rather, they rehash the MDS and recite a long list of paragraphs from the TAC (PB 12), which -- no matter how many times plaintiffs repeat them -- still do not even mention Mr. Jameel. Plaintiffs have alleged

---

[8] This flouting of basic rules of research, citation, and evidence should come as no surprise. The public record is replete with examples of Brisard's prior misconduct and misstatements. For example, (1) Brisard once claimed that he was "commissioned by the President of the Security Council of the United Nations to prepare a report on the financing of terrorism[.]" Witness Statement of Jean-Charles Brisard (May 21, 2003), in Bin Mahfouz v. Beaton, UK HCJ No.HC 03X00518, ¶ 2; Plaintiffs' Consolidated Memorandum of Law in Opposition to Sultan bin Abdulaziz al-Saud's Motion to Dismiss Certain Consolidated Complaints, at 6 (collectively, Ex. C). The President of the Security Council, however, disavowed Brisard's "deceitful" and "mislead[ing]" statements. Letter from Alfonso Valdivieso to Kendall Freeman, March 12, 2004, available at http://www.binmahfouz.info/pdf/faqs_5_jsb_12march.pdf. (Ex. D.) (2) In August 2004, the High Court of Justice of England, entering a default judgment (along with order, Ex. E), explicitly found that Brisard's accusations that Khalid Salim Bin Mahfouz participated in the financing of Al Qaeda were false and defamatory. (3) While assisting Switzerland in a criminal investigation, Brisard allegedly transmitted confidential documents to American counsel for plaintiffs in this case. The Swiss authorities thereafter "re-nounced" the "mandate" given to Brisard, demanded the return of all investigative materials, and ap-pointed a special prosecutor to investigate Brisard's hiring and conduct. Judgment of 16 September 2004, Appeals Chamber, Federal Criminal Court, BK S 094/04 at 7-8 and articles from 24 Heures and Le Temps (collectively, Ex. F).

Likewise, Kohlmann's liberties with the truth transcend blatant alteration of quotes. He swears, "I have served as an approved expert witness on behalf of federal prosecutors in various terrorism cases, including most recently before Judge Leonie Brinkema in United States v. Masoud Khan. . . ." (Kohlmann Aff. ¶ 3.) In fact, Kohlmann did not testify as an expert. The government offered, but then withdrew, Kohlmann as an expert. He testified as a fact witness, limited "to the things that he personally did and that he personally saw." United States v. Khan, Crim. No. 03-296-A (E.D.Va.), Feb. 13, 2004, p. 1148. (Ex. G.) A similar restriction here would exclude his entire affidavit.

7

no facts showing how or why he supposedly obtained the requisite knowledge at the relevant time. These allegations still fail.[9]

Plaintiffs often ignore critical issues of timing entirely. For example, they highlight TAC page 207, quoting the statements about "war" between al Qaeda and the U.S. But according to plaintiffs themselves (id.), the document they quote is a "manifesto" that was "recently" (after 9/11) "turned over by a captured al Qaeda member . . . ." They never say when the "manifesto" was written or published -- before or after any alleged contributions -- or how or why Mr. Jameel would have known about it. Such omission betrays plaintiffs' failure to focus on, much less carry, their burden. No one disputes that al Qaeda targeted the U.S. at some point. The dispute concerns the supposed link between al Qaeda and Mr. Jameel, which depends on what Mr. Jameel knew and when he knew it.

The following timeline illustrates the critical point that plaintiffs ignore:[10]

| U.S. Formally Supports Mujahideen in Afghanistan | 1988 | 1991 | 1996 | 1998 | 1999 | 2001 | Designation of Charities and Publication of Al Qaeda Information |
|---|---|---|---|---|---|---|---|
| | Bosnian "Golden Chain" List | U.S. Ends Mujahideen Support | Bin Laden Fatwa | U.S. Indicts Bin Laden | U.S. Designates Al Qaeda; Bin Laden Authorizes 9/11 Plot | 9/11 Attacks | |

Plaintiffs rely on information discovered and publicized only after the 9/11 attacks without ex-laining how Mr. Jameel would have known about such information beforehand. Bin Laden's

---

[9] Plaintiffs' request for "leave to conduct discovery to further determine the extent of Jameel's contacts with the United States" (PB 16 n.3), flouts precedent. Jurisdictional discovery is inappropriate where, as here, plaintiffs have not alleged a prima facie case of personal jurisdiction. Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2d Cir. 1998). Jurisdictional discovery is not a vehicle for plaintiffs "to engage in an unfounded fishing expedition for jurisdictional facts[.]" Gear, Inc. v. L.A. Gear Cal., Inc., 637 F. Supp. 1323, 1328 (S.D.N.Y. 1986).

[10] To assist the Court with the time sequence, a more detailed chronology is annexed as Ex. H.

