UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
IN RE TERRORIST ATTACKS ON                      :
SEPTEMBER 11, 2001                              :    03 MD 1570 (RCC)
                                                :    ECF Case
------------------------------------------------------------x
:
**FEDERAL INSURANCE CO., et al.,**              :
                                                :
          Plaintiffs,                           :    03 CV 6978 (RCC)
                                                :    ECF Case
     v.                                         :
                                                :
**AL QAIDA, et al.,**                           :
                                                :
          Defendants.                           :
                                                :
------------------------------------------------------------x

<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANT ISLAMIC INVESTMENT COMPANY OF THE GULF (SHARJAH)</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
 *Islamic Investment Company of the Gulf (Sharjah)*

**TABLE OF CONTENTS**

Page

I. PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER IICG. ...................................................................................................1

II. PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST IICG. ............6

    A.    Plaintiffs' Claims Fail To Satisfy The Pleading Requirements of Rule 8. ..............6

    B.    Plaintiffs Fail To Plead Proximate Causation As To IICG. ....................................6

    C.    Plaintiffs Do Not State A Claim Against IICG Under Any Of Their Twelve Causes Of Action. .......................................................................................8

        1.    Plaintiffs Have No Standing Under RICO And, In The Alternative, Have Failed To Sufficiently Plead A RICO Claim -- Count VIII. ..............8

        2.    Plaintiffs Have Failed To Sufficiently Plead A Claim Under The Anti-Terrorism Act ("ATA") – Count X. .....................................................9

        3.    Plaintiffs' State Law Claims Fail to State A Claim. ..................................10

CONCLUSION..............................................................................................................................11

**PRELIMINARY STATEMENT**

Defendant Islamic Investment Company of the Gulf (Sharjah) ("IICG") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the claims against it in the above-captioned action. For all the following reasons and those set forth in IICG's initial Memorandum, that motion should be granted in all respects.

**I.
PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER IICG.**

Plaintiffs here argue that personal jurisdiction over IICG may be had pursuant to New York's long-arm statute (relying upon a theory of specific personal jurisdiction, and abandoning any attempt to establish general personal jurisdiction over IICG). See Pl. Mem., at 7-10. In so doing, plaintiffs rely upon the position that IICG's alleged participation in a conspiracy has brought it within the scope of New York's long-arm statute. See id. at 7-10, n.1; N.Y.C.P.L.R. § 302(a)(2) (McKinney's 2001). However, plaintiffs entirely ignore the gravamen of IICG's initial pleading: that their allegations regarding IICG do not even remotely meet the constitutional due process standard for the exercise of specific personal jurisdiction based upon a theory of conspiracy.

As IICG's initial Memorandum detailed, plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage plaintiffs' failed assertion of personal jurisdiction over IICG. "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ." Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975); see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 793 (2d Cir. 1999) (same). "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States." Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added); see also Singer v. Bell, 585 F.Supp. 300, 303 (S.D.N.Y. 1984). First, "[t]o

establish a *prima facie* case for conspiracy under New York law, a plaintiff must properly allege the primary tort and the following four elements: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury." Laborers Local 17, 26 F.Supp.2d at 602. Second, plaintiffs must allege specific facts connecting IICG to the conspiracy and specific facts connecting IICG to the in-state actors. In other words, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." Id. at 602; see also Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction over a non-resident conspirator, a plaintiff must show that the in-state actor acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal"). In short, while plaintiffs are not required "to set forth every wrongful act" of a defendant, see Pl. Mem., at 6, they are required to allege specific facts that, if proven out, would be sufficient to establish that defendant's active, intentional participation in a tortious conspiracy.

