UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
IN RE TERRORIST ATTACKS ON                                  :
SEPTEMBER 11, 2001                                          :    03 MD 1570 (RCC)
                                                            :    ECF Case
------------------------------------------------------------x
                                                            :
FEDERAL INSURANCE CO., et al.,                              :
                                                            :
           Plaintiffs,                                      :    03 CV 6978 (RCC)
                                                            :    ECF Case
   v.                                                       :
                                                            :
AL QAIDA, et al.,                                           :
                                                            :
           Defendants.                                      :
                                                            :
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

W02-NY:7TJM1\120000558.1

## TABLE OF CONTENTS

Page

I. PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A. ...................................................................................1

II. PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A. ...........................................................................................................................5

    A. Plaintiffs' Claims Fail To Satisfy The Pleading Requirements of Rule 8. ..............5

    B. Plaintiffs Fail To Plead Proximate Causation As To DMI S.A. .............................6

    C. Plaintiffs Do Not State A Claim Against DMI S.A. Under Any Of Their Twelve Causes Of Action. .....................................................................................7

        1. Plaintiffs Have No Standing Under RICO And, In The Alternative, Have Failed To Sufficiently Plead A RICO Claim -- Count VIII. ..............8

        2. Plaintiffs Have Failed To Sufficiently Plead A Claim Under The Anti-Terrorism Act ("ATA") – Count X. ....................................................9

        3. Plaintiffs' State Law Claims Fail to State A Claim. .................................10

CONCLUSION..............................................................................................................................10

**PRELIMINARY STATEMENT**

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the claims against it in the above-captioned action.

Plaintiffs in their Memorandum in Opposition do not even attempt to explain their complete failure to make any specific factual allegations against DMI S.A. in the Complaint. Instead, on the first page of their Opposition, plaintiffs argue that the Court should read their meager allegations against co-defendant DMI Trust as applicable to DMI S.A., and perhaps upon realization of the emptiness of their claims against DMI S.A., beg the Court to grant them leave to amend should the Court see fit to grant DMI S.A.'s motion. See Pl. Mem. at 1 n.1. DMI Trust and DMI S.A., however, are separate companies, formed and operating under different laws in different countries, and plaintiffs have made neither any argument that the corporate veil between those entities should be pierced, nor any allegations that could support such an argument. Moreover, the Court has ample justification to deny leave to amend: plaintiffs' complete failure to make any specific allegations as to DMI S.A., the efficiency of these proceedings, and the acknowledged burden of plaintiffs' inflammatory, unjustified accusations against DMI S.A. amply justify denial of leave to amend. See, e.g., Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995). For those reasons, the following reasons, and all those set forth in DMI S.A.'s initial Memorandum, DMI S.A.'s motion should be granted, and the claims against it should be dismissed with prejudice.

**I.
PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL
JURISDICTION OVER DMI S.A.**

As DMI S.A.'s initial Memorandum detailed, plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage plaintiffs' meritless assertion of personal jurisdiction over DMI S.A. "[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ." Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975); see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 793 (2d Cir.

1999) (same).  "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States." <u>Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.</u>, 26 F.Supp.2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added); <u>see</u> <u>also</u> <u>Agron v. Dunham</u>, 2004 WL 691682, *6 (S.D.N.Y.) (conclusory allegations insufficient).  First, "[t]o establish a *prima facie* case for conspiracy under New York law, a plaintiff must properly allege the primary tort and the following four elements: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury."  <u>Laborers Local 17</u>, 26 F.Supp.2d at 602.  Second, plaintiffs must allege specific facts connecting DMI S.A. to the conspiracy and specific facts connecting DMI S.A. to the in-state actors.  In other words, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  <u>Id.</u> at 602; <u>see also</u> <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction, plaintiff must show that in-state conspirator acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").  In short, while plaintiffs are not required "to set forth every wrongful act" of a defendant, <u>see</u> Pl. Mem., at 7, they are required to allege specific facts that, if proven out, would suffice to establish the defendant's active, intentional participation in a tortious conspiracy.

