**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————
                                                    )
IN RE:  TERRORIST ATTACKS ON          )          **Civil Action No. 03 MDL 1570 (RCC)**
SEPTEMBER 11, 2001                           )
———————————————————)

This document relates to:

———————————————————
                                                    )
FEDERAL INSURANCE CO., et al.,          )
                          Plaintiffs,              )
v.                                                    )          **Civil Action No. 03 CV 6978 (RCC)**
                                                    )
AL QAIDA, et al.,                                )
                          Defendants.          )
———————————————————)


### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
### OF THE SAUDI JOINT RELIEF COMMITTEE

KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

January 17, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

STANDARD OF REVIEW ...................................................................................................2

BACKGROUND ..................................................................................................................3

ARGUMENT .......................................................................................................................7

    I.     The FSIA Requires Dismissal Of The Claims Against The SJRC For The Acts Alleged In The Complaint ...................................................................7

          A.     The SJRC Is Entitled to Sovereign Immunity................................................7

                 1.     The SJRC is a political subdivision of the Kingdom of Saudi Arabia..................................................................7

                 2.     The SJRC is an agency or instrumentality ......................................9

          B.     None of the FSIA Exceptions to Immunity Applies ..................................11

                 1.     The allegations do not implicate the exception for "state sponsors of terrorism" under the FSIA exceptions .......................11

                 2.     The non-commercial torts exception does not confer jurisdiction over plaintiffs' suit....................................................12

                 3.     The alleged charitable and humanitarian aid provided through the SJRC is not a "commercial activity" under the FSIA ...................................................................17

    II.     This Court Lacks Personal Jurisdiction Over The SJRC .......................................18

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

Page

**CASES**

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989).........................................................................7, 14, 16

Asociacion de Reclamantes v. United Mexican States,
    735 F.2d 1517 (D.C. Cir. 1984)....................................................16

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985).....................................................................19

Burnett v. Al Baraka Investment & Development Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003).........................................12, 13, 14, 15, 16, 17

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993).......................................................2

Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Federation,
    361 F.3d 676 (2d Cir. 2004)........................................................8

CutCo Indus., Inc. v. Naughton,
    806 F.2d 361 (2d Cir. 1986).........................................................3

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998).........................................................2

Filler v. Hanvitt Bank,
    378 F.3d 213 (2d Cir. 2004).........................................................10

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) .....................................................2

International Shoe Co. v. Washington,
    326 U.S. 310 (1945).....................................................................19

Kelly v. Syria Shell Petroleum Dev. B.V.,
    213 F.3d 841 (5th Cir. 2000) .......................................................10

Letelier v. Republic of Chile:

    748 F.2d 790 (2d Cir. 1984)........................................................17, 18

    488 F. Supp. 665 (D.D.C. 1980) .................................................15, 16

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001)................................................................2

Liu v. Republic of China,
    892 F.2d 1419 (9th Cir. 1989) ...............................................................15, 16

MacArthur Area Citizens' Ass'n v. Republic of Peru,
    809 F.2d 918 (D.C. Cir. 1987)................................................................14

O'Connell Mach. Co. v. M.V. Americana,
    734 F.2d 115 (2d Cir. 1984)..................................................................7, 9

Parex Bank v. Russian Sav. Bank,
    116 F. Supp. 2d 415 (S.D.N.Y. 2000).................................................19

Persinger v. Islamic Republic of Iran,
    729 F.2d 835 (D.C. Cir. 1984)................................................................16

Phoenix Consulting, Inc. v. Republic of Angola,
    216 F.3d 36 (D.C. Cir. 2000)..................................................................2

Price v. Socialist People's Libyan Arab Jamahiriya,
    294 F.3d 82 (D.C. Cir. 2002)..................................................................13

Reers v. Deutsche Bahn AG,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004)...............................................2, 3, 19

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992)..................................................................17

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001)..................................................................2

Roeder v. Islamic Republic of Iran,
    333 F.3d 228 (D.C. Cir. 2003)................................................................8

Saudi Arabia v. Nelson,
    507 U.S. 349 (1993)..................................................................17

Tel-Oren v. Libyan Arab Republic,
    726 F.2d 774 (D.C. Cir. 1984)................................................................16

Texas Trading & Milling Corp. v. Federal Republic of Nigeria,
    647 F.2d 300 (2d Cir. 1981)..................................................................18

<u>Transaero, Inc. v. La Fuerza Aerea Boliviana,</u>
    30 F.3d 148 (D.C. Cir. 1994) .........................................................................8, 9

<u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),</u>
    467 U.S. 797 (1984) ...........................................................................................15

<u>Virtual Countries, Inc. v. Republic of South Africa,</u>
    300 F.3d 230 (2d Cir. 2002) .................................................................................2

**STATUTES AND RULES**

Federal Tort Claims Act, 28 U.S.C. § 2680(a) ...................................................... 14-15

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 <u>et seq.</u>...............................1

