UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**Applicable to Prince Sultan Bin Abdulaziz Al Saud** |

*This document relates to :*     Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO PRINCE SULTAN BIN ABDULAZIZ AL SAUD

Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendant Prince Sultan Bin Abdulaziz Al Saud ("Prince Sultan"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.     This RICO Statement pertains to defendant Prince Sultan. Prince Sultan conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda's purposes. Prince Sultan provided funding and material support and substantial assistance to Al Qaeda, directly and indirectly, through his actions and failure to act, which were undertaken with knowledge of foreseeable risks and consequences of how that same funding and material support and substantial assistance would be used and relied upon by Al Qaeda.

Prince Sultan, as chairman of the Supreme Council for Islamic Affairs ("Supreme Council"), is charged with centralizing and reviewing aid requests from Islamic groups including purported charitable and relief organizations such as International Islamic Relief Organization ("IIRO"), Muslim World League ("MWL") and Al Haramain. Charity and relief organizations such as these knowingly and intentionally provided financial and material support to Al Qaeda. For example, both the United States and Saudi Arabia have designated branches of Al Haramain for the financial, material and logistical support they provided to Al Qaeda.

Moreover, Prince Sultan (1) personally contributed significant funds to IIRO and MWL with the knowledge that those entities were diverting financial and material support to Al Qaeda; (2) publicly supported and authorized state-sponsorship of IIRO and MWL; (3) supervised and

reviewed aid requests from IIRO and MWL; and (4) made disbursement recommendations relative to IIRO and MWL.

Prince Sultan conducted or participated in, directly or indirectly, the affairs of the Al Qaeda Defendants' enterprise through a pattern of racketeering activity by, *inter alia*: (1) funding the Al Qaeda Defendants' enterprise through the contributions made to the charitable and relief organizations that in turn were diverted to Al Qaeda; (2) authorizing, ratifying, overseeing and/or directing IIRO, MWL, Al Haramain and other charitable and relief organizations in their provision of financial and material support and substantial assistance to the Al Qaeda Defendants enterprise; and (3) personally funding and otherwise materially supporting IIRO and MWL with the knowledge that these entities provided financial and material support to Al Qaeda.

Prince Sultan's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs. The basis of Prince Sultan's liability is 18 U.S.C. § 1962(c).

3.  All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.  The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George

2

Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

5.    (a)    <u>List Of Predicate Acts And Specific Statutes Violated</u>

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B)<br>18 U.S.C. §2339A<br>18 U.S.C. §2339B<br>18 U.S.C. §2339C |
|---|---|

     (b)    Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts

From the mid-1990's through September 11, 2001, Prince Sultan was aware that Al Qaeda was actively soliciting *Zakat* in furtherance of its terrorist ends and that Saudi charities and relief organizations and Saudi banks and financial institutions actively were complying with Al Qaeda's requests. In fact, in November of 1994, Charles Pasqua, who was the French Interior Minister, met with Prince Sultan and raised the issue of ongoing financing of terrorist groups by charitable organizations enjoying state support and officially requested that Prince Sultan put an end to it. Yet, despite Prince Sultan's knowledge with respect to terrorist financing, he continued to fund, support, endorse and/or approve the activities of the charity and relief organizations. Moreover, since 1994, Prince Sultan has: (1) donated more than $2 million dollars to defendant IIRO; (2) donated more than $500,000 dollars to defendant MWL; and (3) made substantial contributions to defendant Al-Haramain. Therefore, Prince Sultan knowingly and intentionally lent repeated material support and substantial assistance to Al Qaeda.

     (c)    Not applicable.

     (d)    No.

     (e)    No.

     (f)    The predicate acts conducted by Prince Sultan form a pattern of racketeering in that they are repeated and continuous. From the mid-1990's through September 11, 2001, Prince Sultan consistently, continuously and repeatedly provided material support for terrorism.

     (g)    The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because Prince Sultan's knowing and intentional provision of material support to Al Qaeda, materially supported and assisted Al Qaeda, which assistance culminated in the September 11 attack.

6.    (a)    The enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members.

     (b)    The Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide.

Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

Al Qaeda's stated purpose is the overthrow of secular non-Muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by *Shari'a* (Islamic law). As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah*, Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-democratic purpose, the September 11th attack being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.

At the time of the September 11th attack, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

     (c)    Prince Sultan does not appear to be an employee, officer or director of the Enterprise.

     (d)    Prince Sultan associated himself with the Enterprise.

     (e)    Prince Sultan is an entity that is separate and distinct from the Enterprise, Al Qaeda. Prince Sultan associated himself with the Enterprise.

     (f)    Not applicable.

4

DOCSNY.133754.1

7.  As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. The pattern of racketeering activity conducted by Prince Sultan is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attack.

