UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re TERRORIST ATTACKS on ) <br> SEPTEMBER 11, 2001 ) <br> ) | 03 MDL 1570 (RCC) <br> ECF Case |

*This document relates to:*
    *Burnett v. Al Baraka Inv. & Dev. Corp.*, 03 CV 9849 (RCC)
    *Ashton v. Al Qaeda Islamic Army*, 02 CV 6977 (RCC)

**MEMORANDUM OF LAW IN SUPPORT OF
THE NATIONAL COMMERCIAL BANK'S MOTION FOR RECONSIDERATION**

Pursuant to Local Rule 6.3 and Rule 59(e) of the Federal Rules of Civil Procedure, The National Commercial Bank ("NCB") respectfully moves for reconsideration of the Court's denial without prejudice of NCB's motion to dismiss. *See* Jan. 18, 2005 Opinion & Order (MDL Dkt. #632) (hereinafter, "Slip Opn."), at 12-15, 42-44, 60-61. In summary:

- Under Second Circuit precedent, the Court has authority to decide NCB's alternative motion under Rule 12(b)(6) at this time, before NCB's jurisdictional defenses are resolved. For the same reasons that the Court granted the Rule 12(b)(6) motions of the other Saudi bank defendants, the Court should dismiss the complaints against NCB for failure to state a claim.

- Alternatively, jurisdictional discovery should proceed first on the personal jurisdiction defense, which has the potential to be quickly decisive without enmeshing core ministries of the Saudi government in jurisdictional discovery.

**I.    The Court Has Authority to Decide NCB's Rule 12(b)(6) Motion Now.**

The Court concluded that "it would be premature to analyze Plaintiffs' largely conclusory claims against NCB at this time" because "NCB may be immune from suit" under the FSIA and "the Court is not yet convinced that it would be proper to exercise personal jurisdiction over NCB." Slip Opn. at 60-61. Under Second Circuit precedent, however, the Court is authorized to decide NCB's Rule 12(b)(6) motion at this time, and should dismiss the *Burnett* and *Ashton* complaints against NCB for the same reasons that the Court granted the Rule 12(b)(6) motions of the other

1

Saudi banks. *Id.* at 55-59.[1] Those reasons apply equally to NCB because Plaintiffs' allegations against NCB are substantively the same as Plaintiffs' allegations against the other Saudi banks.

Of course, the general rule is that a federal court cannot resolve "merits" defenses like failure to state a claim until it determines that it has jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577-78 (1999); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-101 (1998). However, the Second Circuit recognizes an exception to that rule, under which the Court may bypass jurisdictional issues when the outcome of the merits question is "foreordained" by another "controlling" decision. *Center for Reproductive Law & Policy v. Bush*, 304 F.3d 183, 194-95 (2d Cir. 2002) (citing *Steel Co.*, 523 U.S. at 98). In *Bush*, plaintiffs brought a constitutional challenge to a federal statute that was identical to a challenge that the Second Circuit had rejected twelve years earlier. *Id.* at 189-90. Rather than decide plaintiffs' "novel question of jurisdiction," *id.* at 195, the Second Circuit bypassed those issues and dismissed the case on the merits because the result was "foreordained" by its prior decision. *Id.* at 193-95. The Second Circuit held that it was proper to do so because "the precise merits question ha[d] already been decided in another case by the same court . . . ." *Id.* at 195; *see also Norton v. Mathews*, 427 U.S. 524, 530 (1976) (discussed in *Bush*, 304 F.3d at 193-94; "We think it unnecessary. . . to resolve the details of these difficult and perhaps close jurisdictional arguments. The substantive questions raised on this appeal now have been determined in *Mathews v. Lucas* . . . .").

The *Bush* exception to the "jurisdiction first" rule applies here. The Court's Rule 12(b)(6) decision dismissing the other Saudi banks is law of the case in these consolidated proceedings. *See In re Ski Train Fire in Kaprun, Austria, on November 11, 2004*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004) (non-final rulings in MDL consolidated actions are law of the case). Thus, if the Court concludes that its

---

[1]   The Court dismissed all claims in a number of complaints against Saudi American Bank, Al Rajhi Bank, and Arab Bank. Slip Opn. at 55-59.

decision dismissing the other Saudi banks "foreordains" the dismissal of NCB, then the Court has authority to dismiss NCB based on Rule 12(b)(6) now. NCB respectfully requests that the Court do so because, as the following chart demonstrates, Plaintiffs' allegations against NCB duplicate the allegations against the other Saudi banks, and the Court found those allegations insufficient to state a claim for relief (*i.e.*, donations to charities and provision of financial services, all without knowledge that the charities and customers were terrorist fronts).[2]

