### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| | ) | |
| *In Re* Terrorist Attacks on September 11, 2001 | ) | No. 03 MDL 1570 (RCC) |
| | ) | ECF Case |

_____

This document relates to:

    Ashton, *et al.* v. Al Qaeda Islamic Army, *et al.*, Case No. 02-CV-6977;

    Burnett, *et al.* v. Al Baraka Investment & Development Corp., *et al.*, Case No. 03-CV-5738;

    Salvo, *et al.* v. Al Qaeda Islamic Army, *et al.*, Case No. 03-CV-5071; and

    Tremsky, *et al.* v. Osama Bin Laden, *et al.*, Case No. 02-CV-7300.

### NOTICE OF PEROUZ SEDAGHATY'S
### MOTION TO DISMISS
### THE CONSOLIDATED PERSONAL INJURY COMPLAINTS

    PLEASE TAKE NOTICE that, pursuant to Rule 12(b), Fed. R. Civ. P., defendant Perouz Sedaghaty, by and through undersigned counsel, hereby makes a limited appearance for the purpose of moving the Court, before the Honorable Richard C. Casey, United States District Judge, at the United States District Court, Southern District of New York, 500 Pearl Street, New York, New York 10007, at a date and time to be determined by the Court, for an order dismissing, pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P., the personal injury plaintiffs' complaints in the following four cases, Ashton, *et al.* v. Al Qaeda Islamic Army, *et al.*, Case No. 02-CV-6977; Burnett, *et al.* v. Al Baraka Investment & Development Corp., *et al.*, Case No. 03-CV-5738; Salvo, *et al.* v. Al Qaeda Islamic Army, *et al.*, Case No. 03-CV-5071; and Tremsky, *et al.* v. Osama Bin Laden, *et al.*, Case No. 02-CV-7300, on the basis of (1) lack of personal jurisdiction and (2) failure to state a claim upon which relief can be granted.  A memorandum of law, with exhibits, in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Perouz Sedaghaty

DATED:  February 7, 2005

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | No. 03 MDL 1570 (RCC) ECF Case |

_____

This document relates to:

   ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;
   BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;
   SALVO, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 03-CV-5071;
   TREMSKY, *et al.* v. OSAMA BIN LADEN, *et al.*, Case No. 02-CV-7300.


# MEMORANDUM OF LAW IN SUPPORT OF
# PEROUZ SEDAGHATY's
# MOTION TO DISMISS
# THE CONSOLIDATED PERSONAL INJURY COMPLAINTS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Perouz Sedaghaty

DATED:  February 7, 2005

# TABLE OF CONTENTS

I.     Introduction ............................................................................................. 1

II.    Procedural History ................................................................................. 1

III.   Factual Background ............................................................................... 2

IV.   Summary of Legal Argument ................................................................ 4

V.    Plaintiffs' Allegations Are Insufficient to Establish a Cause of Action Against Mr. Sedaghaty for Plaintiffs' Tort Claims ....................................................... 5

       A.    Plaintiffs Fail to Plead Sufficient Facts Showing That Mr. Sedaghaty's Acts Proximately Caused Plaintiffs' Injuries ....................................................... 5

       B.    Plaintiffs' Allegations are Insufficient to Make out Their Tort Claims Against Mr. Sedaghaty ................................................................................. 9

VI.   Plaintiffs Lack Standing to Maintain Their RICO Claims Because Their Injuries are Personal Injuries, Not Injuries to Business or Property ..................................... 12

VII.  Plaintiffs' Allegations are Insufficient to Establish a Cause of Action Against Mr. Sedaghaty for Plaintiffs' RICO Claims .................................................... 13

VIII. Plaintiffs' Allegations are Insufficient to Make out Negligence Claims Against Mr. Sedaghaty Because He Owed No Duty of Care to Plaintiffs ............................ 15

IX.   Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No Independent Cause of Action Exists ....................................................... 16

X.    Plaintiffs' Conspiracy Damage Claims Fail as a Matter of Law Because No Independent Cause of Action Exists ....................................................... 16

XI.   This Court Lacks Personal Jurisdiction over Mr. Sedaghaty Pursuant to Rule 4(k)(1)(D),  Fed. R. Civ. P. or the New York Long-Arm Statute ............................ 17

       A.    Rule 4(k)(1)(D), Fed. R. Civ. P., Does Not Allow the Exercise of Personal Jurisdiction over Mr. Sedaghaty ................................................................ 18

       B.    The New York Long-Arm Statute Does Not Allow the Exercise of Personal Jurisdiction over Mr. Sedaghaty ................................................................ 18

C.   The Constitutional Requirements of Due Process Do Not Allow the
Exercise of Personal Jurisdiction over Mr. Sedaghaty ................................. 21

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................... 17

Am. Arbitration Ass'n, Inc. v. DeFonseca,
    No. 93 Civ. 2424 (CSH), 1996 WL 363128 (S.D.N.Y. June 28, 1996) .............. 14

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................................. 9

Asahi Metal Indus. Co. v. Superior Court of Calif.,
    480 U.S. 102 (1987) ......................................................................................... 22

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ............................................................................. 17

Bao Ge v. Li Peng,
    201 F. Supp. 2d 14 (D.D.C. 2000), aff'd 35 Fed. Appx. 1 (D.C. Cir. 2002) ...... 10

Bedford Affiliates v. Sills,
    156 F.3d 416 (2d Cir. 1998) ............................................................................... 8

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) ..................................................................... 7, 10

Burger King v. Rudzewicz,
    471 U.S. 462 (1985) ......................................................................................... 22

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................. 13, 15

Calder v. Jones,
    465 U.S. 783 (1984) ..................................................................................... 20-21

Christiansen v. National Sav. & Trust Co.,
    683 F.2d 520 (D.C. Cir. 1982) .................................................................... 15-16

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ....................................................... 17, 19-20

Conley v. Gibson,
      355 U.S. 41 (1957) ..................................................................................... 4

Daventree Ltd. v. Republic of Azerbaijan,
      No. 02 Civ. 6356 (SHS), 2004 WL 2997881 (S.D.N.Y. Dec. 28, 2004) ............ 20

De Jesus v. Sears, Roebuck & Co.,
      87 F.3d 65 (2d Cir. 1996) ...................................................................... 4-5, 8

