**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                            :
**IN RE TERRORIST ATTACKS ON**              :
**SEPTEMBER 11, 2001**                      :          **03 MD 1570 (RCC)**
                                            :          **ECF Case**
-------------------------------------------------------------x
                                            :
**CONTINENTAL CASUALTY CO., et al.,**       :
                                            :
              **Plaintiffs,**               :          **1:04-CV-05970 (RCC)**
                                            :          **ECF Case**
        **v.**                              :
                                            :
**AL QAIDA ISLAMIC ARMY, et al.,**          :
                                            :
              **Defendants.**               :
                                            :
-------------------------------------------------------------x


<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**</u>
<u>**DEFENDANT ISLAMIC INVESTMENT COMPANY OF THE GULF (SHARJAH)**</u>


SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
  *Islamic Investment Company of the Gulf (Sharjah)*

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST IICG .................................................................1

ARGUMENT ...............................................................................................................................2

I       THIS COURT LACKS PERSONAL JURISDICTION OVER IICG. ...................................3

    A.      The Complaint Fails to Make Out a *Prima Facie* Case for Personal Jurisdiction over IICG. .............................................................................................3

    B.      Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and Abetting Provide No Basis for Personal Jurisdiction over IICG. ....................................7

    C.      Plaintiffs' Generalized Allegations of Actions by Alleged Subsidiaries of IICG Are Insufficient To Support an Assertion of Personal Jurisdiction over IICG. ...............................................................................................................10

II      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST IICG. ...............................13

    A.      Plaintiffs Have Failed to Plead Facts Sufficient to Show That Any Actions by IICG Proximately Caused Plaintiffs' Injuries. ....................................................16

    B.      Plaintiffs Have Failed To Plead Facts Sufficient To Make Out Any Of The Three Causes of Action Against IICG. ...........................................................18

        1.      Claim One -- Trespass ....................................................................................19

        2.      Claims Two and Three -- RICO ......................................................................20

            (a)    Plaintiffs Lack Standing To Bring Their RICO Claims.............….. 20
            (b)    Plaintiffs Have Failed To State Their RICO Claims..............…. 21

III     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.........................23

CONCLUSION............................................................................................................................24

TABLE OF AUTHORITIES

**Cases**

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ........................................................................19

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) ...........................................................19

In re American Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994)...................................................................16, 17

Asahi Metal Indus. Co. v. Superior Ct., Solano Cty.,
    480 U.S. 102 (1987)...................................................................................3

Atuahene v. City of Hartford,
    10 Fed. Appx. 33 (2d Cir. 2001) ..............................................................15

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999)...................................................................5, 8

Bankers Trust Co. v. Rhoades,
    741 F.2d 511 (2d Cir. 1984).....................................................................21

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987).....................................................................16

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) ........................................................5, 6

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)...............................................................................4, 5

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .....................................................18, 20

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003)..............................................................13

Calder v. Jones,
    465 U.S. 783 (1984)...............................................................................4, 6

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..........................................22

In re Cendant Corp. Sec. Litig.,
    190 F.R.D. 331 (D.N.J. 1999)...............................................................15, 18

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998).........................................................................4

Chudasama v. Mazda Motor Corp.,
    123 F.3d 1353 (11th Cir. 1998) .........................................................15

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994).................................................................19

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996)................................................13, 14, 17, 18, 22

Eastern States Health & Welfare Fund v. Phillip Morris, Inc.,
    188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Sup. 2000).........................21

Electronic Communications Corp. v. Toshiba America,
    129 F.3d 240 (2d Cir. 1997)..........................................................23, 24

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .......................................15

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ......................................14

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981)..............................................................9

Holmes v. Securities Investor Protection Corp.,
    503 U.S. 258 (1992)....................................................................16, 21

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) .......................................22

Int'l Brotherhood of Teamsters v. Phillip Morris, Inc.,
    196 F.3d 818 (7th Cir. 1999) ...........................................................21

International Shoe Co. v. State of Washington,
    326 U.S. 310 (1945)........................................................................3

Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001).............................................11, 12

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998)..................................3, 5, 6, 11, 12, 13

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000)............................................................16

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998)...............................................8, 9

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999)........................................................16, 20, 21

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972)............................................................7

Leeds v. Meltz,
    85 F.3d 51 (2d Cir. 1996)........................................................................................16

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975)...................................................................3, 5, 6, 8, 13

In re Livent, Inc. Noteholders Secs. Litig.,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................18

Madison Models, Inc. v. Casta,
    2003 WL 21978628 (S.D.N.Y. Aug. 20, 2003)....................................................13

Mende v. Milestone Tech. Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003)..............................................................4, 6

Moss v. Morgan Stanley Inc.,
    719 F.2d 5 (2d Cir. 1983)......................................................................................22

Murray v. Miner,
    74 F.3d 402 (2d Cir. 1996)....................................................................................13

National Asbestos Workers Med. Fund v. Phillip Morris, Inc.,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) ...................................................................21

Oneida Indian Nation of New York v. City of Sherrill,
    337 F.3d 138 (2d Cir. 2003)..................................................................................24

Papasan v. Allain,
    478 U.S. 265 (1986)...............................................................................................17

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998)..................................................................................10

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972)..................................................................................14

Pyramyd Stone Int'l Corp. v. Crosman Corp.,
    1997 WL 66778 (S.D.N.Y. Feb. 18, 1997)..........................................................11

Reves v. Ernst & Young,
    507 U.S. 170, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993)...................................23

Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.,
    99 F. Supp. 2d 174 (D.R.I. 2000) ........................................................................21

Robinson v. Overseas Military Sales Corp.,
    21 F.3d 502 (2d Cir. 1994)......................................................................................4

Rose v. Goldman, Sachs & Co.,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)..................................................................16

S.E.C. v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990)..................................................................................7

Second Amend. Found. v. United States Conf. of Mayors,
    274 F.3d 521 (D.C. Cir. 2001) ............................................................................8

Simon v. Philip Morris Inc.,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) .....................................................................9

Singer v. Bell,
    585 F. Supp. 300 (S.D.N.Y. 1984) .......................................................................8

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
    230 F. Supp. 2d 403 (S.D.N.Y. 2002)............................................................11, 12

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002)..........................................................................14, 18

Sodepac S.A. v. Choyang Park In Rem,
    2002 WL 3129641 (S.D.N.Y. Oct. 10, 2002) .......................................................5, 6

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001)..................................................................18

Stauffacher v. Bennet,
    969 F.2d 455 (7th Cir. 1992) ...............................................................................8

In re Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).................................2, 3, 4, 5, 6, 7, 8, 9, 10
                            ......................................................................13, 14, 16, 18, 19, 23

Terrydale Liquidating Trust v. Gramlich,
    549 F. Supp. 529 (S.D.N.Y. 1982) ......................................................................10

Tornheim v. Federal Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997)......................................................................19

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001)................................................................................4

United States v. Uccio,
    940 F.2d 753 (2d Cir. 1991)...............................................................................20

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002)...............................................................................14

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
    751 F.2d 117 (2d Cir. 1984)...........................................................................11, 12

Whitaker v. American Telecasting. Inc.,
    261 F.3d 196 (2d Cir. 2001)................................................................................3

York v. Association of the Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002)...............................................................................18

**Statutes**

Fed. R. Civ. P. 8........................................................................................................14, 15, 19

Fed. R. Civ. P. 12(b)(2)......................................................................................................1, 2, 3

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 3, 14, 19

**Miscellaneous**

5A Wright & Miller, <u>Federal Practice & Procedure</u> (2d Ed. 1990)...............................................15

## INTRODUCTION

Plaintiffs' Complaint in this action propounds sweeping allegations of grave wrongdoing by the named defendants, including movant Islamic Investment Company of the Gulf (Sharjah) ("IICG").  That pleading fails, however, to proffer any allegations of fact that, if proven, would show any connection between IICG and al Qaeda or, for that matter, any contact between IICG and the United States.  In lieu of factual allegations, plaintiffs offer conclusory and boilerplate assertions that -- as the Court's Opinion and Order of January 18, 2005 establishes -- are insufficient to withstand a motion to dismiss pursuant to either Rule 12(b)(2) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in the absence of any averment connecting IICG to al Qaeda, the events of September 11, 2001, or the United States, plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST IICG

The Complaint contains only the sparsest of allegations regarding IICG, which are restated below in their entirety:

- "DMI owns 100% of [IICG]."  IICG "is the main shareholder of Faisal Islamic Bank Of Sudan."  First Amended Complaint ("FAC") ¶ 380.

- "Faisal Islamic Bank - Sudan was also implicated as an Al Qaeda sponsor during the 2001 United States trial on the 1998 embassy bombings in Africa as managing bank accounts for Al Qaeda operatives."  Id. ¶ 66.

- "Faisal Islamic Bank of Sudan was one of the five main founders of Al Shamal Islamic Bank."  Id. ¶ 268; see also id. ¶¶ 53, 54, 65.  "[Osama] Bin Laden used Al Shamal Bank for the funding of his Al Qaeda network leading up to the 1998 United States Embassy bombings in Africa."  Id. ¶ 269; see also id. ¶¶ 57, 58, 382.  "[A]t least six Al Qaeda operatives held bank accounts in Al Shamal Islamic Bank under their real names."  Id. ¶ 63.  "Al Qaeda operatives received monthly checks of several hundred dollars from Al Shamal Islamic Bank accounts and transferred $100,000.00 from Al Shamal Islamic Bank to an Al Qaeda representative in Jordan."  Id. ¶ 64.

- Faisal Islamic Bank Sudan was the "main shareholder of Tadamon Islamic Bank as of 1995."  Id. ¶ 69.  "Tadamon Islamic Bank facilitated, materially sponsored, aided and abetted, and/or conspired with Al Qaeda and its international terrorists and financial operations."  Id. ¶ 70.

As the above recitation makes clear, plaintiffs do not allege *any* facts showing that IICG ever entered into any transaction with anyone at all, much less any facts showing that IICG ever "rais[ed], launder[ed], transfer[red], distribut[ed], or hid[] funds for" bin Laden and al Qaeda "in order to support their terrorist activities." FAC ¶ 26.  Nor do plaintiffs allege any facts showing that IICG ever entered into any sort of agreement at all, let alone an agreement "to attack the United States, murder United States citizens, destroy and damage the property of United States citizens and disrupt the United States' economy . . . ." Id. ¶ 27.  Indeed, in their Complaint, plaintiffs fail to allege any communication between IICG and anyone associated with al Qaeda; any transfer of money to or from IICG, by or to anyone associated with al Qaeda; any facts that would show that IICG aided al Qaeda or abetted any of al Qaeda's activities; any facts that could be read to imply IICG's supposed intent to cause an attack on the United States; or any facts connecting IICG *in any way whatsoever* with the events of September 11th.

The only putative nexus between IICG and September 11 alleged by plaintiffs is that members of al Qaeda had bank accounts at Faisal Islamic Bank (Sudan) ("FIBS"), a purported subsidiary of IICG, and at two alleged Sudanese subsidiaries of FIBS, in the mid-1990s, and that money was transferred from such accounts to members of al Qaeda.  Yet, even if FIBS were a subsidiary of IICG -- which IICG categorically denies -- this Court has already found that these types of allegations, by themselves, are insufficient to make out a claim.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F.Supp.2d 765, 830, 832-36 (S.D.N.Y. 2005).  Thus, as demonstrated in detail below, plaintiffs' claims against IICG are meritless and should be dismissed.

## ARGUMENT

All claims asserted against IICG should be dismissed for two reasons.  First, they should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over IICG.  As noted, plaintiffs have failed to allege any facts connecting IICG with the United States or the events of September 11.  Requiring IICG to respond and defend itself in this Court in these circumstances would be wholly inconsistent with "traditional notions of fair play and

substantial justice." Asahi Metal Indus. Co. v. Superior Ct., Solano Cty., 480 U.S. 102, 113 (1987) (quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)).  Second, because plaintiffs fail to allege any connection between IICG and the events of September 11, the Complaint also fails to state a claim against IICG, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

<h1 style="text-align:center">I</h1>

<h2 style="text-align:center">THIS COURT LACKS PERSONAL JURISDICTION OVER IICG.</h2>

IICG is a wholly foreign company, organized under the laws of Sharjah, United Arab Emirates.  As the preceding discussion illuminates, the Complaint fails to allege any facts that could be read to show that IICG has had any contacts with the United States or any role in the terrorist attacks of September 11, 2001.  Consequently, plaintiffs have not made the *prima facie* showing of minimum contacts necessary, for due process purposes, to invoke personal jurisdiction over IICG. Thus, the claims against IICG should be dismissed in their entirety.

### A.    The Complaint Fails to Make Out a *Prima Facie* Case for Personal Jurisdiction over IICG.

Plaintiffs bear the burden of establishing personal jurisdiction over IICG.  See Whitaker v. American Telecasting. Inc., 261 F.3d 196, 208 (2d Cir. 2001) ("The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."); In re Sept. 11 Attacks, 349 F.Supp.2d at 804.  To survive such a motion, the plaintiffs must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See Whitaker, 261 F.3d at 208 (plaintiff must make *prima facie* showing of jurisdiction); In re Sept. 11 Attacks, 349 F.Supp.2d at 809 ("Plaintiffs must make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries").  However, "conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . .").  Courts may "construe

jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F.Supp.2d 246, 251 (S.D.N.Y. 2003) (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)); see also In re Sept. 11 Attacks, 349 F.Supp.2d at 804 (the Court "will not . . . accept legally conclusory assertions or draw argumentative inferences.") (internal quotation marks omitted).

Whether it is maintained that a Court has general or specific jurisdiction over a defendant, constitutional due process requires that a plaintiff allege facts demonstrating that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001), (quoting Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotation marks omitted)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum . . . ."); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998) ("The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (citations and internal quotation marks omitted).

In the instant case, plaintiffs fail to allege *any* contact of *any* kind between IICG and New York or any other state.  Indeed, plaintiffs proffer no facts in support of the proposition that IICG has had even minimal contacts with the United States.  Plaintiffs cannot possibly make any such allegation because IICG has never had any substantive contacts with this country.  IICG has never done business, nor maintained a place of business, nor been licensed to do business in any U.S. jurisdiction, and plaintiffs have propounded no such allegation.  Nowhere do plaintiffs aver that IICG has ever entered into any contracts with any U.S. entities or any contracts to be performed in whole or in part in the U.S., or that IICG has ever entered into any partnership, joint venture, or

other such relationship with a U.S. entity, invested in any U.S. entity, or had any U.S. investors or clients.  Plaintiffs also do not contend that IICG has maintained an agent for service of process in the U.S., brought an action in a U.S. Court, or otherwise submitted itself to the jurisdiction of any U.S. authority in any way.  In short, plaintiffs tender nothing that could conceivably be read to assert that IICG has had the purposeful contacts necessary, for due process purposes, to establish general personal jurisdiction.  See Burger King, 471 U.S. at 471-73; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 786-89 (2d Cir. 1999).

Instead, plaintiffs offer the solitary and unsupported assertion that "all defendants were associated with an enterprise engaged in, and whose activities affected, interstate commerce." FAC ¶ 609.  On its face, this statement appears to assert both general and specific personal jurisdiction over IICG.  However, plaintiffs have tendered no allegations of fact to support the proposition that IICG has had anything to do with "an enterprise engaged in, and whose activities affected, interstate commerce."  FAC ¶ 609.  Such a conclusion of law, though couched as a factual allegation, does not suffice to make out the *prima facie* showing of minimum contacts necessary for this Court to exercise personal jurisdiction over IICG.  See In re Sept. 11 Attacks, 349 F.Supp.2d at 813-14 (granting motion to dismiss for lack of personal jurisdiction and denying jurisdictional discovery because "[c]onclusory allegations that [the defendant] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice."); see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege facts supporting said conclusion); Lehigh Valley, 527 F.2d at 93-94 (same); Sodepac S.A. v. Choyang Park In Rem, 2002 WL 3129641, at *4 (S.D.N.Y. Oct. 10, 2002) ("[L]egal conclusions couched as factual allegations are not facts and cannot substitute for them."); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F.Supp. 562, 564-65 (S.D.N.Y. 1997) (finding that to state a *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction").

In the vacuum of allegations supporting general personal jurisdiction over IICG, plaintiffs apparently rely on a theory of specific jurisdiction, *i.e.*, that personal jurisdiction over IICG may be had because IICG's tortious actions (whatever those unalleged actions might have been) had a direct effect in the United States.  In order to invoke specific personal jurisdiction, plaintiffs must properly allege some tortious act by the defendant, and allege facts showing that the defendant "expressly aimed" such a tortious act at the forum.  See Calder, 465 U.S. at 789 (1984); In re Sept. 11 Attacks, 349 F.Supp.2d at 809 ("Plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims.").  Here, plaintiffs do not allege any particular wrongful conduct by IICG at all.  Nor do they assert any facts indicating that IICG was aware that any of its actions (whatever they might have been) would affect New York and/or the United States in any way, let alone that IICG *directed* any wrongful actions toward the United States.  Plaintiffs tender nothing factual in support of their sweeping claim that IICG (and hundreds of other defendants) engaged in "racketeering activities . . . for the purpose of furthering defendants' common scheme to commit acts of terrorism against the United States, its nationals and its allies," see FAC ¶ 612, or in support of their allegation that IICG committed "acts that involve murder and robbery" and other RICO predicate offences.  See id. ¶ 611.  In other words, plaintiffs' naked assertions of tortious activity by IICG, which unalleged activity putatively had direct effects in the United States, are wholly conclusory and insufficient to confer personal jurisdiction over IICG.  See Jazini, 148 F.3d at 184-85; Lehigh Valley, 527 F.2d at 93-94; Mende, 269 F.Supp.2d at 251; Sodepac S.A., 2002 WL 3129641, at *4; Bellepointe, 975 F.Supp. at 564-65.

In short, in support of their invocation of personal jurisdiction over IICG -- and their contention that IICG willingly participated in a plot to murder thousands of Americans in the attacks of September 11 -- plaintiffs have proffered no substantive factual allegations regarding IICG anywhere in their 193-page Complaint.  In response to this motion, plaintiffs likely will ask that the Court ignore their failure to make any allegations of fact in support of their invocation of

specific personal jurisdiction over IICG.  Courts in this Circuit, however, have held that the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New York "must be applied with caution, particularly in an international context."  Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972); see also In re Sept. 11 Attacks, 349 F.Supp.2d at 811.  Accordingly, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.  See Leasco, 468 F.2d at 1341; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990).  Plaintiffs' conclusory allegations and statements of law couched as factual allegations do not suffice.  Therefore, to the extent that plaintiffs rely upon a theory of specific personal jurisdiction over IICG, that reliance is misplaced, and plaintiffs' claims should be dismissed in their entirety.  See In re Sept. 11 Attacks, 349 F.Supp.2d at 816 (granting motion to dismiss because plaintiffs failed to "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States"). [1]

**B.      Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and Abetting Provide No Basis for Personal Jurisdiction over IICG.**

Plaintiffs also assert that the "remaining defendants" (supposedly including IICG) "have conspired with, have aided and abetted and have provided material support and resources to Bin Laden, Al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds for Bin Laden and Al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks."  FAC ¶ 26; see also id. ¶¶ 11, 27.

These entirely conclusory allegations cannot salvage plaintiffs' failed assertion of personal jurisdiction over IICG.  See In re Sept. 11 Attacks, 349 F.Supp.2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with

---

[1]    To the extent that plaintiffs wish to invoke the "modified due process standard . . . for mass torts" that has been relied upon by other plaintiffs in these consolidated actions, this Court has already considered that argument and "decline[d] to adopt this standard."  See In re Sept. 11 Attacks, 349 F.Supp.2d at 809-10.

the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal

jurisdiction on a New York long-arm conspiracy theory); see also Lehigh Valley, 527 F.2d at 93-94

("the bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . .");

Singer v. Bell, 585 F.Supp. 300, 303 (S.D.N.Y. 1984) (same); Second Amend. Found. v. United

States Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) ("the allegation that the [defendants]

conspired together represents nothing more than a legal conclusion, which we have held does not

constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction")

(internal citations and quotations omitted).  "The cases are unanimous that a bare allegation of a

conspiracy between the defendant and a person within the personal jurisdiction of the court is not

enough.  Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings

even though there were grave reasons for questioning whether the defendant was actually suable in

those forums."  Stauffacher v. Bennet, 969 F.2d 455, 460 (7th Cir. 1992); see also Bank Brussels

Lambert, 171 F.3d at 793 (same).

   "Before jurisdiction based on a conspiracy can be upheld under New York law, . . .

the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the

inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to

connect the defendants with transactions occurring in the United States."  Laborers Local 17 Health

& Ben. Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation

marks and citation omitted, emphases added); see In re Sept. 11 Attacks, 349 F.Supp.2d at 805 ("To

establish personal jurisdiction on a conspiracy theory, Plaintiffs must make a prima facie showing of

conspiracy, allege specific facts warranting the inference that the defendant was a member of the

conspiracy, and show that the defendant's co-conspirator committed a tort in New York"); see also

Singer, 585 F.Supp. at 303-04 (same).  First, "[t]o establish a *prima facie* case for conspiracy under

New York law, a plaintiff must properly allege the primary tort and the following four elements: (1)

a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement,

(3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting

damage or injury." Laborers Local 17, 26 F.Supp.2d at 602.  Second, plaintiffs must allege specific facts connecting IICG to the conspiracy and specific facts connecting IICG to the in-state actors. Otherwise put, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  Id.; see Simon v. Philip Morris, Inc., 86 F.Supp.2d 95, 120 (E.D.N.Y. 2000) (same); see also Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981) (to establish jurisdiction over a non-resident conspirator, a plaintiff must show that the in-state actor acted "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").

        Here, plaintiffs flatly assert that all defendants were co-conspirators, see FAC ¶¶ 11, without supporting factual allegations as to IICG.  Similarly, plaintiffs' undeniable allegation that the Attack was a foreseeable product of a conspiracy, see FAC ¶ 27, still fails to allege facts showing that IICG engaged in any such conspiracy.  And while plaintiffs allege that the conspiracy required the material support of a hodgepodge of unnamed "remaining defendants," see FAC ¶ 26, plaintiffs entirely fail to identify any in-state actor who acted for the benefit of IICG, or to allege facts showing that IICG exercised control over any such actor.  Thus, plaintiffs have not alleged facts sufficient to show that IICG entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of IICG; or that that IICG exercised control over any such actor; or that IICG had knowledge of or consented to any activity whatsoever.  See In re Sept. 11 Attacks, 349 F.Supp.2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiffs "do not allege any specific facts from which the Court could infer that [IICG] directed, controlled, or requested al Qaeda to undertake its terrorist activities. Nor are there any specific allegations of [IICG's] knowledge of, or consent to those activities.").

As with their allegations regarding an alleged conspiracy, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over IICG.  See FAC ¶¶ 26, 27.  A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); In re Sept. 11 Attacks, 349 F.Supp.2d at 826; see also Terrydale Liquidating Trust v. Gramlich, 549 F. Supp. 529, 530 (S.D.N.Y. 1982) (plaintiff must allege facts demonstrating "substantial assistance" to support finding of personal jurisdiction over abettor).  In short, the alleged aider and abettor must have been aware of the wrongdoing and have provided substantial assistance in its commission.  Here, plaintiffs have proffered no facts sufficient to support any such finding as to IICG.  Accordingly, to the extent that plaintiffs rely upon a theory of personal jurisdiction over IICG as a putative co-conspirator or aider-and-abettor of al Qaeda, that reliance is also misplaced, and plaintiffs' claims should be dismissed.

**C.**     **Plaintiffs' Generalized Allegations of Actions by Alleged Subsidiaries of IICG Are Insufficient To Support an Assertion of Personal Jurisdiction over IICG.**

The only allegations regarding IICG in the Complaint concern IICG's alleged subsidiary FIBS, and FIBS' putative relationships, in the Sudan in the mid-1990's, with Tadamon Islamic Bank and al Shamal Bank.  The Complaint alleges (1) that Tadamon Islamic Bank "facilitated, materially sponsored, aided and abetted, and/or conspired with al Qaeda and its international terrorists and financial operations;" (2) that, at some time in the early 1990s, third parties connected to al Qaeda "got account" at FIBS, al Shamal Bank, and Tadamon Islamic Bank; and (3) that money was transferred from accounts at al Shamal Bank to members of al Qaeda sometime in the early to mid-1990s.  See FAC ¶¶ 63-64, 66, 69-70, 269.

To establish personal jurisdiction over an entity through its subsidiaries, a plaintiff is required to allege much more than a mere parent-subsidiary relationship; indeed such a plaintiff must allege facts supporting the conclusion that the subsidiary in question acts as an "alter ego" or

"mere department" of the parent.  See Jazini, 148 F.3d at 184.  Courts consider four factors when determining whether a subsidiary is acting as an *alter ego* or mere department of the parent: (i) "common ownership;" (ii) "financial dependency of the subsidiary on the parent corporation;" (iii) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and (iv) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." Jazini, 148 F.3d at 184-185 (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-122 (2d Cir. 1984).

Here, plaintiffs have failed to allege facts sufficient to make out these predicates. Plaintiffs do allege common ownership, albeit erroneously.  However, plaintiffs have not alleged that any of the alleged subsidiaries are financially dependent upon IICG.  See Jazini, 148 F.3d at 185 (plaintiffs' allegation that subsidiary "wholly dependent" on parent "lack[ed] the factual specificity necessary to confer jurisdiction."); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F.Supp.2d 403, 410 (S.D.N.Y. 2002) ("factual allegation that [parent] funds [a portion] of the compensation received by managers employed by [subsidiary] . . . does not sufficiently allege that [subsidiary] is financially dependent on its parent, *i.e.*, that [subsidiary] cannot run its businesses without the financial backing of its parent."); Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F.Supp.2d 722, 735-36 (S.D.N.Y. 2001) (factually unsupported allegations insufficient); Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6 (S.D.N.Y. Feb. 18, 1997) (finding no financial dependency despite allegation that "98% of the products [subsidiary] purchases come from [parent]").  Nor have plaintiffs alleged that IICG has been involved in the selection and assignment of the putative subsidiaries' executive personnel or that those entities have failed to observe corporate formalities.  See In re Nov. 11 Ski Train Fire, 230 F.Supp.2d at 410-11 (plaintiffs' factually unsupported allegation concerning alleged lack of corporate formalities insufficient to support jurisdiction); Jacobs, 160 F.Supp.2d at 736-37; Pyramyd Stone, 1997 WL 66778, at *7-10.  Finally, plaintiffs have not alleged that IICG has controlled those three entities'

marketing and operational policies.  See Jazini, 148 F.3d at 185 (plaintiffs' allegation subsidiary

"wholly controlled" by parent "lack[ed] the factual specificity necessary to confer jurisdiction.");

Beech Aircraft, 751 F.2d at 122 ("The officers of any corporation that owns the stock of another

necessarily exercise a considerable degree of control over the subsidiary corporation and the

discharge of that supervision alone is not enough to subject the parent to New York jurisdiction.");

In re Nov. 11 Ski Train Fire, 230 F.Supp.2d at 411-12 (allegations (i) parent urged subsidiary to

achieve strategic and financial goals and (ii) companies portrayed themselves as a single entity

"insufficient to show 'pervasive' or 'complete' control" for purposes of establishing personal

jurisdiction over the parent); Jacobs, 160 F.Supp.2d at 736-37.  In sum, plaintiffs have failed to plead

facts sufficient to establish that the above predicates have been met.  Plaintiffs' empty assertion that

these three entities are either purported subsidiaries of IICG or are allegedly associated with a

purported subsidiary of IICG, absent allegations of fact sufficient to support a finding that any such

entity has functioned as an "alter ego" or "mere department" of IICG, cannot warrant the exercise

of personal jurisdiction over IICG.

Since plaintiffs have completely failed to make out a *prima facie* case for personal jurisdiction over IICG,[2] all of their claims against IICG should be dismissed.

## II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST IICG.

Plaintiffs also have failed to allege facts sufficient to make out any of the three causes of action lodged against IICG. To be sure, as demonstrated above, plaintiffs have not alleged any particular conduct at all by IICG, much less any *wrongful* conduct. Moreover, even if plaintiffs had pled facts sufficient to impute to IICG the actions of supposed subsidiaries,[3] plaintiffs have failed to

---

[2]  Moreover, plaintiffs have alleged no facts, and can tender no argument, that this complete failure could be remedied by limited jurisdictional discovery. "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction." In re Sept. 11 Attacks, 349 F.Supp.2d at 812. Courts in this Circuit have repeatedly denied jurisdictional discovery where plaintiffs' allegations lacked the factual specificity necessary to confer jurisdiction. See Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; In re Sept. 11 Attacks, 349 F.Supp.2d at 802, 813-14 ("deny[ing] plaintiffs' request for jurisdictional discovery [as to Prince Sultan and Prince Turki in their official capacity] because plaintiffs have not presented any factual basis for believing that discovery might reasonably be expected to [uncover facts to sustain jurisdiction]" and denying jurisdictional discovery as to Prince Sultan and Prince Turki in their individual capacity "because plaintiffs have not identified any genuine issue of jurisdictional fact"); Madison Models, Inc. v. Casta, 2003 WL 21978628, at *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction."); see also Burnett v. Al Baraka Inv. & Dev. Corp., 292 F.Supp.2d 9, 15 (D.D.C. 2003) (denying plaintiffs' request for discovery because allegations were "only conclusory").

[3]  To be clear, plaintiffs have wholly failed to plead facts sufficient to hold IICG liable for the alleged tortious acts of any allegedly related entity. "Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996). Courts will consider four factors when determining whether to pierce the corporate veil: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Id. (refusing to pierce corporate veil where entities had no alleged relationship at time of alleged wrong). "To overcome the 'presumption of separateness' afforded to related corporations, plaintiffs must come forward with the showing of actual domination [as opposed to the opportunity to exercise control of the subsidiary] required to pierce the corporate veil." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996). Plaintiffs have not proffered facts sufficient to make out these various factors, not to mention any particular facts showing IICG's "actual domination" over any other entity.

allege any wrongdoing by those subsidiaries.  As this Court has already held, "[p]roviding routine

banking services, without having knowledge of the terrorist activities, cannot subject [a defendant

bank] to liability."  In re Sept. 11 Attacks, 349 F.Supp.2d at 835.[4]  Furthermore, plaintiffs have

alleged no facts that, if proven out, would establish that any conduct by IICG -- if any were in fact

alleged -- proximately caused plaintiffs' injuries, and have failed to allege facts sufficient to make out

the specific elements of their RICO and trespass claims.

In the face of conclusory allegations of endless scope, and in the absence of any

specific allegations of fact, IICG is left with no idea regarding what conduct is the supposed basis of

plaintiffs' claims against it.  Plaintiffs therefore have not satisfied even the lenient notice pleading

standard of Fed. R. Civ. P. 8(a), and the Complaint against IICG should be dismissed in its entirety.

"A complaint which consists of conclusory allegations unsupported by factual assertions fails even

the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F.Supp.2d at 833, (quoting

DeJesus, 87 F.3d at 70); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.

2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not

suffice to prevent a motion to dismiss."); Virtual Countries, Inc. v. Republic of South Africa, 300

F.3d 230, 241 (2d Cir. 2002) ("the 'bald assertions' of harm contained in the complaint were not

sufficient to defeat the motion to dismiss."); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972)

(dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Glasheen v.

City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only

"conclusory allegations without providing any factual support whatsoever for such serious claims

against individual Defendants"; such "over-inclusive approach renders it virtually impossible for

---

[4]    For example, plaintiffs allege that IICG "is the main shareholder of [FIBS]" and that "[FIBS]
was one of the five main founders of Al Shamal Islamic Bank."  See FAC ¶¶ 380, 268.  However,
this Court has already held that "the allegation that [a defendant] was one of three founders of Al
Shamal Islamic Bank in 1983, without additional allegations, does not state a claim for relief."  In re
Sept. 11 Attacks, 349 F.Supp.2d at 836.  Here, plaintiffs' assertion that one of IICG's purported
subsidiaries was one of several supposed founders of al Shamal Bank likewise is too tenuous to
support any claim against IICG.

each Defendant to respond to the allegations"); In re Cendant Corp. Sec. Litig., 190 F.R.D. 331, 335

(D.N.J. 1999) (rejecting complaint "[lumping]… defendants together and [making] general

conclusory allegations of wrongdoing"); 5A Wright & Miller, Federal Practice & Procedure § 1363 at

464-65 (2d Ed. 1990) (upon motion to dismiss, unsupported conclusions of law never deemed

admitted; court will not accept conclusory allegations contradicted by other allegations or facts

judicially noticed).

> In lieu of any specific allegations regarding IICG, plaintiffs offer the unsupported,

boilerplate averment that certain "remaining defendants" "have conspired with, have aided and

abetted and have provided materials support and resources to Bin Laden, Al Qaeda, and/or

affiliated foreign terrorist organizations, associations and persons, including raising, laundering,

transferring, distributing and hiding funds for Bin Laden and Al Qaeda in order to support and

finance their terrorist activities, including, but not limited to, the September 11th attacks."   See FAC

¶ 26.  This conclusory allegation does not provide IICG with any meaningful notice of the conduct

of which plaintiffs now complain.  Such an allegation thus cannot suffice to state plaintiffs'

inflammatory claims against IICG.[5]  See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL

1442637, at *7 (S.D.N.Y. Nov. 15, 2001), (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33,

34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a
> model of clarity or exhaustively present the facts alleged, it requires,
> at a minimum, that a complaint give *each defendant* 'fair notice of what
> the plaintiff's claim is and the ground on which it rests.'  *By lumping the*
> *defendants together in each claim and providing no factual basis to distinguish*
> *their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

---

[5]     Such boundless allegations also promises a boundless discovery process, if plaintiffs' case is
allowed to proceed.  Such a discovery process, untethered to any specific allegations of fact, would
be unmanageable, for both the parties and the Court. See, e.g., Chudasama v. Mazda Motor Corp.,
123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid
unmanageable discovery thereafter).

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (finding that even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Rose v. Goldman, Sachs & Co., 163 F.Supp.2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even de minimis" pleading standards in discrimination cases, "a plaintiff is required to set forth specific factual allegations to establish a prima facie case.").

### A. Plaintiffs Have Failed to Plead Facts Sufficient to Show That Any Actions by IICG Proximately Caused Plaintiffs' Injuries.

Plaintiffs tender nothing to support the proposition that any actions of IICG -- and again, no such actions have been properly alleged -- proximately caused the injuries suffered by plaintiffs on September 11, 2001. Each of plaintiffs' claims requires a showing of proximate cause. Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, i.e., that the injury complained of was a direct effect of IICG's own tortious conduct. See In re Sept. 11 Attacks, 349 F.Supp.2d at 797, fn. 26 (rejecting plaintiffs' request for less stringent causation standard and concluding "the proper inquiry at this stage of the litigation is the presence of proximate causation"); see also Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992); In re American Express Co. S'holder Litig., 39 F.3d 395, 401-02 (2d Cir. 1994) (proximate cause requires showing defendant's wrongful action substantial factor in plaintiff's injury; injury must also have been reasonably foreseeable); Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable . . .").

Here, plaintiffs have failed to allege that any conduct by IICG -- whatever it might have been -- was a substantial factor in the terrorist attacks on September 11, 2001. They do not specifically aver that IICG gave funds to or otherwise provided material support to any of the terrorists carrying out those attacks or anyone providing them with assistance. Moreover, apart from baldly conclusory assertions contained in their recited causes of action, see FAC ¶¶ 604, 610 and 616, plaintiffs do not assert that those horrific events were the direct and foreseeable result of any action by IICG, and cannot do so because, again, plaintiffs have not alleged that IICG engaged in any particular conduct at all. In short, plaintiffs have failed to propound any allegation against IICG that could support a finding of proximate cause as to any of the pending claims.

Instead, plaintiffs lodge conclusory, blanket allegations of causation in connection with their various causes of action, ostensibly applicable to all defendants without distinction. See, e.g., FAC ¶ 604 (as to trespass claim, "the co-defendants knew, or should have known, that their provision of material support and resources to Al Qaeda . . . would result in an unlawful trespass upon the real and personal property of plaintiffs' insureds"); id. ¶ 610 (as to first RICO claim, "each of defendants conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity"); id. ¶ 616 (as to second RICO claim, "each defendant either committed, or agreed to commit, as least two acts of racketeering activity and conducted and agreed to conduct the affairs of the enterprise through a pattern of racketeering activity"). These indiscriminate, "catch-all" averments cannot suffice to plead proximate causation. See American Express, 39 F.3d at 400 n.3; DeJesus, 87 F.3d at 70; see also Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiffs' generalized allegations, as a result, cannot rescue their claims from the requirements of Rule 8(a).

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To Make
Out Any Of The Three Causes of Action Against IICG.**

Plaintiffs have also failed to properly plead any of their three causes of action against

IICG because, in addition to not pleading causation, they have not alleged specific facts necessary to

make out those causes of action.  Even under the lenient notice pleading standard, neither inferences

unsupported by specific factual allegations nor legal conclusions cast as factual allegations suffice to

state a claim.  See Smith, 291 F.3d at 240; York v. Association of the Bar of the City of New York,

286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege

facts which, assumed to be true, confer a judicially cognizable right of action."); DeJesus, 87 F.3d at

70; In re Sept. 11 Attacks, 349 F.Supp.2d at 832-36; In re Livent, Inc. Noteholders Secs. Litig., 151

F.Supp.2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in alternative, "the

factual pleadings in the complaint must be sufficient to state all the requisite elements of a given

theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F.Supp.2d 303, 308

(S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true,

make out the elements of a claim. . . .   It is imperative that the complaint contain either direct or

inferential allegations respecting all the material elements necessary to sustain a recovery under some

viable legal theory.") (internal citations and quotations omitted); see also Burnett v. Al Baraka Inv. &

Dev. Corp., 274 F.Supp.2d 86, 103 (D.D.C. 2003) ("Burnett I") (court may not accept inferences

drawn by plaintiffs if unsupported by facts in complaint, or legal conclusions cast as factual

allegations).

Thus, the boilerplate, conclusory allegations contained in the pending Complaint

cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- that IICG ever

actually *did* anything to cause the injuries for which plaintiffs now seek redress.  See Smith, 291 F.3d

at 240; DeJesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F.Supp.2d at 832-36; In re Cendant, 190

F.R.D. at 335.  Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed

to plead any of the necessary elements of their three causes.  While plaintiffs are not required to

allege a full *prima facie* case to survive a Rule 12(b)(6) motion, IICG is again left with no notice as to the basis for plaintiffs' claims in the absence of *any* factual allegations.  Consequently, it is without question that plaintiffs have failed to meet even the liberal requirements of Fed. R. Civ. P. 8(a).  The claims against IICG should be dismissed.

       1.       <u>Claim One -- Trespass</u>

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  <u>Tornheim v. Federal Home Loan Mortg. Corp.</u>, 988 F.Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  <u>See In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990</u>, 885 F.Supp. 434, 440 (E.D.N.Y. 1995).[6]

Plaintiffs make only the generalized allegation, against all defendants, that they "knew, or should have known, that their provision of material support and resources to Al Qaeda and affiliated foreign states . . . would result in an unlawful trespass upon the real and personal property of plaintiffs' insureds."  FAC ¶ 604.  Here again, plaintiffs have tendered no facts that, if proven out, would show that IICG itself intended any trespass.  <u>See In re Sept. 11 Attacks</u>, 349 F.Supp.2d at 835 ("[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability.").  Plaintiffs have also failed to allege that IICG committed any wrongful act that resulted in any trespass; nowhere in their Complaint do they identify what "material support and resources" IICG provided to al Qaeda or to anyone else associated with the attacks of September 11.  Furthermore, plaintiffs have once again failed to plead

---

[6]    The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. <u>See</u> <u>Cooper v. Horn</u>, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant"); <u>A.J. Cunningham Packing Corp. v. Congress Fin. Corp.</u>, 792 F.2d 330, 334 & n.4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

proximate causation as to IICG.  See *supra* Part II.A.  Accordingly, plaintiffs claim for trespass against IICG should be dismissed.

      2.    <u>Claims Two and Three -- RICO</u>

      (a)    <u>Plaintiffs Lack Standing To Bring Their RICO Claims.</u>

Judge Robertson, in <u>Burnett I</u>, dismissed plaintiffs' RICO claims for lack of standing. <u>See</u> <u>Burnett I</u>, 274 F.Supp.2d at 100-02 ("even pecuniary losses that are derivative of personal injuries are not 'business or property' injuries under RICO" for purposes of standing) (quoting <u>Grogan v. Platt</u>, 835 F.2d 844, 848 (11th Cir. 1988)).  That dismissal is law of the case in this action. <u>See</u>, <u>e.g.</u>, <u>United States v. Uccio</u>, 940 F.2d 753, 758 (2d Cir. 1991) (courts should adhere to prior rulings in given case, "absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice").  Moreover, Judge Robertson's decision was clearly correct, and IICG urges the Court to adopt it in this action as well.  <u>See</u> <u>Burnett I</u>, 274 F.Supp.2d at 100-02 (citations omitted).

Indeed, the Second Circuit in <u>Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc.</u>, 191 F.3d 229 (2d Cir. 1999) affirmed that where plaintiffs' "injuries" are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims . . . ."  <u>Laborers Local 17</u>, 191 F.3d at 239.  The Supreme Court provided three policy factors which buttress the principle that plaintiffs with indirect injuries lack standing to sue under RICO:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

Holmes, 503 U.S. at 269-70 (citations omitted).  In Laborers Local 17, the Second Circuit explained

that even where the latter two policy factors are not robust -- *i.e.*, where the possibility of duplicative

recoveries is remote and where the directly injured victims must recover under non-RICO actions --

the fact that the plaintiffs' injuries were derivative of a harm to a third party showed that the injury

was indirect and, therefore, plaintiffs lacked standing to sue under RICO.  See Laborers Local 17,

191 F.3d at 236-42; see also Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984) (RICO

claim may only be brought for proprietary injury; "a person physically injured in a fire whose origin

was arson is not given a right to recover for his personal injuries; damage to his business or his

building is the type of injury for which [RICO] permits suit").

 One District Court case, National Asbestos Workers Med. Fund v. Phillip Morris,

Inc., 74 F.Supp.2d 221 (E.D.N.Y. 1999), has been read broadly by some plaintiffs to warrant RICO

standing as a subrogee of individuals who suffered physical injuries.  However, the District Court

opinion in National Asbestos cannot control here, because it is directly contrary to the earlier

decision of the Second Circuit in Laborers Local 17, 191 F.3d at 235-241.  Moreover, the holding in

National Asbestos has been repeatedly and harshly rejected.  See Int'l Brotherhood of Teamsters v.

Phillip Morris, Inc., 196 F.3d 818, 827 (7th Cir. 1999) (describing National Asbestos opinion as "a

thinly guised refusal to accept and follow the Second Circuit's holding [in Laborers Local 17].");

Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 99 F.Supp.2d 174, 178

(D.R.I. 2000) ("this Court disagrees with the reasoning and result in National Asbestos."); Eastern

States Health & Welfare Fund v. Phillip Morris, Inc., 188 Misc.2d 638, 647, 729 N.Y.S.2d 240 (N.Y.

Sup. 2000) (recognizing cases criticizing National Asbestos and stating "this Court does not find

[Judge Weinstein's] analysis [in National Asbestos] persuasive or applicable.").

 (b) Plaintiffs Have Failed To State Their RICO Claims.

 Even if plaintiffs had standing, they have failed to plead correctly their RICO claims

against IICG.  To state such a claim, a plaintiff must allege a violation of the criminal RICO statute

and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Where a plaintiff cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  See, e.g., id. (dismissing RICO action where complaint contained no valid allegation of fraud).

       Once more, plaintiffs' sparse allegations regarding IICG, even if true, would establish *none* of the requisite elements of a civil RICO claim.  Nowhere in the Complaint do plaintiffs allege any predicate acts, or any facts that could show an agreement to commit predicate acts, by IICG. Plaintiffs allege no facts showing that IICG engaged in any 'pattern' of 'racketeering activity'; no facts that could imply assent by IICG to any alleged RICO conspiracy; no overt acts by IICG in furtherance of any alleged conspiracy; and no interest of, investment by, or participation by IICG in the alleged al Qaeda 'enterprise.'  Moreover, as before, plaintiffs have failed to plead proximate causation as to IICG.  Accordingly, plaintiffs' statements of legal conclusions couched as factual allegations, see FAC ¶¶ 607-617, do not state any RICO claims against IICG, warranting dismissal of Claims Two and Three.[7]  See, e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (finding that absent allegations sufficient to make out elements of RICO

---

[7]   Plaintiffs' conclusory legal assertion that IICG engaged in "money laundering," for instance, does not substitute for allegations of facts sufficient to show that 1) IICG conducted a financial transaction in interstate commerce; 2) IICG knew that the property involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000).

claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim").

Furthermore, even if "plaintiffs have pleaded an enterprise, under <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993), an alleged RICO defendant must have had some part in directing the operation or management of the enterprise itself to be liable." <u>In re Sept. 11 Attacks</u>, 349 F.Supp.2d at 827-28 (internal quotations and citations omitted). Allegations asserting that IICG "may have assisted al Qaeda," without allegations of fact showing that IICG was "active [in the] management or operation [of the enterprise]" or that IICG was a "central figure[] in the underlying schemes," do not meet this standard. <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F.Supp.2d at 827-28. Here, plaintiffs do not allege that IICG was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise. Dismissal of plaintiffs' § 1962(c) and § 1962(d) RICO claims must ensue. For that reason and all of the reasons detailed above, plaintiffs' RICO claims against IICG should be dismissed in their entirety.

III

**<u>PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.</u>**

Finally, because plaintiffs have now filed two successive Complaints in this action and there is no reasonable prospect that they will be able to remedy their wholesale failure to plead adequately any of their three claims against IICG, all three of those claims should be dismissed with prejudice. <u>See</u>, <u>e.g.</u>, <u>Electronic Communications Corp. v. Toshiba America</u>, 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment futile). As demonstrated above, plaintiffs' failure to make out any of their claims against IICG is as nearly complete as one could imagine. Plaintiffs have filed two Complaints over fifteen months, without material amendment of or addition to the wholly tenuous and untenable averments regarding IICG. There is no indication, within or outside of the four corners of the FAC, that plaintiffs will in good

faith be able to cure these defects.  Dismissal of plaintiffs' claims against IICG, therefore, should be with prejudice.  See Toshiba America, 129 F.3d at 246; see also Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile).

<u>**CONCLUSION**</u>

For the foregoing reasons, defendant IICG respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        February 14, 2005

                                  Respectfully submitted,

                                  SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                  By:_____/s/_____
                                      James J. McGuire (JM-5390)

                                      30 Rockefeller Plaza
                                      24th Floor
                                      New York, New York 10112
                                      (212) 332-3800

                                      *Attorneys for Defendant*
                                        *Islamic Investment Company of the Gulf (Sharjah)*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel