**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Thomas Burnett, Sr. v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)

### *BURNETT* PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NATIONAL COMMERCIAL BANK'S MOTION FOR RECONSIDERATION

### ARGUMENT

### I.   NCB HAS NOT DEMONSTRATED ANY BASIS FOR RECONSIDERATION

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Ferrand v. Credit Lyonnais*, 292 F.Supp.2d 518, 520 (S.D.N.Y. 2003).  Local Rule 6.3 requires that the moving party "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked."  This rule "is narrowly construed and strictly applied in order to avoid repetitive arguments already considered by the Court." *Winkler v. Metropolitan Life Ins. Co.*, 340 F.Supp.2d 411, 413 (S.D.N.Y. 2004).  As courts in this district have explained, "[a] motion for reconsideration is not a substitute for appeal." *In Re CBI Holding Company, Inc.*, 318 B.R. 761, 763 (S.D.N.Y. 2001).  Accordingly, "[t]he Court does not, on a motion for reconsideration, reconsider arguments that it has already considered and rejected." *Id.*  Nor is it "a 'second bite at the apple' for a party dissatisfied with a court's ruling" and, accordingly, "the moving party may not advance new facts, issues or arguments not previously presented to the Court." *Winkler*, 340 F.Supp.2d at 413; *see also Mancuso v. Consolidated Edison Co. of New*

*York, Inc.*, 905 F.Supp. 1251 (S.D.N.Y. 1995).  In sum, "A Local Rule 6.3 motion . . . is not intended as a vehicle for a party dissatisfied with the court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided."  *Ferrand*, 292 F.Supp.2d at 520.  As the Second Circuit has held, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992).

In *Virgin Atlantic*, the Second Circuit set forth the major grounds justifying reconsideration:  "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  956 F.2d at 1255.  More recently, the Court has explained:  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

NCB has not made even a token effort to meet this standard.  Indeed, NCB's motion does not even purport to comply with Local Rule 6.3 or with *Shrader*; at no point in its nine page memorandum does NCB set forth any "matters or controlling decisions which counsel believes the court has overlooked."  *See Shrader*, 70 F.3d at 257; Local Rule 6.3.  Nor does NCB argue that there has been an intervening change in the law (which there has not been), nor that new evidence has become available, nor even that there has been clear error or that there is a need to prevent "manifest injustice."  *See Virgin Atlantic*, 956 F.2d at 1255.

Instead, NCB uses its motion to reconsider to do precisely what it is not permitted to do, to "reargue those issues already considered when a party does not like the way the original

motion was resolved." *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y. 1996). In the guise of asking the Court to adjust the order of discovery, NCB argues, once again, that it lacks sufficient contacts with the United States and to argue that the contacts offered by the plaintiffs and relied on by the Court cannot be attributed to NCB, points made in NCB's opening briefs, its reply briefs, and at oral argument. *See, e.g.*, NCB *Burnett* Opening Brief at 59-64; NCB *Burnett* Reply Brief at 9.

In the *Burnett* case alone, NCB submitted 87 pages of briefing; in *Ashton*, it submitted an additional 35 pages. NCB's counsel then was given ample opportunity to make oral argument to the Court on September 14, October 12, and October 14. After 122 pages of briefing and three oral arguments, NCB has had its day in court. That, after reviewing the Court's decision, it has thought of arguments it wishes it had made (or that it did make, but that the Court rejected) is not a basis for reconsideration. *See Ferrand*, 292 F.Supp.2d at 520 (local rule is designed to "prevent the practice of a losing party from examining a decision and then plugging the gaps of a lost motion with additional matters"). NCB's motion should be summarily denied.

## II. THIS COURT CORRECTLY DECLINED TO DECIDE NCB'S RULE 12(B)(6) MOTION UNTIL THE ISSUES OF IMMUNITY AND JURISDICTION THAT NCB RAISED HAVE BEEN RESOLVED

### A. Threshold Questions of Jurisdiction Must Be Decided First

NCB is, in any event, in error in suggesting that this Court may bypass questions of subject matter and personal jurisdiction and proceed directly to the merits of plaintiffs' pleadings. On the contrary, the law is clear that the jurisdictional questions must be resolved first. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998); *see also Adeleke v. U.S.*, 355 F.3d 144, 149-150 (2d Cir. 2004); *Boos v. Runyon*, 201 F.3d 178, 181-182 (2d Cir. 2000). As this Court has determined that the jurisdictional issues cannot be resolved without

discovery, the Court quite properly deferred resolution of NCB's Rule 12(b)(6) motion until after jurisdictional discovery and further resolution of the jurisdictional questions.

NCB itself recognizes the "general rule that a federal court cannot resolve 'merits' defenses like failure to state a claim until it determines that it has jurisdiction," *see* NCB Recon. Br. at 2, but fails to apprise the Court that, in *Steel Co.,* 523 U.S. at, 94-95, the Supreme Court held: "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is *inflexible and without exception*." (Emphasis added.)

In light of the Supreme Court's language in *Steel Co.*, it is plain that the holding of the Second Circuit in *Center for Reproductive Law & Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002) does not reflect an "exception" to the "jurisdiction-first" rule, but rather a specialized application of it – one that is inapplicable here. In *Steel Co.*, the Supreme Court recognized that when a claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," the Article III requirement that a lawsuit present an actual "case or controversy" is not satisfied and the court lacks *subject matter jurisdiction* to hear the case. 523 U.S. at 89. *See also Norton v. Mathews*, 427 U.S. 524, 530-31 (1976) (disposition of identical legal issue in companion case "renders the merits in the present case a decided issue and thus one *no longer substantial in the jurisdictional sense*") (emphasis added). In that specialized situation, a finding that the controversy is governed, and the result foreordained, by a controlling legal precedent is a threshold jurisdictional finding as well as a merits ruling. *See Center for Reproductive Policy*, 304 F.3d at 195 (where precise legal question has already been determined, rendering actual controversy moot, ruling on novel standing question would be an advisory opinion). Accordingly, the Second Circuit's ruling in

*Center for Reproductive Policy*, that it need not reach the standing question because plaintiffs' underlying claim had been previously disposed of and presented no genuine controversy, in no way suggests that a court may "resolve *contested* questions of law when its jurisdiction is in doubt." *See Steel Co.*, 523 U.S. at 101.

But the Supreme Court was absolutely clear that the "no case or controversy" rationale cannot be applied in close cases or indeed in any case except that those are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89. Plaintiffs' claims against NCB do not fall into this category. Whether plaintiffs have stated a claim against NCB clearly presents a federal controversy – one that cannot be decided until this Court determines that it has subject matter and personal jurisdiction.

This Court's rulings about the sufficiency of allegations against other banks in no way foreclose plaintiffs' claims against NCB. The allegations against each defendant are different and must be analyzed separately, on a case-by-case basis. While NCB attempts, with its chart, to show that the allegations against NCB are the same as those found insufficient against other banks, NCB ignores allegations against it that are particular to this defendant and not alleged against any other defendant, including NCB's prior involvement with money laundering and terrorism in connection with the Bank of Credit and Commerce International ("BCCI"), *Burnett* 3AC ¶ 89; a CIA counter-terrorism expert's identification of NCB as a channel of funding for Osama bin Laden until the Saudi government closed that channel by taking over the bank, *id.*; the role of the bin Mahfouz family in NCB (and in BCCI), ¶¶ 90-92; the dismissal of Khalid bin Mahfouz from NCB and his arrest after the audit that revealed the diversion of funds to organizations supporting al Qaeda, ¶ 96. These allegations are unique to NCB and nothing in

5

this Court's rulings on any other bank addresses them; whether they state any claim against NCB presents a genuine, not merely an advisory, issue.[1] By contrast, in *Center for Reproductive Rights*, dismissal of the plaintiffs' claims was "foreordained" by the prior resolution of a purely *legal* issue that was *identical* and that controlled the result in the subsequent case. Unlike in *Center for Reproductive Rights,* the sufficiency of plaintiffs' claims presents a genuine controversy that can only be resolved by a court of competent jurisdiction.[2]

### B. The Court Correctly Determined That Jurisdictional Discovery is Warranted

NCB claims that "personal jurisdiction offers a swift route to dismissal," *see* NCB Recon Mem. at 5, arguing that discovery is unnecessary and that plaintiffs' claims should be dismissed for want of personal jurisdiction as a matter of law. (Although this argument appears in a section that supposedly argues for the primacy of jurisdictional discovery over sovereign immunity discovery, NCB's argument that its contacts are, as a matter of law, insufficient to support

---

[1] Nor does NCB explain how the Court could proceed to rule on the Rule 12(b)(6) motion without first ruling on NCB's sovereign immunity claim. In its memorandum of law in support of its motion to dismiss in *Burnett*, NCB argued that, even if it could be sued under an exception to sovereign immunity, as a foreign sovereign, it was subject to suit only under state law and that plaintiffs' federal law claims could not be maintained against a sovereign defendant. Thus, under NCB's view, this Court must determine whether NCB is an agency of the Saudi government in order to determine which claims are at issue. Plaintiffs do not agree that this is so, *see Burnett* Plaintiffs' Memorandum Of Law submitted on the underlying motion, at 62 n.41, but NCB cannot have it both ways. It cannot both claim that plaintiffs are precluded from asserting federal claims against a sovereign defendant and also urge that the Court can determine whether plaintiffs state a claim without first determining whether NCB is in fact a sovereign defendant.

[2] NCB's invitation to the Court to bypass defendant's claim of lack of personal jurisdiction comes perilously close to a waiver of that defense. The Federal Rules make clear that a defendant who moves to dismiss under Rule 12(b)(6) and omits from that motion a personal jurisdiction challenge under Rule 12(b)(2) waives the jurisdictional defense. *See* Fed.R.Civ.P. 12(g), (h). Here, NCB included a jurisdictional challenges in its motion – but now asks the Court to proceed as if it had not. At some point, a request to the Court to rule as if a motion had not been made must be treated as the equivalent of not making, or simply withdrawing, the motion. Plaintiffs believe, however, that the Court need not reach this question because NCB's motion for reconsideration ought, in any case, to be denied.

6

jurisdiction, makes clear that the true purpose of this section is to reargue the 12(b)(2) motion in its entirety.)  NCB proceeds as if the Court had not already considered six briefs on these issues (moving brief, opposition, and reply in *Burnett* and again in *Ashton*), as if the Court had not heard an entire morning of oral argument on the issue of personal jurisdiction, and as if the Court had not issued an opinion finding that jurisdictional discovery is necessary to resolve this issue.  NCB points to nothing that this Court overlooked, no change in the law, no new evidence.  Rather than repeat arguments previously made, plaintiffs respectfully refer this Court to the briefs already submitted that demonstrate that this Court has jurisdiction over NCB or, in the alternative (and as the Court found), plaintiffs are entitled to jurisdictional discovery in order to resolve this issue.

## III. NCB SHOULD NOT BE PERMITTED TO AVOID DISCOVERY ON ITS CLAIM OF IMMUNITY

In the alternative, NCB argues that the issue of sovereign immunity should be postponed until after resolution of the personal jurisdiction question.  NCB is foreclosed from making this argument.  In its opening memorandum of law in support of its motion to dismiss in *Burnett*, NCB urged the Court:

> In order to preserve the full scope of [foreign sovereign] immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" *Phoenix Consulting*, 216 F.3d at 39 (emphasis added) (*quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C Cir. 1990)). As the Supreme Court observed last Term, foreign sovereign immunity is meant "to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns." *Dole Food Co. v. Patrickson*, 123 S. Ct. 1655, 1663 (2003)."

NCB *Burnett* Opening Brief at 33-34.  Having insisted that the Court decide the sovereign immunity question *first*, indeed, having argued that deferral of that question would frustrate the

entire purpose of immunity, NCB cannot now, on a motion for reconsideration, simply change its mind and ask the Court to defer that question because it doesn't like the Court's ruling.

In any event, this argument is foreclosed by the opinion of the Second Circuit in *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738 (2d Cir. 2000). There, the district court dismissed the complaint for lack of personal jurisdiction. But the court found that was error, holding: "The initial question to be answered in this case is not whether there is personal jurisdiction within the meaning of the New York Civil Practice Law and Rules but whether there is subject matter jurisdiction within the meaning of the Foreign Sovereign Immunities Act . . . ." 235 F.3d at 746. Finding that the question could not be resolved without discovery, the Court of Appeals held that the plaintiff should be permitted to take discovery with respect to the sovereign immunity defense. Plaintiffs do not suggest that FSIA discovery would be required first if the question of personal jurisdiction could be resolved without discovery. But this Court already has held that that question, too, requires discovery. It would be unduly burdensome to all parties to permit discovery only as to personal jurisdiction, require briefing and an evidentiary hearing on that subject, only to have go through it all over again – discovery, renewed motion, briefing, hearing -- on the question of sovereign immunity. The issues should be addressed together so that one round of discovery, one renewed motion, one round of briefing, and one hearing will suffice to resolve the remaining threshold issues in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny NCB's motion for reconsideration in its entirety.

Dated:  New York, N.Y.　　　　　　　Respectfully submitted,
　　　　　February 21, 2005

　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　Ronald L. Motley, Esq. (RM-2730)
　　　　　　　　　　　　　　　　　　Jodi Westbrook Flowers, Esq.
　　　　　　　　　　　　　　　　　　Donald A. Migliori, Esq.
　　　　　　　　　　　　　　　　　　Michael Elsner, Esq. (ME-8337)
　　　　　　　　　　　　　　　　　　Justin B. Kaplan, Esq.
　　　　　　　　　　　　　　　　　　MOTLEY RICE LLC
　　　　　　　　　　　　　　　　　　28 Bridgeside Boulevard
　　　　　　　　　　　　　　　　　　P.O. Box 1792
　　　　　　　　　　　　　　　　　　Mount Pleasant, South Carolina 29465
　　　　　　　　　　　　　　　　　　Telephone:  (843) 216-9000

　　　　　　　　　　　　　　　　　　Paul J. Hanly, Jr., Esq. (PH-5486)
　　　　　　　　　　　　　　　　　　Jayne Conroy, Esq. (JC-8611)
　　　　　　　　　　　　　　　　　　Andrea Bierstein, Esq. (AB-4618)
　　　　　　　　　　　　　　　　　　HANLY CONROY BIERSTEIN & SHERIDAN, LLP
　　　　　　　　　　　　　　　　　　415 Madison Avenue
　　　　　　　　　　　　　　　　　　New York, NY 10017-1111
　　　　　　　　　　　　　　　　　　Telephone:  (212) 401-7600

　　　　　　　　　　　　　　　　　　William N. Riley, Esq.
　　　　　　　　　　　　　　　　　　Amy Ficklin DeBrota, Esq.
　　　　　　　　　　　　　　　　　　PRICE WAICUKAUSKI RILEY & DEBROTA, LLC
　　　　　　　　　　　　　　　　　　301 Massachusetts Avenue
　　　　　　　　　　　　　　　　　　Indianapolis, Indiana 46240
　　　　　　　　　　　　　　　　　　Telephone:  (317) 633-8787

　　　　　　　　　　　　　　　　　　Harry Huge, Esq.
　　　　　　　　　　　　　　　　　　HARRY HUGE LAW FIRM, LLP
　　　　　　　　　　　　　　　　　　Market Square North
　　　　　　　　　　　　　　　　　　1401 Ninth Street, N.W., Suite 450
　　　　　　　　　　　　　　　　　　Washington, D.C. 20004
　　　　　　　　　　　　　　　　　　(202) 824-6046

　　　　　　　　　　　　　　　　　　Allan Gerson, Esq.
　　　　　　　　　　　　　　　　　　Attorney At Law
　　　　　　　　　　　　　　　　　　2131 S Street NW

Washington, DC 20008
Tel: (202) 234-9717

Attorneys for Plaintiffs