THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) ) | 03 MDL 1570 (RCC) |
| Relates to: | ) ) | |
| World Trade Center Properties LLC, *et al.*, | ) ) ) | 04 CV 7280 (RCC) |
| v. | ) ) ) | |
| Al Baraka Investment and Development Corporation, *et al.*, | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS
OF DEFENDANT SAMI OMAR AL-HUSSAYEN**

David Z. Nevin (DN2615)
Scott McKay (SM3330)
NEVIN, BENJAMIN & MCKAY LLP
303 West Bannock
P.O. Box 2772
Boise, ID 83701
Telephone:  208-343-1000
Facsimile: 208-345-8274

Joshua L. Dratel (JLD4037)
JOSHUA L. DRATEL, P.C.
14 Wall Street, 28th Floor
New York, NY 10005
Telephone: 212-732-0707
Facsimile: 212-571-6341

*Attorneys for Defendant Sami Omar Al-Hussayen*

March 14, 2005

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

1.  Plaintiffs' Implausible Claim Precludes the Court's Personal Jurisdiction over Mr. Al-Hussayen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  Plaintiffs' Attempt to Serve by Publication is Constitutionally Insufficient . . . . . . . . . . . . . 2

3.  The Court Must Dismiss the Complaint for Failure to State a Claim . . . . . . . . . . . . . . . . . . 4

    A.  Standard for Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.  The Allegations Against Mr. Al-Hussayen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.  The Complaint Does Not State a Claim Under the ATA . . . . . . . . . . . . . . . . . . . . . . 5
    i.  Plaintiffs fail to allege material support or resources . . . . . . . . . . . . . . . . . . . . . . . . 6
    ii.  Plaintiffs fail to properly allege causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    iii.  Plaintiffs fail to properly allege accomplice liability . . . . . . . . . . . . . . . . . . . . . . . . 9
    iv.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.  Plaintiffs' Allegations Are Barred by the First Amendment . . . . . . . . . . . . . . . . . . 11
    i.  The alleged speech is protected by the First Amendment and can not subject Mr. Al-Hussayen to liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    ii.  Mr. Al-Hussayen has a First Amendment right to practice his religion, which includes the right to proselytize . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    iii.  Plaintiffs seek to impermissibly circumvent the first amendment through "guilt by association" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    iv.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    E.  Plaintiffs' Allegations Are Barred by Federal Law . . . . . . . . . . . . . . . . . . . . . . . . 16
    F.  Plaintiffs Fail to State a RICO Claim Against Mr. Al-Hussayen . . . . . . . . . . . . . . 17

4.  If the Court Allows Plaintiffs to Proceed Against Mr. Al-Hussayen, Certain Causes of Action Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.  Conspiracy and Aiding and Abetting Do Not Constitute Independent Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Arbitration Ass'n, Inc. v. DeFonseca,* No. 93 Civ. 2424 (CSH), 1996 WL. 363128 (S.D.N.Y. June 28, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Batzel v. Smith,* 333 F.3d 1018 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 2812 (2004) . . . . . . . .  16

*Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Boim v. Quranic Literacy Institute & Holy Land Foundation for Relief and Development,* 291 F.3d 1000 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 10, 12, 16

*Brandenburg v. Ohio,* 395 U.S. 444 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13

*Burnett, et al. v. Al Baraka, et al.,* 274 F. Supp. 2d 86 (D.D.C. 2003) . . . . . . . . . . . . . . . . .  8, 9

*Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley,* 454 U.S. 290 (1981)   . 13

*Conley v. Gibson,* 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Desiderio v. National Association of Sec. Dealers, Inc.,* 191 F.3d 198 (2d Cir. 1999) . . . . .  4, 10

*Distefano v. Carozzi North America, Inc.,* 286 F.3d 81 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . .  2

*Dubai Islamic Bank v. Clitigank, N.A.,* 256 F. Supp. 2d 158 (S.D.N.Y. 2003) . . . . . . . . . . . . 17

*Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Healy v. James,* 408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

*Hess v. Indiana,* 414 U.S. 105 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Humanitarian Law Project v. Reno,* 205 F.3d 1130 (9th Cir. 2000) . . . . . . . . . . . . . . . . . .  12, 13

*IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049 (2d Cir. 1993) . . . . . . . . . . . . . . . . . .  2

*Lamont v. Postmaster General,* 381 U.S. 301 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Mason v. America Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mennonite Board of Missions v. Adams*, 462 U.S. at 791 (1983) . . . . . . . . . . . . . . . . . . . . . . . 3

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . 3

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 866 (1982) . . . . . . . . . . . . . . . 11, 12, 13, 15, 16

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998) . . . . . . . . 2

*Pittman v. Grayson*, 149 F.3d 111 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roberts v. United States Jaycees*, 468 U.S. 609 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sepenuk v. Marshall*, No. 98-CV-1569-RBC, 2000 WL. 1808977 (S.D.N.Y. Dec. 8, 2000) . . . 18

*Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 94 N.Y.2d 43 (N.Y. 1999) . . . . . . . . . . . . . 18

*In re: Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765
(S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20 (2d Cir. 1989) . . . . 4

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## FEDERAL RULES AND STATUTES

Idaho Rules of Civil Procedure 4(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Idaho Rules of Civil Procedure 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Idaho Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 4

47 U.S.C. § 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 16

18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 2331(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

H.R. Rep. 104-383 at 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mr. Sami Omar Al-Hussayen respectfully moves for his dismissal from this action. Plaintiffs fail to establish that the Court has personal jurisdiction over Mr. Al-Hussayen, and their attempt to serve him by publication is constitutionally insufficient.  In addition, Plaintiffs fail to state a claim against Mr. Al-Hussayen upon which relief can be granted.  As to the ATA claim, Plaintiffs fail to set forth factual allegations that Mr. Al-Hussayen: 1) provided "material support or resources" to al Qaeda; 2) proximately caused the injuries suffered by them; or 3) is subject to liability under a concerted action theory.  Moreover, Plaintiffs seek to impose liability for activities protected by the First Amendment and those provided federal immunity under 47 U.S.C. § 230.

Accordingly, the Complaint must be dismissed  pursuant to Rules 12(b)(2), 12(b)(6) and 4(f), Federal Rules of Civil Procedure.[1]

1.    *Plaintiffs' Implausible Claim Precludes the Court's Personal Jurisdiction over Mr. Al-Hussayen*

The Court should dismiss Mr. Al-Hussayen from this action because it lacks personal jurisdiction over him.  Plaintiffs presumably seek personal jurisdiction under the ATA's

---

[1] Of the eleven cases appearing on Plaintiffs' website, it appears that five name Mr. Al-Hussayen: *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.,* 03-cv-09849-RCC (S.D.N.Y.); *Euro Brokers Inc. v. Al Baraka Inv. & Dev. Corp.,* 04-cv-07279-RCC (S.D.N.Y.), *Federal Ins. Co., et al. v. al Qaida, et al.,* 03-cv-06978-RCC (S.D.N.Y.); *New York Marine & Gen. Ins. Co. v. Al Qaida, et al.,* 04-cv-06105-RCC (S.D.N.Y.), and *World Trade Center Props. LLC v. Al Baraka Inv. & Dev. Corp.,* 04-cv-07280-RCC (S.D.N.Y.).  A sixth case, *Ashton, et al. v. Al Qaeda Islamic Army, et al.,* 02-cv-06977-RCC (S.D.N.Y.), mentions Mr. Al-Hussayen but does not identify him as a defendant.  Mr. Al-Hussayen has moved or is moving to dismiss each of the foregoing cases.  It is possible that, in the profusion of defendants' names in the various other lengthy complaints consolidated in this proceeding, references to Mr. Al-Hussayen have been missed.  If so, this Motion seeks dismissal in those cases as well.

1   •    MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
          OF DEFENDANT SAMI OMAR AL-HUSSAYEN

nationwide service of process.[2]  However, such personal jurisdiction first requires Plaintiffs to assert a "colorable claim" against Mr. Al-Hussayen.  *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055-56 (2d Cir. 1993).  They have not done this.  Of course, it is Plaintiffs' burden to establish that the Court has jurisdiction over Mr. Al-Hussayen.  *Distefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir. 2001).

As described below, the basis for his alleged liability is so insubstantial, implausible, and foreclosed by prior decisions of the Court, that it can not exercise personal jurisdiction over him.  *See Herrmann,* 9 F.3d at 1055-56.  Furthermore, the allegations fail to allege facts which would establish the Court's personal jurisdiction over Mr. Al-Hussayen under New York's long-arm statute.  *See* N.Y. C.P.L.R. § 302 (McKinney 2004); *see also In re: Terrorist Attacks on Sept. 11, 2001,* 349 F.Supp.2d 765, 804-06 (S.D.N.Y. 2005) ("*In re: Sept. 11*") (establishing requirements of personal jurisdiction).  Accordingly, the Court should dismiss Mr. Al-Hussayen for lack of personal jurisdiction.

*2.      Plaintiffs' Attempt to Serve by Publication Is Constitutionally Insufficient*

Plaintiffs' attempt at service by publication is constitutionally insufficient and the Court should quash service as to Mr. Al-Hussayen.  The two publications in which Plaintiffs have supposedly published their notices are not readily found in Mr. Al-Hussayen's home country: 1) *Al Quds Al Arabia* is banned in Saudi Arabia; and 2) *The International Herald Tribune* has a

---

[2]  Of course, were the Court to dismiss the ATA claim against Mr. Al-Hussayen, Plaintiffs could no longer rely on this theory of personal jurisdiction.  *See* Section 4., B., *infra.* Similarly, were Plaintiffs to seek personal jurisdiction under the RICO statutes, such jurisdiction is not only suspect, *see* Order at p. 30, n.33, *citing PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 71 (2d Cir. 1998), it could never form the basis for personal jurisdiction if the Court dismissed those claims.  *See* Section 4., F., *infra.*

circulation of less than 200 in the Kingdom.  *See In re: Sept. 11,* 349 F.Supp.2d at 817; *see also* Memorandum of Law in Support of Sheikh Safer Al-Hawali's Motion to Dismiss (03 MDL 1570 Docket No. 81) at pp. 11-14.  Clearly, Mr. Al-Hussayen's residence in Saudi Arabia is outside of either of these publications' "normal circulation."  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950).

In addition to these glaring problems, Plaintiffs failed to comply with the Court's Order permitting service by publication.  The website the Court ordered Plaintiffs to publish the various complaints on (www.sept11terrorlitigation.com) was not functioning until sometime near (if not after) the conclusion of the four week publication period.  Furthermore, a *separate* website used by Plaintiffs (www.september11terrorlitigation.com) did not include any reference to *World Trade Center Properties*  until approximately January 19, 2005.  Thus, during the four week period, a person who accessed that separate website would have been completely unaware of this case.

These attempts to serve Mr. Al-Hussayen by publication were ineffective and constitute nothing more than a "mere gesture," *see Mullane,* 339 U.S. at 315 ("But when notice is a person's due, process which is a mere gesture is not due process"), and fail to constitute "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mennonite Bd. of Missions v. Adams,* 462 U.S. at 791, 795 (1983), quoting *Mullane,* 339 U.S. at 314.

The Court should therefore quash service as to Mr. Al-Hussayen.

3  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
       OF DEFENDANT SAMI OMAR AL-HUSSAYEN

3.    *The Court Must Dismiss the Complaint for Failure to State a Claim*

Plaintiffs seek to impose civil liability upon Mr. Al-Hussayen for the events of September 11, 2001 based upon his alleged association with a U.S.-based religious organization, the Islamic Assembly of North America (IANA), and his alleged association with websites upon which religious articles were published.  Not only is there no connection between these alleged activities and the events on September 11th or al Qaeda, Plaintiffs have utterly failed to allege a connection – let alone a cause of action – in their Complaint.

Plaintiffs' Complaint is void of any allegation upon which the Court could find Mr. Al-Hussayen provided material support and resources to al Qaeda.  Furthermore, the allegations against him consist of activities protected by the First Amendment and provided federal immunity under 47 U.S.C. § 230.  The Court is compelled to dismiss Mr. Al-Hussayen because the allegations – even if proven – would not entitle Plaintiffs to relief.  *See In re: Sept. 11,* 349 F.Supp.2d at 825, *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

A.    *Standard for Dismissal*

The standard for dismissal under Rule 12(b)(6) is well established.  The factual allegations of the plaintiffs must be accepted as true and all reasonable inferences must be drawn in their favor.  *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir. 1999). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness.*"  Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir. 2003) (quoting *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27 (2d Cir. 1989)).

B.     *The Allegations Against Mr. Al-Hussayen*

Plaintiffs' allegations against Mr. Al-Hussayen can be summarized as follows:

1.     Mr. Al-Hussayen was associated with the Islamic Assembly of North America (IANA);

2.     IANA is a legitimate religious organization based in Michigan that engages in proselytizing the religion of Islam;

3.     IANA accepted donations to support its own dawah-related activities (*i.e.,* IANA is not a charity which forwards donations to other groups);

4.     Mr. Al-Hussayen made financial donations to IANA (on behalf of himself and/or others);

5.     Mr. Al-Hussayen assisted in the operation of various IANA-related websites (none of which are alleged to be owned or controlled by al Qaeda);

6.     upon those websites certain religious "fatwas" were published (one of which discussed the possibility of "bombing or bringing down an airplane");

7.     two of the Muslim clerics who allegedly wrote certain fatwas were viewed with approval by Osama bin Laden (neither of whom are alleged to be members of al Qaeda); and

8.     Mr. Al-Hussayen participated in a Yahoo! Internet e-mail group, upon which various individuals posted articles.

Even assuming these allegations to be true, they do not state a claim against Mr. Al-Hussayen

upon which relief can be granted.

C.     *The Complaint Does Not State a Claim Under the ATA[3]*

Plaintiffs do not allege Mr. Al-Hussayen was involved in, conspired with, or aided and

abetted the perpetrators of the 9/11 attacks.  Rather, they allege he is liable to them for providing

---

[3]  Mr. Al-Hussayen recognizes the Court has assumed "for now" that the attacks of September 11th were an act of "international terrorism."  *In re: Sept. 11,* 349 F.Supp.2d at 828, n. 39.  Nonetheless, Mr. Al-Hussayen contends the events of September 11, 2001 "occurr[ed] primarily within the territorial jurisdiction of the United States" and therefore constitute "domestic terrorism."  *See* 18 U.S.C. § 2331(5).  Accordingly, the ATA does not – and never was intended to – apply to Plaintiffs' claim.  *See Boim v. Quranic Literacy Institute & Holy Land Foundation for Relief and Development,* 291 F.3d 1000, 1010-11 (7th Cir. 2002) *("Boim II")* (legislative history indicates ATA was implemented to extend civil liability "to land-based terrorism that occurred in a foreign country").

material support and resources to Osama bin Laden and al Qaeda. Complaint at ¶¶ 1125-1131. However, even a generous reading of the allegations against Mr. Al-Hussayen fails to state such a claim against him.[4]

i.    Plaintiffs fail to allege material support or resources

Plaintiffs' allegations are doomed because they simply fail to allege that any material support or resources were provided by Mr. Al-Hussayen to al Qaeda. Therefore, Plaintiffs' claim must fail. *See In re: Sept. 11,* 349 F.Supp.2d at 825.

Plaintiffs make conclusory assertions in a preemptive attempt to survive dismissal under Rule 12, *see, e.g.,* Complaint at ¶¶ 999-1000, 1009-10, but there are no factual allegations to support them. As the Court has previously stated, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)."[5] *In re: Sept. 11,* 349 F.Supp.2d at 833, *citing De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996).

---

[4]  It must be noted that Plaintiffs' allegations are nothing more than a verbatim copy of the More Definite Statement filed in *Burnett*. (03 MDL 1570 Docket No. 149.) Plaintiffs' complete failure to conduct their own investigation and/or confirm the accuracy of their wild and conclusory accusations should be condemned. In fact, Plaintiffs' allegations that Mr. Al-Hussayen was "currently" facing trial in Idaho is indicative of their "copy and paste" strategy when accusing people of being terrorists. Complaint at ¶ 982. The truth is, as of the date the Complaint was filed, Mr. Al-Hussayen was not "currently" facing trial in Idaho. Rather, he had been acquitted of the charges months earlier and had returned to his home country of Saudi Arabia.

[5]  Without explanation, Plaintiffs' allegations include references to "Hamas" and "the Chechen mujahideen." *See, e.g.,* Complaint at ¶¶ 530, 541, 566, 983, 984, and 986. The Court has previously rejected similar allegations where plaintiffs have failed to allege a relationship between other groups (such as Hamas) and al Qaeda or the events of September 11, 2001. *See In re: Sept. 11,* 349 F.Supp.2d at 833. The Court should do the same here.

ii.   <u>Plaintiffs fail to properly allege causation</u>

Furthermore, Plaintiffs fail to allege a causal connection between any activities on behalf of Mr. Al-Hussayen and the events of September 11, 2001.  As the Court has already determined with respect to other MDL defendants, Plaintiffs' conclusory allegations are insufficient to allege a causal link.  *See id.* at 800-01.

> [T]here must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists].  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. Here, there are no such factual bases presented, there are only conclusions.

*Id.* at 801.

Here, the only "funding" allegation against Mr. Al-Hussayen is that he donated money to IANA.  However, Plaintiffs fail to even allege that IANA was "a solicitor, collector, supporter, front or launderer" for al Qaeda.  Such an omission compels dismissal against Mr. Al-Hussayen. In fact, Mr. Al-Hussayen must be dismissed from this case for the very reason set forth by the Court regarding a similar defendant's alleged donations to other organizations – there is absolutely no indication that IANA "was funneling donations to al Qaeda." *Id.* at 799.  Indeed, Plaintiffs only allege that IANA *received* donations from others.  *See* Complaint at ¶¶ 569-71, 575-580, 996-97.

Plaintiffs attempt to circumvent this fatal omission with allegations that Mr. Al-Hussayen sent money to a *former* member of the Egyptian Islamic Jihad (EIJ).  Complaint at ¶ 574.  As Plaintiffs well know, there is no liability for sending money to someone no longer associated with a designated organization.  Of course, even if there was, Plaintiffs have failed to set forth

factual allegations that Mr. Al-Hussayen did so knowing and intending he was furthering terrorist acts. *See Burnett, et al. v. Al Baraka, et al.,* 274 F.Supp.2d 86, 106 (D.D.C. 2003) (ATA requires funding with the knowledge and intent to further violent acts), *citing Boim II,* 291 F.3d at 1011-12.

Similarly, Plaintiffs' allegations regarding Al-Haramain indicate that IANA was corresponding with the Al-Haramain office in Riyadh, Saudi Arabia, *see* Complaint at ¶ 582 – an office *never* designated by the United States.  Even when other "Al-Haramain" offices were subsequently designated, the Riyadh office was given the approval of then-U.S. Treasury Secretary Paul O'Neill.  *See* Remarks by Treasury Secretary Paul O'Neill on New U.S.-Saudi Arabia Terrorist Financing Designations (Mar. 11, 2002), *available at* www.treas.gov/press/releases/po1086.htm.

Regardless of these facts, the innocuous activities alleged between IANA and Al-Haramain do not constitute providing material support to al Qaeda.  *See* Complaint at ¶¶ 582-596 (alleging agreements to publish a book, "Meanings of the Holy Koran," and to place an Al-Haramain "banner" on a website).  Nor could they impose liability against Mr. Al-Hussayen under the ATA.

Plaintiffs' failure to make any allegations – conclusory or otherwise – that IANA provided material support or resources to al Qaeda dooms their claims against Mr. Al-Hussayen. Without such factual allegations against IANA, there is no basis to argue that Mr. Al-Hussayen *knowingly and intentionally* provided material support to al Qaeda (or anyone else) through his

8   •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
        OF DEFENDANT SAMI OMAR AL-HUSSAYEN

alleged donations to IANA.[6]  *See Boim II,* 291 F.3d at 1012 ("in the very least, the plaintiffs must

be able to show that murder was a reasonably foreseeable result of making a donation").  Of

course, even if such factual allegations against IANA had been pleaded, they would not cure the

deficiencies against Mr. Al-Hussayen.  *See In re: Sept. 11,* 349 F.Supp.2d at 799-801 (citing

plaintiffs' insufficient allegations that similar defendants knew the organizations they supported

were fronts for al Qaeda).

Plaintiffs' allegations regarding the websites fare no better.  None of the websites

allegedly associated with Mr. Al-Hussayen are alleged to have been owned, controlled, or in any

way associated with al Qaeda.  Furthermore, there are no factual allegations connecting them to

Plaintiffs' injuries.

In sum, Plaintiffs seek liability for alleged activities which are more attenuated to

Plaintiffs' injuries than those the Court stated would "stretch causation to 'terra incognita.'" *In

re: Sept. 11,* 349 F.Supp.2d at 798 (quoting *Burnett, et al. v. Al Baraka, et al.,* 292 F. Supp. 2d 9,

20 (D.D.C. 2003) ("*Burnett II*")).

iii.    Plaintiffs fail to properly allege accomplice liability

Having failed to allege that Mr. Al-Hussayen knowingly and intentionally provided

material support or resources to al Qaeda (or anyone else), Plaintiffs presumably rely on theories

of accomplice liability to support a causal link.  However, their allegations fail to allege any set

_____

[6]  Even to this day IANA operates openly in the United States.  The organization has
never been included in the U.S. Treasury's SDN & Blocked Persons List.  *Available at*
www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf.  To use the prior words of this Court,
"none of the organizations [Mr. Al-Hussayen is] alleged to have supported ... were designated a
sponsor of terrorism at the time of the alleged contributions."  *In re: Sept. 11,* 349 F.Supp.2d at
800.

9  •    MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
        OF DEFENDANT SAMI OMAR AL-HUSSAYEN

of facts which, if proven, would entitle them to relief.  *See In re: Sept. 11,* 349 F.Supp.2d at 825, *citing Desiderio,* 191 F.3d at 202.

"To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." *Id.* at 828, *citing Boim v. Quranic Literacy Inst. & Holy Land Found.,* 292 F.3d 1000, 1023 (7th Cir. 2002) ("*Boim II*").  "Under a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act and that the attacks of September 11 were a reasonably foreseeable consequence of that conspiracy." *Id.* at 829, *citing Boim v. Quranic Literacy Inst.,* 340 F. Supp. 2d 885, 907 (N.D. Ill. 2004) ("*Boim III*").  Of course, "concerted action liability requires general knowledge of the primary actor's conduct." *Id.* at 832, *citing Pittman v. Grayson,* 149 F.3d 111, 123 (2d Cir. 1998).

However, the Complaint is void of any factual allegation that Mr. Al-Hussayen pursued a common plan or design to commit a tortious act, actively took part in it, or furthered it by cooperation or request; nor is there any factual allegation he lent aid or encouragement to the wrongdoer.  *Id.* at 826, *citing Pittman,* 149 F.3d at 122; *see also id.* at 798, n. 28, pp. 804-05 (describing requirements of pleading a cause of action for conspiracy or aiding and abetting). Accordingly, "Plaintiffs have not ... pleaded facts to support an inference that [Mr. Al-Hussayen was] sufficiently close to the terrorists' illegal activities to satisfy [the requirements] of [aiding and abetting or conspiracy under] *Halberstam* or New York law." *Id.* at 800-01.

iv.   Conclusion

Plaintiffs fail to set forth factual allegations that Mr. Al-Hussayen: 1) provided anything to anyone (including al Qaeda) which would qualify as "material support or resources;" 2) proximately caused their injuries; or 3) is liable under a concerted action theory of liability. Plaintiffs have utterly failed to state a claim.

D.   *Plaintiffs' Allegations Are Barred by the First Amendment*

Plaintiffs go to great lengths to allege Mr. Al-Hussayen assisted websites upon which the alleged "fatwas" and "propaganda videos" were published, as well as allegations that he participated in an Internet e-mail group where other alleged statements were published.  They continue with allegations that he associated with IANA and others who were engaged in the proselytization of their religion – described by Plaintiffs as "fundamental Islam."

However, "[e]ach of these [activities] is a form of speech or conduct that is ordinarily entitled to protection under the First [] Amendment[]."  *NAACP v. Claiborne Hardware Co.,* 458 U.S. 866, 907 (1982).  Accordingly, Plaintiffs' claims are barred.

i.   The alleged speech is protected by the First Amendment and can not subject Mr. Al-Hussayen to liability

 When Plaintiffs' allegations against Mr. Al-Hussayen are analyzed with "extra-careful scrutiny," *In re: Sept. 11,* 349 F.Supp.2d at 831, it is clear they seek to impose liability for the dissemination of speech and nothing more.  In fact, Plaintiffs' own summary of the allegations against him admits as much.  *See* Complaint at ¶ 1010.  However, speech can not constitute "material support," and even if it could, protected speech can not subject Mr. Al-Hussayen – or anyone else – to liability.  Plaintiffs make no allegations which would remove the alleged speech

11  •  MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
       OF DEFENDANT SAMI OMAR AL-HUSSAYEN

from the protections of the First Amendment.

Speech that advocates the use of force or the violation of law is protected and can only lose its constitutional protections "where such advocacy is directed to inciting or producing *imminent lawless action* and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam) (emphasis added). Thus, advocacy for illegal action – including violence – at some *indefinite time in the future* is protected. *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973) (per curiam).

Even when actual but non-imminent violence occurs in direct response to such advocacy, neither the speaker nor those who supported the advocacy can be held civilly liable for the criminal acts of others. *Claiborne Hardware,* 458 U.S. at 927-29 (barring liability based upon speech where subsequent violent acts occurred "weeks or months" afterward). Therefore, as long as the speech is protected, no liability can be imposed upon those who participated in its dissemination. *Id.* at 927-32.

Congress, in enacting the material support statutes, recognized that the First Amendment would continue to protect those who chose to "advocate, think, and profess the attitudes and philosophies of [terrorists]." H.R. Rep. 104-383 at 45. Thus, protected speech (or for that matter, any activity protected by the First Amendment) cannot constitute "material support."

The Seventh and Ninth Circuits have each recognized the distinction between material support and speech. *Boim II,* 291 F.3d at 1023, 1026-27; *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133-34 (9th Cir. 2000). In fact, in *Humanitarian Law Project*, Judge Kozinski declared far greater protections for speech than what is even alleged here by Plaintiffs:

> The [material support] statute does not prohibit ... vigorously promoting and
> supporting the political goals of [a terrorist] group.  [Individuals] are even free to
> praise the groups for using terrorism as a means of achieving their ends. ... They
> can do so without fear of penalty right up to the line established in *Brandenburg v.
> Ohio*.

205 F.3d at 1133-34 (citation omitted); *see also Claiborne Hardware,* 458 U.S. at 928 ("When

such appeals do not incite lawless action, they must be regarded as protected speech").

    The various articles, videos, and statements as alleged in the Complaint – including the

fatwa which allegedly references the bombing or bringing down of an airplane – fall squarely

within the protections of *Brandenburg* and its progeny.  Of course, labeling certain speech

"propaganda," Complaint at ¶¶ 516, 533, 992, does nothing to remove the protections of the First

Amendment, *see Lamont v. Postmaster General,* 381 U.S. 301, 307 (1965) (recognizing First

Amendment right to receive "communist political propaganda").

    Furthermore, such advocacy is protected whether it is accomplished alone in or in a

group.  Thus, despite Plaintiffs apparent wishes to the contrary, there is no "conspiracy" to

disseminate protected speech.  Group advocacy is a protected First Amendment activity.  *See

Claiborne Hardware,* 458 U.S. at 907-909 ("Effective advocacy of both public and private points

of view, particularly controversial ones, is undeniably enhanced by group association, as this

Court has more than once recognized by remarking upon the close nexus between the freedoms

of speech and assembly").  As summarized by the Supreme Court:

> There are, of course, some activities, legal if engaged in by one, yet illegal if
> performed in concert with others, but political expression is not one of them.

*Id.* at 908 (quoting *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454

U.S. 290, 296 (1981)).

13  •  MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
        OF DEFENDANT SAMI OMAR AL-HUSSAYEN

ii.   Mr. Al-Hussayen has a First Amendment right to practice his religion, which includes the right to proselytize

"[T]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990). Of course, the "exercise of religion" involves not only belief and profession, but also the performance of physical acts such as assembly and proselytizing. *Id.*

Here, Plaintiffs seek liability against Mr. Al-Hussayen for allegedly assisting others in the proselytization of Islam. *See* Complaint at ¶ 502 ("In order to achieve its goal of promoting the spread of fundamental Islam, IANA and its officers have spent large sums of money on sponsoring extremist political conferences held inside the United States, publishing websites, books, and magazines..."). Such activities are protected by the First Amendment.

iii.   Plaintiffs seek to impermissibly circumvent the first amendment through "guilt by association"

Of course, those who engage in free speech and the free exercise of religion are not required to do so by themselves. The First Amendment protects the right to freely associate with others in order to express beliefs and ideas – a right implicit in the freedoms of speech, assembly, and petition. *Healy v. James*, 408 U.S. 169, 181 (1972). The very purpose of the freedom of association is to permit individuals to engage in collective efforts to pursue First Amendment protected activity - including speech, assembly, and the exercise of religion - and to pursue a wide variety of political, social, economic, educational, religious, and cultural ends. *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 622 (1980).

Based on the right to associate freely, the Supreme Court has long held that imposing

"guilt by association" violates the First Amendment. *See, e.g., Claiborne Hardware,* 458 U.S. at 919-20; *Healy,* 408 U.S. at 186 ("Guilt by association alone ... is an impermissible basis upon which to deny First Amendment rights"). But here, Plaintiffs are attempting to do just that.

In order to state a claim under the ATA, Plaintiffs were required to assert factual allegations that Mr. Al-Hussayen knowingly and intentionally provided material support or resources to al Qaeda. Instead, they merely alleged that certain organizations (some of which were *subsequently* designated by the United States) made financial donations to IANA, *see* Complaint at ¶¶ 569-71, 578-79, and 996-997, and then allege a lawful association between IANA and Mr. Al-Hussayen.

Even assuming that Plaintiffs have made sufficient factual allegations against these other organizations for providing material support or resources to al Qaeda, the fact that such organizations also donated money to IANA (or anyone else) does nothing to substantiate a claim that the receiver of such monies has committed a violation under the ATA. Of course, Mr. Al-Hussayen is not even alleged to have received donations from these organizations – he is merely alleged to have donated money to IANA as well.

These allegations are not only insufficient to impose liability upon Mr. Al-Hussayen, they consist of nothing more than an attempt to impose "guilt by association." As such, Plaintiffs' claims are barred by the First Amendment.

iv. Conclusion

"When activity protected by the First Amendment is present, damages are restricted to the direct consequences of the illegal violent conduct and *may not include the consequences*

*resulting from ... protected First Amendment activity." Boim II,* 291 F.3d at 1023, *citing*

*Claiborne Hardware,* 458 U.S. at 918 (emphasis added).  The allegations against Mr. Al-

Hussayen consist of speech or conduct which is entitled to First Amendment protections.

Thus, even if Plaintiffs had pleaded a sufficient causal connection between the allegations

against Mr. Al-Hussayen and the events of September 11, 2001, their claims are nonetheless

barred.

E.    *Plaintiffs' Allegations Are Barred by Federal Law*

In addition to the protections of the First Amendment, Plaintiffs' allegations regarding the

websites and Internet e-mail group are expressly barred by 47 U.S.C. § 230.

> By its plain language, § 230 creates a federal immunity to any cause of action that
> would make service providers liable for information originating with a third-party
> user of the service. Specifically, § 230 precludes courts from entertaining claims
> that would place a computer service provider in a publisher's role. Thus, lawsuits
> seeking to hold a service provider liable for its exercise of a publisher's traditional
> editorial functions--such as deciding whether to publish, withdraw, postpone or
> alter content--are barred.

*Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997).

Here, Plaintiffs seek to impose civil liability upon Mr. Al-Hussayen for his alleged

association with websites and an Internet e-mail group upon which articles written by third-

parties appeared.  *See* Complaint at ¶¶ 512-18, 523, 527-39, 541, 616-17, 978-80, 983, 990-93,

and 1010.  Yet, those same allegations qualify Mr. Al-Hussayen as a provider or user of an

interactive computer service.  *See Batzel v. Smith,* 333 F.3d 1018, 1030-31 (9th Cir. 2003)

(operator of website and listserv qualified as a provider or user), *cert. denied,* 124 S.Ct. 2812

(2004).  He is therefore entitled to civil immunity under § 230 for all such acts.  *See, e.g.,*

*Blumenthal v. Drudge,* 992 F.Supp. 44, 52 (D.D.C. 1998) (providing immunity where defendant had an "active, even aggressive role in making available content prepared by others").

Accordingly, Plaintiffs fail to state a claim upon which relief can be granted.

F.      *Plaintiffs' Fail to State a RICO Claim Against Mr. Al-Hussayen*

Plaintiffs have failed to allege facts which would establish a cause of action against Mr. Al-Hussayen under the RICO statutes.  There are absolutely no factual allegations that Mr. Al-Hussayen invested racketeering income; nor are there any factual allegations that Plaintiffs suffered injuries arising from such activity.  Thus, Plaintiffs fail to state a claim under 18 U.S.C. § 1962(a).  *In re: Sept. 11,* 349 F.Supp.2d at 827.

Even assuming Plaintiffs have sufficiently pled the existence of an enterprise, "they do not allege 'anything approaching active management or operation'" as required to state a claim under 18 U.S.C. § 1962(c).  *Id.* (quoting *Dubai Islamic Bank v. Citibank, N.A.,* 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)).  Similarly, they fail to allege the existence of "a conscious agreement among the defendants" necessary to state a conspiracy claim under 18 U.S.C. § 1962(d).  *Id., citing Am. Arbitration Ass'n, Inc. v. DeFonseca,* No. 93 Civ. 2424 (CSH), 1996 WL 363128, at *7 (S.D.N.Y. June 28, 1996).

Accordingly, the Court should dismiss Plaintiffs' RICO claims against Mr. Al-Hussayen.

4.      *If the Court Allows Plaintiffs to Proceed Against Mr. Al-Hussayen, Certain Causes of Action Must Be Dismissed*

Even if the Court were to allow Plaintiffs to proceed against Mr. Al-Hussayen, certain causes of action must be dismissed because they seek relief which can not be granted.

A.  *Conspiracy and Aiding and Abetting Do Not Constitute Independent Causes of Action*

Plaintiffs seek additional damages based upon conspiracy (Count 7) and aiding and abetting (Count 8).  Complaint at pp. 319-20, 324-25.  However, conspiracy and aiding and abetting do not constitute independent causes of action and therefore do not state a claim upon which relief can be granted.  As the Court previously stated:

> *It is textbook law that New York does not recognize an independent tort of conspiracy.*  If an underlying, actionable tort is established, however, plaintiff may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme.  In this way, the defendants may be held jointly and severally liable for any compensatory and punitive damages awarded for the underlying torts, although *damages may not be awarded on the conspiracy count itself.*

*Sepenuk v. Marshall,* No. 98-CV-1569-RBC, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citations omitted) (emphasis added).  This reasoning is equally applicable to aiding and abetting liability.  *See Small v. Lorillard Tobacco Co.,* 720 N.E.2d 892, 94 N.Y.2d 43, 57 (N.Y. 1999).

Therefore, Plaintiffs cannot seek additional damages for conspiracy or aiding and abetting.  Accordingly, Counts 7 and 8 fail to state a claim upon which relief can be granted and must be dismissed.

5.  *Conclusion*

Based upon the foregoing, the action against Mr. Al-Hussayen must be dismissed.

DATED this 14th day of March, 2005.

NEVIN, BENJAMIN & McKAY, LLP

By:  __/s/_____
David Nevin (DN2615)
Scott McKay (SM3330)

*Attorneys for Sami Omar Al-Hussayen*