THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ | ) | |
| IN RE: TERRORIST ATTACKS ON | ) | 03 MDL 1570 (RCC) |
| SEPTEMBER 11, 2001 | ) | |
| _____ | ) | |
| Relates to: | ) | |
| | ) | |
| Kathleen Ashton, *et al.*, | ) | 02 CV 6977 (RCC) |
| | ) | |
| v. | ) | |
| | ) | |
| Al Qaeda Islamic Army, *et al.*, | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS
## OF SAMI OMAR AL-HUSSAYEN

David Z. Nevin (DN2615)
Scott McKay (SM3330)
NEVIN, BENJAMIN & MCKAY LLP
303 West Bannock
P.O. Box 2772
Boise, ID 83701
Telephone:  208-343-1000
Facsimile: 208-345-8274

Joshua L. Dratel (JLD4037)
JOSHUA L. DRATEL, P.C.
14 Wall Street, 28th Floor
New York, NY 10005
Telephone: 212-732-0707
Facsimile: 212-571-6341

*Attorneys for Sami Omar Al-Hussayen*

March 14, 2005

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Plaintiffs Have Failed to Name Mr. Al-Hussayen as a Defendant . . . . . . . . . . . . . . . . . . . . . . . 1

Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.  Plaintiffs' Implausible Claim Precludes the Court's Personal Jurisdiction over Mr. Al-Hussayen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.  The Court Must Dismiss the 3AC for Insufficient Service of Process . . . . . . . . . . . . . . . . 3

      i.  Plaintiffs' violation of case management order #2 compels dismissal . . . . . . . . . . . . 4
      ii.  Plaintiffs' violation of Rule 4 compels dismissal . . . . . . . . . . . . . . . . . . . . . . . . . 5
      iii.  Plaintiffs never requested permission to serve Mr. Al-Hussayen by publication . . . . 6
      iv.  Plaintiffs' attempt to serve by publication is constitutionally insufficient . . . . . . . . 6
      v.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3.  The Court Must Dismiss the 3AC for Failure to State a Claim . . . . . . . . . . . . . . . . . . . . 8

      A.  Standard for Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      B.  Allegations Against Mr. Al-Hussayen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      C.  The 3AC Does Not State a Claim Under the ATA . . . . . . . . . . . . . . . . . . . . . . . . 10
      i.  Plaintiffs fail to allege material support or resources . . . . . . . . . . . . . . . . . . . . 11
      ii.  Plaintiffs fail to properly allege causation . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      iii.  Plaintiffs fail to properly allege accomplice liability . . . . . . . . . . . . . . . . . . . . 13
      iv.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      D.  Plaintiffs' Allegations Are Barred by the First Amendment . . . . . . . . . . . . . . . . . 14
      i.  Freedom of speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      ii.  Freedom of religion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      iii.  Freedom of association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      iv.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      E.  Plaintiffs' Allegations Are Barred by Federal Law . . . . . . . . . . . . . . . . . . . . . . . 17
      F.  The 3AC Does Not State a Claim Under the TVPA . . . . . . . . . . . . . . . . . . . . . . . 18
      G.  Assault and Battery and Intentional Infliction of Emotional Distress Claims are Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      H.  Claims Based Upon Intentional Murder are Barred by the Statute of Limitations . . 19
      I.  There is No Independent Cause of Action for Punitive Damages . . . . . . . . . . . . . . 19

4.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*America Commercial Barge Line Co. LLC v. Tug Joan Salton*, No. 99-cv-0846-RCC, 2001 WL. 262724 (S.D.N.Y. Mar. 16, 2001) .................................................................................. 6

*Arndt v. UBS AG*, 342 F.Supp.2d 132 (E.D.N.Y. 2004) ............................................................ 18

Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003), *cert. denied,* 124 S.Ct. 2812 (2004) ............... 18

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) ................................................ 18

*Boim v. Quranic Literacy Institute & Holy Land Foundation for Relief and Development*, 291 F.3d 1000 (7th Cir. 2002) ....................................................... 10, 12, 13, 15, 17

*Bologna v. Allstate Insurance Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001) ................. 19

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ...................................................... 15, 16

*Burnett v. Al Baraka*, 292 F.Supp.2d 9, 20 (D.D.C. 2003) .......................................................12, 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................... 9

*Cox v. Sandia Corp.*, 941 F.2d 1124 (10th Cir. 1991) ..................................................... 6

*Delicata v. Bowen*, 116 F.R.D. 564 (S.D.N.Y. 1987) ..................................................... 5

*Desiderio v. National Association of Sec. Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999) ..... 9, 13

*Distefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001) ..................... 3

*Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) ......................................................... 16

*Geiger v. Allen*, 850 F.2d 330 (7th Cir. 1988) ........................................................ 5

*Gordon v. Hunt,* 835 F.2d 452 ................................................................ 5

*Hess v. Indiana*, 414 U.S. 105 (1973) ........................................................ 15

*Holmes v. Lorch*, 329 F.Supp.2d 516 (S.D.N.Y. 2004) ................................................. 19

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) . . . . . . . . . . . . . . . . . .  15, 16

*Hutchinson v. New York State Correctional Officers,* No. 02 Civ. 2407 (CBM), 2003
   WL 22056997, at *9-11 (S.D.N.Y. Sept. 4, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*IUE AFL-CIO Pension Fund v. Herrmann,* , 9 F.3d 1049 (2d Cir. 1993) . . . . . . . . . . . . . . .  2, 3

*Mason v. America Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*McDonald v. McDonald*, 193 A.D.2d 590 (N.Y. App. Div. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) . . . . . . . . . . . . . . . . . . . . . . .  5, 8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . .  7, 8

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 866 (1982) . . . . . . . . . . . . . . . . . . .  14, 15, 16, 17

*Pittman v. Garcia*, 149 F3d 111, 123 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Rocanova *v. Equitable Life Assurance Soc'y of the United States,* 634 N.E.2d 940
   83 N.Y.2d 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*In re: Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) . . . . .  passim

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20 (2d Cir. 1989) . . . .  9

*Wei v. Hawaii*, 763 F.2d 370 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Zachary v. Thigpen*, 895 F. Supp. 1472 (M.D. Ala. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

*Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . .  18

## FEDERAL RULES AND STATUTES

Federal Rule of Civil Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 5

Federal Rule of Civil Procedure 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Federal Rule of Civil Procedure 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Civil Procedure 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Civil Procedure 15 ............................................................... 1

H.R. Rep. 104-383 at 45 ....................................................... 15

47 U.S.C. § 230 ....................................................... 2, 9, 17, 18

18 U.S.C. § 2331(5) ....................................................... 10

*Plaintiffs Have Failed to Name Mr. Al-Hussayen as a Defendant*

Mr. Sami Omar Al-Hussayen is not named as a defendant in the caption of this law suit nor in the "Defendants" section of the Third Amended Complaint ("3AC").  He is therefore not a named defendant and need not appear in this action.  *See* F.R.Civ.P. 10(a) (all parties must be identified in caption of the complaint).  Accordingly, the Court can rule the omission of Mr. Al-Hussayen's name from the relevant portions of the 3AC to be dispositive and hold that Mr. Al-Hussayen is not a party to this action.

However, Plaintiffs have included Mr. Al-Hussayen in paragraphs 343-353 of the 3AC. Significantly, these paragraphs do not refer to him as a defendant.  Nor has the Court regarded Mr. Al-Hussayen as a defendant in this action as he is not listed on the docket sheet with other defendants named in the 3AC.  (*See* Docket No. 111, 3AC.)  However, it is not known whether Plaintiffs consider Mr. Al-Hussayen a defendant in the action notwithstanding their failure to describe him as such given they chose to include him in the text of the 3AC.  In an abundance of caution, Mr. Al-Hussayen files this motion in the event Plaintiffs contend – and the Court finds – he is a defendant.  Of course, Plaintiffs are forbidden to now amend the 3AC to add Mr. Al-Hussayen as a defendant.  *See* Case Management Order #2 ("CMO2") at ¶ 12 (03 MDL 1570 Docket No. 247); *see also* F.R.Civ.P. 15.

*Motion to Dismiss*

Alternatively, were the Court to determine Plaintiffs properly named Mr. Al-Hussayen a defendant, he is entitled to dismissal because Plaintiffs have failed to establish that the Court has personal jurisdiction over Mr. Al-Hussayen.  Furthermore, their attempt to serve him by

publication is constitutionally insufficient.  In addition, Plaintiffs fail to state a claim against Mr. Al-Hussayen upon which relief can be granted.  As to the ATA claim, Plaintiffs fail to set forth factual allegations that Mr. Al-Hussayen: 1) provided "material support or resources" to al Qaeda; 2) proximately caused the injuries suffered by them; or 3) is subject to liability under a concerted action theory.  Moreover, Plaintiffs seek to impose liability for activities protected by the First Amendment and those provided federal immunity under 47 U.S.C. § 230.

Accordingly, the 3AC must be dismissed pursuant to Rules 12(b)(2), 12(b)(6) and 4(f), Federal Rules of Civil Procedure.[1]

1.     *Plaintiffs' Implausible Claim Precludes the Court's Personal Jurisdiction over Mr. Al-Hussayen*

The Court should dismiss Mr. Al-Hussayen from this action because it lacks personal jurisdiction over him.  Plaintiffs presumably seek personal jurisdiction under the ATA's nationwide service of process.[2]  However, such personal jurisdiction first requires Plaintiffs to assert a "colorable claim" against Mr. Al-Hussayen.  *IUE AFL-CIO Pension Fund v. Herrmann,*

---

[1]Of the eleven cases appearing on Plaintiffs' website, it appears that five name Mr. Al-Hussayen: *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.,* 03-cv-09849-RCC (S.D.N.Y.); *Euro Brokers Inc. v. Al Baraka Inv. & Dev. Corp.,* 04-cv-07279-RCC (S.D.N.Y.), *Federal Ins. Co., et al. v. al Qaida, et al.,* 03-cv-06978-RCC (S.D.N.Y.); *New York Marine & Gen. Ins. Co. v. Al Qaida, et al.,* 04-cv-06105-RCC (S.D.N.Y.), and *World Trade Center Props. LLC v. Al Baraka Inv. & Dev. Corp.,* 04-cv-07280-RCC (S.D.N.Y.).  A sixth case, *Ashton, et al. v. Al Qaeda Islamic Army, et al.,* 02-cv-06977-RCC (S.D.N.Y.), mentions Mr. Al-Hussayen but does not identify him as a defendant.  Mr. Al-Hussayen has moved or is moving to dismiss each of the foregoing cases.  It is possible that, in the profusion of defendants' names in the various other lengthy complaints consolidated in this proceeding, references to Mr. Al-Hussayen have been missed.  If so, this Motion seeks dismissal in those cases as well.

[2]  Of course, were the Court to dismiss the ATA claim against Mr. Al-Hussayen, Plaintiffs could no longer rely on this theory of personal jurisdiction.  *See* Section 3., C., *infra.*

2   •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
        SAMI OMAR AL-HUSSAYEN

9 F.3d 1049, 1055-56 (2d Cir. 1993).  They have not done this.  Of course, it is Plaintiffs' burden to establish that the Court has jurisdiction over Mr. Al-Hussayen.  *Distefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir. 2001).

As described below, the basis for his alleged liability is so insubstantial, implausible, and foreclosed by prior decisions of the Court, that it can not exercise personal jurisdiction over him. *See Herrmann,* 9 F.3d at 1055-56.  Furthermore, the allegations fail to allege facts which would establish the Court's personal jurisdiction over Mr. Al-Hussayen under New York's long-arm statute.  *See* N.Y. C.P.L.R. § 302 (McKinney 2004); *see also In re: Terrorist Attacks on Sept. 11, 2001,* 349 F.Supp.2d 765, 804-06 (S.D.N.Y. 2005) ("*In re: Sept. 11*") (establishing requirements of personal jurisdiction).  Accordingly, the Court should dismiss Mr. Al-Hussayen for lack of personal jurisdiction.

2.    *The Court Must Dismiss the 3AC for Insufficient Service of Process*

The 3AC was filed on September 5, 2003.  (Docket No. 111).  At this time, Mr. Al-Hussayen resided in the United States and his name and address were known to Plaintiffs.  Specifically, it was publicly known that Mr. Al-Hussayen was being held in the custody of the federal government in Idaho from February 26, 2003 until July 21, 2004.  Thus, from the time Plaintiffs filed the 3AC until over ten months later, Mr. Al-Hussayen was one of the easiest persons in the country to locate and serve with process (as was done by the *Burnett* plaintiffs who had Mr. Al-Hussayen served at the Idaho jail where he resided).

Further, after Mr. Al-Hussayen was acquitted of all terrorism charges at his criminal trial

3  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
SAMI OMAR AL-HUSSAYEN

on June 10, 2004[3], the government continued to keep him in custody for an additional six weeks while publicly declaring he would be returning to Saudi Arabia in the near future.  Thus, Plaintiffs had advance warning that Mr. Al-Hussayen's stay in the United States was coming to an end, knew his location and failed to serve him.

Plaintiffs, of course, were required to serve process on Mr. Al-Hussayen within 120 days of filing the complaint.  *See S.E.C. v. Tome,* 833 F.2d 1086, 1094 (2d Cir. 1987) ("if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication will not satisfy the requirements of due process"); F.R.Civ.P. 4.  Here, Mr. Al-Hussayen was included in the text of the 3AC on September 5, 2003, and Plaintiffs had 120 days to serve him.  For whatever reason, Plaintiffs chose not to do so – all in contravention of Federal Rule of Civil Procedure 4 and Case Management Order #2 ("CMO2") (03 MDL 1570 Docket No. 247).

Now that Mr. Al-Hussayen no longer resides in the United States, Plaintiffs have included him on a lengthy list of defendants who Plaintiffs claim they were "unable to serve despite [their] best efforts."  (03 MDL 1570 Docket No. 468.)  Such an assertion is false – the falsity of which is amply illustrated by the *Burnett* plaintiffs' ability to effect service on Mr. Al-Hussayen in the United States.

   i.   Plaintiffs' violation of case management order #2 compels dismissal

During the relevant time period, Mr. Al-Hussayen was "not located in a foreign country." (CMO2 at ¶ 11.)  Thus, CMO2 required Plaintiffs to serve Mr. Al-Hussayen within 120 days of

---

[3] See  Memorandum of Law in Support of Motion to Dismiss of Sami Omar Al-Hussayen (03 MDL 1570, Docket No. 329, relates to *Burnett*), Exhibit One, Jury Verdict.

4  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
     SAMI OMAR AL-HUSSAYEN

filing the complaint. *Id., citing* F.R.Civ.P. 4(m).  CMO2 specifically instructed that the Court

"may dismiss the action without prejudice as to any defendant who has not been served." *Id.*

The Plaintiffs' failure to even attempt service when Mr. Al-Hussayen's location was reasonably

ascertainable compels the Court to enforce its Order. *See Mennonite Bd. of Missions v. Adams,*

462 U.S. 791, 800 (1983) (actual notice is constitutionally required when name and address of

defendant is reasonably ascertainable).

      ii.     <u>Plaintiffs' violation of Rule 4 compels dismissal</u>

      Additionally, Federal Rule of Civil Procedure 4 required Plaintiffs to serve Mr. Al-

Hussayen within 120 days of the filing of the 3AC.  If they were unable to do so, Plaintiffs could

have requested an extension if good cause existed for their failure.  F.R.Civ.P. 4(m).  Here, they

did neither.

      Courts in the Second Circuit, and the Southern District of New York in particular, have

not hesitated to dismiss cases for violating the 120-day requirement. *See, e.g., Gordon v. Hunt,*

835 F.2d 452, 453 (2d Cir. 1987) (per curiam) (applying former F.R.C.P. 4(j)); *Hutchinson v.*

*New York State Correctional Officers,* No. 02 Civ. 2407 (CBM), 2003 WL 22056997, at *9-11

(S.D.N.Y. Sept. 4, 2003); *Delicata v. Bowen,* 116 F.R.D. 564, 565-67 (S.D.N.Y. 1987) (applying

former F.R.C.P. 4(j)).  Of course, the courts of the Second Circuit are not alone. *See, e.g., Geiger*

*v. Allen,* 850 F.2d 330, 334 (7th Cir. 1988) (applying former F.R.C.P. 4(j)); *Wei v. Hawaii,* 763

F.2d 370, 371 (9th Cir. 1985) (same); *Zachary v. Thigpen,* 895 F.Supp. 1472, 1478 (M.D. Ala.

1995).

      In fact, the Court recently dismissed a case under F.R.Civ.P. 4(m) where the plaintiffs

5  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
        SAMI OMAR AL-HUSSAYEN

failed to serve a summons and complaint within the 120-day limit.  *Am. Commercial Barge Line Co. LLC v. Tug Joan Salton,* No. 99-cv-0846-RCC, 2001 WL 262724 (S.D.N.Y. Mar. 16, 2001).  There, the plaintiffs had at least *tried* to serve the defendants – unlike the inaction of the Plaintiffs here.  Yet, despite those numerous – yet inefficient – attempts, the Court wasted no time dismissing the case, declaring:

> If the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits.

*Id.* at *5; *see also Zachary,* 895 F.Supp. at 1478 ("The lesson to the  federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb") (quoting *Cox v. Sandia Corp.,* 941 F2d 1124, 1126 (10th Cir. 1991)).

Plaintiffs' actions here are far less compelling than those in *American Commercial.*  Accordingly, the Court must dismiss the 3AC against Mr. Al-Hussayen.

iii.    Plaintiffs never requested permission to serve Mr. Al-Hussayen by publication

Moreover, Mr. Al-Hussayen was not included in the *Ashton* portion of the letter sent to the Court requesting permission to serve certain defendants by publication.  (*See* Ex. B to letter from James P. Kreindler to Hon. Richard C. Casey, dated Sept. 10, 2004.)[4]  His exclusion from Plaintiffs' request precludes them from now attempting service on Mr. Al-Hussayen via publication.

iv.    Plaintiffs' attempt to serve by publication is constitutionally insufficient

Plaintiffs' attempt at service by publication is constitutionally insufficient and the Court

---

[4]Plaintiffs omission of Mr. Al-Hussayen from this letter further suggests that Plaintiffs do not regard him as a named defendant in this action.

should quash service as to Mr. Al-Hussayen.  The two publications in which Plaintiffs have supposedly published their notices are not readily found in Mr. Al-Hussayen's home country: 1) *Al Quds Al Arabia* is banned in Saudi Arabia; and 2) *The International Herald Tribune* has a circulation of less than 200 in the Kingdom.  *See In re: Sept. 11,* 349 F.Supp.2d at 817; *see also* Memorandum of Law in Support of Sheikh Safer Al-Hawali's Motion to Dismiss (03 MDL 1570 Docket No. 81) at pp. 11-14.  Clearly, Mr. Al-Hussayen's residence in Saudi Arabia is outside of either of these publications' "normal circulation."  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950).

In addition to these glaring problems, Plaintiffs failed to comply with the Court's Order permitting service by publication.  The website the Court ordered Plaintiffs to publish the various complaints on (www.sept11terrorlitigation.com) was not functioning until sometime near (if not after) the conclusion of the four week publication period.

Of course, even if such publication was constitutionally sufficient to advise Mr. Al-Hussayen that he may have been named in one or more of the consolidated actions, he should not be required to search each and every page of the many, voluminous complaints to determine whether he may or may not be a defendant.  That is, he should be permitted to review the captions of the complaints – which here indicate he is not a defendant.  To permit otherwise would require every person listed in the publication to access and review every page of these hundred-plus-page complaints to see if they are referenced somewhere therein.  Moreover, even if Mr. Al-Hussayen were to discover his name among the lengthy 3AC in *Ashton*, he would see that he had not been named as a defendant in that action.

These attempts to serve Mr. Al-Hussayen by publication were ineffective and constitute nothing more than a "mere gesture," *see Mullane,* 339 U.S. at 315 ("But when notice is a person's due, process which is a mere gesture is not due process"), and fail to constitute "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite Bd. of Missions v. Adams,* 462 U.S. at 791, 795 (1983), quoting *Mullane,* 339 U.S. at 314.

   v. <u>Conclusion</u>

Plaintiffs: 1) failed to include Mr. Al-Hussayen in the caption of the 3AC; 2) failed to include him in the "defendants" portion of the 3AC; 3) did not refer to him as a defendant in paragraphs 343-353 of the 3AC; 4) did not include him in their request for service by publication; 5) published notice in publications not reasonable calculated to apprise Mr. Al-Hussayen of the pendency of the action; and 6) failed to include the 3AC on the website authorized by the Court until after the publication had been completed.  The first four actions indicate he is not a defendant in this action.  If he is a defendant, the combination of all six acts and omissions compels the Court to quash service as to Mr. Al-Hussayen.

*3. The Court Must Dismiss the 3AC for Failure to State a Claim*

Plaintiffs seek to impose civil liability upon Mr. Al-Hussayen for the events of September 11, 2001 based upon his alleged association with a U.S.-based religious organization, the Islamic Assembly of North America (IANA), and his alleged association with websites upon which religious articles were published.  Not only is there no connection between these alleged activities and the events on September 11th or al Qaeda, Plaintiffs have failed to allege a

connection – let alone a cause of action – in their 3AC.

Plaintiffs' 3AC is void of any allegation upon which the Court could find Mr. Al-Hussayen provided material support and resources to al Qaeda.  Furthermore, the allegations against him consist of activities protected by the First Amendment and provided federal immunity under 47 U.S.C. § 230.  The Court is compelled to dismiss Mr. Al-Hussayen because the allegations – even if proven – would not entitle Plaintiffs to relief.  *See In re: Sept. 11,* 349 F.Supp.2d at 825, *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

    *A.    Standard for Dismissal*

The standard for dismissal under Rule 12(b)(6) is well established.  The factual allegations of the plaintiffs must be accepted as true and all reasonable inferences must be drawn in their favor.  *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir. 1999).  However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness.*"  Mason v. Am. Tobacco Co.,* 346 F.3d 36, 39 (2d Cir. 2003) (quoting *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27 (2d Cir. 1989)).

    *B.    Allegations Against Mr. Al-Hussayen*

Plaintiffs' allegations against Mr. Al-Hussayen can be summarized as follows:

1)    he was charged with seven counts of visa fraud;
2)    he was associated with a Michigan-based religious organization, the Islamic Assembly of North America (IANA);
3)    he was the registrant or administrator for Internet websites belonging or linked to IANA, upon which IANA allowed the publication of articles which Plaintiffs contend advocated "death and violence of non-believers;"
4)    he donated money to IANA and its officers, including forwarding donations from his uncle to IANA;

5)     there were "before and after" photos of the September 11th attacks on the World Trade Center on his University of Idaho computer;

6)     he "provided internet web site posting for two radical Islamic clerics" whom Plaintiffs allege have direct contact with Osama bin Laden;

7)     a website registered to him posted a religious proclamation called "Provision of Suicide Operations" which included a reference to "bombing or bringing down an airplane on an important location that will cause the enemy great losses;"

8)     IANA had contact with the Benevolence International Foundation (BIF) and its executive director, who Plaintiffs allege pleaded guilty to diverting charitable donations to Muslims in Chechnya; and

9)     he and IANA had contact with the organization "Help the Needy," whose founder and three others were charged with violating the U.S. embargo of Iraq.

3AC at ¶¶ 343-355.  Even assuming these allegations to be true, they do not state a claim against

Mr. Al-Hussayen upon which relief can be granted.[5]

      C.      *The 3AC Does Not State a Claim Under the ATA*[6]

Plaintiffs do not allege Mr. Al-Hussayen was involved in, conspired with, or aided and

abetted the perpetrators of the 9/11 attacks.  Rather, they allege he is liable to them for providing

material support and resources to Osama bin Laden and al Qaeda.  3AC at ¶ 610.  However, even

---

[5]  It must be noted that Plaintiffs' allegations are deceptively drafted.  For example, the allegations in paragraphs 348-349 imply that they were included in a criminal indictment – no doubt an attempt to bolster their allegations with the Court.  However, none of these allegations are contained therein.  Further, it must be noted that Mr. Al-Hussayen was never convicted of a single criminal charge and in fact, he was acquitted by a jury of all terrorism charges following an eight week trial in federal court in Idaho..

[6]  Mr. Al-Hussayen recognizes the Court has assumed "for now" that the attacks of September 11th were an act of "international terrorism."  *In re: Sept. 11,* 349 F.Supp.2d at 828, n. 39.  Nonetheless, Mr. Al-Hussayen contends the events of September 11, 2001 "occurr[ed] primarily within the territorial jurisdiction of the United States" and therefore constitute "domestic terrorism."  *See* 18 U.S.C. § 2331(5).  Accordingly, the ATA does not – and never was intended to – apply to Plaintiffs' claim.  *See Boim v. Quranic Literacy Institute & Holy Land Foundation for Relief and* Development, 291 F.3d 1000, 1010-11 (7th Cir. 2002) ("*Boim II*") (legislative history indicates ATA was implemented to extend civil liability "to land-based terrorism that occurred in a foreign country").

10  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
           SAMI OMAR AL-HUSSAYEN

a generous reading of the allegations against Mr. Al-Hussayen fails to state such a claim against him.

      i.    <u>Plaintiffs fail to allege material support or resources</u>

Plaintiffs' allegations are insufficient because they simply fail to allege that any material support or resources were provided by Mr. Al-Hussayen to al Qaeda.  Therefore, Plaintiffs' claim must fall.  *See In re: Sept. 11,* 349 F.Supp.2d at 825.

      ii.    <u>Plaintiffs fail to properly allege causation</u>

Furthermore, Plaintiffs fail to allege a causal connection between any activities on behalf of Mr. Al-Hussayen and the events of September 11, 2001.  As the Court has already determined with regards to other MDL defendants, Plaintiffs' conclusory allegations are insufficient to allege a causal link.  *See id.* at 800-01.

> [T]here must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists].  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. Here, there are no such factual bases presented, there are only conclusions.

*Id.* at 801.

Here, the only "funding" allegation against Mr. Al-Hussayen is that he donated money to IANA.  However, Plaintiffs fail to even allege that IANA was "a solicitor, collector, supporter, front or launderer" for al Qaeda.  Such an omission compels dismissal against Mr. Al-Hussayen. In fact, Mr. Al-Hussayen must be dismissed from this case for the very reason set forth by the Court regarding a similar defendant's alleged donations to other organizations – there is absolutely no indication that IANA "was funneling donations to al Qaeda."  *Id.* at 799.  Indeed,

11  •  MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
        SAMI OMAR AL-HUSSAYEN

Plaintiffs only allege that IANA *received* donations from others.  *See* 3AC at ¶ 347.

Plaintiffs' failure to make any allegations – conclusory or otherwise – that IANA provided material support or resources al Qaeda dooms their claims against Mr. Al-Hussayen. Without such factual allegations against IANA, there is no basis to argue that Mr. Al-Hussayen *knowingly and intentionally* provided material support to al Qaeda (or anyone else) through his alleged donations to IANA.[7]  *See Boim II,* 291 F.3d at 1012 ("in the very least, the plaintiffs must be able to show that murder was a reasonably foreseeable result of making a donation").  Of course, even if such factual allegations against IANA had been pleaded, they would not cure the deficiencies against Mr. Al-Hussayen.  *See In re: Sept. 11,* 349 F.Supp.2d at 799-801 (citing plaintiffs' insufficient allegations that similar defendants knew the organizations they supported were fronts for al Qaeda).

Plaintiffs allegations regarding the websites fare no better.  None of the websites allegedly associated with Mr. Al-Hussayen are alleged to have been owned, controlled, or in any way associated with al Qaeda.  Furthermore, there are no factual allegations connecting them to Plaintiffs' injuries.

In sum, Plaintiffs seek liability for alleged activities which are more attenuated to Plaintiffs' injuries than those the Court stated would "stretch causation to 'terra incognita.'"  *In re: Sept. 11,* 349 F.Supp.2d at 798 (quoting *Burnett, et al. v. Al Baraka, et al.,* 292 F. Supp. 2d 9,

---

[7]  Even to this day IANA operates openly in the United States.  The organization has never been included in the U.S. Treasury's SDN & Blocked Persons List.  *Available at* www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf.  To use the prior words of this Court, "none of the organizations [Mr. Al-Hussayen is] alleged to have supported ... were designated a sponsor of terrorism at the time of the alleged contributions."  *In re: Sept. 11,* 349 F.Supp.2d at 800.

12  •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
       SAMI OMAR AL-HUSSAYEN

20 (D.D.C. 2003) ("*Burnett II*")).

   iii. <u>Plaintiffs fail to properly allege accomplice liability</u>

  Having failed to allege that Mr. Al-Hussayen knowingly and intentionally provided

material support or resources to al Qaeda (or any else), Plaintiffs presumably rely on theories of

accomplice liability to support a causal link.  However, their allegations fail to allege any set of

facts which, if proven, would entitle them to relief.  *See In re: Sept. 11,* 349 F.Supp.2d at 825,

*citing Desiderio,* 191 F.3d at 202.

  "To adequately plead the provision of material support under [the ATA], a plaintiff would

have to allege that the defendant knew about the terrorists' illegal activities, the defendant

desired to help those activities succeed, and the defendant engaged in some act of helping those

activities."  *Id.* at 828, *citing Boim v. Quranic Literacy Inst. & Holy Land Found.,* 292 F.3d 1000,

1023 (7th Cir. 2002) ("*Boim II*").  "Under a conspiracy theory, the Plaintiffs have to allege that

the Defendants were involved in an agreement to accomplish an unlawful act and that the attacks

of September 11 were a reasonably foreseeable consequence of that conspiracy."*Id.* at 829, *citing

Boim v. Quranic Literacy Inst.,* 340 F. Supp. 2d 885, 907 (N.D. Ill. 2004) ("*Boim III*").  Of

course, "concerted action liability requires general knowledge of the primary actor's conduct."

*Id.* at 832, *citing Pittman v. Grayson,* 149 F.3d 111, 123 (2d Cir. 1998).

  However, the 3AC is void of any factual allegation that Mr. Al-Hussayen pursued a

common plan or design to commit a tortious act, actively took part in it, or furthered it by

cooperation or request; nor is there any factual allegation he lent aid or encouragement to the

wrongdoer.  *Id.* at 826, *citing Pittman,* 149 F.3d at 122; *see also id.* at 798, n. 28, 804-05

(describing requirements of pleading a cause of action for conspiracy or aiding and abetting).

Accordingly, "Plaintiffs have not ... pleaded facts to support an inference that [Mr. Al-Hussayen was] sufficiently close to the terrorists' illegal activities to satisfy [the requirements] of [aiding and abetting or conspiracy under] *Halberstam* or New York law." *Id.* at 800-01.

>    iv.    Conclusion

Plaintiffs fail to set forth factual allegations that Mr. Al-Hussayen: 1) provided anything to anyone (including al Qaeda) which would qualify as "material support or resources;" 2) proximately caused their injuries; or 3) is liable under a concerted action theory of liability. Plaintiffs have failed to state a claim under the ATA.

>    D.    *Plaintiffs' Allegations Are Barred by the First Amendment*

Additionally, the activities alleged could never subject Mr. Al-Hussayen (or anyone else) to liability because "[e]ach of these [activities] is a form of speech or conduct that is ordinarily entitled to protection under the First [] Amendment[]." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 866, 907 (1982).

>    i.    Freedom of speech

Plaintiffs' allegations regarding articles published on websites can not form the basis for liability against Mr. Al-Hussayen. These articles, Plaintiffs contend, "advocated death and violence to non-believers." 3AC at para. 346. However, speech – especially speech protected by the First Amendment – cannot constitute "material support."

Speech that advocates the use of force or the violation of law is protected and can only lose its constitutional protections "where such advocacy is directed to inciting or producing

*imminent lawless action* and is likely to incite or produce such action." *Brandenburg v. Ohio*,

395 U.S. 444, 447 (1969) (per curiam) (emphasis added). Thus, advocacy for illegal action –

including violence – at some *indefinite time in the future* is protected. *Hess v. Indiana*, 414 U.S.

105, 108-09 (1973) (per curiam).

Even when actual but non-imminent violence occurs in direct response to such advocacy,

neither the speaker nor those who supported the advocacy can be held civilly liable for the

criminal acts of others. *Claiborne Hardware,* 458 U.S. at 927-29 (barring liability based upon

speech where subsequent violent acts occurred "weeks or months" afterward). Therefore, as long

as the speech is protected, no liability can be imposed upon those who participated in its

dissemination. *Id.* at 927-32.

Congress, in enacting the material support statutes, recognized that the First Amendment

would continue to protect those who chose to "advocate, think, and profess the attitudes and

philosophies of [terrorists]." H.R. Rep. 104-383 at 45. Thus, protected speech (or for that

matter, any activity protected by the First Amendment) cannot constitute "material support."

The Seventh and Ninth Circuits have each recognized the distinction between material

support and speech. *Boim II,* 291 F.3d at 1023, 1026-27; *Humanitarian Law Project v. Reno*,

205 F.3d 1130, 1133-34 (9th Cir. 2000). In fact, in *Humanitarian Law Project*, Judge Kozinski

declared far greater protections for speech than what is even alleged here by Plaintiffs:

> The [material support] statute does not prohibit ... vigorously promoting and
> supporting the political goals of [a terrorist] group. [Individuals] are even free to
> praise the groups for using terrorism as a means of achieving their ends. ... They
> can do so without fear of penalty right up to the line established in *Brandenburg v.*
> *Ohio*.

15   •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
         SAMI OMAR AL-HUSSAYEN

205 F.3d at 1133-34 (citation omitted); *see also Claiborne Hardware,* 458 U.S. at 928 ("When

such appeals do not incite lawless action, they must be regarded as protected speech").

 The articles as alleged in the 3AC fall squarely within the protections of *Brandenburg*

and its progeny – including the reference to "bombing or bringing down an airplane."

  ii. Freedom of religion

 "[T]he free exercise of religion means, first and foremost, the right to believe and profess

whatever religious doctrine one desires." *Employment Div., Dept. of Human Res. of Oregon v.

Smith*, 494 U.S. 872, 877 (1990).  Of course, the "exercise of religion" involves not only belief

and profession, but also the performance of physical acts such as assembly and proselytizing.  *Id.*

 Here, Plaintiffs seek liability against Mr. Al-Hussayen for allegedly assisting others in the

proselytization of Islam.  *See* 3AC at ¶ 346 ("AL-HUSSAYEN provided web-site registration,

management, administration and maintenance to individuals and organizations, including the

Islamic Assembly of North America (IANA) a non-profit organization for the promotion of Islam

which has offices in Ann Arbor, Mich.")  There can be no doubt that such activities are protected

by the First Amendment.

  iii. Freedom of association

 Similarly, Plaintiffs' allegations attempting to connect Mr. Al-Hussayen to other

individuals does nothing to support their claim, and in any event, violates Mr. Al-Hussayen's

First Amendment right to freedom of association.  Based upon the right to freely associate, the

Supreme Court has long held that imposing "guilt by association" violates the First Amendment.

*See, e.g., Claiborne Hardware,* 458 U.S. at 919-20; *Healy,* 408 U.S. at 186 ("Guilt by association

alone ... is an impermissible basis upon which to deny First Amendment rights"). But here, Plaintiffs are attempting to do just that.

In order to state a claim under the ATA, Plaintiffs were required to assert factual allegations that Mr. Al-Hussayen knowingly and intentionally provided material support or resources to al Qaeda. Instead, they merely alleged an attenuated connection between Mr. Al-Hussayen or IANA and other individuals or groups. *See* 3AC at ¶¶ 348, 353-55.

These allegations are not only insufficient to impose liability upon Mr. Al-Hussayen, they consist of nothing more than an attempt to impose "guilt by association." As such, Plaintiffs' claims are barred by the First Amendment.

> iv.   Conclusion

"When activity protected by the First Amendment is present, damages are restricted to the direct consequences of the illegal violent conduct and *may not include the consequences resulting from ... protected First Amendment activity." Boim II,* 291 F.3d at 1023, *citing Claiborne Hardware,* 458 U.S. at 918 (emphasis added). The allegations against Mr. Al-Hussayen consist of speech or conduct which is entitled to First Amendment protections.

Thus, even if Plaintiffs had pleaded a sufficient causal connection between the allegations against Mr. Al-Hussayen and the events of September 11, 2001, their claims would nonetheless be barred.

> E.   *Plaintiffs' Allegations Are Barred by Federal Law*

In addition to the protections of the First Amendment, Plaintiffs' allegations regarding the websites are expressly barred by 47 U.S.C. § 230.

17   •   MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
         SAMI OMAR AL-HUSSAYEN

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone or alter content--are barred.

*Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997).

Here, Plaintiffs seek to impose civil liability upon Mr. Al-Hussayen for his alleged association with websites upon which articles written by third-parties appeared. *See* 3AC at ¶¶ 345-347. Yet, those same allegations qualify Mr. Al-Hussayen as a provider or user of an interactive computer service. *See Batzel v. Smith,* 333 F.3d 1018, 1030-31 (9th Cir. 2003) (operator of website and listserv qualified as a provider or user), *cert. denied,* 124 S.Ct. 2812 (2004). He is therefore entitled to civil immunity under § 230 for all such acts. *See, e.g., Blumenthal v. Drudge,* 992 F.Supp. 44, 52 (D.D.C. 1998) (providing immunity where defendant had an "active, even aggressive role in making available content prepared by others").

Accordingly, Plaintiffs fail to state a claim upon which relief can be granted.

### F.    The 3AC Does Not State a Claim Under the TVPA

To adequately plead a violation of the Torture Victim Protection Act (TVPA), Plaintiffs must allege that the defendant acted under actual or apparent authority, or color of law, of a foreign nation. *In re: Sept. 11,* 349 F.Supp.2d at 828, *citing Arndt v. UBS AG,* 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004). There is no allegation that Mr. Al-Hussayen acted in such a manner. The TVPA claim must be dismissed.

G.  *Assault and Battery and Intentional Infliction of Emotional Distress Claims are Barred by the Statute of Limitations*

"The statute of limitations for assault and battery and intentional infliction of emotional distress is one year." *Id.* at 829, *citing Holmes v. Lorch,* 329 F. Supp. 2d 516, 523 (S.D.N.Y. 2004); N.Y. C.P.L.R. 215(3) (McKinney 2002).  If Plaintiffs did in fact name Mr. Al-Hussayen as a defendant in the 3AC, it was not filed until September 5, 2003 – almost two years after September 11, 2001.  Accordingly, these claims must be dismissed against Mr. Al-Hussayen.

H.  *Claims Based Upon Intentional Murder are Barred by the Statute of Limitations*

The statute of limitations for all intentional torts, including intentional murder, is one year. *See McDonald v. McDonald,* 193 A.D.2d 590, 591 (N.Y. App. Div. 1993) (affirming dismissal of claims based upon intentional murder not brought within one year).  If Plaintiffs did in fact name Mr. Al-Hussayen as a defendant in the 3AC, it was not filed until September 5, 2003 – almost two years after September 11, 2001.  Accordingly, all claims based upon intentional murder (Counts 1 and 2) must be dismissed against Mr. Al-Hussayen.  *Id.*

I.  *There Is No Independent Cause of Action for Punitive Damages*

There is no independent cause of action for punitive damages under New York law.  *See Bologna v. Allstate Ins. Co.,* 138 F. Supp. 2d 310, 327 (E.D.N.Y. 2001), *citing Rocanova v. Equitable Life Assurance Soc'y of the United States,* 634 N.E.2d 940 (1994), 83 N.Y.2d 603, 616-17, 344-45.  Accordingly, Count 7 must be dismissed.

6.  *Conclusion*

Based upon the foregoing, the action against Mr. Al-Hussayen must be dismissed.

19  •  MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
SAMI OMAR AL-HUSSAYEN

DATED this 14th day of March, 2005.

NEVIN, BENJAMIN & McKAY, LLP

By:   ___/s/_____
David Nevin (DN2615)
Scott McKay (SM3330)

*Attorneys for Sami Omar Al-Hussayen*