UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**applicable to Faisal Islamic Bank** |

*This document relates to:*          Federal Insurance Co. v. al Qaida
                                     03 CV 06978 (RCC)

## RICO STATEMENT APPLICABLE TO
## FAISAL ISLAMIC BANK-SUDAN

   Based on information currently available, and pursuant to the Case Management Order dated June 15, 2004, plaintiffs submit this RICO statement for defendant Faisal Islamic Bank-Sudan ("Faisal Islamic Bank")

   Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

1.   The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and/or (d).

2.   The names of the defendant to whom this RICO statement pertains is Faisal Islamic Bank. The alleged misconduct and basis for liability is set forth in Exhibit "A".

3.   Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

4.   The name of each victim and the manner in which each was injured is indicated on the chart attached hereto as Exhibit "B".

5.   (a) list of predicate acts and specific statutes violated:

| | |
|---|---|
| conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal § 125.25(xi) |
| conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| fraud with identification documents | 18 U.S.C. § 1028 |
| financial institution fraud | 18 U.S.C. § 1344 |
| obstruction of justice | 18 U.S.C. § 1503 |
| obstruction of a criminal investigation | 18 U.S.C. § 1510 |
| Travel Act | 18 U.S.C. § 1952 |
| money laundering | 18 U.S.C. § 1957 |
| filing false or materially false tax returns | 26 U.S.C. § 7206(1), (2) |
| engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |

(b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| early 1990s to 9/11/2001 | Faisal Islamic Bank | Faisal Islamic Bank conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaida Movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack. |
| early 1990s to 9/11/2001 | Faisal Islamic Bank | Faisal Islamic Bank used its banking and financial operations to knowingly and intentionally provide financial services to al |

2

|  |  | Qaida and its members, as well as organizations which it knew were providing support to the Enterprise. |
|---|---|---|
| early 1990s to 9/11/2001 | Faisal Islamic Bank | Faisal Islamic Bank undertook the above-named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, the al Qaida Movement to perpetrate radical Muslim terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied. |
| early 1990s to 9/11/2001 | Faisal Islamic Bank | Faisal Islamic Bank agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts, *i.e.*, multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

    (c) not applicable

    (d) No.

    (e) No.

    (f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscated their support of the al Qaida Movement to perpetrate radical Muslim terrorism.

    (g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of money laundering and tax evasion allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaida, which conspiracy culminated in the Attack.

6.

    (a) The enterprise (the "Enterprise" or "the al Qaida Movement to perpetrate radical Muslim terrorism") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

 (b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. The al Qaida Movement to perpetrate radical Muslim terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Faisal Islamic Bank fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

 (c) no.

 (d) Faisal Islamic Bank is associated with the Enterprise.

 (e) Faisal Islamic Bank is a member of the Enterprise, and is separate and distinct from the Enterprise.

 (f) Faisal Islamic Bank intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by Faisal Islamic Bank is separate from the existence of the al Qaida Movement to perpetrate radical Muslim terrorism, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Faisal Islamic Bank furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9. The Enterprise benefits by having funds available to meet its goals of spreading its ideology, suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Faisal Islamic Bank, relies heavily on the American interstate system of commerce for banking, supplies,

4

communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13. The al Qaida Movement to perpetrate radical Muslim terrorism "employs" certain individuals, only a few of whose identities are known, including defendant Osama bin Ladin.

14. The history of the conspiracy behind the al Qaida Movement to perpetrate radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including Faisal Islamic Bank, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *zakat*, the mandatory charitable contributions required of all Muslims. Al Qaida also collected money from employees of corrupted charities.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like Faisal Islamic Bank. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including Faisal Islamic Bank. In order to identify nineteen individuals willing, able and competent to carry out the Attack, al Qaida needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Faisal Islamic Bank. Faisal Islamic Bank, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Faisal Islamic Bank also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out or for which they have reserved.

5

16. Plaintiffs' damages -- injuries, the loss of life and property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. Rather the plaintiffs' insureds' assignees were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," *i.e.*, terrorism, the culmination of which was the Attack.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff, as set forth in Exhibit "C".

18.

| VI | Torture Victim Protection Act, 28 U.S.C. § 1350 |
|---|---|
| VIII | RICO, 18 U.S.C. § 1962(c), 1962(d) |
| X | Anti-Terrorism Act, 18 U.S.C. § 2333 |

19. pendent state claims:

| I | Trespass |
|---|---|
| II | Wrongful Death |
| III | Survival |
| IV | Assault & Battery |
| V | Intentional and Negligent Infliction of Emotional Distress |
| VII | Conspiracy |
| IX | Aiding and Abetting |
| XI | Negligence |
| XII | Punitive Damages |

20. not applicable

# EXHIBIT "A"

# RICO STATEMENT

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Faisal Islamic Bank | Faisal Islamic Bank has long provided financial services and other forms of material support to terrorist organizations, including al Qaida.<br><br>Faisal Islamic Bank is a subsidiary of Islamic Investment Company of the Gulf (Bahrain) EC, whose holding company is Defendant Dar-al-Maal al Islami (DMI), based in Switzerland. All three entities are chaired by Defendant Mohammed al Faisal al Saud, and controlled by Saudi investors.<br><br>Faisal Islamic Bank was founded in 1970 by defendant Yousef M. Nada ("Nada"). Nada is a member of the Egyptian Muslim Brotherhood and the Jamaa al-Islamiya, which is directly allied with al Qaida. When he came to Saudi Arabia, he became friendly with the Royal Family, though his membership in the Muslim Brotherhood, opened a construction company, and thereafter, founded the Faisal Islamic Bank. Nada has been implicated as a supporter of the Enterprise, and has been connected to the Al Taqwa Bank, as their president, in supporting the al Qaida Movement to perpetrate radical Muslim terrorism.<br><br>The Faisal Islamic Bank enjoyed privileges denied other commercial banks (full tax exemption on assets, profits, wages, and pensions), as well as guarantees against confiscation or nationalization. Moreover, these privileges came under official | 1962(c)<br>1962(d) |

government protection from 1983 onward as the ruling regime became committed to applying Islamic doctrine to all aspects of Sudanese life.

There are a number of Faisal Islamic Banks across the Islamic world from Egypt to Pakistan to the Emirates and Malaysia. During Prince Mohammad's tenure at this position, Faisal Islamic Bank was involved in running accounts for Bin Laden and his associates. Faisal Islamic Bank was one of the main founders of the al Shamal Islamic Bank, the bank which Osama Bin Laden helped to establish in 1991 by providing capital in the amount of $50 million. At this time, it is believed that Faisal Islamic Bank remains a major shareholder of al Shamal Bank.

At the time Faisal Islamic Bank provided financial services to Osama bin Laden, it was well known in the Muslim World that he was building a terrorist organization to wage jihad against the Untied States and the perceived enemies of Islam. Indeed, at the conclusion of the Afghan war against the Soviets in 1989, Osama bin Ladin had returned to Saudi Arabia as "a hero" of the *jihad* against the Soviets. When the United States intervened against Iraq on behalf of Kuwait in 1990, bin Laden rallied radical Islamic elements to reject any U.S. support or intervention in the region. As a result of his efforts to incite radical Islamic elements, bin Laden was publicly expelled from Saudi Arabia and moved immediately to the Sudan, where the ruling National Islamic Front, itself a radical Islamic group, openly welcomed him and his top lieutenants.

Once situated in Sudan, bin Laden began bringing veterans of the Afghan jihad to the country, where they received terrorist training and became the first members of what is known today as al Qaida. These early al Qaida members also fought alongside NIF troops in the ongoing conflict against Christians in the South, in return for which al Qaida received

land for training camps, weapons and other forms of support from the Sudanese government. Bin Laden also established numerous front companies to support the new organization in Sudan. All of these activities were well publicized at the time and, as a result, bin Laden's terrorist intentions were well known to people and organizations within Sudan, including Faisal Islamic Bank.

Al Shamal Bank regularly provided financial and account services to al Qaeda operatives – six of whom held bank accounts at Al Shamal. Osama Bin Laden paid al Qaeda members from Al Shamal accounts. Moreover, money from these Al Shamal accounts was deposited, housed and transferred to other al Qaeda members to buy military equipment, including an airplane which was delivered to Osama Bin Laden to be used to transport missiles.

Faisal Islamic Bank was also implicated during the 2001 United States trial relating to the 1998 embassy bombings in Africa. A former finance manager for al Qaeda in Khartoum, Jamal al-Fadl, testified that Faisal Islamic Bank held bank accounts for al Qaeda operatives by stating:

> Q: "Where were the accounts [of the al Qaeda] held? In what countries?
>
> A: ...we got account in Bank Faisal Islami.
>
> Q: Is that also in Khartoum?
>
> A: Yes."

Faisal Islamic Bank continued to maintain accounts for these entities long after al Qaida's murderous intent was made clear through the terrorist activities detailed in the First Amendment Complaint. In doing so, Faisal

| | | |
|---|---|---|
| | Islamic Bank knowingly provided financial services and other forms of material support to al Qaida, while disregarding warnings and refusing to adhere to even minimal banking industry standards designed to thwart the support of terrorist networks like the Enterprise through anti-terrorist and money laundering safeguards and "know your customer" regulations.<br><br>Faisal Islamic Bank's misconduct includes laundering money for Al Qaeda (including maintaining and servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda), and/or facilitating money transfers and weapons and military equipment purchases for Al Qaeda. Faisal knowingly facilitated Al Qaeda's fundraising efforts by advertising the existence and numerical designations of the accounts it maintained for Al Qaeda's cooperating charities throughout the Muslim world. Faisal Islamic Bank knowingly provided banking services for September 11th hijacker Abdulaziz al-Omari. Faisal Islamic Bank has channeled millions of dollars to Al Qaeda through its banking and financial operations, and knowingly and intentionally provided repeated material support and substantial assistance to Al Qaeda through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailing in violation of numerous federal statutes.<br><br>Faisal Islamic Bank thereby has, for a period of many years, knowingly provided critical financial and logistical support to al Qaida to support that terrorist organization's global jihad. The September 11th Attack was a direct, intended and foreseeable product of Faisal Islamic Bank's participation in the al Qaida Movement to perpetrate radical Muslim terrorism | |