UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**Applicable to Sulaiman Abdulaziz al-Rajhi** |

*This document relates to :*     Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
                                  04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO
## SULAIMAN ABDULAZIZ AL-RAJHI

Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendant Sulaiman Abdulaziz al-Rajhi ("Sulaiman al-Rajhi"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.     This RICO Statement pertains to defendant Sulaiman al-Rajhi. During the relevant period, Sulaiman al-Rajhi served as the chief executive officer and managing director of defendant Al Rajhi Banking and Investment Corporation. Al Rajhi Banking and Investment Corporation knowingly and intentionally lent material support to Al Qaeda. Sulaiman al-Rajhi conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, facilitated, materially supported and substantially assisted Al Qaeda's purposes through Al Rajhi Banking and Investment Corporation's banking and financial operations. In addition to his activities related to Al Rajhi Banking and Investment Corporation, Sulaiman al-Rajhi appears on the Golden Chain Al Qaeda donor list and he established the SAAR Foundation (the acronym for his name) in Herndon, Virginia, which was raided by U.S. federal agents because of suspected terrorist links.

Prior to September 11, 2001, Sulaiman al-Rajhi was on notice that Al Qaeda: (A) was soliciting and raising funds in and from Saudi Arabia through purportedly legitimate businesses and financial entities; and (B) intended to use the material support and substantial assistance it acquired to kill Americans and attack American interests around the world. Despite the known and foreseeable risks posed to the United States citizens and property by Al Qaeda, Sulaiman al-Rajhi acted with the knowledge and intent that the flow of funds to Al Qaeda would continue unabated.

DSMDB.1906813.1

Sulaiman al-Rajhi conducted or participated in, directly or indirectly, the affairs of Al Rajhi Banking and Investment Corporation through a pattern of racketeering activity by, inter alia, authorizing, ratifying, supervising, controlling, overseeing and/or directing Al Rajhi Banking and Investment Corporation in its knowing and intentional provision of financial services to Al Qaeda, and in servicing Al Qaeda bank accounts, including bank account for September 11th hijacker Abdulaziz al-Omari, and other accounts used to fund and support Al Qaeda.

Sulaiman al-Rajhi's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs. The basis of Sulaimain's al Rajhi's liability is 18 U.S.C. § 1962(c).

3.     All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.     The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

5.    (a)    <u>List Of Predicate Acts And Specific Statutes Violated</u>

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B) <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|
| Money laundering | 18 U.S.C. §1956 |
| Mail Fraud | 18 U.S.C. §1341 |
| Wire Fraud | 18 U.S.C. §1343 |

    (b)    <u>Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts</u>

       Sulaiman al-Rajhi facilitated, materially supported and substantially assisted Al Qaeda's purposes through Al Rajhi Banking and Investment Corporation's banking and financial operations. Al Rajhi Banking and Investment Corporation was established in 1987. As CEO and managing director of Al Rajhi Banking and Investment Corporation during the relevant period, Sulaiman al-Rajhi conducted or participated in, directly or indirectly, the operation and management of Al Rajhi Banking and Investment Corporation and engaged in a pattern of racketeering activity by *inter alia*, authorizing, ratifying, supervising, controlling, overseeing and/or directing in knowingly and intentionally providing financial services to Al Qaeda, and in servicing Al Qaeda bank accounts, including an account for September 11th hijacker Abdulaziz al-Omari, and other accounts used to fund and support Al Qaeda.

    (c)    Plaintiffs' RICO claims are based in part on the predicate offenses of wire fraud and mail fraud. Upon information and belief, from the mid-1990's through September 11, 2001, Sulaiman al-Rajhi (as described above) utilized wire transfers and transmissions to facilitate and provide financial and material support and substantial assistance to Al Qaeda. The financial and banking support and assistance provided to Al Qaeda by Al Rajhi Banking and Investment Corporation under the supervision of Sulaiman al-Rajhi assisted the business and financial transactions in which Al Qaeda engaged to further its operations and purposes. Al Qaeda relied upon Al Rajhi Banking and Investment Corporation and a global network of banks and financial institutions to generate material support to continue its terrorist operations. These activities assisted Al Qaeda's ability to plan over a number of years, orchestrate, and ultimately carry out the September 11th attack that injured plaintiffs.

    (d)    No.

    (e)    No.

    (f)    The predicate acts conducted by Sulaiman al-Rajhi form a pattern of racketeering in that they are repeated and continuous. During the relevant period, , Sulaiman al-Rajhi, repeatedly authorized, ratified, supervised, controlled, oversaw and/or directed Al Rajhi Banking and Investment Corporation in knowingly and intentionally providing financial services and material support to Al Qaeda.

(g) The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because each act of money laundering, wire and mail fraud and providing material support of terrorism allowed Sulaiman al-Rajhi to provide financial and other assistance to Al Qaeda, which assistance culminated in the September 11 attack.

6. (a) The enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members.

(b) The Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide. Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

Al Qaeda's stated purpose is the overthrow of secular non-Muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by *Shari'a* (Islamic law). As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah*, Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-democratic purpose, the September 11th attack being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.

At the time of the September 11th attack, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, including Al Rajhi Banking and Investment Corporation and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

  (c) Sulaiman al-Rajhi does not appear to be an employee, officer or director of the Enterprise.

  (d) Sulaiman al-Rajhi associated himself with the Enterprise.

  (e) Sulaiman al-Rajhi is an entity that is separate and distinct from the Enterprise, Al Qaeda.  Sulaiman al-Rajhi associated himself with the Enterprise.

  (f) Not applicable.

7. As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations.  Sulaiman al-Rajhi, during the relevant period, served as the CEO and managing director of Al Rajhi Banking and Investment Corporation.  The pattern of racketeering activity conducted by Sulaiman al-Rajhi is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attack.

8. Al Qaeda conducts terrorism around the world.  Through Sulaiman al-Rajhi's operation and management, Al Rajhi Banking and Investment Corporation provided material support and assistance to Al Qaeda.  Sulaiman al-Rajhi conducted the racketeering activity through the banking and financial operations of Al Rajhi Banking and Investment Corporation including provision of financial services to Al Qaeda members, maintenance and service of Al Qaeda bank accounts and accounts used to fund and support Al Qaeda.  The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens, all of which are funded and/or materially supported by the racketeering activities described herein.

9. Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10. Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it."  The Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attack, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11. Not applicable.

12. Not applicable.

13. (a) Defendants Osama bin Laden, Ayman al-Zawahiri, among others whose identities are unknown are employed or associated with Al Qaeda.

  (b) The same entity is not both the liable "person" and the "enterprise" under 1962(c).  Al Qaeda is the RICO enterprise. Sulaiman al Rajhi is a separate person within the meaning of RICO.

14. Not applicable.

15.  The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16.  Sulaiman al-Rajhi's uninterrupted direct and indirect provision of financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, as described herein and in the Amended Complaint, enabled the Enterprise to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of Sulaiman al-Rajhi proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of Sulaiman al-Rajhi.

17.  Sulaiman al-Rajhi is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18.  <u>Federal Causes of Action</u>

| Count Two | Anti-Terrorism Act,<br>18 U.S.C. §2331 , 2333<br>18 U.S.C §2333<br>18 U.S.C. §2339A<br>18 U.S.C. §2339B<br>18 U.S.C. §2339C |
|---|---|
| Count Four | Civil Rico,<br>18 U.S.C. §1962 |

| **Count Nine** | Violations of International Law, *see* 28 U.S.C.§1331 |

19.    Pendant State Claims

| **Count One** | Trespass |
| **Count Ten** | Conspiracy |
| **Count Eleven** | Aiding and Abetting |
| **Count Twelve** | Punitive Damages |
| **Count Thirteen** | Contribution and Indemnity |

**20.** Not applicable

Dated: March 31, 2005

Respectfully submitted,

By: _____/S/_____
Jonathan M. Goodman (JG 3031)

Kenneth L. Adams
Christopher T. Leonardo
Stacey A. Saiontz
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

Attorneys for Plaintiffs

DSMDB.1906813.1