UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**applicable to Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi** |

*This document relates to:*     Federal Insurance Co. v. al Qaida
                                03 CV 06978 (RCC)


**AMENDED RICO STATEMENT APPLICABLE TO
SULEIMAN ABDEL AZIZ AL RAJHI,
SALEH ABDULAZIZ AL-RAJHI, AND ABDULLAH SULEIMAN AL-RAJHI**

Based on information currently available, and pursuant to the Case Management Order dated June 15, 2004, plaintiffs submit this RICO statement for defendants Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi.[1]

Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and/or (d).

2.     The names of the defendant to whom this RICO statement pertains are Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi. The alleged misconduct and basis for liability is set forth in Exhibit "A".

---

[1] Given the ownership and control these defendants had over the underlying entities, Plaintiffs herein incorporate by reference throughout this document the factual averments and arguments contained within its previously filed Memorandum of Law and Surreply filed in Response to the Motion to Dismiss filed by SAAR Network Entity Defendants African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation, as well as its Amended RICO Statement Applicable to al Rajhi Banking and Investment Corporation and RICO Statement applicable to the SAAR Network Entities.

3.  Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

4.  The name of each victim and the manner in which each was injured is indicated on the chart attached hereto as Exhibit "B".

5.  (a) <u>list of predicate acts and specific statutes violated</u>:

| conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal § 125.25(xi) |
|---|---|
| conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |

(b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| early 1990s to 9/11/2001 | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaida Movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack. |

| early 1990s to 9/11/2001 | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi used banking and financial operations to knowingly and intentionally provide financial services to al Qaida and its members, as well as organizations which it knew were providing support to the Enterprise. |
|---|---|---|
| early 1990s to 9/11/2001 | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi undertook the above-named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, the al Qaida Movement to perpetrate radical Muslim terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied. |
| early 1990s to 9/11/2001 | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi | Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts, *i.e.*, multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

(c) not applicable

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business. Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscated their support of the al Qaida Movement to perpetrate radical Muslim terrorism. The SAAR Network of entities (named for Suleiman Abdel Aziz Al Rajhi) controlled by these defendants routinely moved around millions of dollars between them, with no innocent explanation for the layers of transactions taking place other than to obfuscate the fact that this money was going through these

3

companies to offshore, untraceable banks in the Isle of Man, the Bahamas and other locations, ultimately to support the Enterprise. Much of this money has moved through two men, Youssef Nada and Ahmed Idris Nasreddin, and the banks they control in the Bahamas, Bank al Taqwa and Akida Bank Private Ltd., which have been designated conduits for terrorist funds by the U.S. Treasury Department for their longtime support of Hamas and al Qaida. Its tax records indicated it had taken in $1.8 billion in contributions in 1998. Between 1996 and 2000, approximately $26 million was funneled from the SAAR network of charities to the York International Trust and Humana Charitable Trust, both Isle of Man entities controlled both other members of the enterprise all working from the same location in Herndon, Virginia. In other words, Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi directed funds through a series of other entities over which they had influence until those funds ultimately reached a shell company in the Isle of Man, where they could no longer be tracked by federal authorities. These transactions bear all of the hallmarks of money laundering in support of terrorism. Such money laundering, the filing of false tax returns, and tax evasion were all in furtherance of a conspiracy to commit murder and arson which culminated in the Attack.

(g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of money laundering and tax evasion allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaida, which conspiracy culminated in the Attack.

6.

(a)   The enterprise (the "Enterprise" or "the al Qaida Movement to perpetrate radical Muslim terrorism") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b)   The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. The al Qaida Movement to perpetrate radical Muslim terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material

support to operations. Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

   (c)   no.

   (d)   Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi are associated with the Enterprise.

   (e)   Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi are members of the Enterprise, and are separate and distinct from the Enterprise.

   (f)   Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi is separate from the existence of the al Qaida Movement to perpetrate radical Muslim terrorism, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9. The Enterprise benefits by having funds available to meet its goals of spreading its ideology, suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

5

13. The al Qaida Movement to perpetrate radical Muslim terrorism "employs" certain individuals, only a few of whose identities are known, including defendant Osama bin Ladin.

14. The history of the conspiracy behind the al Qaida Movement to perpetrate radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *zakat*, the mandatory charitable contributions required of all Muslims. Al Qaida also collected money from employees of corrupted charities.

    The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

    The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi. In order to identify nineteen individuals willing, able and competent to carry out the Attack, al Qaida needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi. Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out or for which they have reserved.

16. Plaintiffs' damages -- injuries, the loss of life and property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. Rather the plaintiffs' insureds' assignees were the "reasonably foreseeable victims of a

6

RICO violation" and the "intended victims of the racketeering enterprise," *i.e.*, terrorism, the culmination of which was the Attack.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff, as set forth in Exhibit "B".

18.

| | | |
|---|---|---|
| **VI** | Torture Victim Protection Act, 28 U.S.C. § 1350 |
| **VIII** | RICO, 18 U.S.C. § 1962(c), 1962(d) |
| **X** | Anti-Terrorism Act, 18 U.S.C. § 2333 |

19. pendent state claims:

| | |
|---|---|
| **I** | Trespass |
| **II** | Wrongful Death |
| **III** | Survival |
| **IV** | Assault & Battery |
| **V** | Intentional and Negligent Infliction of Emotional Distress |
| **VII** | Conspiracy |
| **IX** | Aiding and Abetting |
| **XI** | Negligence |
| **XII** | Punitive Damages |

20. not applicable

# EXHIBIT "A"

# RICO STATEMENT

# QUESTION # 2

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Suleiman Abdel Aziz al Rajhi | Suleiman Abdel Aziz al Rajhi is a Saudi national who has long provided material support and resources to al Qaida. Al Rajhi is Chairman, Managing Director, and the largest shareholder of al Rajhi Banking and Investment Corporation, and the primary financier of the SAAR Foundation and many of the organizations which operated within the SAAR Network of charities and businesses, including but not limited to African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation. These charities, largely based in Herndon, Virginia, have been used to funnel moneys direct to al Qaida and the Enterprise. Specifically, the SAAR Network Entities funneled billions of dollars of financial sponsorship as well as logistical assistance to al Qaida through a web of interrelated entities, activities and transactions of deliberate complexity, overseen by the leaders of the SAAR Network<br><br>In addition, Suleiman al Rajhi funneled money through Youssef Nada, a noted terrorist financier, through the banks he controlled in the Bahamas and for which al Rajhi had worked under Nada, as well as Bank al-Taqwa.<br><br>Persons associated with the SAAR Foundation and its network are also implicated in for the United States Embassy bombings in Kenya | 1962(c)<br>1962(d) |

and Tanzania.

Suleiman Al Rajhi also serves on the board of directors of the IIRO, a purported "charitable" organization which has long acted as fully integrated components of al Qaida's logistical and financial support infrastructure, and provided material support and resources to al Qaida and affiliated foreign terrorist organizations.

Through his control of al Rajhi Bank, Suleiman Abdel Aziz al Rajhi actively participated in that financial institution's support and sponsorship of al Qaida. For example, with Suleiman Abdel Aziz al Rajhi's support and authorization, al Rajhi Bank maintained accounts for many of al Qaida's charity fronts, including the International Islamic Relief Organization (the "IIRO"), the Muslim World League (the "MWL"), the World Association of Muslim Youth ("WAMY"), Benevolent International Foundation ("BIF") and Al Haramain Islamic Foundation ("Al Haramain").

Al Rajhi Bank advertised the existence and numerical designation of the accounts it maintained for those charities throughout the Muslim world, and provided mechanism to allow al Qaida's supporters to deposit funds directly into those accounts. At all times material hereto, Suleiman Abdel Aziz al Rajhi was expressly aware that many of the charities for which al Rajhi Bank provided financial services were conduits for financing al Qaida, and that the Bank was being used as a vehicle for laundering funds on behalf of, and transferring funds to, that terrorist organization.

Indeed, as mentioned previously Suleiman Abdel Aziz al Rajhi has served as an officer of the IIRO. Significantly, numerous branches of the IIRO were publicly implicated in al Qaida plots throughout the 1990s, during the time that Suleiman Abdel Aziz al Rajhi was

10

|  | serving as an officer of the IIRO, and at which time al Rajhi Bank maintained accounts for that ostensible charity. Branch offices of al Haramain Islamic Foundation were similarly implicated in al Qaida plots throughout the 1990s.<br><br>Suleiman Al Rajhi is identified on the Golden Chain as one of al Qaida's principal financiers. The "Golden Chain" document was discovered during a raid of the Bosnian offices of the Benevolence International Foundation, conducted jointly by the Federal Bureau of Investigation and Bosnian Police. During the course of that raid, the authorities seized several computer hard drives, one of which included a file named "Tareekh Osama" ("Osama's History"), containing scanned images of documents chronicling the formation of al Qaeda. The "Golden Chain" document was among several hundred documents contained in this computer file. Based on their analysis of all the documents within that file, and intelligence gathered from other sources during the war on terror, officials of the US government concluded that the document is "a list of people referred to within al Qaeda" as wealthy donors to the movement. See Government's Evidentiary Proffer supporting the Admissibility of Co-Conspirator Statements, <u>United States of America v. Enaam Arnaout</u>, No. 02-CR-892 (N.D. Ill. filed Jan.6, 2003). The National Commission On Terrorist Attacks Upon the United States embraced this interpretation of the document in its Final Report. See <u>Final Report of the 9/11 Commission</u>, Note 21 to Chapter 2. The Treasury Department has similarly concluded that the "Golden Chain" is an authentic list of al Qaida's principal individual financiers, and in fact used Adel Batterjee's inclusion in the document as a basis to for designating him as a terrorist sponsors under Executive Order 13224. See December 21, 2004 Treasury Department Press Release Regarding the Designation of Adel Batterjee, available at |  |
|---|---|---|

11

|  | http://www.treas.gov/press/releases/js2164.htm |  |
|---|---|---|
|  | Through his business enterprises and involvement in charities operating within al Qaida's infrastructure, Suleiman Abdel Aziz al Rajhi has long provided material support and resources to al Qaida. Al Rajhi has close ties to the Saudi Royal Family. Several members of the Saudi Royal Family are employed by or serve as officers of businesses owned or controlled by al Rajhi. For example, Prince Mohammad bin Nayef bin Abdel Aziz al Saud, the Assistant Deputy Minister of the Interior of Saudi Arabia, serves as the Chairman of Al Rajhi Commercial Foreign Exchange. Abdallah bin Yahya al Muallimi, the Secretary General of the Jeddah Province, serves as board member in the same company. Prince Faisal Ibn Muhamad Ibn Saud is the Chairman of al Rajhi Yamama Cement Company. Prince Turki Ibn Muhamad Ibn Abdul Aziz Ibn Turki is a board member of al Rajhi Yamama Cement Company. |  |
|  | Suleiman al Rajhi also managed the National Commercial Bank budget of defendant Saudi Joint Relief Committee (SJRC). In addition, for decades, Rajhi has been involved with the Muslim Brotherhood, a 74-year-old group which is under investigation by European and Middle Eastern governments for its alleged support of radical Islamic and terrorist groups. For decades the Brotherhood has been a wellspring of radical Islamic activity; Hamas, the militant Palestinian group, is an offshoot of it. It is also tied to leading neo-Nazis, including the Swiss Holocaust denier Ahmed Huber. |  |
|  | In all these capacities, including his capacity as an officer and/or director of many of the SAAR Network Entities, Suleiman al Rajhi has committed multiple acts of conspiracy to commit murder and arson, money laundering, tax fraud, Travel Act violations, filing a false tax return, and impeding and impairing the collecting of federal taxes, all in furtherance of |  |

| | | |
|---|---|---|
| | the Enterprise's common goals and ultimate plan of launching an attack on America. | |
| Saleh Abdulaziz Al-Rajhi | Saleh Abdulaziz al-Rajhi, eldest brother of Suleiman, has been Chairman of Al Rajhi Banking and Investment Corporation, and is inextricably tied to the actions of Al Rajhi Banking and Investment Corporation as alleged above and in previous court filings.<br><br>Furthermore, Saleh Abdulaziz al-Rajhi is personally linked to Wadi el-Hage, Osama bin Laden's personal secretary. (Saleh's phone number found in Wadi's phone book upon his arrest.). Wadi el-Hage was convicted for his role in the 1998 Embassy Bombing in Kenya and Tanzania. | 1962(c)<br>1962(d) |
| Abdullah Suleiman Al-Rajhi | Abdullah Suleiman Al-Rajhi is General Manager of the Al-Rajhi Banking & Investment Corp., and member of its executive committee, and is inextricably tied to the actions of Al Rajhi Banking and Investment Corporation as alleged above and in previous court filings.<br><br>In addition, he was President of Aradi, Inc., located at the same address as SAAR, 555 Grove Street in Herndon, Virginia. Through Abdullah Suleiman Al-Rajhi, the Safa Group had access to a bank and banking officials for purposes of producing checks purportedly paid for SAAR's charitable purposes but which actually went towards the benefit of the Enterprise. | 1962(c)<br>1962(d) |