UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**applicable to Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi** |

*This document relates to:*   *World Trade Center Properties, L.L.C., et al. vs. Al Baraka Investment and Development Corporation, et al.*
04 CV 07280 (RCC)

## RICO STATEMENT
## APPLICABLE TO SULAIMAN BIN ABDUL AZIZ AL RAJHI, SALEH ABDUL AZIZ AL RAJHI, ABDULLAH SULAIMAN AL-RAJHI AND KHALID SULAIMAN AL-RAJHI

Based on information currently available, plaintiffs submit this RICO statement pursuant to the Case Management Order dated June 15, 2004 for defendants Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi.[1]

Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

1.   The unlawful conduct is in violation of 18 U.S.C. § 1962 (a), (c) and/or (d).

2.   The name of the defendants to whom this RICO statement pertains is Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi and the alleged misconduct and the basis of liability for said defendants is indicated on the chart attached hereto as Exhibit "A".

---

[1] Given the ownership and control these defendants had over the underlying entities, Plaintiffs herein incorporate by reference throughout this document the factual statements made in their RICO Statement applicable to Mar-Jac Poultry, African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, Inc., International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation ("SAAR Network Entities").

3. Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the enterprise and conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

4. The damages sustained for which each defendant is liable include, the total destruction of One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center and related subgrade spaces and Seven World Trade Center; lost rental income, business interruption and other related losses; property damage to other of plaintiffs' properties; environmental and remediation expenses; potential liability, indemnification, contribution and other payments to third parties for alleged bodily injury, wrongful death, property damage and other claimed injuries; and related costs, professional and other fees, and expenses.

5. (a) list of predicate acts and specific statutes violated:

| | |
|---|---|
| conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal § 125.25(xi) |
| conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| fraud with identification documents | 18 U.S.C. § 1028 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| financial institution fraud | 18 U.S.C. § 1344 |
| relating to unlawful procurement of citizenship or naturalization papers | 18 U.S.C. § 1425 |
| relating to the unlawful reproduction of naturalization or citizenship papers | 18 U.S.C. § 1426 |
| relating to the sale of naturalization or citizenship papers | 18 U.S.C. § 1427 |
| obstruction of justice | 18 U.S.C. § 1503 |
| obstruction of a criminal investigation | 18 U.S.C. § 1510 |
| obstruction of state or local law enforcement | 18 U.S.C. § 1511 |
| Travel Act | 18 U.S.C. § 1952 |
| fraud or misuse of visa permits or other documents | 18 U.S.C. § 1546 |

| | |
|---|---|
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| defrauding the US Government | 18 U.S.C. § 371 |
| filing false or materially false tax returns | 26 U.S.C. § 7206(1), (2) |
| engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |

    (b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| early 1990s to 9/11/2001 | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, which conspiracy culminated in the September 11, 2001 Attacks; |
| early 1990s to 9/11/2001 | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi used banking and financial operations to knowingly and intentionally provide financial services and materially support to al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise. |
| early 1990s to 9/11/2001 | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi undertook the above-named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which they were participating, Radical Muslim Terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied; |

| early 1990s to 9/11/2001 | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi | Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts, *i.e.*, multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |
|---|---|---|

(c) See Exhibit "A".

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business.  Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscates their support of Radical Muslim Terrorism.  The SAAR Network Entities (names for Sulaiman Bin Abdul Aziz Al Rajhi) controlled by these defendants routinely moved around millions of dollars between them, with no innocent explanation for the layers of transactions taking place other than to obfuscate the fact that this money was going through these companies to offshore, untraceable banks on the Isle of Man, the Bahamas, and other locations, ultimately to support the Enterprise.  Much of this money moved through two men, Youssef Nada and Ahmed Idris Nasreddin, and the banks they control in the Bahamas, Bank al Taqwa and Akida Bank Private Ltd., which have been designated conduits for terrorist funds by the U.S. Treasury Department for their longtime support of Hamas and al Qaida. Its tax records indicated it had taken in $1.8 billion in contributions in 1998. Between 1996 and 2000, approximately $26 million was funneled from the SAAR network of charities to the York International Trust and Humana Charitable Trust, both Isle of Man entities controlled both other members of the enterprise all working from the same location in Herndon, Virginia. In other words, Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi directed funds through a series of other entities over which they had influence until those funds ultimately reached a shell company in the Isle of Man, where they could no longer be tracked by federal authorities. These transactions bear all of the hallmarks of money laundering in support of terrorism. Such money laundering, the filing of false tax returns, and tax evasion were all in furtherance of a conspiracy to commit murder and arson which culminated in the September 11, 2001 Attacks.

    (g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of money laundering and tax evasion allowed Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi to surreptitiously provide funds to terrorist organizations, including al Qaeda, which conspiracy culminated in the September 11, 2001 Attacks.

6.     (a) The enterprise (the "Enterprise" or "Radical Muslim Terrorism") is comprised of the defendants named in the Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact and purpose.

    (b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Arab regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature, its flexible, even nimble operations, and thus its success. Therefore, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi fit neatly into this framework by facilitating the transfer of money for and providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack by engaging in a course of conduct that included money laundering and tax evasion. At the time of the September 11, 2001 Attacks, al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks, financial institutions and charities, including the SAAR Network Entities associated with Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi, and illegal activities (including narcotics trafficking) to generate material support to continue its terrorist operations.

    (c) No.

    (d) Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi is associated with the Enterprise.

(e) Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi is a member of the Enterprise, and is separate and distinct from the Enterprise.

(f) Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the September 11, 2001 Attacks.

7. The pattern of racketeering activity conducted by Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi is separate from the existence of al Qaeda and Radical Muslim Terrorism, but was a necessary component to the September 11, 2001 Attacks.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi furthers and facilitates that international terrorist and criminal activity, which culminated in the September 11, 2001 Attacks. The usual and daily activities of the Enterprise includes recruitment, indoctrination, financing, material support and the provisioning and operation of al Qaeda training camps, all of which activities are funded or sponsored by the racketeering activities described herein.

9. The Enterprise benefits by spreading its radical and illegitimate ideology, by suppressing other forms of Islam, and through the gratification of destroying all perceived enemies.

10. The Enterprise and the racketeering activities conducted by Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi, relies heavily on the American interstate system of commerce for banking, financing, supplies, communications, and virtually all essential commercial functions, and in that manner affects interstate commerce.  Additionally, the September 11, 2001 Attacks adversly affected interstate commerce.  See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13. Radical Muslim Terrorism "employs" certain individuals, only a few of whose identities are known, including defendant Osama bin Ladin and his al Qaeda network.

14. The history of the conspiracy behind Radical Muslim Terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being fostered by the Republic of the Sudan until May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including but not

limited to Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi, who laundered funds from Islamic charities and financial institutions, including the so-called charities and corporations, and facilitated the transfer of money through witting and unwitting institutions. (The 'witting' are named herein.) They also relied heavily on certain imams at mosques who were willing to divert the zakat, the mandatory charitable contributions required of Muslims. Al Qaeda also collected money from employees of corrupted charities and financial institutions.

The funds raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan in preparation for the September 11, 2001 Attacks. None of this would have been possible without the funds and sponsorship supplied by participants and conspirators including Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi. In order to identify individuals willing, able and trained to carry out the September 11, 2001 Attacks, al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi. Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi, with knowledge and intent, agreed to the overall objectives of the enterprise or conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Sulaiman Bin Abdul Aziz Al Rajhi, Saleh Abdul Aziz Al Rajhi, Abdullah Sulaiman Al-Rajhi and Khalid Sulaiman Al-Rajhi also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the intended targets, plaintiffs have been severely harmed in their business and property through the losses that they have suffered or will suffer.

16. Plaintiffs' damages -- the loss of business and property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. The plaintiffs were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," i.e., international terrorism, the culmination of which was the September 11, 2001 Attacks.

17. The damages sustained for which each defendant is liable include, the total destruction of One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center and related subgrade spaces and Seven World Trade Center; lost rental income, business interruption and other related losses; property damage to other of plaintiffs' properties; environmental and remediation expenses; potential liability, indemnification, contribution and other payments to third parties for alleged bodily injury, wrongful death, property damage and other claimed injuries; and related costs, professional and other fees, and expenses, in excess of $12 billion.

18.

| I | Anti-Terrorism Act, 18 U.S.C. § 2333 |
|---|---|
| II | RICO, 18 U.S.C. § 1962(a) |
| III | RICO, 18 U.S.C. § 1962(c) |
| IV | RICO, 18 U.S.C. § 1962(d) |
| IX | Violation of International Law |

19. pendent common law claims:

| V | Trespass |
|---|---|
| VI | Intentional and/or Willful Destruction of Property |
| VII | Conspiracy |
| VIII | Aiding and Abetting |
|  | Punitive Damages |

20. Not applicable.