UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In Re Terrorist Attacks on September 11, 2001     03 MDL 1570 (RCC)
    ECF Case

----------------------------------------------------------x
CONTINENTAL CASUALTY CO., et. al.,

                       Plaintiffs,     Case No. 04-CV-5970 (RCC)
        v.     ECF Case

AL QAEDA ISLAMIC ARMY, et al.,

                       Defendants.
----------------------------------------------------------x

RICO STATEMENT APPLICABLE TO
DEFENDANTS SULAIMAN ABDULAZIZ AL RAJHI, ABDULLAH SULAIMAN AL RAJHI
AND SALEH ABDULAZIZ AL RAJHI


Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi. Given the complicated nature of the wrongdoing that led to the terrorist attack of September 11, 2001 (the "Attack"), much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

2.     This RICO Statement pertains to defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi. The alleged misconduct and basis for liability for each of these defendants is set forth in Exhibit A.

3.     All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these other defendants. Given the complicated nature of the wrongdoing that led to the Attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.     The victims are Continental Casualty Company, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania. The

plaintiffs are all insurance companies which insured properties and businesses which was located at or near the World Trade Center premises in New York City and were damaged as a result of the Attack. Plaintiffs' insureds suffered damages to their property interests and damages to their ability to conduct their business. Plaintiffs, pursuant to policies that were issued to the insureds, made payments to their insureds and as a result became subrogated to the insureds and are now permitted to bring these claims for the damages to their insureds' property and business interests as well as for the damage to their own business and property.

5. (a)

| | |
|---|---|
| conspiracy to commit murder | New York Penal Law § 105.15; New York Penal Law § 125.25(xi) |
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| providing material support of terrorism | 18 U.S.C. §§ 2332B, 2339A and 2339B |

(b) From the mid-1990's through September 11, 2001, defendants Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al Rajhi, and Abdullah Sulaiman Al Rajhi conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaeda movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack.

Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al Rajhi, and Abdullah Sulaiman Al Rajhi used banking and financial operations to knowingly and intentionally provide financial services to al Qaeda and its members, as well as organizations which it knew were providing support to the Enterprise.

Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al Rajhi, and Abdullah Sulaiman Al Rajhi undertook the above-named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, the al Qaeda movement to perpetrate radical Muslim terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied.

Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al Rajhi, and Abdullah Sulaiman Al Rajhi agreed to form and associate themselves with the Enterprise and agreed to commit more than two predicate acts in furtherance of a pattern of racketeering activity in connection with the Enterprise.

(c) Plaintiffs' RICO claims are based in part on the predicate offenses of wire fraud and mail fraud. From the mid-1990's through September 11, 2001, defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi utilized interstate and international faxes, telephones, wire transfers and transmissions, and the United States and international mails to facilitate, provide financial and material support and provide substantial assistance to al Qaeda. The financial support and assistance provided to al Qaeda by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi assisted the business and financial transactions in which al Qaeda engaged to further its operations and purposes. Al Qaeda relied upon defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, among others, to generate material support to continue its terrorist operations and to conceal the nature and extent of financial assistance provided to al Qaeda. These activities assisted al Qaeda's ability to plan over a number of years, orchestrate, and ultimately carry out the Attack that injured plaintiffs. The creation and maintenance of a financial network is essential to al Qaeda.

Further, given the complicated nature of the wrongdoing by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi and others that led to the events of September 11, 2001, additional information relating to the circumstances constituting the activities of defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi likely will be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are repeated, continuous, and are a part of the Enterprise's regular way of doing business. From the mid-1990s through September 11, 2001, defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments.

(g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each predicate allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaeda, which conspiracy culminated in the Attack.

6.

(a) The enterprise (the "Enterprise") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or

"al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

    (c)    No.

    (d)    Defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi are associated with the Enterprise.

    (e)    Defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi are members of the Enterprise and are separate and distinct from the Enterprise.

    (f)    The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business.  Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al Rajhi and Abdullah Suleiman Al Rajhi consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscated their support of the al Qaeda Movement to perpetrate radical Muslim terrorism.  The SAAR Network of entities (named for Suleiman Abdel Aziz Al Rajhi) controlled by these defendants routinely moved around millions of dollars between them, with no innocent explanation for the layers of transactions taking place other than to obfuscate the fact that this money was going through these companies to offshore, untraceable banks in the Isle of Man, the Bahamas and other locations, ultimately to support the Enterprise.  Much of this money has moved through two men, Youssef Nada and Ahmed Idris Nasreddin, and the banks they control in the Bahamas, Bank al Taqwa and Akida Bank Private Ltd., which have been designated conduits for terrorist funds by the U.S. Treasury Department for their longtime support of Hamas and al Qaeda.  Its tax records indicated it had taken in $1.8 billion in contributions in 1998. Between 1996 and 2000, approximately $26 million was funneled from the SAAR network of charities to the York International Trust and Humana Charitable Trust, both Isle of Man entities controlled by other members of the enterprise all working from the same location in Herndon, Virginia.  In other words, Suleiman Abdel Aziz Al Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah Suleiman Al-Rajhi directed funds through a series of other entities over which they had influence until those funds ultimately reached a shell

company in the Isle of Man, where they could no longer be tracked by federal authorities. These transactions bear all of the hallmarks of money laundering in support of terrorism. Such money laundering, the filing of false tax returns, and tax evasion were all in furtherance of a conspiracy to commit murder and arson which culminated in the Attack.

7.   The pattern of racketeering activity conducted by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi is separate from the existence of radical Muslim terrorism, but was a necessary component to the Attack.

8.   The Enterprise conducts terrorism all over the world; the racketeering activity conducted by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9.   The Enterprise benefits by having sufficient resources available to spread its ideology, to suppress other forms of Islam, and to attack its perceived enemies.

10.   The Enterprise, and the racketeering activities conducted by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi rely heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce, by imposing serious damage upon the national economy.

11.   Not applicable.

12.   Not applicable.

13.   (a)  The Enterprise "employs" certain individuals, only a few of whose identities are known, including defendant Bin Ladin.

       (b)  The liable "persons" are defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi and the "enterprise" is the association-in-fact of the defendants.

14.   The history of the conspiracy behind radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and

most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi.  Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi. In order to identify nineteen individuals willing, able and competent to carry out the Attack, Al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi.  defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi also, with knowledge and intent, agreed to the overall objectives of the conspiracy, agreed to commit at least two predicate acts and agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15.     As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out.

16.     Defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, enabled the Enterprise to plan, orchestrate, and carry out the Attack that injured plaintiffs.  Therefore, the conduct of defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi proximately resulted in the Attack.  Plaintiffs suffered injury to their property by reason of the above conduct of defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi.

17.     Each defendant is jointly and severally liable for the damages suffered by each plaintiff.

18.     RICO, 18 U.S.C. 18 §§ 1962(c), 1962(d).

19.     Trespass.

20.     Not applicable.

## EXHIBIT A

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Sulaiman Abdel Aziz al Rajhi | Sulaiman Abdel Aziz al Rajhi is a Saudi national who has long provided material support and resources to al Qaida. Al Rajhi is Chairman, Managing Director, and the largest shareholder of al Rajhi Banking and Investment Corporation, and the primary financier of the SAAR Foundation and many of the organizations which operated within the SAAR Network of charities and businesses, including but not limited to African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation.  These charities, largely based in Herndon, Virginia, have been used to funnel moneys direct to al Qaeda and the Enterprise.  Specifically, the SAAR Network entities funneled billions of dollars of financial sponsorship as well as logistical assistance to al Qaeda through a web of interrelated entities, activities and transactions of deliberate complexity, overseen by the leaders of the SAAR Network.<br><br>In addition, Sulaiman al Rajhi funneled money through Youssef Nada, a noted terrorist financier, through the banks he controlled in the Bahamas and for which al Rajhi had worked under Nada, as well as Bank al-Taqwa.<br><br>Persons associated with the SAAR Foundation and its network are also implicated in the United States Embassy bombings in Kenya and Tanzania.<br><br>Sulaiman Al Rajhi also serves on the board of directions of the International Islamic Relief Organization (the "IIRO"), a purported "charitable" organization which has long acted | 1962(c)<br>1962(d) |

62129                                7

|  | as a fully integrated component of al Qaeda's logistical and financial support infrastructure, and provided material support and resources to al Qaeda and affiliated foreign terrorist organizations. |  |
|---|---|---|
|  | Through his control of al Rajhi Bank, Sulaiman Abdel Aziz al Rajhi actively participated in that financial institution's support and sponsorship of al Qaeda. For example, with Sulaiman Abdel Aziz al Rajhi's support and authorization, al Rajhi Bank maintained accounts for many of al Qaeda's charity fronts, including the IIRO, the Muslim World League (the "MWL"), the World Association of Muslim Youth ("WAMY"), Benevolent International Foundation ("BIF") and Al Haramain Islamic Foundation ("Al Haramain"). |  |
|  | Al Rajhi Bank advertised the existence and numerical designation of the accounts it maintained for those charities throughout the Muslim world, and provided mechanism to allow al Qaeda's supporters to deposit funds directly into those accounts. At all times material hereto, Sulaiman Abdel Aziz al Rajhi was expressly aware that many of the charities for which al Rajhi Bank provided financial services were conduits for financing al Qaeda, and that the Bank was being used as a vehicle for laundering funds on behalf of, and transferring funds to, that terrorist organization. |  |
|  | Indeed, as mentioned previously, Sulaiman Abdel Aziz al Rajhi has served as an officer of the IIRO. Significantly, numerous branches of the IIRO were publicly implicated in al Qaeda plots throughout the 1990s, during the time that Sulaiman Abdel Aziz al Rajhi was serving as an officer of the IIRO, and at which time al Rajhi Bank maintained accounts for that ostensible charity. Branch offices of Al Haramain were similarly implicated in al Qaeda plots throughout the 1990s. |  |
|  | Sulaiman Al Rajhi is identified on the "Golden |  |

62129                           8

|  | Chain" as one of al Qaeda's principal financiers.  The "Golden Chain" document was discovered during a raid of the Bosnian offices of the Benevolence International Foundation, conducted jointly by the Federal Bureau of Investigation and Bosnian police.  During the course of that raid, the authorities seized several computer hard drives, one of which included a file named "Tareekh Osama" ("Osama's History"), containing scanned images of documents chronicling the formation of al Qaeda.  The "Golden Chain" document was among several hundred documents contained in this computer file.  Based on their analysis of all the documents within that file, and intelligence gathered from other sources during the war on terror, officials of the U.S. government concluded that the document is "a list of people referred to within al Qaeda" as wealthy donors to the movement.  See Government's Evidentiary Proffer supporting the Admissibility of Co-Conspirator Statements, United States of America v. Enaam Arnaout, No. 02-CR-892 (N.D. Ill. Filed Jan. 6, 2003).  The National Commission On Terrorist Attacks Upon the United States embraced this interpretation of the document in its Final Report.  See Final Report of the 9/11 Commission, Note 21 to Chapter 2.  The Treasury Department has similarly concluded that the "Golden Chain" is an authentic list of al Qaeda's principal individual financiers, and in fact used Adel Batterjee's inclusion in the document as a basis to for designating him as a terrorist sponsor under Executive Order 13224.  See December 21, 2004 Treasury Department Press Release Regarding the Designation of Adel Batterjee, available at http://www.treas.gov/press/releases/js2164.htm.

Through his business enterprises and involvement in charities operating within al Qaeda's infrastructure, Sulaiman Abdel Aziz al Rajhi has long provided material support and resources to al Qaeda.  Al Rajhi has close ties to the Saudi Royal Family.  Several members |  |

62129                                                           9

| | | |
|---|---|---|
| | of the Saudi Royal Family are employed by or serve as officers of businesses owned or controlled by al Rajhi. For example, Prince Mohammad bin Nayef bin Abdel Aziz al Saud, the Assistant Deputy Minister of the Interior of Saudi Arabia, serves as the Chairman of Al Rajhi Commercial Foreign Exchange. Abdallah bin Yahya al Muallimi, the Secretary General of the Jeddah Province, serves as board member in the same company. Prince Faisal Ibn Muhamad Ibn Saud is the Chairman of al Rajhi Yamama Cement Company. Prince Turki Ibn Muhamad Ibn Abdul Aziz Ibn Turki is a board member of al Rajhi Yamama Cement Company.<br><br>Sulaiman al Rajhi also managed the National Commercial Bank budget of defendant Saudi Joint Relief Committe. In addition, for decades, al Rajhi has been involved with the Muslim Brotherhood, a 74-year-old group which is under investigation by European and Middle Eastern governments for its alleged support of radical Islamic and terrorist groups. For decades the Brotherhood has been a wellspring of radical Islamic activity; Hamas, the militant Palestinian group, is an offshoot of it. It is also tied to leading neo-Nazism, including the Swiss Holocaust denier Ahmed Huber.<br><br>In all these capacities, including his capacity as an officer and/or director of many of the SAAR Network Entities, Sulaiman al Rajhi has committed multiple acts of conspiracy to commit murder and arson, money laundering, tax fraud, Travel Act violations, filing a false tax return, and impeding and impairing the collecting of federal taxes, all in furtherance of the Enterprise's common goals and ultimate plan of launching an attach on America. | |
| Saleh Abdulaziz Al Rajhi | Saleh Abdulaziz al Rajhi, eldest brother of Sulaiman, has been Chairman of Al Rajhi Banking and Investment Corporation, and is inextricably tied to the actions of Al Rajhi | 1962(c)<br>1962(d) |

62129                                   10

| | | |
|---|---|---|
| | Banking and Investment Corporation as alleged above and in previous court filings.<br><br>Furthermore, Saleh Abdulaziz al Rajhi is personally linked to Wadi el-Hage, Osama bin Laden's personal secretary (Saleh's phone number was found in Wadi's phone book upon his arrest.). Wadi el-Hage was convicted for his role in the 1998 Embassy bombings in Kenya and Tanzania. | |
| Abdullah Sulaiman Al Rajhi | Abdullah Sulaiman Al Rajhi is General Manager of the Al-Rajhi Banking & Investment Corp., and member of its executive committee, and is inextricably tied to the actions of Al Rajhi Banking and Investment Corporation as alleged above and in previous court filings.<br><br>In addition, he was President of Aradi, Inc., located at the same address as SAAR, 555 Grove Street in Herndon, Virginia. Through Abdullah Sulaiman Al Rajhi, the Safa Group had access to a bank and banking officials for purposes of producing checks purportedly paid for SAAR's charitable purposes but which actually went towards the benefit of the Enterprise. | 1962(c)<br>1962(d) |

62129                                       11