**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:
*Burnett v. Al Baraka Investment & Development Corp.,* *03-CV-5738 (RCC)*
*Burnett v. Al Baraka Investment & Development Corp.,* *03-CV-9849 (RCC)*
*Federal Insurance Co. v. Al Qaida,* *03-CV-6978 (RCC)*
*New York Marine and General Insurance Co. v. Al Qaida,* *04-CV-6105 (RCC)*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MOHAMMED HUSSEIN AL AMOUDI'S MOTION TO DISMISS THE COMPLAINTS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

**AKIN GUMP STRAUSS HAUER & FELD LLP**

James d'Auguste (JD 7373)
590 Madison Avenue
New York, New York 10022
(212) 872-1000
(212) 872-1002 (fax)

Mark J. MacDougall
Matthew A. Rossi
Nicole H. Sprinzen
Mara B. Zusman
1333 New Hampshire Ave., NW
Washington, DC 20036
(202) 887-4000
(202) 887-4288 (fax)

Attorneys for Defendant Mohammed Hussein
Al Amoudi

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………………………………………………..iii

INTRODUCTION……………………………………………………………………………...1

BACKGROUND……………………………………………………………………………….2

I.      Mr. Al Amoudi's Personal And Professional Background……………………………....2

II.     No Allegations Of Contacts Between Mr. Al Amoudi And New York Or The
        United States………………………………………………………..……………………3

III.    Service of Process On Mr. Al Amoudi Is Ineffective…………………………………...3

IV.     Complaint Allegations Fail To State A Claim Against Mr. Al Amoudi…………………4

        A.      The *Burnett* Complaint………………………………………………………………4

        B.      The *Federal Insurance* And *New York Marine* Complaints……………………....7

ARGUMENT……………………………………………………………………………….…..7

I.      This Court Lacks Personal Jurisdiction Over Mr. Al Amoudi…………..……………...7

        A.      Plaintiffs Have Failed To Allege Minimum Contacts With New York Or The
                United States…………………………….………………………………………8

        B.      Plaintiffs Have Not Alleged That Mr. Al Amoudi Purposefully Directed Any
                Tortious Activity Toward The United States……………...………………………9

        C.      Plaintiffs Cannot Establish Personal Jurisdiction Based On Their Conspiracy
                Allegation……………………………………………………………………...10

        D.      The Anti-Terrorism Act Does Not Confer Personal Jurisdiction Over Mr. Al
                Amoudi…………………………………………………………………………....11

II.     Mr. Al Amoudi Was Not Properly Served……………………………………………...12

III.    The Complaint Fails To State Any Claim Against Mr. Al Amoudi Upon Which Relief
        Can Be Granted…………………………………………………………………………..13

        A.      Plaintiffs Fail To Allege That Mr. Al Amoudi Proximately
                Caused Injury……………………..…………………………………………....13

B.      Plaintiffs Fail To Allege Elements Of The Claims Against Mr. Al Amoudi........14

      1.      Torture Victim Protection Act Claims...........................................14

      2.      Claim Under The Alien Tort Claims Act.......................................15

      3.      Wrongful Death...............................................................16

      4.      Negligence And Negligent Infliction And/Or Intentional Infliction Of
              Emotional Distress.............................................................17

      5.      Civil RICO Claims............................................................19

      6.      Anti-Terrorism Act Claims....................................................20

      7.      Trespass.......................................................................21

      8.      Conspiracy.....................................................................21

      9.      Aiding And Abetting..........................................................22

      10.     Assault And Battery...........................................................23

      11.     Survival Claims...............................................................24

      12.     Punitive Damages.............................................................24

IV.   This Court Should Compel Plaintiffs To File A More Definite Statement...................25

CONCLUSION..............................................................................26

# TABLE OF AUTHORITIES

Page

## CASES

*Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102 (N.Y. Ct. App. 1986)............21

*Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215 (S.D.N.Y. 1992)......................10

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)........................................8, 9

*Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987).............................23

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999)...........7

*Bao Ge v. Li Peng*, 201 F. Supp. 2d 14 (D.D.C. 2000)............................................14, 15

*Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000)...................................22

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002)...................................19, 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..............................................8, 9

*Calder v. Jones*, 465 U.S. 783 (1984)..............................................................8, 9

*Campoverde v. Sony Pictures Entm't*, No. 01CIV.7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002)............................................................................17, 18, 22

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998)..........................................................8

*Chisolm v. Transouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996).......................................19

*Chong v. New York Transit Auth.*, 441 N.Y.S.2d 24 (App. Div. 1981)...............................23

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991).............10

*Citibank N.A. v. K-H Corp.*, 968 F.2d 1489 (2d Cir. 1992)............................................14

*Conley v. Gibson*, 355 U.S. 41 (1957)...............................................................13

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, No. 02civ2900, 2002 WL 31819217 (S.D.N.Y. Dec. 16, 2002)....................................................................22

*Doe v. State*, 588 N.Y.S.2d 698 (Ct. Cl. 1992), *aff'd*, 595 N.Y.S.2d 592 (App. Div. 1993)........24

*Dusenberry v. United States*, 534 U.S. 161 (2002)................................................4, 12

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)..........................................21

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).........................14

*Girden v. Sandals Int'l.*, 262 F.3d 195 (2d Cir. 2001)...............................................23

*Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145 (S.D.N.Y. 1982)................16

*Graham v. Guilderland Cent. School Dist.*, 681 N.Y.S.2d 831 (App. Div. 1998)..................18

*Hattley v. Goord*, No. 02civ2339, 2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003)..................22

*Hecht v. Commercial Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990)..........................20

*Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 (S.D.N.Y. 2004)................19

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)................................................19

*Howell v. New York Post Co., Inc.*, 596 N.Y.S.2d 350 (Ct. App. 1993)............................18

*Humphreys v. Nager*, 962 F. Supp. 347 (E.D.N.Y. 1997)..........................................25

*In re Air Crash Disaster At Cove Neck, Long Island, New York on January 25, 2990*, 885 F. Supp. 434 (E.D.N.Y. 1995).........................................................................21

*In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395 (2d Cir. 1994)..........................13, 14

*In re TMJ Implants Prods. Liab. Litig.*, 113 F.3d 1484 (8th Cir. 1997)...........................23

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)..........................................8

*Jantzen v. Leslie Edelman of N.Y., Inc.*, 614 N.Y.S.2d 744 (App. Div. 1994)......................16

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998).............................................7

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995)...................................................14, 15

*Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557 (S.D.N.Y. 1996)........................................17

*Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.*, 26 F. Supp. 2d 593 (S.D.N.Y. 1998).........................................................................................10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999)..........................................................................................13

*Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir. 1973)..........................................23

*Lawrence v. Walsh*, 187 N.Y.S.2d 71 (App. Div. 1979)..................................................24

*Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975).......................................10

*Lerner v. Fleet Bank, NA*, 318 F.3d 113, 122 (2d Cir. 2003)..........................................19

*Lindsay v. Lockwood*, 625 N.Y.S.2d 393 (Sup. Ct. 1994)..............................................22

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001)............................................................20

*Mascarella v. Brown*, 813 F. Supp. 1015 (S.D.N.Y. 1993)..............................................13

*McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366 (S.D.N.Y. 1996)................................16

*McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997)...................................................17

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003)...............................8

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)...........................8

*Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996)..................................................17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..................................12

*Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232 (1983)........................................18

*Nat'l Westminster Bank USA v. Weksel*, 511 N.Y.S.2d 626 (App. Div. 1987).......................23

*Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203 (S.D.N.Y. 1998)..................................10

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990)...................................................19

*Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977)........................................................22

*Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994)..............................................8

*Pollack v. Nash*, 58 F. Supp. 2d 294 (S.D.N.Y. 1999)...................................................21

*Rocanova v. Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603 (1994)...............................24

*School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804 (Sup. Ct. 2003)..............................21

*Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189 (Ct. App. 1985)..............................13

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)................................................19

*Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43 (Ct. App. 1999)......................................22

*Solomon v. City of New York*, 66 N.Y.2d 1026 (Ct. App. 1985)......................................16

*Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245 (S.D.N.Y. 2003).....22

*Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272 (S.D.N.Y. 2003)....................17

*Stratton Group, Ltd. v. Sprayregen*, 466 F. Supp. 1180 (S.D.N.Y. 1979)............................17

*Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. 1999)....................................................................18

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)......................................................25

*Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033 (S.D.N.Y. 1993)....................18

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003)......................................................15

*United States Sec. & Exch. Comm'n v. Carillo*, 115 F.3d 1540 (11th Cir. 1997)....................12

*U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping Co.*, 241 F.3d 135 (2d Cir. 2001)..................8

## RULES

Fed. R. Civ. P. 12(b)(1).....................................................................................15

Fed. R. Civ. P. 12(b)(2)......................................................................................8

Fed. R. Civ. P. 12(b)(5).....................................................................................12

Fed. R. Civ. P. 12(b)(6).................................................................................13, 15

Fed. R. Civ. P. 12(e)...................................................................................2, 25, 26

## STATUTES

18 U.S.C. § 2333.......................................................................................19, 20

18 U.S.C. § 2334...................................................................................11, 12, 19

18 U.S.C. § 2339A(b)......................................................................................28

28 U.S.C. § 1350……………………………………………………………………………………20

## OTHER AUTHORITIES

H.R. Rep. No. 102-367 (1991), *reprinted in* 1992 U.S.C.C.A.N. 84, 85-86…..………………...14

N.Y.C.P.L.R. § 302(a)(2)…………………………………………………………………..…...10

N.Y. Est. Powers & Trusts Law § 5-4.1………………………………………...…………16, 23

N.Y. Est. Powers & Trusts § 11-3.2(b)………………………………………………………...24

Restatement (Second) of Torts § 217 cmt. d………………………………………………..21

Restatement (Second) of Torts § 876, cmt d………………………………………………..22

S. Rep. No. 102-249 102d Cong., 1st Sess., 1991 WL 258662 (Nov. 26, 1991)...………………14

## INTRODUCTION

In December 2003, Mohammed Hussein Al Amoudi ("Mr. Al Amoudi") was voluntarily dismissed as a defendant from *Burnett v. Al Baraka Investment & Development Corporation*, 03-CV-9849 ("the *Burnett* Complaint"), while it was pending in another court[1], following the presentation to Plaintiffs' counsel of evidence that the allegations concerning Mr. Al Amoudi arose out of a case of mistaken identity. Then, in January 2005, Mr. Al Amoudi was inexplicably reinstated as a defendant in *Burnett*, without any new allegations being made against him. Now, Mr. Al Amoudi finds himself in the position of having to defend against the same allegations on the basis of which he was already dismissed.

Mr. Al Amoudi has never knowingly supported or assisted terrorism of any kind. Plaintiffs have alleged no facts in the Third Amended Complaint in the *Burnett* Complaint, that, if true, would even tend to show otherwise. Further, Plaintiffs have alleged *no facts whatsoever* in the First Amended Complaint in *Federal Insurance Company v. Al Qaida*, 03-CV-6978 ("the *Federal Insurance* Complaint"), or the First Amended Complaint in *New York Marine and General Insurance Company v. Al Qaida*, 04-CV-6105 ("the *New York Marine* Complaint"), on which to base their claims against Mr. Al Amoudi.

Plaintiffs have failed to allege any facts on the basis of which this Court could exercise personal jurisdiction over Mr. Al Amoudi. Indeed, the Complaints in which Mr. Al Amoudi is

---

[1] The *Burnett* Complaint was originally filed in the U.S. District Court for the District of Columbia ("District of Columbia") on August 15, 2002, but the case was transferred to the U.S. District Court for the Southern District of New York ("Southern District of New York") in December 2003 and is now pending in this Court. *See* Certified True Copy of Conditional MDL Transfer in Order from the MDL Panel, *In re Terrorist Attacks on September 11, 2001*, Civil Docket for Case No. 1:03-md-01570-RCC #1, 12/10/03 (hereinafter "MDL docket").

An action identical to *Burnett*, and styled *Burnett v. Al Baraka Investment & Development Case*, 03-CV-5738 ("Case No. 03-CV-5738"), was filed in the Southern District of New York at the same time that *Burnett* was filed in the District of Columbia but was filed on the "suspense docket" and is now an inactive case. Accordingly, this motion does not specifically address Case No. 03-CV-5738. Nonetheless, given that the complaint in the *Burnett* case is identical to the complaint filed in Case No. 03-CV-5738, the arguments in this motion are applicable to that case as well.

named do not allege any connection between him and New York or the United States.  Mr. Al Amoudi also challenges service of process in this case, which was purportedly effected by publication pursuant to the Court's Order, because the publications in which Mr. Al Amoudi's and other defendants' names appeared in an effort to serve them either had extremely limited distribution in Mr. Al Amoudi's home country of Saudi Arabia or were banned entirely therein.

Mr. Al Amoudi therefore moves this Court to dismiss with prejudice the claims asserted against him in the *Burnett*, *Federal Insurance*, and *New York Marine* cases for the following reasons:  (1) Plaintiffs have not established a *prima facie* case for the exercise of personal jurisdiction; (2) there has been insufficient service of Mr. Al Amoudi with process in these cases; and (3) the Complaints fail to state any claim against Mr. Al Amoudi because Plaintiffs have failed to allege facts sufficient to plead proximate cause and other claim elements.  Although dismissal of the *Burnett*, *Federal Insurance* and *New York Marine* Complaints in their entirety, as they pertain to Mr. Al Amoudi, is the appropriate action for this Court to take, in the event that some claims are not dismissed, Plaintiffs should be required under Rule 12(e) and this Court's June 15, 2004 Case Management Order No. 2 to supplement their vague and conclusory allegations against Mr. Al Amoudi with a more definite statement of their claims.

## BACKGROUND

### I.      Mr. Al Amoudi's Personal And Professional Background

Mr. Al Amoudi is an international businessman of Saudi and Ethiopian decent, who makes his home in Saudi Arabia.  He owns a broad portfolio of businesses specializing in fields including petroleum, mining, agriculture, hotels, hospitals, finance, operations, and maintenance. His holdings extend throughout Europe and the Middle East and include the largest integrated petroleum company in Sweden, as well as investments in Norway, Morocco, and Lithuania.

Also, Mr. Al Amoudi has become the second largest employer of Ethiopians after the Ethiopian government.

In addition to being a prominent businessman, Mr. Al Amoudi is a prominent philanthropist in Ethiopia. He has built a 140-bed state-of-the-art health care facility there. He also supports numerous charities in the country. He funds a program that enables Ethiopian children who need heart surgery to receive the medical attention they require, provides scholarships to Ethiopian children to study abroad, and promotes Ethiopian writers, poets, and musicians. Mr. Al Amoudi has been recognized for his charitable work by the World Bank, the United States Department of State, and the royal family of Sweden. As Mr. Al Amoudi's business and philanthropic activities demonstrate, he is a successful private entrepreneur who is dedicated to charitable causes.

## II.   No Allegations Of Contacts Between Mr. Al Amoudi And New York Or The U.S.

Plaintiffs have failed to allege facts sufficient to establish this Court's jurisdiction over Mr. Al Amoudi. In fact, Plaintiffs have alleged no connections between Mr. Al Amoudi, whose full-time residence is in Saudi Arabia, and New York or the United States.

## III.   Service Of Process On Mr. Al Amoudi Is Ineffective

Mr. Al Amoudi was purportedly served in the *Burnett*, *Federal Insurance* and *New York Marine* cases by Plaintiffs' publication of his name (along with numerous others) in the *International Herald Tribune*, *USA Today* and *Al Quds al-Arabi* newspapers.[2] However, as Plaintiffs have admitted, the *International Herald Tribune* has a total circulation of only 199

---

[2] The Court's September 16, 2004 Order granted the Plaintiffs leave to serve specified defendants by publication pursuant to F.R.C.P. 4(f)(3). *See* Minute Entry, *Burnett v. Al Baraka*, Civil Docket for Case No, 1:02-cv-01616-JR ("*Burnett* Case No. 1616 Docket"), 3/25/03; *see also* Order, MDL Docket, #22, 9/16/04. Lists of the names of individuals that Plaintiffs intended to serve by publication, including Mr. Al Amoudi, were printed in these publications and on the www.sept11terrorlitigation.com web site. *See id.*

3

copies in the Kingdom of Saudi Arabia, a nation of more than 24 million people.[3] *USA Today* is
not, as a matter of course, sold or distributed in Saudi Arabia, and *Al Quds al-Arabi*, is "banned
in Saudi Arabia."[4] Thus, these publications are not reasonably calculated to give notice to Mr. Al
Amoudi, a resident of Saudi Arabia, of the existence of the *Burnett*, *Federal Insurance* and *New
York Marine* lawsuits. *See Dusenberry v. United States*, 534 U.S. 161, 168 (2002) (holding that
notice must be "reasonably calculated, under all the circumstances, to apprise interested parties
of the pendency of the action..."). Therefore, Mr. Al Amoudi challenges the effect of the
purported service of process on him.

## IV.     Complaint Allegations Fail To State A Claim Against Mr. Al Amoudi

Plaintiffs have not alleged – and cannot allege – facts showing that Mr. Al Amoudi ever
participated in, ratified, or even knew of any terrorist activity related to the unfortunate events of
September 11, 2001.  Plaintiffs also have not alleged that Mr. Al Amoudi had any advance
knowledge of the events of September 11.

### A.     The *Burnett* Complaint

The *Burnett* Complaint, which names more than 200 defendants, mentions Mr. Al
Amoudi in only one section and nowhere avers any specific conduct by Mr. Al Amoudi. *See
Burnett* Complaint, ¶¶ 550-553.  The Complaint advances three discernible theories of liability
against Mr. Al Amoudi.  First, Plaintiffs generally allege that Mr. Al Amoudi is a partner of
Khalid bin Mahfouz ("Mr. Bin Mahfouz") in a number of businesses and specifically allege that

---

[3] *See* Exhibit A to Plaintiffs' Notice of Service by Publication, Burnett Case No. 1616 Docket, #244, 8/8/03
(*International Herald Tribune* Declaration of Publication by Judith King, June 30, 2003) (listing 2002 circulation by
country); U.S. Department of State, *Background Note, Saudi Arabia*, available at
www.state.gov/r/pa/ei/bgn/3584.htm (Saudi demographic figures).

[4] Mendenhall, "Seeking bin Laden in the Classifieds," MSNBC News, Oct. 3, 2002, available at
www.msnbc.msn.com/id/3340393/.  Plaintiffs do not deny the limited availability of these publications in Saudi
Arabia.  *See* Plaintffs' Memorandum of Law in Opposition to Mohammed Abdullah al Jomaih's Motion to Dismiss
the Claims against Him, *Burnett* Case No. 1616 Docket, #416, 12/2/03.

4

Mr. Al Amoudi is Mr. Bin Mahfouz's partner through Nimir Petroleum Company ("Nimir Petroleum") and Delta Oil Company ("Delta Oil"). *See id.* at ¶ 550. These allegations are insufficient for a well-pleaded claim. Plaintiffs fail to allege any wrongdoing by Mr. Al Amoudi that derives from his alleged relationship with Mr. Bin Mahfouz. Further, the broad, conclusory allegation that Mr. Al Amoudi is Mr. Bin Mahfouz's partner through Nimir Petroleum and Delta Oil is insufficient, and the sections of the Complaint concerning Nimir Petroleum and Delta Oil do not allege that Mr. Al Amoudi has any involvement with or connection to those companies at all. *See id.* at ¶¶ 433-55. In addition, Plaintiffs do not allege any facts linking Nimir Petroleum or Delta Oil to terrorist activity of any kind.[5]

Second, Plaintiffs attempt to link Mr. Al Amoudi to the Al-Haramain Islamic Foundation ("Al-Haramain"), which they allege is a Saudi charity that has exploited its not-for-profit status for the benefit of Osama bin Laden ("Bin Laden") and Al Qaeda in furtherance of international terrorism. *See id.* at ¶ 259. Plaintiffs' only allegation linking Mr. Al Amoudi to Al-Haramain is their allegation that Mr. Al Amoudi was a director of the Al-Haramain branch in Kenya. *See id.* at ¶ 551. Plaintiffs also make the sweeping and insufficient allegation that Al-Haramain has "links" to Al Qaeda and international terrorism. *See id.* Plaintiffs fail to allege any wrongdoing by Mr. Al Amoudi in association with Al-Haramain, and even fail to allege any specific wrongdoing by the Kenya branch of Al-Haramain.

Mr. Al Amoudi has never been a director of Al-Haramain's branch in Kenya, or even a member or supporter of Al-Haramain. Rather, as Mr. Al Amoudi demonstrated to Plaintiffs in 2003, the individual described in the Complaint was actually Salem Sheikh Hussein Al-Amudi ("Salem Al-Amudi"), a resident of Kenya who lived in the Malindi District of the Coast Province

---

[5] Plaintiffs have voluntarily withdrawn their claims against Nimir LLC, the parent company of Nimir Petroleum. *See* Notice of Voluntary Dismissal, MDL Docket, #22, 3/11/04.

of that nation. Salem Al-Amudi died in 1996. Mr. Al Amoudi, a citizen of Saudi Arabia and the son of an Ethiopian mother and Saudi father, has never resided in Kenya and has no personal knowledge of Salem Al-Amudi.

In order to demonstrate that he was not the individual described in the Complaint, Mr. Al Amoudi provided Plaintiffs with the affidavits of (a) the physician attending at the time of Salem Al-Amudi's death, (b) the assistant chief of the municipality, and (c) a brother of Salem Al-Amudi, all of whom attested to his death in June 1996. Mr. Al Amoudi also provided Plaintiffs with documentation, including records from the Non-Governmental Organizations Bureau of Kenya, which confirmed that the individual alleged to have been associated with Al-Haramain was, in fact, Salem Al-Amudi. Following Mr. Al Amoudi's presentation of this evidence, Plaintiffs voluntarily dismissed him from the litigation in December 2003. *See* Plaintiffs' December 19, 2003 Addition and Removal of Parties Pursuant to Case Management Order No. 1 and Federal Rule of Civil Procedure 15(d), *Burnett* Case No. 1616 Docket, #432, 12/19/03.

On January 3, 2005, Plaintiffs reinstated Mr. Al Amoudi as a defendant in the *Burnett* case. *See* Plaintiffs' December 30, 2004 Addition/Removal of Parties Pursuant to Case Management Order No. 2 and Federal Rule of Civil Procedure 15(d), MDL Docket, #602, 1/3/05. However, Plaintiffs have neither amended the *Burnett* Complaint to include any additional allegations concerning Mr. Al Amoudi, nor provided any information to suggest why Mr. Al Amoudi has been reinstated as a defendant in the case. Thus, allegations linking Mr. Al Amoudi to the events complained of in the *Burnett* Complaint beyond those that Mr. Al Amoudi already disproved are conspicuously absent. As such, the basis on which Mr. Al Amoudi has been joined in this case is not clear.

Third, Plaintiffs allege in the *Burnett* Complaint that Mr. Al Amoudi is an aider, abettor, co-conspirator, and/or material sponsor of international terrorism, Al Qaeda, and Bin Laden. *See Burnett* Complaint, ¶ 553. The Complaint alleges no specific facts that can be taken to form the basis for this allegation.

**B.     The *Federal Insurance* And *New York Marine* Complaints**

The allegation that Mr. Al Amoudi is an aider, abettor, co-conspirator, and/or material sponsor of international terrorism, Al Qaeda, and Bin Laden is the only allegation against Mr. Al Amoudi that Plaintiffs allege in the *Federal Insurance* and *New York Marine* Complaints. *See Federal Insurance* Complaint, ¶ 66, *New York Marine* Complaint, ¶ 45. The *Federal Insurance* and *New York Marine* Complaints fail entirely to allege any specific facts concerning Mr. Al Amoudi.

On the basis of these vague and conclusory allegations, Plaintiffs in the *Burnett*, *Federal Insurance* and *New York Marine* cases together purport to state claims against Mr. Al Amoudi under the Torture Victim Protection Act, the Alien Tort Claims Act, the Anti-Terrorism Act, as well as claims for wrongful death, negligence, survival, negligent and/or intentional infliction of emotional distress, conspiracy, aiding and abetting, violations of the Racketeer Influenced and Corrupt Organizations Act, trespass and assault and battery.

**ARGUMENT**

**I.     This Court Lacks Personal Jurisdiction Over Mr. Al Amoudi**

The burden is on the Plaintiffs to prove that this Court has jurisdiction over Mr. Al Amoudi. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). To do so, Plaintiffs must make a *prima facie* showing of facts sufficient to support jurisdiction. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). Accordingly,

conclusory allegations or "argumentative inferences" are not sufficient to plead personal

jurisdiction. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)

(*citing Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). Rather, this

showing must include a demonstration of at least "minimum contacts [with the forum]…such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice."[6] *U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001)

(*quoting Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal qutations omitted); *see Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

     Plaintiffs here have failed to allege any facts that would enable this Court to exercise

personal jurisdiction over Mr. Al Amoudi.  As such, the *Burnett*, *Federal Insurance* and *New*

*York Marine* Complaints should be dismissed as to Mr. Al Amoudi pursuant to Federal Rule of

Civil Procedure 12(b)(2).

## A.    Plaintiffs Have Failed To Allege Minimum Contacts With New York Or The United States

     Plaintiffs have failed to allege facts that show that Mr. Al Amoudi has minimum contacts

with New York or the United States, such that the exercise of personal jurisdiction over Mr. Al

Amoudi is reasonable. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945);

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  Personal

jurisdiction under the New York long-arm statute requires minimum contacts with New York

pursuant to the Fourteenth Amendment of the United States Constitution. *See Chew v. Dietrich*,

143 F.3d 24, 28 n.4 (2d Cir. 1998).  The exercise of personal jurisdiction under Federal Rule of

---

[6] Further, as Mr. Al Amoudi is not a United States citizen, this Court must exercise special care in determining whether there is personal jurisdiction over him. As the Supreme Court has stated, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114-115 (internal citiation and quotation omitted).

Civil Procedure 4(k) requires contacts with the United States as a whole pursuant to the Fifth
Amendment of the Constitution. *See id.* Plaintiffs have failed to allege facts sufficient to
establish minimum contacts between Mr. Al Amoudi and New York or the United States, and
imposing personal jurisdiction over him would not be reasonable pursuant to the due process
requirements of the Constitution.

## B.    Plaintiffs Have Not Alleged That Mr. Al Amoudi Purposefully Directed Any Tortious Activity Toward The United States

One theory by which a plaintiff may be able to establish that a federal court sitting in
diversity has personal jurisdiction over a foreign defendant is by showing that the defendant
engaged in a tortious act elsewhere that was *"purposefully directed toward the forum State."*
*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality opinion); *Burger
King*, 471 U.S. at 475 (requiring "actions of the defendant *himself*"). These actions also must
have been "expressly aimed" at the United States. *See Calder v. Jones*, 465 U.S. 783, 789
(1984). This Court has already dismissed claims against some defendants in the cases arising out
of the events of September 11 on this basis. *See* Opinion and Order, MDL Docket, 1/18/05,
#632, at 32 ("1/18/05 Order") ("Plaintiffs must allege some personal or direct involvement by the
Defendants in the conduct giving rise to their claims.").

Plaintiffs make no allegations asserting that Mr. Al Amoudi took any actions that were
purposefully directed or expressly aimed at the United States. Rather, Mr. Al Amoudi's inclusion
in the *Burnett* case appears to be based entirely on an alleged business relationship with Mr. Bin
Mahfouz and his alleged directorship of the Kenya branch of Al-Haramain – activities that, even
if taken as true for purposes of this motion, do not touch the United States. In addition, there are
no substantive facts alleged at all in either the *Federal Insurance* or *New York Marine*

9

Complaints. Therefore, there is no factual basis on which to find personal jurisdiction over Mr. Al Amoudi under the "purposefully directed" theory.

### C.   Plaintiffs Cannot Establish Personal Jurisdiction Based On Their Conspiracy Allegation

Plaintiffs also cannot establish personal jurisdiction over Mr. Al Amoudi on a conspiracy theory, which is premised on imputing the acts of one conspirator, over whom the court has jurisdiction, to other participants in the conspiracy. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998). Although New York courts have recognized a limited theory of conspiracy jurisdiction pursuant to New York's long-arm statute,[7] "the bland assertion of conspiracy…is insufficient to establish personal jurisdiction." *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975); *see Nweke v. Prudential Ins. Co.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) ("Conclusory allegations are insufficient to meet the somewhat stringent pleading requirements of this Circuit when conspiracy is alleged." (internal quotation and citation omitted)). Rather, to establish jurisdiction on a conspiracy theory, a plaintiff must allege a substantive tort as well as the elements of conspiracy. *See Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991).

As explained further in Section III(B)(8), *infra*, Plaintiffs have failed to allege any specific facts indicating that Mr. Al Amoudi was a member of a conspiracy. No corrupt agreement between Mr. Al Amoudi and Mr. Bin Mahfouz, Nimir Petroleum and Delta Oil has

---

[7] New York's long-arm statute provides, in relevant part, that "(a) . . . a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . (2) commits a tortious act within the state . . ." N.Y.C.P.L.R. § 302(a)(2) (McKinney 2002). New York courts have defined "agent" to include a defendant's co-conspirators under certain circumstances. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991); *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 806-07 (S.D.N.Y. 1975).

been alleged. Similarly, the *Burnett* Complaint allegation that Mr. Al Amoudi was a director of the Kenya branch of Al-Haramain – an allegation that is flatly false – fails to form the basis for a conspiracy claim because no corrupt agreement between Mr. Al Amoudi and Al-Haramain has been alleged.

In addition, the *Burnett* Complaint fails to allege any act by Mr. Al Amoudi, or anyone else, that is in furtherance of a conspiracy to commit any of the tort claims set forth therein. As this Court previously ruled, the overbroad and general claim by Plaintiffs that "all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient.[8] *See* 1/18/05 Order, at 29. As the *Federal Insurance* and *New York Marine* Complaints do not include any factual allegations concerning Mr. Al Amoudi at all, there is no basis to find that Plaintiffs have stated a conspiracy claim against Mr. Al Amoudi in those cases.

### D.    The Anti-Terrorism Act Does Not Confer Personal Jurisdiction Over Mr. Al Amoudi

Although the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2334, contains a provision relating to personal jurisdiction, Plaintiffs cannot rely on this provision to assert personal jurisdiction over Mr. Al Amoudi because they did not serve him in a manner that would enable

---

[8] This Court held in its January 18, 2005 Order that Plaintiffs have failed to allege facts that establish a *prima facie* case of the Court's personal jurisdiction over Abdulrahman bin Mahfouz, a shareholder and the CEO of Nimir Petroleum, and another defendant in the *Burnett* case. Plaintiffs based their personal jurisdiction arguments concerning Abdulrahman bin Mahfouz on the claim that he was "a participant in the conspiracy of terror that purposefully directed its conduct at the United States and included the September 11 hijackers. Plaintiffs also [claimed] that he has business interests in the United States." *See* 1/18/05 Order, at 44. The Court held that "[t]he *Burnett* complaint does not contain any specific actions by Mr. bin Mahfouz from which the Court could infer that he purposefully directed his activities at the United States." *Id.* Accordingly, the Court dismissed the *Burnett* Complaint allegations against Abdulrahman bin Mahfouz for lack of personal jurisdiction. *See id.* Similarly, no allegations of specific actions by Mr. Al Amoudi have been alleged on which basis the Court could find personal jurisdiction over him and, therefore, the *Burnett* Complaint should be dismissed as to Mr. Al Amoudi as well.

The factual allegations made against Abdulrahman bin Mahfouz and Mr. Al Amoudi are similar in nature and therefore the legal arguments concerning the reasons why the claims against them should be dismissed are equally applicable to both defendants. For that reason, Mr. Al Amoudi incorporates, as if set forth fully herein, the Motion of Defendant Abdulrahman bin Mahfouz to Dismiss Plaintiffs' Third Amended Complaint With Prejudice, filed herein on March 19, 2004.

the ATA to confer jurisdiction. The ATA allows for service of process "in any district where the

defendant resides, is found, or has an agent." 18 U.S.C. § 2334. The ATA contacts analysis only

applies, however, "where service of process has been effected pursuant to [the] federal statute

authorizing nationwide or worldwide service." *United States Sec. & Exch. Comm'n v. Carillo*,

115 F.3d 1540, 1543 (11th Cir. 1997) (addressing same issue under the Securities Exchange Act).

As Plaintiffs attempted to serve Mr. Al Amoudi by publication pursuant to this Court's

order, the blanket invocation of the ATA's nationwide service of process provision is not

applicable to Mr. Al Amoudi. Moreover, as this Court has ruled with respect to other defendants,

where defendants challenge the manner in which they were served or they were not served in the

United States – as set forth in Section II, *infra* – the ATA cannot confer personal jurisdiction over

the defendants. *See* 1/18/05 Order, at 30. Accordingly, this Court does not have personal

jurisdiction over Mr. Al Amoudi based on the ATA.

## II.     Mr. Al Amoudi Was Not Properly Served

Service of Mr. Al Amoudi in the *Burnett*, *Federal Insurance* and *New York Marine* cases

was insufficient. The supposed service in these cases was by publication in newspapers and

journals selected by the plaintiffs, which had either seriously limited distribution in Saudi Arabia,

the country in which Mr. Al Amoudi lives, or are banned entirely in that country. Thus,

publication of Mr. Al Amoudi's name in the *International Herald Tribune*, *USA Today*, and *Al

Quds al-Arabi* was not reasonably calculated to provide service to Mr. Al Amoudi. *See

Dusenberry*, 534 U.S. at 168 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950) for the proposition that notice must be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action..."). Accordingly, the

Complaints should be dismissed as to Mr. Al Amoudi for insufficient service of process, pursuant to Federal Rule of Civil Procedure 12(b)(5).

## III.   The Complaints Fail To State Any Claim Against Mr. Al Amoudi Upon Which Relief Can Be Granted

Plaintiffs' claims against Mr. Al Amoudi must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have not and cannot state any set of facts that demonstrate proximate cause and other elements of their claims, and therefore they are not entitled to relief thereon. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A.   Plaintiffs Fail To Allege That Mr. Al Amoudi Proximately Caused Injury

Each of the substantive claims that Plaintiffs bring against Mr. Al Amoudi requires proof of proximate cause.[9] However, the *Burnett*, *Federal Insurance* and *New York Marine* Complaints fail to allege facts sufficient to state a claim that Mr. Al Amoudi proximately caused Plaintiffs' alleged injuries. As such, Plaintiffs' claims against Mr. Al Amoudi should be dismissed.

To properly plead causation, a plaintiff must allege facts to show both that the injury would not have occurred "but for" the alleged wrongdoing and that the alleged conduct was a substantial factor leading to the injury.[10] *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999). Plaintiffs fail to allege a specific factual basis for any claim against Mr. Al Amoudi, and Plaintiffs' vague and conclusory allegations are

---

[9] Because these claims can be dismissed under general legal principles, a comprehensive choice-of-law analysis is unnecessary: every forum requires that plaintiffs establish causation. On state-law issues, New York's choice of law rules indicate that New York, Pennsylvania, or Virginia law likely would apply, depending on the location of the event that caused the alleged injuries. *See Mascarella v. Brown*, 813 F. Supp. 1015, 1018-20 (S.D.N.Y. 1993); *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197-98 (Ct. App. 1985).

[10] *See, e.g., Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (liability for injury "by reason of" defendant's conduct requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well;" proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged"); *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (defendant's acts must have been "a substantial factor" leading to the injury, and the injury must have been "reasonably foreseeable or anticipated as a natural consequence" of the acts) (internal citation omitted).

13

insufficient to state a claim against Mr. Al Amoudi. "[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened."[11] *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (internal quotation and citation omitted). For these and other pleading failures discussed below, the three Complaints must be dismissed for failure to state a claim.

**B.     Plaintiffs Fail To Allege Elements Of Claims Against Mr. Al Amoudi**

**1.     Torture Victim Protection Act Claims**[12]

Plaintiffs fail to state claims against Mr. Al Amoudi under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, which provides a cause of action against "[a]n individual who, under actual or apparent authority, or color of law, or any foreign nation...subjects an individual to torture...or...extrajudicial killing...."[13] 28 U.S.C. § 1350, note § 2(a). To demonstrate that a private actor has acted under "color of law" for purposes of the TVPA, a plaintiff must show that he acted "together with state officials or with significant aid" therefrom. *Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995); *see Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 23 (D.D.C. 2000) (holding that "the TVPA contains explicit language requiring state action" and applying the "substantial degree of cooperative action" test to find no "state actor" status under the ATCA and

---

[11] *See, e.g., In re Am. Express Co. Shareholder Litig.*, 39 F.3d at 400 n.3 (conclusory allegations of proximate cause "need not be accepted as true for purposes of ruling on a motion to dismiss"); *Citibank N.A. v. K-H Corp.*, 968 F.2d 1489, 1495-96 (2d Cir. 1992) (affirming dismissal of securities fraud claim because plaintiff did "not allege facts that support its allegation that there is a causal connection between the fraud allegation and the subsequent loss that it suffered").

[12] Count Two of the *Burnett* Complaint; Count Six of the *Federal Insurance* Complaint.

[13] *See* S. Rep. No. 102-249, 102d Cong., 1st Sess., 1991 WL 258662, at 9 (Nov. 26, 1991) (explaining that TVPA was intended to impose liability on defendants who "actually committed those [proscribed] acts" and those who had "command responsibility" for primary tortfeasors).

then applying this conclusion to the TVPA claim as well).[14]  Plaintiffs' claims under the TVPA

must fail as a matter of law because Plaintiffs have made no specific allegations that Mr. Al

Amoudi acted under color of law, they have not alleged that he did so while purportedly

committing acts of torture or extrajudicial killing and they fail to allege proximate cause.

## 2.    Claim Under The Alien Tort Claims Act[15]

To the extent that the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, provides a

cause of action, a defendant must have caused the plaintiff's injury. *See Bigio v. Coca-Cola Co.*,

239 F.3d 440, 448 (2d Cir. 2000).  Here, Plaintiffs' ATCA claims fail as a matter of law because

Plaintiffs have made no specific allegations that Mr. Al Amoudi proximately caused Plaintiffs'

alleged injuries.  In addition, to state a claim under the ATCA, Plaintiffs who qualify as "aliens"

under the Act must allege a "violation of the law of nations or a treaty of the United States" by

Mr. Al Amoudi. *Bao Ge*, 201 F. Supp. 2d at 19-30.  Plaintiffs have failed to do so.

Also, private actors such as Mr. Al Amoudi may be held liable under the ATCA only for a

handful of "offenses of universal concern" under the law of nations. *See Kadic*, 70 F.3d at 240.

Mr. Al Amoudi is not alleged to have planned, directed, or committed any acts in violation of the

law of nations.[16]  Plaintiffs in no way connect Mr. Al Amoudi to the September 11 attacks, nor do

their allegations suggest that he knowingly and intentionally provided support for, or agreed to

---

[14] The legislative history of the TVPA confirms that the Act's language was intended to "'make[] clear that the plaintiff must establish some governmental involvement in the torture or killing to prove a claim' and the statute 'does not attempt to deal with torture or killing by purely private groups.'" *Kadic*, 70 F.3d at 243 (citing H.R. Rep. No. 102-367 at 5 (1991), *reprinted in* 1992 U.S.C.C.A.N. 84, 85-86).

[15] Count Four of the *Burnett* Complaint.

[16] The U.S. Court of Appeals for the Second Circuit has rejected the proposition that "aircraft-related crime" is among the "near-unique offenses uniformly recognized by civilian nations as an offense against the Law of Nations." *United States v. Yousef*, 327 F.3d 56, 103-04 (2d Cir. 2003).

further their commission.  For these reasons, Plaintiffs' ATCA claim against Mr. Al Amoudi must

be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[17]

### 3.   **Wrongful Death**[18]

Under New York law, a wrongful death claim requires the plaintiff to plead and prove that

a defendant engaged in a wrongful act that proximately caused the death.  *See* N.Y. Est. Powers

& Trusts § 5-4.1(1); *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 372 (S.D.N.Y. 1996)

(dismissing wrongful death claim because defendant's conduct could not be proximate cause of

plaintiff's injury).  Plaintiffs' theory of indirect involvement in the September 11 attacks through

financing and other support cannot, as a matter of law, sustain a claim for wrongful death

because the law does not support a wrongful death claim against those who are only alleged to

have created conditions that allowed others to perpetrate those heinous crimes.  *See Jantzen v.*

*Leslie Edelman of N.Y., Inc.*, 614 N.Y.S.2d 744, 744-45 (App. Div. 1994) (rejecting wrongful

death claim against defendant for selling a gun that was later used to kill plaintiff's decedent).

Plaintiffs' wrongful death claims therefore must fail as a matter of law because Plaintiffs made

no specific allegations that Mr. Al Amoudi caused Plaintiffs' deaths.

---

[17] Courts have adjudicated motions to dismiss ATCA claims under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  *Compare Bao Ge*, 201 F. Supp. 2d at 19 (operating pursuant to Rule 12(b)(1)), *with Abdullahi v. Pfizer, Inc.*, No. 01CIV.8118, 2002 WL 31082956, at *3 (S.D.N.Y. Sept. 17, 2002) (operating pursuant to Rule 12(b)(6)).  As a practical matter, the result here should be the same under either rule.

[18] Count Five of the *Burnett* Complaint; Count Two of the *Federal Insurance* Complaint.

### 4.   Negligence and Negligent Infliction and/or Intentional Infliction of Emotional Distress[19]

To establish a *prima facie* case of negligence, Plaintiffs must demonstrate that (1) Mr. Al Amoudi owed Plaintiffs a duty of care; (2) Mr. Al Amoudi breached that duty; and (3) the breach proximately caused Plaintiffs' injury. *See Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 152 (S.D.N.Y. 1982); *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (Ct. App. 1985). Here, Plaintiffs' negligence claims must fail as a matter of law on each element.

"[T]he touchstone of any negligence action is the existence of a duty running from a defendant to a plaintiff." *Stratton Group, Ltd. v. Sprayregen*, 466 F. Supp. 1180, 1188 (S.D.N.Y. 1979). For a negligent infliction of emotional distress claim, the duty "must be specific to the plaintiff[s] and not some amorphous, free-floating duty to society." *Campoverde v. Sony Pictures Entm't*, No. 01CIV.7775, 2002 WL 31163804, at *14 (S.D.N.Y. Sept. 30, 2002) (*quoting Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). Without such a duty, "as a matter of law, no liability can ensue." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997); *see Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 284 (S.D.N.Y. 2003) (dismissing negligence claim for failure to allege the existence of a duty); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 571 (S.D.N.Y. 1996).

Plaintiffs do not attribute any specific duty of care to Mr. Al Amoudi. Instead, Plaintiffs assert that the "Defendants were under a general duty not to injure, murder or cause to be injured or murdered, not to commit or sponsor criminal or tortious acts, endanger lives, foster terror and/or engage in activity that would foreseeably lead to the personal injury and/or death of

---

[19] Negligence claims are alleged in Count Six of the *Burnett* Complaint; Count Eleven of the *Federal Insurance* Complaint; and Count Six of the *New York Marine* Complaint. Negligent and/or intentional infliction of emotional distress are alleged in Count Eight of the *Burnett* Complaint and Count Five of the *Federal Insurance* Complaint.

Plaintiffs." *Burnett* Complaint, ¶ 666. This abstract statement is insufficient as a matter of law. Indeed, on the basis of this allegation, this Court has already dismissed negligence and negligent infliction of emotional distress claims against other defendants in the consolidated litigation, holding that "[t]he complaints presently before the Court [,including the *Burnett* and *Federal Insurance* Complaints,] do not allege or identify a duty owed to Plaintiffs." *See* 1/18/05 Order, at 54-55.

In addition, causation is an essential element of claims of both intentional and negligent infliction of emotional distress. Intentional infliction of emotional distress requires allegations and proof that (1) the defendant caused severe emotional distress, (2) intentionally and recklessly, (3) by extreme and outrageous conduct. *See Howell v. New York Post Co., Inc.*, 596 N.Y.S.2d 350, 353 (Ct. App. 1993). To prevail on claims of intentional infliction of emotional distress, Plaintiffs also must allege and prove that the defendant exhibited "extreme and outrageous conduct" that "go[es] beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Campoverde*, 2002 WL 31163804, at *11; *see Graham v. Guilderland Cent. School Dist.*, 681 N.Y.S.2d 831, 832 (App. Div. 1998).

Further, Plaintiffs must plead that Mr. Al Amoudi's conduct was "intentionally directed at the plaintiff...." *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1048 (S.D.N.Y. 1993) (dismissing intentional infliction claim for failure to adequately plead specific intent) (quotation omitted). Plaintiffs fail to allege that Mr. Al Amoudi knowingly participated in the September 11 planning or attacks or that he engaged in any conduct intentionally directed at Plaintiffs that caused them to suffer emotional distress.[20]

---

[20] New York courts "impos[e] a very high threshold" for emotional distress claims. *Campoverde*, 2002 WL 31163804, at *11 (citing *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232, 236 (1983); *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

### 5.    Civil RICO Claims[21]

The civil liability section of the Racketeer Influenced and Corrupt Organizations Act

("RICO") provides that "[a]ny person injured in his business or property *by reason of* a violation

of section 1962 of this chapter may [sue for treble damages]."  18 U.S.C. § 1964(c) (emphasis

added).  First, as made clear by the language of the statute, Plaintiffs cannot as a matter of law

state a claim under RICO for personal injuries, as such claims are not cognizable under RICO.[22]

*See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 521 (1985) (holding that "compensation for

[personal] injury is barred...by RICO's exclusion of personal injury claims"); *Hollander v. Flash

Dancers Topless Club*, 340 F. Supp. 2d 453, 458 (S.D.N.Y. 2004).  Thus, Plaintiffs' civil RICO

claims for alleged personal injuries must fail.

Second, the Supreme Court has held that the phrase "by reason of" in the RICO statute

requires a showing of proximate cause; that is, there must be a "direct relation between the injury

asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268

(1992).  Moreover, plaintiffs asserting RICO claims must allege that the injury was proximately

caused "by the conduct constituting the violation."[23] *Sedima,* 473 U.S. at 496.  Given that

Plaintiffs have made no specific allegations of racketeering activity, that Mr. Al Amoudi invested

proceeds of racketeering activity or that such investment caused Plaintiffs' alleged injuries,

Plaintiffs' RICO claims fail as a matter of law.

---

[21] Counts Eleven, Twelve, and Thirteen of the *Burnett* Complaint; Count Seven of the *Federal Insurance* Complaint; Count Three of the *New York Marine* Complaint.

[22] The District of Columbia ruled to this effect when ruling on motions to dismiss in the *Burnett* case before the case was transferred to this Court. *See* Memorandum Opinion, *Burnett* Case No. 1616 Docket, # 224, 7/25/03, at 28.

[23] Courts have repeatedly held in RICO cases that such a "'causation requirement[] [is an] aspect[] of standing, rather than [an] element[] of the civil RICO plaintiff's prima facie case.'" *Chisolm v. Transouth Fin. Corp.*, 95 F.3d 331, 337 n.6 (4th Cir. 1996) (citing *Sedima,* 473 U.S. at 496-97); *see Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990).  Thus, civil RICO plaintiffs must sufficiently allege proximate causation in order to secure their standing. *See Lerner v. Fleet Bank, NA*, 318 F.3d 113, 122 (2d Cir. 2003) (affirming dismissal of RICO claims for lack of standing).

6.     **Anti-Terrorism Act Claims**[24]

The Anti-Terrorism Act ("ATA") provides a cause of action for a "national of the United States injured in his or her person or property *by reason of* an act of international terrorism." 18 U.S.C. § 2333. As with the civil RICO statute, the phrase "by reason of" has been interpreted to require a showing of proximate cause. *See Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1012 (7th Cir. 2002) (noting that the Supreme Court in *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992), has interpreted identical language to require a showing of proximate cause).

Plaintiffs assert a claim against Mr. Al Amoudi under the ATA on the theory that he was a "material sponsor" of the September 11 attacks.[25] *See Burnett* Complaint, ¶ 553. Financial support for terrorist acts or terrorist organizations provided "knowingly and intentionally" can be "an act of international terrorism" for purposes of civil ATA liability. *Boim*, 291 F.3d at 1013-16. As this Court has ruled previously, "[t]o adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." 1/18/05 Order, at 52-53. Plaintiffs have not provided any facts to support the allegation that they were injured "by reason of" Mr. Al Amoudi's alleged "material support," and therefore their ATA claims must fail as a matter of law.[26]

---

[24] Count Three of the *Burnett* Complaint; Count Ten of the *Federal Insurance* Complaint; Count Five of the *New York Marine* Complaint.

[25] As construed by the Seventh Circuit in *Boim*, the ATA's criminal provisions, which prohibit providing material support or resources in furtherance of terrorist acts or to designated terrorist organizations, can inform the definition of "international terrorism" as that term appears in § 2333. *See Boim*, 291 F.3d at 1013-16. "Material support or resources" is defined to include "'currency or monetary instruments,…lodging, training,…weapons…or other physical assets.'" 18 U.S.C. § 2339A(b).

[26] Even if Plaintiffs could allege a direct connection between Mr. Al Amoudi's acts and the events of September 11, which they cannot, a direct connection between a defendant's act and a plaintiff's injury does not suffice, in and of itself, to create proximate cause. *See Laborers Local 17 Health & Benefit Fund*, 191 F.3d at 235-36. Rather, proximate causation under the "by reason of" formulation, as interpreted in RICO cases, also requires the defendant's act to be "a substantial factor in the sequence of responsible causation" and the plaintiff's injury to

### 7.    Trespass[27]

A claim for the tort of trespass requires that the unlawful invasion be the "direct and immediate result" of some act by the defendant or was, at a minimum, proximately caused by the defendant. *See* Restatement (Second) of Torts § 217 cmt. d; *see also In re Air Crash Disaster At Cove Neck, Long Island, New York on January 25, 2990*, 885 F. Supp. 434, 440 (E.D.N.Y. 1995) (invasion must be "the immediate or inevitable consequence of" the defendant's misconduct); *School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 807 (Sup. Ct. 2003) (to state a cause of action for trespass to chattels, the defendant must have caused harm to the property knowing it was "substantially certain" to result from his actions). Here, Plaintiffs' trespass claims must fail because no allegation has been made that Mr. Al Amoudi proximately caused any unlawful invasion.

### 8.    Conspiracy[28]

Conspiracy is a theory of liability rather than a separate cause of action. *See Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102 (N.Y. Ct. App. 1986) ("[A] mere conspiracy to commit a [tort] is never of itself a cause of action.") (citation omitted). Plaintiffs must provide "specific facts suggesting that there was a mutual understanding among the conspirators to take action directed toward an unconstitutional end." *Pollack v. Nash*, 58 F. Supp. 2d 294, 302

---

be "reasonably foreseeable or anticipated as a natural consequence" of that act. *Hecht v. Commercial Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990) (internal quotation omitted). The "inquiry in determining the existence of proximate cause is whether the conduct has been *so significant and important* a cause that the defendant should be held responsible." *Maiz v. Virani*, 253 F.3d 641, 675 (11th Cir. 2001) (emphasis added).

The acts attributed to Mr. Al Amoudi cannot be considered either a reasonably foreseeable cause of the September 11 attacks or a substantial factor in the responsible chain of their causation. Plaintiffs' allegations against Mr. Al Amoudi support no inference of knowing or intentional sponsorship of terrorism of any kind. Plaintiffs allege no connection whatsoever between Mr. Al Amoudi and the September 11 attacks. Indeed, Plaintiffs do not even allege that Mr. Al Amoudi had advance knowledge of the events of September 11.

[27] Count One of the *Federal Insurance* Complaint; Count One of the *New York Marine* Complaint.

[28] Count Nine of the *Burnett* Complaint; Count Seven of the *Federal Insurance* Complaint; Count Two of the *New York Marine* Complaint.

(S.D.N.Y. 1999) (citations omitted); *see Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir.

1993) ("[W]hile a plaintiff should not plead mere evidence, he should make an effort to provide

some details of time and place and the alleged effect of the conspiracy."). It is not sufficient to

list people or entities and simply assert that each of them is a member of a conspiracy, without

any allegation as to what the agreement was, who made the agreement, what was done in

furtherance of the agreement, or how the agreement's goals were known to all.[29] *See Ostrer v.*

*Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (conclusory, vague and general allegations of

conspiracy insufficient). As explained in Section I(C), *supra*, in this case, Plaintiffs have failed

to allege an agreement to an unlawful purpose; that Mr. Al Amoudi agreed to the unlawful

purpose; the identity of the other parties to the agreement; and any specific acts by any of the

parties to the agreement in furtherance thereof.

### 9.   Aiding and Abetting[30]

Like civil conspiracy, under New York law, aiding and abetting is a theory of liability, not

an independent tort. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (Ct. App. 1999).

Establishing liability for aiding and abetting requires a showing that the defendant had

knowledge of the underlying tort and provided "substantial assistance" in its commission, and

requires a showing of proximate cause to connect the defendant's "substantial assistance" with

---

[29] *Hattley v. Goord*, No. 02 cv 2339, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (granting dismissal where complaint did not contain "a single allegation as to when, where or how" the alleged conspiracy was formed); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 125 (E.D.N.Y. 2000) (conclusory allegation of conspiracy without reference to specific facts which might support a conspiracy not sufficient); *Campoverde*, 2002 WL 31163804, at *5 ("legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss).

[30] Count Ten of the *Burnett* Complaint; Count Nine of the *Federal Insurance* Complaint; Count Four of the *New York Marine* Complaint.

22

the accomplishment of the underlying tort.[31] *See* Restatement (Second) of Torts § 876, cmt d;

*see also Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (Sup Ct. 1994).

Under the aiding and abetting theory of liability, to determine whether the amount of

alleged assistance is "substantial," the amount of assistance must be compared to the total efforts

required to commit the primary tort, *i.e.* the September 11 attacks.[32] Here, Plaintiffs merely

make the conclusory allegation that Mr. Al Amoudi has aided and abetted the commission of the

September 11 attacks. They fail to allege facts sufficient to demonstrate Mr. Al Amoudi's alleged

assistance, and they certainly fail to allege that his assistance was substantial. *See, e.g., Atlanta*

*Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (affirming dismissal of

aiding and abetting claim for lack of allegations that defendant assisted in the accomplishment of

alleged illegal scheme).

## 10.   <u>Assault and Battery</u>[33]

Plaintiffs' assault and battery claim must fail because Plaintiffs do not allege that Mr. Al

Amoudi was in any way involved in the planning or execution of the September 11 attacks.

Absent such an allegation, Mr. Al Amoudi cannot be directly liable for assault and battery. *See*

N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney 2003); *see also Girden v. Sandals Int'l.*, 262

F.3d 195, 203 (2d Cir. 2001); *Chong v. New York Transit Auth.*, 441 N.Y.S.2d 24, 25-26 (App.

---

[31] Failure to sufficiently allege actual knowledge will result in dismissal. *See Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F. Supp. 2d 245, 252 (S.D.N.Y. 2003); *Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, No. 02civ2900, 2002 WL 31819217, at *5-6 (S.D.N.Y. Dec. 16, 2002) (stating that on claim of aiding and abetting under New York law, allegations that the defendant had constructive knowledge and/or "recklessly disregarded" or "should have known" of the improper behavior are insufficient to defeat a motion to dismiss).

[32] *See In re TMJ Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1496 (8th Cir. 1997) (holding that a dozen tests of silicone, use of some facilities, and other similar activities was "not significant assistance, especially when compared to the extensive efforts necessary to bring the idea for a TMJ implant to fruition."). Even where the assistance provided "is necessary for the accomplishment" of the primary tort, the claim nonetheless should be dismissed if the conduct itself is only a minor factor. *See Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 163 (3d Cir. 1973).

[33] Count Four of the *Federal Insurance* Complaint.

Div. 1981). Any liability for assault and battery therefore must rest on a joint tort theory – either conspiracy or aiding and abetting. However, neither conspiracy nor aiding and abetting liability is sustainable where there is no allegation that the defendant knew or intended to aid in the commission of the underlying tort. *See Nat'l Westminster Bank USA v. Weksel*, 511 N.Y.S.2d 626, 629 (App. Div. 1987). Here, Plaintiffs' conspiracy and aiding and abetting claims must fail because Plaintiffs failed to allege that Mr. Al Amoudi knew or intended to aid in the commission of a tort, or that Mr. Al Amoudi proximately caused Plaintiffs' alleged injuries. For these reasons, Plaintiffs' assault and battery claims also must fail.

### 11.   Survival Claims[34]

A survival statute is a procedural device by which an individual's estate may pursue his cause of action for suffering before his death. *See* N.Y. Est. Powers & Trusts § 11-3.2(b); *see also Doe v. State*, 588 N.Y.S.2d 698, 709 (Ct. Cl. 1992). To proceed on a survival claim, the estate must establish all the elements of the underlying tort, including establishing that the plaintiff committed a wrongful act that caused the decedent's injuries. *See Lawrence v. Walsh*, 187 N.Y.S.2d 71, 74 (App. Div. 1979). Here, Plaintiffs may not use survival as a procedural device because Plaintiffs have made no specific allegations that any underlying tort by Mr. Al Amoudi caused Plaintiffs' alleged injuries.

### 12.   Punitive Damages[35]

Plaintiffs do not have a separate cause of action for punitive damages. Rather, a right to punitive damages depends on pleading and proving an underlying tort. *See Rocanova v.*

---

[34] Count Seven of the *Burnett* Complaint; Count Three of the *Federal Insurance* Complaint.

[35] Count Fourteen of the *Burnett* Complaint; Count Twelve of the *Federal Insurance* Complaint; Count Seven of the *New York Marine* Complaint.

*Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 616 (1994). Here, Plaintiffs do not have a right to punitive damages because Plaintiffs' underlying claims fail.

## IV.   This Court Should Compel Plaintiffs To File A More Definite Statement

While, for the reasons set forth above, this Court should dismiss in their entirety the *Burnett*, *Federal Insurance* and *New York Marine* Complaints as they pertain to Mr. Al Amoudi, should any claims survive Mr. Al Amoudi's motion to dismiss, Plaintiffs should be required to file a more definite statement of those claims. As detailed in this memorandum, the *Burnett*, *Federal Insurance* and *New York Marine* Complaints make only general allegations against Mr. Al Amoudi and fail to provide him with sufficient specificity to inform him of how it is alleged that he is liable or, with respect to the *Burnett* case, why he has been reinstated as a defendant. Plaintiffs' complaints are so vague and ambiguous that responsive pleadings cannot be framed appropriately.[36] Accordingly, an order directing Plaintiffs' to serve a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) and the Court's Case Management Order No. 2[37] is appropriate.[38]

---

[36] Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, that statement still must be comprehensive enough to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Humphreys v. Nager*, 962 F. Supp. 347, 351 (E.D.N.Y. 1997).

[37] In Case Management Order No. 2, the Court ordered that "[w]hen a defendant as to whom no allegations have been asserted – as in the *Federal Insurance* and *New York Marine* Complaints – requests a more definite statement . . ., plaintiffs shall file the requested statement within 30 days." Case Management Order No. 2, MDL Docket, #247, 6/16/04, ¶ 12.

[38] The need for sufficient pleading is especially great in this case. As the United States District Court for the District of Columbia, the Court in which the *Burnett* Complaint was initially filed and in which the case was pending for almost a year and a half until it was transferred to this Court, has noted that "given the extreme nature of the charge of terrorism," fairness requires "extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he -- or it -- does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [*Burnett* Complaint]." Memorandum and Opinion, *Burnett* Case No. 1616 Docket, 7/25/03.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against Mr. Al Amoudi should be dismissed. With respect to any claims that are not dismissed, Mr. Al Amoudi's motion for a more definite statement under Rule 12(e) and the Court's Case Management Order No. 2 should be granted.

Dated:  April 6, 2005                    Respectfully submitted,

                                         AKIN GUMP STRAUSS HAUER & FELD LLP


                                         James d'Auguste (JD 7373)
                                         590 Madison Avenue
                                         New York, New York 10022
                                         (212) 872-1000
                                         (212) 872-1002 (fax)

                                         Mark J. MacDougall
                                         Matthew A. Rossi
                                         Nicole H. Sprinzen
                                         Mara B. Zusman
                                         1333 New Hampshire Ave., NW
                                         Washington, DC  20036
                                         (202) 887-4000
                                         (202) 887-4288 (fax)

                                         Attorneys for Defendant Mohammed Hussein
                                         Al Amoudi

## CERTIFICATE OF SERVICE

I, James E. d'Auguste, hereby certify that true and correct copies of the Defendant Mohammed Hussein Al Amoudi's Motion to Dismiss the Complaints or, in the Alternative, for More Definite Statement and Memorandum of Law in Support of Defendant Mohammed Hussein Al Amoudi's Motion to Dismiss the Complaints or, in the Alternative for more Definite Statement and have been furnished to all parties by electronic mail on this 6th day of April, 2005 except for the following counsel which were served by U.S. Mail:

Kamal Hussein Houkry
Hussein Shoukry Law Firm
Adham Commercial Center, 9th Floor
Medina Road
PO Box 667
Jeddah 21421, Saudi Arabia

J.D. Lee, Esq.
David Lee, Esq.
Lee Lee & Lee
422 S. Gay Street
Knoxville, TN 37902

Nancy H. Dutton, Esq.
Dutton & Dutton, P.C.
5017 Tilden NW
Washington, DC 20016

Amy Ficklin DeBrota, Esq.
William Riley, Esq.
3815 River Crossing Parkway, Suite 340
Indiannapolis, In 46240

James E. d'Auguste