UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Cantor Fitzgerald Associates, LP, et al. v. Akida Investment Co., Ltd., et al., 04-CV-7065;*
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al., 04-CV-05970;*
*Euro Brokers, Inc., et al. v. Al Baraka Invest. & Devel. Corp., et al., 04-CV-07279;*
*Federal Insurance Co., et al. v. Al Qaida, et al., 03-CV-6978;*
*New York Marine and General Insurance Co. v. Al Qaida, et al., 04-CV-6105;*
*World Trade Center Properties LLC, et al. v. Al Baraka Invest. & Devel. Corp., et al., 04-CV-07280.*

# PROPERTY DAMAGE PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF AL HARAMAIN ISLAMIC FOUNDATION, INC.

April 8, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... i

INTRODUCTION ........................................................................................................... 1

APPLICABLE LEGAL STANDARDS ............................................................................. 3

ARGUMENT ................................................................................................................. 6

I.   PLAINTIFFS STATE CLAIMS AGAINST AHIF UNDER THE ATA ............... 6

  A. AHIF's Material Support of al Qaeda's Terrorist Activities ................................. 6

  B. AHIF and Al Haramain are One and the Same....................................... 9

II.   PLAINTIFFS STATE RICO CLAIMS AGAINST AHIF ................................. 11

  A. The Insurance Company Plaintiffs Have Standing to
   Assert RICO Claims ....................................................................... 11

  B. All of the Property Damage Plaintiffs Properly State
   RICO Claims.................................................................................. 13

III.  AHIF IS NOT ENTITLED TO DISMISSAL OF
   PLAINTIFFS' OTHER CLAIMS.................................................................. 17

  A. Plaintiffs Have Adequately Pleaded Common Law Claims
   for Property Destruction ................................................................. 17

  B. The *Federal* Plaintiffs' Claims for Assault and Battery and
   Intentional Infliction of Emotional Distress Are Not Time Barred .................... 17

  C. The *Federal* Plaintiffs State Claims for Wrongful Death
   and Survival ................................................................................... 19

  D. Plaintiffs' Claims for Punitive Damages and Conspiracy
   Ought Not Be Dismissed ................................................................. 19

  E. *Cantor* Plaintiff the Port Authority of New York and New Jersey
   is Entitled to Maintain its Contribution and Indemnity Claims........................... 20

  F. Plaintiffs Reserve Their Rights as to TPVA Claims............................................ 22

i

IV.        IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND
           TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE
           GRANTED LEAVE TO RE-PLEAD ................................................................... 22

V.         THIS COURT HAS JURISDICTION OVER AHIF ........................................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

131 Main Street Associate v. Manko,
    897 F. Supp. 1507 (S.D.N.Y. 1995)......................................................................16

Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters,
    459 U.S. 519 (1983).........................................................................................16

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000).............................................................................22

Bedford Affiliates v. Sills,
    156 F.3d 416 (2d Cir. 1998).............................................................................10

Bettis v. Islamic Republic of Iran,
    315 F.3d 325 (D.C. Cir. 2003) .........................................................................18

Board of Education v. Sargent,
    71 N.Y. 21 (1987) .......................................................................................20, 21

Boim v. Quranic Literacy Institute,
    291 F.3d 1000 (7th Cir. 2002) ....................................................................7, 8, 17

Burnett v. Al Baraka Invest. & Develop. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ..........................................................3, 8, 10, 21

Busch v. Buchman, Buchman & O'Brien, Law Firm,
    11 F.3d 1255 (5th Cir. 1994) ...........................................................................24

Calcutti v. SBU, Inc.,
    273 F. Supp. 2d 488 (S.D.N.Y. 2003)................................................................21

Casperone v. Landmark Oil & Gas Corp.,
    819 F.2d 112 (5th Cir. 1987) ...........................................................................15

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998)..............................................................................4

Combs v. Adkins & Adkins Coal Co.,
    597 F. Supp. 122 (D.D.C. 1984) .......................................................................24

Conley v. Gibson,
    355 U.S. 41 (1957)..................................................................................3, 4, 5, 22

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ...........................................................................10

Dole v. Dow Chemical Co.,
    30 N.Y.2d 143 (1972) ...............................................................................20, 21

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D. N.Y. 2003)........................................................14

Estates of Ungar ex rel. Strachman v. Palestinian Authority,
    153 F. Supp. 2d 76 (D.R.I. 2001) ...............................................................24

Foman v. Davis,
    371 U.S. 178 (1962)....................................................................................23

Friedman v. Hartmann,
    1994 U.S. Dist. LEXIS 9727 (S.D. N.Y. 1994) ..........................................15

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980).........................................................................3

Glasser v. M. Fortunoff of Westbury Corp.,
    71 N.Y.2d 643 (1988) ...............................................................................20, 21

Goodkin v. United States,
    773 F.2d 19 (2d Cir. 1985)...........................................................................20

Holmes v. Security Investor Prot. Corp.,
    503 U.S. 258 (1992)....................................................................................16

IUE AFL-CIO Pension Fund v. Herrmann,
    9 F.3d 1049 (2d Cir. 1993)........................................................................24, 25

Ideal Electronic Co. c. International Fidelity Insurance Co.,
    129 F.3d 143 (D.C. Cir. 1997) ....................................................................18

In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,
    2004 U.S. Dist. LEXIS 3829 (S.D. N.Y. 2004).............................................18

Johnson v. Nyack Hospital,
    86 F.3d 8 (2d Cir. 1996)...............................................................................18

Jones v. R.R. Donnelly & Sons Co.,
    541 U.S. 369 (2004)........................................................................................18

Leatherman v. Tarrant County,
    507 U.S. 163 (1993)......................................................................................4, 5

Lerner v. Fleet Bank, N.A.,
    318 F.3d 113 (2d Cir. 2003)...........................................................................16

Louisiana Land & Exploration Co. v. Unocal Corp.,
    863 F. Supp. 306 (E.D. La. 1994)..................................................................18

Monahan v. NYC Department of Correctional,
    214 F.3d 275 (2d Cir. 2000)...........................................................................22

Moss v. Morgan Stanley, Inc.,
    719 F.2d 5 (2d Cir. 1983) ..............................................................................14

National Asbestos Workers Medical Fund v. Philip Morris, Inc.,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) .............................................12, 13, 16, 17

Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005)..........................................................................5, 6

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002)................................................................3, 4, 5, 10

Rasul v. Bush,
    124 S. Ct. 2686 (2004)..................................................................................14

Reiter v. Sonotone Corp.,
    442 U.S. 330 (1979)......................................................................................13

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) .....................................................................24

Sommer v. Federal Signal Corp.,
    79 N.Y.2d 540 (1992)...................................................................................21

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000) ......................................................................4

State of New York v. O'Hara,
    652 F. Supp. 1049 (W.D.N.Y. 1987)..............................................................15

Steitz v. Gifford,
    280 N.Y. 15 (1939) ....................................................................................22

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002) .....................................................................................4

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ..............................................8, 17, 22

Thomson-CSF, S.A. v. Amer. Arbitration Association,
    64 F.3d 773 (2d Cir. 1995) ..........................................................................10

United States v. Coonan,
    938 F.2d 1553 (2d Cir. 1991) ......................................................................14

United States v. Louie,
    625 F. Supp. 1327 (S.D.N.Y. 1985) ............................................................15

United States v. Roth,
    860 F.2d 1382 (7th Cir. 1988) ....................................................................15

United States v. Turkette,
    452 U.S. 576 (1981) ....................................................................................13

Von Bulow v.  Von Bulow,
    634 F. Supp. 1284 (S.D. N.Y. 1986) ...........................................................17

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001) ..........................................................................4

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004) .......................................................................3, 4

Yeadon v. New York Transit Authority,
    719 F. Supp. 204 (S.D. N.Y. 1989) .............................................................18

Zola v. Gordon,
    685 F. Supp. 354 (S.D.N.Y. 1988) .............................................................16

## STATUTES

28 U.S.C. § 1350 .................................................................................................22

18 U.S.C. § 1961 .................................................................................................15

18 U.S.C. § 1962(a) .............................................................................................14

18 U.S.C. § 1962(c) ...................................................................................................14, 15

18 U.S.C. § 1962(d) ........................................................................................................14

18 U.S.C. § 1964(c) ........................................................................................................12

18 U.S.C. § 1965(b) ........................................................................................................24

18 U.S.C. § 2334(a) ........................................................................................................24

18 U.S.C. § 2339A ..........................................................................................................15

18 U.S.C. § 2339B ..........................................................................................................15

18 U.S.C. §2339C ...........................................................................................................15

F.R.C.P. 8(a)(2) .................................................................................................................4

F.R.C.P. 9(b) .....................................................................................................................4

F.R.C.P. 12(b)(6) ...........................................................................................................3, 4

F.R.C.P. 15 ......................................................................................................................22

N.Y. C.P.L.R. § 1401 ......................................................................................................20

N.Y. C.P.L.R. §1403 .......................................................................................................20

## <u>OTHER</u>

137 Cong. Rec. S4511 04 (April 16, 1991) ......................................................................17

Restatement (Third) of The Law of Torts, § 23 ...............................................................21

**INTRODUCTION**

In its motion to dismiss the claims of the Property Damage Plaintiffs,[1] defendant Al Haramain Islamic Foundation, Inc. ("AHIF") seeks to distance itself from the organization of which it is a part, also known as the Al Haramain Islamic Foundation ("Al Haramain").  As alleged in the complaints at issue here, AHIF, based in Oregon, was the U.S. branch of Al Haramain, a global entity based in Saudi Arabia.[2]  The Riyadh office of Al Haramain ("AHSA") was – until the Saudi government announced that it was dissolving al Haramain amid suspicions that it was a terrorist front that had provided financing and other support to al Qaeda and Osama bin Laden – the headquarters of a vast network of offices and representatives around the world. At least eight of those branches, including AHIF, have been designated by the U.S. government as global sponsors of terrorism and, as noted above, the Saudi government has stated that it is dissolving all elements of the global organization as a counter-terrorism measure.

As alleged in the complaints, Al Haramain is a "Saudi charity front that has exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism." *WTCP* Complaint ¶ 292. Plaintiffs allege that "Al Haramain has long acted as a fully integrated component of al Qaida's logistical and financial

---

[1]     The Property Damage Plaintiffs consist of plaintiffs in *Cantor Fitzgerald Associates, LP, v. Akida Investment Co., Ltd.,* 04-CV-7065 *("Cantor"); Continental Casualty Co. v. Al Qaeda Islamic Army,* 04-CV-05970 *("Continental"); Euro Brokers, Inc. v. Al Baraka Invest. & Devel. Corp.,* 04-CV-07279 *("EuroBrokers"); Federal Insurance Co. v. Al Qaida,* 03-CV-6978 *("Federal"); New York Marine and General Insurance Co. v. Al Qaida,* 04-CV-6105 *("NYMAGIC"); World Trade Center Properties LLC v. Al Baraka Invest. & Devel. Corp.* 04-CV-07280 *("WTCP").*

Defendant has styled its motion as one to dismiss the "Consolidated Property Damage and Insurance Complaint," but that is a misnomer, as there is no such consolidated complaint.  Despite its title, the motion is, in fact, a consolidated *motion* addressed to six different complaints and the RICO statements associated with them. Moreover, the *Federal* action seeks recovery for both property damages and assigned personal injuries and wrongful deaths.  As such, it is inaccurate to characterize *Federal* as solely a property damage or insurance case.  However, because the pleadings are similar and the issues nearly identical, the Property Damage Plaintiffs have elected to file a consolidated response to defendant's motion.

[2]     In its motion to dismiss, AHIF styles itself "Al Haramain Islamic Foundation, Inc. (USA)," but, with one exception, *see O'Neill* 2AC, the complaints at issue in this lawsuit do not so denominate it.  Rather, like the larger organization of which it is a part, AHIF is identified in the various complaints simply as Al Haramain Islamic Foundation.

support infrastructure, and provided material support and resources to al Qaida and affiliated [Foreign Terrorist Organizations]." *Federal* First Amended Complaint ("*Federal* 1AC") ¶ 170. Specifically, "Al-Haramain has knowingly and intentionally lent material support to Al Qaeda through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *EuroBrokers* Complaint ¶ 63; *Cantor* First Amended Complaint ("*Cantor* 1AC") ¶ 77. Moreover, "[p]rior to September 11, 2001 Al-Haramain, which receives the bulk of its donations from Saudi Arabia and the Middle East, laundered money for Al Qaeda." *EuroBrokers* Complaint ¶ 64; *Cantor* 1AC ¶ 78. Evidence assembled by the U.S. Treasury Department demonstrates the Al Haramain played a significant role in the 1998 bombings of two U.S. embassies in East Africa. *See Federal* 1AC ¶ 173; *see also EuroBrokers* Complaint ¶ 67 (alleging U.S. government designated Al Haramain because, *inter alia*, its offices agreed to finance bombing of U.S. embassies in Kenya and Tanzania). Al Haramain also directly funded the 2002 Bali nightclub bombing. *Federal* 1AC at ¶ 172.

Moreover, the complaints allege that "[t]he al-Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations," *WTCP* Complaint ¶ 310; *Continental* First Amended Complaint ("*Continental* 1AC") ¶ 512; *accord Cantor* 1AC ¶ 79 (alleging United States blocked assets of Ashland and Springfield, Missouri branches because so-called 'charitable contributions' were siphoned off to support al Qaeda), and that the Oregon branch was "one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia." *Cantor* 1AC ¶ 75-76; *EuroBrokers* Complaint, ¶ 62; *Federal* RICO Statement, Exhibit A. Indeed, "[t]he President and Vice-President of the United States branch, Aqeel al-Aqeel and Mansour al-Kadi, both reside in Riyadh, Saudi Arabia where they run all of al-Haramain worldwide." *WTCP* Complaint ¶ 292. Al-Aqeel was not only the President of AHIF, he was also the Secretary General of AHSA, while al-Kadi was simultaneously Vice-President of AHIF and Deputy General of AHSA. *WTCP*

Complaint, ¶ 310; *Continental* 1AC ¶ 512.  Al Haramain operated a single website for all its branches.  *See WTCP* Complaint ¶ 300; *Continental* 1AC¶ 502.  This same website had a direct link to a website specifically promoting al Qaeda.  *WTCP* Complaint ¶ 307; *Federal* RICO Statement Exhibit A.

Despite these allegations, AHIF asks this Court to dismiss the Complaints because AHIF claims that it was an "independent affiliate" of Al Haramain.[3]  The evidentiary record already before the Court belies AHIF's claims, and any remaining factual disputes cannot be resolved on this motion to dismiss.  Indeed, that was the precise holding of Judge Robertson when AHIF moved to dismiss the *Burnett* (D.C.) complaint.  *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003).  Judge Robertson correctly found that plaintiffs adequately alleged the role of Al Haramain in providing material support to al Qaeda *and* that plaintiffs adequately alleged that AHIF and Al Haramain were one and the same.  This Court should follow Judge Robertson's correct holding and similarly deny AHIF's motion to dismiss, as AHIF fails to raise any basis upon which to ignore Judge Robertson's holding.

## APPLICABLE LEGAL STANDARDS

AHIF moves to dismiss the Property Damage Complaints pursuant to F.R.C.P. 12(b)(6), for failure to state a claim. Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636,

---

[3]     On this Rule 12(b)(6) motion, the "evidence" that AHIF has submitted should be disregarded.  Plaintiffs note, however, that even if these materials could be considered, they do not contradict in any way the allegations of the Complaint.  Rather, the materials AHIF has submitted confirm that, until 2003, AHIF and AHSA had interlocking boards of directors, precisely as plaintiffs allege.

639 (2d Cir. 1980).  In evaluating whether the Property Damage Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them.  *Wynder*, 360 F.3d at 77; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P. 8(a)(2), which is extremely permissive.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (*quoting Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2001 WL 936257 (D.C. Cir. July 12, 2001)  (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  *Id*. at 182.

4

Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering. *Id*. The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said the plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference. The district court found the plaintiff's allegations of *scienter* conclusory and held that the plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge. *Id. at* 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." *Id*. at 186-87. The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187 (*quoting Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id*. at 185 (citations omitted).

More recently, in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of

McDonald's food and their alleged injuries." *Id.* at 511.   The Second Circuit rejected this approach.  It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P." *Id.* at 512.   Quoting the unanimous Supreme Court ruling in *Swierkiewicz*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.  The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

## ARGUMENT

## I.      PLAINTIFFS STATE CLAIMS AGAINST AHIF UNDER THE ATA

AHIF argues that the Property Damage Plaintiffs have not sufficiently alleged claims against it under the ATA because, AHIF argues, plaintiffs' claims are based on the acts of AHSA and its other affiliates, which cannot, AHIF contends, be attributed to AHIF.  AHIF is wrong: plaintiffs adequately allege that AHIF, AHSA, and the other Al Haramain branches are one and the same.

### A.      AHIF's Material Support of al Qaeda's Terrorist Activities

Before turning to the relationship between AHIF and Al Haramain, plaintiffs note that they have more than adequately alleged the complicity of the Al Haramain network in the terrorist activities of al Qaeda.  Plaintiffs have specifically and repeatedly alleged that Al Haramain knowingly and intentionally provided *direct* assistance to Osama bin Laden, al Qaeda, and international terrorism:

- "Al Haramain has long acted as a fully integrated component of al Qaeda's logistical and financial support infrastructure, and provided material support and resources to al Qaeda and affiliated [Foreign Terrorist Organizations]." *Federal* 1AC ¶ 170.

- "Al-Haramain has knowingly and intentionally lent material support to Al Qaeda through, inter alia, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *EuroBrokers* Complaint ¶ 63; *Cantor* 1AC ¶¶ 75-83.

- "Prior to September 11, 2001 Al-Haramain, which receives the bulk of its donations from Saudi Arabia and the Middle East, laundered money for Al Qaeda." *EuroBrokers* Complaint ¶ 64; *Cantor* 1AC ¶ 78.

- "According to a senior Al Qaeda operative, Umar Faruq, Al-Haramain 'was the funding mechanism of all [Al Qaeda] operations in Indonesia' and the Al-Haramain office funding those terrorist operations 'was working under the control of a representative of Usama bin Laden.'" *EuroBrokers* Complaint ¶ 69; *Cantor* 1AC ¶ 83.

- "al-Haramain Islamic Foundation, Inc., is a Saudi charity front that has exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism." *WTCP* Complaint ¶ 292.

- "al-Haramain, ... has acted as a channel for financing the activities of terrorist organizations." *Continental* 1AC ¶ 492.

- "Al-Haramain knowingly and intentionally collected, diverted and transferred funds to Al Qaeda and otherwise lent material support to Al Qaeda. Al-Haramain knowingly and intentionally provided repeated material support and substantial assistance to Al Qaeda through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings. . . ." *NYMAGIC* RICO Statement, ¶ 2.

These allegations are sufficient to state claims under the ATA. Under the ATA, Al Haramain is liable if it provided any material support to al Qaeda with knowledge of its terrorist agenda or if it aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct. *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002), *motion to stay mandate den'd.*, 297 F.3d 542 (7th Cir. 2002). As detailed above, plaintiffs have alleged that Al Haramain knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaeda. This Court has already recognized that, under the ATA, "material support

includes money [and] financial services . . . ." *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005) ["January 18 Order"].

Plaintiffs also properly allege that Al Haramain's support and assistance was a proximate cause of the September 11 attacks.[4]  Plaintiffs allege that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials." *EuroBrokers* Complaint ¶ 5; *accord WTCP* Complaint ¶ 1; *Cantor* 1AC ¶ 11; *Continental* 1AC ¶ 29; *NYMAGIC* 1AC ¶ 53; *Federal* 1AC ¶ 74.  *See also Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.").  Moreover, this Court has already held that "[i]n light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda." *In Re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 826.  Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id*. at 829.  Under the standards set forth in this Court's January 18 Order, plaintiffs have properly pleaded a claim under the ATA.[5]

---

[4]    It remains an open question as to whether, for insurance purposes, the hijackings and plane crashes of September 11, 2001, constitute a single "attack" or multiple "attacks."  The use of either the singular or the plural in this memorandum should not be taken as a position or concession by any of the plaintiffs on that issue.

[5]    Judge Robertson reached this same conclusion in the context of the virtually identical Burnett complaint, holding that the "allegations of Al-Haramain's relationships with al Qaeda are more than sufficient to permit the inference that Al-Haramain . . . provided material support to al Qaeda with knowledge of, and the intent to further, al Qaeda's terrorist activities."  *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003).  Judge Robertson further found that the "allegations provide support for an inference of a causal link between AHIF's funding and the attacks of September 11." *Id.* at 105.  Although Judge Robertson's decision is not binding on this Court, it should be followed here because it is manifestly correct as well as consistent with this Court's January 18, 2005 Order.

### B.      AHIF and Al Haramain are One and the Same

AHIF contends, however, that it is entirely separate from Al Haramain and cannot be held liable based on allegations against the larger entity.  But AHIF ignores that plaintiffs have specifically alleged that AHIF and Al Haramain were operated as a single entity:

- "In the United States, al-Haramain has three business entities in Ashland, Oregon: al-Haramain Foundation, al-Haramain Islamic Foundation, and al-Haramain Islamic Foundation, Inc.  All three of these separately filed businesses are at the same address and under the same management.  *These three businesses are one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia.*  The President and Vice-President of the United States branch, Aqeel al- Aqeel and Mansour al-Kadi, are the Secretary General and Deputy General, respectively, of the Riyadh office.  The al-Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations."  *WTCP* Complaint, ¶ 310; *Continental* 1AC ¶ 512 (emphasis added).

- "Defendants Al-Haramain Islamic Foundation, Inc., Al-Haramain Foundation, and Al-Haramain Islamic Foundation, are all necessary and integrated parts of the same foundation and are otherwise substantively interconnected. . . . *These Al-Haramain entities are also all financed, controlled and directed through a centralized command and financial structure—and every Al-Haramain branch office was controlled and directed by the 'home' office in Saudi Arabia."  EuroBrokers* Complaint ¶ 62; *Cantor* 1AC ¶¶ 74-75 (emphasis added).

- "AHIF has offices all over the world from which it coordinates its support for the Enterprise, Radical Muslim Terrorism, and an interlocking management by which it effectuates that support." *Federal* RICO Statement, Exhibit A.

- "[E]very Al-Haramain branch office was controlled and directed by the "home" office in Saudi Arabia.  As Shaykh Aqeel [Al Haramain General Director] has admitted 'Yes. Of course.   The offices' directors are employees who follow directions of the main office with regards to hiring workers at the offices and making any decisions on cooperation with any party."  *Cantor* 1AC ¶ 75.

*See also* the additional paragraphs set forth on pp. 9-10 of the Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Perouz Sedaghaty, incorporated herein by reference.

AHIF disputes these allegations, as it is entitled to do.  But, as Judge Robertson explained when AHIF made precisely the same argument before him in the *Burnett* case:

AHIF fervently disputes the allegation that it is one and the same as Al-Haramain. That dispute, however, is a factual one, to be sorted out in discovery, and with a

> motion for summary judgment, but not on a motion to dismiss under Rule
> 12(b)(6).  At this stage, the court must accept plaintiffs' factual allegations as true.

*Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003)

(*"Burnett I"*).  Accordingly, Judge Robertson held that the allegations concerning Al Haramain

were sufficient to establish a claim against AHIF, "since it is alleged to be 'one and the same' as

the Saudi Arabian headquarters . . . ." *Id.* at 104.

AHIF's contention that plaintiffs should be required to plead sufficient evidence to *prove*

that AHIF and Al Haramain are the same is precisely the argument rejected by the Second

Circuit in *Phelps*, 308 F.3d at 187, and in *Pelman*, 396 F.3d at 512.  On the contrary, plaintiffs

are entitled to take discovery before they are called upon to prove their case.  The authorities

cited by AHIF do not hold otherwise.  In *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998),

for example, the Second Circuit discussed what plaintiff needed to prove at trial, not what

needed to be pled.  Similarly, the procedural posture of *Thomson-CSF, S.A. v. Amer. Arbitration

Assn.*, 64 F.3d 773 (2d Cir. 1995) – a declaratory judgment action to avoid arbitration – was such

that plaintiff was required to prove, not merely allege, the inter-relationship of the corporations

on which the obligation to arbitrate depended.  Finally, in *De Jesus v. Sears, Roebuck & Co.*, 87

F.3d 65 (2d Cir. 1996), *cert. den'd.*, 519 U.S. 1007 (1996), the Second Circuit found a bare

allegation of control, without more, insufficient, but plaintiffs here allege substantially more.  As

noted above, plaintiffs allege interlocking management and a centralized command and financial

structure.  *See supra* page 9.

Plaintiffs have alleged that AHIF and the now-defunct AHSA were one and the same,

that they had interlocking management, and shared a centralized command and financial

structure.  They are entitled to the opportunity to take discovery and prove these allegations and

establish that AHIF was part of the Al Haramain network that supported and assisted al Qaeda.[6]

---

[6]     Separate and apart from the relationship between AHIF and AHSA, the plaintiffs allege that "[t]he al-
Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations."  *WTCP* Complaint, ¶ 310;
*Continental* 1AC ¶ 512; *see also Federal* RICO Statement, Exhibit A.  Thus, whether or not plaintiffs have properly

## II.    PLAINTIFFS STATE RICO CLAIMS AGAINST AHIF

### A.    The Insurance Company Plaintiffs Have Standing to Assert RICO Claims

AHIF does not challenge (and thus concedes) that the *Cantor*, *EuroBrokers*, and *WTCP* plaintiffs have standing to assert claims under RICO.   AHIF does contend that the insurance company plaintiffs (plaintiffs in *Federal, NYMAGIC,* and *Continental*), lack standing to assert claims under RICO.   But AHIF is under a misapprehension about the nature of the insurance company claims and is wrong in any case.

AHIF asserts that insurance company plaintiffs lack standing under RICO because "their injuries are subrogation injuries that arise from the personal injuries of the insureds, not an injury to their business or property."   AHIF Property Mem. at 13.   This simply is not true.   As alleged in the *Continental* complaint, the insurance company plaintiffs "provided insurance coverage to numerous insureds whose *property* was damaged or destroyed in the September 11th attacks." *Continental* 1AC ¶ 595 (emphasis supplied).   Thus, it is clear that the Continental Plaintiffs provided *property* insurance and paid claims for *property* losses associated with the September 11 terrorist attack; their claims do not derive in any way from the horrendous injuries and loss of life that occurred that day.   Similarly, as alleged in the *NYMAGIC* Amended Complaint, NYMAGIC "provided insurance coverage to the airline companies (the 'insureds') which owned and operated the commercial airliners which were hijacked and used as weapons in the September 11th Attack." *NYMAGIC* 1AC ¶ 54.   Plainly, the losses suffered by NYMAGIC's insureds were not personal injuries, but rather injuries to their business or property.   Likewise, the *Federal* Plaintiffs seek recovery of several billion dollars paid to their insureds in compensation for property damages and related losses resulting from the September 11th attack. *Federal* 1AC ¶¶ 541-577.

---

pleaded that AHIF and Al Haramain are one and the same, these plaintiffs have sufficiently pleaded AHIF's separate role in supporting al Qaeda.

Moreover, while the *Federal* action also asserts subrogation claims arising from payments made in compensation for personal injuries and deaths suffered by victims of the September 11th attacks (in addition to the claims for property damages discussed above), the *Federal* Plaintiffs clearly have standing to pursue recovery under RICO for those claims as well. *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F.Supp.2d 221 (E.D.N.Y. 1999). In *National Asbestos Workers*, Judge Weinstein allowed the plaintiff health insurers to bring subrogated RICO claims against tobacco manufacturers for the cost of treating their subrogors' smoking-related illnesses. *Id.* at 228. According to Judge Weinstein, "[t]he equitable doctrine of subrogation allows insurers, analogous in some respects to the plaintiffs, to bring their own claims for the recovery of the economic damages incurred as a result of tortious injury to their insureds." *Id.* Subrogation functions as a form of assignment, and RICO claims are assignable. *Id.*

The tobacco manufacturers suggested that the plaintiffs could not state a subrogated RICO claim because the subrogee plaintiffs "stand in the shoes" of their subrogors and "the subrogors themselves have no RICO claims for the economic injuries associated with the treatment of smoking related illnesses." *Id.* at 229. Judge Weinstein found the tobacco companies' analysis unpersuasive. According to Judge Weinstein, "[t]he recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute." *Id.* Moreover, "the most natural reading of the language in RICO supports the conclusion that pecuniary losses resulting from racketeering personal injuries should be compensable under the statute, because the statute confers standing on 'any person injured in his business or property by reason of [racketeering acts defined in the statute].'" *Id.* (*citing* 18 U.S.C. § 1964(c)).

Further according to Judge Weinstein, the Supreme Court has recognized, albeit in another context, that money is a form of property. *Id.* (*citing Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979)). Therefore, "[v]ictims of racketeering who have been deprived of their monetary resources as a direct result of racketeers' predicate acts should, under the most natural interpretation of the phrase 'business or property,' recover their pecuniary losses." *Id.* Judge Weinstein offered a hypothetical in *National Asbestos Workers* that illustrates the point well:

> Assume racketeers attack a manufacturing plant to coerce its owner and an employee, and in so doing throw the owner and her employee through a window. Defendants argue that the racketeers should be made to pay for the costs of the broken window under RICO, but not for the pecuniary costs, such as medical bills or lost wages and profits, associated with the broken arms and legs of the owner and employee. A line must be drawn under the "business and property" rubric of the statute, but it would seem more sensible to draw it between pain and suffering and outlays for repairing windows and limbs.

*Id.* Thus, there is no doubt that, as the subrogees of the property and workers' compensation insureds and as assignees of the workers' compensation claimants who suffered personal injury or wrongful death, the Plaintiffs have standing to bring a claim under RICO.

### B. All of the Property Damage Plaintiffs Properly State RICO Claims

Plaintiffs' complaints and RICO Statements assert RICO claims against AHIF pursuant to sections 1962(a), (c) and (d).[7] The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure. *See Cantor* 1AC ¶¶ 35-42. Its well documented purpose is to perpetrate acts of terrorism. *See Federal* RICO Statement ¶ 5, *Cantor* 1AC ¶ 36. Thus, plaintiffs have sufficiently pled that al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576,

---

[7] AHIF claims that RICO statements were not filed in the *WTCP*, *EuroBrokers,* and *Continental* cases. On February 25, 2005, however, plaintiffs in *WTCP* and *EuroBrokers* filed RICO statements. Plaintiffs believe those statements were timely, while recognizing that there was some confusion about the agreed-upon dates for filing.

583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 1486 (1992).

Plaintiffs' complaints and RICO statements further allege that AHIF engaged in conduct in furtherance of the enterprise which is actionable under section 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, plaintiffs allege that AHIF solicited funds from donors in the United States and throughout the World under the guise of "charity," and diverted the funds collected under that false pretense to al Qaeda.  Thus, the complaints and RICO statements plainly allege that AHIF derived income through a pattern of racketeering activity, including multiple acts of mail and wire fraud, and invested that income in the enterprise.  As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

Plaintiffs' complaints and RICO Statements similarly allege sufficient involvement by AHIF in the enterprise to sustain claims under both Sections 1962(c) and (d).  A plaintiff asserting a civil claim under 1962(c) must allege that the defendant participated in the operation or management of the enterprise.  *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied,* 465 U.S. 1025 (1984); *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003).  To sustain a claim under 1962(d), the plaintiff must allege that the

defendant was a "central figure" in the underlying scheme. *Id.* at 165. However, "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'" *United States v. Louie*, 625 F. Supp. 1327, 1333 (S.D.N.Y. 1985) (citing 18 U.S.C. § 1962(c)). Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 U.S. Dist. LEXIS 9727, 4-5 (S.D. N.Y. 1994).

Here, the plaintiffs have satisfied the pleading standards applicable to their 1962(c) and 1962(d) claims. The plaintiffs allege that AHIF conceived and carried out a calculated global campaign to: (1) raise and distribute funds for and to al Qaeda; (2) finance al Qaeda operations; and (3) purchase weapons for al Qaeda. *Cantor* 1AC ¶¶ 80-81. Thus, AHIF's financial relationship with al Qaeda satisfies the 1962(c) operation or management test. *United States v. Roth*, 860 F.2d 1382, 1390 (7th Cir. 1988), *cert. denied*, 490 U.S. 1090 (1989) (carrying bribes to Judges constitutes association with enterprise); *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 115 (5th Cir. 1987) (attorney providing legal services to enterprise associated with enterprise); *State of New York v. O'Hara,* 652 F. Supp. 1049, 1053 (W.D.N.Y. 1987) (submitting bids to city enterprise satisfies association test).

In addition, plaintiffs sufficiently plead that AHIF conducted or participated in the affairs of the al Qaeda enterprise through a pattern of racketeering activity. 18 U.S.C. § 1961 (defining racketeering activity to include the provision of "material support" to terrorists under 18 U.S.C. § 2339A and B, such as sending currency or giving financial services, and alternatively, "directly or indirectly" providing or "collecting" funds earmarked for terrorism under 18 U.S.C. §2339C).

Plaintiffs assert that AHIF financially participated in al Qaeda's global operations, and specifically furthered al Qaeda's goal of committing acts of terrorism against the United States, by knowingly and intentionally providing al Qaeda with "the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." *Federal* 1AC ¶ 74. Plaintiffs further allege that AHIF participated in al Qaeda's affairs by laundering money through the enterprise, *Cantor* 1AC ¶ 78, and that AHIF aided and abetted the same. *Cantor* 1AC ¶¶ 74-84. *Zola v. Gordon*, 685 F. Supp. 354 (S.D.N.Y. 1988) ("Civil RICO liability can be predicated on aiding and abetting the commission of the predicate acts by the primary offender."); *131 Main Street Assoc. v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995) ("One might reasonably infer intent to aid a primary violation from allegations of substantial assistance.").

Plaintiffs also have adequately alleged proximate cause under RICO — that the defendant's injurious conduct is both the factual and the proximate cause of plaintiffs' injury. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003). Here, plaintiffs allege that they were directly harmed by AHIF's participation in al Qaeda's campaign to attack the United States, and in particular, by its provision of "material support and resources to al Qaeda." *Federal* 1AC ¶ 226; *Cantor* 1AC ¶¶ 177-84. These allegations more than satisfy plaintiffs' burden at the pleading stage, as "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," and dismissal at the pleadings stage of a RICO claim is therefore imprudent. *National Asbestos Workers*, 74 F. Supp. 2d at 225. This Court's decision "should be guided by a flexible, case-by-case approach." *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983) and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)). Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its

needs, and its norms change, so too must the contours of tort liability and enforcement procedures." *Id.* Further, failure to explain the alleged injury in detail is not fatal. *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986). Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6). *Id.* The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts." *Id.* (citations omitted). Plaintiffs' allegations accomplish that end. As such, the plaintiffs have met their pleading burden in relation to their RICO claims, particularly given the fact that the plaintiffs have not yet been afforded the opportunity to conduct discovery.

### III.   AHIF IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' OTHER CLAIMS

The remainder of plaintiffs' claims similarly ought not be dismissed.

#### A.   Plaintiffs Have Adequately Pleaded Common Law Claims for Property Destruction

AHIF argues that plaintiffs have not properly pleaded the necessary causal connection to maintain claims for common law torts. This argument should be rejected for the reasons set forth above, *see supra* Point I. Indeed, this Court has already held that plaintiffs may maintain common law claims against parties who conspired with, or aided and abetted, al Qaeda. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 830.

#### B.   The *Federal* Plaintiffs' Claims for Assault and Battery and Intentional Infliction of Emotional Distress Are Not Time Barred

The *Federal* Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not time-barred for two reasons. First, these claims are subsumed within plaintiffs' claims under the Anti-Terrorism Act, which imports into that federal cause of action "the remedies of American tort law." *See* 137 Cong. Rec. S4511 04 (April 16, 1991); *see also Boim*, 291 F.3d at 1010 (language and history of ATA "evidence[] an intent by Congress to

codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law").  To the extent that these claims have been "federalized" under the Anti-Terrorism Act, they are governed by federal law.  *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) (federal law determines the "extent and nature" of claims brought under a federal statute).[8]  State statutes of limitation are inapplicable to federal common law claims.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). *See also Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306, 309 (E.D. La. 1994), *reconsideration denied*, 1995 WL 672835 (E.D. La. Nov. 9, 1995) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).

Moreover, all of the *Federal* Plaintiffs' claims arise from AHIF's participation in the conspiracy to conduct terrorist attacks against the United States; a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until the *Federal* Plaintiffs reasonably should have become aware of AHIF's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D. N. Y. 2004).  Given this fact, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable

---

[8]      Should plaintiffs' claims under the ATA fail for any reason, however, the common law claims also exist as separate claims arising under state law.  In determining which states' laws govern, this Court would apply the choice-of-law rules used by New York.  *See Ideal Electronic Co. v. International Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997), *aff'd on appeal after remand,* 203 F.3d 53 (D.C. Cir. 1999) (federal court hearing state-law claims applies choice of law rules of the place in which it sits).

tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[9]

### C.    The *Federal* Plaintiffs State Claims for Wrongful Death and Survival

AHIF's primary argument for dismissal of the claims for wrongful death and survival is entirely derivative of its argument for dismissal of the ATA claims.  As demonstrated above, plaintiffs have sufficiently pleaded that causal connection between AHIF's support of Osama bin Laden and al Qaeda and the injuries and deaths suffered on September 11.  AHIF also argues that the *Federal* Plaintiffs may not maintain claims for wrongful death and survival because they are not the personal representatives of the decedents.  This argument arises from AHIF's fundamental misunderstanding of the rights of workers' compensation insurers under the applicable workers' compensation statutes.  On this point, the *Federal* Plaintiffs refer the Court to the arguments set forth on p. 18 of the Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Perouz Sedaghaty, incorporated herein by reference.

### D.    Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed

AHIF seeks dismissal of plaintiffs' claims for punitive damages on the ground that, under New York law, punitive damages are a remedy, not a cause of action. AHIF presents no argument that plaintiffs are not entitled to recover punitive damages in this lawsuit.  Indeed, it is clear that punitive damages are available in connection with the claims that plaintiffs assert. Further, because the question of what law governs plaintiffs' claims remains open, this Court should not dismiss plaintiffs' claim for punitive damages because of this technicality of New York law.  The same is true with respect to plaintiffs' claims for conspiracy.  If plaintiffs have

---

[9]      AHIF also maintains that these claims are barred because the *Federal* Plaintiffs have failed adequately to allege causation. This is merely a repetition of AHIF's argument with respect to the ATA and causation generally and should be rejected for the reasons described above, *see supra* Point I.

properly pleaded a conspiracy theory of liability against AHIF, the claim should not be dismissed at this time merely because, under New York, this is an alternate basis of liability rather than a separate claim.

### E. *Cantor* Plaintiff the Port Authority of New York and New Jersey is Entitled to Maintain its Contribution and Indemnity Claims

AHIF's arguments against the contribution and indemnity claims made by plaintiff Port Authority of New York and New Jersey ("Port Authority") must fail.  The Port Authority seeks contribution and indemnity from AHIF and its co-defendants in the instant case because AHIF and its co-defendants proximately caused the September 11 attacks and therefore are responsible for the resulting damage and injuries caused to the Port Authority and allegedly other victims. Specifically, some of the individuals and businesses that allegedly were harmed in the September 11 attacks seek judgments against the Port Authority in separate actions under a theory that the Port Authority breached a duty of care owed to those plaintiffs.  *In re September 11 Litig.*, 21MC 97 (Hellerstein, J.).  The Port Authority contests liability in those lawsuits, but to the extent it is held liable, the Port Authority seeks contribution and indemnity from that liability from AHIF and its co-defendants under New York common law.

New York law strongly favors contribution, *Goodkin v. United States*, 773 F.2d 19, 24 (2d Cir. 1985), and broadly authorizes contribution claims where "two or more persons" are subject to liability for damages for the same personal injury, injury to property or wrongful death.  N.Y. C.P.L.R. § 1401; *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 152, 331 N.Y.S.2d 382 (1972).   Under New York law, concurrent, successive and independent, alternative, and even intentional tortfeasors can seek contribution from each other in either "a pending action" through cross-or counter-claims  or "in a separate action," where one tortfeasor would be a plaintiff and the other a defendant.  N.Y. C.P.L.R. § 1403; *Board of Educ. v. Sargent*, 71 N.Y. 21, 27-28, 523 N.Y.S.2d 475 (1987).  AHIF thus wrongly contends that contribution and indemnity claims are

exclusive to "co-defendants" in the same pending action. *Dole v. Dow Chem. Co.*, 30 N.Y.2d at 390-91; *Glasser v. M. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643, 646, 529 N.Y.S.2d 59 (1988).

Equally unfounded is AHIF's assertion that the Port Authority's contribution and indemnity claims are premature until a judgment is rendered in the *In re September 11 Litig.* Contribution and indemnity claims routinely are litigated prior to judgment being issued in the underlying action. *See Board of Educ. v. Sargent, supra*, at 476 (analyzing contribution claim brought by one tortfeasor against another tortfeasor "for whatever damages [the contribution plaintiff] *might* incur in the [underlying] action") (emphasis added); *Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 493 (S.D.N.Y. 2003); *see also* Restatement (Third) of the Law of Torts, § 23 ("a person seeking contribution may assert a claim for contribution and obtain a contingent judgment in an action in which the person seeking contribution is sued by the plaintiff, *even though the liability of the person against whom is contribution is sought has not yet been extinguished.*") (emphasis added).

AHIF also misapplies the element of "duty" with respect to contribution claims. Contribution merely requires that "some form of tort liability" exists and that a duty is alleged to be owed to either the underlying plaintiff or to the party seeking contribution. *See Board of Educ. v. Sargent, supra*, at 478; *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 558, 583 N.Y.S.2d 957 (1992). Here, the other plaintiffs allege that AHIF aided and abetted a violation of the ATA, which incorporates principles of tort liability, and as a result caused or contributed to personal injury or wrongful death. Such allegations already have survived motions to dismiss brought by AHIF.[10]   AHIF also cannot deny that it owed a duty to avoid aiding and abetting an

---

[10]      *See Burnett I,* 274 F.Supp.2d at 105 (denying AHIF's motion to dismiss claims of aiding and abetting a violation of ATA and related intentional tort claims and rejecting AHIF's arguments that plaintiffs who suffered personal injury and wrongful death in the September 11 attacks failed to create an inference that AHIF's acts were the proximate cause of plaintiffs' injuries or that it intentionally committed the alleged offenses).

intentional tort of trespass against the Port Authority. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp.2d at 831. Hence, the Port Authority has properly alleged a prima facie claim for both contribution and indemnity.[11]

### F.      Plaintiffs Reserve Their Rights as to TPVA Claims

AHIF has moved to dismiss plaintiffs' claim under the Torture Victim Protection Act ("TVPA"), codified at 28 U.S.C. § 1350. Plaintiffs do not currently intend to pursue this claim against this defendant. Plaintiffs reserve the right, however, to re-plead this claim against AHIF should additional information become available in discovery demonstrating that it acted "under actual or apparent authority, or color of law, of any foreign nation" in connection with its support of al Qaeda, and assuming TVPA claims are deemed viable against entities such as AHIF.

## IV.     IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD

If the Court finds plaintiffs' pleading deficient in any way, plaintiffs should be given leave to replead. Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." F.R.C.P. 15. In *Conley*, 355 U.S. at 48, the Supreme Court explained that, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." "Mere technicalities" should not prevent a case from being decided on the merits. *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). Accordingly, the Supreme Court has instructed that

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the

---

[11]     In addition, the Port Authority's existing damage claims encompass all losses proximately caused by the September 11 attacks. A natural and probable consequence of AHIF's role in the September 11 attacks, given the scale of the attack, would be lawsuits brought by victims seeking recovery of their losses. Thus, judgments and expenses issued against and incurred by the Port Authority that result from the *In re September 11 Litig.* are recoverable against AHIF and its co-defendants under either contribution or indemnity principles or simply as general or consequential damages for the Port Authorities other claims for relief. *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000); *Steitz v. Gifford*, 280 N.Y. 15, 20 (1939).

merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, no basis exists to deny leave to amend.

In particular, amendment should be permitted because a considerable amount of additional information about Al Haramain has become available since plaintiffs filed their complaints.  If permitted to amend, plaintiffs would allege:

- On September 4, 2004, the United States Department of Treasury designated the U.S. branch of Al Haramain – that is, defendant AHIF – as a supportor of terrorism.  The designation was based on a federal investigation that, accordingly to a Treasury Dept. press release, "shows direct links between the U.S. branch and Usama bin Laden."  At the same time, the government also designated one of AHIF's directors, defendant Soliman al-Buthe.  AHIF's chief, Aqeel al Aqeel, who also served as Secretary General of Al Haramain in Riyadh, had been previously designated on June, 2004.

- In 2000, AHIF engaged in a scheme, also involving AHSA, to divert donations made for "Chechen refugees" to al Qaeda *mujihadeen* fighters in Chechnya.

- Federal authorities are currently prosecuting AHIF and AHIF officers Perouz Sedaghaty and Soliman al-Buthe for their role in the scheme to divert charitable donations to al Qaeda fighters in Chechnya.

- Since March 2002 the United States and Saudi governments have designated 12 branches of Al Haramain based on evidence of "financial, material, and/or logistical support to the al Qaeda network and affiliated organizations."

- On June 2, 2004, the Saudi government announced that it was dissolving Al Haramain after complaints from the United States and others that it was funding al Qaeda and bin Laden.

- Mansour al Kadi, a former director of the AHIF, has described an extraordinary degree of centralization whereby AHIF was run directly and exclusively by Aqeel al Aqeel, who served as both Secretary General of Al Haramain and as head of the organization's U.S. branch.

Based on these facts, plaintiffs would allege that Al Haramain's American branch, AHIF, provided direct financial support to al Qaeda and bin Laden; that the entire Al Haramain organization, including AHIF, was operated directly by Aqeel al Aqeel to provide support (and

did provide such support) to al Qaeda.  These additional allegations would clearly suffice to state a claim against AHIF.[12]

## V.    THIS COURT HAS JURISDICTION OVER AHIF

AHIF's argument that it is not subject to jurisdiction in this Court proceeds on the assumption that plaintiffs fail to state a claim under the ATA and RICO.  *See* AHIF Property Mem. at 20.  It is beyond question that if plaintiffs *do* state a claim against AHIF under the ATA or RICO, this Court may assert personal jurisdiction over AHIF to adjudicate the ATA or RICO claims, as well as the other claims asserted in the complaints.  The ATA provides that claims may be brought in "any district where any plaintiff resides" and that process "may be served in any district where the defendant resides, is found, or has an agent."  18 U.S.C. § 2334(a).  RICO similarly provides that "process … may be served in any judicial district of the Untied States…" 18 U.S.C. § 1965(b).  Because the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United States."  *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984). AHIF is incorporated in Oregon; obviously, it has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction.  Moreover, if the court has personal jurisdiction over AHIF with respect to plaintiffs' ATA or RICO claims, then it may also assert pendent personal jurisdiction over the remaining claims that derive from the same events.  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993).

---

[12]       The *Cantor* plaintiffs have also asserted claims arising under international law and federal common law. *See Cantor* 1AC ¶¶ 225-230.  AHIF has not moved to dismiss those international law claims, but *assuming arguendo* that AHIF seeks dismissal in its reply papers, the *Cantor* plaintiffs reserve their rights to file a surreply on the international law issues and/or reserve their right to seek leave to amend.

Even if plaintiffs do not state a claim under the ATA or RICO, those statutes nonetheless provide a basis for the assertion of jurisdiction over AHIF, so long as plaintiffs' claims under the ATA or RICO are at least colorable. As the Second Circuit explained in *Herrmann*:

> Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

*Id*. at 1055.

Here, regardless of whether the Court finds that plaintiffs have stated claims under the ATA or RICO, plaintiffs' claims against AHIF under those statutes are not "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" so as to preclude the exercise of jurisdiction.

AHIF is also subject to jurisdiction here because, as alleged in the complaints and RICO Statements, it conspired with al Qaeda to attack the United States. On this point, the *Federal* plaintiffs refer the Court to the arguments set forth on pp. 22-24 of the Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Perouz Sedaghaty, incorporated herein by reference.

## CONCLUSION

For the foregoing reasons, this Court should deny AHIF's consolidated motion to dismiss in its entirety.

Respectfully submitted,


/s/_____          /s/_____
Stephen A. Cozen (SC 1625)           Ronald L. Motley, Esq. (RM-2730)
Elliott R. Feldman (EF 8111)         Jodi Westbrook Flowers, Esq.
Sean P. Carter (SC 0636)             Donald A. Migliori, Esq.
Mark T. Mullen (MM 2384)             Michael Elsner, Esq. (ME-8337)
COZEN O'CONNOR                       MOTLEY RICE LLC
1900 Market Street                   28 Bridgeside Boulevard
Philadelphia, PA 19103               P.O. Box 1792
Telephone:  (215) 665-2000           Mount Pleasant, South Carolina 29465
Facsimile:  (215) 665-2015           Telephone:  (843) 216-9000

Attorneys for *Federal* Plaintiffs   Paul J. Hanly, Jr., Esq. (PH-5486)
                                     Jayne Conroy, Esq. (JC-8611)
                                     Andrea Bierstein, Esq. (AB-4618)
                                     HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                                     415 Madison Avenue
                                     New York, NY 10017-1111
                                     Telephone:  (212) 401-7600

                                     Attorneys for *EuroBrokers* and *WTCP* Plaintiffs

                                     Kenneth L. Adams
                                     Richard W. Fields
                                     Jonathan M. Goodman
                                     Stacey A. Saiontz
                                     DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
                                     1177 Avenue of the Americas New York, N.Y. 10036-2714
                                     Telephone: (212) 835-1400
                                     Facsimile: (212) 997-9880

                                     Attorneys for *Cantor* Plaintiffs



                                     Robert M. Kaplan (RK1428)
                                     FERBER FROST CHAN & ESSNER, LLP
                                     530 Fifth Avenue, 23rd Floor
                                     New York, New York 10036-5101
                                     (212) 944-2200

                                     Attorneys for *Continental* Plaintiffs

David H. Fromm, Esq. (DH-9334)
Frank J. Rubino, Jr., Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

Attorneys for Plaintiff *New York Marine And General Insurance Company*

PHILA1\2249888\1 117430.000