UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al., 04-CV-05970;*
*Euro Brokers, Inc., et al. v. Al Baraka Invest. & Devel. Corp., et al., 04-CV-07279;*
*Federal Insurance Co., et al. v. Al Qaida, et al., 03-CV-6978;*
*New York Marine and General Insurance Co. v. Al Qaida, et al., 04-CV-6105;*
*World Trade Center Properties LLC, et al. v. Al Baraka Invest. & Devel. Corp., et al. 04-CV-07280.*

**PROPERTY DAMAGE PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS OF
PEROUZ SEDAGHATY**

April 8, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

APPLICABLE LEGAL STANDARDS ................................................................................ 3

ARGUMENT ...................................................................................................................... 6

I.   PLAINTIFFS STATE CLAIMS AGAINST SEDAGHATY UNDER THE ATA ........... 6

   A.  Al Haramain's Material Support of al Qaeda's Terrorist Activities.................................. 6

   B.  Sedaghaty Directly Participated in al Haramain's Sponsorship of al Qaeda...................... 9

II.  PLAINTIFFS STATE RICO CLAIMS AGAINST SEDAGHATY ................................ 11

   A.  The Insurance Company Plaintiffs Have Standing to Assert RICO Claims..................... 11

   B.  All of the Property Damage Plaintiffs Properly State RICO Claims................................ 13

III. SEDAGHATY IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' OTHER
     CLAIMS ................................................................................................................... 16

   A.  Plaintiffs Have Adequately Pleaded Common Law Claims for Property Destruction..... 16

   B.  The *Federal* Plaintiffs' Claims for Assault and Battery and Intentional Infliction
       of Emotional Distress Are Not Time Barred ................................................................. 16

   C.  The *Federal* Plaintiffs State Claims for Wrongful Death and Survival........................... 17

   D.  Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed ....... 19

   E.  Plaintiffs Reserve Their Rights as to TPVA Claims....................................................... 19

IV.  IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT,
     PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD ............................... 19

V.   THIS COURT HAS JURISDICTION OVER SEDAGHATY........................................ 21

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## CASES

All State Life Insurance Co. v. Linter Group Ltd.,
782 F. Supp. 215 (S.D.N.Y. 1992)................................................................23

Andre Emmerich Gallery v. Segre,
1997 WL. 672009 (S.D.N.Y. Oct. 29, 1997)...............................................23

Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters,
459 U.S. 519 (1983)....................................................................................15

Bedford Affiliates v. Sills,
156 F.3d 416 (2d Cir. 1998).......................................................................10

Bettis v. Islamic Republic of Iran,
315 F.3d 325 (D.C. Cir. 2003) ...................................................................16

Boim v. Quranic Literacy Institute,
291 F.3d 1000 (7th Cir. 2002) ...........................................................7, 8, 16

Burnett v. Al Baraka Invest. & Develop. Corp.,
274 F. Supp. 2d 86 (D.D.C. 2003) ....................................................3, 8, 10

Busch v. Buchman, Buchman & O'Brien, Law Firm,
11 F.3d 1255 (5th Cir. 1994) .....................................................................21

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998)..........................................................................4

Chrysler Capital Corp. v. Century Power Corp.,
778 F. Supp. 1260 (S.D.N.Y. 1991)............................................................23

Combs v. Adkins & Adkins Coal Co.,
597 F. Supp. 122 (D.D.C. 1984)..................................................................22

Conley v. Gibson,
355 U.S. 41 (1957)...........................................................................3, 4, 5, 19

De Jesus v. Sears, Roebuck & Co.,
87 F.3d 65 (2d Cir. 1996) ...........................................................................11

Dixon v. Mack,
    507 F. Supp. 345 (S.D.N.Y.) (1980)........................................................23

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D. N.Y. 2003)...................................................14

Estates of Ungar ex rel. Strachman v. Palestinian Authority,
    153 F. Supp. 2d 76 (D.R.I. 2001).........................................................21

Foman v. Davis,
    371 U.S. 178 (1962)..............................................................................20

Friedman v. Hartmann,
    1994 U.S. Dist. LEXIS 9727 (S.D. N.Y. 1994).....................................14

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980)....................................................................3

Holmes v. Security Investor Prot. Corp.,
    503 U.S. 258 (1992)..............................................................................15

IUE AFL-CIO Pension Fund v. Herrmann,
    9 F.3d 1049 (2d Cir. 1993)...................................................................22

Ideal Electronic Co. v. International Fidelity Insurance Co.,
    129 F.3d 143 (D.C. Cir. 1997)..............................................................17

In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,
    2004 U.S. Dist. LEXIS 3829 (S.D. N.Y. 2004).....................................17

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).....................................8, 16, 22, 24

Johnson v. Nyack Hospital,
    86 F.3d 8 (2d Cir. 1996).......................................................................17

Jones v. R.R. Donnelly & Sons Co.,
    541 U.S. 369 (2004)..............................................................................17

Leatherman v. Tarrant County,
    507 U.S. 163 (1993)................................................................................4

Lerner v. Fleet Bank, N.A.,
    318 F.3d 113 (2d Cir. 2003)..................................................................15

Louisiana Land & Exploration Co. v. Unocal Corp.,
    863 F. Supp. 306 (E.D. La. 1994) ............................................................17

Monahan v. NYC Department of Corr.,
    214 F.3d 275 (2d Cir. 2000) ...................................................................20

National Asbestos Workers Medical Fund v. Philip Morris, Inc.,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) ................................................12, 15

Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005) ...........................................................5, 6, 7, 10

Phelps v. Kapnolas,
    308 F.3d 180 (2d Cir. 2002) ........................................................3, 4, 5, 6, 10

Rasul v. Bush,
    124 S. Ct. 2686 (2004) ...........................................................................14

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ..............................................................21

Simon v. Philip Morris, Inc.,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) .........................................................23

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000) ...........................................................4, 5

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002) ..........................................................................4, 5, 6, 7

Thomson-CSF, S.A. v. Amer. Arbitration Association,
    64 F.3d 773 (2d Cir. 1995) ....................................................................11

United States v. Louie,
    625 F. Supp. 1327 (S.D. N.Y. 1985) .......................................................14

United States v. Turkette,
    452 U.S. 576 (1981) ...............................................................................13

Von Bulow v. Von Bulow,
    634 F. Supp. 1284 (S.D. N.Y. 1986) .......................................................15

Woodford v. Community Action Agency,
    239 F.3d 517 (2d Cir. 2001) .....................................................................4

Wynder v. McMahon,
   360 F.3d 73 (2d Cir. 2004)..................................................................3, 4

Yeadon v. New York Transit Authority,
   719 F. Supp. 204 (S.D. N.Y. 1989)..........................................................17

## STATUTES

18 U.S.C. § 1962(a) ..........................................................................13, 14

18 U.S.C. § 1962(c) .......................................................................13, 14, 15

18 U.S.C. § 1962(d) ......................................................................13, 14, 15

18 U.S.C. § 1965(b) ...............................................................................21

18 U.S.C. § 2334(a) ...............................................................................21

28 U.S.C. § 1350 ...................................................................................19

C.P.L.R. 302(a)(2) .................................................................................27

F.R.C.P. 8(a) .........................................................................................5

F.R.C.P. 8(a)(2)......................................................................................4

F.R.C.P. 9(b)  ........................................................................................4

F.R.C.P. 12(b)(6) ............................................................................4, 5, 15

F.R.C.P. 15 ...........................................................................................19

N.Y. CLS Work. Comp. § 29(2)..................................................................18

## CONGRESSIONAL RECORD

137 Cong. Rec. S4511 04 (April 16, 1991) ...................................................16

## INTRODUCTION

In his motion to dismiss the claims of the Property Damage Plaintiffs,[1] defendant Perouz Sedaghaty ("Sedaghaty") seeks to distance himself from the global terrorist front for which he served as an officer, commonly known as the Al Haramain Islamic Foundation ("Al Haramain"). As alleged in the complaints and RICO Statements at issue here, Sedaghaty served as an officer of al Haramain Islamic Foundation, Inc. ("AHIF") the Oregon-based U.S. branch of Al Haramain, a global entity based in Saudi Arabia.[2]  The Riyadh office of Al Haramain ("AHSA") was – until the Saudi government announced that it was dissolving al Haramain amid suspicions that it was a terrorist front that had provided financing and other support to al Qaeda and Osama bin Laden – the headquarters of a vast network of offices and representatives around the world. At least twelve of those branches, including AHIF, have been designated by the U.S. government as global sponsors of terrorism and, as noted above, the Saudi government has stated that it is dissolving all elements of the global organization as a counter-terrorism measure.

As alleged in the complaints, Al Haramain is a "Saudi charity front that has exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism."  *WTCP* Complaint ¶ 292. Plaintiffs allege that "Al Haramain has long acted as a fully integrated component of al Qaida's logistical and financial

---

[1] The Property Damage Plaintiffs consist of plaintiffs in *Continental Casualty Co. v. Al Qaeda Islamic Army*, 04-CV-05970 ("*Continental*"); *Euro Brokers, Inc. v. Al Baraka Invest. & Devel. Corp.*, 04-CV-07279 ("*EuroBrokers*"); *Federal Insurance Co. v. Al Qaida*, 03-CV-6978 ("*Federal*"); *New York Marine and General Insurance Co. v. Al Qaida*, 04-CV-6105 ("*NYMAGIC")*; *World Trade Center Properties LLC v. Al Baraka Invest. & Devel. Corp.* 04-CV-07280 ("*WTCP*").

Defendant has styled its motion as one to dismiss the "Consolidated Property Damage and Insurance Complaint," but that is a misnomer, as there is no such consolidated complaint.  Despite its title, the motion is, in fact, a consolidated *motion* addressed to six different complaints and the RICO statements associated with them. Moreover, the *Federal* action seeks recovery for both property damages and assigned personal injuries and wrongful deaths.  As such, it is inaccurate to characterize *Federal* as solely a property damage or insurance case.  However, because the pleadings are similar and the issues nearly identical, the Property Damage Plaintiffs have elected to file a consolidated response to defendant's motion.

[2] In its motion to dismiss, AHIF styles itself "Al Haramain Islamic Foundation, Inc. (USA)," but, with one exception, *see O'Neill* 2AC, the complaints at issue in this lawsuit do not so denominate it.  Rather, like the larger organization of which it is a part, AHIF is identified in the various complaints simply as Al Haramain Islamic Foundation.

support infrastructure, and provided material support and resources to al Qaida and affiliated [Foreign Terrorist Organizations]." *Federal* First Amended Complaint (1AC) ¶ 170. Specifically, "Al-Haramain has knowingly and intentionally lent material support to Al Qaeda through, inter alia, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *EuroBrokers* Complaint ¶ 63. Moreover, "[p]rior to September 11, 2001 Al-Haramain, which receives the bulk of its donations from Saudi Arabia and the Middle East, laundered money for Al Qaeda." *EuroBrokers* Complaint ¶ 64. Evidence assembled by the U.S. Treasury Department demonstrates the Al Haramain played a significant role in the 1998 bombings of two U.S. embassies in East Africa. *See Federal* 1AC ¶ 173; *see also EuroBrokers* Complaint ¶ 67 (alleging U.S. government designated Al Haramain because, inter alia, its offices agreed to finance bombing of U.S. embassies in Kenya and Tanzania). Al Haramain also directly funded the 2002 Bali nightclub bombing. *Federal* 1AC at ¶ 172.

Moreover, the complaints allege that "[t]he al-Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations," *WTCP* Complaint ¶ 310; *Continental* First Amended Complaint (1AC) ¶ 512; and that the Oregon branch was one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia. *EuroBrokers* Complaint, ¶ 62; *Federal* RICO Statement, Exhibit A. Indeed, "[t]he President and Vice-President of the United States branch, Aqeel al-Aqeel and Mansour al-Kadi, both reside in Riyadh, Saudi Arabia where they run all of al-Haramain worldwide." *WTCP* Complaint ¶ 292. Al-Aqeel was not only the President of AHIF, he was also the Secretary General of AHSA, while al-Kadi was simultaneously Vice-President of AHIF and Deputy General of AHSA. *WTCP* Complaint, ¶ 310; *Continental* 1AC ¶ 512. Al Haramain operated a single website for all its branches. See *WTCP* Complaint ¶ 300; *Continental* 1AC ¶ 502. This same website had a direct link to a website specifically promoting al Qaeda. *WTCP* Complaint ¶ 307; *Federal* RICO Statement Ex. A.

Despite these specific allegations, Sedaghaty asks this Court to dismiss the Complaints because, he argues, AHIF is an "independent affiliate" of Al Haramain.[3]  The evidentiary record already before the Court belies this claim, and any remaining factual disputes cannot be resolved on this motion to dismiss.  Indeed, that was the precise holding of Judge Robertson when AHIF moved to dismiss the Burnett (D.C.) complaint.  *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003).  Judge Robertson correctly found that plaintiffs adequately alleged the role of Al Haramain in providing material support to al Qaeda and that plaintiffs adequately alleged that AHIF and Al Haramain were one and the same.  This Court should follow Judge Robertson's correct holding and similarly deny Sedaghaty's motion to dismiss.

## APPLICABLE LEGAL STANDARDS

Sedaghaty moves to dismiss the Property Damage Complaints pursuant to F.R.C.P. 12(b)(6), for failure to state a claim. Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether the Property Damage Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them.  *Wynder*, 360 F.3d at 77; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second

---

[3] On this Rule 12(b)(6) motion, the "evidence" that Sedaghaty has submitted should be disregarded.  Plaintiffs note, however, that even if these materials could be considered, they do not contradict in any way the allegations of the Complaint.  Rather, the materials Sedaghaty has submitted confirm that, until 2003, AHIF and AHSA had interlocking boards of directors, precisely as plaintiffs allege.

Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P. 8(a)(2), which is extremely permissive.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (*quoting Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2001 WL 936257 (D.C. Cir. July 12, 2001)  (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  *Id.* at 182. Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering.  *Id*.  The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*,

deliberate indifference.  The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge.  *Id.* at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference."  *Id.* at 186-87.  The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187(*quoting Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste.  Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (citations omitted).

More recently, in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries."  *Id.* at 511.  The Second Circuit rejected this approach.  It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required

to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P." *Id.* at 512.  Quoting the

unanimous Supreme Court ruling in *Swierkiewicz*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on
> liberal discovery rules and summary judgment motions to define
> disputed facts and issues and to dispose of unmeritorious claims.
> The provisions for discovery are so flexible and the provisions for
> pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

## ARGUMENT

## I.   PLAINTIFFS STATE CLAIMS AGAINST SEDAGHATY UNDER THE ATA

Sedaghaty argues that the Property Damage Plaintiffs have not sufficiently alleged claims

against him under the ATA because, Sedaghaty argues, plaintiffs' claims are based on the acts of

AHSA and its other affiliates, which cannot, Sedaghaty contends, be attributed to AHIF or to

him as an officer of AHIF.  Sedaghaty is wrong:  plaintiffs adequately allege that AHIF, AHSA,

and the other Al Haramain branches are one and the same.  Moreover, plaintiffs also adequately

allege that Sedaghaty actively participated in a global scheme, implemented through AHIF,

AHSA and the organizations' other branches, to support Al Qaeda.

### A.   Al Haramain's Material Support of al Qaeda's Terrorist Activities

Before turning to the relationship between AHIF and Al Haramain and Sedaghaty's

complicity in Al Haramain's conduct, plaintiffs note that they have more than adequately alleged

Al Haramain's knowing sponsorship of the terrorist activities of al Qaeda.  Plaintiffs have

specifically and repeatedly alleged that Al Haramain knowingly and intentionally provided direct

assistance to Osama bin Laden, al Qaeda, and international terrorism:

- "Al Haramain has long acted as a fully integrated component of al Qaida's
  logistical and financial support infrastructure, and provided material support and

resources to al Qaida and affiliated [Foreign Terrorist Organizations]." *Federal* 1AC ¶ 170.

- "Al-Haramain has knowingly and intentionally lent material support to Al Qaeda through, inter alia, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *EuroBrokers* Complaint ¶ 63; *Cantor* 1AC ¶¶ 75-83.

- "Prior to September 11, 2001 Al-Haramain, which receives the bulk of its donations from Saudi Arabia and the Middle East, laundered money for Al Qaeda." *EuroBrokers* Complaint ¶ 64; *Cantor* 1AC ¶ 78.

- "According to a senior Al Qaeda operative, Umar Faruq, Al-Haramain 'was the funding mechanism of all [Al Qaeda] operations in Indonesia' and the Al-Haramain office funding those terrorist operations 'was working under the control of a representative of Usama bin Laden.'" *EuroBrokers* Complaint ¶ 69; *Cantor* 1AC ¶ 83.

- "al-Haramain Islamic Foundation, Inc., is a Saudi charity front that has exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism." *WTCP* Complaint ¶ 292.

- "al-Haramain, ... has acted as a channel for financing the activities of terrorist organizations." *Continental* 1AC ¶ 492.

- "Al-Haramain knowingly and intentionally collected, diverted and transferred funds to Al Qaida and otherwise lent material support to Al Qaida. Al-Haramain knowingly and intentionally provided repeated material support and substantial assistance to Al Qaida through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings. . . ." *NYMAGIC* RICO Statement, ¶ 2.

These allegations are sufficient to state claims under the ATA.  Under the ATA, a defendant is liable if it provided any material support to al Qaeda with knowledge of its terrorist agenda or if it aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct.  *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002), *motion to stay mandate den'd.*, 297 F.3d 542 (7th Cir. 2002).  As detailed above, plaintiffs have alleged that Al Haramain, acting through its officers and directors, knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaeda.  This Court has already recognized that,

under the ATA, "material support includes money [and] financial services . . . ." *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005) ["January 18 Order"].

Plaintiffs also properly allege that Al Haramain's support and assistance was a proximate cause of the September 11 attacks.[4] Plaintiffs allege that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials." *EuroBrokers* Complaint ¶ 5; *accord WTCP* Complaint ¶ 1; *Cantor* 1AC ¶ 11; *Continental* 1AC ¶ 29; *NYMAGIC* 1AC ¶ 53; *Federal* 1AC ¶ 74. *See also Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence."). Moreover, this Court has already held that "[i]n light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda." *In Re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 826. Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id.* at 829. Under the standards set forth in this Court's January 18 Order, plaintiffs have properly pleaded a claim under the ATA.[5]

---

[4] It remains an open question as to whether, for insurance purposes, the hijackings and plane crashes of September 11, 2001, constitute a single "attack" or multiple "attacks." The use of either the singular or the plural in this memorandum should not be taken as a position or concession by any of the plaintiffs on that issue.

[5] Judge Robertson reached this same conclusion in the context of the virtually identical Burnett complaint, holding that the "allegations of Al-Haramain's relationships with al Qaeda are more than sufficient to permit the inference that Al-Haramain . . . provided material support to al Qaeda with knowledge of, and the intent to further, al Qaeda's terrorist activities." *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003). Judge Robertson further found that the "allegations provide support for an inference of a causal link between AHIF's funding and the attacks of September 11." *Id.* at 105. Although Judge Robertson's decision is not binding on this

**B.      Sedaghaty Directly Participated in al Haramain's Sponsorship of al Qaeda**

Sedaghaty contends, however, that AHIF is entirely separate from Al Haramain, and that

he cannot be held liable based on allegations against the larger entity.  In making this argument,

Sedaghaty conveniently ignores that plaintiffs' have specifically alleged:  (1) that AHIF and Al

Haramain operated as a single entity; and (2) that AHIF and Sedaghaty actively participated in al

Haramain's coordinated campaign to support al Qaeda:

- "In the United States, al-Haramain has three business entities in Ashland, Oregon:
  al-Haramain Foundation, al-Haramain Islamic Foundation, and al-Haramain
  Islamic Foundation, Inc.  All three of these separately filed businesses are at the
  same address and under the same management.  *These three businesses are one
  and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia.*  The
  President and Vice-President of the United States branch, Aqeel al- Aqeel and
  Mansour al-Kadi, are the Secretary General and Deputy General, respectively, of
  the Riyadh office.  The al-Haramain branch in Ashland, Oregon, is specifically
  linked to al Qaeda operations."  *WTCP* Complaint,  310; *Continental* 1AC ¶ 512
  (emphasis added).

- "Defendants Al-Haramain Islamic Foundation, Inc., Al-Haramain Foundation,
  and Al-Haramain Islamic Foundation, are all necessary and integrated parts of the
  same foundation and are otherwise substantively interconnected. . . . *These Al-
  Haramain entities are also all financed, controlled and directed through a
  centralized command and financial structure—and every Al-Haramain branch
  office was controlled and directed by the 'home' office in Saudi Arabia."*
  *EuroBrokers* Complaint ¶ 62; *Cantor* 1AC ¶¶ 74-75 (emphasis added).

- "AHIF has offices all over the world from which it coordinates its support for the
  Enterprise, Radical Muslim Terrorism, and an interlocking management by which
  it effectuates that support." *Federal* RICO Statement, Exhibit A.

- "[E]very Al-Haramain branch office was controlled and directed by the "home"
  office in Saudi Arabia.  As Shaykh Aqeel [Al Haramain General Director] has
  admitted 'Yes. Of course.  The offices' directors are employees who follow
  directions of the main office with regards to hiring workers at the offices and
  making any decisions on cooperation with any party." *Cantor* 1AC ¶ 75.

- When viewed as a single entity, AHIF is one of the principal Islamic
  organizations providing support for the al Qaida network and promoting militant
  Islamic doctrine worldwide.  Under the leadership of Aqeel Abdulaziz Al-Aqil,
  the founder and long-time leader of AHIF and an al Qaida supporter, AHIF,

Court, it should be followed here because it is manifestly correct as well as consistent with this Court's January 18,
2005 Order.

numerous AHIF field offices and AHIF representatives operating throughout Africa, Asia, Europe and North America provided financial and material support to the al Qaida network. *Federal* RICO Statement, Exhibit A.

- "[U]nder Aqeel Abdulaziz Al-Aqil's leadership, AHIF implemented its [sponsorship of al Qaeda] through its offices and representatives, which span more than fifty countries around the world. *Federal* RICO Statement, Exhibit A.

- In the United States, AHIF's Ashland, Oregon office, of which [Sedaghaty] was the secretary, committed violations of the Internal Revenue Code, Money Laundering Control Act and Bank Secrecy Act which [involved] funneling money to al Qaida. *Federal* RICO Statement, Exhibit A.

- In 2004, the United States Attorney's Office for the District of Oregon announced the execution of a federal search warrant against property purchased on behalf of the Al Haramain Islamic Foundation, Inc. in Ashland, Oregon.  The accompanying affidavit by IRS Special Agent Colleen Anderson alleges Al Haramain and its officers [including Sedaghaty] attempted to conceal the transfer of $130,000 in American Express traveler's checks and a $21,000 cashier's check intended for aid to Muslims in Chechnya in mid-March of 2000. *WTCP* RICO Statement, Exhibit A.

Sedaghaty disputes these allegations, as he is entitled to do.  But, as Judge Robertson explained when AHIF made precisely the same argument before him in the Burnett case:

> AHIF fervently disputes the allegation that it is one and the same as Al-Haramain. That dispute, however, is a factual one, to be sorted out in discovery, and with a motion for summary judgment, but not on a motion to dismiss under Rule 12(b)(6).  At this stage, the court must accept plaintiffs' factual allegations as true.

*Burnett v. Al Baraka Invest. & Develop. Corp., 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003)*

*("Burnett I")*.  Accordingly, Judge Robertson held that the allegations concerning Al Haramain were sufficient to establish a claim against AHIF, "since it is alleged to be 'one and the same' as the Saudi Arabian headquarters . . . ." *Id.* at 104.

Sedaghaty's contention that plaintiffs should be required to plead sufficient evidence to *prove* that AHIF and Al Haramain are the same is precisely the argument rejected by the Second Circuit in *Phelps*, 308 F.3d at 187, and in *Pelman*, 396 F.3d at 512.  On the contrary, plaintiffs are entitled to take discovery before they are called upon to prove their case.  The authorities cited by Sedaghaty do not hold otherwise.  In *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir.

1998), for example, the Second Circuit discussed what plaintiff needed to prove at trial, not what needed to be pled.  Similarly, the procedural posture of *Thomson-CSF, S.A. v. Amer. Arbitration Assn.*, 64 F.3d 773 (2d Cir. 1995) – a declaratory judgment action to avoid arbitration – was such that plaintiff was required to prove, not merely allege, the inter-relationship of the corporations on which the obligation to arbitrate depended.  Finally, in *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996), *cert. den'd.*, 519 U.S. 1007 (1996), the Second Circuit found a bare allegation of control, without more, insufficient, but plaintiffs here allege substantially more.  As noted above, plaintiffs allege interlocking management and a centralized command and financial structure.  *See supra* pp. 9-10.

Plaintiffs have alleged that AHIF and the now-defunct AHSA were one and the same, that they had interlocking management, and shared a centralized command and financial structure.  Plaintiffs have further alleged that Sedaghaty actively participated, through his role as an officer of AHIF, in al Haramain's sponsorship of al Qaeda.  Plaintiffs are entitled to the opportunity to take discovery and prove these allegations and establish that Sedaghaty and AHIF knowingly and intentionally participated in the Al Haramain network's sponsorship of al Qaeda.

## II.   PLAINTIFFS STATE RICO CLAIMS AGAINST SEDAGHATY

### A.   The Insurance Company Plaintiffs Have Standing to Assert RICO Claims

Sedaghaty does not challenge (and thus concedes) that the *EuroBrokers*, and *WTCP* plaintiffs have standing to assert claims under RICO.  Sedaghaty does contend that the insurance company plaintiffs (plaintiffs in *Federal, NYMAGIC*, and *Continental*), lack standing to assert claims under RICO.  But Sedaghaty is under a misapprehension about the nature of the insurance company claims and is wrong in any case.

Sedaghaty asserts that the insurance company plaintiffs lack standing under RICO because "their injuries are subrogation injuries that arise from the personal injuries of the

insureds, not an injury to their business or property." Sedaghaty Property Mem. at 12. This simply is not true. As alleged in the *Continental* complaint, the insurance company plaintiffs "provided insurance coverage to numerous insureds whose *property* was damaged or destroyed in the September 11th attacks." *Continental* 1AC ¶ 595 (emphasis supplied). Thus, it is clear that the *Continental* Plaintiffs provided *property* insurance and paid claims for *property* losses associated with the September 11 terrorist attack; their claims do not derive in any way from the horrendous injuries and loss of life that occurred that day. Similarly, as alleged in the *NYMAGIC* 1AC, *NYMAGIC* "provided insurance coverage to the airline companies (the 'insureds') which owned and operated the commercial airliners which were hijacked and used as weapons in the September 11th Attack." *NYMAGIC* 1AC ¶ 54. Plainly, the losses suffered by *NYMAGIC's* insureds were not personal injuries, but rather injuries to their business or property. Likewise, the *Federal* Plaintiffs seek recovery of several billion dollars paid to their insureds in compensation for property damages and related losses resulting from the September 11th attacks. *Federal* 1AC ¶¶ 541-577.

Moreover, while the *Federal* action also asserts subrogation claims arising from payments made in compensation for personal injuries and deaths suffered by victims of the September 11th attacks (in addition to the claims for property damages discussed above), the *Federal* Plaintiffs clearly have standing to pursue recovery under RICO for those claims as well. *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F.Supp.2d 221 (E.D.N.Y. 1999). On this point, the Federal Plaintiffs refer the Court to the discussion on pp. 11-13 of the Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Al Haramain Islamic Foundation, Inc., incorporated herein by reference.

### B.       All of the Property Damage Plaintiffs Properly State RICO Claims

Sedaghaty also contends that none of the Property Damage Plaintiffs have properly pleaded their RICO claims.[6]  Sedaghaty is wrong.

Plaintiffs' complaints and RICO Statements assert RICO claims against Sedaghaty pursuant to sections 1962(a), (c) and (d).  The identified enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is a known terrorist organization with a well documented desire to perpetrate acts of terrorism and racketeering.  *See Federal* RICO Statement ¶ 5.  Thus, plaintiffs have sufficiently pled the existence of an enterprise:  "a group of persons associated together for a common purpose of engaging in a course of conduct" or "an ongoing organization, formal or informal."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981).

The plaintiffs' complaints and RICO statements further allege that Sedaghaty engaged in conduct in furtherance of the enterprise which is actionable under section 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

In the present case, plaintiffs allege that Sedaghaty, as an officer of AHIF, solicited funds from donors in the United States and throughout the World under the guise of "charity," and diverted the funds collected under that false pretense to al Qaeda.  Thus, the complaints and RICO statements plainly allege that Sedaghaty derived income through a pattern of racketeering activity, including multiple acts of mail and wire fraud, and invested that income in the enterprise.  As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors,

---

[6] Sedaghaty claims that RICO statements were not filed in the *WTCP*, *EuroBrokers,* and *Continental* cases.  On February 25, 2005, however, plaintiffs in *WTCP* and *EuroBrokers* timely filed RICO statements.

including the September 11th attacks, directly affect interstate commerce, plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

The complaints and RICO Statements similarly allege sufficient involvement by Sedaghaty in the enterprise to sustain claims under Sections 1962(c) and (d).  A plaintiff asserting a civil claim under 1962(c) must allege that the defendant participated in the operation or management of the enterprise.  *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003).  To sustain a claim under 1962(d), the plaintiff must allege that the defendant was a "central figure" in the underlying scheme.  Id. at 165.  However, "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'"  *United States v. Louie*, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985) (citing 18 U.S.C. § 1962(c)).  Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise."  *Friedman v. Hartmann*, 1994 U.S. Dist. LEXIS 9727, 4-5 (S.D. N.Y. 1994).

Here, the plaintiffs have satisfied the pleading standards applicable to their 1962(c) and 1962(d) claims, as set forth above.  The plaintiffs allege that Sedaghaty and the other officers of al Haramain conceived and carried out a calculated global campaign, orchestrated by al Haramain's Saudi headquarters and involving senior organization officials and each of its branch offices, to raise and launder funds on behalf of, and otherwise materially support, al Qaeda.  In view of the allegations regarding Sedaghaty's integral and pervasive sponsorship of al Qaeda's operations throughout the world, the plaintiffs have adequately alleged that Sedaghaty played a

direct and active role in the management and operation of al Qaeda's fundraising scheme, and that Sedaghaty was a central figure in the enterprise in the years leading up to the attacks.  As such, the plaintiffs have met their pleading burden in relation to their Section 1962(c) and 1962(d) claims, particularly given the fact that the plaintiffs have not yet been afforded the opportunity to conduct discovery.

Plaintiffs also have adequately alleged proximate cause.  This requirement is satisfied if plaintiffs allege that the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (*citing Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is likely imprudent.  *National Asbestos Workers*, 74 F. Supp. 2d at 225.  This Court's decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983) and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  *Id.*  Further, failure to explain the alleged injury in detail is not fatal.  *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986).  Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6).  *Id.*  The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts."  *Id.* (citations omitted).  Here, plaintiffs allege that they were injured directly by Sedaghaty's participation in al Qaida's campaign to attack the United States, and in particular by its provision of "material support and resources to al Qaida."  *Federal* 1AC ¶¶ 72-74.  Sedaghaty has participated extensively in al

Qaida's global operations, and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States, by providing al Qaida with "the financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." *Federal* 1AC ¶ 74. Accordingly, plaintiffs have properly pled causation under RICO.

## III.    SEDAGHATY IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' OTHER CLAIMS

The remainder of plaintiffs' claims similarly ought not be dismissed.

### A.    Plaintiffs Have Adequately Pleaded Common Law Claims for Property Destruction

Sedaghaty argues that plaintiffs have not properly pleaded the necessary causal connection to maintain claims for common law torts. This argument should be rejected for the reasons set forth above, see supra Point I. Indeed, this Court has already held that plaintiffs may maintain common law claims against parties who conspired with, or aided and abetted, al Qaeda. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 830.

### B.    The *Federal* Plaintiffs' Claims for Assault and Battery and Intentional Infliction of Emotional Distress Are Not Time Barred

The *Federal* Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not time-barred for two reasons. First, these claims are subsumed within plaintiffs' claims under the Anti-Terrorism Act, which imports into that federal cause of action "the remedies of American tort law." See 137 Cong. Rec. S4511 04 (April 16, 1991); *see also Boim*, 291 F.3d at 1010 (language and history of ATA "evidence[] an intent by Congress to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law"). To the extent that these claims have been "federalized" under the Anti-Terrorism Act, they are governed by federal law. *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) (federal law determines the "extent and

nature" of claims brought under a federal statute).[7]  State statutes of limitation are inapplicable to federal common law claims.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). *See also Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306, 309 (E.D. La. 1994), *reconsideration denied*, 1995 WL 672835 (E.D. La. Nov. 9, 1995) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).

Moreover, all of the *Federal* Plaintiffs' claims arise from Sedaghaty's participation in the conspiracy to conduct terrorist attacks against the United States; a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until the *Federal* Plaintiffs reasonably should have become aware of Sedaghaty's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D. N. Y. 2004).  Given this fact, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[8]

## C.    The *Federal* Plaintiffs State Claims for Wrongful Death and Survival

Sedaghaty's primary argument for dismissal of the claims for wrongful death and survival is entirely derivative of its argument for dismissal of the ATA claims.  As demonstrated

---

[7] Should plaintiffs' claims under the ATA fail for any reason, however, the common law claims also exist as separate claims arising under state law.  In determining which states' laws govern, this Court would apply the choice-of-law rules used by New York.  *See Ideal Electronic Co. v. International Fidelity Ins. Co*., 129 F.3d 143 (D.C. Cir. 1997), *aff'd on appeal after remand,* 203 F.3d 53 (D.C. Cir. 1999) (federal court hearing state-law claims applies choice of law rules of the place in which it sits).

[8] Sedaghaty also maintains that these claims are barred because the *Federal* Plaintiffs have failed adequately to allege causation. This is merely a repetition of AHIF's argument with respect to the ATA and causation generally and should be rejected for the reasons described above, *see supra,* pp. 6-11.

above, plaintiffs have sufficiently pleaded that causal connection between Sedaghaty's support of Osama bin Laden and al Qaeda and the injuries and deaths suffered on September 11.

Sedaghaty also argues that the *Federal* plaintiffs may not maintain claims for wrongful death and survival because they are not the personal representatives of the decedents.  This argument arises from Sedaghaty's fundamental misunderstanding of the rights of workers' compensation insurers under the applicable workers' compensation statutes.  For example, under the New York Workers' Compensation Act, the statute pursuant to which the vast majority of *Federal* plaintiffs made workers' compensation payments, the injured employee, or in the case of death, his dependents, holds the exclusive right to bring a claim against a responsible third party during the twelve months following the incident giving rise to the underlying injuries.  In the event that the injured employee or his dependents fail to pursue an action during that time, the insurer obtains the right to bring an action for the underlying injury or death, upon thirty (30) days notice to the injured employee or his dependents.  Significantly, where the requisite notice has been provided, failure by the injured worker or his dependents to commence an action "shall operate as an assignment of the cause of action" to the insurer.  N.Y. CLS Work. Comp. §29(2).

As set forth in the *Federal* 1AC, the *Federal* plaintiffs provided the requisite notice to all of the injured employees and dependents of employees for whom claims are asserted in the *Federal* action.  Those injured employees and dependents failed to pursue a claim against the defendants within the statutorily proscribed period, and their claims against the defendants, for both compensated and uncompensated losses, were consequently assigned to the *Federal* plaintiffs.  As such, the *Federal* plaintiffs clearly possess standing to pursue those claims in accordance with the provisions of the relevant workers' compensation statutes.

### D.    Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed

Sedaghaty seeks dismissal of plaintiffs' claim for punitive damages on the ground that, under New York law, punitive damages are a remedy, not a cause of action.  Sedaghaty presents no argument that plaintiffs are not entitled to recover punitive damages in this lawsuit.  Indeed, it is clear that punitive damages are available in connection with the claims that plaintiffs assert. Further, because the question of what law governs plaintiffs' claims remains open, this Court should not dismiss plaintiffs' claim for punitive damages because of this technicality of New York law.  The same is true with respect to plaintiffs' claims for conspiracy.  If plaintiffs have properly pleaded a conspiracy theory of liability against Sedaghaty, the claim should not be dismissed at this time merely because, under New York, this is an alternate basis of liability rather than a separate claim.

### E.    Plaintiffs Reserve Their Rights as to TPVA Claims

AHIF has moved to dismiss plaintiffs' claim under the Torture Victim Protection Act ("TVPA"), codified at 28 U.S.C. § 1350.  Plaintiffs do not currently intend to pursue this claim against this defendant.  Plaintiffs reserve the right, however, to re-plead this claim against Sedaghaty should additional information become available in discovery demonstrating that he acted "under actual or apparent authority, or color of law, of any foreign nation" in connection with his support of al Qaeda.

## IV.    IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD

If the Court finds plaintiffs' pleading deficient in any way, plaintiffs should be given leave to replead.  Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  F.R.C.P. 15.  In *Conley*, 355 U.S. at 48, the Supreme Court explained that, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is

to facilitate a proper decision on the merits."  "Mere technicalities" should not prevent a case from being decided on the merits.  *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).  Accordingly, the Supreme Court has instructed that

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, no basis exists to deny leave to amend.

In particular, amendment should be permitted because a considerable amount of additional information about Al Haramain's role in supporting al Qaeda's global operations, and Sedaghaty's participation in same, has become available since plaintiffs filed their complaints and RICO statements.  If permitted to amend, plaintiffs would allege:

- On September 4, 2004, the United States Department of Treasury designated the U.S. branch of Al Haramain – that is, defendant AHIF – as a supportor of terrorism.  The designation was based on a federal investigation that, accordingly to a Treasury Dept. press release, "shows direct links between the U.S. branch and Usama bin Laden."  At the same time, the government also designated one of AHIF's directors, defendant Soliman al-Buthe.  AHIF's chief, Aqeel al Aqeel, who also served as Secretary General of Al Haramain in Riyadh, had been previously designated on June 2, 2004.

- In 2000, AHIF engaged in a scheme, also involving AHSA, to divert donations made for "Chechen refugees" to al Qaida mujihadeen fighters in Chechnya.

- Federal authorities are currently prosecuting AHIF and AHIF officers Perouz Sedaghaty and Soliman al-Buthe for their role in the scheme to divert charitable donations to al Qaida fighters in Chechnya.

- Since March 2002 the United States and Saudi governments have designated 12 branches of Al Haramain based on evidence of "financial, material, and/or logistical support to the al Qaeda network and affiliated organizations."

- On June 2, 2004, the Saudi government announced that it was dissolving Al Haramain after complaints from the United States and others that it was funding al Qaeda and bin Laden.

- Mansour al Kadi, a former director of the AHIF, has described an extraordinary degree of centralization whereby AHIF was run directly and exclusively by Aqeel al Aqeel, who served as both Secretary General of Al Haramain and as head of the organization's U.S. branch.

Based on these facts, plaintiffs would allege that Al Haramain's American branch, AHIF, provided direct financial support to al Qaeda and bin Laden; that the entire Al Haramain organization, including AHIF, was operated directly by Aqeel al Aqeel to provide support (and did provide such support) to al Qaeda; and that Sedaghaty directly participated in al Haramain's global scheme to channel support to al Qaeda. These additional allegations would clearly suffice to state a claim against Sedaghaty.

## V.   THIS COURT HAS JURISDICTION OVER SEDAGHATY

Sedaghaty's argument that he is not subject to jurisdiction in this Court proceeds on the assumption that plaintiffs fail to state claims under the ATA and RICO. *See* Sedaghaty Property Mem. at 18-19. It is beyond question that if plaintiffs *do* state a claim against Sedaghaty under the ATA or RICO, this Court may assert personal jurisdiction over AHIF to adjudicate the ATA and RICO claims, as well as all of the other claims asserted in the complaints. The ATA provides that claims may be brought in "any district where any plaintiff resides" and that process "may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a). RICO similarly provides that "process … may be served in any judicial district of the Untied States…" 18 U.S.C. § 1965(b). Because both statutes provide for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Strachman v.*

*Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984).  Sedaghaty is a resident of  Oregon and served as an officer of AHIF's Oregon offices; obviously, he has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction.  Moreover, if the court has personal jurisdiction over Sedaghaty with respect to plaintiffs' ATA or RICO claims, then it may also assert pendent personal jurisdiction over the remaining claims that derive from the same events. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993).

Even if plaintiffs do not state a claim under the ATA or RICO, that statutes nonetheless provide a basis for the assertion of jurisdiction over Sedaghaty, so long as plaintiffs' claims under either the ATA or RICO are at least colorable. As the Second Circuit explained in *Herrmann*:

> Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

*Id.* at 1055.

Here, regardless of whether the Court finds that plaintiffs have stated a claims under the ATA or RICO, plaintiffs' claims against Sedaghaty under those statutes are not "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" so as to preclude the exercise of jurisdiction.

Sedaghaty also is subject to jurisdiction here because, as alleged in the complaints and RICO Statements, he conspired with al Qaeda to attack the United States.  Courts within this circuit have recognized that they may assert jurisdiction over a defendant based on the activities of co-conspirators in the forum.  *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 805 (acts committed in New York by co-conspirators subject out of state defendant to

jurisdiction under CPLR 302(a)(2)); *All State Life Ins. Co. v. Linter Group Ltd.,* 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (noting that "[m]any courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory" and asserting personal jurisdiction over absent defendants pursuant to a conspiracy theory by imputing forum acts of co-conspirators done in furtherance of conspiracy); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991) (asserting personal jurisdiction over non-resident defendant via conspiracy theory).  The actions of the co-conspirators within the forum serve to establish minimum contacts sufficient to satisfy Due Process over the non-resident defendant. *Dixon v. Mack,* 507 F. Supp. 345, 352 (S.D.N.Y.) (1980) ("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course complained of in the suit, supplies the necessary minimum contacts . . ."); *Andre Emmerich Gallery v. Segre,* 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997) (imputation of forum activities of co-conspirator to non-resident defendant establishes minimum contacts satisfy Due Process).

The *prima facie* showing of conspiracy requires allegations of the primary tort (in this case, the attacks of September 11) and four additional elements:  (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the defendant's intentional participation in the furtherance of a plan; and (4) resulting damage or injury. *See Simon v. Philip Morris, Inc.,* 86 F.Supp.2d 95, 120 (E.D.N.Y. 2000)*; see also Chrysler Capital,* 778 F. Supp. at 1267. This Court has further held that:  "[t]o warrant the inference that a defendant was a member of the conspiracy, Plaintiffs must show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the

out-of-state defendant.'"" *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805

(citations omitted).

The plaintiffs have satisfied these elements here.  Fairly read, the complaints and RICO

Statements allege that Sedaghaty, personally and through al Haramain, knowingly provided

funds to al Qaeda.  Thus, the plaintiffs have alleged that Sedaghaty engaged in an overt act in

furtherance of the al Qaeda conspiracy.  Moreover, al Qaeda's ambition to attack the United

States, and New York in particular, was well known for many years prior to the September 11th

Attacks, as evidenced by the 1993 bomb attack on the World Trade Center and the foiled plot to

simultaneously attack the George Washington Bridge and Holland Tunnel.  Thus, the potential

effects in New York of contributing to al Qaeda were undeniably foreseeable to that terrorist

organization's sponsors and supporters, including Segaghaty.  Further, the plaintiffs have

specifically alleged that "the September 11th Attack was a direct, intended and foreseeable

product" of  the material support provided by Sedaghaty and al Qaeda's other sponsors.  *Federal

1AC* ¶ 74.  Indeed, given that al Qaeda had repeatedly declared that its primary objective was to

conduct terrorist attacks against the United States, it is self evident that the entities and people

who chose to knowingly sponsor al Qaeda did so in order to assist that terrorist organization in

mounting successful attacks, and that the individuals chosen to carry out such attacks act "for the

benefit" and "on behalf" of all of the organization's members and sponsors.  When read in a light

most favorable to the plaintiffs, the allegations of the complaints and RICO Statements give rise

to a reasonable inference that Sedaghaty was a member of al Qaeda's conspiracy to attack

America. As a result, the actions of Sedaghaty's co-conspirators, including the September 11th

hijackers themselves, are imputable to Sedaghaty for jurisdictional purposes and serve to

establish minimum contacts with New York sufficient to satisfy Due Process.

## CONCLUSION

For the foregoing reasons, this Court should deny Sedaghaty's consolidated motion to dismiss in its entirety.

Respectfully submitted,


/s/_____
Stephen A. Cozen (SC 1625)
Elliott R. Feldman (EF 8111)
Sean P. Carter (SC 0636)
Mark T. Mullen (MM 2384)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Telephone:  (215) 665-2000
Facsimile:  (215) 665-2015

Attorneys for *Federal* Plaintiffs

/s/_____
Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

Attorneys for *EuroBrokers*  and *WTCP* Plaintiffs

Robert M. Kaplan (RK1428)
FERBER FROST CHAN & ESSNER, LLP
530 Fifth Avenue, 23rd Floor
New York, New York 10036-5101
(212) 944-2200

Attorneys for *Continental* Plaintiffs

David H. Fromm, Esq. (DH-9334)
Frank J. Rubino, Jr., Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

Attorneys for Plaintiff *New York Marine And General Insurance Company*

PHILA1\2250847\1 117430.000

26