**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977
*Burnett v. Al Baraka Investment & Development Corp*. 03-CV-5738
*Estate of O'Neill v. Al Baraka Investment and Development Corp.*, 04-CV-1923
*Salvo v. Al Qaeda Islamic Army*, 03-CV-5071
*Tremsky v. Osama bin Laden*, 02-CV-7300

**PERSONAL INJURY PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS OF AL HARAMAIN ISLAMIC FOUNDATION, INC. AND PEROUZ SEDAGHATY**

April 8, 2005

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES................................................................................................... ii

INTRODUCTION .................................................................................................................1

APPLICABLE LEGAL STANDARDS ......................................................................................4

ARGUMENT .......................................................................................................................7

    I.      PLAINTIFFS STATE CLAIMS AGAINST AHIF UNDER THE ATA ................................7

    II.     AHIF IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' OTHER CLAIMS ...............11

            A.     Plaintiffs' Claims Under the Alien Tort Claims Act Ought Not Be Dismissed..................................................................................................11

            B.     Plaintiffs' Claims for Assault and Battery and Intentional Infliction of Emotional Distress Are Not Time Barred ...............................................13

            C.     Plaintiffs State Claims for Wrongful Death and Survival ........................14

            D.     Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed .........................................................................................15

    III.    IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD .........................................................15

    IV.    THIS COURT HAS JURISDICTION OVER AHIF ........................................................17

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003) .................................................. 12

*Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998)................................................................ 10

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) ............................................... 13

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2001) ................................................................... 12

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ................................... 8, 11, 13

*Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86 (D.D.C. 2003).............. passim

*Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994); ................. 18

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ...................................................................... 4

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................ 4, 5, 6, 15

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) .................................................... 10

*Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115 (D.D.C.2003)............................................. 12

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001)....... 18

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 16

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ....................................................................... 4

*Ideal Electronic Co. c. International Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997)............... 13

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. LEXIS 3829 (S.D.N. Y. 2004) ....................................................................................................................... 14

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005)......... 8, 9, 11

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)...................................... 18

*Johnson v. Nyack Hospital*, 86 F.3d 8 (2d Cir. 1996).................................................................. 14

*Jones v. R.R. Donnelly & Sons Co.*, 124 S. Ct. 1836 (2004) ....................................................... 14

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1996)...........................................................................12

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993)......................................................................5

*Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306 (E.D. La. 1994) ............ 14

*Monahan v. NYC Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000).................................................15

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ...............................................6, 10

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002)..........................................................4, 5, 6, 10

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289 (S.D.N.Y.2003) .. 12

*SEC v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997) ......................................................................18

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2002)................................................5

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) ..........................................................................4, 6

*Thomson-CSF, S.A. v. Amer. Arbitration Assn.*, 64 F.3d 773 (2d Cir. 1995) ..............................10

*United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991)...........................................................13

*Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001) ...........................................4

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004)....................................................................4, 5

*Yeadon v. New York Transit Authority*, 719 F. Supp. 204 (S.D.N.Y. 1989) ...............................14

**Statutes**

18 U.S.C. § 2334.......................................................................................................................17

28 U.S.C. § 1350.......................................................................................................................11

**Rules**

F.R.C.P. 12(b)(4) ......................................................................................................................17

F.R.C.P. 12(b)(5) ......................................................................................................................17

F.R.C.P. 12(b)(6) .........................................................................................................................4

F.R.C.P. 12(h) ...........................................................................................................................17

F.R.C.P. 15 ...............................................................................................................................15

F.R.C.P. 8 ...............................................................................................................................4, 5

F.R.C.P. 9 .................................................................................................................................... 5

**Other Authorities**

137 Cong. Rec. S4511 04 (April 16, 1991) ................................................................................. 13

## INTRODUCTION

In its motion to dismiss the claims of the Personal Injury Plaintiffs[1], defendant Al Haramain Islamic Foundation, Inc. ("AHIF") seeks to distance itself from the organization of which it is a part, also known as the Al Haramain Islamic Foundation ("Al Haramain").  As alleged in the complaints at issue here, AHIF, based in Oregon, was the U.S. branch of Al Haramain, a global entity based in Saudi Arabia.[2]  The Riyadh office of Al Haramain ("AHSA") was – until it was dissolved by the Saudi government amid suspicions that it was a terrorist front that had provided financing and other support to al Qaeda and Osama bin Laden – the headquarters of a vast network of offices and representatives around the world.  At least eleven of those branches, including AHIF, have been designated by the U.S. government as global

---

[1]   The Personal Injury Plaintiffs consist of plaintiffs in *Ashton v. Al Qaeda Islamic Army*, 02-CV-6977; *Burnett v. Al Baraka Investment & Development Corp.* 03-CV-5738 (*Burnett* (N.Y.)); *Estate of O'Neill v. Al Baraka Investment and Development Corp.*, 04-CV-1923; *Salvo v. Al Qaeda Islamic Army*, 03-CV-5071; and *Tremsky v. Osama bin Laden*, 02-CV-7300.

    Defendant has styled its motion as one to dismiss the "Consolidated Personal Injury Complaints," but that is a misnomer, as the complaints in these cases are not consolidated. Despite its title, the motion is, in fact, a consolidated *motion* addressed to five different complaints.  Because the pleadings are similar and the issues nearly identical, the Personal Injury Plaintiffs have elected to file a consolidated response to defendant's motion.  Because the parties' positions are not identical, however, the *O'Neill* plaintiffs are simultaneously submitting a separate brief to address their RICO claims.

    Plaintiffs note that AHIF's motion does *not* apply to *Burnett v. Al Baraka Investment & Development Corp.* 03-CV-9849 (*Burnett* (D.C.)), the *Burnett* case originally filed in the District of Columbia and transferred to this Court by the MDL panel.  AHIF's motion to dismiss the *Burnett* (D.C.) complaint was denied by Judge Robertson, *see Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003) and this motion does not ask this Court to re-consider that ruling.  The *Burnett* case as to which AHIF seeks dismissal in this motion is the one filed originally in this Court in August, 2003.

[2]   In its motion to dismiss, AHIF styles itself "Al Haramain Islamic Foundation, Inc. (USA)," but, with one exception, *see O'Neill* 2AC, the complaints at issue in this lawsuit do not so denominate it.  Rather, like the larger organization of which it is a part, AHIF is identified in the various complaints simply as Al Haramain Islamic Foundation.

sponsors of terrorism and, as noted above, the main office has been closed by the Saudi government.

As alleged in the complaints, Al Haramain is a "charity front that has exploited its nonprofit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in furtherance of international terrorism." *Burnett* (NY) 1AC ¶ 155; *accord Ashton* 3AC ¶¶ 467, 471.   Plaintiffs allege that Al Haramain's global network played a major role in funding international terrorism through its Bosnian office, which was a crucial component of Osama bin Laden's international financial and logistical support network.  *Burnett* 1AC ¶¶ 154-163; *Ashton* 3AC ¶¶ 467, 472-75.  Plaintiffs also allege that Al Haramain used its other offices to support terrorism.  *See Ashton* 3AC ¶¶ 467, 476-77.  Al Haramain's network has been implicated in specific al Qaeda attacks of international terrorism, including the 1998 U.S. embassy bombings in Kenya and Tanzania, and the 2002 Bali bombing.  *Burnett* 1AC ¶¶ 167, 175; *Ashton* 3AC ¶ 476, 487.

Moreover, the complaints allege that "[t]he al-haramain branch in Ashland, Oregon, is specifically linked to Al Qaeda operations," *Burnett* 1AC ¶ 173; *accord Ashton* 3AC ¶ 485; *O'Neill* 2AC ¶ 112, and that the Oregon branch was "one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia." *Burnett* 1AC ¶ 173.  Indeed, "[t]he President and Vice-President of the United States branch, Aqeel al-Aqeel and Mansour al-Kadi, both reside in Riyadh, Saudi Arabia where they run all of al-Haramain worldwide." *Id.*  Al-Aqeel was not only the President of AHIF, he was also the Secretary General of AHSA, while al-Kadi was simultaneously Vice-President of AHIF and Deputy General of AHSA.  *Id.*  Al Haramain

operated a single website for all its branches. This same website had a direct link to a website specifically promoting al Qaeda.  *Burnett* 1AC ¶¶ 163, 170; *accord Ashton* 3AC ¶ 475, 482.[3]

Despite these allegations, AHIF asks this Court to dismiss the Complaints because AHIF claims that it was an "independent affiliate" of Al Haramain.[4]  That factual dispute cannot be resolved on this motion to dismiss.  Indeed, that was the precise holding of Judge Robertson when AHIF moved to dismiss the *Burnett* (D.C.) complaint. *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003).  Judge Robertson correctly found that plaintiffs adequately alleged the role of Al Haramain in providing material support to al Qaeda *and* that plaintiffs adequately alleged that AHIF and Al Haramain were one and the same. This Court should follow Judge Robertson's correct holding and similarly deny AHIF's motion to dismiss.

This Court similarly should deny defendant Perouz Sedaghaty's motion to dismiss.[5]  Mr. Sedaghaty was the original incorporator of AHIF and a member of its Board Directors.  Plaintiffs allege that he conspired with and aided and abetted AHIF in its support of al Qaeda.  *Ashton* 3AC ¶ 469.  Given Mr. Sedaghaty's role and position with AHIF, it is reasonable to infer, at this stage of proceedings, that he was aware of the material support that Al Haramain, and AHIF in

---

[3]  AHIF listed the website as its own on its application for tax-exempt, not-for-profit status.

[4]  On this Rule 12(b)(6) motion, the "evidence" that AHIF has submitted should be disregarded. Plaintiffs note, however, that even if these materials could be considered, they do not contradict in any way the allegations of the Complaint.  Rather, the materials AHIF has submitted confirm that, until 2003, AHIF and AHSA had interlocking boards of directors, precisely as plaintiffs allege.

[5]  Except for the substitution of his name for that of AHIF and minor accompanying adjustments, Mr. Sedaghaty's motion appears to be identical to that filed by AHIF.  Rather than burden the Court with two virtually identical responses, the Personal Injury Plaintiffs have elected to respond to AHIF's and Mr. Sedaghaty's motion in a single brief.

particular, were providing to bin Laden.  Plaintiffs have sufficiently alleged his involvement and are entitled to discovery to prove their claims.

## APPLICABLE LEGAL STANDARDS

AHIF moves to dismiss the Personal Injury Complaints pursuant to F.R.C.P. 12(b)(6), for failure to state a claim. Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) . In evaluating whether the Property Damage Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them. *Wynder*, 360 F.3d at 77; *Phelps*, 308 F.3d at 184. Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001). The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P. 8(a)(2), which is extremely permissive. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *Id.* (*quoting Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2002) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  *See* 308 F.3d at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering. *Id.* The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference. The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge.  *See* 308 F.3d at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." 308 F.3d at 186-87.  The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187, *quoting Conley*, 355 U.S. at 45-46.  Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187.  Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste.  Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (citations omitted).

More recently, in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries."  *See* 396 F.3d at 511.  The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P."  396 F.3d at 512.  Quoting the unanimous Supreme Court ruling in *Swierkiewicz*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.  The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512, *quoting Swierkiewicz*, 534 U.S. at 512-13.

**ARGUMENT**

## I.   PLAINTIFFS STATE CLAIMS AGAINST AHIF UNDER THE ATA

AHIF and Sedaghaty argue that the Personal Injury Damage Plaintiffs have not sufficiently alleged claims under the ATA because, they argue, plaintiffs' claims are based on the acts of AHSA and its other affiliates, which cannot, they say, be attributed to AHIF.  Defendants are wrong:  plaintiffs adequately allege that AHIF, AHSA, and the other Al Haramain branches are one and the same and that Mr. Sedaghaty aided and abetted, and conspired with, AHIF.

Before turning to the relationship between AHIF and Al Haramain, plaintiffs note that they have more than adequately alleged the complicity of the Al Haramain network in the terrorist activities of al Qaeda and the causal connection between Al Haramain's support and plaintiffs' injuries.   Plaintiffs have alleged that Al Haramain and AHIF knowingly and intentionally provided *direct* assistance to Osama bin Laden, al Qaeda, and international terrorism. For example:

- "Defendant al-Haramain is a charity front for al Qaeda and Osama bin Laden and provides direct material support to al Qaeda."  *O'Neill* 2AC ¶ 111; *accord Ashton* 3AC ¶¶ 467-68, 470-71.

- "Defendant al-Haramain uses its humanitarian mission to disguise its financing of terrorist operations. It disguises the terrorist funds as, among other things, money for projects such as orphanage or Islamic school projects and mosque construction." *O'Neill* ¶ 116; *accord Ashton* 3AC ¶¶ 467, 470, 484.

- "Defendant al-Haramain Islamic Foundation, Inc., is a Saudi charity front that has exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism. . . . Many of al-Haramain's foreign branches have been exposed for providing direct and material support to al Qaeda." *Burnett* 1AC ¶ 155; *accord Ashton* 3AC ¶ 467; *Salvo* 1AC ¶ 493.

- "al-Haramain, . . . has acted as a channel for financing the activites of terrorist organizations. . . . According to available intelligence, the Sarajevo office assisted the terrorist organization Gama al Islamija, while members of bin Laden's el Itihad al Islamija (AIAI) terrorist groups were employed at the Somalia offices, which also

7

financed their operations." *Burnett* 1AC ¶ 65; *accord Ashton* 3AC ¶ 476; *Salvo* 1AC ¶ 490.

- ▪ "The al-haramain branch in Ashland, Oregon, is specifically linked to Al Qaeda operations." *Burnett* 1AC ¶ 173; *accord Ashton* 3AC ¶ 485; *O'Neill* 2AC ¶ 112.

These allegations are sufficient to state claims under the ATA. Under the ATA, Al Haramain is liable if it provided any material support to al Qaeda with knowledge of its terrorist agenda or if it aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct. *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002). As demonstrated above, plaintiffs have alleged that Al Haramain knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaeda. This Court has already recognized that, under the ATA, "material support includes money [and] financial services . . . ." *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005) ["January 18 Order"].

Plaintiffs also properly allege that Al Haramain's support and assistance was a proximate cause of the September 11 attacks. Plaintiffs allege that "The financial resources and support network of . . . Defendants – charities, banks, front organizations and financiers – are what allowed the attacks of September 11, 2001 to occur. Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and act on a massive scale without significant financial power, coordination and backing." *Burnett* 1AC at p. 305; *see also Ashton* 3AC ¶ 30; *Salvo* 1AC ¶ 30. *See also Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.") Moreover, this Court has already held that "[i]n light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probably consequence of knowingly and intentionally providing material support to al Qaeda." 349 F.Supp.2d at 826.

Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id.* at 829. Under the standards set forth in this Court's January 18 Order, plaintiffs have properly pleaded a claim under the ATA.

Indeed, Judge Robertson reached this same conclusion in the context of the virtually identical *Burnett* complaint filed in the District of Columbia, holding that the "allegations of Al-Haramain's relationships with al Qaeda are more than sufficient to permit the inference that Al-Haramain . . . provided material support to al Qaeda with knowledge of, and the intent to further, al Qaeda's terrorist activities." *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003). Judge Robertson further found that the "allegations provide support for an inference of a causal link between AHIF's funding and the attacks of September 11." *Id.* at 105. Although Judge Robertson's decision is not binding on this Court, it should be followed here because it is manifestly correct as well as consistent with this Court's January 18 Order.

AHIF contends, however, that it is entirely separate from Al Haramain and cannot be held liable based on allegations against the larger entity. But AHIF ignores that plaintiffs have specifically alleged that AHIF and Al Haramain were operated as a single entity, with interlocking directors, and a common website:

- "In the United States, al-Haramain has three business entities in Ashland, Oregon: al-Haramain Foundation, al-Haramain Islamic Foundation, and al-Haramain Islamic Foundation, Inc. All three of these separately filed businesses are at the same address and under the same management. *These three businesses are one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia.* The President and Vice-President of the United States branch, Aqeel al- Aqeel and Mansour al-Kadi, are the Secretary General and Deputy General, respectively, of the Riyadh office. The al-Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations." *Burnett* 1AC ¶ 173; *accord Ashton* 3AC ¶ 469, 485

- "Although al-Haramain incorporates in many of the countries in which it operates these branches are still controlled primarily from al-Haramain's headquarters in Riyadh, Saudi Arabia. The President and Vice-President of the United States branch,

Aqeel al-Aqeel and Mansour al-Kadi, both reside in Riyadh, Saudi Arabia where they run all of al-Haramain worldwide." *Burnett* 1AC ¶ 155; *accord Ashton* 3AC ¶ 467; *Salvo* 1AC ¶ 493.

- ▪ "[Al Haramain's] headquarters also maintains one website that covers Al-Haramain worldwide and, on occasion, devotes certain pages of its website to certain individual branches." *Burnett* 1AC ¶ 163; *accord Ashton* 3AC ¶ 475, 482.

AHIF disputes these allegations, as it is entitled to do. But, as Judge Robertson explained when AHIF made precisely the same argument before him in the *Burnett* (D.C.) case:

> AHIF fervently disputes the allegation that it is one and the same as Al-Haramain. That dispute, however, is a factual one, to be sorted out in discovery, and with a motion for summary judgment, but not on a motion to dismiss under Rule 12(b)(6). At this stage, the court must accept plaintiffs' factual allegations as true.

*Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003) ("*Burnett I*"). Accordingly, Judge Robertson held that the allegations concerning Al Haramain were sufficient to establish a claim against AHIF, "since it is alleged to be 'one and the same' as the Saudi Arabian headquarters . . . ." 274 F.Supp.2d at 104.

AHIF's contention that plaintiffs should be required to plead sufficient evidence to *prove* that AHIF and Al Haramain are the same is precisely the argument rejected by the Second Circuit in *Phelps*, 308 F.3d at 187, and in *Pelman*, 396 F.3d at 512. On the contrary, plaintiffs are entitled to take discovery before they are called upon to prove their case. The authorities cited by AHIF are not the contrary. In *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998), for example, the Second Circuit discussed what plaintiff needed to prove at trial, not what needed to be pled. Similarly, the procedural posture of *Thomson-CSF, S.A. v. Amer. Arbitration Assn.*, 64 F.3d 773 (2d Cir. 1995) – a declaratory judgment action to avoid arbitration – was such that plaintiff was required to prove, not merely allege, the inter-relationship of the corporations on which the obligation to arbitrate depended. Finally, in *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996), the Second Circuit found a bare allegation of control, without more,

insufficient, but plaintiffs here allege substantially more.  As noted above, plaintiffs allege interlocking management and a centralized command and financial structure.

Plaintiffs have alleged that AHIF and the now-defunct AHSA were one and the same, that they had interlocking management, and shared a centralized command and financial structure.  They are entitled to the opportunity to take discovery and prove these allegation and establish that AHIF was part of the Al Haramain network that supported and assisted al Qaeda.[6]

Similarly, plaintiffs have adequately alleged that Perouz Sedaghaty, one of AHIF's directors, aided and abetted AHIF and Al Haramain in its support of al Qaeda. *Ashton* 3AC ¶ 469.  In *Boim*, 291 F.3d at 1016-1021, the Seventh Circuit, after extensive and scholarly analysis of the question, determined that the ATA encompasses aiding and abetting liability.

## II.   AHIF IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' OTHER CLAIMS

The remainder of plaintiffs' claims similarly ought not be dismissed.[7]

### A.   Plaintiffs' Claims Under the Alien Tort Claims Act Ought Not Be Dismissed

AHIF contends that the non-U.S. plaintiffs' claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ACTA"), should be dismissed because AHIF is not a state actor and did not

---

[6] Separate and apart from the relationship between AHIF and AHSA, plaintiffs specifically allege that "[t]he al-Haramain branch in Ashland, Oregon, is specifically linked to al Qaeda operations."  Thus, whether or not plaintiffs have properly pleaded that AHIF and Al Haramain are one and the same, they have sufficiently pleaded AHIF's separate role in supporting al Qaeda. *Burnett* 1AC ¶ 173; *Ashton* 3AC ¶ 485; *O'Neill 2AC* ¶ 112.

[7]   Plaintiffs recognize that this Court has already held that the Torture Victims Protection Act, 28 U.S.C. § 1350 note ("TVPA") provides a cause of action only against individuals.  *See* January 18 Order, 349 F.Supp.2d at 828.  Similarly, in *Burnett I*, the court dismissed the *Burnett* DC plaintiffs' negligence claims against AHIF on the basis that AHIF owed no duty to plaintiffs. 274 F.Supp.2d at 108-109; *see also* January 18 Order, 349 F.Supp.2d at 830-31.  Plaintiffs respectfully disagree with these rulings and refer this Court to the prior briefing on these issues.
The *Ashton*, *Burnett*, and *Salvo* plaintiffs are not pursuing RICO claims against AHIF or Sedaghaty and, accordingly, have not filed RICO statements concerning these defendants.  The *O'Neill* plaintiffs do intend to pursue their RICO claims against these defendants and, as noted (footnote continued on next page)

engage in "egregious forms of misconduct."  But the ATCA does not require that the defendant

act under color or law and "egregious forms of misconduct" is not the test for when plaintiff may

assert a claim under the ATCA.  In *Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004), a case

oddly not mentioned by AHIF, the Supreme Court held that the ATCA creates a cause of action

for a certain of tort claims, including, at a minimum, "violation of safe conducts, infringement of

the rights of ambassadors, and piracy."  124 S.Ct. at 2761.  The Court further held that the

ATCA creates a cause of action "based on the present-day law of nations" to the extent that such

claim rests "on a norm of international character accepted by the civilized world and defined

with a specificity comparable to the features of the 18th-century paradigms" of the other three

claims.  124 S.Ct. at 2761-62.  The status of the defendant, as a state actor or not, did not enter

into the Supreme Court's analysis.

Here, plaintiffs' claims may be asserted under the ATCA under either prong established

by the Supreme Court.  Airplane hijacking is the modern-day equivalent of piracy.  Thus, even

under the Supreme Court's more limited construction of the original torts covered by the ATCA,

plaintiffs' claims, which arise from the four airplane hijackings on September 11, 2001, are

cognizable under that statute.   But even if that were not so, airplane hijacking has been

recognized by numerous courts as the kind of specific violation of international law covered by

the ATCA. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-48 (2d Cir. 2001); *Kadic v. Karadzic*,

70 F.3d 232, 240 (2d Cir. 1996); *Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115, 120

(D.D.C.2003); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F.Supp.2d 289, 309

(S.D.N.Y.2003); *Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956, at *4 (S.D.N.Y.

Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003); *see*

---

above, *see 1*, are filing a separate brief to address that issue.

*generally United States v. Yunis*, 924 F.2d 1086, 1092 (D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so clearly condemned under the law of nations that states may assert universal jurisdiction to bring offenders to justice, even when the state has no territorial connection to the hijacking and its citizens are not involved"). Although these cases pre-date the Supreme Court's ruling in *Sosa*, their holding is entirely consistent with the test adopted by the Supreme Court – that the international norm in question, in this case, the prohibition on airplane hijacking, be of an "international character accepted by the civilized world and defined with a specificity comparable to" the original torts that fell within the ATCA.

### B.     Plaintiffs' Claims for Assault and Battery and Intentional Infliction of Emotional Distress Are Not Time Barred

Plaintiffs' claims for assault and battery (*Salvo* Count 3) and for intentional infliction of emotional distress (*Burnett* (N.Y.) Count 8; *O'Neill* 2AC Count 5) are not time-barred for two reasons. First, these claims are subsumed within plaintiffs' claims under the Anti-Terrorism Act, which imports into that federal cause of action "the remedies of American tort law."  *See* 137 Cong. Rec. S4511 04 (April 16, 1991); *see also Boim*, 291 F.3d at 1010 (language and history of ATA "evidence[] an intent by Congress to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law"). To the extent that these claims have been "federalized" under the Anti-Terrorism Act, they are governed by federal law.  *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) (federal law determines the "extent and nature" of claims brought under a federal statute).[8] State

---

[8]  Should plaintiffs' claims under the ATA fail for any reason, however, the common law claims also exist as separate claims arising under state law.  In determining which states' laws govern, this Court would apply the choice-of-law rules used by New York.  *See Ideal Electronic Co. c. International Fidelity Ins. Co*., 129 F.3d 143 (D.C. Cir. 1997) (federal court hearing state-law claims applies choice of law rules of the place in which it sits).

statutes of limitation are inapplicable to federal common law claims.  *See Jones v. R.R. Donnelly & Sons Co.*, 124 S. Ct. 1836 (2004). *See also Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306, 309 (E.D. La. 1994) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).

Moreover, all of plaintiffs' claims arise from AHIF's and Sedaghaty's participation in the conspiracy to conduct terrorist attacks against the United States, a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until plaintiffs reasonably should have become aware of AHIF's or Sedaghaty's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D.N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D.N. Y. 2004).  Given this fact, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[9]

### C.    Plaintiffs State Claims for Wrongful Death and Survival

Defendants' primary argument for dismissal of the claims for wrongful death and survival is entirely derivative of its argument for dismissal of the ATA claims.  As demonstrated above, plaintiffs have sufficiently pleaded the causal connection between AHIF's and

---

[9] AHIF also maintains that these claims are barred because the plaintiffs have failed adequately to allege causation. This is merely a repetition of AHIF's argument with respect to the ATA and causation generally and should be rejected for the reasons described above, *see supra* Point I.

Sedaghaty's support of Osama bin Laden and al Qaeda and the injuries and deaths suffered on September 11.

### D. Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed

Defendants seek dismissal of plaintiffs' claim for punitive damages on the ground that, under New York law, punitive damages are a remedy, not a cause of action. AHIF presents no argument that plaintiffs are not entitled to recover punitive damages in this lawsuit. Since it is clear that punitive damages are available in connection with the claims that plaintiffs assert, and because the question of what law governs plaintiffs' claims remains open, this Court should not dismiss plaintiffs' claim for punitive damages because of this technicality of New York law. The same is true with respect to plaintiffs' claims for conspiracy. If plaintiffs have properly pleaded a conspiracy theory of liability against AHIF, the claim should not be dismissed at this time merely because, under New York, this is an alternate basis of liability rather than a separate claim, as it may turn out that New York law does not govern plaintiffs' claims.

## III. IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD

If the Court finds plaintiffs' pleading deficient in any way, plaintiffs should be given leave to replead. Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." F.R.C.P. 15. In *Conley*, 355 U.S. at 48, the Supreme Court explained that, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." "Mere technicalities" should not prevent a case from being decided on the merits. *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). Accordingly, the Supreme Court has instructed that

15

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, no basis exists to deny leave to amend.

In particular, amendment should be permitted because a considerable amount of additional information about Al Haramain has become available since plaintiffs filed their complaints.  If permitted to amend, plaintiffs would allege the following significant facts:

- On September 9, 2004, the United States Department of Treasury designated the U.S. branch of Al Haramain – that is, defendant AHIF – as a supportor of terrorism.  The designation was based on a federal investigation that, accordingly to a Treasury Dept. press release, "shows direct links between the U.S. branch and Usama bin Laden."  At the same time, the government also designated one of AHIF's directors, defendant Suliman al-Buthe.  AHIF's chief, Aqeel al Aqeel, who also served as Secretary General of Al Haramain in Riyadh, had been previously designated on June 2, 2004.

- As described by the U.S. Department of Treasury on June 2, 2004, since March 2002, the United States and Saudi governments have jointly designated eleven branches of Al Haramain based on evidence of "financial, material, and/or logistical support to the al Qaeda network and affiliated organizations."

- On June 2, 2004, the Saudi government announced that it was dissolving Al Haramain after complaints from the United States and others that it was funding al Qaeda and bin Laden.

- Mansour al Kadi, a former director of the AHIF, has described an extraordinary degree of centralization whereby AHIF was run directly and exclusively by Aqeel al Aqeel, who served as both Secretary General of Al Haramain and as head of the organization's U.S. branch.

- On December 31, 1999, in connection with its application to the IRS for tax-exempt status as a not-for-profit entity, AHIF filed a Form 1023 in which it stated that its website address was www.alharamain.org, the website for the AHSA and the entire global Al Haramain organization.

- Defendant Sedaghaty played a central role in the management and financial activities of AHIF.  AHIF's articles of incorporation list defendant Sedaghaty as AHIF's registered agent and a member of its Board of Directors.

16

- AHIF's funds were under the direct control of defendant Sedaghaty, who served as AHIF's Secretary; on numerous occasions Sedaghaty withdrew and deposited funds into AHIF's Bank of America account in Ashland, Oregon.

- Federal authorities are currently prosecuting AHIF and AHIF officers Perouz Sedaghaty and Soliman al-Buthe for their role in the scheme to divert charitable donations to al Qaeda fighters in Chechnya.

Based on these facts, plaintiffs would allege that Al Haramain's American branch, AHIF, provided direct financial support to al Qaeda and bin Laden; that the entire Al Haramain organization, including AHIF, was operated directly by Aqeel al Aqeel to provide support (and did provide such support) to al Qaeda; and that Perouz Sedaghty, who acted as AHIF's registered agent, its Secretary, and one of only four directors, knew of Al Haramain's mission to support al Qaeda and bin Laden and knowingly and willingly assisted that mission through his work with AHIF.  These additional allegations would clearly suffice to state a claim against AHIF.

## IV.    THIS COURT HAS JURISDICTION OVER AHIF

AHIF's argument that it is not subject to jurisdiction in this Court proceeds on the assumption that plaintiffs fail to state a claim under the Anti-Terrorism Act.  *See* AHIF P.I. Mem. at 18-19.[10]  It is beyond question that if plaintiffs *do* state a claim against AHIF under the ATA, this Court may assert personal jurisdiction over AHIF to adjudicate the ATA claim and all of the other claims asserted in the complaints.  The ATA provides that claims may be brought in "any district where any plaintiff resides" and that process "may be served in any district where the defendant resides, is found, or has an agent."  18 U.S.C. § 2334(a).  Moreover, because the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United

---

[10]   AHIF does not contend that it was improperly served or that process was insufficient and has not moved to dismiss of the personal injury complaints pursuant to F.R.C.P. 12(b)(4) or 12(b)(5). Any claims under those provisions are accordingly waived. *See* F.R.C.P. 12(h)(1)

States." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984). AHIF is incorporated in Oregon; obviously, it has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction. Similarly, Sedaghaty is a resident of Oregon and served as an officer of AHIF's Oregon offices; he, too, plainly has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction. Moreover, if the court has personal jurisdiction over AHIF and Sedaghaty with respect to plaintiffs' ATA claim, then it may also assert pendent personal jurisdiction over the remaining claims that derive from the same events. *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056-57 (2d Cir. 1993).

Even if plaintiffs do not state a claim under the ATA, that statute nonetheless provides a basis for the assertion of jurisdiction over AHIF, so long as plaintiffs' claim under the ATA is at least colorable. As the Second Circuit explained in *Herrmann*:

> Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

9 F.3d at 1055. Here, regardless of whether the Court finds that plaintiffs have stated a claim under the ATA, plaintiffs' claims against AHIF under that statute are not "so insubstantial, implausible, foreclosed by prior decisions. . . or otherwise completely devoid of merit" so as to preclude the exercise of jurisdiction.

## CONCLUSION

For the foregoing reasons, this Court should deny AHIF's and Sedaghaty's motions to dismiss in their entirety.

Dated: New York, NY
      April 8, 2005

Respectfully submitted,

/s/_____

Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
Justin B. Kaplan, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew Maloney, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, New York 10017-5590
Telephone: (212) 687-8181

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

Attorneys for Plaintiffs