UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
                            :

In re Terrorist Attacks on September 11, 2001    :
                            :
                            :
———————————————————————x

03 MD 1570 (RCC)
ECF Case

This document relates to: *Continental Casualty Co. et al. v. Al Qaeda Islamic Army*, 04-CV-5970 (RCC)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANT ISLAMIC INVESTMENT COMPANY OF THE GULF (SHARJAH)

62311

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................iii

INTRODUCTION.........................................................................1

RELEVANT BACKGROUND.............................................................1

APPLICABLE LEGAL STANDARDS....................................................3

A. Prior To Discovery On A Rule 12(b)(2) Motion,
   A Plaintiff's Prima Facie Showing Of Personal
   Jurisdiction May Be Established By Legally
   Sufficient Allegations Of Jurisdiction.........................................3

B. Under Rule 12(b)(6), Plaintiff's Pleading
   Need Only Give The Defendant Fair Notice
   Of Its Claims And The Grounds Upon
   Which They Rest................................................................5

ARGUMENT

I.

PLAINTIFFS HAVE SATISFIED THEIR OBLIGATIONS
UNDER THE FEDERAL NOTICE PLEADING REQUIREMENTS.......................8

II.

THIS COURT HAS PERSONAL JURISDICTION OVER IICG............................9

A. This Court Has Personal Jurisdiction Over IICG
   Under New York's Long-Arm Statute.......................................9

B. This Court's Exercise Of Personal Jurisdiction
   Does Not Violate Due Process..............................................10

III.

PLAINTIFFS HAVE ADEQUATELY PLED CAUSATION...............................13

IV.

PLAINTIFFS HAVE ALLEGED A VIABLE RICO
CLAIM AGAINST IICG........................................................................16

A. Plaintiffs Have Standing
   To Assert A RICO Claim................................................................16

B. Plaintiffs Have Properly Stated
   A RICO Claim Against  IICG...........................................................17

V.

IICG IS NOT ENTITLED TO DISMISSAL OF
PLAINTIFFS' CAUSE OF ACTION FOR TRESPASS.......................................20

VI.

IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO
BE INSUFFICIENT, PLAINTIFFS SHOULD BE
GRANTED LEAVE TO RE-PLEAD........................................................21

CONCLUSION.....................................................................................22

# TABLE OF AUTHORITIES

## Cases                                                                                    Page

Alexander and Alexander of New York, Inc. v. Fritzen,
68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986)............................................................10

Associated Gen'l Contractors of Cal., Inc. v. California
State Council of Carpenters,
459 U.S. 519 (1983)....................................................................................19

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
902 F.2d 194 (2d Cir.), *cert. denied,* 498
U.S. 854 (1990).............................................................................................4

Boim v. Quranic Literacy Inst.,
291 F.3d 1000 (7th Cir. 2002)..................................................................1, 14

Calder v. Jones,
465 U.S. 781 (1984) ....................................................................................11

Casperone v. Landmark Oil & Gas Corp.,
819 F.2d 112 (5th Cir. 1987)........................................................................18

Chance v. Armstrong,
143 F.3d 698 (2d Cir. 1998)............................................................................5

Chrysler Capital Corp. v. Century Power Corp.,
778 F.Supp. 1260 (S.D.N.Y. 1991).................................................................10

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
187 F.3d 229 (2d Cir. 1999)...........................................................................10

Conley v. Gibson,
355 U.S. 41 (1957).....................................................................................5, 8

DiStefano v. Carozzi North America, Inc.,
286 F.3d 81 (2d Cir. 2001)..............................................................................4

Dubai Islamic Bank v. Citibank, N.A.,
256 F.Supp.2d 158 (S.D.N.Y. 2003)...............................................................17

Durante Bros. & Sons, Inc. v. Flushing Nat. Bank,
755 F.2d 239 (2d Cir. 1985)......................................................................10

Flatow v. Islamic Republic of Iran,
999 F. Supp. 1 (D.D.C. 1998).....................................................................14

Foman v. Davis,
371 U.S. 178 (1962).............................................................................21

Friedman v. Hartmann,
1994 WL 376058 (S.D.N.Y. 1994)...............................................................18

Geisler v. Petrocelli,
616 F.2d 636 (2d Cir. 1980).......................................................................5

Halberstam v. Welch,
705 F.2d 472 (D.C. Cir. 1983)....................................................................14

Holmes v. Security Investor Prot. Corp.,
503 U.S. 258 (1992)............................................................................19

In re DES Cases,
79 F. Supp.2d 52 (E.D.N.Y. 1992)...............................................................13

In re Initial Pub. Offering Sec. Litig.,
241 F. Supp.2d 281 (S.D.N.Y. 2003)..............................................................8

In re Magnetic Audiotape Antitrust Litigation,
334 F.3d 204 (2d Cir. 2003)........................................................................4

In re Terrorist Attack on September 11, 2001,
349 F.Supp.2d 765 (S.D.N.Y. 2005)..............................................................20

Kilburn v. Socialist People's Libyan Arab Jamahiriya,
376 F.3d 1123 (D.C. Cir. 2004)...................................................................14

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
26 F. Supp.2d 593 (S.D.N.Y. 1998)..............................................................10

Leatherman v. Tarrant County,
507 U.S. 163 (1993)...........................................................................6, 8

Lerner v. Fleet Bank, N.A.,
318 F.3d 113 (2d Cir. 2003).....................................................................19

**STATUTES**

18 U.S.C. § 1961 .................................................................................. 18

18 U.S.C. § 1962(c) ........................................................................... 17, 18

18 U.S.C. § 1962(d) .......................................................................... 17, 18

18 U.S.C. § 2339A ............................................................................... 18

18 U.S.C. § 2339B ............................................................................... 18

18 U.S.C. §2339C ................................................................................ 18

F.R.C.P. 8(a) ..................................................................................... 8, 9

F.R.C.P. 8(a)(2) ................................................................................... 3

F.R.C.P. 9(b) ...................................................................................... 8

F.R.C.P. 12(b)(6) .................................................................................. 5

F.R.C.P. 12(b)(2) .................................................................................. 4

F.R.C.P. 15 ........................................................................................ 21

N.Y. C.P.L.R. § 302(a)(2) ...................................................................... 10

Lumbard v. Maglia, Inc.,
621 F. Supp. 1529 (S.D.N.Y.
1985)....................................................................................................................13

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
84 F.3d 560 (2d Cir.
1996)........................................................................................................................9

Monahan v. NYC Dep't of Corr.,
214 F.3d 275, 283 (2d Cir. 2000),
cert. denied, 531 U.S. 1035 (2000)......................................................................21

Moss v. Morgan Stanley, Inc.,
719 F.2d 5 (2d Cir. 1983)......................................................................................17

National Asbestos Workers Medical Fund v. Philip Morris, Inc,
74 F. Supp.2d 221 (E.D.N.Y. 1999)......................................................................19

Pelman v. McDonald's Corp.,
396 F.3d 508 (2d Cir. 2005)....................................................................................7

Phelps v. Kapnolas,
308 F.3d 180 (2d Cir. 2002)...............................................................................5, 6

Phillips v. Sun Oil Co.,
307 N.Y. 328 (N.Y. 1954)....................................................................................21

Pittman v. Grayson,
149 F.3d 111 (2d Cir. 1998)............................................................................10, 20

Pugh v. Socialist People's Libyan Arab Jamahiriya,
290 F.Supp.2d 55 (D.D.C. 2003) .........................................................................12

Rachman Bag Co. v. Liberty Mut. Ins. Co.,
46 F.3d 230 (2d Cir. 1995)......................................................................................1

Rein v. Socialist People's Libyan Arab Jamahiriya,
995 F. Supp. 325 (E.D.N.Y. 1998)........................................................................11

Scribner v. Summers,
84 F.3d 554 (2d Cir. 1996), cert. denied, 476 U.S. 1117 (1986)..........................20

Simon v. Philip Morris, Inc.,
86 F.Supp.2d 95 (E.D.N.Y. 2000)...................................................................10, 13

Sparrow v. United Airlines, Inc.,
216 F.3d 1111 (D.C. Cir. 2000)………………………….......................5-6

State of New York v. O'Hara,
652 F. Supp. 1049 (W.D.N.Y. 1987).................................................18

Swierkiewicz v. Sorema N.A.,
534 U.S. 506 (2002)…………………………………………………5, 7

131 Main Street Assoc. v. Manko,
897 F. Supp. 1507 (S.D.N.Y. 1995)..................................................19

United States v. Coonan,
938 F.2d 1553 (2d Cir. 1991).........................................................17

United States v. Louie,
625 F. Supp. 1327, 1333 (S.D.N.Y. 1985).................................17-18

United States v. Roth,
860 F.2d 1382 (7th Cir. 1988).........................................................18

United States v. Turkette,
452 U.S. 576 (1981)......................................................................17

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd.,
241 F.3d 135 (2d Cir. 2001)...........................................................11

Von Bulow v. Von Bulow,
634 F. Supp. 1284 (S.D.N.Y. 1986)..................................................19

Wantanabe Realty Corp. v. City of New York,
2003 WL 22862646 (S.D.N.Y. 2003).................................................20

Whyte v. Contemporary Guidance Services, Inc.,
2004 WL 1497560 (S.D.N.Y. 2004)…………....................................1

Woodford v. Community Action Agency,
239 F.3d 517 (2d Cir. 2001)……………………..................................5

Wynder v. McMahon,
360 F.3d 73 (2d Cir. 2004)………………………………………….......5

Zola v. Gordon,
685 F. Supp. 354 (S.D.N.Y. 1988)....................................................19

## INTRODUCTION

Plaintiffs have sued Islamic Investment Company of the Gulf (Sharjah) ("IICG") based on its longstanding role as a financial services provider to, and material supporter of, terrorist organizations including al Qaeda. While the First Amended Complaint ("FAC") must be read as a whole in order to fully understand plaintiffs' claims against IICG, the principal allegations against IICG are set forth in paragraphs 26, 54-71 and 378-80. Plaintiffs allege that IICG knowingly participated in al Qaeda's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 attack (the "Attack") was a natural, intended and foreseeable result. When these factual assertions are taken as true, as they must be here, plaintiffs' allegations state valid claims against IICG under the Racketeering Influenced and Corrupt Organizations Act ("RICO") and state common law tort theories. Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated those events through financial or other means. Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1021 (7th Cir. 2002). Therefore, IICG's motion to dismiss must be denied. In the event, however, that this Court finds plaintiffs' FAC lacking, leave to amend should be granted. See Fed. R. Civ. P. 15(a); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995). Whyte v. Contemporary Guidance Services, Inc., 2004 WL 1497560, *5 (S.D.N.Y. 2004).

## RELEVANT BACKGROUND

The circumstances prompting this lawsuit are undoubtedly familiar to this Court. On September 11, 2001, nineteen members of the al Qaeda terrorist network hijacked four commercial airliners and used those planes as weapons in a coordinated terrorist attack on the World Trade Center complex in New York and the Pentagon in Arlington, Virginia (FAC ¶15).

The Attack resulted in the tragic loss of several thousand lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center complex. The Attack was the end-result of over a decade of strategic planning, lavish financial and logistical support of an international web of coconspirators, including the State defendants, the individual defendants, the charity defendants, the bank defendants, and others. It is beyond dispute that the Attack was a direct, intended and foreseeable product of this massive conspiracy, spearheaded by the al Qaeda movement, to commit acts of international terrorism against the United States, its nationals and allies.

Congress quickly reacted to the Attack and made its message clear: "All Americans are united in condemning, in the strongest possible terms, the terrorists who planned and carried out the attacks against the United States on September 11, 2001, and in pursuing all those responsible for those attacks *and their sponsors* until they are brought to justice." See USA Patriot Act of 2001, Pub. L. No. 107-056, 115 Stat. 391 (emphasis added).

Plaintiffs' FAC plainly asserts that IICG was one of those sponsors (FAC ¶ 26). Specifically, plaintiffs allege that IICG, was part of a complex banking system through which al Qaeda's sponsors channeled support to that terrorist organization (FAC ¶¶ 57-71, 378-380). Operating under the rules of Islamic law, IICG and its affiliates knowingly provided material support and resources to al Qaeda with the direct intent to support al Qaeda in its terrorist activities campaign to attack America (FAC ¶¶378-80). In doing so, IICG aided and abetted, conspired with, and provided material support and resources to al Qaeda and affiliated foreign terrorist organizations ("FTOs"), associations, organizations or persons (FAC ¶26).

It is indisputable that plaintiffs have alleged that IICG knowingly participated in al Qaeda's global conspiracy to commit acts of international terrorism against the United States, its

nationals and allies. Indeed, when read as a whole, and in accordance with the mandates of

F.R.C.P. 8(a)(2), the FAC sufficiently supports multiple claims, in that it alleges that IICG

knowingly provided material support and resources to al Qaeda, that al Qaeda would not have

possessed the financial resources, physical assets, membership base, technological knowledge,

communication skills, and global reach required to conceive, plan and execute the Attack absent

the sponsorship of IICG and the other defendants, and that IICG thus knowingly participated in

the conspiracy with the intent to advance the commission of terrorist attacks against the United

States, of which the Attack was a natural, intended and foreseeable consequence (FAC ¶¶26, 27

29, 602). Plaintiffs have asserted sufficient allegations against IICG to survive a motion to

dismiss, and therefore IICG's motion to dismiss must be denied in its entirety.

## APPLICABLE LEGAL STANDARDS

Defendant IICG makes two broad arguments in favor of dismissal of the claims asserted

against it in the FAC: (1) that this Court lacks personal jurisdiction over IICG; and (2) that

plaintiffs have failed to state any claim entitling them to relief against IICG. For the reasons set

forth below, plaintiffs respectfully request that IICG's motion to dismiss be denied in all

respects, with prejudice.

**A.     Prior To Discovery On A Rule 12(b)(2) Motion,
         A Plaintiff's Prima Facie Showing Of Personal
         Jurisdiction May Be Established By Legally
         Sufficient Allegations Of Jurisdiction**

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction
> testing motion may defeat the motion by pleading in good
> faith, [citation omitted] legally sufficient allegations of
> jurisdiction. At that preliminary stage, the plaintiff's *prima
> facie* showing may be established solely by allegations.

3

> After discovery, the plaintiff's *prima facie* showing,
> necessary to defeat a jurisdiction testing motion, must
> include an averment of facts that, if credited by the trier,
> would suffice to establish jurisdiction over the defendant.
> [citations omitted]. At that point, the *prima facie* showing
> must be factually supported.

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S.

854 (1990). The Second Circuit has observed that a plaintiff's averment of jurisdictional facts

will normally be met in one of three ways when in dispute: (1) by a Rule 12(b)(2) motion, which

assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges

their sufficiency; (2) by a Rule 56 motion, which asserts that there are undisputed facts

demonstrating the absence of jurisdiction; or (3) by request for an adjudication of disputed

jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the

merits. Id. at 197.  Where, as here, "the defendant is content to challenge only the sufficiency of

the plaintiff's factual allegations, in effect demurring by filing a Rule 12(b)(2) motion, the

plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing

of jurisdiction." Id.  In order to meet its prima facie showing, plaintiffs need only allege facts that

connect the defendant with the applicable forum, here, the United States. The plaintiff's

averments of jurisdictional facts must be taken as true.  Id., In re Magnetic Audiotape Antitrust

Litigation, 334 F.3d 204, 206 (2d Cir. 2003). The Court also construes the pleadings in a light

most favorable to plaintiff, resolving all doubts in its favor. DiStefano v. Carozzi North America,

Inc., 286 F.3d 81 (2d Cir. 2001).

4

**B.    Under Rule 12(b)(6), Plaintiff's Pleading
Need Only Give The Defendant Fair Notice
Of Its Claims And The Grounds Upon
Which They Rest**

IICG alternatively moves to dismiss plaintiffs' claims pursuant to Rule 12(b)(6). Such a

motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Phelps v. Kapnolas, 308 F.3d

180, 184 (2d Cir. 2002) (per curiam). The Court's role is "not to assay the weight of the

evidence which might be offered in support" of the Complaint, but "merely to assess the legal

feasibility" of the Complaint. Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In

evaluating whether plaintiffs ultimately could prevail, the Court must accept as true the facts

alleged in the FAC and draw all reasonable inferences in favor of them. Wynder, 360 F.3d at 77;

Phelps, 308 F.3d 184. Plaintiffs are not required to prove their case at the pleading stage;

indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided."

Woodford v. Community Action Agency, 239 F.3d 517 (2d Cir. 2001). The issue on a Rule

12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the

claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698,

701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P.

8(a)(2), which is extremely permissive. Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).

Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of

the claim showing that the pleader is entitled to relief" and that such a statement simply shall

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." Id. (quoting Conley, 355 U.S. at 47 (1957)); Wynder, 360 F.3d at 77; see also Sparrow v.

United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion). Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles. In Phelps, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment. Id. at 182. Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering. Id. The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said the plaintiff had not sufficiently alleged that defendants acted with the requisite scienter, deliberate indifference. The district court found the plaintiff's allegations of scienter conclusory and held that the plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge. Id. at 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." Id. at 186-87. The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

Phelps, 308 F.3d at 187 (quoting Conley, 355 U.S. at 45-46).

6

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. Phelps, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

Id. at 185 (citations omitted).

More recently, in Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In Pelman, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." Id. at 511. The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P." Id. at 512. Quoting the unanimous Supreme Court ruling in Swierkiewicz, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

Pelman, 396 F.3d at 512 (quoting Swierkiewicz, 534 U.S. at 512-13).

## ARGUMENT

### I.

### PLAINTIFFS HAVE SATISFIED THEIR OBLIGATIONS UNDER THE FEDERAL NOTICE PLEADING REQUIREMENTS

F.R.C.P. 8(a) provides in relevant part:

> **Claims for relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks…

Rule 8 provides the "notice pleading" requirement for federal courts. The Rule imposes a lenient obligation on the pleader, requiring only that the pleader provide its opponent with fair notice of its claim and the grounds upon which that claim rests. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). In the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Rule 9(b), a federal court is prohibited from imposing more demanding requirements than those prescribed by Rule 8(a). See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993). "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." In re Initial Pub. Offering Sec. Litig., 241 F. Supp.2d 281, 322 (S.D.N.Y. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957)). Consequently, "[a]s the Supreme Court recognized in Swierkiewicz, one clearly written sentence can satisfy Rule 8(a)(2)." Id. at 323.

IICG's motion is rife with accusations that plaintiffs have not pled sufficient facts to

8

establish either personal jurisdiction or valid claims against it. However, IICG is mistaken and misunderstands the meaning and intent behind Rule 8(a). Plaintiffs have provided IICG with the requisite notice in alleging that they knowingly aided, abetted and conspired to fund the activities of terrorists, including al Qaeda, and that a terrorist attack on American soil was a direct, intended and foreseeable product of a larger conspiracy to commit acts of international terrorism against the United States, its nationals and allies. (FAC ¶26, 27, 29, 57-71, 378-80, 602).

To expect or require plaintiffs to set forth every wrongful act of IICG is as unreasonable as it is unnecessary at this stage in the proceedings. It simply is not required in notice pleading under F.R.C.P. 8 and 12. Having stated a claim against IICG, plaintiffs are entitled to conduct discovery before they should be called upon to present their evidence. Indeed, as to IICG's personal jurisdictional challenge, only *a prima facie* showing of jurisdiction is required at the pleading stage. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 576 (2d Cir. 1996). A plaintiff is entitled to jurisdictional discovery and an evidentiary hearing before having to demonstrate jurisdiction by a preponderance of the evidence. Id. Under the Federal Rules and relevant case law, it is inappropriate and untimely for IICG to challenge the substance of plaintiffs' good faith allegations which have effectively put them on notice of the claims and jurisdictional bases against them. For this reason, IICG's motion to dismiss should be denied in its entirety.

## II.

## THIS COURT HAS PERSONAL JURISDICTION OVER IICG

### A. This Court Has Personal Jurisdiction Over IICG Under New York's Long-Arm Statute

This Court has personal jurisdiction over plaintiffs' claims pursuant to New York's long arm statute. That statute provides, in part, that "the court may exercise personal jurisdiction over

any non-domiciliary. . .who in person or through an agent commits a tortious act within the state." N.Y.C.P.L.R. §302(a)(2). "It is well settled that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. §302(a)(2)." Simon v. Philip Morris, Inc., 86 F.Supp.2d 95, 99 (E.D.N.Y. 2000); Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp. 1260, 1266 (S.D.N.Y. 1991). "Both state and federal courts have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 601 (S.D.N.Y. 1998).

New York law does not recognize the substantive tort of civil conspiracy. Durante Bros. & Sons, Inc. v. Flushing Nat. Bank, 755 F.2d 239, 251 (2d Cir. 1985). Rather, allegations of a conspiracy connect the actions of separate defendants with an otherwise actionable tort. Alexander and Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546 (1986), Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998). Conspiracy requires an agreement to commit a tortious act. Id. at 122-23. For the reasons set forth above, the conduct of IICG constitutes its involvement in an actionable conspiracy under New York law as set forth in the allegations of the FAC and, as such, connects it with the subject transaction, charges IICG with the acts and declarations of its co-conspirators, and exposes it to joint and several liability. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999). This Court therefore has personal jurisdiction over IICG pursuant to New York's long arm statute and the well-recognized conspiracy jurisdiction theory under New York law.

**B.    This Court's Exercise Of Personal Jurisdiction Does Not Violate Due Process**

The Supreme Court repeatedly has held that the due process clauses of the Fifth and

Fourteenth Amendments permit the exercise of personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. Calder v. Jones, 465 U.S. 781, 788 (1984). Where, as here, the claim arises out of or relates to, a defendant's contact with the forum, i.e., the Attack in New York, the plaintiff need only prove specific jurisdiction. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co. Ltd., 241 F.3d 135, 152 (2d Cir. 2001) (citation omitted).

When considering specific jurisdiction, the court properly focuses on the relationship among the defendant, the forum and the litigation in judging minimum contacts. Calder, 465 U.S. at 788. In an action involving the harm caused by an intentional tort, the defendant's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence." Plaintiffs have alleged that IICG was engaged in a conspiracy to attack and wage war against the United States, its nationals, interests, and allies. (FAC ¶¶27, 602)* The actions of the conspirators were expressly aimed at the United States such that, under the circumstances, they must reasonably anticipate being haled into court here.

Two recent cases involving the hijacking of airplanes outside the United States, but with some United States citizens as passengers, provide support for exercising personal jurisdiction here. Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D.N.Y. 1998), aff'd in part, 162 F.3d 748 (2d Cir. 1998), cert. denied, 527 U.S. 1003 (1999), involved the in-flight bombing and destruction of Pan Am Flight 103 with the loss of 189 United States citizens over Lockerbie, Scotland. Judge Platt, in the Eastern District of New York, reasoned that the destruction of the airplane, 189 deaths, and significant security concerns for the country and its

---

* Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation. In Re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); Davis v. Barrett Day Securities, Inc., 1995 U.S. Dist. LEXIS 15434, 11-12 (M.D.N.C. 1995).

aviation industry arguably "has had extensive impacts" on the United States. Id. at 330.

> Any foreign state would know that the United States has
> substantial interest in protecting its flag carriers and its nationals
> from terrorist activities and should reasonably expect that if these
> interests were harmed, it would be subject to a variety of potential
> responses, including civil actions in United States courts.

Id. The Attack indisputably had impacts in and on the United States like few events in its

history.

In Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 55 (D.D.C. 2003),

Libya challenged the personal jurisdiction of a federal court in the District of Columbia in a suit

involving the 1989 mid-air explosion of a French airliner in Africa that killed seven United

States citizens. The plaintiffs in Pugh alleged that the defendants "conspired to sabotage and

succeeded in destroying a civilian commercial aircraft filled to capacity with innocent and

unsuspecting passengers while in flight." Id. at 59. The court noted that the United States had a

well known, worldwide interest in preventing and punishing terrorism. Congress had enacted

several criminal statutes dealing with such cases starting at least five years before the bombing.

These criminal statutes contemplated jurisdiction in the United States over foreign nationals for

activities abroad regardless of other contacts with the United States.

> It logically follows that if a federal court may constitutionally
> exercise criminal jurisdiction over such individuals, the
> Constitution should be no bar to those same federal courts, in a
> civil action for damages, exercising civil *in personam* jurisdiction
> over those same individuals for the same acts.

Id. That same logic applies here. In sum, this Court's exercise of specific personal jurisdiction

does not violate IICG's due process rights.

IICG is also subject to personal jurisdiction pursuant to the "modified due process

standard for mass torts" adopted on several occasions by courts in the Eastern District of New

12

York in both tobacco and DES cases. <u>Simon</u>, 86 F. Supp. 2d at 129-37; <u>In re DES Cases</u>, 79 F.

Supp. 552, 574-77 (E.D.N.Y. 1992). "New York's interest in this dispute is intense, and the

burden on [defendant] is minimal compared to the difficulty of the plaintiffs' litigating in [Saudi

Arabia]." <u>Simon</u>, 86 F. Supp.2d at 137.

The courts of the United States in general, and New York in particular, have an

undeniable and overwhelming appreciable interest in the World Trade Center litigation. <u>Id.</u> at

131 (citation omitted). Since New York has an appreciable state interest because this litigation

raises serious issues that would affect or have a probable impact on the vindication of policies

expressed in the laws of New York, the assertion of jurisdiction is *prima fade* constitutional. <u>Id.</u>

Thus, the assertion of jurisdiction is considered constitutional unless, given the actual

circumstances of the case, the defendant is unable to mount a defense in the forum state without

suffering a relatively substantial hardship. <u>Id.</u> IICG can make no such showing here.

### III.

### PLAINTIFFS HAVE ADEQUATELY PLED CAUSATION

IICG further challenges plaintiffs' causes of action based on the argument that plaintiffs

failed to plead that IICG's actions have a proximate causal link to the Attack. In making this

argument, IICG fundamentally misapprehends the elements of plaintiffs' conspiracy theory and

ignores the allegations of the FAC. Under New York law, "those who aid or abet or conspire in

tortious conduct are jointly and severally liable with other participants in the tortious conduct,

regardless of the degree of their participation or culpability in the overall scheme." <u>Lumbard v.</u>

<u>Maglia, Inc.</u>, 621 F.Supp. 1529, 1536 (S.D.N.Y. 1985).

Consistent with this rule, the causation analysis in a civil conspiracy action focuses solely

on whether the plaintiff's injuries were caused by "an unlawful overt act performed by *one of the*

*parties* to the agreement." Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis added). Pursuant to this standard, IICG's participation in al Qaeda's conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that terrorist organization, ties it inextricably to the Attack. As plaintiffs' injuries are indisputably the direct result of that Attack, plaintiffs have properly and adequately alleged causation. Accordingly, IICG's causation-based arguments must be rejected.

In keeping with the foregoing principles, courts repeatedly have held that victims of terrorism are entitled to recover from the knowing financiers and sponsors of the terrorist organization responsible for carrying out the plot that produced their injuries, and need not demonstrate any direct involvement by the defendant in that specific plot. As the United States District Court for the District of Columbia observed in Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998): "[a] plaintiff need not establish that the material support and resources provided by a foreign state for a terrorist act contributed directly to the act from which his claim arises… [s]ponsorship of a terrorist group which causes the personal injury or death of a United States national alone is sufficient...." Id. at 18. The Seventh Circuit adopted the same standard in Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002), holding that plaintiffs who are victims of terrorism need show only that the defendant knew of the terrorist organization's illegal activities, desired to help those activities, and engaged in some affirmative act in support thereof. Id. at 1023. More recently, the D.C. Circuit explicitly held that application of the "but for" standard of causation is manifestly improper in cases arising from the provision of material support to a terrorist organization. Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1130 (D.C. Cir. 2004). In support of its decision, the D.C. Circuit insightfully reasoned as follows:

> [T]he more likely situation is not Libya's hypothetical, involving one direct and one general state sponsor, but rather the case in which multiple foreign states claim to be providing only "general support." Such a case, in which application of a "but for" standard to joint tortfeasors could absolve them all, is precisely the one for which courts generally regard "but for" causation as inappropriate.

Id. Pursuant to these standards, IICG's participation in al Qaeda's conspiracy to commit terrorist attacks against the United States ties it inextricably to the Attack. As plaintiffs' injuries are indisputably the direct result of that Attack, plaintiffs have properly and adequately alleged causation. Accordingly, IICG's causation-based arguments must be rejected.

While unnecessary to establish liability over IICG given the conspiracy theory alleged by plaintiffs, it should be noted that the FAC does specifically allege that the Attack was only possible because of "the financial and logistical support of numerous individuals and organizations". According to the FAC, "These individuals and organizations provided AL QAEDA with the means to recruit, train and employ thousands of terrorists, including the twenty assigned the ghastly mission to murder Unites States citizens and destroy U.S. landmarks on September 11, 2001" (FAC ¶29). IICG conveniently ignores these and similar allegations of the FAC in its motion to dismiss. For purposes of the present motion, however, the allegations of the FAC must be accepted as true.

The FAC also sufficiently alleges that the Attack was a foreseeable product of the conspiracy in which IICG knowingly participated, and of IICG's aiding and abetting of al Qaeda. Indeed, the FAC unambiguously asserts that the Attack was a "direct, intended and foreseeable product" of that conspiracy (FAC ¶602). While at this stage it is not necessary for the plaintiffs to provide evidence of its allegations, it should be noted that al Qaeda had unequivocally declared, through statements and actions, that the primary objective of its global conspiracy was to attack the United States and kill its citizens. For example, in 1996 and 1998, al Qaeda issued

fatwas, or religious decrees, authorizing attacks against the United States and its citizens. In the 1998 *fatwa,* Osama bin Laden asserted that it was the duty of all Muslims to kill United States citizens, civilian or military, "in any country in which it is possible to do it..." (FAC ¶120).

During the years before the September 11 Attack, al Qaeda followed through on its threats, plotting and carrying out a series of calculated and increasingly violent attacks against U.S. interests, including: the first World Trade Center bombing in 1993; the simultaneous bombings of the U.S. Embassies in Kenya and Tanzania in 1998; the Millennium plot to bomb the Los Angeles International Airport; the plot to attack a U.S. Naval ship in Yemen in January of 2000; and the actual suicide attack on the USS Cole in October of 2000 (FAC ¶¶98-108, 129-35, 148-49, 151-54).

As the conduct of terrorist acts against the United States and its citizens was, for many years prior to September 11, 2001, al Qaeda's declared objective, it is inconceivable to suggest that the Attack was unforeseeable to any party who knowingly provided material support and resources to al Qaeda, as IICG is alleged to have done.

## IV.

## PLAINTIFFS HAVE ALLEGED A VIABLE RICO CLAIM AGAINST IICG

**A.**  **Plaintiffs Have Standing**
        **To Assert A RICO Claim**

IICG, in claiming that plaintiffs lack standing to assert a cause of action under RICO, has misapprehended the nature of the claim by plaintiffs

IICG contends that plaintiffs lack standing because plaintiffs' injuries are derivative of personal injuries.  However, this simply is not true.  Plaintiffs have expressly alleged that all of the injuries for which they seek recovery are injuries to "business and property."  Plaintiffs allege

16

that they "provided insurance coverage to numerous insureds whose *property* was damaged or destroyed in the September 11th attacks" (FAC ¶ 595) (emphasis supplied). Thus, it is clear that plaintiffs provided *property* insurance and paid claims for *property* losses associated with the Attack; their claims do not derive in any way from the horrendous injuries and loss of life that occurred that day.

**B.    Plaintiffs Have Properly Stated
        A RICO Claim Against IICG**

Plaintiffs have adequately alleged a RICO claim against IICG pursuant to sections 1962 (c) and (d). The enterprise – the association-in-fact of defendants, functioned as a continuing unit and had an existence prior to, and separate from, perpetration of the predicate acts alleged in the FAC (FAC ¶609). The purpose of the enterprise was to attack what it views as "infidels" and impose its own brand of conservative Islam (FAC ¶¶26-28). Thus, plaintiffs have sufficiently pled that al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 n.5 (1981); United States v. Coonan, 938 F.2d 1553, 1559-60 (2d Cir. 1991), cert. denied, 112 S. Ct. 1486 (1992).

Plaintiffs has alleged sufficient involvement by IICG in the enterprise to sustain claims under both Sections 1962(c) and (d). A plaintiff asserting a civil claim under 1962(c) must allege that the defendant participated in the operation or management of the enterprise. Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025 (1984); Dubai Islamic Bank v. Citibank, N.A., 256 F.Supp.2d 158, 164 (S.D.N.Y. 2003). To sustain a claim under 1962(d), the plaintiff must allege that the defendant was a "central figure" in the underlying scheme. Id. at 165. However, "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'" United States v. Louie, 625 F. Supp. 1327, 1333

(S.D.N.Y. 1985) (citing 18 U.S.C. § 1962(c)).  Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." Friedman v. Hartmann, 1994 WL 376058, *2 (S.D.N.Y. 1994).

Here, the plaintiffs have satisfied the pleading standards applicable to their 1962(c) and 1962(d) claims.  The plaintiffs allege that IICG participated in a calculated global campaign to raise and distribute funds for and to al Qaeda and to finance al Qaeda operations.  Thus, IICG's financial relationship with al Qaeda satisfies the 1962(c) operation or management test.  United States v. Roth, 860 F.2d 1382, 1390 (7th Cir. 1988), cert. denied, 490 U.S. 1090 (1989) (carrying bribes to judges constitutes association with enterprise); Casperone v. Landmark Oil & Gas Corp., 819 F.2d 112, 115 (5th Cir. 1987) (attorney providing legal services to enterprise associated with enterprise); State of New York v. O'Hara, 652 F. Supp. 1049, 1053 (W.D.N.Y. 1987) (submitting bids to city enterprise satisfies association test).

In addition, plaintiffs sufficiently plead that IICG conducted or participated in the affairs of the al Qaeda enterprise through a pattern of racketeering activity.  18 U.S.C. § 1961 (defining racketeering activity to include the provision of "material support" to terrorists under 18 U.S.C. § 2339A and B, such as sending currency or giving financial services, and alternatively, "directly or indirectly" providing or "collecting" funds earmarked for terrorism under 18 U.S.C. §2339C).  Plaintiffs assert that IICG financially participated in al Qaeda's global operations, and specifically furthered al Qaeda's goal of committing acts of terrorism against the United States, by knowingly and intentionally providing al Qaeda with the financial resources to conceive, plan

and execute its terrorist plots and to aid and abet those plots. <u>Zola v. Gordon</u>, 685 F. Supp. 354

(S.D.N.Y. 1988) ("Civil RICO liability can be predicated on aiding and abetting the commission

of the predicate acts by the primary offender."); <u>131 Main Street Assoc. v. Manko</u>, 897 F. Supp.

1507 (S.D.N.Y. 1995) ("One might reasonably infer intent to aid a primary violation from

allegations of substantial assistance.").

Plaintiffs also have adequately alleged proximate cause under RICO — that the

defendant's injurious conduct is both the factual and the proximate cause of plaintiffs' injury.

<u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 120 (2d Cir. 2003). Here, plaintiffs allege that they

were directly harmed by IICG's participation in al Qaeda's campaign to attack the United States,

and in particular, by its provision of material support and resources to al Qaeda. These

allegations more than satisfy plaintiffs' burden at the pleading stage, as"[t]he legal concept of

proximate causation mandates a multi-faceted and highly fact-specific inquiry," and dismissal at

the pleadings stage of a RICO claim is therefore imprudent. <u>National Asbestos Workers Medical</u>

<u>Fund v. Philip Morris, Inc</u>, 74 F.Supp.2d 221, 225 (E.D.N.Y. 1999) This Court's decision

"should be guided by a flexible, case-by-case approach." <u>Id.</u> (citing <u>Associated Gen'l</u>

<u>Contractors of Cal., Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 536-37 (1983)

and <u>Holmes v. Security Investor Prot. Corp.</u>, 503 U.S. 258, 272 n.20 (1992)). Indeed, this

Court's analysis of proximate causation "must remain flexible, rather than static: as society, its

needs, and its norms change, so too must the contours of tort liability and enforcement

procedures." <u>Id.</u> Further, failure to explain the alleged injury in detail is not fatal. <u>Von Bulow</u>

<u>v. Von Bulow</u>, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986). Allegations of injury, because they

necessarily involve questions of fact, must be construed liberally on a motion to dismiss under

Rule 12(b)(6). <u>Id.</u> The Complaint need only "allege[] compensable injury flowing from the

19

commission of the predicate acts." Id. (citations omitted). Plaintiffs' allegations accomplish that end. As such, the plaintiffs have met their pleading burden in relation to their RICO claims, particularly given the fact that the plaintiffs have not yet been afforded the opportunity to conduct discovery.

## V.

## IICG IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' CAUSE OF ACTION FOR TRESPASS

IICG also further challenges plaintiffs' claim under New York common law for trespass. Under New York law, trespass is the "intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996), cert. denied, 476 U.S. 1117 (1986). "To be liable, the trespasser 'need not intend or expect the damaging consequences of his intrusion[;]' rather, he need only 'intend the act which amounts to or produces the unlawful invasion." Phillips v. Sun Oil Co., 307 N.Y. 328, 331 (1954). As is alleged in the FAC, IICG assisted and encouraged those who intentionally entered the World Trade Center property to perpetrate the Attack, knowing that its conduct (together with that of the other co-conspirators) would result in the Attack and the instrusion. Under New York case law, such allegations support a claim for trespass. Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, *4 n.31 (S.D.N.Y. 2003) (citing Pittman by Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)). Plaintiffs have therefore sufficiently alleged a trespass claim against IICG. Indeed, this Court has already held that plaintiffs may maintain common law claims against parties who conspired with, or aided and abetted, al Qaeda. In re Terrorist Attacks on September 11, 2001, 349 F.Supp.2d 765, 830 (S.D.N.Y. 2005)

**VI.**

**IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT,
PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD**

If the Court finds plaintiffs' pleading deficient in any way, plaintiffs should be given

leave to replead.  Rule 15(a) provides that "leave [to amend] shall be freely given when justice so

requires."  F.R.C.P. 15.  In Conley, 355 U.S. at 48, the Supreme Court explained that, "[t]he

Federal Rules reject the approach that pleading is a game of skill in which one misstep by

counsel may be decisive to the outcome and accept the principle that the purpose of pleading is

to facilitate a proper decision on the merits."  "Mere technicalities" should not prevent a case

from being decided on the merits.  Monahan v. NYC Dep't of Corr., 214 F.3d 275, 283 (2d Cir.

2000), cert. denied, 531 U.S. 1035 (2000).  Accordingly, the Supreme Court has instructed that

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits.  In the absence of any apparent or declared reason—such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of amendment, etc.—the
> leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  Here, no basis exists to deny leave to amend.

## CONCLUSION

For the foregoing reasons, this Court should deny IICG's motion to dismiss in its entirety.


Dated: New York, New York
       April 14, 2005


                              FERBER FROST CHAN & ESSNER, LLP

                              By: /s/Robert M. Kaplan (RK1428)
                              Attorneys for Plaintiffs
                              530 Fifth Avenue, 23rd Floor
                              New York, New York 10036-5101
                              (212) 944-2200