UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: TERRORIST ATTACKS ON ) <br> SEPTEMBER 11, 2001 ) <br> ) | **Civil Action No. 03 MDL 1570 (RCC)** |
| This document relates to: |  |
| ) <br> FEDERAL INSURANCE CO., <u>et al.</u>, ) <br>                Plaintiffs, ) <br> v.                       ) <br> ) <br> AL QAIDA, <u>et al.</u>, ) <br>                Defendants. ) <br> ) | **Civil Action No. 03 CV 6978 (RCC)** |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF THE
SAUDI JOINT RELIEF COMMITTEE**

                              KELLOGG, HUBER, HANSEN,
                                TODD, EVANS & FIGEL, P.L.L.C.
                              Mark C. Hansen (MH0359)
                              Michael K. Kellogg (MK4579)
                              David C. Frederick (DF4906)
                              Paul B. Matey (PM2093)

                              Sumner Square
                              1615 M Street, N.W., Suite 400
                              Washington, D.C. 20036-3209
                              (202) 326-7900

April 18, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT:

    I.       The FSIA Requires Dismissal Of The Claims Against The SJRC ........................ 1

          A.    Plaintiffs Misstate the Standard of Review and Fail To Present Any Evidence To Rebut FSIA Immunity ............................................................. 1

          B.    Plaintiffs' Arguments Concerning the Exceptions to Immunity Under the FSIA Are Legally Flawed and Ignore This Court's Ruling ............................................................................................................ 3

               1.    The non-commercial torts exception is inapplicable ....................... 4

               2.    The SJRC's charitable works are not commercial activities ........... 7

    II.      There Is No Basis For Exercising Personal Jurisdiction Over The SJRC ............... 8

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page

**CASES**

Adler v. Federal Republic of Nigeria,
    219 F.3d 869 (9th Cir. 2000) ................................................................................................8

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989)................................................................................................................7

Arriba Ltd. v. Petroleos Mexicanos,
    962 F.2d 528 (5th Cir. 1992) ..................................................................................................3

Asociacion de Reclamantes v. United Mexican States,
    735 F.2d 1517 (D.C. Cir. 1984)..............................................................................................7

Boim v. Quranic Literacy Institute,
    127 F. Supp. 2d 1002 (N.D. Ill. 2001), aff'd, 291 F.3d 1000 (7th Cir. 2002) ......................5

Burnett v. Al Baraka Inv. & Dev. Corp.:

    274 F. Supp. 2d 86 (D.D.C. 2003).........................................................................................5

    292 F. Supp. 2d 9 (D.D.C. 2003) ...........................................................................3, 5, 6, 7

Cabiri v. Government of Ghana,
    165 F.3d 193 (2d Cir. 1999)...................................................................................................6

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) .................................................................................................3

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998)...................................................................................................1

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
    462 U.S. 611 (1983)................................................................................................................9

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
    905 F.2d 438 (D.C. Cir. 1990) ..............................................................................................3

Kline v. Kaneko,
    685 F. Supp. 386 (S.D.N.Y. 1988).........................................................................................8

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001).....................................................................................2

Olsen v. Government of Mexico,
 729 F.2d 641 (9th Cir. 1984) ....................................................................................6

Republic of Argentina v. Weltover, Inc.,
 504 U.S. 607 (1992)..................................................................................................8

Robinson v. Government of Malaysia,
 269 F.3d 133 (2d Cir. 2001).....................................................................................3

Southway v. Central Bank of Nigeria,
 198 F.3d 1210 (10th Cir. 1999) ...............................................................................8

Terrorist Attacks on September 11, 2001, In re,
 349 F. Supp. 2d 765 (S.D.N.Y. 2005).......................................................2, 3, 4, 5, 6, 7, 8, 9

Virtual Countries, Inc. v. Republic of South Africa,
 300 F.3d 230 (2d Cir. 2002).................................................................................2, 3

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
 751 F.2d 117 (2d Cir. 1984)...................................................................................10

**STATUTES AND RULES**

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq.:

 28 U.S.C. § 1603(a) ................................................................................................9

 28 U.S.C. § 1603(d) ................................................................................................8

 28 U.S.C. § 1605(a)(5).............................................................................................4

 28 U.S.C. § 1605(a)(5)(A) .......................................................................................6

## I.     The FSIA Requires Dismissal Of The Claims Against The SJRC

The motion to dismiss of the Saudi Joint Relief Committee (the "SJRC") raises two straightforward points. First, as plaintiffs concede, the SJRC is a political subdivision, agency, or instrumentality of the Kingdom of Saudi Arabia, and thus presumptively immune from the jurisdiction of the United States courts, unless one of the FSIA's limited exceptions applies. Second, because plaintiffs' allegations do not fall within the exceptions to FSIA immunity for non-commercial torts or commercial activities, the SJRC is absolutely immune from suit in this matter and must be dismissed as a defendant.

In response, the Federal Insurance plaintiffs simply ignore this Court's explanation of the FSIA, including its clear pronouncements on the evidentiary requirements to defeat a showing of immunity, the plain meaning of a "commercial activity," and the limitations on the non-commercial torts exception based on causation, discretionary functions, and proximity.

### A.     Plaintiffs Misstate the Standard of Review and Fail To Present Any Evidence To Rebut FSIA Immunity

Despite this Court's recent decision, plaintiffs continue to misstate the applicable standard of review in FSIA cases. Although they acknowledge that the burden of production shifts to the plaintiffs when the sovereign defendant challenges subject-matter jurisdiction under the FSIA, plaintiffs recycle their unsupported argument that they need only "come forward with *allegations or evidence* which, if proven, would bring plaintiff's claims within" an exception to the FSIA. Opp. at 7 (emphasis added).

The law is absolutely clear, however, that, in resolving immunity claims under the FSIA, a district court may not "accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). Instead, as this Court explained, in response to a defendant's prima facie showing of

sovereign immunity, "the plaintiff must present *evidence* that one of the statute's exceptions nullifies the immunity." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005) (citing Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002)) (emphasis added).

Consistent with these requirements, the SJRC submitted a detailed declaration from its president Dr. Adbulrahman A. Al-Suwailem explaining the history, function, structure, and funding of the SJRC's charitable works in Kosovo and Chechnya.[1] Under the FSIA, Dr. Al-Suwailem's testimony thus confirms the SJRC's sovereign immunity unless plaintiffs submit "*evidence* of record that the defendant undertook certain activities that fall within the scope of several specifically enumerated exceptions to FSIA immunity." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001) (emphasis added). As with prior motions to dismiss, plaintiffs offer no evidence at all in response.

Instead, plaintiffs suggest that both the exceptions to immunity under the FSIA for non-commercial tort and commercial activities apply because the SJRC allegedly aided and abetted the September 11 attacks by providing "direct financial and logistical support to al Qaida." Opp. at 1 (emphasis omitted). The only competent evidence on this issue, however, is the SJRC's unqualified declaration that "[t]he humanitarian mission of the SJRC is fundamentally incompatible with the concept of terrorism" and that "the SJRC has never had any connection with, or in any way supported, terrorist activities or terrorist organizations." Declaration of Dr. Adbulrahman A. Al-Suwailem ¶ 16 ("Al-Suwailem Decl."). Dr. Al-Suwailem's declaration also

---

[1] Since submitting his declaration, Dr. Al-Suwailem was appointed as a member to the Shura'h Council (a consultative council serving the government of the Kingdom of Saudi Arabia) and is no longer serving as president of either the SJRC or the Saudi Red Crescent Society. The SJRC has not appointed a successor to Dr. Al-Suwailem.

2

makes clear that "[t]he SJRC operated solely as a charitable and humanitarian entity, and none of the funds or other aid distributed by the SJRC was provided for 'commercial' purposes." Id. ¶ 4.

The SJRC's unrebutted denial of plaintiffs' core allegation of financial and logistical support for terrorism — through sworn and unopposed evidence — is dispositive on the issue of immunity under the FSIA. See Virtual Countries, 300 F.3d at 241 (affirming dismissal of complaint against foreign sovereign where, "[d]espite an opportunity to come forward with evidence to meet its burden of production in order to prevail on the jurisdiction issue, [the plaintiff] failed to provide sufficient evidence for [its] contentions"). See also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) ("[b]ecause [the plaintiff] failed to present any evidence that [the defendant] was acting outside his official capacity," the district court properly dismissed the case). Accordingly, the SJRC must be dismissed as a defendant.[2]

### B. Plaintiffs' Arguments Concerning the Exceptions to Immunity Under the FSIA Are Legally Flawed and Ignore This Court's Ruling

Even if this Court could consider plaintiffs' allegations as a response to the SJRC's prima facie showing of sovereign immunity, plaintiffs fail to demonstrate any cognizable exception to immunity under the FSIA.

---

[2] Instead of proffering evidence, plaintiffs again ask for discovery "as to any disputed fact the Court deems material to the FSIA jurisdictional analysis." Opp. at 8 n.4. But, as with prior motions by Prince Turki and the Kingdom of Saudi Arabia, there are no disputed facts; plaintiffs offer only unsupported *allegations*. As this Court recognized, the Second Circuit has made clear that discovery against a sovereign entitled to immunity under the FSIA will not be permitted based on generic and conclusory allegations. In re Terrorist Attacks, 349 F. Supp. 2d at 783 (citing Robinson v. Government of Malaysia, 269 F.3d 133, 146 (2d Cir. 2001)); see also El-Fadl, 75 F.3d at 671 (explaining that allowing discovery prior to dismissal "would 'frustrate the significance and benefit of entitlement to immunity from suit'") (quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990)); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 536-37 (5th Cir. 1992) (same); Burnett v. Al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 15 (D.D.C. 2003).

3

        1.       <u>The non-commercial torts exception is inapplicable</u>

Despite the SJRC's blanket denial of any assistance to terrorist organizations, plaintiffs contend that the SJRC's "knowing participation in al Qaida's conspiracy" through "material aid and abetting" falls within the FSIA exception for tortious acts under § 1605(a)(5). Opp. at 10. Plaintiffs acknowledge, as they must, that this Court has already rejected their invocation of § 1605(a)(5) as insufficient to support their claims against the Kingdom of Saudi Arabia, Prince Turki, and Prince Sultan. That concession is fatal to their claims against the SJRC as plaintiffs' allegations are factually indistinguishable from the claims this Court has already dismissed.

<u>First</u>, plaintiffs cannot escape the fact that their core allegation — that the SJRC coordinated support for charities, which, through some unspecified and entirely speculative chain of entities, ultimately funded the September 11 attacks — is precisely the same sweeping and attenuated theory that this Court already held is insufficient to overcome FSIA immunity. <u>In re Terrorist Attacks</u>, 349 F. Supp. 2d at 800-01 ("there must be some facts presented to support the allegation that the defendant knew the receiving organization" was involved in terrorist activities). Plaintiffs have offered no evidence that the SJRC "knowingly provided assistance" to Al-Qaeda and merely allege that the SJRC participated in an undefined network of support for terrorism. <u>Id.</u> at 801.

In an attempt to distance themselves from this Court's ruling, plaintiffs argue that, "whereas Princes Sultan and Turki are alleged to have channeled support to al Qaida through intermediary organizations, the Federal Plaintiffs claims against the SJRC are premised on its *direct* sponsorship of al Qaida." Opp. at 14. This assertion, however, ignores the actual allegations against Prince Turki considered, and rejected, by the Court: that "Prince Turki met with members of the Taliban and . . . gave the Taliban financial and material support," <u>In re</u>

4

Terrorist Attacks, 349 F. Supp. 2d at 785 (citing Federal Insurance Plaintiffs' Compl. ¶¶ 447-448); that Prince Turki "knew al Qaeda would benefit from the Kingdom's support" of the Taliban, id.; and that Prince Turki "facilitated money transfers . . . to the Taliban and al Qaeda," id. (citing Compl. ¶ 451). Plaintiffs' claims against the SJRC are thus indistinguishable from the allegations of terrorist support this Court found too attenuated to support the non-commercial tort exception. Id. at 800 (citing Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 106 (D.D.C. 2003)); see also Burnett, 292 F. Supp. 2d at 20.[3]

Moreover, just as with the claims against Prince Turki, "none of the organizations the [SJRC is] alleged to have supported . . . were designated a sponsor of terrorism at the time of the alleged contributions." In re Terrorist Attacks, 349 F. Supp. 2d at 800. The SJRC included representatives from non-governmental charitable and humanitarian organizations, including the International Islamic Relief Organization, the World Assembly for Muslim Youth, the Islamic Endowment Foundation, and the Al-Haramain Charitable Foundation. Al-Suwailem Decl. ¶ 7. None of these entities was designated as a sponsor of terrorism by the United States. In re Terrorist Attacks, 349 F. Supp. 2d at 800. The absence of even indirect support for a designated terrorist organization distinguishes Boim v. Quranic Literacy Institute, 127 F. Supp. 2d 1002 (N.D. Ill. 2001), aff'd, 291 F.3d 1000 (7th Cir. 2002), which involved alleged charitable contributions to Hamas, rather than purported intermediaries. See In re Terrorist Attacks, 349 F. Supp. 2d at 800. Accordingly, plaintiffs cannot "allege specific facts showing that the [SJRC] knew or should have known that the charities they supported were actually fronts for al Qaeda." Id.

---

[3] Similarly, plaintiffs alleged that the Kingdom of Saudi Arabia "used its relationship with the Taliban to sustain al Qaeda in the mid-1990s," In re Terrorist Attacks, 349 F. Supp. 2d at 786 (citing Compl. ¶¶ 403, 407), and that the Kingdom "participat[ed] in al Qaida's jihadist campaign," id. (citing Compl. ¶ 425).

5

Second, plaintiffs' allegations concerning the SJRC's administration of humanitarian aid to refugees in Kosovo and Chechnya are no different than the funding decisions of Saudi officials that this Court has already concluded were "made at the planning level of government" and thus squarely covered by the discretionary function exception of § 1605(a)(5)(A). Id. at 802; see also Burnett, 292 F. Supp. 2d at 20-21 (it is "nearly self-evident" that "making recommendations . . . about requests for assistance from Islamic organizations" and "deciding what disbursements should be made to Islamic charitable organizations" are "clearly . . . 'decisions grounded in social, economic, and political policy'"). Plaintiffs again argue (without support) that the SJRC's purported "direct" assistance for Al-Qaeda distinguishes this Court's decision. But this Court made clear that even allegedly direct decisions to support individuals associated with terrorism fall within the discretionary exception of the FSIA. In re Terrorist Attacks, 349 F. Supp. 2d at 802 ("Prince Turki's decisions regarding the treatment of the Taliban and Osama bin Laden were judgments based on considerations of public policy.").

Third, the non-commercial torts exception does not extend to alleged torts committed outside the United States by a foreign sovereign. As this Court recognized, "the Supreme Court has held that this exception 'covers only torts occurring within the territorial jurisdiction of the United States.'" Cabiri v. Government of Ghana, 165 F.3d 193, 200 n.3 (2d Cir. 1999), quoted in In re Terrorist Attacks, 349 F. Supp. 2d at 795. In light of these authorities, plaintiffs' reliance (at 17-18) on Olsen v. Government of Mexico, 729 F.2d 641 (9th Cir. 1984), is misplaced. Olsen held that FSIA immunity did not apply where governmental agents allegedly committed "at least one entire tort occurring in the United States." Id. at 646. Here, however, plaintiffs made no such allegations. Rather, *all* of the SJRC's alleged tortious conduct occurred in Kosovo and Chechnya, Compl. ¶¶ 124, 147, 176, 200, 203, 205, and even plaintiffs do not go as far as to

6

allege that the September 11 hijackers were in any sense agents of the SJRC. Furthermore, plaintiffs have no answer to the post-Olsen cases of Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439-40 (1989), and Asociacion de Reclamantes v. United Mexican States, 735 F.2d 1517, 1524-25 (D.C. Cir. 1984), and the decisions of courts in the Second Circuit explained in this Court's decision, In re Terrorist Attacks, 349 F. Supp. 2d at 795-96, that clearly establish the rule that an FSIA defendant must be alleged to have committed an "entire tort" in the United States before the non-commercial torts exception can apply.

### 2. The SJRC's charitable works are not commercial activities

Plaintiffs do not dispute that the SJRC's charitable and humanitarian acts cannot fall within the commercial activity exception of the FSIA. In re Terrorist Attacks, 349 F. Supp. 2d at 793 (citing Burnett, 292 F. Supp. 2d at 18). Instead, they claim that this Court erred in holding that the "Second Circuit has made very clear that, for purposes of the FSIA, a commercial activity must be one in which a private person can engage lawfully," id., and argue that the SJRC used its donations to launder funds on behalf of Al-Qaeda. Opp. at 19-20. Plaintiffs' suggestion that the SJRC used third parties to launder funds covertly to support the September 11 attacks is both outrageous and unsupported. Plaintiffs offer no facts to support this theory and detail no specific transactions by the SJRC that would constitute a violation of the federal money laundering statute (indeed, their opposition does not even cite a provision of domestic or international law purportedly violated by the alleged "money laundering"). Plaintiffs' reliance on generic and conclusory allegations is entirely insufficient to sustain their burden in seeking to overcome the SJRC's presumptive immunity under the FSIA.

In any event, plaintiffs' theory is wrong as a matter of law. As this Court explained, neither the SJRC's alleged crime (money laundering) nor its underlying conduct (charitable

7

donations) can be characterized as activities "'by which a private party engages in trade and traffic or commerce.'" In re Terrorist Attacks, 349 F. Supp. 2d at 793 (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)); see also Kline v. Kaneko, 685 F. Supp. 386, 391 (S.D.N.Y. 1988). Southway v. Central Bank of Nigeria, 198 F.3d 1210 (10th Cir. 1999), on which plaintiffs rely, addressed the entirely different question of whether a concededly commercial activity (in that case a contract for oil-drilling machinery) could be removed from the definition in § 1603(d) merely because that conduct *also* constituted a crime. Id. at 1217-18. In contrast, where the alleged conduct "involved illegal activity devoid of any commercial component," the activity is necessarily outside of the FSIA's commercial activity exception. Adler v. Federal Republic of Nigeria, 219 F.3d 869, 875 (9th Cir. 2000).

## II. There Is No Basis For Exercising Personal Jurisdiction Over The SJRC

Plaintiffs do not — and cannot — contest that the SJRC was established by the Kingdom of Saudi Arabia for the sole purpose of providing humanitarian assistance to refugees in Kosovo and Chechnya; or that the SJRC "has never solicited charitable or humanitarian donations inside the United States," "has no offices or employees in the United States," holds "no bank accounts or other property in the United States," and "has never conducted any form of business in the United States." Al-Suwailem Decl. ¶¶ 4-6, 15.

1. Lacking any facts demonstrating contacts in the United States, plaintiffs resort to their argument that the SJRC "necessarily directed its conduct at the United States" because "al Qaida was engaged in a global campaign of terror directed against the United States." Opp. at 23. This Court has already rejected this same contention, finding that plaintiffs "do not offer any facts to lend support to their allegation" that the SJRC directed any actions towards the United States merely by "donating to charities" alleged to support international terrorism. In re Terrorist

8

Attacks, 349 F. Supp. 2d at 813.  At most, plaintiffs allege that the SJRC's charitable donations may have supported Al-Qaeda, not that the SJRC funded the terrorist attacks of September 11.  Such "[l]egal conclusions done up as factual allegations" cannot substitute for the absence of any allegation, let alone evidence, that the SJRC directed terrorist activities in the United States.  Id. (internal quotation marks omitted).

      2.      Plaintiffs alternatively argue that the contacts of the Kingdom of Saudi Arabia and the SJRC's "constituent charities" may be imputed to the SJRC for purposes of establishing personal jurisdiction.  Opp. at 23-24.  Plaintiffs' argument misstates both the law of affiliate contacts and the facts of this case.  First, as explained in the declaration of Dr. Al-Suwailem, the Kingdom of Saudi Arabia established the SJRC as an independent political subdivision, agency, or instrumentality of the Kingdom.  Al-Suwailem Decl. ¶ 2.  As part of its charter, the Kingdom specified that the SJRC would include *representatives* from "non-governmental charitable and humanitarian organizations, including the International Islamic Relief Organization, the World Assembly of Muslim Youth, the Islamic Endowment Foundation, and the Al-Haramain Charitable Foundation."  Id. ¶ 7.  These non-governmental entities are separate and distinct legal entities.  Plaintiffs allege no facts that would allow the contacts of these unrelated charities to be imputed to the SJRC.

     Nor do plaintiffs allege any facts that would allow the contacts of the Kingdom of Saudi Arabia to be attributed to the SJRC.  Just because the SJRC is an agency or instrumentality of the Kingdom under § 1603(a) of the FSIA, does not mean it is susceptible to "veil piercing" under the common law of corporations.  The Supreme Court has made clear that the FSIA does not affect the substantive law of liability and may not be used to impute the acts of an agency to the sovereign itself.  Cf. First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462

9

U.S. 611 (1983). Beyond restating the SJRC's sovereign relationship to the Kingdom under the FSIA, however, plaintiffs have not alleged any facts that would satisfy the common law alter-ego test they propose under Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir. 1984). See Opp. at 24.

In Volkswagenwerk, the Second Circuit outlined four factors necessary to determine whether a foreign corporation is the "mere department" of its parent: (1) common ownership; (2) financial dependency of the subsidiary; (3) selection and assignment of the subsidiary's personnel and other failures to observe corporate formalities; and (4) the parent's control over the subsidiary's policies. 751 F.2d at 120-22. Plaintiffs have failed to allege (let alone prove) facts demonstrating any of these four requirements. In contrast, the declaration of Dr. Al-Suwailem explains that, while operating as an agency or instrumentality of the Kingdom, the SJRC has enjoyed formal independence in hiring decisions (Al-Suwailem Decl. ¶ 9), international relief efforts (id. ¶ 6), funding (id. ¶ 4), and internal management (id. Ex. E). Each of these unrebutted facts demonstrates that the SJRC cannot be considered a dominated subsidiary of the Kingdom under the common law of corporations. Accordingly, the fact that the SJRC itself has absolutely no contacts with New York or the United States is dispositive.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint against the SJRC in its entirety.

10

                    Respectfully submitted,

                    KELLOGG, HUBER, HANSEN,
                      TODD, EVANS & FIGEL, P.L.L.C.

                    _____/s/_____

Mark C. Hansen (MH0359)
Michael K. Kellogg (MK4579)
David C. Frederick (DF4906)
Paul B. Matey (PM2093)

Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036-3209
(202) 326-7900

*Attorneys for the Saudi Joint Relief Committee*

April 18, 2005

11

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 18th day of April 2005, I caused copies of the <u>Reply in Support of Motion To Dismiss of the Saudi Joint Relief Committee</u> to be served electronically pursuant to the Court's ECF system and by United States first-class mail on any parties not participating with the Court's ECF system as thereafter advised by the Court.

/s/
Kathleen Hendrickson