UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001     03 MDL 1570 (RCC)
     ECF Case

-------------------------------------------------------------------------x

KATHLEEN ASHTON, *et al.,*     02 CV 6977 (RCC)
     ECF Case

     Plaintiffs,

v.

AL BARAKA INVESTMENT & DEVELOPMENT
CORP., *et al.,*

     Defendants.
_____/


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT FAISAL ISLAMIC BANK-SUDAN


**JOHN F. LAURO, P.A**.

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant*
*Faisal Islamic Bank -Sudan*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. iii

I.  INTRODUCTION ........................................................................................ 1

II. PRELIMINARY STATEMENT ..................................................................... 1

III. SUMMARY OF ALLEGATIONS ................................................................. 2

    A.  Facts Alleged in the Complaint ............................................................... 2

        (i)  Alleged Account at FIBS ................................................................ 2

        (ii)  Al Shamal Bank .......................................................................... 3

        (iii)  Tadamon Islamic Bank ............................................................... 4

    B.  The True Facts ....................................................................................... 5

IV. ARGUMENT ............................................................................................. 7

    A.  The Complaint Does Not Comply with Rule 8 ......................................... 7

    B.  There is No Personal Jurisdiction Over FIBS in This Court ..................... 8

        (i). General Allegations of Personal Jurisdiction and Conspiracy are
             Insufficient Under New York or Federal Law ................................. 8

        (ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process ........... 11

    C. The Complaint Fails To State A Claim Against FIBS ............................... 13

        (i). State Law Torts .......................................................................... 15

        (ii). Anti-Terrorism Act .................................................................... 16

        (iii). Torture Victims Protection Act .................................................... 17

        (iv). Punitive Damages ..................................................................... 18

        (v). Property Damage ....................................................................... 18

V. CONCLUSION ................................................................................................20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*A.J. Cunningham Packing Corp., v. Congress Fin. Corp.*,
792 F.2d 330 (3d Cir. 1986)..................................................................19

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,
480 U.S. 102 (1987) ..................................................................... 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)....................................................... 8

*Bao Ge v. Li Peng*,
201 F. Supp. 2d 14 (D.D.C. 2000),
*aff'd*, 2002 WL 1052012 (D.C. Cir. 2002)................................ 18

*Beanal v. Freeport-McMoRan, Inc*.,
969 F. Supp. 362 (E.D.LA. 1997),
*aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999) ................ 18

*Benas v. Baca*,
2001 WL 485168 (C.D. Cal. Apr. 23, 2001),
*aff'd*, 30 Fed.Appx. 753 (9th Cir. Feb. 15, 2002) ...................... 18

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ...................................................... 17

*Boim v. Quranic Literacy Inst.*,
340 F. Supp. 2d 885 (N.D. Ill. 2004)............................................ 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................... 11

*Burnett v. Al Baraka Investment and Development Corp., et al.*,
292 F. Supp. 2d 9 (D.D.C. 2003)................................................. 11

*Burnett v. Al Baraka Inv. and Development Corp.*,
274 F. Supp. 2d 86 (D.D.C.2003) .........................................12, 16

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991) .......................................... 9

*Conley v. Gibson*,
355 U.S. 41, 45-46 (1957) ...................................................................................7

*Cooper v. Horn*,
448 S.E.2d 403 (Va. 1994)...............................................................................19

*Cooper Indus., Inc. v. Leatherman Tool Group*,
532 U.S. 424 (2001).........................................................................................18

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004) ..................................................... 10, 13

*DeJesus v. Sears, Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996)................................................................................ 14

*Electronics Communications Corp. v. Toshiba America Consumer*,
129 F.3d 240 (2d Cir. 1997).............................................................................20

*Flores v. Southern Peru Copper Corp.*,
343 F.3d 140 (2d. Cir. 2003)...................................................................... 17, 19

*Friedman v. Bayer Corp.*,
1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ....................................... 18

*Furlong v. Long Island College Hosp.*,
710 F.2d 922 (2d Cir. 1983)............................................................................. 8

*Grove Press, Inc. v. Angleton*,
649 F.2d 121 (2d Cir. 1981)............................................................................ 10

*Hanson v. Denckla*,
357 U.S. 235 (1985) ........................................................................................ 11

*Hechler Chevrolet, Inc. v. Gen. Motors Corp.*,
337 S.E.2d 744 (Va. 1985)...............................................................................15

*Holmes v. Sec. Investor Protection Corp.*,
503 U.S. 258 (1992) ................................................................................... 14, 15

*In re: American Express Co. v. S'holder Litig.*,
39 F.3d 395 (2d Cir. 1994)........................................................................... 14

*In re Air Crash Disaster at Cove Neck, Long Island, New York
on January 25, 1990*, 885 F. Supp. 434, 440 (E.D.N.Y. 1995) ................................ 19

*In re: Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ....................................................................... 14

*In re Magnetic Audiotape Antitrust Litigation*,
334 F.3d 204 (2d Cir. 2003) .................................................................................... 13

*In Re: Nasdaq Market-Makes Antitrust Litigation*,
894 F. Supp. 703 (S.D.N.Y. 1995) ............................................................................ 7

*In re: Terrorist Attacks on September 11, 2001*,
349 F. Supp. 2d 825 (S.D.N.Y. 2005) ............................................................. *passim*

*International Shoe Company v. Washington*,
326 U.S. 310 (1945) ............................................................................................... 11

*Kordic v. Karadzic*,
70 F.3d 232 (2d Cir. 1995),
*reh'g denied*, 74 F.3d 377 (2d Cir. 1996) ................................................................ 17

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ..................................................................................... 5

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972) .................................................................................. 10

*Lehigh Valley Indus. Inc., v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ................................................................................. 9, 10

*Lichtenstein v. State*,
712 N.E. 2d 1218 (N.Y. Ct. App. 1999) .................................................................. 16

*Mende v. Milestone Tech., Inc.*,
269 F. Supp. 2d 246 (S.D.N.Y. 2003) ....................................................................... 9

*Meroni v. Holy Spirit Ass'n for the Unification of World Christianity*,
506 N.Y.S.2d 174 (N.Y. App. Div. 1986) ................................................................ 16

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ................................................................................. 9, 11

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1999) ................................................................................... 9

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ....................................................................................... 5

*Robinson v. Government of Malaysia,*
269 F.3d 133 (2d Cir. 2001)..................................................................... 9

*Ruffolo v. Oppenheimer & Company, Inc.,*
1991 WL 17857 (S.D.N.Y. Feb. 5, 1991)................................................8

*Skipworth by Williams v. Lead Industries, Ass'n, Inc.,*
690 A.2d 169 (Penn. 1997) ....................................................................15

*Smith v. County of Erie,*
743 N.Y.S.2d 649 (N.Y. App. 2002) ....................................................18

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan,*
262 F.Supp. 2d 217 (S.D.N.Y. 2003)....................................................17

*Sonds v. St. Barnabas Hosp. Corp. Health Svcs.,*
151 F. Supp. 2d 303 (S.D.N.Y. 2001) .................................................. 14

*Suarez v. Underwood,*
103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. 1980)........................15

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)................................................................................7

*Tomheim v. Federal Home Loan Mortg. Corp.,*
988 F. Supp. 279, 281 (S.D.N.Y. 1997) ............................................... 18

*Whitaker v. American Telecasting, Inc.,*
261 F.3d 196 (2d Cir. 2001)................................................................... 8

*Wiwa v. Royal Dutch Petroleum Co.,*
2002 WL 319887 (S.D.N.Y. February 28, 2002) ................................. 18

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ............................................................................. 12

*York v. Association of the Bar of the City of New York,*
286 F.3d 122 (2d Cir. 2002).................................................................. 14

**STATUTES AND LEGISLATIVE MATERIALS:**

18 U.S.C. §§ 2331-2333 (2000) ..........................................................16
28 U.S.C. §1350 (1992) ....................................................................... 17
N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001)............................................ 16

**RULES:**

Rule 8, Federal Rules of Civil Procedure.................................................. 7, 8

Rule 9(b), Federal Rules of Civil Procedure............................................ 7

Rules 12(b)(2), Federal Rules of Civil Procedure ..................................... 8

Rules 12(b)(6), Federal Rules of Civil Procedure ............................... 13, 14

**TREATISES:**

8 N.Y. Jur., Conspiracy, §§ 4, 19 (1982)..............................................15

**MISCELLANEOUS:**

National Commission on Terrorist Attacks Upon the United States
("9/11 Report") ............................................................................ 1, 5, 6

# I. INTRODUCTION

Defendant Faisal Islamic Bank-Sudan ("FIBS" or "the bank") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' third amended complaint ("the complaint" or "Complaint, ¶ __" ) under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth below, the complaint does not allege that FIBS took any action that had any connection whatsoever with plaintiffs' injuries, and the 9/11 Report [1] makes clear that there could not have been any such connection. The complaint fails to provide a "short and plain" statement of facts entitling plaintiffs to relief.  Further, this Court lacks personal jurisdiction over FIBS, which has no contacts, "minimal" or otherwise, with the United States.  Finally, the complaint fails to state a claim against FIBS.

Therefore, the complaint against the bank should be dismissed in its entirety.

# II. PRELIMINARY STATEMENT

Before considering the substance of the assertions here, certain important observations should be made. Plaintiffs are victims or representatives of victims killed or injured in the terrorist attacks of September 11, 2001.  No one could dispute the horror of those events, or the pain endured by victims and family members.   The terrorist attacks represent a tragedy of unprecedented magnitude.  In this case, plaintiffs are seeking to hold responsible those who caused these terrible acts.

However, as the complaint makes clear, FIBS (a banking institution in Sudan) had absolutely no role in the September 11 terrorist attacks.  The calamity of the terrorist attacks should

---

[1] In the summer of 2004, the National Commission on Terrorist Attacks Upon The United States issued a report (" 9/11 Report") pursuant to Public Law 107-306, November 27, 2002. This memorandum of law references the authorized edition of the report published by W.W. Norton & Company, Inc., and will be cited here as " 9/11 Report, p.___."

not lead to the discarding of fundamental principles of civil jurisprudence.  Here, there is no rational legal theory of jurisdiction over FIBS or of proximate causation linking the bank to terrorist activities directed against the United States.   Before imposing liability, our legal system requires a connection between a defendant's actions and the harm suffered by an injured party.  Even though all must sympathize with their plight, plaintiffs cannot demonstrate any jurisdiction over FIBS or any connection between the bank and the events of September 11.

### III. SUMMARY OF ALLEGATIONS

**A. Facts Alleged in the Complaint**

The complaint contains long-winded and rambling attacks against various individuals and private and governmental entities.  It takes aim at components of Islamic and Arabic culture, including, banks, charities, prominent business people, and respected government officials.  In fact, the complaint attacks indiscriminately the Arab and Muslim world. The complaint asserts specific facts with regard to individuals who allegedly participated in the September 11 events, but none of these allegations involve FIBS.[2] Complaint, ¶¶ 6-9.

Plaintiffs state that in 1989, the al Qaeda organization was formed by Osama bin Laden. Complaint, ¶¶ 33-34.   In 1991, bin Laden moved his operations to the Republic of Sudan, although al Qaeda members also settled in other countries as well.  Complaint, ¶ 47.  Bin Laden was expelled from Sudan in 1996. Complaint, ¶ 83.

**(i). Alleged Account at FIBS**

The complaint further asserts that FIBS is a subsidiary of the Islamic Investment Company of the Gulf (Bahrain) EC and Dar al Maal al Islami ("DMI"), Complaint, ¶ 65. It also alleges that a

---

[2] Also, the complaint refers to authoritative government and private reports regarding September 11; actions taken by the U.S. Departments of State, Justice, and Treasury against the real terrorists and their related organizations; and proclamations by the President identifying terrorist targets.  None of these official reports, actions, or proclamations implicates FIBS in any way.

member of the Saudi Royal family was the CEO of FIBS. Complaint, ¶ 51.  The complaint does not

deny that FIBS is an actual, properly licensed, and legitimate banking institution in Sudan.

Plaintiffs claim that, in a federal trial in New York, a witness testified that al Qaeda held an

account at FIBS at some time. Complaint, ¶ 66. The witness stated, in response to a question, that

"we got account in [FIBS]." *Id.*  However, the complaint tells us nothing of importance about this

alleged "account." We are not told who established the account or in what name the account was

held.  The complaint does not identify how much was in the account, where the funds came from,

what the funds were used for, or for how long the account was in existence. Indeed, the complaint

omits any facts linking the account to any terrorist activities against the United States or to any other

activity. Rather, the complaint's theory is that a bank may be held liable for having an account held

by someone who is part of a group that commits an unlawful act years later.

Moreover, the complaint fails to state specific facts showing that: (1) FIBS was aware of al

Qaeda's aims to engage in terrorism in the United States; (2) FIBS supported these objectives by

knowingly and intentionally taking funds from al Qaeda; (3) the funds held by FIBS were used for

terrorist related purposes against the United States rather than for building roads, farms, and

factories; (4) the funds were at the bank during the time the September 11 attacks were considered,

planned, or carried out; or  (5) there is any proximate causal link between having funds in a

Sudanese bank in the 1990's and carrying out terrorist attacks in the United States in 2001.

**(ii). Al Shamal Bank**

Plaintiffs also seek to hold FIBS liable for being a shareholder in other banking

institutions. According to the complaint, while in Sudan, bin Laden purportedly used a Sudanese

bank, identified in the complaint as Al Shamal Islamic Bank.  Complaint, ¶ 50.  Al Qaeda also

had accounts there.  Complaint, ¶¶ 63-64.  The complaint further claims that in 1984 (years before

al Qaeda was formed or bin Laden moved to Sudan), FIBS had become a shareholder in Al Shamal Bank.  Complaint, ¶¶ 53-54.[3]  However, the complaint does not provide facts showing that FIBS ever participated in or controlled alleged actions of  Al Shamal Bank, involving terrorists or otherwise.  There are no specific allegations that the bank had any knowledge of, directed, or in any manner participated in any of Al Shamal's banking activities. Instead, the complaint merely alleges that FIBS was a shareholder in a bank that bin Laden or al Qaeda used to hold funds.  Complaint, ¶¶ 51, 53.

**(iii). Tadamon Islamic Bank**

The complaint next alleges that FIBS was a shareholder in another Sudanese bank, Tadamon Islamic Bank.  Complaint, ¶ 69.  Apparently, unknown to FIBS, bin Laden, or an associate, had an account at Tadamon Islamic Bank at some undetermined time.  Complaint, ¶ 70.  Tadamon Islamic Bank was also a major shareholder in Al Shamal Bank.  Complaint, ¶ 71.  Once more, the complaint does not supply facts establishing that FIBS knew, participated in, or promoted any of the purported terrorist activities of Tadamon Islamic Bank.  There are no claims that FIBS was ever aware that bin Laden or an al Qaeda operative had used Tadamon Islamic Bank for illicit purposes.  Further, there is not a single, well-pled fact linking the bank to Tadamon Islamic Bank's alleged al Qaeda depositors.  Finally, the complaint does not place a specific time when al Qaeda used Tadamon Islamic Bank, nor does the complaint suggest any proximate link between being a shareholder in Tadamon Islamic Bank and the events of September 11.

In sum, the complaint's theory against FIBS is that at some point during the 1990's, al Qaeda, or its supporters, had depository accounts in FIBS, or in banks in which FIBS was a shareholder.  This theory that liability and jurisdiction may be based on such facts was soundly

---

[3] The complaint suggests that FIBS was a shareholder and board member of Al Shamal Bank in the 1980's but never states that these positions continued into the time period when al Qaeda planned and executed the September 11 attacks.  Complaint, ¶ 65.

rejected by this Court in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).

## B. The True Facts

The 9/11 Report is the most authoritative analysis of the September 11 tragedy.[4]  With all due respect to counsel, no group of plaintiffs' lawyers could have possibly interviewed more witnesses, examined more documents, or had more access to confidential and classified information than the 9/11 commission.  *See*  9/11 Report, pps. xv-xviii.  The 9/11 Report makes it clear that any banking activity in Sudan in the 1990's cannot have had any connection with the attacks, because Osama bin Laden was driven from Sudan in 1996 and was not allowed to take any assets out of Sudan with him.

The 9/11 Report focuses on al Qaeda's activities in Sudan, and the significant events following its expulsion from Sudan in 1996. As the 9/11 Report makes clear, sometime in 1989, bin Laden moved his operations to Sudan, following his participation in the attempt to expel the Soviet Union from Afghanistan.  *See* 9/11 Report, pps. 56-57. At the time, Sudan was under the control of an extremist political regime.  *Id.*   When al Qaeda operated in Sudan, bin Laden had demanded the removal of United States troops from Islamic countries. However, there is no credible evidence that during this time, al Qaeda was plotting or executing any attacks upon the United States itself.  *Id.* at 59-61.

In May 1996, following a change in Sudan's political structure and international pressure, bin Laden and al Qaeda were expelled from the country.  *See* 9/11 Report, pps. 62-63. The

---

[4] FIBS respectfully requests that this Court take judicial notice of the 9/11 Report, and consider its conclusions in deciding whether to grant this motion.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (court may rely on matters in public record in deciding motion to dismiss); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (in deciding motion to dismiss court may consider matters of which judicial notice may be taken). At a minimum, FIBS respectfully requests that the Court consider the 9/11 Report when deciding whether personal jurisdiction is proper over it. *Id.*

commission found that bin Laden left Sudan in a "significantly weakened" position and was forced to seek a safe haven with the Taliban in Afghanistan.  *Id.* at 63.  Bin Laden and al Qaeda never returned to Sudan.

The 9/11 Report also makes clear, what is never mentioned in the complaint:

> The Sudanese government had canceled the registration of the main business enterprises he [bin Laden] had set up there and then put some of them up for public sale.  **According to a senior al Qaeda detainee, the government of Sudan seized everything bin Laden had possessed there.**

*Id.* at 65 (emphasis added).

Thus, bin Laden left Sudan in 1996 without any possible means to launch terrorist attacks against the United States.  *See* 9/11/ Report, pps. 62-67, 170 ("Nor were bin Laden's assets in Sudan a source of money for al Qaeda . . . he left Sudan with practically nothing."). In fact, it was not until two years later, in 1998, following financial support from sources outside of Sudan, that al Qaeda advocated terrorist attacks against the United States.[5] *Id.*  at 66-67.

Most important, the 9/11 Report concludes that the plan to launch terrorist attacks at the United States using commercial airlines was not adopted by al Qaeda and bin Laden until late 1998 or 1999, years after he and his associates left Sudan.  *See* 9/11 Report, pps. 154-56. The plan evolved following bin Laden's issuance of a "fatwa" in February 1998, calling for the murder of Americans anywhere, including in the United States.  *Id.* at 47.   The commission found that the September 11 attack plan was developed by numerous participants from several different countries. None of the participants were Sudanese individuals or business entities.   *Id.* at 154-69. Furthermore, the commission sought to trace the money trail for the funding of the September 11

---

[5] Under the Federal International Emergency Economic Powers Act, the U.S. Department of Treasury may seize and freeze funds belonging to terrorist organizations such as al Qaeda.  *See* 9/11 Report, pps. 185-86. The complaint does not allege, nor could it, that any FIBS funds had been seized or frozen or that the bank has been designated as a terrorist sponsored organization.

attacks. Id. at 169-73.  No roads led to Sudan or FIBS.  Thus, there is not a single shred of evidence that the bank had anything to do with September 11.  *Id.* at 169 ("bin Laden did not fund al Qaeda . . . with a network of businesses in Sudan").[6]

## IV. ARGUMENT

The complaint should be dismissed against FIBS because: (1) the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure; (2) this Court lacks personal jurisdiction over FIBS pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) the complaint fails to state a proper claim against the bank pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. The Complaint Does Not Comply with Rule 8

There is no clear case law on the pleading requirements when alleging that a person or entity is a terrorist or terrorist sponsor.[7] FIBS requests that the Court consider Rule 8, which mandates a "short and plain" statement entitling the pleader to relief, and imposes requirements with respect to this action.  A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 825, *quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); s*ee also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Alleging that a legitimate bank participated in barbaric terrorist acts should require something more than bare bones pleading.

Here the complaint falls woefully short of Rule 8 and should be dismissed.  The "Federal Rules do not permit conclusory statements to substitute for minimally sufficient factual allegations." *In Re: Nasdaq Market-Makes Antitrust Litigation,* 894 F. Supp. 703, 709 (S.D.N.Y.

---

[6] The complaint does not dispute that al Qaeda left Sudan in 1996, and that the decision to attack the United States occurred years later, while al Qaeda was in Afghanistan.  Complaint, ¶ 83.  Indeed, the complaint's description of the planning, funding, and execution of the September 11 attacks makes no mention of FIBS. Complaint, ¶¶ 171-88.

[7] Interestingly, claiming that a defendant is involved in a financial fraud implicates Rule 9(b), and triggers heightened pleading requirements.  There is apparently no similar rule for calling someone a terrorist.

1995), *citing Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir. 1983). Similarly, this Court has held that Rule 8 does not permit undefined charges and frivolous claims to clutter the Federal courts.  *See Ruffolo v. Oppenheimer & Company, Inc.,* 1991 WL 17857, at *2-3 (S.D.N.Y. Feb. 5, 1991).

Thus, the complaint should be dismissed because it serves up only bald, meritless allegations and conclusions, without any factual support for them.

**B. There is No Personal Jurisdiction Over FIBS in This Court**

The complaint fails to allege any facts that support the establishment of jurisdiction under the New York long-arm statute or federal law. Furthermore, plaintiffs' conclusory statements about FIBS are not sufficient to meet due process. In a word, plaintiffs have failed to make the prima facie showing of minimum contacts and reasonableness required to properly invoke jurisdiction over FIBS.

### (i). General Allegations of Personal Jurisdiction and Conspiracy are Insufficient Under New York or Federal Law

Plaintiffs bear the burden of establishing personal jurisdiction over the defendant under either the New York long-arm statute or federal law.[8]  *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 804. A complaint must plead facts establishing, *prima facie*, personal jurisdiction over a defendant. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999).  General allegations are not sufficient to avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), and a court will not accept conclusory assertions or draw "argumentative

---

[8] To the extent that plaintiffs seek jurisdiction under the Anti-Terrorism Act ("ATA") or RICO, they have failed to state a claim. Furthermore, the assertion of jurisdiction over FIBS under those statutes would violate due process.

inferences."[9] *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 804, *citing Mende v. Milestone Tech., Inc.,* 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1999).

Plaintiffs attempt to establish jurisdiction by bland assertions of conspiracy. Such averments, without supporting factual allegations, are not sufficient to establish personal jurisdiction. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805-06. ("Without supporting factual allegations…[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11 is insufficient to establish jurisdiction"); *see also Lehigh Valley Indus. Inc., v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975).

The conclusory allegations that FIBS was part of a conspiracy to commit the September 11 plot are not sufficient to establish jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 801; *see also Robinson v. Government of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001). Plaintiffs are instead required to make a "prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805, *citing Chrysler Capital Corp. v. Century Power Corp*. 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Perhaps recognizing the impossibility of establishing personal jurisdiction over FIBS, the complaint merely mouths the words that would subject the bank to this Court's jurisdiction. The

---

[9] Plaintiffs make no claim of general jurisdiction over FIBS. This Court has held that "general jurisdiction is based on the defendant's general business contacts with the forum; because the defendant's contacts are not related to the suit, a considerably higher level of contacts is required." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811, *citing Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996). Plaintiffs have not alleged that FIBS had offices, contracts, deposits, or check clearing activities in the state of New York or anywhere else in the United States.

complaint also attempts to bootstrap jurisdiction over FIBS by pointing to the acts of the terrorists involved in the September 11 attacks. Neither approach will be enough to satisfy due process requirements.

Although the complaint makes general allegations that FIBS participated in a conspiracy, the pleading is devoid of any facts showing that the bank purposefully and knowingly involved itself in terrorist activities aimed at the United States, or that the bank was a member of a conspiracy to effectuate the September 11 attacks and that a co-conspirator committed acts in furtherance of the September 11 attacks. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972) (personal jurisdiction should be applied with caution with respect to international disputes, and foreign defendants must have engaged in acts intended to have a direct effect upon the forum).

Thus the alleged conspiratorial acts of the terrorists of September 11 can hardly form the basis of personal jurisdiction over the bank. *See Lehigh Valley*, 527 F.2d at 93. In this Circuit, to properly plead personal jurisdiction in a conspiracy case, the complaint must articulate facts that the defendant acted "for the benefit, with the knowledge and consent of, and under some control by [the co-conspirator]." *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981). This Court has held that personal jurisdiction cannot be based on New York or federal law, where "the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 806, *citing Daventree* Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) (claims dismissed against Swiss banking defendants due to lack of personal jurisdiction over the defendants). Furthermore, where there are

no specific allegations of consent to unlawful activities, there is no basis for personal jurisdiction. *Id.*

Finally, there are absolutely no facts suggesting a "communality" of purpose and action among the bank and the terrorists. The complaint does not plead facts showing that FIBS was aware of the terrorists' intent to attack the United States; that activities of the terrorists somehow benefited FIBS; that FIBS intended that actions taken by the terrorists would have some impact in the United States; that FIBS exercised some degree of control over the terrorists; and that FIBS provided substantial assistance to the terrorists in carrying out the September 11 attacks.

### (ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process

Moreover, the exercise of personal jurisdiction over a defendant must comply with due process under the United States Constitution. Specifically, two factors must be considered: (1) whether there have been "minimum contacts" with the forum and (2) whether the exercise of personal jurisdiction is reasonable. *See Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945).

Notions of fair play and substantial justice should be considered when determining if the defendant has had "minimum contacts" with the forum. A court may not assert jurisdiction over parties that have not "purposefully directed" actions towards the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985); *see also Burnett v. Al Baraka Investment and Development Corp., et al.,* 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003) (dismissing defendants in this case whose actions described in the complaint were not "expressly 'aimed' or 'purposefully directed' " at the United States). Furthermore, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, *quoting Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1985); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

Far from alleging "minimum" contacts between FIBS and the United States, the complaint simply omits to plead any contacts between the bank and the forum. The bank has not had contacts with New York or anywhere else in the United States necessary to subject it to personal jurisdiction. The bank is neither incorporated in the United States, nor does it have any offices here. It has never been licensed in the United States nor has it held United States depository funds. FIBS has not done, and does not do, any business in the United States. Moreover, the bank has never taken any steps to purposely establish any connection with this country.

As this Court recognized, "there [is] no support 'for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.' " *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832, *quoting Burnett v. Al Baraka Inc. and Development.,* 274 F. Supp. 2d 86, 109 (D.D.C. 2003) *("Burnett I")* (granting Saudi America Bank's motion to dismiss, where it was not adequately alleged that the bank did anything to directly support al Qaeda). Moreover, merely being a shareholder in an entity that engages in unlawful acts cannot create the basis for jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832.

Due process also requires that the exercise of personal jurisdiction over a defendant be reasonable. When determining reasonableness, it is necessary to balance public policy considerations. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811. For instance, " 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Id.*, *quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 115 (1987). Furthermore, a defendant in a

12

foreign legal system faces unique burdens that carry "significant weight in assessing the reasonableness of stretching the long arm statute of personal jurisdiction over national borders." *Id.*

Thus, a "court may exercise personal jurisdiction over a defendant consistent with due process only when a defendant is a primary participant in intentional wrongdoing." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 809, *quoting In re Magnetic Audiotape Antitrust Litigation* 334 F.3d 204, 208 (2d Cir. 2003). To ensure due process, "[p]laintiffs must make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiff's injuries." *Id.*

Plaintiffs here have made no such showing. Therefore, the complaint should be dismissed for lack of personal jurisdiction over FIBS.[10]

## C. The Complaint Fails To State A Claim Against FIBS

The complaint attempts to seek relief upon various federal claims, including the Torture Victims Protection Act, the Anti-Terrorism Act, as well as several common law counts including murder, wrongful death, and survival.  Of the eight counts, not one properly states a claim for relief.[11]

The complaint should be dismissed against FIBS pursuant to Rule 12(b)(6) on two grounds: (1) plaintiffs have not alleged any conduct by the bank that would subject the bank to the liability set forth in the complaint and (2) plaintiffs did not properly establish  that actions by the bank proximately caused the injuries, which resulted from the September 11 attacks.

---

[10]  There is also no basis for engaging in jurisdictional discovery with respect to FIBS. This Court has held that "Courts are not obligated to subject a foreign defendant to discovery…where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 812, *citing Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d at 765.
[11]  Count Six does not name FIBS, and therefore, there will be no response to it.

As this Court has held in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 833, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)," *quoting DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996). The Court is required, at this stage, to accept the complaint's factual assertions as true. However, the pleading must articulate facts that set forth the elements of liability, and that give rise to a "judicially recognizable right of action."  *See York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002); s*ee also In re: Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) and *Sonds v. St. Barnabas Hosp. Corp. Health Svcs.,* 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001).

In this case, the complaint contains only generalized and conclusory assertions of liability, which reveal no connection between FIBS and the terrorist activities directed against the United States. The touchstone to any liability here is proximate cause – to show in the complaint that the bank's acts caused plaintiffs' injuries and that it was reasonably foreseeable that such injuries would flow from those acts.  *See Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *see also In re: American Express Co. v. S'holder Litig.,* 39 F.3d 395, 401-02 (2d Cir. 1994).

Each of plaintiffs' claims requires a showing of cause-in-fact, as opposed to "but-for" causation, or other less stringent theories of causation. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 797 n. 26 (rejecting plaintiff's request for less stringent causation standard and holding that "the proper inquiry at this stage of the litigation is the presence of proximate causation").

The complaint here fails to allege that conduct by FIBS in any way caused the September 11 terrorist attacks.  There is no specific allegation that the bank knowingly gave funds, assistance, or material support to the terrorists. No allegation suggests that the attacks of

September 11 were the direct or foreseeable result of any action by FIBS. Thus, nothing in the complaint supports a proximate cause finding as to the bank, and the complaint provides no proximate cause between actions by the bank and the injuries sustained by plaintiffs. *See Holmes*, 503 U.S. at 268-69. In a word, there is simply no allegation that relates FIBS to the September 11 attacks or the resulting injuries.[12]

**(i). State Law Torts**

Counts One – Three allege various state tort claims, including one for intentional murder and assault and battery. As discussed above, the complaint fails to plead any facts whatsoever suggesting that FIBS participated intentionally in any such unlawful acts.

Also, plaintiffs could not assert any such liability based on some sort of conspiracy theory. Under New York, Pennsylvania, and Virginia law, in order to pursue a conspiracy claim, a plaintiff must allege: (i) the existence of an underlying, independent tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting injury. *See* 8 N.Y. Jur, Conspiracy, §§ 4, 19 (1982); *Suarez v. Underwood*, 103 Misc. 2d 445, 426 N.Y.S. 2d 208 (N.Y.Sup. Mar. 11, 1980); *see also Skipworth by Williams v. Lead Industries, Ass'n, Inc.,* 690 A.2d 169, 236 (Penn. 1997); *Hechler Chevrolet, Inc. v. Gen. Motors Corp.,* 337 S.E.2d 744, 748 (Va. 1985).

As discussed above, the complaint does not identify any tort committed by FIBS, much less its participation in a conspirational agreement or knowledge of the wrongful nature of the

---

[12] The complaint merely alleges that, at some period of time, al Qaeda operatives may have had funds on deposit in Sudan at FIBS and other Sudanese banks in which FIBS supposedly was a shareholder. However, this Court rejected liability based upon such alleged facts. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 836. The complaint identifies several U.S. banks that were actually used by the real terrorists in connection with September 11. Complaint, ¶¶ 174, 180. None of these banks share FIBS Islamic heritage, and they have not been named as defendants herein. Of course, if courts were to hold banks liable for the wrongful acts of their depositors, then the national and international banking system as we know it would cease to exist. *Id.*

conduct.  Indeed, the complaint references not a single act that would lead to the conclusion that the bank joined a conspiracy with the September 11 attackers.  There is not one fact contained in the complaint that substantiates an intent by FIBS to join an effort to attack the United States or any American.  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805.

Furthermore, the New York survival statute, which is substantially similar to those in Virginia and Pennsylvania, requires that a properly appointed personal representative identify a tort that proximately caused injury to a decedent before his or her death.  *See* E.P.T.L. § 11-3.2(b) (McKinney 2001).

Here, the complaint identifies no such tort, nor does it explain how FIBS actions proximately caused any injuries in the September 11 attacks.  *See Meroni v. Holy Spirit Ass'n for the Unification of World Christianity*, 506 N.Y.S. 2d 174, 179 (2d Dep't 1986).  Further, the complaint does not identify all of the "personal representatives" who have purportedly been appointed by a court.  *See Lichtenstein v. State*, 712 N.E. 2d 1218 (N.Y. Ct. App. 1999).

Therefore, all of the state based tort claims should be dismissed.

### (ii). Anti-Terrorism Act

In Count Four of  the complaint, plaintiffs attempt  to assert a claim under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), which provides a private cause of action for a plaintiff (1) who is a United States national,[13] and (2) who is injured in his person, property, or business, (3) due to international terrorism.  18 U.S.C. §§ 2331-2333 (2000). This Court, in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828, held that in order to adequately plead a claim under ATA, "a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant

---

[13]Foreign nationals have no standing under ATA, and therefore, these plaintiffs should be dismissed from this count.  *See, Burnett I*, 274 F. Supp. 2d at 105.

16

engaged in some act of helping those activities." *See also Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1023 (7th Cir. 2002) ("*Boim II*").

This Court has also held that with regard to an ATA claim, "[u]nder a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act and that the attacks of September 11 were a reasonably foreseeable consequence of that conspiracy." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 829, *citing Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 895 (N.D. Ill. 2004) ("*Boim III*").

As discussed at length above, the complaint does not assert any of these things: no knowledge of terrorist activities, no desire to help, no actual help, no agreement, and no consequential injury.   *See Smith ex rel. Smith v. Islamic Emirate of Afghanistan* 262 F. Supp. 2d 217, 227 n. 12 (S.D.N.Y. 2003) ("plaintiff must show knowledge of an intent to further the criminal acts and proximate cause"); *see also Boim II,* 291 F.3d at 1012 ("...funding, *simpliciter*, of a terrorist organization, is insufficient [to impose civil liability] because it sets too vague a standard, and because it does not require a showing of proximate cause").

### (iii). Torture Victims Protection Act

Count Five of the complaint alleges a claim under the Torture Victims Protection Act, 28 U.S.C. §1350, note §2(a) ("TVPA").  In order to state a cause of action under TVPA, the complaint must assert: (1) an individual, (2) acting under actual or apparent authority, or color of law, of any foreign nation, (3) subjected another individual to extra-judicial killing or torture.   *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828; *see also Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 152-53 (2d. Cir. 2003); *Kordic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995), *reh'g denied*, 74 F.3d 377 (2d Cir. 1996).   None of the elements of a TVPA action is properly pled against FIBS.

17

Only individuals may be sued pursuant to the TVPA. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828 (TVPA claims dismissed against defendant banks). FIBS, a bank, is not "an individual" under the act. *See Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 381-82 (E.D.LA. 1997), *aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999); *Friedman v. Bayer Corp.,* 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999). Further, FIBS never took any pertinent action under color of foreign law, nor did it do anything to subject "another individual" to an extra-judicial killing or torture. *See Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 23 (D.D.C. 2000), *aff'd*, 2002 WL 1052012 (D.C. Cir. 2002). [14]

### (iv). Punitive Damages

Plaintiffs also have failed to state a claim for punitive damages (Count Seven). Punitive damages are a form of relief and not an independent cause of action. *See Cooper Indus. Inc. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001); *Smith v. County of Erie*, 743 N.Y.S.2d 649, 651 (N.Y.Ct. App. 2002).

### (v). Property Damage

Count Eight of the complaint alleges a claim for "property damage," presumably under a common law trespass theory. "Trespass is the interference with a person's right to the possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner. The act must be intentional and the damages a direct consequence of the defendant's act." *Tomheim v. Federal Home Loan Mortg. Corp.*, 988 F. Supp. 279, 281 (S.D.N.Y. 1997). Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's

---

[14] The courts have held that the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing." *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887, *3 (S.D.N.Y. February 28, 2002); *Benas v. Baca*, 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001); *aff'd*, 30 Fed. Appx. 753 (9th Cir. Feb. 15, 2002). That element is also absent here, since all of the alleged victims were in the United States at the time of the September 11 attacks. The TVPA also requires that a U.S. claimant exhaust all remedies in a foreign forum before initiating a claim in this country. *See Flores*, 343 F.3d at 153 n.21. No such effort to exhaust these remedies had been pled in the complaint.

misconduct or, at a minimum, proximately caused by the defendant. *See In re Air Crash Disaster at Cove Neck, Long Island, New York on January 25, 1990*, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[15]

Plaintiffs make a generalized allegation that FIBS assisted al Qaeda in the commission of an intentional and unlawful trespass. Here again, plaintiffs have tendered no facts that would show FIBS itself intended any trespass. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 835 ([p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability."). Plaintiffs have also failed to allege that FIBS committed any wrongful act that resulted in any trespass; nowhere in the complaint do they identify what "material support" FIBS provided to al Qaeda or to anyone associated with the attacks of September 11. Furthermore, plaintiffs have once again failed to plead proximate causation as to FIBS. Accordingly, plaintiffs claim for trespass against FIBS should be dismissed.

---

[15] The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. *See Cooper v. Horn*, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant." *A.J. Cunningham Packing Corp., v. Congress Fin. Corp*., 792 F.2d 330, 334 & n. 4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

## V. CONCLUSION

For the above reasons, FIBS respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper. [16]

Dated: New York, New York
      April 27, 2005

Respectfully Submitted,

**JOHN F. LAURO, P.A.**

By: _____/s/_____
    John F. Lauro, Esq. (JFL-2635)
    Karena L. Nashbar, Esq. (Fla.Bar 697982)
    (not admitted in New York)

    101 E. Kennedy Blvd., Suite 2180
    Tampa, Florida 33602
    Phone: (813) 222-8990
    Fax: (813) 222-8991
    *In New York, Reply To:*
    300 Park Avenue, Suite 1700
    New York, NY 10022
    E-mail: jlauro@laurolawfirm.com

    *Attorneys for Defendant*
    *Faisal Islamic Bank-Sudan*

---

[16] FIBS requests that this action be dismissed with prejudice and without leave to replead.  Plaintiffs have now filed successive complaints in this action, and there is no reasonable prospect that plaintiffs will ever be able to remedy their failure to effectively plead any of their claims against FIBS.  *See e.g. Electronics Communications Corp. v. Toshiba America Consumer*, 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile).  As demonstrated above, the 9/11 Report necessarily absolves the bank in any complicity in the September 11 attacks.  The complaint has not furnished any well-pled facts contradicting the conclusions of the 9/11 Report.  Plaintiffs have no good faith basis to assert any claim against FIBS - for one very important reason – the bank had no role in the tragic events of September 11, 2001.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 27th day of April, 2005, the forgoing Memorandum of Law in Support of Motion to Dismiss of Defendant Faisal Islamic Bank-Sudan was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.

_____/s/_____
John F. Lauro, Esquire