UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001     03 MDL 1570 (RCC)
     ECF Case

-------------------------------------------------------------------------x

THOMAS E. BURNETT, SR. *et al.,*     03 CV 9849 (RCC)
     ECF Case

     Plaintiffs,

v.

AL BARAKA INVESTMENT & DEVELOPMENT
CORP., *et al.,*

     Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT FAISAL ISLAMIC BANK-SUDAN

**JOHN F. LAURO, P.A**.

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant*
*Faisal Islamic Bank –Sudan*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................... i

I. INTRODUCTION ................................................................................. 1

II. PRELIMINARY STATEMENT ............................................................ 1

III. SUMMARY OF ALLEGATIONS ........................................................ 2

    A.  Facts Alleged in the Complaint ...................................................... 2

       (i)   Alleged Account at FIBS ....................................................... 3

       (ii)  Al Shamal Bank ..................................................................... 4

       (iii) Tadamon Islamic Bank ........................................................ 4

    B.  The True Facts ................................................................................. 5

IV. ARGUMENT ..................................................................................... 7

    A.  The Complaint Does Not Comply with Rule ................................. 7

    B.  There is No Personal Jurisdiction Over FIBS in This Court ........... 8

      (i). General Allegations of Personal Jurisdiction and Conspiracy are
            Insufficient Under New York or Federal Law ........................... 9

      (ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process .......... 11

    C. The Complaint Fails To State A Claim Against FIBS ................................... 14

      (i). Torture Victims Protection Act ................................................... 16

      (ii). Anti-Terrorism Act .................................................................... 17

      (iii). Alien Tort Claims Act .............................................................. 18

      (iv). Wrongful Death ........................................................................ 18

      (v). Negligence ................................................................................. 19

(vi). Survival ........................................................................................ 19

(vii). Negligent and Intentional Infliction of Emotional Distress ................. 20

(viii). Conspiracy ................................................................................... 20

(ix). Aiding and Abetting ........................................................................ 21

(x). RICO .............................................................................................. 22

(xi). Punitive Damages ........................................................................... 23

V. CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.G. Van Metre Const, Inc. v. NVKettler, L.P.*,
1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992).......................................................21

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,
 480 U.S. 102 (1987) .............................................................................................. 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)..................................................................................... 9

*Bao Ge v. Li Peng*,
201 F. Supp. 2d 14 (D.D.C. 2000),
*aff'd*, 2002 WL 1052012 (D.C. Cir. 2002).......................................................... 16, 18

*Beanal v. Freeport-McMoRan, Inc.*,
969 F. Supp. 362 (E.D.LA. 1997),
*aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999) ................................................ 16

*Becker v. Schwartz*,
46 N.Y.2d 401, 386 N.E.2d 807 (1978) ................................................................... 19

*Benas v. Baca*,
2001 WL 485168 (C.D. Cal. Apr. 23, 2001)
*aff'd*, 30 Fed.Appx. 753 (9th Cir. Feb. 15, 2002) ...................................................... 16

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ................................................................................ 17

*Boim v. Quranic Literacy Inst.*,
340 F. Supp. 2d 885 (N.D. Ill. 2004)....................................................................... 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................................... 12

*Burnett v. Al Baraka Investment and Development Corp., et al.*,
292 F. Supp. 2d 9 (D.D.C. 2003)........................................................................ 12, 22

*Burnett v. Al Baraka Inv. and Development Corp.*,
274 F. Supp. 2d 86 (D.D.C.2003) ..................................................................*passim*

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991) .......................................................................... 10

*Cooper Indus., Inc. v. Leatherman Tool Group,*
532 U.S. 424 (2001)............................................................................................23

*Conley v. Gibson,*
355 U.S. 41 (1957).............................................................................................8

*Daventree Ltd. v. Republic of Azerbaijan,*
349 F. Supp. 2d 736 (S.D.N.Y. 2004).............................................................11, 14

*DeJesus v. Sears, Roebuck & Co.,*
87 F.3d 65 (2d Cir. 1996).................................................................................. 14

*Delk v. Columbia/HCA Healthcare Care Corp.,*
259 Va. 125, 523 S.E. 2d 826 (2000) ............................................................ 19, 20

*Doe v. Islamic Salvation Front,*
257 F. Supp. 2d 115 (D.D.C. 2003)......................................................................18

*Dubai Islamic Bank v. Citibank, N.A.,*
256 F. Supp. 2d 158 (S.D.N.Y. 2003)...................................................................22

*Electronics Communications Corp. v. Toshiba America Consumer,*
129 F.3d 240 (2d Cir. 1997)...............................................................................24

*Flores v. Southern Peru Copper Corp.,*
343 F.3d 140 (2d. Cir. 2003)......................................................................... 16, 18

*Friedman v. Bayer Corp.,*
1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ....................................................... 16

*Furlong v. Long Island College Hosp.,*
710 F.2d 922 (2d Cir. 1983)................................................................................8

*Grove Press, Inc. v. Angleton,*
649 F.2d 121 (2d Cir. 1981)............................................................................... 11

*Guadagnoli v. Seaview Radiology, P.C.,*
184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ............................................ 19

*Hanson v. Denckla,*
357 U.S. 235 (1985) ......................................................................................... 12

*Hechler Chevrolet, Inc. v. Gen. Motors Corp.,*
337 S.E.2d 744 (Va. 1985)..................................................................................21

*Holmes v. Sec. Investor Protection Corp.*,
503 U.S. 258 (1992) ................................................................................ 15

*Howell v. New York Post Co.*,
81 N.Y. 2d 115, 612 N.E. 2d 699 (1993) ................................................ 20

*In re: American Express Co. v. S'holder Litig.*,
39 F.3d 395 (2d Cir. 1994) ...................................................................... 15

*In re: Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................... 14

*In re Magnetic Audiotape Antitrust Litigation*,
334 F.3d 204 (2d Cir. 2003) .................................................................... 13

*In Re: Nasdaq Market-Makes Antitrust Litigation*,
894 F. Supp. 703 (S.D.N.Y. 1995) ............................................................ 8

*In re: Terrorist Attacks on September 11, 2001*,
349 F. Supp. 2d 825 (S.D.N.Y. 2005) ............................................ *passim*

*International Shoe Company v. Washington*,
326 U.S. 310 (1945) ................................................................................ 12

*King v. Crossland Savings Bank*,
111 F.3d 251 (2d Cir. 1997) .................................................................... 19

*Koken v. Steinberg*,
825 A.2d 723 (Pa. Comm. Ct. 2003) ....................................................... 21

*Kordic v. Karadzic*,
70 F.3d 232 (2d Cir. 1995), *reh'g denied*, 74 F.3d 377 (2d Cir. 1996) .................... 16

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ...................................................................... 5

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ..................................................................... 22

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972) .................................................................. 10

*Lehigh Valley Indus. Inc., v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ................................................................ 10, 11

*Liberman v. Worden*,
701 N.Y.S.2d 419 (N.Y. App. Div. 2000) .............................................................21

*Lichtenstein v. State*,
712 N.E. 2d 1218 (N.Y. Ct. App. 1999) ................................................... 20

*Martin v. Evans*,
551 Pa. 496, 711 A.2d 458 (1998).......................................................... 19

*Mende v. Milestone Tech., Inc.*,
269 F. Supp. 2d 246 (S.D.N.Y. 2003) ...................................................... 9

*Meroni v. Holy Spirit Ass'n for the Unification of World Christianity*,
506 N.Y.S.2d 174 (N.Y. App. Div. 1986) ................................................ 19

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)................................................................... 9, 12

*Moss v. Morgan Stanley, Inc.*,
719 F.2d 5 (2d. Cir. 1983) .......................................................................22

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1999) ................................................................. 9

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998)........................................................................5

*Papieves v. Lawrence*,
437 Pa. 373, 263 A. 2d 118 (1970)........................................................ 20

*Pittman by Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998)....................................................................21

*Renner v. Chase Manhattan Bank*,
1999 WL 47239 (S.D.N.Y. Feb. 3, 1999) ............................................... 19

*Robinson v. Government of Malaysia*,
269 F.3d 133 (2d Cir. 2001)................................................................... 10

*Ruffolo v. Oppenheimer & Company, Inc.*,
1991 WL 17857 (S.D.N.Y. Feb. 5, 1991)...............................................8

*Sherry Wilson & Co., Inc. v. Generals Court, L.C.*,
2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002)................................21

*Skipworth by Williams v. Lead Industries, Ass'n, Inc.*,
690 A.2d 169 (Penn. 1997) ...............................................................21

*Smith v. County of Erie*,
743 N.Y.S.2d 649 (N.Y. App. 2002) ..................................................23

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan*,
262 F.Supp. 2d 217 (S.D.N.Y. 2003) .................................................17

*Sonds v. St. Barnabas Hosp. Corp. Health Svcs.*,
151 F. Supp. 2d 303 (S.D.N.Y. 2001) ............................................... 14

*Suarez v. Underwood*,
103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y.Sup. 1980).........................20

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)...........................................................................8

*United States v. Uccio*,
940 F.2d 753 (2d Cir. 1991)...............................................................22

*Whitaker v. American Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001).............................................................. 9

*Wiwa v. Royal Dutch Petroleum Co.*,
2002 WL 319887 (S.D.N.Y. February 28, 2002) ................................. 16

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ........................................................................ 12

*York v. Association of the Bar of the City of New York*,
286 F.3d 122 (2d Cir. 2002) ............................................................ 14

**STATUTES AND LEGISLATIVE MATERIALS:**

18 U.S.C. §§ 2331-2333 (2001)............................................................17
18 U.S.C. §1962 (1988) .......................................................................22
28 U.S.C. §1605 (2002)....................................................................... 14
28 U.S.C. §1350 (1992) ................................................................. 16, 18
N.Y. E.P.T.L. §5-4.1(1) (McKinney 2001) ............................................18
N.Y. E.P.T.L. §11-3.2(b) (McKinney 2001).............................................19
Va. Code Ann. §§ 8.01-50 (Michie 2000) ............................................ 18
42 Pa. Cons. Stat. § 8301 (1999) ....................................................... 18

**RULES:**

Rule 8, Federal Rules of Civil Procedure.................................................................. 7, 8
Rule 9(b), Federal Rules of Civil Procedure..........................................................8
Rules 12(b)(2), Federal Rules of Civil Procedure ........................................ 9
Rules 12(b)(6), Federal Rules of Civil Procedure ..................................... 14

**TREATISES:**

8 N.Y. Jur., Conspiracy, §§ 4, 19 (1982)...............................................................20
Restatement (Second) of Torts § 281 (1965)........................................................19

**MISCELLANEOUS:**

National Commission on Terrorist Attacks Upon the United States
("9/11 Report") ............................................................................................. 1, 5,6-7

# I. INTRODUCTION

Defendant Faisal Islamic Bank-Sudan ("FIBS" or "the bank") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' fifth amended complaint ("the complaint" or "Complaint, ¶ __" or "Complaint, p.__") under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth below, the complaint does not allege that FIBS took any action that had any connection whatsoever with plaintiffs' injuries, and the 9/11 Report [1] makes clear that there could not have been any such connection. The complaint fails to provide a "short and plain" statement of facts entitling plaintiffs to relief.  Further, this Court lacks personal jurisdiction over FIBS, which has no contacts, "minimal" or otherwise, with the United States.  Finally, the complaint fails to state a claim against FIBS.

Therefore, the complaint against the bank should be dismissed in its entirety.[2]

# II. PRELIMINARY STATEMENT

Before considering the substance of the assertions here, certain important observations should be made. Plaintiffs are victims or representatives of victims killed or injured in the terrorist attacks of September 11, 2001. Complaint, ¶ 4.  No one could dispute the horror of those events, or the pain endured by victims and family members.  The terrorist attacks represent a tragedy of unprecedented magnitude.  In this case, plaintiffs are seeking to hold responsible those who caused these terrible acts.

---

[1] In the summer of 2004, the National Commission on Terrorist Attacks Upon The United States issued a report ("9/11 Report") pursuant to Public Law 107-306, November 27, 2002. This memorandum of law references the authorized edition of the report published by W.W. Norton & Company, Inc., and will be cited here as "9/11 Report, p.___."

[2] The Burnett plaintiffs have filed two actions, one in federal court in the District of Columbia (03 CV 09849), and one in this Court (03 CV 5738). The arguments made here are equally applicable to both cases.

1

However, as the complaint makes clear, FIBS (a banking institution in Sudan) had absolutely no role in the September 11 terrorist attacks.  The calamity of the terrorist attacks should not lead to the discarding of fundamental principles of civil jurisprudence.  Here, there is no rational legal theory of jurisdiction over FIBS or of proximate causation linking the bank to terrorist activities directed against the United States.   Before imposing liability, our legal system requires a connection between a defendant's actions and the harm suffered by an injured party.  Even though all must sympathize with their plight, plaintiffs cannot demonstrate any jurisdiction over FIBS or any connection between the bank and the events of September 11.

### III. SUMMARY OF ALLEGATIONS

**A. Facts Alleged in the Complaint**

The complaint contains long-winded and rambling attacks against various individuals and private and governmental entities.  It takes aim at components of Islamic and Arabic culture, including, banks, charities, prominent business people, and respected government officials.  In fact, the complaint attacks indiscriminately the Arab and Muslim world. The complaint asserts specific facts with regard to individuals who allegedly participated in the September 11 events, but none of these allegations involve FIBS.[3] Complaint, ¶¶ 6-17.

Plaintiffs state that in 1989, the al Qaeda organization was formed by Osama bin Laden. Complaint, p. 209.  In 1991, bin Laden moved his operations to the Republic of Sudan, although al Qaeda members also settled in other countries as well.  Complaint, p. 211.  The complaint states that while in Sudan, bin Laden and his supporters engaged in legitimate enterprises, including building roads, factories, farms, and other public works projects.  Complaint,  p. 211.

---

[3] Also, the complaint refers to authoritative government and private reports regarding September 11; actions taken by the U.S. Departments of State, Justice, and Treasury against the terrorists and their related organizations; and proclamations by the President identifying terrorist targets.  None of these official reports, actions, or proclamations implicates FIBS in any way.

**(i). Alleged Account at FIBS**

The complaint further asserts that FIBS is a subsidiary of the Islamic Investment Company of the Gulf (Bahrain) EC and Dar al Maal al Islami ("DMI"), which are entities involved in legitimate banking, investment, and insurance activities around the world. Complaint, ¶¶ 74, 97-100. It also alleges that a member of the Saudi Royal family was the CEO of DMI. *Id.* The complaint does not deny that FIBS is an actual, properly licensed, and legitimate banking institution in Sudan.

Plaintiffs claim that, in a federal trial in New York, a witness testified that al Qaeda held an account at FIBS at some time. The witness stated, in response to a question, that "We got account in [FIBS]." Complaint, ¶ 101. The complaint then groundlessly concludes that the bank was somehow "implicated" in al Qaeda's unlawful activities. *Id.* However, the complaint tells us nothing of importance about this alleged "account." We are not told who established the account or in what name the account was held. The complaint does not identify how much was in the account, where the funds came from, what the funds were used for, or for how long the account was in existence. Indeed, the complaint omits any facts linking the account to any terrorist activities against the United States or to any other activity. Rather, the complaint's theory is that a bank may be held liable for having an account held by someone who is part of a group that commits an unlawful act years later.

Moreover, the complaint fails to state specific facts showing that: (1) FIBS was aware of al Qaeda's aims to engage in terrorism in the United States; (2) FIBS supported these objectives by knowingly and intentionally taking funds from al Qaeda; (3) the funds held by FIBS were used for terrorist related purposes against the United States rather than for building roads, farms, and factories; (4) the funds were at the bank during the time the September 11 attacks were considered,

planned, or carried out; or   (5) there is any proximate causal link between having funds in a

Sudanese bank in the 1990's and carrying out terrorist attacks in the United States in 2001.

### (ii). Al Shamal Bank

Plaintiffs also seek to hold FIBS liable for being a shareholder in other banking

institutions. According to the complaint, while in Sudan, bin Laden purportedly used a Sudanese

bank, identified in the complaint as Al Shamal Islamic Bank.  Complaint, ¶ 70.  In the 1990's, al

Qaeda also had accounts there.  Complaint, ¶ 82.  The complaint further claims that in 1984 (years

before al Qaeda was formed or bin Laden moved to Sudan), FIBS had become a shareholder in Al

Shamal Bank.  Complaint, ¶¶ 73-74.[4] However, the complaint does not provide facts showing that

FIBS ever participated in or controlled alleged actions of  Al Shamal Bank, involving terrorists or

otherwise.  There are no specific allegations that the bank had any knowledge of, directed, or in any

manner participated in any of Al Shamal's banking activities. Instead, the complaint merely alleges

that FIBS was a shareholder in a bank that bin Laden or al Qaeda used to hold funds.  Complaint, ¶¶

67-83.

### (iii). Tadamon Islamic Bank

The complaint next alleges that FIBS was a shareholder in another Sudanese bank (Tadamon

Islamic Bank), starting in the early 1980's, and later became that bank's main shareholder.

Complaint, ¶ 108.  Apparently, unknown to FIBS, bin Laden, or an associate, had an account at

Tadamon Islamic Bank at some undetermined time.  Complaint, ¶ 109.  Tadamon Islamic Bank was

also a major shareholder in Al Shamal Bank.  Complaint, ¶ 110.  Once more, the complaint does not

supply facts establishing that FIBS knew, participated in, or promoted any of the purported terrorist

---

[4] The complaint suggests that FIBS was a shareholder and board member of Al Shamal Bank in the 1980's, but never states that these positions continued into the time period when al Qaeda planned and executed the September 11 attacks.  Complaint, ¶¶  73-74.

activities of Tadamon Islamic Bank. There are no claims that FIBS was ever aware that bin Laden or an al Qaeda operative had used Tadamon Islamic Bank for illicit purposes. Further, there is not a single, well-pled fact linking the bank to Tadamon Islamic Bank's alleged al Qaeda depositors. Finally, the complaint does not place a specific time when al Qaeda used Tadamon Islamic Bank, nor does the complaint suggest any proximate link between being a shareholder in Tadamon Islamic Bank and the events of September 11.

In sum, the complaint's theory against FIBS is that at some point during the 1990's, al Qaeda, or its supporters, had depository accounts in FIBS, or in banks in which FIBS was a shareholder. This theory that liability and jurisdiction may be based on such facts was soundly rejected by this Court in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).

**B. The True Facts**

The 9/11 Report is the most authoritative analysis of the September 11 tragedy.[5] With all due respect to counsel, no group of plaintiffs' lawyers could have possibly interviewed more witnesses, examined more documents, or had more access to confidential and classified information than the 9/11 commission. *See* 9/11 Report, pps. xv-xviii. The 9/11 Report makes it clear that any banking activity in Sudan in the 1990's cannot have had any connection with the attacks, because Osama bin Laden was driven from Sudan in 1996 and was not allowed to take any assets out of Sudan with him.

---

[5] FIBS respectfully requests that this Court take judicial notice of the 9/11 Report, and consider its conclusions in deciding whether to grant this motion. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (court may rely on matters in public record in deciding motion to dismiss); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (in deciding motion to dismiss court may consider matters of which judicial notice may be taken). At a minimum, FIBS respectfully requests that the Court consider the 9/11 Report when deciding whether personal jurisdiction is proper over it. *Id.*

The 9/11 Report focuses on al Qaeda's activities in Sudan, and the significant events following its expulsion from Sudan in 1996. As the 9/11 Report makes clear, sometime in 1989, bin Laden moved his operations to Sudan, following his participation in the attempt to expel the Soviet Union from Afghanistan. *See* 9/11 Report, pps. 56-57. At the time, Sudan was under the control of an extremist political regime. *Id.* When al Qaeda operated in Sudan, bin Laden had demanded the removal of United States troops from Islamic countries. However, there is no credible evidence that during this time, al Qaeda was plotting or executing any attacks upon the United States itself. *Id.* at 59-61.

In May 1996, following a change in Sudan's political structure and international pressure, bin Laden and al Qaeda were expelled from the country. *See* 9/11 Report, pps. 62-63. The commission found that bin Laden left Sudan in a "significantly weakened" position and was forced to seek a safe haven with the Taliban in Afghanistan. *Id.* at 63. Bin Laden and al Qaeda never returned to Sudan.

The 9/11 Report also makes clear, what is never mentioned in the complaint:

> The Sudanese government had canceled the registration of the main business enterprises he [bin Laden] had set up there and then put some of them up for public sale. **According to a senior al Qaeda detainee, the government of Sudan seized everything bin Laden had possessed there.**

*Id.* at 65 (emphasis added).

Thus, bin Laden left Sudan in 1996 without any possible means to launch terrorist attacks against the United States. *See* 9/11 Report, pps. 62-67, 170 ("Nor were bin Laden's assets in Sudan a source of money for al Qaeda . . . he left Sudan with practically nothing."). In fact, it was not until

two years later, in 1998, following financial support from sources outside of Sudan, that al Qaeda advocated terrorist attacks against the United States.[6] *Id.* at 66-67.

Most important, the 9/11 Report concludes that the plan to launch terrorist attacks at the United States using commercial airlines was not adopted by al Qaeda and bin Laden until late 1998 or 1999, years after he and his associates left Sudan. *See* 9/11 Report, pps. 154-56. The plan evolved following bin Laden's issuance of a "fatwa" in February 1998, calling for the murder of Americans anywhere, including in the United States. *Id.* at 47. The commission found that the September 11 attack plan was developed by numerous participants from several different countries. None of the participants were Sudanese individuals or business entities. *Id.* at 154-69. Furthermore, the commission sought to trace the money trail for the funding of the September 11 attacks. *Id.* at 169-73. No roads led to Sudan or FIBS. Thus, there is not a single shred of evidence that the bank had anything to do with September 11. *Id.* at 169 ("bin Laden did not fund al Qaeda . . . with a network of businesses in Sudan").[7]

### IV. ARGUMENT

The complaint should be dismissed against FIBS because: (1) the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure; (2) this Court lacks personal jurisdiction over FIBS pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) the complaint fails to state a proper claim against the bank pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. The Complaint Does Not Comply with Rule 8

There is no clear case law on the pleading requirements when alleging that a person or

---

[6] Under the Federal International Emergency Economic Powers Act, the U.S. Department of Treasury may seize and freeze funds belonging to terrorist organizations such as al Qaeda. *See* 9/11 Report, pps. 185-86. The complaint does not allege, nor could it, that any FIBS funds had been seized or frozen or that the bank has been designated as a terrorist sponsored organization.

[7] The complaint does not dispute that al Qaeda left Sudan in 1996, and that the decision to attack the United States occurred years later, while al Qaeda was in Afghanistan. Complaint, ¶¶ 114-16, 171. Indeed, the complaint's description of the planning, funding, and execution of the September 11 attacks makes no mention of FIBS. Complaint, ¶¶ 220-39.

entity is a terrorist or terrorist sponsor.[8] FIBS requests that the Court consider Rule 8, which mandates a "short and plain" statement entitling the pleader to relief, and imposes requirements with respect to this action.  A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 825 (S.D.N.Y. 2005), *quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); s*ee also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Alleging that a legitimate bank participated in barbaric terrorist acts should require something more than bare bones pleading.

Here the complaint falls woefully short of Rule 8 and should be dismissed.  The "Federal Rules do not permit conclusory statements to substitute for minimally sufficient factual allegations." *In Re: Nasdaq Market-Makes Antitrust Litigation,* 894 F. Supp. 703, 709 (S.D.N.Y. 1995), *citing Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir. 1983).  Similarly, this Court has held that Rule 8 does not permit undefined charges and frivolous claims to clutter the Federal courts.  *See Ruffolo v. Oppenheimer & Company, Inc.,* 1991 WL 17857, at *2-3 (S.D.N.Y. Feb. 5, 1991).

Thus, the complaint should be dismissed because it serves up only bald, meritless allegations and conclusions, without any factual support for them.

**B. There is No Personal Jurisdiction Over FIBS in This Court**

The complaint fails to allege any facts that support the establishment of jurisdiction under the New York long-arm statute or federal law. Furthermore, plaintiffs' conclusory statements about FIBS are not sufficient to meet due process. In a word, plaintiffs have failed to make the prima facie

---

[8] Interestingly, claiming that a defendant is involved in a financial fraud implicates Rule 9(b), and triggers heightened pleading requirements.  There is apparently no similar rule for calling someone a terrorist.

showing of minimum contacts and reasonableness required to properly invoke jurisdiction over FIBS.

### (i). General Allegations of Personal Jurisdiction and Conspiracy are Insufficient Under New York or Federal Law

Plaintiffs bear the burden of establishing personal jurisdiction over the defendant under either the New York long-arm statute or federal law.[9] *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 804. A complaint must plead facts establishing, *prima facie*, personal jurisdiction over a defendant. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). General allegations are not sufficient to avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), and a court will not accept conclusory assertions or draw "argumentative inferences." [10] *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 804, *citing Mende v. Milestone Tech., Inc.,* 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1999).

Plaintiffs attempt to establish jurisdiction by bland assertions of conspiracy. Such averments, without supporting factual allegations, are not sufficient to establish personal jurisdiction. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805-06. ("Without supporting factual allegations…[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11 is insufficient to

---

[9] To the extent that plaintiffs seek jurisdiction under the Anti-Terrorism Act ("ATA") or RICO, they have failed to state a claim. Furthermore, the assertion of jurisdiction over FIBS under those statutes would violate due process.

[10] Plaintiffs make no claim of general jurisdiction over FIBS. This Court has held that "general jurisdiction is based on the defendant's general business contacts with the forum; because the defendant's contacts are not related to the suit, a considerably higher level of contacts is required." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811, *citing Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996). Plaintiffs have not alleged that FIBS had offices, contracts, deposits, or check clearing activities in the state of New York or anywhere else in the United States.

establish jurisdiction"); *see also Lehigh Valley Indus. Inc., v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975).

The conclusory allegations that FIBS was part of a conspiracy to commit the September 11 plot are not sufficient to establish jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 801; *see also Robinson v. Government of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001). Plaintiffs are instead required to make a "prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805, *citing Chrysler Capital Corp. v. Century Power Corp.* 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Perhaps recognizing the impossibility of establishing personal jurisdiction over FIBS, the complaint merely mouths the words that would subject the bank to this Court's jurisdiction. The complaint also attempts to bootstrap jurisdiction over FIBS by pointing to the acts of the terrorists involved in the September 11 attacks. Neither approach will be enough to satisfy due process requirements.

Although the complaint makes general allegations that FIBS participated in a conspiracy, the pleading is devoid of any facts showing that the bank purposefully and knowingly involved itself in terrorist activities aimed at the United States, or that the bank was a member of a conspiracy to effectuate the September 11 attacks and that a co-conspirator committed acts in furtherance of the September 11 attacks. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972) (personal jurisdiction should be applied with caution with respect to international disputes, and foreign defendants must have engaged in acts intended to have a direct effect upon the forum).

Thus the alleged conspiratorial acts of the terrorists of September 11 can hardly form the basis of personal jurisdiction over the bank. *See Lehigh Valley*, 527 F.2d at 93. In this Circuit, to properly plead personal jurisdiction in a conspiracy case, the complaint must articulate facts that the defendant acted "for the benefit, with the knowledge and consent of, and under some control by [the co-conspirator]." *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981). This Court has held that personal jurisdiction cannot be based on New York or federal law, where "the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 806, *citing Daventree Ltd. v. Republic of Azerbaijan,* 349 F. Supp. 2d 736 (S.D.N.Y. 2004) (claims dismissed against Swiss banking defendants due to lack of personal jurisdiction over the defendants). Furthermore, where there are no specific allegations of consent to unlawful activities, there is no basis for personal jurisdiction. *Id.*

Finally, there are absolutely no facts suggesting a "communality" of purpose and action among the bank and the terrorists. The complaint does not plead facts showing that FIBS was aware of the terrorists' intent to attack the United States; that activities of the terrorists somehow benefited FIBS; that FIBS intended that actions taken by the terrorists would have some impact in the United States; that FIBS exercised some degree of control over the terrorists; and that FIBS provided substantial assistance to the terrorists in carrying out the September 11 attacks.

**(ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process**

Moreover, the exercise of personal jurisdiction over a defendant must comply with due process under the United States Constitution. Specifically, two factors must be considered: (1) whether there have been "minimum contacts" with the forum and (2) whether the exercise of

personal jurisdiction is reasonable. *See Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945).

Notions of fair play and substantial justice should be considered when determining if the defendant has had "minimum contacts" with the forum.  A court may not assert jurisdiction over parties that have not "purposefully directed" actions towards the forum.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985); *see also Burnett v. Al Baraka Investment and Development Corp., et al.,* 292 F. Supp. 2d 9, 22-23 (D.D.C. 2003) (dismissing defendants in this case whose actions described in the complaint were not "expressly 'aimed' or 'purposefully directed' " at the United States).  Furthermore, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 475, *quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1985); s*ee also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980).

Far from alleging "minimum" contacts between FIBS and the United States, the complaint simply omits to plead any contacts between the bank and the forum.  The bank has not had contacts with New York or anywhere else in the United States necessary to subject it to personal jurisdiction. The bank is neither incorporated in the United States, nor does it have any offices here.  It has never been licensed in the United States nor has it held United States depository funds.  FIBS has not done, and does not do, any business in the United States.  Moreover, the bank has never taken any steps to purposely establish any connection with this country.

As this Court recognized, "there [is] no support 'for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.' " *In re: Terrorist Attacks on September 11,*

*2001*, 349 F. Supp. 2d at 832, *quoting Burnett v. Al Baraka Inc. and Development Corp.*, 274 F.

Supp. 2d 86, 109 (D.D.C. 2003) ("*Burnett I*") (granting Saudi America Bank's motion to dismiss,

where it was not adequately alleged that the bank did anything to directly support al Qaeda).

Moreover, merely being a shareholder in an entity that engages in unlawful acts cannot create the

basis for jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832.

Due process also requires that the exercise of personal jurisdiction over a defendant be

reasonable. When determining reasonableness, it is necessary to balance public policy

considerations. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811. For

instance, " 'great care and reserve should be exercised when extending our notions of personal

jurisdiction into the international field.' " *Id., quoting Asahi Metal Industry Co., Ltd. v. Superior

Court of California, Solano County,* 480 U.S. 102, 115 (1987). Furthermore, a defendant in a

foreign legal system faces unique burdens that carry "significant weight in assessing the

reasonableness of stretching the long arm statute of personal jurisdiction over national borders." *Id.*

Thus, a "court may exercise personal jurisdiction over a defendant consistent with due

process only when a defendant is a primary participant in intentional wrongdoing." *In re: Terrorist

Attacks on September 11, 2001*, 349 F. Supp. 2d at 809, *quoting In re Magnetic Audiotape Antitrust

Litigation*, 334 F.3d 204, 208 (2d Cir. 2003). To ensure due process, "[p]laintiffs must make a

prima facie showing of each Defendant's personal or direct participation in the conduct giving rise

to Plaintiff's injuries." *Id.*

Plaintiffs here have made no such showing. Therefore, the complaint should be dismissed

for lack of personal jurisdiction over FIBS.[11]

---

[11] There is also no basis for engaging in jurisdictional discovery with respect to FIBS. This Court has held
that "Courts are not obligated to subject a foreign defendant to discovery…where the allegations of jurisdictional
facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not

**C. The Complaint Fails To State A Claim Against FIBS**

The complaint attempts to seek relief upon various federal claims, including the Torture Victims Protection Act, the Alien Torts Claims Act, the Anti-Terrorism Act, and RICO; as well as several common law counts including negligence, wrongful death, survival, and negligent infliction of emotional distress.  Of the fifteen counts, not one properly states a claim for relief. [12]

The complaint should be dismissed against FIBS pursuant to Rule 12(b)(6) on two grounds: (1) plaintiffs have not alleged any conduct by the bank that would subject the bank to the liability set forth in the complaint and (2) plaintiffs did not properly establish  that actions by the bank proximately caused the injuries, which resulted from the September 11 attacks.

As this Court has held in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 833, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)," *quoting DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996). The Court is required, at this stage, to accept the complaint's factual assertions as true. However, the pleading must articulate facts that set forth the elements of liability, and that give rise to a "judicially recognizable right of action."  *See York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002); s*ee also In re: Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) and *Sonds v. St. Barnabas Hosp. Corp. Health Svcs.,* 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001).

In this case, the complaint contains only generalized and conclusory assertions of liability, which reveal no connection between FIBS and the terrorist activities directed against the United

---

uncover sufficient facts to sustain jurisdiction." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 812, *citing Daventree*, 349 F. Supp. 2d at 765.

[12] Count One alleges a cause of action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1605(a)(2), 1605(a)(5), and 1605(a)(7). That statute, however, creates no basis for imposing liability.  Since FIBS is neither a sovereign nor an agency or instrumentality of a sovereign, that statute cannot apply to the bank.

States. The touchstone to any liability here is proximate cause – to show in the complaint that the bank's acts caused plaintiffs' injuries and that it was reasonably foreseeable that such injuries would flow from those acts.  *See Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *see also In re: American Express Co. v. S'holder Litig.*, 39 F.3d 395, 401-02 (2d Cir. 1994).

Each of plaintiffs' claims requires a showing of cause-in-fact, as opposed to "but-for" causation, or other less stringent theories of causation. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 797 n. 26 (rejecting plaintiff's request for less stringent causation standard and holding that "the proper inquiry at this stage of the litigation is the presence of proximate causation").

The complaint here fails to allege that conduct by FIBS in any way caused the September 11 terrorist attacks.  There is no specific factual allegation that the bank knowingly gave funds, assistance, or material support to the terrorists. No allegation suggests that the attacks of September 11 were the direct or foreseeable result of any action by FIBS. Thus, nothing in the complaint supports a proximate cause finding as to the bank, and the complaint provides no proximate cause between actions by the bank and the injuries sustained by plaintiffs.  *See Holmes*, 503 U.S. at 268-69.  In a word, there is simply no allegation that relates FIBS to the September 11 attacks or the resulting injuries.[13]

---

[13] The complaint merely alleges that, at some period of time, al Qaeda operatives may have had funds on deposit in Sudan at FIBS and other Sudanese banks in which FIBS supposedly was a shareholder.  However, this Court has rejected liability upon such alleged facts.  *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 836. The complaint identifies several U.S. banks that were actually used by the terrorists in connection with September 11. Complaint, ¶¶ 26, 191. None of these banks share FIBS Islamic heritage, and they have not been named as defendants herein. Of course, if courts were to hold banks liable for the wrongful acts of their depositors, then the national and international banking system as we know it, would cease to exist. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 836

**(i). Torture Victims Protection Act**

Count Two of the complaint alleges a claim under the Torture Victims Protection Act, 28 U.S.C. §1350, note §2(a) ("TVPA").  In order to state a cause of action under the TVPA, the complaint must assert: (1) an individual, (2) acting under actual or apparent authority, or color of law, of any foreign nation, (3) subjected another individual to extra-judicial killing or torture.  *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828; *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 152-53 (2d. Cir. 2003); *Kordic v. Karadzic*, 70 F.3d 232, 245 (2d Cir. 1995), *reh'g denied*, 74 F.3d 377 (2d Cir. 1996).  None of the elements of a TVPA action is properly pled against FIBS.

Only individuals may be sued pursuant to the TVPA.  *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828 (TVPA claims dismissed against defendant banks).  FIBS, a bank, is not "an individual" under the act.  *See Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 381-82 (E.D.LA. 1997), *aff'd on other grounds*, 197 F.3d 161 (5th Cir. 1999); *Friedman v. Bayer Corp.,* 1999 WL 33457825, at *2 (E.D.N.Y. Dec. 15, 1999).  Further, FIBS never took any pertinent action under color of foreign law, nor did it do anything to subject "another individual" to an extra-judicial killing or torture.  *See Bao Ge v. Li Peng*, 201 F. Supp. 2d 14, 23 (D.D.C. 2000), *aff'd*, 2002 WL 1052012 (D.C. Cir. 2002). [14]

---

[14] The courts have held that the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing."  *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887, at *3 (S.D.N.Y. February 28, 2002); *Benas v. Baca*, 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001), *aff'd*, 30 Fed.Appx. 753 (9th Cir. Feb. 15, 2002). That element is also absent here, since all of the alleged victims were in the United States at the time of the September 11 attacks. The TVPA also requires that a U.S. claimant exhaust all remedies in a foreign forum before initiating a claim in this country. *See Flores*, 343 F.3d at 153 n.21. No such effort to exhaust these remedies had been pled in the complaint.

### (ii). Anti-Terrorism Act

In Count Three of  the complaint, plaintiffs attempt  to assert a claim under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), which provides a private cause of action for a plaintiff (1) who is a United States national,[15] and (2) who is injured in his person, property, or business, (3) due to international terrorism.  18 U.S.C. §§ 2331-2333 (2000). This Court, in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828, held that in order to adequately plead a claim under ATA, "a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." *See also Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1023 (7th Cir. 2002) ("*Boim II*").

This Court has also held that with regard to an ATA claim, "[u]nder a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act and that the attacks of September 11 were a reasonably foreseeable consequence of that conspiracy." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 829, *citing Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 895 (N.D. Ill. 2004) ("*Boim III*").

As discussed at length above, the complaint does not properly assert any of these things: no knowledge of terrorist activities, no desire to help, no actual help, no agreement, and no consequential injury.  *See Smith ex rel. Smith v. Islamic Emirate of Afghanistan,*, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) ("plaintiff must show knowledge of an intent to further the criminal acts and proximate cause"); see *also Boim II,* 291 F.3d at 1012 ("...funding, *simpliciter*, of a terrorist organization, is insufficient [to impose civil liability] because it sets too vague a standard, and because it does not require a showing of proximate cause").

---

[15] Foreign nationals have no standing under ATA, and therefore, these plaintiffs should be dismissed from this count.  *See, e.g. Burnett I*, 274 F. Supp. 2d at 105.

### (iii). Alien Tort Claims Act

Count Four alleges a claim under a purported "Alien Tort Claims Act," 28 U.S.C. § 1350, which is actually the Torture Victims Protection Act of 1991 and which allows a non-U.S. citizen to bring a claim for tort damages as a result of acts a defendant committed in violation of the law of nations or a treaty of the United States. *See Flores v. Southern Peru Copper Corp.*, 343 F.3d at 148-49. Only foreign citizens can bring such a claim, and thus all U.S. citizens should be dismissed from this count.

This claim suffers from the same fatal deficiency as the ATA and the TVPA claims, no showing of proximate cause. The complaint points to no facts linking FIBS to the events of September 11 attacks or to any sort of aiding and abetting or conspiracy liability. Moreover, the complaint does not allege any FIBS activity that was tortious or that injured the plaintiffs. Therefore, there could never be a proper claim asserted against the bank. *See Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 121 (D.D.C. 2003); *Bao Ge*, 201 F. Supp. at 21-22.

### (iv). Wrongful Death

Count Five of the complaint alleges a wrongful death claim. The wrongful death statutes in New York (E.P.T.L. §5-4.1(1)), Virginia (Va. Code Ann. §§ 8.01-50), and Pennsylvania (42 Pa. Cons. Stat. §8301) are substantially similar. A wrongful death claim requires that a properly appointed personal representative allege that a defendant committed a wrongful act, negligent act, or default, which proximately caused a decedent's death.

In the absence of a proximate cause link between FIBS and September 11, however, there could never be a wrongful death claim here. Furthermore, the complaint does not properly describe any wrongful act, negligent act, or default by the bank resulting in the September 11 attacks and resulting injuries. Certainly, the complaint's conclusory allegations could never sustain a wrongful

death claim.  *See Guadagnoli v. Seaview Radiology, P.C.*, 184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000).

### (v). Negligence

Count Six asserts a negligence claim against FIBS.  A proper negligence claim requires a complaint to state: (1) the existence of a duty owed by defendant to plaintiff; (2) the breach of this duty; (3) that the breach proximately caused injury to the plaintiff; and (4) that the plaintiff sustained actual damages.  *See King v. Crossland Savings Bank,* 111 F.3d 251, 259 (2d Cir. 1997)*; Becker v. Schwartz,* 46 N.Y.2d 401, 410, 386 N.E.2d 807 (1978), *citing* Restatement (Second) of Torts § 281 (1965); *Martin v. Evans*, 551 Pa. 496, 501, 711 A.2d 458, 461 (1998); *Delk v. Columbia/HCA Healthcare Corp*, 259 Va. 125, 132, 523 S.E. 2d 826, 830 (2000).

This Court has held that banks are not liable for the torts of their customers. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 830, *citing Renner v. Chase Manhattan Bank*, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999). In this case, the Court dismissed negligence claims against banks who owed no duty to plaintiffs. *Id., citing Burnett I,*  274 F. Supp. 2d, at 108 (D.D.C.2003).

### (vi). Survival

Count Seven of the complaint posits a survival claim under state law.   The New York survival statute, which is substantially similar to those in Virginia and Pennsylvania, requires that a properly appointed personal representative identify a tort that proximately caused injury to a decedent before his or her death.  *See* E.P.T.L. § 11-3.2(b) (McKinney 2001).

Here, the complaint identifies no such tort, nor does it explain how FIBS actions proximately caused any injuries in the September 11 attacks.  *See Meroni v. Holy Spirit Ass'n for the Unification of World Christianity*, 506 N.Y.S.2d 174, 179 (2d Dep't 1986).   Further, the

complaint does not identify all of the "personal representatives" who have purportedly been appointed by a court.  *See Lichtenstein v. State*, 712 N.E. 2d 1218 (N.Y. Ct. App. 1999).

### (vii). Negligent and Intentional Infliction of Emotional Distress

The complaint also contains a purported negligent and intentional infliction of emotional distress claim (Count Eight).  The law in New York, Pennsylvania, and Virginia is substantially similar, and requires a plaintiff to assert that a defendant engaged in: (1) extreme and outrageous conduct; (2) with intent to cause, or with a substantial probability of causing, severe emotional distress; (3) a causal connection exists between the conduct and the injury; and (4) that the plaintiff experienced severe emotional distress.  *See Howell v. New York Post Co.,* 81 N.Y. 2d 115, 120-22, 612 N.E. 2d 699, 702 (1993); *Papieves v. Lawrence*, 437 Pa. 373, 378-79, 263 A. 2d 118, 121 (1970); *Delk*, 259 Va. at 136-37, 523 S.E. 2d at 833 (2000).

Once again, banks are simply not liable for injuries done by depositors engaging in routine banking services. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 830 (negligence and negligent infliction of emotional distress claims dismissed against defendant banks where banks owed no duty to plaintiffs), *citing Burnett I.*

### (viii). Conspiracy

In Count Nine, the complaint seeks to assert a claim for conspiracy, which should be dismissed because there is no independent tort underlying the claim of conspiracy. Under New York, Pennsylvania, and Virginia law, in order to pursue a conspiracy claim, a plaintiff must allege: (i) the existence of an underlying, independent tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting injury.  *See* 8 N.Y. Jur., Conspiracy, §§ 4, 19 (1982); *Suarez v. Underwood*, 103 Misc. 2d 445, 426 N.Y.S.2d 208

(N.Y.Sup. Mar. 11, 1980); *see also Skipworth by Williams v. Lead Industries, Ass'n, Inc.,* 690 A.2d 169, 236 (Penn. 1997); *Hechler Chevrolet, Inc. v. Gen. Motors Corp.,* 337 S.E.2d 744, 748 (Va. 1985).

As discussed above, the complaint does not identify any tort committed by FIBS, much less its participation in a conspirational agreement or knowledge of the wrongful nature of the conduct. Indeed, the complaint references not a single act that would lead to the conclusion that the bank joined a conspiracy with the September 11 attackers. There is not one fact contained in the complaint that substantiates an intent by FIBS to join an effort to attack the United States or any American. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 805.

### (ix). Aiding and Abetting

Plaintiffs, in Count Ten, seek to plead liability based on aiding and abetting. Under this theory, a plaintiff must allege that a defendant (1) had knowledge of a particular tort and (2) took intentional steps to substantially assist in its commission. *See Pittman by Pittman v. Grayson*, 149 F.3d 111, 123 (2d Cir. 1998); *Liberman v. Worden,* 701 N.Y.S.2d 419, 420 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that "defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").[16]

Additionally, this Court, along with the court in *Burnett I,* found "no basis for a bank's liability for injuries funded by money passing through it on routine banking business." *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 833 (granting defendant bank's motion to dismiss after plaintiffs failed to allege general knowledge of the primary actor's conduct as

---

[16] These elements of aiding and abetting are similar under Pennsylvania law. *See Koken v. Steinberg*, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003). However, it is unclear whether an aiding and abetting claim is even recognized under Virginia law. *See A.G. Van Metre Const, Inc. v. NVKettler*, L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) (not recognizing cause of action in Virginia); *but see Sherry Wilson & Co., Inc. v. Generals Court, L.C.* 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

required by concerted action liability); *see also Burnett I*, 274 F. Supp. 2d at 109. [17]

 **(x). RICO**

Counts Eleven, Twelve, and Thirteen of the complaint allege RICO claims under 18 U.S.C. §1962 against FIBS. Judge Robertson, in *Burnett I*, 274 F. Supp. 2d at 100-02, dismissed plaintiffs' RICO claims for lack of standing.  FIBS respectfully requests that this holding be treated as the law of the case in this action.  *See e.g., United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). The Second Circuit has also held that where the plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently…plaintiffs lack standing to bring RICO claims…." *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.* 191 F.3d 229, 239 (2d Cir. 1999).  Even in the absence of the controlling ruling in *Burnett I*, the complaint fails to identify any of the RICO elements required to be pled under *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17-19 (2d. Cir. 1983).

This Court has held that "an alleged RICO defendant must have had 'some part in directing' the 'operation or management' of the enterprise itself to be liable." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 827 (RICO claim against defendants was not established where the plaintiff did not allege "anything approaching active 'management or operation.' "), *quoting Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003).  The complaint fails to plead any such allegations against FIBS.

Once more, the complaint's sparse allegations regarding the bank, even if true, would establish *none* of the requisite elements of a civil RICO claim.  The complaint alleges no predicate acts or agreement to commit predicate acts by FIBS; no pattern of racketeering activity

---

[17] This Court has cautioned against stretching aider and abettor causation analysis to "terra incognita." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 798, *quoting Burnett II*, 292 F. Supp. 2d at 20. Instead, "[T]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." *Id.* at 801.

engaged in by FIBS; no assent by FIBS to any alleged RICO conspiracy; no direction; no active management or operation; and no overt acts by FIBS in furtherance of any conspiracy.

The defects noted above are fatal to the RICO claims, and thus Counts Eleven through Thirteen should be dismissed completely.

### (xi). Punitive Damages

Finally, plaintiffs also have failed to state a claim for punitive damages (Counts Fourteen and Fifteen). Punitive damages are a form of relief and not an independent cause of action. *See Cooper Indus., Inc. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001); *Smith v. County of Erie*, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

## V. CONCLUSION

For the above reasons, FIBS respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper. [18]

Dated: New York, New York
       April 27, 2005

                                   Respectfully Submitted,

                                   **JOHN F. LAURO, P.A.**

                          By: _____/s/_____
                                John F. Lauro, Esq. (JFL-2635)
                                Karena L. Nashbar, Esq. (Fla.Bar 697982)
                                (not admitted in New York)

                                101 E. Kennedy Blvd., Suite 2180
                                Tampa, Florida 33602
                                Phone: (813) 222-8990
                                Fax: (813) 222-8991
                                *In New York, Reply To:*
                                300 Park Avenue, Suite 1700
                                New York, NY 10022
                                E-mail: jlauro@laurolawfirm.com

                                *Attorneys for Defendant*
                                *Faisal Islamic Bank-Sudan*

---

[18] FIBS requests that this action be dismissed with prejudice and without leave to replead. Plaintiffs have now filed four successive complaints in this action, and there is no reasonable prospect that plaintiffs will ever be able to remedy their failure to effectively plead any of their claims against FIBS.  *See e.g. Electronics Communications Corp. v. Toshiba America Consumer*, 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile).  As demonstrated above, the 9/11 Report necessarily absolves the bank in any complicity in the September 11 attacks.  The complaint has not furnished any well-pled facts contradicting the conclusions of the 9/11 Report.  Plaintiffs have no good faith basis to assert any claim against FIBS - for one very important reason – the bank had no role in the tragic events of September 11, 2001.

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April, 2005, the forgoing Memorandum of Law in Support of Motion to Dismiss of Defendant Faisal Islamic Bank-Sudan was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.

_____/s/_____
John F. Lauro, Esquire