UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001          03 MDL 1570 (RCC)
                                                       ECF Case

---------------------------------------------------------------------------x

CANTOR FITZGERALD & CO., *et al.*                      04 CV 7065 (RCC)
                                                       ECF Case

      Plaintiffs,

v.

AKIDA BANK PRIVATE LIMITED, *et al.,*

      Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT FAISAL ISLAMIC BANK-SUDAN

**JOHN F. LAURO, P.A**.

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant*
*Faisal Islamic Bank -Sudan*

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ................................................................................... iii

I. INTRODUCTION ............................................................................................ 1

II. PRELIMINARY STATEMENT ...................................................................... 1

III. SUMMARY OF ALLEGATIONS ................................................................ 2

    A.  Facts Alleged in the Complaint ........................................................... 2

        (i)  Alleged Account at FIBS ............................................................ 3

        (ii)  Al Shamal Bank .......................................................................... 4

        (iii) Tadamon Islamic Bank .............................................................. 5

     B.  The True Facts .................................................................................... 5

IV. ARGUMENT .................................................................................................. 8

    A.  The Complaint Does Not Comply with Rule 8 ................................. 8

    B.  There is No Personal Jurisdiction Over FIBS in This Court ............ 9

      (i). General Allegations of Personal Jurisdiction and Conspiracy are
          Insufficient Under New York or Federal Law ........................... 9

      (ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process ........... 12

    C.  The Complaint Fails To State A Claim Against FIBS ................... 14

      (i). Trespass ....................................................................................... 16

      (ii). Anti-Terrorism Act ..................................................................... 17

      (iii). RICO .......................................................................................... 18

      (iv). Claims for Property Relief for Violating International Law.................. 19

      (v). Aiding and Abetting ................................................................... 19

      (vi)  Punitive Damages ..................................................................... 20

      (vii)  Contribution and Indemnity .................................................... 20

V. CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*A.G. Van Metre Const, Inc. v. NVKettler, L.P.*,
1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992).......................................................19

*A.J. Cunningham Packing Corp., v. Congress Fin. Corp.*,
792 F.2d 330 (3d Cir. 1986)...........................................................................16

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,
480 U.S. 102 (1987) .................................................................................... 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)............................................................................ 9

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ........................................................................ 17

*Boim v. Quranic Literacy Inst.*,
340 F. Supp. 2d 885 (N.D. Ill. 2004)................................................................ 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................... 12

*Burnett v. Al Baraka Investment and Development Corp., et al.*,
292 F. Supp. 2d 9 (D.D.C. 2003)................................................................ 12, 20

*Burnett v. Al Baraka Inv. and Development Corp.*,
274 F. Supp. 2d 86 (D.D.C.2003) ............................................................. *passim*

*Calcutti v. SBU, Inc.*,
273 F. Supp. 2d 488 (S.D.N.Y. 2003)........................................................... 20-21

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................ 10

*Conley v. Gibson*,
355 U.S. 41, 45-46 (1957) ............................................................................. 8

*Cooper v. Horn*,
448 S.E.2d 403 (Va. 1994)............................................................................16

*Cooper Indus., Inc. v. Leatherman Tool Group*,
532 U.S. 424 (2001)................................................................................20

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004)...............................................11, 14

*DeJesus v. Sears, Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996).................................................................... 14

*Dubai Islamic Bank v. Citibank, N.A.*,
256 F.Supp. 2d 158 (S.D.N.Y. 2003) ................................................ 18

*Electronics Communications Corp. v. Toshiba America Consumer*,
129 F.3d 240 (2d Cir. 1997)................................................................22

*Furlong v. Long Island College Hosp.*,
710 F.2d 922 (2d Cir. 1983)..................................................................8

*Goodkin v. United States*,
773 F.2d 19 (2d Cir. 1985)..................................................................20

*Grove Press, Inc. v. Angleton*,
649 F.2d 121 (2d Cir. 1981)............................................................... 11

*Hanson v. Denckla*,
357 U.S. 235 (1985) ........................................................................... 12

*Holmes v. Sec. Investor Protection Corp.*,
503 U.S. 258 (1992) ........................................................................... 15

*In re: American Express Co. v. S'holder Litig.*,
39 F.3d 395 (2d Cir. 1994)................................................................. 15

*In re Air Crash Disaster at Cove Neck, Long Island, New York
on January 25, 1990*, 885 F. Supp. 434 (E.D.N.Y. 1995).......................... 16

*In re: Livent, Inc. Noteholders Secs. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................... 14

*In re Magnetic Audiotape Antitrust Litigation*,
334 F.3d 204 (2d Cir. 2003)................................................................ 13

*In Re: Nasdaq Market-Makes Antitrust Litigation*,
894 F. Supp. 703 (S.D.N.Y. 1995)..........................................................8

*In re: Terrorist Attacks on September 11, 2001*,
349 F. Supp. 2d 825 (S.D.N.Y. 2005) ............................................................ *passim*

*International Shoe Company v. Washington*,
326 U.S. 310 (1945) .................................................................................... 12

*Jordan v. Madison Leasing Co.*,
596 F. Supp. 707, 710 (S.D.N.Y. 1984) ......................................................21

*Koken v. Steinberg*,
825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003) .....................................................19

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ......................................................................5

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) .....................................................................18

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972) .................................................................... 11

*Lehigh Valley Indus. Inc., v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975) ................................................................. 10, 11

*Liberman v. Worden*,
701 N.Y.S.2d 419 (N.Y. App. Div. 2000) ................................................... 19

*Mende v. Milestone Tech., Inc.*,
269 F. Supp. 2d 246 (S.D.N.Y. 2003) ......................................................... 9

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ................................................................... 9, 12

*Moss v. Morgan Stanley, Inc.*,
719 F.2d 5 (2d Cir. 1983) ...................................................................... 18

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105 (2d Cir. 1999) ................................................................. 9

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) .......................................................................5

*Pittman by Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998) ..................................................................19

*Robinson v. Government of Malaysia,*
269 F.3d 133 (2d Cir. 2001)................................................................. 10

*Ruffolo v. Oppenheimer & Company, Inc.,*
1991 WL 17857 (S.D.N.Y. Feb. 5, 1991)...............................................8

*St. Pierre v. Dyer,*
208 F.3d 394  (2d Cir. 2000)................................................................20

*Smith v. County of Erie,*
743 N.Y.S.2d 649 (N.Y. App. 2002) ....................................................20

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan,*
262 F.Supp. 2d 217 (S.D.N.Y. 2003)...................................................17

*Sonds v. St. Barnabas Hosp. Corp. Health Svcs.,*
151 F. Supp. 2d 303 (S.D.N.Y. 2001) .................................................. 15

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)..............................................................................8

*Tomheim v. Federal Home Loan Mortg. Corp.,*
988 F. Supp. 279, 281 (S.D.N.Y. 1997)............................................... 16

*United States v. Uccio,*
940 F.2d 753 (2d Cir. 1991)................................................................ 18

*Whitaker v. American Telecasting, Inc.,*
261 F.3d 196 (2d Cir. 2001)................................................................. 9

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ........................................................................... 12

*York v. Association of the Bar of the City of New York,*
286 F.3d 122 (2d Cir. 2002)................................................................ 14

*Zapico v. Bucyrus-Erie Co.,*
579 F.2d 714, 718-19 (2d Cir. 1978) ...................................................20

## STATUTES AND LEGISLATIVE MATERIALS:

18 U.S.C. § 1962 (1988)....................................................................... 18
18 U.S.C. §§ 2331-2333 (2000)............................................................17

**RULES:**

Rule 8, Federal Rules of Civil Procedure.................................................................. 8
Rule 9(b), Federal Rules of Civil Procedure............................................................. 8
Rules 12(b)(2), Federal Rules of Civil Procedure ..................................................... 9
Rules 12(b)(6), Federal Rules of Civil Procedure ................................................... 14

**MISCELLANEOUS:**

National Commission on Terrorist Attacks Upon the United States
("9/11 Report") ............................................................................. 1, 5, 6, 7

# I. INTRODUCTION

Defendant Faisal Islamic Bank-Sudan ("FIBS" or "the bank") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' first amended complaint ("the complaint" or "Complaint, ¶ __") under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth below, the complaint does not allege that FIBS took any action that had any connection whatsoever with plaintiffs' injuries, and the 9/11 Report [1] makes clear that there could not have been any such connection. The complaint fails to provide a "short and plain" statement of facts entitling plaintiffs to relief.  Further, this Court lacks personal jurisdiction over FIBS, which has no contacts, "minimal" or otherwise, with the United States.  Finally, the complaint fails to state a claim against FIBS.

Therefore, the complaint against the bank should be dismissed in its entirety.

# II. PRELIMINARY STATEMENT

Before considering the substance of the assertions here, certain important observations should be made.  In this case, plaintiffs are business entities that suffered financial losses and property damage from the events of September 11. Complaint, ¶¶ 14-30. Without question, those who intentionally participated in the September 11, 2001, terrorist attacks should be held accountable under our system of justice. The terrorist attacks represent a tragedy of unprecedented magnitude.  In this case, plaintiffs are seeking to hold responsible those who caused these terrible acts.  Complaint, ¶ 1.

---

[1] In the summer of 2004, the National Commission on Terrorist Attacks Upon The United States issued a report (" 9/11 Report") pursuant to Public Law 107-306, November 27, 2002. This memorandum of law references the authorized edition of the report published by W.W. Norton & Company, Inc., and will be cited here as " 9/11 Report, p.___."

However, as the complaint makes clear, FIBS (a banking institution in Sudan) had absolutely no role in the September 11 terrorist attacks. The calamity of the terrorist attacks should not lead to the discarding of fundamental principles of civil jurisprudence. Here, there is no rational legal theory of jurisdiction over FIBS or of proximate causation linking the bank to terrorist activities directed against the United States. Before imposing liability, our legal system requires a connection between a defendant's actions and the harm suffered by an injured party. Even though all must sympathize with their plight, plaintiffs cannot demonstrate any jurisdiction over FIBS or any connection between the bank and the events of September 11.

### III. SUMMARY OF ALLEGATIONS

**A. Facts Alleged in the Complaint**

The complaint strikes against components of Islamic and Arabic culture, including (among others), banks, charities, prominent business people, and respected government officials. Complaint, ¶¶ 43-50. The complaint also identifies specific facts with regard to individuals who truly participated in the September 11 events, and who should be held liable in this case. Complaint, ¶¶ 10, 33-35. The complaint also refers to executive orders and designations by the President identifying certain entities as terrorist organizations, or as funding terrorist organizations. Complaint, ¶¶ 72, 80, 113, 120. None of these orders or designations implicates FIBS in any way.

The allegations against FIBS are sparse indeed. The complaint states that in 1988 al Qaeda was formed by Osama bin Laden. Complaint, ¶ 33. Bin Laden had been part of the effort to drive the Soviet Union from Afghanistan in the 1980's, a previous foreign policy objective of the United States. *Id*

2

**(i). Alleged Account at FIBS**

The complaint further asserts that FIBS is a subsidiary of the Islamic Investment Company of the Gulf (Bahrain) EC and Dar al Maal al Islami ("DMI"), which are entities involved in legitimate banking, investment, and insurance activities around the world. Complaint, ¶¶ 124-25. It also alleges that a member of the Saudi Royal family was the CEO of DMI. *Id.* The complaint does not deny that FIBS is an actual, properly licensed, and legitimate banking institution in Sudan.

The complaint claims that, at some unknown point in time, FIBS provided "financial and bank account services" to al Qaeda members. Complaint, ¶ 132. The complaint does not adequately allege that FIBS was aware of terrorist objectives or knowingly supported these objectives in any way. Also, the complaint tells us nothing of importance about this alleged "account." We are not told who established the account or in what name the account was held. The complaint does not identify how much was in the account, where the funds came from, what the funds were used for, or for how long the account was in existence. Indeed, the complaint omits any facts linking the account to any terrorist activities against the United States or to any other activity. Rather, the complaint's theory is that a bank may be held liable for having an account held by someone who is part of a group that commits an unlawful act years later.

Moreover, the complaint fails to state specific facts showing that: (1) FIBS was aware of al Qaeda's aims to engage in terrorism in the United States; (2) FIBS supported these objectives by knowingly and intentionally taking funds from al Qaeda; (3) the funds held by FIBS were used for terrorist related purposes against the United States rather than for building roads, farms, and factories; (4) the funds were at the bank during the time the September 11 attacks were considered, planned, or carried out; or (5) there is any proximate causal link between having funds in a Sudanese bank in the 1990's and carrying out terrorist attacks in the United States in 2001.

**(ii). Al Shamal Bank**

Plaintiffs allege that FIBS was a co-founder of, and a onetime shareholder in, a Sudanese bank named Al Shamal Bank.  Complaint, ¶¶ 122, 125.  Plaintiffs also allege that in 1991, bin Laden provided fifty million dollars in capital to Al Shamal Bank and held accounts at the bank. Complaint, ¶ 128.  Moreover, the complaint alleges that Al Shamal Bank was later used to fund terrorist activities, that al Qaeda operatives had accounts there, and that bin Laden paid al Qaeda members from Al Shamal accounts.  Complaint, ¶ 129.  However, the complaint does not provide facts showing that FIBS, as a shareholder in another banking institution, ever knowingly or intentionally supported terrorist activities leading to September 11, or controlled the actions of Al Shamal Bank in supporting such activities.[2] Instead, FIBS was supposedly a shareholder in a bank that bin Laden had an interest in, and which bin Laden used to hold funds.

The complaint further claims that Al Shamal's chairman, Adel Batterjee was a Golden Chain donor who provided funds to al Qaeda, either directly or through charitable organizations. Complaint, ¶¶ 61, 131.  The complaint does not allege, however, that Batterjee was a board member of FIBS, that any board member of FIBS was a Golden Chain donor, or that FIBS was aware Batterjee was providing any funds to al Qaeda.

The complaint does not provide facts showing that FIBS ever participated in or controlled the alleged actions of Al Shamal Bank, involving terrorists or otherwise.  There are no specific allegations that the bank had any knowledge of, directed, or in any manner participated in any of Al Shamal's banking activities. Instead, the complaint merely alleges that FIBS was a shareholder in a bank that bin Laden or al Qaeda used to hold funds.

---

[2] The complaint suggests that FIBS is a shareholder and co-founder of Al Shamal Bank but never states that these positions related to the planning and execution of  the September 11 attacks.  Complaint, ¶¶ 122, 125.

### (iii). Tadamon Islamic Bank

The complaint alleges that FIBS was a shareholder in another Sudanese bank, Tadamon Islamic Bank, and that Tadamon Islamic Bank provided bank account services to al Qaeda. Complaint, ¶¶ 126, 133. Once more, the complaint does not supply facts establishing that FIBS knew, participated in, or promoted any of the purported terrorist activities of Tadamon Islamic Bank. There are no claims that FIBS was ever aware that bin Laden or an al Qaeda operative had used Tadamon Islamic Bank for illicit purposes. Further, there is not a single, well-pled fact linking the bank to Tadamon Islamic Bank's alleged al Qaeda depositors. Finally, the complaint does not place a specific time when al Qaeda used Tadamon Islamic Bank, nor does the complaint suggest any proximate link between being a shareholder in Tadamon Islamic Bank and the events of September 11.

In sum, the complaint's theory against FIBS is that at some point during the 1990's, al Qaeda, or its supporters, had depository accounts in FIBS, or in banks in which FIBS was a shareholder. This theory that liability and jurisdiction may be based on such facts was soundly rejected by this Court in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).

### B. The True Facts

The 9/11 Report is the most authoritative analysis of the September 11 tragedy.[3] With all due respect to counsel, no group of plaintiffs' lawyers could have possibly interviewed more witnesses, examined more documents, or had more access to confidential and classified

---

[3] FIBS respectfully requests that this Court take judicial notice of the 9/11 Report, and consider its conclusions in deciding whether to grant this motion. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (court may rely on matters in public record in deciding motion to dismiss); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (in deciding motion to dismiss court may consider matters of which judicial notice may be taken). At a minimum, FIBS respectfully requests that the Court consider the 9/11 Report when deciding whether personal jurisdiction is proper over it. *Id.*

information than the 9/11 commission.  *See* 9/11 Report, pps. xv-xviii.  The 9/11 Report makes it clear that any banking activity in Sudan in the 1990's cannot have had any connection with the attacks, because Osama bin Laden was driven from Sudan in 1996 and was not allowed to take any assets out of Sudan with him.

The 9/11 Report focuses on al Qaeda's activities in Sudan, and the significant events following its expulsion from Sudan in 1996. As the Report makes clear, sometime in 1989, bin Laden moved his operations to Sudan, following his participation in the attempt to expel the Soviet Union from Afghanistan.  *See*  9/11 Report, pps. 56-57. At the time, Sudan was under the control of an extremist political regime.  *Id.*  When al Qaeda operated in Sudan, bin Laden had demanded the removal of United States troops from Islamic countries. However, there is no credible evidence that during this time, al Qaeda was plotting or executing any attacks upon the United States.  Id. at 59-61.

In May 1996, following a change in Sudan's political structure and international pressure, bin Laden and al Qaeda were expelled from the country.  *See* 9/11 Report, pps. 62-63. The commission found that bin Laden left Sudan in a "significantly weakened" position and was forced to seek a safe haven with the Taliban in Afghanistan.  *Id.* at 63.  Bin Laden and al Qaeda never returned to Sudan.

The 9/11 Report also makes clear, what is never mentioned in the complaint:

> The Sudanese government had canceled the registration of the main business enterprises he [bin Laden] had set up there and then put some of them up for public sale.  **According to a senior al Qaeda detainee, the government of Sudan seized everything bin Laden had possessed there.**

*Id.* at 65 (emphasis added).

6

Thus, bin Laden left Sudan in 1996 without any possible means to launch terrorist attacks against the United States.  *See* 9/11 Report, pps. 62-67, 170 ("Nor were bin Laden's assets in Sudan a source of money for al Qaeda . . . he left Sudan with practically nothing."). In fact, it was not until two years later, in 1998, following financial support from sources outside of Sudan, that al Qaeda advocated terrorist attacks against the United States. [4]  *Id.* at 66-67.

Most important, the 9/11 Report concludes that the plan to launch terrorist attacks at the United States using commercial airlines was not adopted by al Qaeda and bin Laden until late 1998 or 1999, years after he and his associates left Sudan.  *See* 9/11 Report, pps. 154-56. The plan evolved following bin Laden's issuance of a "fatwa" in February 1998, calling for the murder of Americans anywhere, including in the United States.  *Id.* at 47.    The commission found that the September 11 attack plan was developed by numerous participants from several different countries. None of the participants were Sudanese individuals or business entities.  *Id.* at 154-69. Furthermore, the commission sought to trace the money trail for the funding of the September 11 attacks. Id. at 169-73.  No roads led to Sudan or FIBS.  Thus, there is not a single shred of evidence that the bank had anything to do with September 11.  *Id.* at 169 ("bin Laden did not fund al Qaeda . . . with a network of businesses in Sudan"). [5]

---

[4] Under the Federal International Emergency Economic Powers Act, the U.S. Department of Treasury may seize and freeze funds belonging to terrorist organizations such as al Qaeda.  *See*  9/11 Report, pps. 185-86. The complaint does not allege, nor could it, that any FIBS funds had been seized or frozen or that the bank has been designated as a terrorist sponsored organization.

[5] The complaint does not dispute that al Qaeda left Sudan in 1996, and that the decision to attack the United States occurred years later, while al Qaeda was in Afghanistan.

## IV. ARGUMENT

The complaint should be dismissed against FIBS because: (1) the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure; (2) this Court lacks personal jurisdiction over FIBS pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) the complaint fails to state a proper claim against the bank pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. The Complaint Does Not Comply with Rule 8

There is no clear case law on the pleading requirements when alleging that a person or entity is a terrorist or terrorist sponsor.[6] FIBS requests that the Court consider Rule 8, which mandates a "short and plain" statement entitling the pleader to relief, and imposes requirements with respect to this action.  A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 825, *quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); s*ee also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Alleging that a legitimate bank participated in barbaric terrorist acts should require something more than bare bones pleading.

Here the complaint falls woefully short of Rule 8 and should be dismissed.  The "Federal Rules do not permit conclusory statements to substitute for minimally sufficient factual allegations." *In Re: Nasdaq Market-Makes Antitrust Litigation,* 894 F.Supp. 703, 709 (S.D.N.Y. 1995), *citing Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir. 1983). Similarly, this Court has held that Rule 8 does not permit undefined charges and frivolous claims to clutter the Federal courts.  *See Ruffolo v. Oppenheimer & Company, Inc.,* 1991 WL 17857, at *2-3 (S.D.N.Y. Feb. 5, 1991).

---

[6] Interestingly, claiming that a defendant is involved in a financial fraud implicates Rule 9(b), and triggers heightened pleading requirements.  There is apparently no similar rule for calling someone a terrorist.

Thus, the complaint should be dismissed because it serves up only bald, meritless allegations and conclusions, without any factual support for them.

**B. There is No Personal Jurisdiction Over FIBS in This Court**

The complaint fails to allege any facts that support the establishment of jurisdiction under the New York long-arm statute or federal law. Furthermore, plaintiffs' conclusory statements about FIBS are not sufficient to meet due process. In a word, plaintiffs have failed to make the prima facie showing of minimum contacts and reasonableness required to properly invoke jurisdiction over FIBS.

### (i). General Allegations of Personal Jurisdiction and Conspiracy are Insufficient Under New York or Federal Law

Plaintiffs bear the burden of establishing personal jurisdiction over the defendant under either the New York long-arm statute or federal law.[7] *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 804. A complaint must plead facts establishing, *prima facie*, personal jurisdiction over a defendant. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). General allegations are not sufficient to avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), and a court will not accept conclusory assertions or draw "argumentative inferences."[8] *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 804, *citing Mende v. Milestone Tech., Inc.,* 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); *see also PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1999).

---

[7] To the extent that plaintiffs seek jurisdiction under the Anti-Terrorism Act ("ATA") or RICO, they have failed to state a claim. Furthermore, the assertion of jurisdiction over FIBS under those statutes would violate due process.

[8] Plaintiffs make no claim of general jurisdiction over FIBS. This Court has held that "general jurisdiction is based on the defendant's general business contacts with the forum; because the defendant's contacts are not related to the suit, a considerably higher level of contacts is required." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811, *citing Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996). Plaintiffs have not alleged that FIBS had offices, contracts, deposits, or check clearing activities in the state of New York or anywhere else in the United States.

Plaintiffs attempt to establish jurisdiction by bland assertions of conspiracy. Such averments, without supporting factual allegations, are not sufficient to establish personal jurisdiction. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805-06. ("Without supporting factual allegations…[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11 is insufficient to establish jurisdiction"); *see also Lehigh Valley Indus. Inc., v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975).

The conclusory allegations that FIBS was part of a conspiracy to commit the September 11 plot are not sufficient to establish jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 801; *see also Robinson v. Government of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001). Plaintiffs are instead required to make a "prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805, *citing Chrysler Capital Corp. v. Century Power Corp*. 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Perhaps recognizing the impossibility of establishing personal jurisdiction over FIBS, the complaint merely mouths the words that would subject the bank to this Court's jurisdiction. The complaint also attempts to bootstrap jurisdiction over FIBS by pointing to the acts of the  terrorists involved in the September 11 attacks. Neither approach will be enough to satisfy due process requirements.

Although the complaint makes general allegations that FIBS participated in a conspiracy, the pleading is devoid of any facts showing that the bank purposefully and knowingly involved itself in terrorist activities aimed at the United States, or that the bank was a member of a

conspiracy to effectuate the September 11 attacks and that a co-conspirator committed acts in furtherance of the September 11 attacks. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972) (personal jurisdiction should be applied with caution with respect to international disputes, and foreign defendants must have engaged in acts intended to have a direct effect upon the forum).

Thus the alleged conspiratorial acts of the terrorists of September 11 can hardly form the basis of personal jurisdiction over the bank. *See Lehigh Valley*, 527 F.2d at 93. In this Circuit, to properly plead personal jurisdiction in a conspiracy case, the complaint must articulate facts that the defendant acted "for the benefit, with the knowledge and consent of, and under some control by [the co-conspirator]." *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981). This Court has held that personal jurisdiction cannot be based on New York or federal law, where "the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 806, *citing Daventree Ltd. v. Republic of Azerbaijan,* 349 F. Supp. 2d 736 (S.D.N.Y. 2004) (claims dismissed against Swiss banking defendants due to lack of personal jurisdiction over the defendants). Furthermore, where there are no specific allegations of consent to unlawful activities, there is no basis for personal jurisdiction. *Id.*

Finally, there are absolutely no facts suggesting a "communality" of purpose and action among the bank and the terrorists. The complaint does not plead facts showing that FIBS was aware of the terrorists' intent to attack the United States; that activities of the terrorists somehow benefited FIBS; that FIBS intended that actions taken by the terrorists would have some impact in

the United States; that FIBS exercised some degree of control over the terrorists; and that FIBS provided substantial assistance to the terrorists in carrying out the September 11 attacks.

### (ii). Exercise of Jurisdiction Over FIBS Would Violate Due Process

Moreover, the exercise of personal jurisdiction over a defendant must comply with due process under the United States Constitution. Specifically, two factors must be considered: (1) whether there have been "minimum contacts" with the forum and (2) whether the exercise of personal jurisdiction is reasonable. *See Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945).

Notions of fair play and substantial justice should be considered when determining if the defendant has had "minimum contacts" with the forum. A court may not assert jurisdiction over parties that have not "purposefully directed" actions towards the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985); *see also Burnett v. Al Baraka Investment and Development Corp., et al.,* 292 F.Supp.2d 9, 22-23 (D.D.C. 2003) (dismissing defendants in this case whose actions described in the complaint were not "expressly 'aimed' or 'purposefully directed' " at the United States). Furthermore, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, *quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1985); s*ee also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980).

Far from alleging "minimum" contacts between FIBS and the United States, the complaint simply omits to plead any contacts between the bank and the forum. The bank has not had contacts with New York or anywhere else in the United States necessary to subject it to personal jurisdiction. The bank is neither incorporated in the United States, nor does it have any offices here. It has never

been licensed in the United States nor has it held United States depository funds.  FIBS has not done, and does not do, any business in the United States.  Moreover, the bank has never taken any steps to purposely establish any connection with this country.

As this Court recognized, "there [is] no support 'for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.' " *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832, *quoting Burnett v. Al Baraka Inc. and Development Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("*Burnett I*") (granting Saudi America Bank's motion to dismiss, where it was not adequately alleged that the bank did anything to directly support al Qaeda). Moreover, merely being a shareholder in an entity that engages in unlawful acts cannot create the basis for jurisdiction. *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832.

Due process also requires that the exercise of personal jurisdiction over a defendant be reasonable. When determining reasonableness, it is necessary to balance public policy considerations.  *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 811. For instance, " 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Id.*, *quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 115 (1987). Furthermore, a defendant in a foreign legal system faces unique burdens that carry "significant weight in assessing the reasonableness of stretching the long arm statute of personal jurisdiction over national borders." *Id.*

Thus, a "court may exercise personal jurisdiction over a defendant consistent with due process only when a defendant is a primary participant in intentional wrongdoing." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 809, *quoting In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 208 (2d Cir. 2003). To ensure due process, "[p]laintiffs must make a

prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiff's injuries." *Id.*

    Plaintiffs here have made no such showing. Therefore, the complaint should be dismissed for lack of personal jurisdiction over FIBS.[9]

## C. The Complaint Fails To State A Claim Against FIBS

    The complaint attempts to seek relief upon various federal claims, including the Anti-Terrorism Act, and RICO; as well as several common law counts including trespass, conspiracy, aiding and abetting, and contribution and indemnity.  Of the nine counts against FIBS[10], not one properly states a claim for relief.

    The complaint should be dismissed against FIBS pursuant to Rule 12(b)(6) on two grounds: (1) plaintiffs have not alleged any conduct by the bank that would subject the bank to the liability set forth in the complaint and (2) plaintiffs did not properly establish  that actions by the bank proximately caused the injuries, which resulted from the September 11 attacks.

    As this Court has held in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 833, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)," *quoting DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996). The Court is required, at this stage, to accept the complaint's factual assertions as true. However, the pleading must articulate facts that set forth the elements of liability, and that give rise to a "judicially recognizable right of action."  *See York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002); s*ee also In re: Livent, Inc. Noteholders Secs. Litig.*,

---

[9] There is also no basis for engaging in jurisdictional discovery with respect to FIBS. This Court has held that "Courts are not obligated to subject a foreign defendant to discovery…where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 812, *citing Daventree*, 349 F. Supp. 2d at 765.

[10] Count Three, Counts Five – Eight, and Count Ten do not allege claims against FIBS.

151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001); *Sonds v. St. Barnabas Hosp. Corp. Health Svcs.,* 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001).

In this case, the complaint contains only generalized and conclusory assertions of liability, which reveal no connection between FIBS and the terrorist activities directed against the United States. The touchstone to any liability here is proximate cause – to show in the complaint that the bank's acts caused plaintiffs' injuries and that it was reasonably foreseeable that such injuries would flow from those acts.  *See Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *see also In re: American Express Co. v. S'holder Litig.,* 39 F.3d 395, 401-02 (2d Cir. 1994).

Each of plaintiffs' claims requires a showing of cause-in-fact, as opposed to "but-for" causation, or other less stringent theories of causation. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 797 n. 26 (rejecting plaintiff's request for less stringent causation standard and holding that "the proper inquiry at this stage of the litigation is the presence of proximate causation").

The complaint here fails to allege that conduct by FIBS in any way caused the September 11 terrorist attacks.  There is no specific factual allegation that the bank knowingly gave funds, assistance, or material support to the terrorists. No allegation suggests that the attacks of September 11 were the direct or foreseeable result of any action by FIBS. Thus, nothing in the complaint supports a proximate cause finding as to the bank, and the complaint provides no proximate cause between actions by the bank and the injuries sustained by plaintiffs.  *See Holmes*, 503 U.S. at 268-69.  In a word, there is simply no allegation that relates FIBS to the September 11 attacks or the resulting injuries.[11]

---

[11] The complaint merely alleges that, at some period of time, al Qaeda operatives may have had funds on deposit in Sudan at FIBS and other Sudanese banks in which FIBS supposedly was a shareholder.  However, this Court rejected such a theory of liability.  *See In re: Terrorist Attacks on September 11, 2001, 349* F. Supp. 2d at 836.

**(i). Trespass**

In Count One of the complaint, plaintiffs attempt to assert a claim for property damage based upon trespass. "Trespass is the interference with a person's right to the possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner. The act must be intentional and the damages a direct consequence of the defendant's act." *Tomheim v. Federal Home Loan Mortg. Corp.*, 988 F. Supp. 279, 281 (S.D.N.Y. 1997). Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant. *See In re Air Crash Disaster at Cove Neck, Long Island, New York on January 25, 1990*, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[12]

Plaintiffs make a generalized allegation that FIBS assisted al Qaeda in the commission of an intentional and unlawful trespass. Complaint ¶¶ 147-48. Here again, plaintiffs have tendered no facts that would show FIBS itself intended any trespass. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 835 ([p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability."). Plaintiffs have also failed to allege that FIBS committed any wrongful act that resulted in any trespass; nowhere in the complaint do they identify what "material support" FIBS provided to al Qaeda or to anyone associated with the attacks of September 11. Furthermore, plaintiffs have once again failed to plead proximate causation as to FIBS. Accordingly, plaintiffs claim for trespass against FIBS should be dismissed.

---

Of course, if courts were to hold banks liable for the wrongful acts of their depositors, then the national and international banking system as we know it would cease to exist. *Id.*

[12] The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. *See Cooper v. Horn*, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant." *A.J. Cunningham Packing Corp., v. Congress Fin. Corp.*, 792 F.2d 330, 334 & n. 4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

**(ii). Anti-Terrorism Act**

In Count Two of  the complaint, plaintiffs attempt  to assert a claim under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), which provides a private cause of action for (1) a plaintiff who is a United States national,[13] (2) who is injured in his person, property, or business, (3) due to international terrorism.  18 U.S.C. §§ 2331-2333 (2000). This Court, in *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828, held that in order to adequately plead a claim under ATA, "a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." *See also Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1023 (7th Cir. 2002) ("*Boim II*").

This Court has also held that with regard to an ATA claim, "[u]nder a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act and that the attacks of September 11 were a reasonably foreseeable consequence of that conspiracy." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 829, *citing Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 895 (N.D. Ill. 2004) ("*Boim III*").

As discussed at length above, the complaint does not adequately plead any of these things: no knowledge of terrorist activities, no desire to help, no actual help, no agreement, and no consequential injury.  *See Smith ex re. Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) ("plaintiff must show knowledge of an intent to further the criminal acts and proximate cause"); *see also Boim II,* 291 F.3d at 1012 ("...funding, *simpliciter*, of a terrorist organization, is insufficient [to impose civil liability] because it sets too vague a standard, and because it does not require a showing of proximate cause").

---

[13]Foreign nationals have no standing under ATA, and therefore, these plaintiffs should be dismissed from this count.  *See, Burnett*, 1, 274 F. Supp. 2d at 105.

**(iii). RICO**

Count Four of the complaint alleges a RICO claim under 18 U.S.C. § 1962 against FIBS. Judge Robertson, in *Burnett I*, 274 F.Supp.2d at 100-02, dismissed similar RICO claims for lack of standing.  FIBS respectfully requests that this holding be treated as the law of the case in this action.  *See e.g., United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). The Second Circuit has also held that where the plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently…plaintiffs lack standing to bring RICO claims…." *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.* 191 F.3d 229, 239 (2d Cir. 1999).  Even in the absence of the controlling ruling in *Burnett I*, the complaint fails to identify any of the RICO elements required to be pled under *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17-19 (2d. Cir. 1983).

This Court has held that "an alleged RICO defendant must have had 'some part in directing' the 'operation or management' of the enterprise itself to be liable." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 827 (RICO claim against defendants was not established where the plaintiff did not allege "anything approaching active 'management or operation.' "), *quoting Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003).  The complaint fails to plead any other such allegations against FIBS.

Once more, the complaint's sparse allegations regarding the bank, even if true, would establish *none* of the requisite elements of a civil RICO claim.  The complaint alleges no predicate acts or agreement to commit predicate acts by FIBS; no pattern of racketeering activity engaged in by FIBS; no assent by FIBS to any alleged RICO conspiracy; no direction; no active management or operation; and no overt acts by FIBS in furtherance of any conspiracy.

The defects noted above are fatal to the RICO claims, and thus Counts Four and Five should be dismissed completely.

### (iv). Claims for Property Relief for Violating International Law

In Count Nine, plaintiffs attempt to assert a claim for "violation of international law." FIBS is unaware of any private cause of action arising from such a "violation." Once more, however, plaintiffs can point to no proximate link between actions by the bank and damages they have sustained.

### (v). Aiding and Abetting

Plaintiffs, in Count Eleven, seek to plead liability based on aiding and abetting. Under this theory, a plaintiff must allege that a defendant (1) had knowledge of a particular tort and (2) took intentional steps to substantially assist in its commission. *See Pittman by Pittman v. Grayson,* 149 F.3d 111, 123 (2d Cir. 1998); *Liberman v. Worden,* 701 N.Y.S.2d 419, 420 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that "defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").[14]

Additionally, this Court, along with the court in *Burnett I,* found "no basis for a bank's liability for injuries funded by money passing through it on routine banking business." *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 833 (granting defendant bank's

---

[14] These elements of aiding and abetting are similar under Pennsylvania law. *See Koken v. Steinberg*, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003). However, it is unclear whether an aiding and abetting claim is even recognized under Virginia law. *See A.G. Van Metre Const, Inc. v. NVKettler*, L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) (not recognizing cause of action in Virginia); *but see Sherry Wilson & Co., Inc. v. Generals Court, L.C.* 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

motion to dismiss after plaintiffs failed to allege general knowledge of the primary actor's conduct as required by concerted action liability); *see also Burnett I*, 274 F.Supp.2d at 109. [15]

### (vi). Punitive Damages

Plaintiffs also have failed to state a claim for punitive damages (Count Twelve). Punitive damages are a form of relief and not an independent cause of action. *See Cooper Indus. Inc. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001); *Smith v. County of Erie*, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### (vii). Contribution and Indemnity

Finally, in Count Thirteen, plaintiff Port Authority asserts a contribution and indemnity claim against defendants. At this time, no plaintiff has a right to assert a contribution claim. Contribution is a right among co-defendants, and does not run from defendants to plaintiffs. *See Goodkin v. United States*, 773 F.2d 19, 23 (2d Cir. 1985) ("the law is clear that claims for contribution concern only defendants"); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718-19 (2d Cir. 1978) ("Under the principle of contribution, a tortfeasor against whom a judgment is rendered seeks to recover seeks to recover proportional shares of the judgment from other joint tortfeasor whose negligence contributed to the injury and who are also liable to the plaintiff") (internal quotations omitted). At present, there is no judgment against the Port Authority in the separate lawsuits brought against it, so consideration of its contribution claim is premature.

Moreover, "[a] claim for indemnification and contribution must be premised on the defendant's breach of a duty to the plaintiff – whether grounded in express contract, implied contract, or tort." *St. Pierre v. Dyer,* 208 F.3d 394, 401 (2d Cir. 2000); *see also Calcutti v. SBU,*

---

[15] This Court has cautioned against stretching aider and abettor causation analysis to "terra incognita." *In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 798, *quoting Burnett II*, 292 F. Supp. 2d at 20. Instead, "[T]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." *Id*. at 801.

*Inc.*, 273 F. Supp. 2d 488, 497 (S.D.N.Y. 2003) (*citing Jordan v. Madison Leasing Co.*, 596 F. Supp. 707, 710 (S.D.N.Y. 1984) ("an action for contribution will not lie unless al the essential elements of a cause of action against the proposed contributor can be made out.").

Plaintiffs do not properly allege any claim against FIBS. Not only did plaintiffs fail to allege any wrongful acts by FIBS, they did not allege any specific conduct by FIBS or that FIBS owed a duty to any plaintiff. Furthermore, plaintiffs proffer nothing to support the proposition that any actions of FIBS proximately caused the damages they sustained. Therefore, Count Thirteen should be dismissed.

## V. CONCLUSION

For the above reasons, FIBS respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.[16]

Dated: New York, New York
April 27, 2005

Respectfully Submitted,

**JOHN F. LAURO, P.A.**

By: _____/s/_____
    John F. Lauro, Esq. (JFL-2635)
    Karena L. Nashbar, Esq. (Fla.Bar 697982)
    (not admitted in New York)

101 E. Kennedy Blvd., Suite 2180
Tampa, Florida 33602
Phone: (813) 222-8990
Fax: (813) 222-8991
*In New York, Reply To:*
300 Park Avenue, Suite 1700
New York, NY 10022
E-mail: jlauro@laurolawfirm.com

*Attorneys for Defendant*
*Faisal Islamic Bank-Sudan*

---

[16] FIBS requests that this action be dismissed with prejudice and without leave to replead. Plaintiffs have now filed successive complaints in this action, and there is no reasonable prospect that plaintiffs will ever be able to remedy their failure to effectively plead any of their claims against FIBS.  *See e.g. Electronics Communications Corp. v. Toshiba America Consumer*, 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile).  As demonstrated above, the 9/11 Report necessarily absolves the bank in any complicity in the September 11 attacks.  The complaint has not furnished any well-pled facts contradicting the conclusions of the 9/11 Report.  Plaintiffs have no good faith basis to assert any claim against FIBS - for one very important reason – the bank had no role in the tragic events of September 11, 2001.

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April, 2005, the forgoing Memorandum of Law in Support of Motion to Dismiss of Defendant Faisal Islamic Bank-Sudan was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.

_____/s/_____
John F. Lauro, Esquire

23