| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | 03 MDL 1570 (RCC) ECF Case |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | **RICO STATEMENT** **Applicable to Dubai Islamic Bank** |

*This document relates to :*   New York Marine and General Insurance Company v. Al Qaida, a/k/a Al Qaeda et al.
04 CV 6105 (RCC)

## RICO STATEMENT APPLICABLE TO <u>DUBAI ISLAMIC BANK</u>

Based on information currently available, plaintiff New York Marine and General Insurance Company submits this RICO Statement with respect to its claims against defendant Dubai Islamic Bank ("Dubai"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiff, absent discovery. Plaintiff therefore reserves the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and/or (d).

2.      This RICO Statement pertains to defendant Dubai. Dubai conducted or participated, directly or indirectly, in the affairs of the RICO enterprise, defendant Al Qaida a/k/a Al Qaeda ("Al Qaida"), through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaida's purposes through Dubai's financial and banking operations. Dubai's misconduct includes laundering money for Al Qaida, knowingly and intentionally providing financial services to Al Qaida (including maintaining and servicing Al Qaida bank accounts and accounts used to fund and support Al Qaida), and/or facilitating money transfers for Al Qaida and its members. Specifically, in 1999, the United States Government concluded that Dubai had permitted Osama bin Laden to launder money through Dubai. Shortly after the September 11th attacks, Dubai was named as a financial institution having links to Osama bin Laden, and as a result, the Central Bank of the United Arab Emirates froze the accounts and investments of Dubai. Furthermore, a preliminary 2002 analysis of the Dubai banking and financial services industry conducted by NATO revealed that "Al Qaida had previously used the Dubai Islamic Bank" and other means "to fund the bombings of the American embassies in Kenya and Tanzania."

Dubai's knowing and intentional conduct enabled Al Qaida to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September

11th attacks that injured plaintiff. Based on the foregoing, the basis of Dubai's liability is 18 U.S.C. § 1962(c) and (d).

3. All known wrongdoers are named as defendants in this action. Plaintiff separately will file RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attacks, however, much information is unavailable to plaintiff, and the identities of other wrongdoers may be revealed through discovery. Plaintiff therefore reserves the right to amend this RICO Statement as information is learned through discovery and otherwise.

4. The alleged victim is the plaintiff, New York Marine and General Insurance Company. Plaintiff was injured as a result of insurance payments it made for claims filed by its insureds, airline companies which owned and operated the commercial airliners which were hijacked and used as weapons in the September 11th attacks.

5. (a) <u>List of Predicate Acts and Specific Statutes Violated</u>

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B) <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|
| Money laundering | 18 U.S.C. §1957 |
| Mail Fraud | 18 U.S.C. §1341 |
| Wire Fraud | 18 U.S.C. §1343 |

(b) <u>Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts</u>

From the mid-1990's through September 11, 2001, Dubai facilitated, materially supported and substantially assisted Al Qaeda's purposes through Dubai's financial and banking operations, as described above. Dubai laundered money for Al Qaeda; knowingly and intentionally provided financial services to Al Qaeda members, including maintaining and servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda; and facilitated weapons and military equipment purchases and money transfers by and for Al Qaeda. In providing the described financial and material support and substantial assistance to Al Qaeda, Dubai utilized interstate and international faxes, telephones, wire transfers and transmissions, and the United States and international mails.

(c) Plaintiff's RICO claims are based in part on the predicate offenses of wire fraud and mail fraud. Up to the time of the September 11th attacks, Dubai utilized interstate and international faxes, telephones, wire transfers and transmissions, and the United States and international mails to facilitate, provide financial and material support and provide substantial assistance to Al Qaeda. The financial and banking support and assistance provided to Al Qaeda by Dubai assisted the business and financial transactions in which Al Qaeda engaged to further its operations and purposes. Al Qaeda relied upon

2

Dubai, among others in a global network of banks and financial institutions, to generate material support to continue its terrorist operations.

The creation and maintenance of a financial network is essential to Al Qaeda. Dubai used its banking and financial operations to assist Al Qaeda to cloak its financial network in legitimacy.

Further, given the complicated nature of Dubai's and others' wrongdoing that led to the September 11th attacks, additional information relating to the circumstances constituting Dubai's wire and mail fraud activities likely will be revealed through discovery. Plaintiff therefore reserves the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f) The predicate acts conducted by Dubai form a pattern of racketeering in that they are repeated and continuous, including funneling millions of dollars to Osama bin Laden and Al Qaeda in the mid to late-1990s. From the mid-1990's through September 11, 2001, Dubai consistently, evenly, constantly, laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity.

(g) The predicate acts relate to each other as a part of a common plan because each act of money laundering, wire and mail fraud and providing material support of terrorism allowed Dubai to provide financial and other assistance to Al Qaeda, which assistance culminated in the September 11th attacks.

6. (a) The Enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members (the "Al Qaida Enterprise").

(b) The Al Qaida Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide. Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

Al Qaeda's stated purpose is to overthrow secular non-muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by Islamic law. As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah,* Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-

3

democratic purpose, the September 11th attacks being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia,* the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.

At the time of the September 11th attacks, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, including Dubai, and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

(c) Dubai does not appear to be an employee, officer or director of the Al Qaida Enterprise.

(d) Dubai associated itself with the Al Qaida Enterprise.

(e) Dubai is a entity that is separate and distinct from the Al Qaida Enterprise, but Dubai associated itself with the Al Qaida Enterprise.

(f) Not applicable.

7. As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Dubai holds itself out as a legitimate banking and financial institution. It continues to operate as a banking and financial institution through its various subsidiaries and affiliated entities located around the world. The pattern of racketeering activity conducted by Dubai is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attacks.

8. Al Qaeda conducts terrorism around the world. Dubai conducted the racketeering activity through its banking and financial operations, including provision of financial services to Al Qaeda members, maintenance and service of Al Qaeda bank accounts and accounts used to fund and support Al Qaeda, and facilitation of money transfers by and

for Al Qaeda. The racketeering activity conducted by Dubai substantially assists and materially supports Al Qaeda' terrorist activity. The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens, all of which are funded and/or materially supported by the racketeering activities described herein.

9.   Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10.   Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." The Al Qaida Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attacks, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11.   Not applicable.

12.   Not applicable.

13.   Change.

14.   Change.

15.   The injuries suffered by the plaintiff resulting from the September 11th attacks include damage to the physical property and property interests of their insureds, resulting in the payment of insurance proceeds for said damage.

16.   Dubai's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, as described herein and in plaintiff's First Amended Complaint, enabled the Al Qaida Enterprise to plan, orchestrate, and carry out the September 11th attacks that injured the plaintiff. Therefore, the conduct of Dubai proximately resulted in the September 11th attacks. The plaintiff suffered injury by reason of the above conduct of Dubai.

17.   Dubai is jointly and severally liable for an amount in excess of $2,863,347.98 in damages for plaintiff's injuries.

18.   <u>Federal Causes of Action</u>

| **Count III** | 18 U.S.C. §1962 |
| **Count V** | 18 U.S.C. §2333 |

19.   <u>Pendant State Claims</u>

| **Count I** | Trespass |
| **Count II** | Conspiracy |
| **Count IV** | Aiding and Abetting |

5

| Count VI | Negligence |
|---|---|
| Count VII | Punitive Damages |

20.    None at this time.  If any additional information is learned through discovery, it shall be provided.

Dated:  April 29, 2005

                                      Respectfully submitted,

                                      _____S/_____

Frank J. Rubino, Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
Attorneys for Plaintiff
NEW YORK MARINE AND GENERAL
INSURANCE COMPANY
355 Lexington Avenue
New York, New York 10017
(212) 983-8500

6