UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
: 03 MD 1570 (RCC)
In re Terrorist Attacks on September 11, 2001    : ECF Case
:
:
------------------------------------------------------------x

This document relates to: *Continental Casualty Co. et al. v. Al Qaeda Islamic Army*, 04-CV-5970 (RCC)


RICO STATEMENT APPLICABLE TO
DEFENDANT DUBAI ISLAMIC BANK


Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendant Dubai Islamic Bank. Given the complicated nature of the wrongdoing that led to the terrorist attack of September 11, 2001 (the "Attack"), much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

2.     This RICO Statement pertains to defendant Dubai Islami Bank. The alleged misconduct and basis for liability for this defendant are set forth in Exhibit A.

3.     All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these other defendants. Given the complicated nature of the wrongdoing that led to the Attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.     The victims are Continental Casualty Company, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania. The plaintiffs are all insurance companies which insured properties and businesses which was located at or near the World Trade Center premises in New York City and were damaged as a result of the Attack. Plaintiffs' insureds suffered damages to their property interests and damages to their ability to conduct their business. Plaintiffs, pursuant to policies that were issued to the insureds, made payments to their insureds and as a result became subrogated to the insureds and are now permitted to bring these claims for the damages to their insureds' property and business interests as well as for the damage to their own business and property.

5. (a)

| | |
|---|---|
| conspiracy to commit murder | New York Penal Law § 105.15; New York Penal Law § 125.25(xi) |
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| providing material support of terrorism | 18 U.S.C. §§ 2332B, 2339A and 2339B |

(b) From the mid-1990's through September 11, 2001, defendant Dubai Islamic Bank conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaeda movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack.

Dubai Islamic Bank used its banking and financial operations to knowingly and intentionally provide financial services to al Qaeda and its members, as well as organizations which it knew were providing support to the Enterprise.

Dubai Islamic Bank undertook the above-named actions as part of a conspiracy to commit murder and arson, in that it knew that the Enterprise in which it was participating, the al Qaeda movement to perpetrate radical Muslim terrorism, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied.

Dubai Islamic Bank agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts in furtherance of a pattern of racketeering activity in connection with the Enterprise.

(c) Plaintiffs' RICO claims are based in part on the predicate offenses of wire fraud and mail fraud. From the mid-1990's through September 11, 2001, defendant Dubai Islamic Bank utilized interstate and international faxes, telephones, wire transfers and transmissions, and the United States and international mails to facilitate, provide financial and material support and provide substantial assistance to al Qaeda. The financial support and assistance provided to al Qaeda by defendant Dubai Islamic Bank assisted the business and financial transactions in which al Qaeda engaged to further its operations and purposes. Al Qaeda relied upon defendant, among others, to generate material support to continue its terrorist operations and to conceal the nature

62489                                        2

and extent of financial assistance provided to al Qaeda. These activities assisted al Qaeda's ability to plan over a number of years, orchestrate, and ultimately carry out the Attack that injured plaintiffs. The creation and maintenance of a financial network is essential to al Qaeda.

Further, given the complicated nature of the wrongdoing by defendant Dubai Islamic Bank and others that led to the events of September 11, 2001, additional information relating to the circumstances constituting the activities of defendant Dubai Islamic Bank likely will be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are repeated, continuous, and are a part of the Enterprise's regular way of doing business. From the mid-1990s through September 11, 2001, defendant Dubai Islamic Bank consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments.

(g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each predicate allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaeda, which conspiracy culminated in the Attack.

6.

(a) The enterprise (the "Enterprise") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Defendant Dubai Islamic Bank fit neatly into this framework by providing funding to

and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

    (c)    No.

    (d)    Defendant Dubai Islamic Bank is associated with the Enterprise.

    (e)    Defendant Dubai Islamic Bank is a member of the Enterprise and is separate and distinct from the Enterprise.

    (f)    The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business.  Defendant Dubai Islamic Bank adopted the goal of furthering and/or facilitating the criminal activity of the Enterprise, which criminal activity culminated in the Attack.

7.    The pattern of racketeering activity conducted by defendant Dubai Islamic Bank is separate from the existence of radical Muslim terrorism, but was a necessary component to the Attack.

8.    The Enterprise conducts terrorism all over the world; the racketeering activity conducted by defendant Dubai Islamic Bank furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9.    The Enterprise benefits by having sufficient resources available to spread its ideology, to suppress other forms of Islam, and to attack its perceived enemies.

10.    The Enterprise, and the racketeering activities conducted by defendant Dubai Islamic Bank rely heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce, by imposing serious damage upon the national economy.

11.    Not applicable.

12.    Not applicable.

13.    (a) The Enterprise "employs" certain individuals, only a few of whose identities are known, including defendant Bin Ladin.

    (b) The liable "person" is defendant Dubai Islamic Bank and the "enterprise" is the association-in-fact of the defendants.

14.    The history of the conspiracy behind radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After

being turned out of the Sudan in May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including defendant Dubai Islamic Bank, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like defendant Dubai Islamic Bank.  Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including defendant Dubai Islamic Bank.  In order to identify nineteen individuals willing, able and competent to carry out the Attack, Al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by defendant. Dubai Islamic Bank.  Defendant Dubai Islamic Bank also, with knowledge and intent, agreed to the overall objectives of the conspiracy, agreed to commit at least two predicate acts and agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out.

16. Defendant Dubai Islamic Bank's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, enabled the Enterprise to plan, orchestrate, and carry out the Attack that injured plaintiffs.  Therefore, the conduct of defendant Dubai Islamic Bank proximately resulted in the Attack.  Plaintiffs suffered injury to their property by reason of the above conduct of defendant Dubai Islamic Bank.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff.

18. RICO, 18 U.S.C. 18 §§ 1962(c), 1962(d).

19. Trespass.

20. Not applicable.

62489

5

## **EXHIBIT A**

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Dubai Islamic Bank | Dubai Islamic Bank has knowingly and repeatedly lent material support to the Enterprise, including the knowing and intentional provision of financial and banking services to several known al Qaida operatives. So pervasive and apparent was the Bank's money laundering on behalf of the Enterprise that in 1999, American officials visited Dubai to demand that the government take steps to end its lax supervision of the Bank. According to a July 8, 1999 State Department press conference, Bank involvement with terrorist money laundering was the key concern.<br><br>That same day, the New York Times reported that the CIA had obtained evidence that Osama bin Ladin had been allowed to funnel money through the Dubai Islamic Bank, and a subsequent NATO analysis confirmed that al Qaeda had used Dubai Islamic Bank to fund the bombings of the American embassies in Tanzania and Kenya.<br><br>Shortly after the 9/11 Attack, the Central Bank of the UAE froze the accounts of various persons and organizations suspected of ties with the Enterprise, including Dubai Islamic Bank, mirroring the regulatory alert issued by Luxembourg authorities announcing the Bank's ties to Osama bin Ladin.<br><br>Dubai Islamic Bank was directly involved in the 9/11 attacks. Mustafa Ahmed al-Hisawai (Sheikh Saeed), bin Ladin's chief financial officer, lived in the Emirates from June 2001 until September 11, 2001, when he fled for Karachi, Pakistan. U.S. authorities have identified at least $500,000 that flowed from his accounts to the 19 hijackers, including hundreds of thousands of dollars in money transfers from Dubai Islamic Bank to two of the hijackers since at least June 2000, to pay | §1962(c)<br>§1962(d) |

|  | for their flight training and expenses.  These transactions were carried out in violation of international standards adopted to prevent money laundering, including the 40 Recommendations on Money Laundering adopted in 1990 by the International Financial Action Task Force, of which the UAE is a member.<br><br>Dubai Islamic Bank has been a key shareholder in other banks well-known for their involvement in laundering money on behalf of the Enterprise, including the Bank of Credit and Commerce International (BCCI), Tadamon Islamic Bank and Baraka Islamic Bank, an affiliate of Al Baraka Bank.<br><br>Despite all these warnings, Dubai Islamic Bank continued to maintain those accounts and it knowingly provided financial services and other forms of material support to al Qaeda, while disregarding warnings and refusing to adhere to even minimal banking industry standards designed to thwart the support of terrorist networks like the Enterprise through anti-terrorist and money laundering safeguards to "know your customer" regulations.<br><br>Dubai Islamic Bank has laundered money for al Qaeda, knowingly and intentionally provided financial services to al Qaeda including the maintenance of bank accounts, and directly facilitated the training of the September 11 hijackers.<br><br>Dubai Islamic Bank thereby has, for a period of many years, provided critical financial and logistical support to al Qaeda to support that terrorist organization's global jihad.  The September 11th Attack was a direct, intended and foreseeable product of Dubai Islamic Bank's participation in al Qaeda's jihadist campaign. |  |