**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:          Continental Casualty Co., et al. v. Al Qaeda, et al.
                                   (1:04-cv-5970) (RCC)

                                   New York Marine and General Ins. Co. v. Al
                                   Qaida, et al. (1:04-cv-6105) (RCC)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *DMI Administrative Services S.A.*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. ...............................................1

ARGUMENT ......................................................................................................................3

I      THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A..............................3

      A.    The Complaints Fail To Make Out A *Prima Facie* Case For Personal
           Jurisdiction Over DMI S.A. .........................................................................4

      B.    Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting
           Provide No Basis For Personal Jurisdiction Over DMI S.A. .........................8

      C.    The *Continental Casualty* Plaintiffs' Generalized Allegations Of
           Actions By Putative Subsidiaries Of DMI S.A. Are Insufficient
           To Support An Assertion Of Personal Jurisdiction Over DMI S.A. ..............10

II     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ...........................12

      A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions
           By DMI S.A. Proximately Caused Plaintiffs' Injuries. ..............................15

      B.    Plaintiffs Have Failed To Plead Facts Sufficient To  State Any Of Their
           Causes of Action Against DMI S.A. ..........................................................17

           1.    Trespass (*Continental Casualty* Count 1; *New York Marine* Count 1)..............18

           2.    RICO (*Continental Casualty* Counts 2 & 3; *New York Marine* Count 3)............18

           3.    Conspiracy and Aiding and Abetting (*New York Marine* Counts 2 &
               4)..........................................................................................................21

           4.    Anti-Terrorism Act (*New York Marine* Count 5)................................24

            5.    Negligence (*New York Marine* Count 6). ..............................................24

           6.    Punitive Damages (*New York Marine* Count 7)...................................25

CONCLUSION.................................................................................................................25

TABLE OF AUTHORITIES

Cases

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
  1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992)................................................................21

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
  792 F.2d 330 (3d Cir. 1986)...........................................................................................18

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
  885 F. Supp. 434 (E.D.N.Y. 1995).................................................................................18

Alexander & Alexander of New York, Inc. v. Fritzen,
  68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986)...........................................................21, 23

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
  228 F.3d 429 (3d Cir. 2000)...........................................................................................21

In re American Express Co. S'holder Litig.,
  39 F.3d 395 (2d Cir. 1994).............................................................................................16

American Fuel Corp. v. Utah Energy Dev. Co.,
  122 F.3d 130 (2d Cir. 1997)...........................................................................................13

Asahi Metal Indus. Co. v. Superior Ct., Solano Cty.,
  480 U.S. 102 (1987).........................................................................................................4

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
  171 F.3d 779 (2d Cir. 1999).............................................................................................5

Barr v. Abrams,
  810 F.2d 358 (2d Cir. 1987)...........................................................................................15

Bellepointe v. Kohl's Dep't Stores, Inc.,
  975 F. Supp. 562 (S.D.N.Y. 1997)...................................................................................6

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
  291 F.3d 1000 (7th Cir. 2002)........................................................................................24

Boyanowski v. Capital Area Intermediate Unit,
  215 F.3d 396 (3d Cir. 2000)...........................................................................................21

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985)......................................................................................................4, 5

Burnett v. Al Baraka Inv. and Dev. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003)..................................................................................24

Burnett v. Al Baraka Inv. and Dev. Corp.,
  292 F. Supp. 2d 9 (D.D.C. 2003)......................................................................................5

Calder v. Jones,
    465 U.S. 783 (1984) ................................................................................................4, 6

In re Cendant Corp. Sec. Litig.,
    190 F.R.D. 331 (D.N.J. 1991) ......................................................................................17

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998) ...........................................................................................5

Chudasama v. Mazda Motor Corp.,
    123 F.3d 1353 (11th Cir. 1998) ..................................................................................15

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ..........................................................................................18

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ........................................................................ 13, 14, 16, 17, 21

Delk v. Columbia/HCA Healthcare Corp.,
    259 Va. 125, 523 S.E.2d 826 (2000) ...................................................................... 24, 25

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................................20

Eastern States Health & Welfare Fund v. Phillip Morris, Inc.,
    188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) ...........................................19

Flanagan v. Shively,
    783 F. Supp. 922 (M.D. Penn. 1992)..........................................................................23

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) ...........................................................14

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ...........................................................14

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) .......................................................................................21

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ...................................................................................21

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ..........................................................................................22

Holmes v. Securities Investor Prot. Corp.,
    503 U.S. 258 (1992) ............................................................................................. 15, 19

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) .............................................................21

Int'l Brotherhood of Teamsters v. Phillip Morris, Inc.,
    196 F.3d 818 (7th Cir. 1999)......................................................................................19

JBI Indus. Inc. v. Suchde,
    2000 WL. 1174997 (S.D.N.Y. Aug. 17, 2000) ...................................................................13

Jacobs v. Felix Bloch Erben Verlag fr Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ......................................................................... 11, 12

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ...............................................................4, 6, 7, 10, 11, 12

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) .....................................................................24

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) ......................................................................................... 14, 15

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ..................................................................................23

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d  Cir. 1999) .................................................................................... 15, 19

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ....................................................................................8

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972) ..............................................................................................7

Leeds v. Meltz,
    85 F.3d 51 (2d Cir. 1996) ...................................................................................................15

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975) ...................................................................................4, 6, 7, 8, 12

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004) ................................................................................21

Liberman v. Worden,
    701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dept. 2000) ......................................................23

MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) .................................................................................................13

Madison Models, Inc. v. Casta,
    2003 WL 21978628 (S.D.N.Y. Aug. 20, 2003) .................................................................12

Martin v. Evans,
    551 Pa. 496, 711 A.2d 458 (1998) .....................................................................................24

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ...............................................................................................25

Mende v. Milestone Tech. Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ............................................................................4, 7

Moss v. Morgan Stanley Inc.,
  719 F.2d 5 (2d Cir. 1983) ...........................................................................................20

Murphy Bros. v. Michetti Pipe Stringing,
  526 U.S. 344, 119 S. Ct. 1322 (1999) ..........................................................................3

Murray v. Miner,
  74 F.3d 402 (2d Cir. 1996) .........................................................................................13

Nat'l Org. for Women, Inc. v. Scheidler,
  510 U.S. 249 (1994) ....................................................................................................18

National Asbestos Workers Med. Fund v. Phillip Morris, Inc.,
  74 F. Supp. 2d 221 (E.D.N.Y. 1999) ...........................................................................19

Papasan v. Allain,
  478 U.S. 265 (1986) ....................................................................................................16

Paul v. Howard Univ.,
  754 A.2d 297 (D.C. Ct. App. 2000) .............................................................................23

Pittman v. Grayson,
  149 F.3d 111 (2d Cir. 1998) .........................................................................................9

Powell v. Jarvis,
  460 F.2d 551 (2d Cir. 1972) .......................................................................................14

Pyramyd Stone Int'l Corp. v. Crosman Corp.,
  1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) ...........................................................11, 12

Reves v. Ernst & Young,
  507 U.S. 170 (1993) ....................................................................................................20

Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.,
  99 F. Supp. 2d 174 (D.R.I. 2000) ................................................................................19

Rose v. Goldman, Sachs & Co.,
  163 F. Supp. 2d 238 (S.D.N.Y. 2001) ..........................................................................15

S.E.C. v. Unifund SAL,
  910 F.2d 1028 (2d Cir. 1990) ........................................................................................7

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
  2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ..................................................21, 23

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002) ...................................................................11, 12

Skipworth v. Lead Indus. Ass'n, Inc.,
  690 A.2d 169 (Pa. 1997) .............................................................................................22

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) ...............................................................21

Smith v. County of Erie,
  295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ...............................................25

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) ................................................................................. 14, 17

Sodepac S.A. v. Choyang Park In Rem,
  2002 WL 3129641 (S.D.N.Y. Oct. 10, 2002) .............................................................6

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
  151 F. Supp. 2d 303 (S.D.N.Y. 2001)........................................................................17

Suarez v. Underwood,
  103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ................................22

In re Terrorist Attacks on Sept. 11, 2001,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................................................3, 4, 5, 6, 7,
  ...............................................................................8, 9, 12, 13, 15,
  ...............................................................................17, 20, 24, 25

Terrydale Liquidating Trust v. Gramlich,
  549 F. Supp. 529 (S.D.N.Y. 1982) ............................................................................9

Tornheim v. Federal Home Loan Mortg. Corp.,
  988 F. Supp. 279 (S.D.N.Y. 1997) ............................................................................18

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
  241 F.3d 135 (2d Cir. 2001) ...................................................................................4

U.S. v. Yousef,
  327 F.3d 56 (2d Cir. 2003) ....................................................................................24

Virtual Countries, Inc. v. Republic of South Africa,
  300 F.3d 230 (2d Cir. 2002) ...................................................................................14

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
  751 F.2d 117 (2d Cir. 1984) ............................................................................. 10, 11

Wantanabe Realty Corp. v. City of N.Y.,
  2003 WL. 22862646 (S.D.N.Y. 2003) ......................................................................18

Whitaker v. American Telecasting, Inc.,
  261 F.3d 196 (2d Cir. 2001) ...................................................................................4

York v. Ass'n of the Bar of the City of New York,
  286 F.3d 122 (2d Cir. 2002) ...................................................................................17

Statutes and Other Authority

18 U.S.C. §§ 2331-2333 (2000)........................................................................................................24

Fed. R. Civ. P. 8 ...........................................................................................................13, 14, 15, 17

Fed. R. Civ. P. 12 .........................................................................................................1, 3, 4, 13, 17

18 U.S.C. § 1962.............................................................................................................................20

8 N.Y. Jur., Conspiracy, § 19 (1982) ...................................................................................... 22, 23

## INTRODUCTION

The Complaints by the *Continental Casualty* and *New York Marine* plaintiffs (collectively "Plaintiffs") propound sweeping allegations of grave wrongdoing by the named defendants, including movant DMI Administrative Services S.A. ("DMI S.A."). These pleadings fail, however, to proffer any allegations of fact that, if proven, would show any connection between DMI S.A. and al Qaeda or, for that matter, any contact between DMI S.A. and the United States. In lieu of factual allegations, Plaintiffs offer conclusory and boilerplate assertions that -- as the Court's Opinion and Order of January 18, 2005 establishes -- are insufficient to withstand a motion to dismiss pursuant to either Rule 12(b)(2) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in the absence of any averment connecting DMI S.A. to al Qaeda, the events of September 11, 2001, or the United States, Plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

The *Continental Casualty* Complaint contains only the sparsest of allegations regarding DMI S.A., which are restated below in their entirety:

- "Dar Al Maal Al Islami (or 'House of Islamic Money' or 'DMI') is the registered name for DMI Administrative Services S.A. The company is headquartered in Cointrin, Switzerland." Continental Casualty First Amended Complaint ("*Contl. Cas.* FAC") ¶ 378.

- "DMI was founded in 1981 to foster the spread of Islamic banking across the Muslim world . . ." Id. ¶ 268. "DMI operates broadly in Islamic countries, and investments are conducted strictly under Islamic rules. DMI's actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and al Qaeda." Id. ¶ 378.

- "DMI has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and al Shamal Islamic Bank in the Sudan." Id. ¶ 379.

- "DMI owns 100% of Islamic Investment Bank of the Gulf[, which] . . . is the main shareholder of Faisal Islamic Bank of Sudan." Id. ¶ 380.

- "Faisal Islamic Bank - Sudan was [] implicated as an al Qaeda sponsor during the 2001 United States trial on the 1998 embassy bombings in Africa as managing bank accounts for al Qaeda operatives." Id. ¶ 66; see also id. ¶ 269.

- "Faisal Islamic Bank of Sudan was one of the five main founders of al Shamal Islamic Bank." Id. ¶ 268; see also id. ¶¶ 53, 54, 65. "[Osama] Bin Laden used al Shamal Bank for the funding of his al Qaeda network leading up to the 1998 United States Embassy bombings in Africa." Id. ¶ 269; see also id. ¶¶ 57, 58, 382. "[A]t least six al Qaeda operatives held bank accounts in al Shamal Islamic Bank under their real names." Id. ¶ 63. "Al Qaeda operatives received monthly checks of several hundred dollars from al Shamal Islamic Bank accounts and transferred $100,000.00 from al Shamal Islamic Bank to an al Qaeda representative in Jordan." Id. ¶ 64.

- Faisal Islamic Bank Sudan was the "main shareholder of Tadamon Islamic Bank as of 1995." Id. ¶ 69. "Tadamon Islamic Bank facilitated, materially sponsored, aided and abetted, and/or conspired with al Qaeda and its international terrorists and financial operations." Id. ¶ 70.

The only assertion mentioning DMI S.A. in the *New York Marine* Complaint alleges in conclusory fashion that:

- "DMI Administrative Services S.A. [and numerous others] . . . have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." New York Marine First Amended Complaint ("*NY Marine* FAC") ¶ 45.

As the above recitation makes clear, Plaintiffs do not allege *any* facts showing that DMI S.A. ever entered into any transaction with, raised any funds for, or transferred any money or property to anyone at all, much less any facts showing that DMI S.A. ever "rais[ed], launder[ed], transfer[red], distribut[ed], or hid[] funds for" bin Laden and al Qaeda "in order to support their terrorist activities." *Contl. Cas.* FAC ¶ 26. Nor do Plaintiffs allege *any* facts showing that DMI S.A. ever entered into any sort of agreement at all, let alone an agreement "to attack the United States, murder United States citizens, destroy and damage the property of United States citizens and disrupt the United States' economy . . . ." Id. ¶ 27. Indeed, in their Complaints, Plaintiffs fail to allege any communication between DMI S.A. and anyone associated with al Qaeda; any transfer of money to or from DMI S.A., by or to anyone associated with al Qaeda; any facts that would show that DMI S.A. aided al Qaeda or abetted any of al Qaeda's activities; any facts that could be read to imply DMI S.A.'s supposed intent to cause an attack on the United States; or any facts connecting DMI S.A. *in any way whatsoever* with the events of September 11th.

The only putative nexus between DMI S.A. and terrorism alleged by the *Continental Casualty* plaintiffs is that members of al Qaeda had bank accounts at Faisal Islamic Bank (Sudan) ("FIBS"), al Shamal Bank, and Tadamon Islamic Bank, purported subsidiaries of DMI S.A., in the mid-1990s, and that these supposed subsidiaries "were used by" al Qaeda and that persons associated with al Qaeda received money through accounts at these institutions. Yet, even if any of these three entities were a subsidiary of DMI S.A. -- which DMI S.A. categorically denies -- this Court has already found that these types of allegations are insufficient to state a claim. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 830, 832-36 (S.D.N.Y. 2005). The *New York Marine* plaintiff, for its part, has alleged no specific facts as to DMI S.A. *whatsoever*.

## ARGUMENT

All claims against DMI S.A. should be dismissed for two reasons. First, the claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over DMI S.A. Second, since Plaintiffs fail to allege any connection between DMI S.A. and the events of September 11, the Complaints also fail to state a claim against DMI S.A., warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## I

## THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, a *société anonyme* organized under the laws of Switzerland. The Complaints fail to allege any facts that could be read to show that DMI S.A. has had any contacts with the United States or any role in the terrorist attacks of September 11, 2001. Thus, Plaintiffs have not made the *prima facie* showing of minimum contacts necessary, for due process purposes, to invoke personal jurisdiction over DMI S.A. Requiring DMI S.A. to respond and defend itself in this Court in these circumstances would be wholly inconsistent with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Ct., Solano Cty., 480 U.S. 102, 113 (1987). Thus, the claims against DMI S.A. should be dismissed in their entirety.

---

[1]   Plaintiffs have also failed to effect service upon DMI S.A., warranting dismissal of their actions pursuant to Fed. R. Civ. P. 12(b)(5). See Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 119 S.Ct. 1322 (1999).

A.     The Complaints Fail To Make Out A *Prima Facie*
       Case For Personal Jurisdiction Over DMI S.A.

Plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.  See Whitaker v. American Telecasting. Inc., 261 F.3d 196, 208 (2d Cir. 2001) ("The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."); In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.  To survive such a motion, Plaintiffs must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See Whitaker, 261 F.3d at 208; In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries").  Moreover, "conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) ("[T]he bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . .").  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.

Whether a plaintiff asserts that a Court has general or specific jurisdiction over a defendant, constitutional due process requires that a plaintiff allege facts demonstrating that a defendant has at least "minimum contacts [with the forum][2] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (quoting Calder v. Jones, 465

---

[2]     Three of Plaintiffs' causes of action against DMI S.A., -- under the Anti-Terrorism Act ("ATA") (*New York Marine* Count 4) and RICO (*Continental Casualty* Counts 2 & 3 and *New York Marine* Count 3) -- are brought pursuant to federal statutes permitting nationwide service of process.  The remaining five causes are based upon state law.  If personal jurisdiction over DMI S.A. is to be had with regard to the state law claims, it must be found under the long-arm jurisdictional statutes of New York, Pennsylvania, and/or Virginia. Plaintiffs must allege facts sufficient to show minimal contacts for due process purposes, regardless of whether a particular claim is brought under a federal statute providing for nationwide service of process or pursuant to general or specific jurisdiction according to state law.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 805-06, 809; see also Burger King, 471 U.S. at 471-72; Burnett v. Al Baraka Inv. and Dev. Corp., 292 F. Supp. 2d 9, 21 (D.D.C. 2003).

U.S. 783, 788 (1984) (internal quotation marks omitted)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum . . . ."); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998).

In the instant case, Plaintiffs fail to allege *any* contact of *any* kind between DMI S.A. and New York, any other state, or the United States. See *Contl. Cas.* FAC ¶¶ 378-79 (alleging that DMI S.A. is a Swiss company with foreign subsidiaries); *NY Marine* FAC ¶ 45. Plaintiffs cannot make any such allegation because DMI S.A. has never had any substantive contacts with this country. DMI S.A. has never done business, maintained a place of business, or been licensed to do business in any U.S. jurisdiction, and Plaintiffs have propounded no such allegation. Nowhere do Plaintiffs aver that DMI S.A. has ever entered into any contracts with any U.S. entities or any contracts to be performed in whole or in part in the U.S., or that DMI S.A. has ever entered into any partnership, joint venture, or other such relationship with a U.S. entity, invested in any U.S. entity, or had any U.S. investors or clients. Plaintiffs do not contend that DMI S.A. has maintained an agent for service of process in the U.S., brought an action in a U.S. Court, or otherwise submitted itself to the jurisdiction of any U.S. authority in any way. In short, Plaintiffs tender nothing that could conceivably be read to assert that DMI S.A. has had the purposeful contacts necessary to establish general personal jurisdiction. See Burger King, 471 U.S. at 471-73; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 786-89 (2d Cir. 1999).

Instead, the *Continental Casualty* plaintiffs offer the solitary and unsupported assertion that "all defendants were associated with an enterprise engaged in, and whose activities affected, interstate commerce." *Contl. Cas.* FAC ¶ 609.[3] On its face, this statement appears to assert both general and specific personal jurisdiction over DMI S.A. (and all other defendants). However, the *Continental Casualty* plaintiffs have tendered no allegations of fact to support the proposition that DMI S.A. has had anything to do with "an enterprise engaged in, and whose activities affected,

---

[3]   The *New York Marine* plaintiff does not allege that DMI S.A.'s supposed conduct had any affect at all on interstate commerce.

interstate commerce." Id.  Such a conclusion of law, though couched as a factual allegation, does not suffice to make out the *prima facie* showing of minimum contacts necessary for this Court to exercise personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 813-14 (granting motion to dismiss for lack of personal jurisdiction and denying jurisdictional discovery because "[c]onclusory allegations that [the defendant] donated money to charities, without specific factual allegations that [defendant] knew they were funneling money to terrorists, do not suffice."); see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege facts supporting said conclusion); Lehigh Valley, 527 F.2d at 93-94 (same); Sodepac S.A. v. Choyang Park In Rem, 2002 WL 3129641, at *4 (S.D.N.Y. Oct. 10, 2002) ("[L]egal conclusions couched as factual allegations are not facts and cannot substitute for them."); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state a *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction").

In the absence of allegations supporting general personal jurisdiction over DMI S.A., Plaintiffs apparently rely on a theory of specific jurisdiction, *i.e.*, that personal jurisdiction over DMI S.A. may be exercised because DMI S.A.'s tortious actions (whatever those unalleged actions might have been) had a direct effect in the United States.  In order to invoke specific personal jurisdiction, Plaintiffs must properly allege some tortious act by the defendant, and allege facts showing that the defendant "expressly aimed" such a tortious act at the forum.  See Calder, 465 U.S. at 789 (1984); In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims.").  Here, Plaintiffs do not allege any particular wrongful conduct by DMI S.A. at all.  Nor do they assert any facts indicating that DMI S.A. was aware that any of its actions (whatever they might have been) would affect New York and/or the United States in any way, let alone that DMI S.A. *directed* any wrongful actions toward the United States.  Plaintiffs tender nothing in support of their sweeping claim that DMI S.A. (and hundreds of other defendants) engaged in "racketeering activities . . . for the purpose of furthering defendants' common scheme to commit acts of terrorism against the United States, its

nationals and its allies," see *Contl. Cas.* FAC ¶ 612, or in support of their allegation that DMI S.A. and other defendants committed "acts that involve murder and robbery" and other RICO predicate offences, id. ¶ 611, or in support of their generalized averment that "defendants [] commit[ed] acts of international terrorism against the United States." *NY Marine* FAC ¶ 51.  In other words, Plaintiffs' generalized assertions of tortious activity by hundreds of defendants, which activity putatively had direct effects in the United States, are wholly conclusory and thus insufficient to confer personal jurisdiction over DMI S.A.  See Jazini, 148 F.3d at 184-85; Lehigh Valley, 527 F.2d at 93-94; Mende, 269 F. Supp. 2d at 251.

In short, in support of their invocation of personal jurisdiction over DMI S.A., Plaintiffs have proffered no substantive factual allegations regarding DMI S.A. anywhere in either of their Complaints.  The Court cannot ignore Plaintiffs' failure to make any allegations of fact in support of their invocation of specific personal jurisdiction over DMI S.A.; as the Second Circuit has made clear, the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New York "must be applied with caution, particularly in an international context."  Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 811.  Accordingly, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.  See Leasco, 468 F.2d at 1341; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990).  Plaintiffs' conclusory allegations and statements of law couched as factual allegations do not suffice to establish even that any conduct by DMI S.A. -- whatever that unalleged conduct might have been -- had a direct effect in the forum, much less that DMI S.A. had good reason to expect such an effect.  Therefore, to the extent that Plaintiffs rely upon a theory of specific personal jurisdiction, that reliance is misplaced, and Plaintiffs' claims must be dismissed in their entirety.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because plaintiffs failed to "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States").

### B.   Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting Provide No Basis For Personal Jurisdiction Over DMI S.A.

Plaintiffs also sweepingly assert that the defendants "have conspired with, have aided and abetted and have provided material support and resources to Bin Laden, al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks." *Contl. Cas.* FAC ¶ 26; see also id. ¶¶ 11, 27; *NY Marine* FAC ¶ 45.

These entirely conclusory allegations cannot salvage Plaintiffs' failed assertion of personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction on a New York long-arm conspiracy theory); see also Lehigh Valley, 527 F.2d at 93-94 ("the bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction . . . ."). "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States."  Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 ("To establish personal jurisdiction on a conspiracy theory, Plaintiffs must make a *prima facie* showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York.").

Here, Plaintiffs flatly assert that all defendants were co-conspirators, see *Contl. Cas.* FAC ¶ 11 and *NY Marine* FAC ¶ 45, without supporting factual allegations as to DMI S.A. Similarly, Plaintiffs' undeniable allegation that the Attack was a foreseeable product of a conspiracy, see *Contl. Cas.* FAC ¶ 27 and *NY Marine* FAC ¶ 51, still fails to allege facts showing that DMI S.A. engaged in any such conspiracy.  And while the *Continental Casualty* plaintiffs also allege that the

conspiracy required the material support of a hodgepodge of unnamed "remaining defendants," see *Contl. Cas.* FAC ¶ 26, neither of the Plaintiffs' Complaints identifies any in-state actor who acted for the benefit of DMI S.A., nor do they allege facts showing that DMI S.A. exercised control over any such actor.  Thus, Plaintiffs have not alleged facts sufficient to show that DMI S.A. entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of DMI S.A.; that DMI S.A. exercised control over any such actor; or that DMI S.A. had knowledge of or consented to any activity whatsoever.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiffs "do not allege any specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities. Nor are there any specific allegations of [defendant's] knowledge of, or consent to those activities.").

        As with their allegations regarding conspiracy, Plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A.  See *Contl. Cas.* FAC ¶¶ 26, 27, 378; *NY Marine* FAC ¶ 45.  A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826; see also Terrydale Liquidating Trust v. Gramlich, 549 F. Supp. 529, 530 (S.D.N.Y. 1982) (plaintiff must allege facts demonstrating "substantial assistance" to support finding of personal jurisdiction over abettor).  In short, the alleged aider and abettor must have been aware of the wrongdoing and have provided substantial assistance in its commission.  Here, Plaintiffs have proffered no facts sufficient to support any such finding as to DMI S.A.  Thus, to the extent that Plaintiffs seek personal jurisdiction over DMI S.A. as a putative co-conspirator or aider-and-abettor of al Qaeda, that reliance is also misplaced, and Plaintiffs' claims should be dismissed.

**C.     The *Continental Casualty* Plaintiffs' Generalized Allegations Of
Actions By Putative Subsidiaries Of DMI S.A. Are Insufficient
To Support An Assertion Of Personal Jurisdiction Over DMI S.A.**

The only allegations in the *Continental Casualty* Complaint that purport to connect

DMI S.A. with terrorism in any way concern DMI S.A.'s alleged subsidiaries FIBS, Tadamon Islamic

Bank, and al Shamal Bank.  See *Contl. Cas.* FAC ¶ 379.[4]  The Complaint alleges (1) that, at some time

in the early 1990s, third parties connected to al Qaeda "got account" at FIBS, al Shamal Bank, and

Tadamon Islamic Bank; (2) that Tadamon Islamic Bank "facilitated, materially sponsored, aided and

abetted, and/or conspired with al Qaeda and its international terrorists and financial operations;"

and (3) that money was transferred from accounts at al Shamal Bank to members of al Qaeda

sometime in the early to mid-1990s.  See id. ¶¶ 63-64, 66, 69-70, 269.

To establish personal jurisdiction over an entity through its subsidiaries, a plaintiff is

required to allege much more than a mere parent-subsidiary relationship; such a plaintiff must allege

facts supporting the conclusion that the subsidiary in question acts as an "alter ego" or "mere

department" of the parent.  See Jazini, 148 F.3d at 184.  Courts consider four factors when

determining whether a subsidiary is acting as an "alter ego" or "mere department" of the parent for

jurisdictional purposes: (i) "common ownership"; (ii) "financial dependency of the subsidiary on the

parent corporation"; (iii) "the degree to which the parent corporation interferes in the selection and

assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and

(iv) "the degree of control over the marketing and operational policies of the subsidiary exercised by

the parent."  Id. at 184-185 (citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751

F.2d 117, 120-122 (2d Cir. 1984)).

Here, the *Continental Casualty* plaintiffs have failed to allege facts sufficient to

establish these predicates.  The *Continental Casualty* plaintiffs do allege common ownership, albeit

conclusorily and erroneously.  However, they have *not* alleged that any of the alleged subsidiaries are

financially dependent upon DMI S.A.  Cf. *Contl. Cas.* FAC ¶¶ 63-64, 66, 69-70, 269, 379-80 with

---

[4]     The *NY Marine* plaintiff's solitary and conclusory allegation concerning DMI S.A. makes no mention of
any subsidiaries or affiliates of DMI S.A.

Jazini, 148 F.3d at 185 (plaintiffs' conclusory allegation that subsidiary was "wholly dependent" on parent "lack[ed] the factual specificity necessary to confer jurisdiction"); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 403, 410 (S.D.N.Y. 2002) ("factual allegation that [parent] funds [a portion] of the compensation received by managers employed by [subsidiary] . . . does not sufficiently allege that [subsidiary] is financially dependent on its parent, *i.e.*, that [subsidiary] cannot run its businesses without the financial backing of its parent"); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 735-36 (S.D.N.Y. 2001) (factually unsupported allegations insufficient); Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6 (S.D.N.Y. Feb. 18, 1997) (financial dependency ill-pled despite allegation that "98% of the products [subsidiary] purchases come from [parent]").

Nor have the *Continental Casualty* plaintiffs alleged that DMI S.A. has been involved in the selection and assignment of the putative subsidiaries' executive personnel or that those entities have failed to observe corporate formalities.  See In re Nov. 11 Ski Train Fire, 230 F. Supp. 2d at 410-11 (plaintiffs' factually unsupported allegation concerning alleged lack of corporate formalities insufficient to support jurisdiction); Jacobs, 160 F. Supp. 2d at 736-37 (some failure to follow corporate formalities and some overlapping management personnel were "too inconsequential" to find that entity operated as "mere department"); Pyramyd Stone, 1997 WL 66778, at *7-10 (parent and subsidiary were independent for jurisdictional purposes because beyond the normal parental control of the board of directors of its subsidiary, parent did not select subsidiary's personnel). Finally, the *Continental Casualty* plaintiffs have not alleged that DMI S.A. has controlled those three entities' marketing and operational policies.  See Jazini, 148 F.3d at 185 (plaintiffs' allegation that subsidiary was "wholly controlled" by parent "lack[ed] the factual specificity necessary to confer jurisdiction"); Beech Aircraft, 751 F.2d at 122 ("The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."); In re Nov. 11 Ski Train Fire, 230 F. Supp. 2d at 411-12 (allegations that (i) parent urged subsidiary to achieve strategic and financial goals and (ii) companies portrayed themselves as a

single entity were "insufficient to show 'pervasive' or 'complete' control" for purposes of establishing personal jurisdiction over the parent); Jacobs, 160 F. Supp. 2d at 736-37; Pyramyd Stone, 1997 WL 66778, at *7-8 (subsidiary was not "mere department" of parent because parent did not dictate marketing or operational policies such that it had "day-to-day control").  In sum, the *Continental Casualty* plaintiffs have failed to plead facts sufficient to invoke personal jurisdiction over DMI S.A. as a result of the alleged actions of its putative subsidiaries.  Absent allegations of fact sufficient to support a finding that any such entity has functioned as an "alter ego" or "mere department" of DMI S.A., Plaintiffs' mere assertion that such entities are indirect subsidiaries of DMI S.A. cannot warrant the exercise of personal jurisdiction over DMI S.A.

Because both the *Continental Casualty* and *New York Marine* Plaintiffs have completely failed to make out a *prima facie* case for personal jurisdiction over DMI S.A., all of their claims against DMI S.A. should be dismissed.[5]

## II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.

Plaintiffs also have failed to allege facts sufficient to state any of the causes of action lodged against DMI S.A.  Indeed, as demonstrated above, Plaintiffs have not alleged any particular conduct by DMI S.A. at all, much less any *wrongful* conduct.  For instance, the *New York Marine* plaintiff's sole averment mentioning DMI S.A. -- lumped in with a hodgepodge of numerous other defendants, see *NY Marine* FAC ¶ 45 -- is devoid of any specific allegations of fact at all.  The *Continental Casualty* plaintiffs, meanwhile, have proffered no specific allegation that DMI S.A. ever engaged in any sort of wrongful conduct.  Furthermore, even if plaintiffs had pled facts sufficient to impute to DMI S.A. the actions of supposed subsidiaries, they have failed to allege any wrongdoing

---

[5]    Moreover, Plaintiffs have alleged no facts, and can tender no argument, that this complete failure could be remedied by limited jurisdictional discovery. "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 813-14; see also Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; Madison Models, Inc. v. Casta, 2003 WL 21978628, at *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

by those subsidiaries.[6]  As this Court has already held, "[p]roviding routine banking services, without

having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability."  In re

Sept. 11, 349 F. Supp. 2d at 835.[7]  Furthermore, Plaintiffs have alleged no facts that could establish

that any conduct by DMI S.A. -- if any were in fact alleged -- proximately caused Plaintiffs' injuries,

and have failed to allege facts sufficient to make out the specific elements of any of their claims.

        In the face of conclusory allegations of endless scope, and in the absence of any

specific allegations of fact, DMI S.A. is left with no idea regarding what conduct is the supposed

basis of Plaintiffs' claims against it.  Plaintiffs therefore have not satisfied even the lenient notice

pleading standard of Rules 8(a) and 12(b)(6), and the Complaints against DMI S.A. must be

dismissed in their entirety.  "A complaint which consists of conclusory allegations unsupported by

factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F.

Supp. 2d at 833 (quoting DeJesus, 87 F.3d at 70); see also Smith v. Local 819 I.B.T. Pension Plan,

291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to prevent a motion to dismiss"); Virtual Countries, Inc. v.

Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) ("'bald assertions' of harm . . . were not

---

[6]  To be clear, Plaintiffs have wholly failed to plead facts sufficient to hold DMI S.A. liable for the alleged tortious acts of any allegedly related entity.  See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce the corporate veil must allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil"); MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors in determination of "domination" include disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors, and personnel; common office space, address and telephone numbers; degree of discretion shown by allegedly dominated corporation; whether dealings between entities are arm's length; whether corporations are treated as independent profit centers; payment or guarantee of corporation's debts by dominating entity; and intermingling of property).  Plaintiffs have proffered no facts sufficient to establish *any* of the above factors, much less to warrant piercing the corporate veil and holding DMI S.A. liable for alleged actions of its putative subsidiaries.  See, e.g., De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) ("conclusory allegations" insufficient to overcome the "presumption of separateness" afforded to related corporations); Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996); JBI Indus. Inc. v. Suchde, 2000 WL 1174997, *17 (S.D.N.Y. Aug. 17, 2000).

[7]  For example, the *Continental Casualty* plaintiffs allege that FIBS is a subsidiary of DMI S.A. and that "[FIBS] was one of the five [sic] main founders of Al Shamal Islamic Bank."  See Contl. Cas. FAC ¶¶ 379, 268.  However, this Court has already held that "the allegation that [a defendant] was one of three founders of Al Shamal Islamic Bank in 1983, without additional allegations, does not state a claim for relief."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 836.  Here, the assertion that one of DMI S.A.'s purported subsidiaries was one of the supposed founders of Al Shamal Bank even more clearly fails to support any claim against DMI S.A.

sufficient to defeat the motion to dismiss."); <u>Powell v. Jarvis</u>, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); <u>Glasheen v. City of Albany</u>, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants;" such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").

In lieu of any specific allegations regarding DMI S.A., Plaintiffs offer the unsupported, boilerplate averment that defendants "have conspired with, have aided and abetted and have provided material[] support and resources to Bin Laden, al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks." *Contl. Cas.* FAC ¶ 26; <u>see</u> <u>also</u> *NY Marine* FAC ¶ 45.  These conclusory allegations do not provide DMI S.A. with any meaningful notice of the supposed conduct of which Plaintiffs now complain.[8]  Such allegations thus cannot suffice to state Plaintiffs' inflammatory claims against DMI S.A.  <u>See</u> <u>Gillette Co. v. Philips Oral Healthcare, Inc.</u>, 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting <u>Atuahene v. City of Hartford</u>, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

---

[8]     Specifically, these allegations do not specify whether DMI S.A. is alleged to have given *zakat* funds to al Qaeda, loaned money to al Qaeda, laundered money for al Qaeda, written letters of credit for al Qaeda, maintained checking accounts for al Qaeda, provided investment advice to al Qaeda, or sent Osama bin Laden ten dollars for his birthday. Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI S.A. with any meaningful notice of the supposed basis of the claims against it.  <u>See</u> <u>Kittay v. Kornstein</u>, 230 F.3d 531, 541 (2d Cir. 2000) (even under notice pleading, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); <u>Glasheen</u>, 1999 WL 1249409 at *1 (conclusory allegations lacking factual support "render[ ] it virtually impossible for each [d]efendant to respond to the allegations").

Id. (internal citation omitted, emphases added); see also Kittay, 230 F.3d at 541 (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Rose v. Goldman, Sachs & Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even de minimis" pleading standards in discrimination cases, "a plaintiff is required to set forth specific factual allegations to establish a prima facie case").[9]

### A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries.

Plaintiffs tender nothing to support the proposition that any actions of DMI S.A. -- and again, no such actions have been alleged -- proximately caused the injuries suffered by Plaintiffs on September 11, 2001.  Each of Plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, i.e., that the injury complained of was a direct effect of DMI S.A.'s own tortious conduct. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797, fn. 26 (rejecting plaintiffs' request for less stringent causation standard and concluding "the proper inquiry at this stage of the litigation is the presence of proximate causation"); see also Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992); Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable . . ."); In re American Express Co. S'holder Litig., 39 F.3d 395, 401-02 (2d Cir. 1994) (same).

---

[9]    Such boundless allegations also promise a boundless discovery process, if Plaintiffs' case is allowed to proceed.  See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

Here, Plaintiffs have failed to allege that any conduct by DMI S.A. -- whatever it might have been -- was a substantial factor in the terrorist attacks on September 11, 2001. They do not allege any facts showing that DMI S.A. gave money to or otherwise provided material support to any of the terrorists carrying out those attacks or anyone providing them with assistance. See, e.g., *Contl. Cas.* FAC ¶¶ 378-79; *NY Marine* FAC ¶ 45. Moreover, apart from baldly conclusory assertions contained in their recited causes of action, Plaintiffs do not assert that those horrific events were the direct and foreseeable result of any action by DMI S.A., and cannot do so because, again, Plaintiffs have not alleged that DMI S.A. engaged in any particular conduct at all. In short, Plaintiffs have failed to propound any allegation against DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

Instead, Plaintiffs lodge conclusory, blanket allegations of causation in connection with their various causes of action, ostensibly applicable to all defendants without distinction. See, e.g., *Contl. Cas.* FAC ¶ 605 (as to trespass claim, "[t]he damages suffered by plaintiffs were the direct and proximate result of the aforesaid trespass upon the real and personal property of plaintiffs' insureds"); id. ¶ 613 (as to first RICO claim, "[a]s a direct and proximate result of the foregoing, plaintiffs have been damaged . . . ."); *NY Marine* FAC ¶ 70 (as to aiding and abetting claim, "[t]he September 11th Attack was a direct, intended and foreseeable product of the aiding and abetting of al Qaida by the co-defendants"). These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI S.A. See American Express, 39 F.3d at 400 n.3 ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.")(internal citations omitted); DeJesus, 87 F.3d at 70; see also Papasan v. Allain, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiffs' generalized allegations of causation thus cannot rescue their claims from the requirements of Rule 8(a).

**B.**   **Plaintiffs Have Failed To Plead Facts Sufficient To**
**State Any Of Their Causes of Action Against DMI S.A.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI

S.A. because, in addition to not pleading causation, they have not alleged specific facts necessary to

make out those causes.  Even under the lenient notice pleading standard, neither inferences

unsupported by specific factual allegations nor legal conclusions cast as factual allegations suffice to

state a claim.  See Smith, 291 F.3d at 240; York v. Ass'n of the Bar of the City of New York, 286

F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts

which, assumed to be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks,

349 F. Supp. 2d at 832-36 ("[A] complaint which consists of conclusory allegations unsupported by

factual assertions fails even the liberal standard of Rule 12(b)(6).") (citing DeJesus, 87 F.3d at 70);

Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To

survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a

claim. . . .  It is imperative that the complaint contain either direct or inferential allegations

respecting all the material elements necessary to sustain a recovery under some viable legal theory.")

(internal citations and quotations omitted).

Thus, the boilerplate, conclusory allegations contained in the Complaints cannot be

allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- that DMI S.A. ever actually

*did* anything to cause the injuries for which plaintiffs now seek redress.  See Smith, 291 F.3d at 240;

DeJesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36; In re Cendant Corp. Sec.

Litig., 190 F.R.D. 331, 335 (D.N.J. 1991).  Apart from legal boilerplate posing as factual allegations,

Plaintiffs have entirely failed to plead any of the necessary elements of their causes of action other

than injury.  While Plaintiffs are not required to allege a full *prima facie* case to survive a Rule 12(b)(6)

motion, in the absence of *any* allegations of fact, DMI S.A. is again left with no notice as to the basis

for Plaintiffs' claims.  Consequently, Plaintiffs have again failed to meet even the liberal

requirements of Fed. R. Civ. P. 8(a).  The claims against DMI S.A. therefore must be dismissed.

1.      Trespass (*Continental Casualty* Count 1; *New York Marine* Count 1).

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Federal Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[10]

Plaintiffs make only the generalized allegation, against all defendants, that they "knew, or should have known, that their provision of material support and resources to al Qaeda and affiliated foreign states . . . would result in an unlawful trespass upon the real and personal property of plaintiffs' insureds."  *Contl. Cas.* FAC ¶ 604; see also *NY Marine* FAC ¶ 59.  Here again, Plaintiffs have tendered no facts that would show that DMI S.A. itself intended any trespass.  See Wantanabe Realty Corp. v. City of N.Y., 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. 2003) (to allege aiding and abetting a trespass, plaintiff must specifically allege actual knowledge of trespass, not merely constructive knowledge).  Plaintiffs have also failed to allege that DMI S.A. committed any wrongful act that resulted in any trespass, and have again failed to plead proximate causation as to DMI S.A.  Accordingly, Plaintiffs' claims for trespass against DMI S.A. should be dismissed.

2.      RICO (*Continental Casualty* Counts 2 & 3; *New York Marine* Count 3).

(a)     Plaintiffs Lack Standing To Bring Their RICO Claims.[11]

The Second Circuit in Laborers Local 17 affirmed that where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . .

---

[10]    The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action.  See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994) (invasion must be the "direct result of some act committed by the defendant"); A.J. Cunningham Packing Corp. v. Congress Fin. Corp., 792 F.2d 330, 334 & n.4 (3d Cir. 1986) (defendant liable for trespass to chattels when defendant's misconduct causes dispossession or harm to property).

[11]    RICO standing is a "threshold question" that "represents a jurisdictional requirement."  Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).

plaintiffs lack standing to bring RICO claims . . . ."  <u>Laborers Local 17</u>, 191 F.3d at 239.  The

Supreme Court has set out three policy factors which buttress the principle that plaintiffs with

indirect injuries lack standing to sue under RICO:

> First, the less direct an injury is, the more difficult it becomes to
> ascertain the amount of a plaintiff's damages attributable to the
> violation, as distinct from other, independent, factors. Second, quite
> apart from problems of proving factual causation, recognizing claims
> of the indirectly injured would force courts to adopt complicated
> rules apportioning damages among plaintiffs removed at different
> levels of injury from the violative acts, to obviate the risk of multiple
> recoveries. And, finally, the need to grapple with these problems is
> simply unjustified by the general interest in deterring injurious
> conduct, since directly injured victims can generally be counted on to
> vindicate the law as private attorneys general, without any of the
> problems attendant upon suits by plaintiffs injured more remotely.

<u>Holmes</u>, 503 U.S. at 269-70 (citations omitted).  In <u>Laborers Local 17</u>, the Second Circuit explained

that even where the latter two policy factors are not robust -- *i.e.*, where the possibility of duplicative

recoveries is remote and where the directly injured victims must recover under non-RICO actions --

because the plaintiffs' injuries were derivative of a harm to a third party, the injury was indirect and,

therefore, plaintiffs lacked standing to sue under RICO.  <u>See</u> <u>Laborers Local 17</u>, 191 F.3d at 236-

42.[12]  Here, the insurance subrogation Plaintiffs' RICO claims derive solely from the injuries suffered

by persons injured by the September 11 attacks.  Because Plaintiffs' injuries derive from those

injuries, their injuries are indirect and Plaintiffs lack standing to bring their RICO claims.

---

[12]    One District Court case, <u>National Asbestos Workers Med. Fund v. Phillip Morris, Inc.</u>, 74 F. Supp. 2d
221 (E.D.N.Y. 1999), has been read broadly by some plaintiffs to warrant RICO standing as a subrogee of
persons who suffered injuries.  However, the District Court opinion in <u>National Asbestos</u> cannot control
here, because it is directly contrary to the earlier decision of the Second Circuit in <u>Laborers Local 17</u>, 191 F.3d
at 235-241.  Moreover, the holding in <u>National Asbestos</u> has been repeatedly and harshly rejected.  <u>See</u> <u>Int'l
Brotherhood of Teamsters v. Phillip Morris, Inc.</u>, 196 F.3d 818, 827 (7th Cir. 1999) (describing <u>National
Asbestos</u> opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in <u>Laborers
Local 17</u>]."); <u>Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 99 F. Supp. 2d 174, 178
(D.R.I. 2000) ("[T]his Court disagrees with the reasoning and result in <u>National Asbestos</u>."); <u>Eastern States
Health & Welfare Fund v. Phillip Morris, Inc.</u>, 188 Misc.2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000)
(recognizing cases criticizing <u>National Asbestos</u> and stating "this Court does not find [Judge Weinstein's]
analysis [in <u>National Asbestos</u>] persuasive or applicable.").

(b)     Plaintiffs Have Failed To State Their RICO Claims.

Even if Plaintiffs had standing, they have failed to plead their RICO claims against DMI S.A.  To state such a claim, Plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Moreover, a RICO claim alleging a violation of Section 1962(c), as here, requires that "an alleged RICO defendant must have had some part in directing the operation or management of the enterprise itself to be liable."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 827-28 (citing Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)).  To sustain a claim under Section 1962(d), Plaintiffs must further allege that the defendant was a "central figure" in the underlying scheme.  Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).  Where Plaintiffs cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  See, e.g., Moss, 719 F.2d at 18-19.

Once more, Plaintiffs' sparse allegations regarding DMI S.A., even if true, would establish *none* of the requisite elements of a civil RICO claim.  Nowhere in the Complaints do Plaintiffs allege two or more predicate acts by DMI S.A., or any facts that could show an agreement to commit two or more predicate acts by DMI S.A.  Plaintiffs allege no facts showing that DMI S.A. engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI S.A.'s assent to any alleged RICO conspiracy; no overt acts by DMI S.A. in furtherance of any alleged conspiracy; no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise'; and no indication that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  See *Contl. Cas.* FAC ¶¶ 378-80; *NY Marine* FAC ¶ 45.  Moreover, as before, Plaintiffs have failed to plead

proximate causation as to DMI S.A.[13]  Plaintiffs thus have completely failed to state any RICO

claims against DMI S.A., warranting dismissal of such claims.  See e.g., DeJesus, 87 F.3d at 70

(dismissing RICO claim based upon conclusory allegations); see also Indus. Bank of Latvia v. Baltic

Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make

out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is

not enough to state a claim").

> 3.    Conspiracy and Aiding and Abetting (*New York Marine* Counts 2 & 4).

The *New York Marine* plaintiff's putative causes of action for conspiracy and aiding

and abetting are not recognized as independent causes.  See Grove Press, Inc. v. Angleton, 649 F.2d

121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Alexander &

Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102-03 (N.Y. 1986)

(under New York law, "a mere conspiracy to commit a [tort] is never of itself a cause of action");[14]

Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n. 3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y.

1999) (aiding and abetting "no[t an] independent tort").[15]  For this reason alone, the *New York*

*Marine* plaintiff's putative conspiracy and aiding and abetting causes of action must be dismissed.

Yet, even if these concerted action theories were independent torts, the *New York Marine* plaintiff's

---

[13]   Plaintiffs' boilerplate legal conclusions regarding causation, though couched as factual allegations, see *Contl. Cas.* FAC ¶¶ 607-617 and *NY Marine* FAC ¶¶ 65-67, including the *Continental Casualty* plaintiffs' rote incorporation of their previous 613 paragraphs, are also insufficient to state a claim.  See Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.") (citations and internal quotations omitted).

[14]   Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) (Under Pennsylvania law, civil conspiracy not independently actionable); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31, 2002) (same); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983) ("conspiracy is not independently actionable").

[15]   Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting claim is recognized under Virginia law.  See A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) (aiding and abetting "cause of action [is] not recognized in Virginia"); but see Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).  In any case, the *New York* Marine plaintiff has failed to state such a claim for the reasons set forth above.

conspiracy and aiding-and-abetting claims must be dismissed, because this Plaintiff's sole allegation is wholly conclusory and fails to state a claim or to plead proximate causation as to DMI S.A.

Even if an independent tort of civil conspiracy existed, the *New York Marine* plaintiff's solitary allegation mentioning DMI S.A., see *NY Marine* FAC ¶ 45, is entirely insufficient to state a claim.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting damage or injury.[16]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980). The *New York Marine* plaintiff's allegation regarding conspiracy fails to allege facts sufficient to show *any* of the above elements, and indeed is as bald as an allegation of civil conspiracy could possibly be. See *NY Marine* FAC ¶ 45 ("DMI Administrative Services S.A. [and numerous others] have . . . conspired with . . . defendant al Qaida and/or affiliated FTOs, associations, organizations or persons.").

In Count Two, the *New York Marine* Complaint then alleges, conclusorily and indiscriminately, that "defendants conspired to commit acts of international terrorism against the United States, its nationals and allies, which conspiracy included the provision of material support and resources to, defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties."  *NY Marine* FAC ¶ 62.  This bare, boilerplate recitation is also entirely insufficient to make out the elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare

---

[16]    Pennsylvania and Virginia law does not materially differ from New York law as to the basic elements of a civil conspiracy.  Cf. Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997) (requiring (i) existence of underlying tort, (ii) combination or agreement between two or more persons to do unlawful act or lawful act by unlawful means, (iii) malice or intent to injure, (iv) overt act in pursuance of common purpose, and (iv) actual damage); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985) (requiring (i) existence of underlying tort, (ii) two or more persons engaged in concerted action, (iii) intent to accomplish some criminal or unlawful purpose, or some lawful purpose by criminal and unlawful means, and (iv) actual damages resulting from something done by one or more of conspirators in furtherance of object of conspiracy).

conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord Alexander, 68 N.Y.2d 968, 969-70 (requiring allegation of explicit agreement); Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. Ct. App. 2000). Yet the Complaint alleges *no* communications or consultations of *any* kind by *any* personnel of DMI S.A., much less communications or consultations from which one might infer the company's assent to a conspiracy whose "direct, foreseeable and intended product" was "to commit acts of international terrorism against the United States, its nationals and allies." See *NY Marine* FAC ¶ 63. Furthermore, the Complaint alleges *no* overt acts by DMI S.A. in furtherance of the purported conspiracy whatsoever. See, 8 N.Y. Jur., Conspiracy § 4 (1982). In sum, the *New York Marine* plaintiff proffers no cognizable basis for its putative conspiracy claim against DMI S.A.

Similarly, even if an aiding and abetting tort existed under applicable law, the *New York Marine* plaintiff's factually devoid allegations against DMI S.A. clearly do not state a claim. To state the elements for aiding and abetting in New York, a plaintiff must allege that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.[17] See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dept. 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that "defendants had actual or constructive knowledge of the misconduct and substantially assisted therein"). The allegations in the Complaint do not even begin to establish such knowing and substantial assistance on the part of DMI S.A. Furthermore, this plaintiff's conclusory, blanket allegation that "[t]he September 11 attack was a direct, intended and foreseeable product of the aiding and abetting of al Qaida by the co-defendants" see *NY Marine* FAC ¶ 70, and their unsupported, conclusory assertion that DMI S.A. "[has] aided and abetted al Qaida [and others]," see id. ¶ 45, do not suffice to state a claim against DMI S.A. See, e.g., Johnston v. Norton, 1993 WL

---

[17]   The elements necessary to establish aiding and abetting do not differ under Pennsylvania or Virginia law. See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting or conspiracy are not enough" to state claim).

        4.       Anti-Terrorism Act (*New York Marine* Count 5).

        Under the ATA, a plaintiff or his or her estate may bring a private cause of action for damages, where (i) plaintiff is a national of the United States, and (ii) was injured in his or her person, property, or business, (iii) due to international terrorism.  18 U.S.C. §§ 2331-2333 (2000); U.S. v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citing Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1023 (7th Cir. 2002)); see also Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 106 (D.D.C. 2003).  The *New York Marine* plaintiff alleges no facts that could support a finding that DMI S.A. engaged in any actions constituting "material support" at all, much less that DMI S.A. did so knowingly or with a desire to see a terrorist plot succeed.  See *NY Marine* FAC ¶¶ 45, 62.  Thus, the *New York Marine* plaintiff's ATA claim against DMI S.A. must be dismissed.

        5.       Negligence (*New York Marine* Count 6).

        "To establish a claim for negligence under New York law, 'a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate cause of that breach.'"  In re Sept. 11 Attacks, 349 F. Supp. 2d at 830 (citation omitted).[18]  "The most basic element of a negligence claim is the existence of a duty owed to plaintiffs by defendants."  Id. (citations omitted).  In the instant case, the *New York Marine* plaintiff does not and cannot allege that DMI S.A. owed it any duty of care.  Indeed, it is well-established law, and the law of this case, that financial institutions owe no duty to non-customers to prevent wrongful acts of a bank customer.  See id. ("Banks do not owe non-

_____

[18]   Pennsylvania and Virginia law do not materially differ from New York law as to the basic requirements of a negligence claim.  See Martin v. Evans, 551 Pa. 496, 501, 711 A.2d 458, 461 (1998); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000).

customers a duty to protect them from the intentional torts of their customers.") (citations omitted). Moreover, there is no general duty to "control the conduct of third persons to prevent them from causing injury to others." McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997) (citation omitted).  Because the *New York Marine* plaintiff "do[es] not allege or identify a duty owed to Plaintiffs [by DMI S.A.] . . . the negligence claim[] [should be] dismissed for failure to state a claim." See In re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31.  Moreover, even if some duty could be alleged, the *New York Marine* plaintiff does not allege a breach of any such duty of care by DMI S.A. -- because it alleges no wrongful act or omission by DMI S.A. -- or proximate causation of its injuries.

      6.      Punitive Damages (*New York Marine* Count 7).

Finally, the *New York Marine* plaintiff cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

## CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
       May 6, 2005

                  Respectfully submitted,
                  SHEPPARD MULLIN RICHTER & HAMPTON LLP

                  By:_____/s/_____
                    James J. McGuire (JM-5390)

                    30 Rockefeller Plaza, 24th Floor
                    New York, New York 10112
                    (212) 332-3800

                    *Attorneys for Defendant*
                      *DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel