UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
IN RE TERRORIST ATTACKS ON                                       :
SEPTEMBER 11, 2001                                               :    03 MD 1570 (RCC)
                                                                 :    ECF Case
-----------------------------------------------------------------x
                                                                 :
CONTINENTAL CASUALTY CO., et al.,                                :
                                                                 :
            Plaintiffs,                                          :    1:04-CV-05970 (RCC)
                                                                 :    ECF Case
      v.                                                         :
                                                                 :
AL QAEDA, et al.,                                                :
                                                                 :
            Defendants.                                          :
                                                                 :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANT ISLAMIC INVESTMENT COMPANY OF THE GULF (SHARJAH)**

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant
    Islamic Investment Company of the Gulf (Sharjah)*

W02-NY:1ESC1\120001525.3

**TABLE OF CONTENTS**

Page

INTRODUCTION. ..........................................................................................................................1

I     PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER IICG. ........................................................................................1

II    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST IICG. ..................................................................................................................................4

     A.     Plaintiffs' Averments of Conspiracy Fail To Satisfy Fed. R. Civ. P. 8.............4

     B.     Plaintiffs Fail To Plead Proximate Causation As To IICG..............................5

     C.     Plaintiffs Do Not State A Claim Under Any Of Their Three Causes Of Action. ....................................................................................................................7

          1.     Plaintiffs Have No Standing Under RICO And, Alternatively, Have Failed To Sufficiently Plead A RICO Claim -- Counts 2 & 3. ...........................7

          2.     Plaintiffs Have Failed To Sufficiently Plead Trespass -- Count 1. ....................9

III   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE............................9

CONCLUSION...............................................................................................................................10

## INTRODUCTION

Defendant Islamic Investment Company of the Gulf (Sharjah) ("IICG") respectfully submits this Reply Memorandum in further support of its motion to dismiss the claims against it in the above-captioned action.

Throughout their Memorandum of Law in Opposition to IICG's motion to dismiss ("Opposition" or "Opp."), plaintiffs blithely ignore both this Court's holdings in its January 18, 2005 Order and the authority set out by IICG in its initial brief ("Memorandum"). Indeed, plaintiffs pay no heed to the Court's holdings that (i) conclusory allegations of jurisdiction are insufficient, and (ii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries. Cf. In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805, 809 (S.D.N.Y. 2005) with Opp. at 3-4, 9-13. Moreover, plaintiffs are silent as to the Court's additional ruling that to plead jurisdiction based upon a theory of conspiracy, they must make a *prima facie* showing of conspiracy (and again, that conclusory allegations do not suffice). Cf. id. at 805-6 with Opp. at 9-12. Finally, plaintiffs also turn a blind eye to the Court's further decisions that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, cf. id. at 833 with Opp. at 13-21, and (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability. Cf. id. at 835 with Opp. at 13-21.

Both in their Complaint and Opposition plaintiffs offer *nothing* to support the grave and odious assertion that IICG had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading can be remedied by an opportunity to replead. Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

I

### PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER IICG.

As IICG's initial Memorandum detailed, plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage plaintiffs' meritless assertion of personal jurisdiction over IICG. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805-06 (S.D.N.Y. 2005) ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in

these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975). "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States." Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added); In re Sept. 11 Attacks, 349 F. Supp. 2d at 806. Thus, while a Court certainly can exercise personal jurisdiction over a non-domiciliary "where a plaintiff has presented a sufficient showing that a conspiracy exists," see Pl. Mem, at 10, plaintiffs have utterly failed to plead *any facts* whatsoever to support a finding that IICG was a member of any conspiracy. While plaintiffs are not required "to set forth every wrongful act" of a defendant, see Pl. Mem., at 9, they are required to allege at least some specific facts that, if proven, would suffice to establish IICG's active, intentional participation in a tortious conspiracy.

As plaintiffs' own submission makes clear, plaintiffs have done none of the above. Instead of attempting to defend the sufficiency of their general and wholly conclusory allegation of conspiracy regarding the "remaining defendants" (supposedly including IICG), see ("First Amended Complaint") FAC ¶ 26, plaintiffs flatly assert that "the conduct of IICG constitutes its involvement in an actionable conspiracy . . . to attack and wage war against the United States . . . ,"[1] see id. at 10-

---

[1] In support of this assertion, plaintiffs cite to In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); plaintiffs, however, do not apprise the Court of the Second Circuit's statement therein that "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, *must include an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant*," see id. at 206, or of the fact that the Court in In re Magnetic Audiotape pointed out numerous specific facts, regarding specific transactions, meetings, and corporate control factors, that plaintiffs in that case had alleged. As the parties' submissions make clear, plaintiffs here have made no such specific allegations of fact as to IICG. Plaintiffs also cite to Davis v. Barrett Day Sec., Inc., 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995) -- a decade-old, unpublished decision from the Middle District of North Carolina -- yet even Davis notes that "a bare allegation of conspiracy between a defendant and a person over which the court has personal jurisdiction is insufficient to allow the court to exercise personal jurisdiction over the defendant," see id. at *12, and recites numerous specific factual allegations made in that case regarding particular agreements and transactions, of the sort that plaintiffs here have been unable to make as to IICG.

11. Plaintiffs' bald, unsupported assertion as to the merit of their allegations, however, is entirely untrue. In the Complaint, plaintiffs conclusorily aver that all defendants were co-conspirators, see FAC ¶ 11, absent supporting factual allegations as to IICG. Plaintiffs' undeniable allegation that the Attack was a foreseeable product of some conspiracy, see FAC ¶ 27, wholly fails to allege any facts showing IICG participated in any such conspiracy. And while plaintiffs allege that the conspiracy to carry out the Attack required the material support of unnamed "remaining defendants," see FAC ¶ 26, plaintiffs have entirely failed to allege facts sufficient to show that IICG entered into any agreement with any in-state actor; that any such in-state actor acted for the benefit of IICG; or that that IICG exercised control over any such actor. Nor have plaintiffs alleged any specific wrongful act by IICG, any agreement by IICG to enter into a conspiracy or any communications by IICG personnel that could be read to imply such an agreement. In sum, plaintiffs have alleged nothing to connect IICG to the September 11 attack or United States.

Regardless of whether a particular claim is brought under a federal statute providing for nationwide service of process (e.g., RICO or the ATA) or pursuant to a long-arm statute under state law, plaintiffs must allege facts sufficient to show minimal contacts for due process purposes. In re Sept. 11 Attacks, 349 F.Supp.2d. at 805-06, 809; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum . . . ."). Accordingly, "[p]laintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims." In re Sept. 11 Attacks, 349 F. Supp. 2d at 809. Plaintiffs clearly have not done so.

And shockingly, despite this Court's clear holding that it "declines to adopt [the modified due process] standard [for mass torts]" and the Court's explicit rejection of the holdings in Simon v. Phillip Morris, Inc., 86 F. Supp. 2d 95 (E.D.N.Y. 2000) and In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992), see In re Sept. 11 Attacks, 349 F. Supp. 2d at 809-10, plaintiffs -- without any reasonable argument to reverse this Court's holding *and without even mentioning this Court's holding* -- assert that "IICG is [] subject to personal jurisdiction pursuant to the 'modified due process

standard for mass torts.'" See Pl. Mem., at 12-13 (citing Simon and In re DES). Plaintiffs' blatant disregard for the Court's holding is vexatious, and this argument should be rejected out of hand.[2]

For all the foregoing reasons, plaintiffs have completely failed to make out a *prima facie* case for personal jurisdiction over IICG.[3] Plaintiffs' claims against IICG therefore should be dismissed in their entirety.

II

**PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST IICG.**

**A.     Plaintiffs' Averments of Conspiracy Fail To Satisfy Fed. R. Civ. P. 8.**

Plaintiffs do not dispute IICG's argument, see Def. Mem. at 14-16, that the Complaint lumps over 200 defendants together without providing specific facts distinguishing IICG's supposed conduct. See Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000). Instead, plaintiffs point to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) and Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), in support of the proposition that those conclusory, generalized allegations should be deemed sufficient to state their immense claims against IICG. See Pl. Mem. at 5-9. Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title

---

[2]     In another attempt to salvage personal jurisdiction over IICG, plaintiffs cite Pugh v. Socialist People's Libyan Arab Jamahirya, 290 F. Supp. 2d 54 (D.D.C. 2003) and Rein v. Socialist People's Libyan Arab Jamahirya, 995 F. Supp. 325 (E.D.N.Y. 1998), to import the due process standards of the Foreign Sovereign Immunities Act ("FSIA") into a case brought under RICO and state tort law. See Pl. Mem., at 11-12. However, Pugh and Rein simply "exercised personal jurisdiction . . . pursuant to the FSIA, which specifically provides that personal jurisdiction exists where proper service and subject matter jurisdiction have been established." In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 (citing 28 U.S.C. § 1330(b)). However, "FSIA is not the basis for personal jurisdiction here." Id. at 809.

[3]     Plaintiffs do not argue that their complete failure could be remedied by limited jurisdictional discovery. Plaintiffs only assert that when jurisdictional discovery is ordered, a plaintiffs' burden to plead personal jurisdiction increases from a *prima facie* showing to a preponderance of the evidence. See Pl. Mem., at 9. However, "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 812. Here, as plaintiffs effectively concede, their jurisdictional allegations not only 'fail to state a basis' for jurisdiction, but are *entirely absent* -- again, even in the Opposition, plaintiffs fail to specify a single factual allegation that could be read to tie IICG to the United States generally or to the September 11 attacks specifically. In such a case, jurisdictional discovery is plainly inappropriate. See, e.g., id. at 802, 813-14; Madison Models, Inc. v. Casta, 2003 WL 21978628, *6 (S.D.N.Y.).

VII claims such as those brought therein. Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003).[4] Similarly, Phelps stands for the unremarkable holding that the element of *scienter* -- and only the element of *scienter* -- may be averred generally. Phelps, 308 F.3d at 186 (finding under Rules 8(a) and 9(b), scienter can be averred generally).[5] Moreover, the Court in Phelps emphasized that plaintiff's allegations were "not 'general and conclusory;'" plaintiff did allege the "who," "what," "where" and "how" of his injury; and, in the particular situation, the element of defendants' *scienter* was "obvious." Id. at 187 & n.6. In contrast here, plaintiffs have alleged no particular wrongful conduct by IICG whatsoever. Simply put, plaintiffs' wholly conclusory allegations fail to provide IICG with meaningful notice of the bases of the claims against it. Plaintiffs' claims, therefore, must be dismissed in their entirety.

**B.     Plaintiffs Fail To Plead Proximate Causation As To IICG.**

Plaintiffs nowhere dispute that, as to each of their causes, they must plead that IICG proximately caused the injuries suffered by plaintiffs on September 11, 2001. This Court has so held. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797, fn. 26 (rejecting plaintiffs' request for less stringent causation standard and concluding "the proper inquiry at this stage of the litigation is the presence of proximate causation"). "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (internal citations and quotation marks omitted).

Instead, plaintiffs rely upon an unelaborated theory of concerted action liability. See Pl. Mem., at 13-16. Because "plaintiffs rely on theories of concerted action liability -- conspiracy and

---

[4]     The Court in Twombly explained that a plaintiff's theory in Title VII cases is "fairly self-evident" so that "defendants will be apprised of the basic facts, and will know how to defend the action." Twombly, 313 F. Supp. 2d at 181. In contrast (and particularly here), a plaintiff's conspiracy theory "is not evident from a conclusory allegation of conspiracy, and there is simply no way to defend against such a claim without having some idea of how and why the defendants are alleged to have conspired." Id.

[5]     Swierkiewicz, Phelps and Pelman also do not change the Second Circuit's requirement that a plaintiff plead sufficient facts to make out each element of a claim against a defendant. See Gmurzynska v. Hutton, 355 F.3d 206 (2d Cir. 2004).

aiding and abetting -- in support of [its assertion of proximate causation]," plaintiffs must allege the particular elements of either conspiracy and aiding and abetting as to IICG. In re Sept. 11 Attacks, 349 F. Supp. 2d at 826. The Second Circuit explained that "[t]he elements of concerted-action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998) (citations omitted). In addition, "[c]onspiracy . . . requires an agreement to commit a tortious act [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Id. at 123 (citations omitted). Under either theory, plaintiffs must further allege that defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id. While plaintiffs baldly assert that "IICG's participation in al Qaeda's conspiracy to commit terrorist attacks against the United States, and aiding and abetting of that terrorist organization, ties it inextricably to the Attack," see Pl. Mem., at 14, no supporting facts are alleged their Complaint. As set forth in IICG's initial Memorandum, plaintiffs have alleged no facts that IICG "agree[d] to commit a tortious act;" or that IICG committed "tortious conduct;" or that IICG provided "substantial assistance or encouragement" to al Qaeda; or that IICG had "actual knowledge" of al Qaeda's wrongful conduct. Quite clearly, plaintiffs have not alleged causation as to IICG based upon their theories of concerted liability.

    Plaintiffs also cite Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983) in support of their causation argument, see Pl. Mem. at 14, but Halberstam as well requires allegations that the defendant knowingly and in fact "substantially aided" the tortfeasor in committing the act that caused plaintiffs' injuries. Id. at 478. Similarly, plaintiffs' reliance on Boim v. Quranic Literacy Inst., 291 F.3d 1000 (7th Cir. 2002) is unavailing; Boim only permitted an aiding and abetting claim to proceed because the plaintiff alleged facts sufficient to show that the defendant knowingly and substantially assisted in the allegedly tortious act. Id. at 1021. In fact, the Court in Boim held that

an allegation of funding *simpliciter* is not sufficient to show proximate causation. Id. at 1012.[6] Here, the plaintiffs have not alleged any particular wrongful conduct by IICG whatsoever, let alone any facts showing that IICG gave funds to or otherwise provided material support to any of the terrorists who carried out the September 11 attack or anyone who assisted them in doing so. Plaintiffs have proffered only indiscriminate, "catch-all" averments that cannot suffice to plead proximate causation. See, e.g., In re American Express Co. S'holder Litig., 39 F.3d 395, 401-02 (2d Cir. 1994).

### C. Plaintiffs Do Not State A Claim Under Any Of Their Three Causes Of Action.

Finally, plaintiffs blithely ignore IICG's arguments regarding each of the plaintiffs' causes of action. Rather than address IICG's specific arguments, plaintiffs put forth assertions that are not borne out by the actual allegations of the Complaint and beg the Court for leave to amend. See Pl. Mem., at 1, 16-21. To be clear, IICG implores the Court to assume the truth of all of plaintiffs' allegations, and then to test those allegations against the pleading standards of Rule 8 – including the well-established principle that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996); see also York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action.").

#### 1. Plaintiffs Have No Standing Under RICO And, Alternatively, Have Failed To Sufficiently Plead A RICO Claim -- Counts 2 & 3.

RICO standing is a "threshold question" that "represents a jurisdictional requirement." Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994). Here, plaintiffs claim to have RICO standing as a subrogee. See Pl. Mem., at 16-17. However, as set forth in

---

[6] Plaintiffs' reliance upon Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 18 (D.D.C. 1998) and Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1130 (D.C. Cir. 2004) in an attempt to avoid their obligation to plead proximate causation, see Pl. Mem. at 14-15, is similarly irrelevant. The cited sections in Flatow and Kilburn discuss a narrow provision of the FSIA, 28 U.S.C. § 1605(a)(7), as it pertains to state sponsors of terrorism respectively. Such statutory provision is completely inapposite as to IICG.

IICG's initial Memorandum, where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims . . . ." Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229, 239 (2d Cir. 1999); see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).[7] Here, the insurance subrogation plaintiffs' RICO claims derive solely from the injuries suffered by persons injured by the September 11 attacks. Because plaintiffs' injuries derive from those injuries, their injuries are indirect and plaintiffs lack standing to bring their RICO claims.

Further, while plaintiffs admit that "[a] plaintiff asserting a civil claim under [Section] 1962(c) must allege that the defendant participated in the operation or management of the enterprise" and under Section 1962(d) "that the defendant was a 'central figure' in the underlying scheme," see Pl. Mem., at 17, plaintiffs entirely fail to allege any such facts as to IICG. Plaintiffs do not allege that IICG was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise. Furthermore, plaintiffs' conclusory, boilerplate RICO allegations regarding IICG, even if proven out, would not state *any* of the requisite elements of a civil RICO claim against IICG. See Def. Mem. at 21-23; see, e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994). Plaintiffs' RICO claims, therefore, may be deemed abandoned and must be dismissed.

---

[7]   One District Court case, National Asbestos Workers Med. Fund v. Phillip Morris, Inc., 74 F. Supp. 2d 221 (E.D.N.Y. 1999), has been read broadly by some plaintiffs to warrant RICO standing as a subrogee. However, the District Court opinion in National Asbestos cannot control, because it is directly contrary to the earlier decision of the Second Circuit in Laborers Local 17, 191 F.3d at 235-241. Moreover, the holding in National Asbestos has been repeatedly and harshly rejected. See Int'l Brotherhood of Teamsters v. Phillip Morris, Inc., 196 F.3d 818, 827 (7th Cir. 1999) (describing National Asbestos opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in Laborers Local 17].")); Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 99 F. Supp. 2d 174, 178 (D.R.I. 2000) ("this Court disagrees with the reasoning and result in National Asbestos."); Eastern States Health & Welfare Fund v. Phillip Morris, Inc., 188 Misc.2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (recognizing cases criticizing National Asbestos and stating "this Court does not find [Judge Weinstein's] analysis [in National Asbestos] persuasive or applicable.").

## 2. Plaintiffs Have Failed To Sufficiently Plead Trespass -- Count 1.

Plaintiffs have wholly failed to allege the elements of a trespass claim. Where, as here, plaintiffs assert that IICG aided and abetted a trespass, see Pl. Mem., at 20, they must allege that IICG "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty." Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. Dec. 3, 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 830 (same). Contrary to plaintiffs' assertion that they have "sufficiently alleged a trespass claim against IICG," see Pl. Mem. at 20, plaintiffs have proffered no allegation that, if proved, would show that IICG gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, or intended any trespass. The Complaint, which fails to aver *any* specific conduct by IICG *whatsoever*, obviously falls entirely short of the pleading requirements of trespass. Plaintiffs have again failed to plead proximate causation. Accordingly, their claims for trespass against IICG should be dismissed.

### III

### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Finally, because plaintiffs have now filed two successive Complaints in this action, and there is no reasonable prospect that they will be able to remedy their wholesale failure to plead adequately any of their three claims against IICG, all three of those claims should be dismissed with prejudice. See, e.g., Electronic Communications Corp. v. Toshiba America, 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile). Moreover, the cases cited by plaintiffs in their prayer to the Court for leave to replead, in fact, support dismissal of their Complaint with prejudice. Plaintiffs' wholesale failure to plead any wrongful conduct by IICG is not just "one misstep" or a "[m]ere technicality." Pl. Mem., at 21. Moreover, of the five factors justifying dismissal on the merits cited in plaintiffs' Opposition, see id., at least three are present here. IICG has clearly suffered and continues to suffer "undue prejudice" because, as Judge Robertson wrote, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants." Burnett I, 274 F. Supp. 2d at 103. Plaintiffs

also have "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed" because they have filed two Complaints, without material amendment of or addition to the wholly untenable averments regarding IICG.  Plaintiffs have also effectively conceded the futility of amendment of their Complaint because there is no indication, within or outside of the four corners of their First Amended Complaint or in the Opposition, that they will in good faith be able to cure these defects.  Plaintiffs' Opposition fails to point to *even one* allegation that could remedy their utter failure to allege personal jurisdiction or state any claim as to IICG.  See Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (denying leave to amend Complaint as "futile" where plaintiffs' proposed supplementary allegations did not cure defects).  As demonstrated above, plaintiffs' failure to make out any of their claims against IICG is as nearly complete as one could imagine.  Dismissal of plaintiffs' claims against IICG, therefore, should ensue with prejudice.  See Toshiba America, 129 F.3d at 246; see also Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile).

## CONCLUSION

For the foregoing reasons, defendant IICG respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        May 13, 2005

                                          Respectfully submitted,
                                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                          By:_____/s/_____
                                             James J. McGuire (JM-5390)

                                          30 Rockefeller Plaza, 24th Floor
                                          New York, New York 10112
                                          (212) 332-3800

                                          *Attorneys for Defendant*
                                             *Islamic Investment Company of the Gulf (Sharjah)*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel