**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*     *Federal Insurance Co., et al v. al Qaida, et al.*
03 CV 06978 (RCC)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION TO DISMISS OF DEFENDANT SAMI OMAR AL-HUSSAYEN**

COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................. 1

II.   APPLICABLE LEGAL STANDARDS .............................................................. 3

III.   ARGUMENT ...................................................................................................... 6

    A.   Plaintiffs Properly Served al-Hussayen in Accordance with CMO2 ........................... 6

        1.   Rule 4(m) Does Not Require Dismissal ................................................. 6

        2.   Plaintiffs' Service of Process on al Hussayen via Publication was Effective and Consistent with Due Process Requirements ................................. 8

    B.   Plaintiffs State Claims Against al Hussayen Under the ATA .................................... 12

    C.   The Court Has Jurisdiction Over al Hussayen ............................................. 14

    D.   Al Hussayen is Not Entitled to Dismissal of Plaintiff's Other Claims ...................... 18

        1.   Plaintiffs' Assault and Battery and Intentional Infliction of Emotional Distress Claims Are Not Barred By The Statute of Limitations ................................................................................ 18

        2.   Plaintiffs State a Valid Cause of Action Under RICO ...................................... 19

        3.   Plaintiffs' Punitive Damages, Conspiracy and Aiding and Abetting Causes of Action Ought Not Be Dismissed ....................................... 23

        4.   Plaintiffs' Negligence Claims are Cognizable ................................................ 23

IV.   CONCLUSION .................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*All State Life Insurance Co. v. Linter Group Ltd.*,
782 F. Supp. 215 (S.D.N.Y. 1992)........................................................................16

*American Land Co. v. Zeiss*,
219 U.S. 47 (1911)........................................................................................10

*Andre Emmerich Gallery v. Segre*,
1997 WL 672009 (S.D.N.Y. Oct. 29, 1997).........................................................16

*Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983)........................................................................................22

*Bettis v. Islamic Republic of Iran*,
315 F.3d 325 (D.C. Cir. 2003)..........................................................................18

*Blinn v. Nelson*,
222 U.S. 1 (1911)............................................................................................10

*Boim v. Quranic Literacy Institute*,
291 F.3d 1000 (7th Cir. 2002) ...........................................................12, 13, 18

*Burnett v. Al Baraka Investment & Development Corp., et al.*,
Case No. 02-1616 (D.D.C. (J.R.)........................................................................10

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5th Cir. 1994) ...........................................................................15

*Chance v. Armstrong*,
143 F.3d 698 (2d Cir. 1998)................................................................................4

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991).............................................................16, 17

*Combs v. Adkins & Adkins Coal Co.*,
597 F. Supp. 122 (D.D.C. 1984) ......................................................................15

*Conley v. Gibson*,
355 U.S. 41 (1957)....................................................................................3, 4, 5

*Delicata v. Bowen*,
116 F.R.D. 564 (S.D.N.Y. 1987) .........................................................................8

*Dixon v. Mack*,
    507 F. Supp. 345 (S.D.N.Y.) (1980) .......................................................................16

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D. N.Y. 2003)...................................................................20

*Ehrenfeld v. Bin Mahfouz*,
    2005 U.S. Dist. LEXIS 4741 (S.D.N.Y. March 23, 2005) ................................11

*Estates of Ungar ex rel. Strachman v. Palestinian Authority*,
    153 F. Supp. 2d 76 (D.R.I. 2001)...........................................................................15

*Friedman v. Hartmann*,
    1994 U.S. Dist. LEXIS 9727 (S.D. N.Y. 1994).....................................................21

*Geiger v. Allen*,
    850 F.2d 330 (7th Cir. 1988) ...................................................................................8

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir. 1980)......................................................................................3

*Goodrich v. Ferris*,
    214 U.S. 71 (1909)...................................................................................................10

*Gordon v. Hunt*,
    835 F.2d 452 (2d Cir. 1987)......................................................................................8

*Grannis v. Ordean*,
    234 U.S. 385 (1914).................................................................................................10

*Havlish v. Osama Bin Laden, et al.*,
    Case No. 02-0305 (D.D.C.) ....................................................................................10

*Holmes v. Security Investor Prot. Corp.*,
    503 U.S. 258 (1992).................................................................................................22

*Holmes v. Security Investor Prot. Corp.*,
    503 U.S. 258 (1992).................................................................................................22

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993)................................................................................15, 16

*Ideal Electronic Co. v. International Fidelity Insurance Co.*,
    129 F.3d 143 (D.C. Cir. 1997) ................................................................................19

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*,
    2004 U.S. Dist. LEXIS 3829 (S.D. N.Y. 2004)................................................................19

*Johnson v. Nyack Hospital*,
    86 F.3d 8 (2d Cir. 1996)................................................................19

*Jones v. R.R. Donnelly & Sons Co.*,
    541 U.S. 369 (2004)................................................................19

*Leatherman v. Tarrant County*,
    507 U.S. 163 (1993)................................................................4, 5

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)................................................................22

*Louisiana Land & Exploration Co. v. Unocal Corp.*,
    863 F. Supp. 306 (E.D. La. 1994)................................................................19

*Mejia v. Kastle Hotel, Inc.*,
    164 F.R.D. 343 (S.D.N.Y. 1996)................................................................6, 7

*Milliken v. Meyer*,
    311 U.S. 457 (1940)................................................................10

*Mullane v. Central Hanover Trustee Co.*,
    339 U.S. 306 (1950)................................................................10

*Mwami, et al. v. Osama Bin Laden, et al.*,
    Case No. 99-0126 (D.D.C. Aug. 2, 1999)................................................................10

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999)................................................................22

*Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)................................................................5, 6

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002)................................................................3, 5

*Priest v. Board of Trustees of Town of Las Vegas*,
    232 U.S. 604 (1914)................................................................10

*Rasul v. Bush*,
    124 S. Ct. 2686 (2004)................................................................20

*Roller v. Holly*,
    176 U.S. 398 (1900)...............................................................................................10

*SEC v. Carrillo*,
    115 F.3d 1540 (11th Cir. 1997) .........................................................................15

*S.E.C. v. Tome*,
    833 F.2d 1086 (2d Cir. 1987)...............................................................................9

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...................................................................17

*Sparrow v. United Airlines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ...........................................................................4

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002)...........................................................................................4, 6

*In re Terrorist Attacks on September 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)...................................................13, 16, 17

*United States v. Louie*,
    625 F. Supp. 1327 (S.D. N.Y. 1985).................................................................21

*United States v. Turkette*,
    452 U.S. 576 (1981)...........................................................................................20

*Von Bulow v. Von Bulow*,
    634 F. Supp. 1284 (S.D. N.Y. 1986).................................................................22

*Wei v. Hawaii*,
    763 F.2d 370 (9th Cir. 1985) ...............................................................................8

*Woodford v. Community Action Agency*,
    239 F.3d 517 (2d Cir. 2001).................................................................................3

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)................................................................................3, 4

*Yeadon v. New York Transit Authority*,
    719 F. Supp. 204 (S.D. N.Y. 1989)...................................................................19

## RULES AND STATUTES

18 U.S.C. § 1965(b) ......................................................................................................15

v

18 U.S.C. § 1962 ...........................................................................................................19, 20, 21

18 U.S.C. §2331 .................................................................................................................13, 14

18 U.S.C. §2334(a) ..................................................................................................................15

18 U.S.C. §2339(b) n ..............................................................................................................24

137 Cong. Rec. S4511 04 (April 16, 1991) .............................................................................18

F.R.C.P. 4(j), 4(m) ............................................................................................................6, 7, 8

F.R.C.P. 8(a)(2) .........................................................................................................................4

F.R.C.P. 9(b) .............................................................................................................................4

F.R.C.P. 12(b)(6) .......................................................................................................................4

## I.   INTRODUCTION

The *Federal* Plaintiffs' First Amended Complaint ("FAC"), as amended by the *Federal*

Plaintiffs' RICO Statement applicable to Sami Omar al Hussayen,[1] fairly and plainly alleges that

al Hussayen provided material support and resources to al Qaida and affiliated terrorist

organizations.  Al Hussayen is a citizen of Saudi Arabia, where he now resides.  RICO Statement

Exh. A.  However, between roughly August 7, 1994 and September 23, 1998, al Hussayen

studied at Ball State University in Muncie, Indiana and Southern Methodist University in Dallas,

Texas.  RICO Statement Exh. A.  Al Hussayen received a Masters Degree in computer science

from SMU.  In January 1999, al Hussayen was again admitted to the United States, to pursue a

Ph.D. in computer science from the University of Idaho.   RICO Statement Exh. A.  He began his

studies at the University of Idaho in the spring semester of 1999.  On or about August 11, 1999,

al Hussayen was readmitted to the United States on an F-1 Student visa for the purpose of

pursuing his Ph.D.  Although al Hussayen provided web-based services and funding for

numerous Islamic charities at all times material, he did not disclose those activities in any of his

visa applications.  RICO Statement Exh. A.

From at least October 2, 1998 until February 13, 2003, al Hussayen provided expert

computer services, advice, assistance and support to terrorist front organizations and individual

supporters, in the form of web-site registration, management, administration and maintenance.

RICO Statement Exh. A.  Of particular note, al Hussayen actively assisted the Islamic Assembly

of North America ("IANA") and numerous other groups in the maintenance of their websites.  In

---

[1] Pursuant to paragraph 14 of Case Management Order No. 2 ("CMO2"), the *Federal* plaintiffs' RICO Statement amends the First Amended Complaint.  In view of this provision of CMO2, virtually every defendant has requested that the *Federal* plaintiffs file their RICO Statement in advance of the deadline for filing of that defendant's Motion to Dismiss.  The *Federal* plaintiffs have universally consented to that request, and entered into Stipulations with dozens of defendants pursuant to which the RICO Statements applicable to those defendants were filed at least thirty (30) days in advance of the deadline for the defendant's Motion to Dismiss.  Although Mr. al Hussayen has been represented by counsel in these consolidated proceedings since December of 2003, Mr. al Hussayen chose to file his Motion to Dismiss without requesting that the *Federal* plaintiffs first file their RICO Statement.

addition, al Hussayen served as a registered agent for IANA in Idaho, as well as for a number of other Internet websites associated with or belonging to that organization.  Al Hussayen was personally responsible for the content provided on each of those websites.  RICO Statement Exh. A.

Through the websites he maintained for the IANA, al Hussayen actively supported al Qaida's global campaign to commit terrorist attacks against the United States.  Among other things, the websites created and maintained by al Hussayen actively promoted al Qaida's *jihad* against the United States, recruited Islamic radicals to join al Qaida, and solicited financial support from al Qaida sympathizers and supporters throughout the World.  RICO Statement Exh. A.  On May 15, 2001, just 3½ months before the September 11th Attack, al Hussayen posted an article written by Sheik Alman al Ouda, one of al Qaida's spiritual leaders, called "Suicide Operations."  RICO Statement Exh. A.  The article advocated killing a great number of "enemies" through the suicidal takeover of an airplane and crashing it into "an important location":

> the *mujahid* must kill himself if he knows this will lead to killing a great number of the enemies.  In this new era, this can be accomplished with the modern means of bombing or bringing down an airplane on an important location that will cause the enemy great losses.

Through his role as an IANA officer and employee, al Hussayen also actively raised funds on behalf of that terrorist organization.  RICO Statement Exh. A.  From November 1999 through February 13, 2003, al Hussayen was actively involved in IANA's business transactions and fund raising activities, and helped direct money toward a number of ostensible charities which were in fact fronts for the al Qaida movement.  From August 1994 until at least February 2003, al Hussayen maintained at least six (6) different bank accounts in the United States.   From 1997, al Hussayen used some of these accounts to receive donations and large sums of money.

He transferred these sums to IANA and other organizations, and to Islamic radicals in Egypt, Canada, Saudi Arabia, Jordan and Pakistan.  RICO Statement Exh. A.

Al Hussayen now moves for dismissal of the claims against him.  In support of his Motion, al Hussayen argues that he was not properly served, and that this Court lacks personal jurisdiction to adjudicate the claims against him.  Al Hussayen also argues that the FAC should be dismissed for failure to state a claim against him, and that certain causes of action asserted in the FAC are not cognizable.  For the reasons set forth below, al Hussayen's Motion to Dismiss should be denied in its entirety.

## II.    APPLICABLE LEGAL STANDARDS

Al Hussayen moves to dismiss the FAC pursuant to F.R.C.P. 12(b)(6), for failure to state a claim.[2]  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether the *Federal* Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the FAC and RICO Statement and draw all reasonable inferences in favor of them.  *Wynder*, 360 F.3d at 77; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239

---

[2]  The Federal plaintiffs note that al Hussayen's motion requests dismissal on the grounds that the FAC violates Rule 8.  Obviously, a defendant seeking dismissal of claims based on alleged pleading deficiencies must do so through a motion to dismiss challenging the sufficiency of each disputed count under Rule 12(b)(6).  Accordingly, this Opposition addresses al Hussayen's challenges to the individual counts themselves.  Moreover, al Hussayen's arguments do not address the allegations of the RICO Statement, which amends the FAC under CMO2, and are therefore largely moot.  This result could have been avoided had al Hussayen requested that the *Federal* plaintiffs file their RICO Statement before filing his Motion to Dismiss, as virtually every other defendant has done.

F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P. 8(a)(2), which is extremely permissive.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002).  Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.* (*quoting Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2001 WL 936257 (D.C. Cir. July 12, 2001)  (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  *Id.* at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering.  *Id.*  The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference.  The district court found plaintiff's allegations of *scienter* conclusory and

held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge. *Id.* at 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." *Id.* at 186-87. The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187(*quoting Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (citations omitted).

More recently, in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Id.* at 511. The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required

to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P." *Id.* at 512.  Quoting the

unanimous Supreme Court ruling in *Swierkiewicz*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on
> liberal discovery rules and summary judgment motions to define
> disputed facts and issues and to dispose of unmeritorious claims.
> The provisions for discovery are so flexible and the provisions for
> pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

## III.   ARGUMENT

### A.   Plaintiffs Properly Served al-Hussayen in Accordance with CMO2

Al Hussayen alleges that the *Federal* plaintiffs failed to properly serve him in accordance

with the Federal Rules of Civil Procedure and CMO2, and that the notices published in the *USA*

*Today, International Herald Tribune, and Al-Quds Al-Arabi* did not meet constitutional

requirements.  None of the arguments raised by al Hussayen relative to service of the FAC upon

him warrant dismissal of the FAC.

#### 1.   Rule 4(m) Does Not Require Dismissal

Rule 4(m) invests the district courts with broad discretion to extend the time for effecting

service upon a defendant within the United States.  That Rule provides, in pertinent part:

> The service of the Summons and Complaint is not made upon a
> defendant within 120 days after the filing of the Complaint, the
> Court, upon motion or on its own initiative after notice to the
> plaintiff, shall dismiss the action without prejudice as to that
> defendant or direct that service be effected within a specific time;
> provided that the plaintiff shows good cause for the failure, the
> court shall extend the time for service for an appropriate period.
> This subdivision does not apply to service in an foreign country
> pursuant to subdivision (f) or (j)(1).

Courts within this circuit have consistently found that a plaintiff need not establish "good

cause" in order to obtain relief from the 120 day service period prescribed by Rule 4.  *Mejia v.*

*Kastle Hotel, Inc.*, 164 F.R.D. 343 (S.D.N.Y. 1996).  "Indeed, Rule 4(m), as amended in 1993, specifically changed the form of Federal Rule of Civil Procedure 4(j) by authorizing the Court to use its discretion in extending the time to serve process beyond the 120 days limit in the absence of good cause."  *Id.*  In this regard, the Advisory Committee notes to Rule 4(m) provide as follows:

> The new subdivision explicitly provides that the Court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizing the Court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown…  Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action, or if the defendant is abating service or conceals a defect in attempted service…

Given the 2nd Circuit's clear preference that litigation disputes be resolved on the merits, courts in the Circuit have routinely extended the 120 day service deadline in accordance with the discretionary authority afforded them under Rule 4(m), where doing so would result in no prejudice to the defendant.

As al Hussayen has suffered no prejudice as a result of the *Federal* plaintiffs' failure to serve him within the 120 days provided under Rule 4(m), and the dismissal of the claims against al Hussayen would result in a substantial waste of judicial resources, this Court should not dismiss plaintiffs' claims based on the failure to serve al Hussayen prior to his deportation to Saudi Arabia.  As noted previously, al Hussayen has been represented by counsel in these consolidated proceedings since March 18, 2004.  As a result, the fact that he was not served within 120 days of the filing of the *Federal* plaintiffs' Complaint or FAC, resulted in no prejudice to him.  Indeed, al Hussayen does not even suggest that he suffered any prejudice in his Motion to Dismiss.  Furthermore, any dismissal of the *Federal* plaintiffs' claims against al Hussayen would result in a substantial waste of judicial resources.  In this regard, it is important to note that any dismissal under Rule 4(m) is *without prejudice*.  In the event that the Court were

to dismiss al Hussayen without prejudice prior to September 11, 2005, the *Federal* plaintiffs would still be within the limitations period for their ATA, RICO and federal common law claims.  Thus, any dismissal within that time would simply result in the filing of a new action against al Hussayen, and the further delay of substantive proceedings against him.  Moreover, to the extent that the statute of limitations would preclude the *Federal* plaintiffs from re-filing any of their claims against al Hussayen, such dismissal would generally be inappropriate in this Circuit.  Accordingly, the Court should decline al Hussayen's invitation to dismiss the claims asserted against him on this technical basis.[3]

It should be noted that virtually every case al Hussayen cites in support of his argument that Rule 4(m) requires dismissal actually involved an analysis of  the previous Rule 4(j), which Rule 4(m) replaced.  *See Gordon v. Hunt*, 835 F.2d 452, 453 (2d Cir. 1987) (applying former F.R.C.P. 4(j)); *Delicata v. Bowen*, 116 F.R.D. 564, 565-67 (S.D.N.Y. 1987) (applying former F.R.C.P. 4(j)); *Geiger v. Allen*, 850 F.2d 330, 334 (7th Cir. 1988) (applying former F.R.C.P. 4(j)); *Wei v. Hawaii*, 763 F.2d 370, 371 (9th Cir. 1985) (applying former F.R.C.P. 4(j)).  As Rule 4(m) was adopted largely to avoid the harsh results arising from strict application of Rule 4(j), al Hussayen's reliance on these authorities is misplaced and arguably improper.

### 2.    Plaintiffs' Service of Process on al Hussayen via Publication was Effective and Consistent with Due Process Requirements

Al Hussayen argues that the Plaintiffs' chosen method to attempt service by publication was not reasonably calculated to advise him of this lawsuit.  It is difficult to argue credibly that one has not received notice of a lawsuit when one has retained counsel, appeared, and filed a motion to dismiss.  Nevertheless, al Hussayen argues that notice of the lawsuit in the *USA Today*,

---

[3] Al Hussayen also argues that the failure to serve him within 120 days violates paragraph 11 of CMO2, and requests that the Court dismiss him on this ground as well.  However, paragraph 11 of CMO2 merely recites the language of Rule 4(m).  Therefore, the *Federal* plaintiffs respectfully submit that the arguments advanced by al Hussayen based on paragraph 11 of CMO2 are entirely duplicative of the arguments he advances under Rule 4(m), and in no way alter the analysis set forth above.

*International Herald Tribune*, and the *Al-Quds Al-Arabi* newspapers was constitutionally insufficient.  Al Hussayen further asserts that the *Al-Quds Al-Arabi*, which is published in Arabic, is not distributed in Saudi Arabia and therefore failed to provide notice of the instant lawsuit.

The Second Circuit stated the following in *S.E.C. v. Tome,* 833 F.2d 1086, 1089 (2d Cir. 1987):

> To submit a party to the jurisdiction of a court, due process has long been held to require the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend.

Justice Jackson further stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950).   The question before this Court therefore is whether publication in the *USA Today*, *International Herald Tribune*, and the *Al-Quds Al-Arabi* newspapers was "reasonably calculated" to notify al Hussayen of the suit against him so as to satisfy due process.  Al Hussayen's appearance in this case sufficiently demonstrates that service by publication was adequate and thus consistent with due process requirements.

The Second Circuit stated in *Tome*:  "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of constructive notice." *Tome,* 833 F.2d at 1089.  At a minimum, in this instance there is constructive notice because al Hussayen has appeared to defend this action.  As the United States Supreme Court stated in *Grannis v. Ordean,* 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."  The record in this matter establishes that service by publication was adequate, that al Hussayen received notice of the suit,

understood that he should hire counsel, and understood his rights because he instructed said

counsel to file a motion to dismiss.  This manifests the adequacy of the notice by publication.

Justice Jackson succinctly summed up this matter when he wrote:

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably
> calculated, under all the circumstances, to apprise interested parties
> of the pendency of the action and afford them an opportunity to
> present their objections.  *Milliken v. Meyer,* 311 U.S. 457 (1940);
> *Grannis v. Ordean,* 234 U.S. 385; *Priest v. Board of Trustees of
> Town of Las Vegas,* 232 U.S. 604 (1914); *Roller v. Holly,* 176 U.S.
> 398 (1900). The notice must be of such nature as reasonable to
> convey the required information, *Grannis v. Ordean, supra,* and it
> must afford a reasonable time for those interested to make their
> appearance, *Roller v. Holly, supra,* and *cf Goodrich v. Ferris,* 214
> U.S. 71 (1909).  But if with due regard for the practicalities and
> peculiarities of the case these conditions are reasonably met, the
> constitutional requirements are satisfied.  'The criterion is not the
> possibility of conceivable injury but the just and reasonable
> character of the requirements, having reference to the subject with
> which the statute deals.' *American Land Co. v. Zeiss,* 219 U.S. 47,
> 67 (1911); *and see Blinn v. Nelson,* 222 U.S. 1, 7 (1911).

*Mullane,* 399 U.S. at 314-15.

By its September 15, 2004 Order, this Court agreed that publication in these periodicals

was appropriate.[4]  It is significant to point out that al Hussayen was represented by counsel in the

consolidated action (03 MDL 1570) at the time of the Order permitting publication and was

arguably notified that the Plaintiffs intended to serve him in this manner.  Actual publication did

not begin until December 22, 2004.  During that three month period, multiple defendants (both

foreign and domestic) who were identified on the publication list came forward to accept service

---

[4] Indeed, this Court recognized that publication of the notice in the the *Al-Quds Al-Arabi* was reasonably calculated to apprise defendants of the lawsuit.  The *Al-Quds Al-Arabi* is published in London and is circulated in Europe, the Middle East, North Africa, and North America.  The newspaper has specifically been chosen in the past by terrorists for the granting of interviews, has published several fatwas by Osama bin Laden, and has similarly received statements from al Qaida.  Moreover, this Court is in agreement with other courts that the *Al-Quds Al-Arabi* is an appropriate place to publish the notice of suit.  *See Mwami, et al. v. Osama Bin Laden, et al.,* Case No. 99-0126 (D.D.C. Aug. 2, 1999); *Havlish v. Osama Bin Laden, et al.,* Case No. 02-0305 (D.D.C.) (J.R.); *Burnett v. Al Baraka Investment & Development Corp., et al.,* Case No. 02-1616 (D.D.C. (J.R.).

and negotiate briefing schedules.  Counsel for al Hussayen could have similarly contacted the

Plaintiffs to discuss an agreement to accept service on behalf of their client but failed to do so.

*See Ehrenfeld v. Bin Mahfouz*, 2005 U.S. Dist. LEXIS 4741 (S.D.N.Y. March 23, 2005) (holding

that service on a foreign defendant's U.S. attorney would successfully provide the defendant

with notice of the lawsuit).  Notice by publication is designed to impart information about a

lawsuit.  However, there is nothing that requires the target to gain the information directly from

reading the notice himself, as opposed to someone else advising him of the notice.  Without

question, the notice in this case accomplished the goal of informing al Hussayen of the instant

action.

Al Hussayen also argues that the Plaintiffs failed to comply with the Court's Order

requiring publication of the various complaints on (www.september11terrorlitigation.com),

contending that publication was ineffective because the website was not functioning until near or

after the conclusion of the four-week publication period.  This argument is both factually

inaccurate and legally erroneous.  The legal notices were published in the *USA Today* and *Al-*

*Quds Al-Arabi* on December 23, 2004, December 30, 2004, January 6, 2005, and January 13,

2005.  Publication similarly occurred in the *International Herald Tribune* on December 22, 2004,

December 27, 2004, January 5, 2005, and January 10, 2005.  The website was functioning on

December 21, 2004 with several complaints available to the webpage's visitors.  Additional

complaints were added to the website on December 23, 2004.  The website was thus active

throughout the entire publication period.  Any delay in having each of the complaints posted on

the website as of the first date of publication was only minimal (24 hours) and cannot constitute

a failure to provide notice of the lawsuits.

Al Hussayen's further contention that service upon him by publication could only be

effected through a newspaper widely distributed within Saudi Arabia is particularly unreasonable

and disingenuous.  Saudi Arabia is an absolute monarchy, governed by Islamic law (*Sharia*).

The Basic Law (which sets out the system of government, rights of the citizens and powers of the

State) provides "that the media's role is to educate the masses and boost national unity *and that it*

*can be banned if it gives rise to mischief and discord, compromises the security of the State and*

*its public image, or offends man's dignity and rights*."  Consistent with this view of the media's

role in Saudi society, the government actively restricts freedom of speech and of the press, and

routinely imprisons and otherwise sanctions members of the media who engage in conduct

deemed inimical to the interests of the State.  Given the Saudi regime's absolute dominance of

the media and the draconian sanctions it has imposed upon members of the press, it is absolutely

unreasonable to suggest that any Saudi periodical would have agreed to publish notice of this

suit, which names the Saudi government and prominent members of the Saudi Monarchy as

defendants.  In fact, the *Federal* Plaintiffs made several attempts to contact the Saudi newspaper

Al Hayat, which is owned by Prince Khalid Bin Sultan Bin Abdul Aziz Al Saud, to discuss

publication of the notice.  Those calls were never returned.

The record in this matter clearly establishes that the Plaintiffs' service of process on al

Hussayen via publication was effective and consistent with due process requirements.

**B.**     **Plaintiffs State Claims Against al Hussayen Under the ATA**

The allegations of the FAC and RICO Statement sufficiently state claims pursuant to the

ATA.  Under the ATA, a defendant is liable if it provided any material support to al Qaida with

knowledge of its terrorist agenda or if it aided and abetted al Qaida or Osama bin Laden in their

course of terrorist conduct.  *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir.

2002), *motion to stay mandate den'd*., 297 F.3d 542 (7th Cir. 2002).  As detailed above,

Plaintiffs have alleged that al Hussayen, acting individually and through IANA, knowingly and

intentionally provided money, computer and financial services, and other forms of material

support to Osama bin Laden and al Qaida.  This Court has already recognized that, under the

ATA, "material support includes money [and] financial services . . . ."  *In re Terrorist Attacks*

*on September 11, 2001*, 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005) ["January 18 Order"].

Plaintiffs also properly allege causation under the ATA.  In fact, the FAC asserts that

"[a]bsent the material support and resources provided by the co-defendants, both directly and

indirectly, al Qaida would not have possessed the financial resources, physical assets,

membership base, technological knowledge, communication skills, and global reach required to

conceive, plan and execute the September 11th Attack."  FAC ¶ 74.  *See also Boim v. Quranic*

*Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or

a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the

persons who actually commit the violence.").  Moreover, this Court has already held that "[i]n

light of Al Qaeda's public acknowledgments of its war against the United States, the September

11 attacks may be the natural and probable consequence of knowingly and intentionally

providing material support to al Qaeda."  *In Re Terrorist Attacks on September 11, 2001*, 349

F.Supp.2d at 826.  Finally, as this Court has previously recognized, "Plaintiffs do not have to

allege that Defendants knew specifically about the September 11 attacks or that they committed

any specific act in furtherance of that attack."  *Id.* at 829.  Under the standards set forth in this

Court's January 18 Order, plaintiffs have properly pleaded a claim under the ATA.

Al Hussayen also presents the novel argument that the ATA may not be invoked by the

plaintiffs in the case because, in his view, the September 11th Attack constituted an act of

"domestic terrorism" and not "international terrorism" within the meaning of 18 U.S.C. §2331.[5]

The ATA defines "international terrorism" as activities that:

---

[5] Al Hussayen recognizes that this Court has already held that the September 11th Attack constitutes an act of
international terrorism within the meaning of 18 U.S.C. § 2331.  However, he suggests that the Court's ruling on this
point was merely provisional, and that the Court should now abandon that finding.  Plaintiffs respectfully submit
that al Hussayen's novel view of the Court's January 18, 2005 decision is inconsistent with the plain language and
reasoning of that decision, and that the Court need not revisit this issue further.

a)      involve violent acts or acts dangerous to human life that a violation of the criminal laws of the United States or of any state, and that would be a criminal violation if committed within the jurisdiction of the United States of any state;

b)      appear to be intended-

    (i)      to intimidate or coerce a civilian population:

    (ii)      to influence the policy of the government by intimidation or coercion; or

    (iii)      to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

occur primarily outside the territorial jurisdiction of the United States, ***or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum***…

18 U.S.C. §2331(1) (emphasis supplied.)

The September 11th Attack clearly constitutes "international terrorism" within the meaning of the foregoing section. The attack was conceived and planned in Sudan and Afghanistan, coordinated and financed in Europe and elsewhere, and carried out in the United States. Thus, it is beyond dispute that it transcended national boundaries in terms of the manner in which it was carried out. Furthermore, al Qaida operates outside of the United States, and carries out terrorist attacks, including the September 11th Attack, to intimidate and coerce people throughout the entire World. In view of the foregoing, al Hussayen's argument that the September 11th Attack did not constitute an act of international terrorism is patently disingenuous and inconsistent with the plain language of the statute.

### C.     The Court Has Jurisdiction Over al Hussayen

Al Hussayen's argument that he is not subject to jurisdiction in this Court proceeds on the assumption that plaintiffs fail to state claims under the ATA and RICO. *See* Al Hussayen Mem. at pp. 8 and 10. It is beyond question that if plaintiffs *do* state a claim against al Hussayen under

the ATA or RICO, this Court may assert personal jurisdiction over al Hussayen to adjudicate the ATA and RICO claims, as well as all of the other claims asserted in the FAC.  The ATA provides that claims may be brought in "any district where any plaintiff resides" and that process "may be served in any district where the defendant resides, is found, or has an agent."  18 U.S.C. § 2334(a).  RICO similarly provides that "process … may be served in any judicial district of the Untied States…"  18 U.S.C. § 1965(b).  Because both statutes provide for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United States."  *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984).  Between 1994 and 2003, Al Hussayen resided primarily in the United States, where he attended Ball State University, Southern Methodist University and the University of Idaho.  Plaintiffs' claims against al Hussayen are predicated almost exclusively on conduct he engaged in while in the United States.  Thus, al Hussayen obviously has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction.  Moreover, if the court has personal jurisdiction over al Hussayen with respect to plaintiffs' ATA or RICO claims, then it may also assert pendent personal jurisdiction over the remaining claims that derive from the same events.  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993).

Even if plaintiffs do not state a claim under the ATA or RICO, those statutes nonetheless provide a basis for the assertion of jurisdiction over al Hussayen, so long as plaintiffs' claims under either the ATA or RICO are at least colorable.  As the Second Circuit explained in *Herrmann*:

> Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

*Id.* at 1055.

Here, regardless of whether the Court finds that plaintiffs have stated claims under the ATA or RICO, plaintiffs' claims against al Hussayen under those statutes are not "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" so as to preclude the exercise of jurisdiction.

Al Hussayen also is subject to jurisdiction here because, as alleged in the FAC and RICO Statement, he conspired with al Qaida to attack the United States.  Courts within this Circuit have recognized that they may assert jurisdiction over a defendant based on the activities of co-conspirators in the forum.  *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 805 (acts committed in New York by co-conspirators subject out of state defendant to jurisdiction under CPLR 302(a)(2)); *All State Life Ins. Co. v. Linter Group Ltd.,* 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (noting that "[m]any courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory" and asserting personal jurisdiction over absent defendants pursuant to a conspiracy theory by imputing forum acts of co-conspirators done in furtherance of conspiracy); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991) (asserting personal jurisdiction over non-resident defendant via conspiracy theory).  The actions of the co-conspirators within the forum serve to establish minimum contacts sufficient to satisfy Due Process over the non-resident defendant. *Dixon v. Mack,* 507 F. Supp. 345, 352 (S.D.N.Y.) (1980) ("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the acts, of course complained of in the suit, supplies the necessary minimum contacts . . ."); *Andre Emmerich Gallery v. Segre,* 1997 WL

16

672009 (S.D.N.Y. Oct. 29, 1997) (imputation of forum activities of co-conspirator to non-resident defendant establishes minimum contacts satisfy Due Process).

The *prima facie* showing of conspiracy requires allegations of the primary tort (in this case, the September 11th Attack) and four additional elements:  (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the defendant's intentional participation in the furtherance of a plan; and (4) resulting damage or injury. *See Simon v. Philip Morris, Inc.,* 86 F.Supp.2d 95, 120 (E.D.N.Y. 2000)*; see also Chrysler Capital,* 778 F. Supp. at 1267.  This Court has further held that:  "[t]o warrant the inference that a defendant was a member of the conspiracy, Plaintiffs must show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the out-of-state defendant." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 805 (citations omitted).

The plaintiffs have satisfied these elements here.  Fairly read, the FAC and RICO Statement allege that al Hussayen, personally and through IANA, knowingly provided funds and logistical support to al Qaida.  Thus, the plaintiffs have alleged that al Hussayen engaged in an overt act in furtherance of the al Qaida conspiracy.  Moreover, al Qaida's ambition to attack the United States, and New York in particular, was well known for many years prior to the September 11th Attack, as evidenced by the 1993 bomb attack on the World Trade Center and the foiled plot to simultaneously attack the George Washington Bridge and Holland Tunnel.  Thus, the potential effects in New York of contributing to al Qaida were undeniably foreseeable to that terrorist organization's sponsors and supporters, including al Hussayen.  Further, the Plaintiffs have specifically alleged that "the September 11th Attack was a direct, intended and foreseeable

17

product" of the material support provided by al Hussayen and al Qaida's other sponsors. FAC ¶ 74. Indeed, given that al Qaida had repeatedly declared that its primary objective was to conduct terrorist attacks against the United States, it is self evident that the entities and people who chose to knowingly sponsor al Qaida did so in order to assist that terrorist organization in mounting successful attacks, and that the individuals chosen to carry out such attacks act "for the benefit" and "on behalf" of all of the organization's members and sponsors. When read in a light most favorable to the plaintiffs, the allegations of the FAC and RICO Statement give rise to a reasonable inference that al Hussayen was a member of al Qaida's conspiracy to attack America. As a result, the actions of al Hussayen's co-conspirators, including the September 11th hijackers themselves, are imputable to al Hussayen for jurisdictional purposes and serve to establish minimum contacts with New York sufficient to satisfy Due Process.

### D.   Al Hussayen is Not Entitled to Dismissal of Plaintiff's Other Claims

#### 1.   Plaintiffs' Assault and Battery and Intentional Infliction of Emotional Distress Claims Are Not Barred By The Statute of Limitations

The *Federal* Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not time-barred for two reasons. First, these claims are subsumed within plaintiffs' claims under the ATA, which imports into that federal cause of action "the remedies of American tort law." *See* 137 Cong. Rec. S4511 04 (April 16, 1991); *see also Boim*, 291 F.3d at 1010 (language and history of ATA "evidence[] an intent by Congress to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law"). To the extent that these claims have been "federalized" under the Anti-Terrorism Act, they are governed by federal law. *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) (federal law determines the "extent and nature" of claims

brought under a federal statute).[6]  State statutes of limitation are inapplicable to federal common law claims.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). *See also Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306, 309 (E.D. La. 1994), *reconsideration denied*, 1995 WL 672835 (E.D. La. Nov. 9, 1995) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).

Moreover, all of the *Federal* Plaintiffs' claims arise from al Hussayen's participation in the conspiracy to conduct terrorist attacks against the United States; a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until the *Federal* Plaintiffs reasonably should have become aware of al Hussayen's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D. N.Y. 2004).  Given this fact, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").

## 2.  Plaintiffs State a Valid Cause of Action Under RICO

Al Hussayen also contends that the *Federal* Plaintiffs have not properly pleaded their RICO claims.  Al Hussayen is wrong.

Plaintiffs' FAC and RICO Statement asserts RICO claims against al Hussayen pursuant to sections 1962(a), (c) and (d).  The identified enterprise - the al Qaeda movement, also referred

---

[6] Should plaintiffs' claims under the ATA fail for any reason, however, the common law claims also exist as separate claims arising under state law.  In determining which states' laws govern, this Court would apply the choice-of-law rules used by New York.  *See Ideal Electronic Co. v. International Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997), *aff'd on appeal after remand,* 203 F.3d 53 (D.C. Cir. 1999) (federal court hearing state-law claims applies choice of law rules of the place in which it sits).

to as Radical Muslim Terrorism - is a known terrorist organization with a well documented desire to perpetrate acts of terrorism and racketeering.  *See* RICO Statement ¶ 6.  Thus, Plaintiffs have sufficiently pled the existence of an enterprise:  "a group of persons associated together for a common purpose of engaging in a course of conduct" or "an ongoing organization, formal or informal."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981).

The Plaintiffs' FAC and RICO Statement allege that al Hussayen engaged in conduct in furtherance of the enterprise which is actionable under section 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

Fairly read, the RICO Statement alleges that al Hussayen, as an IANA officer and employee, was actively involved in business transactions, fundraising, and other activities that directed money towards a number of so-called "charities" which were in fact diverting contributions to al Qaida.  As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

The RICO Statement similarly alleges sufficient involvement by al Hussayen in the enterprise to sustain claims under Sections 1962(c) and (d).  A plaintiff asserting a civil claim under 1962(c) must allege that the defendant participated in the operation or management of the enterprise.  *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003).

To sustain a claim under 1962(d), the plaintiff must allege that the defendant was a "central figure" in the underlying scheme.  Id. at 165.  However, "a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to 'participate in the enterprise.'"  *United States v. Louie*, 625 F. Supp. 1327, 1333 (S.D. N.Y. 1985) (citing 18 U.S.C. § 1962(c)).  Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise."  *Friedman v. Hartmann*, 1994 U.S. Dist. LEXIS 9727, 4-5 (S.D. N.Y. 1994).

Here, the Plaintiffs have satisfied the pleading standards applicable to their 1962(c) and 1962(d) claims, as set forth above.  The plaintiffs allege that al Hussayen actively assisted the IANA and numerous other groups in creating and maintaining websites which actively promoted al Qaida's *jihad* against the United States, recruited Islamic radicals to join al Qaida, and solicited financial support from al Qaida sympathizers and supporters throughout the World. Indeed, counter-terrorism experts have concluded that the internet is one of the most critical vehicles used by al Qaida for recruitment and fundraising.  In view of the allegations regarding al Hussayen's integral and pervasive sponsorship of al Qaeda's operations throughout the world, the plaintiffs have adequately alleged that al Hussayen played a direct and active role in the management and operation of al Qaeda's fundraising scheme.  As such, the plaintiffs have met their pleading burden in relation to their Section 1962(c) and 1962(d) claims, particularly given the fact that the plaintiffs have not yet been afforded the opportunity to conduct discovery.

Plaintiffs also have adequately alleged proximate cause.  This requirement is satisfied if plaintiffs allege that the defendant's injurious conduct is both the factual and the proximate cause

21

of the injury alleged.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (*citing*

*Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Because "[t]he legal

concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry,"

dismissal at the pleadings stage of a RICO claim is likely imprudent.  *National Asbestos Workers*

*Medical Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 225 (E.D.N.Y. 1999).  This Court's

decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l*

*Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983)

and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this

Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its

needs, and its norms change, so too must the contours of tort liability and enforcement

procedures."  *Id.*  Further, failure to explain the alleged injury in detail is not fatal.  *Von Bulow v.*

*Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986).  Allegations of injury, because they

necessarily involve questions of fact, must be construed liberally on a motion to dismiss under

Rule 12(b)(6).  *Id.*  The Complaint need only "allege[] compensable injury flowing from the

commission of the predicate acts."  *Id.* (citations omitted).  Here, plaintiffs allege that they were

injured directly by al Hussayen's participation in al Qaida's campaign to attack the United

States, and in particular by its provision of "material support and resources to al Qaida."  FAC ¶¶

72-74.  Al Hussayen has participated extensively in al Qaida's global operations, and specifically

in furthering al Qaida's goal of committing acts of terrorism against the United States, by

providing al Qaida with "the financial resources, physical assets, membership base, technological

knowledge, communication skills, and global reach required to conceive, plan and execute the

September 11th attack."  FAC ¶ 74.  Accordingly, Plaintiffs have properly pled causation under

RICO.

### 3. Plaintiffs' Punitive Damages, Conspiracy and Aiding and Abetting Causes of Action Ought Not Be Dismissed

Al Hussayen seeks dismissal of Plaintiffs' claim for punitive damages on the ground that, under New York law, punitive damages are a remedy, not a cause of action. Al Hussayen presents no argument that plaintiffs are not entitled to recover punitive damages in this lawsuit. Indeed, it is clear that punitive damages are available in connection with the claims that plaintiffs assert. Further, because the question of what law governs plaintiffs' claims remains open, this Court should not dismiss plaintiffs' claim for punitive damages because of this technicality of New York law. The same is true with respect to plaintiffs' claims for conspiracy and aiding and abetting. If plaintiffs have properly pleaded a conspiracy and aiding and abetting theories of liability against al Hussayen, those claims should not be dismissed at this time merely because, under New York, this is an alternate basis of liability rather than a separate claim.

### 4. Plaintiffs' Negligence Claims are Cognizable

Plaintiffs have stated a valid claim in negligence against al Hussayen under the liberal pleading requirements of Rule 8. International terrorism is a serious and deadly problem that threatens the health, safety and welfare of people throughout the world, and the vital interests of the United States. *See* 18 U.S.C. §2339(b) n.(a)(1). Given that fact, it is clear that al Hussayen owed a duty to refrain from materially supporting al Qaida, as reflected in the ATA and numerous international agreements. Plaintiffs have alleged that al Hussayen breached that duty by providing material support to al Qaida, and that their injuries were the foreseeable and proximate result of al Hussayen's conduct. FAC at ¶ 74. In view of these allegations, the *Federal* plaintiffs have stated a valid cause of action in negligence against al Hussayen, the resolution of which is not appropriate in the context of a motion to dismiss.

IV.     **CONCLUSION**

For all of the foregoing reasons, the *Federal* Plaintiffs respectfully submit that the Motion

to Dismiss of Sami Omar al Hussayen should be denied in its entirety.

Respectfully submitted,

COZEN O'CONNOR

By:     _____
        STEPHEN A. COZEN (SC 1625)
        ELLIOTT R. FELDMAN (EF 8111)
        SEAN P. CARTER (SC 0636)
        MARK T. MULLEN (MM 2384)
        1900 Market Street
        Philadelphia, PA  19103

        Attorneys for Plaintiffs

PHILA1\2271560\1 117430.000

24