# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |
|---|---|

*This document relates to:*

> *Estate of O'Neill, et al. v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.)
> *Estate of O'Neill, et al. v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SCHREIBER & ZINDEL TREUHAND ANSTALT, FRANK O. ZINDEL, ENGELBERT SCHREIBER, SR. AND ENGELBERT SCHREIBER, JR.'S MOTION TO DISMISS

**SCHIFF HARDIN LLP**

Donald A. Klein (DK7821)
623 Fifth Avenue
New York, NY 10022
(212) 753-5000

Of Counsel:
John N. Scholnick
Ayad P. Jacob
6600 Sears Tower
Chicago, IL 50505
(312) 258-5500

Attorneys for Defendants
*Schreiber & Zindel Treuhand
Anstalt, Frank O. Zindel, Engelbert
Schreiber, Sr., and Engelbert
Schreiber, Jr.*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ii

I.    INTRODUCTION ..........................................................................................................1

      A.    Facts And Procedural History .............................................................................2

II.    ARGUMENT ................................................................................................................5

      A.    Plaintiffs' Claims Must Be Dismissed For Insufficiency Of Service Of Process Under Liechtenstein Law. ..................................................................5

      B.    Plaintiffs' Claims Must Be Dismissed For Lack Of Personal Jurisdiction. .....................................................................................................9

            1.    Standard of Review .................................................................................9

            2.    Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute. ............................................................................................10

                  a.    Plaintiffs' Conclusory Allegations Of Conspiracy Are Insufficient To Establish Specific Jurisdiction Over The Defendants. ............................................................10

                  b.    Defendants Lack The Requisite Contacts With New York To Support General Jurisdiction. ................................12

            3.    Defendants Lack The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction. ..........................................................................................14

                  a.    Defendants Lack Substantial, Continuous, And Systematic Contacts With The United States Sufficient To Support General Jurisdiction. ...................14

                  b.    Defendants Are Not Subject to Specific Jurisdiction. ..................................................................................17

III.    CONCLUSION ...........................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Aerotel Ltd. v. Sprint Corp.*,
100 F.Supp.2d 189 (S.D.N.Y.2000)................................................................12

*Aquascutum of London, Inc. v. S.S. American Champion*,
426 F.2d 205 (2d Cir.1970)......................................................................16

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir.1999).......................................................................9

*Bozell Group, Inc. v. Carpet Co-op of America Assoc., Inc.*,
No. 00 Civ 1248, 2000 WL 1523282 (S.D.N.Y. October 11, 2000) ................................16

*Burnett v. Al Baraka Invest. and Dev. Corp.*,
292 F.Supp.2d 9 (D.D.C. 2003) ................................................................17

*Calder v. Jones*,
465 U.S. 783 (1984)...........................................................................17

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991)..............................................................11

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F.Supp.2d 736 (S.D.N.Y. 2004)..............................................................17

*Delaware Corp. v. Aluminio Conesa, S.A.*,
No. 96 C 6853, 1997 WL 282880 (N.D. Ill. May 16, 1997)............................................7

*Frummer v. Hilton Hotels Int'l Inc.*,
19 N.Y.2d 533, 536 (1967)...................................................................12-13

*Hanson v. Denckla*,
357 U.S. 235, 253 (1940).......................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 413 (1984)........................................................................15-16

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
763 F.2d 55 (2d Cir. 1985)..................................................................13, 16

*In re Terrorist Litigation*,
349 F. Supp.2d 765 (S.D.N.Y. 2005)........................................................*passim*

*International Shoe v. Washington,*
326 U.S. 310 (1945)......................................................................14, 15

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,*
160 F.Supp.2d 722 (S.D.N.Y.2001)..............................................13, 16

*Jung v. Neschis,*
No. 01 Civ. 6993, 2003 WL 1807202 (S.D.N.Y. April 7, 2003).....................8-9

*Lehigh Valley Indus., Inc. v. Birenbaum,*
527 F.2d 87 (2d Cir. 1975).................................................................11

*Mareno v. Rowe,*
910 F.2d 1043 (2d Cir. 1990), *cert. denied,* 498 U.S. 1028 (1991).................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir.), *cert. denied,* 519 U.S. 1006 (1996)...........................9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
526 U.S. 344 (1999).........................................................................5

*Omni Capital Int'l v. Rudolf Waolff & Co.,*
484 U.S. 97 (1987)..........................................................................5

*PDK Labs, Inc. v. Friedlander,*
103 F.3d 1105 (2d Cir.1997)................................................................9

*Prewitt Enterprises, Inc. v. OPEC,*
353 F.3d 916 (11th Cir. 2003)..............................................................5

*Proctor & Gamble Cellulose Co. v. Viskoza-Loznica,*
33 F. Supp. 2d 644 (W.D. Tenn. 1998).....................................................7

*Resource Ventures, Inc. v. Resources Mamt. Int'l, Inc.,*
42 F. Supp.2d 423 ( D. Del. 1999).........................................................7

*Umbenhaur v. Woog,*
969 F.2d 25 (3d Cir. 1992).................................................................7

*U.S. v. International Broth. of Teamsters,*
945 F.Supp. 609 (S.D.N.Y. 1996)..........................................................14

*Vendetti v. Fiat Auto S.p.A.,*
802 F.Supp. 886 (W.D.N.Y.1992)...........................................................13

*Whitaker v. American Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)……………………………………………………………......9

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir.2000), *cert. denied*, 532 U.S. 941 (2001)…………………………….12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)…………………………………………………………………...15

## Federal Rules and Statutes

Fed. R. Civ. P. 4(h)………………………………………………..………….…….5-6

Fed. R. Civ. P. 4(f)…………………………………...…………………………5-9

Fed. R. Civ. P. 4(k)(2)……………………………………………………….14

## State Law and Rules

N.Y. C.P.L.R. § 301…………………………………...…..……………………12

N.Y. C.P.L.R. § 302(a)(2)……………………………...………………………11

Defendants, Schreiber & Zindel Treuhand Anstalt, Frank Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr. respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' Second Amended Complaints in *Estate of O'Neill, et al. v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.) and *Estate of O'Neill, et al. v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.) pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and Fed. R. Civ. R. 12(b)(2) for lack of personal jurisdiction.

## I.
## INTRODUCTION

Plaintiffs have brought the above-referenced actions in an effort to assign responsibility for the tragic events of September 11, 2001 ("September 11th"), one of the most horrific acts of terrorism ever committed. While we empathize with the trauma and emotion intertwined with the events of September 11th, Plaintiffs have, without sufficient basis, included individuals and entities as defendants irrespective of the damage done to the reputation of these innocent persons and businesses by the publication of groundless allegations against them. Indeed, this Court has already dismissed numerous defendants due in part to pleading insufficiencies in this consolidated proceeding. *See In re Terrorist Litigation*, 349 F. Supp.2d 765 (S.D.N.Y. 2005). Schreiber & Zindel Treuhand Anstalt ("Schreiber & Zindel"), Frank O. Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr. (collectively referred to hereinafter as "Defendants" unless individually referenced) are among those wrongly accused of being participants in these abhorrent acts.

Although Plaintiffs have pled insufficient facts to state a claim against the Defendants, this motion to dismiss is about two threshold matters:  the failure of Plaintiffs to have properly served Defendants with process and the absence of personal jurisdiction over Defendants.

-1-

## A.   Facts And Procedural History

Schreiber & Zindel is an "anstalt" existing and organized under the laws of the Principality of Liechtenstein. (Declaration of Frank O. Zindel ¶ 6).[1] An anstalt (also known as an "establishment") is a form of entity that is a hybrid between a company limited by shares and a foundation. (Zindel Decl. ¶ 7). It has no members or shareholders, but it does permit its founders to hold certain rights. (*Id.*). An anstalt can conduct all forms of commercial and non-commercial activities, including the holding of passive investments. (*Id.*). Schreiber & Zindel was organized in 1990. (Declaration of Engelbert Schreiber, Sr. ¶ 5). Schreiber & Zindel is in the business of organizing and administering legal entities – whether they are corporations, trusts or foundations – in Liechtenstein. (Zindel Decl. ¶ 8). In order to conduct such a business an anstalt must be licensed as a trust company by the Liechtenstein government. (Zindel Decl. ¶ 7). This licensure ensures that the principals have sufficient education to conduct such a business and that the business is conducted properly. (*Id.*). Schreiber & Zindel is licensed as a trust company. (*Id.*).

Dr. Frank Zindel is a citizen of Switzerland and resides in Vaduz, which is the capital of the Principality of Liechtenstein. (Zindel Decl. ¶ 1). He joined Schreiber & Zindel in March 1998. (Zindel. Decl. ¶¶ 4-5). Before joining Schreiber & Zindel, Dr. Zindel obtained his Doctor of Law degree, graduating summa cum laude from Zurich University in 1995. (Zindel Decl. ¶ 4). He was admitted to the bar of Switzerland in 1996. (*Id.*). Prior to 1998, he apprenticed with the Edsaco Group in London, Jersey and the Isle of Man, with the Banque National de Paris

---

[1] This motion is supported by the accompanying separate Declarations of Frank O. Zindel, Engelbert. Schreiber, Sr., Engelbert Schreiber, Jr. and Guntram Wolf. Mr. Wolf is a lawyer, licensed to practice law in Liechtenstein, and offers his opinion on the law of Liechtenstein regarding the lawful manner of service of process upon Liechtenstein citizens in connection with foreign proceedings and the failure of Plaintiffs to comply with such law.

Jersey Trust Corporation Limited in Jersey and with the Banque Nationale de Paris Private Bank & Trust Cayman Limited in the Cayman Islands. (*Id.*).

Engelbert Schreiber, Sr. is a citizen of Liechtenstein and resides in Vaduz. (Schreiber, Sr. Decl. ¶ 1). Following the successful completion of a bank apprenticeship, he joined the Liechtenstein Landesbank in 1954. (Schreiber, Sr. Decl. ¶ 4). While there Mr. Schreiber, Sr. advanced to a number of management positions, ultimately obtaining general signatory authority for the bank. (*Id.*). In 1967 he became the representative of Zurich Insurance Company for its business in Liechtenstein. (*Id.*) At the same time he founded his own trust company in Vaduz. (*Id.*). Since 1986 he has also been associated with Zurich Insurance as an independent agent. (*Id.*).

Mr. Schreiber, Sr. was one of the founders of Schreiber & Zindel and has been a partner of the firm since 1990. (Schreiber, Sr. Decl. ¶ 5).

Engelbert Schreiber, Jr. is also a citizen of Liechtenstein and resides in Vaduz. (Declaration of Engelbert Schreiber, Jr. ¶ 1). He graduated from Collegium St. Antonius in Appenzell, Switzerland in 1982. (Schreiber, Jr. Decl. ¶4). Following two years of legal studies at the University of Fribourg, Switzerland, Mr. Schreiber, Jr. worked in the brokerage department of Verwaltungs-und Privat-Bank Vaduz in Liechtenstein. (Schreiber, Jr. Decl. ¶ 5). In 1987 he passed the examination for admission as a professional trustee in Liechtenstein, and from 1987 to 1990 he worked as a portfolio manager at S.T.A. Salmann Trust Aktiengesellschaft in Vaduz. (*Id.*).

In 1990 Mr. Schreiber, Jr. became one of the founders of Schreiber & Zindel and has been a partner in the firm since then. (*Id.*).

In *Estate of O'Neill, et al.  v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.) ("*Republic of Iraq*") and *Estate of O'Neill, et al. v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.) ("*Al Baraka*"), Plaintiffs accuse Defendants of conspiring to commit the most heinous acts of terrorism without pleading a single averment of fact regarding what Defendants supposedly did in furtherance of this nefarious act.  In the place of specific factual allegations, Plaintiffs offer only a mixture of unsupported inferences and assumptions.

In *Republic of Iraq*, Plaintiffs lump Defendants in with numerous other defendants and allege that all of them:

> [C]onspired with Osama Bin Laden, Al Qaeda, Iraq and the Taliban to raise, launder, transfer, distribute, and hide funds for Bin Laden and Al Qaeda in order to support and finance their terrorist activities  including, but not limited to, the September 11[th] attacks.  (*Republic of Iraq* Second Amended Complaint at ¶ 38)

> [P]articipated in the acts and conspiracy described below, in their individual capacities and while acting in the course and scope of their employment and/or conspired with Osama Bin Laden, Al Qaeda, Hesbollah, Iran, and the Taliban to raise, launder, transfer, distribute, and hide funds for Bin Laden and Al Qaeda in order to support and finance their terrorist activities including, but not limited to, the September 11[th] attacks. (*Id.* at ¶ 41)

> [C]onspired for many years to attack the United States and murder United States citizens.  Defendants supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks that killed thousands of people and injured many thousands more.  (*Id.* at ¶ 53)

> [C]aused the extrajudicial killing of John Partick O'Neill, Sr.  (*Id.* at ¶ 256)

Similarly, in *Al Baraka* Plaintiffs allege that a large group of defendants including Defendants:

> [C]onspired with Osama Bin Laden and Al Qaeda to raise, launder, transfer, distribute, and hide funds for Osama Bin Laden and Al Qaeda in order to support and finance their terrorist activities including, but not

limited to, the September 11th attacks. (*Al Baraka* Second Amended Complaint at ¶ 22)

[H]ave aided, abetted, and materially sponsored Al Qaeda and international terrorism. (¶76)

There is nothing specific alleged about Defendants in either Second Amended Complaint.

Although the pleading deficiencies in each of the Second Amended Complaints are fatal to Plaintiffs' actions against Defendants, the actions should be dismissed for two independent threshold reasons. First, Plaintiffs' attempted service was improper because Defendants were not served in accordance with Fed. R. Civ. P. 4(h) and Fed. R. Civ. P. 4(f), which govern service on foreign entities and individuals. Second, any exercise of personal jurisdiction would not comport with the requirements of due process because Defendants do not have sufficient minimum contacts with either New York or the United States.

## II.
## ARGUMENT

### A. Plaintiffs' Claims Must Be Dismissed For Insufficiency Of Service Of Process Under Liechtenstein Law.

"[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant . . . [t]here also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be *authorization* for service of summons on the defendant." *Omni Capital Int'l v. Rudolf Waolff & Co.*, 484 U.S. 97, 104 (1987) (emphasis added). In other words, an individual or entity "is not obliged to engage in litigation unless [officially] notified of the action . . . under a court's authority, by formal process." *Prewitt Enterprises, Inc. v. OPEC*, 353 F.3d 916, 925 (11th Cir. 2003), *citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

The adequacy of service of process for entities and individuals located outside of the United States is governed by Fed. R. Civ. P. 4(h) and Fed. R. Civ. P. 4(f), respectively. Rule 4(h), "Service upon Corporations and Associations," states that service may be effected "in any manner prescribed for individuals by subdivision (f) except personal delivery. . . ." Fed. R. Civ. P. 4(h)(2). Under Rule 4(f), service upon an "individual not within any judicial district of the United States" and from whom waiver had not been obtained may be effected:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> > (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
> >
> > (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or
> >
> > (C) unless prohibited by the law of the foreign country, by
> >
> > > (i) delivery to the individual personally of a copy of the summons and the complaint; or
> > >
> > > (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or
>
> (3) by other means not prohibited by international agreement as may be directed by the court.

Fed. R. Civ. P. 4(f).

Plaintiffs elected to attempt service under Fed. R. Civ. P. 4(f)(2)(C)(ii). Copies of the Summons and Second Amended Complaint in each action were sent by registered mail in separate envelopes from the United States District Court's Clerk to Schreiber & Zindel at Kirchstrasse 39, Vaduz, FL-9490, Liechtenstein, the business address for Schreiber & Zindel. (*See* copies of all the mailing envelopes delivered to defendants attached as Ex. A to the

Declaration of Guntram Wolf, ¶ 6).  Summons and Second Amended Complaints in each case were sent registered mail from the Court's Clerk to Mr. Schreiber, Sr. and Mr. Schreiber, Jr. in care of Schreiber & Zindel at its business address.  (*Id.*)  Another set of the Summons and Second Amended Complaints were also sent to Mr. Schreiber, Sr. at Kirchstrasse 39, Vaduz, FL-9490, Liechtenstein, without reference on the envelope to Schreiber & Zindel.  (*Id.*).  Mr. Zindel was sent copies of the Summons and Second Amended Complaint in each action by registered mail from the United States District Court's Clerk to Sonnblickstrasse 7, Vaduz, FL-9490, Liechtenstein, an address at which he neither works nor resides.  (*Id.*)

However, service of process under Rule 4(f)(2)(C)(ii) is valid only to the extent that it is not "prohibited by the law of the foreign country."  Fed. R. Civ. P. 4(f)(2)(C)(ii); *see also Proctor & Gamble Cellulose Co. v. Viskoza-Loznica*, 33 F. Supp. 2d 644, 665 (W.D. Tenn. 1998) (service of process did not satisfy the requirements of Rule 4(f)(2)(c)(ii) when applicable foreign law was prohibitive of such a method of service); *Umbenhaur v. Woog*, 969 F.2d 25, 33 (3d Cir. 1992) (noting that Rule 4(f)(2)(c)(ii) "would preclude a district court clerk from serving process by signed receipt mail on a defendant in a country whose laws forbid that method of service"); *Delaware Corp. v. Aluminio Conesa*, S.A., No. 96 C 6853, 1997 WL 282880 at *8 (N.D. Ill. May 16, 1997) (service by registered mail was invalid where Mexican law did not recognize service of process by registered mail); *Resource Ventures, Inc. v. Resources Mamt. Int'l, Inc.*, 42 F. Supp.2d 423, 430 (D. Del. 1999) ("subsection 4(f)(2)(c)(ii) limits the forms of service to those that do not violate the law of the country where service is attempted.")  In the present actions service was not properly effected on any of the Defendants because Liechtenstein

law prohibits service of process in foreign actions by any means without the mutual legal assistance of the Liechtenstein courts.[2] (Declaration of Guntram Wolf ¶¶ 9-14).

Under Liechtenstein law, "service of foreign judicial documents must be effected by way of mutual legal assistance between the foreign and Liechtenstein courts." (Wolf Decl. ¶ 10)  As such, the exclusive method for serving a summons and complaint in a foreign proceeding under Liechtenstein law is through letters rogatory directed to the Liechtenstein court. (Wolf Decl. ¶¶ 12-13).  Plaintiffs did not seek or obtain letters rogatory or the assistance of the Liechtenstein courts in serving Defendants.  Because Liechtenstein law does not give effect to service of a foreign court summons by registered mail sent to the Defendants by the Clerk of this Court or by Plaintiffs, Plaintiffs' attempted service upon Defendants under Fed. R. Civ. P. 4(f)(2)(C)(ii) was improper.

Indeed, the invalidity under Liechtenstein law (and therefore under Federal Rule 4) of attempted service of process in precisely the manner undertaken in these actions -- registered mail sent by the Court's Clerk directly to the defendant -- was recently addressed in *Jung v. Neschis*, No. 01 Civ. 6993, 2003 WL 1807202 (S.D.N.Y. April 7, 2003).  In *Jung*, plaintiffs attempted service on the defendants by having the Clerk of the Court of the Southern District of New York mail a copy of the summons and complaint to defendants via international registered

---

[2] The remaining subsections of Fed. R. Civ. P. 4(f) are facially inapplicable to Plaintiffs' actions.  Because Liechtenstein is not a signatory to the Hague Convention, subsection 4(f)(1) does not apply and Plaintiffs must effect service under either subsection 4(f)(2) or 4(f)(3).  Service by registered mail sent either by the Clerk of the Court or by Plaintiffs under Fed. R. Civ. P. 4(f)(2)(A) would be invalid because the laws of Liechtenstein require that service of process in a foreign lawsuit be made with the assistance of the Liechtenstein court initiated by the submission of letters rogatory. (*See* Wolf. Decl. ¶ 13).  Since Plaintiffs had not issued letters rogatory or letters of request to the Liechtenstein court, service under Fed. R. Civ. P. 4(f)(2)(B) is likewise not satisfied.  Lastly, Fed. R. Civ. P. 4(f)(3) is inapplicable because this Court has not issued an order directing service to be made upon Defendants by other means.

-8-

mail. *Id.* at *1. After considering Liechtenstein law[3], Judge Richard M. Berman of this Court held that "[h]aving the Clerk of the Court for the Southern District mail service to defendants is not sufficient, i.e., it is in these circumstances, 'prohibited by the laws' of Liechtenstein and was, therefore, improper under Rule 4(f)(2)(C)(ii)." *Id.* at *2. Rather, to properly serve a foreign summons and complaint in Liechtenstein, a party must proceed through the Liechtenstein courts. *Id.* at *3. As in *Jung*, because Plaintiffs' method of service is prohibited by the law of the foreign country in which they attempted to effect service, their claims must be dismissed under Rule 12(b)(5) for insufficiency of service of process.

**B.      Plaintiffs' Claims Must Be Dismissed For Lack Of Personal Jurisdiction.**

**1.      Standard of Review**

To avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), Plaintiffs bear the burden of establishing personal jurisdiction over each Defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied*, 519 U.S. 1006 (1996). While at this stage of the proceedings allegations in the complaints are construed in a light most favorable to plaintiff, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997), the court will not accept legally conclusory allegations or draw argumentative inferences. *In re Terrorist Litigation*, 349 F. Supp.2d at 804. Rather, Plaintiffs' complaints and any supporting affidavits must contain averments of fact that, if credited, would suffice to establish jurisdiction over each Defendant. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Plaintiffs' Second Amended Complaints contain only conclusory allegations about Defendants'

---

[3]      In *Jung* the Court found the opinion of Guntram Wolf persuasive on the law of Liechtenstein regarding service of process in foreign actions. *Jung*, 2003 WL 1807202 at *2-3. Defendants here also rely on Mr. Wolf's expertise.

conduct and make no credible attempt to allege facts to support any assertion of personal

jurisdiction over Defendants.   On this ground alone, Plaintiffs' Second Amended Complaints

should be dismissed.

### 2.   Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute.

In a federal question case involving a defendant residing outside the forum state, the

district court applies the personal jurisdiction rules of the state in which it sits unless the federal

statute explicitly provides for nationwide service of process.[4]   *In re Terrorist Litigation*, 349 F.

Supp.2d at 804.   Similarly, a federal court sitting in diversity exercises personal jurisdiction over

a foreign defendant to the same extent as courts of general jurisdiction of the state in which it sits

pursuant to Federal Rule of Civil Procedure 4(k)(1)(A). *Id.*   In either case, personal jurisdiction is

only appropriate if New York law confers jurisdiction through its long-arm statute, and the

exercise of jurisdiction comports with the requirements of due process under the Fourteenth

Amendment. *Id.*

### a.   Plaintiffs' Conclusory Allegations Of Conspiracy Are Insufficient To Establish Specific Jurisdiction Over The Defendants.

Plaintiffs claim that the Defendants conspired with Osama Bin Laden, Al Qaeda, Iraq and

the Taliban to "raise, launder, transfer, distribute, and hide funds" in order to support and finance

---

[4] Plaintiffs have asserted in their Second Amended Complaints federal claims under the Anti-Terrorism Act (18 U.S.C. 2333 *et seq.*), RICO (18 U.S.C. 1961 *et. seq.*), the Torture Victims Protection Act, and the Alien Tort Claims Act (28 U.S.C. 1350).   While the Anti-Terrorism Act provides for nationwide service of process, the Defendants, as discussed in greater detail below, are all domiciled in Liechtenstein and maintain no presence or agents in the United States that would allow for service in the United States. Section 2334(a) of the Anti-Terrorism Act provides that "process in such a civil action may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. 2334(a).   Moreover, even assuming the nationwide service provision under the Anti-Terrorism Act were applicable, Defendants do not have the requisite minimum contacts with the United States to justify personal jurisdiction.

their terrorist activities including the September 11th attacks. (*See Republic of Iraq* Second Amended Complaint at ¶¶ 38, 41, 53; *Al Baraka* Second Amended Complaint at ¶22).  Under § 302(a)(2) of New York's Civil Practice Law & Rules (New York's long-arm statute), "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant[s] to [personal] jurisdiction . . . ."  *In re Terrorist Litigation*, 349 F. Supp.2d at 805, *quoting Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  Section 302(a)(2) states, in relevant part: "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state . . . ." N.Y. C.P.L.R. § 302(a)(2).

While New York federal courts recognize conspiracy-based personal jurisdiction, attempts to establish jurisdiction through "bland assertion[s] of conspiracy or agency is insufficient to establish jurisdiction for the purpose of section 302(a)(2)."  *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975).  To establish jurisdiction over a non-resident defendant on a conspiracy theory, "Plaintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York."  *In re Terrorist Litigation*, 349 F. Supp.2d at 805.  "To warrant the inference that a defendant was a member of the conspiracy, Plaintiffs must show that '(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted "at the direction or under the control" or "at the request of or on behalf of" the out-of-state defendant.'" *Id.* at 806, *quoting Chrysler Capital Corp.*, 778 F. Supp. at 1268-69 (S.D.N.Y. 1991).

While Plaintiffs' Second Amended Complaints allege generally that Defendants participated in a conspiracy, their pleadings are devoid of any specific facts from which the Court could reasonably infer personal jurisdiction.   The Complaints contain no factual allegations that Defendants "directed, controlled, or requested that al Qaeda or any other defendant undertake terrorist activities." 349 F. Supp. 2d at 806.  "Nor are there any specific factual allegations concerning their knowledge of, or consent to those activities." *Id.*  In fact, Plaintiffs' allege nothing at all that is specific to Defendants.  The Second Amended Complaints contain only the most vague and conclusory allegations of conspiracy, hardly a sufficient basis from which this Court could impute to Defendants the conduct of their alleged co-conspirators. As noted by this Court previously, without supporting factual allegations, Plaintiffs' general allegation that Defendants conspired with al Qaeda to perpetrate the attacks of September 11th is insufficient to establish jurisdiction. *Id.* at 805-06.

### b.   Defendants Lack The Requisite Contacts With New York To Support General Jurisdiction.

Section 301 of New York's Civil Practice Law & Rules provides for general jurisdiction over defendants domiciled or "doing business" in New York. *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991).  Under the "doing business" test, a defendant "is amenable to suit in New York if it 'engage[s] in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 191-92 (S.D.N.Y.2000), *quoting Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 536 (1967).  That is, a "corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action . . . if it does business in New York '*not occasionally or casually, but with a fair measure of permanence and continuity.*" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95

-12-

(2d Cir.2000), *cert. denied*, 532 U.S. 941 (2001), *quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985) (emphasis added).   "The doing business standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722, 731 (S.D.N.Y.2001).   New York courts have enumerated various factors to consider when determining whether a defendant engages in "continuous and systematic" conduct.  For example, maintaining bank accounts, offices and employees, ownership of leases on real property, engaging in public relations and publicity work, or sales within the state are relevant indicia of conduct that may justify a New York court's exercise of jurisdiction over a defendant. *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 890 (W.D.N.Y.1992).

Plaintiffs' Second Amended Complaints contain no factual allegations of "continuous and systematic" contact with the forum that would justify general jurisdiction over any of the Defendants.  The reason for this failure is clear – there are no contacts with New York sufficient to establish personal jurisdiction.  Neither Frank Zindel, Engelbert Schreiber, Sr., nor Engelbert Schreiber, Jr. owns property, maintains bank accounts, or conducts business in New York.  (*See* Zindel Decl. ¶ 24; Schreiber, Sr. Decl. ¶9; Schreiber, Jr. Decl. ¶8).  Similarly, Schreiber & Zindel is not licensed to do business in New York, does not maintain bank accounts or offices, has no employees in New York, does not solicit or conduct business in New York, nor has it ever been subject to the jurisdiction of New York courts.  (Zindel Decl ¶¶ 9-22).  In short, no contacts between the forum and the Defendants exist to support a finding of personal jurisdiction in this case.

3.    **Defendants Lack The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction.**

Fed. R. Civ. P. 4(k)(2) provides long-arm authorization over foreign defendants for claims arising under federal law when the defendants have sufficient contacts with the nation as a whole to justify the imposition of United States law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state. Fed. R. Civ. P. 4(k)(2) states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

For jurisdiction to be appropriate under Fed. R. Civ. P. 4(k)(2), there must be a federal claim,[5] the foreign defendant must lack sufficient contact with any single state to subject it to personal jurisdiction there, and the plaintiff must demonstrate sufficient aggregate contacts with the United States to comport with constitutional notions of due process under the Fifth Amendment. *See U.S. v. Int'l Broth. of Teamsters*, 945 F.Supp. 609, 617 (S.D.N.Y. 1996).

a.    **Defendants Lack Substantial, Continuous, And Systematic Contacts With The United States Sufficient To Support General Jurisdiction.**

The exercise of personal jurisdiction over a nonresident defendant comports with due process if the defendant has had "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *See International Shoe v. Washington*, 326 U.S. 310, 316 (1945). The minimum contacts test rests on whether a

---

[5] In addressing jurisdiction under Fed. R. Civ. P. 4(k)(2), Defendants do not concede that Plaintiffs have stated a viable federal claim under the ATA, RICO, or any other federal statute, and expressly reserve the right to move to dismiss these claims for failure to state to a claim under Fed. R. Civ. P. 12(b)(6).

defendant's "conduct and connection with the forum" are such that "it should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A non-resident defendant has minimum contacts with the forum state if he commits "some act by which [he] purposely avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1940). Moreover, a defendant's contacts with the forum must be "*continuous or systematic*," otherwise the suit must arise out of or relate to the alleged contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 413, 414-16 (1984) (emphasis added).

Far from alleging "continuous or systematic contacts" between the Defendants and the United States, Plaintiffs' Second Amended Complaints completely fail to plead any contact at all. Indeed, Defendants contacts with the United States are virtually nonexistent. Schreiber & Zindel is a Liechtenstein "anstalt" or "establishment" with its principal place of business in Vaduz, Liechtenstein. (Zindel Decl. ¶ 6). As an anstalt, it has no shareholders or members. (Zindel Decl. ¶ 7). Rather there are certain founders' rights that exist with respect to the firm and these rights belong only to the principals of the firm or to their designees, each of whom is either a Liechtenstein citizen and resident or a Swiss citizen residing in Liechtenstein, including Dr. Zindel, Mr. Schreiber, Sr. and Mr. Schreiber, Jr. (*Id.*). The firm does not transact or solicit business in the United States nor is it licensed to do business in the United States. (Zindel Decl. ¶¶ 9-13, 15, 16). It has never authorized an agent to accept service of process in the United States, waived service of process, or been subject to the jurisdiction of a United States court. (Zindel Decl. ¶¶ 20-22). Schreiber & Zindel has not used, owned, leased, rented, or possessed real property in the United States. (Zindel Decl. ¶ 18). It also maintains no offices, employees,

bank accounts, or telephone numbers in the United States. (Zindel Decl. ¶¶ 13, 14, 17). It has no constitutionally relevant contacts with the United States.

Likewise, neither Dr. Zindel, Mr. Schreiber, Sr., nor Mr. Schreiber, Jr. owns property, maintains bank accounts, conducts business, or holds investments in the United States either individually or through an agent. (*see* Zindel Decl. ¶ 24; Schreiber, Sr. Decl. ¶ 9; Schreiber, Jr. Decl. ¶ 8). Dr. Zindel last visited the United States briefly in 2001 while on vacation: he was in New York for four days. (Zindel Decl. ¶23). Prior to that he visited the United States briefly in 1991 on behalf of a former employer on business for that employer. (*Id.*). Mr. Schreiber, Sr. visited the United States twice, once in 1978 and again in 1986, both times while on vacation. (Schreiber, Sr. Decl. ¶ 8). Since 1988 Mr. Schreiber, Jr. has been in the United States five times, primarily for vacation. (Schreiber, Jr. Decl. ¶ 7). These contacts are insufficient to rise to the level of "systematic and continuous activity" necessary to justify personal jurisdiction. *See Jacobs*, 160 F.Supp.2d at 733 ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction"); *Bozell Group, Inc. v. Carpet Co-op of America Assoc., Inc.*, No. 00 Civ 1248, 2000 WL 1523282, at *5 (S.D.N.Y. October 11, 2000) (two visits in three months insufficient); *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970) (visits every few months insufficient); *Hoffritz*, 763 F.2d at 57-58 (fifty-four visits to New York insufficient). Given Defendants' extremely limited contact with the United States, Plaintiffs are incapable of pleading or demonstrating any, let alone the requisite "substantial, continuous and systematic," contacts with the United States necessary to support personal jurisdiction. *Helicopteros Nacionales de Colombia*, 466 U.S. at 413-15.

### b.     Defendants Are Not Subject to Specific Jurisdiction.

Exercise of personal jurisdiction may be appropriate if a Court determines that the Defendants "purposefully directed [their] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736, 763 (S.D.N.Y. 2004). *See also Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding personal jurisdiction appropriate over non-resident defendants who "expressly aimed" intentionally tortious conduct at residents of forum state, even where defendants were never physically present in forum). However, in order to assert jurisdiction on this basis, Plaintiffs must "make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to the Plaintiffs' injuries." *In re Terrorist Litigation*, 349 F. Supp.2d at 809.

Once again, Plaintiffs' Second Amended Complaints contain only conclusory allegations regarding Defendants' participation in terrorist activities and their involvement in a conspiracy to raise, launder and distribute funds for Bin Laden and Al Qaeda. (*See Republic of Iraq* Second Amended Complaint at ¶¶ 38, 41, 53, 256; *Al Baraka* Second Amended Complaint at ¶ 22, 76) Plaintiffs fail to plead a single fact establishing Defendants' "personal or direct participation" in the Sept. 11th tragedy. "Legal conclusions done up as factual allegations are not facts and cannot substitute for facts." *In re Terrorist Litigation*, 349 F. Supp.2d at 813. *See also Burnett v. Al Baraka Invest. and Dev. Corp.*, 292 F.Supp.2d 9, 23 (D.D.C. 2003) (allegations that defendant funded charities with knowledge that the organizations funded terrorist groups fell short of adequately alleging conduct "purposely directed" at the United States). Plaintiffs do not allege and cannot establish that Defendants purposely directed any activities even remotely related to

events of September 11th.   Accordingly, the exercise of specific jurisdiction under a "purposefully directed activities" theory is inappropriate.

## III.

## CONCLUSION

For the foregoing reasons, Defendants Schreiber & Zindel Treuhand Anstalt, Frank O. Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr. respectfully request that this Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and Fed. R. Civ. R. 12(b)(2) for lack of personal jurisdiction.

Dated: May 20, 2005.

Respectfully Submitted,

SCHIFF HARDIN LLP

By:  _Donald A. Klein_

Donald A. Klein (DK7821)
623 Fifth Avenue
New York, NY 10022
(212) 753-5000

Of Counsel:
John N. Scholnick
Ayad P. Jacob
6600 Sears Tower
Chicago, IL  50505
(312) 258-5500

Attorneys for Defendants
*Schreiber & Zindel Treuhand Anstalt,
Frank O. Zindel, Engelbert Schreiber, Sr.,
and Engelbert Schreiber, Jr.*

CH2\ 1230906.5