UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**Applicable to Dallah Albaraka Group LLC, Al Barka Investment and Development Corporation, Al Baraka Investment and Development, Al Baraka Bank and Al Baraka Bancorp, Inc.** |

*This document relates to :*     Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
                                  04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO DALLAH ALBARAKA GROUP LLC, AL BARAKA INVESTMENT AND DEVELOPMENT CORPORATION, AL BARAKA INVESTMENT AND DEVELOPMENT, AL BARAKA BANK AND AL BARAKA BANCORP, INC.

Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendants Dallah Albaraka Group LLC, Al Baraka Investment and Development Corporation, Al Baraka Investment and Development, Al Baraka Bank and Al Baraka Bancorp., Inc (collectively "Al Baraka"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.      This RICO Statement pertains to defendants Dallah Albaraka Group LLC, Al Baraka Investment and Development Corporation, Al Baraka Investment and Development, Al Baraka Bank and Al Baraka Bancorp., Inc.

        Defendant Dallah Albaraka Group LLC a.k.a Al Baraka Bank ("Dallah Albaraka") is a financial conglomerate based in Jeddah, Saudi Arabia. Within the Dallah Albaraka financial umbrella are over twenty banks and investment groups, including defendant Al Baraka Investment and Development Corporation.

        Dallah Albaraka was founded by defendant Saleh Abdullah Kamel. Saleh Kamel is a Saudi national and is a wealthy financier and businessman who also founded defendant Sana-Bell. Saleh Kamel is listed as an Al Qaeda Golden Chain donor. Defendant Al Baraka Investment and Development Corporation ("ABID Corp.") is the wholly-owned subsidiary of defendant Dallah Albaraka. ABID Corp. exercised control and direction over several of its foreign subsidiaries including banks and financial institutions registered as "Al Baraka Bank."

Defendant ABID Corp. also controls the assets of two United States entitites, Al Baraka Bancorp, Inc. (Chicago, Illinois) and Al Baraka Bancorp, Inc. (Houston, Texas). Defendant Al Baraka Investment and Development ("ABID") is a sister entity of ABID Corp. In addition to being a wholly-owned subsidiary of Dallah Albaraka, ABID also functions as Dallah Albaraka's financial arm.

Al Baraka conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, facilitated, materially supported and substantially assisted Al Qaeda's purposes through Al Baraka's banking and financial operations.

Al Baraka's misconduct includes knowingly and intentionally providing material support and financial services to Al Qaeda. For instance, Al Baraka maintained and serviced bank accounts held by defendant Al Haramain whose funds were earmarked for and transferred to Al Qaeda.

Al Baraka has conducted or participated in, directly or indirectly, the affairs of the Al Qaeda Enterprise through a pattern of racketeering activity by, *inter alia*, knowingly and intentionally providing material support and substantial assistance to Al Qaeda.

Al Baraka's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out terrorist attacks, including the September 11th attack that injured plaintiffs. The basis of Al Baraka's liability is 18 U.S.C. § 1962(c).

3. All known wrongdoers are named as defendants in this action. Plaintiffs separately will file, or have filed, RICO Statements with respect to the misconduct of these defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4. The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near

the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

5.    (a)    <u>List Of Predicate Acts And Specific Statutes Violated</u>

| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B) <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|

     (b)    Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts

Upon information and belief from the mid-1990's through September 11, 2001, Al Baraka facilitated, materially supported and substantially assisted Al Qaeda's purposes through its banking and financial operations, as described above. Al Baraka conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda through a pattern of racketeering activity that, among other things, facilitated, materially supported and substantially assisted Al Qaeda's purposes through Al Baraka's banking and financial operations. Upon information and belief from the mid-1990's through September 11, 2001, Al Baraka's knowingly and intentionally provided material support and financial services to Al Qaeda. For instance, Al Baraka maintained and serviced bank accounts held by defendant Al Haramain whose funds were earmarked for and transferred to Al Qaeda. In sum, Al Baraka conducted or participated in, directly or indirectly, the affairs of the Al Qaeda Enterprise through a pattern of racketeering activity by, *inter alia*, knowingly and intentionally providing material support and substantial assistance to Al Qaeda.

     (c)    Not applicable.

     (d)    No.

     (e)    No.

     (f)    The predicate acts conducted by Al Baraka form a pattern of racketeering in that they are repeated and continuous. Upon information and belief, from the mid-1990's through September 11, 2001, Al Baraka consistently and continuously provided material support to Al Qaeda..

(g)     The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because each act of providing material support of terrorism allowed Al Baraka to provide financial and other assistance to Al Qaeda, which assistance culminated in the September 11 attack.

6.    (a)    The Enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members.

(b)    The Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide. Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

Al Qaeda's stated purpose is the overthrow of secular non-Muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by *Shari'a* (Islamic law). As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah*, Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-democratic purpose, the September 11th attack being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of wire transfers and electronic transmissions.

At the time of the September 11th attack, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

  (c) Al Baraka does not appear to be an employee, officer or director of the Enterprise, although Al Baraka knowingly and intentionally lent material support to Al Qaeda.

  (d) Al Baraka associated itself with the Enterprise.

  (e) Al Baraka is a entity that is separate and distinct from the Enterprise, Al Qaeda. Al Baraka associated itself with the Enterprise.

  (f) Not applicable.

7. As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Al Baraka holds itself out as a legitimate international banking and financial institution. The pattern of racketeering activity conducted by Al Baraka is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attack.

8. Al Qaeda conducts terrorism around the world. Al Baraka conducted the racketeering activity through its banking and financial operations, including, *inter alia*, provision of financial services to Al Qaeda, and maintenance and service of bank accounts used to fund and support Al Qaeda.. The racketeering activity conducted by Al Baraka substantially assisted and materially supports Al Qaeda's terrorist activity. The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens.

9. Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10. Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." The Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attack, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11. Not applicable.

12. Not applicable.

13. (a) Defendants Osama Bin Laden and Ayman al-Zawahiri, among others whose identities are unknown are employed or associated with Al Qaeda.

  (b) The same entity is not both the liable "person" and the "enterprise" under 1962(c). Al Qaeda is the RICO enterprise. Al Baraka is a separate "person" within the meaning of RICO.

14. Not applicable.

15. The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related

property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16. Al Baraka's uninterrupted financial and material support of Al Qaeda, and substantial assistance, as described herein and in the Amended Complaint, enabled the Enterprise to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of Al Baraka proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of Al Baraka.

17. Al Baraka is jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18. Federal Causes of Action

| Count Two | Anti-Terrorism Act,<br>18 U.S.C. §2331 , 2333<br>18 U.S.C §2333<br>18 U.S.C. §2339A<br>18 U.S.C. §2339B<br>18 U.S.C. §2339C |
|---|---|
| Count Four | Civil Rico,<br>18 U.S.C. §1962 |
| Count Nine | Violations of International Law, see 28 U.S.C.§1331 |

DOCSNY.148925.1

19. <u>Pendant State Claims</u>

| Count One | Trespass |
|---|---|
| **Count Ten** | Conspiracy |
| **Count Eleven** | Aiding and Abetting |
| **Count Twelve** | Punitive Damages |
| **Count Thirteen** | Contribution and Indemnity |

20. Not applicable

Dated: May 23, 2005                     Respectfully submitted,

By: _____/S/_____
Jonathan M. Goodman (JG 3031)

Kenneth L. Adams
Christopher T. Leonardo
Stacey A. Saiontz
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

Attorneys for Plaintiffs

DOCSNY.148925.1