UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT Applicable to International Islamic Relief Organization, Islamic Relief Organization, Sana-Bell, Inc., Sanabel al-Kheer, Inc., Success Foundation, Success Foundation, Inc., Saleh Abdullah Kamel and Ibrahim Afandi** |

*This document relates to :*     Cantor Fitzgerald et al. v. Akida Bank Private Ltd., et al.
                                         04 CV 07065 (RCC)

## RICO STATEMENT APPLICABLE TO
## INTERNATIONAL ISLAMIC RELIEF ORGANIZATION, ISLAMIC RELIEF ORGANIZATION, SANA-BELL, INC., SANABEL AL-KHEER, INC., SUCCESS FOUNDATION, SUCCESS FOUNDATION, INC., <u>SALEH ABDUALLAH KAMEL AND IBRAHIM AFANDI</u>

       Based on information currently available, plaintiffs submit this RICO Statement with respect to its claims against defendants International Islamic Relief Organization, Islamic Relief Organization ("IRO"), Sana-Bell, Inc., Sanabel al-Kheer, Inc., Success Foundation, Success Foundation, Inc., Saleh Abdullah Kamel and Ibrahim Afandi (collectively referred herein as "IIRO"). Given the complicated nature of the wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.     The unlawful conduct is in violation of 18 U.S.C. § 1962(c).

2.     This RICO Statement pertains to defendant International Islamic Relief Organization, IRO, Sana-Bell, Inc., Sanabel al-Kheer, Inc., Success Foundation, Success Foundation, Inc., Saleh Abdullah Kamel and Ibrahim Afandi.

       Defendant International Islamic Relief Organization is headquartered in Saudi Arabia, and has branch offices in Canada and the United States. Defendants Sana-Bell, Inc. and Sanabel al-Kheer, Inc. (collectively "Sana-Bell") are District of Columbia corporations operating in Herndon, Virginia. Sana-Bell was established to generate funds for defendant IRO, which is the United states arm of International Islamic Relief Organization. IRO is located in Falls Church, Virginia. Defendants Success Foundation and Success Foundation, Inc. (collectively "Success Foundation") were formed shortly before the U.S. Embassy bombings in East Africa in 1998. On and before September 11, 2001 Success Foundation served as a financial arm of IRO and received and transferred funds on IRO's behalf. It also shared some of the same management

with IRO. For instance, Moamed Omeish, a Saudi national, served as President and Director of both Success Foundation and IRO.

Defendants, IRO, International Islamic Relief Organization, Sana-Bell and Success Foundation, are inter-dependant and are closely linked both financially and operationally. For instance, these defendants shared and transferred funds among themselves, and relied upon interlocking executives and directors in their day-to-day operations.

IIRO was founded by Osama Bin Laden's brother-in-law, Mohamed Jalil Khalifa. The United States Central Intelligence Agency ("CIA") has linked Khalifa to plots to assassinate the Pope and to bomb a U.S. airplane. The CIA has also linked Khalifa with fundtion the 1993 World Trade Center bombing, and U.S. Embassy cables confirm that Khalifa is a "known financier of terrorist operations" who has controlled and directed IIRO's offices to coordinate and support terrorist operations in various parts of the world.

IIRO's links to terrorism also extend through Defendant Sana-Bell. Defendant Sana-Bell received and transferred funds on behalf of and as directed by IIRO. Sana-Bell was founded by defendants Saleh Abdullah Kamel and Ibrahim Afandi. Defendants Saleh Abdullah Kamel and Ibrahim Afandi are Saudi nationals. Both men appear on a list of wealthy Al Qaeda donors referred to by Al Qaeda as the "Golden Chain." Golden Chain financiers donated funds earmarked for Osama Bin Laden directly and also through charities. IIRO's link to terrorism also extended through the Success Foundation. The Success Foundation's Secretary has publicly supported Hamas and Hezbollah, which like Al Qaeda, are designated terrorist entities. On and before September 11, 2001 the Success Foundation served as the financial arm of IRO and received and transferred funds on IRO's behalf. IIRO has funneled money through IRO accounts to other terrorist sponsoring organizations, including the Holy Land Foundation, another designated terrorist entity whose assets have been frozen by the United States government because of its support of terrorism.

The IIRO Defendants conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda. IIRO's misconduct includes materially supporting Al Qaeda, knowingly and intentionally employing Al Qaeda operatives, laundering money for Al Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretense), providing Al Qaeda with safe houses and false documentation, and/or facilitating weapons and military equipment purchases and transfers for Al Qaeda. IIRO has knowingly and intentionally lent material support to Al Qaeda through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and/or mailings. IIRO's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs.

The basis of IIRO's liability is 18 U.S.C. § 1962(c).

3.     All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these other defendants. Given the complicated nature of the wrongdoing that led to the September 11th attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed

through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4. The alleged victims are Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., TradeSpark, L.P. (collectively, the "Cantor Plaintiffs"); and the Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, and WTC Retail LLC (collectively, the "Port Authority Plaintiffs"). The Cantor Plaintiffs and Port Authority Plaintiffs were injured by damage to their physical property and property interests, as well as business interruption losses and lost profits.

The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

5. (a) <u>List Of Predicate Acts And Specific Statutes Violated</u>

| | |
|---|---|
| Providing material support of terrorism | 18 U.S.C. §2332b(g)(5)(B)<br>18 U.S.C. §2339A<br>18 U.S.C. §2339B<br>18 U.S.C. §2339C |
| Money laundering | 18 U.S.C. §1956 |
| Mail Fraud | 18 U.S.C. §1341 |
| Wire Fraud | 18 U.S.C. §1343 |

(b) Dates Of, The Participants In, And A Description Of The Facts Surrounding The Predicate Acts

At all times relevant to the Amended Complaint and this RICO Statement, IIRO held itself out at as a charity with humanitarian goals, and has raised, solicited and distributed funds under the pretense that the funds would be used for legal and humanitarian purposes. Yet, IIRO has knowingly and intentionally lent material support to the Al Qaeda Enterprise as set forth in this RICO Statement and in the Amended Complaint.

Upon information and belief during the relevant time period, IIRO provided material support, instructions, and funding to terrorists around the world. IIRO used funds ostensibly raised to provide for food, shelter, and medical assistance to innocent Muslims in need, to help pay for and support at least six terrorist training camps including Camp Darunta, a facility used for chemical and biological weapons testing.

From the mid 1990's through September 11, 2001, IIRO conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda (sometimes referred to herein as the "Enterprise") through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda. IIRO's misconduct includes materially supporting Al Qaeda, knowingly and intentionally employing Al Qaeda operatives, laundering money for Al Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretense), providing Al Qaeda with safe houses and false documentation, and/or facilitating weapons and military equipment purchases and transfers for Al Qaeda.

IIRO knowingly and intentionally lent material support to Al Qaeda through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and/or mailings. IIRO's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs.

(c) Plaintiffs' RICO claims are based in part on the predicate offenses of wire fraud and mail fraud. Upon information and belief from the mid-1990's through September 11, 2001, IIRO utilized interstate and international faxes, telephones, wire transfers and transmissions, and the United States and international mails to facilitate, provide financial and material support and provide substantial assistance to Al Qaeda. The financial support and assistance provided to Al Qaeda by the IIRO assisted the business and financial transactions in which Al Qaeda engaged to further its operations and purposes. Al Qaeda relied upon IIRO, among others, to generate material support to continue its terrorist operations and to conceal the nature and extent of financial assistance provided to Al Qaeda. These activities assisted Al Qaeda's ability to plan over a number of years, orchestrate, and ultimately carry out the September 11th attack that injured plaintiffs. Further, given the complicated nature of IIRO and others wrongdoing that led to the events of September 11, 2001, additional information relating to the circumstances constituting IIRO's wire and mail fraud activities likely will be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f) The predicate acts conducted by IIRO form a pattern of racketeering in that they are repeated and continuous. Upon information and belief from the mid-1990's through September 11, 2001, IIRO consistently, evenly, and constantly, laundered money, provided material support for terrorism, and committed wire fraud and mail fraud.

(g) The predicate acts relate to each other (horizontal relatedness) as a part of a common plan because each act of money laundering, wire and mail fraud and providing material support of terrorism allowed the IIRO to provide financial and other assistance to Al Qaeda, which assistance culminated in the September 11 attack.

6. (a) The enterprise is comprised of defendant Al Qaeda, defendant Osama bin Laden, defendant Ayman al-Zawahiri, and other unknown members.

(b) The Enterprise was formed in or about 1988 by Osama bin Laden with the help of other Muslim *mujahideen* who traveled to Afghanistan in the 1980s to wage jihad against Soviet occupation forces. Al Qaeda financed and directed the activities of Islamic militants worldwide. Osama bin Laden heads Al Qaeda. Underneath Osama bin Laden is Ayman al-Zawahiri, an Egyptian national.

Al Qaeda's stated purpose is the overthrow of secular non-Muslim governments through violent, terrorist means in favor of radical Islamic theocracies governed by *Shari'a* (Islamic law). As a matter of organizational doctrine, Al Qaeda views western-style democratic societies and their institutions, particularly the United States, as enemies of Islam. As stated in Osama bin Laden's 1998 *fatwah*, Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." For years, Al Qaeda and its members (both individuals and affiliated terrorist organizations operating under the Al Qaeda organizational umbrella) repeatedly acted upon this shared anti-American, anti-democratic purpose, the September 11th attack being the most dramatic in a series of terrorist operations against American interests.

Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. Its internal organizational structure allows it to build relationships with other terrorist organizations while maintaining and promoting its own goals and terrorist operations around the world. Al Qaeda is run by a council that "discusse[s] and approve[s] major undertakings, including terrorist operations." It also uses a treasurer and operation and planning chiefs to design and plan terrorist attacks. Al Qaeda operations are conducted around the world through the efforts of individual members and affiliated groups. Al Qaeda members swear an oath of loyalty to Al Qaeda's aims and mission. These members carry out the terrorist directive received from their superiors.

Al Qaeda is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.

At the time of the September 11th attack, Al Qaeda's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. Al Qaeda relies upon a global network of banks and financial institutions, and illegal activity (including narcotics trafficking) to generate material support to continue its terrorist operations.

(c)     The IIRO Defendants do not appear to be employees, officers or directors of the Enterprise.

(d)     The IIRO Defendants associated themselves with the Enterprise.

(e)     The IIRO Defendants consist of entities and individuals that are separate and distinct from the Enterprise, Al Qaeda. The IIRO Defendants associated themselves with the Enterprise by: (1) providing financial and material support and substantial assistance to Al Qaeda; and/or (2) employing Al Qaeda members.

(f)     Not applicable.

7.    As stated, Al Qaeda is highly organized and exhibits a definitive structure, separate and apart from its terrorist operations. The IIRO Defendants holds themselves out as charities and leaders of charities with humanitarian goals. The pattern of racketeering activity conducted by the IIRO Defendants is separate from the existence of Al Qaeda, but was a necessary component of the September 11th attack.

8.    Al Qaeda conducts terrorism around the world. The IIRO Defendants conducted the racketeering activity through its charity operations, and by raising, soliciting and distributing funds under the pretense that the funds would be used for legal and humanitarian purposes. The racketeering activity conducted by the IIRO Defendants substantially assisted and materially supported Al Qaeda' terrorist activity. The usual and daily activities of Al Qaeda include planning and executing acts of terrorism against the United States and its citizens, all of which are funded and/or materially supported by the racketeering activities described herein.

9.    Al Qaeda benefits by having the funds available to commit its terrorism goals as described above in 6(b).

10.   Al Qaeda's commonly held purpose is to "kill the Americans and their allies-civilians and military" and to "plunder their money wherever and whenever they find it." The Enterprise's activities in support of terrorism affect interstate commerce as illustrated by the September 11th attack, which damaged the United States economy when four commercial airliners were hijacked and crashed into the World Trade Center, a vital center of interstate and foreign commerce.

11.   Not applicable.

12.   Not applicable.

13.   (a)     Defendants Osama bin Laden and Ayman al-Zawahiri, among others whose identities are unknown are employed or associated with Al Qaeda.

(b)     The same entity is not both the liable "person" and the "enterprise" under 1962(c). Al Qaeda is the RICO enterprise. The IIRO Defendants are a separate person within the meaning of RICO.

14.     Not applicable.

15.     The injuries suffered by the Cantor Plaintiffs resulting from the September 11th attack include damage to their physical property located at and near the World Trade Center premises, including their business offices located in One World Trade Center, and other and related property interests, damage to their ability to conduct their business and promote and pursue business opportunities, and lost profits and opportunities.

The injuries suffered by the Port Authority Plaintiffs resulting from the September 11th attack include damage to their business offices and other physical property located at and near the World Trade Center premises, including One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center and the PATH stations, trains and property at or near the World Trade Center complex. The Port Authority Plaintiffs also suffered injuries through damage to their ability to conduct their business, to promote and pursue business opportunities, to pursue business profits, and by lost profits and opportunities at One World Trade Center, Two World Trade Center, Four World Trade Center, Five World Trade Center, Seven World Trade Center, John F. Kennedy International Airport, LaGuardia Airport and Newark Airport, the Lincoln Tunnel, the Holland Tunnel, the George Washington Bridge, the Goethals Bridge, the Outerbridge Crossing, the Bayonne Bridge, the Port Authority Bus Terminal, the George Washington Bridge Bus Station, and several of its PATH train stations.

16.     The IIRO Defendants' uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, as described herein and in the Amended Complaint, enabled the Enterprise to plan, orchestrate, and carry out the September 11th attack that injured the Cantor and Port Authority Plaintiffs. Therefore, the conduct of the IIRO Defendants proximately resulted in the September 11th attack. The Cantor Plaintiffs and Port Authority Plaintiffs suffered injury to their property by reason of the above conduct of the IIRO Defendants.

17.     The IIRO Defendants are jointly and severally liable for all damages sustained by each plaintiff in an amount in excess of $200,000,000 in damages for plaintiffs' injuries to their property and business, including damage to physical property as well as business interruption and lost profits.

18.     <u>Federal Causes of Action</u>

| **Count Two** | Anti-Terrorism Act, <br> 18 U.S.C. §2331 , 2333 <br> 18 U.S.C §2333 <br> 18 U.S.C. §2339A <br> 18 U.S.C. §2339B <br> 18 U.S.C. §2339C |
|---|---|

| | |
|---|---|
| **Count Four** | Civil Rico, 18 U.S.C. §1962 |
| **Count Nine** | Violations of International Law, *see* 28 U.S.C. §1331 |

19.  Pendant State Claims

| | |
|---|---|
| **Count One** | Trespass |
| **Count Ten** | Conspiracy |
| **Count Eleven** | Aiding and Abetting |
| **Count Twelve** | Punitive Damages |
| **Count Thirteen** | Contribution and Indemnity |

20.  Not applicable

Dated: May 23, 2005                Respectfully submitted,

                                By: _____/S/_____

Jonathan M. Goodman (JG 3031)

Kenneth L. Adams
Christopher T. Leonardo
Stacey A. Saiontz
DICKSTEIN SHAPIRO MORIN
  & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

Attorneys for Plaintiffs

DOCSNY.148796.1