UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :  03 MDL 1570 (RCC)
                                                  :
In re Terrorist Attacks on September 11, 2001     :  ECF Case
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :
-------------------------------------------------------------- x


## MEMORANDUM OF LAW IN SUPPORT OF
## DUBAI ISLAMIC BANK'S MOTION TO DISMISS


ZUKERMAN GORE & BRANDEIS, LLP
John K. Crossman (JC 7387)
Frank C. Welzer (FW 7159)
875 Third Avenue
New York, New York 10022
(212) 223-6700

*Attorneys for Defendant*
*Dubai Islamic Bank*

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

PRELIMINARY STATEMENT .......................................................................................1

LEGAL ARGUMENT .....................................................................................................5

I.   THE COMPLAINTS SHOULD BE DISMISSED
     FOR FAILURE TO STATE A CLAIM ....................................................................5

     A.  Plaintiffs Fail To State A Claim That Would
         Entitle Them To Relief Against DIB ................................................................5

         1. Plaintiffs Cannot Recover From A Bank For Damages
            Based On Money Routinely Passing Through The Bank ..............................5

         2. Plaintiffs' Conclusory Allegations Are Non-Actionable ...........................7

         3. Plaintiffs' Remaining Allegations Are Non-Actionable .............................9

     B.  Plaintiffs Insufficiently Allege Knowledge And Causation ...........................11

     C.  Each Specific Cause Of Action Fails ..............................................................12

         1. There Is No Basis For Aiding & Abetting or Conspiracy Liability ...........12

            a.  Survival ................................................................................................13

            b.  Wrongful Death ...................................................................................13

            c.  Intentional Infliction of Emotional Distress. .......................................14

            d.  Trespass ...............................................................................................14

            e.  Property Damage ..................................................................................15

            f.  Contribution or Indemnity ....................................................................15

            g.  Alien Tort Claims Act ..........................................................................15

            h.  Violation of International Law ..............................................................16

         2. Each Of The Remaining Causes Of Action Fails .......................................16

            a.  Negligence and Negligent Infliction of Emotional Distress ................16

        b. Assault and Battery...............................................................................17

        c. Antiterrorism Act...................................................................................17

        d. Torture Victim Protection Act...............................................................17

        e. RICO......................................................................................................18

        g. Punitive Damages.................................................................................19

II. THE COURT LACKS JURISDICTION OVER DIB .............................................19

    A. DIB Is Not Amenable To Jurisdiction Under Any Statute .............................20

        1. ATA's National Service Does Not Apply ..................................................20

        2. New York's Long Arm Statute Does Not Apply ........................................20

        3. Fed. R. Civ. Proc. 4(k)(2) Does Not Apply................................................21

    B. DIB Has Insufficient Minimum Contacts With The U.S.................................21

    C. Service Was Ineffective ....................................................................................23


CONCLUSION ..............................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alexander & Alexander of New York, Inc. v. Fritzen,*
68 N.Y.2d 968, 510 N.Y.S.2d 546 (N.Y. 1986)............................................................12

*Ahmed v. Getty Petroleum Marketing Inc.,*
2003 WL 21262131 (May 14, 2003)............................................................................19

*Arndt v. UBS AG,* 342 F.Supp.2d 132 (E.D.N.Y. 2004) ...................................................17

*Bank of America v. Whitney Central Nat'l Bank,*
261 U.S. 171, 43 S.Ct. 311 (1923) ..............................................................................22

*Briarpatch Ltd., L.P. v. Frankfurt Garbus Klein & Selz, P.C.,*
787 N.Y.S.2d 267 (1st Dept., 2004) .............................................................................12

*Burnett v. Al Baraka,* 274 F.Supp.2d 86 (D.D.C. 2003)................................................1, 6

*Burnett v. Al Baraka,* 292 F.Supp.2d 9 (D.D.C. 2003)........................................................1

*Casio Computer Co. v. Sayo,* 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ....................23

*China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash,*
1999 WL 126921 (S.D.N.Y. Mar. 9, 1999)...................................................................24

*Chong v. N.Y.C. Transit Auth.,* 441 N.Y.S.2d 24 (2d Dept. 1981)....................................14

*Connell v. Hayden,* 443 N.Y.S.2d 383 (2d Dept. 1981).......................................................9

*Concesionaria DHM, S.A. v. International Finance Corp.,*
307 F.Supp. 2d 553 (S.D.N.Y. 2004)........................................................................... 22

*Continental Field Service Corp. v. ITEC Int'l, Inc.,*
894 F.Supp. 151 (S.D.N.Y. 1995) ................................................................................20

*Daewoo Int'l (America) Corp. v. Orion Engineering and Service Inc.,*
2003 WL 22400198 (S.D.N.Y. Oct. 20, 2003)..............................................................20

*Daventree Ltd. v. Republic of Azerbaijan,*
349 F.Supp. 2d 736 (S.D.N.Y. 2004) ...........................................................................20

*De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65 (2d Cir. 1996)............................................8

*Dineen v. Stramka,* 228 F.Supp.2d 447 (S.D.N.Y. 2002)...................................................14

*Dusenberry v. United States*, 534 U.S. 161 (2002) ............................................................24

*Estate of DiGiacomo v. Lentz*, 2004 WL 66690 (S.D.N.Y. 2004) .....................................13

*EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 1995 WL 77589 (S.D.N.Y. Feb. 27, 1995) ......................8

*Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9 (1st Dept., 2002)................................12

*Friedman v. Bayer Corp.*, 1999 WL 33457825 (S.D.N.Y. Dec. 15, 1999).......................16

*Hayden v. Pataki*, 2004 WL 1335921 (S.D.N.Y. June 14, 2004) .....................................16

*In re Terrorist Attacks on Sept. 11, 2001*,
   349 F.Supp.2d 765 (S.D.N.Y. 2005) ......................................................................*passim*

*Indocomex Fibres v. Dubai Islamic Bank*, 00 Civ. 5844 (DAB)(MHD)...........................22

*Indus. Bank v. Baltic Fin. Corp.*, 1994 WL 286162 (S.D.N.Y. 1994)................................ 19

*International Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*,
   2002 WL 465291 (S.D.N.Y. Mar. 27, 2002)...................................................................22

*Jesup, Josephthal & Co. v. Piguet & Cie.*,
   1991 WL 168053 (S.D.N.Y. Aug. 22, 1991)................................................................... 23

*Kantlehner v. U.S.,* 279 F.Supp. 122 (E.D.N.Y. 1967) .....................................................15

*Katzman v. Victoria's Secret*, 167 F.R.D. 649 (S.D.N.Y. 1996).......................................18

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
   Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991) ........................................23

*Laborers Local 17 v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999)............................11

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,*
   951 F.Supp. 1071 (S.D.N.Y. 1996) ........................................................................18, 19

*Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533 (S.D.N.Y. 1983) ..............................22

*Local 78 v. Termon Constr., Inc.*, 2003 WL 22052872 (S.D.N.Y. Sept. 2, 2003)............24

*Maritima, S.A. v. Intertanker, Ltd.*, 714 F.Supp. 669 (S.D.N.Y. 1989).............................23

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983)..............................................24

*Meroni v. Holy Spirit Ass'n for Unification of World Christianity*,
    506 N.Y.S. 2d 174 (2d Dept. 1986)..............................................................................13

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950) .....................................24

*Nelson v. Stanley Blacker, Inc.*, 713 F.Supp. 107 (S.D.N.Y. 1989)...................................19

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990).......................................................18

*Renner v. Chase Manhattan Bank*, 1999 WL 47239 (S.D.N.Y. 1999) ..............................16

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163,
    122 L.Ed.2d 525 (1993)...............................................................................................18

*S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987) ...................................................................24

*Schenker v. Assicurazioni Generali S.P.A.*,
    2002 WL 1560788 (S.D.N.Y. Jul. 15, 2002)................................................................22

*Semi Conductor Materials, Inc. v. Citibank International Plc.*,
    969 F.Supp. 243 (S.D.N.Y. 1997) ................................................................................22

*Seril v. Bureau of Highway Operations of Dept. of Transp.*,
    245 A.D.2d 233, 667 N.Y.S.2d 42 (1 Dept., 1997).......................................................14

*St. Matthew Church of Christ, Inc. v. Cheech*,
    768 N.Y.S.2d 111 (Sup. Ct. 2003)................................................................................14

*Symenow v. State Street Bank & Trust Co.*,
    665 N.Y.S.2d 141 (N.Y. App. 4th Dept. 1997)................................................................20

*Triad Energy v. McNell*, 110 F.R.D. 382 (S.D.N.Y. 1986)................................................24

*United Rope Distributors, Inc. v. Kimberly Line*, 785 F.Supp. 446 (S.D.N.Y. 1992).......22

*United States v. Swiss American Bank, Ltd.*,
    116 F.Supp. 2d 217 (D.Mass. 2000).............................................................................23

*Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886 (W.D.N.Y. 1992).......................................23

*Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887 (S.D.N.Y. 2002) .......................17

## **Statutes and Rules**

18 U.S.C. §§ 1962 ..........................................................................................................18, 19

18 U.S.C. § 2334 ............................................................................................................................20

28 U.S.C. § 1350 ............................................................................................................................15

Federal Rule of Civil Procedure 4(k)(2)..........................................................................................21

Federal Rule of Civil Procedure 12(b) ..............................................................................................1

N.Y.C.P.L.R. 302(a)(3)(ii) ............................................................................................................20

N.Y. C.P.L.R. 215(3)......................................................................................................................14

N.Y. Est. Powers & Trusts §§ 5-4.1, 11-3.2(b) (McKinney 2002) ....................................................13

## INTRODUCTION

Defendant Dubai Islamic Bank ("DIB"), appearing specially, respectfully submits

this memorandum of law and Declaration of Obaid Al Shamsi in support of its motion to

dismiss the claims against it in each of the consolidated September 11th actions pursuant

to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

DIB is a bank, and this motion raises several of the same grounds as this Court

and Judge Robertson in the District of Columbia have already used to dismiss claims

against other, similarly situated banks. Specifically, similar claims in similar

circumstances have been dismissed against Arab Bank, Saudi American Bank, and Al

Rahji Bank.[2]  And the claims against DIB should fail for the same basic reason, that:

"there can be no bank liability for injuries caused by money routinely passing through the

bank."  *In re Terrorist Attacks*, 349 F.Supp.2d 765, 834 (S.D.N.Y. 2005).  The claims

against DIB, like those against the other dismissed banks, are based upon the plaintiffs'

---

[1]     The following actions include claims against DIB: (1) *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, No. 02 Civ. 6977 (S.D.N.Y.), Third Amended Complaint ("TAC"); (2) *Thomas Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, 03 Civ. 5738 (S.D.N.Y.) and *Thomas Burnett, Sr., et al. v. Al Baraka, et al.*, 03 Civ. 9849 (S.D.N.Y.), Amended Complaint ("AC"); (3) *Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978 (S.D.N.Y.), First Amended Complaint ("FAC"); (4) *Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, No. 04 Civ. 1923 (S.D.N.Y.), Second Amended Complaint ("SAC"); (5) *Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970 (S.D.N.Y.), FAC; (6) *New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04 Civ. 6105 (S.D.N.Y.), FAC; (7) *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No. 04 Civ. 7065 (S.D.N.Y.), FAC; (8) *Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04 Civ. 7279 (S.D.N.Y.); (9) *World Trade Center Properties LLC, et al. v. Al Baraka, et al.*, No. 04 Civ. 7280 (S.D.N.Y.).

[2]     The prior decisions granting motions to dismiss are: (i) *Burnett v. Al Baraka*, 274 F.Supp.2d 86 (D.D.C. 2003)("*Burnett I*"); (ii) *Burnett v. Al Baraka*, 292 F.Supp.2d 9 (D.D.C. 2003)("*Burnett II*"); and (iii) *In re Terrorist Attacks on Sept. 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005).

incorrect attempt to subject every bank to liability each time a person uses monies traceable to a bank to commit a crime. Yet, the allegations against DIB amount to nothing more than the non-actionable assertion that money received by wrongdoers at one time passed through a bank.

Plaintiffs have not alleged, and cannot allege, that DIB knowingly helped the wrongdoers. Rather, as they did against the three prior banks, plaintiffs here allege only an unsubstantiated conclusion: that DIB (as well as the other banks and, for that matter, every single other defendant) "knowingly and intentionally lent substantial assistance to the Al Qaeda Defendants." (*Cantor Fitzgerald* FAC at ¶ 235). For the same reasons this Court has cited in the past, such allegations are insufficient to withstand a motion to dismiss. *Id.* at 827, 833, 835.

The paucity of allegations against DIB becomes apparent upon an examination of the few times that DIB is actually mentioned at all. For example, the most specific allegation made against DIB is that a person named "Mustafa Ahmed al-Hisawi" held accounts at DIB and at Standard Chartered Bank (Standard Chartered, though the allegation is immaterial on this motion, is incorrectly alleged to be an "affiliate" of DIB), that money transfers purportedly originated to two persons from these unidentified accounts since at least June 2000, and that those two persons would someday turn out to be participants in the September 11 attack. Plaintiffs do not identify any account number at DIB, do not allege a specific transfer from DIB, and cannot hope to make such allegations because DIB has located no record of a person named Mustafa Ahmed al-Hisawi ever having an account at DIB. Moreover, even if for the sake of this motion only, we assume that this person did have an account at DIB (and it appears that he did

2

not), no such person was ever on the list of Specially Designated Nationals and Blocked Persons published by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury. Indeed, not even the alleged recipients of the money (Marwan al-Shehhi and Mohammed Atta) were on the OFAC's list. Thus, even if they could specifically allege and prove that money moved through DIB to al-Shehhi and Atta, the plaintiffs still could not allege that DIB actually knew that it was providing banking services to wrongdoers (much less terrorists-to-be). But such knowledge is an element of nearly every cause of action that plaintiffs have attempted to plead. (*In re Terrorist Attacks*, 349 F.Supp.2d at 826).

Therefore, even if the Court concludes that process has been validly served on DIB, this Court should nonetheless rule that the activities alleged against DIB are routine banking services for which DIB cannot on these facts be liable. Accordingly, the claims against DIB should be dismissed for failure to state a claim.

However, the Court may not need to decide the above-described failure of the complaints to state a claim because DIB contends first and foremost that both service of process and the process itself were insufficient, and that the complaints against DIB should be dismissed on that basis prior to reaching the other issues. There can be no doubt that the plaintiffs have received a full and fair opportunity to effectuate service, including multiple extensions adding many months to the normal timetables. But instead of actually serving DIB through readily available, reliable means, plaintiffs' counsel instead chose to obtain an ex parte order of service by publication, even though plaintiffs' counsel failed to reveal to the Court that the order was both unnecessary and inappropriate.

DIB is a public joint stock company organized under the laws of the United Arab Emirates ("U.A.E."). DIB's principal office is in the Emirate of Dubai. Since it was established in 1975, the location of DIB's head office (and its branches) have been a matter of public record. They are listed on DIB's website. DIB's head office is located on the main thoroughfare, Airport Road, in Deira, Dubai. It is adjacent to the Clock Tower, which is a well-known landmark in Dubai. It is easy to locate. But DIB has no record of ever receiving any service, by mail, hand delivery or otherwise, of any summons or complaint. And plaintiffs have not claimed to have actually served DIB. Indeed, before they moved for an order authorizing service by publication, plaintiffs did not even claim to have tried.

And even if service by publication had been appropriate (which it was not), it was not effective. In fact, DIB did not see any publication in the Egyptian newspaper *Al Quds*, the United Kingdom-based *International Herald-Tribune* or in the *U.S.A. Today*. None of these papers are widely circulated in the U.A.E. None are even published on the same continent as the U.A.E. As a result, the purported service by publication was ineffective.

It is regrettable that rather than perform the customary pre-litigation investigation, the plaintiffs in this case chose to name (and thereby injure) many financial institutions from the Middle East regardless of whether they had sufficient grounds. DIB is a victim of that blunderbuss approach. The events of September 11 are a terrible tragedy that destroyed the lives of countless people stretching beyond the confines of New York. It is an unfortunate side effect of those events that many innocent, law-abiding persons who come from the Middle East have suffered unfairly due to the stigma heaped upon the

4

Arab world by a few demented individuals.  We bring this motion to help the plaintiffs refocus their efforts on pursuing those actually responsible.

## LEGAL ARGUMENT

### I.

## THE COMPLAINTS SHOULD BE DISMISSED
## FOR FAILURE TO STATE A CLAIM

Because "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants," Judge Robertson cautioned that "fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant" in order to ensure fair notice of plaintiffs' claim and "the grounds upon which it rests." *Burnett I*, pp. 103-104.  Notably, "no inferences are accepted that are unsupported by the facts set out in the" operative complaint.  *Id.*

**A.      Plaintiffs Fail To State A Claim That Would
         Entitle Them To Relief Against DIB**

1.      Plaintiffs Cannot Recover From A Bank For Damages
         Based On Money Routinely Passing Through The Bank

Plaintiffs allege the following acts by DIB, which amount to allegations that DIB engaged in nothing more than routine banking business.  Indeed, plaintiffs do not even allege that DIB dealt with a terrorist -- only that transfers with an unknown number of intermediaries "originated" on their apparently ultimate journey to two people who would later become hijackers.

-   "Mustafa Ahmed al-Hisawi held accounts at [DIB] (and its affiliate and correspondent, Standard Chartered Bank) where money transfers originated to hijackers Marwan al-Shehhi and Mohammed Atta since at least June 2000." *Burnett* AC ¶ 118; *Federal Insurance* FAC ¶ 345; *WTC Properties* Com. ¶ 255.

5

Plaintiffs' allegations pertaining to other, "American" banks with offices in the U.A.E., although also insufficient, are actually more detailed. Such inadequate pleadings include Citibank, which is not a defendant. See, e.g. *Burnett* AC ¶ 119; *WTC Properties* Complaint ¶ 256. However, plaintiffs do not allege that DIB was involved in any of those specific transfers. See, e.g., *Burnett* AC ¶¶ 120, 121; *WTC Properties* Complaint ¶¶ 257, 258.[3] Moreover, this Court made clear that banks are not liable for such routine banking services. (*In re Terrorist Attacks*, 349 F.Supp.2d at pp. 830 ("Banks do not owe non-customers a duty to protect them from the intentional torts of their customers.") (citing *Burnett I*), 832-34).

In their RICO statements filed on April 29, 2005, some plaintiffs alleged additional involvement by DIB, but such involvement is still nothing more than the provision of banking services:

> "The hijackers also use Dubai Islamic Bank to donate to Muslim charities. For example, an agreement for automatic withdrawal dated July 25, 1999, indicates that hijacker Marwan al Shehhi donated money to Darbar Charity. The money was transferred from Hong Kong Shanghai Bank account no. 61052114001 into Dubai Islamic Bank account no. 1520449474101." (*Euro Brokers* RICO statement at Exhibit A, p. 1).

At most, this allegation shows al Shehhi had an account at another bank (HSBC) from which a transfer to an account at DIB originated. However, plaintiffs allege no facts from which one can infer that DIB knew of any charities' alleged support for terrorism.

---

[3] In particular, the more specific allegations, which do not implicate DIB, state as follows: "In July 2001, $109,440 arrived in al-Shehhi and Atta's joint Florida bank account. $9,985 was sent on July 19th. $9,485 came on August 7, 2000. $19,985 came on August 30, 2000. $69,985 came on September 18, 2000. During this period, Atta and al-Shehhi used the money to pay for their training at two airports on small aircraft, and other expenses related to the September 11, 2001 attacks." *Burnett* AC ¶ 120; *WTC Properties* Complaint ¶ 257. "Two days before the terrorist attacks on September 11, 2001, Mustafa Ahmed al-Hisawi received transfers back of 'surplus' funds of $15,000 from three of the hijackers, Mohammed Atta, Walid al-Shehri and Marwan al-Shehhi." *Burnett* AC ¶ 121; *WTC Properties* Complaint ¶ 258.

From such allegations no one could one infer that DIB knowingly, substantially or intentionally participated in any wrongdoing, or indeed that DIB did anything other than provide routine banking services in the ordinary course of business.

Finally, certain complaints misleadingly refer to a decision from the Central Bank of the U.A.E. dated September 9, 2001 which was directed at all banks, moneychangers, investment companies, and other financial institutions in the U.A.E. (including the insurance sector and financial markets). (*Burnett* AC ¶ 122; *Euro Brokers* Complaint ¶ 124; *WTC Properties* Complaint ¶ 259; *WTC Properties* Complaint ¶ 1119; *Cantor Fitzgerald* FAC ¶ 139). In it the U.A.E. Central Bank ordered the freezing of accounts of twenty-six persons and organizations suspected of having contacts with al Qaeda. As the U.A.E. Central Bank decision was directed at all financial institutions, no adverse inference can be drawn against DIB from this. (In fact, DIB's search revealed that none of the twenty-six persons or organization held accounts at DIB).

2.     Plaintiffs' Conclusory Allegations Are Non-Actionable

The complaints contain the following strong-sounding, but ultimately conclusory and non-actionable allegations against DIB:

- "[DIB] holds itself out as a legitimate banking and financial institution. Yet, DIB has knowingly and intentionally lent repeated material support to Al Qaeda through, inter alia, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *Euro Brokers* Complaint ¶ 122; *WTC Properties* Complaint ¶ 1117; *Cantor Fitzgerald* FAC ¶ 137.

- "[DIB] lent repeated material support to al Qaeda and OBL, aided and abetted others who lent material support to al Qaeda and OBL and otherwise engaged in racketeering activity in violation of the law." *WTC Properties* Complaint ¶ 1120; *Cantor Fitzgerald* FAC ¶ 140; *New York Marine* FAC ¶ 45.

- "Defendants knowingly and intentionally lent substantial assistance to the Al Qaeda Defendants. At the time of such aiding & abetting, the Defendants knew or should have known that such substantial assistance furthered the planning and

7

execution of unlawful, criminal and/or tortious activity, including the attacks of
September 11, 2001." *Cantor Fitzgerald* FAC: ¶ 235.

- "Defendants . . . [DIB] . . . have conspired with Osama bin Laden and al Qaeda to
raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al
Qaeda in order to support and finance their terrorist activities including, but not
limited to, the September 11[th] attacks." *Estate of O'Neill* SAC ¶ 22.

No factual allegations support these vague legal conclusions. "[A] complaint

which consists of conclusory allegations unsupported by factual assertions fails even on

the liberal standards of Rule 12(b)(6)." (*In re Terrorist Attacks*, 349 F.Supp.2d at 833,

citing *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)). "A complaint

alleging conclusions without supporting facts will not survive a Rule 12(b)(6) motion."

(*In re Terrorist Attacks*, 349 F.Supp.2d at 835).

Additionally, plaintiffs make allegations against DIB as a mere shareholder of

another defendant, Tadamon Islamic Bank. *WTC Properties* Complaint ¶ 1116; *Cantor

Fitzgerald* FAC ¶ 136. These claims against DIB are similar to the claims in *Ashton* and

*Burnett* against Al Baraka, which the Court dismissed in their entirety. (*In re Terrorist

Attacks*, 349 F.Supp.2d at 835, 836).[4] Where -- as here -- there is no allegation that DIB

participated in another defendant corporation's alleged tort, there can be no liability for

DIB as a mere shareholder. *EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 1995 WL 77589, at * 6

---

[4]    In dismissing the claims against Al Baraka, the Court noted that the majority of the
claims "actually concern Dallah Albaraka," a separate banking conglomerate which wholly-owns
its subsidiary and "financial arm" Al Baraka. *Id.* at 836. The alleged connection between DIB
and defendant Tadamon Islamic Bank is much more distant than even the admittedly insufficient
relationship between Al Baraka and Dallah Abaraka. DIB is alleged to be liable as a mere
shareholder of another defendant (*Ashton* TAC ¶ 69; *Federal Ins.* Complaint ¶¶ 334, 335; *Euro
Brokers* Complaint ¶ 121; *WTC Properties* Complaint ¶ 245), or, even more remotely, a
shareholder of an affiliate of a defendant (*Burnett* AC ¶ 111; *Estate of O'Neill v. Al Baraka* SAC:
¶ 54). The complaints go on to allege wrongful conduct only by the other defendant. *Ashton*
TAC ¶ 70; *WTC Properties* Com. ¶¶ 246, 248; *Continental Casualty* FAC ¶ 70; *Federal Ins.*
Com. ¶¶ 336-342 ("Tadamon Islamic Bank facilitated, materially sponsored, aided and abetted,
and/or conspired with Al Qaeda and its international terrorists and financial operations. . . .)."

(S.D.N.Y. Feb. 27, 1995); *Connell v. Hayden*, 443 N.Y.S.2d 383, 402 (2d Dept. 1981)(a

stockholder is not liable for any obligations of a corporation in the absence of

constitutional, statutory or charter provisions to the contrary).

3.      Plaintiffs' Remaining Allegations Are Non-Actionable

        The remaining allegations cannot withstand judicial scrutiny because they have no

relation to September 11, concern normal banking practices, or are so tenuous, remote

and hearsay-based that they raise Rule 11 concerns.[5]

-       "[DIB] has a history of illicit money laundering. [DIB] was one of the BCCI's
        main shareholders, investing \$80 million. [DIB] was also involved in a number
        of other illicit financial scandals, including the \$242 million money-laundering
        operation through gold trading involving Foutanga (Babani) Sissoko, a billionaire
        from Mali." *Burnett* AC ¶ 112; *WTC Properties* Complaint ¶ 249.

This paragraph refers to losses that DIB suffered when DIB was the victim of a fraud

masterminded by a man called Sissoko, and when DIB lost money it invested in the

collapsed of BCCI. DIB was the injured party in those cases, not (as the allegation

misleadingly suggests) some kind of accomplice in them. Furthermore, these events have

nothing to do with September 11, but even if they could be so-linked, the allegation

would be an impermissible effort to use past conduct to prove action in conformity

therewith.

        Some of the plaintiffs make additional allegations drawn from a U.S. Department

of State daily brief press conference on July 8, 1999 by deputy spokesman James B.

Foley, in which Mr. Foley commented briefly upon something that had damaged DIB's

---

[5]     The following allegations are quoted from *Burnett*, which was filed on September 3,
2003. The complaints filed thereafter which included allegations against DIB tracked closely, or
verbatim, the allegations in *Burnett*. Complaints in *Ashton* were filed earlier, but the sole
reference in any *Ashton* complaint to DIB is that DIB is a shareholder of another defendant, and
*Ashton* can be dismissed against DIB on that basis alone.

reputation. (*Burnett* AC ¶ 113; *Euro Brokers* Complaint, ¶ 123; *WTC Properties*

Complaint, ¶¶ 250, 1118; *Cantor Fitzgerald* FAC: ¶ 138). Plaintiffs suggest that Mr.

Foley's general comment about DIB related to money laundering for terrorism.

However, at the time the damage to DIB's reputation concerned its quarter-billion dollar

loss from the Sissoko fraud in the 1990s, where the U.A.E. Central Bank intervened to

capitalize DIB and prevent it from failing. DIB's loss is unrelated to September 11, but

even assuming for this motion that is was, this is a similarly impermissible effort to use

past events to prove later conduct.

- "[DIB]'s involvement, support and role in the September 11, 2001 attacks was
  noted in a draft general report on the economic consequences of September 11,
  2001, and the economic dimensions of anti-terrorism, by NATO on April 22,
  2002: '. . . al Qaeda had previously used the Dubai Islamic Bank and local
  Hawala transfer companies to fund the bombings of the American embassies in
  Kenya and Tanzania.'" *Burnett* AC ¶ 115; *Federal Insurance* FAC ¶ 344; *Euro
  Brokers* Complaint ¶ 124; *WTC Properties* Complaint ¶¶ 252, 1119; *Cantor
  Fitzgerald* FAC ¶ 139.

These allegations stem from an admittedly "draft" report issued by the NATO

Parliamentary Assembly (which has no formal relationship with NATO) in 2002, which

quoted from various newspaper articles. Moreover, the only reference to DIB has

nothing to do with September 11, but rather concerns unproven allegations about events

in Kenya and Tanzania. Even if assumed to be true for purposes of this motion, this is

not probative of the claims at hand.

In addition, some plaintiffs have taken other allegations from statements in

newspaper articles and books. (See, e.g. *Burnett* AC ¶ 114, *WTC Properties* Complaint,

¶ 251, alleging the CIA had evidence at some unspecified time that Osama bin Laden

funneled money through DIB, which is derived from a July 1999 New York Times

article; *Burnett* AC ¶ 123, *Euro Brokers* Complaint ¶ 124, *WTC Properties* Complaint ¶

10

260, *WTC Properties* Complaint ¶ 1119, *Cantor Fitzgerald* FAC ¶ 139, alleging that a

Luxembourg commission identified DIB in a regulatory alert as having links with Osama

bin Laden, as claimed in a book *Funding Evil – How Terrorism Is Financed and How to

Stop It*, by Rachel Ehrenfeld). The Court has cautioned that that "fairness requires extra-

careful scrutiny of plaintiffs' allegations as to any particular defendant," and allegations

based on hearsay, like newspaper articles, is not a proper basis to charge a bank with

complicity in a third party's intentional wrongdoing. Moreover, these allegations are

nothing more than assertions people who became terrorists have used DIB for ordinary

banking services, which is not actionable against DIB.

## B.    Plaintiffs Insufficiently Allege Knowledge And Causation

It is clear that "[p]roviding routine banking services, without having knowledge of

the terrorist activities, cannot subject" a bank to liability. (*In re Terrorist Attacks*, 349

F.Supp.2d at 835). Furthermore, to be liable for a substantive cause of action under a

theory of either conspiracy or aiding and abetting, "the defendant must know the

wrongful nature of the primary actor's conduct . . . and the conduct must be tied to a

substantive cause of action [citations omitted]." (*Id.* at 826). A plaintiff must plead facts

that show that the alleged wrongdoing was a substantial factor leading to the injury, and

that the injury was directly related to the wrongdoing, and that the injury was reasonably

foreseeable. *Laborers Local 17 v. Philip Morris, Inc*., 191 F.3d 229, 23536 (2d Cir.

1999), *cert. denied* 528 U.S. 1080, 120 S.Ct. 799, 145 L.Ed.2d 673 (2000).

Accordingly, the Court dismissed the claims against Arab Bank, Saudi American

Bank, and Al Rahji Bank because the complaints failed to allege knowledge or causation

in anything more than conclusory language. *In re Terrorist Attacks*, 349 F.Supp.2d at pp.

833 ("'[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).'")(citations omitted), 834-35. The complaints' general allegations of knowledge and causation mirror those found to be insufficient against other banks. (See, e.g. Burnett AC ¶ 672: "the Defendants intended, knew or should have known").

## C.    **Each Specific Cause Of Action Fails**

### 1.    There Is No Basis For Aiding & Abetting or Conspiracy Liability

To be liable for aiding and abetting, a defendant must know the wrongful nature of the primary actor's conduct, and the conduct must be tied to a substantive cause of action. *In re Terrorist Attacks*, 349 F.Supp.2d at 826. Similarly, no independent cause of action exists for civil conspiracy. *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 547 (N.Y. 1986)("It purports to allege a conspiracy but, as we long ago held, 'a mere conspiracy to commit a [tort] is never of itself a cause of action'."); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 17 (1st Dept., 2002)(trial court "properly dismissed the seventh cause of action for civil conspiracy since no independent cause of action exists for such a claim"). Thus, the purported causes of action for aiding and abetting and conspiracy should be dismissed.[6]

The substantive causes of action against DIB based on aiding and abetting fail because the plaintiffs' allegations of actual knowledge are conclusory, and the facts do not support such an inference. *Briarpatch Ltd., L.P. v. Frankfurt Garbus Klein & Selz, P.C.*, 787 N.Y.S.2d 267, 268 (1st Dept., 2004)(dismissing causes of action alleging

---

[6]      Aiding and abetting claims are alleged against DIB in *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald*, *Federal*, *Estate of O'Neill* and *Burnett*. Conspiracy claims are alleged against DIB in *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald*, *Federal*, *Estate of O'Neill* and *Burnett*.

12

theories of aiding and abetting where complaint contained only conclusory allegations). In accordance with the Court's January 18, 2005 decision, because the plaintiffs have failed to allege concerted action liability against DIB, the plaintiffs have failed to state claims for the following causes of action:

a.     Survival[7]

N.Y. Est. Powers & Trusts Law § 11-3.3 (McKinney 2004) requires that one be appointed as a personal representative in order to recover on claims that a decedent had against a defendant at the time of death. The statute also requires an underlying wrong committed against the decedent before death. *Meroni v. Holy Spirit Ass'n for Unification of World Christianity*, 506 N.Y.S. 2d 174, 179 (2d Dept. 1986)("wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent"). The underlying wrongs alleged against DIB are that DIB maintained accounts and effectuated transfers. Because there has been no wrong alleged by DIB against the decedents, this claim fails. The claims should also be dismissed where plaintiffs have failed to allege capacity to sue.[8] *Estate of DiGiacomo v. Lentz*, 2004 WL 66690, at * 1 (S.D.N.Y. 2004)(dismissing both wrongful death claim and survival claim because there was no proper plaintiff).

b.     Wrongful Death

Only personal representatives of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful death. N.Y. Est. Powers & Trusts

---

[7]     Survival is alleged against DIB in *Ashton*, *Federal*, *Estate of O'Neil*, and *Burnett*.

[8]     The *Federal* plaintiffs failed to allege a capacity to sue as representatives. Likewise, certain plaintiffs in *Ashton*, *Burnett*, and *Estate of O'Neill* sued not as representatives but in their own right, and they have no capacity to bring survival or wrongful death claims.

13

§§ 5-4.1, 11-3.2(b) (McKinney 2002). The *Federal* plaintiffs' claims should be dismissed because those plaintiffs have failed to allege standing. Moreover, to state a claim, such personal representatives must allege and prove a wrongful act, neglect or default that caused the decedents' deaths. *Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002), citing *Chong v. N.Y.C. Transit Auth.*, 441 N.Y.S.2d 24, 25 (2d Dept. 1981). Like the survival claims, this claim fails because plaintiffs have not alleged any facts from which the Court can infer that DIB committed acts which caused the deaths.[9]

c. Intentional Infliction of Emotional Distress

The statute of limitations for intentional infliction of emotional distress is one year. *In re Terrorist Attacks*, 349 F.Supp.2d at 829. N.Y. C.P.L.R. 215(3). The *Federal* plaintiffs filed their complaint on September 10, 2003, almost a year late.

d. Trespass[10]

Liability for trespass attaches when one without justification or permission intentionally enters upon another's property or, if entry was permitted, refuses to leave after permission to remain has been withdrawn. *St. Matthew Church of Christ, Inc. v. Cheech*, 768 N.Y.S.2d 111, 122 (Sup. Ct. 2003). Unauthorized entry and wrongful use are both indispensable elements of an action in trespass. *Seril v. Bureau of Highway Operations of Dept. of Transp.*, 245 A.D.2d 233, 667 N.Y.S.2d 42, 45 (1 Dept., 1997). Plaintiffs have failed to allege such conduct by DIB.

---

[9]    Wrongful death is alleged against DIB in *Ashton*, *Burnett*, *Federal*, and *Estate of O'Neill*.

[10]    Trespass is alleged in *Continental Casualty*, *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald* and *Federal*.

14

e.     Property Damage

"Property damage" is not a well-recognized independent cause of action.[11]  Even
if it was, a claim for property damage against DIB would fail because of plaintiffs' failure
to make a showing of concerted action liability against DIB.

f.     Contribution or Indemnity

The *Cantor Fitzgerald* plaintiffs have asserted a cause of action for contribution
or indemnity "[i]n the event that Port Authority becomes obligated . . . to pay." (*Cantor
Fitzgerald* ¶ 242). This cause of action fails because such actions accrue upon payment,
and plaintiffs have not alleged conditions precedent.   *Kantlehner v. U.S.,*
279 F.Supp. 122, 128 (E.D.N.Y. 1967).

g.     Alien Tort Claims Act[12]

The Alien Tort Claims Act ("ATCA") provides the district courts with original
jurisdiction "of any civil action by an alien for a tort only, committed in violation of the
law of nations or a treaty of the United States." 28 U.S.C. § 1350.  To state a claim,
plaintiffs must allege that the defendant committed a tort in violation of international law
or treaty. 28 U.S.C. § 1350.

For those plaintiffs who are aliens and not U.S. citizens, the claims fail because
plaintiffs have alleged no tort by DIB, only that DIB engaged in routine banking
business. (*Burnett I* at p. 100: "no defendant in this case is sued as a direct perpetrator of
a tort committed in violation of the law of nations . . ."). Plaintiffs' allegations of

---

[11]     Property damage is alleged as a cause of action in *Ashton*, *Euro Brokers* and *New York
Marine*.

[12]     Alien Tort Claims Act claims are alleged against DIB in *Estate of O'Neill* and *Burnett*.

concerted action or accomplice liability similarly fail because there are no allegations of fact from which an inference can be drawn that DIB had knowledge of wrongdoing.

     h.    Violation of International Law[13]

     There is no independent cause of action for violation of international law.

"[C]ustomary international law prescribes norms of conduct among nations but does not create private rights of action for individuals . . . Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law." *Friedman v. Bayer Corp.*, 1999 WL 33457825, at *3 (S.D.N.Y. Dec. 15, 1999); *Hayden v. Pataki*, 2004 WL 1335921, at *7 (S.D.N.Y. June 14, 2004)("Customary international law alone does not provide a cause of action in federal court in the absence of a federal statute.")

2.    Each Of The Remaining Causes Of Action Fails

     a.    Negligence and Negligent Infliction of Emotional Distress[14]

     "Banks do not owe non-customers a duty to protect them from the intentional torts of their customers." *In re Terrorist Attacks*, 349 F.Supp.2d at 830, citing *Renner v. Chase Manhattan Bank*, 1999 WL 47239, at *13 (S.D.N.Y. 1999)(citing cases). Plaintiffs do not allege that DIB owed them a cognizable duty of care (much less that DIB's breach of such undefined duty proximately caused plaintiffs harm). As a result, in accordance with this Court's ruling dismissing the negligence claims against other banks,

---

[13]    Violation of International law is asserted against DIB in *WTC Properties* and *Cantor Fitzgerald*.

[14]    Negligence is asserted against DIB in *Burnett*, *New York Marine*, *Federal*, and *Estate of O'Neil*. Negligent Infliction of Emotional Distress is alleged against DIB in *Federal*, *Estate of O'Neill*, and *Burnett*.

*Id.* at 831, the claims for negligence and negligent infliction of emotional distress should be dismissed as against DIB.

### b.   Assault and Battery

The statute of limitations for assault and battery is one year. *Id.* at 829, citing N.Y. C.P.L.R. 215(3). The *Federal* plaintiffs filed their complaint on September 10, 2003, almost two years after September 11. Like their intentional infliction of emotional distress claims, the *Federal* plaintiffs' assault and battery claims are time barred.

### c.   Antiterrorism Act[15]

Absent allegations that any bank knew that anything relating to terrorism was occurring through services it provided, this Court has held that the allegations that a bank provided material support to al Qaeda failed to state a cause of action under the ATA. *In re Terrorist Attacks*, 349 F.Supp.2d at 828. Like the ATA claims against the other banks, the ATA claims against DIB should be dismissed.

### d.   Torture Victim Protection Act[16]

The TVPA claims against DIB fail because only individuals may be sued under the TVPA. *Id.* at 828, citing *Arndt v. UBS AG*, 342 F.Supp.2d 132, 141 (E.D.N.Y. 2004)("UBS AG is not an individual, but a corporation, and as such cannot be sued under the TVPA."). Moreover, because plaintiffs' injuries occurred in the U.S., and not while in a foreign country, the TVPA does not apply. *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887 at * 3 (S.D.N.Y. 2002)("the TVPA . . . expand[s] the ACTA's reach to

---

[15]     Antiterrorism Act ("ATA") claims are alleged against DIB in *Ashton*, *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald*, *Federal*, *Estate of O'Neill*, and *Burnett*.

[16]     Torture Victim Protection Act ("TVPA") claims are alleged against DIB in *Ashton*, *Federal*, *Estate of O'Neill*, and *Burnett*.

torts committed against United States citizens (not just 'aliens') who, while in a foreign country, are victims of torture or 'extra judicial killing.'").

  e.  RICO

"Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device. Because the 'mere assertion of a RICO claim ... has almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Katzman v. Victoria's Secret*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997).[17]

In their RICO statements, the plaintiffs assert claims under 18 U.S.C. §§ 1962(a), (b), (c) and (d). "[T]he conduct constituting a violation of § 1962(a) is investment of racketeering income," so to recover under § 1962(a) "a plaintiff must allege injury from the defendant's investment of the racketeering income". *In re Terrorist Attacks*, 349 F.Supp.2d at 827, citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990). For any plaintiffs who have not already abandoned the 1962(a) claims (like *Euro Brokers* and *WTC Properties*), the Court should dismiss them.

Plaintiffs have failed to state a RICO claim under 1962(b) or (c) against DIB because "an alleged RICO defendant must have had 'some part in directing' the 'operation or management' of the enterprise itself to be liable." *Id*. at 827. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). This operation and management test "is a very difficult test to satisfy." *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1090 (S.D.N.Y. 1996). The

---

[17]  RICO claims are alleged against DIB in *Continental Casualty*, *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald*, *Federal*, *Estate of O'Neil* and *Burnett*.

18

complaints do not allege anything approaching active "management or operation."

Plaintiffs' allege that DIB provided routine services to others who committed a crime, not

that DIB exerted control over a criminal enterprise. As with the already dismissed banks,

the plaintiffs have failed to allege DIB's involvement in active management or

operation.[18] Furthermore, plaintiffs have not alleged that DIB was a central figure in the

underlying scheme for conspiracy liability under § 1962(d).

     g.    Punitive Damages[19]

Punitive damages are a type of relief, and not an independent cause of action.

*Ahmed v. Getty Petroleum Marketing Inc.*, 2003 WL 21262131 at * 2 (May 14, 2003)

("Indeed, there is no independent cause of action for punitive damages under New York

law."); *Nelson v. Stanley Blacker, Inc.*, 713 F.Supp. 107, 113 (S.D.N.Y., 1989).

Moreover, because plaintiffs' claims against DIB are deficient as a matter of law,

plaintiffs' prayer for punitive damages should be stricken.

## II.

## THE COURT LACKS JURISDICTION OVER DIB

In order for the Court to have acquired jurisdiction over DIB, four conditions

must be satisfied: (a) DIB must be amenable to jurisdiction under a statutory provision

(such as a long-arm statute); (b) the exercise of that jurisdiction must comport with due

process and satisfy the minimum contacts test; (c) process must have been served

---

[18]    Courts have explained that a defendant bank "provid[ing] banking services -- even with knowledge of the fraud -- is not enough to state a claim under section 1962(c)." *Indus. Bank v. Baltic Fin. Corp.*, 1994 WL 286162, at *3 (S.D.N.Y. 1994). "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *LaSalle Nat'l Bank*, *supra*, 951 F.Supp. at 1090 (citation omitted).

[19]    Punitive damages is alleged as a cause of action in *Ashton*, *Euro Brokers*, *WTC Properties*, *New York Marine*, *Cantor Fitzgerald*, *Federal*, *Estate of O'Neill*, and *Burnett*.

pursuant to a statutory authorization; and (d) service of process must provide the notice required by due process. None of these conditions are satisfied as to DIB.

## A.     **DIB Is Not Amenable To Jurisdiction Under Any Statute**

### 1.     ATA's National Service Does Not Apply

The ATA contains a nationwide service of process provision, 18 U.S.C. § 2334(a). However, because DIB was not served in the United States (and is disputing the manner in which it was purportedly served), the national service provisions of the ATA do not apply. *In re Terrorist Attacks*, 349 F.Supp.2d at 806-07 ("Accordingly, the Court must consider an alternative basis for personal jurisdiction.").

### 2.     New York's Long Arm Statute Does Not Apply

C.P.L.R. § 302(a)(3)(ii) extends jurisdiction to one who "commits a tortious act without the state causing injury to person or property within the state . . ., if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Plaintiffs allege that DIB maintained accounts and permitted transfers. However, "[w]iring of money . . . is insufficient to establish jurisdiction under New York's long arm statute." *Daewoo Int'l (America) Corp. v. Orion Engineering and Service Inc.*, 2003 WL 22400198, at *2 (S.D.N.Y. Oct. 20, 2003); *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp. 2d 736, 764 (S.D.N.Y. 2004)(making wire transfers did not suffice as minimum contacts to subject non-resident bank to jurisdiction); *Continental Field Service Corp. v. ITEC Int'l, Inc.*, 894 F.Supp. 151, 153-54 (S.D.N.Y. 1995); *Symenow v. State Street Bank & Trust Co.*, 665 N.Y.S.2d 141, 142 (N.Y. App. 4th Dept. 1997). Moreover, this Court found that plaintiffs had not pled with enough specificity for a conspiracy theory of jurisdiction to

apply under the New York long-arm statute. *In re Terrorist Attacks*, 349 F.Supp.2d at 806. The allegations against DIB are equally deficient.

### 3.   Fed. R. Civ. Proc. 4(k)(2) Does Not Apply

Rule 4(k)(2), the federal long arm rule, enables district courts to exercise jurisdiction, if permissible under the Constitution and not precluded by statute, when a federal claim is made against a defendant not subject to jurisdiction of any single state.[20] Personal jurisdiction under Rule 4(k) requires minimum contacts with the U.S. to satisfy Fifth Amendment due process concerns. Plaintiffs "must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims" in order to establish minimum contacts through a theory that defendant "purposefully directed" its activities to the U.S. *Id.* at 809.[21]

### B.   **DIB Has Insufficient Minimum Contacts With The U.S.**

The Due Process clause limits the power of the U.S. Courts to hear claims against non-residents, and it applies to protect DIB from being unfairly haled into a U.S. Court to challenge frivolous claims. Plaintiffs fail to make a prima facie showing of jurisdiction. In the nine complaints against DIB, plaintiffs do not allege a single action by DIB from which the Court could infer that DIB purposefully directed its activities to the U.S.

DIB is not domiciled or organized in New York, and DIB does not maintain an office in New York. Instead, it is organized under the laws of the U.A.E., has its head

---

[20]   It is unresolved as to whether Rule 4(k)(2) is valid in light of the Rules Enabling Act, per the Advisory Committee Notes.

[21]   Similarly, the Court has held that "regardless of whether personal jurisdiction is based on the ATA's nationwide service of process provision or Rule 4(k)(2), to satisfy the Fifth Amendment's due process requirements, Plaintiffs must make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries." *In re Terrorist Attacks*, 349 F.Supp.2d at 809.

21

office in Dubai, and has the rarest of contacts with the U.S. (See Declaration of Obaid Al
Shamsi). Plaintiffs do not (and cannot) allege that DIB's correspondent accounts in New
York are used to conduct substantially all of DIB's business. Plaintiffs do not allege that
the correspondent accounts were involved in any wire transfer to terrorists.

This Court dismissed a case against DIB for lack of jurisdiction just last year. A
copy of the May 7, 2004 Adoption of Report and Recommendation by the Honorable
Deborah A. Batts in the action entitled *Indocomex Fibres v. Dubai Islamic Bank*, 00 Civ.
5844 (DAB)(MHD), is attached as Exhibit A. As explained by Judge Batts, the few
contacts that DIB has with the U.S. do not satisfy the requirements of due process. The
presence of a correspondent bank account in New York does not constitute "doing
business" in the state sufficient to confer jurisdiction, and a correspondent bank
relationship between a foreign and a New York bank does not provide sufficient grounds
to exercise personal jurisdiction over the foreign bank. *Semi Conductor Materials, Inc. v.
Citibank International Plc.*, 969 F.Supp. 243, 246 (S.D.N.Y. 1997); *Bank of America v.
Whitney Central Nat'l Bank*, 261 U.S. 171, 173, 43 S.Ct. 311 (1923); *Schenker v.
Assicurazioni Generali S.P.A.*, 2002 WL 1560788, at *3 (S.D.N.Y. Jul. 15, 2002);
*International Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*, 2002 WL 465291,
at *4 (S.D.N.Y. Mar. 27, 2002); *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533,
1537 n.1 (S.D.N.Y. 1983).[22] Wire transfers to U.S. bank accounts similarly do not create

---

[22]     Cases where courts have found correspondent banking relationships to confer jurisdiction
are much different than here. They generally involve accounts used to conduct substantially all of
the party's business, *United Rope Distributors, Inc. v. Kimberly Line*, 785 F.Supp. 446, 450-51
(S.D.N.Y. 1992), or arise out of purposeful, specific transactions involving such accounts.
*Concesionaria DHM, S.A. v. International Finance Corp.*, 307 F.Supp. 2d 553, 560-61 (S.D.N.Y.
2004); *Jesup, Josephthal & Co. v. Piguet & Cie.*, 1991 WL 168053, at *2 (S.D.N.Y. Aug. 22,
1991).

minimum contacts. *Casio Computer Co. v. Sayo*, 2000 WL 1877516, at \*26 (S.D.N.Y. Oct. 13, 2000).

Similarly, participation in litigation in the U.S. generally does not confer jurisdiction over a foreign corporation. *United States v. Swiss American Bank, Ltd.*, 116 F.Supp. 2d 217, 223-24 (D.Mass. 2000)(initiation of litigation and use of American courts were not systematic contacts with United States sufficient to justify exercise of jurisdiction); *Vendetti v. Fiat Auto S.p.A.*, 802 F.Supp. 886, 890 (W.D.N.Y. 1992)(conducting litigation is not, by itself, a basis for general jurisdiction); *Andros Compania Maritima, S.A. v. Intertanker, Ltd.*, 714 F.Supp. 669, 675 (S.D.N.Y. 1989)("handful of arbitrations and litigations in New York…does not approach 'doing business' with the 'fair level of permanence and continuity' required under [CPLR] 301."); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)(consent to jurisdiction in one case does not subject a foreign party to jurisdiction in all other cases).

## C.   **Service Was Ineffective**

The Court issued an order on September 15, 2004 allowing for the service by publication of many defendants, including DIB (the "Publication Order"). The Publication Order specifies that publication would occur "once per week for four consecutive weeks in the *International Herald Tribune*, *USA Today* and at least one Arabic language newspaper circulated widely in the Middle East, as well as posting the complaint on the web site www.sept11terrorlitigation.com." Plaintiffs purport to have complied. However, the Publication Order is unconstitutional.

2004); *Jesup, Josephthal & Co. v. Piguet & Cie.*, 1991 WL 168053, at \*2 (S.D.N.Y. Aug. 22, 1991).

23

Service through publication must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action[."] *Dusenberry v. United States*, 534 U.S. 161, 168 (2002). Service must comport with the requirements of due process – *i.e.*, it must provide the constitutionally required notice to the defendant.[23] The basic requirement was laid down by the Supreme Court in *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314-15 (1950): the method of service must be (i) reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, (ii) not substantially less likely to bring home notice than other of the feasible and customary substitutes. The burden is on plaintiffs seeking to serve by publication to demonstrate that other methods more likely to result in actual notice are not feasible or were unsuccessful. Accordingly, the Second Circuit has stated that "certainly, if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication will not satisfy the requirements of due process." *S.E.C. v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798-800 (1983) (service by publication insufficient under *Mullane* where defendant's name and address can be reasonably obtained; notice by mail required).

---

[23]     Though we have located no case exactly on point, it is clear that actual notice does not excuse failure to comply with statutory service requirements. *Local 78 v. Termon Constr., Inc.*, 2003 WL 22052872, at *4 n.1 (S.D.N.Y. Sept. 2, 2003) ("[T]he possibility that [defendant] may have had actual notice of the pending litigation does not cure [plaintiff]'s failure to serve the Summons and Complaint effectively"; vacating default judgment where corporation not served properly under Federal Rules); *China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash*, 1999 WL 126921, at *8 (S.D.N.Y. Mar. 9, 1999) ("Actual notice does not cure defective or unproven service."); *Triad Energy v. McNell*, 110 F.R.D. 382, 386 (S.D.N.Y. 1986) ("Any notice, constructive or actual, which the defendants had of this suit does not render the void judgment valid.") (vacating default judgment where CPLR service provisions not complied with).

24

Hence, service by publication alone could not satisfy the requirements of due process because DIB is easily located. DIB's mailing address (a post office box in Dubai), phone and fax numbers, and email address are all clearly listed in its website. The plaintiffs' failure to seek a court order directing notice by one of these readily available alternative routes renders the order directing service by publication unconstitutional and an abuse of discretion.

Plaintiffs purport to have served DIB by publication of DIB's name with more than one hundred other names in three newspapers which have minimal circulation in the United Arab Emirates. Plaintiffs admit that the circulation of the *International Herald Tribune* in the U.A.E. in 2002 was only 188, only 88 of which were circulated in Dubai (and only 6 in neighboring Sharjah).[24] Under the circumstances, these publications were not reasonably calculated to give DIB notice.

## CONCLUSION

For the reasons set forth above, defendant Dubai Islamic Bank respectfully requests that the Court grant its motion to dismiss with prejudice.

Respectfully submitted,

Dated: New York, New York
May 27, 2005

ZUKERMAN GORE & BRANDEIS, LLP

By:_____/s/ John K. Crossman_____
    John K. Crossman (JC 7387)
    Frank C. Welzer (FW 7159)
875 Third Avenue
New York, New York 10022
(212) 223-6700

---

[24] The small circulation of the International Herald Tribune in Dubai is stated in the Declaration of Publication signed by Judith King on June 30, 2003, which is attached as Exhibit A to Plaintiffs' Notice of Service by Publication in *Burnett*.

25

**EXHIBIT A**

ORIGINAL

*U.S. DISTRICT COURT FILED MAY - 7 2004 S.D. OF N.Y.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
INDOCOMEX FIBRES PTE. LTD.,

                              Petitioner,

                                        00 Civ. 5844(DAB)(MHD)
          - against -                   **ADOPTION OF REPORT**
                                        **AND RECOMMENDATION**
DUBAI ISLAMIC BANK

                              Respondent.
----------------------------------------X

DEBORAH A. BATTS, United States District Judge.


                    I.   BACKGROUND

A.   Procedural Background

     Petitioner Indocomex Fibres Pte. Ltd. ("Indocomex")

commenced this proceeding on August 7, 2000, seeking confirmation

of an arbitral award it obtained in 1999 against Respondent Dubai

Islamic Bank ("DIB").   After being served pursuant to this

Court's order dated September 27, 2000, DIB moved to dismiss the

petition for lack of personal jurisdiction.   On September 7, 2001

the Court referred this matter to Magistrate Judge Michael H.

Dolinger.

     On September 25, 2002, Judge Dolinger issued a Report and

Recommendation ("Report"), recommending that this Court grant

Respondent's Motion to Dismiss the petition for lack of personal

jurisdiction.   On October 7, 2002 Petitioner Indocomex filed

timely objections ("Objections") to the Magistrate Judge's

MICROFILM -12:00 PM MAY - 7 2004

report.  28 U.S.C. § 636(b)(1)(C).  Respondent Dubai Islamic Bank
("DIB") responded to Petitioner's Objections on October 16, 2002.

The Court is required to make a "de novo determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made."  28 U.S.C. §
636(b)(1)(C).  After conducting a de novo review, the Court may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the Magistrate.  28 U.S.C. §
636(b)(1)(C).


B.   Factual Background

Respondent DIB was served in the United Arab Emirates and
timely moved to dismiss the Petition, arguing that its contacts
with New York State and the United States as a whole are so
minimal that the Court lacks in personam jurisdiction over it.
DIB's motion is supported by the Affirmation of Mr. Alan Ellison,
an advisor to DIB, who affirms that DIB is a banking company
organized under the laws of United Arab Emirates, and has its
principal place of business in Dubai.  (Affirmation of Alan R.
Ellison, executed July 25, 2001, hereinafter "Ellison Aff." at ¶¶
1, 3.)  Mr. Ellison states that DIB has no offices outside the
United Arab Emirates and operates no businesses in the United
States.  (Id. at ¶¶ 3, 4.)  Mr. Ellison also states that DIB has
no customers in this country, has no interest in any companies or

2

personal and/or real property located here, (Id. at ¶¶10,19,5,8),
has no checking or savings accounts here, (id. at ¶28), and
transacts no business in the United States. (Id. at ¶¶ 4, 10,
12.)   Mr. Ellison further states that DIB does not advertise in
the United States, has no shareholders in the country, and has
never shipped goods, paid taxes, nor sought licensing to do
business here. (Id. at ¶17, 18, 21, 24)

    According to Mr. Ellison, the sole contact DIB has had with
the United States have been a single correspondent account
maintained in New York since 1983, (id. at ¶28), and a series of
lawsuits that DIB filed in New York and several other states.
(Id. at ¶¶30-32.)   Mr. Ellison affirms that DIB commenced these
lawsuits to recover a portion of a $242 million that was lost
when DIB was defrauded by Bank managers and a Mali national named
Foutanga Dit Babani Sissoko.  (Id. at ¶29.)   According to Mr.
Ellison, Mr. Sissoko came to the New York area in 1995, left the
country in 1996, and then was extradited to Miami, Florida from
Switzerland in late 1996 before being deported in 1997.  (Id.)

    Mr. Ellison affirms that DIB attempted to recover assets of
Mr. Sissoko's that were located in the United States through
litigation in New York and Miami federal and state courts, as
well as in the District of Columbia.  (Id. at ¶¶ 30, 31, 32.)
Mr. Ellison also states that, solely for the purposes of these
lawsuits, he made approximately six trips to the United States.

3

(Id. at ¶33.)

Other than these litigation-related trips, Mr. Ellison affirms that Bank employees visited this country on official business on only one instance; some time before 1998, two Bank employees came to the New York bank that held Respondent's correspondent account to attend a seminar on correspondent banking.   (Id.)   The Petitioner does not offer any facts to contradict the statements in Mr. Ellison's Affirmation.

On this record, Magistrate Judge Dolinger recommended that the Petitioner be dismissed, because Respondent is not amenable to jurisdiction in this proceeding under New York law, is not subject to such jurisdiction under the law of any other state, and cannot be reached under federal law by virtue of its contacts with the United States as a whole.   (Report at 6.)   In addition, Magistrate Judge Dolinger recommended that Petitioner be denied the opportunity to "take discovery" on the question whether Respondent has sufficient contacts with the United States for this Court to exercise jurisdiction over it.   (Report at 24.)

C.   Petitioner's Objections

Respondent Indocomex objects to Magistrate Judge Dolinger's recommendation that it be denied the opportunity to "take discovery" on the question whether Respondent has sufficient contacts with the United States for this Court to exercise

4

jurisdiction over it.  (Pet. Obj. at 1.)   Indocomex argues that, without discovery, it is impossible to measure DIB's business activities and contacts with the United States, and that Petitioner is therefore entitled to discovery concerning DIB's contacts with the United States.  (Id. at 2.)

Indocomex seeks discovery of records relating to DIB's contacts and business activities in the United States.  (Pet. Mem. at 15).  Specifically, Indocomex seeks discovery of evidence of any payments by DIB to persons in the United States, such as legal fees paid, which may indicate the extent of DIB's contacts with the United States.  (Id.)   Indocomex also seeks discovery of DIB's agreement with its correspondent bank in the United States, and records relating to that relationship.  (Id.) Indocomex argues that, without such discovery, it is impossible to measure DIB's business activities in the United States and the extent of its contacts with the United States.  (Id.)

D.   Respondent's Response to Petitioner's Objections

In response, DIB notes that Indocomex does not contest Judge Dolinger's analysis of the personal-jurisdiction issue, (Resp. Obj. at 2), and that the sole issue for the Court's consideration is accordingly whether Indocomex should be allowed discovery on the issue of personal jurisdiction.  (Id.)   DIB argues that, although a court has discretion to permit such discovery, the Court should not permit discovery in aid of jurisdiction in this case.   (Id.)

## II.   Discussion

A plaintiff is entitled to jurisdictional discovery if a prima facie showing of jurisdiction is alleged in the pleadings and opposition papers; where a plaintiff has not established a prima facie case that a court has jurisdiction over the defendant, dismissal without jurisdictional discovery may be appropriate.   Jazini v. Nissan Motor Co., Inc., 148 F.3d 181, 186 (2d Cir. 1998).   Jurisdictional averments contained in the complaint are taken as true, and where issues of fact exist about jurisdiction over a defendant, dismissal is inappropriate.   In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206-08 (2d Cir. 2003)(Dismissal without jurisdictional discovery was improper where the complaint and opposition to dismissal motion alleged an executive of defendant corporation attended meetings

6

in which price-fixing activities were discussed - which if true would have supported jurisdiction under the Clayton Act).

In his Report and Recommendation, Magistrate Judge Dolinger analyzed the standards for in personam jurisdiction, and correctly found that the Petitioner has not established a prima facie case of in personam jurisdiction over the Respondent. (Report at 8, 15.)  Petitioner does not object to this conclusion.  Instead, Petitioner argues it should be entitled to jurisdictional discovery.

However, under New York law, jurisdictional discovery over a foreign corporation is inappropriate unless a prima facie case of jurisdiction has been made.  Jazini v. Nissan Motor Company, Ltd., 148 F.3d 181 (2d Cir. 1998)(plaintiff failed to make prima facie showing that corporation was subject to personal jurisdiction under New York long arm statute, based on presence in New York of an American subsidiary and "sparse" allegations by the plaintiff); Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), cert. denied, 498 U.S. 854 (1990)(Plaintiff failed to make a prima facie showing that defendant foreign corporation did business in New York based on presence of its New York agent).  In evaluating whether a prima facie case has been made, "the court must view all of the allegations in the light most favorable to plaintiffs and resolve all doubts in plaintiffs' favor."  In re Ski Train Fire in

7

Kaprun, Austria on Nov.11, 2000, 230 F. Supp.2d 403, 406

(S.D.N.Y. 2002)(citing Hoffritz for Cutlery, Inc. v. Amajac.

Ltd., 763 F.2d 55, 58 (2d Cir. 1985)).

In addition, if jurisdictional allegations are "sparse" or

"insufficiently specific" then a demand for jurisdictional

discovery may not be appropriate. (Texas International

Magnetics, Inc. v. BASF Aktiengesellschaft, 31 Fed. Appx. 738,

739 (2d Cir. 2002). Even if a party is able to establish a prima

facie case for in personam jurisdiction, this Court would need

reason to believe that the requested discovery would

significantly aid in determination of whether the Court has in

personam jurisdiction.   E.g., Swiss American Bank, 274 F.3d 610,

626 (1st Cir. 2001) (refusing jurisdictional discovery where the

plaintiff failed to "present facts to the court which show why

jurisdiction would be found if discovery were permitted.")

In this case, Indocomex fails to articulate why such

discovery is appropriate.  Because Indocomex makes no colorable

showing of a basis for jurisdiction, and does not specifically

indicate what information it expects its proposed discovery will

yield, discovery in aid of jurisdiction is not warranted here.

See, e.g., Id. at 625-27; Norvel Ltd. v. Ulstein Propellar AS,

161 F. Supp. 2d 190, 208 (S.D.N.Y. 2001)(denying request for

jurisdictional discovery where Plaintiffs failed to establish a

prima facie case of in personam jurisdiction).

8

Moreover, the information and business records Indocomex
seeks are insufficient to establish personal jurisdiction.[1]
"Courts have repeatedly found that a correspondent bank
relationship between a foreign bank and a New York financial
institution does not provide sufficient grounds to exercise
personal jurisdiction over a foreign bank." Semi Conductor
Materials, Inc. v. Citibank International plc, 969 F. Supp. 243,
246 (S.D.N.Y. 1997)(holding that the existence of four bank
account in New York held to be insufficient to establish personal
jurisdiction).

    Accordingly, because this Court concludes Indocomex has not

_____

[1]On this point, Indocomex errs in relying on United Rope
Distributors, Inc. v. Kimberly Line, 785 F. Supp. 446, 450-51
(S.D.N.Y. 1992). In United Rope, the district court held that a
bank account may provide a basis for personal jurisdiction over a
foreign corporation, where the account receives substantially all
of the income and business expenses of the foreign corporation.
Unlike the defendant in United Rope, however, DIB does not
transact "substantially all" of its business through its New York
bank accounts. Id. at 450. DIB has no offices outside the
United Arab Emirates, operates no business in the United States,
has no customers in this country, and holds no interest in any
companies or any personal real property located in the United
States. (Ellison Aff. ¶¶ 3, 5, 10, 19.) DIB has no checking or
savings accounts here, transacts no business in the United
States, and has no affiliated companies that do any of these
things in the United States. (Id. ¶¶ 4, 19, 28.) Indeed, DIB
has no assets here other than a single correspondent account in
New York, which it maintains for the purpose of settling its
customers' accounts and making payments for those customers when
that currency is required. (Id. ¶¶ 3-28) Thus, even if further
discovery were allowed and the extent of DIB's business
activities in New York were revealed, Indocomex could not prove
that "substantially all" of DIB's business was through the
correspondent account about which it seeks discovery.

9

shown a basis for jurisdiction, and has not established that discovery would provide facts sufficient to establish jurisdiction, Respondent's motion to dismiss the petition for lack of personal jurisdiction is GRANTED.  <u>Swiss American Bank</u>, 274 F.3d at 625-627 (1st Cir. 2001); <u>Jazini v. Nissan Motor Company, Ltd.</u>, 148 F.3d 181 (2d Cir. 1998); <u>Norvel Ltd. v. Ulstein Propellar AS</u>, 161 F. Supp. 2d 190, 208 (S.D.N.Y. 2001).

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1.   The Report and Recommendation of Magistrate Judge Dolinger, dated September 25, 2002, be and the same hereby is APPROVED, RATIFIED and ADOPTED in its entirety.

2. For the reasons set forth herein, Respondent's motion to dismiss the petition for lack of personal jurisdiction is GRANTED.

3.   The Clerk of the Court is directed to close the docket in the above-captioned case.

SO ORDERED.

DATED:      New York, New York
            May 4 , 2004


                              _____
                              DEBORAH A. BATTS
                              United States District Judge

10