John K. Crossman (JC 7387)
Frank C. Welzer (FW 7159)
Zukerman Gore & Brandeis, LLP
875 Third Avenue
New York, New York 10022
Telephone (212) 223-6700
Facsimile (212) 223-6433

*Attorneys for Dubai Islamic Bank*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
:
:
:
: 03 MDL 1570 (RCC)
:
In re Terrorist Attacks on September 11, 2001   :   ECF Case
:
:
:
:
:
------------------------------------------------------------ x

### DECLARATION OF OBAID OMRAN ALI AL SHAMSI
### IN SUPPORT OF MOTION TO DISMISS

I, Obaid Omran Ali Al Shamsi, declare as follows under 28 U.S.C. § 1746:

1.  I have been with Dubai Islamic Bank ("DIB" or the "Bank") since 2000, and currently am Vice President-Legal department and Secretary to the Board. I am fully authorized to make this Declaration on behalf of the Bank. For those statements in this Declaration not made upon my own personal knowledge, the sources of my information and belief have come from my examination of documents contained in the Bank's files and discussions with Bank employees. I submit this Declaration in support of the Bank's motion for an order dismissing this lawsuit.

2. DIB is a banking company organized under the laws of the United Arab Emirates (U.A.E.). DIB has its principal place of business in Dubai, U.A.E.

3. The Bank does not operate any businesses in the United States.

4. The Bank does not own, lease, possess, or maintain any offices in the U.S.

5. The Bank does not hold any mortgages on any real property located in the United States.

6. With the exception of the correspondent banking accounts mentioned below, the Bank does not own, lease, possess, or maintain any personal property located in the United States.

7. The Bank does not own any stock, securities, negotiable or non-negotiable instruments, or commercial paper concerning any entity located in the United States.

8. The Bank has never had any telephone listings in the United States.

9. The Bank does not conduct promotional advertising in the United States.

10. The Bank is not qualified to do business in the United States, or any of its States.

11. The Bank has never sought to be qualified to do business in the U.S.

12. The Bank does not have any subsidiary or affiliated companies qualified to do business in the United States or any of its States. No such company is doing business in the United States.

13. The Bank has never shipped goods or products to the United States for sale. The Bank does not render or provide any services in the United States.

14. With the exceptions of the correspondent account described below and legal services in connection with litigation described below, the Bank has never entered into any contracts to be performed in the United States.

15. The Bank has never performed any record-keeping functions in the United States.

16. The Bank has not paid, and does not pay, any taxes to the United States or to any state or local authority.

17. The Bank has never applied for financing in the United States.

18. The Bank conducts all of its business from its offices in Dubai, its other branches within the U.A.E., and in two representative offices in the Middle East region.

19. The Bank has no checking, savings, or loan accounts in the United States. The Bank has three U.S.-dollar correspondent banking accounts in the United States, in New York. The U.S.-dollar correspondent banking accounts are used for settlement of customers' obligations or for making payments on behalf of the Bank's customers in U.S. dollars. Many international transactions are denominated in dollars. A subsidiary account is used, for example, to settle the Bank's customers' international Visa card obligations; U.S. dollars are used for all international Visa settlements, even when neither issuer, cardholder nor merchant have used the dollars in the underlying transaction.

20. Between about August 1995 and March 1998, the Bank was defrauded of about $242 million by some of its senior managers and a Republic of Mali, West Africa, national named Foutanga Dit Babani Sissoko. The fraud took place in Dubai. From November 1995 until early February 1996, Sissoko was in the New York area, where he

had an account with Citibank, as well as a house in Suffern. In October 1996 he was extradited from Switzerland to Miami at the request of U.S. authorities for an unconnected federal offense. In November 1997 Sissoko was deported from the U.S. and returned to Africa.

21. The Bank started two actions in Miami, where Sissoko had assets, to recover such assets as it could.

22. The Bank also began several actions in New York, where Sissoko assets were also located. These actions were started in both the state and federal courts, and all were Sissoko-related. Some suits were directly against Sissoko or involve his assets, while other actions were against third parties to obtain information and documents about his transactions.

23. In connection with the Sissoko fraud and lawsuits, I have traveled about six times to the United States on behalf of the Bank. Other DIB employees traveled to the U.S. in connection with the lawsuits and for depositions.

24. I understand that before 1998, two bank employees also visited the Bank's U.S.-dollar correspondent in New York for a seminar on correspondent banking.

25. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on May 25 2005

Obaid Omran Ali Al Shamsi