

# International Convention for the Suppression of the Financing of Terrorism

Adopted by the General Assembly of the United Nations in resolution 54/109 of 9 December 1999

**Preamble**

*The States Parties to this Convention,*

*Bearing in mind* the purposes and principles of the Charter of the United Nations concerning the maintenance of international peace and security and the promotion of good-neighbourliness and friendly relations and cooperation among States,

*Deeply concerned* about the worldwide escalation of acts of terrorism in all its forms and manifestations,

*Recalling* the Declaration on the Occasion of the Fiftieth Anniversary of the United Nations, contained in General Assembly resolution 50/6 of 24 October 1995,

*Recalling also* all the relevant General Assembly resolutions on the matter, including resolution 49/60 of 9 December 1994 and its annex on the Declaration on Measures to Eliminate International Terrorism, in which the States Members of the United Nations solemnly reaffirmed their unequivocal condemnation of all acts, methods and practices of terrorism as criminal and unjustifiable, wherever and by whomever committed, including those which jeopardize the friendly relations among States and peoples and threaten the territorial integrity and security of States,

*Noting* that the Declaration on Measures to Eliminate International Terrorism also encouraged States to review urgently the scope of the existing international legal provisions on the prevention, repression and elimination of terrorism in all its forms and manifestations, with the aim of ensuring that there is a comprehensive legal framework covering all aspects of the matter,

*Recalling* General Assembly resolution 51/210 of 17 December 1996, paragraph 3, subparagraph (f), in which the Assembly called upon all States to take steps to prevent and counteract, through appropriate domestic measures, the financing of terrorists and terrorist organizations, whether such financing is direct or indirect through organizations which also have or claim to have charitable, social or cultural goals or which are also engaged in unlawful activities such as illicit arms trafficking, drug dealing and racketeering, including the exploitation of persons for purposes of funding terrorist activities, and in particular to consider, where appropriate, adopting regulatory measures to prevent and counteract movements of funds suspected to be intended for terrorist purposes without impeding in any way the freedom of legitimate capital movements and to intensify the exchange of information concerning international movements of such funds,

*Recalling also* General Assembly resolution 52/165 of 15 December 1997, in which the Assembly called upon States to consider, in particular, the implementation of the measures set out in paragraphs 3 (a) to (f) of its resolution 51/210 of 17 December 1996,

*Recalling further* General Assembly resolution 53/108 of 8 December 1998, in which the Assembly decided that the Ad Hoc Committee established by General Assembly resolution 51/210 of 17 December 1996 should elaborate a draft international convention for the suppression of terrorist financing to supplement related existing international instruments,

*Considering* that the financing of terrorism is a matter of grave concern to the international community as a whole,

*Noting* that the number and seriousness of acts of international terrorism depend on the financing that terrorists may obtain,

*Noting also* that existing multilateral legal instruments do not expressly address such financing,

*Being convinced* of the urgent need to enhance international cooperation among States in devising and adopting effective measures for the prevention of the financing of terrorism, as well as for its suppression through the prosecution and punishment of its perpetrators,

*Have agreed as follows*:

**Article 1**

For the purposes of this Convention:

1. AFunds@ means assets of every kind, whether tangible or intangible, movable or immovable, however acquired, and legal documents or instruments in any form, including electronic or digital, evidencing title to, or interest in, such assets, including, but not limited to, bank credits, travellers cheques, bank cheques, money orders, shares, securities, bonds, drafts, letters of credit.

2. AA State or governmental facility@ means any permanent or temporary facility or conveyance that is used or occupied by representatives of a State, members of Government, the legislature or the judiciary or by officials or employees of a State or any other public authority or entity or by employees or officials of an intergovernmental organization in connection with their official duties.

3. AProceeds@ means any funds derived from or obtained, directly or indirectly, through the commission of an offence set forth in article 2.

**Article 2**

1. Any person commits an offence within the meaning of this Convention if that person by any means, directly or indirectly, unlawfully and wilfully, provides or collects funds with the intention that they should be used or in the knowledge that they are to be used, in full or in part, in order to carry out:

(a) An act which constitutes an offence within the scope of and as defined in one of the treaties listed in the annex; or

(b) Any other act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act.

2. (a) On depositing its instrument of ratification, acceptance, approval or accession, a State Party which is not a party to a treaty listed in the annex may declare that, in the application of this Convention to the State Party, the treaty shall be deemed not to be included in the annex referred to in paragraph 1, subparagraph (a). The declaration shall cease to have effect as soon as the treaty enters into force for the State Party, which shall notify the depositary of this fact;

(b) When a State Party ceases to be a party to a treaty listed in the annex, it may make a declaration as provided for in this article, with respect to that treaty.

3. For an act to constitute an offence set forth in paragraph 1, it shall not be necessary that the funds were actually used to carry out an offence referred to in paragraph 1, subparagraphs (a) or (b).

4. Any person also commits an offence if that person attempts to commit an offence as set forth in paragraph 1 of this article.

5. Any person also commits an offence if that person:

(a) Participates as an accomplice in an offence as set forth in paragraph 1 or 4 of this article;

(b) Organizes or directs others to commit an offence as set forth in paragraph 1 or 4 of this article;

(c) Contributes to the commission of one or more offences as set forth in paragraphs 1 or 4 of this article by a group of persons acting with a common purpose. Such contribution shall be intentional and shall either:

> (i) Be made with the aim of furthering the criminal activity or criminal purpose of the group, where such activity or purpose involves the commission of an offence as set forth in paragraph 1 of this article; or

> (ii) Be made in the knowledge of the intention of the group to commit an offence as set forth in paragraph 1 of this article.

**Article 3**

This Convention shall not apply where the offence is committed within a single State, the alleged offender is a national of that State and is present in the territory of that State and no other State has a basis under article 7, paragraph 1, or article 7, paragraph 2, to exercise jurisdiction, except that the provisions of articles 12 to 18 shall, as appropriate, apply in those cases.

**Article 4**

Each State Party shall adopt such measures as may be necessary:

(a) To establish as criminal offences under its domestic law the offences set forth in article 2;

(b) To make those offences punishable by appropriate penalties which take into account the grave nature of the offences.

**Article 5**

1. Each State Party, in accordance with its domestic legal principles, shall take the necessary measures to enable a legal entity located in its territory or organized under its laws to be held liable when a person responsible for the management or control of that legal entity has, in that capacity, committed an offence set forth in article 2. Such liability may be criminal, civil or administrative.

2. Such liability is incurred without prejudice to the criminal liability of individuals having committed the offences.

3. Each State Party shall ensure, in particular, that legal entities liable in accordance with paragraph 1 above are subject to effective, proportionate and dissuasive criminal, civil or administrative sanctions. Such sanctions may include monetary sanctions.

**Article 6**

Each State Party shall adopt such measures as may be necessary, including, where appropriate, domestic legislation, to ensure that criminal acts within the scope of this Convention are under no circumstances justifiable by considerations of a political, philosophical, ideological, racial, ethnic, religious or other similar nature.

**Article 7**

1. Each State Party shall take such measures as may be necessary to establish its jurisdiction over the offences set forth in article 2 when:

(a) The offence is committed in the territory of that State;

(b) The offence is committed on board a vessel flying the flag of that State or an aircraft registered under the laws of that State at the time the offence is committed;

(c) The offence is committed by a national of that State.

2. A State Party may also establish its jurisdiction over any such offence when:

(a) The offence was directed towards or resulted in the carrying out of an offence referred to in article 2, paragraph 1, subparagraph (a) or (b), in the territory of or against a national of that State;

(b) The offence was directed towards or resulted in the carrying out of an offence referred to in article 2, paragraph 1, subparagraph (a) or (b), against a State or government facility of that State abroad, including diplomatic or consular premises of that State;

(c) The offence was directed towards or resulted in an offence referred to in article 2, paragraph 1, subparagraph (a) or (b), committed in an attempt to compel that State to do or abstain from doing any act;

(d) The offence is committed by a stateless person who has his or her habitual residence in the territory of that State;

(e) The offence is committed on board an aircraft which is operated by the Government of that State.

3. Upon ratifying, accepting, approving or acceding to this Convention, each State Party shall notify the Secretary-General of the United Nations of the jurisdiction it has established in accordance with paragraph 2. Should any change take place, the State Party concerned shall immediately notify the Secretary-General.

4. Each State Party shall likewise take such measures as may be necessary to establish its jurisdiction over the offences set forth in article 2 in cases where the alleged offender is present in its territory and it does not extradite that person to any of the States Parties that have established their jurisdiction in accordance with paragraphs 1 or 2.

5. When more than one State Party claims jurisdiction over the offences set forth in article 2, the relevant States Parties shall strive to coordinate their actions appropriately, in particular concerning the conditions for prosecution and the modalities for mutual legal assistance.

6. Without prejudice to the norms of general international law, this Convention does not exclude the exercise of any criminal jurisdiction established by a State Party in accordance with its domestic law.

**Article 8**

1. Each State Party shall take appropriate measures, in accordance with its domestic legal principles, for the identification, detection and freezing or seizure of any funds used or allocated for the purpose of committing the offences set forth in article 2 as well as the proceeds derived from such offences, for purposes of possible forfeiture.

2. Each State Party shall take appropriate measures, in accordance with its domestic legal principles, for the forfeiture of funds used or allocated for the purpose of committing the offences set forth in article 2 and the proceeds derived from such offences.

3. Each State Party concerned may give consideration to concluding agreements on the sharing with other States Parties, on a regular or case-by-case basis, of the funds derived from the forfeitures referred to in this article.

4. Each State Party shall consider establishing mechanisms whereby the funds derived from the forfeitures referred to in this article are utilized to compensate the victims of offences referred to in article 2, paragraph 1, subparagraph (a) or (b), or their families.

5. The provisions of this article shall be implemented without prejudice to the rights of third parties acting in good faith.

**Article 9**

1. Upon receiving information that a person who has committed or who is alleged to have committed an offence set forth in article 2 may be present in its territory, the State Party concerned shall take such measures as may be necessary under its domestic law to investigate the facts contained in the information.

2. Upon being satisfied that the circumstances so warrant, the State Party in whose territory the offender or alleged offender is present shall take the appropriate measures under its domestic law so as to ensure that person=s presence for the purpose of prosecution or extradition.

3. Any person regarding whom the measures referred to in paragraph 2 are being taken shall be entitled to:

(a) Communicate without delay with the nearest appropriate representative of the State of which that person is a national or which is otherwise entitled to protect that person=s rights or, if that person is a stateless person, the State in the territory of which that person habitually resides;

(b) Be visited by a representative of that State;

(c) Be informed of that person=s rights under subparagraphs (a) and (b).

4. The rights referred to in paragraph 3 shall be exercised in conformity with the laws and regulations of the State in the territory of which the offender or alleged offender is present, subject to the provision that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under paragraph 3 are intended.

5. The provisions of paragraphs 3 and 4 shall be without prejudice to the right of any State Party having a claim to jurisdiction in accordance with article 7, paragraph 1, subparagraph (b), or paragraph 2, subparagraph (b), to invite the International Committee of the Red Cross to communicate with and visit the alleged offender.

6. When a State Party, pursuant to the present article, has taken a person into custody, it shall immediately notify, directly or through the Secretary-General of the United Nations, the States Parties which have established jurisdiction in accordance with article 7, paragraph 1 or 2, and, if it considers it advisable, any other interested States Parties, of the fact that such person is in custody and of the circumstances which warrant that person=s detention. The State which makes the investigation contemplated in paragraph 1 shall promptly inform the said States Parties of its findings and shall indicate whether it intends to exercise jurisdiction.

**Article 10**

1. The State Party in the territory of which the alleged offender is present shall, in cases to which article 7 applies, if it does not extradite that person, be obliged, without exception whatsoever and whether or not the offence was committed in its territory, to submit the case without undue delay to its competent authorities for the purpose of prosecution, through proceedings in accordance with the laws of that State. Those authorities shall take their decision in the same manner as in the case of any other offence of a grave nature under the law of that State.

2. Whenever a State Party is permitted under its domestic law to extradite or otherwise surrender one of its nationals only upon the condition that the person will be returned to that State to serve the sentence imposed as a result of the trial or proceeding for which the extradition or surrender of the person was sought, and this State and the State seeking the extradition of the person agree with this option and other terms they may deem appropriate, such a conditional extradition or surrender shall be sufficient to discharge the obligation set forth in paragraph 1.

**Article 11**

1. The offences set forth in article 2 shall be deemed to be included as extraditable offences in any extradition treaty existing between any of the States Parties before the entry into force of this Convention. States Parties undertake to include such offences as extraditable offences in every extradition treaty to be subsequently concluded between them.

2. When a State Party which makes extradition conditional on the existence of a treaty receives a request for extradition from another State Party with which it has no extradition treaty, the requested State Party may, at its option, consider this Convention as a legal basis for extradition in respect of the offences set forth in article 2. Extradition shall be subject to the other conditions provided by the law of the requested State.

3. States Parties which do not make extradition conditional on the existence of a treaty shall recognize the offences set forth in article 2 as extraditable offences between themselves, subject to the conditions provided by the law of the requested State.

4. If necessary, the offences set forth in article 2 shall be treated, for the purposes of extradition between States Parties, as if they had been committed not only in the place in which they occurred but also in the territory of the States that have established jurisdiction in accordance with article 7, paragraphs 1 and 2.

5. The provisions of all extradition treaties and arrangements between States Parties with regard to offences set forth in article 2 shall be deemed to be modified as between States Parties to the extent that they are incompatible with this Convention.

**Article 12**

1. States Parties shall afford one another the greatest measure of assistance in connection with criminal investigations or criminal or extradition proceedings in respect of the offences set forth in article 2, including assistance in obtaining evidence in their possession necessary for the proceedings.

2. States Parties may not refuse a request for mutual legal assistance on the ground of bank secrecy.

3. The requesting Party shall not transmit nor use information or evidence furnished by the requested Party for investigations, prosecutions or proceedings other than those stated in the request without the prior consent of the requested Party.

4. Each State Party may give consideration to establishing mechanisms to share with other States Parties information or evidence needed to establish criminal, civil or administrative liability pursuant to article 5.

5. States Parties shall carry out their obligations under paragraphs 1 and 2 in conformity with any treaties or other arrangements on mutual legal assistance or information exchange that may exist between them. In the absence of such treaties or arrangements, States Parties shall afford one another assistance in accordance with their domestic law.

**Article 13**

None of the offences set forth in article 2 shall be regarded, for the purposes of extradition or mutual legal assistance, as a fiscal offence. Accordingly, States Parties may not refuse a request for extradition or for mutual legal assistance on the sole ground that it concerns a fiscal offence.

**Article 14**

None of the offences set forth in article 2 shall be regarded for the purposes of extradition or mutual legal assistance as a political offence or as an offence connected with a political offence or as an offence inspired by political motives. Accordingly, a request for extradition or for mutual legal assistance based on such an offence may not be refused on the sole ground that it concerns a political offence or an

offence connected with a political offence or an offence inspired by political motives.

**Article 15**

Nothing in this Convention shall be interpreted as imposing an obligation to extradite or to afford mutual legal assistance, if the requested State Party has substantial grounds for believing that the request for extradition for offences set forth in article 2 or for mutual legal assistance with respect to such offences has been made for the purpose of prosecuting or punishing a person on account of that person=s race, religion, nationality, ethnic origin or political opinion or that compliance with the request would cause prejudice to that person=s position for any of these reasons.

**Article 16**

1. A person who is being detained or is serving a sentence in the territory of one State Party whose presence in another State Party is requested for purposes of identification, testimony or otherwise providing assistance in obtaining evidence for the investigation or prosecution of offences set forth in article 2 may be transferred if the following conditions are met:

(a) The person freely gives his or her informed consent;

(b) The competent authorities of both States agree, subject to such conditions as those States may deem appropriate.

2. For the purposes of the present article:

(a) The State to which the person is transferred shall have the authority and obligation to keep the person transferred in custody, unless otherwise requested or authorized by the State from which the person was transferred;

(b) The State to which the person is transferred shall without delay implement its obligation to return the person to the custody of the State from which the person was transferred as agreed beforehand, or as otherwise agreed, by the competent authorities of both States;

(c) The State to which the person is transferred shall not require the State from which the person was transferred to initiate extradition proceedings for the return of the person;

(d) The person transferred shall receive credit for service of the sentence being served in the State from which he or she was transferred for time spent in the custody of the State to which he or she was transferred.

3. Unless the State Party from which a person is to be transferred in accordance with the present article so agrees, that person, whatever his or her nationality, shall not be prosecuted or detained or subjected to any other restriction of his or her personal liberty in the territory of the State to which that person is transferred in respect of acts or convictions anterior to his or her departure from the territory of the State from which such person was transferred.

**Article 17**

Any person who is taken into custody or regarding whom any other measures are taken or proceedings are carried out pursuant to this Convention shall be guaranteed fair treatment, including enjoyment of all rights and guarantees in conformity with the law of the State in the territory of which that person is present and applicable provisions of international law, including international human rights law.

**Article 18**

1. States Parties shall cooperate in the prevention of the offences set forth in article 2 by taking all practicable measures, *inter alia*, by adapting their domestic legislation, if necessary, to prevent and

counter preparations in their respective territories for the commission of those offences within or outside their territories, including:

(a) Measures to prohibit in their territories illegal activities of persons and organizations that knowingly encourage, instigate, organize or engage in the commission of offences set forth in article 2;

(b) Measures requiring financial institutions and other professions involved in financial transactions to utilize the most efficient measures available for the identification of their usual or occasional customers, as well as customers in whose interest accounts are opened, and to pay special attention to unusual or suspicious transactions and report transactions suspected of stemming from a criminal activity. For this purpose, States Parties shall consider:

(i) Adopting regulations prohibiting the opening of accounts the holders or beneficiaries of which are unidentified or unidentifiable, and measures to ensure that such institutions verify the identity of the real owners of such transactions;

(ii) With respect to the identification of legal entities, requiring financial institutions, when necessary, to take measures to verify the legal existence and the structure of the customer by obtaining, either from a public register or from the customer or both, proof of incorporation, including information concerning the customer=s name, legal form, address, directors and provisions regulating the power to bind the entity;

(iii) Adopting regulations imposing on financial institutions the obligation to report promptly to the competent authorities all complex, unusual large transactions and unusual patterns of transactions, which have no apparent economic or obviously lawful purpose, without fear of assuming criminal or civil liability for breach of any restriction on disclosure of information if they report their suspicions in good faith;

(iv) Requiring financial institutions to maintain, for at least five years, all necessary records on transactions, both domestic or international.

2. States Parties shall further cooperate in the prevention of offences set forth in article 2 by considering:

(a) Measures for the supervision, including, for example, the licensing, of all money-transmission agencies;

(b) Feasible measures to detect or monitor the physical cross-border transportation of cash and bearer negotiable instruments, subject to strict safeguards to ensure proper use of information and without impeding in any way the freedom of capital movements.

3. States Parties shall further cooperate in the prevention of the offences set forth in article 2 by exchanging accurate and verified information in accordance with their domestic law and coordinating administrative and other measures taken, as appropriate, to prevent the commission of offences set forth in article 2, in particular by:

(a) Establishing and maintaining channels of communication between their competent agencies and services to facilitate the secure and rapid exchange of information concerning all aspects of offences set forth in article 2;

(b) Cooperating with one another in conducting inquiries, with respect to the offences set forth in article 2, concerning:

(i) The identity, whereabouts and activities of persons in respect of whom reasonable suspicion exists that they are involved in such offences;

(ii) The movement of funds relating to the commission of such offences.

4. States Parties may exchange information through the International Criminal Police Organization (Interpol).

**Article 19**

The State Party where the alleged offender is prosecuted shall, in accordance with its domestic law or applicable procedures, communicate the final outcome of the proceedings to the Secretary-General of the United Nations, who shall transmit the information to the other States Parties.

**Article 20**

The States Parties shall carry out their obligations under this Convention in a manner consistent with the principles of sovereign equality and territorial integrity of States and that of non-intervention in the domestic affairs of other States.

**Article 21**

Nothing in this Convention shall affect other rights, obligations and responsibilities of States and individuals under international law, in particular the purposes of the Charter of the United Nations, international humanitarian law and other relevant conventions.

**Article 22**

Nothing in this Convention entitles a State Party to undertake in the territory of another State Party the exercise of jurisdiction or performance of functions which are exclusively reserved for the authorities of that other State Party by its domestic law.

**Article 23**

1. The annex may be amended by the addition of relevant treaties that:

(a) Are open to the participation of all States;

(b) Have entered into force;

(c) Have been ratified, accepted, approved or acceded to by at least twenty-two States Parties to the present Convention.

2. After the entry into force of this Convention, any State Party may propose such an amendment. Any proposal for an amendment shall be communicated to the depositary in written form. The depositary shall notify proposals that meet the requirements of paragraph 1 to all States Parties and seek their views on whether the proposed amendment should be adopted.

3. The proposed amendment shall be deemed adopted unless one third of the States Parties object to it by a written notification not later than 180 days after its circulation.

4. The adopted amendment to the annex shall enter into force 30 days after the deposit of the twenty-second instrument of ratification, acceptance or approval of such amendment for all those States Parties having deposited such an instrument. For each State Party ratifying, accepting or approving the amendment after the deposit of the twenty-second instrument, the amendment shall enter into force on the thirtieth day after deposit by such State Party of its instrument of ratification, acceptance or approval.

**Article 24**

1. Any dispute between two or more States Parties concerning the interpretation or application of this Convention which cannot be settled through negotiation within a reasonable time shall, at the request of one of them, be submitted to arbitration. If, within six months from the date of the request for

arbitration, the parties are unable to agree on the organization of the arbitration, any one of those parties may refer the dispute to the International Court of Justice, by application, in conformity with the Statute of the Court.

2. Each State may at the time of signature, ratification, acceptance or approval of this Convention or accession thereto declare that it does not consider itself bound by paragraph 1. The other States Parties shall not be bound by paragraph 1 with respect to any State Party which has made such a reservation.

3. Any State which has made a reservation in accordance with paragraph 2 may at any time withdraw that reservation by notification to the Secretary-General of the United Nations.

### Article 25

1. This Convention shall be open for signature by all States from 10 January 2000 to 31 December 2001 at United Nations Headquarters in New York.

2. This Convention is subject to ratification, acceptance or approval. The instruments of ratification, acceptance or approval shall be deposited with the Secretary-General of the United Nations.

3. This Convention shall be open to accession by any State. The instruments of accession shall be deposited with the Secretary-General of the United Nations.

### Article 26

1. This Convention shall enter into force on the thirtieth day following the date of the deposit of the twenty-second instrument of ratification, acceptance, approval or accession with the Secretary-General of the United Nations.

2. For each State ratifying, accepting, approving or acceding to the Convention after the deposit of the twenty-second instrument of ratification, acceptance, approval or accession, the Convention shall enter into force on the thirtieth day after deposit by such State of its instrument of ratification, acceptance, approval or accession.

### Article 27

1. Any State Party may denounce this Convention by written notification to the Secretary-General of the United Nations.

2. Denunciation shall take effect one year following the date on which notification is received by the Secretary-General of the United Nations.

### Article 28

The original of this Convention, of which the Arabic, Chinese, English, French, Russian and Spanish texts are equally authentic, shall be deposited with the Secretary-General of the United Nations who shall send certified copies thereof to all States.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Convention, opened for signature at United Nations Headquarters in New York on 10 January 2000.

### Annex

1. Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague on 16 December 1970.

Case 1:03-md-01570-GBD-SN   Document 963-48   Filed 06/01/05   Page 11 of 11

2. Convention for the Suppression of Unlawful Acts against the Safety of Civil Aviation, done at Montreal on 23 September 1971.

3. Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, adopted by the General Assembly of the United Nations on 14 December 1973.

4. International Convention against the Taking of Hostages, adopted by the General Assembly of the United Nations on 17 December 1979.

5. Convention on the Physical Protection of Nuclear Material, adopted at Vienna on 3 March 1980.

6. Protocol for the Suppression of Unlawful Acts of Violence at Airports Serving International Civil Aviation, supplementary to the Convention for the Suppression of Unlawful Acts against the Safety of Civil Aviation, done at Montreal on 24 February 1988.

7. Convention for the Suppression of Unlawful Acts against the Safety of Maritime Navigation, done at Rome on 10 March 1988.

8. Protocol for the Suppression of Unlawful Acts against the Safety of Fixed Platforms located on the Continental Shelf, done at Rome on 10 March 1988.

9. International Convention for the Suppression of Terrorist Bombings, adopted by the General Assembly of the United Nations on 15 December 1997.

Copyright (c) 1999
United Nations