UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Federal Insurance Co. v. al Qaida*, 03 CV 06978 (RCC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR LEAVE OF COURT TO SUPPLEMENT THE RECORD
WITH ADDITIONAL EVIDENCE IN RESPONSE
TO THE MOTIONS TO DISMISS SUBMITTED
BY PRINCE NAIF AND PRINCE SALMAN**

This Court's order of January 18, 2005, made clear that plaintiffs pursing claims against parties who are alleged to have channeled resources to al Qaida through ostensible charities must demonstrate to the Court that those defendants had knowledge that the charities they were supporting served as fronts for terrorists:

> Pursuant to Boim, the Plaintiffs would have to allege specific facts showing that the Princes knew or should have known that the charities they supported were actually fronts for al Qaeda. . . .
>
> Plaintiffs have not pleaded facts to suggest the Princes knew they were making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists to satisfy Boim or New York law. The Court has reviewed the complaints in their entirety and finds no allegations from which it can infer that the Princes knew the charities to which they donated were fronts for al Qaeda. The Court is not ruling as a matter of law that a defendant cannot be liable for contributions to organizations that are not themselves designated terrorists. But in such a case, there must be some facts presented to support the allegation that the defendant knew the receiving

> organization to be a solicitor, collector, supporter, front or launderer for such an entity. There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.

In re Terrorist Attacks of September 11, 349 F. Supp.2d 765, 800-01 (S.D.N.Y. 2005).

In view of the Court's reasoning, Plaintiffs initiated an investigative effort to secure additional evidence to support their allegations that the defendants knew the charities to which they were contributing financial and logistical support were, in fact, terrorist fronts (albeit without the aid of discovery). Through this considerable and ongoing effort, Plaintiffs recently located the Arabic language document attached as Exhibit A, relevant portions of which have been translated into English and attached as Exhibit B. The document is a news article published in the Egyptian periodical *Rus al Yusef* on August 31, 1998, a full three years prior to the September 11th Attack, entitled "In One Meeting it was Decided to Pay 3 Billion to the Afghan Millionaires at the Expense of the Blood of Innocents". It details the network through which money passed through "aid organizations" to the Al Qaeda terrorist network, as well as the reaction of leaders in the Arab world:

> Also, other important sources of funding, indeed the lifeblood of these organizations are Islamic aid organizations that have been established, most likely especially for this purpose, in 60 countries with at least 90 offices. They are located in places such as Afghanistan, Bosnia, Somalia and Tajikistan. These organizations were not just covers; they actually employ terrorists of all colors and types and serve as a means for training, developing, welcoming, and providing hiding places, while using sparkling slogans.
>
> It is regrettable that these organizations operate using charity money paid by Muslims, most of whom probably have no idea where their charity money has gone. This is,

> of course, conspicuous in several countries. Egypt emphasized this at one of the conferences for Arab Interior Ministers, when the former Egyptian Interior Minister, Major General Hasan Al-Alfi, verified that the charity money goes to terrorists. The Saudi Interior Minister then responded by saying that if charity money is going to illegitimate targets, it must stop immediately.

The Saudi Interior Minister was and is Prince Naif. Plaintiffs respectfully submit that this document is directly relevant to the issue of Prince Naif's knowledge, as well as the knowledge of other senior Saudi officials, prior to September 11, 2001, of the involvement of Saudi "charities" in the sponsorship of terrorist activities.

Defendants' motions to dismiss should not be decided without consideration of all the evidence demonstrating this Court's jurisdiction. Moreover, because the motions at issue have not yet been heard or decided, there can be little or no prejudice to Prince Naif or Salman in permitting Plaintiffs to supplement their opposition to give the Court a more complete record. It has long been established that federal courts should decide issues on their merits, not on the basis of mere technicalities. *See* Foman v. Davis, 371 U.S. 178, 181-82 (1962); Estwick v. U.S. Air Shuttle, 950 F.Supp. 493, 499 (E.D.N.Y. 1996) (recognizing "clear federal preference for resolving disputes on the merits"); *see also* Fed. R. Civ. P. 1 (federal rules to be construed to secure the "just . . . determination of every action.").

Plaintiffs therefore request, in the interests of justice, that the attached documents be admitted for purposes of resolving the Motion to Dismiss of Prince Naif and Prince Salman.

Respectfully submitted,

COZEN O'CONNOR

By: _____
    STEPHEN A. COZEN (SC 1625)
    ELLIOTT R. FELDMAN (EF 8111)
    SEAN P. CARTER (SC 0636)
    MARK T. MULLEN (MM 2384)
    1900 Market Street
    Philadelphia, PA  19103

Attorneys for Plaintiffs

Dated: June 10, 2005