# THE FORTY RECOMMENDATIONS OF THE

# FINANCIAL ACTION TASK FORCE ON MONEY LAUNDERING

## 1990

A.  GENERAL FRAMEWORK OF THE RECOMMENDATIONS

1. Each country should, without further delay, take steps to fully implement the Vienna Convention, and proceed to ratify it.

2. Financial institution secrecy laws should be conceived so as not to inhibit implementation of the recommendations of this group.

3. An effective money laundering enforcement program should include increased multilateral cooperation and mutual legal assistance in money laundering investigations and prosecutions and extradition in money laundering cases, where possible.

B.  IMPROVEMENT OF NATIONAL LEGAL SYSTEMS TO COMBAT MONEY LAUNDERING

**Definition of the Criminal Offense of Money Laundering**

4. Each country should take such measures as may be necessary, including legislative ones, to enable it to criminalize drug money laundering as set forth in the Vienna Convention.

5. Each country should consider extending the offense of drug money laundering to any other crimes for which there is a link to narcotics; an alternative approach is to criminalize money laundering based on all serious offenses, and/or on all offenses that generate a significant amount of proceeds, or on certain serious offenses.

**6.** As provided in the Vienna Convention, the offense of money laundering should apply at least to knowing money laundering activity, including the concept that knowledge may be inferred from objective factual circumstances.

7. Where possible, corporations themselves - not only their employees - should be subject to criminal liability.

**Provisional Measures and Confiscation**

**8.** Countries should adopt measures similar to those set forth in the Vienna Convention, as may be necessary, including legislative ones, to enable their competent authorities to confiscate property laundered, proceeds from, instrumentalities used in or intended for use in the commission of any money laundering offense, or property of corresponding value.

Such measures should include the authority to : 1) identify, trace and evaluate property which is subject to confiscation; 2) carry out provisional measures, such as freezing and seizing, to prevent any dealing, transfer or disposal of such property; and 3) take any appropriate investigative measures.

In addition to confiscation and criminal sanctions, countries also should consider monetary and civil penalties, and/or proceedings including civil proceedings, to void contracts entered by parties, where parties knew or should have known that as a result of the contract, the State would be prejudiced in its ability to recover financial claims, e.g. through confiscation or collection of fines and penalties.

C.  ENHANCEMENT OF THE ROLE OF THE FINANCIAL SYSTEM

### Scope of the Following Recommendations

9. Recommendations 12 to 29 of this paper should apply not only to banks, but also to non-bank financial institutions.

10. The appropriate national authorities should take steps to ensure that these Recommendations are implemented on as broad a front as is practically possible.

11. A working group should further examine the possibility of establishing a common minimal list of non-bank financial institutions and other professions dealing with cash subject to these Recommendations.

### Customer Identification and Record-keeping Rules

12. Financial institutions should not keep anonymous accounts or accounts in obviously fictitious names: they should be required (by law, by regulations, by agreements between supervisory authorities and financial institutions or by self-regulatory agreements among financial institutions) to identify, on the basis of an official or other reliable identifying document, and record the identity of their clients, either occasional or usual, when establishing business relations or conducting transactions (in particular opening of accounts or passbooks, entering into fiduciary transactions, renting of safe deposit boxes, performing large cash transactions).

13. Financial institutions should take reasonable measures to obtain information about the true identity of the persons on whose behalf an account is opened or a transaction conducted if there are any doubts as to whether these clients or customers are not acting on their own behalf, in particular, in the case of domiciliary companies (i.e. institutions, corporations, foundations, trusts, etc. that do not conduct any commercial or manufacturing business or any other form of commercial operation in the country where their registered office is located).

14. Financial institutions should maintain, for at least five years, all necessary records on transactions, both domestic or international, to enable them to comply swiftly with information requests from the competent authorities. Such records must be sufficient to permit reconstruction of individual transactions (including the amounts and types of currency involved if any) so as to provide, if necessary, evidence for prosecution of criminal behaviour.

    Financial institutions should keep records on customer identification (e.g. copies or records of official identification documents like passports, identity cards, driving licenses or similar documents), account files and business correspondence for at least five years after the account is closed.

    These documents should be available to domestic competent authorities in the context of relevant criminal prosecutions and investigations.

### Increased Diligence of Financial Institutions

15. Financial institutions should pay special attention to all complex, unusual large transactions, and all unusual patterns of transactions, which have no apparent economic or visible lawful purpose. The background and purpose of such transactions should, as far as possible, be examined, the findings established in writing, and be available to help supervisors, auditors and law enforcement agencies.

16. If financial institutions suspect that funds stem from a criminal activity, they should be permitted or required to report promptly their suspicions to the competent authorities. Accordingly, there should be legal provisions to protect financial institutions and their employees from criminal or civil liability for breach of any restriction on disclosure of information imposed by contract or by any legislative, regulatory or administrative provision, if they report in good faith, in disclosing suspected criminal activity to the competent authorities, even if they did not know precisely what the underlying criminal activity was, and regardless of whether illegal activity actually occurred.

17. Financial institutions, their directors and employees, should not, or, where appropriate, should not be allowed to, warn their customers when information relating to them is being reported to the competent authorities.

18. In the case of a mandatory reporting system, or in the case of a voluntary reporting system where appropriate, financial institutions reporting their suspicions should comply with instructions from the competent authorities.

19. When a financial institution develops suspicions about the operations of a customer, and when no obligation of reporting these suspicious exists, makes no report to the competent authorities, it should deny assistance to this customer, sever relations with him and close his accounts.

20. Financial institutions should develop programs against money laundering. These programs should include, as a minimum :

    (a) the development of internal policies, procedures and controls, including the designation of compliance officers at management level, and adequate screening procedures to ensure high standards when hiring employees;

    (b) an ongoing employee training programme;

    (c) an audit function to test the system.

### Measures to Cope with the Problem of Countries with No or Insufficient Anti-Money Laundering Measures

21. Financial institutions should give special attention to business relations and transactions with persons, including companies and financial institutions, from countries which do not or insufficiently apply these Recommendations. Whenever these transactions have no apparent economic or visible lawful purpose, their background and purpose should, as far as possible, be examined, the findings established in writing, and be available to help supervisors, auditors and law enforcement agencies.

22. Financial institutions should ensure that the principles mentioned above are also applied to branches and majority owned subsidiaries located abroad, especially in countries which do not or insufficiently apply these Recommendations, to the extent that local applicable laws and regulations permit. When local applicable laws and regulations prohibit this implementation, competent authorities in the country of the mother institution should be informed by the financial institutions that they cannot apply these Recommendations.

**Other Measures to Avoid Currency Laundering**

23. The feasibility of measures to detect or monitor cash at the border should be studied, subject to strict safeguards to ensure proper use of information and without impeding in any way the freedom of capital movements.

24. Countries should consider the feasibility and utility of a system where banks and other financial institutions and intermediaries would report all domestic and international currency transactions above a fixed amount, to a national central agency with a computerised data base, available to competent authorities for use in money laundering cases, subject to strict safeguards to ensure proper use of the information.

25. Countries should further encourage in general the development of modern and secure techniques of money management, including increased use of checks, payment cards, direct deposit of salary checks, and book entry recording of securities, as a means to encourage the replacement of cash transfers.

**Implementation, and Role of Regulatory and other Administrative Authorities**

26. The competent authorities supervising banks or other financial institutions or intermediaries, or other competent authorities, should ensure that the supervised institutions have adequate programs to guard against money laundering.   These authorities should cooperate and lend expertise spontaneously or on request with other domestic judicial or law enforcement authorities in money laundering investigations and prosecutions.

27. Competent authorities should be designated to ensure an effective implementation of all these Recommendations, through administrative supervision and regulation, in other professions dealing with cash as defined by each country.

28. The competent authorities should establish guidelines which will assist financial institutions in detecting suspicious patterns of behaviour by their customers.   It is understood that such guidelines must develop over time, and will never be exhaustive. It is further understood that such guidelines will primarily serve as an educational tool for financial institutions' personnel.

29. The competent authorities regulating or supervising financial institutions should take the necessary legal or regulatory measures to guard against control or acquisition of a significant participation in financial institutions by criminals or their confederates.

D.   STRENGTHENING OF INTERNATIONAL COOPERATION

**Administrative Cooperation**

(a)   Exchange of general information

30. National administrations should consider recording, at least in the aggregate, international flows of cash in whatever currency, so that estimates can be made of cash flows and reflows from various sources abroad, when this is combined with central bank information. Such information should be made available to the IMF and BIS to facilitate international studies.

31. International competent authorities, perhaps Interpol and the Customs Cooperation Council, should be given responsibility for gathering and disseminating information to competent authorities about the latest developments in money laundering and money laundering techniques.

Central banks and bank regulators could do the same on their network. National authorities in various spheres, in consultation with trade associations, could then disseminate this to financial institutions in individual countries.

(b) <u>Exchange of information relating to suspicious transactions</u>

32. Each country should make efforts to improve a spontaneous or "upon request" international information exchange relating to suspicious transactions, persons and corporations involved in those transactions between competent authorities. Strict safeguards should be established to ensure that this exchange of information is consistent with national and international provisions on privacy and data protection.

**Cooperation Between Legal Authorities**

(a) <u>Basis and means for cooperation in confiscation, mutual assistance and extradition</u>

33. Countries should try to ensure, on a bilateral or multilateral basis, that different knowledge standards in national definitions - i.e. different standards concerning the intentional element of the infraction - do not affect the ability or willingness of countries to provide each other with mutual legal assistance.

34. International cooperation should be supported by a network of bilateral and multilateral agreements and arrangements based on generally shared legal concepts with the aim of providing practical measures to affect the widest possible range of mutual assistance.

35. Countries should encourage international conventions such as the draft Convention of the Council of Europe on Confiscation of the Proceeds from Offenses.

(b) <u>Focus of improved mutual assistance on money laundering issues</u>

36. Co-operative investigations among appropriate competent authorities of countries should be encouraged.

37. There should be procedures for mutual assistance in criminal matters regarding the use of compulsory measures including the production of records by financial institutions and other persons, the search of persons and premises, seizure and obtaining of evidence for use in money laundering investigations and prosecutions and in related actions in foreign jurisdictions.

**38.** There should be authority to take expeditious action in response to requests by foreign countries to identify, freeze, seize and confiscate proceeds or other property of corresponding value to such proceeds, based on money laundering or the crimes underlying the laundering activity. There should also be arrangements for coordinating seizure and confiscation proceedings which may include the sharing of confiscated assets.

39. To avoid conflicts of jurisdiction, consideration should be given to devising and applying mechanisms for determining the best venue for prosecution of defendants in the interests of justice in cases that are subject to prosecution in more than one country. Similarly, there should be arrangements for coordinating seizure and confiscation proceedings which may include the sharing of confiscated assets.

**40.** Countries should have procedures in place to extradite, where possible, individuals charged with a money laundering offense or related offenses. With respect to its national legal system, each

country should recognise money laundering as an extraditable offense. Subject to their legal frameworks, countries may consider simplifying extradition by allowing direct transmission of extradition requests between appropriate ministries, extraditing persons based only on warrants of arrests or judgments, extraditing their nationals, and/or introducing a simplified extradition of consenting persons who waive formal extradition proceedings.