**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-9849 (S.D.N.Y.)
>
> *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.,* Case No. 1:02-6977 (S.D.N.Y.)
>
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
>
> *Cantor Fitzgerald & Co., et al. v. Akida Bank Private, Ltd., et al.*, Case No. 04-CV-7065 (S.D.N.Y.)
>
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
>
> *Estate of John P. O'Neill, Sr., on behalf of John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-1923 (S.D.N.Y.)
>
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
>
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
>
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**KHALID BIN MAHFOUZ'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................................................................ ii

**FACTUAL ALLEGATIONS** ....................................................................................... 1

      A.     Blessed Relief and Other Personal Charitable Activities ..................................... 1

      B.     The National Commercial Bank and Its Charity Accounts ................................... 4

      C.     The So-Called "Golden Chain" Document ......................................................... 7

      D.     The Bank of Credit and Commerce International ............................................... 7

      E.     The Alleged "Brother-in-Law" ....................................................................... 8

      F.     Conclusory "Factual" Allegations ................................................................... 8

**ARGUMENT** ............................................................................................................. 9

**I.**    **THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ** ................................................................................................ 9

      A.     Plaintiffs Have Failed to Allege Minimum Contacts With the United States ...... 10

      B.     Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory .......... 10

      C.     Plaintiffs Fail to Allege that Mr. Bin Mahfouz "Purposefully Directed" His Conduct At The United States ................................................................... 11

      D.     Plaintiffs Are Not Entitled to Jurisdictional Discovery ....................................... 14

**II.**   **PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ** ..................................................................................... 15

      A.    Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim Under the Anti-Terrorism Act ("ATA") ................................................... 15

      B.    Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin Mahfouz ... 21

      C.    Plaintiffs Have Failed to State a Claim Under the Alien Tort Claims Act, ................. the Torture Victim Protection Act, or any State Law Cause of Action ................... 24

**CONCLUSION** ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan,*
    273 F.3d 241 (2d Cir. 2001) ...............................................................................7

*Boim v. Quaranic Literacy Inst.,*
    127 F.Supp. 2d 1002 (N.D. Ill. 2001), *aff'd,* 291 F.3d 1000 (7th Cir. 2002) ....................17

*Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I),*
    274 F. Supp. 2d 86 (D.D.C. 2003) .............................................................17, 22

*Cortec Indus., Inc. v. Sum Holding, L.P.,*
    949 F.2d 42 (2d Cir. 1991) ...............................................................................6

*In re Cross Media Mktg. Corp. Sec. Litig.,*
    314 F. Supp. 2d 256 (S.D.N.Y. 2004) ...............................................................16

*De Jesus v. Sears, Roebuck & Co.,*
    87 F.3d 65 (2d Cir. 1996) ...............................................................................16

*Discon, Inc. v. NYNEX Corp.,*
    93 F.3d 1055 (2d Cir. 1996), *rev'd on other grounds,* 525 U.S. 128 (1998) ....................23

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) .........................................................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) .......................................................................................10

*Highlands Ins. Co. v. PRG Brokerage, Inc.,*
    01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ...........................................9

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258 (1992) .......................................................................................15

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir. 1996) ................................................................................9

*Leigh Valley Indus. v. Birenbaum,*
    527 F.2d 87 (2d Cir. 1975) ..............................................................................10

*Mayes v. UVI Holdings, Inc.,*
    723 N.Y.S.2d 151 (App. Div. 2001) ..................................................................25

*Morin v. Trupin,*
    832 F. Supp. 93 (S.D.N.Y. 1993)...................................................................22

*Ouaknine v. MacFarlane,*
    897 F.2d 75 (2d Cir. 1990) ........................................................................22

*St. Pierre v. Dyer,*
    208 F.3d 394 (2d Cir. 2000) .......................................................................25

*In re Terrorist Attacks on September 11, 2001,*
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................................................... *passim*

*United States Fire Ins. Co. v. United Limousine Serv.,*
    303 F. Supp. 2d at 432 (S.D.N.Y. 2004)........................................................23

## STATUTES and RULES

Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350 .................................. 24

Anti-Terrorism Act ("ATA") ...................................................................15

Fed. R. Civ. Pro. 12(b)(2) .........................................................................9

Fed. R. Civ. Pro 12(b)(6) .......................................................................9, 16

Foreign Sovereign Immunities Act ("FSIA") ..........................................12, 19

RICO, 18 U.S.C. § 1962(a) ...................................................................... 22

RICO, 18 U.S.C. § 1962(b).......................................................................22

RICO, 18 U.S.C. § 1962(c).................................................................. 22, 23

RICO, 18 U.S.C. § 1962(d).................................................................22, 23

Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, note .................24

Khalid Bin Mahfouz is a prominent citizen of the Kingdom of Saudi Arabia and was formerly head of and a major shareholder in National Commercial Bank ("NCB").  He has publicly condemned terrorism in all of its forms and manifestations, especially the horrible events of September 11, 2001.[1]  He stands accused in this litigation both for his position with NCB and his contributions to Muslim charities, primarily the Blessed Relief (Muwafaq) Foundation.  Yet Plaintiffs simply rely on conclusory assertions that Mr. Bin Mahfouz "supported" or was "affiliated with" charities, either directly or through NCB, that Plaintiffs allege to have in some unspecified way supported terrorist activities.  Nowhere do Plaintiffs allege *specific facts* suggesting that Mr. Bin Mahfouz participated in these entities' alleged wrongful conduct, or that he knew it was occurring.  Accordingly, the claims against him should be dismissed.[2]

## FACTUAL ALLEGATIONS

Plaintiffs' allegations with respect to Mr. Bin Mahfouz fall principally into two categories:  (1) his personal charitable donations, primarily to Blessed Relief; and (2) his position as an executive and shareholder of NCB at various times between 1990 and 1999.  Each of these are summarized below, as are other far-flung or conclusory allegations.

### A.      *Blessed Relief and Other Personal Charitable Activities*

Plaintiffs contend that Mr. Bin Mahfouz has donated generously to charitable causes, most notably the Blessed Relief (Muwafaq) Foundation which he is alleged to have endowed

---

[1] *See* www.binmahfouz.info/faqs_2.html.

[2] Mr. Bin Mahfouz filed a motion to dismiss in the *Burnett* case before it was transferred to this Court. This motion addresses all of the other cases in which he was served by publication.  He has not been served in *Tremsky* and *Salvo*.  For the convenience of the Court, attached hereto as Exhibit A is chart denoting the causes of action included in each complaint.

with a $30 million contribution at its inception.[3]  Although Plaintiffs allege that Blessed Relief

ultimately served as a front for al Qaeda (a claim addressed below), it is indisputable that

Blessed Relief served a wealth of humanitarian purposes – fighting disease and hunger in the

Third World, among other things – and has worked with many other reputable humanitarian

groups, including the World Health Organization, UNICEF, the U.N.'s World Food Programme,

and Save the Children.  It is also undisputed that Blessed Relief wound up its activities between

1996 and 1998.

　　　　The only specific fact Plaintiffs allege with respect to Mr. Bin Mahfouz and Blessed

Relief is that he "endowed" or "founded" the charity in either 1991 or 1992.[4]  After that initial

endowment, none of the Complaints allege any *specific* facts indicating that Mr. Bin Mahfouz

participated in the charity's management or oversaw its operations.  When Mr. Bin Mahfouz

noted this fact in his motion to dismiss the *Burnett* case,[5] the *Federal Insurance* Plaintiffs

amended their Complaint to add the conclusory allegation that Mr. Bin Mahfouz "directly

participates in the management, funding and operation of several of those charities [that support

al Qaeda], including the Blessed Relief Foundation and BIF [Benevolence International

Foundation]."[6]  Plaintiffs allege no facts to support that conclusion.  To the contrary, *Federal*

---

[3] *See O'Neill* ¶¶ 35, 126; *O'Neill* RICO Ex. A; *Ashton* ¶ 460; *Contin. Cas.* ¶ 351; *Fed. Ins.* ¶¶ 488, 497; *Fed. Ins.* RICO Stmt. Ex. A; *WTC* ¶ 666; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

[4] *See id.*

[5] *See* Memorandum in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiffs' Complaint or in the Alternative for More Definite Statement at pp. 4-5 (Sept. 12, 2003) ("KBM *Burnett* MTD"). Prior to the transfer of *Burnett* to this Court, Plaintiffs in that case filed an identical action in this Court.  We will refer to that action, to which this motion pertains, as *Burnett-NY*, and the original *Burnett* action briefed before Judge Robertson as simply *Burnett*.

[6] *See Fed. Ins.* ¶ 293; *see also Fed. Ins.* RICO Stmt. Ex. A.  The *Federal Insurance* Plaintiffs may have confused the Benevolence International Foundation ("BIF"), with the International Development Foundation ("IDF").  *Cf. Fed. Ins.* ¶ 497.  No other Plaintiffs assert a link between Mr. Bin Mahfouz and BIF, and indeed, there is none.

*Insurance* makes no mention of Mr. Bin Mahfouz in its discussion of Blessed Relief itself,[7] but instead alleges that it was Yassin al Qadi who "ran" the charity.[8]  Similarly, other Plaintiffs groups allege that Yassin al Qadi – not Mr. Bin Mahfouz – "ran Blessed Relief from 1992 until approximately 1997 with $15 to $20 million of his own money."[9]  The *Federal Insurance* Plaintiffs also amended their Complaint in an attempt to supply the missing element of knowledge by adding an allegation that Mr. Bin Mahfouz "specifically knew" that Blessed Relief "was established to serve as a vehicle for funding and otherwise supporting terrorist organizations, including al Qaida."[10]  Again, however, their allegation that he "specifically knew" is supported by no specific facts whatsoever.

In order to cast suspicion on Mr. Bin Mahfouz's contributions to Blessed Relief, most of the Complaints allege in one form or another that the U.S. Treasury Department has identified Blessed Relief as a supporter of al Qaeda.  Most Plaintiffs cite to an October 12, 2001 "press release" from the U.S. Treasury Department that allegedly identifies Blessed Relief as an al Qaeda supporter.[11]  As Mr. Bin Mahfouz explained in his *Burnett* motion, there is no October 12,

---

[7] *See Fed. Ins.* ¶¶ 233-37.

[8] *See id. at* ¶ 488.  The *Federal Insurance* complaint as well as others also allege that Mr. Bin Mahfouz's son, Abdulrahman Bin Mahfouz, was involved in the management of Blessed Relief as a director.  *See Ashton* ¶¶ 460, 575; *Contin. Cas.* ¶¶ 351, 373; *Fed. Ins.* ¶ 497; *WTC* ¶¶ 666, 772; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.  He was dismissed from *Burnett* in this Court's January 18 decision.  *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d. 765, 820 (S.D.N.Y. 2005).

[9] *See Ashton* ¶¶ 460-61; *Contin. Cas.* ¶¶ 351-52; *WTC* ¶¶ 666-67.

[10] *Fed. Ins.* ¶ 497; *see also Fed. Ins.* RICO Stmt. Ex. A.

[11] *See Ashton* ¶ 458; *Contin. Cas.* ¶ 349; *WTC* ¶¶ 665, 774, 900; *WTC* RICO Stmt. Ex. A; *O'Neill* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* ¶¶ 235, 497; *Fed. Ins.* RICO Stmt. Ex. A.  Notably, the *Federal Insurance* Plaintiffs take this a step further by claiming that Blessed Relief was actually "designated under Executive Order 13224, based on their long standing and integral role in advancing the al-Qaida movement."  *Fed. Ins.* ¶¶ 235, 497; *Fed. Ins. RICO* Stmt. Ex. A; *see also Euro Brokers* RICO Stmt. Ex. A (alleging that Blessed Relief was designated); *WTC* RICO Stmt. Ex. A.  This allegation is demonstrably false simply by reference to the Federal Register:  Blessed Relief was never "designated" by the United States Treasury Department.  *See* http://www.ustreas.gov/press/archive.html (last visited June 24, 2005); *see also In re Terrorist Attacks,* 349 F. Supp. 2d at 800 (noting that of the named charities, only BIF and certain branches of Al Haramain have ever been designated).

2001 press release from the Treasury Department that even mentions Blessed Relief, let alone asserts that it is an "al Qaeda front."  KBM *Burnett* MTD at 5 n.3.  Regardless, even as alleged by Plaintiffs this statement followed the September 11 attacks, and even if true, was made nearly a decade after Plaintiffs allege – in their only specific allegation regarding his role – that Mr. Bin Mahfouz founded Blessed Relief.

Beyond Blessed Relief, and as in *Burnett*, Plaintiffs make vague allegations regarding Mr. Bin Mahfouz's connections to other charitable entities such as the International Development Foundation ("IDF"), Success Foundation and the SAAR Foundation.[12]  The *Federal Insurance* Plaintiffs, for example, assert that Mr. Bin Mahfouz has "made substantial contributions to many of the charities operating within al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's operations and terrorist attacks."[13]  Notably, the Plaintiffs fail to identify any of the other "several" charities with which Mr. Bin Mahfouz is purportedly involved.  More fundamentally, they do not offer a single fact to support these bald contentions.

### B.      The National Commercial Bank and Its Charity Accounts

Plaintiffs' allegations against Mr. Bin Mahfouz prominently feature his association with NCB.  Many of the Complaints simply allege that Mr. Bin Mahfouz was NCB's President, CEO and majority shareholder from 1986 until 1999.[14]  In fact, he served as Deputy General Manager of NCB from 1990 to 1992, when he resigned to attend to matters relating to his investment in the Bank of Credit and Commerce International ("BCCI").  Upon the death of his father in 1994,

---

[12] *See Ashton* ¶¶ 320, 572, 577, *Contin. Cas.* ¶¶ 375, 450; *WTC* ¶ 381; *Fed. Ins.* ¶¶ 497-98.

[13] *Fed. Ins.* ¶ 497; *O'Neill* RICO Stmt. Ex. A.

[14] *See Ashton* ¶ 563; *Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Contin. Cas.* ¶ 361; *Contin. Cas.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* ¶ 286 (stating that Mr. Bin Mahfouz

Mr. Bin Mahfouz inherited a majority interest in NCB and eventually returned to NCB as General Manager and Chairman of the Management Committee in 1996.  Personal health issues required Mr. Bin Mahfouz to withdraw from active management and undergo hospitalization beginning in 1998.  In 1999, he formally relinquished his management positions and sold his interest in NCB, most of which went to the Saudi Arabian government.

With respect to NCB, Plaintiffs further allege that Mr. Bin Mahfouz was dismissed from NCB "soon after the release of the bank's audit report and placed under house arrest,"[15] that "[w]hile under [Mr. Bin Mahfouz's] control, National Commercial Bank provided extensive financial services and other forms of material support to al Qaeda,"[16] and that he was indicted in the United States in connection with his alleged involvement in BCCI's fraudulent banking practices (though, significantly, not any alleged support of terrorism).[17]  *Federal Insurance* also asserts that by virtue of Mr. Bin Mahfouz's alleged ties to Blessed Relief and other charities, he "has known, for a period of many years, of their sponsorship of al Qaida's operations, and consequently that the accounts maintained by National Commercial Bank on behalf of those organizations were being used to channel funds to al Qaida."[18]

---

(continued…)

became President and CEO of NCB in 1996); *Fed. Ins*. RICO Stmt. Ex. A; *O'Neill* ¶ 34; *O'Neill* RICO Stmt. Ex. A; *NY Marine* RICO Stmt. ¶ 2; *WTC* ¶¶ 225, 775; *WTC* RICO Stmt. Ex. A.

[15] *Ashton* ¶ 571; *Contin. Cas.* ¶ 369; *WTC* ¶ 233; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins*. RICO Stmt. Ex. A; *see also O'Neill* RICO Stmt. Ex. A.  Plaintiffs make no express claim that Mr. Bin Mahfouz was arrested because of involvement in funding terrorism, but allege that this supposed "arrest" came "soon after the release of the bank's report."  *Id.*  In fact, as Mr. Bin Mahfouz will later prove if necessary, he was hospitalized for an extended period in Taif, Saudi Arabia because of medical problems which also resulted in his retirement at that time from NCB.  He has never been arrested for any reason in Saudi Arabia.

[16] *Fed. Ins.* ¶ 497; *Fed. Ins*. RICO Stmt. Ex. A; *Cantor Fitz.* ¶ 96.

[17] *See Ashton* ¶ 566; *Contin. Cas.* ¶ 364; *WTC* ¶ 288; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins*. RICO Stmt. Ex. A.

[18] *Fed. Ins.* ¶ 293; *see also Fed. Ins*. RICO Stmt. Ex. A.

Other Complaints add allegations premised on the alleged bank audit.  The *O'Neill* Plaintiffs claim that Mr. Bin Mahfouz "was dismissed from Defendant NCB after a bank audit revealed a $53 million transfer to Muwaffaq [Blessed Relief] Foundation" and further that "[u]pon information and belief, such funds were channeled to al Qaeda."[19]  Although the allegations are drafted to imply a connection between the two alleged facts, that Complaint contains no specific facts linking Mr. Bin Mahfouz to the alleged transfer either to Blessed Relief or ultimately to al Qaeda.  Other Plaintiffs assert that Mr. Bin "Mahfouz was forced to step down in 1999 only after an audit revealed that Mahfouz had funneled between $70 and $100 million dollars to OBL."[20]  Again, the Complaints allege no specific facts to support that claim.  Notably, while many of the Plaintiffs reference this same alleged audit report, most do not allege that it implicates Mr. Bin Mahfouz.[21]  The document itself, which the Court may appropriately consider because it is referenced in Plaintiffs' Complaints, *see Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), does not mention Mr. Bin Mahfouz.  As explained more fully in Mr. Bin Mahfouz's motion to dismiss the *Burnett* action at 7-10, the alleged "audit report" – which Plaintiffs' "lead investigator," Jean-Charles Brisard, submitted in a defamation action brought by Mr. Bin Mahfouz – nowhere even mentions OBL, al Qaeda, terrorism, or Mr. Bin Mahfouz.[22]  It therefore provides no basis to infer that NCB, let alone Mr. Bin Mahfouz, provided financial support to OBL or al Qaeda.

---

[19] *O'Neill* ¶ 126.

[20] *Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶¶ 2, 5(b) and (c); *Euro Brokers* ¶ 81; *Contin. Cas.* RICO Stmt. ¶¶ 2, 5(b); *NY Marine* RICO Stmt. ¶ 2.

[21] *See Ashton* ¶¶ 569-71, 573; *Contin. Cas.* ¶¶ 367-69, 371; *Contin. Cas.* RICO Stmt. ¶¶ 2, 5(b); *O'Neill* ¶¶ 35, 126; *O'Neill* RICO Stmt. Ex. A; *WTC* ¶¶ 231-33; *WTC* RICO Stmt. Ex. A; *Fed. Ins.* RICO Stmt. Ex. A.

[22] *See* KBM *Burnett* MTD, Ex. B.  Although it may be considered because it is a document referenced by Plaintiffs, Mr. Bin Mahfouz does not concede the authenticity or characterization of the document.

### C.    The So-Called "Golden Chain" Document

Several of the Plaintiffs groups also allege that Mr. Bin Mahfouz's name is included on a document they refer to as the "Golden Chain," which they further allege to be a list of al Qaeda donors.[23]  Plaintiffs fail to mention that the document itself lists only the name "Bin Mafoodh."[24] It does not refer specifically to the Bin Mahfouz family, much less to Khalid Bin Mahfouz in particular.  In any event, as the Court is aware, the Complaints contain no additional allegations indicating who wrote this document or what it purports to be.  "The 'Golden Chain' does not say what the Plaintiffs argue it says.  It is only a list of names found in a charity's office."  *In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 818 (S.D.N.Y. 2005).[25]

### D.    The Bank of Credit and Commerce International

Plaintiffs here, as in *Burnett*, also make several allegations regarding Mr. Bin Mahfouz's association with BCCI in the 1980s.[26]  Plaintiffs allege no specific facts suggesting that Mr. Bin Mahfouz participated in or knew about BCCI's alleged support of terrorism.  Moreover, they allege no facts to connect BCCI, which collapsed in 1991, *see Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 243 (2nd Cir. 2001), to OBL or al Qaeda.[27]

---

[23] *See Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Fed. Ins*. ¶¶ 101, 497; *Fed. Ins.* RICO Stmt. Ex. A; *WTC* ¶ 150; *Contin. Cas*. RICO Stmt. ¶2; *O'Neill* RICO Stmt. Ex. A; *NY Marine* RICO Stmt. ¶2.

[24] Without conceding its accuracy, we note that Plaintiffs' translation of the document is in the record as Affirmation of Andrea Bierstein in Opposition to Motion to Dismiss of Hamad Al-Husaini, Ex. 2 (June 30, 2004).

[25] Plaintiffs submitted additional argument regarding the "Golden Chain" in their Supplemental Memorandum in Opposition to Motions to Dismiss of Wa'el Hamza Jelaidan, Khalid Bin Mahfouz and Yousef Jameel (June 8, 2005).  Because those defendants asked the Court to strike that filing and the Court has reserved ruling, Mr. Bin Mahfouz will not address that additional argument at this time, except to note that the submission remedies none of the questions the Court previously raised regarding that document.

[26] *See Ashton* ¶¶ 564, 566-68; *Contin. Cas.* ¶¶ 362, 364-66; *Fed. Ins.* ¶¶ 288-89; *Fed. Ins*. RICO Stmt. Ex. A; *O'Neill* ¶ 34; *WTC* ¶¶ 226, 228-30, 775; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

[27] *See id.*

### E.    The Alleged "Brother-in-Law"

Plaintiffs, relying on former CIA director James Woolsey's 1998 congressional testimony, allege that Mr. Bin Mahfouz "was Osama bin Laden's brother-in-law by virtue of bin Laden's marriage to Bin Mahfouz's sister Kaleda."[28]  This is, as Woolsey himself later explained, untrue.[29]

### F.    Conclusory "Factual" Allegations

In addition to the allegations described above, Plaintiffs make many broad, unsupported and inflammatory conclusory assertions.  For example, Plaintiffs claim that Mr. Bin Mahfouz is "a senior al Qaeda financier,"[30] "a major financial sponsor and conduit for Osama Bin Laden, al Qaeda operations, and international terrorism,"[31] "one of al Qaida's principal individual financiers,"[32] that he "set up various charity organizations around the world," "[e]very one" of which is linked in some unspecified way to al Qaeda,[33] that he "conspired with Osama bin Laden and al Qaeda . . . to support and finance their terrorist activities including, but not limited to, the September 11th attacks or otherwise assisted them in their terrorist activities,"[34] and that he "has aided and abetted, conspired with, and provided material support and resources to" al Qaeda

---

[28] *Ashton* ¶ 571; *Contin. Cas.* ¶ 369; *O'Neill* ¶ 35; *WTC* ¶ 233.

[29] Woolsey's congressional testimony referred to "Mr. Hafuz, the chairman of the national commercial bank of Saudi Arabia."  *Examining the U.S. Government's Response to the Threat of International Terrorism: Hearing before the Senate Comm. on the Judiciary*, 105th Cong., 47 (1998) (statement of R. James Woolsey). Woolsey later expressly denied that he meant Mr. Bin Mahfouz.  *See* K. Silverstein, "Top Investigator in 9/11 Victims' Lawsuit Faces Libel Action; Saudi Billionaire Alleges Significant Errors In Book On Terrorist Financing Linking Him To Osama Bin Laden," *Los Angeles Times* (Feb. 26, 2003).

[30] *Ashton* ¶¶ 320, 460; *WTC* ¶¶ 381, 666; *Contin. Cas.* ¶ 351.

[31] *WTC* ¶ 775.

[32] *See Fed. Ins.* ¶ 497; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* RICO Stmt. Ex. A.

[33] *Ashton* ¶ 571; *Contin. Cas.* ¶ 369; *O'Neill* ¶ 35; *WTC* ¶ 233.  Indeed, *Continental Casualty* goes so far as to claim, in what one hopes is a typographical error rather than an allegation subject to Rule 11 standards, that Mr. Bin Mahfouz is himself a terrorist group funded by the IIRO.  *Contin. Cas.* ¶ 446.

[34] *O'Neill* ¶ 23.

and/or affiliated terrorist organizations or persons.[35]  As this Court has recognized, while it must construe the Complaints in a light most favorable to Plaintiffs, it does not "accept legally conclusory assertions or draw 'argumentative inferences.'"  *In re Terrorist Attacks,* 349 F. Supp. 2d at 804 (citing cases).  *See also Highlands Ins. Co. v. PRG Brokerage, Inc.*, 01 Civ. 2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004) (noting that "bald contentions, unsupported characterizations, and legal conclusions" are not well pleaded allegations and therefore "will not suffice to defeat a motion to dismiss") (citing *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996))).

## ARGUMENT

Mr. Bin Mahfouz's motion to dismiss here should be granted for the same two reasons articulated in his motion to dismiss the *Burnett* Complaint.[36]  First, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs have failed to establish that this Court can properly exercise personal jurisdiction over this foreign defendant.  Second, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim against Mr. Bin Mahfouz.

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ

To survive a motion to dismiss under Federal Rule 12(b)(2), Plaintiffs must "make a *prima facie* showing that personal jurisdiction exists."  *In re Terrorist Attacks,* 349 F. Supp. 2d at 804 (internal citation omitted).  While Plaintiffs may proffer several distinct theories of personal jurisdiction, none support jurisdiction over Mr. Bin Mahfouz.  Plaintiffs do not allege any contacts Mr. Bin Mahfouz maintains with New York or the United States as a whole, much less sufficient contacts to support general jurisdiction.  Plaintiffs do not allege any specific facts to support their allegations that Mr. Bin Mahfouz participated in a conspiracy with OBL and al

---

[35] *NY Marine* ¶ 45.

Qaeda.  And Plaintiffs allege no facts from which to infer that Mr. Bin Mahfouz purposefully directed any conduct at the United States.  Having failed to allege any relevant jurisdictional facts, Plaintiffs are not entitled to jurisdictional discovery.

### A.   Plaintiffs Have Failed to Allege Minimum Contacts With the United States

To support general jurisdiction, Plaintiffs must allege contacts with New York or the United States that are "'systematic and continuous.'"  *In re Terrorist Attacks,* 349 F. Supp. 2d at 816 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *see also id.* at 811 (discussing general personal jurisdiction and noting where "the defendant's contacts are not related to the suit, a considerably higher level of contacts is generally required").  Plaintiffs have not even attempted to do so here.  None of them have alleged *any* contacts Mr. Bin Mahfouz has with the United States.  Thus, Plaintiffs cannot establish general jurisdiction over him.  That would be the case even if this Court ultimately finds that it has personal jurisdiction over NCB.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 816 (holding that a finding of jurisdiction over an entity does not support jurisdiction over an individual officer absent an independent showing as to that officer).

### B.   Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory

The exercise of "conspiracy jurisdiction" over Mr. Bin Mahfouz is equally inappropriate.  Although this Court has recognized the theory, it stressed that "'the bland assertion of conspiracy is insufficient to establish personal jurisdiction.'"  *In re Terrorist Attacks,* 349 F. Supp. 2d at 805 (quoting *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-4 (2d Cir. 1975)).  Rather, "[t]o establish personal jurisdiction on a conspiracy theory, Plaintiffs must make a prima facie showing of conspiracy, *allege specific facts* warranting the inference that the defendant was a

_____

(continued…)

[36] Mr. Bin Mahfouz incorporates those arguments herein by reference.

member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *Id.* (emphasis added).  Here, Plaintiffs do not even come close.

To establish conspiracy jurisdiction over Mr. Bin Mahfouz, Plaintiffs must allege that he directed, controlled or requested al Qaeda to undertake its terrorist activities, and must make specific allegations that he knew of or consented to those activities.  *Id.* at 806.  As described in the summary of factual allegations above, Plaintiffs here allege no specific facts even suggesting that Mr. Bin Mahfouz did so.  Plaintiffs do allege in various forms that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11.[37] However, the Court has already recognized that "[w]ithout supporting factual allegations, such a statement is insufficient to establish an agency relationship."  *In re Terrorist Attacks,* 349 F. Supp. 2d at  805-06 (citing cases).  Absent such supporting allegations, the Court may properly dismiss without permitting jurisdictional discovery.  *Id.* at 805.

### C.      Plaintiffs Fail to Allege that Mr. Bin Mahfouz "Purposefully Directed" His Conduct At The United States

Much of Plaintiffs' jurisdictional argument to date has been directed at the claim that various defendants have "purposefully directed" their conduct at the United States.  As to Mr. Bin Mahfouz, such a claim must fail because Plaintiffs have not alleged "some *personal or direct involvement* by the Defendant[] in the conduct giving rise to their claims," *In re Terrorist Attacks*, 349 F. Supp. 2d at 809 (emphasis added), as the authorities Plaintiffs themselves have cited require.  *See id.* (citing cases).[38]

---

[37] *See Ashton* ¶ 296; *Fed. Ins.* ¶¶ 66, 72-74; *Fed. Ins*. RICO Stmt. ¶¶ 5(b), 14; *O'Neill* ¶ 23; *O'Neill* RICO Stmt. ¶¶ 5(b), 14; *WTC* ¶¶ 775, 1147-49; *WTC* RICO Stmt. ¶¶ 5(b), 14; *Contin. Cas.* ¶¶ 615-16; *Contin. Cas*. RICO Stmt. ¶¶ 5(b), 14; *Euro Brokers* ¶¶ 175-77; *Euro Brokers* RICO Stmt. ¶¶ 5(b), 14; *NY Marine* ¶¶ 45, 66; *NY Marine* RICO Stmt. ¶¶ 5(b), 14; *Cantor Fitz*. RICO Stmt. ¶ 5(b).

[38] As previously argued, KBM *Burnett* MTD Reply Br. at 5-6, Plaintiffs' reliance in this context on cases decided under the Foreign Sovereign Immunities Act ("FSIA") is misplaced.

Plaintiffs have failed to allege that Mr. Bin Mahfouz had any "personal or direct involvement" in conduct aimed at the United States. As shown in the factual narrative above, Plaintiffs allege no specific facts from which the Court could infer that he provided direct support to OBL or al Qaeda. Blanket assertions that Mr. Bin Mahfouz is an "al Qaeda financier,"[39] "a senior al Qaeda financier,"[40] "one of al Qaeda's principal individual financiers,"[41] or "a major financial sponsor"[42] of al Qaeda do not fill the void. As this Court has held, "[l]egal conclusions done up as factual allegations are not facts and cannot substitute for facts." *In re Terrorist Attacks,* 349 F. Supp. 2d at 813 (internal quotation and citation omitted).

Plaintiffs add nothing by making the bare allegation that Mr. Bin Mahfouz knew that Blessed Relief supported terrorism at the time he endowed it[43] – conduct they date to 1991 or 1992, well before al Qaeda publicly targeted the United States. This Court repeatedly rejected Plaintiffs' reliance on this theory of personal jurisdiction where "Plaintiffs [failed to] offer any facts to lend support to their allegation that [a defendant] purposefully directed his activities at this forum by donating to charities that he knew at the time supported international terrorism." *Id.* at 813 (finding Plaintiffs' allegations, void of any facts, insufficient to find that Prince Sultan purposefully directed his conduct at the United States). "Conclusory allegations that [Prince Turki] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice." *Id.* at 813-14. The allegations against Mr. Bin Mahfouz fail for the same reason.

---

[39] *Ashton* ¶ 460; *Contin. Cas.* ¶ 351; *WTC* ¶ 666.

[40] *Ashton* ¶ 320; *Contin. Cas.* ¶ 450; *WTC* ¶ 381.

[41] *Fed. Ins.* ¶ 497; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* RICO Stmt. Ex. A.

[42] *WTC* ¶ 775.

[43] *See Fed. Ins.* ¶ 497; *Fed. Ins.* RICO Stmt. Ex. A.

Similarly, the allegation that Mr. Bin Mahfouz is included on the "Golden Chain"[44] document does not bolster Plaintiffs' jurisdictional claim.  This Court already reached that conclusion with respect to two other defendants, Mohammad Abdullah Aljomaih and Sheikh Hamad Al-Husani, whom Plaintiffs allege were named in the document:  "[W]ith no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the [Golden Chain] is a list of early al Qaeda supporters."  *In re Terrorist Attacks,* 349 F. Supp. 2d at 817; *see also id.* at 818.

Plaintiffs' allegation that Mr. Bin Mahfouz held positions at NCB[45] are likewise insufficient to demonstrate that he purposefully directed his conduct at the United States.  Beyond alleging that Mr. Bin Mahfouz was an officer or major shareholder of NCB,[46] Plaintiffs allege that NCB was used by OBL and al Qaeda as a financial arm, operating as a financial conduit for OBL's operations.[47]  Plaintiffs have not, however, alleged that Mr. Bin Mahfouz "had any knowledge or involvement in any al Qaeda accounts at . . . the bank[] he chaired."  *Id.* at 816.  In rejecting similarly insufficient allegations proffered against Prince Mohamed, the Court held that "[t]o make a prima facie case of personal jurisdiction, Plaintiffs' must either allege *personal acts* by Prince Mohamed by which he purposefully directed his activities at the United States by supporting Osama bin Laden, al Qaeda, or their terrorist agenda, or demonstrate that the acts of the banks he chaired can be imputed to him."  *Id.* (emphasis added).  An identical

---

[44] *See Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Fed. Ins.* ¶¶ 101, 497; *Fed. Ins.* RICO Stmt. Ex. A; *WTC* ¶ 150; *Contin. Cas.* RICO Stmt. ¶2; *O'Neill* RICO Stmt. Ex. A; *NY Marine* RICO Stmt. ¶2.

[45] *See Ashton* ¶ 563; *Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Contin. Cas.* ¶ 361; *Contin. Cas.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* ¶ 286 (stating that Mr. Bin Mahfouz became President and CEO of NCB in 1996); *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶ 34; *O'Neill* RICO Stmt. Ex. A; *NY Marine* RICO Stmt. ¶ 2; *WTC* ¶¶ 225, 775; *WTC* RICO Stmt. Ex. A.

[46] *See id.*

[47] *Ashton* ¶ 564; *Contin. Cas.* ¶ 362; *O'Neill* ¶ 34; *WTC* ¶ 226; *see also Fed. Ins.* ¶ 293; *Fed. Ins.* RICO Stmt. Ex. A.

showing is required as to Mr. Bin Mahfouz, and just as Plaintiffs failed to meet their burden as to Prince Mohamed, they have failed to meet their burden here.  Furthermore, Plaintiffs have not alleged, and will be unable to allege in the future, that NCB's alleged conduct could be properly imputed to Mr. Bin Mahfouz.  Claiming that Mr. Bin Mahfouz knew or should have known that NCB allegedly acted as a conduit between OBL and al Qaeda and certain charities, without alleging any specific facts to support that conclusion, is not sufficient.[48]  Plaintiffs offer no specific facts indicating that Mr. Bin Mahfouz played any management or operative role in any of these charities.  For example, although *Federal Insurance* relies on Mr. Bin Mahfouz's alleged "involvement in the affairs of . . . BIF," nowhere in the 28 paragraphs in the *Federal Insurance* Complaint devoted to enumerating the allegations against BIF is Mr. Bin Mahfouz once mentioned.[49]

###        D.        Plaintiffs Are Not Entitled to Jurisdictional Discovery

Having failed to allege any facts to support jurisdiction over Mr. Bin Mahfouz, Plaintiffs will likely request jurisdictional discovery in the hope of finding some.  As this Court has already recognized, however, "'[c]ourts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction.'"  *In re Terrorist Attacks,* 349 F. Supp. 2d at 812 (citing cases).  That is precisely the case here.  Plaintiffs have not alleged: (1) a single contact between Mr. Bin Mahfouz and the United States, let alone substantial and continuous contacts, nor (2) any specific

---

[48] The *Federal Insurance* Plaintiffs base their assertion of knowledge on Mr. Bin Mahfouz's "involvement in the affairs of" several Islamic charities "including the Blessed Relief Foundation and BIF."  *Fed. Ins.* ¶ 293; *see also Fed. Ins.* RICO Stmt. Ex. A.  Such a vague allegation, itself unsupported by any specific facts showing Mr. Bin Mahfouz's "personal or direct involvement," cannot supply the necessary support.

[49] *Compare Fed. Ins.* ¶ 293 *with id.* at ¶¶ 84-112.

conduct by Mr. Bin Mahfouz himself either aimed at the United States or as part of a conspiracy so aimed.  It is therefore clear that Plaintiffs have not demonstrated a basis to take even limited discovery of this foreign defendant.

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ

Although characterized under many guises, Plaintiffs' claims against Mr. Bin Mahfouz rely entirely upon joint tort theories of conspiracy or aiding and abetting.  Plaintiffs do not and cannot allege that Mr. Bin Mahfouz directly supported al Qaeda or participated in the September 11 attacks.  Rather, Mr. Bin Mahfouz is alleged to have indirectly assisted al Qaeda through his relationships with entities such as NCB and Blessed Relief.  As explained below, all of Plaintiffs' claims against Mr. Bin Mahfouz should be dismissed because Plaintiffs fail to allege specific facts supporting an inference that Mr. Bin Mahfouz knowingly supported al Qaeda through these entities.  Also, as explained below, many of Plaintiffs' claims fail for additional reasons unique to the individual causes of action.

### A.   Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim Under the Anti-Terrorism Act ("ATA")

Plaintiffs' ATA claim fails for two primary reasons.  First, they fail to allege the necessary direct relationship between Mr. Bin Mahfouz's alleged conduct and the September 11 attacks, which is required by the statute's "by reason of" requirement.  *See* 18 U.S.C. §2333.  That language, borrowed from RICO, requires not simply a foreseeable link but "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also* KBM *Burnett* MTD at 22-25.  Second and more fundamentally, however, Plaintiffs have also failed to allege any specific facts that could give rise to an inference that Mr. Bin Mahfouz knowingly and intentionally provided material assistance to al Qaeda.  Analyzing the standards applicable to tort claims of conspiracy and

aiding and abetting, this Court made clear that Plaintiffs must allege specific facts showing that Plaintiffs knew of, intended to aid, and did in fact aid the terrorists' illegal activities.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 828.  To adequately allege those points here, Plaintiffs must offer specific facts to support their conclusions that Mr. Bin Mahfouz knew or had to know that the entities in question were being used to support al Qaeda.  *Id.* at 831, 835-36.  Plaintiffs have failed to do so.  At most, they allege that Mr. Bin Mahfouz was somehow associated with entities that allegedly supported al Qaeda, and some of the Complaints fail to even do that.  Plaintiffs never allege any specific facts suggesting that Mr. Bin Mahfouz actively participated in those organizations' allegedly illegal activities or knowingly supported them.

**General Conclusory Allegations**.  As an initial matter, although Plaintiffs continue to insist that they need not state anything more than the broadest description of their legal theories, this Court has made clear that they cannot withstand a motion to dismiss simply by relying on vague, generalized allegations.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 833 ("'[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).'") (*quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996))); *see also id.* at 835 (granting Arab Bank's motion to dismiss because "[a] complaint alleging conclusions without supporting facts will not survive a Rule 12(b)(6) motion"); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 261 (S.D.N.Y. 2004). In fact, the *NY Marine* Complaint must be dismissed because its entire case against Mr. Bin Mahfouz is a multi-page allegation baldly asserting that the defendants collectively "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons."[50]

---

[50] *NY Marine* ¶ 45.

Apart from these conclusory allegations, the other Plaintiffs groups rely primarily on two categories of allegations: those relating to Mr. Bin Mahfouz's founding or endowment of Blessed Relief, and those relating to Mr. Bin Mahfouz's involvement with NCB.  Neither these nor any other allegations Plaintiffs have made support an inference that Mr. Bin Mahfouz supported or agreed to support al Qaeda or terrorism of any kind.

**Blessed Relief**.  Plaintiffs claim that Blessed Relief, which was originally endowed by Mr. Bin Mahfouz, was an al Qaeda front.[51]  That allegation, even if assumed to be true, fails to state a claim.  As this Court held based on the seminal ATA case of *Boim v. Quaranic Literacy Institute,* 127 F. Supp. 2d 1002 (N.D. Ill. 2001)*, aff'd,* 291 F.3d 1000 (7th Cir. 2002), "pursuant to *Boim*, the Plaintiffs would have to allege *specific facts* showing that the [defendants] knew or should have known that the charities they supported were actually fronts for al Qaeda." *In re Terrorist Attacks*, 349 F. Supp. 2d at 800 (citing *Burnett I*, 274 F. Supp. 2d at 106) (emphasis added).  Plaintiffs allege no facts that would support such a showing.  The Court noted that in *Boim*, unlike in this case, the relevant charity (Hamas) was a designated terrorist group at the time of the alleged donations.  *Id.*  Although Plaintiffs make much of an alleged press release in which the U.S. Treasury Department purportedly identified Blessed Relief as a source of terrorism funding, the Plaintiffs themselves claim that the alleged release was made in October, 2001,[52] many years after Mr. Bin Mahfouz is alleged to have contributed to Blessed Relief.  Thus, it cannot supply the necessary inference of knowledge.

---

[51] *See Ashton* ¶¶ 458, 463; *Contin. Cas.* ¶¶ 349, 354; *Fed. Ins.* ¶ 234; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶¶ 25, 126; *O'Neill* RICO Stmt. Ex.A; *WTC* ¶¶203, 665, 774, 900; *WTC* RICO Stmt. Ex.A; *Euro Brokers* RICO Stmt. Ex.A.

[52] *See Ashton* ¶ 458; *Contin. Cas.* ¶ 349; *WTC* ¶¶ 665, 774, 900; *WTC* RICO Stmt. Ex. A; *O'Neill* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* ¶¶ 235, 497; *Fed. Ins.* RICO Stmt. Ex. A.

Nor have Plaintiffs alleged any other facts to "support an inference that" Mr. Bin Mahfouz was "sufficiently close to the terrorists' illegal activities to satisfy *Halberstam* [*v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)] or New York law." *Id.* at 800-01. Plaintiffs allege no connection between Mr. Bin Mahfouz and al Qaeda terrorists themselves. Moreover, with respect to Blessed Relief, they allege merely that Mr. Bin Mahfouz helped "found"[53] or "endow"[54] it in the early 1990s. They do not allege any specific facts supporting an inference that Mr. Bin Mahfouz did so to aid al Qaeda or that he played any role in the management, operation, or control of Blessed Relief. To the contrary, Plaintiffs allege that Yassin al Qadi – not Mr. Bin Mahfouz – "ran Blessed Relief from 1992 until approximately 1997 with $15 to $20 million of his own money."[55] While certain Plaintiffs do allege the conclusion that Mr. Bin Mahfouz "endowed" or "founded" Blessed Relief to aid al Qaeda or continued to play an unspecified role in its activities,[56] these conclusory allegations are insufficient. *See In re Terrorist Attacks,* 349 F. Supp. 2d at 833. This Court has already recognized in the context of personal jurisdiction that Plaintiffs cannot withstand a motion to dismiss based on an alleged leadership role in Blessed Relief without specific allegations of wrongful conduct in that capacity. *See id.* at 820-21 (dismissing Abdulrahman Bin Mahfouz despite alleged position as a director of Blessed Relief).

---

[53] *See O'Neill* ¶ 126; *O'Neill* RICO Stmt. Ex. A; *WTC* ¶ 233.

[54] *See Fed. Ins.* ¶¶ 488, 497; *Ashton* ¶ 460; *Contin. Cas.* ¶ 351; *WTC* ¶ 666.

[55] *Ashton* ¶ 461; *Contin. Cas.* ¶ 352; *WTC* ¶ 667. Significantly, it was at the end of this period, after al Qadi allegedly ran Blessed Relief with "his own money," that *Ashton* alleges Blessed Relief gave OBL $3 million. *Ashton* ¶ 573.

[56] *See Fed. Ins.* ¶¶ 293, 497; *Fed. Ins.* RICO Stmt. Ex. A.

**NCB**.  Plaintiffs' ATA claims against Mr. Bin Mahfouz also rely heavily on his various alleged positions at NCB[57] and its alleged services and contributions to charities including IIRO.[58]  These allegations fall short for the same reason as those regarding Blessed Relief.  While Plaintiffs allege that Mr. Bin Mahfouz was chairman and majority owner of NCB, and that he was dismissed from his position in 1999,[59] they allege no facts to suggest that he authorized, directed, or was otherwise involved in NCB's alleged handling of charities' accounts or contributions to IIRO.  Here, Plaintiffs fail to allege any specific facts suggesting that Mr. Bin Mahfouz even knew that these accounts existed, let alone that he knew they were being used to support al Qaeda.  It is entirely unrealistic to assume that, as a senior bank executive and shareholder, Mr. Bin Mahfouz was aware of and actively policed the thousands of accounts and transactions at NCB, the largest bank in Saudi Arabia.  This Court's dismissal of Abdulrahman Bin Mahfouz, who was alleged to hold a similar position as a member of the board and Vice Chairman of the Executive Management Committee of NCB, illustrates that it is insufficient for Plaintiffs to rely upon an unsupported assumption that high-ranking NCB officials must have participated in the bank's alleged wrongdoing.  *See id.* at 820-21.

With regard to the allegation that NCB's Zakat Committee funneled $74 million to the IIRO over a 10-year period,[60] Plaintiffs do not allege that Mr. Bin Mahfouz knew about or

---

[57] *See Ashton* ¶ 563; *Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Contin. Cas.* ¶ 361; *Contin. Cas.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* ¶ 286 (stating that Mr. Bin Mahfouz became President and CEO of NCB in 1996); *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶ 34; *O'Neill* RICO Stmt. Ex. A; *NY Marine* RICO Stmt. ¶ 2; *WTC* ¶¶ 225, 775; *WTC* RICO Stmt. Ex. A.

[58] *See Ashton* ¶¶ 569-71; *Contin. Cas.* ¶¶ 367-69; *Fed. Ins.* ¶¶ 290-94; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶ 35; *O'Neill* RICO Stmt. Ex. A; *WTC* ¶¶ 231-33; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

[59] *See Ashton* ¶ 571; *Contin. Cas.* ¶ 369; *WTC* ¶ 233; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A; *Fed. Ins.* RICO Stmt. Ex. A; *see also O'Neill* ¶ 126; *O'Neill* RICO Stmt. Ex. A; *Cantor Fitz.* RICO Stmt. ¶¶ 2, 5(b); *NY Marine* RICO Stmt. ¶ 2.

[60] *See Ashton* ¶ 569; *Contin. Cas.* ¶ 367; *Fed. Ins.* ¶ 292; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶ 35; *O'Neill* RICO Stmt. Ex. A; *WTC* ¶ 231; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

participated in the Zakat Committee's decision to make charitable contributions to the IIRO. Moreover, as in the case of other bank defendants, Plaintiffs do not allege any specific facts indicating that either NCB or Mr. Bin Mahfouz himself knew that IIRO was supporting al Qaeda. *See In re Terrorist Attacks,* 349 F. Supp. 2d at 833 (dismissing the claims against Al Rajhi Bank, which allegedly provided banking services and donated money to charities, because Plaintiffs "do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities WAMY, MWL, IIR[O], and SJRC were supporting terrorism"); *see also id.* at 835 (dismissing claims against Arab Bank because the "complaints do not include any facts to support the inference that Arab Bank knew or had to know that it was providing material support to terrorists by providing financial services to the charity Defendants").

**The "Golden Chain".**  Various Plaintiffs rely on the so-called Golden Chain document in the hope of showing the claim that Mr. Bin Mahfouz knowingly supported al Qaeda.[61]  Even if the "Mahfoodh" named in that document were in fact Khalid Bin Mahfouz, Plaintiffs have not, as this Court has already found, alleged facts to support an inference that it represents a list of early al Qaeda donors or supporters.  *In re Terrorist Attacks,* 349 F. Supp. 2d at 817.

**BCCI**.  Some Plaintiffs groups also ask for an inference from Mr. Bin Mahfouz's prior involvement with BCCI.[62]  These allegations are irrelevant for two reasons.  First, Plaintiffs allege no connection between BCCI, which as noted above collapsed in 1991, and al Qaeda. Instead, they merely assert BCCI's alleged support of unspecified "international terrorism" in the

---

[61] *See Cantor Fitz.* ¶ 96; *Cantor Fitz.* RICO Stmt. ¶ 2; *Euro Brokers* ¶ 81; *Fed. Ins.* ¶¶ 101, 497; *Fed. Ins.* RICO Stmt. Ex. A; *WTC* ¶ 150; *Contin. Cas.* RICO Stmt. ¶ 2; *O'Neill* RICO Stmt. Ex. A.; *NY Marine* RICO Stmt. ¶ 2.

[62] *See Ashton* ¶¶ 564, 566-68; *Contin. Cas.* ¶¶ 362, 364-66; *Fed. Ins.* ¶¶ 288-89; *Fed. Ins.* RICO Stmt. Ex. A; *O'Neill* ¶ 34; *WTC* ¶¶ 226, 228-30, 775; *WTC* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

late 1980s.[63]  Links to terrorist organizations unconnected to al Qaeda or the September 11th

attacks, however, cannot support a claim.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 833

(rejecting claim against Al Rajhi Bank based on alleged Hamas connections "because Plaintiffs

have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of

September 11").  Second, even if they had alleged that connection, they allege no specific facts

suggesting that Mr. Bin Mahfouz participated in or had any knowledge of those alleged

activities.  *Id.* at 816.

      **The Alleged Brother-in-Law**.  Finally, some Plaintiffs fall back on their last refuge:

familial relationships.  Several Complaints erroneously allege that Mr. Bin Mahfouz is OBL's

brother-in-law.[64]  As shown above, Plaintiffs' own source has disavowed that claim.  In any case,

forcing Mr. Bin Mahfouz to defend himself based on who his purported in-laws are would be the

worst sort of guilt by association.

      **B.**      **Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin Mahfouz**

      Plaintiffs in seven actions have brought civil RICO claims against Mr. Bin Mahfouz for

violations of 18 U.S.C. §§ 1962(a), (c), and/or (d).[65]  This Court has already articulated the

elements and standards that apply to those claims.  *In re Terrorist Attacks*, 349 F. Supp. 2d at

826-28.  The RICO claims against Mr. Bin Mahfouz fail for the same reasons the Court has

applied to claims against other defendants.

---

[63] *See Ashton* ¶ 567; *Contin. Cas.* ¶ 365; *WTC* ¶¶ 229, 230; *WTC* RICO Stmt. Ex. A; *Fed. Ins.* ¶¶ 288, 289; *Fed. Ins.* RICO Stmt. Ex. A; *Euro Brokers* RICO Stmt. Ex. A.

[64] *Ashton* ¶ 571; *Contin. Cas.* ¶ 369; *O'Neill* ¶ 35; *WTC* ¶ 233.

[65] Plaintiffs allege RICO violations in the *Cantor Fitzgerald*, *Continental Casualty*, *Euro Brokers*, *Federal Insurance*, *NY Marine*, *O'Neill* and *World Trade Center* actions.  The *Burnett* plaintiffs also brought RICO claims, but those were dismissed as to all defendants by Judge Robertson.  *See Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)*, 274 F. Supp. 2d 86, 100-01 (D.D.C. 2003).

**Section 1962(a)**.  Several of the Plaintiffs groups assert § 1962(a) claims,[66] but they have failed to allege the essential element of investment injury.  As this Court has already held, under § 1962(a) the plaintiff must allege that its injury resulted from the defendant's *investment* of racketeering income, not simply participation in the alleged racketeering activity itself.  *In re Terrorist Attacks*, 349 F. Supp. 2d at 827; *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990); *Morin v. Trupin*, 832 F. Supp. 93, 99 (S.D.N.Y. 1993).  Plaintiffs uniformly allege that their damages were caused by the alleged "pattern of racketeering activity,"[67] *not* Defendants' investment of any income they allegedly received from that racketeering activity.  The claims thus fail as a matter of law.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 827.[68]

**Section 1962(c)**.  Plaintiffs' § 1962(c) RICO claims also fail.  Assuming for the sake of argument, as this Court did, that Plaintiffs have adequately pled a RICO enterprise, *see In re Terrorist Attacks*, 349 F. Supp. 2d at 827, Plaintiffs have nevertheless not alleged that Mr. Bin Mahfouz played "'some part in directing' the 'operation or management'" of that enterprise.  *Id.* (internal citation omitted).  Plaintiffs cannot satisfy that "extremely rigorous test" here.  *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004).

---

[66] *See Euro Brokers* ¶¶ 159-61; *Euro Brokers* RICO Stmt. ¶ 1; *WTC* ¶¶ 1132-34; *WTC* RICO Stmt. ¶ 1; *Fed. Ins.* ¶¶ 627-29; *NY Marine* ¶¶ 65-67; *O'Neill* ¶¶ 176-80.  Plaintiffs in *Federal Insurance, NY Marine* and *O'Neill* appear to have abandoned any § 1962(a) claim against Mr. Bin Mahfouz in their respective RICO Statements, ¶ 1.  *Cf. In re Terrorist Attacks*, 349 F. Supp. 2d at 827.

[67] *See Euro Brokers* ¶ 162; *Euro Brokers* RICO Stmt. ¶¶ 5(f), 16; *WTC* ¶ 1134; *WTC* RICO Stmt. ¶¶ 5(f), 16; *Fed. Ins.* ¶ 629; *Fed. Ins.* RICO Stmt. ¶¶ 5(f), 16; *NY Marine* ¶ 67; *NY Marine* RICO Stmt. ¶¶ 5(f), 16; *O'Neill* ¶ 180; *O'Neill* RICO Stmt. ¶¶ 5(f), 16.

[68] One Plaintiffs group, *O'Neill,* asserted in their RICO statement, though not their complaint, a violation of § 1962(b), which applies to "acquisition injury."  *O'Neill* RICO Stmt. ¶ 1; *O'Neill* ¶¶ 176-80.  Not only do the *O'Neill* Plaintiffs' RICO claims as a whole fail because they have not alleged a business or property injury, *see Burnett I*, 274 F. Supp. 2d at 100-01, but this claim also fails because "[w]ithout a distinct 'acquisition injury,'" which the *O'Neill* Plaintiffs do not allege, they "cannot state a cause of action under subsection 1962(b)."  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998).

Plaintiffs' § 1962(c) claims against Mr. Bin Mahfouz rest on nothing more than conclusory allegations.  Plaintiffs do not allege that Mr. Bin Mahfouz was a leader or direct participant in al Qaeda.[69]  Instead, they allege, at most, that Mr. Bin Mahfouz indirectly facilitated financial assistance to the al Qaeda enterprise through his leadership at NCB and his contributions to Blessed Relief Foundation and other unspecified Islamic charities.[70]  Even were that true, it is not enough:  "'A Defendant does not "direct" an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.'"  *In re Terrorist Attacks*, 349 F. Supp. 2d at 828 (internal citation omitted).

**Section 1962(d)**.  Plaintiffs' § 1962(d) claims fail on similar grounds.  "'[T]o state a claim under [§ 1962(d)], the complaint must allege some factual basis for a finding of a conscious agreement among the defendants.'"  *In re Terrorist Attacks*, 349 F. Supp. 2d at 827 (internal citation omitted).  Plaintiffs here have not done so.  Although Plaintiffs allege in one form or another the conclusion that all Defendants generally conspired to commit acts of racketeering activity,[71] they offer no *facts* to support an inference that Mr. Bin Mahfouz consciously *agreed* with other Defendants to commit any acts in furtherance of the alleged al Qaeda RICO conspiracy.

---

[69] Two groups even admit that Mr. Bin Mahfouz "does not appear to be an employee, officer or director of the Enterprise [al Qaeda]."  *Cantor Fitz.* RICO Stat. ¶ 6(c); *NY Marine* RICO Stmt. ¶ 6(c).

[70] *E.g.*, *Fed. Ins.* ¶ 628; *Cantor Fitz.* ¶ 190; *Contin. Cas.* ¶ 610; *see also Fed. Ins.* RICO Stmt. ¶ 6; *Cantor Fitz.* RICO Stat. ¶¶ 2, 6; *Contin. Cas.* RICO Stmt. ¶¶ 2, 6.  Most of the Plaintiffs do not even go that far.  *Euro Brokers* and *World Trade Center* simply allege that Defendants "participated directly or indirectly" in the al Qaeda enterprise "through numerous patterns of racketeering activity." *Euro Brokers* ¶ 168; *WTC* ¶ 1140; *see also Euro Brokers* RICO Stmt. ¶ 6; *WTC* RICO Stmt. ¶ 6.  *NY Marine* and *O'Neill* even more vaguely claim only that "[i]n furtherance of their conspiracy to commit acts of international terrorism against the United States, its nationals and allies, the defendants engaged in a pattern of racketeering activity . . . ."  *NY Marine* ¶ 66; *O'Neill* ¶ 177; *see also NY Marine* RICO Stmt. ¶ 6; *O'Neill* RICO Stmt. ¶ 6.

[71] *See Fed. Ins.* ¶¶ 66, 72-74; *Fed. Ins.* RICO Stmt. ¶¶ 5(b), 14; *O'Neill* ¶ 23; *O'Neill* RICO Stmt. ¶¶ 5(b), 14; *WTC* ¶¶ 775, 1147-49; *WTC* RICO Stmt. ¶¶ 5(b), 14; *Contin. Cas.* ¶¶ 615-16; *Contin. Cas.* RICO Stmt. ¶¶ 5(b), 14; *Euro Brokers* ¶¶ 175-77; *Euro Brokers* RICO Stmt. ¶¶ 5(b), 14; *NY Marine* ¶¶ 45, 66; *NY Marine* RICO Stmt. ¶¶ 5(b), 14.

**C.    Plaintiffs Have Failed to State a Claim Under the Alien Tort Claims Act, the Torture Victim Protection Act, or any State Law Cause of Action**

Plaintiffs' remaining causes of action fail to state a claim against Mr. Bin Mahfouz for reasons largely addressed in the Court's January 18 opinion and order.  First, only two Plaintiffs groups bring an Alien Tort Claims Act ("ATCA") claim.  The *O'Neill* Plaintiffs' ATCA claim is deficient because none of the action's named Plaintiffs are aliens.  28 U.S.C. § 1350; *see In re Terrorist Attacks*, 349 F. Supp. 2d at 826.  The *Burnett-NY* ATCA claim should be dismissed for the reasons addressed in prior briefing.  KBM *Burnett* MTD at 34-37 (explaining that such a claim fails both for failure to adequately allege conspiracy or aiding and abetting and because the ATCA does not create secondary liability among private actors).  Second, with respect to Plaintiffs' Torture Victim Protection Act ("TVPA") claims, the *Ashton*, *Burnett-NY*, and *O'Neill* claims must be dismissed because they fail to allege that Mr. Bin Mahfouz acted under color of law.  *See In re Terrorist Attacks,* 349 F. Supp. 2d at 828.  Third, the *Federal Insurance, O'Neill,* and *World Trade Center* Plaintiffs' common law intentional tort claims are time-barred for reasons this Court has already addressed.  *See In re Terrorist Attacks,* 349 F. Supp. 2d at 829 (internal citation omitted).  The *Ashton* and *Burnett-NY* Plaintiffs' intentional tort claims, on the other hand, should be dismissed for the same reasons as explained in our prior briefs.  *See* KBM *Burnett* MTD at 37-38 (explaining that such claims fail for failure to allege (1) direct involvement in the 9/11 attacks; (2) "extreme and outrageous conduct" on the part of Mr. Bin Mahfouz himself; and (3) conduct by Mr. Bin Mahfouz directed at the plaintiffs themselves).  Fourth, the *Federal Insurance, NY Marine*, and *O'Neill* Plaintiffs' negligence claims should be dismissed for failing to "allege or identify a duty owed to Plaintiff" by Mr. Bin Mahfouz.  *In re Terrorist Attacks,* 349 F. Supp. 2d at 831.  Finally, the failure to identify a duty is similarly fatal to the *Cantor Fitzgerald* Plaintiffs' indemnity claim.  *See St. Pierre v. Dyer*, 208 F.3d 394, 401

24

(2d Cir. 2000) ("A claim for indemnification and contribution must be premised on the defendant's breach of a duty to the plaintiff -- whether grounded in express contract, implied contract, or tort.").[72]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against Mr. Bin Mahfouz should be dismissed.

Dated:  June 27, 2005                                      Respectfully submitted,

/s/ Geoffrey S. Stewart

_____

Geoffrey S. Stewart (GS-5413)                 Michael Nussbaum (MN-9981)
JONES DAY                                                   BONNER, KIERNAN, TREBACH
222 East 41st Street                                           & CROCIATA
New York, New York  10017-6702            1201 I Street, N.W.
Tel:  (212) 326-3939                                     Washington, D.C.  20005
Fax:  (212) 755-7306                                    Tel.:  (202) 712-7000
                                                                    Fax.:  (202) 712-7100

Stephen J. Brogan
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Defendant Khalid Bin Mahfouz*

---

[72]   Several Plaintiffs also listed counts for punitive damages in their complaints.  Punitive damages, however, are merely a form of relief, not an independent cause of action, and should be dismissed to the extent they are presented as such.  *Mayes v. UVI Holdings, Inc.*, 723 N.Y.S.2d 151, 157 (App. Div. 2001).