**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |
| *This document relates to:* | |

*Burnett v. Al Baraka Investment & Development Corp*. 03-CV-5738 (RCC)
*Burnett v. Al Baraka Investment & Develop. Corp.*, 03 CV 9849 (RCC)
*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC)
*Barrera v. Al Qaeda Islamic Army*, 03-CV-7036 (RCC)
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970 (RCC)
*Euro Brokers Inc. v. Al Baraka Inv. & Dev. Corp*, 04-CV-7279 (RCC)
*Federal Ins. v. Al Qaida*, 03-CV-6978 (RCC)
*New York Marine & General Ins. Co. v. Al Qaida*, 04-CV-6105 (RCC)
*Salvo v. Al Qaeda Islamic Army*, 03-CV-5071 (RCC)
*Tremsky v. Osama bin Laden*, 02-CV-7300 (RCC)
*World Trade Ctr. Props. L.L.C. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280 (RCC)

# PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF ABDULLAH AL RAJHI

June 28, 2005

# TABLE OF CONTENTS

*Page*

INTRODUCTION ............................................................................................................1

APPLICABLE LEGAL STANDARD .........................................................................3

    I.    FED. R. CIV. P. 12(B)(6) STANDARD ..............................................3

    II.   FED. R. CIV. P. 12(B)(2) STANDARD ..............................................4

ARGUMENT ...............................................................................................................5

    III.  PLAINTIFFS HAVE STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED ...................5

    IV.  PLAINTIFFS ADEQUATELY ALLEGE CAUSATION REGARDING ALL CLAIMS ......................5

    V.   THE COMPLAINT STATES A CLAIM AGAINST ABDULLAH AL RAJHI UNDER THE ANTI-TERRORISM ACT............................................................................9

    VI.  THE COMPLAINT STATES A CLAIM AGAINST ABDULLAH AL RAJHI UNDER THE ALIEN TORT CLAIMS ACT......................................................................10

    VII.  THE COMPLAINT ADEQUATELY ALLEGES COMMON LAW CLAIMS ..................................14

    VIII. THE PLAINTIFFS STATE CLAIMS AGAINST AL RAJHI UNDER RICO................................16

    IX.  THIS COURT HAS PERSONAL JURISDICTION OVER ABDULLAH AL RAJHI ........................18

    X.   THE PLAINTIFFS' INTENTIONAL TORT CLAIMS ARE NOT TIME BARRED .........................22

CONCLUSION...........................................................................................................23

# TABLE OF AUTHORITIES

*Page*

## CASES

*Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956, at *4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003) ............................11

*Albright v. Oliver*, 510 U.S. 266, *reh. denied*, 510 U.S. 1215 (1994) ............................................3

*All State Life Ins. Co. v. Linter Group Ltd.,* 782 F. Supp. 215 (S.D.N.Y. 1992)..........................22

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)..............................................................16, 17

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) ...............................................23

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2001) ..................................................................11

*\*Boim v. Quranic Literacy Institute, et al.*, 291 F.3d 1000 (th Cir. 2002) ........................... passim

*Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886 (1961)..............19

*Calder v. Jones*, 465 U.S. 783 (1984).........................................................................................20

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................3

*Cutco Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ........................................................4

*Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000)......................................................................21

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ......................................................................16

*Desidero v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198 (2nd Cir. 1999) ...............................4

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2nd Cir. 1992) ................................8

*Distefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001)..........................................4

*Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115 (D.D.C.2003)........................................11, 12

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D. N.Y. 2003)............................16

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir., 2004) ...............................16

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998).................................................7

*Friedman v. Hartmann*, 1994 U.S. Dist. LEXIS 9727 (S.D. N.Y. 1994)......................................16

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) .......................................................................4

*Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC*, 298 F.3d 136 (2d Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003)..................................................3

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ...................................................................8

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2nd Cir. 1990) ........................................8

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ..............................................7

*In re Agent Orange Prod. Liab.Litig.*, 2005 WL 729177, at *37-39 ............................................13

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D. N.Y. 2004)................................................................................23

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) ................................4

*In re South African Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004) ...............................13

*In re Terrorist Attacks on September 11, 2001,* 349 F.Supp.2d 765 (S.D.N.Y. 2005).......... passim

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................18

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)........................................5

*Johnson v. Nyack Hospital*, 86 F.3d 8 (2d Cir. 1996).....................................................................23

*Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004) ............................................................23

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1996)...................................................................11, 13

*LaBounty v. Adler*, 933 F.2d 121 (2d Cir. 1991) ..........................................................................3

*Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306 (E.D. La. 1994), *reconsideration denied*, 1995 WL 672835 (E.D. La. Nov. 9, 1995) ...................................23

*Martin v. Herzog*, 126 N.E. 814 (N.Y. 1920) .............................................................................16

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y., 1993)....................................................................17

*PDK Labs v. Friedlander,* 103 F.3d 1105 (2d Cir. 1997).............................................................5

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289 (S.D.N.Y.2003)....................................................................................................11, 13

*Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) ..............................................................................18

*Salinas v. United States*, 522 U.S. 52 (1997)..............................................................................17

*Samuels v. Air Trans. Local 504*, 992 F.2d 12 (2d Cir. 1993).......................................................3

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...............................................................................3, 4

*\*Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004)..........................................10, 11, 13

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)...............................................................................3

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998)......................................................................16

*United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991)..............................................................11

*Yeadon v. New York Transit Authority*, 719 F. Supp. 204 (S.D. N.Y. 1989) ...............................23

## STATUTES

CPLR 302(a)(2) ............................................................................................................................22

*Use of Federal Statutes in State Negligence Per Se Actions*, 13 Whittier L. Rev. 831 (1993)....................................................................................................................................15

## TREATISES AND ARTICLES

45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, at 253-59 (2d ed. 1990)...........................................................................................................21

## UNITED STATES CODE

18 U.S.C. § 2333........................................................................................................ passim

18 U.S.C. § 2339A.........................................................................................................7, 9

18 U.S.C. § 2339B.........................................................................................................7, 9

18 U.S.C. § 2339C.......................................................................................................7, 12

18 U.S.C. §§ 1961-65; Racketeer Influenced and Corrupt Organizations Act (RICO)......... passim

18 U.S.C. §§ 2331-38; Anti-Terrorism Act (ATA) ............................................................. passim

28 U.S.C. § 1350 Alien Tort Claims Act..................................................................10, 11, 12, 13

28 U.S.C. § 1603; Foreign Sovereign Immunities Act (FSIA).......................................................6

28 U.S.C. § 1653............................................................................................................4

## PUBLIC LAWS

S. Rep. 102-342.............................................................................................................5

## LEGISLATIVE HISTORY

137 Cong. Rec. S4511 04 (April 16, 1991) ..........................................................................22

Anti-Terrorism Act of 1990, Hearing Before the Sub-Committee on Courts and Administrative Practice, Senate Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991).............................................................................................21

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12...........................................................................................................6

## INTERNATIONAL LAW AND CONVENTIONS

Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. TREATY DOC. NO. 106-6, at 4, 37 I.L.M. 249, 253.................................................................12

Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16, 1970, 22 U.S.T. 1641.....................................................................................................12

International Convention for the Suppression of the Financing of Terrorism, G.A. Res. 54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999) .................................12

Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, Sept. 23, 1971, 24 U.S.T. 565........................................................................12

Tokyo Convention on Offences and Certain Other Acts Committed on Board Aircraft, Sept. 14, 1963, 704 U.N.T.S. 219..........................................................................12

United Nations Security Council Resolution 1373 (September 28, 2001) ................................2, 12

**RESTATEMENTS**

Restatement (Second) of Torts § 285 (1965) ...............................................................................15

# INTRODUCTION

On October 9, 2004, United States Attorney General John Ashcroft stated, "There is no moral distinction between those who carry out terrorist attacks and those who knowingly finance those attacks."[1]  In this action, plaintiffs, victims and survivors of the September 11, 2001 terrorist attacks, seek to hold accountable those who financed, materially supported, aided and abetted, conspired with or otherwise sponsored the terrorist network that perpetrated those attacks.  As demonstrated in the extensive and detailed Complaints, RICO Statements, and supplemental pleadings in this action there is an abundance of evidence that a network of banks, corporations, wealthy individuals, and so-called "charities" have aided, abetted, funded, and provided material support to al Qaeda and Osama bin Laden.  Without this crucial support, the al Qaeda terrorists could not have planned and carried out their attacks.  In fact, the Executive Branch views the funding of terrorism as a violation of international law:

> The international community has recognized the need to take action against terrorism and has condemned such acts of terrorism in United Nations Security Council [R]esolutions 1368 of September 12, 2001, 1373 of September 28, 2001, and 1390 of January 16, 2002.  These resolutions, taken together, obligate UN Member states, among other things to take necessary steps to *prevent the financing of terrorism*, to deny safe haven to terrorists, and to restrict the transfer of arms and arms-related material to terrorists.

Periodic Report on the National Emergency With Respect to Persons Who Commit, Threaten to Commit, or Support Terrorism (President George W. Bush) (Apr. 9, 2002) (Transmitted to Congress March 20, 2002) at 5 (emphasis added).  This view of terrorism financing and aiding and abetting terrorism has been echoed by Vice President Richard Cheney who stated, ''Any person … that supports, protects or harbors terrorists is complicit in the murder of the innocent

---

[1] John Roth, Douglas Greenburg, Serena Wille, *National Commission on Terrorist Attacks Upon the United States: Monograph on Terrorist Financing*, at 103.

and will have to be held to account."[2]  Furthermore, United Nations Security Council Resolution 1373, issued on September 28, 2001 pursuant to Article VII of the U.N. Charter thus making it legally binding upon U.N. Member states pursuant to Article 25 of the U.N. Charter, states that "all States shall … prevent and suppress the financing of terrorist acts."  Condemnation of aiding and abetting vis-à-vis financing of terrorism is subject to universal condemnation both in the United States and abroad.

Abdullah Al Rajhi was a central and knowing participant in this scheme.[3]  An Independent Task Force sponsored by the Council on Foreign Relations concluded in its 2002 report on Terrorism Financing that al Qaeda's financial network is "notably and deliberately decentralized, compartmentalized, flexible and diverse in its methods and targets."  *Burnett* TAC, Introduction at p. 203; *WTC* RICO ¶ 8.  It is characterized by "layers and redundancies"; it "raises money from a variety of sources and moves money in a variety of ways."  *Id.* at 204; *WTC* RICO at 8.

---

[2]  Remarks by Vice President Richard Cheney to the Heritage Foundation, October 10, 2003, and found at http://www.heritage.org/Research/MiddleEast/DickCheneySpeech.cfm.

[3]  Because the pleadings are similar and the issues are nearly identical, plaintiffs in *Ashton* (02-6977), *Burnett* (03-9849), *Continental Casualty* (04-5970), *Euro Brokers* (04-7279), *Federal Insurance* (03-6978), *New York Marine* (04-6105), and *WTC Properties* (04-7280) have elected to file a consolidated response to defendant's motion and plaintiffs in each action incorporate the arguments made herein.  The relevant pleadings are:  Fourth Amended Consolidated Master Complaint, *Ashton v. Al Qaeda Islamic Army* ["*Ashton*"], (02-CV-6977);  Complaint, *Barrera v. Al Qaeda Islamic Army* ["*Barrera*"], (03-CV-7036); Amended Complaint, *Burnett v. Al Baraka Inv. & Dev. Corp.*, (03-CV-5738); Third Amended Complaint, *Burnett v. Al Baraka Inv. & Dev. Corp.*, (03-CV-9849) [collectively, "*Burnett TAC*"]; First Amended Complaint, *Continental Cas. Co. v. Al Qaeda* ["*Cont'l Cas.*"], (04-CV-5970); Complaint, *Euro Brokers Inc. v. Al Baraka Inv. & Dev. Corp.* ["*Euro Brokers*"], (04-CV-7279); First Amended Complaint, *Federal Ins. v. Al Qaida* ["*Fed. Ins.*"], (03-CV-6978)'; First Amended Complaint, *New York Marine & Gen. Ins. Co. v. Al Qaida* ["*NY Marine*"], (04-CV-6105); Consolidated First Amended Master Complaint, *Salvo v. Al Qaeda Islamic Army* ["*Salvo*"], (03-CV-5071); Amended Complaint, *Tremsky v. Osama bin Laden* ["*Tremsky*"], (02-CV-7300); Complaint, *World Trade Cent. Prop. LLC v. Al Baraka Inv. & Dev. Corp.* ["*WTC*"], (04-CV-7280); RICO Statement Applicable to Defendants Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, *Cont'l Cas.* ["*Cont'l Cas.* RICO"]; RICO Statement Applicable to Defendats Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, *Euro Brokers* ["*Euro Brokers* RICO"]; Amended RICO Statement Applicable to Defendats Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, *Fed. Ins.* ["*Fed. Ins.* RICO"]; and RICO Statement Applicable to Defendats Sulaiman Abdulaziz Al Rajhi, Abdullah Sulaiman Al Rajhi and Saleh Abdulaziz Al Rajhi, *WTC* ["*WTC* RICO"].  Plaintiffs incorporate herein Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Sulaiman Al Rajhi.

In his motion to dismiss, defendant Abdullah Al Rajhi not only seeks to exploit the decentralized and compartmentalized nature of the network he helped set up, he attempts to redraft, oversimplify and grossly generalize the very specific and extensive body of allegations against him.  In so doing, Abdullah Al Rajhi attempts to create a complete distortion and re-characterization of the allegations against him.  Viewing the allegations as pled, however, demonstrates that Abdullah Al Rajhi is a central participant who knowingly provided material support to al Qaeda through a wide variety of means and methods.

Abdullah Al Rajhi provided essential and material support to al Qaeda through his active involvement and participation in the financial and "charitable" al Qaeda network.

## APPLICABLE LEGAL STANDARD

### I.        Fed. R. Civ. P. 12(b)(6) Standard

Motions to dismiss pursuant to Rule 12(b)(6) are highly disfavored.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*; *Samuels v. Air Trans. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993); *In re Terrorist Attacks on September 11, 2001,* 349 F.Supp.2d 765, 825 (S.D.N.Y. 2005); *accord Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002).  In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts must presume that all well-pleaded allegations are true, resolve all doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party.  *Albright v. Oliver*, 510 U.S. 266, 267, *reh. denied*, 510 U.S. 1215 (1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991); *In re Terrorist Attacks on September 11, 2001,* 349 F.Supp.2d at 825 (citing *Desidero*

*v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2nd Cir. 1999)).   "The issue is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims." *Scheuer v. Rhodes*, 416 U.S. at 236; *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) (holding court's task in addressing Rule 12(b)(6) motions "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.").   Based on the allegations contained in the *Burnett* TAC, Abdullah Al Rajhi has failed to meet the burden of showing that the allegations regarding him are insufficient to withstand scrutiny pursuant to Rule 12(b)(6).   Therefore, his motion should be denied.

## II.      Fed. R. Civ. P. 12(b)(2) Standard

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the minimal burden of showing a factual basis upon which the court may exercise personal jurisdiction over the defendant. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).  In this regard, at the pleading stage, the plaintiff need only make a *prima facie* showing of personal jurisdiction in order to defeat a defendant's 12(b)(2) motion.   *Distefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  In ruling on the motion, the Court should resolve factual discrepancies appearing in the record in favor of the Plaintiffs.  *Id.* at 84.

In making their *prima facie* case for personal jurisdiction, however, plaintiffs are not limited to their pleadings.  Rather, that case may be established through pleadings and affidavits. *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).   The relevant statutory scheme anticipates and allows for liberal amendments as to jurisdiction.  *See* 28 U.S.C. § 1653.  That is particularly true where the factual predicates are complex and the parties numerous, as herein. Moreover, in evaluating plaintiffs' *prima facie* showing of jurisdiction, the Court must construe all pleadings and affidavits in the light most favorable to plaintiffs and resolve all doubts in

plaintiffs' favor. *PDK Labs v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993).

# ARGUMENT

## III.   Plaintiffs Have Stated Claims Upon Which Relief can be Granted

The Plaintiffs in the Complaints have alleged that Abdullah Al Rajhi provided monetary and other support to the SAAR network, and that the SAAR network knowingly supported the terrorist activities of al Qaeda. *Burnett* TAC, ¶ 86, 261, 266; *WTC* ¶¶ 133, 435, 440; *Euro Brokers* ¶ 96; *WTC* and *Euro Brokers* RICO Statements ¶ 5(f) and (g), Exhibit A; *Continental* ¶¶ 357-60, 467-68; *Continental* RICO Statement, Exhibit A; *Federal* FAC ¶¶ 226, 231, 232; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶357, 373, 466, 471; *Tremsky* AC ¶ 53, 150, 155; *Federal* Plaintiffs' Amended RICO Statement Applicable to Suleiman Abdel Aziz Al-Rajhi, Saleh Abdulaziz Al-Rajhi, and Abdullah and Suleiman Al-Rajhi ("*Federal* RICO") at Exhibit A. These allegations sufficiently state a cause of action against Abdullah Al Rajhi. In addition the Complaint provides allegations directed against all Defendants collectively stating that all defendants participated in a conspiracy to support al Qaeda and its stated goals. *Burnett* TAC Introduction, pp. 199-200, 203-206, 217-218; ¶ 89, ¶¶ 631-722. FAC ¶¶ 72, 73, 623-626; *Salvo* 1AC ¶5; *NY  Marine* 1AC, ¶44, 45, 51-53; *Tremsky* AC Introduction pp. 7-8, 11, 19-20; ¶ 56; *Federal* RICO. Thus, the *Burnett* TAC is sufficient under Rule 12.

## IV.   Plaintiffs Adequately Allege Causation Regarding All Claims

Congress' rationale as to the extent of liability under the ATA is directly related to the issue of proximate causation. "The Senate Report on Section 2333(a) emphasized that, *by imposing liability along the causal chain of terrorism, it would interrupt or at least imperil, the flow of money.*" Senate Report on Section 2333(a), S. Rep. 102-342 at 122 (emphasis added), cited in *Boim v. Quranic Literacy Institute, et al.*, 291 F.3d 1000 (th Cir. 2002), 291 F. 3d at

1011.  Plaintiffs adequately allege causation under the ATA and the other legal theories pled.

In *Boim*, the Seventh Circuit found there would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.  *Id.* at 1021.  "The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts."  *Id.*  Herein, as in *Boim*, the Court of Appeals made clear "(t)he defendants repeatedly confuse what must be alleged with what must be proved.  **The plaintiffs need not set out in detail all of the facts on which they base their claim**."  *Id.*  at 1025 (emphasis supplied).   Ultimately, Plaintiffs must show that Abdullah Al Rajhi knew of or had to know of al Qaeda's illegal activities, that he desired to help those activities succeed, and he engaged in some act to help the illegal activities.  *Id.*  at 1023. At this stage of the litigation, Plaintiffs' responsibility is to include the requisite allegations regarding the cause of action rather than "set out in detail all of the facts on which they base their claim."  This burden has been met.

The *Boim* Court found that plaintiffs' general accusations such as:  defendants were engaged in raising and laundering money for [the terrorist organization]; defendants raised and channeled funds to the terrorist organization to finance terrorist activity; and, the victim was attacked by the terrorists, were sufficient allegations for Rule 12 purposes.  The Court held that plaintiffs "**need only give Defendants fair notice of what their claim is and the grounds upon which it rests.**"  *Id.* at 1024 (emphasis supplied).  In addressing an analogous material support of terrorism claim in the context of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, *et seq.*, the U.S. District Court for the District of Columbia stated,

> [A] plaintiff need not establish that the material support or resources
> provided by the defendant contributed directly to the act from which his

> claim arose  . . . sponsorship of a terrorist group which causes the personal
> injury of a United States national alone is sufficient.

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 17 (D.D.C. 1998).  The Plaintiffs' allegations

herein meet this standard.

Similarly, the Ninth Circuit held in *Humanitarian Law Project v. Reno*, 205 F.3d 1130,

1136 (9th Cir. 2000), that the knowing provision of "material support" to a designated terrorist

entity violates 18 U.S.C. § 2339B, regardless of whether the donor intended to support the

terrorist activities of the group and regardless of whether the particular dollars provided to the

organization can be traced to the resulting acts of terrorism.  The Ninth Circuit explained:

> [A]ll material support given to such organizations aids their unlawful
> goals…. More fundamentally, money is fungible; giving support intended
> to aid an organization's peaceful activities frees up resources that can be
> used for terrorist acts.

*Id*.  Section 2339B recognizes that even the provision of humanitarian or "peaceful" support to

such a group inevitably redounds to the benefit of the group's terrorist purposes.[4]  Congress, by

enacting 18 U.S.C. § 2339C, further clarified that direct causation of the terrorist act in question

was unnecessary in the funding of terrorism by stating "it shall not be necessary that the funds

were actually used to carry out a predicate act."  18 U.S.C. § 2339C(a)(3).

Under *Boim*, 18 U.S.C. §§ 2339A and 2339B were used to discern Congressional intent

regarding what constitutes material support of international terrorism.  Boim, 291 F.3d at 1016.

The Seventh Circuit held:  "No timing problem arises because sections 2339A and 2339B merely

elucidate conduct that was already prohibited by section 2333."  *Id.*  The same rationale applies

for  18 U.S.C. § 2339C.  Defendant does not have to participate in or even know about, the

*specific* bad act that ultimately harms the victim.  Defendant need only assist the terrorist group

---

[4] As noted above, the Seventh Circuit in *Boim* held that § 2333 incorporates the standards of § 2339B because it would make no sense to conclude, "that Congress imposed criminal liability . . . on those who financed terrorism, but did not intend to impose civil liability on those same persons. . ." 291 F.3d at 1014.

knowing that the assistance would lead to wrongful and harmful acts.  *See also Halberstam v. Welch*, 705 F.2d 472, 483-485 (D.C. Cir. 1983); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2nd Cir. 1990); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2nd Cir. 1992)(abrogated on other grounds).  Even small donations made knowingly and intentionally in support of terrorism may meet the standard for civil liability under Section 2333.  *Boim,* 291 F. 3d at 1015.

Substituting the situation of this case into the framework of *Halberstam*, it is not necessary for Plaintiffs to allege or prove that Abdullah Al Rajhi knew specifically that al Qaeda was going to commit the precise atrocities of September 11th.  Rather, when Abdullah Al Rajhi and other Defendants provided funds or other material support to al Qaeda, it was enough that they knew it was involved in terrorist activity purposefully directed at the United States.  *Burnett* TAC ¶¶ 86, 89, 261, 266, 631-34; *WTC* ¶¶ 133, 226, 435, 1121-1124; *Euro Brokers* ¶ 96; *WTC* and *Euro Brokers* RICO Statements ¶ 5(b); *Continental* ¶¶ 357-60, 467-68; *Continental* RICO Statement, Exhibit A; *Salvo* 1AC ¶357, 460, 466, 71; *NY Marine* 1AC ¶51-53; *Tremsky* AC ¶¶ 53, 56, 150; *Federal* FAC ¶ 77 and *Federal* RICO.

The Plaintiffs' allegations about the Defendants' material support of al Qaeda, which targets the United States, satisfies the proximate cause analysis.  Plaintiffs also maintain aiding and abetting and conspiracy claims under 18 U.S.C. § 2333 against Defendants, including Abdullah Al Rajhi.  An aiding and abetting claim will require the Plaintiffs to prove, at a later point in the litigation, that [the donees] knew about [the terrorist organization's] illegal operations and provided aid to [the terrorist organizations] with the intent to facilitate those illegal activities.  *Boim*, 291 F.3d at 1024.  That is precisely what the Plaintiffs allege in regard to Abdullah Al Rajhi, that he knew of the illegal activities of al Qaeda and other terrorist groups,

and that the SAAR network, supported terrorism and al Qaeda, and Abdullah Al Rajhi continued to provide aid to the SAAR network to facilitate these illegal activities. *Burnett* TAC Introduction at 199-200, 203-206, 217-218; ¶¶ 86, 252, 261, 266; *WTC* ¶¶ 1-3, 8-11, 36, 37, 215, 219, 273, 426, 435, 440; *Euro Brokers* ¶¶ 6, 92, 96; *WTC* and *Euro Brokers* RICO Statements ¶ 5(f) and (g), Exhibit A; *Federal* FAC ¶¶ 226, 228, 231, 232; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶357, 373, 466, 471; *Tremsky* AC Introduction pp. 7-8, 11, 19-20; ¶¶ 53, 141, 150, 155; *Federal* RICO. *See also* Testimony by Dr. Dore Gold, President of the Jerusalem Center for Public Affairs and former Israeli Ambassador to the United Nations U.S. Senate Committee on Governmental Affairs, Thursday, July 31, 2003.

**V.      The Complaint States a Claim Against Abdullah Al Rajhi Under the Anti-Terrorism Act**

The ATA, 18 U.S.C. § 2331 *et seq.* creates a private cause of action for injuries resulting from international terrorism. 18 U.S.C. § 2333. There can be no doubt that the acts of September 11th were acts of "international terrorism" within the meaning of 18 U.S.C. § 2331 *et seq. See Smith,* 247 F. 3d 532, *supra*. In *Boim*, the court recognized two theories on which a plaintiff can proceed. *See Boim*, 291 F.3d at 1009. First, the court concluded, a plaintiff may recover under § 2333 if the defendants violated 18 U.S.C. §§ 2339A and 2339B, which criminalize the provision of "material support or resources" to terrorists and foreign terrorist organizations, respectively. *Id.* at 1012-14. Provision of such support gives rise to civil liability under § 2333 where the support was material -- that is, of the type that implies the element of knowing or intentional support. *Id.* at 1015.

The second theory of liability endorsed in *Boim* permits recovery where the defendants have aided and abetted an act of international terrorism. *Id.* at 1021. The court reasoned that "although the words 'aid and abet' do not appear in the statute, Congress purposely drafted the

9

statute to extend liability to all points along the causal chain of terrorism." *Id.* at 1019-20.  The court stated that the failure to impose aider and abettor liability on those who knowingly and intentionally funded acts of terrorism would thwart "*Congress' clearly expressed intent to cut off the flow of money to terrorists at every point along the causal chain of violence*." *Id.* at 1021 (emphasis supplied).

Here, the Complaint adequately alleges that Abdullah Al Rajhi, and the other Defendants, provided "material support or resources" and "aided and abetted" al Qaeda terrorists and that they did so "knowingly and intentionally, resulting in the causal chain of violence." *Burnett* TAC ¶ 267, ¶¶ 645-652; *WTC* ¶¶ 441, 1125-1131; *Euro Brokers* ¶¶ 151-158; *Federal* FAC ¶¶ 624-626; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶472; *NY Marine* 1 AC ¶51-53; *Tremsky* AC ¶¶ 156, 230; *Federal* RICO.  Indeed, the Introduction to the Complaint alleges as to all Defendants:

> Defendants knew or reasonably should have known they were providing material support to terrorists and terrorist organizations who committed the September 11, 2001 savagery that murdered thousands of innocent people.  Defendants clearly knew or should have known, they were providing material support, aiding and abetting and enabling the terrorists that brutalized America and the world on September 11, 2001.

*Burnett* TAC, Introduction, p. 217.  *Federal* FAC ¶¶ 70-74.

## VI.  The Complaint States a Claim Against Abdullah Al Rajhi Under the Alien Tort Claims Act

In *Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004), the Supreme Court held that the ATCA creates a cause of action for a certain set of tort claims, including, at a minimum, "violation of safe conducts, infringement of the rights of ambassadors, and piracy." 124 S.Ct. at 2761. The Court further held that the ATCA provides jurisdiction for causes of action "based on the present-day law of nations" to the extent that such claims rest "on a norm of international character accepted by the civilized world and defined with a specificity comparable to the

10

features of the 18th-century paradigms" of the other three claims. 124 S.Ct. at 2761-62. The

crucial question for ATCA purposes, therefore, is *not* whether Abdullah Al Rajhi is a private or

state actor, *defacto* or otherwise, but whether the type of action alleged amounts to a violation of

the law of nations, or constitutes one of three specific violations, namely: "violation of safe

conducts, infringement of the rights of ambassadors, and piracy." Sosa, 124 S.Ct. at 2761

Here, plaintiffs' claims may be asserted under the ATCA under either prong established by the

Supreme Court. Airplane hijacking is the modern-day equivalent of piracy. Thus, plaintiffs'

claims, which arise from the four airplane hijackings on September 11, 2001, are cognizable

under that statute. Furthermore, airplane hijacking has been recognized by numerous courts as

the kind of specific violation of international law covered by the ATCA.  *See Bigio v. Coca-Cola

Co.*, 239 F.3d 440, 447-48 (2d Cir. 2001); *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1996);

*Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115, 120 (D.D.C.2003); *Presbyterian Church of

Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 309 (S.D.N.Y.2003); *Abdullahi v. Pfizer,

Inc.*, No. 01CIV8118, 2002 WL 31082956, at *4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other

grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003); *see generally United States v. Yunis*, 924

F.2d 1086, 1092 (D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so

clearly condemned under the law of nations that states may assert universal jurisdiction to bring

offenders to justice, even when the state has no territorial connection to the hijacking and its

citizens are not involved").  Although these cases pre-date the Supreme Court's ruling in *Sosa*,

their holding is entirely consistent with the test adopted by the Supreme Court

The murderous attacks of September 11, 2001 were also specific acts of terrorism that are

universally condemned under international law.  *See* U.N. Security Council Resolution 1373

(September 28, 2001).[5]   The perpetrators violated numerous pre-existing, widely ratified, international anti-terrorism conventions, including, but not limited to:  the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, Dec. 16, 1970, 22 U.S.T. 1641; the Tokyo Convention on Offences and Certain Other Acts Committed on Board Aircraft, Sept. 14, 1963, 704 U.N.T.S. 219; and, the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, Sept. 23, 1971, 24 U.S.T. 565 (making aircraft hijacking and other offenses committed aboard aircraft international criminal offenses).   The attacks also were a violation of the more recent International Convention for the Suppression of Terrorist Bombings. See Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. TREATY DOC. NO. 106-6, at 4, 37 I.L.M. 249, 253.   Moreover, the financing of these acts is a serious crime under international law.   International Convention for the Suppression of the Financing of Terrorism, G.A. Res. 54/109, U.N. Gaor, 4th Sess., U.N. Doc. A/Res/54/109 (1999). Accordingly, such acts of terrorism – and the financing or material support of them – committed by private parties are actionable and can give rise to liability under the ATCA.  *See, e.g., Islamic Salvation Front*, 993 F. Supp. at 5 (describing "terrorist activities" alleged in complaint), 18 U.S.C. §§ 2333, 2339C.

The alien Plaintiffs unquestionably have alleged facts sufficient to state a cause of action under the ATCA.   The Complaint describes in detail how the Islamic charitable system and donor/sponsors like Abdullah Al Rajhi have been utilized to finance illegal al Qaeda activities, including airplane hijacking, targeted at the United States.  *Burnett* TAC Introduction, pp. 199-200, 203-205, ¶ 86, 252, 261, 266; *WTC* ¶¶ 1-3, 8-11, 215, 219, 273, 400, 426, 435; *Euro*

---

[5]  U.N. Security Council Resolution 1373 was issued pursuant to the Article VII powers of the U.N. Security Council.  Therefore, it is legally binding on all member States of the U.N. pursuant to Article 25 of the U.N. Charter. Resolution 1373 determined that all States are obligated to prevent and suppress the financing of terrorists acts; to criminalize the provision of funds to carry out such acts; and to prohibit persons or entities from making any funds available for the benefit of those who commit, facilitate or participate in the commission of terrorist acts.

*Brokers* ¶¶ 6, 92, 96; *WTC* and *Euro Brokers* RICO Statements ¶ 6(b), 14, Exhibit A; *Federal* FAC ¶¶ 70-78, 79-83; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶111, 242, 357, 373, 466, 471; *NY Marine* 1AC ¶41-43; *Tremsky* AC Introduction pp. 7-8, 11, 19-20; ¶¶ 53, 141, 150, 155; *Federal* RICO.  The Complaint also alleges that al Qaeda, in particular, has used the Islamic charity system to funnel money – and hatred – through Islamic charities, with the charities', and thus, the donor's, material support.  *Id.* at pp. 207-208; *WTC* ¶ 16; *Euro Brokers* ¶ 35.  Moreover, the Plaintiffs make allegations specific to Abdullah Al Rajhi and other Defendants alleging their active monetary sponsorship of al Qaeda sponsors.  *Burnett* TAC ¶¶ 261-267, 86, 252, 266; *WTC* ¶¶ 435-441, 133, 426, 440; *Euro Brokers* ¶¶ 92, 96; *WTC* ¶¶ 1-3, 8-11, 215, 219, 273, 400, 426, 435; *Euro Brokers* ¶¶ 6, 92, 96; *WTC* and *Euro Brokers* RICO Statements ¶ 6(b), 14, Exhibit A; *Federal* FAC ¶¶ 222-232; *Salvo* 1AC ¶466-472, 357, 373, 471; *Tremsky* AC ¶¶ 53, 141, 150-156; *Federal* RICO.

It is sufficient for the Plaintiffs to allege, as they have, that Abdullah Al Rajhi with other of the Defendants, conspired with or aided and abetted in a violation of the law of nations. *Burnett* TAC ¶¶ 653-57; *WTC* ¶¶ 1174-1179; *Euro Brokers* ¶¶ 178-183; *Tremsky* AC ¶¶ 229-231; *Federal* FAC ¶¶ 618-621.  Indeed, many federal courts have recognized that ATCA liability can be based on conspiratorial relationships or theories of aiding and abetting.[6] Thus the Plaintiffs' have alleged that the Defendant has aided in the commission of the modern day equivalent of piracy, and that the Defendant has violated present day international law.  Under *Sosa*, 124 S.Ct. 2739, this is enough to subject the Defendant to the ATCA.

---

[6]  *See, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc.*, Case No. 01-CV-9882 (DLC), slip op. at 14 (S.D.N.Y. June 13, 2005) (holding that corporate liability and concerted action liability were available pursuant to the ATS); *In re Agent Orange Prod. Liab.Litig.*, 2005 WL 729177, at *37-39 (citing to *Kadic*, 70 F.3d 232, at 244-45 (ATS contemplates liability for defendants who have acted in concert with a state to commit torture and other gross human rights violations); *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 826; *cf. In re South African Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004) (holding aiding and abetting under ATCA non-permissible in a case specifically cited in *Sosa* as infringing upon foreign affairs powers of the Executive Branch).

**VII.    The Complaint Adequately Alleges Common Law Claims**

With respect to plaintiffs' claims for wrongful death, aiding and abetting, survival, negligent and intentional infliction of emotional distress, conspiracy, *trespass,* and negligence, Abdullah Al Rajhi's arguments are a variation on a single theme.  Ignoring the allegations of the Complaints, about his knowing support of terrorism, Abdullah Al Rajhi continues to insist that the Complaints only provide legally insufficient conclusory statements.  Because the Complaints allege substantially more than that, they properly assert these common law claims.

*Indeed, this Court has already held that plaintiffs may maintain common law claims against parties who conspired with, or aided and abetted, al Qaeda.  <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 830.  As the Plaintiffs have presented detailed factual allegations regarding Abdullah al Rajhi's direct and extensive sponsorship of al Qaida, the have stated valid claims under common law theories.*

*Moreover,* Plaintiffs' Complaint*s* allege that Abdullah Al Rajhi breached the duties encompassed in the norms of conduct found in international law.

With respect to plaintiffs' claims for wrongful death, aiding and abetting, survival, negligent and intentional infliction of emotional distress, conspiracy, and negligence, Abdullah Al Rajhi's arguments are a variation on a single theme.  Ignoring the allegations of the *Burnett* TAC, about his knowing support of terrorism, Abdullah Al Rajhi continues to insist that the *Burnett* TAC only provides legally insufficient conclusory statements. Because the complaint alleges substantially more than that, it properly asserts these common law claims.

Plaintiffs' Complaint alleges that Abdullah Al Rajhi breached the duties encompassed in the norms of conduct found in international law. Plaintiffs pled that Abdullah Al Rajhi was engaged in a conspiracy to provide funding to al Qaeda and that such funding was a proximate cause of Plaintiffs' damages. *Burnett* TAC ¶¶ 86, 89, 261, 266, 658-88; *WTC* ¶¶ 133, 226, 435,

440, 1151-1173; *Euro Brokers* ¶¶ 96, 144-150, 184-189; *WTC* and *Euro Brokers* RICO Statements ¶ 5(b), (f), (g), 8, 14, 16; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶357, 360, 466, 471, 599-605; *NY Marine* 1AC ¶51-53, 55-64, 68-71, 76-80; *Tremsky* AC ¶¶ 53, 56, 150, 155, 232-256; *Federal* FAC ¶¶ 624-626. These allegations constitute adequate notice of a claim for negligence. The truth of these allegations must be determined at trial, not in the context of a motion to dismiss.

Plaintiffs have an additional basis for their negligence claims. The *Burnett* TAC alleges that Abdullah AL Rajhi violated the ATA and ATCA. These statutes define the duty Abdullah Al Rajhi owed to Plaintiffs. Negligence *per se* is a concept that developed at common law and found its way into the jurisprudence of all of the states. *Use of Federal Statutes in State Negligence Per Se Actions*, 13 Whittier L. Rev. 831 (1993). Negligence *per se* establishes that statutes may be used to define the scope of duty owed by an actor to an individual who has been injured as a result of his conduct. *Id*.

> The Restatement (Second) of Torts § 285 (1965) states:

> The standard of conduct of a reasonable man may be … (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, if its purpose is found to be exclusively or in part:

> (a)    to protect a class of persons which includes the ones whose interest is invaded, and
> (b)    to protect the particular interest which is invaded, and
> (c)    to protect that interest against the kind of harm which has resulted, and
> (d)    to protect that interest against the particular hazard from which the harm results.

The Restatement Second goes on to say: "The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself." Rest. 2d of Torts § 288 B (1). This approach is well

established.  On this subject, Judge Cardozo stated:

> We think the unexcused omission of the statutory signals is more than
> some evidence of negligence.  It is negligence in itself…  By the very
> terms of the hypothesis, to omit, willfully or heedlessly, the safeguards
> prescribed by law for the benefit of another that he may be preserved in
> life or limb, is to fall short of the standard of diligence to which those who
> live in organized society are under a duty to conform.

*Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920).

## VIII.   The Plaintiffs State Claims Against Al Rajhi Under RICO

The complaints and RICO Statements allege sufficient involvement by Abdullah al
Rajhi in the Enterprise - alternatively defined as al Qaeda, the al Qaeda Movement or Radical
Muslim Terrorism - to sustain claims under Sections 1962(a), (c) and (d). Abdullah al Rajhi
correctly states that a plaintiff asserting a civil claim under 1962(c) must allege that the
defendant participated in the operation or management of the enterprise. *Dubai Islamic Bank v.
Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003). However, such "discretionary
authority" has been described as "a relatively low hurdle for plaintiffs to clear" in the Second
Circuit. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir., 2004),
citing *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286,
309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998).  Moreover, as a
general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint,
he will have available sufficient factual information regarding the inner workings of a RICO
enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO
enterprise or participated in the 'operation or management' of the enterprise." *Friedman v.
Hartmann*, 1994 U.S. Dist. LEXIS 9727, 4-5 (S.D. N.Y. 1994).

"[T]he requirements for RICO's conspiracy charges under 1962(d) are less demanding."
*Id.* at 376.  All that is required is that the conspirator "intend to further an endeavor which, if

completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."  *Id.* at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)).  "Although parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y., 1993)

The plaintiffs have satisfied the pleading standards applicable to their 1962(c) and 1962(d) claims, as set forth above.  The Plaintiffs allege that Abdullah al Rajhi is identified on the Golden Chain as one of al Qaeda's principal individual financiers, and that he *knowingly* provided funding and financial services to al Qaeda.  The Plaintiffs further allege that Abdullah al Rajhi established a network of ostensible charities, known as the SAAR Network, to serve as a complex fundraising and money laundering mechanism for al Qaeda, and used his authority as the head of al Rajhi Bank and as a Director of IIRO and MWL to facilitate the sponsorship of al Qaeda through those entities.  In view of the allegations regarding Abdullah al Rajhi's and pervasive sponsorship of al Qaeda's operations throughout the world, the Plaintiffs have adequately alleged that Abdullah al Rajhi played a direct and active role in the management and operation of al Qaeda's financial network, and that Abdullah al Rajhi knowingly conspired to further the objectives of the al Qaeda movement during the years leading up to the September 11th Attack. As such, the Plaintiffs have met their pleading burden in relation to their Section 1962(c) and 1962(d) claims, particularly given the fact that the plaintiffs have not yet been afforded the opportunity to conduct discovery.

Plaintiffs' Complaints and RICO Statements further allege that Al Rajhi engaged in conduct in furtherance of the enterprise which is actionable under section 1962(a). Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly

or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt …

to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in

acquisition of any interest in, or the establishment or operation of, any enterprise which is

engaged in, or the activities of which affect interstate or foreign commerce."  In the present case,

plaintiffs allege that Al Rajhi solicited funds from donors in the United States and throughout the

World under the guise of "charity" via the ostensible charities and banks he controlled and

diverted the funds collected to al Qaeda. Thus, the complaints and RICO statements plainly

allege that Al Rajhi derived income through a pattern of racketeering activity, including multiple

acts of mail and wire fraud, and invested that income in the enterprise. As the Supreme Court has

explicitly recognized that al Qaeda's terrorist endeavors, including the September 11th attacks,

directly affect interstate commerce, plaintiffs have undeniably stated RICO claims under Section

1962(a). *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks

"severely damaged the U.S. economy").

**IX.    This Court has Personal Jurisdiction Over Abdullah Al Rajhi**

Abdullah Al Rajhi also contends that this Court lacks personal jurisdiction over him.  However, a

federal court may exercise personal jurisdiction over a non-resident defendant when: (1) the

defendant is amenable to service of process pursuant to a statute or rule of court that authorizes

such an exercise; and, (2) such an exercise is consistent with due process of law.  *See*

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Service of process on

Abdullah Al Rajhi was demonstrably adequate.  Similarly, the evidence shows that an exercise of

jurisdiction by this Court would be consistent with due process of law because the *Burnett* TAC

alleges Abdullah Al Rajhi had adequate contacts with the United States, and that he purposely

directed his actions at residents of the United States when he financed al Qaeda, whose stated

purpose was targeting Americans.  As the Supreme Court has explained, "'[d]ue process,' unlike

18

some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 (1961).

Abdullah Al Rajhi has many business interests which include extensive dealings with American corporations, or corporations which do extensive business in the United States.  *See O'Neill* ¶ 40; Declaration of Justin Kaplan and Exhibits thereto.  While in *In re Sept. 11*, 349 F.Supp.2d at 812, the Court ruled that statements about unspecified Saudi Royal Family members having holdings in the U.S. was not enough to allow personal jurisdiction, in this instance the allegations go far beyond those made against Princes Sultan, Turki, and Mohammed. Specifically, Abdullah Al Rajhi and his family were the largest donors to the SAAR Foundation, which Abdullah Al Rajhi established and named after himself, and which was incorporated in Herndon, Virginia in 1983 with offices in Virginia, *Burnett* TAC ¶ 261; *WTC* ¶ 435; *WTC* and *Euro Brokers* RICO Statements, Exhibit A; *Continental* ¶ 467; *O'Neill* RICO Exhibit A; *Ashton* 4AC ¶¶337-338, 537, 559-562; *Salvo* 1AC ¶466; *Tremsky* AC ¶ 150; *Federal* RICO.  Abdullah Al Rajhi also does business in the U.S. through Mar-Jac Poultry, al-Watania Poultry, Mar-Jac Investments, and Piedmont Poultry, *Burnett* TAC ¶ 87; *WTC* ¶ 134;  *Continental* ¶¶ 360, 467; *O'Neill* RICO Exhibit A; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Salvo* 1AC ¶358; *Tremsky* AC ¶54; *Federal* RICO.  Thus Plaintiffs' have specifically alleged that Abdullah Al Rajhi has made numerous donations to a charity named after him that was headquartered in the United States, and he also conducts business in the United States through several corporate holdings.

Abdullah Al Rajhi has also purposefully directed his actions at the United States.  *See* Declaration of Justin Kaplan and Exhibits thereto.  In the context of an intentional tort claim, the Supreme Court has held that intentional conduct calculated to cause injury in the forum satisfies

the due process requirements for jurisdiction, even if *none* of the defendant's conduct took place in the forum. *Calder v. Jones*, 465 U.S. 783, 789 (1984). The *Calder* Court went on to distinguish the intentional tort, of which defendants were accused, from allegations of "untargeted negligence." 465 U.S. at 789. The Court held that jurisdiction was warranted because the defendants' intentional, and allegedly tortuous, actions were "expressly aimed at California." *Id*. Thus, the Court concluded: "An individual injured in California need not go to Florida to seek redress from person who, though remaining in Florida, knowingly caused the injury to California." *Id*.

Like the defendants in *Calder*, Abdullah Al Rajhi is accused of intentional tortious acts. Here, plaintiffs and their deceased loved ones were targeted because they were in America. Here, Plaintiffs allege that Abdullah Al Rajhi knowingly provided material support to terrorism targeted against the United States, by providing funds for that purpose to al Qaeda and organizations which funneled money to al Qaeda. *Burnett* TAC Introduction at 207-208, 212-213, 217-218; ¶¶ 86, 252, 261, 266; *WTC* ¶¶ 1, 13, 36, 133, 215, 219, 273, 426, 435, 440; *WTC* and *Euro Brokers* RICO Statements ¶ 5(b), (f), (g), 6(b), 8, 14, 16, Exhibit A; *Continental* ¶¶ 357-60, 467-68; *Continental* RICO Statement, Exhibit A; *See also Cantor* FAC ¶¶ 11, 107, 111, 185-192; *Cantor* RICO Statement at Response No. 2; *O'Neill* ¶ 23; *O'Neill* RICO ¶ 5(b)(g), 6(b), 14, Exhibit A; *Ashton* 4AC ¶¶ 337-338, 537, 559-562; *Federal* FAC ¶¶ 223, 226, 228, 231, 232; *Salvo* 1AC ¶357, 373, 471; *NY Marine* 1AC ¶41-43, 51-53; *Tremsky* AC Introduction pp. 7-8, 11, 19-20, ¶¶ 53, 141, 150, 155; *Federal* RICO. As alleged in the *Burnett* TAC, al Qaeda specifically targeted civilians in the United States, proclaiming that, "America is a state at war with us" and noting that "killing of women and the old and children of the war states . . . is permissible . . . ." *Burnett* TAC Introduction at 207; *WTC* ¶13. Thus, al Qaeda made no secret

of the fact that its intended target was citizens and residents of the United States.  At the heart of the  *Burnetts*' TAC, then, is the allegation that Abdullah Al Rajhi and others, "purposefully directed" activities at the United States by funding those whose "activities" included killing innocent people for no reason other than that they were Americans.

Indeed, given al Qaeda's explicit direction of terrorist activities at the United States, it can hardly be said that Abdullah Al Rajhi had no warning that he might be answerable in United States court for his conduct in supporting these acts.  In *Daliberti v. Iraq*, 97 F.Supp.2d 38 (D.D.C. 2000), the Court found that state sponsors of terrorism were provided sufficient warning of the seriousness with which the United States views terrorist attacks against Americans, that it was reasonable for them to held accountable for such acts in the courts of the United States.

In addition, while enacting the Anti-Terrorism Act of 1990 (hereinafter "ATA"), which Plaintiffs invoke, the Congress sought to lessen jurisdictional issues, such as those presented in the instant case.  The ATA "removes the jurisdictional hurdles in the courts confronting victims and it empowers victims with all the weapons available in civil litigation."  Anti-Terrorism Act of 1990, Hearing Before the Sub-Committee on Courts and Administrative Practice, Senate Committee on Judiciary 101st Cong., 2d Sess., at Cong. Rep. 8143 (1991).[7]

Abdullah Al Rajhi also is subject to jurisdiction here because, as alleged in the complaints and RICO Statements, he conspired with al Qaeda to attack the United States.  Courts within this circuit have recognized that they may assert jurisdiction over a defendant based on the activities of co-conspirators in the forum.  *See In re Terrorist Attacks on September 11, 2001,*

---

[7] If the Court determines that Plaintiffs' allegations are not enough to establish personal jurisdiction, then Plaintiffs seek leave to conduct discovery to determine the extent to which Defendant has targeted or purposefully availed himself of the Court's jurisdiction.and his personal contacts with the United States.  "[A] district court has discretion whether to hold in abeyance a decision on a motion to dismiss for lack of personal jurisdiction to enable a party to conduct discovery.  45A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351, at 253-59 (2d ed. 1990).

349 F. Supp. 2d at 805 (acts committed in New York by co-conspirators subject out of state defendant to jurisdiction under CPLR 302(a)(2)); *All State Life Ins. Co. v. Linter Group Ltd.,* 782 F. Supp. 215, 221 (S.D.N.Y. 1992).  For a further analysis of this Court's authority to exercise personal jurisdiction over the defendants in this action under this test, the Plaintiffs respectfully refer the Court to the discussion set forth on pp. 23-24 of the Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Perouz Sedaghaty."[8]

## X.    The Plaintiffs' Intentional Tort Claims Are Not Time Barred

The *Federal, Burnett and Baraka* Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not time-barred for two reasons. First, these claims are subsumed within plaintiffs' claims under the ATA, which imports into that federal cause of action "the remedies of American tort law." *See* 137 Cong. Rec. S4511 04 (April 16, 1991); *see also Boim*, 291 F.3d at 1010 (language and history of ATA "evidence[] an intent by Congress to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law"). To the extent that these claims have been

---

[8] The Defendant misreads the law when he argues that he is immune from suit pursuant to the ATSSSA.  Def. Mem. of Law at p.12 note 30.  The "exclusive remedies" provision upon which the Defendant relies clearly relates only to suits for damages against the airlines.  This is shown by the fact that Section 408(b), which houses the exclusive remedies provision at issue, directs itself to "LIMITATION ON AIR CARRIER LIABILITY" and follows subsection (a), which also limits itself to suits against the airlines:  (a) IN GENERAL.--Notwithstanding any other provision of law, liability for all claims, whether for compensatory or punitive damages, arising from the terrorist-related aircraft crashes of September 11, 2001, against any *air carrier* shall not be in an amount greater than the limits of the liability coverage maintained by the air carrier.  In any case, the Defendant's reliance on the ATSSSA to escape liability is wholly defeated by the will of Congress as expressed in the Act.  Under subsection (c) EXCLUSION.--"Nothing in this section shall in any way limit any liability of *any person* who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act."  Here, Plaintiffs have uniformly alleged that Defendant was a knowing participant in the September 11 attack by way of his role in the lending of material support to Al Qaeda and in his participation in a conspiracy to accomplish the same.  Thus, in asking the Court to grant him immunity from Plaintiffs' claims, the Defendant is asking the Court to misapply the ATSSSA and ignore the expressed will of Congress that authorizes suits such as the case at bar.  The Court should decline the Defendants' invitation to error.

"federalized" under the Anti-Terrorism Act, they are governed by federal law. *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) (federal law determines the "extent and nature" of claims brought under a federal statute). State statutes of limitation are inapplicable to federal common law claims. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). *See also Louisiana Land & Exploration Co. v. Unocal Corp.*, 863 F. Supp. 306, 309 (E.D. La. 1994), *reconsideration denied*, 1995 WL 672835 (E.D. La. Nov. 9, 1995) (holding that suits to enforce equitable rights created by federal law are not subject to state statutes of limitations, even when brought by private parties).

Moreover, all of the Plaintiffs' intentional tort claims arise from Abdullah al Rajhi's participation in the conspiracy to conduct terrorist attacks against the United States; a conspiracy designed to hide the identity of the participants from disclosure to the outside world. As a result, the statute of limitations was tolled until the Plaintiffs reasonably should have become aware of Abdullah al Rajhi's involvement within the conspiracy, itself a question of fact to be determined through discovery. *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 2004 U.S. Dist. LEXIS 3829 *17-18 (S.D. N.Y. 2004). Given the clandestine nature of the conspiracy in which FIBS participated, equitable principles require that the statute of limitations be tolled. *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").

## CONCLUSION

For the foregoing reasons, this Court should deny Abdullah Al Rajhi's motion to dismiss.

Respectfully submitted,

/s/

_____

Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

Attorneys for *Burnett* Plaintiffs

William N. Riley, Esq. (IN Bar #4941-49)
Amy Ficklin DeBrota, Esq. (IN Bar #17294-49)
PRICE WAICUKAUSKI RILEY & DEBROTA, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone:  (317) 633-8787

Attorneys for *Burnett* Plaintiffs

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
415 Madison Avenue
New York, NY 10017-1111
Telephone:  (212) 401-7600

Attorneys for *Euro Brokers* and *WTC Properties* Plaintiffs

Stephen A. Cozen (SC 1625)
Elliott R. Feldman (EF 8111)
Sean P. Carter (SC 0636)
Mark T. Mullen (MM 2384)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Telephone:  (215) 665-2000

Attorneys for *Federal* Plaintiffs

24

James Kreindler, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue, 18th Floor
New York, NY 10017-5590
Telephone:  (212) 687-8181

Attorneys for *Ashton* Plaintiffs

Robert M. Kaplan (RK1428)
FERBER FROST CHAN & ESSNER, LLP
530 Fifth Avenue, 23rd Floor
New York, New York 10036-5101
Telephone:  (212) 944-2200

Attorneys for *Continental* Plaintiffs

David H. Fromm, Esq. (DH-9334)
Frank J. Rubino, Jr., Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, New York 10017
Telephone:  (212) 983-8500

Attorneys for New York Marine and
General Insurance Company Plaintiffs

On behalf of all Counsel in the above-related cases