**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Ashton v. Al Qaeda Islamic Army*, 02-CV-6977
*Burnett v. Al Baraka Invest. & Devel. Corp.* 03-CV-5738
*Continental Casualty Co. v. Al Qaeda Islamic Army*, 04-CV-5970
*EuroBrokers, Inc. v. Al Baraka Invest.  & Devel. Corp.*,
*Federal Insurance Co. v. Al Qaida*, 03-CV-6978;
*New York Marine and General Insurance Co. v. Al Qaida*, 04-CV-6105;
*Salvo v. Al Qaeda Islamic Army*, 03-CV-5071
*Tremsky v. Osama bin Laden*, 02-CV-7300
*World Trade Center Properties LLC v. Al Baraka Invest. & Devel. Corp.* 04-CV-07280

# PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF SOLIMAN H.S. AL-BUTHE

July 8, 2005

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

APPLICABLE LEGAL STANDARDS ............................................................................................. 4

ARGUMENT ............................................................................................................................... 7

    I.    PLAINTIFFS HAVE SUFFICIENTLY PLED THE CAUSAL CONNECTION BETWEEN AHIF'S AND AL-BUTHE'S ACTIONS AND THE SEPTEMBER 11 TERRORIST ATTACKS ......................................................................................................... 7

    II.    AL-BUTHE IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' TORT CLAIMS ............. 9

        A.    Plaintiffs Sufficiently Plead Their Claims Under the ATA ........................ 9

        B.    Plaintiffs' Claims Under the Alien Tort Claims Act Ought Not Be Dismissed ................................................................................................ 10

        C.    Plaintiffs' Have Sufficiently Pled Their Common Law Claims ................ 11

        D.    Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed ........................................................................................ 11

    III.    THE PROPERTY DAMAGE PLAINTIFFS STATE RICO CLAIMS AGAINST AL-BUTHE ................................................................................................................ 11

        A.    The Insurance Company Plaintiffs Have Standing to Asset RICO Claims ....................................................................................................... 11

        B.    All of the Property Damage Plaintiffs Properly State RICO Claims ......... 13

    IV.    IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD ........................................................ 17

    V.    THIS COURT HAS JURISDICTION OVER AL-BUTHE .................................................. 20

CONCLUSION ............................................................................................................................ 21

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003) .................................................. 10

*Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ........................................................................................................................ 16

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) ............................................................................ 15

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2001) .................................................................. 10

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ........................................ 8, 10

*Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86 (D.D.C. 2003) ................ 3, 8, 9

*Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994) ................... 20

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ....................................................................... 5

*Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122 (D.D.C. 1984) ...................................... 20

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................ 4, 5, 6, 17

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ....................................................................... 15

*Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115 (D.D.C.2003) ............................................. 10

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D. N.Y. 2003) ........................... 15

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001) ....... 20

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ............................... 15

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 18

*Friedman v. Hartmann*, 1994 WL 376058 (S.D. N.Y. July 15, 1994) ......................................... 15

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ....................................................................... 4

*Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258 (1992) ................................................... 16

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005) ............. 9, 10

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1996) ........................................................................... 10

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993) ........................................................ 5

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) .............................................. 16

*Monahan v. NYC Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) .................................... 18

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993) ...................................................... 15

*National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221 (E.D.N.Y. 1999) ...................................................................................................... 12, 13, 16

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ...................................... 6, 7

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002) .................................................. 4, 5, 6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289 (S.D.N.Y.2003) .. 10

*Rasul v. Bush*, 124 S. Ct. 2686 (2004) ...................................................................... 14

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .......................................................... 13

*Salinas v. United States*, 522 U.S. 52 (1997) .............................................................. 15

*SEC v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997) ...................................................... 20

*Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004) ...................................................... 10

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2002) ............................ 5

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) .......................................................... 5, 7

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998) .................................................. 15

*United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991) ............................................ 14

*United States v. Turkette*, 452 U.S. 576 (1981) ........................................................ 14

*United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991) ............................................ 10

*Von Bulow v. Von Bulow*, 634 F. Supp. 1284 (S.D. N.Y. 1986) ................................ 17

*Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001) ........................ 4

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) .................................................. 4, 5

**Statutes**

18 U.S.C. § 1962(a) .................................................................................................... 14

18 U.S.C. § 1962(c) ................................................................................................ 15, 16

18 U.S.C. § 1962(d) ................................................................................... 15, 16

18 U.S.C. § 1964(c) ...................................................................................... 13

18 U.S.C. § 2334(a) ...................................................................................... 20

18 U.S.C. § 2334(b) ...................................................................................... 20

28 U.S.C. § 1350 ........................................................................................... 10

28 U.S.C. § 1350 note ..................................................................................... 9

**Rules**

F.R.C.P. 12 ............................................................................................. passim

F.R.C.P. 15 ..................................................................................................... 17

F.R.C.P. 8 ......................................................................................................... 5

F.R.C.P. 9 ......................................................................................................... 5

**Other Authorities**

Restatement (Second) of Torts .......................................................................... 9

## INTRODUCTION

In his consolidated motion to dismiss[1], defendant Soliman H.S. Al-Buthe ignores the procedural posture of this case and attempts to persuade this Court to rule in his favor on the merits of the case. To this end, Al-Buthe submits 16 exhibits not referenced anywhere in the pleadings and devotes 10 pages of his memorandum to a "factual background" representing his version of events. None of this has anything to do with the sufficiency of the complaints in this case nor with any issue properly before the Court on this motion to dismiss.

What is alleged in plaintiffs' complaints and RICO statements is that, through his role at Al Haramain Islamic Foundation, Inc. ("AHIF"), Al-Buthe provided material support to al Qaeda. Al-Buthe focuses on the infrequency with which his name appears in the complaints and ignores the numerous, detailed allegations concerning AHIF. AHIF, based in Oregon, was the U.S. branch of Al Haramain Islamic Foundation ("Al Haramain"), a global entity based in Saudi Arabia. The Riyadh office of Al Haramain was – until it was dissolved by the Saudi government amid suspicions that it was a terrorist front that had provided financing and other support to al Qaeda and Osama bin Laden – the headquarters of a vast network of offices and representatives

---

[1]   Al-Buthe has moved to dismiss the claims of plaintiffs in *Ashton v. Al Qaeda Islamic Army*, 02-CV-6977; *Burnett v. Al Baraka Investment & Development Corp.* 03-CV-5738 (*Burnett* (N.Y.))); *Continental Casualty Co. v. Al Qaeda Islamic Army*, 04-CV-05970 ("*Continental*"); *Euro Brokers, Inc. v. Al Baraka Invest. & Devel. Corp.*, 04-CV-07279 ("*EuroBrokers*"); *Federal Insurance Co. v. Al Qaida*, 03-CV-6978 ("*Federal*"); *New York Marine and General Insurance Co. v. Al Qaida*, 04-CV-6105 ("*NYMAGIC"*); *World Trade Center Properties LLC v. Al Baraka Invest. & Devel. Corp.* 04-CV-07280 ("*WTCP*"), *Salvo v. Al Qaeda Islamic Army*, 03-CV-5071; and *Tremsky v. Osama bin Laden*, 02-CV-7300 (collectively, "Plaintiffs").

Plaintiffs note that Al-Buthe's motion does *not* apply to *Burnett v. Al Baraka Investment & Development Corp.* 03-CV-9849 (*Burnett* (D.C.)), the *Burnett* case originally filed in the District of Columbia and transferred to this Court by the MDL panel. Al-Buthe's motion to dismiss the *Burnett* (D.C.) complaint on grounds of improper service was denied by this Court on June 1, 2004. The *Burnett* case that Al-Buthe seeks to dismiss in this motion is the one filed in this Court in August, 2003.

around the world.  (At least eleven of those branches, including AHIF, have been designated by the U.S. government as global sponsors of terrorism and, as noted above, the main office has been closed by the Saudi government.  *See*  www.treas.gov/press/releases/js1703.htm; www.treas.gov/press/releases/js1895.htm.)

As alleged in the complaints, Al Haramain is a "charity front that has exploited its nonprofit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in furtherance of international terrorism." *Burnett* (NY) 1AC ¶ 155; *accord Ashton* 3AC ¶¶ 467, 471; *WTCP* Complaint ¶ 292.  Plaintiffs allege that Al Haramain's global network played a major role in funding international terrorism through its Bosnian office, which was a crucial component of Osama bin Laden's international financial and logistical support network.  *Burnett* 1AC ¶¶ 154-163; *Ashton* 3AC ¶¶ 467, 472-75; *see also Federal* 1AC ¶ 170 ("Al Haramain has long acted as a fully integrated component of al Qaida's logistical and financial support infrastructure, and provided material support and resources to al Qaida and affiliated [Foreign Terrorist Organizations].").  Specifically, "Al-Haramain has knowingly and intentionally lent material support to Al Qaeda through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings." *EuroBrokers* 1AC ¶ 63.  Moreover, "[p]rior to September 11, 2001 Al-Haramain, which receives the bulk of its donations from Saudi Arabia and the Middle East, laundered money for Al Qaeda." *EuroBrokers* 1AC ¶ 64. Evidence assembled by the U.S. Treasury Department demonstrates the Al Haramain played a significant role in the 1998 bombings of two U.S. embassies in East Africa.  *See* Federal 1AC ¶ 173; *see also* EuroBrokers ¶ 67 (Al Haramain offices agreed to finance bombing of U.S. embassies in Kenya and Tanzania); *Burnett* 1AC ¶¶ 167; *Ashton* 3AC ¶ 476, 487; *WTCP* Complaint ¶ 304.  Al

Haramain also directly funded the 2002 Bali nightclub bombing. *Federal* 1AC at ¶ 172; 1AC ¶¶ 167, 175; *Ashton* 3AC ¶ 476, 487; *see also Burnett* 1AC ¶167, 175; *WTCP* Complaint ¶ 312.

Moreover, the complaints allege that "[t]he al-haramain branch in Ashland, Oregon, is specifically linked to Al Qaeda operations," *Burnett* 1AC ¶ 173; *accord Ashton* 3AC ¶ 485; *WTCP* Complaint ¶ 310; *Continental* 1AC ¶ 512, and that the Oregon branch was "one and the same as al-Haramain's headquarters in Riyadh, Saudi Arabia." *Burnett* 1AC ¶ 173; *WTCP* Complaint ¶ 310; *Continental* 1AC ¶ 512; 1AC, ¶ 62; *Federal* RICO Statement for AHIF, Exhibit A.

Al-Buthe was one of the founders of AHIF. *See WTCP* RICO Statement Applicable to Al Haramain Islamic Foundation; *Euro Brokers* RICO Statement Applicable to Al Haramain Islamic Foundation. He carried large sums in travelers' checks back and forth between AHIF's headquarters in Ashland, Oregon, and Saudi Arabia. *Id.* Mr. Al-Buthe does not dispute his relationship to AHIF. Rather, he claims that the complaints against him should be dismissed because, he contends, AHIF provided legitimate humanitarian relief[2] and because plaintiffs have not sufficiently parsed out Mr. Al-Buthe's precise role in AHIF's activities. Al-Buthe himself, however, describes his role in transferring funds from AHIF in the United States to Al Haramain in Saudi Arabia on at least one occasion, *see* Al-Buthe Mem. at 7-8. He contends, of course, that neither AHIF nor Al Haramain were engaged in terrorist financing, but that factual dispute cannot be resolved on this motion to dismiss. Indeed, that was the precise holding of Judge Robertson when AHIF moved to dismiss the *Burnett* (D.C.) complaint. *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 n.11 (D.D.C. 2003) ["*Burnett I*"]. Judge

---

[2] On this Rule 12(b)(6) motion, Al-Buthe's denial of AHIF's terrorist involvement is entirely beside the point. Moreover, the "evidence" he submitted should be disregarded as outside the
(footnote continued on next page)

Robertson correctly found that plaintiffs adequately alleged the role of Al Haramain in providing material support to al Qaeda.  This Court should follow Judge Robertson's correct holding and similarly deny Al-Buthe's motion to dismiss.  Moreover, if this Court could properly consider evidence or allegations outside the complaints, it hould consider that Al-Buthe – one of the founders of AHIF and its treasurer -- has been designated a supporter of terrorism by the United States government.  *See* www.treas.gov/press/releases/js1895.htm.  This fact underscores why Al-Buthe's denials cannot simply be accepted as face value but must, rather, be tested in the litigation process through discovery and trial.

## APPLICABLE LEGAL STANDARDS

Al-Buthe moves to dismiss pursuant to F.R.C.P. 12(b)(6), for failure to state a claim.[3] Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) . In evaluating whether the Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of them.  *Wynder*, 360 F.3d at 77; *Phelps*, 308 F.3d at 184. Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001). The issue on a

---

scope of this motion.

[3] Al Buthe also moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See* (footnote continued on next page)

Rule 12**Error! Bookmark not defined.**(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of F.R.C.P. 8(a)(2), which is extremely permissive. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (*quoting Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2002) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.). Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to F.R.C.P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  *See* 308 F.3d at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering. *Id.* The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite

---

Point V, *infra.*

*scienter*, deliberate indifference. The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge. *See* 308 F.3d at 184. The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegations of knowledge either directly or by inference." 308 F.3d at 186-87. The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187, *quoting Conley*, 355 U.S. at 45-46. Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (citations omitted).

More recently, in *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *See* 396 F.3d at 511. The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is

required to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P."  396 F.3d at

512.  Quoting the unanimous Supreme Court ruling in *Swierkiewicz*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery
> rules and summary judgment motions to define disputed facts and issues and to
> dispose of unmeritorious claims.  The provisions for discovery are so flexible and
> the provisions for pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily, synthetic issues
> detected, and the gravamen of the dispute brought frankly into the open for the
> inspection of the court.

*Pelman*, 396 F.3d at 512, *quoting Swierkiewicz*, 534 U.S. at 512-13.

ARGUMENT

## I.  PLAINTIFFS HAVE SUFFICIENTLY PLED THE CAUSAL CONNECTION BETWEEN AHIF'S AND AL-BUTHE'S ACTIONS AND THE SEPTEMBER 11 TERRORIST ATTACKS

Al-Buthe argues that plaintiffs have not sufficiently pled a causal connection between his

actions and the September 11 attacks.   But this is not so. Mr. Al-Buthe is alleged to have

conspired with and aided and abetted AHIF, *see Ashton* 3AC ¶ 469; *Burnett* 1AC ¶ 157;

*Continental* 1AC ¶ 496; *WTCP* Complaint; *Salvo* 1AC ¶ 495, and AHIF's role in supporting al

Qaeda is adequately alleged and provides the requisite causal link.

The allegations against AHIF and its parent, Al Haramain, are discussed in detail in the

Property Damage Plaintiffs' Consolidated Memorandum Of Law In Opposition To Motion To

Dismiss Of Al Haramain Islamic Foundation, Inc. ("Property Damage Mem.") and the Personal

Injury Plaintiffs' Consolidated Memorandum Of Law In Opposition To Motions To Dismiss Of

Al Haramain Islamic Foundation, Inc. and Perouz Sedaghaty ("Personal Injury Mem."), and

rather than repeat those discussions, plaintiffs respectfully refer this Court to those memoranda

and hereby incorporate them by reference. Those allegations properly allege that Al Haramain's

and AHIF's support and assistance were a proximate cause of the September 11 attacks.

Plaintiffs allege that "The financial resources and support network of . . . Defendants – charities, banks, front organizations and financiers – are what allowed the attacks of September 11, 2001 to occur. Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and act on a massive scale without significant financial power, coordination and backing." *Burnett* 1AC at p. 305; *see also Ashton* 3AC ¶ 30; *Continental* 1AC ¶ 29; *Euro Brokers* Complaint ¶ 5; *Federal* 1AC ¶ 74; *NYMAGIC* 1AC ¶ 55; *Salvo* 1AC ¶ 30; *WTCP* Complaint ¶ 1. *See also Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002) ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.")  Moreover, this Court has already held that "[i]n light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probably consequence of knowingly and intentionally providing material support to al Qaeda." 349 F.Supp.2d at 826.  Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id.* at 829.[4]

Plaintiffs have alleged that Al-Buthe, who co-founded AHIF and transported large sums of money back and forth between the United States and Saudi Arabia, aided and abetted and conspired with AHIF and Al Haramain in their support of al Qaeda. *See Ashton* 3AC ¶ 469;

---

[4]  Indeed, Judge Robertson reached this same conclusion in the context of the virtually identical *Burnett* complaint filed in the District of Columbia, holding that the "allegations of Al-Haramain's relationships with al Qaeda are more than sufficient to permit the inference that Al-Haramain . . . provided material support to al Qaeda with knowledge of, and the intent to further, al Qaeda's terrorist activities."  *Burnett v. Al Baraka Invest. & Develop. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003 ["*Burnett I*"].  Judge Robertson further found that the "allegations provide support for an inference of a causal link between AHIF's funding and the attacks of September 11." *Id.* at 105.

*Burnett* 1AC ¶ 157; *Continental* 1AC ¶ 496; *WTCP* Complaint; *Salvo* 1AC ¶ 495. If so, then Al-Buthe is legally responsible for the September 11 attacks to the same extent that AHIF and Al Haramain are. *See* Restatement (Second) of Torts §§ 876, 877; *see also In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765, 826 (S.D.N.Y. 2005) ["January 18 Order"]. Plaintiffs are entitled to the opportunity to take discovery and prove their allegations and establish that Al-Buthe knowingly and intentionally participated in the Al Haramain network's sponsorship of al Qaeda.

## II.    AL-BUTHE IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' TORT CLAIMS

Plaintiffs have sufficiently alleged claims under the Anti-Terrorism Act ("ATA"), the Alien Tort Claims Act ("ATCA"), and the common law and these claims should not be dismissed.[5]

### A.    Plaintiffs Sufficiently Plead Their Claims Under the ATA

Under the ATA, a defendant is liable if it provided any material support to al Qaeda with knowledge of its terrorist agenda or if it aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct. *See Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002). As demonstrated in the Property Damage Mem. and the Personal Injury Mem., plaintiffs have alleged that Al Haramain and AHIF knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaeda. This Court has already recognized that,

---

[5]    Plaintiffs recognize that this Court and the D.C. court have dismissed plaintiffs' negligence claims on the basis that defendants owed no duty to plaintiffs. *See* January 18 Order, 349 F.Supp.2d 765 at 830-31; *Burnett I*, 274 F.Supp.2d at 108-109. Plaintiffs respectfully disagree with these rulings and refer this Court to the prior briefing on these issues. Plaintiff also note that they do not currently intend to pursue their claims under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note, against this defendant. Plaintiffs reserve the right to replead this claim against Al-Buthe should additional information become available in discovery demonstrating that he acted "under actual or apparent authority or color of law, of any foreign nation" in connection with his support of al Qaeda.

under the ATA, "material support includes money [and] financial services . . . ."  January 18

Order, 349 F.Supp.2d at 825.  Al-Buthe is alleged to have aided and abetted and conspired with

AHIF and Al Haramain.  In *Boim*, 291 F.3d at 1016-1021, the Seventh Circuit, after extensive

and scholarly analysis of the question, determined that the ATA encompasses aiding and abetting

liability.  Al-Buthe's alleged assistance to al Qaeda, provided with and through AHIF and Al

Haramain, is sufficient to subject him to liability under the ATA.

> **B.**      **Plaintiffs' Claims Under the Alien Tort Claims Act Ought Not Be Dismissed**

Al-Buthe contends that the non-U.S. plaintiffs' claims under the Alien Tort Claims Act,

28 U.S.C. § 1350, should be dismissed because he is not a state actor and did not engage in

specific kinds of conduct that give rise to jurisdiction under that statute.  But the ATCA does not

require that the defendant act under color or law and the specific types of conduct that Al-Buthe

recognizes as covered by the statute – aircraft hijacking and terrorism – are precisely the conduct

for which plaintiffs seek to hold him responsible.   Since Al-Buthe concedes that aircraft

hijacking and terrorism are sufficient to support jurisdiction under the ATCA, plaintiffs' claims

against him for his role in supporting these acts are sufficient and should not be dismissed.  *See*

*Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-48

(2d Cir. 2001); *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1996); *Doe v. Islamic Salvation*

*Front*, 257 F.Supp.2d 115, 120 (D.D.C.2003); *Presbyterian Church of Sudan v. Talisman*

*Energy, Inc*., 244 F.Supp.2d 289, 309 (S.D.N.Y.2003); *Abdullahi v. Pfizer, Inc.*, No. 01CIV8118,

2002 WL 31082956, at *4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL

22317923 (2d Cir. Oct. 8, 2003); *see generally United States v. Yunis*, 924 F.2d 1086, 1092

(D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so clearly condemned

under the law of nations that states may assert universal jurisdiction to bring offenders to justice,

even when the state has no territorial connection to the hijacking and its citizens are not involved").

### C.    Plaintiffs' Have Sufficiently Pled Their Common Law Claims

Al-Buthe claims that Plaintiffs' common law claims, including claims for wrongful death, survival, assault and battery, intentional infliction of emotional distress, and property destruction, should be dismissed because the plaintiffs have failed adequately to allege causation. This is merely a repetition of Al-Buthe's argument with respect to the ATA and causation generally and should be rejected for the reasons described above, *see supra* Points I and II.A.

### D.    Plaintiffs' Claims for Punitive Damages and Conspiracy Ought Not Be Dismissed

Al-Buthe seeks dismissal of plaintiffs' claim for punitive damages on the ground that, under New York law, punitive damages are a remedy, not a cause of action. Al-Buthe presents no argument that plaintiffs are not entitled to recover punitive damages in this lawsuit. Since it is clear that punitive damages are available in connection with the claims that plaintiffs assert, and because the question of what law governs plaintiffs' claims remains open, this Court should not dismiss plaintiffs' claim for punitive damages because of this technicality of New York law. The same is true with respect to plaintiffs' claims for conspiracy. If plaintiffs have properly pleaded a conspiracy theory of liability against Al-Buthe, the claim should not be dismissed at this time merely because, under New York, this is an alternate basis of liability rather than a separate claim, as it may turn out that New York law does not govern plaintiffs' claims.

## III.   THE PROPERTY DAMAGE PLAINTIFFS STATE RICO CLAIMS AGAINST AL-BUTHE

### A.    The Insurance Company Plaintiffs Have Standing to Asset RICO Claims

Al-Buthe asserts that the *Federal* plaintiffs lack standing under RICO because they seek to recoup, through subrogation, insurance payments that compensated their insureds for personal

injuries.[6] Al-Buthe is wrong:  the *Federal* plaintiffs have standing to pursue their subrogation claims under RICO.  *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221 (E.D.N.Y. 1999).  In *National Asbestos Workers*, Judge Weinstein allowed the plaintiff health insurers to bring subrogated RICO claims against tobacco manufacturers for the cost of treating their subrogors' smoking-related illnesses. *Id.* at 228. According to Judge Weinstein, "[t]he equitable doctrine of subrogation allows insurers, analogous in some respects to the plaintiffs, to bring their own claims for the recovery of the economic damages incurred as a result of tortious injury to their insureds." *Id.* Subrogation functions as a form of assignment, and RICO claims are assignable. *Id.*

The tobacco manufacturers suggested that the plaintiffs could not state a subrogated RICO claim because the subrogee plaintiffs "stand in the shoes" of their subrogors and "the subrogors themselves have no RICO claims for the economic injuries associated with the treatment of smoking related illnesses." 74 F.Supp.2d at 229. Judge Weinstein found the tobacco companies' analysis unpersuasive. According to Judge Weinstein, "[t]he recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute." *Id.* Moreover, "the most natural reading of the language in RICO supports the conclusion that pecuniary losses resulting from racketeering personal injuries should be compensable under the statute, because the statute confers standing on 'any person

---

[6]  Al-Buthe apparently concedes that the remainder of the property damage and insurance claim plaintiffs who are the subject of this motion – that is, plaintiffs in *Continental Casualty*, *Euro Brokers*, *New York Marine and General Ins. Co.,* and *World Trade Center Properties* -- have standing to assert RICO claims.  Al Buthe does argue that the personal injury plaintiffs in *Burnett* (N.Y.) and in *Tremsky* lack RICO standing, but these plaintiffs, whose complaints were filed prior to Judge Robertson's decision concerning standing under RICO, are not pursuing their RICO claims against Al-Buthe.

injured in his business or property by reason of [racketeering acts defined in the statute].'" *Id.* (*citing* 18 U.S.C. § 1964(c)).

Further according to Judge Weinstein, the Supreme Court has recognized, albeit in another context, that money is a form of property. *Id.* (*citing Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979)). Therefore, "[v]ictims of racketeering who have been deprived of their monetary resources as a direct result of racketeers' predicate acts should, under the most natural interpretation of the phrase 'business or property,' recover their pecuniary losses." *Id.* Judge Weinstein offered a hypothetical in *National Asbestos Workers* that illustrates the point well:

> Assume racketeers attack a manufacturing plant to coerce its owner and an employee, and in so doing throw the owner and her employee through a window. Defendants argue that the racketeers should be made to pay for the costs of the broken window under RICO, but not for the pecuniary costs, such as medical bills or lost wages and profits, associated with the broken arms and legs of the owner and employee. A line must be drawn under the "business and property" rubric of the statute, but it would seem more sensible to draw it between pain and suffering and outlays for repairing windows and limbs.

*Id.* Thus, there is no doubt that, as the subrogees of the property and workers' compensation insureds and as assignees of the workers' compensation claimants who suffered personal injury or wrongful death, the Plaintiffs have standing to bring a claim under RICO.

### B.   All of the Property Damage Plaintiffs Properly State RICO Claims

Al-Buthe also contends that none of the plaintiffs have properly pleaded their RICO claims. Al-Buthe is wrong.  Plaintiffs' complaints and RICO Statements assert RICO claims against Al-Buthe pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).

The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  *See, e.g., WTCP* Complaint ¶¶ 1081-1085; *Federal* RICO Statement for AHIF ¶ 6.  Its well documented purpose is to perpetrate acts of terrorism.  Thus, plaintiffs have sufficiently

pled that al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs' complaints and RICO statements further allege that Al-Buthe engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt… to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, plaintiffs allege that AHIF solicited funds from donors in the United States and throughout the World under the guise of "charity," and diverted the funds collected under that false pretense to al Qaeda.  *See, e.g., Federal* 1AC ¶¶ 167-179; *EuroBrokers* Complaint ¶¶ 61-70; *Continental* 1AC ¶¶ 493-518; *WTCP* Complaint ¶¶ 291-316.  Al-Buthe conspired with and aided and abetted AHIF in doing so.[7]  Thus, the complaints and RICO statements allege that Al-Buthe derived income through a pattern of racketeering activity, including multiple acts of mail and wire fraud, and invested that income in the enterprise.  As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

---

[7] As noted above, it would appear from his motion that Al-Buthe does not dispute that he solicited funds on behalf on behalf of AHIF, but denies that the funds were diverted to Al Qaeda, (footnote continued on next page)

Plaintiffs' complaints and RICO Statements similarly allege sufficient involvement by Al-Buthe in the enterprise to sustain claims under both §§ 1962(c) and (d). Although a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003), such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear." *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D. N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962(d), the requirements "are less demanding." *Baisch*, 346 F.3d at 376. All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)). Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

---

a factual dispute beyond the scope of this motion.

Here, the plaintiffs have satisfied the pleading standards applicable to their § 1962(c) and § 1962(d) claims.  The plaintiffs allege that through Al-Buthe and others, AHIF conceived and carried out a calculated global campaign to: (1) raise and distribute funds for and to al Qaeda; (2) finance al Qaeda operations; and (3) purchase weapons for al Qaeda.  *See Federal* 1AC ¶¶ 167-179; *EuroBrokers* Complaint ¶¶ 61-70; *Continental* 1AC ¶¶ 493-518; *WTCP* Complaint ¶¶ 291-316.  In view of the allegations regarding AHIF's integral and pervasive sponsorship of al Qaeda's operations throughout the world, and Al-Buthe's role in founding AHIF, plaintiffs have adequately alleged that Al-Buthe played a direct and active role in the management and operation of al Qaeda's fundraising scheme and that Al-Buthe was a central figure in the enterprise in the years leading up to the attack.  Plaintiffs have, accordingly, met their pleading burden in relation to their claims under §§ 1962(c) and 1962(d), especially given the fact that plaintiffs have not been afforded the opportunity to take discovery.

Plaintiffs also have adequately alleged proximate cause under RICO.  This requirement is satisfied if plaintiffs allege that defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.  *Lerner v. Fleet Bank, N.A*., 318 F.3d 113, 120 (2d Cir. 2003).  Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is generally imprudent.  *National Asbestos Workers*, 74 F. Supp. 2d at 225.  This Court's decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983) and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  *Id.*  Further, failure to

16

explain the alleged injury in detail is not fatal. *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986). Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6). *Id.* The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts." *Id.* (citations omitted).

Here, plaintiffs allege that they were directly harmed by AHIF's (and thus, by Al-Buthe's) participation in al Qaeda's campaign to attack the United States, and in particular, by its provision of "material support and resources to al Qaeda." *Federal* 1AC ¶ 226; *see also Euro Brokers* Complaint ¶¶ 162, 169-170, 178; *WTCP* Complaint ¶¶ 1134, 1141-42, 1150. Through AHIF, Al-Buthe participated extensively in al Qaeda's global operations and specifically in furthering al Qaeda's goal of committing acts of terrorism against the United States by providing al Qaeda with the "financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." *Federal* 1AC ¶ 74. Accordingly, plaintiffs have sufficiently pled causation for purposes of their RICO claims.

## IV.   IF ANY OF PLAINTIFFS' CLAIMS ARE FOUND TO BE INSUFFICIENT, PLAINTIFFS SHOULD BE GRANTED LEAVE TO RE-PLEAD

If the Court finds plaintiffs' pleading deficient in any way, plaintiffs should be given leave to replead. Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." F.R.C.P. 15. In *Conley*, 355 U.S. at 48, the Supreme Court explained that, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." "Mere technicalities" should not prevent a case

from being decided on the merits.  *Monahan v. NYC Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir.

2000).  Accordingly, the Supreme Court has instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, no basis exists to deny leave to amend.

In particular, amendment should be permitted because a considerable amount of additional information about Mr. Al-Buthe has become available since plaintiffs filed their complaints.  If permitted to amend, plaintiffs would allege the following significant facts:

- On September 9, 2004, the United States Department of Treasury designated AHIF, the U.S. branch of the Saudi Arabian-based Al Haramain Islamic Foundation, as a supporter of terrorism.  The designation was based on a federal investigation that, accordingly to a Treasury Dept. press release, "shows direct links between the U.S. branch [of Al Haramain] and Usama bin Laden."

- On June 2, 2004, the Saudi government announced that it was dissolving Al Haramain after complaints from the United States and others that it was funding al Qaeda and bin Laden.

- Mansour al Kadi, a former director of the AHIF, has described an extraordinary degree of centralization whereby AHIF was run directly and exclusively by Aqeel al Aqeel, who served as both Secretary General of Al Haramain and as head of the organization's U.S. branch.

- Al-Buthe is one of the founders of AHIF, served as its Treasurer, and was one of the four members of its Board of Directors.  Al-Buthe was designated by U.S. government as a supporter of terrorism at the same time that AHIF was designated. (AHIF's chief, Aqeel al Aqeel, who also served as Secretary General of Al Haramain in Riyadh, had been previously designated on June 2, 2004.)

- Al-Buthe played a central role in the management and financial activities of AHIF. He was one of two officers with control over an AHIF bank account in Ashland, Oregon. He transported large amounts of cash between the AHIF and Al Haramain in Saudi Arabia.

▪ A document obtained by the U.S. government shows that in October, 1997, Al Haramain Islamic Foundation in Saudi Arabia appointed Al-Buthe its true and lawful attorney in its name, place, and stead.  The document appears to give Al-Buthe broad legal authority to act on the organization's behalf within the United States. The document is signed by Al Haramain's then-chief, Aqeel al-Aqeel.

▪ In 1997, Al-Buthe purchased the property at 3800 South Highway 99 in Ashland, Oregon, that became the headquarters of AHIF and the main facility where it conducted its operations.

▪ In 2000, AHIF engaged in a scheme to divert donations made for "Chechen refugees" to al Qaeda mujihadeen fighters in Chechnya.

▪ Federal authorities are currently prosecuting Al-Buthe, AHIF and another AHIF officer, Perouz Sedaghaty, for their role in the above-described scheme.[8]

Based on these facts, plaintiffs would allege that Al Haramain's American branch, AHIF, provided direct financial support to al Qaeda and bin Laden; that the entire Al Haramain organization, including AHIF, was operated directly by Aqeel al Aqeel to provide support (and did provide such support) to al Qaeda; and that Al-Buthe, its Treasurer and one of only four directors, knew of Al Haramain's mission to support al Qaeda and bin Laden and knowingly and willingly assisted that mission through his work with AHIF.  These additional allegations would clearly suffice to state a claim against Al-Buthe.

Plaintiffs note that Al-Buthe appears to concede that plaintiffs can amend their complaints against him and, indeed, virtually asks them to do so and moot his motion, so that he can file another one and the briefing can begin all over again.  *See* Al Buthe Mem. at 3 n.3.  This would seem to be nothing more than procedural gamesmanship.  Al-Buthe's counsel are well aware that they are entitled to seek a more definite statement pursuant to F.R.C.P. 12(e) and that this Court's Case Management Order #2 specifically envisions the use of this device where the allegations against a particular defendant are sparse.  Yet Mr. Al-Buthe has chosen not to seek a

---

[8]  Documentary support for these allegations, including the sworn affidavit of IRS Special Agent (footnote continued on next page)

Rule 12(e) statement, but rather to proceed with his motion to dismiss, even as he acknowledges that, given a chance, plaintiffs could plead additional and more specific allegations against him. If this Court finds the allegations of the existing complaints insufficient, it should take Al-Buthe at its word and grant plaintiffs leave to re-plead.

## V.   THIS COURT HAS JURISDICTION OVER AL-BUTHE

Al-Buthe claims that this Court lacks jurisdiction over him.  Although he references both the New York long-arm statute and F.R.C.P. 4(k)(1), he sets forth no argument as to why jurisdiction is lacking, but merely refers the Court to arguments made by his co-defendant Perouz Sedaghaty.[9]  In the interest of brevity, plaintiffs note only that (a) the ATA authorizes nationwide service of process, *see* 18 U.S.C. §§ 2334(a); (b) for purposes of the constitutional, minimum contacts requirement, Al-Buthe's relevant contacts are measured with the United States as whole, *see Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984); and (c) the acts that form the basis of plaintiffs' allegations took place in Oregon while Mr. Al-Buthe was a director and officer of an Oregon corporate entity.  *See* Bierstein Aff., Exhibit 1.  Moreover, as set forth in the affidavit of IRS Special Agent Colleen Anderson, on a Form 1023, Application for Recognition of Exemption, filed with the IRS, AHIF listed Al-Buthe's address as 1257 Siskiyou Blvd., #212, Ashland OR.  *See* Bierstein Aff., Exhibit 1.  Similarly, AHIF's Restated

---

Colleen Anderson, is annexed to the accompanying Affirmation of Andrea Bierstein.

[9]  Al-Buthe does not contend that he was improperly served or that process was insufficient and has not moved to dismiss these complaints pursuant to F.R.C.P. 12(b)(4) or 12(b)(5).  Any claims under those provisions are accordingly waived.  *See* F.R.C.P. 12(h) (1)

Articles of Incorporation, filed with the Oregon Secretary of State, list Al-Buthe's address as 1257 Siskiyou Blvd., #212, Ashland OR.   *See* Bierstein Aff., Ex. 2.   Plaintiffs further respectfully refer the Court to, and hereby incorporate by reference, the arguments set forth in the Personal Injury Plaintiffs' and the Property Damages Plaintiffs consolidated Memoranda Of Law in opposition to the motions to dismiss filed by defendants Al Haramain Islamic Foundation, Inc. and Perouz Sedaghaty.

## CONCLUSION

For the foregoing reasons, this Court should deny Al-Buthe's motion to dismiss in its entirety.

Dated: New York, NY           Respectfully submitted,
      July 8, 2005

/s/_____
Ronald L. Motley, Esq. (RM-2730)
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael Elsner, Esq. (ME-8337)
Justin B. Kaplan, Esq.
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, South Carolina 29465
Telephone:  (843) 216-9000

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew Maloney, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, New York 10017-5590
Telephone: (212) 687-8181

Stephen A. Cozen (SC 1625)
Elliott R. Feldman (EF 8111)
Sean P. Carter (SC 0636)
Mark T. Mullen (MM 2384)
COZEN O'CONNOR

1900 Market Street
Philadelphia, PA 19103

Paul J. Hanly, Jr., Esq. (PH-5486)
Jayne Conroy, Esq. (JC-8611)
Andrea Bierstein, Esq. (AB-4618)
HANLY CONROY BIERSTEIN & SHERIDAN, LLP
112 Madison Avenue
New York, NY 10016
Telephone:  (212) 784-6400

Attorneys for Plaintiffs