# Attachment Q

JS-2164: U.S. Treasury Designates Two Individuals with <BR>Ties to al...R>Former BIF Leader and al-Qaida Associate <BR>Named Under E.O. 13224

Case 1:03-md-01570-GBD-SN   Document 1047-25   Filed 07/12/05   Page 2 of 6



PRESS ROOM

### FROM THE OFFICE OF PUBLIC AFFAIRS

December 21, 2004
JS-2164

### U.S. Treasury Designates Two Individuals with
### Ties to al Qaida, UBL
### Former BIF Leader and al-Qaida Associate
### Named Under E.O. 13224

The U.S Department of the Treasury today announced the designation of Adel Abdul Jalil Batterjee and Saad Rashed Mohammad al-Faqih for providing financial and material support to al Qaida and Usama bin Laden (UBL).

The U.S. is submitting both names to the United Nations 1267 Committee, which will consider adding them to the consolidated list of terrorists tied to al Qaida, UBL and the Taliban.  Batterjee and al-Faqih are not linked to each other.

Today's action was taken pursuant to Executive Order 13224.  The United States has now designated 396 individuals and entities as terrorists, their financiers or facilitators since September 2001.  In addition, the global community has frozen over $144 million in terrorist-related assets.

Adel Abdul Jalil Batterjee served as the Executive Director and a member of the Board of Directors of Benevolence International Foundation (BIF), which was designated as a Specially Designated Global Terrorist (SDGT) by the Treasury in November 2002 for its support to al Qaida and UBL.

"Adel Batterjee has ranked as one of the world's foremost terrorist financiers, who employed his private wealth and a network of charitable fronts to bankroll the murderous agenda of al Qaida.  A worldwide asset freeze, including in his home country of Saudi Arabia, will deal a serious blow to this key terrorist facilitator," said Stuart Levey, Treasury's Under Secretary for the Office of Terrorism and Financial Intelligence (TFI).

In the late 1980s, Batterjee founded the precursor to BIF, Lajnat al-Birr al-Islamiah (LBI), in Saudi Arabia and Pakistan.  LBI provided financial and operational support to mujahideen elements in Afghanistan and around the world, including fighters associated with UBL and Gulbuddin Hekmatyer, who was named a SDGT by the Treasury on February 18, 2003.  LBI was affiliated with Maktab Al-Khidamat (MK), which was co-founded and financed by UBL and is the precursor organization of al

JS-2164: U.S. Treasury Designates Two Individuals with <BR>Ties to al...R>Former BIF Leader and al-Qaida Associate <BR>Named Under E.O. 13224

Case 1:03-md-01570-GBD-SN   Document 1047-25   Filed 07/12/05   Page 3 of 6

Qaida. LBI later joined al Qaida upon the dissolution of MK.

In the early 1990s, LBI began operating under the name Benevolence International Foundation (BIF) in an effort to widen its appeal to the general public and increase its credibility with other governments. BIF and LBI remained one organization with interchangeable assets under Batterjee's control.

In 1993, Batterjee incorporated BIF in the United States, where it also provided financial and operational support to mujahideen fighters worldwide, including members of al Qaida in Afghanistan, the Sudan, Bosnia-Herzegovina and Chechnya. At one point, UBL confirmed to an associate that BIF was one of the non-governmental organizations providing funds to al Qaida.

According to information available to the U.S. Government, it was around that time that a BIF employee in the Sudan traveled to Saudi Arabia attempting to meet Batterjee. Instead, the employee reported he was detained and questioned by Saudi authorities regarding BIF links to UBL. Once released, he returned to the Sudan where he met with UBL and informed him of his detainment. As a result, BIF operations were curtailed for a period of time.

Batterjee subsequently resigned as Director of BIF and personally selected UBL confidant Enaam Arnaout to serve as the organization's head. Documents obtained by the U.S. Government demonstrate that Arnaout, while employed with LBI and BIF, worked with members of al Qaida to procure weapons for use in al Qaida training camps. While employed by Batterjee at LBI, Arnaout reported directly to Batterjee, which was outside the usual chain of command.

Batterjee remained active in BIF despite having officially resigned as Director. Evidence shows that Arnaout made an effort to conceal Batterjee's continued involvement in BIF. In 2002, when Arnaout learned that U.S. authorities were scrutinizing BIF's activities, he warned Batterjee through an intermediary against transferring funds to any BIF offices.

Evidence of BIF's ties to al Qaida surfaced in March 2002 searches by Bosnian authorities of the organization's Sarajevo offices. These searches uncovered numerous handwritten documents detailing the origin and history of the al Qaida organization. Among the recovered files was a copy of a 1988 handwritten draft listing wealthy financiers of UBL's mujahideen operations in Afghanistan, referred to within al Qaida as the "Golden Chain."

This list contains 20 names with a parenthetical after each name, likely indicating the person who received funds from the specified donor. "Usama" appears after seven of the listings and "Baterji" appears after an additional six listings.

Also uncovered from the Bosnian raid were photographs of Arnaout with UBL and an administrative diagram of UBL's close associates, along with cover names and assignments within al Qaida of mujahideen trained in Afghanistan.

JS-2164: U.S. Treasury Designates Two Individuals with <BR>Ties to al...R>Former BIF Leader and al-Qaida Associate <BR>Named Under E.O. 13224

Case 1:03-md-01570-GBD-SN   Document 1047-25   Filed 07/12/05   Page 4 of 6

In October 2002, Arnaout was indicted in the United States for operating BIF as a racketeering enterprise and providing material support to organizations, including al Qaida, that are engaged in violent activities. Batterjee was named as an un-indicted co-conspirator in the indictment. On February 10, 2003, Arnaout pled guilty to criminal racketeering conspiracy for diverting BIF funds to pay for supplies to armed jihadists in Bosnia and Chechnya.

**Identifying Information**
**ADEL ABDUL JALIL BATTERJEE**
**AKAs:**          Adel Abdul Jalil Batarjee
`Adil Al-Battarjee
Adel Batterjee
`Adil `Abd al Jalil Batarji

**DOB:**           July 1, 1946
**POB:**           Jeddah, Saudi Arabia
**Nationality:**   Saudi Arabian
**Address:**        2 Helmi Kutbi Street, Jeddah, Saudi Arabia

Saad Rashed Mohammad al-Faqih has maintained associations with the al Qaida network since the mid-1990s, including an individual associated with the 1998 East Africa embassy bombings.

Al-Faqih has had contact with both UBL and Khaled al Fawwaz, who acted as UBL's de facto representative in the U.K. According to information available to the U.S. Government, al-Faqih and al Fawwaz shared an office in the late 1990s, and al-Faqih worked with and provided assistance to al Fawwaz, who served as the intermediary between UBL and al-Faqih.

Following the 1998 East African embassy bombings, al Fawwaz was arrested in the United Kingdom under an extradition request from the United States. At the U.S. trial of the East African embassy bombers, prosecutors provided evidence that al-Faqih paid for a satellite phone that al Fawwaz passed on to UBL, who allegedly used it to help carry out the attacks.

According to information available to the U.S. Government, al-Faqih was also associated with al Qaida member and fugitive Abu Musab al-Suri, a.k.a. Mustafa Nasar

Al-Faqih is head of the non-governmental organization Movement for Islamic Reform in Arabia (MIRA). Extremists utilize a website controlled by al-Faqih and MIRA to post al Qaida-related statements and images. While MIRA has issued disclaimers warning users to not attribute postings on MIRA message boards to al Qaida, information available to the U.S. and UK Governments shows that the messages are intended to provide  ideological and financial support to al-Qaida affiliated networks and potential recruits. AQ-affiliated author, Lewis Attiyatullah, whose statements have been published on MIRA's website, has been directly

JS-2164: U.S. Treasury Designates Two Individuals with <BR>Ties to al...R>Former BIF Leader and al-Qaida Associate <BR>Named Under E.O. 13224

Case 1:03-md-01570-GBD-SN   Document 1047-25   Filed 07/12/05   Page 5 of 6

associated with Al-Faqih for several years.

**Identifier Information**
**SAAD RASHED MOHAMMAD AL-FAQIH**
AKAs: Sa'd AL-FAQIH
       Sa'ad AL-FAQIH
       Saad ALFAGIH
       Sa'd AL-FAQI
       Saad AL FAQIH
       Saad AL-FAGIH
       Saad AL-FAKIH
       Abu Uthman

**DOB**: February 1, 1957
**POB:** Zubair, Iraq
**Nationality:** Saudi Arabian
**Address:** London, UK

Batterjee and al-Faqih were designated today pursuant to Executive Order 13224 chiefly pursuant to paragraphs (d)(i) and (d)(ii) based on a determination that they assist in, sponsor or provide financial, material, or technological support for, or financial or other services to or in support of, or are otherwise associated with, persons listed as subject to E.O. 13224. The individuals also meet the standard for inclusion in the UN 1267 Sanctions Committee's consolidated list because of the support provided to UBL, al Qaida or the Taliban.

Inclusion on the 1267 Committee's list triggers international obligations on all member countries, requiring them to freeze the assets and prevent the travel of listed individuals and to block the sale of arms and military equipment. Publicly identifying these supporters of terrorism is a critical part of the international campaign to counter terrorism. Additionally, other organizations and individuals are put on notice that they are prohibited from doing business with them.

Blocking actions are critical to combating the financing of terrorism. When an action is put into place, any assets existing in the formal financial system at the time of the order are to be frozen. Blocking actions serve additional functions as well, acting as a deterrent for non-designated parties who might otherwise be willing to finance terrorist activity; exposing terrorist financing "money trails" that may generate leads to previously unknown terrorist cells and financiers, disrupting terrorist financing networks by encouraging designated terrorist supporters to disassociate themselves from terrorist activity and renounce their affiliation with terrorist groups; terminating terrorist cash flows by shutting down the pipelines used to move terrorist-related assets; forcing terrorists to use alternative, more costly and higher-risk means of financing their activities; and engendering international cooperation and compliance with obligations under UN Security Council Resolutions.

