**United States District Court**
**Southern District of New York**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

> *Kathleen Ashton v. Al Qaeda Islamic Army*, 02-CV-6977 (RCC)
> *Ernesto Barrera v. Al Qaeda Islamic Army*, 03-CV-7036 (RCC)
> *Thomas E. Burnett, Sr. v. Al Baraka Inv. & Dev. Corp.*, 03-CV-5738 (RCC)
> *Thomas E. Burnett, Sr. v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849 (RCC)
> *Continental Cas. Co. v. Al Qaeda*, 04-CV-5970 (RCC)
> *Euro Brokers Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279 (RCC)
> *Federal Ins. v. Al Qaida*, 03-CV-6978 (RCC)
> *New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105 (RCC)
> *Gladys H. Salvo v. Al Qaeda Islamic Army*, 03-CV-5071 (RCC)
> *Walter Tremsky v. Osama bin Laden*, 02-CV-7300 (RCC)
> *World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280 (RCC)

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF**
<u>**SALEH AL RAJHI**</u>

**FISH & RICHARDSON P.C.**

Thomas M. Melsheimer (TM-4466)
(Admitted *pro hac vice*)
John M. Helms (JH-7931)
(Admitted *pro hac vice*)
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Telecopy)

**COUNSEL FOR DEFENDANT**

## I. Plaintiffs' Consolidated Response Fails to Allege Facts that State a Claim Against or Establish Jurisdiction Over Saleh Al Rajhi.

Before filing a federal court pleading accusing someone of intentionally supporting the murder of thousands of innocent Americans on September 11, 2001, one might assume that a party would be especially careful to base their allegations on facts rather than conclusory boilerplate and empty hyperbole. One might also assume that anyone making these kinds of accusations ought to be able to identify with specificity what an accused person allegedly *did* to provide knowing support to al Qaeda. One might also assume that anyone making these kinds of accusations could keep the defendants, and the allegations they make against those defendants, straight. But in this case, these assumptions would be mistaken. Instead, Plaintiffs have attempted to twist the federal pleading rules into a means of obfuscation and subterfuge and to turn Rule 11 into a game of chicken.

Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Saleh Al Rajhi (the "Consolidated Response" or "Consol. Resp.") not only fails to overcome the legal insufficiency of their allegations, but also repeatedly misstates or contradicts the contents of Plaintiffs' own pleadings. For example, several of the specific allegations that Plaintiffs cite as supporting their claims against Saleh Al Rajhi actually refer to a different defendant, Sulaiman Al Rajhi. For instance, in their Consolidated Response, Plaintiffs claim to have pleaded that Saleh Al Rajhi "established . . . the SAAR Foundation and named it after himself." In responding to the motions to dismiss of Sulaiman Al Rajhi and Abdullah Al Rajhi, Plaintiffs claim to have made the identical allegation against these defendants. In fact, however, Plaintiffs have only pleaded this as to Sulaiman Al Rajhi. Other allegations cited by Plaintiffs as referring specifically to Saleh Al Rajhi actually refer to the "Al Rajhi family" (which includes two former defendants whom Plaintiffs voluntarily dismissed) without identifying any particular individual,

or refer collectively and in conclusory fashion to all of the hundreds of defendants in this case. The few specific allegations made against Saleh Al Rajhi were discussed in the opening motion, and Plaintiffs have failed to respond to those arguments. Because the Plaintiffs do not and cannot meet the established pleading standards that this Court has required to state a claim, they cannot sully Saleh Al Rajhi with this action any longer. The Court should dismiss Plaintiffs' purported claims against Saleh Al Rajhi with prejudice.

## II. Plaintiffs' Consolidated Response Fails to State a Claim Against Saleh Al Rajhi Under Rule 12(b)(6).

### A. The Consolidated Response Misconstrues and Misstates the Allegations Made Against Saleh Al Rajhi in the Pleadings.

The Consolidated Response offers several new arguments against Saleh Al Rajhi that are not supported by, and in fact misstate, the allegations in the pleadings. Not only do these new arguments contradict Plaintiffs' pleadings, they also conflict directly with arguments that Plaintiffs have raised in opposition to other motions to dismiss. In short, Plaintiffs appear either not to know or not to care what they have actually alleged or against whom they have actually made allegations in this lawsuit.

For example, Plaintiffs assert in the Consolidated Response that Saleh Al Rajhi is "identified on the Golden Chain." CONSOL. RESP. at 17. But, in fact, the pleadings allege that the "Golden Chain" document refers to *Sulaiman* Al Rajhi, not Saleh. *See*, *e.g.*, *Euro Brokers* ¶ 93. Exhibiting further confusion, Plaintiffs' response to the motion which seeks dismissal of Abdullah Al Rajhi (Saleh's nephew) contends that the "Golden Chain" document refers to *Abdullah* Al Rajhi, not to Saleh or to Sulaiman. *See* PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF ABDULLAH AL RAJHI ["ABDULLAH RESP."] at 17. Furthermore, recent supplemental briefing filed by other Plaintiffs contends that the "Al

Rajhi" to which the "Golden Chain" refers is the Al Rajhi Bank,[1] an entity with respect to which this Court has already found that Plaintiffs failed to state a claim. *See In re: Terrorist Attacks on September 11, 2001* [hereinafter, "*In re Sept. 11th*"], 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005). Plaintiffs' abject confusion about the alleged meaning of the "Golden Chain" document lends further support to the Court's prior observation that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters." *Id.* at 817.

Additionally, the Consolidated Response also contends Saleh Al Rajhi "established . . . the SAAR Network,"[2] "named [it] after himself," and "used his authority as the head of the al Rajhi Bank and as a Director of IIRO and MWL to facilitate the sponsorship of al Qaeda through those entities." *See* CONSOL. RESP. at 17, 19. As with the "Golden Chain," Plaintiffs also make identical statements in response to the motion to dismiss Abdullah Al Rajhi, but Plaintiffs' pleadings do not, in fact, direct these allegations against either **Saleh** or **Abdullah**. *See*, *e.g.*, *Burnett* ¶ 261; *Fed. Ins.* ¶¶ 213, 281. Furthermore, these statements are inconsistent with Plaintiffs' various allegations that identify Yaqub Mirza as the "financial mastermind of the SAAR Network," *see*, *e.g.*, *Burnett* ¶ 253, that fail to identify Saleh Al Rajhi as one of the individuals who "operated the SAAR Foundation," *see*, *e.g.*, *WTCP* ¶ 215; *Burnett*, PLS.' RESP. TO AL RAJHI BANK'S RULE 12(E) REQUEST TO PLS. (Aug. 27, 2003) ¶ 80, and that assert that the "SAAR Foundation was . . . formed in the 1970s by a group of Muslim scholars and scientists from the Middle East and Asia," *see*, *e.g.*, *Burnett* ¶ 261. Again, it appears that Plaintiffs either

---

[1] Plaintiffs' Supplemental Memorandum in Opposition to Motions to Dismiss of Wa'El Hamza Jelaidan, Khalid Bin Mahfouz and Yousef Jamee (Docket No.977), Exhibit E at 24 ("Source noted that the name AL-RAJHI listed next to number 7 on this document is the name of a bank in which Al Qaeda had funds on deposit").

[2] The "SAAR Network" is a term coined by Plaintiffs to describe a vague group of allegedly related entities and this Court has recognized that the "SAAR Network" is a concept constructed by Plaintiffs. *See In re Sept. 11th*, 359 F. Supp. 2d at 823 (noting "scant" basis to link the alleged entities under the "SAAR Network" title).

do not know or do not care what they have actually alleged against Saleh Al Rajhi in this action. Because Plaintiffs' arguments are internally inconsistent and contradict allegations in their pleadings, the Court can and should disregard these statements in ruling on the Motion to Dismiss.

  **B.** **Plaintiffs' Pleadings Fail to Allege that Saleh Al Rajhi Knowingly Supported Terrorism.**

    **1.** **Plaintiffs Do Not Link Saleh Al Rajhi's Alleged Affiliation with Charities and Businesses to Plaintiffs' Alleged Injuries at the Hands of Al Qaeda.**

Even if the Court looks past the obvious errors in the Consolidated Response, Plaintiffs' purported claims still fail. The Consolidated Response summarizes Plaintiffs' argument against Saleh Al Rajhi, thus: "The Plaintiffs in the Complaints have alleged that Saleh Al Rajhi provided monetary and other support to the SAAR network, and that the SAAR network knowingly supported the terrorist activities of al Qaeda." CONSOL. RESP. at 5. This tautological conclusion, however, says nothing about Saleh Al Rajhi's particular individual knowledge about alleged wrongful conduct by the "SAAR Network."[3]

In ruling on earlier motions to dismiss, the Court has emphasized that Plaintiffs must plead specific facts that a defendant "[knew] the wrongful nature of the primary actor's conduct" in order to create liability under claims of conspiracy and aiding and abetting. *See*, *e.g.*, *In re Sept. 11th*, 349 F. Supp. 2d at 826. This Court has focused on the alleged knowledge of the individual who is accused of associating himself with charities or businesses which are, in turn, alleged to have materially supported, aided or abetted al Qaeda. *E.g.*, *id.* at 800-801 (addressing allegations that Princes Sultan and Turki provided money to charities which then provided

---

[3] Indeed, although not a basis for this motion, Saleh Al Rajhi's mental infirmity now and during the relevant time period raises serious questions as to whether he even had the capacity "knowingly" or "intentionally" to engage in any wrongful conduct.

- 4 -

money to al Qaeda). Where (as here) there is no allegation to support an inference that the accused individual knew that a seemingly legitimate organization (or someone within an organization) was materially assisting al Qaeda, then the Court has dismissed the purported claims against the accused. *See*, *e.g.*, *id.* (finding that Plaintiffs failed to state a claim against the Princes). Even the Seventh Circuit in *Boim*, on whose opinion the Plaintiffs heavily rely, recognized that simply funding an organization does not give rise to liability, unless the donor knew that the organization was engaged in illegal activities and intended to facilitate that wrongdoing. *See Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1011, 1023 (7th Cir. 2002).

That lynchpin—an allegation that Saleh Al Rajhi knew that the "SAAR Network" was up to no good and desired to help its crimes succeed—is simply missing from this case. Rather, the allegations made against Saleh Al Rajhi are like those made against Prince Sultan, Prince Turki, Saleh Kamel, Tariq Binladin and Bakr Binladen whom the Court has already dismissed.

As with those dismissed defendants, Plaintiffs are attempting to predicate liability on Saleh Al Rajhi's alleged (1) donations to charity, (2) founding of an organization, or (3) service as an officer or director without anything other than conclusory allegations to suggest that he knew of any wrongdoing. And as with those dismissed defendants, such allegations fail to state a claim against Saleh Al Rajhi. *Cf. In re Sept. 11th*, 349 F. Supp. 2d at 813-814 (dismissing Princes Sultan and Turki who allegedly made charitable donations); *id.* at 821-22 (dismissing Tariq and Bakr Binladen who allegedly served as executives); *id.* at 835-36 (dismissing Saleh Kamel who allegedly founded a company).

### 2. Plaintiffs' Allegation that Saleh Al Rajhi's Telephone Number was Found in Kenya Does Not State a Claim Against Saleh Al Rajhi.

Plaintiffs also attempt to support their purported claims against Saleh Al Rajhi with the allegation that his telephone number was found in a building in Kenya allegedly occupied by

Wadih el-Hage and numerous others. *E.g., Ashton* ¶ 561. But, the allegation that a telephone number alleged to be that of Saleh Al Rajhi was found in a telephone directory whose author and owner are unknown suggests nothing about any action or intention of Saleh Al Rajhi. In fact, Plaintiffs' pleadings are utterly devoid of any allegation that Saleh Al Rajhi ever communicated with Wadih el-Hage or anyone else who may have occupied that building in Kenya, ever met with Wadih el-Hage or anyone else potentially associated with the directory, or ever had any contact with Wadih el-Hage or anyone else who might have written that phone number. Like their other allegations against Saleh Al Rajhi, Plaintiffs' allegation that Saleh Al Rajhi's telephone number appeared in that directory falls woefully short of providing the kind of pleading that could raise an inference that Saleh Al Rajhi knowingly supported terrorism. Apparently conceding the irrelevance of this allegation, Plaintiffs omit any reference to it in their Consolidated Response. Thus, for the reasons discussed here and in the motion to dismiss, the telephone number allegation fails to state a claim against Saleh Al Rajhi.

### 3. Plaintiffs' Generalized Allegations Against "All Defendants" or "the Al Rajhi Family" Do Not State Individual Claims Against Saleh Al Rajhi.

In ruling on earlier motions to dismiss, the Court found that generalized allegations made against "all Defendants" did not state claims against any particular defendant. *See In re Sept. 11th*, 349 F. Supp. 2d at 805. Similarly, the Court refused to lend credence to undifferentiated allegations made against unspecified members of a family or other group. *Id.* at 812. Despite these rulings, the Consolidated Response asks the Court to maintain the purported claims against Saleh Al Rajhi based on Plaintiffs' allegations against "all Defendants" and their undifferentiated allegations against the "Al Rajhi family." *See, e.g.*, CONSOL. RESP. at 5. Plaintiffs, however, offer no factual or legal reason that the Court should reverse its earlier rulings. Because these

vague and conclusory allegations say nothing about what Saleh Al Rajhi purportedly did, said, knew or intended, they fail to state a claim against him. *See*, *e.g.*, *In re Sept. 11th*, 349 F. Supp. 2d at 805 ("Plaintiffs claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11. Without supporting factual allegations, such a statement is insufficient to establish an agency relationship.") (internal citations omitted).

### C. As Discussed in the Motion to Dismiss, Several of Plaintiffs' Purported Claims Fail as a Matter of Law.

Even if the Court finds that Plaintiffs have pled facts sufficient to survive a motion to dismiss, several of their claims still fail as a matter of law. Section II.C. of the Reply Brief in Support of Motion to Dismiss Abdullah Al Rajhi, filed concurrently herewith, discusses the shortcomings of Plaintiffs' legal theories in detail. For the sake of brevity, Saleh Al Rajhi expressly incorporates that discussion herein by reference and cites those deficiencies as additional or alternative grounds for dismissal of the claims against him.

### III. Plaintiffs' Consolidated Response Fails to Identify a Sufficient Basis for the Exercise of Personal Jurisdiction Over Saleh Al Rajhi.

Plaintiffs have failed to meet their burden and establish a *prima facie* case that this Court can exercise personal jurisdiction over Saleh Al Rajhi. As discussed above, Plaintiffs have failed to allege sufficiently that Saleh Al Rajhi is liable under any concerted action or conspiracy theory. Accordingly, Plaintiffs' conclusory and generalized allegations are insufficient to sustain a claim for relief against Saleh Al Rajhi and do not provide a basis for the exercise of direct personal jurisdiction over him. *See In re Sept. 11th*, 349 F. Supp. 2d at 804, 833. Similarly, Plaintiffs' assertions that Saleh Al Rajhi has "business interests" in the United States or that he "conducts business" through various entities conducting business in the U.S., CONSOL. RESP. at 18-19, fail to provide a sufficient basis for the exercise of general jurisdiction. *See* CONSOL.

RESP. at 18-19. These vague and conclusory allegations fail to suggest (much less show) the precise nature and scope of any alleged contacts with the forum.[4] Regardless, this Court has already ruled that the mere affiliation with an entity having contact with the U.S. is insufficient to support a finding of personal jurisdiction. *See In re Sept. 11th*, 349 F. Supp. 2d at 820-21. Moreover, Plaintiffs' suggestions that Saleh Al Rajhi donated to the "SAAR Network" and that he named the Saar Foundation after himself mischaracterize Plaintiffs' pleadings, as discussed above. Accordingly, Plaintiffs have failed to establish a *prima facie* basis for the exercise of either specific or general personal jurisdiction over Saleh Al Rajhi, and the Court should grant his Motion to Dismiss.

## IV.    Conclusion

For the foregoing reasons, Saleh Al Rajhi respectfully requests that the Court grant his Motion to Dismiss for failure to state a claim and for lack of personal jurisdiction.

---

[4] Although Plaintiffs have filed a Declaration and exhibits in support of their statement that Saleh Al Rajhi has "business interests" in the United States, *see* CONSOL. RESP. at 19, Plaintiffs fail to make any argument based upon these documents or point to any specific evidence in these voluminous records that purportedly supports their claims. Even if the Court chose to scour the entirety of these records itself, none would provide the basis for exercising personal jurisdiction over Saleh Al Rajhi. The government exhibit from the case of *United States of America v. Usama Bin Laden, et al.* in no way refers to Saleh Al Rajhi and contains not even a scintilla of evidence that Saleh Al Rajhi has any contacts with the United States. The Re-Amended Defence filed by The Wall Street Journal Europe SPL in the British High Court of Justice contains no evidence of any contacts with the United States, but rather is a pleading, which was subsequently amended, that simply restates the insufficient allegations contained in Plaintiffs' own pleadings. Additionally, the Annual Report of Al Rajhi Banking and Investment Corp. from 1988 merely reflects Saleh Al Rajhi's role with the Al Rajhi Bank in 1988, but does not provide any evidence of contacts with the United States, and allegations that the Al Rajhi Bank itself had contact with the United States is not enough to find personal jurisdiction over Saleh Al Rajhi. *In re Sept. 11th*, 349 F. Supp. 2d at 820-21. Finally, the attached testimony of Jonathan M. Winer does not contain any evidence or mention that Saleh Al Rajhi had any contacts with the United States. In fact, Mr. Winer's only mention of Saleh Al Rajhi in his testimony comes when he describes *press accounts* of *potential* terrorist funding in Saudi Arabia. DECL. OF JUSTIN B. KAPLAN, Exhibit 4 at 10-11.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated: July 14, 2005

By:/s/ Thomas M. Melsheimer
   Thomas M. Melsheimer (TM-4466)
   (Admitted *pro hac vice*)
   John M. Helms (JH-7931)
   (Admitted *pro hac vice*)
   1717 Main Street, Suite 5000
   Dallas, TX 75201
   (214) 747-5070 (Telephone)
   (214) 747-2091 (Telecopy)

   **COUNSEL FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that, pursuant to this Court's Case Management Order No. 2, on July 14, 2005, I caused a true and correct copy of the foregoing to be served on all counsel electronically by the Court's Electronic Case Filing (ECF) system.

Dated: July 14, 2005                             /s/ Thomas M. Melsheimer
                                                 Thomas M. Melsheimer (TM-4466)
                                                 (Admitted *pro hac vice*)

90132372.2.doc