**United States District Court**
**Southern District of New York**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)**<br>ECF Case |

This document relates to:

*Cantor Fitzgerald v. Akida Bank Private Limited*, 04-CV-7065 (RCC)

### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF SULAIMAN AL RAJHI

**FISH & RICHARDSON P.C.**

Thomas M. Melsheimer (TM-4466)
(Admitted *pro hac vice*)
John M. Helms (JH-7931)
(Admitted *pro hac vice*)
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Telecopy)

**COUNSEL FOR DEFENDANT**

I.     **Plaintiffs' Response Fails To Allege Facts That State A Claim Against Sulaiman Al Rajhi.**[1]

The Plaintiffs' Memorandum in Opposition to Sulaiman Al Rajhi's Motion to Dismiss ("PLAINTIFFS' MEM.") confirms that Sulaiman Al Rajhi's Motion to Dismiss should be granted. Plaintiffs' pleadings fail to state a claim against Sulaiman Al Rajhi because they do not allege facts from which the Court could infer that Sulaiman Al Rajhi knowingly supported al Qaeda.[2] Plaintiffs rely on concerted action liability theories to connect Sulaiman Al Rajhi's alleged support of al Qaeda terrorists with Plaintiffs' alleged injuries. Their response fails because it pleads sparse factual allegations that, even if taken as true, do not support the unwarranted and strained inferential leap that Sulaiman Al Rajhi knowingly supported al Qaeda.

Plaintiffs' brief relies heavily on an unsupportable theory of imputed knowledge. Plaintiffs seek to string together a chain of inferences asserting that Sulaiman Al Rajhi "was a principal member and financier of the SAAR Network a.k.a. Safa Group, that the individuals and entities within the SAAR Network/Safa Group functioned as agents and alter-egos of each other, that the Defendant and the SAAR Network/Safa Group entities financed and materially supported Al Qaeda, and, that the Defendant had actual knowledge of or consciously avoided this fact." PLAINTIFFS' MEM. at 6. Yet, the bare facts alleged in their Complaint fail to support these conclusory assertions, and the additional, extraneous evidence the Plaintiffs seek to introduce actually contradicts them. Plaintiffs have attempted to rely on extraneous evidence not

---

[1] As the Cantor Fitzgerald Plaintiffs have adopted and incorporated by reference the Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss of Suliaman Al Rajhi, Sulaiman Al Rajhi adopts and incorporates by reference the Consolidated Reply Brief in Support of Motion to Dismiss of Sulaiman Al Rajhi filed concurrently herewith.

[2] Not only are the Plaintiffs' substantive allegations insufficient to state a claim against Sulaiman Al Rajhi, the Plaintiffs also devote considerable energy to arguments not raised in Defendant's Motion to Dismiss, such as subject matter jurisdiction and the availability of punitive damages, contribution and indemnity. This Reply will not and need not address those arguments.

found in their original pleadings.  PLAINTIFFS' MEM., Goodman Declaration, Exhibits, 3, 4 and 5. Addressing similar attempts to rely on extraneous "evidence" in response to a motion to dismiss, this Court has previously (and rightly) refused to consider such materials:

> The Court declines to review such extraneous materials and convert the . . . Defendants' motion to a Rule 56 motion for summary judgment. Accordingly, the Court has reviewed the pleadings alone in an effort to determine whether Plaintiff states a claim on which relief can be granted.

*Zeising v. Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) (internal citations omitted) (Casey, J.).  Even if the Court were to consider the materials submitted by Plaintiffs, those materials do not allege facts to support the inference that Sulaiman Al Rajhi knowingly provided support to al Qaeda.

## II. Plaintiffs Have Failed To State A Claim Against Sulaiman Al Rajhi Under Rule 12(b)(6).

Plaintiffs have not pleaded sufficient facts from which to impute knowledge to Sulaiman Al Rajhi for the conduct of unknown persons and/or entities over the last twenty years. Furthermore, Plaintiffs have not pleaded facts sufficient to support an allegation that anyone in the "SAAR Network/Safa Group" has actually provided knowing support to al Qaeda.  Plaintiffs have merely alleged that Sulaiman Al Rajhi "established" the Saar Foundation, which according to the Plaintiffs, was incorporated in 1983.  *See*, *e.g.*, *Burnett* ¶ 261.  Thus, the Plaintiffs ask this Court to infer that because Sulaiman Al Rajhi founded the Saar Foundation, he is liable for and has knowledge of the acts of all of the so-called "SAAR Network/Safa Group" entities over the last twenty years.  Their brief claims that some unidentified individuals or entities within the "Safa Group," at some unidentified time and in some unidentified way provided material support to al Qaeda. Based on this, their brief attempts to argue that they have sufficiently pleaded that Sulaiman Al Rajhi supported al Qaeda.

Many of the Plaintiffs' allegations mention "SAAR Network a.k.a. Safa Group." In footnote 7 of the Plaintiffs' response, they state that the term "SAAR Network" is what a draft affidavit by a customs agent named David Kane refers to as "Safa Group," and that these terms are interchangeable. PLAINTIFFS' MEM. at 7, n.7. Then the Plaintiffs state that they will employ the term "Safa Group." *Id.* Both "SAAR Network" and "Safa Group" are nebulous terms that the Plaintiffs have adopted to describe what they contend is a group of related entities and/or individuals. *In re: Terrorist Attacks on September 11, 2001* [hereinafter, "*In re Sept. 11th*"], 349 F.Supp. 2d 765, 823 (S.D.N.Y. 2005) (noting "scant" basis to link the alleged entities under the SAAR Network title). These terms do not refer to any legally recognized entity or corporation. On the other hand, the Plaintiffs acknowledge that the Saar Foundation was a Virginia corporation that was dissolved in December of 2000. *See Burnett* ¶ 261. Yet, Plaintiffs conflate the term "Saar Foundation" with "Saar Network" and "Safa Group," which is misleading, as the Saar Foundation was an actual legal entity while "SAAR Network" and "Safa Group" are terms coined by the Plaintiffs, with no legal significance.

### A. Sulaiman Al Rajhi's Alleged "Establishment" of the Saar Foundation Cannot Support an Inference of Knowing Support of Al Qaeda.

#### 1. This Court has Stated that It Will Not Make Unwarranted Inferences or Accept Conclusory Allegations.

Plaintiffs fail to state a claim because their pleadings do not plead facts that would permit these unwarranted inferences. As this Court stated in its prior opinion, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal pleading standard of Rule 12(b)(6)." *In re Sept. 11th*, 349 F. Supp. 2d at 832-833 (quoting *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)). In addition, the Court can and should reject Plaintiffs' invitations to draw inferences that are unwarranted, illogical, or overly

3

tenuous. "Courts need not strain to find inferences that are favorable to the plaintiff, which are not apparent of the fact of the complaint, nor are courts required to accept legal conclusions alleged in the pleaded facts." *Zeising*, 152 F. Supp. 2d at 335, 342 (citing *Barrett v. Poag & McEwen Lifestyle Centers-Deer Park Town Center, LLC,* 1999 WL 691850, *2 (N.D. Ill. Aug. 26, 1999)). Here, the tortured inferential leaps the Plaintiffs ask this Court to make are not supported by their pleadings.

In an analogous situation, this Court has ruled that a similar series of unwarranted inferences was impermissible. In granting the motion to dismiss of defendant Saleh Al Kamel, this Court held that the factual allegation "that Mr. Kamel was one of three founders of Al Shamal Islamic Bank in 1983, without additional allegations, does not state a claim for relief." *In re Sept. 11th*, 349 F. Supp. 2d at 835-836. The Court concluded that the allegation that Kamel founded an organization is not sufficient to support the inference that he is responsible for all of the activities of the organization or its employees in later years. *See id.* In this case, the Plaintiffs' theory is even more attenuated. They not only ask the Court to infer that Sulaiman Al Rajhi had knowledge of and responsibility for what the Saar Foundation did, but they also ask the Court to infer that he had knowledge of and responsibility for the activities of a supposed "network" of allegedly related entities, none of which Sulaiman Al Rajhi is alleged to have founded, managed, or run. Just as Kamel's alleged establishment of Al Shamal Islamic Bank did not raise an inference that he knew of or supported the alleged conduct of Al Shamal Islamic Bank or its employees, Sulaiman Al Rajhi's alleged establishment of the Saar Foundation fails to raise any inference that he knew of or supported any of the misconduct Plaintiffs allege. The Court need not strain to find this chain of unwarranted inferences because they are not apparent from the facts pled in the Plaintiffs' complaint.

### 2.   Plaintiffs Do Not Plead Facts From Which to Infer that Sulaiman Al Rajhi Had Knowledge of the Saar Foundation's Activities or Any Other Entity's Activities.

The bare factual allegation that Sulaiman Al Rajhi founded the Saar Foundation is not enough to raise an inference that Mr. Al Rajhi had knowledge of any of the Saar Foundation's activities, let alone the activities of various separate entities.[3]  In Plaintiffs' First Amended Complaint (hereinafter "COMPL."), they allege that Sulaiman Al Rajhi "established the SAAR Foundation (the acronym for his name) in Herndon, Virginia." COMPL., ¶ 107.  The Plaintiffs' brief reiterates this allegation, attributing it to testimony from Dr. Dore Gold.  PLAINTIFFS' MEM. at 6 (citing Goodman Declaration, Ex. 3).[4]   Plaintiffs have acknowledged that the Saar Foundation was incorporated in 1983, *Burnett* ¶ 261, almost eighteen years before the events of September 11, 2001.  Plaintiffs fail, however, to explain why the single act of allegedly founding an entity in 1983 (seven years before al Qaeda was allegedly even formed) equates to control or knowledge of everything that the entity and its employees may have done over the next two decades.

More telling than the single factual allegation that the Plaintiffs have pleaded are the numerous facts that the Plaintiffs have failed to plead.  The Plaintiffs do not plead that Sulaiman Al Rajhi was involved in the operations or management of the Saar Foundation.  They do not allege that Sulaiman Al Rajhi "established" any of the other entities that make up what they refer to as the "Safa Group," much less that he was involved in the management or operation of those

---

[3] Plaintiffs assert, for the first time in their response brief, that "there is evidence from which to infer that Defendant funded the Safa Group throughout the relevant period leading up to the September 11 attacks." PLAINTIFFS' MEM. at 9 (citing Goodman Declaration Ex. 4 at p. 51 ¶7 ).  Not only is this allegation not found in Plaintiffs' pleadings, it is based on "evidence" outside of the pleadings.  Even if the Court were to review this evidence, it fails to support this inference.  The Kane affidavit does not state which Al Rajhi family member funded Safa Group, to which entities they allegedly gave, who was involved, where the funds ultimately went or what the Al Rajhi family knew.

[4] As stated above, Dr. Gold's testimony was not contained in the pleadings, and therefore, should not be considered at the motion to dismiss stage.

5

entities. They do not even plead facts from which to infer that Sulaiman Al Rajhi was aware of the existence of any of the entities that make up what Plaintiffs refer to as the "Safa Group." They do not plead facts from which to infer that Sulaiman Al Rajhi was aware of the structure or operations of these other entities, or that he knew who their officers or directors were.

The Plaintiffs do allege that funds were interchanged between "Safa charities," but they do not allege that Sulaiman Al Rajhi was aware of or involved in the alleged interchange. The Plaintiffs do allege that the "SAAR Network" or the "Safa Group" shared common officers and directors. PLAINTIFFS' MEM. at 8-9. Yet, the Plaintiffs do not allege that Sulaiman Al Rajhi was one of these common officers or directors. In fact, the draft Kane Affidavit, on which Plaintiffs attempt to rely, actually lists the officers and directors of the entities in what he calls the "Safa Group," but Sulaiman Al Rajhi is not one of them. *See* PLAINTIFFS' MEM., Goodman Declaration, Ex. 4 at p. 42 (chart).

Furthermore, the Plaintiffs' Response brief claims that at some unidentified time, funds from an unidentified "Saar entity" went to Youssef Nada and Ahmed Idris Nasreddin. PLAINTIFFS' MEM. at 12 (citing Goodman Declaration Ex. 5). The Cantor Fitzgerald Plaintiffs have not pleaded this allegation in their Complaint or RICO Statement. In any event, there is no allegation that Sulaiman Al Rajhi knew about this alleged transfer of funds or that he was involved in it in any way. Furthermore, Plaintiffs fail to allege where these funds allegedly went after they went to Nada and Nasreddin. *Id.* Plaintiffs have not adequately pleaded facts from which the Court could infer that any "Safa Group" entity provided knowing support to al Qaeda, much less that Sulaiman Al Rajhi provided knowing support to al Qaeda.

Plaintiffs' pleadings also do not allege facts sufficient to support the existence of a principal/agency relationship between Sulaiman Al Rajhi and any particular entity within the so-

6

called "SAAR Network" or "Safa Group" that would permit the imputation of liability to Sulaiman Al Rajhi for the alleged actions of any such entity. Indeed, Plaintiffs do not even attempt to identify any particular entity of which they claim Sulaiman Al Rajhi is allegedly a principal or alter ego.

The cases on which Plaintiffs attempt to rely concerning imputed knowledge provide them no support. First, none suggests that being a founder of an entity is sufficient to support imputing the entity's knowledge to the founder, much less the knowledge of other supposedly affiliated entities. Second, in each of the cases, there was a defined relationship between the agent and the principal that potentially permitted imputation of knowledge. *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (being the president of a corporation was not enough to justify piercing the corporate veil); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 164-165 (2d Cir. 2003) (knowledge of controlling shareholders who orchestrated wrongful conduct was imputed to corporation); *Dubai Islamic Bank v. Citibank N.A.*, 256 F. Supp. 2d 158, 166-167 (S.D.N.Y. 2003) (actions of corporation's employees were imputed to corporation); *New York Islanders Hockey Club LLP v. Comerica Bank*, 71 F. Supp. 2d 108, 1118-20 (E.D.N.Y. 1999) (actions of Senior Vice President were imputed to the corporation). Here, however, Plaintiffs do not allege any facts that would permit the inference that any entity within the so-called "SAAR Network" or "Safa Group" was an agent of Sulaiman Al Rajhi.

> **B.     The Allegation that Sulaiman Al Rajhi's Name Appeared on the So-Called "Golden Chain" Letter Does Not Permit an Inference of Knowing Support for Al Qaeda.**

Plaintiffs also attempt to invoke the so-called "Golden Chain" letter by reiterating the allegation from their Complaint that Sulaiman Al Rajhi "appears on the Golden Chain Al Qaeda

donor list." PLAINTIFFS' MEM. at 10; COMPL., ¶ 107. As an initial matter, the document itself contains the name "Al Rajhi" with no first name,[5] but in any event, the Court has already held that the appearance of a person's name on the so-called "Golden Chain" letter does not permit an inference that the person knowingly supported al Qaeda. As the Court has explained, the document "is only a list of names found in a charity office," and "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters." *See In re Sept. 11th*, 349 F.Supp. 2d at 817, 818.[6]

### C. The Concept of Conscious Avoidance Does Not Save Plaintiffs' Pleadings.

Finally, Plaintiffs attempt to invoke the concept of conscious avoidance to suggest knowledge. They suggest that Sulaiman Al Rajhi consciously avoided "the facts," but they do not try to explain what those "facts" might be. *See* PLAINTIFFS' MEM. at 15. This position does not help Plaintiffs for several reasons. First, Plaintiffs have not pleaded conscious avoidance. Second, Plaintiffs' pleadings do not identify any ***act*** that Sulaiman Al Rajhi allegedly performed with conscious avoidance that could potentially render him liable to the Plaintiffs. Allegedly

---

[5] Despite allegations in Plaintiffs' complaints that the Golden Chain document refers to Sulaiman Al Rajhi, many of Plaintiffs' other submissions suggest that the Golden Chain document's lone reference to "Al Rajhi" refers to other entities. For example, Plaintiffs assert in other consolidated responses that the Golden Chain document refers to Abdullah Al Rajhi or Saleh Al Rajhi rather than Sulaiman Al Rajhi. *See* PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF ABDULLAH AL RAJHI at 17; PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF SALEH AL RAJHI at 17. Furthermore, recent supplemental "evidence" filed by Plaintiffs contends that the "Al Rajhi" to which the "Golden Chain" refers is the Al Rajhi Bank, an entity with respect to which this Court has already found that Plaintiffs failed to state a claim. *See In re Sept. 11th*, 349 F. Supp. 2d at 833; Plaintiffs' Supplemental Memorandum in Opposition to Motions to Dismiss of Wa'El Hamza Jelaidan, Khalid Bin Mahfouz and Yousef Jamee (Docket No.977), Exhibit E at 24 ("Source noted that the name AL-RAJHI listed next to number 7 on this document is the name of a bank in which Al Qaeda had funds on deposit").

[6] Plaintiffs cite the 9/11 Commission Report in an attempt to explain the nature of the so-called "Golden Chain letter." PLAINTIFFS' MEM. at 11 (citing Goodman Declaration Ex. 6 Ch.2 p. 55). This citation actually undermines their claims. The quoted portion of the 9/11 Commission Report indicates that the "Golden Chain" was a support network during the Afghan/Soviet war in which the United States was on the same side as Usama Bin Laden and the Afghan mujahadeen. Moreover, the passage does not attempt to identify or authenticate the ***document*** found in a charity office that Plaintiffs now claim is a list of "Golden Chain" supporters.

8

founding the Saar Foundation in 1983 could not be such an act, especially since al Qaeda did not even exist back then.  Third, each of the cases Plaintiffs cite is a criminal case, and Plaintiffs cite no cases for the proposition that conscious avoidance applies to the civil causes of action alleged here.  In fact, the Court has ruled that the causes of action in this case require *knowing* support of al Qaeda.  *See In re Sept. 11th*, 349 F.Supp.2d at 826 ("To be liable under either conspiracy or aiding and abetting, . . .the Defendant 'must know the wrongful nature of the primary actor's conduct.'")(quoting *Pittman v. Grayson*, 149 F.3d 111, 122 (2d Cir. 1998)); *id.* at 828 (in order to sufficiently allege material support of terrorism under the ATA, "a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities").  Fourth, even if the concept of conscious avoidance applied, Plaintiffs have not pleaded sufficient facts to invoke it.  When applicable, conscious avoidance requires a showing that "the defendant (1) was aware of a high probability of the disputed fact and (2) deliberately avoided confirming that fact."  *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003).  Plaintiffs' pleadings do not identify the "disputed fact," much less plead facts sufficient to justify an inference of awareness of a high probability of the fact and to identify deliberate action allegedly taken by Sulaiman Al Rajhi to avoid confirming the fact.  Conscious avoidance simply does not apply here.

### D. As Discussed in the Motion to Dismiss, Several of Plaintiffs' Purported Claims Fail as a Matter of Law.

Even if the Court finds that Plaintiffs have pleaded facts sufficient to survive a motion to dismiss, several of their claims still fail as a matter of law.  Section II.C. of the Reply Brief in Support of Motion to Dismiss Abdullah Al Rajhi, filed concurrently herewith, discusses the shortcomings of Plaintiffs' legal theories in detail.  For the sake of brevity, Sulaiman Al Rajhi

9

expressly incorporates that discussion herein by reference and cites those deficiencies as additional or alternative grounds for dismissal of the claims against him.

## III.     CONCLUSION

For the foregoing reasons, Sulaiman Al Rajhi respectfully requests that the Court grant his Motion to Dismiss for failure to state a claim and for lack of personal jurisdiction.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  July 14, 2005

By: /s/ Thomas M. Melsheimer
Thomas M. Melsheimer (TM-4466)
(Admitted *pro hac vice*)
John M. Helms (JH-7931)
(Admitted *pro hac vice*)
1717 Main Street, Suite 5000
Dallas, TX  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Telecopy)

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to this Court's Case Management Order No. 2, on July 14, 2005, I caused a true and correct copy of the foregoing to be served on all counsel electronically by the Court's Electronic Case Filing (ECF) system.

Dated: July 14, 2005                          /s/ Thomas M. Melsheimer
                                              Thomas M. Melsheimer (TM-4466)
                                              (Admitted pro hac vice)

90132366.2.doc