DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
1177 Avenue of the Americas • New York, NY 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880

Writer's Direct Dial: (212) 835-1446
E-Mail Address: Goodmanj@dsmo.com

MO ENDORSED

July 1, 2005

**VIA HAND DELIVERY**

Honorable Richard Conway Casey
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: <u>Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.</u>, 04-CV-7065 (MDL 1570)

Dear Judge Casey:

    Plaintiffs Cantor Fitzgerald & Co. and its affiliates and the Port Authority of New York and New Jersey and its affiliates (the "Cantor Fitzgerald Plaintiffs") respond to the June 28, 2005 letter to Your Honor sent by Martin McMahon, counsel to defendants Dallah Al Baraka, Saleh Kamel and Al Baraka Investment & Development Corp. I initially note that Mr. McMahon's original letter to the Court, dated June 15, 2005, constituted a letter application sent in violation of the Court's June 18, 2004 Order, which requires that parties first circulate any proposed letter application to adversaries to work out scheduling and submit the application, response and reply in a single package.

    With respect to Mr. McMahon's comments concerning the alleged lack of distinction between the claims dismissed by the Court's January 18, 2005 Order and the other consolidated plaintiffs' claims, the consolidated plaintiffs disagree and request that any further argument, if necessary, be conducted through formal briefing. However, we are compelled to respond to a series of incorrect statements asserted by Mr. McMahon concerning the "Golden Chain" document.

    Mr. McMahon states that the Golden Chain document was rejected by Judge Robertson of the U.S. District Court for the District of Columbia. Judge Robertson did not consider the authenticity and admissibility of the "Golden Chain" document. Rather, on application from plaintiffs, Judge Robertson issued letters rogatory to authorities in Bosnia to obtain these materials. The Bosnian authorities allowed the provision of the requested materials, including the Golden Chain document, in response to the letters rogatory. The Golden Chain document thus is part of the Court record in 03 MDL 1570.

July 1, 2005
Page 2

      Moreover, the Golden Chain has been relied upon by numerous branches of the United States government. For example, the U.S. Department of Treasury cited the Golden Chain in its announcement of the designation of Adel Baterjee:

> These searches [in Bosnia] uncovered numerous handwritten documents detailing the origin and history of the al Qaida organization. Among the recovered files was a copy of a 1988 handwritten draft listing wealthy financiers of UBL's mujahideen operations in Afghanistan, referred to within al Qaida as the "Golden Chain."
>
> This list contains 20 names with a parenthetical after each name, likely indicating the person who received funds from the specified donor. "Usama" appears after seven of the listings and "Baterji" appears after an additional six listings.

United States Treasury, Office of Public Affairs, Press Release, U.S. Treasury Designates Two Individuals with Ties to al Qaida, UBL (Dec. 21, 2004), attached as Ex. 8 to the Declaration of Jonathan Goodman in Support of the Cantor Fitzgerald and Port Authority Plaintiffs' Opposition to Faisal Islamic Bank Motion to Dismiss. In addition, the 9/11 Commission cited the Golden Chain with authority in its Report, stating:

> Bin Laden eventually enjoyed a strong financial position in Afghanistan, thanks to Saudi and other financiers associated with the Golden Chain."

9/11 Commission Report, at pg. 66, attached as Ex. 6 to the Goodman Decl. in Support of Cantor Fitzgerald Plaintiffs' Opposition to Sulaiman Al Rajhi Motion to Dismiss.

      Further, in the 9/11 Commission's Monograph on Terrorist Financing, the Commission described the materials seized in Bosnia as follows:

> The material seized included many documents never before seen by U.S. officials, such as the actual minutes of Al Qaeda meetings, the Al Qaeda oath, al Qaeda organizational charts, and the 'Golden Chain' list of wealthy donors to the Afghan mujahideen, as well as letters between Arnaout and Bin Laden, dating to the late 1980's. It was an enormous break.

Monograph on Terrorist Financing, at pg. 103, found at http://www.9-11commission.gov/staff_statements/911_TerrFin_Monograph.pdf, and generally cited by Federal Insurance Plaintiffs in their Opposition to the Kingdom of Saudi Arabia's Motion to Dismiss, at pg. 10.

      The Golden Chain also has been cited by the Congressional Research Service as authority:

July 1, 2005
Page 3

> [T]he Golden Chain enabled bin Laden and Al Qaeda to replace lost financial assets and establish a base in Afghanistan following their abrupt departure from the Sudan in 1996.

Alfred Prados and Christopher Blanchard, "Saudi Arabia: Terrorist Financing Issues" CRS Report for Congress, at pg.3 (December 8, 2004), Ex. 10, to Affirmation of Sean P. Carter in Opposition to the Saudi Joint Relief Committee for Kosovo and Chechyna's Motion to Dismiss, dated March 18, 2005. *See* Plaintiffs' Supplemental Memorandum In Opposition To Motions To Dismiss of Wa'el Hamza Jelaidan, Khalid Bin Mahfouz, and Yousef Jameel (noting Golden Chain document was corroborated Al Qaeda members, including Jamal al Fadl); *see also* Cantor Fitzgerald Plaintiffs' Opposition to Sulaiman Al Rajhi Motion to Dismiss, at pg. 11 n.8 (referencing use of Golden Chain document <u>United States v. Arnaout</u> sentencing hearing).

Finally, McMahon erroneously states that the Golden Chain was rejected by two prominent British Courts. In <u>Mahfouz v. Brisard & Others</u>, the Golden Chain document was never considered or ruled upon by the Court. In <u>Jameel v. Times Newspaper Ltd.</u>, in considering the newspaper defendant's motion for summary judgment in the libel case before it, the Court did not rule on the admissibility of the Golden Chain document. In those proceedings, no effort was made to authenticate the document by a live witness. Contrary to Mr. McMahon's overstatements, the Golden Chain document does not appear to have been considered in an actual trial setting. The MDL Plaintiffs' anticipate that they may be able to authenticate the document and present admissible testimony concerning the document after discovery is complete.

It is disingenuous for Mr. McMahon to argue the merits and admissibility of the Golden Chain, while at the same time rejecting the parties' attempts to supplement the record with explanations of the documents, particularly when the U.S. Department of Treasury and the 9/11 Commission specifically rely on the Golden Chain document in their analyses of Al Qaeda financing and no evidentiary hearing has been held.

Respectfully submitted,

*[signature]*

Jonathan M. Goodman

cc: All Counsel of Record (via email)

*Handwritten note:* Once again, the Court asks the parties to attempt to work out their scheduling differences. The Court prefers consolidated motions when they are possible and appropriate. The parties are to work out their proposed briefing schedule and submit them to the Court by August 4, 2005.

July 15, 2005

*[signature]*

DOCSNY.155188.1

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP