UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Civil Action No.
03 MDL 1570 (RCC)
ECF Case

This document relates to:

> Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al., Case No. 03-CV-9849 (S.D.N.Y.)
> Federal Insurance Co., et al. v. Al Qaida, et al., Case No. 03-CV-6978 (S.D.N.Y.)
> Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-07279-UA (S.D.N.Y.)
> New York Marine and General Insurance Co. v. Al Qaida, et al., Case No. 04-CV-6105 (S.D.N.Y.)
> World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-7280 (S.D.N.Y.)

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

BANCROFT ASSOCIATES PLLC
601 13th St., N.W.
Suite No. 930 South
Washington, D.C. 20005
(202) 234-0090

Attorneys for Defendant
  Yousef Jameel

Viet D. Dinh
Wendy Keefer
Lizette D. Benedi
Nathan A. Sales

        Of Counsel

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................. 7

I.   AS IN BURNETT, PLAINTIFFS DO NOT ALLEGE SUFFICIENT
     FACTS TO ESTABLISH THE JURISDICTION OF THIS COURT
     OVER MR. JAMEEL OR TO STATE ANY CLAIM UPON WHICH
     RELIEF COULD BE GRANTED. ......................................................................... 7

     A.   The Court Lacks Personal Jurisdiction Over Mr. Jameel. ........................ 7

     B.   Plaintiffs Fail to State Any Claim Upon Which Relief Can Be Granted. ... 13

II.  PLAINTIFFS' RICO STATEMENTS ADD NO PROBATIVE VALUE
     AND FALL FAR SHORT OF STATING A COGNIZABLE CLAIM
     UNDER RICO. .................................................................................................. 19

CONCLUSION ........................................................................................................... 25

## **TABLE OF AUTHORITIES**

### **Cases**

Abner Realty, Inc. v. General Servs. Admin.,
   97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042 (S.D.N.Y. July 22, 1998) .......... 22

Asahi Metal Indus. Co. Ltd. v. Superior Court,
   480 U.S. 102 (1987) ................................................................................................... 10

Baisch v. Gallina,
346 F.3d 366 (2d Cir. 2003) ........................................................................................ 25

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   305 F.3d 120 (2d Cir. 2002) ......................................................................................... 8

Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.,
   291 F.3d 1000 (7th Cir. 2002). ................................................................................... 11

Burnett v. Al Baraka Inv. & Dev. Corp.,
   292 F. Supp. 2d 9 (D.D.C. 2003) ............................................................................... 10

Chaiken v. VV Publ'g Corp.,
   119 F.3d 1018 (2d Cir. 1997) ..................................................................................... 10

Chrysler Capital Corp. v. Century Power Corp.,
   778 F. Supp. 1260 (S.D.N.Y. 1991) ........................................................................... 13

Copelco Capital, Inc. v. Gen. Consul of Bolivia,
   940 F. Supp. 93 (S.D.N.Y. 1996) ............................................................................... 18

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) ........................................................................................... 19

DeFalco v. Bernas,
   244 F.3d 286 (2d Cir. 2001) ....................................................................................... 21

Dubai Islamic Bank v. Citibank, N.A.,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................................ 21

Eastway Constr. Corp. v. City of New York,
   762 F.2d 243 (2d Cir. 1985) ....................................................................................... 22

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
   385 F.3d 159 (2d Cir. 2004) ....................................................................................... 21

First Nationwide Bank v. Gelt Funding Corp.,
   27 F.3d 763 (2d Cir. 1994)............................................................................... 19

Gear, Inc. v. L.A. Gear Cal., Inc.,
   637 F. Supp. 1323 (S.D.N.Y. 1986)............................................................... 13

Hecht v. Commerce Clearing House,
   897 F.2d 21 (2d Cir. 1990)............................................................................. 25

In re Terrorist Attacks on September 11, 2001,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)............................................................. 2

Kadic v. Karadzic,
   70 F.3d 232 (2d Cir. 1995)............................................................................. 14

Lehigh Valley Indus. Inc. v. Birenbaum,
   527 F.2d 87 (2d Cir. 1975)............................................................................... 9

Pac-Tec, Inc. v. Amerace Corp.,
   903 F.2d 796 (Fed. Cir. 1990)....................................................................... 18

Pittman v. Grayson,
   149 F.3d 111 (2d Cir. 1998)........................................................................... 13

Precision Specialty Metals, Inc. v. United States,
   315 F.3d 1346 (Fed. Cir. 2003)..................................................................... 18

Quaknine v. MacFarlane,
   897 F.2d 75 (2d Cir. 1990)............................................................................. 20

Redtail Leasing, Inc. v. Bellezza,
   95 Civ. 5191 (JFK), 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) .............. 23

Reves v. Ernst & Young,
   507 U.S. 170 (1993)....................................................................................... 21

Salinas v. United States,
   522 U.S. 52 (1997)......................................................................................... 25

Schmidt v. Fleet Bank,
   16 F. Supp. 2d 340 (S.D.N.Y. 1998).............................................................. 24

Sosa v. Alvarez-Machain,
   542 U.S. 692 (2004)....................................................................................... 14

United States Fire Ins. Co. v. United Limousine Serv., Inc.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)........................................................................ 23

United States v. Arnaout,
    No. 02-CR-892 (N.D. Ill. 2003)................................................................................ 3

United States v. Bin Laden,
    S(7) 98 Cr. 1023 (S.D.N.Y. Feb. 7, 2001) ................................................................ 17

United States v. Viola,
    35 F.3d 37 (2d Cir. 1994). ...................................................................................... 21

United States v. Wong,
    40 F.3d 1347 (2d Cir. 1994)................................................................................... 21

Wiwa v. Royal Dutch Petro. Co.,
    96 Civ. 8386 (KMW), 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ........................... 14

Yousef Jameel v. Times Newspaper Ltd.,
    [2005] EWHC 1219 (QB), UK HCJ HQ 03 X01813. .................................................. 5

**Statutes and Rules**

28 U.S.C. § 1367 ............................................................................................................ 14

Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, note ........................................................ 14

Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 .............................................................. 14

Fed. R. Civ. P. 12(b)(2).................................................................................................. 1

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1

RICO, 18 U.S.C. § 1962(a)............................................................................................ 20

RICO, 18 U.S.C. § 1962(c)............................................................................................ 21

RICO, 18 U.S.C. § 1962(d)............................................................................................ 24

Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 .......................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Civil Action No.
03 MDL 1570 (RCC)
ECF Case

This document relates to:

> Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al., Case No. 03-CV-9849 (S.D.N.Y.)
> Federal Insurance Co., et al. v. Al Qaida, et al., Case No. 03-CV-6978 (S.D.N.Y.)
> Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-07279-UA (S.D.N.Y.)
> New York Marine and General Insurance Co. v. Al Qaida, et al., Case No. 04-CV-6105 (S.D.N.Y.)
> World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-7280 (S.D.N.Y.)

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Defendant Yousef Jameel respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the above-referenced Complaints[1] pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state any claim upon which relief can be granted.

PRELIMINARY STATEMENT

There is no historical trend too sweeping nor minutiae too trifling to have escaped the ambition and rapacity of the Plaintiffs' Complaints.  Yet after numerous filings and

---

[1] Mr. Jameel previously filed motions to dismiss the complaints in Burnett v. Al Baraka Inv. and Dev. Corp., 03 CV 9849 and 5738 (RCC) ("Burnett").  Because the allegations and claims in the other actions are similar, and in most instances identical, to the Burnett Complaint, Mr. Jameel hereby reaffirms and incorporates by reference his filings in Burnett.

thousands of pages, Plaintiffs have yet to allege anything to link Mr. Jameel to the events of September 11th, 2001, to the al Qaeda network, or even to any animus against the United States.  The Complaints, therefore, should be dismissed for want of jurisdiction or, alternatively, for failure to state a cognizable claim.

The best Plaintiffs can do is rely on the inclusion of one "Yousef Jameel" on a handwritten list of names to allege that Mr. Jameel "donated funding via the Golden Chain to al Qaeda,"[2] and that he is "one of al Qaida's principal financiers."[3]  Yet, consistent with the views of all other courts to have considered the matter, this Court recognized that Plaintiffs' case

> rests almost entirely on a document with serious foundational flaws.  Even assuming, as the Court must, that the "Golden Chain" refers to [the defendant], with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters.

In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 817 (S.D.N.Y. 2005).  The Court saw the document for what it is and rejected Plaintiffs' efforts to impute any creditable significance to it:

> The "Golden Chain" does not say what the Plaintiffs argue it says.  It is only a list of names found in a charity's office.  It does not establish [a defendant's] involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the United States.

---

[2] Burnett More Definite Statement as to Defendant Yousef Latif Jameel ("MDS") ¶ 19; World Trade Center Props., LLC v. Al Baraka Inv. and Dev. Corp. ("WTC") Complaint ¶ 927; WTC RICO Stmt. Ex. A at 4; Euro Brokers, Inc. v. Al Baraka Inv. and Dev. Corp. ("Euro Brokers") RICO Stmt. Ex. A at 4.

[3] Federal Ins. Co. v. Al Qaida ("Federal") First Amended Complaint ("FAC") ¶ 503; Federal RICO Stmt. Ex. A at 2.

Id. at 818.[4]

The Complaints also allege that Mr. Jameel made contributions to certain charitable organizations.  Mr. Jameel denies these allegations.  But even assuming that he contributed to the named organizations, nothing suggests that Mr. Jameel was anything other than an innocent or unwitting donor, such as Microsoft, UBS, or Compaq.[5] Plaintiffs offer no dates for most of the alleged contributions and thus provide no indication as to how or when Mr. Jameel knew that the charities were allegedly supporting al Qaeda.  As to those alleged contributions that do contain dates, only one of the recipient groups has ever been designated by the United States government as a terrorist organization.  That designation, however, occurred after September 11th, and therefore cannot serve to impute constructive knowledge of any terrorist activity or purpose at the time of the alleged contribution.  Thus, even indulging the assumption that Mr. Jameel made the purported  contributions, Plaintiffs allege no facts to support even an inference that Mr. Jameel knew, at the time of the contributions, that the charities were involved in terrorism, were fronts for al Qaeda, or would have any involvement in attacks on the United States.

The Court's January 18, 2005, Order recognized the essential fallacy in Plaintiffs' pairing of alleged contributions with allegations that charities were connected with the

---

[4] In Burnett, Plaintiffs' Supplemental Memorandum of Law in Opposition to Motions to Dismiss of Wa'el Jelaidan, Khalid Bin Mahfouz, and Yousef Jameel (June 8, 2005) seeks to augment the allegations concerning the so-called "Golden Chain."  Defendants have asked that the supplemental materials be stricken, and the Court has ruled that materials available to Plaintiffs before the motions were briefed would not be admitted.  Because this issue is still pending before the Court, Mr. Jameel will not address the proposed supplement, other than to note that it neither revives the discredited reliability of the so-called "Golden Chain" nor adds anything new to the Plaintiffs' case.

[5] Government's Evidentiary Proffer Supporting the Admissibility of Coconspirator Statements at 98 (Jan. 6, 2003), United States v. Arnaout, No. 02-CR-892 (N.D. Ill. 2003), available at http://news.findlaw.com/hdocs/docs/bif/usarnaout10603prof.pdf.

September 11th attacks.  In reviewing the claims against Princes Sultan and Turki regarding charitable contributions, the Court emphasized that "[e]ven construing these allegations and exhibits in the light most favorable to Plaintiffs, and drawing all inferences in their favor, none of these exhibits amount to admissible evidence that Prince Sultan or Prince Turki knew the charities they supported were fronts for al Qaeda."  In re Terrorist Attacks, 349 F. Supp. 2d at 799.

Just so for Mr. Jameel.  Of the charities named against Mr. Jameel, the Court has dismissed as inadequate similar allegations of contributions to the Benevolence International Foundation (BIF), Saudi Joint Relief Committee (SJRC), Saudi High Commission for Donations and Collections for Bosnia Herzegovina (Saudi High Commission), Al Haramain Islamic Foundation, International Islamic Relief Organization (IIRO), and the World Assembly of Muslim Youth (WAMY).  See, e.g., id. at 814-16 (dismissing allegations against Prince Mohamed).  Plaintiffs' allegations concerning contributions to the few charities the Court has not already expressly considered are similarly insufficient because they contain no facts "to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."  Id. at 801.

Failing any specific facts linking Mr. Jameel and his alleged charitable contributions to al Qaeda and anti-American activities, Plaintiffs simply rely on conclusory contentions that he "provided material support to al Qaeda and its sponsors with knowledge that the funds would be used to support al Qaeda and its international terrorist agenda in attacking the United States,"[6] and that he "aided and abetted,

---

[6] Burnett MDS ¶ 10; WTC Complaint ¶ 918.

conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons . . . ."[7]  Plaintiffs also allege vaguely that "it has been widely reported" -- without specifying when, where, or by whom -- that a charity provided material support to al Qaeda,[8] or that unspecified officials "throughout the world" have -- at an unspecified time -- stated that another charity provided support for terrorism.[9]  These general assertions fall far short of the type of factual allegations that would permit an inference that Mr. Jameel knew of the charities' claimed terrorist intentions at the time of any alleged contributions:

> The Court is not ruling as a matter of law that a defendant cannot be liable for contributions to organizations that are not themselves designated terrorists. But in such a case, there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity. There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. Here, there are no such factual bases presented, there are only conclusions.

Id. at 801.

Other judges addressing the same issue have reached the same conclusion.[10]  In libel proceedings brought by Mr. Jameel in England, Times Newspapers sought to rely on the "Golden Chain" document to justify an allegation that there were "sufficient grounds to enquire whether [Mr. Jameel] has been associated through funding with Osama Bin

---

[7] New York Marine and Gen. Ins. Co. v. Al Qaida ("Marine") FAC ¶ 45; Federal FAC ¶ 66.  See also Burnett MDS ¶ 32 ("Yousef Jameel . . . actively aided, abetted, conspired with and/or materially supported international terrorism and al Qaeda.").

[8] See Burnett MDS ¶ 24; WTC Complaint ¶ 932; WTC RICO Stmt. Ex. A at 6; Euro Brokers RICO Stmt. Ex. A at 6.

[9] See Burnett MDS ¶ 27; WTC Complaint ¶ 935: Euro Brokers RICO Stmt. Ex. A at 6.

[10] Yousef Jameel v. Times Newspaper Ltd., [2005] EWHC 1219 (QB), UK HCJ HQ 03 X01813 ¶ 20. (Annexed as Exhibit 1 to Declaration of Viet D. Dinh, dated July 18, 2005.)

Laden and Al Qaeda and/or whether he helped fund the training of terrorists who carried out the atrocities of 11 September 2001."[11]  Striking this plea of justification, Mr. Justice Gray held that "the Golden Chain list falls well short of establishing the existence of sufficient grounds for an inquiry or investigation."[12]  "There is no evidence that such targeting of the Claimant for a donation as took place (if any) occurred after the foundation of Al Qaeda.  Moreover, it is accepted that, even if such targeting did take place, the Claimant had no reason to suppose that the money was going to fund terrorist activities."[13]  After Mr. Justice Gray's ruling, the newspaper stated in open court that it "has never sought to maintain that Mr Jameel had financially supported Osama bin Laden in connection with terrorism or that he helped fund the training of the terrorists who carried out the 11 September attacks.  The Sunday Times accepts that the Claimant is not a supporter of Osama bin Laden or Al Qaeda and regrets if the article may have given readers a different impression."[14]

Instead of similarly admitting error, Plaintiffs have chosen instead to file additional, nearly identical complaints against Mr. Jameel.  Stripped of conclusory assertions, illogical leaps, and unsubstantiated innuendos, the Complaints allege no facts sufficient to establish jurisdiction or to state any claim against Mr. Jameel.  For the reasons articulated in the Court's January 18, 2005, Order, as discussed in Part I below, the Complaints against Mr. Jameel should be dismissed.  Unlike the tort plaintiffs in

---

[11] Id. ¶ 17.

[12] Id. ¶ 20.

[13] Id. ¶ 21.

[14] See Statement in Open Court (June 15, 2005) at 2-3, in Yousef Jameel v. Times Newspapers Ltd., [2005] EWHC 1219 (QB), UK HCJ HQ 03 X01813.  (Annexed as Exhibit 2 to Declaration of Viet D. Dinh, dated July 18, 2005.)

Burnett, the Plaintiffs in the other Complaints also assert standing to bring a claim under the civil RICO statute and have filed RICO statements as required by the standing rules of the Court.  As discussed below in Part II, these statements add nothing probative to the Complaints and fail to state claims cognizable under RICO.

ARGUMENT

I.      AS IN <u>BURNETT</u>, PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO ESTABLISH THE JURISDICTION OF THIS COURT OVER MR. JAMEEL OR TO STATE ANY CLAIM UPON WHICH RELIEF COULD BE GRANTED.

The facts and claims alleged in these matters are nearly identical to those submitted in <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 03 CV 9849 and 5738 (RCC). Plaintiffs allege no new facts demonstrating that the Court has personal jurisdiction over Mr. Jameel pursuant to New York law and the U.S. Constitution or that the Complaints state any claim upon which relief can be granted.  In the interest of judicial economy, Mr. Jameel hereby reaffirms and incorporates by reference his <u>Burnett</u> filings.[15]  For the Court's convenience, Mr. Jameel summarizes below the most salient points of the argument contained in his prior submissions and illustrates how a straightforward application of this Court's January 18, 2005, Order requires the dismissal of all Complaints against Mr. Jameel.

A.      <u>The Court Lacks Personal Jurisdiction Over Mr. Jameel.</u>

Plaintiffs' allegations do not support this Court's exercise of personal jurisdiction over Mr. Jameel pursuant to New York law and the U.S. Constitution.  To survive a Rule

---

[15] The filings include Mr. Jameel's Memorandum of Law in Support of Motion to Dismiss (hereinafter "Jameel <u>Burnett</u> MTD") filed on July 16, 2004; his Memorandum of Law in Support of Motion to Dismiss Action Originally Commenced in S.D.N.Y. filed on July 16, 2004; his Reply Memorandum of Law in Support of Motion to Dismiss filed on December 17, 2004; and the exhibits thereto.

12(b)(2) motion to dismiss, Plaintiffs must make a prima facie factual showing that personal jurisdiction exists.  In re Terrorist Attacks, 349 F. Supp. 2d at 804. The Court has made clear that it will not accept legally conclusory assertions or draw "argumentative inferences."  Id.  Yet, conclusory assertions and argumentative inferences are all that Plaintiffs have.

Plaintiffs do not seriously allege that Mr. Jameel has sufficient minimum contacts with the United States or New York to establish general personal jurisdiction.  Instead, they argue that particular activities bring Mr. Jameel within the ambit of specific jurisdiction under New York's long-arm statute.  However, Plaintiffs fail to make the two showings essential to the Court's assertion of personal jurisdiction.  First, a plaintiff must show that New York's long-arm statute reaches the defendant; and second, if that showing is made, the plaintiff must further demonstrate that the assertion of jurisdiction comports with the requirements of due process.  Id. at 804 (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002)).

Plaintiffs seek to establish jurisdiction over Mr. Jameel based on the theory that he participated in a conspiracy to bring about the September 11th attacks,[16] and that he purposefully directed his activities at the United States.[17]  Both theories fail on the facts alleged.

---

[16] Burnett MDS ¶ 11 ("Defendant Jameel knowingly and intelligently aided, abetted or otherwise conspired to provide material support to al Qaeda in furtherance of its stated goals of attack on the United States and its citizens."); Federal FAC ¶ 624, Marine FAC ¶ 62 (general allegation against all defendants that they "conspired to commit acts of international terrorism against the United States"); WTC Complaint ¶ 1164 (general allegation against all defendants that they "conspired and continue to conspire to commit acts of international terrorism against the United States . . . which conspiracy included and includes the provision of material support and resources to Defendant al Qaeda . . . .").

[17] Federal FAC ¶ 625 (general allegation against all defendants that "[t]he September 11th Attack was a direct, foreseeable and intended product of the conspiracy…."); Marine FAC ¶ 51 (general allegation

(Cont'd on following page)

First, under New York law, a "'bland assertion of conspiracy . . . is insufficient to establish jurisdiction'" for the purposes of the long-arm statute. In re Terrorist Attacks, 349 F. Supp. 2d at 805 (quoting Lehigh Valley Indus. Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975)). Rather, to base personal jurisdiction on a conspiracy theory under New York's long-arm statute, "Plaintiffs must make a prima facie showing of a conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." Id. (citing cases). Mere conclusory statements, without specific facts, are insufficient.

Here, plaintiffs have not, and cannot, allege any facts to show that Mr. Jameel "directed, controlled, or requested al Qaeda to undertake its terrorists activities." Id. at 806. "Nor are there any specific allegations of [his] knowledge of, or consent to those activities." Id. (citing cases). The best that Plaintiffs have mustered are conclusory and general assertions lodged vaguely against all or numerous defendants, without supporting facts. Plaintiffs in Euro Brokers make no mention whatsoever of Mr. Jameel in their complaint. Plaintiffs in Marine include no specific allegations against Mr. Jameel, but have simply included his name in a laundry list of dozens of other Defendants, who they baldly assert "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or FTOs,"[18] and that he "conspired to commit acts

---

against all defendants that "[t]he September 11th Attack was a direct, intended and foreseeable product of a larger conspiracy among the defendants to commit acts of international terrorism."); Burnett MDS ¶ 9, WTC Complaint ¶ 917 ("Defendant Jameel has directed his activities at the United States generally and specifically to persons and entities long associated with al Qaeda.").

[18] Marine FAC ¶ 45.

of international terrorism."[19]   Plaintiffs in <u>Federal</u> repeat these assertions and add only a couple of other conclusory allegations not pertaining to conspiracy.[20]   And Plaintiffs in <u>WTC</u> simply repeat the More Definite Statement in <u>Burnett</u> and allege that "Defendant Jameel knowingly and intelligently aided, abetted or otherwise conspired to provide material support to al Qaeda in furtherance of its stated goals of attacks on the United States and its citizens."[21]   Such general conclusions are quintessentially "'bland assertion[s] of conspiracy,'" to the extent that any assertion of terrorist involvement can be bland, and they are certainly "'insufficient to establish jurisdiction.'"   <u>In re Terrorist Attacks</u>, 349 F. Supp. 2d at 805 (quoting <u>Lehigh Valley</u>, 527 F.2d at 93-94).

In any event, due process bars the exercise of personal jurisdiction over Mr. Jameel because the constitutionally requisite "minimum contacts" are not present.[22] Plaintiffs have not alleged specific facts to support any inference that Mr. Jameel "expressly aimed" or "purposefully directed" his actions at the United States, and therefore could reasonably foresee being haled into court here.   <u>Burnett v. Al Baraka Inv. & Dev. Corp.</u>, 292 F. Supp. 2d 9, 23 (D.D.C. 2003) ("<u>Burnett II</u>").   Plaintiffs must do more than make conclusory assertions; they must "allege some personal or direct involvement by [Mr. Jameel] in the conduct giving rise to their claims."   <u>In re Terrorist Attacks</u>, 349 F. Supp. 2d at 809 (citing cases).   Instead, Plaintiffs attempt to tie Mr.

---

[19] <u>Marine</u> FAC ¶ 62.

[20] <u>Federal</u> FAC ¶¶ 66, 624.

[21] <u>WTC</u> Complaint ¶ 919.

[22] "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."   <u>Asahi Metal Indus. Co. Ltd. v. Superior Court</u>, 480 U.S. 102, 113 (1987).   <u>Accord Chaiken v. VV Publ'g Corp.</u>, 119 F.3d 1018, 1029 (2d Cir. 1997).

Jameel to the terrorist acts by pointing to his name's appearance on the so-called "Golden Chain," which document this Court already recognized as "a document with serious foundational flaws" when it dismissed the claims against Defendant Mohammed Abdullah Aljomaih for lack of personal jurisdiction. Id. at 817.

Plaintiffs' efforts to find jurisdiction from Mr. Jameel's purported charitable contributions are also unavailing because they are utterly silent on the crucial issue of timing and knowledge. "Unlike Hamas in Boim, none of the organizations the [defendants] are alleged to have supported . . . were designated a sponsor of terrorism at the time of the alleged contributions." Id. at 800 (discussing Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev., 291 F.3d 1000 (7th Cir. 2002)). Yet Plaintiffs' assertions are devoid of any facts showing, or even reasonably implying, how Mr. Jameel supposedly knew that the charities would divert any contribution to sinister uses. Plaintiffs do not even date most of Mr. Jameel's alleged contributions, rendering impossible and unreasonable any inference about what he knew and when he knew it.

Failing facts, Plaintiffs make the unsupported allegation that Mr. Jameel acted "with knowledge that the funds would be used to support al Qaeda and its international terrorist agenda in attacking the United States."[23]  No ink need be wasted here, for the Court has spoken: "Conclusory allegations that he donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice." In re Terrorist Attacks, 349 F. Supp. 2d at 813-14 (citing cases).

Of the charities named against Mr. Jameel, the Court has held that, without more, Plaintiffs cannot establish jurisdiction or state a claim based on a mere allegation of

---

[23] Burnett MDS ¶ 10; WTC Complaint ¶ 918.

contribution to the following organizations:  BIF, SJRC, Saudi High Commission, Al Haramain Islamic Foundation, IIRO, and WAMY.  See, e.g., id. at 814-16 (dismissing allegations against Prince Mohamed).  That is so because "there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for [a terrorist organization].  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.  Here, there are no such factual bases presented, there are only conclusions."  Id. at 801.

Plaintiffs' allegations that Mr. Jameel contributed to other charities suffer from the same infirmities and fail in the same manner.  Plaintiffs claim that Mr. Jameel "is a financial supporter of the Islamic Salvation Front of Algeria,"[24] and "provided material and financial support to the Raza Academy."[25]  However, Plaintiffs do not even allege that either of these organizations were complicit in the September 11th attacks, but only that "Defendant Jameel also has engaged in a pattern of conduct in supporting individuals who are involved in religious extremism and international terrorism."[26]  Even if the latter allegation is true, which it is not, it does nothing to support any inference that Mr. Jameel conspired against or directed his activities at the United States, or that he was linked in any way to the September 11th attacks, al Qaeda, or even anti-American animus.

---

[24] WTC Complaint ¶ 949.

[25] WTC Complaint ¶ 950.  Plaintiffs also allege that Mr. Jameel contributed to the Saudi Red Crescent Society (Burnett MDS ¶¶ 21, 23; WTC ¶¶ 929, 931) -- which, as an officially sanctioned and internationally recognized charity, stands on the same if not better footing than other charities already considered by the Court.

[26] WTC Complaint ¶ 946.

Finally, jurisdictional discovery is not warranted.  Because Plaintiffs have not established a prima facie case for jurisdiction, they have failed to "provide[] an 'outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery.'" Id. at 813 (quoting Burnett II, 292 F. Supp. 2d at 22).  In light of their failure to do so, jurisdictional discovery could only result in a vexatious and fruitless search.  See Gear, Inc. v. L.A. Gear Cal., Inc., 637 F. Supp. 1323, 1328 (S.D.N.Y. 1986) (stressing that plaintiffs should not be permitted to undertake discovery "to engage in an unfounded fishing expedition for jurisdictional facts").

B.      Plaintiffs Fail to State Any Claim Upon Which Relief Can Be Granted.

Even assuming that this Court has jurisdiction over Mr. Jameel, Plaintiffs do not and cannot allege that Mr. Jameel directly aided al Qaeda or that he participated in the September 11th attacks in any way.  Instead, Plaintiffs again rely on the "Golden Chain" and purported charitable contributions, as well as other similarly flawed and unsubstantiated allegations, to predicate liability on a theory that Mr. Jameel conspired with, and/or aided and abetted, the terrorists who perpetrated the attacks.[27]  Plaintiffs fail to allege, however, any facts sufficient to show that Mr. Jameel knew "'the wrongful nature of the primary actor's conduct,'" In re Terrorist Attacks, 349 F. Supp. 2d at 826 (quoting Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998)), or that his "conduct [is] tied to a substantive cause of action," id. (citing Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)).  Therefore, the Plaintiffs cannot state

---

[27] See Marine FAC ¶ 45; Federal FAC ¶ 66.  See also Burnett MDS ¶ 11 ("Jameel knowingly and intentionally aided, abetted or otherwise conspired to provide material support to al Qaeda in furtherance of its stated goals of attacks on the United States and its citizens.").

any viable claim against Mr. Jameel under the Anti-Terrorism Act ("ATA") or other claimed bases of relief.[28]

**Lack Of Knowledge Or Intent.**   Plaintiffs have not discharged their basic obligation to allege facts that would permit an inference that Mr. Jameel knew about and intended to aid the September 11th plot, as required by 18 U.S.C. 2333(a).[29]   "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."   In re Terrorist Attacks, 349 F. Supp. 2d at 828 (citing Boim, 291 F.3d at 1023 (7th Cir. 2002)).   "New York law and the courts interpreting the ATA in Boim make very clear that concerted action liability requires general knowledge of the primary actor's conduct."   Id. at 832 (citing cases).

---

[28] Although Plaintiffs primarily rely upon the ATA, their other claims likewise have no merit.  Plaintiffs fail to state a claim under the Torture Victims Protection Act ("TVPA") (1) The TVPA creates a cause of action only against persons who act "under actual or apparent authority, or color of law, of any foreign nation" -- i.e., state actors.  Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir. 1995).  Plaintiffs do not, and cannot, allege that Mr. Jameel was a state actor.  (2) The TVPA creates a cause of action for "torture" or "extrajudicial killing."  Plaintiffs do not, and cannot, allege that Mr. Jameel engaged in any such conduct.  (3) The TVPA does not create a cause of action for aiding and abetting or conspiracy.  Thus, even if the 9/11 hijackers violated the TVPA, Mr. Jameel cannot be liable to Plaintiffs.  But see Wiwa v. Royal Dutch Petro. Co., 96 Civ. 8386 (KMW), 2002 WL 319887, at *15-*16 (S.D.N.Y. Feb. 28, 2002).

Plaintiffs also fail to state a claim under the Alien Tort Statute ("ATS").  (1) The ATS does not impose liability on private, non-state actors; (2) Mr. Jameel's alleged conduct did not violate established international law; (3) the ATS does not create a cause of action for aiding and abetting or conspiracy; and (4) the September 11th hijackers did not violate the ATS.  See Sosa v. Alvarez-Machain, 542 U.S. 692 (2004).

Plaintiffs' state law claims should be dismissed pursuant to 28 U.S.C. §§ 1367(c)(1) and (3).

[29] Should the Court, consistent with its January 18, 2005, Order, dismiss the Complaints against Mr. Jameel on the reasoning articulated therein, the Court would not need to reach Mr. Jameel's argument that the September 11th attacks constituted an "act of war" exempted from the scope of the ATA.  See Jameel Burnett MTD at 10-14.  Mr. Jameel only notes here that, as recently as his address to the Nation on June 28, 2005, the President reiterated that the September 11th attacks were an act of war:  "The war reached our shores on September the 11th, 2001."  President Addresses Nation, Discusses Iraq, War on Terror (June 28, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/06/20050628-7.html.

Far from meeting this standard, Plaintiffs' Complaints barely blink at the crucial issues of timing, and are liberally seasoned with patently obvious mischaracterizations of the facts. Because the Plaintiffs fail to specify when most of the alleged acts attributed to Mr. Jameel took place, it is impossible to make any inference about how those actions are linked to the intentions and plans of al Qaeda. The requisite knowledge, intent, and causation to establish a claim can be inferred if, and only if, at the time Mr. Jameel engaged in the alleged activities he knew and intended that those activities would support the September 11th attacks. Plaintiffs have made no effort to show that this is the case.

The Plaintiffs' reliance on the so-called "Golden Chain" to establish liability, as the Court has recognized, is fundamentally flawed. Plaintiffs cannot show that the people whose names allegedly appear on that list actually contributed, or if they did, when they did so and whether they knew the intended use of the funds. Even if the Court indulges the Plaintiffs' inference that the document refers to Mr. Jameel, the notation in no way evinces that Mr. Jameel contributed to Osama bin Laden, Adel Batterjee, or any other fundraiser. And such indulgence would not support any inference that Mr. Jameel (1) contributed to al Qaeda (which at the time had not yet even been formed), (2) agreed with its subsequent declaration of war against the United States, (3) supported its subsequent plans to carry out the September 11th attacks, or (4) was complicit in any way in the September 11th attacks. Each of these logical steps would need to be present in order to establish the necessary linkage between Mr. Jameel and the September 11th attacks. Plaintiffs establish none of these steps and therefore fail to state a claim against Mr. Jameel for damages arising from those attacks.

15

Plaintiffs' reliance on purported charitable contributions is similarly flawed. Even assuming that Mr. Jameel made the alleged contributions, the Court has already made clear that Plaintiffs must offer facts to show that a defendant knew that the charities were supporting terrorism. In dismissing the Complaint against Al Rajhi Bank, this Court ruled that the Plaintiffs failed to "offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities WAMY, MWL, IIRC, and SJRC were supporting terrorism." In re Terrorist Attacks, 349 F. Supp. 2d at 833. Plaintiffs likewise fail here.

Equally unavailing is Plaintiffs' claim that "Al-Fadl identified Defendant Jameel as having purchased a satellite phone for Osama bin Laden."[30] First, even assumed to be true, this allegation as a matter of law does not support any anti-American intent or complicity in the September 11th attacks. Al-Fadl left al Qaeda between May and July of 1996,[31] before al Qaeda's first declaration of war against the U.S. on August 23, 1996. Bin Laden did not authorize the September 11th plot until three years thereafter.

In any event, Plaintiffs allege no facts indicating when and where the supposed satellite phone purchase took place, whether and where the phone was delivered, or even whether and by whom it was actually used. Satellite phones are everywhere one turns in Plaintiffs' Complaints. Enaam Arnaout assisted in "delivering, assembling and operating a satellite telephone for use in Afghanistan."[32]  "Tarik Hamdi helped Osama bin Laden

---

[30] Burnett MDS ¶ 19; WTC Complaint ¶ 927; WTC RICO Stmt. Ex. A at 4; Euro Brokers RICO Stmt. Ex. A at 4.

[31] Testimony of Jamal Ahmed al-Fadl at 392, United States v. Bin Laden, S(7) 98 Cr. 1023 (S.D.N.Y Feb. 7, 2001), *available at* http://cns.miis.edu/pubs/reports/pdfs/binladen/070201.pdf.

[32] Burnett Third Amended Complaint ("TAC") ¶ 210; WTC Complaint ¶ 347.

get a satellite phone and other electronic equipment which was used to coordinate acts of international terrorism."[33]  "In 1996, al-Fawwaz tasked Ziyad Khaleel with purchasing a satellite phone needed for al Qaeda's communication network."[34]  Despite the seeming prevalence of options, Plaintiffs do not even attempt to allege with any specificity which, if any, satellite phones Mr. Jameel was supposed to have purchased.  Indeed, Al Fadl has testified that Bin Laden <u>himself</u> bought a phone, without any mention of Mr. Jameel:

> Q.  Apparently Usama Bin Laden had a satellite phone?
> A.  Yes.
> Q.  A very expensive phone from Germany?
> A.  Yeah, I remember he buy [sic] some equipment from Germany.[35]

This allegation is so flimsy that Plaintiffs go to extraordinary and irresponsible lengths to support it -- even to the point of fabrication.  In response to Mr. Jameel's Motion to Dismiss the <u>Burnett</u> complaint, Plaintiffs offer the affidavit of one Evan Kohlmann.  Kohlmann describes a transcript of a videotape offered in the <u>Arnaout</u> prosecution as follows:  "During the video, 'Arnaout, Hekmatyar and others assemble a satellite telephone provided' to Arnaout through the financial resources of a prominent member of the 'Golden Chain.'"[36]  The internally quoted language, however, is only <u>part</u> of a sentence from the Arnaout Proffer.  The full sentence reads: "Shortly after the prayers, defendant Arnaout, Hekmatyar and others assemble a satellite telephone

---

[33] <u>Burnett</u> TAC ¶ 245; <u>WTC</u> Complaint ¶ 382.

[34] <u>Burnett</u> TAC ¶ 566; <u>WTC</u> Complaint ¶ 1016.

[35] Testimony of Jameel Ahmed al-Fadl at 454-55, <u>United States v. Bin Laden</u>, S(7) 98 Cr. 1023 (S.D.N.Y. Feb. 13, 2001), *available at* http://cns.miis.edu/pubs/reports/pdfs/binladen/130201.pdf.

[36] Kohlmann Aff. ¶ 25.

provided <u>by defendant Arnaout and his companion</u>."[37]   The part that Kohlmann drops makes clear that the satellite phone had nothing to do with any so-called Golden Chain. Kohlmann simply changed the quote and its meaning to serve his purpose.[38]

No more persuasive is Plaintiffs' allegation that Mr. Jameel had "communications" with Sami Al Arian relating to "a plan to obtain palletized urea fertilizer . . . intended to be used for terrorist activities."[39]   The artfully ambiguous use of "communications" is a not-so-subtle attempt to camouflage Plaintiffs' failure to allege specific facts critical to any indication of complicity.   Mr. Jameel did not communicate with Al Arian about fertilizers or about anything else.   But, even assuming that he did, Plaintiffs do not even attempt to demonstrate any link between Sami Al Arian and the September 11th attacks, but only allege that Al Arian has been indicted for activities associated with Palestinian Islamic Jihad.   Counsel for Mar-Jac Poultry has apprised the Court that counsel for the <u>Federal</u> plaintiffs also represent Mr. Al Arian in the criminal prosecution.   Hearing Tr. 16-17, June 15, 2005.   In response, counsel noted that the matter had been considered by the firm's conflicts committee, which determined "that there was no conflict."   <u>Id.</u> at 20.   That is precisely the point.   There is no conflict because Sami Al Arian and his prosecution have nothing to do with the September 11th plot at issue in these cases.   Of course, the absence of such link renders meaningless as a matter of law any allegation, even if true, concerning Al Arian and Mr. Jameel.

---

[37] <u>Id.</u> Ex. 5 at 43 (emphasis added).

[38] Such doctoring of quotations is sanctionable.   <u>See, e.g.</u>, <u>Precision Specialty Metals, Inc. v. United States</u>, 315 F.3d 1346, 1355-57 (Fed. Cir. 2003); <u>Pac-Tec, Inc. v. Amerace Corp.</u>, 903 F.2d 796, 803 (Fed. Cir. 1990); <u>Copelco Capital, Inc. v. Gen. Consul of Bolivia</u>, 940 F. Supp. 93, 95 (S.D.N.Y. 1996).

[39] <u>Burnett</u> MDS ¶ 40; <u>WTC</u> Complaint ¶ 948; <u>WTC</u> RICO Stmt. Ex. A at 9-10; <u>Euro Brokers</u> RICO Stmt. Ex. A at 9-10.

**General Conclusory Allegations Do Not Suffice.**   Having failed to allege specific facts that Mr. Jameel's purported activities were "'a substantial factor in the sequence of responsible causation,'" In re Terrorist Attacks, 349 F. Supp. 2d at 826 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994)), Plaintiffs rely instead on the bald assertion that all Defendants somehow "caused" the September 11th attacks.

Regardless of how many times Plaintiffs repeat the assertion that "Defendants' actions led to the terrorist acts that occurred on September 11, 2001, which proximately caused the Plaintiffs' damages,"[40] it does not suffice to state a claim.  "Legal conclusions done up as factual allegations are not facts and cannot substitute for facts."   In re Terrorist Attacks, 349 F. Supp. 2d at 813 (internal quotation marks and citations omitted). Although Plaintiffs apparently continue to believe that all assertions, just by virtue of Plaintiffs having made them, should be assumed to establish the inferences necessary to carry their claim, the Court has made clear that mere conclusory allegations do not suffice:  "'[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).'"   Id. at 833 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)).

II.     PLAINTIFFS' RICO STATEMENTS ADD NO PROBATIVE VALUE AND FALL FAR SHORT OF STATING A COGNIZABLE CLAIM UNDER RICO.

The Complaints' assertions of civil RICO liability are without merit.  "Civil RICO is an unusually potent weapon . . . 'courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'"   Id. at 827 (quoting Katzman v. Victoria's Secret, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (alterations in original). Where, as here,

---

[40] See Euro Brokers Complaint ¶¶ 162, 169; WTC Complaint ¶¶ 10, 35.

Plaintiffs fail to allege any facts to establish the requisite predicate acts under Section 1962, dismissal is proper and necessary.

Plaintiffs allege causes of action against Mr. Jameel under 18 U.S.C. § 1962(a), (c), and (d)[41] and have filed RICO statements in connection with these claims as required by the Court. These statements, however, mostly rehash the same conclusory and unsupported allegations from previous submissions, and do nothing to cure the defects already identified by the Court. Plaintiffs in <u>Marine</u> took a different tack and filed a RICO statement which contains assertions that are fabricated from whole cloth and are flatly contradicted by the easily accessible public record. Either way, Plaintiffs utterly fail to carry their burden to plead a cognizable claim under RICO.

**<u>Section 1962(a)</u>.** As this Court has noted, under 18 U.S.C. § 1962(a), a plaintiff must allege an injury caused by the defendant's <u>investment</u> of racketeering income. "[B]ecause the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a)." <u>Quaknine v. MacFarlane</u>, 897 F.2d 75, 83 (2d Cir. 1990).

Absolutely nothing contained in any of the Plaintiffs' allegations at any point suggests that Mr. Jameel "received any income" from racketeering activity and "invested" that money. Throughout their submissions, Plaintiffs only allege that Mr. Jameel contributed his own money to an alleged conspiracy, not that he received or invested racketeering income. Plaintiffs' Section 1962(a) claims thus fail as a matter of law.

---

[41] Plaintiffs in <u>Federal</u> and <u>Marine</u> allege causes of action only under 18 U.S.C. § 1962(c) and/or (d).

**Section 1962(c).**  Plaintiffs' Section 1962(c) assertions also fail because they have not, and cannot, allege that Mr. Jameel had "'some part in directing' the 'operation or management' of the enterprise itself."   In re Terrorist Attacks, 349 F. Supp. 2d at 827 (quoting Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)).[42]

Plaintiffs rely again on (1) the appearance of the name Yousef Jameel on the "Golden Chain;"[43] (2) charitable contributions purportedly made by Mr. Jameel;[44] and (3) that Mr. Jameel allegedly purchased a satellite phone.[45]   As noted in Section I, none of these allegations give rise to a normal claim for damages, let alone the level of managerial direction necessary under Section 1962(c).   Even taken as true, Plaintiffs' statements simply do not allege "'anything approaching active management or operation.'"   Id. (quoting Dubai Islamic Bank, 256 F. Supp. 2d at 164) (internal quotation marks omitted).

Perhaps recognizing the infirmity of their case, Plaintiffs in Marine filed a RICO statement alleging facts not found in the Complaints or in any other filings in the

---

[42] Under First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004), "it is clear that the RICO defendant must have played 'some part in directing [the enterprise's] affairs.'"   Id. at 176 (quoting DeFalco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001) (alteration in original)).   And although "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), the Second Circuit has stated that "it is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)," United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994).   But see United States v. Wong, 40 F.3d 1347, 1373 (2d Cir. 1994).   In any event, this Court has made clear that what is required is an allegation that a defendant had a part in directing the alleged enterprise, In re Terrorist Attacks, 349 F. Supp. 2d at 827, a finding fully consistent with Reves and subsequent Second Circuit cases interpreting Reves.

[43] See Federal RICO Stmt. Ex. A at 23; Euro Brokers RICO Stmt. Ex. A at 2; WTC RICO Stmt. Ex. A at 2.

[44] See Federal RICO Stmt. Ex. A at 11; Euro Brokers RICO Stmt. Ex. A at 2; WTC RICO Stmt. Ex. A at 2.

[45] See Euro Brokers RICO Stmt. Ex. A at 4; WTC RICO Stmt. Ex. A at 4.

consolidated cases.  It is little wonder that these allegations have not surfaced before, because they seem to have been made without any reasonable inquiry into their validity and with an utter disregard for the facts.  Any reasonable investigation of the public record would have revealed them to be directly false and completely lacking in evidentiary support. [46]

The Marine Plaintiffs allege that "Jameel is the CEO of the Abdul Lateef Jameel Group (the 'Abdul Group')."[47]  To Mr. Jameel's knowledge, no such entity exists.  Even giving Plaintiffs the benefit of the doubt that they are referring to the Adbul Latif Jameel Company, Ltd., there is no basis for the allegation that Mr. Jameel is the current CEO of that company.  Any check of public records -- indeed, a simple visit to the company website -- would have easily revealed that the Company is led by Mohammed Jameel, and that Yousef Jameel has no current affiliation with it.[48]

The rest of the Marine RICO statement is so outrageous, blatant, and irresponsible that only direct quotation would suffice to illustrate:

> Jameel's misconduct includes materially supporting Al Qaida (i.e., providing "access to bank accounts" and serving as "cover" to Al Qaida members who were able to travel undetected "under the guise of working for" these humanitarian organizations), knowingly and intentionally employing Al Qaida operatives, laundering money for Al Qaida, raising and distributing financial assistance to Al Qaida (often under false pretense), providing Al Qaida with safe houses and false documentation,

---

[46] Rule 11 places an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.  Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985); Abner Realty, Inc. v. General Servs. Admin., 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042 (S.D.N.Y. July 22, 1998).

[47] Marine RICO Stmt. ¶ 2.

[48] See http://www.alj.com (last visited July 13, 2005).

> and/or facilitating weapons and military equipment purchases and transfers for Al Qaida.[49]

That is it.  Not a single other fact or detail is offered to support these breathtakingly offensive allegations against Mr. Jameel.  They are not elsewhere in the RICO statement, in the Complaints, or in the entire record of these cases.  That is because these allegations are patently false and completely without any conceivable foundation.

Paragraph 16 of the Marine RICO statement alludes to conduct "as described herein and in plaintiff's First Amended Complaint."  Alas, this tantalizing roadmap to some facts, or even concrete allegations, proves to be illusory.  The only mention of Yousef Jameel in the First Amended Complaint is his inclusion in a long list of numerous defendants lumped together in a catch-all allegation that they "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs."[50]

What is most inexplicable, and offensive, about the Marine Plaintiffs' patently outrageous RICO statement is that it is totally gratuitous.  For even taking the facially false allegations as true, they do nothing to assist Plaintiffs' claim under RICO.  They all fall well short of meeting the Second Circuit's "extremely rigorous" standard of "operation and management."  United States Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004).  "A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise."  In re Terrorist Attacks, 349 F. Supp. 2d at 828 (quoting Redtail Leasing,

---

[49] Marine RICO Stmt. ¶ 5(b).

[50] Marine Complaint ¶ 45.

Inc. v. Bellezza, 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997)). Not one of these allegations, taken separately or together, implies that Mr. Jameel directed or controlled the alleged enterprise. Even the Marine Plaintiffs admit that "Jameel does not appear to be an employee, officer or director of the Al Qaida Enterprise."[51] Indeed, the only allegation of any managerial direction by Mr. Jameel is the false allegation that he directs the nonexistent "Abdul Group," not that he directs al Qaeda or any alleged racketeering enterprise.

**Section 1962(d).** Plaintiffs' Section 1962(d) claims fail because Plaintiffs allege no facts to establish that Mr. Jameel agreed to participate in a conspiracy; indeed, they do not even show that he knew that such a conspiracy existed. "'Bare and conclusory allegations are insufficient to withstand a motion to dismiss and a plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the [RICO] conspiracy.'" Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998) (citations omitted).

Even assuming for the sake of this Motion that Plaintiffs have pleaded a RICO enterprise, as the Court did for purposes of its January 18, 2005, Order, Plaintiffs still allege no facts sufficient to show that Mr. Jameel knew of any enterprise, that he at any time agreed to participate in an alleged conspiracy to benefit that enterprise, or that the actions of the alleged conspiracy were the proximate cause of the September 11th attacks. In re Terrorist Attacks, 349 F. Supp. 2d at 827. The RICO allegations simply do not provide a "factual basis for a finding of a conscious agreement among the defendants."

---

[51] Marine RICO Stmt. ¶ 6(c).

Id. at 827 (quoting Hecht v. Commerce Clearing House, 897 F.2d 21, 26 n.4 (2d Cir. 1990) (internal quotation marks omitted)).[52]

CONCLUSION

For the foregoing reasons, the Complaints against Mr. Jameel should be dismissed.

Dated: Washington, D.C.
      July 18, 2005

                        BANCROFT ASSOCIATES PLLC

                        By _____/s/Viet D. Dinh_____
                                  Viet D. Dinh (VD-1388)
                                  Pro Hac Vice
                                  A Shareholder of the Firm
                                  601 13th St., N.W.
                                  Suite No. 630 South
                                  Washington, D.C. 20005
                                   (202) 234-0090

                        Attorneys for Defendant Yousef Jameel

Of Counsel:

      Viet D. Dinh
      Wendy J. Keefer
      Lizette D. Benedi
      Nathan A. Sales

---

[52] To be sure, "the requirements for RICO's conspiracy charges under § 1962(d) are less demanding [than subsection (c)]: A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.'" Baisch v. Gallina, 346 F.3d 366, 376-77 (2d Cir. 2003) (quoting Salinas v. United States, 522 U.S. 52, 65 (1997)).   However, the plaintiff must still allege facts sufficient to show that "the defendant 'knew about and agreed to facilitate the scheme.'" Id. at 377 (quoting Salinas, 522 U.S. at 66) (emphasis added).  Plaintiffs have alleged no such facts.