# Exhibit 1



Neutral Citation Number: [2005] EWHC 1219 (QB)

Case No: HQ03X01813

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**

Royal Courts of Justice
Strand, London, WC2A 2LL

Date: 15 June 2005

Before:

**THE HON. MR JUSTICE GRAY**

------------------------

Between:

| | |
|---|---|
| YOUSEF JAMEEL | **Claimant** |
| - and - | |
| TIMES NEWSPAPERS LIMITED | **Defendant** |

------------------------
------------------------

JAMES PRICE QC and JUSTIN RUSHBROOKE
(instructed by **Carter-Ruck**) for the **Claimant**
STEPHEN SUTTLE QC and ANTHONY HUDSON
(instructed by **Times Legal Department**) for the **Defendant**

Hearing dates: 8-9 June 2005

------------------------

# Approved Judgment

I direct that pursuant to CPR PD 39A para 6.1 no official shorthand note shall be taken of this Judgment and that copies of this version as handed down may be treated as authentic.

*Asher Gray*

THE HON. MR JUSTICE GRAY

**Mr Justice Gray:**

**Introduction**

1. This is the Pre Trial Review in a libel action brought by the Claimant, Mr Yousef Jameel, against the Defendant, Times Newspapers Limited, in respect of an article published in the issue of the Sunday Times dated 8 June 2003 headed "Car Tycoon 'linked' to Bin Laden".

2. The terms of that article were set out in full in paragraph 6 of my judgment in these proceedings dated 7 November 2003. No purpose would be served by setting out the text again in this judgment. Where necessary I shall hereafter refer to the paragraphs of the article by reference to the numbering contained in the earlier judgment.

3. A number of discrete questions have arisen for decision. I shall deal with them one by one. In doing so I bear in mind the overriding objective and in particular the provisions of CPR Part 1.1(2)(b) to (e) inclusive.

**The defence of statutory qualified privilege**

4. Paragraph 6 of the Defence sets out a number of particulars and at sub-paragraph (13) concludes:

    "In the premises, the words complained of

    (a) were a fair and accurate report of

      (i) proceedings in public in the US civil proceedings and/or in *USA v Arnaout* and/or in the criminal proceedings against Mr Arnaout, within the meaning of paragraph 2 of Schedule 1 Part 1 to the Defamation Act 1996; and/or

      (ii) [deleted];

    (b) contained information which was of exceptionally powerful and legitimate public interest and were published responsibly by the defendant pursuant to a duty to do so."

    In the course of argument, I gave permission to the Defendant to rely in the alternative on paragraph 5 of Schedule 1 Part 1 of the 1996 Act in addition to paragraph 2.

5. Section 15 of the 1996 Act confers qualified privilege (subject to malice and the questions of public concern and public benefit – see section 15(3)) on the publication of any report or other statement mentioned in Schedule 1 of the Act. The relevant provisions are to be found in Part 1 of that schedule, which includes:

    "2. ... a fair and accurate report of proceedings in public before a court anywhere in the world...

    5. a fair and accurate copy of or extract from any register or other document required by law to be open to public inspection..."

Section 15(4) of the 1996 Act provides:

"4. Nothing in this section shall be construed

...

(b) as limiting or abridging any privilege subsisting apart from this section."

6. As appears from paragraph 6(3) of the Defence, the qualified privilege relied on by the newspaper consists of an amalgam of statutory, common law and *Reynolds*-type privilege. It does not appear to me that there is anything objectionable in principle about such a claim to privilege being advanced: see *Tsikata v Newspaper Publishing Plc* [1997] 1 All ER 656 at 666-7 and 671.

7. Mr Price QC for the Claimant does not dispute the entitlement of the Defendant to rely on common law (i.e. duty and reciprocal interest) privilege or *Reynolds*-type privilege. He does, however, contend, by paragraph 1 of the Claimant's Application Notice that the words complained of are incapable of constituting a fair and accurate report of proceedings in public or a fair and accurate copy of or extract from any register or other document required by law to be open to public inspection whether in the civil case of *Burnett and others v Al Bakara Investment and Development Corporation* or in the criminal case of *US v Arnaout* so as to come within the meaning of paragraphs 2 or 5 of Schedule 1 to the 1996 Act. Accordingly the Defendant seeks a ruling, by way of preliminary issue, that the Defendant is not entitled to rely on statutory qualified privilege or in the alternative that the defence of statutory qualified privilege be struck out.

8. In the course of argument Mr Suttle QC for the Defendant indicated at my invitation which parts of the article complained of are said by the newspaper to be protected by statutory qualified privilege. They are the caption to the photographs accompanying the article; the headline and paragraphs 1, 2, 4, 16 and 17. It is apparent that the statutory privilege claimed extends to a relatively small portion of the article.

9. Mr Price accepts that the newspaper could have reported the Particulars of Claim in *Burnett* and the terms of the "proffer" in the *Arnaout* prosecution, provided that inferences were not drawn from what he says are two quite separate documents from wholly different legal proceedings. Nor does Mr Price object to the newspaper reporting the fact of the joinder of the Claimant as a defendant in the *Burnett* action, provided that nothing was reported as to the reasons for the joinder, since the privileged documents give no hint as to the basis for the joinder. Accordingly no specific objection was taken by Mr Price to sub-paragraphs (3) to (7) of paragraph 6 of the Defence. It is to be noted that of these sub-paragraphs, the Claimant is mentioned by name in sub-paragraph (4) only.

10. The objections taken on behalf of the Claimant focus upon sub-paragraphs (8) to (9B) of paragraph 6 of the Defence. Mr Price contends in particular that it is illegitimate for the newspaper to place reliance on the list described as a "handwritten draft list of the people referred to within Al Qaeda as the "Golden Chain", wealthy donors to Mujahideen efforts". One of the names on that list is Yousif Jameel and is followed by the name Baterjee in parentheses. The reason why Mr Price submits that reliance

THE HON. MR JUSTICE GRAY
Approved Judgment

Jameel v Times Newspapers Ltd

      on the Golden Chain list is illegitimate is that it was an appendix to the proffer which was "sealed" and accordingly not made available to the public, still less referred to in proceedings in public in any US or other court. There is no reference to the Claimant in the proffer itself. There is a reference to the Golden Chain list of donors in the indictment against Mr Arnaout but no mention is made of the Claimant. Mr Price argues that it is illegitimate for the Defendant to seek to utilise the unprivileged Golden Chain list in the Arnaout proceedings as "a piece of glue" enabling the newspaper to claim privilege for the identification of the Claimant as one of the donors in the Golden Chain list. He further argues that it is illegitimate for the Defendant to use the reference to the Golden Chain list as being the reason for the joinder of the Claimant as a defendant in the *Burnett* proceedings.

11. In response Mr Suttle accepted in terms that it was not open to the Defendant to claim statutory qualified privilege in relation either to the inclusion of the Claimant's name in the Golden Chain list or as to the reason why the Claimant was joined as a defendant in the *Burnett* proceedings. He further conceded that his pleading that the Proffer in the Arnaout proceedings "incorporates by reference" the Golden Chain list is unsustainable. Mr Suttle maintains that the claim to statutory privilege is otherwise unexceptionable. He emphasises (and in my view is entitled to emphasise) that the defences of common law or *Reynolds*-type privilege are available to the newspaper so as to confer the protection of privilege on those parts of the article which are not protected by statutory privilege.

12. I accept that Mr Suttle is right to concede that, for the reasons advanced by Mr Price, the Defendant is not entitled to claim statutory qualified privilege in respect of those parts of the article complained of which identify the Claimant as one of the wealthy donors on the Golden Chain list or which set out the basis on which the Claimant was joined as a defendant in the *Burnett* proceedings.

13. That said, there remain passages in the article which are amenable to the defence of statutory privilege. Those parts consist, at least arguably, of the paragraphs of the article identified by Mr Suttle and listed earlier in this judgment. The particulars which give rise to such an arguable entitlement run from sub-paragraph (3) to (8) of paragraph 6 of the Defence. Mr Price points out, rightly, that the statutory privilege is available only in respect of reports or extracts which are "fair and accurate". But questions of fairness and accuracy are appropriately to be determined at trial (or at the hearing of a preliminary issue) rather than on an application of the present kind.

14. It appears to me that such parts of the article as are, at least arguably, protected by statutory privilege do very little, if anything, to confer privilege on the imputations in the article which the Claimant complains of as being the sting of the libel on him, namely that he helped or may have helped fund the terrorists who carried out the 9/11 atrocities or was or may have been otherwise associated with Bin Laden in connection with terrorism. It appears to me that the real question which I have to decide is whether in those circumstances the newspaper should be permitted to rely, in addition to common law and *Reynolds*-type privilege, on the privilege provided by Schedule 1 of the 1996 Act.

15. As to that, Mr Price accepts, as he must, that the Defendant is entitled to pray in aid the matters pleaded at paragraph 6(3) to (7) of the Defence in support of its claim to *Reynolds* privilege. In those circumstances the practical benefit to the newspaper of

being able to rely in addition on statutory privilege appears to be minimal, if not altogether illusory. On that account, if the issue of privilege was for determination in whole or in part by a jury, I would have withdrawn the issue of statutory privilege on case management grounds.

16. But it has been agreed, in the course of the present hearing, that the issue of privilege, including statutory privilege, common law privilege and *Reynolds* privilege, should be determined by Judge alone, preferably as a preliminary issue. That being so, the case management concerns are much less significant. With section 15(4) of the 1996 Act in mind, I therefore decline to strike out or rule out the defence of statutory privilege, for whatever it may prove to be worth in the context of this case. I can understand why the Defendant is reluctant to abandon a line of defence made available by statute but that question may merit consideration hereafter.

**The claimant's application to strike out the plea of justification**

17. The meaning which the Defendant seeks in paragraph 7 of the Defence to justify is

> "that there were sufficient grounds to enquire whether the Claimant has been associated through funding with Osama Bin Laden and Al Qaeda and/or whether he helped to fund the training of the terrorists who carried out the atrocities of 11 September 2001".

In other words, the newspaper seeks to justify what is described in the authorities as a level (iii) meaning.

18. Mr Price submits that the case on justification turns on the Golden Chain list. He accepts that the list was one of a number of documents contained in a file which was seized by Bosnian police during searches in the offices of an organisation called Benevolence International Foundation in Sarajevo in March 2002. But Mr Price submits that I was correct in my earlier judgment dated 7 November 2003 to conclude that the list "falls well short of establishing the existence of sufficient grounds for an inquiry or investigation". The reasons which I gave in paragraph 35 of that judgment for that conclusion were:

> "The list is in manuscript, its author is unknown, as is the source of the author's information; there is nothing in the list to suggest that the individuals named have made donations, rather than that they are potential donors; the list has been dated by Mr Brisard, the lead investigator in the *Burnett* case, to 1988 at which time OBL was engaged in resisting the Soviet incursions into Afghanistan with the approval of western governments; there is nothing to link the list to Al Qaeda; any money which was donated was apparently to be applied to fund fighters in Chechnya and Bosnia and not the atrocities which took place many years later in New York. It is true that the Golden Chain list was attached to an Evidentiary Proffer filed in the US criminal proceedings against Mr Arnaout in support of the admissibility of co-conspirator statements. But the Evidentiary Proffer was ruled inadmissible. In any event Mr Arnaout was

> not convicted of any offence implicating him in terrorist activities on the part of Al Qaeda or OBL in the US; he pleaded guilty to defrauding donors by using their donations without their knowledge to fund activities for which they were unaware".

Mr Price makes the further point that there is nothing whatever to suggest that the Claimant donated money subsequently, when Al Qaeda was formed and became known as a terrorist organisation. He submits that there is no basis at all laid in the particulars of justification for asserting any connection between the Claimant and training the terrorists who carried out the 9/11 atrocities. Yet that is what the caption to the photograph of the exploding twin towers states the allegation against the Claimant to be.

19. Mr Suttle argues that the viability of the plea of justification depends upon the meaning conveyed by the article in the Sunday Times which, he asserts, consists in neutral *reportage*. He submits that there is at least a compelling argument that readers would reasonably have regarded the fact that the Claimant was joined as a defendant in the *Burnett* litigation because his name had been found on the Golden Chain list as establishing that the Defendant's pleaded case for an inquiry had been objectively made out. Mr Suttle says that either the words were not defamatory at all or they were justified in the limited defamatory sense for which the Defendant contends. Mr Suttle further points out that (as I have already ruled) this is not a case which is subject to the so-called "conduct rule" or to the rule against repetition. Mr Suttle concedes that he cannot assert that the Claimant did make a donation but only that he was targeted to make one. Nor is the newspaper asserting that the Claimant knew that any donation made would go to fund terrorists. Nonetheless, submits Mr Suttle, the Defendant is entitled to rely on the case which a US government lawyer has seen fit to assert in a legal document.

20. In my opinion Mr Price is right to say, at least in relation to the plea of justification, that the case turns on the Golden Chain document. It is the inclusion of the Claimant's name on that list and that alone which can be relied on to support the Defendant's contention that there were sufficient grounds for inquiry. It is therefore crucial to consider what can be said to be the significance of that document in terms of establishing a link between the Claimant and the funding of the terrorists who committed the 9/11 atrocities or the funding of Al Qaeda through Bin Laden. I remain of the view, expressed in the section from my earlier judgment quoted above, that the Golden Chain list falls well short of establishing the existence of sufficient grounds for an inquiry or investigation. I note that Judge Casey came to a similar conclusion when dismissing the claim against another defendant in the *Burnett* proceedings, namely Mr Aljomaih. He said:

> "Even assuming, as the Court must, that the "Golden Chain" refers to Mr Aljomaih, with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early Al Qaeda supporters".

Dismissing a similar claim against another defendant, Mr Al-Husani, the Judge added:

> "The 'Golden Chain' does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office. It does not establish Mr Aljomaih's involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the United States".

21. The dilemma confronting the Defendant appears to me to be this: it cannot assert and does not assert that the Claimant made any donation to Al Qaeda or even to Bin Laden. There is no evidence that such targeting of the Claimant for a donation as took place (if any) occurred after the foundation of Al Qaeda. Moreover, it is accepted that, even if such targeting did take place, the Claimant had no reason to suppose that the money was going to fund terrorist activities. In those circumstances I ask myself whether it is arguable that there existed "sufficient grounds" to make the inquiry pleaded in paragraph 7 of the Defence. I do not think it is so arguable and accordingly I accede to the application to strike out the defence of justification.

**Issues of primary fact**

22. I heard argument from both sides as to the issues of primary or secondary (i.e. inferential) fact which might arise for determination out of the claim for *Reynolds* privilege (as well, for that matter, as statutory privilege). As is commonly the case where *Reynolds* privilege is relied on, the issues of fact turn out to be few and far between. The principal such issue will be whether the journalist who wrote the article complained of, Mr Rufford, did have the intention and belief set out in paragraphs 5 and 6 of his second witness statement. I gave permission to the Defendant in the course of the hearing to add sub-paragraph 12A to paragraph 6 of the Defence in which Mr Rufford's intention and belief in relation to the article complained of are pleaded. I gave that permission in the light of the comments of the court in *Jameel v Wall Street Journal* [2005] EWCA 74.

23. It is not, however, necessary to spend time on this issue in the present judgment since it is agreed that the issue of privilege should be decided by a judge sitting alone. The question what issues of primary or secondary fact do or do not arise can be debated at that time.

24. I should however record the concerns expressed by Mr Price on behalf of the Claimant which are, firstly, that it would be unfortunate if the Claimant were to be deprived of the opportunity of giving evidence before the issue of privilege is decided and, secondly, that a preliminary determination of the issue of privilege may involve Mr Rufford being cross-examined both at that stage and (if the claim to privilege fails) later in connection with the claim for aggravated damages. The Judge hearing the trial of the preliminary issue will no doubt seek to meet these concerns.

**The evidence of Mr Elsner**

25. Mr Michael Elsner is a New York lawyer with the law firm of Motley Rice, which firm acts for the 5,300 victims of the 9/11 terrorist attacks who have brought proceedings against those, including the Claimant, who are alleged to have supported the Al Qaeda terrorist network. He has provided two written witness statements to the Defendant. Objection was taken to a passage in paragraph 3 of the second witness

statement. Mr Suttle has agreed that it should be deleted. No more needs to be said about it.

26. A live question does, however, arise in relation to paragraph 16 of Mr Elsner's first witness statement which is repeated in his second statement. The passage reads:

> "After receiving a copy of the Golden Chain document from the US government and given the information in the government's Proffer, as attorneys for the Plaintiffs in the *Burnett* action, we discussed it and its significance with our clients, who decided to include Yousef Jameel and the Saudi Red Crescent as defendants in the *Burnett* action".

27. Mr Price questioned the admissibility of that evidence in relation to the plea of justification. Since the plea of justification has been struck out, it is unnecessary for me to consider further the admissibility of the evidence. However, Mr Price makes clear that, if the remainder of Mr Elsner's evidence is to be relied on by the Defendant in connection with the claim to privilege, then he would wish to cross-examine him. But I am told that Mr Elsner has made clear that he will not be willing to attend court to give evidence at the trial on the ground that to do so might involve him in breaching his clients' confidence and/or waiving their privilege.

28. It appears to me that the practical answer to this problem is that the Claimant should give notice of his wish to cross-examine Mr Elsner, if necessary by means of a video link. If Mr Elsner declines to do so on grounds which appear to the English court to be of dubious validity, it will then be open to the Claimant to apply to exclude his evidence pursuant to CPR Part 32.1.

**Hearsay evidence sought to be relied on by the Defendant**

29. This is another issue which can be shortly disposed of. Hearsay notices were served on behalf of the Defendant pursuant to CPR Part 33.2(3) in relation to a section of the proffer and part of the indictment in *US v Arnaout*. Concern was expressed on behalf of the Claimant that the Defendant might be seeking to rely on those documents as evidence of the truth of their contents. It emerged, however, that the Defendant wishes to rely on the two documents as evidence only of (i) the circumstances in which the Golden Chain file was discovered and seized and (ii) the contents of the Golden Chain list and the other documents in the file. There being no issue as to these facts, Mr Price is content not to pursue his objection to the hearsay notices. I direct that formal admissions of those facts be prepared and served on the Defendant.

**Objections to witness statements**

30. Objection was taken on behalf of the Defendant to a considerable number of passages in the witness statements served on behalf of the Claimant and in particular in the witness statements of the Claimant himself. Many of those objections have been disposed of by agreement between the parties. I heard argument in relation to a number of the other passages objected to. I expressed my view in the course of argument and it is accepted by both sides that it is unnecessary for me to repeat what I then said.

### The issue of privilege to be tried as a preliminary issue

31. As I have already indicated, it was agreed in the course of the hearing that the issue of privilege should be decided by judge alone and that, if possible, the issue should be determined in advance of trial. I formally so direct.