UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |

*This document relates to:*

*Ashton v. Al Qaeda Islamic Army,* 02 CV 6977
*Burnett v. Al Baraka Investment & Development Corp.,* 03 CV 5738
*Cantor Fitzgerald & Co. v. Akida Bank Private Ltd.,* 04 CV 7065
*Continental Casualty Co. v. Al Qaeda Islamic Army,* 04 CV 5970
*Euro Brokers, Inc. v. Al Baraka Investment and Development Corp.,* 03 CV 6978
*O'Neill v. Al Baraka Investment and Development Corp.,* 04 CV 1923
*New York Marine & General Insurance Co. v. Al Qaida,* 04 CV 6105
*World Trade Center Properties, LLC v. Al Baraka Investment,* 04 CV 7280
*Federal Insurance Co. v. Al Baraka Investment and Development Corp.,* 03 CV 6978

**REPLY MEMORANDUM OF DEFENDANT FAISAL ISLAMIC BANK – SUDAN TO PROPERTY DAMAGE PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS**

**LAURO LAW FIRM**

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant
Faisal Islamic Bank - Sudan*

## INTRODUCTION

Defendant Faisal Islamic Bank Sudan ("FIBS" or "the Bank") respectfully submits this reply memorandum to Property Damage Plaintiffs' Consolidated Memorandum of Law In Opposition to Motions to Dismiss of Defendant Faisal Islamic Bank Sudan ("Prop. Mem.").[1]

As the Court is aware, plaintiffs responding to FIBS' motions to dismiss have filed a consolidated memorandum in opposition to the motions to dismiss, and Cantor Fitzgerald plaintiffs have also filed a separate memorandum of law. FIBS respectfully incorporates its replies to those memoranda herein.

## PRELIMINARY STATEMENT

In its reply to the Plaintiffs' Consolidated Memorandum, FIBS sets forth why plaintiffs' theory of banking liability is legally unsupportable and should be rejected.  In the interest of economy, those arguments will not be repeated here.  In a word, plaintiffs seek to hold FIBS liable for having ordinary banking relationships with individuals and entities that plaintiffs claim had been associated with al Qaeda.

This Court has dismissed similar claims made by plaintiffs against other banks.  See *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 831-35 (S.D.N.Y 2005). FIBS respectfully requests that this Court reach the same conclusion here and dismiss all of the property damage plaintiffs' complaints for (1) lack of personal jurisdiction; (2) failure to state a claim; and (3) failure to provide a "short and plain" statement entitling plaintiffs to relief.

---

[1] The "property damage plaintiffs" include plaintiffs in the Federal Insurance, Cantor Fitzgerald, Continental Casualty, Euro Brokers, New York Marine, O'Neil and the World Trade Center Properties cases.

**SUMMARY OF ALLEGATIONS**

    **I.**    **New Allegations In Plaintiffs' Submissions**

In their memorandum, plaintiffs offer up brand new allegations, which are not supported by the public record documents attached to the affirmations and affidavits submitted as part of their opposition papers.[2] None of plaintiffs' claims, however, demonstrate that (1) FIBS provided material support to al Qaeda in connection with carrying out attacks upon the United States or (2) any of FIBS' purported acts proximately caused plaintiffs' damages stemming from the September 11 attacks.

Moreover, plaintiffs' claims regarding a single bank account purportedly held at FIBS by a bin Laden associate and the Bank's status as a shareholder in Al Shamal Bank were addressed in FIBS' Reply Memorandum to Plaintiffs' Consolidated Memorandum and will not be restated here. Although plaintiffs make similar accusations regarding the account and alleged improprieties by Al Shamal Bank, they cannot plead any facts suggesting that FIBS knew that a bin Laden sympathizer had such an account at FIBS or that, as a shareholder in another bank, FIBS should be held responsible for that bank's activities.

    **A.**    **FIBS Purported Relationship With A Sudanese Political Party**

Plaintiffs allege that FIBS had a relationship with a Sudanese political party – the National Islamic Front ("NIF") – that in turn had party members who were sympathetic to bin Laden. Prop. Mem. at 1 - 3.[3] NIF is one of the oldest Islamic political parties in the Middle East

---

[2] Plaintiffs filed four principal affirmations or affidavits with attached exhibits: (1) First Affidavit of John Fawcett, dated June 24, 2005 ("Fawcett Aff."); (2) Second Affidavit of John Fawcett, dated June 24, 2005 ("Fawcett Aff. II"); (3) Declaration of Jonathan Goodman, dated June 27, 2005 ("Goodman Dec."); and (4) Affirmation of Sean P. Carter, dated June 27, 2005 ("Carter Aff.").

[3] Plaintiffs make allegations regarding NIF in this memorandum, without any citations to their complaints or RICO statements. Although the Court is required to accept as true well-pled factual allegations in plaintiffs' complaints, the Court need not give credence to the baseless and argumentative claims in plaintiffs' memorandum of law. *See Wright v. Ernst & Young LLP,* 152 F. 3d 169, 178 (2d Cir. 1998); *see also Jacobson v. Peat Marwick, Mitchell & Co.,* 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

and was involved in Sudanese politics over the past decades. Goodman Dec. Ex. 14. Moreover, NIF was one of the earliest expressions of popular will and democracy in a Muslim country. Goodman Dec. Ex. 15. It would not be surprising, therefore, that party members might have relationships with financial institutions in their country.

In any event, plaintiffs claim that when FIBS was founded in the 1970's, NIF party members served on the Bank's board of directors. Carter Aff. Ex. 1. Plaintiffs refer to a copy of a report published by the Library of Congress, discussing the formation of Islamic banking in Sudan. *Id*. The report tracks the development of banking under Islamic religious principles and indicates that FIBS was an entirely legitimate banking institution in Sudan. Plaintiffs also refer the Court to a C.I.A. fact sheet (Carter Aff. Ex. 2), which describes bin Laden's business and agricultural activities in Sudan, and his relationship with the leader of NIF. Neither the Library of Congress report nor the C.I.A. fact sheet provides any support for plaintiffs' conclusory claim that "FIBS is the financial and banking arm of the NIF." Prop. Mem. at 2. Indeed, not one of the government reports, news articles, or transcripts submitted by plaintiffs supports such a claim.

Instead, plaintiffs can only maintain credibly that at some point, early in FIBS' history, NIF party members were also on FIBS' board of directors. There is no suggestion, however, that NIF members had any connection to the Bank in the last 20 years or that the Bank provided any support to NIF with regard to al Qaeda activities. In any event, plaintiffs' arguments regarding FIBS and NIF are of no moment because plaintiffs offer nothing tying any FIBS board members (or any one else associated with the Bank) to the September 11 attacks.

## II. The Established Public Record

Plaintiffs concede that in order to defeat the motions to dismiss, they must plead facts demonstrating that FIBS "knowingly and intentionally provided financial services and support to al Qaeda to attack the United States." Consol. Mem. at 1. As the Court is aware, in the summer of 2004, the National Commission on Terrorist Attacks Upon the United States issued its report ("9/11 Report"), which reveals that FIBS could not have had any involvement in the September 11 attacks. Indeed, the 9/11 Report indicates that al Qaeda and bin Laden were expelled from Sudan in 1996, and that the Sudanese government seized substantially all of their assets. 9/11 Report, pps. 62-67, 170.

It was not until 1998, two years after leaving Sudan, that bin Laden (for the first time) publicly announced an intention to attack the United States. 9/11 Report, pps. 66-67; Goodman Dec. Ex. 6. (plan to attack the United States announced years after bin Laden was forced to sever contacts with Sudan); Carter Aff. Ex. 3 (testimony of Richard Clark indicating that al Qaeda began planning attacks against the United States in 1999). Thus, plaintiffs' allegations regarding FIBS – all of which pre-date 1996 - can be of no consequence since (even if the assertions were true) no one could have known that years later al Qaeda would announce a desire to attack the United States.

## III. The Complaints Fail to State A Cause of Action Against FIBS

Property damage plaintiffs assert various purported claims against FIBS under federal and state theories – alleged RICO violations, trespass, assault and battery, etc. Prop. Mem. at 7-17. All of plaintiffs' liability theories require the proper pleading of facts demonstrating that FIBS: (1) provided material support to al Qaeda knowing that the terrorist organization intended to carry out attacks in the United States and (2) the material support was a proximate cause of the

4

injuries plaintiffs sustained on September 11. *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 828 (dismissing similar claims against banks).

Plaintiffs have not, and cannot, satisfy this pleading burden. They provide no facts showing that FIBS gave material support to al Qaeda knowing that it intended to attack the United States. There are no allegations that FIBS gave money to that organization, assisted in its terrorist activities, or otherwise promoted attacks upon the United States. *Id., citing Boim v. Quranic Literacy Institute,* 291 F. 3d 1000, 1023 (7th Cir. 2002) ("*Boim II*") (plaintiffs must "allege that the defendant knew about the terrorists' illegal activities, that the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities").

Moreover, the complaints reveal no proximate cause between FIBS' purported actions and the September 11 damages sustained by plaintiffs. Plaintiffs cannot possibly plead any facts suggesting that the Bank caused plaintiffs' damages and that it was reasonably foreseeable that such damages would flow from any alleged acts. *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 797 n. 26. In the absence of proximate cause, all of the claims alleged by plaintiffs should be dismissed.

      **B.**    **The Property Damage Plaintiffs Have Not Asserted a Proper RICO Claim**

This Court has held that "[c]ivil RICO is an unusually potent weapon . . . [and] 'courts should strive to flush out frivolous RICO allegations at an early stage in litigation.'" *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 827, *quoting Katzman v. Victoria Secret*, 167 F.R.D 649, 655 (S.D.N.Y. 1996).[4] In order to establish a proper RICO claim under

---

[4] To the extent that certain plaintiffs seek to bring RICO claims derivatively or as a subrogee (for example, the insurance plaintiffs) they would have no standing to bring such claims under RICO. *See Laborer's Local 17 Health and Benefit Fund v. Phillip Morris, Inc.,* 191 F. 3d 229, 239 (2d Cir. 1999).

5

18 USC § 1962 (c) or (d), plaintiffs must adequately plead "(1) that a defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of racketeering activity (5) directly or indirectly participated in (6) an enterprise (7) the activities of which affect the interstate of foreign commerce." *See Kades v. Organic Inc.,* 2003 WL 470331, at *8 (S.D.N.Y. Feb. 4, 2003), *citing Moss v. Morgan Stanley, Inc.,* 719 F. 2d 5, 17 (2d Cir. 1983). Furthermore, plaintiffs must plead facts showing "causation." In other words, plaintiffs must have been injured in their business or property by reason of a violation of § 1962. *See DeFalco v. Bernas,* 244 F. 3d 286, 306 (2d Cir. 2001).

In this case, plaintiffs provide only bare conclusions regarding the existence of an enterprise and FIBS alleged participation in it. *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 827, *quoting Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998). The complaints contain no facts that show how FIBS purportedly participated in the affairs of the alleged enterprise or "directed" its activities. *Id*. at 826; *see also Dep't of Econ. Dev. v. Arthur Anderson & Co.,* 924 F. Supp. 449, 466-67 (S.D.N.Y. 1996). Furthermore, plaintiffs do not provide a single fact suggesting that FIBS "conspired" to participate in the affairs of an enterprise and further its intended goals.

Plaintiffs fail to identify any predicate acts allegedly committed by FIBS, or how these predicate acts formed a "pattern of racketeering activities." Indeed, it is impossible to determine a single alleged criminal act committed by FIBS. Although plaintiffs attempt to identify alleged money laundering violations, we are left in the dark as to the particular circumstances of the purported money laundering. Thus, plaintiffs do not to identify who engaged in the money laundering, when it took place, the particular bank accounts involved, or the connection of the purported criminal activity to al Qaeda. In a word, there is absolutely nothing identified in the

complaints that would suggest that FIBS engaged in any criminal activity whatsoever, let alone a "RICO" violation.

Finally, it is established law that providing routine banking services, as FIBS is alleged to have done, does not form the basis of a RICO claim.  *See Indus. Bank of Latvia v. Baltic Fin. Corp.,* 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994).  In this case, plaintiffs seek to expand banking liability beyond all possible bounds when they theorize that a bank could be held liable under RICO for merely providing routine banking services (maintaining a depositor account) and engaging in other customary banking activities (being a shareholder in another banking institution).  If banks could be held liable for such activities, then international banking would cease to exist.  *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 836.  Certainly no bank could quantify its potential liability if it faced being hauled into a foreign court on such meager allegations. The law is not otherwise. Therefore, plaintiffs have failed to state a proper RICO claim and those claims should be dismissed.

## C. FIBS Is Not Liable for Any Trespass Claim

In order to sustain a trespass claim, plaintiffs must "sufficiently plead that [d]efendants acted in concert with the September 11 highjackers...." *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 830. In this case, property damage plaintiffs have not done so.  All they can allege are routine banking services and business relationships that had absolutely no connection to the attacks of September 11.  It is impossible to discern how plaintiffs could allege in good faith that FIBS participated in a "trespass" that caused injury to plaintiffs.  Once again, plaintiffs have failed to identify any material support FIBS provided with respect to a trespass, or how its actions proximately caused the injuries to property damage plaintiffs. Therefore, the trespass claims against FIBS should be dismissed.

7

### D. Plaintiffs Have Not Alleged A Proper Negligence Claim Against FIBS

Plaintiffs attempt to allege a negligence claim against FIBS but fail to articulate a single duty that FIBS owed to plaintiffs, none of whom were depositors at the Bank. It is well-settled that the Bank does not owe a duty of care to third parties. *See Cohen v. Standard Bank Inv. Corp.,* 1998 WL 782024 at *7 (S.D.N.Y November 6, 1998) (no duty of care owed by a bank to investors or other non-depositors). To extend such a duty to "strangers" would subject a bank to unlimited liability for actions beyond its control. *See Security First Network Bank v. C.A.P.S., Inc.,* 2003 WL 22299011, at *5 (N.D. Ill. October 7, 2003).

Here, plaintiffs fail to articulate any recognizable duty that FIBS owed to them. Plaintiffs refer the Court to a series of anti-money laundering recommendations promulgated by a private, non-governmental organization. Carter Aff. Ex. 4. These "recommendations" have no force of law, nor do plaintiffs explain how the "recommendations" are relevant in this case. Moreover, plaintiffs do not describe how, if at all, FIBS neglected to carry out any "recommendations" regarding money laundering. Finally, plaintiffs cannot link any purported violation of a duty, even if there were one, to the events of September 11. Thus, because plaintiffs do not properly plead proximate cause, their negligence claims should likewise fail.

### E. Plaintiffs Fail To Properly Allege Any Assault and Battery and Intentional Infliction Of Emotional Distress Claims

Plaintiffs have not described any conduct by FIBS that was "extreme and outrageous" and would sustain an intentional infliction of emotional distress claim. *See Daniels v. St. Luke's – Roosevelt Hosp. Center,* 2003 WL 22410623, at *6 (S.D.N.Y. October 21, 2003). Moreover, plaintiffs cannot articulate how FIBS could have possibly committed an "assault and battery" upon them. Further, to the extent that plaintiffs argue that their common law claims are

8

"subsumed" within their federal claims, FIBS has previously addressed how plaintiffs have failed to state any federal cause of action in this case. Therefore, these claims should be dismissed.[5]

### F. The Property Plaintiffs' Aiding and Abetting Claims Should Be Dismissed

This Court has held that, in order to be liable under an aiding and abetting theory, a defendant must know "the wrongful nature of the primary actors conduct." *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 826, *quoting Pittman by Pittman v. Grayson*, 149 F. 3d 111, 122 (2d Cir. 1998). In this case, plaintiffs can only provide unsupportable conclusions that FIBS had anything to do with the September 11 attacks. Plaintiffs do not properly allege that FIBS knew that al Qaeda intended to attack the United States and that FIBS in some way materially supported that effort. *See Renner v. Chase Manhattan Bank, N.A.,* 2004 WL 48867, at *1 (2d Cir. Jan. 7, 2004). Therefore, the aiding and abetting claim should be dismissed.

---

[5] Of course, any such claims would be barred by the statutes of limitations, as this Court held in *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 829. Moreover, plaintiffs' tolling argument is a bit curious since they fail to articulate how FIBS prevented them from discovering the "true facts" concerning any alleged conduct on the part of the Bank. Furthermore, plaintiffs cannot properly plead the existence of a conspiracy between FIBS and anyone else that could possibly toll the statute of limitations in this case.

## CONCLUSION

FIBS respectfully requests that plaintiffs' complaints be dismissed with prejudice.

Dated:  July 25, 2005
       Tampa, Florida

                Respectfully Submitted,

                **LAURO LAW FIRM**

By: _____/s/_____
     JOHN F. LAURO, ESQ. (JFL-2635)
     KARENA L. NASHBAR, ESQ. (Fla.Bar 697982)
     (not admitted in New York)

     101 E. Kennedy Blvd., Suite 2180
     Tampa, Florida 33602
     Phone: (813) 222-8990
     Fax: (813) 222-8991
     *In New York, Reply To:*
     300 Park Avenue, Suite 1700
     New York, NY 10022
     E-mail: jlauro@laurolawfirm.com

     *Attorneys for Defendant*
     *Faisal Islamic Bank-Sudan*

C:\ADMIN1\CLIENTS\296.1\Pleadings\Replies\Reply to Property Damage

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2005, the forgoing Reply Memorandum of Defendant Faisal Islamic Bank – Sudan to Property Damage Plaintiffs' Consolidated Memorandum of Law in Opposition to Motions to Dismiss was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.



_____/s/_____
John F. Lauro, Esquire