UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:  Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |
|---|---|

*This document relates to:*

*Ashton v. Al Qaeda Islamic Army,* 02 CV 6977
*Burnett v. Al Baraka Investment & Development Corp.,* 03 CV 5738
*Cantor Fitzgerald & Co. v. Akida Bank Private Ltd.,* 04 CV 7065
*Continental Casualty Co. v. Al Qaeda Islamic Army,* 04 CV 5970
*Euro Brokers, Inc. v. Al Baraka Investment and Development Corp.,* 03 CV 6978
*O'Neill v. Al Baraka Investment and Development Corp.,* 04 CV 1923
*New York Marine & General Insurance Co. v. Al Qaida,* 04 CV 6105
*World Trade Center Properties, LLC v. Al Baraka Investment,* 04 CV 7280
*Federal Insurance Co. v. Al Baraka Investment and Development Corp.,* 03 CV 6978

**REPLY MEMORANDUM OF DEFENDANT FAISAL ISLAMIC BANK – SUDAN TO PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS**

**LAURO LAW FIRM**

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant*
*Faisal Islamic Bank -Sudan*

## INTRODUCTION

Defendant Faisal Islamic Bank – Sudan ("FIBS" or "the Bank") respectfully submits this reply memorandum to Plaintiffs' Consolidated Memorandum of Law In Opposition To Motions To Dismiss of Defendant Faisal Islamic Bank – Sudan ("Consol. Mem.").[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to hold FIBS liable for having ordinary banking relationships with certain individuals and entities, which in turn may have had dealings with other individuals and entities that plaintiffs claim had been associated with al Qaeda. Relying on speculation, conjecture, and innuendo, plaintiffs sue FIBS for simply acting as a bank. Indeed, this Court recently rejected plaintiffs' attempts to assert similar claims against other banks. *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 831-35 (S.D.N.Y 2005). FIBS respectfully requests that the Court reach the same conclusion here.

## SUMMARY OF ALLEGATIONS

### I.   New Allegations in Plaintiffs' Submissions

Perhaps recognizing that their pleadings cannot survive FIBS' motions to dismiss, plaintiffs offer up new allegations in their memorandum of law.[2] Many of these assertions, however, are not supported by the public record documents submitted as part of plaintiffs' opposition papers.[3] In any event, none of plaintiffs' "facts" – new or old – support a claim that the Bank intentionally participated in terrorist attacks against the United States.

---

[1] FIBS incorporates by reference its reply memoranda to the memorandum of law submitted by Cantor Fitzgerald plaintiffs ("Cantor Mem.") and the memorandum submitted by the so-called "property damage" plaintiffs ("Prop. Mem.").

[2] Although the Court is required to accept as true well-pled factual allegations in plaintiffs' complaints, the Court need not give any credence to the baseless and argumentative claims in plaintiffs' memorandum of law. *See Wright v. Ernst & Young LLP,* 152 F. 3d 169, 178 (2d Cir. 1998); *see also Jacobson v. Peat Marwick, Mitchell & Co.,* 445 F. Supp. 518, 526 (S.D.N.Y. 1977).

[3] Plaintiffs filed four principal affirmations or affidavits with attached exhibits:  (1) First Affidavit of John Fawcett, dated June 24, 2005 ("Fawcett Aff."); (2) Second Affidavit of John Fawcett, dated June 24, 2005 ("Fawcett Aff.

### A.     Alleged Account at FIBS

Plaintiffs contend that FIBS was "implicated" in a federal trial for "holding and managing accounts for al Qaeda operatives." Consol. Mem. at 2. As plaintiffs well know, however, a cooperating witness testified in a 2001 federal trial that an alleged bin Laden associate had a single account at FIBS at some undisclosed time. Cantor Mem. at 7-8. The cooperator seemed to indicate that the account was in the associate's name, and never suggested that the Bank knew that the customer was connected to bin Laden or al Qaeda. *Id.* Indeed, no one has ever alleged that FIBS "managed" accounts for al Qaeda or that the Bank intentionally supported al Qaeda's objectives. Rather, plaintiffs can only assert that a single FIBS depositor may be someone who had an association with bin Laden at some unspecified time.

### B.     Al Shamal Bank

Plaintiffs also claim that FIBS "founded, owned and controlled" Al Shamal Islamic Bank ("Al Shamal"). Consol. Mem. at 2. That statement, likewise, is nothing more than a baseless conclusion. Plaintiffs refer to a U.S. Senate Committee report suggesting that Al Shamal is "owned" by FIBS. Consol. Mem at 4. However, the report does not mention FIBS at all and never suggests that FIBS "owned or controlled" Al Shamal. Fawcett Aff. Ex. 5. Similarly, plaintiffs identify a 1985 news article for the proposition that FIBS was a "founder" of Al Shamal. Fawcett Aff. Ex. 4. However, the article neither mentions Al Shamal, nor does it state that FIBS "founded" that bank.[4]

---

II"); (3) Declaration of Jonathan Goodman, dated June 27, 2005 ("Goodman Dec."); and (4) Affirmation of Sean P. Carter, dated June 27, 2005 ("Carter Aff.").

[4] Indeed, U.S. Government reports identified by plaintiffs do not suggest that FIBS caused Al Shamal to be formed, or that it managed or controlled that bank. Carter Aff. Ex.2.; Goodman Dec. Ex. 5.

2

Furthermore, plaintiffs can only allege (truthfully) that at some point FIBS, along with several other individuals and entities, was one of many shareholders of Al Shamal. Fawcett Aff. Ex. 6. No one has ever maintained that FIBS had knowledge of any improper activities by Al Shamal or controlled its affairs. Fawcett Aff. Exs. 5, 7.

### C.     Guilt by Association

Plaintiffs' next argue that FIBS had relationships with certain individuals who, in turn, may have been associated with al Qaeda. Consol. Mem. at 3-4. For example, plaintiffs allege that a French journalist believes that FIBS was established in 1977 by a Youseef Nada, who was later designated (in 2001) as a terrorist sympathizer. Consol. Mem. at 3-4. Plaintiffs attach a news article written in French supposedly supporting this contention. Fawcett Aff. Ex. 8. After obtaining a translation of the article, however, it becomes clear that the French journalist merely claims that Nada was a shareholder in FIBS, nearly 25 years before the September 11 attacks. There is nothing in the article suggesting that Nada had any management or other role in the Bank since 1977, or that FIBS or Nada had any involvement in the September 11 attacks.

Finally, plaintiffs state that two individuals – Abdulleh Omar Naseef and Amin Aqueel Attas – had at some point been FIBS directors, and that in 1998 they formed the Rabita Trust, which was later designated as a terrorist organization. Consol. Mem at 4. Plaintiffs refer the Court to pages from the *Directory of Islamic Financial Institutions*; however, those pages never identify Naseef or Attas as FIBS directors. Fawcett Aff. Ex. 10. Moreover, even if these individuals had been directors in the 1970's, plaintiffs fail to allege any facts connecting them (or FIBS) to the September 11 attacks.[5]

---

[5] These "guilt by association" allegations are set forth in plaintiffs' memorandum of law, without any citations to their complaints.

3

## II.     The Established Public Record

Plaintiffs concede that in order to defeat FIBS' motions to dismiss, they must plead facts demonstrating that FIBS "knowingly and intentionally provided financial services and support to al Qaeda to attack the United States." Consol. Mem. at 1. It is not surprising, however, that plaintiffs ignore the most authoritative source of true facts regarding the September 11 attacks – the report issued by the National Commission on Terrorist Attacks Upon the United States ("9/11 Report").[6]

The 9/11 Report found that bin Laden and al Qaeda were expelled from Sudan in 1996, and that the Sudanese government seized substantially all of their assets in that country. 9/11 Report, pps. 62-67, 170. Thus, bin Laden left Sudan for Afghanistan without any means to launch attacks on the United States. *Id.* Indeed, it was not until two years later (in 1998), that al Qaeda advocated terrorist attacks upon the United States. 9/11 Report, pps. 66-67. This was the first time that al Qaeda publicly adopted a goal of launching attacks that resulted in the September 11 tragedy.

Moreover, plaintiffs' own papers indicate that al Qaeda did not publicly adopt a plan to attack on United States until two years after it left Sudan. Goodman Dec. Ex. 6 (testimony of FBI official that al Qaeda announced a strategy of attacking the United States in 1998); Carter Aff. Ex. 3 (testimony of former anti-terrorism official stating that it was not until 1999 that al Qaeda began to plan attacks upon the United States).

Therefore, after reviewing all of the publications, news articles, government reports, testimony, treatises, etc., offered by plaintiffs, one uncontroverted fact emerges: no one (other

---

[6] This memorandum of law references the authorized edition of the report published by W.W. Norton & Company, Inc. and will be cited here as "9/11 Report, p.___."

4

than plaintiffs) has accused FIBS of having anything to do with the September 11 attacks and plaintiffs' offer only an unsupportable assertion that it did so.[7]

## ARGUMENT

### I. There is no Personal Jurisdiction over FIBS

#### A. Plaintiffs' Baseless Conclusions Cannot Establish Personal Jurisdiction Over FIBS

Plaintiffs cannot meet their burden of establishing personal jurisdiction over FIBS under either New York's long-arm statute or federal law. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 22 at 804. This Court has refused to allow plaintiffs to rely upon unfounded conclusions or "argumentative inferences" to establish jurisdiction. *Id.* Here, plaintiffs ask the Court to base jurisdiction upon speculation, misstated facts, and inferences from innuendo.[8]

Plaintiffs acknowledge that they must plead specific facts demonstrating that "FIBS intentionally supported terrorists whose express aim was to cause injury in the United States." Consol. Mem at 14. In other words, plaintiffs must articulate circumstances from which the Court could conclude that FIBS intentionally assisted terrorists, knowing that those terrorists intended to use the bank's financial services to carry out attacks in the United States. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 809. Plaintiffs fall woefully short of meeting this pleading burden.

---

[7] In their memorandum, plaintiffs create allegations out of thin air that: (1) "FIBS was at the core of that Sudanese 'network of businesses' which enabled al Qaeda to launch 'anti-U.S. terrorism,' including the September 11 attacks" and (2) "FIBS supported al Qaeda when defendant Osama bin Laden publicly announced his intention to target the United States." Consol. Mem. at 4-5. These arguments are not supported by any credible public record source. *See* 9/11 Report, pps. 169-70 ("bin Laden did not fund al Qaeda…with a network of businesses in Sudan" and "bin Laden's assets in Sudan were not a source of money for al Qaeda…he left Sudan with practically nothing.").

[8] Plaintiffs do not challenge FIBS position that it does not engage in business in the United States and therefore there is no general jurisdiction over it. Instead, plaintiffs base jurisdiction upon a federal statute – the Anti-Terrorism Act, 18 U.S.C. 2334 (a) ("ATA"). As discussed below, plaintiffs have not stated a claim under ATA; however, even if plaintiffs could articulate such a claim, the exercise of jurisdiction would deny due process because the Bank has no "minimum contacts" with the United States.

5

### B. Plaintiffs Conspiracy Allegations Cannot Establish Jurisdiction

Plaintiffs rely on several cases for the unremarkable proposition that the existence of a conspiracy could establish jurisdiction over a non-resident defendant. Consol. Mem. at 15-17. Nonetheless, merely mouthing the word "conspiracy" does not give plaintiffs a pass through the courthouse door. In order to succeed, plaintiffs need to provide specific facts that FIBS "directed, controlled or requested al Qaeda to undertake its terrorist activities" by attacking the United States. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp 2d at 806, *citing Daventree Ltd. v. Republic of Azerbaijan,* 349 F. Supp. 2d 736 (S.D.N.Y. 2004). This, they have not done.

As discussed above, plaintiffs offer no facts demonstrating "communality" of purpose among FIBS and the terrorist hijackers. Moreover, there is no suggestion that FIBS somehow benefited from the attacks or controlled the activities of the September 11 hijackers. Finally, plaintiffs cannot show any substantial assistance given by FIBS to the terrorists in order to carry out the September 11 attacks. *See Robinson v. Government of Malaysia,* 269 F. 3d 133, 146 (2d Cir. 2001); *Grove Press, Inc. v. Angleton*, 649 F. 2d 121, 122 (2d Cir. 1981).

### C. Exercising Jurisdiction Over FIBS Would Violate Due Process

Any exercise of jurisdiction over FIBS must also meet the requirements of due process. That is, plaintiffs must establish that FIBS had "minimum contacts" with the forum and that asserting personal jurisdiction over it would be "reasonable" under the circumstances. *See International Shoe Company v. Washington,* 326 U.S. 310, 316 (1945); *see also Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F. 3d 560, 567 (2d Cir. 1996); *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. at 806. In this case, plaintiffs cannot point to a single fact that would satisfy due process in exercising jurisdiction over FIBS.

Instead, plaintiffs can only discuss several cases in which courts have exercised jurisdiction over foreign defendants who themselves engaged in acts of terrorism and who "purposefully directed" unlawful activities against the United States. *See Pugh v. Socialist People's Libyan Arab Jamahiriya,* 290 F. Supp. 2d 54 (D.D.C. 2003); *Daliberti v. Iraq,* 97 F. Supp. 2d 38 (D.D.C. 2000). Plaintiffs' cases are easily distinguishable from the circumstances here.

Unlike the actors in the cases cited by plaintiffs, FIBS did nothing to participate in the September 11 attacks. At no time did the Bank become a "primary participant" in intentional wrongdoing, nor did it support the activities of the hijackers. Plaintiffs cannot truthfully contend otherwise. Their own papers show that not one government report, transcript of sworn testimony, or official proceeding ever suggested that FIBS had anything to do with the September 11 attacks.[9]

## II. Banks Cannot Be Held Liable for Routine Banking Relationships

Plaintiffs cannot reasonably dispute that Faisal Islamic Bank–Sudan is a legitimate banking institution established in the 1970's. The Bank has about 35 branches throughout Sudan and nearly 1,000 employees. Fawcett Aff. II Exs. 1-2. FIBS is regulated by the Bank of Sudan and has correspondent relationships with some of the most prominent banking institutions around the world. *Id.* The Bank's financials are a matter of public record, including information relating to its capital, investments, and assets. *Id.* FIBS has never been sanctioned by the United

---

[9] Plaintiffs ask to conduct jurisdictional discovery based on the existence of a correspondent account FIBS maintains with the Bank of New York. Consol. Mem. at 19-20. Fawcett Aff. II, Ex. 2. First, the existence of a correspondent banking relationships does not subject a foreign bank to U.S. jurisdiction. *See The Semi Conductor Materials, Inc., v. Citibank International PLC,* 969 F. Supp. 243, 246 (S.D.N.Y. 1997) (citations omitted). Further, plaintiffs provided the Court with numerous documents regarding FIBS and its banking activities. Not one document suggests that FIBS has any contact whatsoever with the United States. In over two years of litigation, plaintiffs have failed to provide any evidence that FIBS conducted business in the United States. Thus, jurisdictional discovery would be fruitless. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 812.

7

States or designated as a terrorist supporter. The Bank's assets have never been frozen or seized by any governmental authority.

Indeed, the law is clear and unambiguous – banks are not liable for injuries stemming from ordinary banking services or relationships. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 831-35; *see also Burnett v. Al Baraka Inc. and Development Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) *("Burnett I")* ("no support...for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.").

Of course, a bank is not responsible for the wrongful acts of its customers or others with whom the bank has business relationships. *See Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726*, 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (bank owes no duty to non-customers); *Renner v. Chase Manhattan Bank,* 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999); *see also Dubai Islamic Bank v. Citibank, N.A.,* 256 F. Supp. 2d 158, 166-68 (S.D.N.Y. 2003) (bank has liability only for active participation in wrongdoing that causes injury).[10]

This Court has followed the above principles in dismissing plaintiffs' complaints against the Arab Bank, Saudi American Bank, and Al Rahji Bank. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 831-36 (rejecting the theory that a bank "through its relationships with other banks and [entities]…provided material support to al Qaeda.").[11] Therefore, FIBS respectfully requests that the Court adhere to its prior ruling in this case and

---

[10] Moreover, as a mere shareholder of Al Shamal Bank, FIBS could never be liable for the alleged wrongful acts of that bank. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 836; *Brito v. DILP Corp.,* 723 N.Y.S. 2d 459 (1st App. Div. 2001).

[11] Plaintiffs made conclusory allegations against the dismissed banks that were more egregious than those leveled at FIBS: (1) Al Rajhi Bank was the primary bank for al Qaeda front groups; (2) Al Rajhi Bank funded al Qaeda charities; (3) Saudi American Bank raised funds for terrorists; and (4) Arab Bank maintained accounts for terrorist charities. *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 832-35.

8

dismiss plaintiffs' claims against it. To hold otherwise would expose banks to unlimited liability for unforeseeable events beyond their control.[12]

### III. The Complaints Fail to State a Cause of Action Against FIBS

Plaintiffs assert various purported claims against FIBS under federal and state theories – alleged violations of the Anti-Terrorism Act ("ATA"), The Alien Tort Claims Act ("ATCA"), wrongful death, etc. Consol. Mem. at 9-12.

The deficiencies of these claims have been fully discussed in the memoranda of law submitted by FIBS in support of its motions to dismiss. All of plaintiffs' liability theories require the proper pleading of facts demonstrating that FIBS: (1) provided material support to al Qaeda knowing that the terrorist organization intended to carry out attacks in the United States and (2) the material support was a proximate cause of the injuries plaintiffs sustained on September 11. *See In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 826-28; *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1023 (7th Cir. 2002); *see also Boim v. Quarnic Literacy Inst.,* 340 F. Supp. 2d 885, 906-13 (N.D. Ill. 2004). As discussed at length in FIBS prior memoranda, plaintiffs have not, and cannot, plead such facts.

For example, plaintiffs provide no facts showing that FIBS gave material support to al Qaeda in connection with attacks upon the United States. There are no well-pled allegations that FIBS gave money to al Qaeda, assisted in its terrorist activities, or promoted attacks in the United States. *See In re: Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 828* (plaintiffs must "allege that the defendant knew about the terrorists' illegal activities, the

---

[12] The banking facilities of several U.S. banks – Bank of America, First Union, and Bank of New York – were allegedly used by al Qaeda to carry out terrorist activities. *See* Ashton Complaint, ¶¶ 174, 180; Consol. Mem. at 3. None of the U.S. banks share FIBS' Islamic heritage, and plaintiffs are not seeking to recover billions of dollars from those institutions.

defendant desired to help those activities succeed, and that the defendant engaged in some act of helping those activities.").

Finally, the complaints reveal no proximate cause between FIBS' purported actions and the September 11 injuries. Plaintiffs cannot possibly plead any facts suggesting that the Bank caused plaintiffs' damages, or that it was reasonably foreseeable that such injuries would flow from those alleged acts. *See In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d at 797 n. 26; *see also Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268 (1992). Without any facts showing a link between FIBS' routine banking activities and the injuries suffered by plaintiffs, the complaints cannot possible state a claim against the Bank.

## CONCLUSION

FIBS respectfully requests that plaintiffs' complaints be dismissed with prejudice.

Dated: July 25, 2005
   Tampa, Florida

>Respectfully Submitted,
>
>**LAURO LAW FIRM**
>
>By: _____/s/_____
>   JOHN F. LAURO, ESQ. (JFL-2635)
>   KARENA L. NASHBAR, ESQ. (Fla.Bar 697982)
>   (not admitted in New York)
>
>   101 E. Kennedy Blvd., Suite 2180
>   Tampa, Florida 33602
>   Phone: (813) 222-8990
>   Fax: (813) 222-8991
>   *In New York, Reply To:*
>   300 Park Avenue, Suite 1700
>   New York, NY 10022
>   E-mail: jlauro@laurolawfirm.com
>
>   *Attorneys for Defendant*
>   *Faisal Islamic Bank-Sudan*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July, 2005, the forgoing Reply Memorandum of Defendant Faisal Islamic Bank – Sudan to Plaintiffs' Consolidated Memorandum of Law in Opposition to Motions to Dismiss was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.



_____/s/_____
John F. Lauro, Esquire