UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case |

*This document relates to:*

*Ashton v. Al Qaeda Islamic Army,* 02 CV 6977
*Burnett v. Al Baraka Investment & Development Corp.,* 03 CV 5738
*Cantor Fitzgerald & Co. v. Akida Bank Private Ltd.,* 04 CV 7065
*Continental Casualty Co. v. Al Qaeda Islamic Army,* 04 CV 5970
*Euro Brokers, Inc. v. Al Baraka Investment and Development Corp.,* 03 CV 6978
*O'Neill v. Al Baraka Investment and Development Corp.,* 04 CV 1923
*New York Marine & General Insurance Co. v. Al Qaida,* 04 CV 6105
*World Trade Center Properties, LLC v. Al Baraka Investment,* 04 CV 7280
*Federal Insurance Co. v. Al Baraka Investment and Development Corp.,* 03 CV 6978


**REPLY MEMORANDUM OF DEFENDANT FAISAL ISLAMIC BANK – SUDAN TO CANTOR FITZGERALD AND PORT AUTHORITY PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**


**LAURO LAW FIRM**

101 E. Kennedy Blvd.
Suite 2180
Tampa, FL  33602
Phone: 813-222-8990
Fax:  813-222-8991

-and-

*In New York, Reply To:*
300 Park Avenue
Suite 1700
New York, NY  10022

*Attorneys for Defendant
Faisal Islamic Bank - Sudan*

## INTRODUCTION

Defendant, Faisal Islamic Bank – Sudan ("FIBS" or "the Bank") respectfully submits this reply memorandum to Cantor Fitzgerald and Port Authority Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Faisal Islamic Bank (Sudan) ("Cantor Mem.").[1]

## PRELIMINARY STATEMENT

In its reply to plaintiffs' consolidated memorandum, FIBS sets forth why plaintiffs' theory of bank liability is legally unsupportable and should be rejected. In the interest of economy, those arguments will not be repeated here. In a word, plaintiffs seek to hold FIBS liable for having ordinary banking relationships with individuals and entities that plaintiffs claim had been associated with al Qaeda.

This Court has dismissed similar claims made by plaintiffs against other banks. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 831-35 (S.D.N.Y. 2005). FIBS respectfully requests that the Court reach the same conclusions here and dismiss all Cantor Fitzgerald plaintiffs' complaints for (1) lack of personal jurisdiction; (2) failure to state a claim; and (3) failure to provide a "short and plain" statement entitling plaintiffs to relief.

## SUMMARY OF ALLEGATIONS

FIBS previously responded to plaintiffs' claims regarding (1) a single bank account purportedly held at FIBS by a bin Laden associate and (2) the Bank's status as a shareholder in Al Shamal Bank. Although Cantor Fitzgerald plaintiffs make similar accusations regarding the account and Al Shamal Bank (Cantor Mem. at 6-8), they cannot plead any facts that FIBS knew that a bin

---

[1] FIBS respectfully incorporates herein its reply memorandum to the consolidated memorandum submitted by plaintiffs ("Consol. Mem.") and the memorandum filed by the so-called "property damage" plaintiffs ("Prop. Mem.").

1

Laden associate may have had any such account at the Bank or that, as a shareholder in another bank, FIBS could be responsible for that other bank's activities.[2]

## I.   New Allegations in Plaintiffs' Submissions

In their memorandum, Cantor Fitzgerald plaintiffs offer up brand new allegations, which are not supported by the affirmations and affidavits submitted as part of their opposition papers.[3] None of plaintiffs' claims, however, demonstrate that (1) FIBS provided material support to al Qaeda in connection with carrying out attacks upon the United States or (2) any of FIBS' purported acts proximately caused plaintiffs' injuries stemming from the September 11 attacks.

### A.   FIBS Purported Relationship With a Sudanese Political Party

Plaintiffs allege that FIBS had a relationship with a Sudanese political party – the National Islamic Front ("NIF") – that in turn had party members who were sympathetic to bin Laden. Cantor Mem. at 9.  NIF is one of the oldest Islamic political parties in the Middle East and was involved in Sudanese politics over the past decades. Goodman Dec. Ex. 14. Moreover, NIF was one of the earliest expressions of popular will and democracy in a Muslim country. Goodman Dec. Ex. 15.  It would not be surprising, therefore, that party members might have relationships with financial institutions in their country.

In any event, plaintiffs' claim that, at an unspecified time, FIBS provided NIF with an office building in its corporate headquarters.  Goodman Dec. Ex. 15.  Furthermore, plaintiffs state that NIF party members played a "prominent role" on the FIBS board of directors in the late 1970's, when the Bank was first formed. Cantor Mem. at 9; Goodman Dec. Ex. 3.  There is no

---

[2] This Court dismissed plaintiffs' complaints against other banks holding that there is no liability for "money passing through a bank for routine banking services" and that the plaintiffs did not "include any facts that support the inference that [the banks] knew…that [they were] providing material support to terrorists…." *In re: Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d. at 834-35.

[3] Plaintiffs filed a Declaration of Jonathan Goodman, dated June 27, 2005 ("Goodman Dec."). The exhibits attached to the declaration provide further support for FIBS' position that this Court has no jurisdiction over it, and that plaintiffs have made only baseless allegations against the Bank that do not give rise to a judicially recognizable claim.

2

suggestion, however, that NIF members had any connection to the Bank in the last 20 years. Thus, the documents attached to the Goodman Declaration do not support plaintiffs' contention that FIBS "was managed by board members belonging to a group that supported Bin Laden and Al Qaeda." Cantor Mem. at 15.

In addition, plaintiffs allege in their memorandum that at some point in the 1990's, bin Laden issued a $2 million check to the leader of NIF from an account at a "Faisal Islamic Bank." Cantor Mem. at 10. Plaintiffs base their charge on a 1996 Egyptian newspaper article, written in Arabic. Goodman Dec. Ex. 16. However, when one reads the translation of the article, it becomes clear that the author (an unrenowned Egyptian journalist) never mentions FIBS, which is based in Sudan, as the bank from which the funds were drawn. That same author, by the way, believes that Iran, the CIA, and bin Laden formed a radical organization in Afghanistan. *Id.*

Finally, plaintiffs contend that NIF members and bin Laden helped form Al Shamal Bank, and that al Qaeda used that bank. Cantor Mem. at 10. The documents attached to plaintiffs' declaration, including a U.S. State Department report, do not substantiate that FIBS had anything to do with causing the formation of Al Shamal Bank or participating in its management. Goodman Dec. Ex. 5. Time and time again, plaintiffs make claims in their memorandum, citing to exhibits or sworn statements, which fail to corroborate their statements. Indeed, not one document or exhibit provided by plaintiffs reveals any connection between FIBS and al Qaeda.

In summary, plaintiffs' claims regarding FIBS and NIF are that at unspecified times in the 1970's and 1980's, NIF party members were on FIBS' board of directors, and NIF had an office at the Bank building. Years later, NIF members became sympathetic to bin Laden and may

have supported al Qaeda in Sudan. Based on these bare-bones conclusions, plaintiffs argue that FIBS should be held liable for the September 11 attacks.[4]

### B. Alleged Frozen Bank Accounts

Plaintiffs also claim that FIBS is liable for their injuries because at some point, the Saudi government froze accounts that depositors had at the Bank. Cantor Mem. at 15-16. Plaintiffs base this allegation on congressional testimony given by a former State Department official. Goodman Dec. Ex. 9. The former official testified that in 2001, Saudi Arabia had frozen a "small number of accounts" from two banks, including at "Faisal Islamic Bank." *Id.*

The former official does not identify FIBS – which operates only in Sudan – and does not provide any additional facts regarding the account. It does not appear that bank assets were frozen, but rather that funds in depository accounts belonging to some unidentified customers. Plaintiffs believe this shows that FIBS was supporting terrorism. Cantor Mem. at 15-16. Needless to say, it is customary for government authorities to freeze customer accounts without any suggestion that the bank itself was involved in wrongdoing. Moreover, as plaintiffs know, FIBS has no branches in Saudi Arabia and does not hold depositor funds in that country. It is therefore impossible to discern how the Saudi government could have frozen customer accounts in Sudan. Goodman Dec. Exs. 10-11 (FIBS has only correspondent banking relationships with Saudi banks).

In any event, plaintiffs' claim is meaningless. The former State Department official's testimony never suggests that FIBS was implicated in any wrongdoing, nor has the U.S. government ever alleged that FIBS assisted terrorists in any way. Therefore, in their description of relevant facts, plaintiffs offer nothing whatsoever tying FIBS to the attacks of September 11.

---

[4] Cantor Fitzgerald plaintiffs make these NIF allegations in their memorandum of law, without citations to their complaints or RICO statements. Moreover, to our knowledge, NIF has never been designated as a terrorist sponsor by the U.S. government, nor has that political party ever supported attacks upon the United States.

4

If anything, plaintiffs' opposition papers demonstrate that they can make only baseless conclusions regarding the Bank's supposed involvement in the September 11 attacks.[5]

## II. The Established Public Record

Plaintiffs concede that in order to defeat the motions to dismiss, they must plead facts showing that FIBS "knowingly and intentionally provided financial services and support to Al Qaeda to attack the United States." Consol. Mem. at 1. The 9/11 Report[6], and plaintiffs' own exhibits, reveal that no one could make a credible claim that FIBS had any involvement in the September 11 attacks. For example, the 9/11 Report concluded that al Qaeda and bin Laden were expelled from Sudan in 1996, and that the Sudanese government seized substantially all of their assets. 9/11 Report, pps. 62-67, 170.

It was not until 1998, two years after leaving Sudan, that bin Laden (for the first time) publicly announced an intention to attack the United States. Goodman Dec. Ex. 6 (testimony by FBI official stating that the plan to attack the United States emerged years after bin Laden was forced to sever contacts with Sudan). Thus, plaintiffs' allegations regarding FIBS – all of which predate 1996 – are of no consequence (even if the assertions were true) no one could have known that in 1998, al Qaeda would publicly announce a plan of action that would lead to the September 11 attacks. In short, the 9/11 Report and plaintiffs' own public record exhibits show that there is an unbridgeable separation between FIBS' alleged customary banking activities and the September 11 attacks.

---

[5] The "frozen accounts" allegations appear only in plaintiffs' memorandum of law and not in their complaints or RICO statements.

[6] In the summer of 2004, the National Commission on Terrorist Attacks Upon The United States issued a report pursuant to Public Law 107-306, November 27, 2002. This memorandum of law references the authorized edition of the report published by W.W. Norton & Company, Inc., and will be cited here as "9/11 Report, p. __."

5

### III.     The Complaint Fails to State a Claim Against FIBS

####      A.     FIBS Did Not Violate International Law

Plaintiffs allege some sort of "international law" claim against FIBS and seek to recover billions of dollars from the Bank as a result of the September 11 attacks. That is, plaintiffs make naked assertions that FIBS participated in one of the world's most barbaric and heinous crimes. And they do so without providing FIBS any understanding of what it allegedly did to injure plaintiffs.  As Judge Robertson mentioned in this case:

> it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants. The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage….[G]iven the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he  – or it – does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests….

*Burnett v. Al Baraka Inv. and Development Corp.,* 274 F. Supp. 2d 86, 103-104 (D.D.C. 2003).

This Court has held that an airplane hijacking could be the basis for a federal claim provided it is alleged in connection with a federal statute. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 826 (airplane hijacking could violate international law and provide the underpinning of a federal ATCA claim); *see also Hayden v. Pataki*, 2004 WL 1335921, at *7 (S.D.N.Y. June 14, 2004) ("[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute").

 Here, plaintiffs have not properly pled an international law violation committed by FIBS based upon a specific federal statute.[7]  Moreover, plaintiffs' international law claim fails because

---

[7] Plaintiffs cite *Bodnar v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000) for the proposition that a federal court may exercise subject matter jurisdiction over international law claims under 28 U.S.C. § 1331. It is well-settled that federal common law incorporates customary international law and that federal courts have jurisdiction over claims involving violations of international law. *See Kadic v. Karadzic,* 70 F. 3d 232, 246 (2d. Cir.1995); *see also Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 415 (1964). However, international law does not provide an independent cause of action unless brought pursuant to a federal statute, e.g. ATCA or ATA. *See Hayden v. Pataki*, 2004 WL 1335921, at *7 (S.D.N.Y. June 14, 2004).

the complaints do not allege a "judicially recognizable" right of action by properly pleading that FIBS (1) materially supported activities that violated international law and (2) participated intentionally in those violations in a manner that proximately caused the injuries sustained on September 11, 2001. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828-29. Simply put, plaintiffs cannot allege any facts suggesting that FIBS had anything to do with the September 11 hijackings.

The bare-bones conclusions plaintiffs assemble in an attempt to support this international law claim may be summarized as follows: FIBS was established in Sudan in the late 1970's as a legitimate bank adhering to Islamic religious principles. At that time, a political party – NIF – operated in Sudan, and members of NIF joined the board of directors of FIBS. NIF also later had office space at FIBS headquarters. In the late 1980's bin Laden and his associates moved to Sudan. NIF followers were sympathetic to bin Laden and supported his unlawful activities.

At some unspecified time, some individual sympathetic to bin Laden opened a depository bank account at FIBS, which was neither in the name of al Qaeda nor bin Laden. Further, FIBS was a shareholder in another Sudanese bank, Al Shamal Bank, which was supposedly capitalized with funds from bin Laden. Bin Laden and al Qaeda allegedly used Al Shamal Bank for various improper purposes. Bin Laden was expelled from Sudan in 1996. Two years later, bin Laden issued a public statement calling upon extremists to attack the United States. Thereafter, al Qaeda associates planned and, on September 11, 2001, carried out attacks upon the United States resulting in plaintiffs' injuries. That is the extent of plaintiffs' factual case in support of their international law claim.

Needless to say, plaintiffs can identify no facts whatsoever that FIBS (1) "knew" about al Qaeda's intention to attack the United States; (2) desired to help al Qaeda carry out this

7

objective by providing financial services or money; or (3) engaged in "some act" to help al Qaeda in furthering its goal of attacking the United States. *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d at 828. Furthermore, plaintiffs have not properly pled that FIBS acted in "concert" or "conspired" with al Qaeda in connection with the September 11 attacks. This Court has held that in order "to be liable under either conspiracy or aiding and abetting…the defendant 'must know the wrongful nature of the primary actor's conduct,' and the conduct must be tied to a substantive cause of action." *Id*. at 826 (internal citations omitted).

Also, plaintiffs cannot truthfully plead any facts showing that FIBS knew al Qaeda intended to attack the United States and then helped al Qaeda carry out its goal. Finally, plaintiffs cannot show that anything FIBS did was a "proximate cause" of the injuries they sustained on September 11, 2001. Unlike in *Boim v. Quaranic Literacy Inst.,* 291 F. 3d 1000 (7th Cir. 2002) (referenced in plaintiffs' memoranda), plaintiffs here have not properly alleged that FIBS knowingly assisted al Qaeda in its terrorist activities at a time when that organization intended to attack the United States. *Id*. at 797; *see also Smith ex rel Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 226 (S.D.N.Y. 2003).[8]

### B. Plaintiffs Port Authority Fail to State a Claim for Contribution and Indemnity

Plaintiffs Port Authority of New York and New Jersey allege claims for contribution and indemnification against FIBS. These claims fail for two reasons. First, a claim of contribution and indemnification requires the existence of an underlying tort committed by a defendant. Here, as previously discussed, plaintiffs have not pled any such tort. Furthermore, plaintiffs' claims are

---

[8] Plaintiffs make a curious "conscience avoidance" argument in an effort to bolster the lack of well-pled facts in their complaints. Cantor Mem. at 10-12. In criminal cases, under limited circumstances, a court may give a "conscience avoidance" jury instruction when a defendant takes willful steps to avoid knowing true facts. *See U.S. v. Svoboda,* 347 F. 3d 471, 477 (2d Cir. 2003). That jury charge and the case law surrounding it, have never been used in a civil case to excuse a plaintiff's failure to provide factual allegations that a defendant intended to participate in wrongful conduct. Plaintiffs' suggestion that this Court has allowed a plaintiff to use a "conscience avoidance" theory to sustain an otherwise deficient pleading is simply not true. Cantor Mem. at 11.

8

premature, since they must first be adjudicated liable to a third party before bringing a claim against FIBS. *See Board of Educ. v. Sargent*, 71 N.Y. 2d 21, 27-28 (1987). Plaintiffs have not pled that they have been adjudicated liable to anyone else, and therefore their contribution and indemnity claims should be dismissed. [9]

---

[9] Plaintiffs also continue to ignore the basic proposition that "punitive damages" are a type of relief rather than a cause of action. *See Rocanova v. Equitable Life Assurance Soc'y of the U.S.,* 634 N.E. 2d 940, 945-56 (N.Y. 1994). Thus, their punitive damages claim should be dismissed.

## CONCLUSION

FIBS respectfully requests that plaintiffs' complaints be dismissed with prejudice.


Dated:  July 25, 2005                                    Respectfully Submitted,
        Tampa, Florida

                                            **LAURO LAW FIRM**

                                        By:  _____/s/_____
                                                  JOHN F. LAURO, ESQ. (JFL-2635)
                                                  KARENA L. NASHBAR, ESQ. (Fla.Bar 697982)
                                                  (not admitted in New York)

                                                  101 E. Kennedy Blvd., Suite 2180
                                                  Tampa, Florida 33602
                                                  Phone: (813) 222-8990
                                                  Fax: (813) 222-8991

                                                  *In New York, Reply To:*

                                                  300 Park Avenue, Suite 1700
                                                  New York, NY 10022
                                                  E-mail: jlauro@laurolawfirm.com

                                                  *Attorneys for Defendant*
                                                  Faisal Islamic Bank-Sudan

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2005, the forgoing Reply Memorandum of Defendant Faisal Islamic Bank – Sudan to Cantor Fitzgerald and Port Authority Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss was filed electronically through the Court's ECF/PACER system and was electronically served to opposing counsel pursuant to Court rules. A copy of the forgoing was also sent by US mail to plaintiffs' primary counsel.



_____/s/_____
John F. Lauro, Esquire