**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br> ECF Case <br><br> **AMENDED RICO STATEMENT Applicable to Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain and Al Haramain Islamic Foundation (Saudi Arabia), Al Haramain Islamic Foundation (Afganisatan), Al Haramain Islamic Foundation (Albania), Al Haramain Islamic Foundation (Bangladesh), Al Haramain Islamic Foundation (Bosnia-Herzegovina), Al Haramain Islamic Foundation (Ethiopia), Al Haramain Islamic Foundation (Indonesia), Al Haramain Islamic Foundation (Kenya), Al Haramain Islamic Foundation (Netherlands), Al Haramain Islamic Foundation (Pakistan), Al Haramain Islamic Foundation (Somalia), Al Haramain Islamic Foundation (Tanzania), Al Haramain Islamic Foundation a/k/a Al Haramain Islamic Foundation, Inc. (United States)** |

*This document relates to:*   Estate of John P. O'Neill, Sr., *et al.* v. Al Baraka, *et al.*
04 CV 01923 (RCC)

**AMENDED RICO STATEMENT APPLICABLE TO AL-HARAMAIN ISLAMIC FOUNDATION, INC. A/K/A AL-HARAMAIN ISLAMIC FOUNDATION A/K/A ISLAMIC AL-HARAMAIN ("AHIF") AND AL HARAMAIN ISLAMIC FOUNDATION (SAUDI ARABIA), AL HARAMAIN ISLAMIC FOUNDATION (AFGANISTAN), AL HARAMAIN ISLAMIC FOUNDATION (ALBANIA),  AL HARAMAIN ISLAMIC FOUNDATION (BANGLADESH), AL HARAMAIN ISLAMIC FOUNDATION (BOSNIA-HERZEGOVINA), AL HARAMAIN ISLAMIC FOUNDATION (ETHIOPIA), AL HARAMAIN ISLAMIC FOUNDATION(INDONESIA), AL HARAMAIN ISLAMIC FOUNDATION (KENYA), AL HARAMAIN ISLAMIC FOUNDATION (NETHERLANDS), AL HARAMAIN ISLAMIC FOUNDATION (PAKISTAN), AL HARAMAIN ISLAMIC FOUNDATION (SOMALIA), AL HARAMAIN ISLAMIC FOUNDATION (TANZANIA), AL HARAMAIN ISLAMIC FOUNDATION A/K/A <u>AL HARAMAIN ISLAMIC FOUNDATION, INC. (UNITED STATES)</u>**

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

Based on information currently available, plaintiffs submit this Amended RICO statement pursuant to the Case Management Order dated June 15, 2004, and Judge Casey's individual rules, for defendants:

- Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain ("AHIF").

- Al Haramain Islamic Foundation (Saudi Arabia)

- Al Haramain Islamic Foundation (Afghanistan)

- Al Haramain Islamic Foundation (Albania)

- Al Haramain Islamic Foundation (Bangladesh)

- Al Haramain Islamic Foundation (Bosnia-Herzegovina)

- Al Haramain Islamic Foundation (Ethiopia)

- Al Haramain Islamic Foundation (Indonesia)

- Al Haramain Islamic Foundation (Kenya)

- Al Haramain Islamic Foundation (Netherlands)

- Al Haramain Islamic Foundation (Pakistan)

- Al Haramain Islamic Foundation (Somalia)

- Al Haramain Islamic Foundation (Tanzania)

- Al Haramain Islamic Foundation a/k/a Al Haramain Islamic Foundation, Inc. (United States)

Given the extraordinarily complex nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified through discovery and otherwise.

This filing is a supplemental pleading in accordance with 03 MDL CMO-2 para 14, and the Individual Rules of Judge Casey. It is designed to supplement the Plaintiff's complaint, as a whole, as amended from time to time, and is not to be construed as revoked, in whole or in part, as a result of any subsequent amendment of the complaint.

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

1. The unlawful conduct is in violation of 18 U.S.C. §§ 1962(b), 1962(c) and/or (d).

2. The names of the defendants, to whom this RICO statement pertains is Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain ("AHIF") and Al Haramain Islamic Foundation (Saudi Arabia), Al Haramain Islamic Foundation (Afghanistan), Al Haramain Islamic Foundation (Albania), Al Haramain Islamic Foundation (Bangladesh), Al Haramain Islamic Foundation (Bosnia-Herzegovina), Al Haramain Islamic Foundation (Ethiopia), Al Haramain Islamic Foundation (Indonesia), Al Haramain Islamic Foundation (Kenya), Al Haramain Islamic Foundation (Netherlands), Al Haramain Islamic Foundation (Pakistan), Al Haramain Islamic Foundation (Somalia), Al Haramain Islamic Foundation (Tanzania), Al Haramain Islamic Foundation a/k/a Al Haramain Islamic Foundation, Inc. (United States) (collectively as"AHIF entities"). The alleged misconduct and basis for liability is set forth in Exhibit "A."

3. Not applicable. All known wrongdoers are named as defendants in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076 (RCC)), other cases brought by other plaintiffs in *In Re Terrorist Attacks on September 11, 2001* (03-MDL-1570 (RCC)), and others. Plaintiffs will separately file RICO statements with respect to the misconduct of the other defendants. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery or otherwise. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery or other information is obtained.

4. The name of each victim is indicated on the attached hereto as Exhibit "B." The victims consist of (1) all spouses, children, parents, siblings, or heirs of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001 (with the events at the World Trade Center in New York, N.Y., the Pentagon Building in Arlington County, Virginia, and the airliner crash in Shanksville, Pennsylvania, on September 11, 2001, and activities related thereto, collectively referred to herein as "Attack" or "Attacks"); and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001. Exhibit "B" sets forth the names of the decedents killed by the attackers, with the category of "victims" further including their spouses, children, parents, siblings, or heirs as set forth above.

X:\Clients\ONeill v. Saudi arabia\RICO Statements\Al Haramain Amended RICO Statement - v1.doc

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

The manner in which the victims were injured consists of death, suffering caused by death, and all economic damages resulting from such deaths, and actions of the defendants and their co-conspirators as described herein, including without limitation Paragraph 17 hereof.

5.

    a.  List of predicate acts and specific statutes violated:

| | |
|---|---|
| Conspiracy to commit murder | NY Penal § 105.15; NY Penal § 125.25 (xi) |
| Conspiracy to commit arson | NY Penal § 105.15; NY Penal § 150.15 |
| Fraud with Identification Documents | 18 U.S.C. § 1028 |
| Mail Fraud | 18 U.S.C. § 1341 |
| Wire Fraud | 18 U.S.C. § 1343 |
| Financial Institution Fraud | 18 U.S.C. §1344 |
| Relating to Unlawful Procurement of Citizenship or Naturalization Papers | 18 U.S.C. §1425 |
| Relating to the Unlawful Reproduction of Naturalization or Citizenship Papers | 18 U.S.C. § 1426 |
| Relating to the Sale of Naturalization or Citizenship Papers | 18 US.C. §1427 |
| Obstruction of Justice | 18 U.S.C. § 1503 |
| Obstruction of a Criminal Investigation | 18 U.S.C. §1510 |
| Obstruction of State or Local Law Enforcement | 18 U.S.C. § 1511 |
| Travel Act | 18 U.S.C. § 1952 |

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

| | |
|---|---|
| Fraud or Misuse of Visa Permits or other Documents | 18 U.S.C. § 1546 |
| Illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| Money laundering | 18 U.S.C. § 1957 |
| Defrauding the United States Government | 18 U.S.C. § 371 |
| Filing false or materially false tax returns | 26 U.S.C. § 7206(1),(2) |
| Engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |
| Providing material support of Terrorism | 18 U.S.C. § 2332(b)(g)(5)(B)<br>18 U.S.C. § 2339A<br>18 U.S.C. § 2339B<br>18 U.S.C. § 2339C |

b. Dates of, the participants in, and a description of the facts surrounding the predicate acts:

| **DATES** | **PARTICIPANTS** | **FACTS** |
|---|---|---|
| mid-1990s to 9/11/2001 | AHIF and the AHIF Entities | AHIF and the AHIF Entities conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. AHIF and the AHIF Entities conspired to conduct or |

| | | |
|---|---|---|
| | | participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>Throughout this period, AHIF and the AHIF Entities conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attack. |
| Late 1990s to 9/11/2001 | AHIF and the AHIF Entities | AHIF and the AHIF Entities conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. AHIF and the AHIF Entities conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>AHIF and the AHIF Entities undertook the above named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which it was participating, Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, planned to and would |

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

| | | |
|---|---|---|
| | | commit an act of deadly aggression against the United States in the near future, using the resources and support supplied by AHIF and the AHIF Entities. |
| Mid-1990s to 9/11/2001 | AHIF and the AHIF Entities | AHIF and the AHIF Entities conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. AHIF and the AHIF Entities conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. <br><br> AHIF and the AHIF Entities agreed to form and associate with the Enterprise and agreed to commit more than two predicate acts, *i.e.,* multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

    c. Not applicable.

    d. No.

    e. No.

    f. The predicate acts form a pattern of racketeering in that they are repeated, ongoing, continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscate their support of Radical

X:\Clients\ONeill v. Saudi arabia\RICO Statements\Al Haramain Amended RICO Statement - v1.doc

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

    Muslim Terrorism and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

  g. The predicate act relates to each other (horizontal relatedness) as part of a common plan because each act of knowing and intentionally providing financial services and money laundering and tax evasion allowed certain of the defendants, specifically including AHIF and the AHIF Entities, to surreptiously provide funds to terrorist organizations, including al Qaida and/or Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attacks.

6.

  a. The enterprise ("Radical Muslim Terrorism") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

    *Alternatively*, the enterprise ("al Qaida") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076(RCC)), and others and is a collection of the persons, organizations, businesses, and nations associated in fact.

    *Alternatively*, the enterprise ("International Islamic Front for the Jihad Against Jews and Crusaders") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

  b. The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. In February, 1998, a declaration was issued, following the holding

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

of a terrorist summit, announcing the formation of the International Islamic Front for the Jihad Against Jews and Crusaders, the precursor of which was the Muslim Brotherhood and the Islamic Jihad.  The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein.  Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of:  (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi-American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel.  Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success.  Thus, although al Qaida, for example, had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. AHIF and the AHIF Entities fit neatly into this framework by raising funds for and providing funding to an otherwise providing material support for the members of the Enterprise who engaged in the Attack.

The Enterprise is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations.  These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons).  These transactions are accomplished through, *inter alia*, the use of wire transfers and electronic transmissions.

On information and belief, at the time of the September 11th attack, the al Qaida's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars.  The Enterprise relies upon a global network of banks and financial institutions, including AHIF and AHIF Entities, and illegal activity to generate material support to continue its terrorist operations.

   c.  No.

   d.  AHIF and the AHIF Entities are associated with the alleged enterprise.

   e.  AHIF and the AHIF Entities are members of the Enterprise, and are separate and distinct from the Enterprise.

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

    f. AHIF and the AHIF Entities intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by AHIF and the AHIF Entities are separate from the existence of Radical Muslim Terrorism, and/or the Al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by AHIF and the AHIF Entities funds that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are funded by the racketeering activities described herein.

9. The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by AHIF and the AHIF Entities, relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. The enterprise and the racketeering activities conducted, engaged in, and/or transacted business within and in the United States and elsewhere, and utilized, possessed, used, transferred, owned, leased, operated, and/or controlled assets in the United States and elsewhere. Furthermore, activities and actions of the Enterprise affect interstate commerce as demonstrated by the Attack itself, which caused damage to the United States economy and property and businesses situate therein. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, *8 (stating that the Attack "severely damaged the United States. economy").

11. Not applicable.

12. Not applicable to this defendant.

13.

    a. Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders "employs" certain individuals, only a few of whose identities are known, including defendant Osama Bin Ladin. AHIF and AHIF Entities is associated with the Enterprise.

    b. The Enterprise, Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and the Crusaders, is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any other additional Complaint filed in this action, well as the defendants in *Estate*

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

>of *John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076 (RCC)), among others, and is a collection of the persons, organizations, businesses, and nations associated in fact. The liable persons are the enterprise and that which makes up the Enterprise.

14. The history of the conspiracy behind Radical Muslim Terrorism, or the al Qaida, or the International Islamic Front for the Jihad Against Jews and Crusaders could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including AHIF and the AHIF Entities, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *Zakat*, the mandatory charitable contributions required of all Muslims. Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders also collected money from employees of corrupted charities. The money raised from these various sources (the "Funds"), including AHIF and AHIF Entities, were used by the Enterprise to accomplish its goals, with the knowledge and awareness of AHIF and AHIF Entities, of both those goals and the uses to which the Funds were put.

    The Funds were used to organize and conduct a complex international terrorist operation intended to inflict catastrophic harm on the United States. The Funds enabled the Enterprise to identify, recruit, groom and train leaders who were able to evaluate, approve and supervise the planning and direction of the Enterprise. The Funds also provided communications sufficient system that gathered information on and formed assessments of the Enterprise's enemies' strengths and weaknesses.

    The Funds enabled the Enterprise to establish a personnel system by which, among other things, it recruited and trained persons to inflict the harm (the "Operatives") and provided planning and direction to the Operatives. The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

    The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like AHIF and AHIF

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

>  Entities. Indeed, the Enterprise would not have been successful without enthusiastic participation of all of the conspirators, including AHIF and AHIF Entities. In order to identify nineteen individuals willing, able and competent to carry out the Attack, Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by AHIF and AHIF Entities. AHIF and AHIF Entities, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. AHIF and AHIF Entities conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. AHIF and AHIF Entities conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. AHIF and AHIF Entities also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. The injuries to business or property suffered by the O'Neill Plaintiff's resulting from the September 11th attack include economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households. Additionally, the Attack itself was intended to destroy the leading symbol of the United States' leadership in world trade – The World Trade Center - and as such, affected the O'Neill Plaintiff's jobs, businesses, and livelihoods.

16. Plaintiffs' damages – the loss of life and the damages to business and property related thereto that resulted from the actions of the defendants and their co-conspirators, are a direct causal relationship to the violation of the RICO statute, and are not a derivative claim of damage to a third party. The Plaintiffs, both named and as a class, as described in the complaint, as amended, were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," (that is, terrorism, the culmination of which was the Attack).

17. Each defendant is jointly and severally liable for all damages sustained by each plaintiff, as set forth in Exhibit "B", subject to the description of victims set forth in paragraph 4 hereof, for the loss of life, and the economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and/or intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

Plaintiffs'/Decedents' household. The damages for the plaintiffs' collectively are to be determined at trial, and are in excess of $10,000,000,000.00 prior to trebling, punitive damages, interest, legal fees, and the costs of this suit.

18.

| | |
|---|---|
| **Count One** | Torture Victim Protection Act, 28 U.S.C. § 1350 |
| **Count Two** | Alien Tort Claims Act 28 U.S.C. §1350 |
| **Count Nine** | Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, *et. seq.* |
| **Count Ten** | RICO, 18 U.S.C. § 1962(b),1962(c), 1962(d) |
| **Count Twelve** | Foreign State Agencies and Instrumentalities, 28 U.S.C.§ 1605(a)(7), 1606 |

19.

| | |
|---|---|
| **Count Three** | Wrongful Death |
| **Count Four** | Survival |
| **Count Five** | Negligent and Intentional Infliction or Emotional Distress |
| **Count Six** | Conspiracy |
| **Count Seven** | Aiding and Abetting |
| **Count Eight** | Negligence |
| **Count Eleven** | Punitive Damages |

20. Not applicable

X:\Clients\ONeill v. Saudi arabia\RICO Statements\Al Haramain Amended RICO Statement - v1.doc

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

Date: July 28, 2005

                      LAW OFFICES OF JERRY S. GOLDMAN
                          & ASSOCIATES, P.C.

BY:_____
     GINA M. MAC NEILL, ESQUIRE
     (GM 0581)

BY:_____
     JERRY S. GOLDMAN,  ESQUIRE
     (JG 8445)

*Attorneys for the Plaintiffs*

111 Broadway, 13th Floor
New York, N.Y. 10006
212.242.2232

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

**EXHIBIT "A"**

**RICO STATEMENT**

**QUESTION # 2**

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Al-Haramain ("AHIF") and the AHIF Entities | AHIF and the AHIF Entities are private charitable organizations that are supposed to provide a variety of humanitarian services to Muslims worldwide.  It has a vast network of offices and representatives spanning fifty nations.  AHIF and the AHIF Entities are a charity front for al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and Osama bin Laden and provides direct material support to al Qaida.  AHIF and the AHIF Entities use their humanitarian mission to disguise its financing of terrorist operations.  

AHIF and the AHIF Entities have long provided financial services and other forms of material support to terrorist organizations, including al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders.  Indeed, AHIF and the AHIF Entities have long acted as a fully integrated component of Al Qaida's world wide logistical and financial support infrastructure, and provided material support and resources to al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and other affiliated foreign terrorist organizations.

AHIF and the AHIF Entities have offices all over the world from which it coordinates its support for the Enterprise, Radical Muslim terrorism, and/or the al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and an interlocking management by which it effectuates that support.  For example, Aqeel Adbulaziz Al-Aqil, a Saudi, is Secretary General of the Saudi | 18 U.S.C. §§ 1962 (b), 1962(c), 1962(d) |

Page 15 of 18

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

|  | AHIF located in Riyadh and president of the Oregon AHIF. Mansour Al-Kadi, a Saudi, is deputy director of the Oregon AHIF. |  |
|---|---|---|
|  | AHIF and the AHIF Entities have advertised their connection to al Qaida. AHIF's website used to have a direct link to the al Qaida site about the Chechnyian operations (qoqaz.com). The website is part of the al Qaida propaganda organization, Azzam Publications group of websites, including qoqaz.com, qoqaz.net, and azzam.com (among others). |  |
|  | Numerous branches of AHIF, including Afganistan, Albania, Bangladesh, Bosnia, Ethiopia, Herzegovina, Indonesia, Kenya, the Netherlands, Tanzania and Pakistan, have been designated as sponsors and supporters of al Qaida and affiliated Foreign Terrorist Organizations ("FTOs"). The United States government has designated two al-Haramain branches, in Bosnia and Somalia, as terrorist entities and has frozen the assets of both because they are clearly linked to terrorist financing. Both branches are controlled, including their funding, management, and direction, by the central Al-Haramain headquarters in Riyadh, Saudi Arabia. Additionally, AHIF was banned from Kenya after the 1998 U.S. Embassy bombings. |  |
|  | When viewed as single entity, AHIF is on of the principle Islamic organizations providing support for the al Qaida network, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, and promoting militant Islamic doctrine worldwide. Under the leadership of Aqeel Abdulaziz Al-Aqil, the founder and long-time leader of AHIF field offices and AHIF representatives operating throughout Africa, Asia, Europe and North America provided financial and material support to the al Qaida network. |  |
|  | Also under Aqeel Abdulaziz Al Aqil's leadership, AHIF and the AHIF Entities implemented their tasks through their offices and representatives, which span more than fifty countries around the world. AHIF maintained nine general committees and several other "active |  |

X:\Clients\ONeill v. Saudi arabia\RICO Statements\Al Haramain Amended RICO Statement - v1.doc

|  | Committees" that included the "Continuous Charity Committee, African Committee, Asian Committee, Da'wah and Sponsorship Committee, Masjid Committee, Seasonal Projects Committee, Doctor's Committee, European Committee, Internet and the American Committee, the Domestic Committee, Zakaat Committee and the Worldwide Revenue Promotion Committee." |  |
|---|---|---|
|  | In the Southeast Asia, AHIF served as primary source of al Qaida funding. |  |
|  | In Africa, AHIF was heavily involved in plotting terrorist attacks against Americans, including but not limited to the suicide bomber attacks against the U.S. Embassies in the Nairobi and Dar es Salaam in which 224 people were killed. |  |
|  | AHIF's Pakistan office provided funding and logistical support for the acquisition and delivery of Zenit missiles, Sting anti-aircraft missiles, and hand-held anti-tank weapons to al Qaida and al Qaida affiliated militants. |  |
|  | In Europe, AHIF sponsored al Qaida activity through the al Nur Mosque which served as a meeting place, recruitment center and base of operations for al Qaida within Germany.  At the direction of the Kingdom of Saudi Arabia, AHIF contributed in excess of $1 million to the Mosque, funding the purchase of the land for the Mosque as well as its construction. |  |
|  | AHIF also sponsored al Qaida operations in Chechnya and Kosovo through it participation in the Saudi Joint Relief Committee (the "SJRC"). The SJRC offices in Pristine, Kosovo served as a cover for al Qaida operatives.  Furthermore, between 1998 and 2000, the Kingdom of Saudi Arabia, through the SJRC, diverted more than $74 million to al Qaida members and loyalists affiliated with the SJRC bureaus. |  |
|  | In the United States, AHIF's Ashland, Oregon office committed violations of the Internal Revenue Code, Money Laundering Control Act and Bank Secrecy Act which funneled money to al Qaida. |  |
|  | AHIF and the AHIF Entities thereby have, for a |  |

**LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, PC**

|  | period of many years, provided critical financial and logistical support to al Qaida to support that terrorist organization's global jihad.  The September 11th Attack was a direct, intended and foreseeable product of AHIF's and the AHIF Entities' participation in al Qaida's jihadist campaign. |  |
|---|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that the attached Amended RICO statement Applicable to Al-Haramain Islamic Foundation, Inc. a/k/a Al-Haramain Islamic Foundation a/k/a Islamic Al-Haramain ("AHIF") and the AHIF Entities was served on all parties by way of electronic filing in the Southern District of New York on July 28, 2005.

Dated: July 28, 2005

                                        BY:_____
                                             GINA M. MAC NEILL, ESQUIRE

X:\Clients\ONeill v. Saudi arabia\RICO Statements\Al Haramain Amended RICO Statement - v1.doc