UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case<br><br>**RICO STATEMENT**<br>**applicable to Saudi Binladin Group** |

*This document relates to:*   *Euro Brokers Inc., et al. vs. Al Baraka Investment and*
*Development Corporation, et al.*
04 CV 07279 (RCC)


**RICO STATEMENT**
**APPLICABLE TO SAUDI BINLADIN GROUP**

Based on information currently available, plaintiffs submit this RICO statement pursuant to the Case Management Order dated June 15, 2004 for Saudi Binladin Group.[1]

Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery has been obtained.

1. The unlawful conduct is in violation of 18 U.S.C. § 1962 (a), (c) and/or (d).

2. The name of the defendant to whom this RICO statement pertains to is the Saudi Binladin Group, and the alleged misconduct and the basis of liability for said defendant is indicated on the chart attached hereto as Exhibit "A".

3. Not applicable. All known wrongdoers are named as defendants in this action. Given the vastly complicated nature of the enterprise and conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified and after discovery is obtained.

---

[1] Plaintiffs herein incorporate all relevant factual statements made in their RICO Statement applicable to Bakr bin Laden, Tarek bin Laden, and Omar bin Laden.

4. The name of the plaintiffs and the manner in which each suffered losses to business or property is indicated on the chart attached hereto as Exhibit "B".

5. (a) list of predicate acts and specific statutes violated:

| | |
|---|---|
| conspiracy to commit murder | NY CLS Penal § 105.15; NY CLS Penal § 125.25(xi) |
| conspiracy to commit arson | NY CLS Penal § 105.15; NY CLS Penal § 150.15 |
| fraud with identification documents | 18 U.S.C. § 1028 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| financial institution fraud | 18 U.S.C. § 1344 |
| relating to unlawful procurement of citizenship or naturalization papers | 18 U.S.C. § 1425 |
| relating to the unlawful reproduction of naturalization or citizenship papers | 18 U.S.C. § 1426 |
| relating to the sale of naturalization or citizenship papers | 18 U.S.C. § 1427 |
| obstruction of justice | 18 U.S.C. § 1503 |
| obstruction of a criminal investigation | 18 U.S.C. § 1510 |
| obstruction of state or local law enforcement | 18 U.S.C. § 1511 |
| Travel Act | 18 U.S.C. § 1952 |
| fraud or misuse of visa permits or other documents | 18 U.S.C. § 1546 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| defrauding the US Government | 18 U.S.C. § 371 |
| filing false or materially false tax returns | 26 U.S.C. § 7206(1), (2) |
| engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |

(b) dates of, the participants in, and a description of the facts surrounding the predicate acts

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| early 1990s to 9/11/2001 | Saudi Binladin Group | The Saudi Binladin Group conspired to support terrorism and obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism and al Qaeda, which conspiracy culminated in the September 11, 2001 Attacks; |
| early 1990s to 9/11/2001 | Saudi Binladin Group | The Saudi Binladin Group used banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise. |
| early 1990s to 9/11/2001 | Saudi Binladin Group | The Saudi Binladin Group undertook the above-named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which they were participating, Radical Muslim Terrorism and al Qaeda, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied; |
| early 1990s to 9/11/2001 | Saudi Binladin Group | The Saudi Binladin Group agreed to form and associate themselves with the Enterprise and agreed to commit more than two predicate acts, *i.e.*, multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

(c) See Exhibit "A".

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business for the Saudi Binladin Group consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to

        conduit money to terrorists, and yet obfuscates their support of Radical Muslim Terrorism and al Qaeda.  Such money laundering, filing of false tax returns, and tax evasion were all in furtherance of a conspiracy to commit murder and arson which culminated in the September 11, 2001 Attacks.

    (g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of money laundering allowed the Saudi Binladin Group to surreptitiously provide funds to terrorist organizations, including al Qaeda.  This conspiracy culminated in the September 11, 2001 Attacks.

6.     (a) The enterprise (the "Enterprise" or "Radical Muslim Terrorism and al Qaeda") is comprised of the defendants named in the Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact and purpose.

    (b) The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army.  The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein.  Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of:  (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Arab regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel.  Radical Muslim Terrorism and al Qaeda does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature, its flexible, even nimble operations, and thus its success. Therefore, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. The Saudi Binladin Group fits neatly into this framework by facilitating the transfer of money for and providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack by engaging in a course of conduct that included money laundering and tax evasion.

    (c) No.

    (d) The Saudi Binladin Group is associated with the Enterprise.

    (e) Saudi Binladin Group is a member of the Enterprise, and is separate and distinct from the Enterprise.

      (f) The Saudi Binladin Group intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the September 11, 2001 Attacks.

7. The pattern of racketeering activity conducted by the Saudi Binladin Group is separate from the existence of al Qaeda and Radical Muslim Terrorism and al Qaeda, but was a necessary component to the September 11, 2001 Attacks.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by the Saudi Binladin Group furthers and facilitates that international terrorist and criminal activity, which culminated in the September 11, 2001 Attacks. The usual and daily activities of the Enterprise includes recruitment, indoctrination, financing, material support and the provisioning and operation of al Qaeda training camps, all of which activities are funded or sponsored by the racketeering activities described herein.

9. The Enterprise benefits by spreading its radical and illegitimate ideology, by suppressing other forms of Islam, and through the gratification of destroying all perceived enemies.

10. The Enterprise and the racketeering activities conducted by the Saudi Binladin Group rely heavily on the American interstate system of commerce for banking, financing, supplies, communications, and virtually all essential commercial functions, and in that manner affects interstate commerce.  Additionally, the September 11, 2001 Attacks adversely affected interstate commerce.  See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13. Radical Muslim Terrorism and al Qaeda "employ" certain individuals, only a few of whose identities are known, including defendant Osama bin Ladin and his al Qaeda network.

14. The history of the conspiracy behind Radical Muslim Terrorism and al Qaeda could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered.  After being fostered by the Republic of the Sudan until May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including but not limited to the Saudi Binladin Group, who laundered funds from Islamic charities and financial institutions, including the so-called charities and corporations, and facilitated the transfer of money through witting and unwitting institutions. (The 'witting' are named herein.)  They also relied heavily on certain imams at mosques who were willing to divert the zakat, the mandatory charitable contributions required of Muslims.  Al Qaeda also collected money from employees of corrupted charities and financial institutions.

       The funds raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

       The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan in preparation for the September 11, 2001 Attacks. None of this would have been possible without the funds and sponsorship supplied by participants and conspirators including the Saudi Binladin Group. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including the Saudi Binladin Group. In order to identify individuals willing, able and trained to carry out the September 11, 2001 Attacks, al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by the Saudi Binladin Group. The Saudi Binladin Group, with knowledge and intent, agreed to the overall objectives of the enterprise or conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. The Saudi Binladin Group also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the intended targets, plaintiffs have been severely harmed in their business and property through the losses that they have suffered or will suffer.

16. Plaintiffs' damages -- the loss of business and property damage that resulted from defendants' actions -- are direct in that they are not derivative of damage to a third party. The plaintiffs were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," i.e., international terrorism, the culmination of which was the September 11, 2001 Attacks.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff, as set forth in Exhibit "B".

18.

| II | Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, et seq. |
|---|---|
| III | RICO, 18 U.S.C. § 1962(a) |
| IV | RICO, 18 U.S.C. § 1962(c) |
| V | RICO, 18 U.S.C. § 1962(d) |
| VI | Violation of International Law |

19. pendent common law claims:

| I | Trespass |
|---|---|
| VII | Conspiracy |
| VIII | Aiding and Abetting |
| IX | Punitive Damages |

20. Not applicable.