UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:
: 03 MD 1570 (RCC)
In re Terrorist Attacks on September 11, 2001    : ECF Case
:
:
------------------------------------x

This document relates to: *Continental Casualty Co. et al. v. Al Qaeda Islamic Army*, 04-CV-5970 (RCC)


### RICO STATEMENT APPLICABLE TO DEFENDANT
### ABDUL RAHMAN KHALID BIN MAHFOUZ


Based on information currently available, plaintiffs submit this RICO Statement with respect to their claims against defendant Abdul Rahman Khalid bin Mahfouz. Given the complicated nature of the wrongdoing that led to the terrorist attack of September 11, 2001 (the "Attack"), much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

2.      This RICO Statement pertains to defendant Abdul Rahman Khalid bin Mahfouz and the alleged misconduct and the basis for liability for said defendant is indicated on the chart attached hereto as Exhibit A.

3.      All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these other defendants. Given the complicated nature of the wrongdoing that led to the Attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.      The victims are Continental Casualty Company, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania. The plaintiffs are all insurance companies which insured properties and businesses which was located at or near the World Trade Center premises in New York City and were damaged as a result of the Attack. Plaintiffs' insureds suffered damages to their property interests and damages to their ability to conduct their business. Plaintiffs, pursuant to policies that were issued to the insureds, made payments to their insureds and as a result became subrogated to the insureds and are now permitted to bring these claims for the damages to their insureds' property and business interests

as well as for the damage to their own business and property.

5. (a)

| conspiracy to commit murder | New York Penal Law § 105.15; New York Penal Law § 125.25(xi) |
|---|---|
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| providing material support of terrorism | 18 U.S.C. §§ 2332B, 2339A and 2339B |

(b) From the early 1990s to September 11, 2001, defendant Abdul Rahman Khalid bin Mahfouz conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaeda movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack.

Abdul Rahman Khalid Bin Mahfouz used banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise.

Abdul Rahman Khalid Bin Mahfouz undertook the above-named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which they were participating, Radical Muslim Terrorism and al Qaeda, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied.

Abdul Rahman Khalid bin Mahfouz agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts in furtherance of a pattern of racketeering activity in connection with the Enterprise.

(c) See Exhibit A.

Further, given the complicated nature of the wrongdoing by defendant Abdul Kahman Khalid bin Mahfouz and others that led to the events of September 11, 2001, additional information relating to the circumstances constituting the activities of defendant Abdul Rahman Khalid bin Mahfouz likely will be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f)  The predicate acts form a pattern of racketeering in that they are repeated, continuous, and are a part of the Enterprise's regular way of doing business.  From the early 1990s through September 11, 2001, defendant Abdul Rahman Khalid bin Mahfouz consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments.

(g)  The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each predicate allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaeda, which conspiracy culminated in the Attack.

6.

(a)   The enterprise (the "Enterprise") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b)   The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Defendant Abdul Rahman Khalid bin Mahfouz fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

(c)    No.

(d)    Defendant Abdul Rahman Khalid bin Mahfouz is associated with the Enterprise.

(e)    Defendant Abdul Rahman Khalid bin Mahfouz is a member of the Enterprise and is separate and distinct from the Enterprise.

(f) The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business. Defendant Abdul Rahman Khalid bin Mahfouz adopted the goal of furthering and/or facilitating the criminal activity of the Enterprise, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by defendant Abdul Rahman Khalid bin Mahfouz is separate from the existence of radical Muslim terrorism, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by defendant Abdul Rahman Khalid bin Mahfouz furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9. The Enterprise benefits by having sufficient resources available to spread its ideology, to suppress other forms of Islam, and to attack its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by defendant Abdul Rahman Khalid bin Mahfouz rely heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce, by imposing serious damage upon the national economy.

11. Not applicable.

12. Not applicable.

13. (a) The Enterprise "employs" certain individuals, only a few of whose identities are known, including defendant Bin Ladin.

(b) The liable "person" is defendant Abdul Rahman Khalid bin Mahfouz and the "enterprise" is the association-in-fact of the defendants.

14. The history of the conspiracy behind radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including defendant Abdul Rahman Khalid bin Mahfouz, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were

encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like defendant Abdul Rahman Khalid bin Mahfouz. Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including defendant Abdul Rahman Khalid bin Mahfouz. In order to identify nineteen individuals willing, able and competent to carry out the Attack, Al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by defendant Abdul Rahman Khalid bin Mahfouz. Defendant Abdul Rahman Khalid bin Mahfouz also, with knowledge and intent, agreed to the overall objectives of the conspiracy, agreed to commit at least two predicate acts and agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out.

16. Defendant Abdul Rahman Khalid bin Mahfouz's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, enabled the Enterprise to plan, orchestrate, and carry out the Attack that injured plaintiffs. Therefore, the conduct of defendant Abdul Rahman Khalid bin Mahfouz proximately resulted in the Attack. Plaintiffs suffered injury to their property by reason of the above conduct of defendant Abdul Rahman Khalid bin Mahfouz.

17. Each defendant is jointly and severally liable for the damages suffered by each plaintiff.

18. RICO, 18 U.S.C. §§ 1962(c), 1962(d).

19. Trespass.

20. Not applicable.