UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
In re Terrorist Attacks on September 11, 2001    :   03 MDL 1570 (RCC)
                                                           :
                                                           :   ECF Case
-----------------------------------------------------------x
This document relates to:

 *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, No. 02 Civ. 6977

 *Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, 03 Civ. 5738

 *Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03 Civ. 6978

 *Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, 03 Civ. 9849

 *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 04 Civ. 1923

 *Continental Casualty Co., et al. v. Al Qaeda, et al.*, No. 04 Civ. 5970

 *New York Marine & General Insurance Co. v. Al Qaida a/k/a Al Qaeda, et al.*, No. 04 Civ. 6105

 *Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al.*, No. 04 Civ. 7065

 *Euro Brokers Inc., et al., v. Al Baraka Invest. & Develop. Corp., et al.*, No. 04 Civ. 7279

 *World Trade Center Properties LLC, et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 04 Civ. 7280

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DUBAI ISLAMIC BANK'S MOTION TO DISMISS

ZUKERMAN GORE & BRANDEIS, LLP
John K. Crossman (JC 7387)
Frank C. Welzer (FW 7159)
875 Third Avenue
New York, New York  10022
(212) 223-6700
*Attorneys for Defendant*
*Dubai Islamic Bank*

**TABLE OF CONTENTS**

I.   PLAINTIFFS FAILED TO STATE A CLAIM AGAINST DIB ............................... 1

II.  PLAINTIFFS FAILED TO PROPERLY EFFECTUATE SERVICE........................ 4

III. PLAINTIFFS FAILED TO SHOW PERSONAL JURISDICTION .......................... 6

IV.  PLAINTIFFS FAILED TO TIMELY FILE INTENTIONAL TORT CLAIMS....... 8

V.   PLAINTIFFS FAILED TO SHOW A DUTY ........................................................... 10

VI.  CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Ackermann v. Doyle*, 43 F.Supp.2d 265 (E.D.N.Y. 1999) ................................................. 3

*Adams v. Target*, 2001 WL 987853 (S.D. Ind., 2001) ...................................................... 2

*Ascione v. Pfizer, Inc.*, 312 F.Supp.2d 572 (S.D.N.Y. 2004) ............................................ 6

*Coleman v. City of New York*, 1999 WL 1215570 (E.D.N.Y. Dec. 7, 1999) ..................... 2

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ........................................... 2

*Denny v. Barber*, 73 F.R.D. 6 (S.D.N.Y. 1977) ................................................................. 2

*Frank C. Gaides, Inc. v. Provident Life & Accident Insurance Co.*,
   1996 WL 497085 (E.D.N.Y. Aug. 26, 1996) .................................................................. 9

*Gap, Inc. v. Stone Int'l Trading, Inc.*,
   1994 WL 670020 (S.D.N.Y. Nov. 30, 1994) ................................................................. 6

*Grossman v. Citrus Associates of the New York Cotton Exchange, Inc.*,
   706 F.Supp. 221 (S.D.N.Y. 1989) .................................................................................. 2

*In re Cross Media Marketing Corp. Securities Litigation*,
   314 F.Supp. 2d 256 (S.D.N.Y. 2004) ............................................................................ 2

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*,
   2004 WL 487222 (S.D.N.Y. Mar. 12, 2004) ................................................................. 9

*In re Terrorist Attacks*, 349 F.Supp.2d 765 (S.D.N.Y. 2005) .................................. 1, 8, 10

*LNC Investments, Inc. v. Republic of Nicaragua*,
   115 F.Supp.2d 358 (S.D.N.Y. 2000) .............................................................................. 3

*Local 802, Associated Musicians v. Parker Meridien Hotel*,
   145 F.3d 85 (2d Cir. 1998) ............................................................................................. 9

*Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   709 F.Supp. 1279 (S.D.N.Y. 1989) ................................................................................ 6

*Morrissey v. Curran*, 482 F.Supp. 31 (S.D.N.Y. 1979) ..................................................... 4

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
   86 F.Supp. 2d 137 (E.D.N.Y. 2000) .............................................................................. 6

*Oechsner v. Connell L.P.*, 283 F.Supp. 2d 926 (S.D.N.Y. 2003) .......................................... 9

*Pieczenik v. Dolan*, 2003 WL 23095553 (S.D.N.Y. Dec. 30, 2003) .................................. 7

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) ..................................................... 3

*Tasini v. New York Times Co.*, 184 F.Supp.2d 350 (S.D.N.Y. 2002) ................................ 3

*Terra Resources v. Burgin*, 1986 WL 4064 (S.D.N.Y. 1986) ........................................... 4

*U.S.F.&G. v. Federal Reserve Bank*, 590 F.Supp. 486 (S.D.N.Y. 1984) ........................... 8

*Zurkowsky v. Government Development Bank*,
  52 B.R. 1007 (D.P.R. 1985) .................................................................................. 7

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................. 11

New York Civil Practice Law and Rules 215(3) .................................................... 8

**Statutes**

18 U.S.C. §§ 1951-1960 ......................................................................................... 6

18 U.S.C. §§ 1961-1968 ......................................................................................... 6

Defendant Dubai Islamic Bank ("DIB"), appearing specially, submits this reply memorandum of law in further support of DIB's Motion to Dismiss.

## I.

### PLAINTIFFS FAILED TO STATE A CLAIM AGAINST DIB

Plaintiffs' memorandum in opposition to the motion to dismiss (the "Opposition") does nothing more than repeat the same conclusory allegations which DIB dissected in its Motion to Dismiss. For instance, in their allegations regarding charities, Plaintiffs restate that an account holder at nonparty HSBC wired money to an account at DIB. (Opp. ("Opp."), p. 4). But Plaintiffs provide no response whatsoever to DIB's assertion that these allegations contain no facts from which one can infer that DIB knew of any charities' alleged support for terrorism. (Motion to Dismiss, p. 6). Furthermore, Plaintiffs have no response to the fact that both (a) the person they claim had an account at DIB, and (b) the alleged recipients of the transfers, were not on the list of Specially Designated Nationals and Blocked Persons published by the Office of Foreign Assets Control of the U.S. Department of the Treasury. (Motion to Dismiss, pp. 2-3). This is further reason why the Plaintiffs have not pled, and cannot plead in conformity with Rule 11 any specific facts upon which an inference of knowledge could be drawn.

Conclusory allegations of knowledge will not suffice to state a claim against any defendant in this case. *In re Terrorist Attacks*, 349 F.Supp.2d 765, 833, 835 (S.D.N.Y. 2005). Yet Plaintiffs continue to preach that "conclusory allegations regarding knowledge are perfectly acceptable." (Opp., pp. 14, 17). To plead conspiracy in one of the worst terrorist acts in history, Plaintiffs rely on general, vague and essentially meaningless conclusions that the bank "knowingly provide[d] financial services" and

1

unspecified "other forms of material support" to al Qaida. (Opp., p. 5). However, Second Circuit Courts have consistently dismissed complaints that were based on such conclusory allegations. *See, e.g., DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)(dismissing RICO claims while noting that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."); *Coleman v. City of New York*, 1999 WL 1215570, at *4 (E.D.N.Y. Dec. 7, 1999); *In re Cross Media Marketing Corp. Securities Litigation*, 314 F.Supp. 2d 256, 261 (S.D.N.Y. 2004); *Grossman v. Citrus Associates of the New York Cotton Exchange, Inc.*, 706 F.Supp. 221, 229 (S.D.N.Y. 1989).

Moreover, this Court held that "[u]nder a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act . . ." *In re Terrorist Attacks*, 349 F.Supp.2d at 829. Because Plaintiffs allege no circumstances supporting their entirely conclusory allegation of knowledge, they cannot allege DIB's knowing agreement to do anything. Notably, in none of the Complaints do Plaintiffs identify even one officer, director or employee of DIB.

Plaintiffs admit their pleading shortcomings by stating that DIB's purported "involvement" is "itself a question of fact to be determined through discovery" (Opp., p. 21), and by confessing that Plaintiffs hope to "substantiate" their allegations "through the discovery process." (Opp., p. 3). Under American jurisprudence, it is improper to file a Complaint then hope to find proof in discovery. "The purpose of discovery is to sharpen the issues in a case for trial, not to gather information to support a complaint." *Adams v. Target*, 2001 WL 987853, *2 (S.D. Ind., 2001)(citing cases); *see also Denny v. Barber*, 73 F.R.D. 6, 10 (S.D.N.Y. 1977). A complaint should serve to seek redress for a wrong,

2

not to find one. *Segal v. Gordon*, 467 F.2d 602, 607-608 (2d Cir. 1972). These principles should be applied strictly here, given that the Complaints charge complicity in horrendous acts of terrorism.

No weight should be given to the *New York Times*, *Los Angeles Times*, the *NATO Parliamentary Assembly General Report*, and the *FATF GAFI Forty Recommendations* article attached for the first time to the Affirmation of Sean Carter, dated July 26, 2005, in Opposition to DIB's Motion to Dismiss. It is improper to consider any of this extraneous material in the context of a motion to dismiss for failure to state a claim. *Ackermann v. Doyle*, 43 F.Supp.2d 265, 267 (E.D.N.Y. 1999). Moreover:

> articles and newspaper clippings do not rise to the level of competent evidence. Newspaper articles are simply not evidence of anything other than the fact they were published; they are not admissible to prove the truth of the matter asserted therein.

*Tasini v. New York Times Co.*, 184 F.Supp.2d 350, 357, fn. 8 (S.D.N.Y. 2002)(citing cases). The articles are pure hearsay, and should not be considered. *LNC Investments, Inc. v. Republic of Nicaragua*, 115 F.Supp.2d 358, 366 (S.D.N.Y. 2000)(declining to consider inadmissible hearsay in news article). Furthermore, the Opposition, but not the Complaints, refers to unidentified persons' "use" of DIB's banking services to fund bombings in Africa (Opp., p. 3), and to support "Chechan fighters" (Opp., p. 4). Such hearsay allegations are entirely irrelevant, and are of no value to a determination of this lawsuit. Indeed, they appear to be a rather transparent attempt to tar DIB with the brush of scurrilous allegations in order to conceal the lack of any real allegations in this case.

In an attempt to minimize their pleading burden, Plaintiffs argue that they need not plead with particularity "in the absence of averments of fraud." (Opp., p. 11). However, in the same submission, Plaintiffs aver that "[t]he funds obtained through this

3

process necessarily represent the proceeds of unlawful activity, in that many well meaning contributors are defrauded" in support of their specious RICO claims. (Opp., p. 9). Plaintiffs also argue (where it is convenient) that Plaintiffs themselves were "defrauded." (Opp., p. 18). Plaintiffs cannot have it both ways; they have admitted their failure to plead any claim with particularity, and the claims should be dismissed. *Terra Resources v. Burgin*, 1986 WL 4064, at *6 (S.D.N.Y. 1986)("[i]t is well settled that a plaintiff may not use discovery to obtain facts he presently does not have in order to plead fraud with specificity" where, as here, plaintiff claimed fraud as a predicate act).

## II.

### PLAINTIFFS FAILED TO PROPERLY EFFECTUATE SERVICE

Plaintiffs contend that any deficiencies in service should be overlooked because DIB has filed its motion to dismiss. Taking Plaintiffs' argument to its logical conclusion, no defendant could ever move to dismiss based on improper service. As this Court stated in *Morrissey v. Curran*, 482 F.Supp. 31, 59 (S.D.N.Y. 1979),

> while [the defendants were]…undoubtedly aware that the action had been filed and they were named as defendants, such knowledge is not a substitute for service on them. If it were, no motion under Rule 12(b)(2)…could ever be granted, and the rule would be a nullity.

Plaintiffs also contend that since DIB filed its motion, it cannot argue that it has not received constitutionally sufficient notice. This argument conveniently overlooks the fact, clearly stated in the first sentence, on page 1 of DIB's Motion to Dismiss, that DIB is appearing "specially" herein for the limited purpose of moving to dismiss. The alternative of risking entry of default judgment, potentially in the hundreds of billions of dollars, with the resulting negative press -- no matter how vulnerable such a judgment would be to collateral attack due to improper service -- is not appealing to DIB, which is

4

a legitimate and respected bank eager to clear its name. Nor should this Court discourage parties from demonstrating the insufficiency of service early in a case, before the Court has wasted valuable resources on a case which must fail on technical grounds in the end.

Plaintiffs offer no cogent rebuttal to DIB's argument that service by publication was improper. Plaintiffs could have served DIB by a legally appropriate method, especially considering that DIB's contact information is readily available for anyone who chooses to look. However, instead of taking the steps to properly serve DIB, Plaintiffs sought an order from this Court without ever explaining why service on this defendant, DIB, could possibly have been impracticable.[1] Through such sleight of hand, Plaintiffs obtained an order authorizing service through publication in newspapers that DIB was not likely to see, and did not see. Plaintiffs' assertion that the *Al Quds* paper has been used by terrorists is of no import because DIB is not a terrorist, and even Plaintiffs' attorneys have not alleged that it is. Plaintiffs' claim that publication in one Arabic newspaper, published in London, is fair notice to a bank in Dubai (Opp., p. 7, fn. 7) is not only both bigoted and unreasonable, it demonstrates a profound ignorance of basic geography.

Finally, if the Court, as Plaintiffs contend, "recognized that publication of the notice in *Al-Quds* was reasonably calculated to apprise defendants" of the lawsuit (*Id.*), the Court could have only done so based upon a misrepresentation that other forms of service were impracticable. Plaintiffs have not disputed that they did not even try to serve DIB before seeking an order approving service by publication (Motion to Dismiss, p. 4). Their silence speaks volumes about the impropriety of the Order as to DIB.

---

[1] Plaintiffs did not even comply with the publication Order, since it appears they failed to timely post any complaint on a website www.sept11terrorlitigation.com. Instead, the complaints were posted on a different, albeit similar-sounding, website (www.september11terrorlitigation.com).

5

## III.

## PLAINTIFFS FAILED TO SHOW PERSONAL JURISDICTION

Plaintiffs claim personal jurisdiction over DIB because they included DIB in their specious RICO claims, which Plaintiffs contend arise from "money laundering activities on behalf of al Qaida." (Opp., p. 8).[2] This argument fails with Plaintiffs' RICO theory.

Initially, Plaintiffs assert jurisdiction under the racketeering statutes, 18 U.S.C. §§ 1951-1960 ("Chapter 95"). (Opp., p. 9). However, Plaintiffs have not alleged claims for racketeering under Chapter 95. They allege claims under the RICO statutes, 18 U.S.C. §§ 1961-1968 ("Chapter 96"). Furthermore, there is no provision in Chapter 96 for service on a foreign RICO defendant outside of the United States, and this Court has held that a foreign RICO defendant must be served within the United States. *Gap, Inc. v. Stone Int'l Trading, Inc.*, 1994 WL 670020, at *6 (S.D.N.Y. Nov. 30, 1994)(holding that "a foreign party against whom a RICO claim is asserted must be served with process in this country."); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279, 1285 (S.D.N.Y. 1989). *See also National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 86 F.Supp. 2d 137, 140 (E.D.N.Y. 2000). DIB is a foreign company whom Plaintiffs claim to have served by publication outside of the United States, and such service was ineffective. Consequently, Plaintiffs cannot rely on the jurisdictional provision in the racketeering statutes, Chapter 95, to confer jurisdiction over DIB.

---

[2] Plaintiffs also assert without explanation jurisdiction under New York's Long Arm Statute, but DIB has already demonstrated why that statute is insufficient to confer jurisdiction over it. (Motion to Dismiss, pp. 20-21). Plaintiffs purport to incorporate in their Opposition by reference briefs they have not served on DIB (which were filed months before they even published notice of this lawsuit). (Opp., p. 8, fn. 8). This is improper. *Ascione v. Pfizer, Inc.*, 312 F.Supp.2d 572, 579, fn. 6 (S.D.N.Y. 2004)("Incorporation is a pointless imposition on the Court's time and it also may . . . thwart the Court's page-limitation rules.").

6

Even if the jurisdictional devices of the Chapter 95 racketeering statutes somehow applied to Plaintiffs' Chapter 96 RICO claims, such devices would still be unavailable here because Plaintiffs' invalid RICO claims cannot be the basis for jurisdiction. The statutory definition of "money laundering" cited by Plaintiffs belies their contention. Plaintiffs assert that a bank is "guilty of money laundering" if it: (a) "conducts . . . a financial transaction," (b) "knowing that the property involved in that financial transaction represents the proceeds of some form of unlawful activity," (c) "with the intent to promote the carrying on of specified unlawful activity." (Opp., p. 9, fn. 9 ("footnote 9")). Plaintiffs explain for the first time in footnote 9 that the proceeds are from an unlawful activity of "defraud[ing]" "well meaning contributors" to "ostensible charities." *Id.* However, there is no allegation in any Complaint that the mail, wires or any other means were used to "defraud" contributors. Similarly, Plaintiffs have not pled any facts to support any conclusion that DIB knew about the scheme to defraud contributors to charities alleged in footnote 9. And this is of course yet another example of Plaintiffs' relying upon insufficient fraud allegations without meeting their pleading burden. Plaintiffs offer only conclusions without support; and such hollow allegations do not confer RICO jurisdiction over DIB. *Pieczenik v. Dolan*, 2003 WL 23095553, at *4 (S.D.N.Y. Dec. 30, 2003)(in the absence of any allegations of fact relating to an alleged conspiracy, personal jurisdiction was lacking as to RICO claims); *Zurkowsky v. Government Development Bank*, 52 B.R. 1007, 1012 (D.P.R. 1985)(where plaintiff failed to adequately plead violations, jurisdiction could not be predicated upon RICO statute).

Plaintiffs fail to respond to DIB's extensive argument that it does not have sufficient minimum contacts with either New York or the United States as a whole, and

thus it would be unjust for DIB to be haled into this court to defend itself. (Motion to Dismiss, pp. 21-23; Declaration of Obaid Al Shamsi). Instead, Plaintiffs merely contend generally that DIB "purposefully directed its activities" toward the United States. Plaintiffs' conclusory allegations are insufficient to confer jurisdiction or to state a claim.

## IV.

### PLAINTIFFS FAILED TO TIMELY FILE INTENTIONAL TORT CLAIMS

This Court has already stated, applying New York law, that the statute of limitations for intentional tort claims is one year. *In re Terrorist Attacks*, 349 F.Supp.2d at 829, citing CPLR 215(3). Plaintiffs attempt to argue that their intentional tort claims are "subsumed" by their claims under the Anti-Terrorism Act ("ATA"), and thus federal common law should apply. However, there is no indication in the statute or legislative history that Congress intended the ATA to subsume common law. Plaintiffs' cite to the Congressional Record is misleading; while Congress may have intended to "accord[] victims of terrorism the remedies of American tort law," there is no indication that Congress sought to transform intentional tort claims rooted in state law into federal common law claims. Moreover, all of the cases cited by Plaintiffs involve statutes other than the ATA, so that purported authority is inapposite to the claims before this Court.

Significantly, Plaintiffs did not assert in their Complaints that their intentional tort claims were brought pursuant to federal common law; that argument only materialized in Plaintiffs' Opposition. In addition, Plaintiffs do not suggest an alternative statute of limitations, largely because no statute of limitations governs federal common law claims. In the absence of a federal statute of limitations, the courts invariably look to the rules of the forum state. *U.S.F.&G. v. Federal Reserve Bank*, 590 F.Supp. 486, 501 (S.D.N.Y.

1984)("Ordinarily when Congress has established no clear statute of limitations, that of local law is adopted."); *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Frank C. Gaides, Inc. v. Provident Life & Accident Insurance Co.*, 1996 WL 497085, *5 (E.D.N.Y. Aug. 26, 1996). In this case, that would render New York's one year statute of limitations applicable, thus barring Plaintiffs' causes of action for assault and battery and intentional infliction of emotional distress.

Additionally, there are no grounds for equitable tolling of the statute of limitations. Plaintiffs assert that the running of the statute should be tolled because their claims "arise from DIB's participation in the conspiracy to conduct terrorist attacks against the United States." (Opp., p. 21). Plaintiffs appear to assert that DIB engaged in some form of fraudulent concealment with respect to this alleged conspiracy, but again fail to move beyond mere conclusions, and provide no facts whatsoever to support this claim of fraud. Not only does this failure run afoul of this Court's prior rulings regarding conclusory allegations, it also violates the rule requiring that fraud be pled with particularity. Fed. R. Civ. P. 9(b). *See also In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 WL 487222, at *3 (S.D.N.Y. Mar. 12, 2004)(in the context of equitable tolling of statutes of limitation, "allegations of fraudulent concealment are subject to the particular pleading requirements set forth in Fed. R. Civ. P. 9(b)."); *Oechsner v. Connell L.P.*, 283 F.Supp. 2d 926, 933 (S.D.N.Y. 2003)("Generically pleading unspecified false statements…does not satisfy the time, place, speaker and content requirements necessary for allegations of fraudulent concealment pursuant to Rule 9(b).").

## V.

## PLAINTIFFS FAILED TO SHOW A DUTY

Plaintiffs' negligence-based claims must be dismissed because, as a matter of law, DIB owed no duty of care to Plaintiffs. As this Court has recognized, banks owe no general duty of care to non customers. *In re Terrorist Attacks*, 349 F.Supp.2d at 830-831. Plaintiffs attempt to impose a nebulous duty owed by DIB as "a member of the global banking system." Predictably, Plaintiffs offer no legal support for this theory, nor could they, as this phantom "duty" is not recognized anywhere in American jurisprudence. Plaintiffs' efforts to saddle DIB with this purportedly "universally recognized" obligation must fail, along with all of Plaintiffs' negligence-based claims.

## VI.

## CONCLUSION

For the reasons set forth above and in the motion to dismiss, defendant Dubai Islamic Bank respectfully requests that the Court grant its motion to dismiss with prejudice.

Dated: New York, New York
August 25, 2005

Respectfully submitted,

ZUKERMAN GORE & BRANDEIS, LLP

By:_____/s/ John K. Crossman_____
John K. Crossman (JC 7387)
Frank C. Welzer (FW 7159)
875 Third Avenue
New York, New York  10022
(212) 223-6700

*Attorneys for Defendant*
*Dubai Islamic Bank*