UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                      :
                      :    03 MD 1570 (RCC)
In re Terrorist Attacks on September 11, 2001  :    ECF Case
                      :
                      :
---------------------------------------------------------------x

This document relates to:  *Continental Casualty Co. et al. v. Al Qaeda Islamic Army*, 04-CV-5970 (RCC)

## RICO STATEMENT APPLICABLE TO DEFENDANT
## <u>SHEIKH ABDUL AZIZ AL IBRAHIM</u>

Based on information currently available, plaintiffs submit this RICO Statement with respect to their claims against defendant Sheikh Abdul Aziz Al Ibrahim.  Given the complicated nature of the wrongdoing that led to the terrorist attack of September 11, 2001 (the "Attack"), much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned and verified through discovery and otherwise.

1.      The unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

2.      This RICO Statement pertains to defendant Sheikh Abdul Aziz Al Ibrahim and the alleged misconduct and the basis for liability for said defendant is indicated on the chart attached hereto as Exhibit A.

3.      All known wrongdoers are named as defendants in this action. Plaintiffs separately will file RICO Statements with respect to the misconduct of these other defendants. Given the complicated nature of the wrongdoing that led to the Attack, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

4.      The victims are Continental Casualty Company, Transcontinental Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania.  The plaintiffs are all insurance companies which insured properties and businesses which was located at or near the World Trade Center premises in New York City and were damaged as a result of the Attack.  Plaintiffs' insureds suffered damages to their property interests and damages to their ability to conduct their business.  Plaintiffs, pursuant to policies that were issued to the insureds, made payments to their insureds and as a result became subrogated to the insureds and are now permitted to bring these claims for the damages to their insureds' property and business interests

as well as for the damage to their own business and property.

5.      (a)

| conspiracy to commit murder | New York Penal Law § 105.15; New York Penal Law § 125.25(xi) |
|---|---|
| Travel Act | 18 U.S.C. § 1952 |
| illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| money laundering | 18 U.S.C. § 1957 |
| mail fraud | 18 U.S.C. § 1341 |
| wire fraud | 18 U.S.C. § 1343 |
| providing material support of terrorism | 18 U.S.C. §§ 2332B, 2339A and 2339B |

(b)  From the early 1990s to September 11, 2001, defendant Sheikh Abdul Aziz Al Ibrahim conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaeda movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack.

Sheikh Abdul Aziz Al Ibrahim used banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise.

Sheikh Abdul Aziz Al Ibrahim undertook the above-named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which they were participating, Radical Muslim Terrorism and al Qaeda, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support it supplied.

Sheikh Abdul Aziz Al Ibrahim agreed to form and associate itself with the Enterprise and agreed to commit more than two predicate acts in furtherance of a pattern of racketeering activity in connection with the Enterprise.

(c) See Exhibit A.

Further, given the complicated nature of the wrongdoing by defendant Sheikh Abdul Aziz Al Ibrahim and others that led to the events of September 11, 2001, additional information relating to the circumstances constituting the activities of defendant Sheikh Abdul Aziz Al Ibrahim likely will be revealed through discovery. Plaintiffs therefore reserve the right to amend this RICO Statement as information is learned through discovery and otherwise.

(d) No.

(e) No.

(f)  The predicate acts form a pattern of racketeering in that they are repeated, continuous, and are a part of the Enterprise's regular way of doing business.  From the early 1990s through September 11, 2001, defendant Sheikh Abdul Aziz Al Ibrahim consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments.

(g)  The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each predicate allowed certain of the defendants to surreptitiously provide funds to terrorist organizations, including al Qaeda, which conspiracy culminated in the Attack.

6.

(a)     The enterprise (the "Enterprise") is comprised of the defendants named in the First Amended Complaint, and is a collection of persons, organizations, businesses, and nations associated in fact.

(b)     The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaeda." Al Qaeda was intended to serve as a foundation upon which to build a global Islamic army. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaeda had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Defendant Sheikh Abdul Aziz Al Ibrahim fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

(c)     No.

(d)     Defendant Sheikh Abdul Aziz Al Ibrahim is associated with the Enterprise.

(e)     Defendant Sheikh Abdul Aziz Al Ibrahim is a member of the Enterprise and is separate and distinct from the Enterprise.

(f)      The predicate acts form a pattern of racketeering in that they are continuous, and are a part of the Enterprise's regular way of doing business.  Defendant Sheikh Abdul Aziz Al Ibrahim adopted the goal of furthering and/or facilitating the criminal activity of the Enterprise, which criminal activity culminated in the Attack.

7.      The pattern of racketeering activity conducted by defendant Sheikh Abdul Aziz Al Ibrahim is separate from the existence of radical Muslim terrorism, but was a necessary component to the Attack.

8.      The Enterprise conducts terrorism all over the world; the racketeering activity conducted by defendant Sheikh Abdul Aziz Al Ibrahim furthers and facilitates that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise includes recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are furthered and facilitated by the racketeering activities described herein.

9.      The Enterprise benefits by having sufficient resources available to spread its ideology, to suppress other forms of Islam, and to attack its perceived enemies.

10.      The Enterprise, and the racketeering activities conducted by defendant Sheikh Abdul Aziz Al Ibrahim rely heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. Additionally, the Attack itself affected commerce, by imposing serious damage upon the national economy.

11.      Not applicable.

12.      Not applicable.

13.      (a)  The Enterprise "employs" certain individuals, only a few of whose identities are known, including defendant Bin Ladin.

(b)  The liable "person" is defendant Sheikh Abdul Aziz Al Ibrahim and the "enterprise" is the association-in-fact of the defendants.

14.      The history of the conspiracy behind radical Muslim terrorism could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including defendant Sheikh Abdul Aziz Al Ibrahim, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors.

The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed great emphasis on ideological and religious indoctrination. All trainees and other personnel were

63812

4

encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like defendant Sheikh Abdul Aziz Al Ibrahim.  Indeed, the Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including defendant Sheikh Abdul Aziz Al Ibrahim.  In order to identify nineteen individuals willing, able and competent to carry out the Attack, Al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by defendant Sheikh Abdul Aziz Al Ibrahim.  Defendant Sheikh Abdul Aziz Al Ibrahim also, with knowledge and intent, agreed to the overall objectives of the conspiracy, agreed to commit at least two predicate acts and agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15.    As the subrogees of both individual and property claimants, plaintiffs have been harmed in their business and property through the claims that they have paid out.

16.    Defendant Sheikh Abdul Aziz Al Ibrahim's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, enabled the Enterprise to plan, orchestrate, and carry out the Attack that injured plaintiffs.  Therefore, the conduct of defendant Sheikh Abdul Aziz Al Ibrahim proximately resulted in the Attack. Plaintiffs suffered injury to their property by reason of the above conduct of defendant Sheikh Abdul Aziz Al Ibrahim.

17.    Each defendant is jointly and severally liable for the damages suffered by each plaintiff.

18.    RICO, 18 U.S.C. §§ 1962(c), 1962(d).

19.    Trespass.

20.    Not applicable.

EXHIBIT "A"

RICO STATEMENT

QUESTION #2

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Sheikh Abdul Aziz Al Ibrahim | Sheikh Abdul Aziz Al Ibrahim is the brother-in-law of the late King Fahd of Saudi Arabia. (His sister, Jawhara, was the second wife of King Fahd.)<br><br>With another brother, Walid, along with Defendant Saleh Abdullah Kamel, Sheikh Abdul Aziz Al Ibrahim created in 1991 the leading Arab television satellite service, Middle East Broadcasting Corp, which purchased the press agency United Press International in 1992.<br><br>In 1990, he created the Ibrahim bin Abdul Aziz al Ibrahim Foundation which purports to support humanitarian assistance. Through his direction and control, he entrusted the organization with the responsibility of realizing his objective of using it as a covert vehicle for supporting the al Qaeda movement and other terrorists. The organization is present in Kenya, Bosnia, Chechnya, South America and South Asia.<br><br>The organization's branch in Nairobi, Kenya was associated with Osama bin Laden's network in the FBI's investigation into the attacks against the American embassies on August 7, 1998.<br><br>In September 1998, the Kenyan government canceled the registration of five Islamic relief agencies for allegedly supporting terrorism including defendants Al-Haramain Foundation, Help African People, the International Islamic Relief Organization, the Ibrahim bin Abdul Aziz al Ibrahim Foundation, and Mercy International Relief Agency. The authorities claimed that materials | 1962(a), 1962(c), 1962(d) |

for the bomb were smuggled in as relief aid with the help of Islamic relief agencies.

The decision was announced by the Kenyan government's NGO coordinator who declared:

> Our investigations reveal that the operations of these organizations are inconsistent with the reasons for which they were registered ... These organizations are supposed to work for the welfare of Kenyans, but are instead endangering Kenyans' lives ... They had been found to be working against the interests of Kenyans in terms of security.

After several organizations appealed this decision, Kenya's High Court has blocked the deregistration of four of the five non-governmental organizations. The International Islamic Relief Organization, Moslem World League, Al-Haramain Foundation, and Mercy International Relief Agency can still operate pending an appeal. Only the Ibrahim bin Abdul Aziz al Ibrahim Foundation did not seek an appeal.

In a study paper dated October 1999, called "The New Azerbaijan Hub: How Islamist operations are targeting Russia, Armenia and Nagorno-Karabagh", Yossef Bodansky, Senior Editor of Defense and Foreign Affairs' Strategic Policy refers to the Ibrahim bin Abdul Aziz al Ibrahim Foundation as one of those which provided help to Osama bin Laden: "The key Islamist facilities are concealed as charity and educational organizations affiliated with the web used by bin Laden's networks. Moreover, the headquarters of these organizations are stuffed with Arab "teachers" and "managers" from the ranks of such organizations as the International Muslim Brotherhood, the Islamic Salvation Front, several branches of Islamic Jihad, and the National Islamic Front of Sudan. The key organizations are ... Al Ibrahim

Foundation. Very little is known about this Baku-based charity except that its Arab principals have huge amounts of cash in hard currency. They are involved in acquisition of real estate among other "educational" projects."

Other reports suggest that Ibrahim bin Abdul Aziz al Ibrahim Foundation was funding the Islamic Movement of Uzbekistan (or "IMU"), an affiliate of al Qaeda, whose leaders met Osama bin Laden in 1999 in Kandahar, Afghanistan. Reports stated that the IMU received $270,000 dollars from the Ibrahim bin Abdul Aziz al Ibrahim Foundation.

In 1999, the Russian special services and reconnaissance disseminated a report stating that Chechen militants were allegedly being trained in three paramilitary bases in Azerbaijan and that three Islamic organizations - the Ibrahim bin Abdul Aziz al Ibrahim Foundation, World Youth Islamic Assembly and Islamic Rescue Organization - had taken part in setting up these bases.

In an investigative television program by the Russian NTV, on November 1, 2002, it was disclosed that in July 2002, more than a hundred young men from various regions of Russia attended a seminar organized by the clerical board of Muslims of the Asian part of Russia at Pervouralsk. The official goal of the event was instruction in religious matters. One of the courses was based upon a study in sharia disciplines, published by Ibrahim bin Abdul Aziz al Ibrahim, which emphasized (quote): "Armed struggle in the name of Allah, for his word to be above all else… Sacrifice your life in witness of Allah's religion."

According to a document summarizing the seminar "the main task of the seminar was to select candidates for further instruction at Saudi universities, and to raise the level of

Islamic awareness." After the NTV findings, an investigation was conducted and a criminal procedure is pending in Russia.

That seminar event took place at the Middle Urals Kaziat Muslim community, where Abdullah bin Abdul Muhsen al Turki settled in 1995 a Joint Committee for Islamic Action and Studies with representatives from Defendants Muslim World League, Islamic International Relief Organization, World Assembly for Islamic Youth, along with the Ibrahim bin Abdul Aziz al Ibrahim Foundation.

Sheikh Abdul Aziz Al Ibrahim has extensive ties to the United States.

In 1989, Sheikh Abdul Aziz Al Ibrahim acquired a portion of the Marina Del Rey real estate venture in Los Angeles, through various offshore companies. American authorities discovered a loan of $132 million that was granted to Sheikh Abdul Aziz Al Ibrahim at the end of 1989 by BCCI. Sheikh Abdul Aziz Al Ibrahim was one of BCCI's leading loan beneficiaries.

In the mid 1980s, while living in Hollywood, California, Sheikh Abdul Aziz Al Ibrahim engaged in a romantic pursuit of actress/model Brooke Shields, setting up a movie production company (Mystery Man Productions) to invest over $22 million (including BCCI loan proceeds) in the production of a film vehicle for her, *Brenda Starr*. The production was so flawed that while filmed in 1986, the movie would not be released in the United States until 1992.

Apart from being a lead investor in Marina del Rey, Sheikh Abdul Aziz Al Ibrahim's real estate assets have included Ritz-Carlton hotels in New York, Washington, Houston and Aspen, a hotel and office complex near Chicago's O'Hare International Airport,

undeveloped property in the hills above Bel-Air and largely vacant land near Disney World in Florida. (Ritz-Carlton hotels decided in 1997 to pull back their name from those facilities by terminating management agreements after they became controlled by Al Anwa USA, a company owned by Sheikh Abdul Aziz Al Ibrahim.)

The registered President of Al Anwa USA is Tarek Ayoubi, who also manages Anwa Hotel & Resort International, Luxury Holdings Inc., MDR Hotel and NY Overnight Inc, all based at the same address in Marina Del Rey.

According to court papers filed in 1995, as reported by the *Washington Post,* Sheikh Abdul Aziz Al Ibrahim has won large sums of money gambling in the United States on which he did not wish to pay taxes to the Internal Revenue Service. In order to silence a former employee regarding these and other allegations, Sheikh Abdul Aziz Al Ibrahim hired the law firm of Sidley & Austin and filed suit in Washington, D.C. to seek injunctive relief. The suit was dismissed.