## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————————————————————
)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001      )        No. 03 MDL 1570 (RCC)
)        ECF Case
————————————————————————————)

This document relates to:

ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;

CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;

EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;

TREMSKY, *et al.* v. OSAMA BIN LADEN, *et al.*, Case No. 02-CV-7300; and

WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

## MEMORANDUM OF LAW IN SUPPORT OF
## SAUDI ARABIAN RED CRESCENT SOCIETY'S
## AND DR. ABDUL RAHMAN AL SWAILEM'S
## CONSOLIDATED MOTION TO DISMISS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Saudi Arabian Red Crescent Society
 and Dr. Abdul Rahman Al Swailem

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.      Introduction ............................................................................................ 1

II.     Factual Background ............................................................................... 2

        A.      The Saudi Arabian Red Crescent Society ...................................... 2

        B.      Dr. Abdul Rahman Al Swailem ..................................................... 3

        C.      Plaintiffs' Allegations About the Saudi Red Crescent and Dr. Al Swailem .... 4

III.    This Court Lacks Subject Matter Jurisdiction Because The Saudi Red Crescent
        and Dr. Al Swailem Are Immune from Suit under the Foreign Sovereign
        Immunities Act ........................................................................................ 6

        A.      The Standard of Review .............................................................. 6

        B.      The Saudi Red Crescent and Dr. Al Swailem Are Immune from Suit
                Under the FSIA to the Extent that the Allegations Against Them Concern
                Matters Within Their Capacity as an Agency and Official of the Saudi
                Government ................................................................................ 7

        C.      None of the FSIA Exceptions Applies to Either Defendant ........................ 9

                1.      The Commercial Activities Exception Is Not Applicable ................. 10

                2.      The Non-Commercial Tort Exception Is Also Inapplicable .............. 10

                3.      The State-Sponsored Terrorism Except Is Also Inapplicable ............ 11

IV.     This Court Lacks Personal Jurisdiction over the Saudi Red Crescent and Dr.
        Al Swailem, Pursuant to Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York
        Long-Arm Statute ................................................................................... 11

        A.      The New York Long-Arm Statute Is Not Satisfied ....................... 12

        B.      Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied........ 13

V.      This Court must Dismiss Plaintiffs' Complaints Against the Saudi Red Crescent
        and Dr. Al Swailem, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to
        State a Claim ......................................................................................... 16

A.      Plaintiffs Fail to Plead Sufficient Facts Showing That the Saudi Red
        Crescent's and Dr. Al Swailem's Acts  Proximately Caused Plaintiffs'
        Injuries ........................................................................................................ 17

B.      Plaintiffs' Claims Against the Saudi Red Crescent and Dr. Al Swailem
        under the Torture Victim Protection Act, the Anti-Terrorism Act, and
        Plaintiffs' Common Law Claims, Must be Dismissed as a Matter of Law ..... 18

C.      The *Burnett* and *Tremsky* Plaintiffs Lack Standing to Maintain Their RICO
        Claims Because Their Injuries are Personal Injuries, Not Injuries to Business
        or Property ..................................................................................................... 21

D.      Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
        Against the Saudi Red Crescent and Dr. Al Swailem for Plaintiffs' RICO
        Claims ........................................................................................................... 22

E.      Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
        Against the Saudi Red Crescent and Dr. Al Swailem Because They Owed
        No Duty of Care to Plaintiffs ........................................................................ 23

F.      Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................. 24

G.      Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................. 24

CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
   572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................... 25

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
   No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 17

Argentine Republic v. Ameranda Hess Shipping Corp.,
   488 U.S. 428 (1989) ............................................................................................ 6

Arndt v. UBS AG,
   342 F. Supp. 2d 132 (E.D.N.Y. 2004) ............................................................... 18

Aquascutum of London, Inc. v. S.S. American Champion,
   426 F.2d 205 (2d Cir. 1970) .............................................................................. 13

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   171 F.3d 779 (2d Cir. 1999) .............................................................................. 12

Boim v. Quranic Literacy Inst.,
   291 F.3d 1000 (7th Cir. 2002) ........................................................................... 19

Burnett v. Al Baraka Invest. & Devel. Corp.,
   274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................... *passim*

Burnett v. Al Baraka Invest. & Devel. Corp.,
   292 F. Supp. 2d 9 (D.D.C. 2003) ...................................................................... 10

Chrysler Capital Corp. v. Century Power Corp.,
   778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................................. 25

Conley v. Gibson,
   355 U.S. 41 (1957) ............................................................................................ 16

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) ................................................................................. 16

First Nationwide Bank v. Gelt Funding Corp.,
   27 F.3d 763 (2d Cir. 1994) ............................................................................... 18

Grove Press, Inc. v. Angleton,
  649 F.2d 121 (2d Cir. 1981) ................................................................. 25

Helicopteros Nacionales de Colombia, S.A. v. Hall,
  466 U.S. 408 (1984) .......................................................................... 13

Howell v. New York Post Co.,
  81 N.Y.2d 115, N.E.2d 702 (1993) ................................................. 20

In re Magnetic Audiotape Antitrust Litig.,
  334 F.3d 204 (2d Cir. 2003) ..................................................... 14-15

In re: Terrorist Attacks on Sept. 11, 2001,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005) .......................................... passim

Jerry Kubecka, Inc. v. Avellino,
  898 F. Supp. 963 (E.D.N.Y. 1995) ................................................. 21

Kajtazi v. Kajtazi,
  488 F. Supp. 15 (E.D.N.Y. 1978) ................................................... 25

King v. Crossland Savings Bank,
  111 F.3d 251 (2d Cir. 1997) ........................................................... 23

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
  191 F.3d 229 (2d Cir. 1999) ........................................................... 21

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
  184 F. Supp. 2d 277 (S.D.N.Y. 2001) ............................................. 7

Mayes v. UVI Holdings, Inc.,
  723 N.Y.S. 2d 151 (App. Div. 2001) .............................................. 24

McCarthy v. Olin Corp.,
  119 F.3d 148 (2d Cir. 1997) ........................................................... 24

Mende v. Milestone Tech., Inc.,
  269 F. Supp. 2d 246 (S.D.N.Y. 2003) ............................................ 12

NAACP v. AcuSport, Inc.,
  271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................ 24

Ouaknine v. MacFarlane,
  897 F.2d 75 (2d Cir. 1990) ............................................................. 22

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ....................................................................... 23

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) .................................................. 20

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ................................................... 20

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................ 18

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001) ........................................................ 7, 11

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ....................................................... 15

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ................................................. 24

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) .............................................. 19

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ................................................... 20

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ....... 15

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) .......................................................... 21

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002) .............................................................. 7

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) ................................................. 21

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................. 18-19

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq. ........................... *passim*

    28 U.S.C. § 1330(a) ..................................................................... 6

    28 U.S.C. § 1603(b) ..................................................................... 7

    28 U.S.C. § 1605(a)(2) ................................................................. 10

    28 U.S.C. § 1605(a)(5) ............................................................. 10-11

    28 U.S.C. § 1605(a)(7)(A) ........................................................ 10-11

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. ........... 21-23

    18 U.S.C. § 1962(a) ................................................................ 22-23

    18 U.S.C. § 1962(c) ................................................................ 22-23

    18 U.S.C. § 1962(d) ................................................................ 22-23

    18 U.S.C. § 1964(c) ..................................................................... 21

Torture Victim Protection Act, 28 U.S.C. § 1350 note .................................................... 18

Federal Rules of Civil Procedure:

    Rule 4(k)(1)(D) ................................................................ 11, 13-15

    Rule 12(b) ..................................................................................... 1

    Rule 12(b)(1) ................................................................................ 1

    Rule 12(b)(2) ......................................................................... 2, 12

    Rule 12(b)(6) ...................................................................... 2, 16-18

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ..................................................... 19

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) .......................................... 12-13

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............................. 20

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ..................................................... 20

**Other Materials:**

International Federation of Red Cross and Red Crescent Societies, "Directory: Saudi Arabian Red Crescent Society," *at* http://www.ifrc.org/address/sa.asp ..... 3

International Federation of Red Cross and Red Crescent Societies, "Partnerships in Profile 2002-2003: Saudi Arabian Red Crescent Society," *at* http://www.ifrc.org/cgi/pdf_profile.pl?saprofile.pdf.......................................... 2-3

The 9/11 Commission Report (July 2004) ......................................................................... 8

## I.   __INTRODUCTION.__

Plaintiffs named the Saudi Arabian Red Crescent Society ("Saudi Red Crescent"), a governmental agency that performs essential governmental functions in the Kingdom of Saudi Arabia, and Dr. Abdul Rahman Al Swailem, who was a Deputy Minister in the Ministry of Health, and the former President of the Saudi Red Crescent, as defendants in ten lawsuits consolidated in this proceeding, evidently on no other basis than that they are a Saudi governmental entity and officer, and allegedly worked with various Muslim charities.  The Saudi Red Crescent and Dr. Al Swailem respectfully move, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, and (3) failure to state a claim.

The Saudi Red Crescent's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed.  After Dr. Al Swailem filed his motion to dismiss *Burnett I*, the plaintiffs then dismissed him from that case, and from the second *Burnett* action ("*Burnett II*," originally filed in this Court).  See *Burnett* Dismissal (Docket No. 286) (July 1, 2004).  The Saudi Red Crescent was named as a defendant in *Salvo*, but this Court recently granted the *Salvo* plaintiffs' request to consolidate that case with *Burnett.*  See Endorsed Letter (*Salvo*) (Docket No. 1137) (Aug. 16, 2005).  As a result of these actions, the Saudi Red Crescent is a defendant in only seven other lawsuits – *Ashton*, *Burnett II*, *Continental Casualty*, *Euro Brokers*, *Federal Insurance*, *New York Marine*, and *WTC Properties*, and Dr. Al Swailem is a defendant in only three lawsuits – *Federal Insurance, NY Marine,* and *Tremsky*.

As set forth below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that defendants' high-level governmental status entitle them to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this

court's jurisdiction over them.  This Court must also find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over the Saudi Red Crescent, a foreign entity, and Dr. Al Swailem, a foreign citizen, as their minimal contacts with the United States were either in their official governmental capacities, or are unrelated to plaintiffs' allegations.  This Court should find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state any claims against defendants.

## II.  FACTUAL BACKGROUND.

### A.  The Saudi Arabian Red Crescent.

The Saudi Red Crescent was established by Royal Declaration on July 31, 1966.  See Declaration of Abdul Rahman Al Swailem ("SRC Decl.") at ¶ 3 (attached hereto as Exhibit 1). It is member No. 91 of the International Federation of Red Cross and Red Crescent Societies, which is the international consortium of national humanitarian medical societies headquartered in Geneva, Switzerland.  Id.

The government of the Kingdom of Saudi Arabia sponsors and supervises the Saudi Red Crescent, and appoints its directors.  Id. at ¶ 4.  The Saudi Red Crescent's functions include supporting humanitarian operations in other countries, and providing emergency medical services and related programs within Saudi Arabia.  Id.  The Saudi government funds the Saudi Red Crescent's operations within Saudi Arabia so that it may operate its nationwide ambulance center network, the health clinics for pilgrims during the *Hajj* pilgrimage season, the teaching of first aid and road safety courses, the provision of road accident emergency services, and development of disaster preparedness plans.  See International Federation of Red Cross and Red Crescent Societies, "Partnerships in Profile 2002-2003: Saudi Arabian Red Crescent Society,"

2

<http://www.ifrc.org/cgi/pdf_profile.pl?saprofile.pdf>; "Directory: Saudi Arabian Red Crescent Society," <http://www.ifrc.org/address/sa.asp> (Exhibits 1-2 to SRC Decl.).  Neither the Saudi Red Crescent nor its officers tolerate any form of terrorism or the loss of innocent life.  Id. at ¶ 4.

The Saudi Red Crescent owns no real property in the United States.  Id. at ¶ 5.  The Saudi Red Crescent has no bank accounts, or real or personal investments in the United States, nor does it conduct business in the United States.  Id.  Officials of the Saudi Red Crescent have traveled to the United States for training and educational purposes on a few occasions.  The Saudi Red Crescent is a member of the American-Saudi Joint Committee, which helps with the Saudi Red Crescent's projects.  The Saudi Red Crescent does not do fundraising in the United States.  Id.

The Saudi Red Crescent has never supported the taking of innocent life, and believes that there is no justification for the tragic attacks of September 11, 2001.  Id. at ¶ 7.  Furthermore, the Saudi Red Crescent has never supported any person or organization that it knew to participate in terrorist activities.  Id.

**B.     Dr. Abdul Rahman Al Swailem.**

Dr. Abdul Rahman Al Swailem is a physician who has lived in Saudi Arabia almost his entire life.  He has always been a citizen of the Kingdom of Saudi Arabia.  See Declaration of Abdul Rahman Al Swailem ("Al Swailem Decl.") at ¶ 3 (attached hereto as Exhibit 2).  In 1989, Dr. Al Swailem was appointed by the Saudi Council of Ministers to the position of Deputy Minister for Executive Affairs, Ministry of Health.  Id. at  ¶ 6.  The Saudi Council of Ministers, which is headed by King Fahd bin Abdulaziz al Saud and his deputies, is the highest decision-making body in the Saudi government.  Id.  As Deputy Minister, Dr. Al Swailem was in charge

of all executive and technical affairs, including issues relating to medicine, hospitals, preventive medical care, and the delivery of health care services.  He served in that position until 1998.  Id. at ¶ 7.  In November 1998, King Fahd issued a Royal order that appointed Dr. Al Swailem to serve as President of the Saudi Arabian Red Crescent Society.  He served in that position through 2005, id. at ¶ 8, until earlier this year when the Saudi government appointed him to the Majlis al-Shoura, which is the Saudi equivalent of a Parliament.

Dr. Al Swailem has visited the United States about four times, for reasons related to his government service as Deputy Minister.  He visited San Francisco in 1979, and Pittsburgh, Pennsylvania, in 1998.  He does not recall the exact dates of the visits, but knows that sometime before 1998 he also visited New York and Washington, D.C.  Id. at ¶ 11.  Dr. Al Swailem does not own any real property in the United States.  He also has no bank accounts or investments in the United States, and does not conduct any business in the United States.  Id. at ¶ 12.

As a physician, Dr. Al Swailem has never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001.  He has never knowingly supported any person or organization that he knows to participate in terrorist activities.  Id. at ¶ 14.

**C.**     **Plaintiffs' Allegations About the Saudi Red Crescent and Dr. Al Swailem.**

The *Euro Brokers* and *Burnett II* plaintiffs listed the Saudi Red Crescent solely in the caption, and the *Tremsky* plaintiffs listed Dr. Al Swailem solely in the caption.  These three complaints made no attempt to plead any allegations about either defendant in the text of their complaints, other than generic allegations that hundreds of defendants acted in concert.

The *Federal Insurance* and *NY Marine* plaintiffs list Dr. Al Swailem as one of some three

4

hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that catchall allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

Some plaintiffs allege that the Saudi Red Crescent was one of several entities that formed the Saudi Joint Relief Committee ("SJRC"), which plaintiffs allege in turn "has been connected to Osama Bin Laden and two of his top operatives."  See *Ashton* Compl., at ¶ 484; *Continental Casualty* Compl., at ¶ 368; *WTC Properties* Compl., at ¶ 309.  These plaintiffs also allege that the Saudi Red Crescent has received donations through the National Commercial Bank.  *Ashton* Compl., at ¶ 570; *Continental Casualty* Compl., at ¶ 368; *WTC Properties* Compl., at ¶ 232.

The *Federal Insurance* and *WTC Properties* plaintiffs make other allegations, relating to (1) the identity of individuals who made donations to the Saudi Red Crescent; or (2) acts allegedly taken by the SJRC; or (3) the arrest or searches of several individuals allegedly employed by or associated with the SJRC or the Saudi Red Crescent.  See *Federal Insurance* Compl., at ¶¶ 76, 124, 162, 190-207, 435, 503; *WTC Properties* Compl., at ¶¶ 925, 929-932, 939.

The *Federal Insurance* plaintiffs' RICO Statement as to both defendants largely reiterates verbatim their RICO statements filed as to all other defendants.  See *Federal Insurance* RICO Statement (Docket No. 629) (Jan. 14, 2005).  Exhibit A to the RICO Statement is supposed to set forth the specific allegations, but also reiterates verbatim the allegations in the complaint, and evidently only includes three new factual allegations:  (1) that the Saudi Red Crescent "provided important support to al Qaida, including maintaining passport [*sic*] for al Qaida operatives," (2) that an advisor to Bin Laden wrote, at some unspecified time, that the

5

Saudi Red Crescent was "at the forefront" of supporting jihad; and (3) that "when Russian authorities refused to permit several Saudi charities to provide aid in Chechnya, the Saudi government channeled the operations of those charities through the Saudi Red Crescent." Id. at 8, 10.

### III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE SAUDI RED CRESCENT AND DR. AL SWAILEM ARE IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

The Saudi Red Crescent has been a government agency since 1966.  From 1989 to the present, Dr. Al Swailem has held positions within the Saudi government and is currently a member of the Majlis al-Shoura, the Saudi Parliament.  Because plaintiffs named them as defendants based on actions they took as government actors, this Court lacks subject matter jurisdiction over them under the Foreign Sovereign Immunities Act ("FSIA").

### A.    The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a).  The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court. Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).  A foreign state, and its instrumentalities, "are presumed immune from United States courts' jurisdiction," and the determination of subject matter jurisdiction must be made "at the threshold of every action." *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005).  This court recognized that immunity under the FSIA extends to individual defendants, "to the extent their alleged actions were performed in their official capacities."  Id. at 788.

6

When addressing motions to dismiss based on sovereign immunity, the court must give "'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope of their official duties." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F. Supp. 2d 277, 287 (S.D.N.Y. 2001). When a defendant establishes a *prima facie* case that it is a sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity should not be granted, under one of the FSIA exceptions. Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). If the court finds that a defendant has engaged in the alleged actions as a part of his official government duties, and the exceptions to FSIA are inapplicable, the court must dismiss the claims against that defendant. Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).

> **B.    The Saudi Red Crescent and Dr. Al Swailem Are Immune from Suit under the FSIA to the Extent That the Allegations Against Them Concern Matters Within Their Capacity as an Agency and Official of the Saudi Government.**

The Saudi Red Crescent, and Dr. Al Swailem, through their affidavits, have clearly established that they are a "sovereign." The Saudi Red Crescent performs core governmental functions, including providing emergency medical services and related programs within Saudi Arabia. See SRC Decl. (Ex. 1), ¶ 4 & Att. 1-2. Dr. Al Swailem has held positions of authority within the Saudi Government since 1989, and currently serves as a member of the Saudi parliament. See Al Swailem Decl. (Ex. 2), at ¶¶ 6-8. Therefore, both defendants were an "instrumentality" of the Saudi government for purposes of all acts they undertook during that period of time. See 28 U.S.C. § 1603(b).

Plaintiffs' allegations against the Saudi Red Crescent and Dr. Al Swailem, to the extent that they can be characterized, fall into eight categories. Putting aside the generic allegations

that these defendants acted in concert with hundreds of other defendants, in some unspecified manner, the remaining allegations fail to plead any facts that would call into play one of the exceptions to the FSIA.

As a threshold matter, neither defendant was named in anywhere in the official report of the 9/11 Commission, available online at: http://www.9-11commission.gov/.  Further, the Commission "found no evidence that the Saudi government as an institution" funded Al Qaeda.  See The 9/11 Commission Report, at 171 (July 2004).  This finding would certainly encompass government actors such as the Saudi Red Crescent and Dr. Al Swailem.

In terms of plaintiffs' specific allegations, plaintiffs first allege that the Saudi Red Crescent was one of several entities that formed the SJRC.  However, plaintiffs do not plead any facts showing that the Saudi Red Crescent, or Dr. Al Swailem, knew of any illegal acts by the SJRC or its employees.  In fact, Dr. Al Swailem submitted a declaration in support of the SJRC's motion to dismiss, which expressly disavows any such knowledge on the part of the SJRC.  See SJRC Motion to Dismiss, Al Swailem Decl. (Docket No. 631) (Jan. 17, 2005).

Second, plaintiffs allege that the Saudi Red Crescent received donations from various individuals, as well as donations through the National Commercial Bank.  As this Court previously ruled, the act of making donations, absent any knowledge that the recipient of the donations would somehow misuse those donations, does not waive sovereign immunity.  In re Sept. 11, 349 F. Supp. at 801-02.  Plaintiffs did not plead that the Saudi Red Crescent received these donations with any intent to misuse them.

Third, plaintiffs refer to the arrest or searches of several individuals who allegedly were employed by, or associated with, the SJRC and the Saudi Red Crescent.  Of the seven named

individuals, five are not even defendants in any of the cases consolidated in this litigation:

Muhamed Hasan Mahmoud, Muhammed Ali Syad, Bashir Babar Quadim, Boumediene Lahkdar,

and Nechle Mohammed.  See *Federal Insurance* Compl., ¶¶ 197-198; *WTC Properties* Compl., ¶

931.  Even if these five individuals worked for the Saudi Red Crescent or the SJRC, that would

not form any basis for imposing liability on the Saudi Red Crescent, since plaintiffs do not

consider those individuals to have anything to do with their injuries.

Fourth, the *Federal Insurance* plaintiffs allege that the Saudi Red Crescent was supposed

to have "provided important support" for Al Qaeda, including the provision of passports.  These

plaintiffs also allege, also without any details, that one of Bin Laden's advisors wrote that the

Saudi Red Crescent supported jihad.  These allegations – lacking any information on the dates,

documents, and authenticity thereof – are not competent evidence, and are as useless as is the

"Golden Chain," a document which this Court properly rejected as having no evidentiary value.

Fifth, the *Federal Insurance* plaintiffs, in their RICO Statement, allege that the Saudi Red

Crescent provided charitable operations in Chechnya, "when Russian authorities refused to

permit several Saudi charities" to do so.  While it is correct that the Saudi Red Crescent, through

the SJRC, provided charitable and humanitarian support to refugees in Chechnya, that project

was approved at the highest levels of the Saudi government and the Russian government in

Chechnya.  See SJRC Motion to Dismiss, at 3-5 (Docket No. 631) (Jan. 17, 2005).  Far from

being nefarious, as plaintiffs seem to imply, the Saudi Red Crescent's operations in Chechnya,

conducted through the SJRC, were above board and properly authorized.

### C.    None of the FSIA Exceptions Applies to Either Defendant.

To the extent that plaintiffs complain of actions that the Saudi Red Crescent and Dr. Al

Swailem took in their official capacity, plaintiffs must come forward with evidence to show that immunity should not be granted, under one of FSIA's three exceptions. Plaintiffs cite 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort" exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception). Under this Court's January 18, 2005 decision, none of these exceptions applies to either defendant.

### 1.      The Commercial Activity Exception Is Not Applicable.

Neither the Saudi Red Crescent nor Dr. Al Swailem engaged in any commercial activities. This Court has previously held that making charitable donations is not a commercial activity. *In re* Sept. 11, 349 F. Supp. at 793; accord Burnett v. Al Baraka Invest. & Devel. Corp., 292 F. Supp. 2d 9, 18 (D.D.C. 2003). Any contributions that these two defendants allegedly made, whether to the SJRC, or anywhere else, are, therefore, not commercial activities under the FSIA, so that this FSIA exception does not apply.

### 2.      The Non-Commercial Tort Exception Is Also Inapplicable.

The second exception to FSIA immunity is for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). Plaintiffs "must come forward with evidence demonstrating that the [defendant's] tortious acts or omissions caused Plaintiffs' injuries." *In re* Sept. 11, 349 F. Supp. 2d at 797. In order to satisfy this standard, the plaintiffs must show proximate causation. This Court previously held, in granting the motions to dismiss for lack of

10

subject matter jurisdiction of Prince Sultan and Prince Turki, that:

> [Plaintiffs] have not, however, pleaded facts to support an inference that the
> Princes were sufficiently close to the terrorists' illegal activities to satisfy
> *Halberstam* or New York law.  Similarly, Plaintiffs have not pleaded facts to
> suggest the Princes knew they were making contributions to terrorist fronts and
> provided substantial assistance or encouragement to the terrorists to satisfy *Boim*
> or New York law. . . . there must be some facts presented to support the allegation
> that the defendant knew the receiving organization to be a solicitor, collector,
> supporter, front or launderer for such an entity.  There must be some facts to
> support an inference that the defendant knowingly provided assistance or
> encouragement to the wrongdoer.  Here, there are no such factual bases presented,
> there are only conclusions.

Id. at 800-01.  The Second Circuit has similarly held that it is improper to use "vague and

conclusory allegations" to invoke the tort exception to FSIA.  Robinson, 269 F.3d at 146.

 This Court must find that the tort exception to the FSIA does not apply here, since the

plaintiffs have failed to allege facts showing that the Saudi Red Crescent and Dr. Al Swailem

committed tortious acts, or knowingly supported terrorists.

### 3.    The State-Sponsored Terrorism Exception Is Also Inapplicable.

 Finally, if plaintiffs intend to claim that the Saudi Red Crescent or Dr. Al Swailem

provided material support to terrorists who caused their injuries, the state-sponsored tort

exception is inapplicable.  Congress explicitly assigned material support claims to another

exception, 28 U.S.C. § 1605(a)(7)(A).  As this Court previously determined, that exception does

not apply, because Saudi Arabia has not been designated as a state sponsor of terrorism, a

prerequisite for the application of this exception.  *In re* Sept. 11, 349 F. Supp. 2d at 794.

### IV.    THIS COURT LACKS PERSONAL JURISDICTION OVER THE SAUDI RED CRESCENT AND DR. AL SWAILEM, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

 This Court must dismiss plaintiffs' complaints against the Saudi Red Crescent and Dr. Al

Swailem, pursuant to Rule 12(b)(2), Fed. R. Civ. P., and the New York long-arm statute, for lack

of personal jurisdiction.  Plaintiffs have the burden to establish that personal jurisdiction exists

over each defendant by making a *prima facie* showing of facts sufficient to support a finding of

personal jurisdiction.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779,

784 (2d Cir. 1999).  Conclusory assertions or "argumentative inferences" cannot be the basis for

personal jurisdiction.  *In re* Sept. 11, 349 F. Supp. 2d at 804; Mende v. Milestone Tech., Inc.,

269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

If plaintiffs now somehow allege that the Saudi Red Crescent and Dr. Al Swailem took

acts in their personal capacity, this Court's analysis of personal jurisdiction demonstrates that

plaintiffs' conclusory allegations fail to meet the standard for the exercise of personal

jurisdiction.  As a threshold matter, it is improbable that a government agency such as the Saudi

Red Crescent could ever act in a "personal capacity."

### A.      The New York Long-Arm Statute Is Not Satisfied.

First, the personal jurisdiction requirements of the New York long-arm statute, N.Y.

C.P.L.R. § 302(a)(2) (McKinney 2002), are not satisfied.  As this Court held, merely alleging

that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the

attacks of September 11," is insufficient to establish personal jurisdiction through the New York

long-arm statute on a conspiracy theory.  *In re* Sept. 11, 349 F. Supp. 2d at 805.  Here, plaintiffs'

complaints fail to "allege any specific facts" that would allow the reasonable inference that the

Saudi Red Crescent and Dr. Al Swailem "directed, controlled, or requested al Qaeda to

undertake its terrorist activities."  Id. at 806.  Nor do plaintiffs make "any specific allegations of

their knowledge of or consent to those activities."  Id.  Indeed, plaintiffs state only conclusions

that somehow these two defendants acted in concert with several hundred other defendants, or that they were involved with the SJRC and several other non-profit entities.  Therefore, this Court must dismiss the Saudi Red Crescent and Dr. Al Swailem from this lawsuit, as it has previously dismissed other defendants because the plaintiffs failed to plead any specific allegations about these defendants' knowledge of, or consent to, terrorist activities of charities with whom they are connected.

### B.      Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.

Second, personal jurisdiction over the Saudi Red Crescent or Dr. Al Swailem, pursuant to Rule 4(k), under either a "general jurisdiction" or a "specific jurisdiction" theory, would not satisfy the requirements of due process, as both require some level of minimum contacts with this forum.  _In re_ Sept. 11, 349 F. Supp. 2d at 810-11.  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  These defendants' extremely limited contacts with the United States, see SRC Decl. (Ex. 1), at ¶ 5 and Al Swailem Decl. (Ex. 2) at ¶¶ 11-12 (four visits to the United States, all before 1999), are "not sufficiently 'systematic and continuous' to maintain general jurisdiction" over them.  _In re_ Sept. 11, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed based on his limited contacts with the United States).  The Second Circuit has held that even several visits a year to the United States are insufficient to assert personal jurisdiction over a non-resident defendant.  See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months").  Here, the visits by Dr. Al Swailem are well below the level deemed insufficient for personal

jurisdiction.

The only contact with the United States that any of the plaintiffs identify with respect to the Saudi Red Crescent and Dr. Al Swailem is one allegation that "Ayman Zawahiri, al Qaida's second in command, joined the Saudi Red Crescent in 1985.  In 1995, he presented himself as a representative of the Saudi Red Crescent and raised $500,000 in the San Francisco area."  <u>See</u> <i>Federal Insurance</i> Compl., ¶ 193.  First, plaintiffs fail to recognize that the Saudi Red Crescent has some 3,000 employees, and another 1,000 or more members and volunteers.  <u>See</u> SRC Decl. (Ex. 1), Att. 1.  Second, plaintiffs fail to state whether Zawahiri was, in fact, still a "member" of the Saudi Red Crescent in 1995, ten years after he allegedly joined it.  Third, plaintiffs did not plead that the Saudi Red Crescent knew that Zawahiri would be fund raising on its behalf, let alone that the funds collected by Zawahiri were transferred to the Saudi Red Crescent.  In fact, the account upon which plaintiffs evidently rely expressly states that Zawahiri repeatedly misled the California donors as to his identity (by using an assumed name, "Dr. Muizz") and as to the actual use of the funds collected, which Zawahiri diverted to Al Qaeda.  <u>See</u> L. Williams & E. McCormick, "Top Bin Laden Aide Toured California," <i>San Francisco Chronicle</i>, Oct. 11, 2001 (attached hereto as Exhibit 3).  Thus, this allegation fails to provide any support for the exercise of personal jurisdiction over the Saudi Red Crescent and Dr. Al Swailem, since plaintiffs have not pled any competent evidence that either defendant knew anything about Zawahiri's admittedly deceitful actions, let alone that the Saudi Red Crescent benefitted from his actions.

Similarly, for this Court to exercise personal jurisdiction over the Saudi Red Crescent and Dr. Al Swailem under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that they were a "primary participant in intentional wrongdoing."  <u><i>In re</i></u>

14

Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997). If the defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise were not a "primary participant," then personal jurisdiction cannot be supported. See In re Sept. 11, 349 F. Supp. 2d at 809 (quoting In re Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003). Here, plaintiffs have failed to plead any facts to support an allegation that the Saudi Red Crescent or Dr. Al Swailem were personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over them under a "specific jurisdiction" theory.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed to "make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries." In re Sept. 11, 349 F. Supp. 2d at 809. Instead, plaintiffs merely made "conclusory allegations" that the Saudi Red Crescent and Dr. Al Swailem "aided and abetted terrorists," but without pleading any facts to support an allegation that they "purposefully directed [their] activities at this forum" by engaging in activities "that [they] knew at the time supported international terrorism." Id. at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan purposefully directed his activities at this forum").

Therefore, this Court must find, as it did in dismissing Prince Sultan and Prince Turki, that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction over the Saudi Red Crescent and Dr. Al Swailem.

## V.   THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST THE SAUDI RED CRESCENT AND DR. AL SWAILEM, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs have not pled factual allegations against The Saudi Red Crescent and Dr. Al Swailem, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)."  De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).

Plaintiffs have also brought claims against the Saudi Red Crescent and/or Dr. Al Swailem, which are legally defective:  (1) a claim under the Anti-Terrorism Act (*Ashton, Burnett II, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Ashton, Burnett II, Federal Insurance,* and *Tremsky*); (3) a claim under the Alien Tort Claims Act (*Burnett II* and *Tremsky*); (4) Civil RICO claims (*Burnett II, Continental Casualty, Euro Brokers, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*); (5) wrongful death and survival (*Ashton, Burnett II, Federal Insurance,* and *Tremsky*); (6) conspiracy, and aiding and abetting (*Burnett II, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*); (7) assault and battery claims (*Ashton* and *Federal Insurance*); and (8) property destruction and damage claims (*Ashton, Continental Casualty, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).  The *Burnett II*, *Federal Insurance* and

16

*Tremsky* plaintiffs brought negligence claims and negligent and intentional infliction of emotional distress claims.  The *Tremsky* plaintiffs brought a common-law nuisance claim.  All plaintiffs, except for *Continental Casualty*, brought separate claims for punitive damages.

### A.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT THE SAUDI RED CRESCENTS'S AND DR. AL SWAILEM'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have not pled sufficient facts showing that the Saudi Red Crescent's and Dr. Al Swailem's acts proximately caused plaintiffs' injuries.  Plaintiffs have simply alleged, in a conclusory manner, that all defendants provided support to al Qaeda, which led to the September 11 attacks.  As there are 440 defendants in *Ashton*, 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 431 defendants in *Continental Casualty*, 201 defendants in *Euro Brokers*, 581 defendants in *Federal Insurance*, 561 defendants in *NY Marine*, 98 defendants in *Tremsky*, and 201 defendants in *WTC Properties*, there is no way for the Saudi Red Crescent and Dr. Al Swailem to know what plaintiffs are alleging is their wrongful conduct.

Firstly, plaintiffs cannot simply "lump" the Saudi Red Crescent or Dr. Al Swailem with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Secondly, under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation,

and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re Sept. 11*, 349 F. Supp. 2d at 826.  Hence, in order to impose tort liability on the Saudi Red Crescent and Dr. Al Swailem through a concerted liability theory, plaintiffs must show that they "must know the wrongful nature of the primary actor's conduct" and that they acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)).  Plaintiffs' allegations, no matter how construed, fail to meet that standard.

> **B.    PLAINTIFFS' CLAIMS AGAINST THE SAUDI RED CRESCENT AND DR. AL SWAILEM UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, most of plaintiffs' tort claims must be dismissed.

(1)    This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Ashton* Count 5, *Burnett* Count 1, *Federal Insurance* Count 6, and *Tremsky* Count 2), because plaintiffs did not plead any facts to support an allegation that the Saudi Red Crescent and Dr. Al Swailem "subject[ed] an individual to torture or extrajudicial killing," as required to impose liability.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)    This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Ashton* Count 4; *Burnett* Count 3; *Federal Insurance* Count 10; *NY*

18

*Marine* Count 5; *Tremsky* Count 9; *WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that the Saudi Red Crescent and Dr. Al Swailem engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that they provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that they contributed to any terrorist group whose recipients were known to them and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").

(3)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829 (dismissing these claims).  The *Burnett II* (New York) complaint was filed on August 1, 2003, and the *Federal Insurance* complaint was filed on September 10, 2003, both more than one year after September 11, 2001.  Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(4)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Ashton* Counts 1-2; *Burnett* Counts 5 and 7; *Federal Insurance* Counts 2-3; *Tremsky* Count 5), because plaintiffs have not pled any facts to support an allegation that the

19

Saudi Red Crescent and Dr. Al Swailem "caused the decedent's death," or that they committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that these two defendants "supported, aided and abetted, or conspired with the September 11 terrorists."  <u>In re</u> Sept. 11, 349 F. Supp. 2d at 829.

(5)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Burnett* Count 8, *Federal Insurance* Count 5, and *Tremsky* Count 6) and property destruction tort claims (*Ashton* Count 8; *Euro Brokers* Counts 1-2, 6, 8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to support an allegation that the Saudi Red Crescent's and Dr. Al Swailem's acts caused plaintiffs' injuries, as required for these torts.  <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); <u>People v. Keech</u>, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); <u>People v. Summer</u>, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[1] Plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  <u>Talmor v. Talmor</u>, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

Plaintiffs also cannot plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that

---

[1] Defendants have not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

the Saudi Red Crescent and Dr. Al Swailem associated themselves with, and participated in, the

conspiracy resulting in the property damage, let alone that the property damage was a

foreseeable act done in furtherance of any of their unstated actions in pursuit of some vague

conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).

### C. THE *BURNETT* AND *TREMSKY* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the RICO claims brought by the *Burnett* and *Tremsky* personal

injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The

*Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* and *Tremsky* plaintiffs instead decide to pursue their RICO claims

against the Saudi Red Crescent and Dr. Al Swailem, this Court must find that as personal injury

plaintiffs, they lack standing to bring RICO claims, which are limited by statute to "[a]ny person

injured in his business or property."  18 U.S.C. § 1964(c); see also Burnett, 274 F. Supp. 2d at

101-02 (dismissing plaintiffs' RICO claims for lack of standing).  Under clear Second Circuit

precedent, personal injury plaintiffs cannot seek recovery under the RICO statute.  Laborers

Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the

RICO statute requires an injury to 'business or property'"); Jerry Kubecka, Inc. v. Avellino, 898

F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal representatives of the decedents are

not entitled to sue under § 1964(c)"); von Bulow v. von Bulow, 634 F. Supp. 1284, 1309

(S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO.").

**D.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST THE SAUDI RED CRESCENT AND DR. AL SWAILEM FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that all the plaintiffs who seek to bring RICO claims against the Saudi Red Crescent and Dr. Al Swailem have failed to state a RICO claim under Section 1962(a), (c), or (d).

First of all, except for *Federal Insurance*, the plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Second, plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Third, plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that the Saudi Red Crescent and Dr. Al Swailem had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Fourth and finally, plaintiffs cannot state a Section 1962(d) claim against the Saudi Red Crescent and Dr. Al Swailem since the plaintiffs have done nothing to show that <u>each</u> individual defendant conspired with the other defendants to engage in an enterprise, or that they were a "central figure in the underlying schemes." <u>Id.</u> (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim). Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim. <u>Id.</u> at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against the Saudi Red Crescent and Dr. Al Swailem under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from their investment of the enterprise's income; that they engaged in an enterprise, or conspired with others to do so; or that they actively managed and operated the alleged enterprise, or were a central figure in the alleged scheme.

**E.     PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST THE SAUDI RED CRESCENT AND DR. AL SWAILEM BECAUSE THEY OWED NO DUTY OF CARE TO PLAINTIFFS.**

This Court must dismiss the *Burnett, Federal Insurance NY Marine*, and *Tremsky* plaintiffs' negligence, negligent infliction of emotional distress, and nuisance claims against the Saudi Red Crescent and Dr. Al Swailem, because they owed no duty of care to plaintiffs. As this Court has recognized in dismissing the negligence claims by the moving defendants, it is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim. <u>*In re* Sept. 11</u>, 349 F. Supp. 2d at 830-31 (citing <u>King v. Crossland Savings Bank</u>, 111 F.3d 251, 259 (2d Cir. 1997); <u>Palsgraf v. Long Island R.R. Co.</u>, 248 N.Y. 339, 342 (1928)); <u>accord</u> <u>Burnett</u>, 274 F. Supp. 2d at 108-09 (same).

23

Here, plaintiffs have alleged only conclusory allegations that "all defendants were under a general duty," *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to" plaintiffs and the employees of plaintiffs' insureds.  See *Federal Insurance* Compl. ¶ 642; *NY Marine* Compl., at ¶ 79; *Tremsky* Compl. ¶ 235.[2]  However, the Saudi Red Crescent and Dr. Al Swailem had no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).

## F.      PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, because no independent cause of action exists under New York law for this claim.  Punitive damages are merely a form of relief, not an independent tort cause of action.  See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

## G.      PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett* Count 9, *Federal Insurance* Count 7, *NY Marine* Count 4, *Tremsky* Count 7, and *WTC Properties* Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of

---

[2] The *Tremsky* plaintiffs raised a vague "nuisance" claim (Count 15), which sounds in negligence, since it alleges that all defendants "were under a general duty."  However, they cannot satisfy the requirements of a nuisance claim which requires a showing that the Saudi Red Crescent and Dr. Al Swailem owed "a duty of care to the public or to a substantial number of persons."  NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 490 (E.D.N.Y. 2003).

action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Hence, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

## CONCLUSION

For the foregoing reasons, defendants Saudi Arabian Red Crescent Society and Dr. Abdul Rahman Al Swailem respectfully request that this Court grant their Motion to Dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Lynne Bernabei

_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Saudi Arabian Red Crescent Society
 and Dr. Abdul Rahman Al Swailem

Dated:  September 6, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat
_____
Alan R. Kabat