# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | No. 03 MDL 1570 (RCC) ECF Case |

_____)

This document relates to:

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;

EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105; and

WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

## MEMORANDUM OF LAW IN SUPPORT OF
## SHEIKH SALEH AL-HUSSAYEN'S
## CONSOLIDATED MOTION TO DISMISS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Saleh Al-Hussayen

DATED:  September 6, 2005

# TABLE OF CONTENTS

I. Introduction ........................................................................................... 1

II. Factual Background ................................................................................ 2

III. This Court Lacks Subject Matter Jurisdiction Because Sheikh Al-Hussayen Is Immune from Suit under the Foreign Sovereign Immunities Act .............................. 3

    A. The Standard of Review ................................................................ 3

    B. Sheikh Al-Hussayen Is Immune from Suit Under the FSIA to the Extent That the Allegations Against Him Concern Matters Within His Capacity As An Official of the Saudi Government ........................................... 4

    C. None of the FSIA Exceptions Applies to Sheikh Al-Hussayen ..................... 6

        1. The Commercial Activities Exception Is Not Applicable .................. 6

        2. The Non-Commercial Tort Exception Is Also Inapplicable .............. 7

        3. The State-Sponsored Terrorism Except Is Also Inapplicable ............. 8

IV. This Court Lacks Personal Jurisdiction over Sheikh Al-Hussayen, Pursuant to Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute ...................... 8

    A. The New York Long-Arm Statute Is Not Satisfied ........................................ 9

    B. Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied........ 9

V. This Court Must Dismiss Plaintiffs' Complaints Against Sheikh Al-Hussayen, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim ................... 11

    A. Plaintiffs Fail to Plead Sufficient Facts Showing That Sheikh Al-Hussayen's Acts  Proximately Caused Plaintiffs' Injuries ........................ 13

    B. Plaintiffs' Claims Against Sheikh Al-Hussayen Under the Torture Victim Protection Act, the Anti-Terrorism Act, and Plaintiffs' Common Law Claims, Must Be Dismissed as a Matter of Law ............................................ 14

    C. The *Burnett* Plaintiffs Lack Standing to Maintain Their RICO Claims Because Their Injuries are Personal Injuries, Not Injuries to Business or Property ..................................................................................... 17

D.      Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
        Against Sheikh Al-Hussayen for Plaintiffs' RICO Claims ........................... 18

E.      Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
        Against Sheikh Al-Hussayen Because He Owed No Duty of Care to
        Plaintiffs ..................................................................................................... 19

F.      Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................ 20

G.      Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................ 21

VI.   This Court Must Dismiss Plaintiffs' Complaints Against Sheikh Al-Hussayen,
      Pursuant to Rule 12(b)(5), Fed. R. Civ. P., for Improper Service of Process ............ 21

CONCLUSION ................................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ..................................................................... 21

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
    No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 14

Argentine Republic v. Ameranda Hess Shipping Corp.,
    488 U.S. 428 (1989) ......................................................................................... 4

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) .............................................................. 15

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970) ............................................................................ 10

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ............................................................................ 8

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) .................................................................. 15-16

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .................................................................. 17

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ............................................................... 21

Conley v. Gibson,
    355 U.S. 41 (1957) .................................................................................... 11-12

Diaz v. Gates,
    No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*) ................ 18

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ................................................................................ 12

Filetech S.A. v. France Telecom S.A.,
    157 F.3d 922 (2d Cir. 1998) ............................................................................ 4

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ................................................................................. 13

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ............................................................................... 21

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ........................................................................................... 10

Howell v. New York Post Co.,
    81 N.Y.2d 115, N.E.2d 702 (1993) ...................................................................... 16

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ............................................................................... 10

In re: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................... passim

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................................. 10

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) .................................................................. 17-18

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ......................................................................... 21

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................................... 20

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ............................................................................... 17

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ................................................................... 4

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) .................................................................... 13

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ............................................................... 20-21

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ............................................................................... 20

iv

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................................. 9

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) ...................................................................... 22

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) ............................................................................. 22

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ............................................................................... 19

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ........................................................................................ 20

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ................................................................... 16

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ................................................................... 16

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................................. 13

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992) .......................................................................................... 7

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001) ........................................................................... 4-5

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ....................................................................... 10

Seramur v. Saudi Arabian Airlines,
    934 F. Supp. 48 (E.D.N.Y. 1996) ..................................................................... 22

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ................................................................. 20

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................................. 15

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ................................................................... 17

Time, Inc. v. Simpson,
        No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ...... 10-11

United States v. Ruiz,
        115 F.3d 1492 (1st Cir. 1997) ............................................................ 17

Virtual Countries, Inc. v. Republic of South Africa,
        300 F.3d 230 (2d Cir. 2002) ............................................................ 4, 7

von Bulow v. von Bulow,
        634 F. Supp. 1284 (S.D.N.Y. 1986) .................................................. 18

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ................................................ 15-16

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq. ........................... *passim*

        28 U.S.C. § 1330(a) ....................................................................... 4

        28 U.S.C. § 1603(b) ....................................................................... 5

        28 U.S.C. § 1605(a)(2) .................................................................. 6-7

        28 U.S.C. § 1605(a)(5) .................................................................. 6-8

        28 U.S.C. § 1605(a)(7)(A) .............................................................. 6, 8

        28 U.S.C. § 1608 ...................................................................... 21-22

        28 U.S.C. § 1608(b) ...................................................................... 22

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 17-19

        18 U.S.C. § 1962(a) .................................................................. 18-19

        18 U.S.C. § 1962(c) .................................................................. 18-19

        18 U.S.C. § 1962(d) .................................................................. 18-19

        18 U.S.C. § 1964(c) .................................................................. 17-18

Torture Victim Protection Act, 28 U.S.C. § 1350 note .................................... 14-15

Federal Rules of Civil Procedure:

Rule 4(j)(1) ................................................................................... 21-22

Rule 4(k)(1)(D) ............................................................................. 9-11

Rule 12(b) ....................................................................................... 1

Rule 12(b)(1) ................................................................................... 1

Rule 12(b)(2) ................................................................................. 1, 8

Rule 12(b)(5) ............................................................................. 1, 21-22

Rule 12(b)(6) ............................................................................. 1, 11-12

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ...................................... 15

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ........................... 9

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............ 16

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ...................................... 16

**Other Materials:**

4B Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u>, § 1111 (2002) .............. 22

## I.      **INTRODUCTION.**

Sheikh Saleh Al-Hussayen, a current member of one of the highest-ranking governmental bodies in the Kingdom of Saudi Arabia, and a former member of several other high-ranking governmental bodies, was named as a defendant in six of the lawsuits consolidated in this proceeding.  There appears to be no basis for plaintiffs naming him other than that he is a Muslim who has held important governmental positions relating to Islamic affairs.

Sheikh Al-Hussayen respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, (3) failure to state a claim, and (4) improper service of process.  Sheikh Al-Hussayen's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed.  He is a defendant in five other lawsuits – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Euro Brokers*, *Federal Insurance*, *New York Marine*, and *World Trade Center Properties*.

As set forth below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Sheikh Al-Hussayen's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 et seq. ("FSIA"), thereby precluding this court's jurisdiction over him.  This Court must also find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Sheikh Al-Hussayen, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.  This Court should find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state any claims against him.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Sheikh Al-Hussayen, by publication, are not only ineffective but also improper under the FSIA.

## II.     FACTUAL BACKGROUND.

Sheikh Al-Hussayen is an Islamic Law scholar and government official who has lived in Saudi Arabia for almost his entire life and has always been a citizen of the Kingdom.  See Declaration of Sheikh Saleh Al-Hussayen, at ¶ 3 (attached and incorporated hereto as Exhibit 1). Sheikh Al-Hussayen worked for the Saudi government from 1961 to 1974, first for the Ministry of Finance and National Economy (1961-1971), and then for the Council of Prime Ministers (1971-1974).  Id. at ¶ 5.  From 1974 to early 2002, Sheikh Al-Hussayen held positions and appointments with government sponsored welfare and other organizations.  Id. at ¶ 6.

In March 2002, King Fahd bin Abdulaziz al Saud appointed Sheikh Al-Hussayen, by Royal Decree, to serve as the General President of the Committee of the Two Holy Mosques.  Id. at ¶ 7.  The King is the Custodian of the Two Holy Mosques, and the Committee is under the King's supervision.  Id.  Sheikh Al-Hussayen is responsible for overseeing all administrative issues relating to the Grand Mosque and the Prophet's Mosque, including construction, renovation, transportation, and mosque administration, under the King's supervision.  Id.  Since Saudi Arabia is the location of Islam's holiest sites, which the *Hajj* pilgrims visit, the Saudi government considers the maintenance and operations of the Two Holy Mosques to be one of its most important governmental functions.  Id.

Sheikh Al-Hussayen has visited the United States on only two occasions.  Id. at ¶ 8.  The first visit was in 1978, and was for medical treatment of his mother at the Mayo Clinic.  The second visit was in August and September of 2001, for a vacation.  Id.  On this trip, after several Islamic charities learned that Sheikh Al-Hussayen was visiting the United States, they invited him to visit them, which he did.  Id.

2

Sheikh Al-Hussayen owns no real property in the United States. He also has no bank accounts or investments in the United States and does not conduct any personal business with any businesses in the United States. Id. at ¶ 9.

Sheikh Al-Hussayen has never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001. The official report of the 9/11 Commission, available online at http://www.9-11commission.gov/, makes no mention of him. He has never supported any person or organization that he has known to participate in terrorist activities. He has joined the Saudi government in its condemnation of terrorism. See Al-Hussayen Decl. (Ex. 1), at ¶ 11.

### III. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE SHEIKH AL-HUSSAYEN IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

From 1961 to the present, Sheikh Al-Hussayen has held positions within the Saudi government and its affiliated organizations. There are no specific allegations pled against him in the *Burnett II*, *Euro Brokers, Federal Insurance,* or *NY Marine* plaintiffs' complaints. The *WTC Properties* complaint expressly stated, twice, that Sheikh Al-Hussayen is the "current director of the Two Holy Mosques," thereby recognizing his governmental status. See *WTC Properties* Compl. at ¶¶ 567, 1002. Because the plaintiffs have named him as a defendant based on actions he took as a government official, this Court lacks subject matter jurisdiction over him under the Foreign Sovereign Immunities Act ("FSIA").

### A. The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable

international agreement."  28 U.S.C. § 1330(a).  The FSIA provides the sole method by which a

plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court.

Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).  A foreign state,

and its instrumentalities, "are presumed immune from United States courts' jurisdiction," and the

determination of subject matter jurisdiction must be made "at the threshold of every action."  In

re: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005).  This court

recognized that immunity under the FSIA is available to individual defendants, "to the extent

their alleged actions were performed in their official capacities."  Id. at 788.

When addressing motions to dismiss based on sovereign immunity, the court must give

"'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope

of their official duties."  Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F.

Supp. 2d 277, 287 (S.D.N.Y. 2001).  The Second Circuit held that when a defendant establishes

a prima facie case that it is a sovereign, the plaintiff has the burden of coming forward with

evidence showing that immunity should not be granted, under one of the FSIA exceptions.

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002).  If the

court finds that a foreign defendant has engaged in the alleged actions as a part of his official

government duties, and the exceptions to FSIA are inapplicable, the court must dismiss the

claims against that defendant.  Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d

Cir. 2001); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).

**B.      Sheikh Al-Hussayen is Immune from Suit Under the FSIA to the Extent that
the Allegations Against Him Concern Matters Within His Capacity As An
Official of the Saudi Government.**

Through his affidavit, Sheikh Al-Hussayen has clearly established that he is a

4

"sovereign." He has held positions of authority within the Saudi Government and its affiliated organizations since 1961. See Al-Hussayen Decl. (Ex. 1), at ¶¶ 5-7. Therefore, he was an "instrumentality" of the Saudi government for purposes of all acts he undertook in his official capacity during that period of time. See 28 U.S.C. § 1603(b).

The *Burnett II* and *Euro Brokers* plaintiffs pled no allegations against him, as he is listed only in the caption, and plaintiffs did not plead any specific allegations about him, other than generic allegations that hundreds of defendants acted in concert. In *Federal Insurance* and *New York Marine*, plaintiffs pled no specific allegations against him, and merely listed him as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45. As he was a governmental official during the entire period in question, the plaintiffs seem to be claiming that whatever wrongful actions he took were as a government official. He is, therefore, entitled to immunity under the FSIA. Robinson, 269 F.3d at 140-41.

The *WTC Properties* complaint sets forth various allegations, most relating to the activities of his nephew, Sami Al-Hussayen, a graduate student, and a Michigan charity, the Islamic Assembly of North America ("IANA"). See *WTC Properties* Compl., at ¶¶ 511, 519, 567, 1002, 1003. However, this complaint does not plead any facts showing that Sheikh Al-Hussayen knew that his donations to IANA, or his involvement with his nephew or IANA, were in furtherance of terrorism. Moreover, an Idaho jury acquitted the nephew of all terrorism charges in a federal prosecution, upon which the prosecutors dismissed the remaining visa counts against him, and the U.S. government has not designated either the nephew or IANA as

terrorists.  See United States v. Sami Al-Hussayen, Cr. No. 03-048, Verdict (June 10, 2004);

Order of Dismissal (July 2, 2004) (attached hereto as Exhibits 2-3).  The only remaining

allegation is that Sheikh Al-Hussayen coincidentally stayed in the same hotel in Virginia as did

several of the hijackers, and was interviewed by the FBI, id. at ¶¶ 1003-1004, but plaintiffs did

not plead that he knew the hijackers, let alone met them, and plaintiffs ignore the fact that the

FBI allowed him to resume his travels after the interview.  See Saleh Al-Hussayen Decl. (Ex. 1),

at ¶ 8.

## C.    None of the FSIA Exceptions Applies to Sheikh Al-Hussayen.

To the extent that plaintiffs complain of actions that Sheikh Al-Hussayen took in his

official capacity, plaintiffs must come forward with evidence to show that immunity should not

be granted, under one of FSIA's three exceptions.  Plaintiffs cite 28 U.S.C. § 1605(a)(2) (the

"commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort"

exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Under

this Court's January 18, 2005 decision, none of these exceptions applies to Sheikh Al-Hussayen.

### 1.    The Commercial Activity Exception Is Not Applicable.

Sheikh Al-Hussayen did not engage in any commercial activities during his governmental

service, since 1961.  The only allegations raised by any of the plaintiffs relate to his donations to,

or meetings with, charities.  This Court has already held that:  "To the extent any Plaintiffs'

claims are based on a Defendant's contributions to charities, those acts cannot be considered

commercial."  In re Sept. 11, 349 F. Supp. 2d at 793.  Further, plaintiffs have not pled any facts

showing that he was involved in a commercial activity that "cause[d] a direct effect in the United

States," as Section 1605(a)(2) requires.  Critically, "'an effect is direct if it follows as an

6

immediate consequence of the defendant's activity.'"   Virtual Countries v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (quoting Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992) (emphasis in original)).   Therefore, this FSIA exception is inapplicable.

### 2.   The Non-Commercial Tort Exception Is Also Inapplicable.

The second exception to FSIA immunity is for matters "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).  Plaintiffs "must come forward with evidence demonstrating that the [defendant's] tortious acts or omissions caused Plaintiffs' injuries."  In re Sept. 11, 349 F. Supp. 2d at 797.  In order to satisfy this standard, the plaintiffs must show proximate causation.  This Court previously held, in granting the motions to dismiss for lack of subject matter jurisdiction of Prince Sultan and Prince Turki, that:

> [Plaintiffs] have not, however, pleaded facts to support an inference that the Princes were sufficiently close to the terrorists' illegal activities to satisfy *Halberstam* or New York law.  Similarly, Plaintiffs have not pleaded facts to suggest the Princes knew they were making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists to satisfy *Boim* or New York law. . . . there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity.  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.  Here, there are no such factual bases presented, there are only conclusions.

Id. at 800-01.

This Court must find that this exception similarly does not apply here, since the plaintiffs have failed to allege facts showing that Sheikh Al-Hussayen committed tortious acts, or

knowingly supported terrorists.  The only specific allegations pled in any of the complaints are those in the *WTC Properties* complaint, which merely alleges that Sheikh Al-Hussayen made donations, directly or indirectly to the IANA, met with several charities in this country, and coincidentally stayed in the same hotel as did several of the hijackers.  But even those allegations fail to identify a single action knowingly taken by Sheikh Al-Hussayen that was tortious, or taken to support terrorism.

The tort exception to the FSIA is, therefore clearly inapplicable.

**3.     The State-Sponsored Terrorism Exception Is Also Inapplicable.**

Finally, to the extent that the plaintiffs intend to claim that Sheikh Al-Hussayen provided material support to terrorists who caused their injuries, the state-sponsored tort exception is inapplicable.  Congress explicitly assigned material support claims to another exception, 28 U.S.C. § 1605(a)(7)(A).  As this Court has already determined, that "material support" exception does not apply, because Saudi Arabia has not been designated as a state sponsor of terrorism, a prerequisite for the application of this exception.  *In re* Sept. 11, 349 F. Supp. 2d at 794.

**IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER SHEIKH AL-HUSSAYEN, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.**

This Court must dismiss plaintiffs' complaints against Sheikh Al-Hussayen, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  The burden is on plaintiffs to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction.  *In re* Sept. 11, 349 F.

Supp. 2d at 804; Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).  To

the extent that plaintiffs allege that Sheikh Al-Hussayen took acts in his personal capacity, this

Court's clearly articulated analysis of personal jurisdiction demonstrates that plaintiffs'

conclusory allegations fail to meet the standard for the exercise of personal jurisdiction.

### A.        The New York Long-Arm Statute Is Not Satisfied.

First, the personal jurisdiction requirements of the New York long-arm statute, N.Y.

C.P.L.R. § 302(a)(2) (McKinney 2002), are not satisfied.  As this Court held, merely alleging

that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the

attacks of September 11," is insufficient to establish personal jurisdiction through the New York

long-arm statute on a conspiracy theory.  In re Sept. 11, 349 F. Supp. 2d at 805.  Here, plaintiffs'

complaints fail to "allege any specific facts" that would allow the reasonable inference that

Sheikh Al-Hussayen "directed, controlled, or requested al Qaeda to undertake its terrorist

activities."  Id. at 806.  Nor do plaintiffs make "any specific allegations of [his] knowledge of or

consent to those activities."  Id.  Indeed, plaintiffs state only conclusions that somehow Sheikh

Al-Hussayen acted in concert with several hundred other defendants, or made donations to the

IANA, and had meetings with his nephew and several charity officers.  Plaintiffs allege no facts

from which this Court can infer Sheikh Al-Hussayen had any control or knowledge of al Qaeda

and its activities.

### B.        Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.

Second, personal jurisdiction over Sheikh Al-Hussayen, pursuant to Rule 4(k), under

either a "general jurisdiction" or a "specific jurisdiction" theory, would not satisfy the

requirements of due process, which require some level of minimum contacts with this forum.  In

*re* Sept. 11, 349 F. Supp. 2d at 810-11. For this Court to exercise "general" personal jurisdiction

over a non-resident defendant, the defendant's contacts with the forum must be "continuous and

systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Here, Sheikh Al-Hussayen's limited contacts with the United States, see Al-Hussayen Decl. (Ex.

1), at ¶¶ 8-9, are "not sufficiently 'systematic and continuous' to maintain general jurisdiction"

over him. *In re* Sept. 11, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed based on his

limited contacts with the United States).  The Second Circuit has held that even several visits a

year to the United States are insufficient to assert personal jurisdiction over a non-resident

defendant.  See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13

(2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); see also Jacobs

v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y.

2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for

jurisdiction").  Here, plaintiffs allege only one visit by Sheikh Al-Hussayen to the United States,

which is well below the level deemed insufficient for the exercise of general jurisdiction.

Similarly, for this Court to exercise personal jurisdiction over Sheikh Al-Hussayen under

a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that

he was a "primary participant in intentional wrongdoing." *In re* Magnetic Audiotape Antitrust

Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).

If the defendant was not personally involved with the alleged torts that caused the plaintiffs'

injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be

supported.  See *In re* Sept. 11, 349 F. Supp. 2d at 809 (quoting *In re* Magnetic Audiotape); Time,

Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22,

2003).  Here, plaintiffs have failed to plead any facts to support an allegation that Sheikh

Al-Hussayen was personally involved, or a primary participant, in the September 11 attacks, so

this Court cannot exercise personal jurisdiction over him under a "specific jurisdiction" theory.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed

to "make a *prima facie* showing of each Defendant's personal or direct participation in the

conduct giving rise to Plaintiffs' injuries."  <u>In re</u> Sept. 11, 349 F. Supp. 2d  at 809.  Instead,

plaintiffs merely made "conclusory allegations" that Sheikh Al-Hussayen "aided and abetted

terrorists," but without pleading any facts to support an allegation that he "purposefully directed

his activities at this forum by donating to charities that he knew at the time supported

international terrorism."  <u>Id.</u> at 813 (dismissing Prince Sultan for lack of personal jurisdiction,

because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan

purposefully directed his activities at this forum").

Therefore, this Court must find, as it did in dismissing Prince Sultan and Prince Turki,

that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction

over Sheikh Al-Hussayen.

### V.     THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST SHEIKH AL-HUSSAYEN, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs

have not pled factual allegations against Sheikh Al-Hussayen, so that dismissal for failure to

state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim,

where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The Second

Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations

unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)."  <u>De

Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996).  Here, of course, there is nothing

more than "conclusory allegations" pled against Sheikh Al-Hussayen.

The plaintiffs brought the following claims against Sheikh Al-Hussayen, which are

legally defective:  (1) a tort claim under the Anti-Terrorism Act (*Burnett II, Federal Insurance,

NY Marine,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Burnett

II* and *Federal Insurance*); (3) a claim under the Alien Tort Claims Act (*Burnett II*); and (4) Civil

RICO claims (*Burnett, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival

(*Burnett II* and *Federal Insurance*); (2) conspiracy, and aiding and abetting (*Burnett II, Federal

Insurance, NY Marine,* and *WTC Properties*); (3) assault and battery (*Federal Insurance*); and

(4) property destruction and damage (*Euro Brokers, Federal Insurance, NY Marine,* and *WTC

Properties*).  The *Burnett II* and *Federal Insurance* plaintiffs brought negligence claims and

negligent and intentional infliction of emotional distress claims.  All plaintiffs brought separate

claims for punitive damages.

### A.    PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT SHEIKH AL-HUSSAYEN'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for

their intentional tort claims since they have not pled sufficient facts showing that Sheikh

Al-Hussayen's acts proximately caused plaintiffs' injuries.  Plaintiffs have alleged in a

conclusory manner that all defendants provided support to al Qaeda, which led to the September 11 attacks.  As there are 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 201 defendants in *Euro Brokers*, 581 defendants in *Federal Insurance*, 561 defendants in *NY Marine*, and 201 defendants in *WTC Properties*, there is no way for Sheikh Al-Hussayen to know what plaintiffs are alleging is his wrongful conduct.

Under Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re* Sept. 11, 349 F. Supp. 2d at 826.  Hence, in order to impose tort liability on Sheikh Al-Hussayen through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein"). Plaintiffs have not alleged anywhere in their various complaints that Sheikh Al-Hussayen knew that other defendants were acting in a wrongful manner, or that he acted "in pursuance of a common plan or design to commit a tortious act."

13

The *Burnett, Euro Brokers, Federal Insurance,* and *NY Marine* plaintiffs' listing of Sheikh Al-Hussayen in the captions, without pleading any facts, is insufficient to meet the standards set forth by the Second Circuit in <u>Pittman</u>, and this Court's prior ruling.  Hence, the absence of specific allegations regarding Sheikh Al-Hussayen requires this Court to find that plaintiffs cannot use concerted liability theories as a basis for their tort claims against him.  Nor can plaintiffs simply "lump" Sheikh Al-Hussayen with hundreds of other defendants in an attempt to plead allegations in a collective manner.  <u>See, e.g.</u>, <u>Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.</u>, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

This Court should dismiss the plaintiffs' tort counts against Sheikh Al-Hussayen because plaintiffs have failed to state a cause of action that his acts directly and intentionally injured plaintiffs, thereby precluding them from recovering against him under any direct tort theory, <u>i.e.</u>, the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; the New York wrongful death and survival statutes; and common-law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.    PLAINTIFFS' CLAIMS AGAINST SHEIKH AL-HUSSAYEN UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE <u>DISMISSED AS A MATTER OF LAW.</u>**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)    This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Burnett* Count 1 and *Federal Insurance* Count 6), because plaintiffs

14

did not plead any facts to support an allegation that Sheikh Al-Hussayen "subject[ed] an individual to torture or extrajudicial killing," as required to impose liability. *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.  The *Burnett II* (New York) complaint was filed on August 1, 2003, and the *Federal Insurance* complaint was filed on September 10, 2003, both more than one year after September 11, 2001. Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not an alleged lack of knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5; *WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that Sheikh Al-Hussayen engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th

15

Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  Plaintiffs' minimal allegations fail to satisfy this pleading requirement.

(4)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Burnett* Counts 5 and 7; *Federal Insurance* Counts 2-3), because plaintiffs have not pled any facts to support an allegation that Sheikh Al-Hussayen "caused the decedent's death," or that he committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that Sheikh Al-Hussayen "supported, aided and abetted, or conspired with the September 11 terrorists."  *In re* Sept. 11, 349 F. Supp. 2d at 829.

(5)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Burnett* Count 8 and *Federal Insurance* Count 5) and property destruction tort claims (*Euro Brokers* Counts 1-2, 6, 8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Sheikh Al-Hussayen's acts caused plaintiffs' injuries, as required for these torts. Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their

16

property damage claims, since plaintiffs have not pled facts sufficient to show that Sheikh

Al-Hussayen associated himself with, and participated in, the conspiracy resulting in the

property damage, let alone that the property damage was a foreseeable act done in furtherance of

any of his unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d

1492, 1499 (1st Cir. 1997).[1]  Finally, plaintiffs' "bare legal conclusions are not sufficient" to

state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833,

837 (Sup. Ct. 2000).

> **C.**   **THE *BURNETT* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.**

This Court must dismiss the RICO claims brought by the *Burnett* personal injury

plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The

*Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* plaintiffs instead decide to pursue their RICO claims against Sheikh

Al-Hussayen, this Court must find that as personal injury plaintiffs, they lack standing to bring

RICO claims, which are limited by statute to "[a]ny person injured in his business or property."

18 U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal injury plaintiffs cannot

seek recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip

Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business

or property'"); see also Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 101-02

(D.D.C. 2003) (dismissing plaintiffs' RICO claims for lack of standing); Jerry Kubecka, Inc. v.

---

[1] Sheikh Al-Hussayen has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  The plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)"); von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO.").

The Ninth Circuit's recent decision in Diaz, referenced by the *O'Neill* plaintiffs in their supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at *3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly addressed the concerns raised by the dissent that RICO liability would somehow extend to personal injuries, on the grounds that "our approach does not create RICO liability for every loss of wages resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on this Court – the personal injury plaintiffs still lack RICO standing.

**D.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST SHEIKH AL-HUSSAYEN FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that plaintiffs who seek to bring RICO claims against Sheikh Al-Hussayen have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In*

18

*re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir.

1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone

sufficient facts, showing that Sheikh Al-Hussayen had the requisite level of directing the

operation and management of the "Al Qaeda enterprise." As this Court held, merely alleging

participation or assistance is insufficient absent pleading facts showing that an individual

defendant engaged in "active management or operation" to state a Section 1962(c) claim. Id. at

827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Sheikh Al-Hussayen since

the plaintiffs have done nothing to show that each individual defendant conspired with the other

defendants to engage in an enterprise, or that he was a "central figure in the underlying

schemes." Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d)

claim). Plaintiffs do not "allege some factual basis for a finding of a conscious agreement

among the defendants" as required to state a Section 1962(d) RICO claim. Id. at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Sheikh Al-Hussayen

under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his

investment of the enterprise's income; that he engaged in an enterprise, or conspired with others

to do so; or that he actively managed and operated the alleged enterprise, or was a central figure

in the alleged scheme.

### E. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST SHEIKH AL-HUSSAYEN BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett, Federal Insurance*, and *NY Marine* plaintiffs'

19

negligence and negligent infliction of emotional distress claims against Sheikh Al-Hussayen because he owed no duty of care to plaintiffs.  As this Court has recognized in dismissing the negligence claims by the moving defendants, it is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  <u>In re</u> Sept. 11, 349 F. Supp. 2d at 830-31 (citing <u>King v. Crossland Savings Bank</u>, 111 F.3d 251, 259 (2d Cir. 1997); <u>Palsgraf v. Long Island R.R. Co.</u>, 248 N.Y. 339, 342 (1928)); <u>accord</u> <u>Burnett</u>, 274 F. Supp. 2d at 108-09 (same).

Here, plaintiffs have alleged only conclusory allegations that "all defendants were under a general duty," <i>Burnett</i> Compl. ¶ 666, or that defendants "breached duties of care owed to" plaintiffs and the employees of plaintiffs' insureds.  <u>See</u> <i>Federal Insurance</i> Compl. ¶ 642; <i>NY Marine</i> Compl., at ¶ 79; <i>NY Marine</i> Compl. ¶ 79.  However, Sheikh Al-Hussayen had no general duty to "control the conduct of third persons to prevent them from causing injury to others." <u>McCarthy v. Olin Corp.</u>, 119 F.3d 148, 156-57 (2d Cir. 1997).

### F.    PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, brought against Sheikh Al-Hussayen by all plaintiffs, because no independent cause of action exists under New York law for this claim.  It is settled law that punitive damages are merely a form of relief, not an independent tort cause of action.  <u>See</u> <u>Smith v. County of Erie</u>, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); <u>Mayes v. UVI Holdings, Inc.</u>, 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

### G.    PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett* Count 9, *Federal Insurance* Count 7, *NY Marine* Count 4, and *WTC Properties* Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Furthermore, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

### VI.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST SHEIKH AL-HUSSAYEN, PURSUANT TO RULE 12(b)(5), FED. R. CIV. P., FOR IMPROPER SERVICE OF PROCESS.

This Court must find that plaintiffs' attempts to serve Sheikh Al-Hussayen by publication in several newspapers is improper as a matter of law.  It is settled law that sovereign defendants can only be served pursuant to the specific service of process provision of FSIA, 28 U.S.C. § 1608, which trumps the general service provisions of Rule 4, Fed. R. Civ. P.  Indeed, Rule 4(j)(1), Fed. R. Civ. P., expressly provides that:  "Service upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608."

21

The courts have held that Section 1608 is the exclusive means for effecting service of process on such defendants.  See Seramur v. Saudi Arabian Airlines, 934 F. Supp. 48, 51 (E.D.N.Y. 1996) ("Section 1608(b) provides the exclusive means by which service of process may be effected upon Respondent."); see also 4B Wright & Miller, Federal Practice and Procedure: Civil 3d, § 1111, at 123 (2002) (same).  Section 1608(b), which applies to instrumentalities of foreign states, including individuals, sets forth, in precise detail, three alternative methods for service of process, yet plaintiffs have not complied with any of these three methods.

This Court should also reject plaintiffs' argument that because Sheikh Al-Hussayen has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267 (2d Cir. 1981).  Further, the Second Circuit has held that "actual notice" is no substitute for proper service.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper as it did not satisfy the specific requirements of Section 1608(b) of FSIA.  Nor can service by publication in newspapers that are either banned in Saudi Arabia, or have an exceedingly limited circulation, be considered sufficient to effect service of process on Sheikh Al-Hussayen.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Sheikh Saleh Al-Hussayen respectfully requests that this Court grant his Motion to Dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,


/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Saleh Al-Hussayen

Dated:  September 6, 2005

23

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat
_____

Alan R. Kabat