**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001       )        No. 03 MDL 1570 (RCC)
                                                    )        ECF Case
_____)

This document relates to:

      BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No.
            03-CV-5738;

      CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-
            CV-05970;

      EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et
            al.*, Case No. 04-CV-07279;

      FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;

      NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-
            CV-6105;

      TREMSKY, *et al.* v. OSAMA BIN LADEN, *et al.*, Case No. 02-CV-7300; and

      WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
            DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

**MEMORANDUM OF LAW IN SUPPORT OF
DR. ABDULLAH BIN SALEH AL-OBAID'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Saleh Al-Obaid

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.     Introduction ................................................................................. 1

II.    Factual Background ...................................................................... 2

III.   This Court Lacks Subject Matter Jurisdiction Because Dr. Al-Obaid Is Immune
       from Suit under the Foreign Sovereign Immunities Act .............................................. 6

       A.    The Standard of Review .............................................................. 6

       B.    Dr. Al-Obaid Is Immune from Suit Under the FSIA to the Extent that the
             Allegations Against Him Concern Matters Within His Capacity as an
             Official of the Saudi Government .................................................... 7

       C.    None of the FSIA Exceptions Applies to Dr. Al-Obaid .................................. 8

             1.    The Commercial Activities Exception Is Not Applicable .................. 6

             2.    The Non-Commercial Tort Exception Is Also Inapplicable .............. 8

             3.    The State-Sponsored Terrorism Except Is Also Inapplicable ............ 9

IV.    This Court Lacks Personal Jurisdiction over Dr. Al-Obaid, Pursuant to Rule
       4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute .............................. 10

       A.    The New York Long-Arm Statute Is Not Satisfied ......................................... 11

       B.    Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied........ 12

V.     This Court must Dismiss Plaintiffs' Complaints Against Dr. Al-Obaid, Pursuant
       to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim ................................. 14

       A.    Plaintiffs Fail to Plead Sufficient Facts Showing That Dr. Al-Obaid's Acts
             Proximately Caused Plaintiffs' Injuries .......................................................... 15

       B.    Plaintiffs' Claims Against Dr. Al-Obaid Under the Torture Victim
             Protection Act, the Anti-Terrorism Act, and Plaintiffs' Common Law
             Claims, Must be Dismissed as a Matter of Law ........ .................................... 17

       C.    The *Burnett* and *Tremsky* Plaintiffs Lack Standing to Maintain Their RICO
             Claims Because Their Injuries are Personal Injuries, Not Injuries to Business
             or Property ....................................................................................... 19

i

D.    Plaintiffs' Allegations are Insufficient to Establish a Cause of Action Against Dr. Al-Obaid for Plaintiffs' RICO Claims ...................................... 20

E.    Plaintiffs' Allegations are Insufficient to Make out Negligence Claims Against Dr. Al-Obaid Because He Owed No Duty of Care to Plaintiffs ....... 22

F.    Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No Independent Cause of Action Exists .............................................................. 23

G.    Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No Independent Cause of Action Exists .............................................................. 23

VI.   This Court Must Dismiss Plaintiffs' Complaints Against Dr. Al-Obaid, Pursuant to Rule 12(b)(5), Fed. R. Civ. P., for Improper Service of Process ......................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
   572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................... 23

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
   No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 15-16

Argentine Republic v. Ameranda Hess Shipping Corp.,
   488 U.S. 428 (1989) ...................................................................................... 6

Arndt v. UBS AG,
   342 F. Supp. 2d 132 (E.D.N.Y. 2004) ............................................................. 17

Aquascutum of London, Inc. v. S.S. American Champion,
   426 F.2d 205 (2d Cir. 1970) .......................................................................... 12

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   171 F.3d 779 (2d Cir. 1999) .......................................................................... 11

Boim v. Quranic Literacy Inst.,
   291 F.3d 1000 (7th Cir. 2002) ....................................................................... 18

Burnett v. Al Baraka Invest. & Devel. Corp.,
   274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................ 20, 22

Chrysler Capital Corp. v. Century Power Corp.,
   778 F. Supp. 1260 (S.D.N.Y. 1991) ............................................................... 23

Conley v. Gibson,
   355 U.S. 41 (1957) ....................................................................................... 14

Diaz v. Gates,
   No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*) ............... 20

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) .............................................................................. 14

First Nationwide Bank v. Gelt Funding Corp.,
   27 F.3d 763 (2d Cir. 1994) ............................................................................ 16

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ................................................................. 23

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ........................................................................... 12

Howell v. New York Post Co.,
    81 N.Y.2d 115, N.E.2d 702 (1993) ................................................... 18-19

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ............................................................... 12

In re: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................... passim

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................ 12

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) ..................................................... 20

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ....................................................... 23

Karabu Corp. v. Gitner,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) ...................................................13

Kinetic Instruments, Inc. v. Lares,
    802 F. Supp. 976 (S.D.N.Y. 1992) ..................................................... 13

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................... 22

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ............................................................... 20

Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ................................................. 7

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) ................................................... 16

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ................................................. 23

iv

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ................................................................ 22

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................. 11

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) ........................................................ 25

NAACP v. AcuSport, Inc.,
    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ................................................. 22

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) ................................................................ 25

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) .................................................................. 21

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ........................................................................... 22

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ..................................................... 19

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ...................................................... 19

Pilates, Inc. v. Pilates Institute, Inc.,
    891 F. Supp. 175 (S.D.N.Y. 1995) ...................................................... 13

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ................................................................ 16

Republic of Argentina v. Weltover, Inc.,
    504 U.S. 607 (1992) .............................................................................. 9

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001) ........................................................ 7-8, 10

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ........................................................... 12

Seramur v. Saudi Arabian Airlines,
    934 F. Supp. 48 (E.D.N.Y. 1996) ....................................................... 24

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) .................................................................... 23

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ................................................................ 18

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ..................................................................... 19

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ....... 13

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ............................................................................ 19

Virtual Countries, Inc. v. Republic of South Africa,
    300 F.3d 230 (2d Cir. 2002) ............................................................................ 7, 9

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) ................................................................... 20

**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................................ 17-18

Foreign Sovereign Immunities Act of 1967, 28 U.S.C. § 1602 et seq. ............................ *passim*

    28 U.S.C. § 1330(a) ............................................................................................. 6

    28 U.S.C. § 1603(b) ............................................................................................. 7

    28 U.S.C. § 1605(a)(2) ...................................................................................... 8-9

    28 U.S.C. § 1605(a)(5) ..................................................................................... 8-10

    28 U.S.C. § 1605(a)(7)(A) ............................................................................... 8, 10

    28 U.S.C. § 1608 ................................................................................................. 24

    28 U.S.C. § 1608(b) ............................................................................................ 24

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 19-22

18 U.S.C. § 1962(a) ............................................................................... 21

18 U.S.C. § 1962(c) ............................................................................... 21

18 U.S.C. § 1962(d) ............................................................................... 21

18 U.S.C. § 1964(c) ............................................................................... 20

Torture Victim Protection Act, 28 U.S.C. § 1350 note ................................ 17

Federal Rules of Civil Procedure:

Rule 4(j)(1) ..................................................................................... 24

Rule 4(k)(1)(D) .......................................................................... 12-14

Rule 12(b) ......................................................................................... 1

Rule 12(b)(1) ..................................................................................... 1

Rule 12(b)(2) ............................................................................... 1, 10

Rule 12(b)(5) ..................................................................................... 1

Rule 12(b)(6) ......................................................................... 1, 14-16

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ................................................. 17

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ......................................... 11

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............................ 18

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ................................................... 18

**Other Materials:**

4B Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u>, § 1111 (2002) .............. 24

I.     **INTRODUCTION.**

Dr. Abdullah bin Saleh Al-Obaid, currently the Minister of Education, a cabinet level position in the Kingdom of Saudi Arabia, and a former member of several other high-ranking governmental bodies since 1980, was named as a defendant in ten of the lawsuits consolidated in this proceeding.  There appears to be no basis for plaintiffs naming him other than that he is a Muslim who has held a series of important governmental positions relating to Islamic affairs.

Dr. Al-Obaid respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) sovereign immunity, (2) lack of personal jurisdiction, (3) failure to state a claim, and (4) improper service of process.  Dr. Al-Obaid's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed.  Plaintiffs then dismissed Dr. Al-Obaid from *Ashton* and *Salvo*.  <u>See</u> *Ashton* Dismissal (Docket No. 230) (June 10, 2004); *Salvo* Dismissal (Docket No. 633) (Jan. 19, 2005).  As a result of these dismissals, he is a defendant in only seven other lawsuits – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Continental Casualty*, *Euro Brokers*, *Federal Insurance*, *New York Marine*, *Tremsky*, and *WTC Properties*.

As set forth below, this Court must find, pursuant to Rule 12(b)(1), Fed. R. Civ. P., that Dr. Al-Obaid's high-level governmental positions entitle him to sovereign immunity under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 <u>et seq.</u> ("FSIA"), thereby precluding this court's jurisdiction over him.  This Court must also find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it does not have personal jurisdiction over Dr. Al-Obaid, a foreign individual whose minimal contacts with the United States were either in his official capacity, or are unrelated to plaintiffs' allegations.  This Court should find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state any claims against him.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempt to serve Dr. Al-Obaid, by

publication, are ineffective and, also, improper under the FSIA.

## II.    FACTUAL BACKGROUND.

Dr. Abdullah bin Saleh Al-Obaid has lived in Saudi Arabia almost his entire life and is a

citizen of the Kingdom.  See Declaration of Abdullah bin Salem Al-Obaid, at ¶ 3 ("Decl.")

(attached and incorporated hereto as Exhibit 1).  Dr. Al-Obaid has continuously held a series of

official positions within the Saudi government for 25 years.  Id. at ¶¶ 4-7.  He assumed his first

official position beginning in 1980, when he became Assistant Deputy and Vice President of the

Committee of the Two Holy Mosques, a government agency responsible for the maintenance and

operation of the Grand Mosque and the Prophet's Mosque.  Id. at ¶ 4.  From 1981 to 1982, he

served as Vice President of the Islamic University, Al-Madina Al-Munawarah, Saudi Arabia.  Id.

The Islamic University was founded by the government of Saudi Arabia, through Royal Decree.

From 1982 to 1995, by Royal Decree, he served as President of that University.  Id.

In 1995,  Dr. Al-Obaid became one of eight members of the Supreme Council for Islamic

Affairs, established by King Fahd by Royal Decree No. 296/8 (1994).[1]  Id. at ¶ 5.  Around the

same time, in 1995, Dr. Al-Obaid became the Secretary-General of the Muslim World League, a

charity that is sponsored and financially supported by the Saudi government.  Id.  He held both

positions until 2000.  Id.  In his capacity as Secretary-General, Dr. Al-Obaid also served as an

officer of the Rabita Trust, a charity that is partly owned by the Muslim World League, and

---

[1] Prince Sultan is the Chairman of the Supreme Council for Islamic Affairs.  As set forth in greater detail in Prince Sultan's Motion to Dismiss filed in *Burnett*, which Dr. Al-Obaid incorporates by reference, the Supreme Council is an arm of the Saudi government, and makes discretionary recommendations to the King that, if approved, become acts or policies of the Saudi government.  See Declaration of Abdulaziz H. Al Fahad, at ¶¶ 7-11 (Apr. 6, 2003) (attached and incorporated herein as Exhibit 2).  The Supreme Council has five enumerated functions:  "(1) planning and oversight of Saudi Islamic activities abroad ...; (2) care for Muslim minorities and attention to their conditions; (3) introduction of Islam; (4) promoting of contacts between the Kingdom and Muslims abroad; [and] (5) promoting the spreading of Islamic culture and the Arabic language abroad."  Id. at ¶ 9.

partly owned by the government of Pakistan.  Id.

In 2001, Dr. Al-Obaid was appointed by Royal Decree to the Saudi Majlis-al-Shura, which is the legislative body of the Saudi government, equivalent to a Parliament in other countries.  Id. at ¶ 6.  He was one of eleven (11) members of the Committee of Islamic Affairs. Id.  The Majlis-al-Shura's function is to advise the King and his deputies on all issues of importance to the Kingdom.  Id.  Its recommendations, if adopted, become governmental policy. The Committee of Islamic Affairs' function emphasizes all issues relating to Islam and the government's Islamic activities.  Id.

In March 2004, Dr. Al-Obaid was appointed by Royal Decree to be a founding member of the National Human Rights Association, a new entity.  Id. at ¶ 7.  At its first meeting, held in the Shoura Council headquarters in Riyadh, Dr. Al-Obaid was chosen to serve as Chairman by the Association's forty other members.  Id.

Most recently, in February 2005, Dr. Al-Obaid was appointed by Royal Decree to join the Council of Ministers as the Minister of Education for Saudi Arabia, a cabinet-level policy making position.  See Embassy of Saudi Arabia, "Cabinet Reshuffle Affects Four Ministries" (Feb. 8, 2005); "The Council of Ministers" (Aug. 2005) (attached hereto as Exhibits 3-4).

Dr. Al-Obaid has visited the United States on several occasions since 1975, most recently in 2002.  See Al-Obaid Decl. (Ex. 1), at ¶ 8.  In his official capacity as a member of the Supreme Council for Islamic Affairs and Secretary-General of the Muslim World League, he has made official visits to various offices of the Muslim World League around the world, including the office in the United States.  Id.  Dr. Al-Obaid does not own any real property in the United States or have any bank accounts or investments in the United States.  Id. at ¶ 9.  Nor does he conduct

any personal business with any businesses in the United States.  Id.

Dr. Al-Obaid has never supported the taking of innocent life and believes that there is no justification for the tragic attacks of September 11, 2001.  Id. at ¶ 11.  He has never supported any person or organization that he has known to participate in terrorist activities.  He was interviewed on television after the September 11 attacks, where he condemned them.  Id.

The plaintiffs' complaints contain a series of vague allegations concerning Dr. Al-Obaid, through which an contorted effort is made to link him to terrorism.

Plaintiffs contend that Dr. Al-Obaid and several other individuals were "co-conspirators, material sponsors, and/or aiders and abettors and members of the terrorist enterprise of the International Islamic Relief Organization," a subsidiary of the Muslim World League.  See Burnett Compl., ¶ 248; Continental Casualty Compl., ¶ 454; Tremsky Compl., ¶ 137; WTC Properties Compl., ¶¶ 385, 417.  However, Dr. Al-Obaid was not involved with IIRO's day-to-day operations or activities, and had no knowledge of any IIRO activities that were terrorist activities, either in his role as Secretary General of the Muslim World League or in any position that he held within the Saudi government.[2]  See Al-Obaid Decl. (Ex. 1), at ¶ 12.

Plaintiffs also contend that Dr. Al-Obaid was one of several "co-conspirators, aiders and abettors of the Muslim World League."  See Burnett Compl., ¶ 260; Continental Casualty Compl., ¶ 466; Tremsky Compl., ¶ 149; WTC Properties Compl., ¶ 434.  Dr. Al-Obaid had no knowledge of any activities of the Muslim World League that were terrorist activities.  See

---

[2] Similarly, plaintiffs contend that Dr. Al-Obaid was one of three "officers at the Virginia office" of the Muslim World League.  See Burnett Compl., ¶ 251; Continental Casualty Compl., ¶ 457; Tremsky Compl., ¶ 140; WTC Properties Compl., ¶ 425.  During his tenure as Secretary-General of the Muslim World League, from 1995 to 2000, Dr. Al-Obaid served in an ex officio capacity with several of its foreign offices, but was not responsible for the day-to-day operations or activities of the Virginia office.  See Al-Obaid Decl. (Ex. 1), at ¶ 13.

Al-Obaid Decl. (Ex. 1), at ¶ 13.

Plaintiffs allege that the Rabita Trust "is connected to the SAAR Network through two officers," including Dr. Al-Obaid.  See *Burnett* Compl., ¶ 273; *Continental Casualty* Compl., ¶ 550; *Tremsky* Compl., ¶ 162; *WTC Properties* Compl., ¶ 448; cf. *Euro Brokers* Compl., ¶ 53.  As noted, Dr. Al-Obaid served as an officer of the Rabita Trust in his capacity as Secretary-General of the Muslim World League.  He was not, however, involved in the day-to-day operations or activities of the so-called "SAAR Network" or its components, and denies any knowledge of any activities of that "network" that were terrorist activities.  See Al-Obaid Decl. (Ex. 1), at ¶ 14.

Plaintiffs incorrectly state that Dr. Al-Obaid runs "one of the al-Rajhi family's largest corporations" or "businesses," the "al-Watania Poultry in Saudi Arabia."  See *Burnett* Compl., ¶¶ 252, 275; *Continental Casualty* Compl., ¶¶ 458, 552; *Federal Insurance* ¶ 213; *Tremsky* Compl., ¶¶ 141, 164; *WTC Properties* Compl., ¶¶ 215, 426, 450.  In fact, Dr. Al-Obaid never had any involvement with any poultry business.[3]  See Al-Obaid Decl. (Ex. 1), at ¶ 15.

The *Federal Insurance* and *WTC Properties* plaintiffs list Dr. Al-Obaid as an officer of a company called Sanabell al-Kheer or Sana-Bell.  See *Federal Insurance* Compl., at ¶ 213; *WTC Properties* Compl., at ¶¶ 220, 401-402, 894-895.  However, plaintiffs do not plead that he knowingly took any actions in that capacity intended to support terrorists.

Finally, the *Federal Insurance* and *NY Marine* plaintiffs list Dr. Al-Obaid as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that generic

---

[3] It appears that plaintiffs have confused Dr. Al-Obaid with someone else who has a similar name and was formerly a Deputy Minister of Agriculture in Saudi Arabia.

allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE DR. AL-OBAID IS IMMUNE FROM SUIT UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

From 1980 to the present, Dr. Al-Obaid has held positions within the Saudi government and its affiliated organizations, and is currently the Minister of Education.  There are no specific allegations pled against him in the *NY Marine* plaintiffs' complaint.  The allegations in the remaining complaints, to the extent that they are not based on a case of mistaken identity, appear to relate to actions he took in his capacity as a Saudi government official.  Because plaintiffs named him as a defendant based on actions he took as a government official, this Court lacks subject matter jurisdiction over him under the Foreign Sovereign Immunities Act ("FSIA").

### A.   The Standard of Review.

The FSIA confers original jurisdiction in district courts over claims for relief "with respect to which the foreign state is not entitled to immunity under [the FSIA] or any applicable international agreement."  28 U.S.C. § 1330(a).  The FSIA provides the sole method by which a plaintiff can assert subject matter jurisdiction over a foreign sovereign in federal court. Argentine Republic v. Ameranda Hess Shipping Corp., 488 U.S. 428 (1989).  A foreign state, and its instrumentalities, "are presumed immune from United States courts' jurisdiction," and the determination of subject matter jurisdiction must be made "at the threshold of every action."  *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005).  This court recognized that immunity under the FSIA is available to individual defendants, "to the extent their alleged actions were performed in their official capacities."  Id. at 788.

When addressing motions to dismiss based on sovereign immunity, the court must give

"'great weight' to any extrinsic submissions made by the foreign defendants regarding the scope

of their official duties." Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah, 184 F.

Supp. 2d 277, 287 (S.D.N.Y. 2001).  When a defendant establishes a *prima facie* case that it is a

sovereign, the plaintiff has the burden of coming forward with evidence showing that immunity

should not be granted, under one of the FSIA exceptions.  Virtual Countries, Inc. v. Republic of

South Africa, 300 F.3d 230, 241 (2d Cir. 2002).  If the court finds that a defendant has engaged

in the alleged actions as a part of his official government duties, and the exceptions to FSIA are

inapplicable, the court must dismiss the claims against that defendant.  Robinson v. Government

of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001).

**B.**   **Dr. Al-Obaid Is Immune from Suit under the FSIA to the Extent That the Allegations Against Him Concern Matters Within His Capacity as an Official of the Saudi Government** .

Dr. Al-Obaid, through his affidavit, has clearly established that he is a "sovereign."  He

has held positions of authority within the Saudi Government and its affiliated organizations since

1980, and currently serves as the Minister of Education.  See Al-Obaid Decl. (Ex. 1), at ¶¶ 4-7;

Ex. 3-4.  Therefore, he was an "instrumentality" of the Saudi government for purposes of all acts

he undertook in his official capacity during that period of time.  See 28 U.S.C. § 1603(b).

The *Federal Insurance* and *NY Marine* plaintiffs listed him as one of some three hundred

defendants who are generically alleged to have "aided and abetted, conspired with, and provided

material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or

persons."  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.  As he was a

governmental official during the entire period in question, the plaintiffs seem to be claiming that

whatever wrongful actions he took were as a government official.  He is, therefore, entitled to

7

immunity under the FSIA.  Robinson, 269 F.3d at 140-41.

It is difficult if not impossible to make sense of plaintiffs' contorted accusations against Dr. Al-Obaid.  Providing no specific details, the complaint contains a number of claims that Dr. Al-Obaid was a "co-conspirator, material sponsor, and or aider and abettor" of the IIRO, the Muslim World League, the Rabita Trust, and the so-called SAAR network.  There are allegations that he was an officer of several entities, but plaintiffs did not plead any facts showing that he knew that those entities did anything illegal.  There is also an allegation about his involvement with a poultry business with which he had no connection, an allegation based on plaintiffs' confusion of him with someone else.  As Dr. Al-Obaid was a governmental official during the entire period in question, to date, it seems that the allegations against him, whatever they may be, concern acts that he undertook in his capacity as a member of the Supreme Council of Islamic Affairs, or the Saudi legislature.  Therefore, he is entitled to immunity under the FSIA.

**C.     None of the FSIA Exceptions Applies to Dr. Al-Obaid.**

To the extent that plaintiffs complain of actions that Dr. Al-Obaid took in his official capacity, plaintiffs must come forward with evidence to show that immunity should not be granted, under one of FSIA's three exceptions.  Plaintiffs cite 28 U.S.C. § 1605(a)(2) (the "commercial activities" exception); 28 U.S.C. § 1605(a)(5) (the "non-commercial tort" exception), and 28 U.S.C. § 1605(a)(7)(A) (the "state sponsored terrorism" exception).  Under this Court's January 18, 2005 decision, none of these exceptions applies to Dr. Al-Obaid.

**1.     The Commercial Activity Exception Is Not Applicable.**

Dr. Al-Obaid did not engage in any commercial activities during his governmental service.  The only allegations raised by any of the plaintiffs that might conceivably implicate this

8

exception relate to his service as an officer of Sana-Bell or Sanabell al-Kheer, which plaintiffs

stated are non-profit entities.  However, plaintiffs have not pled any facts showing that he was

involved in a commercial activity that "cause[d] a direct effect in the United States," as Section

1605(a)(2) requires.  Critically, "'an effect is direct if it follows as an <u>immediate</u> consequence of

the defendant's activity.'"  <u>Virtual Countries v. Republic of South Africa</u>, 300 F.3d 230, 236 (2d

Cir. 2002) (quoting <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 618 (1992) (emphasis

in original)).  Therefore, this FSIA exception is inapplicable.

### 2. <u>The Non-Commercial Tort Exception Is Also Inapplicable.</u>

The second exception to FSIA immunity is for matters "in which money damages are

sought against a foreign state for personal injury or death, or damage to or loss of property,

occurring in the United States and caused by the tortious act or omission of that foreign state or

of any official or employee of that foreign state while acting within the scope of his office or

employment."  28 U.S.C. § 1605(a)(5).  Plaintiffs "must come forward with evidence

demonstrating that the [defendant's] tortious acts or omissions caused Plaintiffs' injuries."  <u>*In re*</u>

<u>Sept. 11</u>, 349 F. Supp. 2d at 797.  In order to satisfy this standard, the plaintiffs must show

proximate causation.  This Court previously held, in granting the motions to dismiss for lack of

subject matter jurisdiction of Prince Sultan and Prince Turki, that:

> [Plaintiffs] have not, however, pleaded facts to support an inference that the
> Princes were sufficiently close to the terrorists' illegal activities to satisfy
> *Halberstam* or New York law.  Similarly, Plaintiffs have not pleaded facts to
> suggest the Princes knew they were making contributions to terrorist fronts and
> provided substantial assistance or encouragement to the terrorists to satisfy *Boim*
> or New York law. . . . there must be some facts presented to support the allegation
> that the defendant knew the receiving organization to be a solicitor, collector,
> supporter, front or launderer for such an entity.  There must be some facts to
> support an inference that the defendant knowingly provided assistance or
> encouragement to the wrongdoer.  Here, there are no such factual bases presented,

9

there are only conclusions.

Id. at 800-01.  The Second Circuit similarly held that it is improper to use generic allegations to invoke the tort exception to FSIA.  Robinson, 269 F.3d at 146 (improper to allow "plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints").

This Court must find that this exception similarly does not apply here, since the plaintiffs have failed to allege facts showing that Dr. Al-Obaid committed tortious acts, or knowingly supported terrorists.  While plaintiffs make a series of allegations, including several based on a case of mistaken identity, plaintiffs fail to identify a single action knowingly taken by Dr. Al-Obaid that was tortious, or taken to support terrorism.

The tort exception to the FSIA is, therefore clearly inapplicable.

**3.      The State-Sponsored Terrorism Exception Is Also Inapplicable.**

Finally, to the extent that the plaintiffs intend to claim that Dr. Al-Obaid provided material support to terrorists who caused their injuries, the state-sponsored tort exception is inapplicable.  Congress explicitly assigned material support claims to another exception, 28 U.S.C. § 1605(a)(7)(A).  As this Court has already determined, that "material support" exception does not apply, because Saudi Arabia has not been designated as a state sponsor of terrorism, a prerequisite for the application of this exception.  *In re* Sept. 11, 349 F. Supp. 2d at 794.

**IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER DR. AL-OBAID, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.**

This Court must dismiss plaintiffs' complaints against Dr. Al-Obaid, pursuant to Rule 12(b)(2), Fed. R. Civ. P., and the New York long-arm statute, for lack of personal jurisdiction.

Plaintiffs have the burden to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction. *In re* Sept. 11, 349 F. Supp. 2d at 804; Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). If plaintiffs allege that Dr. Al-Obaid took acts in his personal capacity, this Court's analysis of personal jurisdiction demonstrates that plaintiffs' conclusory allegations fail to meet the standard for the exercise of personal jurisdiction.

### A. The New York Long-Arm Statute Is Not Satisfied.

First, the personal jurisdiction requirements of the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002), are not satisfied. As this Court held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction through the New York long-arm statute on a conspiracy theory. *In re* Sept. 11, 349 F. Supp. 2d at 805. Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the reasonable inference that Dr. Al-Obaid "directed, controlled, or requested al Qaeda to undertake its terrorist activities." Id. at 806. Nor do plaintiffs make "any specific allegations of [his] knowledge of or consent to those activities." Id. Indeed, plaintiffs state only conclusions that somehow Dr. Al-Obaid acted in concert with several hundred other defendants, or that he was involved with several charities and other non-profit entities. Plaintiffs allege no facts from which this Court can infer Dr. Al-Obaid had any control or knowledge of al Qaeda and its activities.

11

**B.**     **Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.**

Second, personal jurisdiction over Dr. Al-Obaid, pursuant to Rule 4(k), under either a "general jurisdiction" or a "specific jurisdiction" theory, would not satisfy the requirements of due process, which require some level of minimum contacts with this forum. *In re* Sept. 11, 349 F. Supp. 2d at 810-11. For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). Dr. Al-Obaid's limited contacts with the United States, see Al-Obaid Decl. (Ex. 1), at ¶ 8, are "not sufficiently 'systematic and continuous' to maintain general jurisdiction" over him. *In re* Sept. 11, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed based on his limited contacts with the United States). The Second Circuit has held that even several visits a year to the United States are insufficient to assert personal jurisdiction over a non-resident defendant. See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); see also Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction"). Here, plaintiffs do not allege that Dr. Al-Obaid made any visits to United States.

Similarly, for this Court to exercise personal jurisdiction over Dr. Al-Obaid under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that he was a "primary participant in intentional wrongdoing." *In re* Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997). If the defendant was not personally involved with the alleged torts that caused the plaintiffs'

injuries, or otherwise was not a "primary participant," then personal jurisdiction cannot be supported.  See In re Sept. 11, 349 F. Supp. 2d at 809 (quoting In re Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).  Here, plaintiffs have failed to plead any facts to support an allegation that Dr. Al-Obaid was personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over him under a "specific jurisdiction" theory.  Further, it is settled law that to exercise personal jurisdiction over a nonresident officer based on the acts of a corporation in this forum, the corporation's acts "must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction." Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).[4]  Plaintiffs have not satisfied that pleading requirement as to Dr. Al-Obaid.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed to "make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries."  In re Sept. 11, 349 F. Supp. 2d  at 809.  Instead, plaintiffs merely made "conclusory allegations" that Dr. Al-Obaid "aided and abetted terrorists," but without pleading any facts to support an allegation that he "purposefully directed his activities at this forum" by engaging in activities "that he knew at the time supported international terrorism."  Id. at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan

---

[4] See also Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction under a theory of agency."); Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995) ("it is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation").

purposefully directed his activities at this forum").

Therefore, this Court must find, as it did in dismissing Prince Sultan and Prince Turki, that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction over Dr. Al-Obaid.

## V. THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. AL-OBAID, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs have not pled factual allegations against Dr. Al-Obaid, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Here, of course, there are little more than "conclusory allegations" pled against Dr. Al-Obaid.

The plaintiffs brought the following claims against Dr. Al-Obaid, which are legally defective: (1) a tort claim under the Anti-Terrorism Act (*Burnett II, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Burnett II, Federal Insurance,* and *Tremsky*); (3) a claim under the Alien Tort Claims Act (*Burnett II* and *Tremsky*); and (4) Civil RICO claims (*Burnett II, Continental Casualty, Euro Brokers, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*).

14

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Burnett II* and *Federal Insurance*); (2) conspiracy, and aiding and abetting (*Burnett II, Federal Insurance, NY Marine, Tremsky,* and *WTC Properties*); (3) assault and battery (*Federal Insurance*); and (4) property destruction and damage (*Continental Casualty, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).  The *Burnett II*, *Federal Insurance* and *Tremsky* plaintiffs brought negligence claims and negligent and intentional infliction of emotional distress claims.  The *Tremsky* plaintiffs brought a common-law nuisance claim.  All plaintiffs, except for *Continental Casualty*, brought separate claims for punitive damages.

### A.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT DR. AL-OBAID'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have not pled sufficient facts showing that Dr. Al-Obaid's acts proximately caused plaintiffs' injuries.  Plaintiffs have alleged, in a conclusory manner, that all defendants provided support to al Qaeda, which led to the September 11 attacks.  As there are 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 431 defendants in *Continental Casualty*, 201 defendants in *Euro Brokers*, 581 defendants in *Federal Insurance*, 561 defendants in *NY Marine*, 98 defendants in *Tremsky*, and 201 defendants in *WTC Properties*, there is no way for Dr. Al-Obaid to know what plaintiffs are alleging is his wrongful conduct.

Plaintiffs cannot simply "lump" Dr. Al-Obaid with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any

factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re Sept. 11*, 349 F. Supp. 2d at 826.  Hence, in order to impose tort liability on Dr. Al-Obaid through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").  Plaintiffs' allegations, no matter how construed, fail to meet that standard.

This Court should dismiss the plaintiffs' tort claims against Dr. Al-Obaid because plaintiffs have failed to state a cause of action that his acts directly and intentionally injured plaintiffs, thereby precluding them from recovering under any direct tort theory, i.e., the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; the New York wrongful death and survival statute; and common-law assault and battery, property destruction,

16

and intentional infliction of emotional distress claims.

**B.     PLAINTIFFS' CLAIMS AGAINST DR. AL-OBAID UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)      This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Burnett* Count 1, *Federal Insurance* Count 6, and *Tremsky* Count 2), because plaintiffs did not plead any facts to support an allegation that Dr. Al-Obaid "subject[ed] an individual to torture or extrajudicial killing," as required to impose liability.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)      This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.  The *Burnett II* (New York) complaint was filed on August 1, 2003, and the *Federal Insurance* complaint was filed on September 10, 2003, both more than one year after September 11, 2001. Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)      This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5; *Tremsky* Count 9; *WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that Dr. Al-Obaid engaged in any act of international terrorism proscribed

17

by 18 U.S.C. § 2331(1); or that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  Plaintiffs' minimal allegations fail to satisfy this pleading requirement.

(4)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Burnett* Counts 5 and 7; *Federal Insurance* Counts 2-3; *Tremsky* Count 5), because plaintiffs have not pled any facts to support an allegation that Dr. Al-Obaid "caused the decedent's death," or that he committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that Dr. Al-Obaid "supported, aided and abetted, or conspired with the September 11 terrorists."  *In re* Sept. 11, 349 F. Supp. 2d at 829.

(5)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Burnett* Count 8, *Federal Insurance* Count 5, and *Tremsky* Count 6) and property destruction tort claims (*Euro Brokers* Counts 1-2, 6, 8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Dr. Al-Obaid's acts caused plaintiffs' injuries, as required for these torts.  Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993)

18

(intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[5]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that Dr. Al-Obaid associated himself with, and participated in, the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act done in furtherance of any of his unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).  Finally, plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

### C. THE *BURNETT* AND *TREMSKY* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the RICO claims brought by the *Burnett* and *Tremsky* personal injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The *Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* and *Tremsky* plaintiffs instead decide to pursue their RICO claims against Dr. Al-Obaid, this Court must find that as personal injury plaintiffs, they lack standing to

---

[5] Dr. Al-Obaid has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

bring RICO claims, which are limited by statute to "[a]ny person injured in his business or property." 18 U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal injury plaintiffs cannot seek recovery under the RICO statute.  <u>Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or property'"); <u>see also</u> <u>Burnett</u>, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing); <u>Jerry Kubecka, Inc. v. Avellino</u>, 898 F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)"); <u>von Bulow v. von Bulow</u>, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO.").

The Ninth Circuit's recent decision in <u>Diaz</u>, referenced by the *O'Neill* plaintiffs in their supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in <u>Diaz</u>, the plaintiff specifically "alleged both the property interest and the financial loss" arising from his injury, not mere personal injury.  <u>Diaz v. Gates</u>, No. 02-56818, 2005 WL 1949879, at *3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly addressed the concerns raised by the dissent that RICO liability would somehow extend to personal injuries, on the grounds that "our approach does not create RICO liability for every loss of wages resulting from personal injury."  <u>Id.</u>  Thus, even under <u>Diaz</u> – which is not binding on this Court – the *Burnett* and *Tremsky* personal injury plaintiffs still lack RICO standing.

**D.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST DR. AL-OBAID FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that all the plaintiffs who seek to bring RICO claims against Dr.

Al-Obaid have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  <u>In re</u> Sept. 11, 349 F. Supp. 2d at 827 (quoting <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Dr. Al-Obaid had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  <u>Id.</u> at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Dr. Al-Obaid since the plaintiffs have done nothing to show that <u>each</u> individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes."  <u>Id.</u> (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim).  Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim.  <u>Id.</u> at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Dr. Al-Obaid under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his

investment of the enterprise's income; that he engaged in an enterprise, or conspired with others to do so; or that he actively managed and operated the alleged enterprise, or was a central figure in the alleged scheme.

### E.   PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST DR. AL-OBAID BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett, Federal Insurance NY Marine*, and *Tremsky* plaintiffs' negligence, negligent infliction of emotional distress, and nuisance claims against Dr. Al-Obaid because he owed no duty of care to plaintiffs.  As this Court recognized in dismissing the negligence claims by the moving defendants, it is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  *In re* Sept. 11, 349 F. Supp. 2d at 830-31 (citing King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928)); accord Burnett, 274 F. Supp. 2d at 108-09 (same).

Here, plaintiffs have alleged only conclusory allegations that "all defendants were under a general duty," *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to" plaintiffs and the employees of plaintiffs' insureds.  See *Federal Insurance* Compl. ¶ 642; *NY Marine* Compl., at ¶ 79; *Tremsky* Compl. ¶ 235.[6]  However, Dr. Al-Obaid had no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).

---

[6] The *Tremsky* plaintiffs raised a vague "nuisance" claim (Count 15), which sounds in negligence, since it alleges that all defendants "were under a general duty."  However, they cannot satisfy the requirements of a nuisance claim which requires a showing that Dr. Al-Obaid owed "a duty of care to the public or to a substantial number of persons."  NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 490 (E.D.N.Y. 2003).

**F.     PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' punitive damages counts, brought against Dr. Al-Obaid, because no independent cause of action exists under New York law for this claim. Punitive damages are merely a form of relief, not an independent tort cause of action.  See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

**G.     PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett* Count 9, *Federal Insurance* Count 7, *NY Marine* Count 4, *Tremsky* Count 7, and *WTC Properties* Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Hence, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

23

## VI.   THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. AL-OBAID, PURSUANT TO RULE 12(b)(5), FED. R. CIV. P., FOR IMPROPER SERVICE OF PROCESS.

This Court must find that plaintiffs' attempts to serve Dr. Al-Obaid by publication in several newspapers is improper as a matter of law.  It is settled law that sovereign defendants can only be served pursuant to the specific service of process provision of FSIA, 28 U.S.C. § 1608, which trumps the general service provisions of Rule 4, Fed. R. Civ. P.  Indeed, Rule 4(j)(1), Fed. R. Civ. P., expressly provides that:  "Service upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608."  The courts have held that Section 1608 is the exclusive means for effecting service of process on such defendants.  See Seramur v. Saudi Arabian Airlines, 934 F. Supp. 48, 51 (E.D.N.Y. 1996) ("Section 1608(b) provides the exclusive means by which service of process may be effected upon Respondent."); see also 4B Wright & Miller, Federal Practice and Procedure: Civil 3d, § 1111, at 123 (2002) (same).  Section 1608(b), which applies to instrumentalities of foreign states, including individuals, sets forth, in precise detail, three alternative methods for service of process, yet plaintiffs have not complied with any of these three methods.

This Court should also reject plaintiffs' argument that because Dr. Al-Obaid has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267 (2d Cir. 1981).  Further, the Second Circuit has held that "actual notice" is no substitute for

proper service.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper as it did not satisfy the specific requirements of Section 1608(b) of FSIA.  Nor can service by publication in newspapers that are either banned in Saudi Arabia, or have an exceedingly limited circulation, be considered sufficient to effect service of process on Dr. Al-Obaid.

### CONCLUSION

For the foregoing reasons, defendant Dr. Abdullah Bin Saleh Al-Obaid respectfully requests that this Court grant his Motion to Dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Bin Saleh Al Obaid

Dated:  September 6, 2005

25

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____
Alan R. Kabat