**Exhibit 4**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)

U.S. DISTRICT COURT
DISTRICT OF IDAHO

MAR 12 2003

LODGED___ M. REC'D
___FILED___

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  CR 03-048-N-EJL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| SAMI OMAR AL-HUSSAYEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On March 11 and 12, 2003, the Court heard extensive testimony in connection with the Government's motion to detain Defendant Sami Omar Al-Hussayen, pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (B) (Docket No. 12), filed February 26, 2003.

## I.
### Procedural Background.

On February 27, 2003, the Defendant made his initial appearance on eleven counts contained in the Indictment (Docket No. 1).  Seven of the charges allege visa fraud and the remaining four charges allege false statements in connection with applying for and receiving a student visa.  At his initial appearance, defense counsel sought a voluntary continuance of the detention hearing beyond the time provided in the statute, pursuant to the requirements of 18 U.S.C. § 3142(f). Defense counsel explained that additional time was needed to prepare for the

Order - page 1

hearing and to contact members of the Defendant's family who currently reside outside of the United States. The Court granted the request and set the detention hearing for March 11, 2003.

At the hearing, the Government presented the testimony of Michael James Gneckow, a special agent for the Federal Bureau of Investigation ("FBI") assigned to the office located in Coeur d'Alene, Idaho. In addition, the Government presented testimony by proffer.

On behalf of the Defendant, the testimony of Abdul Rakmal Al-Hussayen was presented, who is the Defendant's older brother. He appeared by video conference from Toronto, Ontario, Canada. The Defendant's brother is also a Saudi citizen and is a physician who is allowed to live in Canada by virtue of his work and scholarship. He was unable to obtain permission from the U.S. Consulate in Canada to travel to Idaho to testify in person. The Defendant presented the testimony of Dr. John Dickinson, the Defendant's scholastic advisor at the University of Idaho. The Defendant also presented the testimony of Marwan Mossad, a student at University of Idaho and president of the Muslim Student Association. Mr. Mossad has known the Defendant for approximately one year and meets with the Defendant once or twice per day. The Defendant also presented testimony of Raul Sanchez, who is charged with ensuring student diversity at the University of Idaho in the capacity as an assistant to the President of the university. Finally, the Defendant also presented evidence by proffer.

## II.
## Factual Background

The evidence presented at the detention hearing reveals two marked depictions of the Defendant. On one hand, the Government has put forth evidence that may suggest the Defendant

is affiliated with people or groups that espouse terrorist beliefs.[1] On the other hand, the Defendant has put forth evidence that may suggest that he is a hard-working and well-respected student with plans to finish his education at the University of Idaho. The Defendant's witnesses, however, each stated that they were unaware of any of Defendant's associations or activities outside of his scholastic or community involvement. The same could be said for the Government's witness as well. When asked, Agent Gneckow was not totally aware of the aspects of the Defendant's scholastic and community involvement. In that sense, one side sees what the other side does not. The Court will develop these divergent sets of facts and, recognizing the two very different depictions of the Defendant, the Court will address the Government's Motion for Detention.

Defendant Sami Omar Al-Hussayen is a native and citizen of the Kingdom of Saudi Arabia and has a wife and three children.[2] At the time of his arrest, the Defendant was a student at the University of Idaho and was engaged in pursuing his Ph.D. in computer science, with an emphasis on computer security. He has been so engaged since approximately 1999 and, prior to that time, the Defendant had studied for and earned a master's degree in computer science from Ball State University in Muncie, Indiana. Before enrolling in the University of Idaho to pursue

---

[1]. This is not to say, however, that the Government put on evidence that the Defendant *espoused* terrorist beliefs.

[2]. The Defendant resided primarily in the United States since 1994, with periodic trips back to Saudi Arabia. Some of Defendant's children are United States citizens.

**Order - page 3**

his Ph.D., the Defendant returned to Saudi Arabia for a period of time.[3] Both the Government

and the Defendant agree to these basic facts.

Proceeding in light of the basic facts above, the Government offers a factual scenario that

it self-describes as being within the "context of international terrorism." Specifically, the

Government spent considerable time outlining the basic tenets of clandestine terrorist groups and

the characteristics of terrorist activities. The Government also offered evidence of certain radical

sheikhs from Saudi Arabia, Salman Al-Ouda and Safar Alhawali. The Government has

presented certain statements or proclamations by these sheikhs advocating violence and terrorist

activities against the United States. The Government further alleges that these two sheikhs have

ties to Usama Bin Laden. The Indictment and search warrant affidavit contain some of these

statements which were posted on internet web pages. The Government presented evidence

regarding intercepted phone and email communications between the Defendant and these two

sheikhs. Specifically, the Defendant communicated with Sheikh Al-Ouda regarding the creation

of a web-site. In addition, the Defendant had phone numbers for both of the sheikhs in his

personal phone directory. The Government also alleges that the Defendant has great respect for

and connection with the sheikhs.[4]

Along with being in contact with Sheikh Al-Ouda about the creation of a web-site, the

Defendant also created and maintained several other web-sites. The Government alleges some of

---

[3]. At the time the Defendant attended Ball State, he was allowed to be in this country under the provisions
of what is referred to as an F-1 "student" visa. However, at the time that the Defendant returned to the United
States to pursue his Ph.D. at the University of Idaho, he was present in this country under the status of a J-1
"exchange" visa.

[4]. The Government did not provide the Court with written transcriptions of the intercepted phone calls or
copies of the intercepted email.

the web-sites that the Defendant created contain content, including pictures, articles, and poems, that advocates terrorist activities or recruitment to engage in terrorist activities. The Government has not presented proof that the Defendant created such content.

Among the various web-sites that the Defendant created is the web-site for the Islamic Assembly of North America ("IANA"). The Defendant was also involved with IANA in other capacities. Specifically, the Defendant is the registered agent for IANA in the state of Idaho and the Government alleges that the Defendant played a key role as an executive of IANA and had a close relationship to the director of IANA. The Defendant also maintained six different bank accounts[5] and received wire transfers from his uncle, Salen Abdel Rahman Al-Hussayen, who resides in Saudi Arabia, in two amounts totaling nearly $100,000.00. After IANA exhausted a previous wire transfer from a Swiss bank account in the amount of $300,000.00, the Defendant sent the money to IANA in piecemeal amounts either by check or wire transfer. IANA's books refer to these sums of money as loans.

Upon execution of several search warrants in connection with this case, the Government retrieved picture files (.jpg) from Defendant's home computer and from the computer at his school workstation. Specifically, the computers contained numerous picture files, including pictures of the World Trade Center before and after the September 11 attacks, an aerial photograph of the Pentagon, Taliban soldiers, Usama Bin Laden, Sheikh Al-Ouda, and a map of California that pinpointed four bridges.

The Defendant's uncle who wired the large amounts of money visited the United States and ultimately stayed at the Marriot hotel in Herndon, Virginia on September 10, 2001. Three of

---

[5]. The Defendant also maintained a bank account in Ann Arbor, Michigan under a different name.

the hijackers of flight 77, which ultimately crashed into the Pentagon, also stayed that the same

hotel on September 10, 2001.

The Defendant, however, offered evidence that he is a father and a student at the

University of Idaho, who does not condone or support terrorist activities and who is actively

involved in the community. The Defendant first offered the testimony of his brother Abdul

Rakmal Al-Hussayen, who testified that the Defendant grew up in a middle class family in Saudi

Arabia and lived a normal middle class life. The Defendant's brother also testified that, while he

and the Defendant had been raised Muslim, they were never forced to practice the Muslim

religion. He also testified that he loved and admired the Defendant and described the Defendant

as a peaceful and kind man.

Defendant then called Dr. John Dickinson, who testified that the Defendant was welcome

back into the doctoral program at the University of Idaho. Dr. Dickinson also wrote a letter to

the Idaho Statesman that stated the Defendant was "pleasant, polite, and helpful" and stated that

the Defendant was "consistently making progress toward completing his degree." Dr. Dickinson

testified that he believed all of these statements were true. Dr. Dickinson stated, however, that

the vast majority of his contact with the Defendant was within a scholastic setting.

The Defendant also offered the testimony of University of Idaho student Marwan Mossad,

who testified that the Defendant was cheerful, balanced, and wise and a person who did not

advocate violence. Mr. Mossad described a petition of approximately 250 signatures in support

of the Defendant's release pending trial. The Defendant also called Raul Sanchez, who testified

that the Defendant was welcome back at the University of Idaho and would not be a flight risk.

Mr. Sanchez stated that the Defendant is a member of an advisory group for campus diversity

issues, which is mostly comprised of faculty members. Mr. Sanchez testified that the Defendant felt strongly that the persons responsible for the September 11 attacks should be prosecuted and that the Defendant felt those persons were not acting on behalf of Islam. Mr. Sanchez also recounted a visit to the Defendant's residence where he watched the Defendant interact with his children and described the encounter as endearing.

Each of the witnesses who testified on behalf of the Defendant stated that they were unaware of any of the Defendant's activities with IANA, Sheikhs Al-Ouda and Alhawali, the money transfers, and the rest of the Government's evidence.

## III.
## Standard of Review.

The Court considers the issue of detention pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141-3156. The Government has moved to detain the Defendant without bail prior to trial. (Docket no. 12) Upon a motion brought either by the Government or *sua sponte* by the Court, a detention hearing will be held if the case appears to involve: (a) a serious risk that the defendant will flee, or (b) a serious risk that the defendant will obstruct justice or attempt to threaten a prospective witness or juror. 18 U.S.C. §§ 3142(f)(2)(A) and (B). "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a risk of flight, and by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), *citing United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985); 18 U.S.C. § 3142(f).

In analyzing whether there are conditions of release that will reasonably assure the appearance of the Defendant and the safety of others, the Court shall take into account the following factors:

    (1)    The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2)    the weight of the evidence against the person;

    (3)    the history and characteristics of the person; and

    (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The weight of the evidence, however, is the least important of the foregoing factors. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). Finally, in interpreting the Bail Reform Act of 1984, the Ninth Circuit has explained that the Court should deny release only in rare circumstances and the propriety of release should be resolved in the Defendant's favor. *Gebro*, 948 F.2d at 1121.

## IV.
### Analysis.

In its motion, the Government asserts that it would introduce evidence at the detention hearing that there was a serious risk the Defendant would flee, obstruct justice, or pose a danger to any other person or the community. After hearing and reviewing the evidence presented at the detention hearing, the Court finds that Defendant Sami Omar Al-Hussayen should not be detained. Taking into consideration the risk of flight and danger to any other person or the community, along with the factors to be considered under 18 U.S.C. § 3142(g), the Court bases its determination upon the following findings of fact.

Order - page 8

## A.     Risk of Flight

In arguing that the Defendant poses a risk of flight, the Government mainly focuses on the Defendant's ability to participate in the doctoral program at the University of Idaho. Put bluntly, the Government asserts that the Defendant has no ability to participate in the doctoral program and that such participation is illusory or, at best, non-existent. The Government further argues that, absent the ability to participate in the doctoral program, the Defendant does not have any other significant tie to the community. Accordingly, the Government's argument therefore runs as follows: because the Defendant does not have the ability to participate in the doctoral program, it is more likely than not that he will flee.

The Court will analyze the statutory factors pursuant to 18 U.S.C. § 3142(g) to determine whether the Government has established by a preponderance of the evidence that the Defendant will flee.

With regard to the Government's argument that the Defendant does not have any other significant community ties beyond the doctoral program, the Court would point out that community ties are but one of the several items that the Court must analyze in making its determination. Specifically, ties to the community are one of many items that the Court will consider under the 18 U.S.C. § 3142(g)(3)(A) factor of "history and characteristics" of the Defendant. In any event, there is other evidence of the Defendant's ties to the community. Specifically, the Defendant has organized a blood drive, has organized peace vigils, and has arranged social gatherings on campus. Apart from these activities, Mr. Mossad testified that the Defendant was open to discussion about the Muslim religion with members of the community

and spoke with the press regarding the religion when other Muslims were afraid that they would be misunderstood.

Analyzing the *nature* of the offenses charged in isolation, the Court finds nothing that would lead to the conclusion that the Defendant constitutes a flight risk. Analyzing the *circumstances* of the offense charged, the Court concludes that it can fashion conditions of release that meet will ensure the Defendant's appearance at trial. The history and characteristics of the Defendant also suggest that he does not pose a flight risk. The Defendant offered testimony of several witnesses who each testified that the Defendant would not be a flight risk. This testimony is further supported by the petition containing approximately 250 signatures reflecting the same sentiment, i.e., that the Defendant would not flee. The petition also reflects the amount of community support that the Defendant has garnered by virtue of his community involvement. In addition, the Defendant also put forth testimony regarding the cultural importance placed on the family, which is also suggestive that the Defendant will not abandon his family and flee.

The evidence described above convinces the Court that the Defendant is not a flight risk. The prospect of the Defendant deserting his wife and three children and flee the United States, while not entirely inconceivable, appears extremely remote based on the evidence before the Court. In addition, the Defendant has presented evidence that the Government's investigation of certain members of the Muslim community in the Pullman-Moscow area had been leaked to the press several months ago. In fact, the Defendant was interviewed for the story and has taken no steps to leave the jurisdiction of the United States. The Defendant has ties to the community and there was extensive testimony in this regard. The Defendant appears to be welcome in the

Order - page 10

Moscow-Pullman area. Accordingly, the Court concludes that the Government has not established, by a preponderance of the evidence, that the Court could not fashion release conditions which would adequately assure the presence of the Defendant at trial.

**B.     Danger to Any Other Person or to the Community**

The Government asserts that the charges in this case are brought "within the context of international terrorism." The Government supports this assertion by pointing to the technological, financial, and business aspects of the Defendant's alleged involvement and support of those who advocate violence against the United States. These facts, the Government argues, demonstrate by clear and convincing evidence that the Defendant poses a danger to the community.

Analyzing the *nature* of the offenses charged in isolation, the Court finds nothing that would lead to the conclusion that the Defendant constitutes a danger to the community. Analyzing the *circumstances* of the offenses charged, however, the Court is not as convinced. The Government states that the charges are brought "within the context of international terrorism" and it is this dimension of the case that is of concern. The Government's evidence, standing alone, paints a picture of a man who is affiliated with people or groups that espouse terrorist beliefs. Accepting this evidence at face value, the Court would conclude that the circumstances of the offense could lead to the conclusion that the Defendant poses a danger to the community. There is, however, the Defendant's side of this story. Each of the Defendant's witnesses testified in some fashion or another that the Defendant would not flee, that the Defendant was a respectable person, and that the Defendant did not espouse terrorist views.

Order - page 11

The Defendant argues with some force that in a democratic society that an individual who creates a web-site is not thereafter responsible for what may be posted on the site by a third person. The Court was initially concerned about the pictures recovered from the Defendant's home and university computers. At first blush, it appears the Defendant has a preoccupation with the events of September 11, 2001 and other terrorist activities world wide. However, as explained by Dr. Dickinson, whenever any person would access a news web-site, such as MSNBC, and the computer "loaded" that information, all of the pictures accompanying that days' story would permanently remain on the computer hard drive. Any person accessing these types of web site sources during the relevant time frame would have the same pictures or depictions on their computer. The Court has also considered the Defendant's argument that a "terrorist" who was assisting in the dissemination of information to assist terrorist activities would not have listed himself as the administrative contact with his name and post office address, nor would he have registered with the Secretary of State as the registered agent for IANA in the state of Idaho.

The financial transactions by the Defendant are of concern. At this juncture, the evidence indicates that the money was being used to pay the salaries and office expenses of the officials at IANA. The Government states the investigation is on-going and direct links between the funding of money to IANA in such a clandestine manner, as was employed here, would present a different picture of Defendant's danger to the community if the funds went to terrorist organizations.

The Court would point out that much of the Government's argument as to the danger that Defendant would pose to the community stems from his communications, either by computer or

by telephone, with certain people or groups and from his creation and maintenance of web-sites for certain people or groups.  If the Court were able to restrict the Defendant's ability to engage in such communications, then much of the Government's concern regarding the danger to the community could be curtailed.  The Court believes that it could fashion conditions of release that would prohibit using communicative devices, including personal computers, laptops, or email.

Taking all of the statutory factors into consideration and in light of other considerations, the Court concludes that conditions of release can be fashioned that would protect the safety of the community while this matter is awaiting trial.

## C.    Reopening of Hearing

The Government has represented that the investigation of the Defendant's activities is on-going.  As provided by 18 U.S.C. § 3142(f), this hearing may be reopened at any time before trial if a finding is made by the Court that information exists that was not known to the movant at the time of the hearing and that it has material bearing on the issue of whether or not these conditions will reasonably assure the appearance of the Defendant as required or the safety of the community.

## D.    Conditions of Release

In light of the foregoing, the Court concludes that it can fashion conditions of release that ensure, first, the Defendant will appear at trial and, second, that preserve the safety of the community.  Pursuant to 18 U.S.C. § 3142(h), when issuing a release order, the Court must include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and advise the person of the penalties for violating a condition of release, including the penalties for committing

Order - page 13

an offense while on pretrial release; the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest; and sections 1503 of this title (relating to intimidation of witnesses, jurors, and officers of the court), 1510 (relating to obstruction of criminal investigations), 1512 (tampering with a witness, victim, or an informant), and 1513 (retaliating against a witness, victim, or an informant).

The Court imposes the restrictions and conditions set forth in the accompanying Order of Release.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that**, the Government's Motion for Detention (Docket No. 12), filed February 26, 2003, is DENIED.

DATED:        March **12**, 2003.

MIKEL H. WILLIAMS
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
District of Idaho
March 13, 2003


\* \* CLERK'S CERTIFICATE OF MAILING \* \*


Re:   3:03-cr-00048


I certify that I caused a copy of the attached document to be mailed or faxed
to the following named persons:

    Kim R Lindquist, Esq.
    US ATTORNEY'S OFFICE
    Box 32
    Boise, ID  83707

    David Z Nevin, Esq.      1-208-345-8274
    NEVIN HERZFELD BENJAMIN & MCKAY
    PO Box 2772
    Boise, ID  83701

    Scott McKay, Esq.        1-208-345-8274
    NEVIN HERZFELD BENJAMIN & MCKAY
    PO Box 2772
    Boise, ID  83701


    U.S. Marshal
    HAND DELIVERED

    Probation
    HAND DELIVERED

    _____Chief Judge B. Lynn Winmill
    _____Judge Edward J. Lodge
    _____Chief Magistrate Judge Larry M. Boyle
    _____Magistrate Judge Mikel H. Williams

    Visiting Judges:
    _____Judge David O. Carter
    _____Judge John C. Coughenour
    _____Judge Thomas S. Zilly


                                    Cameron S. Burke, Clerk

Date:  3-13-03                  BY: _____
                                        (Deputy Clerk)

**Exhibit 5**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO: CR03-048-C-EJL |
| **Plaintiff,** | |
| **vs.** | **JURY INSTRUCTIONS** |
| **SAMI OMAR AL-HUSSAYEN,** | |
| **Defendant.** | |

**DATED** this _____ day of June, 2004.

EDWARD J. LODGE
UNITED STATES DISTRICT JUDGE

JURY INSTRUCTIONS

660

# INSTRUCTION NO. 32

As the term "material support or resources" is used in these instructions, the following

definitions apply:

1)      "Currency" something that is in circulation as a medium of exchange.

2)      "Monetary Instruments" mechanism or device by which money is supplied.

3)      "Financial services" managing the finances of a person or organization.

4)      "Expert advice and Assistance" where one possesses a special skill or knowledge in a scientific, technical, or other specialized field of knowledge to help, aid, or support another.

5)      "Communications equipment" physical resources or items serving to facilitate communication.

6)      "Personnel"- persons who will be used in preparing for, or carrying out the Section 956 conspiracy, that is, persons who are jointly involved in participating in those crimes.

7)      "Medicine" a substance used to treat disease.

8)      "Religious Materials" articles, items, or the like relating to a faith, belief, or devotion.

## INSTRUCTION NO. 35

The defendant is charged in Count One of the indictment with conspiring to provide material support or resources to terrorists, or to conceal the same, in violation of Title 18 of the United States Code, Sections 371 and 2339A. In order for the defendant to be found guilty of this material support conspiracy, as previously instructed, the government must prove each of the following elements beyond a reasonable doubt:

> First, on or about September 13, 1994 until on or about February 26, 2003, within the District of Idaho, and elsewhere, there was an agreement between two or more persons;
>
> Second, to provide "material support or resources" as defined in this instruction below;
>
> Third, knowing or intending that the material support or resources were to be used in preparation for or in carrying out, or in the concealment or escape, from a Section 956 conspiracy (the elements of which have been previously defined in instruction 30);
>
> Fourth, the Defendant became a member of the material support conspiracy;
>
> Fifth, one of the members of the material support conspiracy performed at least one overt act in furtherance and for the purpose of carrying out the conspiracy to provide material support, with each of you agreeing on the commission of at least one particular overt act.

As used in this Count, the term "material support or resources" requires that you apply two different definitions depending on the dates, if any, that you find apply to the above elements. You must apply the following definition in effect on the date, if any, which you find applies to the above elements:

> a)     For the period of time preceding October 26, 2001, "material support or resources" includes:   currency, financial services, communications equipment, and personnel; but does not include medicine or religious materials.
>
> b)     For the period of time subsequent to October 26, 2001, "material support or resources" includes:   currency, monetary instruments, financial services, expert advice and assistance, communications equipment, and personnel; but does not include medicine or religious materials.

## INSTRUCTION NO. 36

The defendant is charged in Count Two with providing material support or resources to terrorists, or concealing the same, in violation of Title 18 of the United States Code Section 2339A. In order for the defendant to be found guilty of the charge, the government must prove each of the following elements beyond a reasonable doubt:

First, from on or about October 26, 2001, to on or about February 26, 2003, in the District of Idaho and elsewhere;

Second, the defendant provided material support or resources, namely currency, monetary instruments, financial services, expert advice and assistance, or communications equipment; but does not include medicine or religious materials; and

Third, knowing or intending that the material support or resources were to be used in preparation for or in carrying out, or in the concealment or escape from a Section 956 conspiracy (the elements of which have been previously defined in instruction 30).

## INSTRUCTION NO. 48

The First Amendment of the United States Constitution ensures individuals certain rights and liberties including: freedom of speech, freedom of religion, and freedom to associate. These rights are guaranteed equally to citizens of foreign countries residing in the United States.

In this case, evidence relating to the First Amendment, whether protected or not, may be considered by you only on the issue of the defendant's knowledge or intent. The appropriate weight, if any, for you to give to such evidence is for you, the jury, to decide.

1) _Freedom of Speech_:

Freedom of speech protects an individual's or a group's right to advocate their beliefs even if those beliefs advocate the use of force or violation of law unless the speech is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. Freedom of speech is not, however, absolute and may be regulated in certain instances. The charges in this case do not regulate speech.

2) _Freedom of Religion_:

Freedom of religion protects an individual's or a group's right to believe, profess, practice, and exercise whatever religious doctrine he or she may chose. An individual's freedom of religion, however, does not allow one to engage in conduct or actions based on their religious beliefs where those actions have been statutorily defined as criminal conduct.

3) _Freedom to Associate_:

The right to associate protects an individual's right to associate with individuals, groups, or organizations; even where that group, individual, or organization may advocate, conduct, or

engage in illegal activity.  The right to associate remains protected, thus not criminal based on the association alone, unless it is established that 1) the group itself possessed unlawful goals and 2) the individual held a specific intent to further those illegal aims.

Thus, the charges in this case do not prohibit merely being a member of a certain group or organization, including a designated foreign terrorist organization, or promoting and supporting the beliefs, goals, or means for achieving those goals of such a group.  What is prohibited by the charging statutes is the act of giving "material support or resources," as defined in these instructions, to such a group.

**Exhibit 6**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO: CR03-048-C-EJL |
| Plaintiff, | |
| vs. | **VERDICT** |
| SAMI OMAR AL-HUSSAYEN, | |
| Defendant. | |

We, the jury, unanimously find Sami Omar Al-Hussayen:

Count One –

    Part A:   Conspiracy to Provide and Conceal Material Support or Resources to

         Terrorists from on or about September 13, 1994 to on or about February 26, 2003

         (18 U.S.C. §371)

             ✓ **Not Guilty**

             ____ **Guilty**

    Part B:   Conspiracy to Provide and Conceal Material Support or Resources to

         Terrorists from on or about October 26, 2001 to on or about February 26, 2003

         (18 U.S.C. §§371 & 2339A)

             ✓ **Not Guilty**

             ____ **Guilty**

671

Count Two –   Providing and Concealing Material Support and Resources to Terrorists

(18 U.S.C. §2339A)

    ✓  **Not Guilty**

    ____  **Guilty**


Count Three – Conspiracy to Provide Material Support and Resources to a Designated

Foreign Terrorist Organization (18 U.S.C. §2339B)

    ✓  **Not Guilty**

    ____  **Guilty**


Count Four –  False Statement to the United States (18 U.S.C. §§1001(a)(2) & 3238)

    ✓  **Not Guilty**

    ____  **Guilty**


Count Five –   Visa Fraud (18 U.S.C. §§1546(a) & 3238)

    ✓  **Not Guilty**

    ____  **Guilty**


If you found the defendant not guilty on both of Counts Four and Five, move on to Count Seven. If you found the defendant guilty on either or both of Counts Four and/or Five, move on to Count Six.


Count Six –    Visa Fraud (18 U.S.C. §§1546(a) & 3237)

    ____  **Not Guilty**

    ____  **Guilty**


VERDICT - Page 2

Count Seven – False Statement to the United States (18 U.S.C. §§1001(a)(2) & 3238)

_____ **Not Guilty**

_____ **Guilty**

Count Eight –  Visa Fraud (18 U.S.C. §§1546(a) & 3238)

_____ **Not Guilty**

_____ **Guilty**

If you found the defendant not guilty on both of Counts Seven and Eight, move on to Count Ten.  If you found the defendant guilty on either or both of Counts Seven and/or Eight, move on to Count Nine.

Count Nine –  Visa Fraud (18 U.S.C. §§1546(a) & 3237)

_____ **Not Guilty**

_____ **Guilty**

Count Ten –   False Statement to the United States (18 U.S.C. §§1001(a)(2) & 3238)

_____ **Not Guilty**

_____ **Guilty**


Count Eleven – Visa Fraud (18 U.S.C. §§1546(a) & 3238)

_____ **Not Guilty**

_____ **Guilty**


Count Twelve – False Statement to the United States (18 U.S.C. §§1001(a)(2) & 3238)

_____ **Not Guilty**

_____ **Guilty**


Count Thirteen – Visa Fraud (18 U.S.C. §§1546(a) & 3238)

_____ **Not Guilty**

_____ **Guilty**


If you found the defendant not guilty on each of Counts Ten, Eleven, Twelve, and Thirteen, please sign and date the verdict form. If you found the defendant guilty on any one of Counts Ten, Eleven, Twelve, or Thirteen, move on to Count Fourteen.


Count Fourteen – Visa Fraud (18 U.S.C. § 1546(a) & 3237)

_____ **Not Guilty**

_____ **Guilty**


DATED this _10th_ day of _June_, 2004.


_[signature]_
_____
Foreperson

VERDICT - Page 4

**Exhibit 7**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)

U.S. COURTS

2004 JUL -2  PM 12: 20

RECD____FILED
CAMERON S. BURKE
CLERK, IDAHO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO: CR03-048-C-EJL |
| Plaintiff, | **ORDER** |
| **vs.** | |
| **SAMI OMAR AL-HUSSAYEN,** | |
| Defendant. | |

On June 10, 2004, the jury in the above-entitled matter returned a verdict of not guilty on some counts but was unable to reach a verdict on other counts. The remaining counts have now been dismissed and there are no further charges pending against Mr. Al-Hussayen. Therefore, the United States Marshal's Service is hereby directed to release Mr. Al-Hussayen into the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement.

**IT IS SO ORDERED** this **2** day of July, 2004.

EDWARD J. LODGE
UNITED STATES DISTRICT JUDGE

ORDER-Page 1

685

United States District Court
for the
District of Idaho
July 2, 2004


* * CLERK'S CERTIFICATE OF MAILING * *


Re:  3:03-cr-00048


I certify that I caused a copy of the attached document to be mailed or faxed
to the following named persons:


Kim R Lindquist, Esq.     1-208-334-1413
US ATTORNEY'S OFFICE
Box 32
Boise, ID  83707

David Z Nevin, Esq.       1-208-345-8274
NEVIN BENJAMIN & MCKAY
PO Box 2772
Boise, ID  83701

Scott McKay, Esq.         1-208-345-8274
NEVIN BENJAMIN & MCKAY
PO Box 2772
Boise, ID  83701

Charles F Peterson, Esq.      1-208-336-2059
PETERSON LAW OFFICE
913 W River St #420
Boise, ID  83702

Joshua L Dratel, Esq.
14 Wall St, 28th Floor
New York, NY  10005


U.S. Marshal
HAND DELIVERED

Probation
HAND DELIVERED

_____  Chief Judge B. Lynn Winmill
___✓___ Judge Edward J. Lodge
_____  Chief Magistrate Judge Larry M. Boyle
_____  Magistrate Judge Mikel H. Williams

Visiting Judges:
_____  Judge David O. Carter
_____  Judge John C. Coughenour
_____  Judge Thomas S. Zilly

Cameron S. Burke, Clerk

BY: _____
        (Deputy Clerk)

Date: _____ 7-2-04 _____

**Exhibit 8**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)



[ Home ] [ Service Guaranteed ] [ INTERNATIONAL ] [ Translations ] [ Legal Resources ] [ FAQ ]
[ Join the Network ] [ News Articles ] [ Books & Materials ] [ All About Us ] [ Small Claims Court ]
[ Process Server Software ]

# Process Service Guaranteed

## We Serve *Anywhere* in the *World!*





"Parlez-vous, Summons?"

**We specialize in the one thing they forget to teach in law school. . . .**

### International Service of Process



If you need:

➤   To **serve** someone in Europe, Asia, South America, Africa, North America or anywhere

➤   To **verify an address** in Australia, Greenland, India or anywhere

➤   To **depose a witness** in Antarctica, or anywhere

➤   Any other **international** assignment

## Lowest Rates Guaranteed![1]

✥   Call us and we will FAX or E-MAIL a *specific proposal* to you within one hour for your review Toll free **800-417-7623**

✥   You can click on details for a specific country HERE



## Here's All We Will Need:

1. **3 copies of the documents to be served (we do not need originals; only copies of the same documents you would serve locally)**

2. **A brief letter of instructions with service address**

3. **A check for the service - we will send you a statement for any required translation costs**

# Got a Case Involving a Foreign Defendant?

## We can solve *all* of your problems

### Here is what we can do:

- **Serve** documents in any country

- Hire an **attorney** for you anywhere in the world

- Obtain **evidence** and arrange **depositions** globally

- **Translation** in 88 languages

- Local **contact** available in any nation

- Local **interpreters** for depositions

- Foreign **corporation** research

- **Locate** anyone – anywhere

- Research **laws** and **local rules** in foreign jurisdiction

- Lawsuit **search** on defendant

- **Embassy**/Consulate support in any nation

- **News** search on any defendant

- Surveillance/Stake-out/**investigations**

- Any other legal support assignment you may have

# Specializing in International Service of Process



---

## About International Service of Process

There are two general methods of service abroad:

### Formal Methods:

The "formal method" of service is the generally recommended method of service, particularly in countries that are signatories to an international treaty, such as the *Hague Service Convention*. This method is needed if it is anticipated that enforcement of judgment will be required.

The *Hague Service Convention* set forth the international rules related to service of process outside the originating country. Each nation that belongs to the *Hague Service Convention* agrees to abide by these international rules.

*Letters Rogatory* is the formal method to be used in countries that are not signers of the Hague Service Convention. In addition, the I*nter-American Convention on Letters Rogatory* controls the same issues between countries in North and South America. *Letters Rogatory* is also used when taking the deposition of a person in another jurisdiction.

The timeframe for service pursuant to formal methods can range from 1 to 5 months since proper procedures and/or diplomatic channels must be followed (typical turnaround time in most nations is 2-3 months). Costs are significantly *lower* than in informal service in most countries.

Generally, we recommend the formal method of service to insure a valid judgment.

No matter which method you choose, **we handle the paperwork and logistics in completing the service** in a timely and efficient manner. **We do everything** from preparing the letter of transmittal to the translation of your filed documents, as required.

### Informal Methods:

Informal methods of service are available in most areas of the world where service by a non-attorney or private process server are . In general, if the country is not a signatory of an international treaty, service may be made by informal methods (similar to service in the United States). However, some countries such as Germany, Japan, Korea, China, Switzerland and Italy do not allow service by private process server and impose serious civil and criminal sanctions on those who violate their national sovereignty.

The advantage to utilizing informal service, in nations where it is available, is often the timeframe for completing service.

**Call us and we will fax** you an up-dated information sheet on the various available methods of service and our fees.



Call (800)417-7623  or  800-4-1-PROCESS    Fax:  (818)772-4798 or e-mail

We routinely serve legal documents throughout the world.  As a matter of fact,  we've been doing it for the past 25 years.  The process is simple since we do all the legwork and follow-up.    Service does, however, generally take longer than in the United States due to varying customs and practices in other countries.

We also welcome documents from all countries for service in the United States and Canada......or anywhere in the world!   Our network of experienced and efficient Process Servers will complete your assignment in a timely manner.

**Oh yes, you won't find a lower rate!**

Note:  These descriptions of service options are presented in general terms.  **We will be pleased to provide specific information regarding service in a particular country.**

### Translation Services:

We offer translation in all foreign languages  -  **Call us for discounted rate.**

Don't forget:  We can serve anyone. . .*anywhere in the world. . .* and just around the corner!

**Call us at (800)417-7623**   or



[1] Lowest rate of any top 10 international service company. Guaranteed service means we will serve the documents at the address provided, if service is legally possible. Dated documents may require a re-set of the court date if unable to serve in time, in which case there will not be an additional charge  Additional charge will apply for additional addresses. In rare cases, some countries may impose additional fees that have not been announced prior to service.  Such fees will be the responsibility of the attorney requesting service.

**E-mail**  **Us**

**Process Service Network**™ is a registered trademark. Copyright @1998- 2004.   All rights reserved.

Case 1:03-md-01570-GBD-SN   Document 1188-2   Filed 09/06/05   Page 38 of 42



**Phone:** (800)4-1-PROCESS  **or**  (800)417-7623  **or**  (818)772-4795

**Fax:**   (818)772-4798

**Mailing address:**   10010 Canoga Avenue #B6,  Chatsworth, CA  91311-0959

**E-mail:**   processnet@sbcglobal.net



*Specializing in International Service and "hard-to-serve" cases*



* Guaranteed service means we will serve the documents at the address provided, if service is legally possible. Dated documents may require a re-set of the court date if unable to serve in time.  Additional charge will apply for additional addresses and attempts on dated documents after re-set.  Guarantee does not apply to investigations, out-of-area process service, small claims cases, or international service of process due to circumstances that may occur beyond our control in certain nations and we cannot be responsible for such circumstances. No refunds will be made after institution of any assignment, for any reason.  All fees are due and payable upon demand. Our fees cover all known governmental fees in foreign nations and our fee to handle the service; in rare cases, extra charges may apply to cover governmental agency fees.  Note:  We've been doing it for 26 years, so we must be doing it right.

**Celebrating 26 years of service to the legal profession**



pro                                  cess servers Los            Angeles, process servers Quebec, process servers Montreal, process servers
**Last modified: Tuesday February 10, 2004.**ess servers Sacramento, process servers Arkansas, process servers Alaska, process servers Colorado, process servers Connecticut, process servers Calgary, process servers District of Columbia, process servers Delaware, process server Florida, process servers Georgia, process servers Hawaii, process servers Idaho, process servers Illinois, process servers Mississippi, process servers Montana, process servers Nebraska, process servers New Hampshire, process servers New Jersey, process servers New Mexico, process servers Mexico, process servers North Carolina, process servers North Dakota, process servers Ohio, process servers Oklahoma, process servers Oregon, process servers Pennsylvania, process servers Indiana, process servers Iowa, process servers Kansas, process servers Kentucky, process servers Louisiana, process servers Maine, process servers Maryland, process servers Massachusetts, process servers Missouri, process servers Michigan, process servers Minnesota, process servers, Rhode Island, process servers South Carolina, process servers South Dakota, process servers Tennessee, process servers Texas, process servers Utah, process servers Utah, process servers Vermont, process servers Virginia, process servers Washington, process servers Washington, DC, process servers West Virginia, process servers Wisconsin, process servers Wyoming, process servers Chatsworth

**Exhibit 9**

Sheikh Safer Al-Hawali's
and
Salman Al-Oadah's
Consolidated Motion to Dismiss

03 MDL No. 1570 (RCC)



[ Home ] [ Up ] [ Afghanistan ] [ Albania ] [ Algeria ] [ American Samoa ] [ Anguilla ] [ Antigua ]
[ Argentina ] [ Armenia ] [ Aruba ] [ Australia ] [ Austria ] [ Bahamas ] [ Bahrain ] [ Bangladesh ] [ Barbados ]
[ Belarus ] [ Belgium ] [ Belize ] [ Bermuda ] [ Bolivia ] [ Bosnia ] [ Brazil ] [ Bulgaria ] [ Cambodia ] [ Canada ]
[ Cayman Islands ] [ Channel Islands ] [ Chile ] [ China ] [ Colombia ] [ Cook Islands ] [ Costa Rica ] [ Croatia ]
[ Cuba ] [ Cyprus ] [ Czech Republic ] [ Denmark ] [ Dominica ] [ Dominican Republic ] [ Egypt ] [ El Salvador ]
[ England ] [ Ecuador ] [ Estonia ] [ Fiji ] [ Finland ] [ France ] [ Germany ] [ Ghana ] [ Gibraltar ] [ Great Britain ]
[ Grenada ] [ Greece ] [ Guam ] [ Guatemala ] [ Haiti ] [ Honduras ] [ Hong Kong ] [ Hungary ] [ Iceland ] [ India ]
[ Indonesia ] [ Iran ] [ Iraq ] [ Ireland ] [ Isle of Man ] [ Israel ] [ Italy ] [ Jamaica ] [ Japan ] [ Jordan ] [ Kazakhstan ]
[ Kenya ] [ Korea ] [ Kuwait ] [ Lebanon ] [ Liberia ] [ Liechtenstein ] [ Luxembourg ] [ Macau ] [ Malaysia ]
[ Mauritius ] [ Mexico ] [ Monaco ] [ Mongolia ] [ Morrocco ] [ Namibia ] [ Nepal ] [ Netherlands ]
[ Netherland Antilles ] [ Nevis & St Kitts ] [ New Zealand ] [ Nicaragua ] [ Nigeria ] [ Norway ] [ Pakistan ]
[ Panama ] [ Peru ] [ Philippines ] [ Poland ] [ Portugal ] [ Puerto Rico ] [ Romania ] [ Russia ] [ St Vincent ]
[ Saudi Arabia ] [ Scotland ] [ Singapore ] [ South Africa ] [ Spain ] [ Sweden ] [ Switzerland ] [ Taiwan ] [ Thailand ]
[ Trinidad ] [ Turkey ] [ UAE ] [ Ukraine ] [ United Kingdom ] [ Uruguay ] [ Venezuela ] [ Virgin Islands ] [ Vietnam ]
[ Zimbabwe ]

# Process Service Guaranteed.

## Saudi Arabia International Service Up-date

Home
Up

### Saudi Arabia

*Process Service Network* is one of a few firms that specializes in international service of process and offers competitive rates on foreign services. Here is a summary of the methods available for service outside the United States and a specific proposal for the requested nation.

Our job is to cut through the bureaucracy and red tape to get the service completed with as little delay as possible. Since we have been in business for 26 years, we have developed close working relationships with key individuals in most countries throughout the world. The founder and President of *Process Service Network* was a Political Science major in college with a focus on international relations and is actively involved in a worldwide organization through which he has developed business and personal relationships in over 80 nations worldwide.

#### FORMAL SERVICE:

**SAUDI ARABIA** is <u>not</u> a signer of the Hague Service Convention. There is currently no formal method of service since Saudi Arabia does not honor Letters Rogatory.

#### INFORMAL SERVICE:

Private process servers may serve documents in most countries, whether a signer of *The Hague Service Convention*, or not. Service is normally handled in a manner similar to methods used in the United States, although completion of the service usually takes longer. Customs and traditions in other countries tend to lead to a slower pace and less rigid work habits, particularly in the Arab nations. Service sometimes may take several months but informal service is generally much faster than formal methods. Most process servers who we employ are off-duty police officers or other government officials who are able to, in certain cases, exercise their official capacity to complete the service. Since we pay the process server a bonus (at our own expense) for prompt

service, the normal delays are usually reduced.

It must be advised, however, that corruption is sometimes evident in that country and that it is common for the process server to contrive an excuse for delays and/or additional costs. We will cover any additional costs but delays may be unavoidable.

Further, service in Saudi Arabia has been complicated in the recent period due to tensions in the Arab world. We do all that is possible to insure a timely completion of the service.

Advantage:     Time and cost.

Disadvantage: Judgment may not be enforceable in the country where assets are located.

**TRANSLATIONS:**

Some countries require the documents to be translated into the official language of the nation where they are to be served. The U.S. State Department *recommends* translation, but it is not a requirement unless the formal method is used. It is possible, although rare, that a demurer could be filed based upon lack of understanding by the defendant as to the nature and meaning of un-translated documents. It is important that the Defendant understand the nature of the documents.

**COSTS:**

**Service of process:**

**Informal = $1175.00**     All fess are per defendant/address

Translation:       **$0.38 per word** (proper nouns not translated)

**DECLARATIONS:**

We provide any necessary formal Declarations, under penalty of perjury, that the Court may require as to the progress and status of the service (at <u>no</u> additional cost).

**WARNING:**       **Beware of companies that quote suspiciously low rates. They often come back later with an excuse for an additional charge. Our rates are firm for one address quoted. Other companies are actually brokerage firms or website developers, not process service agencies, who farm out assignments to secondary companies that are not knowledgeable or qualified on international service of process.**

**DISCLAIMER:**

The information contained herein is provided for general information only and may not be accurate at the time of service in a particular case or country. Questions involving specific services should be directed to our office. Care should be exercised in choosing the method of service (formal/informal) if eventual enforcement of a U.S. judgment is anticipated in the country where the documents are to be served. No legal advice is intended in the statements contained herein. Assignments for international service of process are accepted on the basis that the assigning law firm has researched all applicable laws. Process Service Network and its agents assume no liability for its actions in the course of any phase of the service of process assignment.

**Process Service Network**™ is a registered trademark. Copyright @1998- 2004. All rights reserved.



**Phone:** (800)4-1-PROCESS   **or**   **(800)417-7623**   **or**   (818)772-4795

**Fax:**   **(818)772-4798**

**Mailing address:**   **10010 Canoga Avenue #B6,  Chatsworth, CA  91311-0959**

**E-mail:**   **processnet@sbcglobal.net**



*Specializing in International Service and "hard-to-serve" cases*



* Guaranteed service means we will serve the documents at the address provided, if service is legally possible. Dated documents may require a re-set of the court date if unable to serve in time.  Additional charge will apply for additional addresses and attempts on dated documents after re-set.  Guarantee does not apply to investigations, out-of-area process service, small claims cases, or international service of process due to circumstances that may occur beyond our control in certain nations and we cannot be responsible for such circumstances. No refunds will be made after institution of any assignment, for any reason.  All fees are due and payable upon demand. Our fees cover all known governmental fees in foreign nations and our fee to handle the service; in rare cases, extra charges may apply to cover governmental agency fees.  Note:  We've been doing it for 26 years, so we must be doing it right.

**Celebrating 26 years of service to the legal profession**



pro                                cess servers Los              Angeles, process servers Quebec, process servers Montreal, process servers
**Last modified: Monday March 08, 2004.**ess servers Sacramento, process servers Arkansas, process servers Alaska, process servers Colorado, process servers Connecticut, process servers Calgary, process servers District of Columbia, process servers Delaware, process server Florida, process servers Georgia, process servers Hawaii, process servers Idaho, process servers Illinois, process servers Mississippi, process servers Montana, process servers Nebraska, process servers New Hampshire, process servers New Jersey, process servers New Mexico, process servers Mexico, process servers North Carolina, process servers North Dakota, process servers Ohio, process servers Oklahoma, process servers Oregon, process servers Pennsylvania, process servers Indiana, process servers Iowa, process servers Kansas, process servers Kentucky, process servers Louisiana, process servers Maine, process servers Maryland, process servers Massachusetts, process servers Missouri, process servers Michigan, process servers Minnesota, process servers, Rhode Island, process servers South Carolina, process servers South Dakota, process servers Tennessee, process servers Texas, process servers Utah, process servers Utah, process servers Vermont, process servers Virginia, process servers Washington, process servers Washington, DC, process servers West Virginia, process servers Wisconsin, process servers Wyoming, process servers Chatsworth