**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                       )

IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001    )        No. 03 MDL 1570 (RCC)
                                         )        ECF Case
_____)

This document relates to:
>BURNETT, _et al._ v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., _et al._, Case No. 03-CV-5738;
>
>EURO BROKERS, INC., _et al._ v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., _et al._, Case No. 04-CV-07279; and
>
>WORLD TRADE CENTER PROPERTIES LLC, _et al._ v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., _et al._, Case No. 04-CV-07280.

**MEMORANDUM OF LAW IN SUPPORT OF
HAMAD AL-HUSAINI'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Hamad Al-Husaini

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.      Introduction ............................................................................................................. 1

II.     Procedural History ................................................................................................. 2

III.    Factual Background ............................................................................................... 3

IV.     Summary of Legal Argument ................................................................................ 3

V.      This Court Lacks Personal Jurisdiction over Mr. Al-Husaini, Pursuant to Rule
        4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute .............................. 4

VI.     This Court must Dismiss Plaintiffs' Complaints Against Mr. Al-Husaini, Pursuant
        to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim .................................... 5

        A.      Plaintiffs Fail to Plead Sufficient Facts Showing That Mr. Al-Husaini's
                Acts  Proximately Caused Plaintiffs' Injuries ................................................... 7

        B.      Plaintiffs' Claims Against Mr. Al-Husaini Under the Torture Victim
                Protection Act, the Anti-Terrorism Act, the Alien Tort Claims Act, and
                Plaintiffs' Common Law Claims, Must be Dismissed as a Matter of Law ...... 8

        C.      The *Burnett* Plaintiffs Lack Standing to Maintain Their RICO Claims
                Because Their Injuries are Personal Injuries, Not Injuries to Business or
                Property ...................................................................................................... 11

        D.      Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
                Against Mr. Al-Husaini for Plaintiffs' RICO Claims ...................................... 12

        E.      Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
                Against Mr. Al-Husaini Because He Owed No Duty of Care to Plaintiffs ...... 13

        F.      Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
                Independent Cause of Action Exists ................................................................ 14

        G.      Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
                Independent Cause of Action Exists ................................................................ 14

VII.    Plaintiffs' Service of Process on Mr. Al-Husaini Is Insufficient and Should Be
        Quashed Pursuant to Rule 12(b)(5), Fed. R. Civ. P. ................................................. 15

CONCLUSION ................................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................  15

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
    No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............  7-8

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................................  8

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ..............................................................................  4

Bigio v. Coca-Cola Co.,
    239 F.3d 440 (2d Cir. 2001) ..............................................................................  9

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) ...........................................................................  9

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................. *passim*

Child v. Beame,
    417 F. Supp. 1023 (S.D.N.Y. 1976)....................................................................  3-4

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ...................................................................  15

Conley v. Gibson,
    355 U.S. 41 (1957) .............................................................................................  5

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ..................................................................................  5

Denny v. Barber,
    73 F.R.D. 6 (S.D.N.Y. 1977) ..............................................................................  6

Diaz v. Gates,
    No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*)..............  12

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ................................................................ 7

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ............................................................... 15

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993).............................................. 10

*In re*: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ............................................ *passim*

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) ..................................................... 11

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ....................................................... 15

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................... 14

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ............................................................... 11

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) .................................................... 7

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) .................................................. 14

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ............................................................... 14

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................. 4

Morrissey v. Curran,
    482 F. Supp. 31, 59 (S.D.N.Y. 1979).................................................. 17

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344, 350 (1999)................................................................... 15

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253, 256 (2d Cir. 1991)....................................................... 17

iii

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ................................................................. 12

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ...................................................................... 14

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ...................................................10

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ...................................................10

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................ 7

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) .................................................. 14

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................... 9

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987)........................................................... 5-6

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) .................................................... 11

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) .......................................................... 11

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) ................................................. 11-12

**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ..................................................... 9

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. .............................................. 9-10

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. ......... 11-13

    18 U.S.C. § 1962(a) ............................................................... 2, 12

iv

18 U.S.C. § 1962(c) ........................................................................ 2, 12-13

18 U.S.C. § 1962(d) ........................................................................ 2, 12-13

18 U.S.C. § 1964(c) ........................................................................ 12

Torture Victim Protection Act, 28 U.S.C. § 1350 note ................................ 2, 8

Federal Rules of Civil Procedure:

Rule 4(k)(1)(D) .......................................................................... 5

Rule 12(b) ............................................................................... 2

Rule 12(b)(2) ........................................................................... 2

Rule 12(b)(5) ........................................................................... 2, 15-17

Rule 12(b)(6) ........................................................................... 2, 5-6

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ....................................................... 8

N.Y. C.P.L.R. § 302(a) (McKinney 2001) ....................................................... 5

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ........................................ 10

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ....................................................... 10

I.      **INTRODUCTION.**

Hamad Al-Husaini, a Saudi citizen, was named as a defendant in six of the complaints before this Court, but with no allegations pled against him.  This Court, in its January 18, 2005 decision, granted his motion to dismiss the first *Burnett* complaint ("*Burnett I*") for lack of personal jurisdiction.  As set forth below, the same result must apply to the other complaints.

On April 8, 2004, Mr. Al-Husaini filed a motion to dismiss *Burnett I*, for lack of personal jurisdiction and improper service of process.  The *Burnett* plaintiffs, in their opposition brief, attempted to plead allegations relating to the "Golden Chain," which Mr. Al-Husaini rebutted in his reply brief by showing that the "Golden Chain" had been rejected by other courts as a basis for imposing liability or proving a connection to terrorism.  The "Golden Chain" is not legally competent evidence because there is no authentication, it is undated, and no one with first-hand knowledge has testified as to its meaning.  After his motion was fully briefed and argued, the *Federal Insurance* plaintiffs dismissed him (Docket No. 566) (Dec. 9, 2004), and the *New York Marine* plaintiffs dropped him when they filed their Amended Complaint (Dec. 23, 2004).

On January 18, 2005, this Court granted Mr. Al-Husaini's motion to dismiss him from *Burnett I* for lack of personal jurisdiction.  *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005).  In particular, this Court rejected the *Burnett* plaintiffs' attempts to use the "Golden Chain" as a basis for establishing personal jurisdiction or otherwise imposing liability on him, holding that the Golden Chain fails to establish "involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the United States."  Id. at 818.  During the June 14, 2005 motions hearing, this Court rejected the plaintiffs' subsequent attempts re-argue the "Golden Chain" in this litigation.  See Tr. at 5-6, 32-34, 36 (June 14, 2005).

As a result of this Court's decision, Mr. Al-Husaini is only a defendant in three lawsuits – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Euro Brokers*, and *World Trade Center Properties*, all filed by the same law firm.  However, in each of these three complaints, Mr. Al-Husaini is listed only in the caption.  Plaintiffs made no attempt to plead any allegations about him in the text of these complaints.  Nor have they filed RICO statements.

Mr. Al-Husaini respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.[1]  As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over Mr. Al-Husaini, a non-resident who lacks any contacts with this forum.  This Court must further find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against Mr. Al-Husaini, primarily because plaintiffs have failed to plead sufficient facts showing that his acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve Mr. Al-Husaini were insufficient.

## II.   PROCEDURAL HISTORY.

This Court held that the plaintiffs could not state claims under the Torture Victim Protection Act against defendants who did not act under color of law.  *In re* Sept. 11, 349 F. Supp. 2d at 828.  This Court further held that the plaintiffs could not state Civil RICO claims under 18 U.S.C. § 1962(a), (c), and (d), against those defendants who were not "central figures in the underlying schemes" or whose income was not alleged to have injured plaintiffs.  Id. at 827-28.  This Court held that the assault and battery and intentional infliction of emotional

---

[1] Mr. Al-Husaini is moving against the *Burnett* complaint originally filed in this Court, No. 03-CV-5738, which is similar to the *Burnett* complaint filed in the District of Columbia, but with changes in the listing of parties.

2

distress claims had to be dismissed with respect to plaintiffs whose complaints were filed more

than one year after September 11, 2001, which includes the *Burnett* complaint herein.  Id. at 829.

This Court also held that the negligence and negligent infliction of emotional distress claims

could not be stated against defendants who owed no duty to plaintiffs.  Id. at 830-31.

### III.   FACTUAL BACKGROUND.

There are no facts pled against Mr. Al-Husaini.  Nor is he mentioned anywhere in the

official report of the 9/11 Commission, available online at http://www.9-11commission.gov/.

This Court must reject any attempt by plaintiffs to re-plead allegations regarding the "Golden

Chain."  All that remains is that Mr. Al-Husaini, a Saudi citizen and a businessman who has

never been to this country, and has no real property, bank accounts, or investments in this

country, and has never knowingly supported terrorism, has no contacts with the United States.

See Declaration of Sheikh Hamad Al-Husaini, at ¶¶ 3-7 (attached and incorporated hereto as

Exhibit 1, Attachments A and B).[2]

### IV.   SUMMARY OF LEGAL ARGUMENT.

Plaintiffs failed to make any showing that this Court, or indeed any court in this country,

can exercise personal jurisdiction over Mr. Al-Husaini.  Plaintiffs have not allege any specific

wrongful conduct by Mr. Al-Husaini, let alone conduct related to the 9/11 attacks.  Nor have

plaintiffs pled any facts that would establish that his conduct proximately caused their injuries,

or made out the specific requirements of their claims.  Where, as here, "a defendant is merely

named in the caption of a complaint but is nowhere claimed to have caused the plaintiff injury,

---

[2] Mr. Al-Husaini cannot read, write or speak English.  Therefore, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim (who authenticated the translation), which is Exhibit 1 to this Motion.  A translation of the Al-Husaini Declaration into English is Attachment B to the Alim Declaration.

the complaint against him must be dismissed." Child v. Beame, 417 F. Supp. 1023, 1025 (S.D.N.Y. 1976). Even where a "complaint does contain some very broad allegations that all defendants" took certain actions, "such conclusory allegations are clearly insufficient to charge the defendants with a conspiracy," so that "the complaint also fails adequately to notify the movants of any cause of action that plaintiffs might have against them." Id. at 1025-26 (granting motion to dismiss); accord Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 111 (D.D.C. 2003) ("the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading"). Here, there are only conclusory allegations about all defendants, without the requisite "sufficient information" about Mr. Al-Husaini.

## V. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. AL-HUSAINI, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Mr. Al-Husaini, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction. The burden is on plaintiffs to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction. *In re* Sept. 11, 349 F. Supp. 2d at 804; Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

This Court held that the "Golden Chain" – the basis previously proffered by plaintiffs for exercising personal jurisdiction – could *not* be used for that purpose. *In re* Sept. 11, 349 F. Supp. 2d at 817-18. There is no other basis that would allow this Court to exercise personal

4

jurisdiction under either the catch-all provision of Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney 2001).

Nor would the exercise of personal jurisdiction over Mr. Al-Husaini satisfy the requirements of due process, which require some level of minimum contacts with this forum. *In re* Sept. 11, 349 F. Supp. 2d at 810-11. This Court need go no further, and should dismiss the *Burnett II, Euro Brokers*, and *World Trade Center Properties* complaints against Mr. Al-Husaini for lack of personal jurisdiction.

### VI. THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST MR. AL-HUSAINI, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs have not pled factual allegations against Mr. Al-Husaini, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Here, of course, there are no allegations, let alone "conclusory allegations" against Mr. Al-Husaini. Nor should this Court countenance any attempt by plaintiffs to argue that they should be entitled to discovery to obtain facts to plead their claims. As Judge Easterbrook concluded, "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." Szabo Food Serv.,

Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery.").

The plaintiffs brought the following claims against Sheikh Al-Husaini:  statutory tort claims under (1) the Anti-Terrorism Act (*Burnett II* and *World Trade Center Properties*); (2) the Torture Victim Protection Act (*Burnett II*); (3) the Alien Tort Claims Act (*Burnett II*); and (4) Civil RICO (*Burnett, Euro Brokers,* and *World Trade Center Properties*).  Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Burnett II*); (2) conspiracy, and aiding and abetting (*Burnett II* and *World Trade Center Properties*); and (3) property destruction and damage (*Euro Brokers* and *World Trade Center Properties*).  The *Burnett II* plaintiffs brought a negligence claim and a negligent and intentional infliction of emotional distress claim.  All plaintiffs brought separate claims for punitive damages.

A.   **PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT MR. AL-HUSAINI'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.**

This Court must find that the plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have not pled sufficient facts showing that Mr. Al-Husaini's acts proximately caused plaintiffs' injuries.  Plaintiffs have merely alleged in a conclusory manner that all defendants provided support to al Qaeda, which led to the September 11 attacks.  As there are 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 201 defendants in *Euro Brokers*, and 201 defendants in *World Trade Center Properties*, there is no way for Mr. Al-Husaini to know what plaintiffs are alleging is his

wrongful conduct.

Under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re* Sept. 11, 349 F. Supp. 2d at 826.  Hence, in order to impose liability on Mr. Al-Husaini through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").

Plaintiffs' listing of Mr. Al-Husaini in the captions, without pleading any facts, is insufficient to meet the standards set forth by the Second Circuit in Pittman, and this Court's prior ruling.  Hence, the absence of specific allegations regarding Mr. Al-Husaini himself requires this Court to find that plaintiffs cannot use concerted liability theories as a basis for their tort claims against him.  Nor can plaintiffs simply "lump" Mr. Al-Husaini with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9

(S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

This Court should dismiss plaintiffs' tort claims against Mr. Al-Husaini, because plaintiffs have failed to state a cause of action that his acts directly and intentionally injured plaintiffs, thereby precluding them from recovering under any direct tort theory, i.e., the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; New York wrongful death and survival statutes; and common-law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.**  **PLAINTIFFS' CLAIMS AGAINST MR. AL-HUSAINI UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, THE ALIEN TORT CLAIMS ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Burnett* Count 1), because Mr. Al-Husaini, a businessman, could not have acted under color of law as required to impose liability on individuals.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

(2)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829. The *Burnett II* (New York) complaint was filed on August 1, 2003, more than one year after September 11, 2001.  Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed

8

is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 (*Burnett* Count 4), because liability can only be imposed if (1) the defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "certain forms of conduct" such as "hijacking of aircraft" or "certain acts of terrorism." Bigio v. Coca-Cola Co., 239 F.3d 440, 447-48 (2d Cir. 2001).  Mr. Al-Husaini is not a state actor, and plaintiffs have not pled that he was acting under color of state law.  Nor have plaintiffs pled facts to state a claim that he engaged in, or knowingly supported, the requisite misconduct, i.e., hijacking or terrorism.

(4)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Burnett* Count 3; *World Trade Center Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that Mr. Al-Husaini engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  As set forth in this Court's prior decision, the "Golden Chain" fails to support any allegation that Mr. Al-Husaini supported terrorism.  *In re* Sept. 11, 349 F. Supp. 2d at 818 ("The 'Golden Chain' does not say what the Plaintiffs argue

it says.  It is only a list of names found in a charity's office.").  Thus, plaintiffs' allegations fail to support their ATA claims against Mr. Al-Husaini.

(5)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Burnett* Counts 5 and 7), because plaintiffs have not pled any facts to support an allegation that Mr. Al-Husaini "caused the decedent's death," or that he committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that Mr. Al-Husaini "supported, aided and abetted, or conspired with the September 11 terrorists."  *In re* Sept. 11, 349 F. Supp. 2d at 829.

(6)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Burnett* Count 8), and property destruction tort claims (*Euro Brokers* Counts 1-2, 6, 8; *World Trade Center Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Mr. Al-Husaini's acts caused plaintiffs' injuries, as required for these torts.  Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[3]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their

---

[3] Mr. Al-Husaini has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

property damage claims, since plaintiffs have not pled facts sufficient to show that Mr.

Al-Husaini associated himself with, and participated in, the conspiracy resulting in the property

damage, let alone that the property damage was a foreseeable act done in furtherance of any of

his unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492,

1499 (1st Cir. 1997).  Finally, plaintiffs' "bare legal conclusions are not sufficient" to state an

intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837

(Sup. Ct. 2000).

> **C.    THE *BURNETT* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR
> RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL
> INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.**

This Court must dismiss the RICO claims brought by the *Burnett* personal injury

plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The

*Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* plaintiffs instead decide to pursue their RICO claims against Mr.

Al-Husaini, this Court must find that as personal injury plaintiffs, they lack standing to bring

RICO claims, which are limited by statute to "[a]ny person injured in his business or property."

18 U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal injury plaintiffs cannot

seek recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip

Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business

or property'"); see also Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims

for lack of standing); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995)

(holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)");

von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal

injury is not actionable under RICO.").

The Ninth Circuit's recent decision in <u>Diaz</u>, referenced by the *O'Neill* plaintiffs in their supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in <u>Diaz</u>, the plaintiff specifically "alleged both the property interest and the financial loss" arising from his injury, not mere personal injury.  <u>Diaz v. Gates</u>, No. 02-56818, 2005 WL 1949879, at *3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly addressed the concerns raised by the dissent that RICO liability would extend to personal injuries, on the grounds that "our approach does not create RICO liability for every loss of wages resulting from personal injury."  <u>Id.</u>  Thus, even under <u>Diaz</u> – which is not binding on this Court – the personal injury plaintiffs still lack RICO standing.

### D.   PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST MR. AL-HUSAINI FOR PLAINTIFFS' RICO CLAIMS.

Even if this Court were to consider the allegations set forth to state the plaintiffs' RICO claims, it must still find that all the plaintiffs who seek to bring RICO claims against Mr. Al-Husaini have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  <u>*In re* Sept. 11</u>, 349 F. Supp. 2d at 827 (quoting <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Mr. Al-Husaini had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court previously held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Mr. Al-Husaini, since the plaintiffs have done nothing to show that each individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes."  Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim).  Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim.  Id. at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Mr. Al-Husaini under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his investment of the enterprise's income; that he engaged in an enterprise, or conspired with others to do so; or that he actively managed and operated the alleged enterprise, or was a central figure in the alleged scheme.

### E.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST MR. AL-HUSAINI BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett* plaintiffs' negligence and negligent infliction of emotional distress claims against Mr. Al-Husaini because he owed no duty of care to plaintiffs. It is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence

claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long

Island R.R. Co., 248 N.Y. 339, 342 (1928); In re Sept. 11, 349 F. Supp. 2d at 830.  The Burnett

plaintiffs have alleged nothing more than conclusory allegations that "all Defendants were under

a general duty."  See Burnett Compl. ¶ 666.  However, there is no general duty to "control the

conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin

Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court has previously dismissed the negligence

claims as to other defendants, because plaintiffs' "complaints presently before the Court do not

allege or identify a duty owed to Plaintiffs by moving Defendants." In re Sept.11, 349 F. Supp.

2d at 831; accord Burnett, 274 F. Supp. 2d at 108-09 (same).  Thus, this Court should dismiss

plaintiffs' negligence and negligent infliction of emotional distress claims against Mr.

Al-Husaini.

### F.     PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, brought against Mr.

Al-Husaini by all plaintiffs, because no independent cause of action exists under New York law

for this claim.  It is settled law that punitive damages are merely a form of relief, not an

independent tort cause of action.  See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App.

Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v.

UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of

action for punitive damages").

### G.     PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (Burnett, Count 9, and World

14

*Trade Center Properties*, Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Furthermore, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

## VII.   PLAINTIFFS' SERVICE OF PROCESS ON MR. AL-HUSAINI IS INSUFFICIENT AND SHOULD BE QUASHED PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.

Plaintiffs represented to this Court that Mr. Al-Husaini, and a number of other foreign defendants, could not be served by the method set forth under Rule 4, Fed. R. Civ. P., which they argued merited service by publication in three newspapers.  There are several flaws with plaintiffs' representations, and with allowing service of process by publication.  As the Supreme Court recently emphasized, "service of process . . . is fundamental to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant."  Id.

This is a jurisdictional requirement.  Id.

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi Arabia.  *See* Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the *International Herald Tribune* has a circulation of only 199 in Saudi Arabia, and that *Al Quds Al Arabi* is banned in that country).

Second, Mr. Al-Husaini does not read English, so that publication in the *International Herald Tribune* and *USA Today* is a nullity to him.  Id.; Declaration of Sheikh Hamad Al-Husaini (Ex. 1), at ¶ 11.  Even the one Arabic language newspaper is actually published in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only paid for announcements in the print editions, and not the online editions.  Even if Mr. Al-Husaini had access to the Internet, he would not have seen the announcement if he had checked this newspaper's website on the days the announcement ran in the print edition.

Third, plaintiffs made no showing that they could not serve Mr. Al-Husaini by means of a process server.  Indeed, plaintiffs' own process server, Nelson Tucker, on his website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a specific rate for Saudi Arabia.  See Process Service Network, "International" and "Saudi Arabia" (attached hereto as Exhibits 2-3).  Plaintiffs have offered no explanation as to why Mr. Tucker's firm could not have served Mr. Al-Husaini, as he claims he can do.

Finally, this Court should reject plaintiffs' argument that because Mr. Al-Husaini has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

16

> While ... [defendants] were undoubtedly aware that the action had been filed and
> that they were named as defendants, such knowledge is not a substitute for service
> on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be
> granted, and the rule would be a nullity.

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267

(2d Cir. 1981).  Further, the Second Circuit has held that "actual notice" is no substitute for

proper service under Rule 4, Fed. R. Civ. P.  See National Dev. Co. v. Triad Holding Corp., 930

F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void

service.").

Therefore, this Court should find that service of process by publication was improper,

since plaintiffs' representations to this Court did not justify that means of service.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Hamad Al-Husaini respectfully requests that this

Court grant his Motion to Dismiss for lack of personal jurisdiction, failure to state a claim upon

which relief can be granted, and improper service of process.

Respectfully submitted,


/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Hamad Al-Husaini

Dated:  September 6, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served

electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant

to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

_____

Alan R. Kabat