**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                    )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001       )        No. 03 MDL 1570 (RCC)
                                                    )        ECF Case
_____)

This document relates to:

      CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;

      FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978; and

      NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105.

**MEMORANDUM OF LAW IN SUPPORT OF
TALAL M. BADKOOK'S
AND THE
THE M.M. BADKOOK COMPANY'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Talal M. Badkook and
 the M.M. Badkook Company

DATED:  September 6, 2005

# TABLE OF CONTENTS

I.   Introduction ................................................................................................. 1

II.  Factual Background ...................................................................................... 1

III. Summary of Legal Argument ....................................................................  3

IV.  This Court Lacks Personal Jurisdiction over Mr. Badkook and the Badkook
     Company, Pursuant to Rule  4(k)(1)(D), Fed. R. Civ. P., or the New York
     Long-Arm Statute ........................................................................................ 4

     A.   Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising
          Personal Jurisdiction Over Mr. Badkook and the Badkook Company............ 5

     B.   The New York Long-Arm Statute Does Not Provide any Basis for
          Exercising Personal Jurisdiction Over Mr. Badkook and the Badkook
          Company.................................................................................................. 7

V.   This Court must Dismiss Plaintiffs' Complaints Against Mr. Badkook and the
     Badkook Company, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State
     a Claim ....................................................................................................... 9

     A.   Plaintiffs Fail to Plead Sufficient Facts Showing That Mr. Badkook's and
          the Badkook Company's Acts Proximately Caused Plaintiffs' Injuries ........ 11

     B.   Plaintiffs' Claims Against Mr. Badkook and the Badkook Company Under
          the Torture Victim Protection Act, the Anti-Terrorism Act, and Plaintiffs'
          Common Law Claims, Must be Dismissed as a Matter of Law ...................... 13

     C.   Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
          Against Mr.  Badkook and the Badkook Company for Plaintiffs' RICO
          Claims ...................................................................................................... 15

     D.   Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
          Against Mr. Badkook and the Badkook Company Because They Owed No
          Duty of Care to Plaintiffs .........................................................................17

     E.   Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
          Independent Cause of Action Exists ............................................................ 18

     F.   Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
          Independent Cause of Action Exists ............................................................ 18

VI.     Plaintiffs' Service of Process on Mr. Badkook and the Badkook Company Is
        Insufficient and Should Be Quashed Pursuant to Rule 12(b)(5), Fed. R. Civ. P. ...... 19

CONCLUSION ..................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
  572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................  18

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
  No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............  11

Arndt v. UBS AG,
  342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................................. 13

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
  171 F.3d 779 (2d Cir. 1999) .............................................................................  4

Boim v. Quranic Literacy Inst.,
  291 F.3d 1000 (7th Cir. 2002) ............................................................................  14

Burger King v. Rudzewicz,
  471 U.S. 462 (1985) .......................................................................................... 6

Burnett v. Al Baraka Invest. & Devel. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003) ................................................................. *passim*

Calder v. Jones,
  465 U.S. 783 (1984) ....................................................................................... 6, 8

Child v. Beame,
  417 F. Supp. 1023 (S.D.N.Y. 1976) ..................................................................... 4

Chrysler Capital Corp. v. Century Power Corp.,
  778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................. 8, 18

Conley v. Gibson,
  355 U.S. 41 (1957) ............................................................................................ 10

Daventree Ltd. v. Republic of Azerbaijan,
  349 F. Supp. 2d 736 (S.D.N.Y. 2004) ................................................................. 8

De Jesus v. Sears, Roebuck & Co.,
  87 F.3d 65 (2d Cir. 1996) ................................................................................... 10

iii

Denny v. Barber,
 73 F.R.D. 6 (S.D.N.Y. 1977) .................................................................. 10

Family Internet, Inc. v. Cybernex, Inc.,
 No. 98 Civ. 0637 (RWS), 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ................. 9

First Nationwide Bank v. Gelt Funding Corp.,
 27 F.3d 763 (2d Cir. 1994) .................................................................. 12

Grove Press, Inc. v. Angleton,
 649 F.2d 121 (2d Cir. 1981) ................................................................. 18

Helicopteros Nacionales de Colombia, S.A. v. Hall,
 466 U.S. 408 (1984) ........................................................................... 5

Howell v. New York Post Co.,
 81 N.Y.2d 115, 612 N.E.2d 699 (1993) .............................................. 15

*In re*: Terrorist Attacks on Sept. 11, 2001,
 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................... *passim*

Kajtazi v. Kajtazi,
 488 F. Supp. 15 (E.D.N.Y. 1978) ........................................................ 19

Karabu Corp. v. Gitner,
 16 F. Supp. 2d 319 (S.D.N.Y. 1998) .................................................... 5

King v. Crossland Savings Bank,
 111 F.3d 251 (2d Cir. 1997) ............................................................... 17

Kinetic Instruments, Inc. v. Lares,
 802 F. Supp. 976 (S.D.N.Y. 1992) ...................................................... 5

Lehigh Valley Indus., Inc. v. Birenbaum,
 527 F.2d 87 (2d Cir. 1975) ................................................................ 7

Liberman v. Worden,
 701 N.Y.S.2d 419 (App. Div. 2000) ................................................... 12

Mayes v. UVI Holdings, Inc.,
 723 N.Y.S. 2d 151 (App. Div. 2001) .................................................. 18

McCarthy v. Olin Corp.,
 119 F.3d 148 (2d Cir. 1997) ............................................................. 17

iv

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) .................................................................. 4

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) ........................................................................ 20

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344 (1999) ............................................................................................. 19

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) ............................................................................ 20-21

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) .................................................................................. 16

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ............................................................................................ 17

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ......................................................................15

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ......................................................................15

Pilates, Inc. v. Pilates Institute, Inc.,
    891 F. Supp. 175 (S.D.N.Y. 1995) ....................................................................... 5

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................................... 12

Polansky v. Gelrod,
    798 N.Y.S.2d 762 (App. Div. 2005) ..................................................................... 8

Schenker v. Assicurazioni Generali S.p.a.,
    No. 98 Civ. 9186 (MBM), 2002 WL 1560788 (S.D.N.Y. July 15, 2002) ............. 6

SEC v. Tone,
    833 F.2d 1086 (2d Cir. 1987) .............................................................................. 20

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ................................................................... 18

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ................................................................ 14

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987) ............................................................ 10

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ..................................................... 15

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ............................................................ 15


**Statutes and Rules:**

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................. 10, 13-14

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 15-17

        18 U.S.C. § 1962(a) ................................................................. 16-17

        18 U.S.C. § 1962(c) ................................................................. 16-17

        18 U.S.C. § 1962(d) ................................................................. 16-17

Torture Victim Protection Act, 28 U.S.C. § 1350 note .................................... 10, 13

Federal Rules of Civil Procedure:

        Rule 4(k)(1)(D) ..................................................................... 4-7, 9

        Rule 12(b) .......................................................................... 1

        Rule 12(b)(2) ....................................................................... 1, 4

        Rule 12(b)(5).......................................................................... 1, 19-21

        Rule 12(b)(6) ....................................................................... 1, 9-10

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ..................................................... 13

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) .............................................. 7-9

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ..................................... 14

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ..................................................... 14

**Other Materials:**

Executive Order 13224, 66 Fed. Reg. 54,404 (Oct. 26, 2001) ...................................... 2, 3

## I.  **INTRODUCTION.**

Talal M. Badkook, a Saudi citizen, and his family business, the M.M. Badkook Company ("Badkook Company"), were named as defendants in five of the complaints before this Court, but with minimal allegations pled against them.  Plaintiffs subsequently dismissed Mr. Badkook from *Ashton* and *Salvo*, and dismissed the Badkook Company from *Ashton, Salvo,* and *Federal Insurance*.  See *Ashton* Dismissal (Docket No. 230) (June 10, 2004); *Federal Insurance* Dismissal (Docket No. 566) (Dec. 9, 2004); *Salvo* Dismissal (Docket No. 633) (Jan. 19, 2005). As a result of these dismissals, Mr. Badkook is a defendant in only three cases, *Continental Casualty, Federal Insurance,* and *NY Marine*, and the Badkook Company is a defendant in only one case, *Continental Casualty*.

Mr. Badkook and the Badkook Company respectfully move, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.  As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over these defendants, non-residents who lack any contacts with this forum.  This Court must further find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against these defendants, primarily because plaintiffs have failed to plead sufficient facts showing that their acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve these defendants were insufficient.

## II.  **FACTUAL BACKGROUND.**

The plaintiffs have pled only minimal facts to support their claims against Mr. Badkook and the Badkook Company.  Nor are these two defendants mentioned anywhere in the official report of the 9/11 Commission, available online at http://www.9-11commission.gov/.  Plaintiffs'

allegations about these two defendants are so sparse as to fail to place defendants on notice of the charges against them, and further fail to support plaintiffs' claims, or to present facts permitting this Court to exercise personal jurisdiction over them.

The *Continental Casualty* plaintiffs state that Mr. Badkook was one of three incorporators of "the United States branch of Blessed Relief in Delaware in 1992," and that "Blessed Relief in the United States was also used as an Al Qaeda front used [sic] by wealthy Saudis and others to funnel money to Bin Laden's terrorist network."  See *Continental Casualty* Compl., at ¶ 354.  Both the *Continental Casualty* and *Federal Insurance* complaints note that Yassin Kadi is the Vice President of the Badkook Company.  Id. at ¶ 355; *Federal Insurance* Compl., at ¶ 488.

The *Federal Insurance* plaintiffs claim that "the United States government designated . . . the Blessed Relief Foundation under Executive Order 13224 on October 12, 2001, based on [its] pervasive involvement in sponsoring al Qaida's operations."  See *Federal Insurance* Compl., at ¶ 488.

The plaintiffs further allege that "Talal Badkook is also a member of the Al-Mustaqbal group along with Saleh Mohamed Bin Laden, son of Mohammed Bin Laden, and Abdullah Saleh Kamel, son of Saleh Kamel and the Chairman of the Dallah al-Baraka."  See *Continental Casualty* Compl., at ¶ 355.  However, plaintiffs do not allege any other facts about the "Al-Mustaqbal group," and it is mentioned nowhere else in the text of the complaint.

Finally, the *Federal Insurance* and *NY Marine* plaintiffs list Mr. Badkook as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations,

organizations or persons," but without setting forth any further facts in support of that generic allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

The key facts that plaintiffs rely upon are incorrect or blatant misrepresentations.  First, as previously briefed by Abdulrahman Bin Mahfouz, whom this Court dismissed for lack of personal jurisdiction, the Blessed Relief entity that was incorporated in Delaware in 1992 was in corporate existence for less than two years, having had its corporate charter revoked in 1994 for failure to pay any of the required annual fees.  See Declarations of Harriet Smith Windsor, Delaware Secretary of State (Dec. 11 and 16, 2003) and copies of the Secretary of State's certificate of incorporation, and Gateway listing (attached hereto as Exhibit 1).

Second, contrary to the *Federal Insurance* plaintiffs' statement, the United States government has never designated Blessed Relief, let alone Mr. Badkook or the Badkook Company.  The Executive Order that plaintiffs cite makes no mention of Blessed Relief, nor does any other Executive Order issued since 2000.  See Executive Order 13224, 66 Fed. Reg. 54,404 (Oct. 26, 2001).

As set forth below, the remaining facts that plaintiffs plead fail to support this Court's exercise of personal jurisdiction over Mr. Badkook and the Badkook Company, as this Court previously held with respect to Abdulrahman Bin Mahfouz.

### III.   SUMMARY OF LEGAL ARGUMENT.

Plaintiffs failed to make any showing that this Court can exercise personal jurisdiction over Mr. Badkook or the Badkook Company.  Plaintiffs have not alleged any specific wrongful conduct by these two defendants, let alone conduct related to the 9/11 attacks.  Nor have plaintiffs pled any facts that would establish that these two defendants' conduct proximately

caused their injuries, or made out the specific requirements of their claims. Where a "complaint does contain some very broad allegations that all defendants" took certain actions, "such conclusory allegations are clearly insufficient to charge the defendants with a conspiracy," so that "the complaint also fails adequately to notify the movants of any cause of action that plaintiffs might have against them." Child v. Beame, 417 F. Supp. 1023, 1025-26 (S.D.N.Y. 1976); accord Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 111 (D.D.C. 2003) ("the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading"). Here, there are only conclusory allegations about all defendants, without the requisite "sufficient information" about Mr. Badkook and the Badkook Company.

## IV. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BADKOOK AND THE BADKOOK COMPANY, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Mr. Badkook and the Badkook Company, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction. The burden is on plaintiffs to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction. *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

**A.    Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising Personal Jurisdiction Over Mr. Badkook and the Badkook Company.**

Under Rule 4(k)(1)(D), there are two possible approaches for exercising personal jurisdiction over a non-resident defendant – a "general jurisdiction" theory or a "specific jurisdiction" theory.  As a threshold matter, there is no basis for exercising jurisdiction over Mr. Badkook or the Badkook company under a "general jurisdiction" theory.  Plaintiffs have alleged no contacts with this country other than Mr. Badkook's status as an incorporator of the Blessed Relief entity in Delaware – an entity that was defunct seven years before the 9/11 attacks.  This does not satisfy the requisite level of "continuous and systematic" contacts to support the exercise of general jurisdiction.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Nor is there any basis for exercising jurisdiction over these two defendants under a "specific jurisdiction" theory.  This Court previously held that the involvement of Abdulrahman Bin Mahfouz as a director of the Blessed Relief, even if that entity was alleged to have contacts with this country, "will not sustain jurisdiction" over him.  In re Sept. 11, 349 F. Supp. 2d at 820. Clearly, the same result should be applied to Mr. Badkook, who was no more than an incorporator of the organization in 1992.  It is settled law that to exercise personal jurisdiction over a nonresident officer based on the acts of the corporation in this forum, the corporation's acts "must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction."  Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).[1]  Here, plaintiffs did not plead that Blessed Relief took any acts in

---

[1] See also Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction

this country, let alone that Mr. Badkook knew of, and controlled, such acts.

Nor did plaintiffs plead any facts to support any claim that Mr. Badkook's or the

Badkook Company's activities were "expressly aimed" at the United States, as required to

support the exercise of personal jurisdiction under a specific jurisdiction theory.  Burger King v.

Rudzewicz, 471 U.S. 462, 474-76 (1985); Calder v. Jones, 465 U.S. 783, 789-90 (1984).

Plaintiffs' claim that Blessed Relief was used "to funnel money to Bin Laden's terrorist

network," see Continental Casualty Compl., at ¶ 354, is also insufficient, given plaintiffs' failure

to plead any facts showing that Mr. Badkook and the Badkook Company knew what Blessed

Relief did, let alone that they themselves actually funneled money through Blessed Relief.  This

Court held that "conclusory allegations that he [Prince Turki] donated money to charities,

without specific factual allegations that he knew they were funneling money to terrorists, do not

suffice" for the exercise of personal jurisdiction.  In re Sept. 11, 349 F. Supp. 2d at 813-14.

Further, even had Blessed Relief actually been active in this country, and even if Mr.

Badkook or the Badkook Company had invested in the Blessed Relief entity in Delaware (which

plaintiffs, of course, do not allege), it is settled law that "investing money . . . cannot be

considered a form of doing business for the purpose of [personal jurisdiction]; if it were, then

almost every company in the country would be subject to New York's jurisdiction."  Schenker v.

Assicurazioni Generali S.p.a., No. 98 Civ. 9186 (MBM), 2002 WL 1560788, at *5 (S.D.N.Y.

July 15, 2002) (granting defendants' motion to dismiss for lack of personal jurisdiction).

Finally, although plaintiffs note that Mr. Badkook was a "member of the Al-Mustaqbal

---

under a theory of agency."); Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995) ("it is
well established that individual officers and employees of a corporation are not automatically subject to personal
jurisdiction in New York simply because a court can exercise jurisdiction over the corporation").

group," see *Continental Casualty* Compl., at ¶ 355, plaintiffs pled nothing else about this group, and certainly did not allege that it had any contacts with the United States. Therefore, plaintiffs have not pled any other facts relating to Mr. Badkook, or the Badkook Company, that would allow the exercise of personal jurisdiction over them under Rule 4(k), Fed. R. Civ. P.

> **B.    The New York Long-Arm Statute Does Not Provide any Basis for Exercising Personal Jurisdiction Over Mr. Badkook and the Badkook Company.**

The New York long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney 2001), does not allow the exercise of personal jurisdiction over Mr. Badkook and the Badkook Company. Section 302(a) sets forth four possible bases for exercising jurisdiction over a non-resident defendant.

(1)    Plaintiffs have not pled any facts showing that Mr. Badkook or the Badkook Company "transacts any business within the state," or "owns, uses, or possesses any real property situated within the state," thereby precluding the exercise of personal jurisdiction under Sections 302(a)(1) and 302(a)(4).

(2)    Plaintiffs also have not pled any facts showing that these two defendants "commit[ed] a tortious act within the state," which precludes Section 302(a)(2). Nor can plaintiffs avail themselves of a conspiracy theory under Section 302(a)(2). Plaintiffs' conclusory allegation that these two defendants were one of some three hundred defendants who "aided and abetted, conspired with . . . defendant al Qaida" and others, see *Federal Insurance* Compl. ¶ 66; *NY Marine* Compl. ¶ 45, is inadequate since the "bland assertion of conspiracy . . . is insufficient to establish jurisdiction for the purposes of section 302(a)(2)." Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975). The courts have required that three elements must be satisfied to exercise of personal jurisdiction under a conspiracy theory:

(a) the defendant had an awareness of the effects in New York of its activity;
(b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and
(c) the co-conspirators acting in New York acted "at the direction or under the control," or "at the request of or on behalf of" the out-of-state defendant.

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1269 (S.D.N.Y. 1991);

accord Polansky v. Gelrod, 798 N.Y.S.2d 762, 765 (App. Div. 2005) ("plaintiff still must show

sufficient dominion and control to attribute the conspirator's actions in New York to

defendants").  Since the complaints "do not allege any specific facts from which the Court could

infer that [defendant] . . . directed, controlled, or requested al Qaeda to undertake its terrorist

activities" or that Mr. Badkook and the Badkook Company had "knowledge of, or consent to

those activities," there can be no personal jurisdiction based on a New York long-arm conspiracy

theory.  In re Sept. 11, 349 F. Supp. 2d at 806 (citing Daventree Ltd. v. Republic of Azerbaijan,

349 F. Supp. 2d 736, 762-63 (S.D.N.Y. 2004) and Chrysler Capital, 778 F. Supp. at 1266).  This

Court should find that Section 302(a)(2) does not allow the exercise of personal jurisdiction over

Mr. Badkook and the Badkook Company.

(3)     Finally, plaintiffs have not pled any facts showing that, even if Mr. Badkook and

the Badkook Company committed "a tortious act without the state causing injury to person or

property within the state," that either defendant "(i) regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods

used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect

the act to have consequences in the state and derives substantial revenue from interstate or

international commerce," as required by Section 302(a)(3).  Further, where a non-resident

defendant is alleged to have committed torts outside the forum that somehow caused harm within

the forum, the requisite "relatedness" with the forum is not established unless the defendant "expressly aimed" its allegedly tortious conduct at the forum, Calder, 465 U.S. at 789, and was a "primary participant" in causing the harm from which the claim arose.  Id. at 790.  Plaintiffs have not pled any facts to support an allegation that Mr. Badkook and the Badkook Company "expressly aimed" their conduct at New York, let alone that they were a "primary participant" in the September 11 attacks.  Finally, plaintiffs have "not even ventured to prove that [defendant] himself 'derives substantial revenue from interstate or international commerce' as is required for jurisdiction to properly exist under Section 302(a)(3)(ii)."  Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999).  This Court should find that Section 302(a)(3) does not allow the exercise of personal jurisdiction over Mr. Badkook and the Badkook Company.

This Court must find that there is no other basis that would allow the exercise of personal jurisdiction over Mr. Badkook and the Badkook Company, under either the catch-all provision of Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York long-arm statute.  Nor would the exercise of personal jurisdiction over Mr. Badkook and the Badkook Company satisfy the requirements of due process, which require some level of minimum contacts with this forum.  In re Sept. 11, 349 F. Supp. 2d at 810-11.  This Court need go no further, and should dismiss the *Continental Casualty, Federal Insurance,* and *NY Marine* complaints against Mr. Badkook and the Badkook Company for lack of personal jurisdiction.

### V.  THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST MR. BADKOOK AND THE BADKOOK COMPANY, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs

have not pled factual allegations against Mr. Badkook and the Badkook Company, so that

dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim,

where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Second

Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations

unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De

Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Here, of course, there is nothing

more than "conclusory allegations" pled against Mr. Badkook and the Badkook Company.

This Court should not countenance any attempt by plaintiffs to argue that they should be

entitled to discovery to obtain facts to plead their claims. As Judge Easterbrook concluded, "It is

not permissible to file suit and use discovery as the sole means of finding out whether you have a

case." Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming

imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord

Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely

as tokens, guaranteeing access to a world of discovery.").

The plaintiffs brought the following claims against these two defendants: statutory tort

claims under (1) the Anti-Terrorism Act (*Federal Insurance* and *NY Marine*); (2) the Torture

Victim Protection Act (*Federal Insurance*); and (3) Civil RICO (*Continental Casualty, Federal

Insurance,* and *NY Marine*). Plaintiffs also brought state common-law tort claims for (1)

wrongful death and survival (*Federal Insurance*); (2) conspiracy, and aiding and abetting

(*Federal Insurance* and *NY Marine*); (3) assault and battery (*Federal Insurance*) and (4) property

10

destruction and damage (*Continental Casualty, Federal Insurance,* and *NY Marine*).  The

*Federal Insurance* and *NY Marine* plaintiffs brought negligence and negligent and intentional

infliction of emotional distress claims.  The *Federal Insurance* and *NY Marine* plaintiffs brought

separate claims for punitive damages.

A.    <strong>PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT MR. BADKOOK'S AND THE BADKOOK COMPANY'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.</strong>

This Court must find that the plaintiffs have failed to satisfy the threshold requirement for

their intentional tort claims since they have not pled sufficient facts showing that Mr. Badkook's

and the Badkook Company's acts proximately caused plaintiffs' injuries.  Plaintiffs have merely

alleged in a conclusory manner that all defendants provided support to al Qaeda, which led to the

September 11 attacks.  As there are 361 named defendants in *Burnett II* (with 5,000 "John Doe"

defendants), 201 defendants in *Euro Brokers*, and 201 defendants in *World Trade Center*

*Properties*, there is no way for Mr. Badkook and the Badkook Company to know what plaintiffs

are alleging is their wrongful conduct.  Plaintiffs' allegations regarding the incorporation of the

Blessed Relief entity in Delaware – which was defunct within two years – fail to plead any acts

taken by that entity that proximately caused plaintiffs' injuries.

Plaintiffs cannot simply "lump" Mr. Badkook and the Badkook Company with hundreds

of other defendants in an attempt to plead allegations in a collective manner.  See, e.g.,

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL

2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in

each claim without providing any factual allegations to distinguish their conduct, and

accordingly dismissal of the complaint in its entirety is warranted.").

11

Under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re Sept. 11*, 349 F. Supp. 2d at 826.  Hence, in order to impose tort liability on Mr. Badkook and the Badkook Company through a concerted liability theory, plaintiffs must show that they "must know the wrongful nature of the primary actor's conduct" and that they acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").  They have not alleged anywhere in their various complaints that Mr. Badkook and the Badkook Company knew that other defendants were acting in a wrongful manner, or that they acted "in pursuance of a common plan or design to commit a tortious act."

This Court should dismiss plaintiffs' tort claims against Mr. Badkook and the Badkook Company, because plaintiffs have failed to state a cause of action that these two defendants' acts directly and intentionally injured plaintiffs, thereby precluding them from recovering under any direct tort theory, i.e., the Torture Victim Protection Act; the Anti-Terrorism Act; the New York

12

wrongful death and survival statutes; and common-law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.     PLAINTIFFS' CLAIMS AGAINST MR. BADKOOK AND THE BADKOOK COMPANY UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Federal Insurance* Count 6), because Mr. Badkook, a businessman, and the Badkook Company, a private business, could not have acted under color of law as required to impose liability.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).  Moreover, only individuals, not corporations such as the Badkook Company, can be held liable under the TVPA.  Id. (dismissing TVPA claims against corporations).

(2)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claim (*Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.  The *Federal Insurance* complaint was filed on September 10, 2003, more than one year after September 11, 2001.  Since several complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act,

18 U.S.C. § 2331, et seq. (*Federal Insurance* Count 10; *NY Marine* Count 5), because plaintiffs have failed to plead any facts to support an inference that Mr. Badkook and the Badkook Company engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that they provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that they contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  Plaintiffs' minimal allegations about Mr. Badkook and the Badkook Company fail to satisfy this pleading requirement.

(4)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Federal Insurance* Counts 2 and 3), because plaintiffs have not pled any facts to support an allegation that Mr. Badkook and the Badkook Company "caused the decedent's death," or that they committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that these two defendants "supported, aided and abetted, or conspired with the September 11 terrorists." *In re* Sept. 11, 349 F. Supp. 2d at 829.

(5)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Federal Insurance* Count 5) and property destruction tort claims

14

(*Continental Casualty* Count 1; *Federal Insurance* Count 1; *NY Marine* Count 1), because plaintiffs have not pled any facts to support an allegation that Mr. Badkook's and the Badkook Company's acts caused plaintiffs' injuries, as required for these torts.  Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[2]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that these two defendants associated himself with, and participated in, the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act done in furtherance of any of their unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).  Finally, plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

### C.     PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST MR. BADKOOK AND THE BADKOOK COMPANY FOR PLAINTIFFS' RICO CLAIMS.

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that all the plaintiffs who seek to bring RICO claims against Mr.

---

[2] Defendants have not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  The plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

Badkook and the Badkook Company have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants. *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Mr. Badkook and the Badkook Company had the requisite level of directing the operation and management of the "Al Qaeda enterprise." As this Court previously held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim. Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Mr. Badkook and the Badkook Company since the plaintiffs have done nothing to show that each individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes." Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim). Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim. Id. at 827.

16

Therefore, this Court must dismiss plaintiffs' RICO claims against Mr. Badkook and the Badkook Company under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from their investment of the enterprise's income; that they engaged in an enterprise, or conspired with others to do so; or that they actively managed and operated the alleged enterprise, or were a central figure in the alleged scheme.

### D. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST MR. BADKOOK AND THE BADKOOK COMPANY BECAUSE THEY OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Federal Insurance* and *NY Marine* plaintiffs' negligence and negligent infliction of emotional distress claims against Mr. Badkook and the Badkook Company, because they owed no duty of care to plaintiffs.  It is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928); *In re* Sept. 11, 349 F. Supp. 2d at 830.  The plaintiffs have alleged only the conclusory allegation that all defendants "breached duties of care owed to plaintiffs and the employees of plaintiffs' insureds."  *Federal Insurance* Compl. ¶ 642; accord *NY Marine* Compl., at ¶ 79.  However, there is no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court has previously dismissed the negligence claims as to other defendants, because plaintiffs' "complaints presently before the Court do not allege or identify a duty owed to Plaintiffs by moving Defendants." *In re* Sept.11, 349 F. Supp. 2d at 831; accord Burnett, 274 F. Supp. 2d at 108-09 (same).  Thus, this Court should dismiss plaintiffs' negligence and negligent infliction of emotional distress claims against Mr. Badkook and the Badkook Company.

**E.      PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' punitive damages counts, brought against Mr. Badkook and the Badkook Company by all plaintiffs, because no independent cause of action exists under New York law for this claim.  It is settled law that punitive damages are merely a form of relief, not an independent tort cause of action.  See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

**F.      PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.**

This Court must dismiss the plaintiffs' conspiracy counts (*Federal Insurance*, Count 7, and *NY Marine,* Count 2), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").   Plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

18

**VI.    PLAINTIFFS' SERVICE OF PROCESS ON MR. BADKOOK AND THE
         BADKOOK COMPANY IS INSUFFICIENT AND SHOULD BE QUASHED
         PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.**

Plaintiffs represented to this Court that Mr. Badkook and the Badkook Company, along

with a number of other foreign defendants, could not be served by the method set forth under

Rule 4, Fed. R. Civ. P., which they argued merited service by publication in three newspapers.

There are several flaws with plaintiffs' representations, and with allowing service of process by

publication.  As the Supreme Court recently emphasized, "service of process . . . is fundamental

to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe

Stringing, Inc., 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or

waiver of service by the defendant), a court ordinarily may not exercise power over a party the

complaint names as a defendant."  Id.  This is a jurisdictional requirement.  Id.

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi

Arabia.  *See* Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the

*International Herald Tribune* has a circulation of only 199 in Saudi Arabia, and that *Al Quds Al

Arabi* is banned in that country).  Even the one Arabic language newspaper is actually published

in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only

paid for announcements in the print editions, and not the online editions.  Even if Mr. Badkook

or his employees had accessed these newspapers on the Internet, they would not have seen the

announcement if they had checked these newspapers' websites on the days the announcement

ran in the print edition.

Third, plaintiffs made no showing that they could not serve Mr. Badkook and the

Badkook Company by means of a process server.  Indeed, plaintiffs' own process server, Nelson

19

Tucker, on his website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a specific rate for Saudi Arabia.  <u>See</u> Process Service Network, "International" and "Saudi Arabia" (attached hereto as Exhibits 2-3).  Plaintiffs have offered no explanation as to why Mr. Tucker's firm could not have served these two defendants, as he claims he can do.  Moreover, an Internet search on "Google" readily reveals at least two websites specifically about the Badkook Company – one being the company's own website, which describes its operations, and another being a Jeddah commercial website that includes the telephone and fax numbers, street address, and even a street map showing the exact location of the Badkook Company.  <u>See</u> Google, "Badkook Company" search results; "The Badkook Group of Companies;" Jeddah Gate, "Company Details:  Mohammed M. Badkook Co." (attached hereto as Exhibits 4-6).  The Second Circuit stated that:  "Certainly, if a defendant's name and address are known or may be obtained with reasonable diligence, service by publication will not satisfy the requirements of due process."  <u>SEC v. Tone</u>, 833 F.2d 1086, 1094 (2d Cir. 1987).

Finally, this Court should reject plaintiffs' argument that because these two defendants have retained counsel and filed a motion to dismiss, they have actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

<u>Morrissey v. Curran</u>, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, 650 F.2d 1267 (2d Cir. 1981).  Further, the Second Circuit has held that "actual notice" is no substitute for proper service under Rule 4, Fed. R. Civ. P.  <u>See</u> <u>National Dev. Co. v. Triad Holding Corp.</u>, 930

F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper, since plaintiffs' representations to this Court did not justify that means of service.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants Talal M. Badkook and the M.M. Badkook Company respectfully request that this Court grant their Motion to Dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Talal M. Badkook and
 the M.M. Badkook Company

Dated:  September 6, 2005

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served

electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant

to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat

_____

Alan R. Kabat