# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001      )      No. 03 MDL 1570 (RCC)
)      ECF Case
_____)

This document relates to:

ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;

CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978; and

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105.

## MEMORANDUM OF LAW IN SUPPORT OF
## DR. ADNAN BASHA'S
## CONSOLIDATED MOTION TO DISMISS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Adnan Basha

DATED:  September 6, 2005

# TABLE OF CONTENTS

I. Introduction ........................................................................................................ 1

II. Factual Background .......................................................................................... 2

III. Summary of Legal Argument ........................................................................ 3

IV. This Court Lacks Personal Jurisdiction over Dr. Basha, Pursuant to Rule
4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute .............................. 4

    A. The New York Long-Arm Statute Is Not Satisfied ........................................ 4

    B. Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied ........ 5

V. This Court must Dismiss Plaintiffs' Complaints Against Dr. Basha, Pursuant to
Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim ........................................ 7

    A. Plaintiffs Fail to Plead Sufficient Facts Showing That Dr. Basha's Acts
Proximately Caused Plaintiffs' Injuries ............................................................ 9

    B. Plaintiffs' Claims Against Dr. Basha Under the Torture Victim Protection
Act, the Anti-Terrorism Act, the Alien Tort Claims Act, and Plaintiffs'
Common Law Claims, Must be Dismissed as a Matter of Law ...................... 11

    C. The Personal Injury Plaintiffs Lack Standing to Maintain Their RICO
Claims Because Their Injuries are Personal Injuries, Not Injuries to
Business or Property ......................................................................................... 14

    D. Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
Against Dr. Basha for Plaintiffs' RICO Claims .............................................. 15

    E. Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
Against Dr. Basha Because He Owed No Duty of Care to Plaintiffs ............. 16

    F. Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
Independent Cause of Action Exists ............................................................... 17

    G. Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
Independent Cause of Action Exists ............................................................... 17

VI. Plaintiffs' Service of Process on Dr. Basha Is Insufficient and Should Be Quashed
Pursuant to Rule 12(b)(5), Fed. R. Civ. P. .................................................................. 18

i

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ....................................................... 18

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
    No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 9-10

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970) ............................................................ 5

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................. 11

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ............................................................ 4

Bigio v. Coca-Cola Co.,
    239 F.3d 440 (2d Cir. 2001) ........................................................... 12

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) ......................................................... 12

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ................................................ *passim*

Burnett v. Al Baraka Invest. & Devel. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ....................................................... 7

Child v. Beame,
    417 F. Supp. 1023 (S.D.N.Y. 1976) .................................................... 3

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................... 18

Conley v. Gibson,
    355 U.S. 41 (1957) ....................................................................... 8

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ............................................................... 8

iii

Denny v. Barber,
    73 F.R.D. 6 (S.D.N.Y. 1977) ................................................................. 8

Diaz v. Gates,
    No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*).............. 14-15

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ................................................................. 10

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ............................................................... 18

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ........................................................................ 5

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993)................................................. 13

*In re* Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ............................................................... 6

*In re*: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ............................................. *passim*

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................ 5-6

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) ..................................................... 14

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) ...................................................... 18

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) .............................................................. 16

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) .............................................................. 14

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) .................................................... 10

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ................................................... 17

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ................................................................ 17

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................. 4

Morrissey v. Curran,
    482 F. Supp. 31, 59 (S.D.N.Y. 1979)................................................. 19-20

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344, 350 (1999)................................................................... 18-19

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253, 256 (2d Cir. 1991)....................................................... 20

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ................................................................ 15

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ......................................................................... 16

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ...................................................13

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ....................................................13

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) .............................................................. 10

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ......................................................... 6

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) .................................................. 17

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................... 12

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987)............................................................ 8

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) .................................................... 14

Time, Inc. v. Simpson,
     No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) .......... 6

United States v. Ruiz,
     115 F.3d 1492 (1st Cir. 1997) ............................................................... 14

von Bulow v. von Bulow,
     634 F. Supp. 1284 (S.D.N.Y. 1986) ...................................................... 14


**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ...................................................... 8, 11-12

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................... 8, 12

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 14-16

     18 U.S.C. § 1962(a) .................................................................... 15-16

     18 U.S.C. § 1962(c) .................................................................... 15-16

     18 U.S.C. § 1962(d) .................................................................... 15-16

     18 U.S.C. § 1964(c) .................................................................... 14

Torture Victim Protection Act, 28 U.S.C. § 1350 note .................................... 8, 11

Federal Rules of Civil Procedure:

     Rule 4(k)(1)(D) ......................................................................... 5

     Rule 10(a) .............................................................................. 1

     Rule 12(b) .............................................................................. 1

     Rule 12(b)(2) .......................................................................... 1, 4

     Rule 12(b)(5) .......................................................................... 2, 18-20

     Rule 12(b)(6) .......................................................................... 1, 7-8

     Rule 15 ................................................................................. 1

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ........................................................................ 11

N.Y. C.P.L.R. § 302(a)(c) (McKinney 2001) ................................................................... 4

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............................................. 13

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ....................................................................... 13

## I.      **INTRODUCTION.**

Dr. Adnan Basha, a Saudi citizen, was named as a defendant in five of the complaints before this Court.  The plaintiffs have pled few allegations against him.  Those they plead relate solely to his official capacity as a director of a charity, the International Islamic Relief Organization ("IIRO").

Dr. Basha is a defendant in five cases – *Ashton*, *Continental Casualty, Federal Insurance, New York Marine,* and *Salvo*.  This Court recently granted the *Salvo* plaintiffs' request to consolidate that case with *Burnett* on the grounds that "each case contains identical facts, legal issues and named defendants."  See Endorsed Letter (*Salvo*) (Docket No. 1137) (Aug. 16, 2005).  In fact, Dr. Basha was not named as a defendant in either of the two *Burnett* complaints.  See Rule 10(a), Fed. R. Civ. P. (failure to name a person in the caption as a defendant means that he is not a defendant).  It is too late for the *Burnett* plaintiffs to add him as a defendant.  See Case Management Order No. 2, at ¶ 12; see also Rule 15, Fed. R. Civ. P. Nonetheless, out of an abundance of caution, Dr. Basha is also moving to dismiss the *Salvo/Burnett* complaints.

Dr. Basha respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.[1]  As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over Dr. Basha, a non-resident whose minimal contacts with this forum are insufficient for the exercise of personal jurisdiction.  This Court must further find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against Dr.

---

[1] This Court endorsed a briefing schedule for Dr. Basha in the *Ashton* case, which allowed him forty-five days from the date when Dr. Al-Turki's pending motion to dismiss in *Burnett I* was decided.  See Stipulation (Dec. 15, 2004) (Docket No. 576).  Although that event has not occurred, Dr. Basha is moving to dismiss the *Ashton* case.

Basha, primarily because plaintiffs have failed to plead sufficient facts showing that his acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve Dr. Basha were insufficient.

## II.     FACTUAL BACKGROUND.

The plaintiffs have pled only minimal facts to support their claims against Dr. Basha.  Dr. Basha and IIRO are not mentioned anywhere in the official report of the 9/11 Commission, available online at http://www.9-11commission.gov/.  Plaintiffs' allegations about Dr. Basha are so sparse as to fail to place him on notice of the charges against him, and further fail to support plaintiffs' claims, or to present facts permitting this Court to exercise personal jurisdiction over him.

Plaintiffs mention that Dr. Basha "publicly thanked Prince Sultan on December 22, 2000, for his support and aid" of IIRO.  See *Ashton* Compl., ¶ 267; *Salvo* Compl., ¶ 259; *Continental Casualty* Compl., ¶ 261.  Plaintiffs also state that Dr. Basha wrote, at an unspecified time, that most of IIRO's support "is coming from the generous people of Saudi Arabia, King Fahd, and the royal family."  See *Ashton* Compl., ¶ 314; *Salvo* Compl., ¶ 443; *Continental Casualty* Compl., ¶ 444.  Plaintiffs also allege that Dr. Basha allegedly stated, at an unspecified time and place, that "the IIRO donated more than Sixty Million ($60,000,000) dollars to the Taliban Regime and Al Qaeda in Afghanistan."  See *Ashton* Compl., ¶ 322; *Salvo* Compl., ¶ 451; *Continental Casualty* Compl., ¶ 452.  Plaintiffs also attempt to plead various allegations about various employees of IIRO, but without pleading that Dr. Basha knew of, or condoned, their alleged acts.

Finally, the *Federal Insurance* and *NY Marine* plaintiffs listed Dr. Basha as one of some

three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that generic allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

As set forth below, the facts that plaintiffs plead fail to support this Court's exercise of personal jurisdiction over Dr. Basha.

### III.     SUMMARY OF LEGAL ARGUMENT.

Plaintiffs have failed to make any showing that this Court can exercise personal jurisdiction over Dr. Basha.  They have not alleged any specific wrongful conduct by Dr. Basha, let alone conduct related to the 9/11 attacks.  Nor have plaintiffs pled any facts that would establish that his conduct proximately caused their injuries, or made out the specific requirements of their claims.  Where, as here, a "complaint does contain some very broad allegations that all defendants" took certain actions, "such conclusory allegations are clearly insufficient to charge the defendants with a conspiracy," so that "the complaint also fails adequately to notify the movants of any cause of action that plaintiffs might have against them." Child v. Beame, 417 F. Supp. 1023, 1025-26 (S.D.N.Y. 1976) (granting motion to dismiss); accord Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 111 (D.D.C. 2003) ("the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading").  Here, there are only conclusory allegations about all defendants, without the requisite "sufficient information" about Dr. Basha.

**IV.    THIS COURT LACKS PERSONAL JURISDICTION OVER DR. BASHA, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.**

This Court must dismiss plaintiffs' complaints against Dr. Basha, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  The burden is on plaintiffs to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction.  *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

**A.    The New York Long-Arm Statute Is Not Satisfied.**

First, the personal jurisdiction requirements of the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002), are not satisfied.  As this Court held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction through the New York long-arm statute on a conspiracy theory.  *In re* Sept. 11, 349 F. Supp. 2d at 805.  Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the reasonable inference that Dr. Basha "directed, controlled, or requested al Qaeda to undertake its terrorist activities," and fail to make "any specific allegations of [his] knowledge of or consent to those activities."  Id. at 806.  Indeed, plaintiffs state only conclusions that somehow Dr. Basha acted in concert with several hundred other defendants, and that he was the Secretary General of IIRO, but without specifying that he had any knowledge of any activities of IIRO that were intended to support terrorism.

4

Even plaintiffs' allegation regarding IIRO's support of the Taliban in Afghanistan fails to recognize the fact that, throughout the Reagan Administration, and continuing into the early years of the first Bush Administration, the United States government actively supported the mujahedin in Afghanistan, which included al Qaeda.  See Al-Husaini Reply Br., at Part I.B (July 23, 2004) (Docket No. 331).  Thus, plaintiffs allege no facts from which this Court can infer Dr. Basha had any control or knowledge of al Qaeda and its activities, or that any support he gave IIRO was with the knowledge that it was aiding the Taliban, to the detriment of the United States.

      **B.**      **Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.**

Personal jurisdiction over Dr. Basha, pursuant to Rule 4(k), under either a "general jurisdiction" or a "specific jurisdiction" theory, would not satisfy the requirements of due process, which require some level of minimum contacts with this forum.  In re Sept. 11, 349 F. Supp. 2d at 810-11.  For this Court to exercise "general" personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum must be "continuous and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). Plaintiffs did not plead any contacts that Dr. Basha had with the United States, let alone those that could be "sufficiently 'systematic and continuous' to maintain general jurisdiction" over him.  In re Sept. 11, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed based on his limited contacts with the United States).  The Second Circuit has held that even several visits a year to the United States are insufficient to assert personal jurisdiction over a non-resident defendant. See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); see also Jacobs v. Felix

Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction"). Here, plaintiffs do not even allege that Dr. Basha made any visits to United States, let alone the multiple visits necessary to establish personal jurisdiction.

Similarly, for this Court to exercise personal jurisdiction over Dr. Basha under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that he was a "primary participant in intentional wrongdoing." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997). If the defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, or otherwise were not a "primary participant," then personal jurisdiction cannot be supported. See In re Sept. 11, 349 F. Supp. 2d at 809 (quoting In re Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).

Here, plaintiffs have failed to plead any facts to support an allegation that Dr. Basha was personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over him under a "specific jurisdiction" theory. The few specific allegations that plaintiffs pled against Dr. Basha all fail to satisfy plaintiffs' burden.

First, plaintiffs note that Dr. Basha thanked Prince Sultan for his donations to IIRO, and that Dr. Basha wrote that most of IIRO's support came from Saudi people, including the royal family. As this Court has already found in dismissing Prince Sultan and Prince Turki from this lawsuit, merely giving donations to a charity, without knowledge that those donations would be used in any way to support terrorism, is insufficient to establish personal jurisdiction. See In re Sept. 11, 349 F. Supp. 2d at 813-14 (dismissing Prince Sultan and Prince Turki because there

6

were no allegations that they knew their donations could be misused); <u>Burnett v. Al Baraka Invest. & Devel. Corp.</u>, 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) (same).

Second, plaintiffs mention that Dr. Basha, at some unspecified time and place, stated that IIRO donated to the Taliban and Al Qaeda in Afghanistan.  Again, absent any temporal context, Dr. Basha's statements (if made) could encompass donations made at a time when the United States government was also supporting the mujahedin in Afghanistan.  Further, plaintiffs do not plead that Dr. Basha knew that any IIRO employee, or recipient of IIRO charitable relief, was somehow supporting or assisting terrorists.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed to "make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries."  <u>*In re*</u> Sept. 11, 349 F. Supp. 2d  at 809.  Instead, plaintiffs merely made "conclusory allegations" that Dr. Basha "aided and abetted terrorists," but without pleading any facts to support an allegation that he "purposefully directed his activities at this forum" by engaging in activities "that he knew at the time supported international terrorism."  <u>Id.</u> at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan purposefully directed his activities at this forum").

Therefore, this Court must find that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction over Dr. Basha.

> **V.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. BASHA, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.**

Even if this Court were to find that it could exercise personal jurisdiction over Dr. Basha,

it must still find that plaintiffs have not pled factual allegations against him, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Second Circuit upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  Here, of course, there are little more than "conclusory allegations" against Dr. Basha.  While plaintiffs allege that he was involved with the IIRO, they fail to plead any facts showing that he knew that the IIRO or any of its employees were intentionally supporting terrorism, much less the 9/11 attacks.

Nor should this Court condone any attempt by plaintiffs to argue that they should be entitled to discovery to obtain facts to plead their claims.  As Judge Easterbrook concluded, "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery.").

The plaintiffs brought the following claims against him:  statutory tort claims under (1) the Anti-Terrorism Act (*Ashton, Burnett, Continental Casualty, Federal Insurance, NY Marine* and *Salvo*); (2) the Torture Victim Protection Act (*Ashton, Burnett, Federal Insurance,* and *Salvo*); (3) the Alien Tort Claims Act (*Burnett*); and (4) Civil RICO (*Burnett, Continental*

8

*Casualty, Federal Insurance,* and *NY Marine*).

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Ashton, Burnett, Federal Insurance,* and *Salvo*); (2) conspiracy, and aiding and abetting (*Burnett, Federal Insurance,* and *NY Marine*); (3) assault and battery (*Ashton, Federal Insurance*, and *Salvo*) and (4) property destruction and damage (*Ashton, Continental Casualty, Federal Insurance,* and *NY Marine*).  The *Burnett, Federal Insurance,* and *NY Marine* plaintiffs brought negligence and negligent and intentional infliction of emotional distress claims.  All plaintiffs, except for *Continental Casualty*, brought separate claims for punitive damages.

### A.  PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT DR. BASHA'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have not pled sufficient facts showing that Dr. Basha's acts proximately caused plaintiffs' injuries.  They have alleged, in a conclusory manner, that all defendants provided support to al Qaeda, which led to the September 11 attacks.  As there are 440 defendants in *Ashton*, 303 named defendants in *Burnett I* (with 5,000 "John Doe" defendants), 431 defendants in *Continental Casualty*, 581 defendants in *Federal Insurance*, and 561 defendants in *NY Marine*, there is no way for Dr. Basha to know what plaintiffs are alleging is his wrongful conduct.

Plaintiffs cannot simply "lump" Dr. Basha with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any

factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994). In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation. *In re Sept. 11*, 349 F. Supp. 2d at 826. Hence, in order to impose tort liability on Dr. Basha through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer." Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").

This Court should dismiss the plaintiffs' tort counts against Dr. Basha because plaintiffs have failed to state a cause of action that Dr. Basha's acts directly and intentionally injured plaintiffs, thereby precluding them from recovering against him under any direct tort theory, i.e., the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; the New York wrongful death and survival statutes; and the common law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.**     **PLAINTIFFS' CLAIMS AGAINST DR. BASHA UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, THE ALIEN TORT CLAIMS ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Ashton* Count 5, *Burnett* Count 1, *Federal Insurance* Count 6, *Salvo* Count 5), because Dr. Basha, a private individual, could not have acted under color of law as required to impose liability on individuals. *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).  If plaintiffs now argue that he was acting in an official capacity (which plaintiffs did not plead), dismissal of their claims is still warranted because plaintiffs did not plead any facts to support an allegation that Dr. Basha "subject[ed] an individual to torture or extrajudicial killing," as required to impose liability.  Id.

(2)     This Court must dismiss the plaintiffs' intentional infliction of emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4 and *Salvo* Count 3), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.  The *Burnett II* (New York) complaint was filed on August 1, 2003, the *Federal Insurance* complaint on September 10, 2003, and the *Salvo* complaint on July 8, 2003, all more than one year after September 11, 2001.  Since several complaints in this litigation were filed within the one-year period, the only reason that these three complaints were not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 (*Burnett* Count 4), because liability can only be imposed if (1) the

11

defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "certain forms of conduct" such as "hijacking of aircraft" or "certain acts of terrorism."  Bigio v. Coca-Cola Co., 239 F.3d 440, 447-48 (2d Cir. 2001).  Dr. Basha is not a state actor, and plaintiffs have not pled that he was acting under color of state law.  Nor have plaintiffs pled facts to state a claim that he engaged in, or knowingly supported, the requisite misconduct, i.e., hijacking or terrorism.

(4)      This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Ashton* Count 4; *Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5; *Salvo* Count 4; *WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that Dr. Basha engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").  Plaintiffs' allegations about IIRO and some of its employees fail to set forth any facts showing that Dr. Basha had any knowledge of illegal acts by IIRO and/or its employees alleged to have committed illegal acts.

(5)      This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Ashton* Counts 1-2; *Burnett* Counts 5 and 7; *Federal Insurance* Counts 2-3;

*Salvo* Counts 1-2), because plaintiffs have not pled any facts to support an allegation that Dr.

Basha "caused the decedent's death," or that he committed a tort against the decedent prior to

death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-

3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the

allegation that Dr. Basha "supported, aided and abetted, or conspired with the September 11

terrorists."  <u>In re</u> <u>Sept. 11</u>, 349 F. Supp. 2d at 829.

(6)     This Court must dismiss the plaintiffs' common law intentional infliction of

emotional distress claims (*Burnett* Count 8 and *Federal Insurance* Count 5), and property

destruction tort claims (*Ashton* Count 3; *Continental Casualty* Count 1; *Federal Insurance* Count

1; *NY Marine* Count 1), because plaintiffs have not pled any facts to support an allegation that

Dr. Basha's acts caused plaintiffs' injuries, as required for these torts.  <u>Howell v. New York Post</u>

<u>Co.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress

requires "intent to cause, or disregard of a substantial probability of causing, severe emotional

distress" and "a causal connection between the conduct and injury"); <u>People v. Keech</u>, 467

N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); <u>People v. Summer</u>, 407 N.Y.S.2d

53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[2]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their

property damage claims, since plaintiffs have not pled facts sufficient to show that Dr. Basha

associated himself with, and participated in, the conspiracy resulting in the property damage, let

alone that the damage was a foreseeable act done in furtherance of any of his unstated actions in

---

[2] Dr. Basha has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).

Finally, plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of

emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

> C.     **THE *BURNETT* AND *SALVO* PLAINTIFFS LACK STANDING TO
> MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE
> PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.**

This Court must dismiss the RICO claims brought by the *Burnett* and *Salvo* personal

injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The

*Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If these personal injury plaintiffs instead decide to pursue their RICO claims against Dr.

Basha, this Court must find that as personal injury plaintiffs, they lack standing to bring RICO

claims, which are limited by statute to "[a]ny person injured in his business or property."  18

U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal injury plaintiffs cannot seek

recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip Morris,

Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or

property'"); see also Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for

lack of standing); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995)

(holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)");

von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal

injury is not actionable under RICO.").

The Ninth Circuit's recent decision in Diaz, referenced by the *O'Neill* plaintiffs in their

supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in

Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising

from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at

*3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly

addressed the concerns raised by the dissent that RICO liability would extend to personal

injuries, on the grounds that "our approach does not create RICO liability for every loss of wages

resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on this Court

– the personal injury plaintiffs still lack RICO standing.

> **D.     PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST DR. BASHA FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO

claims, it must still find that all the plaintiffs who seek to bring RICO claims against Dr. Basha

have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No.

2, ¶ 14 (June 15, 2004), and, therefore, they cannot maintain their RICO claims against these two

defendants.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury

arising from the defendant's investment of the racketeering income to recover under Section

1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In

re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir.

1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone

sufficient facts, showing that Dr. Basha had the requisite level of directing the operation and

management of the "Al Qaeda enterprise."  As this Court previously held, merely alleging

participation or assistance is insufficient absent pleading facts showing that an individual

defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at

827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Dr. Basha, since the

plaintiffs have done nothing to show that each individual defendant conspired with the other

defendants to engage in an enterprise, or that he was a "central figure in the underlying

schemes."  Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d)

claim).  Plaintiffs do not "allege some factual basis for a finding of a conscious agreement

among the defendants" as required to state a Section 1962(d) RICO claim.  Id. at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Dr. Basha under

Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his

investment of the enterprise's income; that he engaged in an enterprise, or conspired with others

to do so; or that he actively managed and operated the alleged enterprise, or was a central figure

in the alleged scheme.

### E.     PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST DR. BASHA BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett* and *Federal Insurance* plaintiffs' negligence and

negligent infliction of emotional distress claims against Dr. Basha because he owed no duty of

care to plaintiffs.  It is black letter law that a defendant must owe a duty to plaintiffs in order to

state a negligence claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997);

Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928); *In re* Sept. 11, 349 F. Supp. 2d at

830.  The plaintiffs have alleged nothing more than conclusory allegations that "all Defendants

were under a general duty," *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to plaintiffs and the employees of plaintiffs' insureds."  <u>See</u> *Federal Insurance* Compl. ¶ 642.  However, there is no general duty to "control the conduct of third persons to prevent them from causing injury to others."  <u>McCarthy v. Olin Corp.</u>, 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court has previously dismissed the negligence claims as to other defendants, because plaintiffs' "complaints presently before the Court do not allege or identify a duty owed to Plaintiffs by moving Defendants." <u>*In re* Sept.11</u>, 349 F. Supp. 2d at 831; <u>accord</u> <u>Burnett</u>, 274 F. Supp. 2d at 108-09 (same).  Thus, this Court should dismiss plaintiffs' negligence, negligent infliction of emotional distress, and nuisance claims against Dr. Basha.

## F.     PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, brought against Dr. Basha, because no independent cause of action exists under New York law for this claim.  It is settled law that punitive damages are merely a form of relief, not an independent tort cause of action.  <u>See</u> <u>Smith v. County of Erie</u>, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); <u>Mayes v. UVI Holdings, Inc.</u>, 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

## G.     PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett*, Count 9; *Federal Insurance*, Count 7; and  *NY Marine*, Count 2), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for

17

establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); Kajtazi v. Kajtazi, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Here, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  Ahmed v. National Bank of Pakistan, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

## VI. PLAINTIFFS' SERVICE OF PROCESS ON DR. BASHA IS INSUFFICIENT AND SHOULD BE QUASHED PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.

This Court must find that plaintiffs' attempts to serve Dr. Basha by publication in several newspapers is improper as a matter of law.[3]  Plaintiffs represented to this Court that Dr. Basha, and a number of other foreign defendants, could not be served by the method set forth under Rule 4, Fed. R. Civ. P., which they argued merited service by publication in three newspapers. There are several flaws with plaintiffs' representations, and with allowing service of process by publication.  As the Supreme Court recently emphasized, "service of process . . . is fundamental to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the

---

[3] Dr. Basha is not raising this argument with respect to the *Ashton* plaintiffs, with whom he entered into a briefing stipulation.

complaint names as a defendant." <u>Id.</u>  This is a jurisdictional requirement.  <u>Id.</u>

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi Arabia.  *See* Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the *International Herald Tribune* has a circulation of only 199 in Saudi Arabia, and that *Al Quds Al Arabi* is banned in that country).  Even the one Arabic language newspaper is actually published in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only paid for announcements in the print editions, and not the online editions.  Thus, Dr. Basha would not have seen the announcement if he had happened to check these newspapers' websites on the days the announcement ran in the print edition.

Third, plaintiffs made no showing that they could not serve Dr. Basha by means of a process server.  Indeed, plaintiffs' own process server, Nelson Tucker, on his website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a specific rate for Saudi Arabia.  <u>See</u> Process Service Network, "International" and "Saudi Arabia" (attached hereto as Exhibits 1-2).  Plaintiffs have offered no explanation as to why Mr. Tucker's firm could not have served Dr. Basha, as he claims he can do.

Finally, this Court should reject plaintiffs' argument that because Dr. Basha has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

<u>Morrissey v. Curran</u>, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), <u>aff'd</u> <u>in</u> relevant part, 650 F.2d 1267

(2d Cir. 1981).  The Second Circuit has held that "actual notice" is no substitute for proper service under Rule 4, Fed. R. Civ. P.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper, since plaintiffs' representations to this Court did not justify that means of service.

## **CONCLUSION**

For the foregoing reasons, defendant Dr. Adnan Basha respectfully requests that this Court grant his Motion to Dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,


/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Adnan Basha

Dated:  September 6, 2005

20

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2005, I caused the foregoing to be served

electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant

to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____

Alan R. Kabat