IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001      )      No. 03 MDL 1570 (RCC)
)      ECF Case
_____ )

This document relates to:

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-9849;

CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;

EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;

FEDERAL INSURANCE CO., *et al.* v. AL QAIDA, *et al.*, Case No. 03-CV-6978;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105; and

WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.

**MEMORANDUM OF LAW IN SUPPORT OF
MOHAMED ALI MUSHAYT'S
AND THE
THE MUSHAYT FOR TRADING ESTABLISHMENT'S
CONSOLIDATED MOTION TO DISMISS**

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
 Mohamed Ali Mushayt and
 the Mushayt for Trading Establishment

DATED:  September 6, 2005

**TABLE OF CONTENTS**

I.    Introduction ......................................................................................................... 1

II.   Factual Background ............................................................................................ 2

III.  Summary of Legal Argument ........................................................................  5

IV.   This Court Lacks Personal Jurisdiction over Mr. Mushayt and Mushayt for Trading
      Pursuant to Rule  4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute ... 6

      A.    Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising
            Personal Jurisdiction Over Mr. Mushayt and Mushayt for Trading ............... 7

      B.    The New York Long-Arm Statute Does Not Provide any Basis for
            Exercising Personal Jurisdiction Over Mr. Mushayt and Mushayt for
            Trading ............................................................................................ 8

V.    This Court must Dismiss Plaintiffs' Complaints Against Mr. Mushayt and
      Mushayt for Trading, Pursuant to Rule 12(b)(6), Fed. R. Civ. P., for Failure to
      State a Claim .................................................................................................... 9

      A.    Plaintiffs Fail to Plead Sufficient Facts Showing That Mr. Mushayt's and
            Mushayt for Trading's Acts Proximately Caused Plaintiffs' Injuries ........... 11

      B.    Plaintiffs' Claims Against Mr. Mushayt and Mushayt for Trading Under
            the Torture Victim Protection Act, the Anti-Terrorism Act, the Alien Tort
            Claims Act, and Plaintiffs' Common Law Claims, Must be Dismissed
            as a Matter of Law  ........................................................................13

      C.    The *Burnett* Plaintiffs Lack Standing to Maintain Their RICO Claims
            Because Their Injuries are Personal Injuries, Not Injuries to Business or
            Property ........................................................................................ 16

      D.    Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
            Against Mr.  Mushayt and Mushayt for Trading for Plaintiffs' RICO
            Claims .......................................................................................... 17

      E.    Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
            Against Mr. Mushayt and Mushayt for Trading Because They Owed No
            Duty of Care to Plaintiffs ..............................................................18

      F.    Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
            Independent Cause of Action Exists ............................................. 19

i

G.    Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
          Independent Cause of Action Exists ............................................................... 19

VI.   Plaintiffs' Service of Process on Mr. Mushayt and Mushayt for Trading Is
      Insufficient and Should Be Quashed Pursuant to Rule 12(b)(5), Fed. R. Civ. P. ...... 20

CONCLUSION ..................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
 572 F. Supp. 550 (S.D.N.Y. 1983) ...................................................................  20

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
 No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............  11

Arndt v. UBS AG,
 342 F. Supp. 2d 132 (E.D.N.Y. 2004) ...................................................................  13

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
 171 F.3d 779 (2d Cir. 1999) ...............................................................................  6-7

Bigio v. Coca-Cola Co.,
 239 F.3d 440 (2d Cir. 2001) ................................................................................  14

Boim v. Quranic Literacy Inst.,
 291 F.3d 1000 (7th Cir. 2002) .............................................................................  14

Burnett v. Al Baraka Invest. & Devel. Corp.,
 274 F. Supp. 2d 86 (D.D.C. 2003) ................................................................. *passim*

Child v. Beame,
 417 F. Supp. 1023 (S.D.N.Y. 1976) .......................................................................  6

Chrysler Capital Corp. v. Century Power Corp.,
 778 F. Supp. 1260 (S.D.N.Y. 1991) .....................................................................  20

Conley v. Gibson,
 355 U.S. 41 (1957) ..............................................................................................  10

De Jesus v. Sears, Roebuck & Co.,
 87 F.3d 65 (2d Cir. 1996) ....................................................................................  10

Denny v. Barber,
 73 F.R.D. 6 (S.D.N.Y. 1977) ...............................................................................  10

Diaz v. Gates,
 No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*).............. 16-17

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) .................................................................. 12

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ............................................................. 19-20

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ............................................................................ 7

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) .......................................... 15

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ............................................................ 7

In re: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) .......................................... passim

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) .................................................. 16

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) .................................................... 20

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................ 18

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ............................................................ 16

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) ................................................ 12

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) ............................................... 19

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ............................................................ 19

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ............................................ 7

Morrissey v. Curran,
    482 F. Supp. 31 (S.D.N.Y. 1979) .................................................... 21

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344 (1999) ........................................................................................ 20

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253 (2d Cir. 1991) ........................................................................... 21

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ............................................................................. 17

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ....................................................................................... 18

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) .................................................................15

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) .................................................................15

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ........................................................................... 12

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) ......................................................................... 7

Smith v. County of Erie,
    743 N.Y.S.2d 649 (App. Div. 2002) ............................................................... 19

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ........................................................... 14

Szabo Food Serv., Inc. v. Canteen Corp.,
    823 F.2d 1073 (7th Cir. 1987) ....................................................................... 10

Talmor v. Talmor,
    712 N.Y.S.2d 833 (Sup. Ct. 2000) ................................................................. 15

Time, Inc. v. Simpson,
    No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) .......... 7

United States v. Ruiz,
    115 F.3d 1492 (1st Cir. 1997) ....................................................................... 15

von Bulow v. von Bulow,
    634 F. Supp. 1284 (S.D.N.Y. 1986) .............................................................. 16

**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ................................................................ 14

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ...................................................... 13-14

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. .......... 16-18

      18 U.S.C. § 1962(a) .............................................................................. 17-18

      18 U.S.C. § 1962(c) .............................................................................. 17-18

      18 U.S.C. § 1962(d) .............................................................................. 17-18

      18 U.S.C. § 1964(c) .............................................................................. 16

Torture Victim Protection Act, 28 U.S.C. § 1350 note .............................................. 13

Federal Rules of Civil Procedure:

      Rule 4(k)(1)(D) .................................................................................. 7-8, 9

      Rule 12(b) ........................................................................................ 1

      Rule 12(b)(2) .................................................................................... 1, 6

      Rule 12(b)(5) .................................................................................... 1, 20-21

      Rule 12(b)(6) .................................................................................... 1, 9-10

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ............................................................ 13

N.Y. C.P.L.R. § 302(a)(1)-(4) (McKinney 2001) ................................................... 8-9

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ........................................ 14

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ............................................................ 14

**Other Materials:**

9/11 Commission Report (2004) ........................................................................ 3

I.     **INTRODUCTION.**

Mohamed Ali Mushayt, a Saudi citizen, and his family business, the Mushayt for Trading Establishment ("Mushayt for Trading" or "MFT") were named as defendants in nine of the complaints before this Court, but with minimal allegations specifically pled against them.

Mr. Mushayt's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed. Plaintiffs subsequently dismissed MFT from *Ashton* and *Salvo*, and dismissed Mr. Mushayt from *Federal Insurance*.  See *Ashton* Dismissal (Docket No. 230) (June 10, 2004); *Federal Insurance* Dismissal (Docket No. 566) (Dec. 9, 2004); *Salvo* Dismissal (Docket No. 633) (Jan. 19, 2005). The *Burnett I* plaintiffs initially dismissed MFT, but then added it back to the case, nearly two years later.  See *Burnett* Dismissal (D.C. Docket Nos. 77-78) (Feb. 21, 2003); *Burnett* Notice of Addition (Docket No. 602) (Jan. 3, 2005).  As a result of these dismissals, Mr. Mushayt is a defendant in only four cases – *Burnett I*, the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Euro Brokers*, and *WTC Properties*.  MFT is a defendant in only five cases – *Burnett I*, *Burnett II*, *Continental Casualty, Federal Insurance*, and *New York Marine*.

Mr. Mushayt and MFT respectfully move, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.  As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over these defendants, as they are non-residents who lack any contacts with this forum.  This Court must further find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against these defendants, primarily because plaintiffs have failed to plead sufficient facts showing that their acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve these defendants were insufficient.

## II.    **FACTUAL BACKGROUND.**

The plaintiffs have pled minimal facts to support their claims against Mr. Mushayt and

MFT.  Nor are these two defendants mentioned anywhere in the official report of the 9/11

Commission, available online at http://www.9-11commission.gov/.  Plaintiffs' allegations about

these two defendants are so sparse as to fail to place defendants on notice of the charges against

them, and further fail to support plaintiffs' claims or to allow this Court to exercise personal

jurisdiction.

Mohamed Ali Mushayt is a citizen of the Kingdom of Saudi Arabia.  See Declaration of

Mohamed Ali Mushayt, at ¶ 3. ("Decl.") (attached and incorporated hereto as Exhibit 1,

Attachments A and B).[1]  He has always been a citizen of Saudi Arabia and has lived there his

entire life.  Id. Mr. Mushayt is the owner and president of MFT, a wholesaler of housewares,

kitchen wares, and related household goods in Saudi Arabia.  Id. at ¶ 4.  Mr. Mushayt has

worked for MFT since 1991, when he founded the company.  Id.

Mr. Mushayt has made several visits to the United States, all personal visits, such as a

visit to Orlando, Florida, in 1996, and visits to Texas in 1998 and 1999.  Id. at ¶ 5.  Neither Mr.

Mushayt nor MFT own any real property or have bank accounts or investments in the United

States.  Nor do they conduct business with any business in the United States.  Id. at ¶¶ 6-7.

Mr. Mushayt does not subscribe to or read the *International Herald Tribune*, or the *Al*

*Quds al Arabi*, which is banned in Saudi Arabia where he lives.  Id. at ¶ 8.

Mr. Mushayt has condemned terrorism, including the attacks of September 11, 2001, and

---

[1] Because Mr. Mushayt cannot read, write or speak English, his original Declaration is in Arabic, and is Attachment A to the Declaration of Bassim Alim, who authenticated the translation, which is Exhibit 1 to this Motion.  A translation of the Mushayt Declaration into English is Attachment B to the Alim Declaration.

has never knowingly supported any person or organization that he knew to participate in terrorist

activities.  Id. at ¶ 9.

There are no allegations in the plaintiffs' complaints against Mr. Mushayt and MFT,

other than in several paragraphs relating to allegations concerning the activities of Muhammed

Zouaydi, whom Spanish authorities have charged with supporting Al Qaeda.  See Burnett

Compl., ¶¶ 376-377, 503, 509, 519-522, 524; WTC Properties Compl., ¶¶ 712-713, 834, 840,

850-853, 855; Continental Casualty Compl., ¶¶ 280-281; Federal Insurance Compl., ¶¶ 388-

390, 395, 470.  Plaintiffs allege that Mr. Mushayt, MFT, and several other defendants, including

Prince Turki and Prince Mohamed, have financial ties with Mr. Zouaydi.

As a threshold matter, the 9/11 Commission, in its Report, concluded that

that Mr. Zouaydi did not support the September 11 attacks:

> Notwithstanding persistent press reports to the contrary, there is no convincing
> evidence that the Spanish al Qaeda cell, led by Imad Barkat Yarkas and al Qaeda
> European financier Mohammed Galeb Kalaje Zouaydi, provided any funding to
> support the 9/11 attacks or the Hamburg participants.  Zouaydi may have
> provided funds to Hamburg associate Mamoun Darkazanli — see, e.g., FBI
> letterhead memorandum, Yarkas and Spanish Cell investigation, Jan. 8, 2003 —
> but **there is no evidence that Zouaydi provided money to the plot participants
> or that any of his funds were used to support the plot**.  Adam Drucker
> interview (Jan. 12, 2004); Ed G. interview (Feb. 3, 2004).

See The 9/11 Commission Report, at 499 n.132 (2004) (emphasis added).

Plaintiffs' statements regarding Mr. Mushayt and MFT are, therefore, wholly

unsupported inferences regarding financial support that Mr. Mushayt and MFT allegedly

transferred through Mr. Zouaydi, a former Sales Manager of MFT, whom plaintiffs allege, in

turn, used to support Al Qaeda's operations in Europe.  However, Mr. Mushayt and MFT never

made investments in Spain, or made investments in any Spanish company, and certainly not with

al Qaeda.  See Mushayt Decl. (Ex. 1), at ¶¶ 11, 14, 17.  Further, neither Mr. Mushayt nor MFT

have any knowledge of any involvement by Mr. Zouaydi in terrorist activities or of Mr.

Zouaydi's support of terrorist activities.  Id. at ¶ 10.  In addition, neither Mr. Mushayt nor MFT

knowingly have signed any "false contracts" with Mr. Zouaydi or any other person or entity, for

any purpose, including "money laundering" for terrorist activities.  Id. at ¶¶ 14, 17.

Plaintiffs incorrectly state that Mr. Zouaydi formed MFT in 1985, and that he owned it

until 1998.  See *Burnett* Compl. at ¶ 509; *WTC Properties* Compl. at ¶ 840.  In fact, Mr.

Mushayt, not Mr. Zouaydi, formed, and owns, MFT.  See Mushayt Decl. (Ex. 1), at ¶¶ 4, 13.

Plaintiffs do not explain why Mr. Zouaydi would have founded a company, only to name it after

someone else.  Mr. Zouaydi was merely a Sales Manager in Saudi Arabia for the company, and

has never owned any interest in MFT, or operated MFT, id. at ¶ 13, as plaintiffs allege.

Plaintiffs also claim that MFT "was controlled by members of the Muslim Brotherhood,

including current General Manager, Walid al Zaim."  See *Burnett* Compl., ¶ 509; *WTC

Properties* Compl., at ¶ 840.  This is also false.  Mr. Al Zaim, Mr. Mushayt's assistant, has no

involvement with the Muslim Brotherhood.  See Mushayt Decl. (Ex. 1), at ¶ 13.

Plaintiff's other allegations regarding Mr. Mushayt are similarly factually unsupported.

Although plaintiffs allege that Mr. Mushayt and MFT are among several entities and individuals

that were "directly link[ed] . . . to Mohammed Atta's Hamburg al Qaeda cell," see *Burnett*

Compl. at ¶ 503 and *WTC Properties* Compl. at ¶ 834, neither Mr. Mushayt nor MFT had any

knowledge of the activities of Mohammed Atta or his associates, other than what is generally

known through the media, and they have never knowingly supported either Mr. Atta or other

terrorists.  See Mushayt Decl. (Ex. 1), at ¶ 12.  Similarly, contrary to Plaintiff's claim that Mr.

4

Zouaydi "sent $227,000 dollars to Nabil Sayadi in Belgium" on behalf of MFT, see *Burnett* Compl. at ¶ 522 and *WTC Properties* Compl. at ¶ 853, neither Mr. Mushayt nor MFT know anything about Nabil Sayadi, nor have they made any contributions to him or to the Global Relief Foundation.  See Mushayt Decl. (Ex. 1), at ¶ 16.

While plaintiffs also claim that Mr. Mushayt and MFT supported individuals named Nabil Nanakli Kosaibati Nabil and Abdull Aziz bin Abdullah, and that MFT knowingly executed money transfers to Spain to support their terrorist activities, see *Burnett* Compl. at ¶ 520 and *WTC Properties* Compl. at ¶ 851, neither Mr. Mushayt nor MFT have any knowledge of these two individuals or of their activities.  Nor are they connected in any way with these individuals. See Mushayt Decl. (Ex. 1), at ¶ 15.

The *Euro Brokers* plaintiffs listed Mr. Mushayt solely in the caption, and made no attempt to plead any allegations about him in the text of this complaint, other than generic allegations that hundreds of defendants acted in concert.

Finally, the *Federal Insurance* and *NY Marine* plaintiffs listed MFT as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that generic allegation.  See *Federal Insurance* Compl., at ¶ 66; *NY Marine* Compl., at ¶ 45.

As set forth below, the facts that plaintiffs plead fail to support this Court's exercise of personal jurisdiction over Mr. Mushayt and MFT.

**III.    SUMMARY OF LEGAL ARGUMENT.**

Plaintiffs failed to make any showing that this Court can exercise personal jurisdiction

over Mr. Mushayt or the MFT.  Plaintiffs failed to allege wrongful conduct related to the

September 11 attacks.  Plaintiffs' reliance on unsupported allegations involving Mr. Zouaydi is

clearly insufficient, since the 9/11 Commission found that, contrary to plaintiffs' allegations, Mr.

Zouaydi did not fund the hijackers.  Therefore, by clear inference, Mr. Mushayt and his

company, MFT, also did not fund the hijackers.

Nor have plaintiffs pled any facts that would establish that these two defendants' conduct

proximately caused their injuries, or made out the specific requirements of their claims.  Where a

"complaint does contain some very broad allegations that all defendants" took certain actions,

"such conclusory allegations are clearly insufficient to charge the defendants with a conspiracy,"

so that "the complaint also fails adequately to notify the movants of any cause of action that

plaintiffs might have against them."  Child v. Beame, 417 F. Supp. 1023, 1025-26 (S.D.N.Y.

1976); accord Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 111 (D.D.C.

2003) ("the complaint must contain sufficient information for the court to determine whether or

not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate

responsive pleading").  Here, there are only conclusory allegations about all defendants, without

the requisite "sufficient information" about Mr. Mushayt and MFT.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. MUSHAYT AND MUSHAYT FOR TRADING, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Mr. Mushayt and MFT, pursuant

to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  The burden is on plaintiffs to

establish that personal jurisdiction exists over each defendant by making a *prima facie* showing

of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels Lambert v. Fiddler

Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Plaintiffs' conclusory assertions or

"argumentative inferences" cannot be the basis for personal jurisdiction.  _In re_: Terrorist Attacks

on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); Mende v. Milestone Tech., Inc.,

269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

> ### A.   Rule 4(k), Fed. R. Civ. P., Does Not Provide any Basis for Exercising Personal Jurisdiction Over Mr. Mushayt and Mushayt for Trading.

Under Rule 4(k)(1)(D), there are two possible approaches for exercising personal

jurisdiction over a non-resident defendant – a "general jurisdiction" theory or a "specific

jurisdiction" theory.  As a threshold matter, there is no basis for exercising jurisdiction over Mr.

Mushayt or MFT under a "general jurisdiction" theory.  Plaintiffs have not alleged any contacts

with this country by either defendant.  Thus, they have no "continuous and systematic" contacts

with the United States as to support the exercise of general jurisdiction over them.  Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Nor is there any basis for exercising jurisdiction over these two defendants under a

"specific jurisdiction" theory.  For this Court to exercise personal jurisdiction over Mr. Mushayt

and MFT under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support

an allegation that they were a "primary participant in intentional wrongdoing."  _In re_ Magnetic

Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540,

1548 (11th Cir. 1997).  If a defendant were not personally involved with the alleged torts that

caused the plaintiffs' injuries, or otherwise were not a "primary participant," then personal

jurisdiction cannot be supported.  See _In re_ Sept. 11, 349 F. Supp. 2d at 809 (quoting _In re_

Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at

*5-*6 (S.D.N.Y. Dec. 22, 2003).  Here, plaintiffs have failed to plead any facts to support an

allegation that Mr. Mushayt and MFT were personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over them under a "specific jurisdiction" theory.

Nor does the related "purposefully directed" theory apply, because plaintiffs have failed to "make a *prima facie* showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries." <u>In re</u> <u>Sept. 11</u>, 349 F. Supp. 2d  at 809.  Instead, plaintiffs merely made "conclusory allegations" that Mr. Mushayt and MFT "aided and abetted terrorists," but without pleading any facts to support an allegation that he "purposefully directed his activities at this forum" by engaging in transactions "that he knew at the time supported international terrorism."  <u>Id.</u> at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer any facts to lend support to their allegation that Prince Sultan purposefully directed his activities at this forum").  Plaintiffs have not pled any other facts relating to Mr. Mushayt, or MFT, that would allow the exercise of personal jurisdiction over them under Rule 4(k), Fed. R. Civ. P.

Therefore, this Court must find, as it did in dismissing Prince Turki and Prince Mohamed, who were also alleged to have had unspecified business transactions with Mr. Zouaydi, that plaintiffs' allegations are insufficient to support this Court's exercise of personal jurisdiction over Mr. Mushayt and MFT.

**B.**     **The New York Long-Arm Statute Does Not Provide any Basis for Exercising Personal Jurisdiction Over Mr. Mushayt and Mushayt for Trading.**

The New York long-arm statute, N.Y. C.P.L.R. § 302(a) (McKinney 2001), does not allow the exercise of personal jurisdiction over Mr. Mushayt and MFT.  As this Court held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists to

perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction through the New York long-arm statute on a conspiracy theory. _In re_ Sept. 11, 349 F. Supp. 2d at 805. Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the reasonable inference that Mr. Mushayt and MFT "directed, controlled, or requested al Qaeda to undertake its terrorist activities." Id. at 806. Nor do plaintiffs make "any specific allegations of their knowledge of or consent to those activities." Id. Indeed, plaintiffs make little more than conclusory allegations that Mr. Mushayt and MFT acted in concert with several hundred other defendants, or that they had business transactions with Mr. Zouaydi. Plaintiffs allege no facts from which this Court can infer Mr. Mushayt and MFT had any control or knowledge of al Qaeda and its activities.

This Court must find that there is no other basis that would allow the exercise of personal jurisdiction over Mr. Mushayt and MFT, under either the catch-all provision of Rule 4(k)(1)(D), Fed. R. Civ. P., or the New York long-arm statute. Nor would the exercise of personal jurisdiction over Mr. Mushayt and MFT satisfy the requirements of due process, which require some level of minimum contacts with this forum. _In re_ Sept. 11, 349 F. Supp. 2d at 810-11. This Court need go no further, and should dismiss the plaintiffs' complaints against Mr. Mushayt and MFT for lack of personal jurisdiction.

**V.      THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST MR. MUSHAYT AND MUSHAYT FOR TRADING, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.**

Even if this Court found that it could exercise personal jurisdiction over Mr. Mushayt and MFT, it must still find that plaintiffs have not pled factual allegations against them, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Second Circuit has upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Here, of course, there is nothing more than "conclusory allegations" pled against Mr. Mushayt and MFT.

This Court should not countenance any attempt by plaintiffs to argue that they should be entitled to discovery to obtain facts to plead their claims. As Judge Easterbrook concluded, "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery.").

The plaintiffs brought the following claims against these two defendants: (1) a tort claim under the Anti-Terrorism Act (*Burnett, Federal Insurance, NY Marine,* and *WTC Properties*); (2) a claim under the Torture Victim Protection Act (*Burnett,* and *Federal Insurance*); (3) a claim under the Alien Tort Claims Act (*Burnett*); and (4) Civil RICO claims (*Burnett, Continental Casualty, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).

Plaintiffs also brought state common-law tort claims for (1) wrongful death and survival (*Burnett* and *Federal Insurance*); (2) conspiracy, and aiding and abetting (*Burnett, Federal Insurance, NY Marine,* and *WTC Properties*); (3) assault and battery (*Federal Insurance*); and

(4) property destruction and damage (*Continental Casualty, Euro Brokers, Federal Insurance, NY Marine,* and *WTC Properties*).  The *Burnett, Federal Insurance,* and *NY Marine* plaintiffs brought negligence claims, and negligent and intentional infliction of emotional distress claims. All plaintiffs, except for *Continental Casualty*, brought separate claims for punitive damages.

### A.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT MR. MUSHAYT'S AND MUSHAYT FOR TRADING'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that all plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have failed to plead facts showing that Mr. Mushayt's and MFT's acts proximately caused plaintiffs' injuries.  Plaintiffs have alleged, in a conclusory manner, that all defendants provided support to al Qaeda, which led to the September 11 attacks. There are 303 named defendants in *Burnett I* and 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 431 defendants in *Continental Casualty*, 201 defendants in *Euro Brokers*, 581 defendants in *Federal Insurance*, 561 defendants in *NY Marine*, and 201 defendants in *WTC Properties*, there is no way for Mr. Mushayt and the MFT to know what plaintiffs are alleging is their wrongful conduct.

Plaintiffs cannot simply "lump" Mr. Mushayt and MFT with hundreds of other defendants in an attempt to plead allegations in a collective manner.  See, e.g., Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Further, under clear Second Circuit precedent, proximate causation means that only those

defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, *i.e.*, aiding and abetting, and conspiracy, to support their allegations of proximate causation.  *In re Sept. 11*, 349 F. Supp. 2d at 826.  Hence, to impose tort liability on Mr. Mushayt and MFT through a concerted liability theory, plaintiffs must show that they "must know the wrongful nature of the primary actor's conduct" and that they acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").

   This Court should dismiss the plaintiffs' tort claims against Mr. Mushayt and the MFT, because plaintiffs have failed to state a cause of action that these two defendants' acts directly and intentionally injured plaintiffs, thereby precluding them from recovering against them under any direct tort theory, i.e., the Alien Tort Claim Act; the Torture Victim Protection Act; the Anti-Terrorism Act; the New York wrongful death and survival statutes; and common-law assault and battery, property destruction, and intentional infliction of emotional distress claims.

**B.** **PLAINTIFFS' CLAIMS AGAINST MR. MUSHAYT AND MFT UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, THE ALIEN TORT CLAIMS ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)     This Court must dismiss the plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. § 1350 note (*Burnett* Count 2 and *Federal Insurance* Count 6), because Mr. Mushayt, a businessman, and MFT, a private business, could not have acted under color of law as required to impose liability.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).  Moreover, only individuals, not corporations such as MFT, can be held liable under the TVPA.  Id. (dismissing TVPA claims against corporations).

(2)     This Court must dismiss the *Federal Insurance* plaintiffs' intentional infliction of emotional distress claim (*Federal Insurance* Count 5), and assault and battery claim (*Federal Insurance* Count 4), because the statute of limitations, one year, ran by the time these suits were filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.  The *Federal Insurance* complaint was filed on September 10, 2003, more than one year after September 11, 2001.  Since several other complaints in this litigation were filed within the one-year period, including the first *Burnett* complaint, the only reason this complaint was not timely filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)     This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Burnett* Count 3; *Federal Insurance* Count 10; *NY Marine* Count 5; *WTC Properties* Count 1), because plaintiffs have failed to plead any facts to support an inference that Mr. Mushayt and MFT engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or that they provided any donations, training, or personnel to any terrorist

13

group which caused plaintiffs' injuries; or that they contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA.  Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts").

(4)     This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 (*Burnett* Count 4 and *Tremsky* Count 3), because liability can only be imposed if (1) the defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "certain forms of conduct" such as "hijacking of aircraft" or "certain acts of terrorism."  Bigio v. Coca-Cola Co., 239 F.3d 440, 447-48 (2d Cir. 2001).  Mr. Mushayt and MFT are not state actors, and plaintiffs have not pled that they were acting under color of state law.  Nor have plaintiffs pled that these two defendants engaged in, or knowingly supported, the requisite misconduct, i.e., hijacking or terrorism.

(5)     This Court must dismiss the plaintiffs' common law tort claims for wrongful death and survival (*Burnett* Counts 5 and 7; *Federal Insurance* Counts 2 and 3), because plaintiffs have not pled any facts to support an allegation that Mr. Mushayt and the MFT "caused the decedent's death," or that they committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Nor have plaintiffs pled any facts to support the allegation that these two defendants "supported, aided and abetted, or conspired with the September 11

14

terrorists." *In re* Sept. 11, 349 F. Supp. 2d at 829.

(6)     This Court must dismiss the plaintiffs' common law intentional infliction of emotional distress claim (*Burnett* Count 8 and *Federal Insurance* Count 5) and property destruction tort claims (*Continental Casualty* Count 1; *Euro Brokers* Counts 1-2, 6-8; *Federal Insurance* Count 1; *NY Marine* Count 1; *WTC Properties* Count 5-6, 9), because plaintiffs have not pled any facts to support an allegation that Mr. Mushayt's and MFT's acts caused plaintiffs' injuries, as required for these torts.  Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"); People v. Keech, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).[2]

Nor can plaintiffs rely on a conspiracy or aiding and abetting theory to support their property damage claims, since plaintiffs have not pled facts sufficient to show that these two defendants associated himself with, and participated in, the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act done in furtherance of any of their unstated actions in pursuit of some vague conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).  Plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

---

[2] Defendants have not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  The plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

15

C.   **THE *BURNETT* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.**

This Court must dismiss the RICO claims brought by the *Burnett* personal injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The *Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If the *Burnett II* plaintiffs instead decide to pursue their RICO claims against Mr. Mushayt and MFT, this Court must find that as personal injury plaintiffs, they lack standing to bring RICO claims, which are limited by statute to "[a]ny person injured in his business or property."  18 U.S.C. § 1964(c).  Under clear Second Circuit precedent, personal injury plaintiffs cannot seek recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or property'"); see also Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)"); von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO.").

The Ninth Circuit's recent decision in Diaz, referenced by the *O'Neill* plaintiffs in their supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at *3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly addressed the concerns raised by the dissent that RICO liability would somehow extend to

16

personal injuries, on the grounds that "our approach does not create RICO liability for every loss of wages resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on this Court – the personal injury plaintiffs still lack RICO standing.

**D.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST MR. MUSHAYT AND MUSHAYT FOR TRADING FOR PLAINTIFFS' RICO CLAIMS.**

Even if this Court were to consider the allegations set forth to state plaintiffs' RICO claims, it must still find that the plaintiffs who seek to bring RICO claims against Mr. Mushayt and MFT have failed to state a RICO claim under Section 1962(a), (c), or (d).

Plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(a) claim).

Plaintiffs cannot state a Section 1962(c) claim because they have pled any facts, let alone sufficient facts, showing that Mr. Mushayt and MFT had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court previously held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

17

Finally, plaintiffs cannot state a Section 1962(d) claim against Mr. Mushayt and MFT since the plaintiffs have done nothing to show that <u>each</u> individual defendant conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes." <u>Id.</u> (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim). Plaintiffs do not "allege some factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim. <u>Id.</u> at 827.

Therefore, this Court must dismiss plaintiffs' RICO claims against Mr. Mushayt and MFT under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from their investment of the enterprise's income; that they engaged in an enterprise, or conspired with others to do so; or that they actively managed and operated the alleged enterprise, or were a central figure in the alleged scheme.

### E. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST MR. MUSHAYT AND MUSHAYT FOR TRADING BECAUSE THEY OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett*, *Federal Insurance,* and *NY Marine* plaintiffs' negligence and negligent infliction of emotional distress claims against Mr. Mushayt and MFT, because they owed no duty of care to plaintiffs. It is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim. <u>King v. Crossland Savings Bank</u>, 111 F.3d 251, 259 (2d Cir. 1997); <u>Palsgraf v. Long Island R.R. Co.</u>, 248 N.Y. 339, 342 (1928); <u>*In re* Sept. 11</u>, 349 F. Supp. 2d at 830. The plaintiffs have alleged nothing more than conclusory allegations that "all Defendants were under a general duty," <u>see</u> *Burnett* Compl. ¶ 666, or that defendants "breached duties of care owed to plaintiffs and the employees of plaintiffs' insureds." *Federal Insurance* Compl. ¶ 642; <u>accord</u> *NY Marine* Compl., ¶ 79. However, there is no general duty to

"control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court previously dismissed the negligence claims as to other defendants, because plaintiffs' "complaints . . . do not allege or identify a duty owed to Plaintiffs by moving Defendants." In re Sept.11, 349 F. Supp. 2d at 831; accord Burnett, 274 F. Supp. 2d at 108-09 (same).  This Court should dismiss plaintiffs' negligence and negligent infliction of emotional distress claims against Mr. Mushayt and MFT.

### F.  PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, brought against Mr. Mushayt and MFT, because no independent cause of action exists under New York law for this claim.  It is settled law that punitive damages are merely a form of relief, not an independent tort cause of action.  Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the cause of action for punitive damages"); Mayes v. UVI Holdings, Inc., 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

### G.  PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett*, Count 9; *Federal Insurance*, Count 7; *NY Marine,* Count 2; *WTC Properties*, Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York

law, conspiracy, per se, is not a tort."); <u>Chrysler Capital Corp. v. Century Power Corp.</u>, 778 F.

Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves

to connect defendants to the actionable wrong and the overt acts which caused injury."); <u>Kajtazi</u>

<u>v. Kajtazi</u>, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable

wrong is not a cause of action").  Here, the plaintiffs' "allegation of conspiracy is merely

duplicative of the other claims and accordingly [should be] dismissed." <u>Ahmed v. National</u>

<u>Bank of Pakistan</u>, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

### VI.  PLAINTIFFS' SERVICE OF PROCESS ON MR. MUSHAYT AND MUSHAYT FOR TRADING IS INSUFFICIENT AND SHOULD BE QUASHED PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.

Plaintiffs represented to this Court that Mr. Mushayt and MFT, along with a number of

other foreign defendants, could not be served by the method set forth under Rule 4, Fed. R. Civ.

P., which they argued merited service by publication in three newspapers.  There are several

flaws with plaintiffs' representations, and with allowing service of process by publication.  As

the Supreme Court recently emphasized, "service of process . . . is fundamental to any

procedural imposition on a named defendant." <u>Murphy Brothers, Inc. v. Michetti Pipe Stringing,</u>

<u>Inc.</u>, 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or waiver of

service by the defendant), a court ordinarily may not exercise power over a party the complaint

names as a defendant." <u>Id.</u>  This is a jurisdictional requirement. <u>Id.</u>

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi

Arabia. *See* Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the

*International Herald Tribune* has a circulation of only 199 in Saudi Arabia, and that *Al Quds Al*

*Arabi* is banned in that country).  Even the one Arabic language newspaper is actually published

in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only

paid for announcements in the print editions, and not the online editions.  Even if Mr. Mushayt

or his employees had accessed these newspapers on the Internet, they would not have seen the

announcement if they had checked these newspapers' websites on the days the announcement

ran in the print edition.

Third, plaintiffs made no showing that they could not serve Mr. Mushayt and MFT by

means of a process server.  Indeed, plaintiffs' own process server, Nelson Tucker, on his

website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy section

describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a specific

rate for Saudi Arabia.  See Process Service Network, "International" and "Saudi Arabia"

(attached hereto as Exhibits 2-3).  Plaintiffs have offered no explanation as to why Mr. Tucker's

firm could not have served these two defendants, as he claims he can do.

Finally, this Court should reject plaintiffs' argument that because these two defendants

have retained counsel and filed a motion to dismiss, they have actual notice.  Such an argument

would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and
> that they were named as defendants, such knowledge is not a substitute for service
> on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be
> granted, and the rule would be a nullity.

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267

(2d Cir. 1981).  The Second Circuit has held that "actual notice" is no substitute for proper

service under Rule 4, Fed. R. Civ. P.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d

253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void

service.").

Therefore, this Court should find that service of process by publication was improper, since plaintiffs' representations to this Court did not justify that means of service.

### <u>CONCLUSION</u>

For the foregoing reasons, defendants Mohamed Ali Mushayt and the Mushayt for Trading Establishment respectfully request that this Court grant their Motion to Dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,

/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendants
  Mohamed Ali Mushayt and
  the Mushayt for Trading Establishment

Dated:  September 6, 2005

22

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).


/s/ Alan R. Kabat
_____
Alan R. Kabat