## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| *IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | ) ) ) | No. 03 MDL 1570 (RCC)  ECF Case |

_____

This document relates to:

ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;

BURNETT, *et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP., *et al.*, Case No. 03-CV-5738;

CONTINENTAL CASUALTY CO., *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 04-CV-05970;

EURO BROKERS, INC., *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07279;

NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA, *et al.*, Case No. 04-CV-6105;

TREMSKY, *et al.* v. OSAMA BIN LADEN, *et al.*, Case No. 02-CV-7300; and

WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP., *et al.*, Case No. 04-CV-07280.


## MEMORANDUM OF LAW IN SUPPORT OF
## DR. ABDULLAH NASEEF'S
## CONSOLIDATED MOTION TO DISMISS

Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Naseef

DATED:  September 6, 2005

**TABLE OF CONTENTS**

I.  Introduction ......................................................................................................... 1

II.  Factual Background ............................................................................................. 2

III.  Summary of Legal Argument ............................................................................. 5

IV.  This Court Lacks Personal Jurisdiction over Dr. Naseef, Pursuant to Rule
    4(k)(1)(D), Fed. R. Civ. P., or the New York Long-Arm Statute .............................. 6

    A.  The New York Long-Arm Statute Is Not Satisfied ........................................ 6

    B.  Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied ......... 7

V.  This Court must Dismiss Plaintiffs' Complaints Against Dr. Naseef, Pursuant
    to Rule 12(b)(6), Fed. R. Civ. P., for Failure to State a Claim .................................. 10

    A.  Plaintiffs Fail to Plead Sufficient Facts Showing That Dr. Naseef's Acts
        Proximately Caused Plaintiffs' Injuries ........................................................... 11

    B.  Plaintiffs' Claims Against Dr. Naseef under the Torture Victim Protection
        Act, the Anti-Terrorism Act, the Alien Tort Claims Act, and Plaintiffs'
        Common Law Claims, Must Be Dismissed as a Matter of Law ..................... 13

    C.  The *Burnett* and *Tremsky* Plaintiffs Lack Standing to Maintain Their RICO
        Claims Because Their Injuries are Personal Injuries, Not Injuries to
        Business or Property ........................................................................................ 16

    D.  Plaintiffs' Allegations are Insufficient to Establish a Cause of Action
        Against Dr. Naseef for Plaintiffs' RICO Claims ............................................ 17

    E.  Plaintiffs' Allegations are Insufficient to Make out Negligence Claims
        Against Dr. Naseef Because He Owed No Duty of Care to Plaintiffs .......... 18

    F.  Plaintiffs' Punitive Damage Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................... 19

    G.  Plaintiffs' Conspiracy Claims Fail as a Matter of Law Because No
        Independent Cause of Action Exists ............................................................... 20

VI.  Plaintiffs' Service of Process on Dr. Naseef Is Insufficient and Should Be Quashed
    Pursuant to Rule 12(b)(5), Fed. R. Civ. P. ................................................................ 21

i

CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases:**

Ahmed v. National Bank of Pakistan,
    572 F. Supp. 550 (S.D.N.Y. 1983) ....................................................... 20

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
    No. 01 CV 11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ............ 12

Arndt v. UBS AG,
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) ................................................. 13

Aquascutum of London, Inc. v. S.S. American Champion,
    426 F.2d 205 (2d Cir. 1970) ............................................................... 8

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ............................................................... 6

Bigio v. Coca-Cola Co.,
    239 F.3d 440 (2d Cir. 2001) ............................................................. 14

Boim v. Quranic Literacy Inst.,
    291 F.3d 1000 (7th Cir. 2002) ......................................................... 14

Burnett v. Al Baraka Invest. & Devel. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .............................................. *passim*

Child v. Beame,
    417 F. Supp. 1023 (S.D.N.Y. 1976)..................................................... 4

Chrysler Capital Corp. v. Century Power Corp.,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................... 20

Conley v. Gibson,
    355 U.S. 41 (1957) ....................................................................... 10

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) .............................................................. 10

Denny v. Barber,
    73 F.R.D. 6 (S.D.N.Y. 1977) ........................................................... 10

Diaz v. Gates,
    No. 02-56818, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (*en banc*).............  17

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ...................................................................  12

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) .................................................................  20

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ............................................................................ 7

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993)................................................  15

*In re* Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003) ................................................................ 8

*In re*: Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) .............................................  *passim*

Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ................................................. 8

Jerry Kubecka, Inc. v. Avellino,
    898 F. Supp. 963 (E.D.N.Y. 1995) ....................................................  16

Kajtazi v. Kajtazi,
    488 F. Supp. 15 (E.D.N.Y. 1978) .......................................................  20

Karabu Corp. v. Gitner,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) .................................................. 9

Kinetic Instruments, Inc. v. Lares,
    802 F. Supp. 976 (S.D.N.Y. 1992) ..................................................... 9

King v. Crossland Savings Bank,
    111 F.3d 251 (2d Cir. 1997) ............................................................... 19

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ...............................................................  16

Liberman v. Worden,
    701 N.Y.S.2d 419 (App. Div. 2000) ................................................... 12

iv

Mayes v. UVI Holdings, Inc.,
    723 N.Y.S. 2d 151 (App. Div. 2001) .................................................................. 20

McCarthy v. Olin Corp.,
    119 F.3d 148 (2d Cir. 1997) ............................................................................. 19

Mende v. Milestone Tech., Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ................................................................ 6

Morrissey v. Curran,
    482 F. Supp. 31, 59 (S.D.N.Y. 1979)................................................................. 22

Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,
    526 U.S. 344, 350 (1999)................................................................................... 21

NAACP v. AcuSport, Inc.,
    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................................... 19

National Dev. Co. v. Triad Holding Corp.,
    930 F.2d 253, 256 (2d Cir. 1991)...................................................................... 22

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990) ............................................................................... 17

Palsgraf v. Long Island R.R. Co.,
    248 N.Y. 339 (1928) ......................................................................................... 19

People v. Keech,
    467 N.Y.S. 2d 786 (Sup. Ct. 1983) ...................................................................15

People v. Summer,
    407 N.Y.S.2d 53 (App. Div. 1978) ...................................................................15

Pilates, Inc. v. Pilates Institute, Inc.,
    891 F. Supp. 175 (S.D.N.Y. 1995) ..................................................................... 9

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ............................................................................. 12

SEC v. Carrillo,
    115 F.3d 1540 (11th Cir. 1997) .......................................................................... 8

SEC v. Tone,
    833 F.2d 1086 (2d Cir. 1987) ........................................................................... 21

Smith v. County of Erie,
       743 N.Y.S.2d 649 (App. Div. 2002) ................................................... 19

Smith v. Islamic Emirate of Afghanistan,
       262 F. Supp. 2d 217 (S.D.N.Y. 2003) ................................................ 14

Szabo Food Serv., Inc. v. Canteen Corp.,
       823 F.2d 1073 (7th Cir. 1987)........................................................... 10

Talmor v. Talmor,
       712 N.Y.S.2d 833 (Sup. Ct. 2000) .................................................... 16

Time, Inc. v. Simpson,
       No. 02-Civ.4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) .......... 8

United States v. Ruiz,
       115 F.3d 1492 (1st Cir. 1997) ........................................................... 16

von Bulow v. von Bulow,
       634 F. Supp. 1284 (S.D.N.Y. 1986) .................................................. 16

**Statutes and Rules:**

Alien Tort Claims Act, 28 U.S.C. § 1350 ..................................................... 13-14

Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ............................................. 14

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. ........  16-18

       18 U.S.C. § 1962(a) ........................................................... 17-18

       18 U.S.C. § 1962(c) ........................................................... 17-18

       18 U.S.C. § 1962(d) ........................................................... 17-18

       18 U.S.C. § 1964(c) ............................................................ 16

Torture Victim Protection Act, 28 U.S.C. § 1350 note ................................ 13

Federal Rules of Civil Procedure:

       Rule 4(k)(1)(D) ................................................................. 7-9

Rule 10(a) ................................................................................................. 1

Rule 12(b) ................................................................................................. 1

Rule 12(b)(2) ......................................................................................... 1, 6

Rule 12(b)(5) ..................................................................................... 1, 20-22

Rule 12(b)(6) ..................................................................................... 1, 10-11

Rule 15 ..................................................................................................... 1

N.Y. C.P.L.R. § 215(3) (McKinney 2003) ..................................................... 13

N.Y. C.P.L.R. § 302(a) (McKinney 2001) .................................................... 6-7

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 1999 & Supp. 2005) ............................ 15

N.Y. E.P.T.L. § 11-3.3 (McKinney 2001) ................................................... 15

## I.    **INTRODUCTION.**

Dr. Abdullah Naseef, a Saudi citizen, was named as a defendant in eight of the complaints before this Court, but with few allegations specifically pled against him.  The only basis for naming him as a defendant seems to be that he is a Muslim who was formerly a Saudi government official, and a former officer of two Islamic charities.

Dr. Naseef's motion to dismiss the first *Burnett* complaint ("*Burnett I*") is fully briefed. Dr. Naseef is a defendant in seven other cases – the second *Burnett* action ("*Burnett II*," originally filed in this Court), *Ashton, Continental Casualty, Euro Brokers, New York Marine, Tremsky*, and *WTC Properties*.[1]

Dr. Naseef respectfully moves, pursuant to Rule 12(b), Fed. R. Civ. P., for dismissal based on (1) lack of personal jurisdiction, (2) failure to state a claim, and (3) improper service of process.[2]

As set forth below, this Court must find, pursuant to Rule 12(b)(2), Fed. R. Civ. P., that it lacks personal jurisdiction over Dr. Naseef, a non-resident whose minimal contacts with this forum are insufficient for the exercise of personal jurisdiction.  This Court must also find, pursuant to Rule 12(b)(6), Fed. R. Civ. P., that plaintiffs have failed to state a claim against Dr. Naseef, because plaintiffs have failed to plead sufficient facts showing that his acts proximately caused their injuries.  Finally, this Court should find, pursuant to Rule 12(b)(5), Fed. R. Civ. P., that plaintiffs' attempts to serve Dr. Naseef by publication were insufficient.

---

[1] Dr. Naseef is not named in the caption of the *Continental Casualty* complaint.  However, he is identified as a "defendant" in the text of the complaint.  As a matter of law, the failure to name him in the caption means that he is not a defendant, despite this identification in the text.  See Rule 10(a), Fed. R. Civ. P.  It is too late for these plaintiffs to add him as a defendant.  See Case Management Order No. 2, at ¶ 12; see also Rule 15, Fed. R. Civ. P. Nonetheless, out of an abundance of caution, Dr. Naseef is also moving to dismiss that complaint.

[2] Dr. Naseef is moving against the *Burnett* complaint originally filed in this Court, No. 03-CV-5738, which is similar to the *Burnett* complaint filed in the District of Columbia, but with changes in the list of parties.

## II.     **FACTUAL BACKGROUND.**

Dr. Naseef is now, and always has been a citizen of the Kingdom of Saudi Arabia.  See Declaration of Abdullah Naseef at ¶ 3 ("Decl.") (attached and incorporated hereto as Exhibit 1). He has lived in Saudi Arabia his entire life.  Id.

Dr. Naseef is currently a Professor of Geology at King Abdulaziz University, Jeddah, Saudi Arabia.  Id. at ¶ 4.  From 1983 to 1993, Dr. Naseef was Secretary-General of the Muslim World League, a charity that is sponsored and supported by the government of Saudi Arabia.  Id. at ¶ 5.  As Secretary-General, he was also an officer, from 1988 to 1993, of the Rabita Trust, another charity which is partly owned by the Muslim World League.  Id.  His role with these two charities ended in 1993.  Id.

In 1993, Dr. Naseef was appointed by Royal Decree to the Saudi Majilis-ash-Shura, the Saudi legislative body that is equivalent to a Parliament.  Id. at ¶ 6.  Dr. Naseef was a member of this legislative body from 1993 until his retirement in 2001.  Id.

Dr. Naseef does not own any real property in the United States and does not have any bank accounts or investments in the United States.  Id. at ¶ 8.  Furthermore, Dr. Naseef has never conducted any personal business with any businesses in the United States.  Id.  While Dr. Naseef has made several visits to the United States, these visits were primarily to study at Stanford University in 1965, and to attend academic conferences as well as conferences related to the Boy Scout movement.  Id. at ¶ 7.  Dr. Naseef has also made several visits as a tourist.  Id.  Dr. Naseef last visited the United States in 2002, to attend the World Economic Forum.  Id.

Dr. Naseef does not read or subscribe to the *International Herald Tribune*, nor does he read or subscribe to the *Al Quds al Arabi*, which is banned in Saudi Arabia.  Id. at ¶ 9.

Dr. Naseef has never supported any person or organization who is known to have participated in terrorist activities and has publicly condemned and denounced the tragic terrorist attacks of September 11, 2001.  Id. at ¶ 10.  Immediately following the September 11 attacks, Dr. Naseef sent a letter to President Bush expressing his disapproval of the terrorist acts and expressing that the acts were "totally contrary to Islamic values and teachings."  Id. at ¶ 10 & Ex. 1.  In a subsequent letter to President Bush, Dr. Naseef reiterated his desire to work together with the United States "towards peace in the Middle East and in the world."  Id. at ¶ 10 & Ex. 2.

Plaintiffs make only four allegations regarding Dr. Naseef, all of which are untrue or substantially distort the facts.  Id. at ¶ 11.  The *Ashton, Burnett, Continental Casualty, Tremsky,* and *WTC Properties* complaints have identical allegations, merely copied from one complaint to another.

First, plaintiffs allege that the Rabita Trust is connected to the so-called "SAAR Network" through two officers, one of whom is Dr. Naseef.  See *Ashton* Compl. at ¶ 526; *Burnett* Compl. at ¶ 273; *Tremsky* Compl. at ¶ 162; *WTC Properties* Compl. at ¶ 550.  Plaintiffs also allege that Dr. Naseef "founded the Rabita Trust in July 1998 and is the current chairman."  See *Ashton* Compl. at ¶ 527; *Burnett* Compl. at ¶ 274; *Tremsky* Compl. at ¶ 163; *WTC Properties* Compl. at ¶ 551; cf. *Euro Brokers* Compl. at ¶ 53.  All of these statements are incorrect.

Dr. Naseef was never involved in any of the day-to-day operations of the SAAR Network or its components.  See Naseef Decl. (Ex. 1), at ¶ 11.  He does not have knowledge of any SAAR activities that were terrorist activities, or that SAAR knowingly supported terrorism.  Id. Contrary to plaintiffs' allegations, Dr. Naseef has not been an officer of the Rabita Trust since 1993, and has not had any knowledge of that entity's day-to-day activities since then.  Id. at ¶ 12.

Moreover, he has never made any personal donations to the Rabita Trust, and has no knowledge of any activities of the Rabita Trust that were terrorist activities, or knowingly support terrorism. Id.

The *WTC Properties* plaintiffs allege that an unauthenticated memorandum "detailed a meeting between Abu Abdullah," who plaintiffs claim is an alias for Osama Bin Laden, and three other individuals, including Dr. Naseef, and referencing the Muslim World League.  See *WTC Properties* Compl. at ¶ 386.  However, the absence of any other information about this memorandum renders it as useless as the "Golden Chain," a document which this Court properly rejected as having no evidentiary value.  Further, Dr. Naseef's role with the Muslim World League ended in 1993, eight years before the Sept. 11, 2001 attacks.  Even if this memorandum accurately reflected a conversation with Osama Bin Laden (and not Abu Abdullah), it would have taken place years before al Qaeda targeted the United States, which the *Burnett* plaintiffs' complaint admits did not occur until 1996.  See *Burnett* Compl. at ¶¶ 315, 576, 584-584.  Indeed, the United States government, throughout the Reagan Administration and continuing into the early years of the first Bush Administration, actively supported the mujahedin in Afghanistan, which included al Qaeda.  See Al-Husaini Reply Br., at Part I.B (July 23, 2004) (Docket No. 331).

The only other specific allegation that plaintiffs make against Dr. Naseef is that he was "involved in a SAAR Network charity, as an "officer of Makkah-al-Mukkarramah, Inc."  See *Ashton* Compl. at ¶¶ 528; *Burnett* Compl. at ¶ 275; *Tremsky* Compl. at ¶ 164; *WTC Properties* Compl. at ¶ 552.  This statement is also factually incorrect.  Dr. Naseef did not have any involvement in the day-to-day activities or operations of the so-called "SAAR Network," or

4

Makkah-al-Mukkarramah, and denies any knowledge that any activities of either entity were terrorist activities, or that either entity knowingly supported terrorism.  See Naseef Decl. (Ex. 1), at ¶ 13.  Moreover, the Makkah al Mukkarramah had its corporate registration terminated as of September 30, 1998, several years before the September 11 attacks, and at a time when Dr. Naseef was not listed as an officer.  See Virginia Corporate Records and Registrations (attached hereto as Exhibit 2).

Finally, the *NY Marine* plaintiffs listed Dr. Naseef as one of some three hundred defendants who are generically alleged to have "aided and abetted, conspired with, and provided material support to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons," but without setting forth any further facts in support of that generic allegation.  See *NY Marine* Compl., at ¶ 45.

As set forth below, none of the facts pled by plaintiffs support this Court's exercise of personal jurisdiction over Dr. Naseef, or make out a legal claim against him.  Further, he is not named anywhere in the official report of the 9/11 Commission, available online at: http://www.9-11commission.gov/.

### III.     SUMMARY OF LEGAL ARGUMENT.

Plaintiffs failed to make any showing that this Court can exercise personal jurisdiction over Dr. Naseef.  Plaintiffs have not alleged any specific wrongful conduct by Dr. Naseef, let alone conduct that is related to the September 11 attacks.  Nor have plaintiffs pled any facts that would establish that his conduct proximately caused their injuries, or made out the specific requirements of their claims.  Where a "complaint does contain some very broad allegations that all defendants" took certain actions, "such conclusory allegations are clearly insufficient to

charge the defendants with a conspiracy," so that "the complaint also fails adequately to notify the movants of any cause of action that plaintiffs might have against them."  Child v. Beame, 417 F. Supp. 1023, 1025-26 (S.D.N.Y. 1976) (granting motion to dismiss); accord Burnett v. Al Baraka Invest. & Devel. Corp., 274 F. Supp. 2d 86, 111 (D.D.C. 2003) ("the complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading"). Here, there are only conclusory allegations about all defendants, without the requisite "sufficient information" about Dr. Naseef.

## IV. THIS COURT LACKS PERSONAL JURISDICTION OVER DR. NASEEF, PURSUANT TO RULE 4(k)(1)(D), FED. R. CIV. P., OR THE NEW YORK LONG-ARM STATUTE.

This Court must dismiss plaintiffs' complaints against Dr. Naseef, pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.  Plaintiffs have the burden to establish that personal jurisdiction exists over each defendant by making a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Conclusory assertions or "argumentative inferences" cannot be the basis for personal jurisdiction.  *In re*: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005); Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

### A. The New York Long-Arm Statute Is Not Satisfied.

Plaintiffs have failed to meet the personal jurisdiction requirements of the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002).  As this Court has previously held, merely alleging that "all defendants in these actions conspired with the al Qaeda terrorists

6

to perpetrate the attacks of September 11," is insufficient to establish personal jurisdiction

through the New York long-arm statute on a conspiracy theory.  _In re_ Sept. 11, 349 F. Supp. 2d

at 805.  Here, plaintiffs' complaints fail to "allege any specific facts" that would allow the

reasonable inference that Dr. Naseef, "directed, controlled, or requested al Qaeda to undertake its

terrorist activities," and fail to make "any specific allegations of [his] knowledge of or consent to

those activities."  Id. at 806.  Indeed, plaintiffs state only conclusions that somehow Dr. Naseef

acted in concert with several hundred other defendants, or that he was an officer with the Muslim

World League, Rabita Trust, and another entity, but without pleading any facts to show that he

had any knowledge of any activities of those entities that were intended to support terrorism, let

alone cause plaintiffs' injuries.  Plaintiffs allege no facts from which this Court can infer Dr.

Naseef had any control or knowledge of al Qaeda and its activities.

   **B.**     **Personal Jurisdiction Under Rule 4(k), Fed. R. Civ. P., Is Not Satisfied.**

   Personal jurisdiction over Dr. Naseef, pursuant to Rule 4(k), under either a "general

jurisdiction" or a "specific jurisdiction" theory, would not satisfy the requirements of due

process, which require some level of minimum contacts with this forum.  _In re_ Sept. 11, 349 F.

Supp. 2d at 810-11.  For this Court to exercise "general" personal jurisdiction over a non-

resident defendant, the defendant's contacts with the forum must be "continuous and

systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

Dr. Naseef's limited contacts with the United States, see Naseef Decl. (Ex. 1), at ¶¶ 7-8, are "not

sufficiently 'systematic and continuous' to maintain general jurisdiction" over him.  _In re_ Sept.

11, 349 F. Supp. 2d at 816 (dismissing Prince Mohamed based on his limited contacts with the

United States).  The Second Circuit has held that even several visits a year to the United States

are insufficient to assert personal jurisdiction over a non-resident defendant.  See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212-13 (2d Cir. 1970) (no jurisdiction based on visits to the forum "every few months"); see also Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) ("occasional trips . . . an average of four to five visits per year, are an insufficient basis for jurisdiction").  Here, plaintiffs do not allege that Dr. Naseef made any visits to United States, and those that he admits he made in his affidavit are clearly minimal and incidental, predominantly as a student and tourist, as well as to attend Boy Scout and academic conferences, see Naseef Decl. (Ex. 1), at ¶ 7, and are insufficient for the exercise of personal jurisdiction.

Similarly, for this Court to exercise personal jurisdiction over Dr. Naseef under a "specific jurisdiction" theory, plaintiffs must plead sufficient facts to support an allegation that he was a "primary participant in intentional wrongdoing."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003); SEC v. Carrillo, 115 F.3d 1540, 1548 (11th Cir. 1997).  If the defendant were not personally involved with the alleged torts that caused the plaintiffs' injuries, and otherwise were not a "primary participant," then personal jurisdiction cannot be supported.  See In re Sept. 11, 349 F. Supp. 2d at 809 (quoting In re Magnetic Audiotape); Time, Inc. v. Simpson, No. 02-Civ.4917 (MBM), 2003 WL 23018890, at *5-*6 (S.D.N.Y. Dec. 22, 2003).  Here, plaintiffs have failed to plead any facts to support an allegation that Dr. Naseef was personally involved, or a primary participant, in the September 11 attacks, so this Court cannot exercise personal jurisdiction over him under a "specific jurisdiction" theory.

Nor does Dr. Naseef's as an officer of a Virginia entity, the Makkah al-Mukarramah, Inc., allow this Court to exercise personal jurisdiction over him.  First, Dr. Naseef had no role in

8

the day-to-day operations of this entity.  <u>See</u> Naseef Decl. (Ex. 1), at ¶ 13.  Even if he had such a

role, which plaintiffs do not allege, it is settled law that to exercise personal jurisdiction over a

nonresident officer based on the acts of a corporation in this forum, the corporation's acts "must

be with the knowledge and consent of the officer and the officer must have exercised control

over the corporation in the transaction."  <u>Kinetic Instruments, Inc. v. Lares</u>, 802 F. Supp. 976,

984 (S.D.N.Y. 1992).[3]  Plaintiffs have not satisfied that pleading requirement as to Dr. Naseef,

since they say nothing beyond that he "is an officer of Makkah al-Mukarramah, Inc."

Finally, the "purposefully directed" theory does not apply, because plaintiffs have failed

to "make a *prima facie* showing of each Defendant's personal or direct participation in the

conduct giving rise to Plaintiffs' injuries."  <u>*In re*</u> Sept. 11, 349 F. Supp. 2d  at 809.  Plaintiffs

merely made "conclusory allegations" that Dr. Naseef "aided and abetted terrorists," but have

not pled any facts to support an allegation that he "purposefully directed his activities at this

forum" by engaging in activities "that he knew at the time supported international terrorism."  <u>Id.</u>

at 813 (dismissing Prince Sultan for lack of personal jurisdiction, because "plaintiffs do not offer

any facts to lend support to their allegation that Prince Sultan purposefully directed his activities

at this forum").

Therefore, this Court must find that plaintiffs' allegations are insufficient to support this

Court's exercise of personal jurisdiction over Dr. Naseef.

---

[3] <u>See</u> <u>also</u> <u>Karabu Corp. v. Gitner</u>, 16 F. Supp. 2d 319, 325 (S.D.N.Y. 1998) ("Suing the out-of-state
officers of a large, multi-national corporation based only upon their title, and absent any good faith basis for
believing that they personally participated in the conduct underlying plaintiffs' lawsuit, will not confer jurisdiction
under a theory of agency."); <u>Pilates, Inc. v. Pilates Institute, Inc.</u>, 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995) ("it is
well established that individual officers and employees of a corporation are not automatically subject to personal
jurisdiction in New York simply because a court can exercise jurisdiction over the corporation").

## V.   THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. NASEEF, PURSUANT TO RULE 12(b)(6), FED. R. CIV. P., FOR FAILURE TO STATE A CLAIM.

Even if this Court were to exercise personal jurisdiction, it must still find that plaintiffs have not pled factual allegations against Dr. Naseef, so that dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is required.

The court must dismiss a complaint, under Rule 12(b)(6), for failure to state a claim, where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Second Circuit upheld the dismissal of a complaint that "consists of conclusory allegations unsupported by factual assertions [that] fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Here, of course, there are little more than "conclusory allegations" against Dr. Naseef. While plaintiffs allege that he was involved with three Muslim charities, they fail to plead any facts showing that he knew that any of these entities were intentionally supporting terrorism. Further, his involvement with the Muslim World League and Rabita Trust ended in 1993, nearly a decade before the September 11 attacks.

This Court should not condone any attempt by plaintiffs to argue that they should be entitled to discovery to obtain facts to plead their claims. As Judge Easterbrook concluded, "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case." Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir. 1987) (affirming imposition of Rule 11 sanctions on plaintiffs' counsel for bringing frivolous claims); accord Denny v. Barber, 73 F.R.D. 6, 10 (S.D.N.Y. 1977) ("Complaints should not be conceived merely as tokens, guaranteeing access to a world of discovery.").

The plaintiffs have brought the following claims against Dr. Naseef: statutory tort claims under (a) the Anti-Terrorism Act (*Ashton, Burnett, NY Marine, Tremsky,* and *WTC Properties*); (b) the Torture Victim Protection Act (*Ashton, Burnett,* and *Tremksy*); (c) the Alien Tort Claims Act (*Burnett* and *Tremsky*); and (d) Civil RICO (*Burnett, Continental Casualty, Euro Brokers, NY Marine, Tremsky,* and *WTC Properties*). Plaintiffs also brought state common-law tort claims for (a) wrongful death and survival (*Ashton, Burnett,* and *Tremsky*); (b) conspiracy, and aiding and abetting (*Burnett, NY Marine, Tremsky* and *WTC Properties*); (c) assault and battery (*Ashton*) and (d) property destruction and damage (*Ashton, Continental Casualty, Euro Brokers, NY Marine,* and *WTC Properties*). The *Burnett, NY Marine,* and *Tremsky* plaintiffs brought negligence and negligent and intentional infliction of emotional distress claims. The *Tremsky* plaintiffs brought a nuisance claim. All plaintiffs, except for *Continental Casualty*, brought separate claims for punitive damages.

### A. PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS SHOWING THAT DR. NASEEF'S ACTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

This Court must find that the plaintiffs have failed to satisfy the threshold requirement for their intentional tort claims since they have not pled sufficient facts showing that Dr. Naseef's acts proximately caused plaintiffs' injuries. Plaintiffs have merely alleged, in a conclusory manner, that all defendants provided support to al Qaeda, which led to the September 11 attacks. As there are 440 defendants in *Ashton*, 361 named defendants in *Burnett II* (with 5,000 "John Doe" defendants), 431 defendants in *Continental Casualty*, 201 defendants in *Euro Brokers*, 561 defendants in *NY Marine*, 98 defendants in *Tremsky*, and 201 defendants in *WTC Properties*, there is no way for Dr. Naseef to know what plaintiffs are alleging is his wrongful conduct.

11

Plaintiffs cannot "lump" Dr. Naseef with hundreds of other defendants, and plead allegations in a collective manner.  Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Under clear Second Circuit precedent, proximate causation means that only those defendants whose acts "were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence" can be held liable for intentional torts.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).  In this litigation, the plaintiffs rely entirely on theories of concerted liability, i.e., aiding and abetting, and conspiracy, to support their allegations of proximate causation.  In re Sept. 11, 349 F. Supp. 2d at 826.  Hence, to impose tort liability on Dr. Naseef through a concerted liability theory, plaintiffs must show that he "must know the wrongful nature of the primary actor's conduct" and that he acted "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer."  Id. (quoting Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998)); accord Liberman v. Worden, 701 N.Y.S.2d 419, 420 (App. Div. 2000) (upholding dismissal of aiding and abetting claims "in the absence of any allegation that defendants had actual or constructive knowledge of the misconduct and substantially assisted therein").

This Court should dismiss plaintiffs' tort claims against Dr. Naseef, because plaintiffs have failed to state a cause of action that his acts directly and intentionally injured plaintiffs, thereby precluding them from recovering against him under any direct tort theory, including

under the Torture Victim Protection Act; the Anti-Terrorism Act; the Alien Tort Claims Act; the

New York wrongful death and survival statutes; and common-law assault and battery, property

destruction, and intentional infliction of emotional distress claims.

> **B.    PLAINTIFFS' CLAIMS AGAINST DR. NASEEF UNDER THE TORTURE VICTIM PROTECTION ACT, THE ANTI-TERRORISM ACT, THE ALIEN TORT CLAIMS ACT, AND PLAINTIFFS' COMMON LAW CLAIMS, MUST BE DISMISSED AS A MATTER OF LAW.**

Moreover, as a matter of law, several of plaintiffs' tort claims must be dismissed.

(1)    This Court must dismiss the plaintiffs' claims under the Torture Victim Protection

Act, 28 U.S.C. § 1350 note (*Ashton* Count 5; *Burnett* Count 1; *Tremsky* Count 2), because Dr.

Naseef, a former officer of several charities, could not have acted under color of law as required

to impose liability on individuals.  *In re* Sept. 11, 349 F. Supp. 2d at 828 (citing Arndt v. UBS

AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).  If plaintiffs now argue that he was acting in an

official capacity (which plaintiffs have not pled), dismissal of their claims is still warranted

because plaintiffs did not plead any facts to support an allegation that Dr. Naseef "subject[ed] an

individual to torture or extrajudicial killing," as required to impose liability.  Id.

(2)    This Court must dismiss the *Burnett* plaintiffs' intentional infliction of emotional

distress claim (*Burnett* Count 8), because the statute of limitations, one year, ran by the time this

suit was filed.  N.Y. C.P.L.R. § 215(3) (McKinney 2003); *In re* Sept. 11, 349 F. Supp. 2d at 829.

The *Burnett II* (New York) complaint was filed on August 1, 2003, more than one year after

September 11, 2001.  Since several complaints in this litigation were filed within the one-year

period, including the first *Burnett* complaint, the only reason that this complaint was not timely

filed is plaintiffs' counsels' inaction, not any alleged lack of knowledge of the underlying facts.

(3)    This Court must dismiss the plaintiffs' tort claims under the Alien Tort Claims

Act, 28 U.S.C. § 1350 (*Burnett* Count 4 and *Tremsky* Count 3), because liability can only be imposed if (1) the defendant is a state actor or acting under color of state law, or (2) the defendant engaged in "certain forms of conduct" such as "hijacking of aircraft" or "certain acts of terrorism." Bigio v. Coca-Cola Co., 239 F.3d 440, 447-48 (2d Cir. 2001). Dr. Naseef is not a state actor, and plaintiffs have not pled that he was acting under color of state law. Nor have plaintiffs pled that Dr. Naseef engaged in, or knowingly supported, the requisite misconduct, i.e., hijacking or terrorism.

(4)    This Court must dismiss the plaintiffs' tort claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. (*Ashton* Count 4; *Burnett* Count 3; *NY Marine* Count 5; *Tremsky* Count 9; *WTC Properties* Count 1), because plaintiffs have failed to plead that Dr. Naseef engaged in any act of international terrorism proscribed by 18 U.S.C. § 2331(1); or any facts that he provided any donations, training, or personnel to any terrorist group which caused plaintiffs' injuries; or that he contributed to any terrorist group whose recipients were known to him and which caused plaintiffs' injuries, as required to impose liability under the ATA. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 227 n.12 (S.D.N.Y. 2003) (plaintiff "must show knowledge of and an intent to further the criminal acts and proximate cause"); see also Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1012 (7th Cir. 2002) (plaintiff must show "knowledge of and intent to further the payee's violent criminal acts"). Plaintiffs' allegations about three charities fail to set forth any facts showing that Dr. Naseef had any knowledge of illegal acts by those entities. Plaintiffs' allegations about a supposed meeting with Abu Abdullah, whom plaintiffs claim is an alias for Osama Bin Laden, also fail to satisfy the "knowledge" requirement.

14

(5)    This Court must dismiss the plaintiffs' common law tort claims for wrongful

death and survival (*Ashton* Counts 1-2; *Burnett* Counts 5 and 7; *Tremsky* Count 5), because

plaintiffs failed to plead any facts to support an allegation that Dr. Naseef "caused the decedent's

death," or that he committed a tort against the decedent prior to death.  N.Y. E.P.T.L. § 5-4.1(1)

(McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival

claim).  Plaintiffs have also not pled any facts to support the allegation that Dr. Naseef

"supported, aided and abetted, or conspired with the September 11 terrorists." <u>*In re* Sept. 11</u>,

349 F. Supp. 2d at 829.

(6)    This Court must dismiss the plaintiffs' common law intentional infliction of

emotional distress claim (*Burnett* Count 8 and *Tremsky* Count 6) and property destruction tort

claims (*Ashton* Count 8; *Continental Casualty* Count 1; *Euro Brokers* Counts 1-2, 6, 8; *NY

Marine* Count 1; *WTC Properties* Counts 5-6, 9), because plaintiffs have not pled any facts to

support an allegation that Dr. Naseef's acts caused plaintiffs' injuries, as required for these torts.

<u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional

infliction of emotional distress requires "intent to cause, or disregard of a substantial probability

of causing, severe emotional distress" and "a causal connection between the conduct and

injury"); <u>People v. Keech</u>, 467 N.Y.S. 2d 786, 788-89 (Sup. Ct. 1983) (arson requires intent);

<u>People v. Summer</u>, 407 N.Y.S.2d 53, 54 (App. Div. 1978) (criminal mischief resulting in

property damage requires intent).[4]

Nor can the plaintiffs rely on a conspiracy or aiding and abetting theory to support their

_____

    [4] Dr. Naseef has not identified New York case law concerning civil liability for property destruction, other than environmental tort claims, which rely on distinctive statutes and case law.  Plaintiffs' property damage claims are analogous to damages claims arising from arson and criminal mischief resulting in damage to property.

15

property damage claims, since plaintiffs have not pled facts sufficient to show that Dr. Naseef knowingly associated himself with, or participated in, the conspiracy resulting in the property damage, let alone that the property damage was a foreseeable act done in furtherance of any of his unstated actions in pursuit of some conspiracy.  United States v. Ruiz, 115 F.3d 1492, 1499 (1st Cir. 1997).  Finally, plaintiffs' "bare legal conclusions are not sufficient" to state an intentional infliction of emotional distress claim.  Talmor v. Talmor, 712 N.Y.S.2d 833, 837 (Sup. Ct. 2000).

### C.    THE *BURNETT* AND *TREMSKY* PLAINTIFFS LACK STANDING TO MAINTAIN THEIR RICO CLAIMS BECAUSE THEIR INJURIES ARE PERSONAL INJURIES, NOT INJURIES TO BUSINESS OR PROPERTY.

This Court must dismiss the RICO claims brought by the *Burnett* and *Tremsky* personal injury plaintiffs, because those plaintiffs lack standing as their injuries are personal injuries.  The *Burnett* plaintiffs have, with respect to other defendants, recently abandoned their RICO claims.

If these personal injury plaintiffs instead decide to pursue their RICO claims against Dr. Naseef, this Court must find that as personal injury plaintiffs, they lack standing to bring RICO claims, which are limited by statute to "[a]ny person injured in his business or property."  18 U.S.C. § 1964(c); see also Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing).  Under clear Second Circuit precedent, personal injury plaintiffs cannot seek recovery under the RICO statute.  Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or property'"); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 969 (E.D.N.Y. 1995) (holding that "personal representatives of the decedents are not entitled to sue under § 1964(c)"); von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal

injury is not actionable under RICO.").

The Ninth Circuit's recent decision in Diaz, referenced by the *O'Neill* plaintiffs in their supplemental filing with this Court (Aug. 22, 2005), does not call for a contrary result, since in Diaz, the plaintiff specifically "alleged both the property interest and the financial loss" arising from his injury, not mere personal injury.  Diaz v. Gates, No. 02-56818, 2005 WL 1949879, at *3 (9th Cir. Aug. 16, 2005) (*en banc*).  Indeed, the Ninth Circuit's majority opinion expressly addressed the concerns raised by the dissent that RICO liability would extend to personal injuries, on the grounds that "our approach does not create RICO liability for every loss of wages resulting from personal injury."  Id.  Thus, even under Diaz – which is not binding on this Court – the personal injury plaintiffs still lack RICO standing.

### D.      PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH A CAUSE OF ACTION AGAINST DR. NASEEF FOR PLAINTIFFS' RICO CLAIMS.

Even if this Court were to consider the damages alleged by plaintiffs sufficient for a RICO claim, it must still find that plaintiffs have failed to state a RICO claim under Section 1962(a), (c), or (d).

First of all, plaintiffs have not filed a RICO Statement, as required by Case Management Order No. 2, ¶ 14 (June 15, 2004), and, therefore, their RICO claims should be stricken.

Second, plaintiffs cannot state a Section 1962(a) claim because they have not alleged any "injury arising from the defendant's investment of the racketeering income to recover under Section 1962(a)," other than an impermissible generic and conclusory assertion as to all defendants.  *In re* Sept. 11, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)) (holding that the *Federal Insurance* plaintiffs have not stated a Section

1962(a) claim).

Third, plaintiffs cannot state a Section 1962(c) claim because they have pled any facts showing that Dr. Naseef had the requisite level of directing the operation and management of the "Al Qaeda enterprise."  As this Court previously held, merely alleging participation or assistance is insufficient absent pleading facts showing that an individual defendant engaged in "active management or operation" to state a Section 1962(c) claim.  Id. at 827-28 (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(c) claim).

Finally, plaintiffs cannot state a Section 1962(d) claim against Dr. Naseef since the plaintiffs have done nothing to show that Dr. Naseef, as one of the alleged conspirators, conspired with the other defendants to engage in an enterprise, or that he was a "central figure in the underlying schemes."  Id. (holding that the *Federal Insurance* plaintiffs have not stated a Section 1962(d) claim).  In fact, plaintiffs do not even allege a "factual basis for a finding of a conscious agreement among the defendants" as required to state a Section 1962(d) RICO claim. Id. at 827.

In summary, this Court must dismiss plaintiffs' RICO claims against Dr. Naseef under Sections 1962(a), (c), and (d), because plaintiffs failed to allege any injury arising from his investment of the enterprise's income; that he engaged in an enterprise, or conspired with others to do so; or that he actively managed and operated the alleged enterprise, or was a central figure in the alleged scheme.

### E.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO MAKE OUT NEGLIGENCE CLAIMS AGAINST DR. NASEEF BECAUSE HE OWED NO DUTY OF CARE TO PLAINTIFFS.

This Court must dismiss the *Burnett, NY Marine,* and *Tremsky* plaintiffs' negligence and

negligent infliction of emotional distress claims against Dr. Naseef because he owed no duty of care to plaintiffs.  It is black letter law that a defendant must owe a duty to plaintiffs in order to state a negligence claim.  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997); Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 342 (1928); In re Sept. 11, 349 F. Supp. 2d at 830.  The plaintiffs have alleged nothing more than conclusory allegations that "all Defendants were under a general duty," Burnett Compl. ¶ 666, or that defendants "breached duties of care owed to" plaintiffs and the employees of plaintiffs' insureds.  See NY Marine Compl., at ¶ 79; Tremsky Compl. ¶ 235.  However, there is no general duty to "control the conduct of third persons to prevent them from causing injury to others."  McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997).  This Court has previously dismissed the negligence claims as to other defendants, because plaintiffs' "complaints presently before the Court do not allege or identify a duty owed to Plaintiffs by moving Defendants." In re Sept.11, 349 F. Supp. 2d at 831; accord Burnett, 274 F. Supp. 2d at 108-09 (same).  Thus, this Court should dismiss plaintiffs' negligence, negligent infliction of emotional distress, and nuisance claims against Dr. Naseef.[5]

## F.   PLAINTIFFS' PUNITIVE DAMAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' punitive damages counts, brought against Dr. Naseef, because no independent cause of action exists under New York law for this claim.  Punitive damages are merely a form of relief, not an independent tort cause of action.  See Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002) ("the court properly dismissed the

---

[5] The Tremsky plaintiffs raised a vague "nuisance" claim (Count 15), which sounds in negligence, since it alleges that all defendants "were under a general duty."  However, they cannot satisfy the requirements of a nuisance claim which requires a showing that Dr. Naseef owed "a duty of care to the public or to a substantial number of persons."  NAACP v. AcuSport, Inc., 271 F. Supp. 2d 435, 490 (E.D.N.Y. 2003).

cause of action for punitive damages"); <u>Mayes v. UVI Holdings, Inc.</u>, 723 N.Y.S. 2d 151, 157 (App. Div. 2001) ("there is no independent cause of action for punitive damages").

## G.    PLAINTIFFS' CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW BECAUSE NO INDEPENDENT CAUSE OF ACTION EXISTS.

This Court must dismiss the plaintiffs' conspiracy counts (*Burnett*, Count 9; *NY Marine*, Count 2; *Tremsky*, Count 7; and *WTC Properties*, Count 7), because no independent cause of action exists under New York law for this claim.  It is settled law that conspiracy is merely a method for establishing a nexus between defendants and the tortious conduct, or for establishing personal jurisdiction, but is not an independent tort cause of action under New York law.  <u>See</u> <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); <u>Chrysler Capital Corp. v. Century Power Corp.</u>, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ("The charge of conspiracy is merely the string which serves to connect defendants to the actionable wrong and the overt acts which caused injury."); <u>Kajtazi v. Kajtazi</u>, 488 F. Supp. 15, 21 (E.D.N.Y. 1978) ("a civil conspiracy to commit an actionable wrong is not a cause of action").  Here, the plaintiffs' "allegation of conspiracy is merely duplicative of the other claims and accordingly [should be] dismissed."  <u>Ahmed v. National Bank of Pakistan</u>, 572 F. Supp. 550, 555 (S.D.N.Y. 1983).

## VI.    PLAINTIFFS' SERVICE OF PROCESS ON DR. NASEEF IS INSUFFICIENT AND SHOULD BE QUASHED PURSUANT TO RULE 12(b)(5), FED. R. CIV. P.

Plaintiffs represented to this Court that Dr. Naseef, and a number of other foreign defendants, could not be served by the method set forth under Rule 4, Fed. R. Civ. P., which they argued merited service by publication in three newspapers.  There are several flaws with plaintiffs' representations, and with allowing service of process by publication.  As the Supreme

Court recently emphasized, "service of process . . . is fundamental to any procedural imposition on a named defendant."  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999).  Hence, "in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant."  Id. This is a jurisdictional requirement.  Id.

First, the newspapers selected by plaintiffs are not widely distributed, if at all, in Saudi Arabia.  See Al-Husaini Motion to Dismiss, at 10 (Docket No. 82) (Apr. 8, 2004) (noting that the *International Herald Tribune* has a circulation of only 199 in Saudi Arabia, and that *Al Quds Al Arabi* is banned in that country).  Even the one Arabic language newspaper is actually published in London, not Saudi Arabia, as confirmed by its website, www.alquds.co.uk.  Plaintiffs only paid for announcements in the print editions, and not the online editions.  Thus, Dr. Naseef would not have seen the announcement if he had happened to check these newspapers' websites on the days the announcement ran in the print edition.

Third, plaintiffs made no showing that they could not serve Dr. Naseef by means of a process server.  Indeed, plaintiffs' own process server, Nelson Tucker, on his website, asserts his ability to serve defendants "Anywhere in the World," has a lengthy section describing service in Saudi Arabia, headed "Process Service Guaranteed," and quotes a specific rate for Saudi Arabia. See Process Service Network, "International" and "Saudi Arabia" (attached hereto as Exhibits 3-4).  Plaintiffs have offered no explanation as to why Mr. Tucker's firm could not have served Dr. Naseef, as Mr. Tucker claims he can do, particularly given that Dr. Naseef is a faculty member at a university whose location is readily ascertainable.  SEC v. Tone, 833 F.2d 1086, 1094 (2d Cir. 1987) ("Certainly, if a defendant's name and address are known or may be obtained with

21

reasonable diligence, service by publication will not satisfy the requirements of due process.").

Finally, this Court should reject plaintiffs' argument that because Dr. Naseef has retained counsel and filed a motion to dismiss, he has actual notice.  Such an argument would render Rule 12(b)(5) a nullity:

> While ... [defendants] were undoubtedly aware that the action had been filed and that they were named as defendants, such knowledge is not a substitute for service on them.  If it were, no motion under Rule 12(b)(5), F. R. Civ. P., could ever be granted, and the rule would be a nullity.

Morrissey v. Curran, 482 F. Supp. 31, 59 (S.D.N.Y. 1979), aff'd in relevant part, 650 F.2d 1267 (2d Cir. 1981).  The Second Circuit has held that "actual notice" is no substitute for proper service under Rule 4, Fed. R. Civ. P.  See National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.").

Therefore, this Court should find that service of process by publication was improper, since plaintiffs' representations to this Court did not justify that means of service.

## **CONCLUSION**

For the foregoing reasons, defendant Dr. Abdullah Naseef respectfully requests that this Court grant his Motion to Dismiss for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

Respectfully submitted,


/s/ Lynne Bernabei
_____
Lynne Bernabei, Esquire  (LB2489)
Alan R. Kabat, Esquire  (AK7194)
Bernabei & Katz, PLLC
1773 T Street, N.W.
Washington, D.C. 20009-7139
(202) 745-1942

Attorneys for Defendant
 Dr. Abdullah Naseef

Dated:  September 6, 2005

23

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat
_____
Alan R. Kabat