UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |
|---|---|

*This document relates to:*

   *Estate of O'Neill, et al.  v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.)

   *Estate of O'Neill, et al. v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS SCHREIBER & ZINDEL TREUHAND ANSTALT,
FRANK O. ZINDEL, ENGELBERT SCHREIBER, SR. AND
<u>ENGELBERT SCHREIBER, JR.'S MOTION TO DISMISS</u>**


                           **SCHIFF HARDIN LLP**

                           Donald A. Klein (DK7821)
                           623 Fifth Avenue
                           New York, NY 10022
                           (212) 753-5000

                           John N. Scholnick (JS7654)
                           Ayad P. Jacob (AJ6888)
                           6600 Sears Tower
                           Chicago, IL  50505
                           (312) 258-5500

                           Attorneys for Defendants
                           *Schreiber & Zindel Treuhand*
                           *Anstalt, Frank O. Zindel, Engelbert*
                           *Schreiber, Sr., and Engelbert*
                           *Schreiber, Jr.*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ..........................................................................................................2

    A. Plaintiffs' Claims Must Be Dismissed for Insufficiency of Service of Process ............................................................................................2

        1. Service by Registered Mail Is Prohibited By the Laws of Liechtenstein ................................................................................2

        2. Plaintiffs' Request for Leave to Re-Serve Should Be Denied ............5

    B. Plaintiffs' Claims Must Be Dismissed for Lack of Personal Jurisdiction ...........................................................................................7

        1. Plaintiffs Do Not Allege Facts Sufficient to Support a Finding of Personal Jurisdiction Under New York's Long-Arm Statute. ...................................................................................8

        2. Defendants Are Not Subject to Specific Jurisdiction ........................9

        3. Plaintiffs Cannot Establish Personal Jurisdiction Under the ATA ..................................................................................9

        4. Plaintiffs Cannot Establish Personal Jurisdiction Under RICO ......................................................................................11

III. CONCLUSION ....................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page No.**

*Baker v. Libya et al.,*
Case No. 03-749 (D.D.C. June 30, 2005) ....................................................................................... 10

*Biofeedtrac, Inc. v. Kolinor Optical Enters., & Consultants, S.R.L.,*
817 F. Supp. 326 (E.D.N.Y. 1993) ................................................................................................ 12

*Biton v. Palestinian Interim Self-Gov't Auth.,*
310 F. Supp. 2d 172 (D.D.C. 2004) ............................................................................................... 10

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) .................................................................................................................. 9, 10

*Burnett v. Al Baraka Invest. and Dev. Corp.,*
292 F. Supp. 2d 9 (D.D.C. 2003) ..................................................................................................... 9

*Calder v. Jones*,
465 U.S. 783 (1984) ......................................................................................................................... 9

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................................................ 8

*Daval Steel Products v. M.V. Juraj Dalmatinac,,*
718 F. Supp. 159 (S.D.N.Y. 1989) .................................................................................................. 8

*Estates of Ungar v. Palestinian Auth.,*
153 F. Supp. 2d 76 (D.R.I. 1985) .................................................................................................. 10

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.,*
2005 WL 1123755 (S.D.N.Y. May 11, 2005) ............................................................................. 4, 5

*Gap Inc. v. Stone Int'l Trading, Inc.,*
1994 WL 670020 (S.D.N.Y. Nov. 30, 1994) ................................................................................ 11

*Hanson v. Denckla,*
357 U.S. 235 (1958) ...................................................................................................................... 10

*In re Crysen/Montenay Energy Co.,*
166 B.R. 546 (S.D.N.Y. 1994) ........................................................................................................ 6

*In re Terrorist Litigation*,
349 F. Supp.2d 765 (S.D.N.Y. 2005) ..................................................................................... passim

*International Shoe Co. v. Washington,*

326 U.S. 310 (1945) ..................................................................................................................10

*Jung v. Neschis,*
2003 WL 1807202 (S.D.N.Y. April 7, 2003) ......................................................................2, 3, 4

*Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.,*
26 F. Supp. 2d 593 (S.D.N.Y. 1998) .........................................................................................11

*Lehigh Valley Indus., Inc. v. Birenbaum,*
527 F.2d 87 (S.D.N.Y. 1975)......................................................................................................8

*Madanes v. Madanes,*
981 F. Supp. 241 (S.D.N.Y. 1997) ...........................................................................................12

*Madison Models, Inc. v. Casta,*
2003 WL 21978628 (S.D.N.Y. 2003).........................................................................................8

*Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
709 F. Supp. 1279 (S.D.N.Y. 1989) .........................................................................................11

*Nordic Bank PLC v. Trend Group, Ltd.,*
619 F. Supp. 542 (S.D.N.Y. 1985) ...........................................................................................11

*Practical Concepts, Inc. v. Republic of Bolivia,*
811 F.2d 1543 (D.C. Cir. 1987)................................................................................................10

*Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.,*
42 F. Supp. 2d 423 (D. Del. 1999).............................................................................................4

*Shaw v. Rolex Watch U.S.A., Inc.,*
745 F. Supp. 982 (S.D.N.Y. 1990) ...........................................................................................11

*Soltex Polymer Corp. v. Fortex Indus., Inc.,*
590 F. Supp. 1453 (E.D.N.Y. 1984) .........................................................................................11

*Standard Commercial Tobacco Co. v. Mediterranean Shipping Co.,*
1995 WL 753901 (S.D.N.Y. Dec. 19, 1995) ..............................................................................6

*Travers Tool Co., Inc. v. Southern Overseas Express Line, Inc.,*
2000 WL 194781 (S.D.N.Y. Feb. 17, 2000) ..............................................................................6

*Tuke v. U.S.,*
76 F.3d 155 (7th Cir. 1996) ........................................................................................................7

**Federal Rules and Statutes**

18 U.S.C. § 2334(a) ...................................................................................................................11
Fed. R. Civ. P. 4(f).................................................................................................................4, 5
Fed. R. Civ. P. 4(m) ..................................................................................................................7

**State Law and Rules**

N.Y. C.P.L.R. § 302(a)(2) ..........................................................................................................9

Defendants Schreiber & Zindel Treuhand Anstalt, Frank Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr., (hereinafter collectively "S&Z Defendants" unless individually referenced) respectfully submit this reply memorandum in support of their motion to dismiss Plaintiffs' Third Amended Complaint in *Estate of O'Neill, et al. v. The Republic of Iraq, et al.*, Case No. 04 CV 1076 (RCC) (S.D.N.Y.) ("Republic of Iraq, TAC") and Plaintiffs' Second Amended Complaint in *Estate of O'Neill, et al. v. Al Baraka, et al.*, Case No. 04 CV 1923 (RCC) (S.D.N.Y.) ("Al Baraka, SAC") pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## I.
## INTRODUCTION

Plaintiffs' opposition memorandum offers no legal precedent or factual allegations to support their position that the S&Z Defendants' motion to dismiss for insufficiency of service of process and lack of personal jurisdiction should be denied.  First, in arguing that Plaintiffs' mail service on the S&Z Defendants was proper, Plaintiffs distort legal precedent directly addressing the issue and then offer an incorrect construction of Liechtenstein law without either submitting the opinion of a Liechtenstein law expert or adequately refuting the statement of Liechtenstein law made by the S&Z Defendants' expert. With respect to personal jurisdiction, Plaintiffs fail to support their conclusory and generalized allegations, not one of which provides an adequate basis for jurisdiction. Plaintiffs could not have issued a more inflammatory charge against the S&Z Defendants than that they "supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks that killed thousands of people and injured many thousands more." (Republic of Iraq, TAC ¶63; Al Baraka, SAC ¶53)  This statement on its own is insufficient to support jurisdiction.  Plaintiffs offer no facts, but only speculation, innuendo, and unsupported conclusions, despite the gravity of their charge.  Plaintiffs' allegations remain insufficient to establish personal jurisdiction or to allege theories of conspiracy or aiding and abetting for jurisdictional purposes.

The fact that Plaintiffs' decedent was a victim of the tragedy that took place at the World Trade Center is no substitute for compliance with the requirements of service of process or for adequately supporting any claim that the Court has jurisdiction over the S&Z Defendants. Because Plaintiffs did not comply with the rules relating to service and cannot establish a basis for jurisdiction, the action against these Defendants must be dismissed.

## II.
## ARGUMENT

### A.   Plaintiffs' Claims Must Be Dismissed for Insufficiency of Service of Process
#### 1.   Service by Registered Mail Is Prohibited By the Laws of Liechtenstein

While Plaintiffs' take issue with the argument made by the S&Z Defendants concerning their failure to properly serve the S&Z Defendants in Liechtenstein, Plaintiffs provide scant support for their argument. For example, they disagree with the evidence provided by the S&Z Defendants concerning the law governing service of foreign process on Liechtenstein citizens, yet they offer no independent evidence regarding Liechtenstein law. Instead, Plaintiffs merely state that the opinions of the S&Z Defendants' expert on Liechtenstein law, Guntram Wolf (an administrative law judge and attorney licensed to practice in Liechtenstein), either cannot be right or are immaterial. In addition, Plaintiffs do not agree with the on-point decision rendered in *Jung v. Neschis,* No. 01 Civ. 6993, 2003 WL 1807202 (S.D.N.Y. April 7, 2003), a case directly addressing whether service by international registered mail is prohibited under Liechtenstein law, but fail to cite any law that would lead this Court not to adopt the reasoning and conclusion of the *Jung* decision.

In the face of Mr. Wolf's uncontradicted testimony, Plaintiffs argue that service effectuated by letters rogatory enlisting the participation of the court in Liechtenstein is optional under Liechtenstein law and that service by registered mail sent from a Clerk of a United States District Court, though not specifically prescribed by Liechtenstein law, is itself not prohibited. (Pl. Mem. in Opp. at 7-8) Plaintiffs misinterpret the requirements of Liechtenstein law regarding domestic service of international court papers.

2

As discussed by Mr. Wolf in his original Declaration, filed with the memorandum in support of the Defendants' motion, and reiterated in his Reply Declaration (a copy of which is submitted herewith), service of foreign judicial documents <u>must</u> be effected by way of mutual legal assistance between the foreign and Liechtenstein courts. (Wolf Decl. ¶ 10; Wolf Reply Decl. 5) "Liechtenstein law requires that service of a summons and complaint in a lawsuit pending in a foreign country, including the United States, be made by . . . delivering letters rogatory to a Liechtenstein court, requesting that the Liechtenstein court take steps to accomplish service on the defendant." (Wolf Reply Decl.¶ 4) Not only is no other procedure provided for under Liechtenstein law as Plaintiffs acknowledge, but any method that does not seek the assistance of the Liechtenstein courts is not permitted by Sections 27 through 29 of the Liechtenstein Code of Jurisdiction and is therefore prohibited. (Wolf Reply Decl. ¶¶ 6-7)

Moreover, any method that avoids use of the Liechtenstein courts would not be "*ex officio.*" (Wolf Decl. ¶¶ 8, 13-14; Wolf Reply Decl. ¶ 5) The fact that Plaintiffs' summons and complaint were mailed by the Clerk of the Court for the Southern District of New York does not cure the deficiencies in Plaintiffs' service. "*Ex officio*" within the meaning of the provisions of the Liechtenstein Code of Jurisdiction refers to service performed by the Liechtenstein courts and not by foreign courts. (Wolf Decl. ¶ 14; Wolf Reply Decl. ¶ 5) Therefore service by registered mail from an American court or court officer is prohibited.

Indeed, the arguments raised by Plaintiffs in their opposition memorandum were considered and rejected by Judge Berman in *Jung*. 2003 WL 1807202 at 2-3. Nevertheless Plaintiffs attempt to discount *Jung*, arguing that the "District Court never made a finding that service pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii) is <u>prohibited</u> by the Courts or the laws of Liechtenstein." (Pl. Mem. in Opp. at 9) Plaintiffs misstate Judge Berman's findings. In *Jung* the Court expressly held that:

> Having the Clerk of the Court for the Southern District mail service to Defendants is not sufficient, i.e., it is, in these circumstances, "<u>prohibited by the laws</u>" of Liechtenstein and was, therefore, improper under Rule 4(f)(2)(C)(ii). In reaching this conclusion the Court relies, among other things, on the Wolf Declaration . . . .

3

2003 WL 1807202 at 3. (emphasis added)

The relevant inquiry under Fed. R. Civ. P. 4(f)(2)(C)(ii) is not, as Plaintiffs suggest, whether service is "explicitly forbidden," but rather if the form of service effected, <u>violates</u> the law of the country in which it is attempted. *See* Advisory Committee Notes to the 1993 Amendments to Rule 4 ("[s]ervice by methods that would violate foreign law is not generally authorized."); *Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F. Supp.2d 423, 430 (D. Del. 1999) ("subsection 4(f)(2)(c)(ii) limits the forms of service to those that do not <u>violate</u> the law of the country where service is attempted.").

Plaintiffs cite to *Resource Ventures, Inc.*, a decision holding that service of process by international courier was not a prohibited method of service in Indonesia, as somehow inconsistent with the decision rendered in *Jung*. The *Resource Ventures* opinion, however, was grounded on an Indonesian lawyer's affidavit which stated that process may be served by registered mail. *Resource Ventures, Inc.*, 42 F. Supp. 2d at 430. In light of this, the court found that service of process by registered mail was "not prohibited." *Id*. Here, Plaintiffs have proffered no such evidence. *But see Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, Case No. 03-8554, 2005 WL 1123755 at *3 (S.D.N.Y. May 11, 2005) (distinguishing *Resource Ventures, Inc.* and finding that service by international registered mail violated Indonesian law where Defendant proffered expert testimony that service by courier was prohibited because Indonesia required service by Indonesian court bailiff and where plaintiffs proffered no expert affidavit in opposition). Plaintiffs' other citations are equally inapplicable and contradict sound authority from this District Court.

Mr. Wolf's original Declaration and Reply Declaration state without any equivocation that service utilizing the mutual assistance of the Liechtenstein court, through the delivery of letters rogatory, is the exclusive method for service of process of foreign court papers in Liechtenstein. (Wolf Decl. ¶ 13; Wolf Reply Decl. ¶¶ 4, 6) He further states that any other method of serving foreign court papers is ineffective. (Wolf Reply Decl. ¶ 6) Because only one method of service is permitted under Liechtenstein

4

law, any other method would be "prohibited" under Rule 4(f)(2)(C).[1]  "If a summons "must" be delivered [in a specific manner], then alternative forms of service are indeed prohibited." *See Export-Import Bank*, 2005 WL 1123755 at *3.[2]

Plaintiffs were required to obtain letters rogatory addressed to the court in Liechtenstein, to have delivered such letters rogatory to the court in Liechtenstein, and to have had the Liechtenstein court serve the defendants with the judicial documents.[3]  As in *Jung*, because Plaintiffs' method of service is prohibited by Liechtenstein law, their claims must be dismissed under Rule 12(b)(5) for insufficiency of service of process.

### 2.     Plaintiffs' Request for Leave to Re-Serve Should Be Denied.

Plaintiffs request that the Court quash service and grant them leave to re-serve these Defendants as a way of remedying Plaintiffs' failure to serve process correctly.  Plaintiffs' request should be denied.  It is too late, and there is no good reason for any further extension.

In Case Management Order No. 2, the Court set October 15, 2004 as the deadline for service on foreign defendants.  On October 14, 2004, Plaintiffs requested a 120 day extension of time to effectuate service, which was granted by the Court.  (*See* Dkt. 671)  Despite this extension, Plaintiffs did not attempt to serve the S&Z Defendants during this extended period.  Having failed to meet this deadline, in a letter dated February 4, 2005 Plaintiffs again requested an additional 120 day extension of time to serve various

---

[1] Mr. Wolf prefers to use the term "not permitted" rather than "prohibited," because the latter term suggests criminal sanctions rather than having civil procedure consequences.  (Wolf Reply Decl. ¶ 6)

[2] It would be a strange result to find that a foreign sovereign adopted an exclusive method for service which does not permit alternative methods, but also find that these other methods are not "prohibited."  Not only would this infringe on the sovereign powers of another country, but it would presuppose that the foreign sovereign adopts its procedural rules having in mind all alternative means of service, including those available under Rule 4.

[3] Plaintiffs' suggestion that the Federal Rules provide flexibility when it comes to international service does not trump the fact that service cannot be obtained in a manner that is prohibited by the country in which service is attempted.  Similarly, the fact that these Defendants received the summons and complaints is irrelevant to the question of whether service was accomplished in accordance with Rule 4 and with Liechtenstein law.  Receipt does not excuse non-compliance

defendants, including the S&Z Defendants. While granting the application, the Court expressly stated in the endorsed letter that it was the "final 120 day extension to serve." (*See* Dkt. 671)

Now confronted with the realization that their sole attempt at serving the S&Z Defendants, in the two years that have elapsed since naming them as defendants, is likely defective, Plaintiffs seek additional time to re-serve, despite the Court's clear directive in the Court's February 4, 2005 Order that the last extension would be "final."

In support of their request for leave to re-serve, Plaintiffs note that the 120 day rule of Fed. R. Civ. P. 4(m) does not apply to service in foreign jurisdictions. Application of Rule 4(m) is irrelevant here. Plaintiffs conveniently ignore that they have not run afoul of Fed. R. Civ. P. 4(m), but instead have paid no heed to the Court's admonition that Plaintiffs were already given their final extension to effect service. The "mere fact that Congress exempted foreign service from the 120-day requirement, <u>does not give litigants an unlimited time in which to complete service</u>." *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 552 (S.D.N.Y. 1994). (emphasis added)

Courts apply a "flexible due diligence" standard in determining whether service in a foreign jurisdiction is timely and have excused delays in effecting service upon a showing by the serving party that there exists "good cause" for the failure. *Id*; *Standard Commercial Tobacco Co. v. Mediterranean Shipping Co.*, No. 94 CIV 7040, 1995 WL 753901, at *1 (S.D.N.Y. Dec. 19, 1995); *Travers Tool Co., Inc. v. Southern Overseas Express Line, Inc.*, Case No. 98-8464, 2000 WL 194781 at *1 (S.D.N.Y Feb. 17, 2000). However, Plaintiffs fail to explain how, given the numerous extensions granted by the Court and only one attempt at effecting service in the two years that have elapsed since naming the S&Z Defendants, their failure was reasonable. Where plaintiffs fail to demonstrate "good cause" for their failure to effect service, denial of a request for leave to re-serve is appropriate. *See In re Crysen/Montenay Energy Co.*, 166 B.R. at 552 (court appropriately found that the 14 months which transpired before plaintiff attempted to perfect service of process precluded a finding of diligence, particularly where Plaintiff had not demonstrated any "good cause," for the protracted delays); *Travers*

6

*Tool Co., Inc.*, 2000 WL 194781 at *1 (plaintiffs' failure to spell out their efforts to effect service means that there is no showing of due diligence).

The S&Z Defendants are not moving targets. Schreiber & Zindel Treuhand Anstalt is a well established business in the Principality of Liechtenstein, and Frank Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr., are businessmen who have for years conducted their affairs and resided in Liechtenstein. They are readily able to be located. They have not been in hiding. Plaintiffs just dropped the ball by failing to apprise themselves of the appropriate method of effecting service and undertaking it in a timely fashion. "While ignorance may be an explanation it is not an excuse." *Tuke v. U.S.*, 76 F.3d 155, 156 (7th Cir. 1996). Plaintiffs should not be afforded another opportunity to effect service, particularly in light of their lack of diligence, their failure to demonstrate good cause, and the entirely conclusory and baseless allegations of their Complaints.

**B.     Plaintiffs' Claims Must Be Dismissed for Lack of Personal Jurisdiction**

Plaintiffs appear to abandon any attempt to establish that the S&Z Defendants have any contacts with New York or the United States that could give rise to a finding of general personal jurisdiction. Instead, Plaintiffs premise their assertion of personal jurisdiction upon the most conclusory allegations of conspiracy, the pleading of federal claims allowing for nationwide service of process, and allegations that the S&Z Defendants "purposely directed" activities at the United States. What is more, Plaintiffs for whatever reason refuse to acknowledge this Court's earlier decision which instructs the parties on exactly what is required to be pled and shown for purposes of establishing personal jurisdiction in this action. They barely acknowledge the Court's earlier ruling, preferring to rely on other decisions to shore up their poor analysis and insufficient allegations.

As set forth in detail in the S&Z Defendants' initial memorandum, a review of Plaintiffs' actual allegations demonstrates that Plaintiffs have not even remotely approximated a prima facie case for jurisdiction. Moreover, instead of attempting to defend the sufficiency of their allegations, Plaintiffs' memorandum rest entirely on argumentative legal conclusions. Because Plaintiffs fail to make a prima

7

facie[4] showing that personal jurisdiction exists over the S&Z Defendants, their claims must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(2).

### 1. Plaintiffs Do Not Allege Facts Sufficient to Support a Finding of Personal Jurisdiction Under New York's Long-Arm Statute.

As this Court has made clear, "bland assertion[s] of conspiracy. . . [are] insufficient to establish jurisdiction for the purposes of section 302(a)(2)." *In re Terrorist Litigation*, 349 F.Supp.2d 765, 805 (S.D.N.Y. 2005) *quoting Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87*,* 93-94 (S.D.N.Y. 1975). In order to make a prima facie showing of conspiracy, Plaintiffs were required to "allege specific facts warranting the inference that the defendant was a member of the conspiracy . . . " *Id.* at 805. (emphasis added) Moreover, to warrant such an inference, Plaintiffs were required to show that '(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted "at the direction or under the control" or "at the request of or on behalf of" the out-of-state defendant.'" *Id*. at 806, quoting *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1268-69 (S.D.N.Y. 1991). Plaintiffs amended complaints fail to meet any of these requirements.

In their amended complaints Plaintiffs merely assert that the S&Z Defendants "conspired . . . to raise, launder, transfer, distribute, and hide funds for Bin Laden and Al Qaeda in order to support and finance their terrorist activities including, but not limited to, the September 11th attacks." (Republic of Iraq, TAC ¶38; Al Baraka, SAC ¶ 22)  Plaintiffs do not even attempt to defend the adequacy of their allegations, but instead adopt the arguments set forth in the Federal Plaintiffs' Opposition to the Motion to Dismiss filed by the National Commercial Bank.  This is insufficient to cure the deficiencies in Plaintiffs' factual allegations.

---

[4] Moreover, because Plaintiffs have completely failed to make out a prima facie case for personal jurisdiction, jurisdictional discovery is improper. *Madison Models, Inc. v. Casta*, Case No. 01-9323, 2003 WL 21978628, at *6 (S.D.N.Y. Aug. 20, 2003) (jurisdictional discovery is inappropriate where plaintiff has failed to allege facts from which a court could properly infer jurisdiction); *Daval Steel Products v. M.V. Juraj Dalmatinac*, 718 F.Supp. 159, 162 (S.D.N.Y.1989) (plaintiffs "must, at the least, allege facts that would support a colorable claim of jurisdiction.").

Plaintiffs have not alleged facts showing that the S&Z Defendants entered into an agreement with any in-state actor, that the terrorists who carried out the September 11th attacks acted for the benefit of the S&Z Defendants, or that the S&Z Defendants directed, controlled, or requested that Al Qaeda undertake its terrorist activities.  In sum, Plaintiff have offered no factual allegations connecting the S&Z Defendants to the September 11th attacks on the United States.

### 2. Defendants Are Not Subject to Specific Jurisdiction

A foreign defendant may be subject to specific personal jurisdiction only where "actions by the defendant *himself*" were "expressly aimed" at the United States by the Defendant.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-475 (1985) (emphasis in original),  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  It is not sufficient to allege, as Plaintiffs claim to have done, that defendants' actions would have foreseeable effects in the forum.  *Calder*. 465 U.S. at 789.  Rather, as this Court noted, "Plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims." *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 809.  Plaintiffs have not presented any facts from which this Court could infer the S&Z Defendants' "primary and personal involvement" in international terrorism and Al Qaeda.  Plaintiffs' conclusory allegations contained in its memorandum and not present in their complaint, that the S&Z defendants "knowingly provided funds to al Qaeda or otherwise assisted in their financial activities in furtherance of the conspiracy" is insufficient to meet the pleading standards set by this Court.  (Pl. Mem. in Opp. at 21)  Legal conclusions done up as factual allegations are not facts and cannot substitute for facts."  *In re Terrorist Litigation*, 349 F. Supp. 2d at 813.  *See also Burnett v. Al Baraka Invest. and Dev. Corp.*, 292 F.Supp.2d 9, 23 (D.D.C. 2003) (allegations that defendant funded charities with knowledge that the organizations funded terrorist groups fell short of adequately alleging conduct "purposely directed" at the United States).

### 3. Plaintiffs Cannot Establish Personal Jurisdiction Under the ATA

Plaintiffs also proceed under the misguided assumption that personal jurisdiction over the S&Z Defendants exists because they have asserted claims under the Anti-Terrorism Act ("ATA").  Plaintiffs' reasoning is flawed. While the ATA contains a nationwide service of process provision, such that proper

service will confer personal jurisdiction, the S&Z Defendants were never served in accordance with Section 2334(a) of the ATA. 18 U.S.C. § 2334(a). Section 2334(a) provides that "process in such a civil action may be served <u>in any district</u> where the defendant resides, is found, or has an agent." 18 U.S.C. 2334(a) (emphasis added). Though authorizing nationwide service of process, section 2334(a) does not, by its very language, authorize service in a foreign country. Moreover, section 2334(a) does not recognize service in a foreign country as a basis for establishing personal jurisdiction. The S&Z Defendants were not served in any judicial district of the United States as required. Instead, service was attempted in Liechtenstein. Even if these Defendants could have been subjected to jurisdiction by service in Liechtenstein, for the reasons set forth in the S&Z Defendants' initial and reply memoranda, Plaintiffs' service of process was insufficient.

Moreover, plaintiffs who wish to establish personal jurisdiction under the ATA's national service of process provision must demonstrate that the defendant has sufficient minimum contacts to satisfy a traditional due process analysis. *In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d at 806 *citing Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 95 (D.R.I. 2001); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 179 (D.D.C. 2004). As set forth in their initial memorandum, the S&Z Defendants do not have the requisite minimum contacts with the United States sufficient to justify personal jurisdiction. Indeed Plaintiffs concede the S&Z Defendants lack contacts with both New York and the United States as a whole.[5]

---

[5] Citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), *Hanson v. Denckla*, 357 U.S. 235 (1958) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 475 (1985), Plaintiffs go to great lengths to argue that the S&Z Defendants "purposely directed" their activities at the forum and as such they have sufficient "minimum contacts" to justify jurisdiction. (Pl. Mem. in Opp. at 17-18) Plaintiffs then inconsistently argue that no minimum contacts exist and that the Court need not concern itself with issues of due process. (*Id.* at 23) Plaintiffs cannot have it both ways. In support of their arguments Plaintiffs attach to their memorandum and cite to *Baker v. Libya et al.*, Case No. 03-749 (D.D.C. June 30, 2005). However, in *Baker* Plaintiffs pursued their claims under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, et seq., which allows for personal jurisdiction so long as the court possesses subject matter jurisdiction and proper service of process is effectuated. *See Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548, n. 11 (D.C. Cir. 1987). Here Plaintiffs federal claims contain no such provision. Indeed in *Biton*, the court declined to exercise jurisdiction over the individual foreign defendants precisely because "the record reveal[ed], [that] these defendants have no personal connection with the United States." 310 F. Supp. 2d at 177-178.

### 4. Plaintiffs Cannot Establish Personal Jurisdiction Under RICO

Plaintiffs also argue that the RICO statute confers jurisdiction over the S&Z Defendants because RICO authorizes nationwide service of process.[6]  However, "[d]espite the broad scope of service permissible under § 1965(d), it has been construed not to provide for international service." *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279, 1285 (S.D.N.Y. 1989); *Gap, Inc. v. Stone Int'l Trading, Inc.*, Case No. 93 Civ. 0638, 1994 WL 670020, at *6 (S.D.N.Y. Nov. 30, 1994) ("While section 1965(d) has been construed to authorize nationwide service of process, it has been judicially established that it does not provide for international service.") (quoting *Shaw v. Rolex Watch U.S.A., Inc.*, 745 F.Supp. 982, 987 (S.D.N.Y.1990)); *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F.Supp. 1453, 1460 (E.D.N.Y.1984) ("Although RICO authorizes nationwide service of process, ... it does not, by its very language, authorize service in a foreign country").

"Because effective service is a prerequisite to the exercise of personal jurisdiction, a foreign party against whom a RICO claim is asserted must be served with process in this country." *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 601 (S.D.N.Y. 1998); *see also Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 564 (S.D.N.Y.1985).  Plaintiffs have not served the

---

[6] Plaintiffs also argue that because their RICO allegations arise from money laundering, personal jurisdiction over the S&Z Defendants is appropriate under section 1956 (b)(2) of the RICO statute.  Section 1956 (b)(2) provides that "district courts shall have jurisdiction over any foreign person, including any financial institution . . ., if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and . . . (C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States."  Plaintiffs' do not satisfy the requirements of the provision.  First, Plaintiffs failed to effect service under the Federal Rules or pursuant to Liechtenstein law.  Second, Plaintiffs for the first time raise in their opposition the false allegation that Schreiber & Zindel Treuhand Anstalt maintains a bank account with "Chase Manhattan Bank, a U.S. based financial institution."  That statement is wrong.  Furthermore, since Plaintiffs failed to raise that allegation in their amended complaints or in the RICO statements, it should not be considered now.  *See In re Terrorist Litigation*, 349 F.Supp.2d at 818 *citing Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (it is impermissible to amend a complaint through an opposition).

S&Z Defendants in the United States and accordingly cannot exercise personal jurisdiction over them under RICO.[7]

## III.

## CONCLUSION

For the foregoing reasons and as set forth in Defendants' memoranda in support of their motion to dismiss Plaintiffs' Amended Complaints, Defendants Schreiber & Zindel Treuhand Anstalt, Frank O. Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr. respectfully request that this Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Dated: September 6, 2005.

Respectfully Submitted,

SCHIFF HARDIN LLP

By: /s/ Ayad Paul Jacob
Donald A. Klein (DK7821)
623 Fifth Avenue
New York, NY 10022
(212) 753-5000

John N. Scholnick (JS7654)
Ayad P. Jacob (AJ6888)
6600 Sears Tower
Chicago, IL 50505
(312) 258-5500

Attorneys for Defendants
*Schreiber & Zindel Treuhand Anstalt, Frank O. Zindel, Engelbert Schreiber, Sr., and Engelbert Schreiber, Jr.*

---

[7] Even the minority of decisions that have allowed the exercise of personal jurisdiction over foreign defendants in a RICO action, where the defendant is served outside the United States, require that the exercise of personal jurisdiction satisfy federal due process requirements. *See Madanes v. Madanes*, 981 F.Supp. 241, 260-61 (S.D.N.Y.1997); *Biofeedtrac, Inc. v. Kolinor Optical Enters., & Consultants, S.R.L.*, 817 F.Supp. 326, 332 (E.D.N.Y.1993). Plaintiffs cannot establish the requisite minimum contacts necessary to satisfy due process concerns, and indeed have conceded that the necessary minimum contacts with the United States does not exist.