**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:                           Cantor Fitzgerald & Co., et al. v. Akida
                                                    Bank Private Ltd., et al. (04 CV 7065)

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**</u>
<u>**DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.**</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *DMI Administrative Services S.A.*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. .......................................... 1

ARGUMENT ................................................................................................................. 3

I     THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A. ............. 3

     A.     Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute. .......................... 5

          1.     Plaintiffs Aver No Facts Showing That DMI S.A. Has Had Continuous And Systematic Contacts With New York To Support General Jurisdiction. ....................................................... 5

          2.     Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting Provide No Basis For Specific Personal Jurisdiction Over DMI S.A. ..................................................... 5

     B.     DMI S.A. Lacks The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction. ........................... 7

          1.     Plaintiffs Fail To Aver Sufficient Continuous And Systematic Contacts With The United States To Support General Jurisdiction Over DMI S.A. ...................................................... 7

          2.     This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States. ................................................................. 8

II     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ........... 10

     A.     Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries. ............... 13

     B.     Plaintiffs Have Failed To Plead Facts Sufficient To  State Any Of Their Causes of Action Against DMI S.A. .......................................... 15

          1.     Trespass (Count 1). ........................................................... 15

          2.     Anti-Terrorism Act (Count 2). ......................................... 16

          3.     RICO – Against Banking and Financial Defendants (Count 3) ...................... 18

          4.     Aiding and Abetting a Violation of International Law (Count 9) ...................... 19

          5.     Conspiracy and Aiding and Abetting (Counts 10 & 11). ..................... 21

6.      Punitive Damages (Count 12)..........................................................................24

7.      Contribution and Indemnity (Count 13)...........................................................24

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE........................25

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
   1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992) .................................................................21

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
   792 F.2d 330 (3d Cir. 1986) ............................................................................................15

Acito v. Imcera Grp., Inc.,
   47 F.3d 47 (2d Cir. 1995) ................................................................................................25

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
   885 F. Supp. 434 (E.D.N.Y. 1995) ..................................................................................15

Alexander & Alexander of New York, Inc. v. Fritzen,
   68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986) .................................................................22

Alexander v. Sandoval,
   537 U.S. 275 (2001) .........................................................................................................19

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
   228 F.3d 429 (3d Cir. 2000) ............................................................................................21

In re Am. Express Co. S'holder Litig.,
   39 F.3d 395 (2d Cir. 1994) ..............................................................................................14

American Fuel Corp. v. Utah Energy Dev. Co.,
   122 F.3d 130 (2d Cir. 1997) ..............................................................................................1

Appalachian Enterprises, Inc. v. ePayment Solutions Ltd.,
   2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) .....................................................................1

Argentine Republic v. Amerada Hess Shipping Corp.,
   488 U.S. 428 (1989) .........................................................................................................20

Asahi Metal Indus. Co. v. Superior Ct., Solano Cty.,
   480 U.S. 102 (1987) ...........................................................................................................4

Atuahene v. City of Hartford.,
   10 Fed. Appx. 33, 34 (2d Cir. 2001) ...............................................................................12

Barr v. Abrams,
   810 F.2d 358 (2d Cir. 1987) ............................................................................................11

Bellepointe v. Kohl's Dep't Stores, Inc.,
   975 F. Supp. 562 (S.D.N.Y. 1997) ....................................................................................9

Bernstein v. Misk,
   948 F. Supp. 228 (E.D.N.Y. 1997) ..................................................................................13

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) ..............................................................................11, 13, 16

Boim v. Quranic Literacy Inst. & Holy Land Found.,
    127 F. Supp. 2d 1002 (N.D. Ill. 2001)...................................................................13

Boyanowski v. Capital Area Intermediate Unit,
    215 F.3d 396 (3d Cir. 2000)...................................................................................21

Burnett v. Al Baraka Inv. and Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003)..........................................................................16

Calder v. Jones,
    465 U.S. 783 (1984).................................................................................................8

Cantor Fitzgerald, Inc. v. Lutnick,
    313 F.3d 704 (2d Cir. 2002)...............................................................................1, 10

Casio Computer Co. v. Sayo,
    2000 WL. 1877516 (S.D.N.Y. Oct. 13, 2000) ......................................................13

Coleman v. Reno,
    91 F. Supp. 2d 130 (D.D.C. 2000).........................................................................19

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ....................................................................................15

Cornell v. Assicurazioni Generali S.p.A., Consol.,
    2000 WL. 284222 (S.D.N.Y. Mar. 16, 2000) .........................................................5

DeJesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ...............................................................1, 10, 15, 18

Dreyfus v. von Finck,
    534 F.2d 24 (2d Cir. 1976) ...................................................................................20

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................................................18

Electronic Commc'ns Corp. v. Toshiba Am.,
    129 F.3d 240 (2d Cir. 1997) ..................................................................................25

Flanagan v. Shively,
    783 F. Supp. 922 (M.D. Penn. 1992)......................................................................22

Flores v. S. Peru Copper Corp.,
    343 F.3d 140 (2d Cir. 2003) ..................................................................................20

Friedman v. Bayer Corp.,
    1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999)......................................................19

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .......................................................10

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ....................................................... 10, 11

Gmurzynska v. Hutton,
    2003 WL 1193727 (S.D.N.Y. Mar. 14, 2003)..............................................................22

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ......................................................................................21

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ..................................................................................21

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003)............................................................22

Hayden v. Pataki,
    2004 WL. 1335921 (S.D.N.Y. June, 14, 2004) .........................................................19

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ........................................................................................21

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 413 (1984)....................................................................................................7

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) .............................................................18

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) .............................................................................. 4, 8, 9

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ............................................................23

Jordan v. Madison Leasing Co.,
    596 F. Supp. 707 (S.D.N.Y. 1984) ...........................................................................24

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) .......................................................................................19

Khalid v. Bush,
    355 F. Supp. 2d 311 (D.D.C. 2005) .................................................................... 19, 20

Kieft v. Becker,
    58 Va. Cir. 171, 2002 WL. 481249 (Va. Cir. Ct. Jan. 31, 2002) ...............................21

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) .........................................................................11, 13, 14

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ........................................................................23

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) .....................................................................................11

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
   26 F. Supp. 2d 593 (S.D.N.Y. 1998)................................................................6

Leasco Data Processing Equip. Corp. v. Maxwell,
   468 F.2d 1326 (2d Cir. 1972)..........................................................................9

Lehigh Valley Indus., Inc. v. Birenbaum,
   527 F.2d 87 (2d Cir. 1975) ..................................................................... 4, 5, 9

Lesavoy v. Lane,
   304 F. Supp. 2d 520 (S.D.N.Y. 2004)............................................................18

Liberman v. Worden,
   701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dept. 2000) ...................................23

MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC,
   268 F.3d 58 (2d Cir. 2001) ..............................................................................1

Madison Models, Inc. v. Casta,
   2003 WL. 21978628 (S.D.N.Y. Aug. 20, 2003).............................................9

Mason v. Am. Tobacco Co.,
   346 F.3d 36 (2d Cir. 2003) ...................................................................... 10, 14

Medina v. Bauer,
   2004 WL. 136636 (S.D.N.Y. Jan. 27, 2004) .................................................11

Mende v. Milestone Tech. Inc.,
   269 F. Supp. 2d 246 (S.D.N.Y. 2003).............................................................4

Moss v. Morgan Stanley Inc.,
   719 F.2d 5 (2d Cir. 1983) ..............................................................................18

Paul v. Howard Univ.,
   754 A.2d 297 (D.C. Ct. App. 2000) ..............................................................22

Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,
   782 F.2d 346 (2d Cir. 1986) ..........................................................................24

Pittman v. Grayson,
   149 F.3d 111 (2d Cir. 1998) .......................................................................6, 12

Powell v. Jarvis,
   460 F.2d 551 (2d Cir. 1972) ..........................................................................10

Reers v. Deutsche Bahn AG,
   320 F. Supp. 2d 140 (S.D.N.Y. 2004).............................................................5

Rose v. Goldman, Sachs & Co.,
   163 F. Supp. 2d 238 (S.D.N.Y. 2001)...........................................................11

In re S. African Apartheid Litig.,
   346 F. Supp. 2d 538 (S.D.N.Y. 2004)...........................................................20

S.E.C. v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990) ................................................................................9

Seguros Comercial Am., Seguros Inbursa, S.A. v. Grupo Nocional Provincial, S.A.,
    115 F. Supp. 2d 1371 (M.D. Fla. 2000) ...............................................................20

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
    2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ................................................21

Skipworth v. Lead Indus. Ass'n,
    690 A.2d 169 (Pa. 1997) .....................................................................................21

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) .........................................................21

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) .................................23

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ...............................................................................15

Sonds  v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001).................................................................14

Sosa v. Alvarez-Machain,
    124 S. Ct. 2739 (2004) ................................................................................ 19, 20

St. Pierre v. Dyer,
    208 F.3d 394 (2d Cir. 2000) ...............................................................................24

Stewart v. Crosswalks Television Network,
    2002 WL. 265162 (S.D.N.Y. Feb. 25, 2002) ........................................................22

Suarez v. Underwood,
    103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ....................21

In re Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................3, 4, 5, 6, 7,
                                                                        8, 9, 10, 11, 12,
                                                                        13, 14, 15, 16, 17,
                                                                        18, 24, 25

Tornheim v. Fed. Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ......................................................................15

Travelers Indem. Co. v. AMR Servs. Corp.,
    921 F. Supp. 176 (S.D.N.Y. 1996) ......................................................................24

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) .................................................................................4

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) .................................................................................16

Wantanabe Realty Corp. v. City of New York,
   2003 WL. 22862646 (S.D.N.Y. Dec. 3, 2003)......................................................................16

York v. Bar of New York,
   286 F.3d 122 (2d Cir. 2002) .................................................................................................14

**Statutes and Other Authority**

18 U.S.C. § 32 (1996).................................................................................................................19

18 U.S.C. § 1092 (1988).............................................................................................................20

18 U.S.C. § 1962 (1988).............................................................................................................18

18 U.S.C. §§ 2331-2333 (2000)................................................................................................16

49 U.S.C. § 46502 (1996) ..........................................................................................................19

Fed. R. Civ. P. 4(k).................................................................................................................4, 7

Fed. R. Civ. P. 8(a) ........................................................................................................11, 13, 15

Fed. R. Civ. P. 12(b)(2).............................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 3, 10, 14

N.Y. C.P.L.R. § 301 (McKinney 2001) ......................................................................................5

N.Y. C.P.L.R. § 302(a)(2) (McKinney 2001) .............................................................................5

ALAN WRIGHT & ARTHUR R. MILLER,
   FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004) ..........................................1, 3

8 N.Y. Jur., Conspiracy, § 19 (1982) ...................................................................................21, 22

The Charter of the International Military Tribunal,
   Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279.....................................................................20

Hague Convention for the Suppression of Violence against Aircraft;
   Montreal Convention on Offenses and Certain Other Acts Committed
   on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177 ................................19

The International Convention for the Suppression of Terrorist Bombings,
   Jan. 12, 1998, art. 2, S. Treat Doc. No. 106-6, at 4, 37 I.L.M. 249 ....................................20

## INTRODUCTION

The Complaint by the *Cantor Fitzgerald* plaintiffs makes sweeping allegations of grave wrongdoing by the named defendants, including movant DMI Administrative Services S.A. ("DMI S.A."). Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection between DMI S.A. and al Qaeda or, for that matter, any contact between DMI S.A. and the United States. In lieu of factual allegations, plaintiffs offer conclusory and boilerplate assertions that -- as the Court's Order of January 18, 2005 establishes -- are insufficient to withstand a motion to dismiss pursuant to either Rule 12(b)(2) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in the absence of any allegations connecting DMI S.A. to the attacks of September 11, 2001, or the United States, plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

Plaintiffs' First Amended Complaint and RICO Statement contain only sparse and conclusory allegations regarding DMI S.A., which are restated below in their entirety:

- "DMI Administrative Services S.A. [] provides service and support to defendant DMI Trust (collectively 'DMI')." First Amended Complaint ("FAC") ¶ 123.[1]

- DMI S.A. "conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda . . . through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda's purposes through DMI [S.A.]'s banking and financial operations." RICO Statement

---

[1] No such amalgam entity "DMI" exists. Plaintiffs define the term "DMI" to refer to both DMI S.A. *and* "Dar Al-Maal Al-Islami Trust ('DMI Trust')," see FAC ¶ 123, and proceed to state allegations against "DMI," without indicating which allegations are meant to apply to which entity. However, DMI S.A. and DMI Trust are separate companies -- and separate defendants -- operating in different countries. Plaintiffs' allegations regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone. See 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004) ("a district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); Appalachian Enterprises, Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."). Moreover, plaintiffs have not made any allegations that could support an argument that the corporate veil between DMI S.A. and DMI Trust (or any other putatively related entity) should be pierced. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit the wrong complained of); MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil). Nevertheless, in an abundance of caution, DMI S.A. will proceed as if the allegations mentioning "DMI" denote "DMI S.A."

("RICO Stmt.") ¶ 2; see also id. ¶¶ 5, 6, 8.  DMI S.A. "lent repeated material support to Al Qaeda and [Osama bin Laden], aided and abetted others who lent material support to Al Qaeda and [Osama bin Laden] and otherwise engaged in racketeering activity in violation of the law."  First Amended Complaint "FAC" ¶ 135; see also id. ¶ 153.

- DMI S.A.'s "misconduct includes laundering money for Al Qaeda, knowingly and intentionally providing financial services to Al Qaeda (including maintaining and servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda), and/or facilitating weapons and military equipment purchases and money transfers for Al Qaeda."  RICO Stmt. ¶ 2; see also id. ¶¶ 5, 8.  "Also, DMI [S.A.]'s [z]akat accounts have been used to support Al Qaeda."  Id. ¶ 2; see also FAC ¶ 134.

- DMI S.A. "has transferred money for Al Haramain, a purported charitable and relief organization.  Both the United States and the Kingdom of Saudi Arabia have designated branches of Al Haramain for the financial, material and logistical support they provide to Al Qaeda."  RICO Stmt. ¶ 2.

- DMI S.A. and its subsidiaries have "knowingly and intentionally lent repeated material support to Al Qaeda" through interstate and international channels.  FAC ¶ 127; see also RICO Stmt. ¶ 5.

- Al Shamal's major shareholders include: DMI S.A.'s putative predecessor-in-interest, see FAC ¶ 123; Faisal Islamic Bank (Sudan) ("FIBS"), which is a subsidiary of an entity "which in turn is a wholly-owned subsidiary of defendant DMI [S.A.]," see id. ¶ 125 and RICO Stmt. ¶ 2; and Tadamon Islamic Bank ("TIB"), which "is an indirect subsidiary of DMI [S.A.]" through FIBS, see FAC ¶ 125 and RICO Stmt. ¶ 2.  Al Shamal, FIBS and TIB provided financial and account services to either Osama bin Laden or Al Qaeda operatives.  See FAC ¶ 128-29, 132-33; RICO Stmt. ¶ 2.

- DMI S.A.'s "knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs."  RICO Stmt. ¶ 2.

As the above recitation makes clear, plaintiffs do not allege *any* facts showing that DMI S.A. ever entered into any particular transaction with anyone at all, much less any facts showing that DMI S.A. ever "facilitated, materially supported and substantially assisted Al Qaeda[]" or any other terrorist organization.  Cf. RICO Stmt. ¶ 2.  Plaintiffs do not allege any facts showing that DMI S.A. ever entered into any agreement with any person, nor do they allege any facts showing that DMI S.A. "conducted" any activities that allegedly "proximately resulted in the September 11th attack."  Cf. id. ¶ 16.  Indeed, in both the FAC and the RICO Statement, plaintiffs fail to allege any communication by DMI S.A. with anyone associated with al Qaeda; any transfer of money to or from DMI S.A., by or to anyone associated with al Qaeda; any facts that would show

that DMI S.A. aided al Qaeda or abetted any of al Qaeda's activities; any facts that could be read to

imply DMI S.A.'s supposed intent to cause an attack on the United States; or any facts connecting

DMI S.A. *in any way* with the events of September 11.

The only specific nexus between DMI S.A. and terrorism alleged by the plaintiffs is

that members of al Qaeda maintained and used bank accounts at FIBS, al Shamal, and TIB, in the

Sudan in the mid-1990s, and that DMI S.A. "transferred money for" an unspecified branch of Al

Haramain -- to unnamed persons, at an unspecified time, and by unspecified means.  Yet, even if any

of these Sudanese entities were a subsidiary of DMI S.A. (which DMI S.A. denies), and even if DMI

S.A. had "transferred money for" al Haramain (which, as plaintiffs themselves allege, see FAC ¶ 123,

it could not do),[2] this Court has already found that allegations of routine banking services are

insufficient to establish personal jurisdiction or to state a claim.  See In re Terrorist Attacks on Sept.

11, 2001, 349 F. Supp. 2d 765, 813-14, 830, 832-36 (S.D.N.Y. 2005).

## ARGUMENT

All claims against DMI S.A. should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2),

because the Court lacks personal jurisdiction over DMI S.A., and pursuant to Fed. R. Civ. P.

12(b)(6), because plaintiffs fail to allege any connection whatsoever between DMI S.A. and the

events of September 11, and hence fail to state their claims against DMI S.A.

## I
## THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, a *société anonyme* organized under the laws of

Switzerland.  The Complaint and RICO Statement fail to allege any facts that could be read to show

that DMI S.A. has had any systematic contacts with the United States or any role in the terrorist

attacks of September 11, 2001.  Thus, plaintiffs have not made the *prima facie* showing of minimum

contacts necessary, for due process purposes, to invoke personal jurisdiction over DMI S.A.

Requiring DMI S.A. to respond and defend itself in this Court in these circumstances would be

---

[2] As plaintiffs themselves allege, see FAC ¶ 123, DMI S.A. is not a financial institution and does not provide financial services; it is an administrative services company, and enters into no financial transactions other than those incidental to its own operations.  When deciding a Rule 12 motion a "district court will not accept as true pleading allegations that are contradicted by . . . other allegations."  WRIGHT & MILLER, supra n.1.

wholly inconsistent with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Ct., Solano Cty., 480 U.S. 102, 113 (1987).  Thus, the claims against DMI S.A. should be dismissed in their entirety.

Plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.  To survive a motion to dismiss, plaintiffs must make a prima facie showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809. "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.

In a federal question case involving a foreign defendant, the District Court applies the personal jurisdiction rules of the state in which it sits, unless the federal statute explicitly provides for nationwide service of process.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 804. Similarly, a federal court sitting in diversity exercises personal jurisdiction over a foreign defendant to the same extent as courts of general jurisdiction of the state in which it sits pursuant to Fed. R. Civ. P. 4(k)(1)(A).  See id.  In either case, plaintiffs must allege facts sufficient to establish (i) personal jurisdiction under New York's long-arm statute and (ii) that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (internal quotation marks omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 804-11.

### A.     Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute.

#### 1.     Plaintiffs Aver No Facts Showing That DMI S.A. Has Had Continuous And Systematic Contacts With New York To Support General Jurisdiction.

General jurisdiction under C.P.L.R. § 301 requires allegations that a defendant is "engaged in [ ] a continuous and systematic course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction." See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  In assessing general jurisdiction, New York courts consider the following indicia of jurisdiction: "1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York."  Cornell v. Assicurazioni Generali S.p.A., Consol., 2000 WL 284222, at *2 (S.D.N.Y. Mar. 16, 2000).

Plaintiffs here have not alleged facts showing *any* of these indicia as to DMI S.A., or otherwise showing that DMI S.A. is continuously and systematically doing business in New York.  Accordingly, plaintiffs have not alleged that DMI S.A. is 'present' in New York, and personal jurisdiction may not be had under C.P.L.R. § 301.

#### 2.     Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting Provide No Basis For Specific Personal Jurisdiction Over DMI S.A.

Under § 302(a)(2) of the C.P.L.R., "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction . . . ."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  Here, plaintiffs sweepingly assert that DMI S.A., among hundreds of others, "aided and abetted others who lent material support to Al Qaeda."  See FAC ¶ 135.  Such a boilerplate, conclusory allegation cannot salvage plaintiffs' assertion of personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction on a New York long-arm conspiracy theory); see also Lehigh Valley, 527 F.2d at 93-94 ("the bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction").  "Before jurisdiction based on a conspiracy can be

upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States." Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added).  Moreover, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." Id. at 602.

　　　　Plaintiffs flatly assert that the "Al Qaeda Defendants" -- *not* DMI S.A. --  were co-conspirators, see FAC ¶ 232, obviously without supporting factual allegations as to DMI S.A. Throughout the Complaint and RICO Statement, plaintiffs fail to allege facts showing that DMI S.A. engaged in any such conspiracy: neither the plaintiffs' Complaint nor their RICO Statement alleges facts sufficient to show that DMI S.A. entered into any agreement with any New York actor; that any such New York actor acted for the benefit of DMI S.A.; that DMI S.A. exercised control over any such New York actor; or that DMI S.A. had knowledge of or consented to any activity whatsoever.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiffs "do not allege any specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities.").

　　　　As with their allegations regarding conspiracy, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A.  See FAC ¶ 135 (DMI S.A. has "aided and abetted others who lent material support to Al Qaeda").  A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal

citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  In short, the alleged aider and

abettor must have been aware of the wrongdoing and have provided substantial assistance in its

commission.  Here, plaintiffs have proffered no facts sufficient to support any such finding as to

DMI S.A.  See infra Part II.B.5.  Accordingly, plaintiffs cannot invoke specific jurisdiction over DMI

S.A. on a concerted action theory, and to the extent that plaintiffs rely upon such a theory of

jurisdiction, their claims must be dismissed.

> **B.**  **DMI S.A. Lacks The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction.**

Fed. R. Civ. P. 4(k)(2) provides long-arm jurisdiction over defendants, based upon

contacts with the nation as a whole, when a federal claim is made against a foreign defendant not

subject to jurisdiction in any state.  However, "[p]ersonal jurisdiction based on Rule 4(k) requires

minimum contacts with the United States to satisfy Fifth Amendment due process requirements."

In re Sept. 11 Attacks, 349 F. Supp. 2d at 807.

> **1.**  **Plaintiffs Fail To Aver Sufficient Continuous And Systematic Contacts With The United States To Support General Jurisdiction Over DMI S.A.**

A finding of general jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) requires

"continuous and systematic general business contacts" by DMI S.A. with the United States.  See

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984); In re Sept. 11

Attacks, 349 F. Supp. 2d at 811 ("a considerably higher level of contacts is generally required" to

plead general jurisdiction).  Plaintiffs here have not alleged facts sufficient to establish general

personal jurisdiction over DMI S.A.  The only allegation that could possibly be read to allege a

supposed contact with the United States is that DMI S.A. and its subsidiaries have "knowingly and

intentionally lent repeated material support to Al Qaeda" through interstate and international

channels.  See FAC ¶ 127; see also RICO Stmt. ¶ 5.  However, this conclusory allegation, concerning

unspecified acts at unknown times in unstated channels of commerce, clearly does not establish the

"systematic and continuous" business contacts with the United States required to invoke general

jurisdiction over DMI S.A.  See Helicopteros, 466 U.S. at 416.  In short, plaintiffs tender nothing

that could conceivably be read to assert that DMI S.A. has had the purposeful, systematic contacts with the United States necessary to establish general personal jurisdiction.

### 2. This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States.

In the absence of allegations supporting general jurisdiction over DMI S.A., plaintiffs apparently rely on a theory of specific jurisdiction, *i.e.*, that personal jurisdiction over DMI S.A. may be exercised because DMI S.A.'s tortious actions (whatever those unalleged actions might have been) were expressly aimed at the United States.  In order to invoke specific personal jurisdiction and satisfy due process, plaintiffs must properly allege some tortious act by the defendant, and allege facts showing that the defendant "expressly aimed" such a tortious act at the forum.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims."); Calder v. Jones, 465 U.S. 783, 789 (1984).  Here, plaintiffs do not allege any particular wrongful acts by DMI S.A. at all.  Nor do they assert any facts indicating that DMI S.A. was aware that any of its actions would affect the United States in any way, let alone that DMI S.A. *directed* any wrongful actions toward the United States.

Plaintiffs tender nothing in support of their claim that DMI S.A. provided financial services to suspect persons, much less that DMI S.A. provided anything other than routine banking services to anyone.[3]  Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by any specific allegations of fact.  As this Court has previously said, however:

> The law does not permit Plaintiffs 'to circumvent the jurisdictional hurdle . . . by inserting vague and conclusory allegations of tortious conduct in their complaints -- and then  . . . rely on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations under the applicable substantive law.'

In re Sept. 11 Attacks, 349 F. Supp. 2d at 801; see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation are insufficient to establish personal jurisdiction;

---

[3]  It is unsurprising that plaintiffs have been unable to cite even one specific instance in which DMI S.A. provided financial services to anyone -- much less to any suspected terrorist -- given that plaintiffs themselves acknowledge that DMI S.A. is an administrative service provider, see FAC ¶ 123, and not a bank.

plaintiff must allege supporting facts); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction").

As the Second Circuit has made clear, the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New York "must be applied with caution, particularly in an international context." Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 811. Accordingly, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum. See Leasco, 468 F.2d at 1341; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990). Plaintiffs' conclusory allegations do not suffice to establish even that any conduct by DMI S.A. -- whatever that unalleged conduct might have been -- had a direct effect in the forum, much less that DMI S.A. had good reason to expect such an effect. Plaintiffs allege no facts showing that accounts putatively held by al Qaeda members in the Sudan in the mid-1990s, or DMI S.A.'s alleged "transfer[ of] money for" al Haramain, had anything at all to do with the September 11 attacks, or could ever have been expected to result in the attacks. Therefore, to the extent that plaintiffs rely upon a theory of specific personal jurisdiction, that reliance is misplaced, and plaintiffs' claims must be dismissed. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because plaintiffs failed to "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States").

For all the foregoing reasons, plaintiffs have thoroughly failed to state a *prima facie* case for personal jurisdiction over DMI S.A.[4] Plaintiffs' claims therefore must be dismissed in their entirety.

---

[4] Moreover, plaintiffs have alleged no facts indicating that this complete failure could be remedied by limited jurisdictional discovery. "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 813-14; see also Jazini, 148 F.3d at 185-86; Lehigh Valley, 527 F.2d at 93-94; Madison Models, Inc. v. Casta, 2003 WL 21978628, at *6 (S.D.N.Y. Aug. 20, 2003) ("Jurisdictional discovery is inappropriate where, as in the instant case, a plaintiff has failed entirely even to allege facts from which a court properly could infer the existence of jurisdiction.").

**II**

**THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.**

Plaintiffs also have entirely failed to allege facts sufficient to state any of the causes of action lodged against DMI S.A.  Indeed, as demonstrated above, plaintiffs have not alleged any particular wrongful conduct by DMI S.A. at all.  Furthermore, plaintiffs have alleged no facts showing that any actions by DMI S.A. -- if any actions were in fact alleged -- proximately caused their injuries, and have failed to allege facts sufficient to make out the specific elements of their claims.

In the face of conclusory allegations of endless scope, and in the absence of any specific allegations of fact showing any connection whatsoever to the September 11 attack, DMI S.A. is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. Plaintiffs therefore have not satisfied even the lenient notice pleading standard of Rules 8(a) and 12(b)(6), and the Complaint against DMI S.A. must be dismissed in its entirety.  "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)); see also Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) ("'legal conclusions, deductions or opinions couched as factual allegations" do not suffice to prevent dismissal); Cantor Fitzgerald, Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) (court should give "no credence" to conclusory allegations); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants;" such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").  Such allegations thus cannot suffice to state plaintiffs' inflammatory claims against DMI S.A.  See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a
> model of clarity or exhaustively present the facts alleged, it requires,
> at a minimum, that a complaint give *each defendant* 'fair notice of what
> the plaintiff's claim is and the ground on which it rests.' *By lumping the
> defendants together in each claim and providing no factual basis to distinguish
> their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong"); Glasheen, 1999 WL 1249409 at *1 (conclusory, generalized allegations "render[ ] it virtually impossible for each [d]efendant to respond to the allegations").

Although plaintiffs conclusorily allege that DMI S.A. "lent repeated material support to Al Qaeda . . . , aided and abetted others who lent material support to Al Qaeda . . . , and otherwise engaged in racketeering activity in violation of the law," see FAC ¶ 135, plaintiffs have not alleged when, where, how or to whom DMI S.A. supposedly provided such material support; any facts showing that DMI S.A. provided such support knowingly; or any "facts to support an inference that [DMI S.A. was] sufficiently close to the terrorists' illegal activities" to infer such knowledge. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 800. Likewise, while plaintiffs aver that the Sudanese entities FIBS, TIB and al Shamal have provided banking services to persons associated with Al Qaeda, see FAC ¶¶ 123-25 and RICO Stmt. ¶¶ 2, 5, and that DMI S.A. "has transferred money for Al Haramain," see RICO Stmt. ¶ 2, plaintiffs have pleaded no specific facts showing that DMI S.A. itself has ever provided banking services to anyone at all, much less to anyone having anything to with terrorism; no facts showing that DMI S.A. had any knowledge of the alleged accounts in the Sudan, much less that DMI S.A. intended those accounts to support al Qaeda; no

facts showing when, where, how, or to whom DMI S.A. "transferred money for" al Haramain; and no facts to suggest that DMI S.A. knowingly provided anything other than routine banking services to anyone.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.[5]

Similarly, while plaintiffs aver that DMI S.A.'s "*Zakat* accounts have been used to support Al Qaeda," see RICO Stmt. ¶ 2 and FAC ¶ 134, plaintiffs allege no specific facts showing that DMI S.A. donated any money to anyone whatsoever, let alone knowingly donated funds to anyone known to be a 'front' for al Qaeda.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 799-801 (holding that where there were no specific allegations that a defendant knowingly provided financial support to a certain entity, facts regarding such supposed support could not establish causation). Finally, while plaintiffs conclusorily aver that DMI S.A. "launder[ed] money for Al Qaeda, knowingly and intentionally provid[ed] financial services to Al Qaeda (including maintaining and servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda), and/or facilitat[ed] weapons and military equipment purchases and money transfers for Al Qaeda," see RICO Stmt. ¶¶ 2, 5 and FAC ¶ 127, plaintiffs do not plead facts sufficient for the Court to find that DMI S.A. ever "laundered money" for anyone,[6] or to find that DMI S.A. knowingly provided any services other than routine banking services to anyone.[7]  In sum, where plaintiffs, as here, have

---

[5] Unlike Hamas in Boim, al Haramain was not a designated sponsor of terrorism prior to the September 11 attacks.  Compare RICO Stmt. ¶ 2 with Boim II, 291 F.3d at 1002.  Moreover, unlike the empty, unsupported assertion that DMI S.A. "has transferred money for " al Haramain, the Boim plaintiffs alleged specific facts tying the defendants therein to Hamas, including that "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 800 (citing Boim v. Quranic Literacy Inst. & Holy Land Found., 127 F. Supp. 2d 1002, 1006-1008. (N.D.Ill. 2001)).  No such facts have been alleged as to DMI S.A. here.

[6] Plaintiffs' conclusory allegation that DMI S.A. "laundered money," see RICO Stmt. ¶ 5, does not substitute for allegations of fact sufficient to show that i) DMI S.A. conducted a financial transaction in interstate commerce; ii) DMI S.A. knew that the property involved represented some form of specific unlawful conduct; iii) the transaction involved the proceeds of specific unlawful conduct; and iv) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000); Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997).

[7] Specifically, these allegations do not specify whether DMI S.A. is alleged to have loaned money to al Qaeda, written letters of credit for al Qaeda, maintained checking accounts for al Qaeda, provided investment advice to al Qaeda, or sent Osama bin Laden a free toaster. Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI S.A. with any meaningful notice of the supposed basis of the claims against it.  See, e.g., Kittay, 230 F.3d at 541 (even under notice pleading, plaintiff must disclose

asserted that DMI S.A. provided financial services or other support to "organizations that are not themselves designated terrorists, . . . there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity [and] [t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." Id. "Here, there are no such factual bases presented, there are only conclusions." Id.

> **A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries.**

Plaintiffs tender nothing to support the proposition that any actions of DMI S.A. -- and again, no such actions have been alleged -- proximately caused the injuries suffered by plaintiffs. Each of plaintiffs' claims requires a showing of proximate cause. Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, i.e., that the injury complained of was a direct effect of DMI S.A.'s own tortious conduct. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797, n. 26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege facts showing "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1012 (7th Cir. 2002) ("Boim II").

Additionally, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with or aided and abetted the primary wrongdoer. In re Sept. 11 Attacks, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman, 149 F.3d at 122-23 (citations omitted). Under

---

sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery").

either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

Plaintiffs here make no allegation of fact showing that any action by DMI S.A. was substantial factor in the September 11 attacks and thus proximately caused their injuries.  Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action.[8]  Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of and action by DMI S.A.  For instance, even if third parties allegedly connected to al Qaeda had accounts at putative indirect subsidiaries of DMI S.A. in the Sudan in the mid-1990s, the Complaint alleges no facts to suggest that any such account was in any sense a cause of -- or was connected at all to -- the September 11 attacks.  There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether it was ever used for any purpose, and if so what that purpose was.[9]

Plaintiffs have also entirely failed to allege facts sufficient to support any assertion that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting.  See infra Part II.B.5.  In sum, plaintiffs have failed to make any allegation against DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

---

[8]  See, e.g., FAC ¶ 167 (as to trespass claim, "[t]he conduct of the . . . the Banking and Financial Defendants . . . proximately resulted in the September 11th attacks"); id. ¶ 173 (as to ATA claim, "[t]he conduct of . . . the Banking and Financial Defendants proximately resulted in the September 11th attacks").  These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI S.A.  See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n. 3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted).

[9]  Plaintiffs have not even alleged any wrongful action by those Sudanese entities, because as this Court has held, "[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 835.  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity.  See supra n.1.

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To
         State Any Of Their Causes of Action Against DMI S.A.**

Plaintiffs also have failed to properly plead any of their causes of action against DMI

S.A. because they have not alleged facts sufficient to make out the specific elements of their various

claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor

legal conclusions cast as factual allegations, suffice to state a claim.  See Mason, 346 F.3d at 39; York

v. Bar of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the

complaint must allege facts which, assumed to be true, confer a judicially cognizable right of

action."); In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36 (complaint which consists of conclusory

allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)); Sonds

v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a

12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. . .

.  It is imperative that the complaint contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' boilerplate, conclusory allegations cannot be allowed to substitute

for *some* allegation of fact -- *any* allegation of fact -- showing that DMI S.A. ever actually *did* anything

to cause the injuries for which plaintiffs now seek redress.  See Smith v. Local 819 I.B.T. Pension

Plan, 291 F.3d 236, 240 (2d Cir. 2002); DeJesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F. Supp.

2d at 832-36.  Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed

to plead any of the necessary elements of their causes of action other than injury.  In the absence of

*any* relevant allegations of fact, DMI S.A. is again left with no notice as to the basis for Plaintiffs'

claims.  Consequently, Plaintiffs have again failed to meet even the liberal requirements of Fed. R.

Civ. P. 8(a).  The claims against DMI S.A. therefore must be dismissed.

**1.      Trespass (Count 1).**

"Trespass is the interference with a person's right to possession of real property

either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be

intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home

Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires

that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[10]  Where, as here, plaintiffs assert that DMI S.A. aided and abetted a trespass, see FAC ¶ 165, they must allege that DMI S.A. "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. Dec. 3, 2003).

Plaintiffs make only the generalized allegation, against most of the defendants in this action, that they "knowingly and intentionally lent financial and other material support and substantial assistance to the Al Qaeda Defendants[, which] . . . enabled the Al Qaeda Defendants to plan, orchestrate, and carry out the September 11 attacks."  FAC ¶ 165.  Plaintiffs have proffered no allegation that, if proved out, would show that DMI S.A. gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, or intended any trespass.  Plaintiffs have also failed to allege that DMI S.A. committed any wrongful act that resulted in any trespass, and have again failed to plead proximate causation as to DMI S.A.  See supra Part II.A.  Accordingly, plaintiffs' claims for trespass against DMI S.A. should be dismissed.

## 2.    Anti-Terrorism Act (Count 2).

Under the ATA, a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the United States, who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citing Boim II, 291 F.3d at 1023); see also Burnett v. Al Baraka Inv. and Dev. Corp., 274

---

[10]  The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994); A.J. Cunningham Packing Corp. v. Congress Fin. Corp., 792 F.2d 330, 334 & n.4 (3d Cir. 1986).

F. Supp. 2d 86, 106 (D.D.C. 2003).  Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that DMI S.A. did so knowingly or with a desire to see a terrorist plot succeed. And again, plaintiffs have wholly failed to plead proximate causation.  See supra Part II.A.

      Indeed, the allegations against DMI S.A. are at least as empty as those asserted -- and found insufficient – as to Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim that DMI S.A.'s "*Zakat* accounts have been used to support Al Qaeda," see FAC ¶ 134 and RICO Stmt. ¶ 2, and that DMI S.A. "has transferred money for" al Haramain, without any allegations indicating where, when, why or how DMI S.A. "transferred money" for al Haramain, or any facts indicating that DMI S.A. knew that any ostensible recipient of banking services or of donations was supporting terrorism.  Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  In contrast, plaintiffs claim only that DMI S.A.'s putative Sudanese subsidiaries maintained accounts for al Qaeda members in the mid-1990s, see RICO Stmt. ¶ 2, again without any allegation showing that DMI S.A. or its putative subsidiaries knew that those accounts were held by suspect persons or provided anything other than routine banking services.

      Clearly, as this Court held regarding Al Rajhi Bank, "Plaintiffs do not allege that [DMI S.A.] provided direct material support to al Qaeda"; "Plaintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any persons associated with DMI S.A.] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI S.A.] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks, 349

F. Supp. 2d at 832-33.  Plaintiffs therefore have wholly failed to state their ATA claim and the claim must be dismissed.

> ### 3.        RICO – Against Banking and Financial Defendants (Count 3).

Plaintiffs also have entirely failed to plead their Section 1962(c) RICO claim against DMI S.A.  To state such a claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  A RICO claim alleging a violation of Section 1962(c) requires that "an alleged RICO defendant must have had some part in directing the operation or management of the enterprise itself to be liable."  Sept. 11 Attacks, 349 F. Supp. 2d at 827-28.  Where plaintiffs cannot successfully allege these RICO elements, there is no criminal RICO violation, and no civil liability can ensue.  See, e.g., Moss, 719 F.2d at 18-19.

Once more, plaintiffs' sparse allegations regarding DMI S.A., even if true, would establish *none* of the requisite elements of a civil RICO claim.  Plaintiffs do not allege two or more predicate acts by DMI S.A., or any facts that could show an agreement to commit any such acts.  Plaintiffs allege no facts showing that DMI S.A. engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI S.A.'s assent to any alleged RICO conspiracy; no overt acts by DMI S.A. in furtherance of any alleged conspiracy; no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise'; and no indication that DMI S.A. actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  Compare FAC ¶¶ 123-35, 185-92 and RICO Stmt. with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements.  These elements . . . must be tightly particularized . . . .  Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").  Moreover, as before, plaintiffs have failed to plead proximate causation as to DMI S.A.  See supra Part II.A.  Plaintiffs

thus have completely failed to state any RICO claims against DMI S.A., and dismissal of such claims is in order.  See e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164-65 (S.D.N.Y. 2003) (dismissing § 1962(c) RICO claim against bank because the "opening of accounts . . . [and] transferring funds . . . do not constitute exerting control over the enterprise");  Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out RICO elements, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim").

4.    **Aiding and Abetting a Violation of International Law (Count 9).**

There is no basis in law or in fact for plaintiffs' nebulous claim for a violation of international law.  Plaintiffs cannot assert a claim for airplane hijacking as a violation of customary international law because "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute."  Hayden v. Pataki, 2004 WL 1335921, at * 7 (S.D.N.Y. June 14, 2004) (citing Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir. 1995)).  There must be "great caution in adapting the law of nations to private rights."  Sosa v. Alvarez-Machain, 542 U.S. 692, --, 124 S. Ct. 2739, 2764 (2004) (declining to recognize a private cause of action for arbitrary arrest under the law of nations); see also Friedman v. Bayer Corp., 1999 WL 33457825, at * 3 (E.D.N.Y. Dec. 15, 1999) ("customary international law prescribes norms of conduct among nations but does not create private rights of action for individuals . . . .  Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").

Moreover, "Congress may . . . explicitly, or implicitly by treaties or statutes that occupy the field" preclude a private plaintiff from bringing a claim pursuant to a supposed international law.  Sosa, 124 S. Ct. at 2765.  Here, Congress has occupied the field of airplane hijacking by implementing norms against airplane hijacking and refusing to provide a private right to sue under either the conventions, the implementing statutes, or any other law.  See 18 U.S.C. § 32 (destruction of aircraft); 49 U.S.C. § 46502 (aircraft piracy); Hague Convention for the Suppression of Violence against Aircraft; Montreal Convention on Offenses and Certain Other Acts Committed

on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177.  Because Congress has refused

to create a private cause of action under these statutes, plaintiffs have no standing to assert their

amorphous claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 537 U.S. 275,

286-87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law

must be created by Congress."); Coleman v. Reno, 91 F. Supp. 2d 130, 131-32 (D.D.C. 2000)

(finding no private cause of action where prisoner transfer treaty and implementing statute did not

provide for one); Khalid v. Bush, 355 F. Supp. 2d 311, 325-26 (D.D.C. 2005) (finding no private

cause of action where Geneva Conventions and implementing statute did not provide for one).

       Plaintiffs' alternative theory, that certain treaties or international proclamations have

been violated, is inapposite because, again, no private cause of action lies.  "Treaties, as a general

rule, are not privately enforceable.  Indeed, enforcement in the final analysis is reserved to the

executive authority of the governments who are parties to the treaties."  Khalid, 355 F. Supp. 2d at

327.  A private cause of action will lie under a treaty only if (a) the treaty is self-executing and (b) the

treaty expressly provides for a private cause of action in its terms.  Dreyfus v. von Finck, 534 F.2d

24, 29-30 (2d Cir. 1976); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

442 (1989) (holding that even express provisions in a Convention requiring signatory nations to pay

compensation for violations creates no private cause of action to obtain such compensation).  None

of the accords cited by plaintiffs, see FAC ¶ 229, creates a private right of action.[11]

---

[11] For example, the Implementation Act of the Convention on the Prevention and Punishment of the Crime of Genocide explicitly prohibits a private right of action. See 18 U.S.C. § 1092 (the Implementation Act should not be "construed as creating any substantive or procedural right enforceable by law by any party in any proceeding"). Similarly, the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights ("ICCPR") do not create a private cause of action. Sosa, 124 S. Ct. at 2767 (the "Declaration does not of its own force impose obligations as a matter of international law" and "the United States ratified the [ICPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts"). Similarly, the General Assembly Resolutions cited by plaintiffs "do not have the power to bind member States because the member States specifically denied the General Assembly that power." See Flores v. S. Peru Copper Corp., 343 F.3d 140, 165 (2d Cir. 2003). The Charter of the International Military Tribunal, Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279, and The Allied Control Council Law, No. 10 (Dec. 20, 1945) concern the creation of tribunals and establishing jurisdiction over crimes committed during the course of World War II and neither creates a private cause of action. Cf. Seguros Comercial Am., Seguros Inbursa, S.A. v. Grupo Nacional Provincial, S.A., 115 F. Supp. 2d 1371 (M.D. Fla. 2000) (no private cause of action where treaty creates diplomatic procedures for recovery of property). The remaining four Conventions cited by plaintiffs are not self-executing treaties and none creates a private cause of action by its terms. See, e.g., The International Convention for the Suppression of

In addition, "[p]laintiffs here point to little that would lead this Court to conclude that aiding and abetting international law violations is itself an international law violation that is universally accepted as a legal obligation." In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding that aiding-and-abetting a violation of international law is not actionable). And again, even if a claim for aiding and abetting a violation of international law were tenable, plaintiffs have pled neither any facts showing that DMI S.A. has "given substantial assistance" to al Qaeda, nor any facts showing that DMI S.A. did so knowingly. See supra Part II.A; infra Part II.B.5.

5.      **Conspiracy and Aiding and Abetting (Counts 10 & 11).**[12]

Plaintiffs' putative causes of action for conspiracy and aiding and abetting are not tenable as independent claims. See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n. 3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort").[13] For this reason alone, plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

---

Terrorist Bombings, Jan. 12, 1998, art. 2, S. Treat Doc. No. 106-6, at 4, 37 I.L.M. 249, 253, Articles 1-24 (obligating State Parties, inter alia, to take measures to implement the Convention's provisions). Accordingly, there is no private liability under these agreements in United States courts. See Flores, 343 F.3d at 163.

[12] Plaintiffs' conspiracy claim, Count 10, is only asserted against the "Al Qaeda Defendants," not DMI S.A. See FAC ¶¶ 231-33. DMI S.A. is nowhere mentioned as an "Al Qaeda Defendant," see id. ¶¶ 33-42, and only is mentioned during plaintiffs' averments regarding "Banking and Financial Defendants," see id. ¶¶ 122-35, 153. Moreover, plaintiffs fail to assert any conspiracy allegations against DMI S.A. However, out of utmost caution and because plaintiffs have implicitly and spontaneously asserted a conspiracy claim against DMI S.A. through their RICO Statement ¶ 19, DMI S.A. addresses plaintiffs' conspiracy allegations.

[13] Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31, 2002); Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983). Pennsylvania also does not recognize an independent tort of aiding and abetting. Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000). It is currently unclear whether an aiding and abetting claim is recognized under Virginia law. Compare A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

Moreover, plaintiffs' conclusory allegations are entirely insufficient to allege conspiracy or aiding and abetting in connection with any other claim.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting damage or injury.  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).[14]  The plaintiffs' generalized allegations regarding conspiracy -- only against the "Al Qaeda Defendants" -- fail to allege facts sufficient to show any of the above elements as to DMI S.A.  Compare FAC ¶ 231-33 with Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how [the] conspiracy was formed"); Gmurzynska v. Hutton, 2003 WL 1193727 *7-8 (S.D.N.Y. Mar. 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim"); and Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.").

Plaintiffs' allegations are entirely insufficient to make out the elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d

---

[14]  The elements of civil conspiracy under Pennsylvania and Virginia law are substantively identical to those under New York law.  Cf. Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

102, 102-03 (N.Y. 1986) (requiring allegation of explicit agreement); Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. Ct. App. 2000). Yet plaintiffs allege *no* communications or consultations of *any* kind by *any* personnel of DMI S.A., much less communications or consultations from which one might infer the company's assent to a conspiracy to commit the September 11, 2001 attacks. See e.g., FAC ¶ 231-33. Furthermore, plaintiffs allege *no* overt acts by DMI S.A. in furtherance of the purported conspiracy whatsoever. See, 8 N.Y. Jur., Conspiracy § 4 (1982). In sum, the plaintiffs proffer no cognizable basis for their putative conspiracy claim against DMI S.A.

Similarly, plaintiffs clearly have not properly alleged aiding and abetting. To state the elements for aiding and abetting, plaintiffs must allege facts showing that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act. See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dept. 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that defendants had knowledge of the misconduct and substantially assisted therein).[15] Plaintiffs do not even begin to establish such knowing and substantial assistance on the part of DMI S.A. Compare FAC ¶ 135 (DMI S.A. "aided and abetted others who lent material support to Al Qaeda and [Osama bin Laden]") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting or conspiracy are not enough" to state claim).

Plaintiffs also cannot found aider and abettor liability upon their allegations that third parties connected to al Qaeda maintained bank accounts at putative indirect subsidiaries of DMI S.A. in the Sudan in the mid-1990s. See FAC ¶¶ 122-35; RICO Stmt. ¶ 5. There is no allegation that DMI S.A. in any way assisted those third parties, much less that such assistance was substantial. There is no allegation that could reasonably be read to imply that DMI S.A. did so knowingly. Nor is there any allegation that those accounts in the Sudan in the mid-1990s constituted anything other than routine banking services, or had anything at all to do with the attacks of September 11, 2001.

---

[15] The elements necessary to establish aiding and abetting do not differ under Pennsylvania or Virginia law. See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

As a consequence, these attenuated allegations wholly fail to allege "knowing and substantial assistance" of al Qaeda for purposes of aiding and abetting liability.

### 6.     Punitive Damages (Count 12).

Plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### 7.     Contribution and Indemnity (Count 13).

Co-plaintiff Port Authority of New York and New Jersey asserts a "contribution and indemnity" claim against all defendants.  "A claim for indemnification and contribution must be premised on the defendant's breach of a duty to the [primary] plaintiff -- whether grounded in express contract, implied contract, or tort."  St. Pierre v. Dyer, 208 F.3d 394, 401 (2d Cir. 2000); accord Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986) (in order to have a viable indemnity claim, there must be a breach of duty by the defendant to the primary plaintiff, i.e., "the proposed indemnitor has breached a duty to a third party, but the proposed indemnitee has paid the third party for the loss attributable to that breach"); Travelers Indem. Co. v. AMR Servs. Corp., 921 F. Supp. 176, 182 (S.D.N.Y. 1996) (same); Jordan v. Madison Leasing Co., 596 F. Supp. 707, 710 (S.D.N.Y. 1984) ("an action for contribution will not lie unless all the essential elements of a cause of action against the proposed contributor can be made out"). As stated throughout this Memorandum, plaintiffs do not properly allege any underlying tort by DMI S.A., or any duty that DMI S.A. might have owed to anyone.  In fact, plaintiffs do not and cannot allege that DMI S.A. owed any duty of care to the *primary* plaintiff -- "the individuals and organizations that have brought claims against the Port Authority," see FAC ¶ 241 -- let alone to the Port Authority, with whom DMI S.A. has never had any relations whatsoever.  Moreover, even if some duty could be alleged, plaintiffs do not allege a breach of any such duty of care by DMI S.A. because they allege no wrongful act or omission by DMI S.A.  Finally, once more, plaintiffs have not properly alleged that any action by DMI S.A. proximately caused their injuries.  See supra Part II.A.

### III
### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have filed two successive Complaints and a RICO Statement; nevertheless, as set forth throughout this Memorandum, their failure to state any of their claims against DMI S.A. is as nearly complete as one could imagine.  There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure these manifold defects. Dismissal of plaintiff's claims against DMI S.A., therefore, should ensue with prejudice.  See, e.g., Electronic Comme'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (denying leave to amend Complaint as futile); In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

### CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.


Dated:  New York, New York
          September 9, 2005

                              Respectfully submitted,
                              SHEPPARD MULLIN RICHTER & HAMPTON LLP

                              By:_____/s/_____
                                  James J. McGuire (JM-5390)

                                  30 Rockefeller Plaza, 24th Floor
                                  New York, New York 10112
                                  (212) 332-3800

                                  *Attorneys for Defendant*
                                      *DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel