**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:    Thomas E. Burnett, et al. v. Al Baraka Inv. &
                             Dev. Corp., et al. (03 CV 9849)

                             Thomas E. Burnett, et al. v. Al Baraka Inv. &
                             Dev. Corp., et al. (03 CV 5738)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *DMI Administrative Services S.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. ....................................................1

ARGUMENT .......................................................................................................................4

I      THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A. ...............................4

     A.      Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute. ...........................5

         1.      Plaintiffs Aver No Facts Showing That DMI S.A. Has Had Continuous And Systematic Contacts With New York To Support General Jurisdiction. ...........................................................5

         2.      Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting Provide No Basis For Specific Personal Jurisdiction Over DMI S.A. .........................................................6

     B.      DMI S.A. Lacks The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction. ...........................8

         1.      Plaintiffs Fail To Aver Sufficient Continuous And Systematic Contacts With The United States To Support General Jurisdiction Over DMI S.A. ..........................................8

         2.      This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States. ...........................................................9

II      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ............................11

     A.      Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries. ...................................15

     B.      Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI S.A. ............................................................16

         1.      Torture Victims Protection Act (Count 2). ...........................................17

         2.      Anti-Terrorism Act (Count 3). .............................................................17

         3.      Alien Tort Claims Act (Count 4). .........................................................18

         4.      Wrongful Death & Survival (Counts 5 & 7). ..........................................19

         5.      Negligence and Negligent Infliction of Emotional Distress (Counts 6 & 8). ..................................................................................19

         6.      Intentional Infliction of Emotional Distress (Count 8). ..........................20

7.     Conspiracy and Aiding and Abetting (Counts 9 & 10). ....................................20

8.     RICO (Counts 11-13)........................................................................................23

9.     Punitive Damages (Count 14). .........................................................................24

III     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE........................25

CONCLUSION...............................................................................................................................25

## TABLE OF AUTHORITIES

### Cases

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
    1992 WL. 884467 (Va. Cir. Ct. Jan. 29, 1992)...................................................20

Acito v. Imcera Grp., Inc.,
    47 F.3d 47 (2d Cir. 1995) ..................................................................................24

Alexander & Alexander of New York, Inc. v. Fritzen,
    68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986)....................................................21

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
    228 F.3d 429 (3d Cir. 2000) ...............................................................................20

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) .................................................................................15

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) .................................................................................1

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004).......................................................1

Atuahene v. City of Hartford,
    10 Fed. Appx. 33, 34 (2d Cir. 2001) ...................................................................1

Bankers Trust Co. v. Rhoades,
    741 F.2d 511 (2d Cir. 1984) ...............................................................................22

Bao Ge v. Li Peng,
    201 F. Supp. 2d 14 (D.D.C. 2000) .....................................................................18

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987) ...............................................................................11

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) .....................................................................10

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) ..............................................................13, 14, 16

Boim v. Quranic Literacy Inst. & Holy Land Found.,
    127 F. Supp. 2d 1002 (N.D. Ill. 2001) ...............................................................13

Boyanowski v. Capital Area Intermediate Unit,
    215 F.3d 396 (3d Cir. 2000) ...............................................................................20

Burnett v. Al Baraka Inv. and Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003)...........................................................1, 2, 14, 22

Calder v. Jones,
    465 U.S. 783 (1984).............................................................................................9

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ....................................................13

Consolidated Gold Fields, PLC v. Anglo Am. Corp. of S. Africa Ltd.,
698 F. Supp. 487 (S.D.N.Y. 1988) ...................................................................................8

Cornell v. Assicurazioni Generali S.p.A., Consol.,
2000 WL 284222 (S.D.N.Y. Mar. 16, 2000) ................................................................5, 6

DeJesus v. Sears, Roebuck & Co.,
87 F.3d 65 (2d Cir. 1996) .................................................................................1, 16, 19, 23

Delk v. Columbia/HCA Healthcare Corp.,
259 Va. 125, 523 S.E.2d 826 (2000) ............................................................................19

Doe v. Islamic Salvation Front,
257 F. Supp. 2d 115 (D.D.C. 2003)...............................................................................18

Dubai Islamic Bank v. Citibank, N.A.,
256 F. Supp. 2d 158 (S.D.N.Y. 2003)...........................................................................23

Electronic Comm'ns Corp. v. Toshiba Am.,
129 F.3d 240 (2d Cir. 1997) ..........................................................................................24

Flanagan v. Shively,
783 F. Supp. 922 (M.D. Penn. 1992)..............................................................................21

Flores v. S. Peru Copper Corp.,
343 F.3d 140 (2d Cir. 2003) ..........................................................................................18

Gillette Co. v. Philips Oral Healthcare, Inc.,
2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .............................................................11

Glasheen v. City of Albany,
1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ..............................................................12

Gmurzynska v. Hutton,
2003 WL 1193727 (S.D.N.Y. March 14, 2003).............................................................14

Gold v. Fields,
1993 WL 212672 (S.D.N.Y. June 14, 1993) .................................................................22

Grove Press, Inc. v. Angleton,
649 F.2d 121 (2d Cir. 1981) ..........................................................................................20

Guadagnoli v. Seaview Radiology, P.C.,
184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ..............................................19

Halberstam v. Welch,
705 F.2d 472 (D.C. Cir. 1983) ......................................................................................20

Hattley v. Goord,
2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003)..............................................................21

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
337 S.E.2d 744 (Va. 1985) ............................................................................................20

Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 413 (1984)....................................................................................................8, 9

Howard v. Klynveld Peat Marwick Goerdeler,
    977 F. Supp. 654 (S.D.N.Y. 1997) ..................................................................6

Howell v. New York Post Co.,
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) ........................................................19

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) .................................................24

Jacobs v. Felix Bloch Erben Verlag fr Buhne Film und Funk KG,
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ...........................................................6

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ...............................................................4, 6, 10

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ...............................................21

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) ...........................................................................18

Kieft v. Becker,
    58 Va. Cir. 171, 2002 WL 481249 (2d Cir. 2000) .......................................20

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) .........................................................................11

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ...........................................................21

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) .........................................................................14

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) .............................................................7

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972) .....................................................................9, 10

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975) .........................................................................4, 6

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004) ..........................................................23

Liberman v. Worden,
    701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000) ..................................21

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) ...........................................................................1

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) ...........................................................................15

Mende v. Milestone Tech. Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ...........................................................4

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
  506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dep't 1986) .......................................................18

Moss v. Morgan Stanley Inc.,
  719 F.2d 5 (2d Cir. 1983) ............................................................................................23

Norvel Ltd. v. Ulstein Propeller AS,
  161 F. Supp. 2d 190 (S.D.N.Y. 2001)...........................................................................8

Papieves v. Lawrence,
  437 Pa. 373, 263 A.2d 118 (1970) ................................................................................19

Pittman v. Grayson,
  149 F.3d 111 (2d Cir. 1998) ...................................................................................7, 15

Powell v. Jarvis,
  460 F.2d 551 (2d Cir. 1972) .......................................................................................11

Pyramyd Stone Int'l Corp. v. Crosman Corp.,
  1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) ...................................................................6

Reers v. Deutsche Bahn AG,
  320 F. Supp. 2d 140 (S.D.N.Y. 2004)...........................................................................5

Rose v. Goldman, Sachs & Co.,
  163 F. Supp. 2d 238 (S.D.N.Y. 2001)..........................................................................12

Ruffolo v. Oppenheimer & Co., Inc.,
  1991 WL 17857 (S.D.N.Y. Feb. 5, 1991).....................................................................19

In re S. African Apartheid Litig.,
  346 F. Supp. 2d 538 (S.D.N.Y. 2004)..........................................................................18

S.E.C. v. Unifund SAL,
  910 F.2d 1028 (2d Cir. 1990) ......................................................................................10

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
  2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) .......................................................20

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002)...........................................................................6

Skipworth v. Lead Indus. Ass'n, Inc.,
  690 A.2d 169 (Pa. 1997) ..............................................................................................20

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999)................................................................20

Smith v. County of Erie,
  295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ........................................24

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) ..................................................................................11, 16

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
  151 F. Supp. 2d 303 (S.D.N.Y. 2001)..........................................................................16

*Spoto v. Herkimer County Trust,*
　　2000 WL 533293 (N.D.N.Y. Apr. 27, 2000)..................................................................22

*Stewart v. Crosswalks Television Network,*
　　2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ...............................................................21

*Suarez v. Underwood,*
　　103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) .................................20

*Talmor v. Talmor,*
　　185 Misc. 2d 293, 712 N.Y.S.2d 833 (N.Y. Sup. 2000) .............................................19

*In re Terrorist Attacks on Sept. 11, 2001,*
　　349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................................................4, 5, 6, 7, 8,
　　　　　　　　　　　　　　　　　.........................................................9, 10, 11, 12, 13,
　　　　　　　　　　　　　　　　　.........................................................14, 15, 16, 17, 19,
　　　　　　　　　　　　　　　　　.........................................................23, 24

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,*
　　241 F.3d 135 (2d Cir. 2001) ........................................................................5

*United States v. Yousef,*
　　327 F.3d 56 (2d Cir. 2003) .......................................................................16

*York v. Bar of New York,*
　　286 F.3d 122 (2d Cir. 2002) ......................................................................16

**Statutes And Other Authority**

18 U.S.C. § 1962 (1988).........................................................................23

18 U.S.C. §§ 2331-2333 (2000) ..................................................................16

28 U.S.C. § 1350 (1993)........................................................................18

Fed. R. Civ. P. 4(k).........................................................................5, 8

Fed. R. Civ. P. 8(a) ........................................................................11, 16

Fed. R. Civ. P. 12(b)(2)....................................................................1, 4

Fed. R. Civ. P. 12(b)(6)....................................................................4, 11

N.Y. C.P.L.R. § 301 (McKinney 2001) ...........................................................5

N.Y. C.P.L.R. § 302(a)(2) (McKinney 2001) ......................................................6

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002) .......................................................18

ALAN WRIGHT & ARTHUR R. MILLER,
　　FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004) ...............................1, 12, 17

8 N.Y. Jur., Conspiracy, § 19 (1982) ........................................................20, 21

## INTRODUCTION

The Complaint by the *Burnett* plaintiffs makes sweeping allegations of grave wrongdoing by the named defendants, including movant DMI Administrative Services S.A. ("DMI S.A."). Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection between DMI S.A. and al Qaeda or, for that matter, any substantive contact between DMI S.A. and the United States. Instead, plaintiffs offer conclusory allegations that, as the Court's Order of January 18, 2005 establishes, are insufficient to withstand a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, salted with a handful of factual allegations that are innocuous at best and self-contradictory at worst. Accordingly, in the absence of any allegations connecting DMI S.A. to the attacks of September 11, 2001, or the United States, plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

The *Burnett* Plaintiffs' 406-page Complaint, and their 38-page More Definite Statement (MDL Docket No. 896) ("MDS"), contain only a few pertinent factual allegations regarding DMI S.A.,[1] which are restated below:

---

[1] Plaintiffs -- for some unknown reason -- first define the abbreviation "DMI" to denote exclusively DMI S.A., but later define "DMI" to include both DMI S.A. *and* its ultimate parent Dar Al-Maal Al-Islami Trust ("DMI Trust"). Compare *Burnett* Third Amended Complaint ("TAC") ¶ 97 with MDS ¶ 2. Plaintiffs then proceed to make various allegations regarding "DMI," without indicating which allegations are meant to apply to which entity. DMI S.A. and DMI Trust are separate companies, however -- and separate named defendants -- conducting different businesses in different countries. Plaintiffs' allegations regarding "DMI" thus are unintelligible as written, and plaintiffs' claims should be dismissed on this ground alone. See 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363 at 120-21 (3d ed. 2004) ("district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."). Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil between DMI S.A. and DMI Trust (or any other putatively related entity). See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit the wrong complained of); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil). Nevertheless, in an abundance of caution and for the Court's convenience, DMI S.A. will proceed upon the assumption that all of the allegations that refer to "DMI" are intended to denote DMI S.A.

<u>Jurisdictional Allegations</u>:

Plaintiffs allege that "Dar Al Maal Al Islami (or . . . 'DMI') is the registered name for DMI Administrative Services S.A.  The company is headquartered in Cointrin, Switzerland."  TAC ¶ 97.[2]  Plaintiffs assert that DMI S.A., in the early 1980s, advertised three times in the *Wall Street Journal* or *New York Times* regarding the company's founding and its inability to attend a conference on Islamic Banking, and that DMI S.A.'s CEO stated in a newspaper article that related companies had "substantially increased" their investments in the United States since September 11, 2001.  <u>See</u> MDS ¶¶ 9-11, 19-20.  Additionally, plaintiffs aver that DMI S.A. held a 35% interest in Boston Capital, a Massachusetts-based real estate financing firm.  <u>See</u> <u>id.</u> ¶¶ 19-20.

<u>Allegations Concerning Donations to Charities</u>:

As an article of faith, Muslims practice *zakat*, the donation of a percentage of their income to charitable causes; Muslims also tithe income inadvertently received from religiously unacceptable sources, also known as *haram* income, such as any income from alcohol or gambling.  <u>See</u> TAC Intro., at 209-10; MDS ¶ 38.  Plaintiffs further allege that DMI S.A. donated *zakat* funds to branches of the International Islamic Relief Organization ("IIRO") and the Muslim World League ("MWL") in the early 1990s, <u>see</u> MDS ¶ 108 -- at a time when, according to plaintiffs' own allegations, those charities were engaged not in supporting terrorism against the United States but in funding the Afghan *mujahideen*, and even though by plaintiffs' own account, al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  <u>See</u> MDS ¶¶ 42, 112-13.  Hence, plaintiffs conclude, because it ostensibly made such donations, DMI S.A. "knew or had to know" that "Osama Bin Laden and al Qaeda were directly collaborating with the [IIRO]" and "that the [MWL] office in Cairo was also managed by Osama Bin Laden," <u>see</u> <u>id.</u> ¶¶ 108, 112-15.  Finally,

---

[2]  DMI S.A. is moving against both the *Burnett* complaint originally filed in the District of Columbia, No. 03-CV-9849 ("*Burnett* DC"), and the substantively identical *Burnett* Complaint filed in this Court, No. 03-CV-5738 ("*Burnett* NY").  For brevity's sake, citations are to Third Amended Complaint in *Burnett* DC.

plaintiffs allege that DMI S.A. has supported the "Islamic Center of Geneva[, which] provided a support network for al Qaeda's terrorist activities." See id. ¶¶ 103-104.[3]

<u>Allegations Concerning The Provision of Banking Services</u>:

Plaintiffs themselves acknowledge that DMI S.A. is an administrative services provider, and not a bank. See MDS ¶ 3. Nevertheless, plaintiffs allege that DMI S.A., in support of al Qaeda, "launder[ed] money," "provid[ed] financial services," and "facilitat[ed] weapons and military equipment purchases and money transfers." See id. ¶ 22. DMI S.A., plaintiffs assert, "has involved itself in al Qaeda financing," by unspecified means, *via* its putative subsidiaries Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank ("al Shamal"). See TAC ¶ 98; see also MDS ¶ 49. Plaintiffs allege that DMI S.A., FIBS and TIB are shareholders of al Shamal, which Osama bin Laden allegedly helped establish in 1991. See MDS ¶¶ 23, 75, 83; TAC ¶¶ 70, 74, 100, 110. Plaintiffs allege that al Qaeda operatives "got account[s]" at Al Shamal, FIBS, and TIB in the mid-1990s, and that money from those accounts was transferred by the account holders to other al Qaeda members. See MDS ¶¶ 23, 77-80; TAC ¶¶ 79, 101, 109. In their More Definite Statement, plaintiffs further allege that DMI S.A. "transferred money for" al Haramain, at an unspecified time and for unspecified purposes, and "has handled the accounts of" Yassin Al Kadi and Wael Jelaidan, two individuals subsequently designated as terrorist sponsors by the United States. See MDS ¶ 22.

As this recitation makes clear, plaintiffs do not allege *any facts* showing that DMI S.A. ever "provided financial services" to anyone at all, much less knowingly provided extraordinary banking services to terrorists; or knowingly transferred *zakat* funds to terrorist 'front' charities; or otherwise undertook financial transactions in support of al Qaeda. See MDS ¶ 22. Nor do plaintiffs allege *any facts* showing that DMI S.A. ever entered into any sort of agreement at all, let alone an

---

[3] Plaintiffs offer no elaboration of the "support" that the Islamic Center of Geneva ("ICG") is supposed to have provided to al Qaeda's efforts to attack the United States; rather, plaintiffs allege that in 1991 the son of the founder of the Center organized a conference attended by future terrorists, and that "Islamic convert Albert Huber" contacted al Qaeda members in Lebanon through a "connection" at the Center, at an unspecified time and for unspecified purposes. See MDS ¶ 104.

agreement by all defendants "to cause . . . the terrorist attack on the United States, its citizens and society on September 11, 2001." See TAC ¶ 680.  Indeed, in their 406-page Complaint and 38-page More Definite Statement, plaintiffs fail to allege any communication between DMI S.A. and anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI S.A., by or to anyone associated with al Qaeda; any facts that could be read to imply DMI S.A.'s supposed intent to cause an attack on the United States; or any facts connecting DMI S.A. *in any way* with the events of September 11.

## ARGUMENT

All claims against DMI S.A. should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over DMI S.A., and pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs fail to allege any connection whatsoever between DMI S.A. and the events of September 11, and hence fail to state their claims against DMI S.A.

### I
### THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, a *société anonyme* organized under the laws of Switzerland.  The Complaint and More Definite Statement fail to allege any facts that could be read to show that DMI S.A. has had any systematic contacts with the United States or any role in the terrorist attacks of September 11, 2001.  Thus, plaintiffs have not made the *prima facie* showing of minimum contacts necessary, for due process purposes, to invoke personal jurisdiction over DMI S.A., and the claims against DMI S.A. should be dismissed in their entirety.

Plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).  To survive a motion to dismiss, plaintiffs must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809.  "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but

"will not draw 'argumentative inferences' in the plaintiff's favor." Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.

In a federal question case involving a foreign defendant, the District Court applies the personal jurisdiction rules of the state in which it sits, unless the federal statute explicitly provides for nationwide service of process. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 804. Similarly, a federal court sitting in diversity exercises personal jurisdiction over a foreign defendant to the same extent as courts of general jurisdiction of the state in which it sits pursuant to Fed. R. Civ. P. 4(k)(1)(A). See id. In either case, plaintiffs must allege facts sufficient to establish (i) personal jurisdiction under New York's long-arm statute and (ii) that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See United States Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (internal quotation marks omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 804-11.

**A.     Plaintiffs Fail To Allege Any Facts That Would Support A Finding Of Personal Jurisdiction Under New York's Long-Arm Statute.**

**1.     Plaintiffs Aver No Facts Showing That DMI S.A. Has Had Continuous And Systematic Contacts With New York To Support General Jurisdiction.**

General jurisdiction under C.P.L.R. § 301 requires allegations that a defendant is "engaged in [ ] a continuous and systematic course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction." See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted). In assessing general jurisdiction, New York courts consider the following indicia of jurisdiction: "1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York." Cornell v. Assicurazioni Generali S.p.A., Consol., 2000 WL 284222, at *2 (S.D.N.Y. Mar. 16, 2000).

Plaintiffs here have not alleged facts showing *any* of these indicia as to DMI S.A. As is discussed in more detail below, see infra Part I.B.1, plaintiffs' allegations concerning a minority interest in a Massachusetts-based firm and a couple of decades-old advertisements, see MDS ¶¶ 9-

11, 19, are (i) wholly unrelated to New York and (ii) entirely insufficient to confer general jurisdiction.  See Reers, 320 F. Supp. 2d at 154-56 (defendant's acquisition of two major hotel chains from a New York corporation, its joint venture with a New York venture capital firm, its strategic partnership with several major U.S. corporations, its two New York bank accounts, and its sales of stock in New York by defendant's own New York-based market-makers, among other contacts, were insufficient to confer general jurisdiction under New York law); Cornell, 2000 WL 284222, at *2 (granting motion to dismiss because vague allegations of a supposed multinational business arrangement were insufficient to establish general jurisdiction); Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 662 (S.D.N.Y. 1997) ("mere advertising or marketing activities do not constitute an adequate basis for general jurisdiction").  In sum, plaintiffs clearly allege no facts showing that DMI S.A. is continuously and systematically doing business in New York.[4]

### 2.   Plaintiffs' Conclusory Allegations Of Conspiracy And Aiding And Abetting Provide No Basis For Specific Personal Jurisdiction Over DMI S.A.

Under § 302(a)(2) of the C.P.L.R., "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  Here, plaintiffs sweepingly assert that DMI S.A., and all other defendants, "unlawfully, willfully and knowingly combined, conspired, confederated, aided and abetted, tacitly and/or expressly agreed to participate, cooperate and engage in unlawful and tortious acts pursuant to a common course of conduct, namely the promotion and sponsoring of international terrorism."  See TAC ¶ 678.  Such a boilerplate, conclusory allegation cannot salvage plaintiffs' assertion of personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction

---

[4]  Similarly, plaintiffs have alleged no facts sufficient to support a finding that any putative subsidiary of DMI S.A. was a "mere department" of DMI S.A., such that the subsidiary's U.S. contacts might be attributed to DMI S.A. for purposes of determining whether general jurisdiction lies.  See Jazini, 148 F.3d at 184; see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 403, 410-12 (S.D.N.Y. 2002); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 735-37 (S.D.N.Y. 2001); Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6-10 (S.D.N.Y. Feb. 18, 1997).

on a New York long-arm conspiracy theory); see also Lehigh Valley, 527 F.2d at 93-94 ("the bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction").  "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States."  Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added).  Moreover, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  Id. at 602.

Plaintiffs flatly assert that all defendants were co-conspirators, see TAC ¶¶ 678-82, without supporting factual allegations as to DMI S.A.  But again, such baldly conclusory allegations fail to allege *facts* showing that DMI S.A. engaged in any such conspiracy: neither the plaintiffs' Complaint nor their More Definite Statement alleges facts sufficient to show that DMI S.A. entered into any agreement with any New York actor; that any such New York actor acted for the benefit of DMI S.A.; that DMI S.A. exercised control over any such New York actor; or that DMI S.A. had knowledge of or consented to any activity whatsoever.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiffs "do not allege any specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities.").

As with their allegations regarding conspiracy, plaintiffs' generalized, conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A.  See TAC ¶ 684 ("Defendants knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks"); see also MDS ¶ 116.  A claim of aiding and abetting "requires that the defendant have given substantial

assistance or encouragement to the primary wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826. In short, the alleged aider and abettor must have been aware of the wrongdoing and have provided substantial assistance in its commission. Here, plaintiffs have proffered no facts sufficient to support any such finding as to DMI S.A. See infra Part II.B.7. Accordingly, plaintiffs cannot invoke specific jurisdiction over DMI S.A. on a concerted action theory, and to the extent that plaintiffs rely upon such a theory of jurisdiction, their claims must be dismissed.

B.   **DMI S.A. Lacks The Requisite Minimum Contacts With The United States To Support The Exercise Of Personal Jurisdiction.**

Fed. R. Civ. P. 4(k)(2) provides long-arm jurisdiction over defendants, based upon contacts with the nation as a whole, when a federal claim is made against a foreign defendant not subject to jurisdiction in any state. However, "[p]ersonal jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth Amendment due process requirements." In re Sept. 11 Attacks, 349 F. Supp. 2d at 807.

1.   **Plaintiffs Fail To Aver Sufficient Continuous And Systematic Contacts With The United States To Support General Jurisdiction Over DMI S.A.**

A finding of general jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) requires "continuous and systematic general business contacts" by DMI S.A. with the United States. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984); In re Sept. 11 Attacks, 349 F. Supp. 2d at 811 ("a considerably higher level of contacts is generally required" to plead general jurisdiction). Plaintiffs here have not alleged facts sufficient to establish general personal jurisdiction over DMI S.A. Plaintiffs allege that DMI S.A., in the early 1980s, advertised three times in the *Wall Street Journal* or *New York Times* regarding the company's founding and its inability to attend a conference on Islamic Banking, and that DMI S.A's CEO stated in a newspaper article that affiliates had "substantially increased" their investments in the United States since September 11, 2001. See MDS ¶¶ 9-11, 19-20. However, "plaintiffs' assertions that [defendant] advertises in several publications in the United States [among other contacts] are not sufficient to

demonstrate [general] personal jurisdiction under the federal long-arm statute or in any state."
Norvel Ltd. v. Ulstein Propeller AS, 161 F. Supp. 2d 190, 207-08 (S.D.N.Y. 2001).  Additionally,
plaintiffs' allegation that DMI S.A. held a 35% interest in Boston Capital, a Massachusetts-based real
estate financing firm, see MDS ¶ 19, again falls short of asserting general jurisdiction over DMI S.A.
This single putative investment is not "systematic and continuous," as is required to invoke general
jurisdiction over DMI S.A.  See, e.g., Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d
1326, 1341 (2d Cir. 1972) (defendant's partnership with an American accounting firm to conduct
business in the United States was insufficient to constitute general jurisdiction); Consolidated Gold
Fields, PLC v. Anglo Am. Corp. of S. Africa Ltd., 698 F. Supp. 487, 494 (S.D.N.Y. 1988) (holding
that defendant's investments in four United States companies, valued at more than $650 million and
constituting more than 20% of its investment portfolio, were insufficient United States contacts to
establish general jurisdiction over it).  In short, plaintiffs tender nothing that could conceivably be
read to assert that DMI S.A. has had the purposeful, systematic contacts with the United States
necessary to establish general personal jurisdiction.  See Helicopteros, 466 U.S. at 416.

### 2.   This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States.

In the absence of allegations supporting general jurisdiction over DMI S.A., plaintiffs
apparently rely on a theory of specific jurisdiction, i.e., that personal jurisdiction over DMI S.A. may
be exercised because DMI S.A.'s tortious actions (whatever those unalleged actions might have
been) were expressly aimed at the United States.  In order to invoke specific personal jurisdiction
and satisfy due process, plaintiffs must properly allege some tortious act by the defendant, and allege
facts showing that the defendant "expressly aimed" such a tortious act at the forum.  Calder v.
Jones, 465 U.S. 783, 789 (1984); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs
must allege some personal or direct involvement by the Defendants in the conduct giving rise to
their claims.").  Here, plaintiffs do not allege any particular wrongful acts by DMI S.A. at all.  Nor
do they assert any facts indicating that DMI S.A. was aware that any of its actions would affect the

United States in any way, let alone that DMI S.A. *directed* any wrongful actions toward the United States.

Plaintiffs tender nothing in support of their claim that DMI S.A. provided financial services to suspect persons,[5] much less that DMI S.A. provided anything other than routine banking services to anyone.  Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by any specific allegations of fact.  As this Court has previously said, however:

> The law does not permit Plaintiffs 'to circumvent the jurisdictional hurdle . . . by inserting vague and conclusory allegations of tortious conduct in their complaints -- and then  . . . rely on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations under the applicable substantive law.'

In re Sept. 11 Attacks, 349 F. Supp. 2d at 801; see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege supporting facts); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction").

As the Second Circuit has made clear, the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New York "must be applied with caution, particularly in an international context."  Leasco, 468 F.2d at 1341; see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 811.  Accordingly, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.  See Leasco, 468 F.2d at 1341; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990).  Plaintiffs' conclusory allegations do not suffice to establish that any conduct by DMI S.A. -- whatever that unalleged conduct might have been -- had a direct effect in the forum, much less that DMI S.A. had good reason to expect such an effect.  Plaintiffs do not allege any particular wrongful action by DMI S.A.; any facts indicating that DMI S.A. made any donations to charities with the knowledge that any such charity was a terrorist 'front'; or any facts indicating that DMI S.A.

---

[5]  It is unsurprising that plaintiffs have been unable to cite even one specific instance in which DMI S.A. provided financial services to anyone -- much less to any suspected terrorist -- given that plaintiffs themselves acknowledge that DMI S.A. is an administrative service provider, see MDS ¶ 3, and not a bank.

provided anything other than routine banking services.  Therefore, to the extent that plaintiffs rely upon a theory of specific personal jurisdiction, that reliance is misplaced, and plaintiffs' claims must be dismissed.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because plaintiffs failed to "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States").[6]

## II
## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.

Plaintiffs also have entirely failed to allege facts sufficient to state any of the causes of action lodged against DMI S.A.  Indeed, as demonstrated above, plaintiffs have not alleged any particular wrongful conduct by DMI S.A. at all.  Furthermore, plaintiffs have alleged no facts indicating that any actions by DMI S.A. proximately caused plaintiffs' injuries, and have failed to allege facts sufficient to make out the specific elements of their claims.

Instead, plaintiffs make numerous conclusory allegations, indiscriminately attributing to DMI S.A., and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., TAC ¶ 46 (DMI S.A., and all other 'Banking Defendants,' "acted as instruments of terror, in raising, facilitating [sic] and transferring money to terrorist organizations").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (same); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) ("hodgepodge of vague and conclusory allegations" are insufficient).

In the face of conclusory allegations of such boundless scope, and in the absence of any specific allegations of fact showing any connection to the September 11 attack, DMI S.A. is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it.  See Gillette

---

[6]  Moreover, plaintiffs' deficient allegations -- after three years, four Complaints, and a More Definite Statement -- are wholly insufficient to warrant limited jurisdictional discovery. "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 813-14; see also Jazini, 148 F.3d at 185-86 (denying jurisdictional discovery where complaint was described as "sparse" and "conclusory"); Lehigh Valley, 527 F.2d at 93-94; In re Nov. 11 Ski Train Fire, 2004 WL 515534 at * 6 (jurisdictional discovery denied where such discovery likely would be futile).

Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting

Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.' *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d

Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information

to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know

whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even

under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not

mere "litany of general conclusions that shock but have no meaning"); Rose v. Goldman, Sachs &

Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de minimis*" pleading

standards in discrimination cases, "a plaintiff is required to set forth specific factual allegations to

establish a *prima facie* case"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec.

16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support

whatsoever for such serious claims against individual Defendants;" such "over-inclusive approach

renders it virtually impossible for each Defendant to respond to the allegations").

   Apart from conclusory allegations that categorically fail to state their claims, plaintiffs

offer only innuendo, supported by a handful of allegations of fact that, upon even cursory review,

prove to be innocuous, and often self-contradictory.  For example, while plaintiffs allege that DMI

S.A. has "supported" the Islamic Center of Geneva ("ICG"), see MDS ¶¶ 103-04, and donated *zakat*

funds to IIRO and MWL in the early 1990s, see id. ¶ 108, plaintiffs do not allege what "support"

DMI S.A. supposedly provided to the ICG; any facts showing that DMI S.A. provided support or

donations to the ICG, IIRO or MWL with the knowledge that any charity was a terrorist 'front'; or

any "facts to support an inference that [DMI S.A. was] sufficiently close to the terrorists' illegal

activities" to infer such knowledge.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 800.  Moreover,

plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations.  Plaintiffs allege

that in the early 1990s, the IIRO and MWL were funding not al Qaeda but Afghan *mujahideen*, see

MDS ¶¶ 112-13,[7] and that in subsequent years, when those charities actually did support al Qaeda,

they did so "by perverting and taking advantage of" *zakat* donors "under the cover of" legitimate

charitable activities, see id. ¶¶ 32, 34, negating any inference that DMI S.A. had knowledge of such

charities' nefarious activities.  See 5C WRIGHT & MILLER, § 1363 at 120-21 ("the district court will

not accept as true pleading allegations that are contradicted by . . . other allegations").  As these

contradictory allegations clearly indicate, "[p]laintiffs have not pleaded facts to suggest [that DMI

S.A.] knew [it was] making contributions to terrorist fronts and provided substantial assistance or

encouragement to the terrorists."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 800.[8]

   Likewise, while plaintiffs allege that DMI S.A. "has involved itself in al Qaeda

financing" through the Sudanese entities FIBS, TIB and al Shamal, see TAC ¶ 98, and that DMI

S.A. has "transferred money for al Haramain" and "handled the accounts of" subsequently-

designated terrorists Yassin Al Kadi and Wael Jelaidan, see MDS ¶ 22, plaintiffs have pleaded no

specific facts showing that DMI S.A. has ever engaged in any financial transactions of any sort,

much less in any transactions having anything to do with terrorism; no facts showing when, how or

why DMI S.A. allegedly "transferred money for" al Haramain; and no facts to suggest that DMI S.A.

knew it was providing banking services to anyone connected with al Qaeda.  Absent any such

allegations of fact, plaintiffs' assertions that DMI S.A. "handled the accounts of" suspect persons,

"provided financial services to" such persons, or "transferred money for" such persons, allege

---

[7] According to plaintiffs' own allegations, al Qaeda began to solicit *zakat* donations for its own terrorist purposes years later, in or about 1998.  See MDS ¶ 42.

[8] Unlike Hamas in Boim, none of the organizations that DMI S.A. is alleged to have supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1002 (7th Cir. 2002) ("Boim II") (noting Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the plaintiffs in Boim alleged specific factual allegations directly tying the defendants to Hamas, including allegations that  "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 800 (citing Boim v. Quranic Literacy Inst. & Holy Land Found., 127 F. Supp. 2d 1002, 1006-1008. (N.D.Ill. 2001) ("Boim I").

nothing more than the non-actionable provision of routine banking services.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 (allegations that Arab Bank merely maintained and serviced accounts "cannot subject Arab Bank to liability").[9]  And again, plaintiffs' insinuations of wrongdoing are contradicted by their own allegation that DMI S.A. is an administrative services company, not a bank, see MDS ¶ 3, and provides no banking services to anyone at all.

     In sum, the overwhelming majority of plaintiffs' allegations regarding DMI S.A. consist of conclusory, boilerplate allegations that categorically fail to state a claim.  The few allegations that are not utterly conclusory are either baldly irrelevant[10] or allege nothing more than routine banking services and innocuous charitable donations that, according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  To state their inflammatory claims, plaintiffs are required to allege *something* "to support the allegation that [DMI S.A.] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.  "Here, there are no such factual bases presented, there are only conclusions."  Id.

---

[9]  Similarly, plaintiffs' conclusory and unsupported allegation that DMI S.A. "launder[ed] money" for al Qaeda, see MDS ¶ 22, does not substitute for allegations of facts sufficient to show that 1) DMI S.A. conducted a financial transaction in interstate commerce; 2) DMI S.A. knew that the property involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) (holding conclusory allegations insufficient); Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (same).

[10]  For instance, plaintiffs' numerous allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent, DMI Trust, are thoroughly irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment.  Compare MDS ¶¶ 24, 45-63, 92-100 with, e.g., In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business."); Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 109 n.18 (D.D.C. 2003)("Burnett I") (bank is not liable based upon conduct of board members in the absence of allegations that director "act[ed] within the scope of his bank employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").  Similarly, this Court has already held that the allegation that a defendant was a shareholder of Al Shamal Islamic Bank -- indeed, even an allegation that a defendant was a founding shareholder of that entity -- does not state a claim for relief.  Compare MDS ¶¶ 23, 72-73 with In re Sept. 11 Attacks, 349 F. Supp. 2d at 836.

**A.      Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries.**

As a prominent example, plaintiffs tender nothing to support the proposition that any actions of DMI S.A. proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI S.A.'s own tortious conduct.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Pittman, 149 F.3d at 122-23 (citations omitted).  Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

Plaintiffs here make no allegation of fact showing that any action by DMI S.A. proximately caused their injuries, instead offering up boilerplate, conclusory assertions of causation in their recited causes of action.[11]  Nowhere do plaintiffs allege any facts indicating that the horrific

---

[11]  See, e.g., TAC ¶ 661 (as to wrongful death claim, "[t]he injuries and damages suffered by the Plaintiffs were proximately caused by the intentional, malicious, reckless, criminal, violent, grossly negligent or negligent acts of the Defendants as described herein"); id. ¶¶ 654-55, 674, 678.  These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI S.A.  See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.")(internal citations omitted).

events of September 11 were the direct and foreseeable result of any wrongful action by DMI S.A. This is of little surprise; plaintiffs could not make any such allegation, because plaintiffs have not alleged any particular wrongful action by DMI S.A. at all.  Plaintiffs also have entirely failed to allege facts sufficient to make out an assertion that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting.  See infra Part II.B.7.  In sum, plaintiffs have failed to make any allegation against DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI S.A.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI S.A. because they have not alleged facts sufficient to make out the specific elements of their various claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36 (same); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim . . . .  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- that DMI S.A. ever actually *did* anything to cause the injuries for which plaintiffs now seek redress.  See Smith, 291 F.3d at 240; DeJesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36.  Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed to plead any of the necessary elements of their causes of action, other than injury.  Consequently, plaintiffs have again failed to meet even the liberal requirements of Fed. R. Civ. P. 8(a).  The claims against DMI S.A. therefore must be dismissed.

### 1.      Torture Victims Protection Act (Count 2).

Plaintiffs' TVPA claim against DMI S.A., a corporation, has no merit because, among other reasons, "[o]nly individuals maybe sued under the TVPA" and there are no "allegations that [DMI S.A.] acted under color of law."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828.

### 2.      Anti-Terrorism Act (Count 3).

Under the ATA, a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citing Boim II, 291 F.3d at 1023).  Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that DMI S.A. did so knowingly[12] or with a desire to see a terrorist plot succeed. And again, plaintiffs have wholly failed to plead proximate causation.  See supra Part II.A.

---

[12] Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support prohibited activities such as the use of tobacco or alcohol, see MDS ¶¶ 38, 111-13, in an apparent attempt to imply that, because DMI S.A. donates to Islamic charities in order to ensure that *zakat* contributions do not support such activities, it must have known that the specific charities to whom it allegedly made contributions were terrorist 'fronts.'  This allegation regarding the duty of *zakat* cannot support such an implication, however, for several reasons.  First, plaintiffs themselves acknowledge that Islamic charities' support for terrorism was conducted by "taking advantage of" *zakat* donors "under the cover of" legitimate charitable activities, see id. ¶¶ 32, 34, negating any inference that donors "had to know" that *zakat* funds were being diverted to terrorist purposes simply because the receiving charity was Islamic.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33 (dismissing claims against bank despite similar allegations regarding duty of *zakat*); 5C WRIGHT & MILLER, § 1363 at 120-21.  Second, plaintiffs allege that DMI S.A. "knew or had to know" in the early 1990s that the IIRO and the MWL were 'fronts' for al Qaeda, see MDS ¶¶ 112-13; but plaintiffs themselves acknowledge that in the early 1990s, those charities were funding not terrorists but Afghan *mujahideen*, and that al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  See id. ¶¶ 42, 112-13.  Finally, plaintiffs allege only that DMI S.A. "knew or had to know" that such charities were terrorist 'fronts'; yet as this Court has held, an implication of constructive knowledge is insufficient to establish *scienter* for ATA purposes.  Rather, plaintiffs are required to allege facts showing *actual* knowledge of the recipient's terrorist activities (albeit not specific knowledge of the recipient's scheme).  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33.

Clearly, as this Court held regarding Al Rajhi Bank,[13] "Plaintiffs do not allege that [DMI S.A.] provided direct material support to al Qaeda": "Plaintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI S.A.] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33.  Plaintiffs therefore have wholly failed to state their ATA claim, and that claim must be dismissed.

### 3.   Alien Tort Claims Act (Count 4).

A plaintiff may bring a private cause of action under 28 U.S.C. § 1350 where (i) plaintiff is an alien, (ii) claiming damages stemming from a tort only, (iii) that was committed by the defendant in violation of the law of nations or a treaty of the United States.  See 28 U.S.C. § 1350 (1993); Flores v. S. Peru Copper Corp., 343 F.3d 140, 148-49 (2d Cir. 2003); Kadic v. Karadzic, 70 F.3d 232, 236 (2d Cir. 1995).  As described throughout Part II of this Memorandum, plaintiffs have failed to plead any underlying tort by DMI S.A. from which an ATCA claim might arise, much less a tort in violation of the law of nations.  See Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (without properly alleged link between defendant and specific acts complained of, conclusory allegations of tortious activity are "much too tenuous to support [a] finding of liability").  Moreover, plaintiffs have failed to allege facts sufficient to support accomplice or aiding-and-

---

[13] Indeed, the allegations against DMI S.A. are at least as empty as those asserted -- and found insufficient -- against Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim that DMI S.A. "transferred money for al Haramain," and that subsidiaries of DMI S.A. maintained accounts of now-suspect persons, again without any allegations indicating where, when, why or how DMI S.A. "transferred money" for al Haramain, or any facts indicating that DMI S.A. knew that any other ostensible recipient of banking services was supporting terrorism.  Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  In contrast, plaintiffs claim only that DMI S.A.'s putative Sudanese subsidiaries maintained accounts for al Qaeda members in the mid-1990s, see MDS ¶ 49, and that subsidiaries of DMI S.A. "handled the accounts of" subsequently-designated terrorist financiers, see id. ¶ 22, again without any allegation showing that DMI S.A. or its putative subsidiaries knew that those accounts were held by suspect persons or provided anything other than routine banking services.

abetting liability under the ATCA, which has consistently been held to require that a defendant has *substantially* and *personally* participated in the tort in violation of the law of nations.  See, e.g., <u>Bao Ge v. Li Peng</u>, 201 F. Supp. 2d 14, 21-22 (D.D.C. 2000), <u>aff'd</u>, 2002 WL 1052012 (D.C. Cir. 2002) (dismissing ATCA claim because plaintiffs failed to properly allege corporate defendant substantially participated in alleged wrongful acts); <u>see also</u> <u>In re S. African Apartheid Litig.</u>, 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding aiding-and-abetting liability unavailable under the ATCA); <u>infra</u> Part II.B.7.  Finally, once more, plaintiffs have not properly alleged that any action by DMI S.A. proximately caused their injuries.  <u>See</u> <u>supra</u> Part II.A.

### 4.    <u>Wrongful Death & Survival (Counts 5 & 7).</u>

For plaintiffs to maintain a wrongful death claim under New York law, they must allege, through a properly appointed personal representative, that a defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death.  <u>See</u> N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002).  A survival claim requires the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death.  N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2002); <u>see also</u> <u>Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity</u>, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dep't 1986) ("both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent").  Here, again, plaintiffs have failed to allege any underlying tort by DMI S.A., and plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or survival.  <u>Compare</u> TAC ¶¶ 648-54, 668-70 <u>with</u> <u>Guadagnoli v. Seaview Radiology, P.C.</u>, 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegations); <u>see also</u> <u>De Jesus</u>, 87 F.3d at 70.  Finally, plaintiffs have not properly alleged that any actions by DMI S.A. proximately caused the deaths of the victims of the September 11 attacks.  <u>See</u> <u>supra</u> Part II.A.

### 5.    <u>Negligence and Negligent Infliction of Emotional Distress (Counts 6 & 8).</u>

Because plaintiffs "do not allege or identify a duty owed . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim."  <u>In</u>

re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover, even if some duty could be alleged, the plaintiffs do not allege a breach of any such duty of care by DMI S.A. -- because they allege no wrongful act or omission by DMI S.A. -- or proximate causation of their injuries.

**6.      Intentional Infliction of Emotional Distress (Count 8).**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege (i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) severe emotional distress.  See Howell v. New York Post Co., 81 N.Y.2d 115, 120-22, 612 N.E.2d 699, 702 (1993); Papieves v. Lawrence, 437 Pa. 373, 378-79, 263 A.2d 118, 121 (1970); Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 136-37, 523 S.E.2d 826, 833 (2000).  As noted, plaintiffs' meager allegations against DMI S.A. fail to allege any wrongful conduct, much less any allegation of extreme and outrageous conduct sufficient to give rise to this claim, and conclusory allegations are insufficient as a matter of law to support an IIED claim.  See, e.g., Ruffolo v. Oppenheimer & Co., Inc., 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991); Talmor v. Talmor, 185 Misc.2d 293, 297, 712 N.Y.S.2d 833, 836 (N.Y. Sup. 2000).  Plaintiffs also fail to allege facts that could give rise to an inference of intent or recklessness, or to a finding of proximate causation.  See supra Part II.A.

**7.      Conspiracy and Aiding and Abetting (Counts 9 & 10).**

Plaintiffs' putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort").  [14]  For this reason alone, the plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

---

[14]    Pennsylvania and Virginia also do not recognize either an independent civil conspiracy tort.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31,  2002); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).  Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and

Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting damage or injury.[15]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out *any* of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how [the] conspiracy was formed"); Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts."); and Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-04 (N.Y. 1986) (requiring clear allegation of agreement).  Yet the Complaint and More Definite Statement allege *no* communications or consultations of *any* kind by *any* personnel of DMI S.A.,

---

abetting claim is recognized under Virginia law.  Compare A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

[15]   Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  Cf. Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

much less communications or consultations from which one might infer the company's assent to a conspiracy whose "quest [was] to attack the United States." See TAC ¶ 680.  Furthermore, plaintiffs allege *no* overt acts by DMI S.A. in furtherance of the purported conspiracy whatsoever.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their conclusory allegation that DMI S.A. participated in any conspiracy.

Similarly, plaintiffs have not properly alleged aiding and abetting.  To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.  See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that defendants had knowledge of the misconduct and substantially assisted therein).[16]  Plaintiffs' conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI S.A. Compare TAC ¶ 684 ("Defendants knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

Plaintiffs also cannot found aider and abettor liability upon their allegations that third parties connected to al Qaeda maintained bank accounts at putative indirect subsidiaries of DMI S.A.  See, e.g., TAC ¶ 98; MDS ¶ 49.  There is no allegation that DMI S.A. in any way assisted those third parties, much less that such assistance was substantial.  There is no allegation that DMI S.A. did so knowingly or did anything that could reasonably be read to imply such knowing assistance. Nor is there any allegation that those accounts had anything at all to do with the attacks of September 11.  As a consequence, these attenuated allegations of entirely innocuous conduct by DMI S.A. -- or rather of no conduct at all -- wholly fail to allege "knowing and substantial assistance" of al Qaeda sufficient to support plaintiffs' assertions of aiding and abetting.

---

[16]   The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

8.    **RICO (Counts 11-13).**[17]

Judge Robertson, in Burnett I, dismissed the *Burnett* plaintiffs' RICO claims seeking

personal injury damages for lack of standing.  See Burnett I, 274 F. Supp. 2d at 100-02 ("pecuniary

losses that are derivative of personal injuries are not 'business or property' injuries" for purposes of

RICO standing) (quoting Grogan v. Platt, 835 F.2d 844, 848 (11th Cir. 1988)).  That holding was

clearly correct, see Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984) ("plaintiff must

show a proprietary type of damage"), vacated on other grounds, 473 U.S. 922, 105 S.Ct. 3550 (1985).

Plaintiffs' RICO claims therefore must be dismissed.

Plaintiffs also have failed to state their putative RICO claims against DMI S.A.  To

state such a claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to

their business or property proximately caused by the violation.  The elements of criminal RICO are

"(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern'

(4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or

participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."

Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Additionally, plaintiffs' Section 1962(a)

RICO claim requires an allegation of "injury [resulting] from the defendant's investment of the

racketeering income," In re Sept. 11 Attacks, 349 F. Supp. 2d at 827; plaintiffs' Section 1962(c)

RICO claim requires an allegation that the defendant "had some part in directing the operation or

management of the enterprise," id. at 827-28; and plaintiffs' Section 1962(d) claim requires an

allegation that the defendant was a "central figure" in the underlying scheme.  Dubai Islamic Bank v.

Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).  Where plaintiffs cannot successfully

allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability

can ensue.  See, e.g., Moss, 719 F.2d at 18-19.

---

[17]  Plaintiffs' RICO claims should be dismissed for failure to file a RICO Statement.  See Court's Instructions
For Filing Rico Statement, *available at* http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf ("All
parties asserting [RICO] claims . . ., must file and serve upon the opposing party a RICO Statement . . . within
twenty days of filing the pleading asserting the RICO claim."); Spoto v. Herkimer County Trust, 2000 WL
533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint
based upon their very untimely filing of their . . . RICO statement."); see also Gold v. Fields, 1993 WL
212672, at *5 & n.5 (S.D.N.Y. June 14, 1993) (imposing sanctions for not filing timely RICO Statement).

Once more, plaintiffs' sparse allegations regarding DMI S.A., even if true, would establish *none* of the requisite elements of a civil RICO claim.  Neither the Complaint nor the More Definite Statement allege two or more predicate acts by DMI S.A., or any facts that could show an agreement to commit two or more predicate acts by DMI S.A.  Plaintiffs allege no facts showing that DMI S.A. engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI S.A.'s assent to any alleged RICO conspiracy; no overt acts by DMI S.A. in furtherance of any alleged conspiracy; no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise'; no injury from DMI S.A.'s putative investment of racketeering income; and no indication that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  Compare MDS generally and TAC ¶¶ 97-99 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").  Moreover, as before, plaintiffs have failed to plead proximate causation as to DMI S.A.  See supra II.A.  Plaintiffs thus have completely failed to state any RICO claims against DMI S.A., warranting dismissal of such claims. See e.g., De Jesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also Dubai Islamic Bank, 256 F. Supp. 2d at 164-65 (dismissing § 1962(c) & (d) RICO claims against bank because the "opening of accounts . . . [and] transferring funds . . . do not constitute exerting control over the enterprise" and there were no allegations that bank was a central figure in the alleged scheme); Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim").

**9.    Punitive Damages (Count 14).**

Finally, plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### III
### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have filed four successive Complaints and a More Definite Statement over the course of the last three years; nevertheless, as set forth throughout this Memorandum, their failure to state any of their claims against DMI S.A. is as nearly complete as one could imagine. There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure these defects. Dismissal of plaintiff's claims against DMI S.A., therefore, should ensue with prejudice. See, e.g., Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (denying leave to amend Complaint as futile); In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 (dismissing Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

### CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        September 16, 2005

                                Respectfully submitted,
                                SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                By:_____/s/_____
                                   James J. McGuire (JM-5390)

                                   30 Rockefeller Plaza, 24th Floor
                                   New York, New York 10112
                                   (212) 332-3800

                                   *Attorneys for Defendant*
                                       *DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel