# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
| | ECF Case |

This document relates to:

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-5738
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT SHEIKH SALEH AL-HUSSAYEN

September 20, 2005

## TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND ............................................................ 1

II.  APPLICABLE LAW ................................................................... 3

   A.   The Burden Of Proof In A Jurisdictional Challenge Is On The Party
Claiming Immunity .................................................................. 3

   B.   Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie*
Showing Of Personal Jurisdiction May Be Established Solely By Legally
Sufficient Allegations of Jurisdiction ............................................ 4

   C.   A Motion To Dismiss Under Rule 12(b)(6) Merely Tests The Legal
Feasibility Of The Complaint ...................................................... 5

III. ARGUMENT ........................................................................... 5

   A.   The Plaintiffs' Claims Against Sheikh Al-Hussayen Fall Squarely
Within the  Tortious Act Exception .............................................. 5

   B.   Plaintiffs' Allegations Of Knowledge And Intent Are Sufficient
To Sustain  Causation Under The FSIA ......................................... 7

   C.   The Commercial Activity Exception Confers Jurisdiction
Over Sheikh Al- Hussayen .......................................................... 12

   D.   Sheikh Al-Hussayen Is Subject To The Personal Jurisdiction
Of This Court  ........................................................................ 12

      1.   The FSIA Provides A Statutory Basis For Personal Jurisdiction ................. 12

      2.   Personal Jurisdiction Exists Under New York's Long-Arm Statute ............ 13

      3.   The Exercise Of Jurisdiction Comports With Due Process .......................... 14

         a)   The Defendant Directed His Conduct At The United States .................... 14

         b)   The Defendant Has Extensive Contacts With The United States ............ 15

   E.   The Defendant's Motion To Dismiss For Failure To State A Claim
Should Be Denied .................................................................... 16

      1.   The Complaints Adequately Allege Claims Under The ATA
And Common Law Theories ...................................................... 17

2.   Plaintiffs' Assault, Battery, And Intentional Infliction Of Emotional Distress Claims Are Not Barred By The Statute Of Limitations .................................. 18

3.   Plaintiffs' Civil RICO Claims Are Cognizable ............................................................. 19

4.   Plaintiffs' Negligence And Negligent Infliction Of Emotional Distress Claims Are Viable Against This Defendant .................................................... 21

5.   Plaintiffs' Conspiracy And Punitive Damages Claims Should Not Be Dismissed ............................................................................................................... 22

F.   Plaintiffs Have Properly Served Sheikh Al-Hussayen .................................................... 23

IV.  CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Baisch v. Gallina*
346 F.3d at 376 .......................................................................................20, 21

*Ball v. Metallurgie Hoboken Overpelt, S.A.,*
902 F.2d 194 (2d Cir.), <u>cert. denied</u>, 498 U.S. 854 (1990) ...........................5

*Boim v. Quranic Literacy Institute,*
291 F.3d 1000 (7th Cir. 2002) .....................................................................6, 11

*Bryks v. Canadian Broadcasting Corp.,*
906 F. Supp. 204 (S.D. N.Y. 1995)..................................................................15

*Burger King v. Rudzewicz,*
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)..............................14

*Burnett v. Al Baraka Invest. & Dev. Corp.,*
274 F. Supp. 2d 86, 105 (D.D.C. 2003) .........................................................7

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984)..............................14

*Cargill Int. S.A. v. M/T Pavel DyBenko,*
991 F.2d 1012 (2d Cir. 1993)...........................................................................3

*Chuidian v. Philippine National Bank,*
912 F.2d 1095 (9th Cir. 1990) .......................................................................15

*Conley v. Gibson,*
355 U.S. 41 (1957)..........................................................................................5, 8

*Daliberti v. Iraq,*
97 F. Supp. 2d 38 (D. D.C. 2000) ..................................................................14

*Davis v. Barrett Day Securities, Inc.,*
1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995).........................................15

*De Falco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)..........................................................................20

*DiStefano v. Carozzi North America, Inc.,*
286 F.3d 81 (2d Cir. 2001)...............................................................................5

*Dubai Islamic Bank v. Citibank, N.A.,*
256 F. Supp. 2d 158 (S.D. N.Y. 2003)..........................................................20

*Filus v. Lot Polish Airlines,*
907 F.2d 1328 (2d Cir. 1990)...........................................................................4

*First American Corp. v. Sheikh Zayed bin Sultan Al-Nayhan,*
948 F. Supp. 1107 (D.D.C. 1996) .................................................................15

*First Capital Asset Management v. Satinwood, Inc.,*
385 F.3d 159 (2d Cir. 2004),
<u>citing</u> *Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)...............................20

*First City, Texas-Houston, N.A. v. Rafidian Bank,*
150 F.3d 172 (2d Cir. 1998).............................................................................4

*Flatow v. Islamic Republic of Iran,*
999 F. Supp. 1 (D.D.C. 1998) .......................................................................22

*Friedman v. Hartmann,*
    1994 U.S. Dist. LEXIS 9727 (S.D.N.Y. July 15, 1994) ...............................20

*Geisler v. Petrocelli,*
    616 F.2d 636 (2d Cir. 1980)................................................................5

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) ....................................................6, 10, 11

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation,*
    2004 U.S. Dist. LEXIS 3892 (S.D. N.Y. Mar. 12, 2004) ..........................18

*Johnson v. Nyack Hospital,*
    86 F.3d 8 (2d Cir. 1996)...................................................................18

*Jones v. R.R. Donnelly & Sons Co.,*
    541 U.S. 369 (2004)........................................................................18

*Leatherman v. Tarrant County,*
    507 U.S. 163 (1993).........................................................................8

*Linde, et al v. Arab Bank, PLC,*
    2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. Sept. 2, 2005).......................9, 10

*In re Magnetic Audiotape Antitrust Litigation,*
    334 F.3d 204 (2d Cir. 2003).............................................................5, 15

*Morin v. Trupin,*
    832 F. Supp. 93 (S.D.N.Y. 1993)........................................................21

*Mwani v. Bin Laden,*
    417 F.3d 1 (D.C. Cir. 2005) ..............................................................14

*Pelman v. McDonald's,*
    396 F.3d 508 (2nd Cir. 2005)......................................................8, 12, 17

*Phelps v. Kapnolas,*
    308 F.3d 180 (2d Cir. 2002)........................................................5, 8, 10

*Pugh v. Socialist People's Libyan Arab Jamahiriya,*
    290 F. Supp. 2d 54 (D. D.C. 2003) ....................................................14

*Rasul v. Bush,*
    124 S. Ct. 2686 (2004)....................................................................20

*Rein v. Socialist People's Libyan Arab Jamahiriya,*
    995 F. Supp. 325 (E.D. N.Y. 1998) ...................................................14

*Reiss v. Societe Centrale DuGroupe Des Assurances Nationales,*
    235 F.3d 738 (2d Cir. 2000)...............................................................4

*Robinson v. Malaysia,*
    269 F.3d 133 (2d Cir. 2001).........................................................3, 6, 10

*Saudi Arabia v. Nelson,*
    507 U.S. 349, 123 L. Ed. 2d 47 (1993)............................................3, 4, 10

*Swierkiewicz v. Sorema,*
    534 U.S. 506 (2002)....................................................................3, 7, 8

*In re Terrorist Attacks on September 11, 2001,*
    349 F. Supp. 2d 765 (S.D. N.Y. 2005).............................6, 7, 12, 13, 15, 17

*In Re Terrorists Attacks*, 349 F. Supp. 2d at 805
    (quoting, <u>Chrysler Capitol Corporation v. Sentry Power Corp.</u>,
    778 F. Supp. 1260, 1266, S.D.N.Y. 1991)................................................13

*United States v. Allen,*
   155 F.3d 35 (2d Cir. 1998)......................................................................20
*United States v. Coonan,*
   938 F.2d 1553 (2d Cir. 1991).................................................................19
*United States v. Turkette,*
   452 U.S. 576 (1981)...............................................................................19
*Warren v. District of Columbia,*
   353 F.3d 36 (D.C. Cir. 2004) ..............................................................9, 10
*Wynder v. McMahon,*
   360 F.3d 73 (2d Cir. 2004).......................................................................5
*Yeadon v. New York Transit Authority,*
   719 F. Supp. 204 (S.D. N.Y. 1989).......................................................18

## DOCKETED CASES

*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279...........................................1

*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978.....................................1

*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105.............1

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.,*
   No. 03-CV-5738 ..................................................................................1

*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280 ....................................1

## FEDERAL STATUTES

28 U.S.C. § 1330(b) ...........................................................................12

28 U.S.C. § 1605(a)(5).........................................................................6

28 U.S.C. § 1605(a)(7).........................................................................12

18 U.S.C. §§ 1962(a) ...........................................................................19

137 Cong. Rec. 54511 04 (April 16, 1991) ......................................18

Fed. R. Civ. P. 8 ...................................................................................3

Fed. R. Civ. P. 8(a) ...........................................................................7, 8

Fed. R. Civ. P. 9(b) ...............................................................................8

I.      **FACTUAL BACKGROUND**

Plaintiffs in the above referenced actions ("Plaintiffs") have named Sheikh Saleh Al-Hussayen ("Sheikh Al-Hussayen") as a defendant, based on his longstanding sponsorship and support of al Qaida's global jihad.[1]

Sheikh Al-Hussayen has maintained a long career as a government official for the Kingdom of Saudi Arabia, holding positions with the Ministry of Finance and National Economy (1961-1971), the Council of Prime Ministers (1971-1974), and other appointed positions with government sponsored organizations (1974-2002).  In March 2002, six months after the September 11th attack, King Fahd bin Abdulaziz al Saud appointed Sheikh Al-Hussayen as the General President of the Committee of the Two Holy Mosques.  Despite this seemingly reputable career with the Saudi government, Sheikh Al-Hussayen's actions have been anything but admirable.  Plaintiffs have compiled evidence showing that Sheikh Al-Hussayen provided material support to Osama Bin Laden and al Qaida, knowing that al Qaida's terrorist agenda was to attack the United States and its interests abroad.

For instance, Sheikh Al-Hussayen has actively supported co-defendant Islamic Association of North America ("IANA"), a radical Islamic organization in Ypsilanti, Michigan. IANA was incorporated in Colorado in 1993 and has since used a number of media outlets to spread its intolerant, often violent, Wahhabist message including a number of websites, a 1-800 fatwa resource line, a radio station, and a quarterly magazine.  IANA solicits donations widely throughout the United States and abroad and has come under a great deal of scrutiny and investigation for its clear advocacy of militant Islamic jihad and its funneling of money to al Qaida and affiliated organizations.  Mohammed al-Ahmari, IANA President and Chairman, said

---

[1] Sheikh Al-Hussayen is a defendant in all of these cases.  The allegations against him are set forth in the most recent Complaints in each case.  For purposes of this Opposition, Plaintiffs adopt the allegations from one another's pleadings, and request leave to amend their Complaints to include any omitted allegation the Court deems material in deciding this Motion.

in an interview to the *New York Times* in 2001 that half of IANA's money comes from the Saudi government and other half primarily from Saudi donors.

In September 1998, Sheikh Al-Hussayen transmitted two checks totaling $100,000.00 to his nephew, co-defendant Sami al-Hussayen.[2]  These checks were subsequently forwarded to the IANA.  In addition, Sheikh Al-Hussayen has traveled to the United States on trips sponsored by the IANA.  He traveled to the United States on an IANA fundraising mission to the United States in the weeks leading up to the September 11, 2001 attack.  In August 2001, he arrived in New York City and was given a tour of the city, including the vicinity of the World Trade Center Towers.  He then traveled to Chicago, Detroit and Canada, meeting with IANA officials and with officials from other charities.  Saudi embassy officials have declared that they consider IANA a radical organization affiliated with the Muslim Brotherhood.  *See* Susan Schmidt, "Spreading Saudi Fundamentalism in U.S.," *The Washington Post*, p. A1, October 2, 2003.

Even more disturbing is the connection between Sheikh Al-Hussayen and several of the September 11th hijackers.  On September 6, 2001, Sheikh Al-Hussayen arrived in Herndon, VA.  Then, just days before the September 11th attack, Sheikh Al-Hussayen switched from his original hotel to the Marriott Residence Inn in Herndon, just a few miles away.  The Marriott Residence Inn in Herndon is the same hotel where at least three of the American Airlines Flight 77 hijackers stayed before September 11, 2001.  The following morning these men hijacked Flight 77 and crashed the airliner into the Pentagon.  Following the attacks, the FBI attempted to interview Sheikh Al-Hussayen in his hotel room.  According to the FBI, the interview came to an abrupt end when he feigned a seizure, prompting the agents to take him to a hospital where the

---

[2] Sami al-Hussayen was employed by the IANA to create and maintain websites and other internet media which were intended to recruit personnel and raise funds for violent jihad.  From March 1995 until February 2002, IANA received $3,000,000.00 in financial support from Sami al-Hussayen resources.  He was indicted by the U.S. Government on January 9, 2004 for providing material support and resources to terrorists.

attending physicians found nothing wrong with him." The FBI was successful in interviewing Sheikh Al-Hussayen's wife and the couple left the country shortly thereafter.

Sheikh Al-Hussayen also spent five years as a member of the Sharia Board at Al Rajhi Banking & Investment Company. Al Rajhi has long provided financial services and other forms of material support to terrorist organizations and has served as one of al Qaida's preferred banks for many years, maintaining accounts for many of the Saudi charitable organizations that operate within al Qaida's infrastructure, including but not limited to, the International Islamic Relief Organization, the Muslim World League, the World Association of Muslim Youth, Benevolent International Foundation, and Al Haramain Islamic Foundation.

## II.   APPLICABLE LAW

### A.   The Burden Of Proof In A Jurisdictional Challenge Is On The Party Claiming Immunity

Consistent with Fed. R. Civ. P. 8, a plaintiff in an FSIA case need only provide the defendant with a "short and plain statement of the claims showing that the plaintiff is entitled to relief" sufficient to "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002). In responding to the Complaint, a defendant seeking FSIA immunity must present a *prima facie* case that it is a foreign sovereign, entitled to the protections of the FSIA. Cargill Int. S.A. v. M/T Pavel DyBenko, 991 F.2d 1012, 1016 (2d Cir. 1993). In the event that the defendant makes such a showing, the burden of production shifts to the plaintiff to come forward with allegations *or* evidence which, if proven, would bring the plaintiff's claims within one of the exceptions to immunity set forth in the FSIA. Robinson v. Malaysia, 269 F.3d 133, 141-43 (2d Cir. 2001).

In deciding a motion to dismiss based on the FSIA prior to discovery, the court must accept as true the factual allegations and any evidence proffered by the plaintiff in support of jurisdiction. Saudi Arabia v. Nelson, 507 U.S. 349, 351, 123 L.Ed.2d 47 (1993) ("Because this

case comes to us on a motion to dismiss the complaint, we assume we have truthful factual allegations before us, though many of those allegations are subject to dispute.") (internal citations omitted).  To the extent the defendant challenges the accuracy of those factual allegations, and the court determines that the resolution of any fact in dispute is necessary to determine the availability of jurisdiction under the FSIA, the plaintiff must be afforded an opportunity to complete discovery relative to that disputed factual contention.  First City, Texas-Houston, N.A. v. Rafidian Bank, 150 F.3d 172, 177 (2d Cir. 1998); Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990).  Upon completion of discovery, the Court should normally "afford the parties the opportunity to present evidentiary material at a hearing on the question of FSIA jurisdiction."[3]  Reiss v. Societe Centrale DuGroupe Des Assurances Nationales, 235 F.3d 738, 748 (2d Cir. 2000).  The district court should not, under any circumstances, seek to resolve disputed issues of fact based on an evaluation of the perceived strength or credibility of the allegations or evidence offered by the parties in support of their respective positions prior to discovery.  Nelson, 507 U.S. at 351.

> **B.** **Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations of Jurisdiction**

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

---

[3] Consistent with these authorities, Plaintiffs request the opportunity to conduct discovery as to any disputed fact the Court deems material to the FSIA jurisdictional analysis, and to present evidence at a hearing on the question of FSIA jurisdiction.

[citations omitted].  At that point, the *prima facie* showing must be factually supported.

Ball v. Metallurgie Hoboken Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990).   Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2), a plaintiff need only present allegations that connect the defendant with the applicable forum, here, the United States.  In deciding such a motion, the plaintiff's jurisdictional averments must be taken as true.  Id.; In re  Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003).  Moreover, the court must construe the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor.  DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001).

### C.    A Motion To Dismiss Under Rule 12(b)(6) Merely Tests The Legal Feasibility Of The Complaint

A motion to dismiss under Rule 12(b)(6) must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam).  The court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In evaluating whether Plaintiffs ultimately could prevail, the court must accept as true the allegations of the pleadings and draw all reasonable inferences in Plaintiffs' favor.  Wynder, 360 F.3d at 78; Phelps, 308 F.3d at 184.

## III.    ARGUMENT

### A.    The Plaintiffs' Claims Against Sheikh Al-Hussayen Fall Squarely Within the Tortious Act Exception

For purposes of the sovereign immunity analysis, Plaintiffs concede that Sheikh Al-Hussayen is a government official and/or instrumentality of the Kingdom within the meaning of

the FSIA.  However, because Plaintiffs' claims fall within the FSIA's tortious act exception, the limited protections of the FSIA do not serve to immunize this defendant from the subject matter jurisdiction of this Court.  The tortious act exception confers jurisdiction over a foreign sovereign in any case:

> in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state  acting within the scope of his office or employment…

28 U.S.C. § 1605(a)(5).

As this Court has recognized already, the test used to determine whether a defendant's conduct falls within the tortious act exception of the FSIA in the 2nd Circuit is "whether the defendant's alleged acts were tortious under the laws of New York, and if so, whether the defendant's acts were discretionary."  In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 794 (S.D. N.Y. 2005).  Further, New York law has long recognized tort claims based in conspiracy and aiding and abetting theories.  Id. at 797.[4]  Thus, where a plaintiff's complaint adequately alleges that a defendant aided and abetted or conspired in a tort which causes injury in New York, and the underlying misconduct does not involve the exercise of a valid discretionary governmental function,[5] the court possesses subject matter jurisdiction over the claim under the tortious act exception to the FSIA.  Robinson, 269 F.3d at 142.

The Complaints seek to impose liability on Sheikh Al-Hussayen for personal injuries, wrongful deaths and property damage resulting from the September 11th Attack, based on his

---

[4] In so holding, the Court implicitly found that victims of terrorist acts may sustain tort claims against foreign sovereigns who sponsored the responsible terrorist organization, directly or indirectly, pursuant to the standards announced in Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983)  or Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1023 (7th Cir. 2002) ("Boim II").  See  In re Terrorist Attacks, 349 F. Supp. 2d at 800.
[5] This defendant does not argue that his sponsorship of al Qaida involved the exercise of a discretionary governmental function, so the analysis of jurisdiction under the tortious act exception merely requires the Court to determine whether plaintiffs have alleged that the defendant committed a tort under the liberal pleading requirements of Rule 8(a)(2).

knowing participation in al Qaida's conspiracy to attack America, and material aiding and abetting of bin Laden's terror network.  The Complaints further allege that the September 11th Attack was a direct, intended and foreseeable product of the conspiracy in which the defendant knowingly participated.  Thus, Plaintiffs' claims fall squarely within the tortious act exception under the standards enunciated above.

**B.      Plaintiffs' Allegations Of Knowledge And Intent Are Sufficient To Sustain Causation Under The FSIA**

In an effort to avoid application of the tortious act exception, Sheikh Al-Hussayen argues only that Plaintiffs fail to adequately allege causation under the FSIA.  In making this argument, this defendant does not dispute this Court's earlier holdings that jurisdictional causation under the FSIA is satisfied by pleading "proximate causation," In re Terrorist Attacks, 349 F. Supp. 2d at 797 n. 26 (S.D. N.Y. 2005), and that "[a]ny terrorist attack, including the September 11 attacks, might have been the natural and probable consequence of knowingly and intentionally providing financial support to al Qaida…"  Id. at 797 (quoting Burnett v. Al Baraka Invest. & Dev. Corp., 274 F. Supp. 2d 86, 105 (D.D.C. 2003) ("Burnett I")).  Rather, the defendant's causation argument is predicated entirely on his contention that Plaintiffs are required to, but do not, allege "facts showing that the Sheikh Al-Hussayen … knowingly supported terrorists." Motion to Dismiss at pp. 7-8.

As will be demonstrated below, the defendant's causation argument is predicated entirely on a fundamentally flawed principle – the belief that Plaintiffs' claims are subject to a heightened pleading standard under which Plaintiffs are required to present detailed factual allegations regarding a defendant's state of mind.

The Federal Rules of Civil Procedure establish an extremely permissive "notice pleading" standard.  Fed. R. Civ. P. 8(a); Swierkiewicz, 534 U.S. at 512-13.  Under Rule 8(a)(2), a complaint only need include "a short and plain statement of the claim showing that the pleader

is entitled to relief" sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (quoting Conley, 355 U.S. at 47). In the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69(1993). In keeping with this concept, Rule 9 expressly provides that "malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

In its decisions in the post Swierkewicz era, the Second Circuit has consistently and uniformly applied these clear standards and held that a plaintiff is not required to plead particularized facts regarding a defendant's state of mind. For example, in Phelps, the Second Circuit reversed a district court ruling which had dismissed a complaint for failure to plead specific facts in support of allegations of the defendant's knowledge, holding instead that such a heightened pleading standard was "unwarranted" under Fed. R. Civ. P. 8(a). Phelps, 308 F.3d at 186. "A plaintiff's allegation of knowledge is itself a particularized factual allegation, which he will have the opportunity to demonstrate at the appropriate time 'in the usual ways'." Id. at 187 n. 6 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). As the Phelps court further instructed: "However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference," holding that the weight of the evidence should instead be assessed at the time of summary judgment proceedings. Phelps, at 186-87; see also Pelman v. McDonald's, 396 F.3d 508 (2nd Cir. 2005) (rejecting district court's efforts to impose heightened pleading standard for causation element of plaintiff's claim).

In <u>Warren v. District of Columbia</u>, 353 F.3d 36 (D.C. Cir. 2004), the D.C. Circuit employed nearly identical reasoning in reversing the dismissal of a complaint in which the plaintiff had failed to plead "facts" establishing knowledge.  Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held:  "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of law as true, conclusions of fact are another matter."  <u>Id</u>. at 39 (<u>citing</u> 5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990)).

More recently, in <u>Linde, et al v. Arab Bank, PLC</u>, 2005 U.S. Dist. Lᴇxɪs 18864 (E.D. N.Y. Sept. 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's invitation to impose a heightened pleading requirement in a case presenting claims nearly identical to those at issue here.  In <u>Linde</u>, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations.  <u>Id</u>. at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent."  <u>Id</u>. at *42.  The Court rejected this argument, reasoning that Arab Bank was attempting to impose a heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not alleged sufficient facts to establish an evidentiary basis for their allegations of knowledge and intent, defendant simply misapprehends the pleading standard.  It is not entitled to dismissal based on the argument that plaintiff's must plead more than the requisite knowledge and intent, either as to their substantive claims or their claims of aiding and abetting a conspiracy.

Id.  The Linde court likewise rejected the defendant's contention that plaintiffs were required to allege that senior officials of the bank were aware of the misconduct underlying plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof."  Id. at *50.

Consistent with the Federal Rules of Civil Procedure and holdings of the Phelps, Warren and Linde courts, Plaintiffs have met their pleading burden relative to the scienter element of their conspiracy and aiding and abetting claims, and therefore adequately alleged the defendant's involvement in the tort giving rise to their injuries.  At this early stage of the litigation, Plaintiffs' consistent averments that Sheikh Al-Hussayen acted "knowingly" are sufficient under the Federal Rules of Civil Procedure to allow these claims to proceed.  That this defendant seeks dismissal under the FSIA does not alter this analysis.  Once again, Plaintiffs' allegations of knowledge and intent constitute "particularized factual allegations."  Phelps, 308 F.3d at 187.  Pursuant to the Supreme Court's explicit holding in Nelson, those factual allegations must be accepted as true in deciding the defendants' FSIA motion.  Nelson, 507 U.S. at 351; see also Robinson, 269 F.3d at 141-43 (holding that plaintiffs may meet burden of production in response to motion to dismiss under FSIA solely through allegations).   Thus, the sole argument this defendant raises in opposition to the tortious act exception is devoid of merit.

Even assuming Plaintiffs' claims were subject to a heightened pleading standard requiring them to present particularized descriptions of their proofs at this stage of the litigation, dismissal would be improper, as the pleadings do in fact articulate details of each element of the conspiracy and aiding and abetting claims, including the defendants' knowledge.   Under Halberstam, a plaintiff must plead the following elements to sustain a claim for civil conspiracy: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful

10

act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the overall scheme.  Halberstam, 705 F.2d at 477.  The Halberstam court described the elements of aiding and abetting as: "(1) the party whom the defendant aids must perform a wrongful act that causes injury; (2) the defendant must be generally aware of his role as part of an overall illegal and tortious activity at the time he provides the assistance; (3) the defendant must knowingly and substantially assist in the principal violation."  Id.  Under Boim II, a defendant may be held liable where that defendant: (1) knows that a party to whom he is providing support or assistance is engaged in illegal activities; (2) desires to help those activities succeed; and (3) engages in some act of helping the illegal activities.  Boim II, 291 F.3d at 1023.[6]

The specific allegations of the Complaints, as supplemented by the additional evidence submitted in support of this Opposition, satisfy the standards of both Halberstam and Boim II, even under the erroneous pleading standard advocated by the defendant.  Among other things, the Plaintiffs allege that Sheikh Al-Hussayen knowingly provided financial support to al Qaida through Al Rajhi Banking & Investment Company and his relationship with the IANA.  See Plaintiffs' allegations set forth in Factual Background supra.  Furthermore, al Qaida was a well known terrorist organization at the time Sheikh Al-Hussayen supported the organization, which had publicly and repeatedly targeted the United States.  In short, the pleadings allege that the defendant was directly and intimately involved in advancing the agenda of a known terrorist organization that had publicly declared its intention to conduct terrorist attacks against the United States.  These allegations clearly satisfy both Halberstam and Boim II.  Moreover, to the extent the Court finds the allegations against Sheikh Al-Hussayen are in any way deficient, the

---

[6] While Boim II involved claims under the Antiterrorism Act (ATA), it is properly read as setting forth the standards for establishing liability over sponsors of terrorism under common law concerted action theories.  Indeed, in enacting the ATA, Congress sought to extend liability over terrorist sponsors to the furthest reaches of the common law.  Boim II, 291 F.3d at 1011.

appropriate remedy is to require Plaintiffs to file more definite statements pursuant to Rule 12(e), and not to dismiss the action.  Pelman v. McDonald's, 396 F.3d 508, 512 n. 5 (2nd Cir. 2005).

**C.      The Commercial Activity Exception Confers Jurisdiction Over Sheikh Al-Hussayen**

The Plaintiffs allege that certain of the support Sheikh Al-Hussayen provided to al Qaida constitutes money laundering, and that subject matter jurisdiction exists for claims arising from such money laundering activities under the FSIA's commercial activity exception.   As the Court has already considered and decided this issue as a matter of law, the Plaintiffs incorporate by reference the detailed discussion presented in their Opposition to the SJRC's Motion to Dismiss, in lieu of restating it herein.[7]

**D.      Sheikh Al-Hussayen Is Subject To The Personal Jurisdiction Of This Court** [8]

Sheikh Al-Hussayen contests this Court's authority to exercise personal jurisdiction over him on two grounds.  First, he argues that the requirements of New York's Long-Arm Statute are not satisfied, and that this Court consequently lacks a valid statutory basis to exercise personal jurisdiction.  Second, he asserts that the exercise of jurisdiction over him would not comport with the due process requirements of the Constitution.  Both of these arguments are meritless.

**1.      The FSIA Provides A Statutory Basis For Personal Jurisdiction**

Because Sheikh Al-Hussayen claims status as an "instrumentality" of Saudi Arabia for purposes of this action, this Court need not even consider the arguments he advances regarding the applicability of New York's Long-Arm Statute.  Under the FSIA, personal jurisdiction is satisfied so long as the court possesses subject matter jurisdiction and the defendant has been served validly.  See  28 U.S.C. § 1330(b).  Sheikh Al-Hussayen was validly served pursuant to

---

[7] Plaintiffs do not seek to invoke the exception to immunity set forth in 28 U.S.C. § 1605(a)(7) as to this defendant, and therefore do not respond to their arguments relating to that exception herein.  However, to the extent these defendant intended to argue that § 1605(a)(7) is the exclusive exception available for the claims asserted in these consolidated proceedings, this Court already has held otherwise.  In re Terrorist Attacks, 349 F. Supp. 2d at 796.

[8] Plaintiffs incorporate by reference the arguments presented by Plaintiffs on this issue during the October 12, 2004 hearing before the Court.

this Court's September 15, 2004 Order as discussed herein.  The FSIA thus provides a valid statutory basis for personal jurisdiction over this defendant.[9]

### 2.    Personal Jurisdiction Exists Under New York's Long-Arm Statute

In addition to being irrelevant given the personal jurisdiction provisions of the FSIA, the defendant's arguments regarding the applicability of New York's Long-Arm Statute are simply wrong.  As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)."  In Re Terrorists Attacks, 349 F. Supp. 2d at 805 (quoting, Chrysler Capitol Corporation v. Sentry Power Corp., 778 F. Supp. 1260, 1266, S.D.N.Y. 1991).

For the reasons set forth above, Plaintiffs have adequately alleged that Sheikh Al-Hussayen was an active and knowing participant in al Qaida's conspiracy to attack America.  Without question, those who knowingly contribute to a terrorist organization do so in order to see the organization successfully carry out terrorist attacks.  Indeed, in recognition of that fact, the United States Government has declared that those who support terrorists are as culpable as those who carry out the attacks.  Thus, the operatives who carried out the September 11th Attack necessarily were acting for the benefit of al Qaida's material sponsors and supporters, and the New York Long-Arm Statute consequently provides a statutory basis for exercising personal jurisdiction over al Qaida's co-conspirators, including Sheikh Al-Hussayen.[10]

---

[9] The defendant's failure to address jurisdiction under the FSIA, and decision to include meritless arguments regarding the New York Long-Arm Statute, is curious at best.  In this regard, it should be noted that other agencies of the Kingdom, including the Saudi Joint Relief Committee for Kosovo and Chechnya, have explicitly recognized that the FSIA provides the statutory framework for evaluating personal jurisdiction over foreign sovereigns.

[10] The Plaintiffs have asserted claims against this defendant under the ATA and Civil RICO, both of which include nationwide service of process provisions.  As such, the exercise of personal jurisdiction also is authorized under Fed. R. Civ. P. (4)(k)(1)(D), provided that the exercise of jurisdiction comports with due process.  For the reasons set forth in greater detail in Sections D2 and D3, the exercise of personal jurisdiction over this defendant does comport with due process.

### 3.     The Exercise Of Jurisdiction Comports With Due Process

The defendant's assertion that the exercise of personal jurisdiction over him would violate due process is equally unconvincing.  The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice.  Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).  Under these standards, due process considerations are satisfied so long as the defendant has "fair warning" that he may be haled into court in the forum to respond for his actions.  Burger King v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In an action involving harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  Calder, 465 U.S. at 788.  Consistent with this principle, the courts have found that due process is not violated by the exercise of jurisdiction over those who deliberately target our citizens.  Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F.Supp.2d 54 (D. D.C. 2003); Daliberti v. Iraq, 97 F. Supp. 2d 38, 54 (D. D.C. 2000); Rein v. Socialist People's Libyan Arab Jamahiriya, 995 F. Supp. 325 (E.D. N.Y. 1998); Mwani v. Bin Laden, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaida and its co-conspirators have "engaged in unabashedly malignant actions directed at and felt in" the United States). [11]

### a)     The Defendant Directed His Conduct At The United States

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction over Sheikh Al-Hussayen, pursuant to the applicable standards set forth above.  As described above, the defendant, for a period of many years, directly channeled financial and logistical support to al Qaida through Al Rajhi his relationship with the IANA.

---

[11] Although the Second Circuit has held that foreign states are entitled to the protections of the due process clause, the Supreme Court has not yet addressed the issue.  Plaintiffs recognize that this Court is bound by Second Circuit precedent, but reserve their right to argue, on any potential appeal, that the defendant is not entitled to due process protections in the event that they are deemed agencies and/or instrumentalities of Saudi Arabia.

These facts plainly establish that Sheikh Al-Hussayen has, for a period of many years, directly supported al Qaida.

In knowingly sponsoring and directly participating in al Qaida's campaign to attack America, the defendant necessarily directed his conduct at the United States, as it has been publicly known, since at least the mid-1990's, that al Qaida was engaged in a global campaign of terror directed against the United States. In re Terrorist Attacks, 349 F. Supp. 2d at 813 ("This Court's record…contains many examples of Osama bin Laden's and al Qaida's public targeting of the United States"). Thus, the exercise of jurisdiction over the defendant for claims arising from his sponsorship of al Qaida complies with due process.[12]

   **b)**   **The Defendant Has Extensive Contacts With The United States**

Moreover, the defendant has extensive contacts with the United States, sufficient to sustain a *prima facie* case of personal jurisdiction under general jurisdiction standards.

In arguing that he is entitled to the protections of the FSIA in this litigation, Sheikh Al-Hussayen is representing to this Court that he is an official of the Kingdom, and that the claims against him arise from actions undertaken by him in his official capacity. Under such circumstances, a suit against a foreign official is viewed to be the "practical equivalent" of a suit against the sovereign itself. Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1099-1103 (9th Cir. 1990); Bryks v. Canadian Broadcasting Corp., 906 F. Supp. 204, 210 (S.D. N.Y. 1995); First American Corp. v. Sheikh Zayed bin Sultan Al-Nayhan, 948 F. Supp. 1107, 1120 (D.D.C. 1996). Thus, the relevant contacts for jurisdiction purposes are those of the Kingdom of Saudi Arabia as a whole, and not simply those of Sheikh Al-Hussayen as an individual. As it is beyond dispute that the Kingdom maintains pervasive and ongoing contacts with the United States,[13] the exercise

---

[12] Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation. In Re Magnetic Audiotape Antitrust Litig., 334 F.3d at 208; see also Davis v. Barrett Day Securities, Inc., 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

[13] Notably, the Kingdom has not contested personal jurisdiction in these proceedings.

of jurisdiction over Sheikh Al-Hussayen as an official of the Kingdom comports with due

process.

      **E.**      **The Defendant's Motion To Dismiss For Failure To State A Claim Should Be Denied**

      Sheikh Al-Hussayen also moves pursuant to Rule 12(b)(6), for dismissal of Plaintiffs'

individual causes of action for failure to state a claim upon which relief can be granted. At the

outset, the defendant argues that all of Plaintiffs' statutory and common law claims should be

dismissed because, in his view, Plaintiffs "have not pled sufficient facts showing that the Sheikh

Al-Hussayen's acts proximately caused plaintiffs' injuries." Motion to Dismiss at p. 12. In

addition to this general argument, the defendant raises individual challenges under Rule 12(b)(6)

to several of the causes of action. While cast as separate theories of dismissal, most of these

"particularized" 12(b)(6) arguments merely restate the defendant's general argument regarding

the sufficiency of Plaintiffs' pleadings. For the reasons set forth below, none of the arguments

advanced by Sheikh Al-Hussayen under Rule 12(b)(6) have merit.

      The defendant's general challenge to causation under Rule 12(b)(6) is identical to the

causation argument he advances under the FSIA, and plagued by the same fundamental

misunderstanding of the applicable pleading requirements. In his motion, the defendant argues

Plaintiffs have failed to adequately support their allegations of proximate causation under

concerted action theories, on the ground that Plaintiffs have failed to plead sufficient facts to

demonstrate that this defendant acted knowingly in supporting Al Qaida. However, for the

reasons detailed in Section III B above, Plaintiffs' express allegations that Sheikh Al-Hussayen

acted knowingly and intentionally constitute particularized factual allegations, which must be

accepted as true at this stage of the proceedings. Those factual allegations regarding the

defendant's knowledge and intent are sufficient to meet Plaintiffs' burden to plead the scienter

element of their concerted action theories under the liberal notice pleading requirements of the

Federal Rules of Civil Procedure.  Consequently, the defendant's causation argument, which rests entirely upon the theory that Plaintiffs have not adequately alleged the defendant's knowledge or intent, must be rejected.[14]

### 1.     The Complaints Adequately Allege Claims Under The ATA And Common Law Theories

The "separate" argument that Sheikh Al-Hussayen advances in favor of dismissal of Plaintiffs' statutory claim under the ATA, and common law wrongful death, survival, intentional infliction of emotional distress and trespass claims, are in fact mere recitations of his 12(b)(6) causation argument.  In particular, the defendant asserts that Plaintiffs' ATA claims should be dismissed because Plaintiffs have failed to "show knowledge of and an intent" to further al Qaida's criminal endeavors.  Motion to Dismiss at p. 15.  Similarly, the defendant urges this Court to dismiss Plaintiffs' common law tort claims for wrongful death and survival on the ground that Plaintiffs' have not "pled any facts to support an allegation that Sheikh Al-Hussayen" knowingly supported al Qaida.  Motion to Dismiss at p. 16.  As to Plaintiffs' intentional infliction of emotional distress claims, the defendant asks this Court to find that Plaintiffs have failed to plead "sufficient facts" relating to the defendant's intent.  Motion to Dismiss at p. 17.  The defendant's Motion to Dismiss Plaintiffs' property damage claims is predicated on the same theory, and the baseless contention that the conspiracy alleged in the Complaints is "vague."  Motion to Dismiss at p. 19.

This Court already has ruled that Plaintiffs state valid ATA and common law claims against defendants in this litigation by adequately alleging that those defendants aided and abetted, or conspired with, al Qaida.  In re Terrorist Attacks, 349 F. Supp. 2d at 829-30.  For the reasons set forth above, Plaintiffs have met that burden with respect to Sheikh Al-Hussayen.

---

[14] For the reasons set forth in Section III B, Plaintiffs submit that they have adequately pled all causes of action, even under the improper pleading standard the defendants' advocate.  Moreover, to the extent there exists any deficiency in Plaintiffs' pleadings, the proper course is to require Plaintiffs to file a More Definite Statement.  Pelman, 396 F.3d at 512, n. 5.

Accordingly, the defendant's motion to dismiss Plaintiffs' ATA and common law claims for alleged pleading deficiencies should be denied.

### 2. Plaintiffs' Assault, Battery, And Intentional Infliction Of Emotional Distress Claims Are Not Barred By The Statute Of Limitations

Contrary to the defendant's assertion, the Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred. At this stage of these proceedings, the substantive law governing most of the claims remains to be determined. As such, it would be manifestly premature to dismiss Plaintiffs' assault, battery and intentional infliction of emotional distress claims, under the mere assumption that the law of New York law applies. See 42 Pa.C.S. § 5524 (2005) (establishing two year limitation period for assault, battery and intentional tort claims under Pennsylvania law); Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369 (2004) (holding that federal common law claims arising under Act of Congress after 1990 are governed by a four year limitations period).[15]

Moreover, all of Plaintiffs' claims arise from the defendant's participation in the conspiracy to conduct terrorist attacks against the United States, a conspiracy designed to hide the identity of the participants from disclosure to the outside world. As a result, the statute of limitations was tolled until Plaintiffs reasonably should have become aware of the defendant's involvement within the conspiracy, itself a question of fact to be determined through discovery. Yeadon v. New York Transit Authority, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); In re Issuer Plaintiff Initial Public Offering Antitrust Litigation, 2004 U.S. Dist. Lexis 3892 at *17-18 (S.D. N.Y. Mar. 12, 2004). Given the clandestine nature of the conspiracy in which Sheikh Al-Hussayen participated, equitable principles require that the statute of limitations be tolled. See Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows

---

[15] The ATA imports "the remedies of American tort law," 137 Cong. Rec. 54511 04 (April 16, 1991), thus giving rise to federal common law assault, battery and intentional infliction of emotional distress claims thereunder. On this point, Plaintiffs refer the Court to the discussion included in their Consolidated Opposition to the Motion to Dismiss of Perouz Sedaghaty at pp. 16-17, incorporated herein by reference.

courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[16]

### 3.       Plaintiffs' Civil RICO Claims Are Cognizable[17]

The defendant seeks to dismiss the civil RICO claims of all Plaintiffs on the grounds that "active management or operation" of the Enterprise has not been alleged, nor were the defendants alleged to be "central figures" in the al Qaida Movement.  These assertions misstate the law.[18]

Plaintiffs' complaints and RICO Statements assert RICO claims against Sheikh Al-Hussayen pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).  The enterprise - the al Qaida movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  Its well documented purpose is to perpetrate acts of terrorism.  Thus, Plaintiffs have sufficiently pled that al Qaida is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs further allege that Sheikh Al-Hussayen engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or

---

[16]  Arguably, they are also extended by way of action of the New York Survival cause of action, which the New York legislature specifically extended from 2 years to 2.5 years for 9/11 cases.  See N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).

[17]  The defendant challenges the standing of the *Burnett* Plaintiffs to pursue RICO claims.  Those Plaintiffs do not intend to pursue those claims at this time, and therefore do not address the defendant's standing argument herein.

[18]  As a preliminary matter, defendant argues that Plaintiffs in all cases other than *Federal* are barred from pursuing RICO claims, because they have not filed RICO Statements applicable to the defendant.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Adnan Basha, n. 10.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, Plaintiffs allege that Sheikh Al-Hussayen knowingly provided financial support to al Qaida.  *See* Plaintiffs' allegations set forth in Factual Background *supra*.  As the Supreme Court has explicitly recognized that al Qaida's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, Plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

The defendants are correct that a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise.  Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003).  However, such "discretionary authority" generally has been described as "a relatively low hurdle for plaintiffs to clear" in the Second Circuit.  See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004), citing Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003); De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001) and United States v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998).  Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." Friedman v. Hartmann, 1994 U.S. Dist. LEXIS 9727, at *4 (S.D.N.Y. July 15, 1994).  Through discovery, this allegation will be further substantiated.

"[T]he requirements for RICO's conspiracy charges under 1962(d) are less demanding." Baisch, 346 F.3d at 376.  All that is required is that the conspirator "intend to further an endeavor

which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77 (quoting Salinas v. United States, 522 U.S. 52, 65 (1997)).  "Although parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)."  Morin v. Trupin, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

The Plaintiffs have satisfied the pleading standards applicable to their §§ 1962(a), 1962(c), and 1962(d) claims, as set forth above.  Plaintiffs allege that Sheikh Al-Hussayen knowingly provided financial services to al Qaida.

### 4.     Plaintiffs' Negligence And Negligent Infliction Of Emotional Distress Claims Are Viable Against This Defendant

The United Nations has adopted numerous Resolutions addressing the duties and obligations of the international community with regard to the problem of terrorism financing.  In 1996, the U.N. General Assembly adopted Resolution 51-210, which expressly calls upon all states "to take steps to prevent and counter-act, through appropriate domestic measures, the financing of terrorists and terrorist organizations, ***whether such financing is direct or indirect through organizations which also have or claim to have charitable, social or cultural goals***…."  G.A. Res. 51-210, U.N. GAOR, 51st Sess. (1996) (emphasis supplied).  The *International Convention for the Suppression of the Financing of Terrorism,* adopted by the General Assembly as Resolution 54-109 on December 9, 1999, G.A. Res. 54-109, U.N. GAOR, 54th Sess. (1999), contains the same language.

As an instrumentality of the Kingdom, Sheikh Al-Hussayen is charged with responsibility to act in accordance with the duties and obligations imposed upon states by international law, including those embodied in the Resolutions of the United Nations, of which the Kingdom is a member.  The plain language of Resolutions 51-210 and 54-109 required Sheikh Al-Hussayen as a Saudi government official, to take reasonable and appropriate measures to ensure that Saudi

organizations, banks (Al Rajhi), and various Saudi charities were not used as a vehicle for financing terrorists.  Without question, the duties announced in those Resolutions were adopted to protect innocent parties, including the September 11th victims, from violence at the hand of terrorists.  Thus, it is clear that this defendant owed a duty of care to Plaintiffs, giving rise to cognizable claims under negligence theories.

### 5. Plaintiffs' Conspiracy And Punitive Damages Claims Should Not Be Dismissed

Defendant correctly argues that no independent causes of action exist under New York law for conspiracy or punitive damages.  However, at this stage of these proceedings, the substantive law governing each of Plaintiffs' individual claims remains to be determined.  Thus, it would be premature to dismiss those causes of action at this time.  Moreover, there can be little dispute that Plaintiffs' are entitled to recover punitive damages in the event that they prevail against this defendant under the theories advanced.[19]  Under these circumstances, dismissal of the conspiracy and punitive damages counts would be inappropriate.

### F. Plaintiffs Have Properly Served Sheikh Al-Hussayen

Sheikh Al-Hussayen alleges that the Plaintiffs failed to properly serve him in accordance with the Federal Rules of Civil Procedure and that the notices published in the *USA Today, International Herald Tribune, and Al-Quds Al-Arabi* were not proper as a matter of law.  Sheikh Al-Hussayen makes the identical arguments about service by publication made by his co-defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah.  Plaintiffs have addressed each of those arguments in Plaintiffs' Consolidated Memorandum of Law in Opposition to the

---

[19] Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."  *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Plaintiffs prove their allegations that Sheikh Al-Hussayen knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Sheikh Al-Hussayen's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

Motion to Dismiss of Defendants Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah. Rather than repeat those arguments here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.[20]

As demonstrated in Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Sheikh Safer Al-Hawali and Sheikh Salman Al-Oadah, service by publication on Sheikh Al-Hussayen was proper.[21] By its September 15, 2004 Order, this Court agreed that publication in the *USA Today*, *International Herald Tribune*, and the *Al Quds Al Arabi* newspapers was "reasonably calculated" to notify Sheikh Al-Hussayen of the suit against him so as to satisfy due process. Sheikh Al-Hussayen was served by publication in the *USA Today* and *Al Quds Al Arabi* newspapers on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005. Sheikh Al-Hussayen was similarly served in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005. Thereafter, Sheikh Al-Hussayen appeared and filed this motion to dismiss.

In sum, Plaintiffs obtained permission from this Court to serve Sheikh Al-Hussayen by publication. Sheikh Al-Hussayen was served in this manner and in fact received notice of the pendency of the action. The action should not be dismissed for improper service of process.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request Sheikh Al-Hussayen's Motion to Dismiss be denied in all respects, with prejudice.

---

[20] Plaintiffs also incorporate by reference the service argument in the *Burnett* Plaintiffs' Memorandum of Law to Motions to Dismiss of Defendant Saleh Al-Hussayen (June 30, 2004), pp. 5-6.

[21] It is significant to point out that Sheikh Al-Hussayen was represented by counsel in the consolidated action (03 MDL 1570) at the time of the Order permitting publication and was arguably notified that the Plaintiffs intended to serve him in this manner. The MDL docket clearly shows that Ms. Bernabei and Mr. Kabat were counsel of record for Sheikh Al-Hussayen as of March 11, 2004 when this Court signed their *pro hac* admissions and subsequent entry of appearance. *See* MDL 1570 Docket entries #20 and #21. Sheikh Al-Hussayen was sufficiently on notice of the Plaintiffs' claims against him at that time, and has been for the past **18** months.

Respectfully submitted,

| | |
|---|---|
| | COZEN O'CONNOR<br><br><br>BY: _____<br>    Stephen A. Cozen, Esquire<br>    Elliott R. Feldman, Esquire<br>    Sean P. Carter, Esquire<br>    Adam C. Bonin, Esquire<br>    1900 Market Street<br>    Philadelphia, PA 19103<br>    Tele: (215) 665-2000<br>    Fax: (215) 665-2013<br><br>    Attorneys for *Federal Insurance* Plaintiffs |
| Dated: September 20, 2005 | (see above) |
| | Ronald L. Motley, Esq. (RM-2730)<br>Jodi Westbrook Flowers, Esq.<br>Donald A. Migliori, Esq.<br>Michael Elsner, Esq. (ME-8337)<br>MOTLEY RICE LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, South Carolina 29465<br>Telephone: (843) 216-9000 |
| | Paul J. Hanly, Jr., Esq. (PH-5486)<br>Jayne Conroy, Esq. (JC-8611)<br>Andrea Bierstein, Esq. (AB-4618)<br>HANLY CONROY BIERSTEIN &<br>    SHERIDAN, LLP<br>415 Madison Avenue<br>New York, NY 100 17-11 1 1<br>Telephone: (212) 401-7600<br><br>Attorneys for *Burnett*, *EuroBrokers* and<br>*WTC Properties* Plaintiffs |

|  | Attorney for the O'Neill Plaintiffs |
|  | David H. Fromm, Esq. (DH-9334) |
|  | Frank J. Rubino, Jr., Esq. (FR-6202) |
|  | BROWN GAVALAS & FROMM LLP |
|  | 355 Lexington Avenue |
|  | New York, New York 10017 |
|  | (212) 983-8500 |
|  |  |
|  | Attorneys for Plaintiff *New York Marine And General Insurance Company* |

PHILA1\2346682\1 117430.000

25