# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
| | ECF Case |

This document relates to:

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-5738
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Estate of John P. O'Neill, Sr., et al. v. Al Baraka., et al.*, No. 04-CV-1923
*Continental Casualty Co. et al, v. Al Qaeda, et al.*, No. 04-CV-5970
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280
*Walter Tremsky, et al. v. Osama Bin Laden, et al.*, No. 02-CV-7300

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT SHAHIR BATTERJEE

September 20, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND. ............................................................................ 1

        THE ROLE OF DEFENDANT SHAHIR ABDULRAOUF BATTERJEE ...................... 2

III.    APPLICABLE LAW ......................................................................................... 4

   A.   PRIOR TO DISCOVERY ON A RULE 12(B)(2) MOTION, A PLAINTIFF'S *PRIMA FACIE*
        SHOWING OF PERSONAL JURISDICTION MAY BE ESTABLISHED SOLELY BY LEGALLY
        SUFFICIENT ALLEGATIONS OF JURISDICTION ................................................... 4

   B.   A MOTION TO DISMISS UNDER RULE 12(B)(6) MERELY TESTS THE LEGAL FEASIBILITY OF
        THE COMPLAINT ....................................................................................... 5

IV.     ARGUMENT ................................................................................................... 9

   A.   THIS COURT HAS PERSONAL JURISDICTION OVER BATTERJEE ........................... 9

        1.   Personal Jurisdiction Exists Under New York's Long-Arm Statute ............................. 9
        2.   The Exercise Of Jurisdiction Comports With Due Process ......................................... 10
        3.   The Defendant Directed His Conduct at the United States .......................................... 10

   B.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE CAUSAL CONNECTION BETWEEN BATTERJEE
        AND THE SEPTEMBER 11 TERRORIST ATTACKS ............................................ 11

   C.   BATTERJEE IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' TORT CLAIMS .................... 12

        1.   Plaintiffs Sufficiently Plead Their Claims Under The ATA ........................................ 13
        2.   Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be Dismissed .......... 13
        3.   Plaintiffs Sufficiently Plead Their Common Law Claims ........................................... 14
        4.   Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And Battery Claims
             Are Not Barred By The Statute Of Limitations ........................................................... 14
        5.   Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed 15

   D.   PLAINTIFFS PROPERLY STATE RICO CLAIMS AGAINST BATTERJEE ................................. 16
        1.   Plaintiffs Have Standing To Assert RICO Claims ...................................................... 16
        2.   Each Of The Plaintiffs Have Properly Stated RICO Claims ....................................... 17

   E.   PLAINTIFFS HAVE PROPERLY SERVED BATTERJEE ......................................... 21

IV.     CONCLUSION ................................................................................................ 22

**Cases**

*Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956 (S.D.N.Y. Sept. 17, 2002)........ 14

*Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983).......................................................................................................... 20

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)....................................................................... 19

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194 (2d Cir.) ............................................ 4

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2001) ................................................................ 14

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002)................................................ 1, 13

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................................... 10

*Calder v. Jones,* 465 U.S. 783 (1984).......................................................................................... 10

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ..................................................................... 5

*Chrysler Capitol Corporation v. Sentry Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991)......... 9

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................. 5, 6, 7

*Daliberti v. Iraq*, 97 F. Supp. 2d 38 (D. D.C. 2000)................................................................... 10

*Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995).............. 11

*Diaz v. Gates*, 2005 WL 1949879 (9th Cir. Aug. 16, 2005)........................................................ 17

*DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001) ........................................ 5

*Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115 (D.D.C.2003).............................................. 14

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)............................ 18

*Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ............................................................................ 19

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ................................ 19

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)............................................. 16

*Friedman v. Hartmann*, 1994 WL 376058 (S.D.N.Y. July 15, 1994) .......................................... 19

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ...................................................................... 5

*Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258 (1992) ................................... 20

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. Lexis 3892 (S.D.N.Y. Mar. 12, 2004) ............................................................................... 15

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)........ passim

*In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003) ....................... 5, 11

*Johnson v. Nyack Hospital*, 86 F.3d 8 (2d Cir. 1996)............................................... 15

*Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004) ........................................... 15

*Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1996)..................................................... 14

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993).................................................. 6

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) .......................................... 20

*Linde, et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D.N.Y. September 2, 2005) .. 8

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993) ................................................. 19

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005).................................................. 10

*National Asbestos Workers Medical Fund v. Philip Morris,* 74 F.Supp.2d 221(EDNY 1999).... 20

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005)......................................... 7, 8

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002)................................................ 5, 6, 7

*Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F.Supp.2d 289 (S.D.N.Y.2003) .. 14

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D. D.C. 2003)............. 10

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230 (2d Cir. 1995) ........................... 1

*Rasul v. Bush*, 124 S. Ct. 2686 (2004) .......................................................... 18

*Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998) ........... 10

*Salinas v. United States*, 522 U.S. 52 (1997)..................................................... 19

*Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004).................................................. 14

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)................................................ 6

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)............................................................ 6, 7, 8

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998)...................................................... 19

*United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991).............................................. 17

*United States v. Turkette*, 452 U.S. 576 (1981) ........................................................ 17

*United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991) ............................................ 14

*Von Bulow v. Von Bulow*, 634 F. Supp. 1284 (S.D. N.Y. 1986) .................................. 20

*Whyte v. Contemporary Guidance Servs.*, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447
(S.D. N.Y. July 2, 2004) ........................................................................................... 1

*Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001) ........................ 5

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).................................................... 5, 6

*Yeadon v. New York Transit Authority*, 719 F. Supp. 204 (S.D. N.Y. 1989) .............. 15

## Statutes

18 U.S.C. §§ 1962(a) ............................................................................................. 17, 18

18 U.S.C. § 1962(c) .............................................................................................. passim

18 U.S.C. § 1962(d) ............................................................................................. passim

18 U.S.C. § 2333 .......................................................................................................... 13

28 U.S.C. § 1350.................................................................................................... 12,13

42 Pa.C.S. § 5524 ....................................................................................................... 15

C.P.L.R. 302(a)(2) ......................................................................................................... 9

N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).......................................................... 15

**Other Authorities**

137 Cong. Rec. 54511 04 (April 16, 1991) ................................................................. 15

Restatement (Second) of Torts § 302 ....................................................................... 12

Restatement (Second) of Torts §§ 876, 877 .............................................................. 12

**Rules**

Fed. R. Civ. P. 4(k)(1)(D) ......................................................................................... 9

Fed. R. Civ. P. 6 ...................................................................................................... 17

Fed. R. Civ. P. 8(a) ............................................................................................... 6, 7

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 6

Fed. R. Civ. P. 8(f) ................................................................................................. 16

Fed. R. Civ. P. 9(b) .................................................................................................. 6

Fed. R. Civ. P.12(b)(2) ............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5, 6

Fed. R. Civ. P. 15(a) ................................................................................................. 1

## I.       INTRODUCTION

Plaintiffs allege that Shahir A. Batterjee knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 Attack was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Plaintiffs' allegations state valid claims against Batterjee under the Anti-Terrorism Act (the "ATA"), the Alien Tort Claims Act (the "ATCA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and several state common law tort theories. Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated such unlawful activities through financial or other means.  *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002).

Accordingly, Batterjee's motion to dismiss must be denied in its entirety.  In the event, however, that this Court finds the Plaintiffs' Complaints lacking in detail, leave to amend should be granted.  *See* Fed. R. Civ. P. 15(a); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995); *Whyte v. Contemporary Guidance Servs.*, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. N.Y. July 2, 2004).

## II.      FACTUAL BACKGROUND

The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving Defendant Shahir Abdulraouf Batterjee ("Batterjee") and others, who conspired for many years to attack the United States, to destroy American property, and murder innocent United States' citizens.  Defendants, including Batterjee, supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks that killed thousands of people and injured many thousands more. *Burnett* ¶ 228, *Continental*

*Casualty ("Continental")* ¶ 429, *Federal Insurance ("Federal")* ¶ 66; *N.Y. Marine* ¶ 45, *O'Neill Al Baraka* 2AC *("O'Neill")* ¶ 23, *Tremsky* ¶ 120, *WTC* ¶ 365.  The Defendants' concert of action and conspiracy to support and promote Bin Laden, Al Qaida and radical Islamic terrorism were a proximate cause of the September 11, 2001, terrorist attacks that killed and injured the Plaintiffs. *Burnett*, Introduction, p. 217; *Continental* ¶¶ 605, 613, 617; *Federal* ¶¶ 603, 626,629, 633, 643; *NY Marine* ¶¶60, 64, 67, 71, 80; *O'Neill* ¶ 144.

The Attack was aimed at the leading symbol of the United States' leadership in world trade – The World Trade Center - and indeed seriously damaged the Plaintiffs' jobs, businesses, property and livelihoods.   *Burnett* ¶ 662, *Continental Casualty* ¶ 613, *Federal* ¶ 605, *O'Neill* ¶¶ 178-180, See, e.g., *O'Neill*, Wachter RICO Statement ¶¶ 15, 16.

### THE ROLE OF DEFENDANT SHAHIR ABDULRAOUF BATTERJEE

Defendant Shahir Abdulraouf Batterjee was a founder or owner of two of the legal entities that played a distinct role in financing Al Qaida and the September 11 Attack, Benevolence International Foundation ("BIF") and Triple-B Trading Gmbh of Rethswich, Germany ("Triple-B").  He was a founding Director and Vice President of BIF and also served on the Board of the Florida branch of BIF.  (See Affirmation of Andrea Bierstein filed in Opposition to Motion of Shahir Batterjee and corresponding Exhibits 1, 2, 3 and 4)) (MDL-1570 Docket No. 276) ("Bierstein Aff.").  Defendant Batterjee was an owner of Triple-B together with Defendant Abdul Matin Tatari, who also owns Tatex Trading Gmbh, of Hamburg. Germany ("Tatex"). *O'Neill* ¶ 68.

As explained at length in several of the Complaints, BIF has acted as one of the charities fronting for al Qaida, and in fact the United States has designated BIF as a supporter of international terrorism.  (*Burnett* ¶¶ 180-228, *Continental* ¶¶ 381-429, *Federal* ¶¶ 84-112, *O'Neill* ¶¶ 117-122, *Tremsky* ¶¶ 101-120, *WTC* ¶¶ 317-365).

Among other things, on December 14, 2001, the Treasury Department's Office of Foreign Asset Control (or "OFAC") issued an order blocking BIF's assets and records, pending further investigation into BIF's ties to terrorists. Enaam M. Arnaout ("Arnaout"), Chairman of BIF, has a relationship with Osama bin Laden and key associates dating back more than a decade. The BIF is used by al Qaida for logistical support: terrorists attempting to obtain chemical and nuclear weapons on behalf of al Qaida have contacts with the BIF and its office personnel; and, BIF had direct dealings with al Qaida operatives, providing them with military and financial support. *Burnett* ¶ 199, *Continental* ¶ 402, *Federal* ¶ 87, *WTC* ¶ 336.

BIF's Chairman, Defendant Arnaout, was criminally indicted for his role in the September 11, 2001 attacks due to his sponsorship of al Qaida. *Burnett* ¶ 181, *Continental* ¶ 402; *Federal* ¶ 88, *O'Neill* ¶ 68.[1] It is alleged that Arnaout was photographed with Osama Bin Ladin and that he was authorized to sign on behalf of Bin Ladin. *Federal* ¶ 87.

Arnaout was Executive Director of BIF while Defendant Batterjee was still a Director and Vice President of BIF. Bierstein Aff. Defendant Batterjee was one of the co-conspirators with Defendants BIF, Arnaout, and others. (*Burnett* ¶ 228, *Continental* ¶ 429, *O'Neill* ¶ 23, *Tremsky* ¶ 120, *WTC* ¶ 365).

Batterjee's other company of interest, Triple-B, is located in Rethwisch, Germany, located between Berlin and Hamburg. Triple-B is owned by Defendant Tatari, who also owns Tatex in Hamburg, the location of the "Hamburg cell" that included several of the September 11 hijackers. *Burnett* ¶¶ 18-39. It is alleged that Triple-B, Tatex and their principal shareholders and associates have materially supported, aided, abetted, and financed al Qaida. *O'Neill* ¶¶ 72, 75. For example, it is alleged that Tatex employed Mamoun Darkanzanli, who appeared in a

---

[1] Arnaout has since pled guilty to fraudulently raising charitable funds in the United States through BIF and fraudulently diverting such funds to violent activities overseas. "Benevolence Director Pleads Guilty to Racketeering", US DOJ Press Release, February 10, 2002, http://www.usdoj.gov/usao/iln/pr/chicago/2003/pr021003_01.pdf

video in the company of several of the September 11th hijackers.  *O'Neill* ¶ 70.  Furthermore, it is alleged that one of the owners of Triple-B, Defendant Abdul Matin Tatari, at one time employed the lead hijacker, Mohammed Atta.  *O'Neill* ¶¶ 68, 71.

Thus the Complaints depict Batterjee as one of the founders of one of the leading charities that fraudulently raised money in the United States for the support of al Qaida, and at the same time an owner of a company located in Hamburg that supported members of the "Hamburg cell".  These allegations are more than enough to support a reasonable inference that, as alleged in the Complaints, Defendant Shahir Batterjee "supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks".  *Burnett* ¶ 228, *Continental Casualty* ¶ 429, *Federal* ¶ 66; *N.Y. Marine* ¶ 45, *O'Neill* 2AC ¶ 23, *Tremsky* ¶ 120, *WTC* ¶ 365.[2]

## III.   APPLICABLE LAW

### A.   Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.  [citations omitted].  At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990).   Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2),

---

[2] A more detailed factual reference summary is attached hereto and incorporated herein as Appendix I, *infra* fn. 5.

a plaintiff need only present allegations that connect the defendant with the applicable forum, here, the United States.  In deciding such a motion, the plaintiff's jurisdictional averments must be taken as true.  *Id.*; *In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003).  Moreover, the court must construe the pleadings in a light most favorable to plaintiff, resolving all doubts in his favor.  *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001).

### B.    A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint

Batterjee moves to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaints and RICO Statements ("pleadings") and draw all reasonable inferences in Plaintiffs' favor.  *Wynder*, 360 F.3d at 78; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided."  *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id*. at 512 (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after remand, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.). Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69(1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  308 F.3d at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering.  *Id*.  The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference.  The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff failed to allege facts from which the Court could infer the defendants' knowledge.  *Id*. at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts

that support his allegation of knowledge either directly or by inference." *Id*. at 186-87.  The

Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to
> supplement Phelps's basic allegations with additional facts to support them by
> inference, for it does not appear from the face of the complaint beyond doubt that
> Phelps "can prove no set of facts in support of his claim which would entitle him
> to relief."

*Phelps*, 308 F.3d at 187 (quoting *Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery,

the plaintiff might uncover direct evidence to support his allegations.  *Phelps*, 308 F.3d at 187.

Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point,
> courts must take care lest judicial haste in dismissing a complaint in the long run
> makes waste. Untimely dismissal may prove wasteful of the court's limited
> resources rather than expeditious, for it often leads to a shuttling of the lawsuit
> between the district and appellate courts.

*Id*. at 185 (citations omitted).

In *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again

vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be

applied.  In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to

"draw an adequate causal connection between their consumption of McDonald's food and their

alleged injuries."  *Id*. at 511.  The Second Circuit rejected this approach.  It held that the

information the district court found to be missing in the Complaint was "the sort of information

that is appropriately the subject of discovery, rather than what is required to satisfy the limited

pleading requirements of Rule 8(a)."  *Id*. at 512.  Quoting the unanimous Supreme Court ruling

in *Swierkiewiez*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery
> rules and summary judgment motions to define disputed facts and issues and to
> dispose of unmeritorious claims. The provisions for discovery are so flexible and
> the provisions for pretrial procedure and summary judgment so effective, that

> attempted surprise in federal practice is aborted very easily, synthetic issues
> detected, and the gravamen of the dispute brought frankly into the open for the
> inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

More recently, in *Linde, et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D.

N.Y. September 2, 2005), the United States District Court for the Eastern District of New York

rejected the defendant's invitation to impose a heightened pleading requirement in a case

presenting claims nearly identical to those at issue here.  In *Linde*, the plaintiffs brought claims

against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and

Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist

organizations.  *Id.* at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act

(ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged

knowledge and intent."  *Id.* at *42.  The Court rejected this argument, reasoning that Arab Bank

was attempting to impose a heightened pleading standard not warranted by the Rules of Civil

Procedure:

> To the extent the defendant is arguing that plaintiffs have not
> alleged sufficient facts to establish an evidentiary basis for their
> allegations of knowledge and intent, defendant simply
> misapprehends the pleading standard.  It is not entitled to dismissal
> based on the argument that plaintiff's must plead more than the
> requisite knowledge and intent, either as to their substantive claims
> or their claims of aiding and abetting a conspiracy.

*Id.*  The *Linde* court likewise rejected the defendant's contention that plaintiffs were

required to allege that senior officials of the bank were aware of the misconduct underlying

plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that

required by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the

knowledge and intent of Arab Bank and not spell out their proof."  *Id.* at *50.

Batterjee does not claim that he did not receive fair notice.  Batterjee clearly knows what

has been alleged, and has even attempted to suggest factual evidence at this early stage rebutting

Plaintiffs' claims. Because the complaints provide fair notice, these are properly matters to be resolved after discovery is complete, and this is no grounds for dismissal here.

## IV.   ARGUMENT

### A.   This Court Has Personal Jurisdiction Over Batterjee

Batterjee contests this Court's authority to exercise personal jurisdiction over him, arguing that the personal jurisdiction requirements of New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(2), and the requirements under Fed. R. Civ. P. 4(k)(1)(D), are not satisfied.

### 1.   Personal Jurisdiction Exists Under New York's Long-Arm Statute

Batterjee's arguments regarding the applicability of New York's Long-Arm Statute are simply wrong. As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)." *In Re Terrorists Attacks*, 349 F. Supp. 2d at 805 (*quoting*, *Chrysler Capitol Corporation v. Sentry Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991)). Plaintiffs have adequately alleged that Batterjee was an active and knowing participant in al Qaida's conspiracy to attack America. Without question, those who knowingly contribute to a terrorist organization do so to see the organization successfully carry out terrorist attacks. Indeed, in recognition of that fact, the United States Government has declared that those who support terrorists are as culpable as those who carry out the attacks. Thus, the operatives who carried out the September 11th Attack necessarily were acting for the benefit of al Qaida's material sponsors and supporters, and the New York Long-Arm Statute provides a statutory basis for exercising personal jurisdiction over al Qaida's co-conspirators, including Batterjee.[3]

---

[3] The plaintiffs have asserted claims against these defendants under the ATA and Civil RICO, both of which include nationwide service of process provisions. As such, the exercise of personal jurisdiction is authorized under Fed. R. Civ. P. (4)(k)(1)(D), provided that the exercise of jurisdiction comports with due process. For the reasons set forth in detail in Sections D2 and D3, exercise of personal jurisdiction over these defendants comports with due process.

### 2.     <u>The Exercise Of Jurisdiction Comports With Due Process</u>

The defendant's assertion that the exercise of personal jurisdiction over him would violate due process is equally unconvincing.  The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice.  *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).  Under these standards, due process considerations are satisfied so long as the defendant has "fair warning" that he may be haled into court in the forum to respond for his actions.  *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In an action involving harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  *Calder*, 465 U.S. at 788.  Consistent with this principle, the courts have found that due process is not violated by the exercise of jurisdiction over those who deliberately target our citizens.  *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D. D.C. 2003); *Daliberti v. Iraq*, 97 F. Supp. 2d 38, 54 (D. D.C. 2000); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D.N.Y. 1998); *Mwani v. Bin Laden*, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaida and its co-conspirators have "engaged in unabashedly malignant actions directed at and felt in" the United States).

### 3.     <u>The Defendant Directed His Conduct at the United States</u>

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction over Batterjee, pursuant to the applicable standards set forth above.  As described above, the defendant, for a period of many years, directly channeled financial and logistical support to al Qaida.  In knowingly sponsoring and directly participating in al Qaida's campaign to attack America, the defendant necessarily directed his conduct at the United States, as it has been publicly known, since at least the mid-1990's, that al Qaida was engaged in a

global campaign of terror directed against the United States.  *In re Terrorists Attacks*, 349 F.

Supp. 2d at 813 ("This Court's record…contains many examples of Osama bin Laden's and al

Qaeda's public targeting of the United States").  Thus, the exercise of jurisdiction over the

defendant for claims arising from their sponsorship of al Qaida complies with due process.[4]

### B.    Plaintiffs Have Sufficiently Pled the Causal Connection Between Batterjee And The September 11 Terrorist Attacks

Batterjee argues that Plaintiffs have not sufficiently pled a causal connection between his

actions and the September 11 attacks.  This is not the case.   Batterjee is alleged to have been a

founder, Director and officer of BIF, a charity that fraudulently raised money in the United

States for the support of Al Qaeda, and at the same time an owner of Triple-B, a company

located near Hamburg and affiliated with persons who supported members of the "Hamburg

cell". *Supra* Part II.  Plaintiffs have furthered alleged that Defendant Batterjee conspired with

Defendants BIF and Arnaout who, as discussed above, provided direct support to *Supra* Part II.

These allegations are more than enough to support a reasonable inference that, as alleged in the

Complaints, Defendant Shahir Batterjee support and assistance were a proximate cause of the

September 11 attacks.

Plaintiffs allege that "The financial resources and support network of . . . Defendants –

charities, banks, front organizations and financiers – are what allowed the attacks of September

11, 2001 to occur.  Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan,

train and act on a massive scale without significant financial power, coordination and backing."

*See Supra* Part II.  *See also Boim*, 291 F.3d at 1021 ("[T]here would not be a trigger to pull or a

bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the

persons who actually commit the violence.").  Moreover, this Court has already held that "[i]n

---

[4] Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation.  *In Re Magnetic Audiotape Antitrust Lit.*, 334 F.3d at 208; *see also Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

light of Al Qaeda's public acknowledgments of its war against the United States, the September

11 attacks may be the natural and probable consequence of knowingly and intentionally

providing material support to al Qaeda." *See In re Terrorist Attacks on September 11, 2001*, 349

F. Supp. 2d 765, 826 (S.D.N.Y. 2005) ["January 18 Order"].  Finally, as this Court has

previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about

the September 11 attacks or that they committed any specific act in furtherance of that attack."

*Id.* at 829.  Plaintiffs have alleged that Batterjee was a founder, Director and officer of BIF, a

charity that fraudulently raised money in the United States for the support of Al Qaeda, and at

the same time an owner of Triple-B, a company located near Hamburg and affiliated with

persons who supported members of the "Hamburg cell." *Supra* Part II; *See also* Appendix 1.[5]

Plaintiffs have furthered alleged that Defendant Batterjee conspired with Defendants BIF and

Arnaout who, as discussed above, provided direct support to Al Qaeda. *Supra* Part II.  These

allegations are more than enough to support a reasonable inference that, as alleged in the

Complaints, Defendant Shahir Batterjee "supported, conspired, aided and abetted, sponsored,

planned and executed the September 11th terror attacks".  If so, then Batterjee is legally

responsible for the September 11 attacks.  *See* Restatement (Second) of Torts §§ 876, 877; *see*

*also* January 18 Order, 349 F. Supp. 2d at 826.  Plaintiffs are entitled to take discovery to prove

their allegations and establish that Batterjee knowingly and intentionally participated in the

sponsorship of al Qaida.

### C.        Batterjee Is Not Entitled To Dismissal of Plaintiffs' Tort Claims

Plaintiffs have sufficiently alleged claims under the Anti-Terrorism Act ("ATA"), the

Alien Tort Claims Act ("ATCA"), and the common law.  These claims should not be dismissed.[6]

---

[5]  A compendium of the detailed and voluminous allegations pertaining to Batterjee's sponsorship of al Qaida is
included as Appendix 1 hereto for the Court's convenience.

[6]  Plaintiffs recognize that this Court has dismissed negligence claims against certain defendants on the basis that
defendants owed no duty to Plaintiffs.  *See* January 18 Order, 349 F. Supp. 2d at 830-31.  Plaintiffs respectfully
disagree with this ruling and refer this Court to the prior briefing on this issue.  *See* Restatement (Second) of Torts §

1.      **Plaintiffs Sufficiently Plead Their Claims Under The ATA**

Under the ATA,[7] a defendant is liable if it provided any material support to al Qaida with knowledge of its terrorist agenda or if it aided and abetted al Qaida or Osama bin Laden in their course of terrorist conduct.  *See Boim*, 291 F.3d at 1021 ("[I]f we failed to impose liability on aiders and abettors who knowingly and intentionally funded acts of terrorism, we would be thwarting Congress' clearly expressed intent to cut off the flow of money to terrorists at every point along the causal chain of violence.") (emphasis added).[8]

Furthermore, this Court has already recognized that, under the ATA, "material support includes money [and] financial services . . . ."  January 18 Order, 349 F. Supp. 2d at 825.  As demonstrated above, Plaintiffs have alleged that Batterjee knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaida.  Accordingly, under the standards set forth in this Court's January 18, 2005 Order, Plaintiffs have properly pled a claim under the ATA.

2.      **Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be Dismissed**

Batterjee contends that the Plaintiffs' claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"), should be dismissed because he is not a state actor and did not engage in specific kinds of conduct that give rise to jurisdiction under that statute.  But the ATCA does not require that the defendant act under color of law and the specific types of conduct that Batterjee recognizes as covered by the statute – aircraft hijacking and terrorism – are precisely the conduct

---

302 (stating that as a general principle of tort law, every individual has a duty to exercise reasonable care to avoid physical harm to others' person and property).  Plaintiffs also note that they do not currently intend to pursue their claims under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, against this defendant.  Plaintiffs reserve the right to re-plead this claim against Batterjee should additional information become available in discovery demonstrating that he acted "under actual or apparent authority or color of law, of any foreign nation" in connection with his support of al Qaeda.

[7] The Anti-Terrorism Act ("ATA") provides a civil action for "[a]ny national of the United States injured in his person, property or business by reason of an act of international terrorism[.]"  18 U.S.C. § 2333.

[8]  Reviewing the legislative history, the Seventh Circuit concluded:  "All of this history indicates an intent by Congress to allow a plaintiff to recover from anyone along the causal chain of terrorism."  291 F.3d at 1011.

for which plaintiffs seek to hold him responsible.  Since Batterjee concedes that aircraft hijacking and terrorism are sufficient to support jurisdiction under the ATCA, Plaintiffs' claims against him for his role in supporting these acts are sufficient and should not be dismissed.  *See Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-48 (2d Cir. 2001); *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1996); *Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115, 120 (D.D.C.2003); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F.Supp.2d 289, 309 (S.D.N.Y.2003); *Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956, at *4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003); *see generally United States v. Yunis*, 924 F.2d 1086, 1092 (D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so clearly condemned under the law of nations that states may assert universal jurisdiction to bring offenders to justice, even when the state has no territorial connection to the hijacking and its citizens are not involved").  Consistent with these decisions, this Court has already ruled that the Plaintiffs' claims under the ATCA are viable.  January 18 Order, 349 F. Supp. 2d at 826.

### 3.    Plaintiffs Sufficiently Plead Their Common Law Claims

Batterjee claims that Plaintiffs' common law claims, including claims for intentional infliction of emotional distress, assault and battery, wrongful death, survival, and property destruction should be dismissed because the Plaintiffs have failed to adequately allege causation.  This is merely a repetition of Batterjee's argument with respect to the ATA and causation generally and should be rejected for the reasons described above.  *See supra* Points C and D1.

### 4.    Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And Battery Claims Are Not Barred By The Statute Of Limitations

Contrary to the defendant's assertion, the Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred.  At this stage of these proceedings, the substantive law governing most of the claims remains to be determined.

As such, it would be manifestly premature to dismiss Plaintiffs' assault, battery and intentional infliction of emotional distress claims, under the mere assumption that the law of New York law applies.  *See* 42 Pa.C.S. § 5524 (2005) (establishing two year limitation period for assault, battery and intentional tort claims under Pennsylvania law); *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004) (holding that federal common law claims arising under Act of Congress after 1990 are governed by a four year limitations period).[9]

Moreover, all of Plaintiffs' claims arise from Batterjee's participation in the conspiracy to conduct terrorist attacks against the United States, a conspiracy designed to hide the identity of the participants from disclosure to the outside world.  As a result, the statute of limitations was tolled until Plaintiffs reasonably should have become aware of Batterjee's involvement within the conspiracy, itself a question of fact to be determined through discovery.  *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. Lexis 3892 at *17-18 (S.D. N.Y. Mar. 12, 2004).  Given the clandestine nature of the conspiracy in which Batterjee participated, equitable principles require that the statute of limitations be tolled.  *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[10]

### 5.   Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed

Defendants correctly argue that no independent causes of action exist under New York law for conspiracy or punitive damages.  However, at this stage of these proceedings, the

---

[9] The ATA imports "the remedies of American tort law," 137 Cong. Rec. 54511 04 (April 16, 1991), thus giving rise to federal common law assault, battery and intentional infliction of emotional distress claims thereunder.  On this point, Plaintiffs refer the Court to the discussion included in their Consolidated Opposition to the Motion to Dismiss of Perouz Sedaghaty at pp. 16-17, incorporated herein by reference.

[10] Arguably, they are also extended by way of action of the New York Survival cause of action, which the New York legislature specifically extended from 2 years to 2.5 years for 9/11 cases.  *See* N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).

substantive law governing each of Plaintiffs' individual claims remains to be determined.  Thus, it would be premature to dismiss those causes of action at this time.  Moreover, there can be little dispute that Plaintiffs' are entitled to recover punitive damages in the event that they prevail against these defendants under the theories advanced.[11]  Under these circumstances, dismissal of the conspiracy and punitive damages counts would be inappropriate.

### D.  Plaintiffs Properly State RICO Claims Against Batterjee

#### 1.  Plaintiffs Have Standing To Assert RICO Claims

Batterjee challenges the standing of the *O'Neill* Plaintiffs to pursue RICO claims, arguing that these Plaintiffs lack standing as their injuries are personal injuries.[12]  Batterjee's argument is flawed.  The O'Neill Plaintiffs, in the SAC, specifically alleged that the Defendants intended to cause damage to business and property, and did in fact intend to cause damage to business and property.  *See O'Neill* ¶¶176, 178-80.  The Plaintiffs further detailed certain elements of the damages: "including a. Economic damages, including but not limited to pecuniary losses, past and future wage losses, loss of support, loss of prospective inheritance …."  *See O'Neill* ¶ 146.  Furthermore, in their more definite statements and RICO statements filed in connection with the other defendants in the instant litigation, the *O'Neill* Plaintiffs elaborated on the various factual elements of such damages, which we submit are not required for Rule 8(f) notice pleadings, to include direct pecuniary losses, past and future wage losses and profits, losses of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of

---

[11] Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."  *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Plaintiffs prove their allegations that Batterjee knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Batterjee's conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

[12] Defendant challenges the standing of the *Burnett* and *Tremsky* Plaintiffs to pursue RICO claims.  Those Plaintiffs do not intend to pursue those claims at this time, and therefore do no address the defendant's standing argument herein.

other economic contributions to the Plaintiffs'/Decedents' households.  *See, e.g.*, *O'Neill* RICO Statement for Martin Wachter, Para 15-16, Docket No. 961.[13] [14]  Accordingly, such allegations have not only met, but exceeded the pleading threshold set in *Diaz v. Gates*, 2005 WL 1949879 (9th Cir. Aug. 16, 2005) (e.g., damages to tangible personal property), and the *O'Neill* Plaintiffs have established standing.

## 2.    <u>Each Of The Plaintiffs Have Properly Stated RICO Claims</u>

Batterjee also contends that none of the Plaintiffs have properly pleaded their RICO claims.  Batterjee is wrong.

Plaintiffs' complaints and RICO Statements[15] assert RICO claims against Batterjee pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).  The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  *See, e.g., Continental* 609-613; *Federal* 628-629, See, e.g., *O'Neill* Wachter RICO Statement ¶¶ 14.   Its well documented purpose is to perpetrate acts of terrorism.  Thus, Plaintiffs have sufficiently pled that al Qaida is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

---

[13] For a more extensive discussion of this issue, *see* "O'Neill Plaintiffs' Mem. of Law In Opp. to Al Haramain Islamic Foundation, Inc's Motion to Dismiss Pertaining to Certain RICO Issues Only," Docket No. 810, pp. 13-17.

[14] Alternatively, the *O'Neill* Plaintiffs seek leave to amend to specifically provide such factual detail as to such losses.

[15] This Court ruled that most of the Plaintiffs can not file RICO statements in this case. In accordance with this ruling, such Plaintiffs have not filed RICO statements.  We respectfully request that this Court reconsider this ruling, and in the event of such reconsideration, the Plaintiffs would file RICO statements with 'general' materials, such as descriptions of the enterprise and conspiracy, substantially comporting with RICO statements already filed in this matter. It should be noted that certain of the Plaintiffs could not possibly have complied with this Court's individual practice requiring that RICO Statements be filed within 20 days of the filing of the Complaint.  For example, O'Neill , Sr.  v. Iraq, 04 CV 1076 (RCC) (SDNY), was originally filed in the District of Columbia, 03 CV 1766 (RBW) (Dist. DC), on  August 20, 2003 and was not assigned to the Honorable Richard Conway Casey for nearly seven (7) months.  In any event, to the extent the Court deems its individual practices applicable, Plaintiffs seek leave to file RICO Statements under Rule 6(b)(2).

Plaintiffs further allege that Batterjee engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, Plaintiffs allege that Batterjee was a founder, Director and officer of BIF, a charity that fraudulently raised money in the United States for the support of Al Qaeda, and at the same time an owner of Triple-B, a company located near Hamburg and affiliated with persons who supported members of the "Hamburg cell". *See* Bierstein Aff.;  O'Neill Al Baraka SAC ¶ 68.  Plaintiffs have furthered alleged that Defendant Batterjee conspired with Defendants BIF and Arnaout who, as discussed above, provided direct support to Al Qaeda. *Burnett* ¶ 228, *Continental Casualty* ¶  429, *Tremsky* ¶ 120, *WTC* ¶ 365.  As the Supreme Court has explicitly recognized that al Qaida's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, Plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy"). These allegations are more than enough to support a reasonable inference that, as alleged in the Complaints, Defendant Shahir Batterjee "supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks".

Plaintiffs' similarly allege sufficient involvement by Batterjee in the enterprise to sustain claims under both §§ 1962(c) and (d).  Although a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003),

such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear." *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D. N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962(d), the requirements "are less demanding." *Baisch*, 346 F.3d at 376. All that is required is that the conspirators "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)). Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

Here, Plaintiffs have satisfied the pleading standards applicable to their § 1962(c) and § 1962(d) claims. The Plaintiffs allege that Batterjee was a founder, Director and officer of BIF, a charity that fraudulently raised money in the United States for the support of Al Qaeda, and at the same time an owner of Triple-B, a company located near Hamburg and affiliated with persons who supported members of the "Hamburg cell". *See* Bierstein Aff.; *O'Neill Al Baraka* 2AC ¶ 68. Plaintiffs have furthered alleged that Defendant Batterjee conspired with Defendants BIF and Arnaout who, as discussed above, provided direct support to Al Qaeda. *Burnett* ¶ 228,

*Continental Casualty* ¶ 429, *Tremsky* ¶ 120, *WTC* ¶ 365.  These allegations are more than enough to support a reasonable inference that, as alleged in the Complaints, Defendant Shahir Batterjee "supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks".  *See generally*, Appendix I

In view of these allegations regarding Batterjee's integral and pervasive sponsorship of al Qaida's operations throughout the world, Plaintiffs have adequately alleged that Batterjee played a direct and active role in the management and operation of al Qaida's fundraising scheme. Plaintiffs have, accordingly, met their pleading burden in relation to their claims under §§ 1962(c) and 1962(d), particularly given the fact that Plaintiffs have not been afforded the opportunity to take discovery.

Plaintiffs also have adequately alleged proximate cause under RICO.  This requirement is satisfied if plaintiffs allege that defendant's injurious conduct is both the factual and the proximate cause of the injury alleged.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003).  Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is generally imprudent. *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 225 (E.D.N.Y. 1999).  This Court's decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983), and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  *Id.*  Further, failure to explain the alleged injury in detail is not fatal.  *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986). Allegations of injury, because they necessarily involve questions of fact, must be construed

liberally on a motion to dismiss under Rule 12(b)(6). *Id.* The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts." *Id.* (citations omitted).

Here, Plaintiffs allege that they were directly injured by Batterjee's participation in al Qaida's campaign to attack the United States, and in particular, by his provision of "material support and resources to al Qaeda." *See Continental* ¶¶ 26, 603, *Federal* ¶¶ 4, 83, 601. Batterjee participated extensively in al Qaida's global operations and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States by providing al Qaida with the "financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack." *Federal* 1AC ¶ 74. Accordingly, Plaintiffs have sufficiently pled causation for purposes of their RICO claims.

### E.    Plaintiffs Have Properly Served Batterjee

Batterjee alleges that the Plaintiffs failed to properly serve him in accordance with the Federal Rules of Civil Procedure and that the notices published in the *USA Today, International Herald Tribune, and Al-Quds Al-Arabi* were not proper as a matter of law. Batterjee makes the identical arguments about service by publication made by his co-defendants, Mohamed Ali Mushayt and the Mushayt for Trading Establishment. Plaintiffs have addressed each of those arguments in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendants Mohamed Ali Mushayt and the Mushayt for Trading Establishment. Rather than repeat those arguments here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

As demonstrated in Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Mohamed Ali Mushayt and the Mushayt for Trading Establishment, service by

publication on Batterjee was proper.[16]  By its September 15, 2004 Order, this Court agreed that publication in the *USA Today*, *International Herald Tribune*, and the *Al Quds Al Arabi* newspapers was "reasonably calculated" to notify Batterjee of the suit against him so as to satisfy due process.  Batterjee was served by publication in the *USA Today* and *Al Quds Al Arabi* newspapers on December 23, 2004, December 30, 2004, January 6, 2005, and January 13, 2005.  Batterjee was similarly served in the *International Herald Tribune* on December 22, 2004, December 27, 2004, January 5, 2005, and January 10, 2005.  Thereafter, Batterjee appeared and filed this motion to dismiss.

In sum, Plaintiffs obtained permission from this Court to serve Batterjee by publication.  Batterjee was served in this manner and in fact received notice of the pendency of the action.  The action should not be dismissed for improper service of process.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that Batterjee's Motion to Dismiss be denied in all respects, with prejudice.

**[CONTINUED ON NEXT PAGE]**

---

[16] It is significant to point out that Batterjee was represented by counsel in the consolidated action (03 MDL 1570) at the time of the Order permitting publication and was arguably notified that the Plaintiffs intended to serve him in this manner.  The MDL docket clearly shows that Ms. Bernabei and Mr. Kabat were counsel of record for Batterjee as of March 11, 2004 when this Court signed their *pro hac* admissions and subsequent entry of appearance.  *See* MDL 1570 Docket entries #20 and #21.  Batterjee was sufficiently on notice of the Plaintiffs' claims against him at that time, and has been for the past **18** months.

Respectfully submitted,

|  | COZEN O'CONNOR |
| --- | --- |
| Dated: September 20, 2005 | BY: _____/s/_____<br>     Stephen A. Cozen, Esquire<br>     Elliott R. Feldman, Esquire<br>     Sean P. Carter, Esquire<br>     Adam C. Bonin, Esquire<br>     1900 Market Street<br>     Philadelphia, PA 19103<br>     Tele: (215) 665-2000<br>     Fax: (215) 665-2013<br><br>     Attorneys for *Federal Insurance* Plaintiffs |
|  | MOTLEY RICE LLC<br><br>BY: _____/s/_____<br><br>     Ronald L. Motley, Esq. (RM-2730)<br>     Jodi Westbrook Flowers, Esq.<br>     Donald A. Migliori, Esq.<br>     Michael Elsner, Esq. (ME-8337)<br>     MOTLEY RICE LLC<br>     28 Bridgeside Boulevard<br>     P.O. Box 1792<br>     Mount Pleasant, South Carolina 29465<br>     Telephone: (843) 216-9000 |

HANLY CONROY BIERSTEIN &
   SHERIDAN, LLP


BY: _____/s/_____
   Paul J. Hanly, Jr., Esq. (PH-5486)
   Jayne Conroy, Esq. (JC-8611)
   Andrea Bierstein, Esq. (AB-4618)
   HANLY CONROY BIERSTEIN &
      SHERIDAN, LLP
   415 Madison Avenue
   New York, NY 10017-1111
   Telephone: (212) 401-7600

Attorneys for *Burnett*, *EuroBrokers* and
*WTC Properties* Plaintiffs

FERBER FROST CHAN & ESSNER, LLP


BY: _____/s/_____
   Robert M. Kaplan (RK1428)
   FERBER FROST CHAN & ESSNER, LLP
   530 Fifth Avenue, 23rd Floor
   New York, New York 10036-5101
   (212) 944-2200

Attorneys for *Continental* Plaintiffs

24

LAW OFFICES OF JERRY S. GOLDMAN
    AND ASSOCIATES, P.C.


BY:_____
        Jerry S. Goldman (JG8445)
        Frederick J. Salek (FS8565)
        Gina M. MacNeill (GM0581)
        LAW OFFICES OF JERRY S. GOLDMAN
            AND ASSOCIATES, P.C.
        111 Broadway, 13th Floor
        New York, New York 10006
        Tel.: (212) 385-1005
        Fax: (212) 346-4665

        Attorney for *O'Neill* Plaintiffs


BROWN GAVALAS & FROMM LLP


BY: _____/s/_____
        Attorney for the O'Neill Plaintiffs
        David H. Fromm, Esq. (DH-9334)
        Frank J. Rubino, Jr., Esq. (FR-6202)
        BROWN GAVALAS & FROMM LLP
        355 Lexington Avenue
        New York, New York 10017
        (212) 983-8500

        Attorneys for Plaintiff *New York Marine And
        General Insurance Company*

25