**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)** <br><br> **ECF Case** |

This document relates to:          **Federal Ins. Co., et al. v. Al Qaida, et al.**
                                   **(03 CV 6978)**

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**</u>
<u>**DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.**</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *DMI Administrative Services S.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

SUMMARY OF ALLEGATIONS AGAINST DMI S.A. ...................................................... 1

ARGUMENT .......................................................................................................................... 3

I  THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A. .................... 3

    A.  Plaintiffs Have Failed to Allege Any Facts that Would Support a Finding of Personal Jurisdiction under New York's Long-Arm Statute. .......................... 4

        1.  Plaintiffs Aver No Facts Showing that DMI S.A. Has Had Continuous and Systematic Contacts with New York to Support General Jurisdiction. ................................................................... 4

        2.  Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and Abetting Provide No Basis for Specific Personal Jurisdiction over DMI S.A. ........................................................................................... 5

    B.  DMI S.A. Has Not Had Minimum Contacts With the United States. ........................... 7

        1.  Plaintiffs Fail to Allege Continuous and Systematic Contacts with the United States to Support General Jurisdiction over DMI S.A. .......................... 7

        2.  This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show that DMI S.A. Expressly Aimed Any Tortious Acts at the United States. ......................................................................................... 8

II  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A. ..................... 10

    A.  Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries. ........................... 14

    B.  Plaintiffs Have Failed To Plead Facts Sufficient To  State Any Of Their Causes of Action Against DMI S.A. .................................................. 16

        1.  Trespass (Count 1). ................................................................... 16

        2.  Wrongful Death & Survival (Counts 2 & 3). .................................. 17

        3.  Assault and Battery and Intentional Infliction of Emotional Distress (Counts 4 & 5). ................................................................. 18

        4.  Negligent Infliction of Emotional Distress & Negligence (Counts 5 & 11). .............................................................................. 18

        5.  Torture Victims Protection Act (Count 6). ...................................... 18

        6.  Conspiracy and Aiding and Abetting (Counts 7 & 9) ....................... 19

        7.  RICO (Count 8). ...................................................................... 21

        8.  Anti-Terrorism Act (Count 10) .................................................... 23

        9.  Punitive Damages (Count 12). .................................................... 24

III  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ................. 25

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ...............................................................................17

Acito v. Imcera Grp., Inc.,
    47 F.3d 47 (2d Cir. 1995) ...................................................................................26

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) .....................................................................17

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) .................................................................................15

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) .................................................................................1

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ........................................................1

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987) ...............................................................................11

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) .......................................................................9

Benas v. Baca,
    2001 WL 485168 (C.D. Cal. Apr. 23, 2001) ......................................................19

Bernstein v. Misk,
    948 F. Supp. 228 (E.D.N.Y. 1997) .....................................................................14

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) ...............................................................13, 15, 23

Burnett v. Al Baraka Inv. and Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ..................................................................1, 14

Calder v. Jones,
    465 U.S. 783 (1984) .............................................................................................9

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .....................................................14

Consolidated Gold Fields, PLC v. Anglo Am. Corp. of S. Africa Ltd.,
    698 F. Supp. 487 (S.D.N.Y. 1988) .......................................................................8

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) .................................................................................17

Cornell v. Assicurazioni Generali S.p.A., Consol.,
   2000 WL. 284222 (S.D.N.Y. Mar. 16, 2000) .................................................... 5

DeJesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) .................................................... 1, 18, 23

Dubai Islamic Bank v. Citibank, N.A.,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003).................................................... 22, 23

Electronic Commc'ns Corp. v. Toshiba Am.,
   129 F.3d 240 (2d Cir. 1997) .................................................... 26

Flanagan v. Shively,
   783 F. Supp. 922 (M.D. Penn. 1992).................................................... 20

Gillette Co. v. Philips Oral Healthcare, Inc.,
   2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .................................................... 11

Glasheen v. City of Albany,
   1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) .................................................... 12

Gmurzynska v. Hutton,
   2003 WL 1193727 (S.D.N.Y. March 14, 2003).................................................... 14

Grove Press, Inc. v. Angleton,
   649 F.2d 121 (2d Cir. 1981).................................................... 19

Guadagnoli v. Seaview Radiology, P.C.,
   184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) .................................................... 18

Harris v. City of New York,
   186 F.3d 243 (2d Cir. 1999).................................................... 16

Hattley v. Goord,
   2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003).................................................... 20

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
   337 S.E.2d 744 (Va. 1985) .................................................... 19

Helicopteros Nacionales de Colombia, S.A. v. Hall,
   466 U.S. 413 (1984).................................................... 8

Hishon v. King & Spalding,
   467 U.S. 69 (1984).................................................... 16

Holmes v. Sec. Investor Prot. Corp.,
   503 U.S. 258, 112 S. Ct. 1311 (1992).................................................... 21

Howard v. Klynveld Peat Marwick Goerdeler,
   977 F. Supp. 654 (S.D.N.Y. 1997) .................................................... 5

Jacobs v. Felix Bloch Erben Verlag fr Buhne Film und Funk KG,
   160 F. Supp. 2d 722 (S.D.N.Y. 2001).................................................... 5

Jazini v. Nissan Motor Co., Ltd.,
  148 F.3d 181 (2d Cir. 1998) ................................................................4, 5, 9, 10

Jenkins v. S&A Chaissan & Sons, Inc.,
  449 F. Supp. 216 (S.D.N.Y. 1978) .................................................................1, 12

Johnston v. Norton,
  1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ........................................................21

Kittay v. Kornstein,
  230 F.3d 531 (2d Cir. 2000) ................................................................................11

Koken v. Steinberg,
  825 A.2d 723 (Pa. Comm. Ct. 2003) ....................................................................19

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
  191 F.3d 229 (2d Cir. 1999) ....................................................................15, 21, 22

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
  26 F. Supp. 2d 593 (S.D.N.Y. 1998) .......................................................................6

Leasco Data Processing Equip. Corp. v. Maxwell,
  468 F.2d 1326 (2d Cir. 1972) .........................................................................8, 10

Lehigh Valley Indus., Inc. v. Birenbaum,
  527 F.2d 87 (2d Cir. 1975) ...............................................................................4, 6

Lesavoy v. Lane,
  304 F. Supp. 2d 520 (S.D.N.Y. 2004) ..................................................................23

Liberman v. Worden,
  701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000) ............................................20

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
  268 F.3d 58 (2d Cir. 2001) ...................................................................................1

Medina v. Bauer,
  2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ...........................................................1

Mende v. Milestone Tech. Inc.,
  269 F. Supp. 2d 246 (S.D.N.Y. 2003) ....................................................................4

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
  506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dep't 1986) ............................................17

Moss v. Morgan Stanley Inc.,
  719 F.2d 5 (2d Cir. 1983) ...................................................................................22

Nat'l Org. for Women, Inc. v. Scheidler,
  510 U.S. 249 (1994) ...........................................................................................21

Norvel Ltd. v. Ulstein Propeller AS,
  161 F. Supp. 2d 190 (S.D.N.Y. 2001) ....................................................................8

Oneida Indian Nation of New York v. City of Sherrill,
    337 F.3d 138 (2d Cir. 2003) ............................................................................26

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ...............................................................7, 15, 24

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972) ............................................................................11

Pyramyd Stone Int'l Corp. v. Crosman Corp.,
    1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) .......................................................5

Reers v. Deutsche Bahn AG,
    320 F. Supp. 2d 140 (S.D.N.Y.  2004) ...........................................................4, 5

Rose v. Goldman, Sachs & Co.,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)..............................................................12

S.E.C. v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990) ..........................................................................10

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
    2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ..........................................19

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
    230 F. Supp. 2d 403 (S.D.N.Y. 2002)................................................................5

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
    343 F. Supp. 2d 208 (S.D.N.Y. 2004)..............................................................10

Skipworth v. Lead Indus. Ass'n, Inc.,
    690 A.2d 169 (Pa. 1997) .................................................................................19

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) ...................................................19

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ...........................25

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ............................................................................11

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001)..............................................................16

Stewart v. Crosswalks Television Network,
    2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ...................................................20

Suarez v. Underwood,
    103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ..............19

In re Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................................................4, 6, 7, 8, 9,
    ........................................................................................ 10, 11, 12, 13, 14,

........................................................................................................ 15, 18, 19, 21, 22,
........................................................................................................23, 24, 25, 26

In re Terrorist Attacks on Sept. 11, 2001,
    03 MDL 1570 (RCC) (S.D.N.Y. Sept., 21 2005) ..........................................8, 10, 13, 16, 20, 22, 23

Tornheim v. Fed. Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ..........................................................................................16

United States Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) ....................................................................................................4

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ....................................................................................................23

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003) ........................................................................17

Wiwa v. Royal Dutch Petroleum Co.,
    2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ..........................................................................19

York v. Bar of New York,
    286 F.3d 122 (2d Cir. 2002) ..................................................................................................16

## Statutes And Other Authority

18 U.S.C. § 1962 (1988)..........................................................................................................22, 23

18 U.S.C. §§ 2331-2333 (2000)....................................................................................................23

Fed. R. Civ. P. 4(k)........................................................................................................................7

Fed. R. Civ. P. 8 ..........................................................................................................................11

Fed. R. Civ. P. 12(b)(2)..................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..............................................................................................................3, 11

N.Y. C.P.L.R. § 301 (McKinney 2001) ..........................................................................................4

N.Y. C.P.L.R. § 302(a)(2) (McKinney 2001) ..................................................................................5

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002) ..................................................................................17

ALAN WRIGHT & ARTHUR R. MILLER,
    FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004) ....................................................12, 24

8 N.Y. Jur., Conspiracy, § 19 (1982) ......................................................................................19, 20

## INTRODUCTION

The Complaint by the *Federal Insurance* plaintiffs makes sweeping allegations of grave wrongdoing by the named defendants, including movant DMI Administrative Services S.A. ("DMI S.A."). Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection between DMI S.A. and al Qaeda or, for that matter, any substantive contact between DMI S.A. and the United States. Instead, plaintiffs offer dozens of conclusory allegations that, as the Court's Orders to date establish, are categorically insufficient to withstand a motion to dismiss, sprinkled with a handful of factual allegations that are innocuous at best and self-contradictory at worst. Accordingly, in the absence of any allegations connecting DMI S.A. to the attacks of September 11, al Qaeda, or the United States, plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST DMI S.A.

The *Federal Insurance* plaintiffs' Complaint and Amended RICO Statement ("RICO Stmt.") (MDL Docket No. 949) contain only a handful of pertinent allegations regarding DMI S.A.,[1] which are restated below:

Jurisdictional Allegations:

As plaintiffs allege, DMI S.A. is an administrative services company located in Geneva, Switzerland. See RICO Stmt., Exh. A at 7. Plaintiffs assert that DMI S.A., in the early

---

[1] Plaintiffs define the abbreviation "DMI" to denote both DMI S.A. *and* its ultimate parent Dar Al-Maal Al-Islami Trust ("DMI Trust"). See RICO Stmt., Exh. A at 7. Plaintiffs then proceed to make various allegations about "DMI," without indicating which allegations are meant to apply to which company. However, DMI S.A. and DMI Trust are separate companies -- and separate defendants -- operating in different countries. Plaintiffs' allegations thus are unintelligible as written, and plaintiffs' claims may be dismissed on this ground alone. See Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong"). Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil between DMI S.A. and DMI Trust (or any other putatively related entity). See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (listing factors in determination of "domination," such as, *inter alia*, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to warrant veil-piercing). Nevertheless, in an abundance of caution, DMI S.A. will proceed as if all of the allegations mentioning "DMI" are intended to denote DMI S.A.

1980s, advertised three times in the *Wall Street Journal* or *New York Times* regarding the company's founding and its inability to attend a conference on Islamic Banking, and that DMI S.A.'s CEO reportedly said that related companies "substantially increased" their investments in the United States after September 11, 2001. See id., Exh. A at 16-17. Plaintiffs also aver that DMI S.A. held a 35% interest in Boston Capital, a Massachusetts-based real estate firm. See id., Exh. A at 20.

Allegations Concerning Donations to Charities:

As an article of faith, Muslims practice *zakat*, the donation of a percentage of their income to charitable causes. See id., Exh. A at 14-15; *Federal Insurance* First Amended Complaint ("FAC") ¶ 310. Plaintiffs allege that DMI S.A. donated *zakat* funds to branches of the International Islamic Relief Organization ("IIRO") and the Muslim World League ("MWL"). See RICO Stmt., Exh. A at 15-16. Plaintiffs conclude that, because it ostensibly made such donations, DMI S.A. was "necessarily aware" that those charities sponsored al Qaeda, see id., Exh. A at 16 -- even though by plaintiffs' own account such charities "facilitat[ed] and mask[ed] the collection and movement of [al-Qaeda] funds . . . to conceal [al Qaeda's] existence and true purpose." See FAC ¶¶ 80, 118.

Allegations Concerning The Provision of Banking Services:

Plaintiffs themselves acknowledge that DMI S.A. is an administrative services provider, not a bank. See id., Exh. A at 8. Nevertheless, plaintiffs allege that DMI S.A., in support of al Qaeda, "launder[ed] money," "provid[ed] financial services," and "facilitat[ed] weapons and military equipment purchases and money transfers." See id., Exh. A at 9. DMI S.A., plaintiffs assert, "has actively sponsored and supported . . . al Qaida," by unspecified means, via its putative affiliates Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank ("al Shamal"). See FAC ¶ 311; see also RICO Stmt., Exh. A at 12. The only allegation of fact that plaintiffs offer in support of this proposition is that members of al Qaeda maintained accounts at al Shamal, FIBS, and TIB, in the Sudan in the mid-1990s, and that money from those accounts was transferred by the account holders to other al Qaeda members. See RICO Stmt., Exh. A at 11, 12-13; FAC ¶¶ 318, 332, 341. In their Amended RICO Statement, plaintiffs further allege that affiliates of DMI S.A. have "facilitated financial transactions for, and advertised, maintained and

serviced accounts on behalf of, several of al Qaeda's known charity fronts, including al Haramain Islamic Foundation, [IIRO] and the [MWL]." See RICO Stmt., Exh. A at 9.

In sum, plaintiffs allege that DMI S.A. made donations to two Islamic charities, that its purported affiliates maintained and serviced accounts for those charities, and that al Qaeda members opened and used accounts at other putative affiliates of DMI S.A., in the Sudan in the mid-1990s.  Those are the allegations of specific fact that plaintiffs offer up in support of the proposition that DMI S.A. somehow participated in al Qaeda's plot to commit mass murder.  As this summary makes clear, plaintiffs do not make *any* allegations of fact showing that DMI S.A. made donations to charities with any knowledge that such charities were al Qaeda 'fronts,' or provided anything other than routine banking services to anyone.  Nor do plaintiffs allege *any facts* showing that DMI S.A. ever entered into any sort of agreement at all, let alone a conspiracy by all defendants to "commit acts of international terrorism against the United States, its nationals and allies."  See FAC ¶ 624.  Indeed, in their 182-page Complaint and 21-page RICO Statement, plaintiffs fail to allege any communication between DMI S.A. and anyone associated with al Qaeda; any facts that could be read to imply DMI S.A.'s supposed intent to cause an attack on the United States; or any facts connecting DMI S.A. in any way with the events of September 11.

## ARGUMENT

All claims against DMI S.A. should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over DMI S.A., and pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs fail to allege any that DMI S.A. had any relationship at all with al Qaeda or any role in the September 11 attacks, and hence fail to state their claims against DMI S.A.

## I
## THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.

DMI S.A. is a wholly foreign company, organized under the laws of Switzerland. The Complaint and RICO Statement fail to allege any facts that could be read to show that DMI S.A. has had any systematic contacts with the United States or any role in the terrorist attacks of September 11, 2001.  Thus, plaintiffs have not made the *prima facie* showing of minimum contacts

necessary, for due process purposes, to invoke personal jurisdiction over DMI S.A., and the claims against DMI S.A. should be dismissed in their entirety.

Plaintiffs bear the burden of establishing personal jurisdiction over DMI S.A.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).  To survive a motion to dismiss, plaintiffs must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809.  "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.

In a federal question case involving a foreign defendant, the District Court applies the personal jurisdiction rules of the state in which it sits, unless a federal statute explicitly provides for nationwide service of process.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.  Plaintiffs thus must allege facts sufficient to establish (i) personal jurisdiction under New York's long-arm statute and (ii) that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  See United States Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (internal quotation marks omitted); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804-11.

### A.  Plaintiffs Have Failed to Allege Any Facts that Would Support a Finding of Personal Jurisdiction under New York's Long-Arm Statute.

#### 1.  Plaintiffs Aver No Facts Showing that DMI S.A. Has Had Continuous and Systematic Contacts with New York to Support General Jurisdiction.

General jurisdiction under C.P.L.R. § 301 requires allegations showing that a defendant is "engaged in [ ] a continuous and systematic course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction."  See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  In assessing general jurisdiction, New York courts consider the following indicia of 'presence':  "1) the existence of an office in New York; 2) the solicitation of

business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York."  Cornell v. Assicurazioni Generali S.p.A., Consol., 2000 WL 284222, at *2 (S.D.N.Y. Mar. 16, 2000).

Plaintiffs here have not alleged facts showing *any* of these indicia as to DMI S.A.  As is discussed in more detail below, see infra Part I.B.1, plaintiffs' allegations concerning a minority interest in a Massachusetts-based firm and a couple of decades-old advertisements, see RICO Stmt., Exh. A at 16-17, 20, are (i) wholly unrelated to New York and (ii) entirely insufficient to confer general jurisdiction.  See Reers, 320 F. Supp. 2d at 154-56 (defendant's acquisition of two major hotel chains from a New York corporation, its joint venture with a New York venture capital firm, its strategic partnership with several major U.S. corporations, its two New York bank accounts, and its sales of stock in New York by defendant's own New York-based market-makers, among other contacts, were insufficient to confer general jurisdiction under New York law); Cornell, 2000 WL 284222, at *2 (granting motion to dismiss because vague allegations of a supposed multinational business arrangement were insufficient to establish general jurisdiction); Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 662 (S.D.N.Y. 1997) ("mere advertising or marketing activities do not constitute an adequate basis for general jurisdiction").  In sum, plaintiffs allege no facts showing that DMI S.A. is continuously and systematically doing business in New York.[2]

### 2.   Plaintiffs' Conclusory Allegations of Conspiracy and Aiding and Abetting Provide No Basis for Specific Personal Jurisdiction over DMI S.A.

Under § 302(a)(2) of the C.P.L.R., "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  Here, plaintiffs sweepingly assert that DMI S.A., and all other defendants, "conspired to commit acts of

---

[2]  Similarly, while plaintiffs make several allegations regarding the putative U.S. contacts of other subsidiaries of DMI Trust (not DMI S.A.), see RICO Statement, Exh. A at 18-19, plaintiffs have not alleged facts sufficient to support a finding that any putative affiliate of DMI S.A. was a "mere department" of DMI S.A., such that the affiliate's U.S. contacts might be attributed to DMI S.A. for jurisdictional purposes.  See Jazini, 148 F.3d at 184; see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 403, 410-12 (S.D.N.Y. 2002); Jacobs v. Felix Bloch Erben Verlag für Buhne Film und Funk KG, 160 F. Supp. 2d 722, 735-37 (S.D.N.Y. 2001); Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, at *6-10 (S.D.N.Y. Feb. 18, 1997).

international terrorism against the United States, its nationals and allies, which conspiracy included the provision of material support and resources to defendant al Qaida." See FAC ¶ 624.  Such a boilerplate, conclusory allegation cannot salvage plaintiffs' assertion of personal jurisdiction over DMI S.A.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction on a New York long-arm conspiracy theory); see also Lehigh Valley, 527 F.2d at 93-94.  "Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with transactions occurring in the United States."  Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotation marks and citation omitted, emphases added).  Moreover, "plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  Id. at 602.

Plaintiffs flatly assert that all defendants were co-conspirators, see FAC ¶¶ 66, 623-26, without supporting factual allegations as to DMI S.A.  Again, such baldly conclusory allegations fail to allege *facts* showing that DMI S.A. engaged in any such conspiracy: neither the plaintiffs' Complaint nor their RICO Statement alleges facts showing that DMI S.A. entered into any agreement with any New York actor; that any such New York actor acted for the benefit of DMI S.A.; that DMI S.A. exercised control over any such New York actor; or that DMI S.A. had knowledge of or consented to any activity whatsoever.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiffs "do not allege any specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities.").

As with their allegations regarding conspiracy, plaintiffs' conclusory allegations of aiding and abetting are insufficient to support personal jurisdiction over DMI S.A.  See FAC ¶ 631 (all "defendants aided and abetted al Qaida in its campaign to commit acts of international terrorism against the United States, its nationals and allies."); id. ¶ 66.  A claim of aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," and that "the defendant … know the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  In short, the alleged aider and abettor must have been aware of the wrongdoing and have provided substantial assistance in its commission.  Here, plaintiffs have proffered no facts sufficient to support any such finding as to DMI S.A.  See infra Part II.B.6.  Accordingly, plaintiffs cannot invoke specific jurisdiction over DMI S.A. on a concerted action theory, and to the extent that plaintiffs rely upon such a theory of jurisdiction, their claims must be dismissed.

**B.    DMI S.A. Has Not Had Minimum Contacts With the United States.**

Fed. R. Civ. P. 4(k)(2) provides long-arm jurisdiction over defendants, based upon contacts with the nation as a whole, when a federal claim is made against a foreign defendant not subject to jurisdiction in any state.  However, "[p]ersonal jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth Amendment due process requirements."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 807.

**1.    Plaintiffs Fail to Allege Continuous and Systematic Contacts with the United States to Support General Jurisdiction over DMI S.A.**

A finding of general jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) requires "continuous and systematic general business contacts" by DMI S.A. with the United States.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984); In re Sept. 11 Attacks, 349 F. Supp. 2d at 811 ("a considerably higher level of contacts is generally required" to plead general jurisdiction).  Plaintiffs here have not alleged facts sufficient to establish general personal jurisdiction over DMI S.A.  Plaintiffs allege that DMI S.A., in the early 1980s, advertised three times in the *Wall Street Journal* or *New York Times* regarding the company's founding and its inability to attend a conference on Islamic Banking, and that DMI S.A's CEO stated in a newspaper

article that affiliates had "substantially increased" their investments in the United States since September 11, 2001.  See RICO Stmt., Exh. A at 16-17, 20.  However, "plaintiffs' assertions that [defendant] advertises in several publications in the United States . . . are not sufficient to demonstrate [general] personal jurisdiction under the federal long-arm statute or in any state." Norvel Ltd. v. Ulstein Propeller AS, 161 F. Supp. 2d 190, 207-08 (S.D.N.Y. 2001).  Additionally, plaintiffs' allegation that DMI S.A. held a 35% interest in a Massachusetts-based real estate financing firm, see RICO Stmt., Exh. A at 20, again falls short of asserting general jurisdiction over DMI S.A. This single putative investment is not "systematic and continuous," as is required to invoke general jurisdiction over DMI S.A.  See, e.g., Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) (defendant's partnership with an American accounting firm to conduct business in the United States was insufficient to constitute general jurisdiction); In re Terrorist Attacks on Sept. 11, 2001, 03 MDL 1570 (RCC), at 15 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II") (granting dismissal for lack of general jurisdiction even though defendant owned substantial shares in two Texas-based corporations); Consolidated Gold Fields, PLC v. Anglo Am. Corp. of S. Africa Ltd., 698 F. Supp. 487, 494 (S.D.N.Y. 1988) (defendant's investments in four United States companies, valued at more than $650 million and which constituted more than 20% of its investment portfolio, held insufficient).  In short, plaintiffs tender nothing that could conceivably be read to assert that DMI S.A. has had the purposeful, systematic contacts with the United States necessary to establish general personal jurisdiction.  See Helicopteros, 466 U.S. at 416.

> **2.   This Court Lacks Specific Jurisdiction Because Plaintiffs Do Not Show that DMI S.A. Expressly Aimed Any Tortious Acts at the United States.**

In the absence of allegations supporting general jurisdiction over DMI S.A., plaintiffs apparently rely on a theory of specific jurisdiction, i.e., that personal jurisdiction over DMI S.A. may be exercised because DMI S.A.'s tortious actions (whatever those unalleged actions might have been) were expressly aimed at the United States.  In order to invoke specific personal jurisdiction and satisfy due process, plaintiffs must properly allege some tortious act by the defendant, and allege facts showing that the defendant "expressly aimed" such a tortious act at the forum.  See See Calder v. Jones, 465 U.S. 783, 789 (1984); In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must

make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries.").  Here, plaintiffs do not allege any particular wrongful acts by DMI S.A. at all.  Nor do they allege any facts indicating that DMI S.A. was aware that any of its actions would affect the United States in any way, let alone that DMI S.A. *directed* any wrongful actions toward the United States.

        Plaintiffs tender nothing in support of their claim that DMI S.A. provided financial services to suspect persons, much less that DMI S.A. provided anything other than routine banking services to anyone.[3]  Plaintiffs also offer nothing in support of their assertion that DMI S.A. knowingly donated *zakat* funds to the alleged 'front' charities IIRO and MWL.  See RICO Stmt., Exh. A at 15-16.  Instead, plaintiffs offer conclusory allegations and vague innuendo, unsupported by any specific allegations of fact.  As this Court has noted, however:

> The law does not permit Plaintiffs 'to circumvent the jurisdictional hurdle . . . by inserting vague and conclusory allegations of tortious conduct in their complaints -- and then  . . . rely on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations under the applicable substantive law.'

In re Sept. 11 Attacks, 349 F. Supp. 2d at 801; see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege supporting facts); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state *prima facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction").

        As the Second Circuit has made clear, the exercise of personal jurisdiction based upon acts of a defendant allegedly causing effects in New York "must be applied with caution, particularly in an international context."  Leasco, 468 F.2d at 1341; see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 811.  Accordingly, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.

---

[3]  It is unsurprising that plaintiffs have been unable to cite even one specific instance in which DMI S.A. provided financial services to anyone -- much less to any suspected terrorist -- given that plaintiffs themselves acknowledge that DMI S.A. is an administrative service provider, see RICO Stmt., Exh. A at 8, not a bank.

See Leasco, 468 F.2d at 1341; see also S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990). Plaintiffs' conclusory allegations do not suffice to establish even that any conduct by DMI S.A. -- whatever that unalleged conduct might have been -- had a direct effect in the forum, much less that DMI S.A. had good reason to expect such an effect.  Plaintiffs do not allege any facts indicating that DMI S.A. made any donations to charities with the knowledge that any such charity was a terrorist 'front,' or any facts indicating that DMI S.A. provided anything other than routine banking services to anyone.  Therefore, to the extent that plaintiffs rely upon a theory of specific personal jurisdiction, that reliance is misplaced, and plaintiffs' claims must be dismissed.  See In re Sept. 11 Attacks II, at 14 (granting dismissal for lack of specific personal jurisdiction because "[d]onating money to established humanitarian organizations [including the IIRO and MWL] that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States.").[4]

## II
## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI S.A.

Plaintiffs have entirely failed to allege facts sufficient to state any of the causes of action lodged against DMI S.A.  Indeed, as demonstrated above, plaintiffs have not alleged any particular wrongful conduct by DMI S.A. at all.  Furthermore, plaintiffs have alleged no facts indicating that any actions by DMI S.A. proximately caused plaintiffs' injuries, and have failed to allege facts sufficient to make out the specific elements of their claims.

Instead, plaintiffs make numerous conclusory allegations, indiscriminately attributing to DMI S.A., and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., FAC ¶ 66 (DMI S.A., and all other defendants, "aided and abetted, [and] conspired with . . . defendant al Qaida and/or affiliated FTOs, associations, organizations or persons"); RICO

---

[4]  Moreover, plaintiffs' allegations -- after two years, two Complaints, and two RICO Statements -- are wholly insufficient to warrant jurisdictional discovery. "Courts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 813-14; see also Jazini, 148 F.3d at 185-86 (denying jurisdictional discovery where allegations were "sparse [and] conclusory"); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 343 F. Supp. 2d 208, 217 (S.D.N.Y. 2004) (jurisdictional discovery denied where discovery likely would be futile).

Stmt., Exh. A, at 9 (DMI S.A. "has, over a period of many years, directly and through its subsidiaries and affiliates, knowingly provided material support and resources to al Qaeda and/or affiliated individuals and entities").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (same); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) ("hodgepodge of vague and conclusory allegations" held insufficient).

In the face of conclusory allegations of such boundless scope, and in the absence of any specific allegations of fact showing its putative role in the September 11 attack, DMI S.A. is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it.  See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must make allegations sufficient to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Rose v. Goldman, Sachs & Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de minimis*" pleading standards in discrimination cases, "plaintiff is required to set forth specific factual allegations to establish a *prima facie* case"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without … any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against

Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").

Apart from conclusory allegations that categorically fail to state their claims, plaintiffs offer only innuendo, supported by a handful of allegations of fact that, upon even cursory review, prove to be innocuous, and often self-contradictory.  For example, while plaintiffs allege that DMI S.A. has donated funds to IIRO and MWL, at an unspecified time and place, see RICO Stmt., Exh. A at 15-16, plaintiffs do not allege any facts showing that DMI S.A. made such donations with the knowledge that either charity was a terrorist 'front,' or any "facts to support an inference that [DMI S.A. was] sufficiently close to the terrorists' illegal activities" to infer such knowledge.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 800.  Moreover, plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations.  Plaintiffs themselves acknowledge that suspect charities "facilitat[ed] and mask[ed] the collection and movement of [al-Qaeda] funds" in order "to conceal [al Qaeda's] existence and true purpose," see FAC ¶¶ 80, 118, negating any inference that donors like DMI S.A. "knew or had to know" of such charities' nefarious activities.  See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 at 120-21 (3d ed. 2004) ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); Jenkins v. S&A Chaissan & Sons, Inc., 449 F. Supp. 216, 227 (S.D.N.Y. 1978) ("the bald statement that [defendant] received a fee need not be blindly accepted in view of the more specific allegations of paragraph 20 of the complaint, which state[s] that recruitment was accomplished through [a no-fee] system.").  Thus, "[p]laintiffs have not pleaded facts to suggest [that DMI S.A.] knew [it was] making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 800.[5]

---

[5]  Unlike Hamas in Boim, none of the organizations that DMI S.A. is alleged to have supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1002 (7th Cir. 2002) ("Boim II") (noting Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including allegations that  "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to

Likewise, while plaintiffs allege that al Qaeda members maintained accounts at the Sudanese banks FIBS, TIB and al Shamal, see FAC ¶ 311 and RICO Stmt., Exh. A at 12, and that other affiliates of DMI S.A. have "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of, several of al Qaeda's known charity fronts, including al Haramain Islamic Foundation, [IIRO] and the [MWL]," see id., Exh. A at 9, plaintiffs have pleaded no specific facts showing that DMI S.A. itself has ever engaged in any financial transactions of any sort, much less in any transaction having anything to do with terrorism; no facts showing when, how or why DMI S.A. allegedly "facilitated financial transactions for" al Haramain, the IIRO or the MWL; and no facts to suggest that DMI S.A. knew that any of its putative affiliates were providing banking services to anyone connected with al Qaeda.  Absent any such allegations of fact, plaintiffs' assertions that al Qaeda members maintained accounts at DMI S.A.'s putative Sudanese affiliates, and that affiliates of DMI S.A. "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of" such charities, allege nothing more than the provision of routine banking services.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, at 24 (dismissing claims where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").[6]  And again, plaintiffs' insinuations of wrongdoing are contradicted by their own allegation that DMI S.A.

---

Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants." In re Sept. 11 Attacks, 349 F. Supp. 2d at 800.  No such allegations are made here as to DMI S.A.

[6]  Similarly, plaintiffs' conclusory and unsupported allegation that DMI S.A. "launder[ed] money" for al Qaeda, see RICO Stmt., Exh. A at 9, does not substitute for allegations of facts sufficient to show that 1) DMI S.A. conducted a financial transaction in interstate commerce; 2) DMI S.A. knew that the property involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) (holding conclusory allegations insufficient); Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (same).

is an administrative services company, see RICO Stmt., Exh. A at 8, which provides administrative

and technical services to related companies and provides no banking services to anyone at all.

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI S.A.

consist of conclusory, boilerplate allegations that categorically fail to state a claim.  The few

allegations that are not utterly conclusory are either baldly irrelevant,[7] or allege nothing more than

routine banking services and innocuous charity donations that, according to plaintiffs' own

allegations, neither provided support to al Qaeda nor could have been expected to do so.  To state

their solemn claims against DMI S.A., plaintiffs are required to allege *something* "to support the

allegation that [DMI S.A.] knew [a] receiving organization to be a solicitor, collector, supporter,

front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided

assistance or encouragement to the wrongdoer."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.

"Here, there are no such factual bases presented, there are only conclusions."  Id.

A.    **Plaintiffs Have Failed To Plead Facts Sufficient To Show That
       Any Actions By DMI S.A. Proximately Caused Plaintiffs' Injuries.**

As a prominent example, plaintiffs tender nothing to support the proposition that

any actions of DMI S.A. proximately caused the injuries suffered by plaintiffs on September 11,

2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish

cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*,

that the injury complained of was a direct effect of DMI S.A.'s own tortious conduct.  See In re

Sept. 11 Attacks, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v.

Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs

---

[7]  For instance, plaintiffs' lengthy allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent, DMI Trust, are thoroughly irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment.  Compare RICO Stmt., Exh. A at 10-11 and FAC ¶ 312 with, e.g., In re Sept. 11 Attacks, 349 F. Supp. 2d at 833, 836 ("[A]n employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the employer's business."); Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 109 n.18 (D.D.C. 2003) (bank is not liable for conduct of board member unless director "act[ed] within the scope of his bank employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").

must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer. In re Sept. 11 Attacks, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman, 149 F.3d at 122-23 (citations omitted). Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id.

Plaintiffs here make no allegation of fact showing that any action by DMI S.A. proximately caused their injuries, instead offering up boilerplate, conclusory assertions of causation in their recited causes of action.[8] Nowhere do plaintiffs allege any facts indicating that the horrific events of September 11 were the direct and foreseeable result of any wrongful action by DMI S.A. This is of little surprise; plaintiffs could not make any such allegation, because plaintiffs have not alleged any particular wrongful action by DMI S.A. at all. Plaintiffs also have entirely failed to allege facts sufficient to make out an assertion that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting. See infra Part II.B.6. In sum, plaintiffs have failed to make any allegation against DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

---

[8]   See, e.g., FAC ¶ 617 (as to claim for infliction of emotional distress, "[a]s a direct and proximate result of the defendants' intentional, malicious, willful, unconscionable, reckless and/or negligent actions, plaintiffs' assignors have suffered and will continue to suffer severe and permanent emotional distress and anxiety'); id. FAC ¶¶ 600, 606, 608, 611, 625, 629, 632, 636-37, 640. These indiscriminate, 'catch-all' averments do not suffice to plead proximate causation as to DMI S.A. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.").

**B.** **Plaintiffs Have Failed To Plead Facts Sufficient To**
    **State Any Of Their Causes of Action Against DMI S.A.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI

S.A. because they have not alleged facts sufficient to make out specific elements of their various

claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor

legal conclusions cast as factual allegations, suffice to state a claim.  See York v. Bar of New York,

286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege

facts which, assumed to be true, confer a judicially cognizable right of action."); Sonds v. St.

Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b)

motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim . . . .  It

is imperative that the complaint contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory.").  Apart from legal

boilerplate posing as factual allegations, plaintiffs have entirely failed to plead any of the necessary

elements of their causes of action, other than injury.  Consequently, plaintiffs "can prove no set of

facts in support of their claims that would entitle them to relief."  In re Sept. 11 Attacks II, at 19.

The claims against DMI S.A. therefore must be dismissed.

**1.** **Trespass (Count 1).**

"Trespass is the interference with a person's right to possession of real property

either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be

intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home

Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires

that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at

a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long

Island, New York On January 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).  Where, as here,

plaintiffs assert that DMI S.A. aided and abetted a trespass, see FAC ¶ 601, they must allege that

DMI S.A. "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual

knowledge" that "[the primary tortfeasor's] conduct constituted" a trespass.  Wantanabe Realty

Corp. v. City of New York, 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. Dec. 3, 2003).

Plaintiffs of course do not allege that DMI S.A. itself committed any trespass, and rely instead upon theories of concerted action liability.  In support, plaintiffs make only the generalized, conclusory and non-cognizable allegation, against most of the defendants in this action, that they "knew, or should have known, that their provision of material support and resources to Al Qaida, affiliated foreign states, FTOs, persons, organizations, commercial entities, and other parties would result in the unlawful trespass upon the real and personal property of plaintiffs' insureds." See FAC ¶ 602.  Plaintiffs have proffered no specific allegation that, if proved out, would show that DMI S.A. gave "substantial assistance" to al Qaeda, had "actual knowledge" of the planned attacks, or intended to effect any trespass.  Accordingly, plaintiffs' trespass claim must be dismissed.

**2.      Wrongful Death & Survival (Counts 2 & 3).**

For plaintiffs to maintain a wrongful death claim under New York law, they must allege, through a properly appointed personal representative, that a defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death.  See N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002).  A survival claim requires the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death.  N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001); see also Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dep't 1986) ("both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent").  Here, again, plaintiffs have failed to allege any underlying tort by DMI S.A., and plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or survival.  Compare FAC ¶¶ 604-09 with Guadagnoli v. Seaview Radiology, P.C., 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegations); see also DeJesus, 87 F.3d at 70. Finally, plaintiffs have not properly alleged that any actions by DMI S.A. proximately caused the deaths of the victims of the September 11 attacks.  See supra Part II.A.

### 3.    Assault and Battery and Intentional Infliction of Emotional Distress (Counts 4 & 5).

Plaintiffs' claims for assault, battery, and intentional infliction of emotional distress are barred because "the statute of limitations for [such claims] is one year," In re Sept. 11 Attacks, 349 F. Supp. 2d at 829 (citations omitted), and plaintiffs filed their Complaint on September 10, 2003 -- almost two years after the Attacks.  Moreover, even as to those claims that arise out of injuries in Pennsylvania or Virginia, and that thus might not be barred under New York's statute of limitations, plaintiffs have not alleged that DMI S.A. directly perpetrated any assault, battery or outrageous conduct sufficient to state any of these three claims, and have entirely failed to allege that DMI S.A. either participated in any conspiracy to effect such torts upon plaintiffs, or aided and abetted any such torts against plaintiffs.  See infra Part II.B.6.  Finally, again, plaintiffs have not alleged any facts that could show that any action by DMI S.A. proximately caused plaintiffs' injuries.

### 4.    Negligent Infliction of Emotional Distress & Negligence (Counts 5 & 11).

Because plaintiffs "do not allege or identify a duty owed . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim." In re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover, even if some duty could be alleged, the plaintiffs do not allege a breach of any such duty of care by DMI S.A. -- because they allege no wrongful act or omission by DMI S.A. -- or proximate causation of their injuries.

### 5.    Torture Victims Protection Act (Count 6).

Plaintiffs' TVPA claim against DMI S.A., a corporation, has no merit because, among other reasons, "[o]nly individuals maybe sued under the TVPA" and there are no "allegations that [DMI S.A.] acted under color of law." In re Sept. 11 Attacks, 349 F. Supp. 2d at 828. Moreover, the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing." Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, *3 (S.D.N.Y. Feb. 28, 2002); see also Benas v. Baca, 2001 WL 485168, *4 (C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx. 753 (9th Cir.).  Because all injuries alleged in the instant case occurred within the United States, all of plaintiffs' TVPA claims must be dismissed.

6.      **Conspiracy and Aiding and Abetting (Counts 7 & 9).**

Plaintiffs' putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort").  For this reason alone, plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort, (ii) a corrupt agreement between two or more parties, (iii) an overt act in furtherance of the agreement, (iv) the parties' intentional participation in the furtherance of the plan or purpose, and (v) resulting damage or injury.[9]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Conclusory allegations are of course categorically insufficient to make out *any* of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, at 26-27 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Hattley v.

---

9      Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  Cf. Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).  The elements of aiding and abetting also do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); and Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts."). Yet the Complaint and RICO Statement allege *no* communications or consultations of *any* kind by *any* personnel of DMI S.A., much less communications or consultations from which one might infer the company's assent to a conspiracy "to commit acts of international terrorism against the United States, its nationals and allies . . . ." See FAC ¶ 624. Furthermore, plaintiffs allege no overt acts by DMI S.A. in furtherance of the purported conspiracy. See 8 N.Y. Jur., Conspiracy § 4 (1982). In sum, plaintiffs proffer no basis for their conclusory allegation that DMI S.A. participated in any conspiracy.

Similarly, plaintiffs have not properly alleged aiding and abetting. To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI S.A. had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act. See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege that defendants had knowledge of the misconduct and substantially assisted therein). Plaintiffs' conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI S.A. Compare FAC ¶ 684 ("Through the material support and resources provided to al Qaida, the co-defendants aided and abetted al Qaida in its campaign to commit acts of international terrorism against the United States, its nationals, and allies.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

Plaintiffs also cannot found aider and abettor liability upon their allegations that third parties connected to al Qaeda maintained bank accounts at putative affiliates of DMI S.A., in the Sudan, at some point in the mid-1990s. See FAC ¶ 311; see also RICO Stmt., Exh. A at 12. There is no allegation that DMI S.A. in any way assisted those third parties, much less that such assistance was substantial. There is no allegation that DMI S.A. did so knowingly or did anything that could

reasonably be read to imply such knowing assistance.  Nor is there any allegation that those accounts had anything at all to do with the attacks of September 11, 2001.  As a consequence, these attenuated allegations wholly fail to allege "knowing and substantial assistance" of al Qaeda for purposes of claims of aiding and abetting.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 ("FIBS' relationship with Al Shamal . . . which purportedly knowingly opened accounts for al Qaeda operatives . . . is too remote in time and proximity to implicate" the Chairman of DMI Trust).

### 7.    RICO (Count 8).

RICO standing is a "threshold question" that "represents a jurisdictional requirement."  Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).  Here, plaintiffs seek standing to assert their RICO claims, in part, as third-party subrogees of their insureds' injury in the September 11 attacks.  See FAC ¶¶ 541-97.  However, the Second Circuit in Laborers Local 17 affirmed that where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims." Laborers Local 17, 191 F.3d at 239; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269-70, 112 S.Ct. 1311 (1992) (setting out three policy factors which buttress the principle that plaintiffs with indirect injuries lack standing to sue under RICO).  In Laborers Local 17, the Second Circuit explained that even where the latter two policy factors are not robust -- *i.e.*, where the possibility of duplicative recoveries is remote and where the directly injured victims must recover under non-RICO claims -- because the plaintiffs' injuries were derivative of a harm to a third party, the injury was indirect and, therefore, plaintiffs lacked standing to sue under RICO.  See Laborers Local 17, 191 F.3d at 236-42.  Here, the insurance subrogation plaintiffs' RICO claims derive solely from the injuries suffered by persons injured by the September 11 attacks.  Because plaintiffs' injuries derive from those injuries, their injuries are indirect and plaintiffs lack standing to bring their RICO claims.

Plaintiffs also have failed to state their putative RICO claims against DMI S.A.  To state such a claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern'

(4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Additionally, plaintiffs' Section 1962(a) RICO claim requires an allegation of "injury [resulting] from the defendant's investment of the racketeering income," In re Sept. 11 Attacks, 349 F. Supp. 2d at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation that the defendant "participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing the enterprise's affairs," In re Sept. 11 Attacks II, at 21 (citation omitted); and plaintiffs' Section 1962(d) claim requires an allegation that the defendant was a "central figure" in the underlying scheme.  Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).  Where plaintiffs cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  See, e.g., Moss, 719 F.2d at 18-19.

Once more, plaintiffs' sparse allegations regarding DMI S.A., even if true, would establish *none* of the requisite elements of a civil RICO claim.  Neither the Complaint nor the RICO Statement allege two or more predicate acts by DMI S.A., or any facts that could show an agreement to commit two or more predicate acts by DMI S.A.  Plaintiffs allege no facts showing that DMI S.A. engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI S.A.'s assent to any alleged RICO conspiracy; no interest of, investment by, or participation by DMI S.A. in the alleged al Qaeda 'enterprise'; no injury from DMI S.A.'s (unalleged) investment of racketeering income; and no indication that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  Compare RICO Statement generally and FAC ¶¶ 307-12 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").  Plaintiffs thus have completely failed to state any RICO claims against DMI S.A., amply warranting dismissal of such claims.  See e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory

allegations); see also In re Sept. 11 Attacks II, at 23-25 (dismissing RICO claims against defendants because there were no allegations that they directed an enterprise); Dubai Islamic Bank, 256 F. Supp. 2d at 164-65 (dismissing § 1962(c) & (d) RICO claims against bank because the "opening of accounts . . . [and] transferring funds . . . do not constitute exerting control over the enterprise" and there were no allegations that bank was a central figure in the alleged scheme).

### 8. Anti-Terrorism Act (Count 10).

Under the ATA, a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism. 18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003). "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citing Boim II, 291 F.3d at 1023).

Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact that could possibly show that DMI S.A. engaged in any act of material support to al Qaeda knowingly or with a desire to see a terrorist plot succeed.[10] As set forth above, plaintiffs

---

[10] Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support prohibited activities such as the use of tobacco or alcohol, in an apparent attempt to imply that, because DMI S.A. donates to Islamic charities in order to ensure that *zakat* contributions do not support such activities, it must have known that the specific charities to whom it allegedly made contributions were terrorist 'fronts.' See RICO Stmt., Exh. A at 14-15. This allegation regarding the duty of *zakat*, however, cannot support such an implication. First, plaintiffs themselves acknowledge that Islamic charities' support for terrorism was conducted by "merg[ing]" and "hid[ing]" illicit funds among licit donations to "legitimate humanitarian or social programs," in order to "conceal [al Qaeda's] existence and true purpose," see FAC ¶¶ 80, 118, negating any inference that donors like DMI S.A. "had to know" that *zakat* funds were being diverted. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33 (dismissing claims against bank despite similar allegations regarding duty of *zakat*); 5C WRIGHT & MILLER, § 1363 at 120-21 ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations"). Second, plaintiffs allege only that, because DMI S.A. supposedly made *zakat* contributions to now-suspect charities, it "knew or had to know" that such charities were terrorist 'fronts'; yet as this Court has held, an implication of constructive knowledge is insufficient to establish *scienter* for ATA purposes. Rather, plaintiffs are required to allege facts showing *actual* knowledge of the recipient's terrorist activities (albeit not specific knowledge of the recipient's scheme). See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33 (citing Pittman, 149 F.3d at 123). No such facts as to DMI S.A. have been alleged here.

allege nothing more than that DMI S.A. made mundane charitable donations to the IIRO and MWL, and that putative affiliates of DMI S.A. provided routine banking services to charities and to unknown al Qaeda members in the Sudan in the mid-1990s, without any indication at all that DMI S.A. itself made any donations or provided any banking services with knowledge of the recipient's tortious activities.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (at 816 (alleged "relationship with Al Shamal . . . which purportedly knowingly opened accounts for al Qaeda operatives . . . is too remote in time and proximity"), 832-33, 835-36.

Clearly, as this Court held regarding Al Rajhi Bank, "Plaintiffs do not allege that [DMI S.A.] provided direct material support to al Qaeda": "Plaintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI S.A.] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33. [11]  Plaintiffs thus have wholly failed to state their ATA claim against DMI S.A., and the claim must be dismissed.

### 9.    Punitive Damages (Count 12).

Finally, plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

---

[11]  Indeed, the allegations against DMI S.A. are at least as empty as those asserted -- and found insufficient -- against Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim that DMI S.A. has in the past "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of" al Haramain, the IIRO and the MWL, see RICO Stmt., Exh. A at 9, again without any allegations indicating where, when, why or how DMI S.A. provided such banking services to those charities, or any facts indicating that DMI S.A. knew that any ostensible recipient of banking services was supporting terrorism.  Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831.  In contrast, plaintiffs here claim only that affiliates of DMI S.A. maintained accounts for unknown al Qaeda members in the Sudan in the mid-1990s, see FAC ¶ 311, again without any allegation showing that DMI S.A. knew that those accounts, at those putative affiliates, were held by suspect persons.

### III
### PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have filed two successive Complaints and two RICO Statements over the course of the last two years.  "Even with the opportunity to clarify their claims," however -- indeed, even with several opportunities -- plaintiffs' failure to state any of their claims against DMI S.A. is as complete as one could imagine.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33.  There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue with prejudice.  See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

### CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        September 23, 2005

Respectfully submitted,
SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/s/_____
    James J. McGuire (JM-5390)

    30 Rockefeller Plaza, 24th Floor
    New York, New York 10112
    (212) 332-3800
    *Attorneys for Defendant*
        *DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel