**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:    Continental Casualty Co., et al. v. Al Qaeda, et al. (04 CV 5970) (RCC)

New York Marine and General Ins. Co. v. Al Qaida, et al. (04 CV 6105) (RCC)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
  *Dar Al-Maal Al-Islami Trust*

### TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST ....................................................2

ARGUMENT .......................................................................................................................................4

I      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST .....................4

      A.     Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. ...........................9

      B.     Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ...................................12

      C.     Plaintiffs Have Failed To Plead Facts Sufficient To  State Any Of Their Causes of Action Against DMI Trust. ...................................................................14

            1.     Trespass (*Continental Casualty* Count 1; *New York Marine* Count 1)..................15

            2.     RICO (*Continental Casualty* Counts 2 & 3; *New York Marine* Count 3)............16

            3.     Conspiracy and Aiding and Abetting (*New York Marine* Counts 2 & 4).......................................................................................................................20

            4.     Anti-Terrorism Act (*New York Marine* Count 5)..................................................21

            5.     Negligence (*New York Marine* Count 6). .............................................................23

            6.     Punitive Damages (*New York Marine* Count 7). ...................................................23

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................23

CONCLUSION ..................................................................................................................................24

## TABLE OF AUTHORITIES

<u>**Cases**</u>

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
  1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992) ............................................................20

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
  792 F.2d 330 (3d Cir. 1986) ......................................................................................15

Acito v. Imcera Grp., Inc.,
  47 F.3d 47 (2d Cir. 1995) ..........................................................................................23

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
  885 F. Supp. 434 (E.D.N.Y. 1995) ............................................................................15

Alexander & Alexander of New York, Inc. v. Fritzen,
  68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986) ..........................................................10

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
  228 F.3d 429 (3d Cir. 2000) ......................................................................................20

In re Am. Express Co. S'holder Litig.,
  39 F.3d 395 (2d Cir. 1994) ........................................................................................13

American Fuel Corp. v. Utah Energy Dev. Co.,
  122 F.3d 130 (2d Cir. 1997) ........................................................................................2

Amsterdam Tobacco Inc. v. Philip Morris Inc.,
  107 F. Supp. 2d 210 (S.D.N.Y. 2000) .......................................................................18

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
  2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...............................................................2

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
  459 U.S. 519, 103 S. Ct. 897 (1983) .........................................................................11

Baisch v. Gallina,
  346 F.3d 366 (2d Cir. 2003) ......................................................................................18

Barr v. Abrams,
  810 F.2d 358 (2d Cir. 1987) ........................................................................................6

Boyanowski v. Capital Area Intermediate Unit,
  215 F.3d 396 (3d Cir. 2000) ......................................................................................20

Burnett v. Al Baraka Inv. and Dev. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003) .....................................................................1, 7, 21

Chudasama v. Mazda Motor Corp.,
  123 F.3d 1353 (11th Cir. 1998) ...................................................................................8

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ........................................................................................... 15

De Falco v. Bernas,
    244 F.3d 286 (2d Cir. 2001) ........................................................................................ 18

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) .......................................................................... 2, 13, 15, 19

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................................................. 18, 19

Eastern States Health & Welfare Fund v. Phillip Morris, Inc.,
    188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) ........................................... 17

Electronic Comrc'ns Corp. v. Toshiba Am.,
    129 F.3d 240 (2d Cir. 1997) ....................................................................................... 23

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ....................................................................................... 18

Flanagan v. Shively,
    783 F. Supp. 922 (M.D. Penn. 1992) .......................................................................... 10

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .............................................................. 5

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) .............................................................. 6

Gold v. Fields,
    1993 WL 212672 (S.D.N.Y. June 14, 1993) .............................................................. 18

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ....................................................................................... 20

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ................................................................................... 20

Harris v. City of New York,
    186 F.3d 243 (2d Cir. 1999) ....................................................................................... 15

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003) ........................................................... 11

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ......................................................................................... 10

Hishon v. King & Spalding,
    467 U.S. 69 (1984) ...................................................................................................... 15

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258, 112 S. Ct. 1311 (1992) ........................................................................ 17

Indus. Bank of Latvia v. Baltic Fin. Corp.,
1994 WL 286162 (S.D.N.Y. June 27, 1994) ..................................................................20

Int'l Brotherhood of Teamsters v. Phillip Morris, Inc.,
196 F.3d 818 (7th Cir. 1999)........................................................................................17

Johnston v. Norton,
1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ...............................................................11

Kittay v. Kornstein,
230 F.3d 531 (2d Cir. 2000) ........................................................................................5, 6

Koken v. Steinberg,
825 A.2d 723 (Pa. Comm. Ct. 2003) ...........................................................................11

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
191 F.3d 229 (2d Cir. 1999) ............................................................................12, 16, 17

Lesavoy v. Lane,
304 F. Supp. 2d 520 (S.D.N.Y. 2004).........................................................................19

Liberman v. Worden,
701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000).................................................11

In re Livent, Inc. Noteholders Secs. Litig.,
151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................14

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
268 F.3d 58 (2d Cir. 2001) .............................................................................................2

Mason v. Am. Tobacco Co.,
346 F.3d 36 (2d Cir. 2003) ..........................................................................................14

Medina v. Bauer,
2004 WL. 136636 (S.D.N.Y. Jan. 27, 2004) ..............................................................2, 5

Moss v. Morgan Stanley Inc.,
719 F.2d 5 (2d Cir. 1983) .......................................................................................18, 19

In re NASDAQ Market-Makers Antitrust Litig.,
894 F. Supp. 703 (S.D.N.Y. 1995) ..............................................................................11

Nat'l Org. for Women, Inc. v. Scheidler,
510 U.S. 249 (1994).....................................................................................................16

National Asbestos Workers Med. Fund v. Phillip Morris, Inc.,
74 F. Supp. 2d 221 (E.D.N.Y. 1999)...........................................................................17

Oneida Indian Nation of New York v. City of Sherrill,
337 F.3d 138 (2d Cir. 2003) ........................................................................................23

Papasan v. Allain,
478 U.S. 265 (1986)......................................................................................................13

Pittman v. Grayson,
  149 F.3d 111 (2d Cir. 1998) .................................................................................12

Powell v. Jarvis,
  460 F.2d 551 (2d Cir. 1972) ...................................................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
  1998 WL 355422 (S.D.N.Y. Jul. 2, 1998) ..............................................................7

Redtail Leasing, Inc. v. Bellezza,
  2001 WL 863556 (S.D.N.Y. July 31, 2001) ...........................................................18

Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.,
  99 F. Supp. 2d 174 (D.R.I. 2000)..........................................................................17

Rose v. Goldman, Sachs & Co.,
  163 F. Supp. 2d 238 (S.D.N.Y. 2001).....................................................................14

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
  2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ........................................... 11, 20

Skipworth v. Lead Indus. Ass'n, Inc.,
  690 A.2d 169 (Pa. 1997) ........................................................................................10

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999)...........................................................20

Smith v. County of Erie,
  295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ...................................23

Smith v. Islamic Emirate of Afghanistan,
  262 F. Supp. 2d 217 (S.D.N.Y. 2003)....................................................................21

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) ................................................... 5, 12, 14, 15, 21

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
  151 F. Supp. 2d 303 (S.D.N.Y. 2001).....................................................................15

Sparrow v. United Airlines, Inc.,
  216 F.3d 1111 (D.C. Cir. 2002) ...............................................................................6

Spoto v. Herkimer County Trust,
  2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ..........................................................18

Stewart v. Crosswalks Television Network,
  2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ..........................................................10

Suarez v. Underwood,
  103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ...................10

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002)...........................................................................................6, 14

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)..................................................................1, 5, 6, 7, 8,
    ..................................................................................................................9, 12, 13, 14, 15,
    ..................................................................................................................18, 21, 22, 23, 24

In re Terrorist Attacks on September 11, 2001,
    03 MDL 1570 (RCC) (S.D.N.Y. Sept., 21 2005) ......................................... 4, 7, 15, 18, 19

Tornheim v. Fed. Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ............................................................................15

Twombly v. Bell Atlantic Corp.,
    313 F. Supp. 2d 174 (S.D.N.Y. 2003)....................................................................6, 14

United States Fire Ins. Co. v. United Limousine Serv.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)......................................................................20

United States v. Allen,
    155 F.3d 35 (2d Cir. 1998) ......................................................................................18

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ......................................................................................21

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003)..........................................................16

York v. Bar of New York,
    286 F.3d 122 (2d Cir. 2002) ....................................................................................14

## Statutes And Other Authority

18 U.S.C. § 1962 (1988)..................................................................................... 18, 19

18 U.S.C. §§ 2331-2333 (2000)................................................................................21

Fed. R. Civ. P. 8 ....................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)..........................................................................................4, 5

8 N.Y. Jur., Conspiracy, § 19 (1982) ......................................................................10

## INTRODUCTION

As the Chairman of the Board of defendant Dar Al-Maal Al-Islami Trust ("DMI Trust") publicly stated shortly after the September 11 attacks, DMI Trust sympathizes deeply with the losses suffered by plaintiffs in this action, and joins the plaintiffs in condemning those who twist Islam into a false justification for the commission of atrocities such as those of September 11. At the same time, however, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants," Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("Burnett I"), and plaintiffs are required to make allegations of *fact* sufficient to support such inflammatory claims. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 800-01, 813-14, 830-31 (S.D.N.Y. 2005) ("in light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant").

Even with the benefit of two Complaints totaling 230 pages, the *Continental Casualty* and *New York Marine* plaintiffs have not made even a single such allegation with regard to DMI Trust. The Complaints by the *Continental Casualty* and *New York Marine* plaintiffs propound sweeping allegations of terrible wrongdoing by the named defendants, including movant DMI Trust. Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection at all between DMI Trust and al Qaeda, or that DMI Trust had any role whatsoever in the plot that culminated in the September 11 terrorist attacks. In lieu of factual allegations, plaintiffs offer only conclusory, boilerplate assertions that, as the Court's January 18 and September 21 Orders make clear, are categorically insufficient to state their claims. Accordingly, in the absence of any averment connecting DMI Trust to Al Qaeda or to the terrorist attacks of September 11, 2001, plaintiffs' claims must be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *Continental Casualty* Complaint contains only the sparsest of allegations regarding

DMI Trust,[1] which are restated below in their entirety:

- "DMI [Trust] operates broadly in Islamic countries, and investments are conducted strictly under Islamic rules.  DMI [Trust]'s actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and al Qaeda.  The $3.5 billion DMI Trust, whose slogan is 'Allah is the purveyor of success,' was founded 20 years ago to foster the spread of Islamic banking across the Muslim world. Its 12-member board of directors includes Haydar Mohamed bin Laden, a half-brother of Osama Bin Laden."  *Contl. Cas.* FAC ¶ 378.

- "DMI [Trust] has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and al Shamal Islamic Bank in the Sudan."  Id. ¶ 379.

- "DMI [Trust] owns 100% of Islamic Investment Bank of the Gulf[, which] . . . is the main shareholder of Faisal Islamic Bank of Sudan."  Id. ¶ 380.

- "Faisal Islamic Bank - Sudan was [] implicated as an al Qaeda sponsor during the 2001 United States trial on the 1998 embassy bombings in

---

[1]  In fact, there are *no* substantive allegations specifically asserted against DMI Trust.  Rather, plaintiffs assert their handful of conclusory allegations against "DMI," which plaintiffs have defined to refer solely to DMI Trust's indirect subsidiary, DMI Administrative Services S.A. ("DMI S.A.").  See *Continental Casualty* First Amended Complaint ("*Contl. Cas.* FAC") ¶ 378 ("DMI" [] is the registered name for DMI Administrative Services SA.").  However, DMI Trust and DMI S.A. are separate companies -- and separate defendants -- operating different businesses in different countries.  Plaintiffs' allegations regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone.  See, e.g., Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong").  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of DMI S.A. or any other putatively related entity.  See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (listing factors in determination of "domination," such as, *inter alia*, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil).  Nevertheless, for completeness' sake and for the convenience of the Court, DMI Trust will proceed as if all of the allegations mentioning "DMI" were intended to denote DMI Trust.

Africa as managing bank accounts for al Qaeda operatives." <u>Id.</u> ¶ 66; <u>see also</u> <u>id.</u> ¶ 269.

- Al Shamal Islamic Bank had five main founders, including Faisal Islamic Bank of Sudan. <u>Id.</u> ¶ 268; <u>see also</u> <u>id.</u> ¶¶ 53, 54, 65. "[Osama] Bin Laden used al Shamal Bank for the funding of his al Qaeda network leading up to the 1998 United States Embassy bombings in Africa." <u>Id.</u> ¶ 269; <u>see also</u> <u>id.</u> ¶¶ 57, 382. "[A]t least six al Qaeda operatives held bank accounts in al Shamal Islamic Bank under their real names." <u>Id.</u> ¶ 63. "Al Qaeda operatives received monthly checks of several hundred dollars from al Shamal Islamic Bank accounts and transferred $100,000.00 from al Shamal Islamic Bank to an al Qaeda representative in Jordan." <u>Id.</u> ¶ 64.

The only allegation in the *New York Marine* Complaint that even mentions DMI Trust alleges in conclusory fashion that:

- DMI Trust, among many other defendants, "ha[s] aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." *New York Marine* First Amended Complaint ("*NY Marine* FAC") ¶ 45.

As the above recitation makes clear, plaintiffs do not make *any* allegations of fact showing that DMI Trust ever entered into any transaction with, raised any funds for, or transferred any money or property to anyone at all, much less any allegations of fact showing that DMI Trust ever "rais[ed], launder[ed], transfer[red], distribut[ed], or hid[] funds for" Osama bin Laden and al Qaeda "in order to support their terrorist activities." *Contl. Cas.* FAC ¶ 26. Nor do plaintiffs allege *any* facts showing that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement "to attack the United States, murder United States citizens, destroy and damage the property of United States citizens and disrupt the United States' economy . . . ." <u>Id.</u> ¶ 27. Indeed, in their Complaints, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust in any way conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite 230 pages of combined pleadings, and because both plaintiffs have failed to file a RICO Statement as required by the Court's individual rules of practice, their claims should be dismissed with prejudice.

### I
### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

The *Continental Casualty* and *New York Marine* plaintiffs have thoroughly failed to allege facts sufficient to state *any* of the causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs' injuries.  Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of blunderbuss allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  For instance, the *New York Marine* plaintiff's *sole* averment mentioning DMI Trust -- lumped in with a hodgepodge of numerous other defendants -- is devoid of any specific allegations of fact at all.[2]  See *NY Marine* FAC ¶ 45 (defendants "have aided and

---

[2]  Such a solitary allegation of vicarious liability "does not adequately provide [DMI Trust] with notice as to how [it] provided material support to al Qaeda terrorists" and requires dismissal of the claims against it.  See In re Terrorist Attacks on Sept. 11, 2001, 03 MDL 1570 (RCC), at 27-28 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II").

abetted, conspired with, and provided material support and resources to" al Qaeda); see also, e.g., Contl. Cas. FAC ¶ 26 (the "remaining defendants," presumably including DMI Trust, "have conspired with, have aided and abetted and have provided material[] support and resources to Bin Laden, al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks."); id. ¶ 27 ("The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving defendants who have conspired for many years to attack the United States, murder United States' citizens, destroy and damage the property of United States citizens and disrupt the United States' economy").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Medina, 2004 WL 136636, at *6 (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

        In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[3]

       The only allegation that the *Continental Casualty* plaintiffs offer in support of such sweeping, conclusory accusations is an allegation that third parties associated with Al Qaeda "got account[s]" at the Sudanese banks Faisal Islamic Bank - Sudan ("FIBS"), Tadamon Islamic Bank ("TIB") and al Shamal Islamic Bank ("al Shamal"), at some time in the mid-1990s.  See *Contl. Cas.* FAC ¶¶ 63, 64, 66, 70, 269, 382.  The *Continental Casualty* plaintiffs make no allegations showing that DMI Trust was even aware of the existence of such accounts, much less that DMI Trust in any way

---

[3] For instance, the thoroughly conclusory allegation that all "remaining defendants," presumably including DMI Trust, "have conspired with, have aided and abetted and have provided material support and resources to Bin Laden, al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds" does not in any way specify what banking services DMI Trust is alleged to have provided, or to whom; plaintiffs' conclusory allegations do not specify whether DMI Trust is alleged to have loaned money to al Qaeda, written letters of credit for al Qaeda, maintained checking accounts for al Qaeda, provided investment advice to al Qaeda, or sent Osama bin Laden a free toaster.  See *Contl. Cas.* FAC ¶ 26; see also, e.g., *NY Marine* FAC ¶ 45; *Contl. Cas.* FAC ¶ 27. Certainly, these allegations include nothing that could be read to indicate that DMI Trust ever provided anything other than routine banking services to anyone, much less that DMI Trust knowingly provided banking services of any sort to terrorists.  Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI Trust with any meaningful notice of the supposed basis of the claims against it.  See, e.g., Kittay, 230 F.3d at 541.  Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that generalized, conclusory allegations should be deemed sufficient to state their immense claims.  Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims.  Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks II, at 20, citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

knowingly directed its putative Sudanese subsidiaries to maintain accounts for persons associated with al Qaeda.  Accordingly, the *Continental Casualty* plaintiffs do not state any claim against DMI Trust.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); <u>In re Sept. 11 Attacks II</u>, at 24 (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism").

Moreover, because banks are not "liable for injuries done with money that passes through [their] hands in the form of deposits, withdrawals . . . or other routine banking services," plaintiffs also have failed to allege any wrongdoing by these Sudanese entities.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 830, <u>citing</u> <u>Burnett I</u>, 274 F. Supp. 2d at 109.[4]  Even if those Sudanese entities had knowingly maintained such accounts, there is no indication that maintenance of those accounts was in any way a cause of, or for that matter, in any way contributed to, the September 11 plot.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" Chairman of the Board of DMI Trust).  Finally, the *Continental Casualty* plaintiffs have wholly failed to plead facts sufficient to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  <u>See</u> <u>supra</u> n.1; <u>see also</u> <u>Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.</u>, 1998 WL 355422, at *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).

The *New York Marine* plaintiff, for its part, has offered *no* allegations of fact whatsoever in support of its single, generalized and conclusory accusation that DMI Trust, and

---

[4] The *Continental Casualty* plaintiffs also allege that FIBS is a subsidiary of DMI Trust and that "[FIBS] was one of the five [sic] main founders of Al Shamal Islamic Bank."  <u>See</u> *Contl. Cas.* FAC ¶¶ 379, 268.  However, this Court has already held that "the allegation that [a defendant] was one of three founders of Al Shamal Islamic Bank in 1983, without additional allegations, does not state a claim for relief."  <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 836.  The assertion that one of DMI Trust's purported subsidiaries was one of the supposed founders of al Shamal even more clearly fails to support any claim against DMI Trust.

hundreds of other defendants, "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida."  See *NY Marine* FAC ¶ 45.

As the above recitation of plaintiffs' allegations makes clear, plaintiffs have proffered no specific allegation that DMI Trust itself ever engaged in any sort of conduct at all, much less any sort of wrongful conduct.  Plaintiffs have not made any allegations of fact showing that DMI Trust itself has ever provided banking services to anyone at all, much less that DMI Trust knowingly provided anything other than routine banking services to terrorists.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 ("[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability.").[5]  Plaintiffs allege no facts showing that DMI Trust had any knowledge of the alleged al Qaeda accounts in the Sudan in the mid-1990s, much less that DMI Trust intended those accounts to support al Qaeda; no facts showing that DMI Trust entered into a conspiracy with al Qaeda or aided and abetted any of al Qaeda's terrorist activities; and no facts indicating that any action by DMI Trust in any way caused plaintiffs' injuries.

In sum, plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate allegations that categorically fail to state a claim.  Those allegations that are not utterly conclusory are thoroughly irrelevant,[6] or allege nothing more than the provision of routine banking services by subsidiaries of DMI Trust.  To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."

---

[5]  In fact, as the *Continental Casualty* plaintiffs themselves allege in substance if not in form, see *Contl. Cas.* FAC ¶¶ 378-80, DMI Trust is a holding company that holds interests in related companies and provides no banking services to anyone at all.

[6]  For instance, the anomalously truthful allegation that DMI Trust's 'slogan' is "Allah is the purveyor of success," and the (also truthful) allegation that DMI Trust seeks to foster the growth and development of Islamic finance, see *Contl. Cas.* FAC ¶ 378, have no apparent purpose other than to invoke suspicion of DMI Trust simply because it operates according to Islamic principles of commerce and finance.

In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.  "Here, there are no such factual bases presented, there are only conclusions."  Id.[7]

> ### A.  Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11.  Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state their claims.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797-98, 805, 826, 830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the September 11 hijackers, they may proceed with" their claims.).  The New York Marine plaintiff asserts discrete causes of action for conspiracy and for aiding and abetting, see infra Part I.C.3, and plaintiffs in both actions apparently assert that DMI Trust committed the other torts complained of by conspiring with al Qaeda and by aiding and abetting al Qaeda's commission of such crimes.  See, e.g., NY Marine FAC ¶ 58 ("The conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to defendant al Qaida and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties."); Contl. Cas. FAC ¶ 603 ("The conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to defendant Al Qaeda and affiliated foreign states, FTOs, persons, organizations, commercial entities and other parties.").  Thus, because plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks, all of their claims depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.

---

[7]  A boundless discovery process may also be expected, if plaintiffs' claims are allowed to proceed in such a fashion.  Such a discovery process, untethered to any specific allegations of relevant fact, would be unmanageable, for both the parties and the Court.  See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

The *New York Marine* plaintiff's discrete causes of action for conspiracy and aiding and abetting are not recognized as independent causes of action in New York, and therefore are due to be dismissed.  See infra Part I.C.3.  Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[8]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, at 26-27 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.") and Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-04 (N.Y. 1986) (dismissing conspiracy claim because of insufficient allegation that defendant used improper means or intended to injure plaintiff).  The Complaints, however, allege *no* communications or consultations of *any* kind

---

[8] Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

by *any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy whose "direct, foreseeable and intended product" was "to commit acts of international terrorism against the United States, its nationals and allies."  See *NY Marine* FAC ¶ 63.  Furthermore, plaintiffs allege neither any overt acts by DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind.  See, e.g., Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Similarly, plaintiffs have not properly alleged aiding and abetting.  To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.  See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[9]  Plaintiffs' generalized, conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust.  Compare *NY Marine* FAC ¶ 63 ("Through the material support and resources provided to al Qaida, the codefendants aided and abetted al Qaida in its campaign to commit acts of international terrorism against the United States, its nationals, and allies.") and *Contl. Cas.* FAC ¶

---

[9]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

26 (the "remaining defendants" including presumptively DMI Trust "have aided and abetted and have provided material[] support and resources to Bin Laden, al Qaeda, and/or affiliated foreign terrorist organizations, associations and persons, including raising, laundering, transferring, distributing and hiding funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

In sum, plaintiffs allege no direct participation by DMI Trust in the September 11 attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting, plaintiffs' claims must be dismissed in their entirety.

**B.**     **Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

Plaintiffs tender nothing to support the proposition that any action by DMI Trust proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Furthermore, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  As discussed above, and as the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial

assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations omitted).  Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

        Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries.  Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action.  See, e.g., Contl. Cas. FAC ¶ 605 (as to trespass claim, "[t]he damages suffered by plaintiffs were the direct and proximate result of the aforesaid trespass upon the real and personal property of plaintiffs' insureds"); NY Marine FAC ¶ 70 (as to aiding and abetting claim, "[t]he September 11th Attack was a direct, intended and foreseeable product of the aiding and abetting of al Qaida by the co-defendants"); id. ¶ 80 (as to negligence claim, "[t]he damages suffered by [plaintiff] . . . were the direct and proximate result of the aforesaid breaches of care by the defendants.").  These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986); De Jesus, 87 F.3d at 70.

        Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action by DMI Trust.  For instance, even if third parties allegedly connected to al Qaeda "got account" at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, see Contl. Cas. FAC ¶ 66, the Complaints allege no facts to suggest that those accounts were in any sense a cause of -- or were connected at all to -- the September 11 attacks.  There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether it was ever used for any purpose, and if so what that purpose was.  Certainly, there is no indication, either within the four corners of the pleadings or

elsewhere, that those bank accounts in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" Chairman of the Board of DMI Trust).  In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, i.e., allegations of facts showing that the plaintiffs' injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful action.  Boim II, 291 F.3d at 1012.  The *Continental Casualty* plaintiffs' allegation that putative indirect subsidiaries of DMI Trust maintained routine bank accounts for individuals then not known to be terrorists, in the Sudan in the mid-1990s, thus falls far short of the allegations deemed *in*sufficient to establish proximate causation in Boim II.  The *New York Marine* plaintiff, again, offers no allegations of fact whatsoever in support of its claims against DMI Trust, and hence no allegations that could support a finding of proximate cause.

Plaintiffs have also entirely failed to allege facts sufficient to support any assertion that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A.; infra Part I.C.3.  In sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of proximate cause as to any of the pending claims.

**C.    Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI Trust because they have not alleged facts sufficient to make out the specific elements of their various claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36; Twombly, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit"); Rose v.

Goldman, Sachs & Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de minimis*" pleading standards in discrimination cases, "a plaintiff is required to set forth specific factual allegations to establish a *prima facie* case"); In re Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the factual pleadings . . . must be sufficient to state all the requisite elements of a given theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegations of fact -- *any* allegations of fact -- showing that DMI Trust ever actually *did* anything wrongful that could give rise to plaintiffs' immense claims.  See Smith, 291 F.3d at 240; De Jesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-36.  Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed to plead facts sufficient to satisfy *any* of the elements of their causes of action, other than injury.  Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief."  In re Sept. 11 Attacks II, at 19, citing Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The claims against DMI Trust therefore must be dismissed.

1.    **Trespass (*Continental Casualty* Count 1; *New York Marine* Count 1).**

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long

Island, New York On January 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[10]  Where, as here, plaintiffs assert that DMI Trust aided and abetted a trespass, see *Contl. Cas.* FAC ¶ 603 and *NY Marine* FAC ¶ 58, they must allege that DMI Trust "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. Dec. 3, 2003).

Plaintiffs make only the generalized allegation, against most of the defendants in this action, that they "knew, or should have known, that their provision of material support and resources to al Qaeda and affiliated foreign states . . . would result in an unlawful trespass upon the real and personal property of plaintiffs' insureds."  *Contl. Cas.* FAC ¶ 604; see also *NY Marine* FAC ¶ 59.  Plaintiffs have proffered no allegation that, if proved out, would show that DMI Trust gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, or intended any trespass.  Plaintiffs have also failed to allege that DMI Trust committed any wrongful act that resulted in any trespass, and have again failed to plead proximate causation as to DMI Trust.  See supra Part I.B.  Accordingly, plaintiffs' trespass claims against DMI Trust should be dismissed.

2.      **RICO (*Continental Casualty* Counts 2 & 3; *New York Marine* Count 3).**

(a)      Plaintiffs Lack Standing To Bring Their RICO Claims.

RICO standing is a "threshold question" that "represents a jurisdictional requirement."  Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).  Here, plaintiffs seek standing to assert their RICO claims as third-party subrogees of their insureds' injury in the September 11 attacks.  See *Contl. Cas.* FAC ¶ 596; *NY Marine* FAC ¶ 54.  However, the Second Circuit in Laborers Local 17 affirmed that where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims."  Laborers Local 17, 191 F.3d at 239.  The Supreme Court has set out three

---

[10]  The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994); A.J. Cunningham Packing Corp. v. Congress Fin. Corp., 792 F.2d 330, 334 & n.4 (3d Cir. 1986).

policy factors which buttress the principle that plaintiffs with indirect injuries lack standing to sue under RICO:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269-70, 112 S.Ct. 1311 (1992) (citations omitted). In Laborers Local 17, the Second Circuit explained that even where the latter two policy factors are not robust -- i.e., where the possibility of duplicative recoveries is remote and where the directly injured victims must recover under non-RICO claims -- because the plaintiffs' injuries were derivative of a harm to a third party, the injury was indirect and, therefore, plaintiffs lacked standing to sue under RICO.  See Laborers Local 17, 191 F.3d at 236-42.  One District Court case, National Asbestos Workers Med. Fund v. Phillip Morris, Inc., 74 F. Supp. 2d 221 (E.D.N.Y. 1999), has been read broadly by some plaintiffs to warrant RICO standing as a subrogee of persons who suffered injuries.  However, the District Court opinion in National Asbestos cannot control here, because it is directly contrary to the earlier decision of the Second Circuit in Laborers Local 17, 191 F.3d at 235-241.  Moreover, the holding in National Asbestos has been repeatedly and harshly rejected.  See Int'l Brotherhood of Teamsters v. Phillip Morris, Inc., 196 F.3d 818, 827 (7th Cir. 1999) (describing National Asbestos opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in Laborers Local 17].”); Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 99 F. Supp. 2d 174, 178 (D.R.I. 2000) (“[T]his Court disagrees with the reasoning and result in National Asbestos.”); Eastern States Health & Welfare Fund v. Phillip Morris, Inc., 188 Misc.2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (recognizing cases criticizing National Asbestos and stating

"this Court does not find [Judge Weinstein's] analysis [in <u>National Asbestos</u>] persuasive or applicable.").

Here, the insurance subrogation plaintiffs' RICO claims derive solely from the injuries suffered by persons injured by the September 11 attacks.  Because plaintiffs' injuries derive from those injuries, their injuries are indirect and plaintiffs lack standing to bring their RICO claims.[11]

        (b)      <u>Plaintiffs Have Failed To State Their RICO Claims.</u>

Plaintiffs also have failed to state their putative RICO claims against DMI Trust.  To state a civil RICO claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." <u>Moss v. Morgan Stanley Inc.</u>, 719 F.2d 5, 17 (2d Cir. 1983); <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 826-27.  Additionally, plaintiffs' Section 1962(a) claim requires an allegation of fact showing an "injury [resulting] from the defendant's investment of the racketeering income," <u>see id.</u> at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation of fact showing that the defendant "participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing the enterprise's affairs," <u>In re Sept. 11 Attacks II</u>, at 21 (citation omitted);[12] and plaintiffs' Section 1962(d) claim requires an allegation of fact showing

---

[11]  Plaintiffs' RICO claims also should be dismissed for failure to file a RICO Statement.  <u>See</u> Instructions For Filing RICO Statement, *available at* <u>http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf</u> ("All parties asserting claims pursuant to the [RICO Act], must file and serve upon the opposing party a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim."); <u>Spoto v. Herkimer County Trust</u>, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO statement."); <u>see also</u> <u>Gold v. Fields</u>, 1993 WL 212672, at *5 & n.5 (S.D.N.Y. June 14, 1993) (imposing Rule 11 sanctions on plaintiffs' counsel for failure to file a RICO Statement even though plaintiffs' counsel had already decided to drop their RICO claim).

[12]  Plaintiffs have argued that this additional pleading requirement for a Section 1962(c) claim has been described as "a relatively low hurdle for plaintiffs to clear."  <u>Citing</u> <u>First Capital Asset Mgmt. v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d Cir. 2004), <u>Baisch v. Gallina</u>, 346 F.3d 366, 377 (2d Cir. 2003); <u>De Falco v.</u>

that the defendant was a "central figure" in the scheme.  <u>Dubai Islamic Bank v. Citibank, N.A.</u>, 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).  Where plaintiffs cannot specifically allege these elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  <u>See</u>, <u>e.g.</u>, <u>Moss</u>, 719 F.2d at 18-19.

   Once more, plaintiffs' sparse allegations regarding DMI Trust, even if proven, would establish *none* of the requisite elements of a civil RICO claim.  Neither of the Complaints alleges two or more predicate acts by DMI Trust, or any facts that could show an agreement to commit two or more predicate acts by DMI Trust.  Plaintiffs allege no facts showing that DMI Trust engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI Trust's assent to any alleged RICO conspiracy; no interest of, investment by, or participation by DMI Trust in the alleged al Qaeda 'enterprise'; no injury resulting from DMI Trust's (unalleged) investment of racketeering income; and no indication that DMI Trust was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  <u>Compare</u> *Contl. Cas.* FAC ¶¶ 378-80 <u>and</u> *NY Marine* FAC ¶ 45 <u>with</u> <u>Lesavoy v. Lane</u>, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements.  These elements . . . must be tightly particularized . . . .  Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").

   Plaintiffs thus have utterly failed to state any of their RICO claims against DMI Trust, amply warranting dismissal of those claims.  <u>See</u> <u>e.g.</u>, <u>De Jesus</u>, 87 F.3d at 70 (dismissing

---

Bernas, 244 F.3d 286, 309 (2d Cir. 2001); <u>United States v. Allen</u>, 155 F.3d 35, 42-43 (2d Cir. 1998).  Plaintiffs blatantly misrepresent the state of the law on point:  the Court in <u>First Capital</u> affirmed the dismissal of the RICO claims at issue, and none of the remaining three cases addressed pleading standards.  <u>See</u> <u>Baisch</u>, 346 F.3d at 376-77 (vacating summary judgment for defendants and remanding for further proceedings because plaintiff presented numerous specific facts, including defendant raising financing for the enterprise, obtaining bonds and insurance coverage, issuing false insurance certificates, concealing deceptive payroll practices and representing a co-defendant in meetings with plaintiff); <u>De Falco</u>, 244 F.3d at 309-13 (on appeal from jury verdict, finding ample evidence supporting RICO claims); <u>Allen</u>, 155 F.3d at 42-44 (vacating the granting of summary judgment for plaintiff because issues of fact existed as to existence of RICO enterprise).  In contrast, courts actually faced with the additional pleading requirements of Section 1962(c) have repeatedly stated that the operation-management test is "a very difficult test to satisfy."  <u>Dubai Islamic Bank</u>, 256 F. Supp. 2d at 164, <u>citing</u> <u>LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co.</u>, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996); <u>see also</u> <u>Redtail Leasing, Inc. v. Bellezza</u>, 2001 WL 863556, at *4 (S.D.N.Y. July 31, 2001); <u>Amsterdam Tobacco Inc. v. Philip Morris Inc.</u>, 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) ("Courts within the Second Circuit have dismissed RICO claims which failed to meet the[] stringent standards [of § 1962(c)].").

RICO claim based upon conclusory allegations); <u>In re Sept. 11 Attacks II</u>, at 23-25 (dismissing RICO claims against defendants because there were no allegations that they directed an enterprise); <u>Dubai Islamic Bank</u>, 256 F. Supp. 2d at 164-65 (dismissing § 1962 (c) & (d) claims against bank because the "opening of accounts [and] transferring funds . . . do not constitute exerting control over the enterprise" and there were no allegations showing that bank was a 'central figure' in the alleged RICO scheme); <u>Indus. Bank of Latvia v. Baltic Fin. Corp.</u>, 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim"); <u>United States Fire Ins. Co. v. United Limousine Serv.</u>, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts should strive to flush out frivolous RICO allegations at an early stage of the litigation").

### 3.    Conspiracy and Aiding and Abetting (*New York Marine* Counts 2 & 4).

The *New York Marine* plaintiff's putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  <u>See</u> <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); <u>Small v. Lorillard Tobacco Co.</u>, 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort").[13]  For this reason alone, the *New York Marine* plaintiff's putative conspiracy and aiding and abetting causes of action must be dismissed.

Moreover, even if conspiracy and aiding and abetting were cognizable as discrete causes of action, the *New York Marine* plaintiff has entirely failed to allege facts sufficient to state any such claim.  <u>See</u> <u>supra</u> Part I.A.  Plaintiff's various conclusory allegations are categorically insufficient to make out any of the elements of conspiracy, and plaintiff alleges no facts showing that DMI Trust ever entered into any corrupt agreement or ever took any overt acts in furtherance of any

---

[13]  Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 407 (3d Cir. 2000); <u>Kieft v. Becker</u>, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31,  2002); <u>see also</u> <u>Halberstam v. Welch</u>, 705 F.2d 472, 479 (D.C. Cir. 1983). Pennsylvania also does not recognize an independent tort of aiding and abetting.  <u>Allegheny Gen. Hosp. v. Phillip Morris, Inc.</u>, 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting claim is recognized under Virginia law.  <u>Compare</u> <u>A.G. Van Metre Const., Inc. v. NVKettler L.P.</u>, 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) <u>with</u> <u>Sherry Wilson & Co., Inc. v. Generals Court, L.C.</u>, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

conspiracy.  See id.  Similarly, the *New York Marine* plaintiff has not properly alleged aiding and abetting, because it has not alleged any facts showing that DMI Trust "intentionally and substantially" assisted in the commission of al Qaeda's tortious acts, or any facts showing that DMI Trust provided any such assistance with knowledge of the underlying tortious activity of al Qaeda.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 826 (defendant must know the wrongful nature of the primary actor's conduct to be liable on a concerted action theory), 832-33 (dismissing claims against al Rajhi Bank).

### 4.      **Anti-Terrorism Act (*New York Marine* Count 5).**

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff may bring a private cause of action for damages, where plaintiff (i) is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) as a proximate result of a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 220-22 & n.5 (S.D.N.Y. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828; see also Boim II, 291 F.3d at 1023 (defendants must be alleged to have acted knowingly); Burnett I, 274 F. Supp. 2d at 106 (ATA claim requires knowledge and intent to further violent acts, and those violent acts must be reasonably foreseeable result of defendant's actions); Smith, 262 F. Supp. 2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts, and proximate cause.").[14]

Other than its aforementioned conclusory allegation, the *New York Marine* plaintiff here makes no allegation of fact showing that DMI Trust engaged in any act of material support to al Qaeda, much less that DMI Trust did so knowingly or with a desire to see a terrorist plot succeed. As set forth above, plaintiff alleges nothing more than that DMI Trust "aided and abetted, conspired

---

[14]  Additionally, because relief under the ATA is available only to United States nationals, all plaintiffs who are not United States nationals lack standing, and their ATA claims must be dismissed for that reason alone.  See, e.g., Burnett I, 274 F. Supp. 2d at 105.

with, and provided material support and resources to, defendant al Qaida," see *NY Marine* ¶ 45,

without any allegations of fact showing that DMI Trust provided "material support" to al Qaeda,

much less any allegations of fact showing that DMI Trust provided anything at all to any terrorist

with knowledge of the recipient's tortious activities.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at

832-33, 835-36.

      Indeed, the allegations against DMI Trust are as least as empty as those asserted --

and found insufficient -- against Al Rajhi Bank.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 831-

33.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al

Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al

Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and

Saudi Arabian authorities."  See id. at 831.  Plaintiffs further contend that two of the September 11

hijackers themselves either held an account or transferred money through Al Rajhi Bank.  See id.

Here, however, the *New York Marine* plaintiff merely claims that DMI Trust "provided material

support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or

persons," see *NY Marine* FAC ¶ 45, without any allegations of fact showing any transfer of funds or

other provision of material support by DMI Trust to anyone connected with terrorism; any facts

indicating that DMI Trust knew that any ostensible recipient of funds or support was supporting

terrorism; or any allegation showing that DMI Trust, or any of its subsidiaries or affiliates, provided

anything other than routine banking services to anyone.

      Clearly, as this Court held regarding Al Rajhi Bank, "Plaintiffs do not allege that

[DMI Trust] provided direct material support to al Qaeda," as is required to state an ATA claim:

"Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [the

charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries

funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged

any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11."  See

In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33.  The *New York Marine* plaintiff therefore has

wholly failed to state its ATA claim, and that claim must be dismissed.

### 5.   Negligence (*New York Marine* Count 6).

Because the *New York Marine* plaintiff "do[es] not allege or identify a duty owed . . . the negligence . . . claim[] [must be] dismissed for failure to state a claim."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31.  Moreover, even if some duty could be alleged, the *New York Marine* plaintiff does not allege a breach of any such duty of care by DMI Trust -- because it alleges no wrongful act or omission by DMI Trust -- or proximate causation of its injuries.  See supra Part I.B.

### 6.   Punitive Damages (*New York Marine* Count 7).

Finally, the *New York Marine* plaintiff cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

## II
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

The *Continental Casualty* plaintiffs and the *New York Marine* plaintiff have each filed two successive Complaints over the course of the last year -- and plaintiffs have chosen not to file a RICO Statement against DMI Trust, in clear violation of this Court's individual rules of practice. See supra n.11.  "Even with the opportunity to clarify their claims" -- indeed, even with several opportunities -- plaintiffs' failure to state any of their claims against DMI Trust is as complete, and as conclusive, as one could imagine.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim").  There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice.  See Oneida Indian Nation of

New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

## CONCLUSION

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001." In re Sept. 11 Attacks, 349 F. Supp. 2d at 796. Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust. They have not done so. For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
       September 23, 2005

                              Respectfully submitted,
                              SHEPPARD MULLIN RICHTER & HAMPTON LLP

                              By:_____/s/_____
                                 James J. McGuire (JM-5390)

                                 30 Rockefeller Plaza, 24th Floor
                                 New York, New York 10112
                                 (212) 332-3800

                                 *Attorneys for Defendant*
                                     *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel