UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case No. 03-CV-5738 (S.D.N.Y.)
*Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.,* Case No. 1:02-6977 (S.D.N.Y.)
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
*Cantor Fitzgerald & Co., et al. v. Akida Bank Private, Ltd., et al.*, Case No. 04-CV-7065 (S.D.N.Y.)
*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
*Estate of John P. O'Neill, Sr., on behalf of John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-1923 (S.D.N.Y.)
*Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
*New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
*World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
KHALID BIN MAHFOUZ'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

**TABLE OF CONTENTS**

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ .................................................................................................... 2

    A.   Mr. Bin Mahfouz Did Not "Purposefully Direct" His Conduct At The U. S. ................................................................................................... 2

    B.   Mr. Bin Mahfouz's Conduct Does Not Give Rise to Conspiracy Jurisdiction ................................................................................................ 6

    C.   Plaintiffs Concede That General Jurisdiction Does Not Exist Over Mr. Bin Mahfouz and Thus Are Not Entitled to Jurisdictional Discovery ..................... 6

II.  THE COMPLAINTS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6) ............ 8

    A.   Plaintiffs Fail to State a Claim Under the Anti-Terrorism Act ........................ 8

    B.   Plaintiffs' Other Claims Must Also Be Dismissed .......................................... 10

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*page*

*Boim v. Quaranic Literacy Institute*, 127 F. Supp. 2d 1002 (N.D. Ill. 2001), *aff'd*, 291 F.3d 1000 (7th Cir. 2002) ..................................................................................................9

*Burnett v. Al Barka Investment and Development Corporation,* 274 F. Supp. 2d 86 (D.D.C. 2003) ...........................................................................................................9

*Construction Aggregates, Inc. v. Senior Commodity Co.*, 860 F. Supp. 1176 (E.D. Tex. 1994), *aff'd*, 48 F.3d 531 (5th Cir. 1995) ................................................................7

*Cutco Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) .....................................................2

*First Capital Asset Management, Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369 (S.D.N.Y. 2002) ...................................................................................................7

*Grimes v. Vitalink Committee Corp.*, 17 F.3d 1553 (3d Cir. 1994) ...................................................8

*Klinghoffer v. S.N.C. Achille Lauro ED Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991) ................................................8

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y)..........................................................5

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993) .......................................................................10

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)..............................................................................10

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.* 75 F.3d 801 (2d Cir. 1996) ........................................................................................1

*Shaffer v. Heitner*, 433 U.S. 186 (1977) .......................................................................................7

*In re Terrorist Attacks on September 11, 2001 ("Terrorist Attacks I")*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................................................ *passim*

*In re Terrorist Attacks on September 11, 2001 ("Terrorist Attacks II")*, No. 03 MDL 1570 (RCC), slip op. (S.D.N.Y. Sept. 21, 2005) ................................................................*passim*

## STATUTES AND RULES

Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq*......................................................................8

RICO, 18 U.S.C. § 1962(c)....................................................................................................9, 10

Fed. R. Civ. P. 8(a) ...........................................................................................................2

Red. R. Civ. P. 12(b)(6) ........................................................................................................... 3

## ARGUMENT

Plaintiffs' Opposition relies principally on what they call a $3 million "KBM-to-Muwaffaq [Blessed Relief] transfer" (Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Khalid Bin Mahfouz at 4 ("Opp."); *see also* Opp. at 23) and a "$74 million KBM-to-IIRO transfer" (Opp. at 4, 5; *see also* Opp. at 23).  Yet their complaints and RICO statements make clear that such transfers were made by the National Commercial Bank ("NCB"), not by Mr. Bin Mahfouz and provide no facts that would support an inference either that Mr. Bin Mahfouz directed any such transfers or that he knew that these charities funded al Qaeda.  (*See Ashton* ¶¶ 461, 571; *Cont. Cas.* ¶ 352, 369; *WTC* ¶ 231, 667; *WTC* RICO Stmt. Ex. A at 3; *O'Neill* ¶ 34; *Euro.* RICO Stmt. Ex. A at 3.)  Mr. Bin Mahfouz has noted on several occasions that Plaintiffs have based their complaints on what they claim is the report of an NCB audit allegedly conducted in 1998.  (*See* Memorandum in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiffs' Complaint at 8 & Ex. B (Sept. 12, 2003) ("KBM *Burnett* MTD") (attaching the purported report); Memorandum in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiffs' Complaints at 6 (June 27, 2005) ("MTD").)[1]  Plaintiffs do not deny that this document is the foundation for their claims, nor do they dispute that this document provides no basis to claim that the transfers were directed by Mr. Bin Mahfouz or that he knew the charities to be supporters of al Qaeda and its jihad against the United States.

Plaintiffs are reduced to arguing that they should be permitted to proceed with this action simply because Mr. Bin Mahfouz was associated with two organizations that Plaintiffs contend (but have not adequately alleged) to be involved in financing al Qaeda (NCB and Blessed Relief)

---

[1] Because Plaintiffs rely heavily upon and quote from this alleged report, it is integral to their complaints and this Court is entitled to consider it.  *See San Leandro Emer. Med. Group Sharing Plan v. Philip Morris Cos.*,

and a third (BCCI) that had nothing to do with al Qaeda.  Plaintiffs argue that these associations cannot be innocent "coincidence."  But obviously, it is neither surprising nor coincidental that Plaintiffs have accused organizations with which Mr. Bin Mahfouz has been associated, among many other Saudi banks and charities.  And this Court has made clear that mere association with organizations alleged to provide support for al Qaeda is not enough to create a *prima facie* case sufficient to assert jurisdiction over a foreign national like Mr. Bin Mahfouz.

I. **THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ**

Plaintiffs rest their assertion of jurisdiction on the merits of their underlying claim: that because Mr. Bin Mahfouz "knowingly provided financial support to al Qaeda waging war on America . . . he [] made 'minimum contacts' with America . . . ." (Opp. at 21.)  Notwithstanding the liberal pleading requirements of Rule 8(a) on which Plaintiffs so heavily rely, to establish jurisdiction on this basis Plaintiffs must, as they themselves acknowledge, "ma[k]e a *prima facie* showing by [their] pleadings and affidavits that jurisdiction exists." (Opp. at 21 (quoting *Cutco Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986).)  With respect to Mr. Bin Mahfouz, Plaintiffs have failed to make such a showing.

A. **Mr. Bin Mahfouz Did Not "Purposefully Direct" His Conduct At The U. S.**

Plaintiffs rest their assertion that Mr. Bin Mahfouz "purposefully directed" his conduct at the United States on two charitable contributions allegedly made by NCB while Mr. Bin Mahfouz was its Chairman:  a $3 million contribution to Blessed Relief and $74 million in contributions to the IIRO.  (*See* Opp. at 2, 23.)[2]  Such donations, even if taken as true, are facially inadequate to establish jurisdiction.  As this Court recently held:  "Donating money to

---

(continued…)
Inc., 75 F.3d 801, 808-09 (2d Cir. 1996).

[2] Our opening brief addresses various other charges made against Mr. Bin Mahfouz, but Plaintiffs limit their "purposefully directed" argument to those two contributions.  (*See* Opp. at 23.)

2

established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States." *In re Terrorist Attacks on September 11, 2001*, slip op. at 14 (Sept. 21, 2005) ("*Terrorist Attacks II*").  Such donations are the sum total of what Plaintiffs claim Mr. Bin Mahfouz "purposefully directed" against the United States.  (*See* Opp. at 23.)  The claims against him should therefore be dismissed for lack of personal jurisdiction.

Indeed, Plaintiffs cite no specific facts to support even an inference that either of these contributions would constitute conduct directed at the United States.  First, with respect to NCB's contributions to IIRO, Plaintiffs do not allege any facts suggesting that Mr. Bin Mahfouz knew *at the time* of the alleged contributions that they would support al Qaeda.  While Plaintiffs devote a large part of their brief to showing what they claim is now known about the IIRO's links to terrorist activities, this Court has rejected arguments based on such hindsight and general conclusions rather than specific, contemporaneous facts.  Thus, this Court has found a lack of personal jurisdiction over numerous Defendants against whom Plaintiffs alleged far more extensive connections and closer relationships with IIRO than those alleged against Mr. Bin Mahfouz, including (1) Prince Sultan (*see In re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d 765, 813 (S.D.N.Y. 2005) ("*Terrorist Attacks I*")) (personal contributions); (2) Prince Turki (*id.* at 813) (personal contributions); (3) Prince Mohamed (*id.* at 814-16) (personal contributions); (4) Estate of Mohammad Abdullah Aljomaih (*id.* at 817) (personal contributions); (5) Tariq Binladin (*id.* at 821) ("prominent role" with IIRO); (6) Prince Salman (*see Terrorist Attacks II*, slip op. at 14) (contributing to and raising funds for IIRO); (7) Prince Naif (*id.*) (personal contributions).[3]

---

[3] This Court has likewise rejected claims under Rule 12(b)(6) as to several other Defendants against whom similar allegations of relationships with IIRO were made, including (1) Al Rajhi Bank (*see Terrorist Attacks I,* 349

The same is true of the alleged contribution from NCB to Blessed Relief.  Plaintiffs allege no facts indicating that Mr. Bin Mahfouz knew that Blessed Relief was supporting al Qaeda.  It is a matter of public record that Blessed Relief has never been designated a terrorist organization.[4]  Plaintiffs place substantial reliance on an October 12, 2001 Treasury press release (Opp. at 3) announcing the designation of Yassin al Qadi – who according to Plaintiffs "ran" the charity "from 1992 until approximately 1997 with $15 to $20 million of his own money"[5] – but the actual press release says nothing about Blessed Relief or Mr. Bin Mahfouz.[6]  Plaintiffs attach another undated and unsigned document to the press release, but even that, wherever it comes from, says nothing about Blessed Relief's founding or Mr. Bin Mahfouz's role.  Beyond that, none of the additional materials Plaintiffs have submitted with their Opposition bolster their

---

(continued…)

F. Supp. 2d at 833) (contribution and facilitation of contributions); (2) Saudi American Bank (*id.* at 834) (receipt of donations for IIRO); (3) Arab Bank (*id.* at 835); (4) Success Foundation (*see Terrorist Attacks II*, slip op. at 24) (affiliated company and contributor).

[4] *See* U.S. Dept. of the Treasury, Office of Foreign Assets Control, Specially Designated National and Blocked Persons, http://www.ustreaus.gov./offices/enforcement/ofac/sdn/t11sdn.pdf (last visited Sept. 19, 2005); *cf. Terrorist Attacks I*, 349 F. Supp. 2d at 800 (noting that none of the charities Princes Turki and Sultan were alleged to have supported were "designated a sponsor of terrorism at the time of the alleged contributions").

[5] (*See Ashton* ¶¶ 460-61; *Contin. Cas*. ¶¶ 351-52; *WTC* ¶¶ 666-67.)

[6] Mr. Bin Mahfouz has pointed out numerous times that there is no Treasury press release that names Blessed Relief as an al Qaeda front.  (*Burnett* MTD at 5 n.3; MTD at 3-4.)  Accompanying Plaintiffs' Opposition is the First Affidavit of John Fawcett, ¶ 3, which purports to attach the press release itself at Exhibit 1.  Exhibit 1 is in fact, however, two separate documents.  The first, a four-page press release, no. PO-689, on official Treasury letterhead, says nothing at all about Blessed Relief.  This can be confirmed by reference to the official record on the Department of Treasury's web site, http://www.treasury.gov/press/releases/po689.htm.  The second, a four-page document in a different font and type-size, with different page numbering, and bearing no title or other identifying information, does mention Blessed Relief, but there is no indication what that document is, who wrote it, or where it came from.

4

claim.[7] And even if they did, by Plaintiffs' own reckoning the U.S. Treasury Department did not suggest a link between Blessed Relief and al Qaeda until *after* the September 11 attacks.[8]

Plaintiffs have therefore not provided the required factual basis for an inference that Mr. Bin Mahfouz knew that any contributions to Blessed Relief would support al Qaeda. *See Terrorist Attacks I*, 349 F. Supp. 2d at 800. His role in founding the charity, and Plaintiffs' claims that he was involved in its leadership, do not supply the missing link. Just as in the case of associations with the IIRO, this Court has dismissed another defendant – Mr. Bin Mahfouz's son Abdulrahman bin Mahfouz – on the ground that he had not purposefully directed his activities at the United States despite allegations that he was a director of Blessed Relief as well as an executive of NCB. *See Terrorist Attacks I*, 349 F. Supp. 2d at 820. The facts alleged against Mr. Bin Mahfouz provide no greater basis to draw an inference against him.

Plaintiffs' "purposeful direction" theory against Mr. Bin Mahfouz fails for a second, independent reason. This Court has held that to establish that a defendant purposefully directed his activities at the United States, Plaintiffs must make "a *prima facie* showing of each Defendant's *personal or direct participation* in the conduct giving rise to Plaintiffs' injuries." *Terrorist Attacks I*, 349 F. Supp. 2d 765 at 809 (emphasis added). In that the contributions were allegedly made by NCB, not by Mr. Bin Mahfouz himself, Plaintiffs' *prima facie* case must

---

[7] Among other things, Plaintiffs submit a statement Mr. al Qadi gave to the Office of Foreign Assets Control and a Treasury Department letter from November 2001. To the extent that Mr. Bin Mahfouz is mentioned at all in those documents, it is in the context of his establishing Blessed Relief in the early 1990's. (*See* Fawcett Aff. #1 ¶ 5 & Doc. #3 ¶¶ 24, 26-28.) In fact, the Treasury Department letter attached to Plaintiffs' affidavit never once refers to Mr. Bin Mahfouz, and instead refers to "Mr. [Q]adi's actions and those of *his* Muwaffaq Foundation" *See id.* Doc. #2 at 4 (emphasis added). Where "Plaintiffs allegations are contradicted by [documents integral to the complaint], those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

[8] Plaintiffs' Oppostion also argues that Osama Bin Laden "told the world" in a 1995 interview that Blessed Relief "*is al Qaeda*." (Opp. at 4) (emphasis in original). Plaintiffs' complaints contain no support for such a bold claim, provide absolutely no facts supporting why "the world," much less Mr. Bin Mahfouz, must have known about this purported interview or Osama Bin Laden's alleged claims therein, nor offer any explanation why – if such claims were made and so widely known – the Treasury Department never designated Blessed Relief. (*See, e.g.*, Opp. at 4 & n.5.)

5

include facts showing either personal acts by Mr. Bin Mahfouz or grounds on which to impute NCB's conduct to him. *See Terrorist Attacks I*, 349 F. Supp. 2d at 816. Plaintiffs, however, have done neither. They allege no facts indicating any personal involvement by Mr. Bin Mahfouz in these contributions. Further, they simply ignore Mr. Bin Mahfouz's argument that the acts of NCB cannot be attributed to him merely by virtue of his position at the bank. This Court has recognized that such positions are not enough, and should do so again. *See Terrorist Attacks I*, 349 F. Supp. 2d at 816 (rejecting jurisdiction over Prince Mohammed where Plaintiffs had "not alleged that [he] had any knowledge or involvement in any al Qaeda accounts at any of the banks he chaired.").

**B.     Mr. Bin Mahfouz's Conduct Does Not Give Rise to Conspiracy Jurisdiction**

Plaintiffs' invocation of conspiracy jurisdiction rests on the same assumptions as their claim of purposeful direction: they argue that Mr. Bin Mahfouz participated in the conspiracy through the two NCB contributions, totaling $77 million, discussed above. (Opp. at 24.) The argument therefore fails for the same reasons. As this Court has already held as to other defendants, "the complaints do not allege any specific facts from which the Court could infer that" Mr. Bin Mahfouz "directed, controlled, or requested al Qaeda to undertake its terrorist activities. Nor are there any specific allegations of [his] knowledge of, or consent to those activities." *Terrorist Attacks I*, 349 F. Supp. 2d at 806. Because Plaintiffs have not alleged specific facts that would, if true, make out a *prima facie* case that Mr. Bin Mahfouz participated in the alleged conspiracy, they cannot maintain personal jurisdiction on this basis.

**C.     Plaintiffs Concede That General Jurisdiction Does Not Exist Over Mr. Bin Mahfouz and Thus Are Not Entitled to Jurisdictional Discovery**

In a search for some basis for jurisdiction, Plaintiffs make the remarkable suggestion that this Court should order jurisdictional discovery "if it has *any doubt* about its jurisdiction." (Opp.

6

at 24 (emphasis added).)  They cite no authority for such a low standard and there is none.  This Court has already noted that it need not allow jurisdictional discovery where it "would not uncover sufficient facts to sustain jurisdiction."  *Terrorist Attacks I*, 349 F. Supp. 2d at 812 (citing cases).  Plaintiffs identify no fact issue on which discovery would reveal relevant facts to support jurisdiction.  Notably, Plaintiffs seek discovery only on the basis of six categories of asserted "contacts" which relate exclusively to property ownership, investments and litigation. (Opp. at 25.)  Plaintiffs stop short of any argument in their 25 pages that these asserted contacts are of the type, or approach the level of continuity or substantiality, required to support the exercise of general jurisdiction over Mr. Bin Mahfouz.  *See Terrorist Attacks II*, slip op. at 14. In fact, discovery is unnecessary because those contacts fail to establish personal jurisdiction, even if (1) true, (2) construed in Plaintiffs' favor, and (3) substantiated by discovery.

Most of these asserted connections, even if true, amount to nothing more than passive investments, and thus are jurisdictionally irrelevant.  Moreover, only the New York real estate holdings were current as of the date the complaints were filed.  Those alone could not establish jurisdiction because "ownership and sale of one piece of New York real estate does not constitute 'business'," especially where, as here, "Plaintiff does not even allege that [defendant] ever took up residence in the apartment."  *First Capital Asset Management, Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002).  Similarly, even if it is true that Mr. Bin Mahfouz himself held other investments and that they were within the relevant time period, such passive investments are insufficient to establish general personal jurisdiction.  (*See* Reply Brief in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiffs' or in the Alternative for a More Definite Statement at 9 ("KBM *Burnett* Reply Br.") (citing *Shaffer v. Heitner,* 433 U.S. 186, 216 (1977); *Construction Aggregates, Inc. v. Senior Commodity Co.*, 860

7

F. Supp. 1176, 1180 (E.D. Tex. 1994), *aff'd*, 48 F.3d 531 (5th Cir. 1995))); *see also Terrorist Attacks II*, slip op. at 15.  In addition, even if there were an issue as to whether the investments were passive or active, discovery is unwarranted because the investments would be relevant only to specific jurisdiction for claims arising out of those investments.  (*See* KBM *Burnett* Reply at 9 (citing *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)).)  As in *Burnett*, Plaintiffs here have advanced absolutely no allegations suggesting that any of these investments were connected to this cause of action.

Beyond passive investments, Plaintiffs resort to suggesting that a dismissed criminal indictment and related regulatory action against Mr. Bin Mahfouz concerning the BCCI ordeal over ten years before they filed their complaint is somehow relevant to establishing this Court's general personal jurisdiction over Mr. Bin Mahfouz.  Such litigation against Mr. Bin Mahfouz in the forum state cannot open him to other lawsuits in the same forum absent consent or some other basis for jurisdiction.  *Klinghoffer v. S.N.C. Achille Lauro ED Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).

Plaintiffs have failed to assert any contacts that would support general jurisdiction over Mr. Bin Mahfouz and thus have failed to "present[] a genuine issue of jurisdictional fact such that discovery is necessary."  *Terrorist Attacks II*, slip op. at 15.  The types of "contacts" alleged by Plaintiffs simply do not suffice to establish jurisdiction, even if substantiated in discovery.

## II. THE COMPLAINTS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6)

### A. Plaintiffs Fail to State a Claim Under the Anti-Terrorism Act

As explained in our opening brief, Plaintiffs' Anti-Terrorism Act ("ATA") claims are deficient in two respects:  (1) they fail to allege specific facts showing Mr. Bin Mahfouz knowingly and intentionally supported al Qaeda; and (2) they fail to plead the requisite direct link between Mr. Bin Mahfouz's conduct and al Qaeda's terrorist activities.  (MTD at 15-21.)

8

Both of these deficiencies are clear from the analysis above. Plaintiffs misrepresent Mr. Bin Mahfouz's ATA argument, asserting that he claimed that *only* "participat[ion] in the September 11 attacks," (Opp. at 13), is sufficient. In fact, Mr. Bin Mahfouz argued that Plaintiffs must allege either that he "directly supported al Qaeda *or* participated in the September 11 attacks." (MTD at 15 (emphasis added).) And as this Court recognized, to show that, "pursuant to *Boim*, the Plaintiffs would have to allege *specific facts* showing that the [defendants] knew or should have known that the charities they supported were actually fronts for al Qaeda." *Terrorist Attacks I*, 349 F. Supp. 2d at 800 (citing *Burnett I*, 274 F. Supp. 2d at 106) (emphasis added)); *see also Boim v. Quaranic Literacy Institute,* 127 F. Supp. 2d 1002 (N.D. Ill. 2001)*, aff'd*, 291 F.3d 1000 (7th Cir. 2002). This Plaintiffs have not done and cannot do.

As already explained above, Plaintiffs have not alleged facts to establish that Mr. Bin Mahfouz knew either the IIRO or Blessed Relief were al Qaeda fronts at the time of the contributions upon which Plaintiffs rely, much less that he intended to support al Qaeda's activities. *Cf. Terrorist Attacks I,* 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank because the "complaints do not include any facts to support the inference that Arab Bank knew or had to know that it was providing material support to terrorists by providing financial services to the charity Defendants"). Moreover, as also explained above, Plaintiffs' response also fails to respond to demonstrated defects in their attempts to impute knowledge of the IIRO's or Blessed Relief's specific activities to Mr. Bin Mahfouz. Nothing in the Opposition or Complaints suggests that Mr. Bin Mahfouz personally authorized or directed NCB's alleged relationships with Blessed Relief or the IIRO. As this Court has already determined, speculation and innuendo cannot support the serious charges Plaintiffs have made. *See Terrorist Attacks I,* 349 F. Supp. 2d at 833 (dismissing claims against Al Rajhi Bank because Plaintiffs "do not offer

9

facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities WAMY, MWL, IIR[O], and SJRC were supporting terrorism").

### B. Plaintiffs' Other Claims Must Also Be Dismissed

Plaintiffs' other claims fail for reasons already addressed in Mr. Bin Mahfouz's prior briefs. Yet several points deserve emphasis. First, regarding their § 1962(c) claim under RICO, it is notable that Plaintiffs make no substantive response but instead again try to establish the lowest possible pleading standard. No matter where the bar is set, Plaintiffs must allege that Mr. Bin Mahfouz in some way *directed* the affairs of the alleged enterprise – and this is precisely what Plaintiffs have not alleged and cannot allege. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *Terrorist Attacks I*, 349 F. Supp. 2d at 827-28 (citing *Reves*); *Terrorist Attacks II*, slip op. at 21-22.[9] Second, the *Cantor Fitzgerald* Plaintiffs' indemnity claims fail for precisely the reason set forth in our opening brief: they fail to allege a duty owed to Plaintiffs. Although Plaintiffs incorporate a *Port Authority* Plaintiffs' brief in opposition to other defendants' motion to dismiss (Opp. at 17-18), that brief fails to address the controlling authority upon which Mr. Bin Mahfouz relies, and moreover acknowledges this Court's earlier decision which states clearly that the Complaints at issue "do not allege or identify a duty owed to Plaintiffs by moving Defendants." *See Terrorist Attacks I,* 349 F. Supp. 2d at 831.[10]

### CONCLUSION

For the foregoing reasons and those stated in our opening brief, Plaintiffs' claims against Mr. Bin Mahfouz should be dismissed.

---

[9] As Plaintiffs' own authority again demonstrates, their § 1962(c) claims cannot stand here because they have failed to allege that Mr. Bin Mahfouz "controll[ed] the organization [al Qaeda]." (*See* Opp. at 20 (quoting *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).)

[10] (Cantor Fitzgerald and Port Authority Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Faisal Islamic Bank (Sudan) at 20.)

Dated: September 23, 2005                                   Respectfully submitted,

/s/ Geoffrey S. Stewart
_____

Geoffrey S. Stewart (GS-5413)                               Michael Nussbaum (MN-9981)
JONES DAY                                                   BONNER, KIERNAN, TREBACH
222 East 41st Street                                        & CROCIATA
New York, New York 10017-6702                               1201 I Street, N.W.
Tel: (212) 326-3939                                         Washington, D.C. 20005
Fax: (212) 755-7306                                         Tel.: (202) 712-7000
                                                            Fax.: (202) 712-7100

Stephen J. Brogan
Timothy J. Finn
Mary Ellen Powers
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700

                                                            *Attorneys for Defendant Khalid Bin*
                                                            *Mahfouz*

11

Case 1:03-md-01570-GBD-SN   Document 1267   Filed 09/26/05   Page 16 of 16

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2005 caused an electronic copy of the Reply Memorandum in Support of Defendant Khalid Bin Mahfouz's Motion to Dismiss Plaintiffs' Complaints to be served by the Court's Electronic Case Filing System.

Date:   September 23, 2005

/s/ Stephen J. Brogan  
Stephen J. Brogan