IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                    )
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001       )      No. 03 MDL 1570 (RCC)
                                                    )      ECF Case
_____)

This document relates to:
    ASHTON, *et al.* v. AL QAEDA ISLAMIC ARMY, *et al.*, Case No. 02-CV-6977;
    BURNETT*, et al.* v. AL BARAKA INVESTMENT & DEVELOPMENT CORP.*, et al.*, Case No.
        03-CV-5738;
    CONTINENTAL CASUALTY CO.*, et al.* v. AL QAEDA ISLAMIC ARMY*, et al.*, Case No. 04-
        CV-05970;
    EURO BROKERS, INC.*, et al.* v. AL BARAKA INVESTMENT AND DEVELOPMENT CORP.*, et
        al.*, Case No. 04-CV-07279;
    FEDERAL INSURANCE CO.*, et al.* v. AL QAIDA*, et al.*, Case No. 03-CV-6978;
    NEW YORK MARINE AND GENERAL INSURANCE CO. v. AL QAIDA*, et al.*, Case No. 04-
        CV-6105; and
    WORLD TRADE CENTER PROPERTIES LLC, *et al.* v. AL BARAKA INVESTMENT AND
        DEVELOPMENT CORP.*, et al.*, Case No. 04-CV-07280.


**REPLY BRIEF IN SUPPORT OF
DR. ABDULLAH BIN ABDUL MOHSEN AL-TURKI'S
CONSOLIDATED MOTION TO DISMISS**

                                Lynne Bernabei, Esquire  (LB2489)
                                Alan R. Kabat, Esquire  (AK7194)
                                Bernabei & Katz, PLLC
                                1773 T Street, N.W.
                                Washington, D.C. 20009-7139
                                (202) 745-1942

                                Attorneys for Defendant
                                 Dr. Abdullah Bin Abdul Mohsen Al-Turki


DATED:  September 27, 2005

**TABLE OF CONTENTS**

I. Introduction .................................................................................................................. 1

II. Factual Background ..................................................................................................... 2

III. The Foreign Sovereign Immunities Act Precludes the Exercise of Subject Matter Jurisdiction Over Plaintiffs' Claims Against Dr. Al-Turki ......................................... 5

IV. This Court Does Not Have Personal Jurisdiction over Dr. Al-Turki .......................... 6

V. This Court Must Dismiss Plaintiffs' Claims Against Dr. Al-Turki, for Failure to State a Claim ................................................................................................................ 8

VI. This Court Must Dismiss Plaintiffs' Complaints Against Dr. Al-Turki, Pursuant to Rule 12(b)(5), Fed. R. Civ. P., for Improper Service of Process ............................ 9

CONCLUSION ........................................................................................................... 10

I. **INTRODUCTION.**

Plaintiffs' opposition to Dr. Abdullah Bin Abdul Mohsen Al-Turki's motion to dismiss offered no argument sufficient to rebut this Court's rulings that granted the motions to dismiss of all the sovereign defendants whose Foreign Sovereign Immunities Act ("FSIA") arguments were addressed by this Court: the Kingdom of Saudi Arabia, the Saudi High Commission, Prince Sultan, Prince Turki, Prince Salman, and Prince Naif. See In re: Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 792-804, 812-14 (S.D.N.Y. 2005); In re: Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *6-*11, *14 (S.D.N.Y. Sept. 21, 2005). Dr. Al-Turki's motion to dismiss should be granted on the same grounds that this Court dismissed the Kingdom, the Saudi High Commission, Prince Sultan, Prince Turki, Prince Salman, and Prince Naif.

Plaintiffs concede that Dr. Al-Turki is a foreign official covered by the FSIA. There is no exception to the FSIA that would remove his sovereign immunity. Further, all official acts that plaintiffs ascribe to him are discretionary functions under the FSIA and, thus, not actionable.

Plaintiffs also allege that Dr. Al-Turki took some acts in his personal capacity, but those acts, all relating to alleged involvement with a Spanish businessman, Zouaydi, are insufficient to allow this Court to exercise personal jurisdiction over Dr. Al-Turki. Even if this Court were to find that it has personal jurisdiction, it must still find that the plaintiffs have failed to state a claim under Rule 12(b)(6), because plaintiffs did not plead any facts showing that Dr. Al-Turki knew that any acts he took were intended to support Zouaydi's alleged terrorist activities.

In Dr. Al-Turki's motion to dismiss, he explained how this Court's January 2005 decision, and Second Circuit precedent, mandated dismissal of plaintiffs' complaints as to him. Instead of responding to those legal arguments, or to the applicability of this Court's prior ruling, and Second Circuit precedent, plaintiffs largely rehashed the allegations in their complaints, and

recycled the brief that the *Burnett* plaintiffs filed in 2004.  The Second Circuit stated that one basis for affirming the dismissal of a complaint filed by a plaintiff who ignored the district court's adverse rulings against that plaintiff's prior complaints, was the fact that:

> At no point, however do his [plaintiff's] conclusory allegations address the substance of the District Court's Memorandum of Decision and Order that dismissed plaintiff's actions.

Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam). Here, after plaintiffs' complaints were dismissed by this Court for lack of jurisdiction and failure to state a claim as to a number of other Saudi defendants who made the same or similar arguments as did Dr. Al-Turki, plaintiffs' counsel completely ignored the applicability of that decision, as did the pro se plaintiff in Iwachiw.

For this reason, and those stated below, this Court should dismiss defendant Dr. Al-Turki from the complaints consolidated in this proceeding.

## II.     FACTUAL BACKGROUND.

Plaintiffs' opposition simply rehashes the facts as scattered through their complaints. Further, the *Euro Brokers, Federal Insurance*, and *NY Marine* plaintiffs did not plead any allegations specific to Dr. Al-Turki.  Plaintiffs' facts can be divided into two categories:  (1) Dr. Al-Turki's acts in his official role as Minister for Islamic Affairs, which plaintiffs characterize as having the "primary authority for setting policies for the Saudi based charities, and directing and supervising their activities and operations," see Pls. Opp. at 1; and (2) Dr. Al-Turki's alleged involvement with Zouaydi, a Spanish businessman.  Id. at 3-5.  As set forth below, neither allegation supports plaintiffs' claims, or this Court's exercise of personal jurisdiction over Dr. Al-Turki.

2

Plaintiffs' allegations regarding the acts that Dr. Al-Turki took in his official governmental capacity are almost entirely about the acts of charities that plaintiffs allege were carried out under his guidance or supervision. See Pls. Opp. at 1-3. However, plaintiffs did not plead that Dr. Al-Turki knew that any acts taken by those charities were illegal, or that he knew that any charity or charity employee was knowingly supporting terrorism. Instead, plaintiffs allege that the Muslim World League ("MWL") learned that some employees "exploited this situation and misused some funds." Id. at 3. Even if Dr. Al-Turki is charged with knowing everything the MWL knew, learning after the fact that an employee has misused funds is not knowing participation in terrorist activities.

The document that plaintiffs rely upon for their allegation that MWL "funded" terrorism – the Epstein and Kohlmann report (Pls. Opp. at 2) – in turn relies primarily upon an evidentiary proffer that was struck by the U.S. District Court for the Northern District of Illinois as inadmissible hearsay in a material support prosecution. See United States v. Arnaout, No. 02 CR 892, 2003 WL 255226, at *1-*2 (N.D. Ill. Feb. 4, 2003). This is the same proffer that contained the discredited "Golden Chain" document. The Epstein and Kohlman report, at 2-3, also relies on several sources published in 1991 and 1993, to support the allegation that MWL funded al Qaeda. However, that time period was several years before al Qaeda targeted the United States in 1996, as plaintiffs' own evidence shows. See Pl. Opp. (Al-Husaini), Ex. 16, at 18 ("Bin Laden's first declaration of war" was in October 1996.) (Docket No. 272).

Plaintiffs' allegations regarding Dr. Al-Turki's alleged transactions with Zouaydi, a Spanish businessman, fare no better. These allegations appear to be taken from an indictment filed in Spanish court against Zouaydi and 23 other defendants. However, the High Court of

3

Spain's recent decision, which led to the conviction of Zouaydi for siphoning funds for the support of terrorist groups, acquitted him of charges for involvement in the September 11 attacks. Only one of the 24 defendants (Yarkas) was actually convicted for participating in the conspiracy that led to those attacks. See, e.g., R. McLean, "Spain Issues First Prison Sentence for 9/11," *N.Y. Times*, Sept. 27, 2005 at A-3. Indeed, the Spanish court's voluminous, 445 page decision makes no mention of Dr. Al-Turki, which suggests that the indictment's allegations that reference Dr. Al-Turki either were not proven, or were found not credible by the court. See Audiencia Nacional, Sala de lo Penal, Sentencia Num. 36/2005 (Sept. 26, 2005).[1]

The Spanish court's decision is consistent with the opinion of the 9/11 Commission, which concluded in its final report that Zouaydi did not support the September 11 attacks:

> Notwithstanding persistent press reports to the contrary, there is no convincing evidence that the Spanish al Qaeda cell, led by Imad Barkat Yarkas and al Qaeda European financier Mohammed Galeb Kalaje Zouaydi, provided any funding to support the 9/11 attacks or the Hamburg participants. Zouaydi may have provided funds to Hamburg associate Mamoun Darkazanli — see, e.g., FBI letterhead memorandum, Yarkas and Spanish Cell investigation, Jan. 8, 2003 — but **there is no evidence that Zouaydi provided money to the plot participants or that any of his funds were used to support the plot**.

See The 9/11 Commission Report, at 499 n.132 (2004) (emphasis added).

Even if this Court were to credit plaintiffs' allegations about Dr. Al-Turki's alleged connections with Zouaydi, these connections demonstrate no involvement by Dr. Al-Turki in the 9/11 attacks, according to the Spanish trial court and the 9/11 Commission Report.

---

[1] This opinion is not yet published in print, but is available online at several Spanish sources, including: <http://www.elpais.es/elpaismedia/ultimahora/media/200509/26/espana/20050926elpepunac_1_Pes_PDF.pdf>.

### III. THE FOREIGN SOVEREIGN IMMUNITIES ACT PRECLUDES THE EXERCISE OF SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST DR. AL-TURKI.

Plaintiffs concede that Dr. Al-Turki "is a governmental official" of the Kingdom of Saudi Arabia "within the meaning of the FSIA." See Pls. Opp. at 7. However, plaintiffs fail to satisfy their "burden of going forward with evidence of showing that, under [one or more] exceptions to FSIA, immunity should not be granted." Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). The only exception argued by plaintiffs as to Dr. Al-Turki is the tortious act exception, Section 1605(a)(5). To satisfy this exception, plaintiffs must first show that their injuries are "caused by" Dr. Al-Turki's tortious acts or omissions. Id. Under Second Circuit precedent, conclusory allegations cannot form the basis for invoking an exception to FSIA. Robinson v. Government of Malaysia, 269 F.3d 133, 140-41 (2d Cir. 2001). Here, plaintiffs' allegations are largely about the acts of other individuals and entities, and plaintiffs pled no facts showing that Dr. Al-Turki knew about, or authorized, those entities' alleged terrorist acts, defeating any alleged claim of causation. This Court held that: "Plaintiffs must plead facts from which it reasonably can be inferred that the Defendants knew or should have known that their tortious actions were supporting terrorists or terrorist fronts." Terrorist Attacks II, 2005 WL 2296673, at *10 (citing Terrorist Attacks I, 349 F. Supp. 2d at 800-01 and Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1023 (7th Cir. 2002)). Instead, plaintiffs pled themselves out of court by alleging that the acts taken by employees of the MWL were not authorized by the MWL, and, in fact, constituted a "misuse of funds" under the MWL charitable mission.

Plaintiffs' argument that a lenient pleading standard should be applied is based on a cases in which there was a direct relationship between the parties, see Pls. Opp. at 9-10 (citing

5

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (employment relationship); Pelman v. McDonald's Corp., 396 F.3d 508, 509-10 (2d Cir. 2005) (business-customer relationship); Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) (per curiam) (custodial relationship between prisoner and warden)), which is not the case here.  Thus, in those cases, plaintiffs did not have to plead further facts showing proximate causation, because causation in those cases could be inferred from the existence of the relationship between the parties.

Plaintiffs' reliance on the decision in Linde, see Pls. Opp. at 10-11, is equally misplaced, as the three consolidated complaints in that litigation expressly pled specific factual allegations about a program allegedly administered by the defendant that directly provided payments to the families of Palestinian suicide bombers who had injured plaintiffs.  Linde v. Arab Bank, Plc, No. 04 CV 2799 (NG)(VVP), 2005 WL 2108690, at *9-*10 (E.D.N.Y. Sept. 2, 2005).

Even if this Court were to find that the tort exception applied, it must still find that plaintiffs have not satisfied the second step, which requires them to show that defendants' acts were not discretionary.  Terrorist Attacks I, 349 F. Supp. 2d at 794-97; Terrorist Attacks II, 2005 WL 2296673, at *9.  This Court held that even if plaintiffs alleged that there was "misuse of funds . . . [that] resulted in the funds going to terrorists" by the Saudi High Commission, or that senior officers "ignored warnings" (Prince Naif) and made "funding decisions" (Prince Salman), those acts are discretionary functions that "cannot be the basis for overcoming [defendant's] immunity." Terrorist Attacks II, 2005 WL 2296673, at *10-*11 (dismissing Saudi High Commission, and Prince Salman and Prince Naif as to acts in their official capacity).  This Court should similarly find that, even accepting plaintiffs' conclusory allegations about Dr. Al-Turki, his actions in supervising the operation of Saudi charities are discretionary functions, which

cannot overcome Dr. Al-Turki's immunity.

### IV. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DR. AL-TURKI.

The only basis on which this Court can find personal jurisdiction over Dr. Al-Turki is if he engaged in illegal acts in a personal capacity. Plaintiffs' allegations about Dr. Al-Turki's personal acts appear to be derived from the Spanish indictment of Zouaydi and 23 other individuals. As a threshold matter, plaintiffs did not plead that Dr. Al-Turki knew that any transactions they allege he engaged in with Zouaydi would be diverted to support terrorism, or that Dr. Al-Turki otherwise knew that Zouaydi was supporting terrorism. Moreover, an indictment is inadmissible evidence, as Judge Learned Hand recognized long ago in upholding the district court's exclusion of an indictment. Falter v. United States, 23 F.2d 420, 425 (2d Cir. 1928). More recently Judge Cote held that parties in civil litigation could not use an indictment as admissible evidence: "The Government cannot rely on an indictment to prove its case at trial, and the parties here cannot rely on the Government's indictment to prove theirs." In re Worldcom, Inc. Sec. Litig., No. 02 CIV 3288 DLC, 2005 WL 375315, at *9 (S.D.N.Y. Feb. 17, 2005). Instead, this Court should give credence to the Spanish court's verdict, which made no mention of Dr. Al-Turki, and its conviction of Zouaydi did not include any charge based on alleged conspiracy by Zouaydi to support the September 11 attacks.

Further, in their Opposition, plaintiffs did not identify any specific facts showing that Dr. Al-Turki had any contacts with this forum, or that he purposefully directed his activities at this forum. This Court previously dismissed those sovereign defendants whose contacts with the United States were as minimal as for Dr. Al-Turki, finding that whatever personal acts they may have taken did not subject them to personal jurisdiction under either a conspiracy theory or a

7

purposefully directed theory.  See Terrorist Attacks I, 349 F. Supp. 2d at 812-14 (dismissing Prince Sultan and Prince Turki); Terrorist Attacks II, 2005 WL 2296673, at *14 (dismissing Prince Naif and Prince Salman).

Plaintiffs, in their complaints and opposition, invoked at least four theories of personal jurisdiction.  As a threshold matter, two are inapplicable since (except for the *Ashton* complaint), Dr. Al-Turki was not validly served under FSIA, as required under 28 U.S.C. § 1330(b).  Nor was he otherwise served in this country, as required under Rule 4(k)(1)(d), Fed. R. Civ. P.  Plaintiffs' remaining theories of jurisdiction, a conspiracy theory under the New York long-arm statute, and a purposefully directed theory under Rule 4(k)(2), Fed. R. Civ. P., fare no better, since the exercise of personal jurisdiction over Dr. Al-Turki must "comport with due process requirements."  Terrorist Attacks II, 2005 WL 2296673, at *13.  Yet the facts pled by plaintiffs show that Dr. Al-Turki does not have the requisite "minimum contacts" with this country.  Id.  Therefore, this Court must find that plaintiffs have failed to satisfy their burden of showing that Dr. Al-Turki is subject to the personal jurisdiction of this Court.

**V.     THIS COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST DR. AL-TURKI, FOR FAILURE TO STATE A CLAIM.**

Even if this Court were to find that it had subject matter and personal jurisdiction over Dr. Al-Turki, it must still find that the plaintiffs have failed to state their tort and negligence claims as to him, and that dismissal, pursuant to Rule 12(b)(6), Fed. R. Civ. P., is warranted. Plaintiffs filed several opposition briefs on September 20, 2005, each containing essentially identical legal arguments as to the Rule 12(b)(6) issue, with the only substantive difference being that plaintiffs raised a negligence argument as to the FSIA defendants that they did not raise as to other, non-sovereign defendants.  See Docket Nos. 1245-1255.  Therefore, Dr. Al-Turki adopts

the legal argument set forth by Sheikh Hamad Al-Husaini in his reply brief.  See Al-Husaini Reply Br., at 5-9 (Docket No. 1268) (Sept. 26, 2005).

Plaintiffs attempt to amend their negligence claims as to several sovereign defendants by arguing, for the first time, that two United Nations resolutions imposed a duty on Dr. Al-Turki. See Pls. Opp. at 22-23.  As plaintiffs raised the same argument as to the Saudi Arabian Red Crescent Society and Dr. Al Swailem, Dr. Al-Turki adopts the legal argument set forth by those two defendants in their reply brief.  These defendants demonstrated that, under Second Circuit precedent, UN resolutions are not binding on member States.  See Saudi Red Crescent Reply Br., at 8-9 (Docket No. 1270) (Sept. 26, 2005).

## VI. THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINTS AGAINST DR. AL-TURKI, PURSUANT TO RULE 12(b)(5), FED. R. CIV. P., FOR IMPROPER SERVICE OF PROCESS.

Finally, this Court must find that plaintiffs' attempt to serve Dr. Al-Turki by publication was improper under Section 1608 of the FSIA.[2]  Dr. Al-Turki, in his motion, argued that Section 1608 was the exclusive means for effecting service of process on sovereign defendants, as recognized by Rule 4(j)(1), Fed. R. Civ. P., which expressly provides that:  "Service upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608."  See Mot. to Dismiss, at 24-25 (Docket No. 1184).  Plaintiffs, in their opposition, ignored defendant's Section 1608 argument, and instead referred this Court to their arguments on service of process as to private actors, who are not covered by FSIA.  See Pls. Opp., at 23-24.  Plaintiffs, therefore, have conceded defendant's argument under Section 1608.

---

[2] Dr. Al-Turki is not raising this argument with respect to the *Ashton* plaintiffs, with whom he entered into a briefing stipulation.

9

It is settled law in this Circuit that when a defendant raises a particular defense in a dispositive motion, and the plaintiff fails to respond to that defense, then the plaintiff has conceded the defense.  Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 493 (2d Cir. 1955); accord Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("Furthermore, when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

For these reasons, defendant's motion to dismiss on the ground of improper service should be granted, as conceded by plaintiffs.

## **CONCLUSION**

For the foregoing reasons, and those set forth in his Motion to Dismiss, defendant Dr. Abdullah Bin Abdul Mohsen Al-Turki respectfully requests that this Court dismiss plaintiffs' complaints for lack of subject matter jurisdiction under the FSIA, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper service of process.

                Respectfully submitted,

                /s/ Lynne Bernabei
                _____

                Lynne Bernabei, Esquire  (LB2489)
                Alan R. Kabat, Esquire  (AK7194)
                Bernabei & Katz, PLLC
                1773 T Street, N.W.
                Washington, D.C. 20009-7139
                (202) 745-1942

                Attorneys for Defendant
                 Dr. Abdullah Bin Abdul Mohsen Al-Turki

Dated:  September 27, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 27, 2005, I caused the foregoing to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) System, pursuant to ¶ 9(a) of Case Management Order No. 2 (June 16, 2004).

/s/ Alan R. Kabat

Alan R. Kabat