UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:       Continental Casualty Co., et al. v. Al Qaeda
                                Islamic Army (04 Civ. 5970) (RCC)

                                Federal Insurance Co. v. al Qaida
                                (03 Civ. 06978) (RCC)


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT ABDUL AZIZ BIN IBRAHIM AL-IBRAHIM


SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
        *Abdul Aziz Bin Ibrahim Al-Ibrahim*

<u>Table of Contents</u>

INTRODUCTION ...................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS AGAINST AL-IBRAHIM ............................... 2

    1.     Jurisdictional Allegations ............................................................................. 2

    2.     Conspiracy-Related Allegations ................................................................... 3

ARGUMENT ............................................................................................................................ 5

I       PLAINTIFFS HAVE NOT STATED A PRIMA FACIE CASE
       FOR PERSONAL JURISDICTION OVER AL-IBRAHIM. ................................................... 5

    A.    There Is No General Jurisdiction Over Al-Ibrahim ....................................... 6

    B.    There Is No Specific Jurisdiction Over Al-Ibrahim Because, Plaintiffs'
        Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient. ... 10

II.    THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST AL-IBRAHIM ................ 15

    A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any
        Actions By Al-Ibrahim Proximately Caused Plaintiffs' Injuries. ................. 16

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To State Any Causes Of Action .. 20

        1.     Trespass (Continental Casualty Count 1; Federal Insurance Count 1) ........ 20

        2.     RICO
            (Continental Casualty Counts 2 and 3; Federal Insurance Count 8) ........... 21

        3.     Anti-Terrorism Act (Federal Insurance Count 10) ......................................... 23

        4.     Conspiracy and Aiding and Abetting (Federal Insurance Counts 7 and 9) . 24

        5.     Torture Victims Protection Act (Federal Insurance Count 6) ..................... 24

        6.     Wrongful Death & Survival (Federal Insurance Counts 2 and 3) ............... 24

        7.     Negligence (Federal Insurance Count 11) ........................................................ 25

        8      Assault and Battery, Intentional Infliction of Emotional Distress
            (Federal Insurance Counts 4 & 5) ................................................................. 25

        9.     Punitive Damages (Federal Insurance Count 12) .......................................... 25

CONCLUSION ......................................................................................................................... 25

Table of Authorities

Cases

A.J. Cunningham Packing Corp. v. Cong. Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ............................................................21

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) ............................................................8

Andros Compania Maritima, S.A. v. Intertanker, Ltd,
    714 F. Supp. 669 (S.D.N.Y. 1989) ...................................................9

Armour & Co. v. Celic,
    294 F.2d 432 (2d Cir. 1961) ...........................................................19

Atuahene v. City of Hartford,
    2001 WL 604902 (2d Cir. May 31, 2001) ......................................18

Bankers Trust Co. v. Rhoades,
    741 F.2d 511 (2d Cir. 1984) ...........................................................22

Beacon Enters., Inc. v. Menzies,
    715 F.2d 757 (2d Cir. 1983) ...........................................................7

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) .................................................12

Bernstein v. Misk,
    948 F. Supp 228 (E.D.N.Y. 1997) ..................................................18

Burnett v. al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ............................................21-22

Burnett v. al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ...............................................9, 14

Calder v. Jones,
    465 U.S. 783 (1984) ...........................................................6, 10, 14

Cantor Fitzgerald, Inc. v. Lutnick,
    313  F.3d 704 (2d Cir. 2002) ..........................................................15

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ................................18

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ..............................................................21

Cortec Indus. v. Sum Holding, L.P.,
    949 F.2d 42 (2d Cir. 1991) .............................................................7

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) ................................................................ 8, 15, 17, 20, 23

Dubai Islamic Bank v. Citibank, N.A.,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003)......................................................................22

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002)........................................................................9

Flores v. S. Peru Copper Corp.,
   343 F.3d 140 (2d Cir. 2003) ....................................................................................24

Gillette Co. v. Philips Oral Healthcare, Inc.,
   2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) ..........................................................17

Glasheen v. City of Albany,
   1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999)..........................................................18

Gold v. Fields,
   1993 WL 212672 (S.D.N.Y. June 14, 1993) ..............................................................5

Grove Press, Inc. v. Angleton,
   649 F.2d 121 (2d Cir. 1981) ....................................................................................24

Helicopteros Nacionales de Colombia, S.A. v. Hall,
   466 U.S. 413 (1984)................................................................................................ 6, 9

Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,
   763 F.2d 55 (2d Cir. 1985) ........................................................................................7

Holt Oil & Gas Corp. v. Harvey,
   801 F.2d 773 (5th Cir. 1986)......................................................................................9

In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990,
   885 F. Supp. 434 (E.D.N.Y. 1995) ..........................................................................21

In re Global Crossing,
   2005 WL 1907005 (S.D.N.Y Aug. 8, 2005) .............................................................19

In re Terrorist Attacks on Sept. 11, 2001 ,
   2005 WL 2296673 (S.D.N.Y. Sept. 21, 2005) ...........................................................9

In re Terrorist Attacks on Sept. 11, 2001,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005).................................................................passim

Jazini v. Nissan Motor Co., Ltd.,
   148 F.3d 181 (2d Cir. 1998) ................................................................................ 6, 12

JBI Indus. Inc. v. Suchde,
   2000 WL 1174997 (S.D.N.Y. Aug. 17, 2000)............................................................8

Kadic v. Karadzic,
 70 F.3d 232 (2d Cir. 1995) ..........................................................................24

Karabu Corp. v. Gitner,
 16 F.Supp. 2d 319 (S.D.N.Y. 1998) .............................................................8

Keeton v. Hustler Magazine, Inc.,
 465 U.S. 770 (1984)..............................................................................13, 19

Klinghoffer v. S.N.C. Achille Lauro,
 937 F.2d 44 (2d Cir. 1991) .........................................................................10

Kulko v. Superior Court of California,
 436 U.S. 84 (1978)............................................................................... 9, 12

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
 26 F. Supp. 2d 593 (S.D.N.Y. 1998)............................................................9

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
 191 F.3d 229 (2d Cir. 1999) .................................................................15, 21

Leasco Data Processing Equip. Corp. v. Maxwell,
 468 F.2d 1326 (2d Cir. 1972) .....................................................................11

Lehigh Valley Indus., Inc. v. Birenbaum,
 527 F.2d 87 (2d Cir. 1975) .........................................................................12

Lesavoy v. Lane,
 304 F. Supp. 2d 520 (S.D.N.Y. 2004)........................................................22

MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC,
 268 F.3d 58 (2d Cir. 2001) ...........................................................................8

Mende v. Milestone Tech. Inc.,
 269 F. Supp. 2d 246 (S.D.N.Y. 2003)..........................................................6

Moss v. Morgan Stanley Inc.,
 719 F.2d 5 (2d Cir. 1983) ...........................................................................22

Murray v. Miner,
 74 F.3d 402 (2d Cir. 1996) ...........................................................................8

Nat'l Org. for Women, Inc. v. Scheidler,
 510 U.S. 249 (1994)....................................................................................21

Olszewski v. Waters of Orchard Park,
 758 N.Y.S.2d 716 (4th Dept. 2003) ............................................................19

Ontel Prods., Inc. v. Project Strategies Corp,
 899 F. Supp. 1144 (S.D.N.Y. 1995) ...............................................7, 13, 19

<u>Pilates, Inc. v. Current Concepts,</u>
    1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) .................................................................8

<u>Pittman v. Grayson,</u>
    149 F.3d 111 (2d Cir. 1998) ...................................................................... 14, 16

<u>Reers v. Deutsche Bank, et al,</u>
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ...........................................................6, 7, 9, 10

<u>S.E.C. v. Unifund SAL,</u>
    910 F.2d 1028 (2d Cir. 1990) ...............................................................................11

<u>Shaffer v. Heitner,</u>
    433 U.S. 186 (1977) ...........................................................................................9

<u>Small v. Lorillard Tobacco Co.,</u>
    94 N.Y.2d 43, 720 N.E.2d 892 (1999) ...................................................................24

<u>Smith v. County of Erie,</u>
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) .........................................25

<u>Smith v. Local 819 I.B.T. Pension Plan,</u>
    291 F.3d 236 (2d Cir. 2002) ..............................................................................20

<u>Smith v. Morris & Manning,</u>
    647 F.Supp. 101 (S.D.N.Y. 1986) ........................................................................9

<u>Spoto v. Herkimer County Trust,</u>
    2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ...........................................................5

<u>Tauza v. Susquehanna Coal Co.,</u>
    220 N.Y. 259, 115 N.E. 915 (1917) .......................................................................9

<u>Tornheim v. Fed. Home Loan Mortg. Corp.,</u>
    988 F. Supp. 279 (S.D.N.Y. 1997) ......................................................................20

<u>United States v. Yousef,</u>
    327 F.3d 56 (2d Cir. 2003) ...............................................................................23

<u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,</u>
    241 F.3d 135 (2d Cir. 2001) ...............................................................................6

<u>Vendetti v. Fiat Auto S.P.A.,</u>
    802 F. Supp. 886 (W.D.N.Y. 1992) .......................................................................9

<u>Wantanabe Realty Corp. v. City of New York,</u>
    2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003) ..........................................................21

<u>Wiwa v. Royal Dutch Petroleum Co.,</u>
    2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ...........................................................24

York v. Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002) ........................................................................................15


Statutes

18 U.S.C. §§ 2331-2333 (2000) ........................................................................................ 23

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002) ...................................................................... 24

N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001) .................................................................... 24


Other Authority

5C Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1363 (3d Ed. 2004) ............................................... 19

Vincent C. Alexander, McKinney's Consol. Laws of N.Y., Book 7B,
    Practice Commentary to CPLR C301:10 at pp. 41-42 (McKinney's 2001). .......................... 7

## INTRODUCTION

Defendant Abdul Aziz Bin Ibrahim Al-Ibrahim ("Al-Ibrahim") respectfully submits this Memorandum of Law in support of his motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims against him in the First Amended Complaint ("*Continental Casualty* Complaint" or "*Cont. Cas.* Compl.") in *Continental Casualty Co., et al. v. Al Qaeda Islamic Army*, 04 Civ. 5970 (RCC) and the First Amended Complaint ("*Federal Insurance* Complaint" or "*Fed. Ins.* Compl.," and together with the *Continental Casualty* Complaint, "Complaints") in *Federal Insurance Co. v. Al Qaida*, 03 Civ. 06978 (RCC). For all the reasons set forth herein and the remainder of the record, this motion should be granted in all respects.

## PRELIMINARY STATEMENT

The *Continental Casualty* and *Federal Insurance* plaintiffs (collectively, "plaintiffs") attempt to hale Al-Ibrahim into this Court and hold him liable for the horrific events of September 11, 2001 without proffering *any* allegations of fact that, if proven, would show any connection between Al-Ibrahim and Al Qaeda, let alone the events of September 11, 2001. Indeed, the conclusory allegations in the Complaints and RICO Statements[1] are categorically insufficient to withstand a motion to dismiss, and plaintiffs' allegations against Al-Ibrahim are entirely unrelated to plaintiffs' allegations against Al Qaeda or the September 11, 2001 attacks. As such, plaintiffs have failed to state a claim against Al-Ibrahim. Moreover, Al-Ibrahim's alleged contacts with New York and the United States do not provide a basis for this Court to exercise personal jurisdiction over him. In sum, plaintiffs do not -- and cannot -- allege any meaningful connection between Al-Ibrahim and the

---

[1] The *Continental Casualty* and *Federal Insurance* plaintiffs' RICO Statements are referred to herein as "*Continental Casualty* RICO Statement" or "*Cont. Cas.* RICO Statement" and the *Federal Insurance* RICO Statement" or "*Fed. Ins.* RICO Statement" respectively, and collectively the "RICO Statements."

events of September 11, 2001, or the United States.  Accordingly, plaintiffs' claims against Al-

Ibrahim should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(2) and Rule 12(b)(6).

**SUMMARY OF PLAINTIFFS'
ALLEGATIONS AGAINST AL-IBRAHIM**

The only reference in the 182-page *Federal Insurance* Complaint against Al-Ibrahim is that he,

along with numerous other defendants, "have aided and abetted, conspired with, and provided

material support and resources to al Qaeda and affiliated FTO's, associations, organizations or

persons." *Federal Insurance* Complaint ¶ 66.  The averments concerning Al-Ibrahim in the *Federal*

*Insurance* RICO Statement mimic those in the *Continental Casualty* Complaint and are restated below

in their entirety:

1.      **Jurisdictional Allegations**

- In 1989, Al-Ibrahim acquired a portion of the Marina Del Rey real estate venture in Los Angeles, through various offshore companies.  *Cont. Cas.* Compl. ¶ 308; *Fed. Ins.* RICO Statement, p. 10.

- American authorities discovered a loan of $132 million that was granted to Al-Ibrahim at the end of 1989 by BCCI.  Al-Ibrahim was one of BCCI's leading loan beneficiaries.  Id.

- Apart from being a lead investor in Marina Del Rey, Al-Ibrahim's real estate assets have included Ritz-Carlton hotels in New York, Washington, Houston and Aspen, a hotel and office complex near Chicago's O'Hare International Airport, undeveloped property in the hills high above Bel-Air and largely vacant land near Disney World in Florida.  Ritz-Carlton hotels decided in 1997 to pull back their name from the facilities by terminating management agreements after they became controlled by Al Anwa, USA, a company owned by Al-Ibrahim.  *Cont. Cas.* Compl. ¶ 309; *Fed. Ins.* RICO Statement, p. 10.

- Al Anwa holding is a construction company owned by Al-Ibrahim.  It is a shareholder, along with Defendant Dallah Al Baraka (Chaired by Defendant Saleh Abdullah Kamel), of the National Environmental Preservation Co. Ltd. in Jubail, Saudi Arabia.  *Cont. Cas.* Compl. ¶ 311; *Fed. Ins.* RICO Statement, p. 11.

- In the mid 1980's, while living in Hollywood, California, Al-Ibrahim engaged in a romantic pursuit of actress/model Brooke Shields, setting up a movie production company (Mystery Man Productions) to invest over $22 million (including BCCI

loan proceeds) in the production of a starring film vehicle for her, *Brenda Starr*. The production was so flawed that while filmed in 1986, the movie was not released in the United States until 1992. *Cont. Cas.* RICO Statement, p. 9; *Fed. Ins.* RICO Statement, p. 10.

- According to court papers filed in 1995, as reported by the *Washington Post*, Al-Ibrahim has won large sums of money gambling in the United States for which he did not wish to pay the Internal Revenue Service. In order to silence a former employee regarding these and other allegations, Al-Ibrahim hired the law firm of Sidley & Austin and filed suit in Washington, D.C. to seek injunctive relief. The suit was dismissed. *Cont. Cas.* RICO Statement, p. 10; *Fed. Ins.* RICO Statement, p. 11.

These allegations have nothing to do with plaintiffs' allegations against Al Qaeda and, as demonstrated below, cannot form a basis for the exercise personal jurisdiction over Al-Ibrahim.

2.   **Conspiracy-Related Allegations**

In the Complaints and RICO Statements, plaintiffs attempt to allege that Al-Ibrahim somehow conspired with Al Qaeda to perpetrate the September 11, 2001 attacks, with the following, nearly identical, conclusory allegations:

- Al-Ibrahim conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in the al Qaeda movement to perpetrate radical Muslim terrorism, which conspiracy culminated in the Attack. *Cont. Cas.* RICO Statement, p. 2; *Fed. Ins.* RICO Statement, p. 2.

- Al-Ibrahim used banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise. *Cont. Cas.* RICO Statement, p. 2; *Fed. Ins.* RICO Statement, pp. 2-3.

- Al-Ibrahim[2] consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments. *Cont. Cas.* RICO Statement, p. 3.

---

[2] In the *Federal Insurance* RICO Statement, plaintiffs do not even make this allegation directly against Al-Ibrahim, alleging that "<u>Other of the defendants</u> consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and obfuscate their support of the al Qaida movement." *Fed. Ins.* RICO Statement, p. 3 (emphasis added).

- Al-Ibrahim fit neatly into this framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.  *Cont. Cas.* RICO Statement, p. 3; *Fed. Ins.* RICO Statement, pp. 3-4.

- Al Qaeda established itself in Afghanistan, and relied on well-placed financial facilitators, including Al-Ibrahim, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors … The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan …The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers … From the ranks of these recruits the nineteen perpetrators of the attacks were selected. None of this would have been possible without the funds supplied by participants and conspirators like defendant Al-Ibrahim.  *Cont. Cas.* RICO Statement, pp. 4-5; *Fed. Ins.* RICO Statement, pp. 4-5.

- The Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including Al-Ibrahim . . . Al Qaeda needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Al-Ibrahim.  *Cont. Cas.* RICO Statement, p. 5; *Fed. Ins.* RICO Statement, p. 5.

- Al-Ibrahim is a Saudi Citizen and the brother-in-law of King Fahd of Saudi Arabia. *Cont. Cas.* Compl. ¶ 307; *Fed. Ins.* RICO Statement, p. 7.

- In 1991 with another brother, Walid, Defendant Saleh Abdullah Kamel and Al-Ibrahim created the leading Arab television satellite service, Middle East Broadcasting Corp (or "MBC"), which purchased the press agency United Press International (or "UPI"). *Cont. Cas.* Compl. ¶ 312; *Fed. Ins.* RICO Statement, p. 7.

- In 1990, Al-Ibrahim, created the Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation [the "Foundation"] whose official stated aim is humanitarian assistance.  The organization is present in Kenya, Bosnia, Chechnya, South America and Southern Asia.  (*Cont. Cas.* Compl. ¶ 313; *Fed. Ins.* RICO Statement, p. 7)

In addition, the RICO statements allege that "through [Al-Ibrahim's] direction and control, he entrusted the [Foundation] with the responsibility of realizing his objective of using it as a covert vehicle for supporting the al Qaeda movement and other terrorists." *Cont. Cas.* RICO Statement p. 6; *Fed. Ins.* RICO Statement, p. 7.  There are no allegations of fact, however, that Al-Ibrahim did any such thing.

Plaintiffs' attempt to hale Al-Ibrahim into this Court based on the foregoing allegations and hold him liable for the horrific events of September 11, 2001 is meritless.  As demonstrated below, a plain reading of the allegations regarding actions by Al-Ibrahim demonstrates that those <u>allegations do not link Al-Ibrahim with Al Qaeda or the events of September 11, 2001</u>.  Moreover, there is not a single factual allegation to justify including Al-Ibrahim in plaintiffs' indiscriminate grouping of Al-Ibrahim with the over 200 named defendants in these actions.  Additionally, plaintiffs' allegations purporting to connect Al-Ibrahim with this forum do not provide a basis for this Court to exercise personal jurisdiction over him.

## ARGUMENT

Plaintiffs' claims against Al-Ibrahim should be dismissed for two reasons.  <u>First</u>, the Complaints should be dismissed pursuant to Rule 12(b)(2), because plaintiffs' allegations do not support a finding of personal jurisdiction over Al-Ibrahim.  <u>Second</u>, the Complaints should be dismissed pursuant to Rule 12(b)(6), because plaintiffs fail to state a claim against Al-Ibrahim.[3]

## I

## PLAINTIFFS HAVE NOT STATED A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER AL-IBRAHIM.

Plaintiffs bear the burden of establishing personal jurisdiction over Al-Ibrahim, a citizen of Saudi Arabia.  <u>See</u> <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 349 F. Supp. 2d 765, 804 (S.D.N.Y.

---

[3] The *Continental Casualty* RICO Statement cannot be deemed an amendment to their complaint, and thus should not be considered in connection with this motion.  <u>See</u> Instructions For Filing Rico Statement ("All parties asserting claims pursuant to the [RICO Act], must file and serve upon the opposing party a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim.") available at www.nysd.gov/Individual Practices/rico, and Order, Aug. 23, 2005 (MDL Docket No. 1144); <u>Spoto v. Herkimer County Trust</u>, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO Statement."); <u>Gold v. Fields</u>, 1993 WL 212672, at *5, n.5 (S.D.N.Y. June 14, 1993) ("[T]he [RICO] Statement . . . only seeks information plaintiffs should already have in their possession before filing their complaint"). In any event, the Rico Statements may only be considered in connection with plaintiff's RICO claims, and even if the allegations in plaintiffs' RICO Statements are considered, plaintiffs' claims should be dismissed.

2005) [hereinafter "In re Sept. 11 Attacks"].  To survive a motion to dismiss, plaintiffs must make a

*prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809.

"Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan

Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998). Courts may "construe jurisdictional allegations

liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative

inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251

(S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.  Whether a plaintiff asserts

that a Court has general or specific jurisdiction over a defendant, due process requires factual

allegations showing that a defendant has at least "minimum contacts [with the forum] . . . such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (quoting

Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotations omitted)).

## A.   **There Is No General Jurisdiction Over Al-Ibrahim**.

To establish general jurisdiction under C.P.L.R. § 301, a plaintiff must allege that, as a result

of a defendant's contacts with New York, said defendant is "engaged in a continuous and systematic

course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction."  See Reers v.

Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  When long-arm

jurisdiction is based upon contacts with the nation as a whole, plaintiffs must also demonstrate

minimum contacts.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 808.  Similarly, when a federal

claim is made against a foreign defendant not subject to jurisdiction in any State, "[p]ersonal

jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth

Amendment due process requirements." Id. at 807, 811 ("a considerably higher level of contacts is

generally required" to plead general jurisdiction).  See Helicopteros Nacionales de Colombia, S.A. v.

Hall, 466 U.S. 413, 414-16 (1984).  In addition, it is doubtful that an individual can even be subject to "doing business" jurisdiction under CPLR § 301 pursuant to New York law.  See, e.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985); Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 n.6 (2d Cir. 1983); Vincent C. Alexander, McKinney's Consol. Laws of N.Y., Book 7B, Practice Commentary to CPLR C301:10 at pp. 41-42 (McKinney's 2001).

Here, plaintiffs allege that Al-Ibrahim owned "real estate assets" through unnamed "various offshore companies" and a company named Al Anwa, USA ("Al Anwa").[4]  Cont. Cas. Comp. ¶¶ 308, 309; Fed. Ins. RICO Statement, p. 10.  However, "the mere existence of a business relationship with entities within the forum state is insufficient to establish 'presence'" for the purposes of general jurisdiction.  Reers v. Deutsche Bank, et al, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004) (dismissing complaint on jurisdictional grounds even though defendant "formed a joint venture with a New York venture capital firm, the Blackstone Group, to acquire 52 hotels from Vivendi") (citation omitted).  Indeed, "the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities" unless: (1) the corporation's veil can be pierced, or (2) the corporation acted as an agent for the owner.  Reers, 320 F. Supp. 2d. at 155 ("mere fact that Accor owns or partially owns business that are registered to do business in New York does not subject Accor to general jurisdiction in New York.") (citing Ontel Prods., Inc. v. Project Strategies Corp, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (dismissing claim against alleged "founder" of

---

[4] In addition, it is clear that the referenced hotels are owned by entities, and not Al-Ibrahim.  See www.hotel-online.com/News/PressReleases/RitzCarltonContracts_Aug1997.html ("The Ritz-Carlton, Aspen is owned by Savanah Limited Partnership; The Ritz-Carlton, Houston is owned by New Remington Partners; The Ritz-Carlton, New York is owned by N.Y. Overnight Partners, L.P.; and The Ritz-Carlton, Washington, D.C. is owned by D.C. Overnight Partners, L.P.  All of the hotels are represented by Al Anwa, USA, Inc. of Los Angeles").  See also Cortec Indus. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (Court may consider documents referenced in Complaint upon motion to dismiss); Wright & Miller, Federal Practice and Procedure § 1363, 120 (2004) (Court will not accept allegations contradicted by allegations incorporated in Complaint).

corporation because "[i]n New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities")).  To pierce the corporate veil, a party must allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); see also MAG Portfolio Consult, Gmbh v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors relevant to determination of "domination" include, among others, disregard of corporate formalities; intermingling of funds; common office space, address and telephone numbers; degree of discretion shown by allegedly dominated corporation; and intermingling of property).

Plaintiffs cannot establish general jurisdiction over Al-Ibrahim, because there are no allegations that Al-Ibrahim exercised any control over any corporations in connection with the events of September 11, 2001.  Moreover, plaintiffs have not proffered any factual allegations sufficient to establish *any* of the factors to warrant piercing the corporate veil of any "offshore companies" or Al Anwa.  See, e.g., De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) ("conclusory allegations" insufficient to overcome the "presumption of separateness" afforded to related corporations); Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996); JBI Indus. Inc. v. Suchde, 2000 WL 1174997, at *17 (S.D.N.Y. Aug. 17, 2000).  In addition, plaintiffs cannot establish that any unnamed offshore companies or Al Anwa acted as an agent for Al-Ibrahim because: (1) plaintiffs make no such allegation, and (2) "control cannot be shown based merely upon . . . conclusory allegations that the defendant controls the corporation." Karabu Corp. v. Gitner, 16 F.Supp. 2d 319, 323 and 324 (S.D.N.Y. 1998) citing Pilates, Inc. v. Current Concepts, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) ("[A] general allegation that an officer controls a corporation is not

sufficient to establish personal jurisdiction.").  In sum, assuming *arguendo* that plaintiffs' allegations could establish jurisdiction over any companies alleged to have contacts with New York or the United States, those allegations still fail to establish jurisdiction over Al-Ibrahim.[5]

Further, an alleged romantic pursuit of an American actress in the "mid-1980's" and the hiring of a law firm for one matter nearly ten years ago cannot establish personal jurisdiction over Al-Ibrahim.  Reers, 320 F. Supp. at 154 (dismissing complaint for lack of personal jurisdiction where defendant "hired a New York law firm" and "New York-based J.P. Morgan & Company to provide financial assistance"); see also Burnett v. al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Burnett II") ("Plaintiffs have made a desultory effort to sustain their burden of showing that Prince Sultan's visits to the United States . . . would support the assertion of personal jurisdiction over him") (citing Kulko v. Superior Court of California, 436 U.S. 84, 93-94 (1978) (temporary visits to state insufficient basis for assertion of in personam jurisdiction over unrelated action)); Vendetti v. Fiat Auto S.P.A., 802 F. Supp. 886, 890 (W.D.N.Y. 1992) (conducting litigation not, by itself, basis for general jurisdiction); Andros Compania Maritima, S.A. v. Intertanker, Ltd., 714 F. Supp. 669, 675 (S.D.N.Y. 1989) ("handful of arbitrations and litigations in forum . . . does not

---

[5] In addition, the vague allegation that Al-Ibrahim's assets "have included" Ritz-Carlton Hotels simply does not demonstrate the continuous and systematic type of contacts that could establish general jurisdiction over Al-Ibrahim.  See In re Terroris Attacks on Sept. 11, 2001, 2005 WL 2296673, at *14 (S.D.N.Y. Sept. 21, 2005) ("Prince Salman's ownership of shares in Texas corporations, on its own, cannot be considered sufficiently systematic and continuous to establish general jurisdiction) citing Helicopteros, 466 U.S. at 414-16; see also Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917 (1917) (Cardozo, J.) (for "presence," the non-domiciliary must be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity.").  Indeed, in order to establish jurisdiction based on real property ownership, courts generally require that "the cause of action must arise from the ownership, possession or use of [that] real property."  Smith v. Morris & Manning, 647 F.Supp. 101, 104 (S.D.N.Y. 1986); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (foreign defendant's ownership and sale of New York apartment, unspecified business transactions, and New York bank accounts, not "doing business" under CPLR § 301); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773 (5th Cir. 1986) ("Similarly, Harvey's ownership of realty in the forum unrelated to this litigation would not alone support an exercise of general jurisdiction") citing Shaffer v. Heitner, 433 U.S. 186, 208-10 (1977).

approach 'doing business' [as] required under [CPLR] 301.").  Plaintiffs' allegations against Al-Ibrahim amount to no more than stale,[6] "isolated and scattershot contacts, not the substantial, continuous, and permanent contacts required to support § 301 jurisdiction." <u>Reers</u>, 320 F. Supp. 2d at 154.  Accordingly, this Court does not have general jurisdiction over Al-Ibrahim.

**B.     There Is No Specific Jurisdiction Over Al-Ibrahim Because, Plaintiffs' Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient.**

Under C.P.L.R. § 302(a)(2), "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction."  <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 805 (citation omitted).  However, "[b]efore jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with the conspiracy." <u>Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.</u>, 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotations and citation omitted, emphases added).  Thus, here, "[p]ersonal jurisdiction cannot be based on a New York long-arm conspiracy theory" unless plaintiffs "allege [] specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities."  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 806.

In addition, to satisfy due process, plaintiffs must properly allege some tortious act by a defendant, and allege facts showing that said defendant "expressly aimed" such a tortious act at the forum.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 809 ("Plaintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims."); <u>Calder</u>, 465 U.S.

---

[6] <u>See</u>, <u>e.g.</u>, <u>Klinghoffer v. S.N.C. Achille Lauro</u>, 937 F.2d 44, 52 (2d Cir. 1991) citing 4 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1051, 160-162 (1987) (jurisdictional contacts determined at time Complaint filed).

at 789.  Moreover, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.  See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) (exercise of personal jurisdiction based upon alleged effects in New York "must be applied with caution, particularly in an international context"); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because plaintiffs must "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States"); S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990).

Here, there is no alleged connection between Al Qaeda, or the events of September 11, 2001, and the allegations that: (i) Al-Ibrahim owned real estate assets in the United States;[7] (ii) Al-Ibrahim is a Saudi Citizen and a brother-in-law of King Fahd;[8] (iii) Al-Ibrahim created an Arab television satellite service;[9] (iv) Al-Ibrahim owns a company in which two other defendants are also purportedly shareholders;[10] (v) Al-Ibrahim received a loan from BCCI in 1989;[11] (vi) Al-Ibrahim engaged in a romantic pursuit of Brooke Shields;[12] (vii) Al-Ibrahim gambled in the United States;[13] or (viii) Al-Ibrahim hired a law firm in the United States.[14]  Because Al-Ibrahim's alleged forum contacts are wholly unrelated to the allegations against Al Qaeda, those allegations cannot establish

---

[7]  See Cont. Cas. Compl. ¶¶ 308-310; Fed. Ins. RICO Statement, pp. 10-11.

[8]  See  Cont. Cas. Compl. ¶307; Fed. Ins. RICO Statement, p. 7.

[9]  See Cont. Cas. Compl. ¶ 312; Fed. Ins. RICO Statement, p. 7.

[10]  See Cont. Cas. Compl. ¶ 311; Fed. Ins. RICO Statement, p. 11.

[11]  See Cont. Cas. RICO Statement, p. 9; Fed. Ins. RICO Statement, p. 10.

[12]  See Cont. Cas. RICO Statement, p. 9; Fed. Ins. RICO Statement, p.10.

[13]  See Cont. Cas. RICO Statement, p. 10; Fed. Ins. RICO Statement, p.11.

[14]  See Cont. Cas. RICO Statement, p. 10; Fed. Ins. RICO Statement, p.11.

specific personal jurisdiction over Al-Ibrahim.  See Kulko, 436 U.S. at 93-94 (temporary visits to
State insufficient basis for assertion of in personam jurisdiction over unrelated action).

In addition, plaintiffs' conclusory allegations that all defendants conspired with Al Qaeda are
insufficient to establish personal jurisdiction over Al-Ibrahim.  See In re Sept. 11 Attacks, 349 F.
Supp. 2d at 801, 805-06 ("Without supporting factual allegations, [plaintiffs' claim that all
Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of
September 11] is insufficient to establish personal jurisdiction."); see also Jazini, 148 F.3d at 184-85
("conclusory statement" of law couched as factual allegation insufficient to establish personal
jurisdiction); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) (same);
Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) ("plaintiff must
plead facts which, if true, are sufficient in themselves to establish jurisdiction").  For the same
reason, the allegations in the RICO Statements that indiscriminately group Al-Ibrahim with allegedly
responsible "financial facilitators," "sponsors," and "charities" cannot establish jurisdiction over Al-
Ibrahim.  For example, without any supporting factual allegations, plaintiffs allege that Al-Ibrahim
"conspired to support terrorism,"[15] "fit neatly into this framework by raising and providing funds for
and otherwise providing material support,"[16] and "consistently and constantly laundered money,
provided material support for terrorism."[17]  Similarly, plaintiffs allege that: (i) "well placed financial
facilitators, including Al-Ibrahim laundered money from Islamic so-called charities and corporations
and raised money from witting and unwitting donors,"[18] (ii) "[t]he funds thus raised were used to,

---

[15] See Cont. Cas. RICO Statement, p. 2; Fed. Ins. RICO Statement, p. 2.

[16] See Cont. Cas. RICO Statement, p. 3; Fed. Ins. RICO Statement, pp. 3-4.

[17] See Cont. Cas. RICO Statement, p. 3; Fed. Ins. RICO Statement, p. 3.

[18] See Cont. Cas. RICO Statement, pp. 4-5; Fed. Ins. RICO Statement, pp. 4-5.

among other things, operate terrorist training camps in Afghanistan,"[19] and that (iii) "[n]one of this would have been possible without the funds supplied by participants and conspirators like defendant Al-Ibrahim."[20]  However, these allegations merely group Al-Ibrahim with alleged wrongdoers but do not identify any acts or omissions by Al-Ibrahim, including, but not limited to, where, when, or what money or funds were laundered by Al-Ibrahim.  Because plaintiffs have not, and cannot, allege that Al-Ibrahim did anything to conspire with Al Qaeda, plaintiffs cannot establish specific jurisdiction over Al-Ibrahim.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because plaintiffs must "allege personal acts by [the defendant] by which he purposefully directed his activities at the United States").

Similarly, the conclusory allegations that Al-Ibrahim "created" the Foundation in 1990 and that "through his direction and control, he entrusted the organization with the responsibility of realizing his objective of using it as a covert vehicle for supporting the al Qaeda movement and other terrorists" cannot establish jurisdiction over Al-Ibrahim, because those allegation do not allege any wrongdoing by Al-Ibrahim.  Compare Cont. Cas. Compl. ¶ 313, RICO Statement p. 6; Fed. Ins. RICO Statement p. 7 with In re Sept. 11 Attacks, 349 F. Supp. 2d at 816, 820 ("Prince Mohamed correctly submits that his position as an officer of DMI, IICG, and FIBS would not be a basis for jurisdiction over him even if the Court had personal jurisdiction over these entities" and dismissing claim against Khalid Bin Mahfouz, director of Blessed Relief Society) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  See also Ontel, 899 F. Supp. at 1148 (dismissing claim against alleged "founder" of corporation).  Therefore, plaintiffs' attempt to implicate Al-Ibrahim as an Al Qaeda co-conspirator based on his alleged association with the Foundation, even if

---

[19] Id.

[20] Id.

true, cannot support a finding of personal jurisdiction over Al-Ibrahim.  See Burnett II, 292 F. Supp. 2d at 22-23 ("allegations [that an individual] . . . personally donated money [to charities], knowing that those foundations funded terrorist organizations including Al Qaeda . . . stops well short of alleging that [the individual's] actions were 'expressly aimed' or 'purposefully directed' at the United States.").

In sum, even affording plaintiffs' allegations every favorable inference, there are simply no allegations that Al-Ibrahim committed *any* tortious acts and, therefore, no allegations that Al-Ibrahim "expressly aimed" *any* such tortious activities at the United States.  See Calder, 465 U.S. at 789.  In addition, plaintiffs' allegations do not in any way support an inference that Al-Ibrahim conspired with, let alone that he "directed, controlled, or requested, al Qaeda to undertake its terrorist activities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.

Plaintiffs' generalized, conclusory allegations of aiding and abetting are similarly infirm because an aiding and abetting claim "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer" and that "the defendant … know the wrongful nature of the primary actor's conduct."  Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); see In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  Here, plaintiffs have not alleged any facts to support any such finding as to Al-Ibrahim.  Rather, plaintiffs only assert boilerplate and conclusory allegations that Al-Ibrahim knew that he was somehow assisting the wrongful conduct of some person or persons.  See, e.g., *Fed. Ins.* RICO Statement, p. 5 ("Abdul Aziz al Ibrahim also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities"); *Cont. Cas.* RICO Statement p. 5 ("Al Ibrahim also, with knowledge and intent, agreed to the overall objectives of the conspiracy").

There are simply no allegations from which one could infer that Al-Ibrahim gave "substantial assistance or encouragement" to Al Qaeda, was "aware of the wrongful nature of the primary actor's conduct," or "expressly aimed any acts at the United States."  Therefore, plaintiffs have failed to make out a *prima facie* case for personal jurisdiction over Al-Ibrahim, and the claims against him should be dismissed in their entirety.

## II

## THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST AL-IBRAHIM.

"To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."  York v. Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  Further, it is well settled that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus, 87 F.3d at 70); see also Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) ("legal conclusions, deductions or opinions couched as factual allegations" do not suffice to prevent dismissal); Cantor Fitzgerald, Inc. v. Lutnick, 313  F.3d 704, 709 (2d Cir. 2002) (court should give "no credence" to conclusory allegations).

To properly state each of plaintiffs' claims, plaintiffs must allege that some act or omission by Al-Ibrahim proximately caused the alleged injury, here the September 11, 2001 attacks.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797 n.26; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege facts showing "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable").  Moreover, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must allege the particular elements of either conspiracy and aiding and abetting as to each defendant.  In re Sept. 11

Attacks, 349 F. Supp. 2d at 826.  The Second Circuit has explained that "[t]he elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort."  Pittman, 149 F.3d at 122 (citations omitted).  In addition, "[c]onspiracy . . . requires an agreement to commit a tortious act [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Id. at 123 (citations omitted).  Each theory requires that plaintiffs also allege that a defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

A.    **Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions *By Al-Ibrahim* Proximately Caused Plaintiffs' Injuries.**

A review of plaintiffs' allegations that describe acts taken by Al-Ibrahim demonstrates that those allegations are not in any way connected with Al Qaeda or the events of September 11, 2001. Specifically:

- There is no alleged connection between Al Qaeda and Al-Ibrahim's alleged ownership of real estate assets *Cont. Cas. Compl.* ¶¶ 308-310; *Fed. Ins.* RICO Statement, pp. 10-11.

- There is no alleged connection between Al Qaeda and the allegation that Al-Ibrahim is a Saudi Citizen and a brother-in-law of King Fahd.  *Cont. Cas. Compl.* ¶ 307; *Fed. Ins.* RICO Statement, p. 7.

- There is no alleged connection between Al Qaeda and the allegation that Al-Ibrahim created an Arab television satellite service. *Cont. Cas. Compl.* ¶ 312; *Fed. Ins.* RICO Statement, p. 7.

- There is no alleged connection between Al Qaeda and the allegation that Al-Ibrahim owns a company that is a shareholder in a company in which two other defendants are also purportedly shareholders. *Cont. Cas. Compl.* ¶ 311; *Fed. Ins.* RICO Statement, p. 7.

- There is <u>no alleged connection</u> between Al Qaeda and the allegation that Al-Ibrahim received a loan from BCCI in 1989.  *Cont. Cas. Compl.* ¶ 308; *Fed. Ins.* RICO Statement, p. 10.

- There is <u>no alleged connection</u> between Al Qaeda and the allegation that Al-Ibrahim engaged in a romantic pursuit of an American actress.  *Cont. Cas.* RICO Statement, p. 9; *Fed. Ins.* RICO Statement, p. 10.

- There is <u>no alleged connection</u> between Al Qaeda and the allegation that Al-Ibrahim gambled and hired a law firm in the United States.  *Cont. Cas.* RICO Statement, p. 10; *Fed. Ins.* RICO Statement, p. 11.

Moreover, the conclusory allegations in plaintiffs' RICO Statements are not supported by any factual allegations, and do not allege any wrongful conduct by Al-Ibrahim.  Instead, plaintiffs indiscriminately group Al-Ibrahim with allegedly responsible "financial facilitators," "sponsors," and "charities."  These allegations, unsupported by any factual allegations, cannot state a claim against Al-Ibrahim.  <u>De Jesus</u>, 87 F.3d at 70 ("[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)"); <u>Gillette Co. v. Philips Oral Healthcare, Inc.</u>, 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (Fed. R. Civ. P. 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." (internal quotation marks omitted)).  As such, plaintiffs' conclusory allegations that Al-Ibrahim "conspired to support terrorism,"[21] "fit neatly into this framework by raising and providing funds for and otherwise providing material support,"[22] and "consistently and constantly laundered money, provided material support for terrorism,"[23] cannot state a claim.  <u>Id.</u>  Similarly*,* the allegations that (i) "well placed financial facilitators, including Al-Ibrahim . . . laundered money from Islamic so-called charities and corporations and raised money

---

[21] <u>See</u> *Fed. Ins.* RICO Statement, p.2; *Cont. Cas.* RICO Statement, p. 2.

[22] <u>See</u> *Fed. Ins.* RICO Statement, pp. 3-4; *Cont. Cas.* RICO Statement, p. 3.

[23] <u>Id.</u>

from witting and unwitting donors,"[24] and (ii) "[t]he funds thus raised were used to, among other

things, operate terrorist training camps in Afghanistan . . . [which] would not have been possible

without the funds supplied by participants and conspirators like defendant Al-Ibrahim"[25] fail to

identify any acts or omissions <u>by Al-Ibrahim</u>, including, but not limited to, where, when or what

money or funds were laundered <u>by Al-Ibrahim</u>.  Indeed, "lumping the defendants together in each

claim and providing no factual basis to distinguish their conduct" fails to satisfy the minimum

standards required by Fed. R. Civ. P. Rule 8.  <u>See</u> <u>Atuahene v. City of Hartford</u>, 2001 WL 604902, at

*34 (2d Cir. May 31, 2001) (internal citation omitted); <u>see also</u> <u>Glasheen v. City of Albany</u>, 1999 WL

1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff's "over-inclusive approach renders it virtually

impossible for each [d]efendant to respond to the allegations").  In short, none of the inflammatory

and conclusory allegations in the RICO Statements provides any facts as to when, where, how, or to

whom <u>Al-Ibrahim</u> supposedly provided any support, knowingly or unknowingly.  Therefore,

plaintiffs have failed to allege that Al-Ibrahim proximately caused any of plaintiffs' injuries.  <u>In re</u>

<u>Sept. 11 Attacks</u>, 349 F. Supp. 2d at 799 (where no specific allegations defendant provided funds to

certain entity, allegations of ostensible support could not state causation).

       Finally, the allegations that Al-Ibrahim "created" the Foundation in 1990 and "through his

direction and control, he entrusted the organization with the responsibility of realizing his objective

---

[24] See *Cont. Cas.* RICO Statement, pp. 4-5; *Fed. Ins.* RICO Statement, pp. 4-5.  Indeed, plaintiffs' conclusory
and unsupported allegation that Al-Ibrahim "launder[ed] money" for al Qaeda does not substitute for
allegations of facts sufficient to show that (1) Al-Ibrahim conducted a financial transaction in interstate
commerce; (2) Al-Ibrahim knew that the property involved represented some form of specific unlawful
conduct; (3) the transaction involved the proceeds of specific unlawful conduct; and (4) the transaction was
conducted to conceal the nature of the illegally acquired proceeds.  <u>See</u> <u>Bernstein v. Misk</u>, 948 F. Supp 228,
236 n.2 (E.D.N.Y. 1997) (conclusory allegations insufficient); <u>Casio Computer Co. v. Sayo</u>, 2000 WL
1877516, at *16 (S.D.N.Y. Oct. 13, 2000).

[25] <u>Id.</u>

of using it as a covert vehicle for supporting the al Qaeda movement and other terrorists"[26] are insufficient to establish that _Al-Ibrahim_ proximately caused plaintiffs' injuries. See, e.g., Armour & Co. v. Celic, 294 F.2d 432, 439 (2d Cir. 1961) (director "is not personally liable for the torts of his corporation" absent allegations of personal involvement); In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (citing Keeton, 465 U.S. at 781 n.13 (noting separateness concept in jurisdictional context)); Ontel, 899 F. Supp. at 1148 (dismissing claim against alleged "founder" of corporation); Olszewski v. Waters of Orchard Park, 758 N.Y.S.2d 716, 717 (4th Dept. 2003) (corporate officer cannot be individually liable for tortious conduct of corporation "merely because of his relationship to the corporation").  As such, the conclusory allegations that Al-Ibrahim "created," "directed," or "controlled" the Foundation, devoid of any supporting factual allegations, are insufficient to state a claim.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33, 836 (conclusory allegations insufficient to state claim; dismissing claim against defendant Al Baraka Investment & Development Corporation because "majority of the complaints' allegations regarding Al Baraka actually concern Dallah Albaraka," and because "allegation that Mr. Kamel was one of three founders . . . without additional allegation, does not state a claim for relief."); Id. at 820 (dismissing claim against Khalid Bin Mahfouz, director of Blessed Relief Society);  see also In re Global Crossing, 2005 WL 1907005, at *12 (S.D.N.Y Aug. 8, 2005) (discussing control person liability and stating "[c]onclusory allegations of control are insufficient as a matter of law").  Furthermore, plaintiffs' contradictory theories of liability asserted within one sentence -- that Al-Ibrahim "directed and controlled the Foundation" and, at the same time, "entrusted the Foundation" to carry out his objectives -- demonstrate that plaintiffs' allegations are bereft of any basis in fact.  See Fed. Ins. RICO Statement, p. 7; _Cont. Cas._ RICO Statement, p. 6 (same); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice

---

[26] See _Cont. Cas._ RICO Statement, p. 6; _Fed. Ins._ RICO Statement, p. 7.

& Procedure § 1363, 120-21 (3d Ed. 2004) (when deciding Rule 12 motion, "district court will not

accept as true pleading allegations that are contradicted by . . . other allegations.").

Plaintiffs' boilerplate, conclusory allegations of causation cannot be allowed to substitute for

*some* allegation of fact -- *any* allegation of fact -- that Al-Ibrahim ever actually *did* anything to cause

the injuries for which plaintiffs now seek redress. [27]  See Smith v. Local 819 I.B.T. Pension Plan, 291

F.3d 236, 240 (2d Cir. 2002); De Jesus, 87 F.3d at 70; In re Sept. 11 Attacks, 349 F. Supp. 2d at 799.

At a minimum, plaintiffs must concede that nowhere do they allege that Al-Ibrahim "agree[d] to

commit a tortious act" engaged in any "tortious conduct;" provided "substantial assistance or

encouragement" to Al Qaeda or had "actual knowledge" of Al Qaeda's wrongful conduct.  See In re

Sept. 11 Attacks, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that

the defendant knowingly provided assistance or encouragement to the wrongdoer.").  In short,

plaintiffs have failed to make any allegation against Al-Ibrahim that could support a finding of

proximate cause as to any of the pending claims.  Accordingly, the Court should dismiss the

Complaint against Al-Ibrahim pursuant to Rule 12(b)(6).

**B.**     **Plaintiffs Have Failed To Plead Facts Sufficient To State Any Causes Of Action.**

     **1.**     **Trespass (Continental Casualty Count 1; Federal Insurance Count 1)**

"Trespass is the interference with a person's right to possession of real property either by an

unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and

the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home Loan Mortg.

Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  The alleged trespass also must be the "immediate or

---

[27] Plaintiffs "catch-all" averments do not suffice to plead proximate causation as to Al-Ibrahim.  See
American Express, 39 F.3d at 400 n.3 ("[C]ourts do not accept conclusory allegations on the legal
effect of the events plaintiff has set out if these allegations do not reasonably follow from his
description of what happened.") (internal citations omitted).

inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[28]  Where, as here, plaintiffs assert that Al-Ibrahim aided and abetted a trespass, they must allege that Al-Ibrahim "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 830 (same). As demonstrated above, plaintiffs have proffered no allegation that, if proven, would show that Al-Ibrahim gave "substantial assistance" to al Qaeda, had "actual knowledge" of the attacks, or intended any trespass.  Plaintiffs have also failed to allege that Al-Ibrahim committed any wrongful act resulting in any trespass, or proximate causation as to Al-Ibrahim.  Accordingly, plaintiffs' trespass claim against Al-Ibrahim should be dismissed.

2.    **RICO (Continental Casualty Counts 2 and 3; Federal Insurance Count 8)**

As an initial matter, where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims."  Laborers Local 17, 191 F.3d at 239.  Here, plaintiffs' attempt to assert RICO claims as third-party subrogees of injuries to insureds and, therefore, attempt to recover for indirect injuries. Accordingly, plaintiffs lack standing to bring their RICO claims.  See Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994) (RICO standing "threshold question" and "represents a jurisdictional requirement").  In addition, "pecuniary losses that are derivative of personal injuries are not 'business or property' injuries" for purposes of RICO standing.  See Burnett v. al Baraka Inv. &

---

[28] The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994); A.J. Cunningham Packing Corp. v. Cong. Fin. Corp., 792 F.2d 330, 334 (3d Cir. 1986).

Dev. Corp., 274 F. Supp. 2d 86, 100-02 (D.D.C. 2003); Bankers Trust Co. v. Rhoades, 741 F.2d 511,

515 (2d Cir. 1984) ("plaintiff must show a proprietary type of damage").

 Plaintiffs also have failed to satisfy any of the elements of criminal RICO, namely "(1) that

the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of

'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in

(6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan

Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). A Section 1962(a) RICO claim requires an allegation of

"injury [resulting] from the defendant's investment of the racketeering income," In re Sept. 11

Attacks, 349 F. Supp. 2d at 827; a Section 1962(c) RICO claim requires an allegation that the

defendant "had some part in directing the operation or management of the enterprise," id. at 827-28;

and a Section 1962(d) claim requires an allegation that the defendant was a "central figure" in the

underlying scheme. Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y.

2003). Without alleging these elements, there is no RICO violation, and no civil liability can ensue.

See, e.g., Moss, 719 F.2d at 18-19.

 Here, plaintiffs' allegations regarding Al-Ibrahim establish *none* of the required civil RICO

elements. Plaintiffs do *not* allege two or more predicate acts by Al-Ibrahim; *any* facts that could

show an agreement to commit two or more predicate acts by Al-Ibrahim; *any* facts showing that Al-

Ibrahim engaged in any 'pattern' of 'racketeering activity'; *any* facts that could imply Al-Ibrahim's

assent to any alleged RICO conspiracy; *any* overt acts by Al-Ibrahim in furtherance of any alleged

conspiracy; *any* interest of, investment by, or participation by Al-Ibrahim in the alleged al Qaeda

'enterprise'; *any* injury from Al-Ibrahim's investment of racketeering income; and *any* indication that

Al-Ibrahim was a central figure in any endeavor at all or actively managed anything whatsoever, let

alone that he directed the operation of the alleged Al Qaeda 'enterprise.' See Lesavoy v. Lane, 304

F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate" to state a RICO claim). Plaintiffs' conclusory RICO allegations also fail to satisfy the particularized requirements of Fed. R. Civ. P. 9(b). See, e.g., De Jesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations). Moreover, plaintiffs have failed to plead proximate causation as to Al-Ibrahim. Plaintiffs thus have failed to state any RICO claims against Al-Ibrahim.

>   **3.   Anti-Terrorism Act (*Federal Insurance* Count 10)**

Under the Anti-Terrorism Act ("ATA"), a plaintiff may bring a private cause of action where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism. 18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003). "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citing Boim II, 291 F.3d at 1023). Other than the aforementioned conclusory allegations, plaintiffs here make no allegation of fact showing that Al-Ibrahim engaged in any act of assistance to terrorists, much less that he did so knowingly or with a desire to see a terrorist plot succeed. Moreover, plaintiffs have wholly failed to plead proximate causation. To be sure, "[p]laintiffs have not alleged any relationship between [Al-Ibrahim] and al Qaeda or the terrorist attacks of September 11." See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33. Accordingly, plaintiffs have failed to state an ATA claim, and the claim must be dismissed.

4.      **Conspiracy and Aiding and Abetting (*Federal Insurance* Counts 7 and 9)**

Conspiracy and aiding and abetting are not recognized as independent claims under New

York law.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York

law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720

N.E.2d 892, 895, n.3, 898 (1999) (aiding and abetting "no[t an] independent tort").  Accordingly,

plaintiffs' conspiracy and aiding and abetting causes of action must be dismissed.

5.      **Torture Victims Protection Act (*Federal Insurance* Count 6)**

A action under the Torture Victims Protection Act, 28 U.S.C. § 1350, note § 2(a) ("TVPA")

requires allegations that (i) an individual, (ii) under actual or apparent authority, or color of law, of

any foreign nation, (iii) subjected another individual to extrajudicial killing or torture.  28 U.S.C.A.

§ 1350, note § 2(a) (1993); Flores v. S. Peru Copper Corp., 343 F.3d 140, 152-54 (2d Cir. 2003);

Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir. 1995).  Plaintiffs' TVPA claim fails because there are no

"allegations that [Al-Ibrahim] acted under color of law," In re Sept. 11 Attacks, 349 F. Supp. 2d at

828, or that there was any extrajudicial act. See Wiwa v. Royal Dutch Petroleum Co., 2002 WL

319887, at *3 (S.D.N.Y. Feb. 28, 2002) (TVPA applies only to torts committed against United States

citizens who, "while in a foreign country, are victims of torture or extra-judicial killing").

6.      **Wrongful Death & Survival (*Federal Insurance* Counts 2 and 3)**

To maintain a wrongful death claim under New York law, a proper representative must

allege that a defendant (i) committed a wrongful act, neglect, or default, (ii) which proximately

caused, (iii) decedent's death.  See N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002).  A survival claim

requires allegations of (i) a tort to person or property, (ii) suffered by the decedent prior to death.

N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001).  Here, plaintiffs have failed to allege any underlying tort

by Al-Ibrahim.  Plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or

survival.  Finally, plaintiffs have not properly alleged that any actions by Al-Ibrahim proximately caused the deaths of the victims of the September 11 attacks.

### 7.    Negligence (*Federal Insurance* Count 11)

Because plaintiffs "do not allege or identify a duty owed . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover, no duty is alleged, and there is no proximate causation.

### 8.    Assault and Battery, Intentional Infliction of Emotional Distress (*Federal Insurance* Counts 4 & 5)

Plaintiffs' claims for assault, battery, and intentional infliction of emotional distress are barred by the applicable one-year statute of limitations.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 829 (citations omitted).  Plaintiffs have also failed to allege that he proximately caused the injuries.

### 9.    Punitive Damages (*Federal Insurance* Count  12)

Plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

## CONCLUSION

For the foregoing reasons, Al-Ibrahim respectfully requests that this Court dismiss all claims against him with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York           Respectfully submitted,
September 27, 2005                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/s/_____

  James J. McGuire (JM-5390)
  30 Rockefeller Plaza, 24th Floor
  New York, New York 10112
  (212) 332-3800
  *Attorneys for Abdul Aziz Bin Ibrahim Al-Ibrahim*