**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:          New York Marine and General Insurance Co. v.
                                   Al Qaida, et al., (1:04 Civ. 6105) (RCC)

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT ABDUL AZIZ BIN IBRAHIM AL-IBRAHIM</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *Abdul Aziz Bin Ibrahim Al-Ibrahim*

Table of Contents

Page

INTRODUCTION ...................................................................................................................1

PRELIMINARY STATEMENT ...........................................................................................1

SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST AL-IBRAHIM ..................2

    A.    Jurisdictional Allegations ...............................................................................2

    B.    Conspiracy-Related Allegations .....................................................................2

ARGUMENT ..........................................................................................................................4

    I.    PLAINTIFF HAS NOT STATED A PRIMA FACIE CASE
        FOR PERSONAL JURISDICTION OVER AL-IBRAHIM ....................................5

        A.    There Is No General Jurisdiction Over Al-Ibrahim .........................................6

        B.    There Is No Specific Jurisdiction Over Al-Ibrahim
            Because Plaintiff's Conclusory Conspiracy And Aiding
            And Abetting Allegations Are Insufficient………………………………….9

    II.    THE COMPLAINT FAILS TO STATE A CLAIM
        AGAINST AL-IBRAHIM………………………..……………………………15

        A.    Plaintiff Has Failed To Aver Facts Sufficient To Show That
            *Any* Actions By Al-Ibrahim Proximately Caused Plaintiff's Injuries……….16

        B.    Plaintiff Has Failed To Plead Facts Sufficient
            To State Any Causes Of Action…………………………………………...21

            1.    Trespass (Count 1)…………………………………………………...21

            2.    RICO (Count 3)……………………………………………………...22

            3.    Anti-Terrorism Act (Count 5)……...………………………….…...23

            4.    Conspiracy and Aiding and Abetting (Counts 2 and 4)……………24

            5.    Negligence (Count 6)………………………………………….…...24

            6.    Punitive Damages (Count 7)……………………………………….25

CONCLUSION………………………………………………………………………...25

Table of Authorities

Page

Cases

A.J. Cunningham Packing Corp. v. Cong. Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ...................................................................................21

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) ....................................................................................9

Armour & Co. v. Celic,
    294 F.2d 432 (2d Cir. 1961) ..................................................................................17

Atuahene v. City of Hartford,
    2001 WL 604902 (2d Cir. May 31, 2001) .............................................................18

Beacon Enters., Inc. v. Menzies,
    715 F.2d 757 (2d Cir. 1983) ...................................................................................6

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) .......................................................................10

Bernstein v. Misk,
    948 F. Supp. 228 (E.D.N.Y. 1997) ................................................................ 13, 19

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d. 86 (D.D.C. 2003) .......................................................................22

Burnett v. Al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ..........................................................................12

Calder v. Jones,
    465 U.S. 783 (1984) ...........................................................................5, 10, 12, 15

Cantor Fitzgerald, Inc. v. Lutnick,
    313  F.3d 704 (2d Cir. 2002) .................................................................................15

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .......................................................19

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998) .....................................................................................5

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ....................................................................................21

Copelco Capital, Inc. v. Gen. Consul of Bolivia,
    940 F. Supp. 93 (S.D.N.Y. 1996) ...............................................................................14

Cortec Indus. v. Sum Holding, L.P.,
    949 F.2d 42 (2d Cir. 1991) .........................................................................................13

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ......................................................... 9, 15, 16, 20, 23

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003)........................................................................22

First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,
    218 F. Supp. 2d 369 (S.D.N.Y. 2002)..........................................................................8

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999)............................................................18

Gold v. Fields,
    1993 WL 212672 (S.D.N.Y. June 14, 1993) ...............................................................4

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) .......................................................................................24

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 413 (1984) ............................................................................................... 6, 7

Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,
    763 F.2d 55 (2d Cir. 1985) ..........................................................................................6

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ...................................................................................................15

Holt Oil & Gas Corp. v. Harvey,
    801 F.2d 773 (5th Cir. 1986)........................................................................................8

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) ............................................................................21

In re Global Crossing,
    2005 WL 1907005 (S.D.N.Y Aug. 8, 2005) ..............................................................18

In re Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................................passim

In re Terrorist Attacks on Sept. 11 2001,
    2005 WL 2296673 (S.D.N.Y. Sept. 21, 2005) ....................................................... 4, 7

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ................................................................ 5, 10

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984) .......................................................................... 11, 12

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................................9

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) .............................................................. 15, 22

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
    77 N.Y.2d 28, 563 N.Y.S.2d 739 (1990) ...................................................7

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972) ................................................................10

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975) ................................................................. 5, 10

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004) ....................................................23

MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) .....................................................................9

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) ...................................................................15

Mende v. Milestone Tech. Inc.,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ......................................................5

Moss v. Morgan Stanley Inc.,
    719 F.2d 5 (2d Cir. 1983) .................................................................. 22, 23

Nat'l Org. for Women, Inc. v. Scheidler,
    510 U.S. 249 (1994) ..............................................................................22

Nicholas v. Saul Stone & Co.,
    224 F.3d 179 (3d Cir. 2000) ..................................................................11

Olszewski v. Waters of Orchard Park,
    758 N.Y.S.2d 716 (4th Dept. 2003) ........................................................17

Ontel Products, Inc. v. Project Strategies Corp,
    899 F. Supp. 1144 (S.D.N.Y. 1995) ............................................8, 9, 12, 17

Pac-Tec, Inc. v. Amerace Corp.,
    903 F.2d 796 (Fed. Cir. 1990) ...........................................................................14

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ....................................................................14, 15, 16

Precision Specialty Metals, Inc. v. United States,
    315 F.3d 1346 (Fed. Cir. 2003) ..........................................................................14

Reers v. Deutsche Bahn AG,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ...........................................................6, 7, 8, 9

S.E.C. v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990) .............................................................................10

Shaffer v. Heitner,
    433 U.S. 186 (1977) ............................................................................................8

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) .........................................................24

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. 2002) ................................................25

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ................................................................................20

Smith v. Morris & Manning,
    647 F.Supp. 101 (S.D.N.Y. 1986) .........................................................................8

Spoto v. Herkimer County Trust,
    2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) .........................................................4

Tauza v. Susquehanna Coal Co.,
    220 N.Y. 259, 115 N.E. 915 (1917) .......................................................................8

Tornheim v. Fed. Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ......................................................................21

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) .................................................................................5

United States v. Yousef,
    327 F.3d 56, 116 (2d Cir. 2003) .........................................................................24

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003) ......................................................21

York v. Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002) ...........................................................................................15


Statutes

18 U.S.C. §§ 2331-2333 (2000)...........................................................................................23


Other Authorities

5C Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1363 (3d ed. 2004)..............................................13

Odil Ruzaliev, Islam in Uzbekistan: Implications of 9/11 and Policy Recommendations for the
    United States, 25 J. Muslim Minority Aff. 13, 17 (2005) ................................... 13, 19

Vincent C. Alexander, McKinney's Consol. Laws of N.Y., Book 7B, Practice Commentary to CPLR
    C301:10 at pp. 41-42 (McKinney's 2001).......................................................................6

## INTRODUCTION

Defendant Abdul Aziz Bin Ibrahim Al-Ibrahim ("Al-Ibrahim") respectfully submits this Memorandum of Law in support of his motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims against him in the First Amended Complaint ("Complaint") in *New York Marine and General Insurance Company v. Al Qaida, et al.*, 1:04 Civ. 6105 (RCC).  For all the reasons set forth herein and in the remainder of the record, this motion is meritorious and should be granted in all respects.

## PRELIMINARY STATEMENT

Plaintiff, an insurance company that insured properties damaged as a result of the terrorist attacks on September 11, 2001, attempts to hale Al-Ibrahim into this Court and hold him liable for the horrific events of September 11, 2001.  Plaintiff fails, however, to proffer *any* allegations of fact that, if proven, would show any connection between Al-Ibrahim and Al Qaeda, the events of September 11, 2001, or the United States.  Indeed, the Complaint does not contain *any* specific allegations concerning Al-Ibrahim.  The *only* reference to Al-Ibrahim in the Complaint is the conclusory allegation that Al-Ibrahim and numerous other defendants "have aided and abetted, conspired with and provided material support and resources to" Al Qaeda in connection with the September 11, 2001 attacks.  <u>See</u> Complaint ¶ 45.  This single allegation falls far short of stating any legally cognizable claims against Al-Ibrahim.  Moreover, there are *no* allegations in the Complaint purporting to establish that Al-Ibrahim had any contacts with the United States, let alone minimum contacts sufficient to establish personal jurisdiction over Al-Ibrahim.  Finally, the conclusory allegations in plaintiff's RICO Statement ("Rico Statement") (which, as discussed below, should not be considered in connection with this motion) are categorically insufficient to withstand a motion to dismiss.  Accordingly, plaintiff's claims against Al-Ibrahim should be dismissed, with prejudice, pursuant to Rule 12(b)(2) or, alternatively, Rule 12(b)(6), in their entirety.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST AL-IBRAHIM

The only reference to Al-Ibrahim in the Complaint is the conclusory allegation that he, along with numerous other defendants, has "aided and abetted, conspired with and provided material support and resources to" Al Qaeda in connection with the September 11, 2001 attacks. See Complaint ¶ 45.

In the RICO Statement -- which, as discussed below, cannot be considered as an amendment to the Complaint and, in any event, may only be considered in connection with plaintiff's RICO claims -- plaintiff attempts to bolster its non-existent claim that Al-Ibrahim conspired with Al Qaeda in connection with the events of September 11, 2001, with the following skimpy averments:

### A.      Jurisdictional Allegations

- Ibrahim [] has extensive ties to the United States.  His real estate assets in the United States have included Ritz-Carlton hotels in New York, Washington and Houston, and a hotel and office complex near O'Hare International Airport in Chicago.  Ritz-Carlton decided in 1997 to remove its name from the facilities owned by Ibrahim after they became controlled by Al Anwa USA, a company owned by Ibrahim.  (RICO Statement, p. 2)

### B.      Conspiracy-Related Allegations

- Ibrahim's misconduct includes providing material support to Al Qaeda, knowingly and intentionally employing Al Qaeda members, laundering money for Al Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretenses), providing Al Qaeda with safe houses and false documentation, and/or facilitating money transfers and weapons and military equipment purchases for Al Qaeda through the Ibrahim Foundation. Ibrahim knowingly and intentionally collected, diverted and transferred funds to Al Qaeda and otherwise lent material support to Al Qaeda through the Ibrahim Foundation. Additionally, Ibrahim knowingly and intentionally provided repeated material support and substantial assistance to Al Qaeda through the Ibrahim Foundation through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings in violation of numerous federal statues. (RICO Statement, p. 1)

- In 1990, Ibrahim created the [Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation (the "Foundation")], which purports to support humanitarian assistance in the Middle East, South America and South Asia.  (RICO Statement, pp. 1-2)

- Ibrahim and the Foundation were funding the Islamic Movement of Uzbekistan, an affiliate of Al Qaeda, whose leaders met Osama bin Laden in 1999 in Afghanistan.  Reports stated that the Islamic Movement of Uzbekistan received approximately $270,000 from the Foundation.  (RICO Statement, p. 2)

- The Foundation is a Saudi based charity with branches throughout the world.  Defendant Ibrahim established the Foundation in 1990.  The Foundation holds itself out as a charity with humanitarian goals, and has raised, solicited and distributed funds under the pretense that the funds would be used for legal and humanitarian purposes.  Nevertheless, through the Foundation, Ibrahim has knowingly and intentionally lent material support to the Al Qaeda Enterprise through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.  (RICO Statement, p. 3)

- Ibrahim, through the Foundation, conducted or participated, directly or indirectly, in the affairs of the Al Qaeda RICO enterprise through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaida's purposes.  Ibrahim's misconduct includes materially supporting Al Qaeda (i.e., providing "access to bank accounts" and serving as "cover" to Al Qaeda members who were able to travel undetected "under the guise of working for" these humanitarian organizations), knowingly and intentionally employing Al Qaeda operatives, laundering money for Al Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretense), providing Al Qaeda with safe houses and false documentation, and/or facilitating weapons and military equipment purchases and transfers for Al Qaeda.  (RICO Statement,  p. 3)

- Ibrahim, through the Foundation, knowingly and intentionally collected, diverted and transferred *Zakat* funds to Al Qaeda and otherwise lent material support to Al Qaeda.  The Ibrahim Foundation knowingly and intentionally lent material support to Al Qaeda through, *inter alia*, the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.  Ibrahim's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, antidemocratic activity, including the September 11th attacks that injured plaintiffs.  (RICO Statement, p. 3)

- The financial support provided to Al Qaeda by Ibrahim and the Foundation assisted the business and financial transactions in which Al Qaeda engaged to further its operations and purposes.  Al Qaeda relied upon Ibrahim, among others in its global network of banks, financial institutions and charities, to generate material support to continue its terrorist operations.  (RICO Statement, p. 3)

- Ibrahim consistently, evenly and constantly, laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity.  (RICO Statement, p. 4)

- Al Qaeda relies upon a global network of banks, financial institutions and charities, including the United States Branch of the Foundation, founded by Ibrahim. (RICO Statement, p. 5)

- Ibrahim holds himself out as the director of a legitimate charity with legitimate goals. (RICO Statement, p. 5)

- Ibrahim conducted the racketeering activity through his charity operations, by raising, soliciting and distributing funds under the pretense that the funds would be used for humanitarian purposes. (RICO Statement, p. 5)

Plaintiff's attempt to hale Al-Ibrahim into this Court based on the foregoing allegations, and hold him liable for the horrific events of September 11, 2001, is meritless. As further demonstrated below, plaintiff does not allege any facts to justify including Al-Ibrahim in plaintiff's indiscriminate grouping of Al-Ibrahim with the over 200 named defendants in these actions. Moreover, even if the allegations in the RICO Statement are considered, those purporting to connect Al-Ibrahim with this forum do not provide a basis for this Court to exercise personal jurisdiction over Al-Ibrahim.

## <u>ARGUMENT</u>

As a preliminary matter, plaintiff's untimely RICO Statement cannot be deemed an amendment to the Complaint and thus should not be considered in connection with this motion. <u>See</u> Instructions For Filing RICO Statement, <u>available at</u> www.nysd.gov/Individual_Practices/rico ("All parties asserting claims pursuant to the [RICO Act], must file and serve upon the opposing party a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim."); Order, Aug. 23, 2005 (MDL Docket No. 1144); <u>Spoto v. Herkimer County Trust</u>, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO Statement."); <u>Gold v. Fields</u>, 1993 WL 212672, at *5, n.5 (S.D.N.Y. June 14, 1993) ("[T]he [RICO] Statement . . . only seeks information plaintiffs should already have in their possession before filing their complaint."). In any event, the RICO Statement may only be considered in connection with plaintiff's RICO claims. <u>See</u> <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 2005 WL 2296673, at *14 (S.D.N.Y. Sept. 21, 2005) ("For purposes of the RICO claims, the Court also reviews the RICO statements.").

Nevertheless, even if the allegations in plaintiff's RICO Statement are considered, plaintiff's claims against Al-Ibrahim should be dismissed for two reasons.  <u>First</u>, the Complaint should be dismissed pursuant to Rule 12(b)(2), because plaintiff's allegations do not support a finding of personal jurisdiction over Al-Ibrahim.  <u>Second</u>, the Complaint should be dismissed pursuant to Rule 12(b)(6), because plaintiff's allegations fail to state a claim against Al-Ibrahim.

## I

## PLAINTIFF HAS NOT STATED A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER AL-IBRAHIM.

Plaintiff bears the burden of establishing personal jurisdiction over Al-Ibrahim, a citizen of Saudi Arabia.  <u>See</u> <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).  To survive a motion to dismiss, plaintiff must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  <u>See</u> <u>id</u>. at 809.  "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181, 184-85 (2d Cir. 1998); <u>see</u> <u>also</u> <u>Lehigh Valley Indus., Inc. v. Birenbaum</u>, 527 F.2d 87, 93-94 (2d Cir. 1975). Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  <u>Mende v. Milestone Tech. Inc.</u>, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); <u>see</u> <u>also</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 804.  Whether a plaintiff asserts that a Court has general or specific jurisdiction over a defendant, due process requires that a plaintiff allege facts showing that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.</u>, 241 F.3d 135, 152 (2d Cir. 2001) (quoting <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) (internal quotations omitted)); <u>see</u> <u>also</u> <u>Chew v. Dietrich</u>, 143 F.3d 24, 28 (2d Cir. 1998).

A.    **There Is No General Jurisdiction Over Al-Ibrahim.**

To establish general jurisdiction under C.P.L.R. § 301, a plaintiff must allege that, as a result of a defendant's contacts with New York, the defendant is "engaged in a continuous and systematic course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction." See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  When long-arm jurisdiction is based upon contacts with the nation as a whole, a plaintiff must also demonstrate minimum contacts.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 808.  Similarly, when a federal claim is made against a foreign defendant not subject to jurisdiction in any state, "[p]ersonal jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth Amendment due process requirements." Id. at 807, 811 ("a considerably higher level of contacts is generally required" to plead general jurisdiction).  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984),

In addition, it is doubtful that an individual can even be subject to "doing business" jurisdiction under CPLR § 301 pursuant to New York law.  See, e.g., Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985); Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 n.6 (2d Cir. 1983); Vincent C. Alexander, McKinney's Consol. Laws of N.Y., Book 7B, Practice Commentary to CPLR C301:10 at pp. 41-42 (McKinney's 2001).

Here, there are no allegations in the Complaint to support a finding of jurisdiction over Al-Ibrahim.  For this reason alone, the Complaint must be dismissed.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must make a prima facie showing of each Defendant's personal or direct participation in the conduct giving rise to Plaintiffs' injuries.").

Moreover, the single allegation in plaintiff's RICO Statement purporting to link Al-Ibrahim with New York or the United States, even if proven, cannot establish a basis for the exercise of general jurisdiction over Al-Ibrahim.  Plaintiff alleges that Al-Ibrahim's assets "have included Ritz-

Carlton hotels." <u>See</u> RICO Statement, p. 2.  However, there is no allegation that Al-Ibrahim owned

any Ritz-Carlton hotels in his individual capacity and, in fact, it is a matter of public record that the

Ritz-Carlton hotels referenced by plaintiff were owned by entities and *not* Al-Ibrahim.[1]  As such,

plaintiff's allegation that Al-Ibrahim's "assets have included" Ritz-Carlton hotels cannot establish

jurisdiction over Al-Ibrahim because "the mere existence of a business relationship with entities

within the forum state is insufficient to establish 'presence'" for the purposes of general jurisdiction.

<u>Reers</u>, 320 F. Supp. 2d at 155 (dismissing complaint on jurisdictional grounds even though

defendant "formed a joint venture with a New York venture capital firm, the Blackstone Group, to

acquire 52 hotels from Vivendi") (citation omitted).

In any event, the vague allegation that Al-Ibrahim's assets "have included" Ritz-Carlton

hotels simply does not demonstrate the continuous and systematic type of contacts that could

establish general jurisdiction over Al-Ibrahim.  <u>See, e.g.</u>, <u>In re Sept. 11 Attacks</u>, 2005 WL 2296673, at

*42 ("Prince Salman's ownership of shares in Texas corporations, on its own, cannot be considered

sufficiently systematic and continuous to establish general jurisdiction.") (citing <u>Helicopteros</u>, 466

U.S. at 414-16 (finding CEO's travel to forum for contract negotiations, employees' travel to forum

for training, receipt of funds drawn on forum bank accounts, and purchase from forum companies

were not contacts sufficiently systematic and continuous to establish general jurisdiction)); <u>Landoil</u>

<u>Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 77 N.Y.2d 28, 563 N.Y.S.2d 739 (1990) (non-

domiciliary defendant "is amenable to suit in New York courts under CPLR 301 if it has engaged in

---

[1] <u>Compare</u> RICO Statement, p.2 <u>with</u> Press Release entitled <u>The Ritz-Carlton Hotel Company,</u>
<u>L.L.C. Terminates Management Agreement at Hotels in Aspen, Houston, New York City and</u>
<u>Washington, D.C.; Chronic Breaches of Contract and Interference Cited</u> (Aug. 2, 1997) available at
www.hotel-online.com/News/PressReleases/RitzCarltonContracts_Aug1997.html ("The Ritz-
Carlton, Aspen is owned by Savanah Limited Partnership; The Ritz-Carlton, Houston is owned by
New Remington Partners; The Ritz-Carlton, New York is owned by N.Y. Overnight Partners, L.P.;
and The Ritz-Carlton, Washington, D.C. is owned by D.C. Overnight Partners, L.P.  All of the
hotels are represented by Al Anwa USA Inc. of Los Angeles").

such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in

this jurisdiction is warranted"); Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917

(1917) (Cardozo, J.) (for "presence," non-domiciliary must be present in New York "not occasionally

or casually, but with a fair measure of permanence and continuity").  In addition, to establish

jurisdiction based on real property ownership, Courts generally require that "the cause of action

must arise from the ownership, possession or use of [that] real property."  Smith v. Morris &

Manning, 647 F. Supp. 101, 104 (S.D.N.Y. 1986); First Capital Asset Mgmt., Inc. v. Brickellbush,

Inc., 218 F. Supp. 2d 369, 393 (S.D.N.Y. 2002) (foreign defendant's ownership and sale of New

York apartment, unspecified business transactions, and New York bank accounts, not "doing

business" under CPLR §  301); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779 (5th Cir. 1986)

("Similarly, Harvey's ownership of realty in the forum unrelated to this litigation would not alone

support an exercise of general jurisdiction.") (citing Shaffer v. Heitner, 433 U.S. 186, 208-10 (1977)).

Similarly, the allegation that Al-Ibrahim owned a company named Al Anwa, USA ("Al

Anwa"), RICO Statement, p. 2, cannot establish jurisdiction over Al-Ibrahim because "the individual

who owns a corporation is generally not subject to personal jurisdiction as a result of the

corporation's activities."  Reers, 320 F. Supp. 2d at 154 ("mere fact that Accor owns or partially

owns businesses that are registered to do business in New York does not subject Accor to general

jurisdiction in New York") (citing Ontel Products, Inc. v. Project Strategies Corp, 899 F. Supp. 1144,

1148 (S.D.N.Y. 1995) (dismissing claim against alleged "founder" of corporation because "[i]n New

York, the individual who owns a corporation is generally not subject to personal jurisdiction as a

result of the corporation's activities unless (1) the corporation's veil can be 'pierced,' or (2) the

corporation acted as an agent for the owner")).

To pierce the corporate veil, a party must allege "(i) that the owner exercised complete

domination over the corporation with respect to the transaction at issue; and (ii) that such

domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."

American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); see also MAG

Portfolio Consult, Gmbh v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors

relevant to determination of "domination" include, among others, disregard of corporate formalities;

intermingling of funds; common office space, address and telephone numbers; degree of discretion

shown by allegedly dominated corporation; and intermingling of property); Reers, 320 F. Supp. 2d at

156; Ontel, 899 F. Supp. at 1148.  Here, plaintiff cannot establish general jurisdiction over Al-

Ibrahim based on his the allegation that he "owned" Al Anwa, because there is no allegation that Al-

Ibrahim exercised any control over Al Anwa in connection with the events of September 11, 2001.

Moreover, plaintiff has not proffered *any* factual allegations sufficient to establish *any* of the factors

to warrant piercing the corporate veil of Al Anwa.  See, e.g., De Jesus v. Sears, Roebuck & Co., 87

F.3d 65, 69-70 (2d Cir. 1996) ("conclusory allegations" insufficient to overcome "presumption of

separateness" afforded to related corporations).  In addition, plaintiff cannot establish that Al Anwa

acted as an agent for Al-Ibrahim, because plaintiff makes no such allegation.  In sum, plaintiff's

allegations fail to establish that this Court could exercise general jurisdiction over Al-Ibrahim.

**B.**     **There Is No Specific Jurisdiction Over Al-Ibrahim, Because Plaintiff's
         Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient.**

Under C.P.L.R. § 302(a)(2), "acts committed in New York by . . . co-conspirator[s] of an out-

of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction."  In

re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  However, "[b]efore jurisdiction based

on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie*

case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members

of the conspiracy and set forth *evidentiary facts* to connect the defendants with the conspiracy."

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y.

1998) (internal quotations and citation omitted, emphases added).  Thus, here, "[p]ersonal

jurisdiction cannot be based on a New York long-arm conspiracy theory" unless plaintiff "alleges []
specific facts from which the Court could infer that [defendant] directed, controlled, or requested al
Qaeda to undertake its terrorist activities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806.

     In addition, to satisfy due process, plaintiff must properly allege some tortious act by a
defendant and allege facts showing that said defendant "expressly aimed" such a tortious act at the
forum.  Calder, 465 U.S. at 789; In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to
dismiss because plaintiffs must "allege personal acts by [the defendant] by which he purposefully
directed his activities at the United States").  Moreover, a foreign defendant may be subject to
personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct"
effect in the forum.  See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d
Cir. 1972) (exercise of personal jurisdiction based upon alleged effects in New York "must be
applied with caution, particularly in an international context"); S.E.C. v. Unifund SAL, 910 F.2d
1028, 1033 (2d Cir. 1990).

     Here, this Court has already determined that the general allegation that all defendants
"conspired" with or "aided and abetted" Al Qaeda, see Complaint ¶ 45, without any factual
allegations, cannot establish personal jurisdiction over a particular defendant.  See In re Sept. 11
Attacks, 349 F. Supp. 2d at 801, 805-06 ("Without supporting factual allegations, [plaintiffs' claim
that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks
of September 11] is insufficient to establish personal jurisdiction on a New York long-arm
conspiracy theory"); see also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as
factual allegation insufficient to establish personal jurisdiction; plaintiff must allege supporting facts);
Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state *prima
facie* case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to
establish jurisdiction"); Lehigh Valley, 527 F.2d at 93-94 ("The bland assertion of conspiracy . . . is

insufficient to establish [personal] jurisdiction").  Therefore, and because plaintiff's conclusory

allegation in paragraph 45 of the Complaint that Al Ibrahim, along with numerous other defendants,

"conspired" with or "aided and abetted" Al Qaeda is the *only* allegation against Al-Ibrahim, plaintiff

has failed to establish jurisdiction over Al-Ibrahim and the Complaint must be dismissed.

In addition, even if the allegations in the RICO Statement are considered (although they

should not be), those allegations are insufficient to establish jurisdiction over Al-Ibrahim, because

plaintiff is attempting to implicate Al-Ibrahim as an Al Qaeda co-conspirator based on the alleged

acts of the Foundation.  See RICO Statement, p. 1 ("Ibrahim's misconduct includes providing

material support to Al Qaeda  . . . *through the [] Foundation* . . . Ibrahim knowingly and intentionally

collected, diverted and transferred funds . . . *through the [] Foundation*.  Additionally, Ibrahim

knowingly and intentionally provided repeated material support and substantial assistance to Al

Qaeda *through the [] Foundation*") Id., p. 3 ("*through the [] Foundation*, Ibrahim has knowingly and

intentionally lent material support to the Al Qaeda Enterprise. . . .  Ibrahim, *through the [] Foundation*,

conducted or participated, directly or indirectly, in the affairs of the Al Qaeda RICO enterprise

through a pattern of racketeering activity that, among other things, has facilitated, materially

supported and substantially assisted Al Qaida's purposes. . . .  Ibrahim, *through the [] Foundation*,

knowingly and intentionally collected, diverted and transferred *Zakat* funds to Al Qaeda and

otherwise lent material support to Al Qaeda.") (emphases added).

Plaintiff's allegations concerning the Foundation cannot support a finding of personal

jurisdiction over Al-Ibrahim because "[e]ach defendant's contacts with the forum State must be

assessed individually."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); see also

Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000) (jurisdiction over corporation does

not create jurisdiction over officers).  In addition, plaintiff's allegations concerning the Foundation

cannot establish jurisdiction over Al-Ibrahim because those allegation do not allege any wrongdoing

by Al-Ibrahim.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 809 ("Plaintiffs must allege some

personal or direct involvement by the Defendants in the conduct giving rise to their claims.");

Calder, 465 U.S. at 789; see also Ontel, 899 F. Supp. at 1148 (dismissing claim against alleged

"founder" of corporation).  In sum, plaintiff's attempt to implicate Al-Ibrahim as an Al Qaeda co-

conspirator based on his alleged association with the Foundation cannot support a finding of

personal jurisdiction over Al-Ibrahim.  Compare RICO Statement, p. 5 ("Ibrahim holds himself out

as the director of a legitimate charity with legitimate goals") with In re Sept. 11 Attacks, 349 F. Supp.

at 2d 816 ("Prince Mohamed correctly submits that his position as an officer of DMI, IICG, and

FIBS would not be a basis for jurisdiction over him even if the Court had personal jurisdiction over

these entities") (citing Keeton, 465 U.S. at 781 n.13).  Id. at 820 (dismissing claim against Khalid Bin

Mahfouz, director of Blessed Relief Society); See also Burnett v. Al Baraka Inv. & Dev. Corp, 292 F.

Supp. 2d 9, 22-23 (D.D.C. 2003) ("Plaintiffs' allegations [that an individual] . . . personally donated

money [to charities], knowing that those foundations funded terrorist organizations including Al

Qaeda . . . stops well short of alleging that [the individual's] actions were 'expressly aimed' or

'purposefully directed' at the United States.").

        The only allegations against Al-Ibrahim individually are that:

- The financial support provided to Al Qaeda by Ibrahim and the Foundation assisted the business and financial transactions in which Al Qaeda engaged to further its operations and purposes.  Al Qaeda relied upon Ibrahim, among others in its global network of banks, financial institutions and charities, to generate material support to continue its terrorist operations.  (RICO Statement, p. 3)

- Ibrahim consistently, evenly and constantly, laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity.  (RICO Statement, p. 4)

- Ibrahim conducted the racketeering activity through his charity operations, by raising, soliciting and distributing funds under the pretense that the funds would be used for legal and humanitarian purposes.  (RICO Statement, p. 5)

However, these allegations are not supported by any factual allegations.  There are no alleged instances of any alleged "financial support provided to Al Qaeda," by Ibrahim, "launder[ing] money," or "raising, soliciting and distributing funds under the pretense that the funds would be used for legal and humanitarian purposes."  Indeed, plaintiff has utterly failed to allege the elements of money laundering.  See Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (conclusory allegations insufficient to establish elements of money laundering).  As such, plaintiff's allegations cannot support the exercise of personal jurisdiction over Al-Ibrahim.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer . . .  Here, there are no such factual bases presented, there are only conclusions.").

The only allegation that comes close to an actual factual allegation against Al-Ibrahim is the assertion that he allegedly donated funds to the Islamic Movement of Uzbekistan ("IMU").  See RICO Statement, p. 2.  However, plaintiff's attempt to link Al-Ibrahim with Al Qaeda based on the allegation that he was "funding" the IMU fails for two reasons.  First, there is no alleged connection between any alleged funding of the IMU and Al Qaeda, let alone any allegation that Al-Ibrahim knew of any such connection.  Indeed, the article cited by plaintiff explains that the IMU was founded "with two main objectives: to overthrow Karimov's secular regime and to create an Islamic state in Uzbekistan."[2]  In sum, plaintiff's allegations cannot support a claim because there is no alleged connection between the IMU and Al Qaeda, let alone any alleged connection between Al-Ibrahim and Al Qaeda.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 and 835 (dismissing

---

[2] See Odil Ruzaliev, Islam in Uzbekistan: Implications of 9/11 and Policy Recommendations for the United States, 25 J. Muslim Minority Aff. 13, 17 (2005), available at http://www.registan.net/~revrend/images/OdilIslam.pdf; Cortec Indus. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (Court may consider documents referenced in Complaint); Wright & Miller, Federal Practice and Procedure § 1363, 120 (2004) (Court will not accept allegations contradicted by allegations incorporated in Complaint)

claims against Al Rajhi Bank and Arab Bank because "Plaintiffs' allegations that Al Rajhi Bank has

connections to Hamas supporters fails to state a claim because Plaintiffs have not alleged any

relationship between Hamas and al Qaeda" and "while claiming Arab Bank has ties with known

Hamas fronts, the _Federal_ complaint does not contain any allegation of a connection between Hamas

and Osama bin Laden, al Qaeda, or the September 11 attacks."). Second, plaintiff has taken the

liberty of inventing that allegation. Indeed, the article states that the Foundation -- not Al-Ibrahim --

was funding the IMU.[3]  In sum, plaintiff's allegation regarding alleged funding of the IMU is not

even alleged to be related to Al Qaeda and, thus, cannot form the basis of a claim against Al-

Ibrahim. Plaintiff's generalized, conclusory allegations of aiding and abetting are similarly

insufficient to support personal jurisdiction over Al-Ibrahim. A claim of aiding and abetting

"requires that a defendant have given substantial assistance or encouragement to the primary

wrongdoer" and that "the defendant … know the wrongful nature of the primary actor's conduct."

Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); see In re Sept. 11

Attacks, 349 F. Supp. 2d at 826. In short, the alleged aider and abettor must have been aware of the

wrongdoing and provided substantial assistance in its commission. Here, plaintiff has not proffered

_any_ facts sufficient to support _any_ such finding as to Al-Ibrahim. Plaintiff offers nothing but the

barest boilerplate and conclusory and allegations that Al-Ibrahim knew that he was somehow

assisting the wrongful conduct of some person or persons. See, e.g., RICO Statement at 3

("Ibrahim, through the Ibrahim Foundation, conducted or participated, directly or indirectly, in the

affairs of the Al Qaeda RICO enterprise through a pattern of racketeering activity that, among other

---

[3] The article states, "[i]n the spring of 1999, an IMU delegation visited Saudi Arabia and received
270,000 dollars from the Ibrahim bin-Abdulaziz Ibrahim Foundation, a relief organization of the
Saudi royal family." Id. at 18-19. Plaintiff's misrepresentation of the contents of the article to
implicate Al-Ibrahim is sanctionable conduct. See, e.g., Precision Specialty Metals, Inc. v. United
States, 315 F.3d 1346, 1355-57 (Fed. Cir. 2003); Pac-Tec, Inc. v. Amerace Corp., 903 F.2d 796, 803
(Fed. Cir. 1990); Copelco Capital, Inc. v. Gen. Consul of Bolivia, 940 F. Supp. 93, 95 (S.D.N.Y.
1996).

things, has facilitated, materially supported and substantially assisted Al Qaida's purposes.").  There are simply no allegations from which one could infer that Al-Ibrahim gave "substantial assistance or encouragement" to Al Qaeda or was aware of the wrongful nature of any conduct by Al Qaeda. Pittman, 149 F.3d at 123 (internal citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.

In sum, even affording plaintiff's allegations every favorable inference, there are simply no allegations that Al-Ibrahim committed *any* tortious acts, no allegations that Al-Ibrahim "expressly aimed" any such tortious activities at the United States, see Calder, 465 U.S. at 789, and no allegations that could in any way support an inference that Al-Ibrahim conspired with Al Qaeda, let alone that he "directed, controlled, or requested al Qaeda to undertake its terrorist activities."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.

## II

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST AL-IBRAHIM.

"To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."  York v. Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  It is well settled that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus, 87 F.3d at 70); see also Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) ("legal conclusions, deductions or opinions couched as factual allegations" not sufficient to prevent dismissal); Cantor Fitzgerald, Inc. v. Lutnick, 313  F.3d 704, 709 (2d Cir. 2002) (court should give "no credence" to conclusory allegations).

In addition, to properly state each of plaintiff's claims, plaintiff must allege that some act or omission by Al-Ibrahim proximately caused the alleged injury, here the terrorist attacks on September 11, 2001.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797 n.26; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); Laborers Local 17 Health & Ben. Fund v. Philip

Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege facts showing "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable").  Moreover, because "plaintiff[] rel[ies] on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [its assertion of proximate causation]," plaintiff must allege the particular elements of either conspiracy and aiding and abetting as to each defendant.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  The Second Circuit has explained that "[t]he elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort."  Pittman, 149 F.3d at 122 (citations omitted).  Finally, "[c]onspiracy . . . requires an agreement to commit a tortious act [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Id. at 122-23 (citations omitted).  Each theory requires that plaintiff also allege that a defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

A. **Plaintiff Has Failed To Plead Facts Sufficient To Show That *Any* Actions By Al-Ibrahim Proximately Caused Plaintiff's Injuries.**

This Court has already determined that the general allegation that all defendants "conspired" with or "aided and abetted" Al Qaeda, without any supporting factual allegations, cannot establish that any particular defendant proximately caused any of the plaintiffs' alleged injuries.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 ("[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (quoting De Jesus, 87 F.3d at 70).  Thus, because the *only* allegation in the Complaint is the general allegation in paragraph 45 that Al-Ibrahim, along with numerous other defendants, conspired with Al Qaeda, the Complaint should be dismissed.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 799 (where there

were no specific allegations that a defendant provided funds to a certain entity, allegations of

ostensible support could not state causation).

In addition, even if the allegations in the RICO Statement are considered -- although they

should not be -- those allegations fail to allege that Al-Ibrahim proximately caused anything.  As

explained above, plaintiff attempts to implicate Al-Ibrahim as an Al Qaeda co-conspirator based on

the alleged acts of the Foundation.[4]   However, plaintiff's allegations against the Foundation are

insufficient to sustain a claim that <u>Al-Ibrahim</u> proximately cased the injuries about which plaintiff

complains.  <u>Compare</u> RICO Statement, p. 5 ("Ibrahim holds himself out as the director of a

legitimate charity with legitimate goals") <u>with</u> <u>Armour & Co. v. Celic</u>, 294 F.2d 432, 439 (2d Cir.

1961) (director "is not personally liable for the torts of his corporation" absent allegations of

personal involvement) and <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 832-33, 836 (conclusory

allegations insufficient to state claim and dismissing claim against defendant Al Baraka Investment &

Development Corporation because "majority of the complaints' allegations regarding Al Baraka

actually concern Dallah Albaraka," and because "allegation that Mr. Kamel was one of three

founders . . . without additional allegation, does not state a claim for relief."); <u>Id</u>. at 820 (dismissing

claim against Khalid Bin Mahfouz, director of Blessed Relief Society); <u>Ontel</u>, 899 F. Supp. at 1148

(dismissing claim against alleged "founder" of corporation); <u>Olszewski v. Waters of Orchard Park</u>,

758 N.Y.S.2d 716, 717 (4th Dept. 2003) (corporate officer cannot be held individually liable for

---

[4] <u>See</u> RICO Statement, p. 1 ("Ibrahim's misconduct includes providing material support to Al Qaeda
. . . *through the [] Foundation* . . . Ibrahim knowingly and intentionally collected, diverted and
transferred funds . . . *through the [] Foundation*.  Additionally, Ibrahim knowingly and intentionally
provided repeated material support and substantial assistance to Al Qaeda *through the [] Foundation*")
<u>Id.</u>, p. 3 ("*through the [] Foundation*, Ibrahim has knowingly and intentionally lent material support to
the Al Qaeda Enterprise. . . .  Ibrahim, *through the [] Foundation*, conducted or participated, directly or
indirectly, in the affairs of the Al Qaeda RICO enterprise through a pattern of racketeering activity
that, among other things, has facilitated, materially supported and substantially assisted Al Qaida's
purposes. . . .  Ibrahim, *through the Foundation*, knowingly and intentionally collected, diverted and
transferred *Zakat* funds to Al Qaeda and otherwise lent material support to Al Qaeda.") (emphases
added).

tortious conduct of corporation "merely because of his relationship to [the corporation]"); see also In re Global Crossing, 2005 WL 1907005, at *12 (S.D.N.Y Aug. 8, 2005) (discussing control person liability and stating that "[c]onclusory allegations of control are insufficient as a matter of law").[5] See also In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 ("Prince Mohamed correctly submits that his position as an officer of DMI, IICG, and FIBS would not be a basis for jurisdiction over him even if the Court had personal jurisdiction over these entities").

Moreover, the allegations regarding alleged acts or omissions by Al-Ibrahim taken in his individual capacity (other than the insufficient allegation regarding the IMU discussed below) are not supported by any factual allegations.  There are no alleged instances of any alleged "financial support provided to Al Qaeda," by Al-Ibrahim, "launder[ing] money," or "raising, soliciting and distributing funds under the pretense that the funds would be used for legal and humanitarian purposes." Plaintiff's conclusory and unsupported allegation that Al-Ibrahim "launder[ed] money" for al Qaeda does not substitute for allegations of facts sufficient to show that (i) Al-Ibrahim conducted a

---

[5] In any event, the conclusory allegations in plaintiff's RICO Statement cannot establish that the Foundation (let alone Al-Ibrahim) proximately cased plaintiff's injuries.  Specifically, plaintiff's allegations that the Foundation was "laundering money," and providing "material support," "access to bank accounts," "financial assistance," "housing," "false documentation," and "weapons" to or for Al Qaeda are not supported by any factual allegations.  There is not a single alleged instance of the Foundation (or Al-Ibrahim) "laundering money," or providing "material support," "access to bank accounts," "financial assistance," "housing," "false documentation," or "weapons" to Al Qaeda.  Similarly, the allegations that the Foundation aided Al Qaeda "by raising, soliciting and distributing funds under the pretense that the funds would be used for humanitarian purposes" and "knowingly and intentionally collected, diverted and transferred *Zakat* funds to Al Qaeda" are devoid of any factual allegations, including, but not limited to, a single instance of any such knowing and intentional support.  See RICO Statement, p. 3.  Plaintiff has simply lumped the Foundation in its allegations against all named defendants without providing any factual basis to distinguish any conduct.  Therefore, plaintiff's allegations fail to satisfy the minimum standards required by Fed. R. Civ. P. Rule 8.  See Atuahene v. City of Hartford, 2001 WL 604902, at *34 (2d Cir. May 31, 2001); see also Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff's "over inclusive approach renders it virtually impossible for each [d]efendant to respond to the allegations"); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong").

financial transaction in interstate commerce; (ii) Al-Ibrahim knew that the property involved

represented some form of specific unlawful conduct; (iii) the transaction involved the proceeds of

specific unlawful conduct; and (4) the transaction was conducted to conceal the nature of the

illegally acquired proceeds.  See Bernstein, 948 F. Supp. at 236 n.2 (E.D.N.Y. 1997) (holding

conclusory allegations insufficient); Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16

(S.D.N.Y. Oct. 13, 2000).   In sum, plaintiff's allegations are not supported by any factual allegations

and, therefore, cannot support a finding that Al-Ibrahim proximately caused anything.   See In re

Sept. 11 Attacks, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that

the defendant knowingly provided assistance or encouragement to the wrongdoer . . .  Here, there

are no such factual bases presented, there are only conclusions.").  None of the inflammatory and

conclusory allegations in the RICO Statements provides any facts as to when, where, how, or to

whom Al-Ibrahim supposedly provided any support to Al Qaeda, whether knowingly or

unknowingly.  Therefore, plaintiff has failed to allege that Al-Ibrahim proximately caused plaintiff's

injuries.  Id.

        The only allegation that comes close to an actual factual allegation against Al-Ibrahim in the

Complaint or RICO Statement is the charge that Al-Ibrahim allegedly donated funds to the IMU.

See RICO Statement, p. 2.  However, plaintiff's attempt to connect Al-Ibrahim with Al Qaeda based

on the allegation that Al-Ibrahim and the Foundation donated funds to the IMU  is meritless.  There

is no alleged connection between the alleged funding of the IMU and Al Qaeda, let alone any

allegation that Al-Ibrahim was aware of any alleged support of Al Qaeda.  In fact, the IMU was

founded "with two main objectives: to overthrow Karimov's secular regime and to create an Islamic

state in Uzbekistan."[6]  In sum, plaintiff's allegation regarding alleged funding of the IMU is not even

alleged to be related to Al Qaeda's plans to attack the United States and, thus, cannot form the basis

---

[6] See Ruzaliev, supra note 2, at 17.

of a claim against Al-Ibrahim.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 and 835

(dismissing claims against Al Rajhi Bank and Arab Bank because "Plaintiffs' allegations that Al Rajhi

Bank has connections to Hamas supporters fails to state a claim because Plaintiffs have not alleged

any relationship between Hamas and al Qaeda" and "while claiming Arab Bank has ties with known

Hamas fronts, the *Federal* complaint does not contain any allegation of a connection between Hamas

and Osama bin Laden, al Qaeda, or the September 11 attacks. A complaint alleging conclusions

without supporting facts will not survive a Rule 12(b)(6) motion.").  Furthermore, plaintiff has

simply invented this allegation  --  the article states that the Foundation (not Al-Ibrahim) was

funding the IMU.[7]

     Plaintiff's boilerplate, conclusory allegations of causation cannot be allowed to substitute for

*some* allegation of fact showing that Al-Ibrahim himself ever actually *did* anything to cause the injuries

for which plaintiff now seeks redress.  See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240

(2d Cir. 2002); De Jesus, 87 F.3d at 70; See In re Sept. 11 Attacks, 349 F. Supp. 2d at 799 (where no

specific allegations that defendant provided funds to certain entity, allegations of ostensible support

could not state causation).

     At a minimum, plaintiff must concede that nowhere does plaintiff allege that Al-Ibrahim

"agree[d] to commit a tortious act;" engaged in any "tortious conduct;" provided "substantial

assistance or encouragement" to Al Qaeda; or had "actual knowledge" of Al Qaeda's wrongful

conduct.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support

an inference that the defendant knowingly provided assistance or encouragement to the

wrongdoer.").  In short, plaintiff has failed to make any allegation against Al-Ibrahim that could

---

[7] Id. at 18-19 ("In the spring of 1999, an IMU delegation visited Saudi Arabia and received 270,000 dollars from the Ibrahim Bin-Abdul Aziz Ibrahim Foundation, a relief organization of the Saudi royal family.").

support a finding of proximate cause as to any of the pending claims.  Accordingly, the Court should dismiss the Complaint against Al-Ibrahim pursuant to Rule 12(b)(6).

**B.      Plaintiff Has Failed To Aver Facts Sufficient To State Any Causes Of Action.**

**1.      Trespass (Count 1)**

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[8]  Where, as here, plaintiff asserts that Al-Ibrahim aided and abetted a trespass, it must allege that Al-Ibrahim "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 830 (same).

In this case, plaintiff lamely alleges that Al-Ibrahim, "through the Ibrahim Foundation, conducted or participated, directly or indirectly, in the affairs of the Al Qaeda RICO enterprise through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaida's purposes."[9]  Plaintiff has proffered no allegation that, if proven, would show that Al-Ibrahim gave "substantial assistance" to Al Qaeda, had "actual

---

[8] The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action.  See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994); A.J. Cunningham Packing Corp. v. Cong. Fin. Corp., 792 F.2d 330, 334 (3d Cir. 1986).

[9] See RICO Statement, p.3.

knowledge" of the Attacks, or intended any trespass.  Plaintiff has also failed to allege that Al-Ibrahim committed any wrongful act that resulted in any trespass, and has again failed to plead proximate causation as to Al-Ibrahim.  Accordingly, plaintiff's claims for trespass against Al-Ibrahim should be dismissed.

### 2.   RICO (Count 3)

As an initial matter, where plaintiff's' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims."  Laborers Local, 191 F.3d at 239.  Here, plaintiffs' attempt to assert RICO claims as third-party subrogees of injuries to insureds and, therefore, attempt to recover for indirect injuries.  Accordingly, plaintiffs lack standing to bring their RICO claims.  See Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994) (RICO standing "threshold question" and "represents a jurisdictional requirement").  In addition, "pecuniary losses that are derivative of personal injuries are not 'business or property' injuries" for purposes of RICO standing.  Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d. 86, 100-02 (D.D.C. 2003) ("plaintiff must show a proprietary type of damage").

Plaintiff also has failed to state its putative RICO claims against Al-Ibrahim.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Plaintiff's Section 1962(a) RICO claim requires an allegation of "injury [resulting] from the defendant's investment of the racketeering income," In re Sept. 11 Attacks, 349 F. Supp. 2d at 827; plaintiff's Section 1962(c) RICO claim requires an allegation that the defendant "had some part in directing the operation or management of the enterprise," id. at 827-28; and plaintiff's Section 1962(d) claim requires an allegation that the defendant was a "central figure" in the underlying scheme.  Dubai Islamic Bank v.

Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003). Where plaintiff cannot successfully allege these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can ensue. See, e.g., Moss, 719 F.2d at 18-19.

Plaintiff's sparse allegations regarding Al-Ibrahim, even if true, would establish *none* of the requisite elements of a civil RICO claim. Neither the Complaint nor the RICO Statement allege two or more predicate acts by Al-Ibrahim, or any facts that could show an agreement to commit two or more predicate acts by Al-Ibrahim. Plaintiff alleges no facts showing that Al-Ibrahim engaged in any 'pattern' of 'racketeering activity'; no facts that could imply Al-Ibrahim's assent to any alleged RICO conspiracy; no overt acts by Al-Ibrahim in furtherance of any alleged conspiracy; no interest of, investment by, or participation by Al-Ibrahim in the alleged al Qaeda 'enterprise'; no injury from Al-Ibrahim's putative investment of racketeering income; and no indication that Al-Ibrahim was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that he directed the operation of the alleged al Qaeda 'enterprise.' See Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate."). Plaintiff's conclusory RICO allegations regarding mail and wire fraud, see RICO Statement, pp 3-4, fail to meet the particularized requirements of Fed. R.. Civ. P. 9(b). Moreover, as discussed above, plaintiff has failed to plead proximate causation as to Al-Ibrahim. Plaintiff thus has completely failed to state any RICO claims against Al-Ibrahim. See, e.g., De Jesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations).

### 3.    Anti-Terrorism Act (Count 5)

Under the Anti-Terrorism Act ("ATA"), a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person,

property, or business, (iii) due to a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828.  Other than their aforementioned conclusory allegations, this plaintiff makes no allegation of fact showing that Al-Ibrahim engaged in any act of assistance to terrorists, much less that he did so knowingly or with a desire to see a terrorist plot succeed.  And again, plaintiff has wholly failed to plead proximate causation.

To be sure, plaintiff has "not alleged any relationship between [Al-Ibrahim] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33. Plaintiff, consequently, has wholly failed to state its ATA claim and the cause must be dismissed.

### 4.  Conspiracy and Aiding and Abetting (Counts 2 and 4)

Plaintiff's putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort"). For this reason alone, plaintiff's putative conspiracy and aiding and abetting causes of action must be dismissed.

### 5.  Negligence (Count 6)

Because plaintiff does "not allege or identify a duty owed . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover, no duty has been alleged, and

plaintiff does not allege a breach of any such duty by Al-Ibrahim -- because it alleges no wrongful act or omission by Al-Ibrahim -- or proximate causation of its injuries.

      **6.**      <u>**Punitive Damages (Count 7)**</u>

Finally, plaintiff cannot state a claim for punitive damages, because punitive damages are a form of relief and not an independent cause of action. <u>See</u> <u>Smith v. County of Erie</u>, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. 2002).

<u>**CONCLUSION**</u>

For the foregoing reasons, Al-Ibrahim respectfully requests that this Court dismiss all claims against him with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
September 27, 2005

        Respectfully submitted,
        SHEPPARD MULLIN RICHTER & HAMPTON LLP


        By:_____/s/_____
         James J. McGuire (JM-5390)

        30 Rockefeller Plaza, 24th Floor
        New York, New York 10112
        (212) 332-3800

        *Attorneys for Abdul Aziz Bin Ibrahim Al-Ibrahim*