**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

This document relates to:                    Cantor Fitzgerald & Co., et al. v. Akida
                                             Bank Private Ltd., et al. (04 CV 7065)

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**</u>
<u>**DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST**</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
   *Dar Al-Maal Al-Islami Trust*

<u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ..................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST .........................................2

ARGUMENT ........................................................................................................................4

I     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST ......................4

    A.   Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. .............................9

    B.   Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ...................................................12

    C.   Plaintiffs Have Failed To Plead Facts Sufficient To State  Any Of Their Causes of Action Against DMI Trust. .............................................................................14

        1.   Trespass (Count 1). ................................................................................15

        2.   Anti-Terrorism Act (Count 2). ...............................................................16

        3.   RICO – Against Banking and Financial Defendants (Count 4) .........................18

        4.   Aiding and Abetting a Violation of International Law (Count 9) ....................20

        5.   Conspiracy and Aiding and Abetting (Counts 10 & 11). ..................................22

        6.   Punitive Damages (Count 12). .................................................................23

        7.   Contribution and Indemnity (Count 13). .................................................23

II    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................24

CONCLUSION ....................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
    1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992) ...................................................................23

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ......................................................................................................16

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.,
    2005 WL 1649045 (S.D.N.Y. July 13, 2005) .........................................................................24

Acito v. Imcera Grp., Inc.,
    47 F.3d 47 (2d Cir. 1995) ..........................................................................................................25

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) ...........................................................................................16

Alexander v. Sandoval,
    537 U.S. 275 (2001) ...................................................................................................................21

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
    228 F.3d 429 (3d Cir. 2000) ......................................................................................................23

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) ........................................................................................................13

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) ........................................................................................................2

Amsterdam Tobacco Inc. v. Philip Morris Inc.,
    107 F. Supp. 2d 210 (S.D.N.Y. 2000) ......................................................................................19

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..............................................................................2

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989) ...................................................................................................................21

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
    459 U.S. 519, 103 S. Ct. 897 (1983) ........................................................................................11

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003) ......................................................................................................19

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987) ........................................................................................................5

Bernstein v. Misk,
    948 F. Supp. 228 (E.D.N.Y. 1997) .............................................................................................7

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
291 F.3d 1000 (7th Cir. 2002) .................................................................6, 12, 14, 17

Boyanowski v. Capital Area Intermediate Unit,
215 F.3d 396 (3d Cir. 2000) ..................................................................................23

Burnett v. Al Baraka Inv. and Dev. Corp.,
274 F. Supp. 2d 86 (D.D.C. 2003) ......................................................................1, 17

Casio Computer Co. v. Sayo,
2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ...........................................................7

Chudasama v. Mazda Motor Corp.,
123 F.3d 1353 (11th Cir. 1998) ...............................................................................9

Coleman v. Reno,
91 F. Supp. 2d 130 (D.D.C. 2000) .........................................................................21

Cooper v. Horn,
448 S.E.2d 403 (Va. 1994) .....................................................................................16

De Falco v. Bernas,
244 F.3d 286 (2d Cir. 2001) ...................................................................................19

DeJesus v. Sears, Roebuck & Co.,
87 F.3d 65 (2d Cir. 1996) ...................................................................2, 13, 15, 20

Dreyfus v. von Finck,
534 F.2d 24 (2d Cir. 1976) .....................................................................................21

Dubai Islamic Bank v. Citibank, N.A.,
256 F. Supp. 2d 158 (S.D.N.Y. 2003)................................................................ 19, 20

Electronic Comm'ns Corp. v. Toshiba Am.,
129 F.3d 240 (2d Cir. 1997) ...................................................................................25

First Capital Asset Mgmt. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004) ...................................................................................19

Flanagan v. Shively,
783 F. Supp. 922 (M.D. Penn. 1992)......................................................................10

Flores v. S. Peru Copper Corp.,
343 F.3d 140 (2d Cir. 2003) ...................................................................................21

Ford v. New Britain Trans. Co.,
2004 WL 3078827 (D.Conn. Dec. 21, 2004) .........................................................24

Friedman v. Bayer Corp.,
1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999)......................................................20

Gillette Co. v. Philips Oral Healthcare, Inc.,
2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .........................................................5

Glasheen v. City of Albany, ,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ............................................................. 5

Gmurzynska v. Hutton,
    2003 WL 1193727 (S.D.N.Y. March 14, 2003) ......................................................... 8

Gold v. Fields,
    1993 WL 212672 (S.D.N.Y. June 14, 1993) ............................................................. 2

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ..................................................................................... 22

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ................................................................................. 23

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003) ..................................................... 10, 11

Hayden v. Pataki,
    2004 WL 1335921 (S.D.N.Y. June 14, 2004) ......................................................... 20

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ....................................................................................... 10

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) ........................................................... 20

Jackson v. BellSouth Telecomms.,
    372 F.2d 1250 (4th Cir. 2004) ................................................................................... 6

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ......................................................... 12

Jordan v. Madison Leasing Co.,
    596 F. Supp. 707 (S.D.N.Y. 1984) ......................................................................... 24

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) ....................................................................................... 20

Khalid v. Bush,
    355 F. Supp. 2d 311 (D.D.C. 2005) ....................................................................... 1, 21

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) ..................................................................................... 5

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ....................................................................... 11

LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co.,
    951 F. Supp. 1071 (S.D.N.Y. 1996) ....................................................................... 19

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ..................................................................................... 12

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004)........................................................................19

Liberman v. Worden,
    701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000)............................................11

In re Livent, Inc. Noteholders Secs. Litig.,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)........................................................................15

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) ...........................................................................................2

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) .........................................................................................14

Medina v. Bauer,
    2004 WL. 136636 (S.D.N.Y. Jan. 27, 2004) ..........................................................2, 5

Moss v. Morgan Stanley Inc.,
    719 F.2d 5 (2d Cir. 1983) .....................................................................................18, 19

In re NASDAQ Market-Makers Antitrust Litig.,
    894 F. Supp. 703 (S.D.N.Y. 1995) ...........................................................................11

Oneida Indian Nation of New York v. City of Sherrill,
    337 F.3d 138 (2d Cir. 2003) ......................................................................................25

Papasan v. Allain,
    478 U.S. 265 (1986) ....................................................................................................13

Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,
    782 F.2d 346 (2d Cir. 1986) ......................................................................................24

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ......................................................................................13

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972) ........................................................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
    1998 WL. 355422 (S.D.N.Y. Jul. 2, 1998) ................................................................8

Redtail Leasing, Inc. v. Bellezza,
    2001 WL 863556 (S.D.N.Y. July 31, 2001) ............................................................19

Rose v. Goldman, Sachs & Co.,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)......................................................................15

In re S. African Apartheid Litig.,
    346 F. Supp. 2d 538 (S.D.N.Y. 2004).......................................................................22

Seguros Comercial Am., Seguros Inbursa, S.A. v. Grupo Nacional Provincial, S.A.,
    115 F. Supp. 2d 1371 (M.D. Fla. 2000).....................................................................21

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
  2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ......................................................... 11, 23

Skipworth v. Lead Indus. Ass'n, Inc.,
  690 A.2d 169 (Pa. 1997) ............................................................................................. 10

Small v. Lorillard Tobacco Co.,
  94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) ................................................................. 22

Smith v. County of Erie,
  295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) .......................................... 23

Smith v. Islamic Emirate of Afghanistan,
  262 F. Supp. 2d 217 (S.D.N.Y. 2003) ...................................................................... 16, 17

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) ....................................................................................... 5, 15

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
  151 F. Supp. 2d 303 (S.D.N.Y. 2001) ........................................................................... 15

Sosa v. Alvarez-Machain,
  542 U.S. 692, 124 S. Ct. 2739 (2004) ...................................................................... 20, 21

Sparrow v. United Airlines, Inc.,
  216 F.3d 1111 (D.C. Cir. 2002) ..................................................................................... 6

Spoto v. Herkimer County Trust,
  2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ................................................................... 2

St. Pierre v. Dyer,
  208 F.3d 394 (2d Cir. 2000) ......................................................................................... 23

Stewart v. Crosswalks Television Network,
  2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ................................................................. 10

Suarez v. Underwood,
  103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ............................. 10

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002) ................................................................................................. 6, 15

In re Terrorist Attacks on Sept. 11, 2001,
  2005 WL 2296673 (S.D.N.Y. Sept., 21 2005) ...............................1, 6, 7, 10, 15, 19, 20

In re Terrorist Attacks on September 11, 2001,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005)............................................................1, 5, 6, 7, 8,
                                                                       9, 11, 12, 13, 14,
                                                                       15, 17, 18, 23, 24,
                                                                       25

Tornheim v. Fed. Home Loan Mortg. Corp.,
  988 F. Supp. 279 (S.D.N.Y. 1997) ............................................................................... 15

Travelers Indem. Co. v. AMR Servs. Corp.,
   921 F. Supp. 176 (S.D.N.Y. 1996) ..................................................................24

Twombly v. Bell Atlantic Corp.,
   313 F. Supp. 2d 174 (S.D.N.Y. 2003).............................................................6, 15

United States Fire Ins. Co. v. United Limousine Serv.,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004)..............................................................20

United States v. Allen,
   155 F.3d 35 (2d Cir. 1998) ............................................................................19

United States v. Yousef,
   327 F.3d 56 (2d Cir. 2003) ............................................................................16

Wantanabe Realty Corp. v. City of New York,
   2003 WL 22862646 (S.D.N.Y. Dec. 10, 2003)...............................................12

York v. Bar of New York,
   286 F.3d 122 (2d  Cir. 2002) .........................................................................14


**Statutes And Other Authority**

18 U.S.C. § 32 (1996) ...........................................................................................21

18 U.S.C. § 1092 (1988).........................................................................................21

18 U.S.C. § 1962 (1988) ..............................................................................18, 19, 20

18 U.S.C. §§ 2331-2333 (2000)..............................................................................16

49 U.S.C. § 46502 (1996) ......................................................................................21

Fed. R. Civ. P. 8 ......................................................................................................5

Fed. R. Civ. P. 12(b)(6)..........................................................................................4, 5

8 N.Y. Jur., Conspiracy, § 19 (1982) ................................................................ 10, 11

The Charter of the International Military Tribunal,
   Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279...............................................21

Hague Convention for the Suppression of Violence against Aircraft;
   Montreal Convention on Offenses and Certain Other Acts Committed
   on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177 ..............21

The International Convention for the Suppression of Terrorist Bombings,
   Jan. 12, 1998, art. 2, S. Treat Doc. No. 106-6, at 4, 37 I.L.M. 249 ..................21

## INTRODUCTION

As the Chairman of the Board of Dar Al-Maal Al-Islami Trust ("DMI Trust")

publicly stated shortly after the September 11 attacks, DMI Trust sympathizes deeply with the losses

suffered by plaintiffs in this action, and joins the plaintiffs in condemning those who twist Islam into

a false justification for the commission of atrocities such as those of September 11.[1]  At the same

time, however, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have

leveled at these defendants," Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 103

(D.D.C. 2003) ("Burnett I"), and plaintiffs are required to make allegations of *fact* sufficient to

support such inflammatory claims.  See In re Terrorist Attacks on September 11, 2001, 349 F. Supp.

2d 765, 800-01, 813-14, 830-31 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") ("in light of the extreme

nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as

to any particular defendant").

Even with the benefit of an Amended Complaint and a RICO Statement, the *Cantor*

*Fitzgerald* plaintiffs have not made even a single such allegation with regard to DMI Trust.  The

Complaint and RICO Statement by the *Cantor Fitzgerald* plaintiffs make sweeping allegations of grave

wrongdoing by the named defendants, including movant DMI Trust.  Plaintiffs fail, however, to

proffer any allegations of fact that, if proven, would show any connection at all between DMI Trust

and al Qaeda, or that DMI Trust had any role whatsoever in the plot that culminated in the

September 11 terrorist attacks.  Instead, plaintiffs offer up dozens of conclusory allegations that, as

the Court's January 18 and September 21 Orders establish, are wholly insufficient to state their

claims.  Accordingly, in the absence of any averment connecting DMI Trust to Al Qaeda or to the

terrorist attacks of September 11, 2001, plaintiffs' claims must be dismissed in their entirety.

---

[1] See Memorandum of Law of Prince Mohamed al-Faisal al-Saud in Support of Motion to Dismiss the *Ashton* Complaint (Docket No. 41), Exh. A, filed March 19, 2004.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *Cantor Fitzgerald* First Amended Complaint and RICO Statement[2] contain only a handful of pertinent factual allegations regarding DMI Trust, which are restated below:

- "DMI Administrative Services S.A. [] provides service and support to defendant DMI Trust (collectively 'DMI')." First Amended Complaint ("FAC") ¶ 123.[3]

- DMI Trust "conducted or participated, directly or indirectly, in the affairs of the RICO enterprise defendant Al Qaeda . . . through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda's purposes through DMI [Trust]'s banking and financial operations." RICO Statement ("RICO Stmt.") ¶ 2; see also id. ¶¶ 5, 6, 8. DMI Trust "lent repeated material support to Al Qaeda and [Osama bin Laden], aided and abetted others who lent material support to Al Qaeda and [Osama bin Laden] and otherwise engaged in racketeering activity in violation of the law." FAC ¶ 135; see also id. ¶ 153.

- DMI Trust's "misconduct includes laundering money for Al Qaeda, knowingly and intentionally providing financial services to Al Qaeda (including maintaining and

---

[2]  Plaintiffs filed their RICO Statement on January 14, 2005 (MDL Docket No. 626), over four months after filing the Complaint. The untimely RICO Statement does not amend the Complaint. See Court's Instructions for Filing RICO Statement, *available at* http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf (requiring plaintiffs to file RICO statement within twenty days of filing the pleading asserting the RICO claim); Order, Aug. 23, 2005 (MDL Docket No. 1144); Spoto v. Herkimer County Trust, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO statement."); Gold v. Fields, 1993 WL 212672, at *5 & n.5 (S.D.N.Y. June 14, 1993) (RICO statement "only seeks information plaintiffs should already have in their possession before filing their complaint. . . ."). Nevertheless, for completeness' sake and for the Court's convenience, DMI Trust will also address the allegations in plaintiffs' RICO Statement.

[3]  Plaintiffs define the abbreviation "DMI" to denote both DMI Trust *and* its indirect subsidiary DMI Administrative Services S.A. ("DMI S.A."). See FAC ¶ 123. Plaintiffs then proceed to make various allegations about "DMI," without indicating which allegations are meant to apply to which company. However, DMI Trust and DMI S.A. are separate companies -- and separate defendants -- operating in different countries. Plaintiffs' allegations thus are unintelligible as written, and plaintiffs' claims may be dismissed on this ground alone. See Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong"). Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil between DMI S.A. and DMI Trust. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce veil must allege facts showing "complete domination" of subsidiary); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (listing factors in determination of "domination," such as disregard of corporate formalities, inadequate capitalization, and intermingling of funds); DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to warrant veil-piercing). Nevertheless, DMI Trust will proceed as if all of the allegations mentioning "DMI" are intended to denote DMI Trust.

servicing Al Qaeda bank accounts and accounts used to fund and support Al Qaeda), and/or facilitating weapons and military equipment purchases and money transfers for Al Qaeda." RICO Stmt. ¶ 2; see also id. ¶¶ 5, 8. "Also, DMI [Trust]'s *[z]akat* accounts have been used to support Al Qaeda." Id. ¶ 2; see also FAC ¶ 134.

- DMI Trust "has transferred money for Al Haramain, a purported charitable and relief organization. Both the United States and the Kingdom of Saudi Arabia have designated branches of Al Haramain for the financial, material and logistical support they provide to Al Qaeda." RICO Stmt. ¶ 2.

- DMI Trust and its subsidiaries have "knowingly and intentionally lent repeated material support to Al Qaeda" through interstate and international channels. See FAC ¶ 127; see also RICO Stmt. ¶ 5.

- Al Shamal's major shareholders include: DMI Trust's putative predecessor-in-interest, see FAC ¶ 123; Faisal Islamic Bank (Sudan) ("FIBS"), which is a subsidiary of an entity "which in turn is a wholly-owned subsidiary of defendant DMI [Trust]," see id. ¶ 125 & RICO Stmt. ¶ 2; and Tadamon Islamic Bank ("TIB"), which "is an indirect subsidiary of DMI [Trust]" through FIBS, see FAC ¶ 125 & RICO Stmt. ¶ 2. Al Shamal, FIBS and TIB provided financial and account services to either Osama bin Laden or Al Qaeda operatives. See FAC ¶¶ 128-29, 132-33; RICO Stmt. ¶ 2.

- DMI Trust's "knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, anti-democratic activity, including the September 11th attack that injured plaintiffs." RICO Stmt. ¶ 2.

As the above recitation makes clear, plaintiffs do not make *any* allegations of fact showing that DMI Trust made *zakat* donations to any charity with any knowledge that that charity was an al Qaeda 'front,' or provided anything other than routine banking services to anyone. See RICO Stmt. ¶ 2; FAC ¶ 134.[4] Indeed, plaintiffs offer no specific factual allegations showing that DMI Trust ever entered into any transaction with, raised any funds for, or transferred any money or property to anyone at all, much less any allegations of fact showing that DMI Trust ever "facilitated, materially supported and substantially assisted Al Qaeda[]" or any other terrorist organization. Cf. RICO Stmt. ¶ 2. Nor do plaintiffs allege *any facts* showing that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement by all defendants "resulting in the support and commission of international terrorism and terrorist activity." See FAC ¶ 232. Indeed, in their Complaint and RICO Statement, plaintiffs fail to allege any communication between DMI Trust and

---

[4] In fact, as plaintiffs allege in substance if not in form, DMI Trust is a holding company, see FAC ¶¶ 123-25, which holds interests in related companies and provides no banking or financial services to anyone.

anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust in any way conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite over a year of effort, as reflected in two successive Complaints and a RICO Statement, their claims should be dismissed with prejudice.

### I
### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

Plaintiffs have thoroughly failed to allege facts sufficient to state any of the eight causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs' injuries.  Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of conclusory allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., FAC ¶ 92 ("Al Qaeda and [Osama bin Laden] have long benefited from the support provided from various banks and financial institutions, including those named herein as defendants"); id. ¶ 235 ("The Defendants knowingly and intentionally lent substantial assistance to the Al Qaeda Defendants."); RICO Stmt. ¶ 2 ("DMI [Trust]'s misconduct

includes laundering money for Al Qaeda, knowingly and intentionally providing financial services to al Qaeda (including maintaining and servicing al Qaeda bank accounts and accounts used to fund and support al Qaeda), and/or facilitating weapons and military equipment purchases and money transfers for al Qaeda.").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) ("a hodgepodge of vague and conclusory allegations" are insufficient); Medina, 2004 WL 136636, at *6 (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual

Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[5]

Apart from conclusory, generalized allegations that categorically fail to state their claims, plaintiffs offer only innuendo, supported by the handful of factual allegations recited above - - allegations that, upon even cursory review, prove to be innocuous, and often self-contradictory. For example, while plaintiffs allege that DMI Trust's "*Zakat* accounts have been used to support Al Qaeda," see RICO Stmt. ¶ 2 and FAC ¶ 134, plaintiffs do not allege any facts showing when, where, or how DMI Trust supposedly provided such "support" to al Qaeda; any facts showing that DMI Trust provided donations to any charity with the knowledge that the charity was a terrorist 'front'; or any "facts to support an inference that [DMI Trust was] sufficiently close to the terrorists' illegal activities" to infer such knowledge.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 813-14 ("Conclusory allegations that [defendant] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice.").  Thus, "[p]laintiffs have not pleaded facts to suggest [that DMI Trust] knew [it was] making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800.[6]

---

[5]  Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that their generalized, conclusory allegations should be deemed sufficient to state their immense claims.  Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims.  Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *18, 25 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II"), citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

[6]  Unlike Hamas in Boim, none of the organizations that DMI Trust is alleged to have supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1002 (7th Cir. 2002) ("Boim II") (noting that Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including allegations that  "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants." See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, citing Boim v. Quranic Literacy Inst. & Holy Land

Similarly, as to provision of banking services, plaintiffs allege that the Sudanese entities FIBS, TIB and al Shamal have provided banking services to persons associated with Al Qaeda, see FAC ¶¶ 123-25 and RICO Stmt. ¶¶ 2, 5, and that DMI Trust "has transferred money for Al Haramain," see id. ¶ 2.  To be clear, the only financial service that DMI Trust itself is alleged to have provided to anyone is "transferr[ing] money for Al Haramain," again without any supporting factual allegations indicating when, where, why or how DMI Trust "transferred money for" that charity.  Plaintiffs assert that several putative *indirect subsidiaries* of DMI Trust maintained accounts for al Qaeda-related third parties in the Sudan.  See FAC ¶¶ 123-25 and RICO Stmt. ¶¶ 2, 5.

Plaintiffs have not made any specific allegations of fact showing that DMI Trust itself has ever engaged in any financial transactions of any sort, much less in any transactions having anything to do with terrorism, and have alleged no facts indicating that DMI Trust itself, or any of its putative subsidiaries, knowingly provided banking services to anyone connected with al Qaeda. Absent any such allegations of fact, plaintiffs' assertion that DMI Trust "transferred money for" al Haramain alleges nothing more than the provision of routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, 2005 WL 2296673, at *23 (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").[7]  Similarly, allegations

---

Found., 127 F. Supp. 2d 1002, 1006-1008 (N.D. Ill. 2001).  No such allegations are made here as to DMI Trust.

[7] Similarly, plaintiffs' conclusory and unsupported allegation that DMI Trust "launder[ed] money" for al Qaeda, see RICO Stmt. ¶ 5, does not substitute for allegations of facts sufficient to show that 1) DMI Trust conducted a financial transaction in interstate commerce; 2) DMI Trust knew that the property involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (holding conclusory allegations insufficient); Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000).

that putative subsidiaries of DMI Trust "facilitated, materially support and substantially assisted Al Qaeda's purposes," see RICO Stmt. ¶¶ 2, 5, also amount to nothing more than an allegation that those subsidiaries provided routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 (plaintiffs "do not include any facts to support the inference that Arab Bank knew or had to know it was providing material support to terrorists by providing financial services . . . or by processing wire transfers . . . .").[8]

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate allegations that categorically fail to state a claim.  Those allegations that are not utterly conclusory are either thoroughly irrelevant,[9] or allege nothing more than the provision of routine banking services and innocuous charitable donations that neither provided support to al Qaeda nor could have been expected to do so.  To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or

---

[8]  Moreover, even if these allegations did amount to anything other than the provision of routine banking services by those subsidiaries, plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust liable for any actions of its ostensible subsidiaries.  See supra n.3; Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).

[9]  Although the *Cantor Fitzgerald* plaintiffs voluntarily stipulated to a motion schedule with DMI Trust (Docket No. 1068), the plaintiffs – without prior notice to counsel for DMI Trust – filed a More Definite Statement ("MDS") (Docket No. 1313) as to DMI Trust *the day before* DMI Trust was scheduled to file the instant Motion.  However, the scant allegations in the two-page MDS, for the most part, simply rehash the conclusory allegations made in the RICO Statement.  The few allegations that are not conclusory fall far short of stating a claim:  For instance, plaintiffs' allegation that "DMI [Trust] has [] been linked to Al Taqwa Bank," see MDS ¶ 8, fails to allege any sort of action by DMI Trust at all, much less any sort of wrongful action; fails to allege facts showing how plaintiffs believe DMI Trust otherwise may be "linked" to al Taqwa Bank; and to the extent that it is intended to assert that DMI Trust provided some sort of banking services to or with al Taqwa Bank, fails to allege any such provision of services or that DMI Trust knowingly provided any banking services to suspect persons.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (there is "no basis for a bank's liability for injuries funded by money passing through it on routine banking business"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").

encouragement to the wrongdoer." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801. "Here, there are no such factual bases presented, there are only conclusions." Id.[10]

### A.     Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11. Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state their claims. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797-98, 805, 826, 830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the September 11 hijackers, they may proceed with" their claims.). Plaintiffs assert discrete causes of action for conspiracy and for aiding and abetting, see infra Part I.C.5, and also apparently assert that DMI Trust committed the other torts complained of by aiding and abetting al Qaeda's commission of such crimes. See, e.g., FAC ¶ 135 (DMI Trust has "aided and abetted others who lent material support to Al Qaeda"); id. ¶ 166 ("By providing financial and other material support and substantial assistance to the Al Qaeda Defendants, . . . the Banking and Financial Defendants . . . aided and abetted the commission of an intentional and unlawful trespass upon plaintiffs' real and personal property."); id. ¶ 235 ("The Defendants knowingly and intentionally lent substantial assistance to the Al Qaeda Defendants."). Thus, because plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks, all of their claims (other than their ATA and RICO claims) depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.[11]

---

[10]  A boundless discovery process may also be expected, if plaintiffs' claims are allowed to proceed in such a fashion. Such a discovery process, untethered to any specific allegations of relevant fact, would be unmanageable, for both the parties and the Court. See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

[11] Plaintiffs need not plead concerted action liability in support of their ATA and RICO claims, though allegations sufficient to state aiding and abetting in this case likely (but not necessarily) would also state a claim under the ATA, and allegations sufficient to state conspiracy likely would state a RICO claim. As set forth throughout, however, plaintiffs have alleged no facts sufficient either to state their ATA and RICO claims, on the one hand, see Part I.C.2, I.C.3, or to state conspiracy or aiding and abetting in support of their other tort claims.

Plaintiffs' discrete causes of action for conspiracy and aiding and abetting are not recognized as independent causes of action in New York, and therefore are due to be dismissed. See infra Part I.C.5.  Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[12]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, 2005 WL 2296673, at *25 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); and Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.").  The Complaint and RICO Statement, however, allege *no* communications or consultations of *any* kind by

---

[12]  Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

*any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy whose conduct "result[ed] in the support and commission of international terrorism and terrorist activity."  Compare FAC ¶ 232 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806 ("the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities").  Furthermore, plaintiffs allege neither any overt acts by DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind.  See, e.g., Hattley, 2003 WL 1700435, at *12; In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Similarly, plaintiffs have not properly alleged aiding and abetting.  To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.  See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[13]  Plaintiffs' bare allegations that DMI Trust donated *zakat* funds to unspecified persons at unspecified times and places, and "transferred money for" al Haramain, see RICO Stmt. ¶ 2 and FAC ¶ 134, show neither "substantial" assistance of al Qaeda's terrorist efforts nor knowing assistance.  See Liberman, 701 N.Y.S.2d at 420; Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y.

---

[13]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork").  And of course, plaintiffs' several conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust.  Compare FAC ¶ 235 ("Defendants knowingly and intentionally lent substantial assistance to the Al Qaeda Defendants.  At the time of such aiding and abetting, the Defendants knew or should have known that such substantial assistance furthered the planning and execution of unlawful, criminal and/or tortious activity, including the attacks of September 11, 2001.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

In sum, plaintiffs allege no direct participation by DMI Trust in the September 11 attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their non-ATA, non-RICO claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting, those claims must be dismissed in their entirety.

**B.      Plaintiffs Have Failed To Plead Facts Sufficient To Show That
Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

Plaintiffs tender nothing to support the proposition that any action by DMI Trust proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Furthermore, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As discussed above, and as the

Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations omitted). Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id.

Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries. Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action. See, e.g., FAC ¶ 167 (as to trespass claim, "[t]he conduct of the . . . the Banking and Financial Defendants . . . proximately resulted in the September 11th attacks"); id. ¶ 173 (as to ATA claim, "[t]he conduct of . . . the Banking and Financial Defendants proximately resulted in the September 11th attacks"); id. ¶¶ 191, 228, 233, 235, 238, 241. These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986); De Jesus, 87 F.3d at 70.

Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action by DMI Trust. For instance, even if third parties allegedly connected to al Qaeda held accounts at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, the Complaint alleges no facts to suggest that any such account was in any sense a cause of -- or was connected at all to -- the September 11 attacks. There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether it was ever used for any purpose, and if so what that purpose was. Certainly, there is no indication, either within the four corners of the pleadings or elsewhere, that those bank accounts

in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" the Chairman of the Board of DMI Trust).[14]  In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, *i.e.*, allegations of facts showing that the plaintiffs' injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful action.  Boim II, 291 F.3d at 1012.  The *Cantor Fitzgerald* plaintiffs' allegations that putative indirect subsidiaries of DMI Trust maintained routine bank accounts for individuals then not known to be terrorists, in the Sudan in the mid-1990s, thus falls far short of the allegations deemed *in*sufficient to establish proximate causation in Boim II.

          Plaintiffs have also entirely failed to allege facts sufficient to support any assertion that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A; infra Part I.C.5.  In sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of proximate cause as to any of the pending claims.

**C.      Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust.**

          Plaintiffs have also failed to properly plead any of their causes of action against DMI Trust because they have not alleged facts sufficient to make out the specific elements of their various claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks I, 349 F. Supp. 2d at

---

[14]  Moreover, plaintiffs have not even alleged any wrongful action by those Sudanese entities, because as this Court has already held, "[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835.  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See supra n.3.

832-36; <u>Twombly</u>, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims of conspiracy, even in light of Rule 8 [and <u>Swierkiewicz</u>], remains the law of this Circuit"); <u>Rose v. Goldman, Sachs & Co.</u>, 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de minimis*" pleading standards in discrimination cases, "a plaintiff is required to set forth specific factual allegations to establish a *prima facie* case"); <u>In re Livent, Inc. Noteholders Secs. Litig.</u>, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the factual pleadings . . . must be sufficient to state all the requisite elements of a given theory of liability"); <u>Sonds v. St. Barnabas Hosp. Corr. Health Svcs.</u>, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- showing that DMI Trust ever actually *did* anything wrongful that could give rise to plaintiffs' immense claims.  <u>See</u> <u>Smith</u>, 291 F.3d at 240; <u>De Jesus</u>, 87 F.3d at 70; <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 832-36.  Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed to plead facts sufficient to satisfy *any* of the elements of their causes of action, other than injury.  Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief."  <u>In re Sept. 11 Attacks II</u>, 2005 WL 2296673, at *18 (citations omitted).  The claims against DMI Trust therefore must be dismissed.

### 1.    <u>Trespass (Count 1).</u>

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  <u>Tornheim v. Fed. Home Loan Mortg. Corp.</u>, 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  <u>See</u> <u>In re Air Crash Disaster At Cove Neck, Long</u>

<u>Island, New York On January 25, 1990</u>, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[15]  Where, as here, plaintiffs assert that DMI Trust aided and abetted a trespass, <u>see</u> FAC ¶ 165, they must allege that DMI Trust "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  <u>Wantanabe</u>, 2003 WL 22862646, at *4 & n. 31-32.

Plaintiffs make only the generalized allegation, against most of the defendants in this action, that they "knowingly and intentionally lent financial and other material support and substantial assistance to the Al Qaeda Defendants[, which] . . . enabled the Al Qaeda Defendants to plan, orchestrate, and carry out the September 11 attacks."  FAC ¶ 165.  Plaintiffs have proffered no allegation that, if proved out, would show that DMI Trust gave "substantial assistance" to al Qaeda, had "actual knowledge" of the Attacks, or intended any trespass.  Plaintiffs have also failed to allege that DMI Trust committed any wrongful act that resulted in any trespass, and have again failed to plead proximate causation as to DMI Trust  <u>See</u> <u>supra</u> Part I.B.  Accordingly, plaintiffs' claims for trespass against DMI Trust should be dismissed.

### 2.    <u>Anti-Terrorism Act (Count 2).</u>

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff may bring a private cause of action for damages, where plaintiff (i) is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) as a proximate result of a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); <u>United States v. Yousef</u>, 327 F.3d 56, 116-18 (2d Cir. 2003); <u>Smith v. Islamic Emirate of Afghanistan</u>, 262 F. Supp. 2d 217, 220-22 & n.5 (S.D.N.Y. 2003). "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 828; <u>see</u> <u>also</u> <u>Boim II</u>, 291 F.3d at 1023 (defendants must be alleged to have acted knowingly); <u>Burnett I</u>, 274 F. Supp. 2d at

---

[15]  The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. <u>See</u> <u>Cooper v. Horn</u>, 448 S.E.2d 403, 423 (Va. 1994); <u>A.J. Cunningham Packing Corp. v. Congress Fin. Corp.</u>, 792 F.2d 330, 334 & n.4 (3d Cir. 1986).

106 (ATA claim requires knowledge and intent to further violent acts, and those violent acts must be reasonably foreseeable result of defendant's actions); <u>Smith</u>, 262 F. Supp. 2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts, and proximate cause.").[16]

Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact showing that DMI Trust engaged in any act of material support to al Qaeda, much less that DMI Trust did so knowingly or with a desire to see a terrorist plot succeed. As set forth above, plaintiffs allege nothing more than, at an unspecified time and in an unspecified place, DMI Trust made mundane *zakat* donations and provided routine banking services to al Haramain, without any indication that those donations or those banking services constituted "material support" of al Qaeda or that DMI Trust made any such donations or provided banking services with any knowledge of the recipient's tortious activities. <u>See In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 832-33, 835-36.

Indeed, the allegations against DMI Trust are at least as empty as those asserted -- and found *in*sufficient – as to Al Rajhi Bank. "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities." <u>See In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 831. Here, however, plaintiffs baldly claim that DMI Trust's "*Zakat* accounts have been used to support Al Qaeda," <u>see</u> RICO Stmt. ¶ 2, and that DMI Trust "has transferred money for" al Haramain, <u>see id.</u>, without any allegations indicating where, when, how or to whom DMI Trust donated *zakat* funds, nor any allegations showing where, when, or how DMI Trust "transferred money" for al Haramain, or any facts indicating that DMI Trust knew that any ostensible recipient of banking services or of donations was supporting terrorism. Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank. <u>See In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 831. In contrast, plaintiffs

---

[16] Additionally, because relief under the ATA is available only to United States nationals, all plaintiffs who are not United States nationals lack standing, and their ATA claims must be dismissed for that reason alone. <u>See, e.g.</u>, <u>Burnett I</u>, 274 F. Supp. 2d at 105.

claim only that DMI Trust's putative Sudanese subsidiaries maintained accounts for al Qaeda members in the Sudan in the mid-1990s, see RICO Stmt. ¶ 2, again without any allegation showing that DMI Trust or its putative subsidiaries knew that those accounts were held by suspect persons or provided anything other than routine banking services to those persons.

Clearly, as this Court held regarding Al Rajhi Bank, "[p]laintiffs do not allege that [DMI Trust] provided direct material support to al Qaeda," as is required to state an ATA claim: "Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11." See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33. And again, plaintiffs have wholly failed to plead proximate causation. See supra Part I.B. Plaintiffs therefore have wholly failed to state their ATA claim, and that claim must be dismissed.

### 3.    RICO – Against Banking and Financial Defendants (Count 4).

Plaintiffs also have failed to state their putative Section 1962(c) RICO claim against DMI Trust. To state a civil RICO claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation. The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826-27. Additionally, plaintiffs' Section 1962(c) RICO claim requires an allegation of fact showing that the defendant "participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing the enterprise's affairs." In re Sept. 11 Attacks II, 2005 WL 2296673, at *20 (citation omitted).[17] Where

---

[17] Plaintiffs have argued that this additional pleading requirement for a Section 1962(c) claim has been described as "a relatively low hurdle for plaintiffs to clear." Citing First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004), Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003); De Falco v.

plaintiffs cannot specifically allege these elements, there is no violation of the criminal RICO statute, and no civil liability can ensue.  See, e.g., Moss, 719 F.2d at 18-19.

        Once more, plaintiffs' sparse allegations regarding DMI Trust, even if proven, would establish *none* of the requisite elements of a civil RICO claim.  Neither the Complaint nor the RICO Statement alleges two or more predicate acts by DMI Trust, or any facts that could show an agreement to commit two or more predicate acts by DMI Trust.  Plaintiffs allege no facts showing that DMI Trust engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI Trust's assent to any alleged RICO conspiracy; no interest of, investment by, or participation by DMI Trust in the alleged al Qaeda 'enterprise'; no injury resulting from DMI Trust's (unalleged) investment of racketeering income; and no indication that DMI Trust was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  Compare FAC ¶¶ 123-35, 185-92 and RICO Stmt. with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements.  These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").

        Plaintiffs thus have utterly failed to state any of their RICO claims against DMI Trust, amply warranting dismissal of those claims.  See e.g., De Jesus, 87 F.3d at 70 (dismissing

---

Bernas, 244 F.3d 286, 309 (2d Cir. 2001); United States v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998).  Plaintiffs blatantly misrepresent the state of the law on point:  the Court in First Capital affirmed the dismissal of the RICO claims at issue, and none of the remaining three cases addressed pleading standards.  See Baisch, 346 F.3d at 376-77 (vacating summary judgment for defendants and remanding for further proceedings because plaintiff presented numerous specific facts, including defendant raising financing for the enterprise, obtaining bonds and insurance coverage, issuing false insurance certificates, concealing deceptive payroll practices and representing a co-defendant in meetings with plaintiff); De Falco, 244 F.3d at 309-13 (on appeal from jury verdict, finding ample evidence supporting RICO claims); Allen, 155 F.3d at 42-44 (vacating the granting of summary judgment for plaintiff because issues of fact existed as to existence of RICO enterprise).  In contrast, courts actually faced with the additional pleading requirements of Section 1962(c) have repeatedly stated that the operation-management test is "a very difficult test to satisfy."  Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164-65 (S.D.N.Y. 2003), citing LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996); see also Redtail Leasing, Inc. v. Bellezza, 2001 WL 863556, at *4 (S.D.N.Y. July 31, 2001); Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) ("Courts within the Second Circuit have dismissed RICO claims which failed to meet the[] stringent standards [of § 1962(c)].").

RICO claim based upon conclusory allegations); <u>In re Sept. 11 Attacks II</u>, 2005 WL 2296673, at *21-25 (dismissing RICO claims against defendants because there were no allegations that they directed an enterprise); <u>Dubai Islamic Bank</u>, 256 F. Supp. 2d at 164-65 (dismissing § 1962 (c) claim against bank because the "opening of accounts [and] transferring funds . . . do not constitute exerting control over the enterprise"); <u>Indus. Bank of Latvia v. Baltic Fin. Corp.</u>, 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim"); <u>United States Fire Ins. Co. v. United Limousine Serv.</u>, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts should strive to flush out frivolous RICO allegations at an early stage of the litigation").

### 4.   <u>Aiding and Abetting a Violation of International Law (Count 9).</u>

There is no basis in law or in fact for plaintiffs' nebulous claim for a violation of international law. Plaintiffs cannot assert a claim for airplane hijacking as a violation of customary international law because "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute." <u>Hayden v. Pataki</u>, 2004 WL 1335921, at * 7 (S.D.N.Y. June 14, 2004), <u>citing</u> <u>Kadic v. Karadzic</u>, 70 F.3d 232, 246 (2d Cir. 1995). There must be "great caution in adapting the law of nations to private rights." <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, --, 124 S. Ct. 2739, 2764 (2004) (declining to recognize a private cause of action for arbitrary arrest under the law of nations); <u>see also</u> <u>Friedman v. Bayer Corp.</u>, 1999 WL 33457825, at * 3 (E.D.N.Y. Dec. 15, 1999) ("customary international law prescribes norms of conduct among nations but does not create private rights of action for individuals . . . . Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").

Moreover, "Congress may . . . explicitly, or implicitly by treaties or statutes that occupy the field" preclude a private plaintiff from bringing a claim pursuant to a supposed international law. <u>Sosa</u>, 124 S. Ct. at 2765. Here, Congress has occupied the field of airplane hijacking by implementing norms against airplane hijacking and refusing to provide a private right to sue under either the conventions, the implementing statutes, or any other law. <u>See</u> 18 U.S.C. § 32 (destruction of aircraft); 49 U.S.C. § 46502 (aircraft piracy); Hague Convention for the Suppression

of Violence against Aircraft; Montreal Convention on Offenses and Certain Other Acts Committed

on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177.  Because Congress has refused

to create a private cause of action under these statutes, plaintiffs have no standing to assert their

amorphous claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 537 U.S. 275,

286-87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law

must be created by Congress."); Coleman v. Reno, 91 F. Supp. 2d 130, 131-32 (D.D.C. 2000)

(finding no private cause of action where prisoner transfer treaty and implementing statute did not

provide for one); Khalid v. Bush, 355 F. Supp. 2d 311, 325-26 (D.D.C. 2005) (finding no private

cause of action where Geneva Conventions and implementing statute did not provide for one).

       Plaintiffs' alternative theory, that certain treaties or international proclamations have

been violated, is inapposite because, again, no private cause of action lies.  "Treaties, as a general

rule, are not privately enforceable.  Indeed, enforcement in the final analysis is reserved to the

executive authority of the governments who are parties to the treaties."  Khalid, 355 F. Supp. 2d at

327.  A private cause of action will lie under a treaty only if (a) the treaty is self-executing and (b) the

treaty expressly provides for a private cause of action in its terms.  Dreyfus v. von Finck, 534 F.2d

24, 29-30 (2d Cir. 1976); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

442 (1989) (holding that even express provisions in a Convention requiring signatory nations to pay

compensation for violations creates no private cause of action to obtain such compensation).  None

of the accords cited by plaintiffs, see FAC ¶ 229, creates a private right of action.[18]

---

[18] For example, the Implementation Act of the Convention on the Prevention and Punishment of the Crime
of Genocide explicitly prohibits a private right of action.  See 18 U.S.C. § 1092 (the Implementation Act
should not be "construed as creating any substantive or procedural right enforceable by law by any party in
any proceeding").  Similarly, the Universal Declaration of Human Rights and the International Covenant on
Civil and Political Rights ("ICCPR") do not create a private cause of action.  Sosa, 124 S. Ct. at 2767 (the
"Declaration does not of its own force impose obligations as a matter of international law" and "the United
States ratified the [IICPR] on the express understanding that it was not self-executing and so did not itself
create obligations enforceable in the federal courts").  Similarly, the General Assembly Resolutions cited by
plaintiffs "do not have the power to bind member States because the member States specifically denied the
General Assembly that power."  See Flores v. S. Peru Copper Corp., 343 F.3d 140, 165 (2d Cir. 2003).  The
Charter of the International Military Tribunal, Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279, and The Allied
Control Council Law, No. 10 (Dec. 20, 1945) concern the creation of tribunals and establishing jurisdiction
over crimes committed during the course of World War II and neither creates a private cause of action.  Cf.
Seguros Comercial Am., Seguros Inbursa, S.A. v. Grupo Nacional Provincial, S.A., 115 F. Supp. 2d 1371
(M.D. Fla. 2000) (no private cause of action where treaty creates diplomatic procedures for recovery of

In addition, "[p]laintiffs here point to little that would lead this Court to conclude that aiding and abetting international law violations is itself an international law violation that is universally accepted as a legal obligation."  In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding that aiding-and-abetting a violation of international law is not actionable).  And again, even if a claim for aiding and abetting a violation of international law were tenable, plaintiffs have pled neither any facts showing that DMI Trust has "given substantial assistance" to al Qaeda, nor any facts showing that DMI Trust did so knowingly.  See supra Part I.B; infra Part I.C.5.

**5.      Conspiracy and Aiding and Abetting (Counts 10 & 11).**

Plaintiffs' putative causes of action for conspiracy[19] and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting is "no[t an] independent tort").[20]  For this reason alone, the plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

---

property).  The remaining four Conventions cited by plaintiffs are not self-executing treaties and none creates a private cause of action by its terms.  See, e.g., The International Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. Treat Doc. No. 106-6, at 4, 37 I.L.M. 249, 253, Articles 1-24 (obligating State Parties, inter alia, to take measures to implement the Convention's provisions).  Accordingly, there is no private liability under these agreements in United States courts.  See Flores, 343 F.3d at 163.

[19]  Plaintiffs' conspiracy claim, Count 10, is only asserted against the "Al Qaeda Defendants," not DMI Trust.  See FAC ¶¶ 231-33.  DMI Trust is nowhere mentioned as an "Al Qaeda Defendant," see id. ¶¶ 33-42, and only is mentioned during plaintiffs' averments regarding "Banking and Financial Defendants," see id. ¶¶ 122-35, 153.  Moreover, plaintiffs fail to assert any conspiracy allegations against DMI Trust.  However, out of utmost caution and because plaintiffs have implicitly and spontaneously asserted a conspiracy claim against DMI Trust through their RICO Statement ¶ 19, DMI Trust addresses plaintiffs' conspiracy allegations.

[20]  Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31, 2002); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).  Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting claim is recognized under Virginia law.  Cf. A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., 2002 WL 32136374, at *1.

Moreover, even if conspiracy and aiding and abetting were cognizable as discrete causes of action, plaintiffs have entirely failed to allege facts sufficient to state any such claim.  See supra Part I.A.  Plaintiffs' various conclusory allegations are categorically insufficient to make out any of the elements of conspiracy, and plaintiffs allege no facts showing that DMI Trust ever entered into any corrupt agreement or ever took any overt acts in furtherance of any conspiracy.  See id.  Similarly, plaintiffs have not properly alleged aiding and abetting, because they have not alleged any facts showing that DMI Trust "intentionally and substantially" assisted in the commission of al Qaeda's tortious acts.  See id.  Thus, plaintiffs have failed to allege conspiracy or aiding and abetting in support of any of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826 (defendant must know the wrongful nature of the primary actor's conduct to be liable on a concerted action theory), 832-33, 835-36 (dismissing claims against al Rajhi Bank and Arab Bank).

### 6.    Punitive Damages (Count 12).

Plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### 7.    Contribution and Indemnity (Count 13).

Co-plaintiff Port Authority of New York and New Jersey asserts a "contribution and indemnity" claim against all defendants.  "A claim for indemnification and contribution must be premised on the defendant's breach of a duty to the [primary] plaintiff -- whether grounded in express contract, implied contract, or tort."  St. Pierre v. Dyer, 208 F.3d 394, 401 (2d Cir. 2000); accord Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986) (in order to have a viable indemnity claim, there must be a breach of duty by the defendant to the primary plaintiff, i.e., "the proposed indemnitor has breached a duty to a third party, but the proposed indemnitee has paid the third party for the loss attributable to that breach"); Travelers Indem. Co. v. AMR Servs. Corp., 921 F. Supp. 176, 182 (S.D.N.Y. 1996) (same); Jordan v. Madison Leasing Co., 596 F. Supp. 707, 710 (S.D.N.Y. 1984) ("an action for contribution will not lie unless all the essential elements of a cause of action against the proposed contributor can be made out").

As stated throughout this Memorandum, plaintiffs do not properly allege any underlying tort by DMI Trust, or any duty that DMI Trust might have owed to anyone.  In fact, plaintiffs do not and cannot allege that DMI Trust owed any duty of care to the *primary* plaintiff -- "the individuals and organizations that have brought claims against the Port Authority," see FAC ¶ 241 -- let alone to the Port Authority, with whom DMI Trust has never had any relations whatsoever.  Moreover, even if some duty could be alleged, plaintiffs do not allege a breach of any such duty of care by DMI Trust because they allege no wrongful act or omission by DMI Trust.  Finally, once more, plaintiffs have not properly alleged that any action by DMI Trust proximately caused their injuries.  See supra Part I.B.

**II**

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs have filed two successive Complaints and a RICO Statement over the course of the last year.  "Even with the opportunity to clarify their claims," plaintiffs' failure to state any of their claims against DMI Trust is as complete, and as conclusive, as one could imagine.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim"). There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice.  See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835

(dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

## **CONCLUSION**

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 796. Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust. They have not done so. For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
        September 30, 2005

                              Respectfully submitted,
                              SHEPPARD MULLIN RICHTER & HAMPTON LLP

                              By:_____/s/_____
                                  James J. McGuire (JM-5390)

                                  30 Rockefeller Plaza, 24th Floor
                                  New York, New York 10112
                                  (212) 332-3800

                                  *Attorneys for Defendant*
                                      *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel