**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)**<br><br>**ECF Case** |

**This document relates to:**     **Kathleen Ashton, et al. v. Al Qaeda**
**Islamic Army, et al. (02 CV 6977)**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *Dar Al-Maal Al-Islami Trust*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST ..................................................2

ARGUMENT .........................................................................................................................3

I      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST ......................4

      A.     Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into
            Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. .............................8

      B.     Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions
            By DMI Trust Proximately Caused Plaintiffs' Injuries. ...................................12

      C.     Plaintiffs Have Failed To Plead Facts Sufficient To  State Any Of Their
            Causes of Action Against DMI Trust. .......................................................14

            1.    Wrongful Death & Survival (Counts 1 & 2). .....................................15

            2.    Assault & Battery  (Count 3). ...............................................16

            3.    Anti-Terrorism Act (Count 4). ..............................................16

            4.    Torture Victims Protection Act (Count 5). ...................................18

            5.    Punitive Damages (Count 7). ...............................................19

            6.    Property Damages (Count 8). ...............................................19

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................20

CONCLUSION .....................................................................................................................21

## TABLE OF AUTHORITIES

<u>**Cases**</u>

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.,
  2005 WL 1649045 (S.D.N.Y. July 13, 2005) ........................................................................19

Acito v. Imcera Grp., Inc.,
  47 F.3d 47 (2d Cir. 1995) ....................................................................................................20

Alexander & Alexander of New York, Inc. v. Fritzen,
  68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986)........................................................................10

In re Am. Express Co. S'holder Litig.,
  39 F.3d 395 (2d Cir. 1994) ..................................................................................................13

American Fuel Corp. v. Utah Energy Dev. Co.,
  122 F.3d 130 (2d Cir. 1997) ...................................................................................................7

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
  2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004)...........................................................................2

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
  459 U.S. 519, 103 S. Ct. 897 (1983) ....................................................................................10

Barr v. Abrams,
  810 F.2d 358 (2d Cir. 1987) ...................................................................................................5

Benas v. Baca,
  2001 WL 485168 (C.D. Cal. Apr. 23, 2001) ........................................................................19

Burnett v. Al Baraka Inv. and Dev. Corp.,
  274 F. Supp. 2d 86 (D.D.C. 2003)...................................................................................1, 17

Chudasama v. Mazda Motor Corp.,
  123 F.3d 1353 (11th Cir. 1998) ..............................................................................................8

Cucinotti v. Ortmann,
  159 A.2d 216 (Pa. 1960) ......................................................................................................16

De Jesus v. Sears, Roebuck & Co.,
  87 F.3d 65 (2d Cir. 1996) ........................................................................................7, 13, 15

Electronic Commc'ns Corp. v. Toshiba Am.,
  129 F.3d 240 (2d Cir. 1997) .................................................................................................20

Flanagan v. Shively,
  783 F. Supp. 922 (M.D. Penn. 1992).....................................................................................10

Ford v. New Britain Trans. Co.,
  2004 WL 3078827 (D.Conn. Dec. 21, 2004) ........................................................................20

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .................................................................5

Girden v. Sandals Int'l,
    262 F.3d 195 (2nd Cir. 2001) .....................................................................................16

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ..............................................................5

Guadagnoli v. Seaview Radiology, P.C.,
    184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ..............................................15

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003) .............................................................10

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ...........................................................................................9

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ...............................................................11

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) .........................................................................................5

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ...........................................................................11

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) .......................................................................................12

Levenson v. Souser,
    557 A.2d 1081 (Pa. Super. 1989) ...............................................................................16

Liberman v. Worden,
    701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000) ..................................................11

Lichtenstein v. State,
    712 N.E.2d 1218 (N.Y. Ct. App. 1999) .......................................................................16

In re Livent, Inc. Noteholders Secs. Litig.,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) .........................................................................14

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) ...........................................................................................7

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) .........................................................................................14

Medina v. Bauer,
    2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ..................................................................2

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
    506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dep't 1986) ..................................................15

Miele v. United States,
    800 F.2d 50 (2d Cir. 1986) ...................................................................................................16

In re NASDAQ Market-Makers Antitrust Litig.,
    894 F. Supp. 703 (S.D.N.Y. 1995) .......................................................................................10

Oneida Indian Nation of New York v. City of Sherrill,
    337 F.3d 138 (2d Cir. 2003) .................................................................................................20

Papasan v. Allain,
    478 U.S. 265 (1986) .............................................................................................................13

Park v. Shiflett,
    250 F.3d 843 (4th Cir. 2001) ...............................................................................................16

People v. Keech,
    467 N.Y.S.2d 786, 121 Misc. 2d 368 (Sup. Ct. 1983) .........................................................19

People v. Summer,
    407 N.Y.S.2d 53, 64 A.D.2d 658 (App. Div. 1978) ............................................................19

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) .................................................................................................12

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972) ...................................................................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
    1998 WL 355422 (S.D.N.Y. Jul. 2, 1998) .............................................................................7

Rose v. Goldman, Sachs & Co.,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001) ..................................................................................14

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
    2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) ...............................................................11

Skipworth v. Lead Indus. Ass'n, Inc.,
    690 A.2d 169 (Pa. 1997) .........................................................................................................9

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ................................................19

Smith v. Islamic Emirate of Afghanistan,
    262 F. Supp. 2d 217 (S.D.N.Y. 2003) ............................................................................ 16, 17

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ............................................................... 5, 11, 12, 14, 15, 17

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001) ..................................................................................14

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2002) ..............................................................................................5

Stewart v. Crosswalks Television Network,
   2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ........................................................................ 10

Suarez v. Underwood,
   103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ................................... 9

Swierkiewicz v. Sorema N.A.,
   534 U.S. 506 (2002) ......................................................................................................... 5, 14

In re Terrorist Attacks on Sept. 11, 2001,
   2005 WL 2296673 (S.D.N.Y. Sept., 21 2005) ........................................... 4, 5, 6, 10, 11, 15

In re Terrorist Attacks on September 11, 2001,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005).............................................................. 1, 4, 6, 7, 8,
   .......................................................................................................... 12, 13, 14, 15, 16,
   .......................................................................................................... 17, 18, 19, 20

Twombly v. Bell Atlantic Corp.,
   313 F. Supp. 2d 174 (S.D.N.Y. 2003)............................................................................. 5, 14

United States v. Yousef,
   327 F.3d 56 (2d Cir. 2003) .............................................................................................. 16

Wantanabe Realty Corp. v. City of New York,
   2003 WL 22862646 (S.D.N.Y. Dec. 10, 2003)................................................................. 11

Wiwa v. Royal Dutch Petroleum Co.,
   2002 WL. 319887 (S.D.N.Y. Feb. 28, 2002) .................................................................... 19

York v. Bar of New York,
   286 F.3d 122 (2d Cir. 2002) ............................................................................................ 14

## Statutes And Other Authority

18 U.S.C. §§ 2331-2333 (2000)........................................................................................ 16

Fed. R. Civ. P. 8 .................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 3, 4

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002)......................................................................... 15

Restatement (Second) or Torts § 876 ................................................................................ 11

8 N.Y. Jur., Conspiracy, § 19 (1982) ..............................................................................9, 10

## INTRODUCTION

As the Chairman of the Board of defendant Dar Al-Maal Al-Islami Trust ("DMI Trust") publicly stated shortly after the September 11 attacks, DMI Trust sympathizes deeply with the losses suffered by plaintiffs in this action, and joins the plaintiffs in condemning those who twist Islam into a false justification for the commission of atrocities such as those of September 11.[1]  At the same time, however, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants," Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("Burnett I"), and plaintiffs are required to make allegations of *fact* sufficient to support such inflammatory claims.  See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 800-01, 813-14, 830-31 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") ("in light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant").

Even with the benefit of a 315-page Complaint, and five successive amendments of that Complaint, the *Ashton* plaintiffs have not made even a single such allegation with regard to DMI Trust.  The Complaint by the *Ashton* plaintiffs propounds sweeping allegations of terrible wrongdoing by the named defendants, including movant DMI Trust.  Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection at all between DMI Trust and al Qaeda, or that DMI Trust had any role whatsoever in the plot that culminated in the September 11 terrorist attacks.  In lieu of factual allegations, plaintiffs offer only conclusory, boilerplate assertions that, as the Court's January 18 and September 21 Orders make clear, are categorically insufficient to state their claims.  Accordingly, in the absence of any averment connecting DMI Trust to Al Qaeda or to the terrorist attacks of September 11, 2001, plaintiffs' claims must be dismissed in their entirety.

---

[1] See Memorandum of Law of Prince Mohamed al-Faisal al-Saud in Support of Motion to Dismiss the *Ashton* Complaint (Docket No. 41), Exh. A, filed March 19, 2004.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *Ashton* plaintiffs' Fifth Amended Complaint ("FAC") contains only the sparsest of allegations regarding DMI Trust,[2] which are restated below in their entirety:

- "DMI [Trust] operates broadly in Islamic countries, and investments are conducted strictly under Islamic rules.  DMI [Trust]'s actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and al Qaeda.  The $3.5 billion DMI Trust, whose slogan is 'Allah is the purveyor of success' was founded 20 years ago to foster the spread of Islamic banking across the Muslim world.  Its 12-member board of directors includes Haydar Mohamed bin Laden, a half-brother of Osama Bin Laden."  FAC ¶ 580.

- "DMI [Trust] has involved itself in al Qaeda financing through several of its subsidiaries, including but not limited to, Islamic Investment Bank of the Gulf, Faisal Islamic Bank, Tadamon Islamic Bank, and al Shamal Islamic Bank in the Sudan."  Id. ¶ 581.

- "DMI [Trust] owns 100% of Islamic Investment Bank of the Gulf[, which] . . . is the main shareholder of Faisal Islamic Bank of Sudan."  Id. ¶ 582.

- "Faisal Islamic Bank – Sudan ('FIBS') was [] implicated as an al Qaeda sponsor during the 2001 United States trial on the 1998 embassy bombings in Africa as managing bank accounts for al Qaeda operatives."  Id. ¶ 66; see also id. ¶ 269.

- Al Shamal Islamic Bank ("al Shamal") had five main founders, including Faisal Islamic Bank of Sudan.  Id. ¶¶ 53-54, 274.  "[Osama] Bin Laden used al Shamal Bank for the funding of his al Qaeda network leading up to the 1998 United States Embassy bombings in Africa."  Id. ¶ 275.  In the early 1990s, Osama bin Laden helped capitalize al Shamal and he maintained accounts there.  Id. ¶¶ 49, 51.  "[A]t least six al Qaeda operatives held bank accounts in al Shamal Islamic Bank under their real names."  Id. ¶ 63.  "Al Qaeda operatives received monthly checks of several hundred dollars from al

---

[2] In fact, there are *no* substantive allegations asserted specifically against DMI Trust.  Rather, plaintiffs assert a handful of conclusory allegations against an entity they call "DMI," which plaintiffs have defined to refer solely to DMI Trust's indirect subsidiary DMI Administrative Services S.A. ("DMI S.A.").  See FAC ¶ 580 ("'DMI' . . . is the registered name for DMI Administrative Services S.A.").  DMI Trust and DMI S.A. are separate companies -- and separate defendants -- operating different businesses in different countries.  Thus, to the extent that plaintiffs' allegations are in fact intended to apply solely to DMI S.A., there are no allegations at all regarding DMI Trust, and plaintiffs' claims against DMI Trust must be dismissed in their entirety.  To the extent that plaintiffs intend their allegations against "DMI" to apply to both DMI Trust and DMI S.A., the allegations against "DMI" are unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone.  See, e.g., Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate.  The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong").  Nevertheless, for completeness' sake and for the convenience of the Court, DMI Trust will proceed as if all of the allegations mentioning "DMI" were intended to denote DMI Trust.

Shamal Islamic Bank accounts and transferred $100,000.00 from al Shamal Islamic Bank to an al Qaeda representative in Jordan."  Id. ¶ 64.

- The "main shareholder of Tadamon Islamic Bank as of 1995" was Faisal Islamic Bank Sudan.  Id. ¶ 69.

As the above recitation makes clear, plaintiffs do not make *any* allegations of fact showing that DMI Trust ever entered into any transaction with, raised any funds for, or transferred any money or property to anyone at all, much less any allegations of fact that could support plaintiffs' conclusory assertion that DMI Trust, along with hundreds of other defendants, "rais[ed], launder[ed], transfer[red], distribut[ed], or hid[] funds for" Osama bin Laden and al Qaeda "in order to support and finance their terrorist activities."  See FAC ¶ 23.  Nor do plaintiffs allege *any* facts showing that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement "to attack the United States and murder United States citizens."  See id. ¶ 24.  Indeed, in their Complaint, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

### ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust in any way conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite three years of effort, as reflected in no less than six successive Complaints, their claims should be dismissed with prejudice.

I

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

The *Ashton* plaintiffs have thoroughly failed to allege facts sufficient to state *any* of their seven causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs' injuries.  Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of conclusory allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., FAC ¶ 23 (the "defendants," including "banks . . . located in Saudi Arabia and other parts of the world" -- presumably including DMI Trust -- have "conspired with Bin Laden, al Qaeda, and the Taliban to raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks."); id. ¶ 24 ("The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving defendants who have conspired for many years to attack the United States and who ultimately conspired, aided and abetted, sponsored, planned and executed the September 11th terrorist attacks that killed thousands of people and injured many thousands more and destroyed numerous properties and businesses.").[3] "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("'[C]onclusory

---

[3] Such conclusory allegations of vicarious liability without allegations of fact in support "do[] not adequately provide [DMI Trust] with notice as to how [it] provided material support to al Qaeda terrorists" and requires dismissal of the claims against it.  See In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *27 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II").

allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Medina, 2004 WL 136636, at *6 (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) (quoting Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001)):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.' *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning"); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[4]

---

[4] For instance, the thoroughly conclusory allegation that all defendant "banks . . . located in Saudi Arabia and other parts of the world," presumably including DMI Trust, have "conspired with Bin Laden, al Qaeda, and the Taliban to raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks," does not in any way specify what banking services DMI Trust is alleged to have provided, or to whom; plaintiffs'

The only allegation that plaintiffs offer in support of such sweeping, conclusory accusations is an allegation that third parties associated with Al Qaeda held accounts at the Sudanese banks Faisal Islamic Bank - Sudan ("FIBS") and al Shamal Islamic Bank ("al Shamal"), at some time in the mid-1990s.  See FAC ¶¶ 63, 64, 66.  The plaintiffs make no allegations showing that DMI Trust was even aware of the existence of such accounts, much less that DMI Trust in any way knowingly caused those putative Sudanese subsidiaries to maintain accounts for persons associated with al Qaeda.  Accordingly, plaintiffs do not state any claim against DMI Trust.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (dismissing claims against Al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, 2005 WL 2296673, at *23 (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").[5]

---

conclusory allegations do not specify whether DMI Trust is alleged to have loaned money to al Qaeda, written letters of credit for al Qaeda, maintained checking accounts for al Qaeda, provided investment advice to al Qaeda, or sent Osama bin Laden a free toaster.  See FAC ¶ 23; see also, e.g., id. ¶ 24.  Certainly, these allegations include nothing that could be read to indicate that DMI Trust ever provided anything other than routine banking services to anyone, much less that DMI Trust knowingly provided banking services of any sort to terrorists.  Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI Trust with any meaningful notice of the supposed basis of the claims against it.  See, e.g., Kittay, 230 F.3d at 541.  Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that their generalized, conclusory allegations should be deemed sufficient to state their immense claims.  Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims.  Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks II, 2005 WL 2296673, at *18, 25, citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

[5] Indeed, because banks are not "liable for injuries done with money that passes through [their] hands in the form of deposits, withdrawals . . . or other routine banking services," plaintiffs also have failed to allege any wrongdoing by these Sudanese entities.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 830, citing Burnett I, 274 F. Supp. 2d at 109.

   The *Ashton* plaintiffs also allege that FIBS is a subsidiary of DMI Trust and that "[FIBS] was one of the five main founders of Al Shamal Islamic Bank."  See FAC ¶ 65.  However, this Court has already held that "the allegation that [a defendant] was one of three founders of Al Shamal Islamic Bank in 1983, without additional allegations, does not state a claim for relief."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 836.  The assertion

Moreover, even if plaintiffs had alleged facts showing that the Sudanese entities in question had knowingly maintained such accounts, and even if plaintiffs had alleged any facts that could show that DMI Trust was aware of such accounts, there is no indication that maintenance of those accounts was in any way a cause of, or for that matter, in any way contributed to, the September 11 plot.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" Chairman of the Board of DMI Trust). Finally, the plaintiffs have wholly failed to plead facts sufficient to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, at *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).[6]

As the above recitation of plaintiffs' allegations makes clear, plaintiffs have proffered no specific allegation that DMI Trust itself ever engaged in any sort of conduct at all, much less any sort of wrongful conduct.  Plaintiffs have not made any allegations of fact showing that DMI Trust itself has ever provided banking services to anyone at all, much less that DMI Trust knowingly provided anything other than routine banking services to terrorists.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 ("[p]roviding routine banking services, without having knowledge of the terrorist activities, cannot subject [a defendant bank] to liability.").[7]  Plaintiffs allege no facts showing that DMI Trust had any knowledge of the alleged suspect accounts in the Sudan in the mid-1990s, much less that DMI Trust intended those accounts to support al Qaeda; no facts showing that DMI Trust

---

that one of DMI Trust's purported subsidiaries was one of the supposed founders of al Shamal even more clearly fails to support any claim against DMI Trust.

[6]  See also American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (listing factors in determination of "complete domination," such as, inter alia, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil).

[7]  In fact, as the plaintiffs themselves allege in substance if not in form, see FAC ¶¶ 580-82, DMI Trust is a holding company that holds interests in related companies and provides no banking services to anyone at all.

entered into a conspiracy with al Qaeda or aided and abetted any of al Qaeda's terrorist activities;
and no facts indicating that any action by DMI Trust in any way caused plaintiffs' injuries.

   In sum, plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate
allegations that categorically fail to state a claim. Those allegations that are not utterly conclusory are
thoroughly irrelevant,[8] or allege nothing more than the provision of routine banking services by
subsidiaries of DMI Trust. To state their inflammatory claims against DMI Trust, plaintiffs are
required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving
organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an
inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."
In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801. "Here, there are no such factual bases presented,
there are only conclusions." Id.[9]

### A.  Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.

   As the above summary shows, plaintiffs of course do not allege that any personnel of
DMI Trust directly participated in attacking the United States and injuring plaintiffs on September
11. Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and
abetting -- to state their claims. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797-98, 805, 826,
830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the
September 11 hijackers, they may proceed with" their claims.). Accordingly, plaintiffs allege that
DMI Trust committed the seven torts complained of by conspiring with al Qaeda and by aiding and
abetting al Qaeda's commission of such crimes. See, e.g., FAC ¶ 23 (the "defendants," including
"banks . . . located in Saudia Arabia and other parts of the world" presumably including DMI Trust,

---

[8] For instance, the anomalously truthful allegation that DMI Trust's 'slogan' is "Allah is the purveyor of success," and the (also truthful) allegation that DMI Trust seeks to foster the growth and development of Islamic finance, see FAC ¶ 580, have no apparent purpose other than to invoke suspicion of DMI Trust simply because it operates according to Islamic principles of commerce and finance.

[9] A boundless discovery process may also be expected, if plaintiffs' claims are allowed to proceed in such a fashion. Such a discovery process, untethered to any specific allegations of relevant fact, would be unmanageable, for both the parties and the Court. See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

have "conspired with Bin Laden, al Qaeda, and the Taliban to raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks."); id. ¶ 24 ("The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving defendants who have conspired for many years to attack the United States and who ultimately conspired, aided and abetted, sponsored, planned and executed the September 11th terrorist attacks that killed thousands of people and injured many thousands more and destroyed numerous properties and businesses."). Thus, because plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks, all of their claims, other than their ATA claim, depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.[10]

However, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any of their causes of action. To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[11] See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy. To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly

---

[10] Plaintiffs need not separately allege aiding and abetting in support of their ATA claim, although facts sufficient to state a claim under the ATA would likely state aiding and abetting, and vice-versa. As is set forth above and infra Part I.C.3, however, plaintiffs have alleged no facts sufficient to state either to state their ATA claim or to state aiding and abetting in connection with their non-ATA claims.

[11] Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy. See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, 2005 WL 2296673, at *25 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.") and Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-04 (N.Y. 1986) (dismissing conspiracy claim because of insufficient allegation that defendant intended to injure plaintiff).  The Complaint, however, alleges *no* communications or consultations of *any* kind by *any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy to "sponsor[], plan[] and execute[] the September 11th terrorist attacks that killed thousands of people and injured many thousands more and destroyed numerous properties and businesses."  See FAC ¶ 24.  Furthermore, plaintiffs allege neither any overt acts by DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind.  See, e.g., Hattley, 2003 WL 1700435, at *12; In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Similarly, plaintiffs have not properly alleged aiding and abetting. To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act. See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[12]  Plaintiffs' conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust. Compare FAC ¶ 23 (the individual, organization, bank and charity defendants, including presumptively DMI Trust, have "conspired with Bin Laden, al Qaeda, and the Taliban to raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks.") with See Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y. Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork"); and Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

---

[12]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law. See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002). The Court held in its most recent Order that "[i]f Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival . . . and the Ashton . . . Plaintiffs will have stated claims for intentional infliction of emotional distress." See In re Sept. 11 Attacks II, 2005 WL 2296673, at *20. Defendant respectfully submits that "material support" as defined by the ATA need not equate to "substantial assistance" for purposes of pleading aiding and abetting. The ATA apparently imposes liability for the provision for any of the defined sorts of "material support," even if that support is minimal, see Boim II, 291 F.3d at 1000, aiding and abetting, however, requires a showing that the assistance provided to the primary tortfeasor was "substantial," i.e., that the assistance provided was of a significant magnitude or that the alleged aider and abettor was present when the tort occurred or knew it would occur. See Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y. Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork"), citing Restatement (Second) or Torts § 876 (b) cmt d. Because the Ashton plaintiffs allege no facts showing that DMI Trust provided any support or assistance to anyone at all, however, this distinction is not necessary to the instant motion. Defendant also notes that the ATA by its terms requires a showing of proximate causation, and that the Ashton plaintiffs have alleged no facts that could support a finding of proximate causation as to DMI Trust. See infra Part I.B.

In sum, plaintiffs allege no direct participation by DMI Trust in the September 11 attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their non-ATA claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting, plaintiffs' non-ATA claims must be dismissed in their entirety.

**B.**     **Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

Plaintiffs tender nothing to support the proposition that any action by DMI Trust proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Furthermore, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As discussed above, and as the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations omitted).  Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries.  Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action.  See, e.g., FAC

¶ 613 (as to wrongful death claim, "[a]s a direct and proximate result of defendants' intentional, willful and malicious acts of terrorism on September 11, 2001, defendants have cause plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses…"); id. ¶ 610 on p. 308 (as to ATA claim, "[d]efendants' provision of material support and assistance to Bin Laden and Al Qaeda in Afghanistan, Iraq and other places . . . caused substantial injuries to the persons, property, and businesses of plaintiffs and plaintiffs' decedents."). These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986); De Jesus, 87 F.3d at 70.

          Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action by DMI Trust. For instance, even if third parties allegedly connected to al Qaeda held accounts at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, see FAC ¶ 66, the Complaint alleges no facts to suggest that those accounts were in any sense a cause of -- or were connected at all to -- the September 11 attacks. There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether it was ever used for any purpose, and if so what that purpose was. Certainly, there is no indication, either within the four corners of the pleadings or elsewhere, that those bank accounts in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" the Chairman of the Board of DMI Trust). In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was insufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, i.e., allegations of facts showing that the plaintiffs' injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful

action.  Boim II, 291 F.3d at 1012.  The plaintiffs' allegation that putative indirect subsidiaries of

DMI Trust maintained routine bank accounts for individuals then not known to be terrorists, in the

Sudan in the mid-1990s, thus falls far short of the allegations deemed *in*sufficient to establish

proximate causation in Boim II.

Plaintiffs have also entirely failed to allege facts sufficient to support any assertion

that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A.  In

sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of

proximate cause as to any of the pending claims.

### C.     Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust.

Plaintiffs have also failed to properly plead any of their causes of action against DMI

Trust because they have not alleged facts sufficient to make out the specific elements of their

various claims.  Even in notice pleading, neither inferences unsupported by specific factual

allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v.

Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d

Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to

be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks I, 349 F. Supp. 2d at

832-36; Twombly, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims

of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit"); Rose v.

Goldman, Sachs & Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de*

*minimis*" pleading standards in discrimination cases, "a plaintiff is required to set forth specific

factual allegations to establish a *prima facie* case"); In re Livent, Inc. Noteholders Secs. Litig., 151 F.

Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the

factual pleadings . . . must be sufficient to state all the requisite elements of a given theory of

liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001)

("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the

elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegations of fact -- *any* allegations of fact -- showing that DMI Trust ever actually *did* anything wrongful that could give rise to plaintiffs' immense claims. See Smith, 291 F.3d at 240; De Jesus, 87 F.3d at 70; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-36. Apart from legal boilerplate posing as factual allegations, plaintiffs have entirely failed to plead facts sufficient to satisfy *any* of the elements of their various causes of action, other than injury. Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief." In re Sept. 11 Attacks II, 2005 WL 2296673, at *18 (citations omitted). The claims against DMI Trust therefore must be dismissed.

### 1.   Wrongful Death & Survival (Counts 1 & 2).

For plaintiffs to maintain a wrongful death claim under New York law, they must allege, through a properly appointed personal representative, that the defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death. See N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002). A survival claim requires the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death. See N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2002); see also Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dep't 1986) ("both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent"). Here, again, plaintiffs have failed to allege any underlying tort by DMI Trust, and plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or survival. Compare TAC ¶¶ 612-16, 602-04 at pp.305-07 with Guadagnoli v. Seaview Radiology, P.C., 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegations); see also De Jesus, 87 F.3d at 70. Finally, plaintiffs have not properly alleged that any actions by

DMI Trust proximately caused the deaths of the victims of the September 11 attacks.  See supra
Part I.B.[13]

>     2.      **Assault & Battery  (Count 3).**

"Under New York law, 'an assault is an intentional placing of another person in fear
of imminent harmful or offensive contact.  A battery is an intentional wrongful physical contact with
another person without consent.'"  Girden v. Sandals Int'l, 262 F.3d 195, 204 (2nd Cir. 2001)
(internal citation omitted).  "The gravamen of an action for assault and battery under New York law
is the intent to make contact."  Miele v. United States, 800 F.2d 50, 53 (2d Cir. 1986).[14]  Plaintiffs
have alleged no facts that, if proven, could show even that DMI Trust committed any wrongful act
that resulted in any assault or battery, much less that DMI Trust intended to effect any assault or
battery.  Plaintiffs have not alleged facts sufficient to show that DMI Trust effected any assault or
battery by conspiracy or by aiding and abetting al Qaeda, see supra Part I.A, and again, plaintiffs
have failed to plead proximate causation as to DMI Trust.  See supra Part I.B.  Accordingly,
plaintiffs' claims for assault and battery against DMI Trust should be dismissed.

>     3.      **Anti-Terrorism Act (Count 4).**

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff
may bring a private cause of action for damages, where plaintiff (i) is a national of the U.S. who (ii)
was injured in his or her person, property, or business, (iii) as a proximate result of a defendant's
"material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v.
Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F. Supp.
2d 217, 220-22 & n.5 (S.D.N.Y. 2003). "To adequately plead the provision of material support under

---

[13]  In addition, plaintiffs have not alleged which individual plaintiffs are properly appointed personal
representatives of a decedent.  See FAC ¶ 1.  The wrongful death and survival claims of all non-personal
representative plaintiffs are due to be dismissed.  See, e.g., Lichtenstein v. State, 712 N.E.2d 1218, 1219 (N.Y.
Ct. App. 1999); see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 829.  The wrongful death and survival
statutes of Pennsylvania and Virginia do not differ substantially from that of New York.

[14]  The laws of Virginia and Pennsylvania do not materially differ.  See Girden v. Sandals Int'l, 262 F.3d 195,
203 (2d Cir. 2001); Park v. Shiflett, 250 F.3d 843, 852 (4th Cir. 2001); Cucinotti v. Ortmann, 159 A.2d 216,
217 (Pa. 1960) (assault); Levenson v. Souser, 557 A.2d 1081, 1088 (Pa. Super. 1989) (battery).  The laws of
New York, Virginia, and Pennsylvania all require the defendant's intent to commit the tort.  See Girden, 262
F.3d at 203; Park, 250 F.3d at 852; Cucinotti, A.2d at 217; Levenson, 557 A.2d at 1088.

this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828; see also Boim II, 291 F.3d at 1023 (defendants must be alleged to have acted knowingly); Burnett I, 274 F. Supp. 2d at 106 (ATA claim requires knowledge and intent to further violent acts, and those violent acts must be reasonably foreseeable result of defendant's actions); Smith, 262 F. Supp. 2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts, and proximate cause.").[15]

Other than their aforementioned conclusory allegations, plaintiff here makes no allegation of fact showing that DMI Trust engaged in any act of material support to al Qaeda, much less that DMI Trust did so knowingly or with a desire to see a terrorist plot succeed.  As set forth above, plaintiff alleges nothing more than that DMI Trust and numerous others "conspired, aided and abetted, sponsored, planned and executed the September 11th terrorist attacks," see FAC ¶ 24, without any allegations of fact showing that DMI Trust provided "material support" to al Qaeda, much less any allegations of fact showing that DMI Trust provided anything at all to any terrorist with knowledge of the recipient's tortious activities.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33, 835-36.

Indeed, the allegations against DMI Trust are as least as empty as those asserted -- and found insufficient -- against Al Rajhi Bank.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831-33.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  See id. at 831.  Here, however, plaintiffs merely assert, in an entirely conclusory fashion, that DMI Trust has "conspired with Bin Laden, al Qaeda, and the Taliban to raise, launder, transfer, distribute and hide funds for Bin Laden and al Qaeda in order to support and finance their terrorist activities, including, but not limited to, the September 11th attacks," see FAC

---

[15]  Additionally, because relief under the ATA is available only to United States nationals, all plaintiffs who are not United States nationals lack standing, and their ATA claims must be dismissed for that reason alone.  See, e.g., Burnett I, 274 F. Supp. 2d at 105.

¶¶ 23-24, without any allegations of fact indicating where, when, why or how DMI Trust "raise[d], launder[ed], transfer[red], distribute[d] [or] hid" any funds whatsoever; without any allegations showing that DMI Trust conspired, aided and abetted or materially supported anyone connected to terrorism; and without any allegations indicating that DMI Trust knew that any ostensible recipient of banking services from its putative indirect subsidiaries in the Sudan was a sponsor of terrorism. Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  In contrast, plaintiffs claim only that members of al Qaeda held accounts at putative indirect subsidiaries of DMI Trust, in the Sudan in the mid-1990s, see FAC ¶¶ 581, 63, 66, 70, again without any allegations of fact showing any transfer of funds or other provision of material support by DMI Trust itself to anyone connected with terrorism; any facts indicating that DMI Trust knew that any ostensible recipient of funds or support was supporting terrorism; or any allegation showing that DMI Trust, or any of its subsidiaries or affiliates, provided anything other than routine banking services to anyone.

Clearly, as this Court held regarding Al Rajhi Bank, "Plaintiffs do not allege that [DMI Trust] provided direct material support to al Qaeda," as is required to state an ATA claim: "Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [any persons associated with DMI Trust] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33.  Plaintiffs therefore have wholly failed to state their ATA claim against DMI Trust, and that claim too must be dismissed.

### 4.   Torture Victims Protection Act (Count 5).

Plaintiffs' TVPA claim against DMI Trust is meritless because, among other reasons, "[o]nly individuals may be sued under the TVPA," and there are no allegations that DMI Trust acted under color of law.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828.  Moreover, the TVPA applies

only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing."  Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, at *3 (S.D.N.Y. Feb. 28, 2002); see also Benas v. Baca, 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx. 753 (9th Cir.).  Because all injuries alleged in the instant case occurred within the United States, the TVPA is inapplicable, and plaintiffs' TVPA claim against DMI Trust must be dismissed.

### 5.      Punitive Damages (Count 7).

Plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### 6.      Property Damages (Count 8).

New York law provides no independent cause of action for "intentional, willful, and malicious . . . property damage."  See FAC ¶ 624.  The most analogous claims are claims for damages arising from arson and criminal mischief resulting in damage to property -- each of which requires a showing of tortious intent, and of course a showing of proximate cause.  See, e.g., People v. Keech, 467 N.Y.S. 2d 786, 788-89, 121 Misc.2d 368 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54, 64 A.D.2d 658 (App. Div. 1978) (criminal mischief resulting in property damage requires intent).  As set forth throughout this Memorandum, plaintiffs fail to allege facts that could give rise to any inference of intent as to DMI Trust, or to a finding of proximate causation.  See supra Part I.B.[16]

---

[16]  Only two of the *Ashton* plaintiffs have standing to bring a property destruction claim, *i.e.*, Mayore Estates LLC and 80 Lafayette Associates, LLC.  These plaintiffs originally filed their own lawsuit, No. 02 CV 7214, which was consolidated with *Ashton.*

**II**

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs have filed six successive Complaints over the course of the last three years. "Even with the opportunity to clarify their claims," however -- indeed, even with several such opportunities -- plaintiffs' failure to state any of their claims against DMI Trust is as complete, and as conclusive, as one could imagine.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim").  There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice.  See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

## **CONCLUSION**

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 796. Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust. They have not done so. For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
　　　September 30, 2005

　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　SHEPPARD MULLIN RICHTER & HAMPTON LLP

　　　　　　　　　　　　　　By:_____/s/_____
　　　　　　　　　　　　　　　 James J. McGuire (JM-5390)

　　　　　　　　　　　　　　　 30 Rockefeller Plaza, 24th Floor
　　　　　　　　　　　　　　　 New York, New York 10112
　　　　　　　　　　　　　　　 (212) 332-3800
　　　　　　　　　　　　　　　 *Attorneys for Defendant*
　　　　　　　　　　　　　　　　 *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel