**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570<br><br>ECF Case |

This document relates to:        **New York Marine and General Insurance Co. v.**
                                 **Al Qaida, et al. (04 CV 6105)**

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF</u>
## <u>DEFENDANT IBRAHIM BIN ABDUL AZIZ AL-IBRAHIM FOUNDATION</u>

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation*

<u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST THE FOUNDATION ..................... 2

    A.    Jurisdictional Allegations ................................................................................. 2

    B.    Allegations Regarding Acts In Kenya .............................................................. 2

    C.    Conspiracy Related Allegations ...................................................................... 2

ARGUMENT ....................................................................................................................... 5

I PLAINTIFF HAS NOT STATED A PRIMA FACIE CASE FOR PERSONAL
    JURISDICTION OVER THE FOUNDATION. ................................................................ 5

    A.    There Is No General Jurisdiction Over The Foundation Because Plaintiff
            Does Not Allege That The Foundation Had *Any* Contacts With The United
            States. .......................................................................................................... 6

    B.    There Is No Specific Jurisdiction Over The Foundation Because Plaintiff's
            Conclusory Conspiracy And Aiding And Abetting Allegations Are
            Insufficient ................................................................................................... 8

II THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FOUNDATION. ............ 14

    A.    Plaintiff Has Failed To Plead Facts Sufficient To Show That *Any* Actions By
            The Foundation Proximately Caused Plaintiff's Injuries. ............................... 15

    B.    Plaintiff Has Failed To Plead Facts Sufficient To State Any Cause Of Action. ......... 20

            1.    Trespass -- Count 1 ............................................................................ 20

            2.    RICO -- Count 3 ................................................................................. 21

            3.    Anti-Terrorism Act -- Count 5 ............................................................. 23

            4.    Conspiracy and Aiding and Abetting -- Counts 2 and 4 ....................... 23

            5.    Negligence -- Count 6 ........................................................................ 24

             6.    Punitive Damages -- Count  7 ............................................................. 24

CONCLUSION .................................................................................................................. 24

TABLE OF AUTHORITIES

Cases

A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,
    792 F.2d 330 (3d Cir. 1986) ................................................................................20

In re Air Crash Disaster At Cove Neck, Long Island, New York On January 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) .....................................................................20

Atuahene v. City of Hartford,
    2001 WL 604902 (2d Cir. May 31, 2001) ..................................................... 13 16

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) ...................................................................9, 12

Bernstein v. Misk,
    948 F. Supp 228 (E.D.N.Y. 1997) ............................................................... 11, 17

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .....................................................................21

Calder v. Jones,
    465 U.S. 783 (1984) ................................................................................... 6, 8, 14

Cantor Fitzgerald, Inc. v. Lutnick,
    313 F.3d 704 (2d Cir. 2002) ..............................................................................14

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998) ..................................................................................6

Cooper v. Horn,
    448 S.E.2d 403 (Va. 1994) ................................................................................20

Cortec Indus. v. Sum Holding, L.P.,
    949 F.2d 42 (2d Cir. 1991) ................................................................... 10, 18, 19

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ...................................................................14, 15, 17, 22

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ...............................................................21

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ............................................ 13, 16

Gold v. Fields,
    1993 WL 212672 (S.D.N.Y. June 14, 1993) .......................................................5

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir.  1981) .............................................................................23

Helicopteros Nacionales de Colombia, S.A. v. Hall,
  466 U.S. 413 (1984) ...............................................................................................7

Holmes v. Sec. Investor Prot. Corp.,
  503 U.S. 258 (1992) .............................................................................................15

Howard v. Klynveld Peat Marwick Goerdeler,
  977 F. Supp. 654 (S.D.N.Y. 1997) .......................................................................7

Jazini v. Nissan Motor Co., Ltd.,
  148 F.3d 181 (2d Cir. 1998) ......................................................................6, 9, 12

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
  191 F.3d 229 (2d Cir. 1999) ......................................................................... 15, 21

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
  26 F. Supp. 2d 593 (S.D.N.Y. 1998) .....................................................................8

Leasco Data Processing Equip. Corp. v. Maxwell,
  468 F.2d 1326 (2d Cir. 1972) ................................................................................8

Lehigh Valley Indus., Inc. v. Birenbaum,
  527 F.2d 87 (2d Cir. 1975) ........................................................................6, 11, 12

Lesavoy v. Lane,
  304 F. Supp. 2d 520 (S.D.N.Y. 2004) .................................................................22

Mason v. Am. Tobacco Co.,
  346 F.3d 36 (2d Cir. 2003) ..................................................................................14

Mende v. Milestone Tech. Inc.,
  269 F. Supp. 2d 246 (S.D.N.Y. 2003) ...................................................................6

Medina v. Bauer,
  2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) .................................................. 13, 16

Moss v. Morgan Stanley Inc.,
  719 F.2d 5 (2d Cir. 1983) .............................................................................. 21, 22

Nat'l Org. for Women, Inc. v. Scheidler,
  510 U.S. 249 (1994) .............................................................................................21

Pittman v. Grayson,
  149 F.3d 111 (2d Cir. 1998) .....................................................................13, 14, 15

In re Razorfish, Inc. Sec. Litig.,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001) ............................................................ 12, 16

Reers v. Deutsche Bahn AG,
  320 F. Supp. 2d 140 (S.D.N.Y. 2004) ...................................................................6

S.E.C. v. Unifund SAL,
  910 F.2d 1028 (2d Cir. 1990) ................................................................................8

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999)..................................................................23

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. 2002) ......................................................24

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ........................................................................................17

Spoto v. Herkimer County Trust,
    2000 WL. 533293 (N.D.N.Y. Apr. 27, 2000) ................................................................5

In re Terrorist Attacks on Sept. 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)................................................................ passim

In re Terrorist Attacks on Sept. 11, 2001,
    2005 WL 2296673 ..........................................................................................................5

Tornheim v. Federal Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ..............................................................................20

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
    241 F.3d 135 (2d Cir. 2001) ..........................................................................................6

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ..........................................................................................23

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003)..............................................................20

York v. Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002) ........................................................................................14


Statutes

18 U.S.C. §§ 2331-2333a (2000).........................................................................................23


Other Authority

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 1363, 120-21 (3d Ed. 2004) ...............................................................................11, 19

## INTRODUCTION

Defendant Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation ("Foundation") respectfully submits this Memorandum of Law in support of its motion, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims against it in the First Amended Complaint ("Complaint") in *New York Marine and General Insurance Company v. Al Qaida, et al.*, 04 Civ. 6105 (RCC).  For all the reasons set forth herein and in the remainder of the record, this motion is meritorious and should be granted in all respects.

## PRELIMINARY STATEMENT

Plaintiff, an insurance company that insured properties damaged as a result of the terrorist attacks on September 11, 2001, attempts to hale the Foundation into this Court and hold it liable for those horrific events.  Plaintiff fails, however, to proffer *any* allegations of fact that, if proven, would show any connection between the Foundation and Al Qaeda, the events of September 11, 2001, or the United States.  In fact, the *only* reference to the Foundation in the Complaint is the conclusory allegation that the Foundation and numerous other defendants "have aided and abetted, conspired with and provided material support and resources to" Al Qaeda.  See Complaint ¶ 45.  This single -- and flawed -- allegation falls far short of stating any legally cognizable claims against the Foundation.  Moreover, there are *no* allegations in the Complaint purporting to establish that the Foundation had any contacts with the United States, let alone minimum contacts sufficient to establish personal jurisdiction over the Foundation.  Finally, the conclusory allegations in plaintiff's RICO Statement ("RICO Statement") (which, as discussed below, should not be considered in connection with this motion) are also categorically inadequate to withstand a motion to dismiss.  Accordingly, plaintiff's claims against the Foundation should be dismissed, with prejudice, pursuant to Rule 12(b)(2) or, alternatively, Rule 12(b)(6), in their entirety.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS
## AGAINST THE FOUNDATION

The Complaint does not contain any specific allegations concerning the Foundation. Instead, the *only* reference to the Foundation therein is the conclusory averment that it, along with numerous other defendants, has "aided and abetted, conspired with and provided material support and resources to" Al Qaeda.  See Complaint ¶ 45.

In the RICO Statement -- which, as discussed below, cannot be considered as an amendment to the Complaint and, in any event, can only be considered in connection with plaintiff's RICO causes -- plaintiff attempts to bolster its non-existent claim that the Foundation conspired with Al Qaeda, with the following skimpy averments:

**A.**    **Jurisdictional Allegations**

- The Ibrahim Foundation is a Saudi based charity with branches throughout the world.  Defendant Ibrahim established the Ibrahim Foundation in 1990.  The Ibrahim Foundation holds itself out as a charity with humanitarian goals, and has raised, solicited, and distributed funds under the pretense that the funds would be used for legal and humanitarian purposes.  Nevertheless, the Ibrahim Foundation has knowingly and intentionally lent material support to the Al Qaeda Enterprise through, *inter alia,* the use of interstate and international faxes, telephones, wire transfers and transmission, and mailings.  See RICO Statement, pp. 2-3.

**B.**    **Allegations Regarding Acts In Kenya**

- The organization's branch in Nairobi in Kenya was associated with Bin Laden's network according to the FBI's investigation into the attacks against the American embassies on August 7, 1998.  See id. at 1.

- In September 1998, the Kenyan government canceled the registration of five Islamic relief agencies for allegedly supporting terrorism, including the Foundation.  The authorities claimed that materials for the bomb were smuggled in as relief aid with the help of the Foundation.  After several of the organizations appealed the decision to cancel their registration, Kenya's High Court blocked the deregistration of these Islamic relief agencies.  Only the Ibrahim Foundation did not seek an appeal.  See id. at 2.

**C.**    **Conspiracy Related Allegations**

- The Foundation's misconduct includes providing material support to Al Qaeda, knowingly and intentionally employing Al Qaeda members, laundering money for Al

Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretense), providing Al Qaeda with safe houses and false documentation, and/or facilitating money transfers and weapons and military equipment purchases for Al Qaeda. The Foundation knowingly and intentionally collected, diverted and transferred funds to Al Qaeda and otherwise lent material support to Al Qaeda. . . . The Foundation knowingly and intentionally provided repeated material support and substantial assistance to Al Qaeda through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings. See id. at 1.

- [R]eports suggest that the Ibrahim Foundation was funding the Islamic Movement of Uzbekistan, an affiliate of Al Qaeda, whose leaders met Osama bin Laden in 1999 in Afghanistan. Reports stated that the Islamic Movement of Uzbekistan received approximately $270,000 from the Foundation. See id. at 2.

- The Ibrahim Foundation's misconduct includes materially supporting Al Qaeda (i.e., providing "access to bank accounts" and serving as "cover" to Al Qaeda members who were able to travel undetected "under the guise of working for" these humanitarian organizations), knowingly and intentionally employing Al Qaeda operatives, laundering money for Al Qaeda, raising and distributing financial assistance to Al Qaeda (often under false pretense), providing Al Qaeda with safe houses and false documentation, and/or facilitating weapons and military equipment purchases and transfers for Al Qaeda. See id. at 3.

- Additionally, the Ibrahim Foundation, knowingly and intentionally collected, diverted and transferred *Zakat* funds to Al Qaeda and otherwise lent material support to Al Qaeda. The Ibrahim Foundation knowingly and intentionally lent material support to Al Qaeda through, *inter alia,* the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings. The Ibrahim Foundation's knowing and intentional conduct enabled Al Qaeda to plan, orchestrate and carry out violent anti-American, antidemocratic activity, including the September 11th attacks that injured plaintiffs. See id. at 3.

- The predicate acts conducted by the Ibrahim Foundation form a pattern of racketeering in that they are repeated and continuous, including funneling money to Osama bin Laden and Al Qaeda in the mid to late-1990s. The Ibrahim Foundation consistently, evenly and constantly, laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity. See id. at 3.

- Al Qaeda relies upon a global network of banks and financial institutions, including the Ibrahim Foundation. See id. at 4.

- The Ibrahim Foundation holds itself out as a legitimate charity with legitimate goals. See id. at 5.

- The Ibrahim Foundation conducted the racketeering activity through its charity operations, by raising, soliciting and distributing funds under the pretense that the

funds would be used for legal and humanitarian purposes. The racketeering activity conducted by the Ibrahim Foundation substantially assists and materially supports Al Qaeda's terrorist activity. See id. at 5.

- The Al Qaeda Enterprise relies on well-placed financial facilitators, including the Ibrahim Foundation, and laundered funds from Islamic so-called charities and corporations. The financial facilitators also raised money from donors. They also relied heavily on certain individuals at mosques who were willing to divert *Zakat* funds. See id. at 5.

- The funds raised were used for such purposes as operation of terrorist training camps . . . .These camps were able to operate only because of the worldwide network of travel recruiters, travel facilitators, and document forgers. . . . None of this would have been possible without the funds supplied by participants and conspirators like the Ibrahim Foundation. Indeed, the Al Qaeda Enterprise would not have been successful without the enthusiastic participation of all of the conspirators, including the Ibrahim Foundation. In order to identify nineteen individuals to carry out the September 11th attacks, Al Qaeda needed to select from a large pool of recruits and trainees, which would not have been possible without the assistance provided by the Ibrahim Foundation. The Ibrahim Foundation also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities. See id. at 6.

- The Ibrahim Foundation's uninterrupted financial and material support of terrorism, mail fraud, wire fraud, money laundering, and substantial assistance, as described herein and in plaintiff's First Amended Complaint, enabled the Al Qaeda Enterprise to plan, orchestrate, and carry out the September 11th attacks that injured the plaintiff. Therefore, the conduct of the Ibrahim Foundation proximately resulted in the September 11th attacks. See id. at 6.

Plaintiff's attempt to hale the Foundation into this Court based on the foregoing allegations and hold it liable for the horrific events of September 11, 2001 is meritless. As further demonstrated below, plaintiff does not allege any facts to justify including the Foundation in plaintiff's indiscriminate grouping of the Foundation with the over 200 named defendants in this action. Moreover, assuming *arguendo* that: (i) the allegations in the RICO Statement are considered (and they should not be), (ii) there was jurisdiction over the Foundation (which there is not), (iii) plaintiff's allegations are true (which they are not), plaintiff still fails to state a claim against the Foundation because its conclusory allegations are not supported by factual allegations, and/or plaintiff fails to, and cannot, allege that the Foundation proximately caused the September 11 attacks.

# ARGUMENT

As a preliminary matter, plaintiff's untimely RICO Statement cannot be deemed an amendment to the Complaint and, thus, should not be considered in connection with this motion. See Instructions For Filing RICO Statement, available at www.nysd.uscourts.gov/Individual_Practices/rico.pdf ("All parties asserting claims pursuant to the [RICO Act], must file and serve upon the opposing party a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim."); Order, Aug. 23, 2005 (MDL Docket No. 1144); Spoto v. Herkimer County Trust, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO Statement."); Gold v. Fields, 1993 WL 212672, at *5 n.5 (S.D.N.Y. June 14, 1993) ("[T]he [RICO] Statement . . . only seeks information plaintiffs should already have in their possession before filing their complaint.").  In any event, the RICO Statement may only be considered in connection with plaintiff's RICO claims.  See In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *19 (S.D.N.Y. Sept. 21, 2005) ("For purposes of the RICO claims, the Court also reviews the RICO statements.").

Nevertheless, even if the allegations in the RICO Statement are considered, plaintiff's claims against the Foundation should be dismissed for two reasons.  First, the Complaint should be dismissed pursuant to Rule 12(b)(2), because plaintiff's allegations do not support a finding of personal jurisdiction over the Foundation.  Second, the Complaint should be dismissed pursuant to Rule 12(b)(6), because plaintiff's allegations fail to state a claim against the Foundation.

# I

## PLAINTIFF HAS NOT STATED A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER THE FOUNDATION.

Plaintiff bears the burden of establishing personal jurisdiction over the Foundation.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).  To survive a

motion to dismiss, plaintiff must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809.  "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804. Whether a plaintiff asserts that a Court has general or specific jurisdiction over a defendant, due process requires that a plaintiff allege facts showing that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (quoting Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotations omitted)); see also Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998).

## A.    There Is No General Jurisdiction Over The Foundation Because Plaintiff Does Not Allege That The Foundation Had *Any* Contacts With The United States.

To establish general jurisdiction under C.P.L.R. § 301, a plaintiff must allege that, as a result of a defendant's contacts with New York, that defendant is "engaged in a continuous and systematic course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction."  See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  Similarly, where a statute provides for nationwide service of process, long-arm jurisdiction is determined based upon defendant's contacts with the nation as a whole but still requires that plaintiff demonstrate sufficient minimum contacts.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 808.  In addition, pursuant to Fed. R. Civ. P. 4(k)(2), when a federal claim is made against a foreign defendant not subject to jurisdiction in any State, "[p]ersonal jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth Amendment due process requirements,"  In re Sept. 11 Attacks, 349 F. Supp.

2d at 807, and, therefore, requires allegations of "continuous and systematic general business contacts" by the Foundation with the United States.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984); In re Sept. 11 Attacks, 349 F. Supp. 2d at 811 ("a considerably higher level of contacts is generally required" to plead general jurisdiction).

Here, there are no allegations in the Complaint to support a finding of jurisdiction over the Foundation.  For this reason alone, the Complaint must be dismissed.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801, 805-06 (plaintiffs' claim that all defendants conspired with Al Qaeda terrorists to perpetrate September 11 attacks insufficient to establish personal jurisdiction).

Moreover, the single allegation in the RICO Statement purporting to link the Foundation with the United States, even if proven, cannot establish a basis for the exercise of general jurisdiction over the Foundation.  According to plaintiff, the Foundation has "branches throughout the world." See RICO Statement, pp. 2-3.  There is no allegation, however, that the Foundation has any office, conducts any business, or has any ties to the United States.  Given that plaintiff does not specifically allege that the Foundation had any contacts, let alone minimum contacts, with the United States, this Court does not have jurisdiction over the Foundation.  There are simply no allegations that could support a finding that the Foundation has any "presence" in the United States.  See Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 661 (S.D.N.Y. 1997) (general jurisdiction requires allegations that defendant "is engaged in [] a continuous and systematic course of 'doing business' . . . as to warrant a finding of its 'presence' in the jurisdiction").  Plaintiff simply tenders nothing that could conceivably be read to demonstrate that the Foundation has had the purposeful contacts necessary to establish general personal jurisdiction over the Foundation.  Accordingly, there is no general jurisdiction over the Foundation.

**B.  There Is No Specific Jurisdiction Over The Foundation Because Plaintiff's Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient.**

Under § 302(a)(2) of the C.P.L.R., "acts committed in New York by . . . co-conspirator[s] of an out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal] jurisdiction . . . ."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  However, "[b]efore jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants with "the conspiracy."  Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d 593, 601-02 (S.D.N.Y. 1998) (internal quotations and citation omitted) (emphasis added).  Thus, in this action, "[p]ersonal jurisdiction cannot be based on a New York long-arm conspiracy theory" where plaintiff "do[es] not allege any specific facts from which the Court could infer that [defendant] directed, controlled, or requested al Qaeda to undertake its terrorist activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 806.

In addition, to satisfy due process, plaintiff must properly allege some tortious act by a defendant and facts showing that said defendant "expressly aimed" such a tortious act at the forum.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to dismiss because "plaintiffs must allege personal acts by [the defendant] by which he purposefully directed his activities at the United States");  Calder, 465 U.S. at 789.  Indeed, a foreign defendant may be subject to personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct" effect in the forum.  See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d Cir. 1972) (exercise of personal jurisdiction based upon alleged effects in New York "must be applied with caution, particularly in an international context");  S.E.C. v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990).

Here, this Court has already determined that the general allegation that all defendants "conspired" with or "aided and abetted" Al Qaeda, see Complaint ¶ 45, absent factual allegations,

cannot establish personal jurisdiction over a particular defendant.  See In re Sept. 11 Attacks, 349 F.

Supp. 2d at 805-06 ("Without supporting factual allegations, [plaintiffs' claim that all Defendants in

these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11] is

insufficient to establish … personal jurisdiction [] on a New York long-arm conspiracy theory."); see

also Jazini, 148 F.3d at 184-85 ("conclusory statement" of law couched as factual allegation

insufficient to establish personal jurisdiction; plaintiff must allege supporting facts); Bellepointe v.

Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state *prima facie* case for

jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish

jurisdiction").

Therefore, and because the conclusory allegation in paragraph 45 of the Complaint that the

Foundation, along with numerous other defendants, "conspired" with or "aided and abetted" Al

Qaeda is the *only* allegation against the Foundation, plaintiff has failed to establish jurisdiction over

the Foundation.  Thus, the Complaint must be dismissed.  See In re Sept. 11 Attacks, 349 F. Supp.

2d at 801, 805-06.

In addition, even if the allegations in the RICO Statement are considered -- although they

should not be -- plaintiff still fails to offer *any* factual allegations to support a contention that the

Foundation expressly aimed any activities at New York or the United States, let alone that the

Foundation "directed," "controlled," or "requested" that Al Qaeda perpetrate the September 11,

2001 tragedies.  Id.

First, plaintiff attempts to link the Foundation with Al Qaeda based on the averment that it

made a donation to the Islamic Movement of Uzbekistan ("IMU"), "an affiliate of Al Qaeda."  See

RICO Statement, p. 2.  However, there is no alleged link between that alleged donation and Al

Qaeda, let alone any allegation that the Foundation knew of any such connection.  Moreover, the

"report" upon which plaintiff relies states that IMU was founded "with two main objectives: to

overthrow Karimov's secular regime and to create an Islamic state in Uzbekistan" as a result of the "repressive policy towards its Muslim citizens. "[1]  Therefore, plaintiff's allegation regarding the IMU does not provide a basis for jurisdiction over the Foundation, because that allegation does not purport to link the Foundation to Al Qaeda.  See, e.g., In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 and 835 (dismissing claim against Arab Bank because "[w]hile claiming Arab Bank has ties with known Hamas fronts, the *Federal* complaint does not contain any allegation of a connection between Hamas and Osama bin Laden, al Qaeda, or the September 11 attacks.").

Second, plaintiff's allegations concerning alleged wrongdoing by the Foundation in connection with the 1998 United States embassy bombing in Kenya are premised on the averment that the Foundation "did not seek an appeal" of a deregistration by Kenya's High Court.  See RICO Statement, p. 2 ("Kenya's High Court blocked the deregistration of these Islamic relief agencies. Only the Ibrahim Foundation did not seek an appeal.").  However, not only did the Foundation appeal its deregistration, it was successful in that appeal and was reinstated.[2]  In addition, the pleadings and the *unabridged* article from which plaintiff copied the foregoing allegations demonstrate that the Kenyan government's response to the embassy bombings "was to crack down indiscriminately against foreigners and Muslim-run nongovernmental organizations (NGO's)."[3]

---

[1] See Odil Ruzaliev, Islam in Uzbekistan: Implications of 9/11 and Policy Recommendations for the United States, 25 J. Muslim Minority Aff. 13, 17 (2005), attached to the Declaration of Daniel L. Brown, dated October 3, 2005 ("Brown Dec."), as Exhibit A.  See also Cortec Indus. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (Court may consider documents referenced in Complaint).

[2] See Notification of Intended Cancellation of Registration, dated December 15, 1998 ("Please be informed that the NGO's Co-ordination Board has resolved to **withdraw** the notices of INTENDED cancellation of your registration earlier sent to you by the Chairman of the Board.  You are now free to continue your operations as a registered NGO."); Order, dated December 16, 1998 (quashing decision to cancel registration of NGO), attached to the Brown Dec. as Exhibits B and C respectively.

[3] See, e.g., RICO Statement filed in connection with Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al. (04-CV-7279), p. 3 (emphasis added); Human Rights Watch, World Report 1999, Kenya: Human Rights Developments, attached to the Brown Dec. as Exhibit D.  See also Cortec, 949 F.2d at 47-48 (Court may consider documents referenced in Complaint).

Moreover, that article demonstrates that plaintiff simply invented these allegations.[4]  Thus, plaintiff's allegations are contradicted by its own source materials and, therefore, should be disregarded.[5]

      <u>Finally</u>, the numerous conclusory allegations in the RICO Statement are not supported by any factual allegations and, therefore, are insufficient to establish jurisdiction over the Foundation. <u>See</u> <u>Lehigh Valley</u>, 527 F.2d at 93-94 ("bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction"); <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 801, 805-06.  For example, plaintiff conclusorily alleges that the Foundation "consistently, evenly and constantly, laundered money, provided material support for terrorism,"[6] "committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity,"[7] "raised money from donors,"[8] and "diverted and transferred <i>Zakat</i> funds to Al Qaeda."[9]  However, these allegations are not supported by any factual allegations.  Indeed, there are <u>no</u> alleged instances of any purported "material support provided to Al Qaeda" by the Foundation, "launder[ing] money," or "raising, soliciting and distributing funds."  In fact, plaintiff has wholly failed to allege the elements of money laundering.  <u>See</u> <u>Bernstein v. Misk</u>, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (conclusory allegations insufficient to establish elements of money laundering)  Similarly, there is not a single alleged

---

[4] <u>Compare</u> RICO Statement, p. 2 ("authorities claimed that materials for the bomb were smuggled in as relief aid with the help of the Foundation") <u>with</u> Human Rights Watch, <u>supra</u> note 3 ("The authorities claimed that materials for the bomb were smuggled in as relief aid <i>with the help of some Islamic relief agencies</i>.") (emphasis added).

[5] <u>See</u> 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1363, 120-21 (3d Ed. 2004) (when deciding Rule 12 motion, "district court will not accept as true pleading allegations that are contradicted by . . . other allegations").

[6] <u>See</u> RICO Statement, p. 3.

[7] <u>See</u> <u>id.</u> at 3.

[8] <u>See</u> <u>id.</u> at 5.

[9] <u>See</u> <u>id.</u> at 3.

instance of the Foundation providing "material support," "access to bank accounts," "financial assistance," "housing," "false documentation," or "weapons" to Al Qaeda.

Plaintiff's sweeping, conclusory allegation that "funds raised were used for such purposes as operation of terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but others were trained in terrorist tactics" and "[n]one of this would have been possible without the funds supplied by participants and conspirators like the [] Foundation," see RICO Statement, p. 6, fail to distinguish between any alleged conspirators "like" or "including" the Foundation.  Id.; see also id. at 5 (Al Qaeda "relied on well-placed financial facilitators, including the Ibrahim Foundation"); In re Sept. 11 Attacks, 349 F. Supp. 2d at 801, 805-06 ("Without supporting factual allegations, [plaintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11] is insufficient to establish … personal jurisdiction [] on a New York long-arm conspiracy theory."); Jazini, 148 F.3d at 184-85; Bellepointe, 975 F. Supp. at 564-65 (to state prima facie case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction"); Lehigh Valley, 527 F.2d at 93-94.

In addition, plaintiff has simply copied its allegations against other defendants and inserted the Foundation's name in those allegations.[10]  As such, "[o]ne can only wonder whether the edicts of Rule 11, Fed. R. Civ. P., were followed in the investigation and drafting of these copycat" allegations.  See In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 306 n.1 (S.D.N.Y. 2001).  Moreover, these allegations against all named defendants, which do not identify any specific conduct by the Foundation and rely "on blanket accusations against Defendants as a group, without delineating their respective actions, … renders it virtually impossible for [the Foundation] to

---

[10] Compare plaintiff's RICO Statement against the Foundation with plaintiff's nearly identical RICO Statement against Al-Haramain Islamic Foundation, Inc. (USA), attached to the Brown Dec. as Exhibit E.

respond to the allegations." <u>Glasheen v. City of Albany</u>, 1999 WL 1249409, *1 (N.D.N.Y. Dec. 16, 1999) (plaintiffs' "over-inclusive approach renders it virtually impossible for [the] Defendant to respond to the allegations"); <u>see</u> <u>Atuahene v. City of Hartford</u>, 2001 WL 604902, at *34 (2d Cir. May 31, 2001); <u>Medina v. Bauer</u>, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong").

Based on the foregoing, plaintiff's allegations cannot support the exercise of personal jurisdiction over the Foundation.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").

Plaintiff's generalized, conclusory allegations of aiding and abetting are similarly in adequate to support personal jurisdiction over the Foundation.  A claim of aiding and abetting "requires that a defendant have given substantial assistance or encouragement to the primary wrongdoer" and that "the defendant . . . know the wrongful nature of the primary actor's conduct." <u>Pittman v. Grayson</u>, 149 F.3d 111, 123 (2d Cir. 1998) (internal citations omitted); <u>see</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 826.  In brief, the alleged aider and abettor must have been aware of the wrongdoing and provided substantial assistance in its commission.  Here, plaintiff has not proffered *any* facts sufficient to support *any* such finding as to the Foundation.  Plaintiff offers nothing but the barest boilerplate and conclusory allegations that the Foundation knew that it was somehow assisting the wrongful conduct of some person or persons.  <u>See</u>, <u>e.g.</u>, RICO Statement, p. 1 ("The [] Foundation knowingly and intentionally provided repeated material support and substantial assistance to Al Qaida through the use of interstate and international faxes, telephones, wire transfers and transmissions, and mailings.").  There are simply no allegations from which one could infer that the

Foundation gave "substantial assistance or encouragement" to Al Qaeda or was aware of the wrongful nature of any conduct by Al Qaeda.  Pittman, 149 F.3d at 123 (internal citations omitted); In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.

In sum, even affording plaintiff's allegations every favorable inference, there are simply no allegations that the Foundation committed *any* tortious acts, no allegations that the Foundation "expressly aimed" any such tortious activities at the United States, see Calder, 465 U.S. at 789, and no allegations that could in any way support an inference that the Foundation conspired with Al Qaeda, let alone that it "directed, controlled, or requested al Qaeda to undertake its terrorist activities" sufficient to establish personal jurisdiction over the Foundation.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801.  Accordingly, plaintiff's claims against the Foundation must be dismissed pursuant to Rule 12(b)(2).

## II

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FOUNDATION.

"To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."  York v. Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  Further, it is well settled that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)); see also Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) ("legal conclusions, deductions or opinions couched as factual allegations" do not suffice to prevent dismissal); Cantor Fitzgerald, Inc. v. Lutnick, 313  F.3d 704, 709 (2d Cir. 2002) (Court should give "no credence" to conclusory allegations).

Moreover, to properly state each of plaintiff's claims, plaintiff must allege that some act or omission by the Foundation proximately caused the alleged injuries, here the terrorist attacks on

September 11, 2001.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797 n.26; see also Holmes v. Sec.

Investor Prot. Corp., 503 U.S. 258, 268 (1992); Laborers Local 17 Health & Ben. Fund v. Philip

Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege

facts showing "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury

was reasonably foreseeable").  Moreover, because "plaintiff[] rel[ies] on theories of concerted action

liability -- conspiracy and aiding and abetting -- in support of [the assertion of proximate causation],"

plaintiff must allege the particular elements of either conspiracy and aiding and abetting as to each

defendant.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  The Second Circuit has explained that

"[t]he elements of concerted action liability are (1) an express or tacit agreement to participate in a

common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the

commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a

tort."  Pittman, 149 F.3d at 122 (citations omitted).  Finally, "[c]onspiracy . . . requires an agreement

to commit a tortious act [and] aiding and abetting requires that the defendant have given 'substantial

assistance or encouragement' to the primary wrongdoer."  Id. at 122-23 (citations omitted).  Each

theory requires that plaintiff also allege that a defendant had actual knowledge of the wrongful

nature of the primary actor's conduct.  Id.

A.     **Plaintiff Has Failed To Plead Facts Sufficient To Show That *Any* Actions By The Foundation Proximately Caused Plaintiff's Injuries.**

This Court has already determined that the general allegation that all defendants "conspired"

with or "aided and abetted" Al Qaeda, absent supporting factual allegations, cannot establish that

any particular defendant proximately caused any of the plaintiffs' alleged injuries.  In re Sept. 11

Attacks, 349 F. Supp. 2d at 833 ("[a] complaint which consists of conclusory allegations

unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (quoting De

Jesus, 87 F.3d at 70).

Therefore, and because the *only* allegation in the Complaint against the Foundation is the general allegation that the Foundation, along with numerous other defendants, "conspired" with or "aided and abetted" Al Qaeda, <u>see</u> Complaint ¶ 45, the Complaint must be dismissed.

In addition, even if the allegations in the RICO Statement are considered -- and they should not be -- those allegations are insufficient to support an inference that the Foundation proximately caused anything relevant to this action.   Indeed, as demonstrated above, plaintiff has simply copied its allegations against other Islamic charities and inserted the Foundation's name in those allegations,[11] and "[o]ne can only wonder whether the edicts of Rule 11, Fed. R. Civ. P., were followed in the investigation and drafting of these copycat" allegations.  <u>See</u> <u>In re Razorfish</u>, 143 F. Supp. 2d at 306 n.1.  In addition, such allegations against all named defendants, which do not identify any specific conduct by the Foundation and rely "on blanket accusations against Defendants as a group, without delineating their respective actions, . . . renders it virtually impossible for [the Foundation] to respond to the allegations."  <u>Glasheen</u>, 1999 WL 1249409, at *1 (plaintiffs' "over-inclusive approach renders it virtually impossible for [the] Defendant to respond to the allegations.").  <u>See</u> also <u>Atuahene</u>, 2001 WL 604902, at *34; <u>Medina</u>, 2004 WL 136636, at *6 (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong").  Consequently, plaintiff's sweeping, conclusory allegation that "funds raised were used for such purposes as operation of terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but others were trained in terrorist tactics" and "[n]one of this would have been possible without the funds supplied by participants and conspirators like the Ibrahim Foundation," RICO Statement, p. 6, which simply fail to distinguish between any alleged conspirators "like" or "including" the Foundation, <u>id.</u>, cannot

---

[11] Compare plaintiff's RICO Statement against the Foundation with plaintiff's nearly identical RICO Statement against Al-Haramain Islamic Foundation, Inc. (USA), attached to the Brown Dec. as Exhibit E.

support a claim against the Foundation.  <u>See</u> <u>also</u> RICO Statement, p. 5. (Al Qaeda "relied on well-placed financial facilitators, including the Ibrahim Foundation").

In addition, there are *no* factual allegations (other than the insufficient allegation regarding the IMU and the 1998 bombing in Kenya discussed below) to support plaintiff's conclusory allegations that the Foundation "consistently, evenly and constantly, laundered money, provided material support for terrorism,"[12] "committed wire fraud and mail fraud and engaged in monetary transactions improperly derived from unlawful activity,"[13] "raised money from donors,"[14] and "diverted and transferred *Zakat* funds"[15] to Al Qaeda.  There are <u>no</u> alleged instances of any such 'material support provided' to Al Qaeda by the Foundation, 'launder[ing] money,' or 'raising, soliciting and distributing funds' by the Foundation.  In fact, plaintiff has utterly failed to allege the elements of money laundering.  <u>See</u> <u>Bernstein</u>, 948 F. Supp at 236 n.2 (conclusory allegations insufficient to establish elements of money laundering).  Similarly, there is not a single alleged instance of the Foundation providing "material support," "access to bank accounts," "financial assistance," "housing," "false documentation," or "weapons" to Al Qaeda.  <u>See</u> RICO Statement, p. 1.

Plaintiff's boilerplate, conclusory allegations of causation cannot be allowed to substitute for *some* allegation of fact showing that the Foundation ever actually *did* anything to cause the injuries for which plaintiff now seeks redress.  <u>See</u> <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002); <u>De Jesus</u>, 87 F.3d at 70; <u>see</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 799 (allegations of ostensible support could not state causation).

---

[12] <u>See</u> RICO Statement, p. 3.

[13] <u>See</u> <u>id.</u> at 3.

[14] <u>See</u> <u>id.</u> at 5.

[15] <u>See</u> <u>id.</u> at 3.

In addition, plaintiff's attempt to link the Foundation to Al Qaeda by alleging that the Foundation made a donation to the IMU, "an affiliate of" Al Qaeda, RICO Statement, p. 2, does not support an inference that the Foundation proximately caused the September 11 attacks because plaintiff does not even attempt to link that alleged donation to Al Qaeda. Nor could plaintiff allege any such connection because the "report" upon which plaintiff relies states that IMU was founded "with two main objectives: to overthrow Karimov's secular regime and to create an Islamic state in Uzbekistan" as a result of the "repressive policy towards its Muslim citizens." [16]  In sum, plaintiff's allegation regarding the IMU is not even alleged to be related to Al Qaeda and, thus, cannot form the basis of a claim that the Foundation proximately caused the September 11 attacks.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 and 835 (dismissing claims against Al Rajhi Bank and Arab Bank because "Plaintiffs' allegations that Al Rajhi Bank has connections to Hamas supporters fails to state a claim because Plaintiffs have not alleged any relationship between Hamas and al Qaeda" and "[w]hile claiming Arab Bank has ties with known Hamas fronts, the *Federal* complaint does not contain any allegation of a connection between Hamas and Osama bin Laden, al Qaeda, or the September 11 attacks.  A complaint alleging conclusions without supporting facts will not survive a Rule 12(b)(6) motion.").

Finally, as demonstrated above, plaintiff's allegations regarding the 1998 United States embassy bombing in Kenya, are premised on the false allegation that the Foundation "did not seek

---

[16] See Ruzaliev, supra note 1, at 17.  See also Cortec, 949 F.2d at 47-48 (Court may consider documents referenced in Complaint).

an appeal" of a deregistration by Kenya's High Court.[17]  In addition, the pleadings and *unabridged*

article from which plaintiff copied the foregoing allegations demonstrate that the Kenyan

government's response to the embassy bombings "was to crack down <u>indiscriminately</u> against

foreigners and Muslim-run nongovernmental organizations (NGO's)."[18]  Moreover, that article

demonstrates that plaintiff simply invented these allegations.[19]  Thus, plaintiff's allegations are

contradicted by its own source materials and, therefore, should be disregarded.

Given the foregoing, at a minimum, plaintiff must concede that neither the Complaints nor

the RICO Statements properly alleges that the Foundation "agree[d] to commit a tortious act"

engaged in any "tortious conduct;" provided "substantial assistance or encouragement" to Al Qaeda

or had "actual knowledge" of Al Qaeda's wrongful conduct.  In sum, plaintiff has plead no facts to

suggest that the Foundation knowingly provided substantial assistance to anyone connected with Al

Qaeda.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an

inference that the defendant knowingly provided assistance or encouragement to the wrongdoer . . .

Here, there are no such factual bases presented, there are only conclusions.").  At bottom, plaintiff

has failed to make any allegation against the Foundation that could support a finding of proximate

---

[17] <u>Compare</u> RICO Statement, p. 2 ("Kenya's High Court blocked the deregistration of these Islamic relief agencies.  Only the Ibrahim Foundation did not seek an appeal") <u>with</u> <u>Notification of Intended Cancellation of Registration</u>, dated December 15, 1998 ("Please be informed that the NGO's Co-ordination Board has resolved to **withdraw** the notices of INTENDED cancellation of your registration earlier sent to you by the Chairman of the Board.  You are now free to continue your operations as a registered NGO."); <u>Order</u>, dated December 16, 1998 (quashing decision to cancel registration of NGO), attached to the  Brown Dec. as Exhibits B and C respectively.

[18] <u>See</u>, <u>e.g.</u>, RICO Statement filed in connection with <u>Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.</u> (04-CV-7279), p. 3 (emphasis added); Human Rights Watch, <u>supra</u> note 3.  <u>See also</u> <u>Cortec</u>, 949 F.2d at 47-48 (Court may consider documents referenced in Complaint); Wright & Miller, <u>supra</u> note 5, at 120-21 (when deciding Rule 12 motion, "district court will not accept as true pleading allegations that are contradicted by . . . other allegations.").

[19] <u>Compare</u> RICO Statement, p. 2 ("authorities claimed that materials for the bomb were smuggled in as relief aid with the help of the Foundation") <u>with</u> Human Rights Watch, <u>supra</u> note 3 ("The authorities claimed that materials for the bomb were smuggled in as relief aid *with the help of some Islamic relief agencies*.") (emphasis added).

cause as to any of the pending claims.  Accordingly, the Court should dismiss the Complaint against the Foundation pursuant to Rule 12(b)(6).

## B.  Plaintiff Has Failed To Plead Facts Sufficient To State Any Cause Of Action.

### 1.  Trespass -- Count 1

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).[20]  Where, as here, plaintiff asserts that the Foundation aided and abetted a trespass, it must allege that the Foundation "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4 (S.D.N.Y. Dec. 3, 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 830 (same).

In this case, plaintiff lamely alleges that the Foundation "conducted or participated, directly or indirectly, in the affairs of the Al Qaeda RICO enterprise through a pattern of racketeering activity that, among other things, has facilitated, materially supported and substantially assisted Al Qaeda's purposes."[21]  Plaintiff thus has proffered no allegation that, if proven, would show that the Foundation gave "substantial assistance" to Al Qaeda, had "actual knowledge" of the Attacks, or

---

[20] The laws of Virginia and Pennsylvania have similar strict requirements of causation in a trespass action. See Cooper v. Horn, 448 S.E.2d 403, 423 (Va. 1994); A.J. Cunningham Packing Corp. v. Cong. Fin. Corp., 792 F.2d 330, 334 (3d Cir. 1986).

[21] See RICO Statement, p. 3.

intended any trespass.  Plaintiff has also failed to allege that the Foundation committed any wrongful

act that resulted in any trespass, and has again failed to plead proximate causation as to the

Foundation.  Accordingly, plaintiff's claims for trespass against the Foundation should be dismissed.

### 2.    RICO -- Count 3

As an initial matter, where plaintiff's injuries are "purely contingent on harm to third parties,

[plaintiff's] injuries are indirect [and] [c]onsequently . . . plaintiff[] lack[s] standing to bring RICO

claims."  Laborers Local, 191 F.3d at 239.  Here, plaintiff attempts to assert RICO claims as third-

party subrogees of injuries to insureds and, therefore, attempts to recover for indirect injuries.

Accordingly, plaintiff lacks standing to bring its RICO claims.  See Nat'l Org. for Women, Inc. v.

Scheidler, 510 U.S. 249, 255 (1994) (RICO standing "threshold question" and "represents a

jurisdictional requirement").  In addition, "pecuniary losses that are derivative of personal injuries

are not 'business or property' injuries" for purposes of RICO standing.  Burnett v. Al Baraka Inv. &

Dev. Corp., 274 F. Supp. 2d. 86, 100-02 (D.D.C. 2003) ("plaintiff must show a proprietary type of

damage").

Plaintiff also has failed to state any RICO claims against the Foundation.  The elements of

criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3)

constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains

an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or

foreign commerce."  Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Plaintiff's Section

1962(a) RICO claim requires an allegation of "injury [resulting] from the defendant's investment of

the racketeering income," In re Sept. 11 Attacks, 349 F. Supp. 2d at 827; plaintiff's Section 1962(c)

RICO claim requires an allegation that the defendant "had some part in directing the operation or

management of the enterprise, " id. at 827-28; and plaintiff's Section 1962(d) claim requires an

allegation that the defendant was a "central figure" in the underlying scheme.  Dubai Islamic Bank v.

Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).  Where plaintiff cannot successfully allege

these RICO elements, there is no violation of the criminal RICO statute, and no civil liability can

ensue.  See, e.g., Moss, 719 F.2d at 18-19.

Plaintiff's sparse allegations regarding the Foundation, even if true, would establish *none* of

the requisite elements of a civil RICO claim.  Neither the Complaint nor the RICO Statement allege

two or more predicate acts by the Foundation, or any facts that could show an agreement to commit

two or more predicate acts by the Foundation.  Plaintiff avers no facts showing that the Foundation

engaged in any 'pattern' of 'racketeering activity'; no facts that could imply the Foundation's assent

to any alleged RICO conspiracy; no overt acts by the Foundation in furtherance of any alleged

conspiracy; no interest of, investment by, or participation by the Foundation in the alleged Al Qaeda

'enterprise'; no injury from the Foundation's putative investment of racketeering income; and no

indication that the Foundation was a central figure in any endeavor at all or actively managed

anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.'  See

Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring

a particular configuration of elements.  These elements . . . must be tightly particularized. . . .

Parroting statutory language while generally referring the reader back to the previous 100 paragraphs

in a complaint is inadequate.").  Plaintiff's conclusory RICO allegations regarding mail and wire

fraud,[22] utterly fail to meet the particularized requirements of Fed. R.. Civ. P. 9(b).  Moreover, as

discussed above, plaintiff has failed to plead proximate causation as to the Foundation.  Plaintiff

thus has completely failed to state any RICO claims against the Foundation.  See, e.g., De Jesus, 87

F.3d at 70 (dismissing RICO claim based upon conclusory allegations).

---

[22] See RICO Statement, pp. 1-4, 6.

3.      **Anti-Terrorism Act -- Count 5**

Under the Anti-Terrorism Act ("ATA"), a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333a (2000); In re Sept. 11 Attacks, 349 F. Supp. 2d at 828; United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828.  Other than its aforementioned conclusory allegations, plaintiff makes no allegation of fact showing that the Foundation engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed.  And again, plaintiff has wholly failed to plead proximate causation.

To be sure, plaintiff has "not alleged any relationship between [the Foundation] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 832-33.  Plaintiff, consequently, has wholly failed to state its ATA claim and the claim must be dismissed.

4.      **Conspiracy and Aiding and Abetting -- Counts 2 and 4**

Plaintiff's putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51 n.3, 57, 720 N.E.2d 892, 895 n.3, 898 (N.Y. 1999) (aiding and abetting "no[t an] independent tort").  For this reason alone, plaintiff's conspiracy and aiding and abetting causes of action must be dismissed.

5.      <u>**Negligence -- Count 6**</u>

This Court has already determined that where, as here, plaintiff does "not allege or identify a duty owed," plaintiff's negligence claim must be dismissed for failure to state a claim.  <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover,  plaintiff does not allege a breach of any alleged duty by the Foundation because it alleges no wrongful act or omission by the Foundation.  Finally, plaintiff fails to allege that the Foundation proximately caused the September 11 attacks.

6.      <u>**Punitive Damages -- Count 7**</u>

Plaintiff cannot state a claim for punitive damages, because such damages are a form of relief and not an independent cause of action.  <u>See</u> <u>Smith v. County of Erie</u>, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. 2002).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Foundation respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.


Dated:  New York, New York
        October 4, 2005

                              Respectfully submitted,

                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                              By:_____/s/_____
                                  James J. McGuire (JM-5390)

                                  30 Rockefeller Plaza, 24th Floor
                                  New York, New York 10112
                                  (212) 332-3800
                                  *Attorneys for Defendant*
                                  *Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation*