**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570**<br><br>**ECF Case** |

This document relates to:

**Continental Casualty Co., et al. v. Al Qaeda, et al. (04-CV-5970)**

**Thomas E. Burnett, Sr., et al. v. Al Baraka, et al. (03-CV-5738)**

**World Trade Center Properties LLC, et al. v. Al Baraka, et al. (04-CV-7280)**

**Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al. (04-CV-7279)**

**Federal Insurance Co., et al. v. Al Qaida, et al. (03-CV-6978)**

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS OF**</u>
<u>**DEFENDANT IBRAHIM BIN ABDUL AZIZ AL-IBRAHIM FOUNDATION**</u>

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, New York  10112
(212) 332-3800

*Attorneys for Defendant*
 *Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation*

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

PRELIMINARY STATEMENT..............................................................................1

SUMMARY OF PLAINTIFFS' ALLEGATIONS...................................................1

    A.           Jurisdictional Allegations.......................................................2

    B.           Allegations Regarding Acts In Kenya ....................................2

    C.    Allegations Regarding "Islamist Operations [] Targeting Russia"...................................3

    D.    Allegations Regarding A July 2002 Seminar ........................3

    E.    Plaintiffs' RICO Statements .................................................4

ARGUMENT .........................................................................................................5

    I    PLAINTIFFS HAVE NOT STATED A PRIMA FACIE CASE FOR PERSONAL JURISDICTION OVER THE FOUNDATION.........................6

        A.    There Is No General Jurisdiction Over The Foundation, Because Plaintiffs Do Not Allege *Any* Contacts By The Foundation With New York Or The United States. .................................................................6

        B.    There Is No Specific Jurisdiction Over the Foundation, Because Plaintiffs' Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient.....................................................................8

            1.    Islamist Operations [] Targeting Russia ................9

            2.    The July 2002 Seminar.......................................10

            3.    Allegations Regarding Kenya...............................10

            4.    Conclusory RICO Statement Allegations ............11

    II    THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST THE FOUNDATION.........................................................13

        A.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That *Any* Actions By The Foundation Proximately Caused Plaintiffs' Injuries. .........................14

B.     Plaintiffs Have Failed To Plead Facts Sufficient To State Any Causes Of Action.............................................................................................................18

    1.    Trespass -- *Continental, Federal*, and *Euro Brokers* Count 1; *WTC* Count 5.............................................................................18

    2.    RICO -- *Continental* Count 2; *Federal* Count 8; *Euro Brokers* Counts 3, 4, and 5; *WTC* Counts 2, 3, and 4; *Burnett* Counts 11, 12, and 13 .........................................................................19

    3.    Anti-Terrorism Act -- *Federal* Count 10; *Euro Brokers* Count 2; *WTC* Count 1; *Burnett* Count 3 ...............................................20

    4.    Conspiracy and Aiding and Abetting -- *Federal* Counts 7 and 9; *Euro Brokers* Counts 2, 7, and 8; *WTC* Counts 7 and 8; *Burnett* Counts 9 and 10; *Continental* Count 3........................................21

    5.    Torture Victims Protection Act -- *Federal* Count 6; *Burnett* Count 2 ...................................................................................21

    6.    Wrongful Death/Survival -- *Federal* Counts 2 and 3; *Burnett* Counts 5 and 7 ...................................................................21

    7.    Negligence -- *Federal Insurance* Count 11; *Burnett* Count 6....................22

    8.    Assault and Battery -- *Federal* Count 4; Intentional Infliction of Emotional Distress --  *Federal* Count 5; *Burnett* Count 8.................22

    9.    Violation of International Law -- *WTC* Count 9, *Euro Brokers* Count 6 .................................................................................22

    10.    Alien Tort Claims Act -- *Burnett* Count 4...............................................24

    11.    Property Destruction -- *WTC* Count 6 ...................................................24

    12.    Punitive Damages -- *Federal* Count 12; *Euro Brokers* Count 9; WTC ¶¶ 1180 - 1183; *Burnett* Count 14 ...............................25

CONCLUSION ..............................................................................................................25

## TABLE OF AUTHORITIES

Cases

In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) ........................................................................18

Alexander v. Sandoval,
    532 U.S. 275 (2001) ............................................................................................23

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989) ............................................................................................23

Atuahene v. City of Hartford,
    2001 WL 604902 (2d Cir. May 31, 2001) ...........................................................17

Bao Ge v. Li Ping,
    201 F. Supp. 2d 14 (D.D.C. 2000) ......................................................................24

Beanal v. Freeport-McMoRan, Inc.,
    969 F. Supp. 362 (E.D.La. 1997) ........................................................................21

Bellepointe v. Kohl's Dep't Stores, Inc.,
    975 F. Supp. 562 (S.D.N.Y. 1997) ......................................................................11

Burnett v. Al Baraka Inv. & Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) ......................................................................19

Calder v. Jones,
    465 U.S. 783 (1984) ..........................................................................................6, 8

Cantor Fitzgerald, Inc. v. Lutnick,
    313 F.3d 704 (2d Cir. 2002) ................................................................................13

Cortec Indus. v. Sum Holding, L.P.,
    949 F.2d 42 (2d Cir. 1991) ...............................................................9, 10, 15, 16

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) .............................................................................13, 20

Doe v. Islamic Salvation Front,
    257 F. Supp. 2d 115 (D.D.C. 2003) ....................................................................24

Dreyfus v. von Finck,
    534 F.2d 24 (2d Cir. 1976) ..................................................................................23

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................................................19

Filartiga v. Pena-Irala,
    630 F.2d 876 (2d Cir. 1980) ................................................................................21

Friedman v. Bayer Corp.,
    1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ............................................................... 21, 22

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ............................................................... 12, 17

Gold v. Fields,
    1993 WL 212672 (S.D.N.Y. June 14, 1993) ...................................................................... 6

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir.  1981) ............................................................................................ 21

Hanoch Tel-Oren v. Libyan Arab Republic,
    517 F. Supp. 542 (D.D.C. 1981) ...................................................................................... 24

Hayden v. Pataki,
    2004 WL 1335921 (S.D.N.Y. June, 14, 2004) ................................................................ 22

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 413 (1984) ........................................................................................................... 7

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ......................................................................................................... 13

Howard v. Klynveld Peat Marwick Goerdeler,
    977 F. Supp. 654 (S.D.N.Y. 1997) .................................................................................... 7

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ......................................................................................... 6, 11

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) ......................................................................................... 21, 22

Khalid v. Bush,
    355 F. Supp. 2d 311 (D.D.C. 2005) ................................................................................. 23

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ....................................................................................... 13, 19

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998) ................................................................................. 8

Leasco Data Processing Equip. Corp. v. Maxwell,
    468 F.2d 1326 (2d Cir. 1972) ............................................................................................ 8

Lehigh Valley Indus., Inc. v. Birenbaum,
    527 F.2d 87 (2d Cir. 1975) ......................................................................................... 6, 11

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004) ............................................................................. 20

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) .............................................................................................. 13

Mende v. Milestone Tech. Inc.,
   269 F. Supp. 2d 246 (S.D.N.Y. 2003)...........................................................6

Moss v. Morgan Stanley Inc.,
   719 F.2d 5 (2d Cir. 1983).........................................................................19

Nat'l Org. for Women, Inc. v. Scheidler,
   510 U.S. 249 (1994)................................................................................19

People v. Keech,
   467 N.Y.S.2d 786, 121 Misc. 2d 368 (Sup. Ct. 1983)........................................24

People v. Summer,
   407 N.Y.S.2d 53, 64 A.D.2d 658 (App. Div. 1978) .........................................24

Pittman v. Grayson,
   149 F.3d 111 (2d Cir. 1998) .....................................................................14

Reers v. Deutsche Bahn AG,
   320 F. Supp. 2d 140 (S.D.N.Y. 2004).............................................................7

In re S. African Apartheid Litig.,
   346 F. Supp. 2d 538 (S.D.N.Y. 2004).......................................................23, 24

S.E.C. v. Unifund SAL,
   910 F.2d 1028 (2d Cir. 1990).......................................................................8

Small v. Lorillard Tobacco Co.,
   94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999).....................................................21

Smith v. County of Erie,
   295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. 2002)...............................................25

Sosa v. Alvarez-Machain,
   542 U.S. 692, 124 S. Ct. 2739 (2004)..........................................................22

Spoto v. Herkimer County Trust,
   2000 WL 533293 (N.D.N.Y. Apr. 27, 2000)......................................................6

Tel-Oren v. Libyan Arab Republic,
   726 F.2d 774 (D.C. Cir. 1984)....................................................................24

In re Terrorist Attacks on Sept. 11, 2001,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................................................*passim*

Tornheim v. Federal Home Loan Mortg. Corp.,
   988 F. Supp. 279 (S.D.N.Y. 1997)................................................................18

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
   241 F.3d 135 (2d Cir. 2001).......................................................................6

United States v. Yousef,
   327 F.3d 56 (2d Cir. 2003).......................................................................20

Wantanabe Realty Corp. v. City of New York,
  2003 WL 22862646 (S.D.N.Y. Dec. 3, 2003) ................................................................. 18

York v. Bar of the City of New York,
  286 F.3d 122 (2d Cir. 2002) ......................................................................................... 13

Statutes

18 U.S.C. §§ 2331-2333a (2000) ...................................................................................... 20

18 U.S.C. § 32 (1996) ....................................................................................................... 23

28 U.S.C. § 1350 (1993) ................................................................................................... 24

28 U.S.C.A. § 1350, note § 2(a) (1993) ........................................................................... 21

49 U.S.C. § 46502 (1996) ................................................................................................. 23

Miscellaneous

5C Wright & Miller, Federal Practice & Procedure § 1363, 120-21 (3d Ed. 2004) ......................... 10, 16

## INTRODUCTION

Defendant Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation ("Foundation") respectfully submits this Memorandum of Law in support of its motion to dismiss the claims against it by all plaintiffs in the Third Amended Complaint in *Burnett v. Al Baraka Investment & Development, Corp.,* 03 Civ. 5738 ("*Burnett*"); the Complaint in *World Trade Center Properties LLC v. Al Baraka Investment & Development, Corp.,* 04 Civ. 7280 ("*WTC*"); the Complaint in *Euro Brokers, Inc. v. Al Baraka Investment & Development, Corp.,* 04 Civ. 7279 ("*Euro Brokers*"); the First Amended Complaint in *Federal Insurance Co. v. Al Qaida,* 03 Civ. 6978,("*Federal*") and the First Amended Complaint in *Continental Casualty Co., et al. v. Al Qaeda Islamic Army,* 04 Civ. 5970 ("*Continental*") (collectively, "Complaints") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  For all the reasons set forth herein and in the remainder of the record, this motion should be granted in all respects.

## PRELIMINARY STATEMENT

In the Complaints, plaintiffs seek to hold the Foundation liable for the horrific events of September 11, 2001.  Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any connection between the Foundation and those events.  Moreover, the Complaints do not contain any allegations that even purport to establish that the Foundation had any contacts with the United States, let alone minimum contacts sufficient to establish personal jurisdiction over the Foundation.  Accordingly, plaintiffs' claims should be dismissed in their entirety pursuant to Rule 12(b)(2), or alternatively, Rule 12(b)(6).

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

Other than being named in the caption of the *Euro Brokers* Complaint, there are no allegations therein that reference the Foundation.  Similarly, the only reference in the 182-page *Federal* Complaint against the Foundation is that it, along with numerous other defendants, has

"aided and abetted, conspired with, and provided material support and resources to al Qaida and affiliated FTO's, associations, organizations or persons."  See *Federal* Complaint ¶ 66.  The averments concerning the Foundation in the *Federal* and *Euro Brokers* RICO Statements mimic the nearly identical eleven paragraphs from the voluminous *Continental*, *Burnett*, and *WTC* Complaints relating to the Foundation, a charitable foundation established in 1989 by a Royal Decree of the King of Saudi Arabia:

A.   **Jurisdictional Allegations**

- In 1990, Abdul Aziz Al Ibrahim, created the Foundation whose official stated aim is humanitarian assistance.  The organization is present in Kenya, Bosnia, Chechnya, South America and Southern Asia.  See *Continental* Complaint ¶ 313; *Burnett* Complaint ¶ 415; *WTC* Complaint ¶ 751; *Euro Brokers* RICO Statement, Ex. A, p. 1; *Federal* RICO Statement, p.7.

B.   **Allegations Regarding Acts In Kenya**

- The organization's branch in Nairobi in Kenya was associated with Bin Laden's network according to the FBI's investigation into the attacks against the American embassies on August 7, 1998.  See *Continental* Complaint ¶ 314; *Burnett* Complaint ¶ 417; *WTC* Complaint ¶ 753; *Euro Brokers* RICO Statement, Ex. A, p. 1; *Federal* RICO Statement, p. 7.

- In September 1998, the Kenyan government canceled the registration of five Islamic relief agencies for allegedly supporting terrorism including Defendant Al-Haramain Foundation, Help African People, The Islamic Relief Organization, the Foundation, and Mercy Relief International.  The authorities claimed that materials for the bomb were smuggled in as relief aid with the help of Islamic relief agencies.  See *Continental* Complaint ¶ 315; *Burnett* Complaint ¶ 418; *WTC* Complaint ¶ 754; *Federal* RICO Statement, p. 8; *Euro Brokers* RICO Statement, Ex. A, pp. 2-3 ("[T]he Kenyan government's response to the embassy bombings "was to crack down indiscriminately against foreigners and Muslim-run nongovernmental organizations (NGO's).").

- After several organizations appealed this decision, Kenya's High Court blocked the de-registration of four of the five non-governmental organizations.  The International Islamic Relief Organization, Muslim World League, Al-Haramain Foundation, and Mercy International Relief Agency can however still operate pending appeal.  Only the Foundation did not ask the court for an appeal.  See *Continental* Complaint ¶ 317; *Burnett* Complaint ¶ 420; *WTC* Complaint ¶ 756; *Euro Brokers* RICO Statement, Ex. A, p. 2; *Federal* RICO Statement, pp. 8-9.

C.      **Allegations Regarding "Islamist Operations [] Targeting Russia"**

- In a study paper dated October 1999, called "The New Azerbaijan Hub: How Islamist operations are targeting Russia, Armenia and Nagorno-Karabagh," Yossef Bodansky, Senior Editor of Defense and Foreign Affairs' Strategic Policy refers to the Foundation as one of those which provided help to Bin Laden:

  > The key Islamist facilities are concealed as charity and educational organizations affiliated with the web used by bin Laden's networks.  Moreover, the headquarters of these organizations are staffed with Arab "teachers" and "managers" from the ranks of such organizations as the International Muslim Brotherhood, the Islamic Salvation Front, several branches of Islamic Jihad, and the National Islamic Front of SUDAN.  The key organizations are . . . Al Ibrahim Foundation.  Very little is known about this Baku-based charity except that its Arab principals have huge amounts of cash in hard currency.  See *Continental* Complaint ¶ 318; *Burnett* Complaint ¶ 421; *WTC* Complaint ¶ 757; *Euro Brokers* RICO Statement, Ex. A, p.3; *Federal* RICO Statement, p. 9.

- Reports suggested that the Foundation, was funding the Islamic Movement of Uzbekistan ("IMU"), an affiliate of Al Qaeda, whose leaders met Bin Laden in 1999 in Kandahar, Afghanistan.  The IMU received $270,000 dollars from the Foundation.  See *Continental* Complaint ¶ 319; *Burnett* Complaint ¶ 422; *WTC* Complaint ¶ 758; *Euro Brokers* RICO Statement, Ex. A, p.3; *Federal* RICO Statement, p. 9.

- In 1999, the Russian special services and reconnaissance disseminated a report stating that Chechen militants were allegedly being trained in three paramilitary bases in Azerbaijan and that three Islamic organizations – the Foundation, World Youth Islamic Assembly and Islamic Rescue Organization – had taken part in setting up these bases.  See *Continental* Complaint ¶ 320; *Burnett* Complaint ¶ 423; *WTC* Complaint ¶ 759; *Euro Brokers* RICO Statement, Ex. A, pp. 3-4; *Federal* RICO Statement, p. 10.

D.      **Allegations Regarding A July 2002 Seminar**

- In July 2002, more than a hundred young men from various regions of Russia attended a seminar organized by the clerical board of Muslims of the Asian part of Russia at Pervouralsk.  The official goal of the event was to instruct to religious matters.  One of the courses was based upon a study in sharia disciplines, published by the Foundation.  See *Continental* Complaint ¶ 321; *Burnett* Complaint ¶ 424; *WTC* Complaint ¶ 760; *Euro Brokers* RICO Statement, Ex. A, p.5; *Federal* RICO Statement, p. 10.

- The seminar took place in the Middle Urals Kaziat Muslim community, where in 1995 Defendant Abdullah Bin Abdul Mushen Al Turki created a Joint Committee for Islamic Action and Studies with representatives from Defendants Muslim World League, IIRO, WAMY, along with the Foundation.  See *Continental* Complaint ¶ 323; *Burnett* Complaint ¶ 426; *WTC* Complaint ¶ 762; *Euro Brokers* RICO Statement, Ex. A, p.5.

E.    **Plaintiffs' RICO Statements**

In nearly identical RICO Statements[1] -- which, as discussed below, cannot be considered on an amendment to the Complaints and, in any event, may only be considered in connection with plaintiffs' RICO claims -- plaintiffs attempt to allege that the Foundation conspired with Al Qaeda in connection with the events of September 11, 2001, with the following allegations:

- The Foundation used banking and financial operations to knowingly and intentionally provide financial services and material support to Al Qaeda and its members, as well as organizations which it knew were providing material support to the Enterprise.  See ¶ 5(b) of the *Continental*, *Euro Brokers*, and *WTC* RICO Statements.

- The Foundation[2] consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions.  See ¶ 5(f) of the *Continental*, *Federal*, *Euro Brokers*, and *WTC* RICO Statements.

- The Foundation fit neatly into the Al Qaeda framework by providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack by engaging in money laundering and tax evasion.  See ¶ 6(b) of the *Continental*, *Federal*, *Euro Brokers*, and *WTC* RICO Statements.

- The Al Qaeda enterprise relied on well-placed financial facilitators, including the Foundation, and laundered funds from Islamic so-called charities and corporations.  The financial facilitators also raised money from donors and relied heavily on certain individuals at mosques who were willing to divert *Zakat* funds.  See ¶ 14 of the *Continental*, *Federal*, *Euro Brokers*, and *WTC* RICO Statements.

- The funds raised were used for such purposes as operation of terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but others were trained in terrorist tactics. . . .  None of this would have been possible without the funds supplied by participants and conspirators like the Foundation.  Id.

- In March 2002, searches by Bosnian authorities of BIF's offices in Sarajevo, Bosnia-Herzegovina (operating under the name *Bosanska Idealna Futura*) yielded a substantial

---

[1] RICO Statements were submitted by the *Continental, Federal, Euro Brokers* and *WTC* plaintiffs, and are referred to herein as the "RICO Statements."

[2] In the *Federal* RICO Statement, plaintiffs do not even make this allegation directly against the Foundation, alleging that "Other of the defendants consistently, even constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and obfuscate their support of the al Qaida movement. " *Federal* RICO ¶ 5(f) (emphasis added).

amount of evidence shedding light on the network al Qaeda established, including links to Al-Ibrahim. . . .  Shortly thereafter, the offices of al Haramain were raided in Bosnia, as well.  In that raid they came across documents containing the home and office phone numbers of Al Ibrahim and the Foundation.  See *Federal* RICO Statement, p. 11; Ex. A, p.11 of the *Euro Brokers* and *WTC* RICO Statements; *Continental* RICO Statement, Ex. A.

- Fazul Abdullah Mohammed, an al Qaeda operative implicated in the 1998 U.S. Embassy bombings, was arrested and searched by Kenyan authorities.  One of the items seized with him was a notebook containing the business card of the Foundation's director, Abdul Kader M. Izzi.  See Ex. A, p. 2, of the *Euro Brokers* and *WTC* RICO Statements; page 8 of the *Federal* RICO Statement; *Continental* RICO Statement, Ex. A.

Finally, the RICO Statements contain inflammatory allegations regarding the Foundation's purported complicity in "religious extremism."[3]

The foregoing are the only specific allegations in plaintiffs' voluminous Complaints and RICO Statements against the Foundation.  That is significant because there are no allegations purporting to link the Foundation with the United States.  Moreover, as demonstrated below, even if there was jurisdiction over the Foundation (which there is not), and even if plaintiffs' allegations were true (which they are not), plaintiffs fail to state a claim against the Foundation.

## **ARGUMENT**

Plaintiffs' claims against the Foundation should be dismissed for two reasons.  First, the Complaints should be dismissed pursuant to Rule 12(b)(2), because plaintiffs offer no allegations in the Complaints to support a finding of personal jurisdiction over the Foundation.  Second, the Complaints should be dismissed pursuant to Rule 12(b)(6), because plaintiffs fail to state any claims against the Foundation.[4]

---

[3] See *Euro Brokers* and *WTC* RICO Statements Ex. A, p.6, *Federal* RICO Statement, p. 12; *Continental* RICO Statement Ex. A.  See also *Federal*, *Euro Brokers*, and *WTC* RICO Statements Ex. A, pp. 4-5.

[4] The *Continental*, *Euro Brokers* and *WTC* RICO Statements cannot be deemed amendments to the complaints.  See Instructions For Filing RICO Statement, available at www.nysd.uscourts.gov/Individual_Practices/rico.pdf ("parties asserting claims pursuant to the [RICO Act], must file and serve upon the opposing party a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim."); Order, Aug. 23, 2005 (MDL Docket No. 1144); Spoto v. Herkimer County

# I

## PLAINTIFFS HAVE NOT STATED A PRIMA FACIE CASE
## FOR PERSONAL JURISDICTION OVER THE FOUNDATION.

Plaintiffs bear the burden of establishing personal jurisdiction over the Foundation.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005).  To survive a motion to dismiss, plaintiff must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction.  See id. at 809.  "Conclusory, non-fact-specific allegations" are insufficient to establish jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d Cir. 1998); see also Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975).  Courts may "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  Mende v. Milestone Tech. Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); see also In re Sept. 11 Attacks, 349 F. Supp. 2d at 804.  In addition, due process requires that a plaintiff allege facts showing that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (quoting Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotations omitted)).

## A.   There Is No General Jurisdiction Over The Foundation, Because Plaintiffs Do Not Allege *Any* Contacts By The Foundation With New York Or The United States.

To establish general jurisdiction under C.P.L.R. § 301, a plaintiff must allege that, as a result of a defendant's contacts with New York, the defendant is "engaged in a continuous and systematic

---

Trust, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO Statement."); Gold v. Fields, 1993 WL 212672, at *5 n.5 (S.D.N.Y. June 14, 1993) ("[T]he [RICO] Statement . . . only seeks information plaintiffs should already have in their possession before filing their complaint.").  In any event, the RICO Statements may only be considered in connection with plaintiffs' RICO claims and, even if the allegations are considered, plaintiffs' claims should be dismissed.

course of 'doing business' . . . to warrant a finding of its 'presence' in this jurisdiction."  See Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 149 (S.D.N.Y. 2004) (citations omitted).  When long-arm jurisdiction is based upon contacts with the nation as a whole, a plaintiff must also demonstrate minimum contacts.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 808.  Similarly, when a federal claim is made against a foreign defendant not subject to jurisdiction in any state, "[p]ersonal jurisdiction based on Rule 4(k) requires minimum contacts with the United States to satisfy Fifth Amendment due process requirements."  Id. at 807, 811 ("a considerably higher level of contacts is generally required" to plead general jurisdiction).  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 413, 414-16 (1984).

Here, there is not a single allegation in plaintiffs' voluminous Complaints or RICO Statements that even purports to link the Foundation to the United States.  To the contrary, according to plaintiffs, the Foundation "is present in Kenya, Bosnia, Chechnya, South America, and Southern Asia."[5]  Thus, by plaintiffs' own admission, the Foundation only operates abroad.  Given that plaintiffs do not allege that the Foundation had any contacts, let alone minimum contacts, with the United States, this Court does not have jurisdiction over the Foundation.  See Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 661 (S.D.N.Y. 1997) (to establish general jurisdiction,  a defendant must be "engaged in [] a continuous and systematic course of 'doing business' . . . as to warrant a finding of its 'presence' in the jurisdiction").  Plaintiffs simply tender nothing that could conceivably be read to mean that the Foundation has had the purposeful contacts necessary to establish general personal jurisdiction.  Id.  Accordingly, there is no general jurisdiction over the Foundation.

---

[5] See Continental Complaint ¶ 313; WTC Complaint ¶ 751; Burnett Complaint ¶ 415; Ex. A, p.7 of the Euro Brokers and Federal RICO Statements.

**B.      There Is No Specific Jurisdiction Over the Foundation, Because Plaintiffs'
Conclusory Conspiracy And Aiding And Abetting Allegations Are Insufficient.**

Under C.P.L.R. § 302(a)(2), "acts committed in New York by . . . co-conspirator[s] of an
out-of-state defendant pursuant to a conspiracy may subject the defendant to [personal]
jurisdiction." In re Sept. 11 Attacks, 349 F. Supp. 2d at 805 (citation omitted).  However, "[b]efore
jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege
both a *prima facie* case of conspiracy, and allege *specific facts* warranting the inference that the
defendants were members of the conspiracy and set forth *evidentiary facts* to connect the defendants
with the conspiracy." Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F. Supp. 2d
593, 601-02 (S.D.N.Y. 1998) (internal quotations and citation omitted, emphases added).  Thus,
here, "[p]ersonal jurisdiction cannot be based on a New York long-arm conspiracy theory" unless
plaintiff "alleges [] specific facts from which the Court could infer that [defendant] directed,
controlled, or requested al Qaeda to undertake its terrorist activities." See In re Sept. 11 Attacks,
349 F. Supp. 2d at 806.

In addition, to satisfy due process, plaintiff must properly allege some tortious act by a
defendant and allege facts showing that said defendant "expressly aimed" such a tortious act at the
forum.  Calder, 465 U.S. at 789; In re Sept. 11 Attacks, 349 F. Supp. 2d at 816 (granting motion to
dismiss because plaintiffs must "allege personal acts by [the defendant] by which he purposefully
directed his activities at the United States").  Moreover, a foreign defendant may be subject to
personal jurisdiction only where it "has good reason" to know that its conduct will have a "direct"
effect in the forum.  See Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1341 (2d
Cir. 1972) (exercise of personal jurisdiction based upon alleged effects in New York "must be
applied with caution, particularly in an international context"); S.E.C. v. Unifund SAL, 910 F.2d
1028, 1033 (2d Cir. 1990).  As demonstrated below, plaintiffs' allegations fall far short of satisfying
any of these jurisdictional requirements.

**1.     Islamist Operations [] Targeting Russia**

Plaintiffs' allegations relating to "Islamist operations [] targeting Russia"[6] are not even alleged to be linked to the September 11, 2001 attacks.  Indeed, there is no connection between aggression against Islamic groups in Chechnya and the former Soviet Union and plaintiffs' allegations regarding Al Qaeda, and those allegations certainly do not support an inference that the Foundation directed any activities at the United States.  Similarly, plaintiffs' attempt to link the Foundation with Al Qaeda based on the allegation that the Foundation made a donation to the IMU fails, because there is no alleged connection between any alleged funding of the IMU and Al Qaeda, let alone any allegation that the Foundation knew of any such connection.  Moreover, the IMU was founded "with two main objectives: to overthrow Karimov's secular regime and to create an Islamic state in Uzbekistan" as a result of the "repressive policy towards its Muslim citizens."[7]  In sum, plaintiffs' allegations regarding aggression against Islamic groups and Chechen militants are not even alleged to be related to plaintiffs' allegations against Al Qaeda and, therefore, are not a basis for jurisdiction over the Foundation.  See, e.g., In re Sept. 11 Attacks, 349 F. Supp. 2d at 833, 835 ("Plaintiffs' allegations that Al Rajhi Bank has connections to Hamas supporters fails to state a claim because Plaintiffs have not alleged any relationship between Hamas and al Qaeda" and "[w]hile claiming Arab Bank has ties with known Hamas fronts, the *Federal* complaint does not contain any allegation of a connection between Hamas and Osama bin Laden").

---

[6] See *Continental* Complaint ¶¶ 318-320; *WTC* Complaint ¶¶ 757-759; *Burnett* Complaint ¶¶ 421-423; *Federal* RICO Statement, pp. 9-10; *Euro Brokers* RICO Statements, Ex. A, pp. 3-4.

[7] See Odil Ruzaliev, Islam in Uzbekistan: Implications of 9/11 and Policy Recommendations for the United States, 25 J. Muslim Minority Aff. 13, 17 (2005), attached to the Declaration of Daniel L. Brown, dated October 3, 2005 ("Brown Dec."), as Exhibit A.  See also Cortec Indus. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (Court may consider documents referenced in Complaint).

2.      **The July 2002 Seminar**

There is no rational relationship between the events of September 11, 2001 and a seminar that allegedly took place in Russia in July 2002,[8] almost one year after the events at issue.

3.      **Allegations Regarding Kenya**

Plaintiffs' allegations concerning alleged wrongdoing by the Foundation in connection with the 1998 United States embassy bombing in Kenya are premised on the allegation that the Foundation "did not ask the court for an appeal" of a deregistration by Kenya's High Court.[9] However, not only did the Foundation appeal its deregistration, it was successful in that appeal, and was reinstated.[10]  In addition, plaintiffs acknowledge that the article from which the foregoing allegations were copied demonstrates that the Kenyan government's response to the embassy bombings "was to crack down indiscriminately against foreigners and Muslim-run nongovernmental organizations (NGO's)."[11]  Thus, plaintiffs' allegations are contradicted by their own source materials and, therefore, should be disregarded.[12]  In addition, the conclusory allegations that the

---

[8] See Continental Complaint ¶¶ 321-323; Burnett Complaint ¶¶ 424-426; WTC Complaint ¶¶ 760-762; Euro Brokers RICO Statement, Ex. A, p.5; Federal RICO Statement, pp. 10-11.

[9] See Continental Complaint ¶¶ 314-317; Burnett  Complaint ¶¶ 417-420; WTC Complaint ¶¶ 753-756; Euro Brokers RICO Statement, Ex. A, p. 2; Federal RICO Statement, pp. 8-9 ("only the Ibrahim Bin Abdul Aziz al Ibrahim Foundation did not seek an appeal").

[10] See Notification of Intended Cancellation of Registration, dated December 15, 1998 ("Please be informed that the NGO's Co-ordination Board has resolved to **withdraw** the notices of INTENDED cancellation of your registration earlier sent to you by the Chairman of the Board.  You are now free to continue your operations as a registered NGO."); Order, dated December 16, 1998 (quashing decision to cancel registration of NGO), attached to the Brown Dec. as Exhibits B and C.

[11] See, e.g., Euro Brokers RICO Statement, Ex. A, pp. 2-3 (emphasis added); Human Rights Watch, World Report 1999, Kenya: Human Rights Developments (same), attached to the Brown Dec. as Exhibit D.

[12] See Cortec, 949 F.2d  at 47-48 (Court may consider documents referenced in Complaint); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1363, 120-21 (3d Ed. 2004) (Court will not accept allegations contradicted by allegations incorporated in Complaint).

Foundation was "allegedly supporting terrorism" and "was associated with Bin Laden's network in Kenya" are not supported by any factual allegations against the Foundation.[13]

### 4.   Conclusory RICO Statement Allegations

The numerous conclusory allegations in the RICO Statements -- which, as discussed above should not be considered on this motion -- lump the Foundation with so-called "financial facilitators," "sponsors," and "charities" alleged to have provided support to Al Qaeda.[14]  However, those allegations, which fail to identify any acts by the Foundation, and are not supported by any factual allegations, are insufficient to establish jurisdiction over the Foundation.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801, 805-06 ("Without supporting factual allegations, [plaintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11] is insufficient to establish . . . personal jurisdiction [] on a New York long-arm conspiracy theory."); see also Jazini, 148 F.3d at 184-85 (conclusory statement of law couched as factual allegation insufficient to establish personal jurisdiction; plaintiff must allege supporting facts); Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564-65 (S.D.N.Y. 1997) (to state prima facie case for jurisdiction, "plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction"); Lehigh Valley, 527 F.2d at 93-94 ("bland assertion of conspiracy . . . is insufficient to establish [personal] jurisdiction").  As such, plaintiffs' conclusory allegations that the Foundation "fit neatly into this framework by raising and providing funds for and otherwise providing material support for Al Qaeda,"[15] "consistently and constantly laundered money,"

---

[13] Indeed, the allegation that "authorities claimed that materials for the bomb were smuggled in as relief aid with the help of Islamic relief agencies" does not identify or allege any wrongdoing by the Foundation.  See Continental Complaint ¶ 315; WTC Complaint ¶ 754; Burnett Complaint ¶ 418; Euro Brokers RICO Statement, Ex. A, p. 2; Federal RICO Statement, p. 8.

[14] See Federal RICO Statement, p.4; Continental RICO Statement, p. 4;  ¶ 14 of the Euro Brokers and WTC RICO Statements.

[15] See ¶ 6(b) of the Federal, Continental, Euro Brokers, and WTC RICO Statements.

"committed wire fraud and mail fraud and engaged in illegal transactions,"[16] "raised money from donors, " and "diverted *Zakat* funds," cannot provide a basis for the exercise of jurisdiction over the Foundation.[17]

In addition, the allegations in the RICO Statements that attempt to link the Foundation with Al Qaeda based on allegations against all defendants "like" or "including" the Foundation[18] are devoid of any factual support whatsoever, and rely "on blanket accusations against Defendants as a group, without delineating their respective actions." Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999). Such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations." Id.

Finally, the allegation that a telephone number of a director of the Foundation was located in Bosnia does not come close to an allegation that the Foundation was at all involved with Al Qaeda, or directed any activities at the United States. See, e.g., In re September 11 Attacks, 349 F.Supp. 2d at 818 ("[t]he 'Golden Chain' [document] does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office . . . it does not demonstrate that [defendant] purposefully directed his activities at the United States.").

In sum, plaintiffs' allegations group the Foundation with all "defendants" and do not in any way support an inference that the Foundation had any knowledge of Al Qaeda's plans to attack the

---

[16] See *Continental* RICO Statement, p. 3.

[17] See ¶ 14 of the *Euro Brokers, Continental, Federal,* and *WTC* RICO Statements. Similarly, plaintiffs' conclusorily allege that the Foundation used "banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda." See ¶ 5(b) of the *Continental, WTC* and *Euro Brokers* RICO Statements. However, there are no allegations regarding the Foundation's involvement in *any* supposed banking or financial operations.

[18] See ¶ 14 of the *Continental, Federal, Euro Brokers* and *WTC* RICO Statements ("The Al Qaeda enterprise relied on well-placed financial facilitators, including the Foundation. . . . The funds raised were used for such purposes as operation of terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but others were trained in terrorist tactics. . . . None of this would have been possible without the funds supplied by participants and conspirators like the Foundation.").

United States, let alone that the Foundation "directed, " "controlled," "consented to," or requested that Al Qaeda perpetrate the September 11, 2001 tragedies.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 806.  Accordingly, the claims against the Foundation should be dismissed pursuant to Rule 12(b)(2).

## II

### THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST THE FOUNDATION.

"To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."  York v. Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  Further, it is well settled that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)); see also Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) ("legal conclusions, deductions or opinions couched as factual allegations" do not suffice to prevent dismissal); Cantor Fitzgerald, Inc. v. Lutnick, 313  F.3d 704, 709 (2d Cir. 2002) (Court should give "no credence" to conclusory allegations).

Moreover, to properly state each of plaintiffs' claims, plaintiffs must allege that some act or omission by the Foundation proximately caused the alleged injuries, here the terrorist attacks on September 11, 2001.  See In re Sept. 11 Attacks, 349 F. Supp. 2d at 797 n.26; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege facts showing "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable").  Moreover, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must allege the particular elements of either conspiracy and aiding and abetting

as to each defendant.  In re Sept. 11 Attacks, 349 F. Supp. 2d at 826.  "The elements of concerted

action liability are (1) an express or tacit agreement to participate in a common plan or design to

commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the

defendants, in pursuance of the agreement, of an act that constitutes a tort."  Pittman v. Grayson,

149 F.3d 111, 122 (2d Cir. 1998) (citations omitted).  Finally, "[c]onspiracy . . . requires an agreement

to commit a tortious act [and] aiding and abetting requires that the defendant have given 'substantial

assistance or encouragement' to the primary wrongdoer."  Id. at 122-23 (citations omitted).  Each

theory also requires allegations that a defendant had actual knowledge of the wrongful nature of the

primary actor's conduct.  Id.

**A.     Plaintiffs Have Failed To Plead Facts Sufficient To Show That *Any*
        Actions By The Foundation Proximately Caused Plaintiffs' Injuries.**

A review of plaintiffs' allegations describing acts taken by the Foundation demonstrates that

those allegations are not in any way connected with the relevant averments against Al Qaeda.

First, plaintiffs' allegations relating to "Islamist operations [] targeting Russia"[19] are not even

alleged to be linked to the September 11, 2001 attacks.  Indeed, in the "study paper" cited by

plaintiffs as purported support for those allegations, the author concedes that he knows "very little"

about the Foundation "except that its Arab principals have huge amounts of cash."[20]  Moreover,

there is no alleged connection between the alleged funding of the IMU and Al Qaeda, let alone any

allegation that the Foundation was aware of any alleged support of Al Qaeda.  In addition, the IMU

was founded "with two main objectives: to overthrow Karimov's secular regime and to create an

---

[19] See *Continental* Complaint ¶¶ 318-320; *WTC* Complaint ¶¶ 757-759;  *Burnett* Complaint ¶¶ 421-423; *Federal* RICO Statement pp. 9-10; *Euro Brokers* RICO statement, Ex. A, pp. 3-4.

[20] See *Continental* Complaint ¶ 318; *Burnett* Complaint ¶ 421; *WTC* Complaint ¶ 757; *Euro Brokers* RICO Statement, Ex. A, p.3; *Federal* RICO Statement, p. 9.

Islamic state in Uzbekistan" as a result of the "repressive policy towards its Muslim citizens."[21]  In

sum, the allegation regarding the IMU is not even alleged to be related to Al Qaeda and, thus,

cannot form the basis of a claim against the Foundation.  See In re Sept. 11 Attacks, 349 F. Supp. 2d

at 833, 835 ("Plaintiffs' allegations that Al Rajhi Bank has connections to Hamas supporters fails to

state a claim because Plaintiffs have not alleged any relationship between Hamas and al Qaeda" and

"[w]hile claiming Arab Bank has ties with known Hamas fronts, the *Federal* complaint does not

contain any allegation of a connection between Hamas and Osama bin Laden, al Qaeda, or the

September 11 attacks.").

Second, plaintiffs allege no facts purporting to link Al Qaeda with a seminar that allegedly

took place in Russia in July 2002, almost one year after the events at issue.[22]  As such, these

allegations cannot support any claims against the Foundation.

Third, plaintiffs' allegations against the Foundation regarding the 1998 embassy bombing in

Kenya are premised on the allegation that the Foundation "did not ask the court for an appeal" of a

deregistration by Kenya's High Court.[23]  However, not only did the Foundation appeal its

deregistration, it was successful in that appeal and was reinstated.[24]  In addition, those allegations are

meritless because, plaintiffs acknowledge, and it is matter of public record that the Kenyan

government's response to the embassy bombings "was to crack down indiscriminately against

---

[21] See Ruzaliev, supra note 7, at 17.  See Cortec, 949 F.2d 42 at 47-48 (Court may consider documents referenced in Complaint).

[22] See *Continental* Complaint ¶¶ 321-323; *Burnett* Complaint ¶¶ 424-426; *WTC* Complaint ¶¶ 760-762; *Euro Brokers* RICO Statement, Ex. A, p.5;  *Federal* RICO Statement, pp. 10.

[23] See *Continental* Complaint ¶¶ 314-317; *Burnett* Complaint ¶¶ 417-420; *WTC* Complaint ¶¶ 753-756; *Euro Brokers* RICO Statement, Ex. A, p. 2; *Federal* RICO Statement, p. 9 ("only the Ibrahim Bin Abdul Aziz Foundation did not ask the court for a appeal").

[24] See Brown Dec. Exhibits B and C.

foreigners and Muslim-run nongovernmental organizations (NGO's)."[25]   As such, plaintiffs'

allegations are contradicted by their own source materials and, therefore, should be disregarded.[26]

Moreover, the conclusory allegations that the Foundation was "allegedly supporting terrorism" and

"was associated with Bin Laden's network in Kenya,"[27] are not supported by any factual allegations

that implicate <u>the Foundation.</u>[28]

    <u>Fourth</u>, the allegation that a telephone number of a director of the Foundation was

discovered does not come close to an allegation that the Foundation was at all involved with Al

Qaeda.  <u>See</u> <u>In Re September 11 Attacks</u>, 349 F.Supp. 2d at 818 ("[t]he 'Golden Chain' document

does not say what the Plaintiffs argue it says.  It is only a list of names found in a charity's office.  It

does not establish [defendant's] involvement in a terrorist conspiracy culminating in the September

11 attacks").

    <u>Finally</u>, plaintiffs' repeated grouping of the Foundation in the RICO Statements with so-

called "financial facilitators," "sponsors," and "charities" alleged to have provided support to Al

Qaeda,[29] are insufficient to state a claim against the Foundation because plaintiffs do not assert any

factual allegations to support those numerous conclusory allegations.  <u>See</u> <u>In re Sept. 11 Attacks</u>, 349

F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant

---

[25] <u>See</u>, <u>e.g.</u>, *Euro Brokers* RICO Statement, Ex. A, pp. 2-3 (emphasis added).  <u>See</u> <u>also</u> Human Rights Watch, <u>supra</u> note 11 (same).

[26] <u>See</u> <u>Cortec</u>, 949 F.2d 42 at 47-48 (the court may consider documents referenced in plaintiffs' complaint); Wright & Miller, <u>supra</u> note 12, at 120-21 (on Rule 12 motion, "court will not accept as true pleading allegations that are contradicted by . . . other allegations.").

[27] <u>See</u> *Continental* RICO Statement, p. 6; *Federal* RICO Statement, p. 7; *Euro Brokers* RICO Statement, p. 1.

[28] The allegation that "authorities claimed that materials for the bomb were smuggled in as relief aid with the help of Islamic relief agencies" does not identify or allege any wrongdoing <u>by the Foundation</u>.  <u>See</u> *Continental* Complaint ¶ 315; *WTC* Complaint ¶ 754; *Burnett* Complaint ¶ 418; *Euro Brokers* RICO Statement, p. 2; *Federal* RICO Statement, p. 8.

[29] <u>See</u> *Federal* and *Continental* RICO Statements, p.4; ¶ 14 of the *Euro Brokers* and *WTC* RICO Statements.

knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  As such, the conclusory allegations, unsupported by factual allegations, that the Foundation "fit neatly into this framework by raising and providing funds for and otherwise providing material support for Al Qaeda,"[30] "consistently and constantly laundered money, provided material support for terrorism, committed wire fraud and mail fraud and engaged in illegal transactions in monetary instruments,"[31] "raised money from donors," and "diverted *Zakat* funds" cannot establish that the Foundation proximately caused anything.[32]

Similarly, plaintiffs' allegations against all defendants "like" or "including" the Foundation,[33] are devoid of any factual support whatsoever, and rely "on blanket accusations against Defendants as a group, without delineating their respective actions."  Glasheen, 1999 WL 1249409 at *1.  Such "over-inclusive approach renders it virtually impossible for each Defendant [here, the Foundation] to respond to the allegations."  Id.; Atuahene v. City of Hartford, 2001 WL 604902, at  *34 (2d Cir. May 31, 2001) ("By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum [pleading] standard.") (internal citation omitted).

---

[30] See ¶ 6(b) of the *Continental, Euro Brokers,* and *WTC*  RICO Statements.

[31] See ¶ 5(f) of the *Euro Brokers, WTC,* and *Federal*  RICO Statements; see also note 2.

[32] Similarly, plaintiffs' conclusory allegations that the Foundation used "banking and financial operations to knowingly and intentionally provide financial services and material support to al Qaeda," see ¶ 5(b) of the *Euro Brokers, WTC,* and *Continental*  RICO Statements, are insufficient to state a claim because there are no allegations regarding the Foundation's involvement in *any* supposed banking or financial operations.

[33] See ¶ 14 of the *Continental, Federal, Euro Brokers* and *WTC* RICO Statements ("The Al Qaeda enterprise relied on well-placed financial facilitators, including the Foundation. . . .  The funds raised were used for such purposes as operation of terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but others were trained in terrorist tactics. . . .  None of this would have been possible without the funds supplied by participants and conspirators like the Foundation").

Given the foregoing, at a minimum, plaintiffs must concede that the Complaints do not allege that the Foundation "agree[d] to commit a tortious act" engaged in any "tortious conduct;" provided "substantial assistance or encouragement" to Al Qaeda or had "actual knowledge" of Al Qaeda's wrongful conduct. See In re Sept. 11 Attacks, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").

At bottom, plaintiffs fail to plead facts to suggest that the Foundation knowingly provided substantial assistance to anyone connected with Al Qaeda and, thus, do not make any allegation against the Foundation that could support a finding of proximate cause as to any claims. Accordingly, the Court should dismiss the Complaints against the Foundation pursuant to Rule 12(b)(6).

**B.**     **Plaintiffs Have Failed To Plead Facts Sufficient To State Any Causes Of Action.**

      **1.**     **Trespass -- C*ontinental, Federal,* and *Euro Brokers* Count 1; *WTC* Count 5**

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act." Tornheim v. Federal Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  The invasion must be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).  Where, as here, plaintiffs rely on an aiding and abetting theory, they must allege that the Foundation "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty." Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *4

(S.D.N.Y. Dec. 3, 2003). Here, plaintiffs have proffered no allegation that the Foundation gave "substantial assistance" or had "actual knowledge" of the attacks, intended any trespass, committed any wrongful act resulting in any trespass, or proximately caused the September 11 attacks.

> **2. RICO -- *Continental* Count 2; *Federal* Count 8; *Euro Brokers* Counts 3, 4, and 5; *WTC* Counts 2, 3, and 4; *Burnett* Counts 11, 12, and 13**

As an initial matter, where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims." Laborers Local, 191 F.3d at 239. Here, plaintiffs' attempt to assert RICO claims as third-party subrogees of injuries to insureds and, therefore, attempt to recover for indirect injuries. Accordingly, plaintiffs lack standing to bring their RICO claims. See Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994) (RICO standing "threshold question" and "represents a jurisdictional requirement"). In addition, because "pecuniary losses that are derivative of personal injuries are not 'business or property' injuries" for purposes of RICO standing, the *Burnett* plaintiffs lack standing. Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d. 86, 100-02 (D.D.C. 2003).

In addition, plaintiffs' allegations regarding the Foundation cannot establish *any* of the requisite elements of a civil RICO claim.[34] Plaintiffs do not allege two predicate acts by the Foundation, or any facts that could show that it entered an agreement to commit two predicate acts. Plaintiffs allege no facts showing that the Foundation engaged in any 'pattern' of 'racketeering activity'; no facts that could imply the Foundation's assent to any RICO conspiracy; no overt acts by

---

[34] The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). Additionally, plaintiffs' Section 1962(a) RICO claim requires an allegation of "injury [resulting] from the defendant's investment of the racketeering income," In re Sept. 11 Attacks, 349 F. Supp. 2d at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation that the defendant "had some part in directing the operation or management of the enterprise," id. at 827; and plaintiffs' Section 1962(d) claim requires an allegation that the defendant was a "central figure" in the underlying scheme. Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003).

the Foundation in furtherance of any alleged conspiracy; no interest of, investment by, or participation by the Foundation in any alleged 'enterprise'; no injury from the Foundation's investment of racketeering income; and no indication that the Foundation was a central figure in, or actively managed, anything whatsoever, let alone that it directed the operation of any 'enterprise.' See Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) (RICO elements "must be tightly particularized").  Moreover, plaintiffs have failed to plead proximate causation.  Plaintiffs thus have completely failed to state a RICO claim against the Foundation.  See e.g., De Jesus, 87 F.3d at 70.

   3.   **Anti-Terrorism Act -- *Federal* Count 10; *Euro Brokers* Count 2; *WTC* Count 1; *Burnett* Count 3**

   Under the Anti-Terrorism Act, a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333a (2000); In re Sept. 11 Attacks, 349 F. Supp. 2d at 828; United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 828 (citation omitted).  Here, plaintiffs propound no factual allegations that the Foundation engaged in any act of assistance to terrorists, much less that the Foundation did so knowingly or with a desire to see a terrorist plot succeed.  Thus, plaintiffs "have not alleged any relationship between [the Foundation] and al Qaeda or the terrorist attacks of September 11."  In re Sept. 11 Attacks, 349 F. Supp. 2d at 833.  Plaintiffs have also failed to plead proximate causation.

4.      **Conspiracy and Aiding and Abetting --** *Federal* **Counts 7 and 9;**
        *Euro Brokers* **Counts 2, 7, and 8;** *WTC* **Counts 7 and 8;** *Burnett,*
        **Counts 9 and 10;** *Continental* **Count 3**

Plaintiffs' conspiracy and aiding and abetting causes of action must be dismissed, because

they are not recognized as independent claims. <u>See</u> <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121,

123 (2d Cir. 1981); <u>Small v. Lorillard Tobacco Co.</u>, 94 N.Y.2d 43, 51 n.3, 57, 720 N.E.2d 892, 895

n.3, 898 (N.Y. 1999).

5.      <u>**Torture Victims Protection Act --** *Federal* **Count 6;** *Burnett* **Count 2**</u>

A private cause of action under the Torture Victims Protection Act, 28 U.S.C. § 1350, note

§ 2(a) ("TVPA"), requires allegations that (i) an individual, (ii) under actual or apparent authority, or

color of law, of any foreign nation, (iii) subjected another individual to extrajudicial killing or torture.

28 U.S.C.A. § 1350, note § 2(a) (1993); <u>Kadic v. Karadzic</u>, 70 F.3d 232, 245 (2d Cir. 1995), <u>reh'g</u>

<u>denied</u>, 74 F.3d 377 (2d Cir. 1996); <u>Filartiga v. Pena-Irala</u>, 630 F.2d 876 (2d Cir. 1980).  Plaintiffs fail

to satisfy these requirements because the Foundation is not an individual.  <u>See</u> <u>Beanal v. Freeport-</u>

<u>McMoRan, Inc.</u>, 969 F. Supp 362, 381-82 (E.D.La. 1997), aff'd on other grounds, 197 F.3d 161 (5th

Cir. 1999); <u>Friedman v. Bayer Corp.</u>, 1999 WL 33457825, *2 (E.D.N.Y. Dec. 15, 1999).  In addition,

there is no allegation that any action by the Foundation was taken under color of foreign law, <u>see</u> <u>In</u>

<u>re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 828, nor that it committed an extrajudicial killing or torture.

6.      <u>**Wrongful Death/Survival --** *Federal* **Counts 2 and 3;** *Burnett* **Counts 5 and 7**</u>

A wrongful death claim under New York law requires allegations that a defendant

committed a wrongful act, neglect, or default, which proximately caused decedent's death.  <u>See</u> N.Y.

E.P.T.L. § 5-4.1(1) (McKinney 2002).  A survival claim requires allegations of (i) a tort to person or

property, (ii) suffered by the decedent prior to death.  N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2001).

Here, plaintiffs have failed to allege any underlying tort by the Foundation, and have not properly

alleged that the Foundation proximately caused any deaths on September 11, 2001.

7.      **Negligence -- *Federal Insurance* Count 11; *Burnett* Count 6**

Plaintiffs "do not allege or identify a duty owed, [and, therefore,] . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim." <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 831 (citation omitted).  Moreover, even if some duty could be alleged, plaintiffs fail to allege that the Foundation breached any such duty or proximately caused their injuries.

8.      **Assault and Battery -- *Federal* Count 4; Intentional Infliction
         of Emotional Distress -- *Federal* Count 5; *Burnett* Count 8**

The *Federal* plaintiffs' claims for assault, battery, and intentional infliction of emotional distress are barred by the applicable one-year statute of limitations.  <u>In re Sept. 11 Attacks</u>, 349 F. Supp. 2d at 829 (citations omitted).  In addition, the *Burnett* plaintiffs fail to allege any wrongful conduct by the Foundation, much less any extreme and outrageous conduct to give rise to this claim, and failed to allege proximate cause.

9.      **Violation of International Law -- *WTC* Count 9; *Euro Brokers* Count 6**

Plaintiffs cannot assert a claim for airplane hijacking as a violation of international law because "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute." <u>Hayden v. Pataki</u>, 2004 WL 1335921, at *7 (S.D.N.Y. June, 14, 2004), <u>citing</u> <u>Kadic</u>, 70 F.3d at 246.  <u>See also</u> <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, --, 124 S. Ct. 2739, 2764 (2004) (declining to recognize private cause of action for arbitrary arrest under law of nations); <u>see also</u> <u>Friedman</u>, 1999 WL 33457825, at *3 ("customary international law . . . does not create private rights of action for individuals. . . .  Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").  Moreover, "Congress may . . . explicitly, or implicitly by treaties or statutes that occupy the field" preclude a private plaintiff from bringing a claim pursuant to a supposed international law.  <u>Sosa</u>, 124 S. Ct. at 2765.  Here, Congress has implemented norms against airplane hijacking and refused to provide a

private right to sue under the conventions, the implementing statutes, or any other law.[35]  As a result, plaintiffs have no standing to assert their claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("private rights of action to enforce federal law must be created by Congress.").

Similarly, "[t]reaties, as a general rule, are not privately enforceable [but rather are] reserved to the executive authority of the governments who are parties to the treaties."  Khalid v. Bush, 355 F. Supp. 2d 311, 327 (D.D.C. 2005).  A private cause of action will only lie if the treaty (i) is self-executing and (ii) expressly provides a private cause of action.  See Dreyfus v. von Finck, 534 F.2d 24, 29-30 (2d Cir. 1976); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442 (1989) (even express provisions in Convention requiring signatory nations to pay compensation for violations create no private cause of action).  None of the accords cited by plaintiffs creates a private right of action.

Furthermore, "[p]laintiffs here point to little that would lead this Court to conclude that aiding and abetting international law violations is itself an international law violation that is universally accepted as a legal obligation."  In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (aiding-and-abetting violation of international law unavailable under ATCA).  Finally, even if an aiding and abetting theory were permissible, plaintiffs have pleaded no facts to support a claim that the Foundation gave "substantial assistance" or had "knowledge" of the wrongful nature of Al Qaeda's conduct.

---

[35] See 18 U.S.C. § 32 (destruction of aircraft); 49 U.S.C. § 46502 (aircraft piracy); Hague Convention for the Suppression of Violence against Aircraft; Montreal Convention on Offenses and Certain Other Acts Committed on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177.

10.     **Alien Tort Claims Act -- *Burnett* Count 4**

A private cause of action under 28 U.S.C. § 1350 requires allegations that (i) plaintiff is an alien, (ii) claiming damages stemming from a tort only, (iii) committed in violation of the law of nations or a treaty of the United States.  See 28 U.S.C. § 1350 (1993).  As described above, plaintiffs have failed to plead any underlying tort by the Foundation, much less a tort in violation of the law of nations.  See Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (without properly alleged link between defendant and acts complained of, conclusory allegations of tortious activity are "much too tenuous to support [a] finding of liability").  Moreover, plaintiffs have failed to allege facts to support accomplice or aiding-and-abetting liability under the ATCA, which requires allegations of *substantial* and *personal* participation in the tort in violation of the law of nations.  See, e.g., Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 21-22 (D.D.C. 2000), aff'd, 2002 WL 1052012 (D.C. Cir. 2002) (dismissing ATCA claim where plaintiffs failed to allege substantial participation); see also In re S. African Apartheid Litig., 346 F. Supp. at 549-50 (aiding-and-abetting liability unavailable under ATCA after Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S. Ct. 2739 (2004)).  And again, plaintiffs have failed to allege proximate cause.[36]

11.     **Property Destruction -- *WTC* Count 6**

New York law provides no independent cause of action for "intentional destruction of real property," and any potentially analogous claim requires a showing of tortious intent, and proximate cause.  See, e.g., People v. Keech, 467 N.Y.S.2d 786, 788-89, 121 Misc.2d 368 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54, 64 A.D.2d 658 (App. Div. 1978) (criminal

---

[36]Additionally, because the ATCA is available only to aliens, the ATCA claims of all United States nationals must be dismissed.  See Hanoch Tel-Oren v. Libyan Arab Republic, 517 F. Supp. 542, 548 (D.D.C. 1981), aff'd sub nom. Tel-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984).

mischief resulting in property damage requires intent).  Here, plaintiffs fail to allege facts that could give rise to any inference of intent as to the Foundation or to a finding of proximate causation.

> **12.  Punitive Damages -- *Federal* Count 12; *Euro Brokers* Count 9; *WTC* ¶¶ 1180 - 1183; *Burnett* Count 14**

Plaintiffs cannot state a claim for punitive damages, because such damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. 2002).

## CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.


Dated: New York, New York
       October 4, 2005

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____/s/_____
    James J. McGuire (JM-5390)

    30 Rockefeller Plaza, 24th Floor
    New York, New York  10112
    (212) 332-3800

    *Attorneys for Defendant*
    *Ibrahim Bin Abdul Aziz Al-Ibrahim Foundation*