**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:        **World Trade Center Properties, LLC, et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7280)**

**Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7279)**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*    Dar Al-Maal Al-Islami Trust*

<u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...............................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST ...........................................................2

ARGUMENT ....................................................................................................................................4

I      THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST DMI TRUST ......................4

      A.     Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. ............................10

      B.     Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ...................................................13

      C.     Plaintiffs Have Failed To Plead Facts Sufficient To State  Any Of Their Causes of Action Against DMI Trust ....................................................................15

            1.     Anti-Terrorism Act (*WTCP* Count 1; *Euro Brokers* Count 2). .....................16

            2.     RICO (*WTCP* Counts 2-4; *Euro Brokers* Counts 3-5). ...........................18

            3.     Trespass (*WTCP* Count 5; *Euro Brokers* Count 1). ................................20

            4.     Conspiracy and Aiding and Abetting (*WTCP* Counts 7 & 8; *Euro Brokers* Count 8) ..........................................................................................21

            5.     Aiding and Abetting a Violation of International Law (*WTCP* Count 9 & *Euro Brokers* Count 6) .............................................................................22

            6.     Punitive Damages (*Euro Brokers* Count 9). .............................................24

             7.     Intentional and/or Willful Destruction of Property (*WTCP* Count 6) ...........24

II      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ........................24

CONCLUSION ................................................................................................................................25

TABLE OF AUTHORITIES

**Cases**

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
    1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992)........................................................................21

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.,
    2005 WL 1649045 (S.D.N.Y. July 13, 2005) .......................................................................25

Acito v. Imcera Grp., Inc.,
    47 F.3d 47 (2d Cir. 1995) ...................................................................................................25

In re Air Crash Disaster At Cove Neck, Long Island, New York,
    885 F. Supp. 434 (E.D.N.Y. 1995) .....................................................................................20

Alexander v. Sandoval,
    537 U.S. 275 (2001)............................................................................................................23

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
    228 F.3d 429 (3d Cir. 2000) ...............................................................................................21

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) .................................................................................................14

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) .................................................................................................2

Amsterdam Tobacco Inc. v. Philip Morris Inc.,
    107 F. Supp. 2d 210 (S.D.N.Y. 2000)................................................................................19

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004).......................................................................2

Argentine Republic v. Amerada Hess Shipping Corp.,
    488 U.S. 428 (1989)............................................................................................................23

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
    459 U.S. 519, 103 S. Ct. 897 (1983) ..................................................................................12

Atuahene v. City of Hartford, 10 Fed. Appx. 33 (2d Cir. 2001) ...................................................5

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003) ...............................................................................................19

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987) .................................................................................................6

Bernstein v. Misk,
    948 F. Supp. 228 (E.D.N.Y. 1997) ......................................................................................8

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) .............................................................................7, 13, 15, 16

Boyanowski v. Capital Area Intermediate Unit,
   215 F.3d 396 (3d Cir. 2000) .................................................................................21

Burnett v. Al Baraka Inv. and Dev. Corp.,
   274 F. Supp. 2d 86 (D.D.C. 2003) ...............................................................1, 9, 16

Casio Computer Co. v. Sayo,
   2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ...........................................................8

Coleman v. Reno,
   91 F. Supp. 2d 130 (D.D.C. 2000) .......................................................................23

De Falco v. Bernas,
   244 F.3d 286 (2d Cir. 2001) ...............................................................................19

DeJesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) ...............................................................2, 14, 16, 20

Dreyfus v. von Finck,
   534 F.2d 24 (2d Cir. 1976) ................................................................................23

Dubai Islamic Bank v. Citibank, N.A.,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................................19, 20

Electronic Comm'ns Corp. v. Toshiba Am.,
   129 F.3d 240 (2d Cir. 1997) ...............................................................................25

First Capital Asset Mgmt. v. Satinwood, Inc.,
   385 F.3d 159 (2d Cir. 2004) ...............................................................................19

Flanagan v. Shively,
   783 F. Supp. 922 (M.D. Penn. 1992) ....................................................................11

Flores v. S. Peru Copper Corp.,
   343 F.3d 140 (2d Cir. 2003) ...............................................................................23

Ford v. New Britain Trans. Co.,
   2004 WL 3078827 (D.Conn. Dec. 21, 2004) .........................................................25

Friedman v. Bayer Corp.,
   1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ......................................................22

Gillette Co. v. Philips Oral Healthcare, Inc.,
   2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) ..........................................................5

Glasheen v. City of Albany,
   1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ..........................................................6

Gmurzynska v. Hutton,
   2003 WL 1193727 (S.D.N.Y. March 14, 2003).........................................................9

Gold v. Fields,
   1993 WL 212672 (S.D.N.Y. June 14, 1993) ............................................................1

Grove Press, Inc. v. Angleton,
  649 F.2d 121 (2d Cir. 1981) ..................................................................................21

Halberstam v. Welch,
  705 F.2d 472 (D.C. Cir. 1983) ..............................................................................21

Hattley v. Goord,
  2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003) ................................................. 11, 12

Hayden v. Pataki,
  2004 WL 1335921 (S.D.N.Y. June, 14, 2004) ........................................................22

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
  337 S.E.2d 744 (Va. 1985) ....................................................................................11

Indus. Bank of Latvia v. Baltic Fin. Corp.,
  1994 WL 286162 (S.D.N.Y. June 27, 1994) ..........................................................20

Jackson v. BellSouth Telecomms.,
  372 F.2d 1250 (4th Cir. 2004) ..................................................................................6

Johnston v. Norton,
  1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ..........................................................13

Kadic v. Karadzic,
  70 F.3d 232 (2d Cir. 1995) ....................................................................................22

Khalid v. Bush,
  355 F. Supp. 2d 311 (D.D.C. 2005) ....................................................................1, 23

Kittay v. Kornstein,
  230 F.3d 531 (2d Cir. 2000) ....................................................................................6

Koken v. Steinberg,
  825 A.2d 723 (Pa. Comm. Ct. 2003) ......................................................................12

Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249 (Va. Cir. Ct. Jan. 31,  2002) ...................21

LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co.,
  951 F. Supp. 1071 (S.D.N.Y. 1996) ......................................................................19

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
  191 F.3d 229 (2d Cir. 1999) ..................................................................................13

Lesavoy v. Lane,
  304 F. Supp. 2d 520 (S.D.N.Y. 2004).....................................................................20

Liberman v. Worden,
  701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000)..............................................12

In re Livent, Inc. Noteholders Secs. Litig.,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001).....................................................................15

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) ................................................................2

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) ...............................................................15

Medina v. Bauer,
    2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) .....................................5

Moss v. Morgan Stanley Inc.,
    719 F.2d 5 (2d Cir. 1983) ...........................................................18, 19

In re NASDAQ Market-Makers Antitrust Litig.,
    894 F. Supp. 703 (S.D.N.Y. 1995) ...................................................12

Oneida Indian Nation of New York v. City of Sherrill,
    337 F.3d 138 (2d Cir. 2003) .............................................................25

Papasan v. Allain,
    478 U.S. 265 (1986) .........................................................................14

People v. Keech,
    467 N.Y.S.2d 786, 121 Misc. 2d 368 (Sup. Ct. 1983) ...................24

People v. Summer,
    407 N.Y.S.2d 53, 64 A.D.2d 658 (App. Div. 1978) .......................24

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) .......................................................13, 14

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972) ...............................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
    1998 WL 355422 (S.D.N.Y. Jul. 2, 1998) ........................................2

Redtail Leasing, Inc. v. Bellezza,
    2001 WL 863556 (S.D.N.Y. July 31, 2001) ...................................19

In re S. African Apartheid Litig.,
    346 F. Supp. 2d 538 (S.D.N.Y. 2004)..............................................24

Seguros Comercial Am. v. Hall,
    115 F. Supp. 2d 1371 (M.D. Fla. 2000).............................................23

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
    2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) .....................12, 21

Skipworth v. Lead Indus. Ass'n, Inc.,
    690 A.2d 169 (Pa. 1997) ...................................................................11

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) ...................................21

Smith v. County of Erie,
　　295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ................................................24

Smith v. Islamic Emirate of Afghanistan,
　　262 F. Supp. 2d 217 (S.D.N.Y. 2003) ...........................................................................16

Smith v. Local 819 I.B.T. Pension Plan,
　　291 F.3d 236 (2d Cir. 2002) .....................................................................................5, 16

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
　　151 F. Supp. 2d 303 (S.D.N.Y. 2001) ..........................................................................15

Sosa v. Alvarez-Machain,
　　542 U.S. 692, 124 S. Ct. 2739 (2004) .......................................................................22, 23

Sparrow v. United Airlines, Inc.,
　　216 F.3d 1111 (D.C. Cir. 2002) .....................................................................................6

Spoto v. Herkimer County Trust,
　　2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ....................................................................1

Stewart v. Crosswalks Television Network,
　　2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ...................................................................11

Suarez v. Underwood,
　　103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) .................................11

Swierkiewicz v. Sorema N.A.,
　　534 U.S. 506 (2002) ..............................................................................................6, 15

In re Terrorist Attacks on Sept. 11, 2001,
　　2005 WL 2296673 (S.D.N.Y. Sept., 21 2005) ......................................1, 6, 8, 11, 16, 19, 20

In re Terrorist Attacks on September 11, 2001,
　　349 F. Supp. 2d 765 (S.D.N.Y. 2005)..........................................................1, 5, 7, 8, 9,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　 10, 12, 13, 14, 15,
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　 16, 17, 18, 22, 25

Tornheim v. Fed. Home Loan Mortg. Corp.,
　　988 F. Supp. 279 (S.D.N.Y. 1997) ...............................................................................20

Twombly v. Bell Atlantic Corp.,
　　313 F. Supp. 2d 174 (S.D.N.Y. 2003).......................................................................6, 15

United States Fire Ins. Co. v. United Limousine Serv.,
　　303 F. Supp. 2d 432 (S.D.N.Y. 2004)............................................................................20

United States v. Allen,
　　155 F.3d 35 (2d Cir. 1998) .........................................................................................19

United States v. Yousef,
　　327 F.3d 56 (2d Cir. 2003) .........................................................................................16

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 10, 2003) ........................................................................ 12, 21

York v. Bar of New York,
    286 F.3d 122 (2d Cir. 2002) ............................................................................................................ 15

## Statutes and Other Authority

18 U.S.C. § 32 (1996) ........................................................................................................................ 23

18 U.S.C. § 1092 (1988) .................................................................................................................... 23

18 U.S.C. § 1962 (1988) .................................................................................................................... 18

18 U.S.C. §§ 2331-2333 (2000) ........................................................................................................ 16

49 U.S.C. § 46502 (1996) .................................................................................................................. 23

Fed. R. Civ. P. 8 ............................................................................................................................. 5, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4, 5

8 N.Y. Jur., Conspiracy, § 19 (1982) ......................................................................................... 11, 12

The Charter of the International Military Tribunal, Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279 .... 23

Hague Convention for the Suppression of Violence against Aircraft; Montreal Convention on
    Offenses and Certain Other Acts Committed on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564,
    974 U.N.T.S. 177 ............................................................................................................................ 23

International Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. Treat
    Doc. No. 106-6, 37 I.L.M. 249, 253, Articles 1-24 ...................................................................... 23

5C Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ....... 2, 7, 17

## INTRODUCTION

As the Chairman of the Board of Dar Al-Maal Al-Islami Trust ("DMI Trust") publicly stated shortly after the September 11 attacks, DMI Trust sympathizes with the losses suffered by plaintiffs in this action, and joins the plaintiffs in condemning those who commit atrocities such as those of September 11 in the name of Islam.  At the same time, however, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants," Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("Burnett I"), and plaintiffs are required to make allegations of *fact* sufficient to support such inflammatory claims.  See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 800-01, 813-14, 830-31 (S.D.N.Y. 2005) ("in light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant").

Even with the benefit of two Complaints totaling 370 pages and identical 38-page RICO Statements, the *World Trade Center Properties* ("*WTCP*") and *Euro Brokers* plaintiffs have not made any such allegation against DMI Trust.  The plaintiffs' Complaints and RICO Statements[1] make sweeping allegations of grave wrongdoing by the named defendants, including DMI Trust. Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any relations at all between DMI Trust and al Qaeda, or that DMI Trust had any role whatsoever in the plot that culminated in the September 11 terrorist attacks.  Instead, plaintiffs offer up dozens of conclusory allegations that, as the Court's January 18 and September 21 Orders establish, are wholly insufficient to state their claims, salted with a handful of factual allegations that are innocuous at best, and self-contradictory at worst.  Accordingly, in the absence of any averment connecting DMI Trust to al Qaeda or to the terrorist attacks of September 11, 2001, plaintiffs' claims must be dismissed.

---

[1]  Plaintiffs filed their RICO Statements on May 10, 2005 (Docket Nos. 897 & 899), eight months after filing their Complaints. The untimely RICO Statements do not amend the Complaints. See Court's Instructions for Filing RICO Statement, *available at* http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf ("All parties asserting claims pursuant to the [RICO Act], must file and serve . . . a RICO Statement . . . within twenty days of filing the pleading asserting the RICO claim."); Order, Aug. 23, 2005 (MDL Docket No. 1144); Spoto v. Herkimer County Trust, 2000 WL 533293, at *3 n.2 (N.D.N.Y. Apr. 27, 2000) ("[T]he Court would be justified to dismiss plaintiffs' complaint based upon their very untimely filing of their . . . RICO statement."); Gold v. Fields, 1993 WL 212672, at *5 & n.5 (S.D.N.Y. June 14, 1993) ("[T]he [RICO] statement . . . only seeks information plaintiffs should already have in their possession before filing their complaint. . . ."). Nevertheless, for completeness' sake and for the Court's convenience, DMI Trust will also address the allegations in plaintiffs' RICO Statements.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *WTCP* and *Euro Brokers* Complaints and RICO Statements contain only a handful of pertinent factual allegations regarding DMI Trust,[2] which are restated below:

### Allegations Concerning Donations to Charities:

As an article of faith, Muslims practice *zakat*, the donation of a percentage of their income to charitable causes; Muslims also tithe income inadvertently received from religiously unacceptable sources, also known as *haram* income, such as any income from alcohol or gambling. See RICO Statement ("RICO Stmt."), Exh. A at 11; *WTCP* Compl. ¶ 88. Plaintiffs conclusorily allege that "DMI Trust satisfies its [*zakat* and *haram*] obligations by directly funding the al Qaeda network and by financially supporting charities and other groups which it knows support al Qaeda." See RICO Stmt., Exh. A at28. The only allegation of fact that plaintiffs offer in support of this sweeping accusation is an allegation that DMI Trust made *zakat* donations to branches of the International Islamic Relief Organization ("IIRO") and the Muslim World League ("MWL") in Egypt in the early 1990s. See id. at 29. Plaintiffs assert that DMI Trust "knew or had to know" that

---

[2] Plaintiffs first define the abbreviation "DMI" to denote exclusively DMI Trust's indirect subsidiary, DMI Administrative Services, S.A. ("DMI S.A."), but later define it to include both DMI S.A. *and* DMI Trust. Compare *WTCP* Complaint ("*WTCP* Compl.") ¶ 235 with id. ¶ 1102. Plaintiffs then proceed to make numerous allegations regarding "DMI," without indicating which allegations are intended to apply which entity or entities. DMI Trust and DMI S.A. are separate companies -- and separate defendants -- operating different businesses in different countries. Plaintiffs' allegations regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone. See, e.g., 5C CHARLES Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, 120-21 (3d ed. 2004) ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."). Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil between DMI Trust and DMI S.A. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit the wrong complained of); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, inadequate capitalization, and intermingling of funds); DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil); Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing). Nevertheless, in an abundance of caution and for the Court's convenience, DMI Trust will proceed upon the assumption that all of the allegations that refer to "DMI" are intended to denote DMI Trust.

"Osama Bin Laden and al Qaeda were directly collaborating with the [IIRO]" and "that the [MWL] office in Cairo was [] managed by Osama Bin Laden," see id. at 29-31-- even though, according to plaintiffs' own allegations, those charities were then engaged not in supporting terrorism against the United States but in funding the Afghan *mujahideen*, see id. at 30, and al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  See id. at 12.

<u>Allegations Concerning The Provision Of Banking Services</u>:

Plaintiffs sweepingly allege that DMI Trust "launder[ed] money . . . provid[ed] financial services . . . and facilitat[ed] weapons and military equipment purchases and money transfers" in support of al Qaeda.  See RICO Stmt., Exh. A at 7.  DMI Trust, plaintiffs conclusorily assert, "has involved itself in al Qaeda financing" via its putative indirect subsidiaries Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank ("al Shamal"). See *WTCP* Compl. ¶ 235; RICO Stmt., Exh. A at 14.  The only allegation of fact that plaintiffs offer in support of this proposition is that al Qaeda operatives in the Sudan "got account[s]" at Al Shamal, FIBS, and TIB in the mid-1990s, see *WTCP* Compl. ¶¶ 126, 238, 246, and that money from those accounts was transferred by the account holders to other al Qaeda members.  See RICO Stmt., Exh. A at 8, 20-21; *WTCP* Compl. ¶¶ 1106-14; *Euro Brokers* Compl. ¶¶ 112-20.  Plaintiffs also allege that DMI Trust is a shareholder of al Shamal.  See RICO Stmt., Exh. A at 7, 19-20.  In their RICO Statements, the plaintiffs further allege that DMI Trust "transferred money for" al Haramain, at an unspecified time and place and for unspecified purposes; that another alleged subsidiary of DMI Trust "has handled the accounts of" Yassin Al Kadi and Wael Jelaidan, two individuals who were subsequently designated as terrorist sponsors by the United States; and that the IIRO held accounts at two other alleged subsidiaries of DMI Trust.  See id. at 7, 29.

As the above recitation makes clear, plaintiffs do not make *any* allegations of fact showing that DMI Trust made *zakat* donations to charities with any knowledge that such charities were al Qaeda 'fronts,' or provided anything other than routine banking services to anyone.  See

RICO Stmt., Exh. A at 7, 29.[3]  Indeed, plaintiffs offer no specific allegations of fact showing that DMI Trust knowingly supported al Qaeda in any way, much less any showing that DMI Trust ever "launder[ed] money," "provid[ed] financial services" to, or "facilitat[ed] weapons and military equipment purchases and money transfers" for al Qaeda.  Nor do plaintiffs allege *any facts* showing that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement by all defendants "to commit acts of international terrorism against the United States, its nationals and allies . . . ."  *WTCP* Compl. ¶ 1164.  Indeed, in their two Complaints totaling 370 pages and identical 38-page RICO Statements, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any purposeful transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite over a year of effort, as reflected in their Complaints and identical RICO Statements, their claims should be dismissed with prejudice.

## I
## THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST DMI TRUST

Plaintiffs have thoroughly failed to allege facts sufficient to state any of their causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting

---

[3]  In fact, as plaintiffs allege in substance if not in form, DMI Trust is a holding company, see RICO Stmt., Exh. A at 1-2, which holds interests in related companies and provides no banking services to anyone at all.

al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs' injuries. Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of 'shotgun' allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., *WTCP* Compl. ¶ 94 (DMI Trust, and all "banking Defendants," "acted as instruments of terror, in raising, facilitating [sic] and transferring money to terrorist organizations"); id. ¶ 7 ("[T]he Defendant banks, charities, individuals, financial and business institutions . . . formed an enterprise, aided, abetted, sponsored, conspired, financed or otherwise provided material support to Osama bin Laden, al Qaeda, and international terrorism"). "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) and Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[4]

Apart from conclusory, generalized allegations that categorically fail to state their claims, plaintiffs offer only innuendo, supported by the handful of factual allegations recited above -- allegations that, upon even cursory review, prove to be innocuous, and often self-contradictory. For example, while plaintiffs allege that DMI Trust donated *zakat* funds to IIRO and MWL in the early 1990s, see RICO Stmt., Exh. A at 29, plaintiffs do not allege any facts showing that DMI Trust provided donations to the IIRO or MWL with the knowledge that either charity was a terrorist 'front,' or any "facts to support an inference that [DMI Trust was] sufficiently close to the terrorists'

---

[4] For instance, the thoroughly conclusory allegation that all Banking Defendants "acted as instruments of terror, in raising, facilitating [sic] and transferring money to terrorist organizations," does not specify what banking services *DMI Trust* is alleged to have provided, or to whom. See, e.g., *WTCP* Compl. ¶ 94. Certainly, this allegation includes nothing that could be read to indicate that DMI Trust ever provided anything other than routine banking services to anyone, much less that DMI Trust knowingly provided banking services of any sort to terrorists. Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI Trust with any meaningful notice of the supposed basis of the claims against it. See, e.g., Kittay, 230 F.3d at 541. Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that their generalized, conclusory allegations should be deemed sufficient to state their immense claims. Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims. Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *18, 25 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II"), citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

illegal activities" to infer such knowledge.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 813-

14 ("Conclusory allegations that [defendant] donated money to charities, without specific factual

allegations that he knew they were funneling money to terrorists, do not suffice.").  Moreover,

plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations.  Plaintiffs

themselves allege that in the early 1990s, the IIRO and MWL were funding not al Qaeda but Afghan

*mujahideen*, see RICO Stmt., Exh. A at 30,[5] and that in subsequent years, when those charities actually

did support al Qaeda, they did so by "taking advantage of" *zakat* donors "under the cover of"

legitimate charitable activities, see id. at 10, negating any inference that donors like DMI Trust had

knowledge of such charities' alleged nefarious activities.  See 5C Wright & Miller, § 1363 at 120-21

("the district court will not accept as true pleading allegations that are contradicted by . . . other

allegations"); see also Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291

F.3d 1000, 1011 (7th Cir. 2002) ("Boim II") ("To say that funding *simpliciter* constitutes an act of

terrorism is to give the [ATA] statute an almost unlimited reach.").  Thus, "[p]laintiffs have not

pleaded facts to suggest [that DMI Trust] knew [it was] making contributions to terrorist fronts and

provided substantial assistance or encouragement to the terrorists."  In re Sept. 11 Attacks I, 349 F.

Supp. 2d at 800.[6]

     Similarly, as to provision of banking services, plaintiffs allege that DMI Trust

"transferred money for" al Haramain, see RICO Stmt., Exh. A at 7; that al Qaeda members "got

account" at the Sudanese banks FIBS, TIB and al Shamal, see *WTCP* Compl. ¶¶ 126, 238, 246; and

---

[5] According to plaintiffs' own allegations, al Qaeda began to solicit *zakat* donations for its own terrorist purposes years later, in or about 1998.  See RICO Stmt., Exh. A at 12.

[6] Unlike Hamas in Boim, none of the organizations that DMI Trust is alleged to have supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim II, 291 F.3d at 1002 (noting that Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including allegations that "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, citing Boim v. Quranic Literacy Inst. & Holy Land Found., 127 F. Supp. 2d 1002, 1006-1008. (N.D. Ill. 2001).  No such allegations are made here as to DMI Trust.

that subsequently-designated terrorist sponsors Yassin Al Kadi and Wael Jelaidan, and the IIRO

held accounts at three other subsidiaries of DMI Trust, see RICO Stmt., Exh. A at 7, 29.  To be

clear, the only financial service that DMI Trust itself is alleged to have provided to anyone is

"transferr[ing] money for Al Haramain," again without any supporting factual allegations indicating

when, where, why or how DMI Trust "transferred money for" that charity.  See id. at 7.  The

remainder of the allegations assert that several putative *subsidiaries* of DMI Trust maintained

accounts for al Qaeda-related third parties in the Sudan, "handled the accounts of" Yassin Al Kadi

and Wael Jelaidan, and maintained accounts for the IIRO.  See id. at 7, 29; *WTCP* Compl. ¶¶ 126,

238, 246.

        Plaintiffs have not made any specific allegations of fact showing that DMI Trust has

ever engaged in any financial transactions of any sort, much less in any transactions having anything

to do with terrorism, and have alleged no facts to suggest that DMI Trust knowingly provided

banking services to anyone connected with al Qaeda.  Absent any such allegations of fact, plaintiffs'

assertion that DMI Trust "transferred money for" al Haramain alleges nothing more than the

provision of routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833

(dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*,

allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed]

wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, 2005 WL 2296673, at *23

(dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the

money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege

facts showing that [defendant] knew the other [] organizations to which it transferred money were in

the business of supporting terrorism.").[7]  Similarly, allegations that putative subsidiaries of DMI

Trust "handled the accounts of" suspect persons, "provided financial services to" such persons, or

---

[7]  Similarly, plaintiffs' conclusory and unsupported allegation that DMI Trust "launder[ed] money" for al
Qaeda, see RICO Stmt., Exh. A at 7, does not substitute for allegations of facts sufficient to show that 1)
DMI Trust conducted a financial transaction in interstate commerce; 2) DMI Trust knew that the property
involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of
specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired
proceeds.  See Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (holding conclusory allegations
insufficient); Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000).

"facilitat[ed] . . . purchases and money transfers," also amount to nothing more than an allegation that those entities provided routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 (plaintiffs "do not include any facts to support the inference that Arab Bank knew or had to know it was providing material support to terrorists by providing financial services . . . or by processing wire transfers . . . .").  Moreover, even if these allegations did amount to anything other than the provision of routine banking services by those entities, plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust liable for any actions of its ostensible subsidiaries.  See supra n.2.

        In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate allegations that categorically fail to state a claim.  Those allegations that are not utterly conclusory are either thoroughly irrelevant,[8] or allege nothing more than the provision of routine banking services and innocuous charitable donations that, according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801. "Here, there are no such factual bases presented, there are only conclusions." Id.

---

[8] For instance, plaintiffs' lengthy allegations regarding former members of the Board of Directors and Sharia Board of DMI Trust are irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment.  Compare RICO Stmt., Exh. A at 8, 13-18, 24-26 with, e.g., In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833, 836 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business"; "[a]n employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the employer's business."); Burnett I, 274 F. Supp. 2d at 109 n.18 (bank is not liable for conduct of board members in the absence of allegations that director "act[ed] within the scope of his bank employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").  Similarly, this Court has already held that the allegation that a defendant was a shareholder of Al Shamal Islamic Bank does not state a claim for relief.  Compare RICO Stmt., Exh. A at 7, 19-20 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 836.

A.      **Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.**

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11.  Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state most of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797-98, 805, 826, 830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the September 11 hijackers, they may proceed with" their claims.).  Plaintiffs assert discrete causes of action for conspiracy and for aiding and abetting, see infra Part I.C.4, and also apparently assert that DMI Trust committed the other torts complained of by conspiring with al Qaeda and by aiding and abetting al Qaeda's commission of such crimes.  See, e.g., WTCP Compl. ¶ 1130 ("By providing financial and other material support and substantial assistance to the al Qaeda Defendants, the Defendants aided and abetted and/or conspired to promote acts of international terrorism"); id. ¶ 1170 ("Through the material support and resources provided to al Qaeda, the co-Defendants aided and abetted al Qaeda in its campaign to commit acts of international terrorism against the United States, its nationals, and allies.").  Thus, because plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks, their claims depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.

Plaintiffs' discrete causes of action for conspiracy and aiding and abetting are not recognized as independent causes of action in New York, and therefore are due to be dismissed.  See infra Part I.C.4.  Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.[9]  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement;

_____

[9]  Plaintiffs need not plead concerted action liability in support of their ATA and RICO claims, though allegations sufficient to state aiding and abetting in this case likely (but not necessarily) would also state a claim under the ATA, and allegations sufficient to state conspiracy likely would state a RICO claim.  As set forth throughout, however, plaintiffs have alleged no facts sufficient either to state their ATA and RICO claims, on the one hand, see infra Part I.C.1, I.C.2, or to state conspiracy or aiding and abetting in support of their other tort claims.

(iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[10]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

        Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, 2005 WL 2296673, at *25 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); and Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.").  The Complaints and RICO Statements, however, allege *no* communications or consultations of *any* kind by *any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy whose intended purpose was "to commit acts of international terrorism against the United States, its nationals and allies."  Compare *WTCP* Compl. ¶ 1165 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806 ("the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities").  Furthermore, plaintiffs allege neither any overt acts by

---

[10]  Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind.  See, e.g., Hattley, 2003 WL 1700435, at *12 (dismissing conspiracy claim for failure to allege facts in support); In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Similarly, plaintiffs have not properly alleged aiding and abetting.  To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.  See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[11]  Plaintiffs' allegations that DMI Trust made donations to IIRO and the MWL in Egypt in the early 1990s, and "transferred money for" al Haramain, show neither knowing assistance of the September 11 attacks nor "substantial" assistance.  See Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y. Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork").  And of course, plaintiffs' various conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust.  Compare WTCP Compl. ¶ 1114 and Euro Brokers Compl. ¶ 120 (DMI Trust has "aided and abetted others who lent material support

---

[11]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

to al Qaeda") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993)

("conclusory allegations of aiding and abetting . . . are not enough").

        In sum, plaintiffs allege no direct participation by DMI Trust in the September 11

attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their

claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting,

plaintiffs' claims must be dismissed in their entirety.

**B.**      **Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

        Plaintiffs tender nothing to support the proposition that any action by DMI Trust

proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs'

claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to

"but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of

was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks I, 349 F. Supp.

2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229,

235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts

were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim

II, 291 F.3d at 1012.

        Furthermore, because "plaintiffs rely on theories of concerted action liability --

conspiracy and aiding and abetting -- in support of [their assertion of proximate causation],"

plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the

primary wrongdoer.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As discussed above, and as the

Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to

commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial

assistance or encouragement' to the primary wrongdoer."  Pittman v. Grayson, 149 F.3d 111, 122-23

(2d Cir. 1998) (internal citations omitted).  Under either theory, plaintiffs must also allege facts

showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's

conduct.  Id.

Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries. Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action. See, e.g., WTCP Compl. ¶ 1156 (as to trespass claim, "the conduct of the . . . Defendants' actions led to the terrorist acts that occurred on September 11, 2001, which proximately caused the Plaintiffs' damages"); Euro Brokers Compl. ¶ 157 (as to ATA claim, "the conduct of . . . the Banking and Financial Defendants proximately resulted in the September 11 attacks."). These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986); De Jesus, 87 F.3d at 70.

Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action by DMI Trust. For instance, even if third parties allegedly connected to al Qaeda "got account" at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, the Complaints allege no facts to suggest that such "accounts" were in any sense a cause of -- or were connected at all to -- the September 11 attacks. There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether the accounts were ever used for any purpose, and if so what that purpose was. Certainly, there is no indication, either within the four corners of the pleadings or elsewhere, that those bank accounts in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" the Chairman of the Board of DMI Trust). In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was insufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, i.e., allegations of facts showing that the plaintiffs'

injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful action.  Boim II,
291 F.3d at 1012.  The plaintiffs' allegations that putative indirect subsidiaries of DMI Trust
maintained routine bank accounts for individuals then not known to be terrorists, in the Sudan in
the mid-1990s, thus fall far short of the allegations deemed *in*sufficient to establish proximate
causation in Boim II.

      Plaintiffs have also entirely failed to allege facts sufficient to support any assertion
that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A; infra
Part I.C.4.  In sum, plaintiffs have failed to make any allegation against DMI Trust that could
support a finding of proximate cause as to any of the pending claims.

**C.    Plaintiffs Have Failed To Plead Facts Sufficient To State
Any Of Their Causes of Action Against DMI Trust.**

      Plaintiffs have also failed to properly plead any of their causes of action against DMI
Trust because they have not alleged facts sufficient to make out the specific elements of their
various claims.  Even in notice pleading, neither inferences unsupported by specific factual
allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v.
Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d
Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to
be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks I, 349 F. Supp. 2d at
832-36; Twombly, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims
of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit"); In re
Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories
of liability are alleged in the alternative, "the factual pleadings . . . must be sufficient to state all the
requisite elements of a given theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts
that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint
contain either direct or inferential allegations respecting all the material elements necessary to sustain
a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- showing that DMI Trust ever actually *did* anything wrongful that could give rise to plaintiffs' immense claims.  See Smith, 291 F.3d at 240; De Jesus, 87 F.3d at 70; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-36.  Plaintiffs have entirely failed to plead facts sufficient to satisfy *any* of the numerous elements of their various causes of action, other than injury.  Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief."  In re Sept. 11 Attacks II, 2005 WL 2296673, at *18 (citations omitted).  The claims against DMI Trust therefore must be dismissed.

1.       **Anti-Terrorism Act (*WTCP* Count 1; *Euro Brokers* Count 2).**

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff may bring a private action for damages, where plaintiff (i) is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) as a proximate result of a defendant's "material support" of international terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 220-22 & n.5 (S.D.N.Y. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828; see also Boim II, 291 F.3d at 1023 (defendants must be alleged to have acted knowingly); Burnett I, 274 F. Supp. 2d at 106 (ATA claim requires knowledge and intent to further violent acts, and those violent acts must be reasonably foreseeable result of defendant's actions); Smith, 262 F. Supp. 2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts, and proximate cause.").[12]

Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact that could possibly show that DMI Trust engaged in any act of material support to

---

[12]  Additionally, because relief under the ATA is available only to United States nationals, all plaintiffs who are not United States nationals lack standing, and their ATA claims must be dismissed for that reason alone.  See, e.g., Burnett I, 274 F. Supp. 2d at 105.

al Qaeda knowingly or with a desire to see a terrorist plot succeed.[13]  As set forth above, plaintiffs

allege nothing more than that DMI Trust made mundane charitable donations to the IIRO and

MWL in Egypt in the early 1990s, and provided routine banking services to al Haramain, at an

unspecified time and in an unspecified place, without any indication that those donations or those

banking services constituted "material support" of al Qaeda or that DMI Trust made any such

donations or provided banking services with any knowledge of the recipient's tortious activities.  See

In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 (alleged "relationship with Al Shamal . . . which

purportedly knowingly opened accounts for al Qaeda operatives . . . is too remote in time and

proximity"), 832-33, 835-36.

        Clearly, as this Court held regarding Al Rajhi Bank,[14] "[p]laintiffs do not allege that

[DMI Trust] provided direct material support to al Qaeda" as is required to state an ATA claim:

---

[13]  Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support
prohibited activities such as the use of tobacco or alcohol, in an apparent attempt to imply that, because DMI
Trust donates to Islamic charities in order to ensure that *zakat* contributions do not support such activities, it
must have known that the specific charities to whom it allegedly made contributions were terrorist 'fronts.'
See RICO Stmt., Exh. A at 11, 30.  This allegation regarding the duty of *zakat* cannot support such an
implication, however.  First, plaintiffs themselves acknowledge that Islamic charities' support for terrorism
was conducted by "taking advantage of" *zakat* donors "under the cover of" legitimate charitable activities, see
id. at 10, negating any inference that donors "had to know" that *zakat* funds were being diverted simply
because the receiving charity was Islamic.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33 and n.40
(dismissing claims against bank despite identical allegations regarding duty of *zakat*); 5C Wright & Miller, §
1363 at 120-21 ("the district court will not accept as true pleading allegations that are contradicted by . . .
other allegations").  Second, plaintiffs allege that DMI Trust "knew or had to know" in the early 1990s that
the IIRO and the MWL were 'fronts' for al Qaeda, see RICO Stmt., Exh. A at 30; but plaintiffs themselves
acknowledge that in the early 1990s, those charities were funding not terrorists but Afghan *mujahideen*, and
that al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  See id. at 12, 30.

[14]  Indeed, the allegations against DMI Trust are at least as empty as those asserted -- and found insufficient --
against Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that
serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al
Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi
Arabian authorities."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim
that DMI Trust "transferred money for al Haramain," and that DMI Trust made donations to IIRO and the
MWL in the early 1990s, see RICO Stmt., Exh. A at 7, 29, again without any allegations indicating where,
when, why or how DMI Trust "transferred money" for al Haramain, or any facts indicating that DMI Trust
knew that any ostensible recipient of banking services or of donations was supporting terrorism.  Plaintiffs
further contend that two of the September 11 hijackers themselves held an account or transferred money
through Al Rajhi Bank.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  In contrast, plaintiffs claim only
that DMI Trust's putative Sudanese subsidiaries maintained accounts for al Qaeda members in the mid-
1990s, see RICO Stmt., Exh. A at 14, and that other subsidiaries of DMI Trust "handled the accounts of"
subsequently-designated terrorist financiers, see id. at 7, again without any allegation showing that DMI Trust
knew that those accounts were held by suspect persons.

"Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11."  See id. at 832-33.  And again, plaintiffs have wholly failed to plead proximate causation.  See supra Part I.B.  Plaintiffs therefore have wholly failed to state their ATA claim against DMI Trust, and that claim must be dismissed.

2.    **RICO (*WTCP* Counts 2-4; *Euro Brokers* Counts 3-5).**

Plaintiffs also have failed to state their putative RICO claims against DMI Trust.  To state a civil RICO claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826-27.  Additionally, plaintiffs' 18 U.S.C. § 1962(a) claim requires an allegation of fact showing an "injury [resulting] from the defendant's investment of the racketeering income," see id. at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation of fact showing that the defendant "participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing the enterprise's affairs," In re Sept. 11 Attacks II, 2005 WL 2296673, at *20 (citation omitted);[15] and plaintiffs' Section 1962(d) claim requires an

---

[15]  Plaintiffs have argued that this additional pleading requirement for a Section 1962(c) claim has been described as "a relatively low hurdle for plaintiffs to clear."  Citing First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004), Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003); De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001); United States v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998).  Plaintiffs blatantly misrepresent the state of the law on point:  The Court in First Capital affirmed the dismissal of the RICO claims at issue, and none of the remaining three cases addressed pleading standards.  See Baisch, 346 F.3d at 376-77 (vacating summary judgment for defendants and remanding for further proceedings because plaintiff presented numerous specific facts, including defendant raising financing for the enterprise, obtaining bonds and insurance coverage, issuing false insurance certificates, concealing deceptive payroll practices and representing a co-defendant in meetings with plaintiff); De Falco, 244 F.3d at 309-13 (on appeal from jury verdict, finding ample evidence supporting RICO claims); Allen, 155 F.3d at 42-44 (vacating the granting of

allegation of fact showing that the defendant was a "central figure" in the scheme. Dubai Islamic
Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003). Where plaintiffs cannot
specifically allege these elements, there is no RICO violation, and no civil liability can ensue. See,
e.g., Moss, 719 F.2d at 18-19.

   Once more, plaintiffs' sparse allegations regarding DMI Trust, even if true, would
establish *none* of the requisite elements of a civil RICO claim. Neither the Complaints nor the RICO
Statements allege two or more predicate acts by DMI Trust, or any facts that could show an
agreement to commit two or more predicate acts by DMI Trust. Plaintiffs allege no facts showing
that DMI Trust engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI
Trust's assent to any alleged RICO conspiracy; no interest of, investment by, or participation by
DMI Trust in the alleged al Qaeda 'enterprise'; no injury resulting from DMI Trust's (unalleged)
investment of racketeering income; and no indication that DMI Trust was a central figure in any
endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of
the alleged al Qaeda 'enterprise.' Compare RICO Stmt. ¶¶ 5-14, *WTCP* Compl. ¶¶ 1102-14 and
*Euro Brokers* Compl. ¶¶ 108-20 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004)
("RICO is a specialized statute requiring a particular configuration of elements. These elements . . .
must be tightly particularized . . . . Parroting statutory language while generally referring the reader
back to the previous 100 paragraphs in a complaint is inadequate.").

   Plaintiffs thus have utterly failed to state any of their RICO claims against DMI
Trust, amply warranting dismissal of those claims. See e.g., De Jesus, 87 F.3d at 70 (dismissing
RICO claim based upon conclusory allegations); In re Sept. 11 Attacks II, 2005 WL 2296673, at *21-
25 (dismissing RICO claims against defendants because there were no allegations that they directed

---

summary judgment for plaintiff because issues of fact existed as to existence of RICO enterprise). In
contrast, courts actually faced with the additional pleading requirements of Section 1962(c) have repeatedly
stated that the operation-management test is "a very difficult test to satisfy." Dubai Islamic Bank v. Citibank,
N.A., 256 F. Supp. 2d 158, 164-65 (S.D.N.Y. 2003), citing LaSalle Nat. Bank v. Duff & Phelps Credit Rating
Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996); see also Redtail Leasing, Inc. v. Bellezza, 2001 WL 863556, at
*4 (S.D.N.Y. July 31, 2001); Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 216
(S.D.N.Y. 2000) ("Courts within the Second Circuit have dismissed RICO claims which failed to meet the[]
stringent standards [of § 1962(c)].").

an enterprise); <u>Dubai Islamic Bank</u>, 256 F. Supp. 2d at 164-65 (dismissing § 1962 (c) & (d) claims against bank because the "opening of accounts [and] transferring funds . . . do not constitute exerting control over the enterprise" and there were no allegations showing that bank was a 'central figure' in the alleged RICO scheme); <u>Indus. Bank of Latvia v. Baltic Fin. Corp.</u>, 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim"); <u>United States Fire Ins. Co. v. United Limousine Serv.</u>, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts should strive to flush out frivolous RICO allegations at an early stage of the litigation").

### 3.   <u>Trespass (*WTCP* Count 5; *Euro Brokers* Count 1).</u>

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  <u>Tornheim v. Fed. Home Loan Mortg. Corp.</u>, 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  <u>See</u> <u>In re Air Crash Disaster At Cove Neck, Long Island, New York</u>, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).  Where, as here, plaintiffs assert that DMI Trust aided and abetted a trespass, <u>see</u> *WTCP* Compl. ¶ 1155 <u>and</u> *Euro Brokers* Compl. ¶ 148, they must allege that DMI Trust "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty."  <u>Wantanabe</u>, 2003 WL 22862646, at *4 & n. 31-32.

Of course, plaintiffs do not allege that DMI Trust itself committed any trespass. Plaintiffs make only the generalized allegation, against most of the defendants in this action, that they "knowingly and intentionally lent financial and other material support and substantial assistance to the Al Qaeda Defendants[, which] assistance enabled the al Qaeda Defendants to plan, orchestrate, and carry out the September 11 attacks."  *WTCP* Compl. ¶ 1154; *Euro Brokers* Compl. ¶ 147.  Yet again, plaintiffs have proffered no allegation that, if proved out, would show that DMI

Trust gave "substantial assistance" to al Qaeda, had "actual knowledge" of the imminent attacks, or intended any trespass.  Accordingly, plaintiffs' trespass claims against DMI Trust must be dismissed.

> **4.** **Conspiracy and Aiding and Abetting (*WTCP* Counts 7 & 8; *Euro Brokers* Count 8).**

Plaintiffs' putative causes of action for conspiracy[16] and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting is "no[t an] independent tort").[17]  For this reason alone, the plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

Moreover, even if conspiracy and aiding and abetting were cognizable as discrete causes of action, plaintiffs have entirely failed to allege facts sufficient to state any such claim.  See supra Part I.A.  Plaintiffs' various conclusory allegations are categorically insufficient to make out any of the elements of conspiracy, and plaintiffs allege no facts showing that DMI Trust ever entered into any corrupt agreement or ever took any overt acts in furtherance of any conspiracy.  See id.  Similarly, plaintiffs have not properly alleged aiding and abetting, because they have not alleged any facts showing that DMI Trust "intentionally and substantially" assisted in the commission of al Qaeda's tortious acts.  See id.  Thus, plaintiffs have failed to allege conspiracy or aiding and abetting in support of any of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826 (defendant must know the wrongful nature of the primary actor's conduct to be liable on a concerted action theory), 832-33, 835-36 (dismissing claims against al Rajhi Bank and Arab Bank).

---

[16]  The *Euro Brokers* plaintiffs do not assert their conspiracy claim (Count 7) against DMI Trust; it is only asserted against the "Al Qaeda Defendants."  See *Euro Brokers* Compl. ¶¶ 19-28, 184-86.

[17]  Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31,  2002); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).  Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting claim is recognized under Virginia law.  Cf. A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., 2002 WL 32136374, at *1.

5.      **Aiding and Abetting a Violation of International Law (*WTCP* Count 9 & *Euro Brokers* Count 6).**

Plaintiffs' nebulous claim for a violation of international law is meritless.  Plaintiffs cannot assert a claim for airplane hijacking as a violation of customary international law because "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute."  Hayden v. Pataki, 2004 WL 1335921, at * 7 (S.D.N.Y. June, 14, 2004), citing Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir. 1995).  There must be "great caution in adapting the law of nations to private rights."  Sosa v. Alvarez-Machain, 542 U.S. 692, --, 124 S. Ct. 2739, 2764 (2004) (declining to recognize a private cause of action for arbitrary arrest under the law of nations); see also Friedman v. Bayer Corp., 1999 WL 33457825, at * 3 (E.D.N.Y. Dec. 15, 1999) ("customary international law prescribes norms of conduct among nations but does not create private rights of action for individuals . . . .  Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").

Moreover, "Congress may . . . explicitly, or implicitly by treaties or statutes that occupy the field" preclude a private plaintiff from bringing a claim pursuant to a supposed international law.  Sosa, 124 S. Ct. at 2765.  Here, Congress has occupied the field of airplane hijacking by implementing norms against airplane hijacking and refusing to provide a private right to sue under the conventions, the implementing statutes, or any other law.  See 18 U.S.C. § 32 (destruction of aircraft); 49 U.S.C. § 46502 (aircraft piracy); Hague Convention for the Suppression of Violence against Aircraft; Montreal Convention on Offenses and Certain Other Acts Committed on Board Aircraft, Sept. 23, 1971, 24 U.S.T. 564, 974 U.N.T.S. 177.  Because Congress has refused to create a private cause of action under these statutes, plaintiffs have no standing to assert their amorphous claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 537 U.S. 275, 286-87 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."); Coleman v. Reno, 91 F. Supp. 2d 130, 131-132 (D.D.C. 2000) (finding no private cause of action where prisoner transfer treaty and implementing statute did not provide for one); Khalid v. Bush, 355 F. Supp. 2d 311, 325-26 (D.D.C. 2005) (finding no private cause of action where Geneva Conventions and implementing statute did not provide for one).

Plaintiffs' alternative theory, that certain treaties or international proclamations have been violated, also fails, because again no private cause of action lies. "Treaties, as a general rule, are not privately enforceable. Indeed, enforcement in the final analysis is reserved to the executive authority of the governments who are parties to the treaties." Khalid, 355 F. Supp. 2d at 327. A private cause of action will lie under a treaty only if (a) the treaty is self-executing and (b) the treaty expressly provides for a private cause of action in its terms. See Dreyfus v. von Finck, 534 F.2d 24, 29-30 (2d Cir. 1976); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442 (1989) (holding that even express provisions in a Convention requiring signatory nations to pay compensation for violations creates no private cause of action to obtain such compensation). None of the accords cited by plaintiffs, see WTCP Compl. ¶ 1178 and Euro Brokers Compl. ¶ 182, creates a private right of action.[18]

In addition, "[p]laintiffs here point to little that would lead this Court to conclude that aiding and abetting international law violations is itself an international law violation that is universally accepted as a legal obligation." In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding that cause of action for aiding and abetting a violation of international law is unavailable under the ATCA). And again, even if an aiding and abetting theory

---

[18] For example, the Implementation Act of the Convention on the Prevention and Punishment of the Crime of Genocide explicitly prohibits a private right of action. See 18 U.S.C. § 1092 (the Implementation Act should not be "construed as creating any substantive or procedural right enforceable by law by any party in any proceeding"). Similarly, the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights ("ICCPR") do not create private causes of action. Sosa, 124 S. Ct. at 2767 (the "Declaration does not of its own force impose obligations as a matter of international law" and "the United States ratified the [IICPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts"). Similarly, the General Assembly Resolutions cited by plaintiffs "do not have the power to bind member States because the member States specifically denied the General Assembly that power." See Flores v. S. Peru Copper Corp., 343 F.3d 140, 165 (2d Cir. 2003). The Charter of the International Military Tribunal, Aug. 8, 1845, 59 Stat. 1544, 82 U.N.T.S. 279, and The Allied Control Council Law, No. 10 (Dec. 20, 1945) concern the creation of tribunals and establishing jurisdiction over crimes committed during the course of World War II and neither creates a private cause of action. Cf. Seguros Comercial Am. v. Hall, 115 F. Supp. 2d 1371 (M.D. Fla. 2000) (no private cause of action where treaty creates diplomatic procedures for recovery of property). The remaining four Conventions cited by plaintiffs are not self-executing treaties and none creates a private cause of action by its terms. See, e.g., The International Convention for the Suppression of Terrorist Bombings, Jan. 12, 1998, art. 2, S. Treat Doc. No. 106-6, at 4, 37 I.L.M. 249, 253, Articles 1-24 (obligating State Parties, inter alia, to take measures to implement the Convention's provisions). Accordingly, there is no private liability under these agreements in United States courts. See Flores, 343 F.3d at 163.

were viable, plaintiffs have pled no facts showing that DMI Trust has "given substantial assistance" to al Qaeda, nor have they asserted any facts showing that DMI Trust had knowledge of the wrongful nature of al Qaeda's conduct.  See supra Part I.B; Part I.C.4.

### 6.    Punitive Damages (*Euro Brokers* Count 9).

The *Euro Brokers* plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

### 7.    Intentional and/or Willful Destruction of Property (*WTCP* Count 6).

New York law provides no independent cause of action for "intentional destruction of real property."  The most analogous claims are claims for damages arising from arson and criminal mischief resulting in damage to property -- each which requires a showing of tortious intent, and of course a showing of proximate cause.  See, e.g., People v. Keech, 467 N.Y.S. 2d 786, 788-89, 121 Misc.2d 368 (Sup. Ct. 1983) (arson requires intent); People v. Summer, 407 N.Y.S.2d 53, 54, 64 A.D.2d 658 (App. Div. 1978) (criminal mischief resulting in property damage requires intent). As set forth throughout this Memorandum, plaintiffs fail to allege facts that could give rise to any inference of intent as to DMI Trust, or to a finding of proximate causation.  See supra Part I.B.

## II
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have filed Complaints totaling 370 pages and identical 38-page RICO Statements over the course of the last year.  "Even with the opportunity to clarify their claims," however, plaintiffs' failure to state any of their claims against DMI Trust is as complete, and as conclusive, as one could imagine.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim").  There is no indication, within or

outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice.  See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

## CONCLUSION

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 796.  Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust.  They have not done so.  For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
      October 7, 2005

Respectfully submitted,
SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/s/_____

James J. McGuire (JM-5390)

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant
Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
 Of Counsel