**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)**<br><br>**ECF Case** |

This document relates to:        **Federal Ins. Co., et al. v. Al Qaida, et al.**
**(03 CV 6978)**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
   *Dar Al-Maal Al-Islami Trust*

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST............................................................2

ARGUMENT .................................................................................................................................4

I     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST ......................4

     A.    Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. ...........................10

     B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ..................................13

     C.    Plaintiffs Have Failed To Plead Facts Sufficient To State  Any Of Their Causes of Action Against DMI Trust....................................................................15

          1.    Trespass (Count 1)................................................................................16

          2.    Wrongful Death & Survival (Counts 2 & 3). ......................................17

          3.    Assault and Battery & Intentional Infliction of Emotional Distress (Counts 4 & 5)......................................................................18

          4.    Negligent Infliction of Emotional Distress & Negligence (Counts 5 & 11). ................................................................................18

          5.    Torture Victims Protection Act (Count 6).........................................18

          6.    Conspiracy and Aiding and Abetting (Counts 7 & 9).......................19

          7.    RICO (Count 8). ..................................................................................19

          8.    Anti-Terrorism Act (Count 10)...........................................................22

          9.    Punitive Damages (Count 12)..............................................................24

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.........................24

CONCLUSION..............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
    1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992) .......................................................................19

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.,
    2005 WL 1649045 (S.D.N.Y. July 13, 2005) ........................................................................24

Acito v. Imcera Grp., Inc.,
    47 F.3d 47 (2d Cir. 1995) ......................................................................................................25

In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990,
    885 F. Supp. 434 (E.D.N.Y. 1995) ........................................................................................16

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
    228 F.3d 429 (3d Cir. 2000) ..................................................................................................19

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994) ....................................................................................................14

American Fuel Corp. v. Utah Energy Dev. Co.,
    122 F.3d 130 (2d Cir. 1997) ....................................................................................................2

Amsterdam Tobacco Inc. v. Philip Morris Inc.,
    107 F. Supp. 2d 210 (S.D.N.Y. 2000) ...................................................................................21

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...........................................................................2

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
    459 U.S. 519, 103 S. Ct. 897 (1983) .....................................................................................12

Atuahene v. City of Hartford,
    10 Fed. Appx. 33 (2d Cir. 2001) .............................................................................................5

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003) ..................................................................................................21

Barr v. Abrams,
    810 F.2d 358 (2d Cir. 1987) ....................................................................................................6

Benas v. Baca,
    2001 WL 485168 (C.D. Cal. Apr. 23, 2001) .........................................................................19

Bernstein v. Misk,
    948 F. Supp. 228 (E.D.N.Y. 1997) ..........................................................................................9

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
    291 F.3d 1000 (7th Cir. 2002) ...................................................................................7, 14, 15, 22

Boyanowski v. Capital Area Intermediate Unit,
    215 F.3d 396 (3d Cir. 2000) ..................................................................................19

Burnett v. Al Baraka Inv. and Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................................1, 9

Casio Computer Co. v. Sayo,
    2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ...........................................................9

De Falco v. Bernas,
    244 F.3d 286 (2d Cir. 2001) ..................................................................................21

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ............................................................... 2, 15, 16, 18, 22

Dubai Islamic Bank v. Citibank, N.A.,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003).............................................................. 21, 22

Electronic Commc'ns Corp. v. Toshiba Am.,
    129 F.3d 240 (2d Cir. 1997) ..................................................................................25

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ..................................................................................21

Flanagan v. Shively,
    783 F. Supp. 922 (M.D. Penn. 1992).....................................................................11

Ford v. New Britain Trans. Co.,
    2004 WL 3078827 (D.Conn. Dec. 21, 2004) .........................................................24

Gillette Co. v. Philips Oral Healthcare, Inc.,
    2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) ..........................................................5

Glasheen v. City of Albany,
    1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) ..........................................................6

Gmurzynska v. Hutton,
    2003 WL 1193727 (S.D.N.Y. March 14, 2003)........................................................9

Grove Press, Inc. v. Angleton,
    649 F.2d 121 (2d Cir. 1981) ..................................................................................19

Guadagnoli v. Seaview Radiology, P.C.,
    184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ........................................18

Halberstam v. Welch,
    705 F.2d 472 (D.C. Cir. 1983) ...............................................................................19

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003).........................................................12

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ...................................................................................11

Holmes v. Sec. Investor Prot. Corp.,
   503 U.S. 258, 112 S. Ct. 1311 (1992) .................................................................................20

Jackson v. BellSouth Telecomms.,
   372 F.2d 1250 (4th Cir. 2004) ...........................................................................................6

Johnston v. Norton,
   1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ...................................................................13

Kieft v. Becker,
   58 Va. Cir. 171, 2002 WL 481249 (Va. Cir. Ct. Jan. 31,  2002) .....................................19

Kittay v. Kornstein,
   230 F.3d 531 (2d Cir. 2000) ..............................................................................................6

Koken v. Steinberg,
   825 A.2d 723 (Pa. Comm. Ct. 2003) ...............................................................................13

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
   191 F.3d 229 (2d Cir. 1999) ...................................................................................... 13, 20

Lesavoy v. Lane,
   304 F. Supp. 2d 520 (S.D.N.Y. 2004) ..............................................................................22

Liberman v. Worden,
   701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000) ......................................................12

In re Livent, Inc. Noteholders Secs. Litig.,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..............................................................................16

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
   268 F.3d 58 (2d Cir. 2001) ................................................................................................2

Mason v. Am. Tobacco Co.,
   346 F.3d 36 (2d Cir. 2003) ..............................................................................................16

Medina v. Bauer,
   2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ...................................................................2, 5

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
   506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dep't 1986) ......................................................18

Moss v. Morgan Stanley Inc.,
   719 F.2d 5 (2d Cir. 1983) .................................................................................................21

In re NASDAQ Market-Makers Antitrust Litig.,
   894 F. Supp. 703 (S.D.N.Y. 1995) ..................................................................................12

Nat'l Org. for Women, Inc. v. Scheidler,
   510 U.S. 249 (1994).........................................................................................................20

Oneida Indian Nation of New York v. City of Sherrill,
   337 F.3d 138 (2d Cir. 2003) ............................................................................................25

Papasan v. Allain,
    478 U.S. 265 (1986) ................................................................................15

Pittman v. Grayson,
    149 F.3d 111 (2d Cir. 1998) ...................................................................14

Powell v. Jarvis,
    460 F.2d 551 (2d Cir. 1972) .....................................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
    1998 WL 355422 (S.D.N.Y. Jul. 2, 1998) ...............................................9

Redtail Leasing, Inc. v. Bellezza,
    2001 WL 863556 (S.D.N.Y. July 31, 2001) ...........................................21

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
    2002 WL 32136374 (Va. Cir. Ct. Sept. 27, 2002) .......................... 12, 19

Skipworth v. Lead Indus. Ass'n, Inc.,
    690 A.2d 169 (Pa. 1997) ........................................................................11

Small v. Lorillard Tobacco Co.,
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) ..........................................19

Smith v. County of Erie,
    295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) ..................24

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ...............................................................5, 16

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001) ...................................................16

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2002) ...............................................................6

Stewart v. Crosswalks Television Network,
    2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ..........................................12

Suarez v. Underwood,
    103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) ....11

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) .............................................................................6, 16

In re Terrorist Attacks on Sept. 11, 2001,
    2005 WL 2296673 (S.D.N.Y. Sept., 21 2005) ........................... 6, 8, 11, 16, 21,
    .......................................................................................................22

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)..................................................1, 5, 7, 8, 9,
    ............................................................................................... 10, 12, 13, 14, 15,
    ............................................................................................... 16, 18, 19, 20, 21,
    ...............................................................................................22, 23, 24, 25

Tornheim v. Fed. Home Loan Mortg. Corp.,
    988 F. Supp. 279 (S.D.N.Y. 1997) ...............................................................17

Twombly v. Bell Atlantic Corp.,
    313 F. Supp. 2d 174 (S.D.N.Y. 2003)........................................................6, 16

United States Fire Ins. Co. v. United Limousine Serv.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004).............................................................22

United States v. Allen,
    155 F.3d 35 (2d Cir. 1998) .............................................................................21

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) .............................................................................22

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 10, 2003)......................................... 13, 17

Wiwa v. Royal Dutch Petroleum Co.,
    2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ...................................................19

York v. Bar of New York,
    286 F.3d 122 (2d Cir. 2002).........................................................................16

## Statutes and Other Authority

18 U.S.C. § 1962 (1988) ............................................................................... 21, 22

18 U.S.C. §§ 2331-2333 (2000).........................................................................22

Fed. R. Civ. P. 8 ...............................................................................................5, 6

Fed. R. Civ. P. 12(b)(6)....................................................................................4, 5

8 N.Y. Jur., Conspiracy, § 19 (1982) ............................................................ 11, 12

N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002).................................................... 17, 18

5C Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ...........7, 23

## INTRODUCTION

As the Chairman of the Board of Dar Al-Maal Al-Islami Trust ("DMI Trust")

publicly stated shortly after the September 11 attacks, DMI Trust sympathizes deeply with the losses

suffered by plaintiffs in this action, and joins the plaintiffs in condemning those who twist Islam into

a false justification for the commission of atrocities such as those of September 11.[1]  At the same

time, however, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have

leveled at these defendants," Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 103

(D.D.C. 2003) ("Burnett I"), and plaintiffs are required to make allegations of *fact* sufficient to

support such inflammatory claims.  See In re Terrorist Attacks on September 11, 2001, 349 F. Supp.

2d 765, 800-01, 813-14, 830-31 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") ("in light of the extreme

nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as

to any particular defendant").

Even with the benefit of a 182-page Amended Complaint and a 21-page Amended

RICO Statement, the *Federal Insurance* plaintiffs have not made even a single such allegation with

regard to DMI Trust.  The plaintiffs' Amended Complaint and Amended RICO Statement (Docket

No. 949) make sweeping allegations of grave wrongdoing by the named defendants, including DMI

Trust.  Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any

relations at all between DMI Trust and al Qaeda, or that DMI Trust had any role whatsoever in the

plot that culminated in the September 11 terrorist attacks.  Instead, plaintiffs offer up dozens of

conclusory allegations that, as the Court's January 18 and September 21 Orders establish, are wholly

insufficient to state their claims, salted with a handful of factual allegations that are innocuous at

best, and self-contradictory at worst.  Accordingly, in the absence of any averment connecting DMI

Trust to Al Qaeda or to the terrorist attacks of September 11, 2001, plaintiffs' claims must be

dismissed in their entirety.

---

[1]  See Memorandum of Law of Prince Mohamed al-Faisal al-Saud in Support of Motion to Dismiss the *Ashton* Complaint (Docket No. 41), Exh. A, filed March 19, 2004.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *Federal Insurance* Amended Complaint and Amended RICO Statement contain only a handful of pertinent factual allegations regarding DMI Trust,[2] which are restated below:

### Allegations Concerning Donations to Charities:

As an article of faith, Muslims practice *zakat*, the donation of a percentage of their income to charitable causes; Muslims also tithe income inadvertently received from religiously unacceptable sources, also known as *haram* income, such as any income from alcohol or gambling. See RICO Stmt., Exh. A at 14-15; *Federal Insurance* First Amended Complaint ("FAC") ¶ 310. Plaintiffs allege that "DMI [Trust] and its affiliates disburse *Zakat* and *Haram* [sic] funds under their control to charities [that] . . . were, in fact, fronts for al Qaeda." See RICO Stmt., Exh. A at 15. The only allegation of specific fact that plaintiffs offer in support of this assertion is an allegation that DMI Trust made *zakat* donations to branches of the International Islamic Relief Organization ("IIRO") and the Muslim World League ("MWL") in Egypt in the early 1990s. See id. at 16. Plaintiffs assert that DMI Trust "knew or had to know that the funds that it managed or contributed . . . to certain charities, were reasonably foreseeable and/or likely to be used for

---

[2]  Plaintiffs define the abbreviation "DMI" to denote both DMI Trust *and* its indirect subsidiary DMI Administrative Services, S.A. ("DMI S.A."). See RICO Stmt., Exh. A at 7. Plaintiffs then proceed to make various allegations regarding "DMI," without indicating which allegations are meant to apply to which entity. DMI Trust and DMI S.A. are separate companies, however -- and separate defendants -- operating in different countries. Plaintiffs' allegations regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone. See e.g., Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted."); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where allegations did not distinguish among defendants, "the allegations fail to give adequate notice to these defendants as to what they did wrong"). Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of DMI S.A. or any other putatively related entity. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, intermingling of funds, and inadequate capitalization); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil). Nevertheless, for completeness' sake and for the convenience of the Court, DMI Trust will proceed as if all of the allegations regarding "DMI" were intended to denote DMI Trust.

international terrorist activities and terrorist-related purposes," see id., even though by plaintiffs'
own account, such charities "facilitat[ed] and mask[ed] the collection and movement of [al-Qaeda]
funds . . . to conceal [al Qaeda's] existence and true purpose." See FAC ¶¶ 80, 118.

<u>Allegations Concerning The Provision Of Banking Services</u>:

Plaintiffs sweepingly allege that DMI Trust "launder[ed] money . . . provid[ed]
financial services . . . and facilitat[ed] weapons and military equipment purchases and money
transfers" in support of al Qaeda. See RICO Stmt., Exh. A at 9. DMI Trust, plaintiffs conclusorily
assert, "has actively sponsored and supported . . . al Qaida," via its putative indirect subsidiaries
Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank
("al Shamal"). See FAC ¶ 311; see also RICO Stmt., Exh. A at 12. The only allegation of fact that
plaintiffs offer in support of this proposition is that al Qaeda operatives in the Sudan maintained
accounts at Al Shamal, FIBS, and TIB in the mid-1990s, and that money from those accounts was
transferred by the account holders to other al Qaeda members. See RICO Stmt., Exh. A at 11-13;
FAC ¶¶ 315, 329, 337. Plaintiffs also allege that DMI Trust is a shareholder of al Shamal. See
RICO Stmt., Exh. A at 12. In their Amended RICO Statement, plaintiffs further allege that, at an
unspecified time and place and for unspecified purposes, subsidiaries of DMI Trust have "facilitated
financial transactions for, and advertised, maintained and serviced accounts on behalf of, several of
al Qaeda's known charity fronts, including al Haramain Islamic Foundation, [IIRO] and the [MWL]"
and that the IIRO held accounts at two other alleged subsidiaries of DMI Trust. See id. at 9, 15.

As the above recitation makes clear, plaintiffs do not make *any* allegations of fact
showing that DMI Trust made *zakat* donations to charities with any knowledge that such charities
were al Qaeda 'fronts,' or provided anything other than routine banking services to anyone. See
RICO Stmt., Exh. A at 9, 16. Plaintiffs offer no specific allegations of fact showing that DMI Trust
knowingly supported al Qaeda in any way, much less any allegations showing that DMI Trust ever
"launder[ed] money," "provid[ed] financial services" to, or "facilitat[ed] weapons and military
equipment purchases and money transfers" for al Qaeda. Nor do plaintiffs allege *any facts* showing

that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement by all defendants to "commit acts of international terrorism against the United States, its nationals and allies."  See FAC ¶ 624.  Indeed, in their 182-page Complaint and 21-page RICO Statement, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any purposeful transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite two years of effort, as reflected in two successive Complaints and two RICO Statements, their claims should be dismissed with prejudice.

## I
## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

Plaintiffs have thoroughly failed to allege facts sufficient to state any of the twelve causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs' injuries.  Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of 'shotgun' allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., FAC ¶ 66 (DMI Trust, and all other defendants, "aided and abetted, [and] conspired with . . . defendant al Qaida and/or affiliated FTOs, associations, organizations or persons"); id. ¶ 257 (the defendant banks, presumably including DMI Trust, "knowingly maintained accounts for individuals and organizations operating within Al Qaida's infrastructure, and facilitated transfers between those entities . . . [m]any of these banks also directly funded al Qaida's global operations."); RICO Stmt., Exh. A, at 9 (DMI Trust "has, over a period of many years, directly and through its subsidiaries and affiliates, knowingly provided material support and resources to al Qaeda and/or affiliated individuals and entities").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Medina, 2004 WL 136636, at *6 (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it. See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001), and Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[3]

Apart from conclusory, generalized allegations that categorically fail to state their claims, plaintiffs offer only innuendo, supported by the handful of factual allegations recited above -- allegations that, upon even cursory review, prove to be innocuous, and often self-contradictory. For example, while plaintiffs allege that DMI Trust donated *zakat* funds to IIRO and MWL in the early 1990s, see RICO Stmt., Exh. A at 16, plaintiffs do not allege any facts showing that DMI Trust provided donations to the IIRO or MWL with the knowledge that either charity was a terrorist

---

[3]  For instance, the thoroughly conclusory allegation that all banking defendants "knowingly maintained accounts for individuals and organizations operating within Al Qaida's infrastructure, and facilitated transfers between those entities," does not specify what banking services *DMI Trust* is alleged to have provided, or to whom.  See, e.g., FAC ¶ 257.  Certainly, this allegation includes nothing that could be read to indicate that DMI Trust, or any of its alleged subsidiaries, ever provided anything other than routine banking services to anyone, much less that DMI Trust knowingly provided banking services of any sort to terrorists.  Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI Trust with any meaningful notice of the supposed basis of the claims against it.  See, e.g., Kittay, 230 F.3d at 541 (even under notice pleading, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery").  Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that their generalized, conclusory allegations should be deemed sufficient to state their immense claims.  Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims.  Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *18, 25 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II"), citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

'front,' or any "facts to support an inference that [DMI Trust was] sufficiently close to the terrorists'

illegal activities'" to infer such knowledge.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 813-

14 ("Conclusory allegations that [defendant] donated money to charities, without specific factual

allegations that he knew they were funneling money to terrorists, do not suffice.").  Moreover,

plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations.  Plaintiffs

themselves acknowledge that terrorist 'front' charities "facilitat[ed] and mask[ed] the collection and

movement of [al-Qaeda] funds" in order "to conceal [al Qaeda's] existence and true purpose," see

FAC ¶¶ 80, 118, negating any inference that donors like DMI Trust "knew or had to know" of such

charities' nefarious activities.  See 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1363 at 120-21 (3d ed. 2004) ("the district court will not accept as true

pleading allegations that are contradicted by . . . other allegations"); see also Boim v. Quranic

Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1011 (7th Cir. 2002)

("Boim II") ("To say that funding *simpliciter* constitutes an act of terrorism is to give the [ATA]

statute an almost unlimited reach.").  Thus, "[p]laintiffs have not pleaded facts to suggest [that DMI

Trust] knew [it was] making contributions to terrorist fronts and provided substantial assistance or

encouragement to the terrorists."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800.[4]

  Similarly, as to provision of banking services, plaintiffs allege that al Qaeda members

maintained accounts at the Sudanese banks FIBS, TIB and al Shamal, see FAC ¶ 311 and RICO

Stmt., Exh. A at 12; that subsidiaries of DMI Trust have "facilitated financial transactions for, and

advertised, maintained and serviced accounts on behalf of" al Haramain, the IIRO and MWL, see

RICO Stmt., Exh. A at 9; and that the IIRO held accounts at two subsidiaries of DMI Trust, see id.

---

[4] Unlike Hamas in Boim, none of the organizations that DMI Trust is alleged to have supported were
designated a sponsor of terrorism at the time of the alleged contributions.  See Boim II, 291 F.3d at 1002
(noting that Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary
of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the
plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including
allegations that  "one defendant entity allegedly employed an individual designated as a terrorist affiliated with
Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and
admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity
defendants."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, citing Boim v. Quranic Literacy Inst. & Holy
Land Found., 127 F. Supp. 2d 1002, 1006-1008. (N.D. Ill. 2001).  No such allegations are made here as to
DMI Trust.

at 15.  To be clear, plaintiffs do not allege that DMI Trust itself provided any banking services to anyone at all.  The allegations recited above all concern provision of banking services by alleged *subsidiaries* of DMI Trust.  And while plaintiffs allege that some of those subsidiaries "facilitated financial transactions" and maintained accounts for al Haramain, the IIRO and MWL,[5] and that other putative subsidiaries maintained accounts for al Qaeda-related third parties in the Sudan, see RICO Stmt., Exh. A at 9, 12, 15, plaintiffs fail to make any supporting factual allegations indicating when, where, why or how any subsidiary of DMI Trust "facilitated" any transactions, or any allegations showing that any subsidiary of DMI Trust knowingly maintained accounts for suspect persons.

Plaintiffs have not made any specific allegations of fact showing that DMI Trust has ever engaged in any financial transactions of any sort, much less in any transactions having anything to do with terrorism, and have alleged no facts to suggest that DMI Trust knowingly provided banking services to anyone connected with al Qaeda.  Absent any such allegations of fact, plaintiffs' assertion that DMI Trust "facilitated financial transactions" for al Haramain, the IIRO and MWL alleges nothing more than the provision of routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, 2005 WL 2296673, at *23 (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").[6]  Similarly, allegations

---

[5]  Plaintiffs' particular allegation states that "DMI companies have facilitated financial transactions for . . ." al Haramain, IIRO and MWL.  See RICO Stmt., Exh. A at 9.  However, as plaintiffs allege in substance if not in form, DMI Trust is a holding company, see id. at 7, which holds interests in related companies and provides no banking or financial services to anyone.  Thus, according to plaintiffs' own allegations, DMI Trust itself could not provide any financial transactions to anyone.

[6]  Similarly, plaintiffs' conclusory and unsupported allegation that DMI Trust "launder[ed] money" for al Qaeda, see RICO Stmt., Exh. A at 9, does not substitute for allegations of facts sufficient to show that 1) DMI Trust conducted a financial transaction in interstate commerce; 2) DMI Trust knew that the property

that subsidiaries of DMI Trust "provided financial services to" suspect persons, or "facilitat[ed] . . . purchases and money transfers," also amount to nothing more than an allegation that those subsidiaries provided routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835 (plaintiffs "do not include any facts to support the inference that Arab Bank knew or had to know it was providing material support to terrorists by providing financial services . . . or by processing wire transfers . . . .").  Moreover, even if these allegations did amount to anything other than the provision of routine banking services by those subsidiaries, plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust liable for any actions of its ostensible subsidiaries.  See supra n.2; Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate allegations that categorically fail to state a claim.  Those allegations that are not utterly conclusory are either thoroughly irrelevant,[7] or allege nothing more than the provision of routine banking services and innocuous charitable donations that, according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts*

---

involved represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired proceeds.  See Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (holding conclusory allegations insufficient); Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000).

[7]  For instance, plaintiffs' lengthy allegations regarding former members of the Board of Directors and Sharia Board of DMI Trust are irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment.  Compare RICO Stmt., Exh. A at 9-11 and FAC ¶ 312 with, e.g., In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833, 836 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business"; "[a]n employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the employer's business."); Burnett I, 274 F. Supp. 2d at 109 n.18 (bank is not liable for conduct of board members in the absence of allegations that director "act[ed] within the scope of his bank employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").  Similarly, this Court has already held that the allegation that a defendant was a shareholder of Al Shamal Islamic Bank -- indeed, even an allegation that a defendant was a founding shareholder of that entity -- does not state a claim for relief.  Compare RICO Stmt., Exh. A at 11-13 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 836.

"to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801.  "Here, there are no such factual bases presented, there are only conclusions."  Id.

### A.    Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11.  Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state most of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797-98, 805, 826, 830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the September 11 hijackers, they may proceed with" their claims.).  Plaintiffs assert discrete causes of action for conspiracy and for aiding and abetting, see infra Part I.C.6, and also apparently assert that DMI Trust committed the other torts complained of by conspiring with al Qaeda and by aiding and abetting al Qaeda's commission of such crimes.  See, e.g., FAC ¶ 66 (DMI Trust, and all other defendants, "aided and abetted, [and] conspired with . . . defendant al Qaida and/or affiliated FTOs, associations, organizations or persons"); id. ¶ 600 ("the September 11th attack was a direct, intended and foreseeable product of a larger conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies."); id. ¶ 615 ("The defendants knew or should have known that their actions in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11th Attack, would result in the murder and injury of innocent persons . . .").  Thus, because plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks, their claims depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.[8]

---

[8] Plaintiffs need not plead concerted action liability in support of their ATA and RICO claims, though allegations sufficient to state aiding and abetting in this case likely (but not necessarily) would also state a claim under the ATA, and allegations sufficient to state conspiracy likely would state a RICO claim.  As set forth throughout, however, plaintiffs have alleged no facts sufficient either to state their ATA and RICO claims, on the one hand, see infra Part I.C.7, I.C.8, or to state conspiracy or aiding and abetting in support of their other tort claims.

Plaintiffs' discrete causes of action for conspiracy and aiding and abetting are not recognized as independent causes of action in New York, and therefore are due to be dismissed. See infra Part I.C.6.  Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[9]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, 2005 WL 2296673, at *25 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy are based"); Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); and Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.").  The Complaint and RICO Statement, however, allege *no* communications or consultations of *any* kind by

---

[9]  Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

*any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy "to commit acts of international terrorism against the United States, its nationals and allies . . . ."  Compare FAC ¶ 624 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806 ("the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities").  Furthermore, plaintiffs allege neither any overt acts by DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy.  See 8 N.Y. Jur., Conspiracy § 4 (1982).  In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind.  See, e.g., Hattley, 2003 WL 1700435, at *12 (dismissing conspiracy claim for failure to allege facts in support); In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

        Similarly, plaintiffs have not properly alleged aiding and abetting.  To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act.  See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[10]  Plaintiffs' allegations that DMI Trust made donations to IIRO and the MWL in Egypt in the early 1990s, and that its putative subsidiaries "facilitated financial transactions" for al Haramain, the IIRO the MWL, show neither knowing assistance of the September 11 attacks nor "substantial" assistance.  See Wantanabe

---

[10]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002).

Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y. Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork").  And of course, plaintiffs' various conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust.  Compare FAC ¶ 684 ("Through the material support and resources provided to al Qaida, the co-defendants aided and abetted al Qaida in its campaign to commit acts of international terrorism against the United States, its nationals, and allies.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

   In sum, plaintiffs allege no direct participation by DMI Trust in the September 11 attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting, plaintiffs' claims must be dismissed in their entirety.

  **B.**  **Plaintiffs Have Failed To Plead Facts Sufficient To Show That
    Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

   Plaintiffs tender nothing to support the proposition that any action by DMI Trust proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, *i.e.*, that the injury complained of was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

   Furthermore, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As discussed above, and as the

Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations omitted). Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id.

    Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries. Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action. See, e.g., FAC ¶ 617 (as to infliction of emotional distress claim, "As a direct and proximate result of the defendants' intentional, malicious, willful, unconscionable, reckless and/or negligent actions, plaintiffs' assignors have suffered and will continue to suffer severe and permanent emotional distress and anxiety . . ."); id. ¶ 625 (as to conspiracy claim, "The September 11th Attack was a direct, intended and foreseeable product of a conspiracy among the defendants to commit acts of international terrorism against the United States, its nationals and allies."); id. ¶¶ 600, 606, 608, 611, 629, 632, 636-37, 640. These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust. See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986); De Jesus, 87 F.3d at 70.

    Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action by DMI Trust. For instance, even if third parties allegedly connected to al Qaeda maintained accounts at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, see FAC ¶¶ 315, 329, 337, the Complaint alleges no facts to suggest that such "accounts" were in any sense a cause of -- or were connected at all to -- the September 11 attacks. There are no allegations

indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether the accounts were ever used for any purpose, and if so what that purpose was.  Certainly, there is no indication, either within the four corners of the pleadings or elsewhere, that those bank accounts in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" the Chairman of the Board of DMI Trust).  In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, i.e., allegations of facts showing that the plaintiffs' injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful action.  Boim II, 291 F.3d at 1012.  The *Federal Insurance* plaintiffs' allegations that putative indirect subsidiaries of DMI Trust maintained routine bank accounts for individuals then not known to be terrorists, in the Sudan in the mid-1990s, thus fall far short of the allegations deemed *in*sufficient to establish proximate causation in Boim II.[11]

Plaintiffs have also entirely failed to allege facts sufficient to support any assertion that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A; infra Part I.C.6.  In sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of proximate cause as to any of the pending claims.

C.     **Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI Trust because they have not alleged facts sufficient to make out the specific elements of their various claims.  Even in notice pleading, neither inferences unsupported by specific factual allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d

---

[11]  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See supra n.2.

Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-36; Twombly, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit"); In re Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the factual pleadings . . . must be sufficient to state all the requisite elements of a given theory of liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) ("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for *some* allegation of fact -- *any* allegation of fact -- showing that DMI Trust ever actually *did* anything wrongful that could give rise to plaintiffs' immense claims.  See Smith, 291 F.3d at 240; De Jesus, 87 F.3d at 70; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-36.  Plaintiffs have entirely failed to plead facts sufficient to satisfy *any* of the numerous elements of their various causes of action, other than injury.  Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief."  In re Sept. 11 Attacks II, 2005 WL 2296673, at *18 (citations omitted).  The claims against DMI Trust therefore must be dismissed.

### 1.    **Trespass (Count 1).**

"Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner.  The act must be intentional and the damages a direct consequence of the defendant's act."  Tornheim v. Fed. Home Loan Mortg. Corp., 988 F. Supp. 279, 281 (S.D.N.Y. 1997).  Specifically, the tort of trespass requires that the invasion be the "immediate or inevitable consequence of" the defendant's misconduct or, at a minimum, proximately caused by the defendant.  See In re Air Crash Disaster At Cove Neck, Long Island, New York On Jan. 25, 1990, 885 F. Supp. 434, 440 (E.D.N.Y. 1995).  Where, as here,

plaintiffs assert that DMI Trust aided and abetted a trespass, see FAC ¶ 601, they must allege that DMI Trust "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted" a trespass. Wantanabe, 2003 WL 22862646, at *4 & n. 31-32.

Plaintiffs of course do not allege that DMI Trust itself committed any trespass, and rely instead upon theories of concerted action liability. In support, plaintiffs make only the generalized, conclusory and non-cognizable allegation, against most of the defendants in this action, that they "knew, or should have known, that their provision of material support and resources to Al Qaida, affiliated foreign states, FTOs, persons, organizations, commercial entities, and other parties would result in the unlawful trespass upon the real and personal property of plaintiffs' insureds." See FAC ¶ 602. Plaintiffs have proffered no specific allegation that, if proved out, would show that DMI Trust gave "substantial assistance" to al Qaeda, had "actual knowledge" of the planned attacks, or intended to effect any trespass. Accordingly, plaintiffs' trespass claim must be dismissed.

## 2.    Wrongful Death & Survival (Counts 2 & 3).

For plaintiffs to maintain a wrongful death claim under New York law, they must allege, through a properly appointed personal representative, that a defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death. See N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002). A survival claim requires the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death. N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2002); see also Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dep't 1986) ("both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent"). Here, again, plaintiffs have failed to allege any underlying tort by DMI Trust, and plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or survival. Compare FAC ¶¶ 604-09 with Guadagnoli v. Seaview Radiology, P.C., 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegations); see also DeJesus, 87 F.3d at 70.

Finally, plaintiffs have not properly alleged that any actions by DMI Trust proximately caused the deaths of the victims of the September 11 attacks.  See supra Part I.B.

> **3.     Assault and Battery & Intentional Infliction of Emotional Distress (Counts 4 & 5).**

Plaintiffs' claims for assault, battery, and intentional infliction of emotional distress are barred because "the statute of limitations for [such claims] is one year," In re Sept. 11 Attacks I, 349 F. Supp. 2d at 829 (citations omitted), and plaintiffs filed their Complaint on September 10, 2003 -- almost two years after the Attacks.  Moreover, even as to those claims that arise out of injuries in Pennsylvania or Virginia, and that thus might not be barred under New York's statute of limitations, plaintiffs have not alleged that DMI Trust directly perpetrated any assault, battery or outrageous conduct sufficient to state any of these three claims, and have entirely failed to allege that DMI Trust either participated in any concerted action to effect such torts upon plaintiffs.  See supra Part I.A.; infra Part I.C.6.  Finally, again, plaintiffs have not alleged any facts that could show that any action by DMI Trust proximately caused plaintiffs' injuries.  See supra Part I.B.

> **4.     Negligent Infliction of Emotional Distress & Negligence (Counts 5 & 11).**

Because plaintiffs "do not allege or identify a duty owed . . . the negligence and negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 830-31 (citation omitted).  Moreover, even if some duty could be alleged, the plaintiffs do not allege a breach of any such duty of care by DMI Trust -- because they allege no wrongful act or omission by DMI Trust -- or proximate causation of their injuries.

> **5.     Torture Victims Protection Act (Count 6).**

Plaintiffs' TVPA claim against DMI Trust, a corporation, has no merit because, among other reasons, "[o]nly individuals maybe sued under the TVPA" and there are no "allegations that [DMI Trust ] acted under color of law." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828. Moreover, the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing."  Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, *3 (S.D.N.Y. Feb. 28, 2002); see also Benas v. Baca, 2001 WL 485168, *4

(C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx. 753 (9th Cir.).  Because all injuries alleged in the instant case occurred within the United States, all of plaintiffs' TVPA claims must be dismissed.

      **6.**      **Conspiracy and Aiding and Abetting (Counts 7 & 9).**

Plaintiffs' putative causes of action for conspiracy and aiding and abetting are not recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting is "no[t an] independent tort").[12]  For this reason alone, the plaintiffs' putative conspiracy and aiding and abetting causes of action must be dismissed.

Moreover, even if conspiracy and aiding and abetting were cognizable as discrete causes of action, plaintiffs have entirely failed to allege facts sufficient to state any such claim.  See supra Part I.A.  Plaintiffs' various conclusory allegations are categorically insufficient to make out any of the elements of conspiracy, and plaintiffs allege no facts showing that DMI Trust ever entered into any corrupt agreement or ever took any overt acts in furtherance of any conspiracy.  See id.  Similarly, plaintiffs have not properly alleged aiding and abetting, because they have not alleged any facts showing that DMI Trust "intentionally and substantially" assisted in the commission of al Qaeda's tortious acts.  See id.  Thus, plaintiffs have failed to allege conspiracy or aiding and abetting in support of any of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826 (defendant must know the wrongful nature of the primary actor's conduct to be liable on a concerted action theory), 832-33, 835-36 (dismissing claims against al Rajhi Bank and Arab Bank).

      **7.**      **RICO (Count 8).**

RICO standing is a "threshold question" that "represents a jurisdictional requirement."  Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).  Here, plaintiffs

---

[12] Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL 481249, at *5 (Va. Cir. Ct. Jan. 31, 2002); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).  Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting claim is recognized under Virginia law.  Cf. A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467, at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., 2002 WL 32136374, at *1.

seek standing to assert their RICO claims as third-party subrogees of their insureds' injury in the September 11 attacks.  See FAC ¶¶ 541-97.  However, the Second Circuit in Laborers Local 17 affirmed that where plaintiffs' injuries are "purely contingent on harm to third parties, [plaintiffs'] injuries are indirect [and] [c]onsequently . . . plaintiffs lack standing to bring RICO claims." Laborers Local 17, 191 F.3d at 239; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269-70, 112 S.Ct. 1311 (1992) (setting out three policy factors which buttress the principle that plaintiffs with indirect injuries lack standing to sue under RICO).  In Laborers Local 17, the Second Circuit explained that even where the latter two policy factors from Holmes are not robust -- i.e., where the possibility of duplicative recoveries is remote and where the directly injured victims must recover under non-RICO claims -- because the plaintiffs' injuries were derivative of a harm to a third party, the injury was indirect and, therefore, plaintiffs lacked standing to sue under RICO.  See Laborers Local 17, 191 F.3d at 236-42.  Here, the insurance subrogation plaintiffs' RICO claims derive solely from the injuries suffered by their insureds.  Because plaintiffs' injuries derive from those injuries, their injuries are indirect and the Federal Insurance plaintiffs lack standing to bring their RICO claims.

Plaintiffs also have failed to state their putative RICO claims against DMI Trust.  To state such a claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  Additionally, plaintiffs' Section 1962(a) RICO claim requires an allegation of "injury [resulting] from the defendant's investment of the racketeering income," In re Sept. 11 Attacks I, 349 F. Supp. 2d at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation that the defendant "participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing

the enterprise's affairs," <u>In re Sept. 11 Attacks II</u>, 2005 WL 2296673, at *20 (citation omitted);[13] and

plaintiffs' Section 1962(d) claim requires an allegation that the defendant was a "central figure" in

the underlying scheme.  <u>Dubai Islamic Bank v. Citibank, N.A.</u>, 256 F. Supp. 2d 158, 165 (S.D.N.Y.

2003).  Where plaintiffs cannot successfully allege these RICO elements, there is no violation of the

criminal RICO statute, and no civil liability can ensue.  <u>See</u>, <u>e.g.</u>, <u>Moss</u>, 719 F.2d at 18-19.

   Once more, plaintiffs' sparse allegations regarding DMI Trust, even if true, would

establish <i>none</i> of the requisite elements of a civil RICO claim.  Neither the Complaint nor the RICO

Statement allege two or more predicate acts by DMI Trust, or any facts that could show an

agreement to commit two or more predicate acts by DMI Trust.  Plaintiffs allege no facts showing

that DMI Trust engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI

Trust's assent to any alleged RICO conspiracy; no interest of, investment by, or participation by

DMI Trust in the alleged al Qaeda 'enterprise'; no injury from DMI Trust's (unalleged) investment

of racketeering income; and no indication that DMI Trust was a central figure in any endeavor at all

or actively managed anything whatsoever, let alone that it directed the operation of the alleged al

Qaeda 'enterprise.'  <u>Compare</u> RICO Statement generally <u>and</u> FAC ¶¶ 307-12 <u>with</u> <u>Lesavoy v. Lane</u>,

304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular

configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory

---

[13]  Plaintiffs have argued that this additional pleading requirement for a Section 1962(c) claim has been
described as "a relatively low hurdle for plaintiffs to clear."  <u>Citing</u> <u>First Capital Asset Mgmt. v. Satinwood,
Inc.</u>, 385 F.3d 159, 176 (2d Cir. 2004), <u>Baisch v. Gallina</u>, 346 F.3d 366, 377 (2d Cir. 2003); <u>De Falco v.
Bernas</u>, 244 F.3d 286, 309 (2d Cir. 2001); <u>United States v. Allen</u>, 155 F.3d 35, 42-43 (2d Cir. 1998).  Plaintiffs
blatantly misrepresent the state of the law on point:  The Court in <u>First Capital</u> affirmed the dismissal of the
RICO claims at issue, and none of the remaining three cases addressed pleading standards.  <u>See</u> <u>Baisch</u>, 346
F.3d at 376-77 (vacating summary judgment for defendants and remanding for further proceedings because
plaintiff presented numerous specific facts, including defendant raising financing for the enterprise, obtaining
bonds and insurance coverage, issuing false insurance certificates, concealing deceptive payroll practices and
representing a co-defendant in meetings with plaintiff); <u>De Falco</u>, 244 F.3d at 309-13 (on appeal from jury
verdict, finding ample evidence supporting RICO claims); <u>Allen</u>, 155 F.3d at 42-44 (vacating the granting of
summary judgment for plaintiff because issues of fact existed as to existence of RICO enterprise).  In
contrast, courts actually faced with the additional pleading requirements of Section 1962(c) have repeatedly
stated that the operation-management test is "a very difficult test to satisfy."  <u>Dubai Islamic Bank</u>, 256 F.
Supp. 2d at 164, <u>citing</u> <u>LaSalle Nat. Bank v. Duff & Phelps Credit Rating Co.</u>, 951 F. Supp. 1071, 1090
(S.D.N.Y. 1996); <u>see also</u> <u>Redtail Leasing, Inc. v. Bellezza</u>, 2001 WL 863556, at *4 (S.D.N.Y. July 31, 2001);
<u>Amsterdam Tobacco Inc. v. Philip Morris Inc.</u>, 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) ("Courts within the
Second Circuit have dismissed RICO claims which failed to meet the[] stringent standards [of § 1962(c)].").

language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate."). Plaintiffs thus have completely failed to state any RICO claims against DMI Trust, amply warranting dismissal of such claims. See e.g., DeJesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); see also In re Sept. 11 Attacks II, 2005 WL 2296673, at *21-25 (dismissing RICO claims against defendants because there were no allegations that they directed an enterprise); Dubai Islamic Bank, 256 F. Supp. 2d at 164-65 (dismissing § 1962(c) & (d) RICO claims against bank because the "opening of accounts . . . [and] transferring funds . . . do not constitute exerting control over the enterprise" and there were no allegations that bank was a central figure in the alleged scheme); United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts should strive to flush out frivolous RICO allegations at an early stage of the litigation").

### 8.    Anti-Terrorism Act (Count 10).

Under the ATA, a plaintiff may bring a private cause of action for damages, where (i) plaintiff is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) due to a defendant's "material support" of international terrorism. 18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003). "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828, citing Boim II, 291 F.3d at 1023.

Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact that could possibly show that DMI Trust engaged in any act of material support to al Qaeda knowingly or with a desire to see a terrorist plot succeed.[14] As set forth above, plaintiffs

---

[14] Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support prohibited activities such as the use of tobacco or alcohol, in an apparent attempt to imply that, because DMI Trust donates to Islamic charities in order to ensure that *zakat* contributions do not support such activities, it must have known that the specific charities to whom it allegedly made contributions were terrorist 'fronts.' See RICO Stmt., Exh. A at 14-15. This allegation regarding the duty of *zakat*, however, cannot support such an implication. First, plaintiffs themselves acknowledge that Islamic charities' support for terrorism was conducted by "merg[ing]" and "hid[ing]" illicit funds among licit donations to "legitimate humanitarian or

allege nothing more than that DMI Trust made mundane charitable donations to the IIRO and MWL, and that putative subsidiaries of DMI Trust provided routine banking services to charities and to unknown al Qaeda members in the Sudan in the mid-1990s, without any indication at all that DMI Trust itself made any donations, or that its subsidiaries provided any banking services, with knowledge of the recipient's tortious activities.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 (alleged "relationship with Al Shamal . . . which purportedly knowingly opened accounts for al Qaeda operatives . . . is too remote in time and proximity"), 832-33, 835-36.

Clearly, as this Court held regarding Al Rajhi Bank, "Plaintiffs do not allege that [DMI Trust] provided direct material support to al Qaeda," as is required to state an ATA claim: "Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11."  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33.[15]  Plaintiffs thus have wholly failed to state their ATA claim against DMI Trust, and the claim must be dismissed.

---

social programs," in order to "conceal [al Qaeda's] existence and true purpose," see FAC ¶¶ 80, 118, negating any inference that donors like DMI Trust "had to know" that *zakat* funds were being diverted.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33 (dismissing claims against bank despite similar allegations regarding duty of *zakat*); 5C WRIGHT & MILLER, § 1363 at 120-21 ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations").  Second, plaintiffs allege only that, because DMI Trust supposedly made *zakat* contributions to now-suspect charities, it "knew or had to know" that such charities were terrorist 'fronts'; yet as this Court has held, an implication of constructive knowledge is insufficient to establish *scienter* for ATA purposes.  Rather, plaintiffs are required to allege facts showing *actual* knowledge of the recipient's terrorist activities (albeit not specific knowledge of the recipient's scheme).  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33, citing Pittman, 149 F.3d at 123.  No such facts as to DMI Trust have been alleged here.

[15]  Indeed, the allegations against DMI Trust are at least as empty as those asserted -- and found insufficient -- against Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim that subsidiaries of DMI Trust have, in the past, "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of" al Haramain, the IIRO and the MWL, see RICO Stmt., Exh. A at 9, again without any allegations indicating where, when, why or how such subsidiaries of DMI Trust provided such banking services to those charities, or any facts indicating that DMI Trust or its subsidiaries knew that any ostensible recipient of banking services was supporting terrorism.  Plaintiffs further contend

9.     **Punitive Damages (Count 12).**

Finally, plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action. See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002).

## II
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Over the course of the last two years, plaintiffs have filed two lengthy Complaints and two successive RICO Statements specifically regarding DMI Trust. "Even with the opportunity to clarify their claims," however -- indeed, even with several opportunities -- plaintiffs' failure to state any of their claims against DMI Trust is as complete, and as conclusive, as one could imagine. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim"). There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the manifold defects of their claims, as set forth throughout this Memorandum. Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice. See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would be futile); Acito v. Imcera Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) (same); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 835

_____

that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831. In contrast, plaintiffs here claim only that subsidiaries of DMI Trust maintained accounts for unknown al Qaeda members in the Sudan in the mid-1990s, see FAC ¶ 311, again without any allegation showing that DMI Trust knew that those accounts, at those putative subsidiaries, were held by suspect persons.

(dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

## **<u>CONCLUSION</u>**

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001." <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 796. Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust. They have not done so. For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
      October 7, 2005

                      Respectfully submitted,
                      SHEPPARD MULLIN RICHTER & HAMPTON LLP

                      By:_____/s/_____
                        James J. McGuire (JM-5390)

                        30 Rockefeller Plaza, 24th Floor
                        New York, New York 10112
                        (212) 332-3800

                        *Attorneys for Defendant*
                          *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
 Of Counsel