**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:        Estate of John P. O'Neill, Sr. v. Al Baraka Inv. &
                                 Dev. Corp., et al. (04 CV 1923)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
   *Dar Al-Maal Al-Islami Trust*

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST ...............................................2

ARGUMENT ..........................................................................................................................4

I      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST ......................4

     A.    Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. ............................10

     B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ....................................13

     C.    Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust ..................................................................16

          1.    Torture Victims Protection Act (Count 1) ............................................17

          2.    Alien Tort Claims Act (Count 2). .........................................................17

          3.    Wrongful Death & Survival (Counts 3 & 4). ........................................18

          4.    Intentional Infliction of Emotional Distress (Count 5). ........................18

          5.    Negligent Infliction of Emotional Distress And Negligence  (Counts 5 & 8). ...............................................................................................19

          6.    Conspiracy and Aiding and Abetting (Counts 6 & 7) ...........................19

          7.    Anti-Terrorism Act (Count 9) ...............................................................20

          8.    RICO (Count 10). .................................................................................22

          9.    Punitive Damages (Count 11). ..............................................................24

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE .........................24

CONCLUSION .......................................................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>

A.G. Van Metre Const., Inc. v. NVKettler L.P.,
  1992 WL 884467 (Va. Cir. Ct. Jan. 29, 1992) ....................................................................20

AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co.,
  2005 WL 1649045 (S.D.N.Y. July 13, 2005) ......................................................................25

Acito v. Imcera Grp., Inc.,
  47 F.3d 47 (2d Cir. 1995) ...................................................................................................25

Alexander & Alexander of New York, Inc. v. Fritzen,
  68 N.Y.2d 968, 503 N.E.2d 102 (N.Y. 1986) ....................................................................12

Allegheny Gen. Hosp. v. Phillip Morris, Inc.,
  228 F.3d 429 (3d Cir. 2000) ...............................................................................................20

In re Am. Express Co. S'holder Litig.,
  39 F.3d 395 (2d Cir. 1994) .................................................................................................15

American Fuel Corp. v. Utah Energy Dev. Co.,
  122 F.3d 130 (2d Cir. 1997) .................................................................................................2

Appalachian Enters., Inc. v. ePayment Solutions Ltd.,
  2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ........................................................................2

Associated Gen. Contractors, Inc. v. California State Council of Carpenters,
  459 U.S. 519, 103 S. Ct. 897 (1983) ..................................................................................13

Bankers Trust Co. v. Rhoades,
  741 F.2d 511 (2d Cir. 1984) ...............................................................................................22

Bao Ge v. Li Peng,
  201 F. Supp. 2d 14 (D.D.C. 2000) .....................................................................................18

Barr v. Abrams,
  810 F.2d 358 (2d Cir. 1987) .................................................................................................6

Benas v. Baca,
  2001 WL 485168 (C.D. Cal. Apr. 23, 2001) ......................................................................17

Bernstein v. Misk,
  948 F. Supp. 228 (E.D.N.Y. 1997) .......................................................................................9

Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.,
  291 F.3d 1000 (7th Cir. 2002) ................................................................................8, 14, 16, 21

Boyanowski v. Capital Area Intermediate Unit,
  215 F.3d 396 (3d Cir. 2000) ...............................................................................................20

Burnett v. Al Baraka Inv. and Dev. Corp.,
   274 F. Supp. 2d 86 (D.D.C. 2003) ................................................................1, 10, 21, 22

Casio Computer Co. v. Sayo,
   2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ........................................................9

Chudasama v. Mazda Motor Corp.,
   123 F.3d 1353 (11th Cir. 1998) ..........................................................................10

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996) ..................................................... 2, 15, 17, 19, 24

Doe v. Islamic Salvation Front,
   257 F. Supp. 2d 115 (D.D.C. 2003) ....................................................................18

Dubai Islamic Bank v. Citibank, N.A.,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003)......................................................... 23, 24

Eastern States Health & Welfare Fund v. Phillip Morris, Inc.,
   188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) ....................................23

Electronic Comm'ns Corp. v. Toshiba Am.,
   129 F.3d 240 (2d Cir. 1997) ...............................................................................25

Flanagan v. Shively,
   783 F. Supp. 922 (M.D. Penn. 1992)..................................................................12

Flores v. S. Peru Copper Corp.,
   343 F.3d 140 (2d Cir. 2003) ...............................................................................18

Ford v. New Britain Trans. Co.,
   2004 WL 3078827 (D.Conn. Dec. 21, 2004) .....................................................25

Gillette Co. v. Philips Oral Healthcare, Inc.,
   2001 WL 1442637 (S.D.N.Y. Nov. 15, 2001) .......................................................6

Glasheen v. City of Albany,
   1999 WL 1249409 (N.D.N.Y. Dec. 16, 1999) .......................................................6

Gmurzynska v. Hutton,
   2003 WL 1193727 (S.D.N.Y. March 14, 2003)...................................................10

Gold v. Fields,
   1993 WL 212672 (S.D.N.Y. June 14, 1993) .........................................................1

Grove Press, Inc. v. Angleton,
   649 F.2d 121 (2d Cir. 1981) ...............................................................................19

Guadagnoli v. Seaview Radiology, P.C.,
   184 Misc. 2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) ....................................19

Halberstam v. Welch,
   705 F.2d 472 (D.C. Cir. 1983) ............................................................................20

Hanoch Tel-Oren v. Libyan Arab Republic,
    517 F. Supp. 542 (D.D.C. 1981) ....................................................................................18

Hattley v. Goord,
    2003 WL 1700435 (S.D.N.Y. Mar. 27, 2003) ..............................................................13

Hechler Chevrolet, Inc. v. Gen. Motors Corp.,
    337 S.E.2d 744 (Va. 1985) ...........................................................................................12

Indus. Bank of Latvia v. Baltic Fin. Corp.,
    1994 WL 286162 (S.D.N.Y. June 27, 1994) ...............................................................24

Int'l Brotherhood of Teamsters v. Phillip Morris, Inc.,
    196 F.3d 818 (7th Cir. 1999)........................................................................................23

Jackson v. BellSouth Telecomms.,
    372 F.2d 1250 (4th Cir. 2004) ....................................................................................6, 7

Jenkins v. S&A Chaissan & Sons, Inc.,
    449 F. Supp. 216 (S.D.N.Y. 1978) .............................................................................1, 7

Johnston v. Norton,
    1993 WL 465333 (S.D.N.Y. Nov. 10, 1993) ...............................................................14

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) ...........................................................................................18

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) ...........................................................................................6

Koken v. Steinberg,
    825 A.2d 723 (Pa. Comm. Ct. 2003) ...........................................................................13

Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999) ...................................................................................14, 23

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004).........................................................................24

Liberman v. Worden,
    701 N.Y.S.2d 419, 268 A.D.2d 337 (1st Dep't 2000)..................................................13

In re Livent, Inc. Noteholders Secs. Litig.,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................17

MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,
    268 F.3d 58 (2d Cir. 2001) .............................................................................................2

Mason v. Am. Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003) ...........................................................................................16

Medina v. Bauer,
    2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) ...............................................................2, 5

Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity,
506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dep't 1986) ...........................................................19

Moss v. Morgan Stanley Inc.,
719 F.2d 5 (2d Cir. 1983) ................................................................................................ 23, 24

In re NASDAQ Market-Makers Antitrust Litig.,
894 F. Supp. 703 (S.D.N.Y. 1995) ........................................................................................13

National Asbestos Workers Med. Fund v. Phillip Morris, Inc.,
74 F. Supp. 2d 221 (E.D.N.Y. 1999).....................................................................................23

Oneida Indian Nation of New York v. City of Sherrill,
337 F.3d 138 (2d Cir. 2003) ..................................................................................................25

Papasan v. Allain,
478 U.S. 265 (1986)................................................................................................................15

Pittman v. Grayson,
149 F.3d 111 (2d Cir. 1998) ............................................................................................ 14, 15

Powell v. Jarvis,
460 F.2d 551 (2d Cir. 1972) ....................................................................................................5

Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc.,
1998 WL 355422 (S.D.N.Y. Jul. 2, 1998) ............................................................................10

In re Razorfish, Inc. Sec. Litig.,
143 F. Supp. 2d 304 (S.D.N.Y. 2001)......................................................................................1

Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.,
99 F. Supp. 2d 174 (D.R.I. 2000)..........................................................................................23

Rose v.  Goldman, Sachs & Co.,
163 F. Supp. 2d 238 (S.D.N.Y. 2001)....................................................................................16

In re S. African Apartheid Litig.,
346 F. Supp. 2d 538 (S.D.N.Y. 2004)....................................................................................18

Sherry Wilson & Co., Inc. v. Generals Court, L.C.,
2002 WL. 32136374 (Va. Cir. Ct. Sept. 27, 2002) ......................................................... 13, 20

Skipworth v. Lead Indus. Ass'n, Inc.,
690 A.2d 169 (Pa. 1997) ........................................................................................................12

Small v. Lorillard Tobacco Co.,
94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999) .........................................................................19

Smith v. County of Erie,
295 A.D.2d 1010, 743 N.Y.S.2d 649 (N.Y. Ct. App. 2002) .................................................25

Smith v. Islamic Emirate of Afghanistan,
262 F. Supp. 2d 217 (S.D.N.Y. 2003)............................................................................. 20, 21

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ..................................................................................5, 17

Sonds v. St. Barnabas Hosp. Corr. Health Svcs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001)..............................................................17

Sosa v. Alvarez-Machain,
    542 U.S. 692, 124 S. Ct. 2739 (2004)..............................................................18

Sparrow v. United Airlines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2002) .........................................................................6

Spoto v. Herkimer County Trust,
    2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ....................................................1

Stewart v. Crosswalks Television Network,
    2002 WL 265162 (S.D.N.Y. Feb. 25, 2002) ...................................................12

Suarez v. Underwood,
    103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980) .................12

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)........................................................................................6, 16

Tel-Oren v. Libyan Arab Republic,
    726 F.2d 774 (D.C. Cir. 1984) ..........................................................................18

In re Terrorist Attacks on Sept. 11, 2001,
    2005 WL 2296673 (S.D.N.Y. Sept., 21 2005) ....................1, 6, 9, 12, 17, 23, 24

In re Terrorist Attacks on September 11, 2001,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005)..............................................1, 5, 7, 8, 9,
                                                                             10, 11, 12, 14, 15,
                                                                             16, 17, 19, 20, 21,
                                                                             22, 23, 25, 26

Twombly v. Bell Atlantic Corp.,
    313 F. Supp. 2d 174 (S.D.N.Y. 2003) ............................................................6, 16

United States Fire Ins. Co. v. United Limousine Serv.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)..............................................................25

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ...............................................................................20

Wantanabe Realty Corp. v. City of New York,
    2003 WL 22862646 (S.D.N.Y. Dec. 10, 2003)................................................13

Wiwa v. Royal Dutch Petroleum Co.,
    2002 WL. 319887 (S.D.N.Y. Feb. 28, 2002) ..................................................17

York v. Bar of New York,
    286 F.3d 122 (2d Cir. 2002) .............................................................................16

**Statutes And Other Authority**

18 U.S.C. § 1962 (1988) ........................................................................................................... 23, 24

18 U.S.C. §§ 2331-2333 (2000) ....................................................................................................20

28 U.S.C. § 1350 (1993) .................................................................................................................18

Fed. R. Civ. P. 8 ..............................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................4, 5

N.Y.  E.P.T.L. § 5-4.1(1) (McKinney 2002) .............................................................................18, 19

8 N.Y. Jur., Conspiracy, § 19 (1982) .......................................................................................12, 13

ALAN WRIGHT & ARTHUR R. MILLER,
    FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004) ...................................................2, 7, 21

**INTRODUCTION**

As the Chairman of the Board of Dar Al-Maal Al-Islami Trust ("DMI Trust") publicly stated shortly after the September 11 attacks, DMI Trust sympathizes deeply with the losses suffered by plaintiffs here, and joins the plaintiffs in condemning those who commit atrocities such as those of September 11 in the name of Islam.[1]  At the same time, "it is difficult to imagine uglier or more serious charges than those the plaintiffs have leveled at these defendants," <u>Burnett v. Al Baraka Inv. and Dev. Corp.</u>, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("<u>Burnett I</u>"), and plaintiffs are required to make allegations of *fact* sufficient to support such inflammatory claims.  <u>See In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) ("<u>In re Sept. 11 Attacks I</u>") ("in light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant").

Even with the benefit of two Amended Complaints, a twice-amended 49-page RICO Statement and a 39-page More Definite Statement, the *O'Neill* plaintiffs have not made even a single such allegation with regard to DMI Trust.  The Complaint, Second Amended RICO Statement and More Definite Statement[2] by the *O'Neill* plaintiffs make sweeping allegations of grave wrongdoing by the named defendants, including DMI Trust.  Plaintiffs fail, however, to proffer any allegations of fact that, if proven, would show any relation at all between DMI Trust and al Qaeda, or played any role in the plot that culminated in the September 11 terrorist attacks.  Instead, plaintiffs offer up dozens of conclusory allegations that, as the Court's January 18 and September 21 Orders establish, are wholly insufficient to state their claims, salted with a handful of factual allegations that are innocuous at best, and self-contradictory at worst.  Accordingly, in the absence of any averment connecting DMI Trust to Al Qaeda or to the terrorist attacks of September 11, 2001, plaintiffs' claims must be dismissed in their entirety.

---

[1] <u>See</u> Memorandum of Law of Prince Mohamed al-Faisal al-Saud in Support of Motion to Dismiss the *Ashton* Complaint (Docket No. 41), Exh. A, filed March 19, 2004.

[2] Although the *O'Neill* plaintiffs voluntarily stipulated to a motion schedule with DMI Trust (Docket No. 1068), the plaintiffs -- without prior notice to counsel for DMI Trust -- filed a More Definite Statement ("MDS") (Docket No. 1338) as to DMI Trust on the same day that DMI Trust was scheduled to file the instant Motion.  Because the allegations in plaintiffs' Second Amended RICO Statement have been incorporated into their MDS, citations are to the MDS.

### SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

The *O'Neill* Complaint, RICO Statement and MDS contain only a handful of

pertinent factual allegations regarding DMI Trust,[3] which are restated below:

Allegations Concerning Donations to Charities:

As an article of faith, Muslims practice *zakat*, the donation of a percentage of their

income to charitable causes; Muslims also tithe income inadvertently received from religiously

unacceptable sources, also known as *haram* income, such as any income from alcohol or gambling.

See MDS ¶¶ 45, 119.  Plaintiffs conclusorily allege that "DMI Trust satisfies its [*zakat* and *haram*]

obligations by directly funding the al Qaeda network and by financially supporting charities and

other groups which it knows support al Qaeda."  See id. ¶ 118; see also id. ¶ 29.  The only allegation

of fact that plaintiffs offer in support of this sweeping accusation is an allegation that DMI Trust

made *zakat* and *haram* donations to branches of the International Islamic Relief Organization

("IIRO") and the Muslim World League ("MWL") in the early 1990s.  See id. ¶¶ 121-22.  Plaintiffs

assert that DMI Trust "knew or had to know" that "Osama Bin Laden and al Qaeda were directly

---

[3] While plaintiffs define the term "DMI" in their Complaint to refer solely to DMI Trust's indirect subsidiary DMI Administrative Services S.A. ("DMI S.A."), see Second Amended Complaint ("SAC") ¶ 42, in the very next sentence plaintiffs define "DMI" to include both DMI S.A. *and* DMI Trust.  See id. ¶ 43.  Plaintiffs then proceed to make various allegations regarding "DMI," without indicating which allegations are meant to apply to which entity.  DMI Trust and DMI S.A. are separate companies, however -- and separate defendants -- operating in different countries.  Plaintiffs' allegations regarding "DMI" are thus unintelligible as written, and the claims against DMI Trust should be dismissed on this ground alone.  See e.g., 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363 at 120-21 (3d ed. 2004) ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); Appalachian Enters., Inc. v. ePayment Solutions Ltd., 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) ("The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of DMI S.A. or any other putatively related entity.  See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, intermingling of funds, and inadequate capitalization); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil).  Nevertheless, for completeness' sake and for the convenience of the Court, DMI Trust will proceed as if all of the allegations regarding "DMI" were intended to denote DMI Trust.

collaborating with the [IIRO]" and "that the [MWL] office in Cairo was [] managed by Osama Bin Laden," see id. ¶¶ 121, 127-29 -- even though, according to plaintiffs' own allegations, those charities were then engaged not in supporting terrorism against the United States but in funding the Afghan *mujahideen*, see id. ¶¶ 127-28, and al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  See id. ¶ 49.

                        <u>Allegations Concerning The Provision Of Banking Services</u>:

                        Plaintiffs sweepingly allege that DMI Trust "launder[ed] money . . . provid[ed] financial services . . . and facilitat[ed] weapons and military equipment purchases and money transfers" in support of al Qaeda.  See MDS ¶ 29.  DMI Trust, plaintiffs conclusorily assert, "has involved itself in al Qaeda financing" through several alleged subsidiaries, including Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank ("al Shamal").  See SAC ¶ 45; see also MDS ¶¶ 31, 60, 85, 87.  The only allegation of fact that plaintiffs offer in support of this proposition is that al Qaeda operatives "got account[s]" at DMI Trust's putative subsidiaries FIBS, TIB, and al Shamal, in the Sudan in the mid-1990s, and that money from those accounts was transferred by the account holders to other al Qaeda members.  See MDS ¶¶ 30, 83, 88-91, 94; SAC ¶¶ 37, 46-47, 52-53.  In their More Definite Statement, the *O'Neill* plaintiffs further allege that at an unspecified time and place and for unspecified purposes, subsidiaries of DMI Trust have "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of" several alleged charity 'fronts,' including the al Haramain Islamic Foundation ("al Haramain"), the IIRO and the MWL; and that another alleged subsidiary of DMI Trust "has handled the accounts of" Yassin Al Kadi and Wael Jelaidan, two individuals who were subsequently designated as terrorist sponsors by the United States.  See MDS ¶¶ 29, 123.

                        As the above recitation makes clear, plaintiffs do not make *any* allegations of fact showing that DMI Trust made *zakat* donations to charities with any knowledge that such charities were al Qaeda 'fronts,' or provided anything other than routine banking services to anyone.  See MDS ¶¶ 29, 121-22.  Plaintiffs offer no allegations of fact showing that DMI Trust knowingly

supported al Qaeda in any way, much less any allegations of fact showing that DMI Trust ever "launder[ed] money," "provid[ed] financial services" to, or "facilitat[ed] weapons and military equipment purchases and money transfers" for al Qaeda.  See MDS ¶ 29.  Nor do plaintiffs allege *any facts* showing that DMI Trust ever entered into any sort of agreement at all, let alone a conspiratorial agreement "intended to inflict catastrophic harm on the United States."  See id. ¶ 13. Indeed, in their Complaint, 49-page RICO Statement, and 39-page More Definite Statement, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI Trust, by or to anyone associated with al Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

Plaintiffs' claims against DMI Trust should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiffs have wholly failed to allege that DMI Trust in any way conspired with or aided al Qaeda, or had any role whatsoever in the September 11 attacks.  Plaintiffs therefore have entirely failed to state any of their claims against DMI Trust.  Furthermore, because plaintiffs have proven unable to state a claim against DMI Trust despite over a year of effort, as reflected in three successive Complaints, three successive RICO Statements, and a More Definite Statement, their claims should be dismissed with prejudice.

## I
## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

Plaintiffs have thoroughly failed to allege facts sufficient to state any of the twelve causes of action that they have lodged against DMI Trust.  Indeed, plaintiffs have not alleged any particular wrongful conduct by DMI Trust at all.  Plaintiffs do not allege that DMI Trust directly participated in the September 11 attacks in any way, and do not allege any facts showing that DMI Trust participated indirectly in al Qaeda's schemes by entering into a conspiracy or by aiding and abetting al Qaeda's crimes.  Furthermore, plaintiffs have alleged no facts that, if proved, would show that any wrongful actions by DMI Trust -- if any were in fact alleged -- proximately caused plaintiffs'

injuries.  Finally, plaintiffs have failed to allege facts sufficient to make out the numerous more specific elements of their claims.

Instead, plaintiffs make dozens of conclusory allegations, indiscriminately and conclusorily attributing to DMI Trust, and hundreds of other defendants, almost every sort of wrongdoing imaginable in this case.  See, e.g., SAC ¶ 22 (DMI Trust, and all other financial defendants "conspired . . . to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaeda"); id. ¶ 25 ("Some of the banks . . . operate legitimately but also maintain a secret dual role as al Qaeda front organizations and actively support its terrorist activities and goals"); MDS ¶ 46 ("Islamic businesses like DMI [Trust] provide a broad range of facilities, material support, and services to charities and individuals and in some cases directly to al Qaeda through their various subsidiaries and investments.").  "A complaint which consists of conclusory allegations unsupported by factual assertions[, however,] fails even the liberal standard of Rule 12(b)(6)."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833; see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss"); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972) (dismissing claims based upon "a hodgepodge of vague and conclusory allegations"); Medina v. Bauer, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (where complaint "lump[ed] all defendants together and fail[ed] to distinguish their conduct," "the allegations fail to give adequate notice to these defendants as to what they did wrong").

In the face of generalized, conclusory allegations of such boundless scope, DMI Trust is left with no idea regarding what conduct is the supposed basis of plaintiffs' claims against it.  See Gillette Co. v. Philips Oral Healthcare, Inc., 2001 WL 1442637, at *7 (S.D.N.Y. Nov. 15, 2001) and Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001):

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground on which it rests.'  *By lumping the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy the minimum standard.*

Id. (internal citation omitted, emphases added); see also Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (even under liberal notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery"); Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) (even under liberal notice pleading standard, plaintiff must allege specific facts to make out claim, not mere "litany of general conclusions that shock but have no meaning); Glasheen v. City of Albany, 1999 WL 1249409, at *1 (N.D.N.Y. Dec. 16, 1999) (plaintiff proffered only "conclusory allegations without providing any factual support whatsoever for such serious claims against individual Defendants," and "relie[d] on blanket accusations against Defendants as a group, without delineating their respective actions or statements"; such "over-inclusive approach renders it virtually impossible for each Defendant to respond to the allegations").[4]

Apart from conclusory, generalized allegations that categorically fail to state their claims, plaintiffs offer only innuendo, supported by the handful of factual allegations recited above -- allegations that, upon even cursory review, prove to be innocuous, and often self-contradictory. For example, while plaintiffs allege that DMI Trust donated *zakat* funds to the IIRO and MWL in the early 1990s, see MDS ¶¶ 121-22, plaintiffs do not allege any facts showing that DMI Trust provided donations to the IIRO or MWL with the knowledge that either charity was a terrorist 'front,' or any "facts to support an inference that [DMI Trust was] sufficiently close to the terrorists'

---

[4] For instance, the utterly conclusory allegation that all DMI Trust, and all other financial defendants, "conspired . . . to raise, launder, transfer, distribute, and hide funds for Osama bin Laden and al Qaeda," does not specify what banking services *DMI Trust* is alleged to have provided, or to whom.  See, e.g., SAC ¶ 22. Certainly, this allegation includes nothing that could be read to indicate that DMI Trust ever provided anything other than routine banking services to anyone, much less that DMI Trust knowingly provided banking services of any sort to terrorists.  Even under the liberal notice pleading standard of Fed. R. Civ. P. 8(a), such allegations do not provide DMI Trust with any meaningful notice of the supposed basis of the claims against it.  See, e.g., Kittay, 230 F.3d at 541 (even under notice pleading standard, plaintiff must disclose sufficient information to permit defendant "to have a fair understanding of what plaintiff is complaining [of] and to know whether there is a legal basis for recovery").  Plaintiffs previously have pointed to Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2002), in support of the proposition that their generalized, conclusory allegations should be deemed sufficient to state their immense claims.  Swierkiewicz, however, "did not change the law of pleading . . . but simply re-emphasized" that heightened pleading standards do not apply to Title VII discrimination claims.  Twombly v. Bell Atlantic Corp., 313 F. Supp. 2d 174, 180 (S.D.N.Y. 2003); see also In re Terrorist Attacks on Sept. 11, 2001, 2005 WL 2296673, at *18, 25 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II"), citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004).

illegal activities" to infer such knowledge.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, 813-14 ("Conclusory allegations that [defendant] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice.").  Moreover, plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations.  Plaintiffs themselves allege that in the early 1990s, the IIRO and MWL were funding not al Qaeda but Afghan *mujahideen*, see MDS ¶¶ 127-28,[5] and that in subsequent years, when those charities actually did support al Qaeda, they did so by "taking advantage of" *zakat* donors "under the cover of" legitimate charitable activities, see id. ¶¶ 39, 41, negating any inference that donors like DMI Trust had knowledge of such charities' alleged nefarious activities.  See 5C WRIGHT & MILLER, § 1363 at 120-21 ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations"); see also Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1011 (7th Cir. 2002) ("Boim II") ("To say that funding *simpliciter* constitutes an act of terrorism is to give the [ATA] statute an almost unlimited reach.").  Thus, "[p]laintiffs have not pleaded facts to suggest [that DMI Trust] knew [it was] making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800.[6]

　　　　　Similarly, as to provision of banking services, plaintiffs allege that al Qaeda members "got account[s]" at the Sudanese banks FIBS, TIB and al Shamal, see MDS ¶¶ 83, 89, 94 and SAC ¶¶ 37, 47, 52; that subsidiaries of DMI Trust have "facilitated financial transactions for, and

---

[5] According to plaintiffs' own allegations, al Qaeda began to solicit *zakat* donations for its own terrorist purposes years later, in or about 1998.  See MDS ¶ 49.

[6] Unlike Hamas in Boim, none of the organizations that DMI Trust is alleged to have supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim II, 291 F.3d at 1002 (noting that Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including allegations that  "one defendant entity allegedly employed an individual designated as a terrorist affiliated with Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity defendants."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800, citing Boim v. Quranic Literacy Inst. & Holy Land Found., 127 F. Supp. 2d 1002, 1006-1008. (N.D.Ill. 2001).  No such allegations are made here as to DMI Trust.

advertised, maintained and serviced accounts on behalf of" al Haramain, the IIRO and MWL, see MDS ¶¶ 29, 123; and that an indirect subsidiary of DMI Trust has "handled the accounts of" subsequently-designated terrorist financiers Yassin Al Kadi and Wael Jelaidan, see id. To be clear, plaintiffs do not allege that DMI Trust itself provided any financial services to anyone whatsoever. The allegations recited above all allege the provision of banking services by *subsidiaries* of DMI Trust.[7] Moreover, while plaintiffs allege that certain subsidiaries of DMI Trust "facilitated financial transactions" for al Haramain, the IIRO and MWL, that other putative subsidiaries maintained accounts of al Qaeda-related third parties in the Sudan, and that other subsidiaries "handled the accounts of" Yassin Al Kadi and Wael Jelaidan, see SAC ¶¶ 37, 45, 47, 52 and MDS ¶¶ 29, 123, plaintiffs fail to offer any supporting factual allegations indicating when, where, why or how any subsidiary of DMI Trust "facilitated" any transactions or maintained any accounts, or what role DMI Trust ostensibly had in the provision of those services by its alleged subsidiaries.

In fact, plaintiffs have not made any specific allegations of fact showing that DMI Trust or any of its subsidiaries have ever engaged in any transactions having anything to do with terrorism, and have alleged no facts to suggest that DMI Trust, or its subsidiaries, knowingly provided banking services to anyone connected with al Qaeda. Absent any such allegations of fact, plaintiffs' assertion that subsidiaries of DMI Trust "facilitated financial transactions" for al Haramain, the IIRO and MWL alleges nothing more than the provision of routine banking services. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Sept. 11 Attacks II, 2005 WL 2296673, at *23 (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of

---

[7] As plaintiffs allege in substance if not in form, DMI Trust is a holding company, see id. ¶¶ 22-24, which holds interests in related companies and provides no banking or financial services to anyone.

supporting terrorism.").[8]  Similarly, allegations that subsidiaries of DMI Trust "handled the accounts

of" suspect persons, or "facilitat[ed] . . . purchases and money transfers," also amount to nothing

more than an allegation that those subsidiaries provided routine banking services.  See In re Sept. 11

Attacks I, 349 F. Supp. 2d at 835 (plaintiffs "do not include any facts to support the inference that

Arab Bank knew or had to know it was providing material support to terrorists by providing

financial services . . . or by processing wire transfers").  Moreover, even if these allegations did

amount to anything other than the provision of routine banking services by those subsidiaries,

plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust

liable for any actions of its ostensible subsidiaries.  See supra n.3; Ray's Trading (H.K.) Co. Ltd., Inc.

v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to

plead facts in support of veil-piercing).

        In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust

consist of conclusory, boilerplate allegations that categorically fail to state a claim.  Those allegations

that are not utterly conclusory are either thoroughly irrelevant,[9] or allege nothing more than the

provision of routine banking services and innocuous charitable donations that, according to

---

[8]  Similarly, plaintiffs' conclusory and unsupported allegation that DMI Trust "launder[ed] money" for al
Qaeda, see MDS ¶ 29, does not substitute for allegations of facts sufficient to show that 1) DMI Trust
conducted a financial transaction in interstate commerce; 2) DMI Trust knew that the property involved
represented some form of specific unlawful conduct; 3) the transaction involved the proceeds of specific
unlawful conduct; and 4) the transaction was conducted to conceal the nature of the illegally acquired
proceeds.  See Casio Computer Co. v. Sayo, 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) (holding
conclusory allegations insufficient); Bernstein v. Misk, 948 F. Supp 228, 236 n.2 (E.D.N.Y. 1997) (same).

[9]  For instance, plaintiffs' lengthy allegations regarding former members of the Board of Directors and Sharia
Board of DMI Trust are irrelevant in the absence of any indication that such persons committed any wrong
in the course of their employment.  Compare MDS ¶¶ 31, 52-83, 103-13 with, e.g., In re Sept. 11 Attacks I,
349 F. Supp. 2d at 833, 836 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al
Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank
business"; "[a]n employee's actions cannot be a basis for employer liability unless the employee was acting in
furtherance of the employer's business."); Burnett I, 274 F. Supp. 2d at 109 n.18 (bank is not liable for
conduct of board members in the absence of allegations that director "act[ed] within the scope of his bank
employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at
*7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior
relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set
forth a conspiracy claim").  Similarly, while plaintiffs allege that DMI Trust was a shareholder of al Shamal,
see MDS ¶¶ 30, 87, this Court has already held that an allegation that a defendant was a shareholder of Al
Shamal Islamic Bank -- indeed, even an allegation that a defendant was a founding shareholder of that entity -
- does not state a claim for relief.  Compare MDS ¶¶ 30, 84, 85, 87 with In re Sept. 11 Attacks I, 349 F. Supp.
2d at 836.

plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801.  "Here, there are no such factual bases presented, there are only conclusions." Id.[10]

A.  **Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.**

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11.  Instead, plaintiffs rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797-98, 805, 826, 830 ("To the extent that [plaintiffs] sufficiently plead that Defendants acted in concert with the September 11 hijackers, they may proceed with" their claims.).  Plaintiffs assert discrete causes of action for conspiracy and for aiding and abetting, see infra Part I.C.6, and also apparently assert that DMI Trust committed the other torts complained of by conspiring with al Qaeda and by aiding and abetting al Qaeda's commission of such crimes.  See, e.g., SAC ¶ 152 ("All Defendants knew or should have known that their actions in furtherance of the conspiracy to commit acts of international terrorism against the United States, its nationals and allies, including the September 11, 2001, attacks, would result in the murder of innocent persons"); id. ¶ 168 ("The conspiracy among the Defendants to commit acts of international terrorism against the United States, its nationals and allies, included the provision of material support and resources to al Qaida, Osama bin Ladin, the hijackers, affiliated foreign states, foreign terrorist organizations, persons, organizations, commercial entities, and other parties.").  Thus, because plaintiffs do not allege that DMI Trust directly

---

[10]  A boundless discovery process may also be expected, if plaintiffs' claims are allowed to proceed in such a fashion.  Such a discovery process, untethered to any specific allegations of relevant fact, would be unmanageable, for both the parties and the Court.  See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1998) (courts should resolve ill-pled claims at dismissal stage to avoid unmanageable discovery thereafter).

participated in the September 11 attacks, all of their claims depend upon plaintiffs' ability successfully to plead conspiracy or aiding and abetting.[11]

Plaintiffs' discrete causes of action for conspiracy and aiding and abetting are not recognized as independent causes of action in New York, and therefore are due to be dismissed. See infra Part I.C.6.  Moreover, plaintiffs' allegations are entirely insufficient to state conspiracy or aiding and abetting, as an independent cause of action, or in connection with any other cause of action.  To state the elements of a conspiracy under New York law, a plaintiff must allege: (i) the existence of an underlying tort; (ii) a corrupt agreement between two or more parties; (iii) an overt act in furtherance of the agreement; (iv) the parties' intentional participation in the furtherance of the plan or purpose; and (v) resulting damage or injury.[12]  See, e.g., 8 N.Y. Jur., Conspiracy, § 19 (1982); Suarez v. Underwood, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (N.Y. Sup. Ct. Mar 11, 1980).

Plaintiffs' conclusory allegations are of course entirely insufficient to make out any of these elements of conspiracy.  To do so, "[t]he plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  See Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Penn. 1992); accord In re Sept. 11 Attacks II, 2005 WL 2296673, at *25 (dismissing all conspiracy-based claims against several defendants because conclusory allegations of conspiracy provided defendants with "no notice of the factual grounds on which Plaintiffs' claims of conspiracy

---

[11]  Plaintiffs need not plead concerted action liability in support of their ATA and RICO claims, though allegations sufficient to state aiding and abetting in this case likely (but not necessarily) would also state a claim under the ATA, and allegations sufficient to state conspiracy likely would state a RICO claim.  As set forth throughout, however, plaintiffs have alleged no facts sufficient either to state their ATA and RICO claims, on the one hand, see infra Part I.C.7, I.C.8, or to state conspiracy or aiding and abetting in support of their other tort claims.

[12]  Pennsylvania and Virginia law do not materially differ from New York law as to the basic elements of a civil conspiracy.  See Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985).

are based"); Stewart v. Crosswalks Television Network, 2002 WL 265162, at *6 (S.D.N.Y. Feb. 25, 2002) ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.") and Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969-70, 503 N.E.2d 102, 102-04 (N.Y. 1986) (dismissing conspiracy claim because of insufficient allegation that defendant used improper means or intended to injure plaintiff). The Complaint and More Definite Statement, however, allege *no* communications or consultations of *any* kind by *any* personnel of DMI Trust, much less communications or consultations from which one might infer the company's assent to a conspiracy "to commit acts of international terrorism against the United States, its nationals and allies." Compare SAC ¶ 160 with In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806 ("the complaints do not allege any specific facts from which the Court could infer that [defendants] directed, controlled, or requested al Qaeda to undertake its terrorist activities"). Furthermore, plaintiffs allege neither any overt acts by DMI Trust, nor any intentional participation by DMI Trust in furtherance of the purported conspiracy. See 8 N.Y. Jur., Conspiracy § 4 (1982). In sum, the plaintiffs proffer no cognizable basis for their assertion that DMI Trust engaged in any conspiracy of any kind. See, e.g., Hattley v. Goord, 2003 WL 1700435, at *12 (S.D.N.Y. Mar. 27, 2003) (dismissing conspiracy claim for failing to specifically allege "when, where or how" defendants entered into conspiracy); In re NASDAQ Market-Makers Antitrust Litig., 894 F. Supp. 703, 711 (S.D.N.Y. 1995) (conclusory conspiracy allegations insufficient; "[a]dditional specificity in this sort of massive action is required in order to provide notice to the potential defendants"), citing Associated Gen. Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 903 n.17 (1983) ("Certainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Similarly, plaintiffs have not properly alleged aiding and abetting. To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act. See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000)

(dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it).[13]  Plaintiffs' allegations that DMI Trust made donations to IIRO and the MWL in Egypt in the early 1990s, and that its putative subsidiaries "facilitated financial transactions" for now-suspect charities and maintained routine banking accounts for now-suspect persons in the mid-1990s, show neither knowing assistance of the September 11 attacks nor "substantial" assistance.  See Wantanabe Realty Corp. v. City of New York, 2003 WL 22862646, at *5 (S.D.N.Y. Dec. 10, 2003) ("assistance of or participation by the defendant may be so slight that he is not liable," such as where defendant's alleged role in tort "was simply to check the paperwork").  And of course, plaintiffs' various conclusory allegations do not even begin to establish such knowing and substantial assistance on the part of DMI Trust.  Compare SAC ¶ 162 ("Defendants aided and abetted al Qaida, Osama bin Laden, and the hijackers in their campaign to commit acts of international terrorism against the United States, its nationals, and allies.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

       In sum, plaintiffs allege no direct participation by DMI Trust in the September 11 attacks, and rely instead upon theories of conspiracy or aiding and abetting to state each of their claims.  Because plaintiffs have wholly failed to plead either conspiracy or aiding and abetting, plaintiffs' claims must be dismissed in their entirety.

       **B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

       Plaintiffs tender nothing to support the proposition that any action by DMI Trust proximately caused the injuries suffered by plaintiffs on September 11, 2001.  Each of plaintiffs' claims requires a showing of proximate cause.  Plaintiffs must establish cause-in-fact as opposed to "but-for" causation or any other, less stringent theory of causation, i.e., that the injury complained of was a direct effect of DMI Trust's own tortious conduct.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 797, n.26; see also Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 191 F.3d 229,

---

[13]  The elements of aiding and abetting do not differ under Pennsylvania or Virginia law.  See Koken v. Steinberg, 825 A.2d 723, 731-32 (Pa. Comm. Ct. 2003); Sherry Wilson & Co., 2002 WL 32136374, at *1.

235-36 (2d Cir. 1999) (to plead proximate causation, plaintiffs must allege "that defendant's acts were a substantial cause of the injury, and that plaintiff's injury was reasonably foreseeable"); Boim II, 291 F.3d at 1012.

Furthermore, because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust either conspired with, or aided and abetted, the primary wrongdoer.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826.  As discussed above, and as the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer."  Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (internal citations omitted).  Under either theory, plaintiffs must also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

Plaintiffs here make no allegation of fact showing that any action by DMI Trust was a substantial factor in the September 11 attacks and thus proximately caused their injuries.  Instead, plaintiffs offer up boilerplate, conclusory allegations in their recited causes of action.  See, e.g., SAC ¶ 144 (as to wrongful death claim, "[t]he injuries and damages suffered by the Plaintiffs . . . were proximately caused by the intentional and reckless acts, omissions, and other tortuous conduct of all Defendants as described herein."); id. ¶ 164 (as to ATA claim, "[t]he damages suffered by the Plaintiffs . . . were the direct and proximate result of the aforesaid aiding and abetting of al Qaida."); id. ¶¶ 154, 170, 180.  These indiscriminate, "catch-all" averments do not suffice to plead proximate causation as to DMI Trust.  See In re Am. Express Co. S'holder Litig., 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (internal citations omitted); see also De Jesus, 87 F.3d at 70.

Other than such baldly conclusory allegations, plaintiffs offer nothing whatsoever that might indicate that their injuries were the reasonably foreseeable and direct result of any action

by DMI Trust.  For instance, even if third parties allegedly connected to al Qaeda had accounts at putative indirect subsidiaries of DMI Trust in the Sudan in the mid-1990s, the Complaint alleges no facts to suggest that such "accounts" were in any sense a cause of -- or were connected at all to -- the September 11 attacks.  See MDS ¶¶ 83, 89, 94 and SAC ¶¶ 37, 45, 47, 52.  There are no allegations indicating in whose name the accounts were held, when the accounts were held, how much money (if any) was in the accounts, where the money came from, whether it was ever used for any purpose, and if so what that purpose was.  Certainly, there is no indication, either within the four corners of the pleadings or elsewhere, that those bank accounts in the Sudan in the mid-1990s were in any way instrumental to the September 11 attacks.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 ("FIBS' relationship with [al Shamal] is too remote in time and proximity to implicate" the Chairman of the Board of DMI Trust).  In Boim II, the Seventh Circuit found that even direct funding of a known terrorist organization was *in*sufficient to allege an act of international terrorism under the ATA, because liability under the statute requires a showing of proximate cause, i.e., allegations of facts showing that the plaintiffs' injuries were "a reasonably foreseeable result of" the defendant's alleged wrongful action.  Boim II, 291 F.3d at 1012.  The *O'Neill* plaintiffs' allegations that putative indirect subsidiaries of DMI Trust maintained routine bank accounts for individuals then not known to be terrorists, in the Sudan in the mid-1990s, thus falls far short of the allegations deemed *in*sufficient to establish proximate causation in Boim II.[14]

> Plaintiffs have also entirely failed to allege facts sufficient to support any assertion that DMI Trust caused their injuries by conspiracy or aiding-and-abetting.  See supra Part I.A; infra Part I.C.6.  In sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of proximate cause as to any of the pending claims.

---

[14]  Moreover, plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity.  See supra n.3.

C.      **Plaintiffs Have Failed To Plead Facts Sufficient To State
Any Of Their Causes of Action Against DMI Trust.**

Plaintiffs have also failed to properly plead any of their causes of action against DMI

Trust because they have not alleged facts sufficient to make out the specific elements of their

various claims.  Even in notice pleading, neither inferences unsupported by specific factual

allegations, nor legal conclusions cast as factual allegations, suffice to state a claim.  See Mason v.

Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003); York v. Bar of New York, 286 F.3d 122, 125 (2d

Cir. 2002) ("To survive a motion to dismiss . . . the complaint must allege facts which, assumed to

be true, confer a judicially cognizable right of action."); In re Sept. 11 Attacks I, 349 F. Supp. 2d at

832-36; Twombly, 313 F. Supp. 2d at 181 (the rule "that plaintiffs must allege facts to support claims

of conspiracy, even in light of Rule 8 [and Swierkiewicz], remains the law of this Circuit"); Rose v.

Goldman, Sachs & Co., 163 F. Supp. 2d 238, 241 (S.D.N.Y. 2001) (even under "very lenient, even *de*

*minimis*" pleading standards in discrimination cases, "a plaintiff is required to set forth specific

factual allegations to establish a *prima facie* case"); In re Livent, Inc. Noteholders Secs. Litig., 151 F.

Supp. 2d 371, 407 (S.D.N.Y. 2001) (even where theories of liability are alleged in the alternative, "the

factual pleadings . . . must be sufficient to state all the requisite elements of a given theory of

liability"); Sonds v. St. Barnabas Hosp. Corr. Health Svcs., 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001)

("To survive a 12(b) motion, a plaintiff must allege facts that, accepted as true, make out the

elements of a claim. . . .  It is imperative that the complaint contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable

legal theory.").

Thus, plaintiffs' numerous conclusory allegations cannot be allowed to substitute for

*some* allegation of fact -- *any* allegation of fact -- showing that DMI Trust ever actually *did* anything

wrongful that could give rise to plaintiffs' immense claims.  See Smith, 291 F.3d at 240; De Jesus, 87

F.3d at 70; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-36.  Plaintiffs have entirely failed to plead

facts sufficient to state *any* of the numerous elements of their various causes of action, other than

injury.  Consequently, plaintiffs "can prove no set of facts in support of their claims that would

entitle them to relief." In re Sept. 11 Attacks II, 2005 WL 2296673, at *18 (citations omitted).  The claims against DMI Trust therefore must be dismissed.

       **1.**       **Torture Victims Protection Act (Count 1).**

       Plaintiffs' TVPA claim against DMI Trust is meritless because, among other reasons, "[o]nly individuals may be sued under the TVPA," and there are no allegations that DMI Trust acted under color of law.  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828.  Moreover, the TVPA applies only to torts committed against United States citizens who, "while in a foreign country, are victims of torture or extra-judicial killing."  Wiwa v. Royal Dutch Petroleum Co., 2002 WL 319887, at *3 (S.D.N.Y. Feb. 28, 2002); see also Benas v. Baca, 2001 WL 485168, at *4 (C.D. Cal. Apr. 23, 2001), aff'd, 30 Fed. Appx. 753 (9th Cir.).  Because all injuries alleged in the instant case occurred within the United States, the TVPA is inapplicable, and all of plaintiffs' TVPA claims must be dismissed.

       **2.**       **Alien Tort Claims Act (Count 2).**

       A plaintiff may bring a private cause of action under 28 U.S.C. § 1350 where (i) plaintiff is an alien, (ii) claiming damages stemming from a tort only, (iii) that was committed by the defendant in violation of the law of nations or a treaty of the United States.  See 28 U.S.C. § 1350 (1993); Flores v. S. Peru Copper Corp., 343 F.3d 140, 148-49 (2d Cir. 2003); Kadic v. Karadzic, 70 F.3d 232, 236 (2d Cir. 1995).  As described throughout Part II of this Memorandum, plaintiffs have thoroughly failed to plead any underlying tort by DMI Trust, much less a tort in violation of the law of nations.  See Doe v. Islamic Salvation Front, 257 F. Supp. 2d 115, 121 (D.D.C. 2003) (without properly alleged link between defendant and specific acts complained of, conclusory allegations of tortious activity are "much too tenuous to support [a] finding of liability").  Moreover, plaintiffs have failed to allege facts sufficient to support accomplice or aiding-and-abetting liability under the ATCA, see infra Part I.C.6, which has consistently been held to require that a defendant has *substantially* and *personally* participated in the tort in violation of the law of nations.  See, e.g., Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 21-22 (D.D.C. 2000), aff'd, 2002 WL 1052012 (D.C. Cir. 2002) (dismissing ATCA claim because plaintiffs failed to properly allege that corporate defendant substantially participated in alleged wrongful acts); see also In re S. African Apartheid Litig., 346 F.

Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding aiding-and-abetting liability unavailable under the ATCA after <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 124 S. Ct. 2739 (2004)).  And once more, plaintiffs have not properly alleged that any action by DMI Trust proximately caused their injuries.  <u>See</u> <u>supra</u> Part I.B.[15]

### 3.     Wrongful Death & Survival (Counts 3 & 4).

For plaintiffs to maintain a wrongful death claim under New York law, they must allege, through a properly appointed personal representative, that the defendant, (i) committed a wrongful act, neglect, or default, (ii) which proximately caused, (iii) decedent's death.  <u>See</u> N.Y. E.P.T.L. § 5-4.1(1) (McKinney 2002).  A survival claim requires the plaintiff to plead, or continue through a personal representative, a cause of action for (i) a tort to person or property, (ii) suffered by the decedent prior to death.  <u>See</u> N.Y. E.P.T.L. § 11-3.2(b) (McKinney 2002); <u>see also</u> <u>Meroni v. Holy Spirit Ass'n. for the Unification of World Christianity</u>, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dep't 1986) ("both wrongful death and survival actions require that the defendant have committed some underlying wrongful action against the decedent").  Here, again, plaintiffs have failed to allege any underlying tort by DMI Trust, and plaintiffs' conclusory allegations do not suffice to state claims for wrongful death or survival.  <u>Compare</u> SAC ¶¶ 142-50 <u>with</u> <u>Guadagnoli v. Seaview Radiology, P.C.</u>, 184 Misc.2d 961, 712 N.Y.S.2d 812 (N.Y. Sup. 2000) (granting summary judgment where wrongful death claim was predicated on conclusory allegations); <u>see</u> <u>also</u> <u>De Jesus</u>, 87 F.3d at 70.  Finally, plaintiffs have not properly alleged that any action by DMI Trust proximately caused the deaths of the victims of the September 11 attacks.  <u>See</u> <u>supra</u> Part I.B.

### 4.     Intentional Infliction of Emotional Distress (Count 5).

Plaintiffs' claim for intentional infliction of emotional distress is barred because "the statute of limitations for such a claim is one year," <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 829, and plaintiffs filed their Complaint on March 10, 2004 -- two and a half years after September 11.

---

[15]  Additionally, the ATCA by its terms creates a cause of action that is available only to aliens.  The ATCA claims of all United States national plaintiffs therefore must be dismissed with prejudice.  <u>See</u> 28 U.S.C. § 1350; <u>Hanoch Tel-Oren v. Libyan Arab Republic</u>, 517 F. Supp. 542, 548 (D.D.C. 1981), <u>aff'd</u> <u>sub</u> <u>nom</u>; <u>Tel-Oren v. Libyan Arab Republic</u>, 726 F.2d 774 (D.C. Cir. 1984).

5.      **Negligent Infliction of Emotional Distress And Negligence
(Counts 5 & 8).**

Because plaintiffs "do not allege or identify a duty owed . . . the negligence and

negligent infliction of emotional distress claims [must be] dismissed for failure to state a claim."  See

In re Sept. 11 Attacks I, 349 F. Supp. 2d at 830-31.  Moreover, even if some duty could be alleged,

plaintiffs do not allege a breach of any such duty of care by DMI Trust -- because they allege no

wrongful act or omission by DMI Trust -- or proximate causation of their injuries.

6.      **Conspiracy and Aiding and Abetting (Counts 6 & 7).**

Plaintiffs' putative causes of action for conspiracy and aiding and abetting are not

recognized as independent claims.  See Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir.

1981) ("Under New York law, conspiracy, per se, is not a tort."); Small v. Lorillard Tobacco Co., 94

N.Y.2d 43, 51, n.3, 57, 720 N.E.2d 892, 895, n.3, 898 (N.Y. 1999) (aiding and abetting is "no[t an]

independent tort").[16]  For this reason alone, the plaintiffs' putative conspiracy and aiding and

abetting causes of action must be dismissed.

Moreover, even if conspiracy and aiding and abetting were cognizable as discrete

causes of action, plaintiffs have entirely failed to allege facts sufficient to state any such claim.  See

supra Part I.A.  Plaintiffs' various conclusory allegations are categorically insufficient to make out

any of the elements of conspiracy, and plaintiffs allege no facts showing that DMI Trust ever

entered into any corrupt agreement or ever took any overt acts in furtherance of any conspiracy.  See

id.  Similarly, plaintiffs have not properly alleged aiding and abetting, because they have not alleged

any facts showing that DMI Trust "intentionally and substantially" assisted in the commission of al

Qaeda's tortious acts.  See id.  Thus, plaintiffs have failed to allege conspiracy or aiding and abetting

in support of any of their claims.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826 (defendant

---

[16] Pennsylvania and Virginia also do not recognize an independent civil conspiracy tort.  Boyanowski v.
Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); Kieft v. Becker, 58 Va. Cir. 171, 2002 WL
481249, at *5 (Va. Cir. Ct. Jan. 31,  2002); see also Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).
Pennsylvania also does not recognize an independent tort of aiding and abetting.  Allegheny Gen. Hosp. v.
Phillip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000).  It is currently unclear whether an aiding and abetting
claim is recognized under Virginia law.  Cf. A.G. Van Metre Const., Inc. v. NVKettler L.P., 1992 WL 884467,
at *3 (Va. Cir. Ct. Jan. 29, 1992) with Sherry Wilson & Co., Inc. v. Generals Court, L.C., 2002 WL 32136374,
at *1 (Va. Cir. Ct. Sept. 27, 2002).

must know the wrongful nature of the primary actor's conduct to be liable on a concerted action theory), 832-33, 835-36 (dismissing claims against al Rajhi Bank and Arab Bank).

7.    **Anti-Terrorism Act (Count 9).**

Under the Anti-Terrorism Act, 18 U.S.C. §§ 2331-2333 (2000) ("ATA"), a plaintiff may bring a private cause of action for damages, where plaintiff (i) is a national of the U.S. who (ii) was injured in his or her person, property, or business, (iii) as a proximate result of a defendant's "material support" of terrorism.  18 U.S.C. §§ 2331-2333 (2000); United States v. Yousef, 327 F.3d 56, 116-18 (2d Cir. 2003); Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 220-22 & n.5 (S.D.N.Y. 2003).  "To adequately plead the provision of material support under this section, a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828; see also Boim II, 291 F.3d at 1023 (defendants must be alleged to have acted knowingly); Burnett I, 274 F. Supp. 2d at 106 (ATA claim requires knowledge and intent to further violent acts, and those violent acts must be reasonably foreseeable result of defendant's actions); Smith, 262 F. Supp. 2d at 227 n.12 ("[P]laintiff must show knowledge of and an intent to further the criminal acts, and proximate cause.").

Other than their aforementioned conclusory allegations, plaintiffs here make no allegation of fact that could possibly show that DMI Trust engaged in any act of material support to al Qaeda knowingly or with a desire to see a terrorist plot succeed.[17]  As set forth above, plaintiffs

---

[17]  Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support prohibited activities such as the use of tobacco or alcohol, in an apparent attempt to imply that, because DMI Trust donates to Islamic charities in order to ensure that *zakat* contributions do not support such activities, it must have known that the specific charities to whom it allegedly made contributions were terrorist 'fronts.'  See MDS ¶¶ 45, 119, 122, 125-28.  This allegation regarding the duty of *zakat* cannot support such an implication, however.  First, plaintiffs themselves acknowledge that Islamic charities' support for terrorism was conducted by "taking advantage of" *zakat* donors "under the cover of" legitimate charitable activities, see id. ¶¶ 39, 41, negating any inference that donors "had to know" that *zakat* funds were being diverted.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33 and n.40 (dismissing claims against bank despite identical allegations regarding duty of *zakat*); 5C WRIGHT & MILLER, § 1363 at 120-21 ("the district court will not accept as true pleading allegations that are contradicted by . . . other allegations").  Second, plaintiffs allege that DMI Trust "knew or had to know" in the early 1990s that the IIRO and the MWL were 'fronts' for al Qaeda, see MDS ¶¶ 121-22, 127-29; but plaintiffs themselves acknowledge that in the early 1990s, those charities were funding not terrorists but Afghan *mujahideen*, and that al Qaeda did not begin to solicit *zakat* donations until years later, in or about 1998.  See id. ¶¶ 49, 127-28.

allege nothing more than that DMI Trust made mundane charitable donations to the IIRO and MWL in Egypt in the early 1990s, and its putative subsidiaries provided routine banking services to now-suspect persons and charities, at unspecified times and places, without any indication that DMI Trust made any donations, or that its subsidiaries provided such banking services, with any knowledge of the recipient's tortious activities.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 816 (alleged "relationship with Al Shamal . . . which purportedly knowingly opened accounts for al Qaeda operatives . . . is too remote in time and proximity"), 832-33, 835-36.

Clearly, as this Court held regarding Al Rajhi Bank,[18] "[p]laintiffs do not allege that [DMI Trust] provided direct material support to al Qaeda" as is required to state an ATA claim: "Plaintiffs do not offer facts to support their conclusions that [DMI Trust] had to know that [the charities in question] were supporting terrorism"; there is "no basis for a [firm's] liability for injuries funded by money passing through it on routine banking business"; and "Plaintiffs have not alleged any relationship between [DMI Trust] and al Qaeda or the terrorist attacks of September 11."  See id. at 832-33.  And again, plaintiffs have wholly failed to plead proximate causation.  See supra Part I.B.  Plaintiffs therefore have wholly failed to state their ATA claim against DMI Trust, and that claim must be dismissed.

---

[18]  Indeed, the allegations against DMI Trust are at least as empty as those asserted -- and found insufficient -- against Al Rajhi Bank.  "Plaintiffs claim that Al Rajhi Bank is 'the primary bank for a number of charities that serve as al Qaeda front groups,' and that Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as terrorist organizations by both the United States and Saudi Arabian authorities."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  Here, however, plaintiffs merely claim that subsidiaries of DMI Trust "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of," al Haramain, IIRO and the MWL, and that DMI Trust made donations to IIRO and the MWL in the early 1990s, see MDS ¶¶ 29, 121-22, again without any allegations indicating where, when, why or how subsidiaries of DMI Trust "facilitated financial transactions" for al Haramain, IIRO or the MWL, or any facts indicating that DMI Trust knew that any ostensible recipient of banking services or of donations was supporting terrorism.  Plaintiffs further contend that two of the September 11 hijackers themselves held an account or transferred money through Al Rajhi Bank.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 831.  In contrast, plaintiffs claim only that DMI Trust's putative Sudanese subsidiaries maintained accounts for al Qaeda members in the mid-1990s, see SAC ¶ 45 and MDS ¶¶ 83, 89, 94, and that other subsidiaries of DMI Trust "handled the accounts of" subsequently-designated terrorist financiers, see MDS ¶ 29, again without any allegation showing that DMI Trust or its putative subsidiaries knew that those accounts were held by suspect persons or provided anything other than routine banking services.

8.      **RICO (Count 10).**

Judge Robertson, in <u>Burnett I</u>, dismissed the *Burnett* plaintiffs' RICO claims seeking personal injury damages for lack of standing.  See <u>Burnett I</u>, 274 F. Supp. 2d at 100-02 ("pecuniary losses that are derivative of personal injuries are not 'business or property' injuries" for purposes of RICO standing) (quoting <u>Grogan v. Platt</u>, 835 F.2d 844, 848 (11th Cir. 1988)).  That holding was clearly correct.  See <u>Bankers Trust Co. v. Rhoades</u>, 741 F.2d 511, 515 (2d Cir. 1984) ("plaintiff must show a proprietary type of damage"), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 473 U.S. 922, 105 S.Ct. 3550 (1985).  Because the *O'Neill* plaintiffs' RICO claims also seek personal injury damages, <u>see</u> MDS ¶¶ 4, 14, those claims must be dismissed for lack of standing.[19]

Plaintiffs also have failed to state their putative RICO claims against DMI Trust.  To state a civil RICO claim, plaintiffs must allege a violation of the criminal RICO statute and an injury to their business or property proximately caused by the violation.  The elements of criminal RICO are "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." <u>Moss v. Morgan Stanley Inc.</u>, 719 F.2d 5, 17 (2d Cir. 1983); <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 826-27.  Additionally, plaintiffs' Section 1962(a) claim requires an allegation of fact showing an "injury [resulting] from the defendant's investment of the racketeering income," <u>see</u> <u>id.</u> at 827; plaintiffs' Section 1962(c) RICO claim requires an allegation of fact showing that the defendant

---

[19] One District Court case, <u>National Asbestos Workers Med. Fund v. Phillip Morris, Inc.</u>, 74 F. Supp. 2d 221 (E.D.N.Y. 1999), has been read broadly by the *O'Neill* plaintiffs to warrant RICO standing.  However, unlike the plaintiffs in <u>National Asbestos</u> who were "medical providers [seeking] compensat[ion] for the economic injuries they have allegedly sustained as a result of [medical] treatment [provided]," <u>see</u> <u>National Asbestos</u>, 74 F. Supp. 2d at 223, the *O'Neill* plaintiffs seek damages for personal injury, <u>see</u> MDS ¶¶ 4, 14.  Moreover, the District Court opinion in <u>National Asbestos</u> cannot control here, because it is directly contrary to the earlier decision of the Second Circuit in <u>Laborers Local 17</u>, 191 F.3d at 235-41.  Furthermore, the holding in <u>National Asbestos</u> has been repeatedly and harshly rejected.  See <u>Int'l Brotherhood of Teamsters v. Phillip Morris, Inc.</u>, 196 F.3d 818, 827 (7th Cir. 1999) (describing <u>National Asbestos</u> opinion as "a thinly guised refusal to accept and follow the Second Circuit's holding [in <u>Laborers Local 17</u>]."); <u>Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 99 F. Supp. 2d 174, 178 (D.R.I. 2000) ("[T]his Court disagrees with the reasoning and result in <u>National Asbestos</u>."); <u>Eastern States Health & Welfare Fund v. Phillip Morris, Inc.</u>, 188 Misc.2d 638, 647, 729 N.Y.S.2d 240 (N.Y. Sup. 2000) (recognizing cases criticizing <u>National Asbestos</u> and stating "this Court does not find [the Court's] analysis [in <u>National Asbestos</u>] persuasive or applicable.").

"participated 'in the operation or management of the enterprise itself,' which requires that the[] Defendant[] must have had some part in directing the enterprise's affairs," In re Sept. 11 Attacks II, 2005 WL 2296673, at *20 (citation omitted); and plaintiffs' Section 1962(d) claim requires an allegation of fact showing that the defendant was a "central figure" in the scheme. Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 165 (S.D.N.Y. 2003). Where plaintiffs cannot specifically allege these elements, there is no violation of the criminal RICO statute, and no civil liability can ensue. See, e.g., Moss, 719 F.2d at 18-19.

Once more, plaintiffs' sparse allegations regarding DMI Trust, even if true, would establish *none* of the requisite elements of a civil RICO claim. Neither the Complaint nor the More Definite Statement allege two or more predicate acts by DMI Trust, or any facts that could show an agreement to commit two or more predicate acts by DMI Trust. Plaintiffs allege no facts showing that DMI Trust engaged in any 'pattern' of 'racketeering activity'; no facts that could imply DMI Trust's assent to any alleged RICO conspiracy; no interest of, investment by, or participation by DMI Trust in the alleged al Qaeda 'enterprise'; no injury resulting from DMI Trust's (unalleged) investment of racketeering income; and no indication that DMI Trust was a central figure in any endeavor at all or actively managed anything whatsoever, let alone that it directed the operation of the alleged al Qaeda 'enterprise.' Compare MDS generally and SAC ¶¶ 42-45 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.").

Plaintiffs thus have utterly failed to state any of their RICO claims against DMI Trust, amply warranting dismissal of those claims. See e.g., De Jesus, 87 F.3d at 70 (dismissing RICO claim based upon conclusory allegations); In re Sept. 11 Attacks II, 2005 WL 2296673, at *21-25 (dismissing RICO claims against defendants because there were no allegations that they directed an enterprise); Dubai Islamic Bank, 256 F. Supp. 2d at 164-65 (dismissing § 1962 (c) & (d) claims against bank because the "opening of accounts [and] transferring funds . . . do not constitute

exerting control over the enterprise" and there were no allegations showing that bank was a 'central figure' in the alleged RICO scheme); Indus. Bank of Latvia v. Baltic Fin. Corp., 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (absent allegations sufficient to make out elements of RICO claim, "providing banking services -- even with knowledge of the fraud -- is not enough to state a claim"); United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts should strive to flush out frivolous RICO allegations at an early stage of the litigation").

### 9.    Punitive Damages (Count 11).

Finally, plaintiffs cannot state a claim for punitive damages because punitive damages are a form of relief and not an independent cause of action.  See Smith v. County of Erie, 295 A.D.2d 1010, 1011, 743 N.Y.S.2d 649, 651 (N.Y. Ct. App. 2002) .

## II
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have filed three successive Complaints, three successive RICO Statements, and a More Definite Statement over the course of the last year.  "Even with the opportunity to clarify their claims," however -- indeed, even with many such opportunities -- plaintiffs' failure to state any of their inflammatory claims against DMI Trust is as complete, and as conclusive, as one could imagine.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33; see also, e.g., AXA Corporate Solutions Ins. Co. v. Lumbermens Mut. Cas. Co., 2005 WL 1649045, at *5 (S.D.N.Y. July 13, 2005) (dismissing claims with prejudice where allegations were wholly conclusory); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim").  There is no indication, within or outside of the four corners of the pleadings, that plaintiffs will in good faith be able to cure the compound defects of their claims, as set forth throughout this Memorandum.  Dismissal of plaintiffs' claims against DMI Trust, therefore, should ensue with prejudice.  See Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 138, 168 (2d Cir. 2003) (leave to amend not warranted where amendment would be futile); Electronic Commc'ns Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (dismissing with prejudice and denying leave to amend because complaint failed to state claim and amendment would

be futile); <u>Acito v. Imcera Grp., Inc.</u>, 47 F.3d 47, 55 (2d Cir. 1995) (same); <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 835 (dismissing claims against Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment").

<u>**CONCLUSION**</u>

DMI Trust remains sympathetic to the terrible injuries suffered by plaintiffs, and certainly "understands Plaintiffs' desire to find a legal remedy for the horrible wrongs committed on September 11, 2001." <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 796.  Precisely because of the gravity of their claims, however, and in the interest of just and efficient resolution of these cases, plaintiffs must be held to the requirement that they allege some factual basis for their claims against DMI Trust.  They have not done so.  For that reason and all the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
      October 7, 2005

Respectfully submitted,
SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/s/_____
   James J. McGuire (JM-5390)

   30 Rockefeller Plaza, 24th Floor
   New York, New York 10112
   (212) 332-3800

   *Attorneys for Defendant*
     *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel