# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

---

**MEMORANDUM OF LAW OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC., YORK FOUNDATION, AHMED TOTONJI AND MOHAMMED JAGHLIT IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................2

FACTUAL AND PROCEDURAL HISTORY ...........................................................4

I.     PLAINTIFFS' FIRST AMENDED COMPLAINT .........................................4

II.    PLAINTIFFS' RICO STATEMENTS AGAINST THE "SAAR
NETWORK EXECUTIVES" AND "SAAR NETWORK ENTITIES" .........6

III.   THE COURT'S JANUARY 18, 2005 DECISION ........................................7

IV.   PLAINTIFFS' RICO STATEMENT APPLICABLE TO
AHMED TOTONJI AND MOHAMMED JAGHLIT.................................8

V.    THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER .............9

VI.   PLAINTIFFS' FIRST AMENDED COMPLAINT WITH
INCORPORATED MORE DEFINITE STATEMENTS,
RICO STATEMENTS AND RULE 15(D) SUPPLEMENTAL
PLEADINGS ...........................................................................................13

ARGUMENT.........................................................................................................13

I.     THE STANDARD OF REVIEW ON A RULE 12(B)(6)
MOTION TO DISMISS...........................................................................13

II.    THE COURT SHOULD DISMISS AFRICAN MUSLIM
AGENCY, GROVE CORPORATE, INC., HERITAGE
EDUCATION TRUST, IIIT, MAR-JAC INVESTMENTS, INC.,
RESTON INVESTMENTS, INC., SAFA TRUST AND YORK
FOUNDATION FROM THIS ACTION FOR THE SAME REASONS
THAT THEY WERE DISMISSED FROM *BURNETT*
AND/OR *ASHTON* .................................................................................15

III.   THE COURT SHOULD ALSO DISMISS MENA CORPORATION,
STERLING CHARITABLE GIFT FUND AND STERLING
MANAGEMENT GROUP .......................................................................18

IV.   THE COURT SHOULD ALSO DISMISS AHMED TOTONJI
AND MOHAMMED JAGHLIT ..............................................................19

V.    DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE
MOVING DEFENDANTS IS CONSISTENT WITH THE
COURT'S DISMISSAL OF OTHER DEFENDANTS...............................21

CONCLUSION ....................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000 (7th Cir. 2002) ..............................................................14

*Boim v. Quranic Literary Inst.*, 340 F. Supp. 2d 885 (N.D. Ill. 2004) ...........................17

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) ..............................13

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ..........................................14

*In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 (S.D.N.Y. Sept. 21, 2005) ..........................................................................passim

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ..........................................................................passim

*Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ..............................................................14

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995) ..............................14

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) .............................14

## STATUTES

18 U.S.C. § 1962 ..........................................................................................14

26 U.S.C. § 6104 ..........................................................................................2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | Civil Action No. 03 MDL 1570 (RCC) |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978

**MEMORANDUM OF LAW OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC., YORK FOUNDATION, AHMED TOTONJI AND MOHAMMED JAGHLIT IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit (the "Moving Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[1]

---

[1] The Moving Defendants are seeking to dismiss the document Plaintiffs style as their First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, dated September 30, 2005, which Plaintiffs claim complies with Paragraph 13 of the Court's Case Management Order #2 (the "CMO-2"), as amended. The Moving Defendants, however, do not believe this Complaint complies with the CMO-2, because the Complaint, at least with respect to the allegations against the Moving Defendants, is identical to Plaintiffs' First Amended Complaint, which was the subject of the Court's January 18, 2005 and September 21, 2005 Decisions. Plaintiffs, however, have incorporated by reference, and attached as exhibits, various RICO Statements and other documents as exhibits to this "new" Complaint. The Moving Defendants do not believe the
(footnote continued on next page)

## PRELIMINARY STATEMENT

The Moving Defendants are two upstanding United States citizens -- Ahmed Totonji and Mohammed Jaghlit -- and eleven U.S. companies.  The individual Moving Defendants are scholars, teachers and businessmen who are moderate and progressive voices in American Islam, who denounce and teach against all forms of terrorism, and who have never financed those who engage in terrorist acts.  The "not for profit" Moving Defendants[2] are entities devoted to education, research and humanitarian work that are organized as 501(c)(3) tax exempt organizations, and are therefore subject to the IRS' strict reporting and disclosure requirements.[3] The remaining Moving Defendants[4] are for profit management services companies, investment services companies and investment entities.  The Moving Defendants should be dismissed from this action because they have never supported Al Qaida or assisted or funded terrorism of any kind, and Plaintiffs have failed to allege that they have done so.

Plaintiffs' sole basis for claiming liability against the Moving Defendants is their alleged involvement in the so-called "SAAR Network."  But, this Court's previous rulings have made clear that this allegation alone does not state a claim.  On January 18, 2005, the Court, in considering the same allegations against the other so-called "SAAR Network" defendants in the *Federal Insurance* Complaint that is at issue here, found that Plaintiffs had "provided scant basis

---

"new" Compliant complies with CMO-2, because the CMO-2 contemplated Plaintiffs filing a single new amended complaint that contained all of the Plaintiffs' allegations in one document.  However, because the "new" Complaint and the attached RICO Statements are virtually identical to the earlier complaint, the point is largely moot, and Plaintiffs therefore move to dismiss the "new" complaint even though they believe it was filed improperly.

[2] The not-for-profit Moving Defendants are African Muslim Agency, Heritage Education Trust, International Institute of Islamic Thought, Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group and York Foundation.

[3] All 501(c) organizations are required to disclose their annual information returns and their application for recognition of tax exemption.  26 U.S.C. § 6104

[4] The remaining Moving Defendants are Grove Corporate Inc., Mar-Jac Investments, Inc., Mena Corporation and Reston Investments, Inc.

2

for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, (S.D.N.Y. September 21, 2005") (*"In re Terrorist Attacks I"*).

The Court took that analysis one step further in its recent September 21, 2005 Opinion and Order, and dismissed eight of the Moving Defendants,[5] African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint -- which are virtually identical to the allegations here -- did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 at *25, 30 (S.D.N.Y. September 21, 2005) (*"In re Terrorist Attacks II"*).[6]

The Court also dismissed claims against five individuals, Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani and Iqbal Unus, and one entity Mar-Jac Poultry,[7] all allegedly "SAAR Network Defendants," from this action. Specifically, Mar-Jac Poultry was dismissed because the allegations in Plaintiffs' Complaint and RICO Statements did not provide Mar-Jac Poultry "with notice as to how it could be liable for the terrorist attacks." *Id.* at *25. The individual defendants were dismissed because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *Id.* at *27.

---

[5] For the Court's convenience, attached hereto as Exhibit A is a chart showing the status of all of the Moving Defendants and other individuals and entities Plaintiffs have alleged are in the "SAAR Network" in *Ashton, Burnett* and *Federal Insurance*.

[6] The Court also dismissed IIIT from *Ashton* for the additional reason that Plaintiffs failed to allege that IIIT had financed any charities that it knew "participated in or contributed to al Qaeda's agenda of terror." *In re Terrorist Attacks, II* at *25. In June 2004, the *Ashton* Plaintiffs voluntarily dismissed African Muslim Agency, Heritage Education Trust, Mena Corporation, Reston Investments, York Foundation, Sterling Charitable Gift Fund and Sterling Management Group.

These rulings, taken together, compel the dismissal of the Complaint against the Moving Defendants. The Moving Defendants all either already have been dismissed from at least one action in this MDL, or are similarly situated to defendants against who claims have been dismissed. Neither the *Federal Insurance* Complaint, nor the RICO Statements attached to the Complaint, contain a single additional factual allegation that was not already considered by the Court in granting the dismissals in *Ashton*, *Burnett* and *Federal Insurance*. Simply put, Plaintiffs have not and cannot assert that the Moving Defendants have ever knowingly or intentionally supported terrorism. Given the Moving Defendants' longstanding commitment to peaceful progress, and against terrorism of any kind, Plaintiffs' baseless and loathsome claims were recklessly made against improbable targets. Because Plaintiffs have failed to come forward with *any* factual allegations connecting the Moving Defendants with terrorism financing or the events of September 11, 2001, the Complaint fails to state a claim and should be dismissed before it does the Moving Defendants even further damage.

## FACTUAL AND PROCEDURAL HISTORY

I. **PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs' First Amended Complaint (the "FAC")[8] alleged that the Moving Defendants, along with other individual and entities, were part of a so-called "SAAR Network," an alleged network of "interrelated ostensible charities" that was established in the 1980s "to generate and surreptitiously transfer funds to terrorist organizations, including al-Qaeda." (FAC at ¶ 222;

---

[7] Mar-Jac Poultry is represented in this action by separate counsel, Gillen Parker & Withers, LLC. Mar-Jac Poultry is included in this discussion because they have been treated by both Plaintiffs and the Court as one of the alleged "SAAR Network" defendants.

[8] The Moving Defendants will refer to Plaintiffs' First Amended Complaint as the "FAC," and Plaintiffs' First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings filed on September 30, 2005, as the "Complaint." The allegations against the Moving Defendants in the two complaints are identical. However, because the paragraph numbering in the two complaints varies in some instances, the Moving Defendants will cite to both complaints separately.

Complaint at ¶ 222.)  Plaintiffs also alleged that many of the entities in the alleged network were related by common management, few of them maintained a physical presence at their purported place of business and they all "have long acted as fully integrated components of al Qaeda's logistical and financial support infrastructure." (*Id.* at ¶¶ 225, 226; Complaint at ¶¶ 225, 226.)

Plaintiffs further alleged that organizations within the SAAR Network were established, funded or closely affiliated with Defendant Suleiman Abdul Aziz al Rajhi. (*Id.* at ¶ 223; Complaint at ¶ 223.)  Suleiman Abdul Aziz al Rajhi is the founder of Al Rajhi Bank, a Saudi Arabian bank and defendant in this action that is alleged by Plaintiffs to have raised, facilitated and transferred money for terrorist organizations. (*Id.*)  On January 18, 2005, the Court dismissed Plaintiffs' claims against Al Rajhi Bank for failure to state a claim. *In re Terrorist Attacks I*, at 833.

Plaintiffs also alleged that in March 2002, federal authorities in the Eastern District of Virginia raided the offices of "SAAR Network" entities and the residences of "SAAR Network" officials, including many of the Moving Defendants. (*Id.* at ¶ 227; Complaint at ¶ 227.)  The Complaint alleged that the ongoing investigation that prompted this raid revealed that "SAAR entities' funds" have been transferred to two individuals designated by the United States as financiers of terrorism, Youssef Nada and Ahmed Idris Nasreddin.[9] (*Id.* at ¶ 228; Complaint at ¶ 228.)

---

[9] Plaintiffs would have the Court to infer a claim against the Moving Defendants from the existence of this highly publicized mass raid on the Moving Defendants' offices and residents.  That raid, however, occurred over three and a half years ago and during that time the government has not handed down one indictment, made one arrest, designated any Moving Defendant as a sponsor of terrorism or frozen or seized a single account or asset.  To the contrary, the government has returned to the Moving Defendants all of the hundreds of boxes of documents and dozens of computers it confiscated during the raid.  The only reasonable inferences that can be drawn from the government's investigation and raid is that it has failed to yield even a single iota of evidence showing that any of the Moving Defendants are part of a "SAAR Network" or have anything to do with funding or supporting terrorism.

The Complaint did not allege which, if any, of the Moving Defendants made the alleged transfers or that, at the time of the alleged transfers, the person or entity that made the alleged transfer knew that Nada or Nasreddin were sponsors or financiers of terrorism or that the transfers were made for the purposes of supporting terrorism.  In fact, at the time of the alleged transfer, which necessarily would have had to occur before September 11, 2001, neither Nada nor Nasreddin had been designated as financiers of terrorism.  Nada was not designated until November 7, 2001, and Nasreddin was not designated until over five months later on April 19, 2002.  (*Id.* at ¶ 264; Complaint at ¶ 264.)  Moreover, it was not until five months after that, on August 29, 2002, that 14 additional companies associated with Nada and Nasreddin were designated.  (*Id.* at ¶ 265; Complaint at ¶ 265.)

## II.   PLAINTIFFS' RICO STATEMENTS AGAINST THE "SAAR NETWORK EXECUTIVES" AND "SAAR NETWORK ENTITIES"

On July 16, 2004, Plaintiffs filed two virtually identical RICO Statements.  One was made applicable to purported "SAAR Network Executives" Taha Al-Alwani, Muhammad Ashraf, M. Yaqub Mirza, Iqbal Yunus and Dr. Jamal Barzinji.  The other RICO Statement was applicable to purported "SAAR Network Entities" Mar-Jac Poultry and the eleven Moving Defendants, African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, Inc., IIIT, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation.

These RICO Statements contained little more than the same vague and conclusory allegations found in the Complaint, except for the additional allegation that in 1998, Mar-Jac Poultry donated $1.1 million to African Muslim Agency, and all but $35,000 of these funds were transferred to York International in the Isle of Man so that the funds could not be tracked.

6

Plaintiffs concluded that these "transactions bear all of the hallmarks of money laundering in support of terrorism." (RICO Statement applicable to the SAAR Network Entities and RICO Statement applicable to the SAAR Network Executives at ¶5(f).)

## III.   THE COURT'S JANUARY 18, 2005 DECISION

On January 18, 2005, the Court ruled on the motions to dismiss made by numerous defendants, including the motions filed by all but two of the Moving Defendants[10] to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court considered all of the FAC's allegations detailed above concerning the existence of the so-called "SAAR Network," and concluded that Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, at 823.

Nevertheless, the Court found that some of the Moving Defendants "may be subject to personal jurisdiction in light of Plaintiffs' allegation that they purposefully directing [sic] its activities at the United States by transferring money to designated terrorists Youssef Nada and Ahmed Idris Nasreddin, particularly if they intended the money to support terrorism." *Id.* Therefore, the Court ordered the parties "to engage in jurisdictional discovery to determine which of the Network's entities have a presence in Virginia and which entities transferred money to Nada and Nasreddin." *Id.*

The Court also found that its "analysis of the [Moving Defendant's] arguments in favor of 12(b)(6) dismissal depend on a predicate finding of which entities are subject to this Court's personal jurisdiction and which entities--and under what circumstances--transferred money to

---

[10] Moving Defendants Ahmed Totonji and Mohammed Jaghlit had not been served with the FAC by the time the other Moving Defendants had filed their motions to dismiss. Otherwise, Mr. Totonji and Dr. Jaghlit likely would (footnote continued on next page)

terror fronts." *Id.* Accordingly, the Court denied the Moving Defendants' Rule 12(b)(6) motion to dismiss without prejudice, but noted that it could be "renewed upon completion of personal jurisdiction discovery." *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence. *Id.* at 837-38.

On May 11, 2005, the Moving Defendants wrote to the *Federal Insurance* Plaintiffs, voluntarily agreed to subject themselves to the jurisdiction of the Court and agreed to withdraw their objections based on lack of personal jurisdiction. By agreeing to submit to the Court's jurisdiction, the Moving Defendants obviated the need for any jurisdictional discovery.

## IV.   PLAINTIFFS' RICO STATEMENT APPLICABLE TO AHMED TOTONJI AND MOHAMMED JAGHLIT

On February 25, 2005, Plaintiffs filed their RICO Statement applicable to Ahmed Totonji and Mohammed Jaghlit -- the two Moving Defendants who were not the subject of the Court's January 18, 2005 Decision. This RICO Statement is very similar to those previously filed by Plaintiffs against the "SAAR Network Executives" and "SAAR Network Executives." It alleged that Mr. Totonji was a director of "SAAR Network" entities IIIT and Safa Trust, and that Dr. Jaghlit was a director of "SAAR Network" entities Heritage Education Trust and SAAR Foundation. (RICO Statement applicable to Ahmed Totonji and Mohammed Jaghlit, Exhibit A.)

This RICO Statement also contained the allegation that Mr. Totonji and Dr. Jaghlit "directed funds through a series of other entities over which they had influence until those funds ultimately reached a shell company in the Isle on Man." (*Id.* at ¶ 5(f).) Plaintiffs identified four transactions and alleged that "between 1996 and 2000, approximately $26 million was funneled

---

have moved to dismiss the FAC at the same time as the other Moving Defendants, and likely would have been included in either the Court's January 18, 2005 or September 21, 2005 Decisions.

from the SAAR network of charities . . . . to the York International Trust and Humana Charitable Trust, both Isle of Man entities." (*Id.*) These transfers were similar to transfers identified in the RICO Statements applicable to the "SAAR Network Entities" and "SAAR Network Executives." Plaintiffs also concluded that these transactions "bear all of the hallmarks of money laundering in support of terrorism." (*Id.*)

## V.    THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued an Opinion and Order and ruled on motions to dismiss that had been filed by numerous defendants. The Court dismissed eight of the Moving Defendants, African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action, and also dismissed IIIT from *Ashton*.[11]  *In re Terrorist Attacks II*, at \*30. The Court also dismissed five of the so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani and Iqbal Unus, and one of the "SAAR Network Entities" Mar-Jac Poultry, from the *Federal Insurance* action. *Id.*[12]

As an initial matter, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the Defendants moving for dismissal under Rule 12(b)(6). *Id.* at \*21.  The Court also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and intentional infliction of emotional distress. *Id.* The Court noted that it would review each complaint individually to determine if it states a claim for relief under the Antiterrorism Act ("ATA") and RICO.  The Court noted that if "Plaintiffs state a claim for relief

---

[11] In June 2004, the *Ashton* Plaintiffs voluntarily dismissed African Muslim Agency, Heritage Education Trust, Mena Corporation, Reston Investments, York Foundation, Sterling Charitable Gift Fund and Sterling Management Group.

[12] The Court noted that it was using the phrase "SAAR Network Defendants" solely for convenience, at not because Plaintiffs had alleged the existence of such a network. *Id.* at n. 15.

under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal*

Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have

stated claims for intentional infliction of emotional distress.  Plaintiffs who are aliens will have

also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*

       The Court analyzed the allegations against the "SAAR Network Defendants," noting that

Plaintiffs' claims against the "SAAR Network Entities" in both the *Ashton* and *Burnett*  actions

"rely primarily on their allegations against the 'SAAR Foundation and network.'"  *Id.* at *24.

Plaintiffs alleged that the "SAAR Network" was formed "by a group of Muslim scholars and

scientists" and that its "largest donor is the al Rajhi family of Saudi Arabia." *Id.*  Plaintiffs

alleged that "over one hundred 'affiliated organizations' are registered or are doing business at

one of the SAAR Foundation's addresses in Herndon, Virginia, but many 'do not maintain a

physical presence at that address, or elsewhere.'" *Id.*  The complaints further alleged that many

of the "SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of

Operation Greenquest to investigate "potential money laundering and tax evasion activities and

their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including)

Osama bin Laden." *Id.*  The allegations cited by the Court are identical to those alleged against

the Moving Defendants here.

       The Court dismissed the claims against the "SAAR Network" Defendants because these

allegations were only a "legal conclusion that the SAAR Network entities conspired with the

SAAR Network" and Plaintiffs failed to provide Defendants with "notice of the factual grounds

on which Plaintiffs' claims of conspiracy are based." *Id.* at *25.  The *Ashton* complaint against

IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT

financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly

financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.*

The Court also dismissed the *Federal Insurance* Plaintiffs' claims against Mar-Jac Poultry. The Court reviewed the allegations the *Federal Insurance* Plaintiffs made against Mar-Jac not only in the FAC, but also the allegations in the RICO Statement applicable to SAAR Network Entities that Mar-Jac Poultry donated money to African Muslim Agency, which the Plaintiffs claim was later "laundered," and second, that it donated money to unnamed SAAR Network Entities, which was later forwarded to al Qaeda. *Id.* at *25. The Court nevertheless dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* The Court dismissed the remainder of the complaint because it did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

The Court also dismissed the *Federal Insurance* action against the alleged "SAAR Network Executives" Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus. Plaintiffs alleged these individuals "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein." (FAC at ¶ 66; Complaint at ¶ 66.) The FAC did not include any other allegations against these defendants.

The RICO Statement alleged that Taha Al-Alwani was President of IIIT and an officer of Heritage Education Trust; Muhammad Ashraf was an officer and/or director of Sterling Investment Group, Sterling Charitable Gift Fund, and York Foundation; M. Omar Ashraf was an officer and/or director of Grove Corporate Plaza, Mar-Jac Investments, and Sterling Charitable Gift Fund; Yaqub Mirza served as an officer and/or director of African Muslim Agency, Mar-Jac

Investments, Mar-Jac Poultry, Reston Investments, SAAR Foundation, Safa Trust, where he was the principal signatory on Safa Group checks, and York International; Iqbal Yunus was a director of Child Development Foundation, a SAAR Network entity, and was associated with Sterling Charitable Gift Fund, and Sterling Management Group. The Court dismissed the Complaint against these SAAR Network Executives because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II* at *27.

The Court also dismissed the RICO, TVPA, intentional tort and negligence claims against Jamal Barzinji. However, the Court found that Plaintiffs' allegations that Mr. Barzinji: 1) was a Saudi national who, "through his various for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, has long provided material support and resources to al Qaida." (FAC at ¶¶ 490-91; Complaint at ¶¶ 481-82); 2) served as a board member of, or was associated with IIIT, World Assembly of Muslim Youth, Safa Trust, Mar-Jac Poultry, and SAAR Foundation (*Id.*); 3) was a business associate of the designated terrorist Youssef Nada. (*Id.*); 4) "committed and conspired to: transit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive, fire, kidnapping or extortion ...; provide material support or resources to foreign terrorist organizations ...; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act." (*Id.*); and 5) was president of Safa Trust and a director of Mar-Jac Poultry, Reston Investments, IIIT, and Safa Trust (RICO Statement at ¶ 5(f) and Ex. A.), provided Mr. Barzinji with "sufficient notice of the claims against him regarding his alleged

provision of material support in the form of financial transactions to al Qaeda." *In re Terrorist Attacks II* at \*27.

## VI.    PLAINTIFFS' FIRST AMENDED COMPLAINT WITH INCORPORATED MORE DEFINITE STATEMENTS, RICO STATEMENTS AND RULE 15(D) SUPPLEMENTAL PLEADINGS

On September 30, 2005, Plaintiffs filed what they styled as their First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings. Although the paragraph numbering in this complaint differed somewhat from the FAC, the allegations in this "new Complaint" against all of the alleged "SAAR Network Defendants," including the "SAAR Network Executives," "SAAR Network Entities," Mr. Totonji and Dr. Jaghlit were identical to those allegations in the FAC that were analyzed by the Court in its January 18, 2005 and September 21, 2005 decisions. Plaintiffs also incorporated by reference the allegations in the various RICO Statements they had filed previously against various Defendants, and attached those RICO Statements as exhibits to the Complaint.

This "new Complaint" was filed after the Court issued its September 21, 2005 Opinion and Order which provided Plaintiffs with explicit guidance on what they must allege to survive a motion to dismiss.

## <u>ARGUMENT</u>

## I.    THE STANDARD OF REVIEW ON A RULE 12(B)(6) MOTION TO DISMISS

In determining a Rule 12(b)(6) motion, the Court accepts as true the facts alleged in the complaints and draws all reasonable inferences in favor of Plaintiffs. *In re Terrorist Attacks II* at \*18 (*citing Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)). A complaint should be dismissed only if it appears beyond doubt that Plaintiffs can prove no set of facts in support of

13

their claims that would entitle them to relief. *Id.* (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)).

Despite these liberal pleading standards, a plaintiff must still give defendants fair and adequate notice of their claims and the grounds on which they rest. *Id.* (*citing Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); at 813 ("legal conclusions done up as factual allegations are not facts and cannot substitute for facts"). Moreover, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993) (internal quotations omitted).

Most importantly, however, "in light of the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant, to ensure that he -- or it -- does indeed have fair notice of [the claims]." *In re Terrorist Attacks I*, 349 F. Supp. 2d at 831.

The Court has held that defendants may be responsible for the September 11 attacks if Plaintiffs allege that they knowingly and intentionally provided material support to al Qaeda. *See Terrorist Attacks I*, at 826. To state a claim under the ATA, this Court has adopted the Seventh Circuit's requirement that Plaintiffs plead that defendants knew of al Qaeda's illegal activities, "that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities." *In re Terrorist Attacks II* at *19 (*citing Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)). To state a claim for Civil RICO pursuant to 18 U.S.C. § 1962(c), "Plaintiffs must allege that the [Defendants] participated 'in the operation or management of the enterprise itself,' which requires that these Defendants must have had some part in directing the enterprise's affairs." *Id.* at *20 (*citing Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30,

14

1997)).  Moreover, to the extent that the *Federal Insurance* Plaintiffs have stated a claim under

the ATA, they will have also stated a claim for trespass.  *Id.* at \*21.

## II.    THE COURT SHOULD DISMISS AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, IIIT, MAR-JAC INVESTMENTS, INC., RESTON INVESTMENTS, INC., SAFA TRUST AND YORK FOUNDATION FROM THIS ACTION FOR THE SAME REASONS THAT THEY WERE DISMISSED FROM *BURNETT* AND/OR *ASHTON*

The *Federal Insurance* Plaintiffs' theory of liability against African Muslim Agency,

Grove Corporate, Inc., Heritage Education Trust, IIIT, Mar-Jac Investments, Inc., Reston

Investments, Inc., Safa Trust and York Foundation, as was the case in the *Ashton* and *Burnett,*

rests entirely on the existence of, and their inclusion in, the so-called SAAR Network.[13]

However, in its January 18 Decision, the Court found that the *Federal Insurance* Plaintiffs

"provided scant basis for linking [the Moving Defendants] under the SAAR Network title." *In re*

*Terrorist Attacks I,* at 823.  In its September 21, 2005 Order and Opinion, the Court dismissed

each of these Defendants from the *Burnett* action (and IIIT from *Ashton* as well) because those

Plaintiffs only offered "legal conclusion that the SAAR Network entities conspired with the

SAAR Network" and Plaintiffs failed to provide Defendants with "notice of the factual grounds

on which Plaintiffs' claims of conspiracy are based." *In re Terrorist Attacks II* at \*25.

The *Federal Insurance* Plaintiffs' claims against African Muslim Agency, Grove

Corporate, Inc., Heritage Education Trust, IIIT, Mar-Jac Investments, Inc., Reston Investments,

Inc., Safa Trust and York Foundation should be dismissed because the *Federal Insurance*

Complaint -- filed after the Court's September 21, 2005 Order and Opinion which clearly put

Plaintiffs on notice of what needed to be alleged to state a claim -- contains only two additional

15

allegations that are not found in either the *Ashton* or *Burnett* complaints. But, neither of those allegations are sufficient to provide Defendants notice of the factual grounds on which Plaintiffs claims are based.

The first of these allegations, found in the RICO Statement Plaintiffs filed against the "SAAR Network Entities," is that Mar-Jac Poultry donated $1.1 million to African Muslim Agency, and that all but $35,000 of these funds were transferred to York International in the Isle of Man so that the finds could no longer be tracked. Plaintiffs have concluded that these "transactions bear all of the hallmarks of money laundering in support of terrorism." (RICO Statement applicable to SAAR Network Entities at ¶ 5(f).) However, the Court already considered this allegation, but nevertheless dismissed Mar-Jac Poultry from this action. *In re Terrorist Attacks II* at *25. The Court held that the "RICO Claim against Mar-Jac Poultry is dismissed because it is not alleged that Mar-Jac had any role in directing an enterprise," and that the ATA claim was dismissed because the "*Federal* complaint does not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.* For these same reasons, this allegation also does not state a claim against African Muslim Agency, York International or any of the other Moving Defendants.

The other allegation in the *Federal Insurance* Complaint that is not present in the *Burnett* and *Ashton* complaints is that "SAAR entities' funds have been transferred to Youssef Nada and Ahmed Idris Nasreddin, both of whom have been designated under Executive Order 13224 based on their material support and sponsorship of al-Qaida." (FAC at ¶ 228; Complaint at ¶ 228.)[14]

---

[13] As noted in both *In re Terrorist Attacks I* and *II*, the *Federal Insurance* Plaintiffs' claims of assault, battery, and intentional infliction of emotional distress are time barred and therefore have been dismissed against all of the Moving Defendants. *In re Terrorist Attacks I*, at 829; *In re Terrorist Attacks II*, at *20.

[14] The Court noted in its January 18th Decision that this alleged transfer could possibly support a finding that the Moving Defendants were subject to the personal jurisdiction of the Court. *In re Terrorist Attacks I*, at 823. That (footnote continued on next page)

16

But, Plaintiffs have not even alleged which, if any, of the "SAAR entities" made the alleged transfer.  Plaintiffs have alleged that there are over one hundred SAAR entities, almost all of which are not Moving Defendants here.  The Complaint does not state a claim because Plaintiffs have not alleged any of the Moving Defendants transferred funds to Nada or Nasreddin.  (FAC at ¶ 224; Complaint at ¶ 224.)

Moreover, even if such a transfer were properly alleged, Plaintiffs have failed to allege -- as they must to state a claim -- that any Moving Defendant "knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the [Moving Defendant] engaged in some act of helping those activities."  *In re Terrorist Attacks II* at 828 (*citing Boim*, 291 F.3d at 1023; *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 906-913 (N.D. Ill. 2004). Nada and Nasreddin were not even designated as terrorists until well after the September 11, 2001 attacks.  (FAC at ¶ 264; Complaint at ¶ 264.)  Although Plaintiffs fail to allege when the alleged transfers occurred, to support a claim for the September 11th attacks they necessarily would have had to have occurred before September 11, 2001 -- a date before either individual had been designated as a sponsor of terrorism.  Therefore, the facts Plaintiffs have alleged do not create the inference that any of the Moving Defendants knew Nada or Nasreddin to be a members or supporter of al Qaeda at the time that the transfers were made, or that any of the funds would be used to provide support or assistance for the September 11th attacks.  *See In re Terrorist Attacks I*, at 813-14 ("Conclusory allegations that he donated money to charities, without specific allegations that he knew they were funneling money to terrorists, do not suffice.")

---

issue is now moot because, as discussed above, the Moving Defendants have since agreed to submit to the jurisdiction of the Court.  Regardless of whether such alleged transfers could possibly provide a basis for jurisdiction, for the reasons discussed herein, they fall far short of stating a claim.

## III.    THE COURT SHOULD ALSO DISMISS MENA CORPORATION, STERLING CHARITABLE GIFT FUND AND STERLING MANAGEMENT GROUP

The Court should dismiss the claims against Mena Corporation, Sterling Charitable Gift Fund and Sterling Management Group for the same reason it should dismiss the other alleged "SAAR Network Entities" discussed above. The complaint in *Burnett* was not dismissed as to these entities, but not because the *Burnett* plaintiffs included different or additional allegations against these entities.[15] They did not. Rather, these claims were not dismissed by the Court's September 21, 2005 Order and Opinion only because the defendants had not yet been served with the complaint by Plaintiffs by the time the other entities discussed above had filed their motions to dismiss. Had these three entities been included in the motion to dismiss the *Burnett* action, they would have been dismissed from *Burnett* because the allegations against all of the alleged "SAAR Network" entities are identical in that complaint.

The factual allegations against these three entities are identical to those allegations that the *Federal Insurance* Plaintiffs have asserted against African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, IIIT, Mar-Jac Investments, Inc., Reston Investments, Inc., Safa Trust and York Foundation. Therefore, Mena Corporation, Sterling Charitable Gift Fund and Sterling Management Group should be dismissed from the *Federal Insurance* action for the reasons detailed above.

---

[15] As previously noted, in June 2004, the *Ashton* Plaintiffs voluntarily dismissed Mena Corporation, Sterling Charitable Gift Fund and Sterling Management Group, along with African Muslim Agency, Heritage Education Trust, Mena Corporation, Reston Investments and York Foundation.

## IV.   THE COURT SHOULD ALSO DISMISS AHMED TOTONJI AND MOHAMMED JAGHLIT

Ahmed Totonji and Mohammed Jaghlit should also be dismissed from this action because the allegations against them are virtually identical to those made against the alleged "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani and Iqbal Unus that were dismissed from this case by the Court's September 21, 2005 Opinion and Order. *In re Terrorist Attacks II* at \*25. Plaintiffs have alleged that Mr. Totonji and Dr. Jaghlit, just like the previously dismissed "SAAR Network" executives, "aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons, as described herein." (FAC at ¶ 66; Complaint at ¶ 66.) The Complaint contains no additional allegations against Mr. Totonji and Dr. Jaghlit, and clearly fails to state a claim.

The allegations in the RICO Statement applicable to Mr. Totonji and Mr. Jaghlit also fail to state a claim. The RICO Statement alleges that Mr. Totonji was a director of "SAAR Network" entities IIIT and Safa Trust, and that Dr. Jaghlit was a director of "SAAR Network Entities" Heritage Education Trust and SAAR Foundation. (RICO Statement applicable to Ahmed Totonji and Mohammad Jaghlit, Exhibit A.) The allegations in the RICO Statement contains allegations that are virtually identical to those in the RICO Statements filed against the SAAR Network Executives, Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, or Iqbal Unus. Therefore, the Court should also dismiss Mr. Totonji and Dr. Jaghlit because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks* II at \*27.

19

The allegations against Mr. Totonji and Dr. Jaghlit are not like those against another "SAAR Network" executive, Mr. Barzinji. The Court dismissed the RICO, TVPA, intentional tort and negligence claims against Jamal Barzinji. The Court did not, however, dismiss the ATA claim but only because the Plaintiffs had included the allegations that Mr. Barzinji: 1) was a Saudi national who, "through his various for-profit enterprises and involvement with charities and individuals operating within al Qaida's infrastructure, has long provided material support and resources to al Qaida." (FAC at ¶¶ 490-91; Complaint at ¶¶ 481-82); 2) served as a board member of, or was associated with IIIT, World Assembly of Muslim Youth, Safa Trust, Mar-Jac Poultry, and SAAR Foundation (*Id.*); 3) was a business associate of the designated terrorist Youssef Nada. (*Id.*); 4) "committed and conspired to: transit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive, fire, kidnapping or extortion ...; provide material support or resources to foreign terrorist organizations ...; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act." (*Id.*); and 5) was president of Safa Trust and a director of Mar-Jac Poultry, Reston Investments, IIIT, and Safa Trust. (RICO Statement  at 5(f) and Ex. A.)  The Court found that these additional allegations against Mr. Barzinji provided him with "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *In re Terrorist Attacks II* at *27.  None of these additional allegations that the Court used to distinguish Mr. Barzinji are present against Mr. Totonji or Dr. Jaghlit.

Therefore, because the allegations in the Complaint and the RICO Statements against Mr. Totonji and Dr. Jaghlit are virtually identical to those allegations against the previously

dismissed "SAAR Network" executives, Mr. Totonji and Dr. Jaghlit should be dismissed as well.

## V.   DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE MOVING DEFENDANTS IS CONSISTENT WITH THE COURT'S DISMISSAL OF OTHER DEFENDANTS

The Court's dismissal of the claims against the Moving Defendants would also be consistent with the Court's dismissal of the claims against other defendants in the MDL.  For example, in its January 18, 2005 Decision, the Court dismissed all of the claims against Defendants Prince Sultan and Prince Turki.  Although those dismissals were based upon the Foreign Sovereign Immunities Act, the Court made clear that to state a claim against the Princes pursuant to the ATA, at a minimum, "the Plaintiffs would have to allege specific facts showing that [Defendants] *knew or should have known that the charities they supported were actually fronts for al Qaeda." In re Terrorist Attacks I*, at 800 (emphasis added).   Based on this standard, the Court found that Plaintiffs had not satisfied the torts exception to the FSIA because "Plaintiffs have not pleaded facts to suggest the Princes knew they were making contributions to terrorist fronts and provided substantial assistance or encouragement to the terrorists to satisfy *Boim* or New York law."  *Id*. at 801.

Moreover, the Court specifically noted that it is:

> not ruling as a matter of law that a defendant cannot be liable for contributions to organizations that are not themselves designated terrorists. *But in such a case, there must be some facts presented to support the allegation that the defendant knew the receiving organization to be a solicitor, collector, supporter, front or launderer for such an entity.  There must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer.*  Here, there are no such factual bases presented, there are only conclusions.

*Id*. (emphasis added) (citations omitted).

Dismissal of the claims against the Moving Defendants would also be consistent with Court's dismissal of the ATA claims against Al Rajhi Bank.  Plaintiffs alleged liability against

Al Rajhi Bank based on the purported fact that that two of the September 11th hijackers maintained accounts with the bank, that the bank serves as the primary bank for several charities which act as fronts for al Quada and that it has a relationship with Hamas and other terrorists, and that the bank continues to maintain Al Haramain's account despite the United States and Saudi Arabia's designation of Al Haramain as a terrorist organization. *Id.* at 831-32. Despite the existence of these allegations that provide a substantially stronger link to the September 11, 2001 attacks than those asserted against the Moving Defendants, the Court dismissed the claims against Al Rajhi Bank because Plaintiffs failed to allege that Al Rajhi Bank provided direct material support to al Qaeda or aided and abetted the September 11 terrorists. *Id.* Specifically, the Court noted that New York law and the courts interpreting the ATA make very clear that liability based upon a concerted action theory of liability requires general knowledge of the primary actor's conduct. Here, "[e]ven with the opportunity to clarify their claims against Al Rajhi Bank, [Plaintiffs] do not offer facts to support their conclusions that Al Rajhi Bank had to know that Defendant charities WAMY, MWL, IIRC, and SJRC were supporting terrorism."[16] *Id.* Moreover, the Court also found that the "allegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business."[17] *Id.*

In its September 21, 2005 Opinion and Order, the Court also dismissed the Success Foundation. Plaintiffs had alleged that the Success Foundation is a sister company to another

---

[16] The Court also noted that "Plaintiffs' allegations that Al Rajhi Bank has connections to Hamas supporters fails to state a claim because Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11." *Id.*

[17] Plaintiffs have alleged that the Al Rajhi family is a major donor to the "SAAR Network." *Id.* Plaintiffs have attempted to use this allegation to draw the inference that the so-called "SAAR Network" entities are sponsors of terrorism. Consistent with this opinion, Plaintiffs may not use allegations concerning the Al Rajhi family to support a claim against any of the Moving Defendants.

Defendant, IIRO, and that it "sends money back and forth with the IIRO and IRO" and other sponsors of terror. Plaintiffs also alleged that Success Foundation entered into a contract to act as an agent for Defendant Taibah, which has since been designated a global terrorist. The Court dismissed the complaint against the Success Foundation because it did "not allege that Success Foundation knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that Success Foundation knew the other unnamed organizations to which it transferred money were in the business of supporting terrorism."[18] *In re Terrorist Attacks II* at *23.

Based on these rulings, Plaintiffs' claims against the Moving Defendants must be dismissed because Plaintiffs have failed to allege that any of the Moving Defendants knowingly provided assistance or support to al Qaeda or a "solicitor, collector, supporter, front or launder" for al Qaeda.

## CONCLUSION

For all the foregoing reasons, the Moving Defendants respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings with prejudice.

Respectfully submitted,

Dated:   October 18, 2005

By: /s/ Nancy Luque _____
Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
DLA PIPER RUDNICK GRAY CARY US LLP

---

[18] The Court also dismissed the claims against Saudi American Bank because "[t]he essence of Plaintiff's claim is that through its relationships with other banks and support of the Saudi Binladin group's work in Sudan, Saudi American Bank provided material support to al Qaeda. It is not alleged to have done anything to directly support al Qaeda, Osama Bin Laden or their terrorist agenda." *Id.*

23

1200 Nineteenth Street
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit*

# EXHIBIT A

| | ASHTON | BURNETT | FEDERAL |
|---|---|---|---|
| Jamal Barzinji | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | **Motion to Dismiss granted in part, denied in part 9/21/05.** |
| Muhammad Ashraf | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | **Motion to Dismiss granted 9/21/05.** |
| M. Omar Ashraf | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | **Motion to Dismiss granted 9/21/05.** |
| M. Yaqub Mirza | Served, but answer or response to complaint not yet due. | **Voluntarily Dismissed by Plaintiffs 1/05.** | **Motion to Dismiss granted 9/21/05.** |
| Taha Al-Alwani | Not served with complaint. | **Voluntarily Dismissed by Plaintiffs 1/05.** | **Motion to Dismiss granted 9/21/05.** |
| Iqbal Unus | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | **Motion to Dismiss granted 9/21/05.** |
| Ahmed Totonji | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | Moving Defendant in this motion. |
| Mohammed Jaghlit | Served, but answer or response to complaint not yet due. | Served, but answer or response to complaint not yet due. | Moving Defendant in this motion. |
| African Muslim Agency | **Voluntarily Dismissed by Plaintiffs on 6/04.** | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Grove Corporate | Served, but answer or response to complaint not yet due. | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Heritage Education Trust | **Voluntarily Dismissed by Plaintiffs on 6/04.** | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| International Institute of Islamic Thought | **Motion to Dismiss granted 9/21/05.** | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Mar-Jac Investments | Not served with complaint. | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Mena Corporation | **Voluntarily Dismissed by Plaintiffs on 6/04.** | Served, but answer or response to complaint not yet due. | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Reston Investments | **Voluntarily Dismissed by Plaintiffs on 6/04.** | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Safa Trust | Not served with complaint. | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Sterling Charitable Gift Fund | **Voluntarily Dismissed by Plaintiffs on 6/04.** | Served, but answer or response to complaint not yet due. | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Sterling Management Group | **Voluntarily Dismissed by Plaintiffs on 6/04.** | Served, but answer or response to complaint not yet due. | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| York Foundation | **Voluntarily Dismissed by Plaintiffs on 6/04.** | **Motion to Dismiss granted 9/21/05.** | Motion to Dismiss denied w/o prejudice 1/18/05 and Moving Defendant in this motion. |
| Mar-Jac Poultry[1] | **Motion to Dismiss granted 9/21/05.** | **Motion to Dismiss granted 9/21/05.** | **Motion to Dismiss granted 9/21/05.** |

---

[1] Mar-Jac Poultry is represented by separate counsel.  However, they are included in this status chart because they have been classified by both Plaintiffs and the Court as "SAAR Network" Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2005, I caused an electronic copy of the foregoing Memorandum of Law in Support of Motion To Dismiss Of African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji And Mohammed Jaghlit Pursuant To Rule 12(B)(6) For Failure To State a Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.


/s/  Steven K. Barentzen_____
Steven K. Barentzen (SB-8777)