UNITED STATES DISTRICT COURT
SOUTHERN DISTRIC OF NEW YORK

|

In re TERRORIST ATTACKS on
SEPTEMBER 11, 2001

|

**03 MDL 1570 (RCC)**

This document relates to:

*Cantor Fitzgerald & Co., et al. v. Akida Bank Private Ltd., et al. (04 CV 7065)*

*Continental Casualty Co., et al. v. Al Qaeda Islamic Army, e. al. (04 CV 5970)*

*Euro Brokers, Inc., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7279)*

*New York Marine & General Ins. Co. v. Al Qaida, et al. (04 CV 6105)*

*Estate of John P. O'Neill, Sr. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 1923)*

*World Trade Center Prop., L.L.C., et al. v. Al Baraka Inv. & Dev. Corp., et al. (04 CV 7280)*

**MEMORNDUM OF DEFENDANTS SALEH ABDULLAH KAMEL, AL BARAKA INVESTMENT & DEVELOPMENT CORP. AND DALLAH AL BARAKA IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND LACK OF SUBJECT MATTER JURISDICTION**

Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Ste. 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendants Saleh Abdullah Kamel, Al Baraka Investment & Development Corp., and Dallah al Baraka*

## TABLE OF CONTENTS

**I.   INTRODUCTION**................................................................................................ 1

**II.   THESE DUPLICATIVE COMPLAINTS FAIL TO STATE A CLAIM AGAINST SALEH ABDULLAH KAMEL, AL BARAKA INVESTMENT & DEVELOPMENT, AND DALLAH AL BARAKA GROUP** ........................................ 5

A. Standard of Review ...................................................................................... 5

B.   Overview of Allegation in Complaints .................................................. 6

1.  *General and Conclusory Allegations* .................................................... 6

2.  *General Operations of Al Baraka Investment & Development* .......................... 7

3.  *General Operations of Dallah al Baraka* ............................................... 8

4.  *Biographic Information on Defendant Kamel* ........................................... 8

5.  *Ownership Interest in Al Shamal Bank* ................................................ 9

6.  *Sudanese Operations and Banking Assets* .............................................. 10

7.  *Ownership Interest in Al Aqsa Islamic Bank* .......................................... 11

8.  *Misc. Banking Assets and Relation* .................................................... 11

9.  *Ownership Interest in Dallah Avco* ..................................................... 12

10.   *Employment of Omar al Bayoumi by Dallah Avco* ...................................... 12

11.   *Misc. Business Assets and Relations* .................................................. 13

12.   *General Provision of Banking Services to Al Haramain* .............................. 13

13.   *Bosnian Reports re: Provision of Banking Services to Al Haramain* ........... 13

14.   *Russian Memo re: Funding Al Haramain* ................................................ 14

15.   *Founding of Sana-Bell Inc./Relation with IIRO* ...................................... 15

16.   *The "Golden Chain"* ...................................................................... 15

C.   Additional Allegations in RICO Statements ......................................... 16

1.  *Chechen Operations* ...................................................................... 17

2.  *Additional Provision of Banking Services* ............................................ 18

3.  *Albanian Banking Operations* ........................................................... 18

4.  *Misc. Banking Enterprises* .............................................................. 19

5.  *Additional Sudanese Allegations* ...................................................... 19

6.  *Misc. Business Enterprise* ............................................................... 19

7.  *Misc. Charitable Activities* ............................................................ 20

D.   Causation (Addressed as to all claims) ............................................... 20

E.     Concerted Action - Conspiracy & Aiding and Abetting (Addressed as to all claims)....................................................................................................................... 21

F.     ATCA............................................................................................................................ 22

G.     RICO ............................................................................................................................ 22

H.     TVPA ........................................................................................................................... 23

I.      Negligence .................................................................................................................... 23

**III.    THIS COURT LACKS SUBJECT MATTER JURISDICITON** .................. 24

**IV.    CONCLUSION** ................................................................................................................ 25

# TABLE OF AUTHORITIES

Federal Cases

*Am. Arbitration Ass'n, Inc. v. DeFonseca*, 1996 U.S. Dist. LEXIS 9160 (S.D.N.Y. June 28, 1996) ................................................................................................................ 22

*Arndt v. UBS AG,* 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) ........................................ 23

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ................................................. 6

*Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003)..................... 2, 3, 10, 13

*Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).............. 8

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) .................................... 6

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F.Supp. 2d 158, 164 (S.D.N.Y. 2003) .......... 22

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995) ..................................................................................... 20

*Ge v. Peng*, 201 F. Supp. 2d 14 ........................................................................................ 6

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ........................................................ 5

*In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005) ................................................................................................................... passim

*In re: Terrorist Attacks of September 11, 2001,* 2005 U.S. Dist. LEXIS 20841 at *57 (S.D.N.Y. Sep. 21, 2005) ...................................................................................... passim

*Kadic v Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995)......................................................... 22

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ............................. 6

*N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).................... 2

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ................................................................... 6

*Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409, 411 (1986).......................... 6

*Tasso v. Platinum Guil Int'l,* 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16, 1997)............... 12

*Thrift Drugs, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) ......... .................................................................................................................................. passim

*Timberlane Lumber Co. v. Bank of Am.*, 749 F.2d 1378, 1385 (9th. Cir. 1984), *cert. denied*, 472 U.S. 1032 (1985) ................................................................................... 24

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.C. 2002)..................... 5, 24


State Cases

*Bichler v. Eli Lilly & Co.,* 436 N.E.2d 182, 186 (N.Y. 1982) ......................................... 21

*DiPonzio v. Riordan*, 89 N.Y.2d 578, 583 (1997) ....................................................... 5, 24

# I.    <u>INTRODUCTION</u>

May it please the Court, Defendants Saleh Kamel ("Kamel"), Al Baraka Investment and Development Corp. ("ABID"), and Dallah al Baraka Group ("Dallah") (herein after "al Baraka Defendants") hereby file this memorandum in support of their combined motion to dismiss the six Multidistrict Litigation complaints cited in the caption and still pending before this Court.  Defendants Kamel and ABID have already been dismissed from *Ashton v. al Qaeda Islamic Army* (02 CV 6977) ("*Ashton*") and *Burnett v. al Baraka Inv. & dev. Corp.* (02 CV 1616 and 03 CV 5738) ("*Burnett*").  *See In re: Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 836 (S.D.N.Y. 2005).  ("*Terrorist Attacks I"*).  They also have a fully briefed motion to dismiss pending in *Federal Insurance v. al Qaida* (03 CV 6978) ("*Federal*").

This combined motion addresses all of the Multidistrict Litigation cases in which the al Baraka Defendants have been served.  It is designed to avoid an anticipated duplicative motion practice which would work an unnecessary burden upon this Court.  As shown *infra*, the six remaining lawsuits are all effectively duplicative of each other, and of *Ashton* and *Burnett,* and warrant dismissal.

For the Court's edification, al Baraka Defendants' counsel contacted Plaintiffs' counsel in several of the cases which are the subject of this motion and requested dismissal based on *Ashton* and *Burnett* opinion.  Absent agreement to dismiss, and given the extensive oral argument already afforded by this Court, Defendants' counsel requested that Plaintiffs' counsel at least identify the specific allegations in their respective complaints that this Court did not address and/or consider in dismissing all of the *Ashton* and *Burnett* claims "in their entirety." *Terrorist Attacks I,* 349 F. Supp. 2d at

836.    That dialogue proved fruitless and thus the al Baraka Defendants are forced to, in effect, relitigate the issues herein, even the Golden Chain.[1]

As in *Ashton* and *Burnett* Defendants request dismissal on two bases: (1) failure to state a claim under Fed. R. Civ. P. 12(b)(6); and (2) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Because this Court has been inundated with filings, this memorandum will only summarize the al Baraka Defendants' previous legal arguments.  Instead it will focus on the largely duplicative and conclusory allegations contained in the six remaining complaints.

The remaining Plaintiffs, as in *Ashton, Burnett* and *Federal Insurance*, all rely heavily on general and conclusory allegations that the al Baraka Defendants supported international terrorism.  As this Court is well aware, these conclusory allegations alone cannot survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 833.  Reliance on these conclusory allegations is even more troubling because of "the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant."  *See Terrorist Attacks I,* 349 F. Supp. 2d at 831 (quoting *Burnett v. Al Baraka*, 274 F. Supp. 2d 86, 103-104 (D.D.C. 2003) ("*Burnett I*")). Because the *Ashton* and *Burnett* complaints did not have the necessary factual allegations to support the legal conclusions contained therein, this Court dismissed all of the claims as to Defendants Kamel and ABID "in their entirety."  *Id.* at 836.

---

[1] While Defendants have not raised collateral estoppel as a grounds for dismissal because it requires that the issue be litigated by the same party a second time, they do submit that these identical issues have been previously litigated and decided by this very Court and that but-for the requirement of relitigation by the same party they would have a valid grounds for dismissal under collateral estoppel/issue preclusion.  *See N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).

Apart from these general and conclusory allegations, Plaintiffs have made only a few specific factual allegations about the al Baraka Defendants which have no causal nexus to the 9/11 tragedy, i.e. investments made in the 1970's and 1980's.  These specific allegations are almost wholly repetitive of the *Ashton* and *Burnett* allegations, and in some cases are exactly the same.  Like in *Ashton* and *Burnett* the allegations in these six remaining complaints are not legally sufficient.

The factual allegations relate almost wholly to the al Baraka Defendants ownership of stock in various Islamic banks.  These banks are generally alleged to have provided banking services (i.e. international wire transfer) to alleged supporters of international terrorism.  Interestingly, these banks in which the Defendants invested are not alleged to have provided banking services to the 9/11 hijackers.  The banks that did provide such services directly to the 9/11 hijackers, as Defense Counsel pointed out in oral argument, have not been named herein.  But as Judge Robertson initially held, and this Court has upheld, banks cannot be held liable on a "funnel" theory, i.e. the provision of ordinary banking services.  *Burnett I,* 274 F. Supp. 2d at 109 cited in *Terrorist Attacks I*, 349 F. Supp. 2d at 833.

Of course, the al Baraka Defendants are not alleged to be even "funnels" or banks, but instead simply shareholders in Islamic banks.  Thus Defendants renew a major policy issue, previously advanced in oral argument, that holding the al Baraka Defendants liable for their investments would extend liability, third party or otherwise, to an untenably large group of shareholders and investors and destabilize the world's financial and

banking markets.  Plaintiffs' legal theory would hold all stockholder in the banks which provided services to alleged terrorists liable for the attacks of September 11, 2001.[2]

Plaintiffs are expected to argue that they have made 'new' claims, claims which were not present in *Ashton* and *Burnett*.  But Defendants will demonstrate that even these 'new' claims are, for the most part, reiterations of allegations the Court has already dismissed, i.e. the "Golden Chain."  Defendants will also show that even those few allegations which might be 'new' are legally insufficient and certainly cannot serve as a basis for overturning this Court's previous well-reasoned decision.

To simplify matters, Defendants have organized the allegations in the various complaints into categories of conduct.  Defendants also created charts reciting specific language from each complaint for each category of allegation.[3]  A cursory review of the charts shows the allegations in the remaining six cases are exceedingly similar to one another and to *Ashton* and *Burnett*.  As such, these near identical claims deserve the same treatment afforded the allegations in *Ashton* and *Burnett* - dismissal.

Defendants also hereby request dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Courts deciding similar issues to those presented in the cases at hand have previously recognized that the absence of causation may be both a jurisdictional issue and a liability issue. *See Ungar v. Islamic Republic of Iran*, 211 F.

---

[2] Banks which are alleged to have provided banking services directly to terrorist supporters in the complaints, but which are not named as defendants, include: CitiBank, Bank of America, Deutsche Bank, and SunTrust Bank.  All are publicly held companies traded on the New York Stock Exchange with shareholders totaling in the millions.

[3] Complaints examined in Attachment A- Allegation Grid are: *Ashton, Burnett, O'Neill, Euro Brokers, Cantor Fitzgerald, Continental Casualty, NY MAGIC,* and *WTC Properties*.  *Ashton,* and *Burnett* are included as references in order to demonstrate the similarity between all the MDL cases before this Court. Attachment B examines the "new" allegations made in Plaintiffs' RICO Claims.  Some Plaintiffs' attorneys filed "amended" complaints with these RICO statements attached, claiming that this incorporates these allegations into the non-RICO claims.  Other Plaintiffs' counsels are expected to argue that their RICO statements should also be interpreted as part of the complaint.  Defendants dispute these claims, as more fully argued herein, but address these allegations because even with them included, none of the complaints states a claim as to the al Baraka Defendants.

Supp. 2d 91, 98 (D.C. 2002).  Defendants' argument is premised on the Plaintiffs' claims

that investments made by the defendants in the early 1980's somehow actually led to the

9/11 tragedy.  There is not however, a sufficient causal connection between the

allegations and the 9/11 attacks.  One of Plaintiffs' major allegations, an investment in Al

Shamal Bank, for example, occurred six years before Sudan became a rogue state, six

years before al Qaeda was organized and named, eight years before Osama bin Laden

went to Sudan, ten years before the first attack on the World Trade Center, thirteen years

before the attack on the US embassies in Africa, thirteen or fifteen years before the

planning of the September 11 attacks began, sixteen years before al Qaeda was

designated by the State Department a terrorist organization, and eighteen years before the

September 11 attack itself.  Because of an obvious lack of connection between the

Plaintiffs' injuries and the alleged conduct of the al Baraka Defendants, this Court can

decline to exercise jurisdiction over such claims.  *See DiPonzio v. Riordan*, 89 N.Y.2d

578, 583 (1997).


**II.      THESE DUPLICATIVE COMPLAINTS FAIL TO STATE A CLAIM
AGAINST SALEH ABDULLAH KAMEL, AL BARAKA
INVESTMENT & DEVELOPMENT, AND DALLAH AL BARAKA
GROUP**


A. Standard of Review

A court may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations.  *Hishon v.*

*King & Spalding,* 467 U.S. 69, 73 (1984).  In reviewing such a motion, the Court must

construe the complaint in the light most favorable to plaintiff and must accept as true all

allegations and all reasonable factual inferences drawn from the well-pleaded factual allegations.  *Square D Co. v. Niagara Tariff Bureau, Inc.*, 476 U.S. 409, 411 (1986).

"However, the Court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint," *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)), or if the facts are not well pleaded.  *Ge v. Peng*, 201 F. Supp. 2d 14, 20 (D.C. 2000).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *See also*, *Terrorist Attacks I,* 349 F. Supp. 2d at 833.

    B.  <u>Overview of Allegation in Complaints</u>

        1.  *General and Conclusory Allegations*

The majority of allegations against the al Baraka Defendants are conclusory allegations that they supported or funded international terrorism.  These allegations are organized into the first page of Attachment A, or Complaints Allegations Grid.  It is well established that these general and conclusory allegations are an insufficient basis of liability as "[a] complaint which consist of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)." *Terrorist Attacks I*, 349 F. Supp. 2d at 833 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).  The *Ashton* and *Burnett* complaints contained nearly identical claims, as shown in the Complaint Allegations Grid, and were previously dismissed by this Court "in their entirety" because of their reliance on conclusory allegations.  *Id.* at 836.

Such conclusive allegations are always insufficient, as a matter of law, to maintain a lawsuit, even if they contain all the requisite elements of a cause of action.

*See id.* at 832-33.  For example, in examining the claims made against Al Rajhi Bank in

*Ashton* and *Burnett*, this Court noted that the plaintiffs "do not offer facts to support their

conclusions that Al Rajhi Bank had to know that Defendant Charities… were supporting

terrorism."  *Id.* at 833.  This was the case even though the complaint contained

allegations that "Al Rajhi knew or should have known its depositors . . . were material

supporters of terrorism."  *Id.* at 831.  Examining the facts alleged as to al Baraka

Defendants, these also provides no basis for knowledge.  For example, participating in an

international wire transfer involving Al Haramain six years before its first branch office

was designated.  Thus the conclusory allegations in the six remaining complaints, even

ones which attribute knowledge to the al Baraka Defendants, are legally insufficient.

### 2.   General Operations of Al Baraka Investment & Development

In addition to the conclusory allegations, all of the complaints contain general

information about the operations of Defendant ABID, repeated on page two of

Attachment A.  Generally, ABID is alleged to be a subsidiary of Dallah al Baraka, based

in Jeddah, Saudi Arabia.  ABID allegedly has at least 43 banking subsidiaries, including

two based in the United States.  Similar or identical allegations appeared in both *Ashton*

and *Burnett.*

The operation of a wholly legal business, including Shari'ah compliant financing

or banking, is totally unrelated to the subject matter of the lawsuit.  Additionally, any

claims related to the possession of an ownership interest in any company or corporation

by the al Baraka Defendants must be disregarded as all Defendants are entitled to the

limited liability which comes with the possession of stock.  *See  Thrift Drugs, Inc. v.*

*Universal Prescription Adm'rs,* 131 F.3d 95, 97 (2d Cir. 1997). Absent claims that the al

Baraka Defendants committed wrongs necessary to "pierce the corporate veil," and no such claims appear in any complaint, this Court cannot hold them responsible based on the actions of a corporation which is a subsidiary.  *See id.*  Under New York Law, to hold a shareholder liable for the actions of a corporate entity it is necessary to allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce."  *Id.* (quoting *Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.,* 2 F.3d 24, 26 (2d Cir. 1993)).  Because these allegations are wholly unrelated to the subject matter of the lawsuit, and because the al Baraka Defendants are protected by limited liability, these allegations are simply insufficient as a matter of law.

### 3.  General Operations of Dallah al Baraka

Page three of the Complaint Allegations Grid recites the allegations about the general operations of Dallah.  Dallah is alleged to be a large conglomerate, active in Islamic financing and other fields.   These are completely unrelated to the subject of the lawsuit and cannot stand as a basis for liability herein.  Defendants ABID and Kamel are also insulated from allegations pertaining to Dallah as the complaint does not have the factual allegations necessary to pierce the corporate veil.  *See id.*

### 4.  Biographic Information on Defendant Kamel

Many of the complaints also contain basic biographic information about Defendant Kamel: (a) Kamel was born in Saudi Arabia; (b) is a citizen thereof; (c) worked for a time under the Saudi Minister of Finance; and (d) founded Dallah al Baraka Group and many other successful business enterprises.  In short, Defendant Kamel is a successful business man who oversees a large network of companies in financial and

8

other fields.  These allegations are also wholly unrelated to al Qaida and the plaintiffs'
grievous injuries and must be dismissed.

### 5.   Ownership Interest in Al Shamal Bank

Many of the lawsuits also contain allegations about Defendant Kamel's ownership
of stock in the Al Shamal Bank and/or his "founding" of the bank.  While the process by
which Mr. Kamel came into possession of his ownership interest in Al Shamal Bank is
not accurately represented in the various complaints, it is hornbook law that shareholders
cannot be held responsible for the actions of a corporation unless the plaintiffs "pierce the
corporate veil."  *See Thrift Drugs,* 131 F.3d at 97.  Plaintiffs have not made any
allegations necessary to remove the limited liability of investors with respect to Al
Shamal Bank, or any other entity in which the al Baraka Defendants possess an
ownership interest.

Of course, shareholder liability is only an issue if a claim has actually been stated
against the corporation itself, in this situation - Al Shamal Bank.  But examining the
allegations against Al Shamal Bank, one finds only conclusory allegations without the
factual allegations necessary to support them.  The few factual allegations are that Al
Shamal supported Al Qaeda by providing banking services and/or by way of an
investment allegedly made by Osama bin Laden.[4]  But every Court examining this issue
has found that there is no support "for the proposition that a bank is liable for injuries
done with money that passes through its hands in the form of deposits, withdrawals,
check clearing services, or any other routine banking service."  *Burnett I*, 274 F. Supp. 2d
at 109; *Terror Attacks I,* 349 F. Supp. 2d at 832.

---

[4] Query: If funds of bin Laden are present in al Shamal bank, why haven't they been designated by OFAC
or any other government agency?

The allegation that Osama bin Laden invested in Al Shamal Bank, is also legally insufficient.[5]  While the allegation that Osama bin Laden owned stock in Al Shamal Bank may be sufficient to attach those alleged shares to a judgment against him, it is not clear how they would result in the liability of Al Shamal Bank, or its investors, for an attack in which they did not participate in any way.  Identical allegations also appear in *Ashton* and *Burnett,* but were previously ruled insufficient by this Court.   *Terrorist Attacks I*, 349 F. Supp. 2d at 833.  These allegations are also insufficient to maintain the present actions against the al Baraka Defendants and, as such, all claims should be dismissed.

### 6.   Sudanese Operations and Banking Assets

In addition to the allegations relating to the al Baraka Defendant's ownership interest in Al Shamal Bank, all of the six remaining complaints contain allegations relating to other aspects of their operations in Sudan.  These allegations, which also appear in the dismissed *Ashton* and *Burnett*, relate either to ABID's ownership interest in various banks in Sudan and/or to the provision of "financial infrastructure" to terrorists including bin Laden.

As demonstrated above, absent allegations of involvement going far past that of the typical shareholder (allegations which are absent in all of the suits), shareholders are simply not liable for the actions of a corporation or other business entity.  *See Thrift Drugs,* 131 F.3d at 97.  Moreover, the allegations against the entities mentioned, Alsharb

---

[5]Though the Court is bound to treat this allegation as true, it is patently false.  As specifically noted in oral argument, Defendants' counsel was able to obtain the complete stock registries and other list of shareholder information from Al Shamal Bank and these show conclusively that neither Osama bin Laden, al Qaeda, nor any "front" were ever investors in the bank.  Moreover, the total capitalization of the bank has only ever been US $20 million, far less than the US $50 million allegedly invested by Osama bin Laden.  Defendants' counsel has repeatedly offered to share this information with Plaintiffs' counsel, but has always been refused.  For the Court's edification, Defendants' counsel has been successful in sharing this information with the Library of Congress, which has assured them it will exclude the disputed 1996 State Department fact sheet from its future publications.

Islamic Bank, Faisal Islamic Bank, Sudanese Islamic Bank, and the National Development Bank in Sudan, are not sufficient to hold those banks in the suits, let alone the numerous shareholders of those institutions. Additionally, this Court has already rejected allegations relating to the provision of "financial infrastructure," i.e. routine banking services. *See Terrorist Attacks I*, 349 F. Supp. 2d at 832.

### 7. *Ownership Interest in Al Aqsa Islamic Bank*

Some of the complaints contain additional information about the alleged ownership of stock in Al Aqsa Islamic Bank, based in the Palestinian territories, by a Dallah subsidiary and Mr. Kamel. Identical – word-for-word – allegations appeared in both *Ashton* and *Burnett*. This Court chose to disregard these allegations because they are not connected in any way to the atrocious attacks of September 11, 2001 or al Qaida. *Terrorist Attacks I*, 349 F. Supp. 2d at 832. Additionally, as argued above, Mr. Kamel and Dallah are protected by the limited liability inherent in ownership of stock. *Thrift Drugs,* 131 F.3d at 97.

### 8. *Misc. Banking Assets and Relation*

The *Continental Casualty* and *WTC Properties* complaints contain allegations detailing additional banking assets and relations of the al Baraka Defendants. These identical allegations were present in *Ashton* and *Burnett*, which this Court chose to dismiss. *Terrorist Attacks I,* 349 F. Supp. 2d at 836. As these allegations are wholly unrelated to subject matter of the lawsuit, any claims dependant on these allegations should also be dismissed.

### 9.   Ownership Interest in Dallah Avco

Most of the lawsuits which are the subject of this memorandum contain allegations relating to Dallah's ownership of an aviation company called Dallah Avco Trans-Arabia Co., Ltd. ("Dallah Avco").  These same allegations appeared, often word-for-word, in *Ashton* and *Burnett*.  Once again, Dallah and the other al Baraka Defendants are protected by their status as shareholders as the plaintiffs have alleged nothing upon which to "pierce the veil."  *See Thrift Drugs,* 131 F.3d at 97.  Of course it is only necessary to pierce the veil if the subsidiary is actually liable, which in this circumstance it is not, as more fully addressed below.

### 10. Employment of Omar al Bayoumi by Dallah Avco

Corresponding to the allegations of Dallah's ownership of Dallah Avco, most of the complaints contain allegations about Dallah Avco's employment of Omar al Bayoumi.[6]  Al Bayoumi is variously alleged to have given support to the hijackers and/or been an agent of the Saudi government.  Similar or identical allegations appeared in *Ashton* and *Burnett*.

But "an employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the employer's business.  *Terrorist Attacks I,* 349 F. Supp. 2d at 836 (citing *Tasso v. Platinum Guil Int'l,* 1997 WL 16066, at *6 (S.D.N.Y. Jan. 16, 1997)).  These complaints are lacking the necessary allegations that Omar al Bayoumi was acting in furtherance of Dallah Avco's business interests, i.e., the provision of aircraft maintenance services in Saudi Arabia.

---

[6] Though Plaintiffs refer to Omar al Bayoumi as wanted by the FBI, he was actually cleared by the FBI over three years ago and is no longer suspected of knowingly supporting terrorism.  Dan Eggen, *Who Aided Hijackers is Still Mystery*, Wash. Post, September 10, 2003, at A1.

### 11. Misc. Business Assets and Relations

Additional allegations relating to other business interests of the al Baraka Defendants appear on page ten of the attached Complaint Allegations Grid.  These allegations, like all those previously relating to the al Baraka Defendants' business enterprises, are completely unrelated to al Qaida or the attacks of September 11, 2001.  As such they cannot serve as a basis for liability for any of the al Baraka Defendants.

### 12. General Provision of Banking Services to Al Haramain

The complaints all contain allegations relating to the provision of banking services to the charity Al Haramain.  It is generally alleged that subsidiary banks of the al Baraka Defendants acted as "funnels" for transferring funds for Al Haramain, thereby providing support to al Qaida.  Identical allegations appeared in both *Ashton* and *Burnett*, and this Court rightly chose to reject them.  *Terrorist Attacks I,* 349 F. Supp. 2d at 836.

All Courts examining the issue have rejected the proposition that a bank can be held responsible for the way in which its alleged customers use their money.  *Burnett I*, 274 F. Supp. 2d at 109; *Terrorist Attacks I,* 349 F. Supp. 2d at 832.  The plaintiffs have also failed to plead knowledge on the part of the al Baraka Defendants necessary to maintain the present action.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 836.  But even conclusory allegations of knowledge are insufficient absent specific factual allegations sufficient to put the defendants on notice of the claims against them.  *Id.* at 833.

### 13. Bosnian Reports re: Provision of Banking Services to Al Haramain

Some of the complaints contain allegations about a Bosnian Intelligence Agency memo that is purported to detail information on Al Baraka's support of Al Haramain.  Examination of the supposed intelligence report, however, shows only that an ABID

subsidiary based in Turkey was one of numerous banks which routed a monetary transfer

on behalf of Al Haramain.  Identical allegations appeared in both *Ashton* and *Burnett* and

were rejected by this Court.  *Id.* at 836.

The role of other banks in this ordinary wire transfer, the Deutsche Bank and the

Deposit Bank of Sarajevo, supports al Baraka Defendants' argument that premising

liability on the provision of ordinary banking services would result in destabilizing

international banking markets.  Premising liability against the Al Baraka Defendants on

their status as shareholders would furthermore result in potential liability for millions of

investors in the banking industry, as other allegations in the suits relate to CitiBank, Bank

of America, SunTrust Bank, and others.  Query: Why aren't these banks, which serviced

al Qaida terrorists including the 9/11 hijackers, included as Defendants in any of these

lawsuits?

Of course, this Court has previously held that the provision of banking services is

not sufficient to hold Defendants within the lawsuit.  *Terrorist Attacks I,* 349 F. Supp. 2d

at 832.  It has also rejected near-identical conclusory allegations, since they lack the facts

necessary to put defendants on notice of the claims against them.  *Id.* at 833.  To reiterate,

al Haramin's first branch office wasn't designated until 2004, many years following to

the activities alleged.  The fact that the Bosnsian Intelligence Agency noted the use of a

subsidiary of ABID by al Haramain of course does not translate an otherwise insufficient

allegation into one capable of maintaining the present actions.

*14. Russian Memo re: Funding Al Haramain*

Some of the complaints also contain allegations about a supposed Russian

Federation Security Service report.  Plaintiffs claim that this report "details al Baraka

Bank's role in funding Defendant Al Harmain."  The section of the report quoted, which appears fully on page fourteen of the Complaint Allegations Grid, however, never even mentions al Baraka Bank.  Since these allegations have nothing to do with the al Baraka Defendants, or with the subject matter of the suits, they cannot act as a basis for liability.

### 15. Founding of Sana-Bell Inc./Relation with IIRO

Some of the complaints also allege that Defendant Kamel was a co-founder of Sana-Bell.  They also label him as an "IIRO Defendant," an allegedly related entity. While these allegations did not appear in *Ashton* or *Burnett*, they still cannot serve as a basis to hold Kamel responsible for the 9/11 tragedy because the Plaintiffs have not, and cannot, alleged knowledge on the part of Kamel.

All of the lawsuits fail to allege knowledge on the part of Mr. Kamel which is necessary to hold him in this suit.  Absent such allegations of knowledge, the lawsuits cannot continue.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 836.  But of course, mere conclusory allegations of knowledge are insufficient, Plaintiffs must allege a factual support for knowledge and the intent to further the terrorist acts.  *Id.* at 832.

### 16. The "Golden Chain"

Though allegations about the "Golden Chain" do not appear in either *Ashton* or *Burnett,* these allegations were previously briefed and addressed in oral arguments.[7] This Court also ruled on this issue with respect to other defendants, saying: "the 'Golden Chain' does not say what the Plaintiffs argue it says. It is only a list of names found in a charity's office. It does not establish . . . involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate [the] purposefully [direction of]

---

[7] *See* Ashton Plaintiffs' Memorandum of Law in Opposition to Saleh Kamel and al Baraka Investment Development Corp.'s Motion to Dismiss at p. 5 (May 14, 2004).

activities at the United States." *Terrorist Attacks I,* 349 F. Supp. 2d at 818.  Since the alleged appearance of Kamel's name on the "Golden Chain" does not establish a connection to the attacks of September 11, 2001 or to al Qaida, and all other allegations in the complaint are insufficient, the claims against all al Baraka Defendants must be dismissed in their entirety.

> C.   Additional Allegations in RICO Statements

This Court previously gave the Plaintiffs' until September 30, 2005 to amend their complaints.  Of the cases at issue herein, only the Plaintiffs in *NY MAGIC, O'Neill,* and *Continental Casualty* attempted to avail themselves of that opportunity.  *Cantor, WTC Properties,* and *Euro Brokers* failed to file an amended complaint by September 30, 2005.

Despite the considerable time in which Plaintiffs had to prepare these amendments, Plaintiffs did not file amended complaints with changes to the numbered paragraphs alleging additional actions on the part of Defendants.  Instead they filed their RICO Statements as attachments, and are expected to claim that this incorporates the allegations made in the RICO Statements into the other claims.[8]  This is incorrect, as the application of RICO Statements is ordinarily limited to RICO Claims.  *See In re: Terrorist Attacks of September 11, 2001,* 2005 U.S.Dist.LEXIS 20841 at *57 (S.D.N.Y. Sep. 21, 2005) ("*Terrorist Attacks II").*  Despite this, Defendants anticipate that those Plaintiffs who failed to even file the RICO Statements as an amendment to their

---

[8] For reasons unclear to the Defendants, *NY MAGIC* Plaintiffs's counsel actually filed the *Federal Insurance* RICO Statements as an attachment to their complaint.  If this Court decides to incorporate RICO Statement allegations in the complaint for purpose of deciding non-RICO claims, it should include that attached to the complaint (which contains only conclusory allegations) into the *NY MAGIC* complaint.

complaint will nevertheless claim that the allegations therein should be incorporated into the complaints as additional claims.

This problem has been discussed by the Defense Counsel Coordinating Committee, and Al Baraka Defendants' counsel understands that a coordinated defense motion to reject these so-called amendments and ensure that the RICO Statements are limited to their correct application will be forthcoming. The al Baraka Defendants intend to join in that motion and urge the Court to reject the Plaintiffs' improper attempts.

Defendants are also confident, however, that even if this Court decides to allow the RICO Statements to apply to all of the Plaintiffs' claims, the Plaintiffs will still have failed to state a claim against the al Baraka Defendants. These RICO Statements actually contain few allegations which are factual, as opposed to conclusory, even fewer that are new, and none which are sufficient to put the Defendants on notice of the claims against them. Many of the "new" allegations actually reach even further back into time, to periods when this Court has previously ruled that Defendants would not have constructive knowledge of bin Laden's and al Qaeda's evil purposes. *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, *65. Accordingly, this Court must reject all claims against the al Baraka Defendants.

### 1. *Chechen Operations*

Some RICO Statements contain allegations about supposed operations in Chechnya. The allegations are simply that al Baraka Defendants operated banks in Chechnya in the mid-to-late nineties and that by doing this they somehow supported al Qaeda. Though appearing "new," these follow the familiar format of conclusory

allegations of support for al Qaeda with the only facts provided being the operation of banks.

### 2.   Additional Provision of Banking Services

Plaintiffs counsel has again submitted allegations that al Baraka Defendants' subsidiaries provided ordinary banking services to alleged terrorists, this time the "Hamburg Cell."  Al Baraka Defendants, however, are protected by limited liability and this Court's previous rulings about "funnels" and banks as argued *supra*.

### 3.   Albanian Banking Operations

Some RICO Statements also contain statements about alleged al Baraka operations in Albania.  The allegations relating to the operation of the Arab Albanian Islamic Bank are again rendered irrelevant by this Court's previous ruling about the provision of ordinary banking services and the al Baraka Defendants' limited liability. Allegations about the Albanian International Development Ltd. ("ALINTID"), in which Defendant Kamel allegedly invested in the early 1990s, also appear.  These allege that Defendant Kamel, along with Co-Defendant Yassin Al Qadi, gave this bank to Osama bin Laden.  This information is supposedly supported by OFAC, a witness named "Adnon" and an "Anonymous witness from the U.K."  But OFAC has not designated ALINTID nor publicly released any information about them.  *See* Office of Foreign Assets Control, *Specially Designated Nationals and Blocked Persons* (October 18, 2005). Nor has any other source published this slanderous allegation.[9]  But regardless of the obvious falsity of the allegation, it is still not sufficient to maintain Defendant Kamel's presence in the suits.  The transfer supposedly took place in 1995, prior to bin Laden's

---

[9] It is also important to note that OFAC has not designated Saleh Kamel or any other Dallah Entity, which they surely would have done if in possession of the knowledge alleged by Planitiffs.

first fatwa declaring war on the United States, which this Court has held is the cut off date for the necessary knowledge of al Qaida's evil purposes and desire to attack the US. *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, *65.

### 4. *Misc. Banking Enterprises*

Plaintiffs have included still more allegations about the al Baraka Defendants' investments in Banks. Because of the limited liability accompanying stock investments and the lack of liability for "funnels," these allegations are not sufficient to state a claim against the al Baraka Defendants. *See Terror Attacks I,* 349 F. Supp. 2d at 836. Additionally, the alleged investments all take place prior to 1996[10] when bin Laden released his first fatwa declaring war on the United States, which this Court has used as a cut-off date for the knowledge necessary to support the horrible 9/11 attacks. *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, *65.

### 5. *Additional Sudanese Allegations*

The al Baraka Defendants' alleged import of seeds from Sudan are detailed in the RICO Statements as well. These alleged imports, despite having nothing to do with the 9/11 attacks, took place in 1992 and hence must be dismissed. *Id.*

### 6. *Misc. Business Enterprise*

Plaintiffs also included numerous allegations about the al Baraka Defendants' business operations. None of these are in any way connected to the attacks of September 11, 2001 or to al Qaida and must be dismissed.

---

[10] As evidence of the lack of knowledge of bin Laden's purpose in the mid-nineties, Defendants present the 1996 refusal by the U.S. government to take possession of or arrest bin Laden when offered the opportunity by the Sudanese government. This story has been widely reported in the media. *See* Barton Gellman, *U.S. Was Foiled Multiple Time in Efforts to Capture Bin Laden or Have Him Killed,* Wash. Post (October 3, 2001) at A01.

7.   *Misc. Charitable Activities*

Allegations relating to various charitable activities, including sponsoring Treasury Secretary John Snow to speak at a conference on Islamic banking, appear in the various RICO Statements.  These allegations again have nothing to do with the attacks.  Additionally, most of the allegations took place prior to 1996 or after 2001, and thereby could not have served to knowingly support al Qaida's attacks.  *See Terror Attacks II,* 2005 U.S. Dist. LEXIS 20841, *65

D.   Causation (Addressed as to all claims)

As this Court knows, proximate cause is an essential element of any claim made herein.  In order to meet their burden, Plaintiffs must present sufficient allegations that Defendants' conduct (primarily investments in alleged "funnels" in the 70's and 80's) were the cause-in fact of their injuries.  *Terrorist Attack I,* 349 F. Supp. 2d at 797 n.26.  Plaintiffs must show that Defendants' actions were a substantial cause of their injuries and that the injuries were reasonably foreseeable to the Defendants.  *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).

As was the case with *Ashton* and *Burnett*, Plaintiffs have failed to make allegations sufficient to meet this burden as to the al Baraka Defendants.  *See supra* p. 6-18; *See also*, Attachment A "Complaint Allegations Grid"; *See also*, Attachment B "RICO Statements Allegations Grid."  Plaintiffs have not alleged actions on the part of the al Baraka Defendants which actually led to the horrible attacks of September 11, 2001.  Nor have they alleged sufficient facts to demonstrate the foreseeability of the attacks by the al Baraka Defendants.  Query: How could an investor foresee that an

investment in a financial institution in the 1970's and 1980's would conceivably lead to the horrible attacks of September 11, 2001?

Instead, Plaintiffs have strung together a list of legally conclusory allegations, absent necessary facts, and factual allegations wholly unrelated to the subject of the present suits.  Because the Plaintiffs have not met their burden of alleging that the al Baraka Defendants' conduct was the proximate cause of their injuries, all the claims against Kamel, ABID, and Dallah must be dismissed.

E.    Concerted Action - Conspiracy & Aiding and Abetting (Addressed as to all claims)

"Concerted action liability under New York law is based on the principle that all those who, in pursuance of a common plan or design to commit a tortuous act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to a wrongdoer… are equally liable with him." *Terrorist Attacks I,* 349 F. Supp. 2d at 826 (quoting *Bichler v. Eli Lilly & Co.,* 436 N.E.2d 182, 186 (N.Y. 1982)).  Therefore, to be liable under theories of concerted action, the Defendants must be aware of the wrongful acts by the primary actor and must actively try to further them. *Terrorist Attacks I,* 349 F. Supp. 2d at 826.

An examination of the allegations made herein against all al Baraka Defendants reveals the lack of any allegations of knowledge.  When allegations of knowledge do appear, these are contained in conclusory statements without the factual basis needed to support Plaintiffs' contentions.  These legally conclusory statements are insufficient to hold the al Baraka Defendants liable herein. *See id.* at 832.  Plaintiffs have also failed to allege any actions on the part of the al Baraka Defendants which actively furthered al Qaida or its evil objectives.  Because both elements are lacking, all efforts to hold the al

Baraka Defendants liable under theories of concerted action must fail and all claims against them must be dismissed.

### F.  ATCA

The ATCA allows for an action in federal court by an alien who sues for a tort committed in violation of international law.  28 U.S.C. § 1350; *See also*, *Kadic v Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995).  These claims against the al Baraka Defendants must fail because none of the Plaintiffs have been identified as aliens.  Even if Plaintiffs are identified as aliens, the claims must be dismissed for lack of causation, actual and proximate.

### G.  RICO

Plaintiffs have initiated a civil RICO action under 28 U.S.C. § 1964 against the al Baraka Defendants for violations of 28 U.S.C. § 1962 (c) and/or (d).  Under § 1962(c) "an alleged RICO defendant must have had 'some part in directing' the 'operation or management' of the enterprise itself to be liable." *Dubai Islamic Bank v. Citibank, N.A.,* 256 F.Supp. 2d 158, 164 (S.D.N.Y. 2003).  As demonstrated above, Plaintiffs have failed to state even a claim that the al Baraka Defendants aided or abetted al Qaida's criminal enterprises, let alone managed or directed them.

"The Second Circuit has held in the context of a motion to dismiss that to state a claim under *[§ ] 1962(d)*, the 'complaint must allege some factual basis for a finding of a conscious agreement among the defendants.'" *Am. Arbitration Ass'n, Inc. v. DeFonseca*, 1996 U.S. Dist. LEXIS 9160 (S.D.N.Y. June 28, 1996).  But as argued above, Plaintiffs have not pleaded knowledge of or participation in al Qaida's conspiracy.  Those conclusory allegations of knowledge and activities in support of the alleged conspiracy

are legally insufficient as they fail to provide any factual basis for their legal conclusions. *See Terrorist Attacks I,* 349 F. Supp. 2d at 833. This Court previously examined civil RICO claims against Mr. Kamel, ABID and other Defendants and concluded that, "Plaintiffs have not alleged that the moving Defendants were central figures in the underlying schemes or for conspiracy liability under § 1962(d)." *Id.* at 836. Because Plaintiffs' allegations have not changed materially, this Court must again dismiss the RICO claims against the al Baraka Defendants.

H.  TVPA

"The TVPA establishes a cause of action in federal court against an individual who, under apparent authority, or color of law, of any foreign nation subject an individual to torture or extrajudicial killing." *Terrorist Attacks I*, 349 F. Supp. 2d at 828 (quoting *Arndt v. UBS AG,* 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)). This Court has previously rejected TVPA claims against Defendants Kamel and ABID because they were not alleged to have operated "under the color of law." *Terrorist Attacks I,* 349 F. Supp. 2d at 828. Similar allegations are lacking in all of the suits *sub judice*, and all remaining TVPA claims must also be rejected.

I.  Negligence

As this Court knows, a duty owed by the Defendant to the Plaintiff is a necessary element of a claim for negligence. Every Court that has examined the complaints in the MDL cases has recognized that they fail to include this necessary element. *Burnett I; Terrorist Attacks I; Terrorist Attacks II.* Because Plaintiffs herein have failed to identify the duty owed to them by the al Baraka Defendants, all negligence claims must be dismissed.

23

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICITON OVER THE CLAIMS AGAINST SALEH ABDULLAH KAMEL, AL BARAKA INVESTMENT & DEVELOPMENT, <u>AND DALLAH AL BARAKA GROUP</u>

The al Baraka Defendants additionally move to dismiss the complaints for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Defendants have already extensively briefed the Court on this issue, in their memorandum (initial and reply) in *Ashton, Burnett,* and *Federal Insurance.*  Defendants renew the arguments presented in those memoranda, briefly summarized below.

Courts deciding similar issues to those presented in the cases at hand have previously recognized that the absence of causation may be both a jurisdictional issue and a liability issue. *See Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 98 (D.C. 2002).  Plaintiffs' allegations revolve around investments made by the al Baraka Defendants from the late 1970's to the early 1990's.  This "conduct" obviously bears no relationship to the actual occurrence that caused the plaintiffs' harm on September 11th. Even if the Court makes a giant leap of logic that there is some consequential relationship between this "conduct" and the occurrence of September 11th, it is the kind of "indirect consequence...at most, a remote possibility at the time the conduct occurred and thus was not a foreseeable consequence." *Di Ponzio* at 89 N.Y.2d at 585. See also *Timberlane Lumber Co. v. Bank of Am.*, 749 F.2d 1378, 1385 (9th. Cir. 1984), *cert. den.*, 472 U.S. 1032 (1985) (holding that investment decision to foreclose on assets in Honduras, which later has effect on plaintiff in the United States does not meet foreseeability requirement for subject matter jurisdiction).  Because of lack of connection between the Plaintiffs' injuries and the alleged conduct of the al Baraka Defendants, this Court can decline to exercise jurisdiction over such claims.  *See DiPonzio*, 89 N.Y. 2d at 583.

## IV.   **CONCLUSION**

For good cause shown in this memorandum and the memorandum (initial and reply) filed in *Ashton*, *Burnett*, and *Federal Insurance*, the Court should grant the motion to dismiss based on failure to state a claim for which relief can be granted and/or for lack of subject matter jurisdiction and dismiss all present actions against the al Baraka Defendants.

Respectfully Submitted,

_____
Martin McMahon, Esq., M.M. 4389
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

*Attorney for Defendants Saleh Kamel, Al Baraka Investment & Development, and Dallah al Baraka Group*

Dated : October 24, 2005