**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
_____x

*In re Terrorist Attacks on September 11, 2001*          ***03 MDL 1570***
_____x

This filing applies to:
>    *Estate of John P. O'Neill, Sr., et al. v. Al Baraka Investment and Development*
>           *Corporation, et. al., Case No. 04 CV 01923 (RCC)*

DEFENDANTS COUNCIL ON AMERICAN-ISLAMIC RELATIONS ("CAIR")
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR
FOR FAILURE TO STATE A CLAIM

                        Omar T. Mohammedi (OTM 7234)
                        Law Firm of Omar T. Mohammedi
                        200 Madison Avenue, Suite 1901
                        New York, NY 10016
                        (212) 725-3846

*Attorneys for defendant*
*COUNCIL ON AMERICAN-ISLAMIC RELATIONS*

## TABLE OF CONTENTS

INTRODUCTION…………………….…………………………………... 1

PRELIMINARY STATEMENT……………….….………………………1

SUMMARY OF FACTS …………………………………………….....2

LEGAL ARGUMENT …………………………………………………... 3


I.      THIS COURT MUST DISMISS THE COMPLAINT IN ITS
        ENTIRETY BECAUSE IT FAILS TO STATE A CLAIM
        AGAINST CAIR FOR WHICH RELIEF CAN BE GRANTED………3

        a.   Plaintiffs' allegations fall well short of the standard to
             overcome a motion to dismiss based on Fed. R. Civ. P. 12(b)6……. 3

        b.   Plaintiffs' allegations that CAIR acted in concert with a 9/11
             conspiracy cannot stand due to the Plaintiffs' failure to plead
             proximate cause and mental state. …………………………………… 5

                 1. Plaintiffs' allegations are merely legal conclusions couched as
                    factual statements …………………………………………........ 6

                      i.   Plaintiffs lack proximate cause ...…………………… 6

                      ii.  Plaintiffs fail to allege mental state …………………… 8

                 2. Plaintiffs, without factual support, malign CAIR's efforts in the
                    community…………………………………………..…………... 9

        c.   Plaintiffs' allegations are barred by the First Amendment……….. 11

                 1. CAIR is protected because they exercised their Freedom of
                    Speech……………………………………………………………11

                 2. CAIR cannot be held liable because their right to freely
                    associate is protected……………………………………………12


II.     PLAINTIFFS FAIL TO PROPERLY ALLEGE A CAUSE OF
        ACTION AGAINST CAIR……………………………….. …………. 13

        a.   Plaintiffs fail to properly state a claim under the Anti-
             Terrorism and Effective Death Penalty Act (the "ATA")…................ 13

**b. Plaintiffs fail to properly state a claim under the Torture Victim Protection Act, 28 U.S.C. § 1350 ("TVPA")**……………………….. 13

**c. Plaintiffs have not properly stated a claim under a theory of Intentional Infliction of Emotional Distress.** ………………………… 14

*1. The Statute of Limitations has expired* ……………………… 14

**d. Plaintiffs have not properly stated a claim under the Alien Tort Claims Act** ………………………................................................. 15

**e. Plaintiffs have not properly stated a claim under a theory of Wrongful Death and Survival** ……………………………………… 15

**f. Plaintiffs have not stated a claim for Negligence including Negligence Infliction of Emotional Distress**………………………… 16

**g. Plaintiffs' action under Conspiracy and Aiding and Abetting cannot stand**……………………………………………………….. 17

**h. Plaintiffs' independent cause of action for Punitive Damages cannot stand**………………………………………………………18

**III. PLAINTIFFS HAVE FAILED TO ESTABLISH RICO CLAIMS AGAINST CAIR** ………................................................................ 18

**a. Plaintiffs' filing of 12(e) Statement was a prejudicial and illegitimate attempt to supplement their Complaint** ……………… 18

**b. Plaintiffs lack standing to bring RICO claims**…………………….. 20

**c. Plaintiffs fail to meet the standard prescribed under RICO 18 U.S.C. §§ 1962(a)** ……………………………………… 21

**d. Plaintiffs fail to meet the requirements prescribed under RICO 18 U.S.C. §§ 1962 (c) and (d)** ..…………………………… 22

**IV. CONCLUSION** ……………………………………………………... 25

## TABLE OF AUTHORITIES

Am. Arbitration Ass'n, Inc., v. DeFonseca
    1996 WL 363128 (S.D.N.Y. June 28, 1996) ……………..………………... 23

Arndt v. UBS AG
    342 F. Supp. 2d 132 (E.D.N.Y. 2004) …………………………………….. 13

Attuahene v. City of Hartford
    10 Fed. Appx. 33 (2nd Cir. 2001) …………………………………………..7

Bao Ge v. Li Peng
    201 F. Supp. 2d 14, 20 (D.D.C. 2000),
    aff'd 35 Fed. Appx. 1 (D.C. Cir. 2002) …………………………………….15

Bodner v. Banque Paribus,
    114 F. Supp. 2d 117 (E.D.N.Y. 2000) ……………………………………..5

Boim v. Quranic Literacy Institute
    291 F.3d 1000 (7th Cir. 2002) …………………………………………... 8

Brandenburg v. Ohio
    395 U.S. 444 (1969) ………………………………………………………..11

Briscoe v. LaHue
    663 F.2d 713 (7th Cir. 1981) ……………………………………………… 4

Browning v. Clinton
    292 F.3d 235 (D.C. Cir. 2002) …………………………………………..3, 10

Bruns v. Ledbetter
    583 F. Supp. 1050 (S.D. Cal. 1984) ………………………………………..7

Burnett v. Al Baraka Inv. & Dev. Corp.
    274 F. Supp. 2d 86 (D.D.C. 2003) …………………………………….....*passim*

Chrysler Capital Corp. v. Century Power Corp.
    778 F. Supp. 1260 (S.D.N.Y. 1991) ……………………………………… 6

Conley v. Gibson
    355 U.S. 41 (1957) …………………………………………………………4

Decker v. Massey-Ferguson, Ltd.
    681 F.2d 111 (2d Cir. 1982) ……………………………………………… 4

De Jesus v. Sears, Roebuck & Co.
    87 F.3d 65 (2nd Cir. 1996) ……………………………………………8

Dineen v. Stramka
    228 F. Supp. 2d 447 (S.D.N.Y. 2002) ………………………………………16

Dubai Islamic Bank v. Citibank, N.A.
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ……………………………………… 23

FRA S.P.A. v. Surg-O-Flex of Amer., Inc.
    415 F. Supp. 421 (S.D.N.Y. 1976) …………………………………………... 18

First Nationwide Bank v. Gelt Funding Corp.
    27 F.3d 763 (2nd Cir. 1994) …………………………………………………...7

Grove Press, Inc. v. Angleton
    649 F.2d 121 (2nd Cir. 1981) …………………………………………………17

Healy v. James
    408 U.S. 169 (1972) …………………………………………………………..12

Hecht v. Commerce Clearing House
    897 F.2d 21 (2nd Cir. 1990) …………………………………………………...24

Hess v. Indiana
    414 U.S. 105 (1973) …………………………………………………………..12

Hishon v. King & Spalding
    467 U.S. 69 (1984) ……………………………………………………………3

Howell v. New York Post Co.
    81 N.Y.2d 115, 612 N.E.2d 699 (1993) ……………………………………14

In re Livent, Inc. Noteholders Securities Litigation
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) …………………………………….. 4

In re Terrorist Attacks on September 11, 2001
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) …………………………………….. passim

In re Terrorist Attacks on September 11, 2001 II
    2005 WL 2296673 (S.D.N.Y. September 21, 2005) …………………………passim

Jackson v. BellSouth Telecomms.
    372 F.2d 1250 (4th Cir. 2004) …………………………………………………1, 7

Katzman v. Victoria's Secret
    167 F.R.D. 649 (S.D.N.Y. 1996) …………………………………………….. 20

Kowal v. MCI Communication Corp.
    16 F.3d 1271 (D.C. Cir. 1994) ……………………………………………..3

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.
    191 F.3d 229 (2nd Cir. 1999) …………………………………………………20

McCarthy v. Olin Corp.
    119 F.3d 148 (2nd Cir 1997) …………………………………………………..17

Meroni v. Holy Spirit Ass'n for the Unification of World Christianity
    506 N.Y.S.2d 174, 119 A.D.2d 200 (2d Dept. 1986) ………………........... 16

MTV Networks v. Curry
    867 F. Supp. 202 (S.D.N.Y. 1976) ……………………………………….... 18

NAACP v. Claiborne Hardware Co.
    458 U.S. 866 (1982) ………………………………………………………..11

National Westminster Bank v. Weksel
    511 N.Y.S. 2d 626 (App. Div. 1987) ……………………………………… 8

New York Times v. Sullivan
    376 U.S. 254 (1964) ………………………………………………………..12

Ouaknine v. MacFarlane
    897 F.2d 75 (2nd Cir. 1990) ………………………………………………...21

Papasan v. Allain
    478 U.S. 265 (1986) …………………………………………………… 4, 10

Redtail Leasing, Inc. v. Bellezza
    1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) ………………………………23

Reves v. Ernst & Young
    507 U.S. 170 (1993) ………………………………………………………..23

Schmidt v. Fleet Bank
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ……………………………………… 22, 24

Sepenuk v. Marshall
    2000 WL 1808977 (S.D.N.Y. Dec. 8, 2000) ……………………………… 17

Small v. Lorillard Tobacco Co.
    94 N.Y. 43, 720 N.E.2d 892 (1999) ………………………………………… 17

Smith v. County of Erie
    743 N.Y.S.2d 649 (App. Div. 2002) …………………………………………18

Union Carbide Corp. v. Montell N.V.
    944 F. Supp. 1119 (S.D.N.Y. 1996) ………………………………………… 4

U.S. Fire Ins. Co. v. United Limousine Serv., Inc.
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) ……………………………………….. 22

Vision Specialty Food Prods. Inc. v. Ultimate Gourmet, L.L.C.
    2001 WL 1506008, *4 (S.D.N.Y. Nov. 26, 2001) …………………………… 8

von Bulow v. von Bulow
    634 F. Supp. 1284 (S.D.N.Y. 1986) ………………………………………… 20

'

**Statutes and Rules:**

Alien Tort Claims Act ……………………………………………………….. 15

Anti Terrorism & Effective Death Penalty Act (ATA) …………………………… 5, 13
    18 U.S.C. § 2333(a) ……………………………………………………….. 13
    18 U.S.C. § 2339A(b) ………………………………………………………... 5

Fed. R. Civ. P. 8(a)(2) ……………………………………………………….. 1

Fed. R. Civ. P. 11 ………………………………………………………………..25

Fed. R. Civ. P. 12(b)(6) ………………………………………………………… *passim*

Fed. R. Civ. P. 12(e) ……………………………………………………… 18-20

First Amendment of U.S. Constitution ……………………………………… 11, 12

N.Y.C.P.L.R. § 215 (3) (McKinney 2003) ………………………………………... 14

N.Y.E.P.T.L.  § 5-4.1(1) (McKinney 1999 & Supp. 2005) ……………………… 15
    § 11-3.3 (McKinney 2001) ………………………………………... 15

Racketeer Influenced and Corrupt Organization (RICO) ………………………… *passim*
    18 U.S.C. § 1962(a) ……………………………………………………….. *passim*
    18 U.S.C. § 1962(c) ……………………………………………………….. *passim*
    18 U.S.C. § 1962(d) ……………………………………………………….. *passim*

Torture Victim Protection Act (TVPA) …………………………………………… 13-14

**INTRODUCTION**

Council on American-Islamic Relations (hereinafter "CAIR") was named as a defendant in the above referenced action. Through undersigned counsel, CAIR respectfully submits this Memorandum of Law in support of their motion to dismiss plaintiffs' claims against them. For all of the reasons stated herein, the motion is meritorious and should be granted in all respects.

**PRELIMINARY STATEMENT**

In their First Consolidated Complaint dated September 30, 2004, plaintiffs accuse defendants of helping to sponsor the heinous atrocities of September 11th. In bringing their complaint however, Plaintiffs have failed to sustain the liberal pleading standard contained in Fed. R. Civ. P. 8(a)(2). See In re In re Terrorist Attacks on September 11, 2001, 2005 WL 2296673, at *18 (S.D.N.Y. 2005) (hereinafter "Terrorist Attacks II") (citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004) (while pleading a prima facie case was not necessary to survive a motion to dismiss, a pleading that contains "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based" does not have even a remote chance of survival). Indeed, plaintiffs' frivolous and sensationalized allegations are more fitting for a tabloid news article than a pleading in a United States court.

The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage. Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 103-04 (D.D.C. 2003). Because "it is difficult to imagine uglier or more serious charges" than those asserted in these cases, "fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that…no inferences are accepted

1

that are unsupported by the facts…." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005) (citing Burnett, 274 F. Supp. 2d at 86).

"Extra-careful scrutiny" of the plaintiffs' complaint reveals that the allegations against CAIR lack substance, and are based on speculation, inference and innuendo. Id. The above-captioned complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state claims upon which relief can be granted.

## SUMMARY OF FACTS

CAIR is a nonprofit grassroots civil rights and advocacy organization founded in 1994. CAIR is America's largest mainstream Muslim civil rights and advocacy group, with its headquarters located in Washington D.C.

CAIR's overall mission is to protect civil liberties, empower American Muslims, build coalitions that promote social justice and mutual understanding, encourage dialogue and enhance an accurate understanding of Islam. Because of its history of advocacy and political empowerment, leaders of CAIR have met with Presidents Clinton and Bush, Secretaries of State Colin Powell and Condoleezza Rice, and dignitaries from scores of other countries.

CAIR representatives regularly make appearances on CNN, BBC World Service, and FOX News. The Washington Post, The New York Times, Los Angeles Times and hundreds of other international broadcast outlets and publications have quoted CAIR on issues having to do with the Muslim American community, as well as various other domestic and international matters.

CAIR distributes handbook guides, including the "Employer's Guide to Islamic Religious Practices" and an "Educator's Guide to Islamic Religious Practices," which are designed to

inform educators and employers as to the rights of Muslim students and workers both in educational institutions and in the workplace.

CAIR is a well respected organization among Muslims and non-Muslims alike. Often researchers, analysts and news media cite to CAIR's independent studies, reports and statistics to analyze civil rights issues, and Muslim demography, as well as various other social issues. In wake of the 9/11 attacks on America, CAIR has also organized town hall meetings all around the country to help friends and neighbors learn more about Islam and Muslims.

## LEGAL ARGUMENT

## I. THIS COURT MUST DISMISS THE COMPLAINT IN ITS ENTIRETY BECAUSE IT FAILS TO STATE A CLAIM AGAINST CAIR FOR WHICH RELIEF CAN BE GRANTED.

### a. Plaintiffs' allegations fall well short of the standard to overcome a motion to dismiss based on Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 12 (b)(6), a court may dismiss a complaint if it is clear that no relief can be granted under any set of facts that would prove to be consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In reviewing such a motion, a court must construe the complaint in a light most favorable to the plaintiff, and must accept as true all allegations and all reasonable factual inferences drawn from the well-pleaded factual allegations. See Terrorist Attacks II, 2005 WL 2296673, at *18. However this Court does not need to accept allegations where the facts are not well pleaded; defendants are entitled to a fair and adequate notice of the claims against them. See id. This Court "need not accept inferences drawn by [the] plaintiff if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir.

1994)). This Court "is not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citing Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)).

> Rule 12(b)(6) motion practice does not demand that every allegation in the complaint must be deemed true, but only factual assertions. This test [however,] would exclude pleadings expressing legal conclusions, speculation and unsubstantiated allegations 'so broad and conclusory as to be meaningless.'

In re Livent, Inc. Noteholders Securities Litigation, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001) (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir. 1982)) (emphasis added). In fact, the court must dismiss a complaint under rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [plaintiff] to relief." Union Carbide Corp. v. Montell N.V., 944 F. Supp. 1119, 1125 (S.D.N.Y. 1996) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

O'Neill Plaintiffs have failed to satisfy these threshold requirements; they have not pled sufficient facts showing that CAIR knowingly undertook actions that proximately caused plaintiffs' injuries. Plaintiffs' allegations instead focus on undercutting and stifling CAIR's efforts at civil rights and advocacy in Muslim-American, as well as non-Muslim, communities. Like the many other social and civil rights groups operating in the United States (e.g. the National Association for the Advancement of Colored People, the American Civil Liberty Union, the Equal Employment Opportunity Commission) the lengths to which CAIR goes to protect civil rights are admirable, commendable, and within the bounds of the Constitution.

However, plaintiffs go to their own great efforts in defaming CAIR and without basis, connecting CAIR's work in the community to the 9/11 attacks. Plaintiffs' efforts are not only futile, but they lack any legal merit whatsoever. The utter frivolousness of plaintiffs' action is exposed below.

4

**b. Plaintiffs' allegations that CAIR acted in concert with a 9/11 conspiracy cannot stand because plaintiffs fail to plead proximate cause and mental state.**

CAIR is mentioned in four of the 188 paragraphs contained in plaintiffs' complaint. Even accepting the allegations contained in these four paragraphs as true, plaintiffs have put forward no fact which could conceivably and reasonably be construed as showing that any act by CAIR in any way knowingly and proximately caused or contributed to the 9/11 attacks.

According to Your Honor's January 18, 2005 opinion, it is a requirement that a sufficient causal connection be drawn between that act in question and plaintiffs' damages. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 825 (S.D.N.Y. 2005) (citing Burnett, 274 F. Supp. 2d at 104). The Court uses the Anti Terrorism Act (the "ATA") to define material support as "currency or financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal explosives, personnel, transportation, and other physical assets, except medicine or religious materials." Terrorist Attacks II, 2005 WL 2296673, at *19 (citing 18 U.S.C. § 2339A(b)). Plaintiffs fail to factually allege any element of this Court's definition. Plaintiffs could not offer factual allegations that CAIR transferred finances, provided travel arrangements, communications equipment, lodging, training, safehouses, weapons, personnel, transportation, false documentation or any other physical assets to any known 9/11 terrorist in furtherance of the 9/11 attacks. Nor could plaintiffs allege facts to support an inference that CAIR conspired to do so. Plaintiffs' reliance on theories of concerted action liability to find a causal link between CAIR and 9/11 must therefore fail.  Bodner v. Banque Paribus, 114 F. Supp. 2d 117, 125 (E.D.N.Y. 2000) (noting the Second Circuit's dismissal of complaints which "plead conspiracy in vague and conclusory terms and which do not allege specific instances of misconduct in furtherance of the conspiracy").

5

Not only do plaintiffs fail to allege <u>any</u> facts to support <u>any</u> conclusion that CAIR committed <u>any</u> overt act in furtherance of the attacks, but they also fail to establish that CAIR had the requisite mental state to cause, conspire to cause, aid or abet the 9/11 attacks. As Your Honor has opined, "[t]o be liable under either conspiracy or aiding and abetting…the defendant 'must know the wrongful nature of the primary actor's conduct.'" <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 826 (citing <u>Chrysler Capital Corp. v. Century Power Corp.</u>, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)). Plaintiffs never allege facts to support the inference that CAIR took any act in knowing furtherance of the 9/11 attacks.

The allegations against CAIR fall into one of two categories. They are either: a) legal conclusions couched as factual allegations, or b) allegations that even if true, are immaterial to the 9/11 attacks. Regardless of how one chooses to categorize them, plaintiffs' allegations against CAIR are legally insufficient to sustain this action.

### 1. Plaintiffs' allegations are merely legal conclusions couched as factual statements.

#### i. Plaintiffs lack proximate cause.

Plaintiffs take the baldest of legal conclusions in an attempt to pass them off as factual allegations.[1] Plaintiffs attempt to impose liability by merely sweeping CAIR up with many other defendants, and broadly alleging that the terrorist attacks were the result of a giant and complicated terrorist conspiracy.[2] The Court should dismiss the complaint against CAIR because generalized blanket allegations against numerous defendants are legally insufficient to put CAIR on notice of the claims against it. See <u>Terrorist Attacks II</u>, 2005 WL 2296673, at *18; <u>see also</u>

---

[1] <u>See</u> Compl. ¶ 23 (without any factual basis, lumping CAIR together with other "businessmen, bankers, financiers, organizations, and operatives" who have allegedly conspired with al Qaeda); ¶ 86 (alleging without factual basis that CAIR has aided, abetted, and materially sponsored al Qaeda).

[2] <u>See</u>, <u>e.g.</u>, Compl. ¶ 162 (defendants provided "material support and resources" to al Qaeda "in their campaign to commit acts of international terrorism….").

6

Attuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (In "lumping all Defendants together in each claim and providing no factual basis to distinguish their conduct, plaintiffs' complaint failed to satisfy [the Federal Rules]'s minimum standard"); Bruns v. Ledbetter, 583 F. Supp. 1050, 1051 (S.D. Cal. 1984) (dismissing plaintiffs' claims where the complaint treated 14 diverse defendants "as a monolithic enterprise" with a single purpose). For the court to rule otherwise, it would be contravening a most basic principle of fairness.

> [F]airness requires extra-careful scrutiny of plaintiff[s'] allegations as to any particular defendant, to ensure that he or it does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [complaint].

Burnett, 274 F. Supp. 2d at 104 (emphasis added).

Regardless of the veracity of the allegations, plaintiffs are not capable of stating one single relevant fact to support any allegation that CAIR had any control over, or participated in the alleged illegal acts of any other entities and organizations.[3] Terrorist Attacks II, 2005 WL 2296673, at *18 (citing Jackson v. BellSouth Telecomms., 372 F.2d 1250, 1270-71 (4th Cir. 2004) (holding that a pleading has not even a remote chance to survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based)). Without a demonstration of such "factual grounds," plaintiffs fail to show any conduct by CAIR in any way foreseeably caused the 9/11 attacks. Id. This utter lack of factual suppport renders plaintiffs' allegations conclusory and therefore deserving of

---

[3] Plaintiffs attempt to tie CAIR to HAMAS and the Islamic Association of Palestine (the "IAP"). See, e.g., Compl. ¶¶ 86, 87. Rather than offer facts that purport to tie CAIR to the 9/11 attacks, plaintiffs are content to focus on CAIR's alleged association with HAMAS and the IAP. Even assuming, arguendo, that CAIR has ties to these two groups, plaintiffs' allegations fail because plaintiffs: i) never allege any material contribution made by CAIR to HAMAS or the IAP, ii) never allege any role by HAMAS and/or the IAP to cause the 9/11 attacks, and iii) never allege that CAIR contributed to HAMAS and the IAP knowing that their contributions would aid the 9/11 attacks. The chain of causation is thus broken in three places, rendering such allegations immaterial to the 9/11 attacks and immaterial to plaintiffs' injuries. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 825-26 (citing First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994) (holding that proximate cause means the act was "substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence")).

7

dismissal. See Terrorist Attacks II, 2005 WL 2296673, at *22 ("Judge Casey dismissing defendant Alamoudi from the Burnett Complaint because the complaint does not allege any act taken by Mr. Alamoudi that could be considered provision of "material support" to carry out the 9/11 attacks); see also In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 825. Vision Specialty Food Prods., Inc. v. Ultimate Gourmet, L.L.C., 2001 WL 1506008, *4 (S.D.N.Y. Nov. 26, 2001)(citing Nat'l Westminster Bank v. Weksel, 511 N.Y.S.2d 626, 629 (App. Div. 1987) (holding that bare conclusory allegations of conspiracy are usually held insufficient)).

### ii. *Plaintiffs fail to allege mental state.*

Assuming, arguendo, that plaintiffs adequately allege that CAIR contributed to the 9/11 attacks, plaintiffs have nevertheless failed to allege facts demonstrating how CAIR could have possibly known that it was contributing to the 9/11 attacks. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 833 (holding that plaintiffs must put forth factual allegations showing that defendants "had to know" that they were contributing to terrorism) (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)), see Terrorist Attack II, 2005 WL 2296673, at *22 (Judge Casey dismissing defendant Success Foundation from the Burnett Complaint because the complaint fails to allege that "Success Foundation knew the other unnamed organizations to which it transferred money were in the business of supporting terrorism").

To hold CAIR liable for contributions made without knowledge of where those contributions would eventually end up would be to impose strict liability, a policy disfavored by this Court. See Terrorist Attacks II, 2005 WL 2296673, at *19 (adopting the Seventh Circuit's requirement that plaintiffs plead knowledge on the part of defendants); see also Boim v. Quranic

Literacy Institute, 291 F.3d 1000, 1012 (7th Cir. 2002) ("To hold the defendants liable for donating money without knowledge of the donee's intended criminal use of the funds would impose strict liability. Nothing in the language of the statute or its structure or history supports that formulation"). Indeed not only are plaintiffs' allegations scarce with regard to what actions CAIR took to support the 9/11 attacks, they are devoid of any factual allegations that go to CAIR's mental state. Plaintiffs' substantive causes of action must fail as a matter of law.

## 2. *Plaintiffs, without factual support, malign CAIR's efforts in the community.*

CAIR has made it its mission to advocate for civil rights on behalf of various communities throughout the country, especially the Muslim community. Plaintiffs' allegations, however, twist around these noble services to try to cast a cloud of suspicion and doubt over CAIR.[4] Besides being baseless, plaintiffs' allegations are so far outside the bounds of reasonableness that they have no place before a court of law or equity.

As one example, plaintiffs allege that "CAIR manipulates the legal systems of the United States and Canada in a manner that allows them to silence critics, analysts, commentators, media organizations, and government officials by leveling false charges of discrimination, libel, slander and defamation."[5] In light of this Court's previous rulings, it is clear that plaintiffs have not put CAIR on notice of the claims against them. See Terrorist Attacks II, 2005 WL 2296673, at *19-20. Plaintiffs do not provide a shred of fact to support assertions that CAIR levels any charges against critics, analysts, etc., let alone false charges. More importantly however, even accepting

---

[4] See Compl. ¶ 87 (CAIR "manipulate[s]" the legal systems of the United States and Canada in a manner that allows them to silence critics, analysts, commentators, media organizations, and government officials…."); ¶ 88 ("The role of CAIR is to wage PSYOPS…and disinformation activities on behalf of Whabbi-based Islamic terrorists….").

[5] See Compl. ¶ 87.

9

plaintiffs' allegations to be true, plaintiffs do not, and in good faith cannot, allege that the leveling of false charges had anything at all to do with CAIR aiding the 9/11 attacks.

In a second instance, plaintiffs attack CAIR's attempts at community outreach. Plaintiffs allege that CAIR partakes in "sensitivity training" designed to hamper "governmental anti-terrorism efforts by direct propaganda activities aimed at police, firstresponders, and intelligence agencies" with the goal of rendering these authorities ineffective in pursuit of terrorism.[6] Again plaintiffs have not put CAIR on notice of the claims against it. Id. They have failed to allege any act by which CAIR purported to hamper governmental efforts. But more importantly, plaintiffs do not, and in good faith cannot, allege how "sensitivity training" caused the 9/11 attacks.

And in what is the most outrageous allegation, plaintiffs absurdly conclude that

[t]he role of CAIR … is to wage PSYOPS (psychological warfare) and disinformation activities on behalf of Whabbi-based Islamic terrorists throughout North America. They are the intellectual 'shock troops' of Islamic terrorism. In the years and months leading up to the terrorist attacks on September 11, 2001 these organizations were very effective in helping to ensure that North American law enforcement and intelligence officials were sufficiently deaf, dumb, and blind to help pave the way for the attacks on the United States.[7]

Once again, plaintiffs fail to put CAIR on notice of the claims against it. Id.  Plaintiffs allege no act to justify their grandiose allegations of "shock troops" and "deaf dumb and blind officials." Nowhere in ¶ 88, and indeed nowhere in their whole complaint against CAIR, do plaintiffs allege any specific conduct, as opposed to status. "The Court need not accept inferences drawn by [the] plaintiff if such inferences are unsupported by the facts set out in the complaint." Browning, 292 F.3d at 242; see also, Papasan, 478 U.S. at 286.

---

[6] Id.

[7] See Compl. ¶ 88.

### c. **Plaintiffs' allegations are barred by the First Amendment.**

#### *1. CAIR is protected because they exercised their Freedom of Speech.*

Many of the activities alleged against CAIR, when taken as true, constitute "speech or conduct ordinarily entitled to protection under the First [] Amendment []." NAACP v. Claiborne Hardware Co., 458 U.S. 866, 907 (1982); see also Brandenburg v. Ohio, 395 U.S. 444, 457 (1969) (protecting speech that constitutes advocacy as opposed to imminent lawless action). Speech and conduct lose their First and Fourteenth Amendment Constitutional protections only "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Id.

The First Amendment acts as a bar because there are no allegations to suggest that the 9/11 attackers were acting pursuant to any of the advocacy or conduct alleged by CAIR. Thus even assuming arguendo that CAIR "silenced critics, analysts, commentators, media organizations, and government officials by leveling false charges…," plaintiffs never allege that CAIR advocated terrorist or violent acts to occur imminently in the days leading up to the 9/11 attacks.[8] And even assuming, arguendo, that CAIR "propaga[ted] activities aimed at police firstresponders and intelligence agencies"[9] plaintiffs never allege that this alleged propaganda led to any clear and present danger for the victims of the 9/11 attacks. In fact in the marketplace of ideas, it is plaintiffs who are attempting to "silence" CAIR from advocating for that which it has every right to advocate, namely the civil rights of its members as well as of minorities throughout the United States.

---

[8] See Compl. ¶ 87.

[9] Id.

11

Furthermore, even when actual but non-imminent violence does occur in direct response to such advocacy, neither the speaker nor those who supported the advocacy can be held civilly liable for criminal acts of others. Claiborne Hardware, 458 U.S. at 927-29 (finding that as long as speech is protected, no liability can be imposed upon those who participated in its dissemination). To rule otherwise would ignore the "profound national commitment" that debate on public issues should be "uninhibited robust and wide open." Id. (citing New York Times v. Sullivan, 376 U.S. 254, 270 (1964)); see also Hess v. Indiana, 414 U.S. 105, 108-09 (1973) (supporting mere "advocacy of illegal action at some indefinite future time"). So even if the 9/11 attackers were acting on some speech or conduct advocated by CAIR, which is certainly not the case, such advocacy would be protected because plaintiffs do not allege that CAIR advocated the 9/11 attacks to occur imminently in the days leading up to September 11, 2001. Plaintiffs' allegations must therefore be dismissed.

### 2. CAIR cannot be held liable because their right to freely associate is protected.

The Supreme Court has long held that imposing guilt by association violates the First Amendment. See, e.g., Claiborne Hardware, 458 U.S. at 919-20; Healy v. James, 408 U.S. 169, 186 (1972) (disapproving of the denial of rights and privileges sole because of association with an unpopular organization). Plaintiffs are attempting to tie CAIR to the 9/11 attacks through CAIR's alleged associations.[10] Even assuming, arguendo, that plaintiffs' allegations of association against CAIR are true, plaintiffs have no factual basis to allege that these associations somehow caused the 9/11 attacks, nor do plaintiffs allege that CAIR undertook these associations with knowledge that they were aiding the 9/11 attacks. See Terrorist Attacks II, 2005 WL 2296673, at *19 (requiring plaintiffs to plead that defendants knew of al Qaeda's illegal activities

---

[10] See Compl. ¶ 86 (attempting to tie CAIR to HAMAS and the !AP); ¶ 87 (attempting to tie CAIR to HAMAS).

12

and that they desired to have those activities succeed). Accordingly the Court should dismiss these allegations.

## II. PLAINTIFFS FAIL TO PROPERLY ALLEGE A CAUSE OF ACTION AGAINST CAIR.

Other than injury, plaintiffs have failed to plead the necessary elements of their causes of action. For the reasons explained below, each of plaintiffs' causes of action are worthy of dismissal for failure to properly state a claim.

### a. Plaintiffs fail to properly state a claim under the ATA.

To adequately plead provision of, as well as conspiracy to provide, material support of terrorism under the ATA, according to this Court a plaintiff would have to allege that a defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities. See Terrorist Attacks II, 2005 WL 2296673, at *20 (citing 18. U.S.C. § 2333(a)), In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 828. As demonstrated above, plaintiffs' complaint alleges no knowledge on the part of CAIR, nor any factual allegations to support the conclusion that CAIR engaged in some act of helping the 9/11 attacks to occur. See arguments contained in Part I(b) supra, and cases cited therein.

### b. Plaintiffs fail to properly state a claim under Torture Victim Protection Act ("TVPA").

A cause of action under the TVPA is established when an "'individual who, under actual or apparent authority, or color of law, of any foreign nation subjects an individual to torture or extrajudicial killing.' " See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 828 (quoting Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) ("UBS AG is not an

13

individual, but a corporation, and as such cannot be sued under the TVPA")). Plaintiffs' claims under the TVPA should be dismissed because 1) plaintiffs have not alleged that CAIR was acting under the color of law of any nation, and 2) CAIR is not "an individual" and therefore may not be sued under the TVPA. Id. See also, Terrorist Attacks II, 2005 WL 2296673, at *20 (dismissing TVPA claims against defendants Rabita Trust, IIRO, Success Foundation, and the SAAR Network entities because they are not individuals, and dismissing TVPA claims against defendants Hamdi, Alamoudi, Jalaidan, and SAAR Network executives because plaintiffs never allege that these defendants were acting under color of state law).

c. **Plaintiffs have not properly stated a claim under a theory of Intentional Infliction of Emotional Distress.**

Intent is required for all intentional torts, including intentional infliction of emotional distress. See Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993) (intentional infliction of emotional distress requires "intent to cause, or disregard of a substantial probability of causing, severe emotional distress" and "a causal connection between the conduct and injury"). Plaintiffs allege an insufficient causal connection between CAIR and the 9/11 attacks.

In addition plaintiffs have not pled any facts, let alone sufficient facts, to support any mental state, let alone an allegation that CAIR acted intentionally to cause plaintiffs' injuries. This Court should therefore dismiss the plaintiffs' common law intentional infliction of emotional distress.

### *1. The Statue of Limitations has expired.*

The statue of limitations to file an intentional infliction of emotional distress claim is one year. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 829, N.Y.C.P.L.R. § 215(3) (McKinney 2003). O'Neill Plaintiffs' intentional infliction of emotional distress claim

14

should be dismissed because plaintiffs' complaint was filed on March 10, 2004, more than one year after the September 11, 2001 attacks. See Terrorist Attacks II, 2005 WL 2296673, at *20 (dismissing complaint filed September 10, 2003 by Federal Plaintiffs).

### d. Plaintiffs have not properly stated a claim under the Alien Tort Claims Act.

Plaintiffs' claims under the Alien Tort Claims Act should be dismissed because liability can only be imposed if (i) the defendant is a state actor or acting under color of state law, or (ii) the defendant engaged in "extreme forms of egregious misconduct." Bao Ge v. Li Peng, 201 F. Supp. 2d 14, 20 (D.D.C. 2000), aff'd 35 Fed. Appx. 1 (D.C. Cir. 2002) (per curiam). Plaintiffs have not properly alleged CAIR to be an actor on behalf of any state. Even assuming arguendo that plaintiffs had pled state actor status, nowhere do they allege that CAIR was acting under state law.  Moreover plaintiffs have failed to plead facts to support a claim that CAIR engaged in the requisite "extreme forms of egregious misconduct." Id.

### e. Plaintiffs have not properly stated a claim under a theory of Wrongful Death and Survival.

"The personal representative ... of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if the death had not ensued." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 829 (citing N.Y.E.P.T.L. § 5-4.1(1)(McKinney 1999 & Supp. 2005) (wrongful death claim), § 11-3.3 (McKinney 2001) (survival claim).  Accordingly, and as was stated by this Court, "if the Court finds that Plaintiffs are personal representatives and their allegations sufficiently allege that defendants supported, aided and abetted, or conspired with the

9/11 terrorists, they will … have stated claims for wrongful death and survival." In re Terrorist
Attacks on September 11, 2001, 349 F. Supp. 2d at 829.

Plaintiffs' common law tort claims for wrongful death and survival must be dismissed.
Plaintiffs have pled no facts to support an allegation that CAIR "caused the decedent's death," or
that it committed a tort against the decedent prior to death. See Meroni v. Holy Spirit Ass'n for
the Unification of World Christianity, 506 N.Y.S.2d 174, 179, 119 A.D.2d 200 (2d Dept. 1986)
(both wrongful death and survival actions require that the defendant have committed some
underlying wrongful action against the decedent); Dineen v. Stramka, 228 F. Supp. 2d 447, 454
(S.D.N.Y. 2002) ("Plaintiff's wrongful death claim must also be dismissed because he has failed
to allege a sufficient causal or proximate nexus between any action by the defendant and the
death of Dineen").

### f. Plaintiffs have not stated a claim for Negligence including Negligent Infliction of Emotional Distress.

To establish a claim for negligence under New York Law, "'a plaintiff must show that the
defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and
that the plaintiff suffered damages as a proximate cause of that breach." In re Terrorist Attacks
on September 11, 2001, 349 F. Supp. 2d at 830.

Plaintiffs' allegations are insufficient to make out a negligence claim because CAIR
owed no duty of care to the plaintiffs. Plaintiffs do not allege or identify a duty owed to plaintiffs
by CAIR.  See Terrorist Attacks II, 2005 WL 2296673, at *20 (dismissing plaintiffs' negligence
claims against defendants because plaintiffs neither allege nor identify a duty of care) (citing In
re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 831); see also Burnett, 274 F.
Supp. 2d at 108.

16

Plaintiffs make no sufficient allegation that CAIR owed to plaintiffs any duty of care. The closest that plaintiffs come is in ¶ 169 at the end of their complaint, where they allege in general terms that all defendants owed a duty to all plaintiffs.  However there is no such thing as a general duty to control the conduct of third persons to prevent them from causing injury to others. McCarthy v. Olin Corp., 119 F.3d 148, 156-57 (2d Cir. 1997). Without sufficient factual allegations pertaining to proximate cause and/or duty, no negligence claim including negligent infliction of emotional distress, may stand. Therefore this Court should dismiss all negligence claims against CAIR.

**g.   Plaintiffs' action under Conspiracy and Aiding and Abetting cannot stand.**

No independent cause of action exists under New York law for Conspiracy or for Aiding and abetting. Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir. 1981) ("Under New York law, conspiracy, per se, is not a tort"). As the Second Circuit has previously stated: "[i]t is textbook law that New York does not recognize an independent tort of Conspiracy;" in addition, "damages may not be awarded on the conspiracy count itself." Sepenuk v. Marshall, No. 98-CV-1569-RBC, 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (citations omitted); see Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 720 N.E.2d 892, 898 (N.Y. 1999) (finding that no independent cause of action exists for aiding and abetting).

As has been discussed at length in the previous sections, plaintiffs have utterly failed to allege the proper factual allegations to reasonably infer that CAIR was involved in any underlying conspiracy to perpetrate the 9/11 attacks. Therefore this Court should follow the well-settled law and dismiss the plaintiffs' independent claims for conspiracy and for aiding and abetting.

17

**h.  Plaintiffs' independent cause of action for Punitive Damages cannot stand.**

Plaintiffs' punitive damages count should be dismissed because no independent cause of action exists under New York law for this claim.  Punitive damages are merely a form of relief, not an independent cause of action.  Smith v. County of Erie, 743 N.Y.S.2d 649, 651 (App. Div. 2002).

## III.  PLAINTIFFS HAVE FAILED TO STATE A RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO") CLAIM AGAINST CAIR

### a. Plaintiffs' filing of 12(e) Statement was a futile and illegitimate attempt to supplement their Complaint.[11]

Plaintiffs filed their 12(e) More Definite Statement before CAIR had the opportunity to respond to their Complaint, and two weeks prior to its filing of 12(b) motions. In addition CAIR did not request a More Definite Statement. Since Fed. R. Civ. P. 12(e) filings are designed to correct "only unintelligibility in a pleading," and CAIR has raised no issue of unintelligibility, the Court should disregard plaintiffs' filings. FRA S.P.A. v. Surg-O-Flex of Amer., Inc., 415 F. Supp. 421, 427 (S.D.N.Y. 1976); See also  MTV Networks v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994) ("Motions for more definite statements are generally disfavored").

Aside from its untimeliness, plaintiffs' incorporation by reference of their 12(e) statement imposes burdens on both defendants and the Court that the Case Management Order was specifically designed to prevent.[12] Case Management Order No. 2 ¶ 13 requires the filing of an amended complaint containing all amendments. Had it been acceptable to the Court for plaintiffs to merely let their amended allegations stand in their 12(e) statements, (i.e. without including

---

[11] On September 30, 2005, O'Neill Plaintiffs filed a 12(e) More Definite Statement.

[12] Plaintiffs' filings have prejudiced defendants in that we had our motion to dismiss well over 85% completed by the time plaintiffs' counsel filed their 12(e) Statements.

18

them in an amended complaint), the Court could have simply left off the last sentence in ¶ 13 and allowed plaintiffs to amend their complaints via more definite statements.[13] The Court however chose not to do so. The last sentence in ¶ 13 ensures that in each action, all allegations will be conveniently found consolidated in one place. Plaintiffs' actions have frustrated this purpose.

Moreover the 12(e) Statement fails to provide any further allegations to support any inference that CAIR acted to knowingly further the 9/11 attacks. Rather than amending to add new facts or allegations as is common practice, plaintiffs merely performed a cut-and-paste job and transferred the allegations from their RICO Statement over to the 12(e) statement. Since these allegations were already on record, plaintiffs' 12(e) filing sheds light on nothing new.

In addition, plaintiffs' own allegations in the 12(e) Statement belie their arguments.[14] Plaintiffs themselves admit that 1) CAIR has been recognized by the U.S. Administration as a "legitimate" organization,[15] 2) CAIR "was not an employee, officer or director" of the alleged Enterprise,[16] and 3) knowledge of CAIR's misconduct is not "known at this time."[17]

In the face of contradictory allegations, and without any factual basis plaintiffs nevertheless insist that CAIR is responsible for 9/11. Plaintiffs are hoping that the allegations contained in the RICO Statement, while insufficient to maintain a RICO action, would suffice to make out a cause of action in their complaint. The recycled allegations contained in the 12(e)

---

[13] While Case Management Order ¶ 13 allows the plaintiffs to amend their complaints via 12(e) statements, it also requires that plaintiffs, by July 31, 2005 [later amended to September 30, 2005], file amended complaints containing all of their amendments.

[15] "Notwithstanding CAIR's evident connection to HAMAS, they are regarded by the U.S. Administration as legitimate representatives of the Muslim American community." RICO Stmt., Exh. A Question # 2.

[16] Plaintiffs' 12(e) Stmt. § 6.c.

[17] Plaintiffs' 12(e) Stmt. § 5.c.

19

Statement however, are akin to the bald allegations contained in the Complaint.[18] The 12(e) Statement therefore adds nothing to plaintiffs' action but more conclusory allegations suffering from the same fatal defect as those contained in the original complaint.

In addition, plaintiffs' actions violate Case Management Order ¶ 14 which specifically gives Federal Insurance Plaintiffs, but no others, the right of using RICO Statement allegations as amendments to their complaint.[19] Plaintiffs' proposed amendments should therefore be stricken from the Complaint.

**b. Plaintiffs lack standing to bring RICO claims.**

"Civil RICO is an unusually potent weapon...[and] 'courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (quoting Katzman v. Victoria's Secret, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)). It is clear that personal injury plaintiffs cannot recover under RICO because they cannot allege injury to "business or property." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir. 1999) ("the RICO statute requires an injury to 'business or property'"); see also von Bulow v. von Bulow, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("It is clear that personal injury is not actionable under RICO.").

O'Neill Plaintiffs bring their RICO claims solely under a theory of personal injury. Therefore, and as a matter of law, plaintiffs' RICO claims should be "flushed out" and dismissed. Burnett, 274 F. Supp. 2d at 101-02 (dismissing plaintiffs' RICO claims for lack of standing).

---

[18] Plaintiffs' 12(e) Stmt. § 5.c., even states that the "individual times, places and contents of the alleged misconduct are not all particularly known at this time."

20

### c. **Plaintiffs fail to meet the standard prescribed under RICO 18 U.S.C. § 1962(a).**

Plaintiffs have brought a RICO action pursuant to § 1962(a).[20]  Under § 1962(a)

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated a principle…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (citing 18 U.S.C. § 1962(a)) (emphasis added).

In addition "'[b]ecause the conduct constituting a violation of § 1962(a) is investment of racketeering income [to acquire or maintain an interest in the alleged enterprise], a plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a).' " In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990)).  Plaintiffs fail to sufficiently allege anywhere in their complaint or RICO Statement that CAIR used or invested any racketeering income[21] in order to acquire, establish or operate any interest in any enterprise.[22]  As this Court has already ruled with respect to the Federal Insurance RICO Statement, without these critical

---

[20] See Compl. ¶176-180.

[21] Plaintiffs, without basis and with no factual support, allege that CAIR "laundered funds from so-called charities and corporations and raised money from witting and unwitting donors." RICO Stmt. § 14.  Plaintiffs further allege, without basis and with no factual support, that "[CAIR] also relied heavily on certain imams…willing to divert the *Zakat* [funds]"(emphasis in original). Id.  Neither of these allege any racketeering income pursuant to Your Honor's January 18, 2005 decision. In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827 (requiring racketeering income as opposed to regular fund raising).

[22] Plaintiffs state that CAIR "fit neatly into" the framework of the enterprise, "is associated with" the enterprise, and is "a member of" the enterprise. See RICO Stmt. §§ 6.b, 6.d, and 6.e respectively.  Plaintiffs at one point even allege that CAIR "is separate and distinct from" the enterprise. See RICO Stmt. § 6.e. What plaintiffs never allege, in anything other than conclusory allegations lacking in factual support, is that CAIR acquired or established or operated an interest in the enterprise. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 827.

21

elements plaintiffs have failed to state a claim under 1962(a). <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827.

Assuming <u>arguendo</u> that plaintiffs had pled a RICO enterprise, the bare and conclusory allegations contained in the Complaint and RICO Statement would be insufficient to withstand a motion to dismiss. Plaintiff must plead facts, rather than mere conclusions, to show that each defendant knowingly agreed to participate in the alleged conspiracy. <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998). Plaintiffs RICO Statement is devoid of any facts to show that CAIR knew that it agreed to participate in an alleged conspiracy to benefit the enterprise, or that the actions of the alleged conspiracy were the proximate cause of the 9/11 attacks.[23] <u>See In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827. Without these basic pleading requirements, plaintiff's civil RICO claims should be dismissed.

**d. Plaintiffs fail to meet the standard prescribed under RICO 18 U.S.C. §§ 1962 (c) and (d).**

Plaintiffs have brought a RICO action pursuant to § 1962 (c), and (d).[24] This Court stated very succinctly the four elements under §§ 1962 (c) to be established as to each individual defendant: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" <u>Id</u>. (citing <u>U.S. Fire Ins. Co. v. United Limousine Serv., Inc.</u>, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004). Paragraph (d) states that it "shall be unlawful for any person to conspire to violate any provision of § 1962(a)-(c)." <u>See In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827 (citing 18 U.S.C. § 1962(d)).

---

[23] <u>See</u> RICO Stmt. § 5.b (concluding that CAIR had knowledge of the enterprise in which it was participating), § 5.g (concluding that CAIR knowingly and intentionally provided financial services to terrorist organizations including al Qaida), § 14 (concluding that CAIR knowingly donated funds to the enterprise, knowingly agreed to the objective of the overall conspiracy, and knowingly agreed to aid and abet the illegal activities of the enterprise.). In none of these allegations do plaintiffs allege reasonable facts, or any facts for that matter, that would lead this Court to connect CAIR in anyway to plaintiffs' injuries.

[24] <u>See</u> RICO Stmt. § 1.

22

Assuming that plaintiffs have pleaded an enterprise, "under <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993), an alleged RICO must have had 'some part in directing' the 'operation or management' of the enterprise itself to be liable."[25] <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827 (citing <u>Dubai Islamic Bank v. Citibank, N.A.</u>, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)); <u>see also</u> <u>Terrorist Attacks II</u>, 2005 WL 2296673, at *20 (citing <u>Redtail Leasing, Inc. v. Bellezza</u>, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) ("Plaintiffs must allege that the [defendants] participated 'in the operation or management of the enterprise itself,' which requires that these Defendants must have had some part in directing the enterprise's affairs")). "A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." <u>Redtail Leasing, Inc.</u>, 1997 WL 603496, at *5.

At best, the Complaint and RICO Statement allege in a conclusory manner that defendants <u>may have assisted</u> al Qaeda, but they do not allege "anything approaching active 'management or operation.'" <u>See</u> <u>Terrorist Attacks II</u>, 2005 WL 2296673, at *20 (emphasis in original). Likewise plaintiffs have not alleged that CAIR was a central figure in the underling scheme for conspiracy liability under § 1962(d).

In addition, this very Court has held that to state a claim under § 1962 (d), the "'complaint must allege some <u>factual basis</u> for a finding of a conscious agreement among the defendants.'" <u>See</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 349 F. Supp. 2d at 827 (citing <u>Am. Arbitration Ass'n, Inc., v. DeFonseca</u>, No. 93 Civ. 2424(CSH,) 1996 WL 363128, at *7

---

[25] Plaintiffs' 12(e) Stmt. § 6.c states that "CAIR was not an employee, officer or director of the Enterprise, based upon present information available." In addition Plaintiffs baldly conclude that

> CAIR is associated with the alleged Enterprise. CAIR is a member of the Enterprise, and is separate and distinct from the Enterprise. CAIR intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

These allegations, like the rest of Plaintiffs' allegations are unsupported by facts.

23

(S.D.N.Y. June 28, 1996) quoting Hecht v. Commerce Clearing House, 897 F.2d 21, 26 n. 4 (2d Cir. 1990)) (emphasis added).

Plaintiffs do not allege that CAIR participated in any conduct of any enterprise through any pattern of racketeering activity. Their Complaint and RICO Statement is chalk-full of nothing more than the "[b]are and conclusory allegations [that] are insufficient to withstand a motion to dismiss."[26] [27] Schmidt, 16 F. Supp. 2d at 354. Even assuming that plaintiffs had pled a RICO enterprise, plaintiffs still allege no facts sufficient to show that the alleged conspiracy was the proximate cause of the 9/11 attacks.[28]

Plaintiffs' failure to make even prima facie allegations in support of their RICO claims is fatal to their ability to state a claim against CAIR. This Court should find, as it did against plaintiffs in its previous opinions, that plaintiffs have failed to state a RICO claim under § 1962.

---

[26] See, e.g., RICO Stmt. § 5.b (concluding that CAIR conducted or participated in, and conspired to conduct or participate in, the operation or management of the Enterprise, that CAIR supplied support to the Enterprise of Radical Islamic Terrorism, and that CAIR agreed with the Enterprise to commit two predicate acts in furtherance of racketeering activity). Plaintiffs fail however to allege any facts to support these allegations, which the Court might use to find reason to believe that these actions in fact occurred. See also RICO Stmt. § 6.f (concluding that CAIR intended to further the 9/11 attacks, without stating any factual support for this allegation), §§ 7-8 (concluding that the pattern of "racketeering activity conducted by CAIR is separate from the existence of [the Enterprise], but was a necessary component to the [9/11 attacks]." Plaintiffs never allege however any facts to show that actual racketeering activity actually took place, or that the alleged racketeered funds actually went to support the 9/11 attacks).

[27] Plaintiffs' allegations at times are also wholly immaterial. These allegations, if taken as true, have no bearing whatsoever to the 9/11 attacks. See RICO Stmt., Exh. A Question # 2 ("CAIR serves as perception management in support of Radical Muslim Terrorism…," CAIR's true purpose "is to legitimize the activities of Islamic militants and to neutralize opposition to Islamic extremism," CAIR's "purpose is to create propaganda, misinformation, misdirection, marginalize opposition, silence critics and deceive governments," CAIR is a "Muslim Brotherhood front organization," CAIR lobbies "against radio, television and print media journalists …," "CAIR opposes diversity in Islam: They are aggressive and closed-minded," "CAIR has links to both HAMAS and the Muslim Brotherhood;" "CAIR was founded in 1994 as an offshoot of the [IAP];" CAIR "is founded by tow former leaders of the IAP, HAMAS supporters…;" "IAP is a front for the Palestinian terrorist organization, HAMAS;" "The International Institute of Islamic Thought…donated money in 2003 according to its tax filings;" "Islamic Development Bank gave CAIR $250,000 in August 1999;" and the "IDB also manages funds for the Al-Quds which finance suicide bombings against Israeli citizens.").

[28] As has been a common theme throughout plaintiffs' pleadings, they allege only bald conclusory statements with no facts addressing the basic, yet crucial, issue of proximate cause. See, e.g., RICO Stmt. § 15 (alleging that the 9/11 attacks were intended to destroy the "leading symbol of United States' leadership in world trade" but failing to allege factually any role by CAIR to proximately bring about these attacks).

## IV. CONCLUSION

With CAIR there exists a great danger in allowing plaintiffs' claims to stand. The case against CAIR is a test. If allowed to survive the 12(b)(6) phase, this case could set the tone for how legitimate civil rights organizations in the United States conduct their affairs in the future. When the gravity of the plaintiffs' allegations against CAIR are contrasted with the allegations' legitimacy, it becomes clear that this action goes beyond being frivolous; it is sanctionable under Fed. R. Civ. P. 11. Unless this Court rules consistent with the weight of the evidence, or lack of evidence, the advocacy work of many of these organizations could be unjustly stifled.

Plaintiffs' allegations, when placed in the best possible light, amount to nothing more than vague, conclusory, and therefore legally insufficient statements, or factual allegations that, if true, would fail to state a claim. Plaintiffs fail to allege that CAIR took part in any wrongful action, let alone the heinous 9/11 attacks. Furthermore plaintiffs fail to allege any causation between any of CAIR's actions and the injuries sustained by plaintiffs as a result of the 9/11 attacks. Moreover, plaintiffs fail to allege that CAIR even knowingly participated in any conspiracy that materially supported the 9/11 attacks.

The recycled RICO Statements which were filed as 12(e) statements are nothing more than sweeping conclusions. Therefore they suffer the same fatality as they would under the RICO arguments. In addition plaintiffs' allegations fail to support any cause of action under RICO against CAIR. Since conclusory allegations are insufficient when asserted without causation or the proper mental state, plaintiffs can sustain none of the substantive causes of action listed in their complaint.

For the reasons set forth herein, CAIR respectfully requests that the Court grant its Motion to Dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,


_____S.S._____

Omar T. Mohammedi (OTM 7234)
The Law Firm of Omar T. Mohammedi, LLC
200 Madison Avenue, Suite 1901
New York, New York 10016
T:      (212) 725-3846
F:      (212) 725-9160

Dated: October 17, 2005

26