# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                         :
                                         :        03 MDL 1570 (RCC)
IN RE TERRORIST ATTACKS ON               :        ECF CASE
    SEPTEMBER 11, 2001.                   :
                                         :        ORAL ARGUMENT REQUESTED
------------------------------------------------------------X
```

*This document relates to:*

    *Kathleen Ashton v. Al Qaeda Islamic Army, et al., 02-CV-6977 (RCC)*
    *Federal Insurance Company v. Al Qaeda Islamic Army, et al., 03-CV-6978 (RCC)*
    *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al., 04-CV-05970 (RCC)*
    *New York Marine and General Insurance Co. v. Al Qaida, et al., 04-CV-6105 (RCC)*


## CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT ABDULRAHMAN BIN MAHFOUZ'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINTS WITH PREJUDICE

Gerald A. Feffer (GF-2179)
Peter J. Kahn (PK-3611)
John L. Cuddihy (JC-4015)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

Dated: October 28, 2005

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

BACKGROUND.................................................................................................................2

    A.    The Blessed Relief (Muwafaq) Foundation ............................................2

    B.    The National Commercial Bank...............................................................4

    C.    Mr. Bin Mahfouz's Alleged Contacts With the United States................5

ARGUMENT .....................................................................................................................6

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN
MAHFOUZ. .............................................................................................................6

    A.    Plaintiffs Have Failed To Allege Minimum Contacts With the United
States ........................................................................................................6

    B.    Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy
Theory .......................................................................................................9

    C.    Plaintiffs Fail To Allege that Mr. Bin Mahfouz "Purposefully
Directed" His Conduct At the United States...........................................10

    D.    Plaintiffs Are Not Entitled to Jurisdictional Discovery .........................11

II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. BIN
MAHFOUZ. ...........................................................................................................12

    A.    Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim
Under the Anti-Terrorism Act ("ATA"). ...............................................12

    B.    Plaintiffs' Allegations Against Mr. Bin Mahfouz Are Barred By Well-
Settled Principles of Corporate Law. .....................................................15

    C.    Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin
Mahfouz ..................................................................................................16

    D.    Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred by The First
Amendment of the United States Constitution........................................18

    E.    Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred By The
Volunteer Protection Act, 42 U.S.C. §§ 14501, et seq...........................20

    F.    Plaintiffs Have Failed To State a Claim Under the Alien Tort Claims
Act, the Torture Victim Protection Act, or Any State Law Cause of
Action ......................................................................................................21

    CONCLUSION ......................................................................................................23

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Armendarez v. Glendale Youth Ctr., Inc.*, 265 F. Supp. 2d 1136 (D. Ariz. 2003)............ 21

*In re Asbestos Sch. Litigation*, 46 F.3d 1284 (3d Cir. 1994)............................................. 20

*Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151 (3d Cir. 2001) ............ 19

*Boim v. Quranic Literacy Institute*, 127 F. Supp. 2d 1002 (N.D. Ill. 2001), *aff'd*,
    291 F.3d 1000 (7th Cir. 2002)......................................................................................... 14

*Bowers v. NETI Tech., Inc.*, 690 F. Supp. 349 (E.D. Pa. 1988) ......................................... 8

*Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990) ................................................... 6

*In re Cross Media Marketing Corp. Sec. Litigation*, 314 F. Supp. 2d 256
    (S.D.N.Y. 2004) ............................................................................................................... 13

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ......................................... 13

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ............................................................ 18

*Healy v. James*, 408 U.S. 169 (1972)................................................................................. 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................... 9

*Hoechst Celanese Corp. v. Nylon Engineering Resins, Inc.*, 896 F. Supp. 1190
    (M.D. Fla. 1995).............................................................................................................. 6

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ............................................... 13

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988) ........................................................... 18

*In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256 (S.D.N.Y. 2004) .......... 13

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ..................................................... 9

*Mates v. N. America Vaccine, Inc.*, 53 F. Supp. 2d 814 (D. Md. 1999) ............................. 8

*McCoy v. Stewart*, 282 F.3d 626 (9th Cir. 2002) .............................................................. 19

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993) .......................................................... 16

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ............................................... 18

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..................................................... 18

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990)......................................................... 16

*Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47 (D.D.C. 1998) ...................................................... 8

*Scales v. United States*, 367 U.S. 203 (1961) ................................................................. 18

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ......................................................................... 7

*In re Terrorist Attacks of Sept. 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ...... *passim*

*In re Terrorist Attacks of Sept. 11, 2001*, ____ F. Supp. 2d ____, 2005 WL. 2296673 (S.D.N.Y. Sept. 21, 2005) ................................................................. *passim*

*United States Fire Insurance Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432 (S.D.N.Y. 2004) ............................................................................................. 17

*United States v. Robel*, 389 U.S. 258 (1967)................................................................... 18

## STATE CASES

*America Feeds & Livestock Co. v. Kalfco, Inc.*, 540 N.Y.S.2d 354 (3d Dep't 1989)........................................................................................................... 15, 16

*DiNardo v. L & W Industrial Park of Buffalo, Inc.*, 425 N.Y.S.2d 704 (4th Dep't 1980)................................................................................................................ 16

*Felder v. R & K Realty*, 744 N.Y.S.2d 213 (2d Dep't 2002)............................................ 15

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) .............................................................. 20

*Lawlor v. District of Columbia*, 758 A.2d 964 (D.C. 2000) ............................................ 15

*Mayes v. UVI Holdings, Inc.*, 723 N.Y.S.2d 151 (1st Dep't 2001) .................................. 22

## FEDERAL STATUTES

18 U.S.C. § 1962 ...................................................................................................... *passim*

18 U.S.C. § 2333 ............................................................................................................ 12

42 U.S.C. § 14501 *et seq.* .......................................................................................... *passim*

## INTRODUCTION

On January 18, 2005, this Court dismissed Mr. Abdulrahman Bin Mahfouz from *Burnett v. Al Baraka Investment & Development Corporation*, Civil Action No. 03-9849 ("*Burnett*") with prejudice, for lack of personal jurisdiction. The Court held that the *Burnett* complaint did "not allege specific facts from which the Court could infer" that Mr. Bin Mahfouz "directed, controlled, or requested al Qaeda to undertake its terrorist activities. Nor are there any specific allegations of [his] knowledge of, or consent to, those activities." *In re Terrorist Attacks of Sept. 11, 2001*, 349 F. Supp. 2d 765, 806 (S.D.N.Y. 2005) (hereinafter "*Terrorist Attacks I*"). In addition, the Court held that the *Burnett* complaint did "not contain any specific actions by Mr. Bin Mahfouz from which the Court could infer that he purposefully directed his activities at the United States." *Id.* at 820. Finally, the Court held that Mr. Bin Mahfouz's alleged "business interests in the United States" did not give rise to personal jurisdiction over him. *Id.* at 821.

Mr. Bin Mahfouz is named as a defendant in other actions consolidated in MDL-1570, and the allegations in those complaints do not materially differ from the jurisdictionally-deficient allegations asserted against him in *Burnett*. Accordingly, after the Court's ruling in *Burnett*, Mr. Bin Mahfouz asked plaintiffs, on May 11, 2005, to voluntarily dismiss him from the remaining cases, to avoid wasting the Court's and the parties' time and resources with a duplicative motion. Plaintiffs in four of the actions – *Ashton*, *Federal Insurance*, *Continental Casualty*, and *New York Marine* – bluntly refused, necessitating the filing of this motion.

In short, Plaintiffs in these actions have forced Mr. Bin Mahfouz to defend himself against the same tired allegations that the Court has already held cannot give rise to personal jurisdiction over him. The Court should follow its prior ruling in *Burnett* and dismiss Mr. Bin Mahfouz from these actions with prejudice.

<u>**BACKGROUND**</u>

Plaintiffs' allegations with respect to Mr. Bin Mahfouz fall principally into three categories:  (1) his alleged position as a director of a Channel Islands charity, the Blessed Relief (Muwafaq) Foundation; (2) his alleged position as an executive of National Commercial Bank, and (3) his alleged "business interests" in the United States.  Notably, this Court has already held that none of these allegations (even if true) gives rise to personal jurisdiction over Mr. Bin Mahfouz.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 820-21.

**A.      The Blessed Relief (Muwafaq) Foundation.**

Plaintiffs contend that Mr. Bin Mahfouz has served as a director of the Blessed Relief Foundation.[1]  Although Plaintiffs allege that Blessed Relied ultimately served as a front for al Qaeda (a claim addressed below), they also allege that it was a charity – and indeed, the Foundation served a wealth of humanitarian purposes.  It is also undisputed that Blessed Relief wound up its activities between 1996 and 1998 at the latest, and that its so-called Delaware "branch" was declared void by the Delaware Secretary of State in 1994.[2]

The only specific fact Plaintiffs allege is that Mr. Bin Mahfouz served as a "director" of Blessed Relief.  None of the Complaints alleges any *specific* facts indicating that Mr. Bin Mahfouz participated in, approved of, or even knew of any conduct that furthered Blessed Relief's ostensible role as a "funnel" for al Qaeda's finances.  When Mr. Bin Mahfouz

---

[1]      *See Ashton* ¶¶ 341, 433; *Federal Ins.* ¶ 488; *Continental Cas.* ¶¶ 351, 373; *N.Y. Marine* ¶ 461.

[2]      *See* Exhibit 2 to the "Motion of Defendant Abdulrahman Bin Mahfouz to Dismiss Plaintiffs' Third Amended Complaint With Prejudice" (filed Mar. 19, 2004) (MDL Docket No. 51) (providing official Delaware state public records setting forth the dates of Blessed Relief's incorporation and dissolution); *see also Continental Cas.* RICO Stmt. (filed Aug. 22, 2005) (MDL Docket No. 1141) (alleging that Delaware declared Blessed Relief to be "'inoperative and void' in March 2004").

noted this fact in his motion to dismiss the *Burnett* case,[3] the *Federal Insurance* Plaintiffs included in their RICO Statement against him the conclusory allegation that "[i]n his capacity as an officer and director of the Blessed Relief Foundation, bin Mahfouz knowingly and actively participated in that organization's continuous efforts to advance al Qaeda's terrorist ambitions, and used his position within the organization to ensure that it served as an effective mechanism for raising and laundering funds" for al Qaeda. *Federal Insurance* Am. RICO Stmt. pp. 10-11 (filed Aug. 19, 2005) (MDL Docket No. 1138); *see also Ashton* ¶ 433 (making essentially the same allegation).[4]  But plaintiffs allege no *facts* to support that conclusion.

The Complaints also allege that the United States Treasury Department has identified Blessed Relief as a supporter of al Qaeda.  Each Complaint cites to an October 12, 2001, "press release" that allegedly identifies Blessed Relief as an al Qaeda supporter.[5] However, it is undisputed that Blessed Relief does not appear – and has never appeared – on the Treasury Department's published list of Specially Designated Nationals and Blocked Persons,

---

[3]    *See* "Memorandum of Law In Support of Motion of Defendant Abdulrahman Bin Mahfouz to Dismiss Plaintiffs' Third Amended Complaint With Prejudice" at 2 (filed Mar. 19, 2004) (MDL Docket No. 51).

[4]    On or about September 30, 2005, the Plaintiffs in *Federal Insurance* and *New York Marine* filed so-called "amended complaints" against Mr. Bin Mahfouz (among others).  Each complaint purports to incorporate "by reference" the amended RICO Statement filed against Mr. Bin Mahfouz in *Federal Insurance.  See Federal Insurance* p. 132 n.53; *N.Y. Marine* p. 49 n.123. Neither complaint comports with the requirements of paragraph 13 of CMO No. 2, which required plaintiffs to file amended complaints, not a bevy of RICO Statements and other documents simply stapled together.

[5]    *See Ashton* ¶ 340; *Federal Ins.* ¶ 479; *Continental Cas.* ¶ 349; *N.Y. Marine* ¶ 452 (citing the supposed October 21, 2001 "press release").

which lists those who allegedly supported al Qaeda and other terrorists.[6]  And, its provenance

aside,[7] the so-called "press release" says nothing about Mr. Bin Mahfouz.

**B.    The National Commercial Bank.**

The *Ashton* and *Continental Casualty* plaintiffs further contend that Mr. Bin

Mahfouz has been, at previous times, a "Deputy General Manager" and/or "Deputy Chairman of

the Executive Committee" of the National Commercial Bank ("NCB").  *Ashton*

¶ 423; *Continental Cas.* RICO Stmt. pp. 2-3.  According to the plaintiffs, NCB "has financed the

operations" of Osama bin Laden, and was a conduit for a transfer of $3 million dollars in 1998

from Blessed Relief to Osama bin Laden.  *Ashton* ¶ 432.  The *Ashton* Plaintiffs further allege that

"at the time" of that financial transfer, Mr. Bin Mahfouz "was the Deputy General Manager of

the bank as well as Deputy Chairman of the Executive Committee."  *Id.* ¶ 423.  None of the

Complaints alleges any facts, however, to support a conclusion that Mr. Bin Mahfouz played any

part in, ratified, or even knew of NCB's alleged role as a financial conduit for Osama bin

Laden's operations.[8]

---

[6]    *See* United States Department of the Treasury, Office of Foreign Assets Control, Specially Designated National and Blocked Persons, Oct. 21, 2005, *available at* http://www.treas.gov/offices/eotffc/ofac/sdn/t11sdn.pdf (last accessed Oct. 28, 2005).

[7]    The so-called "press release" is purportedly attached as Exhibit 1 to the first Affidavit of John Fawcett, filed by the *Burnett* plaintiffs in opposition to the motion to dismiss filed by Mr. Bin Mahfouz's father, Khalid Bin Mahfouz.  *See* MDL Docket No. 1148 (filed Aug. 24, 2005). Exhibit 1 is in fact two separate documents.  The first, a four-page press release, no. PO-689, on official Treasury letterhead, says nothing at all about Blessed Relief.  The second, which does mention Blessed Relief, is an entirely different document, in a different font and type size, with different page numbering, and bearing no title or other identifying information.  It appears that Mr. Fawcett has stapled together two different documents and submitted an affidavit stating that they were a single document.

[8]    Nor do the plaintiffs explain how NCB handled any money in an unlawful or actionable manner.  Banks, after all, are in the business of handling money.

**C.      Mr. Bin Mahfouz's Alleged Contacts With the United States.**

Knowing that the allegations discussed above are insufficient to sustain a personal jurisdiction claim against Mr. Bin Mahfouz, in August 2005 the *Continental Casualty* plaintiffs filed an untimely RICO Statement recycling various allegations regarding Mr. Bin Mahfouz's supposed business interests in the United States.[9]  The RICO Statement alleges that he has held shares in two Delaware corporations, WorldSpace Inc. and Hybridon, Inc. (*Continental Cas.* RICO Stmt. Ex. A at 2-3); that he was a member of the Board of Directors of Hybridon, Inc. in 1997 and 1998, but not thereafter (*id.*); that NCB (of which Mr. Bin Mahfouz was allegedly a director or employee) had contacts with various United States entities, including SNCB Securities, Inc., a New York-based subsidiary of NCB (*id.* at 3); and that his father (Khalid Bin Mahfouz, who is also a defendant in these cases) at one time owned a house in Houston, Texas. *See Continental Cas.* RICO Stmt. Ex. A at 1.  Plaintiffs contend that prior to its sale by Khalid Bin Mahfouz in 1999, the house was used "as the registered address for several Bin Mahfouz family members and associates, including Abdulrahman Bin Khalid Bin Mahfouz."  *Id.* However, Plaintiffs do not allege that Mr. *Abdulrahman Bin Mahfouz* owned the home.

As explained below, these allegations do not materially differ from the allegations the Court considered before dismissing Mr. Bin Mahfouz from *Burnett* – and none gives rise to personal jurisdiction over him.

---

[9]      The RICO statement filed in *Continental Casualty* (MDL Docket No. 1141) is untimely and should be disregarded, because it was not filed within twenty days of the filing of the plaintiffs' Complaint in *Continental Casualty*, as required by the Court's standing "Instructions for Filing RICO Statement."  In addition, on August 22, 2005, after full briefing by the parties, the Court denied plaintiffs' letter application seeking to vary this requirement with regard to the *Continental Casualty* case and other cases consolidated in MDL-1570.  *See* MDL Docket No. 1144.

## ARGUMENT

Mr. Bin Mahfouz's motion to dismiss here should be granted for the same two reasons articulated in his motion to dismiss the *Burnett* Complaint.  First, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs have failed to establish that this Court can properly exercise personal jurisdiction over this foreign defendant.  Second, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim against Mr. Bin Mahfouz.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ.

To survive a motion to dismiss under Federal Rule 12(b)(2), Plaintiffs must "make a *prima facie* showing that personal jurisdiction exists." *Terrorist Attacks I,* 349 F. Supp. 2d at 804.  While Plaintiffs may proffer several distinct theories of personal jurisdiction, none supports jurisdiction over Mr. Bin Mahfouz.  Plaintiffs do not allege any relevant contacts Mr. Bin Mahfouz maintains with New York or the United States as a whole, much less sufficient relevant contacts to support general jurisdiction.  Plaintiffs do not allege any specific facts to support their allegations that Mr. Bin Mahfouz participated in a conspiracy with Osama bin Laden and al Qaeda.  And Plaintiffs allege no facts from which to infer that Mr. Bin Mahfouz purposefully directed any salient conduct at the United States.  Having failed to allege any relevant jurisdictional facts, Plaintiffs are not entitled to jurisdictional discovery.

### A.    Plaintiffs Have Failed To Allege Minimum Contacts With the United States

As a threshold matter, it is not clear whether general personal jurisdiction may be exercised over foreign individuals such as Mr. Bin Mahfouz.[10]  Even if such exercise is proper,

---

[10]      *See, e.g., Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (recognizing that "it may be that [general jurisdiction] applies only to corporations"); *Hoechst Celanese Corp.*

in order to support general jurisdiction, Plaintiffs must allege contacts with New York or the

United States that are "'systematic and continuous,'" *Terrorist Attacks I*, 349 F. Supp. 2d at 816

(quoting *Helicopteros, Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *see*

*also id.* at 811 (discussing general personal jurisdiction and noting where "the defendant's

contacts are not related to the suit, a considerably higher level of contacts is generally required").

The contacts alleged by Plaintiffs are neither "systematic" nor "continuous," and therefore

cannot confer personal jurisdiction over Mr. Bin Mahfouz.

    First, the *Continental Casualty* Plaintiffs (but no other Plaintiffs) allege in their

untimely RICO Statement that Mr. Bin Mahfouz held shares in two Delaware corporations

(WorldSpace, Inc. and Hybridon, Inc.).  See *Continental Cas.* RICO Stmt. Ex. A at 2-3.  But

when these *precise* allegations were raised by the plaintiffs in *Burnett*,[11] this Court held that

"being a shareholder in a United States company is not sufficient to establish general personal

jurisdiction over Mr. Bin Mahfouz."  *Terrorist Attacks I*, 349 F. Supp. 2d at 820-21; *see also In*

*re Terrorist Attacks of Sept. 11, 2001*, ____ F. Supp. 2d ____, No. 03-MDL-1570, 2005 WL

2296673, at *14 (S.D.N.Y. Sept. 21, 2005) (hereinafter "*Terrorist Attacks II*") (holding that

Prince Salman's "ownership of shares in Texas corporation" cannot establish general personal

jurisdiction over him); *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) ("It strains reason . . . to

suggest that anyone buying securities in a corporation formed in Delaware 'impliedly consents'

---

*v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1193 n.4 (M.D. Fla. 1995) ("Nor is it clear that
general jurisdiction can ever be held over private, non-resident defendant.") (citing *Burnham*).

[11]  *See Terrorist Attacks I*, 349 F. Supp. 2d at 820 (reciting the *Burnett* plaintiffs' allegation
that Mr. Bin Mahfouz "is a shareholder in U.S.-based companies"); *see also Burnett* Plaintiffs'
Opposition to Mr. Bin Mahfouz's motion to dismiss, at 7 (filed May 14, 2004) (MDL Docket
No. 150) ("In addition, Mr. Bin Mahfouz has many business interests, which include extensive
dealings with American corporations, or corporations which do extensive business in the United
States.  *Specifically, he is a shareholder in Hybridon, Inc., located in Cambridge, Massachusetts,*
*and in Washington, D.C.-based World Space Corporation.*") (emphasis added).

to subject himself to Delaware's . . . jurisdiction on any cause of action.") (quotation omitted).

Second, the *Continental Casualty* Plaintiffs (but no other Plaintiffs) allege in their untimely RICO Statement that NCB (of which Mr. Bin Mahfouz was allegedly a director or employee) had contacts with various United States entities, including SNCB Securities, Inc., a New York-based subsidiary of NCB. *See Continental Cas.* RICO Stmt. Ex. A at 3. But this Court has already held, with regard to this precise allegation, that Mr. Bin Mahfouz's alleged "affiliations with entities that are alleged to have U.S. contacts will not sustain jurisdiction" over him. *In re Terrorist Attacks I*, 349 F. Supp. 2d at 820.

Third, the *Continental Casualty* Plaintiffs (but no other Plaintiffs) allege in their untimely RICO Statement that Mr. Bin Mahfouz was a member of the Board of Directors of Hybridon, Inc., a Delaware corporation with its principal place of business in Massachusetts, for two years (in 1997 and 1998). *See Continental Cas.* RICO Stmt. Ex. A at 2-3. That allegation is irrelevant, because "[p]ersonal jurisdiction over officers of a corporation in their individual capacities must be based on their personal contacts with the forum, not their acts and contacts carried out solely in a corporate capacity." *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 51 (D.D.C. 1998).[12] Tellingly, plaintiffs have not alleged any such "personal contacts" of Mr. Bin Mahfouz with New York or the United States. Nor have they alleged that Mr. Bin Mahfouz used his alleged directorship with Hybridon to support al Qaeda or the 9/11 terrorists.

Finally, the *Continental Casualty* Plaintiffs (but no other Plaintiffs) allege in their untimely RICO Statement that Mr. Bin Mahfouz's father, Khalid Bin Mahfouz (who is also a

---

[12]     *Accord, e.g., Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 821 (D. Md. 1999) (board member not subject to personal jurisdiction where contact with forum was "entirely within the scope of his corporate capacity"); *Bowers v. NETI Tech., Inc.*, 690 F. Supp. 349, 357 (E.D. Pa. 1988) ("Individuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.").

defendant in these proceedings), once owned a home in Houston, Texas. This Court has already held that that *precise* allegation – the ownership of a home in the United States by a relative of a defendant – is "irrelevant to this Court's analysis" on jurisdiction. *Terrorist Attacks II*, 2005 WL 2296673, at \*14 ("Prince Salman's deceased son's contacts with the United States," including ownership of home in the United States, "are irrelevant to this Court's analysis") (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)).

        In sum, none of the plaintiffs have alleged *any* relevant contacts Mr. Bin Mahfouz has with New York or the United States, let alone the "systematic and continuous" contacts needed for general personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984) (holding that CEO's travel to forum for contract negotiations, employees' travel to forum for training, receipt of funds drawn on forum bank account, and purchases from forum companies were not contacts sufficiently systematic and continuous to establish general jurisdiction); *see also Terrorist Attacks I*, 349 F. Supp. 2d at 816 (same); *Terrorist Attacks II*, 2005 WL 2296673, at \*14 (same). That would be the case even if this Court ultimately finds that it has personal jurisdiction over NCB. *See Terrorist Attacks I*, 349 F. Supp. 2d at 816 (holding that a finding of jurisdiction over an entity does not support jurisdiction over an individual officer absent an independent showing as to that officer).

### B.    Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory

        The exercise of "conspiracy jurisdiction" over Mr. Bin Mahfouz is equally inappropriate. This Court has stressed that "'the bland assertion of conspiracy . . . is insufficient to establish jurisdiction.'" *Terrorist Attacks I*, 349 F. Supp. 2d at 805 (quoting *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975)). Rather, "[t]o establish personal jurisdiction on a conspiracy theory, Plaintiffs must make a prima facie showing of conspiracy, *allege specific facts* warranting the inference that the defendant was a member of the conspiracy,

9

and show that the defendant's co-conspirator committed a tort in New York." *Id.* (emphasis added).  Here, Plaintiffs do not even come close.

To establish conspiracy jurisdiction over Mr. Bin Mahfouz, Plaintiffs must allege that he directed, controlled or requested al Qaeda to undertake its terrorist activities, and must make specific allegations that he knew of or consented to those activities.  *Terrorist Attacks I,* 349 F. Supp. 2d at 806.  As described in the summary of factual allegations above, Plaintiffs here allege no specific facts even suggesting that Mr. Bin Mahfouz did so.  Plaintiffs do allege in various forms that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11.  However, the Court has already recognized that "[w]ithout supporting factual allegations," the Court may properly dismiss without permitting jurisdictional discovery.  *Id.* at 805.

## C.   Plaintiffs Fail To Allege that Mr. Bin Mahfouz "Purposefully Directed" His Conduct At the United States

Much of Plaintiffs' jurisdictional argument to date has been directed at the claim that various defendants have "purposefully directed" their conduct at the United States.  As to Mr. Bin Mahfouz, such a claim must fail because Plaintiffs have not alleged "some *personal or direct involvement* by the Defendant[] *in the conduct giving rise to their claims*," *Terrorist Attacks I*, 349 F. Supp. 2d at 809 (emphasis added), as the authorities Plaintiffs themselves have cited require.  *See id.* (citing cases).  Like the *Burnett* complaint previously dismissed as against Mr. Bin Mahfouz, the Complaints at issue do not "contain any specific actions by Mr. Bin Mahfouz from which the Court could infer that he purposefully directed his activities at the United States."  *Id.* at 820.

Plaintiffs' allegations that Mr. Bin Mahfouz held various positions at NCB are likewise insufficient to demonstrate that he purposefully directed his conduct at the United States.  Beyond alleging that Mr. Bin Mahfouz was an officer of NCB, Plaintiffs allege that NCB

was used by Osama bin Laden and al Qaeda as a financial conduit for Osama bin Laden's operations.[13]  Plaintiffs have not, however, alleged that Mr. Bin Mahfouz "had any knowledge or involvement in any al Qaeda accounts at . . . the bank."  *Terrorist Attacks I*, 349 F. Supp. 2d at 816.  In rejecting similarly insufficient allegations proffered against Prince Mohamed, the Court held that "[t]o make a prima facie case of personal jurisdiction, Plaintiffs' must either allege *personal acts* by Prince Mohamed by which he purposefully directed his activities at the United States by supporting Osama bin Laden, al Qaeda, or their terrorist agenda, or demonstrate that the acts of the banks he chaired can be imputed to him."  *Id.* (emphasis added).  An identical showing is required as to Mr. Bin Mahfouz, and just as Plaintiffs failed to meet their burden as to Prince Mohamed, they have failed to meet their burden here.

In sum, because Plaintiffs have not shown Mr. Bin Mahfouz's "personal or direct participation in the conduct giving rise to Plaintiffs' injuries," their claims against him – like the claims of the *Burnett* plaintiffs – fail for lack of personal jurisdiction.  *Terrorist Attacks I*, 349 F. Supp. 2d at 809.

## D.      Plaintiffs Are Not Entitled to Jurisdictional Discovery

Having failed to allege any facts to support jurisdiction over Mr. Bin Mahfouz, Plaintiffs will likely request jurisdictional discovery in hope of finding some.  As this Court has already recognized, however, "'[c]ourts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction.'"  *Terrorist Attacks I,* 349 F. Supp. 2d at 812 (citing cases).  That is precisely the case here.  Plaintiffs have not alleged:  (1) any relevant contacts between Mr. Bin

---

[13]      *See Ashton* ¶ 424; *Fed. Ins.* ¶¶ 291, 293; *Continental Cas.* ¶ 362; *N.Y. Marine* ¶ 271.

Mahfouz and the United States, let alone any relevant "systematic and continuous" contacts, nor (2) any specific conduct by Mr. Bin Mahfouz himself from which the Court could infer that he "directed, controlled, or requested al Qaeda to undertake its terrorist activities" or that he had "knowledge of, or consent[ed] to, those activities." *Terrorist Attacks I*, 349 F. Supp. 2d at 806 (dismissing Mr. Bin Mahfouz from *Burnett* for lack of personal jurisdiction). It is therefore clear that Plaintiffs have not demonstrated a basis to take even limited discovery of this foreign defendant.

## II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. BIN MAHFOUZ.

Although characterized under many guises, Plaintiffs' claims against Mr. Bin Mahfouz rely entirely upon joint tort theories of conspiracy or aiding and abetting. Plaintiffs do not and cannot allege that Mr. Bin Mahfouz directly supported al Qaeda or participated in the September 11 attacks. Rather, Mr. Bin Mahfouz is alleged to have indirectly assisted al Qaeda through its alleged relationships with entities such as NCB and Blessed Relief. As explained below, all of Plaintiffs' claims against Mr. Bin Mahfouz should be dismissed because Plaintiffs fail to allege specific facts supporting an inference that Mr. Bin Mahfouz knowingly supported al Qaeda through these entities – and thus Plaintiffs' claims are barred by well-settled principles of corporate law. Also, as explained below, many of Plaintiffs' claims fail for additional reasons unique to the individual causes of action.

### A.  Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim Under the Anti-Terrorism Act ("ATA").

Plaintiffs' ATA claim fails for two primary reasons. First, they fail to allege the necessary direct relationship between Mr. Bin Mahfouz's alleged conduct and the September 11 attacks, which is required by the statute's "by reason of" requirement. *See* 18 U.S.C. § 2333 (2000). That language, borrowed from RICO, requires not simply a foreseeable link but "some

direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992).  Second and more fundamentally, however, Plaintiffs have also failed to allege any specific facts that could give rise to an inference that Mr. Bin Mahfouz knowingly and intentionally provided material assistance to al Qaeda.  Analyzing the standards applicable to tort claims of conspiracy and aiding and abetting, this Court made clear that Plaintiffs must allege specific facts showing that Plaintiffs knew of, intended to aid, and did in fact aid the terrorists' illegal activities.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 828.  To adequately allege those points here, Plaintiffs must offer specific facts to support their conclusions that Mr. Bin Mahfouz knew or had to know that the entities in question were being used to support al Qaeda.  *Id.* at 831, 835-36.  Plaintiffs have failed to do so.  At most, they allege that Mr. Bin Mahfouz was somehow associated with entities that allegedly supported al Qaeda – and some of the Complaints fail to do even that.  Plaintiffs never allege any specific facts suggesting that Mr. Bin Mahfouz actively participated in those organizations' allegedly illegal activities or knowingly supported them.

  **General Conclusory Allegations.**  As an initial matter, although Plaintiffs continue to insist that they need not state anything more than the broadest description of their legal theories, this Court has made clear that they cannot withstand a motion to dismiss simply by relying on vague, generalized allegations.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 833 ("'[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).'") (quoting *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996))); *see also id.* at 835 (granting Arab Bank's motion to dismiss because "[a] complaint alleging conclusions without supporting facts will not survive a Rule 12(b)(6) motion"); *In re Cross Media Mktg. Corp. Sec. Litig.,* 314 F. Supp. 2d 256, 261 (S.D.N.Y. 2004).

  Apart from these conclusory allegations, Plaintiffs rely primarily on two categories of allegations:  those relating to Mr. Bin Mahfouz's alleged role as a director of Blessed Relief, and

13

those relating to his alleged position as a corporate officer of NCB.  Neither these nor any other allegations Plaintiffs have made support an inference that Mr. Bin Mahfouz supported or agreed to support al Qaeda or terrorism of any kind – as this Court has already held.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 820-21.

> **Blessed Relief.**  Plaintiffs claim that Blessed Relief was an al Qaeda front.[14]  That allegation, even if assumed to be true, fails to state a claim.  As this Court held, based on the seminal ATA case of *Boim v. Quranic Literacy Institute,* 127 F. Supp. 2d 1002 (N.D. Ill. 2001), *aff'd,* 291 F.3d 1000 (7th Cir. 2002), "pursuant to *Boim*, the Plaintiffs would have to allege *specific facts* showing that the [defendants] knew or should have known that the charities they supported were actually fronts for al Qaeda." *Terrorist Attacks I*, 349 F. Supp. 2d at 800 (emphasis added).  Plaintiffs allege no facts that would support such a showing.  The Court noted that in *Boim*, unlike in this case, the relevant charity (Hamas) was a designated terrorist group at the time of the alleged donations.  *Id.*  Although Plaintiffs make much of an alleged press release in which the U.S. Treasury Department purportedly identified Blessed Relief as a source of terrorism funding, the Plaintiffs themselves claim that the alleged release was made in October, 2001 (*see* n.5, *supra*), years after Mr. Bin Mahfouz's alleged involvement in Blessed Relief. Thus, it cannot supply the necessary inference of knowledge.

> Nor have Plaintiffs alleged any other facts to "support an inference that" Mr. Bin Mahfouz was "sufficiently close to the terrorist' illegal activities to satisfy *Halberstam* [*v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)] or New York law." *Id.* at 800-01.  Plaintiffs allege no connection between Mr. Bin Mahfouz and al Qaeda terrorists themselves.  Moreover, with respect to Blessed Relief, they allege merely that Mr. Bin Mahfouz served as one of its directors at some

---

[14]     *See Ashton* ¶¶ 341-43; *Fed. Ins.* ¶¶ 479, 488; *Continental Cas.* ¶¶ 351-53; *N.Y. Marine* ¶ 452.

point in the past. They do not allege any specific facts supporting an inference that Mr. Bin Mahfouz did so to aid al Qaeda or that he played any role in management, operation, or control of Blessed Relief.

**NCB.** Plaintiffs' ATA claims against Mr. Bin Mahfouz also rely heavily on his various alleged positions at NCB. These allegations fall short for the same reason as those regarding Blessed Relief. While some Plaintiffs allege that Mr. Bin Mahfouz was a "Deputy General Manager" and/or "Deputy Chairman of the Executive Committee" of NCB, *see Ashton* ¶ 423; *Continental Cas.* RICO Stmt. pp. 2-3, they allege no facts to suggest that he authorized, directed, or was otherwise involved in NCB's alleged handling of charities' accounts. Indeed, Plaintiffs fail to allege any specific facts suggesting that Mr. Bin Mahfouz even knew that these accounts existed, let alone that he knew they were being used to support al Qaeda. It is entirely unrealistic to assume that, as a "Deputy General Manager" and/or "Deputy Chairman of the Executive Committee," Bin Mahfouz was aware of and actively policed the thousands of accounts and transactions at NCB, the largest bank in Saudi Arabia.

## B. Plaintiffs' Allegations Against Mr. Bin Mahfouz Are Barred By Well-Settled Principles of Corporate Law.

It is black-letter law that "[a]n officer's liability is not based merely on the officer's position in the corporation; it is based on the officer's behavior and whether that behavior indicates that the tortious conduct was done within the officer's area of affirmative official responsibility and with the officer's consent or approval." *Lawlor v. Dist. of Columbia*, 758 A.2d 964, 977 (D.C. 2000) (reversing trial court's determination that corporate officer was personally liable for acts of corporation).[15] Because plaintiffs must plead facts sufficient to

---

[15]    *See also, e.g., Felder v. R & K Realty*, 744 N.Y.S.2d 213, 214 (2d Dep't 2002) ("[A] corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it.") (quotation omitted); *Am. Feeds & Livestock Co. v. Kalfco, Inc.*, 540

overcome the presumption against officer liability, failure to do so (as here) warrants dismissal pursuant to Rule 12(b)(6) or corresponding state rules.[16] Here, nothing in Plaintiffs' Complaints hints – much less actually alleges facts to infer – that Mr. Bin Mahfouz "knowingly participated in," "authorized," or even knew of the allegedly tortious conduct of Blessed Relief or NCB. *Am. Feeds & Livestock Co.*, 540 N.Y.S.2d at 355. Thus, dismissal of Plaintiffs' claims is warranted.

### C.   Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin Mahfouz

Plaintiffs in *Federal Insurance*, *Continental Casualty*, and *New York Marine* have brought civil RICO claims against Mr. Bin Mahfouz for violations of 18 U.S.C. § 1962(a), (c), and/or (d). This Court has already articulated the elements and standards that apply to those claims. *Terrorist Attacks I*, 349 F. Supp. 2d at 826-28. The RICO claims against Mr. Bin Mahfouz fail for the same reasons the Court has applied to claims against other defendants.

**Section 1962(a).** Several of the Plaintiffs groups assert § 1962(a) claims, but they have failed to allege the essential element of investment injury. As this Court has already held, under § 1962(a) the plaintiff must allege that its injury resulted from the defendant's *investment* of racketeering income, not simply participation in the alleged racketeering activity itself. *Terrorist Attacks I,* 349 F. Supp. 2d at 827; *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990); *Morin v. Trupin*, 832 F. Supp. 93, 99 (S.D.N.Y. 1993). Plaintiffs uniformly allege that their damages were caused by the alleged "pattern of racketeering activity,"[17] *not*

---

N.Y.S.2d 354, 355 (3d Dep't 1989) ("In general, a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong . . . .").

[16]    *See, e.g., DiNardo v. L & W Indus. Park of Buffalo, Inc.*, 425 N.Y.S.2d 704, 705 (4th Dep't 1980) (dismissing plaintiffs' tort claims against corporate officer, because "[p]laintiffs' pleadings contain no allegations that there was tortious conduct on the part of appellant which was separate from his conduct as officer and director" of the corporate defendant)

[17]    *See, e.g., Fed. Ins.* ¶¶ 619-20; *Fed. Ins.* Am. RICO Stmt. ¶¶ 5(g), 7; *Continental Cas.* ¶¶ 610, 615-16; *Continental Cas.* RICO Stmt. ¶ 5(f); *N.Y. Marine* ¶¶ 517-18.

Defendants' investment of any income they allegedly received from that racketeering activity. The claims thus fail as a matter of law. *See Terrorist Attacks I*, 349 F. Supp. 2d at 827.

**Section 1962(c).**  Plaintiffs' § 1962(c) RICO claims also fail.  Assuming for the sake of argument, as this Court did, that Plaintiffs have adequately pled a RICO enterprise, *see Terrorist Attacks I*, 349 F. Supp. 2d at 827, Plaintiffs have nevertheless not alleged that Mr. Bin Mahfouz played "'some part in directing' the 'operation or management'" of that enterprise.  *Id.* (quotation omitted).  Plaintiffs cannot satisfy that "extremely rigorous test" here.  *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004).  Plaintiffs' § 1962(c) claims against Mr. Bin Mahfouz rest on nothing more than conclusory allegations.  Plaintiffs do not allege that Mr. Bin Mahfouz was a leader or direct participant in al Qaeda.  Instead, they allege, at most, that Mr. Bin Mahfouz indirectly facilitated financial assistance to the al Qaeda enterprise through his alleged positions with Blessed Relief and NCB.[18]  Even were that true, it is not enough: "'A Defendant does not "direct" an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.'"  *Terrorist Attacks I*, 349 F. Supp. 2d at 828 (internal citation omitted).

**Section 1962(d).**  Plaintiffs' § 1962(d) claims fail on similar grounds.  "'[T]o state a claim under [§ 1962(d)], the complaint must allege some factual basis for a finding of a conscious agreement among the defendants.'"  *Terrorist Attacks I*, 349 F. Supp. 2d at 827 (internal citation omitted).  Plaintiffs here have not done so.  Although Plaintiffs allege in one form or another the bald conclusion that all Defendants generally conspired to commit acts of

---

[18]     *See Continental Cas.* RICO Stmt. ¶ 5(b) (alleging that Mr. Bin Mahfouz "intentionally provide[d] financial services" to Al Qaeda); id. ¶ 14 (alleging that Mr. Bin Mahfouz "laundered funds from so-called Islamic charities"); *Fed. Ins.* Am. RICO Stmt. Ex. A pp. 11 (alleging that Mr. Bin Mahfouz used his alleged position with Blessed Relief "to ensure that it served as an effective mechanism for raising and laundering funds" for Al Qaeda).

racketeering activity,[19] they offer no *facts* to support an inference that Mr. Bin Mahfouz consciously *agreed* with other Defendants to commit any acts in furtherance of the alleged al Qaeda RICO conspiracy.

### D.   Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred by The First Amendment of the United States Constitution

Plaintiffs' attempt to impose "guilt by association" upon Mr. Bin Mahfouz, solely based on his alleged affiliations, also runs afoul of the First Amendment, which shields core speech or association from civil[20] or criminal liability.  *See, e.g., Scales v. United States*, 367 U.S. 203, 228-30 (1961); *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974).

Under the First Amendment, the Supreme Court has held that "[c]ivil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982).[21] Further, "[w]hile the State legitimately may impose damages for the consequences of violent conduct, it may not award compensation for the consequences of nonviolent, protected activity." *Id.* at 918.  The Court held, moreover, that "*[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.*" *Id.* at 919-20 (noting also that the

---

[19]     *See, e.g., Fed. Ins.* Am. RICO Stmt. ¶ 5(g); *Continental Cas.* RICO Stmt. ¶ 5(f); *N.Y. Marine* ¶ 517.

[20]     The Supreme Court has long held that a court's application of rules of law to impose *civil* liability constitutes "state action" under the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964).

[21]     *See also, e.g., Healy v. James*, 408 U.S. 169, 185-86 (1972) ("[T]he Court has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization."); *United States v. Robel*, 389 U.S. 258, 265 (1967).

specific intent requirement must be judged "according to the strictest law") (quotation omitted).

In these cases, there exist no allegations of any kind regarding Mr. Bin Mahfouz's conduct or intent – instead, the only allegations against him are his purported associations with Blessed Relief and NCB. These allegations are simply constitutionally insufficient for liability of any kind.

Courts have repeatedly applied *Claiborne Hardware* to shield purely associational behavior from liability. In *McCoy v. Stewart*, 282 F.3d 626 (9th Cir. 2002), for example, the Ninth Circuit affirmed a habeas writ granted to a defendant whose conviction was "based solely on his speech to, and association with," a street gang. *Id.* at 629. Citing *Claiborne Hardware*, the court noted that the conviction "stray[ed] dangerously close to a finding of guilt by association." *Id.* at 633. The allegations in the Complaints at issue come closer than "dangerously close"—the *only way* in which they can state a claim is if Mr. Bin Mahfouz is held liable by association. So, too, in *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151 (3d Cir. 2001), the Third Circuit criticized the district court for "rel[ying] on generalized assertions . . . to permit an inference to be drawn of racial animus" by the neighbors of a minority-led institution. *Id.* at 164. The Third Circuit noted that the district court "completely ignored" *Claiborne Hardware*, *id.* at 163, and pointed out that "surely it is outrageous that [the plaintiff], while purportedly securing its own civil rights, brought a groundless action against the appellants thereby trampling their First Amendment rights." *Id.* at 165. The same principle

obtains here.  Redress for the horrific injuries of 9/11 cannot properly be made by fashioning spurious claims out of wholly protected First Amendment conduct.[22]

### E.   Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred By The Volunteer Protection Act, 42 U.S.C. §§ 14501 et seq.

At the risk of repetition, Plaintiffs' claims hinge upon Mr. Bin Mahfouz's alleged position as a "director" of Blessed Relief, a Channel Islands charitable organization.  Plaintiffs' Complaints nowhere allege that Mr. Bin Mahfouz actually *said or did* anything as director of that charity, or that he served in any other than a volunteer capacity.  Under the Volunteer Protection Act ("VPA"), 42 U.S.C. §§ 14501 *et seq*, civil liability cannot be imposed upon Mr. Bin Mahfouz solely on the basis of service as a volunteer officer of a nonprofit organization.[23]  This action therefore must be dismissed against Mr. Bin Mahfouz insofar as it derives from his purported relationship with Blessed Relief.

The VPA applies to "any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes and which does not practice any action which constitutes a hate crime."  42 U.S.C. § 14505(4)(B) (2000).[24]  Given that plaintiffs characterize Blessed Relief as a "charity," the VPA applies.

---

[22]   *See also, e.g.*, *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1286 (3d Cir. 1994) (defendant constitutionally could not be required to stand trial based solely on organizational membership); *Juhl v. Airington*, 936 S.W.2d 640, 642 (Tex. 1996) (police officer injured at demonstration could not recover from demonstrators based solely on their association with those who injured him).

[23]   The VPA evinces Congress's public policy determination that volunteer involvement in nonprofit organizations ought not to be discouraged by the threat of liability.  *See* 42 U.S.C. § 14501 (2000) (finding that the potential for liability actions has deterred volunteer activity).

[24]   The VPA refers to the Hate Crime Statistics Act, 28 U.S.C. § 534 note, for the definition of a hate crime.  Plaintiffs nowhere allege that Blessed Relief has practiced any such conduct.

The VPA defines "volunteer" to include an individual "serving as a director, officer, trustee, or direct service volunteer." 42 U.S.C. § 14505(6).  As an alleged former director of Blessed Relief, Mr. Bin Mahfouz falls squarely under the aegis of the VPA.  The VPA mandates that a volunteer shall not be liable for acts or omissions on behalf of the organization, done within the scope of the volunteer's responsibilities, if the harm was not caused by willful, criminal or reckless misconduct, gross negligence, or flagrant indifference to the rights or safety of others.  42 U.S.C. § 14503 (2000).  As plaintiffs allege no acts or omissions of *any* kind by Mr. Bin Mahfouz, they cannot state a claim against him.

The VPA explicitly preempts any state law that provides less protection from liability, 42 U.S.C. § 14502 (2000),[25] and the VPA also preempts federal law.[26]  No volunteer of a nonprofit organization shall be liable for "harm," defined as "physical, nonphysical, economic, and noneconomic losses."  42 U.S.C. §§ 14503(a), 14505(2).  Because Mr. Bin Mahfouz is only alleged to have been an officer and/or director of this charitable organization, none of the VPA's exceptions applies.  Accordingly, all of plaintiffs' claims against Mr. Bin Mahfouz run afoul of the VPA and should be dismissed.[27]

### F.    Plaintiffs Have Failed To State a Claim Under the Alien Tort Claims Act, the Torture Victim Protection Act, or Any State Law Cause of Action

Plaintiffs' remaining causes of action fail to state a claim against Mr. Bin Mahfouz for reasons largely addressed in the Court's prior decisions in *Terrorist Attacks I* and *II*.

---

[25]    "[T]he plain language of the statute . . . satisfies the Court that the VPA preempts state law . . . ."  *Armendarez v. Glendale Youth Ctr., Inc.*, 265 F. Supp. 2d 1136, 1139 (D. Ariz. 2003) (granting 12(b)(6) motion).

[26]    *See Armendarez*, 265 F. Supp. 2d at 1139 ("[t]he text of § 14502(a) cannot be interpreted to prevent the application of the VPA to federal law").

[27]    To the extent a volunteer *is* liable under the VPA, liability for noneconomic loss is limited to the amount in proportion to the percentage of responsibility of the defendant.  42 U.S.C. § 14504(b)(1).  The VPA thus prohibits joint and several liability for volunteers such as Mr. Bin Mahfouz, and requires a "separate judgment against each defendant."  *Id.*

First, the *Ashton* Plaintiffs' Torture Victim Protection Act ("TVPA") claims must be dismissed because they fail to allege that Mr. Bin Mahfouz acted under color of law, as the TVPA requires. *See Terrorist Attacks I*, 349 F. Supp. 2d at 828.  Second, the *Federal Insurance* Plaintiffs' common law intentional tort claims are time-barred for reasons this Court has already addressed. *See Terrorist Attacks I*, 349 F. Supp. 2d at 829 (internal citation omitted); *Terrorist Attacks II*, 2005 WL 2296673, at *20.

Third, the Plaintiffs' negligence claims should be dismissed for failing to "allege or identify a duty owed to Plaintiffs" by Mr. Bin Mahfouz.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 831; *see also Terrorist Attacks II*, 2005 WL 2296673, at *20 (dismissing negligence claims against various defendants on same grounds).[28]  Fourth, the Plaintiffs' intentional tort claims also should be dismissed.  Those tort claims fail to allege (as they must) Mr. Bin Mahfouz's direct involvement in the 9/11 attacks, or that Mr. Bin Mahfouz personally directed any conduct at the plaintiffs themselves.

---

[28]    Several Plaintiffs also listed counts for punitive damages in their complaints.  Punitive damages, however, are merely a form of relief, not an independent cause of action, and should be dismissed to the extent they are presented as such.  *Mayes v. UVI Holdings, Inc.*, 723 N.Y.S.2d 151, 157 (1st Dep't 2001).

## CONCLUSION

For the foregoing reasons, the claims asserted against Mr. Bin Mahfouz in *Ashton*, *Federal Insurance*, *Continental Casualty*, and *New York Marine* should be dismissed with prejudice.

Dated:  October 28, 2005                              Respectfully submitted,

                                                      WILLIAMS & CONNOLLY LLP


                                                      By: *Peter J. Kahn /gc*
                                                      _____
                                                          Gerald A. Feffer (GF-2179)
                                                          Peter J. Kahn (PK-3611)
                                                          John L. Cuddihy (JC-4015)

                                                      725 Twelfth Street, N.W.
                                                      Washington, D.C.  20005
                                                      (202) 434-5000

                                                      Attorneys for Defendant Abdulrahman
                                                      Bin Mahfouz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------X
                                        :
                                        :          03 MDL 1570 (RCC)
                                        :          ECF CASE
IN RE TERRORIST ATTACKS ON              :
    SEPTEMBER 11, 2001.                 :
                                        :
-------------------------------------------------------X
```

*This Order relates to:*

> *Kathleen Ashton v. Al Qaeda Islamic Army, et al., 02-CV-6977 (RCC)*
> *Federal Insurance Company v. Al Qaeda Islamic Army, et al., 03-CV-6978 (RCC)*
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al., 04-CV-05970 (RCC)*
> *New York Marine and General Insurance Co. v. Al Qaida, et al., 04-CV-6105 (RCC)*

## ORDER GRANTING ABDULRAHMAN BIN MAHFOUZ'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINTS WITH PREJUDICE

This matter is before the Court upon the Motion of Defendant Abdulrahman Bin Mahfouz ("Mr. Bin Mahfouz") for an Order dismissing with prejudice each of the claims asserted against him in the Sixth Amended Complaint in *Ashton*; the First Amended Complaint in *Federal Insurance*; the Second Amended Complaint in *Continental Casualty*; and the Second Amended Complaint in *New York Marine*.  Upon consideration of the Motion and the record of the above-captioned actions, it is hereby

**ORDERED** that Mr. Bin Mahfouz's Motion to Dismiss be and hereby is **GRANTED**; and

It is **FURTHER ORDERED** that Mr. Bin Mahfouz is dismissed with prejudice from each of the above-captioned actions.

**DONE AND ORDERED** on this _____ day of _____, 2005.

_____
The Honorable Richard Conway Casey
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that, on the 28th day of October, 2005, I caused true and correct copies of the foregoing "Motion of Defendant Abdulrahman Bin Mahfouz to Dismiss Plaintiffs' Complaints With Prejudice," memorandum in support, and proposed Order, to be filed and served electronically via the Court's ECF system.

John L. Cuddihy