## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*EuroBrokers Inc. v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

---

**MEMORANDUM OF LAW OF TAHA AL-ALWANI, MUHAMMED ASHRAF, M. OMAR ASHRAF, IQBAL UNUS, MOHAMMED JAGHLIT, AHMED TOTONJI AND YAQUB MIRZA IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY ....................................................................................3

    I.      THE COURT'S JANUARY 18, 2005 DECISION .................................................3

    II.     THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER......................4

ARGUMENT...........................................................................................................6

    I.      PLAINTIFFS' "AMENDED" PLEADINGS .........................................................6

          A.     THE "AMENDED" PLEADINGS DO NOT COMPLY WITH THE COURT'S CASE MANAGEMENT ORDER ...........................................6

          B.     THE "AMENDED" PLEADINGS STILL DO NOT PROVIDE THE MOVING DEFENDANTS WITH ANY NOTICE ....................................9

    II.     PLAINTIFFS' AMENDED PLEADINGS SHOULD BE DISMISSED FOR FAILURE TO STATE CLAIMS ........................................................10

          A.     THE ALLEGATIONS IN THE "AMENDED" PLEADINGS ................10

          B.     THESE ALLEGATIONS FAIL TO STATE CLAIMS AGAINST ANY OF THE MOVING DEFENDANTS........................................................17

CONCLUSION .....................................................................................................24

## TABLE OF AUTHORITIES

**CASES**

*Boim v. Quranic Lit. Inst.*, 291 F.3d 1000 (7th Cir. 2002) ............................................22

*DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ......................................22

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) .........................................................8

*Gordon v. Green*, 602 F.2d 743 (5th Cir. 1979) ..............................................................8

*Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*,
 408 F. Supp. 1251 (S.D.N.Y. 1976) .............................................................................21

*In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673
 (S.D.N.Y. Sept. 21, 2005) ....................................................................................passim

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765
 (S.D.N.Y. 2005) .....................................................................................................passim

*Jackson v. BellSouth Telecomms.*, 372 F.2d 1250 (4th Cir. 2004) ................................22

*Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437 (8th Cir. 1983) ..........................8

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) ................................8

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) ............7

**OTHER**

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)......................................................8

Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza (the "Moving Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Law in Support of their Motions to Dismiss all of the claims asserted against each of them in *Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center*[1] pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

## PRELIMINARY STATEMENT

The Moving Defendants are seven U.S. citizens and scholars, teachers and businessmen who are moderate and progressive voices in American Islam, who denounce and teach against all forms of terrorism. The claims against the Moving Defendants should be dismissed from these actions because they have never supported Al Qaida nor assisted or funded terrorism of any kind, and none of the Plaintiffs have alleged that they have done so.

Plaintiffs' primary basis for claiming liability against the Moving Defendants is their alleged involvement in the so-called "SAAR Network."[3] But on January 18, 2005, the Court, in considering the *Federal Insurance* Plaintiffs' allegations as to the existence of a so-called "SAAR Network," found that the *Federal Insurance* Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. September 21, 2005) ("*In re Terrorist Attacks I*").

---

[1] On October 18, 2005, Mohammed Jaghlit and Ahmed Totonji moved to dismiss the claims in the *Federal Insurance* action. For the Court's convenience, attached hereto as Exhibit A, is a chart showing the status of all of the Moving Defendants in *Burnett, Federal Insurance, New York Marine, Euro Brokers, Continental* and *World Trade Center.*

[2] In *Burnett*, the Moving Defendants are moving to dismiss the claims in the Third Amended Complaint; in *New York Marine* the Second Amended Complaint; in *Euro Brokers* the Complaint; in *Continental* the Second Amended Complaint; and in *World Trade Center* the Complaint. As discussed *infra.* at 6, the Moving Defendants object to all of these complaints for violating the Court's Case Management Order 2.

[3] The Court has used the phrase "SAAR Network Defendants" solely for convenience, and not because Plaintiffs have alleged the existence of such a network. *In re Terrorist Attacks II,* at n. 15.

The Court took that analysis to its logical conclusion in its recent September 21, 2005 Opinion and Order, and dismissed the claims against five of the Moving Defendants, Muhammad Ashraf, M. Omar Ashraf, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza,[4] in the *Federal Insurance* action.[5] Reviewing allegations that are similar to -- or in many instances weaker than -- the allegations at issue here, the Court dismissed these individuals because "the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 at *27 (S.D.N.Y. September 21, 2005) (*"In re Terrorist Attacks II"*).[6]

These rulings compel the dismissal of all of the claims against all of the Moving Defendants in these cases. Five of the seven Moving Defendants already have been dismissed in *Federal Insurance*. The other two, Mohammed Jaghlit and Ahmed Totonji, recently have moved to dismiss the *Federal Insurance* action, and the claims against them should be dismissed not only in that action, but in these actions as well, because these allegations are no different than the vague and conclusory allegations the Court already found do not state a claim in *Federal Insurance*. Since the Court's September 21, 2005 Opinion, each plaintiff has filed an "amended" or "consolidated" pleading with the benefit of explicit guidance from the Court concerning precisely what they must allege to survive a motion to dismiss. Yet, the "amended" pleadings still do not state claims against any of the Moving Defendants.

---

[4] The claims against Taha Al-Alwani and Yaqub Mirza were voluntarily dismissed by the *Burnett* Plaintiffs in January 2005.
[5] Those motions to dismiss were filed separately from those addressed here because at the time the initial motions to dismiss were filed, not all of the Moving Defendants had yet to be served in all of the actions.
[6] The Court also dismissed the so-called "SAAR Network Entities" African Muslim Agency, Grove Corporate, Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action because the allegations in that complaint did not provide "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." The Court also dismissed IIIT from *Ashton*, and Mar-Jac Poultry from *Ashton*, *Burnett* and *Federal Insurance*. *Id.* at *25, 30.

Simply put, Plaintiffs have not and cannot assert that the Moving Defendants ever have knowingly or intentionally supported Al Qaida or any form of terrorism. Because Plaintiffs have failed to come forward with even a single factual allegation connecting any one of the Moving Defendants with terrorism financing or the events of September 11, 2001, the complaints fail to state claims against each and every Moving Defendant and must be dismissed.

## PROCEDURAL HISTORY

### I.    THE COURT'S JANUARY 18, 2005 DECISION

On January 18, 2005, the Court ruled on motions to dismiss made by numerous defendants, including the motions filed by some of the so-called "SAAR Network Defendants" to dismiss the *Federal Insurance* complaint for lack of personal jurisdiction and pursuant to Rule 12(b)(6). The Court considered all of the *Federal Insurance* complaint's allegations concerning the existence of a so-called "SAAR Network" -- allegations identical to those asserted in these actions -- and concluded that Plaintiffs had "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, at 823.

But the Court found that its "analysis of the [Defendant's] arguments in favor of 12(b)(6) dismissal depend[ed] on a predicate finding of which entities are subject to this Court's personal jurisdiction and which entities--and under what circumstances--transferred money to terror fronts." *Id.* at 837. Accordingly, the Court denied the Defendants' Rule 12(b)(6) motion to dismiss without prejudice but noted that it could be "renewed upon completion of personal jurisdiction discovery." *Id.* The Court also dismissed Plaintiffs' claims for Civil RICO, the Torture Victim Protection Act, assault and battery, intentional infliction of emotional distress and negligence. *Id.* at 837-38.

## II.     THE COURT'S SEPTEMBER 21, 2005 OPINION AND ORDER

On September 21, 2005, the Court issued another Opinion and Order relevant to these proceedings. This time the Court dismissed the *Federal Insurance* claims against five of the Moving Defendants and so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani, Iqbal Unus and Yaqub Mirza. The Court also dismissed the claims against eight so-called "SAAR Network Entities," African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation in the *Burnett* action, and dismissed the claims against IIIT from *Ashton* as well. *In re Terrorist Attacks II*, at *30.[7]

As an initial matter, the Court dismissed all of the Torture Victim Protection Act ("TVPA") and negligence claims against all of the Defendants moving for dismissal under Rule 12(b)(6). *Id.* at *21. The Court also dismissed all of the *Federal Insurance* Plaintiffs' claims for assault and battery and intentional infliction of emotional distress. *Id.* The Court noted that it would review each complaint individually to determine whether each stated a claim for relief under the Antiterrorism Act ("ATA") and RICO. The Court noted that if "Plaintiffs state a claim for relief under the ATA, they will have also stated a claim for wrongful death and survival, the *Federal* Plaintiffs will have stated a claim for trespass, and the *Ashton* and *Burnett* Plaintiffs will have stated claims for intentional infliction of emotional distress. Plaintiffs who are aliens will have also stated a claim for relief under the [Alien Tort Claims Act]." *Id.*

---

[7] The Court dismissed the claims against another purported "SAAR Network Entity" Mar-Jac Poultry, from *Ashton, Burnett* and *Federal Insurance*. *Id.* After reviewing the allegations against Mar-Jac, including those allegations in the *Federal Insurance* RICO Statement applicable to SAAR Network Entities that alleged Mar-Jac Poultry donated money to African Muslim Agency which the Plaintiffs claim was later "laundered," and that it donated money to unnamed SAAR Network Entities that was later forwarded to al Qaeda, the Court dismissed the RICO claim against Mar-Jac Poultry because Plaintiffs did not allege that Mar-Jac had any role in directing an enterprise. *Id.* *25. The Court dismissed the remainder of the claims because the complaints did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.*

The Court analyzed the allegations against the "SAAR Network Defendants," noting that Plaintiffs' claims against the "SAAR Network Entities" in both the *Ashton* and *Burnett* actions "rely primarily on their allegations against the 'SAAR Foundation and network.'" *Id.* at *24. Plaintiffs alleged that the "SAAR Network" was formed "by a group of Muslim scholars and scientists" and that its "largest donor is the al Rajhi family of Saudi Arabia." *Id.* The complaints further alleged that many of the "SAAR Network" organizations' offices in Herndon were raided in March 2002 as part of Operation Greenquest to investigate "potential money laundering and tax evasion activities and their ties to terrorist groups such as ... al Qaeda as well as individual terrorists ... (including) Osama bin Laden."[8] *Id.* These general and conclusory allegations are similar, if not identical, to the allegations that the Moving Defendants face in the actions at issue in this motion.

The Court dismissed the *Federal Insurance* claims against the Moving Defendants, Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, Iqbal Unus and Yaqub Mirza, because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* at *27.[9]

---

[8] Plaintiffs seek to infer liability against the Moving Defendants from the existence of this highly publicized mass raid. That raid, however, occurred over three and a half years ago and during that time the government has not handed down one indictment, made one arrest, designated any Moving Defendant as a sponsor of terrorism or frozen or seized a single account or asset. To the contrary, the government has returned to the Moving Defendants all of the hundreds of boxes of documents and dozens of computers it confiscated during the raid. The only reasonable inferences that can be drawn from the government's investigation and raid is that it has failed to yield even a single iota of evidence showing that any of the Moving Defendants are part of a "SAAR Network" or have anything to do with funding or supporting terrorism.

[9] The Court also found that Plaintiffs' allegations against another so-called "SAAR Network Executive," Jamal Barzinji, provided Mr. Barzinji with "sufficient notice of the claims against him regarding his alleged provision of material support in the form of financial transactions to al Qaeda." *In re Terrorist Attacks II,* at *27.

The Court dismissed the *Burnett* Plaintiffs' claims against the "SAAR Network Entities" because these allegations were only a "legal conclusion that the SAAR Network entities conspired with the SAAR Network" and Plaintiffs failed to provide Defendants with "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based." *Id.* at *25. The *Ashton* complaint against IIIT was dismissed by the Court because, although it contained the additional allegation that IIIT financed two charities, the complaint did not allege that IIIT knew that the charities it allegedly financed "were Islamic Jihad cells or whether and how these cells participated in or contributed to al Qaeda's agenda of terror." *Id.*

## ARGUMENT

**I.     PLAINTIFFS' "AMENDED" PLEADINGS**

**A.     THE "AMENDED" PLEADINGS DO NOT COMPLY
WITH THE COURT'S CASE MANAGEMENT ORDER**

On -- or in the case of the *Continental* Plaintiffs, a week after -- September 30, 2005, each of the Plaintiffs filed an "amended" or "consolidated" pleading, purportedly in compliance with paragraph 13 of the Court's Case Management Order #2 (the "CMO-2"). That provision of the CMO-2 states in pertinent part that:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously-filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint. On [September 30,][10] 2005, the plaintiffs shall file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise.

Each of the Plaintiffs' "amended" or "consolidated" pleadings fails to comply with the CMO-2. For example, the *Burnett, Euro Brokers* and *World Trade Center* Plaintiffs all filed

what they styled as a "Notice Of Consolidation Of Pleadings." These Notices list approximately 50 documents each. These exhibits total hundreds of pages, and include not only Plaintiffs' complaints, but also RICO Statements[11] and More Definite Statements directed at various parties. Plaintiffs claim that each document on this list comprises their "consolidated complaints." The *New York Marine* Plaintiffs, on the other hand, simply attached numerous RICO Statements -- some from other cases such as *Federal Insurance* -- to their complaint, and purported to incorporate the allegations in those RICO Statements into the complaint by reference. The *Continental* plaintiffs took another route. Not only was the *Continental* complaint filed on October 6, 2005, a week late, it is an obvious, and poorly done, "cut and paste" job. It contains a 250-page "addendum" which is single spaced, contains predominantly unnumbered paragraphs (although some are numbered) and duplicative allegations and is in a variety of fonts and formats.

Each of these "amended" and "consolidated" complaints violates not only the CMO-2 that clearly contemplates the filing of a single complaint in each case, but also Fed. R. Civ. P. 10 which requires complaints to list their allegations in sequentially numbered paragraphs. Moreover, the attachments, exhibits and documents incorporated by reference to each of these "amended" or "consolidated" pleadings violates Rule 8's requirement of a "short and plain" statement, and imposes a burden on both the defendants and the Court to determine exactly what is being alleged against whom that the CMO-2 was specifically designed to prevent. *See, e.g., Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A

---

[10] The Case Management Order originally provided for amended complaints to be filed by July 31, 2005. That date was extended until September 30, 2005 by Order of the Court dated July 27, 2005.

[11] The Moving Defendants note that many of the RICO Statements attached to Plaintiffs' complaints in these actions were filed late. *See* CMO-2, ¶ 14. However, because none of the RICO Statements made applicable to any of the (footnote continued on next page)

complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation."); *Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) (dismissing complaint because "the style and prolixity of these pleadings would have made an orderly trial impossible."); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) ("The appellees herein have had to spend a large amount of time and money defending against Cissna's poorly drafted proceedings . . . The right of these defendants to be free from this costly and harassing litigation . . . must be considered."); *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) ("the law does not require, nor does justice demand, that a judge must grope through (thousands of) pages of irrational, prolix and redundant pleadings.") (citation and quotation omitted).

Therefore, the Court should strike all of the addendums, attachments and exhibits to any of these pleadings, and any document that is incorporated into any pleading by reference, and only should consider those allegations that are contained in the actual complaints filed by Plaintiffs. Alternatively, the Court should consider dismissal of the actions for failure to comply with the CMO-2. *See, e.g.*, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (district courts have "inherent power to control their dockets and, in the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal of a case") (citations and quotation omitted); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (courts should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document.")

---

Moving Defendants contains a single substantive allegation against any of the Moving Defendants, they will not object to their late filing at this time.

## B.   THE "AMENDED" PLEADINGS STILL DO NOT PROVIDE THE MOVING DEFENDANTS WITH ANY NOTICE

Even if the Court were to consider all allegations in Plaintiffs' "amended" pleadings, Plaintiffs still have failed to state a claim because they do not address the pleading deficiencies noted by the Court in its Opinions.  In its January Opinion, the Court found that Plaintiffs had provided "scant" basis for linking defendants under a "SAAR Network" title, *In re Terrorist Attacks I*, at 823, and stated that the "SAAR Network" Defendants' liability would be predicated on "which entities--and under what circumstances--transferred money to terror fronts." *Id.* at 837.  But, none of the "amended" pleadings contain any single new or additional allegation that provides an additional basis for linking any of the Moving Defendants to a "SAAR Network." Nor do the "amended" pleadings assert that any of the Moving Defendants transferred any money to a terrorist front or knowingly participated in the transfer of funds from any entity to a terrorist front.

In its September Opinion, the Court provided Plaintiffs with further guidance, holding that the *Federal Insurance* Plaintiffs failed to "provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II* at *27. Nevertheless, even with this road map, not one of the Plaintiffs added a single new factual allegation that provides the Moving Defendants with notice of the claims against them.  Instead, Plaintiffs continue to rely on allegations the same as, or similar to, those the Court already found to be insufficient.

## II.   PLAINTIFFS' AMENDED PLEADINGS SHOULD BE DISMISSED FOR FAILURE TO STATE CLAIMS

### A.   THE ALLEGATIONS IN THE "AMENDED" PLEADINGS

#### 1.   TAHA AL-ALWANI[12]

The Court dismissed the claims against Taha Al-Alwani in *Federal Insurance*, and Plaintiffs voluntarily dismissed the claims against him in *Burnett*.  He moves now to dismiss the claims asserted against him in the *New York Marine* Complaint.  There he is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." (¶ 45.)  He is also alleged to be "an officer of various entities associated with defendant SAAR Foundation."  (RICO Statement Applicable to Taha Al-Alwani, ¶5(b).)

#### 2.   MUHAMMAD ASHRAF

The Court dismissed the claims against Muhammad Ashraf in *Federal Insurance*.  He now moves to dismiss *Burnett*, *New York Marine*, *Euro Brokers*, *Continental* and *World Trade Center*.

In the *Burnett* Complaint, Muhammad Ashraf is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network."  (¶ 267.)

In the *New York Marine* Complaint, Muhammad Ashraf is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." (¶ 45.)

---

[12] Taha Al-Alwani was also served with a copy of the Compliant in to *The Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04 CV 1076 (RCC)  He intends to move to dismiss that action by separate motion.

In the *Euro Brokers* Complaint, Muhammad Ashraf is only listed in the caption. He is also alleged to be an "officer and/or director of many of the SAAR Network Entities." (RICO Statement, docket number 699, at Ex. A.)

In the *Continental* Complaint, Muhammad Ashraf is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)   In the "addendum" to the Complaint, he is also alleged to be an "officer and/or director of many of the SAAR Network Entities." (p. 378.)

In the *World Trade Center* Complaint, Muhammad Ashraf is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network." (¶ 441.) He also alleged to be an "officer and/or director of many of the SAAR Network Entities." (RICO Statement, docket number 702, at Exhibit A.)

### 3.    M. OMAR ASHRAF

The Court dismissed the claims against M. Omar Ashraf in *Federal Insurance.* He now moves to dismiss *Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center.*

In the *Burnett* Complaint, M. Omar Ashraf is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network." (¶ 267.)

In the *New York Marine* Complaint, M. Omar Ashraf is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." (¶ 45.) He is also alleged to have "lent material support to Al Qaida." (RICO Statement Applicable to M. Omar Ashraf, ¶5(b).)

In the *Euro Brokers* Complaint, M. Omar Ashraf is only listed in the caption. He is also alleged to be a "director or officer of many of the SAAR Network Entities." (RICO Statement, docket number 699, at Ex. A.)

11

In the *Continental* Complaint, M. Omar Ashraf is alleged to be a "[c]o-conspirator[],
material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)   In the
"addendum" to the Complaint, he is also alleged to be a "director or officer of many of the
SAAR Network Entities."  (p. 379.)

In the *World Trade Center* Complaint, M. Omar Ashraf is alleged to be one of the "[c]o-
conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and
enterprise of the SAAR Network." (¶ 441.)  He also alleged to be a "director or officer of many
of the SAAR Network Entities."  (RICO Statement, docket number 702, at Exhibit A.)

### 4.   IQBAL UNUS

The Court dismissed the claims against Iqbal Unus in *Federal Insurance.*  He now moves
to dismiss *Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Burnett* Complaint, Iqbal Unus is alleged to be one of the "[c]o-conspirators,
material sponsors, and/or aiders and abettors of the SAAR Network." (¶ 267.)

In the *New York Marine* Complaint, Iqbal Unus is alleged to "have aided and abetted,
conspired with, and provided material support and resources to, defendant al Qaida and/or
affiliated FTOs, associations, organizations or persons." (¶ 45.)

In the *Euro Brokers* Complaint, Iqbal Unus is only listed in the caption.  He is also
alleged to be a "director of the Child Development Foundation, a SAAR Network Entity" and
associated with "Sterling Charitable Gift Fund and Sterling Management Group."  (RICO
Statement, docket number 699, at Ex. A.)

In the *Continental* Complaint, Iqbal Unus is alleged to be a "[c]o-conspirator[], material
sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)   In the "addendum" to
the Complaint, he is also alleged to be a "director of the Child Development Foundation, a

SAAR Network Entity" and associated with "Sterling Charitable Gift Fund and Sterling Management Group." (p. 380.)

In the *World Trade Center* Complaint, Iqbal Unus is alleged to be one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network." (¶ 441.)  He is also alleged to be a "director of the Child Development Foundation, a SAAR Network Entity" and associated with "Sterling Charitable Gift Fund and Sterling Management Group." (RICO Statement, docket number 702, at Exhibit A.)

### 5.    MOHAMMED JAGHLIT

Mohammad Jaghlit's motion to dismiss the claims against him in *Federal Insurance* is pending.  He is moving to dismiss *Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Burnett* Complaint, Mohammad Jaghlit is alleged to be one of the "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network." (¶ 267.)

In the *New York Marine* Complaint, Mohammad Jaghlit  is alleged to "have aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons." (¶ 45.)

In the  *Euro Brokers* Complaint, Mohammad Jaghlit is only listed in the caption.  He is also alleged to be an officer of Safa Trust, to "control" Heritage Education Trust, and to be "Chief Financial Officer and a director of numerous of the SAAR Network Entities." (RICO Statement, docket number 699, at ¶ 5(f) and Ex. A.)

In the *Continental* Complaint, Mohammad Jaghlit is alleged to be a "[c]o-conspirator[], material sponsor[], and/or aider[] and abettor[] of the SAAR network." (¶ 473.)   In the

13

"addendum" to the Complaint, he is also alleged to be a "an officer or director of numerous of the SAAR Network Entities." (p. 380.)

In the *World Trade Center* Complaint, Mohammad Jaghlit is alleged to be the Treasurer and Director of the SAAR Foundation (¶ 215), and one of the "[c]o-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network" (¶ 441). He is also alleged to be an officer of Safa Trust, to "control" Heritage Education Trust, and to be "Chief Financial Officer and a director of numerous of the SAAR Network Entities." (RICO Statement, docket number 702, at ¶ 5(f) and Ex. A.)

### 6.  AHMED TOTONJI

Ahmed Totonji's motion to dismiss the claims against him in *Federal Insurance* is pending. He is moving to dismiss *Burnett, New York Marine, Euro Brokers, Continental* and *World Trade Center*.

In the *Burnett* Complaint, it is alleged that Ahmed Totonji is a co-conspirator, material sponsor, and/or aider and abettor of the SAAR Network. (¶ 267.)

In the *New York Marine* Complaint, it is alleged that Ahmed Totonji aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons. (¶ 45.)

In the *Euro Brokers* Complaint, Ahmed Totonji is only mentioned in the caption. In the *Euro Brokers* RICO Statement, it is alleged that Totonji is an officer of Safa Trust, "controlled" IIIT, and is Chief Financial Officer and director of numerous SAAR Network Entities, including SAAR Foundation, IIIT and Safa Trust. (RICO Statement, docket entry 699, at ¶ 5(f) and Ex. A.)

In the *Continental* Complaint, it is alleged that Ahmed Totonji is a co-conspirator, material sponsor, and/or aider and abettor of the SAAR network. (¶ 473.) In the "addendum" to

the complaint, it is alleged that: 1) as early as 1978, Ahmed Totonji served as an officer of SDGT Nada International Anstalt, one of SDGT Youssef Nada's organizations based in Riyadh, Saudi Arabia (p. 342); and 2) Ahmed Totonji was Chief Financial Officer and a director of numerous of the SAAR Network Entities, including, SAAR Foundation, International Institute of Islamic Thought, and Safa Trust (p. 380).

In the *World Trade Center* Complaint, it is alleged that Ahmed Totonji is a co-conspirators, material sponsors, aiders, abettors, and participants in the illicit scheme and enterprise of the SAAR Network (¶ 441). In the *World Trade Center* RICO Statement, it is alleged that Totonji is an officer of Safa Trust, "controlled" IIIT and was Chief Financial Officer and director of numerous SAAR Network Entities, including SAAR Foundation, IIIT and Safa Trust. (RICO Statement, docket entry 702, at ¶ 5(f) and Ex. A.)

### 7.     YAQUB MIRZA

The Court dismissed the claims against Yaqub Mirza in *Federal Insurance*. The Plaintiffs voluntarily dismissed the claims against Yaqub Mirza in *Burnett*. Dr. Mirza now moves to dismiss the claims asserted against him in *New York Marine*, *Euro Brokers*, *Continental* and *World Trade Center*.[13]

In the *New York Marine* Complaint, it is alleged that Yaqub Mirza aided and abetted, conspired with, and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons. (¶ 45.)

In the *Euro Brokers* Complaint, Yaqub Mirza is only mentioned in the caption. In the *Euro Brokers* RICO Statement, it is alleged that Mirza served as an officer and/or director of

---

[13] The *Euro Brokers* and *World Trade Center* Plaintiffs have continued to assert claims against Yaqub Mirza even though their lawyers, who also represent the *Burnett* plaintiffs, voluntarily dismissed their claims against Yaqub Mirza in *Burnett*, essentially conceding that they had no claim against him.

African Muslim Agency, York International and Mar-Jac Poultry and that he directed Mar-Jac's profits through a series of entities to a shell company in the Isle of Man where they could no longer be tracked.  (*Euro Brokers* RICO Statement, docket number 699, at ¶ 5(f).)[14]

In the *Continental* Complaint, it is alleged that: 1) Yaqub Mirza is a co-conspirator, material sponsor and/or aider and abettor and member of the terrorist enterprise of the IIRO (¶ 454); and 2) Yaqub Mirza is the secretary/treasurer of the Muslim World League ("MWL") office in Virginia, is the financial mastermind of the SAAR Network, that his house was raided in March, 2002 by federal authorities investigating his alleged connections to Al Qaeda and September 11, 2001 and that he is a conspirator and aider and abettor of the MWL (¶¶ 457, 459, 466).  In the "Addendum" to the Complaint it is alleged that: 1) Yaqub Mirza is on the board of the Amana Mutual Funds Trust, that he served as Vice President and then President of the SAAR Foundation from 1984-2000, that he registered the Defendant MWL in Virginia, and that Mirza was a founding trustee of Sana-Bell, Inc. (Addendum to Complaint, p. 342); 2) all of the tax matters of a company called BMI concerning Sana-Bell were sent to Yaqub Mirza (*id.* at 361); 3) Yaqub Mirza is on Ptech's Board of Directors, that he served as Vice President and then President of the SAAR Foundation from 1984- 2000, is the director of Sterling Advisory, is the President and CEO of Mar Jac Investments, Inc., and is involved with the Wahabbi Lobby (*id.* at 368-69, 400); and 4) Yaqub Mirza is an officer or director of numerous of the SAAR Network Entities, and is the principal signatory on Safa Group checks (*id.* at 379, 400).

In the *World Trade Center* Complaint, it is alleged that: 1) Yaqub Mirza and Yasin al Qadi were business partners in a company based in Boston, Massachusetts, called Ptech, Inc. (¶

---

[14] The *Euro Brokers* and *World Trade Center* RICO Statements are essentially identical to those filed by the *Federal Insurance* Plaintiffs that the Court already considered and found fail to state a claim against Yaqub Mirza. *In re Terrorist Attacks II*, at *27.

203); 2) Yaqub Mirza was President, Registered Agent, CEO and Trustee of the SAAR Foundation (¶ 215); 3) Yaqub Mirza was on the board of Sanabel, Inc. and in 2002, was an executive of Sanabel al-Kheer. (¶ 220); 4) Yaqub Mirza was a co-conspirator, material sponsor and/or aider and abettor and member of the terrorist enterprise of the International Islamic Relief Organization (¶ 385); 5) in 1998, Yaqub Mirza received two pieces of correspondence concerning Dr. Sulaiman Al-Ali's alleged involvement in Sana-Bell Al Kheir (¶¶ 402, 895); 6) Yaqub Mirza is secretary and treasurer of the MWL, is the financial mastermind of the SAAR Network and had his house raided in March, 2002 by federal authorities investigating his alleged connections to al Qaeda and September 11, 2001 (¶ 425, 427); 7) Yaqub Mirza is a co-conspirator, aider, abettor, and participant in the illicit scheme and enterprise of the Muslim World League (¶ 434); and 8) Yaqub Mirza is a co-conspirators, material sponsor, aider, abettor, and participant in the illicit scheme and enterprise of the SAAR Network (¶ 441).

In the *World Trade Center* RICO Statement it is alleged that Mirza served as an officer and/or director of African Muslim Agency, York International and Mar-Jac Poultry and that he directed Mar-Jac's profits through a series of entities to a shell company in the Isle of Man where they could no longer be tracked.  (*World Trade Center* RICO Statement, docket number 702, at ¶ 5(f).)

**B.      THESE ALLEGATIONS FAIL TO STATE CLAIMS AGAINST ANY OF THE MOVING DEFENDANTS**

**1.      TAHA AL-ALWANI, M. OMAR ASHRAF, MUHAMMAD ASHRAF, IQBAL UNUS AND MOHAMMED JAGHLIT**

The allegations detailed above against Taha Al Al-Alwani, M. Omar Ashraf, Muhammad Ashraf, Iqbal Unus and Mohammed Jaghlit are identical to -- but in many instances, weaker than -- the factual allegations that the *Federal Insurance* Plaintiffs asserted against the Moving

17

Defendants and that the Court already found fail to state a claim in its September 21, 2005 Opinion and Order. Accordingly, all of the claims against Taha Al Al-Alwani, M. Omar Ashraf, Muhammad Ashraf, Iqbal Unus and Mohammed Jaghlit should be dismissed, in all of these actions, because "reading the complaint[s] as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II,* at *27.

## 2. AHMED TOTONJI

There is only one additional allegation against Ahmed Totonji that differs from those made by the *Federal Insurance* Plaintiffs, the *Continental* Plaintiffs' allegation in the "addendum" to the Complaint that "as early as 1978, Ahmed Totonji served as an officer of SDGT Nada International Anstalt, one of SDGT Youssef Nada's organizations based in Riyadh, Saudi Arabia." (*Continental* Complaint "Addendum" at 342.) But, this allegation is insufficient to state a claim.

The Court has held that a defendant may be responsible for the September 11 attacks only *if Plaintiffs allege that he knowingly and intentionally provided material support to al Qaeda. See Terrorist Attacks I*, at 826 (emphasis added). But, even if Mr. Totonji had served as an officer in one of Yousef Nada's organizations over 25 years ago, as plaintiffs allege, the Complaint still fails to state a claim because it does not allege that, at that time, 1) Nada, or his organization, were engaged in terrorist activities; 2) that Mr. Totonji *knew* that Nada, or his organization, were engaged in terrorist activities -- indeed Nada was not designated as a financier of terrorism until after the September 11, 2001 attacks; 3) that Mr. Totonji transferred funds to Nada or knowingly or intentionally engaged in any other act to support Nada, or his

organization's activities; or 4) that he knowingly supported Al Qaeda or the September 11th attacks.

Even if Mr. Totonji was an officer in one of Yousef Nada's organizations in the 1970's, he could not possibly be liable for the September 11th attacks on this basis as Al Qaeda was not even formed until the 1980's. Plaintiffs have failed to allege -- because they cannot -- that Ahmed Totonji "knowingly and intentionally provided material support to al Qaeda." *See Terrorist Attacks I*, at 826. Consequently, they have not provided him with notice of how he allegedly provided material support to Al Qaeda terrorists. *In re Terrorist Attacks II*, at *27.

### 3.   YAQUB MIRZA

There are numerous allegations in Plaintiffs' "amended" pleadings against Yaqub Mirza that were not considered by the Court in dismissing the *Federal Insurance* claims.[15]  However, despite the Court's admonition that those Plaintiffs had provided "scant" basis for the existence of a "SAAR Network," the great bulk of the allegations against Dr. Mirza concern nothing more than his purported role in this ill-defined "SAAR Network." For example, Plaintiffs allege that Yaqub Mirza: served as an officer and/or director of various "SAAR Network Entities" (*Euro Brokers* RICO Statement and *World Trade Center* RICO Statement, at ¶ 5(f); *Continental* Addendum at 342, 368-69, 379, 400; *World Trade Center*, ¶¶ 215, 441); is the "financial mastermind" of the SAAR Network (*World Trade Center*, ¶¶ 425, 427); and directed SAAR Network funds through a series of entities to a shell company in the Isle of Man. (*Euro Brokers* RICO Statement, docket number 699, at ¶ 5(f).) These allegations are identical to those already considered by the Court in dismissing the *Federal Insurance* claims, and quite simply do not

---

[15] As discussed above, the Court should not even consider many of these allegations against Yaqub Mirza because the complaints they are contained in violate the Court's CMO-2 and the Federal Rules of Civil of Procedure. (*See supra.* at 6.)

"adequately provide [Dr. Mirza] with notice as to how [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, at *27.

None of the additional allegations against Dr. Mirza provide him with notice of Plaintiffs' claims either. Despite having knowledge of precisely what they must plead to state a claim, Plaintiffs have not alleged that Dr. Mirza transferred any money or funds to terrorists or sponsors of terrorism, or that he did anything else to aid Al Qaeda or assist in the September 11th attacks, let alone that he acted knowingly. *See In Terrorist Attacks I*, at 837 ("analysis of SAAR Network's arguments in favor of 12(b)(6) dismissal depend on a predicate finding of . . . which entities – and under what circumstances – transferred money to terror fronts.")

Instead, most of the additional allegations against Dr. Mirza are that he is an officer or director, or otherwise associated with, various entities that Plaintiffs allege are somehow responsible for the September 11th attacks. For example, Dr. Mirza is alleged to be: the secretary and treasurer of the MWL Virginia office and the one who registered the MWL in Virginia (*Continental*, ¶¶ 457, 459, 466 and Addendum at 342, 368-69, *World Trade Center*, ¶¶ 425, 427 and 434); a trustee on the board of Sana-Bell, Inc. (aka Sanabel, Inc.) and an executive of Sanabel al-Kheer (*World Trade Center*, ¶ 220, *Continental* Addendum at 342); on Ptech's Board of Directors (*Continental* Addendum at 368-69); on the Board of Amana Mutual Funds Trust (*Continental* Addendum at 342); and "involved" with the Wahabbi Lobby (*Continental* Addendum at 368-69).

But, none of these entities that Dr. Mirza allegedly is associated with are alleged to have done anything to intentionally support terrorism or aid in the September 11th attacks. For example, the *Continental* and *World Trade Center* Plaintiffs allege that Dr. Mirza is a director to the Virginia branch of MWL. But nowhere do these Plaintiffs allege that the Virginia branch of

20

the MWL -- as opposed to the Saudi based MWL -- did anything, let alone anything to aid Al

Qaeda or the September 11th attacks.  Similarly, Dr. Mirza is alleged to be a trustee of Sana-

Bell, Inc. and Sanabel Al-Kheer, Inc., the United States affiliates of the Saudi based Sanabil Al-

Khair.  (*Continental*, ¶ 453, *World Trade Center*, ¶¶ 384, 397.)  But again, Plaintiffs do not

allege that either Sana-Bell, Inc. or Sanabil Al-Kheer are alleged to have transferred funds to

terrorists or done anything to aid the September 11th attacks.[16]

Not only are the other entities that Dr. Mirza is allegedly associated with, Ptech, Amana

Mutual Funds and Wahabbi Lobby, not alleged to have done anything to support Al Qaeda or the

September 11th attacks, they are not even named as defendants.

To state a claim against Dr. Mirza as an officer or director of an entity, Plaintiffs must

allege that Dr. Mirza knowing and intentionally participated in some action on behalf of that

entity for which it could be held liable for the September 11th attacks.  But, Dr. Mirza is not

alleged to have done anything for any of these entities.  Rather, his alleged liability is based

solely on his status as an officer or director of the company, and that is insufficient to state a

claim.  *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408 F. Supp.

1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal actions

of others in the corporation merely by virtue of his position or office.  He may become liable if

he knowingly participates in such actions."); *see also In re Terrorist Attacks II*, at 22 (sustaining

*Federal Insurance* complaint against Abdulrahman Alamoudi because those plaintiffs alleged

that he "funneled money to al Qaeda through the charities with which he was involved," and

dismissing claims of other plaintiffs who only asserted he was associated with certain entities).

---

[16] Although it is not precisely clear which entities any particular Plaintiff asserts is in the "SAAR Network," *see e.g. In re Terrorist Attacks II*, at n. 15, the Virginia office of MWL (*World Trade Center*, ¶ 440, *Continental*, ¶ 472), (footnote continued on next page)

By simply alleging Dr. Mirza is associated with certain entities, Plaintiffs have failed to allege that Dr. Mirza knew of al Qaeda's illegal activities, "desired to help those activities succeed, and . . . engaged in some act of helping the illegal activities." *In re Terrorist Attacks II* at *19 (*citing Boim v. Quranic Literary Inst. and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1023-24 (7th Cir. 2002)).

Plaintiffs' other allegations also fail to state a claim against Dr. Mirza. For example, Plaintiffs allege in a general and conclusory manner that he is co-conspirator and aider and abettor of the IIRO. (*Continental*, ¶ 454, *World Trade Center*, ¶ 385). However, there is no allegation whatsoever of anything that Dr. Mirza allegedly did to support or aid the IIRO. This bare conclusory allegation fails as a matter of law. *See In re Terrorist Attacks I,* at 833 (*quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) "[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6)); *In re Terrorist Attacks II,* *18 (*quoting Jackson v. BellSouth Telecomms.*, 372 F.2d 1250, 1270-71 (4th Cir. 2004) (pleading that "contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based" cannot withstand motion to dismiss)).

Plaintiffs also allege that the tax matters of "BMI" concerning Sana-Bell were "sent" to Dr. Mirza. (*Continental* Addendum at 342, 361.) This vague and confusing allegation also fails to state a claim. Plaintiffs fail to identify who "BMI" is (numerous companies beginning with "BMI" are mentioned in the paragraphs immediately preceding this allegation), what BMI purportedly has done that would make it liable for the September 11th attacks or that Mirza knew BMI was engaging in activities supporting Al Qaeda or terrorism of any kind.

---

Sana Bell, Inc. (*Continental* at 176-77), and Sanabel al-Kheer (*World Trade Center*, ¶ 450) all are alleged to be (footnote continued on next page)

Plaintiffs do not even allege that Dr. Mirza did anything with respect to these "tax matters." Rather, the allegation simply states that tax matters were "sent" to him. It is not alleged what these tax matters were, that Dr. Mirza asked for the tax matters, that he received these tax matters, or what, if anything, Dr. Mirza did with these tax matters upon receipt. This allegation falls well short of asserting the type of intentional and material support of Al Qaeda that is necessary to support a claim. Plaintiffs did not allege that he handled these tax matters for BMI, but even if they had, the handling of tax matters for an entity -- especially one with no apparent connection to the September 11th attacks -- can not possibly be enough to state a claim. If so, virtually every accountant in the country would live in fear of being hauled into court for preparing an entity's taxes that is later accused of financing terrorism.

Plaintiffs also allege that in 1998, Dr. Mirza received two pieces of correspondence concerning Dr. Sulaiman Al-Ali's purported involvement in Sana-Bell. (*World Trade Center,* ¶ 402, 895). This allegation also falls far short of stating a claim. It provides Dr. Mirza with no notice whatsoever of the factual basis of Plaintiffs' claims against him, and asserts that Dr. Mirza did nothing more than receive two letters. The receipt of an uninvited letter cannot conceivably provide a basis for holding someone liable for the September 11th attacks.

Finally, Plaintiffs assert that Yaqub Mirza was a business partner with Yasin al Qadi, alleged to have been designated as a sponsor of terrorism and had his assets frozen in October 2001, in Ptech. (*World Trade Center,* ¶ 203.) But again, Ptech in not a defendant in the MDL and is not alleged to have done anything in aid of the September 11th attacks. Rather, it is only alleged to have "disconcerting ties to Islamic terrorism." (*Continental* "Addendum" at 368.) Moreover, the allegation, even if true, does not state when Dr. Mirza or Yasin al Qadi were

---

members of the "SAAR Network."

23

partners, nor does it allege that Dr. Mirza knew al Qadi was a supporter of terrorism at that time.
Indeed, even Plaintiffs concede that al Qadi was not designated as a sponsor of terrorism until
after the September 11th attacks.  Nor do Plaintiffs assert, as they must to survive the motion to
dismiss, that Dr. Mirza transferred any funds to al Qadi or that he knew al Qadi would then use
such funds to support al Qaeda.  Therefore, the allegation fails to provide Dr. Mirza with notice
of what he did to knowingly and intentionally provide material support to Al Qaeda.  *In re
Terrorist Attacks I*, at 826.

## CONCLUSION

For all the foregoing reasons, the Moving Defendants respectfully request that the Court
grant their Motions and dismiss all of the claims asserted against them in *Burnett, New York
Marine, Euro Brokers, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,

Dated:    October 28, 2005          By:  /s/ Nancy Luque _____
                                        Nancy Luque (NL-1012)
                                        Jay Hanson (admitted *pro hac vice*)
                                        Steven K. Barentzen (SB-8777)
                                        DLA PIPER RUDNICK GRAY CARY US LLP
                                        1200 Nineteenth Street
                                        Washington, DC  20036-2247
                                        Tel: 202-861-3900
                                        Fax: 202-223-2085

                                        *Attorneys for Taha Al-Alwani, Muhammed Ashraf,
                                        M. Omar Ashraf, Iqbal Unus, Mohammed
                                        Jaghlit, Ahmed Totonji* and *Yaqub Mirza*

24

# Exhibit A

| | BURNETT | FEDERAL | NY MARINE | EURO BROKERS | CONTINENTAL | WTC |
|---|---|---|---|---|---|---|
| M. Ashraf | Moving Defendant. | **Dismissed 9/21/05.** | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| M. Omar Ashraf | Moving Defendant. | **Dismissed 9/21/05.** | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Taha Al-Alwani[1] | **Voluntarily Dismissed 1/05.** | **Dismissed 9/21/05** | Moving Defendant. | | | |
| Iqbal Unus | Moving Defendant. | **Dismissed 9/21/05.** | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Mohammed Jaghlit | Moving Defendant. | MTD dated 10/18/2005 pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Ahmed Totonji | | MTD dated 10/18/2005 pending. | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |
| Yaqub Mirza | **Voluntarily Dismissed 1/05.** | **Dismissed 9/21/05.** | Moving Defendant. | Moving Defendant. | Moving Defendant. | Moving Defendant. |

Key:

Blank boxes indicate that Individual is not a party to that action.

Bolded entries signify either a voluntary or Court ordered dismissal.

"Moving Defendant" signifies that entity is a Moving Defendant in these motions to dismiss.

---

[1] Taha Al-Alwani also was named in *O'Neill v. Iraq*, and intends to move to dismiss that action by separate motion.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2005, I caused an electronic copy of the foregoing Memorandum of Law in Support of Motion To Dismiss of Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza Pursuant to Rule 12(B)(6) For Failure To State a Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen_____
Steven K. Barentzen (SB-8777)