UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

Civil Action No.
03 MDL 1570 (RCC)
ECF Case

This document relates to:

    Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al., Case No. 03-CV-9849 (S.D.N.Y.)
    Federal Insurance Co., et al. v. Al Qaida, et al., Case No. 03-CV-6978 (S.D.N.Y.)
    Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-07279-UA (S.D.N.Y.)
    New York Marine and General Insurance Co. v. Al Qaida, et al., Case No. 04-CV-6105 (S.D.N.Y.)
    World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-7280 (S.D.N.Y.)

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS

BANCROFT ASSOCIATES PLLC
601 13th St., N.W.
Suite No. 930 South
Washington, D.C. 20005
(202) 234-0090

Attorneys for Defendant
  Yousef Jameel

Viet D. Dinh
Wendy J. Keefer
Lizette D. Benedi
Nathan Sales

    Of Counsel

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   PERSONAL JURISDICTION ................................................................................... 2

II.  FAILURE TO STATE A CLAIM .............................................................................. 8

CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                    <u>Page</u>

*Ariel Mar. Group, Inc. v. Pellerin Milnor Corp.*,
   No. 88 Civ. 6447 (PKL), 1989 WL 31665 (S.D.N.Y. Mar. 29, 1989) ...................................... 7

*Cherry Commc'ns, Inc. v. Coastal Tel. Co.*,
   906 F. Supp. 452 (N.D. Ill. 1995) ......................................................................................... 7

*Gmurzynska v. Hutton*,
   257 F. Supp. 2d 621 (S.D.N.Y. 2003) .................................................................................... 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................................................ 2

*In re: Terrorist Attacks of September 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) ("*Terrorist Attacks I*") .................................... 1, 2, 3, 4, 5

*In re: Terrorist Attacks of September 11, 2001*,
   No. 03 MDL 1570 (RCC), 2005 U.S. Dist. LEXIS 20841
   (S.D.N.Y. Sep. 21, 2005) ("*Terrorist Attacks II*") ..................................................... 1, 3, 5, 9, 10

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*,
   No. 03 Civ. 2936 (MBM), 2004 WL 1620874  (S.D.N.Y. July 20, 2004) ................................ 7

*NetKnowledge Techs., L.L.C. v. Baron Capital V, Inc.*, No. Civ.A.3:02-CV-2406-M,
   2003 WL 23201333  (N.D. Tex. July 24, 2003) ..................................................................... 7

*Quaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990) ................................................................................................... 9

*Standard Enters., Inc. v. Bag-It, Inc.*,
   673 F. Supp. 1216  (S.D.N.Y. 1987) ..................................................................................... 7

*Strong v. RG Indus., Inc.*,
   691 F. Supp. 1017 (S.D. Miss. 1988) .................................................................................... 7

*Travelers Cas. & Sur. Co. v. Telstar Constr. Co.*,
   252 F. Supp. 2d 917 (D. Ariz. 2003) ..................................................................................... 7

*United States v. Bin Laden*,
   S(7) 98 Cr. 1023 (S.D.N.Y Feb. 7, 2001) .............................................................................. 6

*United States v. Hamdi*,
  No. 1:05CR123 (E.D. Va. May 26, 2005) .................................................................................. 5

*Varda, Inc. v. Ins. Co. of N. Am.*,
  45 F.3d 634 (2d Cir. 1995) ...................................................................................................... 2

## Statutes

Alien Tort Claims Act, 28 U.S.C. § 1350 ....................................................................................... 9

Antiterrorism Act, 18 U.S.C. § 2333 .............................................................................................. 9

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................... 8

Fed. R. Evid. 602 ............................................................................................................................ 7

Fed. R. Evid. 901(a) ....................................................................................................................... 7

RICO, 18 U.S.C. § 1962(a) ............................................................................................................. 9

RICO, 18 U.S.C. § 1962(c) ............................................................................................................. 9

RICO, 18 U.S.C. § 1962(d) ...................................................................................................... 9, 10

Torture Victims Protection Act, 28 U.S.C. § 1350 ....................................................................... 10

## Other Authorities

*Final Report of the 9/11 Commission* (2004) ............................................................................ 1, 3

The reasoning of this Court's decisions of January 18, 2005, and September 21, 2005, disposes of Mr. Jameel's Motion to Dismiss. Nothing in Plaintiffs' filings against Mr. Jameel adds to the allegations and arguments already rejected by the Court -- other than Plaintiffs' liberties with established facts and fabrications of documented sources.

This Court has already held that (a) allegations of charitable contributions similar to those against Mr. Jameel are insufficient, *In re: Terrorist Attacks of September 11, 2001*, No. 03 MDL 1570 (RCC), 2005 U.S. Dist. LEXIS 20841, at *41 (S.D.N.Y. Sep. 21, 2005) ("*Terrorist Attacks II*") (citing cases), (b) reliance on the Golden Chain is unavailing, *In re: Terrorist Attacks of September 11, 2001*, 349 F. Supp. 2d 765, 817-18 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"), and (c) alleged activities before al Qaeda's public targeting of the United States -- and without facts supporting an inference of knowledge of al Qaeda's intent -- are irrelevant, *id.* at 799.

Lacking adequate facts and valid legal arguments, Plaintiffs make things up. They quote a purported witness statement as follows: "Bin Laden would never fight or attempt to change the governments of any Gulf state because members of the 'Golden Chain' including Jameel – reside in those states." (Pl. Opp'n 14) (emphasis added). However, the phrase "including Jameel –" is not in the source document. Similarly, the 9/11 Commission stated with respect to charitable contributions: "Some individual donors surely knew, and others did not, the ultimate destination of their donations." *Final Report of the 9/11 Commission* 170 (2004) (emphasis added). Quoting these words to the Court, Plaintiffs used an ellipsis to delete the phrase, "and others did not." (Pl. Opp'n 9.) Were these isolated instances, they might be attributable to carelessness. Their frequent recurrence, however (*see* Defendant's Memorandum of Law in Support of Motion To Dismiss, July 18, 2005, 17-18 ("Def. Mem.")), suggests a deliberate attempt to distort.

Without leave or explanation, Plaintiffs skirted the Court's 25-page limit by filing their

1

Opposition in 10-point font, with even smaller footnotes, and less than one-inch margins. Properly formatted, Plaintiffs' brief would run 20 percent over the Court's limit, to approximately 30 pages.[1] Even with such excess, Plaintiffs remain incapable of establishing personal jurisdiction over Mr. Jameel, or of stating any valid claims against him.

## I.   PERSONAL JURISDICTION

Plaintiffs have not established that Mr. Jameel has sufficient contacts with the United States to warrant general jurisdiction. Likewise, they have not shown that Mr. Jameel "purposefully directed" his activities at the United States. The Court, therefore, should grant Mr. Jameel's Motion to Dismiss for want of personal jurisdiction.

Plaintiffs cannot seriously argue general jurisdiction. They cannot allege that Mr. Jameel is a U.S. national, domiciliary, or resident. Nor do they allege the "continuous and systematic" contacts required for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). The most they can muster are allegations relating to three entities, Global Natural Resources, Inc. ("GNR"), the Adbul Latif Jameel Group, and Jaymont Properties, Inc. (Pl. Opp'n 5.) Whatever the validity of these allegations, they are irrelevant. As this Court has held, allegations relating to corporate activities do not establish jurisdiction over individuals associated with, or even controlling, those corporations. *See Terrorist Attacks I*, 349 F. Supp. 2d at 812, 815-16 (citing cases). In any event, Plaintiffs allege only a former relationship with GNR, which, as previously explained,[2] ceased decades ago, long before any

---

[1] The Court should strike the filing, as it did in granting Defendant Aljomaih's Motion to Strike Plaintiffs' Sur-Reply on April 22, 2004, and Defendants' Motion to Strike "Plaintiffs' Memorandum of Law in Support of Their *Prima Facie* Showing of Personal Jurisdiction and in Opposition to Defendants' Challenges to Personal Jurisdiction" on June 15, 2004. Alternatively, sanctions would be proper. *See Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634 (2d Cir. 1995) (denying costs for having "brazenly used 'textual footnotes to evade page limits'").

[2] *See* Mr. Jameel's Memorandum of Law in Support of Motion to Dismiss Action Originally Commenced in S.D.N.Y., July 16, 2004, 9-10.

reasonable period prior to this action. *See id.* at 815-16 (citing cases).  Finally, Plaintiffs inexplicably cite an article announcing Mr. Jameel's $1 million donation to the American University in Cairo, Egypt.  (Pl. Opp'n 5; Flowers Decl. Ex. 9.)  Such a donation does not evidence any contacts with America's shores, but it does demonstrate the utter absence of any anti-American animus on Mr. Jameel's part.  In any event, donations to American institutions abroad would not subject Mr. Jameel to jurisdiction over wholly unrelated claims.

Specific jurisdiction over Mr. Jameel likewise does not lie because Plaintiffs have not made a prima facie case of Mr. Jameel's "personal or direct participation in the conduct giving rise to Plaintiffs' injuries." *Terrorist Attacks I*, 349 F. Supp. 2d at 809.  Although "[t]he Court does not require direct participation in the attacks themselves," Plaintiffs must allege "at least participation in al Qaeda's terrorist agenda." *Terrorist Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *38.  Plaintiffs once more fail to tie Mr. Jameel in any way to the 9/11 attacks.

*First*, Plaintiffs' allegations of Mr. Jameel's charitable contributions are unavailing. Plaintiffs offer no reason to change this Court's prior conclusion that "[d]onating money to established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States." *Id.* at *41 (citing cases).  Even the findings of the 9/11 Commission, upon which Plaintiffs rely, belie their assertion that contributors are knowing terrorist participants. *See Final Report of the 9/11 Commission* 170 (2004) ("Some individual donors surely knew, <u>and others did not</u>, the ultimate destination of their donations.") (emphasis added).  Other than liberties with facts and sources (*see* Def. Mem. 17-18), Plaintiffs offer nothing to support an inference that Mr. Jameel knew that any donation would be diverted for illegitimate purposes.

*Second*, Plaintiffs' allegations about a satellite telephone do not support an inference that

3

Mr. Jameel "purposefully directed" his activities toward the U.S. Plaintiffs alleged vaguely that Mr. Jameel purchased an unidentified satellite phone for bin Laden at some unknown time. *Burnett*, MDS ¶19 ("MDS"). In their most recent filing, Plaintiffs (without support) now identify the phone as one that Arnaout "delivered and assembled" with Hekmatyar in Afghanistan. (Pl. Opp'n 4.) Even if true, which it is not, this eleventh-hour identification is fatal to Plaintiffs' claims because their own pleadings date Arnaout's purchase and delivery of the phone to 1992, years before al Qaeda's public fatwa against the U.S.: "In or about 1992, Defendant Arnaout assisted in delivering, assembling and operating a satellite telephone for use in Afghanistan by Gulbuddin Hekmatyar and Hezb-e-Islami." *Burnett*, TAC ¶ 210 ("TAC").

In any event, Plaintiffs' account is belied by the purported FBI memorandum upon which they rely (and which is inadmissible; *see infra* pp. 6-8): "Source believed that the telephone had been shipped <u>from the United States</u> or that the money used to purchase the telephone was <u>from a source in the United States</u>." (Draper Aff. Attach. E 14-15 (emphases added).) The U.S. source of the phone or the money precludes any connection to Mr. Jameel.

Moreover, Plaintiffs' narrative relies upon at least six leaps of logic, without a single supporting fact or allegation: (1) Mr. Jameel gave money to Arnaout; (2) Arnaout used the money to purchase a phone; (3) Arnaout gave that phone to Hekmatyar; (4) Arnaout and Hekmatyar assembled that phone; (5) bin Laden prepared a video of the assembly; and (6) that videotape was proffered in the Arnaout prosecution. The most Plaintiffs can offer is a fabricated quote from Evan Kohlmann. (*See* Def. Mem. 17-18.) But the Court has already correctly held that it will not "accept legally conclusory assertions or draw 'argumentative inferences,'" to say nothing of misleading ones. *Terrorist Attacks I*, 349 F. Supp. 2d at 804 (citations omitted).

Plaintiffs' failure to implicate Mr. Jameel is confirmed by the contrast between this case

4

and the Court's September 21, 2005, decision denying dismissal to a defendant alleged to have provided a satellite phone and battery pack to al Qaeda.  There, Plaintiffs pointed to allegations and other governmental action indicating active participation in the al Qaeda conspiracy.  *See Terrorist Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *65-67 (citing TAC ¶ 581 (quoting arguments of then-AUSA Karas)).  The phone in question was delivered "after 1996, when Osama bin Laden declared war on Americans." *Id.* at *65.  And, the alleged conduct gave rise to a federal prosecution for immigration fraud.[3]  Here, by contrast, there are no allegations of any knowing participation by Mr. Jameel in the terrorist plot.  Plaintiffs' own allegations date Mr. Jameel's supposed provision of a phone to 1992, years before the 1996 public targeting of the United States.  And Mr. Jameel faces no adverse governmental action anywhere in the world.

*Third*, as this Court also already explained, Plaintiffs' reliance on the "Golden Chain" document is misplaced.  "The Golden Chain does not say what Plaintiffs argue it says.  It is only a list of names found in a charity's office." *Terrorist Attacks I*, 349 F. Supp. 2d at 818.  Plaintiffs "disagree with this Court's conclusion" (Pl. Opp'n 10), that "with no indication of who wrote the list, when it was written, or for what purpose, the Court cannot make the logical leap that the document is a list of early al Qaeda supporters." *Terrorist Attacks I*, 349 F. Supp. 2d at 817.  But they offer no reason why the Court should reverse its holding that the document has serious foundational flaws, that an individual's name on the document does not imply "involvement in a terrorist conspiracy culminating in the September 11 attacks and it does not demonstrate that he purposefully directed his activities at the U.S." *Id.* at 818.

Equally unavailing is Plaintiffs' attempt to bolster their "Golden Chain" contentions with the purported report of an FBI interview with al-Fadl.  (Draper Aff. Attach. E.)  Even if

---

[3] *See* Superseding Indictment, *United States v. Hamdi*, No. 1:05CR123 (E.D. Va. May 26, 2005).

everything Plaintiffs say about this document were true and the Court properly could consider it, the document still does nothing to advance Plaintiffs' case.  Plaintiffs themselves date the "Golden Chain" to 1988, before the formation of al Qaeda.  Moreover, al-Fadl turned himself in to the U.S. between May and July of 1996, after he left al Qaeda (having stolen over $100,000 from it).[4]  Any alleged contribution known to him -- and the report provides no date -- therefore occurred before al Qaeda's fatwa against the U.S. in August 1996[5] and before the formation of the 9/11 plot years later.  Such contribution cannot support even an inference of anti-American animus, let alone a knowledge or intent to aid, abet, or conspire with the 9/11 hijackers.[6]

In any event, the Court should not consider the document.  It has not been authenticated, there is no basis on which to conclude that the document is what Plaintiffs say it is, and it contains multiple levels of hearsay.

The document does not say what it is.  It refers to a meeting with "a Source," without identifying him.  Plaintiffs' "banking consultant," David K. Draper, somehow concludes that the document is "a true and accurate copy of a report dated August 2002 prepared by the Federal Bureau of Investigation discussing the materials seized in Bosnia with Defendant Jamal Ahmed Al Fadl." (Draper Aff. ¶ 6.)  Draper, however, does not explain how he reaches this conclusion or what qualifies him to do so.  Some unidentified person blacked out all information presumably identifying the document, the interviewer and the subject.  Draper's affidavit must be disregarded.  "A witness may not testify to a matter unless evidence is introduced sufficient to

---

[4] Testimony of Jamal Ahmed al-Fadl at 382-92, *United States v. Bin Laden*, S(7) 98 Cr. 1023 (S.D.N.Y Feb. 7, 2001) *available at* http://cns.miis.edu/pubs/reports/pdfs/binladen/070201.pdf.

[5] *See* Flowers Decl. Exs. 2, 8.

[6] Contrary to the Plaintiffs' implication, in libel proceedings brought by Mr. Jameel against the Sunday Times, the English Court not only denied the newspaper's motion for summary judgment but also struck the entirety of its plea of justification which had been based on the appearance of Mr. Jameel's name in the so-called "Golden Chain" list.

support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Obviously aware that Draper cannot authenticate this document, Plaintiffs offer a so-called "Witness Examination" of an unidentified person. (Draper Aff. Attach. F.) Plaintiffs refer to this person as "an FBI witness" (Pl. Opp'n 14), but offer nothing to support that characterization. The transcript of the "examination" suggests that the "witness" was shown a document, but does not say what document. (Draper Aff. Attach. F 29-30.) The "witness" states that the document, which he had never seen before, "[a]ppears to be an FBI 302." *Id.* 29. Remarkably, the "witness" then states that it "appear[s] to be an accurate 302" (*id.* 30), without any indication that he has the slightest basis to know whether it is accurate. This anonymous "testimony" from an unnamed "FBI witness" does not even remotely comply with the law applicable to the authentication of documents. Fed. R. Evid. 901(a) (requiring "evidence sufficient to support a finding that the matter in question is what its proponent claims").

Even assuming authentication, the document is fatally flawed because it contains hearsay -- indeed, hearsay within hearsay -- which the Court may not consider on this motion.[7] For example, Plaintiffs rely upon the following statement:

> Source had a specific conversation with MADANI AL TAYYIB during which MADANI AL TAYYIB informed Source that both YOUSIF JAMEEL and SALSH KAMEL donated their zakat funds, via the "Golden Chain," to BIN LADEN's Al QAEDA group.

(Draper Aff. Attach. E 23.) This excerpt -- which, in any event, is of little or no probative value because it dates neither the purported conversation nor the supposed donations -- contains at least

---

[7] *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, No. 03 Civ. 2936 (MBM), 2004 WL 1620874, at *2 n.3 (S.D.N.Y. July 20, 2004); *Ariel Mar. Group, Inc. v. Pellerin Milnor Corp.*, No. 88 Civ. 6447 (PKL), 1989 WL 31665, at *2 n.4 (S.D.N.Y. Mar. 29, 1989); *Standard Enters., Inc. v. Bag-It, Inc.*, 673 F. Supp. 1216, 1219 (S.D.N.Y. 1987); *accord Travelers Cas. & Sur. Co. v. Telstar Constr. Co.*, 252 F. Supp. 2d 917, 923 (D. Ariz. 2003); *NetKnowledge Techs., L.L.C. v. Baron Capital V, Inc.*, No. Civ.A.3:02-CV-2406-M, 2003 WL 23201333, at *3 (N.D. Tex. July 24, 2003); *Cherry Commc'ns, Inc. v. Coastal Tel. Co.*, 906 F. Supp. 452, 454 (N.D. Ill. 1995); *Strong v. RG Indus., Inc.*, 691 F. Supp. 1017, 1018-19 (S.D. Miss. 1988).

7

three layers of hearsay: (1) someone named Al Tayyib spoke to the unidentified Source; (2) the Source presumably spoke to the document's unidentified author; and (3) the author then prepared the document. This document is patently inadmissible.

*Fourth*, Plaintiffs' minor allegations do not support an inference that Mr. Jameel knowingly participated in an al Qaeda terrorist conspiracy.[8] None of these allegations -- that the Jameel Group (not Mr. Jameel) donated vehicles to the Saudi High Commission in 1995 (MDS ¶ 35), that Al-Arian sent a facsimile to the Jameel Group in 1996 (MDS ¶ 40), and that in 1990 Mr. Jameel made a $1 million donation to the French association Abad Islamique (MDS ¶ 41) -- comes close to indicating that Mr. Jameel knowingly directed any activities at the United States.

The allegation of a $1 million contribution to Abad Islamique illustrates the irrelevance of Plaintiffs' allegations. First, the donation was allegedly made in 1990, before the United States withdrew support for the mujahideen, before any public knowledge of al Qaeda, before its public targeting of the United States, and before the formation of the 9/11 conspiracy. Second, even if Abad Islamique diverted the money to the Islamic Salvation Front -- which, according to information available to prospective donors at the time, was a recognized political party in Algeria[9] -- Plaintiffs do not allege that any activities of that organization were directed at the United States or had any connection to the 9/11 attacks.

## II.  FAILURE TO STATE A CLAIM

The pleading standard of Rule 8(a)(2) is liberal, but "it d[oes] not even remotely suggest

---

[8] Plaintiffs' latest filing refers to a custody matter between Mr. Jameel and his former spouse. That dispute has no relevance whatsoever. Mr. Jameel is not an affiant or a witness in this case, so his credibility is not in issue. Even if it were, the matters to which Plaintiffs refer would not be admissible. By contrast, Plaintiffs and their experts Messrs. Kohlmann and Brisard submitted several misleading, and one fabricated, sworn statements to the Court.

[9] *See, e.g.*, Abderrahmane Bensid, *Algerian Situation Deserves Fairer Coverage*, Wash. Time, May 21, 1990, at F2; *State Department Regular Briefing: Margaret Tutwiler*, Fed. News Service, June 14, 1990, at 7. (Annexed as Exhibits 1 and 2, respectively, to the Declaration of Viet D. Dinh, dated Oct. 31, 2005 ("Dinh Decl.").)

that a pleading could survive dismissal when it contain[s] only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Terrorist Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *57 (citation omitted); *see also Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003) ("While the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements.") (citation omitted).

To state a viable claim under the Antiterrorism Act, Plaintiffs must allege facts that show defendants knew of al Qaeda's illegal activities, "they desired to help those activities succeed, and they engaged in some act of helping the illegal activities." *Terrorist Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *58-59 (citation omitted). Although Plaintiffs have alleged that Mr. Jameel made charitable donations and in 1992 provided a satellite telephone, they have alleged no facts from which an inference of knowledge or intent may be drawn.

Plaintiffs' Alien Tort Claims Act ("ATCA") claim is similarly flawed. Though aircraft hijacking may give rise to a claim under the ATCA, Plaintiffs must allege facts to demonstrate that Mr. Jameel knowingly aided and abetted or conspired with the 9/11 hijackers. *Id.* at *59. Again, Plaintiffs have not done so.

Equally unavailing are the civil RICO claims brought by the *Marine*, *Federal*, *Euro Brokers*, and *WTC* Plaintiffs. The Section 1962(a) claims cannot survive because Plaintiffs nowhere allege that Mr. Jameel invested racketeering income. *See, e.g.*, *WTC* RICO Stmt. ¶ 14; *Euro Brokers* RICO Stmt. ¶ 14. "[A] plaintiff must allege injury from the defendant's investment of the racketeering income to recover under § 1962(a)." *Quaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990). Plaintiffs also fail to allege the facts necessary to state claims for violations of Sections 1962(c) and 1962(d). Under Section 1962(c), "Plaintiffs must allege that

9

the [Defendants] participated 'in the operation or management of the enterprise itself,' which requires that these Defendants must have had some part in directing the enterprise's affairs." *Terrorist Attacks II*, 2005 U.S. Dist. LEXIS 20841, at *61 (citation omitted).  None of the allegations against Mr. Jameel amounts to an assertion that he operated or managed al Qaeda's affairs.  And the claim under Section 1962(d) -- which makes it unlawful for any person to conspire to violate the other provisions of the civil RICO statute -- fails because Plaintiffs have not alleged facts sufficient to show that Mr. Jameel knew of, intended to help, or conspired with the 9/11 terrorists.

Finally, Plaintiffs cannot state a claim under the Torture Victims Protection Act, which provides a cause of action against individuals who under actual or apparent authority of a foreign nation subject an individual to torture or extrajudicial killing.  There are no allegations, nor could there be, that Mr. Jameel, a private businessman, somehow acted under color of a nation's law.

## CONCLUSION

Mr. Jameel did not and does not support terrorism in any form against anyone, anytime, anywhere.  As one honored for his generous support of American ideals and cultural understanding abroad, Mr. Jameel can discern no reason why he is caught up in this dragnet of indiscriminate litigation.  No reason, that is, except opposing counsel's public exclamations:  "I loooove to pick on the Saudis,"[10] and "Sometimes, the best I can do is call them Scumbag One and Scumbag Two."[11]  The Court should not reward this prejudice.  The Complaints against Mr. Jameel should be dismissed.

---

[10] Jennifer Senior, A Nation Unto Himself, N.Y. Times Mag., Mar. 14, 2004, at 36, 39.  (Annexed as Exhibit 3 to Dinh Decl.)

[11] Tony Bartelme, The King of Torts vs. al-Quaida, Inc., Charleston Post and Courier, June 22, 2003, at 5, http://www.charleston.net/stories/062203/911_22alqstory.shtml.  (Annexed as Exhibit 4 to Dinh Decl.)

Dated: Washington, D.C.
      October 31, 2005

                            BANCROFT ASSOCIATES PLLC

                            By _____/s/Viet D. Dinh_____
                                    Viet D. Dinh (VD-1388)
                                    Pro Hac Vice
                                    A Member of the Firm
                                    601 13th St., N.W.
                                    Suite No. 930 South
                                    Washington, D.C. 20005
                                     (202) 234-0090

                            Attorneys for Defendant Yousef Jameel

    Viet D. Dinh
    Wendy J. Keefer
    Lizette D. Benedi
    Nathan Sales

        Of Counsel

11