## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

*Estate of John P. O'Neill, Sr., on behalf John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Republic of Iraq*, Case No. 04-CV-1076 (RCC)

### DECLARATION OF STEVEN K. BARENTZEN

STEVEN K. BARENTZEN, on this 4th day of November 2005, hereby declares pursuant to 28 U.S.C. § 1746, and under the penalties of perjury, that the foregoing is true and correct:

1. I am an attorney licensed to practice law in the State of New York and the District of Columbia.  I am an associate with the law firm of DLA Piper Rudnick Gray Cary US LLP and I submit this declaration in support of Taha Al-Alwani's Motion to Dismiss.

2. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Taha Jabir Al-Alwani, sworn to October 4, 2005.

3. Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' More Definite Statement Pursuant to the Fed. R. Civ. Pro. Rule 12(e), Judge Casey's CMO-2, Paragraph 13, and/or RICO Statement Applicable to Taha Al Alwani a/k/a Dr. Taha Jabir Al'Alwani," dated August 25, 2005.

4. Attached hereto as Exhibit C is a true and correct copy of a letter dated September 2, 2005 from Steven K. Barentzen to Jerry S. Goldman.

5.      Attached hereto as Exhibit D is a true and correct copy of a letter dated September 30, 2005 from Jerry S. Goldman to Steven K. Barentzen.

Steven K. Barentzen

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:

> *Estate of John P. O'Neill, Sr., on behalf John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Republic of Iraq*, Case No. 04-CV-1076 (RCC)

## <u>DECLARATION OF DR. TAHA JABIR AL-ALWANI</u>

I, Dr. Taha Al-Alwani, state as follows:

1.      I submit this declaration in support of my motion to dismiss the Second Amended Complaint (the "Complaint") that was served on me in the above-referenced action.  The Complaint against me should be dismissed because I am not the Taha Al-Alwani that is named as a Defendant in the Complaint.

2.      The Al-Alwani named in the Complaint is described in paragraph 36 as a "natural person[ ], subject[ ] and citizen[ ] of Iraq" and a "leader[ ], official[ ], agent[ ]/or employee[ ] of Iraq and/or its Intelligence Agency, who participated in the acts and conspiracy described below while acting in the course and scope of their employment."

3.      This does not describe me.  I was born in Iraq in 1935, but I left that country in 1969 and have never returned.  I moved permanently to the United States in 1984 and I became a United States citizen in 1992.

4.      Moreover, I am not – and never have been – a leader, official, agent or employee of Iraq and/or its Intelligence Agency.  Nor did I participate in any of the acts or conspiracies described in the Complaint.

5.      The surname "Al-Alwani" is a tribal in Iraq;  there may be as many as 50,000 families with that name living in Iraq.  It is likely that the Taha Al-Alwani that the Defendants name and describe in the complaint is the former mayor of Fallujah, who is named Taha *Badwi Hamid* Al-Alwani, whose was born in 1955, or perhaps another Iraqi national, who actually was a member of Saddam Hussein's Baath party.

I declare under the penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, this 4th day of October, 2005, that the foregoing is true and correct.

ALalwani.T.J.

Dr. Taha Jabir Al-Alwani

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case<br><br>**MORE DEFINITE STATEMENT PURSUANT TO THE FED. R. CIV. PRO. RULE 12(e), JUDGE CASEY'S CMO-2, PARAGRAPH 13 AND/OR RICO STATEMENT Applicable to Taha Al Alwani a/k/a Dr. Taha Jabir Al'Alwani** |

*This document relates to:*

      Estate of John P. O'Neill, Sr., *et al.* v. Republic of Iraq, *et al.*
      04 CV 01076 (RCC)

### MORE DEFINITE STATEMENT PURSUANT TO THE FED. R. CIV. PRO. RULE 12(e), JUDGE CASEY'S CMO-2, PARAGRAPH 13, AND/OR RICO STATEMENT APPLICABLE TO TAHA AL ALWANI A/K/A DR. TAHA JABIR AL'ALWANI

      Based on information currently available, plaintiffs submit this More Definite Staement Pursuant to Judge Casey's Case Management Order 2 ("CMO-2"), Paragraph 13, and/or RICO statement (collectively referred to as "Statement") pursuant to the Case Management Order dated June 15, 2004 and Judge Casey's individual rules, for defendant Taha Al Alwani a/k/a Dr. Taha Jabir Al'Alwani (referred to as "Al Alwani").

      Given the extraordinarily complex nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this Statement as information is learned and verified through discovery and otherwise.

      This filing is a supplemental pleading in accordance with 03 MDL 1570, CMO-2, Paragraph 13-14, and the Individual Rules of Judge Casey. It is designed to supplement the Plaintiff's complaint, as a whole, as amended from time to time, and is not to be construed as revoked, in whole or in part, as a result of any subsequent amendment of the complaint.

1.  The unlawful conduct is in violation of 18 U.S.C. §§ 1962(b), 1962(c) and/or (d).

2.  The name of the defendant to whom this Statement pertains is Al Alwani. The alleged misconduct and basis for liability is set forth in Exhibit "A."

3.  All known wrongdoers are named as defendants in this action, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et*

*al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), other cases brought by other plaintiffs in *In Re Terrorist Attacks on September 11, 2001* (03-MDL-1570(RCC)), and others. Plaintiffs will separately file Statements with respect to the misconduct of the other defendants. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery or otherwise. Plaintiffs therefore reserve the right to amend this Statement as information is learned and verified and after discovery or other information is obtained.

4.  The name of each victim is indicated on the attached hereto as Exhibit "B." The victims consist of (1) all spouses, children, parents, siblings, or heirs of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001 (with the events at the World Trade Center in New York, N.Y., the Pentagon Building in Arlington County, Virginia, and the airliner crash in Shanksville, Pennsylvania, on September 11, 2001, and activities related thereto, collectively referred to herein as "Attack" or "Attacks"); and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001. Exhibit "B" sets forth the names of the decedents killed by the attackers, with the category of "victims" further including their spouses, children, parents, siblings or heirs as set forth above.

    The manner in which the victims were injured consists of death, suffering caused by death, and all economic damages resulting from such deaths, and actions of the defendants and their co-conspirators as described herein, including without limitation Paragraph 17 hereof.

5.  Please find below a description, in detail, of the pattern of racketeering activity for each RICO claim:

    a.  List of predicate acts and specific statutes violated:

| | |
|---|---|
| Conspiracy to commit murder | NY  Penal § 105.15; <br> NY  Penal § 125.25 (xi) |
| Conspiracy to commit arson | NY  Penal § 105.15; <br> NY  Penal § 150.15 |

2

| | |
|---|---|
| Fraud with Identification Documents | 18 U.S.C. § 1028 |
| Mail Fraud | 18 U.S.C. § 1341 |
| Wire Fraud | 18 U.S.C. § 1343 |
| Financial Institution Fraud | 18 U.S.C. §1344 |
| Illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| Money laundering | 18 U.S.C. § 1957 |
| Defrauding the United States Government | 18 U.S.C. § 371 |
| Travel Act | 18 U.S.C. § 1952 |
| Filing false or materially false tax returns | 26 U.S.C. § 7206(1),(2) |
| Engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |
| Providing material support of Terrorism | 18 U.S.C. § 2332(b)(g)(5)(B)<br>18 U.S.C. § 2339A<br>18 U.S.C. § 2339B<br>18 U.S.C. § 2339C |

b.  Dates of, the participants in, and a description of the facts surrounding the predicate acts:

| DATES | PARTICIPANTS | FACTS |
|---|---|---|
| mid-1990's to 9/11/2001 | Al Alwani | Al Alwani conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or |

3

| | | |
|---|---|---|
| | | management of the operation of the Enterprise itself. Al Alwani conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>Throughout this period, Al Alwani conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attack. |
| Late 1990's to 9/11/2001 | Al Alwani | Al Alwani conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Al Alwani conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>Al Alwani undertook the above named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which it was participating, Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front |

4

| | | |
|---|---|---|
| | | for the Jihad Against Jews and Crusaders, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support supplied by Al Alwani. |
| Mid-1990's to 9/11/2001 | Al Alwani | Al Alwani conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Al Alwani conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. Al Alwani agreed to form and associate with the Enterprise and agreed to commit more than two predicate acts, *i.e.,* multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

c.   The individual times, places, and contents of the alleged misrepresentations are not particularly known at this time.

d.   The predicate act is not based upon a criminal conviction.

e.   Civil litigation has not yet resulted in a judgment regarding the predicate acts.

f.   The predicate acts form a pattern of racketeering in that they are repeated, ongoing, continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and

5

impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscate their support of Radical Muslim Terrorism and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders,.

g.   The predicate act relates to each other (horizontal relatedness) as part of a common plan because each act of knowing and intentionally providing financial services and money laundering and tax evasion allowed certain of the defendants, specifically including Al Alwani, to surreptiously provide funds to terrorist organizations, including al Qaida, Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attacks.

6.   A description of the alleged enterprise follows:

a.   The enterprise ("Radical Muslim Terrorism") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

*Alternatively*, the enterprise ("al Qaida") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

*Alternatively*, the enterprise ("International Islamic Front for the Jihad Against Jews and Crusaders") is comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint, and any additionally complaint filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Al Baraka, et al.* (SDNY 04-CV-1923 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

b.   The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed an organization called "The Foundation" or "al Qaida."   Al Qaida was intended to serve as a foundation upon which to build a global Islamic

army.  In February, 1998, a declaration was issued, following the holding of a terrorist summit, announcing the formation of the International Islamic Front for the Jihad Against Jews and Crusaders, the precursor of which was the Muslim Brotherhood and the Islamic Jihad.  The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein.    Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of:  (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi-American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel.  Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, does not feature a centralized hierarchy, because the lack of a centralized hierarchy is essential to the Enterprise's clandestine nature and its success.    Thus, although al Qaida, for example, had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Al Alwani fit neatly into this framework by raising funds for and providing funding to and otherwise providing material support for the members of the Enterprise who engaged in the Attack.

The Enterprise is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons).  These transactions are accomplished through, *inter alia*, the use of wire transfers and electronic transmissions.

On information and belief, at the time of the September 11th attack, the al Qaida's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars.   The Enterprise relies upon a global network of banks and financial institutions, including Al Alwani, and illegal activity to generate material support to continue its terrorist operations.

c.   Al Alwani was not an employee, officer or director of the Enterprise, based upon present information available.

d.   Al Alwani is associated with the alleged enterprise.

7

    e.  Al Alwani is a member of the Enterprise, and is separate and distinct from the Enterprise.

    f.  Al Alwani intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7.  The pattern of racketeering activity conducted by Al Alwani is separate from the existence of Radical Muslim Terrorism, and/or the Al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, but was a necessary component to the Attack.

8.  The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Al Alwani funds that activity, which activity culminated in the Attack.  The usual and daily activities of the Enterprise include recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are funded by the racketeering activities described herein.

9.  The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Al Alwani, relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce.  The enterprise and the racketeering activities conducted, engaged in, and/or transacted business within and in the United States and elsewhere, and utilized, possessed, used, transferred, owned, leased, operated, and/or controlled assets in the United States and elsewhere.   Furthermore, activities and actions of the Enterprise affect interstate commerce as demonstrated by the Attack itself, which caused damage to the United States economy and property and businesses situate therein.  See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, *8 (stating that the Attack "severely damaged the United States economy").

11. Plaintiffs do not allege a violation of 19 U.S.C. § 1962(a).

12. Al Alwani acquired or maintained an interest or control in the Enterprise.

13. With respect to the alleged violation of 18 U.S.C. § 1962(c), the following is asserted:

    a.  Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders "employs" certain individuals, only a few of whose identities are known, including defendant Osama Bin Ladin.

    b.  The enterprise, Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and the Crusaders, is

8

comprised of the defendants named in the Complaint, the First Amended Complaint, the Second Amended Complaint and any additional complaints filed in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and *Estate of John P. O'Neill, et al. v. Iraq, et al.* (SDNY 04-CV-1076 (RCC)), among others, and is a collection of the persons, organizations, businesses, and nations associated in fact. The liable persons are the enterprise and that which makes up the enterprise.

14. Description of Conspiracy in violation of 18 U.S.C. §1962(d): The history of the conspiracy, in violation of 18 U.S.C. § 1962(d), behind Radical Muslim Terrorism, or the al Qaida, or the International Islamic Front for the Jihad Against Jews and Crusaders could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including Al Alwani, who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the *Zakat*, the mandatory charitable contributions required of all Muslims. Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders also collected money from employees of corrupted charities. The money raised from these various sources (the "Funds"), including Al Alwani, were used by the Enterprise to accomplish its goals, with the knowledge and awareness of Al Alwani, of both those goals and the uses to which the Funds were put.

The Funds were used to organize and conduct a complex international terrorist operation intended to inflict catastrophic harm on the United States. The Funds enabled the Enterprise to identify, recruit, groom and train leaders who were able to evaluate, approve and supervise the planning and direction of the Enterprise. The Funds also provided communications sufficient system that gathered information on and formed assessments of the Enterprise's enemies' strengths and weaknesses.

The Funds enabled the Enterprise to establish a personnel system by which, among other things, it recruited and trained persons to inflict the harm (the "Operatives") and provided planning and direction to the Operatives. The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen

9

perpetrators of the Attack were selected.  None of this would have been possible without the funds supplied by participants and conspirators like Al Alwani. Indeed, the Enterprise would not have been successful without enthusiastic participation of all of the conspirators, including Al Alwani.  In order to identify nineteen individuals willing, able and competent to carry out the Attack, Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Al Alwani.  Al Alwani, with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Al Alwani conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself.  Al Alwani conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. Al Alwani also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. The injuries to business or property suffered by the O'Neill Plaintiff's resulting from the September 11th attack include economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households.  Additionally, the Attack itself was intended to destroy the leading symbol of the United States' leadership in world trade – The World Trade Center - and as such, affected the O'Neill Plaintiff's jobs, businesses, and livelihoods.

16. Causation: Plaintiffs' damages – the loss of life and the damages to business and property related thereto that resulted from the actions of the defendants and their co-conspirators, are a direct causal relationship to the violation of the RICO statute, and are not a derivative claim of damage to a third party.   The Plaintiffs, both named and as a class, as described in the complaint, as amended, were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," (that is, terrorism, the culmination of which was the Attack).

17. Damages: Each defendant is jointly and severally liable for all damages sustained by each plaintiff, as set forth in Exhibit "B," subject to the description of victims set forth in paragraph 4 hereof, for the loss of life, and the economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households.   The damages for the plaintiffs'

10

collectively are to be determined at trial, and are in excess of $10,000,000,000.00 prior to trebling, punitive damages, interest, legal fees, and the costs of this suit.

18. Below, please find a list of all federal causes of action:

| | |
|---|---|
| **Count Eight** | Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, *et. seq.* |
| **Count Nine** | RICO, 18 U.S.C. § 1962(b),1962(c), 1962(d) |

19. Below, please find all state causes of action:

| | |
|---|---|
| **Count One** | Wrongful Death |
| **Count Two** | Survival |
| **Count Three** | Action for Economic Damages |
| **Count Four** | Intentional Infliction of Emotional Distress |
| **Count Five** | Loss of Consortium |
| **Count Six** | Loss of Solatium |
| **Count Seven** | Conspiracy |
| **Count Ten** | Punitive Damages |

20. At this time, there is no additional information to further assist the Court in adjudicating the RICO claims.

11

Date: August 25, 2005

LAW OFFICES OF JERRY S. GOLDMAN
& ASSOCIATES, P.C.

BY:_____
GINA M. MAC NEILL, ESQUIRE
(GM 0581)

BY:_____
JERRY S. GOLDMAN, ESQUIRE
(JG 8445)
Attorneys for the Plaintiffs
111 Broadway, 13th Floor
New York, N.Y. 10006
212.242.2232

12

EXHIBIT "A"

MORE DEFINITE STATEMENT/RICO STATEMENT

QUESTION # 2

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Al Alwani | Al Alwani has long provided financial support and other forms of material support to terrorist organizations including Radical Muslim Terrorism, or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Al Alwani conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Al Alwani conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>Taha Jabir Al Alwani (Al Alawani) is President of the Graduate School of Islamic and Social Sciences (GSISS) in Leesburg, Virginia. The Graduate School for Social and Islamic Sciences (GSISS), trains Islamic clerics to minister to Muslim soldiers in the U.S. military, however, it is suspected by the U.S. government of raising funds for terrorism.<br><br>Al Alwani is also a founding member and president of the International Institute of Islamic Thought ("IIIT"). The IIIT is a self-described "Islamic think tank" started by Sami Al-Arian, who was arrested by the U.S. government and is awaiting trial on charges that he was a key figure in the terrorist group Palestinian Islamic Jihad. | 18 U.S.C. §§ 1962 (b), 1962(c), 1962(d) |

---

[1] Specific misconduct regarding WAMY, a co-defendant herein, is provided via Amended RICO Statement Applicable to WAMY. Plaintiffs herein incorporate by reference throughout this document the factual averments and arguments which are contained within its Amended RICO statement Applicable to WAMY, relating to *Estate of John P. O'Neill, et al. v. Al Baraka, et al.*, 04-CV-1923 (RCC), filed on July 28, 2005.

Taha Jabir Alawani was publicly identified in an affidavit by U.S. Customs special agent David Kane ("Kane") as a director of *"Safa Group companies including International Institute of Islamic Thought (IIIT), FIQH council of North America, Graduate School of Islamic & Social Sciences, and Heritage Education Trust."*

In the affidavit, Kane wrote that "there is probable cause to believe that Alawani, along with others, conspired to commit various offenses, including the providing of material support or resources to foreign terrorist organizations in violation of 18 U.S.C. Para 2339B."

The Articles of Incorporation for the IIIT, dated October 8, 1980, which were included with the IIIT Application for Recognition of Exemption from Federal Income Tax (Form 1023), dated June 3, 1982, identify other individuals who were directors of WAMY,[1] a co-defendant, at that time. "These include Dr. Taha Jaber, whom I (Kane) believe to be the same as Taha Jaber Al-Alwani, Dr. Abdul Hamid Abu Sulayman, and Dr. Jamal Barzinji." On this document Al-Alwani, Barzinji and Abu Sulayman listed their address as World Assembly of Muslim Youth, P.O. Box 5472, Riyadh, Saudi Arabia.

According to a second affidavit filed by Kane in the US District Court in Eastern Virginia, Al-Awani's home was listed as a location to be searched:

"The Residence of Al-Alwani at 1105 Safa Street, Herndon, Virginia 1105 Safa Street in Herndon is the residence of Taha Jaber Al-Alwani, an officer and/or director of Safa Group companies including International Institute of Islamic Thought ("IIIT"), FIQH Council of North America ("FIQH"), Graduate School of Islamic & Social Sciences ("GSISS") (formerly known as the School of Islamic and Social Sciences

14

("SISS")) and Heritage Education Trust."

Kane further stated: "Various documents and videotapes obtained in Tampa searches show that Al Alwani, attended and spoke at Islamic Concern Project ("ICP") conferences with Al-Arian, Shallah, Sheik Odeh (spiritual leader and co-founder of Palestinian Islamic jihad ("PIJ")) and Sheik Rahman (the "Blind Sheik" convicted of conspiracy to blow up New York tunnels and the United Nations in New York in October 1995). Inasmuch as ICP conferences were, in essence, PIJ conferences, I know that Al-Alwani has long been a supporter of PIJ."

Additionally, Kane said, "In October 1999, a confidential asset of the FBI, who has provided reliable information in the past, furnished the Washington Field Office of the FBI a copy of a fatwa 36 (declaration) signed by Al-Alwani at some point between December 1988 and November 1989, proclaiming the truth by the powers invested in us by Allah, that Jihad is the only way to liberate Palestine; that no person or authority may settle the Jews on the land of Palestine or cede to them any part thereof, or recognize any right therein for them."

Public documents show that the SAAR network was the primary backer of the PIJ front groups in the United States, World and Islam Studies Enterprise ("WISE") and Islamic Concern Project ("ICP"). In fact, previously released correspondence and bank checks reveal that SAAR affiliates IIIT and Safa Trust funneled tens of thousands of dollars to the PIJ fronts.

Al Alwani, in his capacity as President of the International Institute of Islamic Thought and an officer of the Heritage Education Trust and Safa Trust, has committed multiple acts of conspiracy to commit murder and arson, money laundering, tax fraud, Travel Act violations, filing a false tax return, and impeding and impairing the collecting of federal taxes, all in furtherance of the Enterprise's common goals and ultimate plan of

15

|  | launching an attack on America.  As the foregoing demonstrates, Al Alwani thereby knowingly has, for a period of many years, provided critical financial and logistical support to al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, to support the terrorist organization's global jihad. The September 11th Attack was a direct, intended and foreseeable product of Al Alwani's participation in the jihadist campaign for al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. |  |
|---|---|---|

16

## CERTIFICATE OF SERVICE

I hereby certify that the attached More Definite Statement Applicable to Taha Al Alwani a/k/a Taha Jabir Al'Alwani was served on all counsel of record by way of electronic filing in the Southern District of New York on August 25, 2005.

Dated: August 25, 2005

BY: _____
GINA M. MAC NEILL, ESQUIRE

17

# EXHIBIT C



**DLA Piper Rudnick Gray Cary US LLP**
1200 Nineteenth Street, NW
Suite 700
Washington, DC  20036-2430
T   202.861.3890
F   202.223.2085
W  www.dlapiper.com

September 2, 2005

**Via Federal Express**

Jerry S. Goldman, Esq.
Law Offices of Jerry S. Goldman & Associates, P.C.
111 Broadway, 13th Floor
New York, New York 10006

Re:    *In re Terrorist Attacks of September 11, 2001*, MDL No. 1570 (RCC);
       *Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq et al.*, 04 CV 1076 (RCC)

Dear Mr. Goldman:

　　　　Pursuant to Federal Rule of Civil Procedure 11, and the Advisory Committee Notes to Rule 11, we request that Plaintiffs withdraw both the Second Amended Complaint (the "Complaint") and the document styled as a "More Definite Statement Pursuant to the Fed. R. Civ. Pro. Rule 12(e), Judge Casey's CMO-2, Paragraph 13, and/or RICO Applicable to Taha Al-Alwani A/K/A Dr. Taha Jabir Al-Alwani" (the "RICO Statement.")  If you do not agree to withdraw these filings, be advised that we intend to bring a Rule 11 motion seeking sanctions against Plaintiffs and your firm for the reasons discussed below.

　　　　As we have repeatedly advised you, the complaint violates Rule 11 because Plaintiffs served it on the wrong Taha Al-Alwani.  The Taha Al-Alwani identified in paragraph 36 of the Second Amended Complaint is alleged to be a "natural person[ ], subject[ ] and citizen[ ] of Iraq" and a "leader[ ], official[ ], agent[ ]/or employee[ ] of Iraq and/or its Intelligence Agency, who participated in the acts and conspiracy described below while acting in the course and scope of their employment."  (Complaint, ¶ 36.)

　　　　Dr. Taha Al-Alwani who you served, and who we represent, is an American citizen who has resided in the United States for almost 25 years and has not been in Iraq for over 35 years. He is not – and never has been – a leader, official, agent or employee of Iraq and/or its Intelligence Agency.  He did not participate in any of the acts or conspiracies described in the Complaint.  He has never been employed by Iraq.

**Serving clients globally**



**PIPER RUDNICK GRAY CARY**

Jerry S. Goldman, Esq.
September 2, 2005
Page Two

As we told you several times, the Al-Alwani named in your complaint is -- from what we can determine -- the former Mayor of Fallujah who coincidentally shares the same name as our client.

For these reasons, the Complaint violates Rule 11 for the following reasons:  (1) it is being presented for the improper purposes of harassing our client, causing unnecessary delay and needlessly increasing the cost of litigation, and (2) the allegations and other factual contentions against our client in the Second Amended Complaint have no evidentiary support.

Plaintiffs' RICO Statement also violates Rule 11 for the following reasons:  (1) because Plaintiffs were not authorized to file the RICO Statement.  The filing of the RICO Statement violates the Court's August 23, 2005 Order that explicitly denied Plaintiffs' request to amend the Second Case Management Order to permit the late filing of RICO Statements.  Plaintiffs nevertheless, and in violation of the Court's Order, brazenly filed the RICO Statement.  By styling the RICO Statement in the alternative as a "More Definite Statement," Plaintiffs apparently intend to attempt to evade the Court's Order.  But the false title that you have given the document does not disguise what it actually is, i.e., a RICO Statement.  Even a cursory review of the document reveals that it has the exactly same format as every other RICO Statement that has been filed in this action.  And although you pretend otherwise to avoid the Court's ruling, its substance reveals it as an unauthorized RICO Statement.

Even if the Court were to construe your RICO Statement as a More Definite Statement, it would still be unauthorized under the rules.  A party may not file voluntarily a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).  Rather, a More Definite Statement is proper only in response to a motion for a more definite statement, and Dr. Al-Alwani has not filed such a motion.  Moreover, the filing does not clarify or expand upon vague and ambiguous allegations in the Complaint as is authorized by Rule 12(e).  Rather, the RICO Statement includes an entirely new set of allegations, against a entirely new party, that not only were not included in the Complaint, but are, in fact, inconsistent with the Complaint's allegations.

Finally, even if the RICO Statement was construed as a More Definite Statement, it would be late.  Paragraph 13 of the Second Case Management Order provides that More Definite Statements must have been filed by July 31, 2005.  By Order dated July 27, 2005, the Court extended the time for Plaintiff's to "file amended complaints:"  It did not extend the time to file More Definite Statements.

In addition, (2) the RICO Statement violates Rule 11 because its allegations do not support a claim against Dr. Al-Alwani in this action.  The allegations -- even if assumed to be true and viewed in the light most favorable to Plaintiffs -- at best connect Dr. Al-Alwani to Sami Al-Arian and the Palestinian Islamic Jihad ("PIJ").  But there is no allegation connecting Al-Arian or the PIJ to the September 11th attacks.  Moreover, no such link exists.  In this respect, PIJ is



similar to Hamas, and the Court has already found that "Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005). Indeed, as counsel for Mar-Jac Poultry, Mr. Parker, argued during the June 15, 2005 oral argument, Al-Arian and PIJ could not have been involved in the September 11th attacks, otherwise Al-Arian's attorneys, Cozen & O'Connor, could not also represent the *Federal Insurance* plaintiffs in the MDL.

Therefore, your RICO Statement violates Rule 11 because: 1) it was filed solely for purposes of harassing Dr. Al-Alwani, causing unnecessary delay and needlessly increasing the cost of litigation; 2) Plaintiffs had no good faith basis under existing law, or a non-frivolous, argument for the extension or modification of existing law, that would permit Plaintiffs to file the RICO Statement; and 3) the RICO Statement's allegations attempting to link Dr. Al-Alwani to the September 11th attack have no evidentiary support. Accordingly, we ask that you take steps to immediately withdraw the Complaint and the RICO Statement filed against Dr. Al-Alwani.

Very truly yours,

**DLA Piper Rudnick Gray Cary US LLP**

Steven Barentzen
Attorney
*steven.barentzen@dlapiper.com*

Admitted to practice in the District of Columbia and New York

FedEx | Ship Manager | Label 7911 9242 5594 <span>Page 1 of 1</span>



From:   Origin ID: (202)689-7979
Mary Pasternack
DLA Piper Rudnick Gray Cary US
1200 19th Street, NW

**WASHINGTON, DC 20036**

Ship Date: 02SEP05
Actual Wgt: 1 LB
System#: 3966799/INET2200
Account#: S *********

REF: 353138-6

Delivery Address Bar Code

SHIP TO:   (212)800-2222       **BILL SENDER**

**Jerry S. Goldman, Esq.**
**Jerry S. Goldman & Associates PC**
**111 Broadway**
**13th Floor**
**New York, NY 10006**



**PRIORITY OVERNIGHT**      **TUE**

TRK#   **7911  9242  5594**   FORM 0201

Deliver By:
06SEP05

**EWR**   A1

**10006**   -NY-US

## NE FIDA

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT D

TWO PENN CENTER PLAZA • SUITE 1411
1500 JFK BOULEVARD
PHILADELPHIA, PA 19102
TEL: 215.569.4500 • FAX: 215.569.8899

# LAW OFFICES OF
# JERRY S. GOLDMAN & ASSOCIATES, P.C.

A NEW YORK PROFESSIONAL CORPORATION DULY QUALIFIED TO TRANSACT
BUSINESS WITHIN THE COMMONWEALTH OF PENNSYLVANIA

JERRY S. GOLDMAN
DIRECT DIAL: 215.569.4500 ext. 12
jgoldman@goldmanlawyers.com
Admitted to: NY, PA & MASS
L_M In Taxation

111 BROADWAY • 13TH FLOOR
NEW YORK, NY 10006
TEL: 212.242.2232 • FAX: 212.346.4665

3109 STIRLING ROAD • SUITE 101
FORT LAUDERDALE, FL 33312
TEL: 954.981.6533 • FAX: 954.969.8068

Reply To: New York

September 30, 2005

**Original Via First Class Mail**
**Copy via Facsimile- 202.223.2085**

Steven Barentzen, Esquire
DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW
Suite 700
Washington, D.C. 20036-2430

Re:   **In re Terrorist Attacks of September 11, 2001, MDL No. 1570 (RCC);**
      *Estate of John P. O'Neill Sr., et al. v. The Republic of Iraq, et al.,* 04
      CV 1076 (RCC)

Dear Mr. Barentzen:

This letter is in response to your letter dated September 2, 2005 ("letter"), receipt of which is acknowledged, as well as our brief discussion after the court hearing on September 27, 2005.

We have reviewed your contentions contained within the letter, and accept to one aspect, discussed below, we respectfully disagree.

With regard to the RICO Statement, we will be withdrawing same, without prejudice, subject to leave to refile, if and when a the District Court grants leave to file it upon motion (or cross motion); the CMO provision in question is modified upon consent or upon order of the District Court; or, a Court of competent jurisdiction reconsiders or overturns the Judge's decision in this regard.

We will not, however, withdraw our Amended Complaints nor our More Definite Statements/additional allegations.

Procedurally, Plaintiff believe both are proper under CMO 2, Paragraph 13 ("Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously filed Complaints or Amended Complaints."); See also, the first and

## LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, P.C.

September 29, 2005
Page 2

last sentences of CMO Paragraph 13, as amended, relative to the right to file and the timing of filing, amended complaints.

As we discussed on September 27, 2005, I would like to direct your attention to certain binding and other authority which we believe is relevant to the issues at hand and, we believe, may assist in resolving this issue. Commer. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 387 (2d Cir. 2001), we believe is particularly controlling, and we note that it was decided prior to Swierkiewicz's reiteration of the concept of notice pleading. Such approach has been followed in the 9th Circuit in Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1107-1109 (9th Cir. 2003), cert. denied, 541 U.S. 1043 (2004) (post - Swierkiewicz). See generally, McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir. 1992) (noting district court dismissed complaint after considering both complaint and RICO case statement); Moses v. Martin, 360 F. Supp. 2d 533, 539, n. 22 (S.D.N.Y. 2004) ("[m]y individual rules require a party alleging a RICO violation to submit a RICO Statement, which is considered part of the complaint"); Allen v. New World Coffee, Inc., 2001 U.S. Dist. LEXIS 3269, n. 3 (S.D.N.Y., 2001); Dempsey v. Sanders, 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); Mega Tech Int'l Corp. v. Al-Saghyir Establishment, 1999 U.S. Dist. LEXIS 6381 (S.D.N.Y. 1999); A. Terzi Prods. v. Theatrical Protective Union, Local No. One, 2 F. Supp. 2d 485, 509, n. 16 (S.D.N.Y. 1998); Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network, No. CIV. A. 99-4653, 2001 WL 41143, at *3 n.1 (E.D.Pa. Jan. 18, 2001) ("[t]he RICO case statement is a pleading that may be considered part of the operative complaint for purposes of a motion to dismiss.").

Substantively, we believe that there is a reasonable basis for our allegations, viewing the pleadings, as a whole, as defined in Rule 11, and the case law relating thereto, applicable in the Second Circuit.

We believe, in fact, that the More Definite Statements/Additional Allegations, for example, clarify the misunderstanding that you have as to identity of your client. See, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002). See generally, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993); Pelman v. McDonald's Corp., 396 F.3d 508, 511-12 (2d Cir. 2005) (need only meet the bare-bones notice-pleading requirements of Rule 8(a)). C.f., Fed. R. Civ. Proc. 8 (f); Conley v. Gibson, 355 U.S. 41, 48 (1957) (complaint construed to do substantial justice).

Obviously, there will be a question of proof, to be developed by way of discovery, and ultimately adjudicated, we believe favorably, in the course of a summary judgment motion, should you seek to file one, and a trial on the merits.

We believe that your filing of a Rule 11 motion, at this time, would be procedurally and substantively inappropriate and improper, and we reserve all rights we have to not only challenge same, but to seek sanctions, as well, if it is filed.

Plaintiffs have been, thus far, more than willing to accommodate what now clearly is an inexcusable delay in responding to a complaint which was properly served upon your client on July 29, 2005 - almost two months ago. You are now approximately forty (40) days late in responding to the pleadings as mandated under Fed. R. Civ. Proc. 12 (a) (1).

We urge you so that this litigation can proceed in a timely manner, as envisioned by the

## LAW OFFICES OF JERRY S. GOLDMAN & ASSOCIATES, P.C.

September 29, 2005
Page 3

Rules, to avoid prejudice to your client as well as ours, and in the interests of justice, to reconsider a reasonable stipulation which we have discussed. While we unequivocally dispute your claims of improper service, based upon what we believe is your good faith desire to assert them, we withdrew, back in August, our demand that a scheduling stipulation include a waiver of such claim. While we believe, based upon the record, that a RICO Statement is not necessary to proceed, and that based upon the facts and circumstances of this case, a court would grant us leave to file same,[1] in order to avoid a waste of the Court's valuable time, we suggest that it be included in the stipulation, in exchange for our consent not to challenge the continuing disregard of the requirements of filing a response pursuant to Rule 12(a)(1).

Very truly yours,

LAW OFFICES OF JERRY S. GOLDMAN &
ASSOCIATES, P.C.

By:_____
JERRY S. GOLDMAN, ESQUIRE

JSG:alm

---

[1] Recall, the *Iraq* case was originally filed in the District of Columbia in August, 2003. It did not appear on Judge Casey's docket, I believe, until approximately March of 2004. During that period of times, all matters were stayed pending the development of a scheduling order, which was entered, in the form of the CMO on June 16, 2004. If the individual rules were to apply to the *O'Neill-Iraq* case, we would probably have been in 'default' by the time the case was transferred to Judge Casey, or perhaps on the date that the CMO was entered.

This certainly could not have been the result that the Court envisioned.

# LAW OFFICES OF
# JERRY S. GOLDMAN &
# ASSOCIATES, P.C.

A New York Professional Corporation Duly
Authorized to Transact Business Within the
Commonwealth of Pennsylvania

Two Penn Center Plaza
1500 JFK Blvd.
Suite 1411
Philadelphia, PA 19102

Phone: 215-569-4500
FAX: 215-569-8899
JGoldman@Goldmanlawyers.com

# *Facsimile*

| | |
|---|---|
| To: | Steven Barentzen, Esquire |
| | DLA Piper Rudnick Gray Cary |
| | US LLP |
| Fax: | 202.223.2085 |
| From: | Jerry S. Goldman, Esq. |
| Date: | September 29, 2005 |
| Re: | In Re Terrorist Attacks of |
| | September 11, 2005 |
| Pages: | 4, including this |

Please see attached letter

## CONFIDENTIALITY NOTE

The documents accompanying this telecopier transmission contain information from the law firm of Law Offices of Jerry S. Goldman & Associates, P.C., which is confidential and/or legally privileged. The information contained in this telecopier transmission is intended solely for the recipient. You are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.