UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

This document relates to:     Kathleen Ashton, et al. v. Al Qaeda
                              Islamic Army, et al. (02 CV 6977)


# SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT DAR AL-MAAL AL-ISLAMI TRUST


SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
    *Dar Al-Maal Al-Islami Trust*

W02-NY:1ESC1\120004889.3

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST......................................................1

ARGUMENT..................................................................................................................................3

I      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST .......................3

          A.      Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort. ...............................5

          B.      Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries. ......................................6

          C.      Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust....................................................................6

II     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE...........................7

CONCLUSION...............................................................................................................................8

## INTRODUCTION

Pursuant to the Court's October 27, 2005 Order (Docket No. 1448), Dar Al-Maal Al-Islami Trust ("DMI Trust") is submitting this Supplemental Memorandum of Law in further support of its Motion to Dismiss filed on September 30, 2005 (Docket No. 1375) and in response to the *Ashton* plaintiffs' 'Sixth Amended Complaint' ("6AC") filed on September 30, 2005.

On September 30, 2005, the *Ashton* plaintiffs filed their 6AC, on the very same day that DMI Trust timely filed its Motion to Dismiss pursuant to a mutually-agreed stipulation. However, the *Ashton* plaintiffs' 6AC contains no new allegations other than allegations summarized from the *Burnett* plaintiffs' More Definite Statement as to DMI Trust, filed on May 10, 2005 (Docket No. 896). The *Ashton* plaintiffs' 6AC, like the *Burnett* pleadings from which they derive, make no allegations that even begin to state a claim against DMI Trust. See Memorandum of Law in support of DMI Trust's Motion to Dismiss the *Burnett* action ("*Burnett* Memorandum") (Docket No. 1401). Accordingly, for all the reasons stated herein and in DMI Trust's Initial Memorandum, the claims against DMI Trust should be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS AGAINST DMI TRUST

Plaintiffs' 6AC contains only a handful of pertinent allegations regarding DMI Trust, which are restated below verbatim:

- "DMI [Trust] has held substantial investments in three Sudanese banks which have been active supporters of Osama Bin Laden and Al Qaida; Faisal Islamic Bank Sudan ('FIBS'), Tadamon Islamic Bank ('TIB'), and Al Shamal Islamic Bank ('Al Shamal')." 6AC ¶ 436.

- FIBS was "implicated as an al Qaeda sponsor during the 2001 United States trial on the 1998 embassy bombings in Africa as managing bank accounts for al Qaeda operatives." 6AC ¶ 50. TIB "managed accounts of Al Qaeda operative[s]." 6AC ¶ 57. One of Bin Laden's investments was in Al Shamal. 6AC ¶ 38. "[A]t least six al Qaeda operatives held bank accounts in al Shamal Islamic Bank under their real names." 6AC ¶ 46. "Al Qaeda operatives received monthly checks of several hundred dollars from al Shamal Islamic Bank accounts and transferred $100,000.00 from al Shamal Islamic Bank to an al Qaeda representative in Jordan." 6AC ¶ 47.

- "DMI [Trust] has had long running business relations with Yousef Nada. Nada has been listed by the United States Department of the Treasury as a Specially Designated Global Terrorist for his financial backing of Al Qaida. Nada was a large shareholder in Faisal Islamic Bank Sudan, an associated company of DMI [Trust], and over which DMI [Trust] exercises significant influence." 6AC ¶ 437.

- "Bank Al Taqwa, a terror financing bank controlled by Yousef Nada is registered in the Bahamas at the same address as DMI [Trust]. The attorney in whose office DMI [Trust] and Bank Al Taqwa are registered took an active role in both entities. For DMI [Trust], the attorney provides corporate officers and shareholders. For Bank Al Taqwa, the attorney provided cash handling services." 6AC ¶ 438.

- "DMI [Trust]'s wholly owned subsidiary, Faisal Finance held 23 accounts for Wa'el Julaidan and Yasin Al Kadi. Swiss authorities froze these accounts in November 2001. Julaidan has been listed by the United States Department of the Treasury as a Specially Designated Global Terrorist for his activities in founding and supporting Al Qaida. Al Kadi has been listed for his financial support to Al Qaida as well as his actions with the Al Qaida front charity Muwaffaq." 6AC ¶ 439.[1]

- "DMI [Trust]'s actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and Al Qaida." 6AC ¶ 444.

In sum, plaintiffs allege that DMI Trust held stock in banking institutions that in turn allegedly supported Osama Bin Laden and Al Qaeda in the Sudan in the mid-1990s; that another shareholder in one of those Sudanese entities, and an account holder at another alleged subsidiary, were subsequently designated as terrorist financiers; and that an attorney in the Bahamas provided corporate legal services to DMI Trust as well as to a now-suspect bank. As this recitation makes clear, plaintiffs do not make any allegations of fact showing that DMI Trust provided anything other than routine banking services to anyone. See 6AC ¶ 435. In fact, plaintiffs do not allege any facts that DMI Trust *itself* did anything at all.[2] All of the allegations recited above concern activities by purported subsidiaries, and a former attorney of DMI Trust. Indeed, in their 6AC, plaintiffs fail to allege any communication between DMI Trust and anyone associated with al Qaeda; any facts showing any transfer of money to or from DMI Trust, by or to anyone associated with al

---

[1] Plaintiffs have wholly failed to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI Trust liable for the alleged tortious acts of any putatively related entity. See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (party seeking to pierce corporate veil must allege facts showing "complete domination" of subsidiary and that such domination was used to commit a wrong that injured plaintiff); MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (factors determining "domination" include, *inter alia*, disregard of corporate formalities, intermingling of funds, and inadequate capitalization); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69-70 (2d Cir. 1996) (conclusory allegations insufficient to pierce veil).

[2] As plaintiffs allege in substance if not in form, DMI Trust is a holding company, see 6AC ¶ 435, which holds interests in related companies and provides no banking or financial services to anyone.

Qaeda; any facts that could be read to imply DMI Trust's supposed intent to cause an attack on the United States; or any facts connecting DMI Trust *in any way* with the events of September 11, 2001.

## ARGUMENT

### I
### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DMI TRUST

Even with the benefit of many of the *Burnett* plaintiffs' allegations, as rephrased in their September 30 filing, the *Ashton* plaintiffs still have entirely failed to allege facts sufficient to state any of their claims against DMI Trust. The 'new' allegations asserted in the *Ashton* plaintiffs' 6AC mimic many of the allegations asserted in the *Burnett* plaintiffs' More Definite Statement as to DMI Trust (Docket No. 896). DMI Trust's *Burnett* Memorandum has already demonstrated that the *Burnett* allegations, now re-asserted by the *Ashton* plaintiffs, allege no facts sufficient to state their claims.

The *Ashton* plaintiffs, in their September 30 filing as well as those that preceded them, offer numerous conclusory allegations of the sort that the Court has already rejected. Apart from such conclusory allegations, the *Ashton* plaintiffs' 'new' allegations offer nothing that could be read to state their claims against DMI Trust. Indeed, upon even cursory review, the *Ashton* plaintiffs' allegations, like the *Burnett* allegations from which they derive, prove to be innocuous, and clearly fail to state a claim. For example, as to provision of banking services, plaintiffs conclusorily allege that al Qaeda members "got account" at the Sudanese banks FIBS, TIB and al Shamal, see 6AC ¶¶ 50, 57, 65; that DMI Trust previously held stock in those Sudanese entities, see 6AC ¶ 436; that another shareholder in one of those Sudanese entities, and an account holder at another alleged subsidiary, were subsequently designated as terrorist financiers, see 6AC ¶¶ 437, 439; and that an attorney in the Bahamas provided corporate legal services to DMI Trust as well as to a now-suspect bank, see 6AC ¶ 438.

To be clear, plaintiffs do not allege that DMI Trust itself provided any banking services to anyone at all. The allegations recited above all concern provision of banking services by alleged Sudanese "investments" and *subsidiaries* of DMI Trust. Plaintiffs fail to make any supporting

factual allegations indicating when, where, or how *DMI Trust* supported al Qaeda, or any allegations showing that *DMI Trust* -- or even any of its putative subsidiaries -- knowingly maintained accounts for al Qaeda operatives.  Absent any such allegations of fact, plaintiffs' assertions that purported Sudanese "investments" of DMI Trust maintained accounts of al Qaeda-related third parties, or that other alleged subsidiaries of DMI Trust maintained accounts of persons later deemed suspect, allege nothing more than the provision of routine banking services.  See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") (there is "no basis for a bank's liability for injuries funded by money passing through it on routine banking business"), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Terrorist Attacks on Sept. 11, 2001, --- F. Supp. 2d ----, 2005 WL 2296673, at *23 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II") (dismissing claims where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").  Moreover, even if these allegations did amount to anything other than the provision of routine banking services by supposed subsidiaries, plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust liable for any actions of those entities.  See supra n.2; see also, e.g., Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).

    In addition, plaintiffs' allegations of actions by former directors or officers of DMI Trust and its subsidiaries are irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment with DMI Trust.  Compare 6AC ¶¶ 437-38, 441-42 with, e.g., In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833, 836 ("[A]llegations concerning the Al Rajhi family cannot support a claim against Al Rajhi Bank because there is no allegation that the family members were acting in furtherance of Al Rajhi Bank business"; "[a]n employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the

employer's business."); Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 109 n.18 (D.D.C. 2003) (bank is not liable for conduct of board members in the absence of allegations that director "act[ed] within the scope of his bank employment when he allegedly provided support to al Qaeda"); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust consist of conclusory, boilerplate allegations that categorically fail to state a claim. Those allegations that are not utterly conclusory allege nothing more than the provision of routine banking services by putative subsidiaries or "investments" of DMI Trust. To state their inflammatory claims against DMI Trust, plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801. "Here, there are no such factual bases presented, there are only conclusions." Id.

### A. Plaintiffs Have Failed to Plead Facts Showing that DMI Trust Entered into Any Conspiracy, or that DMI Trust Aided and Abetted Any Tort.

As the above summary shows, plaintiffs of course do not allege that any personnel of DMI Trust directly participated in attacking the United States and injuring plaintiffs on September 11. Instead, plaintiffs must rely upon theories of concerted action liability -- conspiracy and aiding and abetting -- to state their claims.

Plaintiffs do not allege that DMI Trust participated in any conspiracy, but rather conclusorily allege that DMI Trust aided and abetted al Qaeda. See 6AC ¶ 444. To state the elements of aiding and abetting, plaintiffs must allege facts showing that DMI Trust had knowledge of the underlying tort and "intentionally and substantially" assisted in the commission of the tortious act. See, e.g., Liberman v. Worden, 701 N.Y.S.2d 419, 420, 268 A.D.2d 337, 338 (1st Dep't 2000) (dismissing aiding and abetting claim against bank where plaintiff failed to allege facts showing that defendants had knowledge of the misconduct and substantially assisted it). Neither plaintiffs'

previous conclusory allegations, nor those adopted from *Burnett*, even begin to establish such knowing and substantial assistance on the part of DMI Trust. Compare 6AC ¶ 444 ("DMI's actions and breach of duty have aided, abetted and provided material sponsorship of the spread of international terrorism and Al Qaida.") with Johnston v. Norton, 1993 WL 465333, at *15 (S.D.N.Y. Nov. 10, 1993) ("conclusory allegations of aiding and abetting . . . are not enough").

**B.  Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability – [] aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI Trust aided and abetted the primary wrongdoer. In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-aiding-and-abetting "requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer" and also allege facts showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted).

Even with the addition of the 'new' allegations adopted from the *Burnett* plaintiffs, plaintiffs here make no allegation of fact showing that any action by DMI Trust proximately caused their injuries. Nowhere do plaintiffs allege any facts indicating that the horrific events of September 11 were the direct and foreseeable result of any wrongful action by DMI Trust. This is of little surprise; plaintiffs could not make any such allegation, because plaintiffs have not alleged any particular wrongful action by DMI Trust at all. Plaintiffs also have entirely failed to allege facts sufficient to make out an assertion that DMI Trust caused their injuries by aiding-and-abetting. In sum, plaintiffs have failed to make any allegation against DMI Trust that could support a finding of proximate cause as to any of the pending claims.

**C.  Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust.**

DMI Trust has previously addressed in detail each of plaintiffs' seven causes of action. See Memorandum of Law in support of DMI Trust's Motion to Dismiss the *Ashton* action

("Initial Memorandum") (Docket No. 1376, at 14-19); see also *Burnett* Memorandum at 15-24. The allegations adopted from the Burnett plaintiffs and now included in the *Ashton* 6AC add nothing sufficient to state *any* of the elements of plaintiffs' seven claims, other than injury. Consequently, plaintiffs "can prove no set of facts in support of their claims that would entitle them to relief." In re Sept. 11 Attacks II, 2005 WL 2296673, at *18 (citations omitted). The claims against DMI Trust therefore must be dismissed.

## II
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

In its Initial Memorandum, DMI Trust sought dismissal with prejudice on the ground that, even after six successive Complaints over the course of the last three years, plaintiffs had utterly failed to state any of their claims against DMI Trust. Any further amendment of plaintiffs' claims, DMI Trust argued, could be expected to be futile. See Init. Mem. at 25. Plaintiffs have now filed yet a seventh Complaint, that adds to plaintiffs' quiver many of the allegations made by the *Burnett* plaintiffs; nevertheless, yet again, plaintiffs have failed to allege facts sufficient to state their claims. Thus, with this *seventh* complaint, plaintiffs have decisively confirmed that any further amendment of their allegations will be futile. Dismissal of plaintiff's claims against DMI Trust, therefore, should ensue with prejudice. See Electronic Commc'n Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to amend because complaint failed to state claim and amendment would be futile); In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33, 835 (dismissing Arab Bank with prejudice where plaintiffs "have not offered any facts to support an amendment"); Ford v. New Britain Trans. Co., 2004 WL 3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had three opportunities to file an amended complaint and has still been unable to state a viable claim").

## CONCLUSION

For the foregoing reasons, defendant DMI Trust respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
       November 4, 2005

                                          Respectfully submitted,
                                        SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                        By:_____/x/_____
                                            James J. McGuire (JM-5390)

                                           30 Rockefeller Plaza, 24th Floor
                                           New York, New York 10112
                                           (212) 332-3800

                                           *Attorneys for Defendant*
                                              *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel