**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

This document relates to:         Continental Casualty Co., et al. v. Al Qaeda, et al.
(04 CV 5970) (RCC)

New York Marine and General Ins. Co. v. Al
Qaida, et al. (04 CV 6105) (RCC)

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS DMI ADMINISTRATIVE SERVICES S.A. AND DAR AL-MAAL AL-ISLAMI TRUST

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendants*
    *DMI Administrative Services S.A. and*
    *Dar Al-Maal Al-Islami Trust*

W02-NY:1ESC1\120004904.4

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................................1

SUMMARY OF ALLEGATIONS AGAINST DMI TRUST AND DMI S.A. ..................................2

ARGUMENT.......................................................................................................................................4

I      THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST DMI TRUST AND
DMI S.A. ..................................................................................................................................4

          A.      Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any  Actions
By DMI Trust or DMI S.A. Proximately Caused Plaintiffs' Injuries............................8

          B.      Plaintiffs Have Failed To Plead Facts Sufficient To State Any  Of Their
Causes of Action Against DMI Trust or DMI S.A. .......................................................8

II     AS ESTABLISHED IN DMI S.A.'s INITIAL AND *FEDERAL INSURANCE*
MEMORANDA, THIS COURT LACKS PERSONAL JURISDICTION OVER
DMI S.A. ..................................................................................................................................9

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE..........................9

CONCLUSION...................................................................................................................................10

**INTRODUCTION**

Pursuant to the Court's October 27, 2005 Order (Docket No. 1448), Dar Al-Maal Al-Islami Trust ("DMI Trust") is submitting this Supplemental Memorandum of Law in further support of its Motion to Dismiss and its initial Memorandum of Law in support thereof, filed on September 23, 2005 (Docket No. 1265) ("DMI Trust Initial Memorandum"), and in response to the *NY Marine* plaintiffs' 'Second Amended Complaint' ("*NY Marine* SAC") and the *Continental Casualty* plaintiffs' 'Second Amended Complaint' ("*Contl. Cas.* SAC").  In addition, DMI Administrative Services S.A. ("DMI S.A.") is submitting this Supplemental Memorandum of Law in further support of its Motion to Dismiss and its initial Memorandum of Law in support thereof, filed on May 9, 2005 (Docket No. 889) ("DMI S.A. Initial Memorandum"), and in response to the *NY Marine* SAC.[1]

The *NY Marine* and *Continental Casualty* plaintiffs both filed documents entitled 'Second Amended Complaint'[2] -- weeks to months *after* DMI S.A. and DMI Trust timely filed their Motions to Dismiss pursuant to a mutually-agreed stipulation.  However, the *NY Marine* and *Continental Casualty* plaintiffs' "new" Complaints contain no new allegations, other than allegations copied verbatim from the *Federal Insurance* plaintiffs' First Amended Complaint ("*Fed. Ins.* FAC") and the *Federal Insurance* plaintiffs' Amended RICO Statement as to DMI Trust and DMI S.A. ("*Fed. Ins.* RICO Statement"), filed on May 26, 2005 (Docket No. 949).  In fact, the *NY Marine* plaintiffs' allegations concerning DMI Trust and DMI S.A. are *identical* to those asserted by the *Federal Insurance*

---

[1] On May 9, 2005, DMI S.A. filed a Motion to Dismiss both the *NY Marine* and *Continental Casualty* actions (Docket Nos. 888-89).  However, on September 2, 2005, the *Continental Casualty* plaintiffs voluntarily dismissed DMI S.A. (Docket No. 1171) and DMI S.A. is not named in the *Contl. Cas.* SAC.

[2]  The Court's Case Management Order #2 ("CMO #2") charged that "on July 31, 2005 [and later extended until September 30, 2005], the plaintiffs shall file an amended complaint that includes all amendments made prior to that date . . . ."  CMO #2, ¶ 13.  The *Continental Casualty* plaintiffs' SAC, filed on October 6, 2005 (Docket No. 1406), must be stricken as untimely.  Further, plaintiffs' purported attempt to attach and/or incorporate by reference RICO Statements (or nearly verbatim copies thereof) previously filed by the *Federal Insurance* plaintiffs violates a multitude of rules and policies: (i) neither of the plaintiffs filed a single comprehensible complaint, in violation of CMO #2, ¶ 13; (ii) neither of the plaintiffs list their allegations in sequentially numbered paragraphs, in violation of Fed. R. Civ. Proc. 10; (iii) the RICO Statement attached as Exh. 23 to the *NY Marine* SAC is untimely, see Court's Instructions for Filing RICO Statement, *available at* http://www.nysd.uscourts.gov/Individual_Practices/rico.pdf (requiring plaintiffs to file RICO statement within 20 days of asserting the RICO claim); and (iv) plaintiffs' numerous exhibits, duplicative allegations, and unnumbered paragraphs impose a needless burden on the Court and defendants.  In light of the plaintiffs' deliberate disregard for the Court's Orders, their "new" pleadings should be stricken and, considering the resulting waste of judicial resources and attorneys' fees and their continued assertion of allegations known to be without evidentiary support, DMI Trust and DMI S.A. reserve the right to move for sanctions.

plaintiffs.  The *NY Marine* plaintiffs explicitly adopt and incorporate by reference the *Federal Insurance* RICO Statement and they copy verbatim the *Federal Insurance* FAC, <u>compare</u> *NY Marine* SAC ¶¶ 286-91 <u>with</u> *Fed. Ins.* FAC ¶¶ 307-12.  Similarly, the *Continental Casualty* plaintiffs' SAC dupes out the allegations from their previous FAC and then attaches a confusing 250-page "Addendum To Second Amended Complaint," which includes a nearly verbatim copy of the *Federal Insurance* RICO Statement.  <u>See</u> *Contl. Cas.* SAC, Addendum, Section X.  The *NY Marine* and *Continental Casualty* plaintiffs' "new" Complaints, like the *Federal Insurance* pleadings from which they are largely copied, make no allegations that even begin to state a claim against either DMI Trust or DMI S.A., and contain no allegations that could establish the Court's jurisdiction over DMI S.A.  <u>See</u> DMI Trust's Memorandum of Law in support of its Motion to Dismiss the *Federal Insurance* action ("DMI Trust *Fed. Ins.* Memorandum") (Docket No. 1403) <u>and</u> DMI S.A.'s Memorandum of Law in support of its Motion to Dismiss the *Federal Insurance* action ("DMI S.A. *Fed. Ins.* Memorandum") (Docket No. 1263).  Accordingly, for all the reasons stated herein and in DMI Trust and DMI S.A.'s Initial Memoranda, the claims against DMI Trust and DMI S.A. should be dismissed with prejudice.

<u>**SUMMARY OF ALLEGATIONS AGAINST DMI TRUST AND DMI S.A.**</u>

Because both the *NY Marine* and *Continental Casualty* plaintiffs' allegations parrot the allegations asserted by the *Federal Insurance* plaintiffs, their allegations have already been shown to be without merit in DMI Trust's and DMI S.A.'s *Federal Insurance* Memoranda.  For the Court's convenience, however, plaintiffs' current allegations regarding DMI Trust and DMI S.A. are restated and addressed below:

<u>Jurisdictional Allegations</u>:

DMI S.A. is an administrative services company located in Geneva, Switzerland.  <u>See</u> *NY Marine* SAC, Exh. 23 at 7.  Plaintiffs assert that DMI S.A., in the early 1980s, advertised three times in the *Wall Street Journal* or *New York Times* regarding the company's founding and its inability to attend a Islamic Banking conference; that DMI S.A.'s CEO reportedly said that related companies "substantially increased" their investments in the U.S. after September 11, 2001; and that DMI S.A. held a 35% interest in Boston Capital, a Massachusetts-based real estate firm.  <u>See</u> <u>id.</u> at 16-17, 20.

<u>Allegations Concerning Donations to Charities</u>:

Plaintiffs allege that "DMI [Trust] and its affiliates disburse *Zakat* and *Haram* [sic] funds under their control to charities [that] . . . were, in fact, fronts for al Qaeda." <u>See</u> *NY Marine* SAC, Exh. 23 at 15; *Contl. Cas.* SAC, Addendum at 387. In support, plaintiffs allege that DMI Trust made *zakat* donations to branches of the International Islamic Relief Organization ("IIRO") and the Muslim World League ("MWL") in Egypt in the early 1990s. <u>See</u> *NY Marine* SAC, Exh. 23 at 16; *Contl. Cas.* SAC, Addendum at 387. Plaintiffs assert that DMI Trust "knew or had to know that the funds that it managed or contributed . . . to certain charities, were reasonably foreseeable and/or likely to be used for international terrorist activities and terrorist-related purposes," <u>see id.</u>, even though by plaintiffs' own account, such charities "facilitat[ed] and mask[ed] the collection and movement of [al-Qaeda] funds . . . to conceal [al Qaeda's] existence and true purpose." <u>See</u> *NY Marine* SAC ¶¶ 59, 97.

<u>Allegations Concerning The Provision Of Banking Services</u>:

Plaintiffs sweepingly allege that DMI Trust and DMI S.A. "launder[ed] money . . . provid[ed] financial services . . . and facilitat[ed] weapons and military equipment purchases and money transfers" in support of al Qaeda. <u>See</u> *NY Marine* SAC, Exh. 23 at 9; *Contl. Cas.* SAC, Addendum at 382. DMI Trust, plaintiffs conclusorily assert, "has actively sponsored and supported . . . al Qaida," via its putative indirect Sudanese subsidiaries Faisal Islamic Bank (Sudan) ("FIBS"), Tadamon Islamic Bank ("TIB"), and al Shamal Islamic Bank ("al Shamal"). <u>See</u> *NY Marine* SAC ¶ 290; <u>see also</u> *Contl. Cas.* SAC, Addendum at 381-82, 386. In support, plaintiffs offer that al Qaeda operatives maintained accounts at these Sudanese banks in the mid-1990s, and that money from those accounts was transferred by the account holders to other al Qaeda members. <u>See</u> *NY Marine* SAC Exh. 23 at 11-13; *Contl. Cas.* SAC, Addendum at 384-86. Plaintiffs further allege that, at an unspecified time and place and for unspecified purposes, subsidiaries of DMI Trust have "facilitated financial transactions for, and advertised, maintained and serviced accounts on behalf of, several of al Qaeda's known charity fronts, including al Haramain Islamic Foundation, [IIRO] and the [MWL]"

and that the IIRO held accounts at two other alleged subsidiaries of DMI Trust.  See *NY Marine*
SAC Exh. 23 at 9, 15; *Contl. Cas.* SAC, Addendum at 382, 387.

In sum, plaintiffs allege that DMI Trust made donations to two Islamic charities, that
its purported affiliates maintained and serviced accounts for those charities, and that al Qaeda
members used accounts at other putative subsidiaries, in the Sudan in the mid-1990s.  Plaintiffs do
not make any allegations of fact showing that DMI Trust or DMI S.A. made donations to charities
with any knowledge that such charities were al Qaeda 'fronts,' or provided anything other than
routine banking services to anyone.  Nor do plaintiffs allege *any facts* showing that DMI Trust or
DMI S.A. ever entered into any sort of agreement at all, let alone a conspiratorial agreement by all
defendants to "commit acts of international terrorism against the United States, its nationals and
allies."  See *NY Marine* SAC ¶ 515.  Indeed, plaintiffs fail to allege any communication between DMI
Trust or DMI S.A. and anyone associated with al Qaeda; any facts showing any knowing transfer of
money to or from DMI Trust or DMI S.A., by or to anyone associated with al Qaeda; any facts that
could be read to imply DMI Trust or DMI S.A.'s supposed intent to cause an attack on the United
States; or any facts connecting DMI Trust or DMI S.A. *in any way* with the events of September 11.

## ARGUMENT

### I
### THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST DMI TRUST AND DMI S.A.

Even with the benefit of the *Federal Insurance* plaintiffs' additional allegations, as
adopted wholesale by their September 30 and October 6 filings, the *NY Marine* and *Continental
Casualty* plaintiffs entirely fail to allege facts sufficient to state any of the claims against DMI Trust or
DMI S.A.  Plaintiffs' allegations in their September 30 and October 6 filings are identical or nearly
identical to the allegations previously addressed by DMI Trust and DMI S.A.'s Motions to Dismiss
the *Federal Insurance* action.  Accordingly, DMI Trust and DMI S.A.'s *Federal Insurance* Memoranda
have already demonstrated that the *Federal Insurance* allegations, now asserted by the *NY Marine* and
*Continental Casualty* plaintiffs, allege no facts sufficient to state their claims.

The *NY Marine* and *Continental Casualty* plaintiffs, in their September 30 and October 6 filings as well as those that preceded them, offer numerous conclusory allegations of the sort that the Court has already rejected. Apart from such conclusory allegations, the plaintiffs' 'new' allegations offer nothing that could be read to state their claims against DMI Trust or DMI S.A. Indeed, upon even cursory review, the *NY Marine* and *Continental Casualty* plaintiffs' allegations, like the *Federal Insurance* allegations from which they have been copied, prove to be innocuous, and often self-contradictory. For example, while plaintiffs allege that DMI Trust and DMI S.A. donated *zakat* funds to IIRO and MWL in the early 1990s, see *NY Marine* SAC, Exh. 23 at 16 and *Contl. Cas.* SAC, Addendum at 387, plaintiffs do not allege any facts showing that DMI Trust or DMI S.A. provided donations to the IIRO or MWL with the knowledge that either charity was a terrorist 'front,' or any "facts to support an inference that [DMI Trust or DMI S.A. were] sufficiently close to the terrorists' illegal activities" to infer such knowledge. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 800, 813-14 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") ("Conclusory allegations that [defendant] donated money to charities, without specific factual allegations that he knew they were funneling money to terrorists, do not suffice.").

Moreover, plaintiffs' insinuation of wrongdoing is flatly contradicted by their own allegations. Plaintiffs allege -- correctly -- that Muslims avoid making *zakat* contributions to charities that support prohibited activities such as the use of tobacco or alcohol, see *NY Marine* SAC, Exh. 23 at 14-16 and *Contl. Cas.* SAC, Addendum at 386-88, in an apparent attempt to imply that, because DMI Trust and DMI S.A. donate to Islamic charities in order to ensure that *zakat* contributions do not support such activities, they must have known that the specific charities to whom they allegedly made contributions were terrorist 'fronts.' This allegation regarding the duty of *zakat* cannot support such an implication. Plaintiffs acknowledge that Islamic charities' support for terrorism was conducted by "merg[ing]" and "hid[ing]" illicit funds among licit donations to "legitimate humanitarian or social programs," in order to "conceal [al Qaeda's] existence and true purpose," see *NY Marine* SAC ¶¶ 59, 97, negating any inference that donors like DMI Trust and DMI S.A. "had to know" that *zakat* funds were being diverted. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33

(dismissing claims against bank despite similar allegations regarding duty of *zakat*); 5C CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363 at 120-21 (3d

ed. 2004) ("the district court will not accept as true pleading allegations that are contradicted by . . .

other allegations").  Thus, "[p]laintiffs have not pleaded facts to suggest [that DMI Trust or DMI

S.A.] knew they were making contributions to terrorist fronts and provided substantial assistance or

encouragement to the terrorists."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800.[3]

Similarly, as to provision of banking services, plaintiffs allege that al Qaeda members

maintained accounts at the Sudanese banks FIBS, TIB and al Shamal, see *NY Marine* SAC ¶ 290 and

*Contl. Cas.* SAC, Addendum at 381-82, 386; that subsidiaries of DMI Trust have "facilitated financial

transactions for, and advertised, maintained and serviced accounts on behalf of" al Haramain, the

IIRO and MWL, see *NY Marine* SAC, Exh. 23 at 9 and *Contl. Cas.* SAC, Addendum at 382; and that

the IIRO held accounts at two other alleged subsidiaries of DMI Trust, see *NY Marine* SAC, Exh. 23

at 15 and *Contl. Cas.* SAC, Addendum at 387.  To be clear, plaintiffs do not allege that DMI Trust or

DMI S.A. provided any banking services to anyone at all.  The allegations recited above all concern

provision of banking services by alleged *subsidiaries* of DMI Trust.[4]  And while plaintiffs allege that

some of those subsidiaries "facilitated financial transactions" and maintained accounts for al

Haramain, the IIRO and MWL, and that other putative subsidiaries maintained accounts for al

Qaeda-related third parties in the Sudan, see *NY Marine* SAC, Exh. 23 at 9, 15 and *Contl. Cas.* SAC,

---

[3]  Unlike Hamas in Boim, none of the organizations that DMI Trust or DMI S.A. are alleged to have
supported were designated a sponsor of terrorism at the time of the alleged contributions.  See Boim v.
Quranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1002 (7th Cir. 2002)
(noting that Hamas was designated a terrorist organization by President Clinton in 1995 and by the Secretary
of State in 1997).  Moreover, unlike the conclusory and attenuated allegations made by plaintiffs here, the
plaintiffs in Boim made specific factual allegations directly tying the defendants to Hamas, including
allegations that "one defendant entity allegedly employed an individual designated as a terrorist affiliated with
Hamas, another entity admitted providing funds to Hamas, two individual defendants had documented and
admitted ties to Hamas, and numerous links existed between the individual terrorist defendants and the entity
defendants."  In re Sept. 11 Attacks I, 349 F. Supp. 2d at 800 (citation omitted).  No such allegations are
made here as to DMI Trust or DMI S.A.

[4]  Indeed, as plaintiffs allege in substance if not in form, DMI Trust is a holding company, see *NY Marine*
SAC, Exh. 23 at 7 and *Contl. Cas.* SAC, Addendum at 381-82, which holds interests in related companies and
provides no banking or financial services to anyone, and DMI S.A. is an administrative service provider, see
*NY Marine* SAC, Exh. 23 at 8, not a bank.

Addendum at 382, 387, plaintiffs fail to make any supporting factual allegations indicating when, where, why or how any subsidiary of DMI Trust "facilitated" any transactions, or any allegations showing that any subsidiary of DMI Trust knowingly maintained accounts for suspect persons. Absent any such allegations of fact, plaintiffs' assertion that subsidiaries of DMI Trust "facilitated financial transactions" for al Haramain, the IIRO and MWL alleges nothing more than the provision of routine banking services.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 (dismissing claims against al Rajhi Bank), 835 (absent factual allegations supporting *scienter*, allegations that Arab Bank "provid[ed] financial services to the charity Defendants [and] process[ed] wire transfers" were innocuous and insufficient); In re Terrorist Attacks on Sept. 11, 2001, --- F. Supp. 2d ----, 2005 WL 2296673, at *23 (S.D.N.Y. Sept., 21 2005) ("In re Sept. 11 Attacks II") (dismissing claims against defendant where plaintiff "does not allege that [defendant] knew the money it was transferring between IIRO and IRO would somehow assist al Qaeda, nor does it allege facts showing that [defendant] knew the other [] organizations to which it transferred money were in the business of supporting terrorism.").  Moreover, even if these allegations did amount to anything other than the provision of routine banking services by those subsidiaries, plaintiffs have alleged no facts that could support piercing the corporate veil and holding DMI Trust liable for any actions of its ostensible subsidiaries.  See Ray's Trading (H.K.) Co. Ltd., Inc. v. Judy-Philippine, Inc., 1998 WL 355422, *3-5 (S.D.N.Y. Jul. 2, 1998) (dismissing for failure to plead facts in support of veil-piercing).[5]

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI Trust and DMI S.A. consist of conclusory allegations that categorically fail to state a claim.  Those allegations that are not utterly conclusory are either thoroughly irrelevant,[6] or allege nothing more than the provision of routine banking services and innocuous charitable donations that, according to

---

[5]  See also DMI Trust Init. Mem. at 2 n.1.

[6]  For instance, plaintiffs' allegations regarding former members of the Board of Supervisors of DMI Trust are irrelevant in the absence of any indication that such persons committed any wrong in the course of their employment.  Compare *NY Marine* SAC Exh. 23 at 9-10 and *Contl. Cas.* SAC Addendum at 383-84 with, e.g., In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833, 836 ("[A]n employee's actions cannot be a basis for employer liability unless the employee was acting in furtherance of the employer's business."); Gmurzynska v. Hutton, 2003 WL 1193727, at *7-8 (S.D.N.Y. March 14, 2003) ("mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim").

plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so. To state their inflammatory claims against DMI Trust and DMI S.A., plaintiffs are required to allege *some facts* "to support the allegation that [DMI Trust or DMI S.A.] knew [a] receiving organization to be a solicitor, collector, supporter, front or launderer for [terrorists, or] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer." In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801. "Here, there are no such factual bases presented, there are only conclusions." Id.

      **A.**      **Plaintiffs Have Failed To Plead Facts Sufficient To Show That Any Actions By DMI Trust or DMI S.A. Proximately Caused Plaintiffs' Injuries.**

      Even with the additional allegations that they have copied from the *Federal Insurance* plaintiffs' filings, the *NY Marine* and *Continental Casualty* plaintiffs still offer no allegation of fact showing that any action by DMI Trust or DMI S.A. proximately caused their injuries. Nowhere do plaintiffs allege any facts indicating that the horrific events of September 11 were the direct and foreseeable result of any wrongful action by DMI Trust or DMI S.A., and indeed plaintiffs have not alleged any particular wrongful action by DMI Trust or DMI S.A. at all. Plaintiffs also have entirely failed to allege facts sufficient to make out an assertion that DMI Trust or DMI S.A. caused their injuries by conspiracy or aiding-and-abetting. See DMI Trust Init. Mem. at 9-12 and DMI S.A. Init. Mem. at 21-24. In sum, plaintiffs have failed to make any allegation against DMI Trust or DMI S.A. that could support a finding of proximate cause as to any of the pending claims.

      **B.**      **Plaintiffs Have Failed To Plead Facts Sufficient To State Any Of Their Causes of Action Against DMI Trust or DMI S.A.**

      DMI Trust has previously addressed in detail each of plaintiffs' causes of action. See DMI Trust Init. Mem. at 14-23. Similarly, DMI S.A. has previously addressed in detail each of the *NY Marine* plaintiffs' seven causes of action. See DMI S.A. Init. Mem. at 17-25. The 'new' allegations borrowed from the *Federal Insurance* plaintiffs include nothing that suffices to state any of the elements of any of plaintiffs' causes of action against DMI Trust or DMI S.A., other than injury. See id.; DMI Trust Init. Mem. at 14-23; see also DMI Trust *Fed. Ins.* Mem. at 15-24; DMI S.A. *Fed. Ins.* Mem. at 16-24. Consequently, plaintiffs "can prove no set of facts in support of their claims

that would entitle them to relief." In re Sept. 11 Attacks II, 2005 WL 2296673, at *18.  The claims

against DMI Trust and DMI S.A. therefore must be dismissed.

**II**
**AS ESTABLISHED IN DMI S.A.'s INITIAL AND *FEDERAL INSURANCE***
**MEMORANDA, THIS COURT LACKS PERSONAL JURISDICTION OVER DMI S.A.**

The *NY Marine* plaintiffs' newly-adopted allegations fail to allege any facts that could

be read to show that DMI S.A. has had any systematic contacts with the United States or any role in

the terrorist attacks of September 11.  DMI S.A. has fully addressed these allegations before.  See

DMI S.A Init. Mem. at 3-12; DMI S.A. *Fed. Ins.* Mem. at 3-10. As set forth in detail in DMI S.A.'s

two Memoranda, neither the allegation that DMI S.A. held an ownership interest in a Boston firm,

nor the allegation that DMI S.A. advertised in U.S. newspapers, states "continuous and systematic"

contacts with New York or the U.S.  See DMI S.A. Init. Mem., at 4-6; DMI S.A. *Fed. Ins.* Mem., at 5,

8; see also, e.g., In re Sept. 11 Attacks II, 2005 WL 2296673, at *14 (granting dismissal for lack of

general jurisdiction even though defendant owned substantial shares in two Texas-based entities).

Moreover, the *NY Marine* plaintiffs have failed to allege facts that could give rise to personal

jurisdiction on a theory of conspiracy or aiding and abetting.  See In re Sept. 11 Attacks I, 349 F.

Supp. 2d at 806 ("personal jurisdiction cannot be based on a New York long-arm conspiracy theory"

where plaintiffs "do not allege any specific facts from which the Court could infer that [defendant]

directed, controlled, or requested al Qaeda to undertake its terrorist activities."); DMI S.A.'s Init.

Mem., at 8-9; DMI S.A. *Fed. Ins.* Mem., at 5-7.  Accordingly, plaintiffs have not made a *prima facie*

showing of either (i) personal jurisdiction under New York's long-arm statute or (ii) the minimum

contacts necessary, for due process purposes, to invoke personal jurisdiction over DMI S.A.

Therefore, the claims against DMI S.A. should be dismissed in their entirety.

**III**
**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

In their Initial Memoranda, DMI Trust and DMI S.A. sought dismissal with

prejudice on the ground that, even after two Complaints per action over the course of the last year,

plaintiffs had utterly failed to state any of their claims against DMI Trust or DMI S.A. or establish

the Court's jurisdiction over DMI S.A.  Any further amendment of plaintiffs' claims, DMI Trust and

DMI S.A. argued, could be expected to be futile.  See DMI Trust's Init. Mem. at 25.  Plaintiffs have

now each filed yet another Complaint, together with an attached RICO Statement or "Addendum"

that duplicates all of the *Federal Insurance* plaintiffs' allegations; nevertheless, yet again, plaintiffs have

failed to allege facts sufficient to state their claims, or to establish jurisdiction as to DMI S.A.  Thus,

with these filings, plaintiffs have confirmed that any further amendment of their allegations will be

futile, and dismissal of their claims against DMI Trust and DMI S.A. should ensue with prejudice.

See Electronic Commc'n Corp. v. Toshiba Am., 129 F.3d 240, 246 (2d Cir. 1997) (denying leave to

amend because complaint failed to state claim and amendment would be futile); In re Sept. 11

Attacks I, 349 F. Supp. 2d at 832-33, 835 (dismissing Arab Bank with prejudice where plaintiffs

"have not offered any facts to support an amendment"); Ford v. New Britain Trans. Co., 2004 WL

3078827, at *4 (D.Conn. Dec. 21, 2004) (dismissing with prejudice "because Plaintiff has now had

three opportunities to file an amended complaint and has still been unable to state a viable claim").

## CONCLUSION

For the foregoing reasons, defendant DMI Trust and DMI S.A. respectfully request

that this Court dismiss all claims against them with prejudice and award such further relief as

deemed just and proper.

Dated:  New York, New York
         November 4, 2005                    Respectfully submitted,
                                             SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                             By:_____/x/_____
                                                James J. McGuire (JM-5390)

                                                30 Rockefeller Plaza, 24th Floor
                                                New York, New York 10112
                                                (212) 332-3800
                                                *Attorneys for Defendants*
                                                   *DMI Administrative Services S.A. and*
                                                   *Dar Al-Maal Al-Islami Trust*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel