# EXHIBIT B

5B3HPARC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                           03 Cr. 1197 (SHS)

5   UZAIR PARACHA,

6              Defendant.

7   ------------------------------x

8
                                    New York, N.Y.
9                                   November 3, 2005
                                    3:30 p.m.
10
    Before:
11
                    HON. SIDNEY H. STEIN
12
                                          District Judge
13
                          APPEARANCES
14
    MICHAEL J. GARCIA
15       United States Attorney for the
         Southern District of New York
16  ERIC BRUCE
    KARL METZNER
17       Assistant United States Attorneys

18  EDWARD WILFORD
    ANTHONY RICCO
19       Attorneys for Defendant

20

21

22

23

24

25

5B3HPARC

1        (In open court)

2        THE DEPUTY CLERK:  United States v. Uzair Paracha, 03

3   Cr. 1197.

4        Counsel, please state your names for the record.

5        MR. BRUCE:  Good afternoon, your Honor.  Eric Bruce

6   and Karl Metzner for the government.

7        THE COURT:  Good afternoon, gentlemen.

8        MR. WILFORD:  Good afternoon, your Honor.  For the

9   defendant, Edward Wilford and Anthony Ricco.

10        Mr. Paracha is present.

11        THE COURT:  Good afternoon.

12        Let's handle some administrative matters and then I

13   wish to give you my determinations on the expert testimony and

14   the 403 issues.

15        I signed the order that was presented to me by the

16   defense counsel permitting the defendant to be wearing civilian

17   clothes.  In fact, I prefer that he be wearing civilian

18   clothes.

19        MR. RICCO:  Those clothes have been delivered to the

20   MCC and accepted.

21        THE COURT:  All right.

22        I have received the jury questionnaire with the names

23   filled in on page 4.  If the questionnaire is acceptable to

24   both sides, I will present this to the jury administrator.

25        I take it, it is the jury administrator who makes the

5B3HPARC

1    copies, is that correct?

2            MR. METZNER:  Actually, I think they would like us to,

3    and we are happy to.

4            THE COURT:  Then I will give this back to you and you

5    can make the copies.

6            Is the jury questionnaire acceptable to the

7    government?

8            MR. METZNER:  It is, your Honor.

9            THE COURT:  To the defense?

10           MR. WILFORD:  Yes, your Honor.

11           THE COURT:  I am going to give this back to the

12   government.

13           As I stated, the jury administrator believes that the

14   questionnaires will be filled out by 3:00.  Then it is the

15   government that is going to make copies, is that correct?

16           MR. METZNER:  Yes, your Honor.

17           THE COURT:  The attorneys for both sides then will

18   work on them --

19           MR. BRUCE:  Yes.

20           THE COURT:  -- here, and if the defense wants the

21   participation of the defendant, that is fine as well.

22           MR. WILFORD:  I'm sorry, your Honor, I didn't hear

23   you.

24           THE COURT:  I said if the defense wants the

25   participation of the defendant in that process, that is

5B3HPARC

1 │ acceptable.

2 │          When do the lawyers want the panel to be back here?

3 │          We can have them back here Tuesday morning if you

4 │ think that that is adequate time for the attorneys to go over

5 │ them.   It is somewhat preferable to have them back here on

6 │ Tuesday, but it is nonsensical if you don't think you are going

7 │ to be ready Tuesday morning.

8 │          MR. WILFORD:   Your Honor, we have been trying to get

9 │ some sense of how long it would take, and just doing a rough

10 │ estimate, if each of the attorneys get half of the

11 │ questionnaires, that would be approximately 87 questionnaires,

12 │ spending five minutes on each one would take approximately

13 │ seven hours just to review all the questionnaires.   That is

14 │ without any discussion between ourselves or with our client in

15 │ terms of decisions that need to be made.

16 │          So what we propose is the following, and this is in

17 │ consultation with the government, that we get together at 1:00

18 │ on Tuesday, have the jury present at 2:15, and we should be

19 │ able to have our discussion between 1 and 2 and arrive at the

20 │ joint cause challenges and be able to present them to the

21 │ court.

22 │          THE COURT:   If I understand you, you want the panel

23 │ back here at 2 on Tuesday.

24 │          MR. WILFORD:   Yes, and perhaps we could probably meet

25 │ with the government at 12, which would give us an opportunity

5B3HPARC

1   to see if there were any differences that you could resolve or
2   whether or not it is actually necessary to have that particular
3   juror present for additional questioning.

4        THE COURT:  The parties can arrange whenever and
5   however they want to meet.  We will have the panel back here
6   or, rather, assemble wherever the jury administrator is having
7   them assemble, at 2 on Tuesday.

8        The first order of business, then, is the attorneys
9   and the defendant will come into the courtroom at 2.  You will
10  give me the list of those who both sides agree should be
11  excused for cause, and I will have that done.  The jury
12  administrator can do that.  But I want to see who they are.
13  Then we will jointly decide who is to be questioned further and
14  bring them up in groups.

15       Then I will have the jury administrator bring the
16  panel back at 2 on Tuesday.

17       In light of the fact that due to a prior appointment
18  by defense counsel we cannot have court on November 22nd --
19  that is the date, Mr. Wilford, is that right?

20       MR. WILFORD:  Yes, your Honor.

21       THE COURT:  I am trying to rearrange my schedule so we
22  will have at least a half a day on November 15th.

23       Do you remember I said we couldn't meet on November
24  15?

25       MR. WILFORD:  Yes.

5B3HPARC

1        THE COURT:  We will have at least half a day because,

2  again, I want to have the evidence go in as efficiently and

3  serially as possible.

4        We won't have court on the 22nd.  We will have at

5  least a half a day on November 15th.

6        Yes.

7        MR. BRUCE:  Excuse me, your Honor.  I am just curious,

8  do you know if we would be having court in the morning or in

9  the afternoon?

10       THE COURT:  Probably in the morning.

11       MR. BRUCE:  Just so we can arrange the witnesses.

12       THE COURT:  Now I want to give you my determinations

13  on the expert and the Rule 403 determinations.

14       I am going to be referring to the slides as given to

15  me yesterday.

16       For the record, government, were they denominated

17  something?  Are they government exhibit something, as revised?

18  Remember what you gave me yesterday was the revised list.

19       MR. METZNER:  6, your Honor.

20       THE COURT:  Government 6 at the Daubert hearing.

21       My determination is as follows:

22       On September 20, the government provided defendant

23  with notice of its intent to call Evan Kohlmann as an expert

24  witness to testify on certain matters.

25       On October 4th, the defendant submitted a letter

5B3HPARC

1    motion seeking an in limine ruling precluding admission of the

2    government's proposed expert testimony on several grounds,

3    including that expert testimony failed to meet the requirements

4    of Rule 702, as elucidated in the *Daubert* and *Kumho Tire* cases.

5    Alternatively, the defendant sought a pretrial Daubert hearing

6    to test the reliability of the expert's methodology.

7            On October 28th, I heard oral argument on this issue

8    and I issued preliminary rulings regarding the scope of the

9    expert testimony.  Specifically, I concluded that the expert

10   testimony regarding the origins and organizational structure of

11   al Qaeda, the identification of leaders and members, and an

12   explanation of certain alleged al Qaeda tradecrafts,

13   specifically its use of operating by cells and its use of

14   individuals to provide logistical support are permissible

15   topics for the expert.

16           I concluded, though, that expert testimony regarding

17   al Qaeda's alleged use of counter-interrogation techniques,

18   including disinformation, would not be permitted on the ground

19   that such testimony impermissibly usurps the jury's fundamental

20   function of judging the credibility of witnesses.  *See United*

21   *States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) and *United*

22   *States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1998), rev'd in part

23   on other grounds, 856 F.2d 5 (2d Cir. 1988).

24           Additionally, the court granted defendant's request

25   for a Daubert hearing to test the reliability of the expert's

1   methodology and its application to the specific expert opinions

2   to be rendered.  That hearing was a full-day hearing and was

3   held yesterday, November 2nd.  As I say, I heard testimony for

4   the proposed expert as well as additional oral argument.

5           My rulings are as follows:

6           The government has met its burden of establishing by a

7   preponderance of the proof that its proposed expert, Evan

8   Kohlmann, has sufficient education, training, and knowledge to

9   be qualified as an expert, and that Kohlmann's methodology --

10  that is, his process of gathering sources, including a variety

11  of original and secondary sources, cross-checking sources

12  against each other, and subjecting his opinions and conclusions

13  to peer review -- is sufficiently reliable to meet the

14  standards for the admissibility of expert testimony set by the

15  Federal Rules of Evidence.

16          Everyone heard his qualifications yesterday.  He is

17  employed as the president and founder of globalterroralert.com,

18  a clearinghouse for information concerning terrorism.  He has

19  degrees in law and foreign service and Islamic studies, and he

20  has authored several thesis on topics related to the testimony

21  he proposes to give.  He has conducted research into terrorist

22  organizations specifically, including al Qaeda, as well as what

23  he calls Arab-Afghan groups of Mujahadeen fighters in various

24  locales who are affiliated, he claims, with al Qaeda.

25          He has also performed research into the development of

5B3HPARC

1   groups, including al Qaeda.  He has gathered various original

2   source materials, including audio and video materials and

3   publications authored by various terrorist groups.  He has

4   himself conducted a number of interviews with individuals who

5   are designated terrorists, or have associations with terrorist

6   groups.  He has had experience working at a think tank devoted

7   to research in terrorist organizations, whose name is the

8   Investigative Project.

9        His methodology consists of gathering multiple sources

10  of information, including, as I said, original and secondary

11  sources.  He testified that he juxtaposes new information

12  against existing information and evaluates new information to

13  determine whether his conclusions remain consonant with the

14  most reliable sources.  He works collaboratively with his peers

15  in his field, gathering additional information and seeking out

16  and receiving comments on his own work and cross-checking the

17  information he has on his own proprietary database.

18        The facts and sources that form the basis of his

19  opinions and inferences, although they do include secondary

20  sources, are, I find, of a type reasonably relied upon by

21  experts in his particular field.  That is the standard of

22  Federal Rule of Evidence 703.  Experts may testify to opinions

23  based on hearsay or other admissible evidence where experts in

24  that field reasonably rely on such evidence in forming their

25  opinions.  *United States v. Daly*, 842 F.2d 1380, 1387 (2d Cir.

5B3HPARC

1   1988).

2        He has relied on sources regularly relied upon in his

3   field, including the 9/11 Commission report, confessions of al

4   Qaeda members, information made available on the Foreign

5   Broadcast Information Service, and original sources from

6   terrorist groups.  He does rely on hearsay materials in

7   addition to the source materials.

8        As for peer review, he testified to various matters in

9   which his conclusions and opinions are subjected to review by

10   academics and other experts in his field.  He explained the

11   process by which his written publications are submitted for

12   comment and critique by academics and peers in his field before

13   publication, and how his postings on the internet, and

14   presentations of public forums, are subject to review by his

15   peers, the comments of whom he considers and incorporates when

16   he deems it appropriate in his analysis.

17        Whatever the pitfalls of this vetting process, and

18   obviously it is not the same peer review as in a formal

19   academic setting, it is a sufficiently reliable methodology to

20   meet the requirements of Rule 702, and the weight to be given

21   that testimony is for the jury to determine.  *See United States*

22   *v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004).

23        So my first conclusion is that his methodology is

24   sufficiently reliable.

25        The second finding is that the government has met its

1    burden of establishing by a preponderance that Kohlmann

2    reliably applied that methodology in reaching his conclusions

3    about the origins and structure of al Qaeda, the identification

4    of its leaders and its use of cells as a means of operating and

5    its use of individuals to provide logistical support, and that

6    testimony will be permitted, assuming the government chooses to

7    adduce it.

8         My third area of conclusion in regard to scope, I am

9    affirming my earlier ruling that Kohlmann will be permitted to

10   testify regarding, one, the origins and organizational

11   structure of al Qaeda; two, identification of its leaders;

12   three, explanation of al Qaeda tradecraft, insofar as its use

13   of cells and the use of individuals to provide logistical

14   support is concerned.  But I am not going to permit the expert

15   to testify regarding the two alleged al Qaeda operatives who

16   are specifically involved in the allegations of this case; that

17   is, Ammar al-Baluchi and Majid Khan.

18        I am concerned by the fact that Kohlmann's testimony

19   regarding al-Baluchi's and Khan's role in al Qaeda is based in

20   not insubstantial part on Kohlmann's review of the unclassified

21   summaries of statements made by those individuals that are the

22   same summaries that have been offered to the defendant as a

23   substitution for his constitutional right to have live

24   deposition or trial testimony from those witnesses.

25        My concern, based on the testimony of Mr. Kohlmann, is

5B3HPARC

1   that his proposed testimony regarding those two individuals is

2   too close to a summary of factual evidence from sources that

3   the government cannot introduce directly.  This is of

4   particular concern here where the government proposes no fact

5   witness on those issues that would permit the defendant to test

6   through cross-examination the credibility of that factual

7   evidence.  So there is going to be no evidence from Kohlmann on

8   Ammar al-Baluchi or Majid Khan.

9          Next, he will not be permitted to offer testimony

10  regarding Iyman Faris or Aafia Siddiqui.

11         I do not see the relevance of the proposed testimony

12  regarding Faris and, as the defense noted yesterday, the

13  description of his involvement in al Qaeda still refers to a

14  specific plot here in New York, which I have excluded.

15         Next, the expert will not be permitted to testify

16  regarding al Qaeda's use of counter-interrogation or

17  disinformation techniques.  I think I have already said that.

18         Next, 403 rulings.

19         Pursuant to Rule 403, with a specific finding that the

20  probative value is substantially outweighed by the danger of

21  unfair prejudice, I am excluding testimony concerning any

22  specific terrorist plot.  You know that ruling applies to 9/11

23  and the 1993 World Trade Center bombing because I have already

24  excluded those.  But now I am extending the 403 ruling to apply

25  to descriptions of any specific terrorist plot.  The probative

5B3HPARC

1   value of the specific plots is substantially outweighed by the

2   danger of unfair prejudice.

3          Mr. Paracha is not alleged to have any connection to

4   those plots, and describing them with specificity unnecessarily

5   focuses attention on them.

6          Kohlmann may refer to terrorist plots and attacks

7   generically without specifying individual plots and attacks.

8   In other words, he cannot talk about a plot to hijack 12

9   airlines or a plot to bomb embassies or a plot to bomb the USS

10  Cole.  He can talk about terrorist attacks in general.

11         Next, I am denying the defendant's Rule 403 objection

12  to general references to attacks against the United States.

13  Those references can stay in, and those are under the KSM

14  slide.  Those references are not unfairly prejudicial.

15         The defendant is alleged to have provided material

16  support to a person he knew to be an al Qaeda member in order

17  to make it possible for the al Qaeda member to enter the United

18  States.  The role of al Qaeda in the United States is therefore

19  pertinent to this case and the risk of unfair prejudice is

20  sufficiently taken care of by my elimination of references to

21  specific attacks, whether in the United States or anywhere in

22  the world.  So the reference to the United States may remain.

23         Just so there is no doubt in my mind, let's go through

24  the slides on Government 6.

25         The first substantive page, UBL's Influences and

5B3HPARC

1   Mentors, there is no objection, so that stays.  The expert can
2   identify those individuals.

3          The next page regarding Bin Laden, the fourth bullet
4   point goes out because it is specific.  The government can make
5   a generic reference to bombings if it wishes, or bombings in
6   1988 even.

7          The next slide, which is The Organization and
8   Structure of AQ, 2001 to 2003, the third level goes out because
9   there is not going to be anything on Ammar al-Baluchi and Khan.

10          The rest of the slide, that is, the first two levels,
11  have not been objected to and they are permissible.

12          The next slide, the KSM slide, the defendant objected
13  to the third bullet point, and I have specifically addressed
14  that.  That stays.

15          The reference to the United States I am permitting.

16          The fourth bullet point goes out for the reasons I
17  have said, at least in the form that now exists because it is a
18  reference to a specific plot.  The government should come up
19  with the generic if it wants.  Helped fund and plan a series of
20  terrorist plots in 1995, that is acceptable.  But that is up to
21  the government.

22          Then you have the Ammar al-Baluchi slide.  There are
23  two Ammar al-Baluchi slides.  They go out because they include
24  Ammar al-Baluchi, and also Jose Padilla and Tawfiq Attash.
25  They are out.  They are out on relevancy and 403.

15

5B3HPARC

1        The next slide is Majid Khan.  The entire slide is

2   out.

3        I am excluding Iyman Faris and Aafia Siddiqui as well

4   pursuant to 403.

5        The last slide I think is just a duplicate of what

6   went earlier.  I don't know if that is a mistake or you were

7   including it as a summation, the wrap up.  Again, the ruling is

8   the same.

9        I think that handles it.

10        Should we plan on meeting again on Monday just to see

11   if anything else has come up, or are we OK waiting until I see

12   you on Tuesday afternoon?

13        I think we are a little safer.  I may need to speak to

14   the parties on Monday.

15        Presumably, based on our two conferences ago, the

16   government is going to make a national security presentation to

17   me tomorrow, so I will need to render rulings based on that,

18   which I think probably you should come in, why don't we do it

19   on Monday.  I want you to have started to make some headway in

20   the questionnaires by then.

21        Shall we plan on Monday at 4:30?  If I don't need you,

22   I will let you know.

23        MR. WILFORD:  That is fine, Judge.

24        MR. BRUCE:  Your Honor, could I ask --

25        THE COURT:  Government, is that all right, 4:30?

5B3HPARC

1          MR. BRUCE:  That is fine.  Of course.

2          If I could ask two questions about your ruling

3    regarding the expert.

4          THE COURT:  Yes, sir.

5          MR. BRUCE:  First, as I indicated last Friday,

6    Mr. Wilford indicated that the defense was willing to stipulate

7    that Majid Khan and Ammar al-Baluchi were al Qaeda members.

8          I would like to know if that stipulation is still

9    available.

10         THE COURT:  I think you all have agreed it is not

11   seriously at issue.

12         Mr. Wilford.

13         MR. WILFORD:  No objection.

14         THE COURT:  All right.  Then put that in writing,

15   gentlemen.

16         MR. WILFORD:  Yes.

17         THE COURT:  You said no objection.

18         MR. WILFORD:  No, I didn't say no objection.  I said

19   no, we are not willing to stipulate, Judge.

20         THE COURT:  I'm sorry.  I thought you said no

21   objection.

22         What is your current position?  You want to discuss

23   that with the government?

24         MR. WILFORD:  We will discuss that with the

25   government.

5B3HPARC

1            MR. BRUCE:  I think we need to reach some resolution.

2            THE COURT:  He is going to discuss it with you.  He

3    just doesn't want something on the record right now, but he is

4    going to discuss it with you right now.  As soon as we are

5    over, correct?

6            MR. WILFORD:  Yes.

7            MR. BRUCE:  If in fact, your Honor, we can't reach a

8    stipulation as to that --

9            THE COURT:  I am not going to force a stipulation.  By

10   the same token, you heard me say I think in reality it is not

11   an issue, but you should follow up with Mr. Wilford.

12           MR. BRUCE:  I will, and if it is not an issue, that

13   would be great.  That is why I hoped we could get a

14   stipulation.  But he just said he is not willing to do that.

15   So I don't have a lot of hope in that regard.

16           THE COURT:  It depends upon the glass is half full or

17   half empty.  He said he wants to talk to you.

18           MR. BRUCE:  OK.  If in fact we can't reach a

19   resolution, your Honor, I would like to visit the issue, and

20   maybe we have to revisit it on Monday, as to whether a

21   different expert who hasn't read the unclassified summaries,

22   perhaps even an FBI agent, could testify as to the al Qaeda

23   affiliation of these two individuals.  Because as I have tried

24   to lay out on a number of occasions, I think it is critical to

25   the case, it is clearly relevant, in our view, and, as you

5B3HPARC

1   indicated, it really shouldn't be in dispute.

2         But now we are left with a hole based on your Honor's

3   ruling as to what evidence is going to be presented to the

4   jury.  If we can reach an accommodation, that would be great,

5   but if not, we have to have some back up.

6         THE COURT:  I understand.

7         MR. RICCO:  I think on this subject we are on a long

8   run for a short slide.  I think this issue will be resolved

9   before we walk out of the courtroom.

10        THE COURT:  Fine.

11        MR. BRUCE:  That would be wonderful.

12        THE COURT:  What else?

13        MR. BRUCE:  The only other thing is, with respect to

14  specifically Aafia Siddiqui --

15        THE COURT:  I'm sorry.  What was the metaphor?

16        MR. RICCO:  Long run for a short slide.

17        THE COURT:  All right.

18        MR. BRUCE:  I don't know what it means either.

19        THE COURT:  I have an image.

20        MR. BRUCE:  Specifically with respect to Aafia

21  Siddiqui, your Honor, I understand your ruling.  I am not going

22  to reargue it now.

23        THE COURT:  To the extent she is relevant, you will

24  put her in through a fact witness.  She is not appropriate for

25  expert.  It is 403.  That is how I see it.

5B3HPARC

1                    MR. BRUCE:   I would ask for permission to revisit it

2          after you have seen the proof if we think it is appropriate.

3                    THE COURT:   Yes.

4                    MR. BRUCE:   Thank you.

5                    THE COURT:   4:30 on Monday.

6                    Thank you, gentlemen.

7                    (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25