**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 1:02-6977 (S.D.N.Y.)
> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-9849 and 03-CV-5738 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT**</u>
<u>**ABDULLAH BINLADIN'S**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 1

PLAINTIFFS' FACTUAL ALLEGATIONS ............................................................ 3

     A.    The Court Should Disregard Allegations Made In Pleadings Filed In
           Violation Of Case Management Order #2 ........................................ 3

     B.    Allegations In The Operative Complaints ......................................... 4

ARGUMENT ........................................................................................................... 8

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER
     ABDULLAH BINLADIN ................................................................................. 8

     A.    Plaintiffs Cannot Establish General Jurisdiction Over
           Abdullah Binladin ........................................................................... 9

     B.    Plaintiffs Cannot Establish Personal Jurisdiction On A
           Conspiracy Theory ......................................................................... 10

     C.    Plaintiffs Fail To Allege Facts Supporting A Claim That
           Abdullah Binladin "Purposefully Directed" His Conduct At
           The United States ............................................................................ 11

II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST
      ABDULLAH BINLADIN ............................................................................... 14

     A.    Plaintiffs' Allegations Against Abdullah Binladin Do Not State
           A Claim Under the Anti-Terrorism Act (ATA) ............................... 14

     B.    Plaintiffs Have Failed To State A Claim Under RICO, The Alien
           Tort Claims Act, The Torture Victim Protection Act, Or Any
           State Law Cause Of Action ............................................................. 16

     CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987) ...........................................................................10

*Andros Compania Maritima S.A. v. Intertanker, Ltd.*,
   714 F. Supp. 669 (S.D.N.Y. 1989)..............................................................9, 10

*Boim v. Quranic Literacy Inst. and Holy Land Found.*,
   291 F.3d 1000 (7th Cir. 2002) .......................................................................16

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
   274 F. Supp. 2d 86 (D.D.C. 2003) .................................................................18

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994) ..........................................................................12

*In re Cross Media Marketing Corp. Sec. Litig.*,
   314 F. Supp. 2d 256 (S.D.N.Y. 2004)............................................................15

*De Jesus v. Sears, Roebuck & Co.*,
   87 F.3d 65 (2d Cir. 1996) ..............................................................................15

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) .......................................................................16

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) .......................................................................................13

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991) ............................................................................. 9

*Laborers' Pension Fund v. Blackmore Sewer Constr. Inc.*,
   298 F.3d 600 (7th Cir. 2002) ...........................................................................7

*Lancaster v. Colonial Motor Freight Line, Inc.*,
   177 A.D.2d 152, 581 N.Y.S.2d 283 (N.Y. App. Div. 1992) .............................9

*Lehigh Valley Indus. v. Birenbaum*,
   527 F.2d 87 (2d Cir. 1975) ............................................................................10

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d  560 (2d Cir. 1996) .............................................................................9

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993) ...................................................................................12

*Pieczenik v. Dyax Corp.,*
    00 CV 243, 2000 WL 959753 (S.D.N.Y. 2000),
    *aff'd,* 265 F.3d 1329 (Fed. Cir. 2001) ................................................................10

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993).................................................................................................17

*Shady Records, Inc. v. Source Enterprises, Inc.,*
    351 F. Supp. 2d 74 (S.D.N.Y. 2004)......................................................................12

*Simon v. Castello,*
    172 F.R.D. 103 (S.D.N.Y. 1997) ...........................................................................12

*In re Terrorist Attacks on September 11, 2001,*
    349 F. Supp. 2d 765 (S.D.N.Y. 2005).......................................................... *passim*

*In re Terrorist Attacks on September 11, 2001,*
    03 MDL 1570, slip op. (S.D.N.Y. Sept. 21, 2005) .................................... *passim*

*Washington Post v. Robinson,*
    935 F.2d 282 (D.C. Cir. 1991)..................................................................................7

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).................................................................................................10

## FEDERAL STATUTES

18 U.S.C. §§ 1962(a), (c), (d) (2000)............................................................................17

## FEDERAL RULES

Fed. R. Civ. P. 4(k)(2) ..................................................................................................10

Fed. R. Civ. P. 10 ...........................................................................................................4

Fed. R. Civ. P. 10(b) .......................................................................................................4

Fed. R. Civ. P. 12(b)(2) ..................................................................................................8

Fed. R. Civ. P. 12(b)(6) ..............................................................................................8, 15

Fed. R. Evid. 201(b)........................................................................................................7

## INTRODUCTION

Defendant Abdullah Binladin is a nephew of Osama Bin Laden ("OBL"), whom he has not seen in more than 15 years.  Plaintiffs bring their claims against Abdullah Binladin based on nothing more than his surname and an association with Islamic charities in the United States that are not alleged to have done anything in support of terrorism.  The hollowness of the Complaints against Abdullah Binladin would be surprising were it not by now so familiar.  We are too far into these cases to infer that every person named Binladin is culpable, that every Islamic charity is sinister, or that everyone whom a government questions is guilty.

This Court has instead properly required Plaintiffs to allege specific facts connecting a particular defendant to al Qaeda's fiendish activities – facts that would, if true, establish knowing and intentional support of al Qaeda's war against the United States.  As to Abdullah Binladin, Plaintiffs have alleged nothing of the sort.  Indeed, Plaintiffs do not allege any conduct by him other than establishing and serving as a director or officer of charities.  This Court has already held that Plaintiffs cannot maintain a claim against an individual defendant based merely on allegations that he was a founder or a director of a charity, some affiliate of which is alleged to have engaged in wrongful conduct.  This Court's prior rulings therefore require the conclusion that Plaintiffs can neither establish jurisdiction over, nor state a claim against, Abdullah Binladin.

## BACKGROUND

Abdullah Binladin's mother was one of the 54 children of Mohammad Awad Binladin, which makes OBL one of Abdullah's many uncles.  *See* Abdullah A. Binladin Affidavit ¶ 2 ("Abdullah Aff.").  Abdullah lived in a different household from OBL and met him occasionally at family gatherings.  *Id*.  Abdullah has not seen or communicated with OBL in approximately 15 years.  *Id*.  During the 1990s, Abdullah lived in Virginia and worked for several entities affiliated

with the Saudi Embassy.  *Id.* ¶ 3.  Contrary to the claims of some Plaintiffs,[1] Abdullah did not

"flee" the United States immediately after the September 11 attacks, but instead had left the

United States and returned to Saudi Arabia more than a year before.  *Id.* ¶¶ 3, 4.

In addition to his full-time employment, Abdullah helped – as a volunteer – to establish

two Islamic charities, but Plaintiffs do not allege any act or conduct on his part in connection

with those charities beyond his role as a founder and director.  In 1991, Abdullah Binladin

established and became president of an independent affiliate of the World Assembly of Muslim

Youth ("WAMY" or "WAMY-SA"), a charity headquartered in Riyadh, Saudi Arabia.  *See id.* ¶

6.  This new entity, WAMY International, Inc. ("WAMY-US"), was chartered as a Virginia non-

profit corporation with its office in northern Virginia.  WAMY-SA is a worldwide Muslim

charitable organization with hundreds of offices in over 50 countries.  *Id.*  While associated with

WAMY-US, Abdullah Binladin had no knowledge of or involvement in the activities of

WAMY's offices in Pakistan, the Balkans, Australia or Asia that Plaintiffs have mentioned in

their allegations.  *Id.*  Abdullah served as the president of WAMY-US until he left the United

States in 2000.  *Id.*  From 1991 until approximately 1994, Abdullah also served on the board of

Taibah International Aid Association ("Taibah-US"), a Muslim charitable organization

incorporated in Virginia.  *Id.* ¶ 10.  During the time Abdullah was on the board, Taibah only had

offices in the United States.  *Id.*

---

[1] *See Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA
(S.D.N.Y.) Second Amended Complaint, Oct. 13, 2005 (MDL 1570 Docket #1406) ("*Contin. Cas.* 2AC") at 394;
*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.) RICO Statement Applicable to
Saudi Bin Laden Group, Abdullah Bin Laden, Bakr Bin Laden, Tarek Bin Laden, Omar Bin Laden and the
Mohammed Bin Laden Organization, Aug. 15, 2005 (MDL 1570 Docket #1125) ("*Fed Ins.* RICO Stmt. (SBG, et
al.)") at 12.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**A.     The Court Should Disregard Allegations Made In Pleadings Filed In Violation Of Case Management Order #2**

Paragraph 13 of Case Management Order #2 ("CMO #2"), as amended, required each of the Plaintiffs to file an amended Complaint by September 30, 2005 that included all previous amendments.[2]  All of the parties understood that "[t]he clear objective," as Plaintiffs put it, "of including the . . . deadline for filing amended complaints in CMO 2 was to ensure that any and all additional allegations contained in More Definite Statements or other filings would be incorporated into a single pleading in each of the cases."[3]  Despite CMO #2's clear requirement, only the *Ashton* Plaintiffs complied.[4]  The other Plaintiffs groups either re-filed their previous Complaints, attaching and purporting to incorporate by reference scores of More Definite Statements ("MDSs") and RICO Statements,[5] or filed "Notices of Consolidation of Pleadings" listing all previously filed documents that they now deem to be part of their Complaints.[6]  Neither the defendants nor this Court should have to sort through this disordered mass of filings in search of relevant allegations.  For reasons more fully described in Yeslam Binladin's

---

[2] *In Re Terrorist Attacks on September 11, 2001*, Case Management Order #2, June 15, 2004 (MDL 1570 Docket #247; *In Re Terrorist Attacks on September 11, 2001*, Endorsed Letter, July 27, 2005 (MDL 1570 Docket #1073).

[3] Letter from Sean P. Carter to The Honorable Richard C. Casey (July 15, 2005).

[4] *See Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 1:02-6977 (S.D.N.Y.), Sixth Amended Complaint, September 30, 2005 (MDL 1570 Docket #1463) ("*Ashton* 6AC").

[5] *See Contin. Cas.* 2AC; *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.), Second Amended Complaint, Sept. 30, 2005 (NY Marine Docket #234) ("*NY Marine* 2AC"); *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.), First Amended Complaint with Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, Filed in Accordance with Case Management Order Number 2, Sept. 30, 2005 (MDL 1570 Docket #1380) ("*Fed. Ins.* 1AC with Incorp.").

[6] *See Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-9849 and 03-CV-5738 (S.D.N.Y.) ("*Burnett*"), Notice of Consolidation of Pleadings, Sept. 30, 2005 (MDL 1570 Docket #1377); *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.) ("*Euro Brokers*"), Notice of Consolidation of Pleadings, Sept. 30, 2005 (MDL Docket #1378); *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.) ("*WTC*"), Notice of Consolidation of Pleadings, Sept. 30, 2005 (MDL Docket #1379).

memorandum of law in support of his motion to dismiss,[7] these new "amended Complaints" and other "pleadings" are an end-run around both CMO #2 and Fed. R. Civ. P. 10 and this Court should therefore disregard them.[8]

The same is true of the only RICO Statement addressed explicitly to Abdullah Binladin (as well as five other defendants), which was filed by the *Federal Insurance* Plaintiffs. Although CMO #2 does provide that RICO Statements in the *Federal Insurance* case (and only that case) would be considered amendments to the Complaint,[9] that provision does not exclude those RICO Statements from Paragraph 12's requirement that they be consolidated into a final amended Complaint by September 30, 2005. Because the *Federal Insurance* Plaintiffs failed to file a consolidated pleading in accordance with that requirement, the allegations in the *Federal Insurance* RICO Statement are not properly before the Court and should also be disregarded. Therefore, in summary, with the exception of the *Ashton* 6AC, this Court should disregard the Plaintiffs' improper "amended Complaints," MDSs and RICO statements, and should in those cases revert to the last properly filed Complaint. In most instances, as detailed below, such Complaints contain virtually no allegations against Abdullah Binladin.[10]

## B.    Allegations In The Operative Complaints

The common thread throughout all of Plaintiffs' pleadings is the notable absence of any allegations that Abdullah Binladin did anything to support terrorism. The operative Complaints in *Euro Brokers* and *NY Marine* make no substantive allegations at all. *Euro Brokers* contains

---

[7] Mem. in Supp. of Yeslam Binladin's Mot. to Dismiss Pls.' Compls., Oct. 28, 2005 (MDL 1570 Docket #1452) ("Yeslam Binladin MTD"), at 3-5.

[8] *See* Fed. R. Civ. P. 10(b) ("All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.").

[9] *See* CMO #2 ¶ 14; *In Re Terrorist Attacks on September 11, 2001,* Endorsed Letter, Aug. 22, 2005 (MDL 1570 Docket #1144).

[10] Regardless of what this Court determines constitutes the universe of operative pleadings, none contain factual allegations sufficient to establish personal jurisdiction over or state a claim against Abdullah Binladin.

no allegations regarding Abdullah, while *NY Marine* merely makes an empty conclusory allegation that he supported al Qaeda.[11]  The other Complaints, when stripped of their conclusory allegations and rhetoric, allege only three remotely substantive things that Abdullah did, none of which states a claim against him:  (1) three (*Ashton, Continental Casualty* and *Federal Insurance*) make allegations regarding his role in establishing and serving as president of WAMY-US in Virginia;[12] (2) five (*Ashton, Burnett, Continental Casualty, Federal Insurance* and *World Trade Center*) make allegations regarding his co-founding of Taibah-US in Virginia;[13] and (3) one (*Ashton*) asserts that he was "involved in suspicious financial transactions" of an unspecified nature with Soliman S. Biheiri.[14]  None of these, as described below, are accompanied by any allegations of specific wrongful conduct.

Although Plaintiffs allege that Abdullah Binladin established and was president of WAMY-US in Virginia in 1992 and served as its president at least through 1998,[15] they allege no wrongful conduct or illicit activities in which he engaged, much less any conduct or activities in support of al Qaeda.  In fact, Plaintiffs do not even allege that WAMY-US engaged in any

---

[11] *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-07279-UA (S.D.N.Y.), Complaint, Sept. 10, 2004 ("*Euro Brokers* Compl."); *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105 (S.D.N.Y.), First Amended Complaint, Dec. 23, 2004 ("*NY Marine* 1AC") ¶ 45.

[12] *Ashton* 6AC ¶ 264; *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-05970-UA (S.D.N.Y.), First Amended Complaint, Dec. 7, 2004 ("*Contin. Cas.* 1AC") ¶ 376; *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.) First Amended Complaint (Mar. 11, 2004) ("*Fed. Ins.* 1AC") ¶¶ 160, 507.  The *Federal Insurance* Plaintiffs have filed two "First Amended Complaints."  The first, which we will refer to as "*Fed. Ins.* 1AC," was filed on March 11, 2004.  The second, which we will refer to as "*Fed. Ins.* 1AC with Incorp." was filed on September 30, 2005 and contains identical allegations against Abdullah Binladin but includes additional cross-references to other documents that are not properly part of the Complaint.

[13] *Ashton* 6AC ¶ 284; *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case Nos. 03-CV-9849 and 03-CV-5738 (S.D.N.Y.) Third Amended Complaint, Nov. 22, 2002 ("*Burnett* 3AC") ¶ 296; *Contin. Cas.* 1AC ¶ 573; *Fed. Ins.* 1AC ¶ 238; *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.) Complaint, Sept. 10, 2004 ("*WTC* Compl.") ¶ 471.

[14] *Ashton* 6AC ¶ 242.

[15] *Ashton* 6AC ¶ 264; *Contin. Cas.* 1AC ¶ 376; *Fed. Ins.* 1AC ¶¶ 160, 507.

wrongful conduct during the period Mr. Binladin was on its board.[16]  Lacking facts, Plaintiffs attempt to cast suspicion by raising a series of irrelevant accusations about WAMY-US, none of which, even if true, would state a claim against Abdullah Binladin.  First, they allege – falsely – that WAMY-US was part of the so-called "SAAR Network," which allegedly was "created to provide funding, money laundering and other material support to terrorist organizations, including al Qaida."[17]  Plaintiffs allege no specific facts that would connect WAMY-US to any of the other so-called "SAAR Network" entities, much less that would connect it or them to any wrongful conduct.  Plaintiffs do assert that the government searched WAMY-US's offices specifically as part of its investigation of the "SAAR Network" several years after Mr. Binladin had resigned as a director.[18]  That claim is dubious.[19]  Regardless, Plaintiffs do not and cannot claim that the government brought any charges or took any other adverse action against either WAMY-US or Abdullah Binladin as a result.  Second, some Plaintiffs persist in making the demonstrably false claim that WAMY (they do not specify whether they are referring to WAMY-US, WAMY in Saudi Arabia, or one of the other hundreds of WAMY affiliates) has been designated or had its assets frozen by the United States Treasury Department.[20]  That claim is obviously false, as one can easily determine by referring to the Federal Register or the

---

[16] *Ashton* 6AC ¶¶ 264, 269; *Burnett* 3AC ¶ 362; *Contin. Cas.* 1AC ¶¶ 266, 376; *Fed. Ins.* 1AC ¶¶ 160, 161, 224, 507-508; *WTC* Compl. ¶¶ 698, 937.

[17] *Fed. Ins.* 1AC ¶¶ 160, 224, 507; *Ashton* 6AC ¶¶ 264, 269.

[18] *Fed. Ins.* 1AC ¶ 160; *see also Ashton* 6AC ¶ 264-65 (alleging that WAMY is part of the "SAAR network" and that "the offices of many SAAR network organizations were raided by the U.S. government in 2002").

[19] In fact, the application for the search warrant of what the government called the "Safa Group," which Plaintiffs have previously submitted to this Court, did not list WAMY-US as a place to be searched.  *See* (Proposed Redacted) Affidavit of Special Agent David Kane in Support of Application for Search Warrant, *In the Matter of Searches Involving 555 Grove Street, Herndon, Virginia and Related Locations*, E.D.Va. (March, 2002) (unsealed Oct. 17, 2003), attached as Exhibit 10 *In re Terrorist Attacks on September 11, 2001*, Declaration of Justin B. Kaplan in Support of Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Sulaiman al Rajhi, June 28, 2005 (MDL docket #1031).

[20] *Contin. Cas.* 1AC ¶ 376 (claiming U.S. has frozen WAMY's assets).  Significantly, the *Ashton* Plaintiffs removed this allegation from their Complaint.  *Compare Ashton* 6AC *with Kathleen Ashton, et al. v. Al Qaeda Islamic Army, et al.*, Case No. 1:02-6977 (S.D.N.Y.) Third Amended Complaint (Sept. 5, 2003) ("*Ashton* 3AC") ¶ 578 (U.S. has frozen WAMY's assets).

Treasury Department's website, *see* 70 Fed. Reg. 38,256 (July 1, 2005); http://www.ustreas.gov.

press/archive.html (last visited Nov. 22, 2005), and the Court may and should take judicial notice

of this fact.[21]

      Plaintiffs also allege that Abdullah Binladin co-founded Taibah-US in 1991 in Falls

Church, Virginia,[22] and was listed as a founding officer on IRS filings,[23] but just as with

WAMY-US, they do not allege a single act by Abdullah Binladin related to Taibah-US that

could possibly connect him to al Qaeda or any other terrorist activities.  Instead, they merely

make the conclusory contention – long since found inadequate by this Court – that he was one of

several "aiders, abettors, material sponsors and/or co-conspirators of Taibah International Aid

Association, al Qaeda, and international terrorism."[24]  Moreover, as was the case with WAMY-

US, Plaintiffs do not even allege any acts by Taibah-US during Abdullah Binladin's association

that supported al Qaeda.[25]  Allegations relating to the arrest of an employee of Taibah's Bosnian

office obviously cannot fill this void.[26]  Plaintiffs do not and cannot allege that Abdullah

Binladin knew about, much less had any involvement in such conduct.  In fact, he ceased his

association with Taibah in 1994, before that organization even had any offices outside the United

States.  *See* Abdullah Aff. ¶ 10.  For the same reason, the conclusory allegation that two other

officers of Taibah-US – Samir Salah and Abdulrahman Al Amoudi – "play a large role with

---

[21] *See* Fed. R. Evid. 201(b); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002); *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991).

[22] *Fed. Ins.* 1AC ¶ 238.

[23] *Ashton* 6AC ¶ 284; *Burnett* 3AC ¶ 296; *Contin. Cas.* 1AC ¶ 573; *WTC* Compl. ¶ 471.

[24] *Burnett* 3AC ¶ 308; *WTC* Compl. ¶ 483.

[25] *Ashton* 6AC ¶¶ 261, 284-286; *Burnett* 3AC ¶¶ 296-298; *Contin. Cas.* 1AC ¶¶ 573-577; *Fed. Ins.* 1AC ¶ 238; *WTC* Compl. ¶¶ 471-473.

[26] *Ashton* 6AC ¶ 288; *Burnett* 3AC ¶¶ 300; *Contin. Cas.* 1AC ¶¶ 577; *Fed. Ins.* 1AC ¶ 240; *WTC* Compl. ¶¶ 475.

United States organizations that have come under scrutiny for their ties to al Qaeda"[27] can have no bearing on Abdullah Binladin because it is undisputed that they were not involved with Taibah-US until after Abdullah ceased to be a director.  *See* Abdullah Aff. ¶ 10.

Finally, with respect to the allegedly "suspicious" Bihieri transaction or transactions,[28] the *Ashton* Plaintiffs' fail to offer any specific facts or even an explanation of how or in what way these alleged transactions were "suspicious," and they do not allege that the transactions had any connection to al Qaeda.

### ARGUMENT

Abdullah Binladin's motion to dismiss should be granted for two independent reasons. First, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs cannot establish personal jurisdiction over this foreign defendant.  Second, the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim.

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER ABDULLAH BINLADIN

To survive a Rule 12(b)(2) motion to dismiss, Plaintiffs must make a *prima facie* factual showing that personal jurisdiction exists, *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 804 (S.D.N.Y. 2005) ("*Terrorist Attacks I*"); *In Re Terrorist Attacks on September 11, 2001*, 03 MDL 1570, slip op. at 11 (S.D.N.Y. Sept. 21, 2005) ("*Terrorist Attacks II*"), and this Court has made clear that it will not credit legally conclusory assertions or draw "argumentative inferences" in support of that *prima facie* showing.  *Terrorist Attacks I,* 349 F.

---

[27] *Burnett* 3AC ¶ 307; *Contin. Cas.* 1AC ¶ 584; *WTC* Compl. ¶ 482; *see also Ashton* 6AC ¶¶ 261, 294 (alleging that Salah and Alamoudi are Taibah officers and officers of other "SAAR" entities); *Fed. Ins.* 1AC ¶ 245 (alleging that Salah and Alamoudi "are intimately affiliated with several organizations within the SAAR network").

[28] *Ashton* 6AC ¶ 242.

Supp. 2d at 804; *Terrorist Attacks II,* slip op. at 12.  Yet conclusory assertions and argumentative inferences are all that Plaintiffs have.

### A.    Plaintiffs Cannot Establish General Jurisdiction Over Abdullah Binladin

Plaintiffs cannot establish general jurisdiction over Abdullah Binladin based on his prior residence in Virginia, which ended well before the September 11 attacks and the filing of these suits.  To support general jurisdiction, Plaintiffs must allege contacts with New York or the United States that were "systematic and continuous" at the time the Complaint was filed.  *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991).  Therefore, although courts will look to contacts for a period of time preceding the filing of the Complaint to assess the substantiality and continuity of the contacts, *see Terrorist Attacks I*, 349 F. Supp. 2d at 822 (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996)), the defendant must first have contacts at the time the Complaint was filed.  *See Met. Life*, 84 F.3d at 570 n.9 (explaining that, consistent with *Klinghoffer*, the Court looks to a pre-Complaint course of conduct only after determining that the contact was in existence at the time of the Complaint).

Thus, New York courts have long recognized that contacts must exist at the time of the Complaint:

> [A] fundamental *sine qua non* of [general jurisdiction] is the requirement that defendant be shown to have been "doing business" at the time when the action was commenced.  This is crucial to the concept of "presence" upon which the jurisdiction is based, since the defendant . . . must be "here" and therefore subject to the State's power, at the very time of the exercise of the jurisdiction itself.

*Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 156, 581 N.Y.S.2d 283, 286 (N.Y. App. Div. 1992) (internal citation omitted); *see also Andros Compania Maritima S.A. v. Intertanker, Ltd.*, 714 F. Supp. 669, 675 (S.D.N.Y. 1989) ("[T]he relevant time frame for the jurisdictional inquiry under § 301 is at the time of service of the summons and Complaint.");

*Pieczenik v. Dyax Corp.*, 00-CV-243, 2000 U.S. Dist. LEXIS, at *8 (S.D.N.Y. July 10, 2000),

*aff'd*, 265 F.3d 1329 (Fed. Cir. 2001) ("A finding of personal jurisdiction under § 301 requires

that Dyax be 'doing business' on a continuous and systematic basis in New York at the time this

action was filed.").  It is for this reason that a permanent departure from the forum can eliminate

the possibility of general jurisdiction.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980) (noting that an individual or corporation may "sever[] its connection with the

[forum] State" and thereby avoid general jurisdiction).  Because Abdullah Binladin undisputedly

left the United States by September 2000, *see* Abdullah Aff. ¶¶ 3, 6 – well before the Complaints

were filed – his prior residence cannot be the basis for general jurisdiction.[29]

**B.      Plaintiffs Cannot Establish Personal Jurisdiction On A Conspiracy Theory**

Plaintiffs' allegations cannot support the exercise of "conspiracy jurisdiction" over

Abdullah Binladin for reasons already articulated by this Court.  As it has recognized, "'the

bland assertion of conspiracy is insufficient to establish [personal] jurisdiction.'" *Terrorist*

*Attacks I,* 349 F. Supp. 2d at 805 (quoting *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93-4

(2d Cir. 1975)).  Rather, "[t]o establish personal jurisdiction on a conspiracy theory, Plaintiffs

must make a prima facie showing of conspiracy, *allege specific facts* warranting the inference

that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator

committed a tort in New York."  *Id.* (emphasis added).  In this case, that requires an allegation

that Abdullah Binladin directed, controlled or requested al Qaeda to undertake its terrorist

---

[29] Even if Abdullah Binladin's former residence in Virginia were sufficient to establish personal jurisdiction, it would not establish jurisdiction in this Court.  In such a case, Plaintiffs could not rely on Rule 4(k)(2)'s nation-wide contacts analysis because that rule expressly applies only if jurisdiction does not exist in any individual state.  *See* Fed. R. Civ. P. 4(k)(2); *see also Terrorist Attacks II*, slip op. at 12 (explaining that one requirement of Rule 4(k)(2) is that "personal jurisdiction must not exist over the defendant in New York or any other state").  This Court exercises jurisdiction only to the extent the transferor courts may have done so, *see In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987), and none of the Complaints in this action were filed in Virginia.

activities, and Plaintiffs must make specific allegations that he knew of or consented to those activities.  *Id.* at 806.  Here, for the reasons explained above, Plaintiffs do not even come close.

C. **Plaintiffs Fail To Allege Facts Supporting A Claim That Abdullah Binladin "Purposefully Directed" His Conduct At The United States**

Clear precedent and this Court's prior decisions also conclusively demonstrate that Plaintiffs cannot establish on their pleaded facts that Abdullah Binladin supported the terrorist activities that were "purposefully directed" at the United States.  Plaintiffs' attempt to establish personal jurisdiction on that basis fails for three reasons.  First, they have not alleged – as they must – "some *personal or direct involvement* by the Defendant[] in the conduct giving rise to their claims." *Terrorist Attacks I*, 349 F. Supp. 2d at 809 (emphasis added).  Plaintiffs fail to allege a single act that Abdullah Binladin himself performed that in any way facilitated the September 11 attacks or any other terrorist activity, much less any activity from which this Court could infer that he ever directly or indirectly supported OBL or al Qaeda.  Blanket assertions that Abdullah Binladin has "long provided material support and resources to al Qaida" (*Fed. Ins.* 1AC ¶ 508) or that he "aided and abetted, conspired with . . . al Qaida and/or affiliated FTOs, associations, organizations or persons" (*NY Marine* 1AC ¶ 45) do not fill the void.  As this Court has held, "[l]egal conclusions done up as factual allegations are not facts and cannot substitute for facts." *Terrorist Attacks I,* 349 F. Supp. 2d at 813 (internal quotation and citation omitted).

Second, Plaintiffs cannot establish jurisdiction based simply on Abdullah Binladin's alleged positions in WAMY-US and Taibah-US.  As a factual matter, Plaintiffs allege no specific conduct on the part of Abdullah himself or either of those organizations during his affiliation with them that would bolster any inference that he supported terrorist activity directed at the United States.  Moreover, this Court has already rejected such claims against other defendants who were alleged to hold positions in other Islamic charities.  For example, the Court found that

Plaintiffs had not adequately alleged that Abdulrahman Bin Mahfouz directed his conduct at the United States, *see In re Terrorist Attacks I*, 349 F. Supp. 2d at 820-21, despite allegations that he was, among other things, a director of the Blessed Relief Society (Muwafaq), which Plaintiffs alleged was a branch of another charity that Osama Bin Laden supposedly identified as a supporter.  The Court reached the same conclusion with respect to Tariq Binladin, despite allegations that he held a "prominent role" in IIRO.  *See id.* at 822.

Even if Plaintiffs had alleged any specific conduct on the part of WAMY-US or Taibah-US while Abdullah Binladin was associated with them, which they have not, there are no facts to support imputing that conduct to Mr. Binladin.  It is hornbook law that the conduct of a corporate entity cannot be imputed to an officer or director unless he had some personal involvement in that conduct.  *See, e.g.*, *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (allowing officer liability for corporate fraud only where officer participates in or has actual knowledge of the fraud); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (holding claim not properly pled against directors where plaintiffs failed to allege personal knowledge or participation); *Shady Records, Inc. v. Source Enterprises, Inc.*, 351 F. Supp. 2d 74, 78 (S.D.N.Y. 2004) ("It is elementary that a corporation is a separate legal person from its officers, directors or shareholders, and that those individual persons are not liable for the acts of the corporation simply because they can be said to 'control' it") (citations omitted); *Simon v. Castello,* 172 F.R.D. 103, 106 (S.D.N.Y. 1997) ("It is well established under New York law that a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong....") (internal quotation and citation omitted).  Indeed, this Court has already recognized that even if there are sufficient facts to find jurisdiction over a particular corporate entity, that does not necessarily support jurisdiction over that entity's individual

directors.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 816 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

Third, Plaintiffs cannot remedy the shortcomings in their allegations by relying on accusations they hurl at WAMY's or Taibah's overseas offices because Plaintiffs allege no facts to connect those activities to Abdullah Binladin.  For example, Plaintiffs make various allegations regarding WAMY offices and activities in Peshawar, Kashmir and Afghanistan.[30] Yet Plaintiffs acknowledge that WAMY is a sprawling worldwide charity with hundreds of offices and affiliated groups in at least 50 countries around the globe.[31]  It cannot be the case that knowledge of the activities of every other branch is imputed to every director of each of those many branches.  Plaintiffs allege no facts to connect WAMY-US, much less Abdullah Binladin himself, to the activities Plaintiffs have alleged WAMY was engaged in elsewhere in the world, and the record affirmatively demonstrates that he had no connection to them.  *See* Abdullah Aff. ¶ 6.

Plaintiffs use the same tactics with respect to Taibah, and their tactics should be rejected for the same reason.  Plaintiffs' only specific allegations relating to Taibah involve the Bosnian office,[32] an office that did not even exist when Abdullah worked with Taibah-US.  *See* Abdullah Aff. ¶ 10.  There is, thus, nothing in Taibah's activities from which this Court could infer that Abdullah Binladin supported terrorism directed against the United States.

---

[30] *Ashton* 6AC ¶ 301; *Fed. Ins.* 1AC ¶¶ 154-159, 162, 164.

[31] *See, e.g., Ashton* 6AC ¶ 203 (450 organizations, 34 offices worldwide); *Burnett* 3AC ¶ 362 (same); *Contin. Cas.* 1AC ¶ 266 (same); *WTC* Compl. ¶¶ 698, 937 (same); *Fed. Ins.* 1AC ¶ 150 (60 offices).

[32] *Ashton* 6AC ¶¶ 288-293; *Burnett* 3AC ¶¶ 300-306; *Contin. Cas.* 1AC ¶¶ 577-583; *Fed. Ins.* 1AC ¶¶ 240-250; *WTC* Compl. ¶¶ 475-481.

At the end of the day, there is not one specific fact alleged in any Complaint from which one could infer that Abdullah Binladin knowingly supported or assisted terrorism directed at the United States, and this Court therefore cannot maintain personal jurisdiction over him.

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST ABDULLAH BINLADIN

Plaintiffs do not and cannot allege that Abdullah Binladin directly supported al Qaeda or participated in the September 11 attacks.  Therefore, Plaintiffs must rely entirely on joint tort theories of conspiracy and aiding and abetting and are thus left to base their claims on Abdullah Binladin's former roles at WAMY-US and Taibah-US and the alleged conduct of those entities and third parties associated with them.  But because Plaintiffs fail to allege any facts suggesting that Abdullah Binladin knowingly supported al Qaeda via any of these alleged connections, their utterly conclusory claims must be dismissed.

### A.   Plaintiffs' Allegations Against Abdullah Binladin Do Not State A Claim Under the Anti-Terrorism Act (ATA)

Plaintiffs' ATA claims are fundamentally flawed because they fail to allege any specific facts that could give rise to an inference that Abdullah Binladin knowingly and intentionally provided material assistance to al Qaeda.  This Court has made clear that for Plaintiffs' ATA claims to survive, they must allege specific facts showing that defendants knew of, intended to aid, and did in fact aid the terrorists' illegal activities.  *See Terrorist Attacks I*, 349 F. Supp. 2d at 828.  Here, however, Plaintiffs allege no facts from which one could infer that Abdullah Binladin knew of, intended to support, or did support al Qaeda's activities.  Indeed, apart from allegations that he helped establish and for a time volunteered for two United States-based charities – WAMY-US and Taibah-US – Plaintiffs do not allege that Abdullah Binladin did *anything at all*, much less anything wrongful.

14

This Court has made clear that Plaintiffs cannot withstand a motion to dismiss simply by relying on vague, generalized allegations. *See Terrorist Attacks I*, 349 F. Supp. 2d at 833 ("'[A] Complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)'" (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996))); *Terrorist Attacks II,* slip op. at 20; *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 261 (S.D.N.Y. 2004).   Yet, Plaintiffs' Complaints against Abdullah Binladin rest entirely on such conclusory allegations.   For example, the *NY Marine* Plaintiffs allege without explanation that Abdullah Binladin "aided and abetted, conspired with and provided material support and resources to, defendant al Qaida and/or affiliated FTOs, associations, organizations or persons."[33]  Similarly, the *Burnett* and *World Trade Center* Plaintiffs fail to allege a single act performed by Abdullah Binladin, but instead claim only that that he was one of several "aiders, abettors, material sponsors and/or co-conspirators of Taibah International Aid Association, al Qaeda, and international terrorism."[34]  Such conclusory allegations are, under this Court's prior decisions, plainly insufficient.

The allegations regarding Abdullah Binladin's role in WAMY-US and Taibah-US do not supply the missing specifics.  As explained above, none of the Plaintiffs allege any specific act that Mr. Binladin took on behalf of either organization, apart from helping to establish them, much less any act that could be inferred to be in support of al Qaeda.  This Court's earlier decisions plainly establish that mere association with a charitable organization cannot adequately form the basis for a claim.  For example, this Court dismissed numerous executives of so-called "SAAR Network" entities (of which Plaintiffs claim both WAMY-US and Taibah-US are part)[35]

---

[33] *NY Marine* 1AC ¶ 45.

[34] *Burnett* 3AC ¶ 308; *see also WTC* Compl. ¶ 483.

[35] *Ashton* 6AC ¶¶ 264, 261, 269, 294; *Fed. Ins.* 1AC ¶¶ 160, 224, 507.

because merely pleading their associations, without any specific facts regarding what they are alleged to have done to support al Qaeda, did not provide the defendants "with notice as to how they provided material support to al Qaeda terrorists." *Terrorist Attacks II*, slip op. at 28 (citing *Boim v. Quranic Literacy Inst. and Holy Land Found.,* 291 F.3d 1000, 1023 (7th Cir. 2002)).[36] Moreover, Plaintiffs allege no facts suggesting that either United States charity did indeed support al Qaeda's terrorist agenda during Mr. Binladin's tenure.  Despite various allegations about WAMY and Taibah offices overseas, Plaintiffs do not allege that the United States entities with which Abdullah Binladin was affiliated provided any support for or made any contributions toward al Qaeda's activities.  Instead, Plaintiffs allege nothing more than they did as to the dismissed executives of so-called SAAR Network entities.

Ultimately, Plaintiffs allege no connection between Abdullah Binladin and al Qaeda terrorists, other than a shared last name.  Plaintiffs therefore fall far short of their obligation to allege facts that might "support an inference that" Abdullah Binladin was "sufficiently close to the terrorists' illegal activities to satisfy *Halberstam* or New York law." *Terrorist Attacks I,* 349 F. Supp. 2d at 800-01.[37]  Accordingly, their claims must be dismissed.

## B.  Plaintiffs Have Failed To State A Claim Under RICO, The Alien Tort Claims Act, The Torture Victim Protection Act, Or Any State Law Cause Of Action

Plaintiffs' remaining causes of action fail to state a claim against Abdullah Binladin for reasons largely addressed in the Court's January 18 and September 21 opinions and orders. First, Plaintiffs in five actions have brought civil RICO claims against Abdullah Binladin for

---

[36] The Court's dismissals of Tariq Binladin, *see In re Terrorist Attacks I*, 349 F. Supp. 2d at 822, and Abdulrahman Bin Mahfouz, *id.* at 820-21, are also instructive.  Although those dismissals were based on a lack of personal jurisdiction and the Court therefore did not need to reach whether Plaintiffs had stated a claim, the analysis is similar.  As explained above, *supra* at 12, the Court rejected an inference that either Defendant had purposefully directed his conduct at the United States despite allegations of his leadership role in an accused Islamic charity.

[37] *See Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).

violations of 18 U.S.C. §§ 1962(a), (c), and/or (d).[38]  Plaintiffs' RICO claims, however, must fail

for the same reasons the Court has applied to claims against other defendants:  they do not – and

cannot – allege that Abdullah Binladin was in any way involved in directing the alleged al Qaeda

enterprise or that Plaintiffs' injuries resulted from his investment of racketeering income.  *See*

*Terrorist Attacks II*, slip op. at 21-22 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993));

*Terrorist Attacks I*, 349 F. Supp. 2d at 826-28.

      The *Burnett* ATCA claim also should be dismissed for failure to adequately allege

conspiracy or aiding and abetting and because the ATCA does not create secondary liability

among private actors.  With respect to Plaintiffs' Torture Victim Protection Act ("TVPA")

claims, the *Burnett* claim must be dismissed because it fails to allege that Abdullah Binladin

acted under color of law.  *See Terrorist Attacks I,* 349 F. Supp. 2d at 828.  The *Federal*

*Insurance* and *World Trade Center* Plaintiffs' common law intentional tort claims are time-

barred for reasons this Court has already addressed.  *See Terrorist Attacks I,* 349 F. Supp. 2d at

829 (internal citation omitted).  The *Burnett* Plaintiffs' intentional tort claims, on the other hand,

should be dismissed for failure to allege (1) direct involvement in the 9/11 attacks; (2) "extreme

and outrageous conduct" on the part of Abdullah Binladin himself; and (3) conduct by Abdullah

Binladin directed at Plaintiffs themselves.  Finally, the *Federal Insurance* and *NY Marine*

Plaintiffs' negligence claims should be dismissed for failing to "allege or identify a duty owed to

Plaintiffs" by Abdullah Binladin.  *Terrorist Attacks II*, slip op. at 22; *Terrorist Attacks I,* 349 F.

Supp. 2d at 831.

---

[38] Plaintiffs allege RICO violations in the *Continental Casualty, Euro Brokers, Federal Insurance, NY Marine* and *World Trade Center* actions.  The *Continental Casualty, Euro Brokers, NY Marine* and *World Trade Center* Plaintiffs failed to file RICO Statements as required by standing order of this Court for any Plaintiff alleging violations of RICO in their Complaints.  Because the *Continental Casualty, Euro Brokers, NY Marine* and *World Trade Center* Complaints contain none of the requisite elements of a RICO claim, and no RICO Statements were filed to provide the necessary elements, those claims must be dismissed.  The *Burnett* plaintiffs also brought RICO

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Abdullah Binladin should be dismissed.

Dated:  November 22, 2005                    Respectfully submitted,

/s/ Geoffrey S. Stewart
_____

Geoffrey S. Stewart (GS-5413)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
Tel:  (212) 326-3939
Fax:  (212) 755-7306

Stephen J. Brogan
Mary Ellen Powers
Timothy J. Finn
Jonathan C. Rose
James E. Gauch
Michael P. Gurdak
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Tel:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Defendant Abdullah Binladin*

_____
(continued…)

claims, but those were dismissed as to all defendants by Judge Robertson.  *See Burnett v. Al Baraka Inv. & Dev. Corp. (Burnett I)*, 274 F. Supp. 2d 86, 100-01 (D.D.C. 2003).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2005 I caused an electronic copy of Defendant Abdullah Binladin's Motion to Dismiss Plaintiffs' Complaints and the accompanying Memorandum of Law In Support to be served by the Court's Electronic Case Filing System.

Date:   November 22, 2005

/s/ Stephen J. Brogan
Stephen J. Brogan