## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC)<br><br>ECF Case |

This document relates to:

*Federal Insurance Co., et al. v. Al Qaeda, et al.,* No. 03 Civ. 6978
*Continental Casualty Co,, et al. v. Al Qaeda, et al.,* No. 04 Civ. 5970
*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.,* No. 03-CV-5738
*New York Marine & General Insurance Co. v. Al Qaeda, et al.,* No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.,* No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.,* No. 04-CV-7280

## PLAINTIFFS' CONSOLIDATED MEMORANDUM
## OF LAW IN OPPOSITION TO THE MOTION TO DISMISS
## OF DEFENDANTS ABDUL AZIZ BIN IBRAHIM AL-IBRAHIM AND THE
## IBRAHIM BIN ABDUL AZIZ BIN IBRAHIM AL-IBRAHIM FOUNDATION

# TABLE OF CONTENTS

Page

I.      FACTUAL BACKGROUND ................................................................................ 1

        A.      Facts Related To Liability ................................................................. 1

        B.      Facts Related To Jurisdiction .......................................................... 6


II.     PLAINTIFFS HAVE PROPERLY ASSERTED JURISDICTION OVER ABDUL
        AZIZ BIN IBRAHIM AL-IBRAHIM AND THE AL-IBRAHIM FOUNDATION ........ 7

        A.      Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie*
                Showing Of Personal Jurisdiction May Be Established Solely By Legally
                Sufficient Allegations Of Jurisdiction ...................................................... 8

        B.      Jurisdiction Is Proper Under The ATA And RICO. ................................. 9

        C.      Additionally, Jurisdiction Is Proper Under Conspiracy Theory ............... 10


III.    PLAINTIFFS' CLAIMS WITHSTAND THE MOTIONS TO DISMISS ...................... 14

        A.      The Notice Pleading Requirement .................................................... 14

        B.      Plaintiffs Have Adequately Pleaded Each Specific Cause Of Action .................. 18

                1.      Trespass .................................................................................. 19

                2.      RICO ...................................................................................... 19

                3.      Anti-Terrorism Act (ATA) ....................................................... 23

                4.      Conspiracy, Aiding and Abetting and Punitive Damages ............... 23

                5.      Negligence ............................................................................. 23

                6.      Various Claims Raised By Al-Ibrahim Foundation ........................ 24


IV.     CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

Page

**CASES**

A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76 (2d Cir. 1993)............................................. 8-9

Abebe-Jira v. Negewo, 72 F.3d 844 (11th Cir. 1996).................................................................25

Allstate Life Insurance Co. v. Linter Group Ltd., 782 F. Supp. 215 (S.D.N.Y. 1992)........... 10-11

Andre Emmerich Gallery v. Segre, 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997) .........................11

Baisch v. Gallina, 346 F.3d 366 (2d Cir. 2003)..........................................................................22

Ball v. Metallurgie Hoboken Overpelt, S.A., 902 F.2d 194 (2d Cir. 1990) ...................................8

Barrueto v. Larios, 205 F. Supp. 2d 1325 (S.D. Fla. 2002).........................................................25

Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255 (5th Cir. 1994) .....................9

Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) .............................................................14

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991) ................11

Combs v. Adkins & Adkins Coal Co., 597 F. Supp. 122 (D.D.C. 1984) .......................................9

Conley v. Gibson, 355 U.S. 41 (1957)................................................................................... 14-15

DM Research, Inc. v. College of American Pathologists, 170 F.3d 53 (1st Cir. 1999)................12

De Falco v. Bernas, 244 F.3d 286 (2d Cir. 2001).......................................................................22

DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir. 2001)........................................8

Dixon v. Mack, 507 F. Supp. 345 (S.D.N.Y. 1980) .....................................................................11

Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................22

Estates of Ungar ex rel. Strachman v. Palestinian Authority,
        153 F. Supp. 2d 76 (D.R.I. 2001) ....................................................................................9

Farmer v. Brennan, 511 U.S. 825, 842 (1994).............................................................................15

First Capital Asset Management v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)......................22

Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998).................................................23

Friedman v. Hartmann, 1994 U.S. Dist. LEXIS 9727 (S.D.N.Y. July 15, 1994)...........................22

Geisler v. Petrocelli, 616 F.2d 636 (2d Cir. 1980).........................................................................3

Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996) ...........................................................25

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049 (2d Cir. 1993) ......................................10

Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998)...............................................................8

Leatherman v. Tarrant County, 507 U.S. 163 (1993) ....................................................................15

Linde, et al v. Arab Bank, PLC, 2005 U.S. Dist. LEXIS 18864 (E.D.N.Y. Sept. 2, 2005) ............17

In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204 (2d Cir. 2003) .................................8

Mehinovic v.Vuckovic, 198 F. Supp. 2d 1322 (N.D. Ga. Apr. 29, 2002)....................................25

Morin v. Trupin, 832 F. Supp. 93 (S.D.N.Y. 1993).......................................................................22

Nagler v. Admiral Corp., 248 F.2d 319 (2d Cir. 1957) .................................................................12

National Asbestos Workers Medical  Fund v. Philip Morris, Inc.,
        74 F. Supp. 2d 221 (E.D N.Y. 1999) ...................................................................... 19-20

PDK Laboratoriess, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997) ...................................... 8-9

Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005) .................................................... 16-17

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002)..................................................................... 14-17

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
        2003 WL. 1339181 (S.D.N.Y. Mar. 19, 2003) ..................................................................25

Rasul v. Bush, 124 S. Ct. 2686 (2004) .........................................................................................22

Reiter v. Sonotone Corp., 442 U.S. 330, 338 (1979).....................................................................20

Salinas v. United States, 522 U.S. 52, 65 (1997)..........................................................................22

SEC v. Carrillo, 115 F.3d 1540 (11th Cir. 1997)............................................................................9

Simmons v. Abruzzo, 49 F.3d 83 (2d Cir. 1995)...........................................................................13

Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95 (E.D.N.Y. 2000) .................................................11

Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000).....................................15

Swierkiewicz v. Sorema, 534 U.S. 506 (2002)....................................................................... 14-17

In re Terrorist Attacks of September 11, 2001,
     349 F. Supp. 2d 765 (S.D.N.Y. Jan. 21, 2005) ......................................................... *passim*

In re Terrorist Attacks of September 11, 2001,
     392 F. Supp. 2d 539 (S.D.N.Y. Sept. 21, 2005) ...............................................................1

Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. Oct. 3, 2005)...................................... 12-13

United States v. Allen, 155 F.3d 35 (2d Cir. 1998) ......................................................................22

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991)...............................................................21

United States v. Turkette, 452 U.S. 576 (1981)............................................................................21

Warren v. District of Columbia, 353 F.3d 36 (D.C. Cir. 2004)..............................................16, 17

Woodford v. Community Action Agency, 239 F.3d 517 (2d Cir. 2001)......................................14

Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004) ................................................................ 14-15

## RULES AND STATUTES

Anti-Terrorism Act of 1990, 18 U.S.C. § 2331 *et seq*)...................................................9, 10, 17, 23

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq* ......... 9, 10, 19-22

Torture Victims Protection Act, 28 U.S.C. § 1350........................................................................24

Fed. R. Civ. P. 8(a) ..........................................................................................1, 12, 14-16

Fed. R. Civ. P. 9(b) ..........................................................................................................15

Fed. R. Civ. P. 12(b)(6)................................................................................................ 14-15, 18

N.Y. CPLR 302(a)(2).........................................................................................................10

## LEARNED TREATISES

5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990) .......................................16

Defendants Abdul Aziz Bin Ibrahim Al-Ibrahim ("Al-Ibrahim") and the Ibrahim bin Abdul Aziz Bin Ibrahim Al-Ibrahim Foundation ("the Foundation") seek to dismiss plaintiffs' complaints in their entireties on three grounds: that plaintiffs have no jurisdiction over them; that even if there were jurisdiction, the pleaded factual allegations are insufficient to demonstrate liability; and even if the facts had been pled properly, plaintiffs have failed to state a claim upon which relief could be granted.

Defendants cannot escape liability through any of these efforts. They have clearly submitted to the jurisdiction of the United States through their activities within it and directed towards it. From that basis, plaintiffs have clearly met the notice pleading requirements of Fed. R. Civ. P. 8(a) in setting forth their claims, and have fulfilled the specific pleading requirements of each cause of action, as this brief now demonstrates.

## I.     FACTUAL BACKGROUND

This section of the brief attempts to consolidate the factual pleadings which form the background against which the motions to dismiss are to be considered. Unless otherwise stated, the facts contained in this section appear in the response to Question 2 and/or Exhibit A of each of the RICO statements filed by Plaintiffs as to the relevant Defendant.[1]

### A.     Facts Related To Liability

Abdul Aziz Bin Ibrahim Al-Ibrahim is the brother-in-law of the late King Fahd of Saudi Arabia through his sister, Jawhara, who was the King's second wife. With another brother, Walid, along with defendant Saleh Abdullah Kamel, in 1991 Al-Ibrahim created the leading

---

[1]     As a preliminary matter, it is worth noting that *contra* Al-Ibrahim's assertions (see *Continental Casualty* Motion to Dismiss at 4), the facts contained within plaintiffs' RICO statements can be and have been considered in evaluating all aspects of the motions to dismiss. *See, e.g.,* In re Terrorist Attacks of September 11, 2001, 392 F. Supp. 2d 539, 2005 U.S. Dist. LEXIS 20841, *9-10 (S.D.N.Y. Sept. 21, 2005)

Arab television satellite service, Middle East Broadcasting Corp, which purchased the press agency United Press International in 1992.

In 1990, he created the Ibrahim bin Abdul Aziz Bin Ibrahim Al-Ibrahim Foundation, which purports to provide humanitarian assistance. Through Al-Ibrahim's knowledge, direction and control, the Foundation was given the responsibility of realizing his objective of using it as a covert vehicle for supporting the al Qaeda movement and other terrorists. The organization is present in Kenya, Bosnia, Chechnya, South America and South Asia.

The organization's Nairobi branch was associated with Osama bin Laden's network during the FBI's investigation into the 1998 attacks against the American embassies in Kenya. Fazul Abdullah Mohammed, an al Qaeda operative implicated in the bombings, was arrested and searched by Kenyan authorities. *Euro Brokers* Foundation RICO at Exh. A. One of the items seized with him was a notebook containing the business card of the Foundation's director, Abdul Kader M. Izzi. *Id*. He was also carrying a business card of Mohamed Munir Chaudhri, the lawyer used by Wadi al Hage and al Qaeda operative Khalid al Fawwaz. *Id*.

In September 1998, as a result of its investigation, the Kenyan government canceled the registration of five Islamic relief agencies for allegedly supporting terrorism including the Al-Ibrahim Foundation and codefendants Al-Haramain Foundation, Help African People, the Islamic Relief Organization, and Mercy Relief International. The authorities claimed that materials for the bomb were smuggled in as relief aid with the help of Islamic relief agencies. The decision was announced by the Kenyan government's NGO coordinator who declared:

> Our investigations reveal that the operations of these organizations are inconsistent with the reasons for which they were registered . . . These organizations are supposed to work for the welfare of Kenyans, but are instead endangering Kenyan's lives . . . They had been found to be working against the interests of Kenyans in terms of security.

After several organizations appealed this decision, Kenya's High Court blocked the deregistration of four of the five non-governmental organizations, and as a result the other four entities are still licensed to operate. However, the Al-Ibrahim Foundation did not seek an appeal.[2]

Much of our knowledge of the Al-Ibrahim Foundation's activities comes from Russian sources which Plaintiffs are still endeavoring to translate. In a study paper dated October 1999, called "The New Azerbaijan Hub: How Islamist operations are targeting Russia, Armenia and Nagorno-Karabagh", Yossef Bodansky, Senior Editor of Defense and Foreign Affairs' Strategic Policy specifically referred to the Al-Ibrahim Foundation as one of those which provided help to Osama bin Laden:

> The key Islamist facilities are concealed as charity and educational organizations affiliated with the web used by bin Laden's networks. Moreover, the headquarters of these organizations are stuffed with Arab "teachers" and "managers" from the ranks of such organizations as the International Muslim Brotherhood, the Islamic Salvation Front, several branches of Islamic Jihad, and the National Islamic Front of Sudan. The key organizations are . . . Al Ibrahim Foundation. Very little is known about this Baku-based charity except that its Arab principals have huge amounts of cash in hard currency. They are involved in acquisition of real estate among other "educational" projects.

*Id.* Other reports suggest that the Al-Ibrahim Foundation was funding the Islamic Movement of Uzbekistan ( "IMU"), an affiliate of al Qaeda, whose leaders met with Osama bin

---

[2]   Counsel for the Al-Ibrahim Foundation has submitted to this Court several documents which they claim counter these factual pleadings. *See* Declaration of Daniel L. Brown, dated October 3, 2005, at Exh. B & C. Respectfully, these sorts of factual disputes are properly the realm of a motion for summary judgment. In resolving a motion to dismiss, the Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

Laden in 1999 in Kandahar, Afghanistan. Reports stated that the IMU received $270,000 dollars from the Al-Ibrahim Foundation. *Id.; Euro Brokers* Foundation RICO at Exh. A.

In 1999, the Russian special services and reconnaissance disseminated a report stating that Chechen militants were allegedly being trained in three paramilitary bases in Azerbaijan and that three Islamic organizations – the Al-Ibrahim Foundation, World Youth Islamic Assembly and Islamic Rescue Organization – had taken part in setting up these bases.

Through Al-Ibrahim's direction and control, the Foundation has also been involved in spreading the message of violence in the name of Islam. In an investigative television program by the Russian NTV, on November 1, 2002, it was disclosed that in July 2002, more than a hundred young men from various regions of Russia attended a seminar organized by the clerical board of Muslims of the Asian part of Russia at Pervouralsk. The official goal of the event was to instruct in religious matters. One of the courses was based upon a study in sharia disciplines, published by the Al-Ibrahim Foundation, which emphasized: "Armed struggle in the name of Allah, for his word to be above all else…Sacrifice your life in witness of Allah's religion." According to a document summarizing the seminar "the main task of the seminar was to select candidates for further instruction at Saudi universities, and to raise the level of Islamic awareness." After the NTV findings, an investigation was conducted and a criminal proceeding remains pending in Russia.

Similar institutionalized hate speech designed to incite terrorist thought can be found in Saudi textbooks funded by Al-Ibrahim's foundation. These products are distributed by Saudi officials in the United States and other countries — including by senior diplomats at the Saudi Embassy – as well as by Saudi-funded organizations, including the Al-Ibrahim Foundation. The book, *Deen al-Haqq* (The True Religion), authored in Arabic by Abdul-Rahman Bin Hamad Al-Omer, was printed by the Ministry of Islamic Affairs and Endowments and paid for by the Al-

Ibrahim Foundation, and distributed by IIASA and WAMY in the U.S. It contains such statements as:

> "Judaism and Christianity are deviant religions" (page 25)
>
> "The Saved Sect – Muslims are many in number but few in reality, and the groups that claim to be Muslim are many, approaching 73 sects and numbering more than 1 billion." (An assertion that only Wahhabis are Muslims and all other true Muslims are unbelievers." (page 47)
>
> "(Negations of One's Islam) [Negation 8] - Befriending the unbelievers, through loving and cooperating with them while knowing that they are unbelievers, makes those who are their friends the same as them." (page 99)
>
> "We say to every Christian and every Jew and all those outside Islam, 'your children are born into Islam, but you and their mother take them away from Islam with your corrupt rearing.'" (page 119)
>
> "There are groups in the Muslim world that claim to be Islamic but they are outside Islam. They claim Islam while in reality they are not Muslims because their beliefs are the beliefs of unbelievers." (page 123)

In March 2002, searches by Bosnian authorities of defendant Benevolence International Foundation's offices in Sarajevo, Bosnia-Herzegovina (operating under the name *Bosanska Idealna Futura*) yielded a substantial amount of evidence shedding light on the network al Qaeda established, including links to the Al-Ibrahim Foundation. Shortly thereafter, the offices of al Haramain were raided in Bosnia, as well. In that raid, officials discovered documents containing the home and office phone numbers of Al-Ibrahim himself as well as the Al-Ibrahim Foundation. The raids produced several documents offered into evidence in Government's Evidentiary Proffer Supporting the Admissibility of Co-conspirator Statements, United States v. Enaam M. Arnaout, No. 02 CR 892 (N.D. Ill. filed January 6, 2003).

### B.    Facts Related To Jurisdiction

Abdul Aziz Bin Ibrahim Al-Ibrahim has extensive ties to the United States, and both he and his Foundation knowingly directed their activities, through Al Qaeda, towards this country.

Al-Ibrahim has lived in the United States off and on since at least the mid 1980s.   During that period, while living in Hollywood, California, Al-Ibrahim engaged in a romantic pursuit of actress/model Brooke Shields, setting up a movie production company (Mystery Man Productions) to invest over $22 million in the production of a starring film vehicle for her, *Brenda Starr*.  The production was so flawed that while filmed in 1986, the movie would not be released in the United States until 1992.

In 1989, Al-Ibrahim acquired a portion of the Marina Del Rey real estate venture in Los Angeles, through various offshore companies. American authorities discovered a loan of $132 million that was granted to Al-Ibrahim at the end of 1989 by BCCI.  Al Ibrahim was one of BCCI's leading loan beneficiaries.  Portions of those loan proceeds also went into the *Brenda Starr* financing.

Apart from being a lead investor in Marina del Rey, Al-Ibrahim's personal real estate assets have included Ritz-Carlton hotels in New York, Washington and Houston and Aspen, a hotel and office complex near Chicago's O'Hare International Airport, undeveloped property in the hills high above Bel-Air and largely vacant land near Disney World in Florida. (Ritz-Carlton hotels decided in 1997 to pull back their name from the facilities by terminating management agreements after they became controlled by Al Anwa USA company owned by Al-Ibrahim.)

Indeed, Al-Ibrahim filed suit against the Ritz-Carlton Hotels in 1995, seeking $200 million in damages for mismanagement of his properties.  *See* Anthony Faiola, "Ritz Owners, Management In Legal Battle," <u>Washington Post</u> D-2 (Feb. 18, 1995).  The litigation he directed against the company lasted three years, involving numerous counter-claims and accusations of

corrupt behavior.  *See* docket of <u>N.Y. Overnight Partners, L.P., et al v. The Ritz-Carlton, et al,</u> 95-CV-122 (S.D.N.Y.).[3]

The registered President of Al Anwa USA is Tarek Ayoubi, who also manages Anwa Hotel & Resort International, Luxury Holdings Inc, MDR Hotel and NY Overnight Inc, all based at the same address in Marina Del Rey. Al Anwa Holding is Al Anwa for Contracting Establishment (a/k/a Al Anwae Trading and Contracting Establishment, a/k/a Anwae Contracting Est) a construction company owned by Al-Ibrahim. Al Anwa for Contracting is shareholder, along with Defendant Dallah al Baraka (Chaired by Defendant Saleh Abdullah Kamel), of the National Environmental Preservation Co Ltd in Jubail, Saudi Arabia.

According to court papers filed in 1995, as reported by the *Washington Post*, Al-Ibrahim also won large sums of money gambling in the United States for which he did not wish to pay the Internal Revenue Service.  *See* Toni Locy, "Lawyers Duke It Out In Suit Involving Saudi Sheik," <u>Washington Post</u> B-7 (Jun. 25, 1995), attached to Exhibit A. In order to silence a former employee regarding these and other allegations, Abdul Aziz Bin Ibrahim Al-Ibrahim hired the Chicago-based law firm of Sidley & Austin and filed suit in Washington, D.C. to seek injunctive relief.  The suit was dismissed.


## II.   PLAINTIFFS HAVE PROPERLY ASSERTED JURISDICTION OVER ABDUL AZIZ BIN IBRAHIM AL-IBRAHIM AND THE AL-IBRAHIM FOUNDATION

Al-Ibrahim finds himself in the curious position of having made extensive use of the United States for residency, business and courtship – while now seeking to deny the power of its courts.  This he cannot do.  Having co-owned a hotel in New York City itself, among his many American business holdings, while participating in a conspiracy directed towards the United

---

[3]    Both documents are attached to the Affirmation of Adam C. Bonin, Exhibit A to this memorandum of law.

States as a whole, Al-Ibrahim and his Foundation are properly within the jurisdiction of this

Court.

>   **A.** **Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction**

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted]. At that point, the *prima facie* showing must be factually supported.

Ball v. Metallurgie Hoboken Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied,

498 U.S. 854 (1990). Thus, in order to defeat a motion challenging jurisdiction under Rule

12(b)(2), a plaintiff need only present allegations that connect the defendant with the applicable

forum, here, the United States. In deciding such a motion, the plaintiff's jurisdictional averments

must be taken as true. Id.; In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d

Cir. 2003). Moreover, the court must construe the pleadings in a light most favorable to plaintiff,

resolving all doubts in his favor. DiStefano v. Carozzi North America, Inc., 286 F.3d 81 (2d Cir.

2001). As this Court has held:

> Because these motions are brought before discovery and decided without an evidentiary hearing, Plaintiffs need only make a prima facie showing that personal jurisdiction exists. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993). Plaintiffs may rely entirely on factual allegations, Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998), and they will prevail even if Defendants make contrary arguments, A.I Trade, 989 F.2d

at 79. In resolving the motions, the Court will read the complaints and affidavits in a light most favorable to Plaintiffs. <u>PDK Labs</u>, 103 F.3d at 1108.

<u>In re Terrorist Attacks of September 11, 2001</u>, 349 F. Supp. 2d. 765, 804 (S.D.N.Y. Jan. 21, 2005).

**B.    Jurisdiction Is Proper Under The ATA And RICO.**

Among the claims against Defendants are claims under the ATA and RICO.  It is beyond question that if plaintiffs *do* state valid claims under those federal statutes, this Court may assert personal jurisdiction over them to adjudicate the ATA and RICO claims as well as all of the other claims asserted in the complaints. The ATA provides that claims may be brought in "any district where any plaintiff resides" and that process "may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a). RICO similarly provides that "process … may be served in any judicial district of the United States…" 18 U.S.C. § 1965(b).

Because both statutes provide for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes "is whether the defendant has had minimum contacts with the United States." <u>Busch v. Buchman, Buchman & O'Brien, Law Firm</u>, 11 F.3d 1255, 1258 (5th Cir. 1994) (citations omitted); *see also* <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1543 (11th Cir. 1997); <u>Estates of Ungar ex rel. Strachman v. Palestinian Auth.</u>, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); <u>Combs v. Adkins & Adkins Coal Co.</u>, 597 F. Supp. 122, 125 (D.D.C. 1984).  Al-Ibrahim spent much time living in the United States pursuing personal relationships and has engaged in business across the country, including real estate and hotels (and litigation related to both); obviously, he has sufficient minimum contacts with the United States to support the assertion of personal jurisdiction.  His ownership and involvement in American business dealings has been direct, continuous and systematic; he is no mere distant shareholder.

Because the court has personal jurisdiction over Al-Ibrahim with respect to plaintiffs' ATA or RICO claims, then it may also assert pendent personal jurisdiction over the remaining claims that derive from the same events.  IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir. 1993).

Even if plaintiffs do not ultimately state a claim under the ATA or RICO, that statutes nonetheless provide a basis for the assertion of jurisdiction over Al-Ibrahim, so long as plaintiffs' claims under either the ATA or RICO are at least colorable. As the Second Circuit explained in Herrmann:

> Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

> Id. at 1055.

Here, regardless of whether the Court finds that plaintiffs have stated a claims under the ATA or RICO, plaintiffs' claims against Al-Ibrahim under those statutes are not "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit" so as to preclude the exercise of jurisdiction.  To the contrary, these claims do have merit, and belong in this forum.

### C.    Additionally, Jurisdiction Is Proper Under Conspiracy Theory

Al-Ibrahim and his Foundation also are subject to jurisdiction here because, as alleged in the complaints and RICO Statements, each conspired with al Qaeda to attack the United States. Courts within this circuit have recognized that they may assert jurisdiction over a defendant based on the activities of co-conspirators in the forum. See In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 805 (acts committed in New York by co-conspirators subject out of state defendant to jurisdiction under CPLR 302(a)(2)); Allstate Life Ins. Co. v. Linter Group

Ltd., 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (noting that "[m]any courts in this Circuit have

asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory" and

asserting personal jurisdiction over absent defendants pursuant to a conspiracy theory by

imputing forum acts of coconspirators done in furtherance of conspiracy); Chrysler Capital Corp.

v. Century Power Corp., 778 F. Supp. 1260, 1266-70 (S.D.N.Y. 1991) (asserting personal

jurisdiction over non-resident defendant via conspiracy theory). The actions of the co-

conspirators within the forum serve to establish minimum contacts sufficient to satisfy Due

Process over the non-resident defendant. Dixon v. Mack, 507 F. Supp. 345, 352 (S.D.N.Y. 1980)

("The act of the conspiracy in allegedly abducting plaintiff in New York, which is one of the

acts, of course complained of in the suit, supplies the necessary minimum contacts . . ."); Andre

Emmerich Gallery v. Segre, 1997 WL 672009 (S.D.N.Y. Oct. 29, 1997) (imputation of forum

activities of co-conspirator to nonresident defendant establishes minimum contacts satisfy Due

Process).

The prima facie showing of conspiracy requires allegations of the primary tort (in this

case, the attacks of September 11) and four additional elements: (1) a corrupt agreement between

two or more parties; (2) an overt act in furtherance of the agreement; (3) the defendant's

intentional participation in the furtherance of a plan; and (4) resulting damage or injury. See

Simon v. Philip Morris, Inc., 86 F. Supp. 2d 95, 120 (E.D.N.Y. 2000); see also Chrysler Capital,

778 F. Supp. at 1267. This Court has further held that: "[t]o warrant the inference that a

defendant was a member of the conspiracy," Plaintiffs must show that "(a) the defendant had an

awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in

New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting

in New York acted 'at the direction or under the control' or 'at the request of or on behalf of' the

out-of-state defendant." In re Terrorist Attacks on September 11, 2001, 349 F. Supp. 2d at 805

(citations omitted).

Moreover, the Second Circuit affirmed last month that no heightened pleading

requirement was permitted for conspiracy claims.  In Twombly v. Bell Atlantic Corp., 425 F.3d

99 (2d Cir. Oct. 3, 2005), the Second Circuit overturned a district court's dismissal of a class

action complaint alleging unlawful conspiracy in the antitrust context, holding instead that  Fed.

R. Civ. P. 8(a) required a short and plain statement of the claim, nothing more:

> If a pleaded conspiracy is implausible on the basis of the facts as
> pleaded -- if the allegations amount to no more than "unlikely
> speculations" -- the complaint will be dismissed. DM Research,
> Inc. v. College of American Pathologists, 170 F.3d 53, 56 (1st Cir.
> 1999).  But short of the extremes of "bare bones" and
> "implausibility," a complaint in an antitrust case need only contain
> the "short and plain statement of the claim showing that the
> pleader is entitled to relief"  that Rule 8(a) requires.

Twombly, 425 F.3d at 111.  Indeed, the Court held, the emphasis should be on notice

pleading, and not a preemptive display of all the possible evidence:

> The complaint should not "be burdened with possibly hundreds of
> specific instances" of the antitrust violations alleged. Nagler v.
> Admiral Corp., 248 F.2d 319, 326 (2d Cir. 1957). "Such pleading
> of the evidence is surely not required and is on the whole
> undesirable." Id. "It is a matter for the discovery process, not for
> allegations of detail in the complaint." Id.

Finally, the Second Circuit addressed concerns similar to Defendants' as to the burden of

facing potentially meritless claims, and rejected them:

> We are not unsympathetic to these concerns, but we find the
> arguments based on them ultimately unconvincing. **At the
> pleading stage, we are concerned only with whether the
> defendants have "fair notice" of the claim**, and the conspiracy
> that is alleged as part of the claim, against them -- that is, enough
> to "enable [the defendants] to[, inter alia,] answer and prepare for

trial," <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) -- not with whether the conspiracy can be established at trial.

<u>Twombley</u> at 116 (emphasis added).

Under these standards, the plaintiffs have satisfied the elements of pleading conspiracy. Fairly read, the complaints and RICO Statements allege that Al-Ibrahim, personally and through his direction of the Foundation, knowingly provided funds and other forms of support to al Qaeda. Thus, the plaintiffs have alleged that both engaged in overt acts in furtherance of the al Qaeda conspiracy. Moreover, al Qaeda's ambition to attack the United States, and New York in particular, was well known for many years prior to the September 11th Attacks, as evidenced by the 1993 bomb attack on the World Trade Center and the foiled plot to simultaneously attack the George Washington Bridge and Holland Tunnel.

Thus, the potential effects in New York of contributing to al Qaeda were undeniably foreseeable to that terrorist organization's sponsors and supporters, including Defendants, as plaintiffs have specifically alleged. Indeed, given that al Qaeda had repeatedly declared that its primary objective was to conduct terrorist attacks against the United States, it is self evident that the entities and people who chose to knowingly sponsor al Qaeda did so in order to assist that terrorist organization in mounting successful attacks, and that the individuals chosen to carry out such attacks act "for the benefit" and "on behalf" of all of the organization's members and sponsors.

When read in a light most favorable to the plaintiffs, the allegations of the complaints and RICO Statements give rise to a reasonable inference that Defendants were members of al Qaeda's conspiracy to attack America. As a result, the actions of their co-conspirators, including the September 11th hijackers themselves, are imputable to Al-Ibrahim and his Foundation for jurisdictional purposes and serve to establish minimum contacts with New York sufficient to satisfy Due Process.

III.     **PLAINTIFFS' CLAIMS WITHSTAND THE MOTIONS TO DISMISS**

Both Al-Ibrahim and his Foundation seek to dismiss the complaints on the grounds that Plaintiffs have failed to state any claim upon which relief can be granted.  Because their arguments misconstrue the notice pleading requirements of Fed. R. Civ. P. 8(a), their motion must be denied and this matter be allowed to proceed.

### A.     The Notice Pleading Requirement

Defendants move to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wynder v. McMahon, 360 F.3d 73, 78 n.8 (2d Cir. 2004); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*).

Defendants have fundamentally misapprehended what notice pleading requires.  In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaints and RICO Statements and draw all reasonable inferences in Plaintiffs' favor of them.  Wynder, 360 F.3d at 77; Phelps, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided."  Woodford v. Community Action Agency, 239 F.3d 517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  Swierkiewicz v. Sorema, 534 U.S. 506, 512-13 (2002).  Indeed, Rule 8(a)(2) provides that a complaint only need must include only "a short and plain

statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley, 355 U.S. at 47 (1957)); Wynder, 360 F.3d at 77; see also Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after remand, 2001 WL 936257 (D.C. Cir. July 12, 2001)  (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  See, e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168-69 (1993).   In keeping with this concept, Rule 9 expressly provides that "malice, intent, knowledge and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

        In its decisions in the post Swierkiewicz era, the Second Circuit has consistently and uniformly applied these clear standards and held that a plaintiff is not required to plead particularized facts regarding a defendant's state of mind.  For example, in Phelps, the Second Circuit reversed a district court ruling which had dismissed a complaint for failure to plead specific facts in support of allegations of the defendant's knowledge, holding instead that such a heightened pleading standard was "unwarranted" under Fed. R. Civ. P. 8(a).  Phelps, 308 F.3d at 186.  "A plaintiff's allegation of knowledge is itself a particularized factual allegation, which he will have the opportunity to demonstrate at the appropriate time 'in the usual ways'."  Id. at 187 n. 6 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)).  As the Phelps court further instructed: "However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond Fed. R. Civ. P. 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference," holding that the weight of

the evidence should instead be assessed at the time of summary judgment proceedings.  <u>Phelps</u>, at 186-87.

In <u>Warren v. District of Columbia</u>, 353 F.3d 36 (D.C. Cir. 2004), the D.C. Circuit employed nearly identical reasoning in reversing the dismissal of a complaint in which the plaintiff had failed to plead "facts" establishing knowledge.  Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held:  "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of law as true, conclusions of fact are another matter."  <u>Id</u>. at 39 (<u>citing</u> 5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990)).

More recently, in <u>Pelman v. McDonald's Corp</u>., 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In <u>Pelman</u>, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries."  <u>Id</u>. at 511.  The Second Circuit rejected this approach.  It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed. R. Civ. P."  <u>Id</u>. at 512.  Quoting the unanimous Supreme Court ruling in <u>Swierkiewicz</u>, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.  The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

<u>Pelman</u>, 396 F.3d at 512 (<i>quoting</i> <u>Swierkiewicz</u>, 534 U.S. at 512-13).

More recently, in <u>Linde, et al v. Arab Bank, PLC</u>, 2005 U.S. Dist. Lexis 18864 (E.D. N.Y. Sept. 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's invitation to impose a heightened pleading requirement in a case presenting claims nearly identical to those at issue here.  In <u>Linde</u>, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations.  <u>Id</u>. at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent."  <u>Id</u>. at *42.  The Court rejected this argument, reasoning that Arab Bank was attempting to impose a heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not alleged sufficient facts to establish an evidentiary basis for their allegations of knowledge and intent, defendant simply misapprehends the pleading standard.  It is not entitled to dismissal based on the argument that plaintiff's must plead more than the requisite knowledge and intent, either as to their substantive claims or their claims of aiding and abetting a conspiracy.

<u>Id</u>.  The <u>Linde</u> court likewise rejected the defendant's contention that plaintiffs were required to allege that senior officials of the bank were aware of the misconduct underlying plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof."  <u>Id</u>. at *50.

Consistent with the Federal Rules of Civil Procedure and holdings of the <u>Phelps</u>, <u>Warren</u> and <u>Linde</u> courts, Plaintiffs have met their pleading burden relative to the scienter element of their conspiracy and aiding and abetting claims, and therefore adequately alleged the defendant's involvement in the tort giving rise to their injuries.  At this early stage of the litigation, Plaintiffs'

consistent averments that Al-Ibrahim and his Foundation acted "knowingly" are sufficient under the Federal Rules of Civil Procedure to allow these claims to proceed.

Nowhere do Al-Ibrahim or his Foundation not to have fair notice of the allegations being lodged against them. Both clearly know what has been alleged, and have even attempted to suggest factual evidence at this early stage rebutting Plaintiffs' claims – but such evidentiary disputes are not properly before the Court at this time. The complaints provide fair notice of nature of this dispute, and that is all the Federal Rules require.

**B.    Plaintiffs Have Adequately Pleaded Each Specific Cause Of Action**

Defendants also moves pursuant to Fed. R. Civ. P.12(b)(6) for dismissal of Plaintiffs' individual causes of action for failure to state a claim upon which relief can be granted. Both Al-Ibrahim and his Foundation argue that all of Plaintiffs' statutory and common law claims should be dismissed because, in their view, Plaintiffs have not pled sufficient facts showing that their acts proximately caused plaintiffs' injuries. In addition to this general argument, Defendants raise discrete challenges under Rule 12(b)(6) to several of the causes of action. While cast as separate theories of dismissal, most of these "particularized" 12(b)(6) arguments merely restate Defendants' general arguments regarding the sufficiency of Plaintiffs' pleadings.

For the reasons set forth below, none of the arguments under Rule 12(b)(6) has merit. Most revolve around the same general challenge to the sufficiency of the factual allegations and are plagued by the same fundamental misunderstanding of the applicable pleading requirements. In their motions, Al-Ibrahim and his Foundation argue that Plaintiffs have failed to adequately support their allegations of proximate causation under concerted action theories, on the ground that Plaintiffs have failed to plead sufficient facts to demonstrate that each acted knowingly in supporting Al Qaeda.

However, for the reasons detailed in Sections II-C and III-A above, Plaintiffs' express allegations that Al-Ibrahim and his Foundation acted knowingly and intentionally constitute particularized factual allegations, which must be accepted as true at this stage of the proceedings. Those factual allegations regarding the defendant's knowledge and intent are sufficient to meet Plaintiffs' burden to plead the scienter element of their concerted action theories under the liberal notice pleading requirements of the Federal Rules of Civil Procedure. Consequently, defendants' causation arguments, which rest entirely upon the theory that Plaintiffs have not adequately alleged the defendant's knowledge or presented sufficiently detailed factual allegations, must be rejected.  As such, most of Defendants' objections to the specific causes of action fail as well.

      1.    <u>Trespass</u>

Defendants protest that plaintiffs have neither demonstrated sufficient "substantial assistance" or "actual knowledge" of the Attacks for this claim to survive.  For the reasons stated above, Plaintiffs' allegations are sufficient under notice pleading requirements and the law of this Circuit.

      2.    <u>RICO</u>

Defendants make four arguments here: first, that Plaintiff insurers have no third-party subrogee standing under RICO; second, that Plaintiffs have not adequately demonstrated their role within the enterprise; third, that Plaintiffs have not alleged sufficient predicate acts, and finally that such acts do not constitute a pattern of racketeering activity.   As to the latter two claims, Plaintiffs clearly have met the requirements of notice pleading and have alleged multiple acts in support of the enterprise.  The first two require slightly more analysis:

      a)    Subrogee standing

As to the first claim, standing, subrogees such as the *Federal* and *New York Marine* Plaintiffs herein have standing to assert a RICO claim. *See* <u>National Asbestos Workers Med.</u>

Fund v. Philip Morris, Inc., 74 F. Supp. 2d 221 (E.D. N.Y. 1999).  In National Asbestos Workers, for example, Judge Weinstein allowed the plaintiff health insurers to bring subrogated RICO claims against tobacco manufacturers for the cost of treating their subrogors' smoking-related illnesses. Id. at 228. According to Judge Weinstein, "[t]he equitable doctrine of subrogation allows insurers, analogous in some respects to the plaintiffs, to bring their own claims for the recovery of the economic damages incurred as a result of tortuous injury to their insureds." Id. Subrogation functions as a form of assignment, and RICO claims are assignable. Id.  The tobacco manufacturers suggested that the plaintiffs could not state a subrogated RICO claim because the subrogee plaintiffs "stand in the shoes" of their subrogors and "the subrogors themselves have no RICO claims for the economic injuries associated with the treatment of smoking related illnesses." Id. at 229. Judge Weinstein found the tobacco companies' analysis unpersuasive. According to Judge Weinstein, "[t]he recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute." Id. Moreover, "the most natural reading of the language in RICO supports the conclusion that pecuniary losses resulting from racketeering personal injuries should be compensable under the statute, because the statute confers standing on 'any person injured in his business or property by reason of [racketeering acts defined in the statute].'" Id. (citing 18 U.S.C. § 1964(c)).

Moreover, according to Judge Weinstein, the Supreme Court has recognized (albeit in another context) that money is a form of property. Id. (citing Reiter v. Sonotone Corp., 442 U.S. 330, 338 (1979)). Therefore, "[v]ictims of racketeering who have been deprived of their monetary resources as a direct result of racketeers' predicate acts should, under the most natural interpretation of the phrase 'business or property,' recover their pecuniary losses." Id.

Thus, there is no doubt that, as the subrogees of the property and workers' compensation insureds and as assignees of the workers' compensation claimants who suffered personal injury or wrongful death, the Plaintiffs have standing to bring a claim under RICO.

b)      Defendants' role in the enterprise

Plaintiffs' complaints and RICO Statements assert RICO claims against Defendants pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).  The enterprise - the al Qaeda movement, also referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  Its well documented purpose is to perpetrate acts of terrorism.  Thus, Plaintiffs have sufficiently pled that al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 n.5 (1981); United States v. Coonan, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs further allege that Defendants engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, Plaintiffs allege that Al-Ibrahim and his Foundation knowingly provided financial support to al Qaeda through IMU, as well as through the funding and distribution of texts which shared the Enterprise's message.   As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, Plaintiffs have undeniably stated

RICO claims under Section 1962(a).  *See* Rasul v. Bush, 124 S. Ct. 2686, 2690 (2004) (stating

that the September 11th attacks "severely damaged the U.S. economy").

The defendants are correct that a plaintiff asserting a civil claim under 1962(c) must

allege that the defendant participated in the operation or management of the enterprise.  Dubai

Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003).  However, such

"discretionary authority" generally has been described as "a relatively low hurdle for plaintiffs to

clear" in the Second Circuit.  See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159,

176 (2d Cir. 2004), citing Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003); De Falco v.

Bernas, 244 F.3d 286, 309 (2d Cir. 2001) and United States v. Allen, 155 F.3d 35, 42-43 (2d Cir.

1998).  Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff

frames his complaint, he will have available sufficient factual information regarding the inner

workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially

involved' in the RICO enterprise or participated in the 'operation or management' of the

enterprise." Friedman v. Hartmann, 1994 U.S. Dist. LEXIS 9727, at *4 (S.D.N.Y. July 15, 1994).

Through discovery, this allegation will be further substantiated.

"[T]he requirements for RICO's conspiracy charges under 1962(d) are less demanding."

Baisch, 346 F.3d at 376.  All that is required is that the conspirator "intend to further an endeavor

which, if completed, would satisfy all the elements of the substantive criminal offense, but it

suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77

(quoting Salinas v. United States, 522 U.S. 52, 65 (1997)).  "Although parties who do not control

the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore

be liable under § 1962(d)." Morin v. Trupin, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

The Plaintiffs have satisfied the pleading standards applicable to their 1962(a), 1962(c),

and 1962(d) claims, as set forth above.

3.      Anti-Terrorism Act (ATA)

Defendants claim that plaintiffs have alleged "no act of assistance" or knowledge to link

themselves to the September 11 attacks.  For the reasons stated above, Plaintiffs' allegations are

sufficient under notice pleading requirements and the law of this Circuit.  This Court already has

ruled that Plaintiffs state valid ATA and common law claims against defendants in this litigation

by adequately alleging that those defendants aided and abetted, or conspired with, al Qaeda.  In re

Terrorist Attacks, 349 F. Supp. 2d at 829-30.

4.      Conspiracy, Aiding and Abetting and Punitive Damages

Defendant correctly argues that no independent causes of action exist under New York

law for these claims.  However, at this stage of these proceedings, the substantive law governing

each of Plaintiffs' individual claims remains to be determined.  Thus, it would be premature to

dismiss those causes of action at this time.  Moreover, there can be little dispute that Plaintiffs'

are entitled to recover punitive damages in the event that they prevail against this defendant

under the theories advanced.[4]  Under these circumstances, dismissal of the conspiracy, aiding

and abetting, and punitive damages counts would be inappropriate.

5.      Negligence

Defendants allege that Plaintiffs have failed to identify a duty owed to Plaintiffs by them

which was breached.  Plaintiffs recognize that this Court has dismissed negligence claims against

certain defendants on the basis that defendants owed no duty to Plaintiffs.  Plaintiffs respectfully

disagree with this ruling and refer this Court to the prior briefing on this issue.

---

[4]      Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to
deter him and others like him from similar conduct in the future."  Flatow v. Islamic Republic of
Iran, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Plaintiffs prove their allegations that Defendants
knowingly financed and provided material support to al Qaeda giving its purpose to commit
terrorist acts against innocent persons in the United States, their conduct is sufficiently egregious
and outrageous to warrant the imposition of punitive damages.

6.      Various Claims Raised By Al-Ibrahim Foundation

Certain claims were raised by the Foundation alone.  Plaintiffs recognize that this Court has already held that the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, provides a cause of action only against individuals. Plaintiffs respectfully disagree with this ruling and refer this Court to the prior briefing on this issue.

 Its opposition to Plaintiffs' Alien Tort Claims Act, wrongful death and survival claims are based on the lack of underlying tort; for the reasons stated above regarding notice pleading, this argument should be denied.

Plaintiffs believe that claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred.  On this point, Plaintiffs recognize that this Court has dismissed such claims against certain defendants on the basis of a strict interpretation of the one-year filing requirement.  Plaintiffs respectfully disagree with this ruling and refer this Court to the prior briefing on this issue.  With regards to the intentional infliction of emotional distress claim, however, should this Court determine otherwise with regards to the statute of limitations, this Court has held that allegations of support, aiding and abetting, or conspiring with the September 11 terrorists are sufficient to state a claim for intentional infliction of emotional distress.  In re Terrorist Attacks of September 11, 2001, 349 F. Supp. 2d at 829-830.

Finally, the Foundation argues that plaintiffs have no independent cause of action for violations of international law.  They are incorrect.  In Count Six of the Euro Brokers FAC and Count Nine of the WTC Properties Complaint, Plaintiffs allege that all Defendants are  jointly and severally liable for Plaintiffs' damages under principles of international law.   Specifically, Plaintiffs assert that aircraft hijacking is a well recognized violation of the law of nations, and that the September 11 attacks were committed through a terrorist hijacking in violation of international law.  The Foundation's conduct, insofar as it establishes that Defendant acted directly and in concert with others in financing and materially supporting Al Qaeda, equally

demonstrates its liability for aiding and abetting a violation of international law, which is actionable in American courts.[5]

The legal and factual arguments in support of Plaintiffs' international law claims are well advanced in earlier pleadings, and are incorporated and reasserted in full herein.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Motions to Dismiss filed by Al-Ibrahim and the Al-Ibrahim Foundation be denied in all respects, with prejudice.

Respectfully submitted,

---

[5] *See, e.g.,* Hilao v. Estate of Marcos, 103 F.3d 767, 776 (9th Cir. 1996) (affirming district court's jury instruction allowing foreign leader to be held liable upon finding that he "directed, ordered, conspired with, or aided the military in torture, summary execution, and disappearance"); Presbyterian Church of Sudan v. Talisman Energy, Inc., No. 01 CIV 9882 (AGS), 2003 WL 1339181, at *46-47 (S.D.N.Y. Mar. 19, 2003) (collecting cases) ("U.S. courts have consistently permitted ATCA suits to proceed based on theories of conspiracy and aiding and abetting."); Barrueto v. Larios, 205 F. Supp. 2d 1325, 1331-32 (S.D. Fla. 2002) (holding ATCA liability can be based on allegations that defendants conspired or aided and abetted violations of the law of nations); Mehinovic v.Vuckovic, 198 F. Supp. 2d 1322, 2002 WL 851751, at *24-25 (N.D. Ga. Apr. 29, 2002) (holding defendant liable for aiding and abetting in acts that violate customary international law); and Abebe-Jira v. Negewo, 72 F.3d 844, 845-48 (11th Cir. 1996) (affirming verdict for torture and cruel, inhuman or degrading treatment where defendant supervised or participated with others in "some of the acts of torture" against plaintiffs).

|  | COZEN O'CONNOR |
|---|---|
| Dated: November 28, 2005 | BY: _____/s/_____<br><br>Stephen A. Cozen, Esquire<br>Elliott R. Feldman, Esquire<br>Sean P. Carter, Esquire<br>Adam C. Bonin, Esquire<br>1900 Market Street<br>Philadelphia, PA 19103<br>Tele: (215) 665-2000<br>Fax: (215) 665-2013<br><br>Attorneys for *Federal Insurance* Plaintiffs |
|  | Ronald L. Motley, Esq. (RM-2730)<br>Jodi Westbrook Flowers, Esq.<br>Donald A. Migliori, Esq.<br>Michael Elsner, Esq. (ME-8337)<br>MOTLEY RICE LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, South Carolina 29465<br>Telephone: (843) 216-9000 |
|  | Paul J. Hanly, Jr., Esq. (PH-5486)<br>Jayne Conroy, Esq. (JC-8611)<br>Andrea Bierstein, Esq. (AB-4618)<br>HANLY CONROY BIERSTEIN &<br>SHERIDAN, LLP<br>415 Madison Avenue<br>New York, NY 100 17-11 1 1<br>Telephone: (212) 401-7600<br><br>Attorneys for *Burnett*, *EuroBrokers* and<br>*WTC Properties* Plaintiffs |