UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                             :

In re TERRORIST ATTACKS ON     :    03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                   :    ECF Case
                                             :
------------------------------------------------------ x

*This document relates to:*

*Estate of John P. O'Neill, Sr., on behalf of John P. O'Neill, Sr., deceased, and on behalf of decedent's heirs-at-law, et al. v. Al Baraka Investment and Development Corp., et al., Case No. 04-CV-1923*

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT ON BEHALF OF DEFENDANT BANCA DEL GOTTARDO**

**SONNENSCHEIN NATH & ROSENTHAL LLP**
Martin R. Gold (MG 6528)
Martin Schwartz (MS 4227)
Monica Pa (MP 3307)
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 768-6700

*Attorneys for Defendant Banca del Gottardo*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................... ii

Preliminary Statement .................................................................................................................. 1

ARGUMENT ................................................................................................................................. 2

    A.  The SAC Fails to Plead a Single Cause of Action Against BDG .................................... 2

        1.  Plaintiffs Have Not, As They Cannot, Refute BDG's Argument That They Have Failed To Adequately Plead Conspiracy (Count Six) Or Aiding And Abetting (Count Seven) ..................................................................................... 2

        2.  Anti-Terrorism Act - Count Nine of the SAC ..................................................... 5

        3.  Torture Victims Protection Act - Count One of the SAC .................................. 5

        4.  Alien Tort Claims Act - Count Two of the SAC ................................................ 5

        5.  RICO - Count Ten of the SAC ............................................................................ 6

        6.  Negligence - Count Eight of the SAC ................................................................. 8

        7.  Stature of Limitations: Negligence (Count Eight), Wrongful Death (Count Three), Negligent and/or International Infliction of Emotional Distress (Count Five) ..................................................................................................................... 8

    B.  Plaintiffs' Motion for Leave to Amend Should be Denied ........................................... 9

CONCLUSION .............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*AB v. Rhinebeck Central School Dist.*, 361 F. Supp. 2d 312 (S.D.N.Y. 2005) ....................9

*Burnett v. A+l Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86 (D.D.C. 2003) ................6

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)................ 6-7

*Elliott v. City of New York*, 95 N.Y.2d 730, 747 N.E.2d 760, 724 N.Y.S.2d 397
    (N.Y. 2001) .......................................................................................................................8

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................10

*Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719
    (E.D.N.Y. March 29, 2001) ...........................................................................................7

*Indosuez Int'l Finance B.V. v. Nat'l Res. Bank*, 98 N.Y.2d 238, 774 N.E.2d 696,
    746 N.Y.S.2d 631 (N.Y. 2002) .....................................................................................9

*Kalnit v. Eichler*, 99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd,* 264 F.3d 131
    (2d Cir. 2001).................................................................................................................10

*Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291 (2d Cir. 2000)................................5

*Morin v. Trupin, et al.*, 832 F. Supp. 93, 1993). (S.D.N.Y. 1993 ).....................................7

*Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.*, 152 F.R.D. 18
    (S.D.N.Y. 1993) ...........................................................................................................10

*Softel, Inc. v. Dragon Medical and Scientific Commc'ns, Inc.*, 118 F.3d 955
    (2d Cir. 1997)..................................................................................................................9

*In re Terrorist Attacks*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005).................................. *passim*

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005)..............................................1

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)............................................... 9-10

- iii -

## STATUTES AND RULES

28 U.S.C. § 1606 ...................................................................................................................8

18 U.S.C. § 1964(c) ..............................................................................................................6

Fed.R.Civ.P. 15(a) ................................................................................................................9

N.Y. CPLR § 214(4) .............................................................................................................8

N.Y. CPLR § 215(3) .............................................................................................................9

N.Y. E.P.T.L § 5-4.1 .............................................................................................................8

**PRELIMINARY STATEMENT**

Defendant Banca Del Gottardo ("BDG") respectfully submits this Reply Memorandum in further support of its Motion to Dismiss the claims against it in the above-captioned action.

Plaintiffs' Memorandum in Opposition to BDG's motion to dismiss ("Op.") ignores both this Court's holding in its January 18, 2005 Order ("*In re Terrorist Attacks*") and the authority set out by BDG in its initial brief ("Br."). Plaintiffs pay no heed to this Court's direction that Plaintiffs set forth the facts they are relying upon as a result of the "reasonable inquiry" required by Rule 11, and they ignore this Court's holding that: (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005); (ii) in order to adequately plead a cause of action, the complaint must set forth factual allegations regarding each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries, *see, e.g., id.* at 833-836; and (iii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability, *id.* at 835.

The Second Circuit's recent decision in *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005) restates the familiar proposition that Rule 8 of the Federal Rules of Civil Procedure imposes liberal pleading requirements, but does not save Plaintiffs' deficient pleading as against BDG. As the court stated in *Twombly*, "if a pleaded conspiracy is implausible on the basis of the facts as pleaded - if the allegations amount to no more than 'unlikely speculations' - the complaint will be dismissed." *Id.* at 111. The SAC alleges no facts supporting Plaintiffs' implausible accusation that BDG, a long established Swiss bank, had any incentive, motive or interest to enter into a conspiracy with al Qaeda to launch a massive, terrorist attack against the United States. These unsupported claims, which are no more than "unlikely speculations", are fundamentally flawed and must be dismissed.

In both their Second Amended Complaint, filed December 30, 2004 ("SAC"), and their opposition brief, Plaintiffs offer nothing to support the grave and odious assertion that BDG had anything at all to do with the September 11 attacks, and nothing that shows that this complete failure of pleading can be remedied by an opportunity to replead. BDG is mentioned only twice in the SAC, in paragraphs 22 and 76, where BDG is lumped together with dozens of other defendants under the conclusory allegation that they "conspired with Osama Bin Laden and al Qaida . . . to raise, launder, transfer, distribute, and hide funds . . . to support and finance their terrorist activities[.]" Op. at 3. Plaintiffs' Case Statement, which was subsequently filed on September 30, 2005,[1] merely rehashes the same general references to al Qaeda's jihad and acts of terrorism. Yet, the pleadings are devoid of any specific facts concerning BDG's purported support of any terrorist network. Accordingly, the SAC's allegations against BDG should be dismissed in their entirety, with prejudice.

## ARGUMENT

### A. The SAC Fails To Plead A Single Cause Of Action Against BDG

1. Plaintiffs Have Not, As They Cannot, Refute BDG's Argument That They Have Failed To Adequately Plead Conspiracy (Count Six) Or Aiding And Abetting (Count Seven)

Plaintiffs acknowledge that the governing law for attaching liability based on conspiracy or aiding and abetting incorporates a two-prong test: "the defendant must know the wrongful nature of the primary actor's conduct and the conduct must be tied to a substantive cause of

---

[1] Plaintiffs refer to the Case Statement in their opposition brief as "Exhibit O" of the FCC. *See* Op. at 1, n.2.

Plaintiffs' citations throughout their opposition brief are to the "First Consolidated Complaint" or the "FCC". *See* Op. at 1 n.2. Plaintiffs claim to have filed the FCC on September 30, 2005, but it was not properly served or filed. The FCC was not served on BDG, and it does not appear on the docket sheet of the electronic filing system. Accordingly, the operative pleading is the SAC. In any case, allegations contained in the FCC and the SAC are the same; the only difference is that the FCC includes as exhibits RICO Statements and More Definite Statements filed against several of the defendants herein. These are addressed in the present motion to the extent they pertain to BDG.

action." *In re Terrorist Attacks,* 349 F. Supp. 2d at 826; Op. at 6-7, Br. at 9.  BDG argued in its opening brief that the SAC fails to satisfy either prong.  The first prong is lacking because, throughout the SAC, there is not a single factual allegation supporting the inference that BDG conducted any banking services *with the knowledge* that it was assisting al Qaeda.  Specifically, Plaintiffs do not allege any factual basis for concluding that BDG knew or had reason to know that any funds it purportedly held or transferred were in any way related to al Qaeda.

The second prong is similarly lacking because there is no allegation identifying with specificity any services allegedly rendered by BDG, much less a service or act that aided an entity that proximately caused Plaintiffs' injuries.  Plaintiffs do not challenge BDG's suggestion that Plaintiffs' sole basis for its allegations against BDG is a June 2, 2004, Washington Times article by one Lucy Komisar (a copy of the article is attached as Appendix A to BDG's moving memorandum).  *See* Br. at 4-6.  Similarly, Plaintiffs do not comment on BDG's argument that the Komisar allegations do not relate to the charges in the SAC that BDG was in any way responsible for the events of September 11, 2001.  Plaintiffs' Case Statement alleges that BDG handled "payments for the Saddam money network", but the Case Statement fails to acknowledge that Komisar's Washington Times article, which Plaintiffs clearly rely on for this information, also states that these "payments" purportedly occurred in 1981, 1982, and 1983. *See* Br. at 5, Appendix A.  According to the same Case Statement, however, al Qaeda did not come into existence until the mid to late 1990's. *Id.*  Therefore, based on a plain reading of Plaintiffs' own Case Statement, BDG could not have committed any act that assisted al Qaeda, and Plaintiffs allegations are entirely illogical.

In responding to BDG's arguments regarding defects in the conspiracy and aiding and abetting claims, Plaintiffs state in cavalier fashion that, "Defendant knowingly assisted in the

movement of funds to al Qaida and/or otherwise assisted in their financial activities in furtherance of the conspiracy", without any factual detail whatever to support this conclusion. Op. at 7.  Indeed, Plaintiffs do not, as they cannot, point to any allegation in the SAC that supports such a conclusion, other than other conclusory statements in the SAC.  In attempting to refute BDG's contentions, Plaintiffs fill their opposition brief with inapposite citations to the SAC and to allegations in complaints filed in other actions that do not name BDG as a defendant.[2]

Plaintiffs, moreover, disregard this Court's prior holding in *In re Terrorist Attacks* that banks may not be held liable for injuries caused by money passing through them in connection with routine banking business.  349 F. Supp. 2d at 833.  So too, in this case, the SAC (incorporating the Case Statement) adds nothing to the allegation that BDG held a correspondent account for Al Taqwa.  Even assuming the allegation to be true for purposes of this motion, nothing suggests that BDG knew about Al Taqwa's alleged terrorist ties, that BDG desired to help Al Taqwa's surreptitious activities succeed, or that BDG's holding of Al Taqwa's account somehow assisted Al Qaeda and proximately caused any terrorist acts.  In light of these deficiencies, this Court should find that the SAC fails to adequately allege that BDG knowingly conspired with or aided and abetted the perpetrators of the September 11th attacks.  Accordingly, since all claims asserted against BDG are premised on the concerted action theories of conspiracy or aiding and abetting, all twelve claims in the SAC against BDG are fatally flawed.

---

[2] Plaintiffs' opposition brief includes an "Appendix I", which is purportedly a "Summary of Pleading References to *Banca Del Gottardo*."  This document does not help Plaintiffs.  Instead, it merely rehashes allegations in the SAC and the Case Statement.  It also contains references to complaints filed in other actions that do not name BDG as a defendant and do not even mention BDG.  References to allegations in these other complaints should be ignored.

### 2. Anti-Terrorism Act - Count Nine of the SAC

BDG asks this Court to apply its previous holding that, to adequately plead an ATA claim, "a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities." *In re Terrorist Attacks,* 349 F. Supp. 2d at 828, Br. at 12-13.  As discussed above, Plaintiffs' vague and conclusory allegations that BDG at some unspecified time transferred "al Qaeda money" via a correspondent account do not alone, or together with other conclusory allegations, assert a legally viable claim.

Rather than respond to this argument, Plaintiffs squander pages in discussing the uncontroverted proposition that the ATA permits a private cause of action for acts of international terrorism, *see* Op. at 9, and that financial services could constitute "material support," *see* Op. at 10.  Plaintiffs then state again in a mantra-like fashion that "Plaintiffs have alleged that BDG knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaida."  Op. at 10.  These conclusory arguments in Plaintiffs' opposition brief, mirroring the conclusions in the SAC and Case Statement, do nothing to salvage Plaintiffs' ATA claim.  Accordingly, this claim should be dismissed with prejudice.

### 3. Torture Victims Protection Act - Count One of the SAC

Plaintiffs are not pursuing this claim.  *See* Op. at 3 n.7.

### 4. Alien Tort Claims Act- Count Two of the SAC

In BDG's opening brief, it argued that Plaintiffs' ATCA claim was fatally flawed because none of the named Plaintiffs in this action is an alien.  *See* Br. at 14.  Plaintiffs respond in a footnote that ***non-joined*** members of the putative class may be aliens.  *See* Op. at 15, n.20.  This argument, however, ignores *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000), cited by BDG, which holds that potential, unjoined class members (such as the alien class

members here) may not be considered in determining whether the Court has jurisdiction. Plaintiffs' other discussions and lengthy case citations regarding undisputed issues, such as whether September 11th constituted "egregious misconduct" under the ATCA, *see* Op. at 15-16, and whether the ATCA applies to private parties, *see id*, are irrelevant.  Accordingly, Plaintiffs' ATCA claim should be dismissed.

### 5. RICO - Count Ten of the SAC

In BDG's opening brief, it argued that Plaintiffs' RICO allegations were deficient for four reasons.  First, Plaintiffs' fail to allege any specific injuries to a business or property that were unrelated to, or derivative of, their personal injury claim, s*ee* 18 U.S.C. § 1964(c) and *Burnett v. Al Baraka Inv. and Dev. Corp.,* 274 F. Supp. 2d 86, 100 (D.D.C. 2003).  Plaintiffs allege only personal injuries, i.e. the death of John P. O'Neil, employed at the World Trade Center, SAC ¶ 5, and economic losses derived therefrom; Plaintiffs do not allege that O'Neil had a business or other property that was affected by the September 11th Attacks.

Plaintiffs respond by pointing to paragraph 146(a) of the SAC, which generally states that, as a "result of the Defendants' . . . killing of the Decedents[,] . . . Plaintiffs and the Class have suffered severe and permanent injuries . . . including . . . pecuniary losses, past and future wage losses, loss of support, loss of prospective inheritance[.]" Op. at 17-18.  Plaintiffs also cite to paragraph 15 of the Case Statement, which alleges economic damages in the same conclusory fashion. *See* Op. at 17-18.  These rote recitations of "economic" injuries are insufficient because they lack any factual support.  Moreover, economic injuries such as lost wages and loss of support are derivative of Plaintiffs' personal injury claim.  Because personal injuries are not recoverable under RICO, this claim fails.

Second, Plaintiffs' RICO claim fails to allege facts permitting an inference that BDG had any part in directing the "operation or management" of an extremist, terrorist enterprise, as

- 6 -

opposed to merely providing "goods or services that ultimately benefit the enterprise." *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003); *see also In re Terrorist Attacks*, 349 F. Supp. 2d at 827.  Plaintiffs respond by simply dismissing the "operation or management" requirement as "a relatively low hurdle," and then summarily concluding that this requirement is therefore satisfied, as if it were no requirement whatever.  Op. at 19-20.[3] Accordingly, no factual allegations against BDG in the SAC satisfy this requirement.

Third, Plaintiffs' RICO claim is deficient because it fails to allege facts showing that BDG "knowingly agreed to participate in a conspiracy."  *Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719, at *8 (E.D.N.Y. March 29, 2001) ("conclusory allegations of participation in a conspiracy" is insufficient; the complaint "must plead specifically that each defendant knowingly agreed to further the purpose of the enterprise through the commission of particular crimes").

Finally, as detailed in BDG's opening brief, other pleading deficiencies also pervade Plaintiffs' RICO allegations.  *See* Br. at 15-19.  Plaintiffs fail to allege facts showing that BDG acquired or maintained an interest in al Qaeda through a pattern of racketeering activity, as required by § 1962(b); that BDG committed two predicate acts of "racketeering activity", as required by § 1962(c); or that BDG entered into "an agreement to commit predicate acts[.]" *Morin v. Trupin, et al.,* 832 F. Supp. 93, 99-100 (S.D.N.Y. 1993) (relied on by Plaintiffs, Op. at 19-20) ("mere allegations of an agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)").  Plaintiffs' opposition brief fails to respond to any of these arguments.

---

[3] Plaintiffs' Case Statement alleges that BDG "acquired or maintained an interest or control in the Enterprise."  Case Statement at ¶ 11.  This conclusory allegation, without any additional factual detail, fails to satisfy this RICO element.

6.  Negligence - Count Eight of the SAC

Plaintiffs' state law negligence claim must be dismissed on the basis of this Court's holding that "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." *In re Terrorist Attacks,* 349 F. Supp. 2d at 830-31. Rather than address this governing principle, Plaintiffs respond that "BDG breached the duties encompassed in the norms of conduct found in international law," without referencing any purportedly applicable international law principals. *See* Op. at 21. Plaintiffs also argue that their negligence claim is somehow saved by resort to the ***unpled*** cause of action of negligence per se. *See* Op. at 21-22. Negligence per se, however, is limited to claims based upon a "violation of a State statute that imposes a specific duty[.]" *Elliott v. City of New York*, 95 N.Y.2d 730, 734, 747 N.E.2d 760, 762, 724 N.Y.S.2d 397, 399 (N.Y. 2001). Thus, because Plaintiffs fail to allege a violation of any state statute, a negligence per se claim is likewise unavailing.

7.  Statute of Limitations: Negligence (Count Eight), Wrongful Death (Count Three), Negligent and/or International Infliction of Emotional Distress (Count Five)

BDG has argued that the statute of limitations for several of Plaintiffs' state causes of action has expired. *See* Br. at 19-21. Three years and three months had passed from the death of the decedent, on September 11, 2001, until BDG was named a defendant in this action, on December 30, 2004. These claims include: (a) a negligence claim (Count Eight), which must be brought within 3 years, N.Y. CPLR § 214(4); (b) a wrongful death claim (Count Three) for a decedent of September 11th, which must be brought within two and a half years, N.Y. E.P.T.L § 5-4.1;[4] (c) a negligent infliction of emotional distress claim (Count Five),[5] which must be

---

[4] Plaintiffs concede that causes of action for wrongful death, survival (Count Four), and punitive damages (Count Eleven and Count Twelve) are not independent causes of action; instead, they are predicated on there being an actionable, underlying wrong. *See* Op. at 22-23. As argued in BDG's opening brief, because Plaintiffs fail to adequately allege a any viable claim against BDG, these derivate claims must also be dismissed. *See* Br. at 22-23. Moreover, Plaintiffs' federal punitive damages claim (Count Twelve), based on 28 U.S.C. § 1606, is further

- 8 -

brought within three years, *see AB v. Rhinebeck Central School Dist.,* 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005); and (d) an intentional infliction of emotional distress claim (Count Five),[6] which must be brought within one year, NY CPLR § 215(3).

Plaintiffs respond that under another state's statute of limitations, these claims may be timely. *See* Op. at 23. No other state's laws, however, could apply in this case. Since O'Neil was employed in New York and killed in New York, his cause of action clearly accrued in New York.[7] In addition, this Court has previously applied New York state law in adjudicating various state tort claims. *In re Terrorist Attacks,* 349 F. Supp. 2d at 828-30.

Finally, Plaintiffs argue that the four-year federal statute of limitations should govern because their state tort claims somehow arise under the Anti-Terrorism Act. *See* Op. at 23. This argument is patently frivolous and contravenes this Court's prior holding that New York's statute of limitations applies to bar certain state law claims. *See* 349 F. Supp. 2d at 829. Because it is plain that these state tort claims were not timely raised against BDG, they should be dismissed.

### B.      Plaintiffs' Motion for Leave to Amend Should Be Denied

Although leave to amend a complaint "shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), it is within the sound discretion of the district court whether to grant or deny leave to amend. Undue delay and futility of the amendment, among other factors, are reasons to

---

deficient because this statute only applies to an agency or instrumentality of a foreign state, of which BDG is neither.

[5] As BDG previously argued, the negligent infliction of emotional distress claim should be dismissed for the same reason that the negligence claim fails: BDG, a Swiss bank, owes no duty to the unforeseen third-party beneficiary. *See* Br. at 20.

[6] As discussed in BDG's opening brief, Plaintiffs' intentional infliction of emotional distress claim is also defective because Plaintiffs have not alleged that BDG intentionally and knowingly conspired with, or aided and abetted, the perpetrators of the September 11th attacks. *See* Br. at 20.

[7] In determining which state law applies, a federal court will "employ the choice of law rules of the forum state, in this case New York." *Softel, Inc. v. Dragon Medical and Scientific Commc'ns, Inc.*, 118 F.3d 955, 967 (2d Cir. 1997). "New York choice of law principles require a court to apply the law of the state with the most significant relationship with the particular issue in conflict." *Indosuez Int'l Finance B.V. v. Nat'l Res. Bank,* 98 N.Y.2d 238, 245, 774 N.E.2d 696, 700, 746 N.Y.S.2d 631, 635 (N.Y. 2002).

deny leave." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, Plaintiffs submit no new arguments or any newly discovered facts that might salvage their defective claims.  Moreover, Plaintiffs make no excuse for their delay in amending the SAC; nor do they explain why they should be permitted to amend the twice amended complaint.  *See, e.g., Kalnit v. Eichler*, 99 F. Supp. 2d 327, 344 (S.D.N.Y. 2000), *aff'd,* 264 F.3d 131 (2d Cir. 2001) (denied leave to amend securities fraud complaint on futility grounds where there was no reason to believe another attempt would succeed); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.*, 152 F.R.D. 18, 30 (S.D.N.Y. 1993) ("no new evidence has now come to Plaintiffs' attention since the filing of the original complaint which would justify such an untimely filing").  Accordingly, because it would be both futile and unjust to permit Plaintiffs yet another chance to make their case against BDG, their motion for leave to amend should be denied.

## CONCLUSION

The SAC should be dismissed in its entirety against BDG with prejudice.

Dated:  December 1, 2005
       New York, New York

                                      **SONNENSCHEIN NATH & ROSENTHAL LLP**

                                      By:   /s/
                                               Martin R. Gold (MG 6528)
                                               Martin Schwartz (MS 4227)
                                               Monica Pa (MP 3307)
                                      1221 Avenue of the Americas
                                      New York, New York 10020
                                      Tel.:  (212) 768-6700

                                      *Attorneys for Defendant Banca del Gottardo*