IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACK ON SEPTEMBER 11, 2001 | CASE NO. 03 MDL 1570<br>ECF CASE |

This filing applies to:

*The Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04 CV 1076 (RCC)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DR. TAHA JABIR AL-ALWANI'S MOTION FOR SANCTIONS
PURSUANT TO RULE 11**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Dr. Taha Jabir Al-Alwani*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

    I.   THE LEGAL STANDARD FOR RULE 11 SANCTIONS ................................................. 5

    II.  THE SAC AND MORE DEFINITE STATEMENT AND/OR
        RICO STATEMENT VIOLATE RULE 11 ........................................................................ 7

    III. THE FCC AND MORE DEFINITE STATEMENT ALSO
        VIOLATE RULE 11 ............................................................................................................ 10

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Switzer v. Giron*, 852 P.2d 1320 (Col. Ct. App. 1993) .................................................................. 8

*Burlington Coat Factory Warehouse v. Belk Brothers, Co.*,
   621 F. Supp. 224 (S.D.N.Y. 1985) ............................................................................................ 6

*Callahan v. Schoppe*, 864 F.2d 44 (5th Cir. 1989) ........................................................................ 7

*Chauvet v. Local 1199, Drug, Hospital and Health Care Employees Union*,
   1996 WL 665610 (S.D.N.Y. 1996) .......................................................................................... 11

*Cruz v. Savage*, 896 F.2d 626 (1st Cir. 1990) ............................................................................... 8

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985) ..................................... 6

*Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co., Inc.*, 112 F.R.D.
   664 (S.D.N.Y. 1986) .......................................................................................................... 1, 6 ,7

*Gambello v. Time Warner Comm., Inc.*, 186 F. Supp. 2d 209 (E.D.N.Y. 2002) ............................. 8

*Healey v. Chelsea Res., Ltd.*, 947 F.2d 611 (2d Cir. 1991) ............................................................ 6

*In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 124 (S.D.N.Y. 1999) .......................... 11

*In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 (S.D.N.Y. 2005) ............. 4, 13

*In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ............... 13

*Jeffreys v. P.O. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003) ................................................. 6, 11

*MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253 (2d Cir. 1992) .............................. 6, 9

*Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437 (8th Cir. 1983) ....................................... 12

*Mike Ousley Productions, Inc. v. Cabot*, 130 F.R.D. 155 (S.D. Ga. 1990) .................................... 8

*Monarch Ins. Co. v, Ins. Corp. of Ireland, Ltd.*, 110 F.R.D. 590 (S.D.N.Y. 1986) ......................... 6

*Montgomery v. University of Chicago*, 132 F.R.D. 200 (N.D. Ill. 1990) ....................................... 7

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) .............................................. 12

*Temple v. WISAP USA in Texas*, 152 F.R.D. 591 (D. Neb. 1993) .................................................. 8

*Tenay v. Culinary Teacher's Association of Hyde Park, New York, Inc.*, 225 F.R.D. 483
   (S.D.N.Y. 2005) ......................................................................................................................... 7

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994) .......................... 12

Dr. Taha Jabir Al-Alwani, by and through undersigned counsel, hereby submits this Memorandum of Law in Support of his Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") against Plaintiffs and their attorneys.

## PRELIMINARY STATEMENT

Rule 11 sanctions should be awarded against Plaintiffs and their attorneys because they have persisted with this frivolous action against movant Dr. Taha Jabir Al-Alwani even though they know -- or should know -- that he is not the Al-Alwani named as a Defendant in their complaints.[1] Plaintiffs' stubborn refusal to withdraw the case against Dr. Al-Alwani is "precisely the type of conduct that Rule 11 is designed to deter." *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co., Inc.*, 112 F.R.D. 664, 668 (S.D.N.Y. 1986).

The Taha Al-Alwani named as a defendant is a "natural person[], subject[] and citizen[] of Iraq" and a "leader[], official[], agent[]/or employee[] of Iraq and/or its Intelligence Agency" who is purportedly liable for actions taken "while acting in the course and scope of [his] employment." (SAC and FCC, ¶ 36.) The movant, Dr. Taha Jabir Al-Alwani, in contradistinction, is an American citizen who has resided in the United States for the past 20 years. Dr. Al-Alwani has not been in Iraq for over 35 years, and he is not – and never has been – a leader, official, agent or employee of Iraq and/or its Intelligence Agency. (Declaration of Taha Al-Alwani, ¶¶ 3 and 4.)[2]

Plaintiffs realized, after Dr. Al-Alwani presented them with evidence, that they had served the wrong party. Rather than withdraw the SAC as required by Rule 11, Plaintiffs not

---

[1] On July 29, 2005, Plaintiffs served the Second Amended Complaint ("SAC"), dated December 29, 2004, on Dr. Al-Alwani. On September 30, 2005, Plaintiffs amended the SAC by filing their First Consolidated Complaint ("FCC"). The allegations against Dr. Al-Alwani in the SAC and FCC are identical.

only continued to pursue their original claim, they hedged their bet by filing a document they called a More Definite Statement and/or RICO Statement which purported to add a new theory of liability and new factual allegations against Dr. Al-Alwani that were wholly inconsistent with those in the complaint. Plaintiffs violated Rule 11 when they continued their case against Dr. Al-Alwani even though they knew he was not the Al-Alwani of their complaint. Plaintiffs then filed the First Consolidated Complaint ("FCC") and another More Definite Statement. Not only were these documents filed in blatant violation of the Court's Orders and Federal Rules of Civil Procedure, they do not change the fact that Dr. Al-Alwani is not a defendant in this case. In fact, these filings do nothing but further compound Plaintiffs' already sanctionable conduct.

Plaintiffs should be sanctioned for violating Rule 11 and Dr. Al-Alwani should be awarded the attorneys' fees and expenses he was forced to incur in defending this frivolous suit.

## FACTUAL BACKGROUND

The movant, Dr. Taha Jabir Al-Alwani, is a United States citizen living in Virginia. (Al-Alwani Decl. at ¶ 3.) Dr. Al-Alwani has not been in Iraq since 1969. (*Id. at* ¶ 3.) He has lived in the United States since 1984 and he became a United States citizen in 1992. (*Id.*) Dr. Al-Alwani is not, and never has been, a leader, official, agent or employee of Iraq its Intelligence Agency, and he did not participate in any of the acts or conspiracies described in the complaint. (*Id.* at ¶ 4.)

As noted above, Plaintiffs' SAC alleges that the Defendant Taha Al-Alwani is a "natural person[], subject[] and citizen[] of Iraq" and a "leader[], official[], agent[]/or employee[] of Iraq and/or its Intelligence Agency, who participated in the acts and conspiracy described below

---

[2] Hereinafter the "Al-Alwani Decl." The Al-Alwani Decl. is attached as Exhibit A to the Declaration of Steven K. Barentzen, sworn to on November 11, 2005 (the "Barentzen Decl.").

while acting in the course and scope of their employment," along with such nefarious Iraqi's as Saddam Hussein, his two sons, Qusay and Uday, and other members of Saddam Hussein's infamous Baath party such as Abdel "the Ghost" Hussein, former Iraqi vice-president Taha Yassin Ramadan, former Iraqi Trade Minister Muhammad Madhi Salah and former Iraqi diplomat Hisham Hussein. (SAC, ¶ 36.)

Plaintiffs served the SAC on Dr. Al-Alwani on July 29, 2005, confusing him with an Iraqi national also named Taha Al-Alwani. The surname "Al-Alwani" is a tribal name in Iraq, there may be as many as 50,000 families living in Iraq with that name. (Al-Alwani Decl., at ¶ 5.) Plaintiffs probably meant to serve the SAC on the former mayor of Fallujah, who is named Taha Badwi Hamid Al-Alwani. (*Id.*) Defendant Taha Al-Alwani also possibly could be another Iraqi national who was a member of Saddam Hussein's Baath Party. (*Id.*) Whoever Defendant Taha Al-Alwani is, he is not the same person as movant Dr. Al-Alwani.

If Plaintiffs intended to name Dr. Al-Alwani as a Defendant, they would have alleged that he was liable for his role in the so-called "SAAR Network" just as the other Plaintiffs have done in this MDL.[3] But the SAC is completely devoid of any reference to the so-called "SAAR Network," and none of the other so-called "SAAR Network Defendants" served by the other Plaintiffs are named as defendants.

Shortly after Dr. Al-Alwani was served with the SAC on July 29, 2005, his counsel advised Plaintiffs by telephone that they had served the wrong person and requested that

---

[3] Dr. Al-Alwani was named as a defendant in *Burnett, Federal Insurance* and *New York Marine* for his purported role in the so-called "SAAR Network." In January 2005, the *Burnett* Plaintiffs voluntarily dismissed the claims against Dr. Al-Alwani. On September 21, 2005, the Court dismissed the claims against Dr. Al-Alwani in the *Federal Insurance* action because "the complaint does not adequately provide [Dr. Al-Alwani] with notice as to how [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks on September 11, 2001*, 2005 WL 2296673 at * 27 and 30 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*"). On October 28, 2005, Dr. Al-Alwani moved to dismiss the claims against him in the *New York Marine* action, and that motion is currently pending.

3

Plaintiffs voluntarily withdraw the complaint. At this point, Plaintiffs either knew – or should have known -- that they had served the SAC on the wrong person. But instead of withdrawing the SAC, Plaintiffs pursued their claims against Dr. Taha Jabir Al-Alwani.

On August 26, 2005, Plaintiffs filed a document styled as a "More Definite Statement Pursuant to the Fed. R. Civ. Pro. Rule 12(e), Judge Casey's CMO-2, Paragraph 13, and/or RICO Applicable to Taha Al Alwani A/K/A Dr. Taha Jabir Al'Alwani." (Barentzen Decl., Ex. B.)[4] This More Definite Statement and/or RICO Statement included an entirely different set of allegations against Dr. Al-Alwani that were absent from and wholly inconsistent with the allegations against Defendant Al-Alwani in the SAC. For example, whereas the SAC alleged that Taha Al-Alwani was an Iraqi liable for his activities working for the Iraqi government, the More Definite Statement and/or RICO Statement contained allegations similar to those raised by other Plaintiffs in the MDL that Dr. Al-Alwani lived in Virginia and was liable to Plaintiffs for his activities working for so-called "Safa group" entities. (*Id.* at Ex. A.)

The Al-Alwani named as a defendant in the SAC and the person described in the More Definite Statement and/or RICO Statement are not the same person.

On September 2, 2005, counsel for Dr. Al-Alwani wrote Plaintiffs a detailed letter explaining the he was not the Taha Al-Alwani named in the SAC, and describing how both the SAC and the More Definite Statement and/or RICO Statement violated Rule 11. (Barentzen Decl., Ex. C.) Dr. Al-Alwani again requested that Plaintiffs voluntarily withdraw the SAC, along with the More Definite Statement and/or RICO Statement, and also warned Plaintiffs that

---

[4] Although styled as a More Definite Statement and/or RICO Statement, the document was in both form and substance a RICO Statement that violated the Court's August 23, 2005 Order which denied Plaintiffs' application to amend paragraph 13 of the Court's Case Management Order # 2.

4

if they did not discontinue their frivolous suit against him, that he would seek sanctions pursuant to Rule 11. (*Id.*)

Almost a month later, on September 30, 2005, Plaintiffs' counsel responded to Dr. Al-Alwani's letter and, again, refused to withdraw what they characterize as the "Amended Complaints [and] our More Definite Statements/additional allegations." (Barentzen Decl., Ex. D at 1.) Inexplicably, Plaintiffs agreed to withdraw their "RICO Statement . . . without prejudice," even though the RICO Statement and the More Statement were contained in the same document. (*Id.*) Confusing matters even further, Plaintiffs stated disingenuously that their "More Definite Statements/Additional Allegations . . . clarify the misunderstanding that you have as to identity of your client." (*Id.* at 2.)

Later that day, Plaintiffs also filed the FCC and attached as an exhibit another document entitled a "More Definite Statement/Additional Allegations as to Defendant Taha Al Al-Alwani A/K/A Dr. Taha Jabir Al'Al Wani." The allegations against Taha Al-Alwani in the FCC were identical to those in Plaintiffs' SAC, even though Plaintiffs clearly knew at that point that Dr. Al-Alwani was not an Iraqi national and did not work for the Iraqi government. The "More Definite Statement" was retitled and reformatted, but otherwise was identical to the earlier More Definite Statement and/or RICO Statement, which may or may not have been "withdrawn."

## ARGUMENT

### I. THE LEGAL STANDARD FOR RULE 11 SANCTIONS

Rule 11(b) states in pertinent part that:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

5

>(2) the claims, defenses, and other legal contentions therein are warranted by existing law . . . ; (3) the allegations and other factual contentions have evidentiary support.

The purpose of Rule 11 is to deter spurious claims. *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*, 112 F.R.D. at 666. A pleading violates Rule 11 when it "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading in well-grounded in fact and warranted by existing law." *Jeffreys v. P.O. Rossi*, 275 F. Supp. 2d 463, 479 (S.D.N.Y. 2003) (quotations and citations omitted); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). In determining whether a Rule 11 violation has occurred, the Court should use an "objective standard of reasonableness." *Id.*, at 479; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1992). Sanctions should be imposed "where it is patently clear that a claim has no chance of success." *Id.* (*quoting Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991).

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of New York*, 762 F.2d at 253. Even if the commencement of an action does not violate Rule 11, when a plaintiff persists with a claim after it has become patently clear that is has no basis in fact or law, continuing to maintain that action may give rise to sanctions. *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*, 112 F.R.D. at 667; *Monarch Ins. Co. v, Ins. Corp. of Ireland, Ltd.*, 110 F.R.D. 590, 594-95 (S.D.N.Y. 1986); *Burlington Coat Factory Warehouse v. Belk Brothers, Co.*, 621 F. Supp. 224, 239 (S.D.N.Y. 1985).

6

II.  **THE SAC AND MORE DEFINITE STATEMENT AND/OR RICO STATEMENT VIOLATE RULE 11**

The SAC violates Rule 11 because, as described above and detailed in Dr. Al-Alwani's motion to dismiss, the movant Dr. Al-Alwani is not the same person as the Al-Alwani named as a Defendant. (*See supra.* at 2-4; Memorandum of Law in Support of Motion to Dismiss, dated November 4, 2005, at 4-6.) "[P]ursuing the wrong defendant is precisely the type of conduct that Rule 11 is designed to deter." *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co., Inc.,* 112 F.R.D. at 668.

For example, in *Callahan v. Schoppe,* 864 F.2d 44 (5th Cir. 1989), plaintiffs sued a William Giddens, but served the wrong William Giddens. Unlike Plaintiffs in this action, the *Callahan* plaintiffs eventually "realized their mistake and voluntarily dismissed with prejudice their claims against this person." *Id.* at 45. The Fifth Circuit nevertheless affirmed the district court's Rule 11 sanction against plaintiffs for "suing the wrong person without a reasonable investigation, and persisting in that litigation after clear notice of their error." *Id.* at 45-46. The court found that "[r]equiring parties to determine with accuracy that they are suing the correct parties . . . is the most basic factual inquiry in any lawsuit." *Id.* at 46-47.

Other courts also have not hesitated to impose Rule 11 sanctions on plaintiffs in similar situations. For example, in *Tenay v. Culinary Teacher's Association of Hyde Park, New York, Inc.,* 225 F.R.D. 483, 484 (S.D.N.Y. 2005), Judge McMahon sanctioned a plaintiff for bringing suit against the Culinary Teacher's Association of Hyde Park, New York, Inc. rather than the correct defendant the Culinary Institute of America. In *Montgomery v. University of Chicago,* 132 F.R.D. 200, 201 (N.D. Ill. 1990), the court sanctioned a plaintiff for "improperly naming Dr. Eric J. Del Peiro as defendant, causing him to be served, and thus needlessly requiring [him] to

7

incur costs in ensuring [his] dismissal from this action," when the proper defendant was Dr. Robert A. Del Pero. The Court noted that the plaintiff's actions were "not well grounded in fact" and that the error would not have occurred had plaintiff "conducted a reasonable inquiry." *Id. Accord Switzer v. Giron*, 852 P.2d 1320, 1321 (Col. Ct. App. 1993) (sanctioning plaintiff under state law similar to Rule 11 for pursuing complaint against "Roberto Giron" even though proper defendant was "Robert Giron").

Under these authorities, by serving the SAC on Dr. Al-Alwani without conducting a reasonable inquiry, Plaintiffs likely violated Rule 11. But, assuming *arguendo* that the service of the SAC on Dr. Al-Alwani was reasonable at the time, once Plaintiffs were advised of their mistake and specifically told that their likely target was the former mayor of Fallujah also named Taha Al-Alwani, Plaintiffs were required to conduct an inquiry into whether they had served the correct party, and their failure to do so violated Rule 11. *See, e.g., Cruz v. Savage*, 896 F.2d 626, 633 (1st Cir. 1990) (an attorney "in a position to know [that] claims [are] unsupported by fact or law prior to bringing the claims and throughout the litigation," who nevertheless continues to prosecute such claims, is undoubtedly subject to sanctions under Rule 11); *Gambello v. Time Warner Comm., Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (the court sanctioned counsel for failing to investigate the claims properly, refusing to withdraw the claim when confronted with facts that undermined claims and instead improperly resorting to an alternate legal argument); *Temple v. WISAP USA in Texas*, 152 F.R.D. 591, 602 (D. Neb. 1993) (plaintiff violated Rule 11 "because he sued the wrong corporation as a result of his failure to make any prefiling investigation of the corporate status of the defendant, despite having information that should have alerted him to the need for such investigation."); *Mike Ousley Productions, Inc. v. Cabot*, 130 F.R.D. 155, 159 (S.D. Ga. 1990) (plaintiffs' counsel violated Rule 11 for "failing to

conduct a reasonable factual inquiry an neglecting his continuing obligation to review, reexamine and reevaluate his client's position as facts were discovered after the filing of plaintiff's initial complaint.")

At a minimum, Plaintiffs *should have known* that they had the wrong party, and that is enough to sanction them under Rule 11's objective reasonableness test. *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d at 1257-58. But Plaintiffs' actions suggest that they *actually knew* they had the wrong party, and continued with their case anyway. If Plaintiffs truly believed that they had served the correct Al-Alwani, they simply would have continued to press the claims in the SAC. But, Plaintiffs did not do that. Instead, they filed the More Definite Statement and/or RICO Statement which included an entire new theory of liability and factual allegations that conform with allegations other Plaintiffs in the MDL have made against Dr. Al-Alwani.

Plaintiffs' filing of the More Definite Statement and/or RICO Statement strongly suggests that Plaintiffs knew they had served the wrong Al-Alwani, and that they attempted to correct their error by pretending that they were after Dr. Al-Alwani all along. The More Definite Statement and/or RICO Statement is a tacit admission by Plaintiffs that they knew they served the wrong Al-Alwani, and their continuance of this case anyway is a blatant and intentional violation of Rule 11.[5]

The More Definite Statement and/or RICO Statement also violates Rule 11 because Plaintiffs filed it in intentional violation of the Federal Rules of Civil Procedure and the Court's Orders. Pursuant to Federal Rule of Civil Procedure 12(e) a More Definite Statement is a

---

[5] Even if Plaintiffs did not knowingly violate Rule 11 in the manner described above, by pursuing two sets of conflicting allegations, plaintiffs necessarily violated Rule 11. Dr. Alwani is either an Iraqi working for the Iraqi government, or a Virginia resident working for the SAAR Network. He obviously cannot be both. At least one of these sets of allegations must run afoul of Rule 11.

9

document filed by plaintiffs in response to a motion that clarifies or expands upon "vague or ambiguous" allegations in a complaint. Plaintiffs, on the other hand, voluntarily filed the More Definite Statement and/or RICO Statement in an attempt to assert an entirely new theory of liability against Dr. Al-Alwani and factual allegations in support of that theory against Dr. Al-Alwani that are inconsistent with the SAC's allegations. Further, although styled as a More Definite Statement and/or RICO Statement, the document was in both form and substance a RICO Statement that violated the Court's August 23, 2005 Order which denied Plaintiffs' application to amend paragraph 13 of the Court's Case Management Order # 2.

Therefore, the SAC violates Rule 11 because Plaintiffs continued with their claims against Dr. Al-Alwani even after they knew – or should have known – that they had served the wrong party. The More Definite Statement and/or RICO Statement violates Rule 11 because: 1) it was filed for the improper purpose of needlessly increasing the cost of litigation; and 2) Plaintiffs had no good faith basis for filing the More Definite Statement and/or RICO Statement under the law or the Court's Orders.

### III. THE FCC AND MORE DEFINITE STATEMENT ALSO VIOLATE RULE 11

As noted above, on September 2, 2005, after Plaintiffs filed the More Definite Statement and/or RICO Statement, Dr. Al-Alwani's counsel immediately wrote Plaintiffs a letter requesting that they withdraw these filings. (*See supra.* at 5; Barentzen Decl., Ex. C.) Dr. Al-Alwani's counsel described in detail how Dr. Al-Alwani does not fit the description in the SAC, and suggested the former Mayor of Fallujah as their possible target. Dr. Al-Alwani's counsel also described how the More Definite Statement and/or RICO Statement violated the Federal Rules and Court Orders and violated Rule 11.

After having been advised that Dr. Al-Alwani never worked for the Iraqi government and having acknowledged this fact themselves by filing the "More Definite Statement and/or RICO

10

Statement," Plaintiffs had over a month to inquire into the validity of their allegations and amend the complaint. Nevertheless, Plaintiffs intentionally disparaged Dr. Al-Alwani once again by including in the FCC the allegation from the SAC that accused Dr. Al-Alwani of working for the Iraqi government along with such well-known criminals as Saddam Hussein and his sons. (FCC, ¶ 36.) Plaintiffs *knew* these allegations were untrue, and willingly included them in the FCC anyway.

As noted above, for a Court to impose sanctions against party, it is not necessary for that party to have willingly or knowingly violated Rule 11. *Jeffreys v. P.O. Rossi*, 275 F. Supp. 2d at 479 (court should use an "objective standard of reasonableness" in determining whether Rule 11 was violated). However, in determining whether to impose sanctions, and the severity of those sanctions, courts should look to "[w]hether the improper conduct was willful, or negligent." Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments; *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 130 (S.D.N.Y. 1999); *Chauvet v. Local 1199, Drug, Hospital and Health Care Employees Union*, 1996 WL 665610, *17 (S.D.N.Y. 1996). Even if Plaintiffs' actions prior to the filing of FCC were mere negligent violations of Rule 11, it is impossible to imagine a more blatant and intentional violation of Rule 11, warranting an award of severe sanctions, than Plaintiffs' continued assertion of the slanderous allegations that Dr. Al-Alwani was part of Saddam Hussein's Baath Party in FCC after they must have known them not to be true.

The FCC also violated Rule 11 because the attached More Definite Statement violated paragraph 13 of the Court's Case Management Order #2 (the "CMO-2"). That provision states in pertinent part that:

> Plaintiffs may file more definite statements and/or additional
> allegations against existing defendants by filing statements to this

11

> effect, which will be treated and accepted as pleadings and deemed amendments to previously-filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint. On [September 30,][6] 2005, the plaintiffs shall file an amended complaint that includes all amendments made prior to that date, whether made pursuant to Rule 12(e) or otherwise.

The FCC and attached More Definite Statement violate the CMO-2 that contemplates the filing of a single document containing all of Plaintiffs' allegations because they imposes a burden on both the defendants and the Court to determine exactly what is being alleged against whom that the CMO-2 was specifically designed to prevent. *See, e.g., Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation."); *Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) (dismissing complaint because "the style and prolixity of these pleadings would have made an orderly trial impossible."); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) ("The appellees herein have had to spend a large amount of time and money defending against Cissna's poorly drafted proceedings . . . The right of these defendants to be free from this costly and harassing litigation . . . must be considered."). The FCC and More Definite Statement also violate Fed. R. Civ. P. 10 which requires complaints to list their allegations in sequentially numbered paragraphs.

The More Definite Statement also violates Rule 11 because its allegations -- even if they had been asserted against Dr. Al Alwani properly -- could not conceivably state a claim against him. Less than two weeks before Plaintiffs filed the More Definite Statement, the Court found

---

[6] The Case Management Order originally provided for amended complaints to be filed by July 31, 2005. That date was extended until September 30, 2005 by Order of the Court dated July 27, 2005.

12

that the *Federal Insurance* Plaintiffs' vague and conclusory allegations concerning Dr. Al-Alwani's purported involvement in the so-called "SAAR Network" failed to state a claim because "the complaint does not adequately provide [Dr. Al-Alwani] with notice as to how [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, at * 27.  Plaintiffs knew of this ruling, yet persisted in filing the More Definite Statement containing allegations concerning Dr. Al-Alwani's alleged involvement in the Safa Group that were even weaker than those made by the *Federal Insurance* Plaintiffs and which Plaintiffs should have known could not possibly state a claim against Dr. Al-Alwani.

The allegations purporting to link Dr. Al-Alwani to the Palestinian Islamic Jihad ("PIJ") are also frivolous.  The PIJ reportedly is responsible for terrorist attacks in Israel.  However, there is no allegation either in this complaint, or anywhere, that the PIJ is responsible for the September 11th attacks or connected to al Qaeda.  In this respect, PIJ is similar to Hamas, and the Court has already found that "Plaintiffs have not alleged any relationship between Hamas and al Qaeda or the terrorist attacks of September 11." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 833 (S.D.N.Y. 2005).

Therefore, the FCC and More Definite Statement violate Rule 11 because: 1) they were filed for the improper purpose of needlessly increasing the cost of this litigation; 2) Plaintiffs had no good faith basis for filing them under the law or the Court's Orders; and 3) the claims and allegations are not warranted under existing law and have no evidentiary support.

## CONCLUSION

For all the foregoing reasons, Dr. Taha Jabir Al-Alwani respectfully request that the Court sanction Plaintiffs and their attorneys and award him the attorneys' fees and costs incurred in defending this frivolous suit.

Respectfully submitted,

Dated:   November 11, 2005          By: /s/ Nancy Luque
                                        Nancy Luque (NL-1012)
                                        Jay Hanson (admitted *pro hac vice*)
                                        Steven K. Barentzen (SB-8777)
                                        DLA PIPER RUDNICK GRAY CARY US LLP
                                        1200 Nineteenth Street
                                        Washington, DC  20036-2247
                                        Tel: 202-861-3900
                                        Fax: 202-223-2085

                                        *Attorneys for Dr. Taha Jabir Al-Alwani*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November, 2005, I caused an electronic copy of the foregoing Memorandum of Law in Support of Motion for Sanctions Pursuant to Rule 11 to be served by e-mail upon all parties scheduled for electronic notice.

/s/ Steven K. Barentzen
Steven K. Barentzen (SB-8777)