# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
In Re TERRORIST ATTACKS on              )          03 MDL 1570 (RCC)
SEPTEMBER 11, 2001                      )          ECF Case
                                        )
_____)

This document relates to:

   *Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04-CV-1076 (RCC)


## O'NEILL PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION


**LAW OFFICES OF JERRY S. GOLDMAN &
ASSOCIATES, P.C.**

111 Broadway, 13th Floor
New York, NY 10006
212.242.2232

*Attorneys for the Plaintiffs*


On the Memorandum:

Jerry S. Goldman, Esquire (JG 8445)
Gina M. MacNeill, Esquire (GM 0581)
Frederick J. Salek, Esquire (FJS 8565)

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.    LEAVE TO AMEND IS APPROPRIATE. ....................................................................... 2

II.   DEFENDANT HAS STILL NOT EXPLAINED THE LAWFUL BASIS FOR HIS DELAY
      IN FILING A MOTION UNDER RULE 6(B). ................................................................. 5

III.  RICO/MORE DEFINITE STATEMENTS OF AUGUST, 2005. ...................................... 7

CONCLUSION ............................................................................................................................. 10

APPENDIX I:  TIME LINE ......................................................................................................... 11

CERTIFICATE OF SERVICE ..................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*A. Terzi Prods. V. Theatrical Protective Union, Local No. One,* 2 F. Supp. 2d 485 (S.D.N.Y. 1998) .........................8

*Allen v. New World Coffee, Inc.,* 2001 U.S. Dist. LEXIS 3269 (S.D.N.Y. 2001) ............................................8

*Commer. Cleaning Servs., L.L.C. v. Colin Serv. Sys.,* 271 F. 3d 374 (2d Cir. 2001) .............................................8, 10

*Dempsey v. Sanders,* 132 F. Supp. 2d 222 (S.D.N.Y. 2001) .............................................................8

*Dluhos v. Floating & Abandoned Vessel,* 162 F.3d 63 (2d Cir. 1998) ..............................................9

*Foman v. Davis,* 371 U.S. 178, 182 (1962) ..........................................................................2

*International Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014 (1978) ..................9

*Linde, et al. v. Arab Bank, P.L.C.,* 2005 U.S. LEXIS 18864 (E.D.N.Y. September 2, 2005) ......................................8

*McLaughlin v. Anderson,* 962 F. 2d 187 (2d Cir. 1992) ...................................................................7

*Mega Tech Int'l. Corp. v. Al-Saghyir Establishment,* 1999 U.S. Dist. LEXIS 6381 (S.D.N.Y. 1999) .........................8

*Mendoza v. Zirkle Fruit Co.,* 2000 U.S. Dist. LEXIS 21126 (D. Wash. 2000) .............................................8

*Moses v. Martin,* 360 F. Supp. 2d 533 (S.D.N.Y. 2004) ................................................................8

*Pelman v. McDonald's Corp.,* 306 F.3d 508 (2d Cir. 2005) ................................................................8

*Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir. 2002) ...................................................................8

*Rachman Bag. Co. v. Liberty Mutu. Ins. Co.,* 46 F.3d 230 (2d Cir. 1995). ...........................................2, 3

*Swierkiewicz v. Dorema, N.A.,* 534 U.S. 506, (2002) ..................................................................8

*Twombly v. Bell Atlanic Corp.,* 425 F.3d 99 (2d Cir. 2005) ...............................................................8

*United States Gypsum Co. v. National Gypsum Co.,* 352 U.S. 457 (1957) ...........................................5

*Wagh v. Metris Direct, Inc.,* 348 F. 3d 1101  (9th Cir. 2003), *cert. denied,* 541 U.S. 1043 (2004) ...............................8

## *Error! No table of authorities entries found.***Other Authorities**

Forward by Dr. Al Alwani to *Crisis in the Muslim Mind*, http://www.witness-pioneer.org/vil/Books/AA_cmm/default.htm (as appeared on 12/08/05) ..................................................4

http://campusministry.georgetown.edu/MuslimMinistry/BoardandCommittee.html (12/8/05) ....................................4

http://www.mcrcnet.org/Reports/2003/102003/civilrightsreport102003category.htm (as appeared  on 12/08/08, with a last update date of 10/31/03) ..................................................4

http://www.mwlcanada.org/canada/scholarsconnection.htm (as appeared on 12/8/05) ..................................................4

Washington Times, 10/18/04, http://www.washtimes.com/upi-breaking/20041015-012652-9665r.htm (as appeared on 12/08/05)..................................................................................................................................................4

## *Rules*

Fed. R. Civ. P. Rule 8(e)(2) ...............................................................................................................................5

Fed. R. Civ. Proc. Rule 11(c)(1)(A) ...................................................................................................................2

Fed. R. Civ. Proc. Rule 11 .........................................................................................................................passim

Fed. R. Civ. Proc. Rule 12(h)(1).........................................................................................................................7

Fed. R. Civ. Proc. Rule 6(b) ......................................................................................................................passim

Fed. R. Civ. Proc. Rule 8(a)...............................................................................................................................8

# INTRODUCTION

In light of the relative simplicity of the issues, and the plethora of filings and correspondence thus far on this dispute, in order to avoid unnecessarily burdening the Court, the Plaintiffs will, in this Reply in Support of their Cross Motion,[1] only address certain of the

---

[1] The Cross Motion seeks:

1.  Relative to the Plaintiffs' RICO Statement pertaining to Dr. Taha Jabir Al' Alwani:  a) Granting an Enlargement of Time pursuant to Rule 6(b) to Filing of a RICO Statement as to Dr. Taha Jabir Al' Alwani; *or, in the alternative,* b) Allowing Plaintiff to Withdraw its Previously Filed RICO Statement;

2.  Striking Defendant Taha Al' Alwani's Motion to Dismiss;

3.  Granting Leave to Amend the Plaintiffs' Complaint in certain respects (as set forth below); and/or,

4.  Granting Leave to Amend the Plaintiffs' Complaint in the Event that the Court finds a Deficiency in Pleading under Rule 12(b)(6).

The proposed amendments to the FCC are as follows (with the changes marked in bold):

PROPOSED AMENDMENT 1: Modification of Caption to Correct Typographical Error:

Current Version

Taha al Alwani a/k/a Dr. Taha Jabit Al'Alwani

Current Version

Taha al Alwani a/k/a Dr. Taha Jabi**r** Al'Alwani

PROPOSED AMENDMENT 2: Modification of Para 36 of the FCC:

Current Version

36.  Defendants Saddam Hussein, the Estate of  Qusay Hussein, the Estate of Uday Hussein, Husham Hussein, Tahya Yassin Ramadan a/k/a Taha Yassin Ramadan, Muhammed Madhi Salah a/k/a Muhhamed Mahdi Salah, Faruq Al-Hijazi, Salah Suleiman, Ahmed Khalil Ibrahim Samir al-Ani, Habib Faris Adullah al-Mamouri, Abdel Hussein, a/k/a "The Ghost," Haqi Ismail a/k/a Haqui Ismail, Taha Al Alwani a/k/a Dr. Taha Jabir al'Alwani, Abu Agab, and Abu Waiel a/k/a Abu Aw'el a/k/a Sadoun Abdul Latif are natural persons, subjects and citizens of Iraq and leaders, officials, agents/or employees of Iraq and/or its Intelligence Agency, or are the personal representatives of their estates, who participated in the acts and conspiracy described below while acting in the course and scope of their employment.

Proposed Modified Version

36.   Defendants Saddam Hussein, the Estate of  Qusay Hussein, the Estate of Uday Hussein, Husham Hussein, Tahya Yassin Ramadan a/k/a Taha Yassin Ramadan, Muhammed Madhi Salah a/k/a Muhhamed Mahdi Salah, Faruq Al-Hijazi, Salah Suleiman, Ahmed Khalil Ibrahim Samir al-Ani, Habib Faris Adullah al-Mamouri, Abdel Hussein, a/k/a "The Ghost," Haqi Ismail a/k/a Haqui Ismail, Taha Al Alwani a/k/a Dr. Taha Jabir al'Alwani, Abu Agab, and Abu Waiel a/k/a Abu Aw'el a/k/a Sadoun Abdul Latif are natural persons, subjects and**/or** citizens of Iraq and**/or** leaders, officials, agents/or employees of Iraq and/or its Intelligence Agency, **and/**or are the personal representatives of their estates, who participated in the acts and conspiracy described below, **and as to those employees, leaders, officials and agents only,** while acting in the course and scope of their employment **and/or position**.

arguments raised by the Defendant in his Opposition.

## **ARGUMENT**

### I.  **LEAVE TO AMEND IS APPROPRIATE.**

*(Addressing pp. 9-11 of Defendant's Response to Plaintiffs Cross Motion)*

Defendant, in its then proposed, and subsequently filed Rule 11 motion,[2] in part advised the Plaintiff that it believed that Para. 36 of the amended complaint was erroneous.  In accordance with the safe harbor provisions of Rule 11 (c)(1)(A), the Plaintiff, in a timely manner, sought to modify certain of the allegations, by way of the amendments proffered in the Cross Motion.

Defendant now seeks, in his response to this good faith compliance with the safe-harbor provision to both preclude such amendment (in his opposition to the Cross Motion) _and_ to seek sanctions (in his Rule 11 motion).  The Rules of Civil Procedure can not be construed to countenance such a litigating position.

Furthermore, Rule 15(a) states that permission to amend "shall be freely given when justice so requires." The Supreme Court has emphasized that this should be interpreted to show a clear preference in favor of permitting amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rachman Bag. Co. v. Liberty Mutu. Ins. Co.,* 46 F.3d 230, 235 (2d Cir. 1995).

The proposed amendments will not cause undue delay, and they are not a result of bad

---

PROPOSED AMENDMENT 3- Modification of Para 41, l. 5 of FCC (the full text of Para. 41 is at note 5, *infra*:

Current Version**:**

    Laden, Haqui Ismail, Taha Al Alwani, Abu Agab, and Abwaiel, Osama Bin Laden

Proposed Modified Version:

    Laden, Haqui Ismail, Taha Al Alwani **a/k/a Dr. Taha Jabir al'Alwani**, Abu Agab, and Abwaiel, Osama Bin Laden

[2] MDL docket 1526.  All references to docket numbers are to the MDL Docket, 03-1570 (RCC).

faith or dilatory motive on the part of the movant.  Nor can the Defendant, who is presently litigating a motion to dismiss in a companion case without utilizing the 'wrong defendant' defense in *New York Marine*, and is subject to potential re-pleading in *Federal* case, appropriately claim undue prejudice.  *Rachman*, 46 F.3d at 235.  To the contrary, it is respectfully suggested, Defendant's actions evidence bath faith and are simply designed to unnecessarily delay these proceedings, impose an unnecessary burden on counsel, and waste this Court's resources.

The crux of the Defendant's position, as Plaintiffs understand it, is that the Dr. Taha Jabir al' Alwani, named in the Complaint is not the Dr. Taha Jabir al' Alwani who was personally served, notwithstanding the fact that he is also named in the two companion cases in the multi-district litigation, that he is the person who the drafter of the original complaint intended to sue, that his factual background matches that as set forth in the More-Definite Statement/Additional Allegations, and that he is the person the Plaintiffs allege was involved in this horrendous conspiracy.

As set forth in the Plaintiffs' Supporting Declarations, he is the person who, from the very beginning, the scrivener of the original complaint intended to sue.  As set forth in the Plaintiffs' Supporting Declarations, the first time any attorney representing the Plaintiffs heard of a different *al' Alwani* - specifically  Taha *Badwi* *Hamid* al' Alwani, the mayor of Fallujah - was when counsel for the Defendant told them of the existence of such a person.[3]  That other al' Alwani, as portrayed by defense counsel, neither referred to himself as a "Dr." (as specifically described in both the caption and Paragraph 36 of the Plaintiffs' Complaint as of record prior to

---

[3] It was not until a letter dated October 25, 2004 that counsel for the Dr. Al Alwani advised Plaintiffs that they were 'quite certain' that Plaintiffs were seeking to serve the 'incorrect' person.

3

the communication from counsel for the Defendant), *nor* was named *Taha <u>Jabir</u> al' Alwani* (as specifically named in the caption of the Complaint and Paragraph 36 of the Complaint as docketed with the District Court <u>prior</u> to communication from defense counsel).[4]  Had Plaintiffs served Mr. Taha <u>Badwi</u> <u>Hamid</u> al' Alwani, the person who the Defendant has somehow determined the Plaintiffs meant, as opposed to the Dr. Taha Jabir Al' Alwani who was named in the Complaint, then that individual could properly have made a motion to quash service (or even potentially ignored the matter), and had Plaintiffs insisted on pursuing *that* case, sanctions may very well been appropriate.  Moreover, to the extent that there are any differences between the allegations of Paragraphs 36 or 41[5] (or elsewhere, for that matter) in the pleadings, such is

---

[4] There are various other instances where the person served in this case has been referred to as Taha al' Alwani without the inclusion of the name "Jabir."  See, e.g., http://www.mwlcanada.org/canada/scholarsconnection.htm (as appeared on 12/8/05); http://campusministry.georgetown.edu/MuslimMinistry/BoardandCommittee.html (12/8/05); http://www.mcrcnet.org/Reports/2003/102003/civilrightsreport102003category.htm (as appeared on 12/08/08, with a last update date of 10/31/03) (MCRC is the Muslim Civil Rights Center); http://www.ccmw.com/publications/books_of_interest.htm (as appeared on 12/08/05, last updated 12/04) (Al Alawani, Taha J) (CCMW is the Canadian Council of Muslim Women); Washington Times, 10/18/04, http://www.washtimes.com/upi-breaking/20041015-012652-9665r.htm (as appeared on 12/08/05)("Taha al-Alwani, president of the North American Fiqh (jurisprudence) Council"). There are also variations in the English spelling of the Defendant's Arabic name. Dr. Taha <u>Jibir</u> al Alwani, President, IIIT, DhulHijjah 1314AH/June 1993AC Herndon, Virginia USA,  (emphasis added) (compared with Jabir)- Forward by Dr. Al Alwani to *Crisis in the Muslim Mind*, http://www.witness-pioneer.org/vil/Books/AA_cmm/default.htm (as appeared on 12/08/05).

In fact, in an email from Defendant's very own lawyer, of August 24, 2004, at 10:13 AM, page 1-5, including in Defendant's Counsel's declaration, he refers to his client as Mr. Al-Alwani. Not <u>Dr</u>.  Not Mr. Taha <u>Jabir</u> Al' Alwani.  A review of the whole package of emails from his counsel indicates that the Re: is simply "Taha Al Alwani."  See, also email of Barentzen, 8/25/04, 1:52 P.M. ("Mr. Al-Alwani"; "Mr..Al-Alana" (sic)).

[5] FCC Para. 41 alleges, in pertinent part:

*Defendants* Saddam Hussein, the Estate of  Quasy Hussein, the Estate of Uday Hussein, Husham Hussein, Tahya Yassin Ramadan, Muhammed Madhi Salah, Faruq Al-Hijazi, Salah Suleiman, Ahmed Khalil Ibrahim Samir al-Ani, Habib Faris Adullah al-Mamouri, Abdel Hussein, a/k/a "The Ghost," Osama Bin Laden, Saad Bin Laden, Haqui Ismail, *Taha Al Alwani*, Abu Agab, and Abu Waiel, Osama Bin Laden, The Al Qaeda Islamic Agency, Egyptian Islamic Jihad, Abu Sayyaf, Hamsiraji Sali, Abu Musab Zarqawi, Abu Zubaydh, Khalid Sheikh Mohammed, Abu Abdul Rahman, Al Jazeera, Mohammed Jasmin al-Ali, Schreiber & Zindel, Dr. Frank Zindel, Engelbert Schreiber, Engelbert Schreiber, Jr., Martin Wachter, Erwin Wachter, Sercor Treuhand Anstalt, Abdul Rahman Yasin, Ahmad I. Nasreddin, Al Taqwa Bank, Al Taqwa Trade, Property, and Industry, Ltd., Al-Gammah Al Islamiah, Ayman al-Zawahiri, Albert Freidrich Armand Huber a/k/a/ "Armand Huber," Ali Ghaleb Himmat, Asat Trust Reg., Nada Management Organization, S.A., Yousef M. Nada, Yousef M. Nada & Co, Gesellschaft, M.B.H, Youssef M. Nada & Co., Nada International Anstalt, Barzan e-Tikriti, Metalor, Banca del Gottardo, Abdulaziz al Omari, Wail al Shehri, Waleed M. Al Shehri, Satam M.A. al Suqami,

clearly permissible under Rule 8(e)(2). [6]

    The correct "Taha al' Alwani" was sued.  The correct "Taha al' Alwani" was served.

The amendments should be permitted.

## II. DEFENDANT HAS STILL NOT EXPLAINED THE LAWFUL BASIS FOR HIS DELAY IN FILING A MOTION UNDER RULE 6(b).

*(Addressing pp. 4-8 of Defendant's Response to Plaintiffs' Cross Motion)*

    Defendant, in his Reply, we suggest, never meaningfully addresses the basis for his

unsanctioned 98 day delay in his filing a response to the pleadings,[7] as Rule 12 mandates, nor his

---

Mohammed Atta, Fayez Ahmed a/k/a Banihammad Fayez, Ahmed al-Ghamdi, Hamza al-Ghamdi, Marwan al-Shehhi, Mohald al-Shehri, Khalid al-Midhar, Nawaf al-Hazmi, Salem al-Hazmi, Hani Hanjour, Majed Moqued, Saeed al Ghamdi, Ahmed Ibrahim A. al Haznawi, Ahmed al Nami, Ziad Samir Jarrah, Zaracias Moussaui, Muhammad Atef, The Taliban, Muhammad Omar, Muslim Brotherhood – Syrian Branch, Muslim Brotherhood – Egyptian Branch, Muslim Brotherhood – Jordanian Branch, Muslim Brotherhood – Kuwaiti Branch, Muslim Brotherhood – Iraqi Branch, …., *and John Does 1-67 are* natural persons(or the personal representatives of their estates), subjects and citizens of Iraq and leaders, officials, agents/or employees of Iraq and/or its Intelligence Agency or other agents or instrumentalities of Iraq and/or are natural persons, subjects and citizens of Iran and leaders, officials, agents/or employees of Iran and/or its Intelligence Agency or other agents or instrumentalities of Iran *and/or are natural persons (or the personal representatives of their estates), organizations, banks, and charities located all over the world, who participated in the acts and conspiracy described below, in their individual capacities and while acting in the course and scope of their employment. and/or who conspired with Osama Bin Laden, Al Qaeda, Hezbollah, Iran, and the Taliban to raise, launder, transfer, distribute, and hide funds for Bin Laden and Al Qaeda in order to support and finance their terrorist activities including, but not limited to, the September 11th attacks*.  Some of the businesses, banks and charities operate legitimately but also maintain a secret dual role as front organizations for Hezbollah and Al Qaeda and actively support its terrorist activities.  Some of those organizations are purely a sham front for Hezbollah and Al Qaeda.   (emphasis added).

FCC Para. 63 alleges, in pertinent part:

*The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving* Defendants Saddam Hussein, the Estate of  Qusay Hussein, the Estate of Uday Hussein, Husham Hussein, Tahya Yassin Ramadan, Muhammed Madhi Salah, Faruq Al-Hijazi, Salah Suleiman, Ahmed Khalil Ibrahim Samir al-Ani, Habib Faris Adullah al-Mamouri, Abdel Hussein, a/k/a "The Ghost," Osama Bin Laden, Saad Bin Laden, Haqui Ismail, <u>*Taha Al Alwani,*</u> Abu Agab, and Abu Waiel, Osama Bin Laden, The Al Qaeda Islamic Agency, Egyptian Islamic Jihad, ….,   *and John Does 1-67, who have conspired for many years to attack the United States and murder United States' citizens.  Defendants supported, conspired, aided and abetted, sponsored, planned and executed the September 11th terror attacks that killed thousands of people and injured many thousands more*.   (emphasis added).

FCC Para. 275 alleges that Taha al' Alwani and others caused the extrajudicial killing of John Patrick O'Neill, Sr.

[6] Alternative pleadings are permissible under the Rules. Fed. R. Civ. Proc. 8(e)(2); *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 467 (1957).

[7] A timeline is attached hereto and incorporated herein as Appendix I.

failure to move, as mandated under Rule 6(b), for an enlargement of time based upon good cause and lack of willful neglect.

Although the Defendant repeatedly contacted the Court to seek intervention on a myriad of issues and complaints, and is represented by one of the largest law firms in the United States, he never bothered to seek judicial permission, under Rule 6(b), when faced with obviously irreconcilable differences between the parties, and an unwillingness of the Defendant to bargain.[8]

In addressing this issue, the Defendant devotes approximately 30% of his argument to a recitation of his counsel's version of the discussions relating to a proposed stipulation at the end of August.  While certain of the facts are correct (e.g., the date of service), others are omitted (e.g., defense counsels' demands of acquiescence to their position, accusations of 'blackmail' and 'extortion,' threats of sanctions, etc.),[9] while still others fail to reflect the absolute absence of any sort of meaningful 'give and take' by the Defendant that one would reasonably expect in bona fide, good faith negotiations.  Defendant, already represented by counsel in the co-Plaintiffs cases, already having refused to permit counsel to accept service, already having refused to execute a waiver of service, and after having been personally served with a Complaint, sought an extension of time to respond.  Plaintiffs sought, in exchange,[10] stipulations relative to the RICO Statement *and* a waiver a defense of improper service.  Defendant refused both of Plaintiffs'

---

[8] The complaint which the defendant was served, as well as all of the versions in effect since September, 2004, all clearly had the Defendant identified as Dr. Taha Jabir Al-Alwani, which is both the Defendant's name and the person named in the *Federal* and the *New York Marine* actions.  The addition of the "Jabir" was made *prior* to communications with Defendant's counsel.

[9] The defense counsel's strategy of attacks on counsel will be appropriately addressed in the Plaintiffs' Rule 11 response.

[10] This is consistent with the position taken by the Plaintiffs with the other served defendants as generally reflected in the stipulations.

requests.[11]  Plaintiffs, in good faith, seeking to resolve this scheduling matter and proceed with the litigation of the case, withdrew the second (service waiver) request.  Defendant did not budge from his position, feeling that he was entitled to extension of time.

Ultimately, Plaintiffs suggest, that this whole discussion is, at best, irrelevant and an unnecessary and an inappropriate diversion.  Even as of this date, the Defendant has not sought judicial approval for his blatant disregard of the requirements of Rule 12; rather, attacking counsel and causing undue delays have been his principal means of defense.[12]

As of today, 133 days- approximately 3,192 hours- 191,520 minutes have passed since the Defendant was served.  As of this point, the Defendant still has not sought permission to file late based upon good cause, under Rule 6(b); he can not, in any event, demonstrate good cause.

Accordingly, Defendant's motion should be stricken.

### III. RICO STATEMENT (DOCKET NO. 1158) AND MORE DEFINITE STATEMENT (DOCKET NO. 1157) OF AUGUST, 2005.[13]

*(Addressing pp. 2-4 of Defendant's Response to Plaintiffs' Cross Motion)*

In the abundance of caution, within thirty (30) days of service, in accordance with the Plaintiffs' interpretation of your Honor's rulings, and the applicable case law,[14] Plaintiffs filed

---

[11] At the time Plaintiffs made such requests, they believed that it was covered by the 30 day rule of CMO 2, para. 14, and was seeking more time than so provided, as has generally been the case in this MDL. Plaintiffs further believed that the service waiver was similarly inconsequential, as the Defendant was personally served.  Ultimately, in good faith, seeking to resolve the dispute, the Plaintiffs withdrew the latter request.  The Defendant refused to budge from his position.  Ultimately, he failed to raise the service issue in a motion.  See, Fed. R. Civ. Proc. 12(h)(1).

[12] The Defendant claims (p. 8) that he could not have brought a motion to dismiss until the FCC was filed on September 30, 2005.  There were no allegations contained within the FCC which were not in the Complaint Additional Allegations/More Definite Statement, filed on August 26, 2005 (docket 1157).

[13] The Plaintiffs' Mem. In Opp. To the Motion to Dismiss and In Support of the Cross Motion erroneously referred to the RICO Statement as docket 1157, which in fact it appears on the docket as 1158; with the More Definite Statement /Additional Allegations ("MDS") properly as docket 1157 (rather than 1158 as indicated).  It also refers to the Court's order of August 22, as also docketed at 1157, when, it fact, it was docketed at 1144. We apologize for the typographical error.

[14] RICO Statements are to be construed as pleadings. *McLaughlin v. Anderson,* 962 F. 2d 187, 195 (2d Cir. 1992);

both a RICO Statement *and* a More Definite Statement/Additional Allegations on August 26,

2005 (docket nos. 1158 and 1157, respectively).  On the eve of filing same, on August 22, 2005,

docket no. 1144, this Court entered an order apparently limiting the applicability of CMO 2,

para. 14, relative to RICO Statements for all Plaintiffs <u>other</u> than *Federal.*  Plaintiff filed the

RICO Statement (1158), as an offer of proof, in the event that this Court reconsidered[15] its

ruling, permitted a later filing on motion, or it was otherwise deemed permissible.  A More

Definite Statement/Additional Allegations, as specifically provided for by the CMO 2, Para. 13,

applicable to all Plaintiffs, was similarly separately filed and docketed (1157) containing

additional allegations as to the Defendant, including RICO allegations.[16]

      As to the RICO Statement, by way of the instant Cross-Motion, Plaintiffs are seeking

permission to file it after the period of time set forth in the Court's Individual Rules, for good

cause, under Rule 6, for the reasons set forth in our principal brief.  If denied, we are requesting

that the RICO Statement *only*, docket No. 1158, be stricken from the record, and disregarded as a

pleading in this action, relying solely on the More Definite Statement/Additional Allegations as

---

*Moses v. Martin*, 360 F. Supp. 2d 533, 539 n. 22 (S.D.N.Y. 2004); *Allen v. New World Coffee, Inc.,* 2001 U.S. Dist. LEXIS 3269, n. 3 (S.D.N.Y. 2001); *Dempsey v. Sanders,* 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); *Mega Tech Int'l. Corp. v. Al-Saghyir Establishment*, 1999 U.S. Dist. LEXIS 6381 (S.D.N.Y. 1999); *A. Terzi Prods. V. Theatrical Protective Union, Local No. One,* 2 F. Supp. 2d 485, 509, n. 16 (S.D.N.Y. 1998).

[15] In the Plaintiffs Memorandum of Law in Opposition to Defendant's Motion to Dismiss, at pp. 17-18, Plaintiffs requested a reconsideration of the Court's determination with regard to the applicability of CMO No. 2, Para. 14 to Plaintiffs other than *Federal* as applied to the facts and circumstances of this Defendant.  Proposed CMO 4 raises this issue, as well, on behalf of all of the Plaintiffs in the multi-district litigation.

[16] Plaintiffs believe, as a matter of law, to support a RICO cause of action, a RICO Statement is not required. *Commer. Cleaning Servs., L.L.C. v. Colin Serv. Sys.,* 271 F. 3d 374, 387 (2d Cir. 2001); *Wagh v. Metris Direct, Inc.,* 348 F. 3d 1101, 1107-1109 (9th Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004); *Mendoza v. Zirkle Fruit Co.,* 2000 U.S. Dist. LEXIS 21126 (D. Wash. 2000).  Plaintiffs further believe, under Rule 8(a) and the notice pleading case law of both the Supreme Court and this Circuit, as set forth in the Memorandum of Law in Opposition to the Motion to Dismiss, no heightened pleading standards are permitted for either RICO or the ATA. *See, Swierkiewicz v. Dorema, N.A.,* 534 U.S. 506, 512-3 (2002); *Phelps v. Kapnolas,* 308 F.3d 180, 184, 186-7 (2d Cir. 2002); *Pelman v. McDonald's Corp.,* 306 F.3d 508, 512 (2d Cir. 2005); *Twombly v. Bell Atlanic Corp.,* 425 F.3d 99, 106-7 (2d Cir. 2005); *Linde, et al. v. Arab Bank, P.L.C.,* 2005 U.S. LEXIS 18864 (E.D.N.Y. September 2, 2005).

independently docketed at 1360, and as part of the First Consolidated Complaint (Exhibit G), both filed on December 30, 2005.

 Defendant, in his Response to the Cross Motion, however, seeks to strike *both* the RICO Statement and the More Definite Statement.  There is no basis for this position. [17]

In his Response, at p. 3, counsel for Taha Al' Alwani represented to the Court that that "Plaintiffs admit that this More Definite Statement and/or RICO Statement 'may not have been timely,'" citing, in purported support, of this contention Plaintiff's Mem. of Law at p. 17.

That is incorrect.

Plaintiffs' stated, after specifically referring to the RICO Statement in the preceding paragraphs (at pp. 16-7), that "[a]ccordingly, the instant filing as to this particularly Defendant may not have been timely." Plaintiffs Mem. 17. [18,19,20]

Moreover, as the Second Circuit has taught us, any sort of premature action is unwarranted as the Plaintiffs have the right to conduct additional discovery.  By way of example, in the instant case, as part of the Plaintiffs on-going investigations, have found apparent un-pled

---

[17] Defendant appears to request that docket no. 1157, the MDS of August 26, 2005, and the MDS of September 30, 2005, docket no. 1360, and the First Consolidated Complaint of September 30, 2005, be stricken as well. The Plaintiffs see absolutely no basis at all for that specious request, for the reasons set forth in the Plaintiffs Mem. of Law in Opp. to the Motion to Dismiss.

[18] The Section Heading in the Plaintiff's Memorandum was entitled "RICO Statement of August 26, 2005." See, also, e.g., Mem. p 18 ('withdrawing the filing of the RICO Statement only'). In Plaintiffs' Response to Defendant's Motion, at p. 18, Plaintiff clearly indicated that should the Court decline to reconsider and reverse its original decision as to RICO Statements and/or decline to allow the late filing under the facts and circumstances of this case, it was withdrawing "the filing of the RICO Statement *only* of August 25, 2005." (emphasis added).

[19] The Plaintiffs never specifically addressed the MDS of August 26, 2005 (docket 1157), rather concentrating on the superseding document of September 30, 2005 (docket 1360).  Our position was and is that both were properly filed, but obviously the pleading with the later date governs.  *International Controls Corp. v. Vesco*, 556 F.2d 665, 668-669 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978); *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998).  There are no substantive differences between the August MDS and the MDS filing other than formatting.

[20] In his moving papers, the Defendant appears to confuse the RICO Statement with the MDS.  While both documents appear to be the same, they were filed and docketed separately, in the event that the Court declined to reconsider its August 22, 2005 ruling or grant leave an extension of time to file the RICO Statement *only*.

links between the instant Defendant  with two other defendants in the companion O'Neill-Al Baraka *et al.*, case (e.g., Muslim World League and Council on American Islamic Relations), as well as with a defendant in the companion O'Neill-Kingdom of Saudi Arabia *et. al.*, case (the Kingdom), all of which certainly will be pursued in discovery.  *Commer. Cleaning Servs., supra.*

The Plaintiffs Rule 6(b), Cross Motion, should be granted.

## **CONCLUSION**

For the reasons set forth herein, the relief sought by way of the Plaintiff's Cross Motions, and such other and further relief as to this Court seems just and proper, should be granted.


Dated:  December 9, 2005

Respectfully submitted

LAW OFFICES OF JERRY S. GOLDMAN &
     ASSOCIATES, P.C.

By: _____
    JERRY S. GOLDMAN, ESQ. (JG8445)
    FREDERICK J. SALEK, ESQ. (FS8565)
    GINA M. MAC NEILL, ESQ. (GM0581)

*Attorneys for the Plaintiffs,*
*Estate of John P. O'Neill, et al.,*

    111 Broadway, 13TH Floor
    New York, N.Y. 10006
    212.242.2232

## APPENDIX I:  TIME LINE

| | |
|---|---|
| August 20, 2003 | Complaint Filed USDC – Washington, 03-1766, and assigned to Judge Walton.   See, MDL docket 18. |
| September 9, 2003 | Date Defendant believes, under Hon. Richard Conway Casey's Individual Rules that the Plaintiff should have filed a RICO Statement (20 days after filing); case is still pending before Judge Walton in the District of Columbia |
| December 10, 2003 | First MDL Order re: Consolidation (but does not list O'Neill) (order dated December 9, 2003) (MDL docket 1) |
| January 6, 2004 | First Transfer In Documents to the SDNY (but do not include O'Neill) (dockets 3, 4) |
| March 1, 2004 | Initial Hearing on the MDL before Hon. Richard Conway Casey |
| March 11, 2004 | CMO 1 (docket 16) (does not reference O'Neill) |
| March 10, 2004 | O'Neill Kingdom of Saudi Arabia/O'Neill Al Baraka filed in SDNY |
| March 11, 2004 | Transfer In (docket 18) (O'Neill is transferred to SDNY) (the transfer order was dated January 9, 2004) |
| March 30, 2004 | Initial Service List filed (docket 89)- Neither Goldman nor Ambush listed |
| April 5, 2004 | Court Order (docket 91) to develop CMO 2 |
| May 12, 2004 | Court Conference |
| May 25, 2004 | Court Conference on CMO |
| June 16, 2004 | CMO 2 is docketed (docket 247) |

| September 28, 2004 | FAC Filed (docket 464) |
|---|---|
| October 14, 2004 | Letter to Defense Counsel Requesting Acceptance of Service. McNeill 3, 4. |
| October 24, 2004 | Letter from defense counsel refusing to accept service and advising that they are "quite certain" that we have sued a different individual. McNeill 4. |
| December 30, 2004 | Second Amended Complaint (SAC) Filed (docket 619) |
| February 1, 2004 | Waiver of service under Rule 4 tendered to Defendant in Virginia |
| June 7, 2005 | TAC Filed (docket 983) |
| July 29, 2005 at 9:26 A.M. | Defendant Taha Jabir Al-Alwani is personally served in Virginia |
| August 10, 2005 | Telephone call by Barentzen seeking stipulation.  Goldman advises that they will tender one the next day. |
| August 11, 2005 (10:59 AM) | Gina MacNeill, Esquire tenders proposed Stipulation to Steven Barentzen via email, inquiring if it is acceptable.  Barentzen Declaration, 1525, Exhibit B.  Stipulation provides for RICO Statement within 30 days of Court approval; 45 days thereafter to file motion; 45 days thereafter for response; 15 days thereafter for reply; waiver of service argument |
| August 11, 2005 (2:50 PM) | Email from Steven Barentzen to Gina MacNeill demanding the removal of the two provisions sought by the Plaintiffs; otherwise he will write to Judge Casey.  Barentzen Declaration, 1525, Exhibit C |
| August 11, 2005 (4:45 PM) | Email from Jerry S. Goldman to Steven Barentzen indicating that if that if the options were either acceding to all of the Defendant's demands and removing all of the Plaintiffs' requests _or_ have Defendant contact the Court, |

| | |
|---|---|
| | as set forth in the Defendant's Email (Exhibit C), the Defendant should contact the Court. |
| August 12, 2005 | Letter from Steven Barentzen to the Court addressing his demand that RICO Statements were inappropriate under CMO 2, Para. 14, *not* addressing the time to respond. Barentzen Declaration, docket 1525, Exhibit D. |
| | Goldman response to the Court regarding RICO |
| August 22, 2005 | Court order re: RICO Statements (docket 1144) (note Steven Barentzen Declaration, docket 1525, refers to this as August 23, 2005) |
| August 23, 2005 (7:06 PM) | Steven Barentzen emails revised stipulation to Jerry S. Goldman, in light of docket 1144, deleting both of Plaintiffs' requests- the RICO Statement provision and the waiver of service argument provision. Barentzen Declaration, Exhibit G |
| August 24, 2004 (8:55 AM) | Email of Jerry S. Goldman to Steven Barentzen, letting counsel know that he will 'get back to you on this one. I understand Judge Casey's order, although, obviously, I respectfully disagree. There is nothing in it, however, about the service issue. I would assume, that under the terms of his order, we may be late in filing a "RICO Statement"; I understand that your client was served, I believe, on the 29th or 39th of July, which is well over 30 days ago. Barentzen Declaration, Exhibit H |
| August 24, 2004 (9:15 AM) | Email of Steven Barentzen to Jerry S. Goldman, that their position is that Plaintiffs can not file at RICO Statement and that they will "oppose any RICO Statement you submit." They further refuse any discussion on the Plaintiffs' waiver of service request. |
| August 24, 2004 (9:15 AM) | Email response of Jerry S. Goldman to Steven Barentzen- In light of the Defendant's position that they will oppose an out of time RICO |

| | |
|---|---|
| | Statement, as set forth in the previous email from the Defendant, Plaintiffs will oppose an answer as 'being filed out of time. As you claim, you and your firm has (sic) been been (sic) involved in the case for many months, and there is no real dispute over the receipt of the summons and complaint, and I don't see an executed stipulation granting you additional time, I'm not sure what your basis for an untimely filing would be.'  Goldman further inquires as a good faith basis for the service argument which Defendant has steadfastly refused to waive. |
| August 24, 2004 | Telephone conversation between Steven Barentzen and Jerry S. Goldman |
| August 24, 2004 (10:13 AM) | Email from Steven Barentzen to Goldman following up on the telephone conversation, claiming that a default is frivolous and indicative of the Plaintiffs lack of good faith, and that should Plaintiff "make any motion or take any action to hold Mr. (sic) Al-Alwani (sic) in default, we will not only vehemently oppose your application but seek Rule 11 sanctions as well. <br><br> Again, Defendant's counsel refuses to even accept Plaintiff's request for a waiver of a service of process argument. <br><br> After indicating that '[t]here is no need to play games here' he requests that Plaintiffs let him now "whether you will agree to the draft stipulation I sent you last night, and if not why." <br><br> Steven Barentzen Declaration, Exhibit I |
| August 24, 2005 | Affidavit of Service regarding personal service upon Dr. Taha Jabir Al-Alwani on July 29, 2005, Filed (docket 1145) |
| August 25, 2005 | Voicemail message left by Steven Barentzen on Jerry S. Goldman's telephone system |

| | |
|---|---|
| August 25, 2005 (11:11 AM) | Email from Steven Barentzen to Jerry S. Goldman following up on voice mail, indicating that the lack of a return call within the same morning was indicative of the Plaintiffs' failing to respond or negotiate. Defendant's counsel indicates that they intend to unilaterally submit the stipulation to the Court for approval and offering to submit the Plaintiffs' response simultaneously. |
| August 25, 2005 (12:28) | Email response of Jerry S. Goldman to Steven Barentzen, advising that he was in meetings during the morning. |
| | Goldman advises that Plaintiffs' understanding of negotiations is 'one of give an take' and highlights that there were two issues which the Plaintiffs insisted upon – the service issue and the RICO issue and the issue of the Defendants- an extension of a time to respond. |
| | Plaintiffs "[i]n the spirit of maintaining our cordial and collegial professional relationship, by pursuing bona fide and good faith negotiations" indicated their willingness to waive the defendant's 'unequivocal, unexplained, unwarranted, and unsanctioned default' and withdraw the demand of a waiver 'relative to the issue of service that particularly troubled you' {defendant} in exchange for a concession on the RICO issue. |
| | If this could not be worked out, Plaintiffs requested a copy of Defendant's proposed transmittal to the Court and requested 24 hours to put together a response. |
| August 25, 2005 (1:52 PM) | Email from Steven Barentzen to Jerry S. Goldman. After acknowledging the Plaintiffs' concession on the service issue, Defendant's counsel set forth their recollection and interpretation of the historical record. |
| | After calling Plaintiffs' RICO Statement request 'unreasonable', and denying that they were not untimely in filing a responsive pleading, they accused Plaintiffs of engaging |

| | |
|---|---|
| | conduct that was 'at best' 'a thinly veiled effort to exert improper leverage… to obtain back door relief from the Court's Order.  At worst, it is tantamount to extortion.' |
| | Finally, Defendant's counsel declined to send a draft of their proposed letter to the Court so that Plaintiffs' counsel could properly prepare. |
| August 25, 2005 (7:23 PM) | Email from Steven Barentzen to Jerry S. Goldman proffering draft of letter being sent by the close of business August 26, 2005 |
| August 26, 2005 (1:39 PM) | Email from Jerry S. Goldman to Steven Barentzen "In response to a communication to the Executive Committee, we will not be tendering a response to your letter application to the court.  Rather, we are simply tendering the following directly to the Court". |
| | A copy of the August 26, 2005 letter of Goldman to the Hon. Richard Conway Casey was attached.  Reproduced as part of Exhibit __, of Barentzen Declaration, Docket 1525 |
| August 26, 2005 (1:50 PM) | Steven Barentzen responsive email to Jerry S. Goldman "Are you agreeing to sign our stipulation?" |
| August 26, 2005 (2:12 PM) | Email from Jerry S. Goldman to Steven Barentzen, declining to sign that stipulation and again proposing a compromise position. Plaintiffs' counsel provide additional factual material relative to the particular facts and circumstances of the O'Neill Iraq litigation, namely that it could *not* have complied with Judge Casey's individual rules relative to RICO Statements as the case was pending for 7 months in the District of Columbia before a different judge. |
| | Plaintiffs' counsel advised that they had been accommodating, by offering an extension of time and removing the service request, in exchange for a concession relative to RICO. |
| | Plaintiffs suggested that the Defendant that |

| | |
|---|---|
| | they 'carefully examine' their position and 'come to the realization that this is more than reasonable (sic) resolution to a dispute that need not take up the Court's valuable time. |
| August 26, 2005 | Defendant submits it letter to the Court complaining of the Plaintiffs' position |
| August 26, 2005 | Plaintiffs letter to the Court indicates that counsel "will not respond to the recent letters on the O'Neill cases, relative to scheduling, supplemental submissions and the like, unless the Court desires us to respond.<br><br>The Court declined to force the Plaintiffs to accept the Defendant's unilateral demands. |
| August 26, 2005 | More Definite Statement regarding Dr. Taha Jabir AL-Alwani filed by Plaintiffs (docket 1157) |
| August 26, 2005 | RICO Statement regarding Dr. Taha Jabir AL-Alwani filed by Plaintiffs (docket 1158) |
| September 2, 2005 | Email of Barentzen to Jerry S. Goldman threatening Rule 11 Sanction. Barentzen Declaration, docket 1470, Exhibit C |
| September 30, 2005 | More Definite Statement-Additional Allegations regarding Dr. Taha Jabir AL-Alwani filed (superseding docket 1157 filed 8/26/05), docket 1360. These allegations mirror the letter of August 22, 2005. |
| September 30, 2005 | First Consolidated Complaint regarding Dr. Taha Jabir AL-Alwani served and filed. The allegations of docket 1157 are included as Exhibit G. |
| November 4, 2005 | Motion Filed to Defendant's Dismiss under 12(b)(6) filed by Defendant (docket 1468), with Memorandum (docket 1469) of Law and Declaration of S Barentzen (1470) |
| November 11, 2005 | Defendant served but not filed Rule 11. |

| | |
|---|---|
| November 18, 2005 | Response Filed to Motion to Dismiss filed by Plaintiffs (docket 1468), along with Declarations of Ambush (Docket 1492), MacNeill (Docket 1493) and Goldman (docket 1494)[21] |
| | Cross Motion filed by Plaintiffs (docket 1495), along with Memorandum of Law (docket 1496) and Declarations (Ambush- (docket 1497); MacNeill –(docket 1498) and Goldman (docket 1499)) |
| November 30, 2005 | Plaintiffs inquire of Defendant's counsel if Rule 11 is still pursued or otherwise modified in light of the Cross-Motion. |
| November 30, 2005 | Defendant's counsel responds that they will file the Rule 11 motion, as tendered, on December 2, 2005 |
| December 1, 2005 | Defendants Reply to Plaintiffs Opposition to Motion to Dismiss Filed (docket 1530)[22] |
| December 1, 2005 | Declarations of Steven Barentzen…in Response to Motion to Strike (docket 1525) |
| December 1, 2005 | Defendant's Response to Plaintiffs Cross Motion Filed (docket 1531)[23] |
| December 2, 2005 | Proposed Rule 11 Motion Filed (docket 1526) with Memo of Law (docket 1527) and Declaration of Steven Barentzen (docket 1528) |
| December 9, 2005 | Plaintiffs Reply in Support of Cross Motion being filed (due 12/5/05) |

---

[21] The declarations were refiled on December 1, 2005, as the copies of the scanned declarations did not bear the signatures (MacNeill, docket 1518; Goldman docket 1519).

[22] While this was filed on December 5, 2005, we understand that Defendant attempted, unsuccessfully, to properly file and have it on December 1, 2005, and do not object to its late filing.

[23] While this was filed on December 5, 2005, we understand that Defendant attempted, unsuccessfully, to properly file and have it on December 1, 2005, and do not object to its late filing.

## <u>CERTIFICATE OF SERVICE</u>

I, GINA MAC NEILL, ESQUIRE, do hereby certify that I served the within Plaintiffs'

Memorandum of Law in Support to the Plaintiff's Cross Motion against Dr. Taha Jabir Al-

Alwani, on this date, on all of the parties in the case via filing with the Court's electronic case

filing (ECF) system.

Dated: December 9, 2005

_____
GINA MAC NEILL, ESQUIRE

X:\Clients\ONeill v. Saudi arabia\Motions\Motions to Dismiss\Taha\Oneill Taha\ReplyMemoofLawfinal.doc