UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re TERRORIST ATTACKS on ) 03 MDL 1570 (RCC)
SEPTEMBER 11, 2001 ) ECF Case
)

This document relates to:

*Estate of John P. O'Neill, Sr., et al. v. The Republic of Iraq, et al.*, 04-CV-1076 (RCC)

## DECLARATION IN JOSHUA M. AMBUSH

JOSHUA M. AMBUSH, on this 14th day of December, 2005, hereby declares pursuant to 28 United States Code Sec. 1746, and under penalties of perjury, that the foregoing is true and correct:

1. I am an attorney at law, licensed to practice to in the State of Maryland and admitted *pro hac vice* in the instant matter.

2. I am, along with Jerry S. Goldman, Esquire and others, attorney of record in the instant matter.

### The Person Who I Intended To Sue was the Person Served.

3. During the summer of 2003, I drafted the original complaint in the above-referenced matter.

4. Prior to filing the complaint, I, along with others, reviewed the factual allegations and the legal positions to be taken, in accordance with my obligations under Federal Rule of Civil Procedure 11.

1

5. Upon executing the complaint, I believed that I complied with the requirements of Rule 11.

6. I caused to be filed, before the United States District Court of the District of Columbia, the complaint in the instant matter, on or about August 20, 2003.

7. When I drafted such complaint, I included as a defendant, Dr. Taha Al-Alwani.

8. My intention, when I drafted such complaint, was to include the individual, who I then believed was living in northern Virginia, and who I understood was born in Iraq, and who I understood was a then subject to an investigation by the United States Government relative to the funding of terrorist organizations, and was subject to a search warrant prior to the filing of the complaint. Such search was covered in the public media, including the Washington Post on March 21, 2002.

9. I understood that the group involved in Virginia operated a number of companies, charities and other organizations. I did not know then, nor do I know now, the true name that this group of individuals utilized in referring to the group, although I understand that it has been referred to, by others, as the *Safa Group* or the *SAAR network*. I understood that the Defendant I sought to sue in the case, Taha Al-Alwani resided on Safa Street.

10. Shortly after the complaint was filed, the contents of the affidavit in support of the search warrant was publicly released and reported in the media. In an article in the Wall Street Journal, dated October 20, 2003, entitled *U.S. Details*

*Suspicions of Islamist Funding ----- Investigator Calls Saudi Banking Family a Source of Money Amid Web of Transactions*, by Glenn Simpson, page A4, the group is described as the Safa Group. That article discusses an Taha Al-Alwani, who was the person who I named in the complaint and who I intended to serve. I have attached a copy of that article to this declaration as Exhibit Ambush A.

11. I had no knowledge, at that time, nor do I today, of any other individual who goes by the name of Taha Al-Alwani, who had connection with the 9/11 conspiracy.

12. I had no knowledge, at that time, nor do I today, of an individual by the name Taha Bdewi Hamid Al-Alwani who was from Fallujah, Iraq, and who, I understand from a communication from defense counsel, as well as public source information, was the mayor of that city.

13. The first time I heard from such person was by way of a communication to my co-counsel, Jerry S. Goldman, Esquire, forwarded by Taha Al'Alwani's counsel, in October 2004.

14. In that communication, Dr. Al'Alwani's counsel presumed to know who I intended to sue. I had never spoken to counsel advising her or him that I intended to sue the mayor of Fallujah. They are incorrect in their assumption.

15. I have no knowledge linking Taha Bdewi Hamid Al-Alwani to broad conspiracy as alleged in the complaint, as well as the complaints in the two other companion *O'Neill* cases, *Estate of John P. O'Neill, Sr., et al., v.*

*Kingdom of Saudi Arabia, et al.*, 04 CV 1922 (RCC) and *Estate of John P. O'Neill, Sr., et al., v. Al Baraka Banking and Development Corp., et al.*, 04 CV 1923 (RCC).

16. In fact, based upon my review of open-source, public media coverage, it appears as if Taha Bdewi Hamid Al-Alwani became mayor only subsequent to the United States incursion in Iraq and was cooperating with the United States military in that country. See, *Aftereffect: Violence; G.I.'s Kill 2 More Protesters in Angry Iraqi City*, New York Times, Section A, Column 2, page 1 (May 1, 2003) ("Today, the city's mayor, Taha Bedaiwi al-Alwani, who was chosen by local religious and tribal leaders *after* the end of Mr. Hussein's rule, met with soldiers here to discuss the problems.")

17. The person who was served in the instant case by a process server at Safa Street, in Virginia was the person who I intended to sue in the case.

The RICO Statement.

18. It is my understanding that, by way of an order signed on or about December 9, 2003 the MDL panel ordered the transfer of the instant case from the District of Columbia to the Southern District of New York, which is listed on the docket on December 10, and entered in January 8, 2004.

19. While the case was pending, I was subject to the Individual Rules of the Judge then assigned to the case, in the District of Columbia.

20. It is my further understanding, that the docket reflects that the case was finally transferred into the Southern District of New York on March 11, 2004.

4

21. It is my further understanding, that at the time that the case was transferred in, all matters were stayed in the case, pending the discussions relative to and the entry of a Case Management Order, which was filed on June 16, 2004.

_____
Joshua M. Ambush