**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*          <u>Federal Insurance Co. v. al Qaida</u>
                                                      03 CV 06978 (RCC)


**THE FEDERAL PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE
RENEWED MOTION TO DISMISS FILED BY SAAR NETWORK DEFENDANTS
AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE
EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT,
MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS,
INC., SAFA TRUST, SANA-BELL, INC., STERLING CHARITABLE GIFT FUND,
STERLING MANAGEMENT GROUP, INC., YORK FOUNDATION,
AHMED TOTONJI AND MOHAMMED JAGHLIT**

The SAAR Network Defendants have filed a renewed motion to dismiss that must be stricken or dismissed as untimely.  They were required to complete jurisdictional discovery in order to refile this motion, and they have failed to do so.  In the alternative, should their motion be evaluated on the merits it must be denied.  Defendants have again misconstrued the requirements of notice pleading, and cannot demand more of Plaintiffs than do the Federal Rules of Civil Procedure.  For the reasons which follow, the SAAR Network Defendants' renewed motion must be denied, and this case return to the merits discovery which has already commenced.

## I.      FACTUAL BACKGROUND

The particularized factual allegations pertaining to these defendants are well-known to this Court, and need not be recited in detail here again.[1]  Defendants are a group of Muslim charities, think tanks and related companies with common addresses in Northern Virginia commonly called the "SAAR Network."  The Network's name is derived from the initials of defendant Suleiman Abdul Aziz al Rajhi, who was involved in establishing and funding many of the constituent organizations.  Defendants are linked by overlapping boards of directors, shared offices and the circular movement of money, according to tax forms and federal investigators.  They were established, and have in fact been used, to generate and surreptitiously transfer funds to terrorist organizations, including al Qaida.

On March 20 and 21, 2002, federal authorities raided the offices of the SAAR Network entities, the vast majority of which were located at a single address in Herndon, Virginia, as well as the residences of several prominent SAAR Network officials, pursuant to a search warrant

---

[1] The detailed allegations against the SAAR Network defendants are set forth in the Federal First Amended Complaint, ¶¶222-232, the Federal RICO Statement Applicable to the SAAR Network at Exhibit A, the Federal RICO Statement Applicable to the SAAR Network Executives at Exhibit A, the Federal RICO Statement Applicable to Ahmad Totonji and Mohammed Jaghlit at Exhibit A, and the Federal RICO Statement Applicable to Mar-Jac Poultry at Exhibit A.  In addition, the Federal Plaintiffs incorporate by reference the factual summary set forth in their Memorandum of Law in Opposition to the SAAR Network Defendants' Original Motion to Dismiss, which was previously denied by the Court.

issued by the United States District Court for the Eastern District of Virginia.  The ongoing

investigation of the SAAR network entities, which prompted the March 2002 searches, has

revealed that SAAR entities' funds have been transferred to terrorists, including Youssef Nada

and Ahmed Idris Nasreddin, both of whom have been designated under Executive Order 13224

based on their material support and sponsorship of al-Qaida.  In particular, the SAAR Defendants

transferred funds through Bank al-Takwa and Akida Bank Private Ltd., two Bahamas based

banks controlled by Nada and Nasreddin.  Both of those banks also have been designated by the

U.S. government pursuant to Executive Order 13224, based on their involvement in financing

radical groups throughout the world, including Hamas and al Qaida, both before and after the

September 11th attack.  As of late September 2001, al Qaida continued to receive financial

assistance from Nada, through entities he controlled.  As this simple summary of the allegations

demonstrates, Plaintiffs have alleged that the SAAR Defendants knowingly participated in al

Qaida's conspiracy to attack America.

## II.     DEFENDANTS HAVE NO RIGHT TO FILE A RENEWED MOTION TO DISMISS

First and foremost, as to most of the SAAR Defendants, the renewed motion to dismiss

must be stricken entirely.[2]  In its Order of January 18, 2005, this Court denied without prejudice

the SAAR Network Defendants' motion to dismiss the <u>Federal</u> complaint[3], stating that "It may

be renewed upon completion of personal jurisdiction discovery."  <u>In re Terrorist Attacks of

September 11, 2001</u>,  349 F. Supp. 2d 765, 837 (S.D.N.Y. 2005).

Defendants have not completed the jurisdictional discovery specifically contemplated by

the Court's January 18 Order.  Via letter dated May 11, 2005, the SAAR Defendants announced

---

[2] Concurrently with the filing of this Memorandum of Law, Plaintiffs will be filing a Motion to Strike the Renewed Motion to Dismiss.  The arguments raised in the Motion to Strike are incorporated herein by reference.

[3] The January 18 Order did not apply to defendants Totnji and Jaghlit.  The arguments presented in this section apply only to the remaining moving SAAR Defendants.

that they were withdrawing their personal jurisdiction defense, and did not intend to respond to

the discovery served by Plaintiffs.[4]  *See* Exhibit A, Steven K. Barentzen letter of May 11, 2005.

Plaintiffs responded by explaining (as they do again today) that the Court's Order required the

SAAR Defendants to complete this discovery before renewing their 12(b)(6) Motion, and

advising them that the jurisdictional discovery should be treated as merits discovery.  *See* Exhibit

B, Sean P. Carter letter of July 11, 2005.

Because the discovery specifically contemplated by the Court's January 18 Order has not

been completed, the SAAR Defendants cannot renew their motion.  Any plain reading of this

Court's Order makes it clear that any "right to renew" was conditional at best: *if* Defendants

wanted to renew their motion, which had been denied, *then* they had to participate in

jurisdictional discovery.[5]  Instead, what has become evident is some concerted gamesmanship –

the SAAR Defendants first attempted to stall the lawsuit against them by raising apparently

baseless jurisdictional arguments – then, when discovery is ordered to substantiate such claims,

withdrew them in a desperate effort to avoid potentially embarrassing revelations regarding their

conduct and an unfavorable ruling.  These Defendants cannot re-open the Motion to Dismiss

door without the key which this Court provided them on January 18.  As such, the door must

remain locked, and this Court ought not consider the renewed motion.

## III.    EVEN IF PROPER, THE MOTION TO DISMISS MUST BE DENIED

Should this Court nevertheless choose to resolve the 12(b)(6) Motion on the merits, it

must deny the Motion.  Defendants have fundamentally misconstrued the pleading requirements

---

[4] Under the Federal Rules of Civil Procedure, the SAAR Defendants were required to present any objections to Plaintiffs' discovery requests, including any objection predicated upon the withdrawal of their personal jurisdiction defense, through a formal response to that discovery.  To date the SAAR Defendants have provided no response to Plaintiffs' discovery, and all objections have consequently been waived.

[5] The relevant record before the Court has not changed since the Court denied the SAAR Networks' 12(b)(6) Motion on January 18, 2005, and there consequently is no rational basis to depart from that ruling.  Indeed, the SAAR Defendants' "renewed" Motion to Dismiss is more accurately characterized as an untimely Motion for Reconsideration.  Were the Court to allow defendants to renew motions to dismiss at will, despite the absence of any change in the record (as the SAAR Defendants seek to do here), the briefing in this case would run on endlessly.

of the Federal Rules of Civil Procedure, and cannot through this Motion seek to convert basic

notice pleading requirements into a demand that plaintiffs provide detailed factual allegations

and make their full case at this early stage.

      A.      <u>Notice Pleading</u>

Defendants have fundamentally misapprehended what notice pleading requires.

Defendants have moved to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for

failure to state a claim upon which relief could be granted.  Such a motion must be denied unless

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Wynder v.

McMahon</u>, 360 F.3d 73, 78 n.8 (2d Cir. 2004); <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 184 (2d Cir.

2002) (*per curiam*).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true

the facts alleged in the Complaints and RICO Statements and draw all reasonable inferences in

Plaintiffs' favor.  <u>Wynder</u>, 360 F.3d at 77; <u>Phelps</u>, 308 F.3d at 184.  Plaintiffs are not required to

prove their case at the pleading stage.  Indeed, the Second Circuit has cautioned that "[t]he

pleading of evidence should be avoided."  <u>Woodford v. Community Action Agency</u>, 239 F.3d

517 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to

prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."

<u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d

1345 (2d Cir. 1998).

      B.      <u>Fed. R. Civ. P. 8(a)(2)</u>

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P.

8(a)(2), which is extremely permissive.  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 512-13 (2002).

Indeed, Rule 8(a)(2) provides that a complaint need only include only "a short and plain

statement of the claim showing that the pleader is entitled to relief" and that such a statement

simply shall "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."  Id. (quoting Conley, 355 U.S. at 47 (1957)); Wynder, 360 F.3d at 77; see also

Sparrow v. United Airlines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after

remand, 2001 WL 936257 (D.C. Cir. July 12, 2001)  (allegation "I was turned down for a job

because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the

absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed.

R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than

those proscribed under Rule 8(a).  *See, e.g.,* Leatherman v. Tarrant County, 507 U.S. 163, 168-69

(1993).   In keeping with this concept, Rule 9 expressly provides that "malice, intent, knowledge

and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

>      C.      Knowledge And Intent May Be Pleaded Generally

 The SAAR Defendants protest that plaintiffs First Amended Complaint and RICO

Statements fail to present detailed facts to substantiate the claims that the SAAR Defendants

acted knowingly.  However, in its decisions in the post Swierkiewicz era, the Second Circuit has

consistently and uniformly held that the notice pleading standards do not require a plaintiff to

plead particularized facts regarding a defendant's state of mind.  For example, in Phelps, the

Second Circuit reversed a district court ruling which had dismissed a complaint for failure to

plead specific facts in support of allegations of the defendant's knowledge, holding instead that

such a heightened pleading standard was "unwarranted" under Fed. R. Civ. P. 8(a).  Phelps, 308

F.3d at 186.  "A plaintiff's allegation of knowledge is itself a particularized factual allegation,

which he will have the opportunity to demonstrate at the appropriate time 'in the usual ways'."

Id. at 187 n. 6 (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

As the Phelps Court further instructed: "However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond Fed. R. Civ. P. 8(a) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference." Phelps, at 186-87.  Instead, the Court held, the weight of the evidence can only be assessed at the time of summary judgment proceedings.  Phelps at 187.

This view is shared by the U.S. Court of Appeals for the District of Columbia Circuit, which has sharply disagreed with protests that a plaintiff's allegations were too "conclusory".  In Warren v. District of Columbia, 353 F.3d 36 (D.C. Cir. 2004), the D.C. Circuit employed nearly identical reasoning to that of Phelps in reversing the dismissal of a complaint in which the plaintiff had failed to plead "facts" establishing knowledge.  Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held:  "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of law as true, conclusions of fact are another matter."  Id. at 39 (citing 5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990)).

More recently, in Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied.  In Pelman, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries."  Id. at 511.  The Second Circuit rejected this approach.  It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required

to satisfy the limited pleading requirements of Rule 8(a), Fed. R. Civ. P." Id. at 512.  Quoting

the unanimous Supreme Court ruling in Swierkiewicz, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on
> liberal discovery rules and summary judgment motions to define
> disputed facts and issues and to dispose of unmeritorious claims.
> The provisions for discovery are so flexible and the provisions for
> pretrial procedure and summary judgment so effective, that
> attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court.

Pelman, 396 F.3d at 512 (*quoting* Swierkiewicz, 534 U.S. at 512-13).

Similarly, in Linde, et al v. Arab Bank, PLC, 2005 U.S. Dist. LEXIS 18864 (E.D. N.Y.

Sept. 2, 2005), the United States District Court for the Eastern District of New York rejected the

defendant's invitation to impose a heightened pleading requirement in a case presenting claims

nearly identical to those at issue here.  In Linde, the plaintiffs brought claims against Arab Bank

for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in

Israel, based on the bank's sponsorship and support of those terrorist organizations. Id. at *11-

23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law

claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent." Id. at

*42.  The Court rejected this argument, reasoning that Arab Bank was attempting to impose a

heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not
> alleged sufficient facts to establish an evidentiary basis for their
> allegations of knowledge and intent, defendant simply
> misapprehends the pleading standard.  It is not entitled to dismissal
> based on the argument that plaintiff's must plead more than the
> requisite knowledge and intent, either as to their substantive claims
> or their claims of aiding and abetting a conspiracy.

Id.  The Linde Court likewise rejected the defendant's contention that plaintiffs were required to

allege that senior officials of the bank were aware of the misconduct underlying plaintiffs'

claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required

7

by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and

intent of Arab Bank and not spell out their proof."  Id. at *50.

        D.        There Is No Heightened Pleading Standard for Conspiracy Allegations

        That Plaintiffs' claims are predicated on conspiracy theories does not alter the well

established standards discussed above.  Indeed, subsequent to this Court's ruling of September

21, the Second Circuit affirmed that no heightened pleading requirement was permitted for

conspiracy claims.  In Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. Oct. 3, 2005), the

Second Circuit overturned a district court's dismissal of a class action complaint alleging

unlawful conspiracy in the antitrust context, holding instead that  Fed. R. Civ. P. 8(a) required a

short and plain statement of the claim, nothing more:

> If a pleaded conspiracy is implausible on the basis of the facts as
> pleaded -- if the allegations amount to no more than "unlikely
> speculations" -- the complaint will be dismissed. DM Research,
> Inc. v. College of American Pathologists, 170 F.3d 53, 56 (1st Cir.
> 1999).  But short of the extremes of "bare bones" and
> "implausibility," a complaint in an antitrust case need only contain
> the "short and plain statement of the claim showing that the
> pleader is entitled to relief" that Rule 8(a) requires.

Twombly, 425 F.3d at 111.  Indeed, the Court held, the emphasis should be on notice

pleading, and not a preemptive display of all the possible evidence:

> The complaint should not "be burdened with possibly hundreds of
> specific instances" of the antitrust violations alleged. Nagler v.
> Admiral Corp., 248 F.2d 319, 326 (2d Cir. 1957). "Such pleading
> of the evidence is surely not required and is on the whole
> undesirable." Id. "It is a matter for the discovery process, not for
> allegations of detail in the complaint." Id.

        Finally, the Second Circuit addressed concerns regarding whether Defendants had an

undue burden under this standard of facing potentially meritless claims:

> We are not unsympathetic to these concerns, but we find the
> arguments based on them ultimately unconvincing. **At the
> pleading stage, we are concerned only with whether the**

8

> **defendants have "fair notice" of the claim**, and the conspiracy
> that is alleged as part of the claim, against them -- that is, enough
> to "enable [the defendants] to[, inter alia,] answer and prepare for
> trial," <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) -- not
> with whether the conspiracy can be established at trial.

<u>Twombly</u> at 116 (emphasis added).

Within this framework, the SAAR Defendants cannot credibly claim that they lack fair

notice of the allegations being lodged against them.  They clearly understand the nature of the

claims against them, regarding their funneling of money through various mechanisms to reach Al

Qaida, and each clearly knows what has been alleged, and have even attempted to suggest factual

evidence at this early stage rebutting Plaintiffs' claims.[6]  Indeed, they refer in their motion to the

$1.1 million apparently funneled from Mar-Jac Poultry through African Muslim Agency to York

International – all located at the same Herndon address – though they dispute the evidentiary

significance.[7]  Motion to Dismiss at 16.  However, such evidentiary disputes are not properly

before the Court at this time.  They are the domain of summary judgment.  The complaint

provides fair notice of the nature of this dispute, and that is all the Federal Rules require.

---

[6] The existence of al Qaida and that terrorist organization's widespread use of ostensible charities to raise and
launder funds are known *in fact*.  <u>See</u> <u>Staff Monograph of the National Commission on Terrorist Attacks Upon the
United States on Terrorist Financing</u> at p. 4 (al Qaeda was funded, to the tune of approximately $30 million per year,
by diversions of money from Islamic charities and the use of well-placed financial facilitators who gathered money
from witting and unwitting donors.")  Thus, it is absurd to argue that the conspiracy alleged is implausible or
speculative.  Accordingly, in keeping with the decision of the <u>Twombly</u> Court, the SAAR Defendants' Motion must
be denied.  <u>Twombly</u>, 425 F.3d at 111.

[7] In particular, the claims of Defendants Ahmed Totonji and Mohammed Jaghlit as to a lack of fair notice (Mot. to
Dismiss at 19) must be disregarded.  The RICO Statement regarding both men makes the following allegations:

> In his capacity as a director of the International Institute for Islamic Thought and
> the Safa Trust, Ahmad Totonji conspired to and did generate and surreptitiously
> transfer funds to terrorist organizations, including al Qaida. . . .

> In his capacity as a director of the Heritage Education Trust and the SAAR
> Foundation, Mohammed Jaghlit conspired to and did generate and
> surreptitiously transfer funds to terrorist organizations, including al Qaida. . . .

This constitutes fair notice under Fed. R. Civ. P. 8(a) and all the applicable precedents; in the absence of discovery,
plaintiffs cannot be expected to possess more detailed knowledge of the workings of such a complicated money-
shifting scheme.

9

Consistent with the Federal Rules of Civil Procedure and holdings of the <u>Phelps</u>, <u>Linde</u>, <u>Twombly</u> and other courts, Plaintiffs have met their pleading burden relative to the scienter element of their conspiracy and aiding and abetting claims, and therefore adequately alleged the Defendants' involvement in the tort giving rise to their injuries. At this early stage of the litigation, Plaintiffs' consistent averments that Defendants acted "knowingly" are sufficient under the Federal Rules of Civil Procedure to allow these claims to proceed.

## IV.    CONCLUSION

The SAAR Network Defendants' Motion to Dismiss ought not even be considered by this Court. They have failed to comply with this Court's January 18 Order by failing to participate in minimal jurisdictional discovery. Should this Court nevertheless entertain this Motion, it must be denied. Recent developments in Second Circuit law regarding pleading standards make clear that Defendants have misapprehended what the Federal Rules require. Defendants are on notice as to the allegations against them, and they deserve to be the subject of merits discovery and further litigation. The Motion should be stricken or denied. Finally, in the event the Court finds the pleadings against the SAAR Defendants deficient in any respect, Plaintiffs should be afforded leave to amend the First Amended Complaint to cure such defects.

COZEN O'CONNOR

Attorneys for Plaintiffs

BY:   _____

STEPHEN A. COZEN, ESQUIRE
ELLIOTT R. FELDMAN, ESQUIRE
SEAN P. CARTER, ESQUIRE
ADAM C. BONIN, ESQUIRE
1900 Market Street
Philadelphia, PA 19103

(215) 665-2000