UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

This document relates to:
*Barrera v. Al Qaeda Islamic Army*, No. 03-CV-7036
*Burnett, et al. v. Al Baraka Invest. & Develop. Corp., et al.,* No. 03-CV-5738
*Burnett, et al. v. Al Baraka Invest. & Develop. Corp., et al.,* No. 03-CV-9849
*Continental Casualty Co. et al, v. Al Qaeda, et al.*, No. 04-CV-5970
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*Federal Insurance Co., et al. v. Al Qaeda, et al.,* No. 03-CV-6978
*Kathleen Ashton, et al v. Al Qaeda Islamic Army, et al.*, No. 02-CV-6977
*New York Marine & General Insurance Co. v. Al Qaeda, et al.*, No. 04-CV-6105
*Salvo v. Al Qaeda Islamic Army*, No 03-CV-5071
*Tremsky v. Bin Laden, et al.*, No. 02-CV-7300
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280


**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO
THE MOTION TO DISMISS FILED BY ARADI, INC.**

December 19, 2005

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ....................................................................................... 2

III. APPLICABLE LAW .................................................................................................... 4

    A. A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint ........................................................................... 4

    B. There Is No Heightened Pleading Standard For Conspiracy Allegations ............... 8

IV. ARGUMENT .............................................................................................................. 10

    A. Plaintiffs Properly State RICO Claims Against Aradi .......................................... 10

    B. Aradi Is Not Entitled To Dismissal Of Plaintiffs' Tort Claims ............................ 13

        1. Plaintiffs' Negligence Claims Are Cognizable ......................................... 13

        2. Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, and Battery Claims Are Not Barred By The Statute of Limitations ......... 13

        3. Plaintiffs' Claims For Punitive Damages Should Not Be Dismissed ....... 13

V. CONCLUSION ........................................................................................................... 14

## TABLE OF AUTHORITIES

Page

**CASES**

*Baisch*,
    346 F.3d at 376 .................................................................................................................12

*Boim v. Quranic Literacy Institute*,
    291 F.3d 1000 (7th Cir. 2002) ..............................................................................................1

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345
    (2d Cir. 1998)........................................................................................................................5

*Conley v. Gibson*,
    355 U.S. 41 (1957)...............................................................................................................4

*DM Research, Inc. v. College of American Pathologists*,
    170 F.3d 53 (1st Cir. 1999)..................................................................................................8

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991).................................................................................... 10-11

*De Falco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)...............................................................................................12

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003)................................................................................11

*First Capital Asset Management v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004), <u>citing</u> *Baisch v. Gallina*, 346 F.3d 366
    (2d Cir. 2003)......................................................................................................................12

*Friedman v. Hartmann*,
    1994 U.S. Dist. LEXIS 9727 (S.D.N.Y. July 15, 1994) ....................................................12

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir. 1980)................................................................................................4

*Leatherman v. Tarrant County*,
    507 U.S. 163 (1993).............................................................................................................5

*Linde, et al. v. Arab Bank, PLC*,
    2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005)......................................7, 8

*Morin v. Trupin*,
    832 F. Supp. 93 (S.D.N.Y. 1993)..................................................................................12

*Nagler v. Admiral Corp.*,
    248 F.2d 319 (2d Cir. 1957)..........................................................................................9

*Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)..........................................................................................7

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002)................................................................................4, 5, 6

*Rachman Bag Co. v. Liberty Mutual Insurance Co.*,
    46 F.3d 230 (2d Cir. 1995)............................................................................................1

*Simmons v. Abruzzo*,
    49 F.3d 83 (2d Cir. 1995) .............................................................................................9

*Sparrow v. United Airlines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000), appeal dismissed after remand,
    2001 WL 936257 (D.C. Cir. July 12, 2001) .................................................................5

*St. Paul Mercury Insurance Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ......................................................................................11

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002).......................................................................................................5

*Twombly v. Bell Atlantic Corp.*,
    425 F.3d 99 (2d Cir. Oct. 3, 2005)............................................................................8, 9

*United States v. Allen*,
    155 F.3d 35 (2d Cir. 1998)..........................................................................................12

*United States v. Ruggiero*,
    754 F.2d 927 (11th Cir. 1985) ....................................................................................10

*United States v. Russotti*,
    717 F.2d 27 (2d Cir. 1983)..........................................................................................10

*Warren v. District of Columbia*,
    353 F.3d 36 (D.C. Cir. 2004) ...................................................................................6, 7

*Whyte v. Contemporary Guidance Servs.*,
    03 CV 5544  2004 U.S. Dist. LEXIS 12447 (S.D. N.Y. July 2, 2004)................................1

*Woodford v. Community Action Agency*,
    239 F.3d 517 (2d Cir. 2001)......................................................................................4

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)....................................................................................4, 5

### RULES AND STATUTES

18 U.S.C. § 1962(a) .............................................................................................................10

Fed. R. Civ. P. 8(a)(2) ..................................................................................................5, 6, 8

Fed. R. Civ. P. 9(b) ...............................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................4, 5

Fed. R. Civ. P. 15(a) .............................................................................................................1

Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 .........................................10

### MISCELLANEOUS

*Staff Monograph of the National Commission on Terrorist Attacks Upon the United
    States on Terrorist Financing* at p. 4 ...................................................................9

I.     INTRODUCTION

Plaintiffs allege that Aradi, Inc. ("Aradi") knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 Attack was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Plaintiffs' allegations state valid claims against Aradi under the Racketeering Influenced and Corrupt Organizations Act ("RICO") and several state common law tort theories.  Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated such unlawful activities through financial or other means.  *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002).  "The only way to imperil the flow of money and discourage the financing of terrorist acts is to impose liability on those who knowingly and intentionally supply the funds to the persons who commit the violent acts." *Id.* (citing S. Rep. 102-342 at 22) (by imposing "liability at any point along the causal chain of terrorism, it would interrupt, or at least imperil, the flow of money" for attacks on America).

Defendant Aradi has filed a motion to dismiss which primarily questions the factual sufficiency of the pleadings against it.  Because Aradi misapprehends the requirements of notice pleading, and cannot demand more of Plaintiffs than do the Federal Rules of Civil Procedure, that portion of the motion must be denied.  Moreover, Aradi's challenges to the specific causes of action are also without merit.   Accordingly, Aradi's motion to dismiss must be denied in its entirety.  In the event, however, that this Court finds the Plaintiffs' Complaints lacking in detail, leave to amend should be granted.  *See* Fed. R. Civ. P. 15(a); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995); *Whyte v. Contemporary Guidance Servs.*, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. N.Y. July 2, 2004).

## II.     FACTUAL BACKGROUND

Aradi, a Delaware corporation, is part of the terror-financing SAAR Network of entities which has aided and abetted, conspired with and provided material support and resources to al Qaida.

The SAAR Network is a group of Muslim charities, think tanks and related companies, including Aradi, the vast majority of which shared a common address at 555 Grove Street, Herndon, VA.  The Network's name is derived from the initials of defendant Suleiman Abdul Aziz al Rajhi, who was involved in establishing and funding many of the organizations.  The entities comprising the SAAR Network are linked by overlapping boards of directors, shared offices and the circular movement of money, according to tax forms and federal investigators.  Indeed, major Aradi officials are also officers with multiple other entities in the SAAR Network.  For example, Aradi's corporate officers include defendants Abdullah Sulaiman al Rajhi (President), Hisham Al Talib (Vice President/Treasurer) and Cherif Sedky (Secretary).  Hisham Al-Talib was also an officer of African Muslim Agency, Grove Corporate, IIIT, Mar-Jac Investments, Inc., Mar-Jac Poultry, Mena Corporation, Reston Investments, Inc., SAAR Foundation, SAAR International, and Safa Trust.  Cherif Sedky was also an officer of Grove Corporate and SAAR Foundation.

On March 20 and 21, 2002, federal authorities raided the offices of the SAAR Network entities, the vast majority of which were located at a single address in Herndon, Virginia, as well as the residences of several prominent SAAR Network officials, pursuant to a search warrant issued by the United States District Court for the Eastern District of Virginia.  The ongoing investigation of the SAAR network entities, which prompted the March 2002 searches, has revealed that SAAR entities' funds have been transferred to Youssef Nada and Ahmed Idris Nasreddin, both of whom have been designated under Executive Order 13224 based on their material support and sponsorship of al Qaida.  The funds were transferred through Bank al-

Takwa and Akida Bank Private Ltd., two Bahamas based banks controlled by Nada and Nasreddin. Both of those banks have been designated by the U.S. government pursuant to Executive Order 13224, based on their involvement in financing radical groups throughout the world, including Hamas and al Qaida, both before and after the September 11th attack. As of late September 2001, al Qaida continued to receive financial assistance from Nada, through entities he controlled.

     Defendant Aradi is related to a similarly named corporation, Aradi 1212 New York Avenue Inc. ("Aradi 1212"), which was incorporated on September 25, 1990 in Washington D.C. Cherif Sedky was also listed as the Registered Agent. Again, Abdullah Sulaiman Al Rajhi was listed as a director of Aradi 1212 and listed his address as 11919 Safa Court, Herndon, Virginia. Another director of Aradi 1212 was Fahad Sulayman Abdul Aziz who listed his address as P.O. Box 28, Riyadh, Saudi Arabia, which was the address of Al Rajhi Banking and Investment Corporation. As explained, Aradi's President, Abdullah Suleiman Al-Rajhi, is General Manager of the Al-Rajhi Banking & Investment Corp., and member of its executive committee, and is inextricably tied to the actions of Al Rajhi Banking and Investment Corporation. Through Abdullah Suleiman Al-Rajhi and Fahad Sulayman Abdul Aziz, the SAAR Network had access to a bank and banking officials for purposes of producing checks purportedly for SAAR's charitable purposes but which actually went towards the benefit of al Qaida. These connections between organizations comprising the SAAR Network and Al Rajhi Banking and Investment Corporation provided a financial conduit for the movement of money to the terrorist groups these businesses, individuals, and charities supported. As a result, Aradi, Inc. knowingly, for a period of many years, provided critical financial and logistical support to al Qaida.

**III.    APPLICABLE LAW**

Aradi has fundamentally misconstrued the pleading requirements of the Federal Rules of Civil Procedure by protesting that "plaintiffs' allegations are vague, conclusory, and legally insufficient." Aradi cannot now seek to convert basic notice pleading requirements into a demand that plaintiffs provide detailed factual allegations and make their full case at this early stage. As the United States Court of Appeals for the Second Circuit has made clear in several recent decisions, basic notice pleading is all this is required.

**A.    A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint**

Aradi moves to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted. Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaints and RICO Statements and draw all reasonable inferences in Plaintiffs' favor. *Wynder*, 360 F.3d at 78; *Phelps*, 308 F.3d at 184. Plaintiffs are not required to prove their case at the pleading stage. Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001). The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."

4

*Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002). Indeed, Rule 8(a)(2) provides that a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id*. at 512 (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after remand, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.). Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69(1993).

Two recent Second Circuit cases underscore and re-affirm these principles. In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment. 308 F.3d at 182. Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering. *Id*. The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference. The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants'

5

knowledge. *Id*. at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference." *Id*. at 186-87.  The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187 (quoting *Conley*, 355 U.S. at 45-46).

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id*. at 185 (citations omitted).

This view is shared by the U.S. Court of Appeals for the District of Columbia Circuit, which has sharply disagreed with protests that a plaintiff's allegations were too "conclusory".  In *Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004), the D.C. Circuit employed nearly identical reasoning to that of *Phelps* in reversing the dismissal of a complaint in which the plaintiff had failed to plead "facts" establishing knowledge.  Applying the "short and plain statement of the claim" standard from Rule 8(a), the Court held:  "It is of no moment that [plaintiff's] allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept

6

conclusions of law as true, conclusions of fact are another matter." *Id*. at 39 (*citing* 5 Wright & Miller Federal Practice & Procedure § 1218 (2d ed. 1990)).

In *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Id*. at 511. The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a)." *Id*. at 512. Quoting the unanimous Supreme Court ruling in *Swierkiewiez*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

More recently, in *Linde, et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's invitation to impose a heightened pleading requirement in a case presenting claims nearly identical to those at issue here. In *Linde*, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations. *Id.* at *11-23. Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged

7

knowledge and intent." *Id.* at *42. The Court rejected this argument, reasoning that Arab Bank was attempting to impose a heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not alleged sufficient facts to establish an evidentiary basis for their allegations of knowledge and intent, defendant simply misapprehends the pleading standard. It is not entitled to dismissal based on the argument that plaintiff's must plead more than the requisite knowledge and intent, either as to their substantive claims or their claims of aiding and abetting a conspiracy.

*Id.* The *Linde* court likewise rejected the defendant's contention that plaintiffs were required to allege that senior officials of the bank were aware of the misconduct underlying plaintiffs' claims. "Once again, defendant attempts to impose a standard of pleading beyond that required by the rules. It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof." *Id.* at *50.

### B. There Is No Heightened Pleading Standard For Conspiracy Allegations

The above is equally true with regard to conspiracy claims, which form the basis of much of the claims against Aradi. Subsequent to this Court's ruling of September 21, 2005, the Second Circuit affirmed that no heightened pleading requirement was permitted for conspiracy claims. In *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. Oct. 3, 2005), the Second Circuit overturned a district court's dismissal of a class action complaint alleging unlawful conspiracy in the antitrust context, holding instead that Fed. R. Civ. P. 8(a) required a short and plain statement of the claim, nothing more:

> If a pleaded conspiracy is implausible on the basis of the facts as pleaded -- if the allegations amount to no more than "unlikely speculations" -- the complaint will be dismissed. *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). But short of the extremes of "bare bones" and "implausibility," a complaint in an antitrust case need only contain the "short and plain statement of the claim showing that the pleader is entitled to relief" that Rule 8(a) requires.

*Twombly*, 425 F.3d at 111. Indeed, the Court held, the emphasis should be on notice pleading, and not a preemptive display of all the possible evidence:

> The complaint should not "be burdened with possibly hundreds of specific instances" of the antitrust violations alleged. *Nagler v. Admiral Corp.*, 248 F.2d 319, 326 (2d Cir. 1957). "Such pleading of the evidence is surely not required and is on the whole undesirable." *Id.* "It is a matter for the discovery process, not for allegations of detail in the complaint." *Id.*

Finally, the Second Circuit addressed concerns regarding whether Defendants had an undue burden under this standard of facing potentially meritless claims:

> We are not unsympathetic to these concerns, but we find the arguments based on them ultimately unconvincing. **At the pleading stage, we are concerned only with whether the defendants have "fair notice" of the claim**, and the conspiracy that is alleged as part of the claim, against them -- that is, enough to "enable [the defendants] to[, inter alia,] answer and prepare for trial," *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) -- not with whether the conspiracy can be established at trial.

*Twombley* at 116 (emphasis added).

Nowhere does Aradi claim not to have fair notice of the allegations.[1] Aradi clearly understands the nature of the claims against it, including the allegations that Aradi is part of a large and complex group of interrelated organizations, businesses, and Muslim charities known as the SAAR Network, which provided critical financial and logistical support to al Qaida for a period of many years. The Complaint provides fair notice of the nature of this dispute, and that is all the Federal Rules require. Consistent with the Federal Rules of Civil Procedure and the holdings of *Phelps*, *Pelman*, *Linde*, *Twombly* and other courts, Plaintiffs have met their pleading burden relative to the scienter element of their conspiracy and aiding and abetting claims, and therefore have adequately alleged the defendant's involvement in the tort giving rise to their

---

[1] The existence of al Qaida and that terrorist organization's widespread use of ostensible charities to raise and launder funds are known *in fact*. *See Staff Monograph of the National Commission on Terrorist Attacks Upon the United States on Terrorist Financing* at p. 4 (al Qaeda was funded, to the tune of approximately $30 million per year, by diversions of money from Islamic charities and the use of well-placed financial facilitators who gathered money from witting and unwitting donors.") Thus, it is absurd to argue that the conspiracy alleged is implausible or speculative. Accordingly, in keeping with the decision of the *Twombly* Court, Aradi's Motion must be denied. *Twombly*, 425 F.3d at 111.

injuries. At this early stage of the litigation, Plaintiffs' consistent averments that Aradi acted "knowingly" are sufficient under the Federal Rules of Civil Procedure to allow these claims to proceed. Because the complaints provide fair notice, these are properly matters to be resolved after discovery is complete, and this is no grounds for dismissal here.

## IV.  ARGUMENT

Beyond the general fact-pleading issues addressed in the previous section, Aradi has also raised particularized concerns regarding several causes of action. Aradi's specific challenges also lack merit, and are dealt with herein.[2]

### A.  Plaintiffs Properly State RICO Claims Against Aradi

Aradi has argued that plaintiffs must somehow demonstrate "investment" of racketeering income to state a claim under 18 U.S.C. § 1962(a). This misconstrues what the law requires. To state a claim under § 1962(a), Plaintiffs must allege that "injury flowed from the defendant's use or investment of racketeering income." *Danielsen v. Burnside-OttAviation Training Center, Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991). Aradi contends that Plaintiffs have not met their pleading threshold under § 1962(a). This, however, fails to take into account the nature of the illegal RICO enterprise that Plaintiffs have alleged in their various RICO statements.

Plaintiffs basically allege two separate, but linked, patterns of racketeering activity involving Aradi. *See*, *e.g.*, *United States v. Ruggiero*, 754 F.2d 927, 931-32 (1lth Cir. 1985) (existence of separate patterns of racketeering activity); *United States v. Russotti*, 717 F.2d 27 (2d Cir. 1983) (same). The first such pattern operated primarily through wire fraud, mail fraud, money laundering, and the like and was a scheme to raise money, in part through out-and-out fraud, to facilitate and support worldwide terrorist training and operations, including the

---

[2] Plaintiffs do not currently intend to pursue their claims under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, against this defendant. Plaintiffs reserve the right to replead this claim against Aradi should additional information become available in discovery demonstrating it acted "under actual or apparent authority or color of law, of any foreign nation" in connection with its support of al Qaida.

10

operations of al Qaida. The direct victims of the predicate acts forming this pattern of racketeering activity were those who were defrauded into contributing money to what they believed were legitimate charities and organizations, but which in fact were serving as terrorist front organizations.

The second, related, and dependent pattern of racketeering includes the acts of violence and terrorism perpetrated by al Qaida itself, specifically in this case the attacks of September 11, 2001.  Plaintiffs allege that certain Defendants, including Aradi, invested the proceeds from the first pattern of racketeering in the al Qaida enterprise. Plaintiffs allege that their injuries were caused by this investment, as al Qaida was only able to commit the September 11th attack with sufficient financial backing.  Plaintiffs thus do not allege merely an injury flowing from the original predicate acts, such as mail fraud, but also from an injury that flowed from the knowing investment into the al Qaida terrorism network of the monies illegally raised. For this reason, Plaintiffs' Complaint fully complies with *Danielsen* in pleading that their "injury flowed from the defendant's use or investment of racketeering income." *Danielsen*, 941 F.2d at 1229.  *See also St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 444-45 (5th Cir. 2000) (following *Danielsen* and recognizing a valid claim under § 1962(a) where money was generated from a pattern of racketeering in which the plaintiff was not directly involved, then invested and used in an enterprise whose racketeering subsequently harmed plaintiff). When properly viewed as a whole, the Complaints and RICO Statements thus fulfills the pleading requirements of § 1962(a) against Aradi.

Secondly, Aradi is correct that a plaintiff asserting a civil claim under 1962(c) must allege that the defendant participated in the operation or management of the enterprise. *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003).  But Aradi is wrong about the implications.  Such "discretionary authority" generally has been described as "a

11

relatively low hurdle for plaintiffs to clear" in the Second Circuit. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). Moreover, as a general rule, it is not "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 U.S. Dist. LEXIS 9727, at *4 (S.D.N.Y. July 15, 1994). Through discovery, this allegation will be further substantiated.

Moreover, "[T]he requirements for RICO's conspiracy charges under 1962(d) are less demanding." *Baisch*, 346 F.3d at 376. All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)). "Although parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

Aradi had such intentions and goals. The Plaintiffs have satisfied the pleading standards applicable to their 1962(a), 1962(c), and 1962(d) claims, as set forth above.

### B.      Aradi Is Not Entitled To Dismissal Of Plaintiffs' Tort Claims

#### 1.      Plaintiffs' Negligence Claims Are Cognizable

Aradi argues that it cannot be liable under a theory of negligence because the Plaintiffs do not allege or identify a duty owed by Aradi to the Plaintiffs and that the negligence and negligent infliction of emotional distress claims must therefore be dismissed.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Sami Omar Al-Hussayen.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

#### 2.      Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, and Battery Claims Are Not Barred By The Statute of Limitations

Contrary to Aradi's assertion, the Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Perouz Sedaghaty.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

#### 3.      Plaintiffs' Claims For Punitive Damages Should Not Be Dismissed

Aradi also seeks dismissal of Plaintiffs claim for punitive damages.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Perouz Sedaghaty and in Plaintiffs' Memorandum of Law in Opposition to the Consolidated Motion to Dismiss of the Saudi Red Crescent and Dr. Abdul Rahman Al Swailem.  Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and incorporate by reference, that discussion.

13

## V.  CONCLUSION

Plaintiffs have properly pleaded their case against Aradi, Inc. under the governing Federal Rules of Civil Procedure.  For the reasons stated above, Plaintiffs respectfully request that Aradi Inc.'s Motion to Dismiss be denied in all respects, with prejudice.

Respectfully submitted,

|  |  |
|---|---|
| Dated: December 19, 2005 | COZEN O'CONNOR<br><br>BY: _____<br>Stephen A. Cozen, Esquire<br>Elliott R. Feldman, Esquire<br>Sean P. Carter, Esquire<br>Adam C. Bonin, Esquire<br>J. Scott Tarbutton, Esquire<br>1900 Market Street<br>Philadelphia, PA 19103<br>Tele: (215) 665-2000<br>Fax: (215) 665-2013<br><br>Attorneys for *Federal Insurance* Plaintiffs |
|  | Ronald L. Motley, Esq. (RM-2730)<br>Jodi Westbrook Flowers, Esq.<br>Donald A. Migliori, Esq.<br>Michael Elsner, Esq. (ME-8337)<br>MOTLEY RICE LLC<br>28 Bridgeside Boulevard<br>P.O. Box 1792<br>Mount Pleasant, South Carolina 29465<br>Telephone: (843) 216-9000 |

|  | Paul J. Hanly, Jr., Esq. (PH-5486)<br>Jayne Conroy, Esq. (JC-8611)<br>Andrea Bierstein, Esq. (AB-4618)<br>HANLY CONROY BIERSTEIN &<br>   SHERIDAN, LLP<br>415 Madison Avenue<br>New York, NY 100 17-11 1 1<br>Telephone: (212) 401-7600<br><br>Attorneys for *Burnett*, *EuroBrokers* and *WTC Properties* Plaintiffs |
|---|---|
|  | James P. Kreindler, Esq. (JK7084)<br>Justin T. Green, Esq. (JG0318)<br>Andrew J. Maloney III, Esq. (AM8684)<br>Vincent Ian Parrett, Esq. (VP5092)<br>KREINDLER & KREINDLER LLP<br>100 Park Avenue<br>New York, NY  10017-5590<br>(212) 687-8181<br><br>Attorneys for *Ashton and Barrera* Plaintiffs |
|  | Robert M. Kaplan (RK1428)<br>FERBER FROST CHAN & ESSNER, LLP<br>530 Fifth Avenue, 23rd Floor<br>New York, New York 10036-5101<br>(212) 944-2200<br><br>Attorneys for *Continental* Plaintiffs |
|  | Attorney for the O'Neill Plaintiffs<br>David H. Fromm, Esq. (DH-9334)<br>Frank J. Rubino, Jr., Esq. (FR-6202)<br>BROWN GAVALAS & FROMM LLP<br>355 Lexington Avenue<br>New York, New York 10017<br>(212) 983-8500<br><br>Attorneys for Plaintiff *New York Marine And General Insurance Company* |

PHILA1\2400678\1 117430.000