**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) |
| | |
| | ECF Case |

This document relates to:

*Ashton, et al. v. Al Qaeda Islamic Army, et al.*, No. 02-CV-6977
*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-9849
*Continental Casualty Co. v. Al Qaeda, et al.*, No. 04-CV-5970
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC. AND YORK FOUNDATION'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.     Summary of Factual Allegations as to the Moving Defendants ................................3

          A.    The General Factual Allegations Against Defendants.......................................3

          B.    Specific Factual Allegations Regarding Defendants .........................................4

               1)    The SAAR Network..............................................................................4

               2)    African Muslim Agency ........................................................................8

               3)    Grove Corporate, Inc. ..........................................................................9

               4)    Heritage Education Trust .......................................................................9

               5)    International Institute of Islamic Thought ("IIIT")...............................10

               6)    Mar-Jac Investments .........................................................................11

               7)    Safa Trust ..........................................................................................11

               8)    Mena Corporation, Reston Investments, Inc., Sterling Charitable Gift Fund, Sterling Management, Inc. and York Foundation .......................12

    II.    The Complaint is Sufficient Under Fed. R. Civ. P. 12 (b)(6) and Fed. R. Civ. P. 8 to Apprise Defendants of the Claims Against Them and Should Not Be Dismissed..........................................................................................................................12

    III.    African Muslim Agency, IIIT, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust and York Foundation Have Failed to Move for Dismissal in Euro Brokers and WTC Properties................................................13

    IV.    The January 18, 2005 and September 21, 2005 Decisions of the Court Regarding the Moving Defendants are Not Applicable...........................................14

    V.    The Complaint Sufficiently Alleges a Causal Connection Between the Defendants and the Injuries and Deaths that Occurred on September 11, 2001.......14

          A.    Plaintiffs Have Sufficiently Alleged Acts of International Terrorism, and Therefore Have Stated a Valid Cause of Action Under the ATA....................14

          B.    The Complaint Sufficiently Alleges Violations of the ATA. ...........................15

i

C.   The Complaint Sufficiently Alleges that the Defendants Knowingly and Intentionally Violated the ATA. ....................................................................16

D.   The Defendants' Conduct Is Not Too Remote to Constitute the Proximate Cause of Plaintiffs' Injuries. ..........................................................................17

E.   Plaintiffs' Non-ATA Claims Against the Defendants .....................................18

F.   All of the Property Damage Plaintiffs Properly State RICO Claims...............19

CONCLUSION....................................................................................................................21

## TABLE OF AUTHORITIES

## Cases

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003)........................................................................ 20

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ...................................... 15, 17

*Colon v. Mack*, 56 F.3d 5 (2d Cir. 1995) ..................................................................................... 2

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................... 12, 13

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ...................................................................... 20

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D. N.Y. 2003)......................... 20

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) .............................. 20

*Friedman v. Hartmann*, 1994 WL 376058 (S.D. N.Y. July 15, 1994) ....................................... 20

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ..................................................................... 13

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................................................. 15

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ..................................... 15, 16

*Kurowski v. City of Bridgeport*, 1988 WL 25417 (D. Conn. Mar. 14, 1988) ............................. 18

*Lamarca v. United States*, 31 F. Supp. 2d 110 (E.D.N.Y. 1998)................................................ 17

*Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005).................................. 15, 17, 18

*Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243 (2d Cir. 1996) ................................. 2

*Meyers v. Epstein*, 282 F. Supp. 2d 151 (S.D.N.Y. 2003) .......................................................... 17

*Minnette v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993) .............................................................. 2

*Morin v. Trupin*, 832 F. Supp. 93 (S.D.N.Y. 1993)................................................................... 20

*Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2005) ....................................................................... 13

*Rasul v. Bush*, 124 S. Ct. 2686 (2004) ....................................................................................... 19

*Salinas v. United States*, 522 U.S. 52 (1997).............................................................................. 20

*Scott v. Perkins*, 2005 WL 2327277 (2d Cir. Sept. 21, 2005) ...................................................... 2

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217 (S.D.N.Y. 2003)....................... 15

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)............................................................................. 13

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005)...................................................... 13

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998)..................................................................... 20

*United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991).............................................................. 19

*United States v. Turkette*, 452 U.S. 576 (1981) .......................................................................... 19

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).................................................................. 12, 13

**Statutes**

18 U.S.C. § 1962 ................................................................................................ 19, 20

18 U.S.C. § 2339B .................................................................................................. 16

18 U.S.C. § 2339C .................................................................................................. 16

Fed. R. Civ. P. 12 ......................................................................................... 3, 12, 14

Fed. R. Civ. P. 8 ........................................................................................... 3, 12, 13

**Miscellaneous**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* sec. 1218
     (3d ed 2004) ........................................................................................................ 17

Matthew Epstein with Evan Kohlmann, Testimony Before the House Committee on
     Financial Services Subcommittee on Oversight and Investigations, "Progress Since
     9/11: The Effectiveness of U.S. Anti-Terrorist Financing Efforts", March 11, 2003. .............. 6

Restatement (Third) of Torts § 29 ........................................................................... 17

Statement of President George W. Bush, Tobyhanna Army Depot, Tobyhanna,
     Pennsylvania, November 11, 2005. ......................................................................... 1

W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 43, p. 299 (5th ed.
     1984) ..................................................................................................................... 17

## INTRODUCTION AND SUMMARY OF ARGUMENT

In their Motion to Dismiss filed October 21, 2005, Defendants African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation (collectively "Defendants" or "SAAR Defendants") move to dismiss the Complaints in the above-captioned cases  for failure to state a claim upon which relief can be granted relying primarily on this Court's prior dismissal of claims against the majority of these same defendants in the *Burnett* and *Ashton* cases.  As detailed in the Complaints, these Defendants are "[c]o-conspirators, material sponsors, and/or aiders and abettors of the SAAR Network. . . ."  Burnett TAC ¶ 267; WTC Complaint ¶ 441.    Essentially, Defendants contend that the Complaints should be dismissed against them because Plaintiffs have not sufficiently parsed out the precise roles and conduct of each Defendant in the SAAR Foundation network, or the overall al Qaeda network, and that as a result causation has not been sufficiently alleged.

Recently, President George W. Bush reiterated the role that charities – without deciphering between "for-profit" and "not-for-profit" entities – play in spreading terrorism: "The radicals depend on front operations such as corrupted charities, which direct money to terrorist activity.  They are strengthened by those who aggressively fund the spread of radical intolerant versions of Islam into unstable parts of the world."[1]  This statement goes to the heart of the allegations against the moving Defendants here – they have served to strengthen the enterprise of Radical Muslim Terrorism by operating as front operations for those who engage in terrorist activity.  Plaintiffs herein seek truth and accountability with respect to the individuals and

---

[1] Statement of President George W. Bush, Tobyhanna Army Depot, Tobyhanna, Pennsylvania, November 11, 2005.

entities who sponsored, aided and abetted or otherwise materially supported the terrorist attacks of September 11, 2001.  The Defendants ignore Plaintiffs' underlying factual allegations – that Defendants were part of an extensive and overlapping network of companies and persons engaged in material support of al Qaeda's terrorist activities and that this material support was a proximate cause of the horrific events and injuries alleged.  Burnett TAC ¶¶ 261-267, pp. 216-217, 210, 199; Euro Brokers ¶ 150; WTC ¶¶ 435-441, 35, 1.

The Defendants have also attempted to impose sanctions against Plaintiffs in these cases – with the exception of the *Ashton* Plaintiffs – for what they consider failure to comply with paragraph 13 of the Court's Case Management Order #2 regarding final amendment of the Complaints currently consolidated in these MDL proceedings.  The Defendants have moved this Court to strike "all of the addendums, attachments and exhibits to any of these pleadings [Plaintiffs' amended and/or consolidated complaints], and any document that is incorporated into the complaint by reference, and only consider those allegations that are contained in the actual complaint filed by Plaintiffs in determining the motion to dismiss."  Defendants' Memo. of Law, at 9.  In the alternative, the Defendants seek dismissal by the Court "of the actions for failure to comply with the CMO-2."  *Id.*  Plaintiffs contend that they have complied – both in letter and in spirit – with the CMO-2 with regard to amending of their Complaints.  In the event that the Court disagrees, Plaintiffs respectfully request that the Court allow them to replead in accordance with the Court's interpretation of paragraph 13 of the CMO-2.[2]

---

[2] As the Second Circuit has continuously stated, "dismissal is a harsh remedy to be utilized only in extreme situations." *Scott v. Perkins*, 2005 WL 2327277, *2 (2d Cir. Sept. 21, 2005); *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996) (quoting *Colon v. Mack*, 56 F.3d 5, 7 (2d Cir. 1995)); *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993). Plaintiffs have vigorously pursued the instant litigation and contend that their amended and/or consolidated pleadings meet the requirements of the Case Management Order and are, thus, non-

In that Plaintiffs' allegations and claims, including proximate causation, are specifically and adequately alleged in the Complaint under recognized legal theories, Defendants' dispute is with plaintiffs' factual allegations and cannot properly be resolved through these motions. The Complaint sufficiently notifies Defendants of the nature of the claims against them and satisfies the pleading requirements of Rule 12(b)(6) and Rule 8.

## ARGUMENT

I.   SUMMARY OF FACTUAL ALLEGATIONS AS TO THE MOVING DEFENDANTS

    A.   THE GENERAL FACTUAL ALLEGATIONS AGAINST DEFENDANTS

To evaluate the claims against the moving Defendants, one must read the Complaints in context. An overview of the allegations against all defendants is illustrative of the nature of the pleading:

> This civil action seeks to hold responsible the true enablers of terrorism. Burnett TAC p. 199; WTC ¶ 1.
>
> The financial resources and support networks of these defendant charities, banks and individuals allowed the attacks of September 11th to occur. Burnett TAC p. 199; Euro Brokers ¶ 169; WTC ¶ 1.
>
> Defendants knew they were providing material support to the Al-Qaeda network which openly pronounced their intention to murder innocent American civilians and repeatedly had carried out such murders in the past. Burnett TAC p. 216-217; WTC ¶ 35.
>
> Osama bin Laden's foremost accomplishment was building Al Qaeda's financial support network. Al Qaeda's financial network continues to support the organization today. Burnett TAC p. 203; WTC ¶ 8, Independent Task Force citing Terrorism Financing Report of an Independent Task Force Sponsored by the Council on Foreign Relations, 2002.
>
> Osama bin Laden established terrorism recruiting offices all over the world, including in the United States. Burnett TAC p. 208; WTC ¶ 16.
>
> Recruiting offices were set up within charities, which provided material support including financing. Burnett TAC p. 208; WTC ¶ 16.

---

sanctionable in any respect and especially with regard to the Defendants' *ad absurdum* request that the cases be dismissed.

Osama bin Laden went on to expand his support base to wage international terrorism with the aid and support of the defendants herein.  Burnett TAC p. 202-203; Euro Brokers ¶ 5; WTC ¶ 7.

Osama bin Laden and Al Qaeda cannot plan, train, and act on a massive scale without significant financial power, coordination and backing.  Burnett TAC p. 199; Euro Brokers ¶ 148; WTC ¶ 1.

Defendants knew or reasonably should have known that they were providing material support to terrorists and terrorist organizations who committed the September 11, 2001 savagery that murdered thousands of innocent people.  Burnett TAC p. 216; WTC ¶ 35

Defendants clearly knew, or clearly should have known they were providing material support, aiding and abetting and enabling the terrorists that brutalized American and the world on September 11, 2001. Burnett TAC p. 216; Euro Brokers ¶ 189; WTC ¶ 35.

The financial resources and support network of these Defendants – charities, banks, front organizations, and financiers – are what allowed the attacks of September 11, 2001 to occur.  Burnett TAC p. 199; Euro Brokers ¶ 169; WTC ¶ 1.

Charities became an essential part of the support system of Al Qaeda and Osama bin Laden, providing the financial resources that enabled them to wage war.  Burnett TAC p. 208; WTC ¶ 16.

These general allegations of material support and related proximate cause allegations are bolstered further by the specific allegations regarding the Defendants.

## B.   SPECIFIC FACTUAL ALLEGATIONS REGARDING DEFENDANTS

### 1)   The SAAR Network

Defendants ignore not only the general allegations contained in the Complaints, they overlook those pertaining directly and specifically to SAAR.  Burnett TAC ¶¶ 261-267; WTC ¶¶ 435-441.  The Complaints contain numerous allegations about the connections between SAAR, its officers, directors and principals, and other Defendants herein.  *Id.*, *See also* Burnett TAC ¶ 87, ¶ 275, ¶ 583; Euro Brokers ¶¶ 97, 54; WTC ¶¶ 134, 448, 441.  As noted, SAAR was named after Sulaiman Abdul Aziz al-Rajhi, head of the Saudi Arabian al-Rajhi family, and was formed in the 1970s.  Burnett TAC ¶ 261; WTC ¶ 435.  The SAAR Foundation was incorporated in Herndon, Virginia as a 501c(3) non-profit organization on July 29, 1983.  *Id*.  The Virginia

Secretary of State Corporate Records indicate that there are more than one hundred affiliated organizations registered or doing business at just one of SAAR's addresses on Grove Street in Herndon, Virginia.  *Id.*  Most of these organizations do not maintain a physical presence at that address, or elsewhere.  Burnett TAC ¶ 262; WTC ¶ 436.  Recent evidence confirms what the Complaint has already alleged:  that these companies were front groups set up to launder money and support to al Qaeda.  Burnett TAC ¶ 261 – 267; WTC ¶¶ 435-441.

An inherent aspect of the SAAR Network is the interconnectivity of its organizations as alleged in the complaint.  Burnett TAC ¶¶ 262, 266, 267; WTC ¶¶ 436, 440, 441.  The eleven defendants in this filing prove no exception.  As illustrated in the chart below, there is a high level of overlap in the directors of these organizations.[3]

| | African Muslim Agency | Grove Corporate | Heritage Education Trust | IIIT | Mar Jac Investments | Reston Investments | Safa Trust | York Foundation |
|---|---|---|---|---|---|---|---|---|
| Abu Sulayman, Abdulhamid | | | | ■ | | | | |
| Al-Alwani, Taha J. | | | | ■ | | | ■ | |
| Al-Talib, Hisham | ■ | | | ■ | | | | |
| Ashraf, M. Omar | | | | | ■ | | | ■ |
| Ashraf, Mohamed | | ■ | | | | | | ■ |
| Barzinji, Jamal | | | | | ■ | | | ■ |
| Jaghlit, Muhammad | | | ■ | ■ | | | ■ | |
| Mirza, Yaqub | ■ | | | ■ | | | ■ | ■ |
| Totonji, Ahmad | | | | ■ | | | | |

The most prominent director is Yaqub Mirza.  He is an officer of three of the charities in question, functioning as follows: Vice President/Secretary of the African Muslim Agency, Vice President of Safa Trust, and President/Treasurer of York Foundation.[4]  He is also an executive of all three for-profit corporations in question, commanding the following positions:

---

[3] African Muslim Agency Form 990 filed with the IRS, November 20, 2002; Grove Corporate 1998 Annual Report; Heritage Education Trust Form 990 filed with the IRS, November 20, 2002; International Institute of Islamic Though Form 990 filed with the IRS, November 20, 2002; Mar-Jac Investments, Inc. 2003 Annual Report; Reston Investments, Inc. Corporate Record, 1998 (Virginia Secretary of State); Safa Trust, Inc. Form 990 files with the IRS, May 20, 1996 & November 20, 2002.  All of this information is in the public domain and presumably well-known to the defendants.

President/Treasurer of Grove Corporate, President/Treasurer of Mar-Jac Investments, and Vice President/Secretary of Reston Investments.[5]

Yaqub Mirza is also Secretary/Treasurer of Sanabel al-Kheer, an investment arm of the International Islamic Relief Organization, which is located at 555 Grove Street.[6]  Its sister corporation, The Sana-Bell, Inc., also operates out of 555 Grove Street and lists Mirza as the Secretary.[7]  The Sana-Bell, Inc. incorporated on July 28, 1989, the year a list called the "golden chain" was created.[8]  Discovered during raids of the Bosnian offices of Benevolence International Foundation, the "golden chain" is a list of the initial financiers of al-Qaeda.  Three of the names on the "golden chain" list match those on the articles of incorporation of The Sana-Bell, Inc. at 555 Grove Street.  Recent Congressional testimony affirms the relationship between Sana-Bell, Inc., Yaqub Mirza, the Defendant Muslim World League, and the Defendant International Islamic Relief Organization.[9]

Outside of their overlap in directors, these defendants are intertwined through their organizational structure as well.  The most prominent organization is the Safa Trust, whose subsidiaries include Grove Corporate, Reston Investments, and Mar-Jac Holdings (65%).  Safa Trust is also the largest financier of the International Institute of Islamic Thought (IIIT) and the York Foundation.

SAAR is a sophisticated, overlapping group of non-profit and for-profit organizations

---

[4] *Id.*
[5] *Id.*
[6] Sanabel Al Kheer, Inc. Corporate Record, 2000 (Virginia Secretary of State).
[7] Sana-Bell, Inc. (The) Corporate Record, 2001 (Virginia Secretary of State).
[8] Sana-Bell, Inc. (The) Articles of Incorporation; Government of the District of Columbia; July 28, 1989.
[9] *See* Testimony of Matthew Epstein with Evan Kohlmann Before the House Committee on Financial Services Subcommittee on Oversight and Investigations; Progress Since 9/11:  The Effectiveness of U.S. Anti-Terrorist Financing Efforts; March 11, 2003.

that serve as front-groups for extremist Islamic terrorist organizations including al Qaeda. Burnett TAC ¶ 262, ¶266, ¶¶ 631 – 634; WTC ¶¶ 436, 440. The SAAR Network reported revenues of over $1.7 billion for the year 1998, which represents more than any other United States charity has ever generated. Burnett TAC ¶ 264; WTC ¶ 438. SAAR and its affiliated charities keep a relatively low profile in that they do not conduct fundraising events or publicly reach out to potential donors like most charities. Burnett TAC ¶ 265; WTC ¶ 439.

On March 20 and 21, 2002, the offices of many SAAR organizations, along with the residences of their top executives, were searched by the joint terrorism task-force, Operation Greenquest. Burnett TAC ¶ 263; WTC ¶ 437. Operation Greenquest was created after September 11, 2001, by the United States Treasury Department as a new multi-agency financial enforcement initiative bringing the full scope of the government's financial expertise to bear against sources of terrorist funding. According to the search warrants issued at nearly twenty locations, SAAR-related companies (the defendants herein) were raided for potential money laundering and tax evasion activities and their ties to terrorist groups such as al Qaeda as well as individual terrorists including Osama bin Laden. Burnett TAC ¶ 263; WTC ¶ 437. Individuals associated with SAAR and its network were also implicated in the prior terrorist bombings of the United States Embassies in Kenya and Tanzania. Burnett TAC ¶ 265; WTC ¶ 439.

The overlap of the SAAR network spills over into related al Qaeda fronts, including Defendants herein. On November 7, 2001, Bank al-Taqwa was designated as a Specially Designated Global Terrorist Entity by President George W. Bush's Executive Order and the United States Department of Treasury and its assets were frozen. Burnett TAC ¶ 265; WTC ¶ 439. Two SAAR executives, Samir Salah and Ibrahim Hassabella, were both former executives at Bank al-Taqwa. *Id.* Two other executives in SAAR, Jamal Barzinji and Hisham al-Talib,

worked for Youssef M. Nada, the head of Bank al-Taqwa, whose assets the United States government also froze.  *Id*.  Sulaiman al-Rajhi was on the Board of Directors at Youssef Nada's Akida Bank in the Bahamas.  *Id*.

SAAR and the businesses and individuals that run and comprise it are fronts for the sponsors of al-Qaeda and international terror.  Burnett TAC ¶ 266; WTC ¶ 440.  These organizations are closely inter-twined with Defendants IIRO, Muslim World League and their related "charities."  *Id*.  The connections between the al-Rajhi family, SAAR, and the terrorist front-groups extends past the financial network to a repetitious pattern of overlapping officers.  *Id*.  The United States branches of the Muslim World League and its subsidiaries are a part of SAAR.  *Id*.  The Muslim World League and SAAR share officers and addresses in Virginia.  *Id*.  They also play an intermediary role between wealthy Saudi financers and terrorist groups.  *Id*.

Defendants ignore how the conduct and interrelations alleged regarding other Defendants bear a direct relationship to them.  Indeed, the Complaints allege a conspiracy with and/or aiding and abetting between and among Defendants.  Burnett TAC ¶ 267; WTC ¶ 441.  As its plain reading suggests, the Complaints sufficiently allege the nature of Defendants' involvement in the material support of al Qaeda.  The SAAR defendants cannot seriously maintain they are not sufficiently on notice of the nature of the claims against them and the role of the Islamic charities in sponsoring al Qaeda.  As one commentator put it:

> No one is at war with the idea of building hospitals or orphanages or taking care of people who are displaced.  But the same people that govern how to apply the money to hospitals govern how to apply the money to killing people, and you cannot abdicate responsibility for one and celebrate the other; it remains blood money.

David Aufhauser, General Counsel of the U. S. Treasury Department Chairman of the Interagency Task Force on Terrorism;  See generally Burnett TAC pp. 200, 204; WTC ¶ 3, 8.

### 2)   African Muslim Agency

The African Muslim Agency is alleged to be a member of the Safa Group and a member

of the SAAR Network.  New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441. Furthermore, Plaintiffs allege that, in 1998, "SAAR Network entity Mar-Jac Poultry, Inc. 'donated' $1.1 million, which represented 99% of the company's profits for that year, to SAAR Network entity African Muslim Agency, a purported charity, which then transferred all but $35,000 of the money to another SAAR Network entity, York International, a shell company located in the Isle of Man, which is famed for its bank secrecy laws." Euro Brokers RICO Statement, at ¶5(f); WTC RICO Statement, at ¶5(f).  Plaintiffs further allege that the African Muslim Agency "functions as a conduit for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America."  Euro Brokers RICO Statement, Exhibit A; WTC RICO Statement, Exhibit A.

### 3) Grove Corporate, Inc.

Grove Corporate, Inc. is alleged to be a member of the Safa Group and the SAAR Network of for-profit and not-for-profit entities. New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441.  Grove Corporate, Inc. is also alleged by Plaintiffs to "function[] as a conduit for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America."  Euro Brokers RICO Statement, Exhibit A; WTC RICO Statement, Exhibit A.

### 4) Heritage Education Trust

Heritage Education Trust is alleged to be a member of the Safa Group and the SAAR Network of for-profit and not-for-profit entities. New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441.  Plaintiffs further allege that, between 1996 and 2000, Heritage Education Trust was one of the SAAR entities used to funnel $26 million to the York International Trust

9

and Humana Charitable Trust, both Islam of Man entities "controlled [by] other members of the enterprise all working from the same location in Herndon, Virginia."  Euro Brokers RICO Statement, at ¶5(f); WTC RICO Statement, at ¶5(f).  Heritage Education Trust is also alleged by Plaintiffs to "function[] as a conduit for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America."  Euro Brokers RICO Statement, Exhibit A; WTC RICO Statement, Exhibit A.

5)      **International Institute of Islamic Thought ("IIIT")**

IIIT is alleged to be a member of the Safa Group and the SAAR Network of for-profit and not-for-profit entities.  New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441. Plaintiffs further allege that, between 1996 and 2000, IIIT was one of the SAAR entities used to funnel $26 million to the York International Trust and Humana Charitable Trust, both Isle of Man entities "controlled [by] other members of the enterprise all working from the same location in Herndon, Virginia."  Euro Brokers RICO Statement, at ¶5(f); WTC RICO Statement, at ¶5(f). IIIT is also alleged by Plaintiffs to "function[] as a conduit for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America."  Euro Brokers RICO Statement, Exhibit A; WTC RICO Statement, Exhibit A. Furthermore, on the board of IIIT is Dr. Jamal Barzinji who federal authorities allege:

> …committed and conspired to: transit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive, fire, kidnapping or extortion…; provide material support or resources to foreign terrorist organizations…; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act.

New York Marine FAC at ¶454.

### 6)      Mar-Jac Investments

Mar-Jac Investments is alleged to be a member of the SAAR Network.  New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441.  Mar-Jac Investments is also alleged by Plaintiffs to "function[] as a conduit for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America."  Euro Brokers RICO Statement, Exhibit A; WTC RICO Statement, Exhibit A.

### 7)      Safa Trust

Safa Trust is alleged to be a member of the Safa Group and the SAAR Network of for-profit and not-for-profit entities.  New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441.  Safa Trust was "established and funded by, or closely affiliated with, defendant Suleiman Abdul Aziz al Rajhi."[10]  New York Marine FAC at ¶202.  Furthermore, an officer of Safa Trust is Dr. Jamal Barzinji who federal authorities allege:

> …committed and conspired to: transit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosive, fire, kidnapping or extortion…; provide material support or resources to foreign terrorist organizations…; and provide material support or conceal or disguise the source of ownership of material support intended for use in preparation for or in carrying out a terrorist act.

New York Marine FAC at ¶454.

Samir Salah, a founder of Safa Trust, helped establish SDGT Bank al Taqwa in the mid-1980s and was also deeply involved with the Taibah International Aid Association.  New York Marine FAC at ¶456.  "Salah has made substantial contributions to many of the charities operating within al Qaida's infrastructure, with full knowledge that those funds would be used to support al Qaida's operations and terrorist attacks.  *Id.*

8) **Mena Corporation, Reston Investments, Inc., Sterling Charitable Gift Fund, Sterling Management, Inc. and York Foundation**

Mena Corporation, Reston Investments, Inc., Sterling Charitable Gift Fund, Sterling Management, Inc. and York Foundation are alleged to be members of the Safa Group and the SAAR Network of for-profit and not-for-profit entities. New York Marine FAC ¶ 203; Burnett TAC ¶ 267; WTC ¶ 441. These entities are also alleged by Plaintiffs to "function[] as a conduit[s] for funding to terrorist organizations, including al Qaida," engaging in various forms of money laundering and racketeering activity "all in furtherance of the Enterprise's common goals and ultimate plan of launching an attack on America." Euro Brokers RICO Statement, Exhibit A; WTC Props. RICO Statement, Exhibit A.

## II. THE COMPLAINT IS SUFFICIENT UNDER FED. R. CIV. P. 12 (B)(6) AND FED. R. CIV. P. 8 TO APPRISE DEFENDANTS OF THE CLAIMS AGAINST THEM AND SHOULD NOT BE DISMISSED

Defendants contend that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) against them because it lacks enough detail. Contrary to these arguments, such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). In evaluating the motion to dismiss, the Court must accept as true the facts alleged in the Complaint and draw all reasonable inferences in favor of Plaintiffs. *Wynder*, 360 F.3d at 77.

---

[10] Plaintiffs refer the Court to Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Sulaiman Abdul Aziz al Rajhi, Docket No. 1029.

Relatedly, Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Under *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), Rule 8 pleading is extremely permissive. 534 U.S. at 512-13, 122 S. Ct. 992. As the Supreme Court there noted, Rule 8(a)(2) provides (a) that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and (b) that such a statement simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' 534 U.S. at 512, 122 S. Ct. 992 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957))." *Wynder*, 360 F.3d at 77. The Second Circuit has also reiterated the liberal pleading standards under Rule 8 stating, "*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory" (emphasis in original). *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *see also Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106-07 (2d Cir. 2005).

### III. AFRICAN MUSLIM AGENCY, IIIT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST AND YORK FOUNDATION HAVE FAILED TO MOVE FOR DISMISSAL IN *EURO BROKERS* AND *WTC PROPERTIES*

As a preliminary matter, Plaintiffs in *Euro Brokers* and *WTC Properties* argue that Defendants have failed to move to dismiss these two respective Complaints with regard to the following named defendants in these Complaints: African Muslim Agency, IIIT, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust and York Foundation. Defendants have failed to request a stipulation regarding the briefing of these additional cases. Therefore, Plaintiffs have been placed in the position of not knowing with any certainty whether this is merely an oversight or whether the Defendants simply fail to understand that they are required to answer these Complaints in some fashion.

IV.   **THE JANUARY 18, 2005 AND SEPTEMBER 21, 2005 DECISIONS OF THE COURT REGARDING THE MOVING DEFENDANTS ARE NOT APPLICABLE**

Defendants argue that there are no new allegations plead in the above-captioned cases to differentiate them from the cases in which the majority of these same Defendants were dismissed pursuant to the September 21, 2005 decision of this Court.  This is demonstrably false as evidenced by the addition of facts exhibited, *supra*, with special attention to those alleged facts regarding the secreting of funds to the Isle of Man by Defendants African Muslim Agency, Heritage Education Trust and the International Institute of Islamic Thought.  Though Defendants would wish to have *res judicata* authority imposed upon Plaintiffs based upon the Court's September 21, 2005 decision, the addition of these facts would caution the Court from following the recommendations of the Defendants.  Plaintiffs assert that, based upon the principles of the Rule 12(b)(6) and Rule 8, *supra*, the additional allegations are adequate to state claims against the moving Defendants.

V.   **THE COMPLAINT SUFFICIENTLY ALLEGES A CAUSAL CONNECTION BETWEEN THE DEFENDANTS AND THE INJURIES AND DEATHS THAT OCCURRED ON SEPTEMBER 11, 2001**

The Defendants' legal theory that the Complaints must be dismissed rests on the Court's September 21, 2005 Opinion and Order without further exposition on their theory.  Asserting that Plaintiffs have failed to render any additional allegations to those proffered by Plaintiffs whose claims were dismissed by the Court against the Defendants on September 21, 2005, Defendants claim that they have not received "notice of the factual grounds on which Plaintiffs' claims of conspiracy are based."  Defendants' Memo of Law at 18.  Plaintiffs respectfully disagree.

A.   **Plaintiffs Have Sufficiently Alleged Acts of International Terrorism, and Therefore Have Stated a Valid Cause of Action Under the ATA.**

This Court has held that the ATA permits a private cause of action for injuries resulting from international terrorism.  *Id.*  18 U.S.C. § 2333.  The Complaints make clear that al Qaeda

operated a global terrorist organization that drew its funding and other material support from around the world for the purpose of carrying out a jihad that ultimately resulted in the September 11, 2001 attacks. As discussed previously, Plaintiffs have alleged that the Defendants provided charitable and for-profit cover to al Qaeda in support of its terrorist agenda. These allegations fall squarely within the ATA's definition of "international terrorism." Indeed, Judge Baer has already concluded in *Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 221-22 (S.D.N.Y. 2003), that the facts underlying the September 11 attacks fall within the statute's definition of "international terrorism" and this Court has agreed. *In Re Terrorist Attacks on September 11, 2001,* 349 F. Supp. 2d. at 829.

### B.    The Complaint Sufficiently Alleges Violations of the ATA.

The Defendants ignore the relevant case law and legislative history that provides that material support or resources need not be given directly to the hijackers themselves. *See e.g.*, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 584 (E.D.N.Y. 2005) (J. Gershon) ("Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance"). Under the ATA, defendants are liable if they provided any material support to al Qaeda with knowledge of its terrorist agenda or if they aided and abetted al Qaeda or Osama bin Laden in their course of terrorist conduct. *In Re Terrorist Attacks on September 11, 2001,* 349 F.Supp. 2d at 828-29. *See Boim*, 291 F.3d 1000; *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000); *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); however, Section 2333 does not limit the imposition of civil liability only to those who directly engage in terrorist acts.

Moreover, Plaintiffs need not allege that the Defendants provided support directly to the terrorists who carried out the September 11, 2001 attacks. Rather, Congress expressly stated its

intention that the ATA be used to "interrupt, or at least imperil, the flow of money" to terrorists through the "imposition of liability at any point along the causal chain of terrorism."  S. Rep. No. 342, 1992 WL 187372, *22 (emphasis added).  Thus, it is sufficient that the Defendants knowingly provided material support to al Qaeda through fundraising and money laundering.  As the Ninth Circuit held in *Humanitarian Law Project*, 205 F.3d at 1136, the knowing provision of "material support" to a designated terrorist entity violates § 2339B regardless of whether the donor intended to support the terrorist activities of the group and regardless of whether the particular support provided to the organization can be traced to the resulting acts of terrorism. The court explained:

> [A]ll material support given to such organizations aids their unlawful goals. Indeed, as the government points out, terrorist organizations do not maintain open books.  Therefore, when someone makes a donation to them, there is no way to tell how the donation is used. . . . More fundamentally, money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts.

*Id.*  An act may constitute an offense under the statute without a showing that the funds were actually used to carry out the predicate act of terrorism.  18 U.S.C. § 2339C(a)(3).

### C.     The Complaint Sufficiently Alleges that the Defendants Knowingly and Intentionally Violated the ATA.

In this case, Plaintiffs have sufficiently alleged a cause of action under 18 U.S.C. § 2333 against the Defendants as explained above.   The Complaint alleges that the Defendants <u>knowingly</u> aided, abetted or otherwise conspired to provide material support to Osama bin Laden and al Qaeda.  The Defendants' material support to al Qaeda is alleged to have come in the form of currency derived from fundraising and money laundering.  The Complaints state an ATA claim against the Defendants.

### D.    The Defendants' Conduct Is Not Too Remote to Constitute the Proximate Cause of Plaintiffs' Injuries.

The Defendants argue that Plaintiffs' allegations are merely legal conclusions rather than factual allegations.  The Complaints do indeed include legal conclusions, but they are not bare of facts.  *See supra.*  They have sufficient factual bases to inform the Defendants of the nature of the claims against them.  A leading treatise summarizes the current state of the law as follows: "[T]he federal rules require a short and plain statement of a claim for relief that provides fair notice to the opposing party; it does not make any difference whether the pleader accomplishes this by stating 'conclusions,' 'ultimate facts,' or 'evidence.'" 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* sec. 1218, at 276 (3d ed 2004) .

The ATA "extend[s] civil liability for acts of international terrorism to the full reaches of traditional tort law, . . . causation may be demonstrated as it would be in traditional tort law." *Boim*, 291 F.3d at 1010, 1015.  The scope of ATA liability involves, therefore, traditional notions of proximate cause and reasonable foreseeability.  In order to establish proximate cause, The requirement that the injury must be one that was reasonably to be foreseen does not mean that the exact occurrence or the precise injury resulting from the act need be foreseen; all that is necessary is that the person charged with [the wrongful act] should have been able to foresee that some injury to some person might result from his act. *Lamarca v. United States*, 31 F. Supp. 2d 110, 127 (E.D.N.Y. 1998); *see also Linde v. Arab Bank, PLC*, 384 F. Supp.2d 571, 584-85 (E.D.N.Y. 2005):

Just as there was no requirement for aiding and abetting liability in *Halberstam* that the murderer would not have acted as he did but for his co-defendant's conduct, there is no requirement of a finding that the suicide bomber would not, or could not, have acted but for the assistance of  [Defendant].  *See also* W. Page Keeton et al., Prosser & Keeton on the Law of

Torts, § 43, p. 299 (5th ed. 1984) Restatement (Third) of Torts § 29 cmt. f.  Furthermore, the

concept of reasonable foreseeability is applied more broadly in the context of intentional torts

and reckless torts, as compared to negligence.  *See Meyers v. Epstein*, 282 F. Supp. 2d 151, 154

(S.D.N.Y. 2003).

Applying these principles of proximate cause and reasonable foreseeability, it becomes

clear that the Complaints make a *prima facie* showing of proximate cause.  *See Linde v. Arab*

*Bank, PLC*, 384 F. Supp. 2d 571, 585:

> To the extent that defendant is arguing that plaintiffs have not alleged sufficient
> facts to establish an evidentiary basis for their allegations of knowledge and
> intent, defendant simply misapprehends the pleading standard.  It is not entitled to
> dismissal based on the argument that plaintiffs must plead more than the requisite
> knowledge and intent, either as to their substantive claims or their claims of
> aiding and betting and conspiracy.

Knowingly providing financial and material support to al Qaeda (i.e., an act of international

terrorism under the ATA) is indisputably tortious, because the Defendants should have foreseen

that their support increased the risk that al Qaeda would intentionally kill Americans in terrorist

attacks.  The hijackers' criminal acts do not supersede the Defendants' conduct and break the

chain of causation, as Congress expressly directed that the ATA is intended to "impos[] liability

at any point along the causal chain of terrorism."   S. Rep. No. 342, 1992 WL 187372, *22

(emphasis added).

### E.      Plaintiffs' Non-ATA Claims Against the Defendants

The Defendants make no attempt to argue that Plaintiffs' non-ATA claims against them

should also be dismissed for failure to state a claim.  First, regarding Plaintiffs' claim under the

ATCA, the Defendants' challenge should be dismissed as inadequately briefed.  *See Kurowski v.*

*City of Bridgeport*, 1988 WL 25417 (D. Conn. Mar. 14, 1988).  The Defendants ignore the

common sense ruling of this Court as to the ATCA:  "The Court finds that aircraft hijacking is

generally recognized as a violation of international law." *In Re Terrorist Attacks on September 11, 2001,* 349 F.Supp. 2d at 826.  This Court went on to hold that actions based on theories of aiding and abetting and conspiracy under the ATCA have been "almost unanimously permitted" and will be permitted here.  *Id.*

### F.    All of the Property Damage Plaintiffs Properly State RICO Claims

The Defendants also fail to address Plaintiffs' properly-pled RICO claims. Plaintiffs' complaints and RICO Statements assert RICO claims against the Defendants pursuant to 18 U.S.C. §§ 1962 (a), (c) and (d).

The enterprise – Osama bin Laden and the al Qaeda movement - is an association in fact of terrorists and an ongoing terrorist organization with a definitive structure.  *See, e.g.,* WTC Complaint ¶¶ 909-952; *WTC* RICO Statement; Euro Brokers RICO Statement.   Its well documented purpose is to perpetrate acts of terrorism.  Thus, plaintiffs have sufficiently pled that al Qaeda is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

Plaintiffs' complaints and RICO statements further allege that the Defendants engaged in conduct in furtherance of the enterprise which is actionable under § 1962 (a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  18 U.S.C. § 1962(a).  As the Supreme Court has explicitly recognized that al Qaeda's terrorist endeavors, including the September 11, 2001 attacks, directly affect interstate commerce, plaintiffs have

undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11, 2001 attacks "severely damaged the U.S. economy").

Plaintiffs' complaints and RICO Statements similarly allege sufficient involvement by the Defendants in the enterprise to sustain claims under both §§ 1962 © and (d).  Although a plaintiff asserting a civil claim under § 1962 © must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003), such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear." *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D. N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962 (d), the requirements "are less demanding." *Baisch*, 346 F.3d at 376.  All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)). Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962©, they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F.

20

Supp. 93, 100 (S.D.N.Y. 1993).  Thus, Plaintiffs allege that the Defendants invested racketeering income in an enterprise, operated an enterprise through a pattern of racketeering, and conspired to do so.

CONCLUSION

For the foregoing reasons, this Court should deny the motion to dismiss of the African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation in its entirety.

Dated: New York, NY                        Respectfully submitted,
            December 20, 2005


                                            _/s/_____
                                            Ronald L. Motley, Esq. (SC Bar #4123)
                                            Jodi Westbrook Flowers, Esq. (SC Bar #66300)
                                            Donald A. Migliori, Esq. (RI Bar #4936)
                                            Michael Elsner, Esq. (NY & VA Bar #ME-8337)
                                            Robert T. Haefele, Esq. (NJ-58293; PA-57937)
                                            Justin B. Kaplan, Esq. (TN-022145)
                                            John Eubanks, Esq.
                                            MOTLEY RICE LLC
                                            28 Bridgeside Boulevard
                                            P.O. Box 1792
                                            Mount Pleasant, South Carolina 29465
                                            Tel:  (843) 216-9000

                                            Paul J. Hanly, Jr., Esq. (PH-5486)
                                            Jayne Conroy, Esq. (JC-8611)
                                            Andrea Bierstein, Esq. (AB-4618)
                                            HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                                            112 Madison Avenue, 7th Floor
                                            New York, NY  10016-7416
                                            Tel:  (212) 784-6400

                                            *Attorneys for Plaintiffs Burnett; Euro Brokers, et al;
                                            and World Trade Center Properties, et al.*

21

*LLC, et al.*

James P. Kreindler, Esq.
Justin T. Green, Esq.
Andrew Maloney, Esq.
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, New York 10017-5590
Telephone: (212) 687-8181

*Attorneys for Ashton Plaintiffs*

Robert Kaplan, Esq.
FERBER FROST CHAN & ESSNER, LLP
530 Fifth Avenue
New York, NY 10177-1211
Tel:  (212) 944-2200

*Attorneys for Plaintiff Continental Casualty Co.*

Frank J. Rubino, Esq. (FR-6202)
BROWN GAVALAS & FROMM LLP
BROWN GAVALAS & FROMM LLP
355 Lexington Avenue
New York, NY 10017
Tel:  (212) 983-8500

*Attorneys for Plaintiff*
*NY Marine & General Insurance Company*