**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

*Burnett v. Al Baraka Invest. & Devel. Corp.*, 03-CV-9849
*Continental Casualty Co. v. Al Qaeda*, 04-CV-5970
*Euro Brokers, Inc. v. Al Baraka Invest. & Devel. Corp.*, 04-CV-7279
*New York Marine and General Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Center Properties LLC v. Al Baraka Invest. & Devel. Corp.*, 04-CV-7280

# PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF TAHA AL-ALWANI, MUHAMMED ASHRAF, M. OMAR ASHRAF, IQBAL UNUS, MOHAMMED JAGHLIT, AHMED TOTONJI AND YAQUB MIRZA

December 28, 2005

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES.......................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................5

I. THE AMENDED PLEADINGS ARE IN COMPLIANCE WITH THIS COURT'S CASE MANAGEMENT ORDER ..............................................................................5

II. PLAINTIFFS' AMENDED PLEADINGS AND RICO STATEMENTS PROVIDE SUFFICIENT DETAILS ABOUT THE SAAR EXECUTIVES ...............................................8

A. The Amended Pleadings and RICO Statements Contain Additional Allegations About All of the SAAR Executives Sufficient to Apprise Defendants of the Claims Against Them and Plead the Elements of Plaintiffs' Claims ..................................................8

B. Plaintiffs Adequately Allege Yaqub Mirza's Role in Financing al Qaeda .....................................................................................10

CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

*Page*

**Cases**

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485 (S.D.N.Y. 1998) ......................................................................................................................... 6

*Allen v. New World Coffee, Inc.*, 2001 WL 293683 (S.D.N.Y. March 27, 2001) ......................... 6

*Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002) ............................................ 11

*Conley v. Gibson*, 355 U.S. 41 (1957) .......................................................................................... 7

*Dempsey v. Sanders*, 132 F. Supp. 2d 222 (S.D.N.Y. 2001) ........................................................ 6

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 7

*In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005).................. 4

*In re Terrorist Attacks on September 11, 2005*, 392 F.Supp.2d 539 (S.D.N.Y. 2005)......... 1, 3, 10

*McLaughlin v. Anderson*, 962 F. 2d 187 (2d Cir. 1992).................................................................. 6

*Moses v. Martin*, 360 F. Supp. 2d 533 (S.D.N.Y. 2004) .............................................................. 6

*Polite v. Casella*, 901 F.Supp. 90 (N.D.N.Y. 1995) .................................................................... 7

*Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902 (2d Cir. 1977) ............................................ 7

**Rules**

Fed.R.Civ.Pro. 12 ........................................................................................................................ 5

# INTRODUCTION

Defendants Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji, and Defendants Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji, and Yaqub Mirza (collectively, the "SAAR Executives") – all of whom held executive positions in one of more of the web of so-called "charities" and corporations known as the "SAAR Network" – have moved to dismiss the *Burnett*, *Continental*, *EuroBrokers*, *NY Marine*, and *World Trade Center Properties* complaints against them.[1]  As alleged in the various pleadings at issue, the SAAR Network is a network of not-for-profit and for-profit entities specifically established to covertly provide money and support to al Qaeda and other international terrorists and terrorist groups.  *See, e.g., WTCP* Complaint ¶¶ 215-218, 435-441; *Continental* 2AC ¶¶ 467-473; *Burnett* 3AC ¶¶ 261-267; *see also WTCP* RICO Statement Applicable To Mar-Jac Poultry, African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, Inc., International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling

---

[1] A chart showing which defendants have moved in which case is annexed as Appendix 1.  (The Appendix also lists the operative pleadings in each case.)  Plaintiffs note that although the moving defendants purported to supply a similar chart, defendants' chart is inaccurate in at least one respect. Defendants claim that Yaqub Mirza was voluntarily dismissed from *Burnett* in January, 2005, but that is not the case.  Rather, in January, 2005, the *Burnett* plaintiffs dismissed two duplicative defendants, identified as Defendant # 19 ("M. Yaqub Mirza") and Defendant # 37 ("Yaqub Mirza").  *See* Bierstein Aff., Ex. E.  Defendant # 25, Yaqub M. Mirza, *see Burnett* 3AC, has not been dismissed from the Complaint and remains a defendant.  Plaintiffs have informed counsel for Mr. Mirza that their client is still a defendant in *Burnett*, but counsel nonetheless have treated him as if he had been dismissed and have failed either to answer the *Burnett* complaint or to move to dismiss it on Mr. Mirza's behalf.

Plaintiffs note that this motion was filed beyond the time agreed to by the parties.  The parties had stipulated with these defendants that they would have 30 days from the date on which the Court decided the then-pending motions of the SAAR entities in which to answer or otherwise respond to the complaints. That stipulation was so-ordered by the Court on March 24, 2005.  *See* Affirmation of Andrea Bierstein, Ex. C.  This Court issued its ruling on the SAAR entities' motions on September 21, 2005, *see In re Terrorist Attacks on September 11, 2005*, 392 F.Supp.2d 539 (S.D.N.Y. 2005); the instant motion was filed 37 days later, on October 28, 2005.

Charitable Gift Fund, Sterling Management Group, Inc., and York Foundation ["*WTCP* SAAR RICO Statement"] ¶ 5(f).   The SAAR Network encompassed more than 100 inter-related businesses and so-called charities operating as fronts for the sponsorship of al Qaeda and international terrorism.   *WTCP* Complaint ¶ 216; *Burnett* 3AC ¶¶ 262, 266; *Continental* 2AC ¶ 468, 472; *see also N.Y. Marine* 2AC ¶ 125.   Most of the SAAR Network entities are – or were -- located at a single address in Herndon, Virginia, and had common officers, directors, and management, including the defendants that are the subject of this motion.   *WTCP* Complaint ¶¶ 215-16; *see also Burnett* 3AC ¶ 262; *N.Y. Marine* 2AC ¶ 125.   On March 20 and 21, 2002, federal authorities raided the SAAR Network facilities as part of an ongoing federal investigation into money laundering, tax evasion activities, and ties to terrorist individuals and organizations. *Burnett* 3AC ¶ 263; *WTCP* Complaint ¶ 437; *Continental* 2AC ¶ 469; *N.Y. Marine* 2AC ¶ 125.

Each of the SAAR Executives is alleged to have held leadership positions in one or more of the SAAR Network entities. Thus, Mohammed Jaghlit is alleged to be the "Treasurer of SAAR," *WTCP* ¶ 215, while Ahmed Totonji is alleged to be the "CFO of SAAR." *Id.*[2] Taha Al-Alwani is the President of one SAAR entity, the International Institute of Islamic Thought and an officer of two others, Heritage Education Trust and Safa Trust.   *See WTCP* RICO Statement, Ex. A at 1; *EuroBrokers* RICO Statement, Ex. A at 1.   Muhammed Ashraf is "an officer and/or director of many of the SAAR Network Entities, including the Sterling Investment Group, the Sterling Charitable Gift Fund, and York Foundation." *Id.*   M. Omar Ashraf is "a director or officer of several of the SAAR Network Entities, including Grove Corporate, Mar-Jac

---

[2]   Jaghlit is also "officer or director of numerous of the SAAR Network Entities, including, Heritage Education Trust and Safa Trust." *WTCP* RICO Statement, Ex. A at 3; *EuroBrokers* RICO Statement, Ex. A at 3. Totonji similarly is "a director of numerous of the SAAR Network Entities, including, SAAR Foundation, International Institute of Islamic Thought, and Safa Trust." *Id.* at 2.

Investments, and Sterling Charitable Gift Fund." *Id.* Iqbal Unus is director of the Child Development Foundation, a SAAR Network Entity; he is also associated with the Sterling Charitable Gift Fund and Sterling Management Group. *Id.* at 2.

Yaqub Mirza is the "SAAR President," *WTCP* ¶ 215, a member of the Board of Trustees of defendant Sanabel, Inc., an executive of Sanabel al-Kheer, *id.* at ¶ 220, and the Secretary-Treasurer of co-defendant Muslim World League's American branch. *Burnett* ¶¶ 252-53. He is alleged to have been the principal signatory on Safa Group checks, *WTCP* RICO Statement, Ex. A at 2; *Euro Brokers* RICO Statement, Ex. A at 2; *N.Y. Marine* 2AC, Ex. 16 at Ex. A, and the "financial mastermind of the SAAR Network." *Continental* 2AC ¶ 459; *WTCP* Complaint ¶ 427.

On September 21, 2005, this Court granted motions to dismiss the claims in the *Federal Ins.* case filed by several of the SAAR Executives, Taha Al-Awani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, and Iqbal Unus. *See In re Terrorist Attacks on September 11, 2005*, 392 F.Supp.2d 539, 572 (S.D.N.Y. 2005) ["*In re Terrorist Attacks II*"]. The dismissal was without prejudice and was based entirely on the Court's finding that the complaint at issue did "not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *Id.* The pleadings at issue on this motion – including Amended Pleadings and RICO Statements – provide additional details about these defendants beyond those the Court previously considered and, as described more fully below, explain *how* these defendants provided material support to al Qaeda by authorizing money laundering transactions designed to permit the SAAR entities to divert money given ostensibly for charitable purposes to al Qaeda.

The motion to dismiss addressed in the Court's September, 2005 opinion was not the Court's only previous encounter with the SAAR Network defendants and the SAAR Executives. The Court also previously denied a motion to dismiss filed by the SAAR entities in the *Federal*

*Ins.* case.  *See In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y.

2005) ["*In re Terrorist Attacks I*"]. In addition, Mohammed Jaghlit and Ahmed Totonji's motion

to dismiss the *Federal Ins.* complaint is currently pending before this Court.[3]  Thus, the legal

issues pertaining to the SAAR Network and to the SAAR Executives have been fully (and

repeatedly) briefed to this Court.  The factual allegations relating generally to the SAAR

Network also have been fully briefed.  Rather than repeat the discussions contained in this

previous briefing, plaintiffs hereby adopt and incorporate by reference the arguments set forth in

the briefs submitted as MDL docket # 1571[4], MDL docket # 290[5], and MDL docket # 1559[6]

(collectively, "Incorporated Briefs").  Plaintiffs will use the remainder of this Memorandum to

explain to the Court why the detailed and specific allegations against these defendants set forth

in the various Amended Pleadings and RICO Statements at issue here properly apprise these

defendants of the claims against them and state claims under the Anti-Terrorism Act, RICO, and

---

[3] Mohammed Jaghlit and Ahmed Totonji were not included in the *Federal Ins.* motion to dismiss filed by the other SAAR Executives.  Nor were they part of the motions to dismiss filed by the SAAR entities themselves in *Burnett* and in *Federal Ins.*  Nonetheless, they have joined in the so-called "Renewed Motion to Dismiss" the *Federal* complaint filed by the SAAR entities whose prior motion was denied by this Court in January, 2005.  *See In re Terrorist Attacks on September 11, 2001*, 349 F.Supp.2d 765 (S.D.N.Y. 2005).  The "renewed motion," including Totonji's and Jaghlit's motion to dismiss the *Federal Ins.* complaint, is pending before the Court.

[4] MDL Docket # 1571is entitled:  "Plaintiffs' Memorandum Of Law In Response To African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation's Motion To Dismiss Pursuant To Rule 12(B)(6) For Failure To State A Claim."

[5] MDL Docket # 290 is entitled: "The *Federal* Plaintiffs' Memorandum Of Law In Opposition To The Motion To Dismiss Filed By SAAR Executive Defendants Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza And Iqbal Unus."

[6] MDL Docket # 1559 is entitled "The *Federal* Plaintiffs' Memorandum Of Law In Opposition To The Renewed Motion To Dismiss Filed By SAAR Network Defendants African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sana-Bell, Inc., Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit."

the common law, warranting a different result than that reached by the Court in *In re Terrorist Attacks II.*[7]

**ARGUMENT**

## I.   THE AMENDED PLEADINGS ARE IN COMPLIANCE WITH THIS COURT'S CASE MANAGEMENT ORDER

Defendants can't make up their minds whether plaintiffs have pleaded too many details or too few -- they argue simultaneously that plaintiffs have failed to apprise them of the nature of the allegations against them and also that the very pleadings that contain the details of those allegations should be stricken.  Plaintiffs' amended pleadings – which gather into one place all of the allegations against all of the defendants in each action – comply with both the letter and spirit of CMO #2.  More important, defendants are not prejudiced by any technical non-compliance and indeed, they do not even contend otherwise.

As the Court will remember, Case Management Order #1 permitted plaintiffs to add defendants without pleading specific allegations against those defendants; the order then permitted any defendant as to whom the complaint contains no allegations to seek a "more definite statement," specifying the nature of the claims asserted.  Case Management Order #2 ("CMO #2) then expanded on this procedure, providing:

> Plaintiffs may file more definite statements and/or additional allegations against existing defendants by filing statements to this effect, which will be treated and accepted as pleadings and deemed amendments to previously filed Complaints or Amended Complaints, in lieu of filing an additional Amended Complaint.

CMO #2, ¶ 13.  The order then required plaintiffs to gather all such more definite statements into a single document and to "file an amended complaint that includes all amendments made prior to

---

[7]   In some of their prior motions, the SAAR Executive or the SAAR entities challenged the Court's *in personam* jurisdiction.  In the instant motion, defendants have moved only pursuant to Fed.R.Civ.Pro. 12(b)(6) and argue only that plaintiffs fail to state claims against them.

5

that date, whether made pursuant to Rule 12(e) or otherwise." *Id.*  The order further provided for the filing of RICO Statements in accordance with this Court's Individual Practices.  As a result, the pleadings against each defendant were scattered over various documents filed on different days, in complaints, more definite statements, and RICO Statements.[8] Plaintiffs' amended pleadings, filed on or about September 30, 2005, incorporated all of these various filings into consolidated documents.

Although the plaintiffs in the various cases took different approaches to the requirements of CMO #2, all of the amended pleadings complied with the Order and none should be stricken. Plaintiffs in *Burnett*, *EuroBrokers*, and *World Trade Center Properties* each filed a "Notice of Consolidated Pleading" incorporating by reference all of the previously-filed amendments to their respective complaints.  Each such document "includes all amendment made prior to" the requisite date, just as required by the Court.  More important, the "Notice of Consolidated Pleading" permits each defendant to find in a single place all of plaintiffs' allegations.

The approach taken by the plaintiffs in *New York Marine* and *Continental* achieves precisely the same result.  Defendants seem to object that these plaintiffs did not re-type the material they incorporated by reference and attached (some of which was originally filed by plaintiffs in other cases in these consolidated proceedings), but provide no basis for such an objection.  Defendants seem in particular bothered by variations in the fonts used by the *Continental* plaintiffs, although precisely what prejudice they have suffered from this (aesthetic offense?) they do not specify.  Nonetheless, as a sanction for this unspecified offense (and for

---

[8] The RICO Statements are without a doubt part of the pleadings. *See McLaughlin v. Anderson*, 962 F. 2d 187, 195 (2d Cir. 1992); *Moses v. Martin*, 360 F. Supp. 2d 533, 539 n. 22 (S.D.N.Y. 2004); *Allen v. New World Coffee, Inc.*, 2001 WL 293683, * 2 n. 3 (S.D.N.Y. March 27, 2001); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 224 (S.D.N.Y. 2001); *A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 509, n. 16 (S.D.N.Y. 1998).

what defendants perceive to be defects in all of the amended pleadings), defendants ask this Court (a) to disregard all of the allegations contained in the amended pleadings and/or (b) to dismiss plaintiffs' claims outright.

As the Second Circuit has recognized, the Federal Rules of Civil Procedure reject this gamesmanship approach to litigation; rather, "the purpose of pleading is to facilitate a proper decision on the merits." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir. 1977), *quoting Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities"); *Polite v. Casella*, 901 F.Supp. 90, 94 (N.D.N.Y. 1995) ("lawsuits should be determined on their merits and according to the dictates of justice"). Changes in fonts or the method chosen to collect and incorporate previously-filed documents provide no basis to disregard plaintiffs' allegations, much less to dismiss their claims.

With respect to their only substantive claim, that the *Continental* plaintiffs filed their Second Amended Complaint six days late, on October 6, 2005, instead of on September 30, 2005, defendants are simply wrong:  the date- and time-stamped cover sheet of the Second Amended Complaint shows that the document was timely filed with the Court on September 30, 2005 at 6:39 p.m. *See* Bierstein Aff., Exs. A and B.  As the document clearly shows, the Second Amended Complaint was timely filed; that the ECF system reflects a later date when it was added electronically provides no basis to disregard this pleading.

## II. PLAINTIFFS' AMENDED PLEADINGS AND RICO STATEMENTS PROVIDE SUFFICIENT DETAILS ABOUT THE SAAR EXECUTIVES

### A. The Amended Pleadings and RICO Statements Contain Additional Allegations About All of the SAAR Executives Sufficient to Apprise Defendants of the Claims Against Them and Plead the Elements of Plaintiffs' Claims

Plaintiffs' Amended Pleadings and RICO Statements contain additional detailed

allegations about the SAAR Executives not previously considered by this Court:

- Plaintiffs allege the participation of Mirza, Totonji and Jaghlit in a series of complicated money-laundering transactions, by which money was transferred among various SAAR Network entities, ending up in York International Trust, a shell company located in the Isle of Man, where it could no longer be tracked by U.S. authorities. *WTCP* RICO Statement ¶ 5(f); *Euro Brokers* RICO Statement ¶ 5(f).

- These money laundering transactions include:  (a) a 1998 "donation" by Mar-Jac Poultry, Inc., of $1.1 million (representing 99% of the company's profits for that year) to African Muslim Agency (another SAAR Network entity), a purported charity, which in turn transferred all but $35,000 of the money to yet another SAAR Network entity, York International; (b) a 2000 transfer from  Safa Trust of which Totonji and Jaghlit served as officers, of $400,000 to a the York Foundation (located in the same building as Safa Trust), which in turn sent $400,000 to a related entity called York International Trust; and (c) a 1996 contribution by Safa Trust of $8.6 million to the Heritage Education Trust, controlled by Jaghlit; in the same year, Heritage loaned $5.5 million to Mar-Jac Holdings, Safa's majority owned subsidiary, while in  the following year, Heritage transferred $4.1 million to Safa, reporting that this was a return of the 1996 contribution. *Id.*; *see also N.Y. Marine* 2AC, Ex. 16 at ¶ 5(f).

- Between 1996 and 2000, approximately $26 million was funneled from the SAAR network of charities (including the International Institute for Islamic Thought, which Totonji controlled, and the Heritage Education Trust, which Jaghlit controlled) to the York International Trust and Humana Charitable Trust, both Isle of Man entities controlled both other members of the enterprise all working from the same location in Herndon, Virginia. *WTCP* RICO Statement ¶ 5(f); *Euro Brokers* RICO Statement ¶ 5(f); *see also Continental* 2AC, Addendum at 341 ¶ 41.

- The SAAR entities and executives directed funds through a series of other entities over which they had influence until those funds ultimately reached a shell company in the Isle of Man, where they could no longer be tracked by federal authorities. *WTCP* RICO Statement ¶ 5(f); *Euro Brokers* RICO Statement ¶ 5(f).

- The SAAR entities and executives engaged in acts of mail and wire fraud in soliciting funding for purportedly charitable purposes.  *Id.*

Moreover, plaintiffs specifically allege that these money laundering transactions, as well as the filing of false tax returns, and tax evasion "were all in furtherance of a conspiracy to commit murder and arson which culminated in the September 11, 2001 Attacks." *Id.*

Plaintiffs also specifically allege that each of the SAAR Executives (identified by name and the subject of a separate paragraph and allegation) "has committed multiple acts of conspiracy to commit murder and arson, money laundering, tax fraud, Travel Act violations, filing a false tax return, and impeding and impairing the collecting of federal taxes, all in furtherance of [Radical Muslims Terrorists'] common goals and ultimate plan of launching an attack on America." *WTCP* RICO Statement, Ex. A at 1; *EuroBrokers* RICO Statement Ex. A. at 1; *Continental* 2AC at 378-380; *N.Y. Marine* 2AC, Ex. 16 at Ex. A.

These allegations are in addition to the numerous allegations about the SAAR Network and its role in raising and laundering money for al Qaeda through charity-fronts. *See WTCP* Complaint ¶¶ 215-218, 435-441; *Continental* 2AC ¶¶ 467-473; *Burnett* 3AC ¶¶ 261-267; *N.Y. Marine* 2AC ¶¶ 201-211. Of course, entities such as the corporations and "charities" that made up the SAAR Network can act only through the human beings that run them. Plaintiffs' amended pleadings and RICO Statements make clear that the specific executives that are the subject of this motion -- Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji, and Yaqub Mirza – operated the SAAR Network and were responsible for its role in raising funds through "charity fronts," laundering those funds, and transferring the laundered funds out of the United States so that they could be diverted to al Qaeda without being traced by the United States government or its taxing authorities.

Thus, whether or not the allegations in the complaints originally considered by the Court adequately apprised the SAAR Executives of "how they provided material support to al Qaeda

terrorists," *see In re Terrorist Attacks on September 11, 2005*, 392 F.Supp.2d 539, 572 (S.D.N.Y. 2005), the allegations in the amended pleadings and RICO Statements clearly provide these defendants with precisely that information. The allegations, moreover, are sufficient to state claims under the Anti-Terrorism Act, RICO, and the common law. *See* MDL Docket # 1571 at 14-21; MDL Docket # 290 at 7-19.

### B. Plaintiffs Adequately Allege Yaqub Mirza's Role in Financing al Qaeda

The pleadings contain even more details about Yaqub Mirza's role in financing al Qaeda. Yaqub Mirza was not only the "financial mastermind of the SAAR Network," but also the Secretary and Treasurer of the Muslim World League in the United States. *See, e.g., WTCP* Complaint ¶ 427. Indeed, it was Mirza who first registered the MWL – which is alleged to have provided substantial financial assistance to al Qaeda – in Virginia. *Continental* 2AC, Addendum at 342 ¶ 48. Mirza is alleged specifically to be the individual who "directed Mar Jac's profits through a series of other entities he also controlled, until those funds ultimately reached a shell company in the Isle of Man, where they could no longer be tracked by federal authorities." *WTCP* RICO Statement ¶ 5(f); *Euro Brokers* RICO Statement ¶ 5(f).

As noted earlier, Mirza was also a founding trustee of Sanabel (or "Sana-Bell"). Inc. *WTCP* Complaint ¶ 220; *Continental* 2AC, Addendum at 342 ¶ 48. Sanabel "operated as a mere conduit to move IIRO funds from Saudi Arabia to IRO's use in Virginia," *Continental* 2AC, Addendum at 361-62, ¶ 54. All told, plaintiffs have alleged, "Mirza is, or has been, an officer and/or director of twenty-nine SAAR Network Entities, including Mar-Jac, and maintains signatory authority over seventeen different bank accounts associated with fifteen different SAAR Network Entities." *Continental* 2AC, Addendum at 400. Mirza's house was raided in March, 2002 by federal authorities investigating his alleged connections to al Qaeda and September 11, 2001. *See, e.g., Continental* 2AC ¶ 459.

Taken together, these allegations – along with plaintiffs' allegations that the SAAR Network entities operated as fronts for al Qaeda and international terrorism, *see WTCP* Complaint ¶ 216; *Burnett* 3AC ¶¶ 262, 266; *Continental* 2AC ¶ 468, 472; *see also N.Y. Marine* 2AC ¶ 125; *see also* MDL Docket # 1571 at 4-12 – plainly allege Mirza's role in establishing and operating a fund-raising and money-laundering operation to support al Qaeda.  As plaintiffs repeatedly have pointed out to this Court, "there would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence."  *Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1021 (7th Cir. 2002).  The money raised by the SAAR Network and transferred out of the United States where it could be diverted to al Qaeda bankrolled the terrorist activities of Osama bin Laden.  Indeed, in 1998 alone, the SAAR Founation, part of the SAAR Network, reported revenue of over $1.7 *billion* dollars – more than any other U.S. charity as ever reported.  *See Continental* 2AC ¶ 470; *WTCP* Complaint ¶ 438.  More than $20 million was laundered by the SAAR Network through two entities registered in the Isle of Man alone.  *See WTCP* RICO Statement ¶ 5(f); *Euro Brokers* RICO Statement ¶ 5(f); *see also Continental* 2AC, Addendum at 341 ¶ 41.  SAAR was not simply a source of pocket change for bin Laden or al Qaeda, but rather was in a position to provide funding on a scale that enabled al Qaeda to see its terrorist schemes to fruition. Mirza is alleged to have been the "financial mastermind" behind SAAR.  Plaintiffs have adequately stated claims against him for his role in bringing about the terrorist attacks of September 11, 2001.

## CONCLUSION

For the foregoing reasons, this Court should deny defendants' motion to dismiss in its entirety.

Dated:  New York, NY               Respectfully submitted,
        December 28, 2005


                                   /s/_____
                                   Ronald L. Motley, Esq. (RM-2730)
                                   Jodi Westbrook Flowers, Esq.
                                   Donald A. Migliori, Esq.
                                   Michael Elsner, Esq. (ME-8337)
                                   Justin B. Kaplan, Esq.
                                   MOTLEY RICE LLC
                                   28 Bridgeside Boulevard
                                   P.O. Box 1792
                                   Mount Pleasant, South Carolina 29465
                                   Telephone:  (843) 216-9000

                                   Paul J. Hanly, Jr., Esq. (PH-5486)
                                   Jayne Conroy, Esq. (JC-8611)
                                   Andrea Bierstein, Esq. (AB-4618)
                                   HANLY CONROY BIERSTEIN & SHERIDAN, LLP
                                   112 Madison Avenue
                                   New York, NY 10016
                                   Telephone:  (212) 784-6400

                                   Plaintiffs' Executive Committee
                                   on behalf of *Burnett*, *Continental*, *Euro Brokers*, *N.Y. Marine*, and *WTCP* Plaintiffs

**Appendix 1:**

**Defendants and Cases to which motion applies:**

| Defendant | Cases to Which Motion Applies |
|---|---|
| M. Ashraf | *Burnett*, 03 CV 9849<br>*New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |
| M. Omar Ashraf | *Burnett*, 03 CV 9849<br>*New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |
| Taha Al-Alwani | *New York Marine*, 04 CV 6105 |
| Iqbal Unus | *Burnett*, 03 CV 9849<br>*New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |
| Mohammed Jaghlit | *Burnett*, 03 CV 9849<br>*New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |
| Ahmed Totonji | *New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |
| Yaqub Mirza | *New York Marine*, 04 CV 6105<br>*Euro Brokers*, 04 CV 7279<br>*Continental Casualty,* 04 CV 5970<br>*World Trade Center Properties*, 04 CV 7280 |

**Operative Pleadings:**

| Case | Pleadings |
|---|---|
| *Burnett* | Third Amended Complaint ("*Burnett* 3AC"); |
| *Continental Casualty* | Second Amended Complaint ("*Continental* 2AC") |
| *Euro Brokers* | Complaint ("*Euro Brokers* Complaint"); RICO Statement Applicable to Taha Jaber Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Yaqub M. Mirza, Iqbal Yunus, Ahmed Totonji, and Mohammed Jaghlit ("*Euro Brokers* RICO Statement") |
| *New York Marine* | Second Amended Complaint ("*N.Y. Marine* 2AC") |
| *WTCP* | Complaint ("*WTCP* Complaint"); RICO Statement Applicable to Taha Jaber Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Yaqub M. Mirza, Iqbal Yunus, Ahmed Totonji, and Mohammed Jaghlit ("*WTCP* RICO Statement") |