# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (RCC)

---

**REPLY MEMORANDUM OF LAW OF AFRICAN MUSLIM AGENCY, GROVE CORPORATE, INC., HERITAGE EDUCATION TRUST, INTERNATIONAL INSTITUTE OF ISLAMIC THOUGHT, MAR-JAC INVESTMENTS, INC., MENA CORPORATION, RESTON INVESTMENTS, INC., SAFA TRUST, STERLING CHARITABLE GIFT FUND, STERLING MANAGEMENT GROUP, INC., YORK FOUNDATION, AHMED TOTONJI AND MOHAMMED JAGHLIT IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO STRIKE THE MOTION TO DISMISS**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit*

# TABLE OF CONTENTS

<u>**Page**</u>

ARGUMENT...................................................................................................................2

I. PLAINTIFFS' CROSS-MOTION TO STRIKE SHOULD BE
   DENIED ...............................................................................................................2

   A. THE COURT'S JANUARY 18, 2005 OPINION DOES
      NOT REQUIRE THE MOVING DEFENDANTS TO
      ENGAGE IN JURISDICTIONAL DISCOVERY ......................................2

   B. THE MOTION TO DISMISS IS NOT A MOTION FOR
      RECONSIDERATION.............................................................................5

II. THE MOTIONS TO DISMISS SHOULD BE GRANTED...................................5

   A. PLAINTIFFS' OPPOSITION WAS UNTIMELY......................................5

   B. THE MOVING DEFENDANTS HAVE APPLIED THE
      CORRECT PLEADING STANDARD .......................................................6

   C. PLAINTIFFS' CASES ALSO SUPPORT DISMISSAL ............................8

III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE...........9

CONCLUSION ............................................................................................................10

The Moving Defendants,[1] by and through undersigned counsel, hereby submit this Reply Memorandum of Law in Further Support of their Motion to Dismiss Plaintiffs' First Amended Complaint With Incorporated More Definite Statements, RICO Statements and Rule 15(d) Supplemental Pleadings (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and in Opposition to Plaintiffs' Cross-Motion to Strike their Motions to Dismiss.

Plaintiffs have moved to strike the Motions to Dismiss on the ground that they are not authorized by the Court's January 18, 2005 Opinion which denied the Moving Defendants' initial motions to dismiss without prejudice, ordered jurisdictional discovery to assist it in resolving the predicate jurisdictional issue and stated that the motions could be "renewed upon completion of personal jurisdiction discovery." *In re Terrorist Attacks of September 11, 2001*, 349 F. Supp. 2d 765, 837 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*"). Because the Court did not *require* the parties to engage in jurisdictional discovery -- as Plaintiffs now suggest -- the Moving Defendants withdrew their personal jurisdiction defenses in response to Plaintiffs' overly broad and unduly burdensome jurisdictional discovery requests. By withdrawing their jurisdictional defenses, the Moving Defendants mooted the need for discovery. Accordingly, discovery is "complete" and the Motions to Dismiss are proper.

Plaintiffs also argue that the Motions to Dismiss apply the incorrect pleading standard. The Moving Defendants applied the standard announced by the Seventh Circuit and adopted by the Court in its January 18, 2005 and September 21, 2005 Opinions, requiring Plaintiffs to plead that defendants (i) knew of al Qaeda's illegal activities, (ii) desired to help those activities succeed and (iii) engaged in some act of helping the illegal activities. *In re Terrorist Attacks on*

---

[1] The Moving Defendants are African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji and Mohammed Jaghlit.

*September 11, 2001*, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").  It is the Plaintiffs who have applied the wrong standard -- completely ignoring this Court's earlier rulings that compel the dismissal of the claims against the Moving Defendants.

## ARGUMENT

## I.    PLAINTIFFS' CROSS-MOTION TO STRIKE SHOULD BE DENIED[2]

### A.    The Court's January 18, 2005 Opinion Does Not Require The Moving Defendants To Engage In Jurisdictional Discovery

Plaintiffs argue that the Moving Defendants' Motions to Dismiss should be stricken because the Court's January 18, 2005 Opinion held that "*if* Defendants wanted to renew their Motion, which had been denied, *then* they had to participate in jurisdictional discovery.  Because they have failed to do so, their Motion must be stricken from the record." (Plaintiffs' Cross-Motion to Strike, MDL Docket # 1563, at 2) (emphasis in original).  But this is not the holding of the January 18 Opinion.

The Moving Defendants' initial motions to dismiss sought dismissal on both personal jurisdictional grounds and for failure to state a claim.  The January 18, 2005 Opinion denied those motions to dismiss, without prejudice, and authorized jurisdictional discovery to permit the Court to make the predicate determination of which Moving Defendants were subject to the Court's jurisdiction.  The Court held that the Rule 12(b)(6) motion to dismiss could be "renewed upon completion of personal jurisdiction discovery." *In re Terrorist Attacks I*, at 837.

Plaintiffs waited **three months**, or until April 20, 2005, to serve any jurisdictional discovery requests.  They served 12 sets of identical document requests on each of the Moving Defendants seeking the production of 42 different categories of documents.  (*See, e.g.*, First Set

---

[2] Plaintiffs' cross-motion does not apply to Ahmed Totonji or Mohammad Jaghlit who were not subjects of the Court's January 18, 2005 Opinion.

of Jurisdictional Requests for Production of Documents Directed to Mar-Jar Investments, Inc.,
Exhibit A to the Declaration of Steven K. Barentzen, dated January 18, 2006 (the "Barentzen
Decl.")) These requests were facially overbroad and went far beyond the limited scope of
jurisdictional discovery the Court had authorized "to determine which of the Network's entities
have a presence in Virginia and which entities transferred money to Nada and Nasreddin." *In re
Terrorist Attacks I*, at 823.[3]

On May 11, 2005, the Moving Defendants opted to withdraw their jurisdictional
defenses. (Barentzen Decl., Ex. B.) The Moving Defendants did so to avoid wasting resources
responding and objecting to these overbroad requests and likely litigating with Plaintiffs over the
proper scope of jurisdictional discovery. Contrary to Plaintiffs' argument, the January 18, 2005
Opinion did not require the parties engage in jurisdictional discovery. Rather, the Moving
Defendants' withdrawal of their jurisdictional defenses obviated the need for any jurisdictional
discovery, and these Motions to Dismiss are proper because jurisdictional discovery was at that
point unnecessary and moot. Requiring the parties to engage in jurisdictional discovery -- even
though there are no jurisdictional issues left to be resolved -- would fly in the face of reason.

On July 11, 2005, **two months** later and almost **six months** after the Court's Opinion,
Plaintiffs objected to the Moving Defendants bringing a Rule 12(b)(6) motion to dismiss unless
they first engaged in jurisdictional discovery and advised the Moving Defendants to "treat the
jurisdictional discovery previously served upon [you] as merits discovery." (Barentzen Decl.,
Ex. C.)

---

[3] For example, Request Number 8 sought "From the period beginning January 1990 through the present . . . all
documents relating to all accounts in foreign banking institutions ("Foreign Bank Accounts") held by You, and/or
any Foreign Bank Accounts over which You hold or have held signatory authority." Request 31 sought "From the
period beginning January 1990 through the present . . . all documents relating to any business relationships and/or
financial transactions between You and the SAAR Network-Related Entities, and/or any individual or entity
associated therewith."

On July 18, 2005, the Moving Defendants again advised Plaintiffs of their intention to move to dismiss Plaintiffs' claims, sought Plaintiffs' agreement as to a schedule for the briefing of such motion and requested that Plaintiffs withdraw their improper "merits" discovery. (Barentzen Decl., Ex. D.)  Plaintiffs never responded to the letter, and the Moving Defendants heard nothing from Plaintiffs until they filed their cross-motion to strike.

Plaintiffs argue that the Moving Defendants' withdrawal of their jurisdictional defenses was "concerted gamesmanship." (Plaintiffs' Opposition to Motion to Dismiss, MDL Docket # 1559, at 3.)  But the only party engaging in "gamesmanship" is Plaintiffs.  Their "jurisdictional" discovery requests were full-fledged and unauthorized merits discovery, as Plaintiffs essentially admitted when they improperly sought to "convert" their "jurisdictional" requests into "merits" discovery.  (Barentzen Decl., at Ex. C.)

Moreover, Plaintiffs delayed these proceedings for months by waiting to file their discovery requests and responding to the Moving Defendants' objections.[4]  At the pace they were moving, Plaintiffs would need years to complete jurisdictional discovery.  The Moving Defendants' withdrawal of their jurisdictional defenses was not "gamesmanship," but the quickest and most efficient means to resolve Plaintiffs' claims, as was confirmed by the Court's September 21, 2005 Opinion dismissing the claims against the Moving Defendants in *Burnett*, a case in which  no jurisdictional defenses were raised.  *In re Terrorist Attacks II*, at 570.

---

[4]  Plaintiffs' argument that the Moving Defendants' personal jurisdiction objections were interposed to "stall" the lawsuit rings hollow.  (Plaintiffs' Opp., at 3.)  The Moving Defendants expeditiously have sought dismissals of the baseless claims against them in this and the other actions in this MDL.

**B.    The Motion to Dismiss is Not A Motion for Reconsideration**

Plaintiffs' argument that the Motions to Dismiss should be denied because they are "an improper and untimely attempt to reargue issues already resolved by the Court" is unavailing. (Plaintiffs' Cross-Motion, at 3.)  The Court denied the initial motions to dismiss *without prejudice*, and without ruling on the merits, to permit jurisdictional discovery.  Because the Court never ruled on the merits of the first Rule 12(b)(6) motion to dismiss, there is nothing for the Court to reconsider.  In fact, if the Court were to grant Plaintiffs' cross-motion and strike the Motions to Dismiss, the Court would impermissibly deny the Moving Defendants a Rule 12(b)(6) remedy.[5]

## II.    THE MOTIONS TO DISMISS SHOULD BE GRANTED

**A.    Plaintiffs' Opposition Was Untimely**

After receiving Plaintiffs' amended "Complaint," the Moving Defendants attempted to comply with paragraph 25 of Case Management Order #2 which requires the parties to submit to the Court "an agreed-upon, proposed briefing schedule" prior to filing motions to dismiss. Because Plaintiffs never responded to the Moving Defendants' requests to negotiate a briefing schedule, the Moving Defendants filed their Motions to Dismiss on October 18, 2005, within the time provide by Federal Rule of Civil Procedure 15(a).  Pursuant to this Court's Local Rule 2(d), Plaintiffs' opposition to  the Motions to Dismiss were due within 14 days.  Because Plaintiffs filed their opposition on December 19, 2005, 60 days later, the opposition was late and should be disregarded, and Plaintiff's Motions to Dismiss should be granted as unopposed.

---

[5] Plaintiffs' argument that there has been no change in the record since the January 18, 2005 Opinion is also wrong. (*Id.*)  On September 21, 2005, the Court dismissed the claims against eight of the Moving Defendants in *Burnett* along with other so-called "SAAR Network Defendants" in this action, and on September 30, 2005, Plaintiffs filed their amended Complaint.  Because Plaintiffs amended the Complaint with knowledge of the Court's Opinion, Plaintiffs' claims should be dismissed with prejudice and without further leave to amend.  (*See supra.* at 9.)

*After* forcing the Moving Defendants to file their Motions to Dismiss within the time allotted by Rule 15, Plaintiffs took the position that the "default" briefing schedule of the Court's CMO-4 provided them 60 days to oppose the motions. The CMO-4 is inapplicable because it was not in effect when Plaintiffs filed their "amended" complaint or when the Motions to Dismiss were filed.  It was not issued until December 9, 2005, well after Plaintiffs' time to file their opposition had passed.  Even if the CMO-4 were applicable, it would be unjust to permit Plaintiffs to benefit from its "default" briefing schedule because Plaintiffs refused to negotiate a briefing schedule as required by  paragraph 25 of the CMO-2.  Plaintiffs should be required to follow the rules as well.

### B.     The Moving Defendants Have Applied The Correct Pleading Standard

Plaintiffs argue that "Defendants have fundamentally misconstrued the pleading requirements of the Federal Rules of Civil Procedure, and cannot through this Motion seek to convert basic notice pleading requirements into a demand that plaintiffs provide detailed factual allegations and make their full case at this early stage."  (Plaintiffs' Opp., at 3-4.)

The Moving Defendants, however, applied the standard that this Court adopted in its January 18, 2005 and September 21, 2005 Opinions: that to survive a motion to dismiss Plaintiffs must plead that defendants knew of al Qaeda's illegal activities, "that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities." *In re Terrorist Attacks II,* 392 F. Supp. 2d at 564.  Plaintiffs have misconstrued the pleading requirements, refusing even to acknowledge the existence of the Court's previous opinions, or the Seventh Circuit's opinion in *Boim v. Quaranic Literary Inst.*, 291 F. 3d 1000 (7th Cir. 2002).

Plaintiffs ignore binding precedent -- and pretend that Plaintiffs have applied the wrong standard -- because these decisions mandate the dismissal of the rest of Plaintiffs' claims.  On September 21, 2005, reviewing allegations that are not materially different than those in the

6

Complaint, the Court dismissed eight of the Moving Defendants, African Muslim Agency, Grove Corporate, Heritage Education Trust, IIIT, Mar-Jac Investments, Reston Investments, Safa Trust and York Foundation from the *Burnett* action, and IIIT from *Ashton* too. *In re Terrorist Attacks II*, at 570-71. Reviewing the very same allegations that are at issue here, the Court also dismissed five other so-called "SAAR Network Executives," Muhammad Ashraf, M. Omar Ashraf, Yaqub Mirza, Taha Al-Alwani and Iqbal Unus, and one of the "SAAR Network Entities" Mar-Jac Poultry, from this action. *Id.* at 572.

Plaintiffs feebly attempt to distinguish those rulings by arguing that the allegations against the Moving Defendants are different from those that the Court already has reviewed. For example, Plaintiffs cite to their allegation that the "$1.1 million apparently funneled from Mar-Jac Poultry through African Muslim Agency to York International" provided those defendants notice of the claims against them. (Plaintiffs' Opp., at 9.) But the Court did review this allegation and found that it did "not provide Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *In re Terrorist Attacks II*, at 571. Plaintiffs do not, because they cannot, explain how this allegation could state a claim against African Muslim Agency, York International or any other Moving Defendant.

Plaintiffs also argue that they have alleged that Ahmed Totonji, in "his capacity as a director of the International Institute of Islamic Thought and Safa Trust[6] . . . conspired to and did generate and surreptitiously transfer funds to terrorist organizations, including al Qaida." (Plaintiffs' Opp., at n. 7.) A virtually identical allegation is made against Mohhamed Jaghlit. But these allegations are identical to those asserted against the so-called "SAAR Network" Executives, Taha Al-Alwani, Muhammad Ashraf, M. Omar Ashraf, M. Yaqub Mirza, or Iqbal

---

[6] The claims against Safa Trust and IIIT were dismissed in *Burnett*, and the claims against IIIT dismissed in *Ashton* as well. *In re Terrorist Attacks II*, at 570-71.

Unus that the Court found do not state a claim. The Court should dismiss the claims against Mr. Totonji and Dr. Jaghlit because "reading the complaint as a whole and considering the overlap of executives among the SAAR Network entities, the complaint does not adequately provide these Defendants with notice as to how they provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*, at 572.[7]

### C.  Plaintiffs' Cases Also Support Dismissal

None of the cases relied upon by Plaintiffs are to the contrary. The only other "terrorism" case cited by Plaintiffs, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 580 (E.D.N.Y. 2005), applied the same "liberal pleading standard" that Seventh Circuit applied in *Boim*. In *Linde*, Plaintiffs' allegation "that the Bank plays a central role in a well-publicized plan to reward terrorists killed and injured in Palestinian suicide attacks in Israel and that the Bank knows that the groups to which it provides services are engaged in terrorist activities" stated a claim *Id*. at 588. These allegations stated a claim because:

> [T]hey describe the wrongful acts performed by the terrorists, the defendant's general awareness of its role as part of an overall illegal activity, *and the defendant's knowing and substantial assistance to the principal violation*.

*Id*. at 584 (emphasis supplied).

The Court specifically distinguished the allegations against Arab Bank from those that this Court found do not state a claim:

> Nothing in the complaints suggests that Arab Bank is a mere unknowing conduit for the unlawful acts of others, about whose aims the Bank is ignorant. Although the Bank would like this court to find, as did the court in *In re Terrorist Attacks*, that it is engaged in "routine banking services," see 349 F. Supp. 2d at 835, here, given plaintiffs' allegations regarding the knowing and

---

[7] Nor do Plaintiffs allege knowledge of the illegal activities, a desire to assist those activities or an act taken in support of those activities. *See In re Terrorist Attacks II*, at 564.

> intentional nature of the Bank's activities, there is nothing
> "routine" about the services the Bank is alleged to provide.

*Id.* at 588.  As this Court has already held, Plaintiffs' claims should be dismissed because --

unlike the *Linde* Plaintiffs -- they have not alleged that the Moving Defendants provided

knowing and substantial assistance to Al Qaeda or the September 11th attackers.

*Twombly v. Bell Atlantic Corporation*, 425 F.3d 99, 108-09 (2d Cir. 2005) stands for the

unremarkable proposition that there is no heightened pleading standard in antitrust actions.[8]  In

*Twombly*, the Court found that to state a claim Plaintiffs must allege "the existence of a

conspiracy" and a "sufficient supporting factual predicate on which that allegation is based."  *Id.*

at 114.  The *Twombly* Plaintiffs survived a motion to dismiss because they alleged an extensive

factual predicate from which a conspiracy could be inferred.  *Id.* at 117-19.  Plaintiffs, on the

other hand, have not alleged any facts that support their conclusory allegations of conspiracy.

*See In re Terrorist Attacks I*, at 823 (Plaintiffs have "provided scant basis for linking these

entities under the SAAR Network title.")[9]

## III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' claims should be dismissed with prejudice because their time to amend has

now passed.  Plaintiffs had the opportunity to amended their complaint on September 30, 2005

with the benefit of the Court's September 21, 2005 Opinion and Order detailing precisely what

they must allege to withstand a motion to dismiss.  Plaintiffs failed to include any allegations in

---

[8] Plaintiffs argue that *Twombly* supports the proposition that they have stated claims against the Moving Defendants because they have alleged: 1) Al Qaeda uses charities to raise funds, 2) some of the Moving Defendants are charitable organizations, therefore 3) the Moving Defendants support Al Qaeda.  (Plaintiffs' Opp., at n. 6.)  It is illogical (and disconcerting) to suggest that Plaintiffs can plead a viable terrorism claim simply by alleging an entity is a charity.

[9] *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002) is simply inapposite.  That case involved a *pro se* Plaintiff alleging violations of his Eighth Amendment rights.  The Court found that there is no heightened pleading standard in a § 1983 action alleging Eighth Amendment violations.  *Id.* at 186.  The Moving Defendants have not asked the Court to adopt a "heightened pleading standard."

their "amended" Complaint that were not already considered by the Court in issuing the

September 21, 2005 Opinion.  It would be futile to provide Plaintiffs yet another opportunity to

amend their pleading, as it is clear that *if* Plaintiffs could state a claim against any of the Moving

Defendants they would have done so by now.

## CONCLUSION

For all the foregoing reasons, the Moving Defendants respectfully request that the Court

grant their Motion to Dismiss the First Amended Complaint With Incorporated More Definite

Statements, RICO Statements and Rule 15(d) Supplemental Pleadings, deny the Plaintiffs' cross-

motion to strike and dismiss all of the Plaintiffs' claims in this action with prejudice.

Respectfully submitted,


Dated:   January 18, 2006

By: /s/ Nancy Luque _____
    Nancy Luque (NL-1012)
    Jay Hanson (admitted *pro hac vice*)
    Steven K. Barentzen (SB-8777)
    DLA PIPER RUDNICK GRAY CARY US LLP
    1200 Nineteenth Street
    Washington, DC  20036-2247
    Tel: 202-861-3900
    Fax: 202-223-2085

    *Attorneys for African Muslim Agency, Grove
    Corporate, Inc., Heritage Education Trust,
    International Institute of Islamic Thought, Mar-
    Jac Investments, Inc., Mena Corporation, Reston
    Investments, Inc., Safa Trust, Sterling Charitable
    Gift Fund, Sterling Management Group, Inc.,
    York Foundation, Ahmed Totonji and Mohammed
    Jaghlit*

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2006, I caused an electronic copy of the foregoing Reply Memorandum of Law in Further Support of Motion To Dismiss Of African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc., York Foundation, Ahmed Totonji And Mohammed Jaghlit Pursuant To Rule 12(B)(6) For Failure To State a Claim and In Opposition to Plaintiffs' Cross-Motion to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)