IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
                                                            :    03 MDL 1570 (RCC)
*IN RE* TERRORIST ATTACKS ON                                :    ECF CASE
      SEPTEMBER 11, 2001.                                   :
                                                            :
                                                            :
------------------------------------------------------------X

*This document relates to:*

    *Kathleen Ashton v. Al Qaeda Islamic Army, et al., 02-CV-6977 (RCC)*
    *Federal Insurance Company v. Al Qaeda Islamic Army, et al., 03-CV-6978 (RCC)*
    *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al., 04-CV-05970 (RCC)*
    *New York Marine and General Insurance Co. v. Al Qaida, et al., 04-CV-6105 (RCC)*


### CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ABDULRAHMAN BIN MAHFOUZ'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS WITH PREJUDICE

Gerald A. Feffer (GF-2179)
Peter J. Kahn (PK-3611)
John L. Cuddihy (JC-4015)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Attorneys for Defendant Abdulrahman
Bin Mahfouz

Dated: January 20, 2006

## TABLE OF CONTENTS

ARGUMENT IN REPLY ..................................................................................................................1

I. THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ. .............................................................................................................2

    A. Plaintiffs Have Failed To Allege that Mr. Bin Mahfouz "Purposefully Directed" His Conduct at the United States. ..........................................................2

    B. Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory. .....................................................................................................................3

    C. Plaintiffs Have Failed To Allege Minimum Contacts with the United States. .....................................................................................................................4

    D. Plaintiffs Are Not Entitled to Jurisdictional Discovery. ........................................6

II. PLAINTIFFS HAVE FAILED TO STATE COGNIZABLE CLAIMS AGAINST MR. BIN MAHFOUZ. .........................................................................................7

    A. Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim Under the Anti-Terrorism Act ("ATA"). ................................................................7

    B. Plaintiffs' Allegations Against Mr. Bin Mahfouz Are Barred by Well-Settled Principles of Corporate Law. .....................................................................8

    C. Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin Mahfouz. ..................................................................................................................9

    D. Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred by the First Amendment of the United States Constitution and the Volunteer Protection Act, 42 U.S.C. §§ 14501 et seq. .............................................................9

    E. Plaintiffs Have Failed To State a Claim Under the Alien Tort Claims Act ("ATCA"), the Torture Victim Protection Act ("TVPA"), or Any State Law Cause of Action. ......................................................................................10

CONCLUSION ...............................................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38 (D.D.C. 2000) ........................................................ 3

Lyons v. Swift Transport Co., No. 01-0209, 2001 WL 1153001 (E.D. La. Sept. 26, 2001) .......... 6

Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ............... 5

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982) ............................................................. 9

Pugh v. Socialist People's Libyan Arab Jamahiriya, 290 F. Supp. 2d 54 (D.D.C. 2003) ............... 3

In re Terrorist Attacks of Sept. 11, 2001, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) .................. *passim*

In re Terrorist Attacks of Sept. 11, 2001, 392 F. Supp. 2d 539 (S.D.N.Y. 2005) .................. *passim*

Wright v. Ernst & Young, LLP, 152 F.3d 169 (2d Cir. 1998) ......................................................... 4

## STATE CASES

American Feeds & Livestock Co. v. Kalfco, Inc., 540 N.Y.S.2d 354 (3d Dep't 1989) ................... 8

Hoekstra v. Bose, 707 N.E.2d 185 (Ill. App. Ct. 1998) ................................................................... 6

Johnson v. Ward, 4 N.Y.3d 516 (N.Y. 2005) ................................................................................... 5

Lawlor v. District of Columbia, 758 A.2d 964 (D.C. 2000) ........................................................... 8

Roderick v. Roderick, 776 S.W.2d 533 (Tenn. Ct. App. 1989) ....................................................... 6

## FEDERAL STATUTES

18 U.S.C. § 2333 .............................................................................................................................. 8

18 U.S.C. § 1962 .............................................................................................................................. 9

42 U.S.C. § 14503 .......................................................................................................................... 10

## ARGUMENT IN REPLY

Its rhetoric aside, Plaintiffs' consolidated Opposition is striking for what it concedes and what it omits. First, Plaintiffs do not dispute that their sparse allegations against Mr. Bin Mahfouz are essentially the *same* allegations as those asserted against him in *Burnett* – allegations which this Court has already held cannot give rise to personal jurisdiction over him. *See In re Terrorist Attacks of Sept. 11, 2001*, 349 F. Supp. 2d 765, 806, 820-21 (S.D.N.Y. 2005) (hereinafter "*Terrorist Attacks I*"). And, tellingly, Plaintiffs make absolutely *no* effort to explain why that prior ruling in *Burnett* (which this Court recently entered as a Rule 54(b) final judgment) should not also dispose of these other complaints. Plaintiffs' half-hearted request for leave to take jurisdictional discovery should also be denied because it rests on irrelevant allegations that do not create any genuine issue of jurisdictional fact.

Second, Plaintiffs have not alleged any facts that could state cognizable claims against Mr. Bin Mahfouz. Plaintiffs' Opposition (like the underlying Complaints) relies entirely upon the allegations (borrowed from *Burnett*) that Mr. Bin Mahfouz once served as a "director" of the Blessed Relief charity, and also as an executive of National Commercial Bank. But Plaintiffs have not alleged any *facts* showing that Mr. Bin Mahfouz participated in, approved of, or even knew of any conduct that furthered Blessed Relief's or NCB's roles as alleged "funnels" for al Qaeda's finances.

In sum, nothing in Plaintiffs' filings against Mr. Bin Mahfouz adds to the allegations and arguments already rejected by this Court. The Court should follow its prior ruling in *Burnett* and dismiss the claims asserted against Mr. Bin Mahfouz.

I. **THIS COURT LACKS PERSONAL JURISDICTION OVER MR. BIN MAHFOUZ.**

A. **Plaintiffs Have Failed To Allege that Mr. Bin Mahfouz "Purposefully Directed" His Conduct at the United States.**

Plaintiffs' Opposition baldly contends that they have alleged "facts from which to infer that Mr. Bin Mahfouz purposefully directed" his conduct at the United States, namely (1) "the specific facts that through 1999 ABM [Mr. Bin Mahfouz] knew of and/or participated in the channeling of $3 million to al Qaeda front Blessed Relief," and (2) "the specific facts that through 1999 ABM [Mr. Bin Mahfouz] knew of and/or participated in the channeling of $74 million to al Qaeda front IIRO." Opp. at 8-9. Plaintiffs' claim fails for several reasons.

First, the only *facts* alleged in the Complaints are Mr. Bin Mahfouz's alleged positions in "the organizational structure[s] of Blessed Relief and the NCB." Opp. at 2. But the "specific facts" set forth above are nothing more than argumentative inferences derived from Mr. Bin Mahfouz's positions as a director and executive of Blessed Relief and NCB. Plaintiffs volunteer as much elsewhere in their papers. *See, e.g.,* Opp. at 4 (noting the "*inference* that this $3 million transfer [from NCB to Blessed Relief] was knowingly and intentionally made by ABM [Mr. Bin Mahfouz]") (emphasis added); *id.* at 6 (arguing for an "inference" that Mr. Bin Mahfouz "knowingly and intentionally provided financial support to al Qaeda"). This Court has made clear that it will not accept such "'argumentative inferences'" when determining questions of personal jurisdiction. *Terrorist Attacks I*, 349 F. Supp. 2d at 804 (quotation omitted).

Second, this Court already has held that the allegations regarding Mr. Bin Mahfouz's supposed positions with Blessed Relief and NCB cannot give rise to personal jurisdiction over him on a "purposefully directed" theory. *See Terrorist Attacks I*, 349 F. Supp. 2d at 809. In dismissing Mr. Bin Mahfouz from *Burnett*, this Court held that to prevail on that theory of jurisdiction, the *Burnett* plaintiffs needed to allege "some *personal or direct involvement* by the Defendant[] *in the conduct giving rise to their claims*," *Terrorist Attacks I*,

2

349 F. Supp. 2d at 809 (emphasis added).[1] Like the already-dismissed *Burnett* complaint, plaintiffs' Complaints do not "contain any specific actions by Mr. [B]in Mahfouz from which the Court could infer that he purposefully directed his activities at the United States." *Id.* at 820.

Finally, NCB's donations, even if taken as true and imputed to Mr. Bin Mahfouz, are facially inadequate to establish jurisdiction. As this Court has already held: "Donating money to established humanitarian organizations that may or may not have been diverting funds to support al Qaeda cannot be considered primary participation in intentional wrongdoing expressly aimed at the United States." *In re Terrorist Attacks of Sept. 11, 2001*, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) (hereinafter "*Terrorist Attacks II*").

### B. Plaintiffs Cannot Establish Personal Jurisdiction on a Conspiracy Theory.

Contrary to Plaintiffs' suggestion, Opp. at 10, they have not made "a *prima facie* showing of conspiracy between ABM [Mr. Bin Mahfouz] and al Qaeda to injure America." Again, Plaintiffs' only factual allegations relate to Mr. Bin Mahfouz's alleged positions with Blessed Relief and NCB. When these *precise* allegations were raised by the plaintiffs in *Burnett*, *see Terrorist Attacks I*, 349 F. Supp. 2d at 820, this Court held that the *Burnett* complaint did not "allege any specific facts from which the Court could infer" that Mr. Bin Mahfouz "directed, controlled, or requested al Qaeda to undertake its terrorist activities. Nor are there any specific allegations of [his] knowledge of, or consent to, those activities." *Id.* at 806. The Court

---

[1] Plaintiffs' own cited cases (*see* Opp. at 8) are in accord. *See Terrorist Attacks I*, 349 F. Supp. 2d at 809 (noting that the courts in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F. Supp. 2d 54 (D.D.C. 2003) and *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000) held that to establish personal jurisdiction under the "purposefully directed" theory, "[p]laintiffs must allege some personal or direct involvement by the Defendants in the conduct giving rise to their claims"); *In re Terrorist Attacks of Sept. 11, 2001*, 392 F. Supp. 2d 539, 558 n.5 (S.D.N.Y. 2005) (hereinafter "*Terrorist Attacks II*") (distinguishing *Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005), on the same basis).

3

accordingly held that as to Mr. Bin Mahfouz, "personal jurisdiction cannot be based on a New York long-arm conspiracy theory." *Id.* A similar ruling is warranted in these cases.

### C. Plaintiffs Have Failed To Allege Minimum Contacts with the United States.

In his opening memorandum, Mr. Bin Mahfouz explained that (1) it is not clear whether general personal jurisdiction may be exercised over foreign non-resident individuals, but (2) even if such exercise was proper, Plaintiffs have failed to allege sufficient contacts with New York or the United States sufficient to give rise to general or specific personal jurisdiction over him. *See* Bin Mahfouz Mem. at 6-9. Mr. Bin Mahfouz further explained why none of the four jurisdictional allegations proffered against him by the *Continental Casualty* plaintiffs gave rise to general or specific personal jurisdiction. *See id.* at 7-9 (collecting cases). Plaintiffs' Opposition concedes Mr. Bin Mahfouz's argument, as Plaintiffs neither dispute his analysis, nor attempt to distinguish the various cases cited by him.

Instead, Plaintiffs' Opposition sets forth four additional allegations that purportedly confer personal jurisdiction over Mr. Bin Mahfouz. Even assuming that Plaintiffs could cure their deficient allegations in their papers (which they cannot),[2] none of the alleged contacts is relevant to the Court's jurisdictional analysis. Indeed, many of the alleged contacts were previously raised by the plaintiffs in *Burnett*, and considered by the Court when it dismissed Mr. Bin Mahfouz from *Burnett* for lack of personal jurisdiction.

First, Plaintiffs now allege that Mr. Bin Mahfouz "was the founder of a company called Nimir Petroleum, which had a presence in the United States from 1991 through at least

---

[2] *See, e.g., Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (explaining that a party is not permitted to amend its complaint through allegations made in motion papers); *see also Terrorist Attacks I*, 349 F. Supp. 2d at 818 (citing *Wright*).

2000." Opp. at 12. But when this precise allegation was raised by the plaintiffs in *Burnett*,[3] this Court held that Mr. Bin Mahfouz's affiliations with Nimir Petroleum and other "entities that are alleged to have U.S. contacts will not sustain jurisdiction," *Terrorist Attacks I*, 349 F. Supp. 2d at 820, and further held that "being a shareholder in a United States company is not sufficient to establish general personal jurisdiction over Mr. [B]in Mahfouz." *Id.* at 820-21.

Second, Plaintiffs allege that "ABM's [Mr. Bin Mahfouz's] Nimir Petroleum company borrowed money from United States banks in the 1990s." Opp. at 12. This allegation is a close cousin of the allegation set forth above, and is equally irrelevant to this Court's jurisdictional analysis (especially as plaintiffs do not allege that Nimir's borrowing of funds is related to al Qaeda's activities, or that Nimir's actions can be imputed to Mr. Bin Mahfouz).

Third, Plaintiffs allege that "ABM invested up to $30 million dollars in a United States company." Opp. at 12. That allegation is irrelevant because passive investments (even if made during the six-year period preceding the 9/11 attacks)[4] are insufficient to give rise to personal jurisdiction over Mr. Bin Mahfouz. *See* Bin Mahfouz Mem. at 7-9 (collecting cases); *see also In re Terrorist Attacks I*, 349 F. Supp. 2d at 820-21.

Fourth, Plaintiffs allege that Mr. Bin Mahfouz once had a Texas driver's license. *See* Opp. at 12. Even if true, that allegation is irrelevant because a non-resident's mere possession of a driver's license "is too insubstantial to warrant a New York court's exercise of personal jurisdiction" over that non-resident pursuant to the state's long-arm statute. *Johnson v.*

---

[3] *See Terrorist Attacks I*, 349 F. Supp. 2d at 820 (reciting the *Burnett* plaintiffs' allegation that Mr. Bin Mahfouz "is a shareholder and the CEO of former Defendant Nimir, LLC, also known as Nimir Petroleum Ltd.").

[4] *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (explaining that a defendant's "continuous and systematic contacts" with a forum must be examined over a period of time and finding a six-year period reasonable); *Terrorist Attacks II*, 392 F. Supp. 2d at 559 (citing *Metro. Life Ins. Co.*).

5

*Ward*, 4 N.Y.3d 516, 520 (N.Y. 2005). *Accord, e.g., Hoekstra v. Bose*, 707 N.E.2d 185, 189 (Ill. App. Ct. 1998) ("Bose's possession of an Illinois driver's license is not sufficient contact to reach the minimum standard necessary for this State to exercise *in personam* jurisdiction over him."); *Roderick v. Roderick*, 776 S.W.2d 533, 535 n.2 (Tenn. Ct. App. 1989) (non-resident's possession of Tennessee driver's license did "not warrant requiring Mr. Roderick to defend himself in Tennessee's courts"). Nor are these allegations sufficient to meet the strict threshold of substantial, "systematic and continuous" contacts needed for general personal jurisdiction. *See, e.g., Lyons v. Swift Transp. Co.*, No. 01-0209, 2001 WL 1153001, at *3, 5 (E.D. La. Sept. 26, 2001) (non-resident corporation's employment of "four employees with Louisiana driver's licenses" and other contacts were "insufficient to establish general personal jurisdiction").

### D.  Plaintiffs Are Not Entitled to Jurisdictional Discovery.

Having failed to allege any relevant facts to support jurisdiction over Mr. Bin Mahfouz, Plaintiffs are not entitled to a fishing expedition in hope of finding some. As this Court has already recognized, "[c]ourts are not obligated to subject a foreign defendant to discovery . . . where the allegations of jurisdictional facts, construed in plaintiffs' favor, fail to state a basis for the exercise of jurisdiction or where discovery would not uncover sufficient facts to sustain jurisdiction.' *Terrorist Attacks I*, 349 F. Supp. 2d at 812 (citing cases). That is why the Court denied the *Burnett* plaintiffs' request for leave to take jurisdictional discovery of Mr. Bin Mahfouz, and a similar ruling is warranted here.

In sum, Plaintiffs have not alleged: (1) any relevant contacts between Mr. Bin Mahfouz and the United States, let alone any relevant "systematic and continuous" contacts, nor (2) any specific conduct by Mr. Bin Mahfouz himself from which the Court could infer that he "directed, controlled, or requested al Qaeda to undertake its terrorist activities" or that he had "knowledge of, or consent[ed] to those activities." *Terrorist Attacks I*, 349 F. Supp. 2d at 806

6

(dismissing Mr. Bin Mahfouz from *Burnett* for lack of personal jurisdiction). Nor have plaintiffs "provided an outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery." *Id.* at 813 (dismissing similar claims against Prince Sultan for lack of personal jurisdiction) (internal quotation omitted). Because "Plaintiffs have not identified any genuine issue of jurisdictional fact," they should not be allowed to take even limited discovery of this foreign defendant. *Id.* at 814 (denying plaintiffs' motion for leave to take jurisdictional discovery from Prince Turki).

\*   \*   \*

If the Court determines (as it did in *Burnett*) that it lacks personal jurisdiction over Mr. Bin Mahfouz, then it need not reach the following arguments regarding Plaintiffs' failure to state cognizable claims against him. *See Terrorist Attacks I*, 349 F. Supp. 2d at 820-21.

## II.   PLAINTIFFS HAVE FAILED TO STATE COGNIZABLE CLAIMS AGAINST MR. BIN MAHFOUZ.

This Court has made clear that while Rule 8 sets forth a relaxed pleadings standard, "[a] complaint alleging conclusions without supporting facts will not survive a Rule 12(b)(6) motion"). *Terrorist Attacks I*, 349 F. Supp. 2d at 835 (granting Arab Bank's Rule 12(b)(6) motion to dismiss). Plaintiffs' papers are littered with conclusory allegations regarding Mr. Bin Mahfouz's alleged support of al Qaeda and its terrorist agenda. However, Plaintiffs allege no *facts* in support of those bare conclusions – and thus their claims fail as a matter of law.

### A.   Plaintiffs' Allegations Against Mr. Bin Mahfouz Do Not State a Claim Under the Anti-Terrorism Act ("ATA").

Plaintiffs' ATA claims are deficient in two respects: (1) they fail to allege specific facts showing Mr. Bin Mahfouz knowingly and intentionally supported al Qaeda; and (2) they fail to allege the necessary direct relationship between Mr. Bin Mahfouz's alleged conduct and the September 11 attacks, which is required by the statute's "by reason of"

7

requirement. *See* 18 U.S.C. § 2333 (2000).

In response, Plaintiffs urge that they have "pleaded facts" sufficient to "show that ABM [Mr. Bin Mahfouz] deliberately provided substantial financial assistance to al Qaeda, with knowledge that al Qaeda was waging war on America." Opp. at 17. But as explained *supra* at 2, those "facts" are really just argumentative inferences that need not be credited. In fact, Plaintiffs' Complaints pled that it was *NCB* (*not* Mr. Bin Mahfouz) that transferred funds to Blessed Relief and IIRO. Plaintiffs did not plead any facts to show that Mr. Bin Mahfouz authorized, directed, or was otherwise involved in NCB's alleged handling of the charities' accounts, or that he otherwise aided and abetted or conspired with al Qaeda. Thus, Plaintiffs' ATA claim fails as a matter of law. *See Terrorist Attacks I*, 349 F. Supp. 2d at 828-29.

**B.     Plaintiffs' Allegations Against Mr. Bin Mahfouz Are Barred by Well-Settled Principles of Corporate Law.**

Plaintiffs do not dispute that under New York law (as elsewhere) a corporate officer may be personally liable for his corporation's tortious actions "only when he or she knowingly participated in the wrong . . . ." Bin Mahfouz Mem. at 15 n.15 (quoting *Am. Feeds & Livestock Co. v. Kalfco, Inc.*, 540 N.Y.S.2d 354, 355 (3d Dep't 1989)); *see also* Opp. at 18 (acknowledging that a corporate officer's personal liability hinges on whether he "participates in the commission of a tort"). And while Plaintiffs incorrectly fault Mr. Bin Mahfouz's citation to *Lawlor v. District of Columbia*, 758 A.2d 964 (D.C. 2000), that case (like the other authority cited by Mr. Bin Mahfouz) confirms that a corporate officer's personal liability depends upon some actual "act or omission" by the officer contributing to the corporation's allegedly tortious conduct. *See* Opp. at 19 (quoting *Lawlor*, 758 A.2d at 977). Here, of course, Plaintiffs have not alleged any "act or omission" by Mr. Bin Mahfouz that would make him personally liable for the alleged tortious conduct of Blessed Relief or NCB.

8

### C. Plaintiffs Have Not Adequately Pled Any RICO Violation by Mr. Bin Mahfouz.

Plaintiffs' Opposition baldly contends that "Plaintiffs' complaints and RICO Statements assert RICO claims against ABM [Mr. Bin Mahfouz] pursuant to 18 U.S.C. §§ 1962(a), (c), and (d)." Opp. at 21. That is simply not the case. No Complaint pleads facts that Mr. Bin Mahfouz invested racketeering income or that Plaintiffs' injuries resulted from that investment – and thus the Complaints fail to assert RICO claims under subsection (a). *Terrorist Attacks I*, 349 F. Supp. 2d at 827. Plaintiffs' claims under subsection (c) likewise fail because Plaintiffs did not plead any facts showing that Mr. Bin Mahfouz played "'some part in directing' the 'operation or management'" of that enterprise." *Id.* Finally, Plaintiffs' claims under subsection (d) also fail because "to state a claim under [§ 1962(d)], the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Id.* Plaintiffs here have not done so.[5]

### D. Plaintiffs' Claims Against Mr. Bin Mahfouz Are Barred by the First Amendment of the United States Constitution and the Volunteer Protection Act, 42 U.S.C. §§ 14501 et seq.

Plaintiffs' lone argument against the application of *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982), and its progeny is that "Plaintiffs' suit against ABM [Mr. Bin Mahfouz] is not based upon his association with the NCB or Blessed Relief. Instead, plaintiffs' action is based entirely on ABM's use of these organizations to channel money to al Qaeda." Opp. at 19. But plaintiffs allege no *facts* to support that conclusion, other than Mr. Bin Mahfouz's positions (*i.e.*, his "association") with NCB and Blessed Relief. As for the Volunteer Protection Act, plaintiffs do not dispute that Blessed Relief is a nonprofit charitable organization

---

[5] Plaintiffs also assert in passing that their belated RICO Statements are not untimely. *See* Opp. at 22 (incorporating by reference arguments from another brief). The Court has already rejected that argument, *see* MDL Docket No. 1144 (entered Aug. 22, 2005), and need not revisit its prior ruling.

9

that is covered by the statute, and their own Complaints allege that Mr. Bin Mahfouz served as a "director" of that charity. So, too, plaintiffs have not alleged any *facts* that, if proven, would divest Mr. Bin Mahfouz of the statute's protections on director liability. *See* 42 U.S.C. § 14503.

    E.    **Plaintiffs Have Failed To State a Claim Under the Alien Tort Claims Act ("ATCA"), the Torture Victim Protection Act ("TVPA"), or Any State Law Cause of Action.**

The alien Plaintiffs' claim under the ATCA is barred as a matter of law because while aircraft hijacking may give rise to a claim under the ATCA, *see Terrorist Attacks II*, 392 F. Supp. 2d at 565, those Plaintiffs failed to allege facts to demonstrate that Mr. Bin Mahfouz knowingly aided and abetted or conspired with the 9/11 hijackers. *Id.* Plaintiffs have sensibly dropped their legally infirm TVPA claim against Mr. Bin Mahfouz. *See* Opp. at 24 n.8. Plaintiffs' state law claims fail for the reasons set forth in Mr. Bin Mahfouz's opening memorandum of law and this Court's prior rulings.

## CONCLUSION

For the foregoing reasons and those set forth in Mr. Bin Mahfouz's opening memorandum of law, the claims asserted against him in *Ashton*, *Federal Insurance*, *Continental Casualty*, and *New York Marine* should be dismissed with prejudice.

Dated: January 20, 2006

    Respectfully submitted,

    WILLIAMS & CONNOLLY LLP

    By: _____
        Gerald A. Feffer (GF-2179)
        Peter J. Kahn (PK-3611)
        John L. Cuddihy (JC-4015)

    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    (202) 434-5000

    Attorneys for Defendant Abdulrahman Bin Mahfouz

## CERTIFICATE OF SERVICE

I hereby certify that, on the 20th day of January, 2006, I caused true and correct copies of the foregoing "Consolidated Reply Memorandum of Law In Further Support of Defendant Abdulrahman Bin Mahfouz's Motion to Dismiss Plaintiffs' Complaints With Prejudice" to be filed and served electronically via the Court's ECF system.

_____
John L. Cuddihy