UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Terrorist Attacks on September 11, 2001** | **03 MDL 1570 (RCC)**<br><br>**ECF Case** |

This document relates to:        Cantor Fitzgerald & Co., et al. v. Akida
                                 Bank Private Ltd., et al. (04 CV 7065)

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.**</u>

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT................................................................................1

I.    PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH  PERSONAL
JURISDICTION OVER DMI S.A..................................................................2

    A.    There Is No General Jurisdiction Over DMI S.A........................................2

    B.    There Is No Specific Jurisdiction Over DMI S.A. Because Plaintiffs Concede
That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not
Show  That DMI S.A. Expressly Aimed Any Tortious Acts At The  United
States........................................................................................................2

II.    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST
DMI S.A. ....................................................................................................3

    A.    Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule
8.............................................................................................................3

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action
By DMI S.A. Or That Any Of Its Actions Proximately Caused Plaintiffs'
Injuries. .................................................................................................4

    C.    Plaintiffs Do Not State A Claim Under Any Of Their Eight Causes Of
Action.....................................................................................................7

        1.    Plaintiffs Have Failed To State A Trespass Claim (Count 1)..............7

        2.    Plaintiffs Have Failed To State An ATA Claim (Count 2). .................7

        3.    Plaintiffs Have Failed To Sufficiently Plead A RICO Claim (Count
3)............................................................................................8

        4.    Plaintiffs Have Failed To Sufficiently Plead A Claim For  Aiding And
Abetting A Violation of International Law (Count 9).........................8

        5.    Plaintiffs Concede That Their Causes Of Action for Conspiracy,
Aiding and Abetting, and Punitive Damages Are Not Independent
Claims (Counts 10-12)..............................................................9

        6.    Plaintiffs Fail To State Their Contribution And Indemnity Claim
(Count 13). .............................................................................9

III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.........................10

CONCLUSION...........................................................................................10

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its motion to dismiss (Docket No. 1213). For all the reasons set forth herein and in the remainder of the record, the Court should grant the motion in its entirety.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion, and as DMI S.A.'s Initial Memorandum made clear, "[t]he major thrust of DMI's argument" is *not* "that DMI cannot be held liable because DMI did not, itself, carry out the September 11 attacks." See Plaintiffs' Memorandum of Law in Opposition (Docket No. 1557) ("Opp."), at 2. The primary point of DMI S.A.'s motion to dismiss the *Cantor Fitzgerald* First Amended Complaint ("FAC") is that the *Cantor Fitzgerald* plaintiffs have failed to proffer a single allegation of specific fact in support of their attempt to tie DMI S.A. to a global terrorist conspiracy and hold DMI S.A. liable for a terrorist mass murder, or for that matter even to establish this Court's jurisdiction over DMI S.A. See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1214) ("Initial Memorandum" or "Init. Mem.") (Introduction).[1]

Plaintiffs here largely ignore that argument, instead choosing to attempt to recast their allegations into something other than what is actually contained in their pleadings. Plaintiffs also blithely ignore both this Court's holdings in its January 18, 2005 Order and the authority set out by DMI S.A. in its Initial Memorandum. Plaintiffs ignore the Court's holdings that (i) conclusory allegations are insufficient to establish jurisdiction or to state a claim; (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability; and (iii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries. Compare In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805, 809, 835 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") with Opp. at 1, 9-14, 17-18, 23-25. Moreover, plaintiffs are silent as to the Court's holding that to plead jurisdiction or state claims based upon a theory of conspiracy, they must make a *prima facie* showing of conspiracy and of DMI S.A.'s participation in it (and again, that conclusory allegations do not suffice). Compare id. at 805-6 with Opp. at 23-25.

_____

[1] DMI S.A.'s Initial Memorandum moved to dismiss the *Cantor Fitzgerald* plaintiffs' FAC and RICO Statement as to DMI S.A. (Docket No. 630), filed on January 14, 2005.

In both in their Complaint and Opposition plaintiffs offer *nothing* to support the grave, offensive assertion that DMI S.A. had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading can be remedied by an opportunity to replead.  Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

## I.
## PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A.

**A.    There Is No General Jurisdiction Over DMI S.A.**

Plaintiffs do not dispute, and therefore concede that, as described in the Initial Memorandum, plaintiffs have not alleged facts showing that DMI S.A. has had continuous and systematic general business contacts with New York or the United States.  See Init. Mem. at 5, 7-8.[2]

**B.    There Is No Specific Jurisdiction Over DMI S.A. Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The  United States.**

Plaintiffs do not dispute, and therefore concede, that plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage their meritless assertion of personal jurisdiction over DMI S.A.  See Init. Mem. at 5-7; see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" is insufficient to establish personal jurisdiction on a New York long-arm conspiracy theory).

Rather, plaintiffs seek, absent citation to *any* factual allegations, to invoke specific personal jurisdiction over DMI S.A. based on its purported purposeful direction of some "conduct" here. See Opp. at 23.  It is no accident that plaintiffs fail to cite to any factual support for such an assertion because plaintiffs allege no wrongful conduct by DMI S.A. at all.  See Init. Mem. at 8 n.3. Nowhere in the Opposition -- or in the allegations from their FAC or RICO Statement -- do plaintiffs point to *any* "specific facts from which the Court could infer that [DMI S.A.] directed,

---

[2]  Plaintiffs' failure to respond to a defense raised by a defendant in a dispositive motion concedes such defense.  See Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

controlled, or requested al Qaeda to undertake its terrorist activities," <u>see</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 806; nor do they "allege personal acts by [the defendant] by which [it] purposefully directed [its] activities at the United States," <u>see</u> <u>id</u>. at 816; nor do they sufficiently aver that DMI S.A. "expressly aimed" any (unalleged) tortious act at the forum, <u>see</u> <u>id</u>. at 809.  Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by any specific allegations of fact.  <u>See</u> Init. Mem. at 5-9.  This Court has already held, however, that plaintiffs may not "circumvent the jurisdictional hurdle . . . by inserting vague and conclusory allegations of tortious conduct in their complaints -- and . . . rely[ing] on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations. . . ." <u>Id</u>. at 801. Thus, the Court has no specific jurisdiction, and the Complaint must be dismissed.[3]

## II.
## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.

### A.    Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.

Plaintiffs do not contest DMI S.A.'s argument that the FAC improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI S.A.  <u>See</u> Init. Mem. at 1 n.1, 10-11 (citing cases).  Instead, plaintiffs contend that <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), <u>Pelman v. McDonalds Corp.</u>, 396 F.3d 508 (2d Cir. 2005), <u>Phelps v. Kapnolas</u>, 308 F.3d 180 (2d Cir. 2002), and <u>Twombly v. Bell Atlantic Corp.</u>, 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI S.A.  <u>See</u> Opp. 7-11.  In <u>Phelps</u>, however, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who,"

_____

[3] Plaintiffs also make the unprecedented argument that, for purposes of invoking personal jurisdiction, they need not satisfy the Due Process requirements of the Fifth Amendment because DMI S.A. is a foreign defendant.  <u>See</u> Opp. at 22-23.  However, none of plaintiffs' case authority concerns issues of personal jurisdiction, <u>see</u> <u>id</u>., so that purported authority is inapposite.  Moreover, in their very next breath, plaintiffs' Opposition favorably cites to a long-standing Supreme Court precedent affording a foreign corporation Due Process protections for purposes of personal jurisdiction.  <u>See</u> Opp. at 23-24, <u>citing</u> <u>Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.</u>, 480 U.S. 102 (1987).  Plaintiffs' Opposition also cites a recent *slip opinion* from the District Court for the District of Columbia, entitled <u>Baker v. Great Socialist People's Libyan Arab Jamahiriya</u>. Plaintiffs there sought personal jurisdiction over defendants under the FSIA, however, <u>see</u> <u>Baker</u> at 1-2, and "the FSIA is not the basis for personal jurisdiction here." <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 809.

"what," "where" and "how" of his injury.  <u>Phelps</u>, 308 F.3d at 187 & n.6.  Similarly, <u>Pelman</u> is

inapposite because the Court in <u>Pelman</u> held only that plaintiffs did not have to plead facts to show

their own contributory negligence.  See <u>Pelman</u>, 396 F.3d at 511-12.  Here, in contrast, plaintiffs

have failed to allege *any* specific facts showing that DMI S.A. committed any wrongful acts or that it

proximately caused plaintiffs' injuries.  Plaintiffs' reliance on <u>Twombly</u> also is misplaced; the

<u>Twombly</u> Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by

directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy)

or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred.  See

<u>Twombly</u>, 425 F.3d at 114-15.  Plaintiffs here, however, neither allege any analogue to price-fixing

"parallel conduct" by DMI S.A. and any other defendant, nor allege any specific facts, such as

communications of assent, showing that DMI S.A. participated in any conspiracy.  See <u>In re Sept. 11

Attacks I</u>, 349 F. Supp. 2d at 805 (holding that plaintiffs must make a prima facie showing of

conspiracy and must allege specific facts warranting the inference that the defendant was a member

of the conspiracy); <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210-11 (2d Cir. 2004).

   In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide

any factual allegations showing when, where, how, or to whom *DMI S.A.* supposedly provided *any*

support to al Qaeda, knowingly or unknowingly.  Simply put, plaintiffs' wholly conclusory

allegations fail to provide DMI S.A. with meaningful notice of the bases of the claims against it, and

Plaintiffs' claims therefore must be dismissed in their entirety.

**B.    <u>Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action
By DMI S.A. Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.</u>**

   Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and

abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege

that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer.  See <u>In re Sept.

11 Attacks I</u>, 349 F. Supp. 2d at 826.  As the Second Circuit has explained, an allegation of

causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting

requires that the defendant have given 'substantial assistance or encouragement' to the primary

wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted).  Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[4] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  Id.

However, plaintiffs' assertion of proximate causation, based on theories of concerted action liability, satisfies none of these elements.  See Opp. at 11-15.  Instead, they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI S.A.]," see Opp. at 13.  Clearly, these conclusory allegations are inadequate to state that DMI S.A. proximately caused *anything*.[5]

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition attempts to put forth "more specific allegations of causation."  See Opp. at 12.  Plaintiffs' Opposition brief asserts that "that DMI [S.A.], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank, and that Al Shamal [supported al Qaeda in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [S.A.] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14.  However, *no such allegations* appear among the actual allegations of the FAC and RICO Statement.

For example, as to DMI S.A. putative support for terrorist training camps, plaintiffs allege that the Sudanese banks Faisal Islamic Bank - Sudan, Tadamon Islamic Bank and al Shamal Islamic

---

[4] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." See Pittman, 149 F.3d at 122 (citations omitted).  As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI S.A.  See Init. Mem. at 21-24.

[5] For example, plaintiffs assert that "DMI [S.A.]'s misconduct includes laundering money for al Qaida."  See Opp. at 10.  Such a conclusory and unsupported assertion is insufficient.  See Init. Mem. at 12 n.6.

Bank have provided banking services to persons associated with al Qaeda, see FAC ¶¶ 127-28, 132-33 and RICO Stmt. ¶ 2, and that DMI S.A. is a "major shareholder" of Al Shamal, see FAC ¶ 123. Plaintiffs have alleged *no facts whatsoever* indicating that DMI S.A. somehow knowingly supported terrorist training camps, in the Sudan or Afghanistan or anywhere else; no facts showing that DMI S.A. "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI S.A. has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI S.A. ever knowingly provided banking services to anyone associated with al Qaeda.[6]  See Init. Mem. at 11-14, 16-17.  Thus, plaintiffs' attempt to recast their allegations, by their Opposition Memorandum, into something other than what they have in fact pleaded, should be rejected out of hand.[7]

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI S.A. are conclusory and boilerplate.  Even with their attempt to recast their allegations into something other than what is in fact pleaded, plaintiffs' Opposition simply does not remedy plaintiffs' failure to allege that DMI S.A. did anything more than provide routine banking services, and make innocuous charitable donations, that according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init. Mem. at 11-14; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  Plaintiffs also have entirely failed to allege facts sufficient to show that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting. See Init. Mem. at 21-24.  Thus, plaintiffs have wholly failed to allege proximate cause.

_____

[6]  Plaintiffs also have alleged no facts showing that DMI S.A. could be held liable for the supposed acts of the Sudanese banks.  Plaintiffs allege, at best, that DMI S.A. is a "major shareholder" of Al Shamal.  See FAC ¶ 123.  Such a conclusory and unsupported allegation wholly fails to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity.  See Init. Mem. at 1 n.1, 14 n.9.

[7]  It is improper to attempt to amend a complaint through an opposition brief.  See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

**C.**      **Plaintiffs Do Not State A Claim Under Any Of Their Eight Causes Of Action.**

**1.**      **Plaintiffs Have Failed To State A Trespass Claim (Count 1).**

Contrary to plaintiffs' assertion, <u>see</u> Opp. at 20, DMI S.A. has never "argue[d] that it cannot be liable for Trespass [] because it did not directly carry out [the September 11, 2001 attacks]." DMI S.A. obviously did not directly carry out the attacks and even the assertions invented in plaintiffs' Opposition do not attempt so to state. Instead, where plaintiffs assert that DMI S.A. aided and abetted a trespass, <u>see</u> FAC ¶ 165, they must allege facts showing that DMI S.A. "gave substantial assistance or encouragement to the primary tortfeasor" and had "actual knowledge" that "[the primary tortfeasor's] conduct constituted a breach of duty." <u>Wantanabe Realty Corp. v. City of N.Y.</u>, 2003 WL 22862646, at *4 & n. 31-32 (S.D.N.Y. Dec. 3, 2003). However, plaintiffs have proffered no factual allegations sufficient to show that DMI S.A. gave "substantial assistance" to al Qaeda, had "actual knowledge" of the attacks, intended any trespass, or proximately caused plaintiffs' injuries by any trespass. <u>See</u> Init. Mem. at 15-16. Accordingly, plaintiffs' claim for trespass should be dismissed.

**2.**      **Plaintiffs Have Failed To State An ATA Claim (Count 2).**

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, <u>compare</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 833 <u>with</u> Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. <u>Compare</u> <u>id.</u> at 835 <u>with</u> Opp. at 11-14. Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their Complaint, such as the non-existent allegation that DMI S.A. provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere." <u>Cf</u>. Opp. at 13. In short, plaintiffs simply make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed. <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the

defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities."); see also Init. Mem. at 16-17.  Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any recipients of donations or banking services] were supporting terrorism."  See id. at 832-33.  Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed.

### 3. Plaintiffs Have Failed To Sufficiently Plead A RICO Claim (Count 3).

Plaintiffs' conclusory, boilerplate RICO allegations regarding DMI S.A. do not state *any* of the requisite elements of a Section 1962(c)[8] civil RICO claim against DMI S.A.  See Init. Mem. at 23-24 (citing cases).  In addition, although plaintiffs admit that "a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise," see Opp. at 16-17, plaintiffs do not allege that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise.  See Init. Mem. at 23-24.  Instead of defending the sufficiency of their conclusory RICO allegations regarding DMI S.A., plaintiffs merely re-state their well-worn boilerplate allegations.  Compare Opp. 17-19 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements. These elements . . . must be tightly particularized . . . . Parroting statutory language . . . is inadequate."), and see also In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 571-72 (S.D.N.Y. 2005) (dismissing RICO claims because allegations of donations of money to entities who later laundered such funds to terrorist groups or conclusory allegations of concerted action were insufficient to state a claim).  For all of these reasons, plaintiffs' RICO claims must be dismissed.

### 4. Plaintiffs Have Failed To Sufficiently Plead A Claim For Aiding And Abetting A Violation of International Law (Count 9).

Plaintiffs do not dispute, and therefore concede, that as described in the Initial Memorandum, plaintiffs' nebulous claim for violation of international law is without merit.  See Init.

---

[8]  Plaintiffs only assert a RICO claim under Section 1962(c), and not any other subsection.  See FAC at 47; RICO Stmt. ¶¶ 1, 11, 12, 14.

Mem. at 19-21 & n.11.  As DMI S.A. previously explained, "[c]ustomary international law alone does not provide a cause of action in federal court in the absence of a federal statute."  Hayden v. Pataki, 2004 WL 1335921, at *7 (S.D.N.Y. June, 14, 2004), citing Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir. 1995); see also Sosa v. Alvarez-Machain, 542 U.S. 692, 728-29, 124 S. Ct. 2739 (2004) (declining to recognize private cause of action for arbitrary arrest under customary international law); Friedman v. Bayer Corp., 1999 WL 33457825, *3 (E.D.N.Y. Dec. 15, 1999). ("customary international law . . . does not create private rights of action for individuals. . . .  Congress has not indicated that a United States citizen may bring a cause of action for violations of customary international law.").  In sum, plaintiffs have no standing to assert their claim for a violation of international law.  See, e.g., Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("private rights of action to enforce federal law must be created by Congress.").  Moreover, no claim for aiding and abetting a violation of international law is available.  See In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 549-50 (S.D.N.Y. 2004) (holding that aiding and abetting a violation of international law is not actionable after Sosa, 542 U.S. 692).

> **5.     Plaintiffs Concede That Their Causes Of Action for Conspiracy, Aiding and Abetting, and Punitive Damages Are Not Independent Claims (Counts 10-12).**

Plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages are not independent claims under New York law.  See Opp. at 22.  The fact that no such claims exist is not a technicality, however, and the Court therefore should dismiss such claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41.

> **6.     Plaintiffs Fail To State Their Contribution And Indemnity Claim (Count 13).**

Instead of addressing the arguments asserted by DMI S.A.'s Initial Memorandum, plaintiffs' attempt to incorporate the "legal and factual arguments" from a previous brief as to a different defendant, without any explanation of how those arguments might apply to their own claims and allegations as to DMI S.A.  See Opp. at 20 n.14.[9]  Nevertheless, plaintiffs do not properly allege any

---

[9]  By relying upon such reference to a separate motion, plaintiffs render it unduly and unnecessarily difficult for DMI S.A. and the Court to discern just what arguments plaintiffs seek to make in opposition to the present motion to dismiss.  See, e.g., Ascione v. Pfizer, Inc. 312 F. Supp. 2d 572, 579 n.6 (S.D.N.Y. 2004).

underlying tort by DMI S.A.; fail to allege that DMI S.A. had any duty to plaintiffs, let alone that it breached any purported duty; and fail to sufficiently allege that DMI S.A. proximately caused their injuries.  See Init. Mem. at 19.

## III.
## PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs' Opposition pays no heed whatsoever to this Court's Opinions and Orders dated January 18, 2005 and September 21, 2005 and the authority set out by DMI S.A.'s Initial Memorandum.  Instead, in a final attempt to avoid dismissal, plaintiffs venture assertions that are unsupported by the actual allegations of their FAC.  Yet, "[e]ven with the opportunity to clarify their claims" in several amended pleadings and RICO Statements, plaintiffs' failure to state any of their claims against DMI S.A. is comprehensive and clear.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33.  There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear.  Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue with prejudice.  See id. at 835; Init. Mem. at 25 (citing cases).

## CONCLUSION

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated:  New York, New York
        January 20, 2006

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/x/_____
    James J. McGuire (JM-5390)

    30 Rockefeller Plaza, 24th Floor
    New York, New York 10112
    (212) 332-3800

    *Attorneys for Defendant DMI Administrative Services S.A.*

Timothy J. McCarthy
Eric S. O'Connor
Of Counsel