UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br><br>ECF Case |
| --- | --- |

This document relates to:     Estate of John P. O'Neill, Sr. v. Al Baraka Inv. &
Dev. Corp., et al. (04 CV 1923)

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
*DMI Administrative Services S.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT................................................................................................1

I   PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH  PERSONAL
JURISDICTION OVER DMI S.A...................................................................................2

    A.   There Is No General Jurisdiction Over DMI S.A.........................................2

    B.   There Is No Specific Jurisdiction Over DMI S.A. Because Plaintiffs Concede
That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not
Show That DMI S.A. Expressly Aimed Any Tortious Acts At The  United
States.............................................................................................................2

II   PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST
DMI S.A. ......................................................................................................................3

    A.   Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule
8.....................................................................................................................3

    B.   Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action
By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs'
Injuries. ........................................................................................................5

    C.   Plaintiffs Do Not State A Claim Under Any Of Their Eleven Causes Of
Action............................................................................................................7

        1.   Plaintiffs Have No Standing Under RICO And, In The Alternative,
Have Failed To Sufficiently Plead A RICO Claim (Count 10). .........7

        2.   Plaintiffs Have Failed To State An ATA Claim (Count 9). ...............8

        3.   Plaintiffs Fail To State Their State Law Causes Of Action (Counts 3-
8, 11). ................................................................................................9

III   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.........................10

CONCLUSION .......................................................................................................10

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its motion to dismiss (Docket No. 1215).  For all the reasons set forth herein and in the remainder of the record, the Court should grant the motion in its entirety.

## PRELIMINARY STATEMENT

Contrary to plaintiffs' assertion, <u>see</u> Opp. at 2, and as DMI S.A.'s Initial Memorandum made clear, "[t]he major thrust of DMI's argument" is *not* "that DMI cannot be held liable because DMI did not, itself, carry out the September 11 attacks."  The primary point of DMI S.A.'s motion to dismiss the *O'Neill* Complaint against it is that the *O'Neill* plaintiffs, as with all others, have failed to proffer a single allegation of specific fact in support of their attempt to tie DMI S.A. to a global terrorist conspiracy and hold DMI S.A. liable for a terrorist mass murder, or for that matter even to establish this Court's jurisdiction over DMI S.A.  <u>See</u> Initial Memorandum in Support of Motion to Dismiss (Docket No. 1216) ("Initial Memorandum" or "Init. Mem.") (Introduction).[1]

Plaintiffs here largely ignore that argument, instead choosing to attempt to recast their allegations into something other than what is actually contained in their pleadings.  Plaintiffs also blithely ignore both this Court's holdings in its January 18, 2005 Order and the authority set out by DMI S.A. in its Initial Memorandum.  Plaintiffs pay no heed to the Court's holdings that (i) conclusory allegations are insufficient to establish jurisdiction or to state a claim; (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability; and (iii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries.  <u>Compare</u> <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 349 F. Supp. 2d 765, 805, 809, 835 (S.D.N.Y. 2005) ("<u>In re Sept. 11 Attacks I</u>") <u>with</u> Opp. at 1, 9-14, 17-18, 23-25.  Moreover, plaintiffs are silent as to the Court's holding that to plead jurisdiction or state claims based upon a theory of conspiracy, they must make a *prima facie* showing of conspiracy and of DMI S.A.'s participation in it (and again, that conclusory allegations do not suffice).  <u>Compare</u> <u>id.</u> at 805-6 <u>with</u> Opp. at 23-25.

---

[1]  Pursuant to the Court's October 27, 2005 Order (Docket No. 1448), DMI S.A. also submitted a Supplemental Memorandum of Law ("Suppl. Mem.") in further support of its Initial Memorandum and in response to the *O'Neill* plaintiffs' 'First Consolidated Complaint' ("Complaint") and More Definite Statement as to DMI S.A. ("MDS") (Docket No. 1338), both filed on September 30, 2005.

In both in their Complaint and Opposition, plaintiffs offer *nothing* to support the grave and odious assertion that DMI S.A. had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading can be remedied by an opportunity to replead. Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

## I

## PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A.

**A.     There Is No General Jurisdiction Over DMI S.A.**

Plaintiffs do not dispute, and therefore concede, that neither the allegation that DMI S.A. held an ownership interest in a Boston firm, nor the allegation that DMI S.A. advertised in United States newspapers, amount to "continuous and systematic" contacts with New York or the United States. See Init. Mem. at 5-6, 8-9; see also In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II").[2]

**B.     There Is No Specific Jurisdiction Over DMI S.A. Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not  Show That DMI S.A. Expressly Aimed Any Tortious Acts At The  United States.**

Plaintiffs do not dispute, and therefore concede, that plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage their meritless assertion of personal jurisdiction over DMI S.A.  See Init. Mem., at 6-7; see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" insufficient to establish personal jurisdiction on New York long-arm conspiracy theory).

Rather, plaintiffs seek, absent citation to *any* factual allegations, to invoke specific personal jurisdiction over DMI S.A. based on its purported purposeful direction of some "conduct" here. See Opp. at 23.  It is no accident that plaintiffs fail to cite to any factual support for such an

---

[2]  Plaintiffs' failure to respond to a defense raised by a defendant in a dispositive motion concedes that defense.  See, e.g., Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

assertion, because plaintiffs allege no wrongful conduct by DMI S.A. at all. See Init. Mem. at 9 n.4. Nowhere in the Opposition -- or in the allegations from their Complaint, RICO Statement, or MDS -- do plaintiffs point to any "specific facts from which the Court could infer that [DMI S.A.] directed, controlled, or requested al Qaeda to undertake its terrorist activities," see In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806; nor do they "allege personal acts by [the defendant] by which [it] purposefully directed [its] activities at the United States," see id. at 816; nor do they sufficiently aver that DMI S.A. "expressly aimed" any (unalleged) tortious act at the forum, see id. at 809. Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by specific allegations of fact. This Court has already held, however, that plaintiffs may not "circumvent the jurisdictional hurdle . . . by inserting vague and conclusory allegations of tortious conduct in their complaints -- and . . . rely[ing] on the federal courts to conclude that some conceivable [] tortious act falls within the purview of these generic allegations. . . ." Id. at 801. Thus, the Court has no specific jurisdiction, and the Complaint must be dismissed.[3]

## II

## PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.

### A.   Plaintiffs' Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.

Plaintiffs do not contest DMI S.A.'s argument that the Complaint improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI S.A. See Init. Mem. at 1 n.2, 11-12 (citing cases). Instead, plaintiffs contend that Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002), and Twombly v. Bell Atlantic Corp.,

---

[3] Plaintiffs also make the unprecedented argument that, for purposes of invoking personal jurisdiction, they need not satisfy the Due Process requirements of the Fifth Amendment because DMI S.A. is a foreign defendant. See Opp. at 22-23. However, none of plaintiffs' case authority concerns issues of personal jurisdiction, see id., so that purported authority is inapposite. Moreover, in their very next breath, plaintiffs' Opposition favorably cites to a long-standing Supreme Court precedent affording a foreign corporation Due Process protections for purposes of personal jurisdiction. See Opp. at 23-24, citing Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102 (1987). Plaintiffs' Opposition also cites a recent slip opinion from the District Court for the District of Columbia, entitled Baker v. Great Socialist People's Libyan Arab Jamahiriya. Plaintiffs there sought personal jurisdiction over defendants under the FSIA, however, see Baker at 1-2, and "the FSIA is not the basis for personal jurisdiction here." See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 809.

425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI S.A.  <u>See</u> Opp. 7-11. In <u>Phelps</u>, however, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury.  <u>Phelps</u>, 308 F.3d at 187 & n.6.  Similarly, <u>Pelman</u> is inapposite because the Court in <u>Pelman</u> held only that plaintiffs did not have to plead facts to show their own contributory negligence.  <u>See</u> <u>Pelman</u>, 396 F.3d at 511-12.  Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI S.A. committed any wrongful acts or that it proximately caused plaintiffs' injuries.  Plaintiffs' reliance on <u>Twombly</u> also is misplaced; the <u>Twombly</u> Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred. <u>See</u> <u>Twombly</u>, 425 F.3d at 114-15.  Plaintiffs here, however, neither allege any analogue to price-fixing "parallel conduct" by DMI S.A. and any other defendant, nor allege any specific facts, such as communications of assent, showing that DMI S.A. participated in any conspiracy.  <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 805 (holding that plaintiffs must make a prima facie showing of conspiracy and must allege specific facts warranting the inference that the defendant was a member of the conspiracy); <u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210-11 (2d Cir. 2004).

In contrast to the facts alleged in the cases cited by plaintiffs, plaintiffs here fail to provide any factual allegations showing when, where, how, or to whom *DMI S.A.* supposedly provided *any* support to al Qaeda, knowingly or unknowingly.[4]  Simply put, plaintiffs' wholly conclusory allegations fail to provide DMI S.A. with meaningful notice of the bases of the claims against it, and Plaintiffs' claims therefore must be dismissed in their entirety.

_____

[4] For example, plaintiffs assert that "DMI [S.A.]'s misconduct includes laundering money for al Qaida."  <u>See</u> Opp. at 10.  Such a conclusory and unsupported assertion is insufficient.  <u>See</u> Init. Mem. at 13 n.8.  Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent are utterly irrelevant.  <u>See</u> Init. Mem. at 14 n.9.

**B.**   **Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action
By DMI S.A Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Under either theory, plaintiffs also must allege a *prima facie* case of concerted action[5] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct. Id.

However, plaintiffs' assertion of proximate causation, based on theories of concerted action liability, satisfies none of these elements. See Opp. at 11-15. Instead, they rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI S.A.]," see Opp. at 13. Clearly, these conclusory allegations are inadequate to state that DMI S.A. proximately caused *anything*.

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition attempts to put forth "more specific allegations of causation." See Opp. at 12. Plaintiffs' Opposition asserts that "that DMI [S.A.], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank, and that Al Shamal [supported al Qaeda

---

[5] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." See Pittman, 149 F.3d at 122 (citations omitted). As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI S.A. See Init. Mem. at 19-21.

in the Sudan]," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [S.A.] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14.  However, *no such allegations* appear among the actual allegations of the Complaint and MDS.

For example, as to DMI S.A. putative support for terrorist training camps, plaintiffs allege only that al Qaeda members "got account" at the Sudanese banks Faisal Islamic Bank (Sudan), Tadamon Islamic Bank, and al Shamal Bank, see MDS ¶¶ 83, 89, 94 and Complaint ¶¶ 37, 47, and that DMI S.A.'s ultimate parent previously held shares in those banks.  See MDS ¶ 23.  Plaintiffs have alleged *no facts whatsoever* indicating that DMI S.A. somehow knowingly supported terrorist training camps, in the Sudan or Afghanistan or anywhere else; no facts showing that DMI S.A. "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI S.A. has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI S.A. ever knowingly provided banking services to anyone associated with al Qaeda.[6]  See Init. Mem. at 12-16, 21-22.  Thus, plaintiffs' attempt to recast their allegations, by their Opposition Memorandum, into something other than what they have in fact pleaded, should be rejected out of hand.[7]

In sum, the overwhelming majority of plaintiffs' allegations regarding DMI S.A. are conclusory and boilerplate.  Even with their attempt to recast their allegations into something other than what is in fact pleaded, plaintiffs' Opposition simply does not remedy plaintiffs' failure to allege that DMI S.A. did anything more than provide routine banking services, and make innocuous charitable donations, that according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init. Mem. at 12-16; In re Sept. 11 Attacks I, 349

_____

[6] Plaintiffs also have alleged no facts showing that DMI S.A. could be held liable for the supposed acts of the Sudanese banks.  Plaintiffs allege, at best, that Al Shamal is an "affiliate" of DMI S.A.  See MDS ¶ 23.  Such a conclusory and unsupported allegation wholly fails to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity.  See Init. Mem. at 1 n.2.

[7] It is improper to attempt to amend a complaint through an opposition brief.  See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions.").  Plaintiffs also have entirely failed to allege facts sufficient to show that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting.  See Init. Mem. at 19-21.  Thus, plaintiffs have failed to allege proximate cause as to any of the pending claims.

**C.   Plaintiffs Do Not State A Claim Under Any Of Their Eleven Causes Of Action.**

**1.   Plaintiffs Have No Standing Under RICO And, In The Alternative, Have Failed To Sufficiently Plead A RICO Claim (Count 10).**

Because the O'Neill plaintiffs' RICO claims seek pecuniary losses arising from personal injuries, see Opp. at 15-16 and MDS ¶¶ 4, 14, those claims must be dismissed for lack of standing.  See Init. Mem. at 23.[8]

Furthermore, although plaintiffs purport to assert claims under Section 1962(a), see Complaint p. 59, and Section 1962(b), see MDS ¶ 17, plaintiffs' Opposition effectively concedes that such claims have no merit.  As to their remaining RICO claims under Sections 1962(c) and (d), plaintiffs' conclusory, boilerplate RICO allegations regarding DMI S.A. do not state any of the requisite elements of a civil RICO claim against DMI S.A., and those claims must be dismissed.  See Init. Mem. at 23-24 (citing cases).  In addition, although plaintiffs admit that "a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise," and that "[t]o sustain a claim under § 1962(d), the plaintiff must allege that the defendant was a 'central figure' in the underlying scheme," see Opp. at 16-17, plaintiffs do not allege that DMI S.A. was a central figure in any endeavor at all or actively managed anything whatsoever, let alone directed the operation of the alleged al Qaeda RICO enterprise.  See

---

[8]  Plaintiffs' citation to Diaz v. Gates, 420 F.3d 897 (9th Cir. 2005) is unavailing.  Diaz' holding plainly is not the law of the Second Circuit, and for good reason: as the dissent in Diaz explained: "the majority's interpretation goes far to read the 'business or property' requirement out of the statute, as there likely may be an indirect, hypothetical, and derivative loss of wages whenever there is a personal injury of a person who is otherwise employed.  Yet it is wrong in theory and imprudent in practice for us to ignore the restrictive language set by Congress."  Diaz, 420 F.3d at 914 (Gould, J., dissenting).

Init. Mem. at 23-24.  Instead of defending the sufficiency of their conclusory RICO allegations regarding DMI S.A., plaintiffs merely re-state their well-worn boilerplate alegations.  Compare Opp. 17-19 with Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) ("RICO is a specialized statute requiring a particular configuration of elements.  These elements . . . must be tightly particularized . . . . Parroting statutory language . . . is inadequate."), and In re Sept. 11 Attacks II, 392 F. Supp. 2d at 571-72.  For all of these reasons, plaintiffs' RICO claims must be dismissed.

### 2.    Plaintiffs Have Failed To State An ATA Claim (Count 9).

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 with Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. Compare id. at 835 with Opp. at 11-14.  Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their Complaint, such as the non-existent allegation that DMI S.A. provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere."  Cf. Opp. at 13.  In short, plaintiffs simply make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities.").  Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any recipients of donations or banking services] were supporting terrorism."  See id. at 832-33.  Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed. For much the same reasons, plaintiffs' claims under the TVPA and ATCA also fail. [9]

_____

[9] Plaintiffs, for the first time and in recognition that their ATCA claim has no merit, suggest that that claim might better be framed as a nebulous claim under international law. See Opp. at 20 n.8. However, plaintiffs recently had the opportunity to and did amend their Complaint without making any such change.

**3.      Plaintiffs Fail To State Their State Law Causes Of Action (Counts 3-8, 11).**

First, plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages (Counts 6, 7 & 11) are not recognized as independent claims under New York law. See Opp. at 22. The fact that no such claims exist is not a technicality, however, and the Court therefore should dismiss such claims with prejudice, so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Second, plaintiffs "disagree[ment]" with the requirement that negligence claims (Counts 5 & 8) require an allegation of an identifiable duty merely and improperly seeks to litigate an issue already decided by the Court. See Opp. at 19 n.7. Moreover, even if some duty could be alleged, plaintiffs fail to allege that DMI S.A. breached any such duty or proximately caused their injuries. See Init. Mem. at 19. Third, plaintiffs wrongful death and survival claims (Counts 3 & 4) fail to allege facts sufficient to satisfy the elements of the claims or that DMI S.A. proximately caused their injuries. See Init. Mem. at 18-19, 19 n.12.

Fourth, plaintiffs' claim for intentional infliction of emotional distress ("IIED") (Count 5) is barred by the applicable one-year statute of limitations. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 829 (citations omitted). Plaintiffs' attempt to avoid this Court's holding by arguing that the IIED claim is somehow "federalized" under the ATA, and thereby its limitations period is governed by federal common law, see Opp. at 21, is without merit. "When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 542 (2d Cir. 1999) (applying New York's one year statute of limitations for battery claims because plaintiffs' federal claim was based upon an intentional contact without consent); Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 935 (S.D.N.Y. 2003) ("[A] federal claim where there is no relevant federal statute of limitations, the controlling period is generally the one provided by the most applicable state law cause of action in the forum state."). In this case, that would render New York's one year statute of limitations applicable, thus barring plaintiffs' cause of action for IIED. Second, plaintiffs have failed to carry their burden to toll limitations because they have failed to "plead[] with *particularity*, (1) the wrongful concealment by the defendant of its actions; (2) the failure

by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiffs' due diligence to discover the facts." <u>Smith v. Keane</u>, 1998 WL 146225, *4-5 (S.D.N.Y. Mar. 25, 1998) (rejecting equitable tolling argument for section 1983 assault claim); <u>see also</u> <u>In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.</u>, 2004 WL 487222, at *3 (S.D.N.Y. Mar. 12, 2004) ("allegations of fraudulent concealment [to equitably toll the statute of limitations] are subject to the particular pleading requirements set forth in Fed. R. Civ. P. 9(b).").

III

## <u>PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE</u>.

Plaintiffs' Opposition pay no heed whatsoever to both this Court's Opinion and Orders dated January 18, 2005 and September 21, 2005 and the authority set out by DMI S.A.'s Initial Memorandum.  Instead, and in a desperate attempt to avoid dismissal, plaintiffs venture assertions that are not borne out by the actual allegations of their Complaint.  Yet, "[e]ven with the opportunity to clarify their claims" in several amended pleadings, amended RICO Statements and a MDS, plaintiffs' failure to state any of their claims against DMI S.A. remains as complete as one could imagine.  <u>See</u> <u>In re Sept. 11 Attacks I</u>, 349 F. Supp. 2d at 832-33.  There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear.  Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue with prejudice.  <u>See</u> <u>id</u>. at 835; Init. Mem. at 25 (citing cases).

<u>CONCLUSION</u>

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York          Respectfully submitted,
      January 20, 2006          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:_____/x/_____
    James J. McGuire (JM-5390)

30 Rockefeller Plaza, 24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant DMI Administrative Services S.A.*