UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) ECF Case<br><br>**RICO STATEMENT Applicable to Schreiber and Zindel, Frank Zindel, Engelbert Schreiber, Engelbert Schreiber, Jr.** |

*This document relates to:*   Estate of John P. O'Neill, Sr., *et al.* v. Al Baraka, *et al.* 04 CV 01923 (RCC)

Estate of John P. O'Neill, Sr., *et al.* v. Republic of Iraq, *et al.*, 04 CV 1076 (RCC)

## RICO STATEMENT APPLICABLE TO
## SCHREIBER AND ZINDEL, FRANK ZINDEL,
## ENGELBERT SCHREIBER, ENGELBERT SCHREIBER, JR.

Based on information currently available, plaintiffs submit this RICO statement pursuant to the Case Management Order dated June 15, 2004 and Judge Casey's individual rules, for defendants Schreiber and Zindel, Frank Zindel, Engelbert Schreiber, Engelbert Schreiber, Jr.

Given the extraordinarily complex nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, much information is presently unavailable to plaintiffs, absent discovery. Plaintiffs therefore reserve the right to amend this RICO statement as information is learned and verified through discovery and otherwise.

1. The unlawful conduct is in violation of 18 U.S.C. § 1962(b), (c) and/or (d).

2. The name of the defendants to whom this RICO statement pertains is Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. The alleged misconduct and basis for liability is set forth in Exhibit "A".

3. Not applicable. All known wrongdoers are named as defendants in this action as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)), and other cases brought by other plaintiffs in *In Re Terrorist Attacks on September 11, 2001*, (03-MDL-1570 (RCC)), others. Plaintiffs will separately file RICO statements with respect to the misconduct of the other defendants. Given the vastly complicated nature of the conspiracy and other wrongdoing that led to the events of September 11, 2001, however, much information is unavailable to plaintiffs, and the identities of other wrongdoers may be revealed through discovery or otherwise. Plaintiffs therefore

4. The name of each victim is indicated on the attached hereto as Exhibit "B." The victims consist of (1) all spouses, children, parents, siblings, or heirs of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001 (with the events at the World Trade Center in New York, N.Y., the Pentagon Building in Arlington County, Virginia, and the airliner crash in Shanksville, Pennsylvania, on September 11, 2001, and activities related thereto, collectively referred to herein as "Attack" or "Attacks"); and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001. Exhibit "B" sets forth the names of the decedents killed by the attackers, with the category of "victims" further including their spouses, children, parents, siblings or heirs as set forth above.

reserve the right to amend this RICO statement as information is learned and verified and after discovery or other information is obtained.

The manner in which the victims were injured consists of death, suffering caused by death, and all economic damages resulting from such deaths, and actions of the defendants and their co-conspirators as described herein, including without limitation Paragraph 17 hereof.

5. (a) List of predicate acts and specific statutes violated:

| | |
|---|---|
| Conspiracy to commit murder | NY Penal Law § 105.15; NY Penal Law § 125.25 (xi) |
| Conspiracy to commit arson | NY Penal § 105.15; NY Penal § 150.15 |
| Fraud with Identification Documents | 18 U.S.C. § 1028 |
| Mail Fraud | 18 U.S.C. § 1341 |
| Wire Fraud | 18 U.S.C. § 1343 |
| Financial Institution Fraud | 18 U.S.C. §1344 |

| | |
|---|---|
| Illegal transactions in monetary instruments | 18 U.S.C. § 1956 |
| Money laundering | 18 U.S.C. § 1957 |
| Defrauding the United States Government | 18 U.S.C. § 371 |
| Travel Act | 18 U.S.C. § 1952 |
| Filing false or materially false tax returns | 26 U.S.C. § 7206(1),(2) |
| Engaging in a corrupt endeavor to impede and impair the due administration of the internal revenue laws | 26 U.S.C. § 7212(a) |
| Providing material support of Terrorism | 18 U.S.C. § 2332(b)(g)(5)(B) <br> 18 U.S.C. § 2339A <br> 18 U.S.C. § 2339B <br> 18 U.S.C. § 2339C |

(b) <u>Dates of, the participants in, and a description of the facts surrounding the predicate acts:</u>

| **DATES** | **PARTICIPANTS** | **FACTS** |
|---|---|---|
| mid-1990s to 9/11/2001 | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation |

| | | |
|---|---|---|
| | | or management of the operation of the Enterprise itself.<br><br>Throughout this period, Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to support terrorism and to obfuscate the roles of the various participants and conspirators in Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, which conspiracy culminated in the Attack. |
| Late 1990s to 9/11/2001 | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. undertook the above named actions as part of a conspiracy to commit murder and arson, in that they knew that the Enterprise in which it was participating, Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders, planned to and would commit an act of deadly aggression against the United States in the near future, using the resources and support supplied by Schreiber and |

| | | |
|---|---|---|
| | | Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. |
| Mid-1990s to 9/11/2001 | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself. <br><br> Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. agreed to form and associate with the Enterprise and agreed to commit more than two predicate acts, *i.e.,* multiple acts of murder and arson, in furtherance of a pattern of racketeering activity in connection with the Enterprise. |

(c) Not applicable.

(d) No.

(e) No.

(f) The predicate acts form a pattern of racketeering in that they are repeated, ongoing, continuous, and are a part of the Enterprise's regular way of doing business. Other of the defendants consistently, evenly constantly, laundered money, filed false tax returns, and otherwise impeded and impaired the administration of the tax laws as part of their scheme to conduit money to terrorists, and yet obfuscate their support of Radical Muslim Terrorism, and/or al Qaida and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

(g) The predicate acts relate to each other (horizontal relatedness) as part of a common plan because each act of knowing and intentionally providing financial services and/or money laundering and/or tax evasion allowed certain of the defendants, specifically Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., to surreptitiously provide funds to terrorist organizations, including al Qaida, and/or Radical Muslim Terrorism, and/or International Islamic Front for the Jihad Against the Jews and Crusaders, which conspiracy culminated in the Attack.

6.

a. The Enterprise ("Radical Muslim Terrorism") is comprised of the defendants named in the First Amended Complaint well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

*Alternatively*, the Enterprise ("al Qaida") is comprised of the defendants named in the First Amended Complaint well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)) and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

*Alternatively*, the Enterprise ("International Islamic Front for the Jihad Against Jews and Crusaders") is comprised of the defendants named in the First Amended Complaint well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)), and others, and is a collection of the persons, organizations, businesses, and nations associated in fact.

b. The Enterprise has its origins in the defeat of the Soviets in Afghanistan in the late 1980s, when Osama Bin Ladin ("Bin Ladin") formed and organization called "The Foundation" or "al Qaida." Al Qaida was intended to serve as a foundation upon which to build a global Islamic army. In February, 1998, a declaration was issued, following the holding of a terrorist summit, announcing the formation of the International Islamic Front for the Jihad Against Jews and Crusaders, the precursor of which was the Muslim Brotherhood and the Islamic Jihad. The structure of the Enterprise is an association in fact with common and complex goals that consist of far more than the mere desire to perpetrate the acts of racketeering outlined herein. Rather, the Enterprise utilizes acts of racketeering to further its overall common purposes of: (i) spreading a particularly virulent brand of radical, conservative Islam; (ii) eliminating Western influences in Islamic countries, including Western influences that are perceived to keep in power repressive Saudi-American regimes that are not true to Islam; and (iii) punishing Israel, and the United States for its perceived support of Israel. Radical Muslim Terrorism does not feature a centralized hierarchy, because the lack of a

>
> centralized hierarchy is essential to the Enterprise's clandestine nature and its success. Thus, although al Qaida, for example, had its own membership roster and a structure of "committees" to guide and oversee such functions as training terrorists, proposing targets, financing operations, and issuing edicts, the committees were not a hierarchical chain of command but were instead a means for coordinating functions and providing material support to operations. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. fit neatly into this framework by raising funds for and providing funding to an otherwise providing material support for the members of the Enterprise who engaged in the Attack.
>
> The Enterprise is a sophisticated global terrorist network which uses a variety of business and financial transactions to further its operations. These transactions include but are not limited to transferring funds between accounts to purchase communications equipment, electronics equipment, and land (for use as training camps and to store explosives and weapons). These transactions are accomplished through, *inter alia*, the use of wire transfers and electronic transmissions.
>
> On information and belief, at the time of the September 11th attack, the al Qaida's annual income was approximately $50 million and its assets over a ten-year period ranged between $300 and $500 million dollars. The Enterprise relies upon a global network of banks and financial institutions, including Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., and illegal activity to generate material support to continue its terrorist operations.

   c. No.

   d. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. are associated with the Enterprise.

   e. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. are a member of the Enterprise, and are separate and distinct from the Enterprise.

   f. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. intended to further the Attack and adopted the goal of furthering and/or facilitating that criminal endeavor, which criminal activity culminated in the Attack.

7. The pattern of racketeering activity conducted by Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. is separate from the existence of Radical Muslim Terrorism, and/or the Al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, but was a necessary component to the Attack.

8. The Enterprise conducts terrorism all over the world; the racketeering activity conducted by Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. funds that activity, which activity culminated in the Attack. The usual and daily activities of the Enterprise include recruitment, indoctrination, and the provisioning and operation of training camps, all of which activities are funded by the racketeering activities described herein.

9. The Enterprise benefits by spreading its ideology, by suppressing other forms of Islam, and through the gratification of destroying its perceived enemies.

10. The Enterprise, and the racketeering activities conducted by Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., relies heavily on the American interstate system of commerce for banking, supplies, communications, and virtually all its essential commercial functions, and in that manner affects interstate commerce. The enterprise and the racketeering activities conducted, engaged in, and/or transacted business within and in the United States and elsewhere, and utilized, possessed, used, transferred, owned, leased, operated, and/or controlled assets in the United States and elsewhere. Furthermore, activities and actions of the Enterprise affect interstate commerce as demonstrated by the Attack itself, which was intended to destroy the leading symbol of the United States' leadership in world trade – The World Trade Center- and as such, affected commerce. See Rasul v. Bush, 124 S. Ct. 2686, No. 03-334, 2004 U.S. LEXIS 4760, * 8 (stating that the Attack "severely damaged the U.S. economy").

11. Not applicable.

12. Not applicable.

13.

   a. Radical Muslim Terrorism, and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders "employs" certain individuals, only a few of whose identities are known, including defendant Osama Bin Ladin. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. are associated with the Enterprise.

   b. The Enterprise, Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and the Crusaders, is comprised of the defendants named in the Second Amended Complaint, as well as the defendants in *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.* (SDNY 04-CV-1922 (RCC)), among others, and is a collection of the persons, organizations, businesses, and nations associated in fact. The liable persons are the Enterprise and that which makes up the Enterprise.

14. The history of the conspiracy behind Radical Muslim Terrorism, or the al Qaida, or the International Islamic Front for the Jihad Against Jews and Crusaders could, and has, filled many books, but for purposes of the present RICO Statement, the following is offered. After being turned out of the Sudan in May 1996, al Qaida established itself in Afghanistan, and relied on well-placed financial facilitators, including Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., who laundered funds from Islamic so-called charities and corporations and raised money from witting and unwitting donors. They also relied heavily on certain imams at mosques who were willing to divert the Z*akat*, the mandatory charitable contributions required of all Muslims. Radical Muslim Terrorism, and/or al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders also collected money from employees of corrupted charities. The money raised from these various sources (the "Funds"), including Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., were used by the Enterprise to accomplish its goals, with the knowledge and awareness of Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., of both those goals and the uses to which the Funds were put.

The Funds were used to organize and conduct a complex international terrorist operation intended to inflict catastrophic harm on the United States. The Funds enabled the Enterprise to identify, recruit, groom and train leaders who were able to evaluate, approve and supervise the planning and direction of the Enterprise. The Funds also provided communications sufficient system that gathered information on and formed assessments of the Enterprise's enemies' strengths and weaknesses.

The Funds enabled the Enterprise to establish a personnel system by which, among other things, it recruited and trained persons to inflict the harm (the "Operatives") and provided planning and direction to the Operatives. The funds thus raised were used to, among other things, operate terrorist training camps in Afghanistan, where some recruits were trained in conventional warfare but where the best and most zealous recruits received terrorist training. The curriculum in the camps placed with great emphasis on ideological and religious indoctrination. All trainees and other personnel were encouraged to think creatively about ways to commit mass murder.

The camps were able to operate only because of the worldwide network of recruiters, travel facilitators, and document forgers who vetted recruits and helped them get in and out of Afghanistan. From the ranks of these recruits the nineteen perpetrators of the Attack were selected. None of this would have been possible without the funds supplied by participants and conspirators like Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. Indeed, the Enterprise would not have been successful without enthusiastic participation of all of the conspirators, including Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. In order to identify nineteen individuals willing, able and competent to carry out the Attack, Radical Muslim Terrorism,

and/or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders needed to select from a vast pool of recruits and trainees, which pool would not have been available to it without the assistance provided by Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr.  Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr., with knowledge and intent, agreed to the overall objectives of the conspiracy, and agreed to commit at least two predicate acts and all agreed to participate in the conspiracy, either expressly or impliedly. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself.  Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.  Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. also, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

15. The injuries to business or property suffered by the O'Neill Plaintiff's resulting from the September 11th attack include economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households.  Additionally, the Attack itself was intended to destroy the leading symbol of the United States' leadership in world trade – The World Trade Center - and as such, affected the O'Neill Plaintiff's jobs, businesses, and livelihoods.

16. Plaintiffs' damages – the loss of life and the damages to business and property related thereto that resulted from the actions of the defendants and their co-conspirators, are a direct causal relationship to the violation of the RICO statute, and are not a derivative claim of damage to a third party.  The Plaintiffs, both named and as a class, as described in the complaint, as amended, were the "reasonably foreseeable victims of a RICO violation" and the "intended victims of the racketeering enterprise," (that is, terrorism, the culmination of which was the Attack).

17. Each defendant is jointly and severally liable for all damages sustained by each plaintiff, as set forth in Exhibit "B," subject to the description of victims set forth in paragraph 4 hereof, for the loss of life, and the economic damages, including but not limited, to pecuniary losses, past and future wage losses and profits, loss of business opportunities, loss of and/or damage to tangible and intangible personal property, loss of currency, loss of support, funeral and burial expenses, loss of prospective inheritance, and loss of other economic contributions to the Plaintiffs'/Decedents' households.  The damages for the plaintiffs' collectively are

to be determined at trial, and are in excess of $10,000,000,000.00 prior to trebling, punitive damages, interest, legal fees, and the costs of this suit.

18.

**Estate of John P. O'Neill, et al. v. Al Baraka, et al., 04 CV 1923**

| **Count One** | Torture Victim Protection Act, 28 U.S.C. § 1350 |
|---|---|
| **Count Two** | Alien Tort Claims Act 28 U.S.C. §1350 |
| **Count Nine** | Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, *et. seq*. |
| **Count Ten** | RICO, 18 U.S.C. § 1962(b),1962(c), 1962(d) |
| **Count Twelve** | Foreign State Agencies and Instrumentalities, 28 U.S.C.§ 1605(a)(7), 1606 |

**Estate of John P. O'Neill, et al. v. Iraq, et al., 03 CV 1076**

| **Count Eight** | Anti-Terrorism Act, 18 U.S.C. § 2331, 2333, *et. seq*. |
|---|---|
| **Count Nine** | RICO, 18 U.S.C. § 1964 |

19.  **Estate of John P. O'Neill, et al. v. Al Baraka, et al. 03CV 1923**

| **Count Three** | Wrongful Death |
|---|---|
| **Count Four** | Survival |
| **Count Five** | Negligent and Intentional Infliction or Emotional Distress |
| **Count Six** | Conspiracy |
| **Count Seven** | Aiding and Abetting |
| **Count Eight** | Negligence |

| | |
|:---:|:---:|
| **Count Eleven** | Punitive Damages |

**Estate of John P. O'Neill, et al. v. Iraq, et al., 03 CV 1076**

| | |
|:---:|:---:|
| **Count One** | Wrongful Death |
| **Count Two** | Survival |
| **Count Three** | Economic Damages |
| **Count Four** | Intentional Infliction or Emotional Distress |
| **Count Five** | Loss of Consortium |
| **Count Six** | Loss of Solatium |
| **Count Seven** | Conspiracy |
| **Count Ten** | Punitive Damages |

20. Not applicable

Date: June 15, 2005

        LAW OFFICES OF JERRY S. GOLDMAN
        & ASSOCIATES, P.C.


        BY:_____
           GINA M. MAC NEILL, ESQUIRE
           (GM 0581)



        BY:_____/s/_____
           JERRY S. GOLDMAN, ESQUIRE
           (JG 8445)

           Attorneys for the Plaintiffs
           111 Broadway, 13th Floor
           New York, N.Y. 10006
           212.242.2232

# EXHIBIT "A"

# RICO STATEMENT

# QUESTION # 2

| DEFENDANT | MISCONDUCT | BASIS OF LIABILITY |
|---|---|---|
| Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. | Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. have long provided financial support and other forms of material support to terrorist organizations including Radical Muslim Terrorism, or the al Qaida, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and participated in the operation or management of the operation of the Enterprise itself. Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. conspired to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs and conspired to participate in the operation or management of the operation of the Enterprise itself.<br><br>For many years, the firm of Schreiber and Zindel has been used to launder money for Abdullah Omar Naseef, an individual associated with the SAAR Foundation and Rabita Trust[1], both of which are co-defendants in the above-referenced actions. Laundering the money occurred through the Al Taqwa Bank, also a co-defendant in the above-referenced cases. All three entities, SAAR, Rabita Trust and Al Taqwa Bank have been sanctioned by the U.S. Government.<br><br>Documents from the Government of Liechtenstein reveal that Schreiber and Zindel were "gatekeepers" for laundering funds through Al Taqwa for terrorist recipients, for many years. Some sources in Liechtenstein say that Schreiber and Zindel were instrumental in establishing Al | 18 U.S.C. §§ 1962 (b), 1962(c), 1962(d) |

Taqwa Bank as a shell for this purpose.

Schreiber and Zindel is run by Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. Liechtenstein officials and separate documentation from a variety of sources also claim that Schreiber and Zindel were involved in laundering money from the Iraqi Oil-For-Food Program, along with the Al Qaida.

According to a published report, Engelbert Schreiber and Engelbert Schreiber, Jr. are listed on corporate documents for Nasreddin International Group Ltd. Holding, a co-defendant in this case, and a company which was also sanctioned by the United States Government. This company is owned by Ahmed Idris Nasreddin, the principal owner of Al Taqwa Bank, is an individual who has also been sanctioned United States Government. Since 1993, Engelbert Schreiber, who was later replaced by his son, Engelbert Schreiber, Jr., have been trustees of Nasreddin Group International Limited Holdings, also known as Nasreddin International Group Ltd.

In April 1999, the German intelligence service (BND) reported that Engelbert Schreiber was arrested in August 1997 for money laundering. The 1999 BND report identified Engelbert Schreiber as a significant money launderer, who has had a close relationship with the Caracas/Venezuela mafia families Cuntrera-Caruana-Caldarella.

As a owners and directors of Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. oversaw the activities and had knowledge of the activities that supported the al Qaida and/or Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders.

Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. have long known that accounts, under their control, which were maintained, and

|  | assisted, were being used to solicit and transfer funds to terrorist organizations, including al Qaida and/or Radical Muslim Terrorism and/or the International Islamic Front for the Jihad Against Jews and Crusaders. Despite this knowledge, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. continued to permit, make available, assist, and maintain those accounts.<br><br>As the foregoing demonstrates, Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. thereby knowingly has, for a period of many years, provided critical financial and logistical support to al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders, to support the terrorist organization's global jihad. The September 11th Attack was a direct, intended and foreseeable product of Schreiber and Zindel's, Frank Zindel's, Engelbert Schreiber's and Engelbert Schreiber, Jr.'s participation in the jihadist campaign for al Qaida, and/or Radical Muslim Terrorism, and/or the International Islamic Front for the Jihad Against Jews and Crusaders. |  |

**CERTIFICATE OF SERVICE**

I hereby certify that the attached RICO statement Applicable to Schreiber and Zindel, Frank Zindel, Engelbert Schreiber and Engelbert Schreiber, Jr. was served on all counsel of record by way of electronic filing in the Southern District of New York on June 15, 2005.

Dated: June 15, 2005

BY:_____
GINA M. MAC NEILL, ESQUIRE

---

[1] Specific misconduct regarding Rabita Trust, a co-defendant herein, is provided via RICO Statement Applicable to Rabita Trust. Plaintiffs herein incorporate by reference throughout this document the factual averments and arguments which are contained within its RICO statement Applicable to Rabita Trust, relating to *Estate of John P. O'Neill, et al. v. Al Baraka, et al.*, 04-CV-1923 (RCC), filed on April 7, 2005.