# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*

> *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.*, Case
>     No. 03-CV-9849 (S.D.N.Y.)
> *Federal Insurance Co., et al. v. Al Qaida, et al.*, Case No. 03-CV-6978 (S.D.N.Y.)
> *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.*, Case No. 04-CV-
>     05970-UA (S.D.N.Y.)
> *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.*, Case
>     No. 04-CV-07279-UA (S.D.N.Y.)
> *New York Marine and General Insurance Co. v. Al Qaida, et al.*, Case No. 04-CV-6105
>     (S.D.N.Y.)
> *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development
>     Corp., et al.*, Case No. 04-CV-7280 (S.D.N.Y.)

## AFFIDAVIT OF YESLAM BINLADIN

I, Yeslam Binladin, state under penalty of perjury as follows:

1.      I am one of 54 children of Mohammad Awad Binladin and I make this affidavit in

support of the annexed Motion to Dismiss and to refute false allegations made against me by the

above-captioned plaintiffs.  All my life I have abhorred violence in all its manifestations and

have said so publicly on numerous occasions.  I have never knowingly provided material support

to al Qaeda or any terrorist organization or activity, nor have I explicitly or implicitly authorized

anyone to do so on my behalf.

2.      I was born in Saudi Arabia and was sent abroad to study at around the age of six

and, with the exception of one year when I was approximately eight years old, all of my

schooling was done outside the Kingdom of Saudi Arabia. I graduated from the University of Southern California in Los Angeles in 1977.

3.     My half-brother, Osama Bin Laden ("Osama"), was born to a different mother and he grew up in a different household from me. For that reason, and because I studied abroad from an early age, I had very little contact with Osama while growing up. To the best of my recollection, I have been in Osama's presence only about a half dozen times in my entire life, most of which involved large family gatherings. I have not seen or communicated with Osama Bin Laden in well over 20 years.

4.     I am a citizen of both Saudi Arabia and Switzerland and have been a permanent resident of Geneva, Switzerland since approximately 1985. As a Swiss citizen, I cannot accept the jurisdiction or authority of the courts or laws of nations other than Switzerland. This affidavit is not to be considered in any form as an acceptance of the jurisdiction of the United States courts.

5.     As of the date of this affidavit, I have not been to the Kingdom of Saudi Arabia or any other country in the Middle East since 1987, nor have I been to the United States since in or around 1981. I have never been to Pakistan, Afghanistan or the Sudan.

6.     I have never resided at 634 Stone Canyon Road in Los Angeles, nor have I ever even seen the property. In or about 1983, my brother, Ibrahim, became the owner of that property but placed title to it in my name as his agent. On or about December 29, 1998, a grant deed was recorded transferring record ownership of the property into Ibrahim's name. Attached as Exhibit 1 is a true and correct copy of the grant deed, which recites that I had acquired title as Ibrahim's agent. Because Ibrahim had at all times been the beneficial owner of the property, the Los Angeles County Office of the Assessor issued a notice dated July 6, 1999, confirming that

the grant deed from myself to Ibrahim did not constitute a change in ownership and that no reappraisal would therefore occur. Attached as Exhibit 2 is a true and correct copy of the notice from the Los Angeles County Office of the Assessor.

7.      I have never owned, nor to the best of my recollection, have I ever lived at the other two addresses which plaintiffs claim were "listed" in the late 1990's to a "Yeslam M. Binladin": 125 South Oakhurst Dr., Beverly Hills, CA or 11728 Folkstone Lane, Los Angeles, CA 90077. Although I do not recall all of the addresses I lived at while in school in the 1970's, I am certain I never owned these properties and I certainly did not live at either of these addresses in the 1990s, as I have not even been in the United States in almost 25 years.

8.      In 1981 I established the Swiss company Cygnet S.A., which was later renamed Saudi Investment Company ("SICO"). While SICO has handled some investments for the Saudi Binladin Group ("SBG"), SBG did not establish SICO and does not have any ownership interest in or management control over SICO. SICO was never the "international investment office" or an "arm" of SBG, as plaintiffs claim.

9.      I have never held any position as an officer or director of SBG or any of its subsidiaries, and I have never been involved in the management of that company.   Attached as Exhibit 3 is a true and correct copy of a declaration of the General Manager of SBG confirming that fact. In addition, Plaintiffs should know that the allegation that I am an SBG director is false, as their own consultant, Mr. Brisard, was forced to remove that same claim from versions of his book, *The Forbidden Truth*, after I filed legal proceedings against him in Switzerland in 2002.

10.      By royal decree of the King of Saudi Arabia, I was appointed a member of the Board of the Mohammed Binladin Organization. At the time of the appointment by the King, I

had already left Saudi Arabia and was a resident of Geneva, Switzerland. While I could not refuse the royal decree, I have never signed any documents accepting that appointment, and I have never attended a meeting of the Board. Since my move to Geneva in 1985, I have had no involvement in the management of the Mohammed Binladin Organization or its predecessor company. Attached as Exhibit 4 is a true and correct copy of a certificate of the secretary of the Board of Directors of the Mohammed Binladin Organization attesting to that fact.

11.     Plaintiffs' allegation that I was the "account manager" for two accounts at Deutsche Bank in Geneva associated with SBG and a company called Cambridge Engineering is completely false. I have never had any management relationship with Cambridge Engineering, nor have I had any involvement with the establishment or management of any of those accounts. In fact, I had no knowledge of the existence of those accounts or of Cambridge Engineering until investigators first raised questions about them at some point after September 11, 2001.

12.     In August 1990, in response to Saddam Hussein's invasion of Kuwait, two of my half-brothers, Omar and Haydar Binladin, opened a master account at Swiss Bank Corporation (now UBS) in Geneva for the benefit of the heirs of my father, Mohammad Binladin, who had died in 1967. Sub-accounts were set up in the names of each of more than 50 heirs of Mohammad Binladin, including one sub-account in the name of Osama Bin Laden, and these sub-accounts were funded in August 1990 with a portion of the legal inheritance of each heir. Because I lived in Geneva, I agreed to be listed as an authorized signatory on most of the accounts.

13.     On or about August 20, 1990 all of the sub-accounts were equally funded, including the sub-account held in Osama Bin Laden's name, with $450,000 to each male heir and $225,000 to each female heir of Mohammad Binladin. It is my understanding, based on a

letter from UBS to the Swiss Department of Justice (a copy of which was provided to my Swiss attorney and is attached, along with a translation, as Exhibit 5), that on or about October 28, 1991, $482,000, which constituted virtually the entire balance in the sub-account in the name of Osama, was transferred to an account of Haydar Binladin in Saudi Arabia.   It is my understanding based on the same letter that there was no further activity in this sub-account other than the debit of bank fees and charges and it was subsequently closed by the bank in 1997.

14.   At the time of these transfers in August 1990 and October 1991 (and, in fact, for several years thereafter), I had no knowledge of any allegations that Osama Bin Laden was involved in terrorist activities directed at the United States or at any other country.   In the 1990-91 timeframe, I had not seen and, to the best of my recollection, had not even communicated with Osama in approximately a decade.

15.   During the investigations that started after the events of September 11, 2001, I was questioned by Swiss authorities regarding the account at UBS, as well as other business activities and my relationship to certain family members.   It was my understanding at the time that the Swiss authorities were working in cooperation with the U.S. Federal Bureau of Investigation on their investigation.   Thereafter, on July 22, 2003, the Public Prosecutor's Office of the Swiss Confederation confirmed in writing to my Swiss counsel, Pierre de Preux, that "the detailed examination of Mr. Yeslam Binladin's activities has not revealed the existence of any criminal offence."   The original letter and a certified translation are attached as Exhibit 6. Likewise, by letter dated April 2, 2004, the Acting Public Prosecutor confirmed yet again that its examination of banking and other documents had not led the Public Prosecutor's Office to institute criminal proceedings against me.   The original letter and a certified translation are attached as Exhibit 7.   To this day, more than four years after the events of September 11, 2001,

and after investigation by the Swiss, French, and presumably United States authorities, no charges have ever been filed against me by the Swiss, French, U.S., or any other government relating to alleged terrorist financing or any other alleged support to terrorist organizations. Nor have any of my personal or business banking accounts ever been frozen or seized.

16.  Plaintiffs allege that I donated money to the Muslim World League Cultural Center in Geneva in 2000 and 2001. This is utterly false. I have never made any donations to the Muslim World League Cultural Center in Geneva. Nor am I aware of any involvement by that center in supporting terrorism. I do not know Hani Ramadan.

17.  In 2001, I paid the expenses for flight training at Santa Rosa Aviation in Pensacola, Florida for a friend named Philippe Acharoque. Mr. Acharoque is the former Chief of Police de l'air et des Frontières - PAF - Customs Service in Cannes, France. My private pilot at the time (who is a former United States Navy pilot) and Mr. Acharoque chose the flight school attended by Mr. Acharoque. It is my understanding that the flight instructor at Santa Rosa Aviation was, and is, a friend of my pilot. I have never paid for flight training for any person who I had any reason to believe had any association with terrorism.

18.  I am informed that certain plaintiffs claim that Saudi Marketing and Trading Company is owned by "the family of Mohammed al Attas, the second husband of OBL's mother." This is false. The Saudi Marketing and Trading Company is owned by me and my three full siblings (two brothers and a sister from the same mother). Moree Investment Limited is also owned by me and my three full siblings. Plaintiffs may be confused by the fact that the director of Saudi Marketing and Trading Company is named Ahmed Al Attas. Al Attas is a very common name in Saudi Arabia and, to the best of my knowledge, Ahmed Al Attas is not related to Mohammed al Attas. In any event, no funds have ever been transferred from accounts of

these companies to or for the benefit of Osama Bin Laden or anyone who I understood to be associated with al Qaeda or terrorism.

19.   Plaintiffs make a number of allegations regarding an investigation by a French investigating magistrate named Renaud Van Ruymbeke.  That investigation began some four years ago, and I have repeatedly supplied information as requested by the magistrate.  No charges have been brought against me.  According to media reports, plaintiffs' so-called "expert," Jean-Charles Brisard, is the source of the false allegations about me that have been the basis for Mr. Van Ruymbeke's most recent investigation.  Not only is Mr. Brisard a paid consultant to plaintiffs in this litigation, but I have taken legal action against him in Switzerland for defamatory publications about me, and I have written to the Chairman and to all members of the Banking, Housing and Urban Affairs Committee of the United States Senate challenging his credibility and competence as an "expert" witness.  A true and correct copy of that letter is attached as Exhibit 8.

20.   The events of September 11, 2001 were horrific and beyond the pale of civilized people.  Since that tragic day, I have spoken publicly and repeatedly about my belief that those responsible for this reprehensible act must be brought to justice and held accountable for the pain and suffering they caused to the many innocent victims of this tragedy.

 

 

_____
YESLAM BINLADIN

Sworn to before me this
\_\_\_\_\_day of October 2005


_____
Notary Public
My Commission Expires _____

these                    to or for the benefit of Osama Bin Laden or anyone who I understood to be

                 with al Qaeda or terrorism.

19.     Plaintiffs make a number of allegations regarding an investigation by a French

investigating magistrate named Renaud Van Ruymbeke.   That investigation began some four

years ago, and I have repeatedly supplied information as requested by the magistrate.   No

charges have been brought against me.   According to media reports, plaintiffs' so-called

"expert," Jean-Charles Brisard, is the source of the false allegations about me that have been the

basis for Mr. Van Ruymbeke's most recent investigation.   Not only is Mr. Brisard a paid

consultant to plaintiffs in this litigation, but I have taken legal action against him in Switzerland

for defamatory publications about me, and I have written to the Chairman and to all members of

the Banking, Housing and Urban Affairs Committee of the United States Senate challenging his

credibility and competence as an "expert" witness.   A true and correct copy of that letter is

attached as Exhibit 8.

20.     The events of September 11, 2001 were horrific and beyond the pale of civilized

people.   Since that tragic day, I have spoken publicly and repeatedly about my belief that those

responsible for this reprehensible act must be brought to justice and held accountable for the pain

and suffering they caused to the many innocent victims of this tragedy.

YESLAM BINLADIN

Sworn to before me this
27 day of October 2005

Notary Public
My Commission Expires     INDEFINITE

7

Jonathan Lippman
Consular Agent

# Exhibit 1

RECORDING REQUESTED BY

**98 2354383**

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

Name  Ibrahim Binladin
Street  634 Stone Canyon Rd.
Address Los Angeles, CA 90077
City &
State
Zip

Title Order No. _____ Escrow No. _____

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**8:41 AM   DEC 29 1998**

FEE
$7
E

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T 355 Legal (2-94)

# Grant Deed

THE UNDERSIGNED GRANTOR(s) DECLARE(s)

DOCUMENTARY TRANSFER TAX IS $ __-0-__

This is a bona fide gift and the grantor received nothing in return.

☐ _____ unincorporated area  ☐ City of _____
Parcel No. _4362-015-003_
☐ computed on full value of interest or property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

YESLAM MOHAMMED BINLADIN, a married man

hereby GRANT(S) to  IBRAHIM MOHAMMED BINLADIN, a married man, as his
sole and separate property

the following described real property in the
county of  Los Angeles  , state of California:

Lot 168 of Bel Air, Los Angeles County, CA
as per map recorded in Book 113, Pages
9-17, inclusive, of Maps in the office
of the County Recorder of said County.

This deed is from an agent to his principal conveying real estate
purchased for and with funds of the principal and is for the
purpose of perfecting title to the property and not a change of
ownership per R & TC sec. 62(b).

Dated _December 2, 1998_

_Yeslam Mohammed Binladin_

STATE OF CALIFORNIA _____ Geneva, Canton of Geneva
COUNTY OF _____ Consular Service of the United } ̸S.S.
States of America
On _December 2_ _1998_ before me,
_Mary P. Genoud_
a Notary Public in and for said County and State, personally appeared
_Yeslam Mohammed Binladin_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____  M. P. Genoud
Consular Agent of The United States

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Name _____  Street Address _____  City & State _____

# Exhibit 2



**COUNTY OF LOS ANGELES**
**OFFICE OF THE ASSESSOR**
**OWNERSHIP DIVISION**
500 W. TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2770

KENNETH P. HAHN
ASSESSOR

Date: _7 - 6 - 99_

To: _IBRAHIM M. BINLADIN_

  _634 STONE CANYON RD_

  _LOS ANGELES, CA 90077_

**RE: Investigation of Ownership Change**

Document No.: _98 - 2354383_

Recording Date: _98 - 12 - 29_

Sequence No.: _____

ASSESSOR'S IDENTIFICATION NUMBER: _4362 - 015 - 003_

Sections 60 through 68 of the Revenue and Taxation Code define the meaning of the term "change in ownership". Other sections set forth the law this Office <u>must</u> follow in reaching the conclusion(s) indicated below to the problem(s) presented for investigation.

We have determined the law applicable to this investigation and completed the indicated actions as follows:

___✓___ There has been no "Change in Ownership" as defined by law. The reappraisal previously processed will be reversed. The 19_98 0l0_ Supplemental bill(s) will be canceled, and corrected bills and/or refunds will be issued, as appropriate. Any delinquency penalties, which may have resulted from the original reappraisal, will be waived.

_____ The real property transfer is a "Change in Ownership", as defined by law, and the ___% reappraisal of the property will stand.

_____ The real property transfer is a "Change in Ownership", as defined by law. However, there is a change to the percentage of reappraisal from: _____ to: _____%. Our records will be adjusted to reflect this change.

_____ The real property transfer is a "Change in Ownership". However, the effective date has been changed from: _____ to: _____. This date change may cause an assessment correction for this year and applicable prior years.

_____ Other: _____

_____

_____

Please call _JOHANNA HAN_ at (2~~13~~) _310 - 458 - 2490_ if you have any questions.
           Investigator
OWNERSHIP DIVISION, ROOM _____

NOTICE: This notice is your record of our action on your request for investigation. It is your responsibility to pay all billed tax installments. Disputes involving the assessed value of your property should be formally addressed to the Assessment Appeals Board at (213) 974-1471. If we have indicated that a correction is being made, you have 60 days from the date of receipt of your corrected tax bill to file an appeal.

JWN 128 (8/95)

# Exhibit 3



مجموعة بن لادن السعودية
SAUDI BINLADIN GROUP

21

# DECLARATION

I, Bakr M. Binladin General Manager of the Saudi Binladin Group hereby declare that
Yeslam M. Binladin has no knowledge or involvement in the administration and
management in the affairs of or the companies owned by the Saudi Binladin Group
inside and or outside the kingdom of Saudi Arabia.


Dated 23, November 2001


Bakr M. Binladin

General Manager
Saudi Binladin Group

المرفقات :                           التاريخ :                           الرقم :

شركة ذات مسؤولية محدودة - رأسمالها (٢٢٠) مليون ريال مدفوع بالكامل - س . ت : ٦٨٢٨٤ - المملكة العربية السعودية - جدة ٢١٤٩٢ ص . ب : ٨٩١٨ - تليفون : ٦٦٤٣٠٣٣ - فاكس : ٦٦٤٣٢٢٧/٦٦٤٣٢٢٥ - تلكس : ٥٠٧٤٣٤/٥٠٧٤٣٩
..mited Liability Co. Paid Capital : (220) Million SR - C.R. : 68284 - Saudi Arabia - Jeddah 21492 P. O.Box : 8918 - Tel. : 6643033 - Fax : 6643227/6643225 - Tix. : 507434/507439

# Exhibit 4

**M. BINLADEN COMPANY**
( LIMITED LIABILITY CO. )
C. R. 4031021734





( ذات مسـئولية محـدودة )

س ت/٤٠٣١٠٢١٧٣٤

## TO WHOM IT MAY CONCERN

I, Hassan Ahmed Attas, secretary to the Board of Directors of the Mohammed Binladin Co. do hereby declare that after consulting all the meetings of the said board since the establishment of the Company in July 1990, that Yeslam M. Binladin has not attended a single meeting of these Board Meetings due to his absence outside the Kingdom of Saudi Arabia.

This document was given at his request.



**HASSAN AHMED AL ATTAS**

Jeddah August 19, 2003

Attach : ............................ المرفقات : **Date** : ........................... التاريخ : **No.** : ........................ الرقم :

# Exhibit 5

UBS AG
P.O. Box
CH-8096 Zurich
Tel. +41-1-234 11 11

UBS Schweiz
Compliance

Previously by fax: 031 323 39 39
Office for Declaration of Money Laundering
Federal Office for Police Affairs
To the attn. of Ms. J. Voney
Bundesrain 20
3003 Berne

Dr. Jean-Marc Futterknecht
FG CBRB
St. Annagasse 9, 8001 Zürich
Tel. +41-1-234 43 92
Fax +41-1-234 47 80
Jean-m.futterknecht@ubs.com

www.ubs.com

October 30, 2001

Our reference: CBRB-FTE

## Declaration referring to the letter of the FBC October 2, 2001, "Searching for Terrorists' Money"

Dear Ms. Voney

According to the letter of the FBC dated October 2, 2001, financial matters involving persons mentioned in the attachment to above-mentioned letter of the FBC are to be announced to the Office for Declaration of Money Laundering. Referring to this letter of the FBC, we declare following business connexion, as, according to our documents, Osama BIN LADIN was entitled to participate in this business relation.

**Concerned account:**
USD current account nr. CO-565 167
Opened August 17, 1980 at the former Swiss Bank Corporation in Geneva.

**Bearer of the account:**
Mr. Omar Mohamed A. BIN LADEN and Mr. Haider Mohamed A. BIN LADEN.
Address: P.O. Box 958, Jeddah, Saudi Arabia.
Both bearers have identified themselves with a Saudi Arabian passport.

**Authorized representatives:**
Mr. Yeslam Mohamed A. BIN LADEN and Mr. Osama Mohamed BIN LADIN.
Yeslam Mohamed A. BIN LADEN, however, has only countersigned the power form.

**Financially entitled (according to form A dated August 17, 1990):**
Mr. Osama BIN LADIN

**Account activities:**
On August 20, 1990, USD 450,000.— were transferred on the account. This amount was invested in a trust fund with a duration of one month, and after refund, each time reinvested on the same way, inclusive of interest.

On August 28, 1991, the balance totalled around USD 483,000.—. From this amount, the same day USD 482,000.— were transferred to the Saudi American Bank in Jeddah on behalf of Haider Mohamed BIN LADEN. From then on, the only booking made were the debits of the bank fees and charges.

On October 9, the account has been cancelled.

As a result, this means that the account has effectively been used only on the time between August 20, 1990 and October 28, 1991, and this with an amount of initially USD 450,000.— resp. USD 482,000.— on October 28, 1991.

With best regards

UBS AG

Dr. Jean-Marc Futterknecht
Consultant in legal matters

Gerald Lujei
Vice-director


**UBS**

UBS AG
P.O. Box
CH-8098 Zürich
Tel. +41-1-234 11 11

UBS Schweiz
Compliance

Dr. Jean-Marc Futterknecht
FG CBRB-FTE
St. Annagasse 9, CH-8001 Zürich
Tel. +41-1-234 45 92
Fax +41-1-234 47 80
jean-m.futterknecht@ubs.com

www.ubs.com

*1088163*

**Vorab per Fax: 031-325 39 39**
Meldestelle für Geldwäscherei
Bundesamt für Polizeiwesen
z.Hd. Frau J. Voney
Bundesrain 20
3003 Bern

30. Oktober 2001

Unsere Referenz: CBRB-FTE

**Meldung gemäss Schreiben der EBK vom 2.10.2001 "Suche nach Terroristengeldern"**

Sehr geehrte Frau Voney

Gemäss Schreiben der EBK vom 2.10.2001 sind der Meldestelle für Geldwäscherei Geschäftsbeziehungen zu melden, in welche Personen/Institutionen involviert sind, die im Anhang des genannten EBK-Schreibens aufgeführt sind. Gestützt auf besagtes EBK-Schreiben melden wir Ihnen folgende Geschäftsbeziehung, da gemäss unseren Unterlagen Osama BIN LADIN an dieser Geschäftsbeziehung wirtschaftlich berechtigt war.

**Betroffenes Konto:**
USD-Kontokorrent Nr. CO-565167
Eröffnet am 17.8.1990 beim ehemaligen Schweizerischen Bankverein in Genf.

**Kontoinhaber:**
Mr. Omar Mohamed A. BIN LADEN und Mr. Haider Mohamed A. BIN LADEN.
Adresse: P.O. Box 958, Jeddah, Saudi-Arabien.
Beide Kontoinhaber haben sich mit einem saudi-arabischen Reisepass ausgewiesen.

**Bevollmächtigte:**
Mr. Yeslam Mohamed A. BIN LADEN und Mr. Osama Mohamed BIN LADIN.
Das Vollmachtsformular wurde jedoch nur von Yeslam Mohamed A. BIN LADEN gegengezeichnet.

**Wirtschaftlich Berechtigter (gemäss Formular A vom 17.8.1990):**
Mr. Osama BIN LADIN

**Kontoaktivitäten:**
Am 20.8.1990 wurden USD 450'000.— auf das Konto überwiesen. Dieser Betrag wurde in eine Treuhandanlage mit einer Laufzeit von einem Monat investiert und nach Rückzahlung jeweils in der gleichen Art und Weise inklusiv Zinsen wieder angelegt.

Am 28.10.1991 betrug das Guthaben rund USD 483'000.—. Von diesem Betrag wurden gleichentags USD 482'000.— an die Saudi American Bank in Jeddah zugunsten von Haider Mohamed BIN LADEN überwiesen. Von diesem Zeitpunkt an waren als einzige Buchungen nur noch die Belastungen der Bankgebühren und -spesen zu verzeichnen.

Am 9.10.1997 wurde das Konto aufgelöst.

 **UBS**

Im Ergebnis bedeutet dies, dass das Konto lediglich in der Zeit zwischen dem 20.8.1990 und 28.10.1991 effektiv bankgeschäftlich benutzt worden ist und dies mit einem Betrag von anfänglich USD 450'000.– bzw. USD 482'000.– am 28.10.1991.

Mit freundlichen Grüssen

UBS AG

Dr. Jean-Marc Futterknecht
Rechtskonsulent

Gerald Lulei
Vizedirektor

# Exhibit 6



SCHWEIZERISCHE BUNDESANWALTSCHAFT

MINISTERE PUBLIC DE LA CONFEDERATION

MINISTERO PUBBLICO DELLA CONFEDERAZIONE

PROCURA FEDERALA

---

Procureur général suppl.: Claude Nicati
Assistante du procureur:  Julie Noto Lherminé
Secrétariat:  Janine Pestoni
3003 Berne

Tel.: 031 322 45 30
Fax: 031 322 45 07

E-Mail: claude.nicati@ba.admin.ch

Berne, le 22 juillet 2003

Maître
Pierre de Preux
Avocat
6, rue François-Bellot
1206 Genève

R  2 3 JUIL. 2003

Affaire no. MPC/EAII/1/02/0040

**Objet: Demande d'entraide judiciaire de la France des 14 et 22 mars 2002 concernant M. Yeslam Binladin – Votre courrier du 16 juillet 2003**

Maître,

Nous vous confirmons par la présente que les médias seront orientés début septembre 2003 quant à la suite donnée aux différentes enquêtes menées depuis le 11 septembre 2001. A cette occasion, le Ministère public de la Confédération confirmera que l'examen détaillé des affaires de Monsieur Yeslam Binladin n'a pas révélé l'existence d'une quelconque infraction pénale.

Nous vous prions de croire, Maître, à l'assurance de notre considération distinguée.

L'ASSISTANTE DU PROCUREUR
GENERAL SUPPLEANT

*Noto Lherminé*

Julie Noto Lherminé

## THE PUBLIC PROSECUTOR'S OFFICE

| | | |
|---|---|---|
| The acting public prosecutor | : CLAUDE NICATI | Bern, July 22nd, 2003 |
| Prosecutor's assistant | : JULIE NOTO LHERMINÉ | |
| Secretary | : JANINE PESTONI | PIERRE DE PREUX |
| 3003 Bern | | Attorney |
| Telephone | : 031 322 45 30 | 6, rue François-Bellot |
| Fax | : 031 322 45 07 | 1206 Genève |

Case N°            : MPC/EAII/1/02/0040

*Re*:     Request for legal assistance by France dated March 14th and 22nd, 2002
concerning Mr YESLAM BINLADIN - Your letter dated July 16th, 2003

Dear Sir,

We confirm by these presents, that the media shall be informed in the beginning
of September 2003 on the follow up of the different inquiries made since
September 11th, 2001. On that occasion, the Public Prosecutor's Office of the
Confederation shall confirm that the detailed examination of Mr YESLAM
BINLADIN's activities has not revealed the existence of any criminal offence.

Yours sincerely,

Assistant of the Acting Public Prosecutor
JULIE NOTO LHERMINÉ (*Signature*)

(*Seal of the Public Prosecutor's Office of the Confederation*)

(*Translator's note*: "Received" date stamp reading July 23rd, 2003)


**CERTIFIED TRUE TRANSLATION FROM FRENCH**
**A. SIMSAR**
**SWORN TRANSLATOR**
58, rue de la Terrassière
CH-1207 Geneva
Tel. / Fax: 022 700 36 85
E-mail: asimsar@worldcom.ch



*Geneva, June 7th, 2005*

# Exhibit 7



SCHWEIZERISCHE BUNDESANWALTSCHAFT
MINISTERE PUBLIC DE LA CONFEDERATION
MINISTERO PUBBLICO DELLA CONFEDERAZIONE
PROCURA FEDERALA

Procureur général suppléant:   Claude Nicati
Secrétariat:                            Annick Vuilleumier
3003 Berne
Tél: 031 322 45 89
Fax: 031 322 45 07

Affaire no : EAII/1/02/0040

R  - 7 AVR. 2004

Maître Pierre de Preux
Avocat
Etude de Pfyffer & Associés
6, Rue François-Bellot
1206 Genève

Berne, le 2 avril 2004

**Monsieur Yeslam Binladin**

Maître,

Dans le prolongement de notre entretien téléphonique de ce jour, je vous confirme que :

1. Dans le cadre d'une demande d'entraide judiciaire des autorités françaises nous avions procédé au séquestre d'un certain nombre de documents bancaires et autres liés à M. Yeslam Binladin.

2. Après triage des documents séquestrés, conformément à la demande française et en application de la jurisprudence fédérale, les documents visés par ladite commission rogatoire ont été transmis aux autorités françaises.

3. L'examen desdits documents séquestrés n'a pas amené les autorités judiciaires suisses, in concreto le Ministère public de la Confédération (MPC), à ouvrir une procédure pénale contre votre client.

4. A ce jour, le MPC n'a pas ouvert une quelconque procédure pénale contre votre client.

Veuillez agréer, Maître, mes salutations distinguées.

LE PROCUREUR
GÉNÉRAL SUPPLÉANT

Claude Nicati

## THE PUBLIC PROSECUTOR'S OFFICE

| | |
|---|---|
| The acting public prosecutor | : CLAUDE NICATI |
| Secretary | : ANNICK VUILLEUMIER |

3003 Bern

| | |
|---|---|
| Telephone | : 031 322 45 89 |
| Fax | : 031 322 45 07 |

Case N° : EAII/1/02/0040

PIERRE DE PREUX
Attorney
PFYFFER & Associés
6, rue François-Bellot
1206 Genève

Bern, April 2nd, 2004

**Mr YESLAM BINLADIN**

Dear Sir,

In line with our today's telephone conversation, I confirm to you that:

1. Within the framework of the request for legal assistance of the French authorities, we had placed under receivership a certain number of banking and other documents related to Mr YESLAM BINLADIN.
2. After sorting the documents placed under receivership, in pursuance with the French request and in application of the Federal jurisprudence, the documents referred to by this letters rogatory have been conveyed to the French authorities.
3. The examination of the documents placed under receivership did not lead the Swiss legal authorities, in this case the Public Prosecutor's Office (MPC), to institute criminal proceedings against your customer.
4. Up till today, the MPC has not instituted any criminal proceedings against your customer.

Sincerely yours,

The Acting Public Prosecutor
CLAUDE NICATI (*Signature*)

(*Seal of the Public Prosecutor's Office of the Confederation*)

(*Translator's note*: "Received" date stamp reading April 7th, 2004)

**CERTIFIED TRUE TRANSLATION FROM FRENCH**
**A. SIMSAR**
**SWORN TRANSLATOR**
58, rue de la Terrassière
CH-1207 Geneva
Tel. / Fax: 022 700 36 85
E-mail: asimsar@worldcom.ch

*Geneva, June 7th, 2005*

# Exhibit 8

Yeslam Binladin
Geneva, Switzerland

Mr Richard Shelby
Chairman, Committee
Banking, Housing and
Urban Affairs
Washington D C

Geneva April 23, 2004

Dear Sir,

Knowing that your time is valuable, I will be as brief as possible.

According to articles that appeared in the press, on October 22, 2003, your committee had auditioned Mr. Brisard in connection with his investigative work on the financing of different organisations, some of which could be on the list of President Bush.

On January 25, 2002 the Court of 1st Instance in the Republic and Canton of Geneva Forbade the publication and distribution of the book 'Ben Laden, the Forbidden Truth' co-authored by Mr. Brisard and Mr. Dasquier. This decision is based on the numerous errors that appeared in the book. The Court Order is enclosed.

I filed an injunction against the book for the many errors that it contained as regards to myself and to my companies. Upon the request of the Court the authors could not justify their allegations and could not produce any proof to that effect, instead they modified the book and took away all their allegations towards me. The Federal Supreme Court later authorized the publication and distribution of the book based on the modification and to the fact that the said book is badly written so that the average reader will not be able to read it to its end.

Several years ago Mr. Brisard made a report on the financial activities of several Mid Eastern entities. This report was then added to a French Parliamentary report on tax evasion and money laundering. This came to be known as the Montebourg report.

When Mr. Brisard and Mr. Dasquier wrote their book, they used the Montebourg Report as their source of information, thus giving their book a sense of truth and respectability, not mentioning that Mr. Brisard himself was at the origion of this information.

In a television interview in France dated October 2001, Mr. Brisard boasted at being the author of that section of the Montebourg report. This interview was of course given before these two gentlemen co-authored their book. Enclosed is a transcript of the interview.

On March of 2002, I sent a letter to every member of the French Parliament whose name appeared on the report and enclosed with it a copy of the Swiss Court Order.

Also on March of the same year I sent letters to both the U S Ambassador and the French Ambassador to Switzerland informing them of what I have explained above. Please find enclosed copies of these letters

I write to you today to make you aware that although Mr. Brisard may not have mentioned my name in his testimony before you, his allegations have proven wrong in the past as regards to myself, they could be wrong as regards to other people in the report. I would question the authenticity of his information and would not be surprised to find many other errors.

I know that your time is very valuable, but your first responsibility is to know the truth and nothing less. Thank you for your time.


Yours Truely,


Yeslam Binladin


Encl. Swiss Court Order
      Letter to French Parliament
      Letter to US Embassy
      Letter to French Embassy
      Transcript of tv interview