# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE TERRORIST ATTACK
ON SEPTEMBER 11, 2001

Civil Action No. 03 MDL 1570 (RCC)
ECF Case

This document relates to:

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 03-CV-9849
*Continental Cas. Co. v. Al Qaeda*, 04-CV-5970
*EuroBrokers Inv. V. Al Baraka Inv. & Dev. Corp.*, 04-CV-7279
*New York Marine & Gen. Ins. Co. v. Al Qaida*, 04-CV-6105
*World Trade Ctr. Props. LLC v. Al Baraka Inv. & Dev. Corp.*, 04-CV-7280

---

**REPLY MEMORANDUM OF LAW OF TAHA AL-ALWANI, MUHAMMED ASHRAF, M. OMAR ASHRAF, IQBAL UNUS, MOHAMMED JAGHLIT, AHMED TOTONJI AND YAQUB MIRZA IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

---

Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
**DLA PIPER RUDNICK GRAY CARY US LLP**
1200 Nineteenth Street, N.W.
Washington, DC  20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza*

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................................ 2

    I.     M. YAQUB MIRZA WAS VOLUNTARILY DISMISSED FROM *BURNETT* ... 2

    II.    DEFENDANTS' MOTIONS TO DISMISS WERE FILED TIMELY;
          PLAINTIFFS' OPPOSITIONS WERE LATE AND SHOULD BE STRICKEN .. 4

    III.   PLAINTIFFS' AMENDED PLEADINGS FAIL TO COMPLY WITH THE
          CMO-2 ................................................................................................................... 5

    IV.   THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM
          AGAINST THE MOVING DEFENDANTS ......................................................... 6

    V.    THE CLAIMS AGAINST THE MOVING DEFENDANTS
          ALL SHOULD BE DISMISSED WITH PREJUDICE ....................................... 10

CONCLUSION ...................................................................................................................... 10

The Moving Defendants,[1] by and through undersigned counsel, hereby submit this Reply Memorandum of Law in Further Support of their Motions to Dismiss the claims asserted against them in *Burnett*, *N.Y. Marine*, *Euro Brokers*, *Continental* and *World Trade Center* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In their Opposition to the Motions to Dismiss, Plaintiffs continue to claim that the Moving Defendants are executives for one or more charities and corporations in the so-called "SAAR Network" of "entities specifically established to covertly provide money and support to al Qaeda and other international terrorists and terrorist groups." (Plaintiffs' Consolidated Memorandum of Law in Opposition to Motion to Dismiss, MDL Docket # 1579, ("Plaintiffs' Opp."), at 1.) But Plaintiffs offer up nothing more than allegations that the Court already has found "provided scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 823 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*"). Further, Plaintiffs' allegations against each specific Moving Defendant are virtually identical to those the Court already found do not state claims against them in *Federal Insurance*. *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 569-72 (S.D.N.Y. 2005) ("*In re Terrorist Attacks II*").[2]

Because Plaintiffs have had an opportunity to amend their Complaints with the benefit of the Court's two opinions but failed to assert any new allegations, Plaintiffs' claims should not only be dismissed, but dismissed with prejudice and without further leave to amend.

---

[1] The Moving Defendants are Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza.

[2] The Court also dismissed claims against alleged "SAAR Network" Entities African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute of Islamic Thought ("IIIT"), Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation in *Burnett*, IIIT in *Ashton* and Mar-Jac Poultry in *Ashton*, *Burnett* and *Federal Insurance*.

2

## ARGUMENT

### I.  M. YAQUB MIRZA WAS VOLUNTARILY DISMISSED FROM *BURNETT*

On January 3, 2005, the *Burnett* Plaintiffs filed a document styled as an

"Addition/Removal of Parties," which purported to dismiss "Yaqub Mirza" and "M. Yaqub

Mirza" "without prejudice from the this civil action." (Plaintiffs' December 30, 2004,

Addition/Removal of Parties, MDL Docket # 602, at Exhibit C.)

Plaintiffs now argue, however, that this notice did not dismiss the action against Dr.

Mirza; rather, Plaintiffs contend that they dismissed "two duplicate defendants," identified as

"Yaqub Mirza" and "M. Yaqub Mirza" but kept in the case "Yaqub M. Mirza." (Plaintiffs'

Opp., n. 1.) In previous correspondence with the Court, Plaintiffs took the position that they had

inadvertently named three "Yaqub Mirzas" as Defendants and filed the Rule 41 dismissal "to

clarify that plaintiffs' Complaint was not intended to reference three separate people." (Letter

from Robert T. Haefele to Judge Casey, dated December 15, 2005.)[3]

Plaintiffs are wrong. Dr. Mirza goes by the name Yaqub Mirza or M. Yaqub Mirza.

These are the two names that Plaintiffs listed in the notice of dismissal. Dr. Mirza has never

gone by the name "Yaqub M. Mirza." Rule 41(a)(1) states that an "*action* may be dismissed by

the plaintiff . . . by filing a notice of dismissal at any time before service by the *adverse party* of

an answer." (Emphasis added.) At the time Plaintiffs filed the notice, the only "Yaqub Mirza"

that was ever an *adverse party* in this *action* was "M. Yaqub Mirza" who, pursuant to stipulation,

agreed to appear in *Burnett* and respond to the complaint. A copy of that stipulation is attached

---

[3] This issue first arose when the *Burnett* Plaintiffs attempted to subpoena banking records concerning Dr. Mirza from Wachovia Bank. By Order dated January 12, 2006, the Court stayed that subpoena as to Dr. Mirza to permit the parties to determine whether Dr. Mirza is still a party. Presumably, the December 15, 2005 letter from Mr. Haefele -- dated well after Plaintiffs filed their Motions to Dismiss -- is what Plaintiffs are referring to when they state that they "have informed counsel for Dr. Mirza that their client in still a defendant" since that was the first time that Dr. Mirza's counsel learned that Plaintiffs believed Dr. Mirza was still a Defendant.

as Exhibit A.  There is no authority for Plaintiffs' position -- none -- that Rule 41(a)(1) can be used to "dismiss[] two duplicative defendants" or "clarify that [the complaint] was not intended to reference three separate people."  Therefore, even if it was not Plaintiffs' *intention* to dismiss Dr. Mirza, upon filing the Rule 41 notice they did so because he was the only "Yaqub Mirza" who was a party to the action.[4]

## II.   DEFENDANTS' MOTIONS TO DISMISS WERE FILED TIMELY; PLAINTIFFS' OPPOSITIONS WERE LATE AND SHOULD BE STRICKEN

Plaintiffs also argue that the Motions to Dismiss were "filed beyond the time agreed to by the parties." (Plaintiffs' Opp., n. 1.)  This is untrue.  The Stipulations referenced by Plaintiffs governed only the complaints Plaintiffs had filed at that time.  On or around September 30, 2005, each of the Plaintiffs filed "amended" complaints.  The Moving Defendants' time to respond to those complaints was governed by Federal Rule of Civil Procedure 15 – not the stipulations.

After receiving the "amended" complaints, the Moving Defendants made repeated efforts to contact Plaintiffs so that the parties could submit to the Court "an agreed-upon, proposed briefing schedule" for these motions in compliance with paragraph 25 of Case Management Order #2.  Because Plaintiffs refused even to respond to the Moving Defendants' efforts to comply with the CMO-2, the Moving Defendants filed their Motions to Dismiss on October 28, 2005 without an agreed upon briefing schedule.  Pursuant to this Court's Local Rule 2(d), Plaintiffs' opposition to the Motions to Dismiss were due within 14 days.  Because Plaintiffs

---

[4] Even if Dr. Mirza is a Defendant, the claims against him should be dismissed because the *Burnett* Plaintiffs' allegations, which are no different than those asserted by the other MDL Plaintiffs, don't come close to stating a claim.  (*See* Memorandum of Law in Support of Motions to Dismiss, MDL Docket # 1450 at 19-23; *supra*. at 8-9.)

4

filed their opposition on December 28, 2005, 60 days later, the oppositions were late and should be stricken.[5]

## III.   PLAINTIFFS' AMENDED PLEADINGS FAIL TO COMPLY WITH THE CMO-2

Plaintiffs assert that their "amended" pleadings comply with "both the letter and the spirit of the CMO #2." (Plaintiffs' Opp., at 5.) But Plaintiffs did not comply with the letter of the CMO-2 which required Plaintiffs to "file an amended complaint that includes all amendments made prior to that date." For example, the *Burnett*, *World Trade Center* and *Euro Brokers* Plaintiffs did not file an "amended complaint," but rather filed something called a "Notice of Consolidated Pleading" referencing dozens of other pleadings. The *New York Marine* Plaintiffs filed an amended pleading referencing documents *from other cases*.

Nor did Plaintiffs comply with the spirit of the CMO-2. Plaintiffs each filed prolix and confusing pleadings that impose a burden on Defendants and the Court to determine exactly what is being alleged against whom. For example, the Moving Defendants' objections to the *Continental* Plaintiffs' amended complaint's "addendum" is not "aesthetics." (Plaintiffs' Opp., at 6.) Rather, the "addendum" fails to comply with the CMO-2 and Federal Rules because it is prolix, confusing, duplicative and would be impossible to answer because its paragraphs are unnumbered.[6] This is precisely what the CMO-2 was designed to prevent and the Moving Defendants have been prejudiced by having to respond to such a pleading.

---

[5] *After* the Moving Defendants filed their Motions to Dismiss, Plaintiffs took the position that the "default" briefing schedule of the Court's CMO-4 provided them 60 days to oppose the motions. The CMO-4 is inapplicable because it was not in effect when Plaintiffs filed their "amended" complaint or when the Motions to Dismiss were filed. It was not issued until December 9, 2005, well after Plaintiffs' time to file their opposition had passed. Even if the CMO-4 were applicable, it would be unjust to permit Plaintiffs to benefit from its "default" briefing schedule because Plaintiffs refused to even negotiate a briefing schedule as required by paragraph 25 of the CMO-2.

[6] The *Continental* Plaintiffs also argue that their "amended" complaint was filed timely on September 30, 2005. (Plaintiffs' Opp., at 7.) But, according to the Clerk of Court there is no record of the complaint having been filed on September 30, 2005, and even if it were, it still fails to comply with the CMO-2 because it *was not served until October 6, 2005*. The fact that Plaintiffs obtained a date-stamp on the cover page of the Complaint without having

Parties have an "unflagging duty to comply with clearly communicated case-management orders." *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (citations omitted) (noting that "a litigant who ignores a case-management deadline does so at his peril"). "The Federal Rules of Civil Procedure provide that failures to comply with case management orders entered by the court pursuant to Rule 16(b) are subject to the sanctions available to courts to enforce its orders including the authority to make such orders 'as are just.'" *Arnold v. Krause, Inc.*, 2004 WL 3574033, *8 (W.D.N.Y. July 23, 2004) (citing Fed. R. Civ. P. 16(f); other citations omitted).

Accordingly, at a minimum, the Court should strike all of the addendums, attachments and exhibits to any of these pleadings, and any document that is incorporated into the complaint by reference, and consider only those allegations contained in the actual complaint in determining the motions to dismiss. In addition, the Court has the full arsenal of sanctions available to levy against Plaintiffs, up to and including dismissal. *Mulholland v. County of Orange*, 108 F.3d 329 (2d Cir. 1997) (affirming dismissal of complaint for failure to comply with CMO); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 35.31 (2004) (court should consider "dismissal with prejudice where the plaintiff has been given the opportunity to file an amended complaint and persists in filing a lengthy and confusing document").

## IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS

Plaintiffs argue that their "Amended Pleadings and RICO Statements contain additional detailed allegations about the [Moving Defendants] not previously considered by the Court." (Plaintiffs' Opp., at 8.) But again, Plaintiffs are wrong.

The great bulk of the allegations against the Moving Defendants are that they are part of

---

served it – presumably by abusing the Court's after-hours drop box – does not mean that they have complied with the CMO-2.

the so-called "SAAR Network." (Plaintiffs' Opp., at 1-3.) Plaintiffs continue to pursue this theory even though the Court already has found that there was "scant basis for linking these entities under the SAAR Network title." *In re Terrorist Attacks I*, at 823. Plaintiffs' allegations in support of this theory are no different from those reviewed by the Court in making this finding.[7]

The only purportedly "new" allegations that Plaintiffs[8] offer are that Drs. Mirza, Totonji and Jaghlit participated in a "series of complicated money-laundering transactions, by which money was transferred among various SAAR Network entities, ending up in York International Trust, a shell company located in the Isle of Man" or the "Humana Charitable Trust" also an Isle of Man entity. (Plaintiffs' Opp., at 8.)[9] Plaintiffs must concede that there are no "new" allegations against Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf or Iqbal Unus.

The Court already considered similar allegations of "money laundering" with respect to alleged "SAAR Network" Defendant Mar-Jac Poultry in the *Federal Insurance*. Plaintiffs in that case alleged that Mar-Jac Poultry:

> donated money to African Muslim Agency, which the Plaintiffs claim was later "laundered," and . . . that it donated money to unnamed SAAR Network entities, which was later forwarded to al Qaeda.

*In re Terrorist Attacks II*, at 571. The Court found that this allegation against Mar-Jac Poultry failed to state a claim because it did not provide "Mar-Jac Poultry with notice as to how it could be liable for the terrorist attacks." *Id.* The Court cited to the Seventh Circuit's ruling in *Boim* which held that to "hold defendants liable for donating money without knowledge of the donee's

---

[7] In particular, the allegations in *New York Marine* are a carbon copy of those in *Federal Insurance.* The Court previously found that the "*Burnett* and *Ashton* complaints' allegations against the SAAR Network entities are substantially similar to one another." *In re Terrorist Attacks II*, at 569.

[8] Significantly, these allegations of "money laundering" are not made in *Burnett*.

[9] Notably, neither York International Trust nor Humana Charitable Trust are Defendants in any action in this MDL.

intended criminal use of the funds would impose strict liability." *Boim v. Quaranic Literary Inst.*, 291 F. 3d 1000, 1012 (7th Cir. 2002).

Plaintiffs' allegations of "money laundering" against Mirza, Totonji and Jaghlit are even weaker than those asserted against Mar-Jac Poultry because Mirza, Totonji and Jaghlit are only alleged to have "participated" in "laundering" money. Even assuming the truth of this allegation, as the Court must do at this point, Plaintiffs have not stated what that "participation" was, or that Plaintiffs knowingly and intentionally took actions to aid Al Qaeda or cause the September 11th Attacks. Indeed, Plaintiffs admit that they do not know where the funds went, stating only that they went to the Isle of Man where they could not be traced.

Plaintiffs admit that they have not, as they must, alleged that any of these funds actually went to support to Al Qaeda or that the Defendants knew that to be the case. *In re Terrorist Attacks II*, at 564 (Plaintiffs must plead that Defendants knew of al Qaeda's illegal activities, "that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities.") Accordingly, Plaintiffs' conclusory allegation of "money laundering" fails to state a claim against any of the Moving Defendants.

Plaintiffs also argue that they have stated a claim against Dr. Mirza -- that he is the "financial mastermind" of the so-called "SAAR Network" and had his house raided as part of "Operation Greenquest." (*See Burnett* Third Amended Complaint, ¶¶ 251, 253[10]; Plaintiffs' Opp., at 10.) But Plaintiffs do not allege what either the "SAAR Network" or Dr. Mirza did to knowingly aid Al Qaeda or cause the September 11th attacks. These allegations are not

---

[10] The *Burnett* Plaintiffs also include some vague and conclusory allegations against Dr. Mirza that are applicable to numerous defendants. (*Id.*, at ¶¶ 248, 260 and 267.) These fail to state a claim as a matter of law. "Legal conclusions done up as factual allegations are not facts and cannot substitute for facts." *In re Terrorist Attacks I*, 349 F. Supp. at 813-814 (internal quotation and citation omitted); *In re Terrorist Attacks II*, 392 F. Supp. 2d at 564 ("A pleading cannot survive dismissal when it contains "only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based.")

materially different from the allegations already considered by the Court in dismissing the

*Federal Insurance* claims against Dr. Mirza and do not "adequately provide [Dr. Mirza] with

notice as to how [he] provided material support to al Qaeda terrorists." *In re Terrorist Attacks II*,

at 572.

Plaintiffs also allege that Dr. Mirza was the Secretary and Treasurer of the Muslim World

League in Virginia and the founding trustee of Sanabel Inc. (*Burnett* Third Amended Complaint,

¶ 251; Plaintiffs' Opp., at 10.) However, there is no allegation that Dr. Mirza allegedly did

anything to support or aid these entities. Nor do Plaintiffs even allege that Sana-Bell, Inc. or the

Virginia branch of the MWL that Dr. Mirza was allegedly an officer of -- as opposed to the

Saudi based MWL -- did *anything* at all, let alone anything to aid Al Qaeda or the September

11th attacks.

To state a claim against Dr. Mirza based on his having been an officer or director of an

entity, Plaintiffs must allege that Dr. Mirza knowingly and intentionally participated in some

action on behalf of that entity for which *it* could be held liable for the September 11th attacks.

Dr. Mirza is not alleged to have done anything for any of these entities, rather his alleged

liability is based solely on his status as an officer or director of the company. That is insufficient

to state a claim. *See Harlem River Consumer Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 408

F. Supp. 1251, 1271 (S.D.N.Y. 1976) ("A corporate officer or director is not liable for the illegal

actions of others in the corporation merely by virtue of his position or office. He may become

liable if he knowingly participates in such actions."); *see also In re Terrorist Attacks II*, at 567-

68 (sustaining Federal Insurance complaint against Abdulrahman Alamoudi because those

plaintiffs alleged that he "funneled money to al Qaeda through the charities with which he was

involved," and dismissing claims of other plaintiffs who only asserted he was associated with

certain entities).

## V.   THE CLAIMS AGAINST THE MOVING DEFENDANTS ALL SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs had the opportunity to amend their complaint on September 30, 2005 with the benefit of the Court's September 21, 2005 Opinion and Order detailing precisely what they must allege to withstand a motion to dismiss. All of the Plaintiffs filed "amended" pleadings, but none include any allegations in their "amended" Complaint that were not already considered by the Court in issuing the September 21, 2005 Opinion. It would be futile to provide Plaintiffs yet another opportunity to amend their pleading, as it is clear that if Plaintiffs could state a claim against the Moving Defendants they would have done so by now.

## CONCLUSION

For these reasons, the Moving Defendants respectfully request that the Court grant their Motions to Dismiss and dismiss all of the claims asserted against them in *Burnett, N.Y. Marine, Euro Brokers, Continental* and *World Trade Center* with prejudice.

Respectfully submitted,

Dated:   January 26, 2006

By: /s/ Nancy Luque
Nancy Luque (NL-1012)
Jay Hanson (admitted *pro hac vice*)
Steven K. Barentzen (SB-8777)
DLA PIPER RUDNICK GRAY CARY US LLP
1200 Nineteenth Street
Washington, DC 20036-2247
Tel: 202-861-3900
Fax: 202-223-2085

*Attorneys for Taha Al-Alwani, Muhammed Ashraf, M. Omar Ashraf, Iqbal Unus, Mohammed Jaghlit, Ahmed Totonji and Yaqub Mirza*

# EXHIBIT A

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1-3-05
```

(A16 5,

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC)<br>ECF Case |

*This document relates to:*
   *Kathleen Ashton, et al v. Al Qaeda Islamic Army, et al.* Case No. 1:02-6977 (S.D.N.Y.)
   *Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.,*
      Case No. 03-CV-9849 (S.D.N.Y.)
   *Continental Casualty Co., et al. v. Al Qaeda Islamic Army, et al.,* Case No. 04-CV-
      05970-UA (S.D.N.Y.)
   *Euro Brokers, Inc., et al. v. Al Baraka Investment and Development Corp., et al.,* Case
      No. 04-CV-07279-UA (S.D.N.Y.)
   *New York Marine and General Insurance Co. v. Al Qaida, et al.,* Case No. 04-CV-6105
      (S.D.N.Y.)
   *World Trade Center Properties, LLC, et al. v. Al Baraka Investment and Development
      Corporation, et al.,* Case No. 04-CV-7280 (S.D.N.Y.)

## STIPULATION AS TO SERVICE OF PROCESS AND EXTENSION OF TIME
## TO RESPOND TO COMPLAINTS CONSOLIDATED UNDER MDL 1570

It is HEREBY STIPULATED AND AGREED, by and between Plaintiffs in all of the

above-referenced cases consolidated under 03 MDL 1570 and Defendant M. Yaqub Mirza, by

and through their undersigned counsel, that the undersigned Defendant's counsel hereby accepts

service of the Complaint in each of the cases referenced above, on behalf of Mr. Mirza.

IT IS FURTHER HEREBY STIPULATED AND AGREED that Plaintiffs pursuing

claims for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO") shall

serve their respective RICO Statements concerning Mr. Mirza, on or before February 25, 2005.

IT IS FURTHER HEREBY STIPULATED AND AGREED that the time for Mr. Mirza

to answer or otherwise respond to the Complaint in each of the cases referenced above, shall be

on or before March 28, 2005.

IT IS FURTHER HEREBY STIPULATED AND AGREED that the Plaintiffs' response to Mr. Mirza's responsive pleadings, if any, shall be served within sixty days of receipt of same from defendant's counsel, and that defendant's counsel shall file reply papers, if any, within fourteen days of receipt of plaintiffs' opposing papers.

IT IS FURTHER HEREBY STIPULATED AND AGREED that Mr. Mirza hereby waives any and all affirmative defenses, objections, privileges, immunities and arguments relating to service of process in each of the cases referenced above, but preserves any and all other defenses, objections, privileges, immunities and arguments available to it.

IT IS FURTHER HEREBY STIPULATED AND AGREED that Plaintiffs shall not include Mr. Mirza in any notice of service by publication in any language and shall provide counsel for Mr. Mirza with a copy of any such notice, in all languages in which such notice shall appear, in advance of publication.

Respectfully submitted.


COZEN O'CONNOR

By: _____

Sean P. Carter
J. Scott Tarbutton
1900 Market Street
Philadelphia, PA 19103

*Attorneys for Plaintiffs*


GRAY CARY WARE & FREIDENRICH

By: _____

Christopher J. Beal
4365 Executive Drive
Suite 1100

2

San Diego, CA 92121

*Attorneys for Defendant*

**SO ORDERED:**

_____
RICHARD CONWAY CASEY, U.S.D.J.

Dated:_____

PHILA1\2183590\1 117430.000

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2006, I caused an electronic copy of the foregoing Reply Memorandum of Law in Further Support of Motion To Dismiss Of African Muslim Agency, Grove Corporate, Inc., Heritage Education Trust, International Institute Of Islamic Thought, Mar-Jac Investments, Inc., Mena Corporation, Reston Investments, Inc., Safa Trust, Sterling Charitable Gift Fund, Sterling Management Group, Inc. and York Foundation Pursuant To Rule 12(B)(6) For Failure To State a Claim to be served by the Court's electronic filing system upon all parties scheduled for electronic notice.

/s/  Steven K. Barentzen
Steven K. Barentzen (SB-8777)