UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (RCC) <br><br> ECF Case |

**This document relates to:**     Thomas E. Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al. (03 CV 9849)

Thomas E. Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al. (03 CV 5738)


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANT DMI ADMINISTRATIVE SERVICES S.A.


SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
24th Floor
New York, New York 10112
(212) 332-3800

*Attorneys for Defendant*
 *DMI Administrative Services S.A.*

W02-NY:1ESC1\120008017.1

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

I    PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A. ...............................................................................2

    A.    There Is No General Jurisdiction Over DMI S.A. ............................................2

    B.    There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States. ............................3

II    PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A. .................................................................................................................4

    A.    Plaintiffs' Numerous Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8 ..................................................4

    B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A. Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries. .....................................5

    C.    Plaintiffs Do Not State A Claim Under Any Of Their Fourteen Causes Of Action ..........................................................8

        1.    Plaintiffs Concede That Their RICO Claims Are Without Merit (Counts 11-13). ......................................................................................8

        2.    Plaintiffs Have Failed To State An ATA Claim (Count 3). .................8

        3.    Plaintiffs Fail To State Their State Law Causes Of Action (Counts 5-10, 14) ...................................................................................9

III    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..........................10

CONCLUSION ..............................................................................................................................10

Defendant DMI Administrative Services S.A. ("DMI S.A.") respectfully submits this Reply Memorandum in further support of its motion to dismiss the *Burnett* Complaints against it (Docket No. 1239). As the record reflects, the motion is meritorious and should be granted in its entirety.

## PRELIMINARY STATEMENT

Plaintiffs' Opposition brief ("Opposition" or "Opp.") (Docket No. 1557) ridicules DMI S.A.'s sympathy for the victims of the attacks of September 11 and expresses frustration with the refusal to accept the baseless assertion that DMI S.A. had anything to do with those attacks. See Opp. at 1. Plaintiffs ignore that it is incumbent upon them to state some factual basis for haling DMI S.A. before this Court to answer such grave charges. Contrary to plaintiffs' assertion, see Opp. at 2, and as DMI S.A.'s Initial Memorandum made clear, "[t]he major thrust of DMI [S.A.]'s argument" is *not* "that DMI [S.A.] cannot be held liable because DMI [S.A.] did not, itself, carry out the September 11 attacks."[1] The key point is that the *Burnett* plaintiffs, as all others, have failed to proffer a single factual allegation tying DMI S.A. to a global terrorist conspiracy, making it liable for mass murder, or even establishing this Court's jurisdiction over it. See Initial Memorandum in Support of Motion to Dismiss (Docket No. 1240) ("Initial Memorandum" or "Init. Mem.") (Intro.).[2]

---

[1] Despite DMI S.A.'s repeated admonitions, see, e.g., Init. Mem. at 1 n.1, plaintiffs in their Opposition continue to make various assertions regarding "DMI," without indicating which allegations are meant to apply to DMI S.A. and which are intended to pertain to DMI S.A.'s ultimate parent, Dar Al-Maal Al-Islami Trust ("DMI Trust"). As the undersigned has continually explained to plaintiffs' counsel, DMI S.A. and DMI Trust are separate companies and are of course separate named defendants. Plaintiffs' allegations, and now their statements in their Opposition, regarding "DMI" are thus unintelligible as written. The claims against DMI S.A. should be dismissed on this ground alone. See Init. Mem. at 1 n.1 (citing cases).

[2] DMI S.A. moves to dismiss the claims asserted against it in *Burnett* plaintiffs' Third Amended Complaint ("TAC"), originally filed in the District of Columbia, No. 03-CV-9849 ("*Burnett* DC"), and the substantively identical *Burnett* Complaint filed in this Court, No. 03-CV-5738 ("*Burnett* NY"), as well as the *Burnett* plaintiffs' More Definite Statement ("MDS") as to DMI S.A. (Docket No. 896), filed on May 10, 2005. On September 30, 2005, in contravention of the Court's straightforward charge that "the plaintiffs shall file an amended complaint that includes all amendments made prior to that date," see CMO #2, ¶ 13, the *Burnett* DC plaintiffs filed a "Notice of Consolidation of Pleadings" (Docket No. 1377) simply listing all of the docket entries that they deemed consolidated into their TAC (and adding no new allegations). In light of the *Burnett* plaintiffs' disregard for the Court's Orders, their September 30, 2005 "Notice of Consolidation" should be struck. Additionally, contrary to plaintiffs' assertion, see Opp. at 1 n.1, the briefs filed in support of DMI S.A.'s motions to dismiss the several actions against it have not been "substantially identical." The several actions against DMI S.A. are brought by various groups of plaintiffs asserting widely varying causes of action and claiming different sorts of damages, while propounding a motley collage of allegations in support thereof.

Plaintiffs here largely ignore that argument, instead choosing to recast their allegations into something other than what is actually contained in their pleadings. Plaintiffs also blithely ignore both this Court's holdings in its January 18, 2005 Order and the authority set out by DMI S.A. in its Initial Memorandum. Indeed, plaintiffs pay no heed to the Court's holdings that (i) conclusory allegations are insufficient to establish jurisdiction or to state a claim; (ii) the provision of routine banking services, without knowledge of any terrorist activities, cannot subject a defendant to liability; and (iii) plaintiffs must make a *prima facie* showing of each defendant's personal or direct participation in the conduct giving rise to plaintiffs' injuries. Compare In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 805, 809, 835 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks I") with Opp. at 1, 9-14, 17-18, 23-25. Moreover, plaintiffs are silent as to the Court's holding that to plead jurisdiction or state claims based upon a theory of conspiracy, they must make a *prima facie* showing of a conspiracy and DMI S.A.'s participation in it. Compare In re Sept. 11 Attacks I, at 805-6, with Opp. at 23-25.

In both in their pleadings and, now, their Opposition, the *Burnett* plaintiffs offer *nothing* to support the cold and odious assertion that DMI S.A. had anything at all to do with the September 11 attacks, and *nothing* that shows that this complete failure of pleading might be remedied by repleading. Accordingly, plaintiffs' claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

### I

### PLAINTIFFS HAVE ENTIRELY FAILED TO ESTABLISH PERSONAL JURISDICTION OVER DMI S.A.

**A.     There Is No General Jurisdiction Over DMI S.A.**

Plaintiffs do not dispute, and therefore concede, that neither the allegation that DMI S.A. held an ownership interest in a Boston firm, nor the allegation that DMI S.A. advertised in United States newspapers, amount to "continuous and systematic" contacts with New York or the United

---

DMI S.A.'s initial Memoranda in support of its motions, and its reply papers, vary as necessary to address different plaintiffs' claims and allegations.

States.  See Init. Mem. at 5-6, 8-9; see also In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 559 (S.D.N.Y. 2005) ("In re Sept. 11 Attacks II").[3]

**B.     There Is No Specific Jurisdiction Over DMI S.A., Because Plaintiffs Concede That There Is No Conspiracy-Based Jurisdiction And Plaintiffs Do Not Show That DMI S.A. Expressly Aimed Any Tortious Acts At The United States.**

The *Burnett* plaintiffs do not dispute, and therefore concede, that plaintiffs' wholly conclusory allegations of conspiracy and aiding and abetting cannot salvage their meritless assertion of personal jurisdiction over DMI S.A.  See Init. Mem. at 6-8; see also In re Sept. 11 Attacks I, 349 F. Supp. 2d at 805-06 ("Without supporting factual allegations," "[p]laintiffs' claim that all Defendants in these actions conspired with the al Qaeda terrorists to perpetrate the attacks of September 11" insufficient to establish personal jurisdiction on New York long-arm conspiracy theory).

Rather, plaintiffs in their Opposition seek to invoke specific personal jurisdiction over DMI S.A. based on its purported purposeful direction of some "conduct" here -- but do not point the Court to any allegations of such conduct.  See Opp. at 23.  It is no accident that plaintiffs fail to cite to any factual support for such an assertion, because the *Burnett* plaintiffs, like all others, allege no wrongful conduct by DMI S.A. whatsoever.  See Init. Mem. at 9-11, 10 n.5.  Nowhere in the Opposition -- *or* in the allegations of the *Burnett* TAC and MDS -- do plaintiffs point to *any* "specific facts from which the Court could infer that [DMI S.A.] directed, controlled, or requested al Qaeda to undertake its terrorist activities," see In re Sept. 11 Attacks I, 349 F. Supp. 2d at 806; nor do they "allege personal acts by [the defendant] by which [it] purposefully directed [its] activities at the United States," see id. at 816; nor do they sufficiently aver that DMI S.A. "expressly aimed" any (unalleged) tortious act at the forum.  See id. at 809.  Instead, plaintiffs offer multiple conclusory allegations and vague innuendo, unsupported by specific allegations of fact.  This Court has already held, however, that plaintiffs may not "circumvent the jurisdictional hurdle… by inserting vague and conclusory allegations of tortious conduct in their complaints -- and… rely[ing] on the federal courts

---

[3] Plaintiffs' failure to respond to a defense raised by defendant DMI S.A. in a dispositive motion concedes that defense.  See, e.g., Edward B. Marks Music Corp. v. Cont'l Record Co., 222 F.2d 488, 493 (2d Cir. 1955).

to conclude that some conceivable… tortious act falls within the purview of these generic allegations….” In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801.  Thus, the Court has no specific jurisdiction, and the Complaint must be dismissed.[4]

## II

## **PLAINTIFFS HAVE ENTIRELY FAILED TO STATE A CLAIM AGAINST DMI S.A.**

### A. **Plaintiffs' Numerous Conclusory Allegations Fail To Satisfy The Requirements Of Rule 8.**

Plaintiffs do not contest that the TAC improperly lumps hundreds of defendants together without providing specific facts distinguishing the supposed conduct of DMI S.A.  See Init. Mem. at 1 n.1, 11-12 (citing cases).  Instead, plaintiffs contend that Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Pelman v. McDonalds Corp., 396 F.3d 508 (2d Cir. 2005), Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002), and Twombly v. Bell Atlantic Corp., 425 F.3d 99 (2d Cir. 2005) support the proposition that conclusory, generalized allegations should be deemed sufficient to state plaintiffs' immense and serious claims against DMI S.A.  See Opp. 7-11.  In Phelps, however, plaintiff's allegations were "not 'general and conclusory,'" since plaintiff alleged the "who," "what," "where," and "how" of his injury.  Phelps, 308 F.3d at 187 & n.6.  Similarly, Pelman is of no moment because the Court in Pelman held only that plaintiffs did not have to plead facts to show their own contributory negligence.  See Pelman, 396 F.3d at 511-12.  Here, in contrast, plaintiffs have failed to allege *any* specific facts showing that DMI S.A. committed any wrongful acts or that it proximately caused plaintiffs' injuries.  Plaintiffs' reliance on Twombly also is misplaced; the Twombly Court held only that an antitrust claim alleging a price-fixing conspiracy could be stated by directly alleging

---

[4] Plaintiffs also make the unprecedented argument that, for purposes of invoking personal jurisdiction, they need not satisfy the Due Process requirements of the Fifth Amendment because DMI S.A. is a foreign defendant.  See Opp. at 22-23.  However, none of plaintiffs' case authority concerns issues of personal jurisdiction, see id., so that purported authority is inapposite.  Moreover, in their very next breath, plaintiffs' Opposition favorably cites to a long-standing Supreme Court precedent affording a foreign corporation Due Process protections for purposes of personal jurisdiction.  See Opp. at 23-24, citing Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102 (1987).  Plaintiffs' Opposition also cites a recent *slip opinion* from the District Court for the District of Columbia, entitled Baker v. Great Socialist People's Libyan Arab Jamahiriya.  Plaintiffs there sought personal jurisdiction over defendants under the FSIA, however, see Baker at 1-2, and "the FSIA is not the basis for personal jurisdiction here."  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 809.

specific facts showing conspiracy (such as communications of assent to conspiracy) or by alleging "parallel conduct" from which a price-fixing conspiracy could be inferred. See Twombly, 425 F.3d at 114-15. Plaintiffs here, however, allege neither any analogue to price-fixing "parallel conduct" by DMI S.A. and any other defendant, nor any specific facts, such as communications of assent, showing that DMI S.A. participated in any conspiracy. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801, 805-06 (plaintiffs must make *prima facie* showing of conspiracy and allege specific facts warranting inference defendant member of conspiracy); Gmurzynska v. Hutton, 355 F.3d 206, 210-11 (2d Cir. 2004).

Plaintiffs here fail to provide any factual allegations showing when, where, how, or to whom *DMI S.A.* supposedly provided *any* support to al Qaeda, knowingly or unknowingly.[5] Simply put, plaintiffs' numerous conclusory allegations -- upon which plaintiffs explicitly continue to rely in their Opposition, see, e.g., Opp. at 3, 11-12, even after this Court's clear and repeated rejection of such allegations -- fail to provide DMI S.A. with meaningful notice of the factual basis of the claims against it. Plaintiffs' claims therefore must be dismissed in their entirety.

**B.    Plaintiffs Have Failed To Plead Facts Sufficient To Show Concerted Action By DMI S.A. Or That Any Of Its Actions Proximately Caused Plaintiffs' Injuries.**

Because "plaintiffs rely on theories of concerted action liability -- conspiracy and aiding and abetting -- in support of [their assertion of proximate causation]," plaintiffs must sufficiently allege that DMI S.A. either conspired with, or aided and abetted, the primary wrongdoer. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 826. As the Second Circuit has explained, an allegation of causation-by-conspiracy "requires an agreement to commit a tortious act, [and] aiding and abetting requires that the defendant have given 'substantial assistance or encouragement' to the primary wrongdoer." Pittman v. Grayson, 149 F.3d 111, 122-23 (2d Cir. 1998) (citations omitted). Under

---

[5] For example, plaintiffs assert that "DMI [S.A.]'s misconduct includes laundering money for al Qaida." See Opp. at 10. Such a conclusory and unsupported assertion is insufficient. See Init. Mem. at 14 n.9. Plaintiffs also do not dispute, and thus concede, that allegations regarding former members of the Board of Directors and Sharia Board of DMI S.A.'s ultimate parent are utterly irrelevant. See Init. Mem. at 14 n.10.

either theory, plaintiffs also must allege a *prima facie* case of concerted action[6] and *facts* showing that the defendant had "actual knowledge" of the wrongful nature of the primary actor's conduct.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801, 805-06, 825-26.

Plaintiffs' assertion of concerted action by DMI S.A. satisfies none of these elements, whether invoked for purposes of jurisdiction, proximate causation, or otherwise to state a claim.  See Opp. at 11-15.  Instead of pointing to specific allegations of fact, plaintiffs rely upon the conclusory, generalized allegations that "[t]he attacks of September 11, 2001 . . . could not have been accomplished without the knowing and intentional financial support lent to Al Qaeda and its leaders by a global network of banks, financial institutions, charities, relief organizations, businesses, individual financiers, foreign governments and foreign governmental officials," see Opp. at 12, and that the September 11, 2001 attacks "would [not] have been possible without the support provided by participants and conspirators like [DMI S.A.]," see Opp. at 13; see also Opp. at 3 (relying upon wholly conclusory allegations from *Burnett* pleadings in asserting "plaintiffs allege that DMI [S.A.] *conspired* with bin Laden and *knowingly* laundered money and provided financial services for al Qaeda").  Clearly, as the Court has repeatedly and unequivocally held, these conclusory allegations are inadequate to invoke jurisdiction or to state a claim.

Understanding (but not acknowledging) that such conclusory allegations are woefully inadequate, plaintiffs' Opposition briefly and half-heartedly attempts to put forth "more specific allegations of causation." See Opp. at 12.  The Opposition asserts that "that DMI [S.A.], acting with and through various of its subsidiaries, established and controlled Al Shamal Bank," see Opp. at 10-11, 13, and that "the funds raised and laundered with the assistance of DMI [S.A.] 'were used to, among other things, operate terrorist training camps in Sudan, Afghanistan and elsewhere,'" see Opp. at 13, 14; see also, e.g., Opp. at 20 ("providing support to terrorist training camps is both

---

[6] "The elements of concerted action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort."  See Pittman, 149 F.3d at 122 (citations omitted).  As shown in the record, plaintiffs do not plead facts sufficient to satisfy any of the elements of concerted action as to DMI S.A.  See Init. Mem. at 20-22.

wrongful *and* outrageous and plaintiffs are entitled to call DMI [S.A.] to account for this conduct"). However, *no such allegations* appear among the actual contents of the TAC and MDS.

For example, as to DMI S.A.'s putative support for terrorist training camps, plaintiffs allege only that al Qaeda members "got account" at the Sudanese banks Faisal Islamic Bank (Sudan) ("FIB-Sudan"), Tadamon Islamic Bank ("TIB"), and al Shamal Bank, see MDS ¶¶ 71, 78, 83 and TAC ¶¶ 79, 101 and that DMI S.A.'s ultimate parent has been a shareholder of those Sudanese entities.  See MDS ¶¶ 23, 64, 84.  Plaintiffs have alleged *no facts whatsoever* indicating that DMI S.A. somehow knowingly supported terrorist training camps, in the Sudan, Afghanistan, or anywhere else; no facts showing that DMI S.A. (or any of its affiliates) "established and controlled" al Shamal Bank in any way, directly or indirectly; no facts showing that DMI S.A. has ever engaged in any financial transactions of any sort having anything to do with terrorist camps; and indeed, no facts to suggest that DMI S.A. ever knowingly provided banking services to anyone associated with al Qaeda.[7]  See Init. Mem. at 12-16, 17-18.  Thus, plaintiffs' attempt to rewrite their allegations, by their Opposition brief, into something other than what they have in fact pleaded, should be rejected out of hand.[8]

In sum, and as DMI S.A.'s Initial Memorandum detailed, the overwhelming majority of the *Burnett* plaintiffs' allegations regarding DMI S.A. are wholly conclusory.  Even with their attempt to recast their allegations, plaintiffs' Opposition simply does not remedy their failure to allege *facts* showing that DMI S.A. (or rather, DMI S.A.'s affiliates) did anything more than provide routine banking services and make innocuous charitable donations that, according to plaintiffs' own allegations, neither provided support to al Qaeda nor could have been expected to do so.  See Init.

---

[7] Plaintiffs also have alleged no facts showing that DMI S.A. could be held liable for the supposed acts of the Sudanese banks.  Plaintiffs allege, at best, that DMI S.A.'s ultimate parent is a "major shareholder" of Al Shamal, is "associated" with FIB-Sudan, and its subsidiary (not DMI S.A.) is a main shareholder of TIB.  See MDS ¶¶ 23, 64, 84. Such conclusory and unsupported allegations wholly fail to plead facts sufficient to establish any of the predicates necessary to pierce the corporate veil and hold DMI S.A. liable for the alleged tortious acts of any putatively related entity.  See Init. Mem. at 1 n.1.

[8] It is improper to attempt to amend a Complaint through an opposition brief.  See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("a party is not entitled to amend his pleading through statements in his brief").

Mem. at 12-16; In re Sept. 11 Attacks I, 349 F. Supp. 2d at 801 ("[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer. . . .  Here, there are no such factual bases presented, there are only conclusions."). Plaintiffs also have entirely failed to allege facts sufficient to show that DMI S.A. caused their injuries by conspiracy or aiding-and-abetting.  See Init. Mem. at 20-22.  Thus, plaintiffs have neither alleged concerted action nor proximate causation as to any of the pending claims.  See, e.g., Dura Pharmaceuticals, Inc. v. Broudo, -- U.S. --, 125 S.Ct. 1627, 1634 (2005) (dismissing for failure to elucidate plaintiff's theory of causation).

C.  **Plaintiffs Do Not State A Claim Under Any Of Their Fourteen Causes Of Action.**

   1.  **Plaintiffs Concede That Their RICO Claims Are Without Merit (Counts 11-13).**

"[T]he *Burnett* plaintiffs" concede that they "are not pursuing RICO claims against [DMI S.A]." See Opp. at 15 n.5.  Accordingly, the *Burnett* plaintiffs' RICO claims must be dismissed with prejudice.

   2.  **Plaintiffs Have Failed To State An ATA Claim (Count 3).**

Plaintiffs' Opposition disregards the Court's holdings that (i) conclusory allegations, unsupported by allegations of fact, fail to state a claim, compare In re Sept. 11 Attacks I, 349 F. Supp. 2d at 833 with Opp. at 11-12, and (ii) the provision of routine banking services or charitable donations, without knowledge of any terrorist activities, cannot subject a defendant to liability. Compare id. at 835 with Opp. at 11-14.  Instead, as set forth above, plaintiffs choose to rely on newly-fabricated assertions of 'fact' that are nowhere alleged in their TAC, such as the non-existent allegation that DMI S.A. provided funds or banking services to support "terrorist training camps in Sudan, Afghanistan and elsewhere."  Cf. Opp. at 13.  In short, plaintiffs simply make no allegation of fact showing that DMI S.A. engaged in any act of assistance to terrorists, much less that it did so knowingly or with a desire to see a terrorist plot succeed.  See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 828 ("To adequately plead the provision of material support under [the ATA], a plaintiff would have to allege that the defendant knew about the terrorists' illegal activities, the defendant desired to help those activities succeed, and the defendant engaged in some act of helping those activities.").

Clearly, here, "[p]laintiffs do not offer facts to support their conclusions that [DMI S.A.] had to know that [any recipients of donations or banking services] were supporting terrorism." See id. at 832-33. Thus, plaintiffs have failed to state an ATA claim, and that claim must be dismissed. Likewise, plaintiffs' claims under the TVPA and ATCA (Counts 2 and 4) also fail.[9]

### 3. Plaintiffs Fail To State Their State Law Causes Of Action (Counts 5-10, 14).

First, plaintiffs acknowledge that conspiracy, aiding and abetting, and punitive damages (Counts 9, 10 & 14) are not recognized as independent claims under New York law. See Opp. at 22. The fact that no such claims exist is not a technicality, and the Court therefore should dismiss such claims with prejudice so as to avoid the inefficiency of a motion by plaintiffs for voluntary withdrawal under Rule 41. Second, plaintiffs "disagree[ment]" with the requirement that negligence claims (Counts 6 & 8) require an allegation of an identifiable duty merely and improperly seeks to litigate an issue already decided by the Court. See Opp. at 19 n.7. Moreover, even if some duty could be alleged, plaintiffs fail to allege that DMI S.A. breached any such duty or proximately caused their injuries. See Init. Mem. at 19-20. Third, plaintiffs' wrongful death and survival claims (Counts 5 & 7) fail to allege facts sufficient to satisfy the elements of the claims or that DMI S.A. proximately caused their injuries. See Init. Mem. at 19. Fourth, plaintiffs' assert that they have stated claim for intentional infliction of emotional distress ("IIED") (Count 8) because "providing support to terrorist training camps is both wrongful *and* outrageous." See Opp. at 20. However, as detailed above, *no such allegation* of support for any terrorist training camp by DMI S.A. appears among the actual allegations of the TAC or MDS. See supra 5-7. Therefore, plaintiffs' meager and conclusory allegations against DMI S.A. do not allege any wrongful conduct, much less any allegation of extreme and outrageous conduct or facts that could give rise to an inference of intent or recklessness sufficient to give rise to an IIED claim. Similarly, plaintiffs fail to sufficiently allege that DMI S.A. proximately caused their injuries. See Init. Mem. at 20.

---

[9] Plaintiffs, for the first time and in recognition that their ATCA claim has no merit, suggest that that claim might better be framed as a nebulous claim under international law. See Opp. at 20 n.8. However, plaintiffs recently had the opportunity to (and half-heartedly did) amend their TAC without making any such change.

III

**PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs' Opposition pays no heed whatsoever to both this Court's Opinions and Orders, dated January 18, 2005 and September 21, 2005, and the authority cited in DMI S.A.'s Initial Memorandum. Instead, and in a desperate attempt to avoid dismissal, plaintiffs venture assertions not borne out by the actual allegations of the TAC. Yet, "[e]ven with the opportunity to clarify their claims" in several amended pleadings and a MDS, plaintiffs' failure to state any of their claims against DMI S.A. remains as complete as one could imagine. See In re Sept. 11 Attacks I, 349 F. Supp. 2d at 832-33. There is no indication that plaintiffs will in good faith be able to cure the numerous defects of their claims, as the record now makes abundantly clear. Dismissal of plaintiffs' claims against DMI S.A., therefore, should ensue swiftly and with prejudice. See id. at 835; Init. Mem. at 25 (citing cases).

**CONCLUSION**

For the foregoing reasons, defendant DMI S.A. respectfully requests that this Court dismiss all claims against it with prejudice and award such further relief as deemed just and proper.

Dated: New York, New York
January 27, 2006

                        Respectfully submitted,
                        SHEPPARD MULLIN RICHTER & HAMPTON LLP

                        By:_____/x/_____
                            James J. McGuire (JM-5390)

                        30 Rockefeller Plaza, 24th Floor
                        New York, New York 10112
                        (212) 332-3800

                        *Attorneys for Defendant*
                          *DMI Administrative Services S.A.*