8

anti-American animus surfaced publicly, at the earliest, in 1996, when he issued a fatwa denouncing the U.S. presence in the Persian Gulf. Indeed, the U.S. government has affirmed that Bin Laden's pre-1996 "military action" against the U.S. was "covert." Affirmation of Patrick J. Fitzgerald ("Fitzgerald Aff."), U.S. v. El Hage., 98cr1023 (S.D.N.Y. Dec. 30, 1999) at ¶ 12 (Ex. I). It was not until 1999 that the U.S. designated al Qaeda as a terrorist organization. It is illogical, and irresponsible, to relate post-2001 (or even post-1996) knowledge back to 1988, when the U.S. and Bin Laden were allies.

II.     THE COMPLAINT FAILS TO STATE A CLAIM.

   1.     Civil Liability Is Barred Because The 9/11 Attacks Were An Act Of War

Plaintiffs concede -- as they must -- that al Qaeda is a "military force." (See OB 11 n.20.) Indeed, Kohlmann quotes documents describing al Qaeda as a "'new military group.'" (Kohlmann Aff. ¶ 20; see also Fitzgerald Aff. ¶¶ 12, 15.) Thus, the only question is whether the 9/11 attacks were part of "armed conflict between military forces." The answer is yes.

Plaintiffs cannot have it both ways. When it suits them, they characterize the 9/11 attacks as armed conflict. (See OB 12; see also TAC, pp. 201, 209, 213, 217; id. at 230-31 ("war against terrorism"); id. p. 215 ("war against the West"); id. pp. 383-84 (citing international conventions regulating "war" and "armed conflict").) They trumpet al Qaeda's declarations of war against America. (E.g., TAC ¶ 315.) Indeed, page 12 of their brief repeats that "al Qaeda . . . proclaim[ed] that 'America is a state at war with us' . . . ." Yet by page 18, the 9/11 attacks have lost their status as acts of war, contrary to official statements from the U.S. government. (OB 12-13.)

There is no merit to the argument that the 9/11 attacks were not "between" military forces. The terrorists attacked the Pentagon and they killed military personnel. In any event, §§ 2336(a) and 2331(4)(C) do not require that each specific act in an ongoing war be "between" military forces. It is enough that the 9/11 attacks were one battle "in the course of . . . armed

9

conflict between military forces," which began in 1996, when, according to plaintiffs, al Qaeda declared war on the U.S. (TAC, ¶¶ 575, 581.) Al Qaeda bombed our embassies in 1998; U.S. military forces attacked al Qaeda camps in response; al Qaeda attacked the U.S.S. Cole in 2000. Then al Qaeda attacked again on 9/11.

### 2. The Complaint Does Not Permit An Inference Of Knowledge And Intent

Plaintiffs' failure to allege facts sufficient to permit an inference that Mr. Jameel expressly aimed or purposely directed any activities at the U.S., as demonstrated above, also defeats their claim that Mr. Jameel knowingly and intentionally violated the ATA. Plaintiffs now argue for a lesser burden, using the language of negligence to contend that Mr. Jameel "knew or should have known that al Qaeda was preparing to engage in some kind of terrorist activity." (PB 20, 22.) That, however, misstates the law. Even assuming that the ATA imposes accessorial liability -- but see OB 14-15; In re South African Apartheid Litig., 2004 WL 2722204 *7-9 (S.D.N.Y. Nov 29, 2004) -- a plaintiff must show that a defendant acted knowingly and intentionally, not negligently. Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1020-21 (7th Cir. 2002); Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998); Restatement (2d) Torts, § 876 (1979).

## CONCLUSION

Mr. Jameel did not and does not support terrorism in any form. Plaintiffs do not and cannot allege facts that provide the slightest basis for a motive or reason why Mr. Jameel would ally himself with the 9/11 terrorists, or would intend to cause any harm to the U.S. Plaintiffs conjure up inadmissible, improper and unreliable affidavits. They fail to show that Mr. Jameel, any more than the thousands of unwitting donors, knew that any alleged contribution would be misused. This indiscriminate use of the judicial process should end, and the complaint should be dismissed.

Dated: New York, New York
December 17, 2004

                CHADBOURNE & PARKE LLP

                By: /s/ Kenneth A. Caruso
                    Kenneth A. Caruso (KC-7769)
                    A Member of the Firm
                    30 Rockefeller Plaza
                    New York, New York 10112
                    (212) 408-5100

                By: /s/ Viet D. Dinh
                    Viet D. Dinh (VD-1388)
                    Pro Hac Vice
                    Bancroft Associates PLLC
                    2121 Bancroft Place N.W.
                    Washington, DC 20008
                    (202) 234-0090

                Attorneys for Defendant Yousef Jameel

Of Counsel:
    Kenneth A. Caruso
    Marvin R. Lange
    Jeffrey I. Wasserman

    Viet D. Dinh
    Brian A. Benczkowski
    Christopher D. Thuma

NY3 - 371945.03