As plaintiffs' own submission makes clear, plaintiffs have done none of the above. Instead of attempting to defend the sufficiency of their allegations of conspiracy regarding IICG, plaintiffs desultorily and conclusorily assert -- in a footnote -- that "[t]he Federal Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation." See Pl. Mem., at 9 n.1.[1] IICG encourages the Court to give this argument "the same

---

[1] In support of this assertion, plaintiffs cite to In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); plaintiffs, however, do not apprise the Court of the Second Circuit's statement therein that "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, *must include an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant*," see id. at 206, or of the fact that the Court in In re Magnetic Audiotape pointed out numerous specific facts, regarding specific transactions,

footnoted shrift as did the [plaintiffs]. A 'passing reference' in a brief does not suffice to establish a legal argument." <u>Kunec v. Brea Redevelopment Agency</u>, 55 Cal.App.4th 511, 526 n. 9, 64 Cal. Rptr.2d 143, 151 n. 9 (Ct. App. 4th Div. 1997). As IICG's initial Memorandum sets forth in great detail, plaintiffs' bald, unsupported assertion of the merit of their allegations is flatly untrue. In the Complaint, plaintiffs conclusorily assert that all defendants were co-conspirators, <u>see</u> FAC ¶ 66, without any supporting factual allegations as to IICG. And while plaintiffs allege that the conspiracy to carry out the September 11 attack required the material support of the co-defendants, <u>see</u> FAC ¶¶ 73-74, plaintiffs entirely fail to identify any in-state actor who acted for the benefit of IICG, or to allege facts showing that IICG exercised control over any such actor. Thus, plaintiffs have not alleged facts sufficient to show that IICG entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of IICG; or that that IICG exercised control over any such actor. Nor have plaintiffs alleged any specific wrongful act by IICG, any agreement by IICG to enter into a conspiracy or any communications by IICG personnel that could be read to imply such an agreement.[2] In sum, plaintiffs have alleged nothing at all to connect IICG to the September 11 attack or to the United States.[3]

---

meetings, and corporate control factors, that plaintiffs in that case had alleged. As the parties' submissions make clear, plaintiffs here have made no such specific allegations of fact as to IICG. Plaintiffs also cite to <u>Davis v. Barrett Day Sec., Inc.</u>, 1995 U.S.Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995) -- a decade-old, unpublished decision from the Middle District of North Carolina -- yet even <u>Davis</u> notes that "a bare allegation of conspiracy between a defendant and a person over which the court has personal jurisdiction is insufficient to allow the court to exercise personal jurisdiction over the defendant," <u>see id</u>. at *12, and recites numerous specific factual allegations made in that case regarding particular agreements and transactions, of the sort that plaintiffs here have been unable to make as to IICG.

[2] Plaintiffs also apparently assert, opaquely and without elaboration, that IICG is subject to personal jurisdiction pursuant to New York's long-arm statute as an aider and abettor of the primary tortfeasors responsible for the September 11 attack. <u>See</u> Pl. Mem., at 8 ("the conduct of IICG constitutes both forms of concerted-action liability under New York law as set forth in the allegations of the Complaint and, as such, connects it with the subject transaction . . . and exposes it to joint and several liability"). In so doing, plaintiffs misrepresent the actual requirements of <u>Pittman v. Grayson</u>, 149 F.3d 111, 123 (2d Cir. 1998), which requires not only an allegation of fact sufficient to show substantial assistance -- which plaintiffs have not made as to IICG -- but also an allegation of fact showing that defendant knew the wrongful nature of the primary tortfeasor's conduct -- an allegation which plaintiffs do not even claim to have made as to IICG. <u>Cf</u>. Pl. Mem., at 8 <u>with</u> <u>Pittman</u>, 149 F.3d at 122-3, <u>and</u> Def. Mem. Parts I.B. and

In a final attempt to salvage personal jurisdiction over IICG, plaintiffs essay two other idiosyncratic arguments: first, that personal jurisdiction over IICG is supported by statements in the terrorism cases of Rein v. Socialist People's Libyan Arab Jamahirya, 995 F.Supp. 325 (E.D.N.Y. 1998) and Pugh v. Socialist People's Libyan Arab Jamahirya, 290 F.Supp.2d 54 (D.D.C. 2003); and second, that constitutional due process limitations on the Court's exercise of personal jurisdiction have been abrogated by two disfavored decisions from the Eastern District of New York, Simon v. Phillip Morris, Inc., 86 F.Supp.2d 95 (E.D.N.Y. 2000), and In re DES Cases, 789 F.Supp. 552 (E.D.N.Y. 1992).

Plaintiffs cite Rein and Pugh in an attempt to import the due process standards of the Foreign Sovereign Immunities Act ("FSIA") to cases brought under the Anti-Terrorism Act ("ATA"). See Pl. Mem., at 9-10. The District Court for the District of Columbia, however, when recently presented with this exact question, held that "the differences between the ATA and the FSIA are too great for their common focus on antiterrorism to allow cross-pollination on this issue" of personal jurisdiction. Biton v. Palestinian Interim Self-Government, 310 F.Supp.2d 172, 178 (D.D.C. 2004); see also Estates of Ungar v. The Palestinian Authority, 153 F.Supp.2d 76, 95 (D.R.I. 2001) ("this Court declines plaintiffs' invitation to extend the due process analysis applied by the district courts under the state-sponsored terrorist exception to the FSIA to the case currently before the Court" brought under the ATA). In both Biton and Ungar, the courts, applying traditional "minimum contacts" analysis, dismissed the claims against the individual defendants for lack of personal jurisdiction. Biton, 310 F.Supp.2d at 178-79; Ungar, 153 F.Supp.2d at 95. More

---

II.B.3, at 10-11, 18-19. Thus plaintiffs' desultory invocation of personal jurisdiction based upon a theory of aiding and abetting fares no better than their theory of conspiracy, and plaintiffs' claims against IICG are due to be dismissed for lack of personal jurisdiction.

[3] Because New York's long-arm statute is not intended to reach to the full limits of personal jurisdiction allowed under the Due Process Clause, see Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust, Ltd., 62 N.Y.2d 65, 67-69, 476 N.Y.S.2d 64, 67 (1984), plaintiffs' conclusory, boilerplate allegations fail to satisfy the stricter requirements of that statute, independently of their failure to satisfy the requirements of due process. See, e.g., Cornell v. Assicurazioni Generali S.p.A.Consolidated, 2000 WL 284222 (S.D.N.Y.), at *5-6.

importantly, Pugh and Rein simply do not address the fundamental issue presented here -- whether the plaintiffs have alleged sufficient facts to connect IICG to the United States or to the attacks of September 11. As discussed throughout, Plaintiffs have not done so.

Similarly, plaintiffs cite Simon and In re DES, for the ambitious proposition that in certain mass tort class actions, a Court may do away with the Constitutionally-required, due process minimum contacts test, and instead seek to exercise personal jurisdiction over a non-resident defendant based upon a loosely-drawn 'governmental interest' test. In at least one of the two cases, however, see Simon, 86 F.Supp.2d at 132-33, the District Court explicitly found that the defendant *did* have minimum contacts with the forum, rendering its previous discussion of a 'modified due process standard' a dictum. To the extent that those two cases do stand for the proposition that the minimum contacts test may be abandoned, those decisions run directly contrary to long-standing, controlling precedent. See, e.g., International Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945) (Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts"); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (same). And indeed, the Second Circuit has implicitly called into question the 'modified due process' standard suggested by In re DES. See In re DES Litig., 7 F.3d 20, 24-25 (2d Cir. 1993) ("[W]hether or not other trial judges find Judge Weinstein's opinion a persuasive precedent, they are not bound to apply it in any subsequent litigation" for collateral estoppel purposes). For all the foregoing reasons, plaintiffs have completely failed to make out a *prima facie* case for personal jurisdiction over IICG.[4] Plaintiffs' claims against IICG. therefore should be dismissed in their entirety.

---

[4] As also set forth in IICG's initial Memorandum, plaintiffs have alleged no facts, and can tender no argument, that their complete failure to make out a *prima facie* case for jurisdiction could be remedied by limited jurisdictional discovery. See, e.g., Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y.) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

## II.
## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST IICG.

### A.     Plaintiffs' Claims Fail To Satisfy The Pleading Requirements of Rule 8.

Plaintiffs do not dispute IICG's argument, see Def. Mem. at 12-13, that the Complaint impermissibly lumps over 200 defendants together without providing specific facts distinguishing IICG's supposed conduct.  See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000); Atuahene v. Hartford, 10 Fed. Appx. 33, 34, 2001 WL 604902, at *1 (2d Cir. May 31, 2001). Instead, the plaintiffs rely upon Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), see Pl. Mem. at 5; Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII claims such as the claims brought therein. Twombly v. Bell Atlantic Corp., 313 F.Supp.2d 174, 180 (S.D.N.Y. 2003).  The court in Twombly explained that a plaintiff's theory in Title VII cases is "fairly self-evident" so that "defendants will be apprised of the basic facts, and will know how to defend the action." Id. at 181.  In contrast (and particularly applicable here), a plaintiff's conspiracy theory "is not evident from a conclusory allegation of conspiracy, and there is simply no way to defend against such a claim without having some idea of how and why the defendants are alleged to have conspired." Id.[5]  Simply put, these wholly conclusory allegations fail to provide IICG with any meaningful notice of the basis of the claims against it, and plaintiffs' claims therefore must be dismissed in their entirety.

### B.     Plaintiffs Fail To Plead Proximate Causation As To IICG.

Plaintiffs nowhere dispute that they must plead that IICG proximately caused the injuries suffered by plaintiffs on September 11, 2001.  "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence."

---

[5]  Swierkiewicz also does not change the Second Circuit's requirement that a plaintiff plead sufficient facts to make out each element of a claim against a defendant.  See Gmurzynska v. Hutton, 355 F.3d 206 (2d Cir. 2004); Internet Law Library, Inc. v. Southbridge Capital Mgmt., LLC, 223 F.Supp.2d 474, 488 (S.D.N.Y. 2002).

Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (internal citations and quotation marks omitted); see Sosa v. Alvarez-Machain, 124 S.Ct. 2739, 2750 (2004) ("Proximate cause is causation substantial enough and close enough to the harm to be recognized by law . . .").

Instead, plaintiffs assert a "but for" theory of causation. See Pl. Mem. at 3, 11-14. For example, plaintiffs argue that "al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the Attack absent the sponsorship of IICG and the other defendants." Pl. Mem. at 3, *citing* FAC ¶¶ 72, 74. In other words, plaintiffs argue that they would not have been injured "but for" the unspecified actions of several hundred defendants. Plaintiffs meager "but for" argument, however, cannot substitute for a showing that the alleged wrongdoing was "substantial enough and close enough to the harm," Sosa, 124 S.Ct. at 2750, and was "a substantial factor in the sequence of responsible causation." Lerner, 318 F.3d at 123. As set forth in detail in IICG's initial Memorandum, plaintiffs have alleged no facts showing that IICG's (unalleged) actions were a "substantial factor" in the September 11 attack or that IICG should have "reasonably foreseen" that the September 11th attack would ensue from anything that it has done.

Plaintiffs cite Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983) in support of their "but-for" causation argument, see Pl. Mem. at 11-13, but Halberstam as well requires allegations that the defendant knowingly and in fact "substantially aided" the tortfeasor in committing the act that caused plaintiffs' injuries. Id. at 478. Similarly, Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002) only permitted an aiding and abetting claim to proceed because the plaintiff alleged facts sufficient to show that the defendant knowingly, substantially, and actually assisted in the allegedly tortious act. Id. at 1021. In fact, the court in Boim held that an allegation of funding *simpliciter* is not sufficient to show proximate causation. Id. at 1012.[6] Here, the plaintiffs have not alleged any

---

[6] Plaintiffs reliance upon Flatow v. Islamic Republic of Iran, 999 F.Supp.1, 18 (D.D.C. 1998) and Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1130 (D.C. Cir. 2004) in an attempt to avoid their obligation to plead proximate causation, see Pl. Mem. at 11-12, is similarly irrelevant. The cited sections in Flatow and Kilburn discuss a narrow provision of the Foreign Sovereign Immunities Act

-7-

particular wrongful conduct by IICG whatsoever, let alone any facts showing that IICG gave funds to or otherwise provided material support to any of the terrorists who carried out the September 11 attack or anyone who assisted them in doing so. Plaintiffs have proffered only indiscriminate, "catch-all" averments that cannot suffice to plead proximate causation. See, e.g., In re Am. Express Co. S'holder Litig., 39 F.3d 395, 401-02 (2d Cir. 1994).

**C.     Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action.**

Finally, plaintiffs blithely ignore IICG's arguments regarding each of the plaintiffs' causes of action. Rather than address IICG's specific arguments, plaintiffs put forth assertions that are not borne out by the actual allegations of the Complaint; abandon several claims[7]; and refer the Court to briefs they submitted in response to motions to dismiss filed by *other* defendants, see Pl. Mem. at 14, n.4. The paucity of plaintiffs' opposition to the instant Motion reflects their failure to allege any cause of action *against IICG*. Neither inferences unsupported by specific factual allegations nor legal conclusions cast as factual allegations suffice to state a claim. See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

**1.     Plaintiffs Have No Standing Under RICO And, In The Alternative, Have Failed To Sufficiently Plead A RICO Claim -- Count VIII.**

Plaintiffs do not dispute that Judge Robertson's dismissal of plaintiffs' RICO claims for lack of standing, in Burnett I, is law of the case in this action. See Burnett v. Al Baraka Inv. & Dev. Corp. ("Burnett I"), 274 F.Supp.2d 86, 100-02 (D.D.C. 2003). Rather, plaintiffs claim to have

---

("FSIA"), 28 U.S.C. § 1605(a)(7), as it pertains to state sponsors of terrorism, Iran and Libya, respectively. Such statutory provision is completely inapposite as to IICG.

[7] Plaintiffs admit that "New York law does not recognize the substantive tort of civil conspiracy," Pl. Mem. at 7; admit that "the TVPA is not a viable cause of action against IICG," Pl. Mem. at 20; n.8, and semi-formally abandon many of their state causes of action -- especially their 'claim' for punitive damages. See Pl. Mem. at 20, n.9. Yet, Plaintiffs ask the Court not to dismiss these claims. See id. The fact that no cause of action for punitive damages exists is not a technicality, however, and plaintiffs' abandonment of most of their claims against IICG should be formalized. The Court therefore should dismiss these claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Fed. R. Civ. P. 41.

RICO standing as a subrogee of individuals who suffered physical injuries. See Federal Plaintiffs' Mem. of Law in Opp. to Mar-Jac Poultry's Motion to Dismiss, at 15-16, *citing* National Asbestos Workers Med. Fund v. Phillip Morris, Inc., 74 F.Supp.2d 221 (E.D.N.Y. 1999). However, the District Court opinion in National Asbestos cannot control, because it is directly contrary to an earlier decision of the Second Circuit. See Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229, 235-241 (2d Cir. 1999) ("Being purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims . . .").[8] Furthermore, plaintiffs' incorporation by reference of their Opposition to Mar-Jac Poultry and Arab Bank's Motions to Dismiss, which supposedly responds to IICG's RICO arguments, does not establish that plaintiffs' bare and conclusory allegations regarding *IICG*, even if true, would establish *any* of the requisite elements of a civil RICO claim. See Def. Mem. at 16-17.

### 2. Plaintiffs Have Failed To Sufficiently Plead A Claim Under The Anti-Terrorism Act ("ATA") – Count X.

Again, plaintiffs have wholly failed to allege the elements of an ATA claim, and cannot do so in keeping with their obligations under Rule 11. Contrary to plaintiffs' assertion that they have "described [IICG's role] in reasonable detail," Pl. Mem. at 19, plaintiffs have proffered no specific, cognizable allegation that IICG engaged in any actions constituting "international terrorism" or that IICG did so knowingly, as the ATA has been held to require. See Boim, 291 F.3d at 1012, 1023 (holding that the ATA requires allegations that defendants acted knowingly and as the proximate cause of plaintiff's injury); Burnett I, 274 F.Supp.2d at 106 (ATA claim requires knowledge and intent to further violent acts; and those violent acts must be reasonably foreseeable result of defendant's actions); Smith v. Afghanistan, 262 F.Supp.2d 217, 227 n.12 (S.D.N.Y. 2003) (same). And, to the extent that plaintiffs rely upon Halberstam or Boim for a concerted action

---

[8] Moreover, the holding in National Asbestos has been repeatedly rejected. See Int'l Brotherhood of Teamsters v. Phillip Morris, Inc., 196 F.3d 818, 827 (7th Cir. 1999) (describing National Asbestos opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in Laborers Local 17]."); Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 99 F.Supp.2d 174, 178 (D.R.I. 2000) ("this Court disagrees with the reasoning and result in National Asbestos."); Eastern States Health & Welfare Fund v. Phillip Morris, Inc., 188 Misc. 2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (same).

theory of liability under the ATA, see Pl. Mem. at 15-16, as shown above, see Section II.B., Halberstam requires allegations that the defendant knowingly provided help and did in fact "substantially aid[]" the tortfeasor, see Halberstam, 705 F.2d at 478, and Boim requires allegations that the defendant knowingly, substantially, and actually assisted in the allegedly tortious act. See Boim, 291 F.3d at 1021.[9] Plaintiffs' Complaint, which fails to aver *any* specific conduct by IICG *whatsoever*, obviously falls entirely short of the pleading requirements of Halberstam or Boim. Accordingly, plaintiffs' ATA claim must be dismissed.

### 3. Plaintiffs' State Law Claims Fail to State A Claim.

Plaintiffs' argument that they have adequately pled state law claims is significant for what it omits -- i.e., any reference to the sparse allegations against IICG.  For example, while plaintiffs state that trespass is the "intentional invasion of another's property," see Pl. Mem. at 20, and a battery "consists of an intentional, offensive, wrongful bodily contact," see Pl. Mem. at 22, plaintiffs fail to cite to any facts in their Complaint that IICG committed an "intentional invasion" or any type of "bodily contact."  Furthermore, for all the reasons set forth above and in IICG's initial Memorandum, plaintiffs' state law claims are not saved by their conclusory allegations of conspiracy and aiding and abetting.  Simply put, plaintiffs have nowhere alleged any facts as to IICG that satisfy the proximate cause standard and have failed to put forth even one allegation of fact that supports any of plaintiffs' causes of action.[10]

---

[9] Plaintiffs also rely upon the recent decision of the magistrate judge in Boim v. Quranic Literacy Inst., No. 00-2905, 2004 WL 2554446 (N.D. Ill., Nov. 10, 2004) ("Boim II").  The magistrate judge in Boim II, however, followed the holdings of the Seventh Circuit in Boim, 291 F.3d 1000, which have been discussed at length above and at Def. Mem. at 19.  Further, the facts of the Boim case, unlike the allegations here, were alleged definitely and specifically.  See Boim, 291 F.3d at 1021.  Accordingly, plaintiffs' argument at Pl. Mem. at 19, relying upon Boim II, to impose liability for "transactions that appear on their face to be innocuous . . . [but that may] be revealed to be sham transactions by which material support to terrorism is concealed" must be taken for what it is -- namely, one more attempt to elide the factual vacuity of their claims against IICG.

[10] Plaintiffs should not be given leave to amend their pleadings at this late date.  Even though the plaintiffs' FAC has undergone enormous amendments and modifications, there are still *no* factual allegations that come close to asserting jurisdiction over or stating a claim against IICG.  Any amendment would be futile and should not be permitted.  See, e.g., Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995).

## **CONCLUSION**

For the foregoing reasons, defendant IICG respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        December 21, 2004

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:      /s/
    James J. McGuire (JM-5390)

30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
 *Islamic Investment Company of the Gulf (Sharjah)*

Timothy J. McCarthy
Eric S. O'Connor
    Of Counsel

-11-