As plaintiffs' own submission makes clear, plaintiffs have done none of the above.  Instead of attempting to defend the sufficiency of their wholly conclusory allegation of conspiracy regarding DMI S.A., <u>see</u> FAC ¶ 66, plaintiffs desultorily assert -- in a footnote -- that "[t]he Federal

Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation." See Pl. Mem., at 9 n.13.[1] As DMI S.A.'s initial Memorandum sets forth in great detail, plaintiffs' bald, unsupported assertion of the merit of their allegations is flatly untrue. In the Complaint, plaintiffs conclusorily assert that all defendants were co-conspirators, see FAC ¶ 66, without any supporting factual allegations as to DMI S.A. And while plaintiffs allege that the conspiracy to carry out the September 11 attack required the material support of the co-defendants, see FAC ¶¶ 73-74, plaintiffs have entirely failed to allege facts sufficient to show that DMI S.A. entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of DMI S.A.; or that that DMI S.A. exercised control over any such actor. Nor have plaintiffs alleged any specific wrongful act by DMI S.A., any agreement by DMI S.A. to enter into a conspiracy or any communications by DMI S.A. personnel that could be read to imply such an agreement.[2] In sum, plaintiffs have alleged nothing at all to connect DMI S.A. to the September 11 attack or to the United States.[3]

---

[1] In support of this assertion, plaintiffs cite to In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); plaintiffs, however, do not apprise the Court of the Second Circuit's statement therein that "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, *must include an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant*," see id. at 206, or of the fact that the Court in In re Magnetic Audiotape pointed out numerous specific facts, regarding specific transactions, meetings, and corporate control factors, that plaintiffs in that case had alleged. As the parties' submissions make clear, plaintiffs here have made no such specific allegations of fact as to DMI S.A. Plaintiffs also cite to Davis v. Barrett Day Sec., Inc., 1995 U.S.Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995) -- a decade-old, unpublished decision from the Middle District of North Carolina -- yet even Davis notes that "a bare allegation of conspiracy between a defendant and a person over which the court has personal jurisdiction is insufficient to allow the court to exercise personal jurisdiction over the defendant," see id. at *12, and recites numerous specific factual allegations made in that case regarding particular agreements and transactions, of the sort that plaintiffs here have been unable to make as to DMI S.A.

[2] Plaintiffs also briefly assert that DMI S.A. is subject to personal jurisdiction pursuant to New York's long-arm statute as an aider and abettor of the primary tortfeasors responsible for the September 11 attack. See Pl. Mem., at 22. In support of this proposition, however, plaintiffs refer the Court only to their own argument regarding their claims under the Anti-Terrorism Act -- an argument that, in turn, does not even attempt to establish that plaintiffs have made any allegations of fact sufficient to show either that DMI S.A. knew the wrongful nature of any primary tortfeasor's conduct or that DMI S.A. actually provided any substantial assistance to any such tortfeasor. Plaintiffs' invocation of personal jurisdiction based upon a theory of aiding and abetting thus fares no better than their theory of conspiracy.

[3] Because New York's long-arm statute is not intended to reach to the full limits of personal jurisdiction allowed under the Due Process Clause, see Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust, Ltd., 62

In another attempt to salvage personal jurisdiction over DMI S.A., plaintiffs cite Pugh v. Socialist People's Libyan Arab Jamahirya, 290 F.Supp.2d 54 (D.D.C. 2003) and Rein v. Socialist People's Libyan Arab Jamahirya, 995 F.Supp. 325 (E.D.N.Y. 1998), in an attempt to import the due process standards of the Foreign Sovereign Immunities Act ("FSIA") to cases brought under the Anti-Terrorism Act ("ATA"). See Pl. Mem., at 10-11. The District Court for the District of Columbia, however, when recently presented with this exact question, held that "the differences between the ATA and the FSIA are too great for their common focus on antiterrorism to allow cross-pollination on this issue" of personal jurisdiction. Biton v. Palestinian Interim Self-Government, 310 F.Supp.2d 172, 178 (D.D.C. 2004); see also Estates of Ungar v. The Palestinian Authority, 153 F.Supp.2d 76, 95 (D.R.I. 2001) ("this Court declines plaintiffs' invitation to extend the due process analysis applied by the district courts under the state-sponsored terrorist exception to the FSIA to the case currently before the Court" brought under the ATA). In both Biton and Ungar the courts, applying traditional minimum contacts analysis, dismissed claims against individual defendants for lack of personal jurisdiction. Biton, 310 F.Supp.2d at 178-79; Ungar, 153 F.Supp.2d at 95. Plaintiffs argue that the Pugh and Rein courts must have considered due process in reaching their conclusions, see Pl. Mem. at 11 n.14, and indeed they did; but in each case, Pugh and Rein applied FSIA due process standards to sovereigns, and applied traditional minimum contacts analysis to individuals -- just as DMI S.A. requests here. See Pugh, 290 F.Supp.2d at 56-61; Rein, 995 F.Supp. at 329-30. More importantly, Pugh and Rein simply do not address the fundamental issue presented here -- whether the plaintiffs have alleged sufficient facts to connect DMI S.A. to the United States or the attacks of September 11.[4] As discussed throughout, Plaintiffs have not done so.

---

N.Y.2d 65, 67-69, 476 N.Y.S.2d 64, 67 (1984), plaintiffs' conclusory, boilerplate allegations fail to satisfy the stricter requirements of that statute, independently of their failure to satisfy the requirements of due process. See, e.g., Cornell v. Assicurazioni Generali S.p.A.Consolidated, 2000 WL 284222 (S.D.N.Y.), at *5-6.

[4] Plaintiffs also grasp two disfavored decisions from the Eastern District of New York, Simon v. Phillip Morris, Inc., 86 F.Supp.2d 95 (E.D.N.Y. 2000), and In re DES Cases, 789 F.Supp. 552 (E.D.N.Y. 1992), in support of the ambitious proposition that in mass tort class actions, a Court may do away with the

For all the foregoing reasons, plaintiffs have completely failed to make out a *prima facie* case for personal jurisdiction over DMI S.A.[5]  Plaintiffs' claims against DMI S.A. therefore should be dismissed in their entirety.

## II.
## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.

### A. Plaintiffs' Averments of Conspiracy Fail To Satisfy The Pleading Requirements of Rule 8.

Plaintiffs do not dispute DMI S.A.'s argument, see Def. Mem. at [12-13], that the Complaint lumps over 200 defendants together without providing specific facts distinguishing DMI S.A.'s supposed conduct.  See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000); Atuahene v. Hartford, 10 Fed. Appx. 33, 34, 2001 WL 604902, at *1 (2d Cir. May 31, 2001).  Instead, plaintiffs point to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that those conclusory, generalized allegations should be deemed sufficient to state their immense claims against DMI S.A.  See Pl.

---

Constitutionally-required, due process minimum contacts test, and instead seek to exercise personal jurisdiction over a non-resident defendant based upon a loosely-drawn 'governmental interest' test.  In at least one of the two cases, however, see Simon, 86 F.Supp.2d at 132-33, the District Court explicitly found that the defendant *did* have minimum contacts with the forum, rendering its previous discussion of a 'modified due process standard' a dictum.  To the extent that those two cases do stand for the proposition that the minimum contacts test may be abandoned, those decisions run directly contrary to long-standing, controlling precedent.  See, e.g., International Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945) (Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts"); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (same).  And indeed, the Second Circuit has implicitly called into question the 'modified due process' standard suggested by In re DES.  See In re DES Litig., 7 F.3d 20, 24-25 (2d Cir. 1993) ("[W]hether or not other trial judges find Judge Weinstein's opinion a persuasive precedent, they are not bound to apply it in any subsequent litigation" for collateral estoppel purposes).

[5] Plaintiffs argue that the Court should allow jurisdictional discovery as to DMI S.A. because their jurisdictional allegations are "simply insufficiently developed at this time." See Pl. Mem. at 7 n.10, citing Texas Int'l Magnetics, Inc. v. BASF AG, 31 Fed. Appx. 738, 739 (2d Cir. 2002).  Here, however, plaintiffs' jurisdictional allegations are not merely 'insufficiently developed' but *entirely absent* -- again, even in the Opposition, plaintiffs fail to specify a single factual allegation that could be read to tie DMI S.A. to the United States generally or to the September 11 attacks specifically.  In such a case, jurisdictional discovery is plainly inappropriate.  See, e.g., Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y.) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

W02-NY:7TJM1\120000558.1               -5-

Mem. at 5-6, 6 n.8. Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII claims such as those brought therein. Twombly v. Bell Atlantic Corp., 313 F.Supp.2d 174, 180 (S.D.N.Y. 2003). This Court in Twombly explained that a plaintiff's theory in Title VII cases is "fairly self-evident" so that "defendants will be apprised of the basic facts, and will know how to defend the action." Id. at 181. In contrast (and particularly here), a plaintiff's conspiracy theory "is not evident from a conclusory allegation of conspiracy, and there is simply no way to defend against such a claim without having some idea of how and why the defendants are alleged to have conspired." Id.[6] Simply put, these wholly conclusory allegations fail to provide DMI S.A. with any meaningful notice of the basis of the claims against it, and plaintiffs' claims therefore must be dismissed in their entirety.

**B.     Plaintiffs Fail To Plead Proximate Causation As To DMI S.A.**

Plaintiffs nowhere dispute that, as to each of their causes of action, they must plead that DMI S.A. proximately caused the injuries suffered by plaintiffs on September 11, 2001. "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (internal citations and quotation marks omitted); see also Sosa v. Alvarez-Machain, 124 S.Ct. 2739, 2750 (2004) ("Proximate cause is causation substantial enough and close enough to the harm to be recognized by law . . .").

Instead, plaintiffs assert a "but for" theory of causation. See Pl. Mem. at 2-3, 12-14. For example, plaintiffs argue that "al Qaida would not have possessed the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the Attack absent the sponsorship of DMI S.A. and the other

---

[6] Swierkiewicz also does not change the Second Circuit's requirement that a plaintiff plead sufficient facts to make out each element of a claim against a defendant. See Gmurzynska v. Hutton, 355 F.3d 206 (2d Cir. 2004); Internet Law Library, Inc. v. Southbridge Cap. Mgmt., LLC, 223 F.Supp.2d 474, 488 (S.D.N.Y. 2002).

defendants." Pl. Mem. at 14, *citing* FAC ¶ 74.[7]  Plaintiffs' "but for" argument, however, cannot substitute for a showing that some alleged wrongdoing by DMI S.A. was "substantial enough and close enough to the harm," Sosa, 124 S.Ct. at 2750, and was "a substantial factor in the sequence of responsible causation." Lerner, 318 F.3d at 123.[8]  As set forth in DMI S.A.'s initial Memorandum, plaintiffs have alleged no facts showing that DMI S.A.'s (unalleged) actions were a "substantial factor" in the September 11 attack or that DMI S.A. should have "reasonably foreseen" that the September 11th attack would ensue from anything that it has ever done.

### C.     Plaintiffs Do Not State A Claim Under Any Of Their Twelve Causes Of Action.

Finally, plaintiffs blithely ignore DMI S.A.'s arguments regarding each of the plaintiffs' causes of action. Rather than address DMI S.A.'s specific arguments, plaintiffs put forth assertions that are not borne out by the actual allegations of the Complaint; abandon several claims[9]; and beg the Court for leave to amend and for discovery "if the Court, for some reason, does not assume the truth of all of [plaintiffs'] allegations." See Pl. Mem., at 16 n. 19.  To be clear, DMI S.A.

---

[7] Remarkably, on the very same page, plaintiffs also assert that "the application of the 'but for' standard of causation is manifestly improper." DMI S.A. agrees, especially in light of the fact that such a "but for" theory is undeniably the only theory of causation asserted against it. See, e.g., FAC ¶ 74; Pl. Mem. at 14.

[8] Plaintiffs cite Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983) in support of their "but-for" causation argument, see Pl. Mem. at 13, but Halberstam as well requires allegations that the defendant knowingly and in fact "substantially aided" the tortfeasor in committing the act that caused plaintiffs' injuries, id. at 478, and does not abrogate the requirement that plaintiffs plead at least one overt act in furtherance of the conspiracy by each defendant. See, e.g., Laborers Local 17, 26 F.Supp.2d at 602. Similarly, Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002) only permitted an aiding and abetting claim to proceed because the plaintiff alleged facts sufficient to show that the defendant knowingly, substantially, and actually assisted in the allegedly tortious act. Id. at 1021.  In fact, the court in Boim held that an allegation of funding *simpliciter* is not sufficient to show proximate causation. Id. at 1012. [8] Here, the plaintiffs have not alleged any particular wrongful conduct by DMI S.A. whatsoever, let alone any facts showing that DMI S.A. gave funds to or otherwise provided material support to any of the terrorists who carried out the September 11 attack or anyone who assisted them in doing so.  Plaintiffs have proffered only indiscriminate, "catch-all" averments that cannot suffice to plead proximate causation. See, e.g., In re Am. Express Co. S'holder Litig., 39 F.3d 395, 401-02 (2d Cir. 1994).

[9] Plaintiffs admit that "the TVPA is not a viable cause of action against DMI S.A.," Pl. Mem. at 22 n.27, and semi-formally abandon many of their state causes of action -- especially their 'claim' for punitive damages. See Pl. Mem. at 22 n.29.  Yet, Plaintiffs ask the Court not to dismiss these claims. See id.  The fact that no cause of action for punitive damages exists -- under Federal, New York, Virginia or Pennsylvania law -- is not a technicality, however, and plaintiffs' abandonment of these claims against DMI S.A. must be formalized.  The Court therefore should dismiss these claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Fed. R. Civ. P. 41.

implores the Court to assume the truth of all of plaintiffs' allegations, and then to test those allegations against the pleading standards of Rule 8 – including the well-established principle that neither inferences unsupported by specific factual allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

### 1. Plaintiffs Have No Standing Under RICO And, In The Alternative, Have Failed To Sufficiently Plead A RICO Claim -- Count VIII.

Plaintiffs do not dispute that Judge Robertson's dismissal of plaintiffs' RICO claims for lack of standing, in Burnett I, is law of the case in this action.  See Burnett v. Al Baraka Inv. & Dev. Corp. ("Burnett I"), 274 F.Supp.2d 86, 100-02 (D.D.C. 2003).  Rather, plaintiffs claim to have RICO standing as a subrogee of individuals who suffered physical injuries.  See Federal Plaintiffs' Mem. of Law in Opp. to Mar-Jac Poultry's Motion to Dismiss, at 15-16, *citing* National Asbestos Workers Med. Fund v. Phillip Morris, Inc., 74 F.Supp.2d 221 (E.D.N.Y. 1999).  However, the District Court opinion in National Asbestos cannot control, because it is directly contrary to an earlier decision of the Second Circuit.  See Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229, 235-241 (2d Cir. 1999) ("Being purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims . . .").[10]  Furthermore, plaintiffs' incorporation by reference of their Opposition to Mar-Jac Poultry and Tarik Hamdi's Motions to Dismiss, which supposedly responds to DMI S.A.'s RICO arguments, does not expiate the conclusory, boilerplate nature of plaintiffs' sparse RICO allegations regarding *DMI S.A.*, and does not establish that those allegations, even if proven out, would state *any* of the requisite elements of a civil RICO claim against DMI S.A.  See Def. Mem. at 16-17.  Plaintiffs' RICO claims therefore may be deemed abandoned, and must be dismissed.

---

[10] Moreover, the holding in National Asbestos has been repeatedly rejected.  See Int'l Brotherhood of Teamsters v. Phillip Morris, Inc., 196 F.3d 818, 827 (7th Cir. 1999) (describing National Asbestos opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in Laborers Local 17]."); Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 99 F.Supp.2d 174, 178 (D.R.I. 2000) ("this Court disagrees with the reasoning and result in National Asbestos."); Eastern States Health & Welfare Fund v. Phillip Morris, Inc., 188 Misc. 2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (same).

### 2. Plaintiffs Have Failed To Sufficiently Plead A Claim Under The Anti-Terrorism Act ("ATA") – Count X.

Again, plaintiffs have wholly failed to allege the elements of an ATA claim, and cannot do so in keeping with their obligations under Rule 11. Contrary to plaintiffs' assertion that they have "describe[d DMI S.A.'s role] in reasonable detail," Pl. Mem. at 21, plaintiffs have proffered no allegation that, if proved out, would show that DMI S.A. engaged in any actions constituting "international terrorism" or that DMI S.A. did so knowingly, as the ATA has been held to require. See Boim, 291 F.3d at 1012, 1023 (holding that the ATA requires allegations that defendants acted knowingly); Burnett I, 274 F.Supp.2d at 106 (ATA claim requires allegation of knowledge and intent to further violent acts, and allegation that injuries were reasonably foreseeable results of defendant's actions); Smith v. Afghanistan, 262 F.Supp.2d 217, 227 n.12 (S.D.N.Y. 2003) (same). And, to the extent that plaintiffs rely upon Halberstam or Boim for a concerted action theory of liability under the ATA, see Pl. Mem. at 15-16, Halberstam requires allegations that the defendant knowingly provided help and did in fact "substantially aid[]" the tortfeasor, see Halberstam, 705 F.2d at 478, and Boim requires allegations that the defendant knowingly, substantially, and actually assisted in the allegedly tortious act. See Boim, 291 F.3d at 1021.[11] Plaintiffs' Complaint, which fails to aver *any* specific conduct by DMI S.A. *whatsoever*, obviously falls entirely short of the pleading requirements of Halberstam or Boim. Accordingly, plaintiffs' ATA claim must be dismissed.

---

[11] Plaintiffs also rely upon the recent decision of the magistrate judge in Boim v. Quranic Literacy Inst., No. 00-2905, 2004 WL 2554446 (N.D. Ill., Nov. 10, 2004) ("Boim II"). The magistrate judge in Boim II, however, followed the holdings of the Seventh Circuit in Boim, 291 F.3d 1000, which have been discussed at length above and at Def. Mem. at 19. Further, the facts of the Boim case, unlike the allegations here, were alleged definitely and specifically. See Boim, 291 F.3d at 1021. Accordingly, plaintiffs' argument at Pl. Mem. at 19, relying upon Boim II to impose liability for "transactions that appear on their face to be innocuous . . . [but that may] be revealed to be sham transactions by which material support to terrorism is concealed" must be taken for what it is -- namely, one more attempt to elide the factual vacuity of their claims against DMI S.A.

### 3. Plaintiffs' State Law Causes of Action Fail to State A Claim.

Plaintiffs' argument that they have adequately pled their state law claims is significant for what it omits -- i.e., any reference to any specific factual allegations against DMI S.A. See Pl. Mem. at 22. Instead, plaintiffs again refer the Court to briefs regarding other parties, which briefs offer no explanation of the factual bases of plaintiffs' inflammatory claims *against DMI S.A.* Furthermore, for all the reasons set forth above and in DMI S.A.'s initial Memorandum, plaintiffs' state law claims are not saved by their conclusory allegations of conspiracy and aiding and abetting. Simply put, plaintiffs have nowhere alleged any facts as to DMI S.A. that, if proved out, would establish *any* of the many elements of *any* of plaintiffs' numerous causes of action. As to DMI S.A., plaintiffs have offered nothing at all that could warrant further lenience from this Court.

### CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
       January 4, 2005

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/
    James J. McGuire (JM-5390)

30 Rockefeller Plaza
Suite 2400
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant
 DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
   Of Counsel