    28 U.S.C. § 1330(b) .........................................................................................18

    28 U.S.C. § 1603(a) ...................................................................................7, 9, 11

    28 U.S.C. § 1603(b) .....................................................................................9, 11

    28 U.S.C. § 1603(b)(1) ......................................................................................9

    28 U.S.C. § 1603(b)(1)-(3) ................................................................................9

    28 U.S.C. § 1603(d) .........................................................................................17

    28 U.S.C. § 1604.......................................................................................7, 9, 11

    28 U.S.C. § 1605(a)(2)........................................................................11, 16, 17, 18

    28 U.S.C. § 1605(a)(5)........................................................................11, 12, 13, 16

    28 U.S.C. § 1605(a)(5)(A) ...............................................................................14

    28 U.S.C. § 1605(a)(7)........................................................................11, 12, 13

    28 U.S.C. § 1605(a)(7)(A) ...............................................................................11

Fed. R. Civ. P. 12(b) ...............................................................................................1

Fed. R. Civ. P. 12(b)(1).........................................................................................1

Fed. R. Civ. P. 12(b)(2).........................................................................................1

Fed. R. Civ. P. 12(h)(2)....................................................................................................1

Fed. R. Civ. P. 12(h)(3)....................................................................................................1

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 94-1487 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604...............7, 9, 15, 16, 17, 18

**OTHER MATERIALS**

Greg Miller, <u>No Saudi Backing of 9/11 Found</u>, L.A. Times, July 22, 2004, at A1........................6

David E. Sanger, <u>Report Urges New Strategy On Muslims</u>, N.Y. Times,
    July 23, 2004, at A11 ...............................................................................................6

<u>The 9/11 Commission Report: Final Report of the National Commission on Terrorist
    Attacks Upon the United States</u> (July 2004).......................................................6

The Saudi Joint Relief Committee (the "SJRC") hereby moves, pursuant to Federal Rule of Civil Procedure 12(b), to dismiss all of the claims asserted in the First Amended Complaint of Federal Insurance Co., et al., for lack of subject-matter and personal jurisdiction.

There is no dispute that the SJRC is a political subdivision, agency, or instrumentality of the Kingdom of Saudi Arabia entitled to the protections of the Foreign Sovereign Immunities Act of 1976 (the "FSIA").  Federal Insurance itself recognized that fact in its October 1, 2004 Memorandum of Law in Opposition to the Motion to Dismiss of the Kingdom of Saudi Arabia (at 7-8).  The allegations raised against the SJRC in this action all concern charitable and humanitarian aid supplied by the SJRC to refugees in Kosovo and Chechnya.  None of the exceptions to the immunity provided by the FSIA — concerning state sponsors of terrorism, non-commercial torts committed in the United States, and commercial activities — applies to the allegations against the SJRC.  Accordingly, the SJRC is absolutely immune from suit in the United States for the claims asserted in the Federal Insurance complaint and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

In addition, dismissal is required under Federal Rule of Civil Procedure 12(b)(2) because the SJRC has absolutely no contacts with New York, or the United States.  Even if subject-matter jurisdiction were available under the FSIA — and it is not — plaintiffs must still allege jurisdictional facts sufficient to comport with due process.  Plaintiffs do not allege a single contact within the United States, and complain only of actions alleged to have occurred in Kosovo and Chechnya.  These allegations are entirely insufficient to show any "purposeful availment" within the United States.[1]

---

[1] The SJRC has additional defenses based on justiciability and failure to state a claim. Since these defenses are not subject to waiver, see Fed. R. Civ. P. 12(h)(2), (3), the SJRC will reserve them.

## STANDARD OF REVIEW

In a motion to dismiss challenging the adequacy of allegations involving the official acts of a foreign sovereign, this Court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction."  Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).  Instead, where a defendant presents a "prima facie case that it is a foreign sovereign," the plaintiff "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted."  Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993) (emphasis added)); see also Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (once defendant has proffered evidence of its status as sovereign, plaintiff can "rebut the presumption of immunity for the foreign defendant by proffering evidence of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity").[2]

On a motion to dismiss for lack of personal jurisdiction, this Court reviews the pleadings in the light most favorable to plaintiffs.  See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004).  Plaintiffs, however, bear the burden of establishing that this Court may

---

[2] See also Robinson v. Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001) (quoting Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[w]hen the defendant has . . . challenged the factual basis of the court's jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss")); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 448-49 (D.C. Cir. 1990) (holding that, where the "conclusory allegations" in a plaintiff's complaint are challenged by a sovereign defendant, "the district court must do more than just look to the pleadings to ascertain whether to grant the motion to dismiss").

exercise personal jurisdiction over the SJRC.  See id. (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

## BACKGROUND

1.      In 1999, the Kingdom of Saudi Arabia established the SJRC in response to the catastrophic humanitarian crisis triggered by the civil war in the former Republic of Yugoslavia, and the systematic violence against ethnic Albanians in Kosovo orchestrated by former Serbian president Slobodan Milosevic.   Declaration of Dr. Adbulrahman Al-Suwailem ¶ 5 ("Al-Suwailem Decl.").  As the crisis in Kosovo unfolded, the Kingdom of Saudi Arabia concluded that a single governmental entity was necessary to coordinate and distribute aid to Albanian refugees in Kosovo on behalf of the Kingdom and its citizens.  Id. ¶ 4.  Accordingly, the SJRC was established pursuant to High Order No. 7/B/1863 (the "Albanian High Order") issued by HRM King Fahd bin Abdulaziz upon the recommendation of the Council of Ministers of the Kingdom of Saudi Arabia.  Id. ¶ 3, Ex. B.  The SJRC assumed responsibility for all of the Kingdom's charitable initiatives on behalf of Albanian refugees in Kosovo, and has thus functioned as a political subdivision, agency, or instrumentality of the Kingdom of Saudi Arabia since its formation.  Id. ¶ 2.

The Kingdom of Saudi Arabia expanded the scope of the SJRC's mission to include relief work for victims of the ongoing hostilities in Chechnya pursuant to a second High Order (No. 7/B/12089) (the "Chechnya High Order").  Id. ¶ 6, Ex. C.  Through the Chechnya High Order, the Kingdom of Saudi Arabia intended that the SJRC would act in concert with other international agencies stationed in Chechnya (including the United Nations) to provide humanitarian aid to the hundreds of thousands of Muslims displaced by the war between Chechen fighters and Russia.  Id.  The SJRC's operations in both Kosovo and Chechnya were

thus limited to charitable and humanitarian efforts, and none of the funds or other aid distributed by the SJRC was provided for "commercial" purposes.  Id. ¶ 4.

2.    The Kingdom of Saudi Arabia took specific steps to ensure that the SJRC functioned as a political subdivision, agency, or instrumentality of the government.   The Albanian High Order specified that the SJRC would be supervised by the Minister of the Interior of the Kingdom of Saudi Arabia and chaired by the President of the Saudi Red Crescent Society, and further stated that the SJRC must include high-ranking representatives from agencies of the Kingdom, including the Ministry of Finance and National Economy, the Ministry of Defense and Aviation, the Ministry of Information, the Ministry of Labor and Social Affairs, the Ministry of Foreign Affairs, the Presidency of General Intelligence, and the Presidency of National Guard. Id. ¶ 7.   In addition, the SJRC submitted regular financial and performance reports to the Minister of the Interior, HRH Prince Nayef Bin Abdulaziz Al-Saud.  Id. ¶ 8.

The daily operations of the SJRC's offices in Riyadh, Saudi Arabia, Pristina, Kosovo, and Vladikavkaz and Moscow, Russia, were performed by a technical and administrative staff comprised of employees hired directly by the SJRC and civil servants of the Kingdom of Saudi Arabia seconded to work for the SJRC.  Id. ¶ 9.  The Kingdom of Saudi Arabia paid the salaries and expenses for most of the civil servants seconded to work for the SJRC.  Id.  Similarly, the Organizational Charter adopted by the SJRC expressly provided that employees seconded from the government would be subject to the laws applicable to government civil servants.  Id. ¶ 10, Ex. D.  Accordingly, seconded government employees of the SJRC are treated as civil servants, rather than private hires, under Saudi law.  Id.

The SJRC's mission was largely subsidized by the Kingdom of Saudi Arabia.  Id. ¶ 11. For example, on March 9, 2000, HRM King Fahd bin Abdulaziz issued a Royal Decree donating

5,000,000 Saudi Riyals to support the SJRC's relief work on behalf of Kosovan students and their families.  Id., Ex. E.  Through the end of 2003, the SJRC received 3,000,000 Saudi Riyals from the Kingdom's initial donation through the Ministry of Finance.  Id.  In addition, the Kingdom of Saudi Arabia routinely provided critical logistical support for the SJRC's humanitarian efforts in Kosovo and Chechnya.  Id. ¶ 12.

    **3.**    The allegations against the SJRC in plaintiffs' complaint all relate to the SJRC's relief efforts on behalf of refugees in Kosovo and Chechnya.  Compl. ¶¶ 66, 124-126, 147, 163, 176, 200, 203-207, 290, 435, 442.  None of those allegations suggests that the SJRC knew in advance about, participated in, or approved of the events of September 11, 2001, that caused these plaintiffs their claimed losses.

    Instead, plaintiffs allege in the most conclusory terms that the SJRC "aided and abetted, conspired with, and provided material support and resources to" Al-Qaeda.  Id. ¶ 66.  Only slightly more specifically, plaintiffs allege that SJRC "diverted more than $74 million to al Qaida members and loyalists" (id. ¶¶ 126, 147, 163, 176, 200, 204) and "served as a cover for al Qaida operatives" (id. ¶¶ 125, 147, 163, 176, 200, 205).  Based solely on these allegations, plaintiffs argue that the SJRC "has, for a period of many years, provided critical financial and logistical support" to Al-Qaeda.  Id. ¶ 206.

    Nowhere do plaintiffs allege that the SJRC knew or intended that any purported charitable contributions would materially benefit Al-Qaeda.  Instead, plaintiffs appear to claim that, at some unspecified time over a period of two years, the SJRC coordinated "relief efforts among several charitable organizations" in Kosovo and Chechnya that gave money to various different charities, which in turn gave money to Al-Qaeda, which in turn sponsored terrorism around the world.  Id. ¶ 124.  That allegation, however, has been flatly rejected by the National

Commission on Terrorist Attacks Upon the United States ("9/11 Commission").  While not ruling out the possibility that some non-governmental charities diverted funds to Al-Qaeda, the 9/11 Commission "found no evidence that the Saudi government as an institution" funded Al-Qaeda.  The 9/11 Commission Report: Final Report of the National Commission on Terrorist Attacks Upon the United States 171 (July 2004) ("9/11 Commission Report").  See also David E. Sanger, Report Urges New Strategy On Muslims, N.Y. Times, July 23, 2004, at A11 ("The commission did not find any Saudi government involvement in the Sept. 11 attacks or in financing Al Qaeda, contrary to charges made popular by books and films."); Greg Miller, No Saudi Backing of 9/11 Found, L.A. Times, July 22, 2004, at A1 ("In a long-awaited final report scheduled for release today, the Sept. 11 panel concluded that there was no evidence that the Saudi government or Saudi officials knew of or supported the plot to attack the United States").  As the President of the SJRC has explained, the "humanitarian mission of the SJRC is fundamentally incompatible with the concept of terrorism, and the SJRC has never had any connection with, or in any way supported, terrorist activities or terrorist organizations."  Al-Suwailem Decl. ¶ 16.

Finally, plaintiffs do not allege that the SJRC's charitable mission ever extended to the United States.  Indeed, the SJRC has no offices or employees in the United States, has no bank accounts or other property in the United States, and has never conducted any form of business in the United States.  Id. ¶ 15.

## ARGUMENT

**I.**     **The FSIA Requires Dismissal Of The Claims Against The SJRC For The Acts Alleged In The Complaint**

**A.**     **The SJRC Is Entitled to Sovereign Immunity**

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 434 (1989).  It prescribes "when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and . . . when a foreign state is entitled to sovereign immunity." H.R. Rep. No. 94-1487, at 6 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6604.  The FSIA provides a general grant of immunity and states that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  Section 1603(a) of the FSIA expressly states that the term "foreign state" "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  <u>Id.</u> § 1603(a).

The Federal Insurance plaintiffs have already conceded that the SJRC satisfies the requirements for immunity as either a political subdivision or an agency or instrumentality.  In their brief in opposition to the separate motion of the Kingdom of Saudi Arabia to dismiss their complaint, Federal Insurance stated that the SJRC is a political subdivision, agency, or instrumentality of Saudi Arabia.  Brief at 7-8 & n.5.  That concession is both binding on plaintiffs and correct as a matter of law.

1.     <u>The SJRC is a political subdivision of the Kingdom of Saudi Arabia</u>

Congress intended the term "political subdivisions" in § 1603(a) to include "all governmental units beneath the central government."  <u>O'Connell Mach. Co. v. M.V. Americana</u>, 734 F.2d 115, 116-17 (2d Cir. 1984) (quoting  H.R. Rep. No. 94-1487, at 15, <u>reprinted in</u> 1976

U.S.C.C.A.N. 6604, 6613).   Courts evaluate whether an entity is a political subdivision by analyzing whether the "core functions of the foreign entity are predominantly governmental" or "inherently sovereign or public acts."   Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 151-52 (D.C. Cir. 1994); see also Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Federation, 361 F.3d 676, 687-88 (2d Cir. 2004) (discussing the "core functions" test in Transaero).   The core functions test examines the quality and nature of the relationship between a foreign sovereign and one of its political organs, rather than merely the "characteristics" of the organ.   Transaero, 30 F.3d at 152 ("[A]ny nation may well find it convenient (as does ours) to give powers of contract and litigation to entities that on any reasonable view must count as part of the state itself.") (citing Brief of the United States as Amicus Curiae at 7-8).   As the Second Circuit has thus noted, "the fact of an internal separation of some sort between the sovereign and one or more of its organs has been found to be of no legal significance" to immunity under the FSIA.   Compagnie Noga D'Importation, 361 F.3d at 687.

In this case, the SJRC has absolutely no purpose except for the inherently governmental function of distributing aid to refugees in Kosovo and Chechnya on behalf of the Kingdom of Saudi Arabia and its citizens.   Al-Suwailem Decl. ¶¶ 4-6.   Indeed, the SJRC was established to perform charitable and humanitarian works in foreign nations on behalf of the government of the Kingdom of Saudi Arabia itself.   Id.; see Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234-35 (D.C. Cir. 2003) (explaining that the "conduct of foreign affairs is an important and 'indispensable' governmental function" and holding that the Minister of Foreign Affairs was a political subdivision) (quoted in Compagnie Noga D'Importation, 361 F.3d at 687 n.11). Moreover, the Albanian High Order specified that the SJRC must be supervised by the Minister of the Interior of the Kingdom of Saudi Arabia, and the Minister regularly reviewed financial and

performance reports prepared by the SJRC.  Al-Suwailem Decl. ¶¶ 7-8; see O'Connell Mach., 734 F.2d at 116 (holding that a shipping line under the direct control of a financial entity coordinating commercial enterprises for the Italian government is a public subdivision).  The SJRC's functions are thus so closely bound up with the foreign humanitarian initiatives of the Kingdom of Saudi Arabia that it must be viewed as inseparable from the government.  See Transaero, 30 F.3d at 153.  Accordingly, the SJRC is a political subdivision of the Kingdom of Saudi Arabia under § 1603(a) and immune from this suit under § 1604.

2.    The SJRC is an agency or instrumentality

Alternatively, the SJRC must be considered an agency or instrumentality of the Kingdom of Saudi Arabia.  Section 1603(b) defines an agency or instrumentality to include any entity that (1) "is a separate legal person, corporate or otherwise," and (2) "is an organ of a foreign state or political subdivision" of a foreign state, and (3) "is neither a citizen of a State of the United States" nor "created under the laws of any third country."  28 U.S.C. § 1603(b)(1)-(3).  The SJRC satisfies each of these three requirements.

First, if the Court determines that the SJRC is not a political subdivision, then it must conclude that the SJRC is a separate legal entity from the Kingdom of Saudi Arabia under § 1603(b)(1).  Congress explained that a separate legal entity under § 1603(b)(1) includes foundations that, "under the law of the foreign state where it was created, can sue or be sued in its own name, contract in its own name, or hold property in its own name."  H.R. Rep. No. 94-1487, at 15, reprinted in 1976 U.S.C.C.A.N. 6604, 6614.  The SJRC is an identifiable legal entity with its own organizational and management structure.  Al-Suwailem Decl. ¶¶ 7, 10, Ex. D.  The SJRC contracts in its own name, establishes its own annual budget, and holds property in its own name.  Id. ¶ 11, Exs. D, E.

Second, the SJRC is not a citizen of either the United States or any country other than Saudi Arabia.  In fact, the SJRC has no connection at all with the United States.  Id. ¶ 15.

Third, the SJRC is an organ of the Kingdom of Saudi Arabia.  Although there is no specific test for "organ" status under the FSIA, the Second Circuit has outlined five relevant factors, including: (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law.  Filler v. Hanvitt Bank, 378 F.3d 213, 217 (2d Cir. 2004) (citing Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 846-47 (5th Cir. 2000)).  Although these factors provide a "helpful framework," this Court should "not apply them mechanically or require that all five support an organ-determination."  Kelly, 213 F.3d at 847.

As extensively argued by plaintiffs in their opposition to the Kingdom of Saudi Arabia's motion to dismiss (Br. at 9-18), these factors demonstrate that the SJRC is an organ of the Kingdom of Saudi Arabia.  The Kingdom of Saudi Arabia explicitly created the SJRC for a national purpose: "to collect and distribute aid to Albanian refugees in Kosovo on behalf of the Kingdom of Saudi Arabia and its citizens, and to coordinate and document the Kingdom's charitable assistance through international relief agencies and organizations."  Al-Suwailem Decl. ¶ 4.  The SJRC is actively supervised by the government through a rigid organizational structure that mandates oversight by a host of senior government officials, including the Minister of the Interior of the Kingdom of Saudi Arabia, the President of the Saudi Red Crescent Society, the Ministry of Finance and National Economy, the Ministry of Defense and Aviation, the Ministry of Information, the Ministry of Labor and Social Affairs, the Ministry of Foreign

Affairs, the Presidency of General Intelligence, and the Presidency of National Guard.  Id. ¶ 7.

The SJRC is staffed in part by civil servants largely paid for by the government, and subject to

the standards for public employees under Saudi law.  Id. ¶¶ 9-10.  Finally, the SJRC was

established to serve as the exclusive entity for humanitarian assistance in Kosovo and Chechnya

on behalf of the Kingdom of Saudi Arabia and its citizens.  Id. ¶¶ 3-6, Exs. B, C.

The SJRC thus satisfies each of the three requirements for agency or instrumentality

status under § 1603(b), and is accordingly a foreign state under § 1603(a) and immune from this

suit under § 1604.

### B.      None of the FSIA Exceptions to Immunity Applies

The three exceptions to sovereign immunity for commercial activities, 28 U.S.C.

§ 1605(a)(2); state sponsors of terrorism, id. § 1605(a)(7); and non-commercial torts committed

in the United States, id. § 1605(a)(5), erroneously asserted by plaintiffs in prior proceedings are

equally inapplicable to their allegations against the SJRC.

1.      The allegations do not implicate the exception for "state sponsors of
terrorism" under the FSIA exceptions

The exception in § 1605(a)(7) — which exempts from sovereign immunity a defendant

who, among other things, is alleged to have provided "material support or resources" to terrorists

— does not apply because Saudi Arabia (and hence the SJRC) has not been designated by the

Department of State as a state sponsor of terrorism, which is a prerequisite for the

§ 1605(a)(7)(A) exception.  The complaint concedes this point by omission in reciting in other

paragraphs that Iran, Iraq, Sudan, and Syria have been so designated.  Compl. ¶¶ 55, 57, 59, 61.

Cf. id. ¶ 63.

2.      The non-commercial torts exception does not confer jurisdiction over plaintiffs' suit

The non-commercial torts exception permits, with certain exceptions, actions "in which money damages are sought against a foreign state for personal injury or death . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5).  That exception does not apply to the allegations against the SJRC for four separate reasons.

First, the allegations against the SJRC, like those against various officials of the Kingdom of Saudi Arabia dismissed by Judge Robertson in Burnett v. Al Baraka Investment & Development Corp., 292 F. Supp. 2d 9 (D.D.C. 2003), amount to no more than the claim that the SJRC's charitable aid in Kosovo and Chechnya "funded or provided material resources to those who funded or provided material resources to the terrorists who perpetrated the September 11th attacks."  Id. at 19.  Such claims must be brought, not under § 1605(a)(5), but under § 1605(a)(7), which expressly covers allegations of "the provision of material support or resources" for terrorist actions.  28 U.S.C. § 1605(a)(7).  Section 1605(a)(7) requires that, for immunity to be denied to a foreign state or official of a foreign state, the State Department must determine whether that state is sponsoring terrorism through "material support or resources" in the conduct of a terrorist act.  By suing under § 1605(a)(5), plaintiffs impermissibly attempt an end run around this statutory requirement.

Congress made a deliberate choice to confer on the State Department the important role of designating state sponsors of terrorism to avoid the potential clash of judicial findings about a state's involvement in terrorism with decisions of the Executive Branch, which is entrusted to conduct the Nation's foreign affairs.  If plaintiffs cannot sue the Kingdom of Saudi Arabia for

allegedly aiding terrorist acts — because Saudi Arabia is not on the State Department's list of state sponsors of terrorism — then they cannot sue its political subdivision, agency, or instrumentality under that same theory, simply by citing § 1605(a)(5) instead of § 1605(a)(7). To hold otherwise would render § 1605(a)(7) meaningless and launch suits that Congress sought to prevent against foreign states that have not been designated sponsors of terrorism.  See, e.g., Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 88 (D.C. Cir. 2002) (holding that original FSIA did not encompass claims of state-sponsored terrorism because that was considered an "immunized form[] of state activity").  See also id. (the amendments added a "new class of claims for which certain foreign states would be precluded from asserting sovereign immunity" that included when a state provides "material support or resources" for terrorists, 28 U.S.C. § 1605(a)(7)).

Judge Robertson's decision in Burnett expressly adopts this reasoning.  Judge Robertson concluded that the omission of the "provision of material support" as an act giving rise to liability under § 1605(a)(5) "should be treated as intentional" by Congress.  292 F. Supp. 2d at 20 (internal quotation marks omitted).  Accordingly, the FSIA exception that specifically addresses the "provision of material support" — § 1605(a)(7) — does not apply here because the State Department has not designated Saudi Arabia as a state sponsor of terrorism, and plaintiffs cannot evade that determination of the Executive Branch by invoking § 1605(a)(5).  Id. at 20 n.5.

Second, plaintiffs' claim — that the SJRC coordinated support for charities, which in turn supported yet other entities that ultimately funded or provided material resources to the terrorists who perpetrated the September 11 attacks — falls far afield of Congress's primary purpose in enacting the non-commercial torts exception.  Congress sought to treat foreign sovereigns like other employers with respect to respondeat superior liability for injuries caused by their

employees acting within the scope of their employment, and thus "eliminate[d] a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law."  <u>Amerada Hess</u>, 488 U.S. at 439-40.  The complaint does not allege the types of routine tort or <u>respondeat superior</u> claims the exception was intended to address.

Once again, <u>Burnett</u> agrees with this analysis, holding that " 'the legislative history [of the FSIA] counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law.' "  292 F. Supp. 2d at 19 (quoting <u>MacArthur Area Citizens' Ass'n v. Republic of Peru</u>, 809 F.2d 918, 921 (D.C. Cir. 1987)).  Like the allegations in <u>Burnett</u>, plaintiffs here allege an unprecedented and attenuated theory of causation in an attempt to hold a political subdivision or official agency of Saudi Arabia responsible for the actions of terrorists in the United States on nothing more than the allegation that the SJRC's charitable contributions and humanitarian aid were unknowingly routed through myriad channels into the hands of the terrorists.  This sweeping theory extends far beyond any conceivable purpose for the exception as designed by Congress.  As Judge Robertson concluded in dismissing the similar claims alleged in <u>Burnett</u>, "[i]n the FSIA context, plaintiffs' allegations that (i) [Saudi officials] funded (ii) those who funded (iii) those who carried out the September 11 attacks would stretch the causation requirement of the noncommercial tort exception not only to 'the farthest reaches of the common law,' but perhaps beyond, to terra incognita."  <u>Id.</u> at 20.

<u>Third</u>, the non-commercial torts exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  The FSIA's discretionary function exception is modeled on a similar exception to jurisdiction under the Federal Tort

Claims Act ("FTCA"), 28 U.S.C. § 2680(a).  See H.R. Rep. No. 94-1487, at 20-21, reprinted in 1976 U.S.C.C.A.N. 6604, 6619-20.  The purpose of both exceptions is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984) (construing FTCA).

The SJRC's administration of humanitarian aid to refugees in Kosovo and Chechnya is no different than the charitable contributions of Saudi officials that Judge Robertson held were "squarely covered by the 'discretionary function' language of subsection A."  Burnett, 292 F. Supp. 2d at 20.  Judge Robertson explained that it is "nearly self-evident" that "making recommendations . . . about requests for assistance from Islamic organizations" and "deciding what disbursements should be made to Islamic charitable organizations" are "clearly . . . 'decisions grounded in social, economic, and political policy.' "  Id. at 20-21 (quoting Varig Airlines, 467 U.S. at 814).  The Kingdom of Saudi Arabia established the SJRC to make precisely such policy decisions, in order to organize and execute the complex process of distributing food, medicine, clothing, and health care to hundreds of thousands of Muslim refugees in Kosovo and Chechnya.

In Burnett, plaintiffs invoked Letelier v. Republic of Chile, 488 F. Supp. 665, 673 (D.D.C. 1980), and Liu v. Republic of China, 892 F.2d 1419 (9th Cir. 1989), to argue that terrorist acts can never be considered "discretionary."  But the relevant question is whether the acts of the official in question were discretionary.  As Judge Robertson correctly noted, those cases "involved causal links significantly shorter and more direct than those alleged here:  in Letelier, the foreign sovereign and sovereign officeholders were alleged to have 'caused or aided' in the assassinations; in Liu, the foreign state was held vicariously liable for the actions of

its employee, criminal acts of a rather different character and order." 292 F. Supp. 2d at 21. The assassins in <u>Letelier</u> and <u>Liu</u> were thus agents of the foreign government. No claim has been made here (nor could it be following the conclusions of the 9/11 Commission) that the September 11 hijackers were in any respect agents of the SJRC (and hence agents of the government of Saudi Arabia).

 <u>Fourth</u>, for § 1605(a)(5) to apply, the tortious act itself — and not merely the injury caused by it — must occur in the United States. <u>See</u>, <u>e.g.</u>, <u>Persinger v. Islamic Republic of Iran</u>, 729 F.2d 835, 842 (D.C. Cir. 1984); <u>see also</u> H.R. Rep. No. 94-1487, at 7, 20-21, <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6605, 6619 ("the tortious act or omission must occur within the jurisdiction of the United States"). Sovereign acts or omissions that occur abroad do not fall within the exception of § 1605(a)(5), as the "entire tort" for which the defendant is to be held responsible must occur in the United States. <u>Asociacion de Reclamantes v. United Mexican States</u>, 735 F.2d 1517, 1524-25 (D.C. Cir. 1984). Effect in the United States is not enough. <u>Id.</u> at 1524 (comparing § 1605(a)(5) with § 1605(a)(2)'s language concerning acts "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States").[3] In this case, the SJRC is not alleged to have committed any act, much less any tortious act, in the United States. <u>Cf.</u> Al-Suwailem Decl. ¶ 15 (explaining that the SJRC has never had any contact with the United States). Instead, all of the SJRC's alleged action occurred in Kosovo and Chechnya. Compl. ¶¶ 124, 147, 176, 200, 203, 205. Nothing in plaintiffs' complaint, therefore, alleges any direct tortious act within the United States as required under § 1605(a)(5).

---

  [3] Judge Robertson rejected this argument, but in doing so made no effort to distinguish <u>Amerada Hess</u> or <u>Asociacion de Reclamantes</u>. Instead, he relied on a concurring opinion by Judge Edwards in a case that pre-dated <u>Asociacion de Reclamantes</u>, <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774, 775 (D.C. Cir. 1984).

Accordingly, no interpretation of the statutory exception for non-commercial torts applies to plaintiffs' allegations against the SJRC.

3.     The alleged charitable and humanitarian aid provided through the SJRC is not a "commercial activity" under the FSIA

Section 1605(a)(2) removes immunity for acts of foreign states "based upon a commercial activity" or performed "in connection with a commercial activity" of the foreign state. 28 U.S.C. § 1605(a)(2). The FSIA defines a "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act" with the commercial character of the activity "determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. § 1603(d). The Supreme Court has construed that provision to depend on "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." Saudi Arabia v. Nelson, 507 U.S. 349, 360-61 (1993) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)) (internal quotation marks omitted).

As Judge Robertson concluded in Burnett, the argument that humanitarian or charitable contributions constitute a commercial activity outside of the FSIA "is readily disposed of." 292 F. Supp. 2d at 17. Plainly, "[t]he act of contributing to a foundation is not within our ordinary understanding of 'trade and traffic or commerce.'" Id. at 18. Equally important, charitable contributions were not "within the contemplation of the Congress that enacted the FSIA in 1976." Id. In adopting the commercial activity exception, Congress expected courts to look to the "'essential nature'" of the act in question, and the "legislative history makes clear that courts should not deem activity 'commercial' as a whole simply because certain aspects of it are commercial." Letelier v. Republic of Chile, 748 F.2d 790, 796 (2d Cir. 1984) (quoting H.R.

Rep. No. 94-1487, at 16, <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6615).  Congress thus sought to distinguish between purely commercial acts (such as a "contract to make repairs on an embassy building") and governmental acts that contain some commercial component (such as a state's "mere participation in a foreign assistance program").  H.R. Rep. No. 94-1487, at 16, <u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6615.  Accordingly, a governmental act does not lose its sovereign nature simply because it "involve[s] behavior traditionally performed by private persons." <u>Letelier</u>, 748 F.2d at 796-97.

The legislative history clarifies even further the plain language of the FSIA's text, that the SJRC's charitable and humanitarian efforts would not constitute a "commercial activity" within the meaning of the FSIA.  Nothing in the complaint alleges that the SJRC's official acts were of a type by which a private party engages in trade and traffic or commerce.  Al-Suwailem Decl. ¶ 4 ("The SJRC operated solely as a charitable and humanitarian entity, and none of the funds or other aid distributed by the SJRC was provided for 'commercial' purposes.").

Accordingly, the exception to immunity in § 1605(a)(2) does not apply.

## II.     This Court Lacks Personal Jurisdiction Over The SJRC

In addition to a lack of subject-matter jurisdiction over plaintiffs' claims, this Court also lacks personal jurisdiction over the SJRC.  The FSIA provides a statutory basis for personal jurisdiction over a foreign sovereign in any case where subject-matter jurisdiction is appropriate. 28 U.S.C. § 1330(b).  Separate from this statutory authority, this Court must further determine whether the "safeguards of due process" have been satisfied before personal jurisdiction may be exercised over the SJRC.  <u>Texas Trading & Milling Corp. v. Federal Republic of Nigeria</u>, 647 F.2d 300, 313 (2d Cir. 1981) (holding that a foreign state is a person within the meaning of the Fifth Amendment).  The statutory grant of personal jurisdiction, therefore, does not eliminate the

need for the constitutional requirement that the SJRC have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  Under this familiar test, plaintiffs must demonstrate that the SJRC has taken acts to "purposefully avail[] itself of the privilege of conducting activities in the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Parex Bank v. Russian Sav. Bank, 116 F. Supp. 2d 415, 422 (S.D.N.Y. 2000).

Here, plaintiffs have alleged no facts that would permit this Court to exercise personal jurisdiction over the SJRC.  At most, plaintiffs allege that the SJRC coordinated charitable distributions in "Kosovo and Chechnya" (Compl. ¶¶ 124, 203) and that the SJRC maintained an office in "Pristine [sic], Kosovo" that served as a front for Al-Qaeda (id. ¶¶ 125, 147, 176, 200, 205).  Plaintiffs do not — and could not — allege a single action by the SJRC occurring in the state of New York, or even the entire United States.  As previously explained, the SJRC was established by the Kingdom of Saudi Arabia for the sole purpose of providing humanitarian assistance to refugees in Kosovo and Chechnya.  Al-Suwailem Decl. ¶¶ 4-6.  The SJRC "has never solicited charitable or humanitarian donations inside the United States," "has no offices or employees in the United States," holds "no bank accounts or other property in the United States," and "has never conducted any form of business in the United States."  Id. ¶ 15.  Nothing in plaintiffs' complaint suggests otherwise.  Accordingly, plaintiffs have not satisfied their burden of establishing that personal jurisdiction over the SJRC is constitutionally proper, and their complaint must be dismissed.  See Reers, 320 F. Supp. 2d at 149.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint against the SJRC in its entirety.

Respectfully submitted,

KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.

_____/s/_____
Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

*Attorneys for the Saudi Joint Relief Committee*

January 17, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 17th day of January 2005, I caused copies of the <u>Notice of Motion</u>, <u>Memorandum of Law in Support of Motion To Dismiss of the Saudi Joint Relief Committee</u> and proposed <u>Order</u> to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
_____
Kelly Thompson