8.  Al Qaeda conducts terrorism around the world. Prince Sultan conducted the racketeering activity by, *inter alia*: (1) funding the Al Qaeda Enterprise through contributions made to the IIRO, MWL, Al Haramain; (2) authorizing, ratifying, overseeing and/or directing charitable and relief organizations in their provision of financial and material support and substantial assistance to the Al Qaeda Defendants enterprise; and (3) personally funding and otherwise materially supporting IIRO and MWL. The racketeering activity conducted by Prince Sultan substantially assists and materially supports Al Qaeda's terrorist activity. The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens, all of which are funded and/or materially supported by the racketeering activities described herein.

9.  Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10. Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." The Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attack, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11. Not applicable.

12. Not applicable.

13. (a) Defendants Osama bin Laden, Ayman al-Zawahiri, among others whose identities are unknown are employed or associated with Al Qaeda.

    (b) The same entity is not both the liable "person" and the "enterprise" under 1962(c). Al Qaeda is the RICO enterprise. Prince Sultan is a separate "person" within the meaning of RICO.

14. Not applicable.

15. The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

    The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH

5

stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16. Prince Sultan's uninterrupted financial and material support of terrorism, as described herein and in the Amended Complaint, enabled the Enterprise to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of Prince Sultan proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of Prince Sultan.

17. Prince Sultan is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18. <u>Federal Causes of Action</u>

| **Count Two** | Anti-Terrorism Act, 18 U.S.C. §2331, 2333 18 U.S.C §2333 18 U.S.C. §2339A 18 U.S.C. §2339B 18 U.S.C. §2339C |
|---|---|
| **Count Four** | Civil Rico, 18 U.S.C. §1962 |
| **Count Nine** | Violations of International Law, *see* 28 U.S.C.§1331 |

19. <u>Pendant State Claims</u>

| **Count One** | Trespass |
|---|---|

6

| Count Ten | Conspiracy |
|---|---|
| Count Eleven | Aiding and Abetting |
| Count Twelve | Punitive Damages |
| Count Thirteen | Contribution and Indemnity |

20.   Not applicable

Dated: January 21, 2005                         Respectfully submitted,

                                                By: _____/S/_____
                                                    Jonathan M. Goodman (JG 3031)

                                                Kenneth L. Adams
                                                Stacey A. Saiontz
                                                DICKSTEIN SHAPIRO MORIN
                                                  & OSHINSKY LLP
                                                1177 Avenue of the Americas
                                                New York, New York 10036
                                                (212) 835-1400

                                                Attorneys for Plaintiffs

DOCSNY.133754.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**Applicable to Prince Salman bin Abdul Aziz al Saud** |

*This document relates to :*     Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
                                 04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO
## PRINCE SALMAN BIN ABDULAZIZ AL SAUD

Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendant Prince Salman bin Abdul Aziz al Saud ("Prince Salman"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.      This RICO Statement pertains to defendant Prince Salman. Prince Salman conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda's purposes. Prince Salman provided funding and material support and substantial assistance to Al Qaeda, directly and indirectly, through his actions and failure to act, which were undertaken with knowledge of foreseeable risks and consequences of how that same funding and material support and substantial assistance would be used and relied upon by Al Qaeda.

        Prince Salman became head of defendant Saudi High Commission for Relief when it was founded in or about 1993. During the relevant period, and according to the CIA, the Saudi High Commission for Relief was an official Saudi governmental organization charged with collecting and disbursing humanitarian aid. The Saudi High Commission for Relief knowingly and intentionally provided financial and material support to Al Qaeda. Prince Salman authorized, ratified, oversaw and/or directed the Saudi High Commission for Relief in its funding, financing, and provision of financial and material support and substantial assistance to the Al Qaeda Enterprise.

        Prince Salman publicly supported and authorized state-sponsorship of International Islamic Relief Organization ("IIRO") and Al Haramain. He also personally funded IIRO and Al Haramain with knowledge that such financial and material support was being diverted to Al

Qaeda. In fact, both the United States and Saudi Arabia have designated branches of Al Haramain for the financial, material and logistical support they provided to Al Qaeda.

Prince Salman conducted or participated in, directly or indirectly, the affairs of the Al Qaeda Enterprise though a pattern of racketeering activity by, *inter alia*: (1) funding the Al Qaeda Enterprise through contributions made to the IIRO and Al Haramain; (2) authorizing, ratifying, supervising, controlling, overseeing and/or directing the Saudi High Commission for Relief in its provision of financial and material support and substantial assistance to the Al Qaeda Enterprise; and (3) publicly supporting and authorizing state-sponsorship of International Islamic Relief Organization ("IIRO") and Al Haramain.

Prince Salman's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs. The basis of Prince Salman's liability is 18 U.S.C. § 1962(c).

3.   All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.   The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the

Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

5. (a) <u>List Of Predicate Acts And Specific Statutes Violated</u>

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B) <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|

(b) Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts

From the mid-1990's through September 11, 2001, Prince Salman was aware that Al Qaeda was actively soliciting *Zakat* in furtherance of its terrorist ends and that Saudi charities and relief organizations and Saudi banks and financial institutions actively were complying with its requests. Yet, despite Prince Salman's above described knowledge, he continued to fund, support, endorse and/or approve of the activities of the defendant charity and relief organizations. Throughout the relevant period, Salman authorized, ratified, oversaw, controlled and directed Saudi High Commission for Relief, which disbursed humanitarian aid with the knowledge that such financial and material support was being diverted to Al Qaeda. Moreover, in 1999, Prince Salman donated SR 1.5 million at a fundraiser involving IIRO and Al Haramain. Additionally, in 2001, Prince Salman donated another SR 1.5 million to IIRO and Al Haramain. Therefore, Prince Salman knowingly and intentionally lent repeated material support and substantial assistance to Al Qaeda.

(c) Not applicable.

(d) No.

(e) No.

(f) The predicate acts conducted by Prince Salman form a pattern of racketeering in that they are repeated and continuous. From the mid-1990's through September 11, 2001, Prince Salman consistently and consistently provided material support for terrorism.

(g) The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because Prince Salman's knowing and intentional provision of material support to Al Qaeda, materially supported and assisted Al Qaeda, which assistance culminated in the September 11 attack.

6. (a) The enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members.

(b) The Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide. Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

3

Al Qaeda's stated purpose is the overthrow of secular non-Muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by *Shari'a* (Islamic law). As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah*, Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-democratic purpose, the September 11th attack being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.

At the time of the September 11th attack, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

(c)     Prince Salman does not appear to be an employee, officer or director of the Enterprise.

(d)     Prince Salman associated himself with the Enterprise.

(e)     Prince Salman is an entity that is separate and distinct from the Enterprise, Al Qaeda. Prince Salman associated himself with the Enterprise.

(f)     Not applicable.

7.     As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Prince Salman is the President of the Saudi High Commission

4

for Relief. The pattern of racketeering activity conducted by Prince Salman is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attack.

8.     Al Qaeda conducts terrorism around the world. Prince Salman conducted the racketeering activity by, *inter alia*: (1) funding the Al Qaeda Enterprise through contributions made to the IIRO and Al Haramain; (2) authorizing, ratifying, supervising, controlling, overseeing and/or directing the Saudi High Commission for Relief in its provision of financial and material support and substantial assistance to the Al Qaeda Enterprise; and (3) publicly supporting and authorizing state-sponsorship of International Islamic Relief Organization ("IIRO") and Al Haramain. The racketeering activity conducted by Prince Salman substantially assists and materially supports Al Qaeda's terrorist activity. The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens, all of which are funded and/or materially supported by the racketeering activities described herein.

9.     Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10.    Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." The Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attack, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11.    Not applicable.

12.    Not applicable.

13.    (a)    Defendants Osama bin Laden, Ayman al-Zawahiri, among others whose identities are unknown are employed or associated with Al Qaeda.

       (b)    The same entity is not both the liable "person" and the "enterprise" under 1962(c). Al Qaeda is the RICO enterprise. Prince Salman is a separate "person" within the meaning of RICO.

14.    Not applicable.

15.    The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

       The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority

Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16. Prince Salman's uninterrupted financial and material support of terrorism, as described herein and in the Amended Complaint, enabled the Enterprise to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of Prince Salman proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of Prince Salman.

17. Prince Salman is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18. <u>Federal Causes of Action</u>

| | |
|---|---|
| **Count Two** | Anti-Terrorism Act, 18 U.S.C. §2331, 2333 <br> 18 U.S.C §2333 <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
| **Count Four** | Civil Rico, 18 U.S.C. §1962 |
| **Count Nine** | Violations of International Law, *see* 28 U.S.C. §1331 |

19. <u>Pendant State Claims</u>

| | |
|---|---|
| **Count One** | Trespass |

6

| Count Ten | Conspiracy |
| --- | --- |
| Count Eleven | Aiding and Abetting |
| Count Twelve | Punitive Damages |
| Count Thirteen | Contribution and Indemnity |

20.   Not applicable

Dated: January 21, 2005

Respectfully submitted,

By: _____/S/_____
Jonathan M. Goodman (JG 3031)

Kenneth L. Adams
Stacey A. Saiontz
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

Attorneys for Plaintiffs

7