---

[2] There is another Second Circuit doctrine that similarly allows the Court to dismiss Plaintiffs' claims at this time. When a plaintiff's federal claims are "patently without merit," a district court in the Second Circuit is authorized to dismiss the case for lack of jurisdiction because the complaint does not "present[ ] any issue worthy of adjudication." *E.g.*, *Perpetual Securities Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002); *Giulini v. Blessing*, 654 F.2d 189, 192 (2d Cir. 1981). As the comparison chart demonstrates, the Court's decision dismissing the claims against the other Saudi banks applies equally to NCB and, for that reason, the claims against NCB are patently without merit and not worthy of adjudication.

| Allegations (Per Opinion) | SAMBA<br>*Burnett + Ashton* | Arab Bank<br>*Burnett + Fed. Ins.* | Al Rajhi<br>*Burnett* | NCB<br>*Burnett + Ashton* |
|---|---|---|---|---|
| Instruments of terror | X<br>(Slip Opn. at 55) | X<br>(Slip Opn. at 55) | X<br>(Slip Opn. at 55) | X<br>(Slip Opn. at 55) |
| Money passing through bank | X<br>(Slip Opn. at 58) | X<br>(Slip Opn. at 59) | X<br>(Slip Opn. at 57) | X<br>(Slip Opn. at 10) |
| Materially supported Al Qaeda/OBL | X<br>(Slip Opn. at 58) | X<br>(Slip Opn. at 59) | X<br>(Slip Opn. at 55) | X<br>(Slip Opn. at 10) |
| Bank for charities: AH, MWL, BIF, WAMY, SJRC, IIRO, Muwaffaq, Red Crescent | X<br>(Slip Opn. at 58)<br>WAMY, AH, IIRO | X<br>(Slip Opn. at 59)<br>IIRO, MWL, WAMY, BIF, Muwaffaq | X<br>(Slip Opn. at 55)<br>AH, MWL, WAMY, SJRC, IIRO | X<br>(Slip Opn. at 10)<br>IIRO, Muwaffaq, Red Crescent |
| "Knew or had to know" that customers were Al Qaeda fronts | | X<br>(Slip Opn. at 59) | X<br>(Slip Opn. at 55, 57) | X<br>(Slip Opn. at 10) |
| Continue to maintain charity accounts | | X<br>(Slip Opn. at 59) | X<br>(Slip Opn. at 55) | |
| Direct donations to charities | | | X<br>(Slip Opn. at 56-57) | X<br>(Slip Opn. at 10) |
| In 1999, US warned Saudi gov't that financial institutions were being manipulated | | | X<br>(Slip Opn. at 55) | |
| Hijacker accounts (held or transfers made); Spanish Al Qaeda cell involved in 9/11 | | X<br>(Slip Opn. at 59) | X<br>(Slip Opn. at 55) | |
| Relationships with other terrorist groups | | X<br>(Hamas)<br>(Slip Opn. at 59) | X<br>(Hamas)<br>(Slip Opn. at 56) | X<br>(Abu Nidal)<br>(Slip Opn. at 10) |
| Owners/employees with ties to OBL | X<br>(Mr. Ali Jumale)<br>(Slip Opn. at 58) | | X<br>(AR Family)<br>(Slip Opn. at 56, 57) | X<br>(KBM)<br>(Slip Opn. at 10) |
| Correspondent bank for bank that finances al Qaeda | X<br>(Slip Opn. at 58) | | | |
| Support for Bin Laden family's business | X<br>(Slip Opn. at 58) | | | |

4

## II. Alternatively, the Court Should Postpone Resolution of NCB's FSIA Defense and First Determine Whether the Court has Personal Jurisdiction over NCB.

If the Court nonetheless concludes that it remains "premature" to reach NCB's 12(b)(6) motion, then NCB respectfully requests that the Court postpone resolution of NCB's FSIA defense and require the parties to proceed first with jurisdictional discovery limited to the question of personal jurisdiction, after which NCB would renew its motion to dismiss on that basis. The Supreme Court has held that there is no "unyielding jurisdictional hierarchy" requiring federal courts to decide subject matter jurisdiction before personal jurisdiction. *Rurhgas*, 526 U.S. at 584-85. Thus, the Court may address the personal jurisdiction issue without first resolving subject matter jurisdiction, given that both are non-merits grounds of equal priority. *Id.* at 584-85; *accord Seaweed, Inc. v. DMA Prod. & Design & Marketing*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) (Marrero, J.).[3]

Principles of comity support the same result. Defendants, like NCB, that assert both FSIA immunity and a personal jurisdiction defense are allowed to choose which jurisdictional defense they want resolved first. As the D.C. Circuit held in another FSIA case:

> [P]rimacy of immunity values need not imply priority of immunity determination. Immunity should reduce the expenses, in time and inconvenience, imposed on foreign sovereigns by litigation in U.S. courts. If one (or more) of the other jurisdictional defenses hold out the promise of being cheaply decisive, and the defendant wants it decided first, it may well be best to grapple with it (or them) first. It would be bizarre if an assertion of immunity worked to increase litigation costs via jurisdictional discovery, to the neglect of swifter routes to dismissal.

*In re Papandreou*, 139 F.3d 247, 254 (D.C. Cir. 1998).

### A. Personal Jurisdiction Offers a Swift Route to Dismissal.

The personal jurisdiction defense holds the promise of being both quickly and "cheaply decisive" given that all of the forum-contacts attributed to NCB (Slip Opn. at 43-44) pre-date the

---

[3] A decision dismissing NCB for lack of personal jurisdiction would make moot NCB's FSIA defense because, even if FSIA subject matter jurisdiction existed as to NCB, the Court still would have to determine whether exercising personal jurisdiction over NCB comported with constitutional due process. *See U.S. Titan v. Guangzhou*, 241 F.3d 135, 151-52 (2d Cir. 2001).

filing of these lawsuits and are insufficient, as a matter of law, to establish personal jurisdiction for that reason. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) (cited in Slip Opn. at 45) (on interlocutory appeal, vacating denial of motion to dismiss for lack of personal jurisdiction).

In *Klinghoffer*, a case under the Anti-Terrorism Act, the Second Circuit directed the district court to apply the rule that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." *Id.*[4] There, the evidence of the PLO's forum-contacts predated the filing of several complaints. *Id.* As this Court has noted, in limited circumstances, a court may consider forum-contacts that pre-date a lawsuit, but that exception to the *Klinghoffer* rule does not apply here. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996) (cited in Slip Opn. at 45). In *Metropolitan Life*, the defendant still had a presence in the forum (Vermont) at the time the lawsuit was filed, and argued that only its activities during the filing-year were relevant to the "doing business" test of personal jurisdiction. *Id.* at 565-66.

Pre-lawsuit forum-contacts can be jurisdictionally significant only if "those contacts establish the pattern of contacts that existed at the moment the complaint was filed." *Schenker v. Assicurazioni Genereali S.p.A., Consolidated*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002) (emphasis added; cited in Slip Opn. at 42; citing *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 1995 WL 131774, at *2 n.1 (S.D.N.Y. Mar. 23, 1995)).[5] No such NCB "pattern of contacts" with the United States "existed at the moment" that any of these lawsuits was filed.

---

[4]  *Accord Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.,* 41 F. Supp. 2d 453, 458 n.2 (S.D.N.Y. 1999) ("The jurisdictional inquiry under § 301 covers activities of the party at the time of service of summons and complaint, not at the time alleged cause of action ensues."), *reconsideration denied*, 60 F. Supp. 2d 241 (S.D.N.Y. 1999); *Jesselson v. Lasertechnics, Inc.,* 1997 WL 317355, *1 (S.D.N.Y. June 12, 1997) ("In order for this Court to assert jurisdiction over Lasertechnics pursuant to CPLR § 301, the corporation must have been 'doing business' in New York at the time that the complaint in this action was filed and served, rather than at the time that the cause of action arose.").

[5]  This rule is consistent with the principle that "[t]he Court must ... analyze a defendant's connections to the forum state not for the sake of contact-counting, but rather for whether such

Independent of the timing issue, moreover, the jurisdictional contacts that the Court attributed to NCB cannot, as a matter of law, be treated as U.S. contacts <u>by NCB</u>.  "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact [by the defendant] with the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).  Accordingly, "the presence of a <u>subsidiary</u> until 2001" (Slip Opn. at 43-44 (emphasis added)) is not a forum-contact <u>by NCB</u> unless Plaintiffs demonstrate that the subsidiary was a "mere department" or "agent" of NCB.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  Plaintiffs <u>never</u> made any such contention.  *See Martinez v. Sanders*, No. 02-5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (Casey, J.) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned."); *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 458 (S.D.N.Y. 1999) (granting motion to dismiss for lack of personal jurisdiction and denying jurisdictional discovery where plaintiff's "ambiguous characterization" of subsidiary insufficient to establish jurisdiction over parent).

Moreover, the Court may take judicial notice of the undisputed record evidence that the NCB "subsidiary until 2001"—actually, "NCB's second-tier subsidiary, SNCB Securities, Inc." (Slip Opn. 42)—was not a "mere department" or "agent" of NCB.[6]  That evidence demonstrates that, like its parent SNCB Securities Ltd. (London), SNCB Securities, Inc. (Delaware) observed corporate formalities and operated separately from NCB.  *See* MDL Dkt. #415, at 9-13 & Exh. 2.  Indeed, the

---

contacts show a <u>continuous, permanent</u> and substantial activity" in the forum.  *Landoil Res. Corp. v. Alexander & Alexander, Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (emphasis added).

[6]   *See* MDL Dkt. #415 (Aug. 30, 2004) (motion of SNCB Securities Ltd. (London), former parent of SNCB Securities, Inc. (Delaware), seeking dismissal of, *inter alia*, the *Ashton* complaint); *In re Enterprise Mortgage Acceptance Co.*, 391 F.3d 401, 410 n.8 (2d Cir. 2004) (taking judicial notice of arguments made in amicus brief submitted in pending appeal); *B.T. Produce Co. v. Robert A. Johnson Sales, Inc.*, --- F. Supp. 2d ---, 2004 WL 2913252, at *3 n.3 (S.D.N.Y. Dec. 14, 2004) (Marrero, J.) (taking judicial notice of various pleadings filed in criminal case).

*Burnett* plaintiffs did not even sue the SNCB companies, and most of the plaintiffs in these consolidated proceedings have now dismissed their claims against the SNCB companies, even while maintaining their claims against NCB.[7]

Similarly, advertisements appearing in the <u>Muslim World League Journal</u>, which referenced an NCB account number, cannot be treated as a forum-contact <u>by NCB</u>. Slip Opn. at 43-44. Plaintiffs offered nothing but speculation in their briefs (*Burnett* Opp. at 49-50; *Ashton* Opp. at 17) to counter NCB's point "that there is no indication it [*i.e.*, NCB] placed the advertisements in [the <u>Journal</u>] or that any donations were deposited into NCB accounts." Slip Opn. at 43. Speculative assertions made in a plaintiff's brief can <u>never</u> sustain a claim of personal jurisdiction. *Id.* at 27 ("[The Court] will not, however, accept legally conclusory assertions [of personal jurisdiction] or draw 'argumentative inferences.'"); *Stilley v. American Chambers Life Ins. Co.*, No. 91-7022, 1992 WL 147906, at *2 (S.D.N.Y. June 18, 1992) ("Plaintiffs do make factual assertions in their briefs, but briefs do not constitute evidence that the court can consider on a motion to dismiss."); *accord Gallery 13 Ltd. v. Easter*, No. 93-8865, 1995 WL 258143, at *2 (S.D.N.Y. May 2, 1995) (same).

Finally, the uncontradicted record that the Court itself recited (Slip Opn. at 42-43) confirms that NCB's involvement in U.S. lawsuits dating back to the mid-to-late 1990s was, at most, sporadic and ended not later than 1998—falling far short of even the most generous test for the constitutionally required "continuous and systematic" contacts. *Id.* at 34 (general jurisdiction requires "a <u>considerably higher</u> level of contacts" (emphasis added)).

**B.      Personal Jurisdiction Discovery Limits Intrusion on a Foreign Sovereign.**

Moreover, personal jurisdiction discovery would involve NCB, but not the core ministries of the Saudi government that have offered evidence of NCB's status as an "instrumentality" under the

---

[7]    *See* MDL #549 (dismissal by *Ashton*, *Federal Insurance*, and *Barrera* plaintiffs); MDL #622 (dismissal by *Continental Casualty* plaintiffs); MDL Dkt. #633 (dismissal by the *Salvo* plaintiffs); *NY Marine* Dkt. #29 (dropping SNCB companies as defendants from First Am. Compl.).

FSIA. Slip Opn. at 12-13. The Court has recognized the "delicate balanc[e] between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or a sovereign's agency's legitimate claim to immunity from discovery." *Id.* at 5 (citation omitted). Accordingly, when, as here, personal jurisdiction offers a viable and swift alternative route to dismissal, it is advisable to postpone discovery on subject matter jurisdiction issues that intrude on core ministries of a foreign government. *Id.* at 14-15; *see In re Papandreou*, 139 F.3d at 254.

## Conclusion

For the foregoing reasons, NCB's motion for reconsideration should be granted.

Dated: February 1, 2005  
Washington, D.C.

/s/ Ronald S. Liebman  
Ronald S. Liebman (admitted *pro hac vice*)  
Mitchell R. Berger (MB-4112)  
Ugo Colella (admitted *pro hac vice*)  
PATTON BOGGS LLP  
2550 M Street, N.W.  
Washington, D.C. 20037  
Phone: 202-457-6000  
Fax:     202-457-6315  

*Attorneys for Defendant*  
*The National Commercial Bank*