Dineen v. Stramka,
      228 F. Supp. 2d 447 (S.D.N.Y. 2002) ............................................................ 11

Dole Food Co. v. Patrickson,
      538 U.S. 468 (2003) ..................................................................................... 9

Dubai Islamic Bank v. Citibank, N.A.,
      256 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................................ 14

Family Internet, Inc. v. Cybernex, Inc.,
      No. 98 Civ. 0637 (RWS), 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ............... 21

First Nationwide Bank v. Gelt Funding Corp.,
      27 F.3d 763 (2d Cir. 1994) ............................................................................ 6

Grove Press, Inc. v. Angleton,
      649 F.2d 121 (2d Cir. 1981) ......................................................................... 17

Hanson v. Denckla,
      357 U.S. 235 (1958) .................................................................................... 21

Howell v. New York Post Co.,
      81 N.Y.2d 115, 612 N.E.2d 699 (1993) .......................................................... 11

In re Magnetic Audiotape Antitrust Litig.,
      334 F.3d 204 (2d Cir. 2003) ........................................................................ 22

In re: Terrorist Attacks on Sept. 11, 2001,
      No. 03 MDL 1570 (RCC), 2005 WL 95708 (S.D.N.Y. Jan. 18, 2005) ............... passim

International Shoe Co. v. Washington,
      326 U.S. 310 (1945) .................................................................................... 21

Jerry Kubecka, Inc. v. Avellino,
      898 F. Supp. 963 (E.D.N.Y. 1995) ................................................................ 13

iv

JSC Foreign Economic Ass'n v. Intl. Dev. & Trade Servs., Inc.,
        306 F. Supp. 2d 482 (S.D.N.Y. 2004) .................................................. 8

Kajtazi v. Kajtazi,
        488 F. Supp. 15 (E.D.N.Y. 1978) ....................................................... 17

Keeton v. Hustler Magazine, Inc.,
        465 U.S. 770 (1984) ........................................................................... 22

King v. Crossland Savings Bank,
        111 F.3d 251 (2d Cir. 1997) ............................................................... 15

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
        191 F.3d 229 (2d Cir. 1999) ............................................................... 13

Lehigh Valley Indus., Inc. v. Birenbaum,
        527 F.2d 87 (2d Cir. 1975) ................................................................. 19

Lesavoy v. Lane,
        304 F. Supp. 2d 520 (S.D.N.Y. 2004) ................................................ 14

Liberman v. Worden,
        701 N.Y.S.2d 419 (App. Div. 2000) .................................................... 6

Mayes v. UVI Holdings, Inc.,
        723 N.Y.S. 2d 151 (App. Div. 2001) .................................................. 16

McCarthy v. Olin Corp.,
        119 F.3d 148 (2d Cir. 1997) ............................................................... 16

McCoy v. Goord,
        255 F. Supp. 2d 233 (S.D.N.Y. 2003) ................................................. 5

McGrath v. United Hosp.,
        562 N.Y.S.2d 193 (App. Div. 1990) .................................................... 15

Mende v. Milestone Tech., Inc.,
        269 F. Supp. 2d 246 (S.D.N.Y. 2003) ............................................ 17-18

Meroni v. Holy Spirit Ass'n for the Unification of World Christianity,
        506 N.Y.S.2d 174 (App. Div. 1986) .................................................... 11

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
        84 F.3d 560 (2d Cir. 1996) ................................................................. 21

v

Milliken v. Meyer,
    311 U.S. 457 (1940) ........................................................................ 21

NAACP v. AcuSport, Inc.,
    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................ 15

National Organization for Women, Inc. v. Scheidler,
    510 U.S. 249 (1994) ........................................................................ 12

Nix v. Hoke,
    62 F. Supp. 2d 110 (D.D.C. 1999) .................................................. 18

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339, 342 (1928) ............................................................... 15

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ................................................. 12

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) .................................................. 12

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................. 6

PT United Can Co. v. Crown Cork & Seal Co.,
    138 F.3d 65 (2d Cir. 1998) .............................................................. 18

Quaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) .............................................................. 14

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) ........................................................................ 13

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ................................................ 16

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................ 10

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) .............................................................. 5

Smith v. Mitlof,
    198 F. Supp. 2d 492 (S.D.N.Y. 2002) .............................................. 5

vi

Stern v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses and Missionaries,
    381 F. Supp. 1003 (D.D.C. 1974) ....................................................................... 16

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ...................................................................... 12

Thomson-CSF, S.A. v. Amer. Arbitration Ass'n,
    64 F.3d 773 (2d Cir. 1995) ................................................................................... 8

Ungar v. Islamic Republic of Iran,
    211 F. Supp. 2d 91 (D.D.C. 2002) .................................................................... 7-8

United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,
    994 F.2d 105 (2d Cir. 1993) ............................................................................... 11

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ............................................................................ 12

U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) ............................................................... 14

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) .................................................................. 13

Whitaker v. American Telecasting, Inc.,
    261 F.3d 196 (2d Cir. 2001) ............................................................................... 20

**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ..................................................................... 10

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................................. 10

    18 U.S.C. § 2331(1) ............................................................................................ 10

    18 U.S.C. § 2334(a) ............................................................................................ 18

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 12-15, 18

    18 U.S.C. § 1962(a) ................................................................................... 1, 13-15

    18 U.S.C. § 1962(c) ................................................................................... 1, 13-15

18 U.S.C. § 1962(d) ........................................................................... 1, 13-15

18 U.S.C. § 1964(c) ........................................................................... 12-13

18 U.S.C. § 1965 ............................................................................... 18

Torture Victim Protection Act, 28 U.S.C. § 1350 note ................................... 1, 9

Federal Rules of Civil Procedure:

Rule 4(k)(1)(D) ................................................................................ 5, 17-18

Rule 12(b) ...................................................................................... 1

Rule 12(b)(2) .................................................................................. 1, 17

Rule 12(b)(6) .................................................................................. 1, 4

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ................................................ 9

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ........................................ 5, 18-21

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............................. 11

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ................................................. 11

**Other Materials:**

<u>Restatement (Second) of Torts</u>, § 9 cmt. b (1965) ........................................ 8

## I.     INTRODUCTION.

Perouz Sedaghaty, an American citizen, was named as a defendant in five of the personal injury complaints before this Court on little more than a bare allegation that he is "one and the same" as a Saudi charity, the al-Haramain Islamic Foundation, and that charity's overseas affiliates.  Mr. Sedaghaty respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) failure to state a claim and (2) lack of personal jurisdiction.  As set forth below, this Court must find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against Mr. Sedaghaty.  This Court must further find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over Mr. Sedaghaty, formerly a resident of Oregon, who lacks sufficient contacts with this forum.

## II.    PROCEDURAL HISTORY.

There are nineteen lawsuits pending before this Court, with an aggregate total of about 835 defendants and 186 counts, spanning over 2,090 pages (not counting the captions) and over 7,250 numbered paragraphs.  See Exhibit 1.  Mr. Sedaghaty is named as a defendant in ten of the nineteen lawsuits pending before this Court.  In this motion, Mr. Sedaghaty seeks to dismiss four of the five personal injury complaints: *Ashton*, *Burnett*, *Salvo*, and *Tremsky*.[1]  Mr. Sedaghaty is moving separately to dismiss the two property damage complaints (*Euro Brokers*, and *World Trade Center Properties*), and the three insurance company subrogation complaints (*Continental Casualty*, *Federal Insurance*, and *N.Y. Marine*) in which he is named as a defendant.

This Court recently held that the plaintiffs could not state claims under the Torture Victim Protection Act against defendants who did not act under color of law.  *In re*: Terrorist

---

[1] Mr. Sedaghaty is moving against the *Burnett* complaint originally filed in this Court, No. 03-CV-5738, which is similar to the *Burnett* complaint filed in the District of Columbia, with numerous changes in the listing of parties.

<u>Attacks on Sept. 11, 2001</u>, No. 03 MDL 1570 (RCC), 2005 WL 95708, at *46 (S.D.N.Y. Jan. 18, 2005).  This Court further held that the plaintiffs could not state Civil RICO claims under 18 U.S.C. § 1962(a), (c), and (d), against those defendants who were not "central figures in the underlying schemes" or whose income was not alleged to have injured plaintiffs.  <u>Id.</u> at *44-*45. This Court held that the assault and battery and intentional infliction of emotional distress claims had to be dismissed with respect to plaintiffs whose complaints were filed more than one year after September 11, 2001, which includes the *Burnett* and *Salvo* complaints herein.  <u>Id.</u> at *47. This Court also held that the negligence and negligent infliction of emotional distress claims could not be stated against defendants who owed no duty to plaintiffs.  <u>Id.</u> at *47-*48.

### III.   FACTUAL BACKGROUND.

In 1989, Perouz Sedaghaty, an American citizen and resident of Oregon, incorporated a religious charity, the Qur'an Foundation, to engage in Islamic education, primarily through distribution of Qur'ans (Korans) upon request to Americans.  <u>See</u> Exhibit 2.  In 1997, several individuals with the now-defunct al-Haramain Foundation in Saudi Arabia ("al-Haramain (SA)"), learned of Mr. Sedaghaty's work, and asked if he would establish an independent affiliate in Oregon, in order to consolidate their work in distributing Qur'ans with that of the Qur'an Foundation.  Mr. Sedaghaty incorporated the Al Haramain Islamic Foundation, Inc. (U.S.A.) ("AHIF") on February 11, 1999.  <u>See</u> Exhibit 3.[2]

The allegations in the four personal injury complaints regarding Mr. Sedaghaty are minimal, since nearly all the allegations regarding "al Haramain" pertain specifically to the Saudi charity or several other affiliates, which are separate entities distinct from Mr. Sedaghaty

---

[2] On September 9, 2004, after the filing of these personal injury lawsuits, AHIF was designated by the Office of Foreign Assets Control, but AHIF is challenging that designation on statutory and constitutional grounds.

2

and AHIF.[3]  The allegations about Mr. Sedaghaty, and AHIF itself, are a mixture of correct, but non-material facts, and unsupported inferences.

The *Ashton*, *Burnett*, *Salvo*, and *Tremsky* plaintiffs correctly state that AHIF operates in Ashland, Oregon;[4] has a board of directors, two of whom were officers of al-Haramain (SA);[5] and owns a mosque in Springfield, Missouri.  See *Ashton* Third Am. Compl. ¶¶ 485-486; *Burnett* Am. Compl. ¶¶ 173-174; *Salvo* Am. Compl. ¶¶ 511-512; *Tremsky* Am. Compl. ¶¶ 99-100.

The plaintiffs then make conclusory and factually unsupported assertions:  AHIF is "one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia" and the "al-Haramain [sic] branch in Ashland, Oregon, is specifically linked to al Qaeda operations."  See *Ashton* Third Am. Compl. ¶ 485; *Burnett* Am. Compl. ¶ 173; *Salvo* Am. Compl. ¶ 511; *Tremsky* Am. Compl. ¶ 99.  The *Ashton* and *Salvo* plaintiffs also make the unclear and vague allegation that "Although al-Haramain operates these branches in many branches but are still controlled primarily from al-Haramain's headquarters in Riyadh, Saudi Arabia."  See *Ashton* Third Am. Compl. ¶ 467; *Salvo* Am. Compl. ¶ 493.

The plaintiffs also allege, without factual support, that Mr. Sedaghaty was one of several "co-conspirators, aiders and abettors" of al-Haramain (SA).  *Ashton* Third Am. Compl. ¶ 469;

---

[3] See *Ashton* Third Am. Compl.  ¶¶ 211, 266, 269, 286, 290, 466-484, 487-493, 510, 512, 560, 584-585, 598, 600-601, 609; *Burnett* Am. Compl.  ¶¶ 48-49, 62, 64-65, 85, 147, 150, 154-172, 175-179, 353, 359, 401, 418-420, 551-552; *Salvo* Am. Compl. ¶¶ 207, 258, 261, 281, 299, 313, 315, 356, 474-475, 488, 490-510, 513-517, 526; *Tremsky* Am. Compl. ¶¶ 15, 29, 31-32, 52, 76, 80-100, 190, 195.

[4] The plaintiffs confuse assumed business names with AHIF's corporate name, by stating that there are "three business entities in Ashland, Oregon:  al-Haramain [sic] Foundation, al-Haramain [sic] Islamic Foundation, and al-Haramain [sic] Islamic Foundation, Inc.  All three of these separately filed businesses are at the same address and under the same management."  See *Ashton* Third Am. Compl. ¶ 485; *Burnett* Am. Compl. ¶ 173; *Salvo* Am. Compl. ¶ 511; *Tremsky* Am. Compl. ¶ 99.  In fact, the first two "entities" are nothing more than assumed business names, and not separately suable entities.  Only the third is a corporate entity.

[5] Moreover, the two individuals who were officers of al-Haramain (SA) subsequently resigned their positions with AHIF in early 2003.  See Exhibit 4.

3

*Burnett* Am. Compl. ¶ 157; *Salvo* Am. Compl. ¶ 495; *Tremsky* Am. Compl. ¶ 83.  In fact, this is

the <u>only</u> time that Mr. Sedaghaty is mentioned anywhere in the text of the four complaints.

## IV.    SUMMARY OF LEGAL ARGUMENT.

Plaintiffs have failed to allege any specific conduct by Mr. Sedaghaty, let alone wrongful

conduct.  Nor have plaintiffs alleged any facts that would establish that Mr. Sedaghaty's conduct

proximately caused plaintiffs' injuries, or to make out the specific requirements of their claims.

The sixteen claims brought against Mr. Sedaghaty by the four personal injury lawsuits

overlap, because several have copied the allegations, claims, and defendants from earlier-filed

complaints.  All four list claims under the Torture Victim Protection Act, the Anti-Terrorism

Act, and common-law survival and punitive damages claims.  The *Burnett* and *Tremsky* plaintiffs

also list claims under the Alien Tort Claims Act and Civil RICO, and common-law negligence,

negligent infliction of emotional distress, intentional inflection of emotional distress, conspiracy,

and aiding and abetting claims.  The *Ashton, Burnett*, and *Salvo* plaintiffs list wrongful death

claims.  The *Ashton* and *Salvo* plaintiffs list assault and battery claims; the former also lists a

property destruction claim, and the latter also lists a nuisance claim.[6]

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim,

where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The Second

Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations

unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)."  <u>De</u>

---

[6] All four personal injury complaints also allege claims pursuant to Foreign Sovereign Immunities Act's state sponsor of terrorism provision, which does not apply to Mr. Sedaghaty.

Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).[7]

　　　As set forth below, plaintiffs have failed to state a cause of action as to their intentional

tort claims, since they have not pled facts to support an allegation that Mr. Sedaghaty's actions

were a "but for" cause of plaintiffs' injuries, or that he was involved in any of those torts.  See

Part V, infra.  Plaintiffs lack standing to bring their RICO claims, because their injuries are only

personal injuries, not injuries to business or property, and plaintiffs have failed to plead any facts

to support any inference required to state their RICO claims.  See Parts VI-VII, infra.  Plaintiffs'

negligence, negligent infliction of emotional distress, and nuisance claims fail to state a cause of

action, because Mr. Sedaghaty owed no duty to plaintiffs.  See Part VIII, infra.  Plaintiffs' claims

for conspiracy and punitive damages fail to state a cause of action, since neither is recognized as

an independent claim under New York law.  See Parts IX-X, infra.  Finally this Court lacks

personal jurisdiction over Mr. Sedaghaty, an non-resident defendant, under either Rule

4(k)(1)(D), Fed. R. Civ. P., or the New York long-arm statute, N.Y. C.P.L.R. § 302(a).  See Part

XI, infra.

### V.　PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST MR. SEDAGHATY FOR PLAINTIFFS' TORT CLAIMS.

### A.　PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT MR. SEDAGHATY'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

---

　　　[7] Accord Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."); Smith v. Mitlof, 198 F. Supp. 2d 492, 498 (S.D.N.Y. 2002) ("Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law.").

This Court must find that the personal injury plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims:  they have not pled sufficient facts showing that Mr. Sedaghaty proximately caused plaintiffs' injuries.  Plaintiffs have merely alleged in a conclusory manner that all defendants provided support to al Qaeda, which led to the September 11 attacks. However, plaintiffs have not pled any facts showing that Mr. Sedaghaty's acts, whatever they were alleged to be, proximately caused their injuries.

As the Second Circuit recognized, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). The plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re* Sept. 11, 2005 WL 95708, at *43.  In order to impose tort liability on Mr. Sedaghaty through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").  However, plaintiffs have stated nothing more a conclusory and unsupported allegation that Mr. Sedaghaty was one of several "co-conspirators, aiders and abettors" of al-Haramain (SA).  *Ashton* Third Am. Compl. ¶

6

469; *Burnett* Am. Compl. ¶ 157; *Salvo* Am. Compl. ¶ 495; *Tremsky* Am. Compl. ¶ 83.  These

facts are insufficient to meet the standards set forth in the Second Circuit's <u>Pittman</u> precedent,

and this Court's prior ruling.  Hence, the absence of specific allegations regarding Mr. Sedaghaty

himself requires this Court to find that plaintiffs cannot use concerted liability theories as a basis

for their tort claims against him.

      Plaintiffs made no specific allegations regarding allegedly illegal activities of Mr.

Sedaghaty, an American citizen.  Instead, plaintiffs' allegations are almost entirely about the

activities of al-Haramain (SA) and several of its other affiliates.  Regardless of the veracity of

these allegations, plaintiffs have not pled any facts to support an allegation that Mr. Sedaghaty

had any control over, knowledge of, or participation in the activities of al-Haramain (SA), let

alone its other affiliates.  Plaintiffs fail to plead any facts to support an inference that Mr.

Sedaghaty (1) intentionally provided assistance to al-Haramain (SA) or to any al Qaeda entity,

knowing that the recipient engaged in terrorist activities; or (2) had authority or control over the

activities of al-Haramain (SA) or any al Qaeda entity, knowing it engaged in terrorist activities;

or (3) knew that the recipients of his assistance would engage in terrorism.  This stands in stark

contrast to the more specific allegations that plaintiffs did make about several other defendants,

and which this Court found to be sufficient as to one defendant alleged to have had specific ties

with al Qaeda entities and individuals.  *In re* <u>Sept. 11</u>, 2005 WL 95708, at *41-*42, *54.

      The Seventh Circuit recognized, in the context of Anti-Terrorism Act claims, that making

donations to an alleged terrorist group, without "knowledge of and intent to further the payee's

violent criminal acts," could not sustain a tort claim.  <u>Boim v. Quranic Literacy Inst.</u>, 291 F.3d

1000, 1012 (7th Cir. 2002); <u>accord</u> <u>Ungar v. Islamic Republic of Iran</u>, 211 F. Supp. 2d 91, 99

(D.D.C. 2002) (even though "plaintiffs have established that Iran provided extensive support to Hamas, . . . their proof does not link that support to the Ungar murders specifically"); see also Restatement (Second) of Torts, § 9 cmt. b (1965) ("In order that a particular act or omission may be the legal cause of an invasion of another's interest, the act or omission must be a substantial factor in bringing about the harm.").

In essence, plaintiffs attempt to impose liability on Mr. Sedaghaty based on the alleged acts of al-Haramain (SA) and its other affiliates. To do so, plaintiffs must satisfy the requirements of the "reverse" veil-piercing test, which allows the imposition of tort liability on a subsidiary for the acts of a parent corporation, or the subsidiary's sole shareholder. JSC Foreign Economic Ass'n v. Intl. Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). Aside from the fact that al-Haramain (SA) is not even the parent corporation of AHIF, given that AHIF was not incorporated as a subsidiary of the Saudi charity, see Exhibit 3, a veil piercing analysis requires a showing that the parent corporation not only "exercised domination and control" over the subsidiary, but also that the "corporate domination caused" the plaintiff's injuries. Bedford Affiliates v. Sills, 156 F.3d 416, 431-32 (2d Cir. 1998).

Here, plaintiffs have pled no facts showing that al-Haramain (SA) dominated and controlled AHIF, let alone that any such domination proximately caused their injuries. De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996) ("Actual domination, rather than opportunity to exercise control, must be shown."). Nor have plaintiffs pled any facts showing a "virtual abandonment of [corporate] separateness" between AHIF and al-Haramain (SA). Thomson-CSF, S.A. v. Amer. Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995). The Supreme Court recognized that one entity may have some relationship with another entity is insufficient to

pierce the corporate veil, since there is "no authority for extending the doctrine so far that, as a categorical matter, all subsidiaries are deemed to be the same as the parent corporation." Dole Food Co. v. Patrickson, 538 U.S. 468, 475-76 (2003) ("doctrine of piercing the corporate veil, however, is the rare exception . . . and usually determined on a case-by-case basis").  Therefore, this Court should find that the acts of al-Haramain (SA) and its other affiliates, whatever they are alleged to be, cannot be used as the basis for imposing tort liability on Mr. Sedaghaty.

Thus, this Court should find that plaintiffs cannot state a cause of action that Mr. Sedaghaty's acts directly and intentionally injured plaintiffs, thereby precluding recovery under any direct tort theory, i.e., Torture Victim Protection Act; Anti-Terrorism Act; Alien Tort Claims Act; wrongful death; survival; assault and battery; property destruction; and intentional infliction of emotional distress, and this Court should dismiss those counts against him.

### B. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT THEIR TORT CLAIMS AGAINST MR. SEDAGHATY.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note ("TVPA"),[8] because plaintiffs have not alleged that Mr. Sedaghaty was acting under color of law.  In re Sept. 11, 2005 WL 95708, at *46 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)     This Court must dismiss the Salvo plaintiffs' assault and battery claim (Count 3) and the Burnett plaintiffs' intentional infliction of emotional distress claims (Count 8) because the statute of limitations for these claims is one year.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); In re Sept. 11, 2005 WL 95708, at *47.  The Salvo complaint was filed on July 8, 2003 and the

---

[8] Ashton Count 5; Burnett Count 2; Salvo Count 5; and Tremsky Count 2.

*Burnett* complaint on August 1, 2003, all more than one year after September 11, 2001.

(3)     This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims Act, 28 U.S.C. § 1350,[9] because liability can only be imposed if (1) the defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "extreme forms of egregious misconduct." <u>Bao Ge v. Li Peng</u>, 201 F. Supp. 2d 14, 20 (D.D.C. 2000), <u>aff'd</u> 35 Fed. Appx. 1 (D.C. Cir. 2002) (<u>per curiam</u>).  Mr. Sedaghaty is not a state actor, and plaintiffs have not pled that he was acting under color of state law; nor have plaintiffs pled facts to state a claim that he engaged in the requisite "extreme forms of egregious misconduct."

(4)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, <u>et seq.</u>,[10] because plaintiffs have failed to plead any facts to support an inference that Mr. Sedaghaty engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1).  Plaintiffs have also failed to plead any facts to support an inference that Mr. Sedaghaty provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries, or contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  <u>Smith v. Islamic Emirate of Afghanistan</u>, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); <u>Boim</u>, 291 F.3d at 1012 (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  Thus, plaintiffs' allegations fail to support their ATA claims against Mr. Sedaghaty.

(5)     This Court must dismiss the plaintiffs' common law tort claims for wrongful

---

[9] *Burnett* Count 4; *Tremsky* Count 3.

[10] *Ashton* Count 4; *Burnett* Count 3; *Salvo* Count 4; and *Tremsky* Count 9.

death and survival,[11] because plaintiffs have not pled any facts to support an allegation that Mr.

Sedaghaty "caused the decedent's death," or that he committed a tort against the decedent prior

to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), §

11-3.3 (McKinney 2001) (survival claim); see also Dineen v. Stramka, 228 F. Supp. 2d 447, 454

(S.D.N.Y. 2002) ("Plaintiff's wrongful death claim must also be dismissed because he has failed

to allege a sufficient causal or proximate nexus between any action by the defendant and the

death of Dineen."); Meroni v. Holy Spirit Ass'n for the Unification of World Christianity, 506

N.Y.S.2d 174, 179 (App. Div. 1986) ("both wrongful death and survival actions require that the

defendant have committed some underlying wrong against the decedent").  Nor have plaintiffs

pled any facts to support the allegation that Mr. Sedaghaty "supported, aided and abetted, or

conspired with the September 11 terrorists."  In re Sept. 11, 2005 WL 95708, at *46.

(6) This Court must dismiss the plaintiffs' common law intentional infliction of

emotional distress, assault and battery, and property destruction tort claims,[12] because plaintiffs

have not pled any facts, let alone sufficient facts, to support an allegation that Mr. Sedaghaty's

acts caused plaintiffs' injuries, as required for intentional torts.  United Nat'l Ins. Co. v.

Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993) (defining assault and battery as

intentional torts); Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702

(1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a

---

[11] Wrongful death:  *Ashton* Count 1; *Burnett* Count 5; and *Salvo* Count 1.  Survival:  *Ashton* Count 2; *Burnett* Count 7; *Salvo* Count 2; and *Tremsky* Count 5.

[12] Intentional infliction of emotional distress:  *Burnett* Count 8; *Tremsky* Count 6.  Assault and battery: *Ashton* Count 3; *Salvo* Count 3.  Property destruction:  *Ashton* Count 8.  Only two of the *Ashton* plaintiffs have standing to bring a property destruction claim, i.e., Mayore Estates LLC and 80 Lafayette Associates, LLC.  These plaintiffs originally filed their own lawsuit, No. 02 CV 7214, which was consolidated with *Ashton*.

substantial probability of causing, severe emotional distress" and "a causal connection between

the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson

requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief

resulting in property damage requires intent).[13]  Nor can the plaintiffs rely on a conspiracy or

aiding and abetting theory to support their property damage claim, since plaintiffs have not pled

facts sufficient to show that Mr. Sedaghaty associated himself with, and participated in, the

conspiracy resulting in the property damage, let alone that the property damage was a

foreseeable act done in furtherance of Mr. Sedaghaty's participation in the conspiracy.  Cf.

United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).  Finally, the plaintiffs' "bare legal

conclusions are not sufficient" to state an intentional infliction of emotional distress claim.

Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).  Thus, this Court should dismiss the

plaintiffs' assault and battery, intentional infliction of emotional distress, and property

destruction claims, for failure to state a claim.

### VI.  PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the *Burnett* and *Tremsky* plaintiffs' RICO claims, because

plaintiffs lack standing as their injuries are personal injuries, not an injury to their business or

property.  RICO standing is a "threshold question" that "represents a jurisdictional requirement."

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).  Section 1964(c),

which creates a private cause of action for violations of Section 1962, limits the universe of

---

[13] Mr. Sedaghaty has not identified New York case law concerning civil liability for destruction of real property, other than environmental tort claims, which rely on distinctive statutes and case law.  The *Ashton* plaintiffs' property damage claim is most analogous to a claim for damages arising from arson and criminal mischief resulting in damage to property, so Mr. Sedaghaty has cited to case law based on those acts.

potential plaintiffs to "[a]ny person injured in his business or property."  18 U.S.C. § 1964(c);

see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) ("plaintiff only has standing if,

and can only recover to the extent that, he has been injured in his business or property by the

conduct constituting the violation").  It is settled law that personal injury plaintiffs cannot seek

recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip Morris,

Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or

property,' whereas the smokers' injuries are personal in nature"); Burnett v. Al Baraka Invest. &

Devel. Corp., 274 F. Supp. 2d 86 at 101-02 (D.D.C. 2003) (dismissing plaintiffs' RICO claims

against AHIF for lack of standing); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969

(E.D.N.Y. 1995) (holding that "personal representatives of the decedents are not entitled to sue

under § 1964(c)"); von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is

clear that personal injury is not actionable under RICO.").

The personal injury plaintiffs, all of whom were either injured during the September 11

attacks, or are relatives of the decedents, allege that they "suffered the loss of valuable property,

financial services and support, and suffered other pecuniary and personal damages." *Burnett*

Am. Compl. ¶¶ 698, 706, 714; *Tremsky* Am. Compl. ¶ 267.  Since the plaintiffs' damages are

derived solely from personal injuries, this Court must find that they lack standing to bring their

RICO claims.

**VII.  PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST MR. SEDAGHATY FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the merits of the plaintiffs' RICO claims, it must still

find that plaintiffs have failed to state a RICO claim under Section 1962(a), (c), or (d).

As a threshold issue, the *Burnett* and *Tremsky* plaintiffs failed to file a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and the parties' stipulation as to service of process on Mr. Sedaghaty, Docket No. 614 (Dec. 27, 2004).  The elements of a RICO claim "cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint."  Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004).  The allegations in the plaintiffs' complaints are patently insufficient to set forth a RICO claim against Mr. Sedaghaty.

Notwithstanding the absence of a RICO Statement, plaintiffs have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In re* Sept.11, 2005 WL 95708, at *45 (quoting Quaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that plaintiffs have not stated a Section 1962(a) claim).

The plaintiffs' Section 1962(c) and (d) claims must also be dismissed, since the plaintiffs have done nothing to show that each individual defendant engaged in an enterprise or conspired with the other defendants to do so.  Id. (citing U.S. Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) and Am. Arbitration Ass'n, Inc. v. DeFonseca, No. 93 Civ. 2424 (CSH), 1996 WL 363128, at *7 (S.D.N.Y. June 28, 1996)).

Even if plaintiffs had properly pled an enterprise with respect to Mr. Sedaghaty, the complaints allege nothing other than he is an "co-conspirator, aider and abettor" of al-Haramain (SA), but "do not allege 'anything approaching active management or operation,'" as required to state a Section 1962(c) RICO claim.  Id. (quoting Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)).  Nor have plaintiffs alleged that Mr. Sedaghaty was a

"central figure in the underlying schemes" as required to find conspiracy liability under Section

1962(d).  Id.

Therefore, this Court must dismiss the *Burnett* and *Tremsky* RICO claims against Mr.

Sedaghaty under Sections 1962(a), (c), and (d), because the plaintiffs failed to allege any injury

arising from his investment of its income, or that he engaged in an enterprise, or that he

conspired with others to do so, or that he was active in the management and operation of the

alleged enterprise, or that he was a central figure in the alleged scheme.

### VIII.   PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST MR. SEDAGHATY BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss plaintiffs' negligence, negligent infliction of emotional distress,

and nuisance claims against Mr. Sedaghaty because he owed no duty of care to the plaintiffs.[14]  It

is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence

claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long

Island R.R. Co., 248 N.Y. 339, 342 (1928); In re Sept. 11, 2005 WL 95708, at *48.  Charitable

organizations, and their officers and employees, owe no duty to the general public.  McGrath v.

United Hosp., 562 N.Y.S.2d 193, 194 (App. Div. 1990) (charity owed no duty to plaintiffs);

Christiansen v. National Sav. & Trust Co., 683 F.2d 520, 529 (D.C. Cir. 1982); Burnett, 274 F.

Supp. 2d at 108-09 (dismissing negligence claims against AHIF).

Plaintiffs have alleged nothing more than conclusory allegations that "all Defendants

---

[14] Two of the personal injury complaints have raised negligence and negligent infliction of emotional distress claims.  *Burnett*, Counts 6 and 8; *Tremsky*, Counts 4 and 6.  The *Tremsky* plaintiffs also raised a vague "nuisance" claim (Count 15), which sounds in negligence, since it alleges that all defendants "were under a general duty."  However, the *Tremsky* plaintiffs cannot satisfy the requirements of a public nuisance claim which requires a showing that Mr. Sedaghaty owed "a duty of care to the public or to a substantial number of persons."  NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 490 (E.D.N.Y. 2003).

15

were under a general duty" or "breached duties of care owed to the Plaintiffs." <u>See</u> *Burnett* Am. Compl. ¶ 666; *Tremsky* Am. Compl. ¶ 235.  However there is no general duty to "control the conduct of third persons to prevent them from causing injury to others."  <u>McCarthy v. Olin Corp.</u>, 119 F.3d 148, 156-57 (2d Cir. 1997).[15]  This Court should dismiss plaintiffs' negligence, negligent infliction of emotional distress, and nuisance claims against Mr. Sedaghaty.

### IX.    PLAINTIFFS' PUNITIVE DAMAGE CLAIMS (*Ashton*, Count 7; *Burnett*, Count 14; *Salvo*, Count 7; and *Tremsky*, Count 13) FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, because no independent cause of action exists under New York law for this claim.  All four personal injury complaints listed separate punitive damages counts.  <u>See</u> *Ashton*, Count 7; *Burnett*, Count 14; *Salvo*, Count 7; and *Tremsky*, Count 13.

It is settled law that punitive damages are merely a form of relief, not an independent cause of action.  <u>Smith v. County of Erie</u>, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); <u>Mayes v. UVI Holdings, Inc.</u>, 723 N.Y.S.2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").  Therefore, this Court should dismiss the plaintiffs' punitive damage claims.

### X.    PLAINTIFFS' CONSPIRACY CLAIMS (*Burnett*, Count 9 and *Tremsky*, Count 7) FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts, because no independent cause

---

[15] The *Tremsky* plaintiffs also incorrectly alleged that the "charity Defendants were under heightened duties as fiduciaries of ... charities, as public servants endowed with the public trust." *Tremsky* Am. Compl. ¶ 235.  This allegation is legally insufficient, since the only fiduciary duty owed in a charitable context is that of the directors of a charity to the charity itself.  <u>Christiansen</u>, 683 F.2d at 528-29; <u>Stern v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses and Missionaries</u>, 381 F. Supp. 1003, 1013 (D.D.C. 1974).

of action exists under New York law for this claim.  Two of the personal injury complaints listed

separate conspiracy counts.  See Burnett, Count 9 and Tremsky, Count 7.   It is settled law that

conspiracy is merely a method for establishing a nexus between defendants and the tortious

conduct, or for establishing personal jurisdiction, but is not an independent tort under New York

law.  Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law,

conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp.

1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to

connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v.

Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong

is not a cause of action").  Here, the plaintiffs' "allegation of conspiracy is merely duplicative of

the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan,

572 F. Supp. 550, 555 (S.D.N.Y. 1983).  Therefore, this Court should dismiss the plaintiffs'

conspiracy claims.

### XI. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. SEDAGHATY PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P. OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Mr. Sedaghaty, pursuant to Rule

12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction over him.  The burden is on plaintiffs

to establish that personal jurisdiction exists over each defendant by making a prima facie

showing of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels Lambert

v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Regardless of which theory

of personal jurisdiction is used, conclusory assertions or "argumentative inferences" cannot be

used as a basis for personal jurisdiction.  Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246,

251 (S.D.N.Y. 2003); accord In re Sept. 11, 2005 WL 95708, at *22.  As set forth below, neither Rule 4(k)(1)(D), Fed. R. Civ. P., nor New York's long-arm statute, allows for the exercise of personal jurisdiction over Mr. Sedaghaty.

**A.**     **Rule 4(k)(1)(D), Fed. R. Civ. P., Does Not Allow the Exercise of Personal Jurisdiction over Mr. Sedaghaty.**

The catch-all provision of Rule 4(k)(1)(D), Fed. R. Civ. P., which allows the exercise of personal jurisdiction over a non-resident defendant "when authorized by a statute of the United States," does not apply to Mr. Sedaghaty.  Plaintiffs have listed two jurisdictional statutes that they assert allow the exercise of nationwide personal jurisdiction:  the Civil RICO Act, 18 U.S.C. § 1965, and the Anti-Terrorism Act, 18 U.S.C. § 2334(a).  The Second Circuit held that Section 1965 "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found."  PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir. 1998); accord In re Sept. 11, 2005 WL 95708, at *24 n.33.  Moreover, the plaintiffs lack standing to bring a RICO claim, and have failed to state a RICO claim, supra Parts VI-VII.  The ATA's jurisdiction provision is also insufficient, since plaintiffs have failed to state a claim under the ATA against Mr. Sedaghaty, supra Part V.B(4). Nix v. Hoke, 62 F. Supp. 2d 110, 115 (D.D.C. 1999) (failure to plead a valid substantive claim precludes the exercise of personal jurisdiction under a nationwide jurisdictional statute). Therefore, this Court should find that Rule 4(k)(1)(D) does not allow the exercise of personal jurisdiction over Mr. Sedaghaty.

**B.**     **The New York Long-Arm Statute Does Not Allow the Exercise of Personal Jurisdiction over Mr. Sedaghaty.**

The New York long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney 2001), does not

18

allow the exercise of personal jurisdiction over Mr. Sedaghaty, an Oregon resident.  Section

302(a) sets forth four possible bases for exercising jurisdiction over a non-resident defendant.

(1)     Plaintiffs have not pled any facts showing that Mr. Sedaghaty "transacts any

business within the state," or "owns, uses, or possesses any real property situated within the

state," thereby precluding the exercise of personal jurisdiction under Sections 302(a)(1) and

302(a)(4).

(2)     Plaintiffs also have not pled any facts showing that Mr. Sedaghaty "commit[ed] a

tortious act within the state," which precludes Section 302(a)(2).  Nor can plaintiffs avail

themselves of a conspiracy theory under Section 302(a)(2).  Plaintiffs' conclusory allegation that

Mr. Sedaghaty was one of several "co-conspirators, aiders and abettors" of al-Haramain (SA),

see *Ashton* Third Am. Compl. ¶ 469; *Burnett* Am. Compl. ¶ 157; *Salvo* Am. Compl. ¶ 495; and

*Tremsky* Am. Compl. ¶ 83, is inadequate since the "bland assertion of conspiracy . . . is

insufficient to establish jurisdiction for the purposes of section 302(a)(2)."  Lehigh Valley Indus.,

Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Critically, the courts have required that

all three of the following elements must be satisfied for the exercise of personal jurisdiction

under a conspiracy theory:

(a) the defendant had an awareness of the effects in New York of its activity;
(b) the activity of the co-conspirators in New York was to the benefit of the out-of-state
conspirators; and
(c) the co-conspirators acting in New York acted "at the direction or under the control,"
or "at the request of or on behalf of" the out-of-state defendant.

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1269 (S.D.N.Y. 1991).

Since the complaints "do not allege any specific facts from which the Court could infer that

[defendant] . . . directed, controlled, or requested al Qaeda to undertake its terrorist activities" or

that Mr. Sedaghaty had "knowledge of, or consent to those activities," there can be no personal jurisdiction based on a New York long-arm conspiracy theory. *In re* Sept. 11, 2005 WL 95708, at *24 (citing Daventree Ltd. v. Republic of Azerbaijan, No. 02 Civ. 6356 (SHS), 2004 WL 2997881, at *22 (S.D.N.Y. Dec. 28, 2004) and Chrysler Capital, 778 F. Supp. at 1266). This Court should find that Section 302(a)(2) does not allow the exercise of personal jurisdiction over Mr. Sedaghaty.

(3)    Finally, plaintiffs have not pled any facts showing that, even if Mr. Sedaghaty committed "a tortious act without the state causing injury to person or property within the state," that he "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," as required by Section 302(a)(3). The Second Circuit held that, under Section 302(a)(3), the "situs of injury for purposes of asserting long arm jurisdiction is the place where the underlying, original event occurred which caused the injury." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001). Here, with respect to Mr. Sedaghaty, anything that he allegedly did occurred in Oregon, not New York, which is insufficient to allow the exercise of personal jurisdiction under Section 302(a)(3). Id. (upholding dismissal of complaint for lack of personal jurisdiction). Further, where a non-resident defendant is alleged to have committed torts outside the forum that somehow caused harm within the forum, the requisite "relatedness" with the forum is not established unless the defendant "expressly aimed" its allegedly tortious conduct at the forum, Calder v. Jones, 465 U.S. 783, 789 (1984), and was a "primary participant" in causing the harm

from which the claim arose.  Id. at 790.  Plaintiffs have not pled any facts to support an allegation that Mr. Sedaghaty "expressly aimed" his conduct at New York, let alone that he was a "primary participant" in the September 11 attacks.  Finally, plaintiffs have "not even ventured to prove that [defendant] himself 'derives substantial revenue from interstate or international commerce' as is required for jurisdiction to properly exist under Section 302(a)(3)(ii)."  Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999).  This Court should find that Section 302(a)(3) does not allow the exercise of personal jurisdiction over Mr. Sedaghaty.

### C.  The Constitutional Requirements of Due Process Do Not Allow the Exercise of Personal Jurisdiction over Mr. Sedaghaty.

Even if this Court were to consider the exercise of personal jurisdiction under statutory jurisdictional provisions, it must still find that the constitutional requirements of due process are not satisfied.  There are two due process requirements that must be satisfied with respect to Mr. Sedaghaty.  First, Mr. Sedaghaty must have "minimum contacts with [this forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 326 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Mr. Sedaghaty must be shown to have "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Second, the exercise of personal jurisdiction over Mr. Sedaghaty must be reasonable.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).  It is the "minimum contacts" requirement that is at issue.

Where, as here, plaintiffs' allegations relate entirely to Mr. Sedaghaty's alleged

conspiracy with al-Haramain (SA), any jurisdiction that this Court might have over al-Haramain (SA) is insufficient to confer jurisdiction over Mr. Sedaghaty, since "each defendant's contacts with the forum state must be assessed individually."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); accord In re Sept. 11, 2005 WL 95708, at *33 (quoting Keeton).  As the Supreme Court explained, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."  Keeton, 465 U.S. at 781 n.13.

Critically, due process requires more than a mere showing that the plaintiffs were injured in this forum.  Instead due process allows for personal jurisdiction over a non-resident defendant only where the defendant "purposefully directed" its acts towards the forum state, since the mere "foreseeability of injury" to the plaintiffs in their home state is insufficient to establish personal jurisdiction.  Burger King v. Rudzewicz, 471 U.S. 462, 474-76 (1985); In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003) (key issue is whether the defendant's intentional wrongdoing is "expressly directed at [the] forum"); In re Sept. 11, 2005 WL 95708, at *28-*29.  Nor is mere awareness that a defendant's activities "may or will" affect the forum state sufficient to establish personal jurisdiction.  Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 112 (1987).  Under this precedent, plaintiffs have not met their burden to show that Mr. Sedaghaty "expressly aimed" any harm, or committed any tortious act that was "purposefully directed," either towards New York specifically, or the United States generally.  Therefore, even if this Court were to apply the New York long-arm statute or Rule 4(k)(1)(D), Fed. R. Civ. P., it must find that due process precludes it from exercising personal jurisdiction

over Mr. Sedaghaty.

## **CONCLUSION**

For the foregoing reasons, defendant Perouz Sedaghaty respectfully requests that this

Court grant his Motion to Dismiss for failure to state a claim upon which relief can be granted

and for lack of personal jurisdiction.

Respectfully submitted,


/s/ Lynne Bernabei

_____

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Perouz Sedaghaty

Dated:  February 7, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2005, I caused the foregoing to be served

electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant

to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).



/s/ Alan R. Kabat

_____

Alan